IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| EPLUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PERFECT COMMERCE, INC., SCIQUEST, INC., LAWSON SOFTWARE, INC., and VERIAN TECHNOLOGIES, INC., <br><br> Defendants. | Civil Action No. 2:09-CV-232-HCM-TEH |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS PERFECT COMMERCE, LLC, SCIQUEST, INC., AND LAWSON SOFTWARE, INC. TO STAY PROCEEDINGS IN LIGHT OF PENDING REEXAMINATIONS OF PATENTS-IN-SUIT**

# **TABLE OF CONTENTS**

                               **Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

A. Reexaminations Frequently Lead to the Cancellation or Amendment of the Patent Claims Subject to Reexamination ................................................................................................... 3

B. Applying A Well-Established Test, District Courts Liberally Grant Stays of Litigation Proceedings Where the PTO Is Reexamining the Patents-In-Suit ................................................ 5

 1. The Litigation Has Just Commenced and Discovery Has Not Yet Begun ........................ 6

 2. The Outcome of the Reexamination Proceedings Will Greatly Assist the Court in Evaluating ePlus's Claims Against Defendants ...................................................................... 7

  a. The Claims of the Patents Currently Under Reexamination Will Likely Be Altered During the Reexamination Proceedings .................................................................. 7

  b. The Prosecution History Created During the Reexamination Proceedings Will Affect the Interpretation of All of the Claims of the Patents-In-Suit ............................................... 8

  c. The Reexamination Proceedings Will Simplify and Narrow the Issues of This Lawsuit .................................................................................................................................. 10

 3. A Stay Will Not Cause Unfair Prejudice to ePlus ......................................................... 12

III. CONCLUSION .................................................................................................................. 13

Defendants Perfect Commerce, LLC[1] ("Perfect"), SciQuest, Inc. ("SciQuest") and Lawson Software, Inc. ("Lawson") (collectively, the "Moving Defendants") submit this memorandum in support of their motion to stay the litigation proceedings brought by Plaintiff ePlus, Inc. ("ePlus").

## I.   INTRODUCTION

Plaintiff ePlus has a long litigious history involving the patents-in-suit.  In 2006, ePlus was involved in a jury trial in front of Judge Spencer (Richmond Division) involving the same patents at issue in the instant case.  The case ended in a hung jury.  On September 15, 2006, the defendants in that action, SAP America, Inc. and SAP AG (collectively "SAP"), filed for a reexamination of U.S. Patent No. 6,023,683 ("the '683 patent") in the United States Patent and Trademark Office ("PTO").  The PTO granted the reexamination, and since has rejected all 20 claims that are under reexamination as being anticipated by four independent items of prior art.  Despite ePlus's attempts to convince the PTO Examiner otherwise, in the last few months the PTO issued a final rejection of all of the claims under reexamination as being anticipated and thus invalid.  ePlus appealed that decision in March 2009 and the appeal is pending.  Now more than three years after the filing of the reexamination and after the PTO has ruled twice and finally rejected most of the claims of the '683 patent as anticipated, and while ePlus is awaiting the outcome of its appeal pending before the Board of Patent Appeals and Interferences ("BPAI"), ePlus filed the instant action against Moving Defendants.  Notably, this action was instituted only after ePlus voluntarily dismissed an identical action in the District Court for the District of Delaware days before filing this suit.

---

[1] The Complaint incorrectly identifies Perfect Commerce as a corporation; instead, Perfect Commerce is a limited liability company.  See Doc. No. 27, at 1 n.1 and 4.

1

As the following will show, this Court should stay the case until after the reexamination proceedings have been completed. Justice demands that Defendants herein should not have to defend against a patent that has already been held under four separate and distinct bases to be anticipated by prior art.

## The Patents-In-Suit

ePlus alleges that Defendants infringe one or more claims of United States Patent Nos. 6,023,683 ("the '683 patent"), 6,055,516 ("the '516 patent"), and 6,505,172 ("the '172 patent") (collectively "patents-in-suit"). As noted, 20 claims of the '683 patent have been finally rejected by the PTO in the pending reexamination. Last week, Defendant Lawson filed an *inter partes* reexamination request, asking the PTO to reexamine all of the claims of the '172 patent in view of the same prior art found to anticipate the '683 patent claims, and additional prior art. This is not surprising, as the '172 patent shares a common disclosure with the '683 patent.

Each of the patents-in-suit is related to one another and shares an identical specification; the only difference between them is their claims. They share a common file history, identical figures, and identical text. Not surprisingly, their claims are very similar too. The '683 patent was the first to be filed. It was filed on August 10, 1994. The second patent is the '516 patent. It was filed on January 20, 1999. Finally, the third patent in the series, the '172 patent, was filed on March 22, 2000. The '172 patent, having been filed after November 29, 1999, is subject to the PTO's recent rule change allowing for an "*inter partes*" reexamination procedure.

It is very likely, especially given the advanced nature and numerous rejections of the claims pending reexamination of the '683 patent, and the newly requested *inter partes* reexamination of the '172 patent, that the reexaminations will affect the interpretation and scope of all of the claims in the patents-in-suit. This in turn could affect the extent of fact and expert

discovery, the *Markman* hearing, and the scope of summary judgment motions. Moreover, the extent of ePlus's patent rights could be, and, given the PTO's persistent view of the invalidity of the '683 patent claims pending in the first filed reexamination, will very likely be, significantly narrowed or eliminated entirely through the pending reexamination proceedings. Further, these proceedings, and the resulting prosecution history, will be highly probative to the Court's interpretation of the patent claims. Thus, a stay will conserve judicial resources, clarify the scope of the litigation, and simplify many of the issues in this case.

This litigation is in its early stages, so substantial judicial and party resources will be preserved by staying further litigation proceedings pending completion of the reexamination proceedings. In addition, ePlus will suffer no unfair prejudice by not being allowed to litigate claims that the PTO currently believes are not patent worthy. Given the maturity of the presently pending reexamination proceeding of the '683 patent, the additional request for an *inter partes* reexamination of the '172 patent, and their potentially dramatic impact on the scope of ePlus's claims, a stay pending the reexaminations of these patents is warranted.

## II. ARGUMENT

### A. Reexaminations Frequently Lead to the Cancellation or Amendment of the Patent Claims Subject to Reexamination

*Ex parte* and *inter partes* reexaminations are statutory procedures by which the PTO reevaluates the patentability of an issued patent. In reviewing a request for reexamination, the PTO must determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request . . . ." 35 U.S.C. § 303(a); 35 U.S.C. § 312(a). If the PTO concludes that a "substantial new question of patentability" is raised, reexamination proceedings commence. The PTO grants the vast majority (*ex parte*: 92% *inter partes*: 95%) of requests it receives for reexamination. *See* United States Patent and Trademark Office, *Ex Parte*

3

Reexamination Filing Data, March 31, 2009, Tautkus Decl.,[2] Ex. A at 1 and *Inter Partes* Reexamination Filing Data, June 30, 2009, Tautkus Decl., Ex. B at 1. "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and time[-consuming] litigation." *Canady v. Erbe Elektronedizin GmbH,* 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citations omitted). Indeed, "one purpose of the reexamination procedure is to eliminate trial of [the patent validity] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Seventy-five percent of *ex parte* reexamination proceedings and ninety-five percent of *inter partes* reexamination proceedings lead to the cancellation or amendment of the patent claims subject to reexamination. *See* Tautkus Decl., Ex. A at 2, Ex. B at 1; *cf. Spa Syspatronic, AG v. VeriFone, Inc.*, 2008 U.S. Dist. LEXIS 34223, at *10 (E.D. Tex. April 25, 2008) ("Historically, the PTO has eliminated, amended or otherwise limited the claims in over 70% of reexamined patents.") (citations omitted). Even if the patent claims survive reexamination, the statements made during the reexamination proceedings become part of the prosecution history, which becomes highly relevant to the construction of the claim terms. *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007) ("The prosecution history of [the] parent application is highly instructive in light of the similarity between the claims of the

---

[2] "Tautkus Decl." refers to the Declaration of Rita E. Tautkus In Support of Motion of Defendants Perfect Commerce, LLC, SciQuest, Inc., and Lawson Software, Inc. to Stay Proceedings in Light of Pending Reexaminations of Patents-In-Suit.

4

application and those of the patents in suit."); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1460 & n.2 (Fed. Cir. 1998) (noting that it was proper to consider the prosecution histories of two related reexamination patents originating from the same parent to determine the meaning of a term used in both patents). Thus, reexamination proceedings are highly pertinent to the proper construction of the claims of a patent. As such, reexamination can serve to simplify and to clarify patent issues—and, if the corresponding patent litigation is stayed, ease the burden on the litigants and the Court.

> **B.**     **Applying A Well-Established Test, District Courts Liberally Grant Stays of Litigation Proceedings Where the PTO Is Reexamining the Patents-In-Suit**

The Court's power to control its docket gives it the authority to stay proceedings before it, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), including proceedings that may be affected by a pending reexamination of a patent-in-suit by the PTO. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988) (explaining that the statute creating the reexamination procedure does not expressly authorize a court to stay proceedings in light of a pending reexamination because Congress believed that the power to do so "already resides with the Court."). In fact, the "legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays." *Robert H. Harris Co. v. Metal Mfg. Co.,* 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991). Therefore, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings," *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), and "[i]n many instances it is appropriate for a district court to stay a patent case pending the outcome of a PTO proceeding." *Slip Track Sys., Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1340 (Fed. Cir. 1998).

Courts have developed a well established test to determine whether to stay patent infringement litigation pending completion of PTO reexamination proceedings. That test includes consideration of: (1) whether discovery is complete and a trial date is scheduled; (2) whether a stay would simplify the matters at issue; and (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party. *See NTP, Inc. v. Palm, Inc.*, No. 3:06–CV–836, 2007 U.S. Dist. LEXIS 97141, at *2, 7 (E.D. Va. Mar. 22, 2007) (Spencer, J.) (staying the action until the validity of the patents-in-suit is resolved by the PTO and through any consequent appeals). This approach is consistent with rulings by the Federal Circuit that staying proceedings may be appropriate in order to narrow the scope of the dispute, obtain guidance from the PTO, avoid reaching a result inconsistent with findings by the PTO, or prevent the waste of judicial resources. *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. July 27, 2007) (Friedman, J.) (granting a stay of the proceedings for one of the two patents-in-suit) (citing *Gould*, 705 F.2d at 1342; *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985); *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2003)).

### 1.     The Litigation Has Just Commenced and Discovery Has Not Yet Begun

ePlus filed its complaint on May 19, 2009, Doc. No. 1 at 1, about three years after the initiation of the '683 reexamination. Given the early stage of this litigation and the fact that the likely outcome of the decision of the PTO appeal will be to affirm the prior rejections of the claims, it would be manifestly unfair for Defendants to spend their money and waste this Court's resources while ePlus attempts to get a better ruling from a jury than it obtained from the PTO. The parties and the Court would receive the maximum benefits from a stay by preserving substantial judicial and party resources. Where parties have yet to invest substantial resources in discovery, where a lengthy reexamination is in its last stages, and where the litigation is in its

6

formative stages, a stay pending reexamination is even more appropriate. *See KLA-Tencor Corp. v. Nanometrics, Inc.*, Case No. C 05-03116, 2006 U.S. Dist. LEXIS 15754, at *6, 13 (N.D. Cal. Mar. 16, 2006) (granting a stay in the early stages of discovery); *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006) (granting stay pending reexamination when discovery had recently commenced); *ASCII*, 844 F. Supp. at 1381 (granting a stay when the parties had "undertaken little or no discovery"). As one District Court noted, the "lesser cost" of granting a stay before discovery has commenced "indicates the best time to grant a stay is in the early stages of litigation." *Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, Case No. 3:05-CV-1560-G, 2006 U.S. Dist. LEXIS 64698, at *12 (N.D. Tex. Sept. 11, 2006).

    **2.**    **The Outcome of the Reexamination Proceedings Will Greatly Assist the Court in Evaluating ePlus's Claims Against Defendants**

        a.    <u>The Claims of the Patents Currently Under Reexamination Will Likely Be Altered During the Reexamination Proceedings</u>

It is not likely that the claims in either reexamination will survive the reexamination proceedings at all, or at least without amendment. As mentioned above, 75% of *ex parte* reexamination proceedings and 95% of *inter partes* reexamination proceedings lead to the cancellation or amendment of the patent claims subject to reexamination. *See* Tautkus Decl., Ex. A at 2, Ex. B at 1. Furthermore, in the reexamination of the '683 patent, all 20 claims subject to reexamination have been finally rejected on four independent grounds. Each of these four rejections are an independent rejection under 35 U.S.C. § 102, namely that a single prior art reference anticipates each of the 20 claims in the '683 patent because each of the references discloses every element of these claims. Even if ePlus could show that the references used in each of the four rejections is missing a claimed element, it would still have to overcome a likely obviousness rejection under 35 U.S.C. § 103. *See, e.g., Ex parte Bortolini,* Appeal No. 2008-

7

4048, 2008 WL 4968284, at *4-5 (B.P.A.I. Nov. 20, 2008) (declining to sustain an Examiner's rejection under 35 U.S.C. § 102(b) because the applied reference did not teach every element of the claims, but nevertheless affirming the rejection in-part after entering a new ground of rejection under 35 U.S.C. § 103(a) over the same single reference); *Ex parte Healy*, Appeal No. 2007-1370, 2007 WL 1957315, at *3 (B.P.A.I. July 5, 2007) (reversing the Examiner's rejection under 35 U.S.C. § 102(b) and remanding to the Examiner with instructions to consider a rejection under 35 U.S.C. § 103).

Accordingly, given the number of rejections and the multiple anticipation rejections of the claims, ePlus will very likely have to amend or abandon one or more claims of the '683 patent and/or the '172 patent during the reexamination proceedings, which would directly affect the scope of the claims in the litigation.  This situation could potentially require defendants to continually adapt their defenses to the current version of the claims, re-serve written discovery, and re-take depositions.  In other words, "preparing to try [this] suit[] before the re-examination proceedings are complete would be like trying to hit a moving target, without knowing even what the target looks like."  *NTP, Inc. v. T-Mobile USA, Inc.*, Nos. 3:07–CV–548, 549, 550, 551, 2007 U.S. Dist. LEXIS 82063, at *3, 8 (E.D. Va. Nov. 2, 2007) (Spencer, J.) (staying the actions where the patents-in-suit were in reexamination proceedings and currently on appeal to the BPAI).

> b. The Prosecution History Created During the Reexamination Proceedings Will Affect the Interpretation of All of the Claims of the Patents-In-Suit

To overcome four independent rejections of all of the pending claims of the '683 patent on appeal, ePlus will be required to present arguments for each of the claims with respect to each of the rejections.  All of the statements ePlus makes during the reexamination proceedings become part of the prosecution history.  *Alza Corp. v. Wyeth & Wyeth Pharms., Inc.*, Case No.

8

9:06-CV-156, 2006 U.S. Dist. LEXIS 94962, at *6 (E.D. Tex. Nov. 21, 2006) ("[S]tatements made during the reexamination proceedings become part of the prosecution history. . ."). The prosecution history of the '683 patent will be relevant in construing the claims of *all* of the patents-in-suit. This is because claim construction involves interpreting a claim in light of not only the specification of the patent, which is identical for all of the patents-in-suit, but also the prosecution history of the patent. *See Pall Corp. v. PTI Techs.*, 259 F.3d 1383, 1391 (Fed. Cir. 2001) ("We have repeatedly held that, in addition to the specification, the prosecution history must be considered in construing claims."), *vacated on other grounds sub nom. PTI Techs., Inc. v. Pall Corp.*, 535 U.S. 1109 (2002). In fact, the prosecution history of any member of the patent family is relevant in interpreting the claims regardless of whether it was issued before or after the patent in question. *See, e.g., Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (applying a statement made in the prosecution history of a later-issued patent in interpreting the claims of an earlier-issued patent of the same family); *cf. NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because [plaintiff's] patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). Accordingly, the prosecution history of both the '683 and the '172 patents will affect the construction of the claims in each of the patents-in-suit. However, the prosecution history of the parent patent, such as the '683, is especially important for determining the scope of the claims of the patents in the same family. *See Andersen Corp.*, 474 F.3d at 1368 ("The prosecution history of [the] parent application is highly instructive in light of the similarity between the claims of the application and those of the patents in suit.").

Furthermore, even though not all of the claims in the '683 patent are currently under reexamination, any amendments to these claims or any statements made during the

9

reexamination of these claims will affect all of the claims in the patents-in-suit. *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."). In any event, the remaining claims of the '683 patent are means-plus-function claims that were not asserted against SAP, and thus, are unlikely to be asserted against any Defendants in this action.

          c.      The Reexamination Proceedings Will Simplify and Narrow the Issues of This Lawsuit

A stay is warranted because the reexamination proceedings will simplify and narrow the issues for discovery and trial and prevent exceedingly expensive discovery and pretrial proceedings on the very same issues that the BPAI is already considering in the appeal regarding the '683 patent and which the PTO will likely consider regarding the '172 patent. This is especially true of the *inter partes* reexamination of the '172 patent because of the estoppel imposed upon third-party requesters that prevents the third-party requesters from later re-litigating the same issues that were raised or could have been raised during the *inter partes* proceedings. *See* 35 U.S.C. § 315(c); *see also EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv-81 DF, 2006 U.S. Dist. LEXIS 48431, at *8-10 (E.D. Tex. July 14, 2006) (recognizing that "an *inter partes* reexamination can have no other effect but to streamline ongoing litigation"). And where, as here, there are overlapping issues between the patents undergoing reexamination and the other patents in suit, courts have found staying the entire case to be warranted. *See KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *10-11; *see also Dataquill Ltd. v. High Tech Computer Corp.*, No. 08cv543, 2009 U.S. Dist. LEXIS 42178, at *11 (S.D. Cal. May 14, 2009) (finding the fact that one of the patents-in-suit was currently in reexamination and was a parent of the other patent-in-suit to be relevant in its determination to stay the entire case). As other courts have

10

recognized, addressing any remaining issues after the PTO reexamination proceedings are completed affords the Court the benefit of the PTO's expertise. *See Palm*, 2007 U.S. Dist. LEXIS 97141, at *9 ("Once the case returns from the holding pattern to which it will be sent, the parties and the Court will have the PTO's expert opinion regarding the scope and validity of the patent claims . . . and both will be in a better position to assess the issues raised in this civil action.") (citing *Am. Online, Inc. v. AT&T*, 243 F.3d 812, 816 (4th Cir. 2001)); *Ethicon, Inc.*, 849 F.2d at 1426 ("[A]n advantage of the reexamination process is that it allows the validity of a patent to be tested in the Patent office where the most expert opinions exist and at a much reduced cost.") (citations omitted).

Finally, staying the entire case would include the following benefits (1) "[a]ll prior art presented to the Court will have been first considered by the PTO, with its particular expertise;" (2) "[m]any discovery problems relating to prior art can be alleviated by the PTO examination;" (3) "[i]n those cases resulting in effective invalidation of the patent, the suit will likely be dismissed;" (4) "[t]he outcome of the reexamination may encourage a settlement without the further use of the Court;" (5) "[t]he record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;" (6) "[i]ssues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination;" and (7) "[t]he cost will likely be reduced both for the parties and the Court." *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389-90 (W.D.N.Y. 2008). These factors are all equally important here and justify a stay of this case.

Here, in light of the PTO's four independent grounds of rejection of 20 claims in the '683 patent, that these claims have been finally rejected, and the recently requested reexamination of

the '172 patent[3], the impact of the reexamination proceedings are likely to be great. If the claims are amended and/or cancelled, the need for discovery, pretrial, and trial activities for most the issues in this case may be eliminated entirely. Not only will the BPAI and PTO's findings indicate whether this lawsuit should proceed, the findings will clarify the claims at issue that the Court must address. Therefore, this factor also supports issuance of a stay in this case.

### 3. A Stay Will Not Cause Unfair Prejudice to ePlus

The PTO's reexamination proceedings will occur with "special dispatch" and will not lead to an indefinite suspension of ePlus's infringement claims. *See* 35 U.S.C. § 305; 35 U.S.C. § 314(c); *see also* MPEP § 2286 ("It is to be noted that the statutory requirement for 'special dispatch' in reexamination often becomes important, and sometimes critical, in coordinating the concurrent litigation and reexamination proceedings."). The average pendency of a reexamination proceeding is 24.8 months for an *ex parte* reexamination and 36.1 for an *inter partes* reexamination, and the median pendencies are 19.3 months and 33.0 months, respectively. *See* Tautkus Decl., Ex. A at 2, Ex. B at 1. The currently pending reexamination of the '683 patent, which was filed on September 15, 2006, has already been pending for almost 34 months. Moreover, by filing this suit, ePlus is eligible to recover damages for any infringement of the patents-in-suit that occurs during the PTO proceedings, provided that proceedings result in a finding that any of the patents-in-suit are valid. *See, e.g.*, *T-Mobile*, 2007 U.S. Dist. LEXIS

---

[3] In fact, courts have granted stays based solely on reexaminations that had been recently requested and before even knowing whether the request will be granted by the PTO. *See, e.g., Sorensen v. Black & Decker Corp.*, Case No. 06cv1572, 2007 U.S. Dist. LEXIS 66712, at *9-10, 19 (S.D. Cal. Sept. 10, 2007) (staying all proceedings, with the exception of two pending motions, based on the pending request for reexamination of the patent-at-issue); *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, Case No. 4:06-CV-126, 2007 U.S. Dist. LEXIS 17536, at *15-16, 20 (W.D. Mich. Mar. 12, 2007 ) (granting defendants' motion to stay proceedings pending reexamination by the PTO before the PTO decided whether to grant the requests for reexamination of the patents-in-suit).

12

82063, at *8 (noting that if the patents-at-issue are found valid, a stay will not cause irreparable harm to the plaintiff since the plaintiff is eligible to recover damages for any infringement of the patents-at-issue that occurs while the reexamination is proceeding). Thus, staying this suit while the PTO conducts reexamination proceedings will not unduly prejudice ePlus.

In addition, ePlus initiated this litigation against Defendants knowing that the PTO already rejected 20 claims of the '683 patent--twice, and that 32 months elapsed during the reexamination of the '683 patent. Therefore, whatever alleged tactical disadvantage a stay might cause, it is a disadvantage of ePlus's own making and a risk that it took in filing new litigation while proceedings were well underway, if not nearing completion, at the BPAI. Finally, and most importantly, the benefits to all parties and the Court in granting a stay far outweigh any potential harm to ePlus as explained above. *See supra* II.B.2; *see also Palm*, 2007 U.S. Dist. LEXIS 97141, at *9 ("It would be a painful tragedy--for everyone involved--if this litigation were allowed to move forward during the PTO's reexamination, only to be rendered meaningless by that agency's final action.").

Accordingly, given the circumstances presented in this case, the Court should stay the litigation proceedings pending completion of the reexamination and appeal proceedings currently underway at the PTO.

### III.  CONCLUSION

This litigation is in its early stages, and ePlus filed this lawsuit three years after the *ex parte* reexamination of the '683 patent was filed, after the PTO has ruled twice and finally rejected most of the claims of the '683 patent as anticipated, and while the outcome of its appeal pending before the BPAI is pending. In addition, Lawson has recently filed a request for *inter partes* reexamination of all of the claims of the '172 patent, which should be granted shortly. With seventy-five percent of ex parte reexaminations and *ninety-five* percent of *inter partes*

reexaminations leading to the cancellation or amendment of the patent claims subject to reexamination and with the creation of the additional prosecution history during the reexamination, the reexamination proceedings will have a drastic effect on this litigation. Thus, preparing to try this action before the reexamination proceedings are complete would be like trying to hit a moving target, without knowing even what the target looks like. Accordingly, the Moving Defendants respectfully request that the Court stay further proceedings in this litigation pending completion of the reexamination proceedings regarding the '683 and '172 patents.

Dated: July 14, 2009

Respectfully submitted,

/s/Stephen E. Noona
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC, SciQuest, Inc. and Lawson Software, Inc.*

Daniel Johnson, Jr. (*pro hac vice* pending)
Rita E. Tautkus (*pro hac vice* pending)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com

        Robert W. Busby, Jr. (VSB No. 41312)
        Bradford A. Cangro (*pro hac vice* pending)
        Morgan, Lewis & Bockius LLP
        1111 Pennsylvania Ave., NW
        Washington, DC 20004-2541
        Telephone:    (202) 739-3000
        Facsimile:    (202) 739-3001
        rbusby@morganlewis.com
        bcangro@morganlewis.com

        *Counsel for Defendants SciQuest, Inc. and Lawson Software, Inc.*

        Kenneth W. Brothers (*pro hac vice* pending)
        Dickstein Shapiro LLP
        1835 Eye Street NW
        Washington, DC 20006
        Telephone:    (202) 420-4128
        Facsimile:    (202) 420-2201
        brothersk@dicksteinshapiro.com

        *Counsel for Defendant Perfect Commerce, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2009, I will electronically file the foregoing Memorandum in Support of Motion of Defendants Perfect Commerce, LLC, SciQuest, Inc., and Lawson Software, Inc. to Stay Proceedings in Light of Pending Reexaminations of Patents-in-Suit with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory N. Stillman
Brent Lee VanNorman
Hunton & Williams
500 East Main Street, Suite 1000
Norfolk, VA 23510
Tel.: 757-640-5300
Fax.: 757-625-7720
gstillman@hunton.com
bvannorman@hunton.com

David M. Young
VSB No. 35997
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
dyoung@goodwinprocter.com

OF COUNSEL:

Scott L. Robertson
Jennifer A. Albert
Christopher C. Campbell (VSB No. 36244)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
srobertson@goodwinprocter.com

Shirley Sperling Paley
James D. Clements
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA  02109-2881
Tel.: 617-570-1000
Fax.:  617-523-1231
spaley@goodwinprocter.com
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

James John Briody
Sutherland, Asbill & Brennan
1275 Penn Avenue, NW
Suite 800
Washington, DC 20004-2404
(202) 383-0100
jim.briody@sutherland.com

16

George E. Kostel (VSB  No. 34757)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue, NW Suite 900
Washington, DC  20001
Tel.: 202-712-2800
Fax.: 202-712-2862
george.kostel@nelsonmullins.com

*Attorneys for Defendant Verian Technologies, Inc.*


      /s/ Stephen E. Noona
Stephen E. Noona
(VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:    (757) 624-3000
Facsimile:    (757) 624-3169

*Counsel for Defendants Perfect Commerce LLC, incorrectly identified as Perfect Commerce, Inc, SciQuest, Inc. and Lawson Software, Inc.*

1496176\1

17