# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:09cv232-HCM-TEM |
| | ) |
| | ) |
| v. | ) |
| | ) |
| PERFECT COMMERCE, INC., SCIQUEST, | ) |
| INC., LAWSON SOFTWARE, INC., and | ) |
| VERIAN TECHNOLOGIES, INC., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF ePLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................5

    A.    The Patents-In-Suit ......................................................................................5

    B.    *e*Plus's So-Called "Long Litigious History" Has Already Resulted In A
        Prior Jury Verdict Of Willful Infringement And Patent Validity In This
        Very District.................................................................................................6

    C.    After Nearly Three Years, The '683 *Ex Parte* Reexamination Is Not Near
        Completion And There Has Been No "Final Rejection" Of Any Of The
        '683 Claims By The PTO .............................................................................7

III. ARGUMENT...........................................................................................................9

    A.    In Order To Obtain The Extraordinary Remedy Of A Stay, Defendants
        Must Make Out A Clear Case Of Hardship Or Inequity In Being Required
        To Go Forward..............................................................................................9

    B.    Defendants' Request For A Stay Of Proceedings With Respect To The
        '172 Patent Is Premature.............................................................................14

    C.    Contrary To The Requirements Of The Statute, *Inter Partes*
        Reexaminations Are Not Conducted With "Special Dispatch" And Will
        Not Be Anywhere Near Their Conclusion In Three Years....................................15

    D.    The *Inter Partes* Reexamination, If Granted, Will Not Narrow The Issues
        For Trial ......................................................................................................17

    E.    The Current Reexamination Of Some Of The '683 Patent Claims Shows
        That The *Ex Parte* Reexamination Process Will Not Resolve Any Of The
        Issues Before This Court In A Timely Manner ......................................................20

    F.    It Is Impossible That Reexamination Would Result In Cancellation Of All
        Claims Of All Patents-In-Suit.................................................................................22

    G.    Defendants' "Prosecution History" Argument Provides No Basis For A
        Stay .............................................................................................................23

    H.    A Careful Analysis Of The Factors In *Bausch & Lomb* Relied Upon By
        Defendants Shows That A Stay Of Proceedings Is Not Warranted.......................24

1.    The reexamination will not result in all prior art first being
presented to the PTO. ............................................................................... 24

2.    The PTO will not resolve discovery problems for this Court. ................... 25

3.    This suit will not be dismissed as a result of effective invalidation
of the patent. ............................................................................................. 25

4.    Staying this case will not encourage settlement. ...................................... 26

5.    The complexity and length of litigation will not be reduced by
entering the reexamination record. .......................................................... 27

6.    The reexamination will not significantly limit issues, defenses and
evidence. .................................................................................................... 27

7.    A stay will not reduce costs for the parties or the Court. .......................... 28

I.    ePlus Will Be Unfairly Prejudiced By A Stay Of Lengthy And Indefinite
Duration ................................................................................................................. 28

IV.    CONCLUSION ................................................................................................................. 29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ariba, Inc. v. Emptoris, Inc.,*
    2007 U.S. Dist. LEXIS 78857 (E.D. Tex. Oct. 23, 2007) .................................................. 19, 20

*Aventis Pharma Deutchland GMBH v. Lupin Ltd.,*
    403 F. Supp. 2d 484 (E.D. Va. 2005) ....................................................................................... 12

*Bartex Research, LLC v. Fedex Corp.,*
    611 F. Supp. 2d 647 (E.D. Tex. 2009).................................................................... 1, 15, 24, 28

*Bausch & Lomb Inc. v. Rexall Sundown, Inc.,*
    554 F. Supp. 2d 386 (W.D.N.Y. 2008)................................................................................ 24, 25

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH,*
    224 F.3d 1308 (Fed. Cir. 2000) ............................................................................................... 22

*Cequent Trailer Prods., Inc. v. Diversi-Tech Corp.,*
    2008 WL 819750 (N.D.N.Y. Mar. 25, 2008) ........................................................................... 9

*Cherokee Nation v. United States,*
    124 F.3d 1413 (Fed. Cir.1997) ................................................................................................ 11

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)................................................................................................................. 10

*Construction Equip. Co. v. Powerscreen Int'l Distribution, Ltd.,*
    2009 WL 437703 (D. Or. Feb. 19, 2009) ................................................................................ 21

*Cooper Technologies Co. v. Thomas & Betts Corp.,*
    2008 WL 906315 (E.D. Tex. Mar. 31, 2008) .......................................................................... 18

*E.I. DuPont de Nemours & Co. v. Cetus Corp.,*
    1990 WL 305551 (N.D. Cal. Dec. 3, 1990)............................................................................ 19

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)................................................................................................................. 12

*ESN, LLC v. Cisco Sys., Inc.,*
    2008 U.S. Dist. LEXIS 108327 (E.D. Tex. Nov. 20, 2008) ......................................... 15, 17, 25

*Fresenius Med. Care Holdings,*
    2007 WL 1655625 (N.D. Cal. 2007) ............................................................................. 9, 21, 22

*Fujitsu Ltd. v. Nanya Tech. Corp.,*
    2007 U.S. Dist. LEXIS 83581 (N.D. Cal. Nov. 6, 2007) ........................................................ 14

*Heinz Kettler Gmbh & Co., KG v. Indian Indus., Inc.,*
    592 F. Supp. 2d 880 (E.D. Va. 2009) ................................................................................ 2, 14

*In re Bingo Card Minder Corp.,*
    1998 WL 130514 (Fed. Cir. Feb. 25, 1998) ........................................................................... 21

*In re Phoenix Licensing LLC,*
   2009 U.S. Dist. LEXIS 17525 (D. Ariz. Feb. 24, 2009) .......................................................... 25

*In re Yamamoto,*
   740 F.2d 1569 (Fed. Cir. 1984) ............................................................................................. 19

*Landis v. N. Am. Co.*
   299 U.S. 248 (1936) ........................................................................................................ passim

*Lockyer v. Mirant Corp.,*
   398 F.3d 1098 (9th Cir. 2005) ......................................................................................... 13, 28

*Mars, Inc. v. JCM Am. Corp.,*
   2006 WL 3373284 (D.N.J. Nov. 21, 2006) ............................................................................ 25

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ................................................................................................................ 12

*MercExchange, L.L.C. v. eBay, Inc.,*
   500 F. Supp. 2d 556 (E.D. Va. 2007) ..................................................................................... 26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) .................................................................................................................... 10

*Network Appliance Inc. v. Sun Microsystems Inc.,*
   2008 WL 2168917 (N.D. Cal. May 23, 2008) ............................................................. 16, 17, 28

*Nken v. Holder,*
   129 S. Ct. 1749 (2009) ............................................................................................................ 11

*NTP, Inc. v. Palm, Inc.,*
   2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) ....................................................... 26

*NTP, Inc. v. Research in Motion, Ltd.,*
   397 F. Supp. 2d 785 (E.D. Va. 2005) ..................................................................... 12, 21, 23, 26

*NTP, Inc. v. T-Mobile USA, Inc.,*
   2007 U.S. Dist. LEXIS 82063 (E.D. Va. Nov. 2, 2007) ......................................................... 26

*Roy-G-Biv Corp. v. Fanuc Ltd.,*
   2009 WL 1080854 (E.D. Tex. Apr. 14, 2009) ............................................................. 15, 24, 27

*Softview Computer Prods. v. Haworth, Inc.,*
   2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ......................................................................... 10

*Sorensen v. Ampro Tools Corp.,*
   2009 U.S. Dist. LEXIS 21627 (N.D. Cal. Mar. 9, 2009) ........................................................ 28

*Stormedia Texas, LLC v. CompUSA, Inc.,*
   2008 U.S. Dist. LEXIS 55690 (E.D. Tex. July 23, 2008) ....................................................... 18

*Tesco Corp. v. Weatherford Int'l, Inc.,*
   599 F. Supp. 2d 848 (S.D. Tex. 2009) ............................................................................... 18, 28

*Texas MP3 Technologies v. Samsung Elec.,*
   2007 WL 3219372 (E.D. Tex. 2007) ................................................................................... 2, 22

iv

## Statutes

35 U.S.C. § 283 .................................................................................................................... 5, 13, 29

35 U.S.C. § 301 ........................................................................................................................... 19

35 U.S.C. § 307 ........................................................................................................................... 21

35 U.S.C. § 312 ........................................................................................................................... 14

35 U.S.C. § 315 ......................................................................................................................... 3, 18

35 U.S.C. § 316 ........................................................................................................................... 21

35 U.S.C. § 318 ....................................................................................................................... 14, 15

## Other Authorities

Manual of Patent Examining Procedures ................................................................................ 21, 25

R. Sterne, *Guest Post: Hot Topics in US Patent Reexamination* (Mar. 10, 2009) ......................... 2

*Reexamining Inter Partes Reexamination,* Institute for Progress (April 2008) .................. 1, 15, 16

## Rules

37 C.F.R. § 997 ........................................................................................................................... 21

Fed. R. Civ. P. 1 ............................................................................................................................. 9

## I.      INTRODUCTION

Defendants' motion for a stay of this patent infringement action should be denied because a stay will result in interminable delay of this action for — as the statistics demonstrate — at least six and a half years on average; a stay will also only increase the length, costs, and complexity of this dispute; and a stay will not narrow the issues for trial in any meaningful way. Further, a stay will be unfairly prejudicial to Plaintiff *e*Plus, Inc. ("*e*Plus"), and its patent licensees, who will be forced to compete against defendants' ongoing and unabated infringement during the duration of the stay and likely through the dates of expiration of one or all of the patents-in-suit.

Every realistic estimate of the duration of *inter partes* reexamination proceedings projects that it will be *at least six and a half years and likely more* before the proceeding defendant Lawson Software ("Lawson") has just requested with the PTO will be completed. *See* Declaration of former PTO Commissioner Harry Manbeck, Esq. ("Manbeck Dec."), ¶¶ 42-50 ; *Reexamining Inter Partes Reexamination,* Institute for Progress (April 2008) (hereinafter, "Institute for Progress Paper ") (estimating expected pendency of *at least 6.5 years* for appealed *inter partes* reexaminations); *see also Bartex Research, LLC v. Fedex Corp.,* 611 F. Supp. 2d 647, 651 (E.D. Tex. 2009) (citing and agreeing with analysis in Institute for Progress Report as partial basis for denying stay motion).

In fact, in the nearly ten-year history of the *inter partes* reexamination statute, *not a single case* has yet gone through the entire process of a complete *inter partes* reexamination at the PTO and an appeal to the Federal Circuit. *Id.* The completion of an appealed *inter partes* reexamination within three years — as defendants "optimistically" suggest will occur — is literally unheard of. Thus, as one commentator has concluded, the grant of a stay of litigation

pending an *inter partes* reexamination is effectively "game over," as it may allow the infringer to run out the clock on the patent. R. Sterne, *Guest Post: Hot Topics in US Patent Reexamination* (Mar. 10, 2009) (available at www.patentlyo.com/patent/reexamination). That concern is all the more present here, where the patent-in-suit for which Lawson has requested reexamination will expire before the reexamination is completed. Manbeck Dec., ¶¶ 57-58.

Moreover, neither the ongoing *ex parte* reexamination of *less **than half*** of the claims of ***one*** of the three patents-in-suit,[1] nor Lawson's newly-requested *inter partes* reexamination of a second patent-in-suit, are likely to lessen the costs of this dispute, nor are they likely to narrow the issues for trial. For example, Lawson's recent *inter partes* request has already been rejected by the PTO as ***defective***.[2] Assuming *arguendo* that Lawson cures these defects and the PTO grants the reexamination request — which is by no means certain at this point — nonetheless there are three patents-in-suit in this litigation.[3] The two reexaminations combined pertain to only the '172 Patent claims and only twenty (20) out of forty-five (45) claims of the '683 Patent. More than half of the claims of the '683 Patent and all of the claims of the '516 Patent are not being reexamined at all. Currently, only 20 out of 79 claims total in the three patents-in-suit are under reexamination. And, if Lawson's reexamination request is granted, then only 25 out of 79 claims will be under reexamination. Thus, unlike the scenarios presented in the case law relied

---

[1] As discussed *infra* at 8-9, contrary to defendants' allegations, the *ex parte* reexamination is nowhere near final. That proceeding is pending an "Examiner's Answer" before the file can be transferred to the Board of Patent Appeals and Interferences ("BPAI") at the PTO. If *e*Plus does not prevail before the BPAI, it has an appeal as of right to the United States Court of Appeals for the Federal Circuit. All the claims of the patent are valid and enforceable until the full appeal process is completed. *Texas MP3 Technologies v. Samsung Elec.*, 2007 WL 3219372 (E.D. Tex. 2007). Notwithstanding the preliminary stage of this proceeding, it has already consumed over three years.

[2] Unless and until Lawson's reexamination request is actually granted by the PTO, this very Court's precedent ***holds*** that the motion for a stay is premature. *Heinz Kettler Gmbh & Co., KG v. Indian Indus., Inc.*, 592 F. Supp. 2d 880, 882 (E.D. Va. 2009) (Smith, D.J.).

[3] The three patents at issue in this litigation are: U.S. Patent No. 6,023,683 (the "'683 Patent"), U.S. Patent No. 6,055,516 (the "'516 Patent") and U.S. Patent No. 6,505,172 (the "'172 Patent").

2

upon by defendants, *there is no prospect that the reexaminations will preclude the need for litigation and trial in this Court.*

At trial defendants will undoubtedly assert against the unreexamined '683 and '516 Patent claims the *very same prior art* involved in the two reexamination proceedings and more. Further, the reexaminations will not resolve issues of claim construction, infringement, inequitable conduct, or any of the other half-dozen or more additional defenses the defendants have asserted in this case.

The reexaminations will not resolve invalidity defenses raised under Sections 101 (subject matter) or 112 (indefiniteness, written specification), nor will they resolve defendants' allegations of invalidity due to incorrect or omitted inventors. Even as to invalidity defenses under Sections 102 (anticipation) or 103 (obviousness), at most there is a *prospect* that the reexaminations *might* resolve some issues as to *some* claims, but only for such invalidity defenses based upon patents or "printed publication" prior art, the sole forms of prior art that *may* form the basis for a reexamination.

Further, if resolved in *e*Plus's favor, the ongoing *ex parte* reexamination of the '683 Patent *will not* bind or estop these defendants at all, and they will undoubtedly assert the very same prior art in this litigation against the very same reexamined '683 Patent claims in addition to the claims of the other two patents-in-suit, albeit six or seven years from now.

And with respect to Lawson's new *inter partes* request, defendants have sought to avoid the estoppel provisions of the statute, 35 U.S.C. § 315(c), by having only *one party* make the request. Thus, even if *e*Plus prevails in the *inter partes* reexamination, only Lawson will be estopped from asserting this same prior art against the same patent claims, and even Lawson will

3

not be estopped from raising Section 102 and 103 defenses based on "newly discovered prior art." *Id.*

Moreover, here again nothing prevents these defendants from asserting the same prior art relied upon in the *inter partes* proceeding against the '516 Patent, which is not being reexamined, or the other claims of the '683 Patent. In short, defendants will undoubtedly seek to use at trial every piece of prior art asserted in the reexamination proceedings and likely additional prior art, even if *e*Plus prevails entirely in those proceedings. Accordingly, it is far more likely that a stay pending reexamination will result in — not prevent — costly and duplicative proceedings.

For such reasons, Chief Judge Paul R. Michel of the U.S. Court of Appeals for the Federal Circuit provided the following comments on proposals for patent reform in light of the lack of efficacy of the current reexamination system:

> Can we really get a faster, better, and cheaper review of challenged patents at the PTO than in the courts? Experience with the existing PTO reexamination procedures raises doubts. And the PTO is already overwhelmed by ex parte examinations with average pendencies of over three years, in some arts, far longer. Is it realistic to expect the PTO to be able to conduct a new form of inter partes reexamination faster and cheaper than the courts? And more accurately? Unless its new procedures, competencies, and powers can be clearly defined, how will we know what consequences would follow? How will we know this is not a mirage in the desert that looks like an oasis, but has no water?

Paul R. Michel, C.J., *Where Are We Now on Patent System Improvements and How Can We Best Make Further Progress?* FTC Hearing on the Evolving IP Marketplace, 4 (Dec. 5, 2008) (available at www.cafc.uscourts.gov/FTCspeech.pdf).

Thus, *e*Plus and its licensees who will have to compete against the defendants' unlicensed infringing products and services will be unfairly prejudiced by a stay. *e*Plus is in the business of providing electronic sourcing and procurement products and services that are covered by (and

marked with) the patents-in-suit. *e*Plus has also granted licenses to a limited number of other businesses that likewise compete with the defendants. Defendants' motion, if granted, would permit them to rankly infringe throughout the greater than six years duration of the stay, which will almost surely continue until after the expiration of one or all of the patents-in-suit.

Although *e*Plus would still be entitled to damages, a stay would effectively deprive *e*Plus of its remedy of injunctive relief, 35 U.S.C. § 283, and the right to exclude others from the use of its property rights. This is particularly harmful where business competitors are involved. The federal courts have repeatedly recognized that a remedy of damages alone does not suffice to prevent irreparable harm to the patentee.

In summary, the notion that staying this case will lessen costs, reduce complexity, and narrow the issues for trial, is a false promise. Instead, this motion for a stay is simply an effort to delay resolution of this case until one or all of the patents-in-suit have expired. Defendants ask that this Court delay this matter for a minimum of ***six or more years*** in the hope that ***some*** of the issues pertaining to ***some*** of their defenses against ***some*** of the asserted claims of two of the three patents-in-suit might be addressed by the PTO in a manner that is not likely to be fully binding on these parties or this Court. Defendants' request wholly fails to meet the heavy burden set by the Supreme Court in *Landis v. North American Co.*, of "a rare circumstance" in which there is "a clear case of hardship or inequity in being required to go forward." 299 U.S. 248, 255 (1936). *e*Plus therefore respectfully requests that the Court deny defendants' motion.

## II.    BACKGROUND

### A.    The Patents-In-Suit

The patents-in-suit relate to electronic sourcing systems and methods conducted by electronic sourcing systems. An electronic sourcing system, according to the patents, is an electronic system for use by a prospective buyer to locate and find items to purchase from

sources. The electronic sourcing systems and methods automate internal corporate purchasing processes, resulting in considerable savings in time and expense. Corporate customer users may search for items for sale from multiple selected electronic catalogs (each associated with a supplier source), determine whether a selected matching item found in the catalog search is available in the supplier's inventory, find related items available from other suppliers, and build a requisition from the selected matching items found in the catalog search(es). If a requisition is approved, the electronic sourcing system then generates electronic purchase orders to each different supplier identified in the approved requisition. *See, e.g.*, '683 Patent, Col. 3:3-24.

*e*Plus provides electronic procurement software and services that practice the patented inventions and compete with the accused products and services of the defendants. *See* Declaration of Kenneth G. Farber in Support of *e*Plus's Opposition to Defendants' Motion to Stay Proceedings ("Farber Dec.") at ¶¶ 3-12.

**B.** **_e_Plus's So-Called "Long Litigious History" Has Already Resulted In A Prior Jury Verdict Of Willful Infringement And Patent Validity In This Very District**

Defendants oddly characterize *e*Plus as having "a long litigious history involving the patents-in-suit," although defendants mention only a single lawsuit in which *e*Plus sought to enforce these patents. In actuality, excepting the litigation against these defendants, there have been only two prior cases in which *e*Plus sued to enforce these patents. The first of these cases — never mentioned in defendants' brief — was brought in the Alexandria Division of this Court against Ariba, a competitor of *e*Plus and one of the largest e-procurement software companies in the United States. Farber Dec., ¶ 13. In a 2005 trial before Judge Leonie Brinkema, *a jury held that Ariba willfully infringed all of the asserted claims of these same three patents-in-suit, and that all of the asserted claims were valid*. After the jury verdict was returned but before the

6

Court proceeded to the damages phase of the trial, the parties rapidly settled the case with Ariba taking a license to the patents-in-suit. *Id.*

The second such case was that referred to in defendants' brief, in which *e*Plus sued to enforce the patents against another of its largest competitors, SAP. As defendants note, that case was tried before Judge Spencer in the Richmond Division. After some of the impaneled jurors were excused from service for various reasons, the remainder of the jurors were unable to reach a decision and the Court declared a mistrial. The parties thereafter agreed to submit the case to Judge Spencer for a bench ruling; however, before that occurred SAP agreed to settle the case and, again, took a license to the patents-in-suit. Farber Dec., ¶ 14. Accordingly, two of the largest e-procurement software companies operating in the United States have paid for the right to practice the inventions of the patents-in-suit and are licensed to do so.

## C. After Nearly Three Years, The '683 *Ex Parte* Reexamination Is Not Near Completion And There Has Been No "Final Rejection" Of Any Of The '683 Claims By The PTO

Defendants' characterization of the status of the pending '683 Patent reexamination proceeding and Lawson's request for reexamination of the '172 Patent is highly misleading in many respects.

First, only *20 of the 45 claims* in the '683 Patent are subject to a pending *ex parte* reexamination proceeding.[4] Claims 1-25 of the asserted '683 Patent are *not* the subject of *any* reexamination proceeding. *See* Manbeck Dec., ¶ 14. Moreover, *none of* the '516 Patent claims are the subject of *any* reexamination. Manbeck Dec., ¶ 5 n.1. In addition, the PTO has not yet decided to grant Lawson's request for *inter partes* reexamination of the '172 Patent. Indeed, Lawson's reexam request has initially been rejected as *defective*. Manbeck Dec., ¶¶ 36-39.

---

[4] The *ex parte* reexamination of the '683 Patent was first requested over three years ago in July 2006. Manbeck Dec., ¶ 14.

Thus, as of this date, only 20 claims out of 79 claims of the three patents-in-suit are subject to a pending reexamination proceeding in the PTO or only 25% of the claims in suit.[5]

Nor is the '683 Patent reexamination proceeding at an alleged "advanced" stage, or under a "final" PTO decision, as defendants suggest. Although the PTO Examiner has issued a final Office Action in the '683 proceeding, this Office Action is by no means the final stage of the process. After issuance of a final Office Action, the Patent Owner then has the right to appeal an Examiner's rejection to the PTO's Board of Patent Appeals and Interferences ("BPAI"), as *ePlus* did here. Manbeck Dec., ¶ 53. The Examiner must then file an Answer to the Patent Owner's Appeal Brief. Here, the PTO Examiner has yet to file his Answer. *Id.* In some cases, the Patent Owner may file a Reply Brief if the Examiner raises a new issue in the Answer. *Id.*

However, once the issues are fully briefed, the file may then be transferred from the Examining Branch to the BPAI. The Patent Owner may then file a request for oral hearing and the oral hearing is typically conducted within six to twelve months after the request for oral hearing is filed. Manbeck Dec., ¶ 54. The BPAI typically issues its decision within one to three months after the oral hearing, although there is no deadline and the decision may take longer. *Id.* The Patent Owner may file a request for a rehearing of any unfavorable BPAI decision within two months after receipt of the BPAI decision. The BPAI's decision on the request for rehearing typically issues within one to two months thereafter although there is no deadline for the decision. *Id.*

If the BPAI's decision remains unfavorable, the Patent Owner has the statutory right to appeal the decision to the Federal Circuit. Although the median time for disposition in the

---

[5] Defendants criticize *ePlus* for having the temerity to initiate this action when 20 of the 79 claims are the subject of the *ex parte* reexamination. Given that there is no definite time frame for the conclusion of that reexamination and the patents are of finite duration, what else would defendants have *ePlus* do? Indeed, each of the moving defendants has asserted a defense of laches, thereby contradicting their own argument.

Federal Circuit for an appeal of a PTO decision is approximately 9 months, there is no set deadline by which the Federal Circuit must decide the appeal. Manbeck Dec., ¶ 55.

Thus, as is clear, the PTO Examiner's pending rejections are only interim findings. A reexamination proceeding is not completed, and does not make any changes to the patent under reexamination, until a reexamination certificate is issued that cancels claims, confirms claims and/or modifies the claims. *See infra* at 21. This is so even if claims have been finally rejected or finally confirmed by the Examiner or the BPAI. Manbeck Dec., ¶ 59. The PTO is free to reconsider its initial determinations in a reexamination at any time prior to issuing a reexamination certificate. *See Fresenius Med. Care Holdings*, 2007 WL 1655625 at *4 (N.D. Cal. June 7, 2007); *see also* Manbeck Dec., ¶¶ 59-61.

## III. ARGUMENT

### A. In Order To Obtain The Extraordinary Remedy Of A Stay, Defendants Must Make Out A Clear Case Of Hardship Or Inequity In Being Required To Go Forward

The Supreme Court in *Landis* provided the authoritative standard for evaluating a request for a stay of litigation pending the result of another proceeding. 299 U.S. at 254-55. The *Landis* Court held that a movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. *Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.*" *Id.* (emphasis added). [6]

---

[6] The Federal Rules also require that courts administer cases to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Further, the Civil Justice Reform Act "mandates the prompt resolution of civil cases in federal court," and a plaintiff "is entitled to the reasonably prompt resolution of its case." *Cequent Trailer Prods., Inc. v. Diversi-Tech Corp.*, 2008 WL 819750, *2 (N.D.N.Y. Mar. 25, 2008).

Defendants outline an oft-used three-factor test for whether stays should be granted in favor of patent reexamination proceedings before the PTO. This test, if followed in the fashion advocated by defendants, is, in large part, a self-fulfilling prophecy. The test, articulated in *Softview Computer Prods. v. Haworth, Inc.*, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000), focuses largely on whether a patent infringement case might be simplified through a narrowing of issues by staying the litigation pending PTO reexamination. Given that reexamination of a patent almost invariably leads to some sort of a decision from the PTO as to the validity of certain claims (albeit a decision that might not be binding on parties to litigation), an overly simplistic approach results in this test arguably being met in many cases. Such a simplistic approach, however, impermissibly departs from Supreme Court precedent regarding stays and effectively shifts the burden away from where it must be under the law — with the movant.

Indeed, although Defendants cite *Landis* as a passing reference for the unremarkable proposition that a district court has the right to control its own docket, *see* Def.'s Memo. at 5, nowhere do defendants mention the *Landis* Court's requirement that the stay movant "make out a clear case of hardship or inequity in being required to go forward, if there is even a *fair possibility* that the stay for which [the party] prays will *work damage* to someone else," nor do they acknowledge the Court's emphasis that stays should be granted only in "*rare circumstances*." *Landis,* 299 U.S. at 255 (emphasis added); *see also id.* at 256 ("the burden of making out the justice and wisdom of a departure from the beaten track lay *heavily* on the petitioners, the suppliants for relief" (emphasis added)).[7]

---

[7] *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14-15 (1983) (recognizing courts' "virtually unflagging obligation ... to exercise the jurisdiction given them" to decide controversies) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)) (recognizing that a trial court may abstain from exercising jurisdiction, whether by dismissal or by delay, only in "exceptional circumstances.").

This very year the Supreme Court has reiterated its holding in *Landis,* stating that "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009). "The fact that the issuance of the stay is left to the court's discretion 'does not mean that no legal standard governs that discretion .... '[A] motion [to a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id.* (quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 139 (2005)).

In this instance, the Court must apply the traditional standard for a stay, which involves consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 1756 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). Defendants do not even address their arguments to this standard.[8]

The Federal Circuit has, in turn, applied the principles of *Landis* and stated that "[i]n deciding to stay proceedings indefinitely, a trial court must first identify a ***pressing need*** for the stay. The court must then balance interests favoring a stay against interests frustrated by the action. ***Overarching this balancing is the court's paramount obligation to exercise jurisdiction*** timely in cases properly before it." *Cherokee Nation v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (emphasis added).

---

[8] Defendants' arguments indirectly touch on certain of the factors, for example, by arguing the likelihood that their reexamination request will be granted or that the claims may be cancelled or amended. However, their argument is merely one of ***numerical probabilities*** based on other cases; they present no argument based on the actual claims of the three patents-in-suit. They present no facts from which this Court could find they face irreparable harm if the Court allows the litigation to proceed, or that the public interest favors delaying litigation for 6.5 years or more.

This Court has also applied the principles set out by the Supreme Court. *Aventis Pharma Deutchland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 489 (E.D. Va. 2005), for example, acknowledged that "[a] party seeking a stay 'must justify it by clear and convincing circumstances,' and these circumstances must weigh *more heavily* than the potential harm to the party against whom the stay applies." (quoting *Landis*, 299 U.S. at 254-55) (emphasis added). Indeed, the *Aventis* court recognized that a party has a right to have its case heard and stated that "[t]his Court is of the firm belief that *justice delayed is justice denied.*" *Id.* (emphasis added).

Patent infringement litigation should be treated no differently than any other type of case for the purpose of whether to grant a stay in favor of another proceeding, such as a PTO reexamination. *Landis* and its progeny must be followed here. Indeed, the Supreme Court has noted on two recent occasions that "traditional principles of equity" apply to patent cases "no less than in other cases governed by such standards." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (rejecting the Federal Circuit's specialized test for declaratory judgment jurisdiction for patent cases and applying the test used in other types of cases); *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 394 (2006) (instructing the district court to apply "the traditional four-factor framework that governs the award for injunctive relief" instead of applying a special rule for patent matters).

This Court "is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the Court must analyze." *NTP, Inc. v. Research in Motion, Ltd.,* 397 F. Supp. 2d 785, 787 (E.D. Va. 2005). Indeed, the interminable length of reexamination proceedings, discussed *infra*, and the ease with

12

which they are initiated,[9] suggests if anything that considerable caution be used before granting a stay of litigation based on such proceedings.

Accordingly, the burden is on defendants to show that the hardship of going forward "weighs *more heavily*" on them than the potential harm of suspending the case indefinitely weighs against *e*Plus. Here, defendants do not and cannot demonstrate a "pressing need" for a stay of this case pending resolution of the reexamination requests that pertaining only to some of the claims of two of the three patents-in-suit. Neither do the defendants establish a "clear case of hardship or inequity in being required to go forward." *Landis,* 299 U.S. at 254-55.

For example, although defendants complain of having to expend time and money on litigation, *the courts have squarely rejected the cost of defending litigation as a clear hardship warranting a stay. See, e.g., Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir. 2005) (holding that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*"). By contrast, there is not merely the "fair possibility" but a near-certainty that the stay defendants seek "will work damage" to *e*Plus, because a stay will deprive *e*Plus and its licensees of the ability to exclude these unlicensed competitors from unlawfully practicing the inventions of the patents-in-suit for the duration of the stay. Indeed, as discussed *infra,* PTO reexamination proceedings are so protracted and interminable in duration that in all likelihood at least the '172 and '516 Patents will expire entirely before the *inter partes* proceeding recently requested by Lawson will be completed; thus, a stay would effectively deny *e*Plus the remedy of injunctive relief afforded by the patent statute. 35 U.S.C. § 283. In the meantime, defendants will be permitted to continue their infringement unabated.

---

[9] *See* Def.'s Br. at 3 (noting that 95% of *inter partes* reexamination requests are granted).

**B.      Defendants' Request For A Stay Of Proceedings With Respect
To The '172 Patent Is Premature**

As defendants acknowledge, Lawson filed its request for a reexamination of the '172

Patent claims with the PTO only on July 10, 2009, and the PTO has initially rejected that

request.[10] No reexamination request has been made with respect to the '516 Patent-in-Suit, or

with respect to twenty-five of the claims of the '683 Patent-in-Suit.

To the extent defendants rely upon Lawson's request with respect to the '172 Patent as

the basis for their stay motion, their motion is premature as a matter of law under the established

precedent of this Court. Defendants rely upon cases ostensibly granting stays before the PTO

has acted upon reexamination requests, *see* Def's. Br. at 12, n.3; however, defendants nowhere

cite this Court's recent published decision to the contrary in *Heinz Kettler*, 592 F. Supp. 2d at

882.

Adopting what appears to be the majority view, in *Heinz Kettler,* Judge Smith held that:

> *[t]he plain language of 35 U.S.C. § 318 renders [defendant's] motion
> premature.* That section indicates that a stay may be obtained *once an order for
> reexamination has been issued*, and does not seem to contemplate that a stay is
> appropriate before reexamination has been ordered. Because [defendant's]
> request for reexamination is still pending, a stay is premature. Put simply, at this
> juncture, a stay of this litigation is inappropriate.

*Id.* (emphasis added).

Judge Smith took note of one of the cases relied upon by defendants here, characterizing

it as one of a "few courts" that have concluded a stay is appropriate in view of a pending

reexamination request. *Id.* at 882 n.5. Judge Smith expressly disagreed, however, holding that

---

[10] If Lawson cures the deficiencies in its reexamination request, the PTO has 90 days from the filing date of any amended request in which to grant or deny the request for reexamination. 35 U.S.C. § 312. By that time, discovery in this case will have been well under way and will be near completion. Indeed, the pretrial Orders entered by this Court require that plaintiff's discovery close by November 23, 2009, and that the trial commence on February 1, 2010. *See Fujitsu Ltd. v. Nanya Tech. Corp.,* 2007 U.S. Dist. LEXIS 83581, *8 (N.D. Cal. Nov. 6, 2007) (denying stay where discovery was argued to have not progressed significantly but only four months remained until conclusion of fact discovery).

"the court can find no reason to depart from the very language of the 35 U.S.C. § 318, which dictates the timing of obtaining a stay." *Id.*

Accordingly, to the extent defendants rely on Lawson's recent request for reexamination of the '172 Patent, their motion is premature because the request has not yet been granted.[11]

### C. Contrary To The Requirements Of The Statute, *Inter Partes* Reexaminations Are Not Conducted With "Special Dispatch" And Will Not Be Anywhere Near Their Conclusion In Three Years

Defendants appear to suggest that the *inter partes* reexamination Lawson has just requested — albeit rejected by the PTO — will be concluded in approximately three years. Def's. Br. at 12 (citing average and median pendency data). This is surely not the case, as commentators analyzing reexamination proceedings have determined that the parties should expect them to last *at least 6.5 years* through the appeals to the Federal Circuit, notwithstanding the statutory command that the proceedings be conducted "with special dispatch." *See* Institute for Progress Paper at 1, 5; *Bartex,* 611 F. Supp. 2d at 651 (citing Institute for Progress study and estimating entire process of *inter partes* reexamination as requiring an average of 78.4 months); *Roy-G-Biv Corp. v. Fanuc Ltd.,* 2009 WL 1080854, *2 (E.D. Tex. Apr. 14, 2009) (citing Institute for Progress study and estimating entire length of *inter partes* proceeding as taking between five to eight years); *ESN, LLC v. Cisco Sys., Inc.,* 2008 U.S. Dist. LEXIS 108327, **6-10 (E.D. Tex. Nov. 20, 2008) (relying in part on Institute for Progress study).

---

[11] Not only is Lawson's request for reexamination of the '172 Patent premature, moreover, its reexamination request is likely to be rejected by the PTO as defective and non-compliant with PTO requirements. The PTO has initially rejected Lawson's reexamination request as defective. *See* Notice of Failure to Comply with *Inter Partes* Reexamination Request Filing Requirements ("Notice") attached as Ex. A to Declaration of Brent L. VanNorman ("VanNorman Dec."). For example, the PTO has rejected Lawson's reexamination request because it failed to include a statement pointing out each substantial new question of patentability and a detailed explanation of the pertinency and manner of applying the cited patents and publications to every claim for which reexamination is requested, as required by 35 U.S.C. § 311.

The Institute for Progress Paper also shows that the PTO statistics of average or median pendency times upon which defendants rely dramatically understate the typical length of these proceedings because (i) they include cases in which the patent owner simply failed to respond or defend its patent; and (ii) the proceedings upon which the statistics are based are not yet complete. Manbeck Dec., ¶¶ 42-50; Institute for Progress Paper at 3-5. In reality, there has not yet been a single case in which an *inter partes* reexamination proceeding has been completed all the way through a Federal Circuit appeal in the nearly ten-year history of the statute. *Id.* at 1. That is simply astounding, in a word.

There is no deadline, either statutory or under the PTO rules, for the completion of any phase of an *inter partes* (or an *ex parte*) reexamination once it has been declared and the first office action has been mailed. Manbeck Dec., ¶ 41. Mr. Manbeck's declaration explains in detail the numerous steps that an *inter partes* reexamination entails and concludes, based on review of PTO data, that "in the more than nine years since the *inter partes* statute was enacted, there has only been one *inter partes* reexamination that has progressed from the BPAI to the Federal Circuit." Manbeck Dec., ¶ 45. That reexamination is still pending because it is on appeal to the Federal Circuit. *Id.,* ¶ 47.[12]

Contrary to defendants' suggestion that a stay in this matter would be of short duration, if Lawson's request for reexamination of the '172 Patent is granted, the PTO's statistics indicate that where as here the Patent Owner will actively participate in the reexamination process rather than merely allowing it to proceed undefended, the average pendency of the *inter partes* proceedings is 70 months through the issuance of a BPAI decision. Manbeck Dec., ¶ 49. This

---

[12] Moreover, considering that so few *inter partes* Reexamination Certificates have issued and the circumstances surrounding their issuance, the rate of claims subject to cancellation or amendment does not appear to be a reliable predictor of the rate for all *inter partes* reexaminations. *See Network Appliance Inc. v. Sun*

16

70 month average pendency period further increases if either party appeals the BPAI's decision to the Federal Circuit.[13]

Thus, if Lawson's request for *inter partes* reexamination is ultimately granted by the PTO, it could take almost 7 years, or possibly longer, for a final decision in such a proceeding. Indeed, at a minimum, the '172 Patent could expire prior to the conclusion of the proceeding. Manbeck Dec., ¶ 57.

Staying this litigation in favor of a proceeding that will take at least 6.5 years and likely more does not serve the efficient administration of justice or the public interest. *ESN,* 2008 U.S. Dist. LEXIS 108327 at *9 ("The principle that justice delayed is justice denied applies with full force to the patent process. Staying this case for six-plus years when this Court can resolve the matter more expeditiously is unfairly prejudicial to [plaintiff].") (quotation omitted). Or as stated by another district court:

> there appears to be a growing concern among at least some judges in this district that, on balance, *staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification to justify the delay.* This concern stems in part from the unpredictable but often lengthy duration of the stay due to the length of PTO reexamination proceedings ... in contrast to the salutary effect of firm deadlines on efficient case management.

*Network Appliance,* 2008 WL 2168917 at *3 (emphasis added).

### D. The *Inter Partes* Reexamination, If Granted, Will Not Narrow The Issues For Trial

Defendants further suggest that the *inter partes* reexamination will narrow the issues for trial, as it will resolve issues of claim construction and invalidity. In reality, it is highly unlikely

---

*Microsystems Inc.,* 2008 WL 2168917, **3-4 (N.D. Cal. May 23, 2008) ("The Court concludes that these general and limited statistics are not very helpful in predicting the outcome of issuing a stay in this case.").

[13] As set forth above, based on the Federal Circuit's statistics, it should take on average at least 9 additional months to reach a final decision regarding the reexamination, and perhaps longer.

that the reexamination will narrow the issues for trial in any meaningful way. To the contrary, a stay of this action is likely to cause, rather than avoid, the need for duplicative procedures to resolve the issues between the parties.

First, it bears emphasis that the *inter partes* statute contains a limited estoppel provision that precludes the requester of the reexamination from relying (in subsequent litigation) upon the prior art that was the subject of the *inter partes* reexamination in which the validity of the patent was upheld.[14] 35 U.S.C. § 315(c). Lawson was the only defendant to request the reexamination. Thus, it appears the other two defendants have intentionally avoided joining Lawson's reexamination request in order that they not be estopped at trial from relying upon the very same prior art that Lawson urges upon the PTO as the basis for reexamination.[15] *See Tesco Corp. v. Weatherford Int'l, Inc.,* 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) (holding that alleged benefits of stay were considerably less where there were defendants that were not party to the reexamination proceeding and therefore were not subject to estoppel); *Stormedia Texas, LLC v. CompUSA, Inc.,* 2008 U.S. Dist. LEXIS 55690, *7 (E.D. Tex. July 23, 2008) (denying stay where several defendants were not parties to reexamination proceeding and would therefore not be precluded from advancing same invalidity arguments at trial as presented in reexamination); *cf. Cooper Techs. Co. v. Thomas & Betts Corp.,* 2008 WL 906315, *2 (E.D. Tex. Mar. 31, 2008) (holding that where patents-in-suit were related and shared written description, but one of the patents was subject to *ex parte* reexamination from which estoppel would not apply, stay would be denied because issues would not be simplified).

---

[14] The *ex parte* reexamination statute does not contain a similar provision. *See generally* 35 U.S.C. §§ 301-07.

[15] Thus, defendants have chosen an *inter partes* proceeding in order that Lawson may participate in the proceeding and in order that the delay caused be as long as possible, yet they have brought their request in a manner to avoid the impact of the estoppel provisions of the *inter partes* statute on this litigation.

18

Second, the only prior art that may be the subject of a reexamination proceeding consists of patents and printed publications. 35 U.S.C. § 301(a). Accordingly, all other forms of prior art cannot and will not be addressed in the PTO proceeding.

Third, no invalidity defenses other than Section 102 (anticipation) and 103 (obviousness) are addressed in the reexamination. Accordingly, defenses under Section 101 (subject matter), 112 (e.g., indefiniteness, written specification), incorrect or improper inventorship, or inequitable conduct, *all of which have been asserted by one or more defendants in this case*, will not be resolved in the reexamination. *Ariba, Inc. v. Emptoris, Inc.,* 2007 U.S. Dist. LEXIS 78857, *4 (E.D. Tex. Oct. 23, 2007) (finding a stay would not preserve many litigation resources since the PTO does not consider infringement issues, grounds for invalidity other than prior art, or the laches, estoppel and waiver defenses raised by Emptoris).

Fourth, the PTO does not resolve issues of claim construction in a reexamination proceeding. To the contrary, in a reexamination the PTO uses a different standard and gives the claims their broadest possible construction (rendering them more susceptible to invalidity). *In re Yamamoto,* 740 F.2d 1569, 1571 (Fed. Cir. 1984). Thus, even though two different Judges of this Court have already given considerable thought to these claims and issued claim construction rulings, the PTO is free to discard those rulings, *and has done so*.[16] And for that same reason, whatever claim construction the PTO utilizes in the reexaminations is not binding in subsequent litigation before this Court. *E.I. DuPont de Nemours & Co. v. Cetus Corp.*, 1990 WL 305551, *4 (N.D. Cal. Dec. 3, 1990).

Finally, defendants do not argue to the contrary, but it bears heavy emphasis that a reexamination will not resolve any issues of infringement by defendants' accused products and

---

[16] In fact, that is exactly what the Examiner in the *ex parte* reexamination of the 20 '683 Patent claims has done to date. *See infra* at n. 17.

19

services. Neither will the proceeding resolve many of defendants' other defenses, such as laches, waiver, or lack of standing. *Ariba,* 2007 U.S. Dist. LEXIS 78857 at *4.

**E. The Current Reexamination Of Some Of The '683 Patent Claims Shows That The *Ex Parte* Reexamination Process Will Not Resolve Any Of The Issues Before This Court In A Timely Manner**

Defendants also suggest that the ongoing *ex parte* reexamination of 20 of the 45 '683 Patent claims will terminate shortly. However, defendants are wrong both in claiming that there have been "final" rejections by the PTO of these 20 claims, and that this *ex parte* proceeding will finish anytime soon.

As set forth in the accompanying Declaration of former PTO Commissioner Harry Manbeck, a so-called "final office action" by an examiner in a reexamination proceeding is *not* a final determination as to the validity of the patent claims as defendants wrongly assert. Manbeck Dec., ¶¶ 52-55. As *e*Plus has done in this case, the Patent Owner has a right to appeal an examiner's rejection to the BPAI. Once the Patent Owner files its appeal brief (again, as *e*Plus has done), an examiner has two months in which to file an "answer." *Id.*, ¶ 53. The process under which the BPAI decides the issues could easily take as much as an additional year, although, again, there is no deadline for its decision. *Id.*, ¶¶ 53-54. If the BPAI's decision is unfavorable to the Patent Owner, the Patent Owner has the statutory right to appeal the decision to the Federal Circuit, with all the time that such an appeal entails. *Id.*, ¶ 55.

Claims of a patent under reexamination are not cancelled until a final action or Action Closing Prosecution ("ACP") has issued, all appeals have been exhausted, and a reexamination certificate has issued. This has not occurred with respect to the twenty '683 Patent Claims undergoing *ex parte* reexamination, and, considering that the examiner has not yet filed his Answer to *e*Plus's Appeal Brief, and the file has yet to even be transferred to the BPAI, it does

not appear that this will occur any time soon. *NTP,* 397 F. Supp. 2d at 788 ("Reality and past

experience dictate that several years might very well pass from the time when a final office

action is issued by the PTO to when the claims are finally and officially 'confirmed' after

appeals."); *see* 37 C.F.R. § 997(a) ("Upon the conclusion of an *inter partes* reexamination

proceeding, the Director will issue a certificate in accordance with 35 U.S.C. 316...."); 35 U.S.C.

§ 316(a) ("In an *inter partes* reexamination proceeding...., when the time for appeal has expired

or any appeal proceeding has terminated, the Director shall issue and publish a certificate

canceling any claim of the patent finally determined to be unpatentable, confirming any claim of

the patent determined to be patentable, and incorporating in the patent any proposed amended or

new claim determined to be patentable."); *see also* Manual of Patent Examining Procedures

("MPEP") § 2288 (Upon conclusion of the *ex parte* reexamination proceeding, the examiner

must prepare a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" (NIRC) by

completing form PTOL-469); Manbeck Dec., ¶ 57.

"A reexamination is complete only upon the statutorily mandated issuance of a

reexamination certificate." *Fresenius,* 2007 WL 1655625 at *4, n.2. The PTO is free to

reconsider its initial determinations in a reexamination prior to issuing a reexamination

certificate. *Id.* Thus, all of the claims of the '683 patent are valid and enforceable as a matter of

law unless and until the conclusion of the entire reexamination process, including the appeals

process, determines otherwise. *See In re Bingo Card Minder Corp.,* 1998 WL 130514, *2 (Fed.

Cir. Feb. 25, 1998); 35 U.S.C. § 307(a) (certificate canceling or confirming claims of patent on

reexamination is issued when the appeals process has been exhausted); *see also Construction

Equip. Co. v. Powerscreen Int'l Distribution, Ltd.*, 2009 WL 437703, *9 (D. Or. Feb. 19, 2009).

Until a certificate is issued in a reexamination, final disposition of any reexamination proceeding

is unknown, and therefore, until such a certificate issues, it remains possible that the PTO's determination in the reexamination will have no ultimate bearing on the scope or life of the patent. *See Fresenius*; *see also Texas MP3 Techs. v. Samsung Elecs.*, 2007 WL 3219372 (E.D. Tex. 2007).

Further, while defendants here again suggest (based on PTO statistics alone) that an *ex parte* proceeding should be complete in less than two years, Def's. Br. at 12, they concede — as they must — that the *ex parte* reexamination of the twenty '683 Patent claims has already consumed *over three years* — with no clear end in sight.[17]  Accordingly, this Court can have no confidence that the *ex parte* reexamination will conclude in an expeditious manner.

### F.    It Is Impossible That Reexamination Would Result In Cancellation Of All Claims Of All Patents-In-Suit

In addition, defendants' reliance upon the PTO's reexamination statistics as a basis for presuming what will occur with respect to *e*Plus's patents is not compelling.  Although the PTO grants a majority of the requests it receives for reexamination, in only 11% of all *ex parte* reexaminations are all of the claims subject to reexamination canceled.  Manbeck Dec., ¶ 52 and Exhibit I thereto.

As to *inter partes* reexaminations, since 1999, out of 682 reexamination requests filed to date, only 12% have concluded.  Manbeck Dec., ¶ 47.  Only eleven out of 682 *inter partes* reexaminations have received a BPAI decision to date.  Manbeck Dec., ¶ 45.  And, in the more than nine years since the *inter partes* reexamination statute was enacted, there has only been one *inter partes* reexamination that has progressed from the BPAI to the Federal Circuit.  *Id.*  Given

---

[17] Indeed, the Examiner's interim findings will not likely be sustained on appeal as his pending grounds for rejection are based upon a legally improper claim construction.  He has interpreted the claim term "requisition" to mean the same thing as the separate claim term "purchase order."  It is fundamental that the claim term "requisition" cannot be construed to mean "order" when the patent claims separately recite and distinguish "orders" from "requisitions."  Manbeck Dec., ¶¶ 24-32.  *See also CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308 (Fed. Cir. 2000) (court must presume that the use of different terms in the claims connotes different meanings).

the fact that so few *inter partes* reexaminations have concluded to date, the rate that claims were subject to cancellation or amendment in those proceedings is not a predictable indicator of the rate of cancellation or amendment for all *inter partes* reexaminations. Manbeck Dec., ¶ 50.

### G. Defendants' "Prosecution History" Argument Provides No Basis For A Stay

Defendants repeatedly argue that the Court should stay the litigation because the reexaminations will create additional "prosecution history" for the patents-in-suit. Def's. Br. at 3, 8-10. Again, this argument is not compelling, and, indeed, "proves too much." The patents-in-suit already have a "prosecution history" based on their original examination by the PTO. Moreover, all three patents-in-suit have already been the subject of *two* trials before this Court (one of which resulted in a jury verdict of willful infringement and patent validity), and two Judges of this Court have already examined the prosecution history and construed the asserted claims of these patents. These two litigations entailed a full record of discovery and expert opinion. The defendants in those cases were large software companies — much larger than the defendants here — and aggressively represented by sophisticated legal counsel.

Defendants do not and cannot explain why forcing *e*Plus to again defend its patents before the PTO before litigating these patents for a third time in this Court is likely to have any incremental benefit to the resolution of the issues before this Court. Indeed, if there is some benefit to be gained by creating more prosecution history before the PTO, why then would multiple reexamination proceedings not be even more preferable? Defendants do not even attempt to explain any specific aspect of the asserted claims for which additional prosecution history is either necessary or desirable, and similar appeals to a multiplicity of proceedings have been rejected by this Court and others. *NTP,* 397 F. Supp. 2d at 788 ("Valid patents would be rendered meaningless if an infringing party were allowed to circumvent the patents' enforcement

by incessantly delaying and prolonging court proceedings which have already resulted in a

finding of infringement."); *see also Roy-G-Biv,* 2009 WL 1080854 at \*2 ("To convince the Court

that a stay will actually simplify a case, the requesting party must do more than proffer oft-cited

reexamination statistics and generic judicial efficiency arguments" and noting the Court's

experience that reexaminations may actually complicate cases by creating additional prosecution

history estoppel arguments).

### H.    A Careful Analysis Of The Factors In *Bausch & Lomb* Relied Upon By Defendants Shows That A Stay Of Proceedings Is Not Warranted

Defendants recite a litany of supposed "benefits" articulated in a district court decision

that will result if the Court stays this action. Def's. Br. at 11 (discussing *Bausch & Lomb Inc. v.*

*Rexall Sundown, Inc.,* 554 F. Supp. 2d 386, 389-90 (W.D.N.Y. 2008) ).  While superficially

enticing, these benefits evaporate upon close inspection.  A careful analysis reveals that the

supposed benefits are entirely speculative and outweighed by detriments that will result from a

stay.

### 1.    The reexamination will not result in all prior art first being presented to the PTO.

The reexaminations will not, as defendants contend, result in "[a]ll prior art first being

presented to the PTO." Def's. Br. At 11 (citing *Bausch & Lomb*, 554 F. Supp. 2d at 389-90).

This supposed benefit is based on an assumption that is simply false.  There is no guarantee

whatsoever that all the prior art defendants will rely upon in this case will be presented to the

PTO in the reexaminations.  In fact, exactly the opposite is likely.  Indeed, the prior art that may

provide the basis for a reexamination must be limited to patents and printed publications. *See*

*Bartex,* 611 F. Supp. 2d at 653 (the movant "may still challenge the validity of the ... patent with

non-printed prior art references or newly discovered prior art, even if the patent survives

24

reexamination with all claims confirmed."); *ESN,* 2008 U.S. Dist. LEXIS 108327 at \*\*11-12

(noting that much prior art would be asserted at trial that was not the subject of reexamination

proceeding). Further, as noted *supra,* more than half of the claims of the '683 patent and all of

the claims of the '516 patent are not even subject to the reexamination requests. Therefore, prior

art asserted against those claims will never have been presented to the PTO. *In re Phoenix*

*Licensing LLC,* 2009 U.S. Dist. LEXIS 17525, \*\*12-13 (D. Ariz. Feb. 24, 2009) (stay would not

simplify issues where only one of three patents-in-suit was subject to reexamination); *Mars, Inc.*

*v. JCM Am. Corp.,* 2006 WL 3373284, \*\*6-7 (D.N.J. Nov. 21, 2006) (stay was not warranted

where only one of two patents-in-suit undergoing reexamination). Further, two of the moving

defendants did not join in Lawson's reexamination request, undoubtedly in order to avoid the

estoppel provisions of the *inter partes* statute. Those defendants will likely argue they may rely

on prior art at trial even if the PTO has determined the art not to be invalidating.

### 2.      The PTO will not resolve discovery problems for this Court.

Defendants' assertion that "[m]any discovery problems relating to prior art can be

alleviated by the PTO examination," Def's. Br. at 11 (citing *Bausch & Lomb*, 554 F. Supp. 2d at

389-90), is simply not borne out by the facts. The PTO does not resolve discovery issues for this

Court. Indeed, discovery in a reexamination proceeding is virtually non-existent, and an entirely

distinct set of rules and procedures applies in the PTO proceedings. *See generally* MPEP,

§§ 2600, *et seq.* No provision is made for subpoenas or depositions of third party prior art

witnesses.

### 3.      This suit will not be dismissed as a result of effective invalidation of the patent.

Defendants' assertion that "[i]n those cases resulting in effective invalidation of the

patent, the suit will likely be dismissed," Def's. Br. at 11, has no application to this case where

most of the claims of the '683 Patent and all of the claims of the '516 Patent are not subject to reexamination. *See supra* at 2. And even if all of the claims from the litigation were subject to the stay, this purported "benefit" is true only if *all* of the claims of *all three patents* are invalidated, a highly unlikely event, particularly where, as here, the patents have been previously upheld by a jury.

### 4.    Staying this case will not encourage settlement.

Defendants provide neither evidence nor logic to support the assertion that "[t]he outcome of the reexamination may encourage a settlement without the further use of the Court." Def's. Br. at 11. To the contrary, and by way of example, in the *NTP* matters that defendants cite to, according to this Court's PACER docket it appears that none of those cases have settled during the several years since the Court stayed them. *See NTP, Inc. v. Palm, Inc.,* Civil Action No. 3:06-cv-836-JRS (E.D. Va.); *NTP, Inc. v. Palm, Inc.,* 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) (staying case); *see also NTP, Inc. v. T-Mobile USA, Inc.*, Civil Action Nos. 3:07-cv-548-551-JRS (E.D. Va.); *NTP, Inc. v. T-Mobile USA, Inc.,* 2007 U.S. Dist. LEXIS 82063 (E.D. Va. Nov. 2, 2007) (staying case). Meanwhile, those reexaminations are still languishing before the PTO, and are now in their *seventh year*. *NTP,* 397 F. Supp. 2d at 786 n.2 (stating that reexaminations were commenced in January 2003). In the *MercExchange v. eBay* litigation, again according to this Court's PACER docket, a settlement was not reached until this Court determined it would *not* stay that aspect of the judgment that enforced a trial verdict of willful infringement and validity of one of the patents. *MercExchange, L.L.C. v. eBay, Inc.,* 500 F. Supp. 2d 556, 564-65 (E.D. Va. 2007). Indeed, it would appear that staying litigation in deference to these interminable administrative proceedings would provide defendants with no reason to settle whatsoever, particularly where, as here, a stay could effectively preclude the patentee from having the remedy of an injunction.

### 5. The complexity and length of litigation will not be reduced by entering the reexamination record.

Here again, it simply does not follow that if "[t]he record of reexamination [will] likely be entered at trial," it will "thereby reduc[e] the complexity and length of litigation." Def's. Br. at 11. That the record of reexamination could be entered at trial does not necessarily or even likely reduce the complexity and length of litigation. The reexamination will not resolve claim construction or infringement issues, or inequitable conduct defenses. As discussed *supra,* the estoppel provisions of the *inter partes* statute are rather limited and, since only Lawson filed the request, the other defendants will undoubtedly contend they are free to rely on prior art even if the PTO finds it unpersuasive.

Moreover, defendants urge as another supposed benefit that the reexamination will actually *create additional* prosecution history for the patents. In other words, defendants evidently hope that by requiring a reexamination (during which the PTO adopts the broadest possible construction of the claims) the patentee will be forced to present additional arguments for patentability; defendants will subsequently contend such arguments create prosecution history estoppel. Thus, as defendants' own arguments reveal, the most likely result will be that the reexaminations will actually increase the complexity of trial. *See Roy-G-Biv,* 2009 WL 1080854 at *2 ("[i]t is this Court's experience that the reexamination process may actually complicate a case by creating additional prosecution history estoppel and disavowal arguments that must be addressed during claim construction.").

### 6. The reexamination will not significantly limit issues, defenses and evidence.

With respect, the assertion that "[i]ssues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination," Def's. Br. at 11, is so unsupported as to be little more than a platitude. For all the above reasons, the reexamination is not likely to reduce

27

the issues, defenses, or evidence at trial. Indeed, defendants propose to increase the amount of evidence at trial by using the reexaminations to create additional prosecution history.

### 7. A stay will not reduce costs for the parties or the Court.

Contrary to defendants' assertion, the cost of this dispute will not likely be reduced for the parties or the Court. Def's. Br. at 11. This assertion would only bear out if all the claims asserted in the litigation are invalidated as a result of the reexaminations, a result which clearly cannot be achieved in this case.

### I. ePlus Will Be Unfairly Prejudiced By A Stay Of Lengthy And Indefinite Duration

In being required to go forward with this litigation without the benefit of a stay, defendants are no more prejudiced than the typical litigant in the federal court system. *See Lockyer,* 398 F.3d at 1112 (having to defend suit, without more, does not satisfy movant's burden under *Landis*). On the other hand, *e*Plus would be unfairly prejudiced if required to wait *6.5 years or more* before being permitted to go forward with this litigation. *e*Plus and its licensees are competitors of the defendants. Farber Dec., ¶¶ 2-10, 12. "Where the parties are direct competitors, a stay would likely prejudice the non-movant." *Tesco,* 599 F. Supp. 2d at 851; *see also Bartex,* 611 F. Supp. 2d at 652 (finding that patentee could be irreparably harmed by stay even though it did not practice its patent, which is not the case here). Further, the delay in discovery caused by a stay, and the danger that evidence will be lost, also weighs against a stay. *Id.; accord Sorensen v. Ampro Tools Corp.,* 2009 U.S. Dist. LEXIS 21627, *6 (N.D. Cal. Mar. 9, 2009) (stay denied because, *inter alia,* delay could result in loss of evidence, and duration of reexamination was unknown); *Network Appliance,* 2008 WL 2168917 at *5 ("the lapse of time during reexamination could result in the loss of evidence over time).

Finally, the '516 and '172 Patents expire in August 2014, and the '683 Patent expires in February 2017. Manbeck Dec., ¶ 10. Accordingly, a stay of this litigation in light of the *inter partes* proceeding will likely result in at least the '172 and '516 Patents and possibly all three patents-in-suit expiring before the case is tried. *e*Plus would therefore be deprived of the remedy of injunctive relief afforded a patent owner under the statute. 35 U.S.C. § 283.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for a stay of proceedings should be denied. Defendants wholly fail to meet their heavy burden of showing a clear case of hardship or inequity in being required to go forward.

Respectfully submitted,

Date:  July 29, 2009                              /s/
                                   Gregory N. Stillman (VSB #14308)
                                   Brent VanNorman (VSB #45956)
                                   **HUNTON & WILLIAMS LLP**
                                   500 East Main Street
                                   Suite 1000
                                   Norfolk, VA 23510
                                   Telephone:  (757) 640-5300
                                   Facsimile:  (757) 625-7720
                                   gstillman@hunton.com
                                   bvannorman@hunton.com

                                   Scott L. Robertson (*admitted pro hac vice*)
                                   Jennifer A. Albert (*admitted pro hac vice*)
                                   David M. Young (VSB #35997)
                                   Robert D. Spendlove (VSB #75468)
                                   **GOODWIN PROCTER LLP**
                                   901 New York Avenue, N.W.
                                   Washington, DC 20001
                                   Telephone:  (202) 346-4000
                                   Facsimile:  (202) 346-4444
                                   srobertson@goodwinprocter.com
                                   jalbert@goodwinprocter.com
                                   dyoung@goodwinprocter.com
                                   rspendlove@goodwinprocter.com

Shirley Sperling Paley *( pro hac vice application pending)*
James D. Clements *(pro hac vice application pending)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
spaley@goodwinprocter.com
jclements@goodwinprocter.com

*Attorneys for Plaintiff*
*ePlus, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2009, I will electronically file the foregoing Plaintiff ePlus, Inc.'s Brief in Opposition to Defendants' Motion to Stay Proceedings, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367)
*(hand delivered on July 29, 2009)*
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone: (757) 624-3289
Facsimile: (757) 624-3169
senoona@kaufcan.com
*Counsel for Defendant Perfect Commerce, LLC,*
*SciQuest, Inc. and Lawson Software, Inc.*

James J. Briody (VSB #32128)
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC  20004-2415
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
jim.briody@sablaw.com
*Counsel for Verian Technologies, Inc.*

George E. Kostel (VSB #34757)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue, NW  Suite 900
Washington, DC  20001
Telephone: (202) 712-2800
Facsimile: (202) 712:2862
george.kostel@nelsonmullins.com
*Counsel for Verian Technologies, Inc.*

31

I certify that I will email the foregoing to the following non-filing users:

Daniel Johnson, Jr. *(admitted pro hac vice)*
Rita E. Tautkus *(admitted pro hac vice)*
Morgan, Lewis & Bockius, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1392
Facsimile: (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and
Lawson Software, Inc.***

Robert W. Busby, Jr. (VSB #41312) *(admitted pro hac vice)*
Bradford A. Cangro *(admitted pro hac vice)*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone: (202) 739-5970
Facsimile: (202) 739-30001
rbusby@morganlewis.com
bcangro@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and
Lawson Software, Inc.***

Kenneth W. Brothers *(pro hac vice application pending)*
Matthew J. Ricciardi *(pro hac vice application pending)*
Dickstein, Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-4128
Facsimile: (202) 420-2201
brothersk@dicksteinshapiro.com
ricciardim@dicksteinshapiro.com
***Counsel for Defendant Perfect Commerce, LLC***

32

I certify that I will mail a copy of the foregoing to the following counsel:

Craig N. Killen
Frank B.B. Knowlton
Jeremy C. Whitley
Nelson, Mullins, Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500
craig.killen@nelsonmullins.com
frank.knowlton@nelsonmullins.com
jeremy.whitley@nelsonmullins.com
***Counsel for Verian Technologies, Inc.***

_____/s/_____
Gregory N. Stillman

Gregory N. Stillman (VSB #14308)
**HUNTON & WILLIAMS LLP**
500 East Main Street
Suite 1000
Norfolk, VA 23510
Telephone: (757) 640-5300
Facsimile: (757) 625-7720
gstillman@hunton.com
Counsel for Plaintiff, ePlus, Inc.