IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:09cv232-HCM-TEM |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PERFECT COMMERCE, INC., SCIQUEST, | ) | |
| INC., LAWSON SOFTWARE, INC., and | ) | |
| VERIAN TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

NOTICE OF PLAINTIFF ePLUS, INC.'S APPENDIX OF CASES FOR BRIEF IN
OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

# TABLE OF AUTHORITIES

Tab

*Ariba, Inc. v. Emptoris, Inc.,*
  2007 U.S. Dist. LEXIS 78857 (E.D. Tex. Oct. 23, 2007) ....................................................... 1
*Cequent Trailer Prods., Inc. v. Diversi-Tech Corp.,*
  2008 WL 819750 (N.D.N.Y. Mar. 25, 2008) .......................................................................... 2
*Construction Equip. Co. v. Powerscreen Int'l Distribution, Ltd.,*
  2009 WL 437703 (D. Or. Feb. 19, 2009).................................................................................. 3
*Cooper Technologies Co. v. Thomas & Betts Corp.,*
  2008 WL 906315 (E.D. Tex. Mar. 31, 2008) ........................................................................... 4
*E.I. DuPont de Nemours & Co. v. Cetus Corp.,*
  1990 WL 305551 (N.D. Cal. Dec. 3, 1990).............................................................................. 5
*ESN, LLC v. Cisco Sys., Inc.,*
  2008 U.S. Dist. LEXIS 108327 (E.D. Tex. Nov. 20, 2008) ..................................................... 6
*Fresenius Med. Care Holdings,*
  2007 WL 1655625 (N.D. Cal. 2007) ....................................................................................... 7
*Fujitsu Ltd. v. Nanya Tech. Corp.,*
  2007 U.S. Dist. LEXIS 83581 (N.D. Cal. Nov. 6, 2007) ......................................................... 8
*In re Bingo Card Minder Corp.,*
  1998 WL 130514 (Fed. Cir. Feb. 25, 1998)............................................................................. 9
*In re Phoenix Licensing LLC,*
  2009 U.S. Dist. LEXIS 17525 (D. Ariz. Feb. 24, 2009)......................................................... 10
*Mars, Inc. v. JCM Am. Corp.,*
  2006 WL 3373284 (D. N.J. Nov. 21, 2006) ........................................................................... 11
*Network Appliance Inc. v. Sun Microsystems Inc.,*
  2008 WL 2168917 (N.D. Cal. May 23, 2008) ........................................................................ 12
*NTP, Inc. v. Palm, Inc.,*
  2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) ....................................................... 13
*NTP, Inc. v. T-Mobile USA, Inc.,*
  2007 U.S. Dist. LEXIS 82063 (E.D. Va. Nov. 2, 2007) ......................................................... 14
*Roy-G-Biv Corp. v. Fanuc Ltd.,*
  2009 WL 1080854 (E.D. Tex. Apr. 14, 2009)......................................................................... 15
*Softview Computer Prods. v. Haworth, Inc.,*
  2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000)........................................................................ 16
*Sorensen v. Ampro Tools Corp.,*
  2009 U.S. Dist. LEXIS 21627 (N.D. Cal. Mar. 9, 2009)........................................................ 17
*Stormedia Texas, LLC v. CompUSA, Inc.,*
  2008 U.S. Dist. LEXIS 55690 (E.D. Tex. July 23, 2008)....................................................... 18
*Texas MP3 Technologies v. Samsung Elec.,*
  2007 WL 3219372 (E.D. Tex. 2007) ...................................................................................... 19

# TAB 1

LEXSEE

⚠
Caution
As of: Jul 29, 2009

**ARIBA, INC., Plaintiff, v. EMPTORIS, INC. Defendant.**

**Civil Action No. 9:07-CV-90**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, LUFKIN DIVISION**

**2007 U.S. Dist. LEXIS 78857**

**October 23, 2007, Decided**
**October 23, 2007, Filed**

**SUBSEQUENT HISTORY:** Later proceeding at Ariba, Inc. v. Emptoris, Inc., 2008 U.S. Dist. LEXIS 57530 (E.D. Tex., July 29, 2008)

**CORE TERMS:** reexamination, patent, invalidity, discovery, disadvantage, simplify, weigh, printed publications, trial date, infringement, electronic, auctions, vacated, ex parte

**COUNSEL:** [*1] For Ariba Inc, Plaintiff: Robert Thomas Haslam, III, LEAD ATTORNEY, Aaron B Thacker, Amy K Van Zant, Brian D Kaider, Jaideep Venkatesan, Kyle S Robertson, Heller Ehrman LLP- Menlo Park, Menlo Park, CA; Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx; Michael Charles Smith, The Roth Law Firm, Marshall, TX, US; Robert D Fram, Heller Ehrman White & McAuliffe - San Francisco, San Francisco, CA.

For Emptoris Inc, Defendant: David J Beck, LEAD ATTORNEY, Beck Redden & Secrest, Houston, TX; Stephen M Muller, Wayne L Stoner, Wilmer Cutler Pickering Hale & Dorr - Boston, Boston, MA.

**JUDGES:** Ron Clark, United States District Judge.

**OPINION BY:** Ron Clark

**OPINION**

**ORDER DENYING DEFENDANT'S MOTION TO STAY**

Before the court is Defendant's Motion to Stay [Doc. # 17] seeking to stay this case until the United States Patent and Trademark Office ("PTO") concludes its *ex parte* reexamination of all of the patents-in-suit.

**I. Procedural History**

On April 19, 2007, Plaintiff Ariba, Inc. ("Ariba") filed suit against Defendant Emptoris, Inc. ("Emptoris") alleging that Emptoris infringes United States Patent Nos. 6,499,018; 6,216,114; 6,230,146; and 6,408,283. These patents involve methods and systems for conducting electronic auctions.

On July [*2] 30, 2007, Emptoris filed its requests for *ex parte* reexamination with the PTO of all of the patents. On the same day, Emptoris moved the court to stay this litigation pending reexamination.

On October 10, 2007, the PTO vacated the requests for reexamination for failure to comply with 37 CFR 1.510. Specifically, the request papers did not include "[a] statement pointing out each substantial new question of patentability based on the cited patents and printed publications," and "a detailed explanation of the pertinency and manner of applying the patents and printed publication to every claim for which reexamination is requested. The requests also failed to include a "certification that a copy of the request filed by a person other than the patent owner has been served in its entirety on the patent owner."

**II. Analysis**

Page 1

The court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L. Ed. 153 (1936). How to best manage the court's docket "calls for the exercise of judgement, which must weigh competing interests and maintain an even balance." *Id.* at 254-55, 57 S.Ct. at 166. The moving party "must make out [*3] a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255, 57 S.Ct. at 166.

In deciding whether to stay litigation pending reexamination, this court considers: 1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; 2) whether a stay will simplify the issues in question and trial of the case; and 3) whether discovery is complete and whether a trial date has been set. *EchoStar Technologies Corp. v. Tivo, Inc.*, 2006 U.S. Dist. LEXIS 48431, 2006 WL 2501494 (E.D. 2006).

1. Prejudice or Disadvantage to Plaintiff

Emptoris argues that there will be no prejudice or disadvantage to Ariba because the litigation is in its early stages. Ariba states that the patents were issued in 1999, and a stay of any significant time will result in spoliation of evidence.

It is undisputed that the parties are direct competitors in the electronic auctions market. The PTO has vacated the requests for reexamination, so reexamination most likely will not even begin until at least 3 months after the new request is filed. *See* 35 U.S.C. 303(a) and 312(a). Moreover, the PTO [*4] has not provided any definitive guidance on the length of time required for reexamination proceedings. ¹ This court is mindful of the costs imposed by a lengthy stay, and a timely resolution of the issues will aid both party.

> 1  As of March 31, 2007, the average pendency of reexamination (from filing date to certificate issue date) is 23.3 months.

Under these circumstances, this factor weighs in favor of denying a stay.

2. Simplification of Case

Emptoris contends that reexamination will simplify issues for trial. Even if all of the patents were to end up in reexamination, the PTO only considers invalidity based on prior art. 35 U.S.C. §§ 301 and 311(b)(2). This means that the PTO does not consider infringement issues, or other grounds for invalidity. It will not address Emptoris' laches, estoppel and waiver defenses, which Emptoris states are key defenses in this case. Statistically, 90% of all reexaminations result in the confirmation of at least some of the claims in a patent. Therefore, even after re-examination, if only one claim remained, invalidity would continue to be an issue, and so a stay would not preserve many resources.

While a stay always has the potential to simplify the issues [*5] in the litigation to some extent, infringement and other invalidity arguments will remain. The court concludes that the issues in this case would not be sufficiently simplified to justify a stay. *See Imax Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1033 (C.D. Cal. 2005)(if the stay will not reduce the number of issues, then a stay would not preserve many resources). Therefore, this factor weighs in favor of denying a stay.

3. Completion of Discovery and Trial Date

Discovery is an on-going process, and the Rules of Practice for Patent Cases in the Eastern District of Texas, as well as this court's Scheduling Order, require the parties to prepare for discovery very early in the litigation. Under the circumstances of this case, the court finds that this factor is neutral.

### III. Conclusion

Based on the foregoing, this court finds that the benefits of granting Emptoris' Motion to Stay do not outweigh the burdens of delay caused by a reexamination proceeding in this case.

IT IS THEREFORE ORDERED that Defendant's Motion to Stay [Doc. # 17] is **DENIED.**

So **ORDERED** and **SIGNED** this 23 day of the **October, 2007.**

Ron Clark, United States District Judge

# TAB 2



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 819750 (N.D.N.Y.)
(Cite as: 2008 WL 819750 (N.D.N.Y.))

Page 1

**C**Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
CEQUENT TRAILER PRODUCTS, INC.
v.
DIVERSI-TECH CORP.
No. 5:05-CV-74 NAM/GJD.

March 25, 2008.

David Bogdan Cupar, Esq., for Plaintiff.

Edward R. Conan, Esq., for Plaintiff.

Alan L. Edwards, Esq., for Defendant.

Harold L. Burstyn, Esq., for Defendant.

### ORDER

GUSTAVE J. DiBIANCO, United States Magistrate
Judge.

*1 Defendant has filed a Motion to Stay these pro-
ceedings. (Dkt. No. 81). Plaintiff opposes the motion.
(Dkt. No. 83). Chief United States District Judge
Norman A. Mordue has referred this motion to me for
resolution.

This case is a patent infringement action related to
United States Patent No. 6,722,686 (the "'686 Patent",
also the "Koy Patent"), assigned to and owned by
plaintiff. The '686 Patent is for a "Coupler Locking
Device and Method" that secures an unattended trailer
hitch so that it cannot be attached to a vehicle. (Dkt.
No. 1, Ex. A, 5).

### 1. Defendant's Motion to Stay

Defendant requests a stay of these proceedings in
order to file a request for reexamination of the
'686/Koy Patent with the United States Patent and

Trademark Office ("U.S.P.T.O."). (Dkt. No. 81, 4).
Defendant requests that the stay remain in place until
the completion of the reexamination by the U.S.P.T.O.
Id.Defendant states that the request for reexamination
has not yet been filed because defendant wants "to
obtain the benefits of expedited proceedings."(Dkt.
No. 5-6). The defendant states that once a stay is
granted, the reexamination proceeding will be expe-
dited by the U.S.P.T.O. (Dkt. No. 81, 6).

Defendant makes several arguments in support of the
motion to stay. Defendant's main argument is that
reexamination is needed to resolve "contradictory
positions" with respect to the '686/Koy Patent. (Dkt.
No. 81, 4). The defendant argues that while the
U.S.P .T.O. granted the '686/Koy Patent, the
U.S.P.T.O., in a separate patent prosecution, rejected
certain claims of the '686/Koy Patent as unpatentable.
Id. at 3-4.The defendant argues that it is necessary for
this contradiction to be resolved in order for this liti-
gation to proceed, and that it is "in the interest of
judicial economy" for the litigation in this court to be
stayed while the U.S.P.T.O. conducts a reexamination.
(Dkt. No. 81, 4). Defendant argues that the reexami-
nation would resolve a fundamental issue of this liti-
gation, namely the "patentability of the Koy claims"
(Dkt. No. 81, 5); that parallel proceedings could result
in "a race to the finish line" with possible conflicting
outcomes (Dkt. No. 81, 6); and that "expedited re-
examination ... [is] a relatively quick and inexpensive
forum to resolve key issues of the present litigation"
(Dkt. No. 81, 7).

Defendant's legal basis for the motion to stay is case
law from other districts that "indicates that district
courts routinely grant pre-trial stays when PTO re-
examinations are underway and evidence suggests that
the patents-in-suit may not survive reexamination."
MercExchange v. eBay, Inc., 500 F.Supp.2d 556, 563
(D.Va.2007) (internal citations omitted ). Defendant
relies on a Western District of New York case to show
the difficulties of resolving conflicting results in a
court and the U.S .P.T.O., and the inability to recover
damages if the court orders damages for infringement
before the U.S.P.T.O. declares a patent invalid. (Dkt.
No. 81, 7); Bausch & Lomb, Inc. v. Alcon Lab., Inc .,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 819750 (N.D.N.Y.)
(Cite as: 2008 WL 819750 (N.D.N.Y.))

914 F.Supp. 951, 952 (W.D.N.Y.1996).

### 2. *Plaintiff's Opposition to the Motion to Stay*

**\*2** Plaintiff opposes the motion to stay as improper. Plaintiff states that in the absence of a filed request for reexamination, the motion "is insufficient as a matter of law to grant a stay."(Dkt. No. 83, 4). Plaintiff argues that defendant has been aware of the alleged grounds for reexamination *since 2005,* but has declined to pursue a request for reexamination until this point. *Id.* Plaintiff argues that the motion is brought for "improper dilatory purposes." (Dkt. No. 83, 2).

### 3. *Discussion*

The court notes that this case was filed in January 2005. (Dkt. No. 1). In the three years that this case has been pending, the parties have engaged in discovery and dispositive motion practice. Chief Judge Mordue denied defendant's motion for summary judgment on September 30, 2007. (Dkt. No. 73). Chief Judge Mordue conducted a settlement conference in December 2007, and ordered that the deadline for a motion to stay was January 18, 2008. On January 4, 2008, Chief Judge Mordue ordered new discovery deadlines and set a trial ready date of July 19, 2008. (Dkt. No. 80).

A court's decision whether to stay is discretionary. *Bausch & Lomb,* 914 F.Supp. at 953.

Although a court is not obligated to stay an infringement case based upon a parallel examination, it may opt to do so in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination.

*MercExchange,* 500 F.Supp.2d at 563. Here, the court cannot make a prediction as to whether the '686/Koy Patent will survive reexamination. As no action has been initiated by defendant in the U.S.P.T.O., there has been no activity by the U.S.P.T.O. to indicate that it would conduct a reexamination.[FN1] While the court may benefit from the guidance of the U.S.P.T.O. on a reexamination of the '686/Koy Patent, any reexamination may take a very long time.

> FN1. Under 35 U.S.C. § 304, the patent is reexamined where the Commissioner determines that there is a substantial new question of patentability.

This litigation has been pending for over three years. A stay would result in a delay, and possibly a very lengthy delay. The Civil Justice Reform Act mandates the prompt resolution of civil cases in federal court. *See* 28 U.S.C. 471 *et seq.* The plaintiff is entitled to move forward in this court, and is entitled to the reasonably prompt resolution of its case.

The defendant may initiate a request for reexamination of its own accord at any time. The court notes that defendant could have raised this issue, or filed a request for reexamination at any point during the three-year pendency of this case. The Federal Circuit has noted that the federal courts and the U.S.P.T.O. "take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions." *Ethicon v. Quigg,* 849 F.2d 1422, 1428 (Fed.Cir.1988). It is not necessary for this court to wait for the results of a possible reexamination. The court will deny defendant's motion for a stay because of the age of this case, and because of the late stage of this litigation.

**\*3 WHEREFORE** it is hereby

**ORDERED,** that defendant's Motion to Stay these proceedings is *denied;* and it is further

**ORDERED,** that any request for extensions of discovery or other deadlines must be made to Chief Judge Mordue since he ordered the present deadlines after a settlement conference.

N.D.N.Y.,2008.
Cequent Trailer Products, Inc. v. Diversi-Tech Corp.
Not Reported in F.Supp.2d, 2008 WL 819750 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 3

Westlaw.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

☞Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
CONSTRUCTION EQUIPMENT COMPANY, an
Oregon corporation; and Roger G. Smith, a resident of
Oregon, Plaintiffs,
v.
POWERSCREEN INTERNATIONAL DISTRIBU-
TION, LTD., a corporation of Northern Ireland;
Powerscreen of America, Inc., a Kentucky corpora-
tion; Powerscreen of Washington, Inc., a Washington
corporation; and Powerscreen of Northern California,
a California corporation, Defendants.
**No. 96-CV-1574-AC.**

Feb. 19, 2009.

West KeySummary
**Patents 291 ☞317**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k317  k. Permanent Injunction. Most
Cited Cases
A manufacturer and designer of mobile screening was
not entitled to stay enforcement of a permanent in-
junction that prevented the manufacturer from in-
fringing upon certain patents of a competitor based on
a significant change in factual conditions. The manu-
facturer alleged that rejection by the Patent and
Trademark Office (PTO) of the competitor's patent
claims constituted a significant change in the factual
conditions on which the permanent injunction was
based. However, the PTO's rejection of the relevant
claims regarding the patent was only the first step in
establishing whether the patent was enforceable, and
was not a sufficient change to require a stay of the
permanent injunction.

ORDER

BROWN, Judge.

*1 Magistrate Judge James V. Acosta issued Findings
and Recommendation (# 608) on October 20, 2008, in
which he recommends the Court deny Defendants'
Rule 60(b) Motion (# 593) to Stay Enforcement of
Permanent Injunction. Defendants filed timely Ob-
jections to the Findings and Recommendation. The
matter is now before this Court pursuant to 28 U.S.C.
§ 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magis-
trate Judge's Findings and Recommendation, the dis-
trict court must make a *de novo* determination of that
portion of the Magistrate Judge's report. 28 U.S.C. §
636(b)(1).*See also United States v. Reyna-Tapia*, 328
F.3d 1114, 1121 (9th Cir.2003)*(en banc); United
States v. Bernhardt*, 840 F.2d 1441, 1444 (9th
Cir.1988).

**I. Background**

Plaintiff Construction Equipment Company (CEC) is
the owner of Patent No. 5,234,564 ('564 Patent). In
1996 CEC and Plaintiff Roger G. Smith, Chairman of
the Board of CEC and inventor of the patented device,
filed this action against various Defendants alleging
they were selling a machine that infringed on the '564
Patent.

On February 6, 1997, Magistrate Judge Donald C.
Ashmanskas [FN1] found the '564 Patent is not invalid
and rejected Defendants' claims that the '564 Patent
was anticipated and that the '564 Patent is obvious
based on prior art. Magistrate Judge Ashmanskas
concluded Defendants' device infringes the '564 Pat-
ent. Magistrate Judge Ashmanskas issued a prelimi-
nary injunction prohibiting Defendants from manu-
facturing, offering for sale, selling, or using any
equipment that infringes any of the claims of the '564
Patent.

> FN1. On November 25, 1996, all parties
> consented to proceeding in this matter before
> a Magistrate Judge (# 13).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Magistrate Judge Ashmanskas addressed the issues of prior art again in his June 11, 1998, Opinion and Order and found Claims One and Two of the '564 Patent are not invalid as anticipated by prior art and that Claims Five, Seven, and Eight are not invalid as obvious.

After a five-day jury trial, the jury rendered a Verdict in favor of Plaintiffs. On July 27, 1999, Magistrate Judge Ashmanskas entered a Final Judgment that Claims One, Two, and Five through Eight are not invalid, are enforceable, and were willfully infringed by Defendants. Magistrate Judge Ashmanskas permanently enjoined Defendants from infringing Claims One, Two, and Five through Eight of the '564 Patent. Defendants appealed, and the Federal Circuit affirmed on September 13, 2000.

On January 26, 2007, Defendants filed a request for reexamination of the ' 564 Patent with the Patent and Trademark Office (PTO) and asserted the ' 564 Patent is invalid based on prior art not considered by the PTO at the time of its original examination of the '564 Patent.

On January 10, 2008, the PTO rejected Claims One, Two, and Five through Eight of the '564 Patent. On May 9, 2008, Plaintiffs appealed the PTO ruling to the Board of Patent Appeals and Interferences (Board). Plaintiffs' appeal is still pending.

On August 19, 2008, Defendants filed a Motion to Stay Enforcement of Permanent Injunction based on the January 10, 2008, ruling of the PTO.

*2 As noted, Magistrate Judge Acosta [FN2] recommends denying Defendants' Motion. Defendants filed timely Objections asserting (1) Magistrate Judge Acosta applied an incorrect legal standard; (2) equity demands a stay of the permanent injunction; (3) a significant change in circumstances requires a stay of the permanent injunction; and (4) *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), constitutes a significant change in law that requires a stay of the permanent injunction.

> FN2. On September 3, 2008, this matter was reassigned from Magistrate Judge Ashmankas to Magistrate Judge Acosta. On Oc-

tober 8, 2008, Magistrate Judge Acosta issued an Order in which he directed the parties in this matter to inform him of "their decision regarding proceeding to conclusion of this matter before a U.S. Magistrate Judge."All parties did not file a second consent to proceed before a Magistrate Judge. Accordingly, Magistrate Judge Acosta issued a Findings and Recommendation and referred it to this Court. Pursuant to 28 U.S.C. § 636(c)(4), this Court finds good cause for the procedure Magistrate Judge Acosta offered to the parties upon his assignment to this matter. The Court, therefore, reviews this Findings and Recommendation accordingly.

**II. Appropriate legal standard.**

As Magistrate Judge Acosta properly noted, relief under Federal Rule of Civil Procedure 60(b)(5) is appropriate when " 'the party seeking relief from an injunction ... [meets its initial burden by showing] a significant change either in factual conditions or in law.'" *See Flores v. Ariz.,* 516 F.3d 1140, 1163 (9th Cir.2008)(quoting *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)). Although Defendants do not assert the *Flores* standard is inappropriate, they contend Magistrate Judge Acosta improperly applied the standard because he "impose[d] ... unnecessarily strict and inappropriate, standards on [Defendants'] present motion."Specifically, Defendants assert Magistrate Judge Acosta interpreted the *Flores* standard to allow modifications under Rule 60(b)(5)*only if* certain factors are present even though the *Flores* court merely held modifications under Rule 60(b)(5)*may be* warranted if certain factors are present.

Defendants also assert Magistrate Judge Acosta erred when he applied the standard set forth in *Federal Deposit Insurance Corporation v. Former Officers and Directors of Metropolitan Bank,* 705 F.Supp. 505 (D.Or.1987), because that standard was overruled in *Bellevue Manor Associates v. United States,* 165 F.3d 1249, 1254-57 (9th Cir.1999).

**A. *Flores* standard.**

Magistrate Judge Acosta found when a party has es-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tablished the existence of a significant change in either factual conditions or in law,

relief is appropriate *only if:* 1) the changes make compliance with the injunction "substantially more onerous;" 2) the injunction "proves to be unworkable because of unforeseen obstacles," or 3) enforcement of the injunction "would be detrimental to the public interest."

Findings and Recommendation at 3 (quoting *Flores,* 516 F.3d at 1163) (emphasis added). As noted, Defendants, relying on *Flores,* contend modifications under Rule 60(b))(5) *"may be"* warranted" if one of the above factors is present rather than *"only if."* The Court agrees "may be warranted" is the appropriate standard when a party establishes one of the above factors is present. *See Flores,* 516 F.3d at 1163. Here, however, Magistrate Judge Acosta considered the factors listed; concluded those factors are not present in this case; and, therefore, recommended the Court, in the exercise of its discretion, deny Defendants' Motion. Defendants have not shown how the application of the "may be" standard would change the Magistrate Judge's analysis.

**B. Reliance on *Federal Deposit Insurance Company* standard.**

*3 As noted, Defendants also assert Magistrate Judge Acosta improperly relied on the standard set out in *Federal Deposit* on the ground that the standard set out in *Federal Deposit* was overruled by *Bellevue.*Plaintiffs, in turn, dispute the standards in *Federal Deposit* were overruled.

Magistrate Judge Acosta noted relief should only be granted under Rule 60(b)(5) as follows:

While the language of either [Rule 60(b)(5) or (6) ] is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments...." Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances." Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenu-

ated to a shadow," and that, absent such relief an "extreme" and "unexpected" hardship will result. We think a healthy respect for the finality of judgments demands no less. *Federal Deposit Ins. Corp. v. Former Officers and Directors of Metro. Bank,* 705 F.Supp. 505, 511 (D.Or.1987)(citing *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977) (citations omitted).

Findings and Recommendation at 4. In *Bellevue Manor,* the Ninth Circuit explicitly overruled the "three-part test that a party must meet to gain relief under ...Rule 60(b)(5)" that was announced in *Transgo Incorporated v. Ajac Transmission Parts Corporation,* 911 F.2d 363, 365 (9th Cir.1990). *Bellevue,* 165 F.3d at 1256. The *Transgo* test required a party to establish (1) a substantial change in circumstances or law since the order was entered;

(2) extreme and unexpected hardship in compliance with the order; and

(3) a good reason why the court should modify the order.

*Id.* at 1254.The Ninth Circuit concluded in Bellevue that the "Supreme Court's most recent decision in *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) support[s] the implied abrogation of *Transgo* and the adoption of a more flexible standard for evaluating motions ... [under] Rule 60(b)(5)."*Id.* at 1256.Plaintiffs, however, point out in their Response to Defendants' Objections that the court in *Federal Deposit* did not rely on the standards set out in *Transgo* but instead relied on the standards set out in *Mayberry v. Maroney,* a Third Circuit case that has not been overruled by the Third Circuit. According to Plaintiffs, therefore, *Bellevue* did not overrule *Federal Deposit.*

After reviewing the Findings and Recommendation and the relevant law, the Court concludes Magistrate Judge Acosta applied the proper standard as set out in *Agostini* even though he noted the *Federal Deposit* case. Accordingly, the Court finds Magistrate Judge Acosta applied the correct legal standard.

**III. Equitable stay of permanent injunction.**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Defendants contend Magistrate Judge Acosta erred when he failed to conclude equity demands a stay of the permanent injunction in this matter. The Court notes Defendants raised the same argument in their Motion and Reply, and Magistrate Judge Acosta explicitly addressed that argument in his Findings and Recommendation. Nevertheless, Defendants contend Magistrate Judge Acosta did not sufficiently consider the "basic fairness of granting [Defendants'] motion." Defendants assert they "will be irreparably harmed [without a stay] during a time when the patent which forms the very basis of the injunction is invalid.... On the other hand, staying the permanent injunction does not harm CEC [because it can be] readily compensated in the unlikely event it overcomes the PTO's invalidity determination on appeal."

*4 Magistrate Judge Acosta analyzed Defendants' contention that the decision of the PTO renders the '564 Patent invalid and noted "[t]he PTO's rejection of the relevant claims is only the first step to establishing that the Patent is no longer enforceable."Findings and Recommendation at 5. Magistrate Judge Acosta noted Defendants relied on _Standard Havens Products v. Gencor Industries, Incorporated_, No. 93-1208, 1993 WL 172432 (Fed.Cir. May 21, 1993), a 1993 unpublished Federal Circuit case that, pursuant to Federal Circuit Rule 32.1, has no binding or precedential effect. Nevertheless, Magistrate Judge Acosta analyzed _Standard Havens_ and concluded it was distinguishable. Even if _Standard Havens_ were not distinguishable, Magistrate Judge Acosta found it supported a finding that staying the permanent injunction in this matter is not appropriate. In particular, Magistrate Judge Acosta noted the Federal Circuit in its opinion in _Standard Havens_ after the appeal following remand held a stay of the appellate proceedings was not appropriate even though the PTO had rejected certain claims of the patent on reexamination because

the [PTO's] May 10, 1991 reexamination decision ... rejecting the subject claims is subject to judicial review. 35 U.S.C. §§ 141, 145 (1988). In that sense, it is not a final adjudication of the matter. See 35 U.S.C. § 307(a) (1988)("In a reexamination proceeding ... when the time for appeal has expired or any appeal proceeding has terminated, the Commissioner will issue and publish a certificate can-

celing any claim of the patent finally determined to be unpatentable ...."). Second, Standard Havens stated in its supplemental brief that it intends to institute a civil action in the district court under 35 U.S.C. § 145 challenging the [PTO's] adverse reexamination decision. Hence, it may be many months before the reexamination matter is finally adjudicated. Finally, we note that the [PTO's] reexamination proceeding considering patentability and the district court's infringement suit considering validity are distinct proceedings, with different records and different standards of proof. See _Ethicon, Inc. v. Quigg_, 849 F.2d 1422, 1427 (Fed.Cir.1988)(citing _In re Etter_, 756 F.2d 852, 856 (Fed.Cir.1985).

953 F.2d 1360, 1366 n. 2 (Fed.Cir.1991).

In their Objections, Defendants rely on two cases that they did not argue before Magistrate Judge Acosta to support their assertion that equity demands a stay in this matter: _Life Technologies, Inc. v. Promega Corp._, 189 F.R.D. 334 (D.Md.1999), and _Dusa Pharmaceuticals, Inc. v. River's Edge Pharmaceuticals, LLC_, No. 06-1843, 2007 WL 748448 (D.N.J. Mar.7, 2007). These cases, however, are distinguishable from this matter.

In _Promega Corp._, the court permanently enjoined the defendant from infringing Patent No. 5,244,797 ('797 Patent). 189 F.R.D. at 335. In a later case (_Life Technologies, Inc. v. Clontech Laboratories, Inc._) that did not involve the defendant, the court held the '797 Patent was unenforceable due to inequitable conduct. _Id._ In _Promega Corp._, the defendant moved for relief from the permanent injunction under Rule 60(b)(5) based on the court's ruling of unforceability of the '797 Patent in _Clontech. Id._ The court granted the defendant's motion on the ground that the permanent injunction was no longer equitable because other companies could practice the ' 797 Patent based on the court's ruling in _Clontech,_ but the defendant was still prohibited from doing so under the permanent injunction. _Id._ at 339.Because there has not been a final adjudication of the validity of the '564 Patent in this case, however, the Court has not found the '564 Patent to be unenforceable. In fact, the only ruling regarding the '564 Patent in this Court is the '564 Patent is not invalid.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
(Cite as: 2009 WL 437703 (D.Or.))

Page 5

**\*5** In *Dusa Pharmaceuticals,* the court issued a preliminary injunction enjoining the defendant from manufacturing, selling, or importing its allegedly infringing products. 2007 WL 748448, at \*1. While litigation was pending, the defendant sought reexamination of the patent. *Id.,* at \*2. The Board of Patent Appeals and Interferences granted the request and issued an "Office Action" rejecting all of the claims of the patent. *Id.* The defendant then moved to dissolve the preliminary injunction, and the court granted the defendants' motion. *Id.,* at \*5. Because *Dusa* involved a preliminary injunction rather than a permanent injunction, and the showing required for a preliminary injunction is less rigorous than that for a permanent injunction, the defendant in *Dusa* was only required to establish changed circumstances rather than a *significant* change in circumstances. In addition, the defendant in *Dusa* established the plaintiffs' likelihood of success on the merits had decreased. Here the issue of likelihood of success on the merits is irrelevant because the matter has already been tried and a Judgment has been entered. Accordingly, the Court does not find *Dusa* persuasive under the facts of this case.

Finally, the Court notes Defendants assert they will be irreparably harmed if a stay is not entered because the PTO found claims of the '564 Patent are invalid, and, therefore, Defendants allegedly are "the only competitor[s] that cannot practice the invention claimed in the '564 Patent." This argument is unpersuasive because the decision of the PTO is not final and the '564 Patent cannot be considered invalid under 35 U.S.C. § 282 until pending appeals are complete. Accordingly, no competitors can practice the claimed invention without risk of violating Plaintiffs' patent at this time. As to Defendants' assertion Plaintiffs will not be harmed by a stay, Defendants fail to explain why Plaintiffs will be any less harmed by the stay than they would have been if the Court had not issued the permanent injunction in the first place.

In summary, this Court has considered Defendants' Objections as to the equity of a stay of the permanent injunction and concludes they do not provide a basis to modify the Findings and Recommendation as to this issue. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error

in Magistrate Judge Acosta's Findings and Recommendation as to the equity issue.

**IV. Significant change in factual conditions.**

In their Objections, Defendants reiterate the argument asserted in their Motion and Reply that the PTO's rejection of the '564 Patent claims constitutes a significant change in the factual conditions on which the permanent injunction was based, and, therefore, the Court should grant Defendants' Motion to Stay.

As noted, Magistrate Judge Acosta found, and this Court agrees, the PTO's rejection of the relevant claims of the '564 Patent is only the first step in establishing whether the '564 Patent is enforceable. On that basis, Magistrate Judge Acosta concluded the PTO's rejection does not constitute a significant change in the factual conditions sufficient to require a stay of the permanent injunction.

**\*6** This Court has considered Defendants' Objection as to the effect of the PTO's decision and concludes it does not provide a sufficient basis to modify the Findings and Recommendation as to this issue. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the issue of a significant change in circumstances.

**V. Effect of *eBay.***

In their Reply, Defendants asserted "federal patent law has changed since issuance of the permanent injunction in this case such that the injunction against [Defendants] may not have been an appropriate remedy under present law." Defendants note in *eBay,* the Supreme Court abrogated the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." 547 U.S. at 393. The Court set out a four-factor test that must be met before a court can grant a permanent injunction:

A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

*Id.* at 391.

Defendants asserted in their Reply that "the Court [here] did not have the benefit of *eBay* when issuing the permanent injunction against [Defendants].... As such, the permanent injunction may presently be impermissible under federal law."

Magistrate Judge Acosta addressed this argument and concluded even though Magistrate Judge Ashmanskas did not have the benefit of *eBay* when he granted Plaintiffs' Motion for Permanent Injunction, he considered the threat of irreparable harm, the balance of hardships, and that Plaintiffs would irrevocably suffer the loss of customer contacts and goodwill in addition to monetary losses and, in the end, concluded those factors favored Plaintiffs. Magistrate Judge Acosta, therefore, found the initial decision to issue a permanent injunction in this matter was not impermissible under the law at that time nor later under *eBay.*This Court agrees and, in the exercise of its discretion, finds *eBay* does not present such a significant change in the law as to warrant a stay of the permanent injunction at this stage.

In summary, this Court has considered Defendants' Objection as to the effect of *eBay* and concludes it does not provide a basis to modify the Findings and Recommendation as to this issue at this time. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the issue of a significant change in the law.

## CONCLUSION

*7 The Court **ADOPTS** Magistrate Judge Acosta's Findings and Recommendation (# 607) and, therefore, **DENIES** Defendants' Rule 60(b) Motion (# 593) to Stay Enforcement of Permanent Injunction.

IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

#### *Findings and Recommendation*

Construction Equipment Company ("CEC") is the owner of United States Patent No. 5,234,564 for a compact, transportable machine that sorts bulk material (the "Patent"). In the fall of 1996, CEC and Roger G. Smith, the Chairman of the Board of CEC and the inventor of the machine ("Plaintiffs"), filed this action against various Powerscreen entities ("Powerscreen") alleging that they were selling a machine that infringed on the Patent.

On February 6, 1997, the court found the Patent valid and rejected Powerscreen's claims that the Patent was anticipated and obvious based on prior art, and that Powerscreen's machine was infringing on the Patent. The court issued a preliminary injunction prohibiting Powerscreen from manufacturing, offering for sale, selling or using any equipment which infringes upon any of the claims of the Patent. The court again addressed the issues of prior art in an Opinion entered June 11, 1998, finding that Claims One and Two were not invalid as anticipated by prior art and that Claims Five, Seven and Eight were not invalid as obvious from a combination prior art and a machine designed, marketed and sold by Powerscreen.

After a five-day jury trial, the court entered a verdict in favor of Plaintiffs on April 9, 1999, and on July 27, 1999, entered a final judgment that Claims One, Two, and Five through Eight were valid, enforceable and willfully infringed by Powerscreen and permanently enjoining Powerscreen from infringing on these claims of the Patent. Powerscreen appealed to the Federal Circuit, which affirmed the trial court's ruling on September 13, 2000.

On January 26, 2007, Powerscreen filed a request for reexamination of the Patent with the Patent and Trademark Office ("PTO") asserting that the Patent is invalid based on published prior art not considered by

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
(Cite as: 2009 WL 437703 (D.Or.))

the PTO at the time of the original examination of the Patent. On January 10, 2008, the PTO rejected Claims One, Two, and Five through Eight, as well as some other claims, and advised Plaintiffs on May 5, 2008, that, in the absence of an appeal, the reexamination would be closed. Plaintiffs appealed the PTO ruling on May 9, 2008, to the PTO's Board of Patent Appeals and Interferences ("Board"). The appeal remains pending.

Currently before the court is Powerscreen's motion to stay enforcement of the permanent injunction pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Powerscreen argues that prospective enforcement of the injunction is inequitable based on the PTO's rejection of the infringed claims. Powerscreen also argues that the stay is justified by a change in the factors to be considered by the court when issuing an injunction in a patent infringement action.

### Legal Standard

*8 A party may seek relief from a final judgment, order or proceeding under specific circumstances set forth in Rule 60 of the Federal Rules of Civil Procedure. Rule60(b)(5) provides that on a motion filed by the party and upon such terms as are just, a court may relieve a party from a judgment when "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable."Fed.R.Civ.P. 60(b)(5).

Relief under Rule 60(b)(5) is appropriate when a party seeking relief from an injunction can show "a significant change either in factual conditions or in law." Agostini v. Felton, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)(quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The change in law may be supported by a subsequent change to either statutory or decisional law. Agostini, 521 U.S. at 215. Once a party has established the existence of a significant change, relief is appropriate only if: 1) the changes make compliance with the injunction "substantially more onerous;" 2) the injunction "proves to be unworkable because of unforeseen obstacles," or 3) enforcement of the injunction "would be detrimental to the public interest." Flores v. Arizona, 516 F.3d

1140, 1163 (9th Cir.2007)(quoting Rufo, 502 U.S. at 384 (citations omitted)). The court is obligated to modify an injunction if it "becomes impermissible under federal law." Id. (quoting Rufo, 502 U.S. at 388).

This district has held that relief should be granted under Rule 60(b)(5) only in exceptional circumstances:

> While the language of either [Rule 60(b)(5) or (6) ] is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments...." Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances." Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenuated to a shadow," and that, absent such relief an "extreme" and "unexpected" hardship will result. We think a healthy respect for the finality of judgments demands no less.

Federal Deposit Ins. Corp. v. Former Officers and Directors of Metro. Bank, 705 F.Supp. 505, 511 (D.Or.1987)(citing Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977) (citations omitted).

### Discussion

Powerscreen asserts that it is entitled to a stay of the injunction based on a significant change in both factual conditions and in the law. Specifically, Powerscreen contends that "it is inequitable to continue to enjoin Powerscreen from any activity based on patent claims that are not valid and enforceable."(Mem. Supp.Def.'s Rule 60(b) Mot. Stay Enforcement Permanent Inj. at 2.) Plaintiffs contend that the PTO's rejection of the relevant claims of the Patent is preliminary in nature and does not represent a change in facts until all avenues of appeal are exhausted and the rejection is affirmed by the Federal Circuit Plaintiffs also argue that because the application for reexamination based on art which existed at the time the Patent was issued was not filed for more than seven years after the permanent injunction was issued, Powerscreen's motion to stay is untimely.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**\*9** Powerscreen's argument relies on its assertion that the PTO's initial rejection of the relevant claims makes the claims invalid and unenforceable and that such rejection constitutes a significant change in the landscape of the litigation between the parties. The court disagrees.

The PTO's rejection of the relevant claims is only the first step to establishing that the Patent is no longer enforceable. Plaintiffs have appealed the PTO's ruling to the Board, which has not yet reviewed the rejection of the relevant claims. Once the Board issues its decision, Plaintiffs may then appeal the Board's ruling to the Federal Circuit. 35 U.S.C. § 306. Only after the time for appeal has expired or any appeal proceeding has terminated will a "certificate canceling any claim of the patent finally determined to be unpatentable" be issued and published. Thus, although the PTO's rejection of the relevant claims is termed a "final rejection," it is not a final decision.

The situation currently before the court is comparable to that before the district court in *Agostini,* in which the Supreme Court held that a district court should not second guess the Supreme Court and set aside an injunction even if the district court is convinced that the Supreme Court ruling supporting the injunction no longer is good law. In *Agostini,* the petitioners sought to set aside an injunction entered by the district court on remand reflecting the ruling of the United States Supreme Court in *Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985). *Agostini,* 521 U.S. at 208. The petitioners argued that recent Supreme Court cases addressing the Establishment Clause effectively overruled *Aguilar,* making the prospective enforcement of the injunction inequitable. *Id.* at 209.The district court acknowledged that the "landscape of Establishment Clause decisions has changed" and that "there may be good reason to conclude that *Aguilar's* demise is imminent," but refused to set aside the injunction in the absence of a clear statement from the Supreme Court that *Aguilar* was no longer good law. *Id.* at 214 (quoting App. to Pet. for Cert. in No. 96-553, p. A10, A20). The circuit court affirmed, adopting the district court's analysis. *Id.* at 214.Given the opportunity to squarely address the effect of the recent contrary case law, the Supreme Court concluded that Establishment Clause law had changed so

significantly that petitioners were entitled to the relief requested under Rule 60(b)(5). *Id.* at 237.The Court then praised the district court's restraint in not viewing the contrary case law as overruling *Aguilar,* explaining that only the Supreme Court had the prerogative to overrule its own decisions:

> The trial court acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.

**\*10** *Id.* at 238.

Here, the Federal Circuit has already held that Claims One, Two and Five through Eight of the Patent are valid, enforceable and being infringed by Powerscreen. The PTO has reconsidered the issuance of the Patent in light of prior art which existed but was not before the court at the time the injunction was entered. That decision is subject to an appeal to the Board and then to the Federal Circuit. Like the district court in *Agostini,* this court acknowledges that the PTO's rejection of the relevant claims does raise issues with regard to the enforceability of the relevant claims. Like the district court in *Agostini,* this court is not in a position to second guess whether the Federal Circuit will agree with the PTO rejection once it has a chance to consider the newly offered prior art. Like the district court in *Agostini,* this court is not convinced that it has the authority to usurp a higher court's authority to overrule its own precedent on this issue.

The court is not persuaded otherwise by *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* No. 93-1208, 1993 WL 172432, at\* 1 (Fed.Cir. May 21, 1993), in which the Federal Circuit held that the district court erred by not staying a permanent injunction after a reexamination decision of unpatentability was issued. As an initial observation, the opinion is a nonprecedential opinion issued prior to January 1, 2007, and, therefore, should not have been cited by Powerscreen. Fed. Cir. R. Rule 32.1. *See also Ultrak Inc. v. Radio Engineering Industries, Inc.,* 52 U.S.P.Q.2d 1530, 1531 (N.D.Tex.1999)(*Standard Havens* "is a nonprecedential opinion...."). Next, it appears that the district court in *Standard Havens* was addressing the issue of whether to continue a stay of a

permanent injunction entered by the Federal Circuit, not stay an injunction already in place and affirmed by the appellate court. Finally, the issues of damages and enjoinability had not yet been resolved at the time the reexamination proceeding was initiated in *Standard Havens.* Here, the district court had completed the trial, issued the permanent injunction and imposed damages; the matter had been appealed to the Federal Circuit, which affirmed the district court; and the injunction has been in place for more than seven years. The factual scenario before the court in *Standard Havens* is clearly distinguishable from that presently before the court.

Even if the court assumes that *Standard Havens* is not distinguishable from the case at hand, the language of the *Standard Havens* and the underlying opinions actually supports a finding that a stay of the permanent injunction is not appropriate under the circumstances. After a trial by jury, the district court in *Standard Havens* found the patent at issue to be valid and infringed, awarded nearly $6,000,000 dollars in damages to the plaintiff on the infringement claims and entered a permanent injunction against the defendant on August 8, 1989. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 953 F.2d 1360, 1365 (Fed.Cir.1992). The defendant immediately appealed the judgment to the Federal Circuit and moved to stay the execution of the judgment and imposition of the injunction relying, at least in part, on a reexamination proceeding of the patent based on previously undisclosed prior art initiated on July 10, 1989. The Federal Circuit considered the motion under Rule 8(a) of the Federal Rules of Appellate Procedure, addressed the defendant's chances for success on appeal, weighed the equities with regard to the both the parties and the public, and granted the defendant's motion to stay. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 897 F.2d 511, 513, 515 (Fed.Cir.1990).

**\*11** Concerned about whether a consideration of the substantive issues on appeal should be stayed pending a final decision on the reexamination of the patent, the Federal Circuit asked the parties to brief the issue. Neither party argued in support of a stay and, in a second opinion in the case, the Federal Circuit found that a stay of the appellate proceedings was not appropriate, explaining that:

First, the Board's May 10, 1991, reexamination decision (reconsideration denied September 27, 1991) rejecting the subject claims is subject to judicial review. 35 U.S.C. §§ 141, 145 (1988). In that sense, it is not a final adjudication of the matter. *See* 35 U.S.C. § 307(a) (1988). ("In a reexamination proceeding ... when the time for appeal has expired or any appeal proceeding has terminated, the Commissioner will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable....") Second, Standard Havens stated in its supplemental brief that it intends to institute a civil action in the district court under 35 U.S.C. § 145 challenging the Board's adverse reexamination decision. Hence, it may be many months before the reexamination matter is finally adjudicated. Finally, we note that the Board's reexamination proceeding considering patentability and the district court's infringement suit considering validity are distinct proceedings, with different records and different standards of proof. (citation omitted).

*Standard Havens,* 953 F.2d at 1366 n. 2. The Federal Circuit then addressed the substantive issues on appeal, including the issue of whether the trial court erred in not granting the defendant's motion for new trial based on the withdrawal by the PTO of a Certificate of Correction offered at trial. The trial court reasoned that:

In the absence of a final ruling on this issue [*i.e.,* the reexamination proceeding] by the patent office, the pending proceeding with regard to the Certificate of Correction does not yet rise to the level of "new evidence" as would justify that the judgment be vacated under Fed.R.Civ.P. 60. Therefore, defendant's motion for a new trial on this ground is denied.

The Federal Circuit upheld the trial court's denial of the motion finding that:

Because of the pendency of the reexamination proceeding at the time of the district court opinion, we do not regard the trial court's denial of a new trial as an abuse of its discretion. We leave open the question of whether a Fed.R.Civ.P. 60(b)(2) motion should be granted after a final ruling on appeal of the PTO Board's reexamination decision.

*Id.* at 1372. The Federal Circuit affirmed the district

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

court's judgment that me patent was valid and in-fringed but remanded the action to the trial court to reconsider the amount of the damage award. *Id.* at 1376.

The Federal Circuit ordered the stay of the injunction to remain in effect until the district court was able to consider whether continuation of the injunction was appropriate. The Federal Circuit directed the district court to take into account the unique fact that while the appeal was pending, the PTO issued a reexamination decision rejecting a number of claims in the patent. *Standard Havens Products, Inc., v. Gencor Industries, Inc., 810 F.Supp. 1072, 1073 (W.D.Mo.1993).*

*12 On remand, the defendant argued that if it is fi-nally determined that the PTO's rejection of the claims was appropriate, "the patent would be void *ab initio,* thereby removing the basis for this Court's earlier judgment." *Id. at 1074.*The district court rejected the argument, reasoning that both the district court and the Federal Circuit had found that the patent was valid and infringed and that it was time to award the plaintiff a final judgment on the matter. The district court stated that it was unable to find any controlling authority establishing "if it is judicially and finally determined, in a separate proceeding, that the patent in question is invalid, the patent would be void *ab initio,* thereby effectively voiding this Court's earlier judgment" and encouraged the Federal Circuit to "squarely address" and announce whether that was the intended result of the reexamination statute. *Id. at 1074 n. 3, 1076.*The district court then weighed the equities and denied the defendant's motion for a continued stay. *Id. at 1077.*

Defendant again appealed the district court ruling to the Federal Circuit, which found that the district court erred in denying the motion to continue the stay. The Federal Circuit announced that if it upheld the PTO's rejection of the claims, the injunction would become immediately inoperative. *Standard Havens Products, Inc. v. Glencor Industries, Inc., No. 93-1208, 1993 WL 172432 at *1 (May 21, 1993).* The Federal Circuit then sidestepped the issue the district court invited it to address stating that:

if a final decision of unpatentability means the patent was void *ab initio,* then damages would also be precluded. Therefore, the injunction should have

been stayed. Thus, in either event, contrary to the assumption of the trial court, the reexamination proceeding "would control" the infringement suit.

*Id.* The Federal Circuit discussed what would happen if a patent that was finally determined to be invalid in a reexamination proceeding was considered void *ab initio* without declaring that such was the case. The Federal Circuit then clearly limited its holding to cases in which the issue of damages and injunctive relief were resolved in a final judgment:

To preserve the status quo pending finality of the section 145 action, the damages proceeding should also have been stayed. The issues of damages and enjoinability in this suit still being unresolved, de-spite trial and proper appeal, we do not regard the issues of patent validity and infringement as having been incorporated into a final judgment that would moot the issue of a stay pending completion of the section 145 suit.

*Id.* This limitation was later acknowledged by the Federal Circuit when the court distinguished the case before it from *Standard Havens* noting that in *Stan-dard Havens,*"the infringement litigation was then pending and the validity of the patents was directly in issue."*Ultrak, Inc., 52 U.S.P.Q.2d at 1531.*

*13 The Federal Circuit appeared to state that, if the injunction was part of a final judgment, the question of whether the injunction should be stayed pending completion of the reexamination would be moot. In other words, the Federal Circuit would find that while the reexamination proceedings were in process, the injunction or any other part of the final judgment, would not be affected. This is supported by the Fed-eral Circuit's determinations that: 1) the initial appeal should not be stayed by the reexamination proceed-ings because the proceedings are distinct, with dif-ferent records and different standards of proof ( *Standard Havens, 953 F.2d at 1366 n. 2*); 2) in the absence of a final ruling, the rejection of the relevant claims by the PTO did not constitute "new evidence" that would support a motion for new trial under Rule 60 ( *Standard Havens, 953 F.2d at 1372*); and 3) the status quo of the underlying litigation should be pre-served pending a final determination under Section 145 ( *Standard Havens, 1993 WL 172432 at *1*).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
(Cite as: 2009 WL 437703 (D.Or.))

This court is convinced that under the Supreme Court's teachings in *Agostini* and the reasoning and analysis of the Federal Circuit in the *Standard Havens* cases, Powerscreen's motion to stay enforcement of the permanent injunction should be denied. The rejection of the relevant claims by the PTO is preliminary and is subject to review by the Board and the Federal Circuit. Until the reexamination process is complete and a final determination that the relevant claims are invalid is made, the final judgment of this court and the Federal Circuit that the Patent is valid, the relevant claims are infringed and a permanent injunction is appropriate, should not be modified under Rule 60(b)(5). The PTO's rejection of the relevant claims is not a significant change in the factual conditions on which the injunction was based and does not support a stay of the enforcement of the injunction.

Powerscreen also argues that the new standards for permanent injunction in infringement case set forth by the Supreme Court in *eBay v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) is a sufficient change in law to support a stay of the injunction. In *eBay,* the Supreme Court held that to be entitled to a permanent injunction in a patent infringement action, a party must demonstrate

(1) that is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be served by a permanent injunction.

*Id.* at 391.The Court then restated the long-standing rule that a finding that a defendant has infringed a patent does not automatically result in the issuance of an injunction. *Id.* at 392-93.

In early 1997, the court granted Plaintiffs' motion for a preliminary injunction. At that time, the court considered four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant should the motion be denied; (3) the balance of hardship between the parties; and (4) the impact an injunction will have on the public interest, and found in favor of Plaintiffs on the first three factors. The fourth factor favored neither party, with

the court acknowledging that the public interest favors the protection of patent rights but that there is also an interest in a company's right to continue to operate to its full capacity, at least until a claim is resolved by a trial on the merits. After a jury trial, the court granted Plaintiffs' motion for a preliminary injunction.

**\*14** While not directly addressing the four factors delineated in *eBay* at the time it granted the permanent injunction, the court did consider them with regard to Plaintiffs' request for a preliminary injunction. The court found that Plaintiffs established the threat of irreparable harm in the absence of an injunction. In reaching this conclusion, the court noted that, in addition to monetary loss, Plaintiffs would suffer from the loss of customer contacts and goodwill. This is comparable to a finding that Plaintiffs did not have an adequate remedy at law. As noted above, the court felt that the public interest favored the protection of patent rights and only limited this factor based on the absence of a definitive determination of Powerscreen's liability. Finally, the court determined that the balance of hardship weighed in favor of Plaintiffs.

While the district court did not have the benefit of *eBay* at the time it issued the permanent injunction, the court considered and found in favor of Plaintiffs on all the *eBay* elements. It is clear that the court did not automatically issue an injunction once it was determined that Powerscreen had infringed on the Patent, a principle the *eBay* decision reaffirmed. Not only was there no significant change in the law, the district court properly evaluated Plaintiffs' motion for preliminary injunction under the criteria set forth in *eBay.*This evaluation provided the foundation for the court's issuance of a permanent injunction.

Powerscreen is unable to prove the significant change in facts or law necessary to support their motion to stay enforcement of the permanent injunction. The PTO's rejection of the relevant claims on reexamination is not a final determination and this court is not in a position to second guess how the Federal Circuit will evaluate the prior art when given the opportunity. The district court considered the standards set forth by the Supreme Court in *eBay* in granting the permanent injunction. Accordingly, if the standards were to be considered new law, the permanent injunction was entered pursuant to the new law. Powerscreen is not

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

entitled to relief from the permanent injunction under Rule 60(b)(5).[FN1]

> FN1. In light of this finding, Plaintiffs' argument that Powerscreen failed to file this motion in a timely manner is moot and need not be addressed.

### Conclusion

Powerscreen's Rule 60(b) motion to stay enforcement of permanent injunction should be denied.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than **November 4, 2008.**If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

D.Or.,2009.
Construction Equipment Co. v. Powerscreen Intern. Distribution, Ltd.
Slip Copy, 2009 WL 437703 (D.Or.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 4



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 906315 (E.D.Tex.)
(Cite as: 2008 WL 906315 (E.D.Tex.))

Page 1

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Marshall Division.
COOPER TECHNOLOGIES CO.
v.
THOMAS & BETTS CORP.
No. 2:06-CV-242.

March 31, 2008.

Robert Stanford Harrell, James Leroy Beebe, Fulbright & Jaworski - Houston, Clay Erik Hawes, Paul E. Krieger, Morgan, Lewis & Bockius-Houston, Houston, TX, Deborah J. Race, Otis W. Carroll, Jr., Ireland Carroll & Kelley, Tyler, TX, Franklin Jones, Jr., Jones & Jones - Marshall, Marshall, TX, for Cooper Technologies Co.

Samuel Franklin Baxter, McKool Smith - Marshall, Marshall, TX, Alan M. Fisch, Coke M. Stewart, Jason F. Hoffman, Kelly A. Clement, Kevin W. Jakel, Roy W. Sigler, Kaye Scholer - Washington, Washington, DC, for Thomas & Betts Corp.

### *MEMORANDUM OPINION AND ORDER*

CHARLES EVERINGHAM IV, United States Magistrate Judge.

*1 Before the court is the defendant's motion (# 20) to stay this action pending reexamination of the patents-in-suit. For the foregoing reasons, the court denies the defendant's motion.

### 1. Background

In this case, Cooper Technologies, Co. ("Cooper") contends that Thomas & Betts, Corp. ("Thomas & Betts") infringes various claims of U.S. Patent Nos. 6,504,103 and 6,984,791. The '791 patent issued from an application that was a continuation of the applica-

tion that underlies the '103 patent. The patents-in-suit are each entitled, "Visual Latching Indicator Arrangement for an Electrical Bushing and Terminator."

On December 21, 2006, T & B filed a request with the U.S. Patent and Trademark Office ("PTO") for an *ex parte* reexamination of the '103 patent, and an *inter partes* reexamination of the '791 patent. In early 2007, the PTO granted both requests, and Thomas & Betts filed the instant motion to stay this action. This motion is now ripe for review.

### 2. Discussion

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon, com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex.2005) (citations omitted). Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Courts typically consider three things when deciding whether to stay litigation pending reexamination: "(1) whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC*, 356 F.Supp.2d at 662.

The court will separately address each patent in light of the distinct nature of each reexamination proceeding.

### A. A Stay of the '103 Patent Proceedings Pending *Ex Parte* Reexamination is Not Appropriate.

#### 1. Prejudice and Tactical Advantage

Cooper and Thomas & Betts are direct competitors. In addition, the PTO has not provided any definitive guidance on the length of time required for the re-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 906315 (E.D.Tex.)
(Cite as: 2008 WL 906315 (E.D.Tex.))

Page 2

examination. Accordingly, the potential delay for an indefinite period would likely prejudice Cooper. *See Ricoh Co., Ltd. v. Aeroflex, Inc.,* 2006 WL 3708069, *2 (N.D.Cal. Dec.14, 2006); *Lexington Lasercomb I.P.A. G. v. GMR Products, Inc. .,* 442 F.Supp.2d 1277, 1278 (S.D.Fla.2006). This factor weighs against a stay of the '103 patent proceedings.

**2. Simplification of the Case**

Thomas & Betts contends that a stay will simply the case because the '103 patent claims will likely materially change or become void during the reexamination proceeding. However, it is also likely that some of the patent's claims will survive reexamination. Accordingly, waiting for the completion of the reexamination may only simplify the case to a limited degree. This factor is speculative and does not support a stay.

**3. Stage of the Proceedings**

*2 The present motion was filed early in the case, in advance of the court's scheduling conference. Therefore, this factor supports a stay of the proceedings.

The court has considered the competing interests, and concludes that the interest in proceeding with the '103 patent proceedings outweighs any benefits from staying these proceedings. As such, the court finds that granting a stay of the '103 patent proceedings is not appropriate.

**B. A Stay of the '791 Patent Proceedings Pending *Inter Partes* Reexamination is Not Appropriate.**

**1. Prejudice and Tactical Advantage**

For the reasons discussed above, the court finds that this factor weighs against a stay of the '791 patent proceedings.

**2. Simplification of the Case**

If the court stays the '791 proceedings, Thomas & Betts will be estopped from making the same invalidity arguments in this case that it makes to the PTO during the reexamination proceeding. 35 U.S.C. § 315(c). This estoppel will usually simplify the issues in the case. However, in this action, the '103 patent and the '791 patent share a written description, and the claims of both patents are directed to closely-related subject matter. Because the ' 103 patent is subject to *ex parte* reexamination, Thomas & Betts will not be estopped from urging invalidity arguments in this case against the '103 patent that are similar to the invalidity arguments it makes against the ' 791 patent during reexamination. The related nature of the patents-in-suit, combined with the *ex parte* reexamination of the '103 patent, counteract the effects of the *inter partes* reexamination proceeding. As such, this factor weighs against staying this case.

**3. Stage of the Proceedings**

The present motion was filed early in the case, in advance of the court's scheduling conference. Therefore, this factor supports a stay of the proceedings.

The court has considered the competing interests, and concludes that the interest in proceeding with the '791 patent proceedings outweighs any benefits from staying these proceedings. As such, the court finds that granting a stay of the '791 patent proceedings is not appropriate.

**4. Conclusion**

The court finds that a stay of the '103 patent pending *ex parte* reexamination is not appropriate. Because the '103 patent and '791 patent share a written description, and have claims that are directed to closely-related subject matter, a stay of the '791 patent proceedings pending *inter partes* reexamination is also not appropriate. Therefore, the court denies Thomas & Betts' motion (# 20) to stay this action pending completion of the reexamination proceedings.

E.D.Tex.,2008.
Cooper Technologies Co. v. Thomas & Betts Corp.
Not Reported in F.Supp.2d, 2008 WL 906315 (E.D.Tex.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 5

Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
**(Cite as: 1990 WL 305551 (N.D.Cal.))**

C

United States District Court, N.D. California.
E.I. DU PONT DE NEMOURS & COMPANY,
Plaintiff,
v.
CETUS CORPORATION, Defendant.
**No. C-89-2860 MHP.**

Dec. 3, 1990.

Clement L. Glynn, Pillsbury, Madison & Sutro,
Walnut Creek, Cal., E. Anthony Figg, Bart G.
Newland, Rothwell, Figg, Ernst & Kurz, Washington,
D.C., George A. Frank, Senior Counsel, E.I. Du Pont
de Nemours & Company, Wilmington, Del., for
plaintiff.

Lynn Pasahow, James Lewis, McCutchen, Doyle,
Brown & Enersen, San Francisco, Cal., for defen-
dants.

*ORDER*

PATEL, District Judge.

**\*1** Plaintiff du Pont de Nemours & Company ("du
Pont") brings this action against Cetus Corporation
("Cetus") for a declaratory judgment on the invalidity
of two patents owned and controlled by Cetus. Cetus
has brought a counter-claim for patent infringement.
Du Pont is a Delaware corporation engaged in de-
velopment, manufacture and distribution of pharma-
ceutical and diagnostic products; Cetus is a Delaware
corporation engaged in development, manufacturing,
sale and licensing of biotechnological products.

The parties are now before the court on plaintiff's
motion for summary judgment on the invalidity of the
disputed patents. Having considered the submissions
and arguments of the parties, for the following reasons,
the court DENIES plaintiff's motion for summary
judgment.

Background

On July 28, 1987, the United States Patent and
Trademark Office issued Patent No. 4,683,195
(" '195"), entitled "Process for Amplifying, Detecting
and/or Cloning Nucleic Acid Sequence," and Patent
No. 4,683,202 (" '202"), entitled "Process for Ampli-
fying Nucleic Acid Sequences," to defendant Cetus
Corporation. Both the '202 and '195 patents claim
priority dating back to an application filed by Dr. Kary
B. Mullis on March 28, 1985.

The two patents encompass the process of polymerase
chain reaction ("PCR") using an exponential process
of replication; the process permits a target sequence of
DNA to be multiplied as quickly as a millionfold
within hours. Kaster Decl. in Opp. to MSJ ("Kaster
Decl."), Ex. 1 at 1543. The '202 patent describes the
basic primer extension reaction, in which a target
sequence of double-stranded DNA is denatured into
single-stranded form by a process of heating. Two
small pieces of synthetic DNA, each complementing a
sequence at one end of the target sequence, serve as
primers and bind with their complementary sequences
on the single strand. Polymerases start at each primer,
copying the sequence of that strand and ultimately
producing exact replicas of the target sequence. The
product of each cycle then serves as a template for
succeeding cycles, resulting in an exponential process
of replication. After repeated cycles, the pool of pieces
of DNA with the target sequence has been greatly
multiplied, and this amplified genetic material is
available for further analysis. *Id.*

The disclosure of the '195 patent is similar to that of
the '202 patent, with the additional disclosure of the
use of a hybridization probe detection procedure in
combination with PCR. This procedure requires add-
ing to the product of the initial replication a labeled
oligonucleotide probe for each segment being detected.
The probe is a short segment of DNA capable of hy-
bridizing to the segment and is labeled by incorpo-
rating radioactive atoms into its structure. The probe
will bind to the target DNA through base pairing, so
that the presence or absence of a particular sequence
can be detected by determining whether the labeled
probe has bound to the DNA of the substance being

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
(Cite as: 1990 WL 305551 (N.D.Cal.))

analyzed. *Id.*, Ex. F at 4.

**\*2** The development of PCR has been widely recognized as "one of the most powerful tools of modern biology," and was honored with the "Molecule of the Year" award in *Science* magazine's summary of major scientific achievements of 1989. Def.Opp. to MSJ Ex. I. The rapid and relatively inexpensive amplification of specific DNA sequences can be used to diagnose disease, to detect trace amounts of pathogens that are difficult or impossible to culture, and to identify crime suspects, missing persons and suitable transplant donors through PCR-based comparisons. In addition, PCR may eventually replace gene cloning as the favored method of gene sequencing, a process which requires large amounts of DNA. Further applications of PCR are rapidly being discovered. *Id.* at 1543-44.

Plaintiff du Pont contends that PCR was in fact invented by scientists working in the laboratory of Dr. H. Gobind Khorana between 1969 and 1974, and that the subject matter of the '202 and '195 patents was anticipated by discussions of the technique and of Dr. Khorana's work in prior art published more than one year before the earliest filing date of the applications for '202 and '195. Du Pont argues that Cetus' patents are therefore invalid under 35 U.S.C. § 102 as anticipated by prior art, and invalid under 35 U.S.C. § 103 as obvious in the light of prior art.

Shortly after du Pont filed its declaratory judgment action on August 1, 1989, the United States Patent and Trademark Office ("PTO") ordered reexamination of all individual claims of the '202 patent pertinent to this motion [FN1] and of claims 19-25 of the '195 patent [FN2] pursuant to 35 U.S.C. §§ 301-307.[FN3] On March 19, 1990, the court granted Cetus' motion to delay trial until the reexamination had been conducted in order to permit the court to consider PTO's reexamination findings. Trial was set for November 27, 1990. Du Pont then filed its own requests for reexamination of '202 and '195, citing as prior art (among others) the articles by Kleppe et al. and Panet & Khorana that are also cited in defendant's brief. Kaster Decl., Ex. C at 4, Ex. D at 2. PTO consolidated the du Pont and Hoffman-LaRoche requests for reexamination and joint consideration and decision. Kaster Decl., Exs. G & H. Plaintiff then brought this motion for summary judgment on August 16, 1990.

On August 23, 1990, PTO issued a decision upholding the validity of defendant's '202 and '195 patents in their entirety, specifically rejecting plaintiff's argument that PCR was anticipated by Kleppe et al. and Panet & Khorana. Kaster Decl., Exs. A & B.

*LEGAL STANDARD*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*3** The court's function, however, is not to make credibility determinations. *Anderson,* 477 U.S. at 250. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

Courts have held that summary judgment "is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984). The nonmoving party "must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Id.* at 836.

*DISCUSSION*

The issues before the court are (1) whether claims 1-4, 6-9, 11, 16, 19 and 20 of the '202 patent are anticipated by the prior art cited by plaintiff ("Khorana prior art")

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
**(Cite as: 1990 WL 305551 (N.D.Cal.))**

and are therefore invalid under 35 U.S.C. § 102(b); (2) whether those claims plus claim 15 of '202 define subject matter that would have been obvious to one of ordinary skill in March 1984 (one year prior to the filing date) in light of the Khorana prior art and the Khorana NSF Grant Proposal and are therefore invalid under 35 U.S.C. § 103; and (3) whether claims 1-4, 6, 11, 12, 14 and 15 of the '195 patent were obvious and well-known in March 1984 and therefore invalid under 35 U.S.C. § 103.

## I. PRESUMPTION OF VALIDITY

With respect to suits involving the validity or infringement of a patent, the patent statute provides:

A patent shall be presumed valid. Each claim of a patent ... shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282. The courts have interpreted this presumption to require that the party asserting invalidity must prove facts establishing the invalidity of each claim by clear and convincing evidence. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1427 (Fed.Cir.1988) (citing *Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 974 (Fed.Cir.1986)); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 656 F.Supp. 1343, 1354 (D.Del.1987).

Moreover, although the court is not bound by the PTO's findings upholding the validity of the challenged patents in a reexamination proceeding, these findings affect the court's deliberations in two ways. First, they provide evidence that the court must consider in determining whether the plaintiff has overcome the statutory presumption of validity by clear and convincing evidence, *Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1555 (Fed.Cir.1985) (citing *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1359-60 (Fed.Cir.1984), *cert. denied,* 469 U.S. 821.

Secondly, where the patent has been reissued or up-

held by the PTO, a challenger's burden of proving invalidity in subsequent litigation is heavier than it would otherwise be. *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985) (citing *Fromson,* 755 F.2d at 1555); *see also Thermal Engineering Corp. v. Clean Air Systems,* 706 F.Supp. 436, 444 (W.D.N.C.1987) (successful **reexamination** of patent increases challenger's burden of proving invalidity). Specifically, courts have held that where a patent in suit has been reissued after the **PTO's** consideration of prior art cited by a challenger, the challenger's burden of proof in overcoming the presumption of validity in subsequent **litigation** "has become more difficult to sustain-a fact [ ] to be taken into account by the trial judge." *American Hoist,* 725 F.2d at 1364.

*\*4 The court therefore regards the **PTO's** reexamination findings of validity for all claims of '202 and '195 as highly probative on the issues considered and with respect to the prior art considered during reexamination. *See Fromson,* 755 F.2d at 1558; *American Hoist,* 725 F.2d at 1360. It thus views plaintiff's burden of proving invalidity as heavier than it would have been in the absence of the **reexamination**.

Although plaintiff properly notes that the **PTO** proceedings and the present suit challenging validity are independent, *see Ethicon,* 849 F.2d at 1428, and urges this court to reject the **PTO's** findings of validity of the challenged patents as flawed, the differences between the **PTO reexamination** and the present suit in fact suggest that the **PTO's** findings should be given substantial deference by this court.

First, whereas in **litigation** challenging validity the challenged patent enjoys a presumption of validity that the challenger must overcome by clear and convincing evidence, in a **reexamination proceeding,** the posture is essentially that of an initial **PTO** examination, and the patent enjoys no presumption of validity. *In re Etter,* 756 F.2d 852, 856-57 (Fed.Cir.), *cert. denied, Etter v. Commissioner of Patents and Trademarks,* 474 U.S. 828 (1985). It is therefore highly significant that the patents were upheld by the **PTO** against a higher standard than that to be applied by this court. In addition, the courts have recognized that one function of the **reexamination** finding is "to facilitate trial of that issue by providing the district

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

court with the expert view of the PTO (when a **claim** survives the **reexamination proceeding**)." *Ethicon,* 849 F.2d at 1426 (quoting *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.), cert. denied, 464 U.S. 935 (1983)*).

Secondly, this **litigation** and the **PTO reexamination** differ in their approach to **claim construction** in a way which favors the patent owner in this **proceeding.** Whereas **claims** in **reexamination** "will be **given** their **broadest** reasonable interpretation," thus increasing the likelihood of a finding of anticipation and therefore of invalidity, *In re Etter,* 756 F.2d at 862 (quoting *In re Yamamoto,* 740 F.2d at 1571 (Fed.Cir.1984)), **claims** in **litigation** are to be "so construed, if **possible,** as to sustain their validity." *Id.* (quoting *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577 (Fed.Cir.1984)).

Finally, plaintiff du Pont was one of the parties requesting **reexamination** and made essentially the same arguments (citing essentially the same references) before the **PTO** as it makes before the court today. In a **reexamination proceeding,** the Examiner may consider any information or prior art not considered at the time of the initial examination. 35 U.S.C. § 301 et seq.; *In re Etter,* 756 F.2d at 856. Plaintiff's requests for **reexamination** of '202 and '195 alleged that the patents were anticipated by or obvious in light of Kleppe et al. and Panet & Khorana, among other references, and were supported by declarations of Dr. Joseph Sambrook and Dr. Arthur Kornberg; these references and declarations are also heavily relied upon by plaintiff in this suit. The Examiner made specific findings rejecting the claims of anticipation by Kleppe et al, Kaster Decl.Ex. B at 4, and Panet & Khorana, Kaster Decl.Ex. A at 8, Ex. B at 8.

*5 This court will follow the approach of the Federal Circuit in giving deference to PTO findings with respect to the evidence considered by PTO. *American Hoist,* 725 F.2d at 1360. "When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent." *Id.*[FN4]

However, plaintiff also alleges anticipation of '202 by a National Science Foundation grant proposal submitted by Dr. Khorana in 1972 ("Khorana Grant

Proposal"). Pl.MSJ Ex. E, a reference not cited in plaintiff's request for reexamination and not considered by the Examiner. The courts have held that the deference due to PTO findings upon reexamination is appropriate only with respect to the evidence and prior art that was before both the PTO examiners and the court.

Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider. All evidence bearing on the validity issue, whether considered by the PTO or not, is to be taken into account by the tribunal in which validity is attacked.

*American Hoist,* 725 F.2d at 1360; *see also In re Etter,* 756 F.2d at 861 (Nies, J., concurring). The court will therefore consider directly the question of anticipation by the Khorana Grant Proposal.

Finally, although PTO directly ruled that '202 and '195 were valid because they were not anticipated by prior art pursuant to 35 U.S.C. § 102, it did not address the question of whether the patents were invalid under the obviousness standard of 35 U.S.C. § 103. The court will therefore consider this question independently. *See In re Etter,* 756 F.2d at 856 (reexamination is available under 35 U.S.C. §§ 102 and 103).

## II. ANTICIPATION OF '202 BY KHORANA PRIOR ART UNDER 35 U.S.C. § 102

The statute governing patentability provides that:

[a] person shall be entitled to a patent unless- ...

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, ....

35 U.S.C. § 102(b).

Anticipation requires that each prior art reference contain within its four corners all of the elements of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                          Page 5
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
(Cite as: 1990 WL 305551 (N.D.Cal.))

the claimed invention found in substantially the same situation where they do substantially the same work in the same way. *Atlas Powder Co. v. E.I. du Pont de Nemours and Co.,* 588 F.Supp. 1455 (D.C.Texas 1983), *aff'd,* 750 F.2d 1569; *Ecolochem, Inc. v. Mobile Water Technology Co.,* 690 F.Supp. 778 (E.D.Ark.1988), *aff'd,* 871 F.2d 1096 (Fed.Cir.1989). Prior art does not anticipate a thing or process unless it is enabling: an anticipatory publication must describe the claimed invention with sufficient clarity and specificity so that one skilled in the relevant art could practice the subject matter of the patent without assistance from the patent claimed to have been anticipated. *Columbia Broadcasting System v. Sylvania Elec. Products, Inc.,* 415 F.2d 719, 725, (1st Cir.1968), *cert. denied,* 396 U.S. 1061 (1970). "[B]efore any publication can amount to a statutory bar to the grant of a patent, its disclosure must be such that a skilled artisan could take its teachings *in combination with his own knowledge of the particular art and be in possession of the invention.*" *Titanium Metals Corp. v. Mossinghoff,* 603 F.Supp. 87, 90 (quoting *In Application of LeGrice,* 301 F.2d 929 (C.C.P.A.1962)) (D.C.C.1984) (emphasis in original).

*6 Plaintiff asserts that PCR was anticipated by (1) K. Kleppe, et al., "Studies on Polynucleotides: Repair Replication of Short Synthetic DNA's as catalyzed by DNA Polymerases," published in the *Journal of Molecular Biology* in 1971 ("Kleppe et al."); (2) A. Panet and G. Khorana, "Studies on Polynucleotides: the Linkage of Deoxyribopolynucleotide Templates to Cellulose and its Use in Their Replication," published in the *Journal of Biological Chemistry* in 1974 ("Panet & Khorana"); and (3) Dr. Khorana's National Science Foundation ("NSF") Grant Proposal, submitted in 1972 ("Khorana Grant Proposal"). Plaintiff contends that claims 1-4, 6-9, 11, 16, 19 and 20 of '202 are therefore invalid under 35 U.S.C. § 102.[FN5]

In support of its claim that each of the cited references anticipates PCR, plaintiff relies upon a claim-by-claim comparison of the patent claims with the cited references and upon the testimony of Dr. Kornberg that the references would have enabled a skilled biochemist to practice PCR but for the fact that the primers necessary for the process were scarce and extremely difficult to chemically synthesize until March 1984. Kaster Decl., Ex. E ¶¶ 14-19.

PTO's findings and the declarations of scientists submitted by Cetus concluded that the publications by Kleppe et al. and Panet & Khorana are too indefinite and uncertain to anticipate PCR, in part because they fail to specify the precise nature of the primers to be used, the size of DNA duplex to be copied, or specific reaction conditions required for DNA synthesis,[FN6] and that the Khorana grant proposal similarly does not anticipate PCR. The court finds that the PTO rulings and the evidence presented on this motion present genuine issues of material fact, making plaintiff's motion for summary judgment inappropriate.

*A. PTO Re-examination*

The PTO Examiner specifically upheld the validity of all challenged claims of '202 and '195, finding that they were not anticipated by Kleppe et al. and Panet & Khorana. Kaster Decl., Ex. A at 3-8; Ex. B at 2-8. The Examiner found unpersuasive the assertions of the Kornberg and Sambrook declarations that Panet & Khorana teaches PCR. Kaster Decl., Exs. A & B.

In challenging the **PTO** findings, plaintiff argues that the Examiner committed numerous errors in affirming the patentability of '202 and '195 as against the prior art cited by plaintiff. The court finds most of these allegations to be without merit.

1. *PTO Procedure.* Plaintiff protests that it was not permitted "further input" into the proceedings beyond its initial reexamination request and was prejudiced by that exclusion. However, a reexamination by the **PTO** is not an adversary proceeding of the sort that occurs in litigation; although a third party may bring a request for reexamination, that party is heard only on the question of whether "a substantial question" of validity exists justifying the reexamination procedure. "[T]he reexamination*per se* of the claims is entirely *ex parte.*" *In re Etter,* 756 F.2d at 859 n. 6; *see also*37 C.F.R. § 1.550(e) ("The active participation of the reexamination requester ends with the reply pursuant to § 1.535, and no further submissions on behalf of the reexamination requester will be acknowledged or considered.").

*7 Moreover, the Examiner expressly considered and

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
(Cite as: 1990 WL 305551 (N.D.Cal.))

rejected plaintiff's assertions of anticipation by Kleppe et al. and Panet & Khorana, and specifically discussed the opinions expressed in the Sambrook and Kornberg declarations.

Plaintiff also faults Cetus for failing to inform the Examiner of material in statements, deposition testimony and deposition exhibits that, in plaintiff's judgment, tended to show that the Khorana prior art anticipated '202 and '195. However, the statute governing reexamination, 35 U.S.C. § 301 et seq., nowhere imposes upon the patent owner a duty to identify and disclose to the Examiner all evidence that might arguably invalidate the patent under reexamination; nor does plaintiff cite any case law indicating that courts have imposed such a duty. Indeed, it is precisely the duty of *the requester* to cite prior art alleged to have a bearing on the patentability of a challenged **claim**. 35 U.S.C. §§ 301-302.

2. *PTO Findings.* Du Pont alleges that the Examiner misapplied the law in its **reexamination** of '202 and '195 by **requiring** a degree of specificity in the prior art **not** present in the patents being challenged.

The statute governing **reexamination** provides that a patent owner may appeal an adverse **reexamination** finding to the United States Court of Appeals for the Federal Circuit. 35 U.S.C. § 306. However, this court has no power to review a **PTO** finding favorable to the patent owner at the behest of a patent challenger such as du Pont. *See Syntex (U.S.A.) Inc. v. United States PTO,* 882 F.2d 1570, 1573 (Fed.Cir.1989); *accord Yuasa Battery Co. v. Commissioner of Patents & Trademarks,* 3 U.S.P.Q.2d 1143, 1144 (D.D.C.1987).

Although plaintiff is **not** here requesting that the court exceed its jurisdiction and set aside the **reexamination** decision, it is requesting this court to find that the **PTO** was wrong in its decision to grant the patent, and to refuse to accord the **PTO** rulings the deference prescribed by the Federal Circuit. Courts have asserted jurisdiction to invalidate a reissued patent (an amended patent reflecting corrections of error in an original patent) that is "found to be procured as a result of fraud or inequitable conduct, or when the patent was issued despite a failure to satisfy the statutory requirements, such as non-obviousness." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 692

F.Supp. 1118, 1123 (N.D.Cal.1988), *aff'd in part, rev'd on other grounds in part,* 882 F.2d 1556 (Fed.Cir.1989), *cert. denied,* --- U.S. ----, 110 S.Ct. 1125 (1990).

The court finds that the PTO reexaminations of '202 and '195 appropriately considered and applied the statutory requirements for anticipation to Kleppe et al. and Panet & Khorana. The Examiner found a substantial lack of detail and uncertainty about the formation of template-primer complexes in Kleppe et al., Kaster Decl., Ex. A at 3-4, Ex. B at 3-4, and critical ambiguities in the disclosure of Panet & Khorana, *Id.,* Ex. A at 4-8, Ex. B at 4-8, sufficient to preclude anticipation of the two patents. The Examiner also rejected du Pont's explanation that PCR had not been performed prior to 1984 because of the scarcity of oligonucleotide primers. *Id.,* Ex. A at 7-8. Finally, the Examiner found that Panet & Khorana did not disclose the use of exponential replication, as expressly required by claims 1 and 19 of the '202 patent, *Id.,* Ex. A at 8, Ex. B at 2, and Claim 19 of the '195 patent. *Id.,* Ex. A at 2-3.

*8 This court thus finds persuasive the PTO's conclusion that Kleppe et al. and Panet & Khorana do not anticipate PCR.

B. *Expert Testimony*

Moreover, the court finds that the Coggio, Dahlberg and Smith Declarations and attached exhibits provide additional strong support for the conclusion that Kleppe et al., Panet & Khorana, and the Khorana grant proposal [FN7] do not anticipate PCR. These sources conclude that the experimental conditions, parameters, concentrations, and techniques discussed in the references are both quantitatively and qualitatively different from those of the patented process of '202. Kaster Decl.Ex. A at 3-4, Ex. B at 4-8; Coggio Decl., Ex. A at ¶¶ 7-10, 13; Dahlberg Decl. at ¶¶ 14-18, 28; Smith Decl. at ¶¶ 6-17. At a minimum, these sources raise a substantial issue of material fact making summary judgment inappropriate. "[A] patent case is not ripe for summary judgment on the issues of validity or enforceability ... where the expert testimony submitted is conflicting...." *Acoustiflex Corp. v. Owens-Corning Fiberglass Corp.,* 572 F.Supp. 936, 937 (N.D.Ill.1983).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The court therefore finds that plaintiff has failed to demonstrate that no material issues of fact remain in dispute as to the invalidity of '202 under 35 U.S.C. § 102(b).

III. OBVIOUSNESS OF '202 AND '195 UNDER 35 U.S.C. § 103

In addition to arguing that '202 is anticipated by prior art, plaintiff argues that claim 15 of '202, even if not technically anticipated by the cited references, and claims 1-4, 6, 11, 12, 14 and 15 of '195 are invalid under 35 U.S.C. § 103, which provides that an invention is not patentable if

the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains....

Although the ultimate question of patent validity is a question of law, the inquiry into obviousness under § 103 has been held to require factual findings on the following issues: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.,* 383 U.S. 1, 17 (1966); *Custom Accessories v. Jeffrey-Allan Indus.,* 807 F.2d 955, 958 (Fed.Cir.1986). In addition, secondary considerations such as commercial success, long-felt but unsolved needs, failure of others to perform the claimed invention, and copying of the invention in preference to prior art are relevant as indicia of obviousness or non-obviousness. *Graham,* 383 U.S. at 17-18; *Spalding & Evenflo Companies, Inc. v. Acushnet Co.,* 718 F.Supp. 1023, 1044 (D.Mass.1989).

A claim of obviousness under section 103 challenges the inventiveness of the patent and is required to meet a less stringent standard than a claim of anticipation under section 102, which challenges the novelty of the patent. *Shanklin Corp. v. Springfield Photo Mount Co.,* 521 F.2d 609, 617 (1st Cir.1975), *cert. denied,* 424 U.S. 914 (1976); *Hart v. Baarcke,* 396 F.Supp. 408, 412 (S.D.Fla.1975), *aff'd,* 550 F.2d 353 (5th Cir.1977).

Obviousness can be shown by appeal to (1) any combination of prior art references (no one of which need disclose all elements of the invention within its four corners); (2) obviousness to one of ordinary skill in the pertinent art; and (3) secondary considerations such as commercial success of the invention.

A. *'202 Patent*

*9 Plaintiff alleges that Claim 15 of '202, requiring that the primers must be present "in a molar ratio of at least 1000:1 primer:complementary strand," is obvious under section 103. Plaintiff cites the reference in Kleppe et al. to the use of a "sufficiently large excess of the two appropriate primers"; the specification in Panet & Khorana that a large excess (ten times or more) of the primer be used; and the specification in the Khorana Grant Proposal that an excess of primers was needed. Plaintiff argues that these assertions in the prior art, in conjunction with the sharp increase in availability of primers in the 1980s and the then-available knowledge concerning hybridization kinetics, made a ratio of 1000:1 "an obvious choice."

In the court's judgment, references to a ratio of "ten times or more" and general references to a "sufficiently large excess" do not make the use of a primer:strand ratio of 1000:1 necessarily "obvious." This contention is put in issue by defendant's experts, who discuss the inadequacies of the prior references in great detail and conclude that they were inoperable. *See, e.g.,* Smith Decl. at ¶¶ 15-18.

The court concludes that plaintiff has failed to carry its burden of showing that there is no genuine issue of material fact on the invalidity of Claim 15 of '202 under 35 U.S.C. § 103.

B. *'195 Patent*

The '195 patent discloses the combination of hybridization probe detection with PCR. Plaintiff argues that since the PCR process described by Claim 1 of '202 was either anticipated or obvious in March of 1984 (thus invalidating '202) and the probe detection procedure with DNA cloning was well-known by that time, it would have been obvious to combine the two, thus rendering claims 1-4, 6, 11, 12, 14 and 15 of '195

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
**(Cite as: 1990 WL 305551 (N.D.Cal.))**

invalid under section 103. Because the court has concluded that there is sufficient dispute over material issues of fact to deny summary judgment on the obviousness of '202, it cannot accept the first premise of this argument.

Moreover, plaintiff's reliance on the testimony of Dr. Kary Mullis, the named inventor of the '202 patent and named co-inventor of the '195 patent, as to the obviousness of using PCR with the probe detection procedure is inapposite. As defendant notes, the inquiry into obviousness focuses on what would have been obvious to "a *hypothetical* 'person having ordinary skill in the art.' The actual inventor's skill is irrelevant to the inquiry.... [O]ne should not go about determining obviousness under § 103 by inquiring into what *patentees* (i.e., inventors) would have known or would likely have done...." *Standard Oil Co. v. American Cyanimid Co., 774 F.2d 448, 454 (Fed.Cir.1985)* (emphasis in original).

Plaintiff argues that by 1984, the procedure of hybridized probe detection disclosed in '195 was already a well-known method of detecting and identifying specific sequences of DNA and had been described in the technical literature, including *Molecular Cloning-A Laboratory Manual* (published in 1982). Specifically, the *Cloning Manual* refers to the use of DNA cloning to enhance hybridization probe detection. Sambrook Decl. (Newland Decl.Ex. D) at ¶ 12; *id.* at Attachment 2. Defendant does not dispute that the technique was well-known and widely used by March 1984, but argues that its use in combination with PCR was not obvious under section 103 because PCR itself was not obvious under section 103.

*10 Having found that the claims of '202 are not obvious under section 103, the court concludes that the combination of PCR with hybridization probe detection, disclosed by '195, is likewise not obvious.

*C. Secondary Considerations*

The inquiry under section 103 may include such secondary considerations as commercial success of the patent, long-felt but previously unsolved needs, and failure of others to perform the invention as evidence of obviousness or non-obviousness, *Graham*, 383 U.S. 1 (1966), although such considerations are not by

themselves sufficient to establish non-obviousness. *Eltra Corp. v. Basic, Inc.*, 599 F.2d 745 (6th Cir.), *cert. denied*, 444 U.S. 942 (1979).

In this case, secondary considerations support a finding of nonobviousness of the claims in '202 and '195. At best, defendant's submissions show that there are clear disputes among qualified experts. The commercial success and expanding potential of the process are clear. Smith Decl., Ex. D; Kaster Decl., Ex. I at 1543-44; Kaster Decl., Ex. K. Defendant has also provided evidence of the long-felt need in the field and of the failure of others to perform PCR prior to the work of Dr. Mullis at Cetus. Dahlberg Decl. ¶¶ 23-26; Smith Decl. ¶¶ 16-17; Klug Decl. (Coggio Decl., Ex. A) at ¶¶ 13-16; White Decl. (Coggio Decl., Ex. B) at ¶¶ 10-13.

Because the court concludes that the plaintiff has failed to meet its burden of proving that there is no genuine issue of material fact on the anticipation or obviousness of '202, and plaintiff's proffer of the testimony of Dr. Mullis does not satisfy the requirements of a showing under section 103, the court finds that the plaintiff also has failed to meet its burden on the obviousness of '195.

*CONCLUSION*

The findings of PTO and the declarations of the experts submitted by defendant raise genuine issues of fact on the questions of anticipation of '202 by prior art under 35 U.S.C. § 102 and the obviousness of '202 and '195 under 35 U.S.C. § 103. The court concludes that plaintiff has not demonstrated by clear and convincing evidence that no genuine issues of fact remain. Plaintiff's motion for summary judgment in its suit for declaratory judgment on the invalidity of '202 and '195 is therefore DENIED.

IT IS SO ORDERED.

> FN1. Du Pont challenges **claims** 1-4, 6-9, 11, 15, 16, 19 and 20 of the '202 patent.

> FN2. Du Pont also challenges the validity of **claims** 1-4, 6, 11, 12, 14 and 15 of the '195 patent as invalid under 35 U.S.C. § 103. **PTO**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174

(Cite as: 1990 WL 305551 (N.D.Cal.))

found no new question of patentability with respect to **claims** 1-18 and 26, and declined to **reexamine** those **claims**.

FN3. This reexamination was ordered at the request of Hoffman-LaRoche, Inc., one of Cetus' principal PCR licensees.

FN4. Although the court finds that the **reexamination** rulings are to be accorded the deference prescribed by the Federal Circuit and other courts, du Pont would still bear the burden of proof on invalidity by clear and convincing evidence if the court found the **reexamination** rulings defective either procedurally or on the merits. **Reexaminations** which affirm the validity of a challenged patent increase the challenger's burden in **litigation**, but a court's decision **not** to defer to the Examiner's ruling does not decrease the challenger's burden. "[T]he burden of persuasion on the merits remains with [the party asserting invalidity] until final decision.... With all evidence in, *the trial court* must determine whether the party on which the statute imposes the burden of persuasion has carried that burden." *In re Etter,* 756 F.2d at 856 (quoting *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed.Cir.1983)).

FN5. In addition, plaintiff asserts that claim 15 of '202 is invalid under section 103 because it defines subject matter that would have been obvious to one of ordinary skill in March 1984 in view of the prior art cited by plaintiff. *See below* at section III.

FN6. At oral argument, plaintiff urged that the '202 patent suffers the same deficiencies of indefiniteness and uncertainty. Pointing to claim 1, plaintiff contends that the claim provides no greater specificity than does the prior art. Plaintiff appears to be arguing that the patent is non-enabling. However, the dependent claims of '202 provide the specificity and limitations plaintiff finds missing. For example, dependent claims 14-17 contain some of the details missing from the prior art.

FN7. Plaintiff cites as prior art the Khorana NSF grant proposal, a reference not cited in du Pont's request for reexamination before the PTO. As a preliminary matter, plaintiff asserts that the proposal was a publicly accessible document prior to March 1984 and therefore qualifies as a "printed publication" under 35 U.S.C. § 102(b). Defendant contends that the grant proposal was not a printed publication because, although available to the public upon request from NSF, it was not subject-matter indexed and had a vague title ("Chemical and Biological Studies of Nucleic Acids") that would not have disclosed its relevance to one interested in PCR-related technology. However, plaintiff points out that the Khorana Grant Proposal was indexed by title, author, institution and grant number; has been available upon request from NSF under the Freedom of Information Act; and was cited by grant number on the first page of Panet & Khorana. Newland Decl., Ex. G at 5213. Any researcher interested in DNA replication is likely to have been familiar with Panet & Khorana and therefore would have been alerted to the relevance of the Khorana Grant Proposal both from the reference to the Grant Proposal and from the identity of its author, who was widely recognized as a pioneer in the field of DNA synthesis. The court thus agrees with plaintiff that "[t]he title [of the Grant Proposal], taken in combination with Dr. Khorana's reputation, would lead anyone interested in DNA synthesis or replication to believe that the reference was pertinent to such technology." Pl.Rep. MSJ at 7-8. *See also In re Hall,* 781 F.2d 897, 899-900 (Fed.Cir.1986) (doctoral thesis indexed, catalogued and shelved at university library was "printed publication" under section 102(b)).

N.D.Cal.,1990.

E.I. Du Pont de Nemours & Co. v. Cetus Corp.

Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 305551 (N.D.Cal.), 19 U.S.P.Q.2d 1174
**(Cite as: 1990 WL 305551 (N.D.Cal.))**

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 6

LEXSEE



Cited
As of: Jul 29, 2009

ESN, LLC, Plaintiff, v. CISCO SYSTEMS, INC., and CISCO-LINKSYS, LLC, Defendants.

CIVIL ACTION NO. 5:08-CV-20

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
TEXAS, TEXARKANA DIVISION

2008 U.S. Dist. LEXIS 108327

November 20, 2008, Decided
November 20, 2008, Filed

**CORE TERMS:** reexamination, patent, inter partes, invalidity, prior art, discovery, pendency, trial date, disadvantage, statistic, tactical, reexam, patent office, early stage, claim-construction, simplification, distributed, prejudiced, completion, simplify, estopped, network, staying, edge, Local Patent Rule, stay proceedings, money damages, significant number, voice-over-packet, expeditiously

**COUNSEL:** [*1] For ESN LLC, Plaintiff: Eric M. Albritton, Albritton Law Firm, Longview, TX; George P McAndrews, Gerald C Willis, Jr, Matthew N Allison, Paul McAndrews, Peter J McAndrews, Thomas J Wimbiscus, McAndrews Held & Malloy, Chicago, IL; Heather Bjella, PRO HAC VICE, McAndrews Held & Malloy, Chicago, IL; Thomas John Ward, Jr, Ward & Smith Law Firm, Longview, TX.

For Cisco Systems, Inc., Cisco-Linksys LLC, Defendants: Charles K Verhoeven, Matthew D Cannon, PRO HAC VICE, Quinn Emanuel Urquhart Oliver & Hedges LLP - San Francisco, San Francisco, CA; Kevin A Smith, Quinn Emanuel Urquhart Oliver & Hedges LLP - San Francisco, San Francisco, CA; Michael Edwin Jones, Potter Minton PC, Tyler, TX; Sayuri K Sharper, Victoria Fishman Maroulis, Quinn Emanuel Urquhart Oliver & Hedges - Redwood, Redwood Shores, CA.

For Cisco Systems, Inc., Cisco-Linksys LLC, Counter Claimants: Matthew D Cannon, PRO HAC VICE, Quinn Emanuel Urquhart Oliver & Hedges LLP - San Francisco, San Francisco, CA; Victoria Fishman Maroulis, Quinn

Emanuel Urquhart Oliver & Hedges - Redwood, Redwood Shores, CA.

For ESN LLC, Counter Defendant: Eric M. Albritton, Albritton Law Firm, Longview, TX; Heather Bjella, PRO HAC VICE, McAndrews Held [*2] & Malloy, Chicago, IL; Thomas John Ward, Jr, Ward & Smith Law Firm, Longview, TX.

**JUDGES:** DAVID FOLSOM, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DAVID FOLSOM

**OPINION**

**ORDER**

Before the Court is Cisco's Motion to Stay Litigation Pending *Inter-Partes* Reexamination (IPR) of U.S. Patent No. 7,283,519. Dkt. No. 35. Also before the Court are ESN's Response in Opposition (Dkt. No. 37), Cisco's Reply (Dkt. No. 39), and ESN's Sur-Reply (Dkt. No. 41). A hearing on this Motion was held August 26, 2008. *See* Dkt. No. 42 (hearing minute entry). Having considered the arguments of counsel in conjunction with all relevant papers, pleadings, and case law, the Court finds Cisco's Motion to Stay should be **DENIED** for the reasons discussed below.

**I. BACKGROUND**

ESN filed this suit on January 31, 2008, although it had previously filed suit on the same patent against the same defendants in October of 2007. Both complaints allege that Cisco infringes U.S. Patent No. 7,283,519 ("the '519 Patent") entitled "Distributed Edge Switching System for Voice-Over-Packet Multiservice Network." Dkt. No. 1, P 6; Civil Action No. 5:07-CV-156, Dkt. No. 1, P 6. The '519 Patent claims a distributed edge switch (network device) and a method for establishing a   [*3] voice-over-packet network architecture. One function of the distributed edge switch is to "support the delivery of voice, video (multimedia) and data ser-vices--multi-service delivery--to the subscriber" through a shared internet protocol (IP) path, thereby aggregating several functions together into "a single, cost-effective device." '519 Patent, col. 11, l.65 - col. 12, l. 4.

Cisco petitioned the U.S. Patent and Trademark Office (PTO) for *inter partes* reexamination of the '519 Patent on February 6, 2008. Dkt. No. 21, at 6. The PTO granted the reexamination request on April 16, 2008, prior to the scheduling conference in this case. Dkt. No. 37-21 (Exh. T). Although Cisco did not request a stay at the scheduling conference held before this Court on April 22, 2008, Cisco did note that it might wish to pursue a motion to stay. *See* Dkt. No. 22, at 2 (hearing minute entry). The PTO issued its First Office Action on June 13, 2008, which rejected every claim of the '519 Patent. Dkt. No. 36-3, at 6. Almost two and a half months after the PTO granted Cisco's reexamination request and after several disclosures under the Local Patent Rules, on June 30, 2008, Cisco filed this motion to stay.

## II. [*4] LEGAL PRINCIPLES

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

This Court has no "automatic" policies regarding stays pending reexamination; rather, "each motion to stay pending reexamination filed in this Court is considered on a case-by-case basis with each cause of action presenting distinct circumstances." *DataTreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006). In deciding whether to stay litigation pending reexamination, this Court considers "(1) whether a stay will un-duly prejudice or present a clear tactical disadvantage to

the non-moving party, (2) whether a stay will simplify the issues   [*5] in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *See Soverain,* 356 F. Supp. 2d at 662.

## III. PARTIES' POSITIONS & DISCUSSION

### A. Undue prejudice and tactical disadvantage to the nonmoving parties

Cisco argues that "ESN has no colorable argument that it will be prejudiced by a stay." Dkt. No. 35, at 4. Cisco's major thrust is that the PTO has a mandate to resolve *inter partes* reexaminations expeditiously and that the PTO has proceeded very quickly in this case. *Id.* at 5. Cisco next argues that because ESN does not practice the patent, it will not incur market share or customer loss for the duration of the stay--any injury is compensable with money damages. *Id.* at 6. Cisco also contends ESN will suffer no prejudice because it has no other claims in the lawsuit other than those based on the '519 Patent. *Id.* Finally, Cisco argues that the estoppel effect of *inter partes* reexamination, which prevents Cisco from using at trial any art submitted to the PTO during IPR, makes it less likely that a plaintiff will be prejudiced by a stay. *Id.* at 7.

ESN counters that the IPR process is very lengthy and will result in a "clear case of substantial   [*6] preju-dice." Dkt. No. 37, at 9-10. ESN notes that since IPR was instituted in 2001, only three proceedings had been com-pleted as of 2006 and in all of those cases, neither party appealed the decision to the Board of Patent Appeals and Interferences (BPAI) or the Federal Circuit. *Id.* at 10 (citing Roger Shang & Yar Chaikovsky, Inter Partes Re-examination of Patents: An Empirical Evaluation, 15 Tex. Intell. Prop. L.J. 1, 16 (2006)). ESN also cites statistics from the Institute for Progress, an independent organiza-tion that has recently analyzed the IPR process. *Id* (report attached as Exh. A to Dkt. No. 37). Significant findings of the Institute, according to ESN, include:

> . "To date [since the first IPR started in 2001], there has never been a single *inter* partes reexamination that has gone through the entire reexamination process (includ-ing appeal) and made it to completion." Dkt. No. 37-2 (Exh. A), at 2.

> . The PTO's report citing the average pendency of an *inter partes* case as 28.5 months is "mathematically accurate" but "highly misleading. . . . An appropriate reading of the statistic is that the Patent Office takes two years to dispose of a patent through *inter partes* reexam if the patent   [*7] holder doesn't care to defend

its rights. It takes significantly longer to get to a resolution if the patent holder participates in the process." Dkt. No. 37-2, at 6.

. "Without appeal, the average pendency period for *inter partes* reexam is 43.5 months, much longer than the 28.5 months reported by the USPTO--a 95% confidence interval would put the pendency between 34 and 53 months." Dkt. No. 37-2, at 2.

. "Although no *inter partes* reexam has ever been completed after being appealed, the average pendency for appealed *inter partes* reexam is 78.4 months (assuming no rework by the patent office or secondary appeal)--a 95% confidence interval would put the pendency between 5 and 8 years." Dkt. No. 37-2, at 2.

Thus, under the Institute statistics, ESN contends this stay will delay litigation for six and a half years or more. Dkt. No. 37, at 11. ESN next argues that a stay will certainly injure ESN beyond money damages as a stay would "essentially eliminate[] ESN's right to exclusivity and effectively grant[] Cisco a compulsory license until at least 2016." *Id.* ESN further argues that granting the stay will write off half of the life of ESN's patent. Dkt. No. 41, at 4. ESN also notes that the [*8] Supreme Court and Cisco's V.P. and General Counsel Mark Chandler has cautioned against viewing non- practicing entities as incapable of showing irreparable harm. Dkt. No. 37, at 11 (citing , *eBay Inc. v. MercExchange*, 547 U.S. 388, 393, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)); Dkt. No. 41, at 4.

ESN also contends a stay will create tactical disadvantages to ESN for several reasons: (1) a stay will prejudice ESN's ability to prosecute patent infringement when the stay is lifted because crucial witnesses are more likely to be unavailable, memories will fade, and evidence will be lost during the stay; (2) because Cisco's invalidity defense involves products that cannot be presented to the PTO in IPR and because discovery is needed to rebut the defense of obviousness, the Court is the best forum to adjudicate Cisco's invalidity defenses; and (3) this Court will provide a more timely resolution to the dispute. Dkt. No. 37, at 12-13. Finally, ESN notes that it gave Cisco an opportunity to bring this art to the attention of the PTO *prior* to the '519 Patent being issued. *Id.* at 5. In fact, Cisco did provide some art that ESN gave to the PTO *after* a Notice of Allowability had already been issued, the net result being the final [*9] issuance of the '519 Patent was delayed from June 2007 to October 2007. *Id.* However, during the period of June through October 2007, Cisco did

not disclose any of the art to ESN or the PTO that it now asserts in IPR. *Id.* Cisco does not dispute these statements by ESN; instead, Cisco states this information, as "settlement discussions," has no relevance to the Motion. Dkt. No. 39, at 2 n.1.

The Court finds ESN would be significantly prejudiced and suffer tactical disadvantages by a stay in this case. Mark Chandler, Cisco's V.P. and General Counsel perhaps said it best when he noted in testimony before the Senate Subcommittee on Intellectual Property in a hearing on patent post-grant review, "The principle that justice delayed is justice denied applies with full force to the patent process." [1] Staying this case for six-plus years when this Court can resolve the matter more expeditiously is unfairly prejudicial to ESN. Accordingly, this factor weighs heavily against granting the stay.

1   *Perspectives on Patents: Post-Grant Review Procedures and Other Litigation Reforms Before the S. Comm. on the Judiciary Subcomm. on Intell. Prop.,* 109th Cong. (2006) (statement of Mr. Mark Chandler, Senior [*10] Vice President and General Counsel, Cisco Systems, Inc.), *available at* http://judiciary.senate.gov/hearings/testimony.cf m?id=1911 (select "Mr. Mark Chandler" from Witness Testimony at the right).

## B. Simplification of the issues in question and trial of the case

The Court first notes that reexamination may result in simplification of the issues due to elimination, narrowing, or amendment of the claims. In *Soverain,* Judge Davis noted that while cancellation of all claims occurs in only twelve-percent of reexaminations, "[t]he unlikelihood of this result, which favors not staying the case, is offset by the possibility that some of the claims may change during reexamination, which favors staying the case." *Soverain Software LLC v. Amazon.com, Inc.,* 356 F. Supp. 2d at 662.

Cisco argues that a "stay of this case is especially likely to simplify the issues for trial." Dkt. No. 35, at 7. First, contends Cisco, if the patent claims are found to be invalid by the PTO, then the trial goes away. *Id.* Second, because the reexamination is *inter partes,* Cisco is estopped from using at trial any prior art publication that it might have presented to the PTO. *Id.* (citing 35 U.S.C. § 315(c)). Cisco also argues [*11] that because the PTO has affirmatively rejected each and every claim of the '519 Patent in the First Office Action, the chance that some claims will be cancelled is "highly likely." *Id.* at 8 (citing Shang & Chaikovsky, *supra,* at 14). Cisco further argues that the reexamination process is likely to force ESN to "modify one or more claims to avoid prior art." *Id.* at 10. Because of the number of references before the PTO,

Cisco argues, there is a "high likelihood that any surviving claims will be different from and narrower than the current claims." *Id.* at 11. Finally, argues Cisco, even if all the ESN claims remain in tact, the issues will be simplified because (1) Cisco will be estopped from presenting some invalidity defenses at trial, and (2) the Court will have additional guidance from the PTO regarding claim construction. *Id.* at 11-12.

ESN argues, however, that Cisco has cited over 100 alleged prior art products in its initial invalidity contentions, none of which are before the PTO in the IPR process. Dkt. No. 37, at 13-14. Further, ESN argues, the IPR is limited to the review of the publications cited to the PTO, of which there are only thirteen. *Id.* Thus, although Cisco will be [*12] estopped from asserting at trial the thirteen publications disclosed to the PTO in the IPR process, all of the alleged prior art products will still be in play at trial. *Id.* ESN concludes that it would be far more simple for all of the prior art to be considered at the same time and in the same forum and that the significant number of invalidity art remaining for consideration at trial (100-plus products) when compared to the small number of references (thirteen) cited to the PTO during IPR means "at best there would be only a *de minimus* narrowing of the invalidity issues." by a stay. *Id;* Dkt. No. 41, at 4. As for the initial Office Action, ESN argues that success in reexamination cannot be predicted by an initial office action because rejecting claims in a first office action is standard practice. Dkt. No. 37, at 14. ESN also contends Cisco's conclusion that that the IPR in this case is "highly likely" to result in cancellation of claims is unfounded because Cisco only considers the *"number"* of rejections made by the Patent Office without any discussion of the *merits* or *quality* of those rejections." *Id.* at 15. ESN also notes that Cisco's data is based on a small sample of 30 proceedings, [*13] which the authors acknowledge "still does not provide a large data set." *Id.* at 15 (citing Shang & Chaikovsky, *supra,* at 11).

The Court is not convinced that IPR will simplify the issues for trial in this case. It is difficult to gauge, at this early stage in the IPR process, how likely it is that any of the '519 Patent claims will be cancelled or modified through amendment. Further, Cisco's invalidity defense relies on a significant number of products (over 100), which will not be before the PTO in the IPR process. It has cited only thirteen pieces of art to the PTO and many of these are likely to be overlapped by the over 100 products. Thus, it is not clear whether the invalidity issues will be clarified much, if at all. Finally, the Court is not persuaded

that claim-construction will be simplified by IPR to any significant degree. However, because the Court also recognizes that IPR has the potential, theoretically, of simplifying issues for trial to at least some degree, the Court finds this factor is neutral.

## C. Completion of discovery and trial date

Cisco argues that this litigation is still in its "infancy" as "no significant resources have been expended to make a stay pending completion [*14] of reexamination improper. Dkt. No. 35, at 12. Cisco also notes that the trial date for the case is not until April 6, 2010. *Id.*

ESN agrees that the litigation is in its relatively early stages but argues that an early stage of litigation, without more, does not favor a stay. Dkt. No. 37, at 14. ESN then notes that a claim-construction hearing has already been set for June 2009 and that the parties have already exchanged Local Patent Rule (LPR) 3-1, 3-2, 3-3, and 3-4 disclosures. *Id.* ESN also notes that discovery is "well underway with over 20,000 pages of documents having been produced" thus far. *Id.*

The Court finds this factor favors granting a stay, although the Court finds this factor does not carry much weight in this case because discovery has already begun, a claim-construction hearing has been scheduled, and a trial date has been set.

## IV. CONCLUSION

When the factors are considered collectively, the Court finds the unfair prejudice to ESN in granting this stay overshadows any potential simplification of issues. Further, although the stage of this litigation is fairly early, statistics indicate that the IPR process, assuming appeals are taken, will take much longer than the schedule [*15] currently set in this case. For all of the foregoing reasons, Cisco's Motion to Stay Litigation Pending Reexamination of U.S. Patent No. 7,283,519. (Dkt. No. 35) is hereby **DENIED.**

## IT IS SO ORDERED.

SIGNED this 20th day of November, 2008.

/s/ David Folsom

DAVID FOLSOM

UNITED STATES DISTRICT JUDGE

# TAB 7



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1655625 (N.D.Cal.)
**(Cite as: 2007 WL 1655625 (N.D.Cal.))**

Page 1

**H**Only the Westlaw citation is currently available.

United States District Court, N.D. California,
Oakland Division.
FRESENIUS MEDICAL CARE HOLDINGS, INC.,
et al., Plaintiffs,
v.
BAXTER INTERNATIONAL, INC., et al., Defendants.
**No. C 03-1431 SBA.**
**Docket No. 881.**

June 7, 2007.

Glenn Beaton, Monique Michal Drake, Gibson Dunn
& Crutcher LLP, Denver, CO, John D. Van Loben
Sels, Gibson Dunn & Crutcher LLP, Palo Alto, CA,
for Plaintiffs.

**ORDER**

SAUNDRA BROWN ARMSTRONG, United States
District Judge.

**\*1** This matter comes before the Court on plaintiffs
Fresenius USA, Inc. and Fresenius Medical Care
Holdings, Inc.'s (Fresenius) Motion to Stay Proceedings Pending the Re-examination of the Patents-in-Suit [Docket No. 881]. After reading and
considering the arguments presented by the parties,
the Court finds this matter appropriate for resolution
without a hearing. For the reasons that follow, the
Court DENIES Fresenius's Motion to Stay.

**PROCEDURAL HISTORY**

On April 4, 2003, Fresenius filed a complaint seeking
declaratory judgment of invalidity and
non-infringement against Baxter Healthcare Corporation's (Baxter) U.S. Patent No. 5,247,434 ("434 Patent"), U.S. Patent No. 6,284,131 ("'131 Patent"), U.S.
Patent No. 5,326,476 ("'476 Patent"), and U.S. Patent
No. 5,744,027 ("'027 Patent")[FN1]. On September 2,

2005, the Court granted in part Baxter's motion for
partial summary judgment and granted in part Fresenius's cross-motion for summary judgment, holding
that Fresenius's 2008K hemodialysis infringed claim
26 of the '434 patent and claim 1 of the '131 patent.
SeeDocket No. 370.The Court also held that the SVS,
Kt/V, and Blood Pressure screens of the 2008K did
not infringe claim 1 of the '131 patent.

> FN1. One of initial five the patents in this suit,
> U.S. Patent No. 5,486,286, is no longer at
> issue.

On September 26, 2005, Fresenius filed a request for
ex parte reexamination of the '131 Patent with the
United States Patent and Trademark Office (PTO).See
Ex. C to Decl. Limin Zheng Supp. Fresenius' Mot.
Stay at 3. On October 18, 2005, Fresenius filed its
request for ex parte reexamination of the '434 Patent
with the PTO. Id.

On November 22, 2005, the PTO granted Fresenius's
request for ex parte reexamination of the '131 and '434
Patents. The PTO found that substantial new questions
of patentability was raised by the prior art cited by
Fresenius in its request as to claims 1-25 of the '131
and 1-34 of the '434 patent. In response to the grant of
reexamination, on February 10, 2006, Baxter filed a
Patent Owner's Statement with respect to the '131
setting forth arguments why the claims were valid
over the cited prior art.

On May 16, 2006, and May 25, 2006, the Court denied
Fresenius' motions for summary judgment of invalidity and granted Baxter's motion for partial summary
judgment of validity. See Docket. Nos. 661 and
701.On June 15, 2006, Fresenius stipulated that its
2008K Hemodialysis machine infringes the asserted
claims of the '434, '131, and '027 Patents and on June
16, 2006, the Court entered a judgment of partial
infringement of those asserted claims. SeeDocket Nos.
755 and 770.

Over three years after the initial complaint was filed, a
jury trial was held from June 19, 2006 to June 30, 2006.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1655625 (N.D.Cal.)
**(Cite as: 2007 WL 1655625 (N.D.Cal.))**

Page 2

On June 30, 2006, the jury returned a verdict in Fresenius' favor on the invalidity of the asserted claims of the ' 434, '131, '476, and '027 Patents, and of non-infringement of Claims 5 and 7 of the '476 Patent. On July 28, 2006, Baxter filed a Rule 50(b) Renewed Motion For Judgment as a Matter of Law and a Rule 59 Motion for a New Trial.Docket Nos. 845, 847.

*2 On November 16, 2006, the PTO issued a First Non-Final Office Action rejecting claims 1-25 as obvious. *Id.* On December 22, 2006, the PTO issued a First Non-Final Office Action rejecting claims 12-19 and 26-34 of the '434 Patent as obvious. These rejections include all claims of the '434 patent asserted by Baxter at trial. Fresenius did not move for a stay at the time either Office Action was issued.

On February 13, 2007, the Court granted both Baxter's Renewed Motion For Judgment as a Matter of Law and Motion for a New Trial, finding that Fresenius failed to introduce substantial evidence of invalidity of any of the asserted claims of the patents-in-suit, and ordering a new trial on the issue of damages as to all claims and infringement of claims 5 and 7 of the '476 Patent. SeeDocket No. 874.

On April 16, 2007, the parties entered a joint proposed order for pretrial preparation setting trial for October 22, 2007 on the issues of infringement of the remaining two claims of the '476 Patent and for damages. SeeDocket No. 884.The next day, on April 17, 2007, Fresenius filed a request for reexamination of the '027 Patent. See Zheng Decl., Exh. F. On April 19, 2007, after the trial date had been set, Fresenius filed the instant motion requesting that the Court stay the second damages trial until reexamination proceedings have concluded, or until all liability issues have been resolved by the Federal Circuit.

## LEGAL STANDARDS

Re-examination is a procedure by which any person can request that the PTO re-examine or re-evaluate the patentability of an unexpired United States patent. See35 U.S.C. § 302; see also *Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc.,* 2006 WL 1897165, at *1 (D.Colo.2006)."Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO." *Canady*

*v. Erbe Elektromedizin GmbH,* 271 F.Supp.2d 64, 78 (D.D.C.2002). Patent validity is a commonly asserted defense, and courts are cognizant of Congress's intent to utilize the PTO's specialized expertise to reduce costly and time-consuming litigation. *Id.*

Courts are not required to stay judicial proceedings pending re-examination of a patent. It is, however, within a district court's discretion to do so. See, e.g., *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citations omitted) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination"); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed.Cir.1985); *Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107, 1110 (N.D.Cal.2006) (Wilken, J.). There is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994); see also *Robert H. Harris Co. v. Metal Mfg. Co.,* 19 U.S.P.Q.2d 1786, 1788 (E.D.Ark.1991) ("[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

*3 However, a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. See *NTP, Inc. v. Research In Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005) (citing *Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed.Cir.2001)). There is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule "would invite parties to unilaterally derail" litigation. *Soverain Software LLC v. Amazon .Com, Inc.,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005).

In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. See *Telemac,* 450

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1655625 (N.D.Cal.)
(Cite as: 2007 WL 1655625 (N.D.Cal.))

F.Supp.2d at 1110; *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D.Cal.2006); *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D.Cal.2005). A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed.Cir.1983), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

## ANALYSIS

Fresenius argues that, given the "recent" (i.e., 5-6 months before Fresenius moved to stay) determinations of the Reexamination Unit of the Patent Office that twelve of the fifteen claims being asserted by Baxter are obvious, conducting a damages trial now "simply does not make sense." Mot. at 1. Fresenius contends that the reexamination process will either make this litigation moot, or will significantly narrow the issues for resolution. Baxter counters that the procedural posture of this case demands that it proceed, that it would be unduly prejudiced by any further delay of this four year old case, and that the issues could not be simplified by the reexamination process.

### 1. Stage of Litigation

The parties, and this Court, have already expended a great deal of effort and resources in this matter, including conducting a nine-day trial in June 2006. Fresenius contends that there is no reason for the parties to conduct yet another trial now because the jury's findings on damages may eventually be rendered moot by the reexamination proceedings. However, Fresenius's argument runs counter to the clear rule developed in cases considering stays that, where, as here, discovery has commenced, claim construction has been briefed, and dispositive motions have been filed and disposed of, courts should not grant stays for reexamination before the PTO. *See Eolas Techs., Inc. v. Microsoft Corp.*, 2004 WL 170334, at 6 (N.D.Ill. Jan.15, 2004), *rev'd on other grounds*, 399 F.3d 1325 (Fed.Cir.2005) ("there is little support, if any, for staying entry of judgment when reexamination is ordered well into the briefing period for post-trial motions"). The vast majority of cases that have granted stays have done so when the cases were in their relatively nascent stages. *See, e.g., KLA-Tencor*,

2006 WL 708661, at *2 (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D.Cal.1994) (granting stay where the parties had undertaken little or no discovery). In contrast, not only is pretrial preparation complete in this matter, but *a trial has been already held.* This factor would weigh heavily in favor of denying a stay.

### 2. Simplification of the Issues for Trial

*4 It is possible that reexamination by the PTO would simplify the issues for trial; of course, if all the claims are invalidated, as the PTO's initial non-final determinations might imply, there will be no issues to try. However, it is also possible that the PTO's determination will have no ultimate bearing on the damages determination in this case, as the PTO's initial actions were non-final and non-binding, and the PTO is free to reconsider its initial determinations prior to issuing a reexamination certificate.[FN2] *See In re Bass*, 314 F.3d 575, 577 (Fed.Cir.2002) ("Until a matter has been completed, ... the PTO may reconsider an earlier action."). In either case, as discussed below, the parties and the Court would likely have to wait years to find out. Moreover, this Court is already intimately familiar the with the technology at issue here, and therefore its interest in simplifying the proceedings by waiting for the PTO to reexamine the patents is significantly weaker than in cases where trial has not already been held. *See Telemac.*, 450 F.Supp.2d 1107, 1111 (denying stay where motions to dismiss had already been ruled on and court was familiar with patents). Additionally, as Baxter points out, this case is already "packaged" for trial-discovery is complete, the period for dispositive motions has closed, the parties have already listed, reviewed, and objected to exhibits and discovery designations, and the jury instructions are complete. The Court and the parties are as well-positioned as they ever will be to try this case, and, at this late stage, need not look to the PTO for guidance or simplification of the issues. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 467 F.Supp. 99, 103 (D.Del.1979) ("the PTO is not 'uniquely qualified' to pass on the validity of the patent.").

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

> FN2. A reexamination is complete only upon the statutorily mandated issuance of a re-examination certificate. 35 U.S.C. § 307(a).

More importantly, however, is the fact that Fresenius's request would only serve to *complicate* the proceedings in this case, not simplify them. Fresenius appears to request that the Court, after entering a stay pending reexamination, empanel a second jury to try infringement of the '476 patent, "wait until the reexamination and appeal are resolved," and then empanel a *third* jury to conduct "an abbreviated damages trial." This is, of course, assuming that, while the reexamination is pending none of the multiple appeals that will inevitably result will require remand and yet another trial. This suggestion simplifies neither the issues nor the procedural posture of this case. Thus, this factor also weighs in favor of denying a stay.

**3. Undue Prejudice or Clear Tactical Disadvantage**

"Parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive discovery or trial preparation." *Freeman v. Minnesota Mining and Manufacturing Co.*, 661 F.Supp. 886, 888 (D.Del.1987) (citations omitted). To do so would be to allow a party to use reexamination as "a mere dilatory tactic." *Id.*

*5 It is difficult to imagine a scenario in which a dilatory motive could be more apparent. The reexaminations have been pending before the PTO since November 2005. After the reexamination requests, the parties engaged in protracted and lengthy discovery and filed multiple motions for summary judgment. Then, presumably believing it would prevail, Fresenius went to trial. When Baxter filed its Renewed Motion for Judgment as a Matter of Law and its Motion for a New Trial, Fresenius chose to oppose the motions on their merits rather than request a stay. Only once Fresenius received an adverse judgement-nearly four years after initiating the litigation before this Court rather than seeking the alternative route of re-examination-did it suggest that these proceedings should yield to the reexamination process. Thus, after years of protracted litigation, only now, at the 11th hour and after suffering a substantial setback, does Fresenius extol the virtues of reexamination. However,

we are too far along the path Fresenius has chosen to allow Fresenius to turn back, believing it has lost its way. *See Enprotech Corp. v. Autotech Corp.*, 1990 WL 37217, at *2 (N.D.Ill. Mar.16, 1990). To do so would simply be to allow Fresenius to "unilaterally derail" this litigation. *See Soverain Software*, 356 F.Supp.2d at 662.

When a party moves to stay litigation pending PTO reexamination, the non-moving party may be unduly prejudiced by the lapse of time during reexamination. *Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 WL 935516, at *2 (S.D.Cal. March 21, 2007). It is unquestionable that Baxter would be prejudiced by a stay. Courts have recognized that the reexamination process may be lengthy, often taking years to run its course, and in the meantime Fresenius will be free to market and sell its purportedly infringing technology unfettered. *See, e .g., In re Cygnus Telecommc'ns. Tech. LLC Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005) (finding that re-examinations generally take from six months to three years); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 n. 1 (W.D.N.Y.1999) (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals). Moreover, if any claim were ultimately rejected by the PTO, Baxter could appeal the examiner's decision to the Board of Patent Appeals and Interferences, which decision could in turn be appealed to the Federal Circuit. *See* 35 U.S.C. § 134(b); 35 U.S.C. § 141. In the lengthy delay that would inevitably ensue if a stay were granted, evidence could be lost and witnesses' memories could fade. *Alltech*, 2007 WL 935516, at *2. Accordingly, this factor weighs heavily in favor of denying a stay.

The Court is cognizant of the fact that this case is in a somewhat unusual posture that appears to be a novelty in the caselaw. While Fresenius's dilatory motives could not be more apparent, this case involves the somewhat perplexing factor that the PTO has already made initial, non-final determinations that the subject claims in the patents-in-suit are invalid. Thus, THERE appears to be a real possibility (but, at this point, *only* a possibility) that the PTO may determine that the patents are invalid *after* Fresenius is adjudged to have infringed them and has a damages judgment against it. Courts, in granting stays (*prior* to trial) have noted that such a possibility raises the specter of "irreparable harm" to an accused infringer. *See Bausch & Lomb,*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1655625 (N.D.Cal.)
**(Cite as: 2007 WL 1655625 (N.D.Cal.))**

*Inc. v. Alcon,* 914 F.Supp. 951, 952 (W.D.N.Y.1996); *Everything for Love.com, Inc. v. Tender Loving Things, Inc.,* 2006 WL 2091706, at *4 (D.Ariz. Jul.21, 2006).

**\*6** However, this only strengthens the argument that Fresenius should not have waited until it had had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and *then* had a favorable PTO action to request a stay. Any irreparable harm that Fresenius will suffer will be of its own making, attempting, as it did, to "game the system" by playing both fields simultaneously. Fresenius chose to litigate this case rather than request a stay when reexamination was sought, presumably believing its best bet was in this Court rather than the PTO. Had Fresenius requested a stay at an earlier date, while this case was in a different procedural posture, this Court might have been inclined to grant one. But to allow Fresenius to now derail this litigation would be to sanction the most blatant abuse of the reexamination process. The express purpose of the reexamination procedure is to shift the burden from the courts by reducing costly and time-consuming litigation. H.R. REP. NO. 96-1307, pt. 1, at 3-4 (1980); *Canady,* 271 F.Supp.2d at 78. This purpose will not be served by granting a stay at this late date.

### CONCLUSION

This case is now over four years old. Granting a stay at this late juncture would virtually guarantee the addition of numerous more years to its vintage. This case should now proceed with alacrity, not with the sloth that is the essence of a stay.

Accordingly, IT IS HEREBY ORDERED THAT the motion to stay Law [Docket No. 881] is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.
Not Reported in F.Supp.2d, 2007 WL 1655625 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 8

LEXSEE



Analysis
As of: Jul 29, 2009

FUJITSU LIMITED, a Japanese corporation, and FUJITSU MICROELECTRON-
ICS AMERICA, INC., a California corporation, Plaintiffs, v. NANYA TECH-
NOLOGY CORP., a Taiwanese corporation, and NANYA TECHNOLOGY CORP.,
U.S.A, a California corporation, Defendants.

No. C 06-6613 CW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

2007 U.S. Dist. LEXIS 83581

November 6, 2007, Decided
November 6, 2007, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Com-
plaint dismissed at Fujitsu Ltd. v. Nanya Tech. Corp.,
2008 U.S. Dist. LEXIS 63830 (N.D. Cal., Aug. 12, 2008)

**PRIOR HISTORY:** Fujitsu Ltd. v. Nanya Tech. Corp.,
2007 U.S. Dist. LEXIS 59508 (N.D. Cal., Aug. 1, 2007)

**CORE TERMS:** patent, discovery, re-examination, in-
fringement, Local Patent Rules, stay proceedings, dis-
closure, collectively, simplify, tactical, jurisdictional,
patentability, merits-based, re-examined, scheduled,
canceled

**COUNSEL:** [*1] For Fujitsu Limited, and Fujitsu Mi-
croelectronics America, Inc., Plaintiffs: LEAD COUN-
SEL Christopher E. Chalsen, Michael M. Murray, Law-
rence Tucker Kass, Milbank, Tweed, Hadley & McCloy
LLP, New York

Mark Scarsi, Christopher Holm, Milbank, Tweed, Had-
ley & McCloy LLP, California

For Nanya Technology Corp., Nanya Technology Corp.
U.S.A., Defendants: LEAD COUNSEL Michael W.
Shore, Alfonso G. Chan, Jeffrey R. Bragalone, Shore
Chan Bragalon LLP, Texas

Martin C. Fliesler, Rex Hwang, Fliesler, Meyer LLP,
California [*2] .

**JUDGES:** CLAUDIA WILKEN, United States District
Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION**

[*3] ORDER DENYING DEFENDANTS' MO-
TION TO STAY PROCEEDINGS PENDING
RE-EXAMINATION OF PATENTS

Defendants Nanya Technology Corp. and Nanya
Technology Corp., U.S.A. (collectively, Nanya) move for
a stay of the portion of these proceedings concerning U.S.
Patent Nos. 4,801,989, 6,104,486, 6,292,428, 6,320,819
and 5,227,996 until the U.S. Patent and Trademark Office
(PTO) has completed its re-examination of the patents.
Plaintiffs Fujitsu Ltd. and Fujitsu Microelectronics
America (collectively, Fujitsu) oppose Defendants' mo-
tion. The matter was taken under submission on the pa-
pers. Having considered all of the papers submitted by the
parties, the Court denies Nanya's motion.

BACKGROUND

On September 13, 2006, Nanya filed a lawsuit against
Fujitsu in the District of Guam alleging antitrust viola-
tions and infringement of three of Nanya's patents, and
seeking a declaration that it did not violate any of fifteen
of Fujitsu's [*4] patents. A month later, Fujitsu filed suit
against Nanya in this Court alleging infringement of the

Page 1

five patents listed above, all of which were among the fifteen patents in the Guam action.

The parties disputed whether the Guam court had personal jurisdiction over Fujitsu; there is no significant connection between Guam and either the parties or the cause of action. The matter was the subject of extensive jurisdictional discovery. On July 27, 2007, the Guam court ordered the action transferred to this district, where it was assigned Case No. 07-3672. This Court subsequently related the 07-3672 action to the present 06-6613 action and consolidated the two. It later severed and stayed all anti-trust issues and Nanya's patent misuse affirmative defense.

While the Guam proceeding was still underway, merits-based discovery in this action began pursuant to a case management order issued on February 7, 2007. Under the order, fact discovery is scheduled to be completed on February 1, 2008; dispositive motions are set to be heard by September 26, 2008; and trial is scheduled to begin on January 12, 2009. Nanya claims to have produced just under 100,000 pages of documents to date, largely pursuant [*5] to its disclosure obligations under the Local Patent Rules. Nanya states that Fujitsu has provided less than 4,000 pages of documents in connection with its disclosures under the Local Patent Rules, and has not provided any documents in response to Nanya's requests for production. Fujitsu counters that it has produced 800,000 pages of material, including documents produced in the Guam action. It argues that much of this material goes to the merits of the case. No merits-based depositions have yet taken place.

Between June 21, 2007 and July 20, 2007, as the Guam court was reaching a resolution of the jurisdiction question and as discovery was proceeding in this case, Nanya filed five requests for re-examination with the PTO. In those requests, Nanya used previously unexamined prior art to challenge the patentability of the five patents it is accused of infringing. [n1] The requests were filed after Nanya had already produced at least 80,000 pages of documents during discovery. See Holm Dec. Exs. 1 and 3.

n1  n1 In its reply, Nanya claims to have begun filing these requests on May 15, 2007. Nanya does not support this assertion with any evidence, and the May 15 date is not consistent with [*6] other filings in this case. See Docket Nos. 128, 129, 130, 132, and 133 (notices of the PTO's grant of Nanya's re-examination requests).

Between August 3, 2007 and September 11, 2007, the PTO granted all of Nanya's requests. In doing so, it found that substantial questions existed concerning the patentability of certain claims in each of the five patents. On October 4, 2007, Nanya moved the Court for a stay of the

portion of these proceedings concerning the patents undergoing re-examination. Nanya also stated that, if the Court were to grant its motion, it would file a Rule 41 motion to dismiss without prejudice all of its claims for declaratory judgment based on the ten Fujitsu patents that Fujitsu has not asserted against it. Nanya apparently wishes to go forward with its own infringement claims against Fujitsu.

DISCUSSION

As the Federal Circuit has noted, "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted). While courts are not required to stay judicial proceedings pending re-examination of a patent, [*7] a stay for purposes of re-examination is within the district court's discretion. See, e.g., Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985). One court in this district has noted that there is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination or re-issuance proceedings, especially in cases that are still in the initial stages of litigation and where there has been. little or no discovery. ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

In determining whether to stay a case pending re-examination, a court may consider the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. In re Cygnus Telecomm. Tech., LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005).

Nanya characterizes this case as in an early stage of discovery, noting that the parties only completed their disclosures pursuant to the Local Patent Rules in June, 2007, and that no significant [*8] factual discovery has already taken place. By Nanya's own account, it has produced nearly 100,000 pages of documents going to the merits of the case. Fujitsu, for its part, has produced over 800,000 pages of material. While much of this was produced in the Guam action in connection with the jurisdictional dispute, Fujitsu asserts that at least 100,000 pages of these documents go to the merits of the case. See Holm Dec. Ex. 5. The parties have also exchanged material on claim construction and their contentions of infringement and invalidity. The fact that much of this discovery may have been compelled by the Local Patent Rules rather than by the parties' discovery requests does not detract from its significance. In fact, discovery has proceeded to such a degree that the parties plan to sub-

stantially complete document production by November 16, 2007. Additionally, pursuant to the Court's case management order, less than four months remain before all fact discovery is to be concluded. Considering also that fact discovery will not be significantly affected by the results of the examination proceedings, the Court sees no good reason to stay the remainder of fact discovery pending a conclusion [*9] of those proceedings.

Additionally, while the outcome of the PTO's re-examination proceedings could simplify the issues in this case, the chance of any given patent emerging from a third-party-initiated re-examination with all re-examined claims canceled is only twelve percent. Holm Dec. Ex. 16. Thus, the chance that all five of the patents will have all of the re-examined claims canceled is 0.0025 percent. It is therefore very unlikely that the PTO proceedings will completely eliminate the need to move forward with this case.

Fujitsu argues that it will be severely prejudiced if this case is stayed pending re-examination. It notes that, during any stay, "witnesses may become unavailable, their memories may fade, and evidence may be lost." These concerns are valid. The Court also agrees with Fujitsu that it would be unreasonable to permit Nanya to proceed on its infringement claims against Fujitsu while

staying Fujitsu's infringement proceedings against Nanya, as Nanya proposes.

The Court notes that Nanya could have filed its requests for re-examination with the PTO at an early point in this litigation. t Instead, it waited until nine months after initiating the Guam action -- which [*10] itself was the source of considerable delay and expense -- and after hundreds of thousands of documents had been produced. Nanya should not succeed in obtaining a tactical advantage over Fujitsu by continuing to delay these proceedings. Accordingly, the Court declines to exercise its discretion to issue a stay pending re-examination of the patents by the PTO.

CONCLUSION

For the foregoing reasons, Nanya's motion for a stay (Docket No. 134) is DENIED. The case will proceed according to the deadlines contained in the Court's existing case management order.

IT IS SO ORDERED.

Dated: November 6, 2007

CLAUDIA WILKEN

United States District Judge

# TAB 9



152 F.3d 941
152 F.3d 941, 1998 WL 130514 (C.A.Fed. (Nev.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 152 F.3d 941, 1998 WL 130514 (C.A.Fed. (Nev.)))

**C**NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTAF Rule 47.6 for rules
regarding the citation of unpublished opinions.)

United States Court of Appeals,
Federal Circuit.

IN RE BINGO CARD MINDER CORPORATION,
Petitioner.
No. 534.

Feb. 25, 1998.

Before RICH, NEWMAN, and SCHALL, Circuit
Judges.

ON PETITION FOR WRIT OF MANDAMUS

RICH, Circuit Judge.

ORDER

*1 Bingo Card Minder Corporation submits a petition
for a writ of mandamus to direct the United States
District Court for the District of Nevada to dismiss the
patent infringement action against it for lack of juris-
diction. Fortunet, Inc. opposes.

BACKGROUND

Fortunet sued Bingo Card for infringement of one of
its patents. Subsequently, the Patent and Trademark
Office (PTO) granted a codefendant's request for
reexamination of the patent, and the district court
stayed its proceedings pending reexamination. Claims
1-19 were subject to reexamination. The examiner
"confirmed" claims 3, 11, and 17 and determined that
claims 17, 18, and 19 were patentable. However, the
examiner rejected claims 1, 2, 4-10, and 13-16 as

unpatentable over prior art. The examiner denied
Fortunet's request to reinstate claim 1, the only inde-
pendent claim. Fortunet appealed to the Board of
Patent Appeals and Interferences. That appeal is
pending.

In the meantime, the district court reopened the case.
Bingo Card moved to dismiss Fortunet's complaint for
lack of subject matter jurisdiction, arguing that be-
cause "independent claim 1 no longer exists and has
been rejected by the PTO," no case or controversy
existed concerning the patent infringement claim
asserted against Bingo Card. The district court denied
the motion to dismiss on August 4, 1997. Bingo Card
moved for reconsideration or, in the alternative, to
certify the August 4 order for immediate appeal pur-
suant to 28 U.S.C. § 1292(b). The district court denied
the reconsideration motion on December 22, 1997.
The district court determined that the patent in-
fringement claim was still viable because the claims of
the patent had not been canceled and a claim in re-
examination cannot be canceled until all appeals are
over or the time to appeal has expired. The district
court stated that nothing in the legislative history of
the reexamination statute supported the proposition
that a district court in a patent infringement litigation
lacks jurisdiction with respect to patent claims con-
currently undergoing reexamination. The district court
also determined that the results of the reexamination
proceeding were admissible evidence on the issue of
invalidity. Finally, the district court stated that Bingo
Card had not demonstrated that the August 4 order
should be certified under § 1292(b).

DISCUSSION

The remedy of mandamus is available to correct a
clear abuse of discretion or usurpation of judicial
power. *See In re Regents of the Univ. of Cal.*, 101 F.3d
1386, 1387 (Fed.Cir.1996). A party seeking such a
writ bears the burden of proving that it has no means
of attaining the relief desired, *see Mallard v. United
States Dist. Court of the S. Dist. Of Iowa*, 490 U.S. 296,
309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), and that
the right to issuance of the writ is "clear and indis-
putable." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

152 F.3d 941                                                                      Page 2
152 F.3d 941, 1998 WL 130514 (C.A.Fed. (Nev.))
(Table, Text in WESTLAW), Unpublished Disposition
 (Cite as: 152 F.3d 941, 1998 WL 130514 (C.A.Fed. (Nev.)))


33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980).

Bingo Card argues that in view of the examiner's
rejection of independent claim 1, the patent in-
fringement action in the district court must be dis-
missed for lack of subject matter jurisdiction because
there is no longer a case or controversy. In addition,
Bingo Card argues that allowing parallel proceedings
before the district court and the PTO to proceed si-
multaneously is contrary to the notion of conserving
judicial resources. Fortunet contends that because a
patent is presumed valid and the patent claims at issue
have not been canceled, the district court did not err in
its conclusion that a justiciable case or controversy
still exists.

*2 While we acknowledge Bingo Card's argument
concerning the preservation of judicial resources with
regard to a continued stay of the district court pro-
ceedings, we agree with Fortunet that the district court
has jurisdiction over the infringement action. Before
the courts, a patent is presumed valid and it remains so
until "it is no longer viable as an enforceable right."
*See Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266,
1270 (Fed.Cir.1985) (citing 35 U.S.C. §§ 301 to 307
(reexamination of patents)). A claim is not canceled
until the Board acts and the Commissioner cancels the
claim. Because the Commissioner has not yet issued a
certificate canceling the claims, they have not been
finally determined to be unpatentable. So long as there
is a valid patent, a justiciable case or controversy
exists with respect to the patent infringement action in
the district court. In sum, Bingo Card has not estab-
lished a clear and indisputable right to the relief it
seeks.

Accordingly,

IT IS ORDERED THAT:

The petition for a writ of mandamus is denied.

C.A.Fed.,1998.
In re Bingo Card Minder Corp.
152 F.3d 941, 1998 WL 130514 (C.A.Fed. (Nev.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 10

LEXSEE



Cited
As of: Jul 29, 2009

## IN RE PHOENIX LICENSING LLC, PATENT LITIGATION

### MDL DOCKET NO. 08-1910-MHM

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

### 2009 U.S. Dist. LEXIS 17525

**February 23, 2009, Decided**
**February 24, 2009, Filed**

**CORE TERMS:** reexamination, infringement, patent, licensing, prior art, patents-in-suit, multidistrict, ex parte, confirmation, discovery, completion, staying, memories, weigh, supplemental briefs, transferor, claims asserted, patent infringement, legal remedy, realize income, simplification, inappropriate, collectively, consolidated, transferred, declaratory, consecutive, statistics, expertise, simplify

**COUNSEL:** [*1] For Phoenix Licensing, L.L.C., (2:07cv387 - E.D. Texas), LPL Licensing, L.L.C., (2:07cv387 - E.D. Texas), Plaintiffs: Gregory Scott Dovel, Sean Aaron Luner, LEAD ATTORNEYS, Dovel & Luner LLP, Santa Monica, CA; Mark M Deatherage, Gallagher & Kennedy PA, Phoenix, AZ.

For LPL Licensing, L.L.C., a Delaware Limited Liabilty Company, (2:07cv1329; 2:08cv01 -AZ; 1:07cv 649 - DE)), Phoenix Licensing, L.L.C., an Arizona Limited Liability Company (2:07cv 1329; 2:08cv01 - AZ; 1:07cv 649 - DE), Defendants: Gregory Scott Dovel, Sean Aaron Luner, LEAD ATTORNEYS, Dovel & Luner LLP, Santa Monica, CA; Mark M Deatherage, LEAD ATTORNEY, Gallagher & Kennedy PA, Phoenix, AZ.

For Countrywide Home Loans, Inc., (2:07cv 387 - E.D. Texas), Countrywide Insurance Services, Inc., (2:07cv 387 - E.D. Texas), Defendants: Gary J Fischman, Jeffrey J Phillips, Joshua Wyde, LEAD ATTORNEYS, Howrey LLP, Houston, TX; William C Rooklidge, LEAD AT-TORNEY, Howrey LLP, Irvine, CA; Mark M Deatherage, Gallagher & Kennedy PA, Phoenix, AZ.

For Liberty Life Insurance Company, a South Carolina Corporation (2:07cv 387 - E.D. Texas), Defendant: K Gregory Haynes, Lisa C DeJaco, Matthew A Williams, LEAD ATTORNEYS, Wyatt Tarrant & Combs LLP, [*2] Louisville, KY; Mark M Deatherage, Gallagher & Kennedy PA, Phoenix, AZ; William Francis Auther, Bowman & Brooke LLP, Phoenix, AZ.

For Countrywide Insurance Services, Inc., (2:07cv 387 - E.D. Texas), Countrywide Home Loans, Inc., (2:07cv 387 - E.D. Texas), Counter Claimants: Gary J Fischman, Jeffrey J Phillips, Joshua Wyde, LEAD ATTORNEYS, Howrey LLP, Houston, TX; William C Rooklidge, LEAD ATTORNEY, Howrey LLP, Irvine, CA.

For Liberty Life Insurance Company, a South Carolina Corporation (2:07cv 387 - E.D. Texas), Counter Claimant: K Gregory Haynes, Lisa C DeJaco, Matthew A Williams, LEAD ATTORNEYS, Wyatt Tarrant & Combs LLP, Louisville, KY.

For LPL Licensing, L.L.C., (2:07cv 387 - E.D. Texas), Phoenix Licensing, L.L.C., (2:07cv 387 - E.D. Texas), Counter Defendants: Gregory Scott Dovel, Sean Aaron Luner, LEAD ATTORNEYS, Dovel & Luner LLP, Santa Monica, CA.

**JUDGES:** Mary H. Murguia, United States District Judge.

**OPINION BY:** Mary H. Murguia

**OPINION**

## ORDER

Currently before the Court is the Citi Parties' Motion to Stay pending reexamination of the '434 and '072 Patent. (Dkt. # s 50, 70). After reviewing the pleadings and holding a hearing on February 5, 2009, the Court issues the following Order. [1]

> [1] On February 18, 2009, pursuant [*3] to stipulation, the Court dismissed all claims by and against Direct Response Corporation, Warner Insurance Company, and Response Worldwide Insurance Company ("Response Parties"). (Dkt. # s 126, 127). Due to a number of similar dismissals of other parties to this action, only one member case, E.D. Tex. Case No. 2:07-387, which also carries Member Case No. Arizona 08-cv-666, remains pending in the MDL. As such, on February 19, 2009, the remaining parties (Phoenix Licensing, LLC, LPL Licensing, LLC, Countrywide Home Loans, Inc., Countrywide Insurance Services, Inc., and Liberty Life Insurance Company) filed a Motion for Joint Request for Suggestion to Remand (Dkt. # 128), asking that the Court issue a Suggestion of Remand to the United States Judicial Panel on Multidistrict Litigation to remand the remaining member case to its transferor court in the Eastern District of Texas. The Court will issue a Suggestion for Remand; that is addressed in a separate Order. However, the Court notes that the remaining parties disagree as to whether, in light of the Request for Suggestion to Remand, this Court should rule on the pending Motion to Stay. Having considered the parties' respective positions, [*4] the Court will rule on the Motion, but also notes that the Motion may presumably be reurged, with the permission of the transferor court, if the remaining member case is remanded to the Eastern District of Texas.

## I. BACKGROUND

The Court is currently coordinating pretrial proceedings for cases transferred to it pursuant to 28 U.S.C. § 1407 by the United States Judicial Panel on Multidistrict Litigation. (Dkt. # 1). This Multidistrict Litigation ("MDL") involves multiple patent infringement and declaratory judgment actions with respect to three patents [2] owned by Phoenix Licensing, LLC and licensed to LPL Licensing, LLC (collectively, "Infringement Plaintiffs" or "Plaintiffs"). The patents-in-suit involve technologies that allow companies, such as financial and insurance institutions, to perform marketing by automatically preparing client communications relating to financial products and services for the appropriate customers. (Dkt. # 58, p.1, n. 1).

> [2] United States Patent Nos. 5,987,434 (the "'434 Patent"), 6,076,072 (the "'072 Patent"), and 6,999,938 (the "'938 Patent") (collectively, the "patents-in-suit").

On June 20, 2008, Citibank, NA, Citibank USA, NA, Citibank (South Dakota), NA, [*5] CitiMortgage, Inc., Citigroup, Inc., Citi Assurance Services, Inc., and Citicorp Credit Services, Inc. (the "Citi Parties), filed a Motion to Stay the MDL in light of the then-pending ex parte reexamination of the '434 Patent before the United States Patent and Trademark Office ("PTO"). [3] (Dkt. # 50). As part of that reexamination, on May 16, 2008, the PTO rejected all 160 claims of the '434 Patent in an initial Office Action. (Dkt. # 51, p.2). However, on January 30, 2009, six days before the Court's hearing on the Motion to Stay, and well after completion of briefing on the Motion, the PTO reversed their initial Office Action and issued a Notice of Intent to Issue Ex Parte Reexamination Certificate confirming all 160 claims of the '434 Patent without amendment. (Dkt. # 120).

> [3] On January 16, 2009, all claims by and against the Citi Parties were dismissed from the MDL. (Dkt. # 110). In addition, in September 2008, all claims by and against the Discover Parties (Discover Financial Services, Discover Bank, DFS Services LLC, and Discover Products, Inc.), who joined in the Citi Parties' Motion to Stay (Dkt. # 52), were dismissed from the MDL. (Dkt. # 82). However, although never officially [*6] joining in the Citi Parties' Motion to Stay, the then-remaining Infringement Defendants and Declaratory Judgment Plaintiffs (the Countrywide Parties, Liberty Life Insurance Company, and the Response Parties, the latter of whom have since been dismissed from the MDL) filed a Supplemental Brief Regarding Motion to Stay and Effects of Reexamination on Asserted Claims pursuant to the Court's October 6, 2008 Minute Order directing the Citi Parties and the Infringement Plaintiffs to file supplemental briefs on the Motion to Stay. (Dkt. # 84). As such, the Court will construe the Supplemental Brief as a Joinder by the remaining Infringement Defendants (Liberty Life and the Countrywide Parties) to the Citi Parties' still-pending Motion to Stay.

But the Motion to Stay is not moot. On July 23, 2008, the Citi Parties requested that the PTO also conduct ex parte reexamination of the '072 Patent. (Dkt. # 89, Ex. D). The PTO granted that request on September 10, 2008. (Id.). The '938 Patent is currently not subject to reexamination.

## II. LEGAL STANDARD

Courts have the inherent power to control and manage their dockets. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing Landis v. North American Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). [*7] This power "includ[es] the authority to order a stay pending conclusion of a PTO reexamination." Id. at 1427 (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

"[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings." ASCII Corp. v. STD Entertainment USA, Inc., 844 F.Supp. 1378, 1381 (N.D. Cal. 1994) (citations omitted).

"In determining whether to stay a case pending reexamination, a court must consider the following factors: (1) whether a stay will simplify the issues in question and trial of the case[,] (2) whether discovery is complete . . . and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Medicis Pharm. Corp. v. Upsher-Smith Laboratories, Inc., 486 F.Supp.2d 990, 993-94 (D. Ariz. 2006). [4] In addition, in making this determination, "[t]he Court must weigh the competing interests presented by a specific set of facts." Gladish v. Tyco Toys, 1993 U.S. Dist. LEXIS 20211, at *2-3 (E.D. Cal. 1993).

> 4 Although Medicis Pharm. includes "whether a trial date has been set" as part of the second factor, the Court believes that [*8] element is of little probative value (especially here, as it is this Court's general practice to set a trial date for civil cases only after all pre-trial litigation is complete). The important aspect of the second factor is simply the stage of the proceedings.

Furthermore, "[a] stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." In re Cygnus Telecommunications Technology, LLC, 385 F.Supp.2d 1022, 1023 (N.D. Cal. 2005) (citing Gould, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate with the expert view of the PTO (when a claim survives the reexamination proceeding).")).

## III. ANALYSIS

### A. Stage of Litigation

All of the parties acknowledge that the early stage of the MDL weighs in favor of granting a stay. (Dkt. # 89, p.5; Dkt. # 58, p.2 n.3). The member cases in this MDL

were not fully consolidated in this Court until April 2008, and although the remaining parties have already served their infringement [*9] and invalidity contentions pursuant to the Court's August 19, 2008 Scheduling Order, fact discovery has yet to begin. (Dkt. # 73, pp. 2-3). Notably, the Court's Scheduling Order explicitly makes all remaining discovery contingent on the Court's decision on the instant Motion to Stay. (Dkt. # 73, p.3). Thus, as discovery is not complete and much pre-trial litigation remains, the present stage of the MDL favors grating a stay.

### B. Simplification of Issues For Trial

Prior to the PTO's recent confirmation of all 160 claims of the '434 Patent, the Infringement Defendants argued that (1) it is likely that most, if not all, of the claims asserted in the MDL are invalid as currently written, (2) the results of the PTO's reexamination proceedings will likely "render this entire effort futile," and (3) at the very least, the PTO reexamination will streamline the remaining issues for trial. (Dkt. # 50, pp. 3, 5-6, 8). Given recent events, those arguments are now somewhat dampened.

Undeterred, however, Defendants continue to assert essentially the same arguments with respect to the pending reexamination of the '072 Patent. The Infringement Plaintiffs, on the other hand, argue that "staying this case [*10] pending the reexamination could not result in the Patent Office resolving most of the issues in this case" because the PTO reexamination involves only one of the three patents in suit, and given the PTO's recent confirmation of the claims of the '434 Patent without amendment, there is only a remote chance that the PTO will cancel or amend any of the asserted claims in the '072 Patent. (Dkt. # 58).

First, PTO statistics provide that there is only a 13% all-cancellation rate for patents subject to third-party requested ex parte reexamination. (Dkt. # 89, Ex. F). However, the appropriateness of a stay does not depend on whether the stay can resolve the entire case. See In re Cygnus, 385 F.Supp.2d at 1024 ("If the USPTO cancels any of the 21 claims asserted in the two patents, infringement and validity issues that could potentially be raised in any of the multiple litigations consolidated before this court would be resolved.") (emphasis added). Second, PTO statistics also provide that there is a 59% chance that some of a patent's claims will be changed. (Id.). But the mere fact that in any given reexamination there is a 59% chance that the patent's claims will be changed, does not necessitate [*11] staying the action; otherwise every action that involved reexamination would warrant a stay. On the other hand, "[f]or those claims that survive reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration." In re Cygnus, 385 F.Supp.2d at 1024; see also Medicis Pharm.,

486 F.Supp.2d at 994 ("[A]ny review of prior art that the Court may conduct will be enhanced by the PTO's expert opinion.").

In addition, "[b]y granting a stay at this juncture, the parties will save the expense of litigating issues that the PTO's experts may render moot." Medicis Pharm., 486 F.Supp.2d at 994. Further, although Plaintiffs are correct that the Court can consider additional issues that the PTO cannot consider, such as prosecution laches and inequitable conduct, and the Court can take a more comprehensive approach than the PTO by concurrently examining the validity of all three patents in suit, it is also true that "reexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise." Brown v. Shimano American Corp., 18 U.S.P.Q.2d 1496 (C.D. Cal. 1991). And although the [*12] Infringement Plaintiffs argue that permitting a stay pending reexamination would defeat the fundamental purpose of the MDL statute to "promote the just and efficient conduct of such actions," 28 U.S.C. § 1407, "[b]y permitting the USPTO to apply its expertise to the patents-in-suit, a stay of this action may facilitate more consistent outcomes in the litigations that have been transferred to it - precisely the goal of the multidistrict litigation scheme." In re Cygnus, 385 F.Supp.2d at 1024.

Here, however, "[m]ore compelling is plaintiff's contention that the reexamination will not resolve everything." Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS 2926, at *1-2 (N.D. Ill. 1990). Although the Court disagrees with Plaintiffs' contention that courts should decline to stay actions when reexamination proceedings will not eliminate all of the issues in the action (Dkt. # 58, p.6), when, as here, reexamination cannot address most of the issues involved in the litigation, the Court cannot find that "there is little question that a stay would 'simplify the issues in question and trial of the case.'" In re Cygnus, 385 F.Supp.2d at 1024. Only one of the three patents-in-suit, the '072 Patent, [*13] is subject to reexamination. The '938 Patent is not subject to reexamination. And more importantly, the PTO recently confirmed all 160 claims of the '434 Patent without amendment. In addition, despite the fact that the PTO granted reexamination of the '072 Patent on the basis that there is a "substantial new question of patentability" in light of the asserted prior art, which is the basis for all grants of reexamination, the '072 reexamination involves four out of six of the same prior art that was asserted against the '434 Patent in reexamination. Therefore, because reexamination of '072 Patent will not resolve most of the issues in question or trial of the case, and in light of the PTO's recent confirmation of all of the claims of the '434 Patent (a.k.a. "the seminal patent in these actions") (Dkt. # 51, p.1), the Court cannot find that whatever simplification of the issues that may

perhaps result from the PTO's reexamination of the '072 Patent favors granting a stay at this time.

**C. Prejudice**

The Infringement Plaintiffs contend that the Court should deny the pending Motion to Stay because "[a]ny delay will necessarily prejudice LPL and Phoenix as the Plaintiffs in this litigation." [*14] (Dkt. # 58, p.9). Specifically, Plaintiffs point to the fact that (1) "[t]he average re-examination takes 21 months," In re Columbia University Patent Litigation, 330 F.Supp.2d 12, 15-17 (D. Mass. 2004), (2) the '072 Patent was not granted reexamination by the PTO until September 10, 2008, and (3) delay may be compounded if Defendants submit the '938 Patent for consecutive reexamination.

Clearly, if there is prejudice to Infringement Plaintiffs, it arises primarily in the form of delay. Plaintiffs assert that the PTO reexamination could potentially result in delaying resolution of MDL member cases for numerous years (based on an average reexamination period of approximately two years, not including any delay involved if the reexaminations are appealed). But Plaintiffs' worries of seemingly indefinite delay appear overstated, especially in light of the PTO's recent completion of the '434 Patent reexamination. While Plaintiffs may be correct that the average reexamination takes 21 months, "reexaminations generally take from 6 months to 3 years." In re Cygnus, 385 F.Supp.2d at 1023. And Reexamination of the '434 Patent took only approximately thirteen months. (Dkt. # 120). Moreover, reexamination [*15] of the '072 Patent has been underway for approximately six months (reexamination was granted September 10, 2008). [5] (Dkt. # 96, p.2). In addition, the '072 reexamination is based on some of the same prior art asserted in the '434 reexamination, and thus it is reasonable to assume that '072 reexamination may not take as long as the '434 reexamination. (Dkt. # 89, Exs. C & D).

_____

5    The Infringement Plaintiffs state that "requesting that the '072 Patent also be reexamined demonstrates how defendants can use a series of reexaminations as inappropriate delay tactics." (Dkt. # 96, pp. 3-4). However, if Defendants truly wished to use reexaminations as inappropriate delay tactics, then they could have sought consecutive reexamination, rather than relatively concurrent reexamination, of the '072 Patent. On the other hand, Plaintiffs' allegation of inappropriateness would carry more weight in the hypothetical event that Defendants seek reexamination of the '938 Patent at this time or waited until completion of the '072 reexamination before seeking reexamination of the '938 Patent.

Plaintiffs also contend that a stay will result in their inability to realize income from licensing their patents, speculate [*16] that Defendants might enter bankruptcy as a result of the current financial crisis, and lament that potential witnesses' memories will continue to fade over time. (Dkt. # 58, pp. 9-10; Dkt. # 96, p.5). First, it is unclear how the fading of witnesses' memories prejudices Plaintiffs in particular; presumably witnesses' memories do not rely on their affiliation with a particular party. Nonetheless, such a consideration will always weigh against granting any sort of extended stay. Second, with respect to Plaintiffs' inability to realize income, since "LPL's only business is licensing and enforcing the patents-in-suit" and "LPL does not make, sell, or otherwise deal in any products or services," "[a] stay will not narrow or exclude any legal remedy currently available to LPL." (Dkt. # 89, p.7); see Sorensen v. Black and Decker Corp., 2007 U.S. Dist. LEXIS 66712, at *18 (S.D. Cal. 2007) ("If the PTO does not invalidate or otherwise alter the claims of the patent, the Plaintiffs' legal remedy remains unaffected."). But perhaps Plaintiffs' financial concerns stem primarily from Plaintiffs' additional concern that the remaining Defendants might "go into bankruptcy during the protracted delay [*17] associated with a stay pending reexamination." (Dkt. # 96, p.5). However, Plaintiffs submit nothing other than pure speculation to support their fears that the remaining Defendants in particular might "not remain in business or go into bankruptcy." (Id.).

Nevertheless, while the delay involved in staying the MDL pending the '072 reexamination may not be exceedingly lengthy, the Court is hard pressed to find that a stay would not prejudice Plaintiffs in light of the PTO's recent confirmation of all 160 claims of the '434 reexamination without any amendment. Therefore, based on the totality of the circumstances, and for the reasons stated above, the Court cannot find that granting a stay of this MDL is warranted pending reexamination of the '072 Patent.

However, as a result of the Court's decision to issue a Suggestion of Remand to the United States Judicial Panel on Multidistrict Litigation, this MDL may soon be dissolved and the sole remaining member case remanded to the Eastern District of Texas. Therefore, the Court finds that a limited stay is appropriate pending resolution of the Court's Suggestion to Remand. As stated above, in the event that remand occurs, Defendants may presumably [*18] reurge the instant Motion to Stay before the transferor court.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Stay (Dkt. # 50) is DENIED.

**IT IS FURTHER ORDERED** that this action is stayed pending resolution of the Court's Suggestion of Remand.

DATED this 23rd day of February, 2009.

/s/ Mary H. Murguia

**Mary H. Murguia**

**United States District Judge**

# TAB 11

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 1

**H**Only the Westlaw citation is currently available.(Not for Publication)

United States District Court, D. New Jersey.
MARS, INCORPORATED, Plaintiff,
v.
JCM AMERICAN CORP. and Japan Cash Machine
Co., Ltd., Defendants.
JCM American Corp. and Japan Cash Machine Co.,
Ltd., Counterclaim Plaintiffs,
v.
Mars, Incorporated, Counterclaim Defendants.
**Civil No. 05-3165 (RBK).**

Nov. 21, 2006.

Lanny Steven Kurzweil, Irene Mary Hurtado,
McCarter & English, LLP, Newark, NJ, for Plaintiff.

William J. Hughes, Cooper Levenson, Atlantic City,
NJ, for Defendants.

**OPINION**

KUGLER, United States District Judge.

*1 Presently before the Court is a motion by Defendants and Counterclaim Plaintiffs JCM American Corporation and Japan Cash Machine Co., Ltd. ("JCM"), seeking an award of partial summary judgment on a Complaint filed by Plaintiff and Counterclaim Defendant Mars, Incorporated ("Mars"), alleging, *inter alia,* infringement of U.S. Patent No. 5,577,589 ("the '589 Patent"). Also before the Court is a motion by JCM to vacate a Magistrate Judge's Order denying JCM's motion for a stay of the proceedings. For the reasons set forth below, this Court will deny both motions.

**I. BACKGROUND**

A. *Factual History*

The present action involves two United States Patents: the '589 Patent and U.S. Patent No. 6,712,352 ("the '352 Patent"). Relevant to the motions currently before this Court is the history involving the '589 Patent.

The '589 Patent Application was filed on September 30, 1994, and issued as the patent-in-suit on November 26, 1996. In its text, the '589 Patent makes reference to several patent applications filed in the United Kingdom and incorporates them by reference: GB 9314404.6 ("the GB '404.6 Application"); GB 9320190.3 ("the GB '190.3 Application"); and GB 9320167.1 ("the GB '167.1 Application").

The GB '404.6 Application was filed in the United Kingdom on July 13, 1993, and was published on January 18, 1995 as Patent No. GB 2280057A. The GB '190.3 Application was filed in the United Kingdom on September 30, 1993, and was published on April 5, 1995 as Patent No. GB 2282476A. The GB '167.1 Application was filed in the United Kingdom on September 30, 1993. It was never published, and was destroyed in 2003.

2. *Procedural History*

Mars filed a Complaint on June 17, 2005, accusing JCM of infringing the ' 589 Patent and the '352 Patent. JCM filed its Answer on September 23, 2005 and asserted counterclaims against Mars. On September 29, 2005, pursuant to a request by Magistrate Judge Rosen, Mars drafted a letter to JCM, claiming that it intended to assert that, specifically regarding the '589 Patent, JCM had infringed upon claim 19, although Mars further noted that it specified this claim "without prejudice to assert additional claims as discovery proceeds."(Pl.'s Br., Quigley Dec., Ex. A at 1). Mars subsequently filed a motion to dismiss JCM's counterclaims on October 13, 2005, which this Court later denied in a June 14, 2006 Order. On February 23, 2006, JCM filed a motion to stay these proceedings, which Magistrate Judge Rosen denied on April 27, 2006. On April 4, 2006, JCM filed a motion for partial summary judgment, which is now before this Court. Furthermore, on May 8, 2006, JCM filed a motion

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
**(Cite as: 2006 WL 3373284 (D.N.J.))**

asking this Court to vacate Magistrate Judge Rosen's Order denying JCM's motion to stay and to order a stay of the proceedings. This motion is also currently before this Court.[FN1]

> FN1. JCM has filed evidentiary objections to declarations attached by Mars to its opposition briefs for both the summary judgment motion and the motion to vacate the Magistrate Judge's Order. In reaching a conclusion on both motions, this Court does not consider any of the evidence to which JCM objects; this Court therefore need not rule on JCM's objections.

## II. MOTION FOR SUMMARY JUDGMENT

JCM has moved for summary judgment on Mars's claim that JCM infringed the ' 589 Patent. As the basis for its argument, JCM asserts that the '589 Patent is invalid due to its failure to satisfy the requirements of 35 U.S.C. § 112.

### A. Standard

*2 Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In this case, JCM is seeking to have this Court hold the '589 Patent invalid. A patent is presumed to be valid; therefore, JCM bears the burden of showing, by clear and convincing evidence, that it is not. Eli Lilly & Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed.Cir.2001). Applying this burden to the standard for summary judgment, JCM must therefore "submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."Id.

### B. Analysis

JCM claims that it is entitled to summary judgment on Mars's claim that JCM infringed upon the '589 Patent, as JCM claims that the '589 Patent is invalid for failing to satisfy the requirements of 35 U.S.C. § 112. Under § 112, a patent's specification must contain certain criteria. The statute reads, in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

> *3 The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

> ...

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112. The first paragraph of the statute contains a requirement that a specification include an adequate written description, as well as a requirement that the specification "enable" a person skilled in the art to make the invention, which is known as the "enablement" requirement. The second paragraph requires that the claims meet what is known as the "definiteness" requirement. The final paragraph quoted, which is the sixth paragraph of the statute, applies to "means-plus-functions" claims.

JCM contends that the '589 Patent violates the requirements set forth in § 112. Specifically, it alleges that the three United Kingdom patents incorporated by reference were not publicly available when the patent application was filed, and that one of these applications remains publicly unavailable today, as it has been destroyed. Therefore, JCM argues, the language in these applications cannot be incorporated into the '589 Patent's specification. Accordingly, JCM contends that this leaves the specification incomplete, and therefore in violation of the requirements set forth in § 112.

Mars contends that, contrary to JCM's assertions, all of the relevant applications were publicly available at the required times. Mars argues that the GB '190.3 Application and GB '167.1 Application were made publicly available on June 22, 1994, as they were contained within European Patent Application No. 93307789 ("the EP '789 Application"). The EP '789 Application, Mars claims, was filed along with copies of the GB '190.3 Application and the GB '167.1 Application. When the European Patent Office published the EP '789 Application on June 22, 1994, Mars claims that the GB ' 190.3 Application and the GB '167.1 Application were similarly made available to the public. Mars agrees with JCM that the GB '404.6 Application was made publicly available on January 18, 1995, when it was published by the United Kingdom Patent Office.

Mars and JCM disagree on the date when the law requires these applications to have been publicly available. JCM contends that the applications must have been available on the effective filing date of the '589 Patent, which JCM argues was December 16, 1993, as that was the date of the Patent Cooperation Treaty to which the '589 Patent claims priority. Mars asserts that the applications were required to be publicly available as of November 26, 1996, which was the date that the '589 Patent issued.

*4 Determining the date by which these applications needed to have been made public is premature, however, before a determination is made as to whether this analysis would be relevant in the first place. When determining whether these United Kingdom applications were properly incorporated by reference, this Court relies on the Manual of Patent Examining Procedure ("MPEP"), which "does not have the force of law, [but] is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." *Molins PLC v. Textron,* 48 F.3d 1172, 1180 n. 10 (Fed.Cir.1995). In § 608.01(p), the MPEP sets forth clear guidelines regarding the incorporation of material by reference. In these guidelines, the MPEP distinguishes between material which is "essential" and that which is "nonessential." Material is essential if it is needed to satisfy the requirements set forth in the first, second, and sixth paragraphs of 35 U.S.C. § 112, as are mentioned above. While material deemed essential may be incorporated by reference, such reference is strictly limited to other U.S. patents or applications for U.S. patents. Other material is deemed non-essential, and may be incorporated by reference to other materials, including, *inter alia,* foreign patents and foreign patent applications.

Given this language, it is clear to this Court that determining both the date upon which the above-referenced United Kingdom applications became publicly available and the date when § 112 required them to become available is inconsequential to determining the validity of the '589 Patent. If the materials which Mars sought to incorporate are deemed to be essential, then the attempted incorporation would fail, as foreign patent applications cannot be incorporated for such a purpose. Conversely, if the materi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

als are deemed to be non-essential, then whether or not incorporation was successful is irrelevant, for even if the incorporation failed, the lack of such materials would not, by definition, affect the '589 Patent's compliance with the requirements set forth in the first, second, and sixth paragraphs of § 112.[FN2] Accordingly, this Court must determine whether the United Kingdom applications that Mars attempted to incorporate are essential materials; this determination will then be dispositive of whether the '589 Patent is invalid for failing to comply with the requirements of § 112.

> FN2. A failed incorporation would not necessarily lead to a determination of a patent's invalidity; rather, the Court would simply disregard the contents of those materials which were unsuccessfully incorporated. See Amtel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1377 (Fed.Cir.1999) (referencing a district court's determination that materials were improperly incorporated and therefore disregarding such materials).

In conducting this analysis, this Court is left with little, if any, evidence presented by JCM regarding the necessity of these materials. JCM offers no support for the contention that, without these foreign applications, one skilled in the art is not sufficiently "enabled" to produce the invention, and without such support this Court cannot so find. See Callicrate v. Wadsworth Manufacturing, Inc., 427 F.3d 1361, 1375 (Fed.Cir.2005) ("Without any basis in this record to determine that one of skill in the art could not make and use [the claimed invention] with this disclosure, this court cannot sustain the district court's nonenablement conclusion."). Likewise, JCM offers no evidence in support of its contention that the foreign applications are necessary for the '589 Patent to contain an acceptable written description.

*5 Regarding the definitiveness requirement, JCM claims that some terms, like "document," are defined differently in the '589 Patent than they are in one of the United Kingdom applications. (Def.'s Br. at 18.) Furthermore, while the '589 Patent does not define the term "banknote," this term is defined in one of the United Kingdom applications. (Id.) Because of such distinctions, JCM argues, one cannot definitively interpret the claims contained within the '589 Patent,

including claim 19, which uses both the terms "document" and "banknote." (Id. at 18-20.)

Claim construction is determined by a Court as a matter of law. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 388 (1996) ("[J]udges, not juries, are the better suited to find the acquired meaning of patent terms."). Subsequently, a determination of indefiniteness is a question of law. Amtel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed.Cir.1999). This determination hinges on "whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." Bankcorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1372 (Fed.Cir.2004). For a claim to be deemed indefinite, the Court must find that it is "insolubly ambiguous." Id. Furthermore, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1380 (Fed.Cir.2001).

JCM has offered no evidence to support its contention that one skilled in the art would be unable to ascertain the scope of claim 19, or any other claim for that matter, despite being unable to reference the United Kingdom applications. On the contrary, as Mars asserts, "[j]ust as in Amtel Corp., the Court may conclude here that skilled artisans are able to discern the scope of the '589 [P]atent claims from the explicit statements in the '589 [P]atent specification without reference to any disclosure in the British Applications. The claims would be definite as a matter of law in such a case."(Pl.'s Br. at 39). Furthermore, Mars notes that "[t]here is no suggestion in the specification that any claim depends for its support on any disclosure contained in the British Applications."(Id. at 24). While this Court lacks the evidence to explicitly find that the '589 Patent's claims are definite, the burden rests with JCM to present clear and convincing evidence to the contrary. Having failed to do so, this Court cannot find the '589 Patent's claims to be indefinite as a matter of law.

JCM also mistakenly relies on Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446 (Fed.Cir.1984) in support of its argument. In Quaker City, the Federal Circuit reviewed a district court's holding that essential material could not be incorpo-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

rated through a foreign document. The Federal Circuit held that the appellant's argument that the material was not essential was irrelevant, as the material was determined to be unavailable to the public, and it therefore could not be incorporated regardless of whether it was material or not. *Id.* at 1455.JCM argues that the material in this case is unavailable to the public, and therefore it cannot be incorporated regardless of whether it is deemed to be essential or not. (Def.'s Br. at 23-24). However, what JCM fails to recognize is that even if the United Kingdom applications are deemed to be unavailable, and therefore not incorporated by reference, such a finding leads to a determination of patent invalidity **only if the material would have been necessary for the '589 Patent's specification to comply with the requirements of § 112**, which parallels the definition of "essential material" under MPEP § 608.01(p). JCM offers no evidence upon which this Court could base a finding that the '589 Patent is invalid, even if this Court did exclude the foreign applications which Mars sought to incorporate by reference.

*6 Based on the above reasoning, this Court therefore finds that JCM has failed to meet its burden of proving that the foreign applications were "essential" materials under MPEP § 608.01(p), insofar as they were necessary to establish the requirements set forth in the first, second, and sixth paragraphs of 35 U.S.C. § 112. So holding, this Court need not determine whether or not these foreign applications, were they to be considered "non-essential," were properly incorporated by reference, as such a determination would, by definition, not affect the validity of the '589 Patent insofar as its compliance with the requirements of § 112.[FN3]

> FN3. This Court notes that were it to consider this issue, it would be required to determine whether the foreign applications were "publicly available," which the Federal Circuit has held to be an issue of fact. *See Amtel Corp.,* 198 F.3d at 1386 ("Whether an incorporated reference is available to the public is a factual inquiry.").

## III. MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER AND STAY THE PROCEEDINGS

JCM also appeals Magistrate Judge Rosen's April 27, 2006 Order denying its motion for a stay of litigation, asking this Court to vacate the Order and to grant a stay of litigation.

### A. *Standard*

When a party appeals a non-dispositive order issued by a magistrate judge, "[t]he district judge to whom the case is assigned ... shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."Fed.R.Civ.P. 72(a). The Supreme Court has held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

A Court may exercise its discretion in deciding whether to stay proceedings in a matter pending before it. *Landis v. North Am. Co.,* 299 U.S. 248 (1936). The authority to enter a stay applies equally to patent cases where reexamination by the Patent and Trademark Office has been requested and granted. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (noting that courts have the authority to order a stay pending the conclusion of a PTO examination). In determining whether to grant a stay, this Court has previously stated that it considers: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case; and (3) whether discovery is complete and a trial date has been set."*Motson v. Franklin Covey Co.,* No. 03-1067, 2005 U.S. Dist. LEXIS 34067, at *2 (D.N.J. Dec. 15, 2005) (citation omitted).

### B. *Analysis*

In a motion filed on February 23, 2006, JCM sought an order staying the present litigation pending an *inter partes* reexamination of the '352 Patent by the U.S. Patent and Trademark Office. There is no pending reexamination pertaining to the '589 Patent.

In his April 27, 2006 Order denying JCM's motion, Judge Rosen applied the factors that this Court set

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 6

forth in *Motson.*Judge Rosen stated that the parties agreed that the reexamination may not be completed for up to eighteen months, given the parties' ability to appeal the decision. (Order at 3.) Judge Rosen further noted that the reexamination involved only the '352 Patent, and that this litigation involved not only that patent but the '589 Patent as well. (*Id.*) Finally, Judge Rosen noted that JCM had commenced litigation against Mars Electronics International, Inc. ("MEI"), a wholly-owned subsidiary of Mars, in the District of Nevada, litigating issues that overlapped with this litigation. (*Id.* at 2.) Based on these findings, Judge Rosen determined that a stay would not accomplish judicial economy, and that JCM should not be allowed to continue its Nevada litigation while staying the litigation pending before this Court. (*Id.* at 3.)

*7 JCM argues that Judge Rosen's ruling was erroneous in several respects. JCM asserts that the referenced Nevada litigation had been resolved by a settlement, that a stay would in fact promote judicial economy, and that Mars did not assert any prejudice that would result from a stay. Mars counters these assertions, noting that there were initially two lawsuits filed in Nevada, one of which was settled and the other that remains pending. Mars further notes that JCM admitted at oral argument before Judge Rosen that a reexamination could last up to 18 months, and that Mars did not need to submit declarations for Judge Rosen to have found that Mars would be prejudiced by a stay.

Judge Rosen relied on the existence of the Nevada litigation in determining that Mars would be prejudiced by a stay. Judge Rosen referenced both Nevada lawsuits in his Order, noting that one "alleged breach of contract, misappropriation of trade secrets, and other claims, related to products at issue in the instant action against [MEI] and MEI's Vice President of Gaming."(*Id.* at 2.) The second litigation, Judge Rosen noted, was filed in January 2006. He stated that "Mars represents that these suits litigate the validity and infringement of, *inter alia,* the '352 [P]atent. At oral argument, counsel for [JCM] did not dispute that the issues in the Nevada suit overlapped with the issues in this suit, including the '352 [P]atent."(*Id.*) Judge Rosen further noted that "Mars asserts that JCM's request for a stay in this suit conflicts with its position in the Nevada actions which have continued with

discovery on identical factual issues and prejudices Mars' ability to clear its name and to timely develop the record on both the '352 [P]atent and the '589 [P]atent."(*Id.*)

JCM and Mars apparently agree that one Nevada litigation has settled while the other is ongoing. Mars does not dispute JCM's contention that the ongoing Nevada litigation does not specifically involve the '352 Patent. JCM does not dispute Mars's contention that the products at issue in the Nevada litigation "are the same products that cover the technology at issue in the patents-in-suit before this Court. Discovery of the same products and discussion of the patents in this case will necessarily occur in the Nevada litigation."(Pl.'s Br. at 11).

This Court finds that Judge Rosen's Order did contain an error, namely that the Nevada litigation specifically litigated the validity and infringement of the '352 Patent. However, Judge Rosen's finding that Mars would be prejudiced by a stay is based not solely on this assertion, but rather on his finding that the Nevada litigation involves factual issues which overlap with the action pending before this Court, an assertion which JCM does not appear to dispute. Therefore, this finding was not clearly erroneous.

Furthermore, JCM claims that Judge Rosen ignored this Court's holding in *Motson,* which noted that a pending reexamination by the Patent and Trademark Office weighed in favor of a stay insofar as it would promote judicial economy, as the reexamination may obviate the need for a trial. However, as there are two patents-in-suit in the present action, and only one has been submitted for reexamination, Judge Rosen correctly found that staying the action pending reexamination would not promote judicial economy, and that "the case can develop these issues simultaneous with the PTO's review[.]"(*Id.* at 3). As this Court has denied JCM's motion for summary judgment on the '589 Patent, and this litigation therefore continues to involve patents not undergoing reexamination, Judge Rosen's finding is not clearly erroneous.

*8 Accordingly, this Court finds that JCM has not shown Judge Rosen's Order denying a stay of the proceedings to be clearly erroneous.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

**IV. CONCLUSION**

Based on the foregoing analysis, this Court will deny
both JCM's motion for summary judgment and JCM's
motion to vacate Judge Rosen's Order denying a stay
of the proceedings before this Court. An accompany-
ing Order shall issue today.

D.N.J.,2006.
Mars, Inc. v. JCM American Corp.
Not Reported in F.Supp.2d, 2006 WL 3373284
(D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# **TAB 12**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2168917 (N.D.Cal.)
(Cite as: 2008 WL 2168917 (N.D.Cal.))

Page 1

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
NETWORK APPLIANCE INC., Plaintiff,
v.
SUN MICROSYSTEMS INC., Defendant.
No. C-07-06053 EDL.

May 23, 2008.

David J. Healey, Weil Gotshal & Manges, Houston, TX, Aaron Matthew Nathan, Derek Walter, Edward Robert Reines, Jeffrey G. Homrig, Jill Jane Ho, Matthew Douglas Powers, Weil, Gotshal & Manges LLP, Redwood Shores, CA, Azra M. Hadzimehmedovic, Weil, Gotshal & Manges LLP, Washington, DC, Claude Edward Welch, Law Offices of Claude E. Welch, Clayton Edward Dark, Jr., Clayton E. Dark Jr., Attorney at Law, Lufklin, TX, Danielle Rosenthal, Elizabeth Stotland Weiswasser, Weil Gotshal & Manges, LLP, New York, NY, for Plaintiff.

Mark Fowler, DLA Piper US LLP, East Palo Alto, CA.

Christine Kerba Corbett, Carrie Lynne Williamson, Yakov M. Zolotorev, David L. Alberti, DLA Piper Rudnick Gray Cary US LLP, East Palo Alto, CA, Clayton W. Thompson, II, DLA Piper Rudnick Gray Cary US LLP, Reston, VA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART SUN'S MOTION FOR PARTIAL STAY OF THE CASE PENDING REEXAMINATION; OVERRULING EVIDENTIARY OBJECTIONS; DENYING IN PART AND GRANTING IN PART MOTIONS TO SEAL**

ELIZABETH D. LAPORTE, United States Magistrate Judge.

*1 Sun Microsystems Inc.'s motion for partial stay of the case pending reexamination of United States patent nos. 5,819,292, 6,857,001, and 6,892,211 came on for hearing on May 13, 2008. Having read all the papers submitted and carefully considered the relevant legal authority and arguments made at the hearing, the court hereby GRANTS in part and DENIES in part Sun's motion for the following reasons and for the reasons stated at the hearing. The Court also OVERRULES Sun's accompanying evidentiary objections and DENIES IN PART AND GRANTS IN PART the parties' motions to seal.

**I. BACKGROUND**

On April 15, 2008, Sun moved for a partial stay of the case pending the U.S. Patent and Trademark Office's reexamination of patents '292, '001, and '211 asserted by Network Appliance, Inc. ("NetApp"). Regardless of the outcome of this motion, this case would proceed as to the remaining twelve Sun and four NetApp patents at issue.

In support of its motion, Sun notes that the PTO recently placed three of NetApp's seven patents in suit into reexamination. Sun argues that staying litigation as to the three reexamination patents will avoid the need for the Court to make rulings concerning invalid patents that are unlikely to survive reexamination. Even if some claims survive, they could be substantially narrowed by the PTO during reexamination. NetApp, by contrast, notes that PTO reexamination proceedings often drag on for many years, that many of its claims are likely to survive at the end of the PTO process, and that it should be able to select which claims it proposes that the Court construe when the parties narrow the number to a manageable amount.

The PTO granted *inter partes* reexamination as to all sixty-three claims of the '001 patent (on April 7, 2008) and issued a first office action rejecting all sixty-three claims of the '001 patent, based on twelve prior art references; granted *inter partes* reexamination as to all claims of the ' 211 patent, based on thirteen prior art references (on April 2, 2008); and granted *ex parte* reexamination as to claims one and four of the '292

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2168917 (N.D.Cal.)
(Cite as: 2008 WL 2168917 (N.D.Cal.))

patent (on March 18, 2008), based on six prior art references. Sun requested reexamination of these patents within four months of NetApp's filing of its complaint in this case. Sun has also recently filed another *ex parte* request for reexamination of claims four, eight, eleven through fifteen, and twenty of the '292 patent, after allegedly becoming aware of an additional prior art not disclosed to the PTO. Sun initially requested reexamination for the '292 patent as to claims one through four and eight through twenty, but the PTO only granted reexamination as to claims one and four, which are two of the three independent claims of that patent. *See* Kunin Decl., Ex. H.

This case was filed on September 5, 2007, and transferred from the Eastern District of Texas on November 30, 2007. The claim construction hearing is set for August 27, 2008, and the fact discovery cut off is October 13, 2008. No trial date has been set.

## II. SUN'S MOTION FOR PARTIAL STAY

### A. Legal Standard

*2 Reexamination is a procedure by which a person can request that the PTO reexamine or reevaluate the validity of a United States patent that has already issued. 35 U.S.C. § 302. Congress instituted this process "to shift the burden or reexamination of patent validity from the courts to the PTO." *Canady v. ERbe Elektromedizin GmbH,* 271 F.Supp.2d 64, 78 (D.D.C.2002). Courts have the discretion to stay judicial proceedings pending patent reexamination, but are not required to do so. *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.,* Case No. 03-1431, 2007 WL 1655625 *2 (N.D.Cal.2007). Some courts have expressed a "liberal policy in favor of granting motions to stay proceedings pending the outcome" of reexamination proceedings, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *Id.* (citing *ASCII Corp. v. STD Ent't USA Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994)). However, a court is not obligated to delay its own proceedings by yielding to patent reexaminations. *Id.*

"In determining whether to stay this case pending re-examination, the Court considers the following factors: (1) whether discovery is complete and

whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107, 1111 (N.D.Cal.2006).

### B. Whether a Stay is Warranted

The Court concludes that staying the case with respect to one, but not all, of the three patents at issue is warranted.

#### 1. Stage of Litigation

This case in the early stages of litigation. The claim construction hearing is still a few months away. Fact discovery closes in October. No depositions have been scheduled or taken and expert witnesses have not been disclosed. No documents other than those produced pursuant to local patent rule disclosures have been produced. No dispositive motions have been filed. No trial date has been set. However, the parties have exchanged preliminary infringement and invalidity contentions. In addition, NetApp has served discovery requests. Corbett Decl. ¶ 7. Moreover, it is already apparent that the parties have invested a fair amount of time and resources in analyzing case issues and strategy.

This factor weighs somewhat in favor of granting the partial stay. *See, e.g., Tse v. Apple* Inc., Case No. 06-6573 SBA, 2007 U.S. Dist. LEXIS 76521, 2007 WL 2904279 (N.D.Cal. Oct. 4, 2007) (granting stay where discovery had opened but not proceeded in any material way, one party had not served its initial disclosures, neither party served written discovery or noticed depositions, parties had not exchanged claim construction terms, and only preliminary infringement contentions had been exchanged); *Nanometrics v. Nova Measuring Instruments Ltd.,* Case No. 06-2252 SBA, 2007 U.S.Dist. LEXIS 18785, 2007 WL 627920 (N.D.Cal. Feb. 26, 2007) (staying proceedings and finding that the stage of litigation favored stay where the case was pending for nine months and discovery had commenced, but no briefs on claim construction had been filed and trial was far in future). While the parties certainly have expended some resources in this litigation, this case only recently commenced.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2. Simplification of Case

*3 This factor is less straightforward, and, on analysis, tends to weigh somewhat against a stay. On the one hand, the Court and the parties would waste resources if certain claims are partially litigated, but are subsequently mooted or their scope changed as a result of the reexamination. On the other hand, however, the majority of this case will proceed no matter what, as Sun does not seek a stay with respect to most of the contested patents. Presumably, as these patents all involve similar technology, there will be considerable overlap between discovery related to the three patents at issue and the other sixteen patents in the case. The Court and the parties will move forward with claim construction, dispositive motions, and trial regardless of whether the Court grants the stay. Furthermore, the parties are litigating two other related cases before this Court that involve similar patents and technology.

While at first blush the cases relied upon by Sun appear to favor a stay as to all three patents given the early stage of litigation, upon closer examination they do not necessarily do so. The decision of whether or not to stay a case pending reexamination is very case specific, and those cases did not involve litigation in which so much of the case would move forward regardless of the stay. *See, e.g., Nanometrics v. Nova Measuring Instruments Ltd.,* 2007 U.S.Dist. LEXIS 18785, 2007 WL 627920 (N.D.Cal. Feb. 26, 2007) (staying case where only one patent in dispute); *Procter & Gamble v. Kraft Foods Global, Inc.,* 2007 U.S. Dist. LEXIS 78465, 2-3, 2007 WL 2990152 (N.D.Cal. Oct. 11, 2007) (staying case where only one patent discussed by court); *Tse v. Apple Inc.,* 2007 U.S. Dist. LEXIS 76521, 06-6573, 2007 WL 2904279 SBA (N.D.Cal. Oct. 4, 2007) (staying case where one patent in dispute). Staying the case as to the three patents in reexamination is not nearly as likely to significantly simplify this litigation as much as did the stays issued in those single patent cases. Further, there appears to be a growing concern among at least some judges in this district that, on balance, staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification to justify the delay. This concern stems in part from the

unpredictable but often lengthy duration of the stay due to the length of PTO reexamination proceedings, as discussed in further detail below, in contrast to the salutary effect of firm deadlines on efficient case management.

Whether or not this case would be simplified by issuing a stay also depends in part upon the likelihood that the PTO would cancel or modify the claims in reexamination. Sun cites statistics that the PTO cancels all claims in 82% of *inter partes* reexaminations and in 12% of *ex parte* reexaminations and modifies them in 9% *inter partes* and 59% *ex parte* reexaminations.[FN1] *See* Corbett Decl., Exs. D & E. NetApp does not explicitly attack the predictive value of the *ex parte* statistics, but points out that the *inter partes* statistics are based on a limited number of cases-fifteen in total-that have reached final adjudication, so their predictive value is limited. Kunin Decl. ¶ 49. Among these fifteen, patent claims were cancelled in nine proceedings after the patent holder failed to respond to office actions, while three were canceled after the patent owner failed to pursue an appeal of the rejection of claims, and one terminated after the owner disclaimed its claims. *Id.* ¶¶ 46, 49.It is unclear whether these patent holders gave up because of a perceived inability to prevail on the merits of their claims or for other reasons.

> FN1. Unlike an *ex parte* reexamination, an *inter partes* reexamination provides for full participation by a third party at all stages of the reexamination proceedings. *Inter partes* reexamination proceedings differ from *ex parte* proceedings in two other critical respects: first, *inter partes* proceedings allow for appeals to the Patent Board of Appeals ("PBA"), and subsequently to the Federal Circuit, upon submission of the PTO's reexamination decision. Second, *inter partes* proceedings impose estoppel upon third-party requesters, which prevent them from later re-litigating the same issues that were raised, or could have been raised, during the *inter partes* proceedings. *Procter & Gamble v. Kraft Foods Global, Inc.,* 2007 U.S. Dist. LEXIS 78465, 2-3, 2007 WL 2990152 (N.D.Cal. Oct. 11, 2007) (citing 35 U.S.C. § 311 et seq.; 35 U.S.C. § 315(b)(1)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 2168917 (N.D.Cal.)
(Cite as: 2008 WL 2168917 (N.D.Cal.))

and (c)).

*4 The Court concludes that these general and limited statistics are not very helpful in predicting the outcome of issuing a stay in this case. Somewhat more helpful are the PTO actions in the actual reexaminations at issue of the three patents in suit. Here, the PTO already issued an initial office action rejecting all sixty-three claims of the '001 patent, indicating that claim cancellation or modification is at least somewhat likely for these claims. In contrast, while Sun requested reexamination as to claims one through four and eight through twenty for the '292 patent, the PTO only granted reexamination as to two of those claims (claims one and four). For the '292 patent, staying the case with respect to the entire patent makes little sense where the PTO has not even granted reexamination to the majority of claims and left one independent claim intact. For patent '211, while the PTO granted reexamination as to claims one through twenty-four, no office action has issued yet, and it is difficult to make predictions as to this reexamination.

Regardless of the final outcome, the PTO's analysis would be useful in guiding this Court's decision. However, this consideration, on its own, does not tip the scales. For the '211 and '292 patents, there is no indication based on the PTO actions thus far that these patent claims will be rejected in a reasonable time-frame that would allow efficient management of this case, and, in fact, the opposite appears to be true for the '292 patent, where the PTO only granted reexamination with respect to two of the three independent claims. However, since the PTO has already issued an initial action rejecting all the claims for the '001 patent, staying the case as to that patent will likely simplify the litigation, as it will spare the Court and the parties from investing resources into construing and litigating a patent that may likely not survive reexamination. For this factor, therefore, the scale tips against staying the case as to all patents except for the '001 patent.

3. Undue Prejudice or Tactical Disadvantage

NetApp argues that Sun's alleged infringement of ZFS open source software technology has created widespread irreparable harm that is uncommon and unique. Sun argues that this contention fails because NetApp actively promotes the use of ZFS software on its own website. See Corbett Decl., Ex. B. Sun also argues that NetApp's assertion of irreparable harm is based on Mr. David Hitz's speculation and personal opinions. It is true that Mr. Hitz's opinions as to what Sun will do in the marketplace in the future, what other companies might do, and the possible changes to the data storage market are speculative. See Hitz Decl. ¶ 13 (using such phrases like "it is possible that the entire competitive profile," "market might change," vendors ... may consider," "not outside the realm of possibility that," and "companies .. might"). In addition, NetApp has not sought a preliminary injunction, belying any urgency, and indeed waited nearly three years after Sun announced ZFS and nearly two years after Sun released ZFS to file suit. Lovell Decl. ¶¶ 2-3. In sum, although the widespread use of ZFS may cause some potential future prejudice, there has not been a sufficient showing of actual or likely prejudice for this factor to weigh against a stay. This is also true for any alleged harm to the public and the open source community, as the fact that ZFS users may be harmed if they invest in ZFS technology that they later need to abandon if NetApp wins this case is too speculative and remote to weigh against a stay, especially as the issue is one of timing as well as outcome. Hitz Decl. ¶ 20.[FN2]

> FN2. The Court reaches the same conclusion with respect to alleged reputational harm. Any harm to NetApp's reputation is likely to exist with or without a stay for at least some considerable period of time. In addition, as Sun notes, NetApp is suing Sun for damages in connection with an allegedly damaging blog entry by Sun's CEO, so it appears that NetApp has a legal remedy for any damage to its reputation.

*5 The Court finds, however, that NetApp will face a tactical disadvantage if Sun is permitted to make its tactical decision as to which claims to pursue most aggressively in this litigation from among all of the patents that it has asserted, while NetApp is forced to litigate only four of its seven asserted patents after Sun has decided to selectively challenge the other three in front of the PTO. See Fujitsu Ltd. v. Nanya Tech. Corp., 2007 WL 3314623, 06-6613 CW (N.D.Cal. Nov. 6, 2007) (denying stay and noting that Fujitsu

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                  Page 5
Not Reported in F.Supp.2d, 2008 WL 2168917 (N.D.Cal.)
(Cite as: 2008 WL 2168917 (N.D.Cal.))

would be prejudiced by allowing Nanya to proceed on is claims if Fujitsui's claims were stayed). Here, where so many patents are involved and asserted by both parties, other things being equal, there is some force to NetApp's argument that it should be able to make its own strategic decisions about which claims to litigate. In addition, the lapse of time during reexamination could result in the loss of evidence over time. *See Alltech Inc. v. Cenzone Tech. Inc.*, 2007 WL 935516, 06 CV 0153 JM (RBB) (S.D.Cal. March 21, 2007). This consideration slightly favors a stay.

Finally, as to the length of the reexamination proceedings, only three *inter partes* reexaminations have received a BPAI decision since 1999, and each took 4 to 5 years to reach that point. Kunin Decl. ¶ 45 & Ex. N. NetApp, however, acknowledges that the average pendency of *inter partes* reexamination is 28.5 months and is 24 months for *ex parte* proceedings. *Id.*, Exs. G & I. While "[t]he delay inherent to the process of the U.S. Patent and Trademark Office's reexamination of a patent claim does not constitute, by itself, undue prejudice," *Photoflex Prods. v. Circa 3 LLC*, 2006 U.S. Dist. LEXIS 37743, 2006 WL 1440363 (N.D.Cal. May 24, 2006), this delay combines with the tactical disadvantage NetApp would face with a stay on all three patents to weigh somewhat against a stay. The Court notes, however, that Sun neither delayed in requesting reexamination nor in requesting the stay. And while, as Sun notes, the legislative history shows that Congress anticipated certain benefits from PTO reexaminations, including resolving disputes more quickly and more cheaply than litigation, *see Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed.Cir.1985), the Court still must exercise its discretion in analyzing the relevant factors to determine whether to grant a stay.

Considering all of the above factors, on balance, the Court finds that a stay is warranted as to the '001 patent only. For patents '211 and '292, where there has been no indication from the PTO that these claims will be rejected, and in light of the facts that this case will move forward in any event and NetApp would face some tactical disadvantage if these claims were stayed, claim construction and discovery shall go forward. However, the Court recognizes that future actions by the PTO could alter this calculus. NetApp may conduct discovery and seek claim construction for these

two patents, but the Court might later decide not to allow trial or dispositive motion practice on certain claims or to postpone trial and dispositive motions on them.

*6 The parties shall provide a joint statement to the Court following the close of fact discovery updating the Court as to the status of the reexaminations. In addition, either party may move for relief from stay ('001 patent) or for a stay ('211 and '292 patents) if there is a significant change in the reexamination status at any time in the litigation.

## C. Evidentiary Objections

Sun objected to the declarations of Messrs. Hitz and Kunin on the basis that these declarations contain improper opinion, speculation, argument, and legal conclusions. While Sun might well be technically correct in certain respects if this were a motion for summary judgment, here the Court is making a discretionary determination based on balancing multiple factors that by their nature involve some level of speculation and prediction about future prejudice and future actions by the PTO. For this purpose, the Court has taken the objections into account in assessing the weight of the evidence and disregards any legal argument or conclusions. Therefore, these objections are OVERRULED for purposes of this motion.

## D. Motions to Seal

NetApp moved to seal portions of Mr. Hitz's declaration and corresponding portions of its opposition. Sun opposed this motion, noting that the Hitz declaration contains general predictions that are neither privileged nor trade secrets. The Court agrees with Sun and finds that most of these portions are not privileged or protectable as a trade secret or otherwise entitled to protection under the law. *See* L.R. 79-5. However, there are certain parts of the Hitz declaration which arguably contain proprietary information and which the Court will seal: line three of ¶ 10 of the Hitz declaration, and Hitz Declaration, and lines three through ten of ¶ 13 of the Hitz declaration. The Court will also seal those portions of NetApp's opposition that rely on those paragraphs: lines 9 through 16 of page 6, and lines 16-17 of page 7. For this reason, Sun's request to seal portions of its reply brief and supporting papers

that contain information deemed confidential by NetApp, shall not be sealed either, except to the extent that they rely on these specific paragraphs of the Hitz declaration. The parties shall file publicly redacted copies of their motions and supporting papers with these more limited redactions.

## III. CONCLUSION

In light of the foregoing, Sun's Motion for Partial Stay is GRANTED IN PART (as to the '001 patent) and DENIED IN PART (as to the '211 and '292 patents). Sun's evidentiary objections (Docket No. 60) are OVERRULED. The parties' motions to seal (Docket Nos. 50 and 51) are DENIED IN PART AND GRANTED IN PART. The parties shall file revised publicly redacted copies of their papers as discussed above, no later than May 30, 2008. The parties shall provide a joint statement to the Court on **November 2, 2008** updating the Court as to the status of the reexaminations.

N.D.Cal.,2008.
Network Appliance Inc. v. Sun Microsystems Inc.
Not Reported in F.Supp.2d, 2008 WL 2168917 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 13

LEXSEE



Positive
As of: Jul 29, 2009

NTP, INC., Plaintiff, v. PALM, INC., Defendant.

Civil Action No.: 3:06-CV-836

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIR-
GINIA, RICHMOND DIVISION

2007 U.S. Dist. LEXIS 97141

March 22, 2007, Decided
March 22, 2007, Filed

**CORE TERMS:** patent, patents-in-suit, reexamination, discovery, stricken, civil action, infringement, impertinent, immaterial, patent infringement, adverse decision, trial date, jurisdictional, appealing, inclusion, simplify, parte, venue

**COUNSEL:** [*1] For NTP, Inc., Plaintiff: Craig Thomas Merritt, LEAD ATTORNEY, Nichole Buck Vanderslice, Rowland Braxton Hill, IV, Christian & Barton LLP, Richmond, VA; Jennifer Ann Albert, LEAD ATTORNEY, Goodwin Procter LLP, Washington, DC; Maya Miriam Eckstein, LEAD ATTORNEY, Hunton & Williams LLP, Richmond, VA; Thomas Jefferson Scott, Jr., LEAD ATTORNEY, Hunton & Williams LLP, Washington, DC.

For Palm, Inc., Defendant: Michael Myles Markman, Robert Daniel Fram, Winslow Blodgett Taub, LEAD ATTORNEYS, Heller Ehrman LLP, San Francisco, CA; Robert Thomas Haslam, LEAD ATTORNEY, Heller Ehrman LLP, Menlo Park, CA; Robert William McFarland, LEAD ATTORNEY, McGuireWoods LLP, Norfolk, VA; Robert Michael Tyler, LEAD ATTORNEY, McGuireWoods LLP, Richmond, VA.

For Palm, Inc., Counter Claimant: Maya Miriam Eckstein, LEAD ATTORNEY, Hunton & Williams LLP, Richmond, VA; Thomas Jefferson Scott, Jr., LEAD ATTORNEY, Hunton & Williams LLP, Washington, DC; Craig Thomas Merritt, LEAD ATTORNEY, Nichole Buck Vanderslice, Rowland Braxton Hill, Christian & Barton LLP, Richmond, VA; Robert Michael Tyler, LEAD ATTORNEY, McGuireWoods LLP, Rich-

mond, VA; Robert Thomas Haslam, Heller Ehrman LLP, Menlo Park, CA; Winslow Blodgett Taub, [*2] Heller Ehrman LLP, San Francisco, CA.

**JUDGES:** James A. Spencer, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** James A. Spencer

**OPINION**

*MEMORANDUM OPINION & ORDER*

THIS MATTER comes before the Court on Defendant PALM, INC.'s Motions to Strike Paragraphs 69-71 of the Complaint, filed as Docket Entry No. 16, and to Stay, filed as Docket Entry No. 18. For the reasons set forth herein, these motions shall be GRANTED. The above-referenced paragraphs shall be STRICKEN from the Complaint, and the matter shall be STAYED until the validity of the patents-in-suit is resolved by the Patent & Trademark Office and through any consequent appeals.

**I.**

In November 2006, NTP filed this action for patent infringement against Palm with respect to seven specific patents [1] utilized by several of the latter's wireless communication products. All of the claims of the patents-in-suit identified in NTP's Complaint have been the subject of reexamination proceedings. In February 2006, the Examiners of the Patent & Trademark Office ("the PTO") issued final office actions rejecting claims of the '960 and '451 patents, having determined that NT? was

Page 1

not the first in time to invent its patent claims. The PTO also rejected a host of claims in the '592 patent, [*3] and issued an office action closing prosecution in an inter partes reexamination. Final rejections of the four remaining patents-in-suit were issued in August 2006 on the same basis as the '960 and the '451 patents' rejections. NTP has begun the process of appealing these decisions. [2] As a result of the PTO's reexamination of the patents-in-suit, all claims asserted against Palm have been rejected by the PTO as unpatentable during reexamination.

> 1   The patents-in-suit are: (1) U.S. Patent No. 5,436,960 ("the '960 patent); (2) U.S. Patent No. 5,438,611 ("the '611 patent"); (3) U.S. Patent No. 5,625,670 ("the '670 patent); (4) U.S. Patent No. 5,819,172 ("the '172 patent"); (5) U.S. Patent No. 6,067,451 ("the '451 patent); (6) U.S. Patent No. 6,317,592 ("the '592 patent"); and (7) U.S. Patent No. 5,479,472 ("the '472 patent").
>
> 2   NTP has filed Appeals Briefs regarding the decisions on claims of the '960 and '451 patents, and has also filed Notices of Appeal in the '611, '670, '172, and '472 patents. It is not known whether NTP has initiated the process of appeal regarding the '592 patent.

## II.

The first matter to address is Palm's Motion to Strike Paragraphs 69-71 of the Complaint. In general, [*4] these paragraphs allege that the PTO has engaged in improper ex parte communications with a third party [3] regarding the reexamination of the patents-in-suit, and that the consequence of these communications has been the corruption of the reexamination process. It is therefore urged that the Court refrain from deferring to the judgment of the PTO in rejecting the patents' validity and allow Paragraphs 69-71 to remain.

> 3   The "third party" herein referenced is Research In Motion, Inc.

For two reasons, however, the Court declines to do so. The first is jurisdictional. Title 35 of the United States Code establishes venue for appeals from an adverse decision from an examination proceeding to either the Court of Appeals for the Federal Circuit or to the United States District Court for the District of Columbia. 35 U.S.C. §§ 141,145,306. There is no indication that Congress intended these jurisdictional restraints to be limited exclusively to direct challenges of the decisions rendered in examination proceedings. Because there is no reason to suppose that this Court may do indirectly what it is without jurisdiction to do directly, we may presume collateral challenges to patent proceedings to

[*5] be as equally prohibited when raised in an improper venue. And that is the circumstance presently before the Court. NTP is attempting to use a patent infringement action against a private corporation to impugn the validity of the patent reexamination process. Paragraphs 69-71 have been stated for that purpose. Were the Court to tolerate these allegations, it would be necessary to disregard Congress's exclusive grant of jurisdiction. That invitation is declined.

The second reason that these allegations must be stricken is a consequence of their slight relevance. Paragraphs 69-71 relate solely to allegations of impropriety between the PTO and a third party, neither of which are present in this action. Palm is concerned, and legitimately so, that any evidence of a third party having exercised undue influence on the PTO, or otherwise engaging in unethical conduct with respect to any of its Examiners, would serve only to confuse the issues in the conscience of the jury and tempt the possibility that the third-party's conduct would be unfairly attributed to Palm. Any probative value that evidence supporting the disputed allegations may have would be substantially outweighed by its prejudicial [*6] effect.

Federal Rule of Civil Procedure 12(f) provides that the Court may order stricken from a pleading any matter that is immaterial or impertinent. "An allegation is 'impertinent' or 'immaterial' when it is [not] relevant to the issues involved in the action." 2 James Wm. Moore et al., Moore's Federal Practice § 12.37 [3] (3d ed. 2006). "To prevail on this motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." Id. (citations and internal quotations omitted); Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993). Whether to grant a motion to strike is a matter that is within the exercise of this Court's sound discretion. United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979). Upon due consideration, it is the judgment of the Court that the circumstances alleged in Paragraphs 69-71 are immaterial and impertinent, that their inclusion is likely to induce unfair prejudice against the Defendant, and that those paragraphs must therefore be stricken from the Complaint.

## III.

Palm has also moved to stay these proceedings pending the outcome of the PTO's reexamination [*7] of the patents-in-suit. There can be no question regarding the Court's natural authority to order certain matters stayed in its discretion, Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936), or that this power may be exercised to stay a matter touching upon a patent's validity while the PTO engages in a reexamination of the underlying claim, Gould v. Control Laser

*Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)*. The Court's discretion to grant a stay is not without limit, though, and its analysis should be guided with reference to a number of considerations, including: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *E.g., Tap Pharmaceutical Prods., Inc. v. Atrix Labs., Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004)*.

This civil action was instituted in November 2006; that December, this Motion was submitted by the Defendant; at the end of January, the Court heard oral argument. Since then, the parties have exchanged a limited amount of discovery, and there are several motions [*8] pending that address certain disputes that have arisen in the course of that process. [4] Discovery is far from complete, and the Court has yet to establish firm dates for the management of this case; not even a trial date has been set. We remain in the early stages of the litigation, when the time invested and the resources spent is not so great as to compel this Court's continuing involvement.

> [4]   The parties have filed cross-motions for protective orders governing discovery and the handling of confidential materials. In addition, Plaintiff NTP has moved to compel production of certain matters from Defendant Palm. The Court shall dispose of these motions in separate orders.

At the same time, there appear to be significant benefits to staying this matter until the validity of the patents-in-suit may be established. It is entirely possible that the PTO will determine that such patents were wrongly issued and that the Plaintiff is not the owner of the interests in dispute. In that event, NTP would ostensibly lack the standing necessary to bring an action for infringement, and the case would be dismissed. The chance that this might occur is more than passing. As mentioned previously, NTP has   [*9] appealed, or is in the process of appealing, adverse decisions from the PTO regarding the validity of each of its claims to the patents-in-suit. It would be a painful tragedy--for everyone involved--if this litigation were allowed to move forward during the PTO's reexamination, only to be rendered meaningless by that agency's final action. *Cf. Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*.

But that is not the only way in which a stay would simplify these issues. There is also the possibility that the

PTO will reverse its course and find that the Plaintiff is the rightful owner of the patents-in-suit. Once the case returns from the holding pattern to which it will be sent, the parties and the Court will have the PTO's expert opinion regarding the scope and validity of the patent claims, *e.g., Am. Online, Inc. v. AT&T, 243 F.3d 812, 816 (4th Cir. 2001)*, and both will be in a better position to assess the issues raised in this civil action.

We come finally to the matter of prejudice. The Plaintiff contends that it stands to suffer serious and irreparable harm should the Court choose to stay these proceedings; not only will NTP suffer clouds over its patents, it will lose   [*10] the opportunity to enjoin their further infringement. [5] The Court is sympathetic to the Plaintiff's position, but is also mindful of the fair possibility that the PTO will determine the Plaintiff's claims to be unenforceable. It cannot be understated: because NTP's claims are wholly predicated on patents whose validity is currently under examination, the invalidation of those patents will render this civil action moot. There is simply no reason to justify the maintenance and expense of this action during the pendency of an examination whose resolution could summarily resolve these matters.

> [5]   Of course, once it is established that the Plaintiff's claims to the patents-in-dispute are valid and enforceable, NTP could renew its request for injunctive relief. In addition, monetary damages would presumably be available for any infringement that occurred prior to the time of the granting of an injunction, if at all. *Cf. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)*.

It therefore appears that a stay is necessary to avoid further and improvident expenditure of time and resources.

**IV.**

Upon due consideration, and for the foregoing reasons, the Defendant's Motions to Strike and to Stay [*11] are GRANTED. Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

/s/ James A. Spencer

CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this 22nd day of March 2007

# TAB 14

LEXSEE



Cited
As of: Jul 29, 2009

**NTP, INC., Plaintiff, v. T-MOBILE USA, INC., Defendant. NTP, INC., Plaintiff, v. CELLCO PARTNERSHIP, Defendant. NTP, INC., Plaintiff, v. AT&T MOBILITY, LLC, Defendant. NTP, INC., Plaintiff, v. SPRINT NEXTEL CORP., Defendant.**

**Action No. 3:07-CV-548, Action No. 3:07-CV-549, Action No. 3:07-CV-550, Action No. 3:07-CV-551**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIR-GINIA, RICHMOND DIVISION**

**2007 U.S. Dist. LEXIS 82063**

**November 2, 2007, Decided**
**November 2, 2007, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder filed four separate suits against defendants, four companies, alleging the infringement of eight patents. Most of these patents were the subject of a reexamination proceeding before the U.S. Patent & Trademark Officer (PTO). The companies each separately moved to stay the lawsuits pending resolution of the PTO proceeding. The patent holder contested the motions. The court considered these identical motions together.

**OVERVIEW:** After a jury found in favor of the holder in case involving several of the disputed patents, the PTO commenced reexamination proceedings regarding the patents. When the PTO issued final office actions rejecting the claims as to each of these patents on the basis of prior art that was not litigated in the underlying sui, the holder appealed these findings to the PTO's Board of Patent Appeals and Interferences. While those appeals were pending, the holder filed another infringement suit as to some of the same patents in the instant dispute, and a ruling granting a stay in this other lawsuit formed the basis for the instant motions for stays. In granting the stays, the court found that trial dates had not been scheduled and discovery had not yet begun, which favored staying the instant suits. Further, the outcome of the PTO's reexamination proceedings would greatly assist the court in evaluating the holder's claims in the instant suits. In addition, the holder would not be irreparable harmed by the stays. However, the court declined to condition the stays on the companies' acceptance of the PTO's findings, since they were not involved in the PTO proceeding.

**OUTCOME:** The court granted the motions to stay the four lawsuits pending resolution of the PTO's reexamination proceeding.

**CORE TERMS:** patents, re-examination, patents-at-issue, infringement, staying, judicial resources, discovery, unduly, pending claims, stay proceedings, early stages, trial date, clarifying, infringed, scheduled, conserve, reasons stated, suit filed, responsive pleadings, recover damages, simplifying, re-examine, litigated, target

**LexisNexis(R) Headnotes**

*Civil Procedure > Pretrial Matters > General Overview*
*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
*Governments > Courts > Authority to Adjudicate*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1]A court's power to control its docket gives it the authority to stay proceedings before it, including pro-

ceedings that may be affected by a pending reexamination of a patent-in-suit by the Patent and Trademark Office. The legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
[HN2]A court will grant a stay after considering whether (1) discovery is complete and a trial date is scheduled; (2) a stay will simplify the matters at issue; and (3) a stay will unduly prejudice or clearly disadvantage a nonmoving party.

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > General Overview*
[HN3]Staying proceedings may be appropriate in order to narrow the scope of a dispute, obtain guidance from the Patent and Trademark Office (PTO), avoid reaching a result inconsistent with findings by the PTO, or prevent the waste of judicial resources.

COUNSEL: [*1] For NTP, Inc. (3:07-cv-00548-JRS, 3:07-cv-00549-JRS), Plaintiff: Henry Irving Willett, III, LEAD ATTORNEY, Craig Thomas Merritt, Nichole Buck Vanderslice, Christian & Barton LLP, Richmond, VA; Gregory Michael Williams, Hughes Hubbard & Reed LLP, Washington, DC; Jessica Anne Feldman, Maria Termini, Peter Albert Sullivan, Ronald Abramson, Hughes Hubbard & Reed LLP, New York, NY.

For T-Mobile USA, Inc. (3:07-cv-00548-JRS), Defendant: Bryan Gregory Scott, Dana Duane McDaniel, Hugh McCoy Fain, III, Spotts Fain PC, Richmond, VA; Kimberly A. Mottley, Steven M. Bauer, Proskauer Rose LLP, Boston, MA.

For Cellco Partnership doing business as Verizon Wireless (3:07-cv-00549-JRS), Defendant: Brian Charles Riopelle, LEAD ATTORNEY, McGuire Woods LLP, Richmond, VA; Charles Bennett Molster, III, Winston & Strawn LLP, Washington, DC; Dan K. Webb, Peter Charles McCabe, III, Winston & Strawn LLP, Chicago, IL.

For NTP, Inc. (3:07-cv-00550-JRS, 3:07-cv-00551-JRS), Plaintiff: Rowland Braxton Hill, IV, LEAD ATTORNEY, Craig Thomas Merritt, Nichole Buck Vanderslice, Christian & Barton LLP, Richmond, VA; Jennifer Ann Albert, Thomas Jefferson Scott, Jr., Goodwin Procter LLP, Washington, DC.

For AT&T Mobility, LLC [*2] (3:07-cv-00550-JRS), Defendant: Jeffrey Michael Bauer, LEAD ATTORNEY, Baker Botts LLP, Washington, DC; Bryant C. Boren, Jr., Christopher Wood Kennerly, Baker Botts LLP, Dallas, TX; Dabney Jefferson Carr, IV, David Neal Anthony, Robert Armistead Angle, Troutman Sanders LLP, Richmond, VA.

For Sprint Nextel Corp. (3:07-cv-00551-JRS), Defendant: Patrick Risdon Hanes, LEAD ATTORNEY, Edward James Dillon, Jr., Williams Mullen, Richmond, VA; Kathleen Joanna Lynch Holmes, Williams Mullen PC, McLean, VA; William Rueger Poynter, Williams Mullen, Virginia Beach, VA.

JUDGES: James R. Spencer, Chief United States District Judge.

OPINION BY: James R. Spencer

OPINION

*MEMORANDUM OPINION*

THIS MATTER comes before the Court on Motions to Stay filed by the defendants in the above-styled actions. Since the arguments in favor of those Motions and plaintiff NTP, Inc.'s replies to the defendants' contentions are virtually identical, the Court will dispose of all four motions in this Opinion. For the reasons stated below, the Motions shall be GRANTED, and these actions shall be STAYED.

I.

On September 7, 2007, NTP, Inc. filed separate suits in this Court against T-Mobile USA, Inc., Cellco Partnership, AT&T Mobility, LLC, and Sprint Nextel Corp, [*3] alleging the infringement of eight patents. [1] Several of those patents were the subject of a suit filed in this Court by NTP against Research in Motion, Ltd. In December 2002, after a jury found that Research in Motion infringed NTP's patents, the United States Patent & Trademark Office ("PTO") initiated re-examination of six of the patents. In April and September of the following year, the PTO granted petitions by Research in Motion to re-examine the other two patents. In 2006, the PTO issued final office actions rejecting the pending claims of each of the eight patents on the basis of prior art that was not litigated in NTP's suit against Research in Motion. NTP appealed those findings to the PTO's Board of Patent Appeals and Interferences ("BPAI"), and those appeals are currently pending.

1    The patents-at-issue are U.S. Patent Numbers 5,438,611; 5,479,472; 5,436,960; 5,625,670; 5,819,172; 6,067,451; 6,317,592; and 5,631,946. Those patents cover technology used in wireless communication systems.

After the PTO issued its findings, NTP sued Palm, Inc. in this Court, alleging that Palm infringed seven of the patents involved in these actions. Subsequently, Palm asked the Court to stay   [*4] that action, a motion that the Court granted. See NTP, Inc. v. Palm, Inc., No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007). The Court noted that (1) the suit was in its early stages, as discovery was not yet complete; (2) NTP's patents might ultimately be found invalid, precluding NTP from prosecuting its claims, or that the patents might be affirmed in part, clarifying the scope of NTP's claims; and (3) staying the suit would not irreparably harm NTP, since it could seek damages for any infringement that occurred during the stay. See id. at 4-6.

## II.

The defendants in these suits rely heavily on the Court's decision in Palm. They urge the Court to stay these suits because (1) they are in an early stage, as none of the defendants have filed responsive pleadings; (2) a stay would conserve judicial resources by simplifying these suits, either by invalidating some of NTP's pending claims or clarifying the scope of NTP's valid claims; and (3) a stay would not unduly prejudice NTP, which could recover damages for any infringement of its patents that occurs during the stay.

NTP argues that Palm does not dictate the entry of a stay. First, when the Court stayed Palm, NTP was defending a suit by Oren   [*5] Tavory, a person claiming that he was the inventor of the patents at issue in these actions. The Court's resolution of that suit established that NTP owns the patents. See Tavory v. NTP, Inc., 495 F. Supp. 2d 531 (E.D. Va. July 17, 2007). In light of that ruling, NTP argues, its claim to the patents-at-issue is stronger than it was at the beginning of this year. Second, NTP argues that the defendants in these suits are likely to re-litigate claims upheld by the PTO; thus, entering a stay would not conserve judicial resources. Third, NTP argues that the re-examination proceedings, including any appeals of the PTO's conclusions to the Federal Circuit, may last until 2011, when the patents-at-issue will nearly have expired. Thus, NTP argues that a stay would unduly prejudice its right to enforce patents that - as of the time it filed these suits - are valid. Finally, NTP argues that, if the Court stays these suits, the stay should be subject to several conditions, including an agreement by the defendants to be bound to the outcome of the proceedings before the PTO.

## III.

[HN1]The Court's power to control its docket gives it the authority to stay proceedings before it, Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936),   [*6] including proceedings that may be affected by a pending re-examination of a patent-in-suit by the Patent and Trademark Office, see Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001); see also Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988) (explaining that the statute creating the re-examination procedure does not expressly authorize a court to stay proceedings in light of a pending re-examination because Congress believed that the power to do so "already resides with the [c]ourt" (quoting 1980 U.S.C.C.A.N. 6463); Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark.1991) (noting that "[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

[HN2]The Court has previously stayed similar proceedings after considering whether (1) discovery was complete and a trial date was scheduled; (2) a stay would have simplified the matters at issue; and (3) a stay would have unduly prejudiced or clearly disadvantaged the non-moving party. NTP, Inc. v. Palm, Inc., No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) (Spencer, J.) (citing Tap Pharm. Prods., Inc. v. Atrix Labs, Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004)).   [*7] That approach is consistent with rulings by the Federal Circuit that [HN3]staying proceedings may be appropriate in order to narrow the scope of the dispute, obtain guidance from the PTO, avoid reaching a result inconsistent with findings by the PTO, or prevent the waste of judicial resources. See MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 563 (E.D. Va. 2007) (Friedman, J.) (citing three opinions by the Federal Circuit).

Applying that test, the Court concludes that a stay is warranted in these four actions. First, trial dates have not been scheduled and discovery has not yet begun. In fact, none of the defendants have filed any responsive pleadings. Since these actions are in an even earlier stage than was the suit filed by NTP against Palm when it was stayed, this factor favors staying these actions.

Second, the outcome of the re-examination proceedings by the PTO will greatly assist the Court in evaluating NTP's claims against these defendants. Not only will the PTO's findings indicate whether these suits should proceed, the findings will clarify which of the nearly two thousand claims at issue in these suits the Court must address. At oral argument, counsel for one   [*8] of the defendants suggested that preparing to try

these suits before the re-examination proceedings are complete would be like trying to hit a moving target, without knowing even what the target looks like. That comparison is apt. Since the PTO will likely invalidate at least some of the claims covered by the patents-at-issue, waiting for the PTO to complete its review will help the Court identify which of those claims need to be litigated, simplifying the resolution of these suits. Accordingly, this factor also suggests that a stay is appropriate.

Finally, a stay will not cause irreparable harm to NTP. By filing these suits, NTP is eligible to recover damages for any infringement of the patents-at-issue that occurs while the re-examination is proceeding (provided that the PTO -- and the Federal Circuit, if NTP appeals any findings by the PTO -- conclude that any of the patents-at-issue are valid). Even though the Court is dismayed by the pace of the re-examination proceedings, their conclusion is closer now than it was when the Court stayed *Palm.* Thus, staying these suits poses no greater risk of undue prejudice to NTP than did the stay in *Palm.*

Additionally, the Court declines to condition  [*9] the stay on the defendants' acceptance of the PTO's find-

ings. None of the defendants asked the PTO to re-examine the patents-at-issue. Nor have they participated in the re-examination proceedings or had any other opportunity to challenge NTP's pending claims. Moreover, if the BPAI validates any of those claims, the defendants will not be able to appeal that decision to the Federal Circuit. Accordingly, due process precludes the Court from requiring the defendants to bind themselves to the outcome of those proceedings.

However, the Court concludes that taking measures to preserve the evidence relevant to these actions would be appropriate, and it shall fashion an appropriate Order.

IV.

For the reasons stated above, these actions shall be STAYED. It is SO ORDERED.

James R. Spencer

Chief United States District Judge

ENTERED this *2nd* day of November 2007

# TAB 15

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2009 WL 1080854 (E.D.Tex.)
**(Cite as: 2009 WL 1080854 (E.D.Tex.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Marshall Division.
ROY-G-BIV CORPORATION, Plaintiff,
v.
FANUC LTD., et al., Defendants.
Civil Action No. 2:07-CV-418 (DF).

April 14, 2009.

Lance Henry Lubel, John Milton Black, Heard Robins Cloud & Lubel, LLP, Russell Allen Chorush, Heim Payne & Chorush LLP, Houston, TX, Aaron J. Snow, D. Michael Underhill, Eric J. Maurer, Evan A. Parke, William A. Isaacson, Boies Schiller & Flexner LLP, Washington, DC, Harold Kip Glasscock, Jr., Kip Glasscock Attorney at Law, Beaumont, TX, for Plaintiff.

Henry Charles Bunsow, Howrey Simon Arnold & White, San Francisco, CA, Daniel T. Shvodian, James F. Valentine, Matthew E. Hocker, Ryan James Moran, Howrey LLP, East Palo Alto, CA, Thomas John Ward, Jr., Ward & Smith Law Firm, Longview, TX, for Defendants.

### ORDER

DAVID FOLSOM, District Judge.

*1 Before the Court is Defendants' Motion to Stay Litigation Pending the Outcome of Reexamination Proceedings. Dkt. No. 106.Also before the Court are Plaintiff's Response in Opposition, Defendants' Reply, and Plaintiff's Sur-reply. Dkt. Nos. 115, 121, and 129.Having considered the arguments of counsel, all relevant papers and pleadings, the Court finds that Defendants' Motion to Stay should be **DENIED.**

### I. BACKGROUND

Plaintiff, ROY-G-BIV Corporation ("RGB"), filed this suit on September 19, 2007, alleging that FANUC Ltd., FANUC Robotics America, Inc., and GE Fanuc Automation Americans, Inc., and GE Fanuc Intelligent Platforms, Inc. (collectively, "Defendants") infringe U.S. Patent Nos. 5,691,897 ("the '897 Patent"), 6,513,058 ("the '058 Patent"), 6,516,236 ("the '236 Patent"), and 6,941,543 ("the '543 Patent").Dkt. No. 1. These patents relate to motion control methods and systems that include software for communicating with and controlling different motion control devices.

One defendant, GE Fanuc Intelligent Platforms, Inc., requested that the United States Patent and Trademark Office ("PTO") reexamine the validity of all four patents. These requests were granted and all four patents are currently being reexamined by the PTO-three of the patents are subject to inter partes reexam while the fourth, the '897 Patent, is subject to an ex parte reexam. All Defendants now request that this litigation be stayed pending the outcome of these reexamination proceedings. Dkt. No. 106.

### II. LEGAL PRINCIPLES

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex.2005) (J. Davis)."The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)."How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

This Court has stated that it has no "automatic" policies regarding stays pending reexamination, but has stated that "each motion to stay pending reexamination filed in this Court is considered on a case-by-case basis with each cause of action presenting distinct circumstances." *DataTreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749, 754 (E.D.Tex.2006). In

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

deciding whether to stay litigation pending reexamination, this Court considers "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software,* 356 F.Supp.2d at 662.

## III. PARTIES' POSITIONS & DISCUSSION

### 1. Undue prejudice and tactical disadvantage to the nonmoving parties

*2 Defendants argue that Plaintiff will not suffer any undue prejudice or tactical disadvantage if this case is stayed. Dkt. No. 106 at 10-13.First, Defendants argue that they "made diligent efforts to prepare and file the reexamination petitions after RGB initiated this litigation."*Id.* at 10.Next, Defendants argue that RGB would not be entitled to an injunction in this case, thus allowing RGB to be fully compensated by additional monetary damages that would accrue during the stay. *Id.* at 11-12.Finally, Defendants contend that RGB's own delay in filing this suit mitigates against any argument that RGB might bring in opposition of Defendants' motion. *Id.* at 12-13.

Plaintiff refutes the argument that Defendants made diligent efforts to file the reexamination requests. Dkt. No. 115 at 4. Specifically, RGB contends the Defendants waited nearly three years to file the request since learning of the patents-in-suit back in 2005. *Id.* At the very least, Defendants waited a full year after this suit was filed to request reexam. *Id.* RGB contends that this delay, coupled with the additional delay of lengthy reexam proceedings, is unduly prejudicial. *Id.* at 5-7.

In the past, this Court has noted the findings of the Institute for Progress, an independent organization that has analyzed the *inter partes* reexamination process. *See ESN, LLC v. Cisco Systems, Inc.,* No. 5:08-CV-20-DF (E.D.Tex. Nov.20, 2008). On average, *inter partes* reexaminations in which a patentee defends its rights may take anywhere from thirty-four to fifty-three months without an appeal. *Id.* at 4. If the PTO's finding is appealed the process may take between five to eight years. *Id.* Because Defendants'

reexamination requests were filed a little over six months ago, a stay in this case would, at a likely minimum, last another twenty-eight months.

As this case currently stands, the parties have completed claim-construction briefing and a *Markman* hearing will occur later this week. This case is set for trial on the Court's October 2009 docket, less than six months away. Dkt. No. 54.As a result, a stay would delay trial for a number of years and would likely force the parties to redo most, if not all, of their claim-construction briefing. Such a stay would be unfairly prejudicial to RGB. Accordingly, this factor weighs heavily against granting the stay.

### 2. Simplification of the issues in question and trial of the case

The Court is not convinced that reexamination will simplify the issues for trial in this case. It is difficult to gauge, at this early stage in the reexamination process, how likely it is that any of RGB's patent claims will be cancelled or modified through amendment. Furthermore, it is this Court's experience that the reexamination process may actually complicate a case by creating additional prosecution history estoppel and disavowal arguments that must be addressed during claim construction. To convince this Court that a stay will actually simplify a case, the requesting party must do more than merely proffer oft-cited reexamination statistics and generic judicial efficiency arguments. This Defendants have not done. Accordingly, this factor weighs against granting the stay.

### 3. Completion of discovery and trial date

*3 Defendants argue that discovery is far from complete. Dkt. No. 106 at 17-18.As mentioned above, however, claim-construction briefing is complete and trial is six months away. Accordingly, this factor weighs against a stay in this case.

### IV. CONCLUSION

Not a single factor weighs in favor of a stay under circumstances of this case. Accordingly, a stay is inappropriate. Defendants' Motion to Stay Litigation Pending the Outcome of Reexamination Proceedings

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 16



Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633
(Cite as: 2000 WL 1134471 (S.D.N.Y.))

United States District Court, S.D. New York.
SOFTVIEW COMPUTER PRODUCTS CORP. and
ERGO VIEW TECHNOLOGIES CORP., Plaintiffs,
v.
HAWORTH, INC., Defendant.
No. 97 CIV. 8815 KMW HBP.

Aug. 10, 2000.

Philippe Bennett, Esq., Coudert Brothers, New York.

Stuart I. Friedman, Esq., Friedman, Wittenstein & Hochman, New York.

George M. Sirilla, Esq., Pillsbury, Madison & Sutro, LLP, Washington, D.C.

MEMORANDUM OPINION AND ORDER

PITMAN, Magistrate J.

I. *Introduction*

*1 This matter has been referred to me for general pre-trial supervision and to report and recommend with respect to dispositive motions. By letters dated July 5 and July 24, 2000 plaintiffs seek to stay this action pending the outcome of a re-examination proceeding that is now pending before the United States Patent and Trademark Office ("PTO"). For the reasons stated below, the motion is granted and the matter is stayed pending the resolution of the re-examination proceeding.

II. *Facts*

In principal part, this is a patent infringement action.[FN1] Plaintiffs allege that defendant's patent, United States Patent No. 4,616,798[FN2] (the " '798 Patent"), is invalid and unenforceable and seek a declaratory judgment to that effect. Defendant denies the material allegations of the complaint and has asserted a coun-

terclaim alleging that several of plaintiffs' products infringe the '798 Patent. Five claims of the '798 Patent are alleged to be infringed, namely Claims 31, 32, 33, 34 and 36.[FN3] Defendant has never sought injunctive relief against plaintiffs' alleged infringement.

> FN1. Plaintiffs have also asserted non-patent claims in which they allege that defendant is improperly attempting to enforce a patent that it knows is invalid. *See generally Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 174 (1965)*. Because this aspect of the case is dependent on the outcome of patent validity and infringement issues, I have bifurcated these claims and stayed discovery concerning them until the patent infringement and validity issues are resolved (*see* Docket Item No. 54).

> FN2. The '798 Patent's subject matter is an adjustable support mechanism for computer keyboard shelves.

> FN3. In a Memorandum Opinion and Order dated December 10, 1999, I denied Haworth's application to assert that plaintiffs infringed twelve (12) additional claims. Haworth has appealed this decision to the Honorable Kimba M. Wood, United States District Judge, to whom this matter is assigned. That appeal is currently pending.

At some unspecified date in the first half of this year, Softview requested that the PTO commence a reexamination proceeding with respect to certain claims of the '798 Patent. The PTO granted the request on or about June 23, 2000, finding that there was "substantial new questions of the patentability of claims 1, 23, 24, 25, 26, 31, 32, 36, 37 and 38 ..." (Exhibit F to the Letter of Philippe Bennett, Esq., dated July 24, 2000).

III. *Analysis*

A reexamination proceeding is an administrative proceeding conducted by PTO for the purpose of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633
(Cite as: 2000 WL 1134471 (S.D.N.Y.))

determining the validity of an existing patent. *See*35 U.S.C. § 301, *et seq.* A reexamination can be requested by any person at any time upon showing the existence of "prior art," "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."35 U.S.C. §§ 301, 302. *Bausch & Lomb Inc. v. Alcon Lab., Inc.,* 914 F.Supp. 951, 952 (W.D.N.Y.1996).

One purpose of the reexamination procedure is to eliminate trial of the issue of patent claim validity (when the claim is canceled by the [PTO] ), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding), *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied,* 464 U.S. 935 (1983); *Ingro v. Tyco Industries, Inc.,* 1985 WL 1649 at *1, 227 U.S.P.Q. (BNA) 69, 71 (N.D.Ill.1985). The procedure was intended "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts ...," especially where the infringement litigation is in the early stages. *Digital Magnetic Systems, Inc. v. Ansley,* 1982 WL 52160, at *1, 213 U.S.P.Q. (BNA) 290 (W.D.Okla.1982). As stated in the *Digital Magnetic Systems* case:

*2 Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation. Yet, in cases ... which have not progressed beyond the initial litigation stages and in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized.

*Id.*

*Snyder Seed Corp. v. Scrypton Sys., Inc.,* 52 U.S.P.Q.2d 1221, 1223 (W.D.N.Y.1999).

Although the reexamination procedure does not provide for an automatic stay of pending district court proceedings involving the same claims, *see*H.R.Rep. No. 1307 Part 1, 96th Cong., 2nd Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463, there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringe-

ment action pending the outcome of the reexamination proceeding. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988). The following advantages have been found to result from a stay of district proceedings pending completion of reexamination proceedings:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without further use of the Court.

5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N .D. Ill.1982), *citing Fisher Controls Co. v. Control Components Inc.,* 443 F.Supp. 581, 582 (S.D.Iowa 1977).*Accord Snyder Seed Corp. v. Scrypton Sys., Inc., supra,* 52 U.S.P.Q.2d at 1223.Courts have routinely stayed infringement actions pending the outcome of reexamination proceedings. *E.g., Snyder Seed Corp. v. Scrypton Sys., Inc., supra,* 52 U.S.P.Q.2d 1221; *Bausch & Lomb Inc. v. Alcon Lab., Inc., supra,* 914 F.Supp. 951;*Sulzer, Inc. v. Black Clawson Co.,* 93 Civ. 8721 (JGK), 1995 WL 363440 (S.D.N.Y. June 14, 1995); *Brown v. Shimano American,* 18 U.S.P.Q.2d 1496 (C.D.Cal.1991); *Grayling Indus. v. GPAC, Inc.,* 19 U.S.P.Q.2d 1872 (N.D.Ga.1991); *Emhart Indus. v. Sankyo Seiki Mfg., supra,* 3 U.S.P.Q.2d 1889; *Thomas & Betts Corp. v. Tishman Research Corp.,* 86 Civ.1926(MJL), 1986

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633
(Cite as: 2000 WL 1134471 (S.D.N.Y.))

WL 13455 (S.D.N.Y. Nov. 17, 1986)

In determining whether to grant a stay, courts have considered the following factors:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*3 *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted).*See also Note, Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 Geo. Washington L.Rev. 172, 178 (1997).

Although I believe that this is a close case, on balance, I believe that the equities weigh in favor of a stay.

First, it does not appear that a stay would unduly prejudice the patentee. Although Haworth correctly notes that plaintiffs have not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to Haworth of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not, without more, entitle Haworth to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the *Markman*[FN4] hearing has not yet been held and the Pretrial Order has not yet been prepared. In would be a serious waste of both the parties' and the Court's resources if the *Markman* and

summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

FN4.*See Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996)

Third, a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims. *See Note, Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination, supra,* 66 Geo. Washington L.Rev. at 180-81 & nn. 82-83.

Haworth claims that a stay would prejudice it because, until the action is resolved, plaintiffs will unfairly gain market share. Haworth explains that because plaintiffs are not paying it royalties, plaintiffs can unfairly price their products below Haworth's licensees and thereby gain market share at the expense of Haworth's licensees. This argument does not, however, establish harm to Haworth. If the patent is ultimately found to be valid and infringed, plaintiffs will be responsible to Haworth for damages-perhaps treble damages, 35 U.S.C. § 284-for *all* the infringing mechanisms that it has sold. Thus, it does not appear that staying the action will result in an financial damage to Haworth. In addition, if found to be infringing, plaintiffs will be subject to injunctive relief, 35 U.S.C. § 283, which would entirely eradicate their market share with respect to infringing products. Thus, Haworth's prejudice argument is unpersuasive.

IV. *Conclusion*

*4 Accordingly, for all the foregoing reasons, plaintiffs' application to stay this matter pending the outcome of the PTO's reexamination proceeding is granted. The Clerk of the Court is directed to remove this matter from the active docket of the Court until the conclusion of the PTO's reexamination proceeding. Defendant is to advise my chambers promptly of the conclusion of the reexamination proceedings.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 17

LEXSEE


Caution
As of: Jul 29, 2009

**JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVEL-
OPMENT TRUST, Plaintiff, v. AMPRO TOOLS CORPORATION; FRENWAY
PRODUCTS, INC.; AMPRO NORTH AMERICA CORP.; and SCOTT WANG,
Defendants.**

**No. C 08-00096 CW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

**2009 U.S. Dist. LEXIS 21627**

**March 9, 2009, Decided
March 9, 2009, Filed**

**PRIOR HISTORY:** Sorensen v. AmPro Tools Corp.,
2009 U.S. Dist. LEXIS 1606 (N.D. Cal., Jan. 6, 2009)

**CORE TERMS:** patent, patent infringement,
re-examination, infringement, notice, discovery, weigh,
case law, stay proceedings, reasonable effort, actual no-
tice, infringer, patented, plastic, default, import, clerk,
amend, final decision, offer to sell, tape measures, entry of
default, trial date, tactical advantage, notice provisions,
notice requirement, material allegations, substantial like-
lihood, actually used, reexamination

**COUNSEL:** [*1] For Jens Erik Sorensen, as Trustee of
Sorensen Research and Development Trust, Plaintiff:
James Michael Kaler, LEAD ATTORNEY, Law Offices
of J. Michael Kaler, San Diego, CA; Melody Ann Kramer,
LEAD ATTORNEY, Kramer Law Office, Inc., San
Diego, CA.

For Ampro Tools Corporation, Defendant: Bruce A Kaser,
PRO HAC VICE, Issaquah, WA; Michael James Cronen,
Law Offices of Harris Zimmerman, Oakland, CA.

For Ampro North America Corp, a Washington Corpora-
tion, Defendant: Bruce A Kaser, LEAD ATTORNEY,
Issaquah, WA.

**JUDGES:** CLAUDIA WILKEN, United States District
Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION**

ORDER DENYING AMPRO'S MOTION TO
DISMISS

Defendant AmPro Tools Corporation (AmPro)
moves to dismiss the complaint filed by Plaintiff Jens Erik
Sorensen (Sorensen) or, in the alternative, to stay the
proceedings pending the final outcome of the
re-examination by the U.S. Patent Office (PTO) of the
patent at issue in this case. Sorensen opposes the motions.
The Court has taken the matter under submission. Having
considered the papers submitted and the applicable law,
the Court denies AmPro's motions.

BACKGROUND

This is a patent infringement case involving U.S.
Patent No. 4,935,184 ('184 patent), entitled "Stabilized
Injection Molding [*2] When Using a Common Mold
Part with Separate Complimentary Mold Parts." Sorensen
owns the '184 patent, which was issued on June 19, 1990.
Sorensen alleges that AmPro, "in the past and presently
make[s], import[s] into, sell[s] and/or offer[s] for sale
within the United States and this District, one or more
products for which the two plastic component external
plastic shells are manufactured through processes which
incorporate all elements of the '184 patent." First
Amended Complaint (FAC) P 18. The products at issue
are four types of tape measures. Sorensen also alleges that

Page 1

AmPro has not "obtained a license or any other valid authorization for import, sale, or offer for sale in the United States of products manufactured through use of the '184 patented process." *Id.* at P 19.

On December 20, 2006, Sorensen sent AmPro a detailed letter, accompanied by drawings and charts, which described the infringement. The letter requested that AmPro provide evidence necessary to verify that the manufacturing process it used to make its tape measures was not the '184 process. Sorensen alleges that AmPro has not produced such evidence. On January 7, 2008, Sorensen filed this lawsuit. Ampro failed timely [*3] to respond to the complaint. On March 26, 2008, at Sorensen's request, the clerk entered default against AmPro. [1] On October 28, 2008, Ampro moved to file responsive pleadings, which the Court interpreted as a motion to set aside the default. The Court set aside the entry of default on January 6, 2009. On January 15, 2009, AmPro filed the instant motion.

> [1]  Sorensen's original complaint listed AmPro Tools Corp. as the only Defendant; therefore the clerk's entry of default is against only it. Sorensen's operative complaint, the first amended complaint, lists AmPro Tools Corp., Frenway Products Inc., AmPro North America Corp. and Scott Wang as Defendants. However, at the time Defendant AmPro Tools Corp. filed this motion to dismiss, none of the other Defendants had been served.

DISCUSSION

I. Motion to Stay Proceedings

As the Federal Circuit has noted, "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination." *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (citation omitted). While courts are not required to stay judicial proceedings pending re-examination of a patent, a stay for [*4] purposes of re-examination is within the district court's discretion. *See, e.g., Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985)*. One court in this district has noted that there is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination or re-issuance proceedings, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)*.

The re-examination at issue in this case arises from the actions of two companies not parties to this case, Black & Decker Corp. and Phillips Plastics Corp. They filed *ex parte* requests with the PTO for re-examination of the '184 patent in July and December, 2007, respectively. The PTO has not issued a final decision on the re-examination; however, in a non-final office action dated October 31, 2008, of the ten claims that comprise the '184 patent, the PTO confirmed claims two and four, and rejected claims one and six through ten.

In determining whether to stay a case pending re-examination, a court may consider the following factors: (1) whether discovery is complete [*5] and whether a trial date has been set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *In re Cygnus Telecomm. Tech., LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)*. On balance, the factors here weigh against a stay.

Discovery in this case is still in its early stages and no trial date has been set. Thus this factor would normally weigh in favor of a stay. However, Sorensen argues that discovery would be further along, had AmPro not refused to participate in the proceedings for almost one year. Sorensen also asserts that AmPro did not even begin to respond to his claim until the clerk made the default entry. AmPro does not address these accusations.

It is not clear whether staying the case will simplify the issues in question and the trial of the case. AmPro asserts that Sorensen's case would have to be dismissed if the final decision on the re-examination invalidates those parts of Sorensen's patent that apply to AmPro. However, it is not certain which patent claims apply to the present litigation, and the outcome of the reexamination [*6] is far from certain.

Finally, the Court addresses whether entering a stay in this case will unduly prejudice and present a clear tactical advantage to the non-moving party, Sorensen. As noted above, AmPro has already stalled this action for almost one year. Sorensen argues that further delay will only increase the likelihood of loss of evidence. *See Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)* (concluding that staying the case could lead to "further loss of information" and a "tactical advantage."). The Court agrees. Further, the length of time required for the reexamination is unknown. After balancing this uncertainty with the current stage of the proceeding, the potential delay would likely prejudice Sorensen. In sum, the three factors weigh against granting AmPro's motion to stay the proceeding.

II. Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. When considering a motion to

dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair [*7] notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 552, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

AmPro first argues that Sorensen's complaint should be dismissed because Sorensen is not entitled [*8] to a presumption of patent infringement under 35 U.S.C. § 295. That section provides,

> In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds --
>
> > (1) that a substantial likelihood exists that the product was made by the patented process, and
> >
> > (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine,
>
> the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

AmPro argues that Sorensen has not made "reasonable efforts to determine the process actually used in the production" of the tape measures at issue in this case. However, Sorensen properly notes that § 295 is not a mandatory element of a patent infringement claim. Rather, it is a burden shifting provision that relieves patent holders of the burden to prove infringement once the patent holder has shown that there is a substantial likelihood that the product was made with the [*9] infringing process, and that reasonable efforts were made to discover the actual patent process. This provision has no bearing on the sufficiency of a complaint for patent infringement.

Further, the parties have not presented the Court with any evidence on this issue and, on a motion to dismiss, the Court does not weigh evidence. Rather, the Court takes all material allegations as true and construes them in the light most favorable to the plaintiff, Sorensen. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Thus, the Court does not reach a conclusion about whether Sorensen is entitled to the presumption. [2] Even if the Court determined that he was not, it would not necessarily be dispositive of Sorensen's case and require dismissal of the complaint.

> 2   The Court declines Ampro's invitation to treat this motion as one for summary judgment.

AmPro next argues that the complaint should be dismissed because it did not have actual notice of the process patent infringement action. AmPro argues that § 287(a) limits patent infringement actions to those in which individuals have actual notice of the infringement. Section 287(a) provides that "no damages shall be recovered by the patentee [*10] in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter." However, "the law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method." American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523, 1538 (Fed. Cir. 1993); see Bandag, Inc. v. Gerrard Tire Company, Inc., 704 F.2d 1578, 1581 (Fed. Cir. 1983) ("In addition to the clear language of the statute, it is, as noted by the district court, also settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method."). Because Sorensen alleges that AmPro infringed a process patent, the notice provisions of § 287 do not apply.

Despite this case law to the contrary, AmPro argues that the passage of the Process Patent Act of 1988 (The Act) changed the notice requirements for process patent claims. The Act added § 271(g), which creates liability for companies that import, offer to sell, sell, or use a "product which is made by a process patented in the United States"

if the importation, offer to sell, sale or use of the product [*11] "occurs during the term of such process patent." The Act expanded the reach of the U.S. patent system beyond the U.S. borders. The Act also added § 287(b), which sets various limits to damages and other remedies available in patent infringement claims. However, nothing in the plain language of §§ 271(g) or 287(b) states that process patent claims require notice of any kind. Moreover, since the passage of the Act, no court has interpreted §§ 271(g) or 287(b) to require such notice. To the contrary, case law since the passage of the Act has stated the opposite. *See American Medical Systems, 6 F.3d at 1538; Crystal Semiconductor v. Tritech Microelectronics, 246 F.3d 1336, 1353 (Fed. Cir. 2001).* [3]

[3] AmPro also questions facts underlying Sorensen's allegations as to when AmPro had "actual knowledge" of the infringement in relation to when AmPro discontinued selling the products at issue. Because actual notice is not required to sustain a claim for process patent infringement, the Court need not address this dispute. Further, this type of factual dispute is not resolved on a motion to dismiss. *See NL Indus., Inc. v. Kaplan, 792 F.2d at 898.*

After reviewing the complaint, the Court concludes [*12] that Sorensen has successfully alleged the necessary components of a patent infringement claim. To survive a motion to dismiss in a patent infringement claim, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000).* Here, Sorensen's complaint sufficiently places Ampro on notice of enough facts to enable it to defend itself.

CONCLUSION

For the foregoing reasons, AmPro's motions for a stay and to dismiss are denied (Docket No. 54).

IT IS SO ORDERED.

Dated: 3/9/09

/s/ Claudia Wilken

CLAUDIA WILKEN

United States District Judge

# TAB 18

LEXSEE



Cited
As of: Jul 29, 2009

**STORMEDIA TEXAS, LLC, vs. COMPUSA, INC., ET AL.**

CASE NO. 2:07-CV-025

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
TEXAS, MARSHALL DIVISION

2008 U.S. Dist. LEXIS 55690

July 23, 2008, Decided
July 23, 2008, Filed

**CORE TERMS:** reexamination, inter partes, weigh, tactical advantage, patent-in-suit, invalidity, simplify

**COUNSEL:** [*1] For Stormedia Texas, LLC., Plaintiff, Counter Defendant: Sidney Calvin Capshaw, III, LEAD ATTORNEY, Elizabeth L DeRieux, Capshaw DeRieux, LLP, Longview, TX; Andrew Thompson Gorham, Charles Ainsworth, Parker Bunt & Ainsworth, Tyler, TX; Deborah J Race, Otis W Carroll, Jr, Ireland Carroll & Kelley, Tyler, TX; Franklin Jones, Jr, Jones & Jones - Marshall, Marshall, TX; Gregory Scott Dovel, Julien Antonio Adams, Dovel & Luner, Santa Monica, CA; Robert Christopher Bunt, Parker, Bunt & Ainsworth, P.C., Tyler, TX.

For Western Digital Technologies, Inc., Consol Plaintiff: Lisa Sharrock Glasser, LEAD ATTORNEY, Scott D Baskin, Irell & Manella - Newport Beach, Newport Beach, CA.

For Compusa, Inc., a Delaware Corporation, Defendant: Herbert J Hammond, Thompson & Knight - Dallas, Dallas, TX.

For J & R. Electronics, Inc., a New York Corporation, Defendant: Walter Thomas Henson, LEAD ATTORNEY, Ramey & Flock, Tyler, TX.

For Samsung Semiconductor, Inc., a California Corporation, Defendant, Counter Claimant: Christine K Corbett, Mark D Fowler, DLA Piper Rudnick Gray Cary US LLP - East Palo Alto, East Palo Alto, CA; Gerald Sekimura, DLA Piper US LLP - San Francisco, San Francisco, CA;

James Bradford Morin, [*2] Curry & Morin LLP, Marshall, TX; John M Guaragna, DLA Piper Rudnick Gray Cary, Austin, TX; John K Pike, DLA Piper US LLP - Washington, Washington, DC; Vincent S Lam, DLA Piper US LLP - San Diego, San Diego, CA.

For Seagate Technology Inc, a Cayman Islands Corporation, Seagate Technology LLC., a Delaware Limited Liability Company, Defendants, Counter Claimants: Ruffin B Cordell, LEAD ATTORNEY, Fish & Richardson PC - Washington DC, Washington, DC; David M Barkan, Jennifer L Ishimoto, Limin Zheng, Rajesh Bagga, Tamara D Fraizer, Fish & Richardson - Redwood City, Redwood City, CA; Edward Alexander Eaton-Salners, Fish & Richardson - San Diego, San Diego, CA; Walter Thomas Henson, Ramey & Flock, Tyler, TX.

For Tigerdirect, Inc., a Florida Corporation, Defendant: Eric William Buether, LEAD ATTORNEY, Greenberg Traurig - Dallas, Dallas, Tx.

For Toshiba America Information Systems, Inc., a California Corporation, Defendant: Melvin R Wilcox, III, LEAD ATTORNEY, Yarbrough - Wilcox, PLLC, Tyler, TX; Craig S Summers, Irfan A Lateef, Knobbe Martens Olson & Bear LLP - Irvine,CA, Irvine, CA; Soyoung Jung, Knobbe Martens Olson & Bear - San Francisco, San Francisco, CA.

For Western Digital Technologies, [*3] Inc., a Delaware Corporation, Defendant, Counter Claimant: Melissa Richards Smith, LEAD ATTORNEY, Gillam & Smith, LLP, Marshall, TX; David Craig McPhie, Lisa Sharrock

Glasser, Scott D Baskin, Irell & Manella - Newport Beach, Newport Beach, CA; Harold Kip Glasscock, Jr, Kip Glasscock Attorney at Law, Beaumont, TX; Reynaldo C Barcelo, Barcelo & Harrison, Newport Beach, CA.

For Stormedia Texas, LLC., Consol Defendant: Gregory Scott Dovel, LEAD ATTORNEY, Julien Antonio Adams, Dovel & Luner, Santa Monica, CA.

For Hoya Corporation, Movant: Eric Hugh Findlay, Roger Brian Craft, Ramey & Flock, Tyler, TX; Joseph J Jacobi, Lydia E Wahlke, Kirkland & Ellis - Chicago, Chicago, Il; Paul Richard Steadman, Kirkland & Ellis LLP - Chicago, Chicago, Il.

For Stormedia Texas, LLC., Counter Defendant: Sidney Calvin Capshaw, III, Capshaw DeRieux, LLP, Longview, TX.

For Samsung Semiconductor, Inc., a California Corporation, Counter Claimant: George Barton Butts, DLA Piper US LLP - Austin, Austin, TX; John M Guaragna, DLA Piper Rudnick Gray Cary, Austin, TX; Vincent S Lam, DLA Piper US LLP - San Diego, San Diego, CA.

For Western Digital Technologies, Inc., a Delaware Corporation, Counter Claimant: Melissa Richards [*4] Smith, LEAD ATTORNEY, Gillam & Smith, LLP, Marshall, TX; David Craig McPhie, Lisa Sharrock Glasser, Irell & Manella - Newport Beach, Newport Beach, CA.

For Stormedia Texas, LLC., Counter Defendant: Gregory Scott Dovel, LEAD ATTORNEY, Gregory Scott Dovel, Julien Antonio Adams, Dovel & Luner, Santa Monica, CA; Sidney Calvin Capshaw, III, LEAD ATTORNEY, Elizabeth L DeRieux, Capshaw DeRieux, LLP, Longview, TX; Andrew Thompson Gorham, Charles Ainsworth, Parker Bunt & Ainsworth, Tyler, TX; Deborah J Race, Otis W Carroll, Jr, Ireland Carroll & Kelley, Tyler, TX; Franklin Jones, Jr, Jones & Jones - Marshall, Marshall, TX; Robert Christopher Bunt, Parker, Bunt & Ainsworth, P.C., Tyler, TX.

JUDGES: CHARLES EVERINGHAM IV, UNITED STATES MAGISTRATE JUDGE.

OPINION BY: CHARLES EVERINGHAM IV

OPINION

MEMORANDUM OPINION AND ORDER

1. Introduction

Before the court is the defendants' motion (# 187) to stay this action pending *inter partes* reexamination of the only patent-in-suit. For the foregoing reasons, the court denies the defendants' motion.

2. Background

In this case, Stormedia Texas, LLC ("Stormedia") contends that the defendants infringe various claims of U.S. Patent No. 6,805,891 ("the '891 patent), entitled "Recording Media Having [*5] Protective Overcoats of Highly Tetrahedral Amorphous Carbon and Methods for their Production." The '891 patent was filed on January 23, 2003, and issued on October 19, 2004.

The instant action was filed by Stormedia on January 22, 2007. Western Digital Technologies, Inc. ("Western Digital") thereafter filed on January 4, 2008, a request with the U. S. Patent and Trademark Office ("PTO") for an *inter partes* reexamination of the '891 patent. On January 16, 2008, the defendants filed the instant motion (# 187) requesting a six month stay of this case pending the PTO's decision on whether to grant or deny Western Digital's reexamination request. On February 29, 2008, the PTO issued an order granting Western Digital's reexamination request for all claims of the patent-in-suit. The defendants' motion to stay (# 187) is ripe for review.

3. Discussion

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citations omitted). Management of the court's docket requires "the [*6] exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

Courts typically consider three things when deciding whether to stay litigation pending reexamination: "(1) whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC*, 356 F. Supp. 2d at 662.

A. Prejudice and Tactical Advantage

The PTO has not provided any definitive guidance on the length of time required for the reexamination. Accordingly, the potential delay for an indefinite period would likely prejudice StorMedia. See *Ricoh Co., Ltd. v. Aeroflex, Inc.*, 2006 U.S. Dist. LEXIS 93756, 2006 WL 3708069, *2 (N.D. Cal. Dec. 14, 2006); *Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.*, 442 F. Supp. 2d

1277, 1278 (S.D. Fla. 2006). This factor weighs against a stay of this case.

### B. Simplification of the Case

If the court stays the proceedings, Western Digital will be estopped from making the same invalidity arguments in this case that it makes to the PTO during [*7] the reexamination proceeding. 35 U.S.C. § 315(c). This estoppel will usually simplify the issues in the case. However, in this action, there are several defendants who are not party to the reexamination proceeding. These defendants will therefore not be precluded from advancing at trial the same invalidity arguments that Western Digital presented during reexamination. This serves to counteract any simplifying effects of the *inter partes* reexamination proceeding. *Texas MP3 Technologies, Ltd. v. Samsung Electronics Co., Ltd.,* No. 2:07-CV-052, 2007 U.S. Dist. LEXIS 80392, slip op. at 2-3 (E.D. Tex. Oct. 30, 2007). As such, this factor weighs against staying this case.

### C. Stage of the Proceedings

The present motion was filed one month after the docket control order was entered in this case, but one year before the scheduled *Markman* hearing. Therefore, this factor supports a stay of the proceedings.

### 4. Conclusion

On balance, the court finds that a stay of this case pending the *inter partes* reexamination is not appropriate. Therefore, the court denies the defendants' motion (# 187) to stay this action.

SIGNED this 23rd day of July, 2008.

/s/ Charles Everingham IV

CHARLES EVERINGHAM IV

UNITED STATES MAGISTRATE JUDGE

# TAB 19



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3219372 (E.D.Tex.)
(Cite as: 2007 WL 3219372 (E.D.Tex.))

Page 1

**C**Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Marshall Division.
TEXAS MP3 TECHNOLOGIES, LTD., Plaintiff,
v.
SAMSUNG ELECTRONICS CO., LTD., et al., De-
fendants.
Civil Action No. 2:07-CV-52.

Oct. 30, 2007.

Mike Mckool, Jr., Jason Dodd Cassady, Scott Robert
Jacobs, Mckool Smith, Dallas, TX, Charles Ainsworth,
Robert Christopher Bunt, Robert M. Parker, Parker
Bunt & Ainsworth, Tyler, TX, Gretchen Kristen
Harting, Travis Gordon White, Mckool Smith, Austin,
TX, Samuel Franklin Baxter, Mckool Smith, Marshall,
TX, for Plaintiff.

Roger Joseph Fulghum, Lisa Catherine Kelly, Michael
A. Hawes, Baker Botts, David J. Healey, Garland T.
Stephens, John Lane, Wasif H Qureshi, Weil Gotshal
& Manges, Houston, TX, Allen Franklin Gardner,
Michael Edwin Jones, Potter Minton PC, Tyler, TX,
Mark Nolan Reiter, Steven Mark Geiszler, Gibson,
Dunn & Crutcher LLP, Keith Bryan Davis, Jones Day,
Dallas, TX, Thomas L. Giannetti, Jones Day,
Elizabeth S. Weissman, Weil Gotshal & Manges,
New York, NY, Michael Charles Smith, The Roth
Law Firm, Marshall, TX, Brandon D. Conard, Weil
Gotshal & Manges, Redwood Shores, CA, Eric M.
Albritton, Attorney at Law, Longview, TX, for De-
fendants.

*MEMORANDUM OPINION AND ORDER*

T. JOHN WARD, United States District Judge.

**\*1** Before the court is Defendant Apple's Motion to
Stay Litigation Pending Completion of *Inter Partes*
Reexamination (Dkt.# 59), and related briefing. After
carefully considering the parties' written submissions,

the defendant's Motion to Stay is DENIED for the
reasons set forth in this opinion.

**I. Background**

In its complaint filed on February 16, 2007, Plaintiff
Texas MP3 Technologies, Ltd. ("Texas MP3") alleges
that Apple Computer, Inc. ("Apple"), Samsung Elec-
tronics Co., Ltd. ("Samsung") and SanDisk Corp.
("SanDisk") infringe claims of U.S. Patent No.
7,065,417 ("the '417 patent"). The '417 patent is di-
rected to a portable .mp3 music player with
non-removable storage. No other patents are at issue.

Apple filed a request with the United States Patent and
Trademark Office ("PTO") for an *inter partes* reex-
amination of all claims of the '417 patent on July 12,
2007. The court has since been advised that the PTO
granted this request.

**II. Discussion**

**A. Legal Standard**

"The district court has the inherent power to control its
own docket, including the power to stay proceedings."
*Soverain Software LLC v. Amazon.com, Inc.,* 356
F.Supp.2d 660, 662 (E.D.Tex.2005) (citations omit-
ted). Management of the court's docket requires "the
exercise of judgment, which must weigh competing
interests and maintain an even balance." *Landis v.
North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct.
163, 81 L.Ed. 153 (1936).

Courts typically consider three things when deciding
whether to stay litigation pending reexamination: "(1)
whether a stay will unduly prejudice or present a clear
tactical advantage to the nonmoving party, (2) whether
a stay will simplify the issues in question and trial of
the case, and (3) whether discovery is complete and
whether a trial date has been set." *Soverain Software
LLC,* 356 F.Supp.2d at 662.

**B. Analysis**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3219372 (E.D.Tex.)
(Cite as: 2007 WL 3219372 (E.D.Tex.))

### 1. *Undue Prejudice*

Apple argues that a stay would not unduly prejudice Texas MP3 because: (1) Texas MP3's costs will not be increased; and (2) Texas MP3 does not "make, sell, or otherwise deal in any products that compete with the accused Apple products," and monetary damages can adequately compensate for any delay. Defendant's Motion at 8-9.

In response, Texas MP3 argues that an *inter partes* reexamine could be pending at the PTO for up to three years.[FN1]Plaintiff's Response at 5. This, according to Texas MP3, would (1) unjustly delay final resolution of this action, and (2) threaten "to prejudice Texas MP3's ability to fairly prosecute its patent-infringement action when the stay is finally lifted."*Id.* at 6.

> FN1. Texas MP3 points out that the third-party requester, here Apple, would have the right to appeal the decision. Such an appeal could result in even longer delay. Apple, however, "only requests a stay until the Patent Office issues its final office action."Defendant's Reply at 2.

The court agrees with Texas MP3 that a potential delay could cause prejudice.*See Biax Corp. v. Fujitsu Computer Systems Corp., et al.,* 2007 U.S. Dist. LEXIS 12973, at *4. This factor weighs against a stay.

### 2. *Simplification of the Issues*

Apple argues that it would be an "egregious waste to go forward on claims that are eventually cancelled or significantly narrowed."Defendant's Motion at 9. Also, the issues of claim construction could be clarified by the PTO during the course of the reexamination proceeding. *Id.*

*2 In response, Texas MP3 argues that Apple is unlikely to succeed in cancelling or narrowing the claims. Plaintiff's Response at 7-10. Texas MP3 further argues that two of the three defendants in this action are not parties to the reexamination. *See* San-Disk's Response and Samsung's Response (Dkt68 and

75, respectively). Thus, while Apple would be estopped in this action from making the same arguments made to the PTO, nothing would prevent Samsung or SanDisk from doing so. *See*35 U.S.C. § 315(c) (estopping only the third-party requester from later asserting the invalidity of the claims at issue in the reexamination).

The court agrees with Apple that it would be inefficient to litigate claims that are cancelled or narrowed during reexamination. Such a result, however, is speculative.[FN2]Because all of the defendants would not be estopped from rearguing the invalidity positions taken by Apple in the reexamination, it is unlikely that the issues of this case would be simplified by a stay. This factor weighs against a stay.

> FN2. The court is not addressing the merits of Apple's invalidity challenge, but rather noting that final disposition of any reexamination proceeding is unknown.

### 3. *Stage of Proceedings*

The present motion was filed early in this case, as such, this factor supports a stay of the proceedings.

### III. Conclusion

Although one factor supports a stay, the interest in proceeding with this case outweighs any benefit from staying this case. As a result of considering the competing interests, the court DENIES Apple's Motion.

E.D.Tex.,2007.
Texas MP3 Technologies, Ltd. v. Samsung Electronics Co., Ltd.
Not Reported in F.Supp.2d, 2007 WL 3219372 (E.D.Tex.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Respectfully submitted,

Date:  July 29, 2009

_____/s/_____
Gregory N. Stillman (VSB #14308)
Brent VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street
Suite 1000
Norfolk, VA 23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Scott L. Robertson (*admitted pro hac vice*)
Jennifer A. Albert (*admitted pro hac vice*)
David M. Young (VSB #35997)
Robert D. Spendlove (VSB #75468)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

Shirley Sperling Paley ( *pro hac vice application pending*))
James D. Clements (*pro hac vice application pending*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
spaley@goodwinprocter.com
jclements@goodwinprocter.com

***Attorneys for Plaintiff***
***ePlus, Inc.***

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2009, I will electronically file the foregoing Notice of ePlus, Inc.'s Appendix of Cases for Brief in Opposition to Defendants' Motion to Stay Proceedings with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367)
**(hand delivered July 29, 2009)**
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3289
Facsimile:  (757) 624-3169
senoona@kaufcan.com
***Counsel for Defendant Perfect Commerce, LLC,***
***SciQuest, Inc. and Lawson Software, Inc.***

James J. Briody (VSB #32128)
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC  20004-2415
Telephone:  (202) 383-0100
Facsimile:  (202) 637-3593
jim.briody@sablaw.com
***Counsel for Verian Technologies, Inc.***

George E. Kostel (VSB #34757)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue, NW  Suite 900
Washington, DC  20001
Telephone:  (202) 712-2800
Facsimile:  (202) 712:2862
george.kostel@nelsonmullins.com
***Counsel for Verian Technologies, Inc.***

3

I certify that I will email the foregoing to the following non-filing users:

Daniel Johnson, Jr. *(admitted pro hac vice)*
Rita E. Tautkus *(admitted pro hac vice)*
Morgan, Lewis & Bockius, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1392
Facsimile: (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and***
***Lawson Software, Inc.***

Robert W. Busby, Jr. (VSB #41312) *(admitted pro hac vice)*
Bradford A. Cangro *(admitted pro hac vice)*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone: (202) 739-5970
Facsimile: (202) 739-30001
rbusby@morganlewis.com
bcangro@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and***
***Lawson Software, Inc.***

Kenneth W. Brothers *(pro hac vice application pending)*
Matthew J. Ricciardi *(pro hac vice application pending)*
Dickstein, Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-4128
Facsimile: (202) 420-2201
brothersk@dicksteinshapiro.com
ricciardim@dicksteinshapiro.com
***Counsel for Defendant Perfect Commerce, LLC***

4

I certify that I will mail a copy of the foregoing to the following counsel:

Craig N. Killen
Frank B.B. Knowlton
Jeremy C. Whitley
Nelson, Mullins, Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC   29201
Telephone:   (803) 799-2000
Facsimile:   (803) 256-7500
craig.killen@nelsonmullins.com
frank.knowlton@nelsonmullins.com
jeremy.whitley@nelsonmullins.com
***Counsel for Verian Technologies, Inc.***

_____/s/_____
Gregory N. Stillman

Gregory N. Stillman (VSB #14308)
**HUNTON & WILLIAMS LLP**
500 East Main Street
Suite 1000
Norfolk, VA 23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
gstillman@hunton.com
Counsel for Plaintiff, ePlus, Inc.

5