IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Norfolk Division**

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) |
|           Plaintiff, | )  **Civil Action No. 2:09cv232-HCM-TEM** |
| | ) |
| | ) |
| v. | ) |
| | ) |
| PERFECT COMMERCE, INC., SCIQUEST, | ) |
| INC., LAWSON SOFTWARE, INC., and | ) |
| VERIAN TECHNOLOGIES, INC., | ) |
| | ) |
| | ) |
| | ) |
|           Defendants. | ) |

**DECLARATION OF KENNETH G. FARBER IN SUPPORT OF
*e*PLUS' OPPOSITION TO DEFENDANTS'
MOTION TO STAY PROCEEDINGS**

I, Kenneth G. Farber, declare and state as follows:

## I.    INTRODUCTION

1.    My name is Kenneth G. Farber. I am President of *e*Plus Systems, Inc. ("*e*Plus

Systems"), a subsidiary of *e*Plus inc. ("*e*Plus"), the plaintiff in this lawsuit. I am over 18 years of

age and I could competently testify as to the facts contained herein if called upon to testify.

2.    *e*Plus Systems is located at 13595 Dulles Technology Drive, Herndon, Virginia

20171. *e*Plus Systems is a vendor of software products and services for performing electronic

sourcing and procurement of goods and services. *e*Plus Systems sells products that have features

and functionality to permit users to electronically purchase goods and services from multiple

vendors and suppliers over an internal network and external networks such as the Internet.

Broadly speaking, this is commonly referred to today as business-to-business ("B2B") ecommerce.

      3.      As part of our business model, *e*Plus Systems offers products known as Procure[+] and Content[+].

      4.      Procure[+] is a software program that enables users to take advantage of a fully automated procurement process by searching for items in electronic catalogs, generating requisitions, and producing purchase orders over a computer network. The software allows users to make online purchases through an integrated, paperless procurement process.

      5.      Content[+] is software that enables users to create robust electronic catalogs by converting supplier product data into a manageable, organized and searchable catalog. Potential buyers can then search the electronic catalogs, view details about the products in the catalogs, cross-reference and compare similar products, and generate requisitions through Procure[+] to purchase selected items.

      6.      *e*Plus has been in the business of offering software products and services for electronic sourcing and procurement since May of 2001. *e*Plus began operations in this area by acquiring the technology business assets of a company called ProcureNet. In 2001, I was employed by ProcureNet as its Senior Vice President for Marketing and Business Development. After *e*Plus acquired ProcureNet's technology assets in 2001 -- including its software, its source code, its patents and other related intellectual property -- I joined *e*Plus and subsequently became the President of *e*Plus Systems. Since that date, the original ProcureNet products have gone through ongoing development enhancements.

      7.      *e*Plus has grown this business since 2001, but still remains a fairly small player in the market.

LIBW/1714341.1

8.      The market for electronic sourcing and procurement is fiercely competitive. There are several software vendors that provide solutions such as those offered by *e*Plus Systems. These include, for example, Ariba, SAP, Oracle and the Defendants in this action -- Perfect Commerce, Lawson Software, SciQuest and Verian Technologies.

9.      Perfect Commerce's On-Demand SRM applications, including its Perfect Procure, Catalog Manager, Search Manager and Open Supplier Network applications are its counterparts to *e*Plus's Procure$^+$ and Content$^+$ applications. SciQuest's Requisition Manager, Order Manager, Catalog Manager and Supplier Network solutions are its counterparts to *e*Plus' electronic procurement applications. Lawson Software's Lawson Procurement, Lawson Requisitions, Lawson Inventory Control, Lawson Purchase Order and Lawson Procurement Punchout solutions are its counterparts to *e*Plus's Procure$^+$ and Content$^+$ applications.

10.     In the marketplace, *e*Plus and Perfect Commerce, Lawson Software and SciQuest are direct competitors. In many instances that *e*Plus has responded to a Request for Proposal ("RFP") from a potential customer, one or more of the Defendants has also offered its products for sale to the prospective customer. In some instances, *e*Plus has been able to secure the sale in direct competition with the Defendant. In other instances, the Defendant has prevailed. For example, *e*Plus competed against Perfect Commerce with respect to Purdue Farms. We believe that Perfect Commerce received the contract award. Recently, we believe that Lawson Software was successful in inducing the Gannett Corporation to switch from *e*Plus's software products to those of Lawson Software. *e*Plus recently lost three of its customers to SciQuest, the University of Texas, Baylor University and Emory University. Each of these customers was using *e*Plus's solutions and switched to SciQuest's products.

3

11.     It is my understanding that the patents owned by ePlus cover basic functionality

for electronic sourcing and procurement. They permit a user to: (i) select among multiple

suppler or vendor catalogs of goods and services for sale; (ii) search for desired items in the

selected catalogs; (iii) build a requisition for the items that he or she desires to purchase; (iv)

process the requisition to generate one or more purchase orders for the item(s) selected for

purchase; and (v) determine whether the selected item(s) is available in inventory at the

supplier's warehouse. In addition, I understand that the patents also describe and claim how

users can determine if there are similar items for sale from other vendors by providing cross

referencing functionality.

12.     From my experience in the industry, and from my experience in direct

competition with each of the defendants, I understand that ePlus and each of the Defendants sell

software solutions and services that provide this functionality. Indeed, in responding to RFPs,

ePlus and the Defendants are required to represent to prospective customers that the software

systems they are selling can achieve these operational requirements.

13.     ePlus has spent millions of dollars enforcing its patents in two prior lawsuits. The

first of these cases was brought in the Alexandria Division of this Court against Ariba, a

competitor of ePlus and one of the largest electronic procurement software companies in the

United States. The trial in that matter was conducted in January, 2005 before Judge Leonie

Brinkema. The jury determined that Ariba willfully infringed all of the asserted claims of the

same three patents as those at issue here, and that all of the asserted claims were valid. A copy

of the jury's verdict form is attached as Exhibit A. After the jury verdict was returned, but

before we proceeded to the damages phase of the trial, the parties negotiated a settlement and

4

license agreement pursuant to which Ariba paid $37 million and took a license to the patents-in suit.

14. The second case was against SAP AG and its U.S. subsidiary, SAP America, Inc., another of ePlus's largest competitors in the market for electronic sourcing and procurement systems. That case was tried before Judge Spencer in the Richmond Division of this Court. After a three-week trial, the jurors were unable to reach a verdict and Judge Spencer declared a mistrial. The parties then agreed to submit the case to Judge Spencer for a bench ruling. While the matter was under consideration by Judge Spencer, the parties conducted settlement negotiations and entered into a settlement agreement pursuant to which SAP took a license to the patents-in-suit.

15. Additionally, as this Court is aware, ePlus and Defendant Verian Technologies have settled their dispute in this action and have entered into a Stipulation of Dismissal.

16. As noted above, ePlus is a relatively small company as it pertains to the eProcurement market. In order to effectively compete in this marketplace, ePlus must enforce its patent rights to exclude infringers. Only in this way can ePlus level the playing field and achieve the market share it should be entitled to because it owns the pioneering patents in this area. Indeed, ePlus has obtained in excess of $54 million in royalties associated with the three patents-in-suit.

17. ePlus has been actively prosecuting reexamination of the '683 Patent for over three years now and, I understand, the process may have many more stages before it will be completed. Because of the extended length of time that I understand reexamination proceedings take to complete, it would be unduly prejudicial to ePlus and its licensees to have this case stayed indefinitely while reexaminations are pending. The Defendants would be permitted to engage in

5

unauthorized competition with *e*Plus and its licensees during the period of the stay. The prejudice is all the more serious considering that in the normal course, as I understand it, both the *inter partes* reexamination of the '172 Patent, if granted, and the *ex parte* reexamination of the '683 Patent will extend until late in the life of each patent and possibly thereafter. The stay would effectively negate *e*Plus's right to an injunction to exclude our competitors from infringement, and would be unfair to our licensees who have paid for the right to use *e*Plus's patent inventions.

.

6

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28 day of July, 2009 in Washington, D.C.

Kenneth G. Farber

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

FILED IN OPEN COURT

FEB – 7 2006

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

ePLUS, INC., )
)
Plaintiff, )
)
v. ) 1:04cv612 (LMB/BRP)
)
ARIBA, INC., )
)
Defendant. )

## SPECIAL VERDICT FORM

We, the jury, unanimously find as follows:

I.    **INFRINGEMENT**

As to each question in Sections I and II, a "Yes" answer is a finding for ePlus, Inc., and a "No" answer is a finding for Ariba, Inc.

A.    **Direct Infringement**

Do you find that ePlus, Inc. has shown by a preponderance of the evidence that Ariba, Inc. has directly infringed any of the following asserted claims?

<u>Patent '683</u>

Claim 1 (independent)       YES  ✓        NO _____

Claim 14 (independent)      YES  ✓        NO _____

Claim 31 (independent)      YES  ✓        NO _____

<u>Patent '516</u>

Claim 16 (independent)      YES  ✓        NO _____

Claim 17 (dependent)        YES  ✓        NO _____

Claim 21 (independent)      YES  ✓        NO _____

Patent '172

Claim 1 (independent)          YES ___✓___     NO _____

Claim 5 (dependent)            YES ___✓___     NO _____

**B.     Indirect Infringement**

Do you find that ePlus, Inc. has shown by a preponderance of the evidence that Ariba,

Inc. has induced others to infringe any of the following asserted claims?

Patent '683

Claim 1 (independent)          YES ___✓___     NO _____

Claim 14 (independent)         YES ___✓___     NO _____

Claim 31 (independent)         · YES ___✓___    NO _____

Patent '516

Claim 16 (independent)         YES ___✓___     NO _____

Claim 17 (dependent)           YES ___✓___     NO _____

Claim 21 (independent)         YES ___✓___     NO _____

Patent '172

Claim 1 (independent)          YES ___✓___     NO _____

Claim 5 (dependent)            YES ___✓___     NO _____

**II.     WILLFULNESS**

**A.**     If you have found that Ariba, Inc. has infringed or that it has induced infringement

of at least one claim of the '683 patent, do you find by clear and convincing

evidence that Ariba, Inc. willfully infringed or induced infringement of the '683

patent?

YES ___✓___     NO _____

**B.**     If you have found that Ariba, Inc. has infringed or that it has induced infringement

of at least one claim of the '516 patent, do you find by clear and convincing

evidence that Ariba, Inc. willfully infringed or induced infringement of the '516 patent?

YES __✓__     NO _____

C.    If you have found that Ariba, Inc. has infringed or that it has induced infringement of at least one claim of the '172 patent, do you find by clear and convincing evidence that Ariba, Inc. willfully infringed or induced infringement of the '172 patent?

YES __✓__     NO _____

## III.    VALIDITY

As to each question, a "Yes" answer is a finding for Ariba, Inc., and a "No" answer is a finding for ePlus, Inc.

### A.    Anticipation

Do you find that Ariba, Inc. has shown by clear and convincing evidence that any of the following claims is invalid due to anticipation?

Patent '516

If you answer "No" with respect to independent claim 16, then you must also answer "No" with respect to dependent claim 17.

Claim 16 (independent)    YES __~~XXX~~__    NO __✓__  _claim is valid_

Claim 17 (dependent)    YES __~~XXX~~__    NO __✓__  _Claim is valid_

Patent '172

Claim 1 (independent)    YES _____    NO __✓__  _claim is valid_

### B.    Invalidity of Claims Due to Obviousness

Do you find that Ariba, Inc. has shown by clear and convincing evidence that any of the following claims is invalid due to obviousness?

-3-

Patent '683

Claim 1 (independent)          YES _____          NO ___✓___

Claim 14 (independent)         YES _____          NO ___✓___

Claim 31 (independent)         YES _____          NO ___✓___

Patent '516

Claim 21 (independent)         YES _____          NO ___✓___

Patent '172

Claim 5 (dependent)            YES _____          NO ___✓___

*claims are valid*

Dated: ___2 / 7 / 05___

FOREPERSON

*Ernest E. Martinez*

PRINTED NAME

-4-