# TAB 3



Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
(Cite as: 2009 WL 437703 (D.Or.))

Page 1

▷Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
CONSTRUCTION EQUIPMENT COMPANY, an
Oregon corporation; and Roger G. Smith, a resident of
Oregon, Plaintiffs,
v.
POWERSCREEN INTERNATIONAL DISTRIBU-
TION, LTD., a corporation of Northern Ireland;
Powerscreen of America, Inc., a Kentucky corpora-
tion; Powerscreen of Washington, Inc., a Washington
corporation; and Powerscreen of Northern California,
a California corporation, Defendants.
No. 96-CV-1574-AC.

Feb. 19, 2009.

West KeySummary
Patents 291 ☞317

291 Patents
     291XII Infringement
          291XII(C) Suits in Equity
               291k317 k. Permanent Injunction. Most
Cited Cases
A manufacturer and designer of mobile screening was
not entitled to stay enforcement of a permanent in-
junction that prevented the manufacturer from in-
fringing upon certain patents of a competitor based on
a significant change in factual conditions. The manu-
facturer alleged that rejection by the Patent and
Trademark Office (PTO) of the competitor's patent
claims constituted a significant change in the factual
conditions on which the permanent injunction was
based. However, the PTO's rejection of the relevant
claims regarding the patent was only the first step in
establishing whether the patent was enforceable, and
was not a sufficient change to require a stay of the
permanent injunction.

ORDER

BROWN, Judge.

*1 Magistrate Judge James V. Acosta issued Findings
and Recommendation (# 608) on October 20, 2008, in
which he recommends the Court deny Defendants'
Rule 60(b) Motion (# 593) to Stay Enforcement of
Permanent Injunction. Defendants filed timely Ob-
jections to the Findings and Recommendation. The
matter is now before this Court pursuant to 28 U.S.C.
§ 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magis-
trate Judge's Findings and Recommendation, the dis-
trict court must make a *de novo* determination of that
portion of the Magistrate Judge's report. 28 U.S.C. §
636(b)(1). *See also United States v. Reyna-Tapia*, 328
F.3d 1114, 1121 (9th Cir.2003)(*en banc); United
States v. Bernhardt*, 840 F.2d 1441, 1444 (9th
Cir.1988).

I. Background

Plaintiff Construction Equipment Company (CEC) is
the owner of Patent No. 5,234,564 ('564 Patent). In
1996 CEC and Plaintiff Roger G. Smith, Chairman of
the Board of CEC and inventor of the patented device,
filed this action against various Defendants alleging
they were selling a machine that infringed on the '564
Patent.

On February 6, 1997, Magistrate Judge Donald C.
Ashmanskas [FN1] found the '564 Patent is not invalid
and rejected Defendants' claims that the '564 Patent
was anticipated and that the '564 Patent is obvious
based on prior art. Magistrate Judge Ashmanskas
concluded Defendants' device infringes the '564 Pat-
ent. Magistrate Judge Ashmanskas issued a prelimi-
nary injunction prohibiting Defendants from manu-
facturing, offering for sale, selling, or using any
equipment that infringes any of the claims of the '564
Patent.

> FN1. On November 25, 1996, all parties
> consented to proceeding in this matter before
> a Magistrate Judge (# 13).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Magistrate Judge Ashmanskas addressed the issues of prior art again in his June 11, 1998, Opinion and Order and found Claims One and Two of the '564 Patent are not invalid as anticipated by prior art and that Claims Five, Seven, and Eight are not invalid as obvious.

After a five-day jury trial, the jury rendered a Verdict in favor of Plaintiffs. On July 27, 1999, Magistrate Judge Ashmanskas entered a Final Judgment that Claims One, Two, and Five through Eight are not invalid, are enforceable, and were willfully infringed by Defendants. Magistrate Judge Ashmanskas permanently enjoined Defendants from infringing Claims One, Two, and Five through Eight of the '564 Patent. Defendants appealed, and the Federal Circuit affirmed on September 13, 2000.

On January 26, 2007, Defendants filed a request for reexamination of the '564 Patent with the Patent and Trademark Office (PTO) and asserted the '564 Patent is invalid based on prior art not considered by the PTO at the time of its original examination of the '564 Patent.

On January 10, 2008, the PTO rejected Claims One, Two, and Five through Eight of the '564 Patent. On May 9, 2008, Plaintiffs appealed the PTO ruling to the Board of Patent Appeals and Interferences (Board). Plaintiffs' appeal is still pending.

On August 19, 2008, Defendants filed a Motion to Stay Enforcement of Permanent Injunction based on the January 10, 2008, ruling of the PTO.

**\*2** As noted, Magistrate Judge Acosta [FN2] recommends denying Defendants' Motion. Defendants filed timely Objections asserting (1) Magistrate Judge Acosta applied an incorrect legal standard; (2) equity demands a stay of the permanent injunction; (3) a significant change in circumstances requires a stay of the permanent injunction; and (4) *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), constitutes a significant change in law that requires a stay of the permanent injunction.

> FN2. On September 3, 2008, this matter was reassigned from Magistrate Judge Ashmankas to Magistrate Judge Acosta. On Oc-

tober 8, 2008, Magistrate Judge Acosta issued an Order in which he directed the parties in this matter to inform him of "their decision regarding proceeding to conclusion of this matter before a U.S. Magistrate Judge."All parties did not file a second consent to proceed before a Magistrate Judge. Accordingly, Magistrate Judge Acosta issued a Findings and Recommendation and referred it to this Court. Pursuant to 28 U.S.C. § 636(c)(4), this Court finds good cause for the procedure Magistrate Judge Acosta offered to the parties upon his assignment to this matter. The Court, therefore, reviews this Findings and Recommendation accordingly.

**II. Appropriate legal standard.**

As Magistrate Judge Acosta properly noted, relief under Federal Rule of Civil Procedure 60(b)(5) is appropriate when " 'the party seeking relief from an injunction ... [meets its initial burden by showing] a significant change either in factual conditions or in law.'" *See Flores v. Ariz.,* 516 F.3d 1140, 1163 (9th Cir.2008)(quoting *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)). Although Defendants do not assert the *Flores* standard is inappropriate, they contend Magistrate Judge Acosta improperly applied the standard because he "impose[d] ... unnecessarily strict and inappropriate, standards on [Defendants'] present motion."Specifically, Defendants assert Magistrate Judge Acosta interpreted the *Flores* standard to allow modifications under Rule 60(b)(5)*only if* certain factors are present even though the *Flores* court merely held modifications under Rule 60(b)(5)*may be* warranted if certain factors are present.

Defendants also assert Magistrate Judge Acosta erred when he applied the standard set forth in *Federal Deposit Insurance Corporation v. Former Officers and Directors of Metropolitan Bank,* 705 F.Supp. 505 (D.Or.1987), because that standard was overruled in *Bellevue Manor Associates v. United States,* 165 F.3d 1249, 1254-57 (9th Cir.1999).

**A. *Flores* standard.**

Magistrate Judge Acosta found when a party has es-

tablished the existence of a significant change in either factual conditions or in law,

relief is appropriate *only if:* 1) the changes make compliance with the injunction "substantially more onerous;" 2) the injunction "proves to be unworkable because of unforeseen obstacles," or 3) enforcement of the injunction "would be detrimental to the public interest."

Findings and Recommendation at 3 (quoting *Flores,* 516 F.3d at 1163) (emphasis added). As noted, Defendants, relying on *Flores,* contend modifications under Rule 60(b)(5) *"may be"* warranted" if one of the above factors is present rather than *"only if."* The Court agrees "may be warranted" is the appropriate standard when a party establishes one of the above factors is present. *See Flores,* 516 F.3d at 1163. Here, however, Magistrate Judge Acosta considered the factors listed; concluded those factors are not present in this case; and, therefore, recommended the Court, in the exercise of its discretion, deny Defendants' Motion. Defendants have not shown how the application of the "may be" standard would change the Magistrate Judge's analysis.

**B. Reliance on *Federal Deposit Insurance Company* standard.**

*3 As noted, Defendants also assert Magistrate Judge Acosta improperly relied on the standard set out in *Federal Deposit* on the ground that the standard set out in *Federal Deposit* was overruled by *Bellevue.* Plaintiffs, in turn, dispute the standards in *Federal Deposit* were overruled.

Magistrate Judge Acosta noted relief should only be granted under Rule 60(b)(5) as follows:

While the language of either [Rule 60(b)(5) or (6) ] is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments...." Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances." Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenu-

ated to a shadow," and that, absent such relief an "extreme" and "unexpected" hardship will result. We think a healthy respect for the finality of judgments demands no less. *Federal Deposit Ins. Corp. v. Former Officers and Directors of Metro. Bank,* 705 F.Supp. 505, 511 (D.Or.1987)(citing *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977) (citations omitted).

Findings and Recommendation at 4. In *Bellevue Manor,* the Ninth Circuit explicitly overruled the "three-part test that a party must meet to gain relief under ...Rule 60(b)(5)" that was announced in *Transgo Incorporated v. Ajac Transmission Parts Corporation,* 911 F.2d 363, 365 (9th Cir.1990). *Bellevue,* 165 F.3d at 1256. The *Transgo* test required a party to establish
(1) a substantial change in circumstances or law since the order was entered;

(2) extreme and unexpected hardship in compliance with the order; and

(3) a good reason why the court should modify the order.

*Id.* at 1254.The Ninth Circuit concluded in Bellevue that the "Supreme Court's most recent decision in *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) support[s] the implied abrogation of *Transgo* and the adoption of a more flexible standard for evaluating motions ... [under] Rule 60(b)(5)."*Id.* at 1256.Plaintiffs, however, point out in their Response to Defendants' Objections that the court in *Federal Deposit* did not rely on the standards set out in *Transgo* but instead relied on the standards set out in *Mayberry v. Maroney,* a Third Circuit case that has not been overruled by the Third Circuit. According to Plaintiffs, therefore, *Bellevue* did not overrule *Federal Deposit.*

After reviewing the Findings and Recommendation and the relevant law, the Court concludes Magistrate Judge Acosta applied the proper standard as set out in *Agostini* even though he noted the *Federal Deposit* case. Accordingly, the Court finds Magistrate Judge Acosta applied the correct legal standard.

**III. Equitable stay of permanent injunction.**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Defendants contend Magistrate Judge Acosta erred when he failed to conclude equity demands a stay of the permanent injunction in this matter. The Court notes Defendants raised the same argument in their Motion and Reply, and Magistrate Judge Acosta explicitly addressed that argument in his Findings and Recommendation. Nevertheless, Defendants contend Magistrate Judge Acosta did not sufficiently consider the "basic fairness of granting [Defendants'] motion." Defendants assert they "will be irreparably harmed [without a stay] during a time when the patent which forms the very basis of the injunction is invalid.... On the other hand, staying the permanent injunction does not harm CEC [because it can be] readily compensated in the unlikely event it overcomes the PTO's invalidity determination on appeal."

*4 Magistrate Judge Acosta analyzed Defendants' contention that the decision of the PTO renders the '564 Patent invalid and noted "[t]he PTO's rejection of the relevant claims is only the first step to establishing that the Patent is no longer enforceable."Findings and Recommendation at 5. Magistrate Judge Acosta noted Defendants relied on _Standard Havens Products v. Gencor Industries, Incorporated,_ No. 93-1208, 1993 WL 172432 (Fed.Cir. May 21, 1993), a 1993 unpublished Federal Circuit case that, pursuant to Federal Circuit Rule 32.1, has no binding or precedential effect. Nevertheless, Magistrate Judge Acosta analyzed _Standard Havens_ and concluded it was distinguishable. Even if _Standard Havens_ were not distinguishable, Magistrate Judge Acosta found it supported a finding that staying the permanent injunction in this matter is not appropriate. In particular, Magistrate Judge Acosta noted the Federal Circuit in its opinion in _Standard Havens_ after the appeal following remand held a stay of the appellate proceedings was not appropriate even though the PTO had rejected certain claims of the patent on reexamination because

the [PTO's] May 10, 1991 reexamination decision ... rejecting the subject claims is subject to judicial review. 35 U.S.C. §§ 141, 145 (1988). In that sense, it is not a final adjudication of the matter. See 35 U.S.C. § 307(a) (1988)("In a reexamination proceeding ... when the time for appeal has expired or any appeal proceeding has terminated, the Commissioner will issue and publish a certificate can-

celing any claim of the patent finally determined to be unpatentable ...."). Second, Standard Havens stated in its supplemental brief that it intends to institute a civil action in the district court under 35 U.S.C. § 145 challenging the [PTO's] adverse reexamination decision. Hence, it may be many months before the reexamination matter is finally adjudicated. Finally, we note that the [PTO's] reexamination proceeding considering patentability and the district court's infringement suit considering validity are distinct proceedings, with different records and different standards of proof. See _Ethicon, Inc. v. Quigg,_ 849 F.2d 1422, 1427 (Fed.Cir.1988)(citing _In re Etter,_ 756 F.2d 852, 856 (Fed.Cir.1985).

953 F.2d 1360, 1366 n. 2 (Fed.Cir.1991).

In their Objections, Defendants rely on two cases that they did not argue before Magistrate Judge Acosta to support their assertion that equity demands a stay in this matter: _Life Technologies, Inc. v. Promega Corp.,_ 189 F.R.D. 334 (D.Md.1999), and _Dusa Pharmaceuticals, Inc. v. River's Edge Pharmaceuticals, LLC,_ No. 06-1843, 2007 WL 748448 (D.N.J. Mar.7, 2007). These cases, however, are distinguishable from this matter.

In _Promega Corp._, the court permanently enjoined the defendant from infringing Patent No. 5,244,797 ('797 Patent). 189 F.R.D. at 335. In a later case (_Life Technologies, Inc. v. Clontech Laboratories, Inc._) that did not involve the defendant, the court held the '797 Patent was unenforceable due to inequitable conduct. _Id._ In _Promega Corp._, the defendant moved for relief from the permanent injunction under Rule 60(b)(5) based on the court's ruling of unforceability of the '797 Patent in _Clontech. Id._ The court granted the defendant's motion on the ground that the permanent injunction was no longer equitable because other companies could practice the ' 797 Patent based on the court's ruling in _Clontech,_ but the defendant was still prohibited from doing so under the permanent injunction. _Id._ at 339.Because there has not been a final adjudication of the validity of the '564 Patent in this case, however, the Court has not found the '564 Patent to be unenforceable. In fact, the only ruling regarding the '564 Patent in this Court is the '564 Patent is not invalid.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

Page 5

*5 In *Dusa Pharmaceuticals,* the court issued a preliminary injunction enjoining the defendant from manufacturing, selling, or importing its allegedly infringing products. 2007 WL 748448, at *1. While litigation was pending, the defendant sought reexamination of the patent. *Id.,* at *2. The Board of Patent Appeals and Interferences granted the request and issued an "Office Action" rejecting all of the claims of the patent. *Id.* The defendant then moved to dissolve the preliminary injunction, and the court granted the defendants' motion. *Id.,* at *5. Because *Dusa* involved a preliminary injunction rather than a permanent injunction, and the showing required for a preliminary injunction is less rigorous than that for a permanent injunction, the defendant in *Dusa* was only required to establish changed circumstances rather than a *significant* change in circumstances. In addition, the defendant in *Dusa* established the plaintiffs' likelihood of success on the merits had decreased. Here the issue of likelihood of success on the merits is irrelevant because the matter has already been tried and a Judgment has been entered. Accordingly, the Court does not find *Dusa* persuasive under the facts of this case.

Finally, the Court notes Defendants assert they will be irreparably harmed if a stay is not entered because the PTO found claims of the '564 Patent are invalid, and, therefore, Defendants allegedly are "the only competitor[s] that cannot practice the invention claimed in the '564 Patent."This argument is unpersuasive because the decision of the PTO is not final and the '564 Patent cannot be considered invalid under 35 U.S.C. § 282 until pending appeals are complete. Accordingly, no competitors can practice the claimed invention without risk of violating Plaintiffs' patent at this time. As to Defendants' assertion Plaintiffs will not be harmed by a stay, Defendants fail to explain why Plaintiffs will be any less harmed by the stay than they would have been if the Court had not issued the permanent injunction in the first place.

In summary, this Court has considered Defendants' Objections as to the equity of a stay of the permanent injunction and concludes they do not provide a basis to modify the Findings and Recommendation as to this issue. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error

in Magistrate Judge Acosta's Findings and Recommendation as to the equity issue.

**IV. Significant change in factual conditions.**

In their Objections, Defendants reiterate the argument asserted in their Motion and Reply that the PTO's rejection of the '564 Patent claims constitutes a significant change in the factual conditions on which the permanent injunction was based, and, therefore, the Court should grant Defendants' Motion to Stay.

As noted, Magistrate Judge Acosta found, and this Court agrees, the PTO's rejection of the relevant claims of the '564 Patent is only the first step in establishing whether the '564 Patent is enforceable. On that basis, Magistrate Judge Acosta concluded the PTO's rejection does not constitute a significant change in the factual conditions sufficient to require a stay of the permanent injunction.

*6 This Court has considered Defendants' Objection as to the effect of the PTO's decision and concludes it does not provide a sufficient basis to modify the Findings and Recommendation as to this issue. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the issue of a significant change in circumstances.

**V. Effect of *eBay.***

In their Reply, Defendants asserted "federal patent law has changed since issuance of the permanent injunction in this case such that the injunction against [Defendants] may not have been an appropriate remedy under present law."Defendants note in *eBay,* the Supreme Court abrogated the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." 547 U.S. at 393. The Court set out a four-factor test that must be met before a court can grant a permanent injunction:

A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                           Page 6
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

balance of hardships between the plaintiff and de-
fendant, a remedy in equity is warranted; and (4)
that the public interest would not be disserved by a
permanent injunction. The decision to grant or deny
permanent injunctive relief is an act of equitable
discretion by the district court, reviewable on appeal
for abuse of discretion.

*Id.* at 391.

Defendants asserted in their Reply that "the Court
[here] did not have the benefit of *eBay* when issuing
the permanent injunction against [Defendants].... As
such, the permanent injunction may presently be im-
permissible under federal law."

Magistrate Judge Acosta addressed this argument and
concluded even though Magistrate Judge Ashmanskas
did not have the benefit of *eBay* when he granted
Plaintiffs' Motion for Permanent Injunction, he con-
sidered the threat of irreparable harm, the balance of
hardships, and that Plaintiffs would irrevocably suffer
the loss of customer contacts and goodwill in addition
to monetary losses and, in the end, concluded those
factors favored Plaintiffs. Magistrate Judge Acosta,
therefore, found the initial decision to issue a perma-
nent injunction in this matter was not impermissible
under the law at that time nor later under *eBay.* This
Court agrees and, in the exercise of its discretion, finds
*eBay* does not present such a significant change in the
law as to warrant a stay of the permanent injunction at
this stage.

In summary, this Court has considered Defendants'
Objection as to the effect of *eBay* and concludes it
does not provide a basis to modify the Findings and
Recommendation as to this issue at this time. The
Court also has reviewed the pertinent portions of the
record *de novo* and does not find any error in Magis-
trate Judge Acosta's Findings and Recommendation as
to the issue of a significant change in the law.

## CONCLUSION

*7 The Court **ADOPTS** Magistrate Judge Acosta's
Findings and Recommendation (# 607) and, therefore,
**DENIES** Defendants' Rule 60(b) Motion (# 593) to
Stay Enforcement of Permanent Injunction.

IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Construction Equipment Company ("CEC") is the
owner of United States Patent No. 5,234,564 for a
compact, transportable machine that sorts bulk mate-
rial (the "Patent"). In the fall of 1996, CEC and Roger
G. Smith, the Chairman of the Board of CEC and the
inventor of the machine ("Plaintiffs"), filed this action
against various Powerscreen entities ("Powerscreen")
alleging that they were selling a machine that in-
fringed on the Patent.

On February 6, 1997, the court found the Patent valid
and rejected Powerscreen's claims that the Patent was
anticipated and obvious based on prior art, and that
Powerscreen's machine was infringing on the Patent.
The court issued a preliminary injunction prohibiting
Powerscreen from manufacturing, offering for sale,
selling or using any equipment which infringes upon
any of the claims of the Patent. The court again ad-
dressed the issues of prior art in an Opinion entered
June 11, 1998, finding that Claims One and Two were
not invalid as anticipated by prior art and that Claims
Five, Seven and Eight were not invalid as obvious
from a combination prior art and a machine designed,
marketed and sold by Powerscreen.

After a five-day jury trial, the court entered a verdict in
favor of Plaintiffs on April 9, 1999, and on July 27,
1999, entered a final judgment that Claims One, Two,
and Five through Eight were valid, enforceable and
willfully infringed by Powerscreen and permanently
enjoining Powerscreen from infringing on these
claims of the Patent. Powerscreen appealed to the
Federal Circuit, which affirmed the trial court's ruling
on September 13, 2000.

On January 26, 2007, Powerscreen filed a request for
reexamination of the Patent with the Patent and
Trademark Office ("PTO") asserting that the Patent is
invalid based on published prior art not considered by

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the PTO at the time of the original examination of the Patent. On January 10, 2008, the PTO rejected Claims One, Two, and Five through Eight, as well as some other claims, and advised Plaintiffs on May 5, 2008, that, in the absence of an appeal, the reexamination would be closed. Plaintiffs appealed the PTO ruling on May 9, 2008, to the PTO's Board of Patent Appeals and Interferences ("Board"). The appeal remains pending.

Currently before the court is Powerscreen's motion to stay enforcement of the permanent injunction pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Powerscreen argues that prospective enforcement of the injunction is inequitable based on the PTO's rejection of the infringed claims. Powerscreen also argues that the stay is justified by a change in the factors to be considered by the court when issuing a injunction in a patent infringement action.

*Legal Standard*

\*8 A party may seek relief from a final judgment, order or proceeding under specific circumstances set forth in Rule 60 of the Federal Rules of Civil Procedure. Rule60(b)(5) provides that on a motion filed by the party and upon such terms as are just, a court may relieve a party from a judgment when "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable." Fed.R.Civ.P. 60(b)(5).

Relief under Rule 60(b)(5) is appropriate when a party seeking relief from an injunction can show "a significant change either in factual conditions or in law." *Agostini v. Felton, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)*(quoting *Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)*). The change in law may be supported by a subsequent change to either statutory or decisional law. *Agostini, 521 U.S. at 215.* Once a party has established the existence of a significant change, relief is appropriate only if: 1) the changes make compliance with the injunction "substantially more onerous;" 2) the injunction "proves to be unworkable because of unforeseen obstacles," or 3) enforcement of the injunction "would be detrimental to the public interest." *Flores v. Arizona, 516 F.3d*

1140, 1163 (9th Cir.2007)(quoting *Rufo, 502 U.S. at 384* (citations omitted)). The court is obligated to modify an injunction if it "becomes impermissible under federal law." *Id.* (quoting *Rufo, 502 U.S. at 388*).

This district has held that relief should be granted under Rule 60(b)(5) only in exceptional circumstances:

> While the language of either [Rule 60(b)(5) or (6) ] is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments...." Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances." Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenuated to a shadow," and that, absent such relief an "extreme" and "unexpected" hardship will result. We think a healthy respect for the finality of judgments demands no less.

*Federal Deposit Ins. Corp. v. Former Officers and Directors of Metro. Bank, 705 F.Supp. 505, 511 (D.Or.1987)*(citing *Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977)* (citations omitted).

*Discussion*

Powerscreen asserts that it is entitled to a stay of the injunction based on a significant change in both factual conditions and in the law. Specifically, Powerscreen contends that "it is inequitable to continue to enjoin Powerscreen from any activity based on patent claims that are not valid and enforceable."(Mem. Supp.Def.'s Rule 60(b) Mot. Stay Enforcement Permanent Inj. at 2.) Plaintiffs contend that the PTO's rejection of the relevant claims of the Patent is preliminary in nature and does not represent a change in facts until all avenues of appeal are exhausted and the rejection is affirmed by the Federal Circuit Plaintiffs also argue that because the application for reexamination based on art which existed at the time the Patent was issued was not filed for more than seven years after the permanent injunction was issued, Powerscreen's motion to stay is untimely.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**\*9** Powerscreen's argument relies on its assertion that the PTO's initial rejection of the relevant claims makes the claims invalid and unenforceable and that such rejection constitutes a significant change in the landscape of the litigation between the parties. The court disagrees.

The PTO's rejection of the relevant claims is only the first step to establishing that the Patent is no longer enforceable. Plaintiffs have appealed the PTO's ruling to the Board, which has not yet reviewed the rejection of the relevant claims. Once the Board issues its decision, Plaintiffs may then appeal the Board's ruling to the Federal Circuit. 35 U.S.C. § 306. Only after the time for appeal has expired or any appeal proceeding has terminated will a "certificate canceling any claim of the patent finally determined to be unpatentable" be issued and published. Thus, although the PTO's rejection of the relevant claims is termed a "final rejection," it is not a final decision.

The situation currently before the court is comparable to that before the district court in *Agostini,* in which the Supreme Court held that a district court should not second guess the Supreme Court and set aside an injunction even if the district court is convinced that the Supreme Court ruling supporting the injunction no longer is good law. In *Agostini,* the petitioners sought to set aside an injunction entered by the district court on remand reflecting the ruling of the United States Supreme Court in *Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985). *Agostini,* 521 U.S. at 208. The petitioners argued that recent Supreme Court cases addressing the Establishment Clause effectively overruled *Aguilar,* making the prospective enforcement of the injunction inequitable. *Id.* at 209. The district court acknowledged that the "landscape of Establishment Clause decisions has changed" and that "there may be good reason to conclude that *Aguilar's* demise is imminent," but refused to set aside the injunction in the absence of a clear statement from the Supreme Court that *Aguilar* was no longer good law. *Id.* at 214 (quoting App. to Pet. for Cert. in No. 96-553, p. A10, A20). The circuit court affirmed, adopting the district court's analysis. *Id.* at 214. Given the opportunity to squarely address the effect of the recent contrary case law, the Supreme Court concluded that Establishment Clause law had changed so

significantly that petitioners were entitled to the relief requested under Rule 60(b)(5). *Id.* at 237. The Court then praised the district court's restraint in not viewing the contrary case law as overruling *Aguilar,* explaining that only the Supreme Court had the prerogative to overrule its own decisions:

> The trial court acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.

**\*10** *Id.* at 238.

Here, the Federal Circuit has already held that Claims One, Two and Five through Eight of the Patent are valid, enforceable and being infringed by Powerscreen. The PTO has reconsidered the issuance of the Patent in light of prior art which existed but was not before the court at the time the injunction was entered. That decision is subject to an appeal to the Board and then to the Federal Circuit. Like the district court in *Agostini,* this court acknowledges that the PTO's rejection of the relevant claims does raise issues with regard to the enforceability of the relevant claims. Like the district court in *Agostini,* this court is not in a position to second guess whether the Federal Circuit will agree with the PTO rejection once it has a chance to consider the newly offered prior art. Like the district court in *Agostini,* this court is not convinced that it has the authority to usurp a higher court's authority to overrule its own precedent on this issue.

The court is not persuaded otherwise by *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* No. 93-1208, 1993 WL 172432, at\* 1 (Fed.Cir. May 21, 1993), in which the Federal Circuit held that the district court erred by not staying a permanent injunction after a reexamination decision of unpatentability was issued. As an initial observation, the opinion is a nonprecedential opinion issued prior to January 1, 2007, and, therefore, should not have been cited by Powerscreen. Fed. Cir. R. Rule 32.1. *See also Ultrak Inc. v. Radio Engineering Industries, Inc.,* 52 U.S.P.Q.2d 1530, 1531 (N.D.Tex.1999)(*Standard Havens* "is a nonprecedential opinion...."). Next, it appears that the district court in *Standard Havens* was addressing the issue of whether to continue a stay of a

permanent injunction entered by the Federal Circuit, not stay an injunction already in place and affirmed by the appellate court. Finally, the issues of damages and enjoinability had not yet been resolved at the time the reexamination proceeding was initiated in *Standard Havens.* Here, the district court had completed the trial, issued the permanent injunction and imposed damages; the matter had been appealed to the Federal Circuit, which affirmed the district court; and the injunction has been in place for more than seven years. The factual scenario before the court in *Standard Havens* is clearly distinguishable from that presently before the court.

Even if the court assumes that *Standard Havens* is not distinguishable from the case at hand, the language of the *Standard Havens* and the underlying opinions actually supports a finding that a stay of the permanent injunction is not appropriate under the circumstances. After a trial by jury, the district court in *Standard Havens* found the patent at issue to be valid and infringed, awarded nearly $6,000,000 dollars in damages to the plaintiff on the infringement claims and entered a permanent injunction against the defendant on August 8, 1989. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 953 F.2d 1360, 1365 (Fed.Cir.1992). The defendant immediately appealed the judgment to the Federal Circuit and moved to stay the execution of the judgment and imposition of the injunction relying, at least in part, on a reexamination proceeding of the patent based on previously undisclosed prior art initiated on July 10, 1989. The Federal Circuit considered the motion under Rule 8(a) of the Federal Rules of Appellate Procedure, addressed the defendant's chances for success on appeal, weighed the equities with regard to the both the parties and the public, and granted the defendant's motion to stay. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 897 F.2d 511, 513, 515 (Fed.Cir.1990).

*11 Concerned about whether a consideration of the substantive issues on appeal should be stayed pending a final decision on the reexamination of the patent, the Federal Circuit asked the parties to brief the issue. Neither party argued in support of a stay and, in a second opinion in the case, the Federal Circuit found that a stay of the appellate proceedings was not appropriate, explaining that:

First, the Board's May 10, 1991, reexarnination decision (reconsideration denied September 27, 1991) rejecting the subject claims is subject to judicial review. 35 U.S.C. §§ 141, 145 (1988). In that sense, it is not a final adjudication of the matter. *See* 35 U.S.C. § 307(a) (1988). ("In a reexamination proceeding ... when the time for appeal has expired or any appeal proceeding has terminated, the Commissioner will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable....") Second, Standard Havens stated in its supplemental brief that it intends to institute a civil action in the district court under 35 U.S.C. § 145 challenging the Board's adverse reexarnination decision. Hence, it may be many months before the reexamination matter is finally adjudicated. Finally, we note that the Board's reexarnination proceeding considering patentability and the district court's infringement suit considering validity are distinct proceedings, with different records and different standards of proof. (citation omitted).

*Standard Havens,* 953 F.2d at 1366 n. 2. The Federal Circuit then addressed the substantive issues on appeal, including the issue of whether the trial court erred in not granting the defendant's motion for new trial based on the withdrawal by the PTO of a Certificate of Correction offered at trial. The trial court reasoned that:

In the absence of a final ruling on this issue [*i.e.,* the reexamination proceeding] by the patent office, the pending proceeding with regard to the Certificate of Correction does not yet rise to the level of "new evidence" as would justify that the judgment be vacated under Fed.R.Civ.P. 60. Therefore, defendant's motion for a new trial on this ground is denied.

The Federal Circuit upheld the trial court's denial of the motion finding that:

Because of the pendency of the reexamination proceeding at the time of the district court opinion, we do not regard the trial court's denial of a new trial as an abuse of its discretion. We leave open the question of whether a Fed.R.Civ.P. 60(b)(2) motion should be granted after a final ruling on appeal of the PTO Board's reexamination decision.

*Id.* at 1372. The Federal Circuit affirmed the district

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

court's judgment that me patent was valid and in-fringed but remanded the action to the trial court to reconsider the amount of the damage award. *Id.* at 1376.

The Federal Circuit ordered the stay of the injunction to remain in effect until the district court was able to consider whether continuation of the injunction was appropriate. The Federal Circuit directed the district court to take into account the unique fact that while the appeal was pending, the PTO issued a reexamination decision rejecting a number of claims in the patent. *Standard Havens Products, Inc., v. Gencor Industries, Inc., 810 F.Supp. 1072, 1073 (W.D.Mo.1993).*

*\*12* On remand, the defendant argued that if it is fi-nally determined that the PTO's rejection of the claims was appropriate, "the patent would be void *ab initio,* thereby removing the basis for this Court's earlier judgment." *Id. at 1074.*The district court rejected the argument, reasoning that both the district court and the Federal Circuit had found that the patent was valid and infringed and that it was time to award the plaintiff a final judgment on the matter. The district court stated that it was unable to find any controlling authority establishing "if it is judicially and finally determined, in a separate proceeding, that the patent in question is invalid, the patent would be void *ab initio,* thereby effectively voiding this Court's earlier judgment" and encouraged the Federal Circuit to "squarely address" and announce whether that was the intended result of the reexamination statute. *Id. at 1074 n. 3, 1076.*The district court then weighed the equities and denied the defendant's motion for a continued stay. *Id. at 1077.*

Defendant again appealed the district court ruling to the Federal Circuit, which found that the district court erred in denying the motion to continue the stay. The Federal Circuit announced that if it upheld the PTO's rejection of the claims, the injunction would become immediately inoperative. *Standard Havens Products, Inc. v. Glencor Industries, Inc., No. 93-1208, 1993 WL 172432 at \*1 (May 21, 1993).* The Federal Circuit then sidestepped the issue the district court invited it to address stating that:

if a final decision of unpatentability means the patent was void *ab initio,* then damages would also be precluded. Therefore, the injunction should have

been stayed. Thus, in either event, contrary to the assumption of the trial court, the reexamination proceeding "would control" the infringement suit.

*Id.* The Federal Circuit discussed what would happen if a patent that was finally determined to be invalid in a reexamination proceeding was considered void *ab initio* without declaring that such was the case. The Federal Circuit then clearly limited its holding to cases in which the issue of damages and injunctive relief were resolved in a final judgment:

To preserve the status quo pending finality of the section 145 action, the damages proceeding should also have been stayed. The issues of damages and enjoinability in this suit still being unresolved, de-spite trial and proper appeal, we do not regard the issues of patent validity and infringement as having been incorporated into a final judgment that would moot the issue of a stay pending completion of the section 145 suit.

*Id.* This limitation was later acknowledged by the Federal Circuit when the court distinguished the case before it from *Standard Havens* noting that in *Stan-dard Havens,*"the infringement litigation was then pending and the validity of the patents was directly in issue."*Ultrak, Inc., 52 U.S.P.Q.2d at 1531.*

*\*13* The Federal Circuit appeared to state that, if the injunction was part of a final judgment, the question of whether the injunction should be stayed pending completion of the reexamination would be moot. In other words, the Federal Circuit would find that while the reexamination proceedings were in process, the injunction or any other part of the final judgment, would not be affected. This is supported by the Fed-eral Circuit's determinations that: 1) the initial appeal should not be stayed by the reexamination proceed-ings because the proceedings are distinct, with dif-ferent records and different standards of proof ( *Standard Havens, 953 F.2d at 1366 n. 2*); 2) in the absence of a final ruling, the rejection of the relevant claims by the PTO did not constitute "new evidence" that would support a motion for new trial under Rule 60 ( *Standard Havens, 953 F.2d at 1372*); and 3) the status quo of the underlying litigation should be pre-served pending a final determination under Section 145 ( *Standard Havens, 1993 WL 172432 at \*1*).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

Page 11

This court is convinced that under the Supreme Court's teachings in *Agostini* and the reasoning and analysis of the Federal Circuit in the *Standard Havens* cases, Powerscreen's motion to stay enforcement of the permanent injunction should be denied. The rejection of the relevant claims by the PTO is preliminary and is subject to review by the Board and the Federal Circuit. Until the reexamination process is complete and a final determination that the relevant claims are invalid is made, the final judgment of this court and the Federal Circuit that the Patent is valid, the relevant claims are infringed and a permanent injunction is appropriate, should not be modified under Rule 60(b)(5). The PTO's rejection of the relevant claims is not a significant change in the factual conditions on which the injunction was based and does not support a stay of the enforcement of the injunction.

Powerscreen also argues that the new standards for permanent injunction in infringement case set forth by the Supreme Court in *eBay v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) is a sufficient change in law to support a stay of the injunction. In *eBay,* the Supreme Court held that to be entitled to a permanent injunction in a patent infringement action, a party must demonstrate

(1) that is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be served by a permanent injunction.

*Id.* at 391.The Court then restated the long-standing rule that a finding that a defendant has infringed a patent does not automatically result in the issuance of an injunction. *Id.* at 392-93.

In early 1997, the court granted Plaintiffs' motion for a preliminary injunction. At that time, the court considered four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant should the motion be denied; (3) the balance of hardship between the parties; and (4) the impact an injunction will have on the public interest, and found in favor of Plaintiffs on the first three factors. The fourth factor favored neither party, with

the court acknowledging that the public interest favors the protection of patent rights but that there is also an interest in a company's right to continue to operate to its full capacity, at least until a claim is resolved by a trial on the merits. After a jury trial, the court granted Plaintiffs' motion for a preliminary injunction.

*14 While not directly addressing the four factors delineated in eBay at the time it granted the permanent injunction, the court did consider them with regard to Plaintiffs' request for a preliminary injunction. The court found that Plaintiffs established the threat of irreparable harm in the absence of an injunction. In reaching this conclusion, the court noted that, in addition to monetary loss, Plaintiffs would suffer from the loss of customer contacts and goodwill. This is comparable to a finding that Plaintiffs did not have an adequate remedy at law. As noted above, the court felt that the public interest favored the protection of patent rights and only limited this factor based on the absence of a definitive determination of Powerscreen's liability. Finally, the court determined that the balance of hardship weighed in favor of Plaintiffs.

While the district court did not have the benefit of *eBay* at the time it issued the permanent injunction, the court considered and found in favor of Plaintiffs on all the *eBay* elements. It is clear that the court did not automatically issue an injunction once it was determined that Powerscreen had infringed on the Patent, a principle the *eBay* decision reaffirmed. Not only was there no significant change in the law, the district court properly evaluated Plaintiffs' motion for preliminary injunction under the criteria set forth in *eBay.*This evaluation provided the foundation for the court's issuance of a permanent injunction.

Powerscreen is unable to prove the significant change in facts or law necessary to support their motion to stay enforcement of the permanent injunction. The PTO's rejection of the relevant claims on reexamination is not a final determination and this court is not in a position to second guess how the Federal Circuit will evaluate the prior art when given the opportunity. The district court considered the standards set forth by the Supreme Court in *eBay* in granting the permanent injunction. Accordingly, if the standards were to be considered new law, the permanent injunction was entered pursuant to the new law. Powerscreen is not

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 437703 (D.Or.)
**(Cite as: 2009 WL 437703 (D.Or.))**

Page 12

entitled to relief from the permanent injunction under
Rule 60(b)(5).[FN1]

> [FN1.] In light of this finding, Plaintiffs' ar-
> gument that Powerscreen failed to file this
> motion in a timely manner is moot and need
> not be addressed.

### Conclusion

Powerscreen's Rule 60(b) motion to stay enforcement
of permanent injunction should be denied.

### Scheduling Order

The above Findings and Recommendation will be
referred to a United States District Judge for review.
Objections, if any, are due no later than **November 4,
2008.**If no objections are filed, review of the Findings
and Recommendation will go under advisement on
that date.

If objections are filed, any party may file a response
within fourteen days after the date the objections are
filed. Review of the Findings and Recommendation
will go under advisement when the response is due or
filed, whichever date is earlier.

D.Or.,2009.
Construction Equipment Co. v. Powerscreen Intern.
Distribution, Ltd.
Slip Copy, 2009 WL 437703 (D.Or.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.