# TAB 11

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 1

HOnly the Westlaw citation is currently available.(Not for Publication)

United States District Court, D. New Jersey.
MARS, INCORPORATED, Plaintiff,
v.
JCM AMERICAN CORP. and Japan Cash Machine Co., Ltd., Defendants.
JCM American Corp. and Japan Cash Machine Co., Ltd., Counterclaim Plaintiffs,
v.
Mars, Incorporated, Counterclaim Defendants.
**Civil No. 05-3165 (RBK).**

Nov. 21, 2006.

Lanny Steven Kurzweil, Irene Mary Hurtado, McCarter & English, LLP, Newark, NJ, for Plaintiff.

William J. Hughes, Cooper Levenson, Atlantic City, NJ, for Defendants.

**OPINION**

KUGLER, United States District Judge.

*1 Presently before the Court is a motion by Defendants and Counterclaim Plaintiffs JCM American Corporation and Japan Cash Machine Co., Ltd. ("JCM"), seeking an award of partial summary judgment on a Complaint filed by Plaintiff and Counterclaim Defendant Mars, Incorporated ("Mars"), alleging, *inter alia,* infringement of U.S. Patent No. 5,577,589 ("the '589 Patent"). Also before the Court is a motion by JCM to vacate a Magistrate Judge's Order denying JCM's motion for a stay of the proceedings. For the reasons set forth below, this Court will deny both motions.

**I. BACKGROUND**

*A. Factual History*

The present action involves two United States Patents: the '589 Patent and U.S. Patent No. 6,712,352 ("the '352 Patent"). Relevant to the motions currently before this Court is the history involving the '589 Patent.

The '589 Patent Application was filed on September 30, 1994, and issued as the patent-in-suit on November 26, 1996. In its text, the '589 Patent makes reference to several patent applications filed in the United Kingdom and incorporates them by reference: GB 9314404.6 ("the GB '404.6 Application"); GB 9320190.3 ("the GB '190.3 Application"); and GB 9320167.1 ("the GB '167.1 Application").

The GB '404.6 Application was filed in the United Kingdom on July 13, 1993, and was published on January 18, 1995 as Patent No. GB 2280057A. The GB '190.3 Application was filed in the United Kingdom on September 30, 1993, and was published on April 5, 1995 as Patent No. GB 2282476A. The GB '167.1 Application was filed in the United Kingdom on September 30, 1993. It was never published, and was destroyed in 2003.

*2. Procedural History*

Mars filed a Complaint on June 17, 2005, accusing JCM of infringing the '589 Patent and the '352 Patent. JCM filed its Answer on September 23, 2005 and asserted counterclaims against Mars. On September 29, 2005, pursuant to a request by Magistrate Judge Rosen, Mars drafted a letter to JCM, claiming that it intended to assert that, specifically regarding the '589 Patent, JCM had infringed upon claim 19, although Mars further noted that it specified this claim "without prejudice to assert additional claims as discovery proceeds."(Pl.'s Br., Quigley Dec., Ex. A at 1). Mars subsequently filed a motion to dismiss JCM's counterclaims on October 13, 2005, which this Court later denied in a June 14, 2006 Order. On February 23, 2006, JCM filed a motion to stay these proceedings, which Magistrate Judge Rosen denied on April 27, 2006. On April 4, 2006, JCM filed a motion for partial summary judgment, which is now before this Court. Furthermore, on May 8, 2006, JCM filed a motion

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 2

asking this Court to vacate Magistrate Judge Rosen's Order denying JCM's motion to stay and to order a stay of the proceedings. This motion is also currently before this Court.[FN1]

> FN1. JCM has filed evidentiary objections to declarations attached by Mars to its opposition briefs for both the summary judgment motion and the motion to vacate the Magistrate Judge's Order. In reaching a conclusion on both motions, this Court does not consider any of the evidence to which JCM objects; this Court therefore need not rule on JCM's objections.

## II. MOTION FOR SUMMARY JUDGMENT

JCM has moved for summary judgment on Mars's claim that JCM infringed the '589 Patent. As the basis for its argument, JCM asserts that the '589 Patent is invalid due to its failure to satisfy the requirements of 35 U.S.C. § 112.

### A. Standard

*2 Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In this case, JCM is seeking to have this Court hold the '589 Patent invalid. A patent is presumed to be valid; therefore, JCM bears the burden of showing, by clear and convincing evidence, that it is not. Eli Lilly & Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed.Cir.2001). Applying this burden to the standard for summary judgment, JCM must therefore "submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."Id.

### B. Analysis

JCM claims that it is entitled to summary judgment on Mars's claim that JCM infringed upon the '589 Patent, as JCM claims that the '589 Patent is invalid for failing to satisfy the requirements of 35 U.S.C. § 112. Under § 112, a patent's specification must contain certain criteria. The statute reads, in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

> *3 The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

> ...

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 3

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112. The first paragraph of the statute contains a requirement that a specification include an adequate written description, as well as a requirement that the specification "enable" a person skilled in the art to make the invention, which is known as the "enablement" requirement. The second paragraph requires that the claims meet what is known as the "definiteness" requirement. The final paragraph quoted, which is the sixth paragraph of the statute, applies to "means-plus-functions" claims.

JCM contends that the '589 Patent violates the requirements set forth in § 112. Specifically, it alleges that the three United Kingdom patents incorporated by reference were not publicly available when the patent application was filed, and that one of these applications remains publicly unavailable today, as it has been destroyed. Therefore, JCM argues, the language in these applications cannot be incorporated into the '589 Patent's specification. Accordingly, JCM contends that this leaves the specification incomplete, and therefore in violation of the requirements set forth in § 112.

Mars contends that, contrary to JCM's assertions, all of the relevant applications were publicly available at the required times. Mars argues that the GB '190.3 Application and GB '167.1 Application were made publicly available on June 22, 1994, as they were contained within European Patent Application No. 93307789 ("the EP '789 Application"). The EP '789 Application, Mars claims, was filed along with copies of the GB '190.3 Application and the GB '167.1 Application. When the European Patent Office published the EP '789 Application on June 22, 1994, Mars claims that the GB ' 190.3 Application and the GB '167.1 Application were similarly made available to the public. Mars agrees with JCM that the GB '404.6 Application was made publicly available on January 18, 1995, when it was published by the United Kingdom Patent Office.

Mars and JCM disagree on the date when the law requires these applications to have been publicly available. JCM contends that the applications must have been available on the effective filing date of the '589 Patent, which JCM argues was December 16, 1993, as that was the date of the Patent Cooperation Treaty to which the '589 Patent claims priority. Mars asserts that the applications were required to be publicly available as of November 26, 1996, which was the date that the '589 Patent issued.

*4 Determining the date by which these applications needed to have been made public is premature, however, before a determination is made as to whether this analysis would be relevant in the first place. When determining whether these United Kingdom applications were properly incorporated by reference, this Court relies on the Manual of Patent Examining Procedure ("MPEP"), which "does not have the force of law, [but] is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." *Molins PLC v. Textron,* 48 F.3d 1172, 1180 n. 10 (Fed.Cir.1995). In § 608.01(p), the MPEP sets forth clear guidelines regarding the incorporation of material by reference. In these guidelines, the MPEP distinguishes between material which is "essential" and that which is "nonessential." Material is essential if it is needed to satisfy the requirements set forth in the first, second, and sixth paragraphs of 35 U.S.C. § 112, as are mentioned above. While material deemed essential may be incorporated by reference, such reference is strictly limited to other U.S. patents or applications for U.S. patents. Other material is deemed non-essential, and may be incorporated by reference to other materials, including, *inter alia,* foreign patents and foreign patent applications.

Given this language, it is clear to this Court that determining both the date upon which the above-referenced United Kingdom applications became publicly available and the date when § 112 required them to become available is inconsequential to determining the validity of the '589 Patent. If the materials which Mars sought to incorporate are deemed to be essential, then the attempted incorporation would fail, as foreign patent applications cannot be incorporated for such a purpose. Conversely, if the materi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 4

als are deemed to be non-essential, then whether or not incorporation was successful is irrelevant, for even if the incorporation failed, the lack of such materials would not, by definition, affect the '589 Patent's compliance with the requirements set forth in the first, second, and sixth paragraphs of § 112.[FN2] Accordingly, this Court must determine whether the United Kingdom applications that Mars attempted to incorporate are essential materials; this determination will then be dispositive of whether the '589 Patent is invalid for failing to comply with the requirements of § 112.

> FN2. A failed incorporation would not necessarily lead to a determination of a patent's invalidity; rather, the Court would simply disregard the contents of those materials which were unsuccessfully incorporated. See Amtel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1377 (Fed.Cir.1999) (referencing a district court's determination that materials were improperly incorporated and therefore disregarding such materials).

In conducting this analysis, this Court is left with little, if any, evidence presented by JCM regarding the necessity of these materials. JCM offers no support for the contention that, without these foreign applications, one skilled in the art is not sufficiently "enabled" to produce the invention, and without such support this Court cannot so find. See Callicrate v. Wadsworth Manufacturing, Inc., 427 F.3d 1361, 1375 (Fed.Cir.2005) ("Without any basis in this record to determine that one of skill in the art could not make and use [the claimed invention] with this disclosure, this court cannot sustain the district court's nonenablement conclusion."). Likewise, JCM offers no evidence in support of its contention that the foreign applications are necessary for the '589 Patent to contain an acceptable written description.

*5 Regarding the definitiveness requirement, JCM claims that some terms, like "document," are defined differently in the '589 Patent than they are in one of the United Kingdom applications. (Def.'s Br. at 18.) Furthermore, while the '589 Patent does not define the term "banknote," this term is defined in one of the United Kingdom applications. (Id.) Because of such distinctions, JCM argues, one cannot definitively interpret the claims contained within the '589 Patent, including claim 19, which uses both the terms "document" and "banknote." (Id. at 18-20.)

Claim construction is determined by a Court as a matter of law. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 388 (1996) ("[J]udges, not juries, are the better suited to find the acquired meaning of patent terms."). Subsequently, a determination of indefiniteness is a question of law. Amtel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed.Cir.1999). This determination hinges on "whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." Bankcorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1372 (Fed Cir.2004). For a claim to be deemed indefinite, the Court must find that it is "insolubly ambiguous." Id. Furthermore, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1380 (Fed.Cir.2001).

JCM has offered no evidence to support its contention that one skilled in the art would be unable to ascertain the scope of claim 19, or any other claim for that matter, despite being unable to reference the United Kingdom applications. On the contrary, as Mars asserts, "[j]ust as in Amtel Corp., the Court may conclude here that skilled artisans are able to discern the scope of the '589 [P]atent claims from the explicit statements in the '589 [P]atent specification without reference to any disclosure in the British Applications. The claims would be definite as a matter of law in such a case."(Pl.'s Br. at 39). Furthermore, Mars notes that "[t]here is no suggestion in the specification that any claim depends for its support on any disclosure contained in the British Applications."(Id. at 24). While this Court lacks the evidence to explicitly find that the '589 Patent's claims are definite, the burden rests with JCM to present clear and convincing evidence to the contrary. Having failed to do so, this Court cannot find the '589 Patent's claims to be indefinite as a matter of law.

JCM also mistakenly relies on Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446 (Fed.Cir.1984) in support of its argument. In Quaker City, the Federal Circuit reviewed a district court's holding that essential material could not be incorpo-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 5

rated through a foreign document. The Federal Circuit held that the appellant's argument that the material was not essential was irrelevant, as the material was determined to be unavailable to the public, and it therefore could not be incorporated regardless of whether it was material or not. *Id.* at 1455.JCM argues that the material in this case is unavailable to the public, and therefore it cannot be incorporated regardless of whether it is deemed to be essential or not. (Def.'s Br. at 23-24). However, what JCM fails to recognize is that even if the United Kingdom applications are deemed to be unavailable, and therefore not incorporated by reference, such a finding leads to a determination of patent invalidity **only if the material would have been necessary for the '589 Patent's specification to comply with the requirements of § 112,** which parallels the definition of "essential material" under MPEP § 608.01(p). JCM offers no evidence upon which this Court could base a finding that the '589 Patent is invalid, even if this Court did exclude the foreign applications which Mars sought to incorporate by reference.

*6 Based on the above reasoning, this Court therefore finds that JCM has failed to meet its burden of proving that the foreign applications were "essential" materials under MPEP § 608.01(p), insofar as they were necessary to establish the requirements set forth in the first, second, and sixth paragraphs of 35 U.S.C. § 112. So holding, this Court need not determine whether or not these foreign applications, were they to be considered "non-essential," were properly incorporated by reference, as such a determination would, by definition, not affect the validity of the '589 Patent insofar as its compliance with the requirements of § 112.[FN3]

> FN3. This Court notes that were it to consider this issue, it would be required to determine whether the foreign applications were "publicly available," which the Federal Circuit has held to be an issue of fact. See *Amtel Corp., 198 F.3d at 1386* ("Whether an incorporated reference is available to the public is a factual inquiry.").

### III. MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER AND STAY THE PROCEEDINGS

JCM also appeals Magistrate Judge Rosen's April 27, 2006 Order denying its motion for a stay of litigation, asking this Court to vacate the Order and to grant a stay of litigation.

### A. *Standard*

When a party appeals a non-dispositive order issued by a magistrate judge, "[t]he district judge to whom the case is assigned ... shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."Fed.R.Civ.P. 72(a). The Supreme Court has held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).*

A Court may exercise its discretion in deciding whether to stay proceedings in a matter pending before it. *Landis v. North Am. Co., 299 U.S. 248 (1936).* The authority to enter a stay applies equally to patent cases where reexamination by the Patent and Trademark Office has been requested and granted. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* (noting that courts have the authority to order a stay pending the conclusion of a PTO examination). In determining whether to grant a stay, this Court has previously stated that it considers: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case; and (3) whether discovery is complete and a trial date has been set."*Motson v. Franklin Covey Co.,* No. 03-1067, 2005 U.S. Dist. LEXIS 34067, at *2 (D.N.J. Dec. 15, 2005) (citation omitted).

### B. *Analysis*

In a motion filed on February 23, 2006, JCM sought an order staying the present litigation pending an *inter partes* reexamination of the '352 Patent by the U.S. Patent and Trademark Office. There is no pending reexamination pertaining to the '589 Patent.

In his April 27, 2006 Order denying JCM's motion, Judge Rosen applied the factors that this Court set

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)  
(Cite as: 2006 WL 3373284 (D.N.J.))

Page 6

forth in *Motson.* Judge Rosen stated that the parties agreed that the reexamination may not be completed for up to eighteen months, given the parties' ability to appeal the decision. (Order at 3.) Judge Rosen further noted that the reexamination involved only the '352 Patent, and that this litigation involved not only that patent but the '589 Patent as well. (*Id.*) Finally, Judge Rosen noted that JCM had commenced litigation against Mars Electronics International, Inc. ("MEI"), a wholly-owned subsidiary of Mars, in the District of Nevada, litigating issues that overlapped with this litigation. (*Id.* at 2.) Based on these findings, Judge Rosen determined that a stay would not accomplish judicial economy, and that JCM should not be allowed to continue its Nevada litigation while staying the litigation pending before this Court. (*Id.* at 3.)

*7 JCM argues that Judge Rosen's ruling was erroneous in several respects. JCM asserts that the referenced Nevada litigation had been resolved by a settlement, that a stay would in fact promote judicial economy, and that Mars did not assert any prejudice that would result from a stay. Mars counters these assertions, noting that there were initially two lawsuits filed in Nevada, one of which was settled and the other that remains pending. Mars further notes that JCM admitted at oral argument before Judge Rosen that a reexamination could last up to 18 months, and that Mars did not need to submit declarations for Judge Rosen to have found that Mars would be prejudiced by a stay.

Judge Rosen relied on the existence of the Nevada litigation in determining that Mars would be prejudiced by a stay. Judge Rosen referenced both Nevada lawsuits in his Order, noting that one "alleged breach of contract, misappropriation of trade secrets, and other claims, related to products at issue in the instant action against [MEI] and MEI's Vice President of Gaming." (*Id.* at 2.) The second litigation, Judge Rosen noted, was filed in January 2006. He stated that "Mars represents that these suits litigate the validity and infringement of, *inter alia,* the '352 [P]atent. At oral argument, counsel for [JCM] did not dispute that the issues in the Nevada suit overlapped with the issues in this suit, including the '352 [P]atent." (*Id.*) Judge Rosen further noted that "Mars asserts that JCM's request for a stay in this suit conflicts with its position in the Nevada actions which have continued with discovery on identical factual issues and prejudices Mars' ability to clear its name and to timely develop the record on both the '352 [P]atent and the '589 [P]atent." (*Id.*)

JCM and Mars apparently agree that one Nevada litigation has settled while the other is ongoing. Mars does not dispute JCM's contention that the ongoing Nevada litigation does not specifically involve the '352 Patent. JCM does not dispute Mars's contention that the products at issue in the Nevada litigation "are the same products that cover the technology at issue in the patents-in-suit before this Court. Discovery of the same products and discussion of the patents in this case will necessarily occur in the Nevada litigation."(Pl.'s Br. at 11).

This Court finds that Judge Rosen's Order did contain an error, namely that the Nevada litigation specifically litigated the validity and infringement of the '352 Patent. However, Judge Rosen's finding that Mars would be prejudiced by a stay is based not solely on this assertion, but rather on his finding that the Nevada litigation involves factual issues which overlap with the action pending before this Court, an assertion which JCM does not appear to dispute. Therefore, this finding was not clearly erroneous.

Furthermore, JCM claims that Judge Rosen ignored this Court's holding in *Motson,* which noted that a pending reexamination by the Patent and Trademark Office weighed in favor of a stay insofar as it would promote judicial economy, as the reexamination may obviate the need for a trial. However, as there are two patents-in-suit in the present action, and only one has been submitted for reexamination, Judge Rosen correctly found that staying the action pending reexamination would not promote judicial economy, and that "the case can develop these issues simultaneous with the PTO's review[.]"(*Id.* at 3). As this Court has denied JCM's motion for summary judgment on the '589 Patent, and this litigation therefore continues to involve patents not undergoing reexamination, Judge Rosen's finding is not clearly erroneous.

*8 Accordingly, this Court finds that JCM has not shown Judge Rosen's Order denying a stay of the proceedings to be clearly erroneous.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)
(Cite as: **2006 WL 3373284 (D.N.J.)**)

Page 7

### IV. CONCLUSION

Based on the foregoing analysis, this Court will deny both JCM's motion for summary judgment and JCM's motion to vacate Judge Rosen's Order denying a stay of the proceedings before this Court. An accompanying Order shall issue today.

D.N.J.,2006.
Mars, Inc. v. JCM American Corp.
Not Reported in F.Supp.2d, 2006 WL 3373284 (D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.