# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

INLINE CONNECTION CORPORATION,

PLAINTIFF,

v.                                                                           CIVIL ACTION NO.: 2:05CV205

VERIZON INTERNET SERVICES, INC., et al.,

DEFENDANTS.

## OPINION AND ORDER

This matter comes before the Court on a Motion to Transfer the present action to the United States District Court for the District of Delaware, brought by nine (9)[1] of the named defendants in this action ("Moving Defendants"), and to Sever and Administratively Dismiss Claims against Verizon Virginia Inc. and Verizon South Inc., pending resolution of the action in Delaware. (Doc. 20.) The Court heard arguments in open court on October 4, 2005, and granted the Motion to Transfer from the bench. For reasons set forth below, the Court **ORDERS** that the remaining sixteen (16) Defendants that did not join in the instant Motion to Transfer shall be **SEVERED** from the present action and further **ORDERS** that the severed action be **STAYED** without prejudice to Inline Communications Corporation taking further action against the severed parties. This Order and Opinion further explains the Court's ruling.

---

[1] The Moving Defendants are: Verizon Internet Services, Inc., GTE.Net LLC d/b/a Verizon Internet Solutions, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc., d/b/a Verizon Southwest.

## I. PROCEDURAL BACKGROUND AND FACTUAL HISTORY

Inline Connection Corporation ("Plaintiff") is incorporated in Virginia and maintains its principal place of business in Washington, D.C. Complaint at ¶ 1. Plaintiff owns United States Patent Nos. 5,844,596, 6,236,718, 6,243,446 and 6,542,585 ("patents-in-suit"), which relate to systems and methods for simultaneous transfer of voice and data streams over telephone lines. On April 6, 2005, Plaintiff filed a Complaint with the Alexandria Division of this Court against twenty-five (25) Verizon entities[2] ("Defendants") (Doc. 1), alleging infringement of these patents-in-suit relating to the provision of Digital Subscriber Line ("DSL") services for high-speed Internet access to subscribers. The Complaint was thereafter transferred to the Norfolk Division in accord with this Court's established rotation system. On May 31, 2005, Defendants filed their Answer, (Doc. 17), with the exception of sixteen (16) Defendants[3] that instead filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 18.)

Plaintiff is currently engaged in parallel litigation involving the same patents-in-suit that are at issue in this case[4] before the United States District Court for the District of Delaware ("Delaware court"). In April and June of 2002, Plaintiff filed complaints with the District of

---

[2] All Defendants in this action are: Verizon Internet Services, Inc., GTE.Net L.L.C., Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Florida, Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., GTE Southwest, Inc., Contel of the South, Inc., Verizon Delaware, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Virginia, Inc., and Verizon South, Inc. Verizon Hawaii, Inc. was sold on May 2, 2005, and is no longer a Verizon-related entity.

[3] Defendants joining in the Motion to Dismiss for Lack of Personal Jurisdiction are: Verizon Florida, Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., Contel of the South, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Delaware, Inc., and Verizon Southwest.

[4] U.S. Patent No. 6,542,585 was added to the Delaware action after Plaintiff's initial filing there.

2

Delaware, naming leading Internet Service Providers ("ISPs"), AOL Time Warner, Inc. and Earthlink, Inc., as well as Verizon Communications, Inc., alleging the same violations of its patents-in-suit. On October 2, 2002, Verizon Communications, Inc. was dismissed without prejudice pursuant to a stipulation of dismissal upon discovering that the company was only a holding company for Verizon companies.[5] After Verizon was dismissed, the Delaware action proceeded against Earthlink and AOL, but Plaintiff did not amend its complaint to add Verizon ISPs or any other Defendants named in the present action.

The Delaware court has invested substantial time in scheduling conferences, presiding over discovery disputes, and ruling on numerous motions. Further, the Delaware court has spent considerable time familiarizing itself with the relevant technology as evidenced in its detailed opinions.[6] More specifically, the court has issued extensive orders regarding: 1) the proper construction of approximately 15 disputed claim terms, see Ex. D to Ds.' Mem. in Supp. of Mot. to Trans.; 2) modification of the construction of four of the disputed terms on a motion for reconsideration, see Ex. E to Ds.' Mem. in Supp. of Mot. to Trans.; and 3) cross motions for summary judgment, see Ex. F to Ds.' Mem. in Supp. of Mot. to Trans. The Delaware court is presently considering motions for clarification, reconsideration and a broader motion for summary judgment of noninfringement.

While Plaintiff is engaged in litigating its patents-in-suit in Delaware, Plaintiff alleges in this action that each named Defendant has "used, sold and/or offered to sell . . . [DSL service]

---

[5] Plaintiff recognized that it had the wrong Verizon entity after Defendant Verizon filed a motion for summary judgment, arguing such on September 3, 2002.

[6] See Inline Connection Corp. v. AOL Time Warner Inc., et al., 302 F. Supp. 2d 307 (D. Del. 2004); Inline Connection Corp. v. AOL Time Warner Inc., et al., 347 F. Supp. 2d 56 (D. Del. 2004); Inline Connection Corp. v. AOL Time Warner Inc., et al., 364 F. Supp. 2d 417 (D. Del. 2004).

3

that infringes one or more" of the same patents-in-suit. Complaint at ¶ 26. However, Defendants' involvement with the provision of the allegedly infringing service is not entirely coextensive. After reviewing the briefs submitted by both Parties and the evidence presented at the hearing, the undisputed facts place Defendants in four categories with respect to their relationship to the sale or provision of the allegedly infringing Internet service.

(1) <u>Internet Service Providers:</u> Verizon Internet Services and GTE.Net are ISPs and are the entities responsible for providing Verizon's DSL service to subscribers. Both are incorporated in Delaware. Complaint at ¶¶ 2-3. Verizon Internet Services' territory is the eastern United States and GTE.Net's is the western United States.

(2) <u>Service Companies:</u> Verizon Advanced Data and Verizon Avenue Corp. are Service Companies that have some connection to the provision of DSL services and are incorporated in Delaware. Complaint at ¶¶ 4-6.

(3) <u>General Service Companies:</u> Telesector Resources Group, Verizon Services Corp., and Verizon Corporate Services are General Service Providers that provide services such as account management, sales, product management, legal, human resources, regulatory, negotiation and marketing to other Verizon entities and are incorporated in Delaware. Complaint at ¶¶ 6-8.

(4) <u>Individual Operating Telephone Companies ("OTCs"):</u> These remaining eighteen (18) companies provide local telecommunication services to customers within their specific regional localities pursuant to federal tariff. They are incorporated and operate in various states outside of Virginia and Delaware, with the exception of two OTCs incorporated in Virginia, Verizon Virginia Inc. and Verizon South Inc., and two OTCs incorporated in Delaware, Verizon Delaware Inc. and GTE Southwest. Complaint at ¶¶ 9(a)-(r).

4

The Moving Defendants argue that this action should be transferred to the District of Delaware since Plaintiff is currently engaged in parallel litigation in Delaware involving the instant patents-in-suit. The Moving Defendants contend that Plaintiff's object in filing in the Eastern District of Virginia is to avoid unfavorable rulings on its patents-in-suit in the Delaware action and to utilize this forum's allegedly faster moving docket to obtain separate expedited rulings. See Ds.' Mem. in Supp. of Mot. to Trans. at 6. The Moving Defendants further contend that Plaintiff has added the Verizon OTCs to this action to prevent transfer and that the OTCs are wholly unnecessary and peripheral to the present action. See id.

### III. ANALYSIS

Section 1404(a) of United States Code Title 28 provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Courts have interpreted this provision to require the moving party to prove: (1) that the plaintiff could have originally brought the action in the transferee forum; and (2) that the interests of justice and convenience of the parties and witnesses favor such a transfer. See, e.g., Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004); Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992). The decision whether to transfer an action is within the sound discretion of the district court. Agilent Technologies, 316 F. Supp. 2d at 325; Southern Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956). As moving parties, the Moving Defendants bear the burden of demonstrating that transfer of venue is appropriate in this case. Cognitronics Imaging Sys. v. Recognition Research Inc., 83 F. Supp. 2d 689, 696 (E.D. Va. 2000); Verosol, 806 F. Supp. at 592.

A. Jurisdiction of the Potential Transferee Forum

In Hoffman v. Blaski, 363 U.S. 335, 343 (1960), the United States Supreme Court held that "the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." Thus, the threshold matter this Court must consider is whether this entire action could have originally been brought by Plaintiff in the District of Delaware, with respect to both personal jurisdiction and venue. Corry v. CFM Majestic Inc., 16 F. Supp. 2d 660, 663 (E.D. Va. 1998).

The venue provision for patent infringement actions provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides[.]" 28 U.S.C. § 1400(b). Although § 1400(b) does not specify what satisfies the residence requirement, § 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." As acknowledged by Plaintiff in the Complaint, the Moving Defendants were all incorporated in Delaware when the present action was filed. See Complaint at ¶¶ 2-8, 9(h), 9(j). Because the Moving Defendants are incorporated in Delaware, they reside there for purposes of establishing both personal jurisdiction and venue. See §§ 1400(b) and 1391(c); Cognitronics Imaging, 83 F. Supp. 2d at 696.

While the Parties do not dispute that the Delaware court would have been an appropriate forum for the Moving Defendants, neither Party contends that the Delaware court was an appropriate forum for the remaining OTC Defendants, nor does the evidence submitted to the Court demonstrate such conclusion. See Complaint at ¶ 9(a)-(r); Ds.' Mem. in Supp. Mot. Trans. at 5. Thus, the Court concludes that the entire action could not be transferred to Delaware. Accordingly, the Court must consider the Moving Defendants' Motion to sever claims against

6

the remaining OTC Defendants and stay the present action against them.

B. Sever Peripheral Claims and Stay Action

It is an established principle that "when venue or personal jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant and transfer the remaining claims to the more convenient forum pursuant to § 1404(a)." Corry, 16 F. Supp. 2d at 664; see also Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc., 219 F. Supp. 2d 705, 709 (E.D. Va. 2002) (finding that severance is appropriate when the claims against an indirect defendant are "peripheral to the claims that lie at the heart of [the] case"). According to Corry, the rationale of this procedure is to give courts the power to prevent plaintiffs from manipulating the system by joining defendants that have no essential involvement with the core claims of the case, and is appropriate where the "administration of justice would be materially advanced." Corry, 16 F. Supp. 2d at 665.

According to the test outlined in Corry, the Court may sever indirect claims and transfer those remaining only when: "(1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under § 1404(a)." Corry, 16 F. Supp. 2d at 665; see also LG Elecs., Inc. v. Asustek Computers, 126 F. Supp. 2d 414, 421 (E.D. Va. 2000). The facts of this case satisfy all three elements of the test.

1. Peripheral Nature of Remaining Claims

This Court has consistently acknowledged that whether a defendant is peripheral depends upon "'the degree of involvement each defendant has in the transactions which form the basis of

7

the plaintiff's cause of action.'" Corry, 16 F. Supp. 2d at 666 (quoting Mobil Oil Corp. v. W. R. Grace & Co., 334 F. Supp. 117, 122-23 (S.D. Tex. 1971)). In this case, Plaintiff's cause of action is based upon the ISPs provision of DSL service. The undisputed facts clearly demonstrate that any connection the OTCs have with this action is peripheral to the present action since the ISPs are the source of the allegedly infringing service. See LG Electronics, 126 F. Supp. 2d at 422 (holding that the core infringement claim was against the manufacturer and primary distributors as the source of the allegedly infringing products and that resellers that later sold the products were peripheral and unnecessary to accord plaintiff with complete relief); Brown Manufacturing, 219 F. Supp. 2d at 710 (holding that obtaining relief against downstream merchants is "clearly secondary to [the plaintiff's] assertion of its rights against the source of the products").

The facts of this case show that the OTCs do not contract with the ultimate consumers or offer for sale any portion of the allegedly infringing service, nor do they receive any of the revenues for the service. Instead, the service is sold and provided by the ISPs, while the OTCs provide the means of transmitting the DSL service through its telephone lines. Furthermore, the OTCs provide DSL service solely pursuant to federal tariff and state regulation and only to customers located in the specific geographic territory where they are licensed to offer service.[7] While Plaintiff does not dispute these facts, counsel for Plaintiff contended at oral argument that the OTCs nevertheless engage in their own acts of infringement when their lines transmit the allegedly infringing service provided by the ISPs. The Court finds that Plaintiff's claim against

---

[7] It is undisputed that the OTCs are regulated by the Federal Communications Commission ("FCC") and state regulatory commissions and provide services in accordance with rates, terms, and conditions set forth in tariffs filed with the FCC and the state agencies. The FCC regulates the boundaries of these areas, which in general encompass a single state. See 47 U.S.C. § 153(25).

8

the OTCs is no more logically related to the allegedly infringing conduct than a similar claim asserted against a disinterested commercial carrier that transports goods manufactured, marketed and sold by third parties to ultimate consumers. Moreover, unlike Brown Manufacturing and LG Electronics, where an injunction against the primary manufacturer might not prevent the downstream resellers from selling existing stock, here, any injunction issued against the ISPs will necessarily prohibit the OTCs from transmitting any offensive service through their phone lines. Not only are the OTCs peripheral to the heart of this action, but their presence appears to be wholly unnecessary to accord Plaintiff complete relief. Therefore, the Court concludes that the OTCs degree of involvement with the source of the alleged infringement is incidental and clearly peripheral to the heart of this action.

### 2. Potential Disposition of Remaining Claims Upon Adjudication

If the Court transfers the claims against the Moving Parties, which includes those against the ISPs, the Service Providers, General Service Providers and two Delaware-based OTCs,[8] the adjudication of those claims would dispose of the claims against the severed OTCs. See LG Electronics, 126 F. Supp. 2d at 422; Corry, 16 F. Supp. 2d at 665. As transmitters of the allegedly infringing service, the OTCs would only be liable if the Delaware court also found that the service infringed Plaintiff's patents. Furthermore, since the source of the allegedly infringing service are the ISPs, any injunction issued against them will prohibit the OTCs from transmitting any infringing service. Thus, the OTCs presence in this action have no true bearing on Plaintiff's

---

[8] As the Delaware court appears to have jurisdiction over these two OTCs, the Plaintiff must elect whether to pursue them in the transferred action, potentially adding complication and expense to the proceeding.

opportunity to obtain relief.[9]

### 3. Transfer of the Remaining Claims Under § 1404(a)

While the Court concludes that the OTCs are peripheral and unnecessary to the present action, the Court must now decide whether Delaware is a more appropriate forum for the remaining claims, a decision which is within the sound discretion of a district court. Agilent Technologies., 316 F. Supp. 2d at 325. In determining whether transfer is warranted, the Court considers the traditional balancing test of § 1404 factors, which includes plaintiff's choice of forum, party and witness convenience, and the interests of justice. GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).

At the outset, the Court notes that "a plaintiff's choice of forum is entitled to substantial weight." Agilent Technologies, 316 F. Supp. 2d at 326 (citing Hester Indus., Inc. v. Stein, Inc., 1996 U.S. Dist. LEXIS 19926 (E.D. Va. 1996)). At oral argument, counsel for Plaintiff asserted that its primary reasons for selecting the Virginia forum were that Plaintiff is a Virginia resident and that the Verizon companies that are central to this action are based in Virginia. The Court finds that the weight of these facts are diminished by Plaintiff's posture regarding the ongoing Delaware action. Plaintiff's choice of forum should not be accorded great weight where, as here, Plaintiff originally selected a separate forum within which to litigate its patents and is simultaneously engaged in litigation in that forum. Indeed, Plaintiff cannot contend that the Delaware forum is inconvenient when it chose to litigate there for over three years. Additionally,

---

[9] At oral argument, Plaintiff's counsel attempts to persuade the Court to keep the remaining OTCs in the present action on the grounds that it cannot obtain complete relief without them, since the OTCs provide local telephone service to other ISPs that Plaintiff has not named in any action. Presumably, Plaintiff would have the Court enjoin the conduit of the DSL service, rather than inconvenience the Plaintiff to either join as a party or institute suit against the ISP sources of the alleged infringement. This argument is not persuasive.

10

Plaintiff's reliance upon the presence of Verizon in Virginia as the reason for filing here does not comport with Plaintiff's original choice of Delaware as the forum to bring suit against Verizon. Thus, Plaintiff's initial preference for the Delaware forum for both Parties and its ongoing presence in that forum, leads the Court to discount any importance the Court would otherwise place upon Plaintiff's or Verizon's presence in Virginia.

Plaintiff also cites the docket conditions in the Eastern District of Virginia as a motive for its choice of forum. While docket conditions are a factor in considering whether a case may be transferred, they cannot be the primary factor for retaining a case in this district. See Cognitronics Imaging, 83 F. Supp. 2d at 697 n.8, 698-99; Corry, 16 F. Supp. 2d at 666. Although Plaintiff contends that this was not the primary motivation in its choice of forum, this factor is also diminished since the Delaware court has already spent more than three years litigating Plaintiff's patents, and thus has a significant "head start" on this Court.

Notwithstanding the weak support for Plaintiff's choice of forum, the Court "should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer in favor of the defendant." Verizon Online Servs. v. Ralsky, 203 F. Supp. 2d 601, 624 (E.D. Va. 2002) (citing Nossen v. Hoy, 750 F. Supp. 740, 742 (E.D. Va. 1990)). In light of the prospective duplication of efforts involved with two courts litigating the same patent claims brought by the same party, the balance of hardships in this case clearly favors transfer.

According to GTE Wireless, "the interest of justice factors include such circumstances as 'the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment.'" GTE Wireless, 71 F. Supp. 2d at 519 (quoting Hester Industries, 1996 U.S. Dist. LEXIS 19926 (citations omitted)). The

11

pendency of the parallel Delaware action and the Delaware court's familiarity with Plaintiff's case are the most important factors here.

In Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960), the Supreme Court observed that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Since Continental Grain, courts have observed that transfer is particularly appropriate in patent cases where a prior pending lawsuit involves the same facts, transactions, or occurrences, and is warranted even when the parties are different. See e.g., Hunter Eng'g Co. v. ACCU Indus., 245 F. Supp. 2d 761, 766 (E.D. Va. 2002). Morever, when two different courts are interpreting the same patent, inconsistent results impede the administration of justice and favors transfer whenever possible to where the lawsuit is already pending. Datatreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003) (citing Hunter Engineering, 245 F. Supp. 2d at 776). The risk of inconsistent results is especially acute where, as here, the central issues involve claim construction. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

This case involves the same claims of infringement now pending before the District of Delaware, brought by the same Plaintiff against similarly-situated principal parties over three years ago. During this time, the Delaware court has invested substantial time in scheduling conferences, presiding over discovery disputes and ruling on several motions, including cross motions for summary judgment and claim construction, which involve complex technology and detailed determinations of noninfringement. By retaining jurisdiction over this case, this Court would cause expensive and unnecessary duplication of the Delaware court's efforts. This Court would be required to invest considerable time in familiarizing itself with the patents in this case

and in making separate determinations. The judicial economy factor here is so heavily weighted that it alone supports transfer to the District of Delaware. See Hunter Engineering, 245 F. Supp. 2d at 776; LG Elecs. v. Advance Creative Computer Corp., 131 F. Supp. 2d 804, 814-15 (E.D. Va. 2001) (holding that judicial economy warrants transfer where the receiving court previously rendered a claim construction on the patents in issue and was therefore more familiar with the issues presented in the case). Therefore, the balance of hardships clearly favors transferring this case to the District of Delaware.[10]

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the nine (9) Moving Defendants' Motion to Transfer, which includes claims against the ISPs, the Service Providers, General Service Providers and the two Delaware-based OTCs.[11] Of the twenty-five (25) named Defendants in this action, sixteen (16) remain before the Court.[12] The instant Motion only addressed the two Virginia-based OTCs, arguing that they should be severed from the present action. By letter dated October 12, 2005, the Parties stipulated to a proposed disposition, whereby the Court would sever the action against all sixteen (16) Defendants remaining in this action, which includes the two Virginia-based OTCs and the fourteen (14) remaining OTCs.

---

[10] Plaintiff argues that the principal Defendants' presence in Virginia makes this forum more convenient forum with respect to access to sources of proof and witnesses. See Pl.'s Mem. in Opp. Mot. to Trans. at 10. However, these Defendants have a nationwide presence that makes the District of Delaware at least as convenient for both the Parties and witnesses, if not more convenient in light of the Delaware Court's familiarity with this case, its institutional knowledge, and its access to sources of proof, witnesses and existing discovery.

[11] These transferred Defendants are: Verizon Internet Services, Inc., GTE.Net LLC d/b/a Verizon Internet Solutions, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc., d/b/a Verizon Southwest.

[12] These remaining Defendants are: Verizon Florida Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., Contel of the South, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Virginia, Inc., and Verizon South, Inc.

Accordingly, the Court **ORDERS** that the remaining sixteen (16) Defendants which did not join in the Motion to Transfer be **SEVERED** from the transferred action. The Court further **ORDERS** that the remaining action against the severed Defendants be **STAYED** without prejudice to the Plaintiff taking further action against the severed parties.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and to certify the order to the Director of the Patent and Trademark Office.

It is so **ORDERED**.

/s/
_____

*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 10, 2005