# EXHIBIT/ TAB 3



LEXSEE 1999 US DIST LEXIS 2130


Analysis
As of: Jul 29, 2009

**WHEELING-PITTSBURGH STEEL CORPORATION v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

**CIVIL ACTION NO. 98-4654**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1999 U.S. Dist. LEXIS 2130; 48 ERC (BNA) 1732*

**March 3, 1999, Decided
March 3, 1999, Filed**

**DISPOSITION:** [*1] Defendant's motion to transfer venue to the Northern District of West Virginia GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant agency moved to transfer venue pursuant to *28 U.S.C.S. § 1404(a)* of plaintiff steel company's action for judicial review of defendant's final order directing plaintiff to implement a site-wide corrective action program at its coke production facility.

**OVERVIEW:** After defendant agency determined that plaintiff steel company was using its West Virginia coke production facility for hazardous waste management, defendant ordered plaintiff to clean up the site. Plaintiff filed suit for judicial review in Pennsylvania. Defendant moved to transfer venue to West Virginia pursuant to *28 U.S.C.S. § 1404(a)*. The court granted defendant's motion. In determining whether to grant a transfer motion, the court considered both public and private factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum, including whether the claim arose elsewhere, convenience of parties and witnesses, location of records, local interest in the controversy, and familiarity of the judge with applicable state law. Although a plaintiff's forum choice generally carried significant weight, less deference was afforded when it was not plaintiff's home forum. Here, defendant was seeking to transfer the case to plaintiff's home forum. Further, the transfer forum was the location of the plant which gave rise to a significant local interest in resolution of the case.

**OUTCOME:** Defendant agency's motion to transfer venue was granted because plaintiff steel company's forum choice was not its home state, the transfer forum was the location of the plant which was the subject of litigation, and the parties had previously litigated the issues in the transfer forum.

**CORE TERMS:** venue, convenience, transferring, region, fora, interests of justice, consent decree, authority to issue, choice of forum, familiarity, plant, impoundment, deference, litigated, surface, weigh, judicial district, administrative proceedings, administrative action, corrective action, contamination, issuance, resides, final decision, Mem of Law, state law, burden of establishing, private interests, local interest, giving rise

**LexisNexis(R) Headnotes**

Case 3:09-cv-00620-REP   Document 54-3   Filed 07/31/09   Page 3 of 7 PageID# 943

Page 2

1999 U.S. Dist. LEXIS 2130, *; 48 ERC (BNA) 1732

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN1] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN2] The decision to grant a transfer pursuant to 28 U.S.C.S. § 1404(a) lies in the discretion of the trial court.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*
[HN3] While the discretion to transfer is broad, the defendant has the burden of establishing its propriety.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN4] In determining whether to grant a motion to transfer, the court must consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN5] Court must consider public and private interests. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN6] Consideration of the relevant private and public factors reveals that transferring the case will better serve the interests of justice without affecting the convenience of the parties.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Motions to Transfer > Choice of Forum*
[HN7] Unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Individual Defendants*
[HN8] Although a plaintiff's forum preference generally carries significant weight, when a plaintiff chooses a forum other than its home forum that choice receives less deference.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Real Property Law > Water Rights > Riparian Rights*
[HN9] Suits which involve water rights, environmental regulation, and local wildlife should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit.

**COUNSEL:** For WHEELING-PITTSBURGH STEEL CORPORATION, PLAINTIFF: MELODY A. HAMEL, KENNETH M. ARGENTIERI, KENNETH S. KOMOROSKI, ROBERT L. BYER, KIRKPATRICK & LOCKHART, PITTSBURGH, PA USA.

For UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, DEFENDANT: VIRGINIA R. POWEL, UNITED STATES ATTORNEY, ASSISTANT U.S. ATTORNEY, PHILADELPHIA, PA USA. CYNTHIA A. DREW, U.S. DEPT. OF JUSTICE, WASHINGTON, DC USA.

**JUDGES:** William H. Yohn, Jr., J.

**OPINION BY:** WILLIAM H. YOHN, JR.

**OPINION**

**MEMORANDUM AND ORDER**

YOHN, J.

March 3, 1999

Case 3:09-cv-00620-REP   Document 54-3   Filed 07/31/09   Page 4 of 7 PageID# 944

Page 3

1999 U.S. Dist. LEXIS 2130, *; 48 ERC (BNA) 1732

Plaintiff, Wheeling-Pittsburgh Steel Corporation ("Wheeling-Pittsburgh") has brought suit against the United States Environmental Protection Agency ("EPA"), seeking judicial review of the defendant's issuance of a Final Administrative Order ("FAO"). Pending before the court is EPA's motion for transfer of venue to the Northern District of West Virginia. EPA has met its burden of establishing that litigating this case in West Virginia would better serve the interests of justice. Therefore, the court will grant defendant's motion to transfer.

BACKGROUND

Wheeling-Pittsburgh owns and operates a coke production [*2] plant in Follansbee, West Virginia. *See* Complaint at P 10. In 1982, EPA filed an administrative complaint and compliance order against Wheeling-Pittsburgh pursuant to the Resource Conservation and Recovery Act ("RCRA") § 3008(a) alleging that a surface impoundment at the facility was used for hazardous waste management and qualified for interim status as defined in RCRA § 3005(e). *See id.* at P 11. The complaint required Wheeling-Pittsburgh to perform closure activities with regard to the surface impoundment and also assessed civil penalties. *See id.* Wheeling-Pittsburgh challenged the complaint through the administrative process but failed to obtain the desired relief. *See id.* at PP 12-13. In 1985, the company filed an appeal from EPA's final decision in the United States District Court for the Northern District of West Virginia. *See id.* at P 14. The parties subsequently reached a settlement in the matter and, in 1989, signed a consent decree that covered the surface impoundment area at issue ("Consent Decree"). *See id.*

In 1996, pursuant to RCRA § 3008(h), EPA issued an Initial Administrative Order ("IAO") that required Wheeling-Pittsburgh to "implement a [*3] site-wide corrective action program throughout the 610 acre site of the Coke Plant." *Id.* at P 20. Wheeling-Pittsburgh filed suit in the United States District Court for the Northern District of West Virginia challenging the IAO on the grounds that the Consent Decree precluded issuance of the IAO and that EPA did not have authority under RCRA § 3008(h) to issue the IAO. *See id.* P 21. EPA subsequently amended the IAO to exclude any work on the surface impoundment. *See id.* P 22. The district court held that the amended IAO did not violate the Consent Decree. *See id.* at P 23. On appeal, the Court of Appeals for the Fourth Circuit affirmed the district court's holding that the IAO did not violate the Consent Decree and also held that Wheeling-Pittsburgh's challenge to EPA's authority to issue the IAO under RCRA § 3008(h) was not ripe for adjudication because the IAO was not a final agency decision. *See id.* at P 24; *Wheeling-Pittsburgh Steel Corp. v. United States Envtl. Protection Agency, 129 F.3d 118 (4th Cir. 1997)* (unpublished opinion).

During the pendency of that suit in district court, Wheeling-Pittsburgh continued to challenge EPA's authority to issue the [*4] IAO in administrative proceedings. *See id.* at P 25. After convening a hearing, the Presiding Officer of EPA Region III issued a Recommended Decision holding that EPA had the authority to issue the amended IAO under RCRA § 3008(h). *See id.* Both sides submitted comments to the Recommended Decision to the EPA Region III Regional Administrator who subsequently issued a final decision affirming EPA's authority to issue the IAO. *See id.* at P 26-27. On June 23, 1998, EPA issued a Final Administrative Order "based upon the findings and conclusions in the Final Decision." *Id.* P 28.

Wheeling-Pittsburgh brought suit this time in the Eastern District of Pennsylvania challenging EPA's authority to issue the order pursuant to RCRA § 3008(h), and, alternatively, claiming that RCRA § 3008(h), as applied, violates Wheeling-Pittsburgh's *Fifth Amendment* due process rights. Defendant EPA seeks transfer of the case to the Northern District of West Virginia.

DISCUSSION

Title *28 U.S.C. § 1404(a)* provides: "[HN1] For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other division where it might have been brought." [*5] *28 U.S.C. § 1404(a).* [HN2] The decision to grant a transfer pursuant to *§ 1404(a)* lies in the discretion of the trial court. *See Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971); Weinstein v. Friedman, 859 F. Supp. 786, 788 (E.D. Pa. 1994).* [HN3] While the discretion to transfer is broad, the defendant has the burden of establishing its propriety. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Tranor v. Brown, 913 F. Supp. 388, 391 (E.D. Pa. 1996).* [HN4] In determining whether to grant a motion to transfer, the court must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara, 55 F.3d at 879.*

The Third Circuit has provided the district courts with factors which are relevant in such a balancing. [HN5] The district court must consider both public and private interests. *See Jumara, 55 F.3d at 879; see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 91 L. Ed. 1055, 67 S. Ct. 839 (1947).* The private interests to be considered include: [*6] (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their rela-

Case 3:09-cv-00620-REP   Document 54-3   Filed 07/31/09   Page 5 of 7 PageID# 945

Page 4

1999 U.S. Dist. LEXIS 2130, *; 48 ERC (BNA) 1732

tive physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara, 55 F.3d at 879.* The public interests to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id. at 879-80.* [HN6] Consideration of the relevant private and public factors reveals that transferring the case will better serve the interests of justice without affecting the convenience of the parties.[1]

> 1 A number of the factors set forth in *Jumara* have no relevance to this case. First, both parties agree that private factors numbers five and six, convenience of the witnesses and the availability of records and books, do not play a part in this analysis because the claim has been brought under the Administrative Procedures Act ("APA"), *5 U.S.C. §§ 701-06*, which limits review of an agency action to the administrative record. *See American Littoral Soc'y, 943 F. Supp. 548 at 550.* The parties also concede that public factors number one, involving the enforceability of the judgment, and number six, the familiarity of the trial judge with state law, are irrelevant to this analysis. Finally, neither party identifies any public policies pursuant to public factor number five that would affect litigation of the case in either fora.

[*7] With respect to the first private factors, our court of appeals has admonished that "[HN7] unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte, 431 F.2d at 25* (emphasis in original). Defendant correctly asserts, however, that plaintiff's choice of venue, the Eastern District of Pennsylvania, should be given less weight because it is not plaintiff's place of residence and plaintiff twice initiated litigation of issues regarding the Follansbee facility in defendant's chosen forum. [HN8] Although a plaintiff's forum preference generally carries significant weight, "when a plaintiff chooses a forum other than its home forum that choice receives less deference." *American Littoral Soc'y v. United States Envtl. Protection Agency, 943 F. Supp. 548, 551 (E.D. Pa. 1996); see Kielczynski v. Consolidated Rail Corp., 837 F. Supp. 687, 689 (E.D. Pa. 1993)* (stating that plaintiff's choice "should be given considerably less weight" when chosen forum is not plaintiff's home forum); *New Image, Inc. v. Travelers Indem. Co., 536 F. Supp. 58, 59 (E.D. Pa. 1981)* (stating that "to give the plaintiff's prerogative [*8] paramount consideration would seem least warranted" where defendant sought to transfer case "to a judicial district embracing both plaintiff's sole place of business and the residences of plaintiff's principles").

The facts of this case do not justify giving greater deference to plaintiff's choice of forum over other factors--defendant is seeking to transfer the case to plaintiff's home forum and plaintiff previously chose to litigate matters arising out of EPA's issuance of the IAO in the forum that plaintiff now seeks to avoid. *See American Littoral Soc'y, 943 F. Supp. at 551* (stating that deference to plaintiff's choice of forum diminished in part by fact that plaintiff had originally litigated matter in forum it later wished to avoid). This factor thus weighs against transfer, but is not given the great deference normally accorded to plaintiff's choice of forum.

Defendant's choice of forum, the second private factor, meets the requirement in *28 U.S.C. § 1404(a)* that the judicial district to which a case is transferred be one in which the plaintiff could have brought its claim originally.[2] Moreover, as stated above, the Northern District of West Virginia is plaintiff's [*9] resident forum and plaintiff previously has litigated issues regarding EPA's actions at the Follansbee facility in that forum. Consequently, defendant's forum preference favors transfer although it is given somewhat less weight than plaintiff's choice.

> 2 Plaintiff does not contest the fact that venue in the Northern District of West Virginia would be proper. In fact, plaintiff previously has challenged EPA's actions with regard to the Follansbee plant in district courts in the Northern District of West Virginia. *See, e.g., Wheeling-Pittsburgh Steel Corp., 129 F.3d 118* (appeal of district court's decision regarding IAO). Furthermore, a plaintiff suing an agency of the United States may bring suit "in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action." *28 U.S.C. § 1391(e).* The facility that is the subject of this action is located in the Northern District of West Virginia.

[*10] The third private factor, whether the claim arose in a different district, weighs neither in favor of or against transfer. Plaintiff argues that the cause of action arose in this district because EPA Region III, which is headquartered in Philadelphia in the Eastern District of

Case 3:09-cv-00620-REP Document 54-3 Filed 07/31/09 Page 6 of 7 PageID# 946

Page 5

1999 U.S. Dist. LEXIS 2130, *; 48 ERC (BNA) 1732

Pennsylvania, issued the IAO and FAO. *See* Plaintiff's Mem. of Law in Opp'n to Def.'s Mot. to Transfer Venue, at 3-4. Additionally, plaintiff notes that the administrative hearing regarding the IAO took place in Philadelphia. *See id.* Because EPA issued the IAO and FAO from the Eastern District, according to Wheeling-Pittsburgh, the claim arose in this district.

Although case law exists to support plaintiff's contention that a claim may arise where the administrative action was initiated, *see Beazer East, Inc. v. United States Envtl. Protection Agency, Region III, 1990 U.S. Dist. LEXIS 9863,* No. 90-2753, 1990 WL 109892, *2 (E.D. Pa. July 30, 1990) (stating that case "arose with commencement of the administrative proceeding by EPA, Region III" in Eastern District of Pennsylvania), and *Honeywell, Inc. v. Consumer Prod. Safety Comm'n, 566 F. Supp. 500, 502 (D. Minn. 1983)* (holding that commencement of administrative proceeding [*11] gave rise to cause of action), given the facts, one could just as easily conclude that the claim arose in West Virginia. It is Wheeling-Pittsburgh's plant in Follansbee, West Virginia that is at the core of this litigation. The plant is the subject of the challenged administrative action. EPA issued the FAO in response to alleged contamination occurring at this facility. Additionally, the officers and employees of Wheeling-Pittsburgh who are responsible for this alleged contamination as well as the future corrective action ordered by EPA are all in West Virginia. Because proponents of both fora could make valid arguments that the claim arose in their preferred venue, I find this factor to be equally balanced.

The fourth private factor involves the convenience of the parties. Wheeling-Pittsburgh is located in Wheeling, West Virginia in the Northern District of West Virginia. EPA has its Region III headquarters in the Eastern District of Pennsylvania (although the region itself includes West Virginia). Plaintiff's attorneys will be traveling to either location from Pittsburgh. Because plaintiff's chosen forum is more convenient for EPA and EPA's choice would be more convenient for [*12] plaintiff, this factor does not appear to weigh in favor of either forum.

While the private factors appear almost balanced between the fora, the relevant public factors as a whole weigh heavily in favor of transferring the case. The second public factor, which looks to practical considerations that could make the trial easy, expeditious, or inexpensive, counsels in favor of transfer. Previously, plaintiff has litigated claims involving EPA's actions with regard to the Follansbee facility in the Northern District of West Virginia. *See* Wheeling-Pittsburgh Steel Corp.'s Resp. in Opp'n to Def.'s Mot. for Transfer of Venue, Exhibit 4. Consequently, a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable. Thus, this factor supports transferring the case.

The third public factor involving relative administrative difficulties resulting from court congestion is neutral. Plaintiff contends that resolution of the case will occur more rapidly in this district -- statistics presented by plaintiff tend to show that courts in the Eastern District of Pennsylvania resolve cases slightly faster than district [*13] courts in the Northern District of West Virginia. Nevertheless, the difference is relatively minor and familiarity with the facts of the case by the trial court in the Northern District of West Virginia may overcome this disparity and result in swifter resolution in West Virginia.

The fourth public factor, the local interest in deciding local controversies at home, seems to be the most significant in this instance. Defendant persuasively argues that this suit is better tried in the locale in which the outcome will have the greatest impact. The Wheeling-Pittsburgh facility that is the subject of this suit is located in the Northern District of West Virginia. A court's determination regarding EPA's power to issue and enforce the FAO will have an effect on the citizens of that area who will face the consequences of any contamination originating at the facility. Furthermore, defendant appropriately notes that citizens from the Follansbee area who may want to intervene or participate as *amici curiae* will be able to do so more readily in their local district. *See* Def.'s Mem. of Law in Supp. of Mot. to Transfer at 11. Consequently, trying the case in the Northern District of West [*14] Virginia "best fosters the interests of persons who, although not parties to the case, are most directly affected by its outcome." *American Littoral Soc'y, 943 F. Supp. at 550; see Trout Unlimited v. United States Dep't of Agric., 944 F. Supp. 13, 20 (D.D.C. 1996)* (stating that "[HN9] suits . . . which involve water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit.'") (quoting *Adams v. Bell, 228 U.S. App. D.C. 375, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)); National Wildlife Fed'n v. Alexander, 458 F. Supp. 29, 30-31 (D.D.C. 1978)* (holding that justice served best by transferring case to district in which proposed construction of dam would have primary impact).

In sum, although the administrative action giving rise to this suit came out of this district and plaintiff chose to file here, on balance, transferring the case to West Virginia appears to better serve the interests of justice. This suit involves a facility located in the Northern District of West Virginia, the judicial district in which plaintiff also resides. The outcome of the case [*15] will have the greatest direct impact on the citizens of the proposed forum. By contrast, aside from being

Case 3:09-cv-00620-REP   Document 54-3   Filed 07/31/09   Page 7 of 7 PageID# 947

Page 6

1999 U.S. Dist. LEXIS 2130, *; 48 ERC (BNA) 1732

EPA's administrative seat, this district has little connection to the case. Also, plaintiff has previously litigated other issues regarding this facility in the proposed forum and trial courts in that district are likely to have greater familiarity with the facts of the case. Furthermore, plaintiff's decision to bring this suit in the Eastern District of Pennsylvania, after having brought and lost an earlier challenge to EPA's ability to issue a site-wide corrective action order in the Northern District of West Virginia, bears the appearance of forum shopping. Finally, transferring the case will not harm the interests of or pose any inconvenience to the plaintiff. For these reasons, I will grant the motion to transfer venue to the Northern District of West Virginia.

### ORDER

AND NOW, this    day of March 1999, upon consideration of defendant's motion to transfer venue to the Northern District of West Virginia and plaintiff's response thereto, IT IS HEREBY ORDERED that the motion is GRANTED and the Clerk is directed to transfer this action to the Northern District of [*16] West Virginia.

William H. Yohn, Jr., J.