IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| EPLUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PERFECT COMMERCE, INC., SCIQUEST, INC., LAWSON SOFTWARE, INC., and VERIAN TECHNOLOGIES, INC., <br><br> Defendants. | Civil Action No. 2:09-CV-232-HCM-TEM |

**REPLY IN FURTHER SUPPORT OF MOTION OF DEFENDANTS PERFECT COMMERCE, LLC, SCIQUEST, INC., AND LAWSON SOFTWARE, INC. TO STAY PROCEEDINGS IN LIGHT OF PENDING REEXAMINATIONS OF PATENTS-IN-SUIT**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A. Reexamination of the '683 Patent ........................................................................ 2

    B. Reexamination of the '172 Patent ........................................................................ 4

III. ARGUMENT ..................................................................................................................... 4

    A. ePlus Asserts the Wrong Legal Tests For Stays Pending Reexamination .............. 4

    B. A Stay Pending Reexamination Would Greatly Simplify Matters in This Litigation ............................................................................................................... 7

    C. A Stay Pending Reexamination Is Not Premature ................................................. 8

    D. A Stay Pending Reexamination Would Not Unduly Prejudice ePlus .................... 9

IV. CONCLUSION ................................................................................................................ 11

Defendants Perfect Commerce, LLC[1] ("Perfect"), SciQuest, Inc. ("SciQuest") and Lawson Software, Inc. ("Lawson") (collectively, the "Defendants") submit this reply in support of their motion to stay the litigation proceedings brought by Plaintiff ePlus, Inc. ("ePlus").

## I. **INTRODUCTION**

Plaintiff's opposition is a clear example of its overly litigious behavior. It would rather overwhelm the Court at this early stage of the litigation with statistics and massive amounts of papers including a 20-page expert declaration with 11 exhibits than discuss the equities of staying this case. However, neither Plaintiff's statistics nor its expert are able to negate the reasons for a stay pending reexamination in this instance. The advanced stage of the reexamination of U.S. Patent No. 6,023,683 and the examiner's final rejection of all reviewed claims cannot be ignored. Add to that the relationship and similarity of the claims in United States Patent Nos. 6,023,683 ("the '683 patent"), 6,055,516 ("the '516 patent"), and 6,505,172 ("the '172 patent") (collectively "patents-in-suit"), and it would be disingenuous to argue that the '172 reexamination request will not be granted, or that a stay of this litigation would not simplify the case and extensively prevent duplication of effort. Indeed, courts regularly grant stays pending reexamination on much less certain terms, indicating that ePlus's interpretation of the standard for such a stay is far from accurate.

Plaintiff's purported prejudice resulting from a stay stems from its unrealistic assumption that it will be entitled to injunctive relief because it asserts it will be irreparably harmed. Plaintiff, however, fails to explain how it could possibly be irreparably harmed by the alleged infringement by Defendants especially when ePlus routinely grants licenses to the patents-in-suit. The established licensing program of the patents-in-suit demonstrates that any delay resulting

---

[1] The Complaint incorrectly identifies Perfect Commerce as a corporation; instead, Perfect Commerce is a limited liability company. See Doc. No. 27, at 1 n.1 and 4.

from a stay would be compensable and would not constitute undue prejudice. Moreover, since Plaintiff will not be entitled to any injunctive relief, the issues of whether the patents-in-suit expire before the reexaminations are complete and the length of time the reexamination proceedings take are irrelevant. Neither the expiration of the patents-in-suit nor the length the reexamination proceedings have any effect on Plaintiff's prayer for money damages.

Nevertheless, contrary to Plaintiff's assertion, none of the Defendants are attempting to "run out the clock" on the patents-in-suit. Rather, Defendants would prefer not to unnecessarily expend financial and staffing resources or the Court's resources to try the same validity case that is already under consideration by the U.S. Patent and Trademark Office ("PTO"). Further, it makes no sense to use judicial and party resources to litigate this action now while the patents-in-suit are highly susceptible to amendment or cancellation and new persuasive and instructive facts from further prosecution are imminent.

Accordingly, Defendants request that the Court grant their motion to stay the case until after the reexamination proceedings have been completed.

## II. BACKGROUND

### A. Reexamination of the '683 Patent

The reexamination of the '683 patent has already resulted in a final rejection by the patent examiner. Contrary to Plaintiff's assertion, nowhere did Defendants suggest that the final rejection was a "final PTO decision" or a "final determination as to the validity of the patent claims." *See* Pl.'s Opp'n at 8, 20. Clearly this is not the case since, as pointed out in Defendants' Motion to Stay, the final rejection was appealed by ePlus to the Board of Patent Appeals and Interferences ("BPAI"). Also, as previously mentioned, ePlus will have the option of appealing any rejection affirmed by the BPAI to the Federal Circuit. ePlus is well within its

rights to file these appeals, but it should be pointed out that both appeals – that is, all reexamination proceedings after March 2009 – only continue at ePlus's discretion.

A final office action, as was issued in the reexamination of the '683 patent, closes prosecution, hence it is described as "final." Even Plaintiff's own expert concedes that most reexamination proceedings end at this point. Specifically, Mr. Manbeck states in his Declaration at ¶ 56 that "[t]he overwhelming majority of cases in which a final rejection is issued are not appealed to the BPAI. Of those that are, fewer still are again appealed to the Federal Circuit." Manbeck Decl.[2] at ¶ 56. Therefore, it is a stretch to say that the reexamination of the '683 patent is in its early stages, just as one would likely not refer to a litigation as being in its early stages just after a jury verdict is returned.

In its brief, ePlus repeatedly pointed out that claims 1-25 of the '683 patent are not currently subject to reexamination. The *ex parte* reexamination of the '683 patent was filed by SAP America, Inc. and SAP AG (collectively "SAP") during its litigation with ePlus. By that time, SAP had already prevailed on summary judgment of non-infringement of claims 1-25 of the '683 patent. In fact, ePlus had conceded said non-infringement based on the Court's construction of those claims, all of which are means-plus-function claims and were limited to the very specific structures disclosed in the '683 patent. In light of the comments in ePlus's brief (at page 4) questioning the ability of the PTO to conduct proceedings more accurately than the Courts, one may expect ePlus to agree to adopt the claim construction from the SAP case. However, that has not happened yet and is the subject of another pending motion.

---

[2] "Manbeck Decl." refers to the Declaration of Harry F. Manbeck, Jr. In Support of Plaintiff ePlus Inc.'s Opposition to Defendants' Motion to Stay.

3

### B. Reexamination of the '172 Patent

Plaintiff ePlus also notes in its brief that the PTO pointed out some deficiencies in the request for reexamination filed by Lawson for the '172 patent. These deficiencies had nothing to do with the merits of the reexamination request, and will be corrected in an amended request for reexamination shortly. This is similar to what occurred with the request for reexamination for the '683 patent, which eventually resulted in rejection of all reviewed claims by the patent examiner. *See* Manbeck Decl. at ¶¶14-20.

As discussed in Defendants' Motion to Stay, the '172 patent shares common specifications, file histories, and figures, as well as similar claims with the '683 patent. Accordingly, the same prior art used by the examiner to reject the claims of the '683 patent was also presented to the PTO in the request for reexamination of the '172 patent. Particularly when combined with the fact that 95% of *inter partes* reexamination requests are granted, the fact that the examiner rejected claims of the '683 patent based on the same prior art is a very strong indicator that the examiner will at least find a substantial new question of patentability and grant the request for reexamination, if not reject the claims of the '172 patent as anticipated or obvious.

## III. ARGUMENT

### A. ePlus Asserts the Wrong Legal Tests For Stays Pending Reexamination

Plaintiff ePlus cites *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), for the proposition that a party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. This standard, and the standard cited by ePlus from *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009), are general standards for stays of litigation, but have not been applied to stays pending reexamination. Indeed, reexaminations of patents did not exist when the *Landis* opinion was written, and the Supreme Court has not addressed the standard for stays of litigation pending reexaminations. Therefore, the well-established standard

4

cited in Defendants' Motion to Stay and used by the Eastern District of Virginia is the proper standard, rather than the standards from *Landis* or *Nken*. *See NTP, Inc. v. Palm, Inc.*, No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141, at *2, 7 (E.D. Va. Mar. 22, 2009). Plaintiff even admits that this is the standard often used by the courts. *See* Pl.'s Opp'n at 10.

Contrary to what Plaintiff might have this Court believe, the "legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays." *Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991). Therefore, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings," *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), and "[i]n many instances it is appropriate for a district court to stay a patent case pending the outcome of a PTO proceeding." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998).

Nevertheless, even if the *Landis* or *Nken* tests were appropriate for the instant case, ePlus grossly oversimplifies the analysis with regard to inequities placed on Defendants. Rather than simply being forced to litigate this case, if a stay is not granted, Defendants must deal with the uncertainty of having multiple proceedings determining the same issues. Both this Court and the PTO would then be required to review the same prior art to make a determination of whether claims of the patents-in-suit are invalid. Furthermore, inconsistent results through amendment or cancellation of claims in reexamination are a distinct possibility that could be avoided by staying this case in its early stages before significant discovery or preparation has taken place. *See Palm*, 2007 U.S. Dist. LEXIS 97141, at *9 ("It would be a painful tragedy--for everyone involved--if this litigation were allowed to move forward during the PTO's reexamination, only to be

rendered meaningless by that agency's final action."). For example, it is very likely that there will be amendments to the claims of the patents-in-suit during the reexamination proceedings that change the scope of the claims during the course of the litigation. This in turn would require defendants to continually adapt their defenses to the current version of the claims, re-serve written discovery, and re-take depositions.

> Even one of the cases Plaintiff cited in its opposition recognized that:
>
> Several benefits accrue from a stay pending reexamination. Deferring determinations of patent validity to the PTO offers many advantages, including alleviation of discovery problems relating to prior art, consideration of any prior art by the PTO prior to trial, and, in those cases resulting in effective invalidity of the patent, likely dismissal of the suit. *Bausch & Lomb, Inc. v. Rexall Sundown, Inc., et al*, 554 F. Supp. 2d 386, 389-90 (W.D.N.Y. 2008). In short, staying a patent infringement case until the PTO has determined if the patent is still valid serves the interests of judicial economy because the parties will not need to prepare for litigation that may end up being dismissed based on the results of the reexamination.

*Heinz Kettler GMBH & Co., KG v. Indian Indus.*, 592 F. Supp. 2d 880, 882 (E.D. Va. Jan. 6, 2009).

By contrast, Plaintiff will suffer little or no prejudice. Plaintiff's assertion that there is "a near-certainty that the stay defendants seek 'will work damage' to ePlus . . ." is based solely on its unrealistic expectation of obtaining injunctive relief. *See* Pltf.'s Opp'n at 13. Once this is removed from the analysis, Plaintiff cannot show any prejudice it would suffer from Defendants obtaining a stay that cannot be compensated by damages. *See infra* II.D; *see also NTP, Inc. v. T-Mobile USA, Inc.*, Nos. 3:07–CV–548, 549, 550, 551, 2007 U.S. Dist. LEXIS 82063, at *8 (E.D. Va. Nov. 2, 2007) (Spencer, J.) (noting that if the patents-at-issue are found valid, a stay will not cause irreparable harm to the plaintiff since the plaintiff is eligible to recover damages for any infringement of the patents-at-issue that occurs while the reexamination is proceeding).

### B. A Stay Pending Reexamination Would Greatly Simplify Matters in This Litigation

ePlus argues that the reexamination prosecution history will not simplify issues, but that it will further complicate the case. This assumes that the claims pass through unchanged, a scenario which the statistics and evidence clearly show to be unlikely. As stated in Defendants' Motion to Stay, 75% of *ex parte* and 95% of *inter partes* reexamination proceedings result in cancelled or amended claims. During the reexamination, the PTO has already rejected all of the reviewed '683 claims on four separate anticipation bases. ePlus's arguments completely ignore the likelihood that claims will be cancelled and/or amended, and the repercussions of inconsistent results. *See, e.g., T-Mobile USA, Inc.*, Nos. 3:07–CV–548, 549, 550, 551, 2007 U.S. Dist. LEXIS 82063, at *8 ("[P]reparing to try [this] suit[] before the re-examination proceedings are complete would be like trying to hit a moving target, without knowing even what the target looks like.").

ePlus further oversimplifies the issues when asserting that "there is no prospect that the reexaminations will preclude the need for litigation and trial in this Court." Pl.'s Opp'n at 3 (emphasis removed). Even if reexamination of the '683 and '172 patents does not eliminate all of the issues in this case, it is highly likely that many of the issues will be resolved and/or simplified. As discussed above, claims 1-25 of the '683 patent may be easily disposed of based on claim construction. Due to the relationship between the patents-in-suit and the fact that they share an identical specification, the guidance provided from reexaminations of the '683 and '172 patents would surely be valuable in construing all of the claims at issue. Settlement certainly becomes more viable in the face of so many issues potentially being resolved as well.

ePlus implies that additional clarity concerning the patents-in-suit is unnecessary because the original prosecution histories exist along with records from two litigations. However, ePlus

is underestimating the importance of reexamination prosecution history, which is "part of the 'intrinsic evidence,' consist[ing] of the complete record of the proceedings before the PTO," and "providing evidence of how the PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (*citing Autogiro Co. of America v. United States,* 384 F.2d 391, 399 (Ct. Cl. 1967); *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)). Furthermore, ePlus's litigation against Ariba did not involve the prior art being addressed in the reexamination, and the litigation against SAP resulted in no verdict.

### C. A Stay Pending Reexamination Is Not Premature

Granting a stay at this point in the litigation is not premature and, in fact, is the best time to do so. *See Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, Case No. 3:05-CV-1560-G, 2006 U.S. Dist. LEXIS 64698, at *12 (N.D. Tex. Sept. 11, 2006) (noting that the "lesser cost" of granting a stay before discovery has commenced "indicates the best time to grant a stay is in the early stages of litigation."). Plaintiff completely ignores the fact that the '683 patent is already under reexamination and is subject to a final office action. Instead, it focuses on Lawson's recent reexamination request of the '172 patent. In addition, it grossly mischaracterizes this Court's precedent and states that Defendants' motion is "premature as a matter of law under the established precedent of this Court." This statement is not supported by a careful review of the cases.

Plaintiff cites to a single district court opinion, *Heinz Kettler*, for this "established precedent" and then describes this one opinion as "[a]dopting what appears to be the majority view." However, there is no indication in *Heinz Kettler* that the Court believed it was adopting a majority view, especially since it did not cite to any other cases holding this view, nor has Plaintiff cited to a single other case in any court that held the same way. Instead, the *Heinz Kettler* Court recognized that a few courts have concluded otherwise, but nevertheless found the

8

way it did because it could not find a "reason to depart from the very language of 35 U.S.C. § 318, which dictates the timing of obtaining a stay." 592 F. Supp. 2d at 882 n.5.

Nevertheless, *Heinz Kettler* is inapposite to the present case. As Plaintiff notes, *Heinz Kettler* found a motion to stay premature under 35 U.S.C. § 318. However, this statute does not apply to the present case because 35 U.S.C. § 318 is limited to "the patent owner" obtaining a stay. *See P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (noting that § 318 applies only to patentees, but that a defendant may nevertheless seek a stay under the district court's inherent power). Here, Defendants are requesting the stay, not ePlus. Accordingly, the Court has the ability to stay the case now under its inherent powers and the cases cited in Defendant's Motion to Stay with respect to staying this litigation based on the reexamination of the '172 patent are still applicable.

### D. A Stay Pending Reexamination Would Not Unduly Prejudice ePlus

Finally, and most importantly, ePlus will not be unduly prejudiced by a stay of its claims related to the patents-in-suit. One of ePlus's primary arguments in opposition to a stay is its assertion that a stay will unfairly delay its opportunity to seek injunctions against Defendants. However, even if ePlus was successful in its infringement claims, it would not be likely to prevail on an injunction, because of its history of licensing the patents-in-suit. *See* Farber Decl.[3] at ¶¶13-16. Having granted at least Ariba and SAP the right to practice these patents, ePlus cannot now claim that it would suffer irreparable harm from Defendants' alleged subsequent practicing of these patents, or that money damages would be inadequate to compensate it – which ePlus must show to obtain an injunction. *See, e.g., eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (traditional four-factor test for injunctive relief applies to request for

---

[3] "Farber Decl." refers to the Declaration of Kenneth G. Farber In Support of Plaintiff ePlus Inc.'s Opposition to Defendants' Motion to Stay.

9

permanent injunction in patent context; injunction should only issue where money damages are inadequate); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560-61 (D. Del. 2008) (denying request for permanent injunction against a direct competitor in light of patentee's "willingness to forego its patent rights for compensation," *i.e.*, licensing patents-in-suit to other competitors); *see also Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (noting that the "fact that a patentee has previously chose to license the patent may indicate that a reasonable royalty does compensate for an infringement").

Defendants deny that ePlus is entitled to any recovery in this action, but even if ePlus was entitled to money damages, any delay in collecting such damages is itself compensable and does not amount to prejudice that would justify the parties and the Court investing resources in litigating patents that could be invalidated or significantly modified during reexamination. *See Yodlee, Inc. v. Ablaise Ltd.*, Nos. C-06-7222, 2451, 2009 WL 112857, at *6 (N.D. Cal. Jan. 16, 2009) (noting that any delay in collection of money damages created by stay pending reexamination does not amount to prejudice because delay would be compensated by increased damage and prejudgment interest amounts).

In addition, ePlus attempts to distract the Court from the balancing of equities by setting forth voluminous statistics to allege that a stay pending the reexamination proceedings "will result in interminable delay for this action . . . ." However, ePlus misses the point. The delay, by itself, is irrelevant. *See Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715, 2006 U.S. Dist. LEXIS 37743, at *5 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."). Instead, the proper focus is whether parties' and the Court's resources will be conserved by the stay, which, as explained above and in Defendant's Motion for Stay, they very likely will.

10

## IV.    CONCLUSION

Plaintiff's opposition ignores the equities in determining whether to stay this litigation by minimizing the effects the reexamination will have on this litigation if they were to proceed in parallel with this litigation and by grossly exaggerating the prejudice Plaintiff alleges it will suffer by the stay. In reality, the reexamination proceedings will have a significant effect on this litigation and Plaintiff can be compensated for any delay by money damages, which eliminates any prejudice it might suffer. In addition, a stay pending reexamination would greatly simplify matters in this litigation and conserve Court and party resources. Accordingly, Defendants respectfully request that the Court stay further proceedings in this litigation pending completion of the reexamination proceedings regarding the '683 and '172 patents.

Dated: August 3, 2009

Respectfully submitted,

/s/ Stephen E. Noona
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:    (757) 624-3000
Facsimile:    (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC, SciQuest, Inc. and Lawson Software, Inc.*

Daniel Johnson, Jr. (*admitted pro hac vice*)
Rita E. Tautkus (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:    (415) 442-1000
Facsimile:    (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com

Robert W. Busby, Jr. (VSB No. 41312)
Bradford A. Cangro (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone:   (202) 739-3000
Facsimile:   (202) 739-3001
rbusby@morganlewis.com
bcangro@morganlewis.com

*Counsel for Defendants SciQuest, Inc. and Lawson Software, Inc.*

Kenneth W. Brothers (*pro hac vice* pending)
Matthew J. Ricciardi (*pro hac vice* pending)
Dickstein Shapiro LLP
1835 Eye Street NW
Washington, DC 20006
Telephone:   (202) 420-4128
Facsimile:   (202) 420-2201
brothersk@dicksteinshapiro.com

*Counsel for Defendant Perfect Commerce, LLC*

12

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2009, I will electronically file the foregoing Reply in Further Support of Motion of Defendants Perfect Commerce, LLC, SciQuest, Inc., and Lawson Software, Inc. to Stay Proceedings in Light of Pending Reexaminations of Patents-in-Suit with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory N. Stillman
Brent Lee VanNorman
Hunton & Williams
500 East Main Street, Suite 1000
Norfolk, VA 23510
Tel.: 757-640-5300
Fax.: 757-625-7720
gstillman@hunton.com
bvannorman@hunton.com

David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
dyoung@goodwinprocter.com

OF COUNSEL:

Scott L. Robertson
Jennifer A. Albert
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

*Attorneys for Plaintiff*

James John Briody
Sutherland, Asbill & Brennan
1275 Penn Avenue, NW
Suite 800
Washington, DC 20004-2404
(202) 383-0100
jim.briody@sutherland.com

George E. Kostel (VSB No. 34757)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue, NW Suite 900
Washington, DC 20001
Tel.: 202-712-2800
Fax.: 202-712-2862
george.kostel@nelsonmullins.com

*Attorneys for Defendant Verian Technologies, Inc.*

        /s/ Stephen E. Noona
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:   (757) 624-3000
Facsimile:   (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC, incorrectly identified as Perfect Commerce, Inc., SciQuest, Inc. and Lawson Software, Inc.*

14