IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:09cv232-HCM-TEM |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PERFECT COMMERCE, LLC, SCIQUEST, | ) | |
| INC., and LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ePLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER PROCEEDINGS OR IN THE ALTERNATIVE
TO ADOPT PRIOR VACATED RULING**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   ARGUMENT..........................................................................................................4

     A.     The Assignment Of This Case To This Court Resulted From This Court's
          Policy Of Rotating Patent Cases ..............................................................................4

     B.     This Court Should Not Reverse Or Ignore Judge Spencer's Order of
          *Vacatur*..................................................................................................................5

     C.     Granting Defendants' Motion Would Be Tantamount To Giving Collateral
          Estoppel Effect To A Vacated, Unappealed, Interim Order ....................................7

     D.     Defendants Ask This Court To Blindly Adopt A Vacated Order Without
          Any Analysis Whatsoever........................................................................................8

     E.     Defendants Fail To Meet The Standard Required To Justify Transfer
          Under 28 U.S.C. § 1404(a) .....................................................................................9

     F.     Defendants' Motion Is Inconsistent With Their Co-Pending Motion For A
          Stay of Proceedings...............................................................................................12

IV.   CONCLUSION.....................................................................................................16

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ............................................................................................. 15

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) ............................................................................................. 15

*Alabakis v. Iridium Holdings, LLC*,
  2007 WL 3245060 (D. Md. Nov. 1, 2007) ............................................................................. 10

*Beam Laser Sys., Inc. v. Cox Communications, Inc.*,
  117 F. Supp. 2d 515 (E.D. Va. 2000) ..................................................................................... 10

*Broadcom Corp. v. Qualcomm, Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ............................................................................................... 16

*Clever Devices, Ltd. v. Digital Recorders, Inc.*,
  2004 U.S. Dist. LEXIS 10494 (N.D. Tex. June 3, 2004) .......................................................... 5

*Dana v. E.S. Originals, Inc.*,
  342 F.3d 1320 (Fed. Cir. 2003) ............................................................................................... 5

*Data Treasury Corp. v. First Data Corp.*,
  243 F. Supp. 2d 591 (N.D. Tex. 2003) .................................................................................... 12

*Graco Children's Prods., Inc. v. Regalo Int'l, LLC*,
  77 F. Supp. 2d 660 (E.D. Pa. 1999) ......................................................................................... 7

*Heinz Kettler GMBH & Co., KG v. Indian Indus.*,
  592 F. Supp. 2d 880 (E.D. Va. 2009) ..................................................................................... 15

*In re Etter*,
  756 F.2d 852 (Fed. Cir. 1985) ............................................................................................... 13

*In re Yamamoto*,
  740 F.2d 1569 (Fed. Cir. 1984) ............................................................................................. 13

*Inline Connection Corp. v. Verizon Internet Servs., Inc.*,
  402 F. Supp. 2d 695 (E.D. Va. 2005) ..................................................................................... 12

*Intelligent Peripheral Devices, Inc. v. Smartpad, Inc.*,
  1998 WL 754606 (N.D. Cal. Oct. 26, 1998) .......................................................................... 13

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
  147 F. Supp. 2d 464 (W.D. Va. 2001) ................................................................................... 7, 8

*Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*,
  2005 WL 2177000 (W.D. Tenn. 2005) ..................................................................................... 7

*LG Elecs., Inc. v. Advance Creative Computer Corp.*,
  131 F. Supp. 2d 804 (E.D. Va. 2001) ..................................................................................... 12

*Logan v. Hormel Foods Corp.,*
  2004 U.S. Dist. LEXIS 30327 (E.D. Tex. Aug. 25, 2004) ...................................................... 12

*Markman v. Westview Instrum., Inc.,*
  517 U.S. 370 (1996)...................................................................................................... passim

*Nken v. Holder,*
  129 S. Ct. 1749 (2009)............................................................................................................ 13

*NTP, Inc. v. Palm, Inc.,*
  2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) ........................................................ 12

*PalTalk Holdings, Inc. v. Microsoft Corp.,*
  2008 U.S. Dist. LEXIS 94462 (E.D. Tex. July 29, 2008) .......................................................... 7

*RF Delaware, Inc. v. Pac. Keystone Techs., Inc.,*
  326 F.3d 1255 (Fed. Cir. 2003) ................................................................................................ 7

*United States v. Martin,*
  378 F.3d 353 (4th Cir. 2004) .................................................................................................... 6

*Zinus, Inc. v. Simmons Bedding Co.,*
  2008 U.S. Dist. LEXIS 33359 (N.D. Cal. Apr. 23, 2008) .......................................................... 5

**Statutes**

28 U.S.C. § 1404................................................................................................................................ 9

35 U.S.C. § 318................................................................................................................................ 15

**Other Authorities**

Black's Law Dictionary 1548, 1573 (6th ed. 1990) ........................................................................ 6

**Rules**

Fed. R. Civ. P. 54.............................................................................................................................. 5

## I.    INTRODUCTION

Plaintiff ePlus, Inc. ("ePlus") respectfully requests that the Court deny in its entirety defendants'[1] motion to transfer and/or adopt United States District Judge Spencer's *vacated* claim construction ruling from ePlus's prior litigation against SAP. Defendants' motion is a transparent instance of judge-shopping. Here, *two* District Judges of this Court have previously considered and construed some of the claims of the patents-in-suit. Without any explanation or analysis of the claim terms whatsoever, defendants ask that this Court blindly adopt Judge Spencer's *Markman* ruling, which Judge Spencer himself *vacated* based on the evidence at a subsequent trial, and that this Court ignore the *Markman* ruling of Judge Brinkema which was *not* vacated. The "rationale" for defendants' choice is nothing more than that defendants prefer Judge Spencer's vacated *Markman* ruling to that of Judge Brinkema. Nothing more; nothing less.

Contrary to defendants' overheated argument, allegedly "litigious" ePlus is not seeking a "third bite" at claim construction. ePlus has filed each of its three patent litigations in this Court in the Alexandria Division, which is ePlus's home forum (Herndon, Virginia). The Alexandria Clerk *sua sponte* transferred the second litigation against SAP to the Richmond Division pursuant to the Court's policy of rotating patent cases. It was again the Alexandria Clerk that transferred this third litigation against the instant defendants to the Norfolk Division. Defendants do not present any compelling argument that they face any cognizable inconvenience in having to litigate before this Court. Defendants should respect this Court's policy and practice of rotating patent cases, as ePlus has done, and their motion to transfer should be denied.

---

[1] Defendants' brief again notes that Perfect Commerce is now a limited liability company (LLC) rather than a corporation. Def.'s Br. at 1, n.1. ePlus acknowledged this in its Reply and Answer to Perfect Commerce's answer and counterclaim. (Dkt. No. 29, at 2).

## II.    BACKGROUND

In May 2004, ePlus filed a patent infringement action in the Alexandria Division of this

Court against Ariba, Inc., asserting the same three patents-in-suit as are at issue in this case.

ePlus is based in Herndon, Virginia, and therefore the Alexandria Division is ePlus's home

forum. (Dkt. No. 1, Complaint, ¶ 7). During the course of the Ariba litigation, Judge Brinkema

construed the claims of the patents-in-suit and rendered a summary judgment ruling. *See*

Exhibits A (Mem. Op. of District Judge Leonie M. Brinkema (Jan. 19, 2005)) and B (Jury

Instruction No. 19, pp 20-25), attached hereto. Judge Brinkema subsequently presided over a

jury trial that resulted in a verdict of willful infringement and patent validity. After the jury

verdict was returned but before the Court proceeded to the damages phase of the trial, the parties

settled the case with Ariba taking a license to the patents-in-suit for $37 million. (Dkt. No. 49

(Attachment No. 1, Farber Declaration, ¶ 13)).

ePlus subsequently filed a second action against SAP, again in the Alexandria Division,

ePlus's home forum. Pursuant to this Court's policy and practice of rotating patent cases to

different judges among the different divisions, this Court transferred the action to Judge Spencer

in the Richmond Division. ePlus did not protest or move to transfer the case back to the

Alexandria Division or Judge Brinkema. Instead, ePlus respected this Court's rotation policy

and litigated the matter before Judge Spencer.

During the course of the SAP litigation, Judge Spencer construed some of the asserted

claim terms and issued a *Markman* Order and an order granting partial summary judgment of

non-infringement as conceded by ePlus based on his *Markman* ruling. Exhibits C (*Markman*

Order), D (summary judgment order), attached hereto. The case subsequently went to trial

before a jury. After some of the impaneled jurors were excused from service for various reasons,

the remainder of the jurors were unable to reach a decision and the Court declared a mistrial.

2

The parties thereafter agreed to submit the case to Judge Spencer for a bench ruling; however, before that occurred SAP agreed to settle the case and, again, took a license to the patents-in-suit. (Dkt. No. 49 (Attachment No. 1, Farber Dec., ¶ 14)).

Importantly, when the parties settled the case, *e*Plus moved that the Court vacate its *Markman* Order and its summary judgment ruling. Exhibit E (*e*Plus's brief in support of motion to vacate), attached hereto. *e*Plus's motion was not based solely on the desire to nullify an unhelpful claim construction that *e*Plus would not have the opportunity to correct on appeal. Rather, *e*Plus's motion was also based on the fact that Judge Spencer's orders were shown to be erroneous based on the evidence at trial. *Id.*

Indeed, *e*Plus's motion before Judge Spencer could not have been more direct in arguing that the evidence at trial contradicted his claim construction and his partial summary judgment ruling. *See id.* at 4-11 ("***this Court's Markman Order is at odds with the evidence adduced at trial***;" "the evidence adduced at trial established that the inventions of the patents-in-suit are not limited to operating only on a local computer … [e]ven Defendants' experts conceded as much during their testimony;" "[t]he evidence adduced at trial established that the patent specification describes several different communications protocols other than the DDE protocol that a person of ordinary skill in the art would have appreciated could have been employed ….") (emphasis added). ***Judge Spencer granted the motion, and he vacated both his Markman Order and the summary judgment order***. Exhibit F (*vacatur* order). Judge Spencer's *vacatur* order stated that he was vacating the rulings "***for the reasons set forth in ePlus's Memorandum*** in support of its Motion," *id.* at 1 (emphasis added), and he certainly understood the ramifications of doing so.

On May 19, 2009, *e*Plus filed the instant litigation. Again, *e*Plus filed the action in its home forum, the Alexandria Division. Again, this Court transferred the action pursuant to the

Court's rotation policy, this time to the Norfolk Division. *e*Plus accepts that policy, has never

contested it, and is content to remain here.

## III.    ARGUMENT

### A.    The Assignment Of This Case To This Court Resulted From This Court's Policy Of Rotating Patent Cases

As with their co-pending motion to stay this case, defendants attempt to demonize *e*Plus

rather than address the salient facts. Here, defendants argue that *e*Plus is attempting to get "three

bites at the apple" by litigating before this Court. This argument has no merit.

*e*Plus did not file this action in this Division of the Court. *e*Plus has brought three actions

in this judicial district to enforce its patents (against different defendants), and on each of these

occasions it brought the suit in its home forum, the Alexandria Division.[2] In the first instance,

the Alexandria Division retained the case against Ariba; Judge Brinkema presided and rendered a

claim construction and summary judgment ruling before trial. Exhibit A. In the second instance,

notwithstanding Judge Brinkema's prior handling of the Ariba case, this Court *sua sponte*

transferred the matter to Judge Spencer in Richmond pursuant to the Court's policy of rotating

patent cases. And with respect to the current litigation, it was again the Court, not *e*Plus, that

transferred the matter from Alexandria to the Norfolk Division, notwithstanding that Judges

Brinkema and Spencer had presided over the Ariba and SAP cases, respectively. *e*Plus did not

request the transfers, nor did it seek to undo them as Defendants do here. Instead, *e*Plus

respected the Court's rotation policy and proceeded before the District Judge assigned to the

case.

---

[2] *e*Plus is located in Herndon, Virginia, within the Alexandria Division of this judicial
district.

**B.      This Court Should Not Reverse Or Ignore Judge Spencer's Order of *Vacatur***

Defendants ask that this Court effectively reverse or ignore Judge Spencer's considered decision to vacate his claim construction and summary judgment orders.  However, defendants present no reason why this Court should do so.

As noted by Judge Dyk of the Federal Circuit in his concurring opinion in *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003), a district court has the power to vacate its own non-final orders.  *Id.* at 1328; *see also* Fed. R. Civ. P. 54(b) ("any order ... which adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").  Judge Dyk recommended the mechanism of *vacatur* as an effective way for parties settling a case at the district court level to prevent interim, non-appealable decisions in the litigation from having potential collateral estoppel effect in future litigation involving other parties.  *Id.* at 1328.

Although the mechanism of *vacatur* is available to district courts, some courts have been reluctant to exercise that authority with respect to claim construction orders absent a showing of "public interest" or "exceptional circumstances."  *See, e.g., Zinus, Inc. v. Simmons Bedding Co.*, 2008 U.S. Dist. LEXIS 33359, **4-5 (N.D. Cal. Apr. 23, 2008) (acknowledging court's authority to vacate claim construction order but declining to do so because it was speculative whether order would be given preclusive effect); *Clever Devices, Ltd. v. Digital Recorders, Inc.*, 2004 U.S. Dist. LEXIS 10494, **12-14 (N.D. Tex. June 3, 2004) (acknowledging court's authority to vacate claim construction order but finding that exceptional circumstances did not exist to do so under facts of case).  Nevertheless, the fact that Judge Spencer made the considered decision to vacate both his claim construction ruling and accompanying summary judgment order after

5

hearing the evidence at trial in the SAP case speaks volumes and indicates to this Court that it should not adopt the rulings that Judge Spencer decided to vacate. Indeed, defendants do not present any authority for this Court to reverse or ignore Judge Spencer's decision to vacate his orders.

By its very definition, a vacated order is null and void. "'Vacate' means 'to render an act void; as, to vacate an entry of record, or a judgment.' And a judgment that is 'void' . . . 'is nugatory and ineffectual so that nothing can cure it.'" *United States v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004) (quoting Black's Law Dictionary 1548, 1573 (6th ed. 1990)).

Defendants' motion effectively asks this Court to reverse or ignore Judge Spencer's considered order of *vacatur*. Yet the sole justification they present in support of this request is that doing so would allegedly reduce the risk of inconsistent claim constructions that "can impede the administration of justice." Def.'s Br. at 6. This argument evaporates, however, when one considers that there is *another Markman* ruling on the same patents by Judge Brinkema of this Court, which is inconsistent in important respects with Judge Spencer's vacated orders that defendants seek to restore. *See* Exhibits A, B. Accordingly, adopting Judge Spencer's vacated rulings would not avoid inconsistent claim constructions, but would actually create an inconsistency with Judge Brinkema's ruling.

Moreover, it is — to put it charitably — ironic that defendants urge this Court to adopt a *vacated Markman* order from a case in which no jury verdict was reached, rather than the *Markman* order of Judge Brinkema, which was never vacated from a case in which a jury rendered a verdict of infringement and validity. While defendants cloak their arguments with the mantra of judicial efficiency and uniformity, in truth their position is pure judge-shopping and based solely on the ground that they prefer Judge Spencer's *vacated* claim construction to that of

Judge Brinkema.  Defendants offer no rationale why this Court should favor Judge Spencer's vacated orders over the non-vacated orders of Judge Brinkema, particularly in light of the fact that Judge Spencer vacated his orders after hearing trial evidence that contradicted his rulings.

<blockquote>

**C.    Granting Defendants' Motion Would Be Tantamount To Giving Collateral Estoppel Effect To A Vacated, Unappealed, Interim Order**
</blockquote>

The lack of merit to defendants' request is further illustrated by the fact that even district court claim construction rulings that are *not* vacated are typically not given collateral estoppel effect. *See, e.g., RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261-62 (Fed. Cir. 2003) (no collateral estoppel effect of claim construction order in previous case that settled prior to a final judgment); *PalTalk Holdings, Inc. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 94462 (E.D. Tex. July 29, 2008) ("[T]he majority of courts have found that collateral estoppel does not bind the later court to the claim construction of the previous court."); *Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, 2005 WL 2177000, *3 (W.D. Tenn. 2005) (refusing to give preclusive effect to prior claim construction rendered by another district court because order was never appealed to Federal Circuit, due to the parties' settlement, and order cannot be viewed as final for purposes of collateral estoppel); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 467-69 (W.D. Va. 2001) (collateral estoppel did not apply to patentee's patent infringement claims against alleged infringer because a settlement between the parties does not constitute a final judgment); *Graco Children's Prods., Inc. v. Regalo Int'l, LLC*, 77 F. Supp. 2d 660, 663-65 (E.D. Pa. 1999) (plaintiff was not collaterally estopped from relitigating same issue of claim construction, even though settlement was reached after appeal filed).

This point of law is well demonstrated by the fact that Judge Spencer evidently did not believe that he was bound to follow Judge Brinkema's claim construction.  If a district court is

not bound by a ***non-vacated*** claim construction ruling from a prior case,[3] *a fortiori* it is certainly

not bound by a prior district court claim construction order that was vacated (and therefore null

and void) after careful consideration by the very District Judge who rendered it.

Defendants do not cite any precedent according collateral estoppel effect to a vacated

claim construction ruling. But to grant defendants' motion would be tantamount to doing just

that.[4]

### D. Defendants Ask This Court To Blindly Adopt A Vacated Order Without Any Analysis Whatsoever

Having asked that this Court effectively reverse Judge Spencer's order of *vacatur,*

defendants also ask that this Court blindly adopt the vacated claim construction order without

any analysis whatsoever. Defendants present not an iota of analysis as to what Judge Spencer

ruled and why his vacated rulings were supposedly correct.[5]

As *e*Plus pointed out to Judge Spencer with its motion to vacate, there were serious

problems with Judge Spencer's claim construction and summary judgment rulings, not the least

of which was that they were contradicted by the evidence at trial. For example, each of Judge

Spencer's means-plus-function claim constructions required that the recited means execute on a

"local computer," notwithstanding that the specification of the patents-in-suit discloses a

---

[3] In *Kollmorgen*, for example, the district court denied a request to vacate its claim construction order. 147 F. Supp. 2d at 465-66. The court then held that issue preclusion should not apply even though the order had not been vacated. *Id.* at 466-70.

[4] Defendants argue that the Supreme Court's *Markman* decision, *Markman v. Westview Instrum., Inc.,* 517 U.S. 370 (1996), was intended to promote uniformity of claim construction, which would be served by this Court's adoption of Judge Spencer's vacated orders. Again, defendants' appeal to uniformity fails where two District Judges of this Court have already given different rulings, neither of which was or will be appealed to the Federal Circuit.

[5] Indeed, given that Judge Spencer vacated his claim construction and summary judgment rulings based on the evidence at trial, there is no reason to think that he would adopt his prior *Markman* ruling if the case were transferred back to him.

networked embodiment of the inventions that is not limited to execution on a local computer. Exhibit E at 4-7. Indeed, SAP's own experts conceded at trial that the patented inventions could be employed in a networked environment. *Id.* at 6. Additionally, Judge Spencer's constructions of the means-plus-function claim terms limited the claims to software modules that communicate using a specific communication protocol (the Dynamic Data Exchange (DDE) protocol), although the evidence adduced at trial established that the patent specification describes several different communications protocols other than the DDE protocol that a person of ordinary skill in the art would have appreciated and could have been employed to communicate and transmit data between the software modules of the patented systems. *Id.* at 7-11. Again, SAP's experts conceded this point at trial. *Id.*

For these reasons, among others, Judge Spencer acknowledged that his *Markman* Order was incorrect. Moreover, because there was a previous *Markman* ruling that was inconsistent with Judge Spencer's *Markman* Order, Judge Spencer concluded that it was in the interest of justice that he vacate his *Markman* Order and the summary judgment orders dependent on his incorrect means-plus-function claim constructions. Exhibit F ("Upon due consideration by the Court, and for the reasons set forth in *e*Plus's Memorandum in support of its Motion, *e*Plus's Motion is hereby GRANTED.").

### E. Defendants Fail To Meet The Standard Required To Justify Transfer Under 28 U.S.C. § 1404(a)

Defendants ask that the Court transfer this matter to Judge Spencer pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The movant requesting a transfer of venue bears the burden to show that transfer is warranted, considering factors including the ease of access to sources of proof, the

convenience of the parties and witnesses, the cost of obtaining the attendance of witnesses, the availability of compulsory process, the interest in having local controversies decided at home, and the interest of justice. *Beam Laser Sys., Inc. v. Cox Communications, Inc.,* 117 F. Supp. 2d 515, 517-19 (E.D. Va. 2000).[6]

Plainly, defendants fail to meet their burden to show that the case should be transferred considering these factors.[7]  First, while defendants cite to cases stating that plaintiff's choice of forum is entitled to substantial weight, Def.'s Br. at 4, they baldly conclude, without explanation, that no deference is due to *e*Plus's choice in this case. *Id.* ("Its choice, to the extent it made one, is irrelevant."). *e*Plus filed this case in its home forum in the Alexandria Division. If this Court is inclined to transfer the case, the Alexandria Division (where Judge Brinkema presided over the Ariba case and rendered a claim construction ruling that was not vacated) would be the appropriate transferee forum.[8]  It would be anomalous if this Court's rotation policy were applied in such a way that the defendants could seek transfer based on the convenience factors under Section 1404(a), but the plaintiff's forum choice was eliminated from consideration.

Second, defendants do not present any argument as to the convenience factors that this Court "must consider and balance" in deciding whether to transfer the case. *Beam Laser,* 117 F. Supp. 2d at 517. This omission is telling, because it is implausible that the defendants could find

---

[6] At least one court within the Fourth Circuit has held that "trial courts should entertain Section 1404(a) motions for intra-district change of venue with caution, and should not grant the requested relief unless the balancing of convenience and public interest factors results in a firm conclusion that the proposed new venue is decidedly more convenient and in the interest of justice." *Alabakis v. Iridium Holdings, LLC,* 2007 WL 3245060, *1 (D. Md. Nov. 1, 2007).

[7] The statute permits transfer to another district or division. The statute does not speak of transferring to a specifically-identified judge, as defendants request here. In addition, defendants simply declare – without explanation or citation – that this case might have been brought in the Richmond Division as required by the transfer statute. Def.'s Br. at 2-3.

[8] *e*Plus is not moving the Court to transfer the case, but merely stating that in the event the Court believes the case should be transferred, the transfer should be to the Alexandria Division.

10

the Richmond Division to be more convenient to any significant degree considering that two of the defendants are from out of state and one, Perfect Commerce, is actually headquartered here in Newport News, Virginia.

At its core, defendants' motion relies solely on the unspoken and unsupported assumption that if the case is transferred to Richmond either Judge Spencer or perhaps some other judge from that Division will reverse Judge Spencer's ruling vacating his claim construction and summary judgment orders. There is no factual or logical basis for this assumption. Judge Spencer undoubtedly knew exactly what he was doing when he vacated those orders. And as for any "persuasive" value Judge Spencer's voided orders might have, this Court may consider that for what it is worth just as well as could a District Judge in the Richmond Division.

Ultimately, defendants rely heavily on the notion that the interests of justice compel transfer because Judge Spencer previously rendered a claim construction ruling and presided over a trial. The force of this argument is quickly dispelled, however, by the fact that Judge Spencer vacated his orders in light of the trial evidence, whereas Judge Brinkema — who also rendered claim construction and summary judgment rulings and presided over a trial — did not. None of the cases cited by defendants appear to involve the scenario in which a case was transferred to a judge who had vacated his own orders based on the evidence at trial, as Judge Spencer did here. Neither do defendants explain why the case should be transferred to Richmond rather than Alexandria (*e*Plus's home forum and venue choice, and the venue where Judge Brinkema presided over a prior trial on the same patents-in-suit).[9] All of defendants' arguments in favor of transfer apply all the more to the Alexandria Division.

_____

[9] A copy of this Court's docket sheet demonstrating the extent of the proceedings before Judge Brinkema and the Alexandria Division in the *Ariba* litigation is attached as Exhibit G.

11

Defendants cite to a number of cases in which district courts have transferred patent cases to courts in which there was co-pending litigation involving the same patents. However, most of the cited cases involved situations in which there was *simultaneous* litigation involving the same patents.[10] *See, e.g., Inline Connection Corp. v. Verizon Internet Servs., Inc.*, 402 F. Supp. 2d 695 (E.D. Va. 2005) (Morgan, J.) (transferee court was already hearing parallel litigation involving same patents and related parties); *Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591 (N.D. Tex. 2003) (transferee court was presiding over two related patent actions and case was first filed in transferee court); *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (transferee court was presiding over two other actions involving same patents and had rendered prior claim construction). None of these cases appear to have involved situations as here where the proposed transferee court had closed the case more than two years earlier *and* vacated its rulings.

### F. Defendants' Motion Is Inconsistent With Their Co-Pending Motion For A Stay of Proceedings

Finally, defendants' motion is inconsistent with their arguments in their co-pending motion for a stay of proceedings.[11] In their motion for a stay, defendants argue that the Court should delay until the PTO has conducted reexamination proceedings in order that the PTO can provide guidance as to claim construction. *See, e.g.*, Def.'s Stay Reply at 7 ("the guidance provided from reexaminations … would surely be valuable in construing all of the claims at

---

[10] The cited case of *Logan v. Hormel Foods Corp.*, 2004 U.S. Dist. LEXIS 30327 (E.D. Tex. Aug. 25, 2004) involved sequential cases relating to the same patents, but in that case the Court found there were additional convenience factors not present here that merited transfer.

[11] Defendants rely on *NTP, Inc. v. Palm, Inc.*, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) (Spencer, J.), as correctly stating the standard for assessing a stay motion, but they misstate the date of the decision as coming in 2009. Def.'s Stay Reply at 5. This misstatement incorrectly suggests that the decision was rendered after the Supreme Court's more recent

12

issue."). Yet here, defendants argue that the claim construction exercise has already been performed by Judge Spencer and this Court should adopt his vacated rulings without further thought.[12] Relatedly, with their stay motion defendants repeatedly argue that the reexaminations will create important "prosecution history" impacting the scope of the claims of the patents-in-suit. Def's. Stay Br. at 3, 8-10. Once again, this contradicts their present argument that Judge Spencer has already decided the scope of the claim terms and that this Court should blindly adopt his vacated rulings.

Moreover, the very nature of their stay motion conflicts with this motion asking that the Court proceed without delay to adopt a claim construction. In fact, this litigation and a PTO reexamination are two entirely different proceedings, involving different procedures and different burdens of proof. *In re Etter,* 756 F.2d 852, 857 (Fed. Cir. 1985) ("litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes."); *In re Yamamoto,* 740 F.2d 1569, 1571-72 (Fed. Cir. 1984) (PTO reexaminations and district court litigation proceedings apply different standards of claim interpretation); *see, e.g., Intelligent Peripheral Devices, Inc. v. Smartpad, Inc.,* 1998 WL 754606, **2-3 (N.D. Cal. Oct. 26, 1998) (denying motion for summary judgment of invalidity that was based on PTO's preliminary rejection of claims in reexamination, and stating "[d]espite the patent examiner's decision, the ... Patent thus continues to enjoy a presumption of validity ...."). Accordingly, this

---

decision in *Nken v. Holder,* 129 S. Ct. 1749 (2009). The Supreme Court's 2009 *Nken* decision states the standard for a stay that all district courts must apply.

[12] Indeed, defendants assail *e*Plus for not seeking to have Judge Spencer's vacated claim construction imposed in this case.

Court need not and should not adjust its schedule and procedures to react to PTO proceedings that may take as long as a decade to resolve.[13]

Defendants continue to engage in semantic gymnastics in order to mislead the Court into believing the PTO has finally rejected some of the claims of the '683 patent-in-suit. *See* Def.'s Br. at 2 (referring to "final rejection" and stating "the U.S. Patent and Trademark Office has looked at some of the claims and found them to be anticipated."); *see also* Def.'s Stay Reply at 7 ("*the PTO has already rejected* all of the reviewed '683 claims") (emphasis added). Notwithstanding these arguments, defendants disclaim that "nowhere did Defendants suggest that the final rejection was a 'final PTO decision' or a 'final determination as to the validity of the patent claims.'" Def.'s Stay Reply at 2. The fact of the matter is that there has been no final decision from the PTO in its reexamination of some of the '683 Patent claims, and as of this date the '172 reexamination request has been rejected. *See e*Plus Opp. to Stay Motion at 22. As Defendants appear to concede, the '683 Patent examiner has not yet even filed an answer to *e*Plus's brief before the Board of Patent Appeals and Interferences. Accordingly, defendants cannot project an end to this proceeding anytime soon.

Defendants' reply arguments on the stay motion place great emphasis on the possibility that some claims may be amended or cancelled as a result of reexamination. Defendants' arguments remain based on statistics from other proceedings, however, not on analysis of the patent claims in this case. Defendants continue to ignore that — particularly considering that most of the asserted claims are not being reexamined at all — it is a virtual certainty that reexamination will not preclude the need for litigation. Therefore, staying this case pending

---

[13] As to this point, defendants never dispute the length of time the reexamination proceedings can be expected to take, but rather they criticize "litigious" *e*Plus as bombarding the

reexamination would actually guarantee costly and duplicative proceedings. Further, defendant

Lawson Software initiated the '172 Patent reexamination proceeding,[14] and therefore defendants'

avowed fear of duplicative proceedings is a problem of their own making. Def.'s Stay Reply at 5

("Defendants must deal with the uncertainty of having multiple proceedings determining the

same issues.").

Defendants further contend that *e*Plus's prior litigations against Ariba and SAP, each of

which resulted in a significant monetary settlement, demonstrate that *e*Plus "routinely grants"

licenses to its patents, and therefore it will not be entitled to an injunction against the defendants

in this case. This argument is factually and legally wrong and unsupported. *See Abbott Labs. v.*

*Sandoz, Inc.,* 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) (affirming grant of preliminary injunction

notwithstanding infringer's argument that monetary damages would be adequate because

patentee had licensed others, stating *"that a patentee has licensed others under its patents does*

*not mean that unlicensed infringement must also be permitted while the patents are litigated"*)

(emphasis added); *see also Acumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1327-29 (Fed. Cir.

2008) (affirming entry of permanent injunction and holding that whether patentee had granted

licenses was simply one factor to be considered);[15] *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d

---

Court with too many facts. As to the anticipated length of the proceedings; they simply declare
them to be "irrelevant." Def.'s Stay Reply at 10.

[14] With respect to the prematurity of the stay motion to the extent it is based on Lawson's
reexamination request (which the PTO has not yet granted) for the '172 Patent, defendants'
motion neglected to cite this Court's published precedent in *Heinz Kettler GMBH & Co., KG v.*
*Indian Indus.,* 592 F. Supp. 2d 880 (E.D. Va. 2009). Defendants now struggle to distinguish that
case on the ground that 35 U.S.C. § 318 refers to requests for stay by the patent owner, not an
accused defendant. Def.'s Stay Reply at 8-9. However, as defendants are surely aware, *Heinz*
*Kettler* pertained to a stay request by the accused infringer, not the patentee, and therefore
defendants' attempt to distinguish the case fails. This Court's published decision cannot be
disregarded as "inapposite" as defendants contend.

[15] Defendants cite *Acumed* ostensibly in support of their argument that *e*Plus will not be
entitled to injunctive relief, Def.'s Stay Reply at 10, but they fail to note that the Federal Circuit

683, 701-04 (Fed. Cir. 2008) (irreparable harm not foreclosed by fact that patentee had licensed patent, stating "[w]e also agree that the ... license has little bearing on the effect of a compulsory license to a direct competitor").

## IV.    CONCLUSION

For the foregoing reasons, defendants' judge-shopping motion should be denied in its entirety.  The parties should brief their claim construction arguments pursuant to whatever schedule this Court deems appropriate, and this Court may consider whatever persuasive value both Judge Brinkema's non-vacated ruling and Judge Spencer's vacated rulings may have upon consideration of the evidence and arguments presented by the parties.

---

affirmed the grant of injunction in that case notwithstanding that the patentee had granted licenses to two competitors. *Id.* at 1327-28.

Respectfully submitted,

Date:  August 11, 2009

_____/s/_____

Gregory N. Stillman (VSB #14308)
Brent l. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA 23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
Robert D. Spendlove (VSB #75468)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

James D. Clements *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
jclements@goodwinprocter.com

Attorneys for Plaintiff *e*Plus, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of August, 2009, I will electronically file the foregoing "Plaintiff ePlus, Inc.'s Brief in Opposition to Defendants' Motion to Transfer Proceedings or in the Alternative to Adopt Prior Vacated Ruling," with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367) *(By Hand Delivery)*
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3289
Facsimile: (757) 624-3169
senoona@kaufcan.com
***Counsel for Defendant Perfect Commerce, LLC,***
***SciQuest, Inc. and Lawson Software, Inc.***

Daniel Johnson, Jr. *(admitted pro hac vice)*
Rita E. Tautkus *(admitted pro hac vice)*
Morgan, Lewis & Bockius, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1392
Facsimile: (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and***
***Lawson Software, Inc.***

Robert W. Busby, Jr. (VSB #41312) *(admitted pro hac vice)*
Bradford A. Cangro *(admitted pro hac vice)*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone: (202) 739-5970
Facsimile: (202) 739-30001
rbusby@morganlewis.com
bcangro@morganlewis.com
***Counsel for Defendants SciQuest, Inc. and***
***Lawson Software, Inc.***

18

Kenneth W. Brothers *(admitted pro hac vice)*
Matthew J. Ricciardi *(admitted pro hac vice)*
Dickstein, Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006-5403
Telephone:  (202) 420-4128
Facsimile:  (202) 420-2201
brothersk@dicksteinshapiro.com
ricciardim@dicksteinshapiro.com
***Counsel for Defendant Perfect Commerce, LLC***


_____/s/_____
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA 23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
bvannorman@hunton.com
Counsel for Plaintiff, *e*Plus, Inc.