# EXHIBIT A

Jan-19-05   07:06pm   From-                                T-110   P.002/024   F-695

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EPLUS, INC.,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )          No. 1:04cv612
                                )
ARIBA, INC.,                    )
                                )
          Defendant.            )

## MEMORANDUM OPINION

     The Court has heard argument on Plaintiff's Motion for
Partial Summary Judgment of Patent Infringement by Defendant
Ariba, Inc. of U.S. Patent Nos. 6,023,683, 6,055,516 and
6,505,172 and Defendant's Motion for Summary Judgment of Non-
Infringement and Partial Summary Judgment of Invalidity of
United States Patent Nos. 6,023,683, 6,055,516 and 6,505,172.
The argument also encompassed the parties' positions regarding
claim construction.

     For the reasons stated from the bench, both parties'
Motions have been denied, as there remain disputed issues of
material fact.  The following Memorandum Opinion sets forth the
Court's resolution of the claim construction issues.  Plaintiff
has selected to focus the litigation on eight of the seventy-
nine claims it alleges defendant infringes through its Ariba
Buyer product, as well as through its former Ariba Marketplace
product and its Category Procurement line of products.  The
Court has similarly limited the trial and the following

discussion to those eight claims.

### Factual Background

Plaintiff ePlus, a Delaware corporation with its principal
place of business in Herndon, Virginia, provides electronic
sourcing and procurement software, services, systems and
methods. Defendant Ariba is a Delaware corporation with its
principal place of business in California that engages in a
similar business.

Plaintiff has filed a three-count Complaint, alleging in
Counts I, II and III, respectively, that defendant infringes
U.S. Patent Nos. 6,023,683, 6,055,516 and 6,505,172, which are
collectively termed the "Electronic Sourcing System Patents."[1]
Plaintiff alleges that defendant's products and services
directly and/or indirectly infringe various claims of the
patents. Three months after filing its original Complaint,
plaintiff amended the Complaint by adding an allegation of
willful infringement because defendant continued its allegedly
infringing activities after having been put on notice of
plaintiff's patent rights. Plaintiff seeks: (1) a declaration
that the patents at issue are valid and enforceable against and
infringed by defendant, (2) injunctive relief preventing
defendant from continuing to sell infringing products and

---

[1] The patents, issued respectively in February 2000, April
2000 and January 2003, will be referred to as the '683, the '516
and the '172.

2

services, (3) an accounting and award of damages of no less
than reasonable royalties plus interest and costs for past
infringement, (4) pre- and post-judgment interest and costs
pursuant to 35 U.S.C. § 284 and (5) attorneys' fees pursuant to
the same statue's provision for an exceptional case.

Defendant has filed a six-count Counterclaim seeking
declaratory judgment of non-infringement and invalidity of each
of the patents. Defendant seeks, among other remedies, a
declaration that the patents are invalid and that defendant has
neither infringed nor caused others to infringe any of the
patents, plus attorneys' fees under the exceptional case
provision of 35 U.S.C. §285.

All three patents at issue are related to electronic
sourcing systems that enable users in the commercial
procurement market to search for, requisition and procure items
from multiple vendors or sources. The allegedly infringing
products of Ariba are its software and services offered under
the name "Enterprise Spend Management" solutions, including its
Supplier Network; its electronic procurement and sourcing
products, most notably Ariba Buyer ("Buyer"); and its Category
Procurement line of solutions, of which plaintiff alleges
Buyer is a part.[2] At the core of these patents and products is

---

[2] Plaintiff also alleges infringement by Ariba Marketplace,
a product that Ariba no longer markets but from which it
allegedly still earns revenue for licensing and support services.

the ability of a user to access and search for items among
multiple supplier catalogs, or sources, select among the items
located, generate requisitions and purchase orders for the
selected items and determine whether those purchase orders are
capable of being filled immediately from existing inventory or
must be directed to alternate suppliers or back ordered.

### Legal Principles of Claim Construction

Although not all of the complex procedural and substantive
nuances involved in a district court's construction of claims
are completely settled, see e.g., Philips v. AWH Corp., 376
F.3d 1382, 1382-83 (Fed. Cir. 2004)(order granting petition for
rehearing en banc and inviting further briefing on issues
concerning claim construction procedure generally), the Federal
Circuit has provided a framework, and express guidance, for the
construction of claims.

Under the Federal Circuit's framework, to ascertain the
meaning of a patent's claims, a court must turn first to the
intrinsic evidence within the patent, including the claims
themselves, the written description and the prosecution
history.  CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359,
1366 (Fed. Cir. 2002)("Claim interpretation begins with the
claims themselves, the written description, and, if in
evidence, the prosecution history."); Vitronics Corp. v.
Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  When

4

evaluating the intrinsic evidence, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of invention." <u>Invitrogen Corp. v. Biocrest Mfg., L.P.</u>, 327 F.3d 1364, 1367 (Fed. Cir. 2003).  In fact, there is a heavy presumption that a claim term carries its ordinary and customary meaning as it would be understood by one of ordinary skill in the relevant art at the time of the invention. <u>Zelinski v. Brunswick Corp.</u>, 185 F.3d 1311, 1315 (Fed. Cir. 1999).

Although reference to the language of the claims and the written description is paramount, <u>Digital Biometrics, Inc. v. Identix, Inc.</u>, 149 F.3d 1335, 1344 (Fed. Cir. 1998), the prosecution history also provides a particularly helpful reference, as it "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." <u>Vitronics</u>, 90 F.3d at 1582-83.

Only where it remains unable to ascertain meaning from such intrinsic evidence should a court turn to extrinsic evidence, such as expert testimony. <u>Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.</u>, 262 F.3d 1258, 1269 (Fed. Cir. 2001).  In most situations, resort to extrinsic evidence is unnecessary and improper, as "an analysis of the intrinsic evidence alone will resolve any ambiguity in a

disputed claim term." <u>Vitronics</u>, 90 F.3d at 1582.

A court must exercise particular care when interpreting claims in light of the specification, as "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Although it is improper to read a limitation from the specification into the claims, <u>Comark Communications</u> at 1186 (Fed. Cir. 1998), "[c]laims must be read in view of the specification, of which they are a part." <u>Markman</u>, 52 F.3d at 979; <u>see also</u> <u>United States v. Adams</u>, 383 U.S. 39, 49 (1966)("[C]laims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.").

<strong>Discussion</strong>

I.   <u>The Claims At Issue</u>

As noted above, ePlus narrowed the scope of its Motion for Summary Judgment by focusing on eight claims, which share many common limitations. The Court has narrowed the trial to these same claims.

**'683 Patent**
**Claim 1**
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items associated with the respective sources;

means for selecting product catalogs to search;

6

means for searching for matching items among the selected
product catalogs;

means for building a requisition using data related to selected
matching items and their associated source(s);

means for processing the requisition to generate one or more
purchase orders for the selected matching items; and

means for determining whether a selected matching item is
available in inventory.

**Claim 14**
An electronic sourcing system comprising:

data relating to items associated with at least two sources
maintained so that selected data may be searched separately;

means for searching for matching items among the selected data;

means for building a requisition using data relating to
selected matching items and their associated source(s);

means for processing the requisition to generate purchase
orders using data relating to the selected matching items and
their associated source(s); and

means for converting data relating to a selected matching item
and an associated source to data relating to an item and a
different source.

**Claim 31**
A method comprising the steps of:

maintaining a database containing data relating to items
associated with at least two sources;

searching for matching items among the data relating to the
items;

building a requisition using data relating to selected matching
items and their associated sources;

processing the requisition to generate purchase orders using
data relating to the selected matching items and their
associated source(s); and

7

converting data relating to a selected matching item and an
associated source to data relating to an item and a different
source.

### '516 Patent
### Claim 16
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items
such that an item in a first catalog is generally equivalent
with an item in a second catalog; and

converting means for converting data relating to said item from
said first catalog to data relating to said item from said
second catalog.

### Claim 17
An electronic sourcing system as recited in Claim 16, wherein
at least one catalog database contains said data from each of
said catalogs, and said converting means includes a non-catalog
database containing a cross-reference table such that use of a
reference code corresponding to an entry in said cross-
reference table such that use of a reference code corresponding
to an entry in said cross-reference table links said item from
said first catalog to data relating to said item from said
second catalog.

### Claim 21
An electronic sourcing system comprising:

a requisition module including data fields, user-generated
criteria entered into at least one of said data fields to
generate at least partial criteria corresponding to a desired
item;

a catalog collection searching module, said searching module
including a collection of catalogs of items stored in an
electronic format, a catalog selection criteria used to select
less than said entire collection, said searching module being
used to generate additional search-module criteria for said
data fields of said requisition module;

a multiple purchase order generation module, said purchase
order generation module creating multiple purchase orders from
a single requisition created with said user-generated criteria
and said search-module criteria;

wherein each of at least two catalogs include a generally

8

equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item;

wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, said search-module criteria and a determination system that located items are generally equivalent; and

wherein said determination system includes a cross-reference table matching an identification code from a first located item with a second identification code from a second located item.

**'172 Patent**
**Claim 1**
An electronic sourcing system comprising:

a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately;

means for entering product information that at least partially describes at least one desired item;

means for searching for matching items that match the entered product information in the selected portions of the database;

means for generating an order list that includes at least one matching item selected by said means for searching;

means for building a requisition that uses data obtained from said database relating to selected matching items on said order list;

means for processing said requisition to generate purchase orders for said selected matching items.

**Claim 5**
The electronic sourcing system according to Claim 1, further comprising means for determining whether a selected matching item is available in inventory.

Within these claims, three primary issues of construction

9

form the basis for the parties' disputes.[5]

    A.   <u>Searching Within Selected Product Catalogs</u>

    Central to the patents at issue are claims that require a "means for selecting product catalogs to search," a "means for searching for matching items among the selected data," and/or a variation on this concept of selecting portions of the catalog collection and searching only within those selected portions.[4] ('683 Claims 1, 14; '516 Claim 21; '172 Claim 1.) The parties essentially do not dispute that the claims require the searches to be conducted on portions, rather than the entirety, of the data.[5] They do contest one aspect of what it means to "select"

---

   [5] Claim construction has been especially difficult in this case because so much of the parties' pleadings dispute not the meaning of a particular claim but rather whether defendant's products infringe a given claim.

   [4] Some of the claims at issue pertain to selecting and searching within catalogs, while others pertain to selecting and searching within data. The underlying concept of searching within a selected universe remains consistent, however, and this Opinion's discussion of this concept applies equally to each type of claim.

   [5] Ariba discusses the prosecution history of ePlus's patents with regard to this limitation and asserts that plaintiff gave up all claims to systems that do not have the capability of "choosing to search selected portions only." As a result, defendant argues that any combination of the selecting and searching functions in claim construction would eviscerate the limitation that the system can search selected portions of the data separately.
   ePlus does not contend that searching part of the data is the same as searching the entirety and does not dispute that its patents cover only systems that allow the user to select just portions of the data to search. Rather, ePlus maintains that Buyer can perform this function.

a portion of the catalogs or data, as well as whether the
"selection" element must be performed before the "searching"
element.   However, for the most part, the parties' dispute
focuses on whether Ariba's products have these capabilities.[6]

      1.   <u>Concantenation</u>

One limited area of dispute concerns whether "selection"
of a portion of catalogs requires concantenation of the
catalogs to be searched.   Ariba asserts that this element
requires a system that concantenates, or connects, the selected
catalogs, thereby excluding those that are not selected and
searching within the remaining, selected group.   Defendant
bases its argument on the patents' description of the structure
for either the "means for selecting" or the "means for
searching" limitation.   Plaintiff argues that proper
construction of this limitation requires only that the system
contain an interface, catalog module and search module that
together allow the user to identify and select catalogs to
search--not a process of concantenation to exclude other
catalogs.

The Court finds no support in the plain language of the
patents for Ariba's proposed construction.   To "concantenate"

---

[6] The bulk of the parties' oral arguments addressed whether
Buyer's catalog or search methodology, or the combination
thereof, satisfies the limitations regarding selecting and
searching portions of the catalog data.   This Opinion addresses
only the dispute regarding actual claim construction.

means "to connect in a series or chain."   <u>Webster's II: New
Riverside University Dictionary</u> 293 (1994).   The description of
the system underlying the patents at issue does use this term
in detailing the selection of more than one catalog and the
subsequent search only within those catalogs selected.
However, in that context, the Court finds that "concantenate"
is used simply to mean that the selected catalogs are searched
as a group.   The other catalogs by definition are not searched,
but to consider them "excluded" and the selected catalogs
"joined" is not required, nor is it relevant to the benefits
claimed by the patents.   Further, as plaintiff points out, the
claim language does not even require that the selected catalogs
be maintained in the same database; '516 recites a "collection
of catalogs . . . stored in separate databases."   By
definition, catalogs stored in separate databases cannot be
concantenated.   Finally, the "selecting" and "searching" claims
contemplate a system through which a user could select just one
catalog to search from the two or more that are available; this
clearly would not involve concantenation of the selected
catalogs.   For all of these reasons, the Court will not read
into the patents' "selecting" and subsequent "searching"
limitations a more specific requirement regarding the
concantenation of the selected catalogs.

12

2.   Order of "Selecting" and "Searching"

Ariba also contends that the plain language of the claims
requires that the "selecting" and "searching" functions be
performed separately and that the selecting occur first.
Relatedly, defendant argues that two distinct limitations,
searching and selecting, cannot be satisfied by a single
functional capability.  ePlus asserts that the order in which
selecting and searching are performed is irrelevant because the
claims at issue address a system, which focuses on the
cumulative result produced by multiple processes, not the order
of those processes.  Plaintiff also contends that two
limitations can in fact be satisfied by a single functional
capability, contrary to defendant's argument above.  <u>See</u>
<u>Intellectual Property Dev., Inc. v. UA-Columbia Cablevision of</u>
<u>Westchester, Inc.</u>, 336 F.3d 1308, 1320 n.9 (Fed. Cir. 2003).

The Court agrees with plaintiff that as a general
proposition, patent law does not require the elements of a
system claim to occur in a particular order, unless that order
is recited in the claims.  <u>See</u> <u>Interactive Gift Express, Inc.</u>
<u>v. Compuserve, Inc.</u>, 256 F.3d 1323, 1342 (Fed. Cir. 2001).
However, such a requirement can be implicit in the language of
the claims.  <u>See</u> <u>id.</u>  Although the claims at issue do not
recite an order, the plain language of the patents clearly
implies that the selection of what is to be searched must occur

13

before any search.  Otherwise, there would be no "selected
catalogs" for the system to search "among."  Thus, the Court
finds that the "selecting" elements must occur before the
"searching" elements of plaintiff's system claims.  The Court
finds, however, that the Federal Circuit precedent cited by
plaintiff clearly establishes that "selecting" and "searching"
need not be performed by separate functional capabilities.  See
Intellectual Property Dev., 336 F.3d at 1320 n.9.  ("[W]e see
no reason why, as a matter of law, one claim limitation may not
be responsive to another merely because they are located in the
same physical structure.").

B.   Determining Whether a Product is Available in
     Inventory

Patents '683 and '172 require a "means for determining
whether a selected matching item is available in inventory."
('683 Claim 1, '172 Claim 5.)  The parties dispute whether the
term "available in inventory" would cover a system that sends
status messages, such "order confirmations" indicating whether
an order has been accepted, rejected or "back ordered."  Ariba
argues that a "means for determining whether a selected
matching item is available in inventory" would not cover a
system that sent a "back ordered" message.  ePlus, however,
argues (1) that "back ordered" plainly means "not available in
inventory but promised to be shipped at a later date" and (2)

14

that the term is defined in this manner in Buyer's own master
glossary.  ePlus also claims that the term "back order" is used
as an example in the patents' specifications regarding
inventory checks.

        The Court finds that based on both the plain language of
the patents and common sense usage of the term, a message that
an item is on "back order" clearly refers to whether that item
is presently available in inventory.

                1.    Timing of Inventory Check

        Ariba acknowledges that the claims at issue do not require
that inventory be checked before an order is placed but
contends that during the prosecution history of these patents,
plaintiff conceded this timing sequence.  First, defendant
argues that by defining the inventory check as being performed
on "selected matching items," further described as "requisition
items," ePlus necessarily included in its claims a requirement
that the inventory check occur after the items had been
selected for ordering.  Ariba also argues that plaintiff added
an explicit limitation during the application process to
distinguish its claims from the Dworkin patent and that this
limitation required the inventory check to occur before the
generation of the purchase order.  Ariba supports this argument
with a quote from the prosecution history, in which the
applicant explained that its claimed system "include[d]" the

                                    15

ability to check inventory before ordering.

    ePlus again maintains that the timing of included elements
is irrelevant with regard to the system claims unless the order
is recited, which it is not in these patents.[7]  In addition,
plaintiff notes that the inventory element is recited last in
each of the system claims in which it appears.  Regarding the
method claims, ePlus quotes the same language from the
prosecution history as did Ariba, but explains that the
applicant simply stated that the system "include[d]" the
ability to check inventory before the purchase order, not that
it required that functionality.  In so stating, ePlus contends
that the applicant was simply giving a detailed description of
its system's various inventory capabilities as compared to the
Dworkin patent, which did not allow for an inventory check at
all.  Finally, ePlus maintains that the specification also
supports its position that the claims allow for inventory to be
checked at any time by pointing to the patents' description of
a function key that can prompt the inventory check in the
system under discussion and noting that this key could be
operated either before or after the user placed an order.

    The Court again agrees with the plaintiff's view that
under established patent law, a particular order is not
normally read into the steps comprising a system or apparatus

───────────

    [7]  In making this argument, ePlus asserts that Ariba
erroneously characterizes these as means claims.

16

claim.  However, in this instance, given that the user
interfaces with the system at various junctures during the
system's operation, the sequence of elements that impact upon
the user's interactions can be relevant to the operation,
usefulness and originality of that system.  As such, although
the plain language of the claims at issue does not require that
the inventory occur at a given stage of the process, the Court
finds that the inventors clearly contemplated and presented for
acceptance to the PTO a system that allows, but does not
require, inventory to be verified before the user places an
order.  The applicants' statement that the system "include[d]"
the ability to check inventory before ordering was made in the
context of distinguishing the invention from prior art on that
ground.  Although Dworkin did not allow for any type of
inventory check, the applicants' statement of their invention's
originality unambiguously touted the ability to check inventory
before generating a purchase order.  The applicants'
accompanying explanation makes this intended meaning even
clearer, as they asserted that unlike in prior art, a user of
their system need not generate purchase orders for items that
were out-of-stock with one vendor when another had them in
inventory.  In addition, as noted by defendant, the prosecution
history describes the inventory checks as being done on
"requisition items" before the user submits a purchase order.

17

(Response to First Office Action; Jeffay Decl. Ex. 7 at 11.)
Accordingly, the Court holds that Claim 1 of '683 and Claim 5
of '172 must allow the user to check inventory at any time,
including before an order is placed.

    C.   <u>Means for Converting Data Relating to Matching Items</u>

    Patents '683 (Claims 14 and 31) and '516 (Claims 16 and
17) include a "means for converting data relating to selected
matching items" retrieved from a user's search.  The parties
vigorously contest the meaning of this limitation, in addition
to disputing whether Ariba's products possess this
functionality.

    1.   <u>Converting Defined</u>

    Ariba argues that the term "converting" should be
construed as it applied to Fisher Technologies' system, which
could automatically replace the product a user selected with a
comparable product from another manufacturer.  Defendant bases
this argument primarily on the legacy of this Fisher product
but also maintains that the common meaning of "to convert"
means "to change."   ePlus argues that "changing" is not
mentioned in or contemplated by the patents' plain language.[8]

_____

    [8] ePlus also takes issue with defendant's uniform
application of the term "converting" across all claims that
discuss "cross-referencing" limitations, arguing that defendant
has applied the prosecution history for "converting" broadly and
without regard for whether it relates to the plain language of a
particular element.  ePlus argues that in this way, defendant
attempts to dispose improperly of an entire group of claims that

Instead, plaintiff argues that "converting" an item simply
refers to a system's ability to "cross-reference" comparable
items from other suppliers at the user's request by employing
universal product commodity classification codes[9] and
corresponding hierarchical trees.[10]  As such, ePlus disagrees
with defendant's assertion that plaintiff had to restrict the
converting limitation to what existed in Fisher's system to
avoid the claims of Dworkin, which ePlus concedes used keywords
to search by product category.  Plaintiff instead maintains
that its "converting" claim is distinguishable from Dworkin
because it recites a process for identifying suitable
replacement items after the initial search, as through
commodity codes.

    The Court accepts the definition of "conversion" offered
by plaintiff: "The process of changing from one form or format
to another; where information is concerned, a changeover that

_____

should be differentiated based on the specific language and
requirements of each one.

    [9] The specific codes employed by Buyer are the United
Nations Products and Services Classification ("UNSPSC") codes.

    [10] ePlus accepts as consistent with its own construction of
"converting" data through cross-reference tables Ariba's expert's
definition of a "cross-reference table":  an "orderly arrangement
of data for referencing one part of a book, index, catalog etc.
to another part containing related information."  (Pl.'s Opp'n at
5(quoting Jeffay Decl. ¶ 56.))

affects form but not substance."[11]   <u>Microsoft Computer</u>
<u>Dictionary</u> 129 (5th ed. 2002).  Regarding the patents at issue,
the Court reads this definition alongside the definition of a
"conversion table": "A table listing a set of characters or
numbers and their equivalents in another coding scheme."  <u>Id.</u>
The Court also accepts the definition of "equivalent" for these
purposes to be: "Having identical or similar effects;
[c]orresponding or practically equal in effect."  <u>Webster's II:</u>
<u>New College Dictionary</u> 381 (1995).

The plain language of the patents makes no reference to
whether either "converting" or "cross-referencing" must be done
automatically by the system or whether it may be prompted by
the user's action.  The prosecution history, however, discusses
the system's ability to facilitate orders of an item from a
different supplier as working hand-in-hand with the inventory
check.  This combination implies that the applicants
contemplated a system through which a user could check the
availability of an item and then use "cross-referencing" tools
to "convert" that selection to a comparable, or equivalent,
item if the first item was not immediately available.  The
prosecution history describes this feature as distinguishing
prior art in that the system allows the user to order an

---

[11] This definition also is not inconsistent with defendant's
contention that "to convert" means "to change."

identical or suitable replacement item from a vendor other than
the vendor whose matching item the user originally selected.[12]
The discussion in the prosecution history does not require that
the system "convert" such items automatically, as did the
Fisher technology.  As such, the Court finds that "converting"
does not require the automatic replacement of ordered items and
can be satisfied by user-initiated replacements of selected
matching items, which the system accomplishes through cross-
referencing tables.

### 2.   Timing of Converting

Ariba argues that "searching for matching items" cannot
also qualify as "converting" items because Claims 14 and 31 of
patent '683 use these terms to describe separate actions.  In
addition, defendant maintains that searching by classification
code refers to letting a user choose among items with similar
characteristics *before* placing an order, while "converting"
refers to the system's ability automatically to find another
source for a similar item *after* the user has selected an item
to order.  ePlus claims that defendant's timing argument is
misleading because a system practicing the claims of the
patents could always search further on cross-referenced

---

[12] The system claimed in Dworkin allowed the user to
identify groups of related items but did not employ commodity
codes to enable the replacement of one item with a comparable
item from another vendor. (Dworkin Decl. 7-8.)

21

results, which by definition would meld the "searching" and "converting" functions.   This argument depends on the assumption that cross-referencing constitutes "converting." Plaintiff also claims that defendant's restricted reading contradicts the specification for patent '683, which gives examples of "converting" or "cross-referencing" using indexes such as the one as employed by Buyer.   (Weaver Decl. ¶ 133.)

As noted above, the plain language of the patents does not require that specific steps of the system occur in a particular order.   However, as also discussed above, in some instances, a common sense interpretation, the user's interaction with the system or the prosecution history mandates finding a particular sequence of the elements necessarily implied in the claim.   In this instance, the same prosecution history that suggests that "cross-referencing" was designed to allow the user to select a different item to order after learning that a selected matching item was not available in inventory also suggests that "converting" must occur after the user has received the results of the initial search but before the user places an order. Consistent with this interpretation, the Court notes that there is no language in any of the patents' claims, nor is there any reference in the prosecution history, that suggests that "converting" cannot be initiated at the user's request, such as by using an interface to seek replacement items based on the

22

uniform commodity codes.  Thus, the Court again finds that cross-referenced searching for equivalent items qualifies as converting and that this process need not occur automatically, either as a function of the original search or after a user has placed an order.

II.   Conclusion

   The foregoing claim construction will govern the jury's consideration of plaintiff's and defendant's arguments at trial.

   The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record

   Entered this _19ᵗʰ_ day of January, 2005.

                                    Leonie M. Brinkema
                                    United States District Judge

Alexandria, Virginia

23