# EXHIBIT B

# 1 OF 2

*Final Jury Instructions*

## THE LAW APPLICABLE TO THIS CASE

Now that you have heard all of the evidence, it is the judge's duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as the judge states it to you, and to apply that law to the facts as you find them from the evidence in the case.

Counsel may quite properly refer to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the judge in these instructions, you, of course, are to be governed by the instructions.

If any reference by the judge or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the judge.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the judge, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by sympathy for any party nor bias or prejudice or favor to any party. Our system of law does not permit jurors to be governed by sympathy, bias, guesswork or speculation. Your verdict must be based solely upon the evidence and instructions of the Court.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the judge.

1

## Evidence Received in the Case--Stipulations, Judicial Notice, and Inferences Permitted

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them, all exhibits received in evidence, regardless of who may have produced them.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not proper evidence and must be entirely disregarded.

Questions of the lawyers are not evidence. Only a witness' answers to a lawyer's question is evidence. Objections, statements and arguments of counsel are also not evidence.

You are to base your verdict only on the evidence received in the case. In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits. In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted. You are permitted to draw from the facts which you find have proved such reasonable inferences as you feel justified in the light of your experience and common sense.

2

## NOTE TAKING

During this trial, I permitted you to take notes. Many courts do not permit note-taking by jurors, and a word of caution is in order. There is always a tendency to place undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

3

## QUESTIONS BY THE COURT

During the course of a trial, the judge occasionally asks questions of witnesses, in order to bring out facts not then adequately explained by their testimony and to expedite the presentation of evidence. Do not presume that the judge holds any opinion on the matters to which the judge's questions may have related. Remember at all times that you, as jurors, are at liberty to disregard all questions by the judge regarding the facts in determining the weight of the evidence, but you are governed by the judge's instructions as to the law applicable to this case.

Nothing the judge says, nor any ruling of the judge, nor any remark which the judge has made is to be taken as an indication that the judge has any opinion of the facts of the case. It is the judge's function to determine the law. The determination of the facts and the weight of the evidence is your function.

4

# OBJECTIONS AND RULINGS

It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or exhibits which that attorney believes is not properly admissible.  Only by raising an objection can a lawyer request and obtain a ruling from the Court on the admissibility of the evidence being offered by the other side.  You should not be influenced against an attorney or his or her client because the attorney has made objections.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating to you who I believe should win or lose the case.

5

## EVIDENCE BINDERS AND DEMONSTRATIVE EXHIBITS

The lawyers have made sure that all the binders include only the admitted evidence in this case. The numbers on the spine of the binders correspond to the exhibits that are enclosed in that binder. In addition, the lawyers have provided indexes of the admitted evidence with descriptions in list form, so that you can easily locate the particular exhibit desired.

Both sides have shown you demonstrative exhibits during the trial. These exhibits were shown to make testimony or documentary evidence, such as the patents at issue, clearer. Each one has been labeled as a demonstrative exhibit and will be provided to the jury with a separate index. You should understand that these demonstrative exhibits are not themselves evidence, and you cannot base your decisions on them. However, you may use any demonstrative exhibits that you find to be accurate and reliable to help you understand and analyze the testimony and exhibits presented during the trial.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Generally speaking, there are two types of evidence that are generally presented during a trial--direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the appropriate burdens of proof in the case, both direct and circumstantial.

7

## JURY'S MEMORY CONTROLS

If any reference to witness testimony or the exhibits by the Court or by counsel does not coincide with your own memory of that evidence, it is your memory of the evidence which controls during your deliberations and not that of the Court or of counsel.

8

## CREDIBILITY OF WITNESSES - GENERALLY

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by the evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive, state of mind, and demeanor and manner while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves. You may also, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find that the testimony of a single witness or a small number of witnesses as to any fact is more convincing than the testimony of a larger number of witnesses to the contrary.

9

## CREDIBILITY OF WITNESSES - EXPERTS

The rules of evidence may limit the ability of witnesses to testify as to opinions or conclusions. Greater latitude is given to those who we call "expert witnesses." Witnesses who, by education or experience, have become experts in some art, science, profession, or calling, may state an opinion as to relevant and material matter, as to which they possess expertise, and may also state their reasons for the opinion.

Opinion testimony by qualified expert witnesses is competent evidence. You should consider each expert opinion received in evidence in this case, and give each such opinion the weight you find it deserves. If you should decide that the opinion of an expert witness or his or her qualifications are not supported by sufficient education or experience, or if you should conclude that the reasons in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

## CREDIBILITY OF WITNESSES - IMPEACHMENT

The testimony of a witness may be discredited or, as we sometimes say, impeached by showing that he or she previously made statements which are different than or inconsistent with his or her testimony here in court.  The earlier inconsistent or contradictory statements are admissible only to discredit or impeach the credibility of the witness and not to establish the truth of these earlier statements made somewhere other than here during this trial. It is the province of the jury to determine the credibility, if any, to be given the testimony of a witness who has made prior inconsistent or contradictory statements.

If a person is shown to have knowingly testified falsely concerning any important or material matter, you obviously have a right to distrust the testimony of such an individual concerning other matters.  You may reject all of the testimony of that witness or give it such weight or credibility as you may think it deserves.

11

## DEPOSITION TESTIMONY AS EVIDENCE

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys of the parties to this case. The testimony of a witness who, for some reason is not present to testify from the witness stand, may be presented in writing under oath or on a videotape. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weight, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

12

## BURDENS OF PROOF

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. These different burdens are related to the particular issues being litigated.

The first burden of proof applies to the party, like ePlus, that alleges infringement. To prevail on a patent infringement claim, the plaintiff must prove infringement by a preponderance of the evidence. Another way to describe this standard is that plaintiff must persuade the jury that what the party seeks to prove, that is infringement, is more probably true than not true.

The second burden of proof standard is a higher one. This burden applies to the plaintiff's claim that defendant acted willfully in infringing plaintiff's patents and also to defendant's claims that plaintiff's patents are invalid. This standard is called proof by clear and convincing evidence, which means that the party with the burden prevails if it can persuade the jury that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply.

13

## THE PARTIES' CONTENTIONS ON INFRINGEMENT

### PLAINTIFF'S CONTENTIONS

#### DIRECT INFRINGEMENT

ePlus contends that Ariba infringes claims 1, 14, and 31 of the '683 patent, claims 16, 17, and 21 of the '516 patent, and claims 1 and 5 of the '172 patent, by its making, use, sale, or offer for sale of various products and services for electronic sourcing and procurement, including a product known as Ariba Buyer. This is called direct infringement. ePlus seeks to prove direct infringement by proving that it is more probable than not that Ariba's electronic sourcing system contains each and every limitation of one or more of the claims of one or more of the patents in suit.

#### INDIRECT INFRINGEMENT

ePlus also contends that Ariba indirectly infringes claims 1, 14, and 31 of the '683 patent, claims 16, 17, and 21 of the '516 patent, and claims 1 and 5 of the '172 patent by encouraging others to directly infringe.

To prove that Ariba induced someone else to infringe the patent claims, ePlus must prove that it is more probable than not that Ariba encouraged or instructed another person to use a product or perform a process in a manner that infringes, and that Ariba knew or should have known that the encouragement or instructions would likely result in the other person doing that which you have found to be an infringement.

#### WILLFUL INFRINGEMENT

ePlus claims that Ariba has knowingly and willfully infringed the claims of the three patents in suit. To prove willful infringement of a patent, ePlus must prove that Ariba knew of the patent, and that Ariba did not have a reasonable belief either that the patent was invalid or that it did not infringe the patent.

ePlus's willful infringement claim requires a higher burden of proof -- the clear and

14

convincing evidence standard -- than ePlus's other claims, which require proof by the more probable than not standard.  I will explain in more detail at the end of the case how you decide willful infringement

## DEFENDANT'S CONTENTIONS

### NO INFRINGEMENT

Ariba contends that it does not directly infringe any of the claims at issue (claims 1, 14 and 31 of the '683 patent; claims 16, 17 and 21 of the '516 patent; and claims 1 and 5 of the '172 patent) by its making, use, sale or offer for sale any of the accused products and does not indirectly infringe any claim at issue in that it does not induce customers to infringe claims 1, 14 and 31 of the '683 patent; claims 16, 17 and 21 of the '516 patent; and claims 1 and 5 of the '172 patent.

### NO WILLFUL INFRINGEMENT

Lastly, Ariba maintains that it has not willfully infringed the patents-in-suit.

## THE PARTIES' CONTENTIONS ON INVALIDITY

## DEFENDANT'S CONTENTIONS

Ariba contends that claims of the three patents in suit are invalid for a number of reasons. Although the '683, '516, and '172 patents were granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements of patentability were met; that is, it is your job to determine whether or not the patents are invalid.

I will now explain to you briefly the legal requirements for each of the grounds on which Ariba relies to contend that the '683, '516, and '172 patent claims are invalid.

## ANTICIPATION

Ariba contends that the inventions covered by claims 16 and 17 of the '516 patent, and claim 1 of the '172 patent, are not new. An invention that is not new is said to be "anticipated" by the prior art. In order to prove that a claim is anticipated by the prior art, Ariba must prove by clear and convincing evidence that each and every limitation of the claim is present in a single item of prior art.

## OBVIOUSNESS

Ariba contends that the inventions claimed in claims 1, 14 and 31 of the '683 patent, claim 21 of the '516 patent, and claim 5 of the '172 patent are invalid for obviousness. A patent claim will be invalid, even if it is not anticipated by the prior art, if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time it was made. The ordinary skilled person is a person of average education and training in the field of the invention and is presumed to be aware of all of the relevant prior art. You have heard evidence about the skill and experience of such a skilled person during the course of the trial.

In order to prove invalidity based on obviousness, Ariba must prove by clear and convincing evidence that the invention claimed in the patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.

## PLAINTIFF'S CONTENTIONS

ePlus contends that none of the claims at issue is invalid.

16

## THE CLAIMS OF THE PATENTS IN SUIT

The claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, which have been referred to as the elements of the claim. For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each separate elements, which helps define and limit the scope of the claim. An element may also be called a "limitation."

17

## CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused process or product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copies of the patents in suit that you have been given as I discuss the claims at issue here.

18

## INDEPENDENT AND DEPENDENT CLAIMS

There are two kinds of patent claims:  independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus it is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the '683 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 17 of the '516 Patent is a dependent claim.  It refers to claim 16.  To determine what dependent claim 17 covers, the words of that claim and the words of claim 16 must be read together.

19

## MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's say that a patent describes a table in which the legs are glued to the tabletop.   One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.  Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.  In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

Claims 1 and 14 of the '683 Patent, claim 16 of the '516 Patent, and claims 1 and 5 of the '172 Patent include means-plus-function limitations. In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each of the means-plus-function claim limitations performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function limitation:

"Means for selecting the product catalogs to search;"

Claim 1 of the '683 Patent contains the means-plus-function element "means for selecting the product catalogs to search." The function of this element is to select the product catalogs to search. The corresponding structures, materials, or acts, of this element are disclosed as a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents.

See, for example: '683 Patent, Col. 4:5-9; Col. 5:9-27; Col. 8: 40-56; Col. 9:52-col. 10:20; Figs. 1-2 (describing search program 50 and requisition/procurement system 40).

"Means for searching for matching items among the selected product catalogs;"

Claim 1 of the '683 Patent contains the means-plus-function element "means for searching for matching items among the selected product catalogs." The function of this element is searching for matching items among the selected product catalogs." The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

See, for example: '683 Patent, Col. 4:1- col. 6:38; Col. 7:61-col. 12:37; Figs. 1-2; Appendices III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

"Means for building a requisition using data relating to selected matching items and their associated source(s);"

Claims 1 and 14 of the '683 Patent contains the means-plus-function element "means for building a requisition using data relating to selected matching items and their associated source(s)." The function of this element is building a requisition using data relating to selected matching items and their associated source(s). The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents.

See, for example: '683 Patent, Col. 1:25-37; Col. 3:3-19; Col. 6:40-65; Col. 7:36-col. 8:14; Col. 15:46-49; Figs. 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

"Means for processing the requisition to generate one or more purchase orders for the selected matching items;"

Claim 1 of the '683 Patent contains the means-plus-function element "means for processing the requisition to generate one or more purchase orders for the selected matching items." The function of this element is processing the requisition to generate one or more purchase orders for the selected matching items. The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.

See, for example: '683 Patent, Col. 1:37-59; Col. 3:3-24; Col. 10:43-54; Col. 15:20-59; Figs. 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

"Means for determining whether a selected matching item is available in inventory;"

Claim 1 of the '683 Patent contains the means-plus-function element "means for determining whether a selected matching item is available in inventory." The function of this element is to determine whether a selected matching item is available in inventory. The corresponding structures, materials, or acts, of this element are disclosed as one or more inventory databases; connections to one or more inventory databases; an inventory request module; or a combination thereof, and their equivalents.

2|

See, for example: '683 Patent, Col. 3:19-22; Col. 10:48-49; Col. 14:6-26; Col. 18:17-18; Figs. 1-3 (describing inventory determination systems and method including inventory sourcing module 44B and inventory databases 42B).

"Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source;"

Claim 14 of the '683 Patent contains the means-plus-function element "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source." The function of this element is converting data relating to a selected matching item and an associated source to data relating to an item and a different source. The corresponding structures, materials, or acts, of this element are disclosed as one or more non-catalog databases identifying cross-referenced items, identical items or generally equivalent items; one or more cross-reference tables or files identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents.

See, for example: '683 Patent, Col. 4:60-col. 5:8; Col. 10:43-54; Col. 14:35-45; Appendices VIII-X; Col. 16:14-32; Col. 17:19-54.

"Means for searching for matching items among the selected data;"

Claim 14 of the '683 Patent contains the means-plus-function element "means for searching for matching items among the selected data." The function of this element is searching for matching items among the selected data. The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

See, for example: '683 Patent, Col. 4:1-col. 6:38; Col. 7:61-col. 12:28; Col. 18:18-50; Figs. 1-2; Appendices III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

"Means for processing the requisition to generate purchase orders using data relating to the selected matching items and their associated source(s);"

Claim 14 of the '683 Patent contains the means-plus-function element "means for processing the requisition to generate purchase orders using data relating to the selected matching items and their associated source(s)." The function of this element is processing the requisition to generate purchase orders using data relating to the selected matching items and their associated sources. The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to data in the database, and its equivalents.

See, for example: '683 Patent, Col. 1:37-59; Col. 3:3-24; Col. 10:43-54; Col.. 15:20-59; Figs. 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

22

"Converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog;"

Claim 16 of the '516 Patent contains the means-plus-function element "Converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog;" The function of this element is converting data relating to said item from said first catalog to data relating to said item from said second catalog. The corresponding structure, material and acts for performing this function are one or more non-catalog databases identifying cross-referenced items, identical items or generally equivalent items; one or more cross-reference tables or files identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items and any structural equivalents thereof.

See, for example: '516 Patent, Col. 4:66-col. 5:14; Col. 10:22-25; Col. 14:42-49; Appendices VIII-X; Col. 16:24-32; Col. 17:23-54.

"means for entering product information that at least partially describes at least one desired item;"

Claim 1 of the '172 Patent contains the means-plus-function element "means for entering product information that at least partially describes at least one desired item." The function of this element is entering product information that at least partially describes at least one desired item. The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents.

See, for example: '172 Patent, Col. 4:6-col. 6:28; Col. 7:66-col. 8:19; Col. 9:55-col. 12:28; Col. 18:23-50; Figs. 1-2 (describing local computer 20, graphical user interface 254, search program 50, interface 60, TV/2 and search program 250).

"means for searching for matching items that match the entered product information in the selected portions of the database;"

Claim 1 of the '172 Patent contains the means-plus-function element "means for searching for matching items that match the entered product information in the selected portions of the database." The function of this element is searching for matching items that match the entered product information in the selected portions of the database. The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

See, for example: '172 Patent, Col. 4:6-col. 6:28; Col. 7:66-col. 9:37; Col. 9:55-col. 12:28; Figs. 1-2; Appendices III-V and VII (describing local computer 20, search program 50, TV/2 and search program 250).

23

"means for generating an order list that includes at least one matching item selected by said means for searching;"

Claim 1 of the '172 Patent contains the means-plus-function element "means for generating an order list that includes at least one matching item selected by said means for searching." The function of this element is generating an order list that includes at least one matching item selected by a search module. The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.

See, for example: '172 Patent, Col. 4:6-col. 6:28; Col. 7:66-col. 8:13; Col. 9:55-col. 12:28; Col. 18:23-50; Appendix VI, Figs. 1-2 (describing local computer 20, graphical user interface 254, search program 50, interface 60, TV/2 and search program 250).

"means for building a requisition that uses data obtained from said database relating to selected matching items on said order list;"

Claim 1 of the '172 Patent contains the means-plus-function element "means for building a requisition that uses data obtained from said database relating to selected matching items on said order list." The function of this element is building a requisition that uses data obtained from said database relating to selected matching items on said order list. The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents.

See, for example: '172 Patent, Col. 1:25-37; Col. 3:3-19; Col. 6:40-65; Col. 7:36-col. 8:14; Col. 15:46-49; Figs. 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

"means for processing said requisition to generate purchase orders for said selected matching items;"

Claim 1 of the '172 Patent contains the means-plus-function element "means for processing said requisition to generate purchase orders for said selected matching items." The function of this element is processing a requisition to generate purchase orders for selected matching items. The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition, and its equivalents.

See, for example: '172 Patent, Col. 1:42-55; Col. 3:19-23; Col. 10:53-55; Col. 15:39-61; Figs. 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

24