# EXHIBIT B

# 2 OF 2

"means for determining whether a selected matching item is available in inventory;"

Claim 5 of the '172 Patent contains the means-plus-function element "means for determining whether a selected matching item is available in inventory." The function of this element is determining whether a selected matching item is available in inventory. The corresponding structures, materials, or acts, of this element are disclosed as one or more inventory databases, connections to one or more inventory databases, an inventory request module or a combination thereof, and their equivalents.

See, for example: '172 Patent, Col. 3:19-24; Col. 10:21-54; Col. 14:29-38; Figs. 1-3 (describing inventory determination systems and method including inventory sourcing module 44B and inventory databases 42B).

25

## "COMPRISING" CLAIMS

The beginning portion, or preamble, of certain claims of the patents in suit use the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products or processes having only the elements or steps that are recited in the claim, but also covers products or processes that add additional elements or steps.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs. All of the claims at issue in this lawsuit use the "comprising" language.

26

## COURT'S CONSTRUCTION OF THE CLAIMS AT ISSUE

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

"Searching within selected product catalogs."

This element does not require that the catalogs that are being searched be connected in a series or chain. Selected catalogs may be searched as a group. In addition, selected catalogs may even be stored in separate databases. Finally, the claims contemplate a system through which a user could select just one catalog to search from the two or more catalogs that are available.

Order of "selecting" and "searching."

Although the claims at issue do not recite an order, the plain language of the patents clearly implies that the selection of what is to be searched must occur before any search. The Court finds that "selecting" and "searching" need not be performed by separate functional capabilities.

"Determining whether a selected matching item is available in inventory."

Claim 1 of the '683 Patent and claim 5 of the '172 Patent must allow the user to check inventory at any time after a search has been conducted, including before an order is placed.

"Means for converting data."

Means for converting data is the process of changing from one form or format to another; where information is concerned, a changeover that affects form but not substance. You must read alongside this definition the definition of a "conversion table:; "a table listing a set of characters or numbers and their equivalents in another coding scheme." The definition of "equivalent" for these purposes is "having identical or similar effects; corresponding or practically equal in effect." The "converting" or "cross-referencing" does not require the automatic replacement of ordered items and can be satisfied by user-initiated replacements of selected matching items, which the system accomplishes through cross-referencing tables. Cross-referenced searching for equivalent items qualifies as converting and this process need not occur automatically, either as a function of the original search or after a user has placed an order.

"Matching items" means the search results.

"Selected matching items" means the requisition items.

27

## PATENT INFRINGEMENT GENERALLY - DIRECT INFRINGEMENT

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare patent claims 1, 14, and 31 of the '683 patent, claims 16, 17, and 21 of the '516 patent, and claims 1 and 5 of the '172 patent, as I have defined those claims, to the accused products or processes, and determine whether or not there is infringement. You should not compare Ariba's products or processes with any specific example set out in the patents in suit, or with ePlus's products or processes. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not Ariba knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

In this case, ePlus asserts that Ariba's electronic sourcing system directly infringes claims 1, 14, and 31 of the '683 patent, claims 16, 17, and 21 of the '516 patent, and claims 1 and 5 of the '172 patent. It is your job to determine whether or not ePlus has proved by the more probable than not standard that defendant has directly infringed any of these claims of the three patents in suit.

28

## INFRINGEMENT - EVERY CLAIM LIMITATION MUST BE PRESENT

In order to infringe a patent claim, a product or process must include every limitation of the claim. If Ariba's electronic sourcing system omits even a single structure or step recited in a claim, then you must find that Ariba has not infringed that claim.  You must consider each of the claims of the three patents in suit separately.

A claim limitation is present if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

## INFRINGEMENT - MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

As I told you, a means-plus-function claim limitation describes a means for performing a particular function.

To prove that an accused product includes a structure that is covered by a means-plus-function limitation, a patent owner must prove two things by the preponderance of the evidence standard. First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function is identical to the corresponding structure disclosed in the patent specification, or an equivalent thereof.

## DETERMINATION OF INFRINGEMENT

Taking each claim of the three patents in suit separately, if you find that ePlus has proved that it is more probable than not that each and every limitation of the claim is present in Ariba's accused electronic sourcing system, then you must find that Ariba's electronic sourcing system infringes that claim.

31

## INFRINGEMENT OF DEPENDENT CLAIMS

My instructions on infringement so far have related to independent claims. As I told you, the three patents in suit also contains dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that an independent claim of any of the three patents has been infringed, you must separately determine whether the dependent claims have also been infringed.

32

## CAPABLE OF INFRINGEMENT

The fact that a product may be used in a manner so as not to infringe the patent is not a defense to a claim of infringement if the product is also reasonably capable of being used in a manner that infringes the patent.  If a particular product can be altered without undue difficulty to operate in an infringing manner, the product, as sold, may be found to infringe.  In considering whether such product infringes, the jury must carefully consider the specific patent claim the product is alleged to infringe and whether the defendant designed the accused product so that it could, without undue difficulty, be altered or assembled to operate in a manner that infringes the patent claim at issue.

## ACCUSED INFRINGER'S PATENTS NOT A DEFENSE TO INFRINGEMENT

During this case, you have heard evidence about whether the defendant Ariba may have obtained its own patents relating to its accused electronic sourcing systems and methods. Such evidence is not relevant to the issue whether Ariba infringes the claims of the ePlus patents in this case. It is not a defense to infringement that a defendant may have obtained its own patents relating to its accused systems or methods. This is because the nature of a patent is that it grants to the patentee the right to exclude others from making, using, selling, or offering for sale the invention, but it does not provide the patentee with an affirmative right to make, use, sell, or offer for sale products or systems that incorporate the patented invention. In other words, the existence of one's own patent does not constitute a defense to infringement of a patent belonging to another.

34

## INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Ariba is inducing another person to infringe, ePlus must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.

In this case, ePlus accuses Ariba of inducing the infringement of claims 1, 14, and 31 of the '683 patent, claims 16, 17, and 21 of the '516 patent, and claims 1 and 5 of the '172 patent. ePlus must prove that it is more probable than not that Ariba has induced the infringement of any of these claims.

## INDIRECT INFRINGEMENT - CIRCUMSTANTIAL EVIDENCE

As I stated, in order to prove that Ariba indirectly infringed by inducing infringement by others, ePlus must prove by the more probable than not standard that at least one other person directly infringed a claim of the patents-in-suit, and that Ariba induced that infringement. Proof of Ariba's indirect infringement may be shown through either circumstantial or direct evidence, and likewise proof of the direct infringement by another may be shown through circumstantial or direct evidence.

## INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've just told you, can occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product or perform a process in a manner that infringes the patent. The patent owner must also prove that it is more probable than not that the other person infringed the patent.

ePlus asserts that Ariba induced patent infringement. ePlus must prove four things by the more probable than not standard:

First, Ariba encouraged or instructed another person how to use a product or perform a process in a manner that you, the jury, find infringes any one of the claims of any one of the three patents in suit.

Second, Ariba knew of the patent.

Third, Ariba knew or should have known that its encouragement or instructions would likely result in the other person doing that which you find to be an infringement of the patent.

Fourth, the other person infringed the patent.

If, and only if, you are persuaded of each of these four things may you find that Ariba induced patent infringement.

## WILLFUL INFRINGEMENT

ePlus also contends that Ariba has willfully infringed the claims of the three patents in suit. If you find on the basis of the evidence and the law as I have explained it, that Ariba directly or indirectly infringes at least one claim of one of the three patents in suit, you must then decide whether or not Ariba's infringement of that patent was willful.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not do this and is found to have infringed the patent claims, then the infringement was willful.

Although, as I explained before, ePlus must prove infringement by the more probable than not standard, the burden of proving that the infringement was willful is the clear and convincing evidence standard.

To establish willful infringement, ePlus must prove two things by the clear and convincing evidence standard. First, ePlus must prove that Ariba was aware of the patent at issue. Second, ePlus must prove that Ariba proceeded with the activities that are accused of infringement without a good faith belief that the patent was either invalid, not infringed, or both.

In determining whether or not Ariba has acted in good faith, you should consider all of the circumstances in evidence, including whether when Ariba became aware of the patents in suit, Ariba tried to "design around" the patents by designing an electronic sourcing system that Ariba believed did not infringe the patent claims.

The fact that you may have determined that Ariba was wrong and that one, some or all of the three patents in suit is infringed does not mean that Ariba's infringement was willful. All that is required to avoid a finding of willful infringement is that Ariba had a good faith belief that it did not infringe or that the patent was invalid, and that Ariba's belief was reasonable under all of the circumstances.

## VALIDITY IN GENERAL

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Ariba's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Once a patent has been approved and issued by the Patent and Trademark Office, it is presumed to be valid. However, a party who has been accused of infringement may challenge the validity of a patent in court.

Ariba has challenged the validity of the claims of the three patents in suit on two grounds. *(are anticipated in light of the RIMS patent (DX 115))* Specifically, Ariba argues that claims 16 and 17 of the '516 patent and claim 1 of the '172 patent *is also* ~~are invalid because they were anticipated in prior art.~~ Ariba also claims that all of the other claims, that is claims 1, 14 and 31 of the '683 patent, claim 21 of the '516 patent, and claim 5 of *under anticipation in light of the Doyle patent (DX )* the '172 patent, are invalid based on obviousness. *on the basis of the Doyle and RIMS Patents)* To overcome the presumption of validity, Ariba must prove that the patents at issue are invalid by clear and convincing evidence.

I will now explain to you each of Ariba's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

39

## ANTICIPATION/LACK OF NOVELTY

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

In this case, defendant contends that claims 16 and 17 of the '516 patent, and claim 1 of the '172 patent, are invalid because they are anticipated. If you find that Ariba has proved by clear and convincing evidence that a claim is anticipated, then you must find that the claim is invalid.

40

## THE SCOPE AND CONTENT OF THE PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is called "prior art." The Doyle and RIMS patents are prior art. Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Ariba. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

41

## OBVIOUSNESS

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The two pieces of prior art upon which Ariba relies are the RIMS patent, Exhibit #DX115, and the Doyle patent, Exhibit #DX128. The question is, would it have been obvious for a skilled person who knew of this prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid.

Ariba contends that the inventions claimed in claims 1, 14 and 31 of the '683 patent, claim 21 of the '516 patent, and claim 5 of the '172 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of the RIMS item of prior art combined with the Doyle item of prior art. If you find that Ariba has proved obviousness by clear and convincing evidence, then you must find that the claims are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

42

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

43

## DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

## LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

## OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS

You also must consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1.    Commercial success of products covered by the patent claims or made by a process covered by the patent claims.

2.    A long-felt need for the invention.

3.    Failed attempts by others to make the invention.

4.    Copying of the invention by others in the field.

5.    Praise of the invention by the infringer or others in the field.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

46

## Verdict - Election of Foreperson--Duty to Deliberate--Unanimity--Punishment--Form of Verdict--Communication with the Court (Civil)

Upon retiring to your jury room to begin your deliberation, you will elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges--judges of the facts of this case. Your sole interest is to seek the truth from the

47

evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way, to somehow suggest to you what I think your verdict should be.

A Special Verdict form has been prepared for your convenience. On that form you will record your decisions. Nothing said in the instructions and nothing in the Special Verdict form is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return. What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.

You will take [this] verdict form to the jury room and, when you have reached unanimous agreement as to your verdicts, you will have your foreperson write your verdict, date and sign the form, and then return with your verdict to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you should send a note, signed and dated by your foreperson or by one or more members of the jury, through the court security officer. No member of the jury should ever attempt to communicate with the Court by any

48

means other than a signed writing and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing or orally here in open court.

Bear in mind also that you are never to reveal to any person–not even to the Court–how the jury stands, numerically or otherwise, on the question of whether or not ~~the government~~ has sustained its burden of proof until after you have reached a unanimous verdict.

49