# EXHIBIT E

# 2 OF 6



FILED

MAR 20 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

KY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ePLUS, INC.,

                               Plaintiff,

                 v.

SAP AMERICA, INC., et al.,

                             Defendants.

Civil Action Number 3:05CV281-JRS

## ORDER

THIS MATTER comes before the Court on Defendants SAP AG and SAP America, Inc's. (collectively "SAP") Motion for Summary Judgment. Upon due consideration by the Court, SAP's Motion is hereby GRANTED in part and DENIED in part.

Upon concession by Plaintiff, ePlus, Inc., SAP's Motion for Summary Judgment that the manufacture, use, sale, offer to sell, or importation of SAP SRM does not infringe the means-plus-function claims—6,023,683 claims 1–25; 6,055,516 claims 16–20; and 6,505,172 claims 1–5—either literally or under the doctrine of equivalents is hereby GRANTED.

SAP's Motion for Summary Judgment that it is not liable for contributory infringement related to any of the claims-in-suit is hereby GRANTED.

SAP's Motion for Summary Judgment that it does not directly infringe any of the claims-in-suit is hereby GRANTED.

Finding numerous genuine issues of material fact in dispute, SAP's Motion for Summary Judgment that it is not liable for inducement of infringement related to any claims-in-suit is hereby DENIED.

SAP's Motion for Summary Adjudication that ePlus cannot claim a date of invention earlier than August 10, 1994—the filing date of the initial patent application—is hereby DENIED.

Accordingly, SAP's Motion for Summary Judgment (Dkt No. 135) is hereby GRANTED in part and DENIED in part.

The Clerk is directed to fax a copy of this Order to lead counsel on each side, and to send copies to all parties of record.

It is SO ORDERED.

ENTERED this 20th day of March 2006

_James R. Spencer_
CHIEF UNITED STATES DISTRICT JUDGE

2





IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ePLUS, INC.,

                                    Plaintiff,

                v.                                      Civil Action Number 3:05CV281-JRS

SAP AMERICA, INC., et al.,

                                    Defendants.

## ORDER

THIS MATTER comes before the Court on several Motions in Limine filed by Defendants

SAP AG and SAP America, Inc. (collectively "SAP") and Plaintiff ePlus, Inc. ("ePlus"). Upon due

consideration by the Court, and for reasons stated from the bench, SAP's Motion in Limine:

- to Preclude ePlus from Proffering Expert Testimony that Contradicts the Court's Claim

  Construction Order **(Dkt. No. 149)** is hereby GRANTED. This ruling differs from what was

  stated from the bench. The Court has decided that SAP's and ePlus's motions on this issue

  should be granted. The Court will not abide any testimony that contradicts this Court's

  Claim Construction.

- to Preclude ePlus from Introducing Evidence of the <u>ePlus v. Ariba</u> Litigation or, in the

  Alternative, to Divide the Trial into Separate Phases for Determining Liability and Damages

  **(Dkt. No. 151)** is hereby GRANTED in part and DENIED in part. ePlus may introduce

  evidence of the <u>Ariba</u> litigation as it relates to willful infringement and damages. The trial

  will be divided into two separate phases: 1) liability issues and 2) damages issues, including

willful infringement.  Evidence of the <u>Ariba</u> litigation may not be presented in the liability phase of the trial, except that ePlus may use it in rebuttal to show inconsistent positions taken by SAP.

- to Limit Testimony of ePlus's Expert, Robert Yerman, Under Rule 702 (**Dkt. No. 155**) is hereby DENIED.

- to Limit Evidence of Sales of SRM (**Dkt. No. 180**) is hereby DENIED.

- to Identify Representative Claims for Trial (**Dkt. No. 208**) is hereby DENIED.  Plaintiff has graciously agreed to reduce its representative claims for trial to twelve (12).  SAP will identify one (1) representative claim.

- to Preclude ePlus from Proffering Evidence or Argument Concerning Equivalents to the Claims of the '683 and '516 Patents (**Dkt. No. 153**) is hereby GRANTED.

- to Exclude Evidence of SAP's Alleged Litigation Conduct (**Dkt. No. 157**) is hereby DENIED.

With respect to ePlus's Motions, the Court further holds:

- ePlus's Motion to Clarify, Modify, and/or Reconsider Court's Summary Judgment Order (**Dkt. No. 251**) is hereby GRANTED.  The Court's Summary Judgment Order (**Dkt. No. 233**) is hereby MODIFIED such that ePlus will be permitted to proceed with a direct infringement claim against SAP regarding United States Patent No. 6,055,516.

- ePlus's First Motion in Limine to Exclude Defendants' Improper Reliance on Multiple Printed Publications in Support of Their 35 U.S.C. §§ 102(a) and (b) Invalidity Defenses (**Dkt. No. 170**) is hereby GRANTED.

2

- ePlus's Second Motion in Limine to Exclude Testimony of Stephen G. Kunin (**Dkt. No. 172**) is hereby GRANTED in part and DENIED in part. Mr. Kunin is allowed to present general opinions about the patent prosecution process. Mr. Kunin may not, however, present any generalized or particularized attacks on the Patent and Trademark Office.

- ePlus's Third Motion in Limine to Limit the Testimony of Daniel A. Menascé and Edward Davis (**Dkt. No. 174**) is hereby DENIED.

- ePlus's Fourth Motion in Limine to Exclude Uncorroborated Alleged Prior Art Testimony (**Dkt. No. 176**) is hereby DENIED.

- ePlus's Fifth Motion in Limine to Preclude Evidence or Argument Concerning a "Paid-Up" License for Purposes of Assessing Damages Under 35 U.S.C. § 284 (**Dkt. No. 178**) is hereby DENIED.

- ePlus's Sixth Motion in Limine to Preclude Evidence or Argument of Non-Infringement Based Upon Additional Elements and Improvements of the Accused Systems (**Dkt. No. 184**) is hereby DENIED.

- ePlus's Seventh Motion in Limine to Preclude Evidence of ePlus and its Predecessors' Electronic Procurement Products and Other Putative Commercial Embodiments of the ePlus Patents (**Dkt. No. 186**) is hereby DENIED.

- ePlus's Eighth Motion in Limine to Strike Defendants' Recreated and Misleading R/2 and R/3 System Demonstrations (**Dkt. No. 188**) is hereby DENIED.

- ePlus's Ninth Motion in Limine to Exclude Testimony, Evidence, or Argument Concerning Untimely Disclosed Alleged Prior Art and/or Allegations of Invalidity (**Dkt. No. 190**) is

3

hereby DENIED. The Court will determine at the appropriate time during the course of the

trial whether a particular prior art reference was timely and appropriately disclosed.

- ePlus's Tenth Motion in Limine to Exclude Testimony of Irving S. Rappaport (**Dkt. No. 195**) is hereby DENIED.

- ePlus's Eleventh Motion in Limine to Preclude Defendants' Experts from Proffering Opinions Utilizing Claim Constructions Which are Inconsistent with the Court's Markman Order (**Dkt. No. 204**) is hereby GRANTED.

The Clerk is directed to fax a copy of this Order to lead counsel on each side, and to send

copies to all parties of record.

It is SO ORDERED.

*James R. Spencer*

CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this 23nd day of March 2006

4

Jan-19-05   07:06pm   From-                                    T-110   P.002/024   F-695

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EPLUS, INC.,                      )
                                  )
          Plaintiff,              )
                                  )        No. 1:04cv612
     v.                           )
                                  )
ARIBA, INC.,                      )
                                  )
          Defendant.              )

MEMORANDUM OPINION

     The Court has heard argument on Plaintiff's Motion for

Partial Summary Judgment of Patent Infringement by Defendant

Ariba, Inc. of U.S. Patent Nos. 6,023,683, 6,055,516 and

6,505,172 and Defendant's Motion for Summary Judgment of Non-

Infringement and Partial Summary Judgment of Invalidity of

United States Patent Nos. 6,023,683, 6,055,516 and 6,505,172.

The argument also encompassed the parties' positions regarding

claim construction.

     For the reasons stated from the bench, both parties'

Motions have been denied, as there remain disputed issues of

material fact.  The following Memorandum Opinion sets forth the

Court's resolution of the claim construction issues.  Plaintiff

has selected to focus the litigation on eight of the seventy-

nine claims it alleges defendant infringes through its Ariba

Buyer product, as well as through its former Ariba Marketplace

product and its Category Procurement line of products.  The

Court has similarly limited the trial and the following

discussion to those eight claims.

### Factual Background

Plaintiff ePlus, a Delaware corporation with its principal place of business in Herndon, Virginia, provides electronic sourcing and procurement software, services, systems and methods.  Defendant Ariba is a Delaware corporation with its principal place of business in California that engages in a similar business.

Plaintiff has filed a three-count Complaint, alleging in Counts I, II and III, respectively, that defendant infringes U.S. Patent Nos. 6,023,683, 6,055,516 and 6,505,172, which are collectively termed the "Electronic Sourcing System Patents."[1] Plaintiff alleges that defendant's products and services directly and/or indirectly infringe various claims of the patents.  Three months after filing its original Complaint, plaintiff amended the Complaint by adding an allegation of willful infringement because defendant continued its allegedly infringing activities after having been put on notice of plaintiff's patent rights.  Plaintiff seeks: (1) a declaration that the patents at issue are valid and enforceable against and infringed by defendant, (2) injunctive relief preventing defendant from continuing to sell infringing products and

---

[1] The patents, issued respectively in February 2000, April 2000 and January 2003, will be referred to as the `683, the `516 and the `172.

2

services, (3) an accounting and award of damages of no less
than reasonable royalties plus interest and costs for past
infringement, (4) pre- and post-judgment interest and costs
pursuant to 35 U.S.C. § 284 and (5) attorneys' fees pursuant to
the same statue's provision for an exceptional case.

Defendant has filed a six-count Counterclaim seeking
declaratory judgment of non-infringement and invalidity of each
of the patents.  Defendant seeks, among other remedies, a
declaration that the patents are invalid and that defendant has
neither infringed nor caused others to infringe any of the
patents, plus attorneys' fees under the exceptional case
provision of 35 U.S.C. §285.

All three patents at issue are related to electronic
sourcing systems that enable users in the commercial
procurement market to search for, requisition and procure items
from multiple vendors or sources. The allegedly infringing
products of Ariba are its software and services offered under
the name "Enterprise Spend Management" solutions, including its
Supplier Network; its electronic procurement and sourcing
products, most notably Ariba Buyer ("Buyer"); and its Category
Procurement line of solutions, of  which plaintiff alleges
Buyer is a part.[2]  At the core of these patents and products is

_____

[2] Plaintiff also alleges infringement by Ariba Marketplace,
a product that Ariba no longer markets but from which it
allegedly still earns revenue for licensing and support services.

3

the ability of a user to access and search for items among
multiple supplier catalogs, or sources, select among the items
located, generate requisitions and purchase orders for the
selected items and determine whether those purchase orders are
capable of being filled immediately from existing inventory or
must be directed to alternate suppliers or back ordered.

### Legal Principles of Claim Construction

Although not all of the complex procedural and substantive
nuances involved in a district court's construction of claims
are completely settled, see e.g., Philips v. AWH Corp., 376
F.3d 1382, 1382-83 (Fed. Cir. 2004)(order granting petition for
rehearing en banc and inviting further briefing on issues
concerning claim construction procedure generally), the Federal
Circuit has provided a framework, and express guidance, for the
construction of claims.

Under the Federal Circuit's framework, to ascertain the
meaning of a patent's claims, a court must turn first to the
intrinsic evidence within the patent, including the claims
themselves, the written description and the prosecution
history. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359,
1366 (Fed. Cir. 2002)("Claim interpretation begins with the
claims themselves, the written description, and, if in
evidence, the prosecution history."); Vitronics Corp. v.
Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). When

4

evaluating the intrinsic evidence, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of invention." _Invitrogen Corp. v. Biocrest Mfg., L.P._, 327 F.3d 1364, 1367 (Fed. Cir. 2003).  In fact, there is a heavy presumption that a claim term carries its ordinary and customary meaning as it would be understood by one of ordinary skill in the relevant art at the time of the invention. _Zelinski v. Brunswick Corp._, 185 F.3d 1311, 1315 (Fed. Cir. 1999).

Although reference to the language of the claims and the written description is paramount, _Digital Biometrics, Inc. v. Identix, Inc._, 149 F.3d 1335, 1344 (Fed. Cir. 1998), the prosecution history also provides a particularly helpful reference, as it "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." _Vitronics_, 90 F.3d at 1582-83.

Only where it remains unable to ascertain meaning from such intrinsic evidence should a court turn to extrinsic evidence, such as expert testimony.  _Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc._, 262 F.3d 1258, 1269 (Fed. Cir. 2001).  In most situations, resort to extrinsic evidence is unnecessary and improper, as "an analysis of the intrinsic evidence alone will resolve any ambiguity in a

disputed claim term." <u>Vitronics</u>, 90 F.3d at 1582.

A court must exercise particular care when interpreting claims in light of the specification, as "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Although it is improper to read a limitation from the specification into the claims, <u>Comark Communications</u> at 1186 (Fed. Cir. 1998), "[c]laims must be read in view of the specification, of which they are a part." <u>Markman</u>, 52 F.3d at 979; <u>see also</u> <u>United States v. Adams</u>, 383 U.S. 39, 49 (1966)("[C]laims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.").

**Discussion**

I.   <u>The Claims At Issue</u>

As noted above, ePlus narrowed the scope of its Motion for Summary Judgment by focusing on eight claims, which share many common limitations. The Court has narrowed the trial to these same claims.

**'683 Patent**
**Claim 1**
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items associated with the respective sources;

means for selecting product catalogs to search;

6

means for searching for matching items among the selected
product catalogs;

means for building a requisition using data related to selected
matching items and their associated source(s);

means for processing the requisition to generate one or more
purchase orders for the selected matching items; and

means for determining whether a selected matching item is
available in inventory.

**Claim 14**
An electronic sourcing system comprising:

data relating to items associated with at least two sources
maintained so that selected data may be searched separately;

means for searching for matching items among the selected data;

means for building a requisition using data relating to
selected matching items and their associated source(s);

means for processing the requisition to generate purchase
orders using data relating to the selected matching items and
their associated source(s); and

means for converting data relating to a selected matching item
and an associated source to data relating to an item and a
different source.

**Claim 31**
A method comprising the steps of:

maintaining a database containing data relating to items
associated with at least two sources;

searching for matching items among the data relating to the
items;

building a requisition using data relating to selected matching
items and their associated sources;

processing the requisition to generate purchase orders using
data relating to the selected matching items and their
associated source(s); and

7

converting data relating to a selected matching item and an
associated source to data relating to an item and a different
source.

**'516 Patent**
**Claim 16**
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items
such that an item in a first catalog is generally equivalent
with an item in a second catalog; and

converting means for converting data relating to said item from
said first catalog to data relating to said item from said
second catalog.

**Claim 17**
An electronic sourcing system as recited in Claim 16, wherein
at least one catalog database contains said data from each of
said catalogs, and said converting means includes a non-catalog
database containing a cross-reference table such that use of a
reference code corresponding to an entry in said cross-
reference table such that use of a reference code corresponding
to an entry in said cross-reference table links said item from
said first catalog to data relating to said item from said
second catalog.

**Claim 21**
An electronic sourcing system comprising:

a requisition module including data fields, user-generated
criteria entered into at least one of said data fields to
generate at least partial criteria corresponding to a desired
item;

a catalog collection searching module, said searching module
including a collection of catalogs of items stored in an
electronic format, a catalog selection criteria used to select
less than said entire collection, said searching module being
used to generate additional search-module criteria for said
data fields of said requisition module;

a multiple purchase order generation module, said purchase
order generation module creating multiple purchase orders from
a single requisition created with said user-generated criteria
and said search-module criteria;

wherein each of at least two catalogs include a generally

8

equivalent item from a different source, said requisition
module working in combination with said catalog searching
module to determine multiple sources for said item;

wherein said multiple sources is limited by said catalog
searching module providing a match according to said user-
generated criteria, said search-module criteria and a
determination system that located items are generally
equivalent; and

wherein said determination system includes a cross-reference
table matching an identification code from a first located item
with a second identification code from a second located item.

**'172 Patent**
**Claim 1**
An electronic sourcing system comprising:

a database containing data relating to items associated with at
least two vendors maintained so that selected portions of the
database may be searched separately;

means for entering product information that at least partially
describes at least one desired item;

means for searching for matching items that match the entered
product information in the selected portions of the database;

means for generating an order list that includes at least one
matching item selected by said means for searching;

means for building a requisition that uses data obtained from
said database relating to selected matching items on said order
list;

means for processing said requisition to generate purchase
orders for said selected matching items.

**Claim 5**
The electronic sourcing system according to Claim 1, further
comprising means for determining whether a selected matching
item is available in inventory.

Within these claims, three primary issues of construction

9

form the basis for the parties' disputes.[5]

A.   <u>Searching Within Selected Product Catalogs</u>

Central to the patents at issue are claims that require a "means for selecting product catalogs to search," a "means for searching for matching items among the selected data," and/or a variation on this concept of selecting portions of the catalog collection and searching only within those selected portions.[4] ('683 Claims 1, 14; '516 Claim 21; '172 Claim 1.)  The parties essentially do not dispute that the claims require the searches to be conducted on portions, rather than the entirety, of the data.[5]  They do contest one aspect of what it means to "select"

_____

[5] Claim construction has been especially difficult in this case because so much of the parties' pleadings dispute not the meaning of a particular claim but rather whether defendant's products infringe a given claim.

[4] Some of the claims at issue pertain to selecting and searching within catalogs, while others pertain to selecting and searching within data.  The underlying concept of searching within a selected universe remains consistent, however, and this Opinion's discussion of this concept applies equally to each type of claim.

[5] Ariba discusses the prosecution history of ePlus's patents with regard to this limitation and asserts that plaintiff gave up all claims to systems that do not have the capability of "choosing to search selected portions only."  As a result, defendant argues that any combination of the selecting and searching functions in claim construction would eviscerate the limitation that the system can search selected portions of the data separately.

ePlus does not contend that searching part of the data is the same as searching the entirety and does not dispute that its patents cover only systems that allow the user to select just portions of the data to search.  Rather, ePlus maintains that Buyer can perform this function.

10

a portion of the catalogs or data, as well as whether the
"selection" element must be performed before the "searching"
element.  However, for the most part, the parties' dispute
focuses on whether Ariba's products have these capabilities.[6]

### 1.  Concantenation

One limited area of dispute concerns whether "selection"
of a portion of catalogs requires concantenation of the
catalogs to be searched.  Ariba asserts that this element
requires a system that concantenates, or connects, the selected
catalogs, thereby excluding those that are not selected and
searching within the remaining, selected group.  Defendant
bases its argument on the patents' description of the structure
for either the "means for selecting" or the "means for
searching" limitation.  Plaintiff argues that proper
construction of this limitation requires only that the system
contain an interface, catalog module and search module that
together allow the user to identify and select catalogs to
search--not a process of concantenation to exclude other
catalogs.

The Court finds no support in the plain language of the
patents for Ariba's proposed construction.  To "concantenate"

---

[6] The bulk of the parties' oral arguments addressed whether
Buyer's catalog or search methodology, or the combination
thereof, satisfies the limitations regarding selecting and
searching portions of the catalog data.  This Opinion addresses
only the dispute regarding actual claim construction.

11

means "to connect in a series or chain." <u>Webster's II: New</u>
<u>Riverside University Dictionary</u> 293 (1994). The description of
the system underlying the patents at issue does use this term
in detailing the selection of more than one catalog and the
subsequent search only within those catalogs selected.
However, in that context, the Court finds that "concantenate"
is used simply to mean that the selected catalogs are searched
as a group. The other catalogs by definition are not searched,
but to consider them "excluded" and the selected catalogs
"joined" is not required, nor is it relevant to the benefits
claimed by the patents. Further, as plaintiff points out, the
claim language does not even require that the selected catalogs
be maintained in the same database; '516 recites a "collection
of catalogs . . . stored in separate databases." By
definition, catalogs stored in separate databases cannot be
concantenated. Finally, the "selecting" and "searching" claims
contemplate a system through which a user could select just one
catalog to search from the two or more that are available; this
clearly would not involve concantenation of the selected
catalogs. For all of these reasons, the Court will not read
into the patents' "selecting" and subsequent "searching"
limitations a more specific requirement regarding the
concantenation of the selected catalogs.

12

2.   Order of "Selecting" and "Searching"

Ariba also contends that the plain language of the claims
requires that the "selecting" and "searching" functions be
performed separately and that the selecting occur first.
Relatedly, defendant argues that two distinct limitations,
searching and selecting, cannot be satisfied by a single
functional capability.  ePlus asserts that the order in which
selecting and searching are performed is irrelevant because the
claims at issue address a system, which focuses on the
cumulative result produced by multiple processes, not the order
of those processes.  Plaintiff also contends that two
limitations can in fact be satisfied by a single functional
capability, contrary to defendant's argument above.  See
Intellectual Property Dev., Inc. v. UA-Columbia Cablevision of
Westchester, Inc., 336 F.3d 1308, 1320 n.9 (Fed. Cir. 2003).

The Court agrees with plaintiff that as a general
proposition, patent law does not require the elements of a
system claim to occur in a particular order, unless that order
is recited in the claims.  See Interactive Gift Express, Inc.
v. Compuserve, Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2001).
However, such a requirement can be implicit in the language of
the claims.  See id.  Although the claims at issue do not
recite an order, the plain language of the patents clearly
implies that the selection of what is to be searched must occur

13

before any search.  Otherwise, there would be no "selected catalogs" for the system to search "among."  Thus, the Court finds that the "selecting" elements must occur before the "searching" elements of plaintiff's system claims.  The Court finds, however, that the Federal Circuit precedent cited by plaintiff clearly establishes that "selecting" and "searching" need not be performed by separate functional capabilities.  See Intellectual Property Dev., 336 F.3d at 1320 n.9.  ("[W]e see no reason why, as a matter of law, one claim limitation may not be responsive to another merely because they are located in the same physical structure.").

B.   Determining Whether a Product is Available in
     Inventory

Patents '683 and '172 require a "means for determining whether a selected matching item is available in inventory." ('683 Claim 1, '172 Claim 5.)  The parties dispute whether the term "available in inventory" would cover a system that sends status messages, such "order confirmations" indicating whether an order has been accepted, rejected or "back ordered."  Ariba argues that a "means for determining whether a selected matching item is available in inventory" would not cover a system that sent a "back ordered" message.  ePlus, however, argues (1) that "back ordered" plainly means "not available in inventory but promised to be shipped at a later date" and (2)

14

that the term is defined in this manner in Buyer's own master
glossary.  ePlus also claims that the term "back order" is used
as an example in the patents' specifications regarding
inventory checks.

The Court finds that based on both the plain language of
the patents and common sense usage of the term, a message that
an item is on "back order" clearly refers to whether that item
is presently available in inventory.

### 1.   Timing of Inventory Check

Ariba acknowledges that the claims at issue do not require
that inventory be checked before an order is placed but
contends that during the prosecution history of these patents,
plaintiff conceded this timing sequence.  First, defendant
argues that by defining the inventory check as being performed
on "selected matching items," further described as "requisition
items," ePlus necessarily included in its claims a requirement
that the inventory check occur after the items had been
selected for ordering.  Ariba also argues that plaintiff added
an explicit limitation during the application process to
distinguish its claims from the Dworkin patent and that this
limitation required the inventory check to occur before the
generation of the purchase order.  Ariba supports this argument
with a quote from the prosecution history, in which the
applicant explained that its claimed system "include[d]" the

15

ability to check inventory before ordering.

ePlus again maintains that the timing of included elements is irrelevant with regard to the system claims unless the order is recited, which it is not in these patents.[7] In addition, plaintiff notes that the inventory element is recited last in each of the system claims in which it appears. Regarding the method claims, ePlus quotes the same language from the prosecution history as did Ariba, but explains that the applicant simply stated that the system "include[d]" the ability to check inventory before the purchase order, not that it required that functionality. In so stating, ePlus contends that the applicant was simply giving a detailed description of its system's various inventory capabilities as compared to the Dworkin patent, which did not allow for an inventory check at all. Finally, ePlus maintains that the specification also supports its position that the claims allow for inventory to be checked at any time by pointing to the patents' description of a function key that can prompt the inventory check in the system under discussion and noting that this key could be operated either before or after the user placed an order.

The Court again agrees with the plaintiff's view that under established patent law, a particular order is not normally read into the steps comprising a system or apparatus

---

[7] In making this argument, ePlus asserts that Ariba erroneously characterizes these as means claims.

16

claim.  However, in this instance, given that the user
interfaces with the system at various junctures during the
system's operation, the sequence of elements that impact upon
the user's interactions can be relevant to the operation,
usefulness and originality of that system.  As such, although
the plain language of the claims at issue does not require that
the inventory occur at a given stage of the process, the Court
finds that the inventors clearly contemplated and presented for
acceptance to the PTO a system that allows, but does not
require, inventory to be verified before the user places an
order.  The applicants' statement that the system "include[d]"
the ability to check inventory before ordering was made in the
context of distinguishing the invention from prior art on that
ground.  Although Dworkin did not allow for any type of
inventory check, the applicants' statement of their invention's
originality unambiguously touted the ability to check inventory
before generating a purchase order.  The applicants'
accompanying explanation makes this intended meaning even
clearer, as they asserted that unlike in prior art, a user of
their system need not generate purchase orders for items that
were out-of-stock with one vendor when another had them in
inventory.  In addition, as noted by defendant, the prosecution
history describes the inventory checks as being done on
"requisition items" before the user submits a purchase order.

17

(Response to First Office Action; Jeffay Decl. Ex. 7 at 11.)

Accordingly, the Court holds that Claim 1 of '683 and Claim 5

of '172 must allow the user to check inventory at any time,

including before an order is placed.

      C.    Means for Converting Data Relating to Matching Items

      Patents '683 (Claims 14 and 31) and '516 (Claims 16 and

17) include a "means for converting data relating to selected

matching items" retrieved from a user's search. The parties

vigorously contest the meaning of this limitation, in addition

to disputing whether Ariba's products possess this

functionality.

      1.    Converting Defined

      Ariba argues that the term "converting" should be

construed as it applied to Fisher Technologies' system, which

could automatically replace the product a user selected with a

comparable product from another manufacturer. Defendant bases

this argument primarily on the legacy of this Fisher product

but also maintains that the common meaning of "to convert"

means "to change." ePlus argues that "changing" is not

mentioned in or contemplated by the patents' plain language.[8]

_____

    [8] ePlus also takes issue with defendant's uniform
application of the term "converting" across all claims that
discuss "cross-referencing" limitations, arguing that defendant
has applied the prosecution history for "converting" broadly and
without regard for whether it relates to the plain language of a
particular element. ePlus argues that in this way, defendant
attempts to dispose improperly of an entire group of claims that

Instead, plaintiff argues that "converting" an item simply refers to a system's ability to "cross-reference" comparable items from other suppliers at the user's request by employing universal product commodity classification codes[9] and corresponding hierarchical trees.[10] As such, ePlus disagrees with defendant's assertion that plaintiff had to restrict the converting limitation to what existed in Fisher's system to avoid the claims of Dworkin, which ePlus concedes used keywords to search by product category. Plaintiff instead maintains that its "converting" claim is distinguishable from Dworkin because it recites a process for identifying suitable replacement items after the initial search, as through commodity codes.

The Court accepts the definition of "conversion" offered by plaintiff: "The process of changing from one form or format to another; where information is concerned, a changeover that

---

should be differentiated based on the specific language and requirements of each one.

[9] The specific codes employed by Buyer are the United Nations Products and Services Classification ("UNSPSC") codes.

[10] ePlus accepts as consistent with its own construction of "converting" data through cross-reference tables Ariba's expert's definition of a "cross-reference table": an "orderly arrangement of data for referencing one part of a book, index, catalog etc. to another part containing related information." (Pl.'s Opp'n at 5 (quoting Jeffay Decl. ¶ 56.))

affects form but not substance."[11]   Microsoft Computer
Dictionary 129 (5th ed. 2002).  Regarding the patents at issue,
the Court reads this definition alongside the definition of a
"conversion table": "A table listing a set of characters or
numbers and their equivalents in another coding scheme."  Id.
The Court also accepts the definition of "equivalent" for these
purposes to be: "Having identical or similar effects;
[c]orresponding or practically equal in effect."  Webster's II:
New College Dictionary 381 (1995).

   The plain language of the patents makes no reference to
whether either "converting" or "cross-referencing" must be done
automatically by the system or whether it may be prompted by
the user's action.  The prosecution history, however, discusses
the system's ability to facilitate orders of an item from a
different supplier as working hand-in-hand with the inventory
check.  This combination implies that the applicants
contemplated a system through which a user could check the
availability of an item and then use "cross-referencing" tools
to "convert" that selection to a comparable, or equivalent,
item if the first item was not immediately available.  The
prosecution history describes this feature as distinguishing
prior art in that the system allows the user to order an

---

[11] This definition also is not inconsistent with defendant's
contention that "to convert" means "to change."

20

identical or suitable replacement item from a vendor other than
the vendor whose matching item the user originally selected.[12]
The discussion in the prosecution history does not require that
the system "convert" such items automatically, as did the
Fisher technology. As such, the Court finds that "converting"
does not require the automatic replacement of ordered items and
can be satisfied by user-initiated replacements of selected
matching items, which the system accomplishes through cross-
referencing tables.

     2.   Timing of Converting

    Ariba argues that "searching for matching items" cannot
also qualify as "converting" items because Claims 14 and 31 of
patent '683 use these terms to describe separate actions.  In
addition, defendant maintains that searching by classification
code refers to letting a user choose among items with similar
characteristics *before* placing an order, while "converting"
refers to the system's ability automatically to find another
source for a similar item *after* the user has selected an item
to order.  ePlus claims that defendant's timing argument is
misleading because a system practicing the claims of the
patents could always search further on cross-referenced

_____

[12] The system claimed in Dworkin allowed the user to
identify groups of related items but did not employ commodity
codes to enable the replacement of one item with a comparable
item from another vendor. (Dworkin Decl. 7-8.)

                               21

results, which by definition would meld the "searching" and
"converting" functions.  This argument depends on the
assumption that cross-referencing constitutes "converting."
Plaintiff also claims that defendant's restricted reading
contradicts the specification for patent '683, which gives
examples of "converting" or "cross-referencing" using indexes
such as the one as employed by Buyer.  (Weaver Decl. ¶ 133.)

As noted above, the plain language of the patents does not
require that specific steps of the system occur in a particular
order.  However, as also discussed above, in some instances, a
common sense interpretation, the user's interaction with the
system or the prosecution history mandates finding a particular
sequence of the elements necessarily implied in the claim.  In
this instance, the same prosecution history that suggests that
"cross-referencing" was designed to allow the user to select a
different item to order after learning that a selected matching
item was not available in inventory also suggests that
"converting" must occur after the user has received the results
of the initial search but before the user places an order.
Consistent with this interpretation, the Court notes that there
is no language in any of the patents' claims, nor is there any
reference in the prosecution history, that suggests that
"converting" cannot be initiated at the user's request, such as
by using an interface to seek replacement items based on the

uniform commodity codes. Thus, the Court again finds that

cross-referenced searching for equivalent items qualifies as

converting and that this process need not occur automatically,

either as a function of the original search or after a user has

placed an order.

II. Conclusion

The foregoing claim construction will govern the jury's

consideration of plaintiff's and defendant's arguments at

trial.

The Clerk is directed to forward copies of this Memorandum

Opinion to counsel of record

Entered this _19th_ day of January, 2005.

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

23

*Final Jury Instructions*

## THE LAW APPLICABLE TO THIS CASE

Now that you have heard all of the evidence, it is the judge's duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as the judge states it to you, and to apply that law to the facts as you find them from the evidence in the case.

Counsel may quite properly refer to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the judge in these instructions, you, of course, are to be governed by the instructions.

If any reference by the judge or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the judge.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the judge, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by sympathy for any party nor bias or prejudice or favor to any party. Our system of law does not permit jurors to be governed by sympathy, bias, guesswork or speculation. Your verdict must be based solely upon the evidence and instructions of the Court.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the judge.

## Evidence Received in the Case--Stipulations, Judicial Notice, and Inferences Permitted

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them, all exhibits received in evidence, regardless of who may have produced them.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not proper evidence and must be entirely disregarded.

Questions of the lawyers are not evidence.  Only a witness' answers to a lawyer's question is evidence.  Objections, statements and arguments of counsel are also not evidence.

You are to base your verdict only on the evidence received in the case.  In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits.  In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted.  You are permitted to draw from the facts which you find have proved such reasonable inferences as you feel justified in the light of your experience and common sense.

2

## NOTE TAKING

During this trial, I permitted you to take notes.  Many courts do not permit note-taking by jurors, and a word of caution is in order.  There is always a tendency to place undue importance to matters which one has written down.   Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

3

## QUESTIONS BY THE COURT

During the course of a trial, the judge occasionally asks questions of witnesses, in order to bring out facts not then adequately explained by their testimony and to expedite the presentation of evidence. Do not presume that the judge holds any opinion on the matters to which the judge's questions may have related. Remember at all times that you, as jurors, are at liberty to disregard all questions by the judge regarding the facts in determining the weight of the evidence, but you are governed by the judge's instructions as to the law applicable to this case.

Nothing the judge says, nor any ruling of the judge, nor any remark which the judge has made is to be taken as an indication that the judge has any opinion of the facts of the case. It is the judge's function to determine the law. The determination of the facts and the weight of the evidence is your function.

4

## OBJECTIONS AND RULINGS

It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or exhibits which that attorney believes is not properly admissible. Only by raising an objection can a lawyer request and obtain a ruling from the Court on the admissibility of the evidence being offered by the other side. You should not be influenced against an attorney or his or her client because the attorney has made objections.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating to you who I believe should win or lose the case.

5

## EVIDENCE BINDERS AND DEMONSTRATIVE EXHIBITS

The lawyers have made sure that all the binders include only the admitted evidence in this case. The numbers on the spine of the binders correspond to the exhibits that are enclosed in that binder. In addition, the lawyers have provided indexes of the admitted evidence with descriptions in list form, so that you can easily locate the particular exhibit desired.

Both sides have shown you demonstrative exhibits during the trial. These exhibits were shown to make testimony or documentary evidence, such as the patents at issue, clearer. Each one has been labeled as a demonstrative exhibit and will be provided to the jury with a separate index. You should understand that these demonstrative exhibits are not themselves evidence, and you cannot base your decisions on them. However, you may use any demonstrative exhibits that you find to be accurate and reliable to help you understand and analyze the testimony and exhibits presented during the trial.