# TAB 3

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
(Cite as: 1998 WL 754606 (N.D.Cal.))

HOnly the Westlaw citation is currently available.

United States District Court, N.D. California.
INTELLIGENT PERIPHERAL DEVICES, INC.,
Plaintiff,
v.
SMARTPAD, INC., a California corporation, d.b.a.
Smartools, Inc. and Jaffer K Qamar, an individual,
Defendants.
No. C 95-4479 FMS.

Oct. 26, 1998.

ORDER DENYING MOTION FOR PARTIAL
SUMMARY JUDGMENT

SMITH, District J.

INTRODUCTION

*1 Plaintiff filed a complaint with this Court alleging, *inter alia,* infringement of U.S. Patent No. 5,065,360 (the "Kelly Patent"). Defendants moved for partial summary judgment on the infringement claim, arguing that the Kelly Patent is either not infringed or, as an affirmative defense, that it is invalid. Defendants' motion requires the Court to construe two claim elements and to allocate two different burdens of proof: a heavy burden on defendants to maintain the affirmative defense of invalidity, and a heavy burden on plaintiff to go forward with the claim of infringement. The Court finds that defendants have miscomprehended their burden of proof and consequently that material issues of fact are outstanding. Partial summary judgment is therefore DENIED.

BACKGROUND

Intelligent Peripheral Devices ("IPD") produces a remote computer device called "AlphaSmart," primarily for the educational market. The AlphaSmart consists of a keyboard, memory, a 4 line LCD screen, and other components. Unlike traditional remote computer devices, the AlphaSmart allows users to enter and edit text, store text with a resident memory bank, and eventually to transfer the text into the keyboard port of a host computer for further processing and printing. The AlphaSmart is compatible with both MacIntosh and PC-DOS host computers.

In early 1995, IPD became aware of U.S. Patent No. 5,065,360, known as the "Kelly Patent." The Kelly Patent claims a portable data storage and editing device. IPD created a limited liability company named Taurus Systems, LLC, for the purpose of acquiring the Kelly Patent. On July 22, 1995, Taurus Systems and Douglas J. Kelly entered into an agreement whereby all the right, title, and interest in the Kelly Patent were conveyed to Taurus Systems. Taurus, in turn, granted IPD an exclusive license in the patent in August 1995.

As of December 1995, SmartPad began marketing a product called the "Lexmark LexBook." Like the AlphaSmart, the LexBook is a device that enables the user to input, store, and edit information remotely, and later to transfer that information to a destination computer.

On December 14, 1995, IPD filed a complaint in this Court alleging that the LexBook device infringes the data transfer technique disclosed in the Kelly Patent.[FN1] In the intervening period, a third party filed a request with the Patent and Trademark Office ("PTO") to reexamine the Kelly Patent. The litigation was stayed pending the outcome of the reexamination. On April 9, 1997, the PTO rejected the Kelly Patent as either anticipated or obvious in light of prior art. The PTO subsequently withdrew the rejection based on anticipation but maintained it for obviousness. IPD has appealed the rejection to the Board of Patent Appeals.

FN1. IPD also claims that defendants engaged in false advertising and unfair competition.

IPD suggests a further stay of the action until the appeal has concluded and a Reexamination Certificate

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
**(Cite as: 1998 WL 754606 (N.D.Cal.))**

is issued. IPD's Opposition to SmartPad's Motion to Dismiss ("Opposition") at 4. In view of the already protracted nature of this case, the Court declines IPD's invitation.

### DISCUSSION

I. Summary Judgment on Affirmative Defense of Invalidity

A. Legal Standard

*2 On summary judgment, the moving party bears the initial burden to prove no dispute of material fact. *See* Fed.R.Civ.P. 56(c). Where the moving party has the burden of proof at trial (such as a defendant seeking summary judgment based on an affirmative defense) he must demonstrate that no reasonable trier of fact could find against him. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986). In particular, such a movant must establish "beyond peradventure *all* of the essential elements of the [asserted] claim or defense" to merit summary judgment. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis added).

B. Analysis

1. Burden of Proof at Trial

A patent is presumed valid until proven otherwise by "clear and convincing evidence." 35 U.S.C. § 282; *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1427 (Fed.Cir.1988). Defendants argue that the Kelly Patent is not entitled to a § 282 presumption of validity because it was rejected by the PTO on reexamination. They cite *In re Oetiker,* 977 F.2d 1443 (Fed.Cir.1992), for the proposition that, when the patent examiner has presented a *prima facie* case of unpatentability, "the burden of coming forward with evidence or argument shifts to the applicant." SmartPad's Reply to IPD's Opposition ("Reply") at 2.

Defendants misconstrue the burden created by § 282. That burden is static; it does not shift to the patent holder merely because the patent was rejected by the PTO. *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 656 F.Supp. 1343, 1354 (D.Del.1987),

*rev'd and vacated on other grounds,* 849 F.2d 1430 (Fed.Cir.1988) (describing burden as "permanently on the party asserting invalidity"; "constant and never changes"; never annihilated, destroyed, or even weakened, regardless of what facts are of record") (internal citations omitted). The rationale behind this rule is that the PTO's decision on reexamination is "never binding on a court." *See id.* Here, the examiner's decision is not even final because plaintiff has appealed the decision and a certificate of cancellation has not yet issued. *See* 35 U.S.C. § 307(a).

The cases of *In re Etter,* 756 F.2d 852 (Fed.Cir.1985), and *In re Oetiker,* 977 F.2d 1443 (Fed.Cir.1992), cited by defendants are distinguishable. *In re Etter* holds merely that a § 282 presumption of validity does not apply in reexamination proceedings before the PTO. By contrast, the issue here is whether the presumption controls in litigation. Similarly, *In re Oetiker* describes the allocation of burdens during patent examination, not during litigation. During an examination or reexamination conducted by the PTO, the examiner bears the initial burden of presenting a *prima facie* case of unpatentability; if he succeeds, the burden shifts to the applicant. *Id.* at 1445. *In re Oetiker* is inapposite because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." *In re Etter,* 756 F.2d at 857. The Court is unwilling to import rules governing one proceeding into the other.

*3 Despite the patent examiner's decision, the Kelly Patent thus continues to enjoy a presumption of validity for purposes of this action. *See* 35 U.S.C. § 282. Defendants may overcome this presumption only by "clear and convincing evidence." *Id.*

2. Anticipation by Prior Art

a. Claim Construction

Defendants' first argument is that the Kelly Patent is invalid because it was anticipated by prior art. In order to rule on the issue of anticipation, the Court must first construe the scope of the patent claims. *See Kegel Co., Inc. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1429 (Fed.Cir.1997). Claim interpretation is a matter of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
(Cite as: 1998 WL 754606 (N.D.Cal.))

Page 3

The Kelly Patent contains five independent claims and nineteen dependent claims. Each of the five independent claims includes a "transfer means" and a "processing means." The transfer means refers to the invention's ability to transfer data from its memory banks to the host computer for further processing. The processing means refers to the manner in which data is inputted into and stored by the device, and later exported to the host computer. These claim elements read:

transfer means for transferring data entered by said input means

processor means for controlling said input means, said storage means and said transfer means to operate in one of a plurality of modes

Claims drafted in means-plus-function format are construed under 35 U.S.C. § 112, ¶ 6, in the following manner.[FN2] First, the Court must determine which structure, material, or acts disclosed in the specification "corresponds" to the function described in the claim element. *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1428 (Fed.Cir.1997). Second, the Court construes the claim as limited to the corresponding structure or its "equivalents." 35 U.S.C. § 112, ¶ 6; *Valmont Industries, Inc. v. Reinke Manufacturing Co., Inc.*, 983 F.2d 1039, 1042 (Fed.Cir.1993); (§ 112, ¶ 6 "restricts the coverage of literal claim language"); see *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (1998) ("duty to link or associate structure in the specification with the function [recited in the claim element] is the *quid pro quo* for the convenience of employing § 112 ¶ 6"). The question of what constitutes an "equivalent" appears best committed to the finder of fact. See *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1466 (Mayer, C.J.concurring) (in determining § 112, ¶ 6 equivalence, district court must resort to expertise of fact finder); Michael O. Sutton, et al., *Don't Miss the Mark, Man!: Recent Trends and Evidentiary Considerations in Markman Hearings*, 507 PLI/Pat 867, 887 (1998); Kenneth Adamo, *Reconciling Section 112, Paragraph 6 Literal Equivalence with the Doctrine of Equivalents in the Wake of Hilton Davis*, 489 PLI/Pat 291, 316 (1997); but see *Markman*, 52 F.3d at 977 n. 8 (leaving unanswered whether § 112, ¶ 6 equivalence is question of law or fact).

> FN2. Title 35 U.S.C. § 112, ¶ 6 reads: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

i. "Transfer means" requires keyboard interface.

*4 The Court construes the "transfer means" claim element to require a cable that connects the patented device to a host computer through the host computer's easily recognizable keyboard interface, or an equivalent structure. See Kelly Patent col. 7:15-17. Defendants reach the same conclusion and thus cannot reasonably dispute this construction. See SmartPad's Memorandum of Points & Authorities in Support of Motion for Partial Summary Judgment ("Memo") at 4. The specification discloses a cable that is "plug-connected" to a keyboard interface port on the host computer. *Id.* col. 7:15. "The keyboard interface should be "easily recognized by a user ... [such that] connection thereto may be had by use of an inexpensive cable."*Id.* col. 7:19-20. The importance of a structure that connects specifically to the host computer's keyboard interface is underscored by the following claim language, present in each of the five independent claims:

said transfer means comprises connecting means for connecting said device to said keyboard interface of the host computer and for transferring said data entered by said input means to the host computer via said keyboard interface.

Plaintiff further moves the court to construe the transfer means as requiring "internal keyboard emulation." Defendants counter that the term "internal keyboard emulation" is not a limitation that appears anywhere in the patent. Because the Court can dispose of the instant motion without determining whether internal keyboard emulation is essential to the claim element, it does not reach this interpretation.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606  
**(Cite as: 1998 WL 754606 (N.D.Cal.))**

Page 4

ii. "Processor means"

The second claim element in dispute describes a "processor means" for controlling three things: the input means, the storage means, and the transfer means. The structure in the specification that corresponds to this function is a processor that reads data inputted by means of a keyboard, writes the data into a memory location, accesses the memory location, and outputs data from the memory location to the output interface for eventual transfer to the host computer. Kelly Patent col. 9:6-52. The claim language also makes clear that the processor must allow the device to operate in a "plurality of modes." Accordingly, the Court construes this claim element to require a processor that is able to read inputted data, write data into a memory location, output data to an output interface, and allow the device to operate in a plurality of modes.

Having construed the terms "transfer means" and "processor means," the Court is now ready to consider the question of prior art anticipation.

b. Anticipation

Defendants argue that the Kelly Patent is invalid pursuant to 35 U.S.C. § 102(b) because it was anticipated by three independent items of prior art. In order for prior art to anticipate a patented invention under § 102, the prior art must "meet every element of the claimed invention." *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1379 (Fed.Cir.1986)."Because of the strict requirement that all elements of the claimed invention must be present within a single prior art reference, the requisite degree of identity is rarely found and anticipation is deemed a 'technical defense.' " *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F.Supp. 1278, 1288 (D.Del.1987), aff'd, 865 F.2d 1247 (Fed.Cir.1989). Where possible, claims should be construed so as to preserve their validity. *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 871 F.2d 1054, 1065 (Fed.Cir.1989).

i. Radio Shack TRS 80 Model 100

*5 The Model 100 discloses a means for transferring data to the host computer's serial RS-232 port, not the keyboard interface, as required by the Kelly Patent. RS-232 ports require cables that have a rectangular twenty-five-pin connector. Opposition at 15. A keyboard port, by contrast, uses a circular nine-pin connector. *Id*. In addition to these physical differences, the two connectors transmit and receive data in mutually exclusive formats.*Id.*; Declaration of Joe Barrus ("Barrus Decl.") ¶ 26-28.

Defendants carry the burden of persuading the Court by clear and convincing evidence that each claim element in the Kelly Patent was anticipated by the prior art. Because there is at least a factual dispute as to whether the Model 100 transmits data to the keyboard interface (or its equivalent under § 112, ¶ 6), defendants have not met their burden.

ii. Trine System

The Trine system "only works as an alternative keyboard with computers equipped with an International Communication Aid Compatibility Standard Keyboard Emulating Interface ["ICACSKEI"]." Declaration of Terry M. Hackett ("Hackett Decl."), Exhibit E at Accessing 2nd Computer 1. The ICACSKEI is therefore not part of the Trine system, but rather of the host computer. The remote keyboard connects to the ICACSKEI via a cable with a standard 25 pin D RS-232 plug. *Id.* at Connecting 2nd Computer 1. The ICACSKEI, in turn, connects to the host computer. The Trine System therefore does not connect directly to the keyboard interface of the host computer.

Even if it did, the Court is not persuaded by defendants' mere allegation that the Trine System processor is the same as that claimed in the Kelly Patent. The Kelly Patent did not claim a processor in general, but rather one with the specific function of "controlling said input means, said storage means and said transfer means to operate in one of a plurality of modes."Defendants have not shown by clear and convincing evidence that the Trine System processor performs the same functions claimed by the Kelly Patent's "processor means," but rather only that the Trine System makes use of a processor. For the foregoing reasons, the Court cannot conclude as a matter of law that the Trine System anticipates the Kelly Patent.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
**(Cite as: 1998 WL 754606 (N.D.Cal.))**

iii. Zygo ScanWriter

The "transfer means" in the Kelly Patent was construed by the Court as requiring a cable that connects to the host computer through a port that is "easily recognized by a user." Kelly Patent col. 7:15. The patent specification corroborates the importance of a safe and convenient connection to the host computer. For example, it distinguishes prior art on the grounds that they "often require[ ] considerable manual dexterity, such as reaching or lifting, to gain access to the port,"*id.* col. 2:11-12, and call on users to "access the back and perhaps even the interior of the desktop computer."*Id.* col. 2:24-25. In this vein, a stated objective of the Kelly Patent is to utilize "a standard port on the destination computer which is most easily recognized and understood by computer users."*Id.* col. 4:54-55.

*6 The ScanWriter, by contrast, requires the user to remove the cover of the computer and to detach the keyboard connector from the computer's main circuit board. Hackett Decl., Exhibit D at C1-1, 1-2. "Unless you have very nimble fingers, the only way to do this task is to remove the ten (10) screws from around the bottom edge of the computer and carefully lift off the upper half."*Id.* at C-2 (noting that the port is thereafter in plain view and easily accessible). A reasonable jury could find that the invention taught by the Kelly Patent was not anticipated by this prior art.

Defendants moreover supply no facts to support the conclusory allegation that the ScanWriter "has the processor element claimed." *See* Memo at 11. Plaintiff counters that the ScanWriter processor is different because, unlike the processor disclosed in the Kelly Patent, the ScanWriter processor does not control the transfer means. Because defendants have failed to dispel reasonable doubts about whether the ScanWriter processor in fact anticipates the "processor means" claimed in the Kelly Patent, summary judgment at this juncture is premature.

3. Obviousness

Defendants' next argument for invalidity is that the Kelly Patent is obvious in light of the prior art discussed above. Because they fall far short of discharging their burden of proof, defendants are not entitled to partial summary judgment on this point.

In order to prove obviousness, defendants must guide the court through a four-step analysis: (1) determine the scope and content of the prior art; (2) determine the differences between the prior art and the claimed invention; (3) determine the level of ordinary skill in the art; (4) examine objective considerations of nonobviousness such as commercial success, long-felt need, and copying. *See Arkie Lures, Inc. v. Gene Larew Tackle Inc.,* 119 F.3d 953, 955 (Fed.Cir.1997).

Defendants have not satisfactorily completed the required analysis. Instead, they gamble for summary judgment on two grounds: (1) the claim elements in the Kelly Patent are "identically described" in each of the three examples of prior art (Model 100, Trine System, ScanWriter) discussed above; (2) the fact of three prior art publications "surely" suggests obviousness. Memo at 12. As to the first ground, the Court remains unpersuaded by defendants' perfunctory analysis that the prior art and the Kelly Patent are somehow "identical[ ]." In fact, as the preceding discussion shows, there appear to be significant differences between them. As to the second ground, the issue is not how many publications predate the Kelly Patent but rather whether those publications rendered it obvious.

Defendants have moreover failed to discuss the third and fourth prongs of the *Arkie Lures* test, flippantly dismissing the ordinary skill prong as "not relevant to any issue to be decided in this case."Reply at 9. The Federal Circuit urges otherwise. *See Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861 (Fed.Cir.1985) (emphasizing need for "express ... findings" for first through third prongs). Plaintiff, by contrast, has gone beyond the call of duty by presenting rebuttal evidence despite defendants' failure even to make a *prima facie* case of obviousness. Plaintiff's Declaration of Jerry Weinstock ("Weinstock Decl."), for example, states that prior art avoided keyboard interface because it entailed "slow acceptance speed of keystroke data" and "a lack of strong handshaking at this interface."Weinstock Decl. ¶ 5. The Declaration of Michael Morgan ("Morgan Decl.") concludes: "without the disclosure of ... [the Kelly Patent], one of ordinary skill would be required to engage in significant experimentation and in inventive steps to develop the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
**(Cite as: 1998 WL 754606 (N.D.Cal.))**

Page 6

schematics and flow charts ... and to develop the specific engineering tasks required to implement the claimed invention."Morgan Decl. ¶ 14. These declarations raise doubts about the obviousness of the Kelly Patent that cannot be resolved in defendants' favor at this time. *See Arkie Lures,* 119 F.3d at 956-57 (considering as indicia of nonobviousness declarations attesting to difficulty of producing invention and to industry skepticism).

*7 Because obviousness is an affirmative defense on which defendants bear the burden of proof at trial, defendants must prove not some, but all, of its essential elements on a motion for summary judgment. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis added). Defendants have not done so. Partial summary judgment on this ground is therefore denied.

II. Summary Judgment on Cause of Action for Infringement

A. Legal Standard

Although the party moving for summary judgment must dispel all genuine issues of material fact, he is not required to negate or disprove matters on which his opponent bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 319, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to such matters, the moving party's burden on summary judgment may be discharged simply by " 'showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.The burden then shifts to the nonmoving party to "go beyond the pleadings"-using affidavits, depositions, answers to interrogatories, or other means-to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Metaphysical doubt is not enough. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial." ' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

B. Analysis

Defendants' alternative argument for partial summary judgment is that its own device, the SmartPad system, does not infringe the '360 Patent as a matter of law. Because a dispute of material fact remains-namely, whether the SmartPad system makes use of internal keyboard emulation-the issue of infringement is not ripe for summary judgment.

Each of the five independent claims in the '360 Patent contains the following claim element:

transfer means for transferring data entered by said input means to a host computer.

In order to avoid a finding of invalidity based on prior art, plaintiff contended that this claim element should be construed to require "internal emulation interface." [FN3]Defendants counter that, if this saves plaintiff from the "Scylla of invalidity," it will force plaintiff to the "Charybdis of noninfringement." In other words, having *distinguished* the prior art precisely on the grounds that it involved external keyboard emulation, plaintiff cannot now be heard to *analogize* the external keyboard emulation used by SmartPad's device to the Kelly Patent. On this reasoning, defendants contend that partial summary judgment is unavoidable.

> FN3. In the preceding discussion, the court did not reach the question of whether "transfer means" requires "internal emulation interference." Nonetheless, for purposes of the instant motion, it considers defendant's argument on the theory that plaintiff is bound to this position.

Defendants' argument is far from ironclad. It overlooks a significant factual disagreement as to whether the SmartPad system uses only external keyboard emulation, as defendants claim it does. Plaintiff maintains that the SmartPad system uses internal keyboard emulation. Statements of Fact Proposed by IPD and Disputed by SmartPad ¶ 23. It submitted an affidavit from IPD vice president Joe Barrus attesting to that effect. Barrus Decl. ¶ 18. The affidavit also explains ways in which the SmartPad system can be found to infringe on the Kelly Patent. The Barrus Declaration therefore satisfies plaintiff's burden of going "beyond the pleadings" to cite specific facts in defense of summary judgment. *See Celotex,* 477 U.S.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:09-cv-00620-REP   Document 63-3   Filed 08/11/09   Page 8 of 8 PageID# 1334

Not Reported in F.Supp.2d                                                                                                Page 7
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606
(Cite as: 1998 WL 754606 (N.D.Cal.))

at 324. Because plaintiff has succeeded in creating a triable issue on infringement, partial summary judgment is inappropriate.

CONCLUSION

*8 For the foregoing reasons, defendants' motion for summary judgment is DENIED.

SO ORDERED.

N.D.Cal.,1998.
Intelligent Peripheral Devices, Inc. v. Smartpad, Inc.
Not Reported in F.Supp.2d, 1998 WL 754606 (N.D.Cal.), 1998 Markman 754606

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.