# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| EPLUS, INC., <br><br>　　　　Plaintiff, <br><br>　v. <br><br>PERFECT COMMERCE, LLC, SCIQUEST, INC., and LAWSON SOFTWARE, INC. <br><br>　　　　Defendants. | Civil Action No. 2:09-CV-232-HCM-TEM |

**REPLY IN FURTHER SUPPORT OF MOTION OF DEFENDANTS PERFECT COMMERCE, LLC, SCIQUEST, INC., AND LAWSON SOFTWARE, INC. TO TRANSFER PROCEEDINGS OR IN THE ALTERNATIVE TO ADOPT PRIOR MARKMAN RULING**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. The Interests of Justice Weigh Heavily in Favor of Transfer to Judge Spencer ..... 2

        1. Section 1404(a) Does Not Conflict with the Eastern District of Virginia's Policy of Rotating Patent Cases ................................................................................. 4

        2. Judge Spencer Is Far Better Suited Than Judge Brinkema to Hear This Case 5

    B. Judge Spencer's *Markman* Order Remains Persuasive ........................................... 8

    C. Defendants' Motion to Transfer Would Just As Easily Be Addressed After a Stay Pending Reexamination ....................................................................................... 10

III. CONCLUSION ............................................................................................................... 12

Defendants Perfect Commerce, LLC ("Perfect"), SciQuest, Inc. ("SciQuest") and Lawson Software, Inc. ("Lawson") (collectively, the "Defendants") submit this reply in support of their motion to transfer proceedings brought by Plaintiff ePlus, Inc. ("ePlus"), or in the alternative to adopt the claim constructions from Judge Spencer on the patents at issue.

## I.    INTRODUCTION

Defendants have offered two reasonable alternatives in our Motion to Transfer, either of which would streamline this case.  Plaintiff spends the majority of its opposition arguing against Defendants' alternative request for adoption of prior claim constructions, but offers no real reason why these proceedings should not be transferred to Judge Spencer.  Such a transfer would save substantial sums of money, time, and resources because of Judge Spencer's substantial familiarity with the patents at issue in this case.  Transfer under similar circumstances is a remedy that has been granted by this Court multiple times before.  In fact, Plaintiff does not dispute that having Judge Spencer hear this case – in light of his extensive exposure to the patents-in-suit through a *Markman* hearing, jury trial, and consideration toward a bench verdict – would considerably streamline proceedings and save significant Court and party resources.  An agreement to transfer the case back to Judge Spencer, so that Judge Spencer can decide whether to adopt the prior claim constructions, is noticeably absent in the Opposition.  To the contrary, Plaintiff suggests that a transfer of the case to the Alexandria Division would be more appropriate, which is inconsistent with the rest of its arguments.

In fact, many of Plaintiff's arguments against adoption of Judge Spencer's claim constructions demonstrate exactly why these patents should be back in his Court.  Only Judge Spencer has knowledge of the analysis he performed in deciding to grant ePlus's unopposed motion to vacate his *Markman* ruling after settlement.  Only Judge Spencer has the full benefit of all of the proceedings that occurred in his Court, along with the context that the parties

undoubtedly provided to him regarding the prior proceedings in front of Judge Brinkema. Only Judge Spencer has performed a formal *Markman* hearing on the patents-in-suit, analyzed all seventy-nine of the claims thereof, and issued a ruling thereon under means-plus-function claim construction case law that is still current. In fact, Judge Brinkema did none of those three things (construing only eight claims), and the interests of justice weigh heavily in favor of avoiding having to start from scratch and repeat all of those tasks in this Court. As made clear *infra* and in Defendants' Motion to Transfer, Judge Spencer is the obvious candidate for transfer of this case. Indeed, this is about conserving judicial and party resources while obtaining a just result, not about shopping for a Judge, *Markman* ruling or convenient location.

Contrary to Plaintiff's assertions, Defendants are <u>not</u> asking for collateral estoppel; rather Defendants request that this Court rule, under the discretionary authority of 28 U.S.C. § 1404(a), in a manner consistent with conserving resources. Alternatively, Defendants request that this Court exercise its discretion to adopt, or otherwise utilize the persuasive value of, Judge Spencer's claim constructions of the patents-in-suit. This persuasive value remains despite Judge Spencer's procedural grant of ePlus's unopposed motion to vacate those constructions after settlement was reached by the parties in that case. Accordingly, Defendants request that the Court grant their motion to transfer the case to Judge Spencer or in the alternative to adopt Judge Spencer's claim constructions.

## II. ARGUMENT

### A. The Interests of Justice Weigh Heavily in Favor of Transfer to Judge Spencer

The circumstances of this case strongly support transferring this action to Judge Spencer in the Richmond Division of the Eastern District of Virginia. In fact, this Court has previously found transfer to be the appropriate remedy under very similar circumstances. *See Verizon Svcs.*

2

*Corp. v. Cox Fibernet Virginia, Inc.,* Docket No. 2:08cv20, Order Granting Reassignment and Transfer (E.D. Va. Feb. 21, 2008) (unpublished) (attached hereto as **Exhibit 1**); *NTP, Inc. v. Palm, Inc.,* Docket No. 2:06cv627, Order Granting Reassignment (E.D. Va. Dec. 18, 2006) (unpublished) ("*NTP I*") (attached hereto as **Exhibit 2**).[1] In *Verizon*, this Court reassigned and transferred a case involving allegations of infringement of eight patents to Judge Hilton of the Alexandria Division, who had previously presided over a case involving the same plaintiffs and four of those eight patents.[2] The Court noted that Judge Hilton's *Markman* ruling was "[c]entral to [his] understanding of the patents at issue." *Id.* at 2. Similarly, in *NTP I*, this Court reassigned the patent infringement action to Chief Judge Spencer, who had "presided over two independent lawsuits concerning the patents at issue," issued a *Markman* ruling on those patents, and had "unquestionable familiarity with [the plaintiff]'s patent rights and [a] consequent comparative advantage in determining the question of whether [defendant]'s products infringe with those rights." *Id.* at 2. In the instant case, Judge Spencer issued a sixteen-page order construing the identical patents-in-suit and presided over a trial involving the same technology that lasted several weeks. Against this background, it is clear that Judge Spencer's knowledge of patents and technology compel the same result reached in *Verizon* and *NTP I*.

Furthermore, as this Court has previously held, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Mullins v. Equifax Info. Svcs., LLC,* Case No. 3:05CV888, 2006 U.S. Dist.

---

[1] Interestingly, ePlus's counsel of record here were also counsel of record on both of these cases (*i.e.*, Gregory N. Stillman and Brent Lee VanNorman of Hunton & Williams were also counsel for Verizon Services Corp. in *Verizon*; Jennifer Ann Albert of Goodwin Procter LLP was counsel for NTP, Inc. in *NTP I*), yet both of these cases are noticeably absent from ePlus's Opposition despite their clear relevance to Defendants' Motion to Transfer.

[2] ePlus asserts that § 1404(a) does not provide the authority to transfer a case to a specific judge. However, in both *Verizon* and *NTP I*, this Court has transferred cases directly to the specific judge that is familiar with the patents-in-suit.

3

LEXIS 24650, at *16 (E.D. Va. Apr. 28, 2006) (*quoting* 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3847 (2005)). Here, the convenience factors are, at a minimum, neutral and actually slightly favor transfer as described in Defendants' motion to transfer. Plaintiff has not even argued that the convenience factors weigh against transfer. On the other hand, Defendants' motion lays out numerous reasons for transferring this case to a Judge that is already intimately familiar with the patents-in-suit. Plaintiff's only arguments suggest that the Eastern District of Virginia's policy of rotating patent cases must be left undisturbed and that, if transferred, this case should be sent to Judge Brinkema.

### 1. Section 1404(a) Does Not Conflict with the Eastern District of Virginia's Policy of Rotating Patent Cases

Defendants respect the Court's policies it has in place to manage its dockets, including this District's assignment of patent cases. There is no reason to believe, however, that an intra-district transfer pursuant to Section 1404(a), in a situation such as this where all three patents-in-suit have been thoroughly reviewed by a Judge in this District, is somehow inconsistent with this policy as ePlus suggests.[3] Moreover, ePlus does not assert that this policy promotes judicial economy in a case involving patents that have already been tried in front of a Judge in the District. In fact, while Section 1404(a) does allow for the consideration of the efficiencies of such an occurrence, this District's policy of automatically rotating assignment of patent cases neither addresses nor contradicts those considerations. Accordingly, Defendants' request is not

---

[3] In addition, in its Opposition, ePlus implies that the forwarding of the SAP case from Alexandria to Richmond was purposeful when it states that the Court "*sua sponte* transferred" the case "notwithstanding Judge Brinkema's prior handling of the Ariba case." Pl.'s Opp'n at 4. What is missing from this assumption, however, is any indication that ePlus (or SAP) made this Court aware of the relationship between the two cases. If this Court was unaware of the relationship between the cases, it is unsurprising – and in fact quite likely under the Court's policy regarding the assignment of patent cases – that the second case would not end up in front of the same judge.

in conflict with any policy or procedure of the Eastern District of Virginia. *See, e.g., Verizon,* Docket No. 2:08cv20 (Order granting transfer of patent case from Norfolk Division to Alexandria Division pursuant to § 1404(a)). Defendants respectfully submit that it would be counterproductive to allow ePlus to hide behind such a procedural policy in order to avoid discussing the merits of an intra-district transfer under Section 1404(a) and to hinder this Court's ability to promote judicial economy.

Furthermore, any suggestion by ePlus that their lack of action and lack of transfer requests was out of respect for the District's rotation policy is disingenuous. To now suggest that Judge Brinkema is in a better position than Judge Spencer to hear this case is a demonstration that plaintiff is forum shopping in an attempt to avoid the effects of Judge Spencer's analysis and select its favorite claim construction, if not get a third chance to argue claim construction.[4] While defendant SAP also did not request a transfer to Judge Brinkema in the ePlus v. SAP case, Defendants here should not be forced to similarly follow suit and expend unnecessary resources where the option now exists to transfer this case to someone with Judge Spencer's exposure to the patents-in-suit.

### 2. Judge Spencer Is Far Better Suited Than Judge Brinkema to Hear This Case

ePlus provides no real reason why this case should not be transferred to Judge Spencer.[5]

---

[4] Contrary to ePlus's suggestion that it always files in its home court in Alexandria, ePlus only filed this Complaint in the Eastern District of Virginia after first filing this action in the District of Delaware and voluntarily dismissing it a few weeks later.

[5] ePlus argues that "defendants simply declare . . . that this case might have been brought in the Richmond Division as required by the transfer statute." Pl.'s Opp'n at 10, n.7. Yet, ePlus did not rebut or otherwise make any showing that the case could not have been brought in the Richmond Division. Furthermore, in light of this Court's policy of assigning patent cases district-wide to any division and Local Rule 3(C)'s instruction that the Clerk's Office must accept a filing in any division, it is unclear whether, in patent cases, the specific division is even relevant to this threshold inquiry in a Section 1404(a) analysis. *Cf. Borghi v. Purple Group*,

It simply suggests that Judge Brinkema is better suited because she did not vacate her claim construction rulings whereas Judge Spencer did. This argument fails on multiple levels.

First, Judge Spencer's procedural vacatur of his *Markman* Order and related Summary Judgment opinion does not negate the detailed analysis that he performed on numerous claim terms that were not at issue in front of Judge Brinkema. ePlus seems to suggest that all of Judge Spencer's work on the case went out the window when his orders were vacated. On the contrary, Judge Spencer's experience with the patents-in-suit was and remains far more extensive than Judge Brinkema's. Judge Spencer was asked to deliver a bench verdict, and though the process was cut short by the parties' settlement, his experience in considering the scope and validity of the patents-in-suit on the merits is invaluable. Further, ***all seventy-nine of the claims*** of the patents-in-suit were at issue when Judge Spencer held his *Markman* hearing and construed the claim terms at issue in that case. On the other hand, only ***eight claims*** were at issue at the time Judge Brinkema construed claim terms and at the time of the trial in that case, including only two of the twenty-five means-plus-function claims in U.S. Patent No. 6,023,683. *See* Pl.'s Opp'n, Exhibit A (Mem. Op. of District Judge Leonie M. Brinkema (Jan. 19, 2005)) at 6.

In addition, Judge Brinkema's construction of those eight claims was based on briefing and argument given during summary judgment motions practice. She did not hold a separate *Markman* hearing like Judge Spencer did. In fact, Judge Brinkema noted that "[c]laim construction [was] especially difficult in [that] case because so much of the parties' pleadings dispute[d] not the meaning of a particular claim but rather whether defendant's products infringe[d] a given claim." *See id.* at 10, n.3.

---

Civil No. 2008-36, 2009 U.S. Dist. LEXIS 42101, at *7 (D.V.I. May 15, 2009) ("Because [defendant] seeks transfer only between divisions and not districts and there is no dispute that the District of the Virgin Islands generally is a proper venue, the threshold inquiry of Section 1404(a) is satisfied.") (attached hereto as **Exhibit 3**).

6

Judge Spencer's construction and review of the patents-in-suit is not only far more thorough, but it is more recent as well. Thereby, Judge Spencer (and ePlus) had the benefit of the record of Judge Brinkema's proceedings on the patents-in-suit. Certainly the parties brought the relevant portions of those proceedings to Judge Spencer's attention for his consideration. ePlus, however, suggests that the parties should reargue, in claim construction here, more than twenty claim terms that were only considered by Judge Spencer, including twelve means-plus-function elements, and this Court (or, according to ePlus, Judge Brinkema) should spend time and energy getting up to speed on the universe of information already reviewed by Judge Spencer.

Furthermore, the case law evolved in the area of claim construction between Judge Brinkema's and Judge Spencer's claim constructions. Judge Brinkema even noted in her claim construction analysis that "not all of the complex procedural and substantive nuances involved in a district court's construction of claims are completely settled." *See id.* at 4 (*citing Phillips v. AWH Corp.,* 376 F.3d 1382, 1382-83 (Fed. Cir. 2004) (order granting petition for rehearing *en banc* and inviting further briefing on issues concerning claim construction procedure generally)). Indeed, *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), which issued in July of 2005, changed the face of claim construction. Then, ePlus relied heavily on the *Phillips en banc* opinion in briefing claim construction to Judge Spencer. *See* **Exhibit 4**, Plaintiff ePlus, Inc.'s Brief in Support of its Claim Construction Statement, at iii, 5, 10 (ePlus cites *Phillips* throughout its claim construction brief; "The Federal Circuit in *Phillips* set forth a very clear blueprint for a district court to follow…"; "Importantly, *Phillips* signaled a shift away from excessive reliance on the extrinsic record…"); *see also* **Exhibit 5**, ePlus, Inc.'s Statement Regarding Extrinsic Evidence, at 1 ("…the Federal Circuit's recent pronouncement on claim

7

construction in *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) counsels against the use of extrinsic evidence").

In addition, as SAP argued to Judge Spencer, "after the *Ariba* case, the Federal Circuit's decision in *Harris Corp. v. Ericsson, Inc.,* [417 F.3d 1241 (Fed. Cir. 2005),] clarified the law relating to the identification of corresponding structures for computer-implemented means-plus-function limitations, thus mandating constructions that differ from those in the *Ariba* case." *See* **Exhibit 6**, SAP America, Inc. and SAP AG's Memorandum in Support of Proposed Claim Construction, at 2.  Apparently, Judge Spencer considered Judge Brinkema's claim constructions in the context of the updated case law, and agreed that they needed revising.  Judge Spencer also presumably applied the updated case law when construing the remaining means-plus-function language and other terms in the patent.  Unlike Judge Brinkema, Judge Spencer had the benefit of the *en banc* decision in *Phillips* and other relevant Federal Circuit cases in construing the patents-in-suit.  As such, Judge Spencer is clearly the most familiar with the issues likely to arise in the instant case.

### B. Judge Spencer's *Markman* Order Remains Persuasive

Contrary to ePlus's assertion, Defendants have not argued that Judge Spencer's *Markman* Order is entitled to collateral estoppel effect.  Likewise, Defendants have not suggested that Judge Spencer's vacatur be reversed.  However, as noted above, Judge Spencer's vacatur of his *Markman* Order does not negate the work done by the parties or Judge Spencer to construe the claims.  And, as noted in Defendants' motion at 7-8, Judge Spencer's *Markman* Order has the same persuasive value of any opinion in a case where no final judgment is entered.  The vacatur need not be reversed to utilize this persuasive value.  Defendants simply request that this Court, if it finds that transfer is not an appropriate remedy, adopt the claim constructions from Judge Spencer or otherwise use them for their persuasive value as deemed appropriate in the Court's

8

discretion.

Plaintiff argues that Judge Spencer "acknowledged that his *Markman* Order was incorrect" through the statement in his Vacatur Order that "[u]pon due consideration by the Court, and for the reasons set forth in ePlus's Memorandum in support of its Motion, ePlus's Motion is hereby GRANTED." *See* Pl.'s Opp'n at 9.  However, Judge Spencer does not specify which of ePlus's multiple listed reasons form the basis of the vacatur grant.  In fact, the Order itself provides no analysis, and was issued the same day the Motion to Vacate was filed.  Furthermore, the Motion was unopposed by defendant SAP, which had just reached a settlement agreement with ePlus.  That is not surprising since it is not uncommon for confidential settlement agreements to be conditioned on vacatur of orders such as claim construction and summary judgment opinions.  Therefore, it would appear that Judge Spencer's vacatur of his orders was purely procedural and related to settlement rather than the alleged "serious problems" with Judge Spencer's claim construction and summary judgment rulings.

Furthermore, the argument against the accuracy of the claim constructions was the third of three issues raised by ePlus in the Motion to Vacate.  ePlus first argued that vacatur is important to prevent any possible collateral estoppel effect of orders that can no longer be appealed.  ePlus also argued that the claim construction should be vacated to prevent inconsistent claim construction with Judge Brinkema's rulings.  As discussed above, ePlus made no prior effort to seek transfer of that action to Judge Brinkema.  Instead, ePlus waited until after many of its proposed claim constructions were rejected by Judge Spencer before showing concern about the potential of inconsistencies with the prior ruling.  Now, however, ePlus does not seem as troubled with inconsistent claim construction rulings as it seeks a third construction of its claims in front of a third Judge.

9

ePlus's arguments related to the substance of the claim constructions were the final arguments in its motion. It is clear that those same arguments were unsuccessful during *Markman* briefing. What is not clear is whether Judge Spencer gave those arguments any weight in granting ePlus's Motion to Vacate.[6] Indeed, nobody knows for certain the rationale behind Judge Spencer's grant of vacatur, except Judge Spencer himself.

That lack of knowledge, however, does not stop ePlus from suggesting that Judge Spencer would not adopt his own prior claim construction ruling if this case was transferred to his Court. Again, only Judge Spencer can speak to that. However, what is clear from the record is that Judge Spencer has extensive experience with the patents-in-suit, on claim construction and invalidity issues that would translate directly into the issues of the instant case.

## C. Defendants' Motion to Transfer Would Just As Easily Be Addressed After a Stay Pending Reexamination

In an attempt to turn its Opposition to Defendants' Motion to Transfer into a Sur-reply on the topic of Defendants' Motion to Stay, ePlus argues that transferring would be inconsistent with staying this litigation. ePlus then spends the last few pages of its Opposition arguing against a stay pending reexamination. The response is simple. Defendants requested the stay to conserve judicial and party resources. This motion to transfer and proposed alternative regarding Judge Spencer's *Markman* ruling are requested for the same purpose. If the Motion to Stay is granted, Defendants' Motion to Transfer and the issues of claim construction can be dealt with after resumption of the instant case, if necessary. If the Court determines that claim construction should be determined prior to a final result in the reexaminations, the issue of conservation of

---

[6] ePlus also emphasizes that Judge Spencer vacated his order of summary judgment of non-infringement of the certain claims. However, ePlus's concession of non-infringement on which summary judgment was granted was based on the claim constructions. Therefore, by vacating his *Markman* Order, Judge Spencer necessarily vacated the summary judgment order.

judicial and party resources remains at the forefront. Indeed, it would still be more duplicative to construe the patents for a third time now and potentially a fourth time later than to adopt a prior claim construction and address any changes based on the reexamination as they apply to the prior claim construction.

Defendants will not burden this Court by responding to the pages of misplaced arguments ePlus makes with respect to the motion to stay in its opposition to the motion to transfer, but will address a few of the more egregious statements in ePlus's Opposition.

ePlus implies that a typographical error in the citation of *NTP, Inc. v. Palm, Inc.*, No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007) ("*NTP II*") somehow was made to suggest that the decision was rendered after the Supreme Court's decision in *Nken v. Holder*, 129 S. Ct. 1749 (April 22, 2009). *See* Pl.'s Opp'n at 12, n.11. This suggestion is completely inappropriate and, ultimately, irrelevant. First, even if the decision in *NTP II* was rendered on March 22, **2009**, it still would be before the decision in *Nken*, which was April 22, 2009, so there is no basis to believe this "misstatement" was somehow purposeful. Second, the citation to *NTP II*, **2007** U.S. Dist. LEXIS 97141, clearly sets forth the correct year. Finally, neither *Nken* nor *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), which was decided before *NTP II*, addresses the specific standard for staying a patent case pending reexamination. Accordingly, the standard outlined in *NTP II* is still the correct standard.

In addition, ePlus states that "defendants' motion neglected to cite this Court's published precedent in *Heinz Kettler GMBH & Co., KG v. Indian Indus.*, 592 F. Supp. 2d 880 (E.D. Va. 2009)" and that "Defendants now struggle to distinguish that case . . . ." Pl.'s Opp'n at 15, n.14. Again, ePlus attempts to imply some bad faith motive on the part of the Defendants, which is clearly not warranted, while continuing to misstate the law. ePlus's apparent basis for these

11

statements is its argument that *Heinz Kettler* cannot be inapposite because the party requesting the stay in that case was the accused infringer. ePlus misses the point. The holding and legal analysis in *Heinz Kettler* was based on the language of 35 U.S.C. § 318, which ePlus does not dispute. Any suggestion that § 318 applies to accused infringers ignores the plain language of the statute and Federal Circuit precedent. *See P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (noting that § 318 applies only to patentees). Therefore, *Heinz Kettler* is clearly inapposite.

### III. CONCLUSION

Plaintiff offers no real reason why these proceedings should not be transferred to a Judge with extensive familiarity with the patents-in-suit as this Court has done in similar circumstances before, and does not dispute that transferring this action to Judge Spencer would save considerable Court and party resources. Judge Spencer's significant exposure to the patents, his consideration and construction of all claims of the patents-in-suit, and his application of current claim construction law each weigh heavily in favor of promoting judicial economy by transferring proceedings to his Court. At a minimum, Judge Spencer's claim constructions are persuasive and instructive.

Accordingly, Defendants respectfully request that the Court transfer the instant action to Judge Spencer in the Richmond Division of the Eastern District of Virginia. Alternatively, Defendants request that the Court adopt or otherwise utilize Judge Spencer's claim constructions from the prior litigation of the patents-in-suit.

Dated:  August 14, 2009                         Respectfully submitted,

    /s/ *Stephen E. Noona*
Stephen E. Noona
(VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:     (757) 624-3000
Facsimile:       (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC, SciQuest, Inc. and Lawson Software, Inc.*

Daniel Johnson, Jr. (admitted *pro hac vice*)
Rita E. Tautkus (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:     (415) 442-1000
Facsimile:       (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com

Robert W. Busby, Jr.
(VSB No. 41312)
Bradford A. Cangro (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone:     (202) 739-3000
Facsimile:       (202) 739-3001
rbusby@morganlewis.com
bcangro@morganlewis.com

*Counsel for Defendants SciQuest, Inc. and Lawson Software, Inc.*

13

        Kenneth W. Brothers (admitted *pro hac vice*)
        Matthew J. Ricciardi (admitted *pro hac vice*)
        Dickstein Shapiro LLP
        1835 Eye Street NW
        Washington, DC 20006
        Telephone:   (202) 420-4128
        Facsimile:    (202) 420-2201
        brothersk@dicksteinshapiro.com

        *Counsel for Defendant Perfect Commerce, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2009, I will electronically file the foregoing Reply in Further Support of Motion of Defendants Perfect Commerce, LLC, SciQuest, Inc., and Lawson Software, Inc. to Transfer Proceedings or in the Alternative to Adopt Prior Markman Ruling with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory N. Stillman
Brent Lee VanNorman
Hunton & Williams
500 East Main Street, Suite 1000
Norfolk, VA 23510
Tel.: 757-640-5300
Fax.: 757-625-7720
gstillman@hunton.com
bvannorman@hunton.com

David M. Young (VSB No. 35997)
Scott L. Robertson
Jennifer A. Albert
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202-346-4000
Fax.: 202-346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

James David Clements
Shirley Sperling Paley
Goodwin Procter LLP
Exchange Place
53 State St
Boston, MA 02109
Tel.: 617-570-1000
Fax: 617-523-1231
jclements@goodwinprocter.com
spaley@goodwinprocter.com

*Attorneys for Plaintiff*

/s/ *Stephen E. Noona*
Stephen E. Noona
(VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC, SciQuest, Inc. and Lawson Software, Inc.*

1518315\1