IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ePLUS, INC.,          )
              )
              )
      Plaintiff,      )  Civil Action No. 2:09cv232-HCM-TEM
              )
v.              )
              )
LAWSON SOFTWARE, INC.,     )
              )
              )
      Defendant.     )

**PLAINTIFF ePLUS, INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL
DISCOVERY FROM DEFENDANT LAWSON SOFTWARE, INC.**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND .................................................................................................2

III.    ARGUMENT.......................................................................................................4

        A.      Lawson Has Refused To Identify Potentially Infringing Products.........................5

        B.      Lawson Should Provide Complete Interrogatory Responses and Claim
                Charts With Respect To Invalidity Issues and Other Defenses ...............................6

        C.      Lawson's Use of Rule 33(d) Is Improper .............................................................10

        D.      Lawson Has Refused To Fully Disclose Its Prior Awareness Of The
                Patents-In-Suit......................................................................................................11

        E.      Lawson Should Not Withhold Patent Prosecution Documents Relating to
                the Technology At Issue In This Case ...................................................................12

        F.      Lawson Has Not Produced E-Mail Correspondence .............................................19

        G.      Lawson Has Not Produced Documents Pertaining To Competition With
                ePlus......................................................................................................................20

IV.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Avery Dennison Corp. v. UCB SA*,
1996 WL 633986 (N.D. Ill. Oct. 29, 1996) .............................................................................. 13

*Cappetta v. GC Servs. Ltd. Partnership*,
2008 WL 5377934 (E.D. Va. Dec. 24, 2008) .............................................................................. 4

*Carrier Mfg. Co. v. Rex Chainbelt, Inc.*,
281 F. Supp. 717 (E.D. Wis. 1968)................................................................................. 14, 15

*Central Sprinkler Co. v. Grinnell Corp.*,
897 F. Supp. 225 (E.D. Pa. 1995).............................................................................................. 13

*Cordis Corp. v. Scimed Life Sys., Inc.*,
982 F. Supp. 1358 (D. Minn. 1997).......................................................................................... 12

*CSAV, Inc. v. Peerless Indus., Inc.*,
2007 U.S. Dist. LEXIS 7841 (D. Minn. Feb. 2, 2007) ....................................................... 14, 17

*Garrett v. Sprint PCS*,
2002 WL 181364 (D. Kan. Jan. 31, 2002).................................................................................. 4

*Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*,
132 F.R.D. 204 (N.D. Ind. 1990)........................................................................................ 14, 16

*Kidwiler v. Progressive Paloverde Ins. Co.*,
192 F.R.D. 193 (N.D. W.Va. 2000)........................................................................................... 4

*Mushroom Assocs. v. Monterey Mushrooms, Inc.*,
25 U.S.P.Q.2d 1364 (N.D. Cal. 1992) ................................................................................. 14, 15

*Paper-Converting Machine Co. v. Magna Graphics Corp.*,
207 U.S.P.Q. 1136 (E.D. Wis. 1980)................................................................................... 14, 16

*PCR Golf Ball Co. v. Chemold Corp.*,
176 U.S.P.Q. 178, 1972 WL 17672 (E.D.N.Y. 1972) .............................................................. 16

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
2008 U.S. Dist. LEXIS 20761 (S.D. Fla. Mar. 17, 2008)........................................................... 7

*Ring Indus. Grp., LP v. E Z Set Tank Co.*,
2008 U.S. Dist. LEXIS 48668 (W.D.N.C. June 11, 2008) ........................................................ 6

## Statutes

35 U.S.C. § 112.................................................................................................................... 18

35 U.S.C. § 287.................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 3, 4, 14

Fed. R. Civ. P. 33 ................................................................................................................... passim

## I.    INTRODUCTION

Plaintiff *ePlus*, Inc. ("*ePlus*") respectfully requests that the Court compel Defendant Lawson Software, Inc. ("Lawson") to provide discovery in this patent infringement action. Notwithstanding several "meet and confer" discussions between the parties and commitments by Lawson to address deficiencies in its discovery, to date Lawson has not provided complete substantive answers to several interrogatories pertaining to some of the most fundamental issues in the case. Indeed, even though it has been four months since Lawson was served with the complaint in this action, Lawson's answers pertaining to several straightforward interrogatories are little more than objections served with vague promises that Lawson will supplement the answer at some indeterminate time in the future, pending further investigation. Likewise, to date Lawson has not produced documents pertaining to several significant topics of discovery, as set forth *infra.*

These discovery deficiencies include:

- Lawson has not provided a sufficient answer to an important interrogatory asking that it identify all of the various products that it has sold that perform certain specified functions that are recited in the claims of the patents-in-suit.

- For most of the alleged "prior art" that Lawson has asserted in this case in support of its invalidity defense, Lawson has not provided claim charts or any explanation how these references allegedly apply to invalidate any of the claims of the patents-in-suit.

- Lawson has not provided any substantive response to several additional interrogatories relating to, *inter alia,* its defense of patent invalidity under Section 112 of the patent laws, and other theories of invalidity.

- Lawson has not produced documents pertaining to its own patent applications relating to the technology at issue in this case, some of which likely contain descriptions of Lawson's accused products.

- Lawson's document production is markedly deficient with respect to financial information relating to its accused products, which information is critical to damages issues. Moreover, Lawson's answer to an interrogatory relating to the revenues for its accused products simply identifies, pursuant to Rule 33(d), a handful of outdated license agreements that are woefully inadequate to respond to the interrogatory.

- Lawson has not produced a significant amount of e-mail correspondence with its document production to date.

- Lawson has not produced documents pertaining to its competition with *e*Plus for electronic sourcing and procurement contracts, including responses to requests for proposals from prospective customers of the two parties.

*e*Plus has raised with Lawson all of the deficiencies set forth in this motion, but to date Lawson has not remedied them. While *e*Plus understands that Lawson's document production is ongoing, under the scheduling orders entered by the Court and agreed to by the parties, *e*Plus has less than six weeks to prepare its initial expert reports regarding infringement and damages and approximately three months to complete discovery in this case. Accordingly, any further delay in Lawson providing fulsome discovery responses and a complete document production is prejudicial to *e*Plus's ability to investigate the full scope of Lawson's infringement and its invalidity defenses, prepare expert reports, and ultimately prepare for trial. Accordingly, *e*Plus respectfully requests that the Court compel Lawson to provide the requested discovery immediately.[1]

## II.    BACKGROUND

On May 19, 2009, *e*Plus filed this patent infringement action against Lawson and three other defendants. Dkt. No. 1. *e*Plus served Lawson with the complaint on May 28, 2009. Dkt. No. 8. *e*Plus agreed to the defendants' request for an extension of time in which to respond, Dkt. No. 13, and, on July 8, Lawson filed an answer and counterclaims. Dkt. No. 25. Among other things, Lawson asserted counterclaims and defenses of invalidity under Sections 102, 103 and

---

[1] If appropriate, and depending on when the Court rules on this motion and orders that Lawson provide the discovery at issue, *e*Plus also asks that it be given leave to supplement its infringement and damages expert reports pursuant to Rule 26(e) in order to address any late-provided discovery. *e*Plus further requests that it be permitted to resume any relevant depositions, at Lawson's expense, in order to question the witnesses about the late-provided discovery.

112 of the patent statute, non-infringement, and unenforceability. *Id.* On July 13, this Court entered a Rule 26 (f) Pretrial Order permitting the parties to initiate discovery immediately, but providing that no party would be compelled to provide responses to discovery prior to August 24. Dkt. No. 35.

On July 24, *e*Plus served Lawson with the first sets of interrogatories and document requests that are at issue in this motion. Lawson served objections to those discovery requests on August 10 and, on August 24, Lawson served its answers to the first set of interrogatories and its responses to the first set of document requests.

As set forth *infra,* for several interrogatories pertaining to issues as fundamental as infringement and invalidity, Lawson provided little more than objections. Exhibit A (Lawson's Answers to First Set of Interrogatories). Moreover, although Lawson purported to rely on Rule 33(d) for its responses to several interrogatories, in fact Lawson did not at that time produce any documents. After *e*Plus raised numerous deficiencies with Lawson's counsel, *see, e.g.,* Exhibit B (deficiency letter), Lawson eventually produced some responsive documents but did not supplement its interrogatory answers in any respect.

Counsel for the parties subsequently conferred again on September 10. At that time, counsel for Lawson committed to supplementing Lawson's interrogatory answers and document production by September 18 to rectify all the deficiencies that *e*Plus had raised. *See* Exhibits C (supplemental deficiency letter) and D (letter confirming meet and confer discussion).

On September 18, Lawson supplemented three of its interrogatory answers and, that same week, supplemented its document production. Exhibit E (Lawson's supplemental answers to Interrogatory Nos. 2, 4, and 10). However, Lawson did not supplement at all several interrogatory answers that were the subject of the parties' discussions and correspondence,

including answers pertaining to the identification of all potentially infringing products and Lawson's allegations of invalidity under Section 112 of the patent statute. In addition, although Lawson supplemented its document production on several occasions, Lawson did not rectify a number of important deficiencies in its document production as it had committed to do.

## III.   ARGUMENT

Rule 26 provides *e*Plus with the right to seek discovery of documents and other information relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).[2] Lawson, as the party opposing discovery, has the burden of showing that the requested discovery is not relevant. *Cappetta v. GC Servs. Ltd. Partnership,* 2008 WL 5377934, *2 (E.D. Va. Dec. 24, 2008); *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199, n.64 (N.D. W.Va. 2000). Courts employ a liberal discovery standard that permits discovery if there is *any possibility* that the information may be relevant to the claim or defense of any party. *Garrett v. Sprint PCS,* 2002 WL 181364, *1 (D. Kan. Jan. 31, 2002). Thus, a request for discovery should be allowed *"unless it [is] clear* that the information sought can have *no possible bearing* on the claim or defense of any party." *Id.* (citation omitted); *see also Cappetta,* 2008 WL 5377934 at *2 ("Relevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 353 (1978)).

---

[2] Moreover, relevant discoverable information need not be admissible at trial if the requested discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* "The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of its case." *See* Advisory Committee Notes to Fed. R. Civ. P. 26.

### A.   Lawson Has Refused To Identify Potentially Infringing Products

In response to several interrogatories pertaining to fundamental issues in the case,

Lawson has refused to provide substantive answers. *e*Plus's **Interrogatory No. 14**, for example,

asks that Lawson identify its commercial systems, products, etc., that offer specifically-identified

features, functions, or capabilities that are recited in the claims of the patents-in-suit. Exhibit A

(Lawson's Answers and Objections to First Set of Interrogatories) at 25-26. This is a critically

important interrogatory, because a fulsome response is necessary to enable *e*Plus to identify all

the products, components, and versions of commercial products that Lawson offered over time

that likely infringed the patents-in-suit, *i.e.,* to assess the full scope of Lawson's infringement

and the accused products in this case.

Lawson's answer to the interrogatory provides virtually none of the requested

information, but merely re-states verbatim its answer to Interrogatory No. 11 in which Lawson

stated the dates upon which it allegedly first conceived of or reduced to practice certain of its

infringing products.[3] While this information may be partially responsive, it is certainly not

sufficient to answer Interrogatory No. 14 which, again, asks that Lawson identify all of the

specific products, etc., that offer the features, functions, or capabilities that are specified in the

interrogatory. Nothing in Lawson's answer provides the information requested with respect to

features, functions, or capabilities. Further, the interrogatory asks that Lawson identify for each

identified product the documents sufficient to describe the features, functionality, or capability of

that product. *Id.* Lawson has not provided this information. Further, Lawson's answer refers to

documents that it has allegedly produced as providing information responsive to the

---

[3] As with all of the issues presented in this motion, *e*Plus raised this deficiency with Lawson, in this instance speculating that the verbatim rehash of the answer may have resulted from a typographical error. Lawson, however, has not corrected the deficiency.

interrogatory, but it has not identified **any** documents as being responsive as required by Rule 33(d).

These deficiencies in Lawson's answer are particularly egregious in light of Lawson's prior refusal to answer other interrogatories on the basis that *e*Plus was supposedly required to identify all of Lawson's accused products before Lawson would agree to provide substantive answers relating to invalidity and other issues. *See, e.g.,* Exhibit A at 11 (stating, as Lawson's entire answer, "Subject to and without waiving its objections, Lawson will supplement its response to this interrogatory and provide claim charts as necessary at the appropriate time, but not before ePlus specifically identifies the claims it asserts and the Lawson products it accuses of infringement.").

Lawson's refusal to provide a complete answer is obstructing *e*Plus's ability to fully identify all accused products. *e*Plus therefore asks that the Court compel Lawson to supplement its answer to Interrogatory No. 14 to provide all of the requested information.

**B.    Lawson Should Provide Complete Interrogatory Responses and Claim Charts With Respect To Invalidity Issues and Other Defenses**

Lawson's answer to **Interrogatory No. 4** remains seriously deficient.  This interrogatory requires, *inter alia,* an identification of all allegedly invalidating prior art, a claim chart identifying each element of each claim of the patents-in-suit asserted to be invalid, and an explanation where each element of the respective claim is shown in each such alleged prior art reference.  It is beyond reasonable dispute that this is relevant, discoverable information. *See, e.g., Ring Indus. Grp., LP v. E Z Set Tank Co.,* 2008 U.S. Dist. LEXIS 48668, **17-22 (W.D.N.C. June 11, 2008) (compelling patent infringement defendant to provide detailed answers to interrogatories relating to non-infringement and invalidity, as well as non-infringement and invalidity contentions).

6

In response to this interrogatory, Lawson initially provided a mere list of alleged prior art references that it claimed "anticipate[] or render[] obvious" the patents-in-suit, without any application of the alleged prior art to the patent claims.[4] *e*Plus asked that Lawson provide all the information requested by the interrogatory, on a claim-by-claim, element-by-element basis, including the claim charts. *See Perfect Web Techs., Inc. v. InfoUSA, Inc.,* 2008 U.S. Dist. LEXIS 20761, **5-8 (S.D. Fla. Mar. 17, 2008) (compelling patent infringement defendant to fully supplement answer calling for detailed explanation as to how alleged prior art references apply to claims of patent-in-suit).

Lawson's initial answer identified more than three dozen alleged prior art references. In its September 18 supplementation, however, Lawson provided claim charts purporting to apply only *three* of these references to the claim terms. That is, Lawson's claim charts and supplemental interrogatory answers made no mention of most of the three dozen alleged references included in Lawson's original answer.[5] Further, it appears that Lawson has not included in its document production many of these alleged prior art references. If Lawson stands

---

[4] As noted above, Lawson also initially refused to provide *any* substantive response to a similar interrogatory relating to non-infringement. Exhibit A at 11.

Nothing entitled Lawson to avoid providing an answer to these interrogatories, nor did it have the right to insist on discovery from *e*Plus before it was required to answer. At this time all of the claims of the three patents-in-suit are asserted. The complaint in this action identifies, without limitation, Lawson products accused of infringement, including Lawson Supply Chain Management, Lawson Procurement, Lawson Requisition, Lawson Inventory Control, Purchase Order, and Lawson Procurement Punchout. Dkt. No. 1, ¶5. Moreover, with *e*Plus's interrogatory answers, *e*Plus provided Lawson with claim charts setting forth its infringement contentions, although *e*Plus reserves the right to accuse additional Lawson products of infringement based on the discovery and investigation undertaken in this case.

[5] Moreover, many of the alleged "references" on Lawson's prior art list are simply generic without an identification of the specific product, version, or publication that actually constitutes the alleged reference. Thus, for example, for Lawson itself, Lawson simply recited "Lawson Software," without any further specificity as to what is the alleged prior art. Exhibit A at 14. Surely, Lawson must know what particular product, version, or publication it believes constitutes the prior art reference.

behind these references as invalidating prior art, it should produce them and apply them to the claim terms in the claim charts and show how they allegedly invalidate the claims. If not, then Lawson should represent that it no longer alleges these references constitute invalidating prior art.

Lawson has also refused to provide a substantive response to an interrogatory regarding whether it relies on the doctrine of prosecution history estoppel. In response to *e*Plus's **Interrogatory No. 8**, Lawson provided no substantive answer but unilaterally demanded that *e*Plus identify the claims its asserts and whether or not it will rely on the doctrine of equivalents for those claims. Lawson's response states, in total, ***"Lawson reserves the right to supplement its response to this interrogatory, as necessary at the appropriate time, but not before e Plus specifically identifies the claims it asserts and whether or not it will rely on the doctrine of equivalents for those claims.*** Exhibit A at 19 (emphasis added).[6] Lawson still has not provided any substantive answer to the interrogatory.

Further, in this case it is critically important that Lawson provide full responses to these interrogatories, because Lawson refused to agree to a fairly typical joint discovery plan proposed by *e*Plus under which the parties would mutually exchange disclosures of their infringement and validity contentions. *See* Exhibits F-I (correspondence between counsel relating to joint discovery plan and exchange of infringement and validity contentions). Having blocked

---

[6] By refusing to fully answer these interrogatories, Lawson made a *fait accompli* of its demand that *e*Plus first set forth its infringement contentions before Lawson answered. On September 8, *e*Plus timely answered Lawson's interrogatories and in so doing provided claim charts showing infringement of all three patents-in-suit. *e*Plus's answers affirmed that it asserted all the claims of the three patents-in-suit against Lawson (a fact of which *e*Plus had already informed Lawson), and that while it relied on a theory of literal infringement, in the alternative reserved the right to allege infringement under the doctrine of equivalents. Thus, Lawson now has all the information that it improperly demanded of *e*Plus as a precondition for answering *e*Plus's interrogatories. Yet Lawson still has not provided any meaningful answers.

agreement for a joint exchange of the parties' infringement and validity contentions, Lawson is now obstructing the only available means by which *e*Plus can obtain a timely disclosure of Lawson's bases for alleging invalidity and non-infringement under the doctrine of prosecution history estoppel.

For the same reasons set forth above, Lawson's answer to **Interrogatory No. 5,** which relates to Lawson's contentions of invalidity under Section 112, is also wholly deficient. It bears emphasis that Lawson has filed a counterclaim of invalidity under Sections 102, 103, and 112, of the patent statute. Lawson provides no information in its answer but merely states a unilateral demand that *e*Plus first identify the claims it asserts and its contentions as to the meaning of those claims. Lawson's answer states, in total, *"Lawson reserves the right to supplement its response to this interrogatory as necessary at the appropriate time, but not before ePlus specifically identifies which claims it asserts and its contentions as to the meaning of those claims."* Exhibit A at 15 (emphasis added). Nothing requires that *e*Plus do so before Lawson provides a substantive answer to the interrogatory (indeed, elsewhere, Lawson objected to discovery requests relating to claim construction on the ground that such discovery is allegedly "premature," *see* Exhibit J, Lawson Objection to Request No. 85). Lawson's position is all the more improper in light of its counterclaim of invalidity.

Likewise with respect to **Interrogatory No. 6**, relating to other contentions of invalidity, Lawson provides no substantive answer at all, stating *"Lawson reserves the right to supplement its response to this interrogatory, where appropriate, in accordance with its continuing investigation into these matters."* Exhibit A at 16 (emphasis added).

9

*e*Plus respectfully requests that the Court compel Lawson to fully answer these interrogatories.[7]

### C.   Lawson's Use of Rule 33(d) Is Improper

With respect to **Interrogatory No. 10**, dealing with revenues from Lawson's accused products and services, Lawson's initial answer vaguely stated that it *might* produce documents from which a response to the interrogatory may be derived.  In total, Lawson's response stated:

> Subject to and without waiving its objections, once ePlus specifically identifies the accused products, Lawson *may* produce documents pursuant to Federal Rule of Civil Procedure 33(d) from which *e*Plus may derive an answer to this interrogatory.  In addition, ePlus has set forth numerous requests for production of documents addressing this issue.  Accordingly, for additional information responsive to this interrogatory, *e*Plus may refer to the documents produced by Lawson in response to *e*Plus's document requests.  Lawson reserves the right to supplement its response to this interrogatory, where appropriate, in accordance with its continuing investigation into these matters.

Exhibit A at 21 (emphasis added).

At the time Lawson provided this answer, however, Lawson had not yet produced *any* documents, much less documents sufficient to answer the interrogatory.  Moreover, Rule 33(d) requires that Lawson, *inter alia,* "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Further, Lawson's vague statement that it "may" produce such documents is inadequate.  Accordingly, Lawson's answer to this interrogatory was wholly deficient.

---

[7] With respect to *e*Plus's **Interrogatory No. 3**, Lawson set forth a number of objections to describing any analyses, etc., of the subject matter claimed in the patents-in-suit.  Lawson's answer went on to state when it allegedly first received notice of the patents-in-suit.  However, other than identifying a reexamination proceeding, it did not indicate whether it is otherwise aware of any analysis, etc., undertaken by entities other than Lawson that predate the filing of suit in this case.  *e*Plus ask that the Court compel Lawson to identify any such analyses and clarify or supplement its answer to provide that information.

*e*Plus raised this deficiency with Lawson and it committed to supplement its answer to provide the specificity required by Rule 33(d). Its supplemental answer identifies a handful of documents by their bates label designation. However, upon inspection of these documents, *e*Plus discovered that the specified documents consisted of approximately a dozen outdated license agreements from the early 1990s, some of which were not even executed. These documents do not contain information that would allow *e*Plus to determine the revenues Lawson has received from selling infringing products and services in the current decade. *e*Plus respectfully requests that the Court compel Lawson to produce and specify all of the records in detail that it relies upon as its answer to the interrogatory, as required by Rule 33(d).[8]

### D. Lawson Has Refused To Fully Disclose Its Prior Awareness Of The Patents-In-Suit

**Interrogatory No. 12** asks that Lawson, *inter alia,* describe in detail the occasions upon which it "*first became aware of*" or received notice(s) in any matter in each of the patents-in-suit." Lawson's answer stated that "it received notice of" the patents-in-suit no earlier than May 4, 2009 upon the filing of a complaint by *e*Plus. Exhibit A at 24. By using the phrase "receiving notice," it appears that Lawson may be attempting to narrowly circumscribe its answer. To ensure that Lawson was not doing so, *e*Plus asked that it supplement its answer to address when and how it became "aware of" the patents "in any manner." To date, Lawson has not supplemented its answer.

---

[8] With respect to **Interrogatory No. 11**, Lawson's answer again refers *e*Plus to various documents allegedly "produced by Lawson in response to *e*Plus's document requests." Exhibit A at 23. Again, Lawson had not produced any documents when it provided this answer, and since that time it has not supplemented its answer to specify any documents that it relies upon for its answer to the interrogatory. Accordingly, *e*Plus again asks that the Court compel Lawson to identify such documents and records with specificity as required by Rule 33(d).

Lawson's first awareness of the patents-in-suit is undeniably relevant to several issues in the case, including willfulness and possibly indirect infringement, *e.g.,* inducement of infringement. Lawson should be required to conduct a thorough search to determine its prior awareness of the patents and to respond to the interrogatory without equivocation. *e*Plus asks that the Court compel Lawson to clarify and/or supplement its answer to identify (as more fully stated in the interrogatory) any prior occasions upon which it "became aware of" the patents-in-suit in any manner.

###    E.    Lawson Should Not Withhold Patent Prosecution Documents Relating to the Technology At Issue In This Case

In its response to **Document Request No. 11**, Lawson states that it will produce only U.S. *patents issued* to Lawson that relate to the accused products, whereas the request more broadly pertains to *any documents relating to the patentability* of any aspect of Lawson's electronic sourcing and procurement systems and/or services. Such documents would include, for example, draft patent applications and other patent prosecution documents. No logical reason exists why Lawson's responsive documents should be limited to *issued* U.S. patents. Similarly with respect to **Request No. 31**, Lawson states that it will produce only issued U.S. patents relating to the accused products. Here again, no logical reason exists why relevant, discoverable documents would be limited only to issued patents, as opposed to pending applications, invention disclosures, and other prosecution documents.

Lawson's patent applications and related documents easily meet the broad scope of discovery permitted under the Federal Rules.[9] *e*Plus's Document Request No. 11 is directed

---

[9]    In evaluating the potential for uncovering relevant evidence, it bears emphasis that it is not *e*Plus's burden to specify the documents it expects it will find if the requested discovery is granted. *Cordis Corp. v. Scimed Life Sys., Inc.,* 982 F. Supp. 1358, 1362 (D. Minn. 1997) ("the proponent of discovery inescapably is caused to rely upon some measure of supposition, as the contents of the sought-after [patent] application can only be theorized, when framing a

toward documents relating to the patentability or unpatentability of Lawson's commercial

products in the area of technology that is at issue in this case:

> All documents and things that refer to the ***patentability or unpatentability of any aspect of Lawson's Electronic Sourcing and Procurement System(s) and/or Service(s)***, products, applications, services, processes or operations in the United States and/or abroad, including any prior art cited to reject Lawson patent applications or any prior art that interferes with claims of Lawson's patent applications, any draft patent applications (whether domestic or foreign), draft declarations, draft amendments, or other draft papers prepared during, or with reference to the prosecution of any application to pursue patent protection for any aspect of Lawson's Electronic Sourcing and Procurement System(s) and/or Service(s), products, applications, services, processes or operations in the United States and/or abroad.

Exhibit J at 13 (emphasis added).

In 1994, the inventors of the three patents-in-suit filed the first patent application that

eventually would mature into the patents in suit. In other interrogatory answers, Lawson

contends that it was a going concern at that time, and that it had introduced several related

commercial products and services. *See* Exhibit A at 22-23. It is unclear whether Lawson

contends that these products and services constitute prior art to the patents-in-suit, but Lawson

generically listed "Lawson Software" on its unexplained list of alleged prior art references in

response to *e*Plus's Interrogatory No. 4. Exhibit A at 14. As noted supra, Lawson has provided

invalidity claim charts, but these charts make no mention of any alleged Lawson prior art.

---

production request"); *Avery Dennison Corp. v. UCB SA*, 1996 WL 633986, * 1 (N.D. Ill. Oct. 29, 1996) ("[t]he court does not agree that [the requesting party], who has not had access to the [patent] application files, should be required to point out specific evidence that it expects to obtain from disclosure"); *Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 229 (E.D. Pa. 1995) ("it is unimportant that [the requesting party] cannot point to specific evidence in the [patent] applications . . . [the requesting party] do[es] not have the applications and so must rely on supposition of what might be in them"). Obviously, because *e*Plus cannot know what is contained in heretofore confidential files, it can only suppose what may be contained. Even so, it is readily apparent that the defendants' patent prosecution files are likely to contain highly relevant information concerning the technology at issue in this case.

There are a myriad number of ways in which Lawson's patent application and prosecution documents could contain critical evidence in this case, easily meeting the generous standard of Rule 26. Thus, recognizing that a defendant's patent prosecution documents are highly relevant in a patent infringement action, other federal district courts have compelled defendants to produce such discovery. *CSAV, Inc. v. Peerless Indus., Inc.,* 2007 U.S. Dist. LEXIS 7841, **3-6 (D. Minn. Feb. 2, 2007); *Mushroom Assocs. v. Monterey Mushrooms, Inc.,* 25 U.S.P.Q.2d 1364, 1992 WL 442898 (N.D. Cal. 1992) (compelling discovery of *defendants'* patent applications and related documents); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 212-13 (N.D. Ind. 1990) (compelling patent infringement *defendant* to produce documents relating to its patent applications, including drafts and correspondence); *Paper-Converting Machine Co. v. Magna Graphics Corp.,* 207 U.S.P.Q. 1136, 1980 WL 30340 (E.D. Wis. 1980) (ordering production of *defendant's* patent application and prosecution history documents); *Carrier Mfg. Co. v. Rex Chainbelt, Inc.,* 281 F. Supp. 717, 718-19 (E.D. Wis. 1968) (compelling discovery regarding *defendant's* patent applications).

First, broadly, *e*Plus's Document Request No. 31 seeks Lawson's patent applications relating to the same or similar technology. This fact is important for several reasons. In answering and objecting to *e*Plus's discovery, and in attacking the validity of the patents in suit, Lawson has claimed not to understand certain basic claim terms of the patents in suit. For example, in objecting to *e*Plus's written discovery requests, Lawson objected to definitions using terms such as "data regarding an item or items," "sources," "product catalogs," "requisition," "purchase order," and other terms directed to Lawson-specific products, even though such terms and product names are used in Lawson's own marketing materials (and likely its patent applications relating to its commercial products). *See, e.g.,* Exhibit J, Lawson's Responses to

First Set of Document Requests at 5. *e*Plus is entitled to discover whether Lawson's position is undermined by its use or discussion of similar or identical terms in its own patent applications.

Second, Lawson's patent applications are relevant to the issue of who is the real inventor of the patented technology, *i.e.*, priority of invention. *See, e.g., Carrier Mfg. Co.*, 281 F. Supp. at 718-19 (compelling discovery regarding defendant's patent application). Lawson has alleged that the patents in suit are invalid as anticipated by or obvious from the prior art, and in its interrogatory answers it referred – without explanation – to "Lawson Software" as constituting prior art. Exhibit A at 14. Thus, timing is an issue in this case.

Third, Lawson's notice of the patents in suit is relevant. If Lawson's patent applications, communications to and from the PTO Examiner, or other related documents in their patent application files identify *e*Plus's patents, that would indicate an awareness of the patents in suit and, thus, perhaps constitute further evidence of willful infringement of those patents by Lawson. *See, e.g., Mushroom Assocs.*, 25 U.S.P.Q.2d at 1306-07 (granting patentee's request that the accused infringer produce the prosecution histories of all its patent applications relating to the technology at issue, because of possible relevance to notice and willful infringement). Such notice would also be relevant to the damages period and possibly to liability for indirect infringement (*i.e.*, inducement of infringement). *See* 35 U.S.C. § 287 (statutory limit on damages).

Fourth, Lawson's citation of the patents-in-suit to the PTO, and any comments or discussion it made about the patents during the prosecution of its own patent applications, may be relevant to invalidity issues. Inventors often comment about the content of other prior patents, and the extent to which their inventions address long-felt need or unsolved problems and the like. Moreover, prosecuting patent attorneys often make comments on, and certainly

15

consider, other prior art in the background sections of a patent application, which again would be

relevant to the validity or invalidity of the patents in suit. As explained by the Court in the

*Golden Valley* case, where the question of the validity of the plaintiff's patents was placed at

issue, the relevancy of *the defendant's* draft patent applications and other related documents was

apparent. *Golden Valley*, 132 F.R.D. at 212. As the Court explained in that case, illustrating just

a few examples of the potential relevance of such documents:

> the "secondary considerations" of a prior art determination
> enhance the possibility of relevance; specifically, prior attempts
> and failure of others in attempting to accomplish the inventive
> results, fulfillment of long felt needs in the art, the commercial
> success of the claimed invention and copying of others.

* * *

> More to the point, the documents could establish the level of skill
> established by [the defendant] at the time the purported invention
> was made. Further, the scope and content of the prior art cited by
> [the defendant], or known to it, would be relevant. Of course, the
> prior attempts and failures of others, including [the defendant], to
> develop an invention to meet a long felt need in the industry would
> also be relevant.

*Id.* at 212-13; *accord Paper Converting Machine Co.*, 207 U.S.P.Q. at 1136 (defendant's patent

applications were discoverable because they contained description of the allegedly infringing

machine and statement of the scope and content of the prior art); *PCR Golf Ball Co. v. Chemold*

*Corp.*, 176 U.S.P.Q. 178, 179-80, 1972 WL 17672 (E.D.N.Y. 1972) (defendant's patent

application documents relevant because defendant put at issue the validity of plaintiff's patent).

Fifth, with respect to Lawson's present allegation of the invalidity of the patents in suit,

its patent applications and related documents are again relevant to such issues. *e*Plus should be

entitled to discover whether Lawson revealed to the PTO in similar patent applications the prior

art presently asserted by Lawson as invalidating the patents-in-suit. Lawson's failure to reveal

this prior art to the PTO would undermine its current litigation position. Also, if Lawson did

16

reveal any of this prior art to the PTO, any comments it made characterizing the scope of such prior art, and any attempts to distinguish that prior art from its inventions, would be highly relevant.

*e*Plus should therefore be allowed to review Lawson's patent applications and related documents to determine whether it disclosed to the PTO or even considered the prior art references that it now maintains invalidate *e*Plus's allegedly "obvious" patents and, if so, what was said about them. Moreover, any discussion by Lawson in such documents about the prior attempts and failure of others, fulfillment of long-felt needs by its "inventions," and the commercial success of its "inventions," are likewise all relevant to its invalidity allegations concerning the patents-in-suit.

Sixth, *e*Plus should be entitled to compare the disclosures of Lawson's patent applications and related documents to the claims of the patents-in-suit in order to prove infringement. If Lawson's patent applications cover commercial embodiments of its systems — which is not unlikely — a comparison of the technology disclosed in its patent applications to the claims of the patents in suit naturally is relevant to the question of infringement. *See, e.g., CSAV,* 2007 U.S. Dist. LEXIS at \*\*4-5 ("the [defendant's] patent applications may be relevant to the issue of infringement, as defendant's description of its [covered commercial product] could demonstrate elements in common with the '101 patent products" and further stating that the "applications may contain descriptions of its own devices that show elements in common with the patents-in-suit"); *Paper Converting Machine Co.,* 207 U.S.P.Q. at 1136-37 ("[t]here is no question that the patent application is reasonably calculated to lead to the discovery of admissible evidence since it contains a full description of the allegedly infringing machine and a statement of the prior art").

17

Moreover, one of the statutory requirements in order to obtain a patent is that it contain a description of the best mode for practicing, or making, the invention. *See* 35 U.S.C. § 112, ¶ 1. It is likely that Lawson's commercial operations would employ such best mode (as should have been described in the patent application), rather than an inferior one.

Seventh, the determination of a reasonable royalty as the measure of damages in this case might involve analysis of the extent to which the commercial success of Lawson's accused methods and systems is attributable to *e*Plus's patented invention, as opposed to other innovations for which Lawson has sought patent protection. Thus, these documents are likewise relevant to damages issues.

Eighth, basic principles of fairness demand that Lawson produce documents pertaining to its patent applications, because Lawson asked *e*Plus to produce the same types of documents regarding *e*Plus's patent applications. *e*Plus has produced not only the patents-in-suit, but also the prosecution history files for those patents, related reexamination files, and related foreign patents and prosecution history files. Lawson cannot now claim in good faith that such documents are overbroad or irrelevant to the issues in the case.

Ninth, Lawson's patent prosecution activities are relevant to its defense of unenforceability of the patents. It appears that this highly questionable defense is based on a dubious claim that the inventors improperly omitted as inventors a group of IBM software contractors that *e*Plus's predecessor employed to help build a commercial system embodying the patented inventions. *See, e.g.,* Dkt. No. 25. Presumably, the defendants will at some point proffer expert testimony on this defense and argument from their counsel contending that the inventors should have named the IBM software programmers as inventors, and that *e*Plus is

18

barred from enforcing the patents in suit.[10]  Of course, "he who seeks equity must do equity," and therefore *e*Plus is entitled to discovery of Lawson's similar prosecution activities with respect to its patent applications, including its own practice in whether to name third party programmers as inventors, for purposes of estoppel and impeachment evidence, if nothing else. Indeed, this is classic impeachment evidence.  Lawson, and its experts and counsel, should not be heard to contend without impeachment that *e*Plus's inventors' applications were in any way improper, inequitable, or unlawful, when Lawson and its counsel undoubtedly take the very same approach in applying for patents pertaining to the same field of technology.

Accordingly, *e*Plus asks that the Court compel Lawson to produce its patent applications and prosecution documents.

### F.    Lawson Has Not Produced E-Mail Correspondence

Although *e*Plus acknowledges that Lawson has begun producing responsive documents, to date it has not produced more than a smattering of responsive e-mail correspondence.  Lawson does not dispute that e-mail correspondence is relevant and responsive to many of *e*Plus's document requests.  Among many other things, Lawson's e-mail correspondence could demonstrate its prior awareness of *e*Plus's patent rights, which would be relevant to willfulness and indirect infringement.  For example, *e*Plus's prior enforcement actions in this Court against SAP and Ariba, Inc. were widely known and followed within the electronic sourcing and procurement industry.  It is likely that e-mail correspondence could reveal Lawson's awareness of these actions involving the patents-in-suit.  *e*Plus respectfully requests that the Court compel Lawson to produce responsive e-mail correspondence immediately.

---

[10]  Such a contention fails to survive even the most superficial scrutiny.  For example, the inventors conspicuously and repeatedly disclosed IBM's TV-2 software as commercially available software that could be used to make and use the claimed inventions.  Such disclosure is utterly inconsistent with any intent to deceive the PTO.

## G.   Lawson Has Not Produced Documents Pertaining To Competition With *e*Plus

Through its own investigation, *e*Plus is aware that Lawson has competed with *e*Plus for electronic sourcing and procurement contracts with at least the following customers:  Gannett, Novant, Indalex, Hanesbrands, Wolters Kluwer, and XM Radio.  However, although *e*Plus has requested that Lawson produce documents relating to this competition, to date, Lawson has not produced documents such as its communications with these customers and potential customers, the customers' Requests for Proposals (RFPs) or Requests for Quotes (RFQs) and Lawson's responses, Statements of Work (SOWs), contracts, license agreements, and the like.  *See, e.g.,* Exhibit J, Request Nos. 1, 2, 26, 47, 63.  These documents are likely to be relevant to, among other things, damages and *e*Plus's entitlement to permanent injunctive relief.  In addition, Lawson's communications with these customers and potential customers are likely to include representations about the functionality of its accused products.  Accordingly, such documents are highly relevant and discoverable, and the Court should compel Lawson to produce them immediately.[11]

## IV.   CONCLUSION

For the foregoing reasons, *e*Plus asks that the Court compel Lawson to provide the requested discovery immediately and in any event within five days of the Court's ruling on the motion.  Depending on when this motion is resolved and such relief is granted, *e*Plus also requests that the Court order that *e*Plus shall be permitted to retake – at Lawson's expense -- the

---

[11] In addition, most of Lawson's responses state that, subject to and without waving its objections, it will produce responsive, non-privileged, and non-objectionable documents located after a reasonable search, to the extent such documents exist.  Unfortunately, these responses do not indicate whether and to what extent Lawson is withholding documents based on its objections.  *e*Plus asks that the Court compel Lawson to either supplement its responses or provide by letter an explanation of the categories of documents it is withholding from its production based on its objections.

depositions of any witnesses that are necessitated by the belated production of documents and interrogatory answers.  Finally, *e*Plus asks that it be granted leave to supplement its initial infringement and damages expert reports as necessary to reflect late-provided discovery.

Respectfully submitted,

Date:  September 24, 2009

_____/s/_____

Gregory N. Stillman (VSB #14308)
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA  23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Lana Shiferman *(admitted pro hac vice)*
Natasha N. Aljalian *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place, 53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
lshiferman@goodwinprocter.com
naljalian@goodwinprocter.com

21

Andrew N. Satein *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
The New York Times Bldg.
620 Eighth Avenue
New York, NY  10018-1405
Telephone:  (212) 459-7032
Facsimile:  (212) 355-3333
astein@goodwinprocter.com

Attorneys for Plaintiff *e*Plus, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2009, I will electronically file Plaintiff ePlus, Inc.'s Brief in Support of Motion to Compel Discovery from Defendant Lawson Software, Inc., with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3289
Facsimile: (757) 624-3169
senoona@kaufcan.com
**Counsel for Defendant Lawson Software, Inc.**

Daniel W. McDonald, Esq. *(admitted pro hac vice)*
William D. Schultz *(admitted pro hac vice)*
Rachel Clark Hughey *(admitted pro hac vice)*
Andrew J. Lagatta *(admitted pro hac vice)*
Joshua P. Graham *(admitted pro hac vice)*
Merchant & Gould, P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN  55402-2215
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081
dmcdonald@merchantgould.com
**Counsel for Defendant Lawson Software, Inc.**


_____/s/_____
Brent L. VanNorman  (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA 23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
bvannorman@hunton.com
Counsel for Plaintiff, ePlus, Inc.

23