# TAB 5



Page 1

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
**(Cite as: 1992 WL 442898 (N.D.Cal.))**

**H**

United States District Court,
N.D. California.

MUSHROOM ASSOCIATES, et al., Plaintiffs,
v.
MONTEREY MUSHROOMS, INC., et al., Defendants.
No. C-91-1092 BAC (PJH).

Aug. 21, 1992.

HAMILTON

*1 The plaintiffs' motions to compel discovery were heard on July 31, 1992. David J. Brezner and Laura L. Kulhanjian appeared for the plaintiffs. Louis M. Lupin appeared for the defendants. Having heard the parties I arguments and read their briefs, this court orders as follows.

I. INTRODUCTION.

The plaintiffs allege that the defendants have infringed their patent. The patent at issue, U.S. Patent No. 4,407,832 ("the 1832 patent") covers technology used in the processing of mushrooms.

As part of discovery for their case, the plaintiffs propounded requests for production of documents to defendant Max Beauvais ("Beauvais") that included Request for Production No. 8 of the plaintiffs' second set of requests for production seeking prosecution histories of all patent applications relating to the processing of mushrooms filed by Beauvais since 1980. In addition, Request No. 1 of the plaintiffs' third set of requests for production of documents requires the production of prosecution histories of patent applications filed by Beauvais. Beauvais has refused to produce such documents.

The plaintiffs also propounded a fourth and fifth set of requests for production. The defendants have not objected to the substance of the requests but they have objected that the requests were not timely served because they call for a response beyond the discovery cut-off date imposed by Judge Caulfield.

The plaintiffs seek an order compelling the defendants to respond to these requests for production.

II. DISCOVERY OF PROSECUTION HISTORIES.

The plaintiffs' Request for Production No. 8 of the plaintiffs' second request for production of documents requests Beauvais to produce:

All patent applications and corresponding prosecution histories RELATING to the processing of mushrooms filed since 1980 which list Mr. Beauvais as either the sole inventor or as a joint inventor.

(Kulhanjian Declaration, May 15, 1992, Ex. F.)

The plaintiffs explain in their moving papers that "prosecution histories" refers to the communications between an inventor and the patent examiner. The patent examiner reviews the patent application for compliance with the patent laws. The plaintiffs argue that such prosecution histories are relevant to their claim of willful infringement of the 1832 patent in that the defendants had notice of the 1832 patent as a result of information supplied by the patent examiner.

The plaintiffs move to compel production of documents as a result of third party discovery that showed Beauvais had filed a patent application ("the '110 application") relating to mushroom processing. The '110 application was filed in July of 1982. The prosecution history of the '110 application refers specifically to the 1832 patent. (Kulhanjian Declaration, May 15, 1992, Ex. I.) Yet, in his response to Request No. 8, Beauvais did not include documents pertaining to the '110 application. To ensure compliance with Request No. 8, the plaintiffs ask that Beauvais be compelled to produce the prosecution history of the '110 application, and any other patents that Beauvais has filed since 1980 that pertain to mushroom processing that the plaintiffs have not discovered.

*2 Request No. 1 of the plaintiffs' third request for production of documents requests Beauvais to:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
(Cite as: 1992 WL 442898 (N.D.Cal.))

Produce all DOCUMENTS identified or referred to in response to Plaintiff Is Second Set of Interrogatories to Max Beauvais.

(Kulhanjian Declaration, May 15, 1992, Ex. P.)

The plaintiffs' second set of interrogatories asks for the facts supporting the defendants' answer to the second amended complaint. Because the second amended complaint alleges willful infringement, the plaintiffs argue that notice of the 1832 patent is an issue in this litigation, in turn making the '110 application a document referred to by the facts supporting the defendants' answer to the allegation of willful infringement. consequently, the plaintiffs argue that the '110 application falls within those documents requested by Request No. 1. To ensure full compliance with Request No. 1, the plaintiffs move to compel production of the entire '110 patent application, or to compel the defendants to give their permission to the plaintiffs to obtain the file from the U.S. Patent and Trademark office, or to compel the defendants to admit that Beauvais had knowledge of the 1832 patent as early as February 13, 1984.

With respect to patent applications in general, the defendants argue that prosecution histories other than that of the 1832 patent simply are not at issue in this litigation and should not be discoverable.

The defendants cite *Key Technology, Inc. v. Simco/Ramic Corp.,* 137 F.R.D. 322 (D.Or.1991) to support their argument that discovery should not be compelled with respect to patent applications that are not the subject of the underlying litigation. In that case, the district court refused discovery of abandoned patent applications on the basis that any admissions made in the requested documents would be irrelevant to Simco/Ramic's defense of invalidity. *Id.* at 324-325. However, the court noted that such discovery was relevant to the issue of willful infringement and would allow discovery during the damages portion of the bifurcated trial. Thus, *Key Technology* does not create an absolute bar to discovery of patent applications which are not the subject of the underlying litigation.

Turning to the '110 application, the plaintiffs have demonstrated a sufficient connection to the 1832 patent to justify discovery. The fact that one portion of the '110 prosecution history refers to the 1832 patent makes the '110 prosecution history relevant to this litigation.

With respect to all other patent applications pertaining to mushroom processing, assuming any exist, this court finds that the plaintiffs' request satisfies the broad definition of relevance established in the federal rules. The fact that the '110 application makes reference to the 1832 patent suggests that other patent applications concerning the processing of mushrooms might also refer to the 1832 patent. Furthermore, the discovery is limited to patent applications pertaining to mushroom processing, the same subject of the 1832 patent. Because such discovery may lead to admissible evidence concerning the issue of willful infringement, Beauvais must comply with the requests for production or give the U.S. Patent and Trademark Office authorization allowing the plaintiffs to view and copy such files.

*3 The defendants further argue that with respect to the '110 application, the plaintiffs already have the information they need as a result of the third party discovery. The plaintiffs clearly only have a portion of the '110 prosecution history. Access to the complete prosecution history is necessary to determine if any other references to the 1832 patent occurred.

As to compelling an admission by the defendants that they had knowledge of the 1832 patent as early as 1984, the defendants argue that they should not be compelled to admit notice of the 1832 patent when the prosecution history is derived largely from information supplied by the patent examiner, not admissions made by Beauvais. This court agrees with the defendants and will restrict its order to compelling production of documents by the defendants.

At the hearing, the defendants suggested that they would obtain the prosecution history of the '110 application from the patent examiner and turn over any portions that refer to the 1832 patent. This court rejects the defendants' offer to filter the prosecution history of the '110 application for all references to the 1832 patent. The prosecution history of the '110 patent is sufficiently relevant such that the plaintiffs should have access to the entire file, free of the defendants' censure. Of course, such information will be subject to the protective order already in effect in this case.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
(Cite as: 1992 WL 442898 (N.D.Cal.))

III. TIMELINESS OF PLAINTIFFS FOURTH AND FIFTH REQUESTS FOR PRODUCTION OF DOCUMENTS.

Pursuant to Local Rule 230-6, Judge Caulfield imposed a discovery cut-off date of Sunday, May 3, 1992. Local Rule 230-6 requires service of discovery requests so that responses will be due before the cut-off date. Should responses be due after the cut-off date, then those discovery requests, 11 ... will not be enforceable except by order of the court for good cause shown.11 Local Rule 230-6.

A. *Fourth request for production of documents,*

The plaintiffs served their fourth request for production of documents by fax and mail on march 31, 1992.

The plaintiffs argue that service by fax satisfies the service requirements of Fed.R.Civ.P. 5(b) which allows for service by leaving a copy in a conspicuous place in the attorney's office. Assuming service by fax is appropriate, then responses to the fourth request would be due by Thursday, April 30, 1992, prior to the discovery cut-off date.

Service by mail allows the defendants three additional days to respond. Fed.R.Civ.P. 6(e). Mail service would therefore require a response by Sunday, May 3, 1992, the discovery cut-off date set by Judge Caulfield. The defendants argue that when a response due 30 days after service lands on a Sunday, then the response will be due on the following Monday. Fed.R.Civ.P. 6(a). This would make the defendants' response due on Monday, May 4, 1992, one day after the discovery cut-off. Consequently, the defendants argue that their response was due after the discovery cut-off and therefore no response was required.

*4 The defendants further argue that Fed.R.Civ.P. 6(a) applies only to computations of time periods, not to deadlines fixed by the court. The plaintiffs, on the other hand, argue that Fed.R.Civ.P. 6(a) should apply equally to fixed deadlines which fall on the weekend as well as computations of time periods. If so, the Sunday discovery cut-off date in this case would be deemed to fall on Monday, May 4, 1992, making the plaintiffs' fourth request for production timely.

At the outset, this court holds that service by fax is not sufficient to satisfy Fed.R.Civ.P. 5(b). *Salley v. Board of Governors, University of N.C.,* 136 F.R.D. 417, 420 (M.D.N.C.1991). In light of the issues raised by service by fax as discussed in *Salley,* it is more appropriate for the Advisory Committee on the Federal Rules to outline the use of facsimile transmissions in the context of modern litigation. Until that time, and in the absence of a stipulation by the parties, this court will not allow service by fax to satisfy Fed.R.Civ.P. 5(b).

Pursuant to Fed.R.Civ.P. 6(a) and (b), this court finds that the defendants' responses to the fourth request for production of documents were not due until May 4, 1992. However, the plaintiffs have persuasively argued that Fed.R.Civ.P. 6(a) should also be applied to a court imposed deadline falling on a weekend. In support of their position, the plaintiffs cite *Byrd v. City of Fayetteville,* 110 F.R.D. 71, 72 (E.D.N.C.1986), aff'd., 819 F.2d 1137 (4th Cir.1987), which held that Fed.R.Civ.P. 6(a) applied to a motions deadline imposed by the court that fell on a Sunday. Additionally, there is no prejudice to the defendants who had more than 30 actual days to respond to the request. Moreover, nothing in the record suggests that Judge Caulfield specifically intended that the deadline be Sunday as opposed to a weekday. Consequently, the discovery cut-off date imposed by Judge Caulfield should be treated as falling on Monday, May 4, 1992. Because the defendants' responses were due on the discovery cut-off date, the plaintiffs, request for production was timely served. The defendants must respond to the plaintiffs' fourth request for production of documents.

B. *Fifth request for production of documents,*

The plaintiffs personally served their fifth request for production of documents on April 2, 1992, making the defendants response due on May 2, 1992, a Saturday. Pursuant to Fed.R.Civ.P. 6(a), their response would be due Monday, May 4, 1992. As previously argued by the defendants, this would require a response beyond the discovery cut-off of May 3, 1992 imposed by Judge Caulfield.

As decided above, the discovery cut-off in this case should be deemed as falling on Monday, May 4, 1992. The defendants' responses were due on the day of discovery cut-off, making the request for produc-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
(Cite as: 1992 WL 442898 (N.D.Cal.))

tion timely. Consequently, the defendants must respond to the plaintiffs' fifth request for production of documents.

IV. CONCLUSION.

*5 Based on the foregoing, the plaintiffs, notion to compel production of documents satisfying Request for Production No. 8 of their second set of requests for production and Request for Production No. I of their third set of requests for production is GRANTED. Beauvais must produce the prosecution history of the I 110 application and the prosecution histories of any other patent applications pertaining to the processing of mushrooms filed since 1980. In the alternative, Beauvais may give authorization to the U.S. Patent and Trademark Office allowing the plaintiffs to view and copy the relevant prosecution histories. The plaintiffs' motion to compel production of documents pertaining to their fourth and fifth sets of requests for production is GRANTED. Production must occur within 30 days of this order.

IT IS SO ORDERED.

ORDER RE: DEFENDANTS' MOTIONS TO COMPEL DISCOVERY

The defendants' motions to compel discovery were heard on July 31, 1992. David J. Brezner and Laura L. Kulhanjian appeared for the plaintiffs. Louis M. Lupin appeared for the defendants. Having heard the parties' arguments and read their briefs, this court orders as follows.

I. INTRODUCTION.

The plaintiffs' allege that the defendants have infringed their patent. The patent at issue, U.S. Patent No. 4,407,832 ("the '832 patent") covers technology used in the processing of mushrooms.

On May 13, 1992, the defendants filed their motions to compel. Originally scheduled for June 26, 1992, the hearing was postponed at the parties' request. At the outset, their motions covered three general areas of discovery. Through meet and confer sessions occurring after the filing of the motions, the parties were able to narrow the scope of the motions. At this point, three specific disputes are before this court: 1) Whether the plaintiffs should be required to give a more detailed definition of the term, "heat stable,", further requiring the plaintiffs to provide supplemental answers to Interrogatory Nos. 8, 12, 14, and 18; 2) To what extent should the defendants be allowed discovery of documents to which Andrew Ferguson ("Ferguson") had access; and 3) To what extent have the plaintiffs waived the attorney-client privilege with respect to foreign patent prosecutions and the prosecution of the '832 patent by their response to the defendants' defense of inequitable conduct.

II. DISCUSSION.

A. *Supplemental answers to interrogatories.*

1. *Interrogatory Nos. 8 and 14.*

Defendants' Interrogatory Nos. 8 and 14 rely on a definition of the term "heat stable." The plaintiffs' initial response to these interrogatories essentially directed the defendants to the '832 patent. In the briefing for this motion, the plaintiffs further explained the meaning of "heat stable" as it applies to this litigation. The discussion explains that "heat stable" means that certain particulates do not coagulate during the heat processing of mushrooms. During the hearing on this motion, the plaintiffs agreed to stipulate to their discussion of "heat stable" contained in their opposition as a further definition of that term.

This court is convinced that the discussion in the plaintiffs' opposition provides a sufficient definition of "heat stable," thereby satisfying the inquiries posed by Interrogatory Nos. 8 and 14. Based on the discussion stipulated to by the plaintiffs, no further answer to these interrogatories is required.

2. *Interrogatory No. 12.*

Interrogatory No. 12 asks the plaintiffs to identify the properties of AVICEL CL-611 referred to at column 9, lines 9-14 of the '832 patent. The plaintiffs' initial response referred the defendants to the '832 patent and to other unidentified industry sources. Unsatisfied with this response, the defendants seek a supplementary answer which specifically identifies those properties, particularly in light of the definition of "heat stable." The plaintiffs essentially rest on their contention that such information is available from

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
(Cite as: 1992 WL 442898 (N.D.Cal.))

industry sources, specifically from FMC, the manufacturer of the AVICEL CL-611.

This court finds that the plaintiffs must provide a further answer to this interrogatory. The answer should list each property of AVICEL CL-611 implicit in the discussion made by the '832 patent, even if that means simply extracting the information directly from the FMC product description. By doing this, the defendants will not be required to guess exactly what the plaintiffs were referring to in the '832 patent. Such certainty is the goal of liberal discovery established by the federal rules.

3. *Interrogatory No. 18.*

Interrogatory No. 18 requests all facts upon which the plaintiffs' counsel told Richard L. Neeley, counsel for the defendants, that rice starch used by the defendants accomplished the same results by the same means as those discussed in the '832 patent. The plaintiffs initially objected to this interrogatory on the grounds that it sought information protected by the attorney-client privilege and the work product doctrine. However, in their opposition to this motion, the plaintiffs provided further explanation of the statement made by their counsel to Mr. Neeley.

This court finds that the discussion in their opposition is a sufficient further answer to this interrogatory. Consequently, the plaintiffs must make a further answer to Interrogatory No. 18 that incorporates the discussion found in its opposition dated July 17, 1992 at p.9. The plaintiffs must also make a further investigation into the facts of this assertion and supplement their answer accordingly as they agreed to do in their opposition. (Plaintiffs' Opposition, July 17, 1992, p.9:20-22.)

B. *Ferguson discovery.*

Ferguson is a co-inventor of the '832 patent. He has also been designated as an expert for purposes of testimony in this litigation.

The defendants move to compel production of all documents to which Ferguson has had access, regardless of whether such documents were used in the formulation of his expert testimony.[FN1] In essence, the defendants argue that all documents pertaining to the '832 patent to which Ferguson has had access during the life of the patent are part of any testimony he would give, even if such documents were not actually reviewed for the purpose of his testimony. At the hearing, the plaintiffs agreed to produce all documents upon which Ferguson will rely for his testimony as well as all documents that he considered but will not rely upon for his testimony. The defendants object to this production because they are concerned that the word "considered" is open to abuse.

> FN1. Technically, under the provisions of Fed. R. Civ. P. 26(b)(4)(A), the defendants would have to obtain the permission of the court to seek any expert discovery beyond interrogatories. However, the plaintiffs have apparently consented to allowing some document production, leaving the issue of the scope of such discovery.

*Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.* 130 F.R.D. 116 [14 USPQ2d 1924] (N.D.Cal. 1990), cited by the defendants, is not at odds with the plaintiffs' position. In that case, the court held that an expert could be *deposed* as to facts and opinions developed in preparation for a case without seeking permission from the court pursuant to Fed. R. Civ. P. 26(b)(4)(A)(ii). *Id.* at 125. That court did not hold that a blanket waiver occurs as to all privileged documents that an employee doubling as an expert witness has had access to during the course of his employment. *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal. 1991) is also consistent with the plaintiffs' position. In that case, the court held that a party could discover protected communications made by an attorney to an expert witness. The court did not address the issue of an employee receiving a privileged communication before being designated an expert witness. It confined its analysis to communications made in anticipation of litigation.

[3] This court is persuaded by the position taken by the plaintiffs. The defendants shall have access to all documents considered by Ferguson, whether rejected or relied upon. "Considered" applies to all documents Ferguson reviewed in preparation for his expert testimony. However, privileged documents that Ferguson has had access to during the life of the '832 patent, but not considered by him as a basis for his expert testimony, shall remain privileged, and not discoverable. In sum, this court finds that the naming of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
(Cite as: 1992 WL 442898 (N.D.Cal.))

an employee as an expert does not result in a blanket waiver of all privilege with respect to every document that the employee has had access to during the course of his employment. The waiver only applies to those documents which the employee considered when formulating his expert testimony.

C. *Discovery of patent prosecutions.*

As part of their defense to this infringement action, the defendants assert that the '832 patent is unenforceable due to the plaintiffs' alleged inequitable conduct. Specifically, the defendants allege that the prosecution of a Spanish patent prior to the '832 patent without notification to the U.S. Patent Office constitutes the withholding of material information. In their opposition to the defendants' motion for summary judgment on this issue, the plaintiffs submitted declarations by Ferguson and William A. Wright, the attorney who conducted the prosecution of the '832 and related patents, denying knowledge of the materiality of the Spanish patent or any intent to deceive the U.S. Patent and Trademark Office.

The defendants argue that the submission of these declarations injects the particular person's state of mind into the litigation, effectively waiving all privileges pertaining to prosecution histories of the '832 patent and all related foreign patent prosecutions. The plaintiffs acknowledge the waiver of some portion of the attorney-client privilege, but dispute the scope of such a waiver. Their position is that by submitting the two declarations, they have only waived the attorney-client privilege as to three issues: 1) communications relevant to the issuance of the Spanish patent; 2) the alleged materiality of the Spanish patent to the United States prosecution; and 3) the alleged intent on the part of either the inventors or attorney Wright. (Plaintiffs' Opposition, July 17, 1992, p.4:23-25.) At the hearing on this motion, the plaintiffs agreed to produce their complete Spanish prosecution file. However, they maintained their position that there has not been a complete waiver of the attorney-client privilege with respect to documents pertaining to the prosecution of the '832 patent or other foreign patent applications.

The parties cite no direct authority that would guide this court in its determination of the scope of the waiver in this context. Consequently, this court must extract principles from other cases that will lead it to an equitable resolution of this issue.

When a party voluntarily waives the attorney-client privilege, the waiver extends to all communications pertaining to the subject matter of the communication. *In Re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir. 1982). In this case, the subject matter of the waiver is the intent of the inventors and Mr. Wright with respect to their representations before the U.S. Patent and Trademark Office and whether they knew that the Spanish patent was material to the '832 patent application.

[4] This court finds that communications initiated during the prosecution of the '832 patent are relevant to these two issues. Rarely will there be direct evidence of a party's intent to deceive or mislead the U.S. Patent and Trademark Office. *Halliburton Co. v. Schlumberger Technology Corp.,* 925 F.2d 1435, 1442 [17 USPQ2d 1834] (Fed. Cir. 1991). Such intent must frequently be determined from the facts and circumstances of the patent prosecution. Furthermore, in determining the materiality of prior art, one must know the scope of the patent being prosecuted. Consequently, all communications pertaining to the '832 patent prosecution fall within the subject matter of the inventors' and Mr. Wright's intent as well as their knowledge of the materiality of the Spanish patent to the '832 patent.

With respect to other foreign patent prosecutions, this court finds that the plaintiffs have also waived their attorney-client privilege. Such prosecutions fall within the subject matter of the materiality of the Spanish patent to the '832 patent due to the foreign patents' similarity to the Spanish patent. The plaintiffs must produce any documents previously withheld as privileged that pertain to the prosecution of foreign patents similar to the Spanish patent.

III. CONCLUSION.

Based on the foregoing, the defendants' motion to compel further answers to interrogatories is GRANTED. The plaintiffs must stipulate to contents of their opposition brief as being responsive to enumerated interrogatories. The plaintiffs must also supplement those interrogatories affected by the new definition of "heat stable."

The defendants' motion to compel production of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304
**(Cite as: 1992 WL 442898 (N.D.Cal.))**

documents relating to Ferguson's expert testimony is DENIED. The plaintiffs need only produce those documents that Ferguson considered.

Finally, the defendants' motion to compel production of previously withheld documents is GRANTED. The plaintiffs must produce all attorney-client communications pertaining to the Spanish patent prosecution, the '832 patent prosecution, and all other foreign patent prosecutions based on the same technology as the Spanish patent.

Compliance with this order must occur within 30 days.

IT IS SO ORDERED.

N.D.Cal.,1992.
Mushroom Associates v. Monterey Mushrooms, Inc.
Not Reported in F.R.D., 1992 WL 442898 (N.D.Cal.), 25 U.S.P.Q.2d 1304

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.