IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09cv620(REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF ePLUS INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY PROCEEDINGS**

**I.      INTRODUCTION**

None of Defendant Lawson Software, Inc.'s ("Lawson") purported "new facts" provide a compelling basis for this Court to stay this action. Rather, Lawson's supplemental brief is little more than a rehashing of the same arguments presented in its prior briefs on the same motion.

The most pertinent factual development since the parties briefed the stay motion weighs heavily *against* a stay. Specifically, both parties have actively pursued discovery, exchanging millions of pages of documents, serving and answering several sets of interrogatories, and taking numerous depositions. That both parties have heavily invested their resources in conducting this litigation provides all the more reason *not* to stay this action in order that these costs need not be duplicated more than half a dozen years from now, after the reexaminations are concluded.

None of the "developments" with respect to the PTO reexamination proceedings merit a stay. First, there have been *no* developments since the parties briefed the stay motion with respect to reexamination of U.S. Patent No. 6,023,683 ("the '683 Patent"), a proceeding which pertains to only 20 of the 45 claims of that Patent. The office action that Lawson discusses was issued in January 2009, four months before this litigation began. As evidence of the glacial pace

of that proceeding, *e*Plus inc. ("*e*Plus") is still awaiting the Examiner's filing of an Answer at the PTO's Board of Patent Appeals and Interferences.  The PTO has not finally rejected any claim of the '683 Patent, and all of those claims, including those under reexamination, are valid and enforceable.

Second, Lawson's filing of a new reexamination request for U.S. Patent No. 6,055,516 ("the '516 Patent") is of no weight.  This Court has already held that a stay motion is premature unless and until the PTO decides to grant the request for reexamination, which has not yet occurred.  Moreover, in this circumstance Lawson's request is also dilatory, because there is no reason why Lawson could not and should not have made this request at the same time as its request for reexamination of U.S. Patent No. 6,505,172 ("the '172 Patent") in July of this year.  Lawson freely admits that its two requests are based upon the same prior art and they present the same invalidity arguments.

Third, the PTO's grant of the request for reexamination of the '172 Patent is of little moment.  As was set forth in *e*Plus's opposition, this sort of office action is typical and simply begins a process of reexamination that will likely take *six to ten years* to finalize, a fact that Lawson has never disputed.  Unless and until that prolonged process is completed adverse to *e*Plus, all the claims of the patent remain valid and enforceable.

Finally, Lawson's arguments about the settlement agreements between *e*Plus and the other three defendants in this case do not merit a stay.  Lawson asks that the Court punish *e*Plus (and set a counterproductive precedent for future patent litigations) for having settled the case with respect to three defendants, arguing that these settlements mean that *e*Plus will not be harmed by a stay and will not be entitled to a permanent injunction against Lawson.  To the contrary, these settlements show the plain unfairness that would result if Lawson is permitted to

delay resolution of this case while continuing to infringe for *more than six years* after other competitors of *e*Plus and Lawson chose to do the right thing and respect patent rights. Contrary to Lawson's arguments, Federal Circuit law does not compel such a bizarre result; injunctive relief is available to patentees who have reached settlements with other parties.

Lawson fails to meet its burden to show "a clear case of hardship or inequity in being required to go forward," the standard for granting a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). This is not the "rare circumstance[]" in which a litigant should "be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.; see e*Plus Opp. (Dkt. No. 47) at 9-13. The only matter of consequence to the stay motion that has changed is that the parties have actively pursued discovery. A stay would still result in interminable delay for at least six and a half years on average, and will also increase the length, costs, and complexity of this dispute. Further, a stay would still be unfairly prejudicial to *e*Plus and its licensees, who will be forced to compete against Lawson's ongoing infringement during the duration of the stay. Accordingly, the Court should deny Lawson's motion.

## II. ARGUMENT
### A. Both Parties Have Expended Substantial Resources and Conducted Substantial Discovery, Rendering a Stay All the More Inappropriate.

Lawson ignores and/or misstates the most important development that has occurred since the parties briefed the defendants' stay motion. This case has been pending for six months. During that time, and in particular since the parties briefed the stay motion, **both parties** have actively pursued discovery. The parties have exchanged *millions* of pages of documents and conducted substantial e-discovery. *e*Plus has answered four sets of interrogatories (totaling eighteen interrogatories) from Lawson, and has served Lawson with interrogatories as well. Lawson has served *e*Plus with 140 document requests, and a Rule 30(b)(6) deposition notice

3

enumerating 37 topics. Numerous depositions have taken place, including Rule 30(b)(6) depositions of Lawson. Lawson has served subpoenas for documents and depositions of the inventors of the patents-in-suit, and has scheduled those depositions and a Rule 30(b)(6) deposition of *e*Plus for the first weeks of December.[1]

Lawson's claim that "there have been no expert reports or depositions," Lawson Supp. Br. at 6, is, at the very least, confusing. It is correct that the parties have not exchanged expert reports. The parties have, however, conducted a substantial number of fact depositions, albeit not of expert witnesses. If Lawson meant to suggest there have been no depositions of fact witnesses, that statement is demonstrably wrong.

*e*Plus conservatively estimates that it has already expended more than $1 million in resources conducting this litigation, and Lawson has likely expended a commensurate amount. Having expended such resources to date, to stay this litigation would surely result in extraordinary waste because much of this discovery would have to be duplicated in order to update the facts after the reexaminations are completed. For example, *e*Plus would likely have to redo much of the discovery relating to Lawson's accused products and services to address any pertinent changes Lawson makes over the six to ten years that the reexamination proceedings are pending. Thus, the delay and duplicative costs caused, and likewise the danger that evidence will be lost in the meantime, weighs against a stay. *See e*Plus Opp. at 28.

**B.    Lawson's Belated Filing of a Reexamination Request for the '516 Patent Provides No Basis for a Stay.**

---

[1] Thus, this situation is quite distinct from that present in the *NTP* case, where this Court stayed the litigation before the proceeding advanced to any significant degree. *See NTP, Inc. v. Palm, Inc.,* 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007). Moreover, while it is correct that the parties have not filed any "dispositive" motions, Lawson filed a motion asking this Court to adopt Judge Spencer's prior claim construction from the *SAP* litigation.

4

Lawson argues that it has recently filed a request for reexamination of the '516 Patent. However, to the extent Lawson relies upon this request as the basis for a stay, the motion is premature as a matter of law under this Court's established precedent. Lawson entirely ignores this Court's recent published decision in *Heinz Kettler Gmbh & Co., KG v. Indian Indus., Inc.*, 592 F. Supp.2d 880, 882 (E.D. Va. 2009) (Smith, D.J.), in which Judge Smith held that:

> *[t]he plain language of 35 U.S.C. § 318 renders [defendant's] motion premature.* That section indicates that a stay may be obtained *once an order for reexamination has been issued*, and does not seem to contemplate that a stay is appropriate before reexamination has been ordered. Because [defendant's] request for reexamination is still pending, a stay is premature. Put simply, at this juncture, a stay of this litigation is inappropriate.

*Id*. (emphasis added). Lawson simply ignores this decision and its clear application to this case.

Moreover, in this situation Lawson's request and reexamination filing are both premature *and* dilatory. This case has been pending for six months, and Lawson filed its first reexamination request for the '172 patent on July 10, 2009, more than four months ago. As Lawson concedes, its new '516 Patent reexamination request is based on *the very same prior art* as its prior request for the '172 Patent, and, according to Lawson, its request is based on the same invalidity arguments. Lawson Supp. Br. at 1, 4 ("based on the same prior art"); 3 ("given the close relationship between the '516, '172 and '683 patents, it is likely this request will also be granted."). The '516 Patent – a public document – surely has not changed over the past four and one-half months. Lawson offers no reason, and none is apparent, why it waited an additional four and one-half months, until the eve of an important Status Conference with the Court, to request reexamination of the '516 Patent.

      **C.    There Have Been No Developments in the '683 Reexamination that Impact Upon the Court's Consideration of the Stay Motion.**

There have been *no* new factual developments in the '683 Patent reexamination proceeding since the stay motion was briefed. The office action referred to in Lawson's supplemental brief was issued in *January* 2009.

The last activity in that proceeding occurred on May 6, 2009, when *e*Plus filed its appeal brief with the PTO's Board of Patent Appeals and Interferences. Since that time, ***more than six months*** have passed while *e*Plus has awaited the PTO Examiner's filing of an Answer.

This delay is simply more evidence of the lack of "special dispatch" in which these reexamination proceedings are conducted. When it takes more than six months for the filing of an Answer to an appeal brief, this Court should have no confidence that the reexamination proceeding will be concluded any time soon. Indeed, this proceeding has already consumed more than three years with no end in sight, and this is for an *ex parte* proceeding which is supposedly of likely shorter duration than the *inter partes* variety such as for the '172 Patent. *See e*Plus Opp., Declaration of Harry Manbeck, Esq. ("Manbeck Dec."), ¶ 14.

Lawson continues to suggest, in a highly misleading fashion, that the PTO has "finally reject[ed]" these claims of the '683 Patent. Lawson Supp. Br. at 1. As *e*Plus discussed at length in its opposition brief, there has not been any "final" PTO decision, and, in the event the ultimate decision is unfavorable to *e*Plus, it has the right to appeal to the Federal Circuit. *e*Plus Opp. at 8-9, 20-22; Manbeck Dec., ¶¶ 53-54, 59-61. Thus, the PTO Examiner's pending rejections are only interim findings, and, moreover, the claims remain valid and enforceable unless and until the entire process — including any appeals to the Federal Circuit — is resolved adverse to *e*Plus. *See e*Plus Opp. Br. at 21-22.[2]

---

[2] Indeed, in their reply brief Lawson disclaimed that "nowhere did Defendants suggest that the final rejection was a 'final PTO decision' or a 'final determination as to the validity of the patent claims.'" Def.'s Stay Reply at 2 (Dkt. No. 56).

    **D.    The Reexamination of the '172 Patent Does Not Provide a Compelling Basis for a Stay.**

As *e*Plus set forth in detail in its opposition brief, every realistic estimate of the duration of *inter partes* reexamination proceedings projects that it will be ***at least six and a half years and likely more*** before the proceedings Lawson has requested for the '172 Patent will be completed. *See e*Plus Opp. at 15-17; Manbeck Dec., ¶¶ 42-50; *see also Reexamining Inter Partes Reexamination,* Institute for Progress (April 2008) (estimating expected pendency of ***at least 6.5 years*** for appealed *inter partes* reexaminations). It appears to remain the case that, in the nearly ten-year history of the *inter partes* reexamination statute, ***not a single case*** has yet gone through the entire process of a complete *inter partes* reexamination at the PTO and an appeal to the Federal Circuit. *Id.*

Accordingly, Lawson effectively asks the Court for permission to continue to infringe while it runs out the clock, because the patents for which Lawson has requested reexamination will expire before the reexaminations are completed. Manbeck Dec., ¶¶ 57-58.[3] Moreover, it remains the case that the reexamination requests are not likely to lessen the costs of this dispute, nor are they likely to narrow the issues for trial. The reexaminations will not resolve issues of claim construction[4] or infringement, nor will they address the Section 101 ("*Bilksi*" or subject matter), Section 112 (indefiniteness, written specification), or many other defenses that Lawson has raised in this case, such as invalidity due to alleged incorrect or omitted inventors. *Ariba,*

---

[3] The '516 and '172 Patents expire in August 2014. Manbeck Dec., ¶ 10. Accordingly, a stay of this litigation for the duration of the three reexamination proceedings will likely result in at least the '172 and '516 Patents and possibly all three patents-in-suit expiring before the case is tried.

[4] As explained in *e*Plus's opposition, to the contrary, in a reexamination the PTO employs a different burden of proof and gives the claims their broadest possible construction (rendering them more susceptible to an invalidity challenge). *See e*Plus Opp. at 19.

*Inc. v. Emptoris, Inc.,* 2007 U.S. Dist. LEXIS 78857, *4 (E.D. Tex. Oct. 23, 2007) (stay would not preserve resources since PTO does not consider infringement or other grounds for invalidity).

Even as to invalidity defenses under Sections 102 or 103, at most there is a ***prospect*** that the reexaminations ***might*** resolve some issues as to ***some*** claims, but only for such defenses based upon patents or "printed publication" prior art, the sole forms of prior art that may form the basis for a reexamination. 35 U.S.C. § 301(a). For such reasons the Federal Circuit has held that evidence of interim decisions from parallel reexamination proceedings are irrelevant and confusing to a jury and should not be admitted at trial. *See, e.g., Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1342-43 (Fed. Cir. 2009) (affirming exclusion of evidence and stating "non-final re-examination determinations were of little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness.").

Likewise, and notwithstanding Lawson's new conditional offer to be bound by the *inter partes* estoppel provision with respect to the '683 and '516 Patent reexaminations, Lawson will undoubtedly contend that it will not be estopped from raising Section 102 and 103 defenses based on "newly discovered prior art," a significant loophole in the *inter partes* estoppel provision. *See* 35 U.S.C. § 315(c). Moreover, Lawson does not explain whether it will agree to be estopped with respect to the majority of the '683 Patent claims that are not undergoing reexamination at all.

### E. Lawson's Arguments With Respect to Settlements With the Other Defendants are Incorrect and Misrepresent the Law.

Lawson contends that *e*Plus's settlement with the other three defendants in this litigation demonstrate that *e*Plus will not be irreparably harmed by a stay. Lawson's logic is flawed, and its legal arguments are wrong.

8

Lawson's current argument is at odds with that which it presented in its stay motion, at which time it argued that one benefit of a stay is that it would encourage settlement. Def's. Br. at 11 (Dkt. No. 33). This Court did not stay the case, and three of the four defendants settled.[5]

Ironically, Lawson now argues that these very same settlements have disentitled *e*Plus from injunctive relief against Lawson and, for the same reasons, justify a stay. It is glaringly obvious that Lawson's argument, if adopted, would present an enormous disincentive for any patentee to settle a case. By settling and thereby granting a license, the patentee would forego (according to Lawson) any right to injunctive relief in future enforcement actions.

Contrary to Lawson's arguments, the Federal Circuit has held in similar circumstances that the granting of licenses does not preclude a patentee such as *e*Plus from injunctive relief. *See Acumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1327-29 (Fed. Cir. 2008) (licenses were simply one factor to be considered among many others and stating "[a]dding a new competitor (the adjudicated infringer) to the market may create an irreparable harm that the prior licenses did not."); *Abbott Labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) ("[w]e agree that the fact that a patentee has licensed others under its patents does not mean that unlicensed infringement must also be permitted while the patents are litigated."); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 701-04 (Fed. Cir. 2008) ("[w]e also agree that the Verizon license has little bearing on the effect of a compulsory license to a direct competitor ….").[6]

---

[5] As noted in *e*Plus's opposition, in the *NTP* matters that Lawson cites to, it appears that none of those cases have settled during the several years since the Court stayed them. *e*Plus Opp. at 26.

[6] As was set forth in *e*Plus's opposition, ePlus provides electronic procurement software and services that practice the patented inventions and compete with the accused products and services of Lawson. *See e*Plus Opp., Declaration of Kenneth G. Farber at ¶¶ 3-12.

9

Accordingly, Lawson's arguments with respect to the settlements are factually and legally flawed, and would, if adopted, create enormous disincentives for any patentee that practices its patented inventions to settle a patent litigation.

### III. CONCLUSION

In summary, there have been no factual developments that merit a stay of this action, and the parties' active pursuit of discovery weighs heavily against it. A stay of this case will not lessen costs, reduce complexity, or narrow the issues for trial. Instead, Lawson's request for a stay is nothing more than an effort to delay resolution of this case until one or all of the patents-in-suit have expired.

Dated: November 24, 2009

**Respectfully submitted,**

*e*Plus inc.

**By counsel**

/s/ Henry I. Willett, III
Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
Attorneys for Plaintiff, *e*Plus inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2009, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following. Copies of the foregoing were also transmitted *via electronic mail* to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
dmcdonald@merchantgould.com

Robert A. Angle (VSB# 37691)
Dabney J. Carr, IV (VSB #28679)
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23218-1122
Telephone: (804) 697-1238
Facsimile: (804) 698-5119
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

Counsel for Defendant Lawson Software, Inc.

/s/ Henry I. Willett, III
Henry I. Willett, III (VSB #44655)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, VA 23219-3095
Tel: 804-697-4100
Fax: 804-697-4112
hwillett@cblaw.com

Counsel for Plaintiff, ePlus inc.

11