```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
 2                 RICHMOND DIVISION


 3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                       :
 4   ePLUS INC.                        :   Civil No.
                                       :   3:09CV620
 5   v.                                :
                                       :   November 17, 2009
 6   LAWSON SOFTWARE, INC.             :
     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

 7


 8          COMPLETE TRANSCRIPT OF CONFERENCE CALL
            BEFORE THE HONORABLE ROBERT E. PAYNE
 9               UNITED STATES DISTRICT JUDGE


10   APPEARANCES:

11   Scott L. Robertson, Esq. (In person)
     GOODWIN PROCTER
12   901 New York Ave., N.W.
     Suite 900
13   Washington, D.C.   20001
     and
14   Craig T. Merritt, Esq. (In person)
     Henry I. Willett, III, Esq. (In person)
15   CHRISTIAN & BARTON
     909 E. Main Street, Suite 1200
16   Richmond, VA


17          Counsel for the Plaintiff

18   Daniel W. McDonald, Esq. (Via telephone)
     MERCHANT & GOULD
19   80 South Eight Street, Suite 3200
     Minneapolis, MN   55403
20   and
     Dabney J. Carr, IV, Esq. (In person)
21   TROUTMAN SANDERS
     1001 Haxall Point
22   Richmond, VA   23219


23          Counsel for the Defendant

24            DIANE J. DAFFRON, RPR
            OFFICIAL COURT REPORTER
25         UNITED STATES DISTRICT COURT
```

```
 1              (The proceedings in this matter commenced at
 2  2:30 p.m.)
 3
 4              THE COURT:  Hello.
 5              MR. MERRITT:  Good afternoon, Your Honor.
 6              THE COURT:  Hi, Mr. McDonald.  How are you?
 7              MR. McDONALD:  Pretty good, sir.  How are
 8  you?
 9              THE COURT:  Okay.
10              We've got Mr. Robertson, Mr. Merritt, Mr.
11  Willett, and Mr. Carr here in the office, and we have a
12  court reporter.
13              I have reviewed and thank you all for
14  preparing the proposed joint discovery plan.  As a
15  preliminary matter, you-all refer to this as ePlus,
16  Inc. v. Lawson Software, Inc.  The style of the case is
17  currently still whatever the first defendant was.
18              MR. CARR:  Perfect Commerce.
19              THE COURT:  Right.  Do you all want to just
20  move the style of the case now to ePlus, Inc. v. Lawson
21  Software, Inc.?
22              MR. MERRITT:  Yes, sir.
23              THE COURT:  Okay.  I'm just going to say that
24  we're going to do that, and all your pleadings
25  henceforth can bear that title.  So we'll just do an
```

1  order that says that all of the defendants being no

2  longer in the case, the style of the case will be

3  ePlus, Inc. v. Lawson Software, Inc., and that all

4  pleadings filed hereafter will bear that title.  The

5  number of the case will remain the same.  All right?

6           I've reviewed your proposal.  Now, this is

7  against a June 15 trial date or June 14, I believe it

8  was.  Right?

9           MR. MERRITT:  Correct.

10          THE COURT:  Have you all talked about it and

11  do you all believe that's a realistic date because I

12  want it to be realistic so we don't have to keep

13  changing it?  I know you-all were thinking of different

14  dates when you came here the last time.

15          So where do you stand on that, Mr. Robertson,

16  since you represent the plaintiff?

17          MR. ROBERTSON:  We can live with that date,

18  Your Honor, and we will live with it.

19          THE COURT:  You can?

20          MR. MERRITT:  Yes, sir.

21          THE COURT:  Everybody?

22          MR. WILLETT:  Yes.

23          MR. CARR:  Yes.

24          THE COURT:  All right.

25          Mr. McDonald, I want to know if you're as

4

1  spiffily dressed as Mr. Robertson is here.  These

2  Richmond lawyers are kind of low key, but he's

3  high-styling over here with the newest style vest I've

4  ever seen.  It's a good-looking look.  I like that.

5          MR. ROBERTSON:  Thank you.

6          THE COURT:  Okay.  A couple of things.  On

7  the protective order, has that been even entered yet?

8          MR. ROBERTSON:  Yes, sir.

9          MR. MERRITT:  Yes, sir.

10          THE COURT:  I thought it had, but there's

11  another order floating around here in another case, and

12  I wasn't sure which one it was.

13          All right.  Paragraph 10 of the proposed

14  order.

15          MR. MERRITT:  Is this the joint discovery

16  plan or is this the --

17          THE COURT:  The plan.

18          MR. MERRITT:  Okay.  Thank you.

19          THE COURT:  It's the third page.

20          Can you hear all right, Mr. McDonald?

21          MR. McDONALD:  Yes, I can, Your Honor.  Thank

22  you.

23          THE COURT:  You have two ways of dealing with

24  objections.  Why?  What is that intended to accomplish?

25  I'm really just asking because I don't understand it.

1  It looks to me like it says that if you're going to

2  file an objection but you're going to answer

3  notwithstanding your objection, you do it on one time

4  frame.  If you're going to object and you really mean

5  it, you're going to do it on another.  If that's not

6  what you mean, then I don't understand what you mean.

7           What's that or is that sort of an appendix

8  that came from somewhere else?

9           MR. ROBERTSON:  Your Honor, I was not

10 actually involved in negotiating the stipulation.  I

11 think, having just quickly glanced at it, that that was

12 the thrust of it.

13          MR. McDONALD:  That's my understanding as

14 well, Your Honor.

15          THE COURT:  Which is it?  That you had --

16          MR. ROBERTSON:  You have three days if you're

17 going to be providing --

18          THE COURT:  If you're going to answer

19 notwithstanding the objection?

20          MR. ROBERTSON:  Yes, sir.

21          MR. McDONALD:  Exactly.

22          THE COURT:  Okay.  And otherwise, it's 15

23 days.  The way it's done, it uses the word "served" in

24 the first scenario, and its says "and notify of the

25 objection" in the second scenario.  Don't you want to

1  use the word "served" in both of them?

2          MR. MERRITT:  I believe so.  That's correct.

3          THE COURT:  You'll fix that up editorially,

4  will you?

5          MR. ROBERTSON:  Yes, sir.

6          THE COURT:  All right.  On page 5, Lawson

7  proposes two summary judgments and the plaintiff wants

8  one.  What's the reason for the two, Mr. McDonald or

9  Mr. Carr?

10          MR. McDONALD:  Your Honor, this is Mr.

11  McDonald.  The main reason, I think, is that we thought

12  it was going to be bulky to put it all in one, and kind

13  of dense, and they are pretty discrete issues.  We

14  thought these 101 and 112 issues could be resolved a

15  little earlier because they are basically based on the

16  intrinsic record only.

17          MR. ROBERTSON:  If I can be briefly heard on

18  that, Your Honor.

19          THE COURT:  Yes.  I just want to make sure I

20  understand what I'm talking about.  Okay.  All right.

21  I understand.  All right.  Go ahead, Mr. Robertson.

22          MR. ROBERTSON:  Yes, Your Honor.  Well, the

23  presumption, Your Honor, the local rule, after great

24  thought and deliberation by the judges in this

25  district, is that one summary judgment is sufficient,

1   and if the defendant has arguments, it should

2   prioritize, and it should pick its best arguments and

3   put those before the Court.

4        What the defendant wants to do here is

5   seriatim, file the first summary judgment on March 1, I

6   understand, on grounds of 101, which is this

7   patentability defense, this new Bilski defense that was

8   just argued before the Supreme Court last week, and

9   it's probably not going to be decided until after

10  March 1 when the defendant wants to file its motion.

11  And another grounds in that motion are on this Section

12  112, which is whether the claims are enabled.

13       Neither of those arguments are going to be

14  case dispositive in this case, Your Honor, but 101

15  arguments are directed to what are called these method

16  or process claims.  There are other claims, systems and

17  apparatus claims that are not subject to that defense.

18  And the 112 defense is only directed to the means plus

19  function claims.  There are going to be other claims in

20  this case that don't involve means plus function.

21       So what happens is the defendant wants to

22  whittle away at the claims here and then depending on

23  the outcome wants to then raise anticipation 102,

24  obvious 103, and probably non-infringement in the

25  second wave.

 1              It's going to involve 60 pages of briefing

 2    each time.  Sixty in opposition and 40 in reply.  I

 3    think it's a burden on the Court and on the plaintiff.

 4    I think it's contrary to the efficient administration

 5    of this case.  And we would respectfully suggest that

 6    the defendant should do what every other litigant does

 7    in this district, and that is prioritize its arguments

 8    and place the best ones in front of you.

 9              THE COURT:  All right.  Mr. McDonald.

10              MR. McDONALD:  Yes.  I apologize, Your Honor,

11    I couldn't hear everything Mr. Robertson said.

12              THE COURT:  I'm sorry.  Maybe you need to

13    speak up a little bit.  This usually picks up

14    everywhere.  It's a pretty good --

15              Do you want it all again or do you think you

16    got the gist of it?

17              MR. McDONALD:  I think I got the gist of it.

18    I think on the Section 101 issue, certainly Bilski has

19    been recently argued.  I think there's a decent chance

20    it will be decided by then.  But even if it's not, I do

21    think the issue is sufficiently ripe.  I don't think

22    we're going to wait around until March or April or any

23    other time for that decision to come down.

24              I'm really thinking about it from a case

25    management standpoint, though, but every one of these

1  issues is fairly complex, but when we get into the

2  prior art related issues under Section 102 and 103,

3  that's going to be much more fact intensive in terms of

4  what is the prior art and matching it up types of

5  things than the 101 and 112 issues, and I just thought

6  it would be easier on the Court and really on the

7  parties as well to divide and conquer these issues

8  because they are pretty separable, and then we don't

9  have to wait until the one big motion on the end to do

10 everything while we're on the home stretch before

11 trial.

12           THE COURT:  Who has gone to calculate the

13 date that the summary judgment motions are due here?

14 Let me go back and see.

15           MR. McDONALD:  I believe it was around

16 April 12 or 14.

17           THE COURT:  It says summary judgments no

18 later than 62 days before the schedule.

19           MR. MERRITT:  Sixty-two days is April 13,

20 Your Honor.

21           THE COURT:  April 13?

22           MR. MERRITT:  Yes, sir.

23           THE COURT:  Well, it sounds to me like,

24 Mr. Robertson, your basic objection is that this

25 proposal presents an opportunity for the addition of

1  claims in the second round that wouldn't otherwise be

2  presented if his proposal wasn't accepted.  Would that

3  not be eliminated if there was no decision rendered

4  before the other summary judgments were due?  Which is

5  very likely what will happen anyway.

6          MR. ROBERTSON:  Well, if I'm following you,

7  sir, I think the answer is no.  What the plaintiff has

8  agreed to do is voluntarily narrow its claims.  We

9  believe that all 79 are infringed, but we have agreed

10 to reduce them down to 13.  And all this briefing would

11 happen after we reduced them down to 13.

12         THE COURT:  No, that's not what I meant to

13 say.  I may not have said it right.  I understand your

14 point you have just made, I think.  But as I understood

15 what you were saying before is that this, you see, is a

16 device to -- once these issues are decided is a way to

17 allow them to file 102 and 103 and other summary

18 judgments that might not already be filed but for the

19 ruling that he would get on these if they went his way.

20 And I guess my reaction is why would that happen if we

21 don't decide it.  Let them go on and be filed, but I'll

22 consider them when all of them are filed.

23         MR. ROBERTSON:  I suppose that's true, Your

24 Honor.

25         THE COURT:  If that's your real objection.

1           MR. ROBERTSON:  It would be pocket vetoed in

2  a sense by the Court.

3           THE COURT:  No, it's called a pragmatic work

4  scheduling veto.

5           MR. ROBERTSON:  Well, I'd like to just avoid

6  all the briefing in the first place.  If Mr. McDonald

7  thinks his 101 and 112 arguments are the best, he can

8  combine them in one 30-page summary judgment, and it

9  just needs to be concise and articulate and persuasive.

10           MR. McDONALD:  I'm sorry to interrupt, Your

11  Honor.  Can Mr. Robertson speak up?

12           THE COURT:  Why don't you move this thing out

13  of the way and pull it that way, and then you slide

14  your chair over here and speak up.

15           MR. ROBERTSON:  I guess the one point I would

16  like to make in response to this Bilski issue, Your

17  Honor, that's just been argued before the Supreme

18  Court, and --

19           THE COURT:  Refresh me on that.

20           MR. ROBERTSON:  This is an argument about

21  whether or not perhaps a pure mental step can be

22  patentable in a process claim which is a method claim,

23  which is someone -- think of baking a cake and putting

24  together all the recipes.  A process like that, the

25  steps of baking a cake, could be patented.

1          Vulcanizing rubber was a famous patent for

2     the steps of how you would vulcanize rubber.  Process

3     method claims have been around for a long time.  The

4     questions become whether you could have something that

5     was just pure mental steps.

6          THE COURT:  What did the Federal Circuit

7     decide on that?

8          MR. ROBERTSON:  The Federal Circuit adopted

9     what was called a machine or transformation test that

10    if you tied the steps to a machine, perhaps a precise

11    machine, or if you transform matter in some way, then

12    that would be a patentable process.

13         The conventional wisdom out there is that the

14    Supreme Court, as it's done repeatedly, as Your Honor

15    is aware of, over the past couple years, is going to

16    reverse the Federal Circuit on that.

17         In the meantime, I can tell you that every

18    Bilski decision that's gone up to the Federal Circuit,

19    they are staying the appeal pending the outcome of the

20    Supreme Court's decision.

21         So I don't really think we're going to

22    advance the ball on this 101 case.  It is kind of the

23    defense du jour, if I may, Your Honor, that a lot of

24    people are now raising.

25         THE COURT:  What happens to the case if the

13

1  Federal Circuit is affirmed in this case?  What happens

2  to this case then as you see it?

3          MR. ROBERTSON:  Well --

4          THE COURT:  Mr. McDonald, since it's your

5  issue.

6          MR. McDONALD:  Well, I think there are

7  certain claims of these three patents that will be

8  invalid under the current Federal Circuit test.

9          THE COURT:  If the Federal Circuit is

10  affirmed, that issue can be decided as late as after

11  the trial, can it not?  If it's decided to affirm the

12  Federal Circuit, those issues can be decided after the

13  trial, right?

14          MR. McDONALD:  I guess we could petition at

15  that point.  I'm not sure if our burden might be a

16  little heavier at that point, though, to get the

17  benefit of that at that point.

18          THE COURT:  Why is that?

19          MR. McDONALD:  Excuse me.

20          THE COURT:  Why is that?

21          MR. McDONALD:  Well, if there's already been

22  an adjudication on it, we have a higher burden at that

23  point to seek reconsideration or a change in the

24  decision, it seems to me, after --

25          THE COURT:  No, I'll just hold it in

1  abeyance.

2          MR. McDONALD:  Before you enter a judgment

3  even, you're saying?

4          THE COURT:  Yes.

5          MR. McDONALD:  Okay.  Well, I would agree

6  then.  We wouldn't have necessarily a higher burden,

7  but I'm not sure that there would be any jury issues

8  actually on this.

9          THE COURT:  What jury issues did you say

10 there were?  I may have misunderstood you.

11         MR. McDONALD:  I'm having trouble picturing

12 what the jury issues would be.  Obviously, the

13 plaintiff is going to try to claim there's some issue

14 of fact, I suppose.

15         I think it's the sort of issue that is,

16 because it's on the intrinsic record of the patent

17 prosecution history, really is going to be based on

18 undisputed facts.  So I guess the question you're

19 asking is do we hold that in abeyance depending on what

20 the Supreme Court decides.

21         THE COURT:  No.  What I'm trying to think

22 through is this:  If I apply the rule that the Federal

23 Circuit has in its extant decisions, you win and they

24 lose.  Is that what you think happens?

25         MR. McDONALD:  Yes.

1          THE COURT:  All right.  And you win and they

2   lose on what?

3          MR. McDONALD:  On certain of the claims.  I

4   don't know which of the 79 they are going to assert

5   here, but I think there's a number of them that would

6   not pass the machine or transformation test.  It's too

7   abstract.

8          THE COURT:  Do you agree with that, Mr.

9   Robertson, that if we apply the formulation currently

10  in effect by virtue of the Bilski decision, that some

11  of your claims would fall for lack of patentability?

12         MR. ROBERTSON:  Absolutely not, Your Honor.

13         THE COURT:  Why not?

14         MR. ROBERTSON:  Because they are all tied to

15  machine.  They are all computer-implemented.  This is

16  not something that's just an abstract idea that someone

17  is just thinking about and performing those steps, such

18  as calibrating something or recognizing a connection

19  between a heightened protein level and some, you know,

20  chemical deficiency where someone is just thinking.

21         All these things go forward, and it's clear

22  from the patents, on a computer system and over a

23  network.  So it's all machine tied.  We win.  In fact,

24  the --

25         THE COURT:  You win either way?

1          MR. ROBERTSON:  I win either way because the

2     Supreme Court is thinking of broadening the test.

3     Conventional wisdom, again, and I'm tea leaf reading.

4          THE COURT:  I want to know how do you know

5     what the Supreme Court is thinking?  Because I want

6     some inside info myself.

7          MR. ROBERTSON:  It's the way they frame the

8     question, quite frankly, and who they took it on appeal

9     from, I think, gives a lot of insight into what their

10    thinking is.  But, again, there is a tea-leaf reading

11    quality to this.

12         THE COURT:  Of course.

13         MR. ROBERTSON:  The fact is, the view is that

14    the Supreme Court thinks the Federal Circuit took too

15    narrow a view of what patentability is.

16         In a famous case, Chakrabatry -- it's always

17    hard saying that, but --

18         THE COURT:  You think you had trouble, wait

19    until she tries to type it.  You'll have to give her

20    the spelling.

21         MR. ROBERTSON:  I will do that.  It's that

22    anything under the sun made by man is patentable.  And

23    this is certainly a computer-implemented system that's

24    been made by man and has been implemented.

25         So I think we win either way.  But what I

 1  would like is it to be decided -- I think it's a pure

 2  legal issue that should be decided under the right

 3  test.  And we don't know what the right test is right

 4  now, Your Honor.

 5          And so my thinking would be that if we went

 6  forward, the claims were found to infringe, but later

 7  on the Supreme Court -- either the Federal Circuit was

 8  upheld or the Supreme Court redefined the test, it's

 9  either going to be an issue that's a pure legal issue

10  for appeal that can say, This claim wasn't patentable

11  in the first place.

12          Because I don't disagree with Mr. McDonald

13  that the claim is what the claim is, and that is pretty

14  much the four corners of the record along with the

15  specification prosecution history.

16          THE COURT:  All right.

17          MR. McDONALD:  One way we could do this, Your

18  Honor, if I might suggest something else.

19          If the 101 issue is there's a concern on this

20  question mark hanging there near the Supreme Court,

21  well, it might make sense to divide out just the 112

22  issue and have that one be the earlier filed motion.

23  There's no particular case I think we're waiting for on

24  that issue.

25          MR. ROBERTSON:  I just want to avoid the two

1  bites at the apple fairness issue.

2          THE COURT:  Why is that two bites at an

3  apple?

4          MR. ROBERTSON:  Because it's two summary

5  judgment motions, Your Honor.  It deviates from the

6  accepted practice here in the sense that everybody

7  would want more summary judgments.  I'd like more

8  summary judgments.

9          THE COURT:  You would?  What would you do

10  with two?

11          MR. ROBERTSON:  Let me take that back.  I'll

12  tell you what I've done in a case before.  I filed

13  summary judgments in infringement in front of Judge

14  Brinkama and Judge Spencer and was told at argument

15  that we were this close to proving it, but they wanted

16  to give the defendant its day in court, and they wanted

17  to hear the evidence because there was some complex

18  evidence.  And it was denied on that basis and we moved

19  forward to the trial.

20          I'm actually contemplating likely to not file

21  a summary judgment of infringement at this time because

22  I don't want to burden the Court, and I think we ought

23  to just get the evidence in front of you.  So I'm

24  probably going to go with none other than if I have to

25  cross move on some of these defenses that Mr. McDonald

1 is planning on raising.

2    THE COURT:  All right.

3    I think the answer to this is let's do it all

4 at one time and maybe just give you a few more pages.

5 All right?  I don't see any more than an extra 15 pages

6 will be necessary to deal with this.  So you-all work

7 that out in the new edition.

8    In paragraph 4A on page 5, you-all say 10 to

9 15 days.  When you were here before you said eight.  Is

10 that just something that didn't get corrected?

11    MR. CARR:  I think so, Your Honor.  We didn't

12 change it.

13    THE COURT:  Approximately eight.

14    MR. ROBERTSON:  Oversight on our part, sir.

15    THE COURT:  That's all right.

16    MR. McDONALD:  I thought it was eight to ten.

17    THE COURT:  Was it?  All right.  We'll put

18 eight to ten in there then.

19    All right.  On page 2 of the order, I mean

20 what is it, Pretrial Schedule A, the hearing on summary

21 judgment.

22    MR. MERRITT:  Yes, sir.

23    THE COURT:  Forty.  All right?

24    MR. McDONALD:  Four-zero?

25    THE COURT:  Four-zero.  That means you-all

1   have a total of 22 days to get a response brief and a

2   reply brief in and give me time to read it.  Okay.

3              What are you going to do about the experts

4   here and how does your expert schedule here impact the

5   schedule that leads up to the trial in Roman numeral V

6   and up to the final pretrial conference on May the

7   21st?

8              MR. MERRITT:  Judge, the idea was, I believe,

9   following your instructions when we met last week was

10  to try to have things sequenced.  So Markman, experts,

11  and the close of summary judgment happen in a way so

12  that you don't have people running back to you saying

13  we haven't gotten certain things done, so we can't, for

14  example, do summary judgment.

15             The way this order is set up, we move through

16  the Markman process early.  That is followed by the

17  conclusion of the expert disclosures and discovery,

18  which is then followed by the summary judgment process.

19  So the pieces fall in line and you don't have one party

20  or the other running back to you saying we can't do the

21  stage here because we haven't completed something that

22  needs to be done.  So, hopefully, they flow together

23  that way.

24             We get the claims narrowed, then we have

25  Markman, then we have the expert process, and then we

1  have summary judgment.  And that was certainly the

2  intentions.  Hopefully, it all flows together that way.

3          MR. CARR:  Just to put some dates on it,

4  Judge, we would finish expert reports on March 29.

5          THE COURT:  Yes, I see that.

6          MR. CARR:  That's the facts discovery cutoff.

7  And then all the things that have to happen before the

8  pretrial conference, those would start beginning on

9  April 30, which is 21 days before.  So we'd have enough

10 time in between those things.

11         THE COURT:  All right.

12         MR. MERRITT:  Judge, there were two places in

13 the order that we submitted where we plugged in

14 bracketed dates not wanting to presume what the Court

15 would have available, but for discussions purposes we

16 put them in the approximate time frame we thought they

17 might happen.  Both of those are on page 8.

18         THE COURT:  Yes.

19         MR. MERRITT:  One of those would be the

20 Markman hearing.  The other one would be the final

21 pretrial.  The bracketed dates, obviously, are not --

22 they're estimates.  They're not anything the Court has

23 cleared.

24         THE COURT:  How long do you think the Markman

25 hearing would take?

1           MR. ROBERTSON:  I just anticipate oral

2  argument, Your Honor.  So an hour each.  An afternoon

3  or morning.

4           THE COURT:  He says an hour each.

5           MR. McDONALD:  I think it could be done

6  between about two and three hours total, Your Honor.

7           THE COURT:  All right.  January 22 then for

8  that at 1:30.  All right.  I'm going to tentatively put

9  the final pretrial conference on May the 20th, but I'm

10  going to tell you that I'm under a command to take my

11  wife down the Danube River, and that's one of the time

12  frames we're looking at.  So I may change that.

13           MR. McDONALD:  Is that the 20th, Your Honor?

14           THE COURT:  At 9:30 in the morning.

15           MR. McDONALD:  All right.

16           THE COURT:  All right.  How many witnesses do

17  you all see this case involving, Mr. Robertson, from

18  your standpoint?

19           MR. ROBERTSON:  Likely three experts, Your

20  Honor, possibly four.  Most likely three.  The three

21  inventors, I might not use all three inventors since

22  they tell the same story, but each approach the problem

23  from a different aspect.  And probably the president of

24  my company.  So what's that six, seven total, Your

25  Honor, perhaps.

1          THE COURT:  How about you, Mr. McDonald?

2          MR. McDONALD:  I think it would be around

3    eight witnesses, Your Honor, including three experts,

4    two or three people from Lawson, some third-party

5    testimony, which that part isn't crystallized too much

6    yes, but probably IBM personnel and perhaps a couple of

7    customers.

8          THE COURT:  All right.  Anything else?

9          MR. McDONALD:  Not from here, Your Honor.

10         MR. MERRITT:  No, sir.

11         THE COURT:  I just assigned this case to

12   Judge Dohnal, who handles settlement.  So I would like

13   for you to go down and set up with him an appointment

14   to get on his schedule or handle it by telephone.  One

15   way or the other.  It's up to you all.

16         And you'll do a new order.  Why don't you

17   caption it, it will be an agreed discovery plan.  I

18   think the only thing I ruled in dispute was how to deal

19   with the summary judgment motions.

20         All right.  Then if you will get that done,

21   we'll be ready to go.  Thank you all very much.

22         MR. MERRITT:  Thank you, Judge.

23         THE COURT:  I appreciate your working and

24   getting this worked out.  I hope it will work for you.

25         MR. ROBERTSON:  Thank you.

```
 1              THE COURT:  Thank you.

 2              Bye, Mr. McDonald.

 3              MR. McDONALD:  Thank you, Your Honor.

 4              THE COURT:  I'm going to have Mr. Carr take a

 5   picture of Mr. Robertson's suit.

 6              MR. McDONALD:  I appreciate that.

 7              THE COURT:  Or else get the model and style

 8   number so you can get it.

 9              Bye-bye.

10

11              (The proceedings were adjourned at 3:13 p.m.)

12

13

14              I, Diane J. Daffron, certify that the

15   foregoing is a true and accurate transcription of my

16   stenographic notes.

17
                    /s/ Diane J. Daffron
18        _____    _____

19        DIANE J. DAFFRON, RPR, CCR        DATE

20

21

22

23

24

25
```