# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

*e*PLUS INC.,                                 )
                                                     )
            **Plaintiff,**                    )    **Civil Action No. 3:09-CV-620 (REP)**
                                                     )
              **v.**                                 )
                                                       )
**LAWSON SOFTWARE, INC.,**                    )
                                                     )
                                                     )
                                                     )
            **Defendant.**                    )

## PLAINTIFF EPLUS INC.'S OPENING CLAIM CONSTRUCTION BRIEF

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Lana S. Shiferman (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND OF THE PATENTS-IN-SUIT ...............................................3

III.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ....................................4

IV.     MOST OF THE GENERAL CLAIM TERMS REQUIRE NO CONSTRUCTION..........7

        A.    The Claim Term "Catalog" Requires No Construction ...........................7

        B.    The Term "Subset" Requires No Construction........................................8

        C.    The Term "Order List" Has A Plain And Ordinary Meaning.................9

        D.    The Claim Term "Protocol" Requires No Construction ........................9

        E.    "Matching Items" Need Not Be Construed ...........................................10

        F.    "Selected Matching Items" Need Not Be Construed.............................10

        G.    The Term "Searching For Matching Items Among The Selected Product
              Catalogs" Requires No Construction ...................................................11

        H.    "Cross-Reference Table" Requires No Construction ...........................11

        I.    The Claim Term "Electronic Sourcing System" Should Not Incorporate
              Inappropriate And Inaccurate Limitations.............................................12

        J.    "Converting Data Relating To A Selected Matching Item And An
              Associated Source To Data Relating To An Item And A Different Source" ........13

        K.    The Claim Element "a multiple purchase order generation module, said
              purchase order generation module creating multiple purchase orders from
              a single requisition created with said user-generated criteria and said
              search-module criteria" Should Not Be Construed As A Means-Plus-
              Function Claim.......................................................................................14

V.      CONSTRUCTION OF MEANS-PLUS-FUNCTION ELEMENTS OF THE
        ASSERTED CLAIMS ........................................................................................16

        A.    Construction Of Means-Plus-Function Elements For Computer Software-
              Implemented Inventions.........................................................................16

        B.    *e*Plus's Proposed Constructions For Means-Plus-Function Claim Terms............20

              1.    "Means for selecting the product catalogs to search"  (Claim 3 of
                    '683 Patent)............................................................................ 20

              2.    "Means for searching for matching items among the selected
                    product catalogs" (Claim 3 of '683 Patent) .............................. 22

i

3.    "Means for building a requisition using data relating to selected matching items and their associated source(s)" (Claims 3 and 6 of the '683 Patent) ..................................................................... 24

4.    "Means for processing the requisition to generate one or more purchase orders" (Claims 3 and 6 of the '683 Patent) ............................. 25

5.    "Means for converting data relating to a selected matching item an associated source to data relating to an item and a different source" (Claim 6 of the '683 Patent)..................................................................... 26

6.    "Means for searching for matching items in the database" (Claim 6 of the '683 Patent).................................................................................... 27

7.    "Means for entering product information that at least partially describes at least one desired item" (Claim 1 of '172 Patent) ................. 27

8.    "Means for searching for matching items that match the entered product information in the selected portions of the database" (Claim 1 of the '172 Patent)..................................................................... 28

9.    "Means for generating an order list that includes at least one matching item selected by said means for searching" (Claim 1 of the '172 Patent) ........................................................................................ 28

10.   "Means for building a requisition that uses data obtained from said database relating to selected matching items on said order list" (Claim 1 of '172 Patent) ........................................................................... 29

11.   "Means for processing said requisition to generate purchase orders for said selected matching items" (Claim 1 of '172 Patent) .................... 29

VI.    CONCLUSION.............................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AllVoice Computing PLC v. Nuance Communs., Inc.,*
   504 F.3d 1236 (Fed. Cir. 2007) ........................................................................... 19

*Aristocrat Techs. Austl. Pty Ltd. v. Multimedia Games, Inc.,*
   266 Fed. Appx. 942 (Fed. Cir. 2008) .................................................................. 19

*Catalina Mktg Int'l, Inc. v. Coolsavings. com, Inc.,*
   289 F.3d 801 (Fed. Cir. 2002) ............................................................................. 12

*CCS Fitness, Inc. v. Brunswick Corp.,*
   288 F.3d 1359 (Fed. Cir. 2002) .............................................................. 5, 14, 15

*Finisar Corp. v. DirecTV Group, Inc.,*
   523 F.3d 1323 (Fed. Cir. 2008) ........................................................................... 19

*Harris Corp. v. Ericsson Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005) ............................................................. 18, 19, 21

*In re Fouche,*
   439 F.2d 1237 (C.C.P.A. 1971) ........................................................................... 25

*In re Freeman,*
   573 F.2d 1237 (C.C.P.A. 1978) ........................................................................... 19

*Interactive Gift Express, Inc. v. Compuserve, Inc.,*
   256 F.3d 1323 (Fed. Cir. 2001) ........................................................................ 4, 5

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
   382 F.3d 1354 (Fed. Cir. 2004) ........................................................................... 15

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) ................................. passim

*McCarty v. Lehigh Valley R.R. Co.,*
   160 U.S. 110 (1895) ................................................................................................. 4

*Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,*
   194 F.3d 1250 (Fed. Cir. 1999) ............................................................... 6, 19, 24

*Netscape Communications Corp. v. ValueClick, Inc.,*
   ___ F. Supp.2d ___, 2009 WL 3422918 (E.D. Va. Oct. 22, 2009) ........................................... 5

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................... 4, 5, 6

*Serrano* v. *Telular Corp.,*
   111 F.3d 1578 (Fed. Cir. 1997) ............................................................................. 7

*Teleflex, Inc. v. Ficosa North Am. Corp.,*
   299 F.3d 1313 (Fed. Cir. 2002) .............................................................................. 5

iii

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997) ........................................................ 7

*United States v. Martin,*
   378 F.3d 353 (4th Cir. 2004) ......................................................... 17

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) ......................................................... 6

*WMS Gaming, Inc. v. Int'l Game Tech.,*
   184 F.3d 1339 (Fed. Cir. 1999) ...................................................... 18

**Statutes**

35 U.S.C. §112 ................................................................................ passim

**Other Authorities**

Microsoft Computer Dictionary (5th ed. 2002) .................................. 16, 20

Webster's II New Riverside University Dictionary (1988) .................... 8, 16

Webster's New World Computer Dictionary (9th ed. 2001) .............. 16

Webster's New World Dictionary (2d ed. 1986) .................................. 8, 9

I.      **INTRODUCTION**

Plaintiff *e*Plus Inc. (hereinafter "*e*Plus") submits its Opening Claim Construction Brief in

support of its construction of certain claim terms in U.S. Patent Nos. 6,023,683 ("the '683

Patent"), 6,055,516 ("the '516 Patent") and 6,505,172 ("the '172 Patent") (collectively, "the

Patents-in-Suit").[1]  Pursuant to the Court's Pretrial Scheduling Order, *e*Plus has conferred with

Defendant Lawson Software, Inc. (hereinafter "Defendant" or "Lawson") in an effort to narrow

the number of terms necessary to be construed by the Court.  Unfortunately, significant

differences in the proposed constructions remain unresolved.[2]  Further, *e*Plus maintains that

many of the claim terms Defendant insists be construed have a plain and ordinary meaning, and

require no further construction by the Court.

Indeed, *e*Plus proposes definitions of claim terms that reflect the customary meaning of

the terms as supported by the intrinsic evidence.  In contrast, many of the claim terms Defendant

contends are disputed are, in fact, simple ordinary words that any juror should readily

comprehend.

For example, Defendant contends that the Court must construe the word "catalog."

Certainly any juror will readily understand the meaning of this term.  In addition, Defendant

asserts claim terms such as "subset," "order list," and "protocol" require further construction.

*e*Plus, on the other hand, maintains that the Court's obligation pursuant to *Markman v. Westview

Instruments, Inc.*, does not compel the Court to rewrite claim terms in words that are different

than those chosen by the inventors.  A *Markman* hearing is not an exercise in academic

---

[1] The claims to be asserted at trial are claims 3, 6, 26, 28 and 29 of the '683 Patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent and claim 1 of the '172 Patent.

[2] The exhibits referenced in this brief are attached to the Declaration of David M. Young ("Young Decl.") and will be referred to hereafter as, *e.g.*, "Ex. #."  For ease of reference, *e*Plus has attached as Exhibit 1 a side-by-side comparison of the parties' respective proposed claim construction positions.

deconstruction of ordinary words.  To the extent the Court, however, determines that a genuine dispute exists with respect to some of these terms, *e*Plus's proposed definitions reflect that ordinary meaning as supported by the intrinsic evidence from the specification of the patents.

Instead of construing the terms of the asserted claims, Defendant abandons all pretense of a proper claim construction and repeatedly reads extraneous limitations directly into the claim terms from the specification, the prosecution history, inventor testimony, or other irrelevant extrinsic evidence.  Sometimes these extraneous limitations appear created from whole cloth.

This is most evident for the claim terms drafted in means-plus-function format pursuant to 35 U.S.C. §112, ¶6 ("Section 112, ¶6").  For these claims, the Court *must* first identify the specified function of the claim term, and then identify the corresponding structure in the specification.  The Court, however, is only required to identify the minimal structure necessary to perform the specified function.  Moreover, in the context of these computer software-implemented means-plus-function claims, the Court must identify the algorithm, or process, used to perform the specified software function.  Repeatedly, however, the Federal Circuit has held that the only algorithm that need be identified in the specification are those specific tasks necessary to perform the claimed function.

In contrast, Defendant repeatedly incorporates structures (both software *and* hardware) completely unnecessary to perform the function.  For example, notwithstanding that the patent specification states *no less than 21 times* that certain computer software-implemented structures are "preferably," *but not necessarily* required, Defendant improperly incorporates these specific embodiments as limitations.  As the Federal Circuit has repeatedly noted, however, this is the "cardinal sin" of claim construction.  In addition, Defendant's "algorithms" are not algorithms at all, but rather a hodgepodge of specific hardware disclosed in the specification in conjunction

2

with particular software routines that are often unnecessary to perform the claimed functionality.

So how did Defendant arrive at these constructions?  The answer is that it selectively "cherry picked" from Judge Spencer's claim construction in *ePlus, Inc. v. SAP America, Inc.*, Civil Action No. 3:05CV281 (JRS) (E.D. Va.).  The fact that Defendant has adopted in part, some, rejected in part, others, and modified all, however, implicitly reveals that these constructions were incorrect.

This is not surprising.  Judge Spencer recognized as much himself when he *vacated* his *Markman* ruling at the conclusion of the *SAP* trial.  That claim construction, it was revealed, was inconsistent even with SAP's own expert testimony.  As a vacated order, it has no force or effect.  Moreover, it is demonstrably wrong.  To adopt it would be clear error, and to adopt Defendant's modified version of it fails to cure that error.

As will quickly become evident to the Court, Defendant's proposed constructions are transparent attempts to avoid a finding of infringement.  In order to manufacture as many non-infringement arguments as possible, Defendant ignores the "heavy presumption" that claim terms have their ordinary, customary meaning and asks this Court to construe many simple terms that do not require construction.  In trying to shoehorn non-infringement positions into the claim terms, Defendant also asks the Court to ignore well-established principles of claim construction and improperly limit the scope of the Patents-in-Suit.  Therefore, *e*Plus respectfully requests that Defendant's proposed constructions be rejected.

## II.      BACKGROUND OF THE PATENTS-IN-SUIT

*e*Plus and Lawson directly compete in the sale of electronic sourcing and procurement systems and services to large and mid-sized corporate customers.  The electronic sourcing and procurement systems covered by the Patents-in-Suit automate internal corporate purchasing processes, resulting in enormous savings in time and expense.  Corporate customer users may

search for items for sale from multiple selected electronic catalogs, view inventory availability information for those items, find related items available from other suppliers, and requisition desired goods or services. The system then generates electronic purchase orders to each different supplier for approved requisitions. Prior to the inventions in the patents, procuring products for large corporations could involve several manual, expensive paper-based operations coupled with awkward automated electronic processes. *See, e.g.,* Ex. 2 ('683 Patent, Col. 1:l l-Col. 2:18).

## III.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

Courts have the power and the obligation to construe as a matter of law the meaning of language used in patent claims. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Claim construction begins with the words of the claim, and the claims of the patent define the patented invention to which the patentee is entitled the right to exclude. *Id.*; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). "The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman,* 52 F.3d at 980; *see also McCarty v. Lehigh Valley R.R. Co.,* 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim ... , we should never know where to stop").

Claim terms "are generally given their ordinary and customary meaning[, which] is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (*citing*, *inter alia, Innova/Pure Water*, 381 F.3d at 1116). "The 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321.

And while the "claims 'must be read in view of the specification, of which they are a part,'" *id.* at 1313, this Court and the Federal Circuit have admonished against the "cardinal sin" of reading limitations from the specification into the claim. *Id.* at 1320; *Netscape Communications Corp. v. ValueClick, Inc.,* ___ F. Supp.2d ___, 2009 WL 3422918, * 6 (E.D. Va. Oct. 22, 2009); *see also Interactive Gift,* 256 F.3d at 1333-44 (reversing various claim constructions of district court for importing limitations from specification into patent claims).

The Federal Circuit has also repeatedly admonished against any claim construction exercise that attempts to limit the scope of the claims by the number of embodiments described in the specification. *Teleflex, Inc. v. Ficosa North Am. Corp.,* 299 F.3d 1313, 1327 (Fed. Cir. 2002) ("In sum, the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms. As we explained in *CCS Fitness,* an accused infringer cannot overcome the 'heavy presumption' that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history."); *see also CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002).

The most probative evidence of the meaning of a patent claim term is to be found in the intrinsic record, *i.e.,* the claims themselves, the specification, and to a lesser extent, the prosecution history. *Teleflex,* 299 F.3d at 1312-17, 1323. Although the prosecution history may be used to understand the language used in the claims, it cannot "'enlarge, diminish, or vary'" the limitations in the claims. *Markman*, 52 F.3d at 980. The prosecution history is less useful for claim construction purposes than the specification because it represents an ongoing negotiation between the Patent & Trademark Office ("PTO") and the applicant, not the final product, and it thus lacks the clarity of the specification. *Phillips,* 415 F.3d at 1317.

Extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," may help educate the Court regarding the field of the invention, but is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence. *Id.* at 1317-19. For that reason, extrinsic evidence may be considered, but is generally disfavored as a means of interpreting claim terms. *See id.*

Inventor testimony constitutes a form of extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583-85 (Fed. Cir. 1996). An inventor's subjective intent as to claim scope, when unexpressed in the patent documents, has no effect on claim construction. *ld.* at 1584. This holds true "whether it is the patentee or the alleged infringer who seeks to alter the scope of the claims [through extrinsic evidence]." *Id.* at 1583. Thus, an inventor's testimony may not be used to vary or contradict claim language. *Id.* at 1585.

Several of the asserted claims of the patents in suit contain elements written in means-plus-function format pursuant to Section 112, ¶6. That provision states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Section 112, ¶6 requires both identification of the claimed function and identification of the structure in the written description necessary to perform that function. *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,* 194 F.3d 1250, 1257-58 (Fed. Cir. 1999). The Court may not limit the scope of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. *Id.* "Nor does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Id.* at 1258.

Identification of corresponding structures may embrace more than the preferred

embodiment.  A means-plus-function claim encompasses all structures in the specification corresponding to that element and equivalent structures.  *Id.*  Thus, when multiple embodiments in the specification correspond to the claimed function, proper application of Section 112, ¶6 reads the claim element to embrace each of those embodiments.  *See, e.g.*, *Serrano* v. *Telular Corp.,* 111 F.3d 1578, 1583 (Fed. Cir. 1997).  By statute, the Court must then construe the element to cover the "corresponding structure" and "equivalents thereof" that perform the "specified function."  35 U.S.C. §112, ¶6.

## IV.    MOST OF THE GENERAL CLAIM TERMS REQUIRE NO CONSTRUCTION

As the Federal Circuit has held, claim construction under *Markman* "is not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997).  "The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."  *Id.*

Here, Defendant insists that this Court must construe common words and phrases such as catalog, subset, order list, and protocol, all of which jurors can readily understand.  Yet Defendant has provided no explanation why construction of these basic terms is necessary, or how its proposed constructions are anything more than "an obligatory exercise in redundancy."

As this Court admonished the parties during the November 13 status conference:

Anybody who will be fighting over the term "catalog" better have a … good reason for fighting over it.  … These things have ordinary meaning unless there is some special definition to them in this case or the patent lingo.  They were chosen by the inventor.  I don't see any basis for even wrestling with that.

Dkt No. 131 at 39 (Trans., Nov. 13, 2009 Pretrial Conference).

### A.      The Claim Term "Catalog" Requires No Construction

*e*Plus believes that the claim term "catalog" is a simple term having a plain and ordinary meaning and is consistently used within that meaning in the claims and, therefore, requires no

further deconstruction by the Court for the jury.[3]

To the extent the Court believes any explanation should be provided to the jury, *e*Plus suggests that the term be given a construction provided in the specification, consistent with the dictionary definition:  "an organized collection of items and associated information which typically includes a part number, price, catalog number, vendor name, vendor I.D., a textual description of an item, and images of or relating to the item."  *See* Ex. 2, Col. 4:38-42.[4]

### B.    The Term "Subset" Requires No Construction

Lawson proposes that the Court construe the claim term "subset."[5]  Again, the term "subset" is a readily understood word that the jurors should immediately comprehend. Therefore, ePlus believes that no construction is necessary.

Moreover, Defendant's proposed construction: "less than all of a set of selectable items" is inconsistent with the plain and ordinary meaning of the term "subset" and is therefore improper.  The word "subset" as defined in Webster's New World Dictionary is: "a mathematical set containing some or all of the elements of a given set."  Webster's New World Dictionary 419 (2d ed. 1986) (Ex. 17).  Further, Defendant's proposed construction is inconsistent with the usage of the term "subset" in the claims where it appears in the context of a

---

[3] *See* Ex. 2, Claim 3 ("[a]n electronic sourcing system comprising:  [*inter alia*] ... at least two product catalogs containing data relating to items associated with the respective sources ..."); *see also* Ex. 2, Col. 4:38-42 ("[t]he catalogs ... preferably include such information as part number, price, catalog number, vendor name or I.D., and vendor catalog number, as well as textual information and images of or relating to the catalog products."); Webster's II New Riverside University Dictionary 236 (1988) ("[a] systemized list, often featuring descriptions of the listed items") (Ex. 16).

[4] This construction is consistent with that provided by this Court in *ePlus inc. v. SAP America, Inc., et al.*, Civil Action No. 3:05CV281-JRS, Claim Constructions Pursuant to November 17, 2005 Markman Hearing (E.D. Va. Jan. 20, 2006) (hereinafter, "Judge Spencer's Construction") (Ex. 11).

[5] This term appears in Claims 1 and 29 of the '516 Patent.

"collection of catalogs" rather than items.  Lawson's proposed construction, therefore, should be rejected.

### C.    The Term "Order List" Has A Plain And Ordinary Meaning

The term "order list" is used in accordance with its ordinary meaning in claim 1 of the '172 Patent ("generating an order list that includes at least one matching item").  Therefore, the term requires no explanation from the Court to the jury.

Defendant's proposed construction "a list of items derived from a list of selected matching items" is inconsistent with the usage of the term "order list" in the specification because the specification explains that items can be added to an order list whether or not the items are included in a list of items found by the search engine.[6]  Therefore, Lawson's proposed construction should be rejected.

### D.    The Claim Term "Protocol" Requires No Construction

This claim term can be found in claims 1, 2, 6 and 29 of the '516 Patent.  Again, Defendant asserts that this term should be construed by the Court to mean "a procedure."  Ex. 9 at 2.  *e*Plus contends this term requires no construction and that a Virginia jury will readily comprehend its meaning in the context of the claims of the '516 Patent involving a "catalog selection *protocol* using predetermined criteria to select less than the entire collection of catalogs" available to search.  *See, e.g.*, Ex. 3, Col. 23:50-55.

To the extent the Court determines, however, that the term requires construction, Defendant's proffered construction is not the correct meaning of the word.  For example, Webster's New World Dictionary defines protocol to be "a set of rules governing the communication and transfer of data between machines, as in a computer system."  Ex. 17 at

---

[6] *See* Ex. 2, Col. 12:34-37 ("the user may also add additional items to the Order List 48 being built in Shell 52 if desired, whether those additional items had been selected from the Hit List 47 or not."); Col. 12:54-60.

1143.  There is no reason to rewrite the claim, particularly to provide it with an incorrect

definition.

### E.      "Matching Items" Need Not Be Construed

*e*Plus believes that the claim term "matching items" is a simple phrase in the context of

the claims and should have a plain and ordinary meaning.[7]  Therefore, the term requires no

interpretation from the Court to the jury.

To the extent that the Court believes a further explanation should be provided to the jury,

*e*Plus suggests that the term be construed as: "items in search results that satisfy search criteria."

This is entirely consistent with the term's usage in the claims and the specification.[8]

### F.      "Selected Matching Items" Need Not Be Construed

Similar to the claim term "matching items," the term "selected matching items" has a

plain and ordinary meaning and needs no further explanation.[9]

To the extent the Court believes a construction is required, *e*Plus proposes that the term

be construed as: "items returned in search results that are selected for inclusion on an order list or

in a requisition."  This construction is entirely consistent with the term's usage in the claims and

specification.[10]

---

[7] This claim term appears in claims 3, 6, 26, 28 and 29 of the '683 Patent and claim 1 of the '172 Patent.

[8] *See* Ex. 2, claim 3 ("means for searching for matching items among the selected product catalogs"); Col. 9:34-42 ("TV/2 search program 50 will search catalog database 36 for all items that match the search field sent over … when a search is performed…, a Hit List 47 is produced…The user would see… a Hit List 47 screen representing … all matching catalog items that were located in catalog database 36 as a result of the search.").

[9] The claim term "selected matching items" appears in claims 3, 6, 26, 28 and 29 of the '683 Patent and claim 1 of the '172 Patent.

[10] *See* Ex. 2, claim 3 ("means for building a requisition using data relating to selected matching items and their associated source(s)"); Ex. 4, claim 1 ("means for generating an order list that includes at least one matching item selected by said means for searching; means for building a requisition that uses data obtained from said database relating to said selected matching items on

### G.   The Term "Searching For Matching Items Among The Selected Product Catalogs" Requires No Construction

The claim term "searching for matching items among the selected product catalogs," as used in claims 26 and 28 of the '683 Patent, has a plain and ordinary meaning.  Contrary to Defendant's suggestion, there is no need to rewrite what is already self-evident language that any juror could readily comprehend.  Defendant's proposed construction imports unnecessary words (*e.g.*, "user entered search criteria") into a claim element where no further words are needed beyond what is already stated in the claim.  This additional limitation is completely unnecessary.

### H.   "Cross-Reference Table" Requires No Construction

*e*Plus contends this term should have its plain and ordinary meaning and that any Virginia juror will readily comprehend the meaning of a "cross-reference table" in the context of those claims.[11]  For example, claim 29 recites "a cross-reference table linking a vendor item catalog number from [the] vendor catalog with an item catalog number from [a] predetermined third party [vendor]."  Ex. 3, Col. 26:63-65.  Defendant's construction: "a table including reference or identification codes used to link vendor items by catalog number between two or more different vendors determined by a Distributor to be equivalent," Ex. 9 at 2, is in part, redundant of this claim element, and then improperly incorporates additional unnecessary limitations ("determined by a Distributor to be equivalent") as part of its meaning.

"Cross-reference" is, for example, defined as "a reference from one part of a book, catalog, index, etc. to another part, for additional information."  Ex. 17 at 339.  "Table" merely describes the structure in which the cross-reference information is maintained.  There is no requirement that a "Distributor" create this table within the patent, or determine which vendor

---

said order list"); Ex. 2, Col. 10:21-43 ("Once Hit List 47 has been created by TV/2 search program 50, the user can view it and select particular ones of the located catalog items for Order List 48 …").

[11] This claim term appears in asserted claims 21, 22 and 29 of the '516 Patent.

items may be similar or equivalent.  Defendant, therefore, has wholly imported this limitation into the claim term.  Such an approach is improper.

I.    **The Claim Term "Electronic Sourcing System" Should Not Incorporate Inappropriate And Inaccurate Limitations**

*e*Plus believes that the term "electronic sourcing system," which appears as a preamble to many but not all the asserted claims, constitutes a claim limitation.[12]  *See Catalina Mktg Int'l, Inc. v. Coolsavings. com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("[i]n general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim").  The inventions claimed are "electronic sourcing systems" where that limitation appears, and, moreover, the term provides an antecedent basis for some of the terms that follow.  *See, e.g.*, Ex. 2, Claim 3 ("[a]n electronic sourcing system comprising: [*inter alia*] at least two product catalogs containing data relating to items ***associated with the respective sources*** ... [and] means for building a requisition using data relating to selected matching items and ***their associated source(s)***...."); *Catalina Mktg*, 289 F.3d at 808 ("dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention.").  Moreover, the sourcing system is "electronic", *i.e.*, implemented on a computer system.  *See, e.g.*, Ex. 2, Col. 3:3-24; Abstract ("An electronic sourcing system includes a computer that maintains...").

Defendant proposes a construction of this term that incorporates limitations that are neither necessary nor appropriate.  Defendant proposes that the term be construed to mean "A system for determining what inventory will be used to fulfill requests for items."  Yet, none of the asserted electronic sourcing system claims even recite "inventory."  Moreover, several of the

---

[12] This term appears in claims 3 and 6 of the '683 Patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent and claim 1 of the '172 Patent.

asserted claims do not recite "requisitions" or have any recitations related to "requests for items." *See, e.g.*, Ex. 3, claims 1, 2, 6, 9, 29.  Defendant's proposal improperly reads "inventory" and "requests for items" into every electronic sourcing system claim.

In contrast, *e*Plus proposes that the term be construed simply as "an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors."  The particulars of the claimed electronic sourcing systems are, of course, supplied by the additional elements of the claims in which this term appears and need not be read into the construction.[13]

> J.      **"Converting Data Relating To A Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source"**

Again, Lawson proposes that the Court engage in rewriting claim language that is already written in plain and ordinary terms with respect to the above element.[14]

To the extent the Court believes that the jury requires further explanation of this claim term, *e*Plus proposes that the term be construed as:  "a process of cross-referencing data relating to a selected matching item and an associated source to an item and a different source."  This construction is entirely consistent with the term's usage in the claims and the specification.[15]

Lawson's proposed construction "substituting a catalog entry related to a product with a

---

[13] *e*Plus's proposed construction of "electronic sourcing system" is the same as previously adopted in Judge Spencer's Construction (Ex. 11 at 1).

[14] This element is found in claim 28 of the '683 Patent.

[15] *See* Ex. 2, Col. 4: 66-Col. 5:8 ("databases 11 may include such information as:  … cross-references from the Distributor's catalog number to its corresponding vendor's part (catalog) number and to similar corresponding catalog numbers of other vendors (suppliers or distributors) for the same Product."); Col. 10:43-52 ("Distributor's mainframe host computer 10 would recognize the entry for the item from vendor Promega's catalog (R6012, 00005860) as corresponding to that same item available from Fisher's catalog (PRR6012, 00000001)."); Col. 14:38-45; Ex. 3, claim 17 ("said converting means includes a non-catalog database containing a cross-reference table such that use of a reference code corresponding to an entry in said cross-reference table links said item from said first catalog to data relating to said item from said second catalog.").

catalog entry describing the product from a different source by using matching codes in a cross-reference table for sourcing and pricing" imports extraneous and unnecessary limitations into the claim term that are inconsistent with the term's usage in the claims and specification.  For example, there is no requirement in the claims or specification that the converting be done by "using matching codes" in a cross-reference table.  In fact, in the examples provided, the catalog I.D.'s differ.

Nor is there any requirement that the cross-reference tables used for the converting process be "for sourcing and pricing."  Moreover, the specification does not describe the converting process as "substituting a catalog entry related to a product with a catalog entry describing the product from a different source."  Rather, the converting process is described with respect to requisitioned items (*i.e.*, "selected matching items").[16]  Lawson's proposed construction is therefore inconsistent with the claims and the specification and is improper.

### K.    The Claim Element "a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria" Should Not Be Construed As A Means-Plus-Function Claim

Defendant contends that the above claim element — the third element in claim 21 of the '516 Patent — should be construed as a means-plus-function element pursuant to Section 112, ¶6.  Defendant is simply wrong.

Because the claim element does not use the word "means," there is a presumption that the term should ***not*** be construed as a means-plus-function element.  *CCS Fitness,* 288 F.3d at 1369 ("a claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶6

---

[16] *See* Ex. 2, Col. 14: 38-45 ("an entry … may indicate for a requisitioned item a vendor and vendor catalog number that has been changed…"); Col. 16:19-32 (requisition screen in Appendix X illustrating results of the conversion process); Col. 10: 43-52 ("[w]hen the resultant requisition is sourced however …, Distributor's … computer 10 would recognize the entry for the item from vendor Promega's catalog (R6012, 00005860) as corresponding to that same item available from Fisher's catalog (PRR6012, 00000001).").

does not apply"); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.,* 382 F.3d 1354, 1360 (Fed. Cir. 2004) ("[T]he fact that a particular mechanism … is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of 112(6)."  "The use of the term 'means' is central to the analysis, because the term 'means,' particularly as used in the phrase 'means for,' is part of the classic template for functional claim elements, and has come to be closely associated with means-plus-function claiming." *Id.* at 1358 (citations omitted).

The "presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." *Id.*  Defendant can overcome this presumption only if it demonstrates that the claim term fails to recite sufficiently definite structure, or else recites a function without reciting sufficient structure for performing that function. *CCS Fitness*, 288 F.3d at 1369. Moreover, to avoid the application of Section 112, ¶6, it is not necessary that the claim term connote a precise or specific physical structure.  Rather, it is "sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Lighting World*, 382 F.3d at 1359-60.  Thus, "[w]hat is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Id.* at 1360.  In light of these governing principles, the Federal Circuit has observed "it is not surprising that we have seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form." *Id.* at 1362.

Defendant seeks to overcome the presumption by contending that a "module" fails to connote sufficient structure.  Again, Defendant is wrong.  "Module" is a well-known term in

computer software technology that constitutes structure.  For example, Webster's New World

Computer Dictionary defines "module" as

> In a program, a unit or section that can function on its own.  In an integrated
> program, for instance, one can use the word processing *module* as though it were
> a separate, standalone program.

Webster's New World Computer Dictionary 244 (9th ed. 2001) (Ex. 18) (emphasis added).[17]

Therefore, defendant cannot overcome the presumption.

Defendant's construction is also inconsistent with the other elements of claim 21.  For

example, claim 21 also recites "a catalog collection searching module" and a "requisition

module."  Ex. 3, 25:61-67.  Defendant does not assert that these "modules" should be construed

under Section 112, ¶6.

Lastly, Defendant proffers no construction for this claim element at all, but rather, in a

circular fashion, asserts that the Court should find it to be a means-plus-function element, but

then conclude that no structure is disclosed.  But as set forth below, the "multiple purchase order

generation" capability is fully disclosed in the specification.  *See infra* at 25-26.

The Court should find, therefore, that Defendant has failed to overcome the presumption

that this claim element should not be construed under Section 112, ¶6, and that the term requires

no construction as its meaning should be plain in the context of the claim.

## V.   CONSTRUCTION OF MEANS-PLUS-FUNCTION ELEMENTS OF THE ASSERTED CLAIMS

### A.   Construction Of Means-Plus-Function Elements For Computer Software-Implemented Inventions

With respect to the means-plus-function elements in dispute, Defendant urges the Court

---

[17] Similarly, the Microsoft Computer Dictionary defines "module" as follows:

> In programming, a collection of routines and ***data structures*** that perform
> a particular task or implement a particular abstract data type.

Microsoft Computer Dictionary 346 (5th ed. 2002) (Ex. 15) (emphasis added).

to adopt constructions that cannot be reconciled with Federal Circuit law.  In addition, Defendant appeals to Judge Spencer's construction when convenient, and discards it when not.  The result of Defendant's litigation-inspired positions is a jumbled medley of arguments wholly divorced from proper claim construction principles.

The Court may recall that Defendant previously moved the Court to adopt wholesale Judge Spencer's prior *Markman* ruling from the *SAP* litigation.  *See* Dkt. Nos. 51-52 (Motion to Transfer Case or in the Alternative to Adopt Prior Markman Ruling) (arguing that Court "should adopt the claim constructions already determined by Judge Spencer," in order to "promote uniformity" and avoid the risk of "inconsistent results").  Defendant's fear of "inconsistent results" appears to have diminished substantially since filing that motion, however, as it variously adopts, rejects, and/or substantially modifies various portions of some of Judge Spencer's construction, effectively conceding that his prior rulings were incorrect.

Moreover, insofar as Defendant asks this Court to "partially" adopt selected aspects of Judge Spencer's *Markman* ruling, Judge Spencer *vacated* that ruling at the conclusion of the *SAP* litigation.  Ex. 14.[18]  Judge Spencer did so in response to *e*Plus's motion wherein it demonstrated that his *Markman* ruling with respect to the disputed means-plus-function elements was in error as shown by the evidence at trial.[19]

For example, each of Judge Spencer's means-plus-function claim constructions required that the recited means execute on a "local computer," notwithstanding that the specification of

---

[18] "'Vacate' means 'to render an act void; as, to vacate an entry of record, or a judgment.'  And a judgment that is 'void' . . . 'is nugatory and ineffectual so that nothing can cure it.'" *United States v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004) (quoting Black's Law Dictionary 1548, 1573 (6th ed. 1990)).

[19] Defendant's argument that this Court should selectively adopt portions of Judge Spencer's means-plus-function constructions, as modified, is all the more lacking in merit considering that it was Judge Spencer's constructions of those very same elements that formed the basis for *e*Plus's motion to vacate.  Ex. 12 at 3-11.

the Patents-in-Suit discloses a networked embodiment of the inventions that is not limited to execution on a local computer.  Ex. 12 at 4-7.  Additionally, Judge Spencer's constructions of the means-plus-function claim terms limited the claims to software modules that communicate using a specific communication protocol (the Dynamic Data Exchange (DDE) protocol).  However, the trial evidence established that the specification describes several different communications protocols other than the DDE protocol that a skilled artisan would have appreciated could have been employed to communicate and transmit data between the software modules of the patented systems.  *Id.* at 7-11.  Even SAP's experts conceded both of these points at trial.  *Id.* at 6-11.

For these reasons, Judge Spencer vacated his *Markman* Order.  Ex. 14 ("Upon due consideration by the Court, and for the reasons set forth in *e*Plus's Memorandum in support of its Motion, *e*Plus's Motion is hereby GRANTED.").  As will be shown, many of Defendant's proposed constructions suffer from the same flaws.

While the parties agree that the Court must construe the elements of the asserted claims that are written in means-plus-function format pursuant to Section 112, ¶6, they differ substantially in their proposed constructions.

In the case of a means-plus-function element in which the disclosed structure is a computer or microprocessor programmed to carry out an algorithm, or process, the Federal Circuit holds that the "general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from the program software."  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999); *see also Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1253 (Fed. Cir. 2005).  Accordingly, the disclosed structure for purposes of the claim construction is the special purpose computer as programmed to perform the disclosed algorithm.  *WMS Gaming,* 184 F.3d at 1349.

The requirement of an algorithm for computer software-implemented means-plus-function elements is liberally construed to encompass any description sufficient to allow a skilled artisan to program a computer to perform the applicable function:

> Thus the patent must disclose, at least to the satisfaction of one of ordinary skill in the art, enough of an algorithm to provide the necessary structure under § 112, ¶6.  This court permits a patentee to express that algorithm in any understandable terms including as a mathematical formula, in prose, *see In re Freeman*, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978), or as a flow chart, or in any other manner that provides sufficient structure.

*Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1340 (Fed. Cir. 2008); *see also AllVoice Computing PLC v. Nuance Communs., Inc.,* 504 F.3d 1236, 1245 (Fed. Cir. 2007) ("In software cases, therefore, algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art.").[20]  The "structure" is only that which is necessary to perform the function of the clause, *i.e.,* selecting, searching, etc.  *See Micro Chem.,* 194 F.3d at 1258 (reversing district court for defining the "structure" with too many features).

In *Harris*, the Federal Circuit construed a "time domain processor means" for "simulating the time domain effect … by deducing prescribed characteristics" and "for producing estimates …."  417 F.3d at 1253.  The Federal Circuit first identified where the specification disclosed an algorithm for performing the specified function.  *Id.* at 1254 (finding that the algorithm is described "in Figures 8A, 8B, and 9 and described at col. 7, l. 18-col. 8, l. 38; col. 13, l. 45-col. 14, l. 20; and col. 15, l. 2-col. 16, l. 11.")  It then determined the necessary steps of the algorithm to perform the function.  *Id.* (noting that "[a]spects of this algorithm can vary based on

---

[20] Indeed, in an unpublished decision, the Federal Circuit recently held that disclosure of a specific algorithm is not required when "those functions are readily apparent to a person of skill in the art."  *Aristocrat Techs. Austl. Pty Ltd. v. Multimedia Games, Inc.,* 266 Fed. Appx. 942, 948 (Fed. Cir. 2008).

implementation, as the specification implies").  Finally, the Court determined that, of the three

figures and associated text disclosed, the proper construction was simply a two-step process for

performing the recited function.  *Id.*

In contrast to the process set forth above, Defendant reads large portions of the

specification into the claims with complete disregard for whether such portions are necessary to

perform the recited function, thereby vastly overcomplicating the process of identifying the

algorithm.

Identifying the pertinent algorithms, however, is not nearly as confounding a process as

Defendant would have it be.  According to the Microsoft Computer Dictionary, for example, an

algorithm is simply "[a] finite sequence of steps for solving a logical or mathematical problem or

performing a task."  Ex. 15 (Microsoft Computer Dictionary 23 (5th ed. 2002)).

*e*Plus has set forth below constructions that identify algorithms commensurate with the

above requirements, namely, the "finite sequence of steps for … performing a task."  Federal

Circuit law does not require — and indeed forbids — this Court from engrafting unnecessary

steps onto the algorithm, thereby unduly limiting claim scope.

**B.      *e*Plus's Proposed Constructions For Means-Plus-Function Claim Terms**

Asserted claims 3 and 6 of the '683 Patent and claim 1 of the '172 Patent are written in

means-plus-function format pursuant to Section 112, ¶6.

*e*Plus proposes that the terms from those claims be construed as follows.

**1.      "Means for selecting the product catalogs to search"
                 (Claim 3 of '683 Patent)**

**Function:** selecting the product catalogs to search.

**Exemplary corresponding structure:**  a computer which is programmed with special-
purpose software modules[21] to execute an algorithm which includes the steps of:  (1)

---

[21] As noted above, a software "module" is simply a collection of routines and data structures that
performs a particular task or implements a particular abstract data type.  Ex. 15 at 346.  In the

receiving inputted information relating to a user's selection of product catalogs to search from among the at least two product catalogs available; and (2) communicating the input selection to a search engine module; or (1) selecting catalogs to be searched from among the at least two product catalogs available based on preferences or history; and (2) communicating the catalog selection to a search engine program; and structural equivalents thereof. the catalog selection to a search engine program; and structural equivalents thereof.[22]

Defendant's proposed construction includes numerous inappropriate and incorrect terms. *See* Ex. 9 at 3.  For example, Defendant's proposed construction would require that the software always execute "on a local computer."  This is incorrect for many reasons.  First, the structures associated with a software-implemented means-plus-function element are the algorithms, or procedures, executed by the software.  *Harris*, 417 F. 3d at 1253.  It is inappropriate to incorporate a hardware-based element into a construction that calls for the procedures executed by the software.  Second, this construction is improper because it ignores the fact that the patent specification describes multiple networked embodiments and is not limited to a local computer embodiment.[23]

In the previous *SAP* trial involving the Patents-in-Suit, both parties' witnesses testified that the patent specification describes a networked embodiment of the patented inventions and is

---

claimed electronic sourcing systems, the computer is programmed with special-purpose software modules to execute the claimed functions.  *See, e.g.,* Ex. 2, FIG. 1B (illustrating that the system includes a requisition/purchasing program and a search program, among other components).

[22] *See, e.g.,* Ex. 2, Col. 8, ll. 8-26 ("the user enters the letter 'S' (for 'Select') on the line number of the item that he or she wishes to search in catalog database."); Col. 9, ll. 19-34 ("If the user has marked an item with the designation 'S', the entered data … will be sent to … search engine program"); Col. 9:52-Col. 10:20  ("when multiple catalogs are present in catalog database 36, search program 50 contains a function associated with the catalog symbol of the footer bar … for selecting catalogs to be searched.").  *See also* Ex. 1 at 3-4 for additional specification support.

[23] *See* Ex. 2, FIG. 1B; Col. 17:6-10 ("file server 200 is a large personal computer, a work station or a mini-computer such as an IBM AS/400.  Alternatively, the server 200 and a mini-computer (such as an IBM AS/400) can be independently connected to each local computer 200.").

not limited to a local computer environment.[24]

It was for this reason, among others, that the Court vacated its prior claim construction ruling.  *See* Ex. 14.

Additionally, Defendant's construction would require a user to select "two or more product catalogs" from the available catalogs.  This construction is inconsistent with the patent specification.  As this Court previously found, the patent describes that "selected catalogs may be searched as a group.  In addition, selected catalogs may be stored in separate databases.  Finally, the claims contemplate a system through which a user could select just one catalog to search from the two or more catalogs that are available."[25]

Defendant's construction is incorrect for at least these reasons.

> **2.**     **"Means for searching for matching items among the selected product catalogs" (Claim 3 of '683 Patent)**

**Function:**  searching for matching items among the selected product catalogs.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a search engine module to execute an algorithm which includes the steps of:  (1) receiving search criteria (*e.g.*, catalog number, part number, partial textual description) relating to item(s) to be searched; (2) communicating the search criteria to a search engine module; (3) querying certain fields of the item data

---

[24] *See* Ex. 13 at 1965:5-14 (inventor D. Momyer Direct); 198:13-20 (Momyer Direct) (the FIG 1B client/server embodiment is a networked embodiment; "you could log on remotely to the system, enter the information locally, and it would communicate [to] the programs that were running on the server."); Ex. 13 at 359:2-361:10 (inventor J. Johnson Direct); Ex. 13 at 198:13-20 (D. Momyer Direct) ("A server is a computer that houses its programs or data that the client component that's running on a remote PC interacts with.  So the actual programs are running on the server as well as the data.); Ex. 13 at 1375:22-1376:9 (SAP's expert D. Menascé Direct) (acknowledging that the patent describes a networked embodiment); Ex. 13 at 1654:9-18 (D. Menascé Cross).

[25] *See* Court's Construction of the Claims at Issue, Jury Instructions at 27, *ePlus inc. v. Ariba, Inc.,* Civil Action No. 1:04cv-612 (E.D. Va.) (Ex. 10); *see also* Memorandum Opinion, *ePlus inc. v. Ariba, Inc.* (E.D. Va. Jan. 19, 2005) at 11-12 ("*Ariba* Opinion") (Ex. 19).

to locate item records in the selected product catalogs matching the search criteria; and (4) outputting items matching the search criteria; and structural equivalents thereof.[26]

Defendant's proposed construction for this term again imports unnecessary and improper limitations. *See* Ex. 9 at 2-3. For example, Defendant's proposed construction again would require that the software run "on a local computer," and disregards the networked embodiment disclosed in the patent specification.

Moreover, Defendant's proposed construction suggests that the system first searches RIMS databases based on the search criteria.[27] This is wholly incorrect. Nowhere in the patent specification does it describe the search engine program searching RIMS databases. In all instances described in the patent specification, the search engine program searches the catalog databases, even where a search is initiated from the requisition/purchasing module.[28]

Defendant's proposed construction also improperly imports a limitation that the search program "concatenat[es] (*i.e.*, join[s] together by linking so as to form a chain or series) only selected product catalogs to be searched." As set forth above, this Court in the *Ariba* litigation

---

[26] *See, e.g.*, Ex. 2, Col. 7, l. 61-Col. 8, l. 32 ("Once the user has entered such information at least partially describing a desired item…, he or she may wish to initiate a search of catalog database 36 to find all the part numbers … that match the part number entered"); Col. 8, l. 40-Col. 10, l. 20 (search program 50 searches in catalog database 36 for the item(s) that match the input search criteria communicated; the user will see on the monitor a Hit List screen representing matching catalog items that were located in the catalog database 36 as a result of the search."). *See also* Ex. 1 at 4 for additional specification support.

[27] The RIMS databases are various databases associated with a preferred embodiment of the requisition/purchasing module of the electronic sourcing system and include requisition databases 42A, inventory databases 42B, and customer-specific databases 42C. Ex. 2, Col. 4:10-24.

[28] *See* Ex. 2, Col 5: 28-34 ("[a] typical data exchange may begin with requisition/purchasing system 40 … requesting information from catalog database 36 via search program 50."); Col. 8:7-8 ("[o]nce the user has entered such information at least partially describing a desired item on Requisition Management data screen 110, he or she may wish to initiate a search of catalog database 36 to find all the part numbers contained in catalog database 36 that match the part number entered …").

found that there was no support for such a construction.  Although the specification — but not the claim — uses the term "concatenate," it is used simply to mean that the selected catalogs are searched as a group.  To "join" the selected catalogs is not required.  Ex. 19 at 11-12.  Moreover, a user can select to search catalogs stored in separate catalog databases.[29]  In such cases, the selected catalogs would not be concatenated to be searched.  In addition, as the *Ariba* Court further held, a user could select to search only one catalog from among the two or more catalogs maintained and, in such cases, there would be no concatenation.  Ex. 19 at 11-12.  Thus, the *Ariba* Court held that it was improper to read a "concatenation" requirement into the claim term.

In addition, Defendant's proposed construction of the "function" of the element imports a limitation that "two or more product catalogs" be selected to be searched and deviates from the function explicitly recited in the claim.  This is improper.  *See Micro Chem.*, 194 F.3d at 1258.  Moreover, as this Court previously found in the *Ariba* litigation, the patent specification and claims specifically contemplate that a user may select only one catalog to search from among the two or more catalogs maintained.  Ex. 19 at 12.  Therefore, it would be incorrect to construe the function to require selection of two or more catalogs.

For at least these reasons, Defendant's proposed construction should be rejected.

3.    **"Means for building a requisition using data relating to selected matching items and their associated source(s)" (Claims 3 and 6 of the '683 Patent)**

**Function:**  building a requisition using data relating to selected matching items and their associated source(s).

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a requisition module to execute an algorithm which includes the steps of:  (1) selecting one or more items from hit lists of catalog items matching search criteria that were returned from searching selected product catalogs; (2) transferring the selected matching item data to a requisition module; and (3) building a

---

[29] *See* Ex. 2, FIG. 1B; Col. 17:55-64 (the system can include multiple catalog databases 236).

requisition using data from the selected matching items to populate certain fields on the requisition form; and structural equivalents thereof.[30]

For reasons similar to those set forth above, for example, with respect to importing a

"local computer" limitation into the claim term and disregarding the disclosed networked

embodiment, Defendant's proposed construction for this term is incorrect and should be rejected.

4.      **"Means for processing the requisition to generate one or more purchase orders" (Claims 3 and 6 of the '683 Patent)**

**Function:**  processing the requisition to generate one or more purchase orders for the selected matching items.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a purchasing module to execute an algorithm which includes the steps of:  (1) accepting the requisition; and (2) generating one or more purchase orders based on the data included in the requisition relating to the matching items selected from the items returned from searching selected product catalogs and based on predetermined rules relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition); and structural equivalents thereof.[31]

Defendant suggests there is no corresponding structure or algorithm for this claim term

disclosed in either the '683 Patent specification or the '989 Patent specification incorporated by

reference.[32]  This is plainly incorrect as there is corresponding structure disclosed in the

---

[30] *See, e.g.*, Ex. 2, Col. 10, ll. 21-43 (Once the hit list has been created by the search program, the user can view it and select particular ones of the located catalog items for an Order List.  The information on the order list then transmitted to the requisition program would include the item description, list price and other information about the selected item taken from the catalog database.); Col. 11, ll. 30-67 ("When in search program 50, particular items selected can be added to an Order List 48.  Upon clicking on 'Order', many or all of these fields on the items in the Order List are transmitted back to the requisition program  to be added to the pending Requisition Item Table 46.").  *See also* specification support cited in Ex. 1 at 6.

[31] *See, e.g.*, Ex. 2, Col. 1, ll. 10-35 (incorporating by reference the disclosure of U.S. Patent No. 5,712,989 (the "'989 Patent") including the description of FIG. 5B showing the procedure for generating a purchase order); Col. 15, ll. 20-54 (Once a requisition has been accepted, it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3 and as illustrated in the example shown in Appendix IX.).  *See also* specification support cited in Ex. 1 at 7.

[32] The disclosure of a patent incorporated by reference into another patent is treated as if fully set forth within the disclosure of the incorporating patent.  *See, e.g.*, *In re Fouche*, 439 F.2d 1237, 1239-40 (C.C.P.A. 1971).

specifications as indicated above and in Ex. 1.  Moreover, the Courts in both the *Ariba* and *SAP*

litigations construed this claim term and found corresponding structure in the patent

specification.  Thus, Defendant's proposed construction should be rejected.

5.   **"Means for converting data relating to a selected matching item an associated source to data relating to an item and a different source" (Claim 6 of the '683 Patent)**

**Function:**  converting data relating to a selected matched item and an associated source to data relating to an item and a different source.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules to execute an algorithm which includes the steps of:  (1) maintaining a cross-reference table or file identifying cross-referenced items, identical items or generally equivalent items and one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; (2) for a selected matching item, accessing the cross-reference table or file to identify an identical item or generally equivalent item cross-referenced to the selected matching item and associated with a different source; and (3) replacing the selected matching item and its associated source with the identical item or generally equivalent item and its different source in a requisition; and structural equivalents thereof.[33]

Again, Defendant suggests that there is no structure corresponding to this claim term

disclosed in the specification. Ex. 9 at 5.  Defendant's position is incorrect.  There are numerous

references to the means used for converting data throughout the patent specification as set forth

above and in Ex. 1.  Moreover, the Courts in the prior *Ariba* and *SAP* litigations both found that

there was structure disclosed in the patent specification corresponding to this claim term.

---

[33] *See, e.g.*, Ex. 2, Col. 4, l. 60 - Col. 5, l. 8 (describing cross reference tables which cross-reference from a Distributor's catalog number to a corresponding vendor's part (catalog) number and to similar corresponding catalog numbers of other vendors (suppliers or distributors) for the same product); Col. 10, ll. 43-52 ("when the resultant requisition is sourced, . . . , Distributor's … computer 10 would recognize the entry for the item from vendor Promega's catalog (R6012, 00005860) as corresponding to that same item available from Fisher's catalog (PRR6012, 00000001)"); Col. 14, ll. 35-45; Col. 16, ll. 8-32; Col. 16, ll. 54-62 (describing the "converting process" wherein an originally entered part did not exist in the Fisher catalog, but its corresponding part number was located in another catalog by use of the search engine and cross-reference tables).  *See also* specification support cited in Ex. 1 at 8.

6.    **"Means for searching for matching items in the database" (Claim 6 of the '683 Patent)**

**Function:**  searching for matching items in the database.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a search engine module to execute an algorithm which includes the steps of:  (1) receiving search criteria (*e.g.,* catalog number, part number, partial textual description) relating to items(s) to be searched; (2) communicating the search criteria to a search engine program; (3) querying certain fields of the item data to locate item records in the database matching the search criteria; and (4) outputting items matching the search criteria; and structural equivalents thereof.[34]

Defendant's proposed construction should be rejected for the same reasons as discussed

above with respect to the "means for searching for matching items among the selected product

catalogs."

7.    **"Means for entering product information that at least partially describes at least one desired item" (Claim 1 of '172 Patent)**

**Function:**  entering product information that at least partially describes at least one desired item.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules to execute an algorithm which includes the step of receiving certain fields of entered information, (e.g., catalog number, part number, partial text, etc.) to at least partially describe at least one desired item; and structural equivalents thereof.[35]

Defendant's proposed construction is incorrect at least because it incorporates a "local

---

[34] *See, e.g.*, Ex. 2, Col. 7, l. 61-Col. 8, l. 32 ("Once the user has entered such information at least partially describing a desired item . . ., he or she may wish to initiate a search of catalog database 36 to find all the part numbers . . . that match the part number entered"); Col. 8, l. 40- Col. 10, l. 20 (search program 50 searches in catalog database 36 for the item(s) that match the search field communicated; the user will see on the monitor a hit list screen representing matching catalog items located in catalog database 36 as a result of the search). *See also* additional specification support cited in Ex. 1 at 9.

[35] *See, e.g.*, Ex. 4, Col. 5, l. 24-Col. 6, l. 27 "([t]he data passed to the search engine program can be any of vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keywords, …  The fields that are filled with data will assist search program 50 in executing its first search"); Col. 7, l. 66- Col. 8, l. 37 ("The user can next enter desired items and quantities for the requisition….  Once the user has entered such information at least partially describing a desired item…, he or she may wish to initiate a search of catalog database 36 to find all the part numbers… that match the part number entered or other information"). *See also* specification support cited in Ex. 1 at 11.

computer" limitation thereby disregarding the disclosed network embodiment.

8.   **"Means for searching for matching items that match the entered product information in the selected portions of the database" (Claim 1 of the '172 Patent)**

**Function**:  searching for matching items that match the entered product information in the selected portions of the database.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a search engine module to execute an algorithm which includes the steps of:  (1) receiving the entered product information relating to item(s) to be searched; (2) communicating the entered product information to a search engine module; (3) querying certain fields of the item data to locate item records in the selected portions of the database matching the entered product information; and (4) outputting a hit list of items matching the entered product information; and structural equivalents thereof.[36]

Defendant's proposed construction is incorrect for the same reasons as discussed above

with respect to the "means for searching for matching items among the selected product

catalogs."  It should be rejected.

9.   **"Means for generating an order list that includes at least one matching item selected by said means for searching" (Claim 1 of the '172 Patent)**

**Function:**  generating an order list that includes at least one matching item selected by a search engine program.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules to execute an algorithm which includes the steps of:  (1) displaying a hit list of results of a search corresponding to items matching the entered product information; (2) selecting one or more items from the hit list for inclusion in an

---

[36] *See, e.g.*, Ex. 4, Col. 7, l. 66- Col. 8, l. 37 ("Once the user has entered such information at least partially describing a desired item …, he or she may wish to initiate a search of catalog database 36 to find all the part numbers … that match the part number entered"); Col. 8, l. 45-Col. 10, l. 21 (search program 50 searches in catalog database 36 for the item(s) that match the search field communicated; the user will see a hit list screen representing matching catalog items located in the catalog database as a result of the search).  *See also* specification support cited in Ex. 1 at 12**.**

order list; and (3) generating an order list containing data related to the selected matching items; and structural equivalents thereof.[37]

10.    **"Means for building a requisition that uses data obtained from said database relating to selected matching items on said order list" (Claim 1 of '172 Patent)**

**Function:**  building a requisition that uses data obtained from a database relating to selected matching items on an order list.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a requisition module to execute an algorithm which includes the steps of:  (1) transferring data relating to selected matching items included on an order list to a requisition program; and  (2) building a requisition using data from the selected matching items on the order list to populate certain fields on the requisition form; and structural equivalents thereof.[38]

Defendant's proposed construction should be rejected for reasons similar to those

discussed above relating to improper incorporation of hardware such as "local computer" and the

failure to construe the term to cover the networked embodiments described in the specification.

11.    **"Means for processing said requisition to generate purchase orders for said selected matching items" (Claim 1 of '172 Patent)**

**Function:**  processing a requisition to generate purchase orders for selected matching items.

**Exemplary corresponding structure:**  a computer which is programmed with special-purpose software modules including a purchasing module to execute an algorithm which includes the steps of:  (1) accepting the requisition; and (2) generating purchase orders based on the data included in the requisition related to the selected matching items on the order list and based on predetermined rules relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition); and structural equivalents thereof.[39]

---

[37] *See, e.g.*, Ex. 4, Col. 9, l.51- Col. 10, l. 44 (Once a Hit List has been created by the search program, the user can select particular ones of the located catalog items for an Order List); Col. 12, ll. 42-57 ("When in search program 50, particular items selected can be added to an Order List 48…").  *See also* specification support cited in Ex. 1 at 13-14.

[38] *See, e.g.*, Ex. 4, Col. 12, l. 52- Col. 14, l. 14 (Once the user has completely built the Order List, he can transmit it to the requisition program.  The requisition program will use the data relating to the selected matching items on the order list to build the Requisition Item Table).  *See also* specification support cited in Ex. 1 at 14.

[39] *See, e.g.*, Ex. 4, Col. 1, ll. 15-40 (incorporating by reference the disclosure of the '989 Patent including the disclosure related to FIG. 5B); Col. 15, l. 39-Col. 16, l. 4 (Once a requisition has

Again, for the reasons set forth above with respect to the "means for processing the requisition to generate one or more purchase orders," Defendant's proposed construction for this claim term is incorrect as it disregards the specification support in the '172 Patent and the '989 Patent incorporated by reference.  It should be rejected.

## VI.    CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court adopt its proposed claim constructions.

Dated:  January 6, 2010

<table>
<tr><td></td><td>/s/David M. Young</td></tr>
<tr><td>Henry I. Willett, III (VSB #44655)</td><td>David M. Young (VSB #35997)</td></tr>
<tr><td>Craig T. Merritt (VSB #20281)</td><td>Jennifer A. Albert (<em>admitted pro hac vice</em>)</td></tr>
<tr><td><strong>CHRISTIAN & BARTON, L.L.P.</strong></td><td>Scott L. Robertson (<em>admitted pro hac vice</em>)</td></tr>
<tr><td>909 East Main Street, Suite 1200</td><td><strong>GOODWIN PROCTER LLP</strong></td></tr>
<tr><td>Richmond, VA 23219</td><td>901 New York Avenue, N.W.</td></tr>
<tr><td>Telephone:  (804) 697-4100</td><td>Washington, DC 20001</td></tr>
<tr><td>Facsimile:  (804) 697-4112</td><td>Telephone: (202) 346-4000</td></tr>
<tr><td>hwillett@cblaw.com</td><td>Facsimile: (202) 346-4444</td></tr>
<tr><td>cmerritt@cblaw.com</td><td>dyoung@goodwinprocter.com</td></tr>
<tr><td></td><td>jalbert@goodwinprocter.com</td></tr>
<tr><td></td><td>srobertson@goodwinprocter.com</td></tr>
</table>

Lana S. Shiferman (*admitted pro hac vice*)
James D. Clements (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
lshiferman@goodwinprocter.com
jclements@goodwinprocter.com

Counsel for Plaintiff, *e*Plus inc.

---

been accepted, it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3 and the example provided with reference to Appendix IX).  *See also* specification support cited in Ex. 1 at 15.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6[h] day of January, 2010, I will electronically file the foregoing

## PLAINTIFF EPLUS INC.'S OPENING CLAIM CONSTRUCTION BRIEF

With the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com
*Counsel for Defendant Lawson Software, Inc.*


Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com


*Counsel for Defendant Lawson Software, Inc.*


_____/s/_____
David M. Young (VSB #35997)
Counsel for Plaintiff ePlus, Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com