# EXHIBIT 12

FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2007 JAN 19 A 11: 41

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | |
|---|---|
| *e*PLUS, INC., | ) |
| | ) |
| | )   CIVIL ACTION NO. 3:05cv281 (JRS) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAP AMERICA, INC., | ) |
| and SAP AG, | ) |
| | ) |
| Defendants. | ) |

### *e*PLUS'S UNOPPOSED MOTION TO VACATE

Plaintiff *e*Plus, Inc. ("*e*Plus"), by counsel, respectfully moves the Court to vacate its Order on Claim Constructions Pursuant to November 17, 2005 Markman Hearing (Docket No. 112), and further asks this Court to vacate the portion of its Order dated March 20, 2006 (Docket No. 233) as modified by its Order dated March 23, 2006 (Docket No. 288) which granted Summary Judgment that SAP does not infringe the means-plus-function claims of U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent") and 6,505,172 (the "'172 Patent"). The grounds for this motion are more fully set forth in the Memorandum in Support of this Motion, which is filed herewith. Defendants do not oppose this Motion.

Respectfully submitted,

Dated: January 19, 2007

Maya M. Eckstein (VSB # 41413)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8788
Facsimile: (804) 343-4630

Scott L. Robertson
Jennifer A. Albert
Yisun Song (VSB #45881)
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, DC  20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Thomas J. Cawley (VSB # 04612)
David M. Young (VSB #35997)
**HUNTON & WILLIAMS LLP**
1751 Pinnacle Drive, Suite 1700
McLean, VA  22102
Telephone:  (703) 714-7400
Facsimile:  (703) 714-7410

Attorneys for Plaintiff
*e*Plus, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 19th day of January, 2007, a copy of the foregoing *e*PLUS'S **UNOPPOSED MOTION TO VACATE** was delivered:

Via hand delivery and via email transmission to:

Dabney J. Carr, IV, Esq.
Robert A. Angle, Esq.
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219

Via overnight courier and via email transmission to:

Lloyd R. Day, Jr., Esq.
Robert M. Galvin, Esq.
Christopher E. Stretch, Esq.
Julie S. Turner, Esq.
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014

Counsel for Defendants SAP America, Inc.
and SAP AG

FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2007 JAN 19  A 11: 41

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | | |
|---|---|---|
| *e*PLUS, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 3:05cv281 (JRS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAP AMERICA, INC., | ) | |
| and SAP AG, | ) | |
| | ) | |
| Defendants. | ) | |

## *e*PLUS'S MEMORANDUM IN SUPPORT OF ITS UNOPPOSED MOTION TO VACATE

### I. INTRODUCTION

Plaintiff *e*Plus, Inc. ("*e*Plus"), by counsel, respectfully moves the Court to vacate its Order on Claim Constructions Pursuant to the November 17, 2005 Markman Hearing (Docket No. 112) ("Markman Order"; attached as Exhibit A), and further asks this Court to vacate the portion of its Order dated March 20, 2006 (Docket No. 233; attached as Exhibit B), as modified by its Order dated March 23, 2006 (Docket No. 288; attached as Exhibit C) (collectively, the "Summary Judgment Orders"), which granted summary judgment that SAP does not directly infringe the means-plus-function claims of the patents-in-suit. Defendants do not oppose this motion.

*e*Plus sued Defendants SAP America, Inc. and SAP AG ("SAP") for infringement of three patents: 1) U.S. Patent No. 6,023,683 ("the '683 Patent); 2) U.S. Patent No. 6,055,516 ("the '516 Patent"); and 3) U.S. Patent No. 6,505,172 ("the '172 Patent"). On November 17, 2005 the parties presented evidence and arguments on their proposed constructions of the claims of the patents. On January 20, 2006, this Court entered its Markman Order on the claim constructions. Based on the Court's constructions of the means-plus-function claim terms, *e*Plus conceded that

the Defendants do not infringe the means-plus-function claims of the '683 Patent, the '516 Patent
and the '172 Patent, specifically, claims 1-25 of the '683 Patent, claims 16-20 of the '516 Patent
and claims 1-5 of the '172 Patent. Accordingly, the Court granted summary judgment of
noninfringement of those claims. *See* Order dated March 20, 2006 (Docket No. 233) as modified
by Order dated March 23, 2006 (Docket No. 288) ("Summary Judgment Orders"). Thirteen
representative claims from the remaining patent claims were tried before a jury from March 28,
2006 through April 19, 2006. The jury deliberated for five days thereafter, but were unable to
reach a verdict and the Court declared a mistrial. Subsequently, the parties have entered into a
settlement agreement.

## II.  ARGUMENT

Fed. R. Civ. P. 60(b)(6) provides this Court the authority to relieve a party from an order
"[o]n motion and upon such terms as are just" for "any reason justifying the relief from the
operation of the judgment." Further, Fed. R. Civ. P. 54(b) also provides that "any order ...
which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the
parties . . . is subject to revision at any time before the entry of judgment adjudicating all the
claims and the rights and liabilities of all the parties." Therefore, this Court has the express
power to vacate any ruling in this case because no final judgment has been entered.

The orders for which *e*Plus seeks vacatur are the Court's Markman Order, and the
Summary Judgment Orders to the extent they rely upon to the means-plus-function claims that
the Court construed. Such vacatur is requested here because "[w]hen the parties settle, as in the
case at hand, the Federal Circuit lacks jurisdiction to review the Markman Order without a
certified interlocutory appeal." *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp.2d 464,
467 (W.D. Va. 2001). As noted by Judge Dyk of the Federal Circuit in his concurring opinion
in *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003), a district court has the power to

2

vacate its own non-final orders. *Id.* at 1328. Moreover, Judge Dyk recommended this

mechanism as an effective way for parties to a district court settlement agreement to seek to

prevent interim, non-appealable decisions in the litigation from having potential collateral

estoppel effects in future third-party litigation. *Id.* at 1328. Vacatur also serves the desirable

goal of avoidance of ambiguity on the subsequent effect of such orders.

The Supreme Court's analysis in *Markman* is founded on "the promotion of uniformity in

the meaning to be given to a patent claim." *Markman v. Westview Instruments*, 517 U.S. 370,

390-391 (1996). Here, however, there is a previous Markman ruling on the same patents from

another litigation which is inconsistent, in some respects, with this Court's Markman Order. *See*

Memorandum Opinion of U.S.D.J. Leonie M. Brinkema dated January 19, 2005, *ePlus, Inc. v.*

*Ariba, Inc.*, Civil Action No. 1:04cv612 (attached as Exhibit D); *see also* Jury Instruction No. 19,

pp 20-25, provided by Judge Brinkema to the jury during trial which construed the means-plus-

function claim terms for the jury (attached as Exhibit E).[1] Thus, reasonable minds have differed

---

[1] For example, with respect to the claim term "means for searching for matching items among the selected product catalogs" found in claims 1 and 3 of the '683 Patent, the Court in *ePlus, Inc. v. Ariba, Inc.*, Civil Action No. 1:04cv612 (E.D. Va. 2005) held that the claimed function recited is "searching for matching items among the selected product catalogs." The Court further held that exemplary corresponding structure, material and acts described in the patent specification for performing the claimed function are search programs and modules operating on a computer system with access to item data in a database or other file system; and their equivalents. *See* Jury Instruction No. 19 in *ePlus, Inc. v. Ariba, Inc.* (Ex. E at 21). This construction is fully supported by the patent specification. *See, e.g.*, '683 Patent, Col. 4:1-Col. 6:38; Col. 7:61-Col. 12:37; FIGS. 1-2; Appendices III-V and VII (describing, with respect to FIG 1A, local computer 20, search program 50, search engine TV/2 with access to catalog database 36 and, with respect to FIG 1B, server 200 having search program 250 with access to catalog databases 236; each embodiment conducting searches and retrieving item data in response to matching criteria of queries, such as, for example, queries based upon vendor name, vendor part (catalog) number, price keyword and/or other similar queries).

In contrast, this Court construed the same claim term to mean:

**Means for searching items among the selected product catalogs:**

Function:  Searching for matching items among the selected product catalogs.

(continued...)

on the proper claim construction, yet settlement prevents the Federal Circuit from reconciling or providing uniformity as to the meaning of these patent claims.

Moreover, this Court's Markman Order is at odds with the evidence adduced at trial. For example, each of the Court's means-plus-function claim constructions requires that the recited

---

Means:  Two means for searching for matching items are disclosed:

1.    A software means initiated from requisition/purchasing system (40 or 240) running on local computer (20 or 220) that consists of the following steps:

      a.    entering certain search criteria (*e.g.*, catalog number, part number, or partial text) relating to items(s) to be searched into requisition/purchasing system (7:48-55; 7:61-8:2; 8:22-26);

      b.    communicating the search criteria from requisition/purchasing system (40 or 240) to catalog search program (50 or 250) running on same local computer via the DDE protocol of interface (60) (8:37-9:8);

      c.    searching catalog database (36 or 236) via catalog search program (50 or 250) based on the search criteria received from requisition/purchasing system (9:34-37);

      d.    if more than one search criterion is received, catalog search program prioritizes search as follows:  (a) part (catalog) number, (b) keyword, and (c) page number, stopping at highest priority search criteria resulting in a match (6:14-22); and

      e.    displaying via catalog search program a hit list of search results (9:39-45).

2.    A software means initiated from shell program (52 or 252) running on local computer (20 or 220), that consists of the following steps:

      a.    displaying a search screen on the monitor of local computer (12:4-12; Appendix VII);

      b.    entering search criteria (*e.g.*, catalog page number, keyword, part number) for item to be searched (9:12-14; 12:12-24);

      c.    searching catalog database (36 or 236) via catalog search program (50 or 250) running on local computer based on data received from shell program (52) (9:34-37);

      d.    if more than one search criterion is received, catalog search program prioritizes search as follows:  (a) part (catalog) number, (b) keyword, and (c) page number, stopping at highest priority search criteria resulting in a match (6:14-22); and

      e.    displaying via catalog search program a hit list (47) of search results (9:39-45; 12:27-29, Appendix III).

*See* Markman Order at 2-3.

means execute on a "local computer." *See, e.g.,* Markman Order at 2 defining "means for selecting the product catalogs to search" as requiring either "a software means initiated from catalog search program (50 or 250) *running on a local computer (20 or 220)*" or "a software means initiated from requisition/purchasing system (40 or 240) *running on a local computer (20 or 220)*"; and at 2-3 defining "means for searching for matching items among the selected product catalogs" as either "a software means initiated from requisition/purchasing system (40 or 240) *running on a local computer (20 or 220)*" or "a software means initiated from shell program (52 or 252) *running on a local computer (20 or 220)*"; and at 3-4 defining "means for building a requisition using data relating to selected matching items and their associated source(s)" as requiring "a software means initiated from requisition/purchasing system (40 or 240) *running on local computer (20 or 220*)."

However, the evidence adduced at trial established that the inventions of the patents-in-suit are not limited to operating only on a local computer. There are networked embodiments of the systems disclosed in the patents. For example, it was undisputed that FIGURE 1B of the patent specification describes a client/server networked embodiment of the patented inventions. FIGURE 1B shows that the catalog databases 236 are maintained on the file server 200, and catalog search program 250 is shown as connected to the server computer 200, rather than to the local computer 220. *See* '683 Patent, FIG. 1B; Col. 17:6-10 ("file server 200 is a large personal computer, a work station or a mini-computer such as an IBM AS/400. Alternatively, the server 200 and a mini-computer (such as an IBM AS/400) can be independently connected to each local computer 200."). *See also* Trial Transcript at 196:5-14 (Momyer Direct); 198:13-20 (Momyer Direct) (the FIG 1B client/server embodiment is a networked embodiment; "you could log on remotely to the system, enter the information locally, and it would communicate [to] the

programs that were running on a server."); Trial Transcript at 359:2-361:10 (Johnson Direct) (describing FIG. 1B client/server embodiment) Trial Transcript at 198:13-20 (Momyer Direct) ("A server is a computer that houses on its programs or data that the client component that's running on a remote PC interacts with. So the actual programs are running on the server as well as the data.)[2]

Even Defendants' experts conceded as much during their testimony. *See, e.g.*, Trial Transcript at 1375:22-1376:9 (Menascé Direct)(acknowledging that description of networked embodiment is included in the patent specification); Trial Transcript at 1654:9-18 (Menascé Cross)(acknowledging that FIG. 1B is a networked environment).

The patent specification describes that, in this client/server networked embodiment illustrated in FIG. 1B, the search program 250 and catalog databases 236 are maintained on the server computer 200. Additionally, the specification describes that "[s]erver 200 maintains complete requisitions 242 in a manner similar to the manner in which local computer 20 maintains requisition databases 42 in the embodiment shown in FIG. 1A." '683 Patent, Col. 17:19-22. According to James Johnson, one of the inventors of the patents-in-suit, this passage indicates that, with reference to the requisition/purchasing program 240, the local computer is only running the graphical user interface of the requisition/purchasing program 240, whereas the business logic for the complete requisitioning process runs on the server computer 200 rather than the local computer.

In other words, the requisition/purchasing program was expressly described in the patent specification as a distributed application rather than one limited to running only on the local computer. Trial Transcript at 359:2-361:10 (Johnson Direct). *See also* Trial Transcript at

---

[2] Excerpts of the Trial Transcript are attached as Exhibit F.

2732:6-2733:1 (Weaver Direct, Rebuttal Case) (concurring with Mr. Johnson).  Thus, constructions limiting the patent claims to systems running solely on a local computer are contrary to the patent specification and the evidence adduced at trial including even the testimony of Defendants' expert.[3]

Additionally, the Court's constructions of the means-plus-function claim terms limit the claims to software modules that communicate via the Dynamic Data Exchange (DDE) protocol, a protocol for communication using memory of a single computer.  *See, e.g.,* Court's constructions of claim terms "means for searching for matching items among the selected product catalogs" specifying that such means "commuicat[es] the search criteria from requisition/purchasing system (40 or 240) to catalog search program (50 or 250) running on same local computer *via the DDE protocol of interface (60)*" (Markman Order at 3); and the Court's construction of "means for building a requisition using data relating to selected matching items and their associated source(s)" which requires that such means "transmit[] data from order list (48) to requisition/purchasing system running on same local computer (20 or 220) *via the DDE protocol of interface.*"  (Markman Order at 4).[4]  Such a communication protocol cannot be used in a networked environment.  Again, even Defendants' expert conceded as much.  *See* Trial Transcript at 1537:20-24 (Menascé Direct)("DDE is a specific communications protocol for two programs running on the same machine.").

---

[3]  Because there is at least one claim element in each of the means-plus-function claims that has been construed as limited to a local computer environment, this issue affects each of the means-plus-function claims of the patents-in-suit: claims 1-25 of the '683 Patent, claims 16-20 of the '516 Patent and claims 1-5 of the '172 Patent.

[4]  Again, because there is at least one element in each of the means-plus-function claims that has been construed in this manner, this issue affects each of the means-plus-function claims of the patents-in-suit.

The evidence adduced at trial established that the patent specification describes several different communications protocols other than the DDE protocol that a person of ordinary skill in the art would have appreciated could have been employed to communicate and transmit data between the software modules of the patented systems. Indeed, in the case of the networked embodiment described in the patent specification and illustrated in FIG. 1B, the DDE protocol could not have been used for all data transmission since this embodiment includes multiple networked computers. Moreover, even in the embodiment of the inventions illustrated in FIG. 1A, the patent specification describes communications protocols other than the DDE protocol as being employed.

For example, the system description from the inventors' earlier U.S. Patent No. 5,712,989 (the "'989 Patent"), which is expressly incorporated by reference into the specification of the patents-in-suit (*See* '683 Patent, Col. 1:10-17; PX 116 ('989 Patent; attached as Exhibit G); Trial Transcript at 1374:20-1375:5 (Menascé Direct); Trial Transcript at 1619:21-1620:11 (Menascé Cross); Trial Transcript at 2727:17-2729:8 (Weaver Direct, Rebuttal Case)), provides descriptions of additional protocols for communications between software applications executing on different computers. For example, the system described in the '989 Patent, in one embodiment, includes a host computer 10 which is linked via modems 12 and 44 to the remotely-located local computer 40, as shown in FIG. 1. Host computer 10 and local computer 40 are linked in a network employing the formats and protocols of IBM's Systems Network Architecture (SNA). *See* '989 Patent, Col. 2:67-Col. 3:3. As noted above, Defendants' expert did not disagree.

It was also undisputed that the specification of the patents-in-suit also expressly describes IBM's SNA communications protocols as suitable for use in connection with the patented

inventions. '683 Patent, Col. 5:9-17 (describing host computer 10 and local computer 20 as being linked in a network employing the formats and protocols of IBM's System Network Architecture); Trial Transcript at 2726:16-2727:16 (Weaver Direct, Rebuttal Case); Trial Transcript at 1655:5-1656:16 (Menascé Cross); Trial Transcript at 1558:24-1559:5 (Menascé Direct) (acknowledging that the patent specification refers to the use of SNA network communications protocols for communication of data between two different networked computers).

The '989 Patent further provides that the local computer 40 can be a workstation which includes a multi-protocol adapter communications card, capable of supporting the LU.6.2 communications protocol. '989 Patent, Col. 4:4-11. *See also* Trial Transcript at 2722:1-2732:5 (Weaver Direct, Rebuttal Case). A person of ordinary skill in the art would understand from this description that data can be exchanged between the host computer 10 and the networked, remotely-located local computer 20 in the systems of the patents-in-suit using the LU.6.2 communications protocol (and not the DDE communications protocol). The LU.6.2 communications protocol enables the transfer of packets of data blocks between the software application executing on the local computer 20 and the software application executing on the host computer 10. '989 Patent, Col. 4:53-67; Trial Transcript at 2722:1-2732:5 (Weaver Direct, Rebuttal Case). Dr. Weaver further testified that the LU.6.2 communications protocol could have been employed in the networked embodiment illustrated in FIG. 1B of the patents-in-suit. Trial Transcript at 2734:15-2742:2 (Weaver Direct, Rebuttal Case). The inventors confirmed that they indeed made use of the LU.6.2 communications protocols in connection with the commercial applications of the patent inventions. Trial Transcript at 362:1-363:23 (Johnson Direct).

The '989 Patent also describes a system wherein a requisition program operating on the host computer 10 can receive input relating to an item to be requisitioned from a remotely-located local computer 40 in electronic form over a network through a telephone line. '989 Patent, Col. 6:43-47. It was conceded that the specification of the patents-in-suit also expressly describes the use of the telecommunications network and its protocols for transmission of data between two networked computers in the systems of the patented inventions. '683 Patent, Col. 17:23-33 (describing each local computer as being connected to host computer 210 via a phone/dataline); Trial Transcript at 1656:17-1658:7 (Menascé Cross)(acknowledging that the patents-in-suit describe the use of the Virtual Telecommunications Access Method Communications Network for communication of data between a customer's computer system and a supplier's computer system in connection with the patented inventions).

It was also undisputed that both the '989 Patent and the specification of the patents-in-suit expressly describe that an additional communications protocol, namely electronic data interchange (EDI), can be used for transmissions of requisition data and other data between local computer 40 and host computer 10 using an ERI/EDI interface. '989 Patent, Col. 36:57-62; '683 Patent, Col. 15:45-49 (describing use of EDI communications protocols); Trial Transcript at 1625:4-1626:6 (Menascé Cross).

Dr. Weaver testified that a person of ordinary skill in the art would have understood from review of the specification of the patents-in-suit (including the '989 Patent specification expressly incorporated by reference therein) that each of these various communications protocols could be employed in the patented systems and that such systems were not limited to use of the DDE communications protocol for data transmission. *See* Trial Transcript at 2722:1-2732:5; 2734:15-2742:2 (Weaver Direct, Rebuttal Case).

Therefore, the evidence at trial established that a person of ordinary skill in the art reading the specification of the patents-in-suit, which expressly incorporates by reference the specification of the '989 Patent, would have understood that the electronic sourcing systems of the patented inventions could have been implemented in a manner such that the software modules need not execute on the same local computer communicating via the DDE communications protocol. The specification of the patents-in-suit expressly describes means for achieving communications between a software application executing on a local computer and another application executing on a different networked computer other than the DDE protocol. As such, the claims should not be construed as limited to use of the DDE communications protocol.

The exceptional circumstances set forth above make it proper and just to vacate the Markman Order and the Summary Judgment Orders, to the extent they are based upon that Markman Order.

### III. CONCLUSION

Because the Court's Markman Order is not appealable and could have a chilling effect on the resolution and settlement of patent litigation, and because there is a previous Markman ruling which is inconsistent with this Court's Markman Order, and because the evidence adduced at trial, and conceded by Defendants, conflicts with the Court's Markman Order, it is in the interests of justice that the Court's Markman Order (Docket No. 112), and the Summary Judgment Orders (Docket Nos. 233 and 288), as they depend on the means-plus-function claim construction of the patents-in-suit, be vacated.

Respectfully submitted,

Dated:  January 19, 2007

Maya M. Eckstein (VSB # 41413)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8788
Facsimile:  (804) 343-4630

Scott L. Robertson
Jennifer A. Albert
Yisun Song (VSB #45881)
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, DC  20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Thomas J. Cawley (VSB # 04612)
David M. Young (VSB #35997)
**HUNTON & WILLIAMS LLP**
1751 Pinnacle Drive, Suite 1700
McLean, VA  22102
Telephone:  (703) 714-7400
Facsimile:  (703) 714-7410

Attorneys for Plaintiff
*e*Plus, Inc.

12

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 19th day of January, 2007, a copy of the foregoing *e*PLUS'S **MEMORANDUM IN SUPPORT OF ITS UNOPPOSED MOTION TO VACATE** was delivered:

Via hand delivery and via email transmission to:

Dabney J. Carr, IV, Esq.
Robert A. Angle, Esq.
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219

Via overnight courier and via email transmission to:

Lloyd R. Day, Jr., Esq.
Robert M. Galvin, Esq.
Christopher E. Stretch, Esq.
Julie S. Turner, Esq.
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014

Counsel for Defendants SAP America, Inc.
and SAP AG