# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EPLUS, INC.,                          )
                                      )
            Plaintiff,                )
                                      )
     v.                               )          No. 1:04cv612
                                      )
ARIBA, INC.,                          )
                                      )
            Defendant.                )

## MEMORANDUM OPINION

The Court has heard argument on Plaintiff's Motion for
Partial Summary Judgment of Patent Infringement by Defendant
Ariba, Inc. of U.S. Patent Nos. 6,023,683, 6,055,516 and
6,505,172 and Defendant's Motion for Summary Judgment of Non-
Infringement and Partial Summary Judgment of Invalidity of
United States Patent Nos. 6,023,683, 6,055,516 and 6,505,172.
The argument also encompassed the parties' positions regarding
claim construction.

For the reasons stated from the bench, both parties'
Motions have been denied, as there remain disputed issues of
material fact. The following Memorandum Opinion sets forth the
Court's resolution of the claim construction issues. Plaintiff
has selected to focus the litigation on eight of the seventy-
nine claims it alleges defendant infringes through its Ariba
Buyer product, as well as through its former Ariba Marketplace
product and its Category Procurement line of products. The
Court has similarly limited the trial and the following

ePLUS0232958

discussion to those eight claims.

## Factual Background

Plaintiff ePlus, a Delaware corporation with its principal place of business in Herndon, Virginia, provides electronic sourcing and procurement software, services, systems and methods. Defendant Ariba is a Delaware corporation with its principal place of business in California that engages in a similar business.

Plaintiff has filed a three-count Complaint, alleging in Counts I, II and III, respectively, that defendant infringes U.S. Patent Nos. 6,023,683, 6,055,516 and 6,505,172, which are collectively termed the "Electronic Sourcing System Patents."[1] Plaintiff alleges that defendant's products and services directly and/or indirectly infringe various claims of the patents. Three months after filing its original Complaint, plaintiff amended the Complaint by adding an allegation of willful infringement because defendant continued its allegedly infringing activities after having been put on notice of plaintiff's patent rights. Plaintiff seeks: (1) a declaration that the patents at issue are valid and enforceable against and infringed by defendant, (2) injunctive relief preventing defendant from continuing to sell infringing products and

---

[1] The patents, issued respectively in February 2000, April 2000 and January 2003, will be referred to as the `683, the `516 and the `172.

2

ePLUS0232959

services, (3) an accounting and award of damages of no less than reasonable royalties plus interest and costs for past infringement, (4) pre- and post-judgment interest and costs pursuant to 35 U.S.C. § 284 and (5) attorneys' fees pursuant to the same statue's provision for an exceptional case.

Defendant has filed a six-count Counterclaim seeking declaratory judgment of non-infringement and invalidity of each of the patents. Defendant seeks, among other remedies, a declaration that the patents are invalid and that defendant has neither infringed nor caused others to infringe any of the patents, plus attorneys' fees under the exceptional case provision of 35 U.S.C. §285.

All three patents at issue are related to electronic sourcing systems that enable users in the commercial procurement market to search for, requisition and procure items from multiple vendors or sources. The allegedly infringing products of Ariba are its software and services offered under the name "Enterprise Spend Management" solutions, including its Supplier Network; its electronic procurement and sourcing products, most notably Ariba Buyer ("Buyer"); and its Category Procurement line of solutions, of  which plaintiff alleges Buyer is a part.[2]  At the core of these patents and products is

---

[2] Plaintiff also alleges infringement by Ariba Marketplace, a product that Ariba no longer markets but from which it allegedly still earns revenue for licensing and support services.

3

ePLUS0232960

the ability of a user to access and search for items among
multiple supplier catalogs, or sources, select among the items
located, generate requisitions and purchase orders for the
selected items and determine whether those purchase orders are
capable of being filled immediately from existing inventory or
must be directed to alternate suppliers or back ordered.

### Legal Principles of Claim Construction

Although not all of the complex procedural and substantive
nuances involved in a district court's construction of claims
are completely settled, see e.g., Philips v. AWH Corp., 376
F.3d 1382, 1382-83 (Fed. Cir. 2004)(order granting petition for
rehearing en banc and inviting further briefing on issues
concerning claim construction procedure generally), the Federal
Circuit has provided a framework, and express guidance, for the
construction of claims.

Under the Federal Circuit's framework, to ascertain the
meaning of a patent's claims, a court must turn first to the
intrinsic evidence within the patent, including the claims
themselves, the written description and the prosecution
history. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359,
1366 (Fed. Cir. 2002)("Claim interpretation begins with the
claims themselves, the written description, and, if in
evidence, the prosecution history."); Vitronics Corp. v.
Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  When

4

evaluating the intrinsic evidence, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of invention." Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1367 (Fed. Cir. 2003). In fact, there is a heavy presumption that a claim term carries its ordinary and customary meaning as it would be understood by one of ordinary skill in the relevant art at the time of the invention. Zelinski v. Brunswick Corp., 185 F.3d 1311, 1315 (Fed. Cir. 1999).

Although reference to the language of the claims and the written description is paramount, Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998), the prosecution history also provides a particularly helpful reference, as it "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." Vitronics, 90 F.3d at 1582-83.

Only where it remains unable to ascertain meaning from such intrinsic evidence should a court turn to extrinsic evidence, such as expert testimony. Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001). In most situations, resort to extrinsic evidence is unnecessary and improper, as "an analysis of the intrinsic evidence alone will resolve any ambiguity in a

5

ePLUS0232962

disputed claim term." <u>Vitronics</u>, 90 F.3d at 1582.

A court must exercise particular care when interpreting claims in light of the specification, as "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Although it is improper to read a limitation from the specification into the claims, <u>Comark Communications</u> at 1186 (Fed. Cir. 1998), "[c]laims must be read in view of the specification, of which they are a part." <u>Markman</u>, 52 F.3d at 979; <u>see also</u> <u>United States v. Adams</u>, 383 U.S. 39, 49 (1966)("[C]laims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.").

**Discussion**

I.  <u>The Claims At Issue</u>

As noted above, ePlus narrowed the scope of its Motion for Summary Judgment by focusing on eight claims, which share many common limitations. The Court has narrowed the trial to these same claims.

**'683 Patent**
**Claim 1**
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items associated with the respective sources;

means for selecting product catalogs to search;

6

means for searching for matching items among the selected product catalogs;

means for building a requisition using data related to selected matching items and their associated source(s);

means for processing the requisition to generate one or more purchase orders for the selected matching items; and

means for determining whether a selected matching item is available in inventory.

**Claim 14**
An electronic sourcing system comprising:

data relating to items associated with at least two sources maintained so that selected data may be searched separately;

means for searching for matching items among the selected data;

means for building a requisition using data relating to selected matching items and their associated source(s);

means for processing the requisition to generate purchase orders using data relating to the selected matching items and their associated source(s); and

means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

**Claim 31**
A method comprising the steps of:

maintaining a database containing data relating to items associated with at least two sources;

searching for matching items among the data relating to the items;

building a requisition using data relating to selected matching items and their associated sources;

processing the requisition to generate purchase orders using data relating to the selected matching items and their associated source(s); and

7

ePLUS0232964

converting data relating to a selected matching item and an
associated source to data relating to an item and a different
source.

**'516 Patent**
**Claim 16**
An electronic sourcing system comprising:

at least two product catalogs containing data relating to items
such that an item in a first catalog is generally equivalent
with an item in a second catalog; and

converting means for converting data relating to said item from
said first catalog to data relating to said item from said
second catalog.

**Claim 17**
An electronic sourcing system as recited in Claim 16, wherein
at least one catalog database contains said data from each of
said catalogs, and said converting means includes a non-catalog
database containing a cross-reference table such that use of a
reference code corresponding to an entry in said cross-
reference table such that use of a reference code corresponding
to an entry in said cross-reference table links said item from
said first catalog to data relating to said item from said
second catalog.

**Claim 21**
An electronic sourcing system comprising:

a requisition module including data fields, user-generated
criteria entered into at least one of said data fields to
generate at least partial criteria corresponding to a desired
item;

a catalog collection searching module, said searching module
including a collection of catalogs of items stored in an
electronic format, a catalog selection criteria used to select
less than said entire collection, said searching module being
used to generate additional search-module criteria for said
data fields of said requisition module;

a multiple purchase order generation module, said purchase
order generation module creating multiple purchase orders from
a single requisition created with said user-generated criteria
and said search-module criteria;

wherein each of at least two catalogs include a generally

8

ePLUS0232965

equivalent item from a different source, said requisition
module working in combination with said catalog searching
module to determine multiple sources for said item;

wherein said multiple sources is limited by said catalog
searching module providing a match according to said user-
generated criteria, said search-module criteria and a
determination system that located items are generally
equivalent; and

wherein said determination system includes a cross-reference
table matching an identification code from a first located item
with a second identification code from a second located item.

**'172 Patent**
**Claim 1**
An electronic sourcing system comprising:

a database containing data relating to items associated with at
least two vendors maintained so that selected portions of the
database may be searched separately;

means for entering product information that at least partially
describes at least one desired item;

means for searching for matching items that match the entered
product information in the selected portions of the database;

means for generating an order list that includes at least one
matching item selected by said means for searching;

means for building a requisition that uses data obtained from
said database relating to selected matching items on said order
list;

means for processing said requisition to generate purchase
orders for said selected matching items.

**Claim 5**
The electronic sourcing system according to Claim 1, further
comprising means for determining whether a selected matching
item is available in inventory.

        Within these claims, three primary issues of construction

9

ePLUS0232966

form the basis for the parties' disputes.[3]

A.     Searching Within Selected Product Catalogs

Central to the patents at issue are claims that require a "means for selecting product catalogs to search," a "means for searching for matching items among the selected data," and/or a variation on this concept of selecting portions of the catalog collection and searching only within those selected portions.[4] ('683 Claims 1, 14; '516 Claim 21; '172 Claim 1.)   The parties essentially do not dispute that the claims require the searches to be conducted on portions, rather than the entirety, of the data.[5]   They do contest one aspect of what it means to "select"

---

[3] Claim construction has been especially difficult in this case because so much of the parties' pleadings dispute not the meaning of a particular claim but rather whether defendant's products infringe a given claim.

[4] Some of the claims at issue pertain to selecting and searching within catalogs, while others pertain to selecting and searching within data.   The underlying concept of searching within a selected universe remains consistent, however, and this Opinion's discussion of this concept applies equally to each type of claim.

[5] Ariba discusses the prosecution history of ePlus's patents with regard to this limitation and asserts that plaintiff gave up all claims to systems that do not have the capability of "choosing to search selected portions only."   As a result, defendant argues that any combination of the selecting and searching functions in claim construction would eviscerate the limitation that the system can search selected portions of the data separately.
ePlus does not contend that searching part of the data is the same as searching the entirety and does not dispute that its patents cover only systems that allow the user to select just portions of the data to search.   Rather, ePlus maintains that Buyer can perform this function.

10

a portion of the catalogs or data, as well as whether the "selection" element must be performed before the "searching" element. However, for the most part, the parties' dispute focuses on whether Ariba's products have these capabilities.[6]

### 1. Concantenation

One limited area of dispute concerns whether "selection" of a portion of catalogs requires concantenation of the catalogs to be searched. Ariba asserts that this element requires a system that concantenates, or connects, the selected catalogs, thereby excluding those that are not selected and searching within the remaining, selected group. Defendant bases its argument on the patents' description of the structure for either the "means for selecting" or the "means for searching" limitation. Plaintiff argues that proper construction of this limitation requires only that the system contain an interface, catalog module and search module that together allow the user to identify and select catalogs to search--not a process of concantenation to exclude other catalogs.

The Court finds no support in the plain language of the patents for Ariba's proposed construction. To "concantenate"

_____

[6] The bulk of the parties' oral arguments addressed whether Buyer's catalog or search methodology, or the combination thereof, satisfies the limitations regarding selecting and searching portions of the catalog data. This Opinion addresses only the dispute regarding actual claim construction.

11

ePLUS0232968

means "to connect in a series or chain." <u>Webster's II: New</u>
<u>Riverside University Dictionary</u> 293 (1994). The description of
the system underlying the patents at issue does use this term
in detailing the selection of more than one catalog and the
subsequent search only within those catalogs selected.
However, in that context, the Court finds that "concantenate"
is used simply to mean that the selected catalogs are searched
as a group. The other catalogs by definition are not searched,
but to consider them "excluded" and the selected catalogs
"joined" is not required, nor is it relevant to the benefits
claimed by the patents. Further, as plaintiff points out, the
claim language does not even require that the selected catalogs
be maintained in the same database; '516 recites a "collection
of catalogs . . . stored in separate databases." By
definition, catalogs stored in separate databases cannot be
concantenated. Finally, the "selecting" and "searching" claims
contemplate a system through which a user could select just one
catalog to search from the two or more that are available; this
clearly would not involve concantenation of the selected
catalogs. For all of these reasons, the Court will not read
into the patents' "selecting" and subsequent "searching"
limitations a more specific requirement regarding the
concantenation of the selected catalogs.


12

ePLUS0232969

2.   Order of "Selecting" and "Searching"

Ariba also contends that the plain language of the claims requires that the "selecting" and "searching" functions be performed separately and that the selecting occur first. Relatedly, defendant argues that two distinct limitations, searching and selecting, cannot be satisfied by a single functional capability.  ePlus asserts that the order in which selecting and searching are performed is irrelevant because the claims at issue address a system, which focuses on the cumulative result produced by multiple processes, not the order of those processes.  Plaintiff also contends that two limitations can in fact be satisfied by a single functional capability, contrary to defendant's argument above.  See Intellectual Property Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308, 1320 n.9 (Fed. Cir. 2003).

The Court agrees with plaintiff that as a general proposition, patent law does not require the elements of a system claim to occur in a particular order, unless that order is recited in the claims.  See Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2001). However, such a requirement can be implicit in the language of the claims.  See id.  Although the claims at issue do not recite an order, the plain language of the patents clearly implies that the selection of what is to be searched must occur

13

ePLUS0232970

before any search. Otherwise, there would be no "selected catalogs" for the system to search "among." Thus, the Court finds that the "selecting" elements must occur before the "searching" elements of plaintiff's system claims. The Court finds, however, that the Federal Circuit precedent cited by plaintiff clearly establishes that "selecting" and "searching" need not be performed by separate functional capabilities. See Intellectual Property Dev., 336 F.3d at 1320 n.9. ("[W]e see no reason why, as a matter of law, one claim limitation may not be responsive to another merely because they are located in the same physical structure.").

B.   Determining Whether a Product is Available in
     Inventory

Patents '683 and '172 require a "means for determining whether a selected matching item is available in inventory." ('683 Claim 1, '172 Claim 5.) The parties dispute whether the term "available in inventory" would cover a system that sends status messages, such "order confirmations" indicating whether an order has been accepted, rejected or "back ordered." Ariba argues that a "means for determining whether a selected matching item is available in inventory" would not cover a system that sent a "back ordered" message. ePlus, however, argues (1) that "back ordered" plainly means "not available in inventory but promised to be shipped at a later date" and (2)

14

ePLUS0232971

that the term is defined in this manner in Buyer's own master
glossary.  ePlus also claims that the term "back order" is used
as an example in the patents' specifications regarding
inventory checks.

The Court finds that based on both the plain language of
the patents and common sense usage of the term, a message that
an item is on "back order" clearly refers to whether that item
is presently available in inventory.

### 1.   Timing of Inventory Check

Ariba acknowledges that the claims at issue do not require
that inventory be checked before an order is placed but
contends that during the prosecution history of these patents,
plaintiff conceded this timing sequence.  First, defendant
argues that by defining the inventory check as being performed
on "selected matching items," further described as "requisition
items," ePlus necessarily included in its claims a requirement
that the inventory check occur after the items had been
selected for ordering.  Ariba also argues that plaintiff added
an explicit limitation during the application process to
distinguish its claims from the Dworkin patent and that this
limitation required the inventory check to occur before the
generation of the purchase order.  Ariba supports this argument
with a quote from the prosecution history, in which the
applicant explained that its claimed system "include[d]" the

15

ability to check inventory before ordering.

ePlus again maintains that the timing of included elements is irrelevant with regard to the system claims unless the order is recited, which it is not in these patents.[7] In addition, plaintiff notes that the inventory element is recited last in each of the system claims in which it appears. Regarding the method claims, ePlus quotes the same language from the prosecution history as did Ariba, but explains that the applicant simply stated that the system "include[d]" the ability to check inventory before the purchase order, not that it required that functionality. In so stating, ePlus contends that the applicant was simply giving a detailed description of its system's various inventory capabilities as compared to the Dworkin patent, which did not allow for an inventory check at all. Finally, ePlus maintains that the specification also supports its position that the claims allow for inventory to be checked at any time by pointing to the patents' description of a function key that can prompt the inventory check in the system under discussion and noting that this key could be operated either before or after the user placed an order.

The Court again agrees with the plaintiff's view that under established patent law, a particular order is not normally read into the steps comprising a system or apparatus

---

[7]    In making this argument, ePlus asserts that Ariba erroneously characterizes these as means claims.

16

claim. However, in this instance, given that the user
interfaces with the system at various junctures during the
system's operation, the sequence of elements that impact upon
the user's interactions can be relevant to the operation,
usefulness and originality of that system. As such, although
the plain language of the claims at issue does not require that
the inventory occur at a given stage of the process, the Court
finds that the inventors clearly contemplated and presented for
acceptance to the PTO a system that allows, but does not
require, inventory to be verified before the user places an
order. The applicants' statement that the system "include[d]"
the ability to check inventory before ordering was made in the
context of distinguishing the invention from prior art on that
ground. Although Dworkin did not allow for any type of
inventory check, the applicants' statement of their invention's
originality unambiguously touted the ability to check inventory
before generating a purchase order. The applicants'
accompanying explanation makes this intended meaning even
clearer, as they asserted that unlike in prior art, a user of
their system need not generate purchase orders for items that
were out-of-stock with one vendor when another had them in
inventory. In addition, as noted by defendant, the prosecution
history describes the inventory checks as being done on
"requisition items" before the user submits a purchase order.

17

(Response to First Office Action; Jeffay Decl. Ex. 7 at 11.) Accordingly, the Court holds that Claim 1 of '683 and Claim 5 of '172 must allow the user to check inventory at any time, including before an order is placed.

   C.   Means for Converting Data Relating to Matching Items

   Patents '683 (Claims 14 and 31) and '516 (Claims 16 and 17) include a "means for converting data relating to selected matching items" retrieved from a user's search.  The parties vigorously contest the meaning of this limitation, in addition to disputing whether Ariba's products possess this functionality.

      1.   Converting Defined

   Ariba argues that the term "converting" should be construed as it applied to Fisher Technologies' system, which could automatically replace the product a user selected with a comparable product from another manufacturer.  Defendant bases this argument primarily on the legacy of this Fisher product but also maintains that the common meaning of "to convert" means "to change."   ePlus argues that "changing" is not mentioned in or contemplated by the patents' plain language.[8]

_____

   [8] ePlus also takes issue with defendant's uniform application of the term "converting" across all claims that discuss "cross-referencing" limitations, arguing that defendant has applied the prosecution history for "converting" broadly and without regard for whether it relates to the plain language of a particular element.  ePlus argues that in this way, defendant attempts to dispose improperly of an entire group of claims that

18

Instead, plaintiff argues that "converting" an item simply refers to a system's ability to "cross-reference" comparable items from other suppliers at the user's request by employing universal product commodity classification codes[9] and corresponding hierarchical trees.[10] As such, ePlus disagrees with defendant's assertion that plaintiff had to restrict the converting limitation to what existed in Fisher's system to avoid the claims of Dworkin, which ePlus concedes used keywords to search by product category. Plaintiff instead maintains that its "converting" claim is distinguishable from Dworkin because it recites a process for identifying suitable replacement items after the initial search, as through commodity codes.

The Court accepts the definition of "conversion" offered by plaintiff: "The process of changing from one form or format to another; where information is concerned, a changeover that

---

should be differentiated based on the specific language and requirements of each one.

[9] The specific codes employed by Buyer are the United Nations Products and Services Classification ("UNSPSC") codes.

[10] ePlus accepts as consistent with its own construction of "converting" data through cross-reference tables Ariba's expert's definition of a "cross-reference table": an "orderly arrangement of data for referencing one part of a book, index, catalog etc. to another part containing related information." (Pl.'s Opp'n at 5(quoting Jeffay Decl. ¶ 56.))

ePLUS0232976

affects form but not substance."[11]  Microsoft Computer Dictionary 129 (5th ed. 2002).  Regarding the patents at issue, the Court reads this definition alongside the definition of a "conversion table": "A table listing a set of characters or numbers and their equivalents in another coding scheme."  Id.  The Court also accepts the definition of "equivalent" for these purposes to be: "Having identical or similar effects; [c]orresponding or practically equal in effect."  Webster's II: New College Dictionary 381 (1995).

The plain language of the patents makes no reference to whether either "converting" or "cross-referencing" must be done automatically by the system or whether it may be prompted by the user's action.  The prosecution history, however, discusses the system's ability to facilitate orders of an item from a different supplier as working hand-in-hand with the inventory check.  This combination implies that the applicants contemplated a system through which a user could check the availability of an item and then use "cross-referencing" tools to "convert" that selection to a comparable, or equivalent, item if the first item was not immediately available.  The prosecution history describes this feature as distinguishing prior art in that the system allows the user to order an

---

[11] This definition also is not inconsistent with defendant's contention that "to convert" means "to change."

ePLUS0232977

identical or suitable replacement item from a vendor other than the vendor whose matching item the user originally selected.[12] The discussion in the prosecution history does not require that the system "convert" such items automatically, as did the Fisher technology. As such, the Court finds that "converting" does not require the automatic replacement of ordered items and can be satisfied by user-initiated replacements of selected matching items, which the system accomplishes through cross-referencing tables.

## 2. Timing of Converting

Ariba argues that "searching for matching items" cannot also qualify as "converting" items because Claims 14 and 31 of patent '683 use these terms to describe separate actions. In addition, defendant maintains that searching by classification code refers to letting a user choose among items with similar characteristics *before* placing an order, while "converting" refers to the system's ability automatically to find another source for a similar item *after* the user has selected an item to order. ePlus claims that defendant's timing argument is misleading because a system practicing the claims of the patents could always search further on cross-referenced

---

[12] The system claimed in Dworkin allowed the user to identify groups of related items but did not employ commodity codes to enable the replacement of one item with a comparable item from another vendor. (Dworkin Decl. 7-8.)

ePLUS0232978

results, which by definition would meld the "searching" and "converting" functions. This argument depends on the assumption that cross-referencing constitutes "converting." Plaintiff also claims that defendant's restricted reading contradicts the specification for patent '683, which gives examples of "converting" or "cross-referencing" using indexes such as the one as employed by Buyer. (Weaver Decl. ¶ 133.)

As noted above, the plain language of the patents does not require that specific steps of the system occur in a particular order. However, as also discussed above, in some instances, a common sense interpretation, the user's interaction with the system or the prosecution history mandates finding a particular sequence of the elements necessarily implied in the claim. In this instance, the same prosecution history that suggests that "cross-referencing" was designed to allow the user to select a different item to order after learning that a selected matching item was not available in inventory also suggests that "converting" must occur after the user has received the results of the initial search but before the user places an order. Consistent with this interpretation, the Court notes that there is no language in any of the patents' claims, nor is there any reference in the prosecution history, that suggests that "converting" cannot be initiated at the user's request, such as by using an interface to seek replacement items based on the

22

uniform commodity codes. Thus, the Court again finds that cross-referenced searching for equivalent items qualifies as converting and that this process need not occur automatically, either as a function of the original search or after a user has placed an order.

II. Conclusion

The foregoing claim construction will govern the jury's consideration of plaintiff's and defendant's arguments at trial.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record

Entered this 19th day of January, 2005.

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

23

ePLUS0232980