# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| *e*PLUS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF EPLUS INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS CONSTRUCTION OF CERTAIN MEANS-PLUS-FUNCTION CLAIM ELEMENTS

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Lana S. Shiferman (admitted *pro hac vice*)
Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

# TABLE OF CONTENTS

I.      **U.S. Patent No. 6,023,683: Claim 3**

Element B: Means For Selecting the Product Catalogs to Search

Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items

Element F: Means For Converting Data Relating to a Selected Matching Item and an Associated Source to Data Relating to an Item and a Different Source

II.     **U.S. Patent No. 6,023,683: Claim 6**

Element B: Means For Searching For Matching Items in the Database

Element C: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

Element D: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items

Element E: Means For Converting Data Relating to a Selected Matching Item and an Associated Source to Data Relating to an Item and a Different Source

III.    **U.S. Patent No. 6,505,172: Claim 1**

Element B: Means For Entering Product Information That at Least Partially Describes at Least One Desired Item

Element C: Means For Searching For Matching Items That Match the Entered Product Information in the Selected Portions of the Database

Element D: Means For Generating an Order List That Includes at Least One Matching Item Selected by Said Means For Searching

Element E: Means For Building a Requisition That Uses Data Obtained From Said Database Relating to Selected Matching Items On Said Order List

Element F: Means For Processing Said Requisition to Generate Purchase Orders For Said Selected Matching Items

# INTRODUCTION

Plaintiff *e*Plus Inc. ("*e*Plus") submits this Supplemental Memorandum in support of its construction of certain means-plus-function claim elements, pursuant to 35 U.S.C. §112, ¶6 ("Section 112, ¶6"), set forth in claims 3 and 6 of United States Patent Nos. 6,023,683 ("the '683 Patent") and 6,505,172 ("the '172 Patent").

The structure of this Supplemental Memorandum tracks the Court's directive during the *Markman* hearing on January 27, 2010. *See* January 27, 2010 Hearing Transcript ("Tr.") at 132-36.

Initially, *e*Plus sets forth the three claims at issue. Each of the elements of the claims are labeled with a capital letter (*e.g.*, [A], [B], *etc.*) for ease of reference. This document is tabbed accordingly.

Next, for each element, *e*Plus provides its construction of the proper "algorithm" for this computer software-implemented invention. In a chart form, next to the algorithm, *e*Plus then includes a reference to the specification disclosure supporting that algorithm. In a contiguous column, *e*Plus details the actual text from the specification.

Finally, following the chart, *e*Plus includes an explication as to why it believes the algorithm it has set forth is the proper construction.

*e*Plus is mindful of the Court's concern that these patents are directed to persons of ordinary skill in the art. *e*Plus is also very aware of the Court's concern during the hearing that expert testimony may be necessary — more than "mere attorney argument" — to provide an evidentiary basis for the proper construction of the algorithms set forth in the Patents-in-Suit. Tr. at 34, 41.

In addition, *e*Plus certainly appreciates the Court's burden to construe algorithms from a multi-columned patent. The fact is, however, these inventors built a fully-functional system of

software programs that are necessarily interrelated and must "communicate" with each other. The structure of the disclosure in the patents, therefore, reflects that "interrelatedness." And while the Court may believe the references to the specification appear to "cobble together" disparate structures, it is the very "interrelatedness" of the software programs that dictate this result. Respectfully, neither the inventors, nor their patent attorney, should be faulted for providing the level of detail set forth in the patents. To do otherwise, would have been contrary to the law and public policy.

To assist the Court, however, *e*Plus has provided herewith the Declaration of Alfred C. Weaver, Ph.D. ("Weaver Dec."), a Professor of Computer Science from the University of Virginia, who has testified on numerous occasions with regard to these patents. As the Court is well aware, all patents — by their very nature — are directed to "persons of ordinary skill in the art." As Dr. Weaver's declaration demonstrates, the claims of this invention are fully supported, useful, and as will later be shown, novel and not obvious.

For the Court's convenience, *e*Plus again attaches hereto as Exhibit 1 a side-by-side comparison of the parties' respective claim constructions, as modified or agreed upon. [1]

## DETERMINATION OF THE PROPER ALGORITHM

Section 112, ¶6 requires both identification of the claimed function and identification of the structure in the specification necessary to perform that function. *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999). As the Federal Circuit instructs, the Court should adopt the function that is explicitly recited in the claim. *Id.*

---

[1] The parties have agreed that the general term "protocol" may be construed as a "procedure," January 22, 2010 Transcript at 25-27, and that the general term "subset" may be construed as "less than all of the set," January 22, 2010 Transcript at 38-39, and that neither of these constructions will form the basis of an argument for summary judgment of noninfringement.

2

Further, "the statute [does not] permit incorporation of structure from the written description beyond that necessary to perform the claim function." *Id.* at 1258.

Identification of the corresponding structures, however, may embrace more than the preferred embodiments. A means-plus-function claim encompasses all of the structures in the specification corresponding to that element and equivalent structures. *Id.* Thus, when multiple embodiments in the specification correspond to the claimed function, proper application of Section 112, ¶6 reads the claim element to embrace each of those embodiments. *See, e.g., Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997). Indeed, it is black letter law that a construction that excludes a preferred embodiment, "is rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1583 (Fed. Cir. 1996). In other words, the Court is required to construe a means-plus-function claim only so broadly as the structure necessary to perform the functions recited. No more, no less.

To be sure, the Federal Circuit's decisions as to how to determine the appropriate "algorithm" for a computer software-implemented means-plus-function element pursuant to Section 112, ¶6 of the Patent Act, are less than models of clarity. As an initial matter, it is clear that the Federal Circuit requires construction of an algorithm as structure to disclose the sequence of steps the microprocessor or general purpose computer is programmed to perform (in order to avoid purely functional claiming). *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1348 (Fed. Cir. 1999) ("[a] general purpose computer, or microprocessor, programmed to carry out an algorithm creates 'a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.'") (quoting *In re Alappat,* 33 F.3d 1526, 1545 (Fed. Cir. 1994) (*en banc*)); *see also id.,* n.3 ("[t]he opening and closing of the interconnected

3

switches creates electrical paths in the microprocessor that cause it to perform the desired function of the instructions that carry out the algorithm.").

The parties agree that the Microsoft Computer Dictionary definition of an "algorithm" as merely a sequence of steps for performing a task is appropriate. Tr. at 26. Thus, it is not the place or purpose of the algorithm to incorporate additional "hardware-based" limitations drawn from preferred embodiments in the specification. Nor should the Court adopt an algorithm that includes specific "communication protocols" unnecessary to the steps to perform the given task.

Indeed, *ePlus* is not aware of any Federal Circuit case in which an algorithm has been construed to incorporate such additional limitations. Neither the *Harris* nor the *WMS Gaming* cases incorporated such requirements in the pertinent algorithms. *See Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1253-54 (Fed. Cir. 2005) (proper construction of algorithm was "a two-step algorithm in which the processor calculates generally nondiscrete estimates and then selects the discrete value closest to each estimate, or structural equivalents thereof"); *WMS Gaming,* 184 F.3d at 1349 ("disclosed structure is a microprocessor programmed to assign a plurality of single numbers to stop positions such that: 1) the number of single numbers exceeds the number of stop positions; 2) each single number is assigned to only one stop position; 3) each stop position is assigned at least one single number; and 4) at least one stop position is assigned more than one single number"). Neither of these results incorporate the types of limitations of the nature defendant urges the Court to adopt here. Moreover, neither of these decisions even appeared to consider adopting such limitations, nor did the Court even pause to consider the actual codes or specific programming details used to perform these steps.[2]

---

[2] At oral argument, defendant's counsel contended that the *Harris* Court's quoting of the specification passages wherein the algorithm was disclosed constituted the Court's adoption of all the specific exemplary recitations and structures in those passages. *See Harris,* 417 F.3d at

Likewise, in *AllVoice Computing PLC v. Nuance Comm's, Inc.,* the Court held, without imposing any additional limitations, that two patent figures constituted sufficient disclosure of the steps to constitute an algorithm. 504 F.3d 1236, 1245-46 (Fed. Cir. 2007). The Court stated, "[i]n software cases, therefore, algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art." *Id.* at 1245; *see also id.* ("'there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use'") (quoting *Med. Instrumentation and Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1214 (Fed. Cir. 2003)); *Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1366 (Fed. Cir. 2003) (holding that internal circuitry of an electronic device need not be disclosed in specification if one of ordinary skill in art would know how to build and modify device).

In fact, in the *Aristocrat Technologies* case that defendant heavily relies upon, although the Court held that the specification disclosed no algorithm whatsoever, there was no suggestion that the algorithm should have included, for example, limitations of the nature defendant has suggested here. *Aristocrat Techs Australia v. Intern. Game Tech.,* 521 F.3d 1328, 1333-38 (Fed. Cir. 2008).

---

1254. However, it is clear that was not the case, as the Court then continued, "[a]spects of this algorithm can vary based on implementation, as the specification implies." *Id.* The Court even emphasized, "the algorithm *need not* be applied to 'an eight-ary PSK transmission scheme'" and "the same 'decision process' could be applied to another type of transmission scheme." *Id.* (emphasis added). The Court further stated, "Likewise ... the corresponding structure of the 'time domain processing means' is *not limited* to Equation (7) disclosed in column 8, line 30 of the patent," which is one of the very same exemplary passages the Court had just noted in support of its construction of the two-step algorithm. *Id.* (emphasis added). The Court then reaffirmed, "The corresponding structure limits the 'time domain processing means' to a two-step algorithm in which the processor calculates generally nondiscrete estimates and then selects the discrete value closest to each estimate, or structural equivalents thereof." *Id.* at 1254-55.

5

Similarly, in *Tehrani*, the Court remanded the case to the district court to identify the pertinent algorithm and compare it to that in the accused device; the Court described the disputed issue with respect to the algorithm as "whether the algorithm consists solely of *the resultant equations* for tidal volume and breath frequency ... or includes "the *underlying calculations ... used to determine values for variables found in those resultant equations* ...." *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1362, 1367 (Fed.. Cir. 2003) (emphasis added).

Other Federal Circuit cases pertaining to indefiniteness in the context of algorithms provide no support for the notion that an "algorithm" construction is intended as a vehicle for imposing additional limitations into the structures of computer software-implemented means-plus-function elements. *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383-85 (Fed. Cir. 2009) (holding that alleged disclosure of structure was made in purely functional terms and therefore inadequate, but no suggestion that algorithm must include hardware-based limitations); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008) (patentee conceded specification did not disclose algorithm, but Court made no suggestion algorithm should have included hardware-based limitations); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008) (holding that *mere* recitation of software was inadequate but stating that algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose ... or as a flow chart ....").

Indeed, Lawson cannot cite a single case that involved a "algorithm" as complex and convoluted as the multi-step algorithms it proposes that this Court adopt. All of the cases — many involving more complex computer-implemented inventions than are at issue here — reduce themselves to simple two, three, or at most, four-step algorithms. In contrast, many of Lawson's constructions involve ten, twelve or even fourteen steps, improperly incorporating

specific computer hardware or software protocols. None of this is required, nor supported by the Federal Circuit's teachings.

LIBW/1730264.1

# U.S. Patent No. 6,023,683 - Claim 3

**U.S. Patent No. 6,023,683 - Claim 3**

3.    An electronic sourcing system comprising:

(A)    at least two product catalogs containing data relating to items associated with the respective sources;

(B)    means for selecting the product catalogs to search;

(C)    means for searching for matching items among the selected product catalogs;

(D)    means for building a requisition using data relating to selected matching items and their associated source(s);

(E)    means for processing the requisition to generate one or more purchase orders for the selected matching items; and

(F)    means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

**Claim 3, Element B:  Means For Selecting the Product Catalogs to Search**

**Function:** selecting the product catalogs to search. (Disputed).[1]

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| a computer which is programmed with special-purpose software modules to execute an algorithm which includes the steps of: | | |
| (1) receiving inputted information relating to a user's selection of product catalogs to search from among the at least two product catalogs available; | '683 Patent, Col. 5:66 to Col. 6:13 | The data passed by interface 60 preferably comprise all or a subset of the following twelve fields: vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keyword, page number, quantity, unit, catalog text, and catalog images. Because of the amount of data for catalog images present in database 36 and viewed on monitor 22, these data are usually not passed via interface 60. Any of the above-listed fields may be filled by requisition/purchasing system 40 prior to requesting a search of catalog database 36 by search program 50. However, requisition/purchasing system 40 is not required to pass any data to search program 50. If a field is not passed, that field will be filled with spaces. The fields that are filled with data will assist search program 50 in executing its first search against a specific catalog contained in catalog database 36. |
| | '683 Patent, Col. 7: 38-43 | As described herein, however, limited fields on specific items can be transmitted from Requisition Item Table 46 to search program 50, and more completed fields of the same or |

---

[1] Lawson's proposed construction of the function is: "selecting two or more product catalogs to search."

**Claim 3, Element B:    means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | different items can be received from the search program 50 into a Requisition Item Table 46. |
| | '683 Patent, Col. 7:61 to Col. 8:26 | The user can next enter desired items and quantities for the requisition. Each desired item may be identified by entering its distributor catalog or part number, if known, in the field below the STOCK NBR label on the appropriate line in Requisition Item Table 46 shown on Requisition management data screen 110. In the sample Requisition Management data screen 110 shown in Appendix II, the part number 13246818F has been entered in the STOCK NBR field of Line 001. Once the user has entered such information at least partially describing a desired item on Requisition Management data screen 110, he or she may wish to initiate a search of catalog database 36 to find all the part numbers contained in catalog database 36 that match the part number entered or other information on Requisition Management screen 110. If so, the user enters the letter "S" (for "Select") on the line number of the item that he or she wishes to search in catalog database 36. The letter "S" has been entered to the left of line 001 on the sample Requisition Management data screen 110 shown in Appendix II. Any number of items, or no items, listed on Requisition Management data screen 110 may be marked with "S."<br><br>A user may not always have information relating to |

LIBW/1729679.1

**Claim 3, Element B:  means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | the catalog or part number for the particular items that are to be requisitioned using Fisher RIMS system 40. Or, the user may have relevant information about an item from a particular vendor but may wish to locate information about the same or a similar product available from other vendors. Or, the user may simply know the name of the item that he or she wishes to requisition. In any of these cases, the user alternatively or additionally could enter text at least partially describing the product to be requisitioned in the "DESC" field of Requisition Management data screen 110 (e.g., Appendix II). |
| | '683 Patent, Col. 9:52 to Col 10:20 | When multiple catalogs are present in catalog database 36, search program 50 contains a function associated with the catalog symbol of the footer bar and screen window (not shown) for selecting catalogs to be searched. For example, the following choices might be available:<br><br>1. Fisher General Catalog 93-94;<br><br>2. Fairmont Supplies Catalog;<br><br>3. NIST Standards Catalog; and<br><br>4. Promega Biological Research Products Catalog.<br><br>Fairmont and NIST catalogs list products not in the Fisher General Catalog, but many of the products |

LIBW/1729679.1

**Claim 3, Element B:  means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | listed in the Promega catalog are also listed in the Fisher General Catalog (identified by corresponding Fisher catalog numbers). If searching for a molecular biology product, the user would select the Fisher and Promega catalogs. TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the searched-for items were found. Similarly, the user might select the Fisher and NIST catalogs when searching for quality control standards or might select the Fisher and Fairmont catalogs when searching for supplies.<br><br>If the search is initiated from requisition/purchasing program 40, for example from the Requisition Management data screen 110 of the Fisher RIMS system, then the catalogs searched can be determined by the information provided. If, for example, Promega is indicated as the desired requisition item vendor, interface 60 would direct TV/2 search program 50 to search the Fisher and Promega catalogs. If Fairmont is indicated as vendor, the interface would direct TV/2 to search the Fairmont and Fisher catalogs. If no catalog delimiting information is entered for the item desired to be requisitioned, interface 60 would be set up to search only the Fisher catalog or, alternatively, to search all catalogs in catalog database 36. |

LIBW/1729679.1

**Claim 3, Element B:** **means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Col. 17:12-15 | Local computer 220 is provided with programs including requisition/purchasing program 240, Shell program 252 and a graphic user interface 254 (preferably EASEL Workbench program 254 for OS/2) for listing items. |
| | '683 Patent, Col. 17: 29-39 | When a customer asks for products by manufacturer part number or a competitor's catalog number, the CSR has access to cross-reference files, as earlier described, either maintained on the local host or maintained on the Distributor host computer 210.<br><br>Appropriate Distributor catalogs and manufacturer catalogs then are consulted, using TV-2 search program 250 and proper selection of Distributor catalogs and of catalogs and bulletins from manufacturers whose products Distributor regularly sells. Catalogs and bulletins are contained in catalog database 236. |
| | Appendix VII | APPENDIX VII<br><br>SEARCH<br>Page:<br>Search For:<br>Part Number: OFisher OVendor OCust-omer<br>Vendor Name:<br>Bulletin:<br>HELP SEARCH CANCEL CLEAR USER DATA EXTENDED |
| (2) communicating the input selection to a search engine module; | '683 Patent, Col. 5: 18-31 | As shown in FIGS. 1C and 2, interface 60 is also a part of electronic sourcing interface system 5. Interface 60 communicates shared data between requisition/purchasing system 40 and search |

5

LIBW/1729679.1

## Claim 3, Element B:     means for selecting the product catalogs to search

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | program 50. Interface 60 is preferably based upon the dynamic data exchange ("DDE") protocol provided by OS/2 operating system 32. As shown in FIG. 2, interface 60 preferably includes three linking programs to interface requisition/purchasing system 40 and search program 50: ESRC program 70, ESCP program 80 and DDE LINK 90. |
| | | A typical data exchange may begin with requisition/purchasing system 40 (which, in the illustrated embodiment, is the Fisher RIMS system) requesting information from catalog database 36 via search program 50. |
| | '683 Patent, Col. 5:66 to Col. 6:13 | The data passed by interface 60 preferably comprise all or a subset of the following twelve fields: vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keyword, page number, quantity, unit, catalog text, and catalog images. Because of the amount of data for catalog images present in database 36 and viewed on monitor 22, these data are usually not passed via interface 60. Any of the above-listed fields may be filled by requisition/purchasing system 40 prior to requesting a search of catalog database 36 by search program 50. However, requisition/purchasing system 40 is not required to pass any data to search program 50. If a field is not passed, that field will be filled with spaces. The fields that are filled with data will assist search program 50 in executing its first search |

**Claim 3, Element B:    means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | against a specific catalog contained in catalog database 36. |
| | '683 Patent, Col. 8:33-58 | Once the user has built or partially built Requisition Item Table 46 by filling the line numbers (entries) on Requisition Management data screen 110 and selecting those lines to be searched, he or she is now ready to initiate electronic sourcing system 5. Pressing the F11 function key, which is labelled "Catalog," from Requisition Management screen 110 accesses electronic sourcing system 5.

Referring now to FIG. 2, after the user presses the F11 key on Requisition Management data screen 110 of Fisher RIMS system 40, Fisher RIMS system 40 will pass program control via XCTL 74 to ESRC program 70. XCTL 74 is a protocol within CICS application 34 that directs the execution of a program, as would readily be understood by one of ordinary skill in the art. As control is passed from REQI program 44A to ESRC program 70, ESRC-Comm-AREA data structure 76 is passed. ESRC-Comm-AREA is a layout of storage area in local computer 20 created by REQI program 44A to pass data to ESRC program 70, as would readily be understood by one of ordinary skill in the art.

ESRC program 70 will then LINK 82 to ESCP program 80 with ESCP-Comm-AREA 84. LINK 82 is a protocol within CICS application 32 that directs |

LIBW/1729679.1

**Claim 3, Element B:     means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | the execution of a program, as would readily be understood by one of ordinary skill in the art. Data at least partially describing one item desired to be requisitioned is passed to ESCP program 80 via LINK 82. |
| | FIG. 1A (Order Header 44D, Shell 52) | 

FIG. 1A |
| | FIG. 1B (WIP Requisition 260, graphical user interface 254, shell 252) | 

FIG. 1B |

LIBW/1729679.1

**Claim 3, Element B:** means for selecting the product catalogs to search

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
|  | FIG. 1C |  FIG. 1C |
|  | FIG. 2 |  FIG. 2 |
|  | FIG. 3 (steps 100, 104, 110) |  FIG. 3 |

9

# Claim 3, Element B: means for selecting the product catalogs to search

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | Appendix II |  |
| | '683 Patent, Col. 9: 30-34 | If the user has marked an item on Requisition Management data screen 110 with the designation "S," the entered data at least partially describing that item will be sent to Shell 52 and TV/2 search program 50A in the manner described above. |
| or (1) selecting catalogs to be searched from among the at least two product catalogs available based on preferences or history; and | '683 Patent, Col. 10: 8-20 | If the search is initiated from requisition/purchasing program 40, for example from the Requisition Management data screen 110 of the Fisher RIMS system, then the catalogs searched can be determined by the information provided. If, for example, Promega is indicated as the desired requisition item vendor, interface 60 would direct TV/2 search program 50 to search the Fisher and Promega catalogs. If Fairmont is indicated as vendor, the interface would direct TV/2 to search the Fairmont and Fisher catalogs. If no catalog delimiting information is entered for the item desired to be requisitioned, interface 60 would be set up to search only the Fisher catalog or, alternatively, to search all catalogs in catalog database 36. |
| | '683 Patent, Col. | Where the requisition/purchasing program 240 and |

**Claim 3, Element B:** **means for selecting the product catalogs to search**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | 18:52-67 | local databases are maintained on file server 200, the local database is updated after each use for the benefit of subsequent users. For example, in an environment using Fisher RIMS for requisition/purchasing program 240, if a NIST standard is selected using TV-2 search program 250 and ordered using Fisher RIMS 240 (as either a type 07 purchase from Distributer or a type 05 administrative purchase from NIST), that item is available in the applicable database for subsequent requisitions. For example, a NIST standard ordered as a type 05 item will be stored in the local database on file server 200, with NIST as the vendor for subsequent administrative purchases by Customer. A NIST standard ordered from Distributor as a type 07 item will be stored in Distributor's host databases as a type 07 available to Distributor from NIST. |
| (2) communicating the catalog selection to a search engine module; | *See* citations for step #2 above. | *See* citations for step #2 above. |
| and structural equivalents thereof. | | |

11

**Claim 3, Element B:      Means For Selecting The Product Catalogs To Search**

With respect to this means-plus-function element, the parties disagree as to the function. Rather than adopt the function as expressly recited, Lawson incorporates the requirement that the software program select *"two or more* product catalogs to search." As set forth in the Declaration of Dr. Alfred C. Weaver, *e*Plus's construction is consistent with the structure disclosed in the specification. First, as is readily apparent, the claim element does not recite "two or more" product catalogs in the function. Weaver Dec., ¶48. Further, claim 3 of the '683 Patent recites an electronic sourcing system which includes "at least two product catalogs containing data relating to items associated with the respective sources." *Id.*, ¶51. Thus, such a system may include *only* two product catalogs. *Id.*

Therefore, a person of ordinary skill in the art would understand that the claimed function could be construed to cover the selection of only one product catalog to search "from among" the "at least two product catalogs" recited in the claim element. *Id.*, ¶52. Otherwise, the claim element would be superfluous if the system started with only two product catalogs and the claim required "the selection" of both of the two catalogs.[1]

In addition, the patent specification indicates that a single product catalog can be selected from the universe of product catalogs available to the system. *See* Weaver Dec., ¶53 (citing '683 Patent, Col. 5:66 – Col. 6:13 (indicating that data input into any field of the requisition form can be used to initiate a search, thus a user could input a single vendor name or a specific part number of a product associated with a specific vendor and "[t]he fields that are filled with data will assist search program 50 in executing its first search *against a specific catalog contained in*

---

[1] Judge Brinkema in the *ePlus, Inc. v. Ariba, Inc.* construed this claim to "contemplate a system through which a user could select just one catalog to search from among the two or more that are available." Young Dec., Ex. 19 at 12.

*catalog database 36*."); '683 Patent, Col. 10:16-20 ("If no catalog delimiting information is entered for the item desired to be requisitioned, interface 60 would be *set up to search only the Fisher catalog or*, alternatively, to search all catalogs in catalog database 36."); Appendix VII (sample search user interface indicating that user can "select" to search a single catalog by inputting, for example, a "vendor name" in a field provided.")).

Accordingly, a person of ordinary skill in the art would understand that a single catalog may be selected to be searched from among multiple catalogs in the database. Indeed, the patents also disclose that the catalogs may be maintained in multiple catalog databases. Weaver Dec., ¶71 ("The file server 200 in that environment contains ... multiple catalog databases 236"). Separate catalogs, contained in separate databases, can only be searched one at a time. *Id.* Each catalog database, therefore, may be individually searched, thus supporting a construction that only *one* of *multiple* catalog databases may be searched.

With respect to the corresponding structure for this element, the specification supports an algorithm in which this task can be accomplished by the steps of: (1) receiving inputted information relating to a user's selection of the product catalogs to search from among the at least two product catalogs available; and (2) communicating the input selection to a search engine module; or alternatively (1) selecting catalogs to be searched from among the at least two product catalogs available based on preferences or history; and (2) communicating the catalog selection to a search engine program; and structural equivalence therefore.

Nothing more is required and nothing less. For example, the specification provides that "fields" of data that can be entered include the "vendor name." *See* '683 Patent, Col. 5:66 – Col. 6:13. In addition, "the user may have relevant information about an item from a particular vendor but may wish to locate information about the same or a similar product available from

2

other vendors." *See* '683 Patent, Col. 7:61 – Col. 8:26. The system also provides that "[w]hen multiple catalogs are present in a catalog database" the search program contains a "function" "for selecting catalogs to be searched." *See* '683 Patent, Col. 9:52 – Col. 10:20.

The screenshot in Appendix VII also discloses that a "vendor name" may be entered in order to select and then search the desired catalog.

3

**Claim 3, Element C:  Means For Searching For Matching Items Among the Selected Product Catalogs**

**Function:** searching for matching items among the selected product catalogs. (Disputed).[1]

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| a computer which is programmed with special-purpose software modules including a search engine module to execute an algorithm which includes the steps of: | | |
| (1) receiving search criteria (*e.g.*, catalog number, part number, partial textual description) relating to item(s) to be searched; | '683 Patent, Col. 5:18 - 39. | A typical data exchange may begin with requisition/purchasing system 40 (which, in the illustrated embodiment, is the Fisher RIMS system) requesting information from catalog database 36 via search program 50. Once a search by search program 50 has been completed, the selected information will be communicated to requisition/purchasing system 40 via interface 60.<br><br>Alternatively, if the search of catalog database 36 is initiated from search program 50, the information selected from the search is returned to requisition/procurement system 40 via interface 60. |
| | '683 Patent, Col. 5: 66 to Col. 6:13 | The data passed by interface 60 preferably comprise all or a subset of the following twelve fields: vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keyword, page number, quantity, unit, |

---

[1] Lawson proposes that the function for this element be construed as "searching for matching items among the selected two or more product catalogs."

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | catalog text, and catalog images. Because of the amount of data for catalog images present in database 36 and viewed on monitor 22, these data are usually not passed via interface 60. Any of the above-listed fields may be filled by requisition/purchasing system 40 prior to requesting a search of catalog database 36 by search program 50. However, requisition/purchasing system 40 is not required to pass any data to search program 50. If a field is not passed, that field will be filled with spaces. The fields that are filled with data will assist search program 50 in executing its first search against a specific catalog contained in catalog database 36. |
| | '683 Patent, Col. 7:61 to Col. 8:32 | The user can next enter desired items and quantities for the requisition. Each desired item may be identified by entering its distributor catalog or part number, if known, in the field below the STOCK NBR label on the appropriate line in Requisition Item Table 46 shown on Requisition management data screen 110. In the sample Requisition Management data screen 110 shown in Appendix II, the part number 13246818F has been entered in the STOCK NBR field of Line 001. Once the user has entered such information at least partially describing a desired item on Requisition Management data screen 110, he or she may wish to initiate a search of catalog database 36 to find all the part numbers contained in catalog database 36 that match the part number entered or other information on Requisition Management screen 110. If so, the user enters the letter "S" (for "Select") on the line number of the |

LIBW/1729726.1

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | item that he or she wishes to search in catalog database 36. The letter "S" has been entered to the left of line 001 on the sample Requisition Management data screen 110 shown in Appendix II. Any number of items, or no items, listed on Requisition Management data screen 110 may be marked with "S."<br><br>A user may not always have information relating to the catalog or part number for the particular items that are to be requisitioned using Fisher RIMS system 40. Or, the user may have relevant information about an item from a particular vendor but may wish to locate information about the same or a similar product available from other vendors. Or, the user may simply know the name of the item that he or she wishes to requisition. In any of these cases, the user alternatively or additionally could enter text at least partially describing the product to be requisitioned in the "DESC" field of Requisition Management data screen 110 (e.g., Appendix II). Then, the user would initiate the electronic sourcing system 5 of the present invention to search the vendor product catalogs contained in catalog database 36. Alternatively, the user could initiate search program 50 of electronic sourcing system 5 without having first entered information in RIMS system 40 about the product to be requisitioned. |
| | '683 Patent, Col. 12:4- | If the user desires to do additional searching in |

LIBW/1729726.1

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | 29 | catalog database 36 that is not connected to catalog or other items that have been listed on Requisition Management data screen 110 of Fisher RIMS system 40, he or she can click the box on footer bar of Shell 52 that is labelled "Search." Then, a Search screen comes up on monitor 22 of local computer 20. An exemplary Search screen is shown in Appendix VII. In this screen, the usual footer bar is visible in the background, but is not active.

Using the Search screen, a user can search catalog database 36 by page, text description, part number (where the user has the further option to search by Fisher part number, for example if Fisher is to be the desired vendor), Vendor part number, vendor name (for vendors other than Fisher), or bulletin. Stock numbers specific to the customer can also be present in catalog database 36 and searched using the screen of Appendix VII. "Bulletin" refers to an additional vendor publication with detailed product information that may not be included in a vendor catalog. Searching for information contained in bulletins may be done by bulletin number, but only if bulletins have been made a part of catalog database 36. For purposes of this disclosure, bulletins when included in a catalog database are considered a type of catalog.

After the user has entered the field to be searched on |

## Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | the Search Screen, the user clicks on the "SEARCH" box near the bottom of the Search Screen. A Hit List 47 indicating all items from catalog database 36 that match the search field that was entered on the Search Screen then is generated. |
| | '683 Patent, FIG. 1A (Order Header 44D, Shell 52) |   FIG. 1A |
| | '683 Patent, FIG. 1B (Shell 252, graphical user interface 254, WIP Requisition 260) |   FIG. 1B |

LIBW/1729726.1

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
|  | '683 Patent, Appendix VII | APPENDIX VII<br><br>SEARCH<br>Page:<br>Search For:<br>Part Number: OHigher OVendor OCan-<br>cone?<br>Vendor Name:<br>Bulletin<br>HELP SEARCH CANCEL CLEAR USER<br>DATA EXTENDED |
|  | '683 Patent, Appendix II | APPENDIX II<br>"- REQUISITION MANAGEMENT SCREEN-"<br>*(screen content partially illegible)* |
| (2) communicating the search criteria to a search engine module; | '683 Patent, Col. 5:18-31 | As shown in FIGS. 1C and 2, interface 60 is also a part of electronic sourcing interface system 5. Interface 60 communicates shared data between requisition/purchasing system 40 and search program 50. Interface 60 is preferably based upon the dynamic data exchange ("DDE") protocol provided by OS/2 operating system 32. As shown in FIG. 2, interface 60 preferably includes three linking programs to interface requisition/purchasing system 40 and search program 50: ESRC program 70, ESCP program 80 and DDE LINK 90.<br><br>A typical data exchange may begin with |

6

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | requisition/purchasing system 40 (which, in the illustrated embodiment, is the Fisher RIMS system) requesting information from catalog database 36 via search program 50. |
| | '683 Patent, Col. 5: 66 to Col. 6:13 | The data passed by interface 60 preferably comprise all or a subset of the following twelve fields: vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keyword, page number, quantity, unit, catalog text, and catalog images. Because of the amount of data for catalog images present in database 36 and viewed on monitor 22, these data are usually not passed via interface 60. Any of the above-listed fields may be filled by requisition/purchasing system 40 prior to requesting a search of catalog database 36 by search program 50. However, requisition/purchasing system 40 is not required to pass any data to search program 50. If a field is not passed, that field will be filled with spaces. The fields that are filled with data will assist search program 50 in executing its first search against a specific catalog contained in catalog database 36. |
| | '683 Patent, Col. 8:33-Col. 9:8 | Once the user has built or partially built Requisition Item Table 46 by filling the line numbers (entries) on Requisition Management data screen 110 and selecting those lines to be searched, he or she is now ready to initiate electronic sourcing system 5. Pressing the F11 function key, which is labelled "Catalog," from Requisition Management screen 110 |

7

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | accesses electronic sourcing system 5.<br><br>Referring now to FIG. 2, after the user presses the F11 key on Requisition Management data screen 110 of Fisher RIMS system 40, Fisher RIMS system 40 will pass program control via XCTL 74 to ESRC program 70. XCTL 74 is a protocol within CICS application 34 that directs the execution of a program, as would readily be understood by one of ordinary skill in the art. As control is passed from REQI program 44A to ESRC program 70, ESRC-Comm-AREA data structure 76 is passed. ESRC-Comm-AREA is a layout of storage area in local computer 20 created by REQI program 44A to pass data to ESRC program 70, as would readily be understood by one of ordinary skill in the art.<br><br>ESRC program 70 will then LINK 82 to ESCP program 80 with ESCP-Comm-AREA 84. LINK 82 is a protocol within CICS application 32 that directs the execution of a program, as would readily be understood by one of ordinary skill in the art. Data at least partially describing one item desired to be requisitioned is passed to ESCP program 80 via LINK 82. Thus, if there are five items to be passed to ESCP program 80, there will be five LINKS 82 made. If no items are to be passed to ESCP program 80, only one LINK 82 is made to ESCP program 80. ESCP program 80 can return up to twenty items per |

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected
## Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | LINK 82; in other words, for each item desired to be requisitioned up to twenty desired catalog items contained in catalog database 36 may be sent to REQI program 44A and its associated Requisition Management data screen 110 of Fisher RIMS system 40. If a user chooses to terminate the sourcing process, ESRC program 70 would return to REQI program 44A and its associated Requisition Management data screen 110 without processing any of the records.<br><br>ESCP program 80 links with Shell 52 and TV/2 search program 50 via DDE LINK 90. Shell 52 and TV/2 search program 50 search in catalog database 36 for the item or items desired to be requisitioned that has or have been passed from ESRC program 70 to ESCP program 80. |
| | '683 Patent, Col. 5: 9-18 | Host computer 10 and local computer 20 are preferably linked point-to-point or in a network employing the formats and protocols of IBM's System Network Architecture ("SNA"). Host computer 10 can be substantially any mainframe or minicomputer capable of running the desired programs and conducting the required communications. Preferably, host computer 10 is a mainframe computer, such as an IBM Model 3090, running the MVS operating system, the MVS-CICS application and a Virtual Telecommunication Access Method communications network. |

LIBW/1729726.1

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Col. 17:26-29 | For this purpose, each local computer is connected to host computer 210 via a phone/dataline and either a gateway or a minicomputer acting as a local host. |
| | '683 Patent, FIG. 1C (link 60) | <br>FIG. 1C |
| | '683 Patent, FIG. 2 (link 60) | <br>FIG.2 |
| (3) querying certain fields of the item data to locate item records in the selected product catalogs matching the search criteria; and | '683 Patent, Col. 9:30-37 | If the user has marked an item on Requisition Management data screen 110 with the designation "S," the entered data at least partially describing that item will be sent to Shell 52 and TV/2 search program 50A in the manner described above. TV/2 search program 50 will search catalog database 36 for all items that match the search field sent over |

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | from REQI program 44A and Requisition Management data screen 110. |
| | '683 Patent, Col. 9: 5-16 | Shell 52 and TV/2 search program 50 search in catalog database 36 for the item or items desired to be requisitioned that has or have been passed from ESRC program 70 to ESCP program 80. Catalog database 36 contains the following fields: vendor name, vendor number, vendor part (catalog) number, product description, list price, page number, quantity, unit, catalog text, and catalog images. Shell 52 and TV/2 search program 50 may, if desired, search the keyword field or any other field shown in Appendix VII. However, not all fields may appear on the monitor 22 of local computer 20, although they are stored in memory. |
| | '683 Patent, Col. 12:4-29 | If the user desires to do additional searching in catalog database 36 that is not connected to catalog or other items that have been listed on Requisition Management data screen 110 of Fisher RIMS system 40, he or she can click the box on footer bar of Shell 52 that is labelled "Search." Then, a Search screen comes up on monitor 22 of local computer 20. An exemplary Search screen is shown in Appendix VII. In this screen, the usual footer bar is visible in the background, but is not active.

Using the Search screen, a user can search catalog database 36 by page, text description, part number (where the user has the further option to search by |

LIBW/1729726.1

## Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | Fisher part number, for example if Fisher is to be the desired vendor), Vendor part number, vendor name (for vendors other than Fisher), or bulletin. Stock numbers specific to the customer can also be present in catalog database 36 and searched using the screen of Appendix VII. "Bulletin" refers to an additional vendor publication with detailed product information that may not be included in a vendor catalog. Searching for information contained in bulletins may be done by bulletin number, but only if bulletins have been made a part of catalog database 36. For purposes of this disclosure, bulletins when included in a catalog database are considered a type of catalog.<br><br>After the user has entered the field to be searched on the Search Screen, the user clicks on the "SEARCH" box near the bottom of the Search Screen. A Hit List 47 indicating all items from catalog database 36 that match the search field that was entered on the Search Screen then is generated. |

12

# Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, FIG. 1A (TV/2 50, shell 52, Catalog Database 36) |  FIG. 1A |
| | '683 Patent, FIG. 1B (Shell 252, Graphical User Interface 254, Search Program 250, Catalog Databases 236) |  FIG. 1B |
| | '683 Patent, Col. 4: 3-7 | Preferably but not necessarily, the Technical Viewer 2 search program ("TV/2"), available from IBM, is used as search program 50. As shown in the embodiment of FIG. 1A, Fisher RIMS 40 and TV/2 search program 50 are run by local computer 20. |
| | '683 Patent, Col. 6: 35-38 | The following description illustrates the use of the Fisher RIMS system as requisition/purchasing system 40, and the TV/2 search program as search program 50. However, it will be understood that the present invention is not limited to such system or |

## Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | program. |
| | '683 Patent, Col. 6:14-22 | A search priority exists when more than one field is provided by requisition/purchasing system 40. The priority is as follows: (1) part (catalog) number; (2) keyword; and (3) page number. The search will start with priority (1) and proceed through priority (3) in sequence until a search produces products matching the search criteria. At that time, the search will return the matching product information to requisition/purchasing system 40 and stop at the highest priority resulting in a match. |
| (4) outputting items matching the search criteria; | '683 Patent, Col. 9: 37-51 | When a search is performed in Shell 52 and search program 50, a Hit List 47 is produced, as indicated in FIG. 1C. The user would see on monitor 22 of local computer 20 a Hit List 47 screen representing limited data about all matching catalog items that were located in catalog database 36 as a result of the search. A sample Hit List 47 produced from a search initiated when the entry "OVENS" is received as the description or keyword by search program 50 from Requisition Item Table 46 is shown in Appendix III. Similar Hit Lists 47 are produced when various searches are performed from the Search Input screen shown in Appendix VII. When a Hit List 47 is depicted on monitor 22, the underlying catalog text and pictures (in either partial or complete form) are typically collected in a memory location for rapid viewing, printing or other use. |

LIBW/1729726.1

**Claim 3, Element C: Means For Searching For Matching Items Among the Selected Product Catalogs**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Appendix III | **APPENDIX III**<br><br>OVENS<br>General<br>(1105)Fisher Isotemp 800 Series Programmable Ovens<br>(1106)Isotemp 700 Series Deluxe Lab Ovens<br>(1108)Isotemp 600 Standard Lab Ovens<br>(1109)Fisher Isotemp 500 Series Economy Lab Ovens<br>(1110)Gravity Convection Ovens<br>(110)Utility Ovens<br>(1112)Mechanical Convection Ovens with Electronic Temperature<br>(1113)Metcal-Syprine Ovens<br>(1114)Heavy Duty Deluxe Ovens<br>(1116)Large Capacity Model 1883A<br>(1117)Standard Capacity Model 281A<br>(1118)Fisher Models 280 and 285 Vacuum Ovens<br>(1119)NAPCO Vacuum Ovens<br>Help Catalog; Search Order List Worksite Clear Prev Next Exit |
| | '683 Patent, Col. 12:26-30 | After the user has entered the field to be searched on the Search Screen, the user clicks on the "SEARCH" box near the bottom of the Search Screen. A Hit List 47 indicating all items from catalog database 36 that match the search field that was entered on the Search Screen then is generated. |
| | '683 Patent, FIG. 1C | <br><br>FIG. 1C |
| and structural equivalents thereof. | | |

**Claim 3, Element C:  Means For Searching For Matching Items Among The Selected Product Catalogs**

As an initial matter, the function of this claim element should be construed expressly as stated: "searching for matching items among the selected product catalogs" rather than as "searching for matching items among the selected *two or more* product catalogs" for all of the reasons set forth above with respect to Claim 3, Element B. *See also* Weaver Dec., ¶ 47-54.

Second, as stated above, it is a fundamental principle of claim construction that a means-plus-function claim term must be construed in a manner that encompasses each of the embodiments described in the specification. *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.,* 194 F. 3d 1250, 1258 (Fed. Cir. 1999). Thus, it would be improper to import extraneous limitations from the specification into the claim term that do not apply to all of the embodiments.

Third, an algorithm, should not recite more steps than are necessary for performing the claimed function. *Id.*

With these principles in mind, the algorithm associated with the "means for searching for matching items among the selected product catalogs" is straightforward and readily understood by anyone who has ever used a search engine program to retrieve a hit list of search results that match the inputted search query. The algorithm executed by the search engine module of the electronic sourcing system of Claim 3 comprises the following steps:

> (1) receiving search criteria (*e.g.*, catalog number, part number, partial textual description) relating to item(s) to be searched; (2) communicating the search criteria to a search engine module; (3) querying certain fields of the item data to locate item records in the selected product catalogs matching the search criteria; and (4) outputting items matching the search criteria; and structural equivalents thereof.

This algorithm applies to all of the embodiments disclosed in the patent specification and does not include extraneous, unnecessary steps or steps that do not encompass all disclosed embodiments.

In each described embodiment, the system must first receive search criteria relating to desired catalog items. The specification describes that the search criteria can be keywords, vendor names, part numbers, product descriptions and other attributes relating to the catalog items. *See* '683 Patent, Col. 5:66 to Col. 6: 13 ("The data passed by interface 60 preferably comprise all or a subset of the following twelve fields: vendor name, vendor number, vendor part (catalog) number, product description, ..., keyword ... The fields that are filled with data will assist search program 50 in executing its first search against a specific catalog contained in catalog database 36.").

The received search criteria must next be communicated to a search engine module that will be used to perform the search. *See* '683 Patent, Col. 5:66 to Col. 6:13 ("The data passed by interface 60 ... will assist search program 50 in executing its first search against a specific catalog contained in catalog database 36.").

Once the search criteria are communicated to the search engine module, the search engine module then queries fields of the item data in the product catalogs that were selected to be searched to locate item records that match the search criteria. *See* '683 Patent, Col. 9:30-37 ("the entered data at least partially describing that item will be sent to Shell 52 and TV/2 search program 50A ...TV/2 search program 50 will search catalog database 36 for all items that match the search field sent over ...").

Once the matching items have been found by the search engine module, the search engine module outputs a hit list of the items found that matched the search criteria. *See* '683 Patent, Col. 9:37-51 ("When a search is performed in Shell 52 and search program 50, a Hit List 47 is produced...The user would see ... a Hit List 47 screen representing limited data about all matching items that were located in catalog database 36 as a result of the search.").

2

The algorithm associated with the "means for searching" does not include a step of "searching local RIMS databases (42) based on search criteria, and if found, search is complete." This step is plainly incorrect for a construction of the "means for searching" for claim 3 as the claim language requires that the "means for searching" conducts its search "among the selected product catalogs." According to the description of the embodiments of the invention in the patent specification, there are no product catalogs stored in the RIMS databases. The product catalogs are stored in the catalog database 36, for the embodiment illustrated in FIG 1A, or in the multiple catalog databases 236, for the embodiment illustrated in FIG 1B. Weaver Dec., ¶ 60.

Moreover, there is no description anywhere in the patent specification where the search engine program ever conducts a search of the RIMS databases. The search programs 50 and 250 are not even connected to the RIMS databases and have no ability to access the data stored in the RIMS databases. See FIGS. 1A, 1B and 2. Weaver Dec., ¶ 61.

The only descriptions of searches conducted by search programs 50 and 250 relate to searches of catalog databases. And, the data stored in the RIMS databases is not product catalog item data. *See, e.g.,* '683 Patent, Col. 6:11-13 ("The fields that are filled with data will assist ***search program 50 in executing its first search against a specific catalog contained in catalog database 36.***") (emphasis added); Col. 9:30-Col. 10:20 ("If the user has marked an item ... with designation 'S' the entered data at least partially describing the item will be sent to Shell 52 and TV/2 search program 50A... ***TV/2 search program 50 will search the catalog database 36*** for all items that match the search field sent over...") (emphasis added); Col. 16:66-Col. 17:41 ("As shown in FIG 1B, ... search program 250, ... and catalog databases 236 are stored on file server 200.... Appropriate Distributor catalogs and manufacturer catalogs are consulted, using TV/2 search program 250 and proper selection of Distributor catalogs and catalogs and bulletins from

3

manufacturers whose products Distributor regularly sells. ***Catalogs and bulletins are contained in catalog database 236.***") (emphasis added). Weaver Dec., ¶ 62. *See also* Weaver Dec., ¶¶ 63-66.

In addition, an algorithm which recites a step of "concatenating (*i.e.*, joining together by linking so as to form a chain or series) only selected product catalogs to be searched after the user selects the catalogs to be searched" would be incorrect because it would disregard several embodiments described in the patent specification in which such a step would not be performed by the search engine module.

For example, as discussed above, the patent specification makes clear that a system user could select only one catalog to be searched from among the "at least two product catalogs" available. In such cases, no concatenating step is required since only one catalog was selected to be searched. Weaver Dec., ¶¶ 67-68.

In addition, assuming a user did wish to search multiple product catalogs, in accordance with claim 3 of the '683 Patent, a person of ordinary skill would not understand the claim language to prohibit a user from first selecting to search one product catalog and subsequently selecting to search a second product catalog. The patent specification describes such a situation. '683 Patent, Col. 12:4-29. This is particularly true given that the system can include multiple catalog databases. *See* '683 Patent, FIG 1B (catalog databases 236); Col. 17:55-64 ("The file server 200 in that environment contains ... multiple catalog databases 236"). By definition, catalogs stored in separate databases ***cannot be*** concatenated. Weaver Dec., ¶ 71.[1]

---

[1] Indeed, for the above reasons, Judge Brinkema in the *Ariba* litigation, found that there was no support for a construction which imported a limitation requiring "concatenation" into the "searching" elements. Young Dec. Ex. 19 at 11-12.

4

Thus, it is clear the *e*Plus's proposed four-step algorithm for the "means for searching" is correct as it applies to all disclosed embodiments and does not include unnecessary or inappropriate steps.

—

**Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)[1]**

**Function:** building a requisition using data relating to selected matching items and their associated source(s).

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| a computer which is programmed with special-purpose software modules including a requisition module to execute an algorithm which includes the steps of: | | |
| (1) transferring data relating to selected item(s) from hit list(s) that were returned from the search(es) to a requisition module; and | '683 Patent, Col. 12:48-Col. 13:62 | Once the user has completely built the Order List 48 within Shell 52 and TV/2 search program 50, he or she can transmit it to Fisher RIMS system 40. This is accomplished by clicking on the "Order" box at the bottom of the Items Selected screen to communicate the completed Order List 48 to Fisher RIMS system 40.<br><br>The user may have selected no items, one item or several items from the catalogs contained in catalog database 36 by using TV/2 search program 50. If no items have been selected, the original items that were entered on Requisition Item Table 46 of Requisition Management data screen 110 will remain on that screen and will continue to be |

---

[1] This claim element is also found in Claim 6 of the '683 Patent, Element C.

**Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | processed by Fisher RIMS system 40. If one or several desired catalog items were selected in TV/2 search program 50, the first item selected will replace the original item on Requisition Item Table 46 of Requisition Management data screen 110. Additional items that were selected from the search that was performed in TV/2 search program 50 will be added to Requisition Item Table 46 of Requisition Management data screen 110.<br><br>Interface programs ESCP 80 and ESRC 70 (FIG. 2) are used to send data to REQI program 44A (FIG. 1A) and its associated Requisition Management data screen 110 (FIG. 2) about the items that were selected from the search performed by TV/2 search program 50. To the user, it appears that all the items selected from the search are sent over to Fisher RIMS system 40 at the same time. However, ESCP program 80 receives multiple items from TV/2 search program 50, and then sends one item at a time to ESRC program 70. ESRC program 70 then waits until all items have been passed to it before sending data about the items to REQI program 44A and its associated Requisition Management screen 110 of Fisher RIMS system 40. The information transmitted to Requisition Management screen 110 from the Order List built in TV/2 search program 50 and sent through ESCP program 80 and ESRC program 70 includes vendor name, vendor number, vendor part |

LIBW/1729742.2

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | (catalog) number, product description, list price, page number, quantity, unit and catalog text. However, not all of the above-listed fields may be displayed on screen at all times. ESRC program 70 passes control back to Fisher RIMS system 40 via XCTL 78. The requisition number, customer identification and release number (or other data identifying the requisition) will be passed in MENU-Comm-AREA 56 to confirm that the returned data are associated with the proper requisition. MENU-Comm-AREA 56 is a layout of storage area within local computer 20, as one of ordinary skill in the art would readily understand.<br><br>As previously indicated, multiple LINKS 82 may have been created between program ESRC 70 and program ESCP 80 if multiple lines were selected (with the "S" symbol) in Requisition Management data screen 110. After completing the first search, and any additional searches initiated with the footer bar, an order list is created and returned to Requisition Item Data Table 46 associated with Requisition Management data screen 110. At this point, the next item is sent from a LINK 82 through program ESCP 80 and DDE LINK 90 to the TV/2 program 50, and a hit list resulting from the corresponding search is displayed on monitor 22. The process of searching, displaying, selecting and ordering is repeated until all of items stored by |

3

**Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | LINKS 82 have been sent to TV/2 program 50 and searched. At the end of each of these searches, an order list may be created and returned to Requisition Item Data Table 46 or cancelled. Once the last item is completed, ESRC program 70 passes control via XCTL 78, and a Requisition Management screen 110 is displayed, reflecting all of the additions and changes that have been made to the Requisition Item Data Table 46 associated with that requisition.<br><br>A limit is normally placed on the number of items of an order that may be returned to the Requisition Item Data Table 46. For example, if the maximum size in Requisition Item Data Table 46 is set at 200 lines, one could create a limit on the size of each order list at 20, 50, 100 or even 200. A corresponding limit can be placed on the number of LINKS 82 that can be established concurrently from the same requisition. Setting a limit of five LINKS 82 and forty items per order list would be one way of avoiding situations in which a Requisition Item Data Table 46 reaches its limit (e.g., 200 lines) before all of the searches (five) have been completed and order lists (five of forty items each) have been returned. |
| | '683 Patent, Col. 7: 39-44. | As described herein, however, limited fields on specific items can be transmitted from Requisition Item Table 46 to search program 50, and more completed fields of the same or different items can be received from the search program 50 into a |

4

**Claim 3, Element D:  Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | Requisition Item Table 46. |
| | '683 Patent, Col. 10: 21-43 | Once Hit List 47 has been created by TV/2 search program 50, the user can view it and select particular ones of the located catalog items for Order List 48 that is being created in Shell 52, as shown in FIG. 1C. For example, a search for "Eco RI," a restriction enzyme, may have uncovered five entries in the Promega catalog (identified by Promega catalog numbers R6011, R6012, R6013, R6015 and R401) and five entries in the Fisher catalog (identified by Fisher catalog numbers PRR6011, PRR6012, PRR6013, PRR6015 and PRR4014). If the user selected PRR6012 from the Fisher catalog, Fisher catalog number PRR6012 would be added as an entry to the Items Selected screen, with VN00000001 (identifying the vendor as distributor Fisher) accompanying it in the Order List 48. If the user instead selected the item identified by catalog number R6012 from the Promega catalog, then Promega catalog number R6012 would be added as an entry to the Items Selected screen, with VN00005860 (identifying the vendor as Promega) accompanying it in the Order List. In either case, the information transmitted to REQI program 44A of Fisher RIMS system 40 would also include description, list price and other information taken from the catalog database from which the selection was made. |

LIBW/1729742.2

**Claim 3, Element D:   Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, FIG. 1A | <br><br>FIG. 1A |
| | '683 Patent, FIG. 1B | <br><br>FIG. 1B |
| | '683 Patent, FIG. 1C | <br><br>FIG. 1C |

6

**Claim 3, Element D:** **Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, FIG. 2 | \n\nFIG. 2 |
| (2) building a requisition using data from the selected matching items to populate certain fields on the requisition form; | '683 Patent, Col. 13: 63-Col. 14:4 | At this point in the use of Fisher RIMS system 40, as many entries (lines) of Requisition Management data screen 110 have been built up (some through use of electronic sourcing system 5) as are necessary to complete the requisition. A sample of such a Requisition Management data screen 110, in which four lines have been entered identifying desired items to be requisitioned (including catalog items located as a result of a catalogs search), is shown in Appendix VIII. |
| | '683 Patent, Appendix I |  |

Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Appendix II | **APPENDIX II**<br><br>-- REQUIsION MANAGEMENT SCREEN'"<br><br>XCcf:VNR: 24966401 REQ.NBR: TEST NEW CUS<br>  COMP:1   LINE<br> 1 LINE  STOCK NBR    QTY EM PT STKNG XREF #H UNIT PRICE EXT PRICE<br>    001 10245HIF             8        9.00     0.00<br>   DESC:          QTY AVAIL:    0    LOC: FSHR WHSE KCV<br>   002<br>   DESC:          QTY AVAIL:          LOC:   WRHS<br>   003<br>   DESC:          QTY AVAIL:          LOC:   WRHS<br>   004<br>   DESC:          QTY AVAIL:          LOC:   WRHS<br>   005<br>   DESC:      RESPONSE: KEY(S):   QTY AVAIL:          LOC:   WRHS<br>ALI ITEMS DISPLAYED<br>F2=DSP F3=EXLE F4=SND F5=FWD F7=NEW F8=PROC OF TR=OFAK G F9=CNL |
| | '683 Patent, Appendix VIII | **APPENDIX VIII**<br><br>RCSRO01      FISHER SCIENTIFIC RSM       DATE 00-21-04<br>XCcf:VNR: 169499-008 REQ.NBR: 19 3NR.001   MANAGEMENT SCREEN TIME 1:43:22<br>     CONP= 1              REL:NBR:<br> 0 LINE   STOCK NBR    QTY I EM PT  STKNG XREF #H UNIT PRICE EXT PRICE<br>    001 A3H1           EA 19                    9.00     0.00<br>   DESC:            QTY AVAIL:   0     LOC: FSHR WHSE KCV<br>   002 01940X          PK          49        5.00  WHSE KC<br>   DESC:           QTY AVAIL:   0    LOC: WHSE KC<br>   003 11-248HF       EA 19                 5.00  LOC: FSHR WHSE KC<br>   DESC:           QTY AVAIL:   0     100.00  10920<br>   004 A101-06       EA 26            LOC: WHSE KC<br>   DESC: ACETONE<br>1#1 BACKORDER WILL OCCUR    QTY AVAIL:   0     LOC: WHSE KC<br>   DESC:   005<br>RESPONSE:    KEY(S):<br>ITEMS PROCESSED<br>*F2=DSP F3=SOURCE F4=SND F5=FWD F7=NEW #7M F9=NONCAT F11 CATALOG F12=CNL<br>5B V0S |
| | '683 Patent, Appendix IX | **APPENDIX IX**<br><br>RCP009F      FISHER SCIENTIFIC RSM    DATE: 08-00-04<br>    COMP ID: 001  REQ:0124 ON MANAGEMENT'S SCREEN TIME 07:44:13<br>    ACct:VNR: 366490 926    REL:NBR:<br>   ORDER NBR:               PCKLIST REVIEWED :<br>    SERVICE: 0.00     ORDER:     0.00 FREIGHT:<br>  CARRIER:<br> 0 LINE   PART        QTY  COM PRO UNIT PRICE SERVICE EXT PRICE  LOC-<br>                       EA<br>   001 A3H1                      19.30          19.30  DEL  $<br>                                0.00   F       QTY REC: 0<br>   ACETONE CERTIFIED ACS    1L   QTY AVAIL: 12.70   2.06     IC97.076  QTY REC: 0<br>  002 01940X           PK 69           49            14+97 REC: 0<br>   BEAKER GRIFFIN 250 XL   129  QTY AVAIL:             34 QTY REC: 0<br>  003 10248HF        EA 60  QTY AVAIL:  3495.00          3495.00     QTY REC: 0<br>   PROBE AXOMASH II OVEN          0.00              IC97.069  QTY REC: 0<br>  004 A101-6            EA 2.18  QTY AVAIL: 100.00       0.00   QTY REC: 0<br>   ACETONE<br>RESPONSE:    KEY(S):<br>*F2=DIT F4=ACCEPT F5=SND F7=FWD F7=PCKT ACK F8=LNE ERROR 1U1 DEL 2=E<br>5B V131 |

8

LIBW/1729742.2

Claim 3, Element D:  Means For Building a Requisition Using Data Relating to Selected
Matching Items and Their Associated Source(s)

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, FIG. 1A (elements 42A, 42C, 44C, 44E, 44A, 44D) |   FIG. 1A |
| | '683 Patent, FIG. 1B (elements 260, 240, 242) |   FIG. 1B |
| | '683 Patent, FIG. 1C |   FIG. 1C |

LIBW/1729742.2

9

**Claim 3, Element D:  Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, FIG. 2 |  FIG.2 |
| | '683 Patent, Col.: 1:11-35 | There are a number of known requisition/purchasing systems that manage and process requisitions and purchase orders. One such system is the Fisher Scientific Requisition and Inventory Management System ("Fisher RIMS"), described U.S. Pat. No. 5,712,989, filed Apr. 2, 1993 and assigned to Fisher Scientific Company of Pittsburgh, Pa., the disclosure of which is incorporated herein by reference. As its title suggests, Fisher RIMS can also manage inventory. In the Fisher RIMS system, requisition records are created from a real-time interaction between a host computer (generally a mainframe) and a local computer (generally at a customer site), with each computer using data from its own respective database of inventory in conjunction with information entered by a customer service representative operating the local computer. By accessing its respective database, each computer can build and transmit to the other computer communications blocks of data relating to a |

**Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | particular requisition of an item in inventory (or to the management of the inventory itself). The other computer can then use the received data to continue processing of the requisition. Thus, requisition records are created from a real-time interaction between the host and local computers, with each computer using data from its respective database in conjunction with information entered by a customer service representative operating the local computer. |
| | '683 Patent, Col. 4:1-3 | Electronic sourcing system 5 also includes a requisition/purchasing system 40, preferably but not necessarily the Fisher RIMS system, |
| | '683 Patent, Col. 4: 10-24 | Fisher RIMS system 40 is comprised of numerous program modules, including several programs 44, which operate within CICS environment 34 of OS/2 operating system 32. Programs 44 include, among others, Requisition Management ("REQI") program 44A, Inventory Sourcing program or programs 44B, Requisition Maintenance program 44C, Customer Variable program 44D, and Order Header program 44E, each of which will later be described in greater detail. REQI program 44A is most often the RIMS program 44 that interfaces with TV/2 search program 50.<br><br>Fisher RIMS system 40 also includes several Fisher RIMS databases 42. These databases 42 preferably include requisition databases 42A, inventory databases 42B, and customer-specific databases 42C, |

**Claim 3, Element D:   Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | each maintained within OS/2 operating system 32. |
| | '683 Patent, Col. 6: 39-Col. 7:35 | Preferably, a user will start the electronic sourcing system 5 from Fisher RIMS system 40. Requisitioning on Fisher RIMS system 40 in context of the electronic sourcing system 5 of the present invention is illustrated in pertinent part in FIG. 3 (and is fully described in U.S. Pat. No. 5,712,989. As data (e.g., Account Number, Requisition Number and Stock Numbers) associated with a single requisition are entered through the various data screens on local computer 20, that computer creates a set of Requisition Tables (including a Requisition Item Table 46, shown in FIG. 1C) for that particular requisition. The Requisition Tables are stored in Requisition databases 42A (shown in FIG. 1A), and can be accessed by local computer 20 using the Requisition Number to find the desired table.<br><br>The first step in creating a requisition in Fisher RIMS system 40 involves entry by the user of information in the Order Header program 44D (shown in FIG. 1A), which has an associated Order Header data screen 100 (FIG. 3). A sample of an actual Order Header data screen 100 is set forth in Appendix I. The user enters an Account Number, which generally causes the correct name and address associated with that Account Number to be entered into the appropriate fields of Order Header data screen 100. The user must also enter a Requisition |

LIBW/1729742.2

**Claim 3, Element D: Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | Number in the appropriate field of the Order Header screen 100. Various additional information may also be entered.<br><br>At the bottom of Order Header data screen 100 are several fields that describe the function of various function keys. Function keys F6, F9, and F10 all cause the system to jump to a new RIMS program 44 or data screen in Fisher RIMS system 40. For example, pressing the F9 key causes the system to jump to RIMS Customer Variable program 44E (FIG. 1A) and its associated Customer Variable Header data screen 104 (FIG. 3). Customer Variable Header program 44E with its associated Customer Variable Header data screen 104 allows the user to enter and edit information that the particular customer desires to be associated with the requisition due to requirements of the customer's internal accounting system or other systems. Pressing the F10 key will cause the system to enter the Inventory Sourcing program or programs 44B. |
| | '683 Patent, Col. 7:14-35 | Pressing the F6 function key from the Order Header data screen causes Fisher RIMS system 40 to jump to REQI program 44A (FIG. 1A). The screen associated with REQI program 44A is Requisition Management data screen 110 (FIG. 3) illustrated in Appendix II. Within REQI program 44A and its associated Requisition Management data screen 110, Requisition Item Table 46 (shown in FIG. 1C) is a |

13

## Claim 3, Element D:   Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | graphical representation of a database table in which certain fields are completed on a list of items that are to be listed, sourced and ordered. Representative Requisition Management data screens 110 showing a Requisition on Requisition Item Table 46 are set forth in Appendices II, VIII and IX. It should be appreciated that data about each item is stored in Requisition Item Table 46, some of which is displayed on the screens shown in Appendices II, VIII and IX. The data stored can additionally include customer variable data. That is, the fields on Requisition Item Table 46 can be expanded to include specific item details used by a particular customer, especially when reports from requisition databases are transferred to the customer's host computer (not shown). The field structure for these data is maintained in customer-specific databases 42C. |
| | '683 Patent, Col. 7: 45-60 | At the bottom of Requisition Management data screen 110 (FIG. 3), and Appendices II, VIII and IX are several fields which describe the function of various function keys (F1, F2, etc.). The user uses REQI program 44A and its associated Requisition Management data screen 110 to enter the catalog or part numbers and quantities of the various items being requisitioned.<br><br>The Account Number and Requisition Number are automatically passed to REQI program 44A and its |

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | associated Requisition Management data screen 110, and displayed at the top of the Requisition Management data screen 110 in the relevant fields. For example, in the exemplary Requisition Management data screen 110 shown in Appendix II, the number 218848 has been entered in the Account Number field, and the notation "TEST NEW ONE" has been entered in the Requisition Number field. |
| | '683 Patent, Col. 16:66- Col. 17:28 | As shown in FIG. 1B, the present invention also has application to Distributor's regional customer service locations where a large number of CSRs may be placing orders directly on Distributor's host computer 210 for thousands of different customers who call in. In that environment, search program 250, which preferably comprises TV/2 search program 250, and catalog databases 236 are stored on file server 200. In this environment, file server 200 is a large personal computer, a work station or a mini-computer such as an IBM AS/400. Alternatively, the server 200 and a minicomputer (such as an IBM AS/400) can be independently connected to each local computer 200. Each CSR has a local personal computer 220 having a monitor 222, a keyboard 224 and a printer 226. Local computer 220 is provided with programs including requisition/purchasing program 240, Shell program 252 and a graphic user interface 254 (preferably EASEL Workbench program 254 for OS/2) for listing items. One or more of these may be copied |

**Claim 3, Element D:  Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | from server 220 when needed. Work-in-progress requisitions 260 are established for each customer and are attached to graphic user interface 254. Server 200 maintains complete requisitions 242, in a manner similar to the manner in which local computer 20 maintains requisition databases 42 in the embodiment shown in FIG. 1A.<br><br>Normally, in such an environment, the CSR creates Order lists for customers by entering Distributor catalog numbers into graphic user interface 254 and connecting to the Distributor mainframe 210 for price and availability. For this purpose, each local computer is connected to host computer 210 via a phone/dataline and either a gateway or a minicomputer acting as a local host. |
| | '683 Patent, Col. 17: 39-43 | The resultant lists of products are then transferred by Shell program 252 to a work-in-progress requisition 260, and then entered from graphical user interface 254 directly onto Distributor's mainframe computer 210 as orders from the applicable customer to Distributor. |
| | '683 Patent, Col. 17: 48-52 | In this regional environment, file server 200 or the minicomputer acting as local host can maintain files of completed requisitions 242 which can be subsequently used for generating reports for customers in the region. |
| | '683 Patent, Col. 18: 42- Col. 19:6 | The operating environment (regional CSR site, on-site CSR, on-site CSR networked with Customer end |

LIBW/1729742.2

# Claim 3, Element D:  Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | users and with purchaser personnel or Distributor purchasing site) will also affect the catalog databases 236 included, file server 200 size and requisition/purchasing program 240 used. In some situations (e.g., purchasing) each client computer has an independent copy of requisition/purchasing program 240; in others (e.g., on-site CSR) a single copy of the requisition/purchasing program 240 is maintained with associated local databases on the server 200. Where the requisition/purchasing program 240 and local databases are maintained on file server 200, the local database is updated after each use for the benefit of subsequent users. For example, in an environment using Fisher RIMS for requisition/purchasing program 240, if a NIST standard is selected using TV-2 search program 250 and ordered using Fisher RIMS 240 (as either a type 07 purchase from Distributer or a type 05 administrative purchase from NIST), that item is available in the applicable database for subsequent requisitions. For example, a NIST standard ordered as a type 05 item will be stored in the local database on file server 200, with NIST as the vendor for subsequent administrative purchases by Customer. A NIST standard ordered from Distributor as a type 07 item will be stored in Distributor's host databases as a type 07 available to Distributor from NIST. The local databases on file server 200 will also contain records of all items requisitioned and ordered, useful |

**Claim 3, Element D:   Means For Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)**

| Corresponding structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | to transfer files to a Customer's computer (e.g., of purchase orders placed by that Customer in a day) or to generate reports for a Customer (e.g., or requisitions placed by each Customer department and/or budget number in a week). |
| and structural equivalents thereof. | | |

LIBW/1729742.2

| Claim 3, Element D: | Means For Building A Requisition Using Data Relating To Selected Matching Items And Their Associated Source(s)[1] |
|---|---|

Because the language of the claim element indicates that there are already matching items that have been selected for inclusion in a requisition to be built by the electronic sourcing system, that is the point at which the algorithm for building a requisition begins. *See* Weaver Dec., ¶ 77. Thus, the algorithm for this claim element should not include steps such as "initiating a search for matching items," "displaying via catalog search program a hit list of search results," "selecting one or more items to be requisitioned" or "generating an order list in shell and catalog search program containing data relating to selected items." *Id.*

Moreover, the requisition/purchasing module is the software module described in the specification that performs the steps associated with building requisitions. *See* '683 Patent, FIG. 1A (requisition programs 4A, 44B, 44C, 44D and 44E); FIG. 1B (WIP Requisition 260, Requisition/Purchasing Program 240, Complete Requisitions 242). The search engine module, not the requisition/purchasing module, is used to perform the steps of "initiating a search for matching items," "displaying a hit list of search results," "selecting one or more items," and "generating an order list in shell and catalog search program containing data relating to selected items." This is another reason it would be inappropriate to include such steps in an algorithm to be executed by the requisition/purchasing module. *See* Weaver Dec., ¶ 78.

Further, the patent specification makes clear that it is only after an order list containing selected matching items is generated by the shell and catalog search engine module, that the selected matching item data on the order list is transmitted from the search engine module to the

---

[1] This claim element is also found in Claim 6, Element C of the '683 Patent. Element E of Claim 1 of the '172 Patent varies slightly. That element recites "means for building a requisition that uses data obtained from said database relating to selected matching items on said order list."

requisition/purchasing program which will then build a requisition using the transmitted selected matching item data to populate fields on the requisition form. *See* '683 Patent, Col. 12:48-53 ("Once the user has completely built the Order List 48 within Shell 52 and TV/2 search program 50, he or she can transmit it to Fisher RIMS system 40."); '683 Patent, Col. 10:21-43 ("Once Hit List 47 has been created by TV/2 search program 50, the user can view it and select particular ones of the located catalog items for Order List 48 that is being created in Shell 52, ... *the information transmitted to REQI program 44A of Fisher RIMS system 40* would also include description, list price and other information taken from the catalog database from which the selection was made.") (emphasis added); *See also* Weaver Dec., ¶ 79.

Thus, based on the language of the claim element and the description of the system's operation in the patent specification, the algorithm corresponding to the "means for building a requisition using data relating to selected matching items and their associated source(s) is simply stated as follows:

> (1) transferring data relating to selected item(s) from hit list(s) that were returned from the search(es) to a requisition module; and (2) building a requisition using data from the selected matching items to populate certain fields on the requisition form; and structural equivalents thereof.

2

**Claim 3, Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items[1]**

**Function:** processing the requisition to generate one or more purchase orders for the selected matching items.

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| a computer which is programmed with special-purpose software modules including a purchasing module to execute an algorithm which includes the steps of: | | |
| (1) accepting the requisition; | '683 Patent, Col. 15: 20-21 | Once a requisition has been inventory sourced and accepted by the CSR, |
| and (2) generating one or more purchase orders based on the data included in the requisition relating to the matching items returned from searching selected product catalogs and based on predetermined rules relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition); | '683 Patent, Col. 15:20-59 | Once a requisition has been inventory sourced and accepted by the CSR, it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3. For example, the requisition represented by the Requisition Item Table 46 of Appendix IX, if accepted without further revision by pressing function key F6 ("ACCEPT"), would result in the generation of the following three purchase orders:<br><br>A. Line 002 would be ordered from on-site distributor-owned inventory;<br><br>B. Line 004 would be ordered from on-site customer-owned |

---

[1] This claim element is also found in Claim 6 of the '683 Patent, Element D.

# Claim 3, Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items[1]

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | inventory (a transfer internal to the customer); and<br><br>C. Lines 001 and 003 would be ordered, respectively, from Distributor's "DEL and "EDC" warehouses.<br><br>Of these three purchase orders, Orders A (type "01") and C (type "03") are shared between host computer 10 and local computer 20 (as shown in FIG. 3). Upon execution of Order A, the inventory records on both computers for Distributor-owned JIT inventory are adjusted synchronously. A purchase order is generated by host computer 10 immediately thereafter. Order B (type "06") is executed and stored only on local computer 20. Upon execution of Order B, the inventory record on local computer 20 is adjusted (the host computer contains no records on Customer-owned JIT inventory or on items ordered by Administrative Purchases). For Administrative Purchases (type 05 items), a purchase order is printed, and mailed or faxed, locally by computer 20 as indicated at step 118 in FIG. 3, or via host computer 10 via EDI (if EDI was selected in the Header of Appendix I and an EDI transfer arrangement existed with vendor).<br><br>It is an important feature of the present invention that a requisition may be filled by searching and selecting from a catalog database of items, inventory sourced, and the resulting requisition then divided into one or more purchase orders. This contrasts with known prior art CD-ROM catalog orders. This contrasts with known prior art CD-ROM catalog systems in which only a single purchase order |

LIBW/1729811.1

**Claim 3, Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items[1]**

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | to a single supplier is built without reference to inventory records, and in which the information used to create the purchase order is limited to that contained in the product catalog of a single vendor. |
| | '683 Patent, Col. 10:52-64 | A purchase order then would be generated for this corresponding Distributor item as further described below.<br><br>By contrast, an item selected from the Fairmont catalog would be transferred to Fisher RIMS system 40 with the vendor number for Fairmont, and would be recognized during inventory sourcing as either a type 07 product (that Distributor orders from Fairmont) or as a type 05 item (that Customer orders from Fairmont as an Administrative Purchase). In either of these two cases, a purchase order would be generated for an item, corresponding to a desired catalog item, that is identified by the same Fairmont catalog number that was requisitioned. |
| | '683 Patent Col. 18:18-29 | Once responses from either or both have been obtained, the Distributor purchasing employee can use the item list in EASEL interface 254 to create one or more of the following purchase orders:<br><br>1. an order from the customer to the supplier (an Administrative Purchase);<br><br>2. an order from the customer to Distributor (for a type 07 product); and |

LIBW/1729811.1

# Claim 3, Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items[1]

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | 3. an order from the Distributor to the supplier (usually providing for direct shipment from the supplier to the customer or to a JIT site maintained by Distributor for the customer). |
| | '683 Patent, Col. 17: 44-48 | The CSR, knowing which items are available from which Distributor warehouse and direct-shipping supplier, then may divide the customer's requested items into multiple orders, so as to assure that each order is completely filled by a single shipment. |
| | '683 Patent, Appendix IX |  |
| | '683 Patent, FIG. 3 |  |
| | '683 Patent, Col. 1:10-35 | There are a number of known requisition/purchasing systems that manage and process requisitions and purchase orders. One such system is the Fisher |

4

LJBW/1729811.1

## Claim 3, Element E: Means For Processing the Requisition to Generate One or More Purchase Orders for the Selected Matching Items[1]

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | Scientific Requisition and Inventory Management System ("Fisher RIMS"), described U.S. Pat. No. 5,712,989, filed Apr. 2, 1993 and assigned to Fisher Scientific Company of Pittsburgh, Pa., the disclosure of which is incorporated herein by reference. As its title suggests, Fisher RIMS can also manage inventory. In the Fisher RIMS system, requisition records are created from a real-time interaction between a host computer (generally a mainframe) and a local computer (generally at a customer site), with each computer using data from its own respective database of inventory in conjunction with information entered by a customer service representative operating the local computer. By accessing its respective database, each computer can build and transmit to the other computer communications blocks of data relating to a particular requisition of an item in inventory (or to the management of the inventory itself). The other computer can then use the received data to continue processing of the requisition. Thus, requisition records are created from a real-time interaction between the host and local computers, with each computer using data from its respective database in conjunction with information entered by a customer service representative operating the local computer. |
| | '683 Patent, Col. 14:46-65 | For example, as shown in Appendix IX, product type "01" for the item on line 002 indicates that the requested requisition item is available as Distributor- |

LIBW/1729811.1

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | owned inventory in the JIT inventory that the vendor/distributor maintains near local computer 20, either for the particular Customer or for a group of customers. Product type "06" for the item on line 004 indicates that this item is available for the requisitioner employed by the Customer from inventory owned by Customer's purchasing department but managed by local computer 20. Product type "03" for the items on lines 001 and 003 indicates that these are regular Distributor items that the communication between Distributor's host computer 10 and local computer 20 determined were available in sufficient quantity at one or another of Distributor's general warehouses designated "DEL" and "EDC" in the location ("LOC") field. Product type "05" (not shown in Appendix IX) indicates that a requisitioned item is to be purchased by Customer directly from an outside supplier, using an Administrative Purchase Order that local computer 20 creates and prints (or transmits) for Customer. |
| and structural equivalents thereof. | | |

LIBW/1729811.1

**Claim 3, Element E:**     **Means For Processing The Requisition To Generate One Or More Purchase Orders For The Selected Matching Items[1]**

A person of ordinary skill in the art would understand that the algorithm associated with the claimed functions of Claim 3, Element E; Claim 6, Element D of the '683 Patent and Claim 1, Element F of the '172 Patent that is executed by the purchasing module of the system is described in the patent specification and corresponds to the following steps:

> (1) accepting the requisition; and
>
> (2) generating one or more purchase orders based on the data included in the requisition relating to the matching items selected from the items returned from searching selected product catalogs and based on predetermined rules relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition); and structural equivalents thereof.

*See* Weaver Dec., ¶ 37 (submitted herewith). Thus, contrary to Lawson's contention, this element is adequately supported by the specification.

As described in the patent specification, the first step in the algorithm for generating one or more purchase orders from a requisition is that the system "accepts" the requisition. *See* '693 Patent, Col. 15:20-26 ("Once a requisition has been ... accepted ... it can be converted to one or more purchase orders, ..."). The next step in the algorithm is that the system generates one or more purchase orders based on predetermined *rules* relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition). *See* '683 Patent, Col. 10:48-64; Weaver Dec., ¶ 38.

As further described in the specification, the system analyzes each line item of the requisition and the source associated with such item and generates purchase orders to each

---

[1]  This claim element is also found in Claim 6, Element D of the '683 Patent. In addition, this discussion applies to Claim 1, Element F of the '172 Patent which recites "means for processing said requisition to generate purchase orders for said selected matching items."

distinct source associated with the requisition line items. For example, as described at '683 Patent, Col. 10:48-64, the system recognizes one line item on a requisition as an item associated with a first Distributor (because it is a type 01 product) and generates a first purchase order to that Distributor. When an item included on the requisition is associated with a second distributor (*e.g.*, as either a type 07 product or a type 05 product), the system recognizes that requisition line item as being associated with a second distributor, *e.g.*, "Fairmont," and generates a second purchase order corresponding to the "Fairmont catalog item" that was requisitioned. Thus, the system generated a first purchase order for the requisition line item associated with the first Distributor and a second purchase order for the requisition line item associated with the second distributor based on pre-established rules recognizing a type 01 product as associated with a first Distributor and a type 05 or type 07 product as an item associated with a different distributor. *See also* '683 Patent, Col. 14:46-65 (explaining the different sources associated with product types 01 to 05).[2] Weaver Dec., ¶ 39.

Another example of the purchase order generation algorithm is provided with reference to '683 Patent, Col. 15:20-49, FIG. 3 and Appendix IX. Again, that description references a step wherein a requisition is accepted and another step wherein multiple purchase orders are generated from the requisition shown in Appendix IV based on the different sources from which each requisitioned item is to be ordered. According to the specification, "line items 001 and 003" on the requisition shown in Appendix IX would result in generation of a first purchase

---

[2] As described at Col 14:45-65, product type 01 indicates that the requisitioned item is to be sourced from the inventory owned by the first Distributor located in the JIT inventory that the first Distributor maintains at the customer's location. Product type "03" indicates that the requisitioned items are to be sourced from one of the first Distributor's warehouse locations. Product type "05" is associated with a requisitioned item to be purchased from an outside supplier. Product type "06" is associated with a requisitioned item to be sourced from inventory already owned by the customer. Product type "07" is associated with a requisitioned item to be purchased from an outside supplier.

2

order because both of those requisitioned items are being procured from the first Distributor's external warehouses (*e.g.*, the line items are both type 03 products). A second purchase order would be generated for "line item 002" because that item is a type "01" product which is being sourced from on-site Distributor-owned inventory. And, a third purchase order is generated for requisition line item 004 because it is a type "06" product that is sourced from the customer's own inventory. This discussion further indicates that if a type "05" product had been included on the requisition, *i.e.*, a product to be procured from a second outside distributor, the system would have generated another purchase order to the second distributor, which could then be transmitted to the distributor by mail, fax or EDI (electronic data interchange). *See also* '683 Patent, Col. 18:18-29 (describing the system generating one or more purchase orders from the customer to the Distributor or another supplier). Weaver Dec., ¶ 40.

A person of ordinary skill in the art would understand from these descriptions in the patent specification that certain rules could be predetermined in the requisition/purchasing program that would assist the requisition/purchasing program with the analysis of a requisition and the execution of a process whereby one or more purchase orders are generated from a single requisition, such as, generating one purchase order to each distinct distributor/supplier/source associated with the various line items in the requisition. Once the computer program recognizes the sources associated with each line item (by codes associated with sources, for example), it is a simple process for the program to group the line items for each source together on separate purchase order forms. Weaver Dec., ¶ 41.

Thus, contrary to Lawson's contention that the algorithm associated with the functions of these claim elements is not disclosed, there is a detailed disclosure of the algorithm disclosed in the specification.[3]

**Claim 21 Of The '516 Patent**

As the Court is aware, Lawson contends that the claim element "a multiple purchase order generation module" in Claim 21 of the '516 Patent should be construed as a means-plus-function element pursuant to Section 112, ¶6. *e*Plus will not repeat here its arguments with respect to the presumption that arises when the term "means" is not employed in the claim term. That is set forth fully in *e*Plus's Opening Brief at 14-15.

Suffice to say, at the January 27 hearing, counsel for Lawson conceded that all of the other "module" elements of claim 21 of the '516 Patent had sufficient structure. *See* Jan. 22, 2010 Tr. at 73-75. Thus, the "requisition module" in claim 21 recited sufficient structure to include "data fields for user-generated criteria to generate at least partial criteria corresponding to a desired item"; similarly, the "catalog collection searching module" contains sufficient structure to search "a collection of catalogs of items stored in electronic format," using "criteria used to select less than the entire collection" in order "to generate additional search-module criteria for the data fields of the requisition module."

However, the "multiple purchase order generation module" uses the requisitions "created" from the "user generated criteria" and the "search-module criteria." Jan. 22, 2010 Tr. at 147-150. Accordingly, if the structure is sufficient for the "requisition module" and the "search module" it is difficult to understand how the "multiple purchase order generation

---

[3] The '989 Patent, the disclosure of which is expressly incorporated by reference into the specification of the patents-in-suit, also provides a description of generation of a purchase order from a requisition. *See* Young Dec. Ex. 5 at Col. 17:16-Col.18:50; FIGS. 2A, 5A and 5B.

4

module" which utilizes these two admittedly structurally-sufficient modules, is itself structurally indefinite. Lawson's concessions condemn its own argument.

LIBW/1730001.1

**Claim 3, Element F:  Means For Converting Data Relating to a Selected Matching Item[1]**

**Function:** converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| a computer which is programmed with special-purpose software modules to execute an algorithm which includes the steps of: | | |
| (1) maintaining a cross-reference table or file identifying cross-referenced items, identical items or generally equivalent items and one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; | '683 Patent, Col. 4:60-Col. 5:8 | Where the Fisher RIMS system is in use with electronic sourcing system 5, a host computer 10 located at a Distributor site is also provided, as shown in FIG. 1A. Host computer 10 controls all inventory, pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory databases 11. Host pricing and inventory databases 11 may include such information as: descriptions of the items and the quantities thereof available at a particular Distributor warehouse and at other Distributor warehouses; item records for each Product regularly sold by the Distributor; discount records by Customer; and cross-references from the Distributor's catalog number to its corresponding vendor's part (catalog) number and to similar corresponding catalog numbers of other vendors (suppliers or distributors) for the same Product. |
| (2) for a selected matching item, | '683 Patent, Col. 14:4- | The next step is that of inventory sourcing using RIMS |

---

[1] This claim element is also found in Claim 6 of the '683 Patent, Element E.

**Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item**

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| accessing the cross-reference table or file to identify an identical item or generally equivalent item cross-referenced to the selected matching item and associated with a different source; and | Col. 15:9 | inventory sourcing program or programs 44B in Fisher RIMS system 40, as shown in FIG. 3. Inventory sourcing is the process of determining what inventory will be used to fill the requisition. Pricing is also performed in this step when it is called for. Inventory sourcing in Fisher RIMS system 40 is performed on both local computer 20 and host computer 10.

Within Fisher RIMS system 40, a Requisition Item Table 46, as shown in Appendix VIII (similar to that shown in Appendix II, but including more items), can be inventory sourced by pressing the key F6 from REQI program 44A represented by Requisition Management data screen 110 shown in Appendix VIII (and in Appendix II). Since inventory records on JIT items (type 01 and 06) are maintained in inventory database 42B, lines 002 and 004 in Appendix VIII show the availability of these items in inventory (49 items available for line 002, and 0 items available for line 004). After the F6 key has been pressed, host computer 10 searches its host pricing and inventory databases for availability of the various items listed on Requisition Management data screen 110 in different inventory locations (e.g., different warehouses) as described in further detail, below.

After such inventory sourcing, and assuming that no errors occurred during sourcing (as indicated by decision step 116 in FIG. 3), the contract price, source (inventory) location and available quantity or other fields are communicated back to computer 20 by host computer 10, and entered and displayed in the Requisition Management Screen. This can best be seen |

# Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | by comparing lines 001 and 003 of Appendix VIII to Appendix IX, especially as to "QTY AVAIL" (quantity available), "LOC" (inventory location) and price. As Appendix IX indicates, an inventory-sourced Requisition Item Table 46 typically contains the same items, but with more completed fields (including price, product type and inventory location). Moreover, as discussed above, an entry in an inventory-sourced Requisition Management screen may indicate for a requisitioned item a vendor and vendor catalog number that has been changed, from what was obtained from a catalog search, to a corresponding vendor and vendor catalog number for that item from another source (e.g., Fisher--which has its own catalog number for that manufacturer's item that Fisher distributes). For example, as shown in Appendix IX, product type "01" for the item on line 002 indicates that the requested requisition item is available as Distributor-owned inventory in the JIT inventory that the vendor/distributor maintains near local computer 20, either for the particular Customer or for a group of customers. Product type "06" for the item on line 004 indicates that this item is available for the requisitioner employed by the Customer from inventory owned by Customer's purchasing department but managed by local computer 20. Product type "03" for the items on lines 001 and 003 indicates that these are regular Distributor items that the communication between Distributor's host computer 10 and local computer 20 determined were available in sufficient quantity at one or another of Distributor's general warehouses designated "DEL" and |

3

# Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | "EDC" in the location ("LOC") field. Product type "05" (not shown in Appendix IX) indicates that a requisitioned item is to be purchased by Customer directly from an outside supplier, using an Administrative Purchase Order that local computer 20 creates and prints (or transmits) for Customer.<br><br>The inventory sourcing process described above also determines the net prices shown in Appendix IX for each item. Type 01 and type 03 items are priced by Distributor's host computer 10 searching host databases 11, which contain various formulae and tables of Distributor's pricing agreement with the Customer. Host computer 10 also prices any type 04 or type 07 item, if present. These prices were transmitted to local computer 20 along with the location and availability information for the type 01 items. Prices for type 05 and 06 items are maintained in the local computer's 20 own databases 42B and 42C. |
| (3) replacing the selected matching item and its associated source with the identical item or generally equivalent item and its different source in a requisition; | '683 Patent, Col. 15: 60- Col. 16:32 | Electronic sourcing system 5 also contains the capability to log messages returned from inventory sourcing program or programs 44B of Fisher RIMS system 40. Messages will be logged for any of the following reasons: (1) part number changes for line sent to ESCP program 80; (2) list price from inventory sourcing program 44B differs from list price returned from ESCP program 80; (3) vendor name from inventory sourcing program 44B differs from vendor name returned from ESCP program 80; (4) on a "master or blanket" order, in which local computer 20 tracks the amount of purchases against a blanket or cumulative sum available and/or in |

# Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | which there is limited access to products or limited access to certain users, the part has already been entered on another line; and (5) the maximum number of line items has been reached.<br><br>Referring again to FIG. 2, a user is able to view the messages returned by pressing the ALT F11 function keys in REQI program 44A and its associated Requisition Management screen 110 in Fisher RIMS system 40. After the ALT F11 keys have been pressed, REQI program 44A will link to ESMV program 112 via XCTL link 111 for displaying the message log created. ESMV program 112 is a function of Fisher RIMS system 40. ESMV program 112 allows the user to page through the messages created and then to return to Requisition Management screen 110. A sample ESMV message screen 81 associated with ESMV program 112 is shown in Appendix X.<br><br>The first two messages of the message screen of Appendix X indicate that a part number for line 001, identified as part number 53610, was successfully added in substitution for a prior part originally entered as part number S100-06 (from the Fisher Scientific catalog). These messages were generated because the originally entered part (S100-06) did not exist in the Fisher catalog, but its corresponding part number S100-06 (that was located by another search in another catalog) did exist in that other catalog. |

**Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item**

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | | The next message indicates that the vendor for part number 53610 was changed in line 001 from "VN00000001"--meaning that the originally requested vendor (Fisher) was changed. The next two messages indicate that two other part numbers (53620 and 53650) were successfully added as lines 002 and 003. |
| | '683 Patent, Appendix VIII |  |
| | '683 Patent, Appendix IX |  |

6

**Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item**

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Appendix X | APPENDIX X<br><br>*** REQUISITION MANAGEMENT SCREEN ***<br><br>ACCT NBR: 228848 002 REQ NBR: TEST NEW ONE<br>COMP: 001 REL NBR:<br>ELECTRONIC SOURCING MESSAGES<br>LINE NUMBER 001 PART NUMBER 53610<br>PART ADDED SUCCESSFULLY<br>LINE NUMBER 001 PART NUMBER 53610<br>REPLACEMENT WAS MADE FOR PRIOR PART: S160-06<br>VENDOR CHANGED FROM: VN00000001<br>LINE NUMBER 002 PART NUMBER 53620<br>PART ADDED SUCCESSFULLY<br>LINE NUMBER 003 PART NUMBER 53650<br>PART ADDED SUCCESSFULLY |
| | '683 Patent, Col. 10:43-52 | When the resultant requisition is sourced, however (as described below), Distributor's mainframe host computer 10 would recognize the entry for the item from vendor Promega's catalog (R6012, 00005860) as corresponding to that same item available from Fisher's catalog (PRR6012, 00000001). The system thus would transmit back the Customer's contract price and availability for corresponding item PRR6012 as a type 03 (regular Distributor) product available from one of distributor's inventory locations. A purchase order then would be generated for this corresponding Distributor item as further described below. |
| | '683 Patent, Col. 16:54-62 | If, however, the sourced requisition was split into more purchase orders than the Customer purchasing employee might prefer, the intervention of the Distributor CSR could be invoked to revise and re-source the requisition (causing, for example, certain items originally sourced as type 01 products to be sourced for this order as corresponding type 03 products from a common Distributor warehouse with other type 03 products on the requisition). |

7

# Claim 3, Element F: Means For Converting Data Relating to a Selected Matching Item

| Corresponding Structure: | Specification Support: | Text from Patent: |
|---|---|---|
| | '683 Patent, Col. 17: 29-48 | When a customer asks for products by manufacturer part number or a competitor's catalog number, the CSR has access to cross-reference files, as earlier described, either maintained on the local host or maintained on the Distributor host computer 210.<br><br>Appropriate Distributor catalogs and manufacturer catalogs then are consulted, using TV-2 search program 250 and proper selection of Distributor catalogs and of catalogs and bulletins from manufacturers whose products Distributor regularly sells. Catalogs and bulletins are contained in catalog database 236. The resultant lists of products are then transferred by Shell program 252 to a work-in-progress requisition 260, and then entered from graphical user interface 254 directly onto Distributor's mainframe computer 210 as orders from the applicable customer to Distributor. The CSR, knowing which items are available from which Distributor warehouse and direct-shipping supplier, then may divide the customer's requested items into multiple orders, so as to assure that each order is completely filled by a single shipment. |
| and structural equivalents thereof. | | |

LIBW/1729823.1

| Claim 3, Element F: | Means For Converting Data Relating To A Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source[1] |

Lawson contends this claim element lacks an adequate written description. *e*Plus disagrees. And no jurist has ever so found.

As Dr. Weaver opines, a person of ordinary skill in the art would readily appreciate that the specification of the patents-in-suit provides a description of the structure corresponding to the claimed function of this claim element and that the algorithm which corresponds to the claimed function includes the steps of:

> (1) maintaining a cross-reference table or file identifying cross-referenced items, identical items or generally equivalent items and one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; (2) for a selected matching item, accessing the cross-reference table or file to identify an identical item or generally equivalent item cross-referenced to the selected matching item and associated with a different source; and (3) replacing the selected matching item and its associated source with the identical item or generally equivalent item and its different source in a requisition; and structural equivalents thereof.

Weaver Dec., ¶¶ 42, 46.

The patent specification clearly discloses that the electronic sourcing system maintains cross-reference tables which include "cross-references from the Distributor's catalog number to its corresponding vendor's part (catalog) number and to similar corresponding catalog numbers of other vendors (suppliers or distributors) for the same Product." *See* '683 Patent, Col 4:66-Col. 5:8. As described in the specification, after the system has built a requisition with one or more matching items selected from hit lists returned as results of searches of the catalog database(s) by the search engine program, the next step is inventory sourcing. *See* '683 Patent, Col. 14:4-Col.

---

[1] This discussion also applies to Claim 6, Element E of the '683 Patent.

15:19; Col. 15:60-Col. 16:32. The system can search the databases that include the cross-reference tables ('683 Patent, Col. 14:21-22).[2] If in accessing the cross-reference tables, there is another corresponding item available from a different source, such item may replace the item originally included in the requisition. '683 Patent, Col. 14:11-65 and Appendices VIII to IX (illustrating exemplary Requisition Management screens in Appendices VIII and IX after inventory sourcing and in Appendix X illustrating a message generated by the system after accessing the cross-reference tables where a part number was added in substitution for the entered part number because the entered part number did not exist). As further described at Col. 15:60-Col. 16:32 of the '683 Patent, if the cross-reference tables provide an item that corresponds to a requisitioned item that is available from another source, that item may be substituted for, or replace, the requisitioned item, as shown in Appendix X where a "REPLACEMENT WAS MADE FOR PRIOR PART: S100-06 LINE NUMBER 001 PART NUMBER 53610." Weaver Dec., ¶ 43.

A person of ordinary skill in the art would understand from these descriptions in the patent specification that database(s) in the electronic sourcing system maintain cross-reference tables that cross reference from an item associated with a first source (*e.g.*, supplier, distributor, manufacturer, vendor) to a corresponding, identical, similar, equivalent, related, replacement and/or substitutable item from another source. *See* '683 Patent, Col. 5:4-8 (cross-references to similar corresponding catalog numbers of other vendors); 10:43-52 (system recognizes an item as corresponding to the same item available from another vendor); 16:19-32 (part from a different vendor substituted because it was no longer available from first vendor). Weaver Dec., ¶ 44.

---

[2] These are the same databases described at Col 4:66-Col. 5:8 as maintaining the cross-reference tables.

LIBW/1730004.1

The specification describes different situations in which a system user may access such cross reference tables, for example, during inventory sourcing ('683 Patent, Col. 14: 4-45); when performing searches for items in the product catalogs ('683 Patent, Col. 16:19-32 Col. 17:29-48), and when generating purchase orders from a requisition ('683 Patent, Col. 16:50-62). Weaver Dec., ¶ 45.

Thus, the patent specification clearly discloses the algorithm associated with the "means for converting data" claim elements.[3]

Indeed, once these "cross-reference" tables are created — as disclosed and discussed in the patents — the computer may process a multitude of functions as a result. As the Court observed, the cross-reference tables may reference "similar" products, "identical," "generally equivalent," "substitute" products, or "related" products. A cross-reference table enables each such function.

---

[3] U.S. Patent No. 5,712,989 — the disclosure of which is expressly incorporated by reference into the specification of the patents-in-suit — also provides a description of the cross-reference tables used for converting data. *See* '989 Patent (Young Dec. Ex. 5), Col. 10:39-56, Table V; Col. 14:29-47; Col. 31:59-Col. 34:67, FIG. 2A; and Table XVII.

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2010, the foregoing PLAINTIFF *e*PLUS INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS CONSTRUCTION OF CERTAIN MEANS-PLUS-FUNCTION CLAIM ELEMENTS was electronically filed with the Clerk of the Court using the CM/EFC system, which will then send a notification of such filing (NEF) to counsel of record. Copies of the foregoing were also served on the following:

Daniel W. McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
Lawsonservice@merchantgould.com
(by overnight courier)

Robert A. Angle (VSB# 37691)
Dabney J. Carr, IV (VSB #28679)
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23218-1122
Telephone: (804) 697-1238
Facsimile: (804) 698-5119
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
(by hand delivery)

***Counsel for Defendant Lawson Software, Inc.***

/s/ Henry I. Willett, III
Henry I. Willett, III (VSB #44655)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com

***Counsel for Plaintiff ePlus, inc.***