# APPENDIX B

# APPENDIX B-UNDERSTANDING OF LAW TO BE APPLIED TO INTERPRET CLAIMS

1.  I understand that it is a basic principle of patent law that before analyzing the infringement or validity of a patent claim, the claim language must be properly construed to determine its scope and meaning.

2.  In performing my analysis of the proper interpretation to be given to the claims of the patents-in-suit, I have followed the Supreme Court's teaching in *Markman v. Westview Instruments* and the Federal Circuit's teaching in *Phillips v. AWH Corp*. I understand that these decisions provide that when construing the terms of a patent claim, I should first look to the "intrinsic evidence" for their meaning, starting with the language of the claims themselves. As an initial matter, claim terms should be given their ordinary and customary meaning to a person of ordinary skill in the art.

3.  In addition, I am informed and understand that if a term used in a claim has a plain and ordinary meaning on its face, I am not to construe any special meaning for that claim term unless the patentee provided a special meaning in the patent.

4.  Moreover, because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.

5.  Differences among claims can also be a useful guide in understanding the meaning of particular claim terms. For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.

6. I further understand that I may also consult the patent specification and drawings in formulating the proper construction to be accorded to particular claim terms since the patent claims should be read in view of the specification of which they are a part.

7. Moreover, the specification may reveal that the inventor gave a special definition to a claim term which differs from the ordinary and customary meaning of such terms, in which case, the inventor's lexicography governs. In other cases, the specification may reveal an intentional disavowal of claim scope by the inventor and, in such cases, the inventor's intention also governs the meaning.

8. However, it is my understanding that it is improper to limit the claims to specific embodiments described in the specification or to import limitations from the specification into the claims. That is because the claim terms mean what they say to a person of ordinary skill in the art, and it is improper to look first to the embodiments in the specification to interpret the terms of the claims. Moreover, I further understand that it is improper to limit the scope of the claims to the specific embodiments disclosed in the specification even if only one embodiment is described. This is because the specification does not delimit the patent owner's legal rights. That is the function and purpose of the claims. Furthermore, a person of ordinary skill in the art has knowledge beyond what is written in the specification. This knowledge may be used to understand the meanings of the claim terms.

9. In addition to consulting the specification, I understand that the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the scope of the invention during prosecution, thereby making the claim scope narrower than it would otherwise be understood by a person of ordinary skill in the art. However, because the prosecution history represents an

ongoing negotiation between the Patent Office and the inventor, rather than the final product of the negotiation which is the issued patent, it lacks the clarity of the specification and is therefore less useful for claim construction purposes.

10. I further understand that extrinsic evidence such as inventor testimony, dictionaries and learned treatises are less reliable than the intrinsic record in determining the meaning of claim language because such evidence often focuses the inquiry on the abstract meaning of the terms rather than on the meaning of such terms in the proper context of the claims and patent specification. Such evidence, however, may be useful to confirm that the inventor used a claim term in a manner consistent with its customary and ordinary meaning to persons of ordinary skill in the art.

11. I am further informed that a somewhat different claim construction analysis applies with respect to means-plus-function claim elements. As to such claim elements, I am informed that the Patent Act permits a claim element to be expressed in a manner that recites a means or step for performing a specified function without the recital of structure, material, or acts in support thereof. I am further informed that for such a claim, the claim is to be construed to cover the corresponding structure, material or acts described in the patent specification and equivalents thereof. Thus, in construing such claims, the Court is required to consult the patent specification in order to determine the relevant structures for performing the stated function.

12. Therefore, I am informed that the Court must first determine whether an asserted claim element invokes the means-plus-function provision of the Patent Act. Further, I am informed that if the word "means" appears in a claim element in association with a function, the Court is to presume that such claim element is a means-plus-function element. Without the term "means," a claim element is presumed not to be a means-plus-function element.

3

13. I am informed that the patent statute does not permit one to construe the "function" in a manner different from that explicitly recited in the claim. Nor does it permit the "structure" to be interpreted to incorporate structure from the patent specification beyond that necessary to perform the claimed invention. In other words, features that do not perform the recited "function" do not constitute corresponding structure and thus do not serve as claim limitations. However, I am informed and understand that the "structure" should be interpreted to encompass all structures in the specification corresponding to the means-plus-function element and any equivalent structures. Thus, I understand that when multiple embodiments in the specification correspond to the claimed function, the claim element should be interpreted to embrace each of the embodiments.

14. I am also informed and understand that once the structure has been indentified that will perform the function recited in the claim, no additional structure that is unnecessary should be included in the construction.

15. To summarize, I am informed and understand that to construe claim elements identified as means-plus-function elements, the Court must: a) define the function of the element; b) identify the structure, material and/or acts in the patent specification corresponding to the function; and c) define the claim element to mean the structures, materials and/or acts disclosed in the patent specification and their structural equivalents.

16. Moreover, I am informed and understand that a general purpose computer, or microprocessor, programmed to carry out an algorithm, creates a new machine because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from programmed software. The instructions of the software program that carry out the algorithm create a special purpose

4

machine for carrying out the particular algorithm. Thus, I understand from the teaching of the Federal Circuit, that in a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the structure corresponding to the claimed means for performing the function recited in the claims is to be construed as to the special purpose computer programmed to perform the disclosed algorithm.

17. I am further informed and understand that the requirement of an algorithm for computer-software-implemented means-plus-function elements is liberally construed to encompass any description sufficient to allow a skilled artisan to program a computer to perform the applicable function including as a mathematical formula, in prose in the specification, as a flow chart or in any other manner that provides sufficient structure.