# EXHIBIT 1

1

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                  RICHMOND DIVISION

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                      :
ePLUS, INC.,                          :
                                      :
                    Plaintiff,        :
v.                                    :  Civil Action
                                      :  No. 3:09CV620
LAWSON SOFTWARE, INC.,                :
                                      :  January 27, 2010
                    Defendant.        :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:
```

```
        COMPLETE TRANSCRIPT OF THE MARKMAN HEARING
          BEFORE THE HONORABLE ROBERT E. PAYNE
               UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

Scott L. Robertson, Esq.
Jennifer A. Albert, Esq.
GOODWIN PROCTOR
901 New York Avenue, NW
Washington, D.C.   20001

Craig T. Merritt, Esq.
CHRISTIAN & BARTON
909 E. Main Street, Suite 1200
Richmond, VA   23219-3095

          Counsel for the plaintiff ePlus


              DIANE J. DAFFRON, RPR
             OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT
```

1  Court.

2             THE COURT:  Let me ask you this question:

3  Why is it that there are 12, 13, 14 different column

4  citations in there and lines?  And how do they fit

5  together?  And why do I need to have so many of them?

6  Why is it that you can't point to one of them and say

7  "This is the structure"?

8             MR. ROBERTSON:  Because --

9             THE COURT:  Because you're making me guess

10 what all of that means or discern what all that means

11 and how it is a structure, and it sort of doesn't

12 exactly mesh together in a way that's readily

13 understood.

14            MR. ROBERTSON:  I appreciate the Court's

15 frustration with the difficulty of distilling the

16 structure from the specification.  Of course, the

17 specification was written to speak to one of ordinary

18 skill in the art, and I appreciate that the Court is

19 not one of ordinary skill in the art.  So we have tried

20 to a assist the Court in identifying that structure.

21            THE COURT:  You're not one of ordinary skill

22 in the art either.

23            MR. ROBERTSON:  I'm not, Your Honor.

24            THE COURT:  So I can't use your brief?

25            MR. ROBERTSON:  Well, my brief is -- I've

31

1   the text suggests that it is a sequence.

2            That's not what's done here.  What's done is

3   there's a jump from one column and line reference in

4   one place to another column and line reference in

5   another place.  And if you read the column and line

6   references, there's no connection between the first

7   entry and the second entry in the patent.

8            Where is that connection being made?  That

9   connection is being made in your argument.  Most of the

10  time not in the brief but in the oral argument and in

11  the slides.  And that's what happens.  And,

12  unfortunately, I don't think it fits the bill here.

13           Don't you think maybe we ought to start all

14  over again and go back and do it right?

15           MR. ROBERTSON:  No, Your Honor.

16           THE COURT:  And this may be -- I don't want

17  you to take this as personal criticism because I will

18  tell you, you're not the only one who's doing this.

19  But when you see it time after time, and you see sort

20  of the madness of trying to do what the Court of

21  Appeals wants us to do by all this cobbling together,

22  what you begin to realize is you're writing patents for

23  people and saying things about their structure on the

24  basis really of things that aren't in the record.

25  Because you can't connect cobble piece No. 1 to cobble

1  stone No. 2 except by way of reference to what the

2  lawyers are telling you.

3           And then you pick the best that makes the

4  most sense to you, but it doesn't necessarily really

5  always fit the patent.  And I'm trying to get out of

6  that mode and get something that really gets back to

7  what the Federal Circuit asks us to do.  And it sort of

8  seems to me that maybe it's time to retrench and start

9  again and do what you're doing here but do it in the

10 briefs in a textual way.  And what I think will happen

11 is if we do that, you will realize that your

12 obligations under Rule 11, and intellectual honesty

13 generally, will cause you to say, because you're being

14 made to focus this way, and just logic will compel you

15 to the conclusion, Well, yeah, maybe these are the

16 descriptions of the structure.  And it will be one,

17 two, three or four small items instead of this cobbled

18 together thing of six items that have some connection

19 in the mind of some expert.

20          I did not mean to suggest you violated any

21 rules in saying that.

22          MR. ROBERTSON:  I thank you, Your Honor, for

23 that.

24          I do appreciate the Court's observation and

25 certain that, in your words, we have to cobble

34

1  things is going to make you focus in a way you haven't

2  focused before.

3          MR. ROBERTSON:  I also observe, Your Honor,

4  that perhaps you're suggesting that this is something

5  that might require expert testimony.

6          THE COURT:  It might.

7          MR. ROBERTSON:  Maybe I can make a

8  suggestion.

9          THE COURT:  It might.

10          MR. ROBERTSON:  Perhaps we need an expert

11  affidavit that says why this structure is appropriate

12  for ePlus's constructions and Lawson's is not and uses

13  the structures as a road map to walk the Court through

14  to say this is what the essence of these constructions

15  are.

16          We can do that now as part of our briefing or

17  we can defer on that, Your Honor, and do it as part of

18  any trial of this matter when these elements are being

19  discussed.

20          THE COURT:  You want me to construe the claim

21  while the jury is sitting out in the wings?  I've tried

22  that and it doesn't work real well.  I mean, on a

23  simple case.  It was a machine.

24          MR. ROBERTSON:  I guess I don't know where

25  the Court wants to go at this point.

1          THE COURT:  I'm inclined to say let's start
2    over again.  I don't want to put you needlessly to the
3    task of slaying trees and running up billable hours.  I
4    don't believe that's right for your clients or not.
5    But I do believe that -- I believe we have kind of,
6    both sides, are missing -- as far as I'm concerned, the
7    other side is in the same basic position you're in
8    almost.

9          I think that we are where we are for several
10   reasons.  And one is the patent was prepared before the
11   Ericcson decision was issued, and when the people were
12   preparing the patent they weren't necessarily preparing
13   it having in mind the need to satisfy that test.  And
14   that creates a terrible problem for lawyers trying to
15   deal with cases.  But I think it's a problem, I would
16   have thought it's a problem, that experts have dealt
17   with, too.

18          MR. ROBERTSON:  Well, I think often expert
19   testimony is brought to bear, particularly on computer
20   software implemented inventions to identify the
21   structure disclosed.  As they say, even in the Harris
22   case, they go through and point to a number of
23   different figures and columns and lines that they
24   cobbled together to come up with the two-step sequence.
25   I don't know if they had the benefit of expert

41

1  well.

2           So I'm happy to do what the Court wants.  I

3  think I'd like to be able to deliberate and provide

4  supplemental briefing to Your Honor that supports what

5  we say the algorithm is with respect to that.

6           THE COURT:  If we do that, will we then be

7  completed with the means-plus-function interpretation

8  construction process?

9           MR. ROBERTSON:  I think so.

10           THE COURT:  Do you think we need experts?  I

11  mean, I don't think you do based on -- I'm not sure you

12  do based on the number of places that you cite, but if

13  do you, you don't have to decide today.

14           MR. ROBERTSON:  Well, you know, Your Honor, I

15  had the benefit of trying this case twice, and I've

16  also had the benefit of having experts who have been

17  sitting with me and can walk through this and having

18  talented colleagues who have backgrounds in electrical

19  engineering and computer science.

20           So to me, having read this patent so many

21  times, I can kind of navigate through it, but I

22  understand the Court doesn't have the benefit of having

23  done that and shouldn't have to do it.

24           THE COURT:  All right.  But there are a

25  couple of things I think we can resolve now.  One is

1          THE COURT:  Sure.

2          MR. ROBERTSON:  I understand a host, as

3    described in the patent, as being the supplier of the

4    goods.

5          THE COURT:  I'm not sure how that works with

6    the catalog data.  I would have thought that 236 would

7    have been up there next to the host computer and

8    connect with 210 and both of them directly or one or

9    the other would connect with the server.

10          MR. ROBERTSON:  The host computer can

11    communicate to the local computer.  The local computer

12    is communicating with the server so the data can be

13    transferred.  It's being stored in the catalog

14    databases.

15          THE COURT:  I see what you're saying.  Well,

16    I think I do.  It may be very ambitious of me to say I

17    understand.  All right.

18          MR. ROBERTSON:  Your Honor, I guess --

19          THE COURT:  So local computer is a limitation

20    that comes from where?

21          MR. ROBERTSON:  We don't think it's part of

22    the algorithm, Your Honor.  It comes from Lawson.

23          THE COURT:  Well, a local computer isn't a

24    step.  A local computer is something you use to

25    accomplish one of the steps.  It's just part of what

135

1  positions.  But I think we're not quite there yet.  And

2  I'm not going to blame you-all.  I just believe it's

3  created because of the circumstances that I outlined

4  earlier.

5          If you can come up with some modification of

6  that approach that you think is a better way to present

7  all this in a simpler more direct form in a way that I

8  can convert into an opinion on this matter, then I'm

9  amenable to you all doing that as long as both of you

10 do it the same way.

11         So if I haven't come up with a very good way

12 of accomplishing it, you-all work it out and see what

13 you'd like to do, and call me and we'll talk about it.

14         I don't see the need for any more argument on

15 it or hearings, but if you-all feel as if, after

16 talking with each other, that I need testimony from

17 some expert or something, then you can let me know.

18 And I'm using the definition of "algorithm" that you

19 all had.  I think it was in your section from the

20 Microsoft computer dictionary.  I think that's a

21 reasonably accurate one.  It looks like the Federal

22 Circuit uses it.

23         In this process, do you think we've limited

24 any of the claims that we're dealing with or going to

25 be dealing with in the patents?  One of you cited a