# EXHIBIT P

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact

**Daniel W. McDonald**
dmcdonald@merchantgould.com
612.336-4637.

March 12, 2010

Scott L. Robertson
**Goodwin Procter LLP**
901 New York Avenue NW
Washington, DC 20001

<u>Via E-Mail</u>

Re:   ePlus, Inc. v. Lawson Software, Inc.
      Case No.: 2:09-232
      M&G No.: 16391.0001USZA

Dear Scott:

We are in receipt of your letter dated March 10, 2010, that relates to discovery issues. Your letter mischaracterizes Lawson's cooperation in producing documents and responding to discovery. The letter further misrepresents Lawson's obligations. Indeed, many of the issues raised relate to productions from weeks ago that ePlus accepted without complaint until Lawson filed its motion to compel. Lawson addresses each point raised in your letter, despite the fact many of the topics have already been resolved.

### 1. Lawson's Invalidity Contentions

First, your letter appears to have been spurred more by Lawson's Motion to Compel *against* ePlus rather than any deficiencies in Lawson's productions, as you assert that our motion was not justified. ePlus repeatedly refused, however, to supplement its answers to Lawson Interrogatory Nos. 19-20, forcing us to move to compel. Lawson notified ePlus about deficiencies in ePlus's responses to Interrogatory Nos. 19-20 on February 1, 2010, one business day after receiving the responses. (See 02/01/2010 letter from J. Graham to J. Albert.) Lawson negotiated with ePlus for a month to obtain complete responses to Interrogatory Nos. 19-20.

ePlus finally agreed to supplement its response on February 25. (Letter from M. Strapp to J. Graham, dated 02/25/ 2010.) ePlus raised purported discovery deficiencies in that same letter, but its agreement to supplement was unconditional. The next day, when Lawson attempted to confirm when it could expect to receive the supplemental responses, however, ePlus reneged, stating that it would not provide supplemental response unless

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

Scott L. Robertson
March 12, 2010
Page 2

Lawson provided supplemental non-infringement contentions. (Email from E. Hynes to J. Graham, dated 02/26/2010.)

It was only at end of the negotiations process, when we indicated we would file a motion, that ePlus even raised the issue of Lawson supplementing its non-infringement contentions. And it was only after we sought a specific date from ePlus to make good on its promise to supplement that ePlus decided to renege on its agreement and instead condition compliance on a horse trade involving the newly-raised issues. Obviously this was a delay tactic. We were under no obligation to delay our motion just to participate in this eleventh hour gamesmanship.

Moreover, ePlus knows full well that it has no right to avoid discovery by conditioning its response on obtaining discovery from Lawson. ePlus has repeatedly invoked this doctrine to its benefit, as shown in the letter excerpts below:

> [4] As noted above, Lawson also initially refused to provide *any* substantive response to a similar interrogatory relating to non-infringement. Exhibit A at 11.
>
> Nothing entitled Lawson to avoid providing an answer to these interrogatories, nor did it have the right to insist on discovery from ePlus before it was required to answer. At this time all

(ePlus's Br. in Support of Mot. to Compel at 7 n.4 (Dkt. No. 93).)

> identifies the claims it asserts and the Lawson products it accuses of infringement." Nothing entitles Lawson to avoid providing an answer to this interrogatory, nor does it have the right to insist on discovery from ePlus before it is required to answer. At this time all of the claims of

(Letter from J. Albert to R. Tautkus at 3, dated 08/27/2009.)

> First, it is improper for a party to evade discovery obligations by trying to link them to discovery demands (regardless of their merits) made on an adversary. The Rule 26(f)

(Letter from J. Albert to J. Graham at 1, dated 12/11/2009.) Lawson has played by those rules and not delayed its responses based on waiting for discovery from ePlus, even to the extent of providing non-infringement contentions regarding claims ePlus later agreed it would not even assert. ePlus has fully benefited from this rule, and must now abide by it.

Lawson is ready and willing to discuss supplementing its non-infringement with ePlus, as it has indicated for over two weeks. (Emails from J. Graham to E. Hynes, dated 02/26/2010 and 03/01/2010.) Until your letter, ePlus had not even raised the issues again, let alone acknowledge Lawson's attempts to cooperate.

Moreover, as ePlus's two-month acquiescence in those responses would indicate, Lawson's December 23, 2009 Supplemental Initial Statement of Invalidity Statement is

Scott L. Robertson
March 12, 2010
Page 3

specific and complies with agreement made between Lawson and ePlus. For each reference asserted in its Supplemental Invalidity Statement, Lawson listed specific Bates ranges corresponding to that reference.

- **Lawson software that was available prior to August 10, 1994**

    o L0011698 – L0011760, L001761–L0011848, L001849–L0012144, L0012492–L012517, L0012554–L0012599, L0012800–L0012836, L0012837–L0013145, L0013146–L0013295, L0013572–L0013711, L0014416–L0014532, L0015615–L0016422, L0017726–L0017890, L0017891–L0018119;

(Supplemental Invalidity Statement at 1-2.) Lawson also specifically stated which references it was asserting under 35 U.S.C. § 102 and which combination of reference it was asserting under 35 U.S.C. § 103.

| '172 Patent Claim Element | Invalidity Contentions |
|---|---|
| 1. An electronic sourcing system comprising: | **35 U.S.C. § 101**<br>Claim 1 is directed to a process without any meaningful limitations directed to a machine. See below for a discussion of the individual elements.<br><br>**35 U.S.C. § 112 ¶ 1**<br>The specification of the '172 patent does not enable claim 1 because the specification does not enable the full scope of at least one element of claim 1. See below for a discussion of the individual elements.<br><br>The specification of the '172 patent does not describe every limitation of claim 1. See below for a discussion of the individual elements.<br><br>The specification of the '172 patent shows that the invention requires transmission of information between a requisition/purchasing system and a searching means or a system capable of creating an order list located as a result of a database search. See, e.g., Summary of Invention. Claim 1 does not, however, recite any transmission means and therefore fails the written description and enablement requirements.<br><br>**35 U.S.C. § 112 ¶ 2**<br>Claim 1 is directed to indefinite subject matter because at least one limitation of claim 1 is indefinite. See below for a discussion of the individual elements.<br><br>**35 U.S.C. § 102**<br>The Fisher RIMS system is an electronic sourcing system. U.S. Pat. No. 5,712,989 at Abstract & col. 1:15-24 (ePLUS0137677 & ePLUS0137691). The Fisher RIMS system anticipates claim 1. |

Scott L. Robertson
March 12, 2010
Page 4

| '172 Patent Claim Element | Invalidity Contentions |
|---|---|
|  | **35 U.S.C. § 103**<br>Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with the Fisher RIMS system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with U.S. Patent No. 5,319,542 and the Fisher RIMS system, U.S. Patent No. 5,694,551 or the J-CON system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with U.S. Patent No. 5,694,551 and the Fisher RIMS system, the P.O. Writer system, the SABRE system, the Gateway system, or the IBM TV/2 system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with the P.O. Writer system and the Fisher RIMS system, U.S. Patent No. 5,694,551, the J-CON system, or the IBM TV/2 system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with the SABRE system and the Fisher RIMS system, U.S. Patent No. 5,694,551, the J-CON system, or the IBM TV/2 system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with the Gateway system and the Fisher RIMS system, U.S. Patent No. 5,694,551, the J-CON system, or the IBM TV/2 system. Additionally, Lawson software available prior to August 10, 1994 renders claim 1 obvious when combined with the IBM TV/2 system and the Fisher RIMS system, U.S. Patent No. 5,694,551, the P.O. Writer system, the SABRE system, the J-CON system, or the Gateway system. |

(*See, e.g.*, Supplemental Invalidity Statement at 106-109 (claim chart relating to claim 1 of the '172 patent).) Lawson proceeded to specifically list for each claim element, each asserted reference that discloses that element, and cited specific pages of the asserted reference disclosing that element. (*See, e.g.*, Supplemental Invalidity Statement at 109-115 (claim chart relating to claim 1 of the '172 patent).) Whether a particular element is disclosed in a particular reference is relevant to both 35 U.S.C. § 102 and 35 U.S.C. § 103.

Lawson also provided an explanation of how and why each asserted prior art reference would be combined with the other asserted references. (Supplemental Invalidity Statement at 1-9 (after the invalidity claim charts).) Your letter cites only the introductory sentence of the entire section and ignores the nine pages following that sentence which fully respond.

Third, Lawson has not "backtracked" on its "agreement" with ePlus. Lawson remains willing to accept ePlus responses limited to the specific pages of the specific references cited in Lawson's Supplemental Invalidity Statement and respond to the specific explanation of the motivation to combine the references provided in that statement. This is consistent with Lawson's Motion to Compel. Given the specificity of Lawson's Supplemental Invalidity Statement, ePlus has clear, specific guidance on what it must do, and has no excuse for evading the request any longer.

Fourth, Lawson does not need to establish that the asserted references are prior art, either anticipating or obviating, before ePlus responds. Again, ePlus does not play by its own discovery rules by conditioning its response on receiving more information from Lawson. Interrogatory Nos. 19-20 narrow the issues regarding which asserted reference discloses which elements, and which asserted references would be combined. ePlus is

Scott L. Robertson
March 12, 2010
Page 5

not entitled to further delay its responses until Lawson proves the cited material are prior art, or proves anything else for that matter.

**2. Lawson Financial Information**

Your letter claims there are "inconsistencies in certain of Lawson's financial documents." ePlus also contends that it is "unable to understand" Lawson's financial documents without more information. To that end, you have requested that Lawson provide another witness to testify as to topics 2, 5, and 8 of ePlus's First Rule 30(b)(6) Deposition Notice.

These objections are much too vague to require Lawson to produce yet another witness for yet another day of deposition. Ken White, the deponent designated for Lawson's financial information, provided answers to all of ePlus's questions posed at his deposition. Lawson has provided ePlus all the relevant customer file information in its possession, custody, or control. That information contains the financial information requested. There is no basis for ePlus to demand that Lawson be required to provide another witness for the very same topics that have already been covered.

You identify no specific information you need by deposition. Therefore, Lawson sees no reason to provide another witness as to topics 2, 5, and 8 of ePlus's First Rule 30(b)(6) Deposition Notice. If ePlus is able to specify particular information needed that it could not have obtained at the prior depositions, please specify it to us for our consideration.

At a minimum, any repeat of such prior depositions should take place at the witness's convenience in Minnesota. Lawson should not be required to bear the expense of having to fly a witness across the country who has already been deposed and subject to ePlus's questions. If ePlus desires more information, it can bear that expense.

You also state that you do "not understand how detailed Lawson cost and profit information is only available in public documents (as Lawson suggests in its 01/28/2010 letter from Mr. Graham)." First, the 10-K information that was referenced in Mr. Graham's January 28, 2010, letter does provide responsive information. Further, Lawson has produced thousands of pages of additional, financial documents including:

| 09/15/09 | L0066261-067337 (Annual Reports and 10-K's) |
|---|---|
| 09/30/09 | L0135750 (Spreadsheet: US License Fees 2005-2009) |
| 10/09/09 | L0157226 (Spreadsheet: Maintenance Revenue for 2005-2009)<br>L0157227 (Spreadsheet: MS_7.1vsPrevious) |

Scott L. Robertson
March 12, 2010
Page 6

| 10/16/09 | L0204134 (Spreadsheet: SKUs) |
|---|---|
| 10/21/09 | L0234900-0235180 (S3 and M3 Product Pricing) |
| 10/26/09 | L0258430 (Spreadsheet: Services Financial) |
| 10/30/09 | L0258505 (Spreadsheet: MS_7.1_vsPrevious) |
| 12/22/09 | L0290339-340, L0290358-359, L0290363-365 (Reports based on SKUs)<br>L0290362 (Spreadsheet: Maintenance Revenue for 2005-2009) |
| 12/22/09 | L0290366 (Spreadsheet: Maintenance and License Revenue)<br>L0290393 (Spreadsheet: Services Revenue) |
| 12/29/09 | L0290457.1-0290558 (Modules/SKUs for Customers) |
| 01/05/10 | L0314204 (Spreadsheet: Maintenance and License Revenue)<br>L0314205 (Spreadsheet: Services Revenue) |
| 01/29/10 | L0314277 (Spreadsheet: Lawson US Services Partners)<br>L0314278 (Lawson 2009 10-K)<br>L0314375 (Spreadsheet: SCM Data)<br>L0314210-0314276 (FY10 Q2 Post Earning Report Card) |

While you do not specify any missing information, your insinuation that Lawson has not fully complied with ePlus's requests is contrary to the facts. Not only has Lawson provided the financial documents in its possession, Lawson even compiled financial information in a format that Lawson does not maintain or use, for ePlus's benefit. Lawson went above and beyond its obligations under the rules. You have no right to criticize these efforts based on nothing more than innuendo.

You further contend that Lawson's February 2, 2010, supplemental response to ePlus's Interrogatory Nos. 24 and 25 is incomplete. The February 2, 2010, supplemental response included a ten-page reference list of each of Lawson's customers and the specific Bates range of the documents related to those customers. That was in addition to Lawson's licensing spreadsheet and the thousands of pages of customer files that related to that spreadsheet. Again, Lawson referenced hundreds of customers for ePlus's convenience despite that information already being provided. Lawson will review the materials for the three names that were not specified and provide to you that additional information, if any, by March 19, 2010.

You have also requested information related to the third quarter of Lawson's 2010 fiscal year. Lawson will provide that information by March 19, 2010.

Scott L. Robertson
March 12, 2010
Page 7

### 3. Lawson's S3 Demonstration Laptop

Your letter contends that Lawson's most recent reconfiguration of the S3 demonstration laptop "does not address several of the problems" you identified in prior correspondence. First, it must be stressed that Lawson does not have a demonstration version of its S3 software as you have requested. Thus, there is not a "problem" with laptop, but rather a problem with your requests. Lawson, for ePlus's convenience, created a demonstration laptop that is not representative of what Lawson would use to demonstrate its system. Your continued requests for additional features on that laptop is inconsistent with any system that Lawson would use or offer for sale to a customer. Lawson declines your request to again artificially modify the system.

You mistakenly contend that "Lawson has unreasonably constrained ePlus's ability to review the full functionality and capability of the accused software." The fact that the software does not perform the way you want it to perform does not mean that Lawson has blocked your access to it. Indeed, it confirms that the system as sold by Lawson does not infringe ePlus's patent claims.

Lawson previously provided a demonstration laptop with approximately 300 items. You requested that we provide more. Lawson agreed to add 600 items to the system. You now contend that "each of the 900 additional items Lawson imported into the Item Master were provided from a single vendor (Immucor Gamma)." That statement is incorrect. The demonstration laptop contains information from multiple companies. Indeed, your statement that "over three quarters of the items in the Item Master available from only one vendor" is consistent with the fact that more than one company's data is present. Moreover, the 900 items on the system is more than adequate to demonstrate the functionality of the system.

You also claim that Lawson has failed to address "preexisting defects" in the item data. As we have repeatedly informed you, Lawson does not have data pre-existing in the Item Master. Indeed, Lawson has informed you multiple times that Lawson does not populate the Item Master. Customers provide their own data. The data that Lawson provided on the system was artificial Lawson-created data because no other data existed. We have also informed you that you can upload your own data if you are not satisfied with Lawson's data. It has been your decision not to do so. It has also been your decision not to visit Lawson's St. Paul facility for a demonstration of Lawson's system, despite Lawson offering that to you as well. You have also subpoenaed our customers for information about their actual systems.

You also assert that ePlus is unable to find any images included with the item data on the demonstration software. Lawson's system does not house images as you want to find them. Rather, Lawson's system contains a link to an image file that is not

Scott L. Robertson
March 12, 2010
Page 8

maintained on the Lawson system. Indeed the images located in the demonstration with Mr. Lohkamp were based on hyperlinks. There are no images on the Lawson system.

Lawson has provided a demonstration in response to ePlus's 30(b)(6) deposition notice, an informal demonstration by Keith Lohkamp, as well as multiple versions of the demonstration laptop. Lawson has also offered for ePlus to inspect Lawson's system as it exists in St. Paul. Moreover, you have subpoenaed, inspected, and deposed multiple Lawson customers who are running Lawson's software. Any contention that you have not had an adequate opportunity to view Lawson's S3 system in operation is mistaken. The problem is not our productions, but rather the fact that the Lawson system does not perform as you need it to perform in order to prove infringement. Lawson views this topic as resolved.

### 4. Lawson's Non-Infringement Contentions

Lawson agrees in principle to supplement its non-infringement contentions. The metes-and-bounds of that supplementation may be discussed at a meet-and-confer on Tuesday, March 16, 2010. Please confirm a time next Tuesday that will work for you to conduct a meet-and-confer. Please also be prepared to describe exactly what supplementation is required to satisfy ePlus's demands.

### 5. Lawson's Training Materials

Your contention that "Lawson has failed to produce training materials concerning the accused products" is inaccurate. Lawson provided manuals for the system on September 11, 2009. It also provided a Webex recording of the system on September 15, 2009. On September 17, 2009, Lawson provided the information related to Lawson.com documents. On October 19, 2009, Lawson provided its S3 SCM training workbooks. Lawson provided additional Webex recordings on October 30, 2009. Additionally, the S3 demo laptop contains the Help Texts associated with the S3 system. Moreover, On March 1, 2010, Lawson provided a login so ePlus could access Lawson's training website that contains all of the training materials. Lawson will confirm that all of the training manuals have been produced by March 19, 2010.

Your letter contends there are courses offered relating to the S3 system. You also contend that Todd Dooner testified at his deposition that Lawson records training sessions. Lawson has provided recordings. Not all courses, however, are recorded. Indeed, some of the courses are offered at Lawson headquarters and at customer sites. Those are not recorded. Moreover, even if the course was offered online, not all online courses are recorded. Lawson has made available its recorded courses.

You have also requested the latest versions of the Lawson installation guides. Lawson has provided you the installation guides for each module in the accused system.

Scott L. Robertson
March 12, 2010
Page 9

Lawson will confirm that you have the most recent version for each module by March 19, 2010.

### 6. Lawson's Responses to Interrogatory Nos. 21-23.

ePlus contends that Lawson has not supplemented its responses to Interrogatory Nos. 21-23. You do not contend, however, that Lawson has not provided you the information. Indeed, you admit that Lawson "has produced thousands of pages of documents . . . that are responsive to the information sought in Interrogatories Nos. 21-23." It is clear through this statement that ePlus has located the information related to the responses.

You claim that "Judge Payne has made it clear that the burden to review such documents [referring to implementation, installation, and consulting services] and determine the responsive information is greater for ePlus than for Lawson and, therefore, Lawson cannot simply reply on a recitation of bates-numbered documents." Judge Payne's statement to that effect related to a discrete set of Lawson financial data, not an all-encompassing statement. Judge Payne's statement should not be viewed as an excuse to not meet your burden of proving infringement and damages.

Lawson has complied with ePlus's continued and changing requests, has compiled information in formats requested by ePlus that did not exist, and provided witnesses for deposition despite having already provided witnesses on those topics.

Lawson did not hide behind ePlus's deficient responses as an excuse not to produce discovery. ePlus should play by the same rules and provide us with the discovery due without conditioning its response on eleventh-hour complaints about Lawson responses provided months ago.

Consistent with the above responses to all issues you raised, we view the issues set forth in your March 10, 2010, letter as resolved.

Sincerely,

MERCHANT & GOULD

Daniel W. McDonald

DWM/kmd