# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ePLUS, INC.,              )

                    )

        Plaintiff,      )

                    )

        v.            )    Civil Action No. 3:09cv620

                    )

LAWSON SOFTWARE, INC.   )

                    )

        Defendant.     )

## DEFENDANT LAWSON SOFTWARE, INC.'S
## RESPONSE TO EPLUS'S EXPERT DECLARATION

At its heart, this claim construction dispute centers on the proper methodology for the interpretation of means-plus-function terms. ePlus and Dr. Weaver rely on general claim construction principles not applicable to means-plus-function claims. Lawson and Dr. Michael Shamos, on the other hand, apply the proper claim construction methodology to obtain the correct constructions. Dr. Shamos is a person of skill in the art under either party's definition, as he has a Ph.D. in computer science, several master's degrees in computer science and related fields, and a J.D., and has been involved in the computer field for over 45 years. (Shamos Decl. at 1 ¶¶ 1, 3 & Ex. 2.) He is currently a professor as Carnegie Mellon and teaches classes on electronic commerce, including eCommerce Technology, Ubiquitous Computing, Electronic Payment Systems, Electronic Voting and Law of Computer Technology. (Id. at 1 ¶ 3.) Dr. Shamos's declaration refutes every point Dr. Weaver raises and demonstrates how Dr. Weaver deviates from the proper means-plus function analysis. Dr. Shamos explains how Dr. Weaver (1) fails to show how ePlus's proposed structures are clearly linked or associated to the recited functions; (2) improperly relies on knowledge of people of skill in the art to provide missing

.

structure; (3) ignores the disclosure of hardware; and (4) improperly incorporates by reference from the '989 patent. He also explains why ePlus's proposed constructions are incorrect within the context of the patents-in-suit.

## I.     Dr. Weaver's claim constructions rely on erroneous law.

Though Dr. Weaver does not purport to be an expert on the law of claim construction, his declaration contains irrelevant and incorrect opinion on certain legal issues relating to the construction of means-plus-function terms. He also fails to recognize and apply the key claim construction requirements for means-plus-function claims. These errors are specified below.

### A.     Dr. Weaver fails to recognize the legal requirement that corresponding structure in a means-plus-function claim must be disclosed in the specification and specifically linked to the claimed function.

It is well-settled that the corresponding structure for a means-plus-function claim must be disclosed in the specification and specifically linked to the relevant function. *Med. Instru. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1215 (Fed. Cir. 2003); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1334 (Fed. Cir. 2008). ePlus does not dispute this. (Doc. No. 147 at 24 ("ePlus does not quarrel with the legal proposition that the structure must be linked to the function . . . .").)

Dr. Weaver never acknowledges the linkage requirement and indeed ignores the critical requirement of linkage or association between the purported corresponding structure and the function, as required for means-plus-function claims. (*See* Doc. No. 170; Doc. No. 170-3.) For example, when opining on the structure of "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source," Dr. Weaver opines that a cross-reference table is the corresponding structure based on his assertion that the specification associates cross-reference tables with several *other* functions: (1) inventory

sourcing; (2) searching for items in the product catalogs; and (3) generating purchase orders from a requisition. (Doc. No. 170 at 21 ¶ 45.) Dr. Weaver not only fails to show how the specification associates cross-reference tables with the "converting" function, but also admits that in fact those tables are actually linked to *other* functions. Thus, his statements prove the opposite of what is required to support his opinion, as he proves that the cross reference tables are *not* linked to the function of converting.

This failure to address the need for both (1) disclosure of the structure and (2) linkage between function and structure is a fundamental legal flaw that infects Dr. Weaver's entire analysis. Lawson's previous submissions already detail the instances where linkage is present to support Lawson's proposed construction, or absent in the case of ePlus' proposed constructions. (*See* Lawson's Opening Claim Construction Br. at 9, 12-14, 16-17, 19-21; Lawson's Reply Claim Construction Br. at 8-11, 13, 15.)[1] Dr. Weaver's declaration does not solve the problem of missing linkage. Indeed, Dr. Shamos recognizes that the law requires disclosure of the structure in the specification and linkage between function and structure, and applies those principals to explain in detail why Lawson's proposed constructions are correct and ePlus's proposed constructions are incorrect. (Shamos Decl. at 10-12 ¶¶ 43-45; *id.* at 15-17 ¶¶ 56, 58-59 (explaining, *e.g.*, that "the function of searching is not tied in any way in the specification to 'converting' and there is no structure whatsoever disclosed in the specification that is linked to 'converting'").)

---

[1] A table outlining Lawson's support for its proposed constructions in its various submissions is attached as Appendix B.

**B.** **Dr. Weaver improperly relies on the purported knowledge of those of skill in the art to provide the structure that is missing from the patent specifications.**

ePlus argues that an algorithm for a computer software implemented means-plus-function element is construed to encompass "any description sufficient to allow a skilled artisan to program a computer to perform the applicable function." (Doc. No. 142 at 19.) This is incorrect as a matter of law. It is well-settled law that when determining the means in a means-plus-function claim, the question is not whether person of skill in the art *could* create an algorithm, but whether the structure is *disclosed* in the specification. *See Aristocrat*, 521 F.3d at 1332-38. Thus, the focus is not on the *function* disclosed, but on the specific *structure*, including the *algorithm,* disclosed for performing that function. The algorithm must be sufficiently disclosed to render the bounds of the claim understandable.

*AllVoice*, *Medical Instrumentation*, and *Intel* do not support ePlus' assertion that the structure does not need to be disclosed in the patent and that a person of skill in the art can be used to create the undisclosed algorithm. (*See* Doc. No. 166 at 7.) In *AllVoice*, the sufficiently disclosed algorithm included a detailed flowchart:

4



FIG. 8A

AllVoice Computing PLC v. Nuance Comm's, Inc., 305 F.3d 1236, 1245-46 (Fed. Cir. 2007)

(citing U.S. Patent No. 5,799,273).  By contrast, in *Medical Instrumentation*, a box labeled

"image format conversion" did not support the means-plus-function element "converting

means."  *Med. Instrumentation and Diagnostic Corp. v. Elekta AB*, 344 F.3d 1205, 1214 (Fed.

Cir. 2003).  These were not cases where the court allowed an expert to create an undisclosed

algorithm.  In addition, *AllVoice* and *Medical Instrumentation* only dealt with whether an

algorithm was sufficiently disclosed; the cases did not deal with the scope of the algorithm as

defined by a person of skill in the art.

    In *Intel* the only thing that a person of skill in the art was required to understand was the

circuitry that would be used to modify the core logic of a computer to perform Fast Write.  *Intel*

*Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003).  The court explained that "the specification of the '291 patent includes three diagrams, 35 signal charts and a detailed written description explaining the invention.  A generic description of the core logic, as adapted to practice Fast Write pursuant to the specification, is not inadequate solely because no circuitry is disclosed on how to modify the core logic."  *Id.*  There was a detailed disclosure of an algorithm in that case as well as structure in the form of core logic, and the person of skill in the art merely provided the circuitry to implement the algorithm on the core logic.  *Intel* does not support ePlus's broad and legally incorrect assertion that a means-plus-function element is construed to encompass "any description sufficient to allow a skilled artisan to program a computer to perform the applicable function."  That would eviscerate 35 U.S.C. §112 ¶ 6 and convert a structural claim into an improper functional claim.

ePlus injects undisclosed structure into the means-plus-function claims by relying on Dr. Weaver, who asserts a person of skill in the art would understand that a networked embodiment of the claimed invention could be implemented using protocols either cited in the specification for other functions, or not cited at all.  (*See* Doc. No. 170 at 7 ¶ 16 ("If a person of ordinary skill in the art was implementing the systems of the claimed inventions in a different operating system environment, different communications protocols could be employed as applicable to the operating system selected."); *id.* at 9 ¶ 23 ("A person of ordinary skill in the art in August 1994 would understand that the LU 6.2 communications protocol adapted IBM's SNA to make it comparable to today's peer-to-peer communications and distributed computing environments."); *see generally* Doc. No. 170 at 5-7 ¶¶ 15-16 & 9-13 ¶¶ 23-30 & 16 ¶ 35.)  But a patentee cannot rely on a person of skill in the art to provide the structure that is not disclosed and clearly linked in the patent to the recited function.  Because the structures he describes are not disclosed and

linked to the recited functions in the specifications of the patents-in-suit, they are not corresponding structure.

Similarly, Dr. Weaver's opinion that the specification recites structure corresponding to the "means for processing" claim terms is wrong. Instead of pointing to *structure* disclosed in the specification linked to the relevant function, he cites excerpts that merely describe function. This is clear because Dr. Weaver opines passively that "the system" does something without any discussion of where in the patent the structure for performing the function is disclosed or linked. (*See, e.g.*, Doc. No. 170 at 17-19 ¶¶ 39-40 ("the *system* analyzes", "the *system* recognizes," "the *system would have generated* another purchase order," "a requisition is accepted," "wherein multiple purchase orders are generated," "A second purchase order would be generated" (emphasis added)). If specific structure was disclosed in the specification, Dr. Weaver would cite it. His opinion does not connect any disclosed structure to the function, because there is none. Therefore, his opinion is unsupported and irrelevant. *See Med. Instru.*, 344 F.3d at 1215; *see also Aristocrat Techs.*, 521 F.3d at 1334.

Dr. Shamos, a person of skill in the art as well as an attorney, understands that a person of skill in the art cannot create structure that is not disclosed in the patent to construe a means-plus-function clause, and shows that Dr. Weaver uses such a flawed approach to construction. (*See* Shamos Decl. at 9-10, 12 ¶¶ 40, 46; *see also id.* at 6 ¶ 32 (explaining that DDE protocols are the only protocols disclosed and linked in the patents to the data transfers between the requisition/purchasing system and the shell program or search program).) In addition, Dr. Shamos does not disagree that one of ordinary skill might develop myriad structures to perform the recited functions; rather he points out that reliance on such undisclosed structures is improper because it effectively construes the structural claim by its function, not its structure. (*See, e.g.*,

Shamos Decl. at 13-14 ¶ 51 ("I do not contend that one of skill in the art would not be able to figure out how to generate a purchase order.  In fact, one of skill in the art would be able to employ many methods for generating purchase orders, and therein lies the problem.  A patentee who employs means-plus-function claiming is limited to disclosed structures, not any and all such structures as those of skill in the art might be able to imagine.").)

    **C.**    **Dr. Weaver ignores the requirement that the structure of a means-plus-function claim includes both the software and the hardware.**

As the Federal Circuit has recognized, "this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (explaining that the "requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming.").  When interpreting software means-plus-function claims, the structure includes both the disclosed algorithm and the hardware.  *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1254 (Fed. Cir. 2005) (interpreting the structure of a software means-plus-function element to include a microprocessor programmed to carry out the multi-step algorithm); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999) (parties stipulating that the corresponding structure for the function recited by the means-plus-function clause at issue was a "microprocessor, or computer, to control the operation of the slot machine, including the operation of the machine in the assignment of numbers to reel stop positions"); *Intel*, 319 F.3d at 1366 ("We agree with the district court that the core logic of a computer modified to perform Fast Write is the corresponding structure for the functions recited."); *Network Appliance, Inc. v. Bluearc Corp.*, No. 03-5665, 2005 U.S. Dist. LEXIS 16732, at *24-*26 (N.D. Cal. Jan. 7, 2005) (recognizing that hardware disclosed in the

specification can be part of the definition in addition to an algorithm).  In other words, the computer with the algorithm, not the algorithm by itself, is the structure.

Dr. Weaver appears to acknowledge this is the law when he states "I understand from the teaching of the Federal Circuit, that in a means-plus-function claim in which the disclosed structure is a *computer, or microprocessor*, programmed to carry out an algorithm, the structure corresponding to the claimed means for performing the function in the claims is to be construed as to the *special purpose computer* programmed to perform the disclosed algorithm."  (Doc. No. 170-3 at 6 ¶ 16 (emphasis added).)  But elsewhere in his opinion he excludes hardware from his constructions, asserting that "in my opinion, the algorithms associated with the means-plus-function claim terms at issue are properly construed to recite the process steps executed by the software only and should not be construed to include specific hardware on which the software executes."  (Doc. No. 170 at 4-5 ¶ 13.)

In making this argument, Dr. Weaver repeatedly states that hardware is not part of the structure "in his opinion," but he cites no factual or legal support for this opinion.  (*Id.*; *see also id* at 3-4 ¶ 9.)  Dr. Weaver is incorrect.  As shown above, a proper interpretation of a means-plus-function software claim includes both the algorithm and the hardware.  *Harris*, 417 F.3d at 1254; *WMS Gaming*, 184 F.3d at 1347; *Intel*, 319 F.3d at 1366; *Network Appliance*, 2005 U.S. Dist. LEXIS 16732, at *24-*26.  And in this case, as recognized by Dr. Shamos, the hardware is disclosed in fact along with the algorithm as part of the software.  (Shamos Decl. at 5-6 ¶ 28.)  Dr. Weaver fails to explain why this general rule that disclosed hardware is part of the corresponding structure should be disregarded here.

**D.    Dr. Weaver erroneously relies on the disclosure of the '989 patent, incorporated by reference, in support of his proposed means-plus-function constructions.**

As has been discussed in-depth in previous submissions, the use of materials incorporated by reference is not permitted for the construction of means-plus-function claims as a matter of law.  *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc*., 412 F.3d 1291, 1301 (Fed. Cir. 2005).  ePlus argues that the *Default Proof* case is not binding and that it reverses precedent.  This is incorrect.  The *Default Proof* court's statements are not dicta, as they are used to support the court's decision,[2] and the holding of the case that material incorporated by reference cannot provide the corresponding structure has been cited as precedent in later decisions.  *See, e.g.*, *Highway Equip. Co. v. Cives Corp.*, 476 F. Supp. 2d 1079, 1102-03 (N.D. Iowa 2007) ("Incorporation by reference cannot provide the structure for the second embodiment and thus unduly extend the scope of the patent." (citing *Default Proof* and *Atmel*)); *Sokolov v. Lorad Corp.*, 476 F. Supp. 2d 130, 135 (D. Conn. 2007) (explaining during claim construction that "the Federal Circuit has held that 'material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause'" (citing *Default Proof*)).

---

[2] *Default Proof*, 412 F.3d at 1301 ("The 'kiosk' identified by Gafford cannot constitute structure for the 'means for dispensing.' Indeed, even though Gafford declared that he understood the Muehlberger patent to disclose such kiosks, the term 'kiosk' does not even appear in the Muehlberger patent. Even if Muehlberger did disclose a 'kiosk,' however, material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause. *See Atmel*, 198 F.3d at 1381. The inquiry under § 112, P2, does not turn on whether a patentee has 'incorporated by reference' material into the specification relating to structure, but instead asks first 'whether structure is described in specification, and, if so, whether one skilled in the art would identify the structure from that description.' *Id.* Gafford fails to explain how he gleaned the term 'kiosk' from the specification of the '182 patent, or, for that matter, from the Muehlberger patent." (citing *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1381 (Fed. Cir. 1999))).

Thus, to the extent that Dr. Weaver relies on the '989 patent to provide corresponding structure for the means-plus-function clauses, his opinion is incorrect and irrelevant.  (*See, e.g.* Doc. No. 170 at 7-10 ¶¶ 17-24.)  For example, Dr. Weaver cites only the '989 patent for disclosing LU 6.2 communications protocol to rebut Lawson's assertion that DDE is the only protocol disclosing how data is exchanged between the requisition/purchasing system and the shell program or search program on the same machine.  (Doc. No. 170 at 9 ¶ 22; *see also* Shamos Decl. at 9 ¶ 38.)  There is no dispute that the patents-in-suit do not reference this LU 6.2 protocol.  As a matter of law, ePlus cannot rely on the '989 patent incorporated by reference to provide the structure missing from the patents-in-suit.

**II.     Dr. Weaver's declaration makes numerous unsupported allegations regarding the patent specifications and is wrong for the reasons detailed below.**

In addition to the numerous legal errors discussed above, Dr. Weaver's declaration contains many other problems that make it unreliable.  As detailed in Dr. Shamos's declaration, and summarized below, Dr. Weaver's declaration is incorrect and unhelpful.

**A.     Dr. Weaver is incorrect that the algorithms associated with the means-plus-function claims do not include specific hardware.[3]**

As discussed above, the proper interpretation of a means-plus-function software claim includes both the algorithm and the hardware.  *Harris*, 417 F.3d at 1254; *WMS Gaming*, 184 F.3d at 1347; *Intel*, 319 F.3d at 1366; *Network Appliance*, 2005 U.S. Dist. LEXIS 16732, at *24-*26.  Dr. Weaver is incorrect to the extent that he asserts otherwise in section V.A. of his opinion.  (Doc. No. 4-5 at ¶¶ 11-13; *see also* Shamos Decl. at 5-6 at ¶¶ 26-28.)

---

[3] This is relevant to terms 1-3 and 5-8.

**B.    DDE is the only protocol disclosed showing how data is exchanged between the requisition/purchasing system and the shell program or search program on the same machine—and Dr. Weaver cannot, as a matter of law, rely on patents incorporated by reference, extrinsic opinions as to undisclosed protocols that could perform the same function, or protocols not linked to the recited functions to provide the missing structure.[4]**

Dr. Weaver argues that several protocols other than DDE are disclosed in the patents and the claims should not be limited to DDE as the only protocol for transferring data between requisition/purchasing program and the catalog search program.  (Doc. No. 170 at 5-16 ¶¶ 14-36.)  Dr. Weaver makes four fatal mistakes, as discussed above, in his opinion on this point.

(1) Dr. Weaver ignores the law that claims using the means-plus-function language are limited to the structure described in the patent and linked to the function (*see, e.g.*, Doc. No. 170 at 6-7 ¶¶ 17, 19 (alleging generally that networked embodiments are disclosed without any suggestion that they are linked to the relevant function));

(2) Dr. Weaver fails to recognize that it is improper to rely on information incorporated by reference, such as the '989 patent, to provide structure (*id.* at 7-9 ¶¶ 18-21 & 16 ¶ 35);

(3) Dr. Weaver ignores the requirement that the structure include both hardware and the algorithm (*id.* at 5 ¶ 14 & 16 ¶ 36 (arguing that the claims should not be limited to running on a local computer and failing to acknowledge that even if there were other protocols or a networked embodiment disclosed, the proper construction would still require a local computer)); and

(4) Dr. Weaver erroneously relies on the extrinsic knowledge of a person of skill in the art to supplement the disclosed DDE protocol with additional, undisclosed protocols (*id.* at 5-7 ¶¶ 15-17 & 9-13 ¶¶ 23-30 & 16 ¶¶ 35).

Only the DDE protocol is disclosed in the patents for transferring data between requisition/purchasing program and the catalog search program.  (*See* Shamos Decl. at 6-12 ¶¶

---

[4] This is relevant to terms 1-3 and 5-8.

29-47; *see also id.* at 10-11 ¶ 43 ("Dr. Weaver states in paragraph 17 that 'the patent specification specifically discloses different communications protocols which can be employed to transfer data.' That is true, but the 'different' protocols that are disclosed do not communicate data between programs running on the same computer. The DDE protocol is the only protocol mentioned or alluded to in the specification to perform that function.").) Dr. Shamos points out that "Dr. Weaver's discussion of networking protocols such as SNA, CICS, VTAM, LU 6.2, Ethernet, X.25, token ring, DDM, DIA, APPN, TCP/IP, and EDI are completely irrelevant because they do not handle communications between these programs, all of which run on a single machine. What is relevant is how data is exchanged between programs on the same machine, not different machines." (*Id.* at 9 ¶ 38; *see also id.* at 8 ¶ 36 ("However, the programs disclosed in the specification to use the DDE protocol always run on the same computer, not two or more different computers. Therefore, the protocols mentioned by Dr. Weaver for communicating between different computers have no relevance to [communication between the] requisition/purchasing system and the shell program or search program. These programs must communicate with each other while running on the same computer, and absolutely the only protocol disclosed in the specification for doing so is the DDE protocol.").)

Indeed, Dr. Weaver's opinion on this issue—twelve pages and twenty-three paragraphs long—merely demonstrates that there are NOT any protocols other than the DDE protocol disclosed in the patents and linked to the recited functions. If there were, Dr. Weaver could have pointed to the other protocols in the patents' specifications and highlighted where they disclosed a means for communicating between the requisition/purchasing program and the catalog search program while running on the same computer, as is done in the structure corresponding to the means-plus-function claims. Instead, he ignores the requirement that the protocols be linked to

the recited function.[5]  Moreover, Dr. Weaver's and ePlus' proposed construction is inconsistent

with his analysis, as their proposed construction recites none of the purported alternative

protocols.

> **C.    There is no structure disclosed in the patents for the phrases "means for processing the requisition to generate one or more purchase orders for the selected matching items" or "means for processing said requisition to generate purchase orders for said selected matching items"[6]**

Dr. Weaver disputes Lawson's showing that there is no structure disclosed in the patents-

in-suit linked to the "means for processing" phrases.  (Doc. No. 170 at 16-19 ¶¶ 37-41.)  As

discussed above, Dr. Weaver's opinion fails to recognize that the corresponding structure in a

means-plus-function claim must be disclosed in the specification and specifically linked to the

function.  Instead, Dr. Weaver cites excerpts from the specification that presume the function is

performed, without explaining how it is performed.  (*See, e.g., id.* at 17-19 ¶¶ 39-40 (opining

passively that "the system" does something without any discussion of where in the patent the

structure for performing the function is disclosed or linked).)  The patent specifications never

---

[5] Dr. Weaver also ignores other the evidence in this case.  Dr. Weaver lists two protocols that he claims are disclosed as alternatives to the DDE protocol: System Network Architecture and electronic data interchange.  (Doc. No. 170 at 7 ¶¶ 17-22.)  But when one of the inventors, Mr. Kinross, was deposed, he did not list these as alternative protocols to DDE.  Rather, he listed two other options, neither of which is disclosed in the patents or mentioned by Dr. Weaver:

> Q.  So with respect to the role that you described here, I think the first thing you mentioned was that Fisher was involved in selecting the interface technique; is that accurate?
> A.  Yes.
> Q.  What technique did Fisher select?
> A.  We selected the dynamic data exchange technique.
> Q.  What other options were available to you?
> A.  The other options available were using a database to effect data transfer and the use of sockets to effect a data transfer.

(Doc. No. 173-2 (Kinross 12/02/09 Depo.) at 133:10-21.)  Mr. Kinross said that DDE was preferred to these undisclosed alternatives.  (*Id.* at 134:19-25.)  Thus, the patents' inventor also refutes the position that ePlus's expert takes.

[6] This is relevant to terms 9 and 10.

describe how to *create* multiple purchase orders—they may describe what happens before (accepting) and after ("a purchase order would be generated for an item") a purchase order is generated, but never the how, which is the structure required for a means-plus-function claim. '683 patent, 10:62-63.  (*See* Shamos Decl. at 12-14 ¶¶ 48-51.)

Moreover, instead of linking the disclosed structure to the relevant function, Dr. Weaver argues that a person of ordinary skill in the art would know that the algorithm corresponding to these terms has two steps: (1) "accepting the requisition" and (2) generating one or more purchase orders based on the data included in the requisition and "based on predetermined rules relating to the user's preference."  (Doc. No. 170 at 17 ¶ 37.)  The patent specifications, however, never use the terms "predetermined" or "preference" or anything like them to refer to generating purchase orders.  This purported corresponding structure comes out of thin air.

Moreover, the algorithm Dr. Weaver proposes requires no specific "predetermined rules," and thus is nothing more than the function ("means for *processing* said requisition *to generate* purchase orders for said selected matching items" (emphasis added)).  Dr. Weaver also fails to link even the broad "predetermined rules" function to any corresponding structure disclosed in the specification.  (*See* Shamos Decl. at 13 ¶ 49 ("That is not an algorithm.  It is merely a recitation of the claimed function, which is 'generating one or more purchase orders.'  No algorithm is given for extracting the relevant data from the items returned from searching the product catalogs and no method is disclosed for representing or processing any "predetermined rules.").)

Dr. Weaver's proposed construction is also inconsistent with the rest of his arguments, as the algorithm that Dr. Weaver opines is described from the specification is different from the algorithm in ePlus' proposed construction.  The algorithm he asserts is disclosed in the

specification requires that items be "associated" with types that tell the system what kind of purchase order to generate.  (Doc. No. 170 at 17-18 ¶ 39.)  This is different from ePlus's proposed claim construction, which has nothing about association with product types.

**D.      There is no structure disclosed in the patents for the phrase "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source"[7]**

Contrary to what Lawson has demonstrated, Dr. Weaver asserts that there is structure disclosed for the "means for converting" phrase, namely the cross-reference table described in the specification.  (Doc. No. 170 at 19-21 ¶¶ 42-46.)  The cross-reference table is not specifically linked (as required by law and discussed above) to the converting means anywhere in the specification.  (*See* Shamos Decl. at 14-16 ¶¶ 53-57.)  Indeed, the term "converting" is only used in the patent specification in any form a single time ("Once a requisition has been inventory sourced and accepted by the CSR, it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3.") without any description of the structure necessary to perform the function.  '683 patent, 15:20-22.  Dr. Weaver does not even purport to link the cross reference table to the converting function.  Instead, he cites the cross-reference table without any discussion of how converting occurs, and discusses replacement without discussing how the replacement is accomplished.  He links the cross reference table to *other* functions (Doc. No. 170 at 21 ¶ 45 (suggesting that the cross reference table is linked to the functions of sourcing, performing searches, and generating purchase orders)), further demonstrating that the table is *not* linked to the function of converting.

---

[7] This is relevant to term 11.

E.      **The "means for selecting the product catalogs to search" function requires that two or more catalogs must be searched, not a single catalog.[8]**

ePlus urges this Court to adopt a construction of "means for selecting the product catalogs to search" that would allow the plural term "catalogs" to include selection of a single catalog.  (*See* Doc. No. 166 at 23 ("[A] person of ordinary skill in the art would understand that the claimed function could be construed to cover the selection of only one product catalog to search 'from among' the 'at least two product catalogs' recited in the claim element.").)  Lawson, on the other hand, showed that the function is properly "two or more product catalogs to search," as the claimed function for selecting catalogs requires two or more catalogs.  '683 patent, claim 3 ("*means for selecting the product catalogs to search*" (emphasis added)).  This is consistent with the patent's specification.  *See* '683 patent, claim 3, 1:60-2:2, 2:8-11, 2:25-29, 2:30-37.

Dr. Weaver asserts that the specification discloses embodiments where only one catalog is selected.  (Doc. No. 170 at 21-24 ¶¶ 47-54.)  Dr. Shamos explains how this embodiment does not mean that "catalogs" includes a single catalog.  (Shamos Decl. at 16-17 ¶¶ 58-60.)  Dr. Weaver also asserts that inputting a vendor name or vendor part number will limit the search to one catalog.  ( Doc. No. 170 at 23 ¶ 53.)  Dr. Shamos explains, however, that a vendor search may involve several catalogs.  (*See also* Shamos Decl. at 16-18 ¶¶ 58-63.)  Dr. Weaver also relies on an example were the catalogs are not delimited when only the Fisher catalog will be searched.  (Doc. No. 170 at 23 ¶ 53.)

Whether the specification also describes searching one catalog is irrelevant.  The key is that the claim language itself—including the surrounding claim limitations—show this claim is directed to searching two or more catalogs.  Dr. Shamos explains that the patent makes clear that

---

[8] This is relevant to term 8.

searching a single catalog is in the prior art, and the claimed invention is focused on searching two or more catalogs.  (Shamos Decl. at 16-17 ¶ 59.)  Dr. Shamos also explains that if ePlus's proposed construction was adopted and the claims covered searching a single catalog, the claims would improperly cover embodiments that ePlus admitted were in the prior art.  (*Id.*)  Construing the plural term "catalogs" to mean two or more catalogs is the plain and logical meaning of this function.

### F.    The "means for searching" claim terms properly include searching the RIMS database and require concantenation.[9]

ePlus and Dr. Weaver argue that "means for searching" phrases should not include "searching the local RIMS databases."  (Doc. No. 170 at 29-31 ¶¶ 60-66.)  As an initial matter, Dr. Weaver ignores the fact that Lawson proposed that "means for searching" has two corresponding structures, one that does not require searching the local RIMS databases.  (Doc. Nos. 171-2, 171-7, 171-9.)  In addition, the corresponding structure that includes "searching the local RIMS databases" is supported by the language of the claim and the specification. (Lawson's Opening Claim Construction Br. at 9-11, 15-19; Lawson's Reply Claim Construction Br. at 9, 12-13; *see also* Shamos Decl. at 18 ¶¶ 64-66.)[10]

ePlus and Dr. Weaver also argue that the "means for searching" phrases should not include the step of concantenating (i.e. joining together).  As already explained in Lawson's

---

[9] This is relevant to Terms 5, 6, and 7.

[10] Dr. Weaver appears to support Lawson's proposed construction of "catalog" because when he discusses "means for searching" he asserts that "there are no product catalogs stored in the RIMS databases."  (Doc. No. 170 at 29 ¶ 60.)  Claim 3 is directed to "means for searching for matching items among the selected product catalogs."  Under Lawson's proposed construction of "catalog," RIMS would be a database but not a catalog.  In contrast, claim 6 is not directed to catalogs, but rather to "means for searching for matching items in the database."  Thus, claim 6 would search a non-catalog database such as RIMS but claim 3 would not under Lawson's proposed construction.  Under ePlus's proposed construction of "catalog," however, RIMS would be both database and a catalog.  Thus, RIMS would satisfy the catalog and database elements of both claims 3 and 6.

previous submissions, the concantenation step is supported by the specification and is the only algorithm disclosed in the specification for searching multiple catalogs.  (Lawson's Opening Claim Construction Br. at 15-18; Lawson's Reply Claim Construction Br. at 11-13; *see also* Shamos Decl at 19 ¶ 68 ("Dr. Weaver asserts that concatenation is not required, but it is the only algorithm disclosed in the specification for searching multiple catalogs").)  If the catalogs are not concatenated, the specification is devoid of explanation of how the program is able to search specific catalogs.

ePlus's primary argument in support of its position is that "catalogs stored in separate databases *cannot be* concantenated," citing the Weaver declaration.  (Doc. No. 166 at 44; Doc. No. 170 at 32 ¶ 71.)  This is incorrect.  As Dr. Shamos explains, the catalogs in one database can be copied so that all catalogs to be searched reside on the same computer, and concatenation thus becomes possible.  (Shamos Decl. at 19-20 ¶ 71 ("The catalogs in one database can be copied so that all catalogs to be searched reside on the same computer, and concatenation becomes possible.  Dr. Weaver's citation to 12:4-29 of the specification is unavailing.  That passage is specific in stating that catalog database 36 is to be searched.  Since multiple catalogs must be present, and the only algorithm disclosed for searching multiple catalogs is concatenation, concatenation is required.").)

Dr. Weaver further presupposes that searching based on keywords would not require concatenation of the catalogs.  (Doc. No. 170 at 32 ¶ 70.)  This confuses *what* can be searched and *how* the search is performed.  The program may search for a keyword, but that does not explain how the search program limits the search to specific catalogs, which is done by selection and concatenation.

**G.    The phrase "means for building a requisition" requires all structure linked to the function, consistent with Lawson's construction.[11]**

Dr. Weaver argues that the "means for building a requisition" functions should not include the steps of initiating a search, displaying a hit list, selecting items, and generating an order list.  He asserts those steps are prerequisites to building a requisition performed by other means.  (Doc. No. 170 at 33-36 ¶¶ 73-80.)  As discussed in Lawson's previous submissions, all of these steps are clearly linked in the specification of the patents-in-suit to the function of building a requisition.  (Lawson's Opening Claim Construction Br. at 9-12; Lawson's Reply Claim Construction Br. at 10-11.)  Dr. Shamos further explains that Dr. Weaver's analysis is improper because it fails to appreciate the claimed distinction between a function using *data relating to* matching items, and functions involving matching items.  Moreover, as Dr. Shamos explains, there is no rule against having multiple functions that invoke the same structure or steps, if the structure or steps are clearly linked to those multiple functions.  (*See* Shamos Decl. at 20-22 ¶¶ 73-80.)

Dr. Shamos also addresses the non-means-plus-function clauses in his declaration to a limited extent, explaining why Lawson's proposed constructions are proper and ePlus' are not.

**II.    Conclusion**

Lawson applies the proper legal analysis to the patents-in-suit to determine the correct function and structure for the means-plus-function terms.  Dr. Weaver's declaration is unhelpful at best and flawed at worst for the reasons discussed above and detailed in Dr. Shamos's declaration.  For these reasons, this Court should adopt Lawson's proposed constructions and reject ePlus's proposed constructions.

---

[11] This is relevant to terms 1 and 2.

LAWSON SOFTWARE, INC.


By_____/s/_____
                Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of March, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Robert D. Spendlove (VSB No. 75468)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

*Attorneys for Plaintiff*

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
**Troutman Sanders LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*