```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                     RICHMOND DIVISION

 4

 5    --------------------------------------
                                          :
 6    ePLUS, INC.,                        :    Civil Action No.
                                          :    3:09CV620
 7    vs.                                 :
                                          :
 8    LAWSON SOFTWARE, INC.               :    March 8, 20104
                                          :
 9    --------------------------------------

10

11

12        COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13           BEFORE THE HONORABLE ROBERT E. PAYNE

14              UNITED STATES DISTRICT JUDGE

15

16    APPEARANCES:

17    Craig T. Merritt, Esquire
      Christian & Barton, LLP
18    909 East Main Street
      Suite 1200
19    Richmond, Virginia  23219-3095
      and
20    Scott L. Robertson, Esquire
      Goodwin Procter, LLP
21    901 New York Avenue NW
      Suite 900
22    Washington, D.C.  20001
      Counsel for the plaintiff
23

24              Peppy Strahan, RPR
              Official Court Reporter
25           United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    1001 Haxall Point
      Richmond, Virginia  23219
 4    and
      Daniel W. McDonald, Esquire
 5    Joshua P. Graham, Esquire
      Merchant & Gould, PC
 6    80 South Eighth Street
      Suite 3200
 7    Minneapolis, Minnesota  55402
      Counsel for the Defendant
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3            THE COURT:  Hello.

4            MR. MERRITT:  Good morning, Judge.  This is Craig

5    Merritt, and we've got the counsel for your ePlus conference

6    call.

7            THE COURT:  All right.  Now, what I told Mr. Merritt,

8    I believe the last time we were together -- let's see.  Let's

9    get everybody on the record here, and speak when you give your

10   name.  Mr. Merritt is for the plaintiff.  Who else?

11           MR. ROBERTSON:  Scott Robertson, Your Honor.  I'm on

12   the line for ePlus.

13           MR. CARR:  This is Dabney Carr for Lawson Software.

14           MR. McDONALD:  Good morning, Your Honor.  Also for

15   Lawson, this is Dan McDonald and Josh Graham from Merchant &

16   Gould.

17           THE COURT:  All right.  I mentioned that we'd like to

18   try to talk about trial dates.  You had originally had a date

19   of the 14th through the 18th and the 21st through the 24th of

20   June which I told you the last time we were together we

21   couldn't make, and so now I'm looking at September, and any

22   week in September is fine.

23           MR. ROBERTSON:  Judge, this is Scott Robertson for

24   ePlus.  Obviously we'd like the first opportunity we can to be

25   before you, so September works for us.  Might I suggest, if

1   it's available, September 13th given I think Labor Day falls

2   late in the year.

3          THE COURT:  It's the 6th this year.

4          MR. ROBERTSON:  Yeah, that's right.  I think we'll

5   probably all be working through that weekend, but I just think

6   it'd be difficult to start a trial right after that, that

7   Monday.  But if it's available and Your Honor wants to do that,

8   then we're agreeable.

9          MR. McDONALD:  Your Honor, this is Dan McDonald.

10   September 13th, to begin that day would work really well for

11   us.  The month of September was good.  I just had the request

12   to have it happen after Labor Day just because the witness

13   availability will be a lot easier after that date, so the 13th

14   would be perfect.

15          THE COURT:  All right.  Do either of the companies

16   have employees in the area from which we draw our jury?

17          MR. ROBERTSON:  Sorry, Your Honor, you broke up.

18          THE COURT:  Do either of the parties, the company

19   parties have employees in the Richmond Division, the area from

20   which we draw our jury?

21          MR. ROBERTSON:  I'll check on that, Your Honor.  My

22   client's based in Herndon, Virginia.  I think it's probably

23   unlikely, but they are in the division.

24          THE COURT:  Yes.

25          MR. ROBERTSON:  But they're not in the Richmond

1   Division.

2           THE COURT:  They are in the district, but they're not

3   in the Richmond Division.

4           MR. ROBERTSON:  I think that's -- I can probably say

5   that with a 95 percent confidence level, but I can confirm that

6   by this afternoon.

7           THE COURT:  All right, that's Lawson; right?

8           MR. ROBERTSON:  That's ePlus.

9           THE COURT:  What about Lawson?  Where is it

10  headquartered?

11          MR. McDONALD:  Lawson is headquartered in St. Paul,

12  Minnesota, Your Honor.  They've got some small offices, I

13  believe, on the East Coast.  I don't think they've got anything

14  close to Richmond, but I can also confirm that by this

15  afternoon.

16          THE COURT:  You can just let me know if that's the

17  case.  I'll assume they do not have any offices in the Richmond

18  Division unless you tell me otherwise by tomorrow, and that

19  just has to do with alerting the jury clerk to how many people

20  we need to have in here.

21          I'm inclined to -- let's see.  I don't think it will

22  take too long to pick the jury, so we'll just start on the

23  morning of the 13th at 9:30.  Now, do you still think it's

24  going to take two weeks?

25          MR. McDONALD:  We do, Your Honor, for Lawson.

1            MR. ROBERTSON:  For ePlus, I think it's always

2    maintained eight days, but we can see how it sorts out.  I

3    think you had it scheduled for nine days.

4            THE COURT:  I think that's right.  Well, I mean,

5    we'll get -- I'm reserving that two-week period there for you

6    all.  Now, final pretrial conference, how about the -- let me

7    ask you this:  How many depositions are being taken in the case

8    that are going to have to require, or you're going to try to

9    offer in evidence?  Any?

10           MR. ROBERTSON:  Yes, Your Honor.

11           THE COURT:  Who is this?

12           MR. ROBERTSON:  I'm sorry, Scott Robertson.  There

13    will be some witnesses who are unavailable that were Lawson

14    witnesses, I think, that we would like to offer some video

15    depositions.

16           THE COURT:  Whose witnesses?

17           MR. ROBERTSON:  The defendant's not located within

18    this jurisdiction, and then there are -- I think the defendants

19    identified some third parties that it may be calling, and we'd

20    like to get a notion on who that is, whether they are live or

21    they will be presented by depositions, so I appreciate Your

22    Honor's inquiry.

23           THE COURT:  Haven't you all exchanged disclosures in

24    this case?  You surely know who the people are who have

25    knowledge of the facts in the matter.

1          MR. ROBERTSON:  We have exchanged disclosures, Your

2     Honor, but we have a limited number of depositions, so we can't

3     take depositions of all the people who have been identified as

4     having knowledge, so we'd like to have -- I think the parties

5     can sit down and discuss and have an agreement.  We can have a

6     more focused discussion on who we're going to actually present

7     as witnesses.

8          I think both sides have interrogatories out there,

9     but I think the positions have been so far that they are

10    premature.  I think as we're moving along now, it's probably

11    appropriate to sit down and have a discussion as to who we

12    actually think we're going to be calling as witnesses so we can

13    make sure those depositions are covered.

14         THE COURT:  Well, Mr. McDonald, what's the deal on

15    your own witnesses from your company not coming here in person?

16         MR. McDONALD:  I'm actually contemplating and

17    expecting, Your Honor, that the majority of our people, even

18    though they aren't located in the jurisdiction, we'll make

19    available live for testimony.  There are a couple of folks that

20    are over in Europe that were deposed, and I'm not sure they are

21    relevant to the case anyway, but those I would say maybe not,

22    they would not be live, but I think the folks that are based in

23    the U.S., we're going to make them available live.

24         THE COURT:  All right.  That takes care of that

25    situation.  Now, what about the people that you deposed in

1    Europe, Mr. Robertson?  Do you want them as witnesses live?

2            MR. ROBERTSON:  I think they have some relevant

3    testimony, Your Honor, but I'm not going to have hours of

4    deposition.  I'm going to have a lot of the admissions to be

5    very focused and presentable.  Obviously, I don't want to put a

6    lot of jurors to sleep by playing videotaped talking heads.

7            THE COURT:  Mr. McDonald, if he pays their airfare

8    and expenses to come to trial, do you have any objection to

9    bringing them over here so the jury can see them live?

10           MR. McDONALD:  I personally don't have any problem

11   with that at all, Your Honor.  It's just a matter of me talking

12   to the client about that and making sure they're comfortable

13   with that.

14           THE COURT:  Sure, and you tell them that if they want

15   to win, that's the way to do it, is to get your people in front

16   of the jury.  Jurors don't like these videotaped things.

17           MR. McDONALD:  I will tell them that.  Thank you,

18   Your Honor.  I need all the help I can get.

19           THE COURT:  Mr. Robertson, are you willing to pay

20   their way and put them up for the period they're here?

21           MR. ROBERTSON:  Your Honor, again, that's something I

22   would have to discuss with my client.

23           THE COURT:  Yes, and how many millions of dollars do

24   you say are at stake in this case?

25           MR. ROBERTSON:  I think the damages are north of 30-

1    to $40 million now, Your Honor.

2            THE COURT:  And do you think that your client,

3    knowing that it is rolling the dice on 30- to $40 million,

4    can't afford an airplane ticket and a hotel?  The hotels here

5    aren't expensive.

6            MR. ROBERTSON:  I've spent a number of weeks down

7    there in Richmond, Your Honor, to know that the expense is not

8    insubstantial.

9            THE COURT:  That is a brassy statement for somebody

10   from Washington to make.

11           MR. ROBERTSON:  I didn't intend it to be, Your Honor,

12   but that would help focus the mind on who is really necessary

13   for the trial.

14           THE COURT:  I found in the past that in these patent

15   cases, the less you have to rely on videotaped testimony or

16   deposition testimony, the better chance the jury has of

17   understanding what's going on, and it's worth it to both sides

18   to work out ways to make that happen.  So we'll count on you

19   all to try to do that.  You tell your client that when you're

20   rolling for big sums, you usually put some ante on the table,

21   and that will help them understand the need to get some people

22   here and stimulate the Richmond hotel industry in which I have

23   no stock or other interest.

24           All right.  That won't -- if we do that, we won't

25   have but so much difficulty at the pretrial conference.  What

1    is the volume of documents in this case?  Plaintiff, what do

2    you see the volume of documents being?

3            MR. ROBERTSON:  Just based on my experience with the

4    Ariva and the SAP case, I just tell you the approach that Judge

5    Spencer took was he admitted virtually all of the plaintiff's

6    and the defendant's exhibits into evidence and really only

7    excluded about a handful.  I would say at that time the

8    plaintiff had about 1,500 exhibits, and he excluded perhaps

9    ten.  I think the defendant had a little more than that.  That

10   was just the approach Judge Spencer took.

11           There are a number of manuals.  There's going to be a

12   number of video demonstrations.  If I had to guess right now,

13   Your Honor, I think the exhibits would be in the nature of 5-

14   to 700, but, you know, I'm just guessing that based on what

15   we've looked at in trying to whittle down the exhibits for

16   depositions.

17           I mean, the defendant has produced more than

18   2.8 million pages of documents.  I'm not faulting them for

19   that.  We're still making our way through that review right

20   now, Your Honor, but we have what I would suggest is a focused

21   set of key documents, and that's my best guesstimate as I stand

22   here in March some six months before the trial.

23           THE COURT:  Well, I understand.  How about you, Mr.

24   McDonald?

25           MR. McDONALD:  I don't know that I disagree with what

1    Mr. Robertson said, Your Honor.  I certainly am one who

2    believes less is more, but given the complexities here, I think

3    at least in terms of the admitted documents, there are going to

4    be at least several hundred.  I think when we have people up on

5    the witness stand, we're obviously hoping to use a small

6    fraction of that.

7            THE COURT:  Judge Merhige had an approach that even

8    if a document was admitted, if you didn't use it in trial, it

9    was excluded, and I think I'm going to adopt that, and I can

10   tell you that I don't anticipate admitting 500 to 700 documents

11   for a jury to consider.

12           You all have to figure the ones you're really going

13   to use, and the pretrial conference will be used to exclude

14   exhibits that don't belong in and to admit those that do, and

15   so you're going to have to be prepared, exhibit by exhibit, to

16   deal with these things.

17           They won't come in wholesale, and I don't -- I'm not

18   looking to see a lot of paper that this jury has to look at.

19   Most of the time it's not necessary.  I do understand that in

20   some instances in patent cases it may be, but my experience has

21   been that you probably use maybe 50 documents and that's about

22   the end of what you actually use.  Sometimes it's less than

23   that.

24           So we'll see, but I'm trying to figure out when to

25   have the pretrial conference, because I want to get that done

1  in time for you all to get ready, get the paper ready for the

2  trial.  All right, let's have the final pretrial conference on

3  Monday, August 16th at 9:30.

4           MR. CARR:  Judge, could you repeat that.

5           THE COURT:  Monday, August 16th, at 9:30.  Can you

6  all do that?

7           MR. MERRITT:  Yes, sir.

8           MR. McDONALD:  Lawson can, Your Honor, thank you.

9           UNIDENTIFIED SPEAKER:  I didn't mean to speak for

10  you.  Are you available?

11           UNIDENTIFIED SPEAKER:  Yes, I am.

12           THE COURT:  If necessary, I'll go into the next day,

13  but I think if you all work hard, you'll be combat ready to get

14  things done.  Now, with those dates set, let's go look at the

15  schedule you all put together.  The last one I have from you

16  all is on the 18th of November that I believe Mr. Willett

17  confirmed that that -- I'm sorry, I turned my back to you all.

18  The last one I have is November 18th.  Is that correct, the

19  last one you tendered in here?

20           MR. ROBERTSON:  Scott Robertson, Your Honor.  I think

21  that's right.

22           THE COURT:  I just want to look at a couple of

23  things.  All right, you're going to have to adjust everything

24  based on what's in paragraph I of pretrial schedule A and the

25  trial date.  You'll have to back it up.

1          MR. ROBERTSON:  Judge, if it might help, we've got a

2   draft of that.  We were assuming sort of a mid September trial

3   date, and I can plug in the pretrial date now, and I can send

4   it to Mr. Merritt, he can forward it to Mr. Carr and to

5   Lawson's counsel and see if those dates work, and if we can

6   come to agreement, we can just submit something.  I think it's

7   just a matter of the dates.

8          I think on the substantive issues, we've all come to

9   agreement, and the Court signed off on that previously, so it's

10  just a matter of plugging in the dates off the pretrial.

11         THE COURT:  Yeah, I think that's right.

12         MR. CARR:  Your Honor, this is Dabney Carr.  As I

13  recall, the only other dates that you had dictated to us that

14  you had wanted had to do with when we would -- last day to file

15  summary judgment and when the last day to schedule the hearing

16  was.

17         THE COURT:  Yes.  We want those summary judgment

18  motions filed -- you all have done some discovery, so when are

19  you going to cut off discovery?  When do you want to cut off

20  discovery?

21         MR. ROBERTSON:  Discovery cutoff presently, Your

22  Honor -- this is Scott Robertson again -- was March 29th.  I

23  think at least that would move out based on the trial

24  date another seven days or so.

25         THE COURT:  I know, but there's no sense in -- you

```
 1   all were working against that date and have been except when I
 2   told you we were going to have to move it, so you've got most
 3   of your depositions done, do you?
 4            MR. ROBERTSON:  I think we have a fair amount to go,
 5   Your Honor, including third-party depositions which I think are
 6   just, you know, getting underway.  So obviously we'd like to
 7   have a little bit of breathing room in there built into the
 8   schedule.  I think I can sit down with Lawson's counsel, and we
 9   can work out something that would be mutually agreeable.
10            THE COURT:  Do you want to extend it 30 days?
11            MR. ROBERTSON:  I'd like to extend it 60 days, Your
12   Honor.
13            THE COURT:  What is that, May?
14            MR. ROBERTSON:  Yes, sir.
15            MR. McDONALD:  I would think we can get it done by
16   perhaps mid May, but maybe it does make sense for Mr. Robertson
17   and I to talk this through.
18            THE COURT:  I'm looking at mid May, I think, is as
19   late as I want it, and then summary judgment motions by the end
20   of May.
21            MR. McDONALD:  All right, that's fine with Lawson.
22            THE COURT:  That would be the 31st of May.
23            MR. CARR:  Your Honor, the 31st is Memorial Day.
24            THE COURT:  You know what?  In the computer world, it
25   doesn't make any difference.
```

1          MR. McDONALD:  Dabney, we'll just work on getting it

2    done by Friday so you can have the weekend off.  How's that?

3          THE COURT:  May the 29th, summary judgment.

4          MR. CARR:  I believe that's a Saturday, Your Honor.

5          THE COURT:  It is?  28th?  What happened to the world

6    in which all these lawyers worked 24 hours a day, because I've

7    had it reported to me from on high that there are an awful lot

8    of lawyers whose billing records indicate they work all the

9    time.  All right, 28th, and then the response?

10         MR. ROBERTSON:  That forces the plaintiff to work

11   over Memorial Day weekend, 24 hours a day, because the clock is

12   ticking on us, so we'd hope we can get maybe a little bit of

13   leeway in there to respond to the summary judgment motions.  I

14   think -- could anticipate it might involve expert declarations

15   as well.

16         THE COURT:  What do you want, the 15th of June?  The

17   18th?

18         MR. ROBERTSON:  That would be fine, Your Honor.

19         THE COURT:  You want the 15th, all right.  Motion for

20   summary judgment response, June 18th.  I mean 15th.  And then

21   your response the 21st.  I mean the reply.

22         MR. McDONALD:  All right.

23         THE COURT:  All motions *in limine* should be filed by

24   June 18th.

25         MR. ROBERTSON:  Sorry, Your Honor, Scott Robertson.

1    June 18th, you said?

2              THE COURT:  June 18th.  All responses to the motions

3    *in limine* July 2.  All replies to the motion *in limine*

4    July 12th.  Anything else?

5              MR. McDONALD:  Your Honor, this is Dan McDonald for

6    Lawson.  I'm just wondering, given that we've only got about

7    six days for that reply on the summary judgment, I'm looking at

8    ten days on the reply in the motions *in limine*, and I'm going

9    to respectfully request for at least a couple more days on that

10   reply on the summary judgment to maybe June 23rd or 24th.

11             THE COURT:  The 24th is fine.

12             MR. McDONALD:  Thank you.

13             MR. ROBERTSON:  Judge, this is Scott Robertson for

14   plaintiff.  You had mentioned discovery cutoff of mid May.  I

15   didn't know if I got an exact date.  Given that Lawson just

16   asked your indulgence for a little more time on that, could I

17   ask your indulgence for a specific date of May 21st as the

18   discovery cutoff?

19             THE COURT:  When are the summary judgments due?

20             MR. ROBERTSON:  May 31.

21             UNIDENTIFIED SPEAKER:  May 28.

22             THE COURT:  That's only seven days before the summary

23   judgment cutoff.  What is your view on that, Mr. McDonald?  The

24   plaintiff is probably not going to be filing any summary

25   judgment motions, are you, Mr. Robertson?

1          MR. ROBERTSON:  I don't think so at this time, Your

2     Honor.

3          MR. McDONALD:  I think we can get that by May 14th,

4     Your Honor.

5          MR. ROBERTSON:  Let me make a caveat, Your Honor.  I

6     apologize.  There may be a summary judgment that certain

7     defenses are not legally sound, but I'm not going to be moving

8     for summary judgment of infringement.  It's not because I don't

9     have confidence in the case, Your Honor.  I just think, based

10    on my experience with Ariva and SAP, the Court wants to hear

11    the evidence, and I think that's appropriate.

12         THE COURT:  Well, why don't you cut it off on

13    May 18th?

14         MR. ROBERTSON:  That's fine, Your Honor.

15         MR. McDONALD:  No objection for Lawson, Your Honor.

16         THE COURT:  All right.  Now, let's see, is there

17    anything else you all need to take up?

18         MR. ROBERTSON:  Not for the plaintiff, Your Honor.

19         MR. McDONALD:  Not for Lawson, Your Honor.

20         THE COURT:  All right, now, what are you going to do

21    about these experts?  You all, ePlus filed an expert

22    declaration, and it was objected to, and I struck it and

23    required you -- struck your brief and required you to file a

24    brief without that.  I haven't looked at the brief that was

25    filed with it, but I did say at the conclusion of the hearing

1    that you all should let me know if you felt like we needed to

2    have expert evidence as part of the Markman, but I feel like if

3    that's the case, then I need the input of both sides before

4    accepting any evidence or allowing any evidence.  What's the

5    position of the plaintiff?  Do you still want expert evidence,

6    Mr. Robertson?

7            MR. ROBERTSON:  Your Honor, our position is that we

8    think it's not necessary under the law, but we thought it would

9    be helpful, and after, you know, colloquy with the Court over

10   the course of several hours over two days, sorry if there was

11   some misunderstanding, but I came away with the clear

12   impression that the Court was seeking some guidance with

13   respect --

14           THE COURT:  Mr. Robertson, I'm not faulting you about

15   your decision.  All I'm saying is that if it's to be done, then

16   both sides needed to have input into it is what I contemplated,

17   and I perhaps didn't say it right, and just so that everybody

18   can be heard about how, if at all, we're going to do it, so

19   that's what I'm doing now.  Do you still want expert evidence

20   offered?

21           MR. ROBERTSON:  Your Honor, as a matter of law, I

22   don't think it's necessary.  If the Court thinks it would be

23   helpful, I'm happy to do whatever the Court directs us to do.

24   As a matter of law, I don't think it is necessary.  I'm happy

25   to comply with the Court's order, revise our brief about the

 1    expert testimony.  The arguments are going to change in

 2    substance, but I will comply with the Court's order.

 3            THE COURT:  Well, I understand that.  What I'm trying

 4    do is put us back to -- what I had in mind was if people wanted

 5    expert evidence or thought it was a good idea to have, then

 6    we'd all sit down and talk about it and figure out how to put

 7    it in; would it be in by affidavit, would there be depositions

 8    first, what?

 9            Usually, it's affidavit evidence, and then if the

10    other side wanted it, they could have it.  So your answer is

11    you don't want it; is that right, Mr. Robertson?

12            MR. ROBERTSON:  I guess my concern, Your Honor, is

13    it's going to add a level of cost and delay that I think may

14    not fit into the schedule right now.  I mean, I've heard what

15    the Court was suggesting at the hearing.  I thought the

16    defendants heard it as well.  I was, quite frankly, expecting

17    them to have an expert declaration, but I understand now where

18    we are now on that situation.

19            I think I'd like to move forward and get things

20    resolved on this unless the Court tells me that it would be of

21    great assistance to the Court in resolving this issue about the

22    algorithms, and I heard the Court loud and clear about the

23    frustrations it's having with federal circuits' perhaps lack of

24    guidance in that area.

25            THE COURT:  So in any event, all I -- if you were to

1    submit it, I don't see there's any expense.  You just would

2    submit the same affidavit and the same brief, and we'd be doing

3    it with agreement if we did it.  Now, Mr. McDonald, what's your

4    position on it?

5            MR. McDONALD:  My position, Your Honor, is it

6    continues to be unnecessary and actually creates a high risk

7    area.  I've seen too many federal circuit decisions where if

8    there's undue -- or Court of Appeals opinion, undue reliance on

9    experts, that's a reversible error, and it seems to me like if

10   we keep this focus on the intrinsic record, we've got a lot

11   better chance of this thing not coming back.

12           So I'm against it.  I wouldn't use one in the

13   affirmative.  I had grave concerns, as we indicated in our

14   motion to strike, about what the ePlus expert said.  The only

15   thing I would want is some sort of rebuttal if we're going to

16   do it at all.

17           I think what I hear Mr. Robertson saying, though, is

18   that, you know, we don't need to bother with that at this

19   point, and I don't want to make my client pay for the money of

20   having to prepare an expert to rebut the ePlus expert at this

21   point.  I see no value in it at all.

22           MR. ROBERTSON:  Your Honor, if I could just direct

23   the Court to the leading case on it.  Maybe the Court would

24   like to go take a look at that, and I can send it to you today

25   if you'd like or however you'd like, but the case is *Intel*

1    *Corporation v. VIA Technologies*.  It's 319 F.3d 1357 at 1367,

2    federal circuit 2003, and it's cited for the proposition that

3    knowledge of a person of ordinary skill in the art can be used

4    by the Court to make clear how to implement a disclosed

5    algorithm in a computer implemented case.

6         So, obviously, it can be used.  It's not disfavored.

7    If it assists the Court, it assists the Court.  The only issue

8    I would have is going to be a rebuttal declaration.  My expert,

9    Dr. Weaver, is taking the same positions for five years and

10   under oath and in affidavits.

11        Obviously, Lawson's expert will have to be endorsing

12   and embracing arguments that were made without his input.

13   That's fine, but I would like the opportunity to respond to it.

14   After that, I don't think we would need any further hearing,

15   argument, or that kind of thing.  The Court would do it on the

16   papers, but it's certainly permissible -- I've already gone

17   ahead and done it.  If there wants to be a rebuttal expert

18   declaration, I'd just like to be able to react to it.  That's

19   all.

20        THE COURT:  All right.  Well, here's what I think.  I

21   think it would be helpful to have it on the topic of the

22   algorithm which is the basic -- as far as -- the only thing I

23   really read was sort of the opening paragraphs of this guy's

24   affidavit.

25        Insofar as I'm concerned, you wouldn't change

1    anything.  You'd file just exactly what you filed before; is

2    that right, Mr. Robertson?

3              MR. ROBERTSON:  That's correct, Your Honor.

4              THE COURT:  Then I'm going to vacate the order I

5    entered striking it, allow -- because I think it will be

6    helpful, on the basis of the *Intel* case, to allow the filing of

7    that affidavit and keep the brief the same as it was.  How long

8    do you want to file a response if you file one substantively?

9              MR. McDONALD:  Your Honor, my issue is my expert is

10   out of the country until March 15th, so I need a little time to

11   be able to talk to him after he gets back.

12             THE COURT:  Frankly, I can't imagine he's going to

13   disagree with a whole lot of it.  Mr. Robertson picked somebody

14   who's been doing this for five years, so he's got to be right,

15   don't you think?

16             MR. McDONALD:  Well, we're going to have a little

17   different perspective.

18             THE COURT:  I expect there'll be a difference.  Why

19   don't you file it by March 22nd?

20             MR. McDONALD:  That sounds good, thank you.

21             THE COURT:  Then you file any reply that you have by

22   March the 29th, Mr. Robertson, and that will be it.

23             MR. ROBERTSON:  Thank you, Your Honor.

24             THE COURT:  And I think that takes care of it.  All

25   right.

1          MR. ROBERTSON:  Your Honor, I just had one little

2     footnote to bring up with you that you had raised at the last

3     hearing about the ability of the district court to vacate a

4     prior order.

5          You may recall that you mentioned Judge Scalia's

6     Supreme Court opinion.  I just wanted to refer you.  I went and

7     looked it up.  It's *U.S. Bancorp Mortgage Company v. Bonner*

8     *Mall Partnership*.

9          THE COURT:  Right.

10         MR. ROBERTSON:  513 U.S. 18, 1994 decision.  I just

11    wanted -- it's actually quoted in the case that we had cited to

12    Judge Spencer about vacating his claim construction.  For the

13    record, I'd like to give you that cite.  It's *Dana v. E.S.*

14    *Originals*, 342 F.3d 1320.  It's a September 2003 Federal

15    Circuit decision, and the decision actually speaks to the fact

16    that appellate courts cannot vacate a district court order, but

17    district courts are free, pursuant to Rule 54(b) and Rule

18    60(d), at any time prior to final judgment to vacate their

19    orders, which is exactly what we urged Judge Spencer to do,

20    citing both *Bancorp* and the *Dana* case, and Rule 60(b), which is

21    exactly what he did, and even Judge Scalia, in his *Bancorp*

22    decision, indicates that district courts, unlike appellate

23    courts or even the Supreme Court, have full authority to do

24    that.

25         So I just -- you piqued my interest, and I just

1    wanted to bring that to your attention.

2            THE COURT:  Just for your future edification, go read

3    Judge Moon's recent opinion in Spencer against -- I think it's

4    an insurance company.  I can't remember.  It's out of the

5    Western District of Virginia, and let's see.  You might read --

6    I'm trying to remember the opinion I authored on it because I

7    think Justice Scalia's opinion speaks more broadly about the

8    real purposes of -- I recognize that *Bancorp* dealt with the

9    position of a Circuit Court vacating, but the bottom line of

10   *Bancorp* is that once decisions are entered, they belong to the

11   public, and, yes, you can, under appropriate rules, vacate

12   them, but you have to make the showing required under an

13   appropriate rule.

14           And I think it's almost impossible to make that

15   showing, but it's quite difficult, and it most often comes up

16   when people want to settle cases, and they want to eliminate

17   what the district court has done, and I have universally taken

18   the case that settlement doesn't -- taken the view that

19   settlement doesn't qualify as a reason under Rule 59 or 60 for

20   vacating a judgment on any topic, whatever it may be.

21           I'm certainly aware -- in fact, if I remember

22   correctly, there have been some recent amendments to the

23   Federal Rules that allow, under certain circumstances, vacating

24   of judgments to deal with part of the situation created by

25   *Bancorp*, but that doesn't have anything to do with us here now,

1   does it?

2            MR. ROBERTSON:  No, sir.  I just was following up --

3            THE COURT:  Well, I'm pleased to get educated any

4   time, so the more I learn, the more I know I don't know, so I'm

5   happy to have it.  Thank you.

6            Is there anything else we need to go through?  All

7   right, you'll do a revised order then, Mr. Robertson, Mr.

8   McDonald, and get it down here, and we'll enter it; right?

9            MR. McDONALD:  Yes, Your Honor, thank you.

10           THE COURT:  Thank you all a lot.  Bye.

11

12                   (End of proceeding.)

13

14

15           I certify that the foregoing is a correct transcript

16   from the record of proceedings in the above-entitled matter.

17

18

19   _____/s/_____              _____

     P. E. Peterson, RPR                  Date
20

21

22

23

24

25