IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| **Plaintiff,** | )    **Civil Action No. 3:09-CV-620 (REP)** |
| | ) |
| **v.** | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF EPLUS INC.'S RESPONSE TO DEFENDANT'S EXPERT DECLARATION

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................1

II.  ARGUMENT ..............................................................................................5

    A.  Many Of Dr. Shamos' Opinions Are Irrelevant And Inadmissible ........5

    B.  ePlus And Dr. Weaver Have Applied The Correct Legal Standard For Identifying The Corresponding Structure ................................................7

    C.  ePlus's Expert Has Properly Relied Upon Structures Disclosed In The Specification ..........................................................................................10

    D.  The Specification Adequately Describes How The "Means For Processing The Requisition" And The "Means For Processing Said Requisition" Generate Purchase Orders ........................................................................13

    E.  Dr. Weaver Properly Relies Upon Disclosures Expressly Set Forth In The Specification Of The Patents-in-Suit ...............................................17

    F.  The Patents-in-Suit Expressly Disclose Multiple Communications Protocols ................................................................................................20

    G.  The "Means For Searching" Claim Elements Do Not Require Searching RIMS Databases Or Concantenation ....................................................22

    H.  The Patents Disclose Structure For The "Means For Converting Data Relating To A Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source" ...............................25

    I.  Defendant Improperly Imports Limitations Into The Function Of The "Means For Selecting The Product Catalogs To Search" In Order To Generate A Non-Infringement Argument ................................................26

    J.  Defendant's Construction For "Means For Building A Requisition" Includes Unnecessary And Redundant Structure That Has Already Been Performed By The "Means For Searching" .........................................28

III.  CONCLUSION ..........................................................................................29

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aristocrat Techs Australia v. Intern. Game Tech.,*
  521 F.3d 1328 (Fed. Cir. 2008)...................................................................... 2, 3, 14

*Atmel Corp. v. Information Storage Devices, Inc.,*
  198 F.3d 1374 (Fed. Cir. 1999)........................................................................... 20

*Budde v. Harley-Davidson, Inc.,*
  250 F.3d 1369 (Fed. Cir. 2001)............................................................................. 9

*Cisco Sys., Inc. v. Telcordia Techs., Inc.,*
  590 F. Supp.2d 828 (E.D. Tex. 2008)..................................................................... 2

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.,*
  412 F.3d 1291 (Fed. Cir. 2005)............................................................... 17, 18, 19

*EZ Dock, Inc. v. Schafer Sys., Inc.,*
  2003 WL 1610781 (D. Minn. Mar. 8, 2003) ......................................................... 6

*Harris Corp. v. Ericsson Inc.,*
  417 F.3d 1241 (Fed. Cir. 2005)........................................................................... 14

*Howmedica Osteonics Corp. v. Wright Med. Tech.,*
  540 F.3d 1337 (Fed. Cir. 2008)........................................................................... 22

*Intel Corp. v. VIA Techs., Inc.,*
  319 F.3d 1357 (Fed. Cir. 2003).................................................................. 9, 15, 25

*Intellectual Property Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,*
  336 F.3d 1308 (Fed. Cir. 2003)....................................................................... 8, 25

*Med. Instr. & Diagnostics Corp. v. Elekta AB,*
  344 F.3d 1205 (Fed. Cir. 2003)................................................................... 3, 4, 10

*MicroChem., Inc. v. Great Plains Chem Co., Inc.,*
  194 F.3d 1250 (Fed. Cir. 1999)........................................................................... 12

*Network Appliance, Inc. v. Bluearc Corp.,*
  No. 03-5665, 2005 U.S. Dist. LEXIS 16732 (N.D. Cal. Jan. 7, 2005)................... 14

*Overhead Door Corp. v. Chamberlain Grp., Inc.,*
  194 F.3d 1261 (Fed. Cir. 1999)............................................................................. 9

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,*
  ___ F.3d ___, 2010 WL 1051154 (Fed. Cir. March 24, 2010).................... 18, 19, 20

*Proctor & Gamble Co. v. Teva Pharms. USA,*
  2006 WL 2241018 (D. Del. Aug. 4, 2006) ............................................................ 6

*Rexnord Corp. v. Laitram Corp.,*
  274 F.3d 1336 (Fed. Cir. 2001)........................................................................... 28

*Smith & Nephew, Inc. v. Biomet, Inc.,*
  2005 WL 3132313 (D. Or. Nov. 21, 2005), *appeal dismissed*, 216 Fed. Appx. 971 (Fed. Cir.
  2007) ................................................................................................................... 6

*Source Search Techs., LLC v. Lending Tree, LLC,*
  2006 WL 2990363 (D.N.J. 2006) ......................................................................... 3

*Spencer v. Am Int'l Grp.,*
  2009 WL 1034255 (E.D. Va. Apr. 16, 2009) ........................................................ 2

*WMS Gaming, Inc. v. Int'l Game Tech.,*
  184 F.3d 1339 (Fed. Cir. 1999).............................................................. 14

**Statutes**

35 U.S.C. 112.............................................................................................. 8

**Other Authorities**

Microsoft Computer Dictionary 233........................................................ 14

**Rules**

Fed. Cir. R. 35............................................................................................ 19
Fed. R. Civ. P. 54......................................................................................... 2

## I.     INTRODUCTION

Plaintiff *e*Plus Inc. ("*e*Plus") respectfully submits this response to the Supplemental *Markman* brief of Defendant Lawson Software, Inc. ("Defendant") and the supporting declaration of its expert witness Michael I. Shamos, Ph.D., JD ("Shamos Dec.").

In response to the declaration of *e*Plus's expert, Dr. Alfred C. Weaver, Ph.D., a distinguished professor of computer science and e-commerce from the University of Virginia, Defendant has retained a patent attorney who has appeared as an expert in no less than 58 cases over the last ten years.  Shamos Dec., Ex. 2.  This "expert" has now embraced and endorsed Defendant's claim constructions, although he apparently had no prior involvement in determining those constructions before this most recent submission.  In contrast, Dr. Weaver has consistently maintained his opinions on claim construction of the patents-in-suit long before this action was ever filed.

And while Dr. Shamos disclaims having "been asked to offer any opinions on patent law," *id.*, ¶ 4, his declaration is replete with them, often in the most conclusory fashion.  For example, Dr. Shamos raises new issues that never have before been briefed or even implicated in this *Markman* process.  Through mere *ipse dixit* he opines that seven claims of the patents-in-suit are "not enabled" because as he has concluded "one of skill in the art would not have been able to make or use the alleged invention."  *See id.*, ¶¶ 17-24.[1]  Similarly, without any citation to the intrinsic evidence or analysis whatsoever he merely pronounces Defendant's non-means-plus-function constructions to be correct.  Shamos Dec., ¶¶ 83-90.

---

[1] Defendant failed to raise any such specific allegations in the Invalidity Contentions required by this Court's Scheduling Order.  They appear here for the first time.  And they have no proper place in this *Markman* proceeding.

Dr. Shamos further urges this Court to adopt Judge Spencer's now long-vacated *Markman* ruling with respect to the means-plus-function claim terms at issue in this case, albeit acknowledging that Defendant's constructions are not "identical." *Id.*, ¶ 91. [2]  Inconsistently, however, Dr. Shamos never even acknowledges Judge Spencer's constructions with regard to the non-means-plus-function claim terms.  He is uncharacteristically silent on this point.

In substance, however, Defendant points to four alleged "flaws" in Dr. Weaver's reasoning.  *First*, Defendant contends that Dr. Weaver "fails to show how *e*Plus's proposed structures are clearly linked or associated with the recited functions."  Def's Resp. at 1.  In doing so, Defendant relies on two cases: *Aristocrat Tech. Austl. Pty Ltd. v. Int'l Gain Tech.*, 521 F.3d 1328, 1334 (Fed. Cir. 2008) and *Med. Instr. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205,

---

[2]  Dr. Shamos inconsistently relies on Judge Spencer's claim construction in the *SAP* case, yet he never acknowledges that Judge Spencer later vacated that ruling.  Moreover, he ignores Judge Brinkema's non-vacated claim construction rulings entirely.

Judge Spencer's *Markman* ruling was interlocutory and therefore subject to modification at any time.  Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment …"); *see also Cisco Sys., Inc. v. Telcordia Techs., Inc.,* 590 F. Supp.2d 828, 830 (E.D. Tex. 2008) ("Claim construction orders are not final and may be altered by the court prior to, or during, trial.  During the litigation process, claim construction may need to be edited or supplemented, even for seemingly simple terms.").

As set forth in *e*Plus's opening brief, Judge Spencer's vacatur ruling was made "for the reasons stated in *e*Plus's motion," which emphasized that the trial evidence demonstrated aspects of the ruling were erroneous.  Thus, this was not an instance in which vacatur was premised "simply because a settlement agreement [was] conditioned on vacatur," as in *Spencer v. Am Int'l Grp.,* 2009 WL 1034255 (E.D. Va. Apr. 16, 2009).  Moreover, other federal courts have found it appropriate to vacate their *Markman* rulings after considering the private and public interests implicated.  *Cisco Sys.,* 590 F. Supp.2d at 832.

And notably, although Dr. Shamos lauds Defendant's proposed constructions as being "nearly" or "generally" identical to those vacated by Judge Spencer, Shamos Dec., ¶¶ 27, 91, in at least one instance he rejects the *SAP* construction.  *Id.*, ¶ 57 ("the algorithm recited in the *SAP* decision does not satisfy the requirement of being linked to or associated with the 'converting' function and thus in this respect the *SAP* decision found structure where none exists").  And remarkably, Dr. Shamos pays no heed to Judge Spencer's *Markman* ruling with respect to elements not written in means-plus-function format.  *Id.*, ¶¶ 81-90.

1215 (Fed. Cir. 2003).  According to Defendant, Dr. Weaver does not acknowledge the "linkage" requirement set forth in these cases.  As an initial matter, however, the *Aristocrat* case does not even speak to such a requirement of "linkage."  *Aristocrat* involved a finding that there was no structure disclosed in the specification that corresponded to the function of the claim element. 521 F.3d at 1338.  Thus, it is simply inapposite on that basis.

In contrast, *Medical Instrumentation* supports *e*Plus's positions.  First, there is no required talismanic invocation or magical recitation of the word "linkage" required under the case law.  All that is required "in the analysis is to look to the specification and identify the corresponding structure for the claimed function."  *Med. Instr.*, 344 F.3d at 1210.  Of course this inquiry must be made from the perspective of one of ordinary skill in the art.  *Id.* at 1212 (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) ("[I]nterpretation of what is disclosed must be made in light of the knowledge of one skilled in the art.")).

As one district court recently observed in regard to a similar argument,

Defendants' linkage analysis is based upon a faulty premise.  The determination of whether the specification has described the structure in sufficient detail is not simply an English test; it is a technical test in that the sufficiency of the disclosure of the structure is based on the understanding of one skilled in the art.

We have previously observed that an analysis under … and in a §112, P 6 context, a court's determination of the structure that corresponds to a particular means-plus-function limitation is indeed a matter of claim construction. ***And it is well established that claims are to be construed in the view of the understanding of one skilled in the art, the closely related issue concerning whether sufficient structure has in fact been disclosed to support a means-plus-function limitation should be analyzed under the same standard.***

*Source Search Techs., LLC v. Lending Tree, LLC*, 2006 WL 2990363, *11 (D.N.J. 2006) (*quoting Amtel Corp.*, 198 F.3d at 1379-80 (emphasis added)).  Thus, Dr. Weaver's opinions as

3

to the structure that corresponds to the claimed function is entirely appropriate from his perspective as a person of skill in the art.

*Second*, Defendant contends that Dr. Weaver relies on that skill "to provide missing structure" not disclosed in the specification. Def's Resp. at 1-2. Of course, he does nothing of the sort. In each instance, Dr. Weaver has specifically referred to the structure in the specification that performs the recited function. *See, e.g.*, Weaver Dec. ¶¶ 16, 19.

Nevertheless, even if he did not, the *Medical Instrumentation* case again is instructive. For example, in discussing the case law, the Federal Circuit observed in that case that "there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use." *Id.* at 1214 (*quoting Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)). Similarly, the Court observed that testimony from one skilled in the art may recognize that the structure corresponding to the function may be "well known" in the field and that "one would recognize that the specification linked that particular structure to a claimed function." *Id.* (*citing S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001)).

*Third,* Defendant argues that Dr. Weaver ignores the "disclosure of hardware" in the specification when determining the appropriate algorithm (which the parties have stipulated involves the "steps necessary to perform the software task"). Def's Resp. at 2. A review of the case law referenced by Defendant, however, reveals that the **only hardware ever discussed** is the microprocessor of a computer specially programmed to perform the steps of the algorithm. *See infra* at 13-15. Nowhere in any of the cases relied upon by Defendant is there **any other** recitation of structure other than the specially programmed microprocessor of the computer. Dr. Weaver, of course, acknowledges that the software must operate on a computer. It does not self-

execute.  Thus, in each of the algorithms set forth by ePlus, the corresponding structure includes "a computer which is programmed with special-purpose software module to execute an algorithm."  If Defendant will agree that a microprocessor is the only necessary structure when programmed by the specific software module, then there is no dispute.  But Defendant does not stop there.  It includes a host of hardware or specific protocols nowhere required under the case law.

*Finally*, Defendant contends that Dr. Weaver "improperly incorporates by reference from the '989 Patent" — a predecessor invention of two of the inventors of the patents-in-suit.  Def's Resp. at 2.  As set forth *infra* at 17-19, however, he does no such thing.  First, he does not rely on the structure disclosed in the '989 Patent to support his constructions.  There is, however, express disclosure in the patents-in-suit of the structure disclosed in the '989 Patent.  Repeatedly, the patents-in-suit specifically reference that structure in great detail.[3]

In short, none of the purported "flaws" raised by Defendant have any merit.  Accordingly, ePlus respectfully requests that its claim constructions be adopted.

## II.   ARGUMENT

### A.   Many Of Dr. Shamos' Opinions Are Irrelevant And Inadmissible

Although Dr. Shamos states that he has not been asked to offer any opinions on patent law, Shamos Dec., ¶ 4, in fact Dr. Shamos states legal opinions on numerous occasions throughout his declaration, all of which the Court should disregard.  For example, with respect to the disputed claim elements not written in means-plus-function format, Dr. Shamos opines about this Court's purported duty to construe such claims, stating, "the jury needs to be instructed by

---

[3] Thus, this is not incorporation by reference, but rather ***express reference*** within the patents themselves.  *See infra* at 18, n. 11.  There is nothing improper in looking at that express reference in relation to determining the corresponding structure associated with the claimed function.

the Court what that meaning is.  It should not be left to trial for the parties to argue different meanings to the jury … [i]f ePlus believes that a term has a plain and ordinary meaning, it should state what the meaning is so Lawson can decide whether to agree to it and so the Court can decide whether to adopt it." *Id.*, ¶ 82.  Similarly, at various points in his declaration he further lectures the Court, "There is no reason to allow the jury to conduct a debate or worse, to allow counsel to argue different meaning to the jury at trial when the matter can be put to rest through claim construction." *Id.,* ¶ 88.

The federal courts have repeatedly held that such "expert" legal testimony is irrelevant and should be excluded.  *See, e.g., EZ Dock, Inc. v. Schafer Sys., Inc.,* 2003 WL 1610781, **9-10 (D. Minn. Mar. 8, 2003) (Merchant & Gould's patent lawyer expert excluded from testifying as expert on claim construction or invalidity; "[t]he Court rejects Defendants' argument that [patent lawyer's] 'specialized knowledge' as a patent attorney will help the jury understand the various statutory requirements for obtaining a valid and enforceable patent"); *see also Proctor & Gamble Co. v. Teva Pharms. USA,* 2006 WL 2241018, *1 (D. Del. Aug. 4, 2006) ("The Rules of Evidence do not permit expert testimony as to legal conclusions."); *Smith & Nephew, Inc. v. Biomet, Inc.,* 2005 WL 3132313, *2 (D. Or. Nov. 21, 2005), *appeal dismissed*, 216 Fed. Appx. 971 (Fed. Cir. 2007) (striking portions of affidavit submitted by patent attorney expert that provided testimony on the law; and stating "Experts 'do not testify about the law.'").  Surely this Court does not require an "expert" lecture from Dr. Shamos as to its obligations under *Markman*.

In addition, Dr. Shamos opines as to legal conclusions that various claims are not enabled, Shamos Dec., ¶¶ 17-25, and purports to opine as to which party's constructions are closer to the vacated constructions from the *SAP* case.  *Id.*, ¶ 27.  He also opines that Dr. Weaver makes incorrect assumptions about patent law, *id.,* ¶¶ 26, 28, although, as discussed *infra,* this

contention is simply wrong and misstates Dr. Weaver's assumptions.  He also states legal opinions as to the manner in which means-plus-function elements should be construed.  *Id.,* ¶¶ 41-46, 51-52 (*see, e.g.,* ¶ 51, stating, "Such unbridled interpretation would improperly construe the claimed invention not in terms of structure, but in terms of function, effectively including in its scope any device, however assembled, that performs the recited function.").  Other legal opinions appear throughout Dr. Shamos's declaration.  *See, e.g., id.,* ¶ 57 ("in my opinion the algorithm recited in the *SAP* decision does not satisfy the requirement of being linked to or associated with the 'converting' function"), ¶ 59 ("if Dr. Weaver is correct … then the claims … would be invalid based on the patentee's own acknowledgement that such systems were known in the prior art."); ¶ 60 ("Such a construction [as proposed by Defendant] violates no principle of patent law."); ¶ 61 ("The Court evidently thought the better in its later constructions in *ePlus v. SAP*").[4]

All of these opinions are irrelevant and inadmissible, and should be disregarded by the Court.

**B.    ePlus And Dr. Weaver Have Applied The Correct Legal Standard For Identifying The Corresponding Structure**

Defendant contends that Dr. Weaver's declaration is flawed because he allegedly fails to acknowledge the requirement that a structure be linked to the function of a disputed means-plus-function element.  Defendant's contention is simply wrong, and is nothing more than an effort to manufacture a defect in Dr. Weaver's declaration where none exists.

---

[4] As noted *supra,* Dr. Shamos appears to be unaware that Judge Spencer later "thought the better" and vacated his *Markman* ruling upon which Dr. Shamos heavily — albeit inconsistently — relies.  To the contrary, it appears Dr. Shamos has ignored the fact that the *SAP* Court vacated the constructions that he relies upon.

In his declaration, Dr. Weaver sets forth his understanding of the legal requirements that provide the context for his technical opinions, and he clearly states that he understands the structure must correspond to the function at issue, just as the statute provides.  Weaver Dec., Appx. B, ¶ 11 ("I am further informed that for such a claim, the claim is to be construed to cover *the corresponding structure, material or acts described in the specification* and equivalents thereof.  Thus, in construing such claims, the Court is required to consult the patent specification in order to determine *the relevant structures for performing the stated function*").  *Compare* 35 U.S.C. 112, ¶6 ("such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof").  *See also* Weaver Dec., Appx. B, ¶ 13 ("features that do not perform the recited 'function' do not constitute corresponding structure and thus do not serve as claim limitations"); Appx. B, ¶ 15 ("I am informed and understand that … the Court must … identify the structure, material and/or acts in the patent specification *corresponding to the function*") (emphasis added).[5]

The law requires no more.  Defendant cites to no case law requiring that a patent specification make a ritual recitation linking the structure to the function.  Indeed, the law is to the contrary.  *See, e.g., Intellectual Property Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,* 336 F.3d 1308, 1319-20 (Fed. Cir. 2003) (finding expert testimony and prosecution history enough to establish correspondence between structure and function).  Under

---

[5] Likewise, throughout his declaration, Dr. Weaver addresses his opinions as to when the structures are linked to the functions at issue.  *See, e.g., id.*, ¶ 16 ("there is structure described in the patent specification *corresponding to* the 'means for processing the requisition …' and the 'means for processing said requisition ….'") ¶ 19 ("there is structure described in the patent specification corresponding to the 'means for converting data …'").

Federal Circuit law, whether a linkage exists between the structure and the function must be considered from the perspective of one of ordinary skill in the art, just as Dr. Weaver has done.[6]

As the Federal Circuit explained in the *Medical Instrumentation* case upon which Defendant heavily relies, "[i]n past cases, we have been generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function."  344 F.3d at 1213-14.

For example, the *Medical Instrumentation* court noted that in *Overhead Door Corp. v. Chamberlain Grp., Inc.,* 194 F.3d 1261 (Fed. Cir. 1999), a software embodiment was "clearly linked" to the claimed function because, first, "expert testimony indicated that one of skill in the art would understand the relevant portions of the flow diagram to describe software operations for performing the claimed function" and, second, the prosecution history contained a statement that the means at issue included "electronic as well as manual switches."  *Id.* at 1213.

Additionally, the *Medical Instrumentation* court explained:

> *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369 (Fed. Cir. 2001), is yet another example of this line of cases.  In *Budde,* we held that the district court correctly found that a patent disclosed adequate corresponding structure for a "status sensing means."  *Id.* at 1381.  Part of the function was to measure vacuum in the intake manifold, and the specification explained that "vacuum sensors are commercially available units which produce analog signals for the control unit."  *Id.* (internal quotation marks omitted).  The patent also contained a block diagram that included a box labeled "vacuum sensor."  *Id.*  We found that the specification's description of the vacuum sensor as a "commercially available unit" would have been understood by a person skilled in the art to disclose structure capable of performing the recited function.  *Id.* at 1382.

---

[6] *See Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1365-66 (Fed. Cir. 2003) ("Whether the specification adequately sets forth structure corresponding to the claimed functions must be considered from the perspective of one skilled in the art.  Any fact critical to a holding on indefiniteness, moreover, must be proven by the challenger by clear and convincing evidence.") (citation omitted).

*Med. Instr.*, 344 F.3d at 1214.

Accordingly, Dr. Weaver's testimony as to the knowledge of persons of ordinary skill in the art fully supports the correspondence between the claimed functions and structures at issue. Finally, Defendant argues that on occasion Dr. Weaver relies upon structures that are also linked to other functions. Def's Resp. at 3. However, as Defendant itself argues later in its brief, "*there is no rule against having multiple functions that invoke the same structure or steps*, if the structure or steps are clearly linked to those multiple functions." Def's Resp. at 20 (emphasis added) (citing Shamos Dec., ¶¶ 73-80).

### C.  *e*Plus's Expert Has Properly Relied Upon Structures Disclosed In The Specification

Defendant contends that *e*Plus's expert Dr. Weaver has relied upon knowledge of persons of ordinary skill in the art to provide structure that it contends is missing from the specification of the patents-in-suit. Def's Resp. at 4. Contrary to Defendant's contentions, however, Dr. Weaver's opinions as to the algorithms corresponding to the functions for the means-plus-function elements are all based upon structures explicitly disclosed in the patent specification. Of course, the patent specification and the disclosure therein are directed to a person of ordinary skill in the art, and the sufficiency of the patent's disclosure is to be analyzed from the perspective of a person of ordinary skill in the art.

For example, Defendant has proposed several constructions which engraft an unnecessary recital of a specific communications protocol, the Dynamic Data Exchange ("DDE") protocol, into the algorithms, although use of the DDE communications protocol is not a process step executed by software, but rather part of the environment in which the local computer preferred

10

embodiment operates.[7]  Thus, instead of defining a process step as simply "transferring data

relating to selected item(s) from hit list(s) that were returned from search(es)," Defendant

contends that the process step should be defined as "transmitting data from order list (48) to

requisition/purchasing system running on same local computer (20) or (220) via the DDE

protocol of interface (60)."  However, there is no requirement in defining an algorithm that the

process steps specify the brand-name computer program employed by the inventors or the

operating system environment in which the computer software executes the algorithm.  Nor can

Defendant point to any case precedent supporting such a position.

Moreover, it is inappropriate to engraft the unnecessary limitation that the system employ

the DDE communications protocol for a number of reasons.  First, the DDE communications

protocol applies to only one of the embodiments described in the specification, the local

computer embodiment.  There is another embodiment disclosed in the patent specification,

however, a networked embodiment.  Defendant's proposed constructions would disregard this

described networked embodiment.  *See* Weaver Dec., ¶¶ 15-16, 29-35.  It would be improper for

---

[7] It is difficult to understand why Defendant contends that "DDE protocol" must be engrafted
into numerous claim elements when it does not take such a position as to other specific operating
systems and software applications explicitly referenced in connection with the local computer
preferred embodiment.  For example, although the specification discloses that the claimed
system could run on the IBM OS/2 operating system, Defendant's proposed algorithms for the
means-plus-function claim elements do not recite a requirement of an OS/2 operating system.
Moreover, the specification also discloses that the computer could be running the CICS OS/2
application available from IBM in the local computer embodiment.  Yet, Defendant has not
engrafted that requirement into its claim constructions.  As the patent recognizes, and as Dr.
Weaver opined, the claimed systems could be implemented in environments other than one
employing the IBM OS/2 operating system and CIS OS/2 application.  Young Dec. Ex. 2, Col.
3:60-67; Weaver Dec., ¶ 16.  If the claimed system was implemented in an environment other
than one using the IBM OS/2 operating system and CIS OS/2 application, then the DDE
communications protocol would not be employed.  That protocol was specific to the IBM OS/2
operating system.  Weaver Dec., ¶ 16; Young Dec. Ex. 2, Col. 5:22-24 ("Interface 60 is
*preferably* based upon the dynamic data exchange ('DDE') protocol provided by OS/2 operating
system 32.") (emphasis added).

the Court to adopt a construction for a means-plus-function claim that did not apply to all disclosed embodiments. *MicroChem., Inc. v. Great Plains Chem Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (finding that "a means-plus-function claim encompasses all structure in the specification corresponding to that element and equivalent structures" and holding that district court's construction was erroneous as it overlooked alternative embodiments.).

Second, the DDE communications protocol is not the only communications protocol explicitly disclosed in the patent. The patent specification expressly discloses that the system may employ the "formats and protocols of IBM's System Network Architecture ('SNA')." Young Dec. Ex. 2, Col. 5:9-17. According to Dr. Weaver, a person of ordinary skill in the art would understand this disclosure in the patent specification to reference use of the various communications protocols of IBM's SNA. Such person of ordinary skill in the art would have understood that one of the protocols of IBM's SNA was the LU 6.2 communications protocol. Weaver Dec., ¶¶ 23-28.[8] Thus, Dr. Weaver indicated that a person of ordinary skill in the art would have understood that IBM's LU 6.2 communication protocol was expressly disclosed in the specification of the patents-in-suit.

Similarly, with reference to the algorithm corresponding to the "means for processing the requisition to generate one or more purchase orders for the selected matching items," contrary to Defendant's contention, Dr. Weaver has relied upon numerous sections in the patent specification that expressly describe the steps of the algorithm for performing the claimed function. *See* Weaver Dec., ¶¶ 38-40 (referencing Young Dec. Ex. 2, Col. 10:48-64; Col. 14:46-65; Col. 15:20-49; FIG. 3; Appendix IX). He has not relied upon disclosure from the '989 Patent or the knowledge of persons of ordinary skill in the art for his opinions as to the structures linked

---

[8] Indeed, Defendant's expert Dr. Shamos recognizes that the patent specification expressly discloses the communications protocols associated with IBM's SNA. Shamos Dec., ¶ 33.

to these claim elements.  Contrary to Defendant's contentions, the structures disclosed in the patent specification, and relied upon by Dr. Weaver, are explicitly linked to the function of generating purchase orders.  *See* Young Dec. Ex. 2, Col. 10:48-64 ("*a purchase order would then be generated … a purchase order would be generated for an item*, corresponding to a desired catalog item, that was identified by the same Fairmont catalog number that was requisitioned."); Col. 15:20-49 ("once a requisition has been inventory sourced and accepted by the CSR, *it can be converted to one or more purchase orders …*"); FIG. 3 (process flow indicating Step 114 as a step for generation of purchase orders and showing the paths associated with each product type 01, 03, 04, 07, 06) (emphasis added).

Dr. Weaver has properly grounded his opinions in the disclosure of the specification of the patents-in-suit.

### D.    The Specification Adequately Describes How The "Means For Processing The Requisition" And The "Means For Processing Said Requisition" Generate Purchase Orders

Defendant attempts to take Dr. Weaver to task for purportedly not understanding that the corresponding structure for a means-plus-function claim element must include some sort of hardware, *viz.,* the general purpose computer or microprocessor, as programmed to perform the steps of the algorithm, thereby becoming a special purpose computer.  However, ePlus's briefs and arguments to the Court have fully acknowledged this principle.  Likewise, Dr. Weaver's declaration is expressly premised upon this rule of law.  *See* Weaver Dec., Appx. B, ¶ ("Thus, I understand from the teaching of the Federal Circuit, that in a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the structure corresponding to the claimed means for performing the function recited in the claims is to be construed as to the special purpose computer programmed to perform the disclosed algorithm.").  Indeed, Defendant elsewhere *concedes* that Dr. Weaver has stated this

law correctly, Def's Resp. at 9 ("Dr. Weaver appears to acknowledge this is the law ….").

Based on the premise that the structure includes the general purpose computer or microprocessor, however, Defendant seeks to transform the algorithm construction exercise into a license to incorporate additional hardware limitations that are neither necessary nor appropriate for construing the algorithms for the disputed means-plus-function elements.[9]  The case law Defendant cites, *see* Def's Resp. at 8-9, utterly fails to support its argument.  None of the Federal Circuit cases Defendant cites included a hardware limitation other than that of a general purpose computer or microprocessor.[10]  *See Aristocrat,* 521 F.3d at 1333-38 ("a general purpose computer programmed to carry out a particular algorithm creates a 'new machine' because a general purpose computer 'in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software'") (citation omitted); *Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1253-54 (Fed. Cir. 2005) (proper construction was a two-step algorithm "implemented by a microprocessor"); *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1349 (Fed. Cir. 1999) ("the structure disclosed for the …

---

[9] According to the Microsoft Computer Dictionary, a "general purpose computer" is simply "[a] computer that can perform any computational task for which software is available.  A PC is a general-purpose computer."  Microsoft Computer Dictionary 233 (5th ed. 2002).  Software is a computer program that provides the "instructions that make hardware work."  *Id.* at 489.

[10] Defendant also cites the unpublished district court case of *Network Appliance, Inc. v. Bluearc Corp.,* No. 03-5665, 2005 U.S. Dist. LEXIS 16732, at **24-26 (N.D. Cal. Jan. 7, 2005).  However, in that case the parties agreed, based on the particular claim language that the construction required certain hardware components.  *Id.* ("Plaintiff does not dispute that a number of hardware components disclosed in the specification are required to perform this function.").  Even then, however, the court *rejected* the additional hardware limitations advocated by the accused infringer.  *Id.* ("the court holds that neither of these structures is necessary to carry out the claimed 'data transmission' function and thus can not limit the scope of the 'means for transmitting' claim terms.").  In words appropriate to Defendant's arguments in this case, the Court further stated, "defendant has failed to identify any principled basis for including some of these components as limitations of the "means for transmitting" claim elements while excluding others from the structure corresponding to this function.  Defendant's inability to do so lends further support to the court's conclusion that neither parity FIFO 240 nor multiplexer 614 are limitations on the "means for transmitting" claim element.").

14

limitation … is a microprocessor programmed to perform the algorithm"); *Intel Corp.*, 319 F.3d at 1365-67 (corresponding structure for claim reciting interface between system memory controller and peripheral device was the core logic of a computer modified to perform "Fast Write" protocol; no requirement that internal circuitry of electronic device must be disclosed if one of ordinary skill in art would know how to build and modify device).

Indeed, Defendant's citation to these cases does not even explain what "hardware" was supposedly incorporated into these constructions other than that of the general purpose computer or microprocessor.  Moreover, as previously argued, Defendant *agreed* that the Microsoft Computer Dictionary definition of an "algorithm" as merely a sequence of steps for performing a task is appropriate.  Jan. 27, 2010 *Markman* Tr. at 26.

Defendant contends that the patent specification fails to disclose how the "means for processing the requisition," as recited in claims 3 and 6 of the '683 Patent, and the "means for processing said requisition," as recited in claim 1 of the '172 Patent, generate purchase orders. (Def's Resp. at 14.)  Defendant is incorrect.  The specification adequately discloses the required structure (*i.e.*, a computer which is programmed with special purpose software modules including a purchasing module to execute a purchase order generation algorithm), and the purchase order generation algorithm.  *See, e.g.*, Young Dec. Ex. 2, Col. 15:20-54 (Once a requisition has been accepted, it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3 and as illustrated in the example shown in Appendix IX.)  Dr. Weaver expressly found that this structure is linked to the function of generating purchase orders.  *See* Weaver Dec. at 17, ¶ 37 ("…[A] person of ordinary skill in the art would understand that the algorithm associated with these claimed functions and executed by the purchasing module of the system is clearly described in the patent specification and corresponds to the following steps…").

The first step in the algorithm for generating a purchase order from a requisition is that the system "accepts" the requisition.  Young Dec. Ex. 2, Col. 15:20-26.  The next step in the algorithm is that the system generates a purchase order based on predetermined rules relating to the user's preference (*e.g.*, one purchase order to each distinct supplier referenced in the requisition).  *See* Young Dec. Ex. 2, Col. 10:48-64.  The specification describes multiple examples of the purchase order generation algorithm.  *See* Weaver Dec., ¶¶ 38-40; Young Dec. Ex. 2, Col. 14:46-65; Col. 18:7-29.

Dr. Shamos asserts that the specification's multiple examples of the purchase order generation algorithm "improperly construe the claimed invention."  Shamos Dec., ¶ 51.  These examples do not simply relate to steps that take place "before" or "after" the purchase order generation process, as Defendant argues, but describe to a person of ordinary skill in the art the actual algorithm used by the system to analyze a requisition and decide which line items of the requisition are to be included on different purchase orders being generated by the system.  Dr. Shamos concedes that "I do not contend that one of skill in the art would not be able to figure out how to generate a purchase order."  Shamos Dec., ¶ 51.  Thus, ePlus' proposed constructions for these claim terms are correct and fully described in the patent specification.

Next, Defendant contends that no method or algorithm is disclosed for processing any "predetermined rules" because the exact phrase "predetermined rules" does not appear in the specification.  Shamos Dec., ¶ 49.  Defendant fails, however, to cite any authority for its proposition that the purchase order generation algorithm is not fully described in the patent specification unless the exact phrase "predetermined rules" appears in the specification.

Dr. Shamos admitted that an example "of such a rule…is the one cited, namely 'one purchase order to each distinct supplier referenced in the requisition.'"  Shamos Dec., ¶¶ 49-50.

16

Yet, Defendant urges that the claim must be limited to cover only this particular example. However, it is a fundamental principle of claim construction that a means-plus-function claim term must be construed to cover all embodiments disclosed in the patent specification that correspond to the recited function of the claim term. Thus, the example cited by Dr. Weaver (and Dr. Shamos) supports ePlus's proposed construction that purchase orders are generated according to predetermined rules or user preferences. Weaver Dec., ¶ 41. Accordingly, *e*Plus's proposed constructions for these claim terms are correct and fully described in the patent specification.

### E. Dr. Weaver Properly Relies Upon Disclosures Expressly Set Forth In The Specification Of The Patents-in-Suit

Defendant argues that Dr. Weaver has improperly relied upon the inventors' "incorporation by reference" of structures from the predecessor '989 Patent — invented by two of the same inventors — as corresponding structures for the disputed means-plus-function elements. Defendant contends that such "incorporation by reference" is impermissible under *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.,* 412 F.3d 1291, 1301 (Fed. Cir. 2005).

As has previously been argued, however, neither ePlus nor Dr. Weaver rely upon incorporation by reference. Rather, they rely upon structures that are expressly and repeatedly disclosed in the specifications of the patents-in-suit. The sole example Defendant addresses is that of the LU 6.2 communications protocol, which Defendant wrongly contends is disclosed solely in the '989 Patent. As Dr. Weaver explains in his declaration, however, the LU 6.2 protocol is one of the "formats and protocols of IBM's System Network Architecture ('SNA')" which is expressly disclosed in the specification of the patents-in-suit. Young Dec. Ex. 2, Col. 5:9-12.

17

Moreover, in this case the inventors' disclosure of structures from the '989 Patent is readily distinguishable from that in the *Default Proof* case. As Defendant's own citation to that case demonstrates, the reference sought to be incorporated in *Default Proof* was a third party's patent that was cited as prior art, and the inventor of the patent-in-suit sought to claim a kiosk structure from that prior art merely by virtue of his citation to it. The Federal Circuit found that the structure of a "kiosk" "*does not even appear* in the Muehlberger patent" that the inventor sought to incorporate by reference. *Default Proof,* 412 F.3d at 1301 (emphasis added); *see also* Def's Resp. at 10, n.2. Accordingly, the inventor's attempt to incorporate the structure by reference failed on its face because the structure did not even appear in the incorporated reference.

Likewise, another recent Federal Circuit case involved a situation where the inventor sought to incorporate by reference structures derived from the mere disclosure of a "laundry list of prior art references." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,* ___ F.3d ___, 2010 WL 1051154, *5 (Fed. Cir. March 24, 2010). The Court held that the inventor's attempt to incorporate these structures by reference failed, because the courts "cannot look to the prior art, *identified by nothing more than its title and citation* in a patent, to provide corresponding structure ...." *Id.* (emphasis added). Thus, the inventor could not claim as corresponding structures everything included within that laundry list of prior art.

In contrast, in this case more than *three dozen times* the specification for the patents-in-suit makes specific reference to the Fisher RIMS system described in the '989 Patent *and the relevant structures contained therein*, and explains how those structures operate and interact,

even including patent drawings and screenshots demonstrating the use of those structures.[11]

Indeed, *several columns* of the specification for the patents-in-suit consist of a detailed

description of the process of creating a requisition using the Fisher RIMS system (described in

the '989 Patent), and contain detailed descriptions, explanations, and references to patent

drawings.  Young Dec. Ex. 2, Col. 6:54-8:37.

Accordingly, this case presents a polar opposite from merely listing some unrelated third

party's article or patent by "its title and citation" and arguing that all of the structures contained

therein are incorporated by reference.  Neither does this case present the situation in *Pressure

Products*, in which the patentee argued that all structures contained in a "laundry list of prior art

references" were supporting structures.[12]

---

[11] *See, e.g.*, Young Dec. Ex. 2, Col. 1:17-35 (describing Fisher RIMS system's ability to manage
and process requisitions, and manage inventory); Col. 4:3-9 (describing use of Fisher RIMS as
requisition/purchasing system and showing one embodiment, contained in FIG. 1A of
specification for patents-in-suit, utilizing Fisher RIMS); Col. 4:10-24 (describing specific
program modules that comprise Fisher RIMS, including Requisition Management program used
to interface with TV/2 search program, and specific databases, including requisition databases,
inventory databases, and customer-specific databases); Col. 5:28-31 ("A typical data exchange
may begin with requisition/purchasing system 40 (*which, in the illustrated embodiment, is the
Fisher RIMS system*) requesting information from catalog database 36 via search program 50")
(emphasis added but parenthetical contained in original); Col. 6:34-38 ("The following
description illustrates the use of the Fisher RIMS system as requisition/purchasing system 40,
and the TV/2 search program as search program 50.  However, it will be understood that the
present invention is not limited to such system or program."); Col. 6:39-53 (describing
requisitioning via Fisher RIMS system as illustrated in FIG. 3); Col. 11:60-61, 12:6-7 (making
specific reference to requisition management data screen of Fisher RIMS); Col. 12:56-60
(describing how Fisher RIMS system will continue to process items); Col. 13:63-14:11
(describing use of Fisher RIMS system in completing requisition, and use of programs in Fisher
RIMS system for inventory sourcing "as shown in FIG. 3 [of the specification]"); Col. 14:12-20
(describing Appendix VIII of specification as showing Requisition Item Table from Fisher RIMS
system); Col. 15:60-16:7 (describing how Fisher RIMS inventory sourcing programs return
messages for logging by electronic sourcing system); *see also id.,* Appxs. I, VIII, IX.

[12] In addition, to the extent the Court may find that *Default Proof* is applicable at all, Defendant
has not contested that *Default Proof*, if adopted, would violate the Federal Circuit's own rule that
prohibits three-judge panels (rather than the Court sitting *en banc*) from overruling prior
precedents.  Fed. Cir. R. 35(a) ("only the court en banc may overrule a binding precedent").

**F.      The Patents-in-Suit Expressly Disclose Multiple Communications Protocols**

Defendant contends that the claims should include a limitation requiring use of the DDE communications protocol because, according to Defendant, such protocol is the only one disclosed for transferring data between the requisition/purchasing program and the catalog search program. Thus, Defendant contends that Dr. Weaver's opinions disputing that such limitations are required are flawed. Def's Resp. at 12. It is Defendant, however, rather than Dr. Weaver, that has adopted the incorrect approach.

The "DDE protocol" is not properly included as part of the algorithms associated with the claimed functions. Defendant has improperly engrafted this limitation into what is supposed to be an algorithm setting forth steps of a process executed by the computer software. As discussed above, the DDE communications protocol was described in the specification in connection with one disclosed embodiment, the local computer embodiment which was described in connection with the OS/2 operating system running the CICS OS/2 application. Assuming a different operating system environment, one of ordinary skill in the art would employ whatever communications protocol was provided with such operating system. The DDE communications protocol was only available with the OS/2 operating system and CICS application. Weaver Dec., ¶ 16.

Moreover, as Dr. Weaver explained, there is also a networked embodiment disclosed in

---

That remains the case even after the *Pressure Products* decision, which was decided by a five-judge panel rather than *en banc*. Indeed, as in *Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1384-86 (Fed. Cir. 1999), in *Pressure Products* one Federal Circuit judge actually dissented notwithstanding that the disclosure of structure was nothing more than a laundry list of prior art references, stating that it is "an incorrect generalization" that a patentee is prohibited from "relying on an 'incorporated' reference to describe a corresponding structure." *Pressure Prods.,* 2010 WL 1051154 at *12 (Newman, J., dissenting). Judge Newman stated that "No blanket rule prohibits reliance on prior art for known information. Precedent is contrary." *Id.*

the patent.  Weaver Dec., ¶ 16.  Defendant's proposed constructions requiring the use of the DDE communications protocol would not apply to the networked embodiment.  Weaver Dec., ¶¶ 16, 29-35.  Defendant has disregarded the disclosure in the patent specification that the requisition/purchasing program and the catalog search program need not run on the same local computer.  Weaver Dec., ¶¶ 29-35 (referring to the networked embodiments disclosed in connection with FIG. 1B wherein the application layer of the requisition/purchasing program executes on the file server 200 rather than on local computer 220); Young Dec. Ex. 2, Cols. 16-19.  It would be inappropriate to adopt a construction importing limitations into various claim elements requiring that the programs execute on the same local computer and communicate via the DDE protocol.  Such a construction would entirely disregard the disclosed networked embodiments.

Defendant also faults Dr. Weaver for purportedly relying upon disclosure from the '989 Patent with respect to his opinions about multiple communications protocols.  Def's Resp. at 12.  Dr. Weaver has not relied upon disclosure incorporated by reference from the '989 Patent to provide structure.  Rather, he opines that communication protocols other than the DDE protocol are expressly described in the specification of the patents-in-suit.  Weaver Dec., ¶¶ 18, 20-28.[13]

Additionally, Defendant takes issue with Dr. Weaver's opinions because it contends that Dr. Weaver ignored the requirement that the claimed structures must purportedly include both hardware and the algorithm.  Def's Resp. at 12.  As set forth above, it is Defendant, not Dr. Weaver, that has adopted an incorrect approach by including recitations of hardware in

---

[13] Indeed, Defendant acknowledges, as it must, that the patent specification discloses multiple different communications protocols.  *See* Def's Resp. at 13; Shamos Dec., ¶ 43.

algorithmic process steps to be executed by software.[14]

For all of these reasons, it would be inappropriate to adopt constructions for the means-plus-function claim elements requiring that the software programs operate on the same local computer and communicate via the DDE communications protocol.[15]

### G.    The "Means For Searching" Claim Elements Do Not Require Searching RIMS Databases Or Concantenation

Defendant contends that the claims require that the "means for searching for matching items" search the RIMS databases.  However, as explained in ePlus's previous submissions, nowhere in the patent specification does it describe the search engine program searching the RIMS databases for matching items.  Nor does Defendant cite to any passage in the specification as purportedly disclosing this step.  Instead, the specification states that the search engine program searches the catalog databases for matching items, even where a search is initiated from the requisition/purchasing module.  Likewise, claim 3 of the '683 Patent term requires that the "means for searching" searches for matching items "among the selected *product catalogs*."  Young Dec. Ex. 2, claim 3 (emphasis added).  There are no product catalogs stored in the RIMS databases.  Rather, the product catalogs are stored in the catalog databases 36 and 236.  Young

---

[14] Defendant further contends that Dr. Weaver "also ignores other the evidence [sic] in this case."  Def's Resp. at 14, n.5.  Defendant cites to deposition testimony of one of the inventors in which he purportedly failed to recall two of the alternative protocols to DDE.  *Id.*  Defendant's argument is wrong for at least two reasons.  First, as shown by the testimony quoted in Defendant's brief, the deposition question asked by Defendant's counsel directed the witness to answer with respect to Fisher's commercial system, not with respect to the disclosures of the patents-in-suit.  *See id.* ("Q.  What technique did Fisher select?").  Second, the law is clear that inventor testimony cannot alter the meaning of claim terms.  *See, e.g., Howmedica Osteonics Corp. v. Wright Med. Tech.*, 540 F.3d 1337, 1347-48 (Fed. Cir. 2008).  Indeed, whether an inventor can recall "on the fly" in the midst of a deposition all of the passages of a complex patent that correspond with each function in the claims is not a dependable basis for claim construction.

[15] It was for these reasons that *e*Plus requested that Judge Spencer vacate his *Markman* Order which incorporated such limitations.  Young Dec. Ex. 12 at 4-11.

Dec. Ex. 2, Col. 4:35-45; Col. 9:9-12; Col. 17:60-64; Figs. 1A, 1B. And, all of the claims at issue require the search be conducted for "matching items." The only place where the item records are located, according to the specification, is the catalog database 36 or catalog databases 236. Accordingly, the language of the claims precludes a construction which would require that the "means for searching for matching items" search the RIMS databases.

In all citations of the patent specification relied on by Dr. Shamos, there is no description anywhere that the search engine program ever conducts a search of the RIMS databases. For example, Defendant cites to the Young Dec. Ex. 2, Col. 6:6-8. This excerpt relates to filling out fields in a requisition form prior to requesting a search of the catalog database 36 by search program 50. Reading a few lines further down that column to lines 11-13, however, the inventors made clear that any of the fields filled out in the requisition form are then passed to the search engine program 50 to assist it in "executing its first search against a specific catalog contained in catalog database 36." Thus, the specification does not support a construction which would require that the "means for searching for matching items" search the RIMS databases.[16]

Defendant also urges the Court to import a limitation that the search engine program concatenates selected product catalogs. Joining the selected catalogs is not required by the claims. Indeed, Dr. Weaver opined that a person of ordinary skill in the art would not understand the search algorithms to include such a step. Weaver Dec., ¶ 67. For example, in several embodiments described in the specification, a person of ordinary skill in the art would

---

[16] Defendant ignores its own mantra that the structures for the algorithms be clearly linked to the claimed function. It has cited no disclosure in the patent specification linking the "means for searching for matching items" to a step of searching the RIMS databases. Indeed, Dr. Shamos acknowledges that the search engine programs 50 and 250 are never described in the patent specification as searching the RIMS databases. *See* Shamos Dec., ¶ 66 ("Lawson nowhere asserts that programs 50 and 250 access the RIMS database."). However, Dr. Shamos fails to describe what alternative program, if not the search engine programs 50 or 250, is purportedly used to search the RIMS databases. His declaration is silent on this issue.

understand that a system user could select only one catalog to be searched from among the available catalogs.  In such cases, no concatenating step is required since only one catalog was selected to be searched.  *Id.*

Moreover, a user can select to search catalogs stored in separate catalog databases.  In such cases, the selected catalogs would not be concatenated to be searched.  By definition, catalogs stored in separate databases cannot be concatenated.  Dr. Shamos proves this point.  He alleges that catalogs in each database must be *copied* so that they reside on the same computer "before concatenation becomes possible."  Shamos Dec., ¶ 71.  Importantly, the patent specification never discloses such a copying step.

Additionally, according to Dr. Weaver, assuming a user did wish to search multiple product catalogs, a person of ordinary skill would not understand the claim language to prohibit a user from first selecting to search one product catalog and subsequently selecting to search a second product catalog.  Weaver Dec., ¶ 71.  The patent specification describes such a situation.  Young Dec. Ex. 2, Col. 12:4-29.[17]

Accordingly, for all of these reasons, the language of the claims and the patent specification do not support Defendant's proposed construction requiring the algorithm for performing the functions corresponding to the three "means for searching" claim elements to

---

[17] Moreover, the "concatenating" step proposed by Defendant is inconsistent with the language of claim 6 of the '683 Patent and claim 1 of the '172 Patent.  Claim 6 only requires that the "means for searching" search "for matching items in the database."  There is no selection of one or more product catalogs required to satisfy claim 6.  Nor does claim 1 of the '172 Patent require a selection of catalogs to be searched.  And, as described in the patent specification, a search can be conducted based on entry of one or more of the following criteria: vendor name, vendor number, vendor part (catalog) number, product description, bid price, list price, keyword, page number, quantity, unit and catalog text.  Young Dec. Ex. 2, Col. 5:66-Col. 6:13.  Entry of one or more of these criteria will assist the search engine program in executing its search "for matching items in the database" in accordance with claim 6.  There is no need for a concatenation step in such circumstances.

include a step of concatenating.

### H.     The Patents Disclose Structure For The "Means For Converting Data Relating To A Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source"

Defendant suggests that Dr. Weaver "does not even purport to link" the cross reference table to the converting function, and that instead Dr. Weaver links the cross-reference table to other functions, "demonstrating that the table is not linked to the function of converting.  Def's Resp. at 16.  Defendant is wrong on both counts.

First, Dr. Weaver's declaration includes a detailed description of the portions of the specification that disclose how the cross-reference table is used to perform the converting function.  For example, Dr. Weaver points to the portion of the specification that describes how "if the cross-reference tables provide an item that corresponds to a requisitioned item that is available from another source that item may be substituted for, or replace, the requisitioned item."  Weaver Dec., ¶ 43 (citing Young Dec. Ex. 2, Col 15:60-Col.16:32 and Appendix X).  Defendant's contention that the portions of the specification cited by Dr. Weaver are not sufficiently linked because they do not mention the word "converting" is also of no moment because, as Dr. Weaver has opined, a person of ordinary skill in the art would appreciate from the ample disclosure in the specification that cross-reference tables in the database of the claimed electronic sourcing system perform the claimed function.  *See Intellectual Prop. Dev.,* 336 F.3d at 1319-20 (reversing district court's grant of summary judgment of indefiniteness where one skilled in the art would conclude that the claimed function is performed by the specific devices disclosed in the specification); *Intel Corp.,* 319 F.3d at 1366-67 ("Whether the specification adequately sets forth structure corresponding to the claimed functions must be considered from the perspective of one skilled in the art.").

Second, although Defendant takes Dr. Weaver to task for linking the cross-reference table

to more than one claimed function, Defendant and its expert Dr. Shamos readily acknowledge that "there is no rule against having multiple functions that invoke the same structure or steps." Def's Resp. at 20; *see also* Shamos Dec., ¶ 76 ("nor is there any prohibition against the same software code being included as corresponding structure for more than one means"). In a similar vein, even though Dr. Shamos suggests that "the use of cross-reference tables makes converting unnecessary," Shamos Dec., ¶ 54, Defendant's proposed construction for the term "converting data related to a selected matching item and an associated source to an item and a different source," requires "substituting a catalog entry related to a product with a catalog entry describing the product from a different source *by using matching codes in a cross-reference table* for sourcing and pricing." In short, Defendant's attempt to discredit Dr. Weaver's opinions are undermined by the very claim construction Defendant has proposed.

I.    **Defendant Improperly Imports Limitations Into The Function Of The "Means For Selecting The Product Catalogs To Search" In Order To Generate A Non-Infringement Argument**

Defendant and its expert ignore the numerous embodiments in the specification in which a single product catalog can be selected from the "two or more" product catalogs available in the catalog database of the invention. *See* Weaver Dec., ¶ 53 ("indicating that data input into any field of the requisition form can be used to initiate a search," and "[t]he fields that are filled with data will assist search program 50 in executing its first search *against a specific catalog contained in catalog database 36*."). In addition, the specification discloses a "default" mode in which "[i]f no catalog delimiting information is entered for the item desired to be requisitioned, interface 60 would be *set up to search only the Fisher catalog or*, alternatively, to search all catalogs in catalog database 36." *Id.* Indeed, Appendix VII discloses that a user can "select" a single catalog to search by inputting a "vendor name" in a field provided. Weaver Dec., ¶53.

In an attempt to rebut this compelling intrinsic evidence, Defendant and its expert create a strawman argument that searching a "single catalog" was in the prior art and therefore the purpose of the invention was apparently to "select two or more catalogs" to search from the two or more catalogs available in the database.  This logic is flawed.

Certainly, one novel aspect of the invention was to create an electronic sourcing system that included multiple catalogs.  As the specification makes clear,

> Computer systems that are capable of searching databases containing *a product catalog of a particular vendor*, for example, on CD-ROM, are also known.  Such systems can search for user requested information about products and create orders which the user can save, print or, in some cases, facsimile directly to a vendor.  The known computer systems for searching vendor catalogs are limited in that *only one such vendor catalog is accessible to a user at any given time*….they cannot source items to be requisitioned from a database containing *multiple catalogs* or …create a purchase order or orders including the items located from that sourcing operation.

> Thus, … [i]t would also be desirable to provide an electronic sourcing system that is capable of searching a database containing *at least two vendor product catalogs* for product information.

Young Dec. Ex. 2, Col. 2:3-28 (emphasis added).

Accordingly, it was not the "selection" of *two or more* catalogs that was a novel aspect of the invention, but rather the *multiple catalog* feature.  Dr. Shamos' concession that a vendor search "may" involve several catalogs, plainly concedes that it "may" also include a single vendor catalog.  Shamos Dec., ¶ 62.  The fact that the system is admittedly capable of performing such a function, establishes beyond peradventure that "selecting the product catalogs to search" when only "two" catalogs are required by the claim should be construed to cover the

selection of only one product catalog to search "from among" the "at least two product catalogs" recited in the claim.  Weaver Dec., ¶52.[18]

J.    **Defendant's Construction For "Means For Building A Requisition" Includes Unnecessary And Redundant Structure That Has Already Been Performed By The "Means For Searching"**

According to Defendant, Dr. Weaver's opinion that the "means for building a requisition" function should not include steps that are performed by the "means for searching for matching items among the selected product catalogs," is flawed, as an entirely new search may be conducted to "build the requisition." Def's Resp. at 20.  Dr. Shamos, of course, embraces this position in his declaration.  He argues that "the requisition is not built from matching items, but is built using *data* relating to the matching items." Shamos Dec., ¶ 74 (original emphasis). Accordingly, he asserts Dr. Weaver has not "faithfully" quoted the claims.

Of course, the express language of the claim indicates that the "data" "relat[es]" to "selected matching items," which finds its antecedent basis in the immediately prior means-plus-function element.  It is difficult to understand how one could use data relating to such selected "matching items" if a search for such items had not already been conducted.  And while Dr. Shamos maintains that there is "no claimed connection or interaction between these two means elements," Shamos Dec., ¶ 75, the fact that they recite identical language: "matching items," indicates their necessary interrelationship.  Indeed, it is black letter law that similar terms utilized within the claims of a patent — indeed, in this case, the very same claim — should be construed similarly.  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Therefore,

---

[18] Of course, Defendant's and its expert's arguments ignore as inconvenient the fact that one jurist in this district has already construed this claim element to "contemplate a system through which a user could select just one catalog to search from among the two or more that are available."  Young Dec. Ex. 19 at 12.

the use of the common claim term "matching items" confirms the interrelatedness of these two elements.

Thus, a requirement that the "means for building a requisition" should once again include the steps of "initiating a search, displaying a hit list, selecting items, and generating an order list," would be redundant and improper.  Indeed, Defendant's argument disregards its mantra that the structure must be linked to the claimed function.  The function of "building a requisition using data relating to selected matching items and their associated source(s)" is described in the specification as being performed by the requisition/purchasing program 40 or 240.  Nowhere in the specification is the requisition/purchasing program linked to performing the steps of "initiating a search for matching items," "displaying via a catalog search program a hit list (47) of search results," "selecting one or more items to be requisitioned" and "generating an order list."  Instead, the specification expressly links these process steps to the catalog search program. Weaver Dec., ¶¶ 76-79.

## III.   CONCLUSION

For the additional reasons set forth above, *e*Plus respectfully requests that the Court adopt its proposed claim constructions.

29

Respectfully submitted,


Date:  March 29, 2010                     /s/ David M. Young
                                          Jennifer A. Albert (*admitted pro hac vice*)
                                          Scott L. Robertson (*admitted pro hac vice*)
                                          David M. Young (VSB #35997)
                                          **GOODWIN PROCTER LLP**
                                          901 New York Avenue, N.W.
                                          Washington, DC 20001
                                          Telephone:  (202) 346-4000
                                          Facsimile:  (202) 346-4444
                                          jalbert@goodwinprocter.com
                                          srobertson@goodwinprocter.com
                                          dyoung@goodwinprocter.com

                                          Craig T. Merritt (VSB #20281)
                                          Henry I. Willett, III (VSB #44655)
                                          **CHRISTIAN & BARTON, L.L.P.**
                                          909 East Main Street, Suite 1200
                                          Richmond, VA 23219
                                          Telephone:  (804) 697-4100
                                          Facsimile:  (804) 697-4112
                                          cmerritt@cblaw.com
                                          hwillett@cblaw.com

                                          Attorneys for Plaintiff, *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th of March, 2010, I will electronically file the foregoing

PLAINTIFF EPLUS INC.'S RESPONSE TO DEFENDANT'S EXPERT DECLARATION with

the Clerk of Court using the CM/ECF system which will then send a notification of such filing

(NEF) via email to the following:

Daniel W. McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
Lawsonservice@merchantgould.com

Robert A. Angle (VSB# 37691)
Dabney J. Carr, IV (VSB #28679)
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA  23218-1122
Telephone:  (804) 697-1238
Facsimile:  (804) 698-5119
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

/s/ _____
David M. Young (VSB #35997)
Counsel for Plaintiff ePlus Inc.
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
Email: DYoung@goodwinprocter.com