1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2               RICHMOND DIVISION

3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    :
4    ePLUS, INC.,                   :
                                    :
5                    Plaintiff,     :
     v.                             :  Civil Action
6                                   :  No. 3:09CV620
    LAWSON SOFTWARE, INC.,          :
7                                   :  March 26, 2010
                     Defendant.     :
8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

10

11        COMPLETE TRANSCRIPT OF **CONFERENCE CALL**
           BEFORE THE HONORABLE ROBERT E. PAYNE
12              UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES: (All via telephone)

16   Scott L. Robertson, Esq.
     GOODWIN PROCTER
17   901 New York Avenue, NW
     Washington, D.C.   20001
18
     Craig T. Merritt, Esq.
19   Henry I. Willett, III, Esq.
     CHRISTIAN & BARTON
20   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095
21
             Counsel for the plaintiff ePlus
22

23

24            DIANE J. DAFFRON, RPR
             OFFICIAL COURT REPORTER
             UNITED STATES DISTRICT COURT
25

1     APPEARANCES:   (Continuing)

2     Daniel W. McDonald, Esq.
      Joshua P. Graham, Esq.
3     MERCHANT & GOULD
      3200 IDS Center
4     80 South Eighth Street
      Minneapolis, MN   55402-2215
5
      Dabney J. Carr, IV, Esq.
6     TROUTMAN SANDERS
      Troutman Sanders Building
7     1001 Haxall Point
      P.O. Box 1122
8     Richmond, VA   23218-1122

9             Counsel for Lawson Software

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              (The proceedings in this matter commenced at
 2   10:50 a.m.)
 3              THE COURT:  Hello.
 4              UNIDENTIFIED SPEAKER:  Hello, Judge Payne.
 5              THE COURT:  All right.  This is ePlus, Inc.
 6   against Lawson Software, Civil No. 3:09CV620.
 7              Let me have a roll call.  Counsel for the
 8   plaintiffs start, and every time you talk, give your
 9   name.
10              MR. MERRITT:  Craig Merritt and Henry Willett
11   with Christian and Barton for ePlus.
12              MR. ROBERTSON:  Scott Robertson with Goodwin
13   Procter for ePlus.
14              MR. CARR:  Dabney Carr with Troutman Sanders
15   for Lawson Software.
16              MR. McDONALD:  Daniel McDonald and Josh
17   Graham for Lawson Software, Your Honor.
18              THE COURT:  All right.  We have a motion to
19   compel that's been filed by Lawson.
20              MR. McDONALD:  Yes, Your Honor.  This is Dan
21   McDonald speaking.  It has been fully briefed.  So
22   maybe I'll start by asking if the Court has any
23   questions to start with?
24              THE COURT:  Yes.  The question I have is why
25   can't you-all get this straightened out?  I don't
```

4

1  understand the difficulty here.  This nonsense,

2  Mr. Robertson, about who's got the burden of proof is

3  irrelevant to how well you answered discovery.  And I

4  don't think we need to spend any time on that.

5         MR. McDONALD:  We agree.  We think we've

6  given them a lot of detail.  They know exactly what

7  we're asking.  We think we should get an answer very

8  soon.

9         UNIDENTIFIED SPEAKER:  Well, if I can address

10  some of the problems that I perceive.

11         THE COURT:  Give your name, please.

12         MR. ROBERTSON:  This is Scott Robertson.  I'm

13  sorry, sir.

14         Well, first, Judge, you may recall when we

15  had our pretrial conference, the Court pushed on ePlus

16  to narrow the number of claims that it was going to be

17  asserting in the case, and at the same time it pushed

18  on Lawson to narrow the number of references.  And at

19  the time I'm referring to the November 13 transcript.

20  It's at page 33 and 34.  Counsel for Lawson indicated

21  that it was going to narrow the number of references,

22  and it said, "If the jury and judge don't buy prior

23  art one through eight, I'm pretty sure they won't buy

24  number nine.  I'll figure it out by Monday and have

25  the number nine or ten."

1          And then counsel represented that when the
2     Court pressed, "Well, when are you going to do it?"
3     He said, "Next week is reasonable.  I think we'll
4     basically stick with what we've done."

5          Sometime later in December we got invalidity
6     contentions that were under the Court's scheduling
7     order at the time.  It wasn't signed, but the parties
8     were adhering to it as if the order had been signed.
9     The order actually required that the defendant do a
10    complete and detailed explanation of what it alleges
11    that each listed prior art reference shows on a
12    claim-by-claim form, element-by-element basis, and how
13    the prior art invalidates the claim asserted by the
14    plaintiff.

15         What I have now, Your Honor, and if you will
16    just refer to perhaps page 4 of the motion, the
17    memorandum in support, interrogatory 19 now starts to
18    expand where it's supposed to be 7, 8 or 9 references,
19    it's something like 28 references.  And then if you go
20    back on to page 5 and 6, I think there's now some 36
21    combinations that they are alleging.  And the
22    allegations include things like the SABRE system or
23    the P.O. Writer system.  I have no idea what they mean
24    when they're talking about "a system" or what theory
25    they are proceeding under when they put together these

1    claim charts.

2         For example, Your Honor, as Your Honor well

3    knows, Section 102 anticipation and Section 103

4    obviousness are two very separate inquiries under the

5    law and have different approaches.  Within Section

6    102, for instance, anticipation, for example, you can

7    proceed under printed publication theory, which

8    requires that all of the claimed elements be in a

9    single printed publication prior art reference, an on

10   sale bar, a prior public use, a patent, for example.

11   But when you do that and what the Court's order

12   required is if they are going to do it on a

13   claim-by-claim element basis, they should explain

14   exactly where it is and what the combination is.

15        If I can just give you one of my poster

16   children, for example, Your Honor.  I'm looking at

17   their claim charts, and this was with respect to just

18   one claim element.  It had nine separate references,

19   and within each nine, I was going to give you an

20   example, they say, The SABRE system is an electronic

21   sourcing system.  SABRE renders Claim 1 obvious when

22   combined with either the Fisher RIMS system, U.S.

23   Patent No. 5,694,551, the J-CON system, the IBM 2

24   system, or apparently all of the above.  And that's

25   just one out of nine separate references.

1           If you look at the permutations alone, Your

2    Honor, we're talking literally tens of thousands of

3    different permutations where I'm supposed to figure

4    out what they mean by a so-called system, what they

5    are specifically referencing it to.  Are they

6    intending on bringing third party witnesses to enhance

7    and embellish on what the system is?  I've been asking

8    that for months because I want to depose any third

9    parties, but they have never told me.

10          When they lump something together and say

11   then it renders it invalid under 102/103, and then

12   have a laundry list of about nine separate references,

13   what am I to infer from that?

14          THE COURT:  What you're supposed to do is

15   object that they haven't complied with the Court order

16   and tell them that they haven't.  And then if they

17   don't comply, bring it to the Court for decision on

18   that front instead of arguing about it.

19          Look, you, Mr. McDonald, have gone hog wild

20   and crazy with these references, and they are

21   inadequate.  They just are.  I've never seen any prior

22   art references, alleged invalidity references, as

23   crazy as this.

24          You're just going to have to pick --

25          MR. McDONALD:  Well, Your Honor --

8

1          THE COURT:  Wait a minute, Mr. McDonald.  You

2     told me you were going to have seven or eight, and I

3     want you to do them like I said; claim-by-claim,

4     element-by-element.  What is it that in the prior art

5     invalidates it?  And then you take the page of the

6     prior art, and not only do you write it out, you

7     highlight it, and you hand it to them.

8          They don't have to answer anything until you

9     start doing it right and until you cut down your

10    references and make them specific.  It's not

11    sufficient to tell somebody some saber system or some

12    whatever it is.  I know that you said that you all

13    gave them the page number, but that's not enough.

14    That doesn't do what I asked you to do.  You-all have

15    complicated the case unnecessarily.

16          MR. McDONALD:  Beyond the page number, I put

17    the tabs in, Your Honor, which is more specific than

18    page number.  We have column and line references

19    specifically to the tab.

20          THE COURT:  But you didn't do it on a

21    claim-by-claim, element-by-element basis.

22          MR. McDONALD:  That's Exhibit A, Your Honor,

23    to what we provided to you.  It's a copy of our

24    invalidity contentions.  And that's exactly what we

25    did.  We have examples in there.  We provided excerpts

1    of the 117 pages of charts where we did go

2    element-by-element, claim-by-claim, and page and

3    column, and line number by line number.

4          Yes, there are some references to saber

5    system.  That's true.  But what we have asked for in

6    this motion --

7          THE COURT:  Well, you're not going to get

8    anything else.  Okay?  Until you straighten yourself

9    out, you're not getting anything else.  That's the end

10   of it.  I'm denying your motion because I think

11   you-all have gone off the deep end, and you-all have

12   not gotten this thing organized the way it needs to

13   get organized.

14         You came here and told me you were going to

15   do a very few number of prior art references, and you

16   come up with this general references, and I don't

17   think you've done it right.

18         Now, the next issue.

19         MR. ROBERTSON:  This is Scott Robinson.  They

20   are insisting that we apply our infringement analysis

21   to a proposed claim construction.  And they haven't

22   done that with respect to the invalidity issues.  I

23   don't care if they use their claim construction or our

24   claim construction or both, but I think it should be

25   references --

1          THE COURT:  Wait a minute.  I don't even know

2     what you're talking about now.  We're going on to the

3     next issue.  I've already dealt with their motion to

4     compel.  It's denied until they can straighten things

5     out.

6          The next one is financial information.

7     What's the deal on that?  What's the problem on that?

8          MR. McDONALD:  Your Honor, we have given them

9     a letter responsive as we continue to talk about this

10    issue just this morning, and we promised to supplement

11    by April 15, which I think is the date they asked for.

12    So I think that one is resolved.

13         THE COURT:  All right.  I don't know what

14    you're doing, but the bottom line is you're supposed

15    to give them detailed financial information so they

16    can figure out what you have made and what you have

17    done with the infringing products.

18         MR. McDONALD:  That's right, Your Honor.  We

19    don't have any objections to that.  It's just a matter

20    of knowing exactly what they want so we can get it to

21    them.  We now understand that and we're going to get

22    it to them.

23         MR. ROBERTSON:  Your Honor, that letter came

24    in at 10:20 this morning, and I haven't even had an

25    opportunity to look at it, but I will take

1    Mr. McDonald at his word and look at it.  We've been

2    asking for this for months.  We have expert reports

3    coming up.  We'd just like to get this done and have

4    the financial information we need for it.  So thank

5    you.

6              I think, given Mr. McDonald's

7    representations, there's some inconsistencies in some

8    of the charts they provided.  And I understand they

9    are trying to run that to ground.

10             Mr. McDonald, was that part of your letter to

11   me this morning?

12             MR. McDONALD:  Yes.  That's really -- almost

13   all of the letter is explaining to you where it looked

14   like something was inconsistent, explains and

15   reconciles the data that you have.

16             MR. ROBERTSON:  All right.  Well, I'll take a

17   look at that, and hopefully that resolves the matters,

18   and we can move forward.

19             THE COURT:  Well, you-all better resolve it

20   and move forward.

21             What's this Lawson's responses to

22   interrogatories 21 through 23?  What's this about?

23             MR. ROBERTSON:  Your Honor, the problem we

24   have is they were answered pursuant to Rule 33D.  I

25   think the Court made clear at I believe it was at the

1    second pretrial conference we had that if you were

2    going to answer with Rule 33(d), that the burden was

3    not the same for the party receiving the documents as

4    to what the party that was the custodian of the

5    documents.

6          We think some of these interrogatories call

7    for a clear narrative response.  For example,

8    interrogatory No. 22 asks for identification of

9    essentially suppliers of catalog content.  One of

10   Lawson's defenses has been, and I've heard this

11   several times, is "We really don't do catalogs.

12   Sometimes we hire subcontractors who might provide

13   catalog services or sometimes our customers actually

14   load the catalogs.  So we're really not doing that."

15         We don't believe that's a defense, but we

16   think we're entitled to know, you know, if you do have

17   subcontractors, like they represented Sciquest who was

18   a defendant in this case was one, we want to know who

19   they are.

20         Now, after giving us just Rule 33(d) base

21   ranges, we've look at the documents.  Many of them are

22   nonresponsive.  It should be easy for them since they

23   made this representative several times to simply

24   identify these people for us.

25         THE COURT:  Mr. McDonald, interrogatory 22,

1    what about that?

2          MR. McDONALD:   Interrogatory 22 doesn't say

3    anything about catalogs, subcontractors.   Your Honor,

4    it says, Identify all online supplier sites, eCommerce

5    hubs, digital marketplaces, supplier networks, etc.

6          MR. ROBERTSON:   Sorry, Mr. McDonald.   You

7    finished.   It said supplier catalogs and supplier

8    portals ever accessed by integrated Web or linked to

9    or used in connection with Lawson's sourcing and

10   procurement system.

11         So all these things you know are sources of

12   catalog content.   Every single one.   eCommerce hubs,

13   your punchout site, and catalog suppliers.   And you

14   stop reading right before you got to supplier catalogs

15   and supplier portals.

16         THE COURT:   Mr. Robertson, it would be a good

17   idea to let him finish before you interrupt.

18         MR. ROBERTSON:   Okay.   Thank you, sir.

19         MR. McDONALD:   This is Mr. McDonald speaking

20   again, Your Honor.

21         Mr. Robertson did go on to read the rest of

22   the interrogatory, and it doesn't say anything about

23   subcontractors.   And this is part of the problem, I

24   think, with how this was going to rush to the Court at

25   this point.   We're not sure what they're asking for.

1    He skipped over interrogatory No. 21.  It's several

2    lines, and I'm not going to read the whole thing, and

3    if Mr. Robertson wants to add anything, fine.  But it

4    starts off, "Identify all agreements, contracts,

5    requests for proposals, responses to requests for

6    proposals."

7         It goes on to identify a category of

8    documents.  So that's what we've provided.  This one

9    was a very appropriate one for a Rule 33(d) request

10   because they are asking for documents, agreements,

11   contracts, etc.

12        He skips over that one.  So now we have this

13   22, Identify the supplier sites and things like that.

14   Well, now he's saying he wants to know about who did

15   subcontracting for us.  And that's an issue I think we

16   can work out and give them a narrative answer.  I

17   don't think we have anybody like that.  That's a

18   specific question that's not in interrogatory No. 22.

19        If we just sat down and talked about it, I

20   think we can give them what he's looking for.  But

21   what he's talking about on the phone is not what

22   interrogatory 22 says.

23        MR. ROBERTSON:  This is Mr. Robertson.

24        Interrogatory No. 22 says identify any of

25   these people.  Interrogatory No. 23 says, Please

1   provide was the contracts you have with these people.

2   Statements of work, agreements, any licenses, that

3   kind of thing.  So 22 was simply saying, Tell us who

4   they are.  And 23 says, Give us the contracts and tell

5   us what contracts you have with them.

6          THE COURT:  You're not objecting to No. 21

7   then?

8          MR. McDONALD:  Mr. Robertson, I think, is

9   getting the numbers screwed up.  This is Mr. McDonald

10   speaking.  No 21 is the one about identifying

11   agreements.

12          THE COURT:  Wait just a minute.  He said this

13   letter says interrogatories 21, 22 and 23.

14          MR. McDONALD:  Right.  21 is about

15   identifying agreements, and it doesn't relate to

16   supplier sites or subcontractors.  This relates to --

17          THE COURT:  My question is:  Do you really

18   object?  Do you have a problem with that one,

19   Mr. Robertson?

20          MR. McDONALD:  Oh, no.  That's not the issue.

21          THE COURT:  No, no.

22          A VOICE:  He's asking Scott.

23          MR. McDONALD:  Oh, I'm sorry.

24          THE COURT:  Mr. Robertson, wait.  All of you

25   slow down.  You-all are all adrenalized here.

1          Is there still any issue on interrogatory

2    No. 21 response by Lawson?

3          MR. McDONALD:  Are you asking Robertson?

4          THE COURT:  Robertson.  Yes or no?

5          MR. ROBERTSON:  I need a supplementation,

6    Your Honor, because the last time it was asked it was

7    October of '09, and there have been thousands of pages

8    of documents that have since come in.

9          If they are responsive and he wants to rely

10   on Rule 33(d), I would just like an update identifying

11   these additional agreements.

12         THE COURT:  Stop.  Do you have any problem

13   with that, Mr. McDonald?

14         MR. McDONALD:  No, Your Honor.  We thought we

15   had already agreed to do that.

16         THE COURT:  Done.  Okay.

17         Now, 22 and 23, anything else, Mr. Robertson?

18         MR. ROBERTSON:  We'd just like them to

19   identify these suppliers of catalog content, wherever

20   it comes from, and then if they have any agreements

21   with them, which is No. 23.

22         THE COURT:  All right.  And that can be done

23   and should be done in the textual answer, not by just

24   throwing a bunch of documents on the table.

25         Interrogatory No. 24, Lawson's response.

1  Have you all gotten that straightened out now or not,

2  Mr. Robertson?

3         MR. ROBERTSON:  I don't believe we have, Your

4  Honor.

5         THE COURT:  What is it?

6         MR. ROBERTSON:  We've asked for them to

7  identify an implementation of these accused software

8  modules.  As you may recall, Your Honor, they grouped

9  together.  There's a requisition module and a purchase

10  order module.

11         Lawson is contending that we have to prove

12  infringement on a customer-by-customer basis and that

13  the software that they have licensed or maintained is

14  actual, quote, implemented.

15         We think this interrogatory directly

16  addresses that issue and they believe that it doesn't

17  fairly address the issue.  They have asked us to serve

18  another interrogatory.  We think it's covered by this

19  interrogatory.  If it's going to be the basis of their

20  defense, we think that they should provide us the

21  information as to which software modules on a

22  customer-by-customer basis it actually implemented.

23         I think a new interrogatory is just going to

24  further delay things when we have deadlines coming up.

25         THE COURT:  Mr. McDonald.

1          MR. McDONALD:   Interrogatory No. 24 basically

2    asks for three things:   To identify

3    customer-by-customer which software modules that

4    particular customer got.   We gave them that.

5          Second, it asked for the dates and periods of

6    time during which the systems were sold or licensed to

7    those customers.   We gave them the dates.

8          Third, it asked for the residue attributable

9    to each customer.   We gave them that.   And when

10   Mr. Robertson says he wants to know about

11   implementation, I just don't understand what he's

12   asking for, and we just need clarification on what

13   else he wants that we haven't given him.

14         THE COURT:   I don't have the interrogatory in

15   front of me.   What does it read?

16         MR. ROBERTSON:   Well, Your Honor, again, Mr.

17   McDonald paraphrased.   It does ask for the accused

18   module.

19         THE COURT:   Wait a minute.   Read it to me.

20         MR. ROBERTSON:   Identify, on a

21   customer-by-customer basis for each Lawson customer,

22   from May 2003 until the present, the accused period,

23   the modules of Lawson's S3 Supply Chain Management

24   Suite and/or M3 Supply Chain Management Suite, those

25   are the accused products, Your Honor, which Lawson has

1   made, used, sold, offered for sale, imported,

2   licensed, implemented, maintained, and/or serviced

3   for/to each such customer, and/or which modules such

4   customers used, purchased, licensed, implemented or

5   had implemented, maintained or had maintained, or

6   serviced or had serviced.

7           We think it clearly covers implementation.

8   I've been at depositions, Your Honor, where they are

9   claiming simply because the software was sold and

10  maintained by them, but it's not implemented, that

11  that's not an infringing sale.  We disagree on that,

12  but if that's the basis of a defense that a customer

13  who acquires it may not implement some aspect of it,

14  we'd like to know on a customer-by-customer basis what

15  that is.

16          According to them, it impacts our

17  infringement case.  Obviously, if it impacts that, it

18  impacts our damages case.  If they are no longer

19  maintaining that implementation is necessary, then I

20  just ask -- that they don't need to provide it.  Then

21  maybe we'll just ask for a ruling that that wouldn't

22  be a defense at trial.

23          THE COURT:  Well, if they don't provide it,

24  they can't raise it at trial anyway.

25          Sometimes, you know, you can't get all the

1    rulings ahead of time.  You kind of have to wait and

2    see what happens in the course of the case.  And if

3    somebody doesn't give you the information in discovery

4    that you ask for that's pertinent to their defense and

5    they want to raise it, you say, I want to move the

6    strike the defense because they said we weren't

7    entitled to this and they didn't give it to us.  Then

8    wham, the door is shut on it.  That's part of

9    practicing law is knowing how to do that stuff.

10           Is implementation by the customer any longer

11   asserted, Mr. McDonald, as necessary before

12   infringement can occur?

13           MR. McDONALD:  I'm not sure what the word

14   "implementation" means here, Your Honor.  What I think

15   he may be talking about is when specific situations

16   have come up, for example, where third party customers

17   that ePlus deposed either said they didn't implement

18   certain modules or features that were in the product.

19   That might be one category he might be talking about.

20           Another one has to do with when they load up

21   the data, where do they get it from?  Does Lawson load

22   the data up for them or not?  If that's what he means

23   by implementation, those are certainly still relevant

24   issues, Your Honor, but the word "implementation" just

25   isn't very clear to me in terms of what exactly that

1  Mr. Robertson is asking us to do.

2          THE COURT:  When were these interrogatories

3  filed, Mr. Robertson?

4          MR. ROBERTSON:  I believe -- I think it

5  was -- I'm not sure, Your Honor.  I think it was

6  October of 2009.  It's been several months.

7          THE COURT:  Well, it's too late to be asking

8  that.  If you didn't understand that word, you should

9  have asked about that back a long time ago.  Answer

10  the interrogatory.

11          I, frankly, don't understand how it is a

12  defense to infringement to say you sold Payne

13  something, but Payne didn't use all of it.  If you

14  sold it to me, that's an infringement, it seems to me.

15  So I don't really understand the issue, but you-all

16  know enough and you can use the dictionaries to get

17  your definitions.  Answer it.

18          All right.  That takes care of everything

19  that you all have got pending right know, doesn't it?

20          MR. ROBERTSON:  Well, Your Honor, we had one

21  issue with respect to non-infringement contentions,

22  but I think we can work that out with Lawson.

23          THE COURT:  Good.  That will be good.

24          All right.  Now, I don't know if there's

25  enough time in my lifetime and yours to try a case

1   with 28 prior art references that are described as

2   generally as these are and with 30-something different

3   combinations that are as vague as these are.

4          So you-all are going to have to get yourself

5   straight there or you're going to end up with no prior

6   art defense.  That's what's going to happen to you.

7          So I suggest you work out a way to get that

8   sorted out and focus on what's really at issue, get it

9   on the table, and get it straightened out.  And I

10  would suggest that, if I were you, I'd do that

11  immediately because you've got expert reports coming

12  up, and your time is running on you-all.

13         Mr. Robertson, have you given any more

14  thought to narrowing your claims further now that

15  discovery has been underway?

16         MR. ROBERTSON:  I'll certainly give it some

17  thought, Your Honor.  I think many of the elements are

18  similar in the different claims.  So I've never had a

19  problem putting on an infringement case before in less

20  than two and a half days.

21         Quite frankly, Judge, with the Markman ruling

22  still out there, it's hard for me to make an informed

23  decision.  I'm not faulting the Court.  Obviously, the

24  parties are working diligently to try to get you the

25  information we need, but that's where I find myself,

1   sir.

2          THE COURT:  That briefing is going to be

3   finished or has it been finished now?

4          MR. ROBERTSON:  It will be finished on

5   Monday, Your Honor.

6          THE COURT:  Monday.  All right.  Thank you.

7          MR. ROBERTSON:  Thank you, Your Honor.

8          THE COURT:  You-all take care.  Bye.

9

10          (The proceedings were adjourned at 11:16

11   a.m.)

12          I, Diane J. Daffron, certify that the

13   foregoing is a true and accurate transcription of my

14   stenographic notes.

15

16                    /s/                    3/30/10
    _____   _____

17      DIANE J. DAFFRON, RPR, CCR        DATE

18

19

20

21

22

23

24

25