

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ePLUS, INC.

      Plaintiff,

v.                          Civil No. 3:09cv620

LAWSON SOFTWARE, INC.,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's MOTION TO STAY PROCEEDINGS IN LIGHT OF PENDING REEXAMINATIONS OF PATENTS-IN-SUIT (Docket No. 32). For the reasons set forth below, the MOTION TO STAY PROCEEDINGS IN LIGHT OF PENDING REEXAMINATIONS OF PATENTS-IN-SUIT (Docket No. 32) will be denied.

## BACKGROUND

On May 19, 2009, the Plaintiff, ePlus, Inc. ("ePlus") filed suit against the Defendants, Perfect Commerce, Inc. ("Perfect Commerce"), Sciquest, Inc. ("Sciquest"), Lawson Software, Inc. ("Lawson"), and Verian Technologies, Inc ("Verian"), alleging infringement of United States Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent"), and 6,505,172 (the "'172 Patent) (collectively the "Patents-in-Suit") (Compl. at ¶ 2.) The Patents-in-

Suit relate to electronic sourcing systems, which allow prospective buyers to locate items to purchase from multiple electronic catalogs and build a requisition for the items. (Pl. Br. at 6.) All of the Patents-in-Suit share a common file history, identical figures, and identical text. (Def. Mem. at 2.)

On July 14, 2009 Perfect Commerce, Sciquest, and Lawson filed this motion to stay. Now, Lawson is the only remaining Defendant in this action. Both Lawson and ePlus have filed supplemental briefs on the motion and it is ripe for decision. The following facts are pertinent to the motion.

In 2006, ePlus filed an action involving the Patents-in-Suit against SAP America, Inc. and SAP AG (collectively "SAP"). (Def. Mem. at 1.) After the trial ended in a hung jury, SAP filed for an *ex parte* reexamination of the '683 Patent in the United States Patent and Trademark Office (the "PTO").[1] (Id.) The PTO granted reexamination and rejected 20 claims as being anticipated by four independent items of prior art. (Id.) In March 2009, ePlus appealed the PTO's final rejection to the Board of Patent Appeals and Interferences ("BPAI"). (Id.) The appeal was pending

---

[1] Claims 26 to 45 are the subject of the reexamination. Claims 1 to 25 of the '683 Patent are not the subject of any reexamination proceedings. (Pl. Br. at 8.)

when ePlus filed the instant action and still is pending. (Id.)

Additionally, in July 2009, Lawson filed an *inter partes* reexamination request,[2] asking the PTO to reexamine the claims of the '172 Patent in view of prior art, some of which is the same prior art already found to anticipate the '683 Patent claims.  On October 23, 2009, the request for reexamination was granted and the PTO rejected all claims of the '172 Patent.  (Def. Supp. Mem. at 2.)  Finally, on November 12, 2009, Lawson filed a request for *ex parte* reexamination of all claims of the '516 Patent.  (Id.)

DISCUSSION

I.   The Legal Standard

The power to stay proceedings is incidental to a court's inherent power to control its own docket.  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  In exercising its authority to grant a stay, a court is given wide discretion to "weigh competing interests and maintain an even balance."  Id. at 255; see also Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183-84 (1952).  The Federal Circuit, in applying Landis, described this balance:

---

[2] The '172 Patent, filed on November 29, 1999, is subject to the PTO's rule change allowing for an *inter partes* reexamination.

> In deciding to stay proceedings indefinitely, a
> trial court must first identify a pressing need
> for the stay.  The court must then balance
> interests favoring a stay against interests
> frustrated by the action.  Overarching this
> balance is the court's paramount obligation to
> exercise jurisdiction timely in cases properly
> before it.

Cherokee Nation of Oklahoma v. United States, 124 F.3d
1413, 1416 (Fed. Cir. 1997).

In patent cases, courts have found the following factors particularly relevant to consideration of a stay:

> (1) whether discovery is complete and a trial
> date is scheduled;
>
> (2)  whether a stay would simplify the matters at
> issue;
>
> (3)  whether a stay would unduly prejudice or
> clearly disadvantage the non-moving party.[3]

NTP, Inc. v. T-Mobile, USA, Inc., 2007 WL 3254796, at *2 (E.D. Va. Nov. 2, 2007) (citing NTP, Inc. v. Palm, Inc., No. 3:06-CV-836 (E.D. Va. Mar. 22, 2007)).  Ultimately, the party seeking a stay must make out a "clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255.  If hardship or inequity cannot be shown, a stay is not merited.  Aventis Pharma Deutschland

---

[3] ePlus cites to several other factors, found in Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  However, Hilton dealt with the power of district courts to stay an order pending appeal.  Id.  Those factors, therefore, are inapplicable here.

GMBH v. Lupin Ltd., 403 F. Supp. 2d 484, 489 (E.D. Va. 2005).

Lawson asserts that the Landis standard is inapplicable because it has not been applied to stays pending reexamination, and because reexaminations of patents did not exist when Landis was issued.  (Def. Reply at 4.)  Nonetheless, Landis remains as the guidepost for a district court's to consider when deciding whether to exercise its discretion to grant a stay.  That discretion can be further informed by the factors outlined in T-Mobile and Aventis.

## II.  Factors Relevant to a Stay

### A.  Discovery and Trial Date

ePlus filed its complaint on May 19, 2009, about three years after the initiation of the '683 reexamination.  Now, the parties have completed a substantial amount discovery. Indeed, discovery in this case will be completed by May 18, 2010, which is less than two months away.  Presumably, then, the parties have completed the majority of discovery required in this case.  And, if a stay is granted, this discovery may need to be duplicated years from now when reexamination is complete.  Additionally, the trial in the case has been set for September 2010.  The amount of

discovery completed and the upcoming trial date weigh against a stay in this matter.

## B. Simplifying the Matters at Issue

Lawson argues that the outcome of the reexamination proceedings will greatly assist the Court in evaluating the claims and will simplify the matters at issue for several reasons. First, Lawson asserts that the claims will likely be altered during the reexamination proceedings. For example, Lawson states that all twenty claims of the '683 Patent subject to reexamination have been rejected on four independent grounds, including rejection under 35 U.S.C. § 102. (Def. Mem. at 7.) Thus, argues Lawson, ePlus will likely have to abandon or alter claims during reexamination, which could affect the scope of the claims in this action. Specifically, Lawson asserts that the reexamination may cause ePlus to "continually adapt their defenses to the current version of the claims, re-serve written discovery, and re-take depositions." (Id. at 8.) The implication, of course, of Lawson's argument is that by waiting for the conclusion of the reexamination, the Court need not deal with an ever-changing case, but could instead deal with a defined, and thereby, simplified case.

A stay will further assist the Court, says Lawson, because the prosecution history created during

reexamination will aid the Court in claim construction. ePlus responds that the PTO's claim construction will not assist the Court because the PTO uses a different standard, giving claims their broadest possible reading. See In re Yamamoto, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (stating that claims subject to reexamination are given their "broadest reasonable interpretation consistent with the specification."). Here, the Markman briefing has been completed and the Court has heard oral arguments related to claim construction. Thus, any new prosecution history created during reexamination will not greatly assist the Court.

Finally, Lawson argues that issues may be further simplified if there is an effective invalidation of a patent requiring dismissal of the suit or if the outcome of the reexamination encourages settlement. In support of this proposition, Lawson states that 75% of ex parte and 95% of inter partes reexamination proceedings result in cancelled or amended claims.[4] (Def. Mem. at 4.) Certainly,

---

[4] ePlus disagrees with this statistic and states that only 11% of the claims subject to ex parte reexamination are cancelled. Manbeck Dec. at ¶ 52. And, according to ePlus, there is no reliable rate of cancellation or amendment for claims subject to inter partes reexamination because very few inter partes reexaminations have concluded to date. Manbeck Dec. at ¶ 50.

if any of the claims at issue in this action were cancelled, the issues for litigation would be simplified.

ePlus argues that the reexamination will not greatly assist in narrowing the invalidity issues because the PTO can only consider Section 102 (anticipation) and 103 (obviousness) defenses. (Def. Br. at 19.) The PTO cannot, says ePlus, consider defenses under Section 101 (subject matter), 112 (e.g. indefiniteness), or for incorrect or improper inventorship, or inequitable conduct, all of which have been raised in this action. (Id.) Thus, while some invalidity issues may be simplified during reexamination, reexamination will not necessarily dispose of all the defenses raised in this action.

In summary, staying the action until completion of the reexamination would undoubtedly simplify some of the matters at issue in this action. It cannot, however, dispose of all invalidity defenses, nor is it certain to simplify all of the matters at issue here. Thus, this factor weighs slightly in favor of a stay.

C.    Prejudice to ePlus

Lawson contends that a stay will not cause unfair prejudice to ePlus because the reexamination will occur with "special dispatch" and will not last for an indefinite period. A trial court abuses its discretion when it grants

8

a stay of "indefinite duration in the absence of a pressing need." Cherokee Nation, 124 F.3d at 1416 (citing Landis, 299 U.S. at 255). The average pendency of a reexamination proceeding, according to Lawson, is 24.8 months for an *ex parte* reexamination and 36.1 for an *inter parte* examination. Tautkus Dec., Ex. A at 2; Ex. B at 1. Thus, says Lawson, ePlus will not be required to suspend its claims through a lengthy reexamination process.

In response, ePlus asserts that Lawson's information regarding the time required for reexamination is simply inaccurate. First, ePlus points out that the *ex parte* examination of the '683 Patent has already taken over two years, with no end in sight. (Pl. Br. at 22-23.) ePlus has not yet received a decision from BPAI, and if BPAI's decision is unfavorable to ePlus, ePlus has a statutory right to appeal the decision to the Federal Circuit, which will take additional time. (Id. at 21.) And, ePlus argues, commentators have determined that parties should expect *inter partes* reexaminations to last at least 6.5 years, if taken all the way through the appeal process. See e.g. Bartex Research, LLC v. FedEx Corp., 611 F. Supp. 2d 647, 651 (E.D. Tex. 2009). The fact of the matter is there simply is no deadline for the completion of a reexamination. See Manbeck Dec. at ¶ 41. Thus, ePlus

correctly argues that staying this action for an indefinite period, possibly lasting six years or more, prejudices ePlus and does not serve the efficient administration of justice or the public interest. (Def. Br. at 17.)

ePlus also argues that it is prejudiced by a stay because ePlus and Lawson are direct competitors. See Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant.") On the other hand, Lawson asserts that ePlus is not prejudiced because even if the action is stayed, ePlus can recover damages for any infringement that occurs during the reexamination proceedings, provided the reexamination results in a finding that the patents are valid. See T-Mobile, 2007 WL 3254796, at *3 ("By filing these suits, [the plaintiff] is eligible to recover damages for any infringement of the patents-at-issue that occurs while re-examination is proceeding (provided that the PTO-and the Federal Circuit...conclude that any of the patents-at-issue are valid).") . Thus, while ePlus could lose market share and profits while awaiting completion of the reexamination, it would be able to recover damages for that period if the Patents-in-Suit are deemed valid.

Finally, ePlus asserts that it will be prejudiced by a stay because it may lose its right to injunctive relief if a stay is granted. The '516 Patent and the '172 Patent expire in August 2014 and the '683 Patent expires in February 2017. Based on the often lengthy time periods required for reexamination, it is possible that the Patents-in-Suit, or at least some of them, may expire before a trial in this case. If that is the case, ePlus argues that it would lose its right to injunctive relief afforded to a patent owner under 35 U.S.C. § 283.

Lawson responds that, even if ePlus were successful on its infringement claims, it is unlikely to prevail on an injunction. (Def. Reply at 9.) ePlus has now granted licenses to Ariba, SAP, Perfect Commerce, Sciquest, and Verian. And, says Lawson, it is unlikely that a court will grant an injunction where a patentee has previously granted licenses. See Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc., 579 F. Supp. 2d 554, 560-61 (D. Del. 2008) (denying a request for an injunction against a direct competitor in light of the patentee's "willingness to forego its patent rights for compensation").

The Federal Circuit has held that the grant of a license is only one factor to consider in determining whether an injunction is warranted. Accumed LLC v. Stryker

11

Corp., 551 F.3d 1323, (Fed. Cir. 2008). Thus, it is possible that, in balancing all the pertinent factors, a court could find that an injunction is the appropriate remedy notwithstanding the fact that ePlus previously has granted licenses to the Patents-in-Suit.

Thus, on the whole, ePlus has made a showing that it will be prejudiced by a stay because of both the time it may have to wait to litigate its claims against Lawson and the possibility that it could lose its right to injunctive relief.

### D.   Hardship in Going Forward

Lawson presents very little evidence that it will suffer hardship in going forward. It does argue that it will be required to expend "financial and staffing resources" if the action moves forward. (Def. Reply at 2.) "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005). Thus, the mere fact that this action will go forward is an insufficient reason to warrant a stay.

Lawson also asserts that it will be prejudiced at trial if required to go forward because the Patents-in-Suit will be presumed valid. 35 U.S.C. 282 provides that a

12

"patent shall be presumed valid."  Lawson argues that it will be prejudiced by ePlus' efforts at trial to represent the patents as approved by the PTO when, in actuality, they have been rejected by the PTO.  While this may present hardship, it can certainly be overcome by evidence of non-infringement or invalidity, if such evidence exists. Moreover, the Court can instruct the jury appropriately respecting the effect of the PTO's decision on reexamination.

## III. Balance of Interests

Lawson has not met its burden of showing hardship in being required to go forward with this action.  And on balance, the interests here do not favor a stay.

Certainly, there are reasons which support the grant of a stay.  For example, upon reexamination, it is possible that some of the claims here could be cancelled or amended, thereby streamlining the issues at trial.  And, staying an action until reexamination could provide the Court with the benefit of the PTO's expertise.

However, in this case, numerous considerations outweigh those benefits.  Significantly, the case has already advanced and discovery is almost complete.  A trial date has been set and the Markman process is underway. And, the advanced stage of the Markman proceedings here

13

greatly undercuts Lawson's argument that the prosecution history created during the reexamination proceedings could assist the Court in claim construction.

Additionally, the reality is that the reexamination process is often lengthy. Staying the action until reexamination of the Patents-in-Suit is complete, will subject ePlus to additional profit loss in the future. Additionally, should the Patents-in-Suit expire before reexamination is complete, ePlus loses its right to injunctive relief.

Therefore, on balance, the interests favoring a stay are outweighed by the interest of the parties and the efficient administration of justice in moving forward with the action.

CONCLUSION

For the foregoing reasons, the Defendant's MOTION TO STAY PROCEEDINGS IN LIGHT OF PENDING REEXAMINATIONS OF PATENTS-IN-SUIT (Docket No. 32) is denied.

It is so ORDERED.

                              /s/            _REP_
                    Senior United States District Judge

Richmond, Virginia
Date: March 31, 2010

14