

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ePLUS, INC.

      Plaintiff,

v.                        Civil No. 3:09cv620

LAWSON SOFTWARE, INC.,

      Defendant.

### MEMORANDUM OPINION

This matter is before the Court for claim construction of U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent"), and 6,505,172 (the "'172 Patent") (collectively the "Patents-in-Suit").

### BACKGROUND

The Plaintiff, ePlus Inc. ("ePlus"), asserts 13 claims against the Defendant, Lawson Software, Inc. ("Lawson"), relating to the Patents-in-Suit.[1] ePlus and Lawson are direct competitors in the sale of "electronic sourcing and procurement services and systems." (Pl. Br. at 3.) The systems covered by the Patents-in-Suit automate internal corporate purchasing processes. (Id.) Using those systems, customers may "search for items for sale from multiple selected electronic catalogs,

---

[1] The claims to be asserted are Claims 3, 6, 26, 28 and 29 of the '683 Patent, Claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent, and Claim 1 of the '172 Patent.

view inventory availability information for those items, find related items available from other suppliers, and requisition desired goods or services." (Id. at 4.) The system also generates "electronic purchase orders to each different supplier for approved requisitions." (Id.)

The Patents-in-Suit have been construed in two previous cases in this court. First, Judge Brinkema construed certain terms in the context of summary judgment motions in ePlus, Inc. v. Ariba, Inc., Civil Action No. 1:04cv612 (E.D. Va. 2005). Additionally, Judge Spencer construed some of the claim terms at issue in ePlus, Inc. v. SAP America, Inc., Civil Action No. 3:05cv281 (E.D. Va. 2006), but that claim construction opinion was later vacated.

DISCUSSION

## I. Legal Standard

The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The construction or interpretation of a claim is a question of law. Id. When undertaking claim construction a court "need not always purge every shred of ambiguity." Acumed LLC v. Stryker Corp., 483 F.3d 800, 806 (Fed. Cir. 2007). However, a term should be

2

construed by the Court when there is an actual dispute as to the proper scope of the claims.    O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Generally, the words of the claim are to be given their ordinary and customary meaning, i.e. the meaning that the term would have "to a person of ordinary skill in the art in question at the time of the invention," read in the context of the entire patent, including the specification. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).    "[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history...Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); see also  Phillips, 415 F.3d at 1314 (stating that courts look to the words of the claims, the specification and the prosecution history to understand the meaning of a claim term).    Of these, the words of the claim should be the construing court's controlling focus. See Phillips, 415 F.3d at 1314; see also Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998).

If the intrinsic evidence is insufficient to resolve ambiguity in the meaning of claims, the court may rely upon extrinsic evidence to understand the technology and to construe the claims. Phillips, 415 F.3d at 1317; see also Vitronics, 90 F.3d at 1584. "Extrinsic evidence is that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." Vitronics, 90 F.3d at 1584. Extrinsic evidence, however, may not be used to contradict the claim language or the meanings established in the specification. Phillips, 415 F.3d at 1318-19;   Vitronics, 90 F.3d at 1584.

## II.    Claim Construction

The terms tendered for construction are:

(1) "Subset" which appears in Claims 1, 2, and 29 of the '516 Patent.

(2) "Protocol" which appears in Claims 1, 2, 6 and 29 of the '516 Patent.

(3) "Catalog/product catalog" which appears in Claims 3, 26, 28 and 29 of the '683 Patent and Claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent.

(4) "Order list" which appears in Claim 1 of the '172 Patent.

(5) "Matching items" which appears in Claims 3, 6, 26, 28 and 29 of the '683 Patent and Claim 1 of the '172 Patent.

(6) "Selected matching items" which appears in Claims 3, 6, 26, 28 and 29 of the '683 Patent and Claim 1 of the '172 Patent.

(7)    "Searching for matching items among the selected product catalogs" which appears in Claims 26, 28 and 29 of the '683 Patent.

(8)    "Cross-reference table" which appears in Claims 21, 22 and 29 of the '516 Patent.

(9)   "Electronic sourcing system" which appears in Claims 3 and 6 of the '683 Patent, Claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent, and Claim 1 of the '172 Patent.

(10)   "Converting data relating to a selected matching item and an associated source to data relating to an item and a different source" which appears in Claims 28 and 29 of the '683 Patent.

(11)   "A multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria" which appears in Claim 21 of the '516 Patent.

(12)   "Means for selecting the product catalogs to search" which appears in Claim 3 of '683 Patent.

(13)   "Means for searching for matching items among the selected product catalogs" which appears in Claim 3 of the '683 Patent.

(14)   "Means for searching for matching items in the database" which appears in Claim 6 of the '683 Patent.

(15)   "Means for building a requisition using data relating to selected matching items and their associated source(s)" which appears in Claims 3 and 6 of the '683 Patent.

(16)   "Means for processing the requisition to generate one or more purchase orders" which appears in Claims 3 and 6 of the '683 Patent.

(17)   "Means for converting data relating to a selected matching item and an associated source to data

relating to an item and a different source" which
appears in Claims 3 and 6 of the '683 Patent.

(18) "Means for entering product information that at least
partially describes at least one desired item" which
appears in Claim 1 of the '172 Patent.

(19) "Means for searching for matching items that match the
entered product information in the selected portions
of the database" which appears in Claim 1 of the '172
Patent.

(20) "Means for generating an order list that includes at
least one matching item selected by said means for
searching" which appears in Claim 1 of the '172
Patent.

(21) "Means for building a requisition that uses data
obtained from said database relating to selected
matching items on said order list" which appears in
Claim 1 of the '172 Patent.

(22) "Means for processing said requisition to generate
purchase orders for said selected matching items"
which appears in Claim 1 of the '172 Patent.

Of the twenty-two claim terms offered for construction, ten
are general terms and eleven are means-plus-function terms. The
parties disagree over whether the remaining claim term is a
general term or a means-plus-function term.

## III. General Terms

At oral argument, the parties came to agree on two terms,
"subset" and "protocol." As used in the '516 Patent, "subset"
is agreed to mean: less than all of a set. As used in the '516
Patent, "protocol" is agreed to mean: a procedure. The parties
also substantially agreed on the term "catalog/product catalog."

6

Notwithstanding their substantial agreement, some explanation of that term is necessary.

### 1.   Catalog/ Product Catalog

'683 Patent, Claims 3, 26, 28, 29
'516 Patent, Claims 1, 2, 6, 9, 21, 22, 29

#### a. Words of the Claim

Claim 3 of the '683 Patent claims an electronic sourcing system comprising:

> at least two product catalogs containing data relating to items associated with the respective sources;
>
> means for selecting the product catalogs to search;
>
> means for searching for matching items among the selected product catalogs...

'683 Patent at 25:10-15 (emphasis added). Claims 26, 28 and 29 of the '683 Patent claim a method comprising the steps of:

> maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for matching items among the selected product catalogs...

'683 Patent at 26:62-67; 27:11-17 (emphasis added).[2]

Claims 1, 2 and 6 of the '516 Patent claim an electronic sourcing system comprising:

---

[2] Claim 29 incorporates Claim 28.

a collection of catalogs of items stored in an electronic format;

a first set of pre-determined criteria associated with said collection of catalogs;

a second set of pre-determined criteria associated with items from each of said catalogs;

a catalog selection protocol, said catalog selection protocol relying on first set of pre-determined criteria to selected less than said entire collection of catalogs, and including a matching vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog; and

a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol.

'516 Patent at 23:44-64 (emphasis added). Claim 21 and 22

claim an electronic sourcing system comprising:

a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item;

a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection, said searching module being used to generate additional search-module criteria for said data fields of said requisition module;

a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with

8

said user-generated criteria and said search-module criteria;

wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item;

wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, said search-module criteria and a determination system that located items are generally equivalent; and

wherein said determination system includes a cross-reference table matching an identification code from a first located item and a second identification code from a second located item.

'516 Patent at 25:56-26:18 (emphasis added).   Claim 29 of

the '516 Patent claims an electronic sourcing system

comprising:

a collection of catalogs of items stored in an electronic format;

a first set of pre-determined criteria associated with said collection of catalogs;

a second set of pre-determined criteria associated with items each of said catalogs;

a catalog selection protocol, said catalog selection protocol relying on first set of pre-determined criteria to select less then said entire collection of catalogs, and including a matching vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party;

a search program, said search program relying on said second set of criteria to select specific items from

said catalogs determined from said catalog selection
protocol; and

a cross-reference table linking a vendor item catalog
number from said vendor catalog with an item catalog
number from said predetermined third party.

'516 Patent at 26:43-65.

### b. Specification

The most significant disagreement between the parties is
whether a "catalog" must be published by a vendor. The
specification provides:

> A feature of the present invention is the ability to
> search multiple catalogs from different suppliers.
> For example, catalog database 36 can contain the
> catalog or catalogs published by a vendor Distributor.
> . .Catalog database 36 can further contain catalogs
> published by some of the vendor manufacturers. .
> .Catalog database 36 can further contain catalogs
> published by outside suppliers, whether manufacturers
> or other distributors, listing such vendor's products
> different from those in the Distributor's catalogs.

'683 Patent, 4:46-59 (emphasis added). In briefing, Lawson
argued that it is essential that the construction of "catalog"
require that it be "published by a vendor." At oral argument,
ePlus stated that it objected to the inclusion of "published by
a vendor" because the specification quoted above makes clear
that a catalog may be published by a supplier, manufacturer or
distributor, among others. The parties' disagreement over
whether a catalog must be published by a vendor was resolved
when they agreed, at oral argument, that the term "vendor"
includes suppliers, distributors, and manufacturers.

10

Additionally, the specification outlines what is generally included in a catalog. It provides that catalogs "preferably include such information as part number, price, catalog number, vendor name or I.D., and vendor catalog number, as well as textual information and images of or relating to the catalog products." '683 Patent at 4:38-42.

### c. Proper Construction

Based on the fact that a catalog is published by a vendor and includes the type of information outlined in the specification above, "catalog" and "product catalog" mean: an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item. That construction is consistent with the ordinary meaning of the term as used in the words of the claim and the specification.

### 2. Order List

'172 Patent, Claim 1

ePlus asserts that "order list" needs no construction because it is used consistently with its plain and ordinary meaning. However, if construed, ePlus proposes the meaning: the list of items that you are going to order. Lawson proposes that

11

the term mean: a list of items derived from a list of selected matching items.

### a.   Words of the Claims

Claim 1 of the '172 Patent claims an electronic sourcing system comprising:

> a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately;
>
> means for entering product information that at least partially describes at least one desired item;
>
> means for searching for matching items that match the entered product information in the selected portions of the database;
>
> means for generating an <u>order list</u> that includes at least one matching item selected by said means for searching;
>
> means for building a requisition that uses data obtained from said database relating to selected matching items on <u>said order list</u>;
>
> means for processing said requisition to generate purchase orders for said selected matching items.

'172 Patent at 23:56-24:42 (emphasis added).

### b.   Specification

The specification provides that "[o]nce Hit List 47 has been created by TV/2 search program 50, the user can view it and select particular ones of the located catalog items for Order List 48." '172 Patent at 10:22-24. However, the specification further states that, during a search, a "user may also add

additional items to the Order List 48 being built in Shell 52 if desired, whether those additional items had been selected from the Hit List 47 or not." Id. at 12:39-41.   This makes clear that Lawson's definition, which requires that items on an order list be derived from a list of selected matching items, or the Hit List 47, is incorrect.   Rather, the specification shows that items can be added to an order list whether or not they are derived from a list of selected matching items.

Lawson disagrees with ePlus' proposed definition, asserting that an order list is merely an interim list of items that you may order.   Lawson argues that construing an "order list" as "items that you are going to order" is incorrect because there are many additional steps that must be taken before the items are ordered and consequently, the items may not be ordered at all.   For example, the specification states that an object of the invention is to create an order list and "transfer[] that order list to a requisition/purchasing system for generating a requisition." Id. at 3:1-6.   That requisition is later transferred to a purchase order through an inventory sourcing process. Id. at 15:39-41.   And, during the inventory sourcing process, the exact item found during a catalog search can be changed to a corresponding item from another vendor. Id. at 14:53-59 ("[A]n entry in an inventory-sourced Requisition Management screen may indicate for a requisitioned item a vendor

and vendor catalog number that has been changed, from what was obtained from a catalog search, to a corresponding vendor and vendor catalog number for that item from another source.") Thus, Lawson correctly argues that the exact items on an order list may not be ordered at all.

The specification best describes the "order list" when it provides that it is an object of the invention to "provide an electronic sourcing system capable of creating an order list including desired catalog items located as the result of [] a database search." Id. at 3:1-4.

### c.   Proper Construction

The words of the claims and the specification make clear that neither of the party's proposed constructions are wholly consistent with the intrinsic evidence.   Most significantly, Lawson's definition limits the items on an order list to items originally found on a Hit List.   The specification demonstrates that items can be added to an order list whether or not they first appear on a Hit List.   And, ePlus' definition suggests that the items on an order list will be ordered, notwithstanding that the specification outlines several steps that must take place, and may change the order list, before an actual order is placed.   Instead, the specification describes the order list as, and it is construed to mean: a list of desired catalog items.

### 3. Matching Items

'683 Patent, Claims 3, 6, 26, 28, 29
'172 Patent, Claim 1

ePlus argues that this term needs no construction but that, if it is construed, it means: items in search results that satisfy search criteria. Lawson proposes that the term mean: the results of a search of items matching a user-entered search criteria (i.e. Hit List).

### a.   Words of the Claims

Claim 3 of the '683 Patent claims an electronic sourcing system comprising:

> at least two product catalogs containing data relating to items associated with the respective sources;
>
> means for selecting the product catalogs to search;
>
> means for searching for <u>matching items</u> among the selected product catalogs...

'683 Patent at 25:10-15 (emphasis added).  Claim 6 of the '683 Patent claims an electronic souring system comprising:

> a database containing data relating to items associated with at least two sources;
>
> means for searching for <u>matching items</u> in the database;
>
> means for building a requisition using data relating to <u>matching items</u> and their associated source(s);
>
> means for processing the requisition to generate one or more purchase orders for the selected matching items; and

15

> means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

'683 Patent at 25: 31-42.   Claims 26, 28 and 29 of the '683

Patent claim a method comprising the steps of:

> maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for <u>matching items</u> among the selected product catalogs...

'683 Patent at 26:62-67; 27:12-17 (emphasis added).

Claim 1 of the '172 Patent claims an electronic sourcing

system comprising:

> a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately;
>
> means for entering product information that at least partially describes at least one desired item;
>
> means for searching for <u>matching items</u> that match the entered product information in the selected portions of the database;
>
> means for generating an order list that includes at least one <u>matching item</u> selected by said means for searching;
>
> means for building a requisition that uses data obtained from said database relating to selected matching items on said order list;
>
> means for processing said requisition to generate purchase orders for said selected matching items.

'172 Patent at 23:56-24:42 (emphasis added). The claims themselves demonstrate that matching items are the results of a database search.

### b.   Specification

The specification provides:

> When a search is performed in Shell 52 and search program 50, a Hit List 47 is produced...The user would see on Monitor 22 of local computer 20 a Hit List 47 screen representing limited data about <u>all matching catalog items that were located in catalog database 36 as a result of the search.</u>

'683 Patent at 9:37-42 (emphasis added). Thus, the specification also demonstrates that the matching items are located as a result of a search.

### c.   Prosecution History

During prosecution of the '683 Patent, the inventors, in amending the claims, noted that, "[a]pplicants have amended the claims using the following terminology: <u>'matching items' are the search results</u>..." (Pl. Ex. 22 at 11 (emphasis added).) This statement is unequivocal and shows precisely how the inventors interpreted the claim term.

### d.   Proper Construction

The term "matching items" means: the search results. This construction is consistent with the words of the claim, the specification and the prosecution history. It is also

17

consistent with the construction in ePlus, Inc. v. Ariba, Inc., Civil Action No. 1:04cv612 (E.D. Va.).  (Pl. Ex. 10 at 27.)

### 4.   Selected Matching Items

'683 Patent, Claims 3, 6, 26, 28, 29
'172 Patent, Claim 1

ePlus asserts that this term need not be construed but that, if it is, it should be construed to mean: items returned in search results that are selected for inclusion on an order list or in a requisition.  Lawson proposes that the term mean: one or more items selected by a user in the search program from the list of 'matching items' for inclusion in an order list.

### a.   Words of the Claims

Claim 3 of the '683 Patent claims an electronic sourcing system comprising:

> at least two product catalogs containing data relating to items associated with the respective sources;
>
> means for selecting the product catalogs to search;
>
> means for searching for matching items among the selected product catalogs;
>
> means for building a requisition using data relating to selected matching items and their associated source(s);
>
> means for processing the requisition to generate one or more purchase orders for the selected matching items; and
>
> means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

'683 Patent at 25:10-23 (emphasis added).  Claim 6 of the '683

Patent claims an electronic souring system comprising:

> a database containing data relating to items associated with at least two sources;
>
> means for searching for matching items in the database;
>
> means for building a requisition using data relating to matching items and their associated source(s);
>
> means for processing the requisition to generate one or more purchase orders for the <u>selected matching items</u>; and
>
> means for converting data relating to a <u>selected matching item</u> and an associated source to data relating to an item and a different source.

'683 Patent at 25: 31-42.  Claims 28 and 29 of the '683 Patent

claim a method comprising the steps of:

> maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for matching items among the selected product catalogs;
>
> building a requisition using data relating to <u>selected matching items</u> and their associated source(s);
>
> processing the requisition to generate one or more purchase orders for the <u>selected matching items</u>; and
>
> converting data relating to a <u>selected matching item</u> and an associated source to data relating to an item and a different source.

'683 Patent at 26:62-67; 27:12-17 (emphasis added).  Claim 1 of

the '172 Patent claims an electronic sourcing system comprising:

a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately;

means for entering product information that at least partially describes at least one desired item;

means for searching for matching items that match the entered product information in the selected portions of the database;

means for generating an order list that includes at least one matching item selected by said means for searching;

means for building a requisition that uses data obtained from said database relating to selected matching items on said order list;

means for processing said requisition to generate purchase orders for said selected matching items.

'172 Patent at 23:56-24:42 (emphasis added). The words of the claim clearly link the selected matching items to the requisition.

### b. Specification

The specification shows that the selected matching items are items that are eventually transferred to a requisition. For example, the '683 Patent provides:

When in search program 50, particular items selected can be added to an Order List 48...The items that are sent to the Order List 48 are collected and shown on the Items Selected screen of Shell 52...Upon clicking on "Order" when the Items Selected screen (Appendix VI) is viewed, many or all of these fields on the items in the Order List are transmitted back to REQU program 44A (via the programs of interface 60 shown in FIG. 2) to be added to the pending Requisition Item Table 46.

20

'683 Patent at 11:30-55.

### c.   Prosecution History

During prosecution of the '683 Patent, the inventors, in amending the claims, noted that, "[a]pplicants have amended the claims using the following terminology: 'selected matching items' are requisition items..." (Pl. Ex. 22 at 11 (emphasis added).) This statement demonstrates that meaning given to the claim term by the inventors.

### d.   Proper Construction

The words of the claim and specification make clear that selecting matching items are used to build a requisition. And, the prosecution history unequivocally states that selected matching items are requisition items. Thus, this term is construed to mean: requisition items. That construction is also consistent with the construction in ePlus, Inc. v. Ariba, Inc., Civil Action No. 1:04cv612 (E.D. Va.). (Pl. Ex. 10 at 27.)

### 5. Searching For Matching Items Among The Selected Product Catalogs

'683 Patent, Claims 26, 28, 29

ePlus contends that this term requires no construction beyond its plain and ordinary meaning. Lawson proposes that it mean: searching the selected product catalogs to locate items in response to user-entered search criteria.

### a.   Words of the Claim

Claims 26, 28 and 29 of the '683 Patent claim a method comprising the steps of:

> maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for matching items among the selected product catalogs...

'683 Patent at 26:62-67; 27:12-17 (emphasis added).

### b.   Proper Construction

This term requires no further construction because both "matching items" and "product catalogs" already have been construed.

### 6.   Cross-Reference Table

'516 Patent, Claims 21, 22, 29

ePlus asserts that the Court need not construe this term, but if it does, it should mean: a reference from one part of an index to another for additional information. Lawson proposes that the term mean: a table including reference or identification codes used to link vendor items by catalog number between two or more different vendors determined by a Distributor to be equivalent.

### a. Words of the Claims

Claims 21 and 22 of the '516 Patent claim an electronic sourcing system comprising:

> a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item;
>
> a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection, said searching module being used to generate additional search-module criteria for said data fields of said requisition module;
>
> a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria;
>
> wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item;
>
> wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, said search-module criteria and a determination system that located items are generally equivalent; and
>
> wherein said determination system includes a <u>cross-reference table</u> matching an identification code from a first located item and a second identification code from a second located item.

'516 Patent at 25:56-26:18 (emphasis added). Claims 21 and 22 make clear that the cross-reference table operates within a

determination system that locates generally equivalent items.

Claim 29 provides for an electronic sourcing system comprising:

> a collection of catalogs of items stored in an electronic format;
>
> a first set of pre-determined criteria associated with said collection of catalogs;
>
> a second set of pre-determined criteria associated with items each of said catalogs;
>
> a catalog selection protocol, said catalog selection protocol relying on first set of pre-determined criteria to select less then said entire collection of catalogs, and including a matching vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party;
>
> a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol; and
>
> a cross-reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party.

'516 Patent at 26:43-65.

### b.   Specification

ePlus asserts that Lawson's proposed construction imports an improper limitation by requiring a distributor to determine equivalency. According to Lawson, this requirement come from U.S. Patent No. 5,712,989 (the "'989 Patent"), which is incorporated by reference into the Patents-in-Suit. A patent incorporated by reference "becomes effectively part of the host

document as if it were explicitly contained therein." <u>Tellemac</u>
<u>Cellular Corp. v. Topp Telecom, Inc.</u>, 247 F.3d 1316, 1329 (Fed.
Cir. 2001). The '989 Patent provides:

> The Host Cross-Reference Table includes, for each item
> regularly stocked or supplied by the Distributor...a
> list    of    the    corresponding    part    numbers    of
> Distributor's    vendor    and    other    distributors...for
> items    which    have    been    determined    to    be    equivalent.
> This relational database is created by the Distributor
> by,    for    example,    reviewing    the    catalogs    of    other
> distributors    and    determining    which    items    are
> equivalent to items in the Distributor catalog.

'989 Patent at 32:14-24. And says, Lawson, it is essential that
"determined to be equivalent" be included in the construction of
the term, because without it, what is cross-referenced has no
meaning or context. (Def. Reply at 27.)

      c.   **Proper Construction**

Lawson's    proposed    construction    improperly    imports
unnecessary limitations. Specifically, the claims at issue
demonstrate that it is not necessary that items be linked by
catalog    number    because    the    '516    Patent    links    items    by
identification code. And, while the Patents-in-Suit do not
require that a distributor determine equivalency, Claims 21 and
22 do state that the cross-reference table operates within a
determination system that locates equivalent items. As Lawson
correctly observes, the '989 Patent, incorporated by reference,
provides that it is the Distributor that determines equivalency.
However, as the claim terms and specification make clear, and as

25

the parties have agreed, a "Distributor" is but one kind of
vendor.   To define the term "cross-reference table" solely with
reference to the incorporated '989 Patent would inappropriately
limit the term.   Considering the Patents-in-Suit as a whole, the
incorporated limitation from the '989 Patent is the concept of
determined equivalency, not the limitation that a Distributor
determine the equivalency.   It would truly distort the plain
meaning of the patent and the specification to impose the
limitation that the Distributor is the sole determiner of
equivalency.   Thus, the term "cross-reference table" means a
table that links vendors items determined to be equivalent
between two of more different vendors.

### 7.   Electronic Sourcing System

'683 Patent, Claims 3, 6
'516 Patent, Claims 1, 2, 6, 9, 21, 22, 29
'172 Patent, Claim 1

ePlus asserts that "electronic sourcing system" means: an
electronic system for use by a prospective buyer to locate and
find items to purchase from sources, suppliers or vendors.
Lawson argues that the term does not need to be construed
because it is a preamble statement of purpose or intended use
that is not a limitation on the scope of the claim.   However, if
the Court should interpret the phrase, Lawson argues that it
should mean: a system for determining what inventory will be
used to fulfill requests for items.

A preamble "limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." Catalina Mktg Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002). "Electronic sourcing system" limits the invention because it gives meaning to the claim. Thus, the Court must construe the disputed claim term.

### a.   Words of the Claims

"Electronic sourcing system" is included in the preamble of numerous claims in the Patents-in-Suit. The majority of the claims describe the system is relation to selecting the catalogs to search, searching the catalogs, and generating a requisition and purchase order. Significantly, the claims at issue never mention "inventory."

### b.   Specification

The specification provides that the electronic sourcing system provides "a user with the capability of searching a database containing data...relating to items available from at least two vendor product catalogs." '683 Patent at 2:47-52; '516 Patent at 2:51-56. This supports ePlus' proposed construction because it demonstrates that the system is used to locate items to purchase from vendors.

The specification also provides support for Lawson's definition. For example, it describes the use of the Fisher

RIMS system to determine what inventory will be used to fill requests for orders.    See '683 Patent at 14:6-15:19.    This demonstrates that part of the electronic sourcing system involves the process of determining what inventory will fill a request for an item.

### c.    Proper Construction

Lawson's proposed construction is simply too limiting, describing only one part of the electronic sourcing system, which significantly, does not even appear in the words of the claims.    Thus, "electronic sourcing system" means: an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.    That construction is consistent with the words of the claim and the specification. It is also consistent with construction of the term in   ePlus, Inc. v. SAP America, Inc., Civil Action No. 3:05cv281 (E.D. Va. 2006).

### 8. Converting Data Relating to a Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source

'683 Patent, Claims 28, 29

According to ePlus, this term does not need construction, but, if construed, should mean: a process of cross-referencing data relating to a selected matching item and an associated source to an item and a different source.  Lawson proposes that the term mean: substituting a catalog entry related to a product

with a catalog entry describing the product from a different source by using matching codes in a cross-reference table for sourcing and pricing.

### a.    Words of the Claim

Claim 28 of the '683 Patent claims a method comprising the steps:

> maintaining at least two product catalogs in a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for matching items among the selected product catalogs;
>
> building a requisition using data relating to selected matching items and their associated source(s);
>
> processing the requisition to generate one or more purchase orders for the selected matching items; and
>
> converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

'683 Patent at 27:10-25 (emphasis added).

### b.    Specification

The most significant disagreement between the parties is whether the term "converting" means "cross-referencing" or "substituting." The specification provides that "an entry in a an inventory-sourced Requisition Management screen may indicate for a requisitioned item a vendor and vendor catalog number that has been changed, from what was obtained from a catalog search,

to a corresponding vendor and vendor catalog number for that item from another source." '683 Patent at 14:38-44 (emphasis added). Appendix X provides an example of a part that is replaced by a corresponding part. The specification describes the Appendix message which "indicate[s] that a part number for line 001, identified as part number 53610, was successfully added in <u>substitution</u> for a prior part number...These messages were generated because the originally entered part (S100-06) did not exist in the Fisher catalog, but its corresponding part number...did exist in that other catalog." <u>Id.</u> at 16:19-27 (emphasis added). Thus, the specification provides support for Lawson's assertion that converting means substituting.

### c. Prosecution History

The prosecution history states that the applicant clarified the claims that contain the "converting" step and the "amended language properly claims identical matching items from different sources, as well as a <u>suitable replacement</u> for the selected matching item." (Def. Ex. K at 14 (emphasis added).) This too supports Lawson's assertion that converting requires substitution with a suitable replacement.

### d. Proper Construction

The specification and prosecution history demonstrate that "converting" means "substituting." Additionally, the word "convert" is defined as (1) to change from one form or function

30

to another, (2) to alter for more effective utilization and (3) to exchange for an equivalent.    Merriam-Webster  Online Dictionary,    http://www.merriam-webster.com/dictionary/convert, last visited April 7, 2010.    Cross-referencing simply cannot accomplish conversion, as it is ordinarily defined, and is an inadequate construct of the claim term.

Finally, while Lawson is correct that "converting" requires more than mere "cross-referencing," it offers no support for its contention that conversion is accomplished using "catalog entries," "matching codes," or that the cross-reference table used is "for sourcing and pricing."    Thus, this claim term means: substituting data relating to a selected matching item and an associated source to data relating to an item and a different source."

## IV.   Mean-Plus-Function Terms

Under 35 U.S.C. § 112 ¶ 6 an "element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalent thereof."

The first step in claim construction for a mean-plus-function term is determining if the term is a "means-plus

31

function" term, i.e whether § 112, ¶ 6 applies. Mean-plus-function claiming only applies to "purely functional limitations that do not provide the structure that performs the recited function." Phillips, 415 F.3d at 1311. There is a rebuttable presumption that § 112 ¶ 6 applies if the word 'means' appears in the claim language. Trimed, Inc. v. Stryker Corp., 514 F.3d 1256, 1259 (Fed. Cir. 2008). If, notwithstanding the use of the word "means," the claim "recites sufficient structure for performing the described functions in their entirety," the limitation is not a means-plus-function limitation. Id. Additionally, there is a rebuttable presumption that § 112 ¶ 6 does not apply to a claim term that does not use the word "means." Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1023 (Fed. Cir. 2006). This presumption "can be rebutted by showing that the claim element recites a function without reciting sufficient structure for performing that function." Id.

Once a court determines that a term is a means-plus function term, it must identify the function of the term. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 113 (Fed. Cir. 2002). The court must identify the function based solely on the claim language. Id.

Finally, the court must identify the term's corresponding structure based on the disclosed embodiments. A proper

32

construction should account for all structure in the specification corresponding to the claimed function. See Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1369 (Fed. Cir. 2005). A structure set forth in the specification is only corresponding "if the specification clearly links or associates that structure to the function recited in the claim." Kahn v. Gen. Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998). "The duty to link or associate structure in the specification with the function is the *quid pro quo* for the convenience of employing § 112, ¶ 6." Id.

For a computer-implemented means-plus-function claim, the corresponding structure must specify an algorithm for performing the function programmed in a special-purpose computer. Finisar Corp. v. DirectTV Group, Inc., 523 F.3d 1323, 1340 (Fed. Cir. 2008). The algorithm must be described well enough to provide the necessary structure under § 112 ¶ 6 to the satisfaction of one of ordinary skill in the art. Id. And, the algorithm may be disclosed in "any understandable terms," including as a mathematical formula, in prose, in a flow chart, or in any other manner that provides sufficient structure. Id. However, it is necessary to disclose the particular algorithms that carry out the invention. WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1349 (Fed. Cir. 1999).

The parties submitted briefing on the means-plus function terms at issue in this action. However, the parties did not join issue in any of the briefing. Instead, the briefs, in large measure, were addressed to the positions taken by the opposing party and sought to demonstrate why those arguments were incorrect, rather than identifying the function and then identifying the structure implementing the function and showing where the structure was disclosed.

As a result of the inadequate briefing, the Court requested additional briefing under a different approach in which the parties were to articulate the function and identify the structures associated with each term, backing up the discussion with those parts of the specification wherein those structures were disclosed. The parties were told to attach to each discussion copies of the patent with the cited portions of the patent highlighted, with an explanation how the cited parts of the patent supported the proffered construction of the term.

Neither party submitted a useful supplemental brief. Specifically, Lawson's construction suffers from being overly detailed and selectively citing portions of the specification helpful to its case while ignoring parts that cut against Lawson's construction. Lawson's proffered constructions are based largely on cherry-picked statements in the specification that are out of context. Those statements are then reassembled

in an order that presents a construction that, if adopted, is likely to result in summary judgment for Lawson. On the other hand, ePlus' arguments are not tethered to the specification, thereby making it impossible to link supposed structure to the cited function. Both approaches to claim construction amount to little more than rewriting the patents, which, of course, is not the office of claim construction.

The interests of justice are not served in circumstances such as these, where the parties fail to discharge their obligation fairly and reasonably to assess the specification and to demonstrate the required linkage between the disclosed structure and the term, and instead define the structures in a way that seeks to ensure or avoid infringement. Moreover, the approach taken here makes the task of claim construction exceedingly difficult. Fortunately, in this case the Court has access to claim construction opinions in other cases which can help to resolve the conundrum created by the obfuscatory briefing submitted by the parties.

Ten of the eleven means-plus-function terms at issue here were construed in ePlus v. Ariba, Civil Action No. 1:04cv612 (E.D. Va. 2005). Upon careful consideration and study, the Court concludes that constructions of those ten terms are based on sound logic and are linked to the specification. On the merits, the constructions in Ariba define the means-plus-

function-terms in a manner consistent with the requirements set by the Federal Circuit.[3]   Those terms were correctly construed. They also set forth the applicable algorithms in easily understood prose.   Because the Ariba constructions are correct, they will be used here.

## A. The Disputes Over Frequently Used Claim Terms

There are four issues that permeate the parties briefing on the disputed means-plus-function claim terms.   These issues are discussed below and reflected in the Court's construction of the disputed terms.   In the interest of brevity, however, it is best to explain the meaning of those terms but once.

### 1. Local Computer

The parties dispute whether the system claimed by the Patents-in-Suit must operate on a local computer.   ePlus asserts that such a limitation is inappropriate for two reasons.   First, ePlus argues that the specification describes multiple network embodiments, and thus, limitation to a local computer embodiment alone is improper.   (Pl. Br. at 21.)   Lawson, on the other hand, asserts that the only structures described to perform the functions are programs running on a local computer.   Lawson also argues that when such hardware is disclosed, it must be

---

[3] The claim constructions in ePlus, Inc. v. SAP America, Inc., Civil Action No. 3:05cv281 (E.D. Va. 2006), also are helpful. However, the claim construction opinion in that case was vacated after the case was settled and it is preferable not to rely on that opinion.

incorporated into the algorithm.[4]    (Def. Br. at 9.)    ePlus

asserts that it is inappropriate to incorporate a hardware-based

element into the algorithm.   (Id.)

    The Patents-in-Suit clearly establish the local computer as

the  preferred  embodiment.     See  '683  Patent  at  3:48-4:44

(describing the function of the local computer).    However, as

ePlus  argues,  the  Patents-in-Suit  also  demonstrate  that  the

claimed  electronic  sourcing  system  can  be  operated  through

networked  embodiments.     For  example,  Figure  1B  depicts  an

embodiment  in  which  catalog  databases  236  are  maintained  on

server  200  and  the  search  program  250  is  connected  to  server

200,  rather  than  the  local  computer.    Id. at  Fig.  1B; 17:6-10

("file  server  200  is  a  large  personal  computer,  a  work  station

or  a  mini-computer  such  as  an  IBM  As/400.    Alternatively,  the

---

[4]    The    dispute    over    whether    disclosed    hardware    must    be
incorporated into the algorithm stems from the parties differing
interpretations of Harris Corp. v. Ericsson Inc., 417 F.3d 1241,
1254 (Fed. Cir. 2005).   In Harris, the Federal Circuit held that
the corresponding structure of a means-plus-function term was a
two-step algorithm in which a processor "calculates generally
nondiscrete estimates" and "selects the discrete value closest
to each estimate."    417 F.3d at 1254.    The court went on to
state   specific   corresponding   structure,   and   the   kind   of
processor needed to carry out the algorithm.   Id.
    The parties disagree over whether the court's subsequent
discussion of the specific hardware used to carry out the
algorithm was considered by the court as part of the algorithm
itself.    It is not necessary to resolve this dispute, however,
because the specification demonstrates that network embodiments
are disclosed, and thus, construction cannot be limited to a
local computer.

server 200 and a minicomputer (such as an IBM AS/400) can be independently connected to each local computer 200."). However, the specification also describes the network embodiment depicted in Figure 1B by stating that "[s]erver 200 maintains complete requisitions 242, in a manner similar to the manner in which local computer 20 maintain requisition databases 42 in the embodiment shown in FIG. 1A." Id. at 17:19-22.

Thus, while the local computer appears to be the preferred embodiment, it is not the only embodiment disclosed in the Patents-in-Suit. In fact, the specification specifically describes the networked embodiment that uses server 200 as an alternative to the local computer. Thus, it is improper to limit the structure of the means-plus-function terms to programs running on a local computer.

## 2. DDE Protocol

Similarly, the parties disagree over whether construction of the disputed terms must include a limitation to software that communicates by way of the Dynamic Data Exchange ("DDE") protocol. Again, Lawson contends that such a limitation is proper because the DDE protocol is the only protocol disclosed by the Patents-in-Suit and linked to the data transfers between the requisition/purchasing system and the shell program or search program. (Def. Reply at 8.)

38

The specification provides that DDE is the preferred communications protocol. '683 Patent at 5:21-23 ("Interface 60 is preferably based upon the dynamic data exchange ("DDE") protocol provided by the OS/2 operating system 32."). However, the specification also discloses other communications protocols that may be used by the system. For example, the specification provides that "[h]ost computer 10 and local computer 20 are preferably linked point-to-point or in a network employing the formats and protocols of IBM's System Network Architecture ("SNA")." Id. at 5:9-12. Additionally, the specification describes a communications link through a phone or dataline that connects the local computer to the host computer. Id. at 17:23-33.

Because the Patents-in-Suit disclose communications protocols other than DDE, Lawson's attempt to limit the communications link to the DDE protocol is unsupported by the specification and the Court will not adopt such a limitation.

### 3. Concatenation

The parties also dispute whether a step in the "means for searching" claim terms require the selected product catalogs to be concatenated. To "concatenate is to "link together in a series or chain." Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/concatenate last vis-ited April 29, 2010. Lawson asserts that a concatenation step

is necessary visit because a search cannot be performed unless the catalogs are concatenated.   (Def. Br. at 16.)

The patent specification provides that, once a user has selected the catalogs to be searched, "TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search..."   '683 Patent at 9:67-10:2; '172 Patent at 10:4-6.   In this context, "concatenate" is used merely to mean that the catalogs are searched as a group. Joining the catalogs, or linking them together in a series or chain is not required.

Additionally, the specification describes embodiments in which catalogs cannot be concatenated.   For example, the Patents-in-Suit demonstrate that catalogs can be stored in separate databases.   See   '516 Patent at 12:66-67; '683 Patent at 17:55-64 (describing multiple catalog databases).   And, catalogs stored in separate databases cannot, by definition, be concatenated.   Additionally, the specification describes a situation in which only one catalog can be searched.   '683 Patent at 10:16-19; '172 Patent at 1-:17-20 ("If no catalog delimiting information is entered for the item desired to be requisitioned, interface 60 would be set up to search only the Fisher catalog...").   Of course, concatenation cannot occur when only one catalog is being searched.

Thus, the Court will not require that the structure of the "means for searching" terms include a step of concatenating the catalogs.

### 4. Selecting or Searching "Two or more" Catalogs

Lawson's proposed constructions for the "means for selecting" and "means for searching" terms require that two or more catalogs be selected or searched. ePlus asserts that this limitation is improper.

The Summary of the Invention states that it is an object of the invention to allow a user to search for items available "from at least two vendor product catalogs." '683 Patent at 2:47-52. However, as noted above, the specification indicates that, when the requisition/purchasing system is used to select the catalogs and no identifying information is entered, the program is set to search either <u>one</u> or all of the catalogs. <u>Id.</u> at 10:16-20 (emphasis added). Because the specification indicates that it is possible to search only one catalog, the correct construction must allow for only one catalog rather than "two or more."

### B.   Dispute Respecting Whether A Term Is A Means-Plus-Function Term

Before turning to the disputed means-plus-function claim terms, it is appropriate to decide the dispute respecting

whether one of the putative means-plus function claim terms is such a claim at all.  That term is:

> "A multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria"

'516 Patent, Claim 21

The parties disagree over whether this claim element should be construed as a means-plus-function element.  Because the element does not contain the word "means" there is a rebuttable presumption that it should not be construed as a means-plus-function element.  Depuy Spine, Inc., 469 F.3d at 1023.  To overcome the presumption, the proponent, here Lawson, must demonstrate that the claim term "fails to recite sufficiently definite structure or else recites a function without reciting sufficient structure for performing that function."  CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002).

Lawson argues that "module" fails to connote sufficient structure.  (Def. Br. at 20.)  It asserts that "module" is akin to the terms "mechanism," "means," "element," and "device," which the Federal Circuit has found do not constitute sufficient structure.  See Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1360 (Fed. Cir. 2004).  And, Lawson argues, the Federal Circuit has found that both a "settable control

42

means" and "settable control module" required construction under § 112 ¶ 6.  Ranpak Corp. v. Storopack, Inc., 1998 WL 513598, at *2 (Fed. Cir. July 15, 1998).

ePlus argues that "module" is a "well-known term in computer software technology that constitutes structure.  (Pl. Br. at 16-17.)  Neither part suggest that the term "module" is definable by references to the intrinsic evidence.  However, it is not disputed that the term is defined in extrinsic evidence. Thus, for example, Webster's New World Computer Dictionary defines "module" as "a unit or section that can function on its own.  In an integrated program, for instance, one can use the word processing *module* as though it were a separate, standalone program."  (Pl. Br. at Ex. 18.)  Similarly, the Microsoft Computer Dictionary defines "module" as "a collection of routines and data structures that perform a particular task or implement a particular abstract data type."  (Pl. Br. at Ex. 15.)  The Court may properly consider those definitions so long as the ultimate construction is grounded in intrinsic evidence. Mangosoft v. Oracle Corp., 525 F.3d 1327, 1330 (Fed. Cir. 2008). And, here, the definitions offered by ePlus are consistent with the claim language.  Significantly, in addition to the term at issue, Claim 21 of the '516 Patent is also comprised of "a requisition module" and "a catalog collection searching module." The use of the word "module" in those parts of Claim 21,

43

together with the reference in the specification ('516 Patent at 10:50-65; 15:25-50; 18:23-26) support the assertion that the term module carries the meaning argued by ePlus.  Thus, when the entire claim is examined, it is clear that the term is used consistently to connote a structure.

Thusly understood, the term "module" connotes sufficient structure.  Because the patents deal with computer software, and module carries a special meaning in that field, the term "module" as used in the patent defines a structure.  Therefore, Lawson has not overcome its burden, and "module" will not be construed as a means-plus-function term.

Although the parties disagreed over whether this term is a means-plus-function term, neither party offered a proposed construction of the term.  And, no construction seems necessary if the term "module" is given its usual meaning.

### C.  The Disputed Means-Plus-Function Terms

The parties agree that the remaining terms to be construed are all means-plus-function terms.

#### 1.  "Means for selecting the product catalogs to search"

'683 Patent, Claim 2

##### a.  Function

The function of this element is to select the product catalogs to search.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents. See e.g., '683 Patent at 4:5-6; 5:9-27; 8:40-56; 9:52-10:20; FIGs. 1-2 (describing search program 50 and requisition/purchasing system 40).

### 2. "Means for searching for matching items among the selected product catalogs"

'683 Patent, Claim 3

### a. Function

The function of this element is searching for matching items among the selected product catalogs.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents. See e.g., '683 Patent at 4:1-6:38; 7:61-12:37; FIGS. 1-2; APP. III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

      3.   **Means for searching for matching items in the database"**

'683 Patent, Claim 6

      a.   **Function**

The function of this element is searching for matching items in the database.

      b.   **Corresponding Structure**

The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.   <u>See e.g.</u>, '683 Patent at 4:1-6:38; 7:61-12:37; FIGS. 1-2; APP. III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

      4.   **Means for building a requisition using data related to selected matching items and their associated source(s)"**

'683 Patent, Claims 3 and 6

      a.   **Function:**

The function of this element is building a requisition using data relating to selected matching items and their associated source(s).

      b.   **Corresponding Structure**

The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a

computer system having access to data in the database, and its equivalents.   See e.g.,   '683 Patent at 1:25-35; 3:3-19; 6:40-65; 7:36-8:14; 15:46-49; FIGS. 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

> **5.    Means for processing the requisition to generate one or more purchase orders for the selected matching items"**

'683 Patent, Claims 3 and 6

### a.    Function

The function of this element is processing the requisition to generate one or more purchase orders for the selected matching items.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.   See e.g.,   '683 Patent at 1:37-59; 3:3-24; 10:43-54; 15:20-59, FIGS. 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

> **6.    "Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source"**

'683 Patent, Claims 3 and 6

47

### a.   Function

The function of this element is converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

### b.   Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents.  See e.g. '683 Patent at 4:60-5:8; 10:43-54; 14:35-45; 16:14-32; 17:19-54, Appendices VIII-X.

> ### 7.   "Means for entering product information that at least partially describes at least one desired item"

'172 Patent, Claim 1

### a.   Function

The function of this element is entering product information that at least partially describes at least one desired item.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents. See e.g., '172 Patent at 4:6-6:28; 7:66-8:19; 9:55-12:28; 18:23-50; FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

### 8. "Means for searching for matching items that match the entered product information in the selected portions of the database"

'172 Patent, Claim 1

### a. Function

The function of this element is searching for matching items that match the entered product information in the selected portions of the database.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents. See e.g., '172 Patent at 4:6-6:28; 7:66-8:19; 9:55-12:41; FIGS. 1-2; Appendices III-V and VIII (describing local computer 20, search program 50, TV/2 and search program 250).

49

9. "Means for generating an order list that includes at least one matching item selected by said means for searching"

'172 Patent, Claim 1

a. Function

The function of this element is generating an order list that includes at least one matching item selected by said means for searching.

b.   Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.  See e.g., '172 Patent at 4:6-6:28; 7:66-8:13; 9:55-12:28; 18:23-50; Appendix VI, FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

10. "Means for building a requisition that uses data obtained from said database relating to selected matching items on said order list"

'172 Patent, Claim 1

a.   Function

The function of this element is building a requisition that uses data obtained from said database relating to selected matching items on said order list.

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents. See e.g., '172 Patent at 1:30-40; 3:7-28; 6:45-7:3; 7:41-8:19; FIGS 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

### 11. "Means for processing said requisition to generate purchase orders for said selected matching items"

'172 Patent, Claim 1

### a.   Function

The function of this element is processing a requisition to generate purchase orders for selected matching items.

### b.   Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition, and its equivalents. See e.g., '172 Patent at 1:42-55; 3:23-28; 10:53-55; 15:39-61; FIGS 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

51

## CONCLUSION

For the reasons set forth above, the disputed claim terms in the Patents-in-Suit are to be construed as reflected herein.

_____ /s/ _____
Senior United States District Judge

Richmond, Virginia
Date: April 30, 2010