```
1                IN THE UNITED STATES DISTRICT COURT

2             FOR THE EASTERN DISTRICT OF VIRGINIA

3                      RICHMOND DIVISION

4

5      -------------------------------------
                                          :
6      ePLUS, INC.,                       :   Civil Action No.
                                          :   3:09CV620
7      vs.                                :
                                          :
8      LAWSON SOFTWARE, INC.              :   April 29, 2010
                                          :
9      -------------------------------------

10

11

12          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13            BEFORE THE HONORABLE ROBERT E. PAYNE

14               UNITED STATES DISTRICT JUDGE

15

16     APPEARANCES:

17     Craig T. Merritt, Esquire
       Christian & Barton, LLP
18     909 East Main Street
       Suite 1200
19     Richmond, Virginia  23219-3095
       and
20     Scott L. Robertson, Esquire
       Goodwin Procter, LLP
21     901 New York Avenue NW
       Suite 900
22     Washington, D.C.  20001
       Counsel for the plaintiff
23

24                    Peppy Strahan, RPR
                    Official Court Reporter
25               United States District Court
```

```
 1    APPEARANCES:   (cont'g)

 2    Robert A. Angle, Esquire
      Troutman Sanders, LLP
 3    1001 Haxall Point
      Richmond, Virginia  23219
 4    and
      Daniel W. McDonald, Esquire
 5    William D. Schultz, Esquire
      Merchant & Gould, PC
 6    80 South Eighth Street
      Suite 3200
 7    Minneapolis, Minnesota  55402
      Counsel for the Defendant
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<pre>
 1                  P R O C E E D I N G S

 2

 3              THE COURT:  Hello.

 4              MR. ANGLE:  Judge, it's Robert Angle and Craig

 5      Merritt on the phone.

 6              THE COURT:  All right.  Thank you.  This is ePlus

 7      versus Lawson, civil 3:09CV620, and I have this letter from

 8      Mr. -- I guess it's from Mr. Robertson dated April 28th.  It

 9      was brought over here, and I got it this morning and have read

10      it, and this needs to get resolved.

11              And I understand that there's some problem with the

12      availability of counsel for -- is it Lawson or ePlus?  I'm not

13      sure.

14              MR. MERRITT:  Judge, this is Craig Merritt.  ePlus is

15      available.

16              THE COURT:  How about Lawson, Mr. Angle?  Do you know

17      what the situation is?

18              MR. ANGLE:  Yes, Your Honor.  We're not available at

19      three o'clock which is only time given to us, and I know that

20      there is a response to that letter that will be coming over to

21      your chambers shortly.

22              THE COURT:  Well, I want to do it this afternoon.  I

23      guess Mr. McDonald -- who do you have to do it for your firm?

24              MR. ANGLE:  Mr. McDonald will have to do it.

25              THE COURT:  Is he available at four o'clock?
</pre>

1          MR. ANGLE:  I can ask him.

2          THE COURT:  I want him to be available as promptly as

3     possible.  When is the letter coming?

4          MR. ANGLE:  I should be able to get it over there in

5     the next 15, 20 minutes.

6          THE COURT:  I'd like to get this addressed today,

7     because some of these depositions, it looks to me like from

8     this letter, are scheduled for Monday.

9          MR. ANGLE:  I think that's right, Your Honor.

10         THE COURT:  Let's see what we can sort out here, and

11    I'll wait for the letter.  You set something up, three o'clock.

12    I can do it at 4:00 or 4:30, but I would really rather do it at

13    4:00.

14         MR. ANGLE:  Your Honor, I will make sure that

15    somebody is available at four o'clock today.

16         MR. MERRITT:  We will circulate a call-in number to

17    everybody including your court.

18         THE COURT:  If Mr. McDonald is in a trial or

19    something, there's not much we can do about that, or if he's in

20    the hospital not much about that, but if he's doing anything

21    else, it looks like he can take a little break.

22         MR. ANGLE:  Yes, Your Honor, I'll convey that.

23         THE COURT:  Thank you all.  I know you have another

24    call here in a minute.  Thanks for being available on short

25    notice.  Bye.

```
 1                    (Conference call ended at 1:53 p.m. and resumed at

 2        3:03 p.m. as follows:)

 3

 4                    THE COURT:  Hello.  This is civil 09-232, ePlus --

 5        I'm sorry.  I guess it's -- no.  It's 09-620, isn't it?

 6                    THE LAW CLERK:  Yes.

 7                    THE COURT:  Mr. McDonald, you've got the wrong number

 8        on yours.  I was reading from yours.  That's all right.  That

 9        happens when you rush.

10                    I know you all have got short notice, short fuses on

11        the matter.  You all go ahead and identify yourselves for the

12        record starting with counsel for the plaintiff and who you

13        represent, and then when you talk, give your name only.  Go

14        ahead.

15                    MR. MERRITT:  Craig Merritt of the Christian & Barton

16        firm for ePlus.

17                    MR. ROBERTSON:  Scott Robertson from Goodwin Procter,

18        Your Honor, for ePlus.

19                    MR. McDONALD:  Good afternoon, Your Honor.  Dan

20        McDonald and Will Schultz for Lawson.

21                    MR. ANGLE:  Your Honor, this is Robert Angle.  I'm

22        also on the phone for Lawson.

23                    THE COURT:  I've read the letter from Mr. Robertson

24        dated April 28th and the letter from Mr. McDonald dated April

25        29, and you all seem to have substantially different views,
```

1   almost polar opposite views, of the same facts, and that's kind

2   of hard for me to understand.

3          The bottom line, as I read it, is that ePlus contends

4   that nine witness's were identified after the date when they

5   were supposed to be identified, April 9, 2010, and that

6   Lawson -- and they are all fact witnesses.  And Lawson

7   identifies a number of witnesses, some identified after that

8   period.  There's a fellow named Jacobs identified in mid April,

9   fellow name Parsells on April 16, and a fellow named O'Connell

10  on April 23rd.

11         As to the rest of them, I don't see any date, and

12  that is Capocelli, Ramos, Staats.  I don't see any dates when

13  they were disclosed as people you were going to call in your

14  letter, Mr. McDonald.  You seem to be saying that these people

15  previously had testified in the SAP trial in 2006, but I don't

16  see when they were disclosed that you were going to call them

17  here.  So what's the problem here, folks?  If these --

18         MR. McDONALD:  Your Honor, can I clarify on the dates

19  of the disclosure of the people you listed?

20         THE COURT:  Sure.

21         MR. McDONALD:  This is Mr. McDonald.

22         THE COURT:  Capocelli when?

23         MR. McDONALD:  Capocelli was April 9th as agreed.

24         THE COURT:  All right.  Ramos?

25         MR. McDONALD:  April 9th as agreed.

1          THE COURT:  Jacobs?

2          MR. McDONALD:  April 9th as agreed.

3          THE COURT:  Now, your letter says you didn't even

4     become aware of him until mid April.  First sentence says,

5     Lawson was not aware of Jacobs until mid April when Lawson's

6     counsel spoke with Jesus Ramos and learned that Mr. Jacobs

7     would be a helpful witness on the Gateway system prior art.

8          So what you have here is inconsistent with April 9th.

9     What's the reason for the inconsistency?

10          MR. McDONALD:  Your Honor, I think we found out about

11     him right at April 9th, basically when we talked to Mr. Ramos,

12     so when I said mid April, maybe that was a little fuzzy.  It

13     may be April 9th, early to mid April.  We found out about him,

14     if it wasn't that day, it was like within 24 hours of April 9th

15     when we sent this letter.

16          THE COURT:  So it was April 9th and 10th.

17          MR. McDONALD:  April 8th or 9th.

18          THE COURT:  8th or 9th?

19          MR. McDONALD:  Yes, Your Honor.

20          THE COURT:  Staats?  I don't see any disclosure date

21     there.

22          MR. McDONALD:  Mr. Staats was in the same letter on

23     the agreed date of April 9th.

24          THE COURT:  Parsells you say April 16th.

25          MR. McDONALD:  That's right.  He was not in the

1    April 9th letter.  He was the one that we found out about when

2    we found out that one of the other witnesses, or potential

3    witnesses, at least we thought a potential witness, had

4    deceased, and we talked to his widow.  That's how we found out

5    about Mr. Parsells after April 9th.

6            THE COURT:  O'Connell, April 23rd.

7            MR. McDONALD:  Right, we basically heard about him on

8    April 23rd, talked to him on April 26th, and disclosed him on

9    April 26th based on the conversation with Ms. Fielder.

10            THE COURT:  Now, that is a total of one, two, three,

11    four, five, six people, and, Mr. Robertson, you say that there

12    are 11 people, two -- or there are nine people that haven't

13    been disclosed.  Who are the others?

14            MR. ROBERTSON:  Your Honor, let me see if I can get

15    my handle on all these people because a lot of names have been

16    flying around, and I just want to make sure I've got this all

17    nailed down.

18            THE COURT:  What I'm reading from was the bold type

19    in Mr. McDonald's letter dated the 29th of April, and he

20    gives -- there are six people, and then he says that they --

21    you identified Gounaris, Eng, and Fielder, and there's no

22    dispute about that, that they identified those people.

23            MR. ROBERTSON:  I have no qualms with Mr. Gounaris

24    and Ms. Eng who were in their initial disclosures and in their

25    interrogatory answers.  Initial disclosures back in August,

1    Your Honor, our interrogatory number one asked them about these

2    people.  I mean this wasn't hit -- only Gounaris and Eng were

3    identified in those, Your Honor.

4              On April 9th in the court-ordered invalidity

5    contention, they identified Ms. Fielder.  At the close of

6    business that day, apparently an e-mail was sent identifying

7    four others.  I believe Capocelli, Ramos, and Staats were

8    identified.  I think Mr. McDonald's letter says Mr. Parsells

9    was not identified until last Friday.  Mr. O'Connell was not

10   identified until this past Monday.

11             THE COURT:  Well, is it correct then that Staats,

12   Jacobs, Ramos, and Capocelli were identified on April the 9th?

13             MR. ROBERTSON:  I think that's correct, Your Honor.

14   Let me just --

15             THE COURT:  So there's no dispute about that then.

16             MR. ROBERTSON:  No, sir.  But let me just say, I've

17   been asking about these individuals forever in this case, and

18   Mr. McDonald is exactly right.  These individuals were

19   identified in the SAP case which is all the more reason.

20   They've known about it.  They've had the transcript since early

21   on.

22             If they were going to call these witnesses, I wanted

23   to know that, and I asked that, Your Honor, every opportunity I

24   had that I appeared before you either in person or

25   telephonically.  And so I find out April 9th, after pressing

1    and pressing and pressing, that suddenly we're going to call

2    all these witnesses who they have known about since last

3    summer, and now I need to do it, and it's not in the

4    court-ordered invalidity contentions.

5              Your Honor, you'll recall, we had a fairly, I

6    apologize, contentious conference call a month ago, on

7    March 26th, and it's in my letter.  At the time, I said, I need

8    to know who these witnesses are because I need to depose them.

9    If I depose them, it will identify other relevant witnesses

10   that I might want to call, rebuttal witnesses that I might need

11   to call.

12             Nobody was identified.  I had a conference call after

13   Your Honor issued an order in which I said, who are you going

14   to call as third-party witnesses.

15             At the time, only Ms. Eng and Ms. Fielder were

16   identified, but after that, Your Honor, we had a follow-up,

17   after the April 9 invalidity contentions came out, and I told

18   Mr. McDonald at the time that we were going to object to

19   anybody else who was outside of the Court-ordered invalidity

20   contentions.  That was the whole point, Your Honor, at the

21   time, when we said we need to know --

22             THE COURT:  Wait a minute, Mr. Robertson.  Lawson is

23   taking the position that there was an agreement to make

24   disclosure of these witnesses on April 9th and that four of

25   them were disclosed on April 9th.  Is it correct or incorrect

1    that there was an agreement to disclose them on April 9th?

2             MR. ROBERTSON:  Correct, Your Honor.

3             THE COURT:  Sorry?

4             MR. ROBERTSON:  It's correct, Your Honor.

5             THE COURT:  So there was an agreement to disclose

6    them on April 9th, and all but two of them were disclosed on

7    April 9th.

8             MR. ROBERTSON:  There's Mr. Lawson, Your Honor,

9    Richard Lawson, who, I guess, is the founder of Lawson who was

10   identified.

11            THE COURT:  Oh, yeah, I'm sorry.

12            MR. ROBERTSON:  So he's never been identified before,

13   and I guess we have a hard time, Your Honor, understanding why

14   this person, you know, was not known to Lawson's counsel prior

15   to last Friday.

16            THE COURT:  So there is Mr. Lawson.  That's mentioned

17   on Mr. McDonald's letter on page six at the bottom paragraph,

18   and that was on April 23rd.  So I guess here's where I am.  If

19   you all have agreed to have the disclosures made by April 9th,

20   then anybody that was disclosed by April 9th is something that

21   you've agreed to, and I don't need to consider that.  And if

22   that's wrong, I'd like to understand why that's wrong.

23            MR. ROBERTSON:  Your Honor, let me just address this.

24   I can live with that, Your Honor, and I think that's a fair

25   assessment of where we are in this thing.  The only thing I

1  would ask is if there's a witness who was not going to be
2  addressing one of the seven or eight prior art references that
3  you restricted Lawson to addressing in their contentions, that
4  that witness be excluded.  For example, Lawson is now raising
5  the fact they want to have a witness testify about their
6  alleged prior art system, a version 6.0, their own system.
7  It's not in the court-ordered invalidity contentions, and we
8  just think this is an argument to do an end-around of the
9  Court's order.
10          It's not proper for them to, on the one hand, not
11  give us contentions about it and the other hand say they're
12  going to call a witness to address it.  I don't know if that's
13  going to be Mr. Lawson, if it's going to be another witness,
14  but if it's not in what was required by the Court's order, then
15  we think this is just a kind of patent lawyer's argument to get
16  around an article three judge's ruling, and it's not
17  appropriate.
18          So other than -- anybody identified on April 9th that
19  is included in their April 9th disclosures as ordered by the
20  Court, I'll go depose and we'll move forward on this case.  I
21  would ask the Court's indulgence because I might need to name a
22  rebuttal witness or two, and I could probably do that by close
23  of business tomorrow, but I might need to do it by Monday
24  morning, because, you know, I did not anticipate having to take
25  depositions in, you know, Tulsa, Oklahoma, and Montana and

1    Texas and New Jersey in the next 13 business days.

2         MR. McDONALD:  Your Honor, this is Mr. McDonald.  If

3    I may respond on the Lawson system issue.

4         THE COURT:  Yes.

5         MR. McDONALD:  April 5th, actually even before we

6    sent out the supplemental list of witnesses, they served a

7    deposition notice on us, Lawson, specifically on the topic of

8    this prior system, this version 6.0 system, and we offered up a

9    witness on it, and then after they saw our invalidity

10   contentions, they asked us to clarify how we were going to use

11   it, which we did.

12        We explained it's relevant in a number of ways, but

13   one of them is certainly to provide prior art background

14   information here, and they've asked for that deposition since

15   April 5th.  We gave them a witness, we gave them a date, and

16   then all of a sudden we had radio silence from them.

17        And so they've known for awhile and asked about him

18   in a timely fashion.  We complied with the request in a timely

19   fashion, so I don't think there's any issue here about late

20   notice or prejudice regarding a witness on that old system.

21        MR. ROBERTSON:  If I could just respond, Your Honor.

22   This is Mr. Robertson.  Right after that deposition notice when

23   they sent us the Court-ordered invalidity contentions, they

24   said, see, Lawson 6.0 version is no longer part of our

25   invalidity contentions.

1          THE COURT:  They said what about that?

2          MR. ROBERTSON:  They said that the Lawson system was

3    no longer part of their invalidity contentions, and under the

4    circumstances, would you be willing to withdraw your deposition

5    notice.  We said, yes.  Given that it's not in the Court's

6    ordered invalidity contentions, we will withdraw it.

7          Immediately after that, they said, oh, no, we need

8    that deposition to go forward for other reasons including the,

9    quote, scope and content of the prior art and its relevance to

10   obviousness.  We said, hey, that's invalidity.  It's not in

11   your invalidity contentions as ordered by Judge Payne.  Why

12   should we go forward with that, and they gave us a host of

13   other reasons why it was relevant.

14         Judge, I mean, it's either in or it's out.  I mean,

15   if Mr. McDonald wants to represent to you right now that

16   Lawson's 6.0 version of its own software is part of its

17   invalidity contentions, I'll let him tell you that right now,

18   and then I'll show it to you, and you can decide for yourself.

19         MR. McDONALD:  Your Honor, we never said we weren't

20   going to use the Lawson prior art.  He's actually got it the

21   wrong way.  They asked us, are you going to use 6.0, because if

22   you're not, we'll withdraw our deposition notice, and we

23   specifically told them and clarified for them that yes, we are

24   using that, so you ought to go ahead and take the deposition,

25   and here's the name and here's the date.

1          So it's actually just the opposite of that, but it

2     is, obviously, a little unique when it's Lawson's own system

3     here compared to some of this third-party prior art, so it is

4     relevant to give the scope and contents of the prior art, but

5     also, you know, there's a bit of a dilemma here because a lot

6     of these features we don't think infringe.

7          They don't infringe in our current product, they

8     don't infringe in the old product either.  They are just

9     different, but we should be able to at least explain to the

10    jury, look, whether you think this feature satisfies this

11    element or not doesn't really matter because Lawson has been

12    doing that since the 1980s, and we want to be able to have the

13    right to say that, at least to give the jury that context, and

14    we made that clear.

15         Maybe they think it's a good point, so they decided

16    they wanted to try to withdraw that deposition notice from over

17    three weeks ago, but the issue here isn't prejudice or delay or

18    anything else.  It's that they don't want us to put in some

19    good testimony.

20         THE COURT:  The issue is whether you told them that

21    you weren't going to put it in.

22         MR. McDONALD:  We never said that.  We made it very

23    clear, it's background, it's prior art.  It's also relevant to

24    willful or intent-based issues.  It's relevant to the existence

25    of non-infringing alternative technologies, because certainly a

1    prior art system is not going to be something that's covered by

2    the patent, and, you know, we've explained actually a number of

3    ways in which that information is relevant, and we've gone on

4    record with them on that, put that in a letter.

5         THE COURT:  Mr. Robertson, did I misunderstand that

6    you said they told you that the Lawson 6 system was not going

7    to be part of their invalidity case?

8         MR. ROBERTSON:  Did not misunderstand me, Your Honor.

9    In fact, I'm happy to forward their invalidity contentions, and

10   if you can find the Lawson 6.0 version system anywhere in those

11   invalidity contentions that were ordered by Your Honor, then I

12   will back away from my statement right now, but it's not there,

13   Your Honor, and this is just a backdoor way to try and get it

14   in and do this.  I find it ironic --

15        THE COURT:  Wait a minute, Mr. Robertson.  Apart from

16   the fact that the invalidity contentions do not contain the

17   Lawson 6 software, I had the impression that you were actually

18   told by someone representing Lawson, other than by its absence

19   from the invalidity contentions, you were affirmatively told

20   that they were not going to use the Lawson 6 as part of their

21   invalidity case.  Did I misunderstand?

22        MR. ROBERTSON:  No, sir.

23        THE COURT:  Who told you and when was it?

24        MR. ROBERTSON:  I believe it was -- I'm sorry, sir.

25   I believe it was Mr. McDonald's partner, Will Schultz.

1          THE COURT:  What did he say and what proof do you

2    have of what he said?

3          MR. ROBERTSON:  I don't have the e-mail right in

4    front of me, Your Honor, but maybe my partner, who may be on

5    the phone, Mrs. Albert, could pull it up, but I understood Mr.

6    Schultz to represent that given the fact that Lawson was not

7    relying on 6.0 version for their invalidity contentions, did we

8    still want to go forward with the deposition, and we responded

9    that, no, we didn't.

10         THE COURT:  Ms. Albert, do you have that e-mail?

11         MS. ALBERT:  I'm looking for it right now, but I

12   can't place my hands on it at the moment, but it is as Mr.

13   Robertson represented.

14         MR. ROBERTSON:  We can forward it to Your Honor

15   within minutes, I'm certain.

16         THE COURT:  Well, it looks to me like -- are we now

17   down to whether or not there's a problem with Mr. O'Connell,

18   Mr. Parsells, and Mr. Lawson?  Is that where we are now?

19         MR. ROBERTSON:  Mr. O'Connell is on a system, Your

20   Honor -- this is Mr. Robertson again, I apologize -- which is

21   not in their invalidity contentions.  It's a system called

22   Reality.  I don't think there's any dispute on their invalidity

23   contentions.

24         We think -- and that was just identified as of

25   Monday.  His deposition would be in Montana.  We think that

1    would be inappropriate.  We will observe that Judge Spencer

2    instructed testimony from the SAP trial, but I'll leave that

3    just as an aside.  I just think it's late notice.

4              THE COURT:  Wait just a minute.  Okay, let's take Mr.

5    O'Connell.  He wasn't in the invalidity contentions, and they

6    say they learned of him on April 23rd and told you thereafter.

7    So --

8              MR. ROBERTSON:  Your Honor, he was identified in the

9    SAP trial.  They've known about him for 11 months.

10             THE COURT:  But, I know that there's always

11   rejoinders to every word that comes out of somebody's mouth.

12   There shouldn't be, but, unfortunately, I'm still learning that

13   there are, but at this juncture, Mr. McDonald, you identified

14   this person late, and he wasn't in your -- Mr. O'Connell, and

15   he wasn't in your invalidity contentions or a system, that he's

16   going to testify to a system that wasn't in your invalidity

17   contentions, so why should you have him?

18             MR. McDONALD:  This is Dan McDonald speaking.  Your

19   Honor, we're not relying on him to support our invalidity

20   arguments.  We're relying on him with respect to damages.

21   Arguably we could have called him in rebuttal, but the

22   situation here is that ePlus is contending that the patented

23   technology was this wonderful commercially successful

24   technology, but what Mr. O'Connell will testify to is that he

25   had his own procurement system which Fisher Scientific

1    purchased from him through an acquisition in 1999, well after

2    they purportedly came up with their own German technology.

3    It's to show that their system was not successful.  He said

4    their system was a flop, and that's why they bought his system

5    out.  So their system isn't worth much.

6           That's what he's here for.  He's not here for

7    invalidity.  Those events in 1999 actually postdate the patent,

8    so to bring this up in the context of invalidity contentions is

9    two ships passing in the night.

10          THE COURT:  So he's not going to testify about

11   invalidity at all?

12          MR. McDONALD:  That's right.

13          THE COURT:  Now, Mr. Robertson, is there any reason

14   why he can't testify on the topic of damages?

15          MR. ROBERTSON:  Well, I mean, Your Honor, I've had an

16   interrogatory out since last August, and this is the first time

17   I've ever heard this theory articulated about Mr. O'Connell.

18   You know, they've known about this gentleman for 11 months,

19   sir.  It's not like he's been hidden in this case.  They could

20   have identified him before 13 business days when I have to go

21   take his deposition in Montana and call a rebuttal witness,

22   Your Honor.  I mean, if you're going to permit --

23          THE COURT:  Wait a minute.  Have they previously

24   disclosed him as a witness, as a person who has knowledge on

25   damages?

1          MR. ROBERTSON:  No, sir.  In fact, the first time I

2    heard of it was just this very moment.  He was identified to us

3    on Monday of this week.

4          THE COURT:  All right.  And the topic is damages; is

5    that right, Mr. McDonald?

6          MR. McDONALD:  Yes, Your Honor, it is, or the lack of

7    value of the technology.  That's --

8          THE COURT:  I'm not sure that's damages, is it?

9          MR. McDONALD:  I think that would be primarily how he

10   would be used, but it's certainly relating to activity that

11   postdate the filing date of the patent, so we're obviously not

12   talking about prior art with him.  But --

13         THE COURT:  Was there a date -- is there anything

14   that controls the date for disclosure of witnesses?  There's

15   the Rule 26 disclosures.

16         MR. McDONALD:  I think -- what I recall, Your Honor,

17   whether it was a letter and/or court order was that -- this is

18   McDonald speaking again, I'm sorry -- that the parties have to

19   disclose witnesses in sufficient time for them to be deposed

20   before discovery closes which is May 18th.

21         THE COURT:  Well, A, O'Connell is not going to

22   testify about invalidity, and, Mr. Robertson, they have a duty

23   to supplement their interrogatory answers, and they've given

24   you a short trigger on it, and is this the guy in Greenough,

25   Montana?

1          MR. ROBERTSON:  Yes, Your Honor.

2          THE COURT:  That's a very distant place.

3          MR. McDONALD:  This is McDonald again.  We did a

4     deposition this week, Your Honor, by phone, and I'm not sure

5     this guy is going to talk for more than an hour.

6          THE COURT:  Well, you've got to fly into Missoula,

7     and then you drive about an hour north of Missoula to get

8     there.

9          MR. McDONALD:  But we did take one by telephone where

10    none of the lawyers had to drive anywhere.  We just had a court

11    reporter sitting with the witness.

12         THE COURT:  That's up to you all.  It looks to me

13    like -- is there any reason why he can't -- he can't testify --

14    if he testifies only as to the lack of value of the invention?

15    Mr. Robertson, if it's confined to that?  Looks to me like --

16         MR. ROBERTSON:  Your Honor, I understand.  You know,

17    I don't think he has any value to add to that, and I'm just

18    worried it would be a back door to try to invite invalidity,

19    but I guess I can address that --

20         THE COURT:  Well, if he does, I will assure you, if

21    he mentions one thing about invalidity, he'll be stopped from

22    testifying, and there will be no issue.

23         Now let's take Mr. Parsells.  That was disclosed a

24    week late.  Is that on invalidity or not, Mr. McDonald?

25         MR. McDONALD:  Yes, Your Honor.  Mr. Parsells would

1   be on the prior art system.  We actually just talked to him the

2   first time on the 26th, even a couple days after we disclosed

3   him.  We disclosed his name as soon as we got it from the widow

4   of this Mr. Taylor.

5           THE COURT:  So it's a late-disclosed witness.

6           MR. McDONALD:  Yes, but we believe we have good cause

7   for that, Your Honor.

8           THE COURT:  That's because --

9           MR. McDONALD:  The agreement we had did allow the

10  parties to further supplement after April 9th.  I think this is

11  a quintessential example of the situation where that would be

12  appropriate.  It was a name nobody heard of before until we had

13  investigated it, and immediately we disclosed it.

14          THE COURT:  Well, it looks to me like that you didn't

15  talk to the widow until mid April, according to your own

16  language, so that's hardly diligent inquiry into the matter,

17  and -- I'm going to allow you to depose him, Mr. Robertson, but

18  I'm not sure he's going to come in and testify.

19          I'm going to have to hear more about why it is that

20  you all think you can put these inquiries to witnesses out and

21  then say, oh, we just discovered him.  When you put them out

22  there so late, the natural result is going to be that you just

23  discover them, and then you cram everything into the back end

24  of the period.

25          So I wouldn't count on having him in, and Mr. Richard

```
 1    Lawson, now, for the first time they say that you informed them
 2    that Mr. Richard Lawson was going to be called.  Why is he
 3    coming to testify?
 4            MR. McDONALD:  This is McDonald speaking again, Your
 5    Honor.  Lawson has about 4,000 employees, and it was in the
 6    course of developing the story on the 6.0, and we've got other
 7    witnesses on that issue, I would acknowledge that, but Mr.
 8    Lawson, as we talked to people who talked to other people and
 9    led us to other people, found out that he was really a guy that
10    wasn't just kind of the boss of the company, but he was really
11    in the front lines there going back to even the '70s as well as
12    the '80s that had some personal knowledge of some of the facts
13    regarding the early Lawson systems that was relatively unique,
14    and so, sure, obviously the name Lawson is a name, I guess, I
15    have to admit, we could have identified earlier, but we've got
16    a lot of employees, and it wasn't necessarily intuitive that
17    you'd go to the CEO to talk about prior art related issues.
18            THE COURT:  Well, it is to me intuitive.
19            MR. McDONALD:  (Inaudible) in the course of talking
20    to people that we identified him.
21            THE COURT:  Well, it is to me.  It's certainly
22    intuitive you'd talk to the founder of the company about the
23    system that he's using, and he's the one who helped develop it
24    and pay for it, for Pete's sake.  This is another situation
25    where -- where is this deposition?
```

1           MR. McDONALD:  We would be bringing it to Virginia.

2           THE COURT:  Well, I'm not sure he's going to be

3     allowed to testify, but I'll have to abide the event and let

4     you all brief that later.  You can depose him, Mr. Robertson.

5     If you need some extra time because of all these late

6     witnesses, you are certainly -- I'll extend the time for you.

7           MR. ROBERTSON:  I understand, Your Honor.  I

8     appreciate that.  Obviously we think that, you know, Mr. Lawson

9     should have sprung to their mind immediately, and, you know,

10    but, again, I think they're trying to backdoor this Lawson 6.0

11    version.

12          THE COURT:  The Lawson 6.0 version is not in as prior

13    art unless it was listed among the prior art that was filed on

14    April 9th.  Was it or wasn't it?

15          MR. ROBERTSON:  No, it wasn't, Your Honor.

16          THE COURT:  Well, that's that simple.

17          MR. McDONALD:  We dispute that, Your Honor.  The

18    document will speak for itself.  I understand you can't decide

19    that now when we're both saying opposite things.

20          THE COURT:  I have to see more about it, but I can

21    tell you one thing.  If it's not in that answer, that

22    disclosure, it's not coming in.  I'll leave it for another day,

23    a motion in limine to be dealt with or a motion later in

24    connection with summary judgment or whatever I have to do to

25    consider what it is the facts may be on that particular

1   question, but the bottom line is if he wasn't told -- if he

2   wasn't -- if that system wasn't disclosed, there's going to be

3   no discussion about it.  All right -- as prior art.  All right,

4   what else?  Anything else?

5           Basically then we've resolved the disputes; is that

6   right?  You're going to go take the depositions.  Do you want

7   some more time, Mr. Robertson?

8           MR. ROBERTSON:  Yes, Your Honor.  In fact, what I'd

9   like, with the Court's indulgence, is I need to caucus with

10  some of my colleagues.  There may be two or three rebuttal

11  witnesses to the witnesses that Your Honor has permitted the

12  depositions to go forward that may need to be called, because

13  they dispute what some of these individuals will be

14  representing about some of the prior art in the systems that

15  are involved.

16          THE COURT:  Okay.

17          MR. ROBERTSON:  Obviously if I had the opportunity to

18  take the depositions earlier, I might have uncovered additional

19  witnesses, but I'll have to see what comes out in the

20  depositions as I move forward, Your Honor, and I'll bring that

21  to the Court's attention at the earliest opportunity.

22          So I guess that's where we find ourselves.  We've got

23  to wrap up.  I do need a little bit more time, Your Honor, in

24  order to get this done, and my expert report on validity is due

25  June 3rd, and apparently I'll be taking depositions through

1    May 20th and beyond.

2              THE COURT:  No, no, wait a minute.  All these people

3    are going to be made available in one location at a time that

4    is convenient.  That's these nine people I guess we're talking

5    about.  When are you taking those depositions?

6              MR. McDONALD:  This is McDonald, Your Honor.  We have

7    already been in negotiations with ePlus to set up their

8    depositions, but many of these people are third parties not

9    affiliated at all with Lawson or any party, and we can't make

10   them go anyplace other than where they live.

11             That's part of why we need depositions of these

12   people.  We have already developed dates.  All of the dates I

13   think we've got for all the witnesses go up to and before

14   May 18th, but if we do need to bleed past that, we'll certainly

15   work with counsel for ePlus to accommodate that, but we cannot

16   make them all available in one location.  We have no power to

17   do that.

18             THE COURT:  You can do that, Mr. McDonald.  You can

19   do it.  All you have --

20             MR. McDONALD:  How could I do that?

21             THE COURT:  You go to them and you tell them you'd

22   like them to come to a nice place to have their deposition

23   taken, and you'll fly them there and back.  That's how you do

24   it.  You'll be nice to them and give them a nice hotel room,

25   and then everybody goes -- then the other side doesn't have to

1    pay the price for all this late work that you've been doing,

2    and if they don't want to come, then the deposition has to be

3    held where it can be held under the federal rules.  I'm aware

4    of that.

5         MR. McDONALD:  I understand that.  We can at least

6    make that effort, Your Honor.  We will certainly do that.

7         MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

8    If I'm not mistaken, most, if not every single one, of these

9    witnesses that have been late-identified by Lawson are

10   consultants and are being paid an hourly rate.

11        THE COURT:  Is that right, Mr. McDonald?

12        MR. McDONALD:  We've got some agreements with some of

13   them which is certainly going to give us that additional

14   leverage to get them to a location.  That's true.  We don't

15   have agreements with all of them.

16        THE COURT:  If you have agreements with somebody, you

17   bring them to Mr. Robertson to testify, because they are under

18   your control, or they don't testify.  If they are paid

19   consultants, they come where it's right for them to come.  If

20   they're not paid consultants, then the rules are different; all

21   right?  Do you understand?

22        MR. ROBERTSON:  Your Honor, just one last thing I'd

23   like to ask, before the depositions if Mr. McDonald could

24   forward all those consultancy agreements to me so I can

25   understand the hourly rate that these witnesses are being paid.

```
 1              THE COURT:  Sure.  He'll do that, won't you?

 2              MR. McDONALD:  Yes, I will, Your Honor.

 3              THE COURT:  I'm sure you have them all at one

 4    location so you can send them out by Monday.

 5              MR. McDONALD:  Whatever location they are in, we can

 6    certainly get them out by Monday.

 7              THE COURT:  I'm sure they are.  Okay, anything else?

 8              MR. ROBERTSON:  No, sir.

 9              THE COURT:  All right.  Goodbye.

10              MR. McDONALD:  Thank you, Your Honor.

11              MR. ROBERTSON:  Thank you, Your Honor.

12              THE COURT:  Thank you all.

13

14                   (End of proceedings.)

15

16

17              I certify that the foregoing is a correct transcript

18    from the record of proceedings in the above-entitled matter.

19

20

21    _____           _____
      P. E. Peterson, RPR                      Date
22

23

24

25
```