IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION


EPLUS, INC.,

            Plaintiff,

       v.               Civil Action No.
                       3:09CV00620

LAWSON SOFTWARE, INC.,

            Defendant.


Before:  THE HONORABLE ROBERT E. PAYNE, JUDGE

HEARING ON EPLUS' MOTION TO STRIKE


May 24, 2010


Richmond, Virginia


CHANDLER and HALASZ, INC.
Shorthand Reporters
P.O. Box 9349
Richmond, Virginia 23227
(804) 730-1222
Reported by:  Tracy Johnson, RPR, CCR, CLR

Appearances:

                    GOODWIN PROCTER LLP
            By:  SCOTT LYNN ROBERTSON, ESQ.
                        and
               CHRISTIAN & BARTON LLP
            By:  CRAIG THOMAS MERRITT, ESQ.
              HENRY I. WILLETT, III, ESQ.
            attorneys, of counsel for Plaintiff




                    MERCHANT & GOULD PC
            By:  DANIEL WILLIAM MCDONALD, ESQ.
                        and
               TROUTMAN SANDERS LLP
              By:  ROBERT A. ANGLE, ESQ.
            attorneys, of counsel for Defendant

```
 1              (The hearing in this matter commenced at

 2              1:34 p.m.)

 3

 4              THE CLERK:  Civil Action No. 3:09CV00620,

 5    ePlus, Incorporated versus Lawson Software,

 6    Incorporated.  Mr. Scott L. Robertson, Mr. Craig T.

 7    Merritt and Mr. Henry Willett represent the plaintiff.

 8    Mr. Daniel W. McDonald and Mr. Robert A. Angle

 9    represent the defendant.

10              Are counsel ready to proceed?

11              MR. ROBERTSON:  Yes, Your Honor.

12              MR. MCDONALD:  Yes, Your Honor.

13              THE COURT:  Eplus' motion to strike.

14              MR. ROBERTSON:  Thank you, Your Honor.

15    Good afternoon.

16              THE COURT:  Good afternoon.

17              MR. ROBERTSON:  I'd like to address two

18    issues if I could with you today, Your Honor.  First,

19    I want to briefly discuss what I think are now the

20    uncontested facts with respect to the prior art

21    invalidity theories that are being advanced that were

22    not part of the court-ordered invalidity contentions.

23              And then secondly, I want to address this

24    argument that has now cropped up that's being offered

25    by Lawson suggesting that notwithstanding the Court's
```

1    clear directive that if it wasn't in the invalidity

2    contentions it wasn't coming into evidence, the

3    defendants are now suggesting, as I -- you may recall

4    I predicted, Your Honor, that it should come in for

5    other relevant reasons.

6              Indeed, Your Honor, on the very day that

7    we filed this motion, Lawson submitted supplemental

8    interrogatory answers in which it took invalidity

9    contentions that it had made previously in this case

10   that it had withdrawn and submitted them into the

11   answer to the damages interrogatory.  As transparent

12   as that, virtually verbatim, same words, even down to

13   where it says the claims are invalidated.

14             Now, what is that doing in --

15             THE COURT:  What does that have to do with

16   damages?

17             MR. ROBERTSON:  I do not know, Your Honor,

18   but I will address that in a moment.

19             But first, let me just suggest a few

20   things that I think are now conceded by Lawson.

21   First, there's no question that there's been new prior

22   art added to the Shamos expert report.  It's conceded

23   that Lawson version 6 was not in the court-ordered

24   invalidity statement, Lawson version 5, the Doyle

25   Patent.  The Dworkin Patent was only previously

1   offered for obviousness.  It's now offered as an

2   anticipatory reference.

3           At one point in what I think have been at

4   least four hearings directed to this issue, Your Honor

5   expressed frustration saying, There's not enough time

6   in my lifetime or yours to try a case with 28 prior

7   references and some 30-something different

8   combinations.

9           Your Honor, if I might hand up to you,

10  we've gone through the Shamos report now, and there

11  are more than 92 prior art references suggested as

12  combinations for obviousness.  So we've had some

13  serious backsliding here, Your Honor; from some

14  30-something to 92.  These are citations to the prior

15  art references and where they appear in the Shamos

16  report.  Now, as you can see, the multiple

17  combinations, I don't know how we'll get through

18  these, Your Honor, in two lifetimes if this is

19  permitted to come in in contravention of the Court's

20  order.

21          In addition, there's been new reliance on

22  materials and manuals that have been submitted.  The

23  number of manuals from the court-ordered invalidity

24  statement have more than doubled, from 6 to 15.  They

25  are cited in the Shamos report.  We think also that

1   was improper.  Your Honor's order was very clear,

2   stating back from even the first scheduling order,

3   that they were to identify the documents relating to

4   each prior art reference -- I'm quoting now -- "in a

5   complete and detailed explanation of what it alleges

6   that each listed prior art reference shows in a claim

7   chart form on an element-by-element, claim-by-claim

8   basis, including citations to the Bates numbers for

9   all those documents."  Your Honor incorporated that

10  into its second order.

11          THE COURT:  What order date was that?

12          MR. ROBERTSON:  I believe that order date

13  was -- the hearing was March 26th.  I believe Your

14  Honor's order was March 29th, the following Monday.

15          And Your Honor was very explicit in that

16  hearing we had on March 26th.  You said, I want you to

17  do it to them like I said; claim by claim and element

18  by element, what is it in the prior art that

19  invalidates it, and then you take the page of the

20  prior art and not only do you write it out, you

21  highlight it and you hand it to them.

22          Now, after Your Honor issued that order,

23  the defendants took it upon themselves to wait two

24  more weeks before it supplied us with the

25  court-ordered invalidity statement, and at that time

```
 1   they failed to provide us with the documentation
 2   highlighted in the manner that the Court required.  We
 3   had a meet and confer with them.  We asked them to do
 4   it.  They took another three days to comply with that,
 5   and they only rely on six manuals that were in the
 6   statement, and as I say now, we've more than doubled
 7   that number.
 8            THE COURT:  They have relied on six
 9   manuals.
10            MR. ROBERTSON:  Yes.
11            THE COURT:  When?
12            MR. ROBERTSON:  That was -- that were in
13   the court-ordered invalidity contentions, and now in
14   the Shamos report we have 15 in total.  So nine new
15   additional manuals.
16            Now, all this prior art, by the way, all
17   these manuals have been in possession of the
18   defendants for months; since at least September of
19   2009, many of them dating back to July of 2009.  In
20   fact, many of them bear the SAP Bates label on them
21   because they were subject to the SAP litigation and we
22   produced them to Lawson.
23            Now, for them to have that, not rely on
24   it, have us go through at least three hearings on
25   this, have the Court order them to cite to the manuals
```

1    that they're going to rely on to do that and then to

2    swap out with three weeks left in discovery and give

3    us a new expert invalidity report, we think that's

4    just improper, and we would ask Your Honor that you

5    enforce your order that you previously have given and

6    that they should have complied with.

7                 Let me just also state, Your Honor --

8                 THE COURT:  Which order?

9                 MR. ROBERTSON:  -- that there are new

10   invalidity theories.

11                THE COURT:  Which order?

12                MR. ROBERTSON:  I believe it's the

13   March 29th order, Your Honor.

14                THE COURT:  So you want me to enforce the

15   March 29th order?

16                MR. ROBERTSON:  Yes, sir.

17                They're arguing invalidity theories under

18   Section 101 of the Patent Act that were never before

19   in the invalidity contentions, nor in their

20   interrogatory answers.  They're now asserting that

21   several of our claims are so called hybrid claims and

22   they're, therefore, not patentable.

23                Now, nothing, Your Honor, has changed

24   about the language of the claims since the inception

25   of this case.  There was no reason for them to wait

1   until the Shamos report to suddenly come up with a new

2   invalidity theory based on the statute and the claim.

3   That's all that's required.  So that should not be in

4   the case either, Your Honor.  It's never been in

5   anything prior to the Shamos report.

6           THE COURT:  What do you mean, the hybrid

7   theory?

8           MR. ROBERTSON:  This hybrid theory.

9           In addition, Your Honor, just comparing

10   the conclusions in the court-ordered invalidity

11   statement with Mr. Shamos' conclusions, let me just

12   highlight a few.  For example, with the J-Con prior

13   art, the only allegation that was made was that one

14   claim of one of the patents was anticipated.  Shamos

15   now asserts that all 13 claims are anticipated.

16           With respect to this PO Writer prior art

17   they're relying on, there were only six claims that

18   they asserted were anticipated by that prior art.

19   Shamos now claims -- asserts all 13 are anticipated.

20           Again, with respect to this Gateway System

21   they rely upon, there were only two claims they

22   asserted were anticipated.  Shamos now claims all 13,

23   again, are anticipated.

24           And finally, with respect to this King

25   Patent they asserted, the original court-ordered

1    invalidity contentions identified only three claims as

2    anticipated.  Now Shamos says 11 of the 13 claims are

3    anticipated.

4              So that's my conclusion with respect to

5    the new theories, the new prior art, the new

6    obviousness combinations that are part of the Shamos

7    report that were not part of the court-ordered

8    supplemental invalidity contentions.

9              Let me just briefly address some of these

10   arguments that have now cropped up in an effort to do

11   an end run around the Court's order and incorporate

12   these in by urging that they are admissible for other

13   reasons.

14             First, Your Honor hit upon it; this what

15   are invalidity theories relevant to a damages

16   argument.  From what I can tell -- and this was

17   focused I think just even on Thursday, Your Honor,

18   when a letter was submitted to the Court in the guise

19   of a correspondence, which is really a surreply, that

20   somehow these invalidity theories are going to be

21   offered for purposes of suitable noninfringing

22   alternatives.

23             I'm going to leave aside for the moment,

24   Your Honor, how something goes from invalidating one

25   day to suddenly being noninfringing another.  I don't

1    know how that natural transformation occurs.  But

2    nevertheless, the key words in this theory they're

3    advancing of suitable noninfringing alternatives is

4    they need to be suitable alternatives.

5            Now, what does that mean under the case

6    law?  It essentially means that with little or no

7    effort, the defendant could adopt a noninfringing

8    alternative that would be accepted in the marketplace

9    and do it with little or no cost and it could move to

10   that rapidly.  So what they're suggesting, Your Honor,

11   is that somehow with this version 6.0 -- because

12   that's been the focus -- they could go back to some

13   16, 20 years ago and adopt software that is, by all

14   agreement, obsolete and start selling that to their

15   customers.

16           Now, I think the Court can take judicial

17   notice of the fact that the software industry is one

18   of the most competitive and cutting edge industries

19   that exist in our country.  It's comparable to saying

20   that Windows, which is now coming out with its new

21   Windows 7 operating system, could say we're going to

22   come out with a new operating system.  We're going to

23   call it Windows 7 and it's going to have the same

24   features and functionality of Windows '95 that we had

25   16 years ago and we're going to sell it to everybody

1  and make millions and billions of dollars on it.

2              It's just ridiculously absurd on its face.

3  They can't go back to software that is several

4  iterations ago, 16 years ago, been long obsolete -- in

5  fact, they're having a hard time even trying to come

6  up with someone who can demo it for us because they

7  run on obsolete mainframe computers.

8              And this isn't software like Microsoft

9  where they can sell it at $500 a disk.  This is

10 software that costs hundreds of thousands of dollars

11 and takes months to install and implement, and to have

12 their customers say, well, okay, we're going to do

13 that, pay you hundreds of thousands of dollars more

14 and take months of disruption and adopt 16-year-old,

15 obsolete software, it's just really absurd.  So, Your

16 Honor, we would suggest that this is simply trying to

17 backdoor evidence that Your Honor has already said

18 should not be admissible unless it was disclosed and

19 to use it for improper purposes.

20             And, in fact, what we really know what's

21 going on here is they want to get in front of the

22 jury, and without doing a rigorous invalidity

23 analysis, they want to suggest somehow that they're

24 really the inventors of it and they've had this stuff

25 around forever and they're really going to be arguing

1    invalidity arguments, obviousness arguments every time

2    they bring this software up.

3              Now, they've decided not to include it in

4    their invalidity contentions as ordered by the Court,

5    and it should be out.  There's no dispute now.  There

6    was some dispute before, but I understand they've now

7    conceded that it wasn't in the court order's

8    supplemental statement.

9              And it's no answer to say they had

10   previously cited it in an interrogatory, but what Your

11   Honor said -- and this was the quote -- fish or cut

12   bait.  They decided to cut bait on it.  And I think

13   when they made that decision pursuant to the Court's

14   order, they should have to live with it now and the

15   consequences and not permit this -- this transparent

16   attempt to get in through the back door what they

17   can't get in through the front door.

18             Finally, Your Honor, I want to just

19   address this argument that's been suggested that there

20   was something improper with Dr. Weaver's report, who

21   is our infringement expert.

22             THE COURT:  That's not before me.

23             MR. ROBERTSON:  Fine, Your Honor.  Then

24   with that, I would simply ask that the Court's order

25   be enforced and that they be confined within the four

```
 1   corners of that invalidity statement that they

 2   submitted to us on March 9th and not be permitted to

 3   have their expert rely on these new combinations of

 4   the --

 5               THE COURT:  March 9th?

 6               MR. ROBERTSON:  March 29th.  I'm sorry if

 7   I misspoke.

 8               THE COURT:  I thought the order was dated

 9   March 29th.

10               MR. ROBERTSON:  I believe that's what it

11   was dated.

12               THE COURT:  Well, was the submission of

13   prior art --

14               MR. ROBERTSON:  The submission was

15   May 3rd.  It was when the Shamos report --

16               THE COURT:  Which is it you -- no.  What

17   is it you're talking about you want them held to?

18   It's not the same day as the order.

19               MR. ROBERTSON:  The -- you're right, Your

20   Honor.  It was submitted to us on April 9.  That was

21   when they gave us the second supplemental invalidity

22   statement.  Thank you.

23               THE COURT:  Okay.

24               MR. MCDONALD:  Good afternoon, Your Honor.

25   May it please the Court.
```

1          THE COURT:  Excuse me just a minute.  What

2    is the date of the order, Mr. -- the docket number of

3    the order, Mr. Robertson?

4          MR. ROBERTSON:  I do not have that at my

5    fingertips, Your Honor.  Let me check and see if I

6    can --

7          THE COURT:  Do you have a copy?

8          THE CLERK:  It is March the 31st?

9          MR. ROBERTSON:  It may be an exhibit.  It

10   was filed on March 30, Your Honor, and it was dated

11   March 29.  I can hand up a copy to the Court if you'd

12   like.

13         THE COURT:  This order says, For the

14   reasons set forth in the March 26th conference call,

15   it's ordered that the defendant's motion to compel is

16   denied without prejudice.  The defendant may refile

17   its motion after compliance with the Court's

18   instructions regarding the specificity of the

19   invalidity contentions.  That's not the order that

20   you're talking about.

21         MR. ROBERTSON:  It's the only order Your

22   Honor issued after we had our hearing on March 26th.

23         THE COURT:  So really what you're talking

24   about is what's in the March 26 hearing?

25         MR. ROBERTSON:  Yes, sir, which is quoted

1    I believe extensively in our moving papers, beginning,

2    Your Honor, at page 4.

3                THE COURT:  All right.

4                MR. MCDONALD:  Good afternoon, Your Honor.

5    I'd like to start first with the issue on the Lawson

6    prior art and explain the -- what is and what is not

7    at issue here.

8                As you just read, that order that was

9    presented and decided by the Court in late March

10   related to a motion to compel that we had brought, and

11   the Court ordered then that we specify -- provide

12   further specifics and narrow down the art and the

13   combinations of art we were relying on in our

14   invalidity contentions, which we then did by

15   April 9th.  The timing on that was agreed by the

16   parties.

17               So this issue of compliance with the Court

18   order, we did comply with that by April 9th, provided

19   them with specifics.  The highlighting, Mr. Robertson

20   is correct; we missed that in the Court's oral order.

21   It was not, I don't think, in the written order, but

22   it was in the oral statements that we were supposed to

23   highlight.  Once ePlus brought that to our attention,

24   within the three days, we provided them with the

25   highlighting of the prior art, matching that up to the

1    element by element of the claims at issue.

2              So there is no issue as to whether we

3    complied with the March 29th order.  That's, if

4    nothing else, represented by the fact that that really

5    had not been brought up until after they got the

6    Shamos report.  If the problem was what we had done in

7    compliance with the March 29th order, you would have

8    thought that would have been brought up earlier, but

9    it was not.  We complied with that order.

10             Earlier in the case, there were 32

11   discrete references that had been identified in

12   invalidity contentions.  We narrowed that down greatly

13   in our supplemental contentions filed on April 9 down

14   to seven references, the RIMS System, which we

15   actually even divided that into two.  One is the

16   commercial embodiment of the RIMS System.  The second

17   is the '989 Patent that corresponds to that system,

18   the J-Con System, the SABRE System, the Gateway

19   System.  We referred to the TV/2 or Technical Viewer 2

20   System from IBM that's also referenced in the patent

21   and the King Patent and the Dworkin Patent.  And those

22   were the items set forth in our March 29th -- or

23   pursuant to the March 29 order.  We did what we could

24   to be very, very specific, and there has been no

25   dispute previously that we didn't comply with the

```
 1    court order.  So with respect to this Lawson prior

 2    art, we did not include that in the April 9th

 3    supplementation; that is true.

 4              One of the reasons we did not --

 5              THE COURT:  Lawson 5 and 6 --

 6              MR. MCDONALD:  Right.

 7              THE COURT:  -- are not included?

 8              MR. MCDONALD:  That's right.  We had

 9    identified the Lawson prior art system in a prior

10    invalidity contention, but not in the updated one.  We

11    took it out.

12              THE COURT:  What other ones do you agree

13    now that were not included so I -- just focus on the

14    ones that you say were included.

15              MR. MCDONALD:  I think the ones that would

16    be included I would say would be the J-Con, Gateway

17    and SABRE.

18              THE COURT:  Doyle was not included, right?

19              MR. MCDONALD:  Doyle was not included on

20    the April 9th, and we've agreed to take that out of

21    the Shamos report.

22              THE COURT:  All right.  And Dworkin?

23              MR. MCDONALD:  Dworkin was --

24              THE COURT:  You say it was.

25              MR. MCDONALD:  -- in the April 9th report.
```

```
 1   I don't think there's a dispute about that.

 2              THE COURT:  Well, he says there is.  All

 3   right.  So -- go ahead.

 4              MR. MCDONALD:  All right.  So --

 5              THE COURT:  See, I just think that you all

 6   are putting a lot of stuff in that you hadn't put in

 7   before.

 8              MR. MCDONALD:  I can appreciate that, Your

 9   Honor.  And can I give you a little of the context for

10   that?

11              THE COURT:  Yeah, but you did.  According

12   to your own admission, you've put a lot of things in

13   that aren't in your invalidity arguments before.

14              MR. MCDONALD:  We put in -- I'd say the

15   Lawson prior art was the biggest chunk of new

16   material, that's right, that was not in --

17              THE COURT:  How can that possibly come in,

18   then?

19              MR. MCDONALD:  Well, for a couple of

20   reasons.  The big one is the Markman order that came

21   out in between April 9th and the Shamos report on May

22   5th.  That had -- claim constructions were ordered by

23   this court that were broader than those proffered

24   either by ePlus or Lawson during the Markman process.

25              By making the claim constructions broader,
```

 1  that would bring in further prior art within their

 2  scope.

 3                THE COURT:  But which ones -- you just

 4  point to two?

 5                MR. MCDONALD:  Yeah, we pointed to two

 6  examples, Your Honor.

 7                THE COURT:  And you didn't explain how it

 8  was that they were made -- that the Markman hearing

 9  called for that information.

10                MR. MCDONALD:  Well --

11                THE COURT:  I don't understand it.

12                MR. MCDONALD:  Well, one example, for

13  example, is the means for building a requisition

14  where --

15                THE COURT:  We're not talking about

16  examples anymore.  We're talking about just the ones

17  that you -- you only gave two examples in your papers.

18  You can't give it in the papers and then come in here

19  and add more to it.  So we're only talking about what

20  is in your papers.  Now, let's do that.

21                I'm through with you all adding stuff.  I

22  don't think you all pay much attention to what's said

23  and you're about -- you're through getting -- acting

24  in that way because that's not how we run things.

25                Now, tell me how it is that the Markman --

1  where's -- I need the black binder that is theirs,

2  their briefs.  It's in the second brief in there on my

3  desk.  Is that the one that's from my desk?

4           THE CLERK:  Uh-huh.

5           THE COURT:  That's where I marked it.

6  What page of your brief is that discussed on?  I

7  thought I had marked it.

8           MR. MCDONALD:  May I grab my copy of the

9  brief, Your Honor?

10          THE COURT:  Sure.  I think it's on page 6.

11 There are two of them discussed.

12          MR. MCDONALD:  That's right, Your Honor,

13 pages 6 and 7 have two --

14          THE COURT:  All right.  That's the only

15 thing, then, that we're going to consider.  Because I

16 can't just go on and have things added in the oral

17 argument.  That's why we have briefs.  "Means for

18 building a requisition using data -- no -- yeah, using

19 data related to selected matching items and their

20 associated sources."  Now, tell me how that opens up

21 the door to Lawson 5 or 6.

22          MR. MCDONALD:  Well, Lawson 5 or 6 didn't

23 involve catalogs.  They have this Item Master that's

24 not a catalog.  In the definitions for that "means

25 plus function" clause that both parties had proposed,

1   the definition related to catalog items.  And so we've

2   italicized their requisition items, which is how the

3   Court defined the term.  The Court's definition is not

4   limited to catalog items, and therefore, the Lawson

5   prior art becomes more relevant because the Lawson

6   prior art did involve requisitions, it did not involve

7   catalogs.  So that's --

8              THE COURT:  So that's all he's going to

9   say about that.  Why does he need to say all this

10  stuff that's in the Shamos report?

11             MR. MCDONALD:  Well --

12             THE COURT:  I mean, all he can do is say

13  that.  That's the most he can say, what you just said.

14  That's the best he can say.

15             MR. MCDONALD:  Well, I think we're

16  entitled once we see the Markman decision and see that

17  the Lawson prior art now is relevant for many more

18  reasons.  But in the --

19             THE COURT:  No, it's not relevant for many

20  more reasons because you haven't identified many more

21  reasons.  You have identified two.  That -- see,

22  that's what you do; you float.  You float like a

23  butterfly over to here and then -- then you want to

24  add, by your floating, what it is that appears in

25  the -- in your oral argument.  That isn't what you

1    were to do.  You were to respond to what they said.

2    It is your obligation to say the Markman hearing

3    changed again, here's where it changed, here's what

4    we -- here's where in the Shamos report he addresses

5    that, and that's it.

6            What you want to do is this.  You want to

7    use the expert's report in the way that the Federal

8    Rules were changed to stop the Federal Rules from

9    being used as games because that's the way people used

10   to play the game.  They used to say, oh, well, now

11   we'll use the federal -- the expert's report as a

12   vehicle to bring into the case things that aren't

13   appropriate, and you all want to -- you do the same

14   kind of thing, and I just -- I'm worn thin with it

15   all.

16           MR. MCDONALD:  Well, it wasn't our intent

17   to --

18           THE COURT:  So you didn't tell me but two

19   ways in which the Markman hearing -- Markman ruling

20   changed the rules, and I understand the law on that

21   and that's -- it's correct that if the Markman hearing

22   changes the rules and you can show that it changes the

23   rules, then you're entitled to have some comment on

24   it.  But you did that.  In your brief, you pointed out

25   two things, and I want you to now show me the part of

1      Mr. Shamos' -- Dr. Shamos' report that corresponds to

2      the arguments you're making so that I can, in fact,

3      decide whether it comes in.  Tell me.  Where is it in

4      the Shamos report?

5              MR. MCDONALD:  Well, there are a couple of

6      sections to it, Your Honor.  The attachments,

7      unfortunately, they don't have page numbers.

8              THE COURT:  Just tell me.  Oh, yeah?  No.

9      The report.  I didn't tell you about any page numbers.

10     I want to know where in the report.  That's what we're

11     talking about now.  We're not talking about

12     attachments right now.  We're talking about in the

13     report.

14              You can't just attach things to an

15     expert's report and have that be the expert's opinion.

16     You -- you define what the opinion is, then what the

17     basis of it is, but the basis of it doesn't become the

18     opinion.

19              Now, tell me where in this Shamos report

20     is the text of the report that shows what it is that

21     he comments on that explains "means for building a

22     requisition using data relating to selected matching

23     items and their associated sources."  Where is it in

24     that report that we look to find that?  Then I can

25     make a ruling.

1          MR. MCDONALD:  Your Honor, it's in the

2     tables with the report.  It's not -- that particular

3     limitation discussion is not in the body of the report

4     at all.

5          THE COURT:  It's not in the report at all.

6          MR. MCDONALD:  Well, I consider it to be

7     in the report.  Both sides prepared their reports,

8     Your Honor, using these tables because with 13 claims

9     and all the claim limitations, I think both parties

10    found that it was a more effective way to communicate

11    to put this into the tables.

12         THE COURT:  Well, where in the tables is

13    it, then?  So first we know it's not in the report.

14         MR. MCDONALD:  Well, I consider the tables

15    with the report to be part of the report.

16         THE COURT:  No.  First we know it's not in

17    the report.  It's in the tables to the report.

18         MR. MCDONALD:  Okay.  Yes.

19         THE COURT:  All right.  So now I want to

20    go look at the tables.  I want you to show me the text

21    you're talking about.  Where is it?  Where are the

22    tables in here?  Is that the Exhibit 76?  Is that

23    in -- what --

24         MR. MCDONALD:  What I've got before me,

25    Your Honor, is the Shamos report that ePlus had

1  provided to the Court with the highlighting.

2           THE COURT:  All right.  Show me.  Which

3  exhibit is it?  Exhibit 1?

4           MR. MCDONALD:  No.  Exhibit 3 I believe is

5  the tables.

6           THE COURT:  All right.  Exhibit 3.  Where

7  is that, then?  What page is that?  This is a table to

8  his report, right?

9           MR. MCDONALD:  That's right, and these

10  pages, as provided here, do not have page numbers on

11  them, but I can show you.

12           THE COURT:  Do they have page numbers on

13  them on any version of it?

14           MR. MCDONALD:  I'm not sure if it was

15  presented as an Excel spreadsheet or what, Your Honor,

16  how it printed out in other versions.

17           THE COURT:  This is your expert's report,

18  right?

19           MR. MCDONALD:  That's right.

20           THE COURT:  Well, you should know how it's

21  presented.

22           MR. MCDONALD:  I can't remember if it had

23  page numbers on it.  I'm sorry, Your Honor.

24           THE COURT:  All right.  Well --

25           MR. MCDONALD:  But I do have some tabs

```
 1   here on a couple of pages.
 2              THE COURT:  Okay.  Well, give me some way
 3   to find what you're talking about.
 4              MR. MCDONALD:  Well, I could present to
 5   you what I have here.
 6              THE COURT:  Well, just -- I've got one
 7   here.  You just tell me what I'm supposed to look at.
 8              MR. MCDONALD:  If you look at Exhibit 3 --
 9              THE COURT:  There are headings.  Give me
10   the headings, and maybe I can find it that way.
11              MR. MCDONALD:  Do you have a version with
12   these tabs on it, these red tabs?
13              THE COURT:  Yes.
14              MR. MCDONALD:  Okay.  If you go to Exhibit
15   3.
16              THE COURT:  I got Exhibit 3.
17              MR. MCDONALD:  And then turn to the --
18   just past the fourth tab, and if you turn two pages
19   past the fourth tab --
20              THE COURT:  The fourth tab says Shamos
21   Opinion Re: Gateway, Lawson Prior Art System.  Is that
22   what it is?
23              MR. MCDONALD:  We're actually in Exhibit
24   3.  The fourth tab says --
25              THE COURT:  Yeah.
```

1          MR. MCDONALD:  Yes, that's correct.  The

2     fourth tab says Shamos Opinion Re: Gateway, that's

3     correct.

4          THE COURT:  The fourth red tab, and

5     then --

6          MR. MCDONALD:  And then if you go two

7     pages past that.

8          THE COURT:  All right.  And that says --

9          MR. MCDONALD:  You've got the Asserted

10    Claim language, and in the lower left there by 1c, the

11    limitation "means for searching for matching items

12    that match the entered product information in the

13    selected portions of the database."

14         THE COURT:  "Means for searching for

15    matching items that match the entered product

16    information in the selected portions of the database."

17         MR. MCDONALD:  That's right.  So the next

18    pages are talking about that.

19         THE COURT:  Not in the next pages.  What?

20         MR. MCDONALD:  Pardon?

21         THE COURT:  What do you mean the next

22    pages?

23         MR. MCDONALD:  Well, the specific page --

24         THE COURT:  This is nothing.  This doesn't

25    tell us anything.  This is an utterly unart- --

1  ununderstandable statement so far.  So where do I go?

2          MR. MCDONALD:  If you go three pages past

3  the one we just talked about.

4          THE COURT:  How do you think anybody is

5  going to understand what you're talking about?  You

6  need to hire experts that can communicate in English.

7  I can't understand this.

8          I've gone three pages further.  So now I

9  go three more pages further.  What do we find there?

10          MR. MCDONALD:  The third column is Shamos

11  Opinion Re: Lawson's Prior Art System.

12          THE COURT:  Well, wait a minute.  It's

13  very hard to read.  I don't see that.

14          MR. MCDONALD:  It would be also one page

15  past the next red tab.  Do you see there's four

16  columns on the page, with the third column saying

17  Shamos Opinion Re: Lawson's Prior Art System?

18          THE COURT:  No, it doesn't say that.  No,

19  it doesn't say that.  I can't find what you're talking

20  about.  Do you see that?  You all have got this so

21  botched up that the average person can't follow it.  I

22  don't understand where it is.

23          MR. MCDONALD:  Maybe if I saw your

24  version, Your Honor, I can turn to that page.

25          THE COURT:  I've got the same one you've

```
 1    got, I think.

 2              MR. MCDONALD:  Well, you did find the page

 3    that has the limitation "means for searching for

 4    matching items," right?  That was the last --

 5              THE COURT:  I don't know.  I've lost it

 6    now.

 7              I just think you've got to start all over

 8    again and do what I told you to do.  I think this

 9    man's report is basically useless.  You can't follow

10    it.  You don't know how to chase it around, or I can't

11    follow it.  How did I ever get to this report in the

12    first place, this -- I mean to this Exhibit 3 in the

13    first place?  He, in his report, did -- does he kick

14    us back to Exhibit 3 somewhere in his report?  Does he

15    do that?

16              MR. MCDONALD:  Oh, yes, definitely.  His

17    report cites to these tables, that's right, these

18    exhibits.

19              THE COURT:  Well, where does he say that

20    about the Lawson version?

21              MR. MCDONALD:  Well, this is the

22    limitation -- one of the two limitations discussed at

23    page 6 and 7 where he shows that the Lawson prior

24    systems have that limitation met in them now that it's

25    not limited to catalogs.
```

```
 1              THE COURT:  Where in his report does he
 2    say that?  You told me earlier that there wasn't
 3    anything in the report that talks about the version 5
 4    or 6.  The report is 76 pages long.  Now you just told
 5    me that he did, in fact, say that, and I don't see
 6    where he says that in his report.  So tell me where it
 7    is in his report.
 8              MR. MCDONALD:  Well, the report does not
 9    specify the element-by-element analysis, which I think
10    is what we're talking about right now.  So that's why
11    he's got the tables; to go through the element by
12    element for the 13 claims.  But maybe it would make
13    sense to talk about some different issues at this
14    point, Your Honor.
15              THE COURT:  No, it doesn't.  I'm going to
16    decide this one way or the other based on what you
17    tell me, and what I have is a bunch of material in
18    front of me that basically doesn't support what you're
19    saying.  Now, if you -- to the -- to the untrained
20    eye.  Now, maybe to your eye it does, and I'm telling
21    you to show me, walk me through where it is so I can
22    rule.  If you can't do that, then I'm going to rule
23    that this report is not comprehensible and that
24    therefore, it is not coming in.
25              MR. MCDONALD:  Well, Your Honor --
```

```
 1                    THE COURT:  I've had enough of this.
 2                    MR. MCDONALD:  I can appreciate that.
 3      It's --
 4                    THE COURT:  It is the -- this is the game
 5      of hide the pea, and it changes every time that
 6      something happens.
 7                    Now, I do understand the basic principle
 8      of law that if the Markman hearing necessitates some
 9      other comments from an expert, then perhaps that ought
10      to be allowed, but I first need to -- the predicate
11      for that is, A, what part of the Markman hearing does
12      that, and B, what part of the report then responds to
13      the Markman hearing.  And I have not -- I've gotten
14      you to tell me what part of the Markman hearing does
15      it, and I've got that language.  Now I'm looking for
16      B.  Where is the part that addresses -- of this man's
17      report that addresses it?
18                    Now -- that language, and that language is
19      "means for building a requisition using data relating
20      to selected matching items and their associated
21      sources."  And I don't have a page -- it's not in
22      his -- the textual 76 pages of his report you tell me,
23      so I've got to go look at a chart.  I can look at a
24      chart and I have no way through it except for the
25      number of red tabs I'm working on.  I can't -- it's --
```

1    what heading are we talking about?  It does at least

2    have headings; Shamos Opinion Re: Gateway, Lawson's

3    Prior Art Systems.  I don't know what part of this

4    Exhibit 3 you're talking about.

5             MR. MCDONALD:  Well, I'm talking about the

6    column that relates to the Shamos Opinion Re: Lawson's

7    Prior Art Systems.  And let me describe one more time

8    here.  If you can go past -- up to the fifth red tab

9    in Exhibit 3.

10            THE COURT:  Yes, in Exhibit 3.  Does

11   anything before that fifth red tab have anything to do

12   with what we're talking about now?

13            MR. MCDONALD:  I can't tell that it's

14   comprehensive, Your Honor, but I understand you're

15   going to limit me to what I can come up with right

16   now.  So this is the --

17            THE COURT:  Look, it's time to know what

18   you're talking about.

19            The other thing is if you all have got

20   this stuff so complicated you all don't understand it,

21   how is a jury going to understand it?  Is there

22   anything before -- you pointed me to something else,

23   and I didn't understand what -- why the something else

24   even applied.

25            MR. MCDONALD:  Well --

1          THE COURT:  And you said, well, let's --

2   I'll take you to another part of it, and that is on --

3   I've marked it here as "means for searching for

4   matching items that match the entered product

5   information in the selected portions of the database."

6          Now, I don't understand how that relates

7   in any way to "means for building a requisition using

8   data related to selected matching items and their

9   associated sources," which is what you were explaining

10  to me.

11         MR. MCDONALD:  This is the first one I

12  came to in my set.  It's actually -- corresponds to

13  the next paragraph that starts on page 7, Your Honor.

14  I apologize for the confusion.

15         THE COURT:  In other words, what I just

16  read from Exhibit 3 doesn't have anything to do with

17  the question we're talking about at all?

18         MR. MCDONALD:  Well, I thought it had to

19  do with both paragraphs, Your Honor.  Sorry if I

20  didn't understand.

21         THE COURT:  How does it?

22         MR. MCDONALD:  Well, the paragraph on page

23  7 talks about the "means for searching for matching

24  items in the database."  That's this limitation here,

25  "means for searching for matching items that match the

1   entered product information in the selected portions

2   of the database."  This is -- this corresponds to

3   that.

4            THE COURT:  No, it doesn't.  The term that

5   you -- let's go back to square one.

6            The term that you explained to me in the

7   brief, that was implicated by the -- the first of

8   those terms, that was implicated by the Markman

9   opinion is "means for building a requisition using

10  data relating to selected matching items and their

11  associated sources."  I said to you, tell me where in

12  his report there is -- he comments, your man Shamos

13  comments on that.  You said it's not in the report,

14  but it is in the charts.  Where in the charts is it?

15  It's in Exhibit 3.  Where in Exhibit 3 is it?  It is

16  behind the fourth red tab that -- in Exhibit 3 in the

17  version tendered by Lawson and it's this entry; "means

18  for searching for matching items that match the

19  entered product information in the selected portions

20  of the database."

21            Now, I don't see how this serves to

22  explain the thing we're talking about on page 7 of

23  your brief yet.

24            MR. MCDONALD:  You're right, Your Honor.

25  I was citing it to the other example in our brief, and

```
1    so --

2              THE COURT:  No.  Let's take the one we're

3    talking about.

4              MR. MCDONALD:  All right.  So if we go to

5    the sixth red tab.

6              THE COURT:  On the sixth red tab, the top

7    column on the left is Shamos Opinion Re: Gateway; is

8    that right?

9              MR. MCDONALD:  Mine says Shamos Opinion

10   Re: PO Writer.  Okay.  You've got the page that has

11   Gateway?  Is that page the one that's on the Gateway

12   column stating "the reference discloses a means for

13   building a requisition"?

14             THE COURT:  Wait a minute.  Let's see.  I

15   wonder if I got the right tab.  Okay.  The sixth red

16   tab has Shamos Opinion Re: PO Writer.  Is that where

17   we are?

18             MR. MCDONALD:  Yes.

19             THE COURT:  Now, what is -- what in here,

20   on that page, do we talk about?

21             MR. MCDONALD:  If you turn five pages

22   forward of that.

23             THE COURT:  Five pages behind that.  What

24   does the top column on the left say?

25             MR. MCDONALD:  Asserted Claims.
```

```
 1                THE COURT:  All right.  And the asserted
 2   claim "means for building a requisition --
 3                MR. MCDONALD:  Right.
 4                THE COURT:  -- that uses data obtained
 5   from said database relating to selected matching items
 6   on said order list."
 7                MR. MCDONALD:  That's right.
 8                THE COURT:  Now, how does that have to do
 9   with the quoted text in your report -- I mean in your
10   brief?  The part that you -- see, what we're trying to
11   do here is explain to me how it is that your man's
12   report explains what it is that's responsive to the
13   claim construction opinion.
14                MR. MCDONALD:  Well, this is the claim
15   element that corresponds to what's being discussed at
16   page 6 of the brief where, in a couple more pages past
17   that, the expert explains how the Lawson prior system
18   meets that limitation and it shows how the
19   limitation --
20                THE COURT:  Where?  I'm not talking about
21   a couple pages, this, that and the other.  You're
22   going to have to show me where it is that it does it.
23                MR. MCDONALD:  Right.  Well, if we go --
24                THE COURT:  We're hamstrung here by the
25   fact there are no pages and it's hard to find.
```

1          MR. MCDONALD:  It does make it difficult;

2     I agree.

3          THE COURT:  I just wonder if we're going

4     to get anywhere.  I wonder if you don't need to go

5     back home and try again.

6          MR. MCDONALD:  Well, you know, part of the

7     issue --

8          THE COURT:  I'm going to give them

9     whatever time they need to respond.

10          MR. MCDONALD:  I appreciate that, because,

11     I mean, we did have an expedited briefing schedule.

12          THE COURT:  Yeah, but that's irrelevant.

13     And you know why it's irrelevant?  Because you had a

14     lot of time to work with this expert on this report.

15     As far as -- I can tell you, this report is basically

16     useless.  It is way -- it is convoluted.  It is way

17     too long, but it doesn't relate the substance of the

18     opinions that are encapsulated and that perhaps

19     somebody who really was an engineer could -- could

20     understand related to something else in the chart, but

21     there's no way to understand what's in -- how the

22     chart relates to anything in this man's report.  You

23     can't do that from looking at -- comparing the charts

24     to the report.

25          MR. MCDONALD:  Well, it's very difficult.

```
 1                    THE COURT:  How am I going to solve the

 2      problem?

 3                    MR. MCDONALD:  Well, Your Honor, I -- I --

 4      I can see why you might want to limit the invalidity

 5      opinions of Dr. Shamos to those set forth in our

 6      invalidity contentions.  That -- those charts are very

 7      detailed.  His information does correspond, with the

 8      exception of what they have highlighted here, to the

 9      materials in the invalidity contentions.  And it is

10      explained, I think, in a relatively straightforward

11      way when you put those two documents together.

12                    What I -- if I may address, though, the

13      issue of the Lawson prior art for a moment on the

14      issue of its relevance to issues other than

15      invalidity --

16                    THE COURT:  Well, we're on another topic

17      then.

18                    MR. MCDONALD:  Well, yes.  And --

19                    THE COURT:  Where does this man even say

20      that?

21                    MR. MCDONALD:  Say what?

22                    THE COURT:  This expert.  Where does he

23      say it's relevant to things other than invalidity?

24                    MR. MCDONALD:  It's paragraph 105 of his

25      report.
```

```
 1              THE COURT:  All right.  Let me get that
 2    out.  All I remember was a very terse reference, but I
 3    don't know.
 4              MR. MCDONALD:  Well, it was not a lengthy
 5    reference, that's true, but whether or not the expert
 6    frankly says it's relevant to other issues or not, the
 7    context here is he's getting an invalidity report.  We
 8    were at least trying to give notice to ePlus that it's
 9    relevant for other reasons and to discuss, for
10    example, on the royalty issue.  You've got a couple of
11    issues here.  The Lawson prior art prior to 1994, that
12    could be invalidating prior art.
13              THE COURT:  Wait a minute.  Let's go back
14    to the rules here.
15              MR. MCDONALD:  Okay.
16              THE COURT:  You say paragraph 105.  Here's
17    what paragraph 105 says in its entirety:  Although the
18    identified art as cited herein is relevant to
19    invalidity, the fact that these systems existed in the
20    prior art may well be relevant to the case in other
21    ways.  For example, the existence of noninfringing
22    alternatives may be relevant to damages.  I do not
23    comment on these other potential grounds for
24    relevance, but I understand my analysis of the prior
25    art may be used for other purposes.
```

```
 1                    Now, who is it going to be used by?

 2              MR. MCDONALD:  It may be used by the

 3    damages expert.  And I appreciate that Dr. Shamos as

 4    the invalidity expert, based on this report, couldn't

 5    give any detail at all on the damages issue, but

 6    he's --

 7              THE COURT:  Basically, he doesn't even

 8    opine in paragraph 105.

 9              MR. MCDONALD:  No.  He does have an

10    explanation in the body of the report, though, about

11    the Lawson prior art system.  He's got some

12    description of the Lawson prior art system and its

13    functionality.  And that's something that our damages

14    expert would rely upon to say these are the options

15    Lawson had, not in 1994.  Mr. Robertson was talking

16    about, well, 16 years ago, that's this obsolete, old

17    system.  The hypothetical negotiation for the damages

18    for reasonable royalty don't take in place 2010.  They

19    would have taken place in 2001 based on ePlus' own

20    damages expert saying --

21              THE COURT:  Well, that's the law, isn't

22    it?

23              MR. MCDONALD:  Pardon?

24              THE COURT:  That's the law.

25              MR. MCDONALD:  Right.  Well, it's when the
```

 1  infringement purportedly began.

 2          THE COURT:  Right.

 3          MR. MCDONALD:  Not today.  And so that's

 4  when he says the infringement began.  Lawson had a

 5  version 8 system in 2001.  We should be allowed -- and

 6  whether Dr. Shamos doesn't say anything about it is

 7  fine with me.  I don't need Dr. Shamos to talk about

 8  this.  I just want to make sure here --

 9          THE COURT:  Well, I want to tell you right

10  now; Dr. Shamos is not going to say anything about it,

11  and the reason is because he didn't opine about it by

12  his own admission in paragraph 105.  And the Rules,

13  the Federal Rules say you give -- for an adequate

14  report, you give the opinion and the basis for the

15  opinion and -- you want me to get it out and read

16  it -- and then you've got to explain what you used

17  to -- what you relied on to get to that opinion, and

18  he doesn't do any of that with respect to how the

19  prior art could somehow be used other than as to

20  invalidity.  So he can't testify about that.  So

21  now -- I don't know what I'm ruling on beyond that.

22          MR. MCDONALD:  Well, that's what I wanted

23  to get clarified, Your Honor.  We maybe confused

24  things by putting it the way we did in his report, but

25  there was an issue here where ePlus had noticed up

1  Lawson for a deposition about its prior art systems,

2  and then when they saw that the Lawson prior art was

3  not in our supplemental invalidity contentions, they

4  said, oh, well, do we not need that deposition

5  anymore?  And we said, well, no, we want to make it

6  perfectly clear that the Lawson prior systems are

7  relevant for reasons other than invalidity, so you

8  better make sure you take that deposition so you can

9  get that background information.

10            THE COURT:  Yes, but that's not what's

11  before me today.

12            MR. MCDONALD:  Well, and if that's clear,

13  then that's fine.  As I understand it, the issue is

14  whether we're going to stop Dr. Shamos from talking

15  about the Lawson system as a prior art system and give

16  opinions on invalidity.

17            THE COURT:  Yeah.

18            MR. MCDONALD:  And that's a totally

19  different issue from whether or not the Lawson systems

20  that preexisted the hypothetical negotiation would be

21  at issue.

22            THE COURT:  I'm not ruling on that.  It

23  may very well be that you can't get it in, but I'm not

24  ruling on it today except that it cannot come in

25  through Dr. Shamos because he didn't, by his own

1   words, didn't opine pursuant to it on the topic.  So I

2   don't even know why the issue is here, to tell you the

3   truth, except I think they're trying to say that --

4   that there is no way that the invalidity -- that the

5   prior art can come in in context of any issue other

6   than invalidity, and therefore, you're just trying to

7   and end run on the fact that you can't get it in on

8   validity.  That's what I think your position is in

9   this argument.

10          MR. MCDONALD:  Right.  And that's why we

11  tried to make it clear within days of supplementing

12  our invalidity contentions that these systems are

13  relevant.  The dates are different.  It's 2001 is the

14  relevant date.  What prior Lawson systems are

15  available prior to 2001 on the damages --

16          THE COURT:  Wait.  That's on another

17  issue, though.

18          MR. MCDONALD:  Okay.

19          THE COURT:  I'm not ruling on it.  That's

20  not before me now.

21          MR. MCDONALD:  Okay.  That's fine.  Then

22  we do have an understanding on that.

23          And obviously, opinions about invalidity,

24  talking about invalidity as such, that's not the issue

25  on damages.  Those are obviously two discrete issues.

```
 1                   But I heard some discussion here mixing
 2       the invalidity opinion with the facts regarding the
 3       Lawson systems; what systems did Lawson have in those
 4       earlier years, how did they operate, what was their
 5       functionality.  Dr. Shamos' report, beginning at page
 6       31, provides the facts regarding how Lawson's prior
 7       art software worked.  Those facts summarized there --
 8       and that continues, I believe, to page 42 of his
 9       report.  Those would be facts that we believe our
10       damages expert can rely upon in rebuttal to the
11       royalty opinions of ePlus' expert to say this is some
12       evidence, this is factual information about --
13                   THE COURT:  Excuse me, though.
14                   MR. MCDONALD:  Sure.
15                   THE COURT:  Let me -- you're saying that
16       from 31 to 40 --
17                   MR. MCDONALD:  Forty-two.
18                   THE COURT:  -- 2 is not being offered for
19       invalidity.
20                   MR. MCDONALD:  Well, we had, but I
21       understand you're going to rule we can't use it for
22       that.  I'm now saying that we're --
23                   THE COURT:  I didn't rule anything.  I'm
24       trying -- I'm at the point where I'm trying to
25       understand what the Sam Hill you all are talking about
```

```
 1    and what it is that your expert -- now you're telling

 2    me that what you -- the paragraph that says -- starts

 3    at 117 and goes to page 41 -- 43, at paragraph --

 4    through paragraph 151.

 5              MR. MCDONALD:  Actually, it would be up to

 6    paragraph 144 on page 42.  That's the end of the

 7    Lawson discussion.

 8              THE COURT:  On page 42?

 9              MR. MCDONALD:  Yes.

10              THE COURT:  Paragraph 144.  All right.  Go

11    ahead.  So that is not being offered for -- as prior

12    art for invalidity.  It's being offered to explain

13    something else.  Is that the point?

14              MR. MCDONALD:  That's my point; that that

15    would be a separate reason of admissibility of this --

16    this opinion or this analysis, apart from invalidity.

17              THE COURT:  Yeah, but in that answer, you

18    didn't answer the question.  You said something to the

19    effect that's the reason why it would be related for

20    another reason as well.

21              Now, my question is back to square one.

22    Are you agreeing that this Lawson discussion from

23    paragraph 117 through 144 is not being offered by

24    Shamos on the issue of invalidity?  Do you agree with

25    that or disagree with that?
```

```
 1            MR. MCDONALD:  I disagree with that.  That

 2    was the intent.

 3            THE COURT:  All right.  Now -- all right.

 4    Now, why is it pertinent to the issue, why are these

 5    paragraphs pertinent to the issue of invalidity given

 6    that you did not disclose these in your supplemental

 7    invalidity contentions?  Why are they -- how do they

 8    get in, given that you violated the instruction that

 9    you were given?

10            MR. MCDONALD:  Because we did not violate

11    any instructions given to us, Your Honor.  We did

12    streamline our invalidity contentions in the

13    supplemental set on April 9th, but there were no

14    instructions to us that we had no opportunities after

15    that date under any circumstances to either, A,

16    further supplement those or, B, have any variation

17    whatsoever in our expert report from what's in those.

18    That was not in the order of the Court and we did not

19    understand it that way.  We certainly --

20            THE COURT:  You were told that if you

21    didn't have the prior art in these supplemental

22    contentions so people could understand what you were

23    talking about, it wasn't going to come in at trial.  I

24    don't know how on earth you could think you could get

25    it in by sticking it in an expert's opinion.  That's a
```

1    disingenuous argument, I think.

2              MR. MCDONALD:  Well, you have the court

3    order in front of you, Your Honor.  We certainly

4    understood the Court's desire that we limit and bring

5    down, pare down our invalidity contentions, but we

6    honestly did not understand that it was going to

7    become immutable on that date, regardless on either

8    what our expert thought or regardless of whether the

9    Markman decision of the Court deviated and went

10   broader than what we had proposed.

11             THE COURT:  You're just running on about

12   topics that are unrelated.  Now, if the Markman opens

13   the door, then we can talk about that.  What part --

14   tell me how you are confused by the text on April -- I

15   mean on March the 26th, beginning with page 4.

16             What is it that led you believe that you

17   could do what you've just said; get it in in an

18   expert's opinion, if you didn't put the contention in

19   in the supplemental contentions list?

20             MR. MCDONALD:  Well, these are the

21   initial infrin- -- excuse me.  These are the initial

22   invalidity contentions that we had supplemented.  This

23   would now be the second time --

24             THE COURT:  No, they're not supplemented.

25             MR. MCDONALD:  -- initial invalidity

1   contentions.  That's what they were called.  That was

2   what was at issue at that point, and we did not

3   understand that that was going to be a final version.

4   And if we misunderstood, I apologize, Your Honor, and

5   I understand that we're going to --

6                THE COURT:  Tell me what confused you in

7   this transcript so I'll understand.

8                MR. MCDONALD:  Well, there was no

9   statement that we could not make further deviations

10  after we supplemented, and moreover, there was really

11  no mention even pending at that point regarding

12  requiring us to comply.  The hearing before the Court

13  was actually our motion to compel regarding --

14               THE COURT:  Do you not understand that in

15  the give and flow of discussions things come up and

16  when you're told to do something by a court, you're

17  supposed to do it?

18               MR. MCDONALD:  Yes, and we did it.

19               THE COURT:  Well, you didn't do it.

20               MR. MCDONALD:  We came down and --

21               THE COURT:  You say, well, oh, I didn't --

22  I didn't think I had to do what the Court said.

23               MR. MCDONALD:  We did in good faith, Your

24  Honor, with paring down that list as much as we could

25  knowing what we knew on April 9th, and we did that in

1   good faith.

2             THE COURT:  You know what?  That will get

3   you a Coke in the words of Bear Bryant.  That wasn't

4   what you were told to do is pare it down as much as

5   what you knew.  You were told to put in the references

6   that you were going to live with for the case in your

7   supplemental filing.  That's what you were told to do.

8             What is the -- where is the page that says

9   that, Mr. Robertson?  You quoted it.

10            MR. ROBERTSON:  Your Honor, I believe it's

11  page 9 of the transcript:  You're not going to get

12  anything else -- the Court says -- okay, until you

13  straighten ourself out.  You're not getting anything

14  else.  That's the end of it.  I'm done negotiating.  I

15  think you've all gone off the deep end, and you all

16  have not gotten this thing organized the way that it

17  needs to be organized.  You came here.  You told me

18  you were going to --

19            THE COURT:  No.  I'm talking about where I

20  told them that if they didn't get it in -- you cited

21  it earlier, if they didn't list it, it's --

22            MR. ROBERTSON:  Let me see if I can find

23  it, Your Honor.  What you're supposed to do is --

24            THE COURT:  What page is it?

25            MR. ROBERTSON:  I believe it's page 7,

1  Your Honor.

2            What you're supposed to do is object, and

3  they haven't complied with the court order.  You told

4  them that they haven't.  If they don't comply, bring

5  it to the Court for a decision on that front instead

6  of arguing about it.  And you go on to say, I've never

7  seen any prior art references allegedly invalidating

8  references as crazy as this.  You are just going to

9  have to pick -- well, Your Honor, Mr. McDonald

10  objects.

11            Wait a minute, Mr. McDonald.  You told me

12  you were going to have seven or eight, and I want you

13  to do them like I said; claim by claim, element by

14  element, what is it that in the prior art invalidates

15  it, and then you take the page of the prior art and

16  not only do you write it out, you highlight it and you

17  hand it to them.

18            And then also, Your Honor, Exhibit D to

19  our motion to the April 29 conference we had on this

20  where we were discussing the second court-ordered

21  supplemental invalidity intentions, and the Court

22  indicates -- after there's a dispute about whether or

23  not the Lawson 6.0 version is in the supplemental

24  contentions, Mr. McDonald indicates the document will

25  speak for itself.  And then you state, I have to see

1     more about it, but I can tell you one thing; if it's

2     not in that answer, that disclosure, it's not coming

3     in.  I'll leave it for another day, a motion in limine

4     to be dealt with or a motion later in connection with

5     summary judgment or whatever I have to do to consider

6     what is -- it is the facts may be on that particular

7     question.  But the bottom line is if he wasn't told,

8     if he wasn't -- if that system wasn't disclosed,

9     there's going to be no discussion about it.  All

10    right.  That's prior art.  All right.  Anything else?

11                  And that's the April 29th transcript at

12    page 24 to 25.

13                  THE COURT:  Now, what part of that didn't

14    you understand you were supposed to do?

15                  MR. MCDONALD:  Well, on March 26th or

16    March 30th, Your Honor, we did not understand what you

17    said on April 29th.  You hadn't said before April 29th

18    that if it wasn't in that supplemental contention, it

19    would be out of the case forever.  It comes up April

20    29th.  Within six days of that date, we filed our

21    expert report.

22                  THE COURT:  Okay.  Mr. McDonald, I want to

23    tell you something.  The fault here is mine for not

24    hitting you in the head with a 2 by 4, and you played

25    cute with it.  And you're going to get by with it now,

1    but you're not getting by with being cute here

2    anymore.  You have botched up this case fairly well.

3            Now, I made a mistake.  I thought I made

4    clear what you were expected to do, and I should have

5    made it much clearer.  I see now what I'm dealing

6    with.  I'm not accustomed to having to deal with folks

7    who act like that.

8            MR. MCDONALD:  I apologize, Your Honor,

9    and believe me --

10            THE COURT:  I don't care one way or the

11    other.  I don't want to hear it.

12            I guess I have to deal with this, but

13    looking at Mr. Shamos' report, I find it to be the

14    blathering of somebody whom I can't understand.  And

15    there's -- there seems to be no nexus between this

16    Exhibit 3 and the report.  How is there a nexus?

17    Would you tell me that?

18            MR. MCDONALD:  Well, what it does is it

19    goes through the element-by-element analysis.  The

20    report itself talks about it.  It describes the

21    systems at issue in a little more general terms, just

22    what are they, the way the expert might opine about

23    that at trial while in front of the jury.  But he's

24    got these specific charts that I would envisualize

25    being exhibits, demonstrative exhibits for the jury to

1    see how the prior art --

2            THE COURT:  But they don't mean anything.

3    You know, you still have yet to tell me how one

4    reading the report could, in fact, relate to even know

5    to go to Exhibit 3.  Will you start with that?  How do

6    you -- show me where, if I have the report in front of

7    me, as I do, I'm going to go to the Exhibit 3.

8            MR. MCDONALD:  Paragraphs 260 and 271 of

9    his report at page 75.

10           THE COURT:  Hold on.  260 and 271.

11           MR. MCDONALD:  And --

12           THE COURT:  Just a minute.  I need to get

13   there.

14           MR. MCDONALD:  Okay.  Sure.  Pages 75 to

15   76.

16           THE COURT:  All right.  Where?

17           MR. MCDONALD:  Paragraph 260 refers to

18   those Exhibit 3 and 4 as the explanation for how all

19   the asserted -- and in conclusion, anyway, after the

20   prior 75 pages -- all of the asserted claims are

21   anticipated as explained in those exhibits.

22           So that would refer the reader to, okay, I

23   need to go look at those exhibits to see the

24   explanation for that in more detail than what's set

25   forth in the prior 74 pages.  The paragraphs at 270 to

1    273 similarly walk through the other grounds for

2    invalidity as set forth in Exhibits 3 and 4.

3              And 273 refers to the hybrid claims or

4    this issue of mixing method and apparatus elements in

5    the same claims.

6              THE COURT:  I don't want to hear about

7    that right now.

8              MR. MCDONALD:  Okay.

9              THE COURT:  I want you to show me how

10   anybody can take paragraph 260 and 271 and go to

11   Exhibit 3 and then understand what it means.

12             MR. MCDONALD:  Well, this is actually

13   pretty typical in terms of how experts set forth their

14   invalidity analysis.

15             THE COURT:  It may be typical in your

16   cases, but it's not typical in the way that I've seen

17   it done or the way that I've had here.

18             MR. MCDONALD:  Well, ePlus wasn't

19   complaining about the format here, Your Honor.  I

20   think they understood it, because they focused their

21   objections on specific issues regarding particular

22   pieces of prior art.

23             THE COURT:  I'm concerned about it because

24   I have to rule.  I'm confronted now with a lawyer who

25   says I didn't understand, I didn't understand, I

1    didn't understand that which was perfectly clear.  And

2    you understood it before the expert gave this -- gave

3    his report.  You understood it by then.  That's

4    April 29th.  You knew that, right?

5              MR. MCDONALD:  Well, we knew on April --

6              THE COURT:  Right?

7              MR. MCDONALD:  Yes.

8              THE COURT:  Yeah, you knew it.  So by the

9    29th of April, you knew it.  The problem is I didn't

10   put it all in one single order because I didn't

11   apprehend that you couldn't understand what was made

12   clear on the record, and so by the time that this

13   report comes out, you were told to do something.

14             Now, I'm trying to -- and you know you're

15   supposed to do something, and I'm trying to ascertain

16   how we can go back and -- and apply your grounds for

17   wanting relief from what you clearly understood on

18   April the 29th, or whatever it was.  April the 9th I

19   guess it was.

20             MR. MCDONALD:  No.  April 9th is when we

21   actually supplemented --

22             THE COURT:  All right.  April 29th I guess

23   it was.

24             MR. MCDONALD:  Yeah.

25             THE COURT:  And you tell me that you get

1   relief because the Markman opinion opened the door for

2   you, and you've told me that in two ways.  And then

3   you point me to this Exhibit 3 because the text, the

4   270-something paragraphs of the text of your report

5   doesn't deal with the construction in the Markman

6   opinion or how it is that that is -- that it's

7   necessary to use the Lawson systems in order to

8   explain that -- the invalidity argument as the claims

9   are interpreted.

10          So I'm now in a position of trying to

11   figure out how that -- to make that connection, and I

12   still don't know how to make it.  And I don't know how

13   to make it because there's no nexus.  You don't have

14   any idea that that nexus is supplied by paragraph 260

15   and 271.  It just doesn't fly.  That's just his

16   statement.  Well, you can go look at some documents

17   back here in the exhibits, no telling where, and

18   they'll explain why they're invalid.  That's what his

19   invalidity opinion amounts to.

20          MR. MCDONALD:  Yeah, that was --

21          THE COURT:  I can't even relate them.

22   Now, you help me relate them, I'm asking you to do,

23   and then I'll see the validity of your argument.

24          MR. MCDONALD:  All I can tell you about

25   that, Your Honor -- if it's not enough, it's not

```
 1    enough.  I understand that, but I'll tell you what we
 2    have on that is the expert going through these
 3    elements and saying that the Lawson prior systems
 4    satisfies those elements that correspond to the
 5    elements at pages 6 and 7 of our brief.
 6              He doesn't go on and explain that the
 7    construction is different of those elements in the
 8    Markman order versus something else.  I would
 9    acknowledge he doesn't go through that explanation.
10    And if that's not enough to let that in, I understand
11    what you're saying.  But that's what he did.
12              And when you do look at even those
13    preliminary invalidity contentions we provided that
14    did describe the Lawson prior systems, at least we
15    were consistent in terms of not contending that those
16    limitations were in there based on the constructions
17    that were being propounded earlier in the case.  So I
18    understand that, though.  I don't have more than that.
19              THE COURT:  I still don't know what you
20    said about how what he did in Exhibit 3 relates to the
21    first clause, the first term construed on page 6 of
22    the brief, which is your effort to explain to me why
23    the general principle that if the Markman brief --
24    Markman opinion changes things in some way, you're
25    entitled to address it, which is clearly the law, but
```

```
 1   I don't know how you're addressing it.  Tell me, how
 2   do I address it?  Where do I go here to see it?  I'm
 3   trying to find it on these pages --
 4             MR. MCDONALD:  Well, the --
 5             THE COURT:  -- in Exhibit 3.
 6             MR. MCDONALD:  You want to have page
 7   numbers now at this point?
 8             THE COURT:  Well, there's no page number.
 9   Exhibit 3.  There's no page number.
10             MR. MCDONALD:  Exhibit 3.  That's right.
11   What I have, for example, is -- if we go to those tabs
12   again, if you want to try to do that.
13             THE COURT:  It's the only choice I have.
14             MR. MCDONALD:  So the fifth red tab.  I'm
15   going to start with the "means for searching" first.
16             THE COURT:  "Means for searching for
17   matching items that match the entered product
18   information in the selected portions of the database."
19   Is that what you are talking about?
20             MR. MCDONALD:  Yes.  Just a minute.
21             THE COURT:  Or are you talking about
22   what's literally on the first page -- that's after the
23   fourth red tab.
24             MR. MCDONALD:  Yeah, the "means for
25   searching," you're right, that's after the fourth tab.
```

```
 1   If you go past the fifth red tab to the very next
 2   page, so this is a continuing discussion of that
 3   "means for searching" element.
 4              THE COURT:  So --
 5              MR. MCDONALD:  This one has got the top of
 6   the page that says Shamos Opinion Re: Gateway in the
 7   left column.  The third column says Shamos Opinion Re:
 8   Lawson's Prior Art System.
 9              THE COURT:  That's the tab.  That's the
10   fifth red tab.  The page after it says Shamos Opinion
11   Re: Gateway.  Is that what you want?
12              MR. MCDONALD:  No.  Go to that page -- if
13   that was your fifth page, it wasn't mine.  But if your
14   fifth tab says Shamos Opinion Re: Lawson's Prior Art
15   System, that's what I'm looking for.
16              THE COURT:  The fifth tab says -- the
17   fifth red tab in Exhibit 3, the very first column on
18   the left says Shamos Opinion Re: Gateway.
19              MR. MCDONALD:  Okay.
20              THE COURT:  Then the next heading says
21   Lawson's Prior Art System, paren, Per Supplemental
22   Invalidity Defenses.
23              MR. MCDONALD:  Okay.  That's the page I'm
24   talking about.
25              THE COURT:  Okay.
```

```
 1              MR. MCDONALD:  In the third column, then
 2    it's got the Shamos Opinion Re: Lawson's Prior Art
 3    System.
 4              THE COURT:  What does it say?
 5              MR. MCDONALD:  It -- I can summarize it.
 6    I assume you don't want me to quote it verbatim.  But
 7    my point is this is where he talks about how that
 8    "means for searching" is satisfied by the Lawson prior
 9    art system.
10              THE COURT:  His opinion is Lawson's prior
11    art software allowed for fields of product information
12    that partially describes an item to be entered via a
13    screen on the computer running Lawson's software,
14    period.  Is that it?
15              MR. MCDONALD:  Well, that's the first
16    sentence of it, but --
17              THE COURT:  Well, that's the opinion.
18    Then he's giving you a reason; for example.  I mean,
19    you all have got to pay attention to what goes on in
20    the sentence structures of what you're offering here.
21              Okay.  For example, a user could enter an
22    item number for an item to search for a desired item
23    with that item number, and then he puts that in there,
24    period.  The item code is a key field, puts the key
25    field in there, that the system uses to access the
```

```
 1   data for information, and then there's a number.  As
 2   another example -- he uses two examples to back up his
 3   opinion, which is in the first line, right?
 4              MR. MCDONALD:  Yes.
 5              THE COURT:  All right.  A user could enter
 6   a generic name describing an item and search that way,
 7   and there's a number.  The user interface is disclosed
 8   as a search screen for Item Screen Code IC30.1, and
 9   then there's a number.  Okay.  Now, is the next part
10   of it there too; The user interface was a screen and
11   keyboard for which the user could enter information?
12   Is that part of it too?
13              MR. MCDONALD:  Yes, it is.
14              THE COURT:  Okay.  So that -- now -- and
15   he's there addressed what you say was opened up by the
16   Markman?
17              MR. MCDONALD:  Yes.
18              THE COURT:  "Means for building a
19   requisition using data relating to selected matching
20   items and their associated sources;" is that right?
21              MR. MCDONALD:  Yes.
22              THE COURT:  All right.  Now, is that it --
23              MR. MCDONALD:  I've --
24              THE COURT:  -- or do we need to go to the
25   next one, the next example, the next -- the next thing
```

```
 1   you told me that the Markman opened up was -- what's
 2   the next one?
 3              MR. MCDONALD:  The "means for building a
 4   requisition. "
 5              THE COURT:  Well, where is it?  That's
 6   what I'm saying.
 7              MR. MCDONALD:  In the brief or in the
 8   chart?
 9              THE COURT:  In the brief.
10              MR. MCDONALD:  Page 6.
11              THE COURT:  The corresponding structure
12   is?  Is that what you mean?
13              MR. MCDONALD:  Yeah.  That's the middle of
14   the paragraph discussing it.
15              THE COURT:  No, but is that -- is that the
16   claim construction that you say is --
17              MR. MCDONALD:  Yes, that's the one that
18   talks about the structure that the Court ordered,
19   that's right.
20              THE COURT:  All right.  So that's -- the
21   first one -- the first place where the Markman
22   construction opens the door is what we've already
23   talked about, "means for building a requisition using
24   data relating to selected matching items and their
25   associated sources."  The second one that opens the
```

1      door is "a requisition module operating on a computer

2      system having access to a database and its

3      equivalents," right?

4                    MR. MCDONALD:  No.  The first one we

5      talked about was the "means for searching," Your

6      Honor, that's on page 7.  That's the one we just went

7      to a few moments ago.

8                    Now we're talking about the second one,

9      which is the "means for building a requisition."  The

10     quoted language that you have set for the

11     corresponding structure is the actual court

12     construction of that second limitation.

13                   THE COURT:  And so you took the second one

14     first and now you're taking the first one second?

15                   MR. MCDONALD:  Right.  They're just in

16     that order in the chart.

17                   THE COURT:  Okay.  Now, where is -- where

18     is "means for building a requisition using data

19     related to a selected matching items and their

20     associated sources" located?  I've asked you that

21     about five times, and each time what you've answered

22     me is what appears actually on the top of page 7, the

23     "means for searching for matching items in the

24     database" term.

25                   But now we've gotten straight, I think,

 1    that what you've been talking about up to this point

 2    in Exhibit 3 relates to the statement on the top of

 3    page 7 that I just read, "means for searching for

 4    matching items in the database," and that's what

 5    you've been saying.

 6              Now -- trying to say.  But you've been

 7    responding to my question that related to the other

 8    term.  Now we're going on to the other term, "means

 9    for building a requisition using data related to

10    selected matching items and their associated sources."

11    Where -- where in Exhibit 3 is that text so I can see

12    what we're talking about there?

13              MR. MCDONALD:  Well, if we go to the sixth

14    red tab, Your Honor.

15              THE COURT:  That says Shamos Opinion Re:

16    Gateway?

17              MR. MCDONALD:  Okay.  And then if you

18    go --

19              THE COURT:  Is that it?

20              MR. MCDONALD:  It's not the same as mine,

21    but I found the page you're on.  So I can correlate to

22    that.  If you go three pages past that one, does that

23    have Asserted Claims in the upper left?

24              THE COURT:  Yes.  All right.  I've got

25    that.

```
 1              MR. MCDONALD:  All right.  This is the

 2   "means for building a requisition."  This relates to

 3   the selected matching items.  It's not the exact same

 4   means for building a requisition as set forth in the

 5   brief, but it's -- it's construed the means for

 6   building a requisition elements of the claims were

 7   generally construed similarly by the Court in terms of

 8   what's the corresponding structure, the requisition

 9   module.

10              THE COURT:  Well, let's get the exact

11   thing and see what we're talking about here.

12              MR. MCDONALD:  Pardon?

13              THE COURT:  I'm trying to get -- in

14   Shamos' exhibit here, 3, what it is you're talking

15   about that is in the first line of the last full

16   paragraph on page 6 of your brief, which is the second

17   item that you say is called up for special treatment

18   by the Markman opinion?

19              MR. MCDONALD:  Well, the Court's

20   construction of that is identical to the one on this

21   page, even though the means language is slightly

22   different than the exact one I've cited here.  The

23   corresponding structure, as quoted on page 6, is a

24   requisition module operating on a computer system,

25   having access to data and the database and its
```

1   equivalents.  That's the same claim construction as

2   set forth under the As Construed column.

3           THE COURT:  It may be the same in your

4   view.  I don't know whether it is or not.  I am

5   looking for the one that actually corresponds to the

6   text you used to tell me where the Markman opinion

7   opened the door for you.  Where is it?

8           MR. MCDONALD:  I don't have that one at my

9   fingertips.  I've got just the one with the exact same

10  claim construction by the Court.

11          THE COURT:  I don't know how I can rule on

12  it until I get it.

13          MR. MCDONALD:  I can try to supplement it,

14  Your Honor, if that will help.

15          THE COURT:  No, I don't want it

16  supplemented.  I want to deal with it now.  I am

17  trying to get this matter on track.

18          MR. MCDONALD:  I appreciate that.  Alls I

19  can say is this one does have the same claim

20  construction, and if you go another four pages, you'll

21  see where Dr. Shamos shows how that corresponds in the

22  Lawson prior system to that particular definition of

23  the corresponding structure for the means for building

24  a requisition.  Those are the examples I can give kind

25  of on the fly right now.

```
 1              THE COURT:  I don't know what to do.  I
 2    mean, you came in here with two examples in your brief
 3    and I would have thought you'd be prepared to point to
 4    the one that you're talking about.
 5              Are you saying that his opinion is
 6    virtually identical if I look at the references that
 7    you're telling me to look at, even though the words
 8    are different?
 9              MR. MCDONALD:  Well, because the claim
10    constructions of the Court are similar, yes, his
11    analysis, I believe, does track it where we've got the
12    same claim construction.  His analysis of the Lawson
13    prior art is also the same, if I recall correctly,
14    Your Honor.  I mean, I can try and figure that out
15    between today and tomorrow, Your Honor, and try to
16    give you specific cites as soon as possible.
17              THE COURT:  All right.  Anything else?
18              MR. MCDONALD:  Can I turn to the hybrid
19    claims issue for a moment?
20              THE COURT:  Yeah.  Where are they?
21              MR. MCDONALD:  They're at the supplemental
22    invalidity contentions at pages 134 and 137 and 140.
23    That was what we sent to the Court last Thursday, I
24    believe, that was highlighted in green, and it shows
25    that we did present the invalidity attack based on the
```

1    hybrid nature of mixing method and apparatus

2    limitations.

3             The only distinction here is that in our

4    invalidity contentions, that was labeled as an

5    invalidity grounds under Section 112, which is

6    indefiniteness.  Whereas in the Shamos report, that

7    was labeled as a Section 101 issue for statutory

8    subject matter.  And as we indicate --

9             THE COURT:  Aren't they different?

10            MR. MCDONALD:  Those are two different

11   statutory sections, that's correct.

12            THE COURT:  But you didn't then offer his

13   opinion as to 112.

14            MR. MCDONALD:  We did not use 112 in his

15   report, that's correct, Your Honor.  We're saying that

16   the substance was there.  To the extent --

17            THE COURT:  Substance of what was there?

18            MR. MCDONALD:  That he specifically says

19   the same thing we say in the invalidity contentions,

20   which is these particular claims of the -- I think it

21   was the '516 Patent were invalid because they

22   contained both system for apparatus and method

23   limitations.

24            So the substance was there a hundred

25   percent.  He just put the wrong statutory label on it

1    or a different label from what --

2              THE COURT:  What do you mean he put the

3    wrong statutory label on it?  I thought you were

4    offering his opinion to show that it was -- it's

5    invalid under Section 101.

6              MR. MCDONALD:  Well, that's what it

7    states.

8              THE COURT:  You're saying that's a typo?

9              MR. MCDONALD:  That was an error.  That

10   was an error.  It should have been 112.

11             THE COURT:  No.  Was it a typographical

12   error?

13             MR. MCDONALD:  I don't think it was a

14   typographical error, no.

15             THE COURT:  So his opinion is, as stated

16   in his report, is that it's invalid, the hybrid

17   provision is invalid under Section 101.

18             MR. MCDONALD:  That's what's stated in his

19   report.

20             THE COURT:  And there was no analogue to

21   that before in any of your earlier invalidity

22   contentions; is that correct?

23             MR. MCDONALD:  Well, the reference to

24   hybrid before in the contentions related to 112 and

25   not 101, if that's what you're getting to.

```
 1                    THE COURT:  Yeah, but there was no

 2      forerunner to 101.

 3                    MR. MCDONALD:  Not to 101.

 4                    THE COURT:  The 101 was new, right?

 5                    MR. MCDONALD:  That's right.

 6                    THE COURT:  Okay.  All right.

 7                    MR. MCDONALD:  We would just ask for

 8      leave, if that's necessary, to amend his report.  But

 9      you're right; there are two different statutory bases.

10      That's right.

11                    THE COURT:  All right.

12                    MR. MCDONALD:  The remaining issues had to

13      do with some other documents that supported the prior

14      art references that were identified in the invalidity

15      contentions on April 9; Gateway, SABRE and J-Con

16      references.

17                    THE COURT:  Wait a minute.  Is that in the

18      supporting documents?

19                    MR. MCDONALD:  Yes.  What I'm talking

20      about, the issue being that we had disclosed some

21      documentation in our invalidity contentions while we

22      said we were contending that those systems were prior

23      art back on April 9th, those same systems that are in

24      the Shamos report.  He relies on a couple more

25      documents to describe the same systems as were
```

 1   identified in the supplemental invalidity contentions.

 2              THE COURT:  And the systems are J-Con?

 3              MR. MCDONALD:  Right.

 4              THE COURT:  Gateway and what?

 5              MR. MCDONALD:  And SABRE.

 6              THE COURT:  And SABRE.  And he uses what?

 7              MR. MCDONALD:  He uses a couple of more

 8   documents that relate -- I think it's one more

 9   document on one of the two systems and two on the

10   other two that relate to the same systems.

11              THE COURT:  But what they say is that they

12   aren't just supporting documents.  They are, in fact,

13   prior art references.  That's what they're saying.

14   How do you respond to that contention; that the

15   documents that he -- how many documents are there, by

16   the way, that you've offered up?  How many,

17   Mr. Robertson?

18              MR. ROBERTSON:  Well, there are now 15

19   total, but many of them are manuals, Your Honor.  They

20   are very thick manuals.

21              THE COURT:  I'm not interested in how much

22   you have to read.  I'm interested in the total number.

23              MR. ROBERTSON:  The total are 15 now.

24   Only six were previously identified in the second

25   supplemental.

1          THE COURT:  Fifteen and six.  So you have

2   added nine documents.  They are great volume

3   documents, he says.  But how -- their point is that

4   those added documents are really prior art references

5   and you're trying to squeak them in because you didn't

6   get them in earlier.  You're saying they're just

7   supportive of the fact that something was prior art.

8   How can you explain your position further?

9          MR. MCDONALD:  It has to do with the

10  separate categories that qualify as prior art.  One

11  category is a printed publication, and that relates to

12  the case law they cite where if you're relying on that

13  particular subset of prior art or printed publication

14  like an article, then all of the elements of the

15  claim -- if that's going to be an anticipating

16  reference, all the elements of the claim have to be

17  within that single document.  There are other

18  categories of prior art other than printed

19  publication, and we cited them in our invalidity

20  contentions and in the Shamos report.  What's --

21          THE COURT:  What difference does any of

22  this make, though?

23          MR. MCDONALD:  Because the case law is

24  different on whether you can use additional supporting

25  documents to prove public use or on sale.  Those

1  are --

2            THE COURT:  But that's not what we're

3  talking about.  We're not talking about those

4  principles.  We're talking about a much more simple

5  issue, and that is that you added 15 -- you added nine

6  more documents as prior art to the prior art you

7  previously had articulated.

8            Now, I'm not following why your discussion

9  of these other theories is appropriate here.

10            MR. MCDONALD:  Well, because we believe

11  it's perfectly consistent with our original

12  contentions and even our supplemental contentions that

13  do specify those systems as on sale to simply have

14  extra documents that are relating to the same public

15  use or sale event.

16            We don't believe it is a significant

17  enough deviation here from the invalidity contentions

18  to preclude our expert from basing his opinion at

19  least in part on those additional documents.

20            THE COURT:  Did your invalidity

21  contentions to begin with involve prior sale?

22            MR. MCDONALD:  Yes.  We cited prior sale

23  and public use under 102b, in addition to printed

24  publication.

25            THE COURT:  Which references?

```
1              MR. MCDONALD:  For all three of those;
2    SABRE, Gateway and J-Con.
3              THE COURT:  No, no.  Which references fit
4    into that category?
5              MR. MCDONALD:  I'm not sure if I
6    understand what you mean by references.  You
7    mean which --
8              THE COURT:  Which prior art fit that
9    category that you previously cited?  You're now
10   telling me -- what you're trying to do is to say
11   you've previously put them on notice of this theory
12   that -- of a prior sale, and they say no, you have
13   added that as new, that's all new.  And you're saying
14   no, we put it in before.  And I'm saying in which of
15   the prior art references did you put it in?  Of the
16   six you originally posited, or seven, which did you
17   originally put it in?  Which one contains the proof
18   that it is -- was prior sale?
19             MR. MCDONALD:  Okay.  Well, the
20   document --
21             THE COURT:  Here.  If you're adding new
22   stuff, then you're out under their theory.  If you're
23   not, then you've got a different problem.  And you're
24   saying, well, we really are not adding anything new
25   because we had a prior sale issue and it was in
```

```
 1    that -- we identified the prior art -- the prior

 2    sale -- prior art that identified the prior sale and

 3    that's it.  So where is it?

 4                 MR. MCDONALD:  Well, we identified it in

 5    some -- and we also identified those six references to

 6    go with those three, the second supplemental

 7    invalidity contentions, and the witnesses we

 8    identified --

 9                 THE COURT:  I don't want to --

10                 MR. MCDONALD:  -- April 9th as well will

11    tell you that.

12                 THE COURT:  Give me the name of the

13    publication that you're relying on.  Maybe I'll try it

14    that way.

15                 MR. MCDONALD:  Okay.  In the original --

16    in the supplemental --

17                 THE COURT:  In the supplemental ones that

18    you were told to put it all together in one place and

19    list it precisely.

20                 MR. MCDONALD:  Pardon me, Your Honor.  At

21    page 3 of Lawson's second supplemental initial

22    statement of invalidity defenses, we describe the

23    specific documents that at that point supported the on

24    sale/on public use art as well as printed publication

25    for the SABRE, the J-Con.  And then for Gateway, it
```

1  goes from page 3 and continues to page 4.  Do you want

2  the specific Bates numbers?

3              THE COURT:  No.  I just want to know what

4  you're talking about.

5              MR. MCDONALD:  Okay.  Well, for the J-Con,

6  we talked about the J-Con manual, and we say that it

7  qualifies as prior art as in public use and on sale in

8  this country more than one year before the patent

9  application.

10              Then we say, Additionally, the J-Con

11  manual qualifies as prior art under 35 U.S.C. 102a as

12  a printed publication; again, more than one year prior

13  to the date of application.  So we set forth these

14  separate grounds for that qualifying as prior art.

15              THE COURT:  So what are you adding now?

16              MR. MCDONALD:  We've got a couple of

17  additional documents on each of those that describe

18  the system further that was on sale or in public use.

19              THE COURT:  I mean, it would take me --

20  I'd have to sit down and devote myself to nothing but

21  this case to follow which one of you is right.

22              MR. ROBERTSON:  I have no objection, Your

23  Honor, to their reliance on that document that's

24  identified there.  Like they said, my problem is

25  they've added three more now in the Shamos report.

1           THE COURT:  Yeah.  What about three more?

2    That's what I'm asking you.  How do you justify those?

3           MR. MCDONALD:  We justify those as -- with

4    the further analysis by the expert between April 9th

5    and May 5th --

6           THE COURT:  So he just did more work and

7    you put up more evidence.  Is that what it boils down

8    to?

9           MR. MCDONALD:  Yes, yes, Your Honor.  But

10   within 26 days, before fact discovery closed, in time

11   for our expert -- initial expert reports and in time

12   for ePlus to file a rebuttal expert report and take

13   the depositions from the witnesses regarding these

14   systems.  So we think it's timely.

15          THE COURT:  Look, Mr. -- I want you to

16   understand something.  All these -- when you're told

17   to do something, your right to rely on the fact that

18   it's X days before the fact discovery and such and

19   such don't count.  You can't play that game.  When

20   you're told to do something, you do it, and you do it

21   by the date you're told to do it, and if you don't do

22   it, there are consequences.  And your rationalization,

23   well, they have plenty of time left doesn't cut it,

24   and I wish you'd try to understand that.

25          MR. MCDONALD:  I'm sorry, Your Honor.

```
 1                THE COURT:  All right.  Anything else?
 2                MR. MCDONALD:  Well, the other category
 3     has to do with just an article -- I think two
 4     particular documents that are not themselves prior art
 5     references that were linking up element by element.
 6     It's this Baxter Healthcare article and then a report
 7     on various search engines that are available.
 8                Dr. Shamos does not use those in his
 9     charts.  He does use those in his report to give
10     background and context for what the state of the art
11     was at the relevant time to his invalidity analysis.
12                THE COURT:  How is that different from
13     prior art?
14                MR. MCDONALD:  Pardon?
15                THE COURT:  How is that different from
16     prior art?  How are those articles not prior art?
17     What's the other one?  Baxter article and what's the
18     name of the other?
19                MR. MCDONALD:  It's -- I'll call it the
20     search engine summary or report on available search
21     engines.  I can't remember the --
22                THE COURT:  How is that not prior art?
23                MR. MCDONALD:  Well, it would be prior
24     art, but it does not match as anticipating and it's
25     not being used to combine with other references under
```

1    103 as obviousness.

2              This is the sort of thing an expert would

3    do when giving his opinion to say, well, before I get

4    into the details of this particular prior art

5    reference or why you might combine reference A and

6    reference B, let me just give you the lay of the land

7    here as to what the e-commerce technology environment

8    was like back at the relevant time frame.

9              And that's what these things would be used

10   for.  They are not in his charts.  They are used to

11   support the references that we did use in our second

12   supplemental invalidity contentions.  And so that's --

13   that's the logic there.  It's supporting the original

14   contentions.  It's not saying that these particular

15   pieces of prior art invalidate the claims.

16             THE COURT:  All right.

17             MR. MCDONALD:  I believe that covers all

18   the issues, Your Honor.  Thank you.

19             THE COURT:  Mr. Robertson, take the

20   background that he just talked about, the Baxter

21   article and the search engine report.  He says it's

22   not being offered to show invalidity.  It's being

23   offered just to show the background of what was going

24   on in the industry at the time.

25             MR. ROBERTSON:  Sure, Your Honor.  Let me

1     address it by citing you the case of John Deere v.

2     Graham(sic), which is the Supreme Court case on

3     obviousness.  And the first step in doing the obvious

4     analysis is this background and scope of the prior

5     art.  So it is all about an obviousness analysis that

6     they're just, again, trying to backdoor by saying,

7     well, we're not really doing a full-scale obviousness

8     analysis.  We're just providing background and scope

9     of the art.  That's obviousness analysis.

10              In fact, I think we cited a thoughtful

11     opinion from a district court in the Western District

12     of Iowa, which was directly on point, saying that the

13     accused infringer cannot adroitly evade the

14     requirements of the scheduling order to show how prior

15     art invalidates the claims asserted by the patentee

16     simply by labeling something that's offered for

17     purposes of showing the level of skill in the art

18     because it is precisely such information about the

19     level of skill in the art that would be relevant to

20     show how prior art invalidates the claims asserted by

21     the patentee.  That's the Transamerica Life Insurance

22     case.  It's 255 F.R.D. 645 at 650, Northern District

23     of Iowa, 2009.

24              We think that's exactly what's going on

25     here, Your Honor, with respect to these new additional

1    references that were nowhere cited in the

2    court-ordered invalidity contentions.

3                If I could address this --

4                THE COURT:  What about the hybrid

5    situation?

6                MR. ROBERTSON:  No, sir.  That's -- oh,

7    I'm sorry.  You're asking me about the hybrid

8    situation?

9                THE COURT:  Yes.

10               MR. ROBERTSON:  Yeah.  Well, I think it's

11   very evident from argument of counsel that it clearly

12   was not in the invalidity contentions.  As I indicated

13   in my opening argument, there's nothing new about the

14   claims that couldn't have been known from the

15   beginning, and there's certainly nothing new about the

16   law that couldn't have been known from the beginning.

17               What really is going on here, Your Honor,

18   I believe, is another slight of hand.  Let me tell you

19   why.  They were originally in the form of Section 112

20   indefiniteness arguments, and now we somehow have

21   morphed into this 101 argument.  The reason I think

22   that is, Your Honor, is because the original argument

23   was that some of these claim elements could not be

24   construed because there wasn't structure in the

25   patent.  You may recall that from the Markman hearing.

1          And when the Court actually construes the

2     claims and is able to do that, then by law, under

3     Section 112 indefiniteness, they cannot be indefinite

4     because they were capable of construction.  I can get

5     you the case cite on that, but it's a recent case of

6     Enzo Biochem that came down from the Federal Circuit I

7     think within the last 60 days.  And I know that, Your

8     Honor, because I was actually invalidated -- I was

9     counsel of record in that case, and the claims were

10    invalidated as being indefinite.  And the Federal

11    Circuit said they weren't indefinite because they were

12    capable of construction.  So somehow this 112 argument

13    has now come back as a 101 argument.  So we think

14    that's improper, Your Honor.

15          I might just point out, Your Honor, that

16    in these -- you heard the argument that somehow the

17    Markman hearing changed the level of the playing

18    field.  Now, of course, we always anticipated that the

19    Markman hearing might come late in the case, and

20    indeed, Your Honor has an instructive case on that

21    issue, the Rambus case.

22          Plaintiff has always submitted its charts

23    using both the defendant's claim construction and the

24    plaintiff's claim construction.  In the second

25    supplemental court-ordered invalidity contentions -- I

1   only have one copy here, Your Honor, but I'm happy to

2   hand them up to you -- you'll see that they are

3   unencumbered by any kind of claim construction,

4   whether they were the defendant's or the plaintiff's.

5   They simply used the claim elements and then they had

6   it side by side with what they contended was the prior

7   art.  There was no reason they could not have done

8   that with the Lawson system.

9           And this argument that they didn't fully

10  appreciate what the Court was saying when it was

11  indicating to narrow its claims really doesn't ring

12  too true because you will recall, they did cite the

13  Lawson system initially, and then after the Court said

14  to narrow it down, they dropped the Lawson system.  So

15  they were able to do it before, and then they had to

16  fish or cut bait.  And they cut bait, and now they're

17  putting it back into the Shamos report.  So we think

18  that's entirely improper.

19          So when they were dealing with the second

20  supplemental --

21          THE COURT:  What does the April order that

22  you're relying on say?

23          MR. ROBERTSON:  The April order?

24          THE COURT:  The one where he says he

25  finally did understand it.  April 26th or something

```
 1   like that.

 2              MR. ROBERTSON:  I think it was the

 3   April 29th transcript.

 4              THE COURT:  29th.  What does that say?

 5              MR. ROBERTSON:  Excuse me, Your Honor.

 6              THE COURT:  I have the transcript of

 7   March the 26th here.  What's the April 29th

 8   transcript?  You got an exhibit on that?

 9              MR. ROBERTSON:  Yes, Your Honor.  I

10   believe it's Exhibit E to our moving papers.  So other

11   than anybody identified on the April 9th that is

12   included in their April 9th disclosures --

13              THE COURT:  Excuse me.  Do we have it?  I

14   don't see it.

15              MR. ROBERTSON:  Here, Your Honor.  I'm

16   sorry.  It's at page 24, starting at line 12, going

17   over to page 25, line 4.

18              THE COURT:  Wait a minute.  Let me see if

19   I can find it.  I have the Exhibit E, and I don't see

20   it.  Oh, wait a minute.  Here it is.  E.  Okay.  Yeah.

21   Okay.  What?

22              MR. ROBERTSON:  There was an argument

23   about Lawson 6.0 as to whether it was in the

24   court-ordered second supplemental contentions, and

25   there was a dispute between myself and Mr. McDonald,
```

1   and Mr. McDonald indicated that the document would

2   speak for itself.  And then the Court states, I have

3   to see more about it, but I can tell you one thing; if

4   it's not in that answer, that disclosure, it's not

5   coming in.  I'll leave it for another day, a motion in

6   limine to be dealt with or a motion later in

7   connection with summary judgment or whatever I have to

8   do to consider what it is the facts may be on that

9   particular question, but the bottom line is if he

10   wasn't told -- if he wasn't -- if the system wasn't

11   disclosed, we're not going -- there's not going to be

12   no discussion about it.

13            And when we received the Shamos report on

14   May 3rd, we saw the additional new prior art that we

15   had been referencing, including three additional --

16            THE COURT:  All right.  But let's go back,

17   then.  And the predicate for what was said in that

18   conference was the instruction given on March the

19   26th; is that right?

20            MR. ROBERTSON:  Yes, sir.

21            THE COURT:  And that is what appears on

22   page 8?

23            MR. ROBERTSON:  Yes, sir.

24            THE COURT:  And he says he didn't

25   understand that.  How do I deal with that, because the

1    order that came out of that conference doesn't

2    explicitly say that you're not keep -- if you don't

3    have it in, the supplemental list, you're not going to

4    have it in at all.

5              MR. ROBERTSON:  Well, Your Honor --

6              THE COURT:  And I don't believe that I

7    actually said that on March the 26th, did I?

8              MR. ROBERTSON:  Well, Your Honor, I think

9    it was clearly understood by the fact that you've got

10   prior art references that you are relying on and

11   you're citing to and then you drop them and then

12   somehow they reappear after the fact.  Why would

13   someone do that if the message wasn't clearly received

14   that they were going to have to narrow their issues

15   just as we did?  And, indeed, Your Honor, there is the

16   scheduling order in place that says they needed to --

17   and that's actually cited --

18             THE COURT:  What scheduling order is that?

19             MR. ROBERTSON:  It's Exhibit A, Your

20   Honor.  In fact, this was the subject of the first

21   hearing on the 26th.

22             THE COURT:  Hold on.

23             MR. ROBERTSON:  It's page 12 of that --

24   it's actually page 9 of the document.

25             THE COURT:  I can't lay my hands on it.  I

1    don't know whether we have it or not.  There's two --
2    several different orders.
3            MR. ROBERTSON:  Well, Judge, I actually
4    quote it on page 2 of our brief, if you have our
5    brief.  And this was, indeed, negotiated and
6    included --
7            THE COURT:  Pretrial Schedule A, Schedule
8    J3, which you all negotiated.
9            MR. ROBERTSON:  Yes, sir, and Your Honor
10   included it in the scheduling order.  And so that
11   actually gave rise to the first issue that we had on
12   March 26th.  And, indeed, Your Honor was citing that
13   when it ordered the defendants to comply with the
14   second supplemental invalidity contentions, including
15   a list of all the prior art in which it relies,
16   citation to Bates number of any documents produced
17   relating to each such prior art reference and a
18   complete and detailed explanation.
19           THE COURT:  And what had happened on March
20   the 26th is that they hadn't done that.
21           MR. ROBERTSON:  That's correct, Your
22   Honor.
23           THE COURT:  And I was telling them on
24   March the 26th what -- what you're required to do by
25   Exhibit A, Pretrial Schedule A, Section J3, is what is

1    recited in lines 1 through 8, page 8 of that

2    transcript; is that right?

3                MR. ROBERTSON:  That's what I understood.

4                And, Your Honor, just finally, this notion

5    that somehow the playing field was changed.  I mean,

6    we had a discussion with counsel for Lawson after your

7    order came out, and we contacted the Court and said

8    that we would jointly request an additional three days

9    in order to address Your Honor's ruling in that.

10               At no time did anybody say, oh, this

11   changes the playing field, we need new prior art.  And

12   imagine how the defendant would have howled if I said,

13   you know what, those 13 claims the judge told me that

14   I could try, I now need to swap out a whole bunch or I

15   now need to add ten more.  There would have been some

16   screaming going on.  We didn't do that, Your Honor.

17   We understood the rules of the game here, and we just

18   want them to be consistent and fair.

19               So we would ask, Your Honor, for the

20   relief that any opinions of Mr. Shamos be limited to

21   the invalidity contentions and invalidity arguments

22   and the documents and prior art that were cited in the

23   court-ordered second supplemental invalidity

24   contentions consistent with the scheduling order in

25   this case.

```
 1              Your Honor, we have eight business days

 2   left to go in this case.  We're doing Gateway

 3   depositions at my office today.  So we're being

 4   prejudiced ongoing as this thing has moved forward.

 5   We should have known what the prior art was back on

 6   April 9, and we've been preparing on that.  To shift

 7   now and have to address all these new issues, new

 8   theories, new prior art is just not fair, Your Honor,

 9   and not consistent with the Court's order.

10              THE COURT:  How did it get -- how did that

11   date get moved from April -- from December 8, 2009, to

12   April 9, 2010?

13              MR. ROBERTSON:  They submitted something

14   on December 8th, Your Honor, and I think they actually

15   supplemented at one point.  And what happened was we

16   were having a hearing with respect to a motion to

17   compel when Your Honor --

18              THE COURT:  That they brought.

19              MR. ROBERTSON:  Yes, sir.  Your Honor

20   observed that they had something like 28 prior art

21   references and 30-something-plus obvious combinations,

22   and now we're up to 92 obviousness combinations.

23              THE COURT:  Well, how are you prejudiced

24   if I give you more time to deal with the Lawson 5 and

25   6?
```

```
 1                    MR. ROBERTSON:  Your Honor, I don't want
 2      more time.  I'm prejudiced because we are -- this is
 3      very expensive litigation, as Your Honor knows.  We
 4      are coming to the close of discovery.  I don't want to
 5      have to take discovery of prior art systems, not just
 6      Lawson 5 and 6.  We don't draw the line at that.
 7      There's all these other documents and systems now that
 8      they are relying on, patents that they are relying on.
 9      They couldn't find that patent six months ago to tell
10      us about it?  They put it in a May 3 report for the
11      first time?  I'd rather not have to --
12                    THE COURT:  Which patent are you talking
13      about, Dworkin?
14                    MR. ROBERTSON:  The Doyle Patent, for
15      example.
16                    THE COURT:  Well, they've withdrawn that.
17                    MR. ROBERTSON:  Well, there's also the
18      Dworkin Patent.
19                    THE COURT:  They say that was in the first
20      one.
21                    MR. ROBERTSON:  It is, but only for
22      purposes of obviousness.  They have now added an
23      opinion from Dr. Shamos that it also anticipates.
24                    I want to just wrap this discovery period
25      up, Your Honor, and get on with the experts.  We have
```

```
 1    a very tight schedule from now through September 13th.

 2              THE COURT:  All right.

 3              MR. ROBERTSON:  Thank you.

 4              THE COURT:  Anything else?

 5              MR. MCDONALD:  Two quick points, Your

 6    Honor.  On the prejudice issue, last week we informed

 7    ePlus that we would actually be dropping -- and I was

 8    remissed in not mentioning this earlier.  We are

 9    dropping the SABRE prior art from our contentions and

10    from our expert report.  We were trying to schedule

11    the depositions for the related witnesses there, but

12    we've withdrawn that now, which is, you know, part of

13    our effort here in good faith to streamline it where

14    we can and hopefully reduce the prejudice to ePlus

15    with respect to discovery as to Lawson.

16              On the hybrid claim issue, I think I heard

17    Mr. Robertson saying, well, now we don't think we can

18    use the 112 indefiniteness argument because of this

19    new case, so now we have to go switch to the 101.

20    Actually, we're conceding that we can't go to 101.

21    We'll stick with 112, the indefiniteness invalidity

22    grounds, which we have in our invalidity contentions.

23    So if he's right, I guess we're going to lose that

24    defense, but that's --

25              THE COURT:  Isn't that what you just told
```

 1   me 15, 20 minutes ago?  You said that your man Shamos

 2   was offering the hybrid on the issue of Section 101.

 3              MR. MCDONALD:  That's what his report

 4   says.  But what I had indicated is I would concede

 5   that he's going to be limited and has to use

 6   indefiniteness under 112 because that is what is in

 7   our invalidity contentions, and we would live with

 8   that.

 9              THE COURT:  But he didn't offer an opinion

10   on 112.

11              MR. MCDONALD:  No, he didn't put it in

12   that term, that's right.

13              THE COURT:  So how can he -- I mean, he

14   can't testify about it because he didn't offer it.

15              MR. MCDONALD:  You know, it's a pure

16   issue, Your Honor, that I would expect would be more

17   of a summary judgment issue anyway, and you're

18   probably going to decide the law without the benefit

19   of the experts on it anyway.  So it, frankly, isn't

20   that critical to me one way or the other.

21              Finally, with respect to the scheduling

22   order with the example that ePlus provided, well, if

23   we had changed the number of claims, wouldn't that

24   have caused some issues.  Well, in that same

25   scheduling order --

```
 1            THE COURT:  You're talking about Pretrial

 2   Schedule A?

 3            MR. MCDONALD:  Yes.

 4            THE COURT:  Section J3 that you all agreed

 5   to?

 6            MR. MCDONALD:  Yes.  If you go two

 7   sections past that one to Section 5, it says, By

 8   December 29th, 2009, the plaintiff shall file a

 9   statement identifying the no more than 13 patent

10   claims it will assert at trial.

11            That's very specific about what they're

12   supposed to do and the limitation on it, and that --

13   and so certainly if they would have exceeded that,

14   that would be in direct violation of that particular

15   provision.

16            The one that they were talking about

17   regarding Lawson was paragraph 3, which was labeled an

18   initial statement identifying each of its invalidity

19   defenses.  This was something they had never -- when

20   we had filed that and we had supplemented it later in

21   December, I believe even before they limited their

22   claims to 13 claims, so we were still dealing with

23   more claims than that, they never complained about

24   that.  They didn't come back here and file any motions

25   about it.  It only came up in the context of our
```

1    motion.  So we believed it was in compliance, our

2    prior filings were in compliance with this --

3              THE COURT:  But it did come up as part of

4    your motion.

5              MR. MCDONALD:  Right.

6              THE COURT:  It was part of the discussion

7    we had that day.  But on that day, you were told to

8    go -- what you were supposed to do, which basically is

9    what you were supposed to do in number 3, paragraph 3

10   of Exhibit A, Pretrial Schedule A.  That's J3.

11             MR. MCDONALD:  Well --

12             THE COURT:  And you didn't do that in

13   respect of your first filing.  So you weren't -- you

14   were in violation of the order then.

15             Then you were told on March 26th to go do

16   it, and you then did it on April the 9th and you

17   limited yourself to the seven or eight, and now you've

18   expanded it again, it looks to me like.  How can that

19   be allowed to occur?

20             MR. MCDONALD:  Well, the April 9th was

21   after the Court said we had to do things like provide

22   this highlighting as to the specific documents.  That

23   wasn't -- this scheduling order wasn't that specific

24   as to what we did.  But once the Court indicated we

25   should do those exact things, we did those exact

1    things.

2              The number of references at issue now with

3    us dropping SABRE and Doyle and then simply seeking to

4    reinstate the Lawson prior art, which we had

5    previously given notice, the number of references is

6    still unchanged.  It's still seven or eight.  And we

7    don't think that unduly prejudices ePlus when they

8    have noticed up the deposition of Lawson about its

9    prior systems and haven't even taken the deposition

10   yet.  Thank you.

11             THE COURT:  All right.

12             MR. ROBERTSON:  Just briefly, Your Honor.

13   We were informed that the SABRE system was being

14   removed allegedly as prior art on Thursday last.  I

15   immediately e-mailed and said is it being removed from

16   the case for all purposes, and the argument is, oh,

17   no, it may be relevant for other issues, such as

18   damages or willfulness.

19             THE COURT:  That's not an issue that we

20   have today, is it?

21             MR. ROBERTSON:  Well, Your Honor, I think

22   if it's being removed from the case, it should be

23   removed from the case.  But --

24             THE COURT:  Well, is it removed from the

25   case or not?

```
 1              MR. MCDONALD:  Yes.  We've withdrawn our

 2    depositions of the witnesses.

 3              THE COURT:  It's out for all purposes.

 4              MR. MCDONALD:  That's fine.

 5              MR. ROBERTSON:  Thank you, Your Honor.

 6              THE COURT:  All right.  Well, the pretrial

 7    orders mean what they say, and in the

 8    original Pretrial Schedule A, paragraph J3, to which

 9    the parties agreed, the Court ordered that the

10    defendant shall file an initial statement identifying

11    each of its invalidity defenses with specificity, and

12    such statements shall also include a list of all prior

13    art on which it relies, including a citation by Bates

14    number of any documents produced relating to each such

15    prior art reference, and a complete and detailed

16    explanation of what it alleges that each listed prior

17    art reference shows in claim chart form on an

18    element-by-element, claim-by-claim basis and how that

19    prior art invalidates the claims asserted by the

20    plaintiff.

21              On March the 26th, the Court was hearing a

22    motion to compel brought by the defendants when it

23    appeared that there was an issue respecting the

24    invalidity contentions and defenses, and the Court

25    instructed that the -- said the following:  You told
```

 1    me you were going to have seven or eight, and we're

 2    talking about prior art references, and I want you to

 3    do them like I said, claim by claim, element by

 4    element.  What is it in that prior -- in the prior

 5    art -- what is it that in the prior art invalidates

 6    it, and then you take the page out of the prior art

 7    and not only do you write it out, you highlight it and

 8    you hand it to them.

 9              Basically, it is true, as the defendant

10    says, that the Court at that juncture did not tell the

11    defendants that if they didn't have it in the

12    supplemental list that had been ordered in the right

13    way, that they would have -- that it wasn't coming in

14    at all.  You don't have to be told that there are

15    consequences to disobeying scheduling orders.

16              But on April the 9th, there was a

17    subsequent filing, and the subsequent filing deleted a

18    number of the -- the prior art references, including

19    Lawson version 6 and 5.

20              During the course of that discussion on

21    April the 29th, there came up a discussion about

22    April -- about Lawson 6.0 version, and I said, Lawson

23    6.0 version is not in the prior art unless it was

24    listed in the prior art that was filed on April 9th.

25    Was it or wasn't it?

```
 1              Mr. Robertson:  No, it wasn't.

 2              Well, that's that simple.

 3              Mr. McDonald:  Well, we dispute that, Your

 4    Honor.  The document will speak for itself.  I

 5    understand you can't decide that now when we're both

 6    saying opposite things.

 7              And I said:  I have to see more about it,

 8    but I can tell you one thing; if it's not in that

 9    answer, that disclosure, it's not coming in.

10              Yet on May the 3rd, without coming to

11    court and saying they didn't understand the limits

12    that had been articulated on April the 29th and March

13    the 26th and the scheduling order, the defendants

14    listed a whole bunch of new prior art and invalidity

15    contentions; thereby frustrating the very purpose of

16    the order entered, Exhibit A, to the brief of the --

17    of the plaintiff in this motion, which is Pretrial

18    Schedule A, J3, which they -- paragraph J3, which they

19    agreed to.  And so if it's not listed on the -- if

20    something is not listed on the list of prior art filed

21    on April 9th, it's not coming in.

22              Now, there is a -- an exception to that

23    rule, and it's created by the decision of the -- of

24    the Court in Johns Hopkins University versus CellPro.

25    And while this case is not directly governed by
```

1  CellPro, it is analogous, and that is that the Markman

2  opinion gave constructions, and if a -- if -- if a

3  party can show that a Markman decision somehow changed

4  the rules of the game, then it is entitled to have

5  some relief in terms of subsequent discovery or

6  theories or prior art or invalidity contentions in the

7  event that that actually happens.

8          Now, I am told here that there are two

9  instances appearing on page 6 and 7 of the defendant's

10  brief in which the claim construction necessitated the

11  presentation of additional opinions.  One is -- and

12  just so the record is clear, we discussed this in

13  terms of -- in terms that somewhat confuse the record.

14          I kept asking about the first example --

15  or the first instance given by Lawson, and that

16  appears on page 6 of their reply -- of their response

17  brief, and it says, The Court's construction of "means

18  for building a requisition using data relating to

19  selected matching items and their associated sources"

20  was one place that was -- that the Markman -- the rule

21  of CellPro had to be applied.

22          Because of the very confusing nature of

23  Mr. Shamos' report and the exhibits to it, one of

24  which is Exhibit 3 and it wasn't numbered, counsel for

25  Lawson kept going to a place in the report which

1    actually, according to the discussion some 15, 20

2    minutes later, related not to that particular instance

3    when the Markman opinion changed the -- the rules,

4    but -- and activated CellPro in the view of Lawson,

5    but to another one.

6           The other one was on page 7 of the brief,

7    and it is the construction that the "means for

8    searching for matching items in the database."

9    Counsel has identified one place in the Shamos report

10   that deals with the "means for searching for matching

11   items in the database," and that's a matter of record.

12   And I -- I can't -- we've read it into the record.  I

13   can't refer to pages any more specifically than that

14   because of the page mechanisms used.  We were actually

15   referring to red tabs that were on the copy of the

16   exhibits that were attached to Lawson's brief in

17   opposition, but I believe those exhibits actually were

18   marked by -- I don't know who marked them.  You?

19          MR. MCDONALD:  EPlus marked the tabs.

20          THE COURT:  EPlus marked them.  And that

21   discussion even showed that the defendant's counsel

22   had a different -- slightly different version of that

23   exhibit than I had.  That is not a different version,

24   but a version where the tabs were marked on slightly

25   different nearby pages.

```
 1              But in any event, the record reflects that
 2   there was a description of one instance where Shamos
 3   gave an opinion and we went through his opinion line
 4   by line and it actually was a one-line opinion
 5   followed by two examples.  And that's clear in the
 6   record.  You all can straighten that out.
 7              There was no exhibit, no comparable
 8   showing of what part of the chart attached as Exhibit
 9   3 to the Shamos report that showed where and how
10   Shamos' opinion was necessary to address the term
11   "means for building a requisition using data related
12   to selected matching items and their associated
13   sources" as reflected on page 6 of the brief, and so I
14   don't have any basis for ruling on that.
15              But under the CellPro decision, the
16   brief -- the part of the opinion of Shamos which has
17   been shown, it appears to me to have relevance to the
18   claim construction, and I think that part that we've
19   identified falls under CellPro.  And I think to that
20   extent, his opinion can be -- can be the subject of
21   further discovery by ePlus.  And I -- I am not
22   convinced that, in fact, the claim construction
23   opinion did what Lawson is arguing it did as to that
24   particular reference, but for now, I am going to keep
25   it in.  If, in fact, it should be out, I'll deal with
```

```
 1    it at trial.  But I think they have made a showing
 2    sufficient that CellPro ought to operate there to
 3    allow the discovery to be taken and the opinion to
 4    remain at this time.
 5             The other I don't have any basis for
 6    making a comment on, for making a ruling on, so I am
 7    not going to be able to -- to rule.  I believe that
 8    the party arguing the application of CellPro has the
 9    burden to demonstrate how the claim construction
10    opinion necessitates listing additional prior art
11    opinions and references, and that hasn't been carried
12    here as to the second -- that is the -- the second
13    reference; that is on the one on page 6, and so that
14    can't be allowed, which basically means that to the
15    extent that version 5 -- Lawson version 5 and 6 are
16    dealt with in the opinion offered by Shamos in
17    response to the claim construction opinion section
18    that says "means for searching for matching items in
19    the database" can be considered further, subject to
20    revisitation at trial.
21             The others I have -- I believe Lawson has
22    not covered that basis -- covered its burden.  And
23    version 6 and version 5 were in their initial list.
24    They were going to pare it down.  They dropped it, and
25    then the addition of it keeps it out to -- and only --
```

1    but -- but it cannot -- excuse me.  It would keep it

2    out unless CellPro allowed it in.  But since they

3    haven't carried the CellPro burden, the second -- but

4    as to one of the two grounds, they say that the

5    Markman opinion necessitated further opinions by the

6    expert, then they can't have it but as to the one I've

7    indicated.

8                The issue of the hybrid opinion on --

9                The issue of the hybrid opinion on --

10   offered by Mr. Shamos, he offered -- apparently the

11   earlier references -- excuse me.  The earlier

12   references made reference to a hybrid situation giving

13   rise to a defense under Section 112.  The opinion of

14   Shamos says that the hybrid gives rise to an opinion

15   under Section 101.  He does not give any opinion on

16   Section 101 -- or excuse me.  He -- his opinion on

17   101, excuse me, was actually not in the invalidity

18   defenses that were tendered because the original

19   invalidity defense that was tendered is Section 112.

20   He gave no opinion on 112, so he can't testify on 112.

21   And so that objection to that part of his report on

22   the hybrid situation is sustained.

23               The Baxter article and the search engine

24   report appear to me not to be background on the state

25   of prior art but to be really a sub rosa effort to get

1   in some more prior art, and the rule of the

2   Transamerica decision adequately explains why those

3   documents cannot be used and he cannot testify about

4   them.

5              The other documents that are -- the other

6   category are documents supporting J-Con, Gateway and

7   SABRE.  The SABRE documents are out.  That means that

8   their issue is that the documents are offered to

9   support, according to Lawson, the J-Con prior art

10  references that were previously discussed.  And ePlus

11  says that they're really just the -- these three

12  documents are offered to really add prior art opinions

13  that are new.

14             It appears to me from the briefing that

15  the subsequent documents are, in fact, merely

16  additional prior art documents.  However, it is

17  possible that they can be construed as documents to

18  relate to -- as support for what they have already

19  offered.  And until I hear more about that from the

20  experts or from the lawyers, I don't believe I can

21  preclude them.  I'm inclined to preclude them, but I

22  don't have sufficient basis at this time to do that.

23  And so I'll have to await further briefing or

24  objection at the pretrial conference or demonstration

25  of fact from -- or briefing from the lawyers to help

1    me make that decision.

2              An order will be entered that says for the

3    reasons set forth on the record, the motion to strike

4    is granted for the reasons -- to the extent set forth

5    on the record, this transcript, which you can order

6    and then know what to do with.

7              Is there anything else that needs to be

8    done?

9              Look, folks, we need to get this case

10   under some kind of control here.  When the Court

11   issues orders, they need to be obeyed.  Schedules need

12   to be followed, and if someone needs relief from an

13   order, there's a way to do it; go make a motion and

14   say, look, this has happened, we need relief.  And the

15   Court has been available to decide those motions for

16   you on very short order, knowing you're on a tight

17   schedule.

18             So what have you all done about settling,

19   talking about settlement?  I don't believe we need it

20   on the record now.

21             (Discussion off the record.)

22

23             (The hearing in this matter concluded at

24             3:48 p.m.)

25

1                    REPORTER'S CERTIFICATE

2           I do hereby certify that the foregoing is a

3    true and accurate transcription of my stenographic

4    notes taken in this matter to the best of my ability.

5

6

7           /s/ Tracy Johnson 5/31/10
            Tracy Johnson, RPR, CCR, CLR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25