IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:09CV620 (REP) |
| LAWSON SOFTWARE, INC., | ) ) ) ) |
| Defendant. | ) |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN SUPPORT
OF MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF
SALES OF NONINFRINGING PRODUCTS AND SERVICES**

Defendant Lawson Software, Inc. ("Lawson") respectfully moves *in limine* to preclude Plaintiff ePlus, Inc. ("ePlus") from presenting evidence and argument relating to any products ePlus did not accuse of infringing. If ePlus proves infringement and if the patents are found to be valid, ePlus's damage base is limited to the revenues for those products that are found to infringe. In addition, ePlus seeks damages on license, maintenance, and service revenues. Services revenues are, as the name implies, tied to services, not products. ePlus's damages expert includes in his royalty base service revenues that unquestionably involve products that are not accused of infringing nor tied to infringing products.

The Federal Circuit has repeatedly warned that it is error for a patent owner to rely on sales of products or services beyond that of the products accused of infringing unless the patentee has proven the infringing product is the basis for demand, something ePlus has not even alleged in this case. For this reason, the court should exclude any evidence or argument relating to these non-accused products and services.

I.  FACTUAL BACKGROUND

In this case, ePlus seeks damages in the form of a reasonable royalty. The smallest functional unit for which Lawson recognizes revenues is based on a Stock Keeping Unit or SKU. Lawson has almost two thousand SKUs. Lawson recognizes license and maintenance revenue based on SKUs, but it recognizes service revenues based on customer. License revenue is the revenue for licensing the product. Maintenance revenue is the revenue for things like customer support and upgrades. Service revenue is the revenue for things like training and implementation.

During discovery, it was unclear which SKUs ePlus accused of infringement. Lawson provided sales spreadsheets based on its understanding of the products accused of infringement, and requested that ePlus provide it with specific SKUs. (Exh. 1.) ePlus responded that Lawson had the "best information as to which SKUs are relevant for purposes of this lawsuit" but provided a list of over 60 SKUs that it asserted might be relevant. (Exh. 2.)

On May 3, 2010, ePlus served the damages Expert Report of Russell W. Mangum III, PhD ("the Mangum Report"). Dr. Mangum asserted that infringement began in May 2002 and included in his proposed royalty base sales from certain combinations of thirty-one SKUs.[1] (Exh. 3 at Ex. 5.) In addition, he asserted that the royalty base should include service revenues

---

[1] The thirty-one SKUS are EBA (EDI Messages Ansi X12), EPP (E-Procurement Product), EPPH (E-Procurement Prod Healthcare), EPR (E-Procurement (M3)), FINPRO (Financial Procurement Package), HBP (Healthcare EDI Business Pack), IC (Inventory Control System), LSF (Lawson System Foundation), LTMPFI (Processflow Integrator LTM), M3EPP (Equip Profitability Management), M3EPR (E-Procurement), M3ERE (E-Procurement Reports (M3)), M3PUR (Procurement), M3WDT (E-Procurement Design Ctr Tools), PFI (Processflow Integrator), PFIEC (Processflow Integrat Existing), PFIP (Processflow Integ For BCI), PFP (Processflow Professional), PFST (Processflow Standard), PFX (Processflow Int W 10 Websphere), PHS (Procurement Process Suite), PO (Purchase Order System), PPS (Procurement Process Suite), PROC (Procurement Package), PUR (Procurement), RQ (Requisitions), SIP (Internal Procurement Center), SIPP (Procurement Self-Service Pckg), TCS (TCS EDI), ZLTCB

paid by customers who licensed combinations of the accused SKUs, even if those customers received other noninfringing products as well. He made no showing that service revenues were driven by customer demand for infringing products.

On May 5, 2010, ePlus filed its Initial Infringement Report of Alfred C. Weaver. Although Dr. Weaver did not refer to products by SKU, he identified products that correspond to only fourteen SKUs that allegedly infringed the patents-in-suit. Specifically, Dr. Weaver opined on infringement of five groups of combinations of these thirteen SKUs: (1) "Lawson Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules)"; (2) "Lawson Procurement (i.e., the Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC] modules) is integrated with the Requisitions Self-Service application [SIP / SIPP]"; (3) "S3 Procurement system (Lawson Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC]) integrated with the Requisitions Self-Service [SIP / SIPP] application is integrated with the Procurement Punchout [EPP / EPPH / EPRO] application"; (4) "a Lawson system of any of the other three scenarios may also include the Lawson EDI [TCS / HBP] application of the S3 SCM suite for further functionality within the scope of the claims"; and (5) "M3 e-Procurement application [EPR / M3PUR / M3ERE]". (Exh. 4 at 14-16, ¶¶ 43-47 (bracketed SKUs added).) In addition, the combination of IC, PO, and RQ is also included in the PROC SKU. It was not until ePlus filed its infringement report that Lawson had an understanding of which SKUs were specifically accused of infringing.

After ePlus filed its infringement report, which finally specified the combinations of SKUs ePlus accused of infringement, Lawson provided sales information on the above-identified

---

(Lawson Total Care Bronze), and ZLTCS (Lawson Total Care Silver).

combinations of SKUs based on the products Dr. Weaver identified in his report. In addition, Lawson also included revenue relating to three of the SKUs cited by Dr. Mangum that contain combinations of both accused SKUs and over twenty non-accused SKUs having nothing to do with e-procurement. Specifically, Lawson provided sales information for (1) PPS (which includes IC, PO, RQ, and ten SKUs not accused of infringing[2]); (2) PHS (which includes IC, PO, RQ and twelve SKUs not accused of infringing[3]); and (3) FINPRO (which includes sixteen SKUs, most of which are not accused of infringing[4]).

ePlus then requested supplementation of sales data for SKUs in addition to those identified as infringing in Dr. Weaver's Report. (Exh. 5.) Lawson responded and requested that ePlus identify where the SKUs were accused of infringing in the Weaver Report. (Exh. 6.) ePlus responded by asserting that Dr. Weaver did not conduct an SKU-by-SKU analysis of Lawson's alleged infringement. (Exh. 7.) ePlus did not dispute that other SKUs, such as Lawson System Foundation (LSF), were not identified in Dr. Weaver's infringement report, but requested the sale data for that SKU anyway because the accused S3 SKUs run on LSF as their "technical foundation." (*Id.*)

While Lawson disagreed with ePlus's arguments, on June 3 it provided ePlus with the

---

[2] The ten non-accused SKUs are Accounts Payable (AP), Asset Management (AM), Invoice Matching (MA), Lawson INSIGHT® Environment (E), Java Enterprise Desktop (JED), Lawson Insight Desktop Client (LID), Enterprise Workflow Runtime (WFR), Enterprise Workflow Developer (WFD), Enterprise Workflow Server (WFS), Enterprise Workflow Administrator (WFA).

[3] The twelve non-accused SKUs are the ones from PPS as well as Sterling Gentran (EDI) and CLEO Healthcare (CLO).

[4] The sixteen SKUs in FINPRO are Average Daily Balance (ZADB), Asset Management (ZAM), Accounts Payable (ZAP), Accounts Receivable (ZAR), Billing (ZBL), Cash Management (ZCB), General Ledger (ZGL), Inventory Control (ZIC), Invoice Matching (ZINV), Lease Management (ZLM), Multi-Book Ledger (ZML), Purchase Order (ZPO), Requisition System (ZRQ), Strategic Ledger (ZSLDG), Smart Reconciliation (ZSMR), and Warehouse (ZWH).

4

requested, up-to-date financial information regarding the SKUs ePlus requested, which included not only the SKUs Dr. Mangum had previously relied on in his report, but also included six additional SKUs that correspond to the SKUs ePlus requested.[5]

Dr. Mangum subsequently supplemented his expert report, and included all thirty-seven SKUs in the royalty base, including twenty-three not mentioned in Dr. Weaver's infringement report. (Exh. 8 at Ex. 5 and Exh. 9 at Ex. 5.) The thirty-seven SKUs Dr. Mangum relies on are as follows: (1) RQ, PO, IC, SIP, SIPP, EPP, EPPH, EPRO, TCS, HBP, EPR, M3PUR, M3ERE, PROC (the fourteen "Accused SKUs"); (2) PPS, PHS, and FINPRO, which include both three accused SKUs and over twenty non-accused SKUs (the three "Large Suite SKUs"); LSF and LSFN, which are required to operate all Lawson products (the two "Foundation SKUs"); (3) LTMPFI, PFI, PFIEC, PFIP, PFP, PFST, and PFX (the seven "Process Flow SKUs"); (4) M3EBA, M3EDI, M3EPP, M3ESF, M3PFX, M3PUR, M3WDT, PUR, and EBA (the nine "Additional M3 SKUs"); and (5) ZLTCB and ZLTCS (the two "Total Care SKUs").

II.   ARGUMENT

In a suit for patent infringement, a prevailing plaintiff is entitled to damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Calculation of a reasonable royalty requires determination of two separate quantities—a royalty base, or the revenue pool implicated by the infringement, and a royalty rate, or the percentage of that pool "adequate to compensate" the plaintiff for that infringement. *Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009). Courts have warned that relying on an over-inclusive royalty base—

---

[5] The additional SKUs include EPRO (E-Procurement), LSFN (Lawson System Foundation New), M3EBA (EDI Business Messages - ANSI X12), M3EDI (EDI Management (M3)), M3ESF, M3PFX (Processflow Intergrator W/O).

5

frequently an issue in software cases—is fatal to a plaintiff's damages claim. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) (vacating jury's damages award because the patentee did not demonstrate that the patented product was the basis for demand and thus was not entitled to damages on unpatented products under the entire market value rule).

In *Cornell* the district court vacated the jury's damages award after it concluded that the patentee's royalty base was too broad. 609 F. Supp. 2d at 286-87. The court found that the patentee was not entitled to a royalty on all sales of accused server and workstation system products for any infringement of the patented instruction reorder buffer which was part of those systems. *Id.* It explained that an over-inclusive royalty base including sales of non-infringing components "is not permissible simply because the royalty rate is adjustable." *Id.*

Likewise, in *Uniloc* the court vacated the jury's damages award when it concluded that the patentee relied on an over-inclusive royalty number in its infringement case on product activation systems. *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 184-85 (D.R.I. 2009). The court explained that even mentioning the amount of sales of Microsoft's sales of Office or Windows number was not permitted, as the patentee was not entitled to excessive damages beyond patented invention's contribution. *Id.*

In this case, there are at least two problems with ePlus's proposed royalty base. First, ePlus seeks damages on products it did not accuse of infringing, and which are not shown to be driven by demand for the patented product. Thus, revenues from these products should not be included in the royalty base. Second, ePlus seeks damages based on Lawson's services revenues, even though there is no evidence that these services infringe, and even though these revenues are not tied to specific SKUs. Instead, they are based on customer, and include services

6

for products that are not accused of infringing. Thus, revenues from services should not be included in the royalty base.

### A. Because ePlus Does Not Even Attempt to Show the Accused SKUs Drive Demand for the Large Suite SKUs, Foundation SKUs, Process Flow SKUs, Additional M3 SKUs, or Total Care SKUs, Evidence and Argument Related to these SKUs Should be Excluded.

ePlus seeks damages on SKUs that cover more than just the accused products. The Large Suite SKUs include SKUs that Dr. Weaver does not include in his infringement opinions. For example, FINPRO includes SKUs like Accounts Receivable (ZAR) and Billing (ZBL), SKUs not accused of infringing in this case. The Large Suite SKUs include but are not limited to accused modules, yet ePlus seeks damages on all of the SKUs in these suites, whether they are accused of infringing or not. ePlus also seeks damages on SKUs that are not accused of having any infringing component. ePlus does not assert that the Foundation SKUs, the Process Flow SKUs, the Additional M3 SKUs, or the Total Care SKUs infringe the patents-in-suit. Thus, it is not entitled to damages on these products either.

Revenues as a whole for these SKUs—which are products that either include many modules not accused of infringement or are not accused of infringement at all—cannot be included in the royalty base unless ePlus shows that the sales of the accused products as a whole drove their sales. *Lucent*, 580 F.3d at 1336. ePlus, however, makes no attempt to make this showing. It has not asserted that the accused SKUs are the basis for demand for these non-accused SKUs, much less produced any evidence of such demand. In the absence of such evidence of consumer demand, ePlus is not entitled to damages on sales relating to these SKUs.

To the extent that ePlus may assert for the Large Suite SKUS that it is unable to allocate revenues from the suite to just the accused SKU part of the suites, this is not the case. ePlus has information about revenues for individual SKUs and could have partitioned the sales of accused

7

products from those products that are not accused of infringing. It did not, unfairly overstating the revenues at issue.

      B.     <u>Evidence and Argument Related to Service Revenues Should be Excluded.</u>

ePlus seeks a royalty base that includes Lawson's services revenues for products that are not accused of infringing. As discussed above, Lawson does not allocate services by SKU. Instead, services revenues are based on customer. Virtually all customers that have the accused modules also have other, non-accused modules. There is no evidence that customers hire Lawson for services based on the patented features. ePlus has not even asserted that the accused products are the basis for customer demand for services revenues it seeks to include in the royalty base. Thus, ePlus is not entitled to damages on the services revenues.

The issue is not whether services revenue can be allocated to a specific SKU. The issue is whether service revenue is driven by demand for the patented technology. It is ePlus's burden to prove the damages amount. ePlus has made no effort to assert that the services revenues are based on or driven by the allegedly-infringing activity. Thus, it is not entitled to damages on service revenues.

III.    CONCLUSION

Pursuant to Federal Rules of Evidence 402, 403, and 702, as well as precedent of the Federal Circuit, Lawson respectfully requests that the Court exclude evidence relating to revenues from the Large Suite SKUs, the Foundation SKUs, the Process Flow SKUs, the Additional M3 SKUs, and the Total Care SKUs, as well as evidence relating to Lawson's service revenues. Financial data relating to these issues is irrelevant; ePlus failed to prove or even allege that these revenues are driven by demand for the patented technology, and its presence in this litigation can only serve to confuse the jury and create the risk of unfair prejudice.

LAWSON SOFTWARE, INC.

By   /s/              
        Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 18th day of June, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*