**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| ***e*PLUS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAWSON SOFTWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF ePLUS INC.'S BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO 4: TO EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO PURPORTED "DEMONSTRATION SYSTEMS" FOR LAWSON RELEASES 5.0, 6.0, AND 6.1**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice)*
Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

## I. INTRODUCTION

Plaintiff *e*Plus Inc. ("*e*Plus") respectfully requests that the Court exclude from evidence the alleged Lawson Release 5.0, 6.0, and 6.1 systems and related code purportedly demonstrated by Jeffrey Hvass during the Rule 30(b)(6) deposition of Defendant Lawson Software, Inc. ("Lawson") on June 8, 2010, and preclude any related testimony, evidence or argument from Lawson. These reconstructed legacy Lawson systems, cobbled together with modern components in Frankenstein-like fashion, do not accurately demonstrate any system in public use prior to August 1994, the relevant priority date for the patents-in-suit. For example, portions of the source code from every system that Lawson demonstrated were created after August 1994. In addition, key components of the systems, such as the operating systems and environments, are of post-2000 vintage. One of the reconstructed legacy systems, moreover, could not be demonstrated during Mr. Hvass's deposition at all because no company or item data had been loaded into it.

If permitted, Lawson will seek at trial to pass off these recreated legacy Lawson demonstration systems as preexisting technology in an attempt to confuse and mislead the Court and the jury. Any argument that Lawson could make about the relevance of these systems, however, would be substantially outweighed by their unreliability as credible evidence and the danger of unfair prejudice to *e*Plus. Accordingly, these recreated legacy Lawson systems are inadmissible under Federal Rules of Evidence 403, 901, and 1002. The Court should therefore exclude any demonstration of the "recreated" Lawson Release 5.0, 6.0, or 6.1 systems from the trial of this matter, including any testimony from Lawson's witnesses or its experts concerning the same.

## II. BACKGROUND

On June 8, 2010, Lawson produced a witness designated under Rule 30(b)(6), Jeffrey Hvass, to demonstrate six different Lawson systems purported to be legacy Release 5.0, 6.0, and 6.1 application suites. The six demonstration systems were identified by Lawson as follows:

1. A Lawson Release 5.0 application suite operating on a UNIX Universe 2.0 environment running on a Hewlett-Packard HP-UX server ("the Release 5.0 'cobdeliv' system");

2. A Lawson Release 5.0 application suite operating on a UNIX Universe 2.1 environment running on a Hewlett-Packard HP-UX server ("the Release 5.0 'support' system");

3. A Lawson Release 5.0 application suite operating on a UNIX Universe 2.1 environment running on a Hewlett-Packard HP-UX server ("the Release 5.0 'cyclical' system");

4. A Lawson Release 6.0 application suite operating on a UNIX Universe 2.1 environment running on a Hewlett-Packard HP-UX server ("the Release 6.0 'wip60' system");

5. A Lawson Release 6.1 application suite operating on a UNIX Universe 2.1 environment running on a Hewlett-Packard HP-UX server ("the Release 6.1 'sup61' system"); and

6. A Lawson Release 6.1 application suite operating on a AS/400 Universe 6.2 environment running on an IBM iSeries server ("the Release 6.1 iSeries system").

*e*Plus was provided no opportunity to test — or even view — the Lawson demonstration systems prior to Mr. Hvass's deposition on June 8, 2010. In fact, prior to the deposition, *e*Plus was made aware of only three systems that Lawson intended to demonstrate. *See* Ex. Q (Letter from W. Schultz to M. Strapp dated May 27, 2010).[1]

Lawson failed to provide *e*Plus with a functional version of any of the software systems prior to the deposition. While Lawson produced uncompiled source code files that it states were

[1] The notation "Ex. [LETTER]" references a particular exhibit located within the Appendix of Exhibits filed concurrently with *e*Plus's motions *in limine*.

used for at least some of the demonstrations, these source code files could not be executed, or even opened, on a modern PC computer. *See* Ex. N (Letter from K. Drieman to J. Albert dated October 14, 2009); Ex. P (Letter from K. Drieman to M. Hayes dated May 24, 2009); Ex. T (Letter from J. Clements to W. Schultz dated June 4, 2010). *e*Plus had neither adequate means nor sufficient time to obtain the obsolete hardware and software required to compile, execute, and potentially troubleshoot the produced source code. The uncompiled source code for Lawson Release 6.1 was not produced until May 24, 2010, only two weeks before the deposition and after the May 18, 2010 date for the close of fact discovery. *See* Ex. P (Letter from K. Drieman to M. Hayes dated May 24, 2009). And although Lawson produced source code for Lawson Release 5.0 on October 14, 2009, it was not until several months later on May 5, 2010, when *e*Plus was served with the report of Lawson's expert Michael Shamos, that *e*Plus learned of Lawson's intention to assert Release 5.0 of its legacy software as material prior art to the patents-in-suit. *See* Ex. N (Letter from K. Drieman to J. Albert dated October 14, 2009); Ex. B (Report of Expert Michael I. Shamos, Ph.D., J.D. Concerning Invalidity (May 5, 2010)) at 31-42. Lawson made no mention of any of its legacy software products in its final invalidity contentions served on April 9, 2010, and never before asserted its Release 5.0 as prior art. *See* Ex. G (Defendant Lawson Software, Inc.'s Second Supplemental Initial Statement of Invalidity Defenses, April 9, 2010) at 1-5.

During Mr. Hvass's deposition, *e*Plus learned that much of the source code for the procurement-application suites used for the "recreated" demonstration systems was not completed until after August 10, 1994.[2] For example, file directories from the source code for

[2] August 10, 1994 is the priority date for the patents-in-suit as the original application from which the patents-in-suit issued was filed in the U.S. Patent and Trademark Office on August 10, 1994.

the Lawson Release 5.0 "support" and "cyclical" systems and Release 6.0 "wip60" system reveal that many of the programs within the Inventory Control, Purchase Order, and Requisition modules for each of these demonstration systems were not created until after August 10, 1994. *See* Ex. M (Hvass Dep. Tr., June 8, 2010) at 223:22-234:18. Additionally, Mr. Hvass confirmed that Lawson Release 6.1, the version allegedly reflected by the Lawson 6.1 "sup61" and iSeries systems, was not generally available until September 30, 1994. *Id.* at 184:14-17. In fact, the source file date and creation date for the Release 6.1 iSeries system demonstrated during Mr. Hvass's deposition were December 10, 1998, and January 29, 1999, respectively. *Id.* at 85:18-86:2 and 91:3-13. Mr. Hvass also confirmed that the alleged Release 6.0 system that was demonstrated was actually Release 6.0.2, a later version for which Lawson has provided no evidence of predating the patents-in-suit. *Id.* at 188:11-15.

Additionally, much of the hardware, operating systems, and other middleware used as part of the "recreated" Lawson legacy system demonstrations during Mr. Hvass's deposition are of post-1994 vintage. For example, the UNIX Universe 2.1 operating environment used for the Release 5.0 "support" and "cyclical" systems, the Release 6.0 "wip60" system, and the Release 6.1 "sup61" system was not available until 1995. Ex. M (Hvass Dep. Tr., June 8, 2010) at 56:13-57:1 and 68:6-69:9. Likewise, the AS/400 Universe 6.2.11 operating environment used for the Release 6.1 iSeries system was not available until April 1999. *Id.* at 219:13-221:4. The operating system for all the Release 5.0 and 6.0 systems and the Release 6.1 "sup61" system demonstrated by Lawson, Hewlett-Packard's HP-UX 11i (or 11.11), was not introduced until December 2000. Ex. M (Hvass Dep. Tr., June 8, 2010) at 36:22-37:4 and 56:2-9; Ex. V (HP-UX Operating System Release History, http://docs.hp.com/en/hpux11i.html); and the OS/400 V5R4 operating system used for the Release 6.1 iSeries system was not available until 2006. Ex. M

(Hvass Dep. Tr., June 8, 2010) at 78:14-22; Ex. U (DB2 for i5/OS: V5R4 Overview, http://publib.boulder.ibm.com/infocenter/iseries/v5r4/index.jsp). What is more, the presentation layer (i.e., the user interface) used for all the Release 5.0 and 6.0 systems and the Release 6.1 "sup61" system, Lawson Interface Desktop 9.0.1.4, was not released until April 10, 2009. Ex. M (Hvass Dep. Tr., June 8, 2010) at 110:5-12; 111:18-112:2; and 147:17-148:10); and the presentation layer used for the Release 6.1 iSeries system, IBM Client Access 7.1, was not available until 2005. *Id.* at 108:2-9. The notebook computer operated by Mr. Hvass during the demonstrations, a Lenovo T61p with a dual-core Pentium processor, was not available until at least 2007. *Id.* at 100:4-101:2. Mr. Hvass' computer ran the Windows Server 2003 operating system, which was not available until around 2003. *Id.* at 101:3-12 and 102:6-13.

## III. ARGUMENT

Under Federal Rule of Evidence 403, evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the possibility of misleading the jury. The obligation of the Court to act as "gatekeeper" is founded on the potential for prejudice. *See Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997). The Federal Rules of Evidence impose other requirements on the admissibility of documents into evidence. Federal Rule of Evidence 901 requires as a condition precedent to the admissibility of evidence authentication that the matter in question is what its proponent claims. Federal Rule of Evidence 1002 requires the original of a writing or recording in order to prove the contents of that writing or recording.

Lawson should be precluded from introducing the "recreated" and misleading alleged Release 5.0, 6.0, and 6.1 demonstration systems because they are highly prejudicial given that they do not accurately reflect the systems' functionalities as of pre-August 1994. Lawson should

also be precluded from introducing these demonstration systems because they fail to meet the requirements of Federal Rules of Evidence 901 and 1002.

**A. The Recreated Lawson Legacy Systems Do Not Accurately Depict Any System In Public Use Before 1994**

The "recreated" systems do not accurately illustrate the versions of Lawson's legacy software products publicly available prior to the critical date. The source code for multiple programs within the procurement-application suites used for the "recreated" demonstration systems was not completed until after August 10, 1994. This fact was true for every system that Lawson was actually prepared and able to demonstrate during Mr. Hvass's deposition on June 8, 2010.[3] In fact, much of the source code was not compiled into binary code that could be executed until only weeks ago, solely for purposes of this litigation. *Id.* at 50:21-51:2; 96:20-22; and 98:8-99:1. Portions of the source code were even modified before compiling the source code for the demonstrations. *Id.* at 96:20-22 and 98:8-99:1.

Additionally, much of the pertinent functionality of the demonstration systems is not supported by the technical documentation produced by Lawson. For example, during the deposition of Mr. Hvass, Lawson demonstrated a function in the Lawson 6.0 "wip60" system allowing Mr. Hvass to scroll through a list of items in the Item Master database while operating within the Requisitions module. *Id.* at 166:16-167:14. Using this function, Mr. Hvass could skip to a particular entry within the list of items that contained an entered text string. *Id.* Nowhere is this functionality described in the Lawson Release 6.0 product manuals produced by Lawson. *See, e.g.,* L0009986 (Requisitions Training Manual, Release 6.0, September 1, 1994); L0012554 (Requisitions Procedures Manual, Release 6.0, January 1994). Indeed, Lawson itself has made no reference to any document disclosing this functionality, either in its validity contentions or in

[3] *See supra* pp. 3-4.

the expert report of Dr. Shamos regarding validity. *See* Ex. G (Defendant Lawson Software, Inc.'s Second Supplemental Initial Statement of Invalidity Defenses, April 9, 2010) at 1-5; Ex. B (Report of Expert Michael I. Shamos, Ph.D., J.D. Concerning Invalidity, May 5, 2010) at 31-42.

Lawson has also failed to show that any of the systems demonstrated were actually sold to any of its customers. Lawson has not produced any documents evidencing the sale of any of these particular systems. In fact, even the uncorroborated testimony of Lawson's Rule 30(b)(6) witness does not support this fact. Mr. Hvass confirmed that the code used for the Release 5.0 "cobdeliv" system was never delivered to one of Lawson's customers. Ex. M (Hvass Dep. Tr., June 8, 2010) at 47:8-15. Mr. Hvass testified that the Release 5.0 "support" system was a system developed by Lawson to be used internally by Lawson's support staff. *Id.* at 64:4-65:6. The Release 5.0 "cyclical" system code as demonstrated cannot be traced to a particular customer because the code was by its nature revised and released every three to six months. *Id.* at 64:14-18. Finally, the Release 6.0 "wip60" code was believed by Mr. Hvass to be a "work in progress," suggesting that it was not intended to be and in fact would not have been sold to customers as demonstrated. *Id.* at 68:14-17.

### B. The Recreated Lawson Legacy Systems Improperly Rely On Current, Post-1994 Technology

The "recreated" Lawson legacy systems demonstrated during Mr. Hvass's deposition improperly rely upon a plethora of technology that was not available before August 1994. Consequently, the "recreated" Lawson legacy systems cannot accurately depict any system allegedly in public use prior to August 1994. Introducing these systems during trial will serve no other purpose but to confuse and mislead the jury. *See NTP, Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751 (E.D. Va. 2003) (Defendants attempted to confuse and mislead the jury by

conducting a demonstration of the TekNow! System which RIM asserted as prior art, by using updated software that did not exist at the time the system was used).

Much of the hardware, operating systems, and other middleware used as part of the "recreated" Lawson legacy system demonstrations during Mr. Hvass's deposition are of post-1994 vintage.[4] As a result, the demonstration systems included functionality that would have been unavailable prior to August 1994. For example, even though Mr. Hvass used a computer mouse to navigate the demonstrations during the deposition, he conceded that a mouse would not have been operable with Release 5.0 using an earlier version of the Lawson Interface Desktop software. *Id.* at 185:16-20. Because the "recreated" Lawson legacy systems include functionality that only existed after August 1994, they do not depict any system allegedly in public use prior to August 1994.

### C. The Recreated Lawson Legacy Systems Lack Authentication That They Are What They Are Purported To Be

The demonstration systems should be excluded not only because they are irrelevant and prejudicial, but also because Lawson cannot properly authenticate these systems as required by Federal Rule of Evidence 901. In order for the demonstration systems to be admissible, Lawson must submit evidence sufficient to support a finding that the demonstration systems are what Lawson purports them to be. Fed. R. Ev. 901(a). But the only basis for authentication that Lawson has is the testimony of Mr. Hvass, who has no personal knowledge of the demonstration systems.

During his deposition, Mr. Hvass revealed that he had no first-hand knowledge regarding the source code used to build the demonstration systems. Mr. Hvass acknowledged that he did not know who originally compiled the source code, and his testimony regarding the release and

[4] *See supra* pp. 4-5.

compile dates for the source code was based entirely upon the dates shown within the program data itself. Ex. M (Hvass Dep. Tr., June 8, 2010) at 48:2-9; 53:1:17; 71:5-11. Indeed, Mr. Hvass admitted that he had no idea when the source code had last been modified. *Id.* at 54:2-7.

Furthermore, Mr. Hvass acknowledged that he was not directly involved in the preparation—and therefore had no direct knowledge—of the demonstration systems reconstructed by Lawson.[5] *Id.* at 30:2-31:14; 77:14-21. Mr. Hvass did not even know who at Lawson had found the source code used to create the demonstration systems. *Id.* at 112:18-113:6. In fact, Mr. Hvass was not even certain which alleged versions of Lawson's legacy software he was demonstrating. *Id.* at 183:8-10.

Lawson cannot establish that the demonstration systems are authentic pre-August 1994 systems because Lawson cannot show that the source code used to build the demonstration systems was the unmodified source code actually used in its legacy software products or that accurately reflect the functionality of any system in existence prior to 1994. Consequently, the source code and demonstration systems should be excluded pursuant to Federal Rule of Evidence 901.

### D. The Recreated Lawson Legacy Systems Fail To Satisfy The Best Evidence Rule

The demonstration systems shown by Lawson during Mr. Hvass's deposition also fail to satisfy the best evidence rule. Fed. R. Ev. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."). Lawson alleges that these systems are identical to systems that were sold to its customers prior to August 1994. However, none of the systems

[5] One of the demonstration systems was obtained from Ciber Technologies, one of Lawson's consulting and implementation partners. Ex. M (Hvass Dep. Tr., June 8, 2010) at 82:4-83:11. Mr. Hvass admitted that he had no involvement in the preparation of this third-party system. *Id.*

demonstrated by Lawson were actual systems in public use or on sale prior to August 1994. All available evidence, even including Lawson's self-serving testimony, suggests that these systems are not accurate reproductions of systems sold to or used by Lawson's customers. For example, Mr. Hvass acknowledged during his deposition that the demonstration systems were not actual systems in public use prior to August 1994. The source code that these systems were compiled from was used for internal purposes at Lawson, such as maintenance and support, and was not the actual source code provided to Lawson's customers. *Id.* at 47:1-15; 63:21-65:21; 67:11-21; 68:6-69:5. Moreover, the source code was compiled and, at least in some instances, modified only days before Mr. Hvass's deposition. *Id.* at 51:2-11; 52:8-13; 92:8-10. Modifications were also made to environment variables within the UNIX Universe operating environments during the reconstruction of these systems. *Id.* at 95:10-96:5. And, importantly, every one of the demonstration systems that Lawson was prepared and able to demonstrate included source code created after August 1994.[6]

To the extent that Lawson intends to rely upon any legacy software systems as being in public use or on sale before August 1994, Lawson must produce the actual systems that were used by or sold to its customers at that time. Since Lawson itself has acknowledged that the demonstration systems do not satisfy this requirement, these systems should be excluded. Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.").

### E. The Lawson 5.0 "cobdeliv" System Should Be Excluded Because No Functionality Could Be Demonstrated During The Inspection

[6] *See supra* pp. 3-4.

Lawson should be prevented from relying on the Release 5.0 "cobdeliv" system in any manner during the trial because Lawson could not and did not provide any demonstration of the system's functionality during the June 8, 2010 inspection. Moreover, Lawson's production of the Release 5.0 source code was not made in a reasonably usable form.

Although *e*Plus specifically requested to see the Release 5.0 "cobdeliv" system demonstrated during Mr. Hvass's deposition on June 8, 2010, no relevant functionality of the system could be shown. The system was completely devoid of any company or item data. *Id.* at 155:10-156:8. Mr. Hvass admitted that he could do no searches for any items in the Item Master database, nor could he build any requisitions from those items. *Id.* at 156:9-14.

Further, Lawson's production of the uncompiled source code for Release 5.0 is an inadequate proxy for Lawson's inability to demonstrate the software. Lawson provided no instructions on how to use the Release 5.0 source code, and made no attempt to provide *e*Plus with any software, including the necessary compiler and any mainframe-emulator software, that would have allowed *e*Plus to review or make use of the source code. *See* Ex. N (Letter from K. Drieman to J. Albert dated October 14, 2009). Furthermore, *e*Plus was not apprised of Lawson's intent to rely on Release 5.0 until May 5, 2010, the first time that Lawson asserted it as material prior art to the patents-in-suit. *See* Ex. B (Report of Expert Michael I. Shamos, Ph.D., J.D. Concerning Invalidity (May 5, 2010)) at 31. It was not timely disclosed in Lawson's Second Supplemental Invalidity Contentions per the Court's Order. *See* Ex. G (Defendant Lawson Software, Inc.'s Second Supplemental Initial Statement of Invalidity Defenses, April 9, 2010) at 1-5; Ex. O (Order, March 30, 2010). Consequently, the Lawson Release 5.0 source code, as well as the Release 5.0 "cobdeliv" system, should be excluded from evidence in the trial of this matter.

## IV. CONCLUSION

The Federal Rules of Evidence place a number of requirements on the admissibility of evidence. Rule 402 of the Federal Rules of Evidence dictates that "[e]vidence which is not relevant is not admissible." Rule 403 adds that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 901 states that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 1002 states that to "prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required."

Lawson has failed to provide any corroborating evidence through documents or deposition testimony that the allegedly "recreated" Lawson Release 5.0, 6.0, and 6.1 systems accurately represent any system that was in public use or on sale prior to August 1994. These demonstration systems have not been authenticated and are not actual systems obtained from Lawson's customers. In addition, the features demonstrated in the "recreated" systems are not supported by Lawson's own technical documentation relating to such systems. Lawson admits that the demonstration systems have been "recreated" using current technology that was not available prior to August 1994 and provide functionality that was not present in the pre-August 1994 commercial systems. Lawson further acknowledged that every one of the demonstration systems that Lawson was prepared and able to demonstrate includes source code created after August 1994. Any demonstration of the recreated Release 5.0, 6.0, or 6.1 systems is therefore likely to mislead the jury and testimony and evidence concerning these legacy systems would be

irrelevant, unfairly prejudicial to *e*Plus, and unreliable. Accordingly, the Court should strike the recreated and misleading Release 5.0, 6.0, and 6.1 demonstrations and exclude all testimony concerning the same under Federal Rules of Evidence 403, 901, and 1002.

Respectfully submitted,

June 18, 2010

/s/

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of June, 2010, I will electronically file the foregoing

**PLAINTIFF ePLUS INC.'S BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO. 4: TO EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO PURPORTED "DEMONSTRATION SYSTEMS" FOR LAWSON RELEASES 5.0, 6.0, AND 6.1**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com
***Counsel for Defendant Lawson Software, Inc.***

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

/s/
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com