# EXHIBIT 2

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,104 | 09/15/2006 | 6023683 | 1905-003 | 2837 |

| 24257 | 7590 | 10/28/2006 |
|---|---|---|

STEVENS DAVIS MILLER & MOSHER, LLP
1615 L STREET, NW
SUITE 850
WASHINGTON, DC 20036

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 10/28/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

10/28/06

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

LEE PATCH ESQ.

DAY CASEBEER MADRID & BATCHELDER

20300 STEVENS CREEK BLVD., SUITE 400

CUPERTINO CA 95014

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO 90/008104

PATENT NO. 6,023,683

ART UNI 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Application/Control Number: 90/008,104 Page 2
Art Unit: 3992

## DECISION ON REQUEST FOR REEXAMINATION

*Summary*

Substantial new questions of patentability affecting Claims 26-45 of United States Patent Number 6,023,683 are raised by the request of ex parte reexamination based on the following prior art references:

1. J-C ON Manual, April 1994
2. J-CON Part-Finder, October 1989
3. J-CON Point-of-Sale, October 1989
4. J-CON/RDB Guide, March 1993
5. A Practical Guide to SABRE
    a. Copyright Registration Certificate
6. Reservations and Ticketing with SABRE
    a. Copyright Registration Certificate
7. SABRE Total Access, February 1993
8. SABRE Savvy
9. SABRE Easylink
10. P.O. Writer Plus V.10 Binary Code
11. P.O. Writer Plus V.10 Manual
12. P.O. Writer Plus V.10 Screenshots
13. Gateway 2000/MRO Binary Code

14. Gateway 2000/MRO 1991 Manual

15. Gateway DOS 1993 Manual, (Purchasing, Inventory, System Management)

16. Gateway 2000/MRO Screenshots

17. Gateway Newsletter, January 1991

18. Gateway Newsletter, April 1991

19. Gateway DOS Product Overview 1993

20. Gateshow Reference 1992

21. Gateshow Reference 1992 Screenshots

## *Issues Raised by Requester*

The Requester asserts that the cited references raised substantial new questions of patentability when interpreted in the following manner:

1. Claims 26-45 are rejected as anticipated by the J-CON Manual.

2. Claims 26-45 are rejected as anticipated by A Practical Guide to SABRE.

3. Claims 26-45 are rejected as anticipated by the Reservations and Ticketing with SABRE.

4. Claims 26-45 are rejected as anticipated by the P.O. Writer Plus V 10 Reference.

5. Claims 26-45 are rejected as anticipated by the Gateway 2000/MRO Reference.

6. Claims 26-45 are rejected as anticipated by the Gateway DOS (1993) Manual.

7. Claims 26-45 are rejected as obvious in view of the teachings of the J-CON Manual.

8. Claims 26-45 are rejected as obvious in view of the teachings of A Practical Guide to SABRE.

9. Claims 26-45 are rejected as obvious in view of the teachings of Reservations and Ticketing with SABRE.

10. Claims 26-45 are rejected as obvious in view of the teachings of the P.O. Writer Plus V.10 Reference.

11. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway 2000/MRO Reference.

12. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway DOS (1993) Manual.

13. Claims 26-45 are rejected as obvious in view of the teachings of the J-CON Manual, in combination with the teachings of J-CON Part-Finder (October 1989), J-CON Point-of-Sale (October 1989) and J-CON/RDB Guide (March 1993).

14. Claims 26-45 are rejected as obvious in view of the teachings of A Practical Guide to SABRE, in combination with the teachings of Reservations and Ticketing with SABRE.

15. Claims 26-45 are rejected as obvious in view of the teachings of A Practical Guide to SABRE, in combination with the teachings of Reservations and Ticketing with SABRE, in further combination with the teachings of SABRE Total Access (February 1993), SABRE Savvy and SABRE Easylink.

16. Claims 26-45 are rejected as obvious in view of the teachings of the P.O. Writer Plus V.10 Reference, in combination with the teachings of the Gateway. DOS (1993) Manual.

17. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway DOS (1993) Manual, in combination with the teachings of the Gateway 2000/MRO Reference.

18. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway DOS (1993) Manual, in combination with the teachings of the Gateshow Reference (1992).

19. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway 2000/MRO Reference, in combination with the teachings of the Gateshow Reference (1992).

20. Claims 26-45 are rejected as obvious in view of the teachings of the Gateway DOS (1993) Manual, in combination with the teachings of the Gateway 2000/MRO Reference, in further combination with the teachings of the Gateway DOS Product Overview (1993), the Gateway Newsletter (January 1991), the Gateway Newsletter (April 1991), the Gateshow Reference (1992) and the Gateway DOS Product Overview (1993).

Application/Control Number: 90/008,104 Page 6
Art Unit: 3992

### *Analysis of Issues*

With regard to Printed Publications relating to CCI's J-CON System, it is generally agreed that these references raise a substantial new question of patentability to claims 26-45. As pointed out in the Request, the J-CON Manual teaches an electronic sourcing system, the J-CON ("Jobber - Connection") system, that was designed for use in the operation and management of automotive parts stores (automotive parts stores were called "Jobbers" in the J-CON literature). The J-CON system maintained a library of automotive parts catalogs from many sources in an electronic database, portions of which could be selected and searched for a desired automotive part. Upon selection of desired parts from database search results, the J-CON system could transfer the relevant automotive parts information for the selected parts from the database onto an electronic requisition (called a "ticket" in the J-CON literature). For a selected item on the requisition, the J-CON system could electronically determine the current availability in the inventory of the automotive parts store, any sister stores associated with the automotive parts store, and/or independent distributors to the automotive parts store. The J-CON system user could determine the price of parts from data maintained in its local automotive parts database and/or by electronically communicating with its distributor(s). The J-CON system could perform a crossreferencing or converting of data relating to an item on the requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected. Finally, the J-CON system could generate multiple purchase orders from a single requisition. These teachings are not cumulative to the teachings of the prior art applied or discussed on the record in the examination of United States Patent Number 6,023,683 or subject to a final holding

Application/Control Number: 90/008,104  Page 7
Art Unit: 3992

of invalidity by Federal Courts, and a reasonable examiner would consider the teachings to be important in deciding whether or not to allow the aforesaid claims.

With regard to the Published Descriptions of American Airlines' SABRE system, it is generally agreed that these references raise a substantial new question of patentability to claims 26-45. As pointed out in the Request, the SABRE printed publications teach that the American Airlines' SABRE system was a computer-implemented airlines reservation system that allowed travelers to research, select, confirm and pay for a travel itinerary that included confirmed seats on desired flights with multiple airlines. It also enabled users to search for, select, confirm, and pay for hotel, rental car, and cruise reservations. The SABRE system maintained a massive collection of catalogs of travel offerings in the SABRE system information database, portions of which could be selected and searched to locate, for example, a particular desired flight or flights using multiple search criteria. Upon selection of a desired flight from the results of a database search, the SABRE system could transfer the relevant flight segment information to an electronic itinerary (called a "Passenger Name Record" or "PNR" in the SABRE literature). As reflected in claim charts C 2 and C 3 in Exhibit C and more fully discussed below, the itinerary (or PNR) in the SABRE system constituted a requisition (a "list of needed items") as that term was construed by two Courts and used in the `683 claims. For a selected flight segment on the itinerary, the SABRE system could: (1) determine the seat availability in airlines' inventory; (2) determine the price of the airline seat on the itinerary; (3) perform cross-referencing or converting of a flight segment on the itinerary to determine an alternative airline offering a comparable flight segment; and (4) generate multiple purchase orders from a single itinerary if an itinerary included flights

Application/Control Number: 90/008,104 Page 8
Art Unit: 3992

on different airlines or included hotel, car, or cruise reservations. These teachings are not cumulative to the teachings of the prior art applied or discussed on the record in the examination of United States Patent Number 6,023,683 or subject to a final holding of invalidity by Federal Courts, and a reasonable examiner would consider the teachings to be important in deciding whether or not to allow the aforesaid claims.

With regard to the Printed Publications relating to PurchasingNet's P.O. Writer, it is generally agreed that these references raise a substantial new question of patentability to claims 26-45. As pointed out in the Request, the P.O. Writer Plus system teaches an electronic sourcing system that included an electronic database that retained and retrieved product information from multiple vendors, including such product information as an item number, item description, inventory location, price, commodity code, unit of measure and vendor identification. Product information could be maintained within the P.O. Writer Plus system as product catalogs organized in various ways, including by vendor or by product type. The P.O. Writer Plus system allowed a user to select product catalogs to search, resulting in a search of less than the entire data set in the database. The system allowed a user to search for matching items among selected product catalogs by specifying various search criteria including item number, commodity code, and keyword associated to the item description. Upon selection of a desired item from the results of a database search, the P.O. Writer Plus system was capable of transferring the relevant product information for the selected item from the database onto an electronic requisition. For a selected item in the requisition, the P.O. Writer Plus system was capable of: (1) determining the availability of the item in the inventory of the customer; (2) utilizing EDI transactions or issuing

RFQs to multiple vendors to ascertain, record, and retrieve the availability of the selected item from a prospective vendor; (3) determining the price of an item; (4) cross-referencing or converting data relating to the selected item to a generally equivalent item from a different source; and (5) generating multiple purchase orders from a single requisition. These teachings are not cumulative to the teachings of the prior art applied or discussed on the record in the examination of United States Patent Number 6,023,683 or subject to a final holding of invalidity by Federal Courts, and a reasonable examiner would consider the teachings to be important in deciding whether or not to allow the aforesaid claims.

With regard to the Printed Publications relating to Technical Service Associates' Gateway system, it is generally agreed that these references raise a substantial new question of patentability to claims 26-45. As pointed out in the Request, as taught by the Gateway 2000/MR0 Reference, and further described by the other Gateway References, the Gateway 2000/MRO system was a complete electronic sourcing system with a rich set of catalog, purchasing and inventory management capabilities. It included a purchasing module, requisitioning module, and an inventory control module, among others, and maintained a database of third-party product information such as product number, product description, vendor identification code, vendor catalog number, price, commodity code, unit of measure, and inventory status. The product information database was searchable using multiple search criteria. The Gateway 2000/MRO system included a separate table in the product information database for electronic product catalogs that the user wished to maintain. The user could search for and select desired items from electronic catalogs for inclusion on requisitions. The Gateway

Application/Control Number: 90/008,104 Page 10
Art Unit: 3992

2000/MRO system generated requisitions, checked inventory status and pricing for items, converted to alternate sources for items, and generated multiple purchase orders from requisitions. The Gateway 2000/MRO system supported a commodity code product classification system from which it was possible to determine which items in the product information database were comparable to one another. The system also maintained vendor data fields in the database associated with each item from which it could be determined whether an alternate vendor existed to supply the same item. These teachings are not cumulative to the teachings of the prior art applied or discussed on the record in the examination of United States Patent Number 6,023,683 or subject to a final holding of invalidity by Federal Courts, and a reasonable examiner would consider the teachings to be important in deciding whether or not to allow the aforesaid claims.

### *Conclusion*

"Since requester did not request reexamination of claims 1-25 and did not assert the existence of a substantial new question of patentability (SNQ) for such claims (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such claims will not be reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to not reexamine claims in an inter partes reexamination proceeding other than those claims for which reexamination had specifically been requested. The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ... review of each and every claim of a patent. Moreover, while the PTO in its discretion may review claims for which ... review was not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a claim for ... review, § 311(b)(2) requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now claim that the PTO wrongly failed to reexamine claims for which **Sony** never requested review, and its argument that AIPA compels a contrary result is unpersuasive."

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving United States Patent Number 6,023,683 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any

Application/Control Number: 90/008,104 Page 12

Art Unit: 3992

such activity or proceeding throughout the course of this reexamination proceeding. See MPEP § 2207, 2282 and 2286.

Please mail any communications to:

Attn: Mail Stop "Ex Parte Reexam" Central Reexamination Unit

Commissioner for Patents

P. O. Box 1450

Alexandria VA 22313-1450

Please FAX any communications to:

(571) 273-9900

Central Reexamination Unit

Please hand-deliver any communications to:

Customer Service Window

Attn: Central Reexamination Unit

Randolph Building, Lobby Level

401 Dulany Street

Alexandria, VA 22314

Application/Control Number: 90/008,104    Page 13
Art Unit: 3992

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Kwang B. Yao
Primary Examiner
(571) 272-3182

Conferee

Conferee