# EXHIBIT 3



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,104 | 09/15/2006 | 6023683 | 64121.000014 | 2837 |

70813          7590          01/08/2009

GOODWIN PROCTER LLP
901 NEW YORK AVENUE, N.W.
WASHINGTON, DC  20001

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 01/08/2009

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

LEE PATCH, ESQ.
DAY CASEBEER MADRID & BATCHELDER
20300 STEVENS CREEK BLVD., SUITE 400
CUPERTINO, CA 95014

**MAILED**

**JAN 08 2009**

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/008,104_.

PATENT NO. _6023683_.

ART UNIT _3992_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | **Control No.** 90/008,104 | **Patent Under Reexamination** 6023683 |
|---|---|---|
| | **Examiner** JOSEPH R. POKRZYWA | **Art Unit** 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a.☒ Responsive to the communication(s) filed on <u>29 May 2008</u> .      b.☒ This action is made FINAL.
c.☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I      THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1.  ☐ Notice of References Cited by Examiner, PTO-892.      3.  ☐ Interview Summary, PTO-474.

2.  ☒ Information Disclosure Statement, ~~PTO/SB/08~~, *PTO-1449* 4.  ☐ _____ .

Part II      SUMMARY OF ACTION

1a.  ☒ Claims <u>26-45</u> are subject to reexamination.

1b.  ☒ Claims <u>1-25</u> are not subject to reexamination.

2.   ☐ Claims _____ have been canceled in the present reexamination proceeding.

3.   ☐ Claims _____ are patentable and/or confirmed.

4.   ☒ Claims <u>26-45</u> are rejected.

5.   ☐ Claims _____ are objected to.

6.   ☐ The drawings, filed on _____ are acceptable.

7.   ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8.   ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some*  c)☐ None      of the certified copies have

    1☐ been received.

    2☐ not been received.

    3☐ been filed in Application No. _____ .

    4☐ been filed in reexamination Control No. _____ .

    5☐ been received by the International Bureau in PCT application No. _____ .

    * See the attached detailed Office action for a list of the certified copies not received.

9.   ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10.  ☐ Other: _____

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)              **Office Action in Ex Parte Reexamination**              Part of Paper No. 20081208

Application/Control Number: 90/008,104                                    Page 2

Art Unit: 3992

## DETAILED ACTION

### *Brief Summary of Proceedings*

1.      Patent Owner's arguments were filed 5/29/08, in response to the Office action dated

2/29/08.  Further, a Declaration of Brooks L. Hilliard was filed under 35 U.S.C. 1.132 by the

Patent Owner on 5/29/08, whereby the Patent Owner's arguments take the position of the

Declaration, asserting patentability of the claims and traversing the cited rejections in the Office

action dated 2/29/08.

2.      Claims 1-45 originally issued in U.S. Patent Number 6,023,683 ("the '683 Patent"), with

claims 1-25 not being subject to the current reexamination proceeding.  Thus, claims 26-45 are

the current pending claims in the current reexamination proceeding.

Application/Control Number: 90/008,104                                    Page 3
Art Unit: 3992

3.      In the Office action dated 2/29/08, the claims were rejected as follows:

        Claims 26-45 stand rejected under 35 U.S.C. 102(a) as being anticipated by "J-

CON Manual, Volume 1", authored by Cooperative Computing, Inc. (the "J-CON

Manual").

        Claims 26-45 stand rejected under 35 U.S.C. 102(b) as being anticipated by "A

Practical Guide to SABRE Reservations and Ticketing", authored by Jeanne Semer-

Purzycki (the "SABRE Guide").

        Claims 26-45 stand rejected under 35 U.S.C. 102 (a) as being anticipated by "P.O.

Writer·Plus Guided Tour Version 10.0" from American Tech., Inc. (the "P.O. Writer

Manual").

        Claims 26-45 stand rejected under 35 U.S.C. 102(b) as being anticipated by

"Gateway 2000/MRO Version "from Technical Service Associates (the "Gateway

2000/MRO Manual").


                        ***Information Disclosure Statement***

4.      The references listed in the Information Disclosure Statement submitted on 5/29/2008

have been considered by the examiner (see attached PTO-1449).

Application/Control Number: 90/008,104                                     Page 4
Art Unit: 3992

### *Response to Arguments*

5.     Patent Owner's arguments filed 5/29/08 have been fully considered but they are not

persuasive.  In summary, the Patent Owner argues that the cited prior art references of the J-CON

Manual, the P.O. Writer Manual, and the Gateway 2000/MRO Manual do not qualify as prior art,

since they would not be considered as a printed publication, and the Patent Owner argues that

each of the cited prior art references does not teach any limitations in the independent and

dependent claims.


6.     First, with respect to Patent Owner's arguments on pages 7-16, which argue that the J-

CON Manual, P.O. Writer Manual, and the Gateway 200/MRO Manual do not qualify as a

printed publication, the Patent Owner argues that "documents disseminated under conditions of

confidentiality to a closed group are not "printed publications" under 102 because they are not

accessible to the public."  However, the examiner notes that these documents were not limited to

"closed group".  None of these operating manuals are confidential documents to a closed group,

as any member of the public was able to purchase the software, and therein get access to the

publications.  The publications were not limited to only persons within a closed organization.


7.     In this regard, MPEP 2128.01 [R-3], Part III states:

> Documents and items only distributed internally within an organization which are
> intended to remain confidential are not "printed publications" no matter how
> many copies are distributed. There must be an existing policy of confidentiality or
> agreement to remain confidential within the organization. Mere intent to remain
> confidential is insufficient. ... Garret Corp. v. United States, 422 F.2d 874, 878,
> 164 USPQ 521, 524 (Ct. Cl.1970) ("While distribution to government agencies

Application/Control Number: 90/008,104                                Page 5
Art Unit: 3992

and personnel alone may not constitute publication ... distribution to commercial companies without restriction on use clearly does.").

8.    The examiner notes that in the arguments, the Patent Owner cites Garrett Corp. v. United States, stating that the Court describes "distribution of 80 copies of report within government agencies to government personnel may not constitute publication".   Further, in Northern Telecom, Inc. v. Datapoint Corp., the Patent Owner continues on page 10 that "government documents which included the legend reproduction or further dissemination is not authorized ...not for public release" could not constitute printed publications" for use as prior art.   However, each of the J-CON Manual, the P.O Writer Manual, and the Gateway 2000/MRO Manual were not distributed to only "within government agencies to government personnel", and do not include any legend that states "not for public release".   Rather, as noted above, the manuals were available to persons within the general public that purchased the publicly available software.

9.    Continuing, the Patent Owner additionally argues on page 10 that in IMX, Inc. v. Lendingtree, LLC, 405 F. Supp.2d 479, 491 (D.Del. 2005), the Court stated that "a user manual for a software program and computer system did not constitute prior art because it was designated "Highly Confidential"..."  However, upon review of these court documents, the examiner notes that the noted User's Manual was in fact designated with "Highly Confidential – Attorneys Eyes Only".  The Court continued stating "there is no proof of record that it was sufficiently accessible to the public to be a printed publication."

Application/Control Number: 90/008,104                                    Page 6
Art Unit: 3992

10.     This is not the same as a distributed User's Manual that accompanied purchased software,

or a User's Manual that is accessible to the purchaser's of software, as in the instant J-CON

Manual, the P.O. Writer Manual, and the Gateway 2000/MRO Manual.  Thus, the J-CON

Manual, the P.O Writer Manual, and the Gateway 2000/MRO Manual were not "distributed

internally within an organization which are intended to remain confidential", and thus are

considered as prior art printed publications.


11.     Continuing, MPEP 2128.01 [R-3], Part I, states, in part:

        In re Bayer, 568 F.2d 1357, 196 USPQ 670 (CCPA 1978) **(A reference will
        constitute a "printed publication" as long as a presumption is raised that the
        portion of the public concerned with the art would know of the invention
        even if accessibility is restricted to only this part of the public**....[Emphasis
        added].

12.     Thus, in the instant case, the J-CON Manual, the P.O. Writer Manual, and the Gateway

2000/MRO Manual were accessible to persons who purchased the respective software, therein

being "the portion of the public concerned with the art... even if accessibility is restricted to only

this part of the public".


13.     Further, the Patent Owner argues that the J-CON Manual, the P.O Writer Manual, and the

Gateway 2000/MRO Manual each required the licensees to keep the information contained in the

manuals confidential.  First, the examiner notes that the J-CON Manual does not contain any

such statement.  Further, the Patent Owner points to the P.O. Writer Manual's notice that states

that "Client acknowledges the proprietary nature of P.O. WRITER PLUS and agrees not to make

Application/Control Number: 90/008,104                                    Page 7
Art Unit: 3992

copies of P.O. Writer Plus software or User's Manuals...." However, the examiner notes that

this is not an agreement to keep the user's manual "confidential", but rather not to make

unauthorized reproductions of the manual.


14.      Further, the Patent Owner points out that the Gateway 2000/MRO Manual states that

"LICENSEE understands and agrees that the Program constitutes confidential and proprietary

information of LICENSOR...." However, the examiner notes that this agreement is for the

Program and not for the Manual that accompanied the software. The Patent Owner further

argues that the Gateway 2000/MRO further states that "No part of this product may be copied,

reproduced, translated or transcribed...without prior written consent ...". But once again, this

does not state that the manual is confidential, but rather that persons may not make unauthorized

reproductions of the product. The examiner notes that confidential agreements not to make

copies, as discussed above and described by the Patent Owner, become applicable in determining

whether a document is a printed publication when the art in question was not distributed, but

rather, being temporarily publicly displayed documents, such as slides in a presentation.


15.      In this regard, MPEP 2128.01 [R-3], Part IV states:

          A publicly displayed document where persons of ordinary skill in the art could
          see it and are not precluded from copying it can constitute a "printed publication,"
          even if it is not disseminated by the distribution of reproductions or copies and/or
          indexed in a library or database. As stated in In re Klopfenstein, 380 F.3d 1345,
          1348, 72 USPQ2d 1117, 1119 (Fed. Cir. 2004), "the key inquiry is whether or not
          a reference has been made publicly accessible.'" Prior to the critical date, a
          fourteen-slide presentation disclosing the invention was printed and pasted onto

poster boards. The printed slide presentation was displayed with no
confidentiality restrictions for approximately three cumulative days at two
different industry events. 380 F.3d at 1347, 72 USPQ2d at 1118. The court noted
that "an entirely oral presentation that includes neither slides nor copies of the
presentation is without question not a printed publication' for the purposes of 35
U.S.C. § 102(b). Furthermore, a presentation that includes a transient display of
slides is likewise not necessarily a printed publication.'" 380 F.3d at 1349 n.4, 72
USPQ2d at 1122 n.4. In resolving whether or not a temporarily displayed
reference that was neither distributed nor indexed was nonetheless made
sufficiently publicly accessible to count as a "printed publication" under 35
U.S.C. 102(b), the court considered the following factors: "the length of time the
display was exhibited, the expertise of the target audience, the existence (or lack
thereof) of reasonable expectations that the material displayed would not be
copied, and the simplicity or ease with which the material displayed could have
been copied." 380 F.3d at 1350, 72 USPQ2d at 1120. Upon reviewing the above
factors, the court concluded that the display "was sufficiently publicly accessible
to count as a printed publication.'" 380 F.3d at 1352, 72 USPQ2d at 1121.<

16.     In the instant case, each of the references of the J-CON Manual, the P.O. Writer Manual,
and the Gateway 2000/MRO Manual were not just temporarily displayed to customers.  Rather,
these documents were distributed to persons who purchased the commercially available software
product, where the purchasers were not limited to a closed group.  As noted above, the J-CON
Manual, the P.O. Writer Manual, and the Gateway 2000/MRO Manual were accessible to
persons who purchased the respective software, therein being "the portion of the public
concerned with the art... even if accessibility is restricted to only this part of the public".

Application/Control Number: 90/008,104                                          Page 9
Art Unit: 3992

With respect to the Patent Owner arguments regarding the J-CON Manual:

17.     In response to Patent Owner's arguments regarding the rejection of claims 26-45 as being

anticipated by the J-CON Manual, the Patent Owner argues on pages 26 and 27 that the

purchaser utilizes the claimed methods to build requisitions and generate purchase orders, as

opposed to the argued retailer in the J-CON Manual.  The examiner notes that as the claims are

currently worded, this distinction is not required in the claim language.  There is no requirement

that a purchaser device perform the claimed methods in claims 26-45.  If the Patent Owner

wishes this feature to be considered, than the claims should be amended accordingly.


18.     Continuing, on pages 28 and 29, the Patent Owner argues that the J-CON Manual fails to

disclose the limitation of "maintaining at least two product catalogs on a database containing

data relating to items associated with respective sources", as the Patent Owner argues that the J-

CON Manual merely utilizes a single catalog only, being the electronic parts catalog of the

retailer.  The examiner notes that the current claim language does not require maintaining at least

two retail catalogs relating to respective retail sources.  Rather, the current claim language

requires at least two product catalogs that contain data that are associated with respective

sources.  The Patent Owner describes the meaning of "catalog" on page 22 of the arguments as

being "an organized collection of items and associated information which typically includes a

part number, price, catalog number, vendor name, vendor ID, a textual description of an item,

and images of or relating to the item".  However, this would not be the broadest reasonable

Application/Control Number: 90/008,104                                      Page 10
Art Unit: 3992

interpretation of the term "catalog". Instead, a broad and reasonable interpretation of the term

"catalog" would just be "an organized collection of items".


19.     With this, the J-CON Manual is clear to teach of organized collections of auto parts, since

as read on Ch. 3, Sec. 2, page 1, "parts are organized into part groups; for example, wheels and

brake parts are in one group, and filters and parts for tune-ups are in another group." Thus, these

groups of organized parts can be each considered as "product catalogs". The Patent Owner

further argues that the claimed system is intended to facilitate sales from multiple sources, rather

than sales from a single source, being the retailer in the J-CON Manual. However, the examiner

notes that in interpreting the current claim language, the source would not be the retailer that

uses the J-CON software, but instead, the source of the auto parts in the respective groups of

parts. These various manufacturers of auto parts would be considered as "source", being a

"supplier, vendor, or distributor of products", being the understood meaning of a "source".

Therefore, the J-CON Manual can be reasonably interpreted as teaching of "maintaining at least

two product catalogs on a database containing data relating to items associated with respective

sources", as parts data is stored that relates to items associated with respective manufacturing

sources.


20.     Continuing, on page 30, that Patent Owner argues that the J-CON Manual does not teach

of the limitation of "selecting the product catalogs to search". The examiner notes that the J-

CON Manual states on Ch.3, Sec.2, Page 3 that "At "Subgroup", choose one: Enter numbers for

the subgroups you want. Result: J-CON marks each subline you selected with an ">"....". Thus,

Application/Control Number: 90/008,104                                    Page 11
Art Unit: 3992

with the groups of parts in each subgroup being considered as "product catalogs" as discussed

above, the J-CON Manual is clear to teach of "selecting the product catalogs to search".


21.    Continuing, the Patent Owner argues on pages 30 and 31 that the J-CON Manual does not

teach of "searching for matching items among the selected product catalogs".  As seen in Ch.3,

Sec.2, Page 1, the J-CON Manual states "When you look up a part with PartFinder, you specify

its group and subgroup, as well as the vehicle's year, make, and model, J-CON then displays a

list of possible parts and their prices for the customer.  You select a part from the list and specify

how many you want."  With this, the J-CON Manual is teaching that the system searches and

displays parts that match the customer's selections, whereby the selected subgroups, seen as

catalogs, are searched.


22.    Continuing, the Patent Owner argues on pages 31-33 that the J-CON Manual does not

teach of "building a requisition using data relating to selected matching items and their

associated source(s)".  The Patent Owner continues on page 32 arguing that the displayed parts

list in the J-CON Manual is not a "requisition", whereby the Patent Owner defines a requisition

as a formal request to purchase something.  The examiner notes that the current claim language

requires "building a requisition".  The Patent Owner describes a "requisition" on pages 23 and 24

as being a formal request to purchase something.  However, the term "requisition" comprises

numerous definitions.  For instance, Merriam Webster's Collegiate Dictionary, tenth edition

includes  definitions for the term "requisition" as "the act of formally requiring or calling upon

someone to perform an action;...the act of requiring something to be furnished;..a written request

for something authorized but not made available automatically;...the state of being in demand or use." Further, the website dictionary.com includes definitions of the term "requisition" as "an authoritative or formal demand for something to be done, given, supplied, etc.: *The general issued a requisition to the townspeople for eight trucks....*a written request or order for something, as supplies". Thus, with this, the J-CON Manual is teaching of building an order for parts, whereby as seen in Ch.3, Sec.2, Page 4, the J-CON Manual states "At 'Selection', choose one: Enter the number for the part you want. When you finish selecting parts, press <Order Screen> to return to POS...". Therefore, using a broad and reasonable interpretation us, the J-CON Manual is seen as teaching of "building a requisition using data relating to selected matching items and their associated source(s)", as currently required.


23.      Continuing, the Patent Owner argues on pages 33 and 34 that the J-CON Manual fails to teach of the limitation of "processing the requisition to generate one or more purchase orders for the selected matching items". As read in Ch. 4, Sec. 4, pages 1-7, the J-CON Manual states "You can set up J-CON to automatically compute POs during EOD. You can also set it to automatically transmit POs to vendors who use A-DIS. The POs can go to primary and alternate vendors, and to other vendors for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data." Thus, the J-CON Manual describes a purchase order being generated from the processed request for parts, interpreted as a "requisition".

24.    Continuing, the Patent Owner argues on pages 34 and 35 that the J-CON Manual fails to

teach the limitation of "determining whether a selected matching item is available in inventory".

The examiner notes that the J-CON Manual describes in Ch.3, Sec.2, page 6, that the field

"AVL: quantity available" is utilized for determining the available inventory.  The J-CON

Manual states "If the quantity available is less than one, PartFinder looks for a replacement part".

Further, on the same page, the J-CON Manual further states that "J-CON tells you if a part is

stocked at the warehouse..."  Therefore, each of the limitations of claim 26 can be interpreted as

being taught by the J-CON Manual.


25.    Regarding dependent *claim 27*, the Patent Owner argues on page 35 that the J-CON

Manual fails to teach of the limitation requiring "purchase orders include data relating to a

vendor catalog number for the selected matching items".  The examiner notes that the claim

currently requires that purchase orders include "data **relating to** a vendor catalog number for the

selected matching items".  With this, as seen in Ch.4, Sec.5, Pages 3 and 4, the J-CON Manual

shows a sample Purchase Order, whereby part numbers are displayed for a specific vendor.

These part numbers for a specific vendor can be considered as "data relating to a vendor catalog

number for the selected matching items".


26.    Continuing, regarding *claim 28*, the Patent Owner argues on page 36 that the J-CON

Manual further does not teach of the limitations that require "converting data relating to a

selected matching item and an associated source to data relating to an item and a different

source".  As seen in Ch.3,Sec.2, Page 6, the J-CON Manual states "If the quantity available is

Application/Control Number: 90/008,104                                              Page 14
Art Unit: 3992

less than one, PartFinder looks for a replacement part.". Further, the J-CON Manual states on

Ch.3,Sec.2, Page 11 within the "Alternate Parts" section, that "J-CON usually displays an

alternate part in PartFinder only if you're out of the original part.". Continuing in Ch.3,Sec.4,

Page 1, the J-CON Manual states "InterChange is an optional product that you use to find an

equivalent (or InterChange) part for a competitive part. You start InterChange from POS or from

PartFinder.". With this, the J-CON Manual teaches of converting the selected data from a

particular source to another alternate part from a different source, which is interpreted as a

different manufacturer of the part. The alternate part is from an alternate supplier, being a

different source, as opposed to Patent Owner's interpreted "J-CON System retailer's stock".


27.     Regarding dependent *claims 29 and 30*, the Patent Owner argues on pages 37 and 38 that

the J-CON Manual fails to teach of "determining whether a selected matching item is available

in inventory" as well as "determining the applicable price of a selected matching item". As

noted above in the discussion of claim 26, the J-CON Manual describes "determining whether a

selected matching item is available in inventory." Further, the J-CON Manual can be interpreted

as teaching the step of determining the applicable price of a selected matching item. Particularly,

in Ch.3,Sec.2, Page 4, the J-CON Manual states "If you have PartSource and want J-CON to

display prices for parts not in your JIF, press <Prices>. Result: J-CON displays the prices.".

With this, the J-CON system displays a determined applicable price for a selected part. The

Patent Owner argues that the inventory checking function and the purchase order creation

process described in Ch. 3 and Ch. 4 of the J-CON Manual are unrelated, and a price

determination that is required in claim 30 is different that what is described in the J-CON Manual

Application/Control Number: 90/008,104                                    Page 15
Art Unit: 3992

because it cannot be used with purchase order creation, as prices must appear in a purchase order

for the purchase order to be valid. The examiner notes that the J-CON Manual shows sample

built purchase orders on Ch.4,Sec.5, Pages 3 and 4, whereby the purchase order displays a

determined applicable unit price. This displaying of an applicable price for the item can be

considered as "determining the applicable price".


28.     Regarding *claim 32*, the Patent Owner argues on page 39 that the J-CON Manual fails to

teach the limitation requiring "the purchase orders use data relating to at least two sources". As

seen in Ch.4, Sec.5, Pages 3 and 4, the J-CON Manual teaches that the purchase orders are using

data from at least two vendors, being interpreted as the at least two sources of the parts. As

described above in the discussion of claim 26, the sources can be reasonably interpreted as being

the various manufacturers of parts that are included in the groups and subgroups. This is shown

in Ch.3, App.A, Page 13, whereby the J-CON Manual describes "primary and alternate

manufacturers".


29.     Therefore, the J-CON Manual is still seen to teach each of the limitations required by

claims 26-45, as currently written. Therefore the rejection of claims 26-45 under 35 U.S.C.

102(a), as cited in the previous Office action dated 2/29/2008, as being anticipated by the J-CON

Manual, is maintained and repeated in this Office action.

Application/Control Number: 90/008,104                                    Page 16
Art Unit: 3992

With respect to the Patent Owner arguments regarding the SABRE Guide:

30.     On page 43, the Patent Owner argues that the SABRE Guide fails to teach of
"maintaining at least two product catalogs on a database containing data relating to items
associated with the respective sources". The examiner notes that in page 2 of the SABRE Guide,
each of the carriers' would provide their individual flight schedules. Each carrier's flights would
be considered as their catalog of flights. Thus, SABRE Guide is seen as maintaining at least two
product catalogs on a database containing data relating to items associated with the respective
sources".

31.     Continuing, the Patent Owner argues that he SABRE Guide fails to teach the limitation
requiring "selecting the product catalogs to search and searching for matching items among the
selected product catalogs". As noted above, the SABRE Guide describes various carriers'
having their catalog of flights. With this, the SABRE Guide teaches that a query is issued that
searches available flights for a customer. Further, the SABRE Guide teaches that a particular
carrier can also be selected to limit the query. Thus, the SABRE Guide can be interpreted in a
broad and reasonable manner to teach of "selecting the product catalogs to search and searching
for matching items among the selected product catalogs". Further, the examiner notes that the
query described in the SABRE Guide further teaches the next limitation that requires "searching
for matching items among the selected product catalogs".

Application/Control Number: 90/008,104                                    Page 17
Art Unit: 3992

32.     Continuing, on page 45, the Patent Owner argues that the SABRE Guide fails to teach of

the limitation of "building a requisition using the data relating to selected matching items and

their associated source(s)", whereby the Patent Owner argues that the passenger name record

(PNR) would not be equivalent to a requisition, since the PNR is used by the SABRE system to

"hold", and not actually buy an itinerary from a carrier.  Further, the Patent Owner argues that a

requisition is document that is internal to the purchasing organization, and the SABRE Guide

describes the PNR as interacting with the source or carrier to reserve airline seats.  The examiner

notes that the current claim language does not require that the requisition cannot interact with the

source or carrier.


33.     Rather, the claim requires building a "requisition".  As described above with respect to

the J-CON Manual, the examiner notes that the term "requisition" comprises numerous

definitions.  Thus, the term "requisition" is not required to be internal to the purchasing

organization, nor is the term "requisition" required to "actually buy the itinerary from a carrier".

While the definition supplied by the Patent Owner of the term "requisition" certainly is seen and

understood, the term can be also reasonably interpreted as being "an order for something".  The

SABRE Guide is clear that the PNR is an order for tickets, which is not made available

automatically, but rather waits for the customer to order the airline tickets.


34.     Continuing, on page 46, the Patent Owner continues arguing that he SABRE Guide fails

to teach of "processing the requisition to generate one or more purchase orders for the selected

matching items".  The finalized record of the PNR after it has been completed by the customer is

Application/Control Number: 90/008,104                                   Page 18
Art Unit: 3992

transmitted directly to a carrier's central computer for permanent storage. This transmittal can be

interpreted as a "purchase order". The Patent Owner continues arguing on page 47 that the

finalized PNR is not a purchase order because it does not possess the characteristics of a

purchase order, as the Patent Owner defines a purchase order as "a contractual document

prepared by a buyer committing to buy something from a seller". While this definition is

understood, the term "purchase order" can be broadly and reasonably interpreted as being the

finalized PNR.


35.     Continuing, the Patent Owner argues on page 47 that the SABRE Guide fails to teach of

"determining whether a selected matching item is available in inventory", whereby the Patent

Owner argues that the timing of the SABRE system of this determination occurs as a precursor to

making a travel reservation, as opposed to the current invention, which requires a confirmation

that a desired product is available after the purchase order is generated, so that if the product is

available, the purchase order is issued to that source. The examiner notes that the current claim

language does not require this. Further, the exact timing of the occurrence of determining if an

item is in inventory is not claimed. If the Patent Owner wishes that this timing be considered,

then the current claim language should be amended accordingly.


36.     Regarding dependent *claim 27*, the Patent Owner argues on pages 48 and 49 that the

SABRE Guide fails to teach of the limitation requiring "purchase orders include data relating to

a vendor catalog number for the selected matching items". The examiner notes that the claim

currently requires that purchase orders include "data **relating to** a vendor catalog number for the

selected matching items". With this, as seen in pages 10 and 11, the PNR contains the "Carrier

and flight number", "Class of service", "Date of departure", and "Day of week code", whereby

this data can be collectively considered as "data relating to a vendor catalog number".

37.     Continuing, regarding *claim 28*, the Patent Owner argues on page 49 that the SABRE

Guide further does not teach of the limitations that require "converting data relating to a selected

matching item and an associated source to data relating to an item and a different source". As

seen in page 64, the SABRE Guide states "If the class of service requested is sold out, SABRE

displays a city pair availability for alternate flights....the requested class, Y, is sold out and the

wait list is open. SABRE is displaying six alternate flights for the travel date, city pair, and

departure time 11:45 am of the original flight that was requested.". Further as read in page 2,

"SABRE maintains a vast amount of current information. For example, it stores: Flight schedules

for more than 680 worldwide carriers...Hotel descriptions and prices for more than 17,000

properties throughout the world". Thus, the SABRE Guide is clear that alternate flights are

searched, which include "more than 680 worldwide carriers", therein being "data relating to an

item and a different source", as currently claimed.

38.     Regarding dependent *claims 29 and 30*, the Patent Owner argues on page 50 that the

SABRE Guide fails to teach of "determining whether a selected matching item is available in

inventory" as well as "determining the applicable price of a selected matching item". As noted

above in the discussion of claim 26, the SABRE Guide describes "determining whether a

selected matching item is available in inventory." Further, the SABRE Guide can be interpreted

Application/Control Number: 90/008,104                                    Page 20
Art Unit: 3992

as teaching the step of determining the applicable price of a selected matching item. Particularly, on page 279, the SABRE Guide states that "Itinerary pricing enables the travel agent to display the fare for a PNR that is currently in the computer's working area...SABRE "reads" the flight information in the itinerary and displays the base fare, tax, and total amounts based on the city pair, travel date, and class of service." This can be considered as "determining the applicable price". The Patent Owner argues that the "pricing described on page 279 is not the correct or accurate pricing due to the "Guaranteed Fare Rule". However, "accurate pricing" is not currently required in the current claim language. If the Patent Owner desires this feature to be considered, then the claim must be amended accordingly.

39.     Regarding *claim 32*, the Patent Owner argues on page 51 that the SABRE Guide fails to teach the limitation requiring "the purchase orders use data relating to at least two sources". The SABRE Guide states on page 2 that "SABRE maintains a vast amount of current information. For example, it stores: Flight schedules for more than 680 worldwide carriers...Hotel descriptions and prices for more than 17,000 properties throughout the world". Thus, the SABRE Guide is clear that "schedules for more than 680 worldwide carriers" are stored, therein being "data relating to at least two sources", as currently claimed.

40.     Therefore, the SABRE Guide is still seen to teach each of the limitations required by claims 26-45, as currently written. Therefore the rejection of claims 26-45 under 35 U.S.C. 102(b), as cited in the previous Office action dated 2/29/2008, as being anticipated by the SABRE Guide, is maintained and repeated in this Office action.

Application/Control Number: 90/008,104                                    Page 21
Art Unit: 3992

<u>With respect to the Patent Owner arguments regarding the P.O. Writer Manual:</u>

41.      The Patent Owner argues that the P.O. Writer Manual does not teach of "maintaining at

least two product catalogs on a database containing data relating to items associated with

respective sources". On page 22, the P.O. Writer Manual describes selecting from the Best Buy

catalog, as well as the Bayless catalog, "or any other vender you would like to select". Thus, the

P.O. Writer Manual teaches of "maintaining at least two product catalogs". Continuing, the

Patent Owner argues that the P.O. Writer Manual does not teach of "selecting the product

catalogs to search". However, as noted above, in page 22, the P.O. Writer Manual states "You

can now buy this item from Best Buy, Bayless, or any other vendor you would like to select.".

Continuing, the Patent Owner argues on page 55 that the P.O. Writer Manual fails to teach of

"searching for matching items among the selected product catalogs". The P.O. Writer Manual

states on page 46 that "For example, say you want to display all items in the Bayless Catalogue

whose description starts with the letters "P".; also see page 47, wherein "There are 3 items in

the Bayless catalogue whose descriptions begin with the letter P." These sections teach that the

selected catalogs are searched for matching items. The Patent Owner argues that the P.O. Writer

Manual does not teach of "building a requisition using data related to selected matching items

and their associated source(s)". The P.O. Writer Manual teaches on page 47 that an order is

created based on the matching items, whereby this order can be interpreted as a requisition. This

is further taught on pages 117-147, where the P.O. Writer Manual expressly states that

requisitions are built.

Application/Control Number: 90/008,104                                    Page 22
Art Unit: 3992

42.     The Patent Owner further argues that the P.O. Writer Manual does not teach of

"processing the requisition to generate one or more purchase orders for the selected matching

items". The examiner notes that on page 149, the P.O. Writer Manual states "The

REQUISTIONING INTERFACE allows you to turn purchase Requisitions into Purchase Orders

quickly and easily. Requisitions can be automatically consolidated onto one Purchase Order.".

The Patent Owner argues on page 58 that the processing of converting requisitions into purchase

orders is "wholly different from what is required by claim 26 because the information does not

include the information about the sources associated with the included line items." First, the

examiner notes that the current claim language does not require the requisition to include "the

information about the sources associated with the included line items." Further, on page 152 of

the P.O. Writer Manual, the highlighted portion displays the "selected vendor", such as

"Bayless". This is considered as information about the source.


43.     Continuing, the Patent Owner argues on page 58 that the P.O. Writer Manual does not

teach the limitation of "determining whether a selected matching item is available in inventory".

The examiner notes that on page 102, the P.O. Writer Manual states that "The Inventory Control

Module allows you to track on-hand inventory balances and report usage history, and

automatically generate Re-order Analysis as often as you like." Further on page 103, the P.O.

Writer Manual states that "The P.O. WRITER PLUS Inventory Control Module allows you to

specify those items you would like to track in Inventory." The Patent Owner argues that the

claim requires that the inventory checking recited in the limitation refers to determining whether

the selected items are available for purchase from a supplier by virtue of their being on-hand in

Application/Control Number: 90/008,104                                    Page 23
Art Unit: 3992

the supplier's inventory.  The examiner notes that the current claim language does not require

this, and if the Patent Owner desires that the inventory checking step be explicitly utilized for

determining if items are available for purchase, then the claim must be amended accordingly.

The Patent Owner additionally describes portions in the specification of the '683 Patent that

describe this inventory checking step.  However, it is improper to import limitations described in

the specification into the claim language.


44.      Regarding dependent *claim 27*, the Patent Owner argues on page 59 that the P.O. Writer

Manual fails to teach of the limitation requiring "purchase orders include data relating to a

vendor catalog number for the selected matching items".  The Patent Owner further argues that

because the purchase order items are not associated with a source, the manufacturer's part

numbers could apply to any catalog that sells respective manufacturer's products.  However, as

noted above, claim 27 currently requires that purchase orders include "data **relating to** a vendor

catalog number for the selected matching items".  As seen in the sample Purchase Order on

pages 43 and 44, Vendor ID numbers are shown.  Further, the Purchase Order also includes Item

Numbers for the various selected items.  This data can be considered as "data **relating to** a

vendor catalog number".  Additionally, as read on page 131, the P.O. Writer Manual states "Items

from a specific catalog can be displayed by entering a Catalogue ID at the top of the screen.".

Thus, the P.O. Writer Manual is seen to have a purchase order that includes data that is related to

a vendor catalog number.  As the Patent Owner admits "the manufacturer's part numbers could

apply to any catalog that sells respective manufacturer's products", therein the data can be

"relating to a vendor catalog number", as currently required in the claim language.

45.   Continuing, regarding *claim 28*, the Patent Owner argues on page 60 that the P.O. Writer Manual further does not teach of the limitations that require "converting data relating to a selected matching item and an associated source to data relating to an item and a different source". Further, the Patent Owner continues that the "claim language is clearly stating that a different source is being selected - the source is being replaced with another source", as opposed to the P.O. Writer Manual's teachings of "only selecting a source, not converting data related to one source to a different source". However, as seen on pages 21-23, data concerning the selected matching item of "A1000" from the source of "Bayless" is converted to a different source of "Best Buy", albeit manually, as the P.O. Writer Manual states on page 22 that "In the Vendor Number field, type 12345" and on page 23 that "All you have to do is change the appropriate fields and your done". Thus, the P.O. Writer Manual is seen as teaching of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source", as currently required in the claim language.

46.   Regarding dependent *claims 29 and 30*, the Patent Owner argues on page 61 that the P.O. Writer Manual fails to teach of "determining whether a selected matching item is available in inventory" as well as "determining the applicable price of a selected matching item". As noted above in the discussion of claim 26, the P.O. Writer Manual describes "determining whether a selected matching item is available in inventory." Continuing, the Patent Owner argues that the Price Analysis report taught by the P.O. Writer Manual is "an after-the-fact report, totally unrelated to determining the pricing for selected matching items at the time they are selected during the process of building requisitions and/or generating purchase orders." However, the

examiner notes that claim 30 only requires "determining an applicable price" and does not specifically require this being done "at the time they are selected during the process of building requisitions and purchase orders", as argued.  If the Patent Owner wishes this feature to be considered in the interpretation of the claim, then the claim should be amended accordingly.  As seen on page 71, the P.O. Writer Manual teaches of "PRICE ANALYSIS – shows all P.O.'s, compare actual to standard cost, calculates variances, and average and actual prices.", therein teaching of "determining a applicable price".

47.     Regarding *claim 32*, the Patent Owner argues on page 62 that the P.O. Writer Manual fails to teach the limitation requiring "the purchase orders use data relating to at least two sources".  On page 22, the P.O. Writer Manual describes selecting from the Best Buy catalog, as well as the Bayless catalog, "or any other vender you would like to select".   In this interpretation, the source of the selected items is "Best Buy", "Bayless", "or any other vendor".  Thus, the purchase orders are seen to "use data relating to at least two sources", as currently required in the claim language.

48.     Therefore, the P.O. Writer Manual is still seen to teach each of the limitations required by claims 26-45, as currently written.  Therefore the rejection of claims 26-45 under 35 U.S.C. 102(a), as cited in the previous Office action dated 2/29/2008, as being anticipated by the P.O. Writer Manual, is maintained and repeated in this Office action.

Application/Control Number: 90/008,104                                   Page 26
Art Unit: 3992

<u>With respect to the Patent Owner arguments regarding the Gateway 2000/MRO Manual:</u>

49.    Continuing, the Patent Owner argues that the Gateway 2000/MRO Manual fails to teach

of the limitation of "maintaining at least two product catalogs on a database containing data

relating to items associated with the respective sources". The Patent Owner continues arguing

on page 66 that the term "catalog" would include "pricing", as "pricing is an essential (i.e., non-

optional) attribute of any catalog." The examiner notes that the catalog that includes "pricing" is

not currently required in the current claim language. If the Patent Owner wishes the claims to

have this feature considered, then the claim must be amended to include "pricing". The Patent

Owner argues that the Gateway 2000/MRO Manual fails to teach of "selecting the product

catalogs to search". The Patent Owner continues that the Gateway 2000/MRO Manual does not

have the ability to select more than one catalog to be searched. The examiner notes that on page

4-19, the Gateway 2000/MRO Manual states "When a catalog is selected, the items listed in that

catalog will be displayed...The system will return for another selection. Repeat this process for

each item required." As further seen on page 4-18, "Catalogs can be created for any group of

commonly ordered items and used repeatedly throughout requisition and PO processing." Thus,

the Gateway 2000/MRO Manual allows for catalogs to be selected, albeit, one at a time.

However, the current claim language does not require concurrent selection of multiple catalogs,

as argued. If the Patent Owner wishes this feature to be considered in interpreting the current

claim language, then the claim must be amended accordingly.

Application/Control Number: 90/008,104                                    Page 27
Art Unit: 3992

50.      Continuing, the Patent Owner argues that the Gateway 2000/MRO Manual fails to teach

of "searching for matching items among the selected product catalogs".  First, the examiner notes

that the current claim language could be interpreted to mean that a user manually performs the

"searching for matching items".  With this, as read on page 4-19, "To choose from a catalog

position the lightbar to the desired item and press enter."  Thus, in this, the user is searching for

matching items to select.  Continuing, the examiner notes that on page 4-19, the Gateway

2000/MRO Manual additionally states "Upon selection of all items, the system will display all

the selected items."  Thus, the system would inherently search for the selected items and then

display them.


51.      Continuing, the Patent Owner argues that the Gateway 2000/MRO Manual fails to teach

of "building a requisition using data related to selected matching items and their associated

sources".  As seen in the text of pages 4-20 and 4-20, a requisition is built, having various

variables, which is shown in the figure on page 4-22, 4-27, as well as on page 4-33.  The Patent

Owner further argues that the requisition shown on page 4-33 is there an indication of associated

sources for the selected matching items.  The examiner notes that as the claims are currently

worded, the claim only requires "building a requisition using data relating to selected matching

items and their associated sources."  The requisition seen on page 4-33 includes data that relates

to selected matching items and their associated source, being the item number and the data in the

description.  The current claim language does not require that the "associated source" is included

in the requisition, but rather a requisition is built using data that relates to the selected items and

their source.

Application/Control Number: 90/008,104                                    Page 28
Art Unit: 3992

52.     Continuing, the Patent Owner argues that the Gateway 2000/MRO Manual fails to teach

of "processing the requisition to generate one or more purchase orders for the selected matching

items". The examiner notes that on page 6-3, the Gateway 2000/MRO Manual states "If a

requisition has already been entered, the data from the requisition will move forward into the

purchase order automatically.". This processing of the requisition is seen with the requisition

and purchase order seen on pages 4-33 and 6-35, respectively. The Patent Owner points out that

the two figures do not include vender information. However, the current language does not

require that source information be generated into the purchase order. If the Patent Owner wishes

these features to be considered, then the claims must be amended accordingly. Continuing, the

Patent Owner argues that the Gateway 2000/MRO Manual fails to teach of "determining whether

a selected matching item is available in inventory". The examiner notes that as read on page 4-

17, the Gateway 2000/MRO Manual states "If a stock item is not on file, the message "item not

found" will be displayed, and the message "item not on file, add new item now (Y/N)" will be

displayed." This shows that a user can check if a selected item is on file, which can be

considered as "in inventory".


53.     Regarding dependent *claim 27*, the Patent Owner argues on pages 72 and 73 that the

Gateway 2000/MRO Manual fails to teach of the limitation requiring "purchase orders include

data relating to a vendor catalog number for the selected matching items". However, as noted

above, claim 27 currently requires that purchase orders include "data **relating to** a vendor

catalog number for the selected matching items". On page 6-35, the Gateway 2000/MRO

Manual shows a sample purchase order, whereby a "Description" is included as having a

Application/Control Number: 90/008,104                                    Page 29
Art Unit: 3992

description of an item and a model number, which can be considered as "data relating to a

vendor catalog number for selected matching items". The Patent Owner further argues that the

purchase order described on page 6-35 "has no relationship to any catalog selection and/or

searching". As described above with respect to claim 26, the Gateway 2000/MRO Manual states

on page 4-19, that "When a catalog is selected, the items listed in that catalog will be

displayed...The system will return for another selection. Repeat this process for each item

required." As further seen on page 4-18, "Catalogs can be created for any group of commonly

ordered items and used repeatedly throughout requisition and PO processing." Thus, the

Gateway 2000/MRO Manual allows for catalogs to be selected, albeit, one at a time. However,

the current claim language does not require concurrent selection of multiple catalogs, as argued.

If the Patent Owner wishes this feature to be considered in interpreting the current claim

language, then the claim must be amended accordingly. Further, as read on page 4-19, the

Gateway 2000/MRO Manual states "To choose from a catalog position the lightbar to the desired

item and press enter." Thus, in this, the user is searching for matching items to select.

Continuing, the examiner notes that on page 4-19, the Gateway 2000/MRO Manual additionally

states "Upon selection of all items, the system will display all the selected items." Thus, the

system would inherently search for the selected items and then display them. Therefore, on page

6-35, the Gateway 2000/MRO Manual is seen as teaching that "purchase orders include data

relating to a vendor catalog number for the selected matching items".


54.     Continuing, regarding *claim 28*, the Patent Owner argues on pages 73 and 74 that the

Gateway 2000/MRO Manual further does not teach of the limitations that require "converting

data relating to a selected matching item and an associated source to data relating to an item and

a different source". Further, the Patent Owner argues that the modification of fields described on

pages 4-26 and 4-28, "deal with modifying fields in the requisition", as the "purchase order has

not yet been created", therein being out of sequence with the steps of claim 26. However, the

examiner notes that the claimed order of the limitations is not required to be in that specific

order, as argued by the Patent Owner.


55.     In this regard MPEP 2111.01 [R-5] states in part:

> Altiris Inc. v. Symantec Corp., 318 F.3d 1363, 1371, 65 USPQ2d 1865, 1869-70
> (Fed. Cir. 2003) (Although the specification discussed only a single embodiment,
> the court held that it was improper to read a specific order of steps into method
> claims where, as a matter of logic or grammar, the language of the method claims
> did not impose a specific order on the performance of the method steps, and the
> specification did not directly or implicitly require a particular order).


56.     Thus, in the instant case, there is no requirement in the current claim language that the

converting step occurs after a purchase order is generated. Particularly, the claim states

"converting data relating to a selected matching item and an associated source to data relating to

an item and a different source". Nothing in this limitation states or requires that the converting is

to occur after the purchase order is generated. If the Patent Owner wishes that this feature be

considered, then the claim must be amended accordingly.


57.     Continuing, the Patent Owner argues that there is no teaching that the system performs

any conversion, as the conversion must be entered manually. However, as the claims are

Application/Control Number: 90/008,104                                    Page 31
Art Unit: 3992

currently worded, there is no specific requirement that the "converting" is an automatic

conversion done automatically by a system.  If the Patent Owner wishes that this feature be

considered, then the claim must be amended accordingly.


58.     As seen on pages 4-26 through 4-28, the Gateway 2000/MRO Manual describes a

Requisition Maintenance" function, and states that "Any field (other than the requisition number)

can be changed through requisition maintenance."  With this, the "Requisition Maintenance"

function allows for converting data relating to a selected matching item to data relating to an

item and a different source, as a primary vendor can be changed to a secondary vendor, with both

being seen on page 12-3, by converting the vendor ID numbers, seen on page 4-27, as well as on

pages 4-8 and 4-9.


59.     Regarding dependent *claims 29 and 30*, the Patent Owner argues on page 75 that the

Gateway 2000/MRO Manual fails to teach of "determining whether a selected matching item is

available in inventory" as well as "determining the applicable price of a selected matching item".

As noted above in the discussion of claim 26, the Gateway 2000/MRO Manual describes

"determining whether a selected matching item is available in inventory."  Continuing, the Patent

Owner argues that the Gateway 2000/MRO Manual does not teach of the system being able to

recognize or use any applicable price for an item.  As described by the Patent Owner, the

Gateway 2000/MRO Manual teaches on page 4-8 that prices are entered into the system and can

compute sales tax on those prices.  This effectively can be interpreted as teaching "determining

the applicable price of a selected matching item", as the applicable price for the specific item is

Application/Control Number: 90/008,104                                    Page 32
Art Unit: 3992

calculated to include sales tax.  If the Patent Owner wishes to further define the term "applicable

price", then the claim must be amended accordingly.


60.     Regarding *claim 32*, the Patent Owner argues on page 76 that the Gateway 2000/MRO

Manual fails to teach the limitation requiring "the purchase orders use data relating to at least

two sources".  The Gateway 2000/MRO Manual teaches on page 15-42 that the purchase orders

use data relating to at least two sources, wherein "The GATEWAY 2000/MRO …System

provides a capability to define and store vendor catalogues that can be used for selection during

PO entry."  Thus, the using of "vendor catalogues" therein allows that the "purchase orders use

data relating to at least two sources", as currently claimed.


61.     Therefore, the Gateway 2000/MRO Manual is still seen to teach each of the limitations

required by claims 26-45, as currently written.  Therefore the rejection of claims 26-45 under 35

U.S.C. 102(b), as cited in the previous Office action dated 2/29/2008, as being anticipated by the

Gateway 2000/MRO Manual, is maintained and repeated in this Office action.

Application/Control Number: 90/008,104                                      Page 33

Art Unit: 3992

### *Claim Rejections - 35 USC § 102*

62.     The text of those sections of Title 35, U.S. Code not included in this action can be found

in a prior Office action.


63.     **Claims 26-45** are rejected under 35 U.S.C. 102(a) as being anticipated by "J-CON

Manual, Volume 1", authored by Cooperative Computing, Inc., having a date of April 1994,

noted in the Request for Reexamination as Exhibit B-1 (hereafter "the J-CON Manual").


Regarding *claim 26*, the J-CON Manual discloses a method comprising the steps of:

maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog

includes at least two product catalogs from different manufacturers, see Ch.3, Sec.2, Page 11,

being "Primary and Alternate Manufacturers"];

selecting the product catalogs to search [see Ch.3, Sec.2, Page 3, wherein "At

"Subgroup", choose one: Enter numbers for the subgroups you want. Result: J-CON marks each

subline you selected with an ">"…."; also see Ch.3,Sec.2, Page 11, whereby "At the

MANUFACTURERS field, enter the numbers of the manufacturers for which you want part

information."];

searching for matching items among the selected product catalogs [Ch.3, Sec.2, Page 1,

wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well

as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their

prices for the customer.  You select a part from the list and specify how many you want."  With

this, J-CON is teaching that the system searches and displays parts that match the customer's

selections];

building a requisition using data relating to selected matching items and their associated

source(s) [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose one: Enter the number for the

part you want.  When you finish selecting parts, press <Order Screen> to return to POS…"];

processing the requisition to generate one or more purchase orders for the selected

matching items [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages 1-7, wherein "You can set up

J-CON to automatically compute POs during EOD. You can also set it to automatically transmit

POs to vendors who use A-DIS. The POs can go to primary and alternate vendors, and to other

vendors for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data."];

and

determining whether a selected matching item is available in inventory [Ch.3, Sec.2,

Pages 6 and 10, whereby on page 6, the field "AVL: quantity available" is utilized for

determining the available inventory, and whereby on page 10, "Not Found (NF) Parts" are

described; also see Ch.2, Sec.10, Page 15].


Regarding *claim 27*, the J-CON Manual discloses the method discussed above in claim

26, and further teaches that the purchase orders include data relating to a vendor catalog number

for the selected matching items [see Ch.2, Sec.10, Pages 8 and 9, whereby J-CON displays the

"part number", the "warehouse number", and the "part's manufacturer code"; also see sample

Purchase Order in Ch.4, Sec.5, Page 4].

Application/Control Number: 90/008,104                                    Page 35
Art Unit: 3992

Regarding *claim 28*, the J-CON Manual discloses a method comprising the steps of:

maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog

includes at least two product catalogs from different manufacturers, see Ch.3, Sec.2, Page 11,

being "Primary and Alternate Manufacturers"];

selecting the product catalogs to search [see Ch.3, Sec.2, Page 3, wherein "At

"Subgroup", choose one: Enter numbers for the subgroups you want. Result: J-CON marks each

subline you selected with an ">"...."; also see Ch.3,Sec.2, Page 11, whereby "At the

MANUFACTURERS field, enter the numbers of the manufacturers for which you want part

information."];

searching for matching items among the selected product catalogs [Ch.3, Sec.2, Page 1,

wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well

as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their

prices for the customer.  You select a part from the list and specify how many you want."  With

this, J-CON is teaching that the system searches and displays parts that match the customer's

selections];

building a requisition using data relating to selected matching items and their associated

source(s) [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose one: Enter the number for the

part you want.  When you finish selecting parts, press <Order Screen> to return to POS..."];

processing the requisition to generate one or more purchase orders for the selected

matching items [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages 1-7, wherein "You can set up

J-CON to automatically compute POs during EOD. You can also set it to automatically transmit

POs to vendors who use A-DIS. The POs can go to primary and alternate vendors, and to other

vendors for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data."];

and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see Ch.3,Sec.2, Page 11, whereby within the

"Alternate Parts" section, "J-CON usually displays an alternate part in PartFinder only if you're

out of the original part."; also see Ch.3,Sec.4, Pages 1-5, whereby on page 1, "InterChange is an

optional product that you use to find an equivalent (or InterChange) part for a competitive part.

You start InterChange from POS or from PartFinder."].


Regarding *claim 29*, the J-CON Manual discloses the method discussed above in claim

28, and further teaches of the step of determining whether a selected matching item is available

in inventory [Ch.3, Sec.2, Pages 6 and 10, whereby on page 6, the field "AVL: quantity

available" is utilized for determining the available inventory, and whereby on page 10, "Not

Found (NF) Parts" are described; also see Ch.2, Sec.10, Page 15].


Regarding *claim 30*, the J-CON Manual discloses the method discussed above in claim

28, and further teaches of the step of determining the applicable price of a selected matching

item [see Ch.3,Sec.2, Page 4, whereby "If you have PartSource and want J-CON to display

prices for parts not in your JIF, press <Prices>. Result: J-CON displays the prices."; also see

Ch.3, Sec.2, Page 6].

Application/Control Number: 90/008,104                                    Page 37
Art Unit: 3992

Regarding *claim 31*, the J-CON Manual discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least two product

catalogs from different manufacturers, see Ch.3, Sec.2, Page 11, being "Primary and Alternate

Manufacturers"];

searching for matching items among the data relating to the items [Ch.3, Sec.2, Page 1,

wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well

as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their

prices for the customer.  You select a part from the list and specify how many you want."  With

this, J-CON is teaching that the system searches and displays parts that match the customer's

selections];

building a requisition using data relating to selected matching items and their associated

sources [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose one: Enter the number for the

part you want.  When you finish selecting parts, press <Order Screen> to return to POS…"];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages

1-7, wherein "You can set up J-CON to automatically compute POs during EOD. You can also

set it to automatically transmit POs to vendors who use A-DIS. The POs can go to primary and

alternate vendors, and to other vendors for whom you have set up PO control files in Function

7.7, Add or Edit Vendor Data."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see Ch.3,Sec.2, Page 11, whereby within the

Application/Control Number: 90/008,104                                      Page 38
Art Unit: 3992

"Alternate Parts" section, "J-CON usually displays an alternate part in PartFinder only if you're

out of the original part."; also see Ch.3,Sec.4, Pages 1-5, whereby on page 1, "InterChange is an

optional product that you use to find an equivalent (or InterChange) part for a competitive part.

You start InterChange from POS or from PartFinder."].


    Regarding *claim 32*, the J-CON Manual discloses the method discussed above in claim

31, and further teaches that the purchase orders use data relating to at least two sources [see

Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least two product catalogs from

different manufacturers; also see Ch.2, Sec.10, Page 8, whereby the Warehouse Inquiry screen

displays parts from different manufacturers; also see the sample Purchase Orders in Ch.4, Sec.5,

Pages 3 and 4].


    Regarding *claim 33*, the J-CON Manual discloses the method discussed above in claim

31, and further teaches that the purchase orders use data relating to catalog numbers [see Ch.2,

Sec.10, Pages 8 and 9, whereby J-CON displays the "part number", the "warehouse number",

and the "part's manufacturer code"; also see sample Purchase Orders in Ch.4, Sec.5, Pages 3 and

4].


    Regarding *claim 34*, the J-CON Manual discloses the method discussed above in claim

31, and further teaches of the step of determining whether a selected matching item is available

in inventory [Ch.3, Sec.2, Pages 6 and 10, whereby on page 6, the field "AVL: quantity

available" is utilized for determining the available inventory, and whereby on page 10, "Not

Found (NF) Parts" are described; also see Ch.2, Sec.10, Page 15].


Regarding *claim 35*, the J-CON Manual discloses the method discussed above in claim

31, and further teaches of the step of determining the applicable price of a selected matching

item [see Ch.3,Sec.2, Page 4, whereby "If you have PartSource and want J-CON to display

prices for parts not in your JIF, press <Prices>. Result: J-CON displays the prices."; also see

Ch.3, Sec.2, Page 6].


Regarding *claim 36*, the J-CON Manual discloses a method comprising the steps of:

maintaining a database containing at least two product catalogs containing data relating to

items associated with the respective sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder

catalog includes at least two product catalogs from different manufacturers, see Ch.3, Sec.2,

Page 11, being "Primary and Alternate Manufacturers"];

searching for matching items among the product catalogs [Ch.3, Sec.2, Page 1, wherein

"When you look up a part with PartFinder, you specify its group and subgroup, as well as the

vehicle's year, make, and model, J-CON then displays a list of possible parts and their prices for

the customer.  You select a part from the list and specify how many you want."  With this, J-

CON is teaching that the system searches and displays parts that match the customer's

selections];

building a requisition that includes a first matching item and a second matching item,

each from a different product catalog [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose

one: Enter the number for the part you want.  When you finish selecting parts, press <Order

Screen> to return to POS…"];

processing the requisition to generate purchase orders for the first and the second

matching items [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages 1-7, wherein "You can set up

J-CON to automatically compute POs during EOD. You can also set it to automatically transmit

POs to vendors who use A-DIS. The POs can go to primary and alternate vendors, and to other

vendors for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data."];

and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see Ch.3,Sec.2, Page 11, whereby within the

"Alternate Parts" section, "J-CON usually displays an alternate part in PartFinder only if you're

out of the original part."; also see Ch.3,Sec.4, Pages 1-5, whereby on page 1, "InterChange is an

optional product that you use to find an equivalent (or InterChange) part for a competitive part.

You start InterChange from POS or from PartFinder."].


Regarding *claim 37*, the J-CON Manual discloses the method discussed above in claim

36, and further teaches that a first purchase order uses data relating to the first matching item and

a second purchase order uses data relating to the second matching catalog item [see Ch.3, Sec.5,

Page 1, whereby the PartFinder catalog includes at least two product catalogs from different

manufacturers; also see Ch.2, Sec.10, Page 8, whereby the Warehouse Inquiry screen displays

parts from different manufacturers; also see the sample Purchase Orders in Ch.4, Sec.5, Pages 3

and 4].

Application/Control Number: 90/008,104                                                                    Page 41
Art Unit: 3992

Regarding *claim 38*, the J-CON Manual discloses the method discussed above in claim

36, and further teaches of the step of determining whether a selected matching item is available

in inventory [Ch.3, Sec.2, Pages 6 and 10, whereby on page 6, the field "AVL: quantity

available" is utilized for determining the available inventory, and whereby on page 10, "Not

Found (NF) Parts" are described; also see Ch.2, Sec.10, Page 15].


Regarding *claim 39*, the J-CON Manual discloses the method discussed above in claim

36, and further teaches of determining the applicable price of a selected matching item [see

Ch.3,Sec.2, Page 4, whereby "If you have PartSource and want J-CON to display prices for parts

not in your JIF, press <Prices>. Result: J-CON displays the prices."; also see Ch.3, Sec.2, Page

6].


Regarding *claim 40*, the J-CON Manual discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least two product

catalogs from different manufacturers, see Ch.3, Sec.2, Page 11, being "Primary and Alternate

Manufacturers"], whereby selected portions of the database may be searched separately [see

Ch.3, Sec.2, Page 3, wherein "At "Subgroup", choose one: Enter numbers for the subgroups you

want. Result: J-CON marks each subline you selected with an ">"...."; also see Ch.3,Sec.2, Page

11, whereby "At the MANUFACTURERS field, enter the numbers of the manufacturers for

which you want part information."];

Application/Control Number: 90/008,104                                    Page 42
Art Unit: 3992

searching for matching items among the selected portions of the database [Ch.3, Sec.2,

Page 1, wherein "When you look up a part with PartFinder, you specify its group and subgroup,

as well as the vehicle's year, make, and model, J-CON then displays a list of possible parts and

their prices for the customer. You select a part from the list and specify how many you want."

With this, J-CON is teaching that the system searches and displays parts that match the

customer's selections];

building a requisition using data relating to selected matching items and their associated

source(s) [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose one: Enter the number for the

part you want. When you finish selecting parts, press <Order Screen> to return to POS…"];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages

1-7, wherein "You can set up J-CON to automatically compute POs during EOD. You can also

set it to automatically transmit POs to vendors who use A-DIS. The POs can go to primary and

alternate vendors, and to other vendors for whom you have set up PO control files in Function

7.7, Add or Edit Vendor Data."]; and

determining whether a selected matching item is available in inventory [Ch.3, Sec.2,

Pages 6 and 10, whereby on page 6, the field "AVL: quantity available" is utilized for

determining the available inventory, and whereby on page 10, "Not Found (NF) Parts" are

described; also see Ch.2, Sec.10, Page 15].

Application/Control Number: 90/008,104                                    Page 43
Art Unit: 3992

Regarding *claim 41*, the J-CON Manual discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

sources [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least two product

catalogs from different manufacturers, see Ch.3, Sec.2, Page 11, being "Primary and Alternate

Manufacturers"], whereby selected portions of the database may be searched separately [Ch.3,

Sec.2, Page 1, wherein "When you look up a part with PartFinder, you specify its group and

subgroup, as well as the vehicle's year, make, and model, J-CON then displays a list of possible

parts and their prices for the customer.  You select a part from the list and specify how many you

want."  With this, J-CON is teaching that the system searches and displays parts that match the

customer's selections];

searching for matching items among the selected portions of the database [Ch.3, Sec.2,

Page 1, wherein "When you look up a part with PartFinder, you specify its group and subgroup,

as well as the vehicle's year, make, and model, J-CON then displays a list of possible parts and

their prices for the customer.  You select a part from the list and specify how many you want."

With this, J-CON is teaching that the system searches and displays parts that match the

customer's selections];

building a requisition using data relating to selected matching items and their associated

source(s) [see Ch.3,Sec.2, Page 4, wherein "At 'Selection', choose one: Enter the number for the

part you want.  When you finish selecting parts, press <Order Screen> to return to POS..."];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see Ch.4, Sec.3, Page 1, and Ch. 4, Sec. 4, pages

1-7, wherein "You can set up J-CON to automatically compute POs during EOD. You can also

set it to automatically transmit POs to vendors who use A-DIS. The POs can go to primary and

alternate vendors, and to other vendors for whom you have set up PO control files in Function

7.7, Add or Edit Vendor Data."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see Ch.3,Sec.2, Page 11, whereby within the

"Alternate Parts" section, "J-CON usually displays an alternate part in PartFinder only if you're

out of the original part."; also see Ch.3,Sec.4, Pages 1-5, whereby on page 1, "InterChange is an

optional product that you use to find an equivalent (or InterChange) part for a competitive part.

You start InterChange from POS or from PartFinder."].

Regarding *claim 42*, the J-CON Manual discloses the method discussed above in claim

41, and further teaches that a first purchase order uses data relating to selected matching items

from a first source and a second purchase order uses data relating to selected matching items

from a second source [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least

two product catalogs from different manufacturers; also see Ch.2, Sec.10, Page 8, whereby the

Warehouse Inquiry screen displays parts from different manufacturers; also see the sample

Purchase Orders in Ch.4, Sec.5, Pages 3 and 4].

Regarding *claim 43*, the J-CON Manual discloses the method discussed above in claim

41, and further teaches of the step of determining whether a selected matching item is available

in inventory [Ch.3, Sec.2, Pages 6 and 10, whereby on page 6, the field "AVL: quantity

available" is utilized for determining the available inventory, and whereby on page 10, "Not

Found (NF) Parts" are described; also see Ch.2, Sec.10, Page 15].

Regarding *claim 44*, the J-CON Manual discloses the method discussed above in claim

41, and further teaches of the step of determining the applicable price of a selected matching

item [see Ch.3,Sec.2, Page 4, whereby "If you have PartSource and want J-CON to display

prices for parts not in your JIF, press <Prices>. Result: J-CON displays the prices."; also see

Ch.3, Sec.2, Page 6].

Regarding *claim 45*, the J-CON Manual discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

vendors [see Ch.3, Sec.5, Page 1, whereby the PartFinder catalog includes at least two product

catalogs from different manufacturers, see Ch.3, Sec.2, Page 11, being "Primary and Alternate

Manufacturers"], whereby selected portions of the database may be searched separately [see

Ch.3, Sec.2, Page 3, wherein "At "Subgroup", choose one: Enter numbers for the subgroups you

want. Result: J-CON marks each subline you selected with an ">"...."; also see Ch.3,Sec.2, Page

11, whereby "At the MANUFACTURERS field, enter the numbers of the manufacturers for

which you want part information."];

searching for matching items in the selected portions of the database [Ch.3, Sec.2, Page

1, wherein "When you look up a part with PartFinder, you specify its group and subgroup, as

well as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their

prices for the customer. You select a part from the list and specify how many you want." With

Application/Control Number: 90/008,104                                    Page 46
Art Unit: 3992

this, J-CON is teaching that the system searches and displays parts that match the customer's

selections];

building a requisition that includes selected matching items [see Ch.3,Sec.2, Page 4,

wherein "At 'Selection', choose one: Enter the number for the part you want.  When you finish

selecting parts, press <Order Screen> to return to POS…"];

processing the requisition to generate purchase orders for selected matching items [see

Ch.4, Sec.3, Page 1, and Ch.4, Sec.4, pages 1-7, wherein "You can set up J-CON to

automatically compute Pos during EOD. You can also set it to automatically transmit POs to

vendors who use A-DIS. The POs can go to primary and alternate vendors, and to other vendors

for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data."].

64.     **Claims 26-45** are rejected under 35 U.S.C. 102(b) as being anticipated by "A Practical

Guide to SABRE Reservations and Ticketing", authored by Jeanne Semer-Purzycki, having a

copyright date of 1992 (hereafter "Practical Guide to SABRE").


Regarding *claim 26*, Practical Guide to SABRE discloses a method comprising the steps

of:

maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see page 2, wherein "SABRE maintains a vast amount of

current information. For example, it stores: Flight schedules for more than 680 worldwide

carriers…Hotel descriptions and prices for more than 17,000 properties throughout the world"];

selecting the product catalogs to search [see page 51, wherein the teachings describe how

to "Request specific carrier availability by specifying one or more airlines in the availability

entry."];

searching for matching items among the selected product catalogs [see pages 62-65,

whereby specific carriers are selected between different city pairs, whereby the SABRE system

inherently searches the catalogs, so as to display the best match];

building a requisition using data relating to selected matching items and their associated

source(s) [whereby a PNR is built, as seen on page 7, "UNIT 1: Building the PNR"; also see

pages 9-11, whereby on page 9, "any PNR must contain the following five mandatory fields…I

Itinerary (at least one flight segment)"];

processing the requisition to generate one or more purchase orders for the selected

matching items [see pages 15 and 16, whereby the PNR is stored, wherein "Ending a record

Application/Control Number: 90/008,104                                    Page 48
Art Unit: 3992

transmits the PNR directly to American Airlines' central computer for permanent storage"; also

see page 76, wherein "After completing the PNR, the agent ends the transaction by entering E.

At this time, SABRE does a completeness check of the PNR. When the PNR is redisplayed after

it is ended, the SS ("available for sale" code) is changed to the HK status code ("holding

k[c]onfirmed").");]; and

    determining whether a selected matching item is available in inventory [see pages 34 and

35, wherein the "primary availability …displays flight availability for all airlines that operate

between the given city pair."].


    Regarding *claim 27*, Practical Guide to SABRE discloses the method discussed above in

claim 26, and further teaches that the purchase orders include data relating to a vendor catalog

number for the selected matching items [see pages 10 and 11, whereby the PNR contains the

"Carrier and flight number", "Class of service", "Date of departure", and "Day of week code",

which can be collectively considered as "data relating to a vendor catalog number"].


    Regarding *claim 28*, Practical Guide to SABRE discloses a method comprising the steps

of:

    maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see page 2, wherein "SABRE maintains a vast amount of

current information. For example, it stores: Flight schedules for more than 680 worldwide

carriers…Hotel descriptions and prices for more than 17,000 properties throughout the world"];

Application/Control Number: 90/008,104                                    Page 49
Art Unit: 3992

selecting the product catalogs to search [see page 51, wherein the teachings describe how

to "Request specific carrier availability by specifying one or more airlines in the availability

entry."];

searching for matching items among the selected product catalogs [see pages 62-65,

whereby specific carriers are selected between different city pairs, whereby the SABRE system

inherently searches the catalogs, so as to display the best match];

building a requisition using data relating to selected matching items and their associated

source(s) [whereby a PNR is built, as seen on page 7, "UNIT 1: Building the PNR"; also see

pages 9-11, whereby on page 9, "any PNR must contain the following five mandatory fields...I

Itinerary (at least one flight segment)"];

processing the requisition to generate one or more purchase orders for the selected

matching items [see pages 15 and 16, whereby the PNR is stored, wherein "Ending a record

transmits the PNR directly to American Airlines' central computer for permanent storage"; also

see page 76, wherein "After completing the PNR, the agent ends the transaction by entering E.

At this time, SABRE does a completeness check of the PNR. When the PNR is redisplayed after

it is ended, the SS ("available for sale" code) is changed to the HK status code ("holding

k[c]onfirmed").]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see page 64, wherein "If the class of service requested

is sold out, SABRE displays a city pair availability for alternate flights....the requested class, Y,

is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date,

city pair, and departure time 11:45 am of the original flight that was requested."].

Application/Control Number: 90/008,104                                    Page 50
Art Unit: 3992

Regarding *claim 29*, Practical Guide to SABRE discloses the method discussed above in claim 28, and further teaches of the step of determining whether a selected matching item is available in inventory [see pages 34 and 35, wherein the "primary availability …displays flight availability for all airlines that operate between the given city pair."].

Regarding *claim 30*, Practical Guide to SABRE discloses the method discussed above in claim 28, and further teaches of the step of determining the applicable price of a selected matching item [see page 279, wherein "Itinerary pricing enables the travel agent to display the fare for a PNR that is currently in the computer's working area…SABRE "reads" the flight information in the itinerary and displays the base fare, tax, and total amounts based on the city pair, travel date, and class of service."].

Regarding *claim 31*, Practical Guide to SABRE discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two sources [see page 2, wherein "SABRE maintains a vast amount of current information. For example, it stores: Flight schedules for more than 680 worldwide carriers…Hotel descriptions and prices for more than 17,000 properties throughout the world"];

searching for matching items among the data relating to the items [see page 51, wherein the teachings describe how to "Request specific carrier availability by specifying one or more airlines in the availability entry."];

Application/Control Number: 90/008,104                                    Page 51
Art Unit: 3992

building a requisition using data relating to selected matching items and their associated

sources [whereby a PNR is built, as seen on page 7, "UNIT 1: Building the PNR"; also see pages

9-11, whereby on page 9, "any PNR must contain the following five mandatory fields...I

Itinerary (at least one flight segment)"];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see pages 15 and 16, whereby the PNR is stored,

wherein "Ending a record transmits the PNR directly to American Airlines' central computer for

permanent storage"; also see page 76, wherein "After completing the PNR, the agent ends the

transaction by entering E. At this time, SABRE does a completeness check of the PNR. When

the PNR is redisplayed after it is ended, the SS ("available for sale" code) is changed to the HK

status code ("holding k[c]onfirmed")."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see page 64, wherein "If the class of service requested

is sold out, SABRE displays a city pair availability for alternate flights....the requested class, Y,

is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date,

city pair, and departure time 11:45 am of the original flight that was requested."].


Regarding *claim 32*, Practical Guide to SABRE discloses the method discussed above in

claim 31, and further teaches that the purchase orders use data relating to at least two sources

[see page 2, wherein "SABRE maintains a vast amount of current information. For example, it

stores: Flight schedules for more than 680 worldwide carriers...Hotel descriptions and prices for

more than 17,000 properties throughout the world"].

Application/Control Number: 90/008,104                                    Page 52
Art Unit: 3992

Regarding *claim 33*, Practical Guide to SABRE discloses the method discussed above in

claim 31, and further teaches that the purchase orders use data relating to catalog numbers [see

pages 10 and 11, whereby the PNR contains the "Carrier and flight number", "Class of service",

"Date of departure", and "Day of week code", which can be collectively considered as "data

relating to catalog numbers"].

Regarding *claim 34*, Practical Guide to SABRE discloses the method discussed above in

claim 31, and further teaches of the step of determining whether a selected matching item is

available in inventory [see pages 34 and 35, wherein the "primary availability …displays flight

availability for all airlines that operate between the given city pair."].

Regarding *claim 35*, Practical Guide to SABRE discloses the method discussed above in

claim 31, and further teaches of the step of determining the applicable price of a selected

matching item [see page 279, wherein "Itinerary pricing enables the travel agent to display the

fare for a PNR that is currently in the computer's working area…SABRE "reads" the flight

information in the itinerary and displays the base fare, tax, and total amounts based on the city

pair, travel date, and class of service."].

Regarding *claim 36*, Practical Guide to SABRE discloses a method comprising the steps

of:

maintaining a database containing at least two product catalogs containing data relating to

items associated with the respective sources [see page 2, wherein "SABRE maintains a vast

amount of current information. For example, it stores: Flight schedules for more than 680

worldwide carriers...Hotel descriptions and prices for more than 17,000 properties throughout

the world"];

searching for matching items among the product catalogs [see pages 62-65, whereby

specific carriers are selected between different city pairs, whereby the SABRE system inherently

searches the catalogs, so as to display the best match];

building a requisition that includes a first matching item and a second matching item,

each from a different product catalog [whereby a PNR is built, as seen on page 7, "UNIT 1:

Building the PNR"; also see pages 9-11, whereby on page 9, "any PNR must contain the

following five mandatory fields...I Itinerary (at least one flight segment)"];

processing the requisition to generate purchase orders for the first and the second

matching items [see pages 15 and 16, whereby the PNR is stored, wherein "Ending a record

transmits the PNR directly to American Airlines' central computer for permanent storage"; also

see page 76, wherein "After completing the PNR, the agent ends the transaction by entering E.

At this time, SABRE does a completeness check of the PNR. When the PNR is redisplayed after

it is ended, the SS ("available for sale" code) is changed to the HK status code ("holding

k[c]onfirmed").");]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see page 64, wherein "If the class of service requested

is sold out, SABRE displays a city pair availability for alternate flights....the requested class, Y,

is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date,

city pair, and departure time 11:45 am of the original flight that was requested."].

Application/Control Number: 90/008,104                                    Page 54
Art Unit: 3992

Regarding *claim 37*, Practical Guide to SABRE discloses the method discussed above in

claim 36, and further teaches that a first purchase order uses data relating to the first matching

item and a second purchase order uses data relating to the second matching catalog item [see

page 2, wherein "SABRE maintains a vast amount of current information. For example, it stores:

Flight schedules for more than 680 worldwide carriers...Hotel descriptions and prices for more

than 17,000 properties throughout the world"; also see pages 10 and 11, whereby two different

PNR's are shown, each with different data relating to a matching item].


Regarding *claim 38*, Practical Guide to SABRE discloses the method discussed above in

claim 36, and further teaches of the step of determining whether a selected matching item is

available in inventory [see pages 34 and 35, wherein the "primary availability ...displays flight

availability for all airlines that operate between the given city pair."].


Regarding *claim 39*, Practical Guide to SABRE discloses the method discussed above in

claim 36, and further teaches of determining the applicable price of a selected matching item [see

page 279, wherein "Itinerary pricing enables the travel agent to display the fare for a PNR that is

currently in the computer's working area...SABRE "reads" the flight information in the itinerary

and displays the base fare, tax, and total amounts based on the city pair, travel date, and class of

service."].

Application/Control Number: 90/008,104                                    Page 55
Art Unit: 3992

Regarding *claim 40*, Practical Guide to SABRE discloses a method comprising the steps
of:

maintaining a database containing data relating to items associated with at least two
sources [see page 2, wherein "SABRE maintains a vast amount of current information. For
example, it stores: Flight schedules for more than 680 worldwide carriers…Hotel descriptions
and prices for more than 17,000 properties throughout the world"], whereby selected portions of
the database may be searched separately [see page 51, wherein the teachings describe how to
"Request specific carrier availability by specifying one or more airlines in the availability
entry."];

searching for matching items among the selected portions of the database [see pages 62-
65, whereby specific carriers are selected between different city pairs, whereby the SABRE
system inherently searches the catalogs, so as to display the best match];

building a requisition using data relating to selected matching items and their associated
source(s) [whereby a PNR is built, as seen on page 7, "UNIT 1: Building the PNR"; also see
pages 9-11, whereby on page 9, "any PNR must contain the following five mandatory fields…I
Itinerary (at least one flight segment)"];

processing the requisition to generate purchase orders using data relating to the selected
matching items and their associated source(s) [see pages 15 and 16, whereby the PNR is stored,
wherein "Ending a record transmits the PNR directly to American Airlines' central computer for
permanent storage"; also see page 76, wherein "After completing the PNR, the agent ends the
transaction by entering E. At this time, SABRE does a completeness check of the PNR. When

Application/Control Number: 90/008,104                                      Page 56
Art Unit: 3992

the PNR is redisplayed after it is ended, the SS ("available for sale" code) is changed to the HK

status code ("holding k[c]onfirmed")."]; and

    determining whether a selected matching item is available in inventory [see pages 34 and

35, wherein the "primary availability …displays flight availability for all airlines that operate

between the given city pair."].


    Regarding *claim 41*, Practical Guide to SABRE discloses a method comprising the steps

of:

    maintaining a database containing data relating to items associated with at least two

sources [see page 2, wherein "SABRE maintains a vast amount of current information. For

example, it stores: Flight schedules for more than 680 worldwide carriers…Hotel descriptions

and prices for more than 17,000 properties throughout the world"], whereby selected portions of

the database may be searched separately [see page 51, wherein the teachings describe how to

"Request specific carrier availability by specifying one or more airlines in the availability

entry."];

    searching for matching items among the selected portions of the database [see pages 62-

65, whereby specific carriers are selected between different city pairs, whereby the SABRE

system inherently searches the catalogs, so as to display the best match];

    building a requisition using data relating to selected matching items and their associated

source(s) [whereby a PNR is built, as seen on page 7, "UNIT 1: Building the PNR"; also see

pages 9-11, whereby on page 9, "any PNR must contain the following five mandatory fields…I

Itinerary (at least one flight segment)"];

Application/Control Number: 90/008,104                                                  Page 57
Art Unit: 3992

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see pages 15 and 16, whereby the PNR is stored,

wherein "Ending a record transmits the PNR directly to American Airlines' central computer for

permanent storage"; also see page 76, wherein "After completing the PNR, the agent ends the

transaction by entering E. At this time, SABRE does a completeness check of the PNR. When

the PNR is redisplayed after it is ended, the SS ("available for sale" code) is changed to the HK

status code ("holding k[c]onfirmed")."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see page 64, wherein "If the class of service requested

is sold out, SABRE displays a city pair availability for alternate flights....the requested class, Y,

is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date,

city pair, and departure time 11:45 am of the original flight that was requested."].


Regarding *claim 42*, Practical Guide to SABRE discloses the method discussed above in

claim 41, and further teaches that a first purchase order uses data relating to selected matching

items from a first source and a second purchase order uses data relating to selected matching

items from a second source [see page 2, wherein "SABRE maintains a vast amount of current

information. For example, it stores: Flight schedules for more than 680 worldwide

carriers…Hotel descriptions and prices for more than 17,000 properties throughout the world";

also see pages 10 and 11, whereby two different PNR's are shown, each with different data

relating to a matching item].

Application/Control Number: 90/008,104                                              Page 58
Art Unit: 3992

Regarding *claim 43*, Practical Guide to SABRE discloses the method discussed above in

claim 41, and further teaches of the step of determining whether a selected matching item is

available in inventory [see pages 34 and 35, wherein the "primary availability …displays flight

availability for all airlines that operate between the given city pair."].


Regarding *claim 44*, Practical Guide to SABRE discloses the method discussed above in

claim 41, and further teaches of the step of determining the applicable price of a selected

matching item [see page 279, wherein "Itinerary pricing enables the travel agent to display the

fare for a PNR that is currently in the computer's working area…SABRE "reads" the flight

information in the itinerary and displays the base fare, tax, and total amounts based on the city

pair, travel date, and class of service."].


Regarding *claim 45*, Practical Guide to SABRE discloses a method comprising the steps

of:

maintaining a database containing data relating to items associated with at least two

vendors [see page 2, wherein "SABRE maintains a vast amount of current information. For

example, it stores: Flight schedules for more than 680 worldwide carriers…Hotel descriptions

and prices for more than 17,000 properties throughout the world"], whereby selected portions of

the database may be searched separately [see page 51, wherein the teachings describe how to

"Request specific carrier availability by specifying one or more airlines in the availability

entry."];

Application/Control Number: 90/008,104                                      Page 59
Art Unit: 3992

searching for matching items in the selected portions of the database [see pages 62-65,
whereby specific carriers are selected between different city pairs, whereby the SABRE system
inherently searches the catalogs, so as to display the best match];

building a requisition that includes selected matching items [whereby a PNR is built, as
seen on page 7, "UNIT 1: Building the PNR"; also see pages 9-11, whereby on page 9, "any
PNR must contain the following five mandatory fields...I Itinerary (at least one flight
segment)"];

processing the requisition to generate purchase orders for selected matching items [see
pages 15 and 16, whereby the PNR is stored, wherein "Ending a record transmits the PNR
directly to American Airlines' central computer for permanent storage"; also see page 76,
wherein "After completing the PNR, the agent ends the transaction by entering E. At this time,
SABRE does a completeness check of the PNR. When the PNR is redisplayed after it is ended,
the SS ("available for sale" code) is changed to the HK status code ("holding k[c]onfirmed")."].

Application/Control Number: 90/008,104  ·                         Page 60
Art Unit: 3992

65.    **Claims 26-45** are rejected under 35 U.S.C. 102(a) as being anticipated by "P.O. Writer Plus Guided Tour Version 10.0", from American Tech, Inc., copyright 1993 (hereafter "P.O Writer Plus Guided Tour").

Regarding *claim 26*, P.O Writer Plus Guided Tour discloses a method comprising the steps of:

maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources [see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other vendor you would like to select."; also see pages 45 and 46, wherein "For example, say you want to display all items in the Bayless Catalogue whose description starts with the letters "P"."];

selecting the product catalogs to search [see page 131, wherein "Items from a specific catalog can be displayed by entering a Catalogue ID at the top of the screen."];

searching for matching items among the selected product catalogs [see page 46, wherein "For example, say you want to display all items in the Bayless Catalogue whose description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the Bayless catalogue whose descriptions begin with the letter P."];

building a requisition using data relating to selected matching items and their associated source(s) [see pages 47 and 48; also see pages 117-147];

processing the requisition to generate one or more purchase orders for the selected matching items [see page 49; also see pages 149-153, wherein on page 149, "The REQUISTIONING INTERFACE allows you to turn purchase Requisitions into Purchase Orders

Application/Control Number: 90/008,104                                    Page 61
Art Unit: 3992

quickly and easily. Requisitions can be automatically consolidated onto one Purchase Order."];
and

determining whether a selected matching item is available in inventory [see page 102,
wherein "The Inventory Control Module allows you to track on-hand inventory balances and
report usage history, and automatically generate Re-order Analysis as often as you like."; also
see page 103, wherein "The P.O. WRITER PLUS Inventory Control Module allows you to
specify those items you would like to track in Inventory."].

Regarding *claim 27*, P.O Writer Plus Guided Tour discloses the method discussed above
in claim 26, and further teaches that the purchase orders include data relating to a vendor catalog
number for the selected matching items [see page 29, whereby the Vender ID number and the
item number can be considered as "data relating to a vendor catalog number"; also see pages 44
and 49; also see page 131, wherein "Items from a specific catalog can be displayed by entering a
Catalogue ID at the top of the screen."].

Regarding *claim 28*, P.O Writer Plus Guided Tour discloses a method comprising the
steps of:

maintaining at least two product catalogs on a database containing data relating to items
associated with the respective sources [see page 22, wherein "You can now buy this item from
Best Buy, Bayless, or any other vendor you would like to select."; also see pages 45 and 46,
wherein "For example, say you want to display all items in the Bayless Catalogue whose
description starts with the letters "P"."];

Application/Control Number: 90/008,104                                    Page 62
Art Unit: 3992

selecting the product catalogs to search [see page 131, wherein "Items from a specific

catalog can be displayed by entering a Catalogue ID at the top of the screen."];

searching for matching items among the selected product catalogs [see page 46, wherein

"For example, say you want to display all items in the Bayless Catalogue whose description

starts with the letters "P"."; also see page 47, wherein "There are 3 items in the Bayless

catalogue whose descriptions begin with the letter P."];

building a requisition using data relating to selected matching items and their associated

source(s) [see pages 47 and 48; also see pages 117-147];

processing the requisition to generate one or more purchase orders for the selected

matching items [see page 49; also see pages 149-153, wherein on page 149, "The

REQUISITIONING INTERFACE allows you to turn purchase Requisitions into Purchase Orders

quickly and easily. Requisitions can be automatically consolidated onto one Purchase Order."];

and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 21 and 22, wherein "The PURCHASE

ORDER HISTORY screen shows that you have purchased A1000 twice from Best Buy Supply

and issued an RFQ to Bayless....You can now buy this item from Best Buy, Bayless, or any

other vendor you would like to select."; also see pages 151 and 152, wherein "We can now select

a vendor for each item or we can have the system do it for us! The system will select the vendor

based on the last P.O. for a given item."].

Application/Control Number: 90/008,104                                   Page 63
Art Unit: 3992

Regarding *claim 29*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 28, and further teaches of the step of determining whether a selected matching item is

available in inventory [see page 102, wherein "The Inventory Control Module allows you to

track on-hand inventory balances and report usage history, and automatically generate Re-order

Analysis as often as you like."; also see page 103, wherein "The P.O. WRITER PLUS Inventory

Control Module allows you to specify those items you would like to track in Inventory."].


Regarding *claim 30*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 28, and further teaches of the step of determining the applicable price of a selected

matching item [see page 71, wherein "PRICE ANALYSIS – shows all P.O.'s, compare actual to

standard cost, calculates variances, and average and actual prices."].


Regarding *claim 31*, P.O Writer Plus Guided Tour discloses a method comprising the

steps of:

maintaining a database containing data relating to items associated with at least two

sources [see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other

vendor you would like to select."; also see pages 45 and 46, wherein "For example, say you want

to display all items in the Bayless Catalogue whose description starts with the letters "P"."];

searching for matching items among the data relating to the items [see page 46, wherein

"For example, say you want to display all items in the Bayless Catalogue whose description

starts with the letters "P"."; also see page 47, wherein "There are 3 items in the Bayless

catalogue whose descriptions begin with the letter P."];

Application/Control Number: 90/008,104                                    Page 64
Art Unit: 3992

building a requisition using data relating to selected matching items and their associated

sources [see pages 47 and 48; also see pages 117-147];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 49; also see pages 149-153, wherein on

page 149, "The REQUISTIONING INTERFACE allows you to turn purchase Requisitions into

Purchase Orders quickly and easily. Requisitions can be automatically consolidated onto one

Purchase Order."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 21 and 22, wherein "The PURCHASE

ORDER HISTORY screen shows that you have purchased A1000 twice from Best Buy Supply

and issued an RFQ to Bayless....You can now buy this item from Best Buy, Bayless, or any

other vendor you would like to select."; also see pages 151 and 152, wherein "We can now select

a vendor for each item or we can have the system do it for us! The system will select the vendor

based on the last P.O. for a given item."].


Regarding *claim 32*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 31, and further teaches that the purchase orders use data relating to at least two sources

[see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other vendor

you would like to select."; also see pages 45 and 46, wherein "For example, say you want to

display all items in the Bayless Catalogue whose description starts with the letters "P"."; also see

pages 29 and 44].

Regarding *claim 33*, P.O Writer Plus Guided Tour discloses the method discussed above in claim 31, and further teaches that the purchase orders use data relating to catalog numbers [see page 29, whereby the Vender ID number and the item number can be considered as "data relating to a vendor catalog number"; also see pages 44 and 49; also see page 131, wherein "Items from a specific catalog can be displayed by entering a Catalogue ID at the top of the screen."].

Regarding *claim 34*, P.O Writer Plus Guided Tour discloses the method discussed above in claim 31, and further teaches of the step of determining whether a selected matching item is available in inventory [see page 102, wherein "The Inventory Control Module allows you to track on-hand inventory balances and report usage history, and automatically generate Re-order Analysis as often as you like."; also see page 103, wherein "The P.O. WRITER PLUS Inventory Control Module allows you to specify those items you would like to track in Inventory."].

Regarding *claim 35*, P.O Writer Plus Guided Tour discloses the method discussed above in claim 31, and further teaches of the step of determining the applicable price of a selected matching item [see page 71, wherein "PRICE ANALYSIS – shows all P.O.'s, compare actual to standard cost, calculates variances, and average and actual prices."].

Application/Control Number: 90/008,104                                    Page 66
Art Unit: 3992

Regarding *claim 36*, P.O Writer Plus Guided Tour discloses a method comprising the
steps of:

maintaining a database containing at least two product catalogs containing data relating to
items associated with the respective sources [see page 22, wherein "You can now buy this item
from Best Buy, Bayless, or any other vendor you would like to select."; also see pages 45 and 46,
wherein "For example, say you want to display all items in the Bayless Catalogue whose
description starts with the letters "P"."];

searching for matching items among the product catalogs [see page 46, wherein "For
example, say you want to display all items in the Bayless Catalogue whose description starts
with the letters "P"."; also see page 47, wherein "There are 3 items in the Bayless catalogue
whose descriptions begin with the letter P."];

building a requisition that includes a first matching item and a second matching item,
each from a different product catalog [see pages 47 and 48; also see pages 117-147];

processing the requisition to generate purchase orders for the first and the second
matching items [see page 49; also see pages 149-153, wherein on page 149, "The
REQUISTIONING INTERFACE allows you to turn purchase Requisitions into Purchase Orders
quickly and easily. Requisitions can be automatically consolidated onto one Purchase Order."];
and

converting data relating to a selected matching item and an associated source to data
relating to an item and a different source [see pages 21 and 22, wherein "The PURCHASE
ORDER HISTORY screen shows that you have purchased A1000 twice from Best Buy Supply
and issued an RFQ to Bayless....You can now buy this item from Best Buy, Bayless, or any

other vendor you would like to select."; also see pages 151 and 152, wherein "We can now select

a vendor for each item or we can have the system do it for us! The system will select the vendor

based on the last P.O. for a given item."].


Regarding *claim 37*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 36, and further teaches that a first purchase order uses data relating to the first matching

item and a second purchase order uses data relating to the second matching catalog item [see

page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other vendor you

would like to select."; also see pages 45 and 46, wherein "For example, say you want to display

all items in the Bayless Catalogue whose description starts with the letters "P"."; also see pages

29 and 44].


Regarding *claim 38*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 36, and further teaches of the step of determining whether a selected matching item is

available in inventory [see page 102, wherein "The Inventory Control Module allows you to

track on-hand inventory balances and report usage history, and automatically generate Re-order

Analysis as often as you like."; also see page 103, wherein "The P.O. WRITER PLUS Inventory

Control Module allows you to specify those items you would like to track in Inventory."].


Regarding *claim 39*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 36, and further teaches of determining the applicable price of a selected matching item

Application/Control Number: 90/008,104                                        Page 68
Art Unit: 3992

[see page 71, wherein "PRICE ANALYSIS – shows all P.O.'s, compare actual to standard cost,

calculates variances, and average and actual prices."].


        Regarding *claim 40*, P.O Writer Plus Guided Tour discloses a method comprising the

steps of:

        maintaining a database containing data relating to items associated with at least two

sources [see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other

vendor you would like to select."; also see pages 45 and 46, wherein "For example, say you want

to display all items in the Bayless Catalogue whose description starts with the letters "P"."],

whereby selected portions of the database may be searched separately [see page 131, wherein

"Items from a specific catalog can be displayed by entering a Catalogue ID at the top of the

screen."];

        searching for matching items among the selected portions of the database [see page 46,

wherein "For example, say you want to display all items in the Bayless Catalogue whose

description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the

Bayless catalogue whose descriptions begin with the letter P."];

        building a requisition using data relating to selected matching items and their associated

source(s) [see pages 47 and 48; also see pages 117-147];

        processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 49; also see pages 149-153, wherein on

page 149, "The REQUISITIONING INTERFACE allows you to turn purchase Requisitions into

Application/Control Number: 90/008,104                                    Page 69
Art Unit: 3992

Purchase Orders quickly and easily. Requisitions can be automatically consolidated onto one

Purchase Order."]; and

      determining whether a selected matching item is available in inventory [see page 102,

wherein "The Inventory Control Module allows you to track on-hand inventory balances and

report usage history, and automatically generate Re-order Analysis as often as you like."; also

see page 103, wherein "The P.O. WRITER PLUS Inventory Control Module allows you to

specify those items you would like to track in Inventory."].


      Regarding *claim 41*, P.O Writer Plus Guided Tour discloses a method comprising the

steps of:

      maintaining a database containing data relating to items associated with at least two

sources [see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other

vendor you would like to select."; also see pages 45 and 46, wherein "For example, say you want

to display all items in the Bayless Catalogue whose description starts with the letters "P"."],

whereby selected portions of the database may be searched separately [see page 131, wherein

"Items from a specific catalog can be displayed by entering a Catalogue ID at the top of the

screen."];

      searching for matching items among the selected portions of the database [see page 46,

wherein "For example, say you want to display all items in the Bayless Catalogue whose

description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the

Bayless catalogue whose descriptions begin with the letter P."];

Application/Control Number: 90/008,104                                          Page 70
Art Unit: 3992

building a requisition using data relating to selected matching items and their associated

source(s) [see pages 47 and 48; also see pages 117-147];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 49; also see pages 149-153, wherein on

page 149, "The REQUISTIONING INTERFACE allows you to turn purchase Requisitions into

Purchase Orders quickly and easily. Requisitions can be automatically consolidated onto one

Purchase Order."]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 21 and 22, wherein "The PURCHASE

ORDER HISTORY screen shows that you have purchased A1000 twice from Best Buy Supply

and issued an RFQ to Bayless....You can now buy this item from Best Buy, Bayless, or any

other vendor you would like to select."; also see pages 151 and 152, wherein "We can now select

a vendor for each item or we can have the system do it for us! The system will select the vendor

based on the last P.O. for a given item."].


Regarding *claim 42*, P.O Writer Plus Guided Tour discloses the method discussed above

in claim 41, and further teaches that a first purchase order uses data relating to selected matching

items from a first source and a second purchase order uses data relating to selected matching

items from a second source [see page 22, wherein "You can now buy this item from Best Buy,

Bayless, or any other vendor you would like to select."; also see pages 45 and 46, wherein "For

example, say you want to display all items in the Bayless Catalogue whose description starts

with the letters "P"."; also see pages 29 and 44].

Application/Control Number: 90/008,104                                    Page 71
Art Unit: 3992

Regarding *claim 43*, P.O Writer Plus Guided Tour discloses the method discussed above in claim 41, and further teaches of the step of determining whether a selected matching item is available in inventory [see page 102, wherein "The Inventory Control Module allows you to track on-hand inventory balances and report usage history, and automatically generate Re-order Analysis as often as you like."; also see page 103, wherein "The P.O. WRITER PLUS Inventory Control Module allows you to specify those items you would like to track in Inventory."].

Regarding *claim 44*, P.O Writer Plus Guided Tour discloses the method discussed above in claim 41, and further teaches of the step of determining the applicable price of a selected matching item [see page 71, wherein "PRICE ANALYSIS – shows all P.O.'s, compare actual to standard cost, calculates variances, and average and actual prices."].

Regarding *claim 45*, P.O Writer Plus Guided Tour discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two vendors [see page 22, wherein "You can now buy this item from Best Buy, Bayless, or any other vendor you would like to select."; also see pages 45 and 46, wherein "For example, say you want to display all items in the Bayless Catalogue whose description starts with the letters "P"."], whereby selected portions of the database may be searched separately [see page 131, wherein "Items from a specific catalog can be displayed by entering a Catalogue ID at the top of the screen."];

Application/Control Number: 90/008,104                                   Page 72
Art Unit: 3992

searching for matching items in the selected portions of the database [see page 46,
wherein "For example, say you want to display all items in the Bayless Catalogue whose
description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the
Bayless catalogue whose descriptions begin with the letter P."];

building a requisition that includes selected matching items [see pages 47 and 48; also see
pages 117-147];

processing the requisition to generate purchase orders for selected matching items [see
page 49; also see pages 149-153, wherein on page 149, "The REQUISTIONING INTERFACE
allows you to turn purchase Requisitions into Purchase Orders quickly and easily. Requisitions
can be automatically consolidated onto one Purchase Order."].

Application/Control Number: 90/008,104                                    Page 73
Art Unit: 3992

66.    **Claims 26-45** are rejected under 35 U.S.C. 102(b) as being anticipated by "Gateway

2000/MRO Version", from Technical Service Associates (TSA), dated May 1991 (hereafter

"Gateway 2000/MRO").


Regarding *claim 26*, Gateway 2000/MRO discloses a method comprising the steps of:

maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see pages 4-18 and 4-19; also see page 15-42, wherein

"The GATEWAY 2000/MRO ...System provides a capability to define and store vendor

catalogues that can be used for selection during PO entry."];

selecting the product catalogs to search [see pages 4-18 and 4-19, wherein "To select a

catalog, move the lightbar to the desired catalog and press enter. The items listed in this catalog

will be displayed for selection"];

searching for matching items among the selected product catalogs [see page 4-17,

wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or

phrase. A list of all items containing the keyword will be displays. You can select an item from

the list by positioning the lightbar to a desired item and pressing the enter key. The stock item

will be moved into your requisition."; also see page 4-18, wherein "To select items from a

standard catalog, position the cursor at the beginning of a new line item description and press the

F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition using data relating to selected matching items and their associated

source(s) [see page 4-17, wherein "You can select an item from the list by positioning the

Application/Control Number: 90/008,104                                        Page 74
Art Unit: 3992

lightbar to a desired item and pressing the enter key. The stock item will be moved into your

requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate one or more purchase orders for the selected

matching items [see page 6-3, wherein "If a requisition has already been entered, the data from

the requisition will move forward into the purchase order automatically."; also see page 6-16,

wherein "If ... a purchase order is being prepared from a requisition, the system will

automatically move all of the line items from the requisition into the purchase order."; also see

pages 4-33 and 6-35, which show a copy of a requisition and a generated purchase order]; and

determining whether a selected matching item is available in inventory [see page 4-17,

wherein "If a stock item is not on file, the message "item not found" will be displayed, and the

message "item not on file, add new item now (Y/N)" will be displayed."].


Regarding *claim 27*, GATEWAY 2000/MRO discloses the method discussed above in

claim 26, and further teaches that the purchase orders include data relating to a vendor catalog

number for the selected matching items [see 6-35, whereby the "Description" includes a

description and model number, which can be considered as "data relating to a vendor catalog

number for selected matching items".].


Regarding *claim 28*, Gateway 2000/MRO discloses a method comprising the steps of:

maintaining at least two product catalogs on a database containing data relating to items

associated with the respective sources [see pages 4-18 and 4-19; also see page 15-42, wherein

Application/Control Number: 90/008,104                                     Page 75

Art Unit: 3992

"The GATEWAY 2000/MRO …System provides a capability to define and store vendor

catalogues that can be used for selection during PO entry."];

selecting the product catalogs to search [see pages 4-18 and 4-19, wherein "To select a

catalog, move the lightbar to the desired catalog and press enter. The items listed in this catalog

will be displayed for selection"];

searching for matching items among the selected product catalogs [see page 4-17,

wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or

phrase. A list of all items containing the keyword will be displays. You can select an item from

the list by positioning the lightbar to a desired item and pressing the enter key. The stock item

will be moved into your requisition."; also see page 4-18, wherein "To select items from a

standard catalog, position the cursor at the beginning of a new line item description and press the

F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition using data relating to selected matching items and their associated

source(s) [see page 4-17, wherein "You can select an item from the list by positioning the

lightbar to a desired item and pressing the enter key. The stock item will be moved into your

requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate one or more purchase orders for the selected

matching items [see page 6-3, wherein "If a requisition has already been entered, the data from

the requisition will move forward into the purchase order automatically."; also see page 6-16,

wherein "If … a purchase order is being prepared from a requisition, the system will

automatically move all of the line items from the requisition into the purchase order."; also see

pages 4-33 and 6-35, which show a copy of a requisition and a generated purchase order]; and

Application/Control Number: 90/008,104                                    Page 76
Art Unit: 3992

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 4-26 through 4-28, whereby "Any field

(other than the requisition number) can be changed through requisition maintenance.";  With

this, the "Requisition Maintenance" function allows for converting data relating to a selected

matching item to data relating to an item and a different source, as a primary vendor can be

changed to a secondary vendor, with both being seen on page 12-3, by converting the vendor ID

numbers, seen on page 4-27, also see pages 4-8 and 4-9].


Regarding *claim 29*, Gateway 2000/MRO discloses the method discussed above in claim

28, and further teaches of the step of determining whether a selected matching item is available

in inventory [see page 4-17, wherein "If a stock item is not on file, the message "item not found"

will be displayed, and the message "item not on file, add new item now (Y/N)" will be

displayed."].


Regarding *claim 30*, Gateway 2000/MRO discloses the method discussed above in claim

28, and further teaches of the step of determining the applicable price of a selected matching

item [see page 4-8, wherein "the purchase order process will automatically calculate a tax

amount based upon the system tax tables."; also see page 4-20, wherein "the system will

automatically calculate and display the extended price."].

Regarding *claim 31*, Gateway 2000/MRO discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

sources [see pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO

...System provides a capability to define and store vendor catalogues that can be used for

selection during PO entry."];

searching for matching items among the data relating to the items [see page 4-17,

wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or

phrase. A list of all items containing the keyword will be displays. You can select an item from

the list by positioning the lightbar to a desired item and pressing the enter key. The stock item

will be moved into your requisition."; also see page 4-18, wherein "To select items from a

standard catalog, position the cursor at the beginning of a new line item description and press the

F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition using data relating to selected matching items and their associated

sources [see page 4-17, wherein "You can select an item from the list by positioning the lightbar

to a desired item and pressing the enter key. The stock item will be moved into your

requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 6-3, wherein "If a requisition has already

been entered, the data from the requisition will move forward into the purchase order

automatically."; also see page 6-16, wherein "If ... a purchase order is being prepared from a

requisition, the system will automatically move all of the line items from the requisition into the

purchase order."; also see pages 4-33 and 6-35, which show a copy of a requisition and a

generated purchase order]; and

      converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 4-26 through 4-28, whereby "Any field

(other than the requisition number) can be changed through requisition maintenance.";  With

this, the "Requisition Maintenance" function allows for converting data relating to a selected

matching item to data relating to an item and a different source, as a primary vendor can be

changed to a secondary vendor, with both being seen on page 12-3, by converting the vendor ID

numbers, seen on page 4-27, also see pages 4-8 and 4-9].


      Regarding *claim 32*, Gateway 2000/MRO discloses the method discussed above in claim

31, and further teaches that the purchase orders use data relating to at least two sources [see

pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO …System

provides a capability to define and store vendor catalogues that can be used for selection during

PO entry."], whereby selected portions of the database may be searched separately [see pages 4-

18 and 4-19, wherein "To select a catalog, move the lightbar to the desired catalog and press

enter. The items listed in this catalog will be displayed for selection"; also see pages 4-8 and 4-

9].

Regarding *claim 33*, Gateway 2000/MRO discloses the method discussed above in claim 31, and further teaches that the purchase orders use data relating to catalog numbers [see page 6-35, whereby the "Description" includes a description and model number, which can be considered as "data relating to catalog numbers"].

Regarding *claim 34*, Gateway 2000/MRO discloses the method discussed above in claim 31, and further teaches of the step of determining whether a selected matching item is available in inventory [see page 4-17, wherein "If a stock item is not on file, the message "item not found" will be displayed, and the message "item not on file, add new item now (Y/N)" will be displayed."].

Regarding *claim 35*, Gateway 2000/MRO discloses the method discussed above in claim 31, and further teaches of the step of determining the applicable price of a selected matching item [see page 4-8, wherein "the purchase order process will automatically calculate a tax amount based upon the system tax tables."; also see page 4-20, wherein "the system will automatically calculate and display the extended price."];

Regarding *claim 36*, Gateway 2000/MRO discloses a method comprising the steps of:
maintaining a database containing at least two product catalogs containing data relating to items associated with the respective sources [see pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO ...System provides a capability to define and store vendor catalogues that can be used for selection during PO entry."];

Application/Control Number: 90/008,104                                    Page 80
Art Unit: 3992

searching for matching items among the product catalogs [see page 4-17, wherein "To

perform a keyword search on stock items, press, F6 and enter the keyword or phrase.  A list of all

items containing the keyword will be displays. You can select an item from the list by

positioning the lightbar to a desired item and pressing the enter key. The stock item will be

moved into your requisition."; also see page 4-18, wherein "To select items from a standard

catalog, position the cursor at the beginning of a new line item description and press the F7 key.

A list of pre-stored catalog names will be displayed."];

building a requisition that includes a first matching item and a second matching item,

each from a different product catalog [see page 4-17, wherein "You can select an item from the

list by positioning the lightbar to a desired item and pressing the enter key. The stock item will

be moved into your requisition."; also see page 4-33, where a printout of a built requisition is

shown];

processing the requisition to generate purchase orders for the first and the second

matching items [see page 6-3, wherein "If a requisition has already been entered, the data from

the requisition will move forward into the purchase order automatically."; also see page 6-16,

wherein "If ... a purchase order is being prepared from a requisition, the system will

automatically move all of the line items from the requisition into the purchase order."; also see

pages 4-33 and 6-35, which show a copy of a requisition and a generated purchase order]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 4-26 through 4-28, whereby "Any field

(other than the requisition number) can be changed through requisition maintenance.";  With

this, the "Requisition Maintenance" function allows for converting data relating to a selected

Application/Control Number: 90/008,104                                   Page 81
Art Unit: 3992

matching item to data relating to an item and a different source, as a primary vendor can be

changed to a secondary vendor, with both being seen on page 12-3, by converting the vendor ID

numbers, seen on page 4-27, also see pages 4-8 and 4-9].


Regarding *claim 37*, Gateway 2000/MRO discloses the method discussed above in claim

36, and further teaches that a first purchase order uses data relating to the first matching item and

a second purchase order uses data relating to the second matching catalog item [see pages 4-8

and 4-9, and 6-35, whereby different vendors can be used for data relating to a first matching

item].


Regarding *claim 38*, Gateway 2000/MRO discloses the method discussed above in claim

36, and further teaches of the step of determining whether a selected matching item is available

in inventory [see page 4-17, wherein "If a stock item is not on file, the message "item not found"

will be displayed, and the message "item not on file, add new item now (Y/N)" will be

displayed."].


Regarding *claim 39*, Gateway 2000/MRO discloses the method discussed above in claim

36, and further teaches of determining the applicable price of a selected matching item [see page

4-8, wherein "the purchase order process will automatically calculate a tax amount based upon

the system tax tables."; also see page 4-20, wherein "the system will automatically calculate and

display the extended price."].

Application/Control Number: 90/008,104                                        Page 82
Art Unit: 3992

Regarding *claim 40*, Gateway 2000/MRO discloses a method comprising the steps of:

maintaining a database containing data relating to items associated with at least two

sources [see pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO

...System provides a capability to define and store vendor catalogues that can be used for

selection during PO entry."], whereby selected portions of the database may be searched

separately [see pages 4-18 and 4-19, wherein "To select a catalog, move the lightbar to the

desired catalog and press enter. The items listed in this catalog will be displayed for selection"];

searching for matching items among the selected portions of the database [see page 4-17,

wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or

phrase. A list of all items containing the keyword will be displays. You can select an item from

the list by positioning the lightbar to a desired item and pressing the enter key. The stock item

will be moved into your requisition."; also see page 4-18, wherein "To select items from a

standard catalog, position the cursor at the beginning of a new line item description and press the

F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition using data relating to selected matching items and their associated

source(s) [see page 4-17, wherein "You can select an item from the list by positioning the

lightbar to a desired item and pressing the enter key. The stock item will be moved into your

requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 6-3, wherein "If a requisition has already

been entered, the data from the requisition will move forward into the purchase order

automatically."; also see page 6-16, wherein "If ... a purchase order is being prepared from a

Application/Control Number: 90/008,104                                 Page 83
Art Unit: 3992

requisition, the system will automatically move all of the line items from the requisition into the

purchase order."; also see pages 4-33 and 6-35, which show a copy of a requisition and a

generated purchase order]; and

      determining whether a selected matching item is available in inventory [see page 4-17,

wherein "If a stock item is not on file, the message "item not found" will be displayed, and the

message "item not on file, add new item now (Y/N)" will be displayed."].


      Regarding *claim 41*, Gateway 2000/MRO discloses a method comprising the steps of:

      maintaining a database containing data relating to items associated with at least two

sources [see pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO

…System provides a capability to define and store vendor catalogues that can be used for

selection during PO entry."], whereby selected portions of the database may be searched

separately [see pages 4-18 and 4-19, wherein "To select a catalog, move the lightbar to the

desired catalog and press enter. The items listed in this catalog will be displayed for selection"];

      searching for matching items among the selected portions of the database [see page 4-17,

wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or

phrase. A list of all items containing the keyword will be displays. You can select an item from

the list by positioning the lightbar to a desired item and pressing the enter key. The stock item

will be moved into your requisition."; also see page 4-18, wherein "To select items from a

standard catalog, position the cursor at the beginning of a new line item description and press the

F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition using data relating to selected matching items and their associated

source(s) [see page 4-17, wherein "You can select an item from the list by positioning the

lightbar to a desired item and pressing the enter key. The stock item will be moved into your

requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate purchase orders using data relating to the selected

matching items and their associated source(s) [see page 6-3, wherein "If a requisition has already

been entered, the data from the requisition will move forward into the purchase order

automatically."; also see page 6-16, wherein "If ... a purchase order is being prepared from a

requisition, the system will automatically move all of the line items from the requisition into the

purchase order."; also see pages 4-33 and 6-35, which show a copy of a requisition and a

generated purchase order]; and

converting data relating to a selected matching item and an associated source to data

relating to an item and a different source [see pages 4-26 through 4-28, whereby "Any field

(other than the requisition number) can be changed through requisition maintenance.";  With

this, the "Requisition Maintenance" function allows for converting data relating to a selected

matching item to data relating to an item and a different source, as a primary vendor can be

changed to a secondary vendor, with both being seen on page 12-3, by converting the vendor ID

numbers, seen on page 4-27, also see pages 4-8 and 4-9].

Application/Control Number: 90/008,104                    Page 85
Art Unit: 3992

Regarding *claim 42*, Gateway 2000/MRO discloses the method discussed above in claim 41, and further teaches that a first purchase order uses data relating to selected matching items from a first source and a second purchase order uses data relating to selected matching items from a second source [see pages 4-8 and 4-9, and 6-35, whereby different vendors can be used for data relating to a first matching item].

Regarding *claim 43*, Gateway 2000/MRO discloses the method discussed above in claim 41, and further teaches of the step of determining whether a selected matching item is available in inventory [see page 4-17, wherein "If a stock item is not on file, the message "item not found" will be displayed, and the message "item not on file, add new item now (Y/N)" will be displayed."].

Regarding *claim 44*, Gateway 2000/MRO discloses the method discussed above in claim 41, and further teaches of the step of determining the applicable price of a selected matching item [see page 4-8, wherein "the purchase order process will automatically calculate a tax amount based upon the system tax tables."; also see page 4-20, wherein "the system will automatically calculate and display the extended price."].

Regarding *claim 45*, Gateway 2000/MRO discloses a method comprising the steps of: maintaining a database containing data relating to items associated with at least two vendors [see pages 4-18 and 4-19; also see page 15-42, wherein "The GATEWAY 2000/MRO ...System provides a capability to define and store vendor catalogues that can be used for

selection during PO entry."], whereby selected portions of the database may be searched separately [see pages 4-18 and 4-19, wherein "To select a catalog, move the lightbar to the desired catalog and press enter. The items listed in this catalog will be displayed for selection"];

searching for matching items in the selected portions of the database [see page 4-17, wherein "To perform a keyword search on stock items, press, F6 and enter the keyword or phrase. A list of all items containing the keyword will be displays. You can select an item from the list by positioning the lightbar to a desired item and pressing the enter key. The stock item will be moved into your requisition."; also see page 4-18, wherein "To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. A list of pre-stored catalog names will be displayed."];

building a requisition that includes selected matching items [see page 4-17, wherein "You can select an item from the list by positioning the lightbar to a desired item and pressing the enter key. The stock item will be moved into your requisition."; also see page 4-33, where a printout of a built requisition is shown];

processing the requisition to generate purchase orders for selected matching items [see page 6-3, wherein "If a requisition has already been entered, the data from the requisition will move forward into the purchase order automatically."; also see page 6-16, wherein "If ... a purchase order is being prepared from a requisition, the system will automatically move all of the line items from the requisition into the purchase order."; also see pages 4-33 and 6-35, which show a copy of a requisition and a generated purchase order].

Application/Control Number: 90/008,104                                    Page 87
Art Unit: 3992

### Conclusion

67.    **THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire TWO MONTHS

from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that

reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR**

**1.550(c).**  A request for extension of time must be filed on or before the day on which a response

to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g).

The mere filing of a request will not effect any extension of time.  An extension of time will be

granted only for sufficient cause, and for a reasonable time specified.

The filing of a timely first response to this final rejection will be construed as including a

request to extend the shortened statutory period for an additional month, which will be granted

even if previous extensions have been granted.  In no event however, will the statutory period for

response expire later than SIX MONTHS from the mailing date of the final action.  See MPEP §

2265.

Application/Control Number: 90/008,104                                    Page 88
Art Unit: 3992

68.      The Paten Owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,023,683 throughout the course of this reexamination proceeding.


69.      ALL correspondence relating to this ex parte reexamination proceeding should be

directed as follows:


**Please mail any communications to:**

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450


**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit


**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Application/Control Number: 90/008,104                                  Page 89
Art Unit: 3992

Registered users of EFS-Web may alternatively submit such correspondence via the electronic filing system EFS-Web, at https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html. EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

Any inquiry concerning this communication should be directed to Joseph R. Pokrzywa at telephone number 571-272-7410.

Signed:

Joseph R. Pokrzywa
Primary Examiner
Central Reexamination Unit 3992
(571) 272-7410

Conferees:

R6F
ESK