# EXHIBIT 6



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,487 | 08/21/2009 | 6505172 | 54848-5016-US | 8473 |

70813        7590        10/23/2009
GOODWIN PROCTER LLP
901 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20001

| EXAMINER |
|---|
| POKRZYWA, JOSEPH R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/23/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,487 US | 08/21/09 | 6505172 | 54848-5016- |

MORGAN, LEWIS & BOCKIUS, LLP(PA)
2 PALO ALTO SQUARE
3000 EL CAMINO REAL, SUITE 700
PALO ALTO, CA 94306

| EXAMINER |
|---|
| POKRZYWA, JOSEPH R. |

| ART UNIT | PAPER |
|---|---|
| 3992 | |

DATE MAILED:

10/23/09

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

| *OFFICE ACTION IN* **INTER PARTES** *REEXAMINATION* | Control No. 95/000,487 | Patent Under Reexamination 6505172 |
|---|---|---|
| | Examiner JOSEPH R. POKRZYWA | Art Unit 3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on 21 August 2009

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    2 MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II. SUMMARY OF ACTION:**

1a. ☒ Claims 1-5 are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims 1-5 are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____        ☐ are acceptable    ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:    ☐ approved.  ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
       ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No _____.
10. ☐ Other _____

Application/Control Number: 95/000,487                                             Page 2
Art Unit: 3992

## DETAILED ACTION

### *Reexamination*

1.     **Claims 1-5** of U.S. Patent Number 6,505,172 (hereafter the "172 Patent") are the subject

of this *inter partes* reexamination.

### *Listing of Prior Art*

2.     In the Request for Reexamination dated 8/21/2009, the Third Party Requester alleges that

the '172 Patent **claims 1-5** are unpatentable in light of the following references:

   a.     U.S. Patent Number 6,963,551, issued to Doyle *et al*. (noted as the "Doyle '551

          Patent");

   b.     U.S. Patent Number 5,712,989, issued to Johnson *et al*. (noted as "the Johnson

          '989 Patent");

   c.     "A Practical Guide to SABRE Reservations and Ticketing", written by Jeanne

          Semer-Purzycki, having a copyright date of 1992 (noted as the "SABRE Practical

          Guide");

   d.     "Reservations and Ticketing with SABRE", written by Dennis Foster, having a

          copyright date of 1990 (noted as "Reservations and Ticketing");

   e.     SABRE Total Access, 1993 (noted as "SABRE Total Access");

   f.     SABRE Savvy 1993 (noted as "SABRE Savvy");

Application/Control Number: 95/000,487                                Page 3
Art Unit: 3992

     g.     J-CON Manual, Volume 1, published by Cooperative Computing Incorporated, April 1994 (noted as the "J-CON Manual");

     h.     "J-CON System User's Manual, Vol. 3, Part-Finder", published by Cooperative Computing Incorporated, being dated 1989 (noted as "Part-Finder");

     i.     "J-CON RDB Guide", published by Cooperative Computing Incorporated, being dated March 1993 (noted as the "J-CON RDB Guide");

     j.     "Gateway 2000/MRO Version Manual" published by TSA incorporated, being dated May 1991 (noted as the "Gateway 2000/MRO Version Manual");

     k.     "TSA Gateway Purchasing Manual", dated December 1993 (noted as the "Gateway Purchasing Manual");

     l.     "TSA Gateway Inventory Processes User Manual", dated December 1993 (noted as the "Gateway Inventory Process Manual);

     m.     "Gateway The Newsletter for Purchasing Automation", Vol. 3, issue 1, Jan. 1991 (noted as the "Gateway Newsletter, January 1991");

     n.     "Gateway The Newsletter for Purchasing Automation", Vol. 3, issue 2, Apr. 1991 (noted as the "Gateway Newsletter, April 1991");

     o.     "The TSA Gateway DOS Product Overview", 1993 (noted as the "Gateway DOS Product Overview");

     p.     Gateshow demonstration program screenshots, 1993 (noted as the "Gateshow screenshots"); and

     q.     P.O. Writer Plus V.10 Manual, 1993 (noted as the "P.O. Writer Plus Manual").

Application/Control Number: 95/000,487                                    Page 4

Art Unit: 3992

### *Ground's for Rejection*

3.    The grounds for rejection of claims 1-5 of the '172 Patent are as follows:

**Grounds raised by the Third Party Requester:**

**Ground#1.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being anticipated

by the Doyle '551 Patent. This rejection of claims 1-5, as being anticipated by the Doyle '551

Patent, as proposed by the Third Party Requester, is adopted, for the reasons discussed below.

**Ground#2.**

Claims 1 and 3-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being

anticipated by the Johnson '989 Patent. This rejection of claims 1 and 3-5, as being anticipated

by the Johnson '989 Patent, as proposed by the Third Party Requester, is adopted, for the reasons

discussed below.

**Ground#3.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 103(a) as being unpatentable

over the SABRE Practical Guide in view of Reservations and Ticketing, and further in view of

SABRE Total Access and SABRE Savvy. As further discussed below, and being subject in

Ground #4 below, the primary reference of the SABRE Practical Guide can be interpreted to

teach each of the limitations of claims 1-5. Thus, the proposed rejection of claims 1-5 under 35

U.S.C. 103(a) as being an obvious combination of the SABRE Practical Guide, in view of

Application/Control Number: 95/000,487                                    Page 5
Art Unit: 3992

Reservations and Ticketing, and further in view of SABRE Total Access and SABRE Savvy, as

proposed by the Third Party Requester, is not adopted.


**Ground#4.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated

by the SABRE Practical Guide.  This rejection of claims 1-5, as being anticipated by the SABRE

Practical Guide, as proposed by the Third Party Requester, is adopted, for the reasons discussed

below.


**Ground#5.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 103(a) as being unpatentable

over the J-CON Manual in view of Part-Finder, and further in view of the J-CON RDB Guide.

Upon review of these submitted references, the examiner notes that the primary reference of the

J-CON Manual itself is seen to teach each of the claimed features of claims 1-5.  Thus, a

rejection of claims 1-5 follows below, as being anticipated by the J-CON Manual, noted as

Ground #8.  Therefore, this rejection under 35 U.S.C. 103(a), as being an obvious combination

of the J-CON Manual in view of Part-Finder, and further in view of the J-CON RDB Guide, as

proposed by the Third Party Requester, is not adopted, as specifically proposed.

Application/Control Number: 95/000,487                                    Page 6
Art Unit: 3992

**Ground#6.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 103(a) as being unpatentable over the Gateway 2000/MRO Manual in view of the Gateway Purchasing Manual and the Gateway Inventory Processes User Manual, and further in view of the Gateway Newsletter, January 1991, the Gateway Newsletter, April 1991, the Gateway DOS Product Overview, and the Gateshow screenshots. Upon review of the submitted references, the examiner notes that the primary reference of the Gateway 2000/MRO Manual itself is seen to teach each of the claimed featured of claims 1-5. Thus, a rejection of claims 1-5 follows below, as being anticipated by the Gateway 2000/MRO Manual, noted as Ground #9. Therefore, this rejection under 35 U.S.C. 103(a), as proposed by the Third Party Requester, as being an obvious combination of the Gateway 2000/MRO Manual in view of the Gateway Purchasing Manual and the Gateway Inventory Processes User Manual, and further in view of the Gateway Newsletter, January 1991, the Gateway Newsletter, April 1991, the Gateway DOS Product Overview, and the Gateshow screenshots, is not adopted, as proposed.

**Ground#7.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated by P.O. Writer Plus Manual. The examiner notes that the Third Party Requester cites portions of specific chapters in the manual regarding the different software modules. For instance, the Third Party Requester cites chapters having the heading "Purchase Orders", Inventory Control, and Requisitioning. Upon review of the references that comprise the P.O. Writer Plus Version 10 Manual, as a whole, the examiner notes that the reference titled the "P.O. Writer Plus Version

Application/Control Number: 95/000,487                                    Page 7
Art Unit: 3992

10.0 Guided Tour", having a copyright date of 1993 (hereafter the "P.O. Writer Plus Guided

Tour"), summarizes each of the respective software modules, and is seen to contain a description

of features that are found in the limitations of the current claim language. Thus, this reference of

the P.O. Writer Plus Guided Tour, which is part of the P.O. Writer Plus Version 10 Manual, is

specifically cited in a rejection below, as opposed to the separate software module descriptions

discussed by the Third Party Requester. With this, this rejection of claims 1-5, as being

anticipated by the P.O. Writer Plus Manual, as proposed by the Third Party Requester, is

adopted, for the reasons discussed below.


**Grounds raised by the examiner:**

**Ground#8.**

    Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being anticipated

by the J-CON Manual. As noted above, the J-CON Manual is the primary reference cited by the

Third Party Requester in Ground #5 noted above. This rejection of claims 1-5, as being

anticipated by the J-CON Manual, is adopted, for the reasons discussed below.


**Ground#9.**

    Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated

by the Gateway 2000/MRO Manual. As noted above, the Gateway 2000/MRO Manual is the

primary reference cited by the Third Party Requester in Ground #6 noted above. This rejection

of claims 1-5, as being anticipated by the Gateway 2000/MRO Manual, is adopted, for the

reasons discussed below.

Application/Control Number: 95/000,487                                             Page 8

Art Unit: 3992

### *Claim Rejections - 35 USC § 102*

4.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

### Ground #1

5.     **Claims 1-5** are rejected under 35 U.S.C. 102(e) as being anticipated by U.S. Patent

Number 5,694,551, issued to Doyle *et al.* (hereafter the "Doyle '551 Patent").


Regarding *claim 1*, the Doyle '551 Patent discloses an electronic sourcing system [see

Abstract] comprising:

a database containing data relating to items associated with at least two vendors [see Figs.

2 and 3, whereby the main system database 102 and the customer database 105 are maintained,

with data relating to catalogs 126 and 136, respectively, which is provided from different venders

106A and 106B; also see col. 3, lines 27-36, wherein customer catalog 136 is a "copy of the

portion of the product catalog accessible to that customer" and wherein "The main product

catalog 126 maintained in databases in the central computer 100 is massive and each customer,

during a set up phase, selects the portion of the catalog that is to be accessible to its authorized

users."; also see col. 3, lines 56-58, wherein "The vender supplies the main system, either

automatically or manually, with data regarding the vender product item catalog."; additionally

see col. 4, lines 28-30, wherein "The master item catalog 126 is periodically updated with

information received from the individual vendors 106 in step 1020."]

maintained so that selected portions of the database may be searched separately [see col.

5, lines 24-27, wherein "Information regarding items, item numbers and price may be obtained

on-line from the customer catalog 136 via a catalog screen 1052, such as shown in FIG. 13. The

customer catalog may be searched by product group or keyword."; also see Fig. 13, whereby the

name of the "item" was searched];

means for entering product information that at least partially describes at least one

desired item [see Fig. 13, whereby the name of the item is entered, shown as "pen"; also see col.

5, lines 26 and 27, wherein "The customer catalog may be searched by product group or

keyword."];

means for searching for matching items that match the entered product information in the

selected portions of the database [see Fig. 13];

means for generating an order list that includes at least one matching item selected by

said means for searching [see Fig. 13; and see col. 5, lines 21-37, wherein "Quantity item

ordering data 1051 may be entered directly into the catalog screen and the data then linked to the

requisition screen.  Information entered into the requisition screen 1058 is stored in the

requisition database 134..."; also see Fig. 7, wherein the requisition screen includes an order list

of selected matching items from the item Catalog Inquiry Screen of Fig. 13];

means for building a requisition that uses data obtained from said database relating to

selected matching items on said order list [see Figs. 7 and 13; also see col. 5, lines 49-65];

Application/Control Number: 95/000,487                         Page 10
Art Unit: 3992

      means for processing said requisition to generate purchase orders for said matching items

[see col. 3, lines 48-56; also see col. 5, line 59-65, wherein "update information, e.g. purchase

order acknowledgements, ship-to updates and product item updates, from the main computer is

transmitted to the customer computer to update the customer database in step 1206."; also see

col. 6, line 45-col. 7, line 6; additionally see col. 8, lines 39-46, wherein "FIG. 22 shows the

generation of vendor purchase orders from a vendor order file 1510 that contains  data on the

customer, items ordered and price to the central supplier.  This data is reformatted into standard

purchase order forms 1512 for each vendor in step 1514."].


      Regarding *claim 2*, the Doyle '551 Patent discloses the electronic sourcing system

discussed above in claim 1, and further teaches that the means for searching comprises:

      means for searching the database for segments of data relating to items associated with a

vendor that contain vendor items that match the product information for said at least one desired

item [see Fig. 13; also see col. 5, lines 24-27, wherein "The customer catalog may be searched

by product group or keyword."];

      means for generating a hit list of such vendor segments [see Fig. 13]; and

      means for selectively viewing the vendor segments identified for said hit list [see Fig. 13,

wherein the customer can scroll through multiple pages of the hit list seen in Fig. 13]; and

      wherein the means for generating an order list comprises means for selecting desired

items from a vendor segment identified by said hit list [see Fig. 13, also see col. 5, lines 21-37,

wherein "Quantity item ordering data 1051 may be entered directly into the catalog screen and

the data then linked to the requisition screen.  Information entered into the requisition screen

1058 is stored in the requisition database 134...").

Regarding *claim 3*, the Doyle '551 Patent discloses the electronic sourcing system

discussed above in claim 1, and further teaches that the means for entering product information

fully describes at least one desired item [see Fig. 13, also see col. 5, lines 3-36].

Regarding *claim 4*, the Doyle '551 Patent discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining the applicable price of

a selected matching item [see col. 5, lines 3-36, wherein "Information regarding items, item

numbers and price may be obtained on-line from customer catalog 136..."; also see col. 8, lines

47-67, wherein "the customer price and item files can be updated when the vendor item data is

changed in step 1568."; also see col. 9, lines 5-21].

Regarding *claim 5*, the Doyle '551 Patent discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining whether a selected

matching item is available in inventory [see Fig. 11, being the Requisition Inquiry, which shows

which items have shipped, which items are in-process, and which items are on backorder, therein

not being "available in inventory"].

Application/Control Number: 95/000,487                                    Page 12
Art Unit: 3992

**Ground #2**

6.      **Claims 1, and 3-5** are rejected under 35 U.S.C. 102(e) as being anticipated by U.S.

Patent Number 5,712,989, issued to Johnson *et al.* (hereafter the "Johnson '989 Patent").

The applied reference has a common inventor with the instant application. Based upon

the earlier effective U.S. filing date of the reference, it constitutes prior art under 35 U.S.C.

102(e). This rejection under 35 U.S.C. 102(e) might be overcome either by a showing under 37

CFR 1.132 that any invention disclosed but not claimed in the reference was derived from the

inventor of this application and is thus not the invention "by another," or by an appropriate

showing under 37 CFR 1.131.

Regarding *claim 1*, the Johnson '989 Patent discloses an electronic sourcing system [see

Abstract] comprising:

a database containing data relating to items associated with at least two vendors [see Fig.

1, wherein the host database 20 and local database 50 can contain data items associated with

vendors 37 and 38; also see col. 3, line 10-col. 4, line 44; also see col. 8, lines 25-39] maintained

so that selected portions of the database may be searched separately [see Fig. 3, wherein step 202

states "Local computer searches part master table for entered stock number"; additionally see

col. 6, lines 31-38];

means for entering product information that at least partially describes at least one

desired item [see Fig. 3, steps 200 and 201, also see col. 8, lines 40-61; additionally see col. 6,

lines 31-34];

means for searching for matching items that match the entered product information in the selected portions of the database [see Fig. 3, step 202, also see col. 8, line 40-col. 9, line 15];

means for generating an order list that includes at least one matching item selected by said means for searching [see col. 8, line 40-col. 9, line 15, wherein "In step 201, the entered stock number is added to the appropriate field of the Requisition Item Table in local database 50...", whereby the Requisition Item Table that is created can be considered as an "order list"; also see col. 6, lines 31-38];

means for building a requisition that uses data obtained from said database relating to selected matching items on said order list [see col. 6, lines 31-64; also see col. 8, line 40-col. 9, line 15; also see Figs. 3 and 4a];

means for processing said requisition to generate purchase orders for said matching items [see Figs. 2A and 2B, and also Figs. 5A and 5B; also see col. 17, lines 35-49].


Regarding *claim 3*, the Johnson '989 Patent discloses the electronic sourcing system discussed above in claim 1, and further teaches that the means for entering product information fully describes at least one desired item [see col. 8, lines 24-61].


Regarding *claim 4*, the Johnson '989 Patent discloses the electronic sourcing system discussed above in claim 1, and further teaches of means for determining the applicable price of a selected matching item [see col. 12, lines 34-52].

Application/Control Number: 95/000,487                                    Page 14

Art Unit: 3992

Regarding *claim 5*, the Johnson '989 Patent discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining whether a selected

matching item is available in inventory [see col. 3, lines 10-16; also see col. 12, lines 17-27].

**Ground #4**

7.      *Claims 1-5* are rejected under 35 U.S.C. 102(b) as being anticipated by "A Practical

Guide to SABRE Reservations and Ticketing", written by Jeanne Semer-Purzycki, having a

copyright date of 1992 (hereafter "SABRE Practical Guide").

Regarding *claim 1*, the SABRE Practical Guide discloses an electronic sourcing system

[see page 2, under the heading "WHAT SABRE CAN DO", the interactive and dynamic

electronic sourcing system is described] comprising:

a database containing data relating to items associated with at least two vendors [see page

1, wherein five different vendors are listed; also see page 2, wherein "SABRE maintains a vast

amount of current information.  For example, it stores: Flight schedules for more than 680

worldwide carriers;...Hotel descriptions and prices for more than 17,000 properties throughout

the world."] maintained so that selected portions of the database may be searched separately [see

page 51, wherein a user can "request specific carrier availability by specifying one or more

airlines in the availability entry."; also see page 377, whereby through the hotel system, hotels

from around the world can be checked for room availability based on "customers requests that

include location of hotel, type of room/bedding, price, and availability of amenities."];

Application/Control Number: 95/000,487                                    Page 15
Art Unit: 3992

means for entering product information that at least partially describes at least one

desired item [see page 35, wherein "The From/To cities are entered with either city or specific

airport codes."; also see page 51, wherein a customer can "Request specific carrier availability

by specifying one or more airlines in the availability entry."];

means for searching for matching items that match the entered product information in the

selected portions of the database [see page 34, wherein the SABRE system searches and "show

the travel agent what airlines and flight numbers operate between two cities on a given date.

Important information such as departure/arrival times, types of equipment, and meal service is

also displayed for each flight."; also see pages 43 and 55; also see pages 233-239, where various

fares of different carriers can be searched and displayed];

means for generating an order list that includes at least one matching item selected by

said means for searching [see for instance page 84, whereby a completed Passenger Name

Record (PNR) includes an ordered list of selected flight components that were found after

searching; additionally, see page 235, whereby an example of a fare-quote is displayed, which

contains an ordered list that "provides more detailed information concerning each fare.  Each

fare is listed by line number and pertinent information about each fare type is listed in

columns."];

means for building a requisition that uses data obtained from said database relating to

selected matching items on said order list [see page 8, wherein the PNR contains "Reservation

data: airline, flight number, date off travel, class of service, departure and arrival times",

whereby "The travel agent compiles and enters this data into the PNR."; also see pages 15 and

16];

means for processing said requisition to generate purchase orders for said matching items [see pages 15 and 16, whereby on page 16 with respect to the E (end record) key, "The travel agent always must end a PNR after it has been completed. Ending a record transmits the PNR directly to American Airlines' central computer for permanent storage."; also see page 279, wherein "Itinerary pricing enables a travel agent to display the fare for a PNR that is currently in the computer's working area. The function can only be performed on a previously stored PNR or on a PNR that is being created."; also see pages 319 and 320, whereby an automated ticket is generated; also see page 333, which shows examples of generated tickets, which can be considered as a generated "purchase order"].

Regarding *claim 2*, the SABRE Practical Guide discloses the electronic sourcing system discussed above in claim 1, and further teaches that the means for searching comprises:

means for searching the database for segments of data relating to items associated with a vendor that contain vendor items that match the product information for said at least one desired item [see pages 34 and 35; also see pages 59 and 62; also see pages 233-239, where various fares of different carriers are displayed];

means for generating a hit list of such vendor segments [see page 34; also see page 235, wherein a number of vender segments are shown having different fares, therein generating a "hit-list"]; and

means for selectively viewing the vendor segments identified for said hit list [see page 51; also see page 57; additionally, see pages 233-235]; and

wherein the means for generating an order list comprises means for selecting desired

items from a vendor segment identified by said hit list [see page 74; also see pages 233-239,

whereby selected flights having the selected fares are imported into the PNR].

Regarding *claim 3*, the SABRE Practical Guide discloses the electronic sourcing system

discussed above in claim 1, and further teaches that the means for entering product information

fully describes at least one desired item [see page 35, wherein the entry of

"128FEBJFKDEN7A" fully describes the entry of a desired item of a flight on February 28,

between JFK and DEN airports.].

Regarding *claim 4*, the SABRE Practical Guide discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining the applicable price of

a selected matching item [see page 279, wherein "Itinerary pricing enables a travel agent to

display the fare for a PNR that is currently in the computer's working area. The function can

only be performed on a previously stored PNR or on a PNR that is being created."].

Regarding *claim 5*, the SABRE Practical Guide discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining whether a selected

matching item is available in inventory [see page 34, wherein "One of the most important

functions of the airline computer system is to display seat availability for a given travel date, city

pair, and time of departure or arrival."].

Application/Control Number: 95/000,487                                    Page 18
Art Unit: 3992

**Ground #7**

8.     ***Claims 1-5*** are rejected under 35 U.S.C. 102(b) as being anticipated by the P.O. Writer

Plus Version 10 Manual, whereby the examiner cites portions of just the "P.O. Writer Plus

Version 10.0 Guided Tour", having a copyright date of 1993 (hereafter the "P.O. Writer Plus

Guided Tour"), which summarizes each of the respective software modules.  The portions cited

in the Request by the Third Party Requester describe the same functions of the P.O. Writer Plus

software, but in greater depth.


Regarding ***claim 1***, P.O. Writer Plus Guided Tour discloses an electronic sourcing system

comprising:

a database containing data relating to items associated with at least two vendors

maintained so that selected portions of the database may be searched separately [see page 22,

wherein "You can now buy this item from Best Buy, Bayless, or any other vendor you would

like to select."; also see pages 45 and 46, wherein "For example, say you want to display all

items in the Bayless Catalogue whose description starts with the letters "P".";  also see pages 130

and 131, wherein page 131 states "Items from a specific catalog can be displayed by entering a

Catalogue ID at the top of the screen."];

means for entering product information that at least partially describes at least one

desired item [see page 18, wherein "If you want to buy something without an Item Number, type

an "*" followed by a short description (optional).";  also see pages 19 and 20, whereby page 20

states "The system displays 3 Items whose descriptions begin with C.  If we had typed CAR on

the previous screen, only Item Number A1000 would have been displayed.";  also see page 46,

wherein "For example, say you want to display all items in the Bayless Catalogue whose

description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the

Bayless catalogue whose descriptions begin with the letter P."; also see page 132];

   means for searching for matching items that match the entered product information in the

selected portions of the database [see page 47, wherein "There are 3 items in the Bayless

catalogue whose descriptions begin with the letter P."; also see pages 132 and 133];

   means for generating an order list that includes at least one matching item selected by

said means for searching [see page 47, whereby each of the items that begin with the letter P are

displayed in a list, and further wherein "You want to order 300 pens and 5 pencil sharpeners.",

being shown on page 48, which also states "You can move these items to the P.O. screen: - Press

F7", leading to the display seen on page 49; also see the order list on page 133];

   means for building a requisition that uses data obtained from said database relating to

selected matching items on said order list [see pages 47-49; also see pages 132-134, whereby on

page 133, "In this example, 100 3/8" DRILL BITS and 1 CHAIR-SWIVEL will be

requisitioned.", whereby this built requisition is seen on pages 152 and 153];

   means for processing said requisition to generate purchase orders for said matching items

[see page 49; also see pages 149-153, wherein on page 149, "The REQUISITIONING

INTERFACE allows you to turn purchase Requisitions into Purchase Orders quickly and easily.

Requisitions can be automatically consolidated onto one Purchase Order."].

Application/Control Number: 95/000,487                                                          Page 20
Art Unit: 3992

Regarding *claim 2*, P.O. Writer Plus Guided Tour discloses the electronic sourcing

system discussed above in claim 1, and further teaches that the means for searching comprises:

means for searching the database for segments of data relating to items associated with a

vendor that contain vendor items that match the product information for said at least one desired

item [see page 18, wherein "If you want to buy something without an Item Number, type an "*"

followed by a short description (optional)."; also see pages 19 and 20, whereby page 20 states

"The system displays 3 Items whose descriptions begin with C.  If we had typed CAR on the

previous screen, only Item Number A1000 would have been displayed."; also see page 46,

wherein "For example, say you want to display all items in the Bayless Catalogue whose

description starts with the letters "P"."; also see page 47, wherein "There are 3 items in the

Bayless catalogue whose descriptions begin with the letter P."; also see page 132];

means for generating a hit list of such vendor segments [see pages 47-49; also see pages

132-134]; and

means for selectively viewing the vendor segments identified for said hit list [see page

48]; and

wherein the means for generating an order list comprises means for selecting desired

items from a vendor segment identified by said hit list [see page 49, whereby the order list is

seen].

Regarding *claim 3*, the P.O. Writer Plus Guided Tour discloses the electronic sourcing

system discussed above in claim 1, and further teaches that the means for entering product

information fully describes at least one desired item [see page 18, wherein "If you want to buy

something without an Item Number, type an "*" followed by a short description (optional)."";

also see pages 19 and 20, whereby page 20 states "The system displays 3 Items whose

descriptions begin with C. If we had typed CAR on the previous screen, only Item Number

A1000 would have been displayed."; also see page 46, wherein "For example, say you want to

display all items in the Bayless Catalogue whose description starts with the letters "P".""; also see

page 47, wherein "There are 3 items in the Bayless catalogue whose descriptions begin with the

letter P."; also see page 132].


Regarding *claim 4*, the P.O. Writer Plus Guided Tour discloses the electronic sourcing

system discussed above in claim 1, and further teaches of means for determining the applicable

price of a selected matching item [see page 71, wherein "PRICE ANALYSIS – shows all P.O.'s,

compare actual to standard cost, calculates variances, and average and actual prices.""].


Regarding *claim 5*, the P.O. Writer Plus Guided Tour discloses the electronic sourcing

system discussed above in claim 1, and further teaches of means for determining whether a

selected matching item is available in inventory [see page 102, wherein "The Inventory Control

Module allows you to track on-hand inventory balances and report usage history, and

automatically generate Re-order Analysis as often as you like."; also see page 103, wherein "The

Application/Control Number: 95/000,487                                    Page 22

Art Unit: 3992

P.O. Writer PLUS Inventory Control Module allows you to specify those items you would like to

track in Inventory."].

**Ground #8**

9.      *Claims 1-5* are rejected under 35 U.S.C. 102(e) as being anticipated by the "J-CON

Manual", Volume 1, published by Cooperative Computing Incorporated, April 1994 (hereafter

the "J-CON Manual").

Regarding *claim 1*, the J-CON Manual discloses an electronic sourcing system

comprising:

a database containing data relating to items associated with at least two vendors

maintained so that selected portions of the database may be searched separately [see Ch.3, Sec.2,

Page 1, wherein "In PartFinder, parts are organized into part groups; for example, wheels and

brake parts in one group, and filters and parts for tune-ups are in another group."; also see Ch.3,

Sec.5, Page 1, whereby the PartFinder catalog includes at least two product catalogs from

different manufacturers; also see Ch.3, Sec.2, Page 11, whereby upon pressing "<Mfgs>" at the

SELECTION field, "J-CON displays all the manufacturers for the subgroup and highlights your

primary and alternate manufacturers"; also see Ch.4, Sec.4, Page 3, wherein "When you compute

a PO for a primary or alternate vendor, J-CON checks each manufacturer to see which ones

should be ordered from the vendor."];

means for entering product information that at least partially describes at least one

desired item [see Ch.3, Sec.2, Page 1, wherein "When you look up a part with PartFinder, you

specify its group and subgroup, as well as the vehicle's year, make, and model, J-CON then

displays a list of possible parts and their prices for the customer. You select a part from the list

and specify how many you want."; also see Ch.3, Sec.2, Page 2 and Page 3];

means for searching for matching items that match the entered product information in the

selected portions of the database [being the operation of PartFinder; see Ch.3, Sec.2, Page 1,

wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well

as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their

prices for the customer. You select a part from the list and specify how many you want."];

means for generating an order list that includes at least one matching item selected by

said means for searching [see Ch.3, Sec.2, Page 1, wherein "...J-CON then displays a list of

possible parts and their prices for the customer. You select a part from the list and specify how

many you want."; also see Ch.3, Sec.2, Page 8 and Page 9];

means for building a requisition that uses data obtained from said database relating to

selected matching items on said order list [see Ch.3, Sec.2, Page 1, wherein "...J-CON then

displays a list of possible parts and their prices for the customer. You select a part from the list

and specify how many you want."; also see Ch.3, Sec.2, Page 4, wherein "At 'Selection, choose

one: Enter the number for the part you want. When you finish selecting parts , press <Order

Screen> to return POS..."; also see Ch.3, Sec.2, Page 8 and Page 9, whereby a ticket is built

having a listing of selected parts for a customer];

means for processing said requisition to generate purchase orders for said matching items [see Ch.4, Sec.3, Page 1 and Ch.4, Sec.4, page 1 through Page 7, wherein "You can set up J-CON to automatically compute POs during EOD.  You can also set it to automatically transmit POs to vendors who use A-DIS.  The POs can go to primary and alternate vendors, and to other venders for whom you have set up PO control files in Function 7.7, Add or Edit Vendor Data."].

Regarding *claim 2*, the J-CON Manual discloses the electronic sourcing system discussed above in claim 1, and further teaches that the means for searching comprises:

means for searching the database for segments of data relating to items associated with a vendor that contain vendor items that match the product information for said at least one desired item [see Ch.3, Sec.2, Page 1, wherein "Each group of parts is divided into subgroups.  For example, two of the six subgroups in the Tune-Up & Filters group are called Ignition Wires and Spark Plugs."; see the figure on page Ch.3, Sec.2, Page 2];

means for generating a hit list of such vendor segments [see Ch.3, Sec.2, Page 1, wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well as the vehicle's year, make, and model, J-CON then displays a list of possible parts and their prices for the customer.  You select a part from the list and specify how many you want."; also see Ch.3, Sec.2, Page 8, wherein "You can list all the subgroups in a group, as well as all the parts in a subgroup."]; and

means for selectively viewing the vendor segments identified for said hit list [see Ch.3, Sec.2, Page 1, wherein "When you look up a part with PartFinder, you specify its group and subgroup, as well as the vehicle's year, make, and model, J-CON then displays a list of possible

parts and their prices for the customer.  You select a part from the list and specify how many you

want."]; and

wherein the means for generating an order list comprises means for selecting desired

items from a vendor segment identified by said hit list [see Ch.3, Sec.2, Page 7 and Page 8].


Regarding *claim 3*, the J-CON Manual discloses the electronic sourcing system discussed

above in claim 1, and further teaches that the means for entering product information fully

describes at least one desired item [see Ch.3, Sec.2, Page 1, wherein "When you look up a part

with PartFinder, you specify its group and subgroup, as well as the vehicle's year, make, and

model, J-CON then displays a list of possible parts and their prices for the customer.  You select

a part from the list and specify how many you want."; also see Ch.3, Sec.2, Page 2 and Page 3].


Regarding *claim 4*, the J-CON Manual discloses the electronic sourcing system discussed

above in claim 1, and further teaches of means for determining the applicable price of a selected

matching item [see Ch.3, Sec.2, Page 4, whereby "If you have PartSource and want J-CON to

display prices for parts not in your JIF, press <Prices>. Result:J-CON displays the prices."; also

see Ch.3, Sec.2, Page 6].


Regarding *claim 5*, the J-CON Manual discloses the electronic sourcing system discussed

above in claim 1, and further teaches of means for determining whether a selected matching item

is available in inventory [see Ch.3, Sec.2, Pages 6 and 10, whereby on page 6, the field "AVL":

quantity available" is utilized for determining the available inventory, and whereby on page 10,

"Not Found (NF) Parts" are described; also see Ch.2, Sec.10, Page 15].

### Ground #9

10.    *Claims 1-5* are rejected under 35 U.S.C. 102(b) as being anticipated by the "Gateway

2000/MRO Version", from Technical Service Associates (TSA), dated May 1991 (hereafter

"Gateway 2000/MRO").

Regarding *claim 1*, the Gateway 200/MRO discloses an electronic sourcing system

comprising:

a database containing data relating to items associated with at least two vendors

maintained so that selected portions of the database may be searched separately [see pages 4-18

and 4-19, wherein "To select a catalog, move the lightbar to the desired catalog and press enter.

The items listed in this catalog will be displayed for selection."; also see page 15-42, wherein

"The GATEWAY 2000/MRO ...System provides a capability to define and store vendor

catalogues that can be used for selection during PO entry."];

means for entering product information that at least partially describes at least one

desired item [see page 4-17, wherein "To perform a keyword search on stock items, press F6 and

enter the keyword or phrase."; also see page 4-19, wherein "When a catalog has been selected,

the items listed in that catalog will be displayed on the screen in a catalog items window.  To

choose from a catalog position the lightbar to the desired item and press enter. A window will be displayed for entry of the quantity required. Enter a quantity."];

means for searching for matching items that match the entered product information in the selected portions of the database [see pages 4-7 through 4-19];

means for generating an order list that includes at least one matching item selected by said means for searching [see pages 4-17 through 4-19, whereby page 4-19 states "When all items have been selected, press the F8 key to move all of the selected items into the order....Upon selection of all items, the system will display all of the selected items, the cursor will be positioned for editing the quantity and price fields of the first item."; also see the figure on page 4-19 that shows an order list of various sizes of "screws"];

means for building a requisition that uses data obtained from said database relating to selected matching items on said order list [see pages 4-3 through 4-30, whereby page 4-3 states "To enter a new requisition, complete screen entries as they are shown.", also whereby page 4-15 states "Upon completion of entries for screen 1 of the requisition, the line item entry screen is displayed. This screen is used to enter details of each item that is to be purchased...", also whereby page 4-26 states "Requisitions can be changed or updated at any time until a purchase order is prepared."; also see page 4-33, which shows a printout of a built requisition];

means for processing said requisition to generate purchase orders for said matching items [see page 6-3, wherein "If a requisition has already been entered, the data from the requisition will move forward into the purchase order automatically."; also see page 6-16, wherein "If ...a purchase order is being prepared from a requisition, the system will automatically move all of the

Application/Control Number: 95/000,487                                Page 28
Art Unit: 3992

line items from the requisition into the purchase order."; also see pages 4-33 and 6-35, which

show a copy of a requisition and a generated purchase order.].


Regarding *claim 2*, the Gateway 2000/MRO discloses the electronic sourcing system

discussed above in claim 1, and further teaches that the means for searching comprises:

means for searching the database for segments of data relating to items associated with a

vendor that contain vendor items that match the product information for said at least one desired

item [see page 4-18, wherein "A list of pre-stored catalog names will be displayed . Catalogs

can be created for any group of commonly ordered items and used repeatedly throughout

requisition and PO processing. Catalogs contain a heading that describes the catalog plus the

vendor name and catalog name."; also see page 4-19, wherein "When a catalog has been

selected, the items listed in that catalog will be displayed on the screen in a catalog items

window. To choose from a catalog position the lightbar to the desired item and press enter. A

window will be displayed for entry of the quantity required. Enter a quantity."];

means for generating a hit list of such vendor segments [see page 4-18, wherein "A list of

pre-stored catalog names will be displayed . Catalogs can be created for any group of commonly

ordered items and used repeatedly throughout requisition and PO processing. Catalogs contain a

heading that describes the catalog plus the vendor name and catalog name."; also see page 4-19,

wherein "When a catalog has been selected, the items listed in that catalog will be displayed on

the screen in a catalog items window. To choose from a catalog position the lightbar to the

desired item and press enter. A window will be displayed for entry of the quantity required.

Enter a quantity."]; and

means for selectively viewing the vendor segments identified for said hit list [see page 4-19, wherein "When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required. Enter a quantity."]; and

wherein the means for generating an order list comprises means for selecting desired items from a vendor segment identified by said hit list [see page 4-19, wherein "When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required.  Enter a quantity."].

Regarding *claim 3*, Gateway 2000/MRO discloses the electronic sourcing system discussed above in claim 1, and further teaches that the means for entering product information fully describes at least one desired item [see page 4-17, wherein "To perform a keyword search on stock items, press F6 and enter the keyword or phrase."; also see page 4-19, wherein "When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required.  Enter a quantity."].

Regarding *claim 4*, Gateway 2000/MRO discloses the electronic sourcing system discussed above in claim 1, and further teaches of means for determining the applicable price of a selected matching item [see page 4-8, wherein "the purchase order processes will automatically

calculate a tax amount based upon the system tax tables."; also see page 4-20, wherein "the

system will automatically calculate and display the extended price."].


     Regarding *claim 5*, Gateway 2000/MRO discloses the electronic sourcing system

discussed above in claim 1, and further teaches of means for determining whether a selected

matching item is available in inventory [see page 4-17, wherein "If a stock item is not on file, the

message "item not found" will be displayed, and the message "Item not on file, add new item

now (Y/N)" will be displayed."].

Application/Control Number: 95/000,487                                    Page 31
Art Unit: 3992

### *Conclusion*

11.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,505,172 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

12.     In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response to

this Office action.  Submissions after the next Office action, which is intended to be an Action

Closing Prosecution (ACP), will be governed by 37 CFR 1.116(b) and (d), which will be strictly

enforced.

Application/Control Number: 95/000,487                                    Page 32

Art Unit: 3992

13.     **All** correspondence relating to this *inter partes* reexamination proceeding should be

directed:


By Mail to:     Mail Stop *Inter Partes* Reexam
                Attn: Central Reexamination Unit
                Commissioner of Patents
                United States Patent & Trademark Office
                P.O. Box 1450
                Alexandria, VA 22313-1450


By FAX to:      (571) 273-9900
                Central Reexamination Unit


By hand:        Customer Service Window
                Randolph Building
                401 Dulany St.
                Alexandria, VA 22314


        Any inquiry concerning this communication or earlier communications from the
examiner, or as to the status of this proceeding, should be directed to the Central Reexamination
Unit at telephone number (571) 272-7705.


Signed:

Joseph R Pokrzywa

Primary Patent Examiner

Central Reexamination Unit 3992

(571) 272-7410


Conferees:      /r.g.f./

                /Sue Lao/