# EXHIBIT 8



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/009,636 | 11/12/2009 | 6055516 | 16391.0001USRX | 8376 |

| | | | |
|---|---|---|---|
| 33942      7590      01/15/2010 | | EXAMINER | |

CHA & REITER, LLC
210 ROUTE 4 EAST STE 103
PARAMUS, NJ  07652

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 01/15/2010

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

JOSHUA P. GRAHAM
MERCHANT & GOULD PC
3200 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN  55402

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/009,636*.

PATENT NO. *6055516*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/009,636 | Patent Under Reexamination 6055516 | |
|---|---|---|---|
| | Examiner JOSEPH R. POKRZYWA | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>12 November 2009</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,      b)☐ PTO/SB/08,      c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )

Application/Control Number: 90/009,636                                    Page 2
Art Unit: 3992

## DETAILED ACTION

### Response to Request for *ex parte* Reexamination

1.      Reexamination has been requested by the Third Party for claims 1-29 of United States

Patent Number 6,055,516.

2.      A substantial new question of patentability affecting claims 1-29 of U.S. Patent Number

6,055,516 (hereafter "the '516 Patent") is raised by the Third Party's request for *ex parte*

reexamination.

3.      The '516 Patent issued on Apr. 25, 2000, from U.S. Application 09/234,366, being filed

on Jan. 20, 1999, which is listed as being a continuation of U.S. Patent Application 08/288,577,

filed Aug. 10, 1994, which matured into U.S. Patent Number 6,023,683.

Application/Control Number: 90/009,636                                    Page 3
Art Unit: 3992

### *Listing of Prior Art*

4.      In the request for reexamination, the Third Party Requester alleges that a substantial new

question of patentability of claims 1-29 of the '516 Patent is raised in light of the following

references:

     a.      U.S. Patent Number 5,712,989, issued to Johnson *et al.*, referred to herein as the

           "Johnson'989 Patent";

     b.      U.S. Patent Number 5,319,542, issued to King, Jr. et al., referred to herein as the

           "King'542 Patent";

     c.      "The P.O. Writer Plus V.10 Manual", referred to "the P.O. Writer Manual";

     d.      "A Practical Guide to SABRE Reservations and Ticketing", referred to as "the

           Practical Guide to SABRE";

     e.      "The J-CON Manual", referred to as "the J-CON Manual";

     f.      "The Gateway 2000/MRO Version", referred to as "the Gateway Manual"; and

     g.      "The IBM Technical Viewer/2 General Information Manual", referred to as "the

           TV/2 Manual", & the IBM Technical Viewer /2 Brochure, referred to as "the

           TV/2 Brochure".

5.      The examiner notes that the King'542 Patent, the TV/2 Manual, and the TV/2 Brochure

are each listed on the face of the patent, and were included in the Information Disclosure

Statement that was filed by the applicant of the prosecution of the '516 Patent.  However, there

was no specific discussion of these references, nor were these references utilized in any rejection

Application/Control Number: 90/009,636                                    Page 4
Art Unit: 3992

by the examiner in the original prosecution of the claims.  Further the reference of Johnson'989

was cited in the specification of the '516 Patent (i.e., in col. 1, lines 13-21), but the reference was

not of record, nor was this reference discussed by the examiner, or used in any rejection of the

claims of the '516 Patent.  Upon inspection of the Johnson'989 Patent, the examiner notes that

the reference carries a different inventive entity than that of the instant application that matured

into the '516 Patent, and is not part of the priority chain of the instant '516 Patent.  Thus, the

reference is seen to qualify as prior art under 35 U.S.C. 102(e).


6.      With this, the aforementioned newly cited references of the P.O. Writer Manual, the

Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual are each not of record

in the file of the '516 Patent and are not seen to be cumulative to the art of record in the original

file.

Application/Control Number: 90/009,636                                        Page 5
Art Unit: 3992

### *Requester's Position*

7.      The request indicates that the Third Party Requester alleges that:


      SNQ#1.      Claims 1-29 of the '516 Patent to be unpatentable over the Johnson'989

          Patent;

      SNQ#2.      Claims 1-29 of the '516 Patent to be unpatentable over the King'542

          Patent;

      SNQ#3.      Claims 1-29 of the '516 Patent to be unpatentable over the P.O. Writer;

      SNQ#4.      Claims 1-29 of the '516 Patent to be unpatentable over the Practical Guide

          to SABRE;

      SNQ#5.      Claims 1-29 of the '516 Patent to be unpatentable over the J-CON

          Manual;

      SNQ#6.      Claims 1-29 of the '516 Patent to be unpatentable over the Gateway

          Manual;

      SNQ#7.      Claims 1-29 of the '516 Patent to be unpatentable over the TV/2 Manual.

Application/Control Number: 90/009,636                                      Page 6
Art Unit: 3992

### *Discussion of Substantial New Question of Patentability*

8.       First, upon review of the prosecution history of the application that matured into the '516

Patent (U.S. Application 09/234,366), the examiner notes that the Notice of Allowability in the

file did not include any statement of the reasons for patentability.  Thus, looking further into the

prosecution history, a single Office action appears in the record, which indicated that claims 91-

102 were allowed (which correspond to patented claims 9-18 in the '516 Patent), and which

rejected claims 79-87, 90, 103-112, and 114-120 as being clearly anticipated by Dworkin (U.S.

Patent Number 4,992,940).  Further, also in that Office action, the examiner at the time indicated

that "Art of interest, which does not teach or suggest: A) converting items found in one vendor's

catalog to equivalent products in another vendor's catalog, (claims 88, 89, 91-102 & 113), is

cited by the examiner".  With this, the only additional reference to be the "art of interest cited by

the examiner" in the attached PTO-892 is the reference of Boyer *et al.* (U.S. Patent Number

5,778,355).  Further, this limitation of "converting items found in one vendor's catalog to

equivalent products in another vendor's catalog" only appears in now patented independent

claim 16, and not particularly in the other patented independent claims.  Thus, with this Office

action, the allowable features of the original claims of the '516 Patent appear to be found in the

limitation found in patented claim 16 of the '516 Patent.

9.       Continuing, also in the prosecution history, in response to this Office action noted above,

the Applicant submitted a response which canceled claims 84-86, 88, 103-109, and 111-113, and

amended claims 79, 87, 89, 110, 114, 115, and added new claim 121, whereby amended

Application/Control Number: 90/009,636                                    Page 7
Art Unit: 3992

independent claims 79, 110, and 121 (which correspond to patented independent claims 1, 21,

and 29 of the '516 Patent, respectively) included features of canceled claims 84-86, and 88, as

well as canceled claims 111-113. The Notice of Allowability was subsequently mailed, with no

further explanation as to what the specific allowable features were believed to be by the

examiner in the original prosecution.


10.    Thus, it appears that the allowable features of the claims in the '516 Patent in the original

prosecution appear to be found in these limitations of patented claims 1, 16, and 21, whereby the

allowable features appear to be related to converting items found in one vendor's catalog to

equivalent products in another vendor's catalog. Therefore, with this, particularly, the allowable

features of patented claim 1 appear to be found in the limitations that require "a catalog selection

protocol...including matching a vendor identification code with a subset of said collection of

catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined

vendor and a second catalog from a predetermined third party that is one of a manufacturer and a

competing vendor, said predetermined third party selling items corresponding to items in said

vendor catalog". Further, with respect to independent claim 9, no particular patentable features

were discussed in the original prosecution, but the examiner believes that the limitations in claim

9 that relate to "converting data relating to said item from said first catalog to data relating to

said item from said second catalog" are found in the limitation that requires "said first item and

said second item being generally equivalent, and wherein a selection of one identification code

from one of said first and second catalogs provides the other identification code from the other of

said catalogs."

Application/Control Number: 90/009,636                                    Page 8
Art Unit: 3992

11.     Continuing, the allowable features of patented claim 16 appear to be in the limitation that requires "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog".  And the allowable features of independent claim 21 appear to be in the limitation that requires "said each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item; wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, said search module criteria and a determination system that located items are generally equivalent; and wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification code from a second located item."

12.     With this, the examiner notes that MPEP 2240 [R-5] states, in part:

        37 CFR  1.515. Determination of the request for ex parte reexamination.

        (a)     Within three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not **a substantial new question of patentability affecting any claim of the patent is raised by the request** and the prior art cited therein, with or without consideration of other patents or printed publications. The examiner 's determination will be based on the claims in effect at the time of the determination, will become a part of the official file of

Application/Control Number: 90/009,636                                     Page 9
Art Unit: 3992

> the patent, and will be mailed to the patent owner at the address as provided for in §
>
> 1.33(c) and to the person requesting reexamination. [Emphasis added.]

13.    Thus, it is agreed that the consideration of the Johnson'989 Patent raises a substantial

new question with respect to patented claims 1-29 of the '516 Patent.  As noted above, the

examiner notes that the reference of the Johnson'989 Patent would qualify as prior art under 35

U.S.C. 102(e), as a different inventive entity exists for the Johnson'989 Patent than that of the

instant '516 Patent, therein being a patent "by another".

14.    With this, with respect to independent claim 1 of the '516 Patent, the Johnson'989 Patent

is seen to teach of a catalog selection protocol...including matching a vendor identification code

with a subset of said collection of catalogs [see col. 34, lines 1-11], wherein said subset of

catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from

a predetermined third party that is one of a manufacturer and a competing vendor, said

predetermined third party selling items corresponding to items in said vendor catalog [see col.

31, line 60-col. 32, line 40].  These limitations were also seen to be within independent claim 29

of the '516 Patent.  Further, with respect to independent claim 9, the Johnson'989 Patent is seen

to teach of an electronic sourcing system comprising a first item and a second item being

generally equivalent [see col. 31, line 60-col. 32, line 24, wherein "The Host Cross-Reference

Table includes, for each item regularly stocked or supplied by the Distributor...a list of the

corresponding part numbers of Distributor's vendor and other distributors (which are identified

Application/Control Number: 90/009,636                                    Page 10
Art Unit: 3992

by a competitor number) for items which have been determined to be equivalent."], and wherein

a selection of one identification code from one of said first and second catalogs provides the

other identification code from the other of said catalogs [see col. 33, line 5-col. 34, line 11].


15.    Additionally, with respect to independent claim 16, the reference of Johnson'989 Patent

additionally discloses converting means for converting data relating to said item from said first

catalog to data relating to said item from said second catalog [see col. 33, lines 5-15, wherein "In

the present system, the ordered item is likely not to be found in that file because (as described

below) the local computer 40 will normally convert Customer stock numbers to Distributor

catalog numbers using the Local Cross Reference Table before the data block is sent..."].

Finally, with respect to independent claim 21, the Johnson'989 Patent discloses "said each of at

least two catalogs include a generally equivalent item from a different source, said requisition

module working in combination with said catalog searching module to determine multiple

sources for said item [see col. 31, line 60-col. 32, line 40], wherein said multiple sources is

limited by said catalog searching module providing a match according to said user-generated

criteria, said search module criteria and a determination system that located items are generally

equivalent [see col. 32, line 10-col. 34, line 11], and wherein said determination system includes

a cross reference table matching an identification code from a first located item with a second

identification code from a second located item [see col. 32, lines 10-57].


16.    Therefore, the reference of the Johnson'989 Patent is seen to raise a substantial new

question of patentability to each of independent claims 1, 9, 16, 21, and 29 of the '516 Patent.

Application/Control Number: 90/009,636                                Page 11
Art Unit: 3992

With this, the reference of Johnson'989 Patent is also seen to raise a SNQ to the corresponding

dependent claims, as each of the dependent claims carry the same limitations found in their

respective independent claim.  Thus, the reference of Johnson'989 Patent is seen to raise a SNQ

of each of claims 1-29 of the '516 Patent.


17.    The above SNQ is based solely on patents and/or printed publications already cited in an

earlier concluded examination of the patent being reexamined.  On November 2, 2002, Public

Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the

reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):


> "The existence of a substantial new question of patentability is not precluded by the fact
> that a patent or printed publication was previously cited by or to the Office or considered
> by the Office."


For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude

the existence of a substantial new question of patentability (SNQ) that is based exclusively on

that old art.  Rather, determinations on whether a SNQ exists in such an instance shall be based

upon a fact-specific inquiry done on a case-by-case basis.


18.    In the present instance, there exists a SNQ based solely on the Johnson'989 Patent, which

as noted above was cited in the specification of the '516 Patent, but was not discussed by the

examiner in any Office action, nor utilized in any discussion with respect to the claims.  With

this, the reference of the Johnson'989 Patent does not appear to have been considered by the

examiner in the original prosecution.  Further, as noted above, since the Johnson'989 Patent and

the '516 Patent have different inventive entities, the reference of the Johnson'989 Patent is being

viewed in a new light, as presented by the Third Party in the Request for Reexamination, in that

the Johnson '989 Patent is seen to teach the claimed features of the '516 Patent.  When viewing

the Johnson'989 Patent in this new light, there is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not the claims are

patentable.  Accordingly, the Johnson'989 Patent raises a substantial new question of

patentability as to claims 1-29, which question has not been specifically decided in a previous

examination of the '516 Patent.


19.     Continuing, it is also agreed that the consideration of the King'542 Patent raises a

substantial new question with respect to patented independent claim 9 of the '516 Patent.

Particularly, with respect to claim 9, the King'542 Patent is seen to teach of an electronic

sourcing system comprising a selection of one identification code from one of said first and

second catalogs provides the other identification code from the other of said catalogs [see col. 2,

lines 1-3, wherein "an object of the invention to provide an electronic catalog ordering system

that allows the simultaneous display of competitive product information."; also see col. 2, lines

25-49].

Application/Control Number: 90/009,636                              Page 13
Art Unit: 3992

20.     Therefore, the reference of the King'542 Patent is seen to raise a substantial new question

of patentability to claim 9 of the '516 Patent.  Recall that 37 CFR 1.515 states that reexamination

may be ordered if "a substantial new question of patentability affecting any claim of the patent is

raised".  With this, the reference of the King'542 Patent is also seen to raise a SNQ to the

corresponding dependent claims, as each of the dependent claims carry the same limitations

found in their respective independent claim.  Thus, the reference of King'542 Patent is seen to

raise a SNQ of claims 9-15 of the '516 Patent.


21.     Similar to that discussed above with respect to the Johnson'989 Patent, the above SNQ

with respect to the King'542 Patent is based solely on patents and/or printed publications already

cited in an earlier concluded examination of the patent being reexamined.  As indicated above,

on November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105,

part (a) of the Act revised the reexamination statute by adding the following new last sentence to

35 U.S.C. 303(a) and 312(a):


            "The existence of a substantial new question of patentability is not precluded by the fact
            that a patent or printed publication was previously cited by or to the Office or considered
            by the Office."


For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude

the existence of a substantial new question of patentability (SNQ) that is based exclusively on

that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based

upon a fact-specific inquiry done on a case-by-case basis.


22.     In the present instance, there exists a SNQ based solely on the King'542 Patent. The

reference of the King'542 Patent was cited in an Information Disclosure Statement in the original

prosecution of the '516 Patent, but was not discussed during the prosecution, nor was the

reference utilized in any rejection of the claims of the '516 Patent. With this, the reference of the

King'542 Patent is being viewed in a new light, as presented by the Third Party in the Request

for Reexamination. When viewing the King'542 Patent in this new light, there is a substantial

likelihood that a reasonable examiner would consider this teaching important in deciding

whether or not the claims are patentable. Accordingly, the King'542 Patent raises a substantial

new question of patentability as to claims 9-15, which question has not been decided in a

previous examination of the '516 Patent.


23.     Continuing, it is agreed that the consideration of the P.O. Writer raises a substantial new

question with respect to claims 1-29 of the '516 Patent. With respect to independent claim 16 of

the '516 Patent, the P.O. Writer reference is seen to teach of a converting means for converting

data relating to an item from a first catalog to data relating to an item from a second catalog [see

the P.O Writer Plus, Requisition Interface, Exhibit J5, pages 11 through 15, particularly on page

11, which states "When Requisitions come into Purchasing, they must first be split up by a buyer

or by vendor....Some requisitions will need to be split because there are multiple items that are

Case 3:09-cv-00620-REP   Document 270-8   Filed 06/18/10   Page 18 of 24 PageID# 6618

purchased from different vendors.  The P.O. Writer Plus Requisitioning Interface does all of this

automatically!...Assignment of vendors and buyers is based on the last purchase of a given

item."].  With this section, the P.O Writer reference can be interpreted as converting data relating

to an item from a first catalog to data relating to an item from a second catalog, as required in

independent claim 16.  As noted above, this feature was the only mentioned in the original

prosecution to be that of allowable subject matter for each of the claims in the original

prosecution.  Therefore, the P.O. Writer is seen to raise a substantial new question of

patentability that was not present in the prosecution of the application which became the '516

Patent.  Further, there is a substantial likelihood that a reasonable examiner would consider this

teaching important in deciding whether or not the claims are patentable.  Accordingly, the P.O.

Writer raises a substantial new question of patentability as to claims 1-29, which question has not

been decided in a previous examination of the '516 Patent.


24.     Continuing, it is agreed that the consideration of the Practical Guide to SABRE raises a

substantial new question with respect to claims 1-29 of the '516 Patent.  With respect to

independent claim 16 of the '516 Patent, the Practical Guide to SABRE reference is seen to teach

of a converting means for converting data relating to an item from a first catalog to data relating

to an item from a second catalog [see the page 64, wherein the SABRE system can display

alternative flights from different carrier's catalogs for the particular travel date.  With this

section, the Practical Guide to SABRE reference can be interpreted as converting data relating to

an item from a first catalog to data relating to an item from a second catalog, as required in claim

Application/Control Number: 90/009,636                                      Page 16
Art Unit: 3992

16.  As noted above, this feature was the only mentioned in the original prosecution to be that of

allowable subject matter for each of the claims of the '516 Patent.  Therefore, the Practical Guide

to SABRE reference is seen to raise a substantial new question of patentability that was not

present in the prosecution of the application which became the '516 Patent.  Further, there is a

substantial likelihood that a reasonable examiner would consider this teaching important in

deciding whether or not the claims are patentable.  Accordingly, the Practical Guide to SABRE

reference raises a substantial new question of patentability as to claims 1-29, which question has

not been decided in a previous examination of the '516 Patent.

25.     Continuing, it is agreed that the consideration of the J-CON Manual raises a substantial

new question with respect to claims 1-29 of the '516 Patent.  With respect to claim 16 of the '516

Patent, the J-CON Manual is seen to teach of a converting means for converting data relating to

an item from a first catalog to data relating to an item from a second catalog [see Ch. 2, Sec. 1,

Page 2, wherein "Interchange is J-CON's electronic cross-reference for parts..."; also see Ch. 3,

Sec. 1, Page 1, wherein "Interchange cross-references parts in lines you don't stock (called

competitive parts) to parts in lines you do stock (called Interchange parts)."  With these sections,

the J-CON Manual can be interpreted as converting data relating to an item from a first catalog

to data relating to an item from a second catalog, as required in claim 16.  Further, as noted

above, this feature was the only feature mentioned in the original prosecution to be that of

allowable subject matter for each of the claims.  Therefore, the J-CON Manual is seen to raise a

substantial new question of patentability that was not present in the prosecution of the

Application/Control Number: 90/009,636                                    Page 17
Art Unit: 3992

application which became the '516 Patent. Further, there is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not the

claims are patentable. Accordingly, the J-CON Manual raises a substantial new question of

patentability as to claims 1-29, which question has not been decided in a previous examination of

the '516 Patent.


        Continuing, however, it is generally not agreed that the consideration of the references of

the Gateway Manual and the TV/2 Manual, on their own, raise a substantial new question with

respect to claims 1-29 of the '516 Patent. Particularly, both of these references are not seen to

expressly disclose, in themselves, of features of "converting data relating to an item from a first

catalog to data relating to an item from a second catalog". Because of this, the references of the

Gateway Manual and the TV/2 Manual, while relevant to the patented claims of the '516 Patent,

teaching a number of features found in the limitations, the references are not seen to particularly

raise a substantial new question of patentability.

Application/Control Number: 90/009,636                                          Page 18
Art Unit: 3992

### *Waiver of Right to File Patent Owner Statement*

26.      In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement.  The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f).  The Patent Owner may consider using the following

statement in a document waiving the right to file a Patent Owner Statement:


### WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

Application/Control Number: 90/009,636                                    Page 19
Art Unit: 3992

### *Extensions of Time*

27.     Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

28.     Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).  See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed

amendments in reexamination proceedings.

Application/Control Number: 90/009,636                                    Page 20
Art Unit: 3992

### *Submissions*

29.     In order to insure full consideration of any amendments, affidavits or declarations or

other documents as evidence of patentability, such documents must be submitted in response to

the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final action,

will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33

after appeal, which will be strictly enforced.

### *Conclusion*

30.     **Claims 1-29** of U.S. Patent Number 6,055,516 are subject to reexamination.

31.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,055,516 throughout the course of this reexamination proceeding.  See MPEP §§

2207, 2282 and 2286.

Application/Control Number: 90/009,636                                    Page 21
Art Unit: 3992

32.      ALL correspondence relating to this ex parte reexamination proceeding should be

directed as follows:

**Please mail any communications to:**

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450


**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit


**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314


Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Joseph R. Pokrzywa
Primary Examiner
Central Reexamination Unit 3992
(571) 272-7410


Conferees:  /r.g.f./       ESK