# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| *e*PLUS, INC., | ) |
| | ) |
|     **Plaintiff,** | )    **Civil Action No. 3:09-CV-620 (REP)** |
| | ) |
| **v.** | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
|     **Defendant.** | ) |

## EXPERT REPORT OF BROOKS L. HILLIARD
## RELATING TO PATENT VALIDITY

## VII.   NONE OF THE CITED REFERENCES ANTICIPATES ANY CLAIM

### A.   The RIMS System/'989 Patent Does Not Anticipate Any Claim

52.   I understand that Dr. Shamos makes four contentions. (1) The RIMS system (as described in the '989 Patent and a brochure discussing the Fisher RIMS system: *Fisher RIMS: A Revolutionary Electronic Requisition and Inventory Management System*, produced at L0260595-606, the "RIMS brochure") was known or used by others before August 10, 1994 and that such knowledge or use anticipates the asserted claims of the patents-in-suit under Section 102(a) of the Patent Act. (2) The RIMS system (as described in the same manner as opinion 1) was in public use or on sale more than one year before the August 10, 1994 filing date of the original patent application for the patents-in-suit and that such use or sale anticipates the asserted claims of the patents-in-suit under Section 102(b). (3) The invention described in the '989 Patent anticipates the asserted claims of the patents-in-suit under Section 102(e). (4) The RIMS brochure is a printed publication available more than one year before the August 10, 1994 filing date and that such publication anticipates the asserted claims of the patents-in-suit under Section 102(b). Shamos Initial Report, ¶ 100 and Ex. 3. I disagree with each of Dr. Shamos's contentions. Neither the RIMS system (as described in the '989 Patent and RIMS brochure) nor the '989 Patent alone teach or suggest each and every element of any of the claims.

53.   I note that the '989 Patent was invented by two of the inventors of the patents-in-suit and was incorporated by reference into the specification of the patents-in-suit. The Patent Office Examiner was clearly aware of the RIMS system and '989 Patent. For example, the PTO Examiner noted that the RIMS system was a commercial system and reminded the applicants of the need to refer to such system with proper trademark usage. *See* Office Action mailed June 1, 1998 at 2, ¶¶ 2.1 (ePLUS 703721). Moreover, the PTO Examiner also reminded applicants that the applicants needed to update their references to the pending patent application for the RIMS

system to reflect the fact that a patent had issued. *Id.* at 2, ¶ 4 (ePLUS 703721). Thus, the Patent Office considered both the '989 Patent *and* the RIMS system, and allowed the claims of the patents-in-suit over that Patent and system. Moreover, the validity of the patent claims over the '989 Patent was reaffirmed following trial to a jury in this Court in the matter of *ePlus, Inc. v. Ariba, Inc.*, No. 04-cv-612 (E.D. Va. 2006).

54. The RIMS brochure relied upon by Dr. Shamos, is a sales brochure attached to a trademark application, presumably to establish use of the RIMS mark in commerce, and includes very little description of any system. Indeed, this brochure amounts to little more than a series of bullet points of advertising copy that can be fairly categorized as puffery. Thus, for purposes of my analysis, I have relied on the more definitive system description found in the '989 Patent.

55. I note that Dr. Shamos does not point to any independent evidence to corroborate that the RIMS system disclosed in either the '989 Patent or the RIMS brochure was actually known or used by others before August 10, 1994 or was on sale or in public use prior to August 10, 1993.

56. The '989 Patent describes a system for replenishing and managing a customer's Just-In-Time ("JIT") inventory. *See also* Transcript of Deposition of James Johnson ("Johnson Dep.") at 13:25 – 15:11 (December 9, 2009), where he describes the RIMS system and observes that Fisher Scientific "used RIMS to entice large companies to be able to house our inventory in a just-in-time fashion allowing us to manage that inventory so that we could service the customer as well as gain new accounts, large accounts for revenue purposes". The '989 Patent discusses a hierarchy of distribution centers wherein there is a Distributor site and a customer site. The system includes two computers: a host computer located at the Distributor site and a local computer used by a Customer Service Representative ("CSR") for the Distributor at the

21