# EXHIBIT 14

Docket No.: EPL-002REX1<br>
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reexamination of:<br>U.S. Patent 6,505,172 | |
| Control No.: 95/000,487 | Confirmation No.: 8473 |
| Filed: August 21, 2009 | Art Unit: 3992 |
| For:   ELECTRONIC SOURCING SYSTEM | Examiner: J. R. Pokrzywa |

### SUBSTITUTE RESPONSE TO NON-FINAL OFFICE ACTION

MS *Inter Partes* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

      *Inter Partes* reexamination of U.S. Patent 6,505,172 was ordered October 23, 2009.  Concurrently with the Order, an Office Action rejecting claims 1-5 was issued by the Office.  The Patent Owner submits the following arguments demonstrating patentability of claims 1-5 of U.S. Patent 6,505,172 in response to the Office Action dated October 23, 2009.

associated with such a decision are made by the central supplier's computer, not the customer). The Doyle Patent thus teaches away from the systems of the claimed inventions.

The customer's system in the Doyle Patent entirely lacks any "means for processing [a] requisition to generate purchase orders for [] selected matching items," as required by claim 1. The customer's requisition is routed to the central computer at the central supplier's location. The central supplier determines how to fulfill the requisition rather than the customer. The electronic sourcing system of the patent claims requires that the customer's system include the claimed functionality — not a supplier's system. The computer at the central supplier's location sorts the data from the customer's requisition into purchase orders for either internal departments within the central supplier or issues purchase orders to appropriate outside vendors. *See, e.g.,* Doyle Patent, Col. 6:35-59.

Claims 2-5 similarly are not anticipated by the Doyle Patent since each of these claims includes all of the elements of claim 1 and since the Doyle Patent fails to meet every element of claim 1.

Moreover, with respect to claim 2, the Doyle Patent does not disclose or suggest an electronic sourcing system wherein the means for searching for matching items includes means for searching the database for "segments of data relating to items associated with a vendor" or "means for generating a hit list of such vendor segments" as recited by claim 2 and, therefore, does not anticipate claim 2 for those additional reasons. As set forth above, the customer's item catalog 136 does not include information concerning vendors associated with the items since all requisitions are routed to the central supplier who makes the sourcing determination. There are no "vendor segments" that are generated as a result of the customer's search for items.

In addition, the Doyle Patent fails to disclose or suggest "means for determining whether a selected matching item is available in inventory" as recited in claim 5 and, thus, the Doyle Patent fails to anticipate claim 5 for this additional reason. The customer's system had no capability of determining a source for a desired item. Nor was there any means for determining whether a selected matching item was available in a particular vendor's inventory. All sourcing determinations were conducted by the central supplier.

For at least the above reasons, the Doyle Patent fails to anticipate claims 1-5. The Patent Owner therefore requests that the rejection of Ground # 1 be withdrawn.

B.   <u>Ground # 2 – Claims 1 and 3-5 Are Patentable Over the '989 Patent</u>

Claims 1 and 3-5 stand rejected under 35 U.S.C. § 102(e) as being anticipated by U.S. Patent 5,712,989 (the "'989 Patent").

1.   The '989 Patent Is Unavailable As Prior Art Under 35 U.S.C. § 102(e)

Initially, as the Examiner has acknowledged, the inventors of the '989 Patent are also inventors of the patent under reexamination. James M. Johnson and Douglas A. Momyer are the inventors of the invention of

the '989 Patent. James M. Johnson and Douglas A. Momyer together with Robert P. Kinross and Francis J. Melly are the inventors of the '172 patent. In fact, the disclosure of the '989 Patent is incorporated by reference in the '172 patent. '172 Patent, col. 1, ll. 18-23. Where a prior disclosure is attributed to the patentee, the reference is no longer applicable as prior art. M.P.E.P. § 716.10. As the disclosure of the '989 Patent is attributed to inventors of the '172 patent, the invention disclosed by the '989 Patent is not an invention by another as required by 35 U.S.C. § 102(e).

Moreover, a rejection under 35 U.S.C. § 102(e) may be overcome by an unequivocal declaration that the patentee conceived that which is disclosed in the prior patent and suggests the invention claimed in the later patent. *See* M.P.E.P. § 716.10 (citing *In re DeBaum*, 687 F.2d 459, 463, 214 U.S.P.Q. 933, 936 (C.C.P.A. 1982)). The question of whether a prior patent disclosure may be attributed to the inventors of a later filed patent typically arises in circumstances where subject matter is disclosed, but not claimed, in a patent application filed jointly by inventor "S" and another and subsequently claimed in a patent filed by inventor "S." In this circumstance, a rejection under 35 U.S.C. § 102(e) may be overcome by an unequivocal declaration by inventor "S" under 37 C.F.R. § 1.132 that inventor "S" conceived or invented the subject matter disclosed in the earlier patent. This is required under circumstances where it is not clear whether the subject matter claimed in the latter patent application was invented by "S" or the other joint inventor of the earlier patent. However, in the present circumstance, it is clear from the '989 Patent itself that the subject matter disclosed therein was not made by another, but rather was made James M. Johnson and Douglas A. Momyer, who are inventors of the '172 patent. For this reason, the '989 Patent is not available for use as prior art against the instant patent. *See De Graffenried v. U.S..*, 16 U.S.P.Q. 2d 1321 (Cl. Ct. 1990).

Notwithstanding that it is clear that there was no inventor in addition to inventors of the '172 patent who contributed to the invention of the '989 Patent, the Examiner asserts: "This rejection under 35 U.S.C. 102(e) might be overcome either by a showing under 37 CFR 1.132 that any invention disclosed but not claimed in the reference was derived from the inventor of this application." In compliance with the Examiner's suggestion, submitted with this response are the Declarations of inventors Douglas A. Momyer ("Momyer Decl." attached as Exhibit 2) and James M. Johnson ("Johnson Decl." attached as Exhibit 3). Mr. Momyer and Mr. Johnson unequivocally state that they conceived and invented the subject matter disclosed in the '989 Patent. Momyer Decl. ¶ 5, Johnson Decl. ¶5. Accordingly, the subject matter of the '989 Patent relied upon in this rejection was invented by the inventors of the '172 patent. The '989 Patent is, thus, not available as prior art against the '172 patent under 35 U.S.C. § 102(e).

Moreover, the Patent Owner sets forth below elements of the claimed inventions that are not taught or suggested by the '989 Patent. The deficiencies of the '989 Patent cannot be overcome, however, in a subsequent rejection under 35 U.S.C. § 103. At the time the invention of the '172 patent was made, the invention of the '172 patent and the invention of the '989 Patent both were either owned by or subject to an

| Control No. 95/000,487 | - 21 - | Docket No.: EPL-002REX1 |
|---|---|---|

searches, (d) determining applicable pricing, and (e) determining whether the goods are available in the inventory of the prospective supplier, as described in more detail in the following paragraphs.

    For example, in the P.O. Writer Plus system, the system user did have the capability to select to purchase an item from any vendor, but this did not include the capability to ensure that the selected vendor was associated with the selected item in the item database. *See* P.O. Writer Plus Guided Tour Manual at 22 ("You can now buy this item from Best Buy, Bayless or any other vendor you would like to select.").

    Importantly, with respect to claim 1, the P.O. Writer Plus Guided Tour Manual does not disclose a database containing data relating to items "associated with at least two vendors." Vendor data is not associated with item records. Although items may be associated with a Catalog ID and that Catalog ID may be by vendor, it is not necessary to set up a Catalog ID by vendor. *See* P.O. Writer Plus Guided Tour Manual at 7 ("All of these fields are optional" including the Catalog ID field, which is notably shown as unfilled in the included illustration).

    Further, the P.O. Writer Plus Guided Tour Manual fails to disclose an intermediate step of creating an order list between a database search and building a requisition as required by claim 1. Rather, the P.O. Writer Plus system can start with building a requisition or building a purchase order (without even building a requisition). If the user starts with a requisition, from the search results generated in that process, the system builds a requisition. Once the requisition is completed, a user backs out to the Main Menu and invokes the Requisition Interface module to convert the requisition to a purchase order and then backs out yet again to the Main Menu to invoke the Create P.O. module to actually create a purchase order. *See* P.O. Writer Plus Guided Tour Manual at 140, 142, 149-150. At no time is an order list generated.

    The text cited by the Examiner (page 47) does not relate to a process of generating an order list to be used for building a requisition, but rather relates to building a Purchase Order without the intermediate step of building a requisition. ("You can move these items to the P.O. screen - Press F7").

    Nor does the P.O. Writer Plus Guided Tour Manual describe a system wherein a requisition is built "that uses data obtained from said database relating to selected matching items on said order list" as recited in claim 1. As set forth above, the P.O. Writer Plus system does not include any means for generating an order list.

    Similarly, since there are no means for generating an order list that includes selected matching items, and thus the P.O. Writer Plus system did not build a requisition using data relating to selected matching items on an order list, it follows that the P.O. Writer Plus system did not include any means for processing the requisition to generate purchase orders for the selected matching items on the order list.

    In considering this claim element, the Examiner relies on pp. 149-153 of the P.O. Writer Plus Guided Tour Manual describing how to convert requisitions into purchase orders. Although the P.O. Writer Plus Guided Tour Manual does describe a process for converting requisitions into purchase orders, a careful