# EXHIBIT 1

VIDEOTAPED DEPOSITION OF CHARLES GOUNARIS
CONDUCTED ON TUESDAY, MAY 18, 2010

1 (Pages 1 to 4)

---

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2    FOR THE EASTERN DISTRICT OF VIRGINIA
 3           Richmond Division
 4  ePLUS INC.           :
 5       Plaintiff      :
 6  v.              : Civil Action No.
 7  LAWSON SOFTWARE, INC.  : 3:09-CV-620 (JRS)
 8       Defendant    :
 9  -----------
10    Videotaped Deposition of CHARLES GOUNARIS
11           Washington, DC
12         Tuesday, May 18, 2010
13             10:34 a.m.
14  Job No.: 1-178479
15  Pages: 1 - 141
16  Reported By: Dawn M. Hart, RPR/RMR
17  Videographer: Cali Day
```

**Page 2**

```
 2   Videotaped deposition of Charles Gounaris, held
 3  at the law offices of:
 5    GOODWIN PROCTER LLP
 6    901 New York Avenue, Northwest
 7    Washington, DC  20001
 8    (202) 346-4000
11   Pursuant to Notice, before Dawn M. Hart,
12  RPR/RMR and Calid Day, Notary Public in and for the
13  District of Columbia.
```

**Page 3**

```
 1           A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF:
 3      SCOTT L. ROBERTSON, ESQUIRE
 4      GOODWIN PROCTER LLP
 5      901 New York Avenue, Northwest
 6      Washington, DC  20001
 7      (202) 346-4000
 9   ON BEHALF OF THE DEFENDANT:
10      WILLIAM D. SCHULTZ, ESQUIRE
11      MERCHANT & GOULD
12      3200 IDS Center
13      80 South Eighth Street
14      Minneapolis, Minnesota  55402-2215
15      (612) 332-5300
17   ALSO PRESENT:  Robert Kinross
```

**Page 4**

```
            C O N T E N T S
 EXAMINATION OF CHARLES GOUNARIS            PAGE
    By Mr. Robertson                7
    By Mr. Schultz
    By Mr. Robertson
            E X H I B I T S
      (Exhibits were attached.)
 GOUNARIS DEPOSITION EXHIBITS            PAGE
 Exhibit 1   Notice/Subpoena               24
 Exhibit 2   G 0009362-63 Retainer Agreement
             4/7/10                        54
 Exhibit 3   Schematic                     56
 Exhibit 4   G 0009541 Non-disclosure
             Agreement                     59
 Exhibit 5   ePlus 0228234-237 Agreement re
             Exchange of Confidential
             Information                   71
 Exhibit 6   Statement of Work 2/8/94      74
 Exhibit 7   Statement of Work 3/16/94
             EPFS 000297 - 318             76
 Exhibit 8   Statement of Work 3/16/94
             revised 3/16/94               89
```

13

1  A  Sounds right.
2  Q  Have you submitted any other recent invoices
3  for your time?
4  A  No.
5  Q  Okay.  Do you intend on submitting an
6  invoice for your time in preparation for today's
7  deposition and for today's testimony?
8  A  Not for the testimony.  As I understand,
9  that's not appropriate.
10  Q  I understand that applies only to your trial
11  testimony, not to your deposition testimony.
12  A  I didn't understand it that way.
13  Q  Okay.  We'll go through that agreement,
14  maybe I've educated you.
15     How much money did you make from the SAP
16  trial?
17  A  Well, I would have to estimate.  From my
18  recollection there was a series of invoices, so --
19  Q  You were there at trial for a few days.
20  A  Yeah, for a day before, and that, and then
21  we met one or two times.  I would imagine it was under
22  $20,000, but it was probably 15 to 20, in that range I

14

1  would estimate.
2  Q  You indicated that you first spoke to
3  counsel for Lawson, current counsel for Lawson,
4  Merchant & Gould, sometime February, March of this
5  year; do you recall that?
6  A  Actually I thought I said maybe more like
7  March or April.
8  Q  Fine.  Did you provide documents to counsel
9  at that time?
10  A  Yes -- well, subsequent to that
11  conversation.
12  Q  Okay.  And you've continued to provide
13  documents to counsel; isn't that right?
14  A  I provided what I had.
15  Q  Okay.  Well, just this past Friday we got
16  14,000 more pages of documents that were represented
17  that came from you.  Is that --
18  A  Yeah, I sent a lot of stuff up a while ago,
19  so if you just got it, that's right.
20  Q  Do you know when you first started providing
21  documents to counsel?
22  A  I sent that all in one shipment.

15

1  Q  One time?
2  A  One time.  I didn't send anything other than
3  last night I brought something up, but that was it.
4  Q  How did you -- I'm sorry, last night you
5  identified something add --
6  A  An E-mail form that was an IBM customer
7  agreement.
8  Q  Is it an IBM customer agreement that was
9  with Fisher Scientific?
10  A  No, it was just an example of something that
11  I brought to Will's attention.
12  Q  Now these documents you've been providing to
13  counsel in this one-time production --
14  A  Right.
15  Q  -- they're IBM documents, right?
16  A  They were my documents that I had at home.
17  I mean, they -- I don't know how to -- I'm not sure
18  exactly what you're asking me.
19  Q  Well, they're in your possession but they're
20  IBM documents, right?
21  A  They were the documents that were from the
22  work -- my work history that I still had in file.

16

1  Q  But they're IBM documents, right, sir?
2  A  Probably.  Most probably are.
3  Q  This customer, IBM customer agreement that
4  you just produced to counsel last night, that's an IBM
5  document, right?
6  A  Right.  Pulled it off the internet.
7  Q  When did you leave IBM?
8  A  Right after the year 2000.  Right after the
9  year 2000.  So probably early 2001, I think is what it
10  was.
11  Q  Why did you leave?
12  A  We were -- well, mostly it was to pursue
13  better opportunities.
14  Q  Were you terminated, or did you leave on
15  your own accord?
16  A  We were restructuring and I had been through
17  about a half a dozen restructuring efforts, so I had
18  the opportunity to stay and I couldn't find -- I
19  couldn't find a role that worked for me personally, so
20  I guess it was I had to leave because I couldn't find
21  something that worked for me.
22  Q  So I guess I'm a little confused.  Were you

VIDEOTAPED DEPOSITION OF CHARLES GOUNARIS
CONDUCTED ON TUESDAY, MAY 18, 2010

5 (Pages 17 to 20)

17

terminated, or did you leave on your own accord?
**A   Well, as a result of the restructuring I would have had to relocate.  And I was given a time period to find another job because the role I had was being phased out, and I couldn't find something that worked for me, so I left.  So I'd say it was a combination of maybe both.  The role I had was eliminated, I had time to find another option and I couldn't find something that worked, so I left.**
Q   At the time of your leaving, whether it was of your own accord or by the fact that your position had been changed --
**A   Yeah.**
Q   -- you had an exit interview as an employee; isn't that right?
**A   Yes.**
Q   And when you entered into the employment with IBM, what year was that?
**A   That was around 19 -- 1990.  Right after New Year's of 1990.**
Q   So you were there about 10 years, correct?
**A   Right, a little over 10 years.**

18

Q   And at the time you entered the employment, you signed an employee agreement; isn't that right?  IBM requires all their employees to sign those agreements?
**A   If I was required to sign one, I probably did.**
Q   And one of the terms of the agreement is that when you're terminated or you leave the employment of IBM, you won't take any documents with you.  It's property of IBM, correct?
    MR. SCHULTZ:  Counsel, do you have a copy of the employment agreement?
    MR. ROBERTSON:  Just asking the witness.
**A   I don't recall what was on the --**
    MR. SCHULTZ:  No, answer my question, please.  Do you have a copy of the agreement?
    MR. ROBERTSON:  I don't have a copy.  His agreement wasn't produced to us.
    MR. SCHULTZ:  Okay.
    MR. ROBERTSON:  Just asking him.
BY MR. ROBERTSON:
Q   Do you know whether or not as an employee of

19

IBM you were permitted to take IBM's documents when you are terminated from their employment?
**A   I had no issue with -- IBM was aware of the fact that I boxed up what I had in my files and took it home, and there wasn't a problem with it when I left.**
Q   Did you have it electronically, or did you have it in hard copies, or both?
**A   I had a lot of hard copy, which was just pulled out of the files.  I'm not sure what I had electronically to coincide with it.**
Q   Well, did you produce any electronic documents to counsel for Lawson?
**A   I think I sent all hard copy.**
Q   Who did you tell at IBM that you were taking their documents when you left the employment in 2000?
**A   I'm not sure that I told -- I'm not sure that I talked about -- what I had is a period of time, because I knew when I was leaving, that I boxed stuff up and shipped it home.  And I mean I just think it was the same process that everybody else was going through, so it really wasn't -- there was no formal --**

20

**no formality around it.**
Q   So my question is did you tell anybody that you were taking IBM documents when you left the employment in 2000?
**A   My recollection would be that I said that I was packing up my stuff that I had my in my files and taking it home, and I don't think there was any issue with that came --**
Q   My question is did you tell anybody at IBM, a name you can give me, that you were taking documents when you left in 2000?
**A   I can't give you a name.**
Q   Okay.  Would you be troubled if I called up IBM and told them that you took documents in 2000 when you left the employment?
**A   No.**
Q   That doesn't -- wouldn't concern you?
**A   No, because I didn't think I was doing anything inappropriate, so -- I am -- certainly they knew I had boxed up stuff and left.  It was things I worked on.  It wasn't uncommon I don't think.**
Q   Well, you're not aware that IBM has a policy

VIDEOTAPED DEPOSITION OF CHARLES GOUNARIS
CONDUCTED ON TUESDAY, MAY 18, 2010

6 (Pages 21 to 24)

---

Page 21

1  that any employee who leaves their employ can't take
2  any IBM documents with them?
3     A   I'm not aware that there was a policy that
4  said that I couldn't take any of the documents that I
5  took home with me or I wouldn't have done it.
6     Q   What was the volume of documents that you
7  presented to counsel back in April of this year?
8     A   Well, everything I had I fit in one box and
9  I mailed it, overnighted it, so --
10    Q   One box?
11    A   One box.  One box that size, (indicating).
12    Q   Well, it surprises me because we've received
13  a considerable amount of documents that are being
14  represented as your documents that exceed the volume
15  of one box.
16    A   Well, that's what I shipped them.
17        MR. SCHULTZ:  Counsel, as we talked about
18  with Michael Strap, there were eight zip drives that
19  were included in the box.
20        THE WITNESS:  Oh, I didn't count that,
21  right.
22

Page 22

1  BY MR. ROBERTSON:
2     Q   So these zip drives were electronic
3  documents, right?
4     A   Yeah, they were -- that's right.
5     Q   And they were -- so it wasn't all hard copy
6  documents that you produced?
7     A   Yeah, I forgot about the zip drives.  That's
8  right.
9     Q   And the eight zip drives were --
10    A   A mixture of different things that --
11    Q   I have to finish my question, Mr. Gounaris.
12    A   I apologize.  Let's go on.  Sorry.
13    Q   The eight zip drives, were they IBM
14  documents?
15    A   They were a mixture of work documents that I
16  had and files for personal, as well as work-related
17  kind of things that I had.
18    Q   So some of them were IBM documents, correct?
19    A   Could be.  I didn't really examine them.
20    Q   Did you take these zip drives when you left
21  the employment of IBM in 2000?
22    A   I had a zip drive and I backed things up on

Page 23

1  it, and yes, when I left they were just part of the
2  files that I packed up and left with.
3     Q   Was that on your home computer, your
4  personal computer?  Let me rephrase that.  Was that on
5  your personal computer?
6     A   I'm not sure I understand what you're
7  asking, was it on my personal computer.
8     Q   You saved these zip drives electronically, I
9  assume, on a computer, correct?
10    A   Right.
11    Q   Okay.  Was it your work computer, or your
12  personal computer?
13    A   Probably saved it whenever -- with my work
14  computer most likely.
15    Q   And how did you get it on -- well, let me --
16  did you ever transfer it to your personal computer?
17    A   No.  I just have it on my -- I have these --
18  I just happened to have these zip drives, and I don't
19  have a -- that's all I have, is I have the zip drives
20  and I put them in there whenever I was asked for what
21  do I have, what information do I have.
22

Page 24

1        (Exhibit 1 was marked for identification and
2  was attached to the transcript.)
3  BY MR. ROBERTSON:
4     Q   Let me just ask you to take a minute and
5  look at what I've marked as Exhibit 1, which was a
6  Deposition Notice and a subpoena.  Have you seen that
7  before?
8     A   Yes.
9     Q   And you authorized counsel to accept service
10  of the subpoena on your behalf, correct?
11    A   Yes.
12    Q   Okay.  And the subpoena required you to
13  locate and identify responsive documents?
14    A   Right.
15    Q   And did you go and do that?
16    A   I sent everything I had in a box to Will's
17  attention, I think prior to just -- maybe even
18  before -- I don't recall exactly the date, but it was
19  around the same time as this come out.
20    Q   Okay.  So subsequent to the production you
21  made to Mr. Schultz, did you make any effort to go
22  back and determine whether you had any other documents