IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

PLAINTIFF *e*PLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANT LAWSON
SOFTWARE, INC.'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OF
DEFENDANT'S PRIOR KNOWLEDGE OF *e*PLUS'S PATENTS-IN-SUIT

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice)*
Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

## I.      INTRODUCTION

Plaintiff *e*Plus, Inc. ("*e*Plus"), respectfully submits its Memorandum in Opposition to Defendant Lawson Software, Inc. ("Lawson")'s Motion in Limine No. 6 asking the court to exclude evidence of defendant's prior knowledge of *e*Plus's patents-in-suit.  All of the evidence Lawson seeks to exclude comprises facts from which a jury could determine that Lawson had prior knowledge of the patents-in-suit.  This is a disputed issue in this case.  The genesis of Lawson's argument is that – as far as Lawson's prior knowledge is concerned – this Court should look no further than the self-serving denials of Lawson's deponents.  The publications at issue principally relate to litigation between *e*Plus, SAP and Ariba and collectively disclose (1) that the jury found Ariba willfully infringed the *e*Plus patents, (2) the specific numbers of the patents-in-suit, (3) a description of the specific technology claimed in the patents, (4) that *e*Plus competes with SAP and Ariba, (5) *e*Plus's stated goal that the Ariba settlement and license agreement "will create better marketplace awareness of [*e*Plus's] software" and (6) that software vendors should be cognizant of the risks of infringing the patents-in-suit in view of the *e*Plus/ Ariba matter.[1] Other evidence in this case establishes that Lawson executives rely upon these publications.

By suggesting that "a finding of willful infringement requires *actual* notice of the patents-in-suit," Def's Br. at 4 (emphasis in original), Lawson disregards the Federal Circuit's prevailing "objective recklessness" standard for willful infringement and argues against its own expert witness.  Lawson similarly ignores clear Federal Circuit precedent holding that a patentee

---

[1] While Lawson moves here to exclude circumstantial evidence of Lawson's knowledge of the asserted patents pre-suit and also moves separately to exclude all evidence of Lawson's inducement based on pre-suit knowledge, it argues that it is entitled to summary judgment on *e*Plus's inducement claims because there is no disputed issue of material fact as to whether Lawson had pre-suit knowledge.  The argument in Lawson's motions *in limine* that disputed evidence should be excluded is inconsistent with Lawson's summary judgment argument that there is no disputed evidence.

1

may establish an infringer's requisite intent to induce infringement through circumstantial evidence. The publications discussing litigation between *e*Plus and Ariba – and *e*Plus and SAP – are thus relevant to (1) whether Lawson acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent" and notwithstanding that the objective risk was "so obvious that it should have been known" and (2) circumstantial evidence of Lawson's intent to induce its customers to infringe the patents-in-suit. The evidence is highly probative and there is no conceivable unfair prejudice to Lawson. Consequently, Lawson's motion should be denied.

## II.   BACKGROUND

The PTO issued the patents-in-suit between February 8, 2000 and January 7, 2003. *e*Plus distributed a press release shortly after the PTO issued the '172 patent, noting that it "is the third patent in ePlus's repository of intellectual property and may provide ePlus with protection to systems developed after Aug. 10, 1994, the filing date of the first patent." Ex. 30 (*e*Plus Awarded Patent on Electronic Cross-Catalog Searching (May 29, 2003)) at ePLUS 9339-40 (listing patent numbers for all three patents-in-suit).[2]

*e*Plus competes against Lawson in the procurement, catalog and content management spaces. Ex. 16 (Deposition of Kenneth G. Farber ("Farber Dep.") (Dec. 16-17, 2009)) at 16:8-24; 38:8-39:9 (discussing at least eight specific situations before 2009 where *e*Plus and Lawson bid for the same customer). Indeed, Lawson's Rule 30(b)(6) designee admitted that Lawson first became aware of *e*Plus's products in 2003, understood that *e*Plus competed for business in the procurement space and read about *e*Plus in trade publications such as the 2007 Forrester

---

[2] Unless otherwise stated, the cited exhibits are included within the sealed appendices submitted by *e*Plus in connection with *e*Plus's oppositions to Lawson's motions *in limine.*

eProcurement Wave report.  Ex. 17 (Deposition of Keith Lohkamp ("Lohkamp Dep.") (Oct. 20, 2009)) at 72:4-75:8; 92:22-99:3.

*e*Plus has licensed the patents-in-suit to Ariba, Inc. ("Ariba"), Perfect Commerce, LLC ("Perfect Commerce"), SciQuest, Inc. ("SciQuest"), Verian Technologies, Inc. ("Verian"), SAP AG and SAP America, Inc. ("SAP"), and ProcureNet Inc. ("ProcureNet").  Trade publications such as Gartner, InfoWorld, Cygnus Supply & Demand Chain Executive and ComputerWorld as well as mainstream publications such as The New York Times, SmartMoney.com and eWeek broadly publicized *e*Plus's litigation and settlement with Ariba and SAP.  Ex. 16 (Farber Dep.) at 100:15-104:17; 401:1-403:1 ("anybody that I thought in my opinion didn't see [the coverage] was probably living in a cave or under a rock"); Ex. 31 (Cygnus Supply & Demand Chain Executive Article (July 8, 2008)) at ePLUS 940872-3; Ex. 32 (SmartMoney.com article (Feb. 14, 2005)) at ePLUS 524465; *see also* Lawson's Motion *In Limine* No. 6 (Docket No. 267).  These publications are important for a number of reasons.

*First*, nearly all of these publications reported that the jury found that Ariba had willfully infringed the patents-in-suit.  *Id*.

*Second,* both InfoWorld and ComputerWorld identified the specific patents-in-suit in the SAP litigation and further observed that *e*Plus's suit against SAP "is at least the second from ePlus this year."  Lawson Exs. 5-6 (InfoWorld Article (Sept. 8, 2005); (ComputerWorld Article(Sept. 8, 2005)) at ePLUS 940876, ePLUS 940878.[3]

*Third*, analysts publicized the technology described in the patents-in-suit.  Gartner Research described the *e*Plus patents to its software vendor audience as "involving electronic procurement systems that search, check inventories and perform other functions."  Lawson Ex. 1

---

[3] Citations to Lawson Exhibits refer to exhibits attached to Lawson's Motion *In Limine* No. 6.

(Gartner Research (Feb. 17, 2005)) at ePLUS 940870.  eWeek characterized the breadth of the

asserted patents as "seemingly ubiquitous throughout any electronic procurement software" and

further noted that the technology embodied in the *e*Plus patents "lets users perform a number of

essential e-procurement functions including: electronic searches, selections and comparisons;

viewing items in multiple supplier catalogs; finding equivalent items and replacements;

generating purchase orders from multiple vendors; and electronically checking inventory."

Lawson Ex. 2 (eWeek Article (Feb. 14, 2005)) at ePLUS 940874; *see also* Ex. 31 (Cygnus

Supply & Demand Chain Executive Article (July 8, 2008)) at ePLUS 940872 (describing same

functionality of patents-in-suit).

   *Fourth*, The New York Times juxtaposed *e*Plus and Ariba, noting that "[t]he two

companies compete in the market for software that helps corporate customers find the best

suppliers and cheapest raw materials, and Ariba is seen as the leading player."  Lawson Ex. 3

(New York Times Article (Feb. 15, 2005)) at ePLUS 940877.  Similarly, InfoWorld and

ComputerWorld observed that *e*Plus "specializes in enterprise cost management software."

Lawson Exs. 5-6 (InfoWorld Article (Sept. 8, 2005); (ComputerWorld Article (Sept. 8, 2005)) at

ePLUS 940876, ePLUS 940878.  Lawson similarly competes with Ariba in the same

procurement software space.  Ex. 17 (Lohkamp Dep.) at 81:3-11.

   *Fifth*, *e*Plus publicly discussed that one goal of its litigation with Ariba was "to create

better marketplace awareness of [its] software and enterprise cost management solutions."  Ex.

31 (Cygnus Supply & Demand Chain Executive Article (July 8, 2008)) at ePLUS 940872.

   *Sixth*, in view of *e*Plus's agreement with Ariba, Gartner specifically cautioned its readers

(software vendors) to "undertake an extensive review of your software's functions against

4

patents known to be in dispute."  Lawson Ex. 1 (Gartner Research (Feb. 17, 2005)) at ePLUS
940869-71.

The evidence in this case has clearly established that Lawson subscribes to industry
publications from numerous sources, including Gartner, Forrester, Aberdeen, VDC and AMR,
and Gartner is one of the sources that Lawson relies upon the most.  Ex. 17 (Lohkamp Dep.) at
16:19-20:16; Ex. 33 (Deposition of Henrik Billgren ("Billgren Dep.") (Oct. 21, 2009)) at 49:4-8.
Mr. Lohkamp (Lawson's 30(b)(6) designee) further testified that he read about *e*Plus in
Forrester's 2007 eProcurement Wave Report.  Ex. 17 (Lohkamp Dep.) at 16:19-20:16.  These
publications are widely disseminated to the top level executives within Lawson's organization.
Ex. 34 (Deposition of Dale Christopherson ("Christopherson Dep.") (Oct. 19, 2009)) at 68:21-
71:3.  Further, Lawson never conducted a patent infringement clearance study prior to launching
the accused products and Lawson has made no modifications to its accused products to avoid
infringing the asserted patents even after being sued by *e*Plus.  *Id*. at 86:21-87:14; 105:10-
105:13.  The only opinion of counsel obtained by Lawson (the contents of which Lawson has
refused to disclose to *e*Plus) was requested shortly after *e*Plus filed suit.  Ex. 35 (Lipscomb Dep.)
at 47:22-48:11.

## III.    ARGUMENT

Because it seeks to exclude from trial evidence concerning Lawson's willful infringement
of the asserted patents and inducement to infringe, Lawson's motion *in limine* is a *de facto*
motion for summary judgment.  "A motion in limine is designed to narrow evidentiary issues for
trial, not resolve factual disputes or weigh evidence."  *Sigma Tool & Mach. v. Nagayama
Electronic Ind. Co., Ltd.*, 2002 WL 34354482, at *2 (D.D.C. Dec. 18, 2002) (citations omitted)
(denying motion in limine to exclude pre-suit damages, reasoning that "[accused infringer] is
attempting through a motion *in limine* to resolve the fact disputes raised by [patentee's]

5

evidence"); *see also Imagexpo, L.L.C. v. Microsoft Corp.*, 299 F.Supp.2d 550, 551 (E.D. Va. 2003) (noting that Defendant's motion is "improperly styled as a motion in limine because it urges the Court to exclude a theory of damages and not a specific category of evidence").  In any event, Lawson's motion *in limine* should be denied because there are disputed issues of fact. *Sigma*, 2002 WL 34354482 at *2 ("Factual disputes cannot be resolved 'without the appropriate procedures provided by Fed.R.Civ.P. 56.' . . . Because genuine issues of material fact exist regarding when and how [patentee] complied with the notice requirements of § 287, [accused infringer's] motion in limine regarding damages will be denied." (citations omitted)).  In particular, there is – at best for Lawson – a dispute about whether Lawson (1) had actual knowledge of the patents-in-suit and (2) possessed the requisite intent to induce its customers to infringe.  Accordingly, Lawson's motion *in limine* should be denied.

Moreover, the motion should be denied on the merits.  Lawson misstates the law as to both willful infringement and the standards for establishing knowledge and intent to induce infringement.   Because, the publications at issue are evidence that Lawson was aware of but acted in the face of the patents-in-suit with "objective recklessness" and, at a minimum, should have known about the patents, and that Lawson intended to induce its customers to infringe the *e*Plus patents, this Court should deny Lawson's motion.

A. **Publications Related To *e*Plus's Patent-Enforcement Efforts, Litigation And Settlement Agreements Are Relevant To Whether Lawson Acted With "Objective Recklessness"**

A jury's finding of willful infringement can be premised on "objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) ("proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness").  An infringer is "objectively reckless" when it "acts despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371 (citation omitted).  A patentee

6

must further show that "this objectively-defined risk *(determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer*." *Id.* (emphasis added).  Nothing in *Seagate* suggests that a patentee must establish that a willful infringer had actual notice of the patent-in-suit using direct evidence. Indeed, Lawson's "patent law" expert – Ernest Lipscomb –agreed that an accused infringer may be liable for willful patent infringement if it acted "objectively reckless" and knew or should have known that it was infringing a patent, and he further suggested that the factfinder should consider the "totality of the circumstances."  Ex. 35 (Lipscomb. Dep.) at 32:1-33:11; Ex. 24 (Lipscomb Rpt.) at 7 (post-*Seagate* willfulness analysis "includes both an objective and a subjective component").

Moreover, courts post-*Seagate* hold that a patentee need not present evidence of actual knowledge of the patent to prove willfulness.  *See Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 689 F.Supp.2d 929, 944 (S.D. Ohio 2010) (rejecting pre-*Seagate* "actual knowledge" requirement, holding that in order to prove willful infringement the patentee could either present evidence that accused infringer "knew of the patents-in-suit or should have known about them"); *KBA-Giori, North America, Inc. v. Muhlbauer, Inc.*, 2009 WL 5872893, at *1 (E.D. Va. Nov. 2, 2009) (denying motion in limine as to willfulness because of no direct evidence of accused infringer's knowledge of the patent-at-issue, reasoning that the jury "may draw the inference that Defendants had knowledge of the existence of the [patent-in-suit] on the basis of the evidence"); *Telecommunication Sys., Inc. v. Mobile 365*, 2008 WL 7555484 (E.D. Va. Sept. 25, 2008) (denying accused infringer's motion for JMOL on willfulness and actual notice of the patent-at-issue since jury could infer from circumstantial evidence whether accused infringer had actual notice of the patent); *QPSX Developments 5 Pty Ltd. v. Nortel Networks, Inc.*, 2008 WL 728201,

7

at *2 (E.D. Tex. Mar. 18, 2008) (denying infringer's motion for JMOL, rejecting argument that "insufficient evidence exists of [accused infringer's] actual knowledge of the [patent-at-issue]").

The publications which Lawson seeks to exclude from trial are highly probative of whether Lawson had actual knowledge of the patents-in-suit or acted despite an objectively high probability that it infringed the patents-in-suit. Lawson employees, including senior executives, routinely review these publications, including Gartner reports. Ex. 34 (Christopherson Dep.) at 68:21-71:3. Further, Lawson never conducted a patent infringement clearance study prior to launching the accused products and Lawson has made no modifications to its accused products to avoid infringing the asserted patents even after being sued by *e*Plus. *Id*. at 86:21-87:14; 105:10-105:13. Each of these facts is relevant to whether Lawson acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. *Accord* Ex. 35 (Lipscomb. Dep.) at 32:1-33:11 (the factfinder should consider the "totality of the circumstances" to evaluate whether an accused infringer willfully infringed).

**B.     Publications Related To *e*Plus's Patent-Enforcement Efforts, Litigation And Settlement Agreements As Well As Constructive Notice Are Circumstantial Evidence Of Lawson's Intent To Induce Infringement**

In contrast to the bright line rule suggested by Lawson, courts are instructed to consider the totality of the evidence to evaluate whether an accused infringer induced its customers to infringe. As an initial matter, "*a claim for inducement is viable even where the patentee has not produced direct evidence that the accused infringer actually knew of the patent-in-suit*." *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1376 (Fed. Cir. 2010) (emphasis added) (rejecting accused infringer's JMOL argument that it could not be liable for inducement since it "had no actual knowledge of the patent during part of the time it was selling [infringing products]"). Indeed, the *Montgomery Ward* court held that, while a patentee must establish that an infringer knew of a patent to prevail at trial, it need not point to specific evidence of actual

8

knowledge.  Specifically, a patentee can establish an accused infringer's knowledge of the patents-in-suit by demonstrating "deliberate indifference" (i.e. that the accused infringer "disregard[ed] a known risk that an element of the offense exists").  *Id.*  This assessment "require[s] a subjective determination that the defendant knew of and disregarded the overt risk that an element of the offense existed."  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 840 (1994)).  Indeed, in *Montgomery Ward*, the defendant's witnesses – like Lawson's witnesses – claimed not to have any pre-suit knowledge of the asserted patents.  *Id.*  Most significantly, the panel suggested that constructive knowledge (*i.e.* consistent patent marking) alone could establish an accused infringer's knowledge of a patent, reasoning that:

> This opinion does not purport to establish the outer limits of the type of knowledge needed for inducement.  ***For instance, a patentee may perhaps only need to show, as Insituform suggests, constructive knowledge with persuasive evidence of disregard for clear patent markings, similar to the constructive notice requirement in § 287(a).***

*Id*. at 1378 (emphasis added) (citing *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998)).

Indeed, ***the intent required to establish inducement to infringe can be proven through circumstantial evidence***.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009) (affirming district court denial of JMOL as to inducement to infringe, rejecting accused infringer's argument that patentee "can't prove inducement because the software products are merely capable of infringing and the evidence didn't show the requisite intent to induce") (citing *Fuji Photo Film Co. v. Jazz Photo Corp.,* 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required;

9

rather, circumstantial evidence may suffice.").  Further, the Federal Circuit recently clarified that

intent to induce infringement can be developed through numerous circumstantial sources:

> ***Qualcomm seems to argue that the jury's verdict cannot stand
> because Broadcom failed to produce direct evidence of intent to
> induce infringement.  That is not the law.  "A patentee may prove
> direct infringement or inducement of infringement by either
> direct or circumstantial evidence***.  There is no requirement that
> direct evidence be introduced, nor is a jury's preference for
> circumstantial evidence over direct evidence unreasonable *per se*."
> *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219
> (Fed. Cir. 2006) (internal citation omitted).  Moreover, "[t]he
> drawing of inferences, particularly in respect of an intent-
> implicating question . . . is peculiarly within the province of the
> fact finder that observed the witnesses."  *Rolls-Royce Ltd. v. GTE
> Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986); *see also Fuji
> Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed.
> Cir. 2005) (declining to disturb jury's verdict because intent to
> induce infringement "is a factual determination particularly within
> the province of the trier of fact").

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (emphasis added)

(reasoning that the totality of the circumstances including a "failure to investigate, a failure to

explore design around approaches, a failure to take remedial steps-and, of course, a failure to

seek legal advice" supported the jury's finding of inducement to infringe).  Additionally,

evidence of direct infringement is itself circumstantial evidence of inducement to infringe.

*Symantec Corp. v. Computer Associates Intern., Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008)

(vacating district order granting summary judgment of non-infringement since there exists

"sufficient circumstantial evidence of direct infringement to create a genuine issue of material

fact" as to whether Defendant induced others to infringe).

   *e*Plus has established substantial circumstantial evidence from which the jury can find

that Lawson either had actual knowledge of the patents-in-suit or else exhibited a "deliberate

indifference" to the asserted patents.  *e*Plus and Lawson compete for customers.  Ex. 16 (Farber

10

Dep.) at 16:8-24; 38:8-39:9. Lawson admits that it was aware of *e*Plus's products at least as early as 2003 and continued to be apprised of *e*Plus through field work and industry publications. Ex. 17 (Lohkamp Dep) at 72:4-75:8; 92:22-99:3. In view of the settlement and license between *e*Plus and Ariba, Gartner Research specifically cautioned its readers to "undertake an extensive review of your software's functions against patents known to be in dispute." Lawson Ex. 1 (Gartner Research (Feb. 17, 2005)) at ePLUS 940869-71. Lawson subscribes to industry publications discussing the patents-in-suit such as Gartner and consults Gartner comparatively more than other sources. Ex. 17 (Lohkamp Dep.) at 16:19-20:16; Ex. 34 (Christopherson Dep.) at 68:21-71:3; Ex. 33 (Billgren Dep.) at 49:4-8.

Lawson's reliance on *Seagate* in the inducement realm is similarly misplaced. While *Seagate* held that an infringer has no affirmative duty to seek an opinion of counsel regarding infringement, *Seagate* did nothing to "alter[] the state of mind requirement for inducement." *Broadcom Corp.*, 543 F.3d at 699 (refusing to order new trial where Court instructed jury as to inducement that "you may consider all of the circumstances, including whether or not Qualcomm obtained the advice of a competent lawyer" and reasoning that post-*Seagate*, failure to obtain opinion of counsel may still be "probative of specific intent to induce infringement").

Lawson should not be permitted to exclude *e*Plus's allegations of infringement by inducement at trial simply through self-serving denials that it knew about the patents-in-suit. At minimum, there is a disputed issue of fact as to whether Lawson had either actual knowledge of, or "deliberate indifference" toward, *e*Plus's asserted patents.

## IV.     CONCLUSION

Each of the seven publications which Lawson seeks to exclude are relevant to whether Lawson willfully infringed the patents-in-suit or induced its customers to infringe. Lawson cannot and does not articulate any specific prejudice other than a nebulous reference to

LIBA/2099465.6

"lead[ing] the jury to believe that unread articles and constructive notice support a finding of willful infringement."  Def's Br. at 6.  Lawson's arguments pertain to the weight of *e*Plus's evidence but provide no basis for exclusion.  As *Seagate* and Lawson's own expert make clear, the jury may find willful infringement based on the "totality of circumstances" surrounding an accused infringer's "objective recklessness."  Similarly, Federal Circuit precedent makes clear that Lawson's knowledge of *e*Plus's patents to induce its customers to infringe can be proven using circumstantial evidence.  The evidence is highly probative and there is no unfair prejudice suffered by Lawson.  This Court should deny Lawson's Motion.

Respectfully submitted,

July 2, 2010

/s/

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

12

13

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements  (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:   (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

LIBA/2099465.6

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANT LAWSON SOFTWARE, INC.'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OF DEFENDANT'S PRIOR KNOWLEDGE OF *e*PLUS'S PATENTS-IN-SUIT**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan C. Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

_____/s/_____
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com

14