IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**RESPONSE TO ePLUS'S MOTION IN LIMINE NO. 1:
MOTION IN LIMINE TO EXCLUDE FROM TRIAL ANY EVIDENCE, EXPERT
OPINION, OTHER TESTIMONY, OR ARGUMENT RELATING TO
<u>REEXAMINATION OF THE PATENTS-IN-SUIT</u>**

Plaintiff ePlus Inc. ("ePlus") seeks to have it both ways. It invokes the benefits of the U.S. Patent and Trademark Office's ("PTO") original decisions to allow the patents-in-suit to issue. It relies on the PTO's original allowance of the patents to rebut Lawson's invalidity evidence. Yet ePlus seeks to hide the rest of the story from the jury—the PTO's subsequent *final* determinations, based largely on prior art it had not previously considered, that there are substantial new questions about the validity of the patents, and its rejections (for the '683 patent, even final rejection) of all claims proffered for reexamination as a result.

Exclusion of the reexamination evidence would unfairly prejudice Lawson and distort the record before the jury. ePlus seeks to block the jury from learning of the PTO's findings of new questions of patentability specifically based in part on its findings that the PTO did not previously consider U.S. Patent No. 5,712,989 ("the '989 patent"), even as ePlus contends the contrary, namely that the PTO found the patents-in-suit patentable over the '989 patent during their original prosecution. Additionally, ePlus also makes the inflammatory accusation that

Lawson willfully infringes the patents-in-suit, and the closely related claim that Lawson has specific intent to induce and contribute to infringement. To support its contention ePlus necessarily must contend to the jury that Lawson's invalidity position is objectively unreasonable, even though the PTO in reexamination has essentially agreed with all of Lawson's proposed invalidity positions. It is little wonder that the Federal Circuit and other cases find such PTO determinations, even when not final, to be potent evidence against willful intent. These are all issues that ePlus has injected into the case. Lawson should be allowed to complete the record and negate the potential undue deference the jury may otherwise give the PTO's original issuance of the patents. The evidence is highly relevant, and more objective and credible than any evidence ePlus has on the issues.

Furthermore, there is only remote likelihood of jury confusion. ePlus fails to address the fact that the PTO's findings as to substantial new questions of patentability are final and non-appealable, which eliminates any confusion arising from non-final decisions. ePlus's concerns as to the office actions may be adequately addressed by instructing the jury on the significance of the reexamination determinations. Moreover, the speculative risk of confusion should not be used to allow ePlus to raise issues that are as inflammatory as willful infringement, without giving Lawson the fullest opportunity to rebut them with the aid of the PTO's expertise on the issues. The prejudice to Lawson from exclusion far outweighs the risk of confusion. Lawson should be allowed to present a full and fair defense including reference to the reexaminations, with appropriate instructions.

**I.    Final Determinations in the Reexaminations Directly Rebut ePlus's Contention that the '989 Patent was Considered by the PTO during the Original Prosecution of the Patents-In-Suit, and Thus Should be Allowed into Evidence.**

In response to Lawson's Interrogatory No. 19, ePlus contends that the PTO found the patents-in-suit patentable over the '989 patent:

> Moreover, the Patent and Trademark Office considered the '989 patent and allowed the claims of the Patents-in-Suit over the '989 patent.

(Exh. 1 at 8; *see* Exh. 2 at ¶53 ("Thus, the Patent Office considered both the .989 Patent *and* the RIMS system, and allowed the claims of the patents-in-suit over that Patent and system.").)  This statement, however, directly contradicts the PTO's *final* determinations in the reexaminations.

In the reexamination of the patents-in-suit, the PTO explicitly found that it had *not* considered the '989 patent when determining patentability in the original prosecutions when finding substantial new questions of patentability.  In granting the request for reexamination of the '516 patent, the PTO found that the '989 patent had not previously been considered:

> Further the reference of the Johnson '989 was cited in the specification of the '516 Patent (i.e., in col. 1, lines 13-21), but the references was not of record, nor was this reference discussed by the examiner, or used in any rejection of the claims of the '516 Patent.

(Exh. 3 at 4.)  It also found that the '989 patent raised a substantial new question of patentability as to every claim of the '516 patent:

> Therefore, the reference of the Johnson '989 Patent is seen to raise a substantial new question of patentability to each of independent claims 1, 9, 16, 21, and 29 of the '516 Patent.  With this, the reference of Johnson '989 Patent is also seen to raise a SNQ [substantial new question of patentability] to the corresponding dependent claims, as each of the dependent claims carry the same limitations found in their respective independent claim.  Thus, the reference of Johnson '989 Patent is seen to raise a SNQ of each of claims 1-29 of the '516 Patent

(*Id.* at 10-11.)

Similarly, in granting the request for reexamination of the '172 patent, the PTO found that the '989 patent had not been considered:

> [T]he Johnson '989 Patent was references in the Background of the Invention of the '172 Patent, but the reference was not used as the basis for any rejection, nor is the record clear that the examiner at the time considered the Johnson '989 Patent.

3

(Exh. 4 at 5.)[1] It also found that the '989 patent raised a substantial new question of patentability as to the '172 patent:

> Continuing, with respect to *Issue #2*, the request indicates that the Third Party Requester considers claims 1, 3, 4, and 5 of the '172 Patent to be anticipated by Johnson '989 Patent. It is agreed that the consideration of Johnson '989 raises a substantial new question of patentability as to claims 1, 3, 4, and 5 of the '172 Patent. Particularly, the Johnson '989 Patent is seen as teaching of a requisition and inventory management system that allows a user to access catalogs, as seen in Figs. 2A, 2B, and 3, and which generates an order list that includes a searched matching item, as seen in steps 201-212 in Fig. 3.

(*Id.* at 12.) After granting the reexamination request, the PTO specifically adopted the arguments set forth in the reexamination request and rejected those four claims as anticipated by the '989 patent:

> The rejection of claims 1 and 3-5, as being anticipated by the Johnson '989 Patents, as proposed by the Third Party Requester, <u>is adopted</u>, for the reasons discussed below.

(Exh 5. at 4 (emphasis in original).)

ePlus directly put at issue the PTO's handling of the '989 patent during the original prosecution of the patents-in-suit. By allowing ePlus to argue that the patents are valid over the '989 patent because the PTO considered the '989 patent and allowed the claims of the patents-in-suit over the '989 patent, when the PTO has found directly to the contrary in reexaminations, will leave a false and prejudicial impression that the PTO agrees with ePlus. The jury should hear the truth, not a distorted view of it. The reexaminations directly contradict ePlus's contentions, and Lawson should be allowed to present it to the jury to show that ePlus's assumptions about the actions of the PTO are demonstrably wrong.

---

[1] The PTO did not make similar findings in the reexamination of the '683 patent because the '989 patent was not submitted in that proceeding. The request for reexamination of the '683 patent was filed by SAP, not be Lawson. However, the treatment of the '989 patent during the original prosecution of the '683 patent was the same as during the original prosecutions of the '516 and '172 patents—it was not of record, nor was it discussed by the examiner, or used in any rejection of claims.

4

Moreover, the PTO's determinations that the '989 patent raises a substantial new question of patentability are final, non-appealable determinations. Manual of Patent Examining Procedure ("MPEP") at § 2246 (Exh. 6.) ("Accordingly, neither the patent owner nor the requester has a right to petition, or request reconsideration of, a finding that prior art patents or printed publications raise a substantial new question after a request for reexamination is granted."); *id* at §2646 ("A substantive determination by the Director of the Office to institute reexamination pursuant to a finding that the prior art patents or printed publications raise a substantial new question of patentability is not subject to review by petition or otherwise."). There is thus no risk of giving these findings undue weight.

## II.   The Reexamination Findings are an Important and Persuasive Factor that Rebut Willful Infringement and Intent, and Their Exclusion Would be Prejudicial.

It was not Lawson's idea to inject allegations of willful infringement in the case. ePlus did. The grant of a request to the PTO to reexamine a patent is an important factor that must be considered in determining whether any infringement of that patent was willful. This is because the PTO decision to grant a reexamination uses a standard very relevant to the objective prong of the willfulness requirement.

Willfulness requires a showing that the accused acted despite an objectively high likelihood of infringement. *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). This test requires a threshold showing that there is no substantial question regarding an infringement or invalidity defense to infringement. *Seagate* recognizes that the relatively low standard for avoiding a preliminary injunction motion, "only a substantial question as to invalidity," is relevant to willfulness because it "accords with the requirement that recklessness must be shown to recover enhanced damages. A substantial question about invalidity or infringement is likely sufficient to avoid a preliminary injunction, but also a charge of

5

willfulness based on post-filing conduct." 497 F.3d at 1374. *Seagate* indicates that this standard should apply to post- and pre-filing conduct, although here there is no evidence that Lawson knew of the patents before filing in any event. *Id.*

Similarly, the PTO's grant of a reexamination requires a finding that the invalidity grounds raised show a "substantial new question of patentability." 35 U.S.C. §§303 (ex parte reexam), 313 (inter partes reexam). In some ways this threshold is higher, because the preliminary injunction/willfulness standard allows a substantial question to be raised even by old issues previously considered by the PTO, whereas a reexam grant requires a "new" question.

The PTO finding is important enough that courts encounter its affect on willfulness frequently in a summary judgment context, where the issue is not merely whether it is strong evidence, as that is a given. Instead the issue is whether the substantial new question finding on reexamination is so strong as to provide grounds to dismiss willfulness as a matter of law. See e.g. *Plumley v. Mockett*, No. 04-2868, 2010 U.S. Dist. LEXIS 57254, *44-*45 (C.D. Cal. May 26, 2010) ("While a substantial question of patentability raised by a reexamination request is not dispositive in a willfulness inquiry, it is certainly relevant."); *Safoco, Inc. v. Cameron Int'l Corp.*, No. 05-0739, 2009 U.S. Dist. LEXIS 66187, *75-*76 (S.D. Cal. July 31, 2009) ("Therefore, the court concludes that the granting of a reexamination request by the USPTO is only a single factor to consider and is not dispositive as to the objective prong of the willful infringement standard, regardless of when the alleged willfully infringing activity occurs."); *Lucent Techs., Inc. v. Gateway, Inc.*, No. 03-0699, 2007 U.S. Dist. LEXIS 95934, *18 (D. Del. Oct. 30, 2007) ("The Court does not assume that a reexamination order will always prevent a plaintiff from meeting their burden on summary judgment regarding willful infringement, but it does consider this as one factor among the totality of the circumstances.").

ePlus relies on *Hoechst* to argue that reexaminations are irrelevant to willful infringement. (ePlus Br. at 15-16 (citing *Hoechst Celanse Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). Reliance on *Hoechst*, decided in 1996 and well before *Seagate* reset the willfulness standard, is misplaced. In *Hoechst*, the Federal Circuit held that the grant of a request for reexamination by the PTO "does not establish a *likelihood* of patent invalidity." 78 F.3d at 1584(emphasis added). However, *Seagate* makes clear that a "likelihood" of invalidity need not be shown to negate willfulness. The threshold issue now is whether there is a "substantial question" of invalidity, a much lower standard which is much more comparable to the PTO determination.

Even *Hoechst* acknowledges that the grant of reexamination is "surely evidence that the criterion for reexamination has been met (i.e., that a "substantial new question of patentability" has been raised, *35 U.S.C. § 303*)." Id. According to the Federal Circuit, this is likely sufficient to avoid willful infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("A substantial question about invalidity or infringement is likely sufficient not only to avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct."). The grant of a reexamination request is highly relevant to the current willfulness standard.

Reliance on *Hoechst* is also misplaced because here the PTO has done more than grant the reexamination request with respect to two of the patents-in-suit. The PTO has also issued an initial office action rejecting every claim of the '172 patent as well as an initial and a final office action rejecting every claim subject to the reexamination in the '683 patent. Going beyond finding a substantial question of patentability, the PTO has found that the preponderance of the evidence demonstrates that these claims are unpatentable. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) ("In a reexamination . . . a preponderance of the evidence must show

7

nonpatentability before the PTO may reject the claims of a patent application."). These office actions do more than express an intention to reconsider the claims, they express an intention to reject all the claims. *Xerox Corp. v. 3Com Corp.*, No. 97-6182T, 1999 U.S. Dist. LEXIS 9977, *4-*5 (W.D.N.Y. June 25, 1999).

Moreover, the Federal Circuit has cited decisions from other administrative bodies as objective evidence regarding the objective merits of an infringement claim. In *Bio-Technology*, the Federal Circuit affirmed at least partial reliance on the initial determination of infringement by an administrative law judge in the International Trade Commission ("ITC") to find that later infringement actions against the same party were not "sham litigations." *Bio-Tech. Gen. Corp. v. Genentehc, Inc.*, 267 F.3d 1325, 1332-33 (Fed. Cir. 2001). The initial determination of infringement by the administrative law judge was neither review nor adopted, was not a final decision, and received no deference by the court. *Id.* Nevertheless, it was appropriate to consider the initial determination in conjunction with the record of the proceedings before the ITC to find there was no sham litigation. In the same way, Lawson should be able to rely on the initial findings of a PTO examiner (and, for the '683 patent, a final rejection that ePlus has appealed) that there is substantial question of validity as to all three patents-in-suit to establishing a reasonable understanding that the patents were invalid. This Court, like the court in *Bio-Tech*, should admit in conjunction with the examiner's initial findings, the record of the proceedings before the PTO.

## III. The Likelihood of Jury Confusion is Remote

The jury will likely be instructed that Lawson bears the burden of proving by clear and convincing evidence that the patents-in-suit are invalid. *Source Search Tech., LLC. v. LendingTree, LLC*, 588 F.3d 1063, 1069 (Fed. Cir. 2009). It should also be instructed that the grant of a reexamination request is one factor that should be considered in determining

willfulness and specific intent. *See In re Seagate*, 497 F.3d at 1371. Also, the jury should be instructed that the specific, final finding of the PTO in the reexaminations that the '989 patent created a substantial new question of patentability. This is all clear and can be clearly stated.

There is minimal risk of confusion that the jury will give undue weight to the PTO grant of reexamination and findings of substantial new questions of invalidity. ePlus implies that these findings are not final. They are final. ePlus has and surely will continue to contest the actual rejections of the claims based on the prior art, including even the PTO's final rejections. However, the findings of substantial new questions of invalidity are final and non-appealable and thus will never be undone. MPEP §§ 2246, 2646 (Exh. 6.) Thus, there is no risk that those findings will be given improper weight as a mere interim decision.

## IV.   Conclusion

ePlus hopes the jury will defer to the expertise of the PTO in originally granting its patents. Yet it seeks to bar the jury from hearing that the same PTO experts have, upon seeing prior art not previously considered, found substantial new questions about the validity of those patents. ePlus even wants to tell the jury that the PTO previously considered the 989 patent as prior art, when the PTO itself says it did not. The finding of substantial new questions of patentability is final and particularly persuasive and free of the risk of misapplication by the jury. The reexamination records are very probative on several issues, and exclusion would prejudice Lawson far more than admission would prejudice ePlus. For the reasons stated, Lawson respectfully requests that the Court deny ePlus's Motion in *Limine* No. 1 to exclude evidence of the reexaminations of the patents-in-suit, including the PTO's final findings of substantial new questions of validity as to the patents in suit.

LAWSON SOFTWARE, INC.

By  /s/
          Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 2nd day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

                                          /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*