IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN OPPOSITION OF MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO ALLEGED PRIOR ART AND INVALIDITY THEORIES NOT SET FORTH IN DEFENDANT'S COURT-ORDERED SECOND SUPPLEMENTAL STATEMENT**

Defendant Lawson Software, Inc. ("Lawson") respectfully opposes Plaintiff ePlus, Inc.'s ("ePlus") motion in limine to exclude any evidence, expert opinion, other testimony, or argument pertaining to alleged prior art and invalidity theories. The Court has specifically allowed the use of the legacy systems as prior art to prove invalidity. Their relevance has only increased in view of ePlus's infringement contentions that were raised for the first time in its expert report on infringement. Moreover, Lawson's legacy systems, including versions 5.0 and 6.0 referenced in ePlus's motion, are relevant to issues other than invalidity. Those legacy systems, which ePlus does not contend infringe, are relevant on the issues of damages, lack of specific intent to induce infringement, and lack of willful infringement. They are also relevant to infringement, at least because Lawson should be entitled to use the systems to rebut and discredit ePlus's infringement and damages contentions which inexplicably indicate that post-2002 Lawson infringe, but pre-2002 systems do not.

## I. BACKGROUND

### A. The May 25, 2010 Order Does Not Preclude Admission of the Lawson Legacy Systems or the J-Con and Gateway Documents, and To the Extent it Was Granted, Was Limited to Admissibility for Purposes of Invalidity Only

At the time Lawson supplemented its invalidity contentions, Lawson made it clear to ePlus that it intended to rely on the legacy systems with respect to issues other than invalidity. In early April, 2010, Lawson informed ePlus that its legacy systems were relevant beyond the issue of invalidity. (Exh. 1.) On April 29, 2010, Lawson, in a letter to the Court, detailed that the systems were relevant at least on the issues of damages, lack of intent to infringe, lack of willfulness, alterative and non-infringing technology, and background of the art. (Exh. 2.) On May 7, 2010, Lawson again set forth the following grounds on which the systems were probative:

> A. providing background on Lawson's current software
> B. damages
> C. lack of intent to infringe / lack of willfulness
> D. obviousness (the scope and content of the prior art)
> E. alternative and non-infringing technology
> F. rebuttal to ePlus's infringement and damages contentions and expert reports

(Exh. 3.) On May 21, 2010, Lawson again reiterated the relevance of the systems for matters beyond invalidity. (Exh. 4.)

This history was referenced at the May 24, 2010, hearing regarding the motion to strike portions of the Shamos report, wherein the Court confirmed that the motion was limited to the issue of admissibility for the purpose of invalidity, and not for any other purpose:

> MR. MCDONALD: Well, that's what I wanted to get clarified, Your Honor. We maybe confused things by putting it the way we did in his report, but there was an issue here where ePlus had noticed up Lawson for a deposition about its prior art systems, and then when they saw that the Lawson prior art was not in our supplemental invalidity contentions, they said, oh, well, do we not need that deposition anymore? And we said, well, no, we want to make it perfectly clear that the Lawson prior systems are relevant for reasons other than invalidity, so you better make sure you take that deposition so you can get that background information.
>
> THE COURT: Yes, but that's not what's before me today.
>
> MR. MCDONALD: Well, and if that's clear, then that's fine. As I understand it, the issue is whether we're going to stop Dr. Shamos from talking about the Lawson system as a prior art system and give opinions on invalidity.
>
> THE COURT: Yeah.

(Exh. 5 at p. 43.)

Lawson's legacy systems remain relevant for a number of issues in this case. ePlus's motion fails to acknowledge or address the probative value of these systems to issues other than validity.

On May 5, 2010, Lawson served the Expert report of Dr. Michael Shamos on Invalidity ("Shamos Invalidity Report"). The Shamos Invalidity Report detailed Dr. Shamos's expert opinions with respect to the disclosures that rendered the claims of the patents in suit invalid. (Exh. 6.) As part of that report, Dr. Shamos included reference to Lawson's legacy systems. (*See, e.g.*, Exh. 6 at ¶ 118.) While those systems are clearly relevant to the issue of invalidity based on the Court's *Markman* Decision, the Shamos Invalidity Report made it clear that Lawson's legacy systems may be relevant for reasons other than invalidity, such as non-infringing alternatives. (*Id.* at ¶ 105.)

On May 14, 2010, ePlus filed a motion to strike portions of Dr. Shamos's Report. On May 19, 2010, Lawson filed its opposition to ePlus's motion to strike portions of Dr. Shamos's Invalidity Report. (Dkt. No. 222.) Lawson again reiterated its position that the Lawson legacy systems, the Background Art, and the Doyle patent are relevant to issues beyond invalidity.

Lawson further detailed that the Court's *Markman* Decision significantly altered the scope of relevant prior art. Moreover, Lawson's opposition detailed the relevance and lack of prejudice related to each and every one of ePlus's contentions.

The Court heard argument with respect to ePlus's motion to strike portions of Dr. Shamos's Report on May 24, 2010. At the hearing the Court held "it's correct that if the Markman hearing changes the rules and you can show that it changes the rules, then you're entitled to have some comment on it." (Exh. 5 at 23:21-24.) The Court further held that "I do understand the basic principle of law that if the Markman hearing necessitates some other comments from an expert, then perhaps that ought to be allowed." (*Id.* at 32:7-10.) The Court ruled that Lawson versions 5 and 6 were properly offered by Dr. Shamos due to the broadened construction of "means for searching for matching items in the database." (*Id.* at 103:5-20.)

Indeed, on May 25, the Court issued a written Order denying ePlus's motion to strike portions of the Shamos Invalidity Report "with respect to the new references (the Lawson V.5 and V.6 Systems) related to the Court's construction of 'means for searching for matching items in the database.'" (Dkt. No. 230 at 2.) The Court further granted Lawson leave to supplement its briefing with respect to the Court's construction of "means for building a requisition using data relating to selected matching items and their associated sources." (Dkt. No. 230 at 2.) Lawson filed its supplemental brief as instructed on May 28, 2010. (Dkt. No. 231.) A decision on that issue is pending. The Court's May 25 Order also reserved judgment on the documents related to J-Con and Gateway that are at issue in this motion. (Dkt. No. 230 at 3.)

**B.     The Weaver Infringement Report Greatly Expanded ePlus's Infringement Contentions, Creating New Potential Grounds for Opening the Door as to the Scope of Relevant Prior Art**

On May 5, 2010, ePlus served the Expert Report of Dr. Alfred Weaver on Infringement ("Weaver Infringement Report"). The Weaver Infringement Report included infringement contentions that were not disclosed in any of ePlus's prior infringement contentions, including the Court-ordered infringement contentions served December 22, 2009. The infringement claim chart set forth in the Weaver Infringement Report was 400 pages longer than ePlus's infringement contention claim chart provided in connection with the Court-ordered contentions. Moreover, the new infringement arguments did not merely provide additional support for arguments previously made, but introduced entirely new theories. (*See* Dkt. No. 239 at 3-4.)

On June 11, 2010, Lawson moved to strike the new portions of the Weaver Infringement Report. (Dkt. No. 239.) The Court's Pretrial Schedule A, § J(2), (4) required ePlus to make a full disclosure of all the bases for its infringement claims on an element-by-element basis. (Dkt. 121-2.) ePlus did not comply with that order by including the new arguments in its infringement contentions. Moreover, as set forth in Lawson's motion, ePlus failed to provide any notice of the allegations in response to Lawson's discovery requests on those topics. (*See* Dkt. No. 239 at 1-2.) Lawson's motion to strike portions of the Weaver Infringement Report remains pending. If the Court allows any significant portion of the new infringement analysis into the case, that should open the door for Lawson to use the additional prior art that would otherwise be excluded under the May 25, 2010, Order.

**C.     The Shamos Non-Infringement Report Details Some of The Reasons the Lawson Legacy Systems are Relevant to the Infringement Issues**

On June 3, 2010, Lawson served the Rebuttal Report of Dr. Michael Shamos Concerning Non-Infringement ("Shamos Non-Infringement Report"). Among other opinions, Dr. Shamos

5

opines that Lawson does not possess the relevant intent for indirect infringement and had an objectively-reasonable basis to believe it does not infringe the claims of the patents. (Exh. 7 at ¶ 19.)

Dr. Shamos supports his opinions in part by stating, "Lawson created its own products and software code. I understand there are no allegations of copying by Lawson of any aspect of Plaintiff's products or features." (*Id.* at ¶ 21.) He further details the major functions of the current system were available in the legacy systems, showing that Lawson did not copy or have the intent to induce infringement. (*Id.* at ¶¶ 22-29; 263.) Indeed, he showed that the requisitions, inventory control, and purchase order modules of the Lawson systems have had the same basic structure, function, and operation since at least Version 5.0 through the current release. (*Id.*) Moreover, he opined that the Item Master database has had the same functionality dating back to at least Version 5.0. (*Id.* at ¶ 33.) Numerous other examples are detailed throughout the report.

The legacy systems are highly relevant to the lack of the requisite specific intent to induce infringement or commit contributory infringement, and to the objective and subjective defenses to infringement that preclude willful infringement. At his deposition on June 16, 2010, Dr. Shamos further explained that his opinions related to the legacy systems were proper regarding the issue of inducement and contributory infringement. (Exh. 8 at 141:1-142:13.) The fact the legacy systems existed for nearly 20 years prior to the first time Lawson was informed of the patents is directly relevant to Lawson's good faith in bringing to market its version 8.0.3 system accused of being the first infringing system introduced in 2002. (Exh. 9 at ¶ 71.) As the 8.0.3 indication would suggest, this product was merely the next incremental change in a long line of Lawson enhancements, none of which had every raised an infringement issue before. The history of Lawson's products rebuts both infringement and willful infringement.

### D. ePlus's Motion Improperly Seeks to Rely on the May 25, 2010, Order to Exclude Evidence for Purposes Other Than Invalidity

ePlus's brief does not address the relevance of the legacy systems or J-Con or Gateway systems to issues other than invalidity. As shown above, the May 24 and May 25, 2010, hearing and order on which ePlus relies related solely to invalidity. ePlus's requested relief, however, seeks exclusion beyond invalidity. ePlus seeks to preclude Lawson from comparing its version 5.0 and 6.0 systems to the Accused products in Section 1 of its Proposed Order. (Dkt. No. 248-1 at 1.) As indicated above, that relates to issues other than invalidity. Moreover, ePlus's Proposed Order has nothing to do with invalidity, as the requested relief does not even refer to the patents in suit. Yet, ePlus contends that the order should be so broad based on the unsupported contention that "such argument would be nothing more than an argument of invalidity that the Court has already excluded." (Dkt. No. 248-1 at 1, ¶ 1.) This is not logic, but rather wishful thinking. Moreover, the requested relief ignores the fact that ePlus's motion was denied regarding the version 5.0 and 6.0 systems, *even as to invalidity*. (Dkt. No. 230.)

Similarly, ePlus seeks to exclude use of certain documents regarding the Gateway prior art system in section (7) of its Proposed Order. (Dkt. No. 248-1 at 2, ¶ 7.) Although the motion purports to be based on enforcement of the May 24 and May 25, 2010, hearing and order, it fails to acknowledge that (1) the Court reserved the issue of striking the Gateway documents, and (2) the Gateway documents also provide evidence of non-infringing alternatives relevant to issues other than invalidity.

## II. DISCUSSION

### A. THE LEGACY SYSTEMS, J-CON, GATEWAY AND PO WRITER SUPPORTING DOCUMENTS, AND KING '542 PATENT SHOULD BE ADMITTED ON THE ISSUE OF INVALIDITY.

ePlus argues that the Court "Already Excluded" Shamos's Opinion of invalidity regarding the Lawson 5.0 and 6.0 systems, and thus his infringement rebuttal report should be precluded from citing those systems as well. (Dkt. No. 249 at 9.) However, nowhere in this section of its Brief does ePlus identify where in the Court's May 25, 2010, order that the Lawson systems were excluded. The Court's May 25, 2010 Order provides no grounds for this statement. To the contrary, it states:

> the motion is denied with respect to the new references (the Lawson V.5 and V.6 Systems) related to the Court's construction of "means for searching for matching items in the database";

(Dkt. No. 230 at ¶ (6).) Moreover, paragraph (7) of the Order reserves whether the systems are admissible on validity due to another claim element. (*Id.* at ¶ (7).) As to the Gateway and J-Con documents, the Court "reserved judgment." (*Id.* ¶ (8).)

ePlus also seeks to exclude documents regarding the PO Writer and King '542 Patent References. The J-CON, Gateway, PO Writer, and King references each support references Lawson cited in support of its invalidity contentions. Those are not even addressed in the May 25, 2010, Order because ePlus did not even raise an objection to Shamos's reliance on those references in its motion to strike. (*See* Dkt. No. 213.)

All of the references should be allowed to the extent Dr. Shamos relied on them in preparing his timely expert report. The May 25 2010 Order provides no grounds to exclude any

8

of those prior art references for purposes of invalidity.

As additional support for the relevance of the Lawson legacy systems in connection with the cited claim element, Jeff Hvass testified at his deposition that the legacy systems as demonstrated offered the ability to search for matching items in a database and build a requisition using the data related to the matching items. (*See, e.g.*, Exh. 10 at 166:9-168:8; 171:11-174:16.) Lawson should be allowed to explain those features to the jury using the legacy systems. To exclude that right would unfairly prejudice Lawson. The demonstration of those systems should not be excluded.

A party seeking to invalidate a patent claim may rely on multiple documents to establish a single prior art system. *Engate, Inc. v. Esquire Deposition Servs.*, LLC, 331 F. Supp. 2d 673, 687-88 (N.D. Ill. 2004) (relying on multiple publications and declarations describing a prior public use to grant summary judgment of invalidity); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1352 (Fed. Cir. 2004) ("[T]he undisputed evidence [of prior use] combined contemporaneous correspondence, color photographs, witness testimony, and promotional videos. Together, it established numerous points of identity between the Unitherm process and the patented process."), *rev'd on other grounds*, 126 S. Ct. 980 (2006); *Mitsubishi Elec. Corp. v. Ampex Corp.*, 190 F.3d 1300 (Fed. Cir. 1999) (relying on combination of testimonial, documentary, and opinion evidence to show prior public use of a prior art reference).

Lawson should be able to use documents to support its invalidity contentions. The documents that ePlus cites in this motion do not add new prior art systems that Lawson relies on to invalidate the claims at issue. Rather, the documents support the contentions regarding the systems previously identified.

9

Additionally, ePlus will not be prejudiced in any way with the use of those documents. Indeed, Lawson produced the documents to ePlus on September 17, 2009, and provided its contentions regarding these documents. (*See* Dkt. No. 222-9, 222-10 and 222-3.) Moreover, ePlus had the documents available to it at Dr. Shamos' deposition. These documents are relevant, are offered to support invalidity contentions set forth in Lawson's Second Supplemental Invalidity Contentions and should not be stricken.

Lawson's expert report timely included the documents at issue in this motion. The Court's May 4, 2010, Order provided Lawson's expert report on the issue of invalidity was due on May 5, 2010. (Dkt. No. 206.) Lawson timely served that expert report on May 5, 2010. ePlus points to no case which precludes use of prior art timely disclosed in an expert report. Moreover, ePlus was not prejudiced by the inclusion of the prior art in the expert report. Lawson, on the other hand, would be prejudiced by the exclusion of the references. For all the reasons provided in response to ePlus's motion to strike portions of the Shamos invalidity report, the Court should not exclude the references for purposes of proving invalidity that were timely disclosed in Dr. Shamos' Invalidity Report.

## C. Lawson will be Prejudiced if It is not Allowed to Rebut and Impeach the Infringement and Damages Experts With the Legacy Systems

The Weaver Infringement Report set forth 400 additional pages of infringement allegations that ePlus did not previously disclose to Lawson. (Dkt. No. 239 at 3.) Thus, Lawson had no opportunity to evaluate those contentions with respect to the prior art, including its own systems. It would be unfairly prejudicial to deny Lawson the opportunity to defend ePlus's new infringement contentions with its own systems, which are directly relevant to the broad new allegations.

Lawson contends that none of its systems, legacy or current, infringe the patents in suit. Dr. Shamos, in response to Dr. Weaver's infringement report, opined that ePlus's infringement analysis cannot be correct if ePlus contends the current Lawson systems infringe, but the legacy systems do not. Indeed, Lawson's current system had the same features as the legacy systems. (Exh. 10 at 207:22-208:20; 189:4-191:15.) Lawson would be prejudiced if it were excluded from using its systems to rebut ePlus's positions on infringement. Those positions are filled with holes, and the Lawson legacy systems illustrate that.

ePlus's infringement and damages experts have concocted their infringement and damages theories on the proposition that Lawson suddenly started infringement in 2002, with the introduction of Lawson's version 8.0.3 system. None of these experts provides a credible or even cogent explanation for what features of version 8.0.3 are different enough from Lawson's prior versions to give rise to infringement of the 13 Asserted Claims. Lawson contends that the experts were spoon-fed the 2002 date by ePlus's lawyers to thread the needle between (1) picking a date of infringement early enough to produce the biggest possible damages, while (2) avoiding an earlier date of infringement which would create more problems with Lawson prior art and introduce other facts that would drive the reasonable royalty much lower. Lawson should not be barred from inquiring with these purported experts about the differences (or lack thereof) between the pre-2002 and post-2002 Lawson systems to show the artificial and incredible basis for the opinions.

This line of questioning has little or nothing to do with invalidity. Lawson bears a burden of clear and convincing proof of invalidity. In contrast, ePlus bears the burden of proving infringement and damages. Any issues regarding admissibility of Lawson legacy systems for validity purposes regarding activities that predate 2004 are far different from the burden Lawson

11

faces to debunk ePlus's infringement and damages theories. ePlus hopes to parlay the limited ruling on the Shamos invalidity report into something much broader and more unfair. The effort should be rebuked.

### III. THE LEGACY SYSTEMS AND OTHER REFERENCES ALSO ARE PROBATIVE TO A NUMBER OF ISSUES OTHER THAN INVALIDITY, INCLUDING DAMAGES, INFRINGEMENT, AND WILLFULNESS

ePlus incorrectly categorizes the legacy systems as probative solely to the issue of invalidity, and argues that they are not admissible unless Lawson can show the systems date back to 1994. (Dkt. No. 256 at p. 6.) The Legacy systems, however, are highly probative for numerous issues that do not require them to date back that far, including damages, lack of specific intent, and lack of willfulness. The probative value is much more significant than ePlus admits, and not outweighed by any risk of unfair prejudice. Indeed, excluding the evidence would unfairly prejudice Lawson's right to demonstrate the fundamental functionality of its own prior systems.

#### A. The Legacy Systems Are Probative on the Issue of Damages

The legacy systems and related demonstrations are relevant to the issue of damages. In particular, the legacy systems are non-infringing alternatives available to Lawson when the purported infringement began in 2002. The similarity of the functional attributes of a legacy system is a relevant factor to consider in assessing non-infringing alternatives. *See Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553, (Fed. Cir. 1997) (holding important the similarity of functional attributes relate to the demand of the product).

Furthermore, a non-infringing substitute is "available" for purposes of damages if other facts show the infringer could have manufactured the non-infringing alternative and would have known it would be acceptable to consumers at the time of infringement. *Grain Processing Corp.*

*v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). While *Grain Processing* relates to lost profits, non-infringing alternatives are also relevant to a reasonable royalty. Georgia Pacific royalty factor Number 9 provides "The utility and advantages of the patent property over the ***old modes or devices***, if any, that had been used for working out similar results." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added).

The prior systems are also relevant to damages because they show that Lawson was commercially successful even without the features that purportedly infringe the patents. Georgia-Pacific royalty factor Number 13 is "the portion of the realizable profit that should be credited to the invention *as distinguished from non-patented elements*, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F. Supp. at 1120 (emphasis added). ePlus concedes that Lawson's legacy systems had non-patented elements. The success of these prior systems reduced the value of the purported patented features. That is true because the systems were in existence at least prior to 2002 when the purported infringement began. It does not matter whether the systems were also invalidating prior art dating back to 1994.

ePlus claims that Lawson's systems starting at version 8.0.3 infringed the patents at issue in this case. (Exh 9 at ¶ 71.) Lawson's systems prior to version 8.0.3, therefore, are non-infringing alternatives. As others have testified, Jeff Hvass showed at his deposition that each of the legacy systems contained purchase order, inventory control, and requisitions modules. (Exh 11, 12, 13; Exh. 10 at 243:19-244:4.) These are the core features that Lawson has used in its procurement systems from the early 1990s.

Mr. Hvass testified that these modules continue to operate the current systems. Moreover, the functionality is such that customers could use these systems today. Indeed, Mr. Hvass demonstrated the functionality of a search in the systems. (*See, e.g.*, Exh. 11 at 28, Exh. 12 at 5.) He also demonstrated taking the search to a requisition. (*See, e.g.*, Exh. 12 at 18-22.) Mr. Hvass has personal experience demonstrating these systems dating back to the early 1990s. (Exh. 10 at 19:19-20:7.) This lays adequate foundation for the availability and use of the system in earlier years, regardless of the operating system which was used for the demonstration. Fed. R. Evid. 104; 901(b)(1) (testimony of witness with knowledge may properly authenticate that the system is what it is claimed to be). Those systems are relevant on the issue of damages.

### B. The Legacy Systems are Probative to Rebut ePlus's Claims of Specific Intent to Cause Infringement and Willfulness

The existence of legacy systems is also relevant on the issues of specific intent and lack of willfulness. In order to be liable for inducement of patent infringement, the plaintiff must prove that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Willful infringement requires objective recklessness as well as subjective recklessness. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The extent to which Lawson sold similar systems prior to the alleged date of infringement goes to show the lack of specific intent and willfulness. Indeed, the more similar the system that existed prior to the time of infringement, the better the proof of good faith.

As evidence has shown and Mr. Hvass demonstrated at his deposition, each of the legacy systems had the same fundamental functions or functionality closely related to the functionality

14

that ePlus now accuses of infringement. Lawson's systems used those features well before 2002, and in fact at least to the early to mid 1990s. For example, Lawson's legacy systems contained functionality similar to the UNSPSC codes in the current software which are accused of infringement when they were purportedly added in 2002. (Exh. 10 at 201:5-203:4; 246:2-11; Exh. 11 at 5.) UNSPSC codes use a numbering system to classify hierarchies of products. The legacy systems similarly operated classification fields, which allow the user to input data based on a hierarchy. (*Id.*; see also Exh. 10 at 201:21-203:4.) Because Lawson's legacy systems had that functionality, it would be reasonable for Lawson to add in the UNSPSC codes thinking that functionality did not gives rise to infringing any patent.

Moreover, the Lawson systems have always been able to electronically upload data, which is also a purportedly-new feature that ePlus relies upon for triggering infringement in 2002. (Exh. 9 at ¶ 71.) Lawson's PO536 and IC811, subroutines in the Lawson system, which ePlus contends are the uploading elements that contribute to Lawson's infringement, existed as PO913 and IC911 in the legacy systems. (Exh. 10 at 204:16-206:14; Exh. 11 at 33-35.) The EDI and Item Master functionality operated the same, including the ability to add customer-chosen fields. (Exh. 10 at 206:15- 208:20; Exh. 11 at 36-37.) There would be no reason for Lawson to believe that its uploading, EDI and Item Master functionality infringed a patent when it had been doing the same function for over 20 years. This functionality goes to the issues of Lawson's lack of specific intent and lack of willfulness.

Lawson's similar, prior systems are very relevant to rebut ePlus's charges of specific intent and willfulness and show instead that Lawson in good faith made minor changes to longstanding, noninfringing products. ePlus unilaterally decided to wait until the close of fact discovery to depose Lawson on a demonstration of these systems, despite Lawson's prodding for

15

an earlier deposition. ePlus cannot use the fact that it dragged its feet to take the deposition as a way to manufacture artificial prejudice. It long had other evidence of these prior systems, in addition to the demonstration, that proved their similar functionality. In contrast, precluding Lawson from using its legacy systems to show a lack of specific intent and lack of willfulness would be unfairly and extremely prejudicial, as it would give the jury the false and damaging impression that Lawson had no similar systems until 2002. This unfair prejudice would arise regardless of whether the proof shows that the systems predate 1994.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny ePlus's motion in limine to exclude Lawson from introducing at trial information related to its own legacy systems. Moreover, the Court should deny ePlus's motion to the extent it requests relief beyond that which the Court has already granted in its May 25, 2010, Order, which is the purported basis for the motion. The Court allowed Lawson to introduce its legacy systems on validity, reserved judgment on certain issues, and to the extent it was granted, did not apply to admissibility for any other purpose than invalidity.

LAWSON SOFTWARE, INC.

By  /s/  
        Of Counsel

Dabney J. Carr, IV (VSB No. 28679)  
Robert A. Angle (VSB No. 37691)  
Megan C. Rahman (VSB No. 42678)  
dabney.carr@troutmansanders.com  
robert.angle@troutmansanders.com  
megan.rahman@troutmansanders.com  
**TROUTMAN SANDERS LLP**  
1001 Haxall Point, Richmond, VA 23219  
Telephone: (804) 697-1200  
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)  
William D. Schultz (admitted *pro hac vice*)  
Rachel C. Hughey (admitted *pro hac vice*)  
Andrew J. Lagatta (admitted *pro hac vice*)  
Joshua P. Graham (admitted *pro hac vice*)  
**MERCHANT & GOULD P.C.**  
3200 IDS Center, 80 South Eighth Street,  
Minneapolis, MN 55402  
Telephone: (612) 332-5300  
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

        /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*