# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| *e*PLUS, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>LAWSON SOFTWARE, INC.<br><br>                Defendant. | )<br>)<br>)  Civil Action No. 3:09-cv-620<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# REBUTTAL REPORT OF EXPERT MICHAEL I. SHAMOS, PH.D, J.D. CONCERNING NON-INFRINGEMENT

.

software, which was available prior to August 10, 1994, included Order Entry, Requisition, Inventory Control, and Purchase Order modules. (L0012852). Although the discussion below cites to the Version 6.0 and Version 9.0. documentation, I understand that Version 5.0 worked generally as described below. (Lawson Dep. (rough draft) at19:5-9, 33:17-34:7, and 59:18-60:9); *see also* my opening report at paragraphs 117-144.

19. The following discussion regarding Lawson's prior non-infringing software supports my opinions, disclosed in detail herein, that Lawson does not directly infringe the Asserted Claims, does not possess the requisite intent for indirect infringement of the Asserted Claims, even after it became aware of the Patents, and has an objectively-reasonable basis to believe it does not infringe the claims of the Patents.

20. .Lawson has been distributing its Requisition module since well before the priority date of the Patents. The purpose of Lawson's Requisition module is to allow employees of Lawson's customer to request things they need for their department or things they need to perform their business. It provides for requesting two types of items: 1) items in stock or in inventory at the customer; and 2) special order items (things that need to be ordered from a vendor). (*See, e.g.,* Christopherson Dep. at 114:1-114:22.)

21. I have seen no evidence that Lawson copied any aspect of Plaintiff's software or product features when developing its products at any time. Dr. Weaver and Mr. Niemeyer provide no evidence that any aspect of Lawson's products or code was derived in any respect from access to or knowledge of Plaintiff's products, code, documentation, or Patents. Lawson created its own products and software code. I understand there are no allegations of any copying by Lawson of any aspect of Plaintiff's products or features.

22. "The Lawson Requisitions system is a software package that is integrated with the Lawson Purchase Order and Inventory Control systems. Following are some of the major features and benefits of the Lawson Requisitions system.

    a. You can generate requisitions from the Lawson Inventory Control system. . . .

    b. You can request stock items, non-stock items, special items, and services on a single requisition. . . .

    c. You can quickly create purchase orders from requisitions using a one step process.

    d. You can split requisitions among multiple purchase orders. Buyer review is available before creation of a purchase order, which enables you to combine multiple requisitions for the same line item to one purchase order. (Requisitions Procedures Manual (Release 6.0) (January 1994) (© 1994) at Introduction, v) (L0009725-0009773) at L0009729).

    e. "The Lawson Requisition application lets you create requests with demand on stock and demand on vendors, replenish part locations, and process and manage requisitions." (Requisition User Guide (Version 9.0) (November 2006) at 11 (L0044880); Christopherson Depo at 114:1-22).

    23. The Requisition module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release. ((*See, e.g.,* Requisitions Procedures Manual (Release 6.0) (January 1994) (© 1994) at Introduction, v) (L0009725-0009773); Requisition User Guide (Version 9.0) (November 2006); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 6 (L0017235).)

    24. Lawson has been selling its Inventory Control module since well before the priority date of the Patents. The purpose of Lawson's Inventory Control module is to set up items within the Item Master database, which was intended from inception to provide customers with away to manage their inventory of products (as opposed to providing a list of products offered for sale by vendors) and to control how many of each item the customer actually has. "So you might do periodic inventory to make sure that what your stock says is in the computer is actually what you do have." (*See, e.g.,* Christopherson Dep. at 120:3-120:11). In addition to setting up the Item Master database, the Inventory Control module essentially keeps track of the customer's inventory, where is the inventory at. Customers may have more than one supply

room, may have distribution centers, and the IC module keeps track of the current stock level of those locations. (*See, e.g.,* Christopherson Dep. at 122:8-122:14).

25. The Inventory Control system "maintains and controls inventory for up to 9,999 different companies. At a minimum the Inventory Control system provides the information necessary to support buying and selling operations. Controlling the inventory, knowing exactly what is in stock and where it is, is the first step. The second step is to manage the inventory by having the right amount of inventory available at the right time, reducing your inventory investment, while maintaining the desired customer service level. Lawson's Inventory Control System can have a significant impact on the success of your business." (Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994) at vii (L0012843).) It "lets you define items and manage inventory. The application receives items that you purchase from a vendor or replenish form another location and moves out items by issue, transfer or allocation." (Inventory Control User Guide (Version 9.0.1) (November 2008) at 13 (L0032261); Christopherson Depo at 120:3-11, 8-14.)

26. The Inventory Control module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release. (*See, e.g.,* Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994); Inventory Control User Guide (Version 9.0.1) (November 2008); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 1-3 (L0017230-32).)

27. Lawson also has been selling its Purchase Order module since well before the priority date of the Patents. Lawson's Purchase Order module functions in a number a different ways. A customer that does not use requisitions may use it to purchase an item or set of items or set of goods, services, etc. from a vendor. It may also be used with the Requisition module, which is how most of Lawson's customers use it. In this scenario, once a requisition has been approved, the PO module takes the approved requisition and creates the purchase order or purchase orders that are required to fulfill on the requisition, if the item is not in stock. If the item is in stock, it is just taken from stockroom, "unless of course you need some from the

stockroom, maybe you hit a minimum threshold of stocking levels and stuff, in which case the purchase order would go out." (*See, e.g.,* Christopherson Dep. at 124:17-125:17).

28. "The Lawson Purchase Order system is designed to assist Purchasing agents, Accounts Payable and Receiving clerks, and Accounting and Inventory Management personnel in buying inventory and internal supplies while minimizing inventory cost. You also have the ability to match vendor invoices to purchase orders. You can set up the system quickly and easily, especially if you use it with the Lawson Accounts Payable system. Once the invoice is approved and you release the invoice batch, the invoice becomes the responsibility of the Lawson Accounts Payable system." (Purchase Order Procedures Manual (Release 6.0) (January 1994) (© 1994) (L0013146-0013295 at L0013151.) "The Lawson Purchase Order application lets you create and issue purchase orders, and manage the receiving process." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 11 (L0044092); Christopherson Depo at 122:19-124:6.) "You can also create purchase orders from another application such as Inventory Control, Requisitions, or Order Entry." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 115 (L0044196).) "The Purchase Order application receives order requests from other applications and creates purchase orders from those requests." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 146 (L0044227).)

29. The Purchase Order module has had essentially the same structure, function, and operation since at least Version 5.0 through the current release. (Purchase Order Procedures Manual (Release 6.0) (January 1994) (© 1994) (L0013146-0013295); Purchase Order User Guide (Version 9.0.1 (November 2008); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 3-6 (L0017232-35).)

30. The following discussion regarding the Item Master database supports my opinions, disclosed in detail herein, that Lawson's Accused Software does not comprise multiple product catalogs, means for selecting product catalogs, catalog selection protocols, and the like.

31. Lawson's Inventory Control module has always included a database ("Item Master") that allows customers to upload or enter data regarding items that could be ordered

9

using the Requisition and Purchase Order modules: "The item master file consists of item information that is not location specific such as the item description, generic name, freight class, sales class, inventory class, purchasing class, tax code, units of measure, etc. This is where you indicate if an item is tracked for inventory by lot and serial number. To define a non-inventory item, set the Inventory Tracking indicator to (N)o. Run IC211 (Item Master Listing) for a listing of established item master records." (Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994) at 3.37 (L0012922). "An Item Master is a file which holds information about an item, regardless of where that item is used. You can assign item masters to an item group so several companies can share an item, so long as they share an item group. Information stored in the item master includes unit of measure and packaging information. Items are then assigned to specific locations." (Inventory Control User Guide (Version 9.0.1) (November 2008) at 70 (L0032318); Christopherson Depo. 120:3-11.)

32. Item Master is a single database. (Dooner Depo. at 54:11-18 (Q. Well, if someone had, you know, a large volume of data, could they implement their item master using multiple database instances? A. They would have to be cloned, so they couldn't put half the information in one database and half in the other. Q. Why not? A. It wouldn't work.").)

33. The Item Master database has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release of the Inventory Control module. (*See, e.g.,* Inventory Control User Guide (Version 9.0.1) (November 2008); Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 1-3 (L0017230-32).)

34. As sold, the Item Master database does not contain any data – it is empty. (*See, e.g.,* Christopherson Depo at 120:12-21; 446:7 to 446:16; Dooner Dep. at 50:5-50:20.) Lawson's customers select the data that they want to include in item master. (*See, e.g.,* Christopherson Depo at 142:6-143:4; Lohkamp Dep. at 34:18- 36:9; Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994) at 2.7 (L0012879); (Inventory Control User Guide (Version 9.0.1) (November 2008) at 73-77 (L0032321-25).)

**Opinion 8: Lawson Does Not Indirectly Infringe the Asserted Claims**

260. Paragraphs 360-376 are directed to a discussion of indirect infringement. Indirect infringement requires the existence of some direct infringer. Because there is no claim all of whose elements are present or all of whose steps are performed, there can be no direct infringement, and thus no indirect infringement.

261. Dr. Weaver fails to show a customer who is directly infringing. Absent proof of direct infringement, there can be no inducement to infringe.

262. Additionally, Lawson is not liable for either inducing or contributory infringement because it lacks specific intent to cause infringement. Plaintiff has no evidence that anyone at Lawson knew of the Patents until this lawsuit was filed in May 2009. Thus, there can be no indirect infringement prior to the filing of the instant lawsuit.

263. Continuing after May 2009, Lawson had an objective good faith basis to believe its Accused Software does not infringe the Patents as described above, and thus did not know (and should not have known) that its actions would induce infringement or contribute to infringement, particularly in view of the following:

   a. Lawson has been selling the IC, RQ, and PO modules for many years, going back to at least the early 1990s and well before the priority date of the Patents – most of the accused features were part or similar to Lawson's non-infringing prior software;

   b. Lawson's software uses the Item Master database instead of multiple catalogs, and has done this for many, many years;

   c. Plaintiff's original inducement contentions of Sept. 2009 were based on Digital Depot, which Lawson stopped offering years earlier, and Punchout, which as shown above, Lawson does not control;

   d. By the time Plaintiff filed this suit the Patent Office had issued a final office action rejecting claims of the '683 patent, which is based on the same application as the '172 and '516 patents;

73

SHAMOS REBUTTAL REPORT ON NON-INFRINGEMENT                    CASE NO.3:09cv620

  e. On October 23, 2009, the Patent Office rejected all claims of the '172 patent finding that claims 1 and 3-5 were anticipated by the '989 Patent and that claims 1-5 were anticipated by each of the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual; and

  f. On January 15, 2010, the Patent Office granted reexamination finding that the following references were prior art and raised a substantial new question of patentability as to all claims of the '516 patent: Claims 1-29 of the '516 Patent to be unpatentable over the Johnson'989, King'542, P.O. Writer; Practical Guide to SABRE; and J-CON. It is again noteworthy that, once the '989 Patent was identified as prior art, the PTO relied on it as raising new questions of patentability.

  g. Lawson has developed legitimate invalidity defenses as detailed in my Expert Report Concerning Invalidity, incorporated by reference herein.

  264. Additionally, Lawson's customers can use Lawson's accused software in a manner that would not infringe any claim even under Dr. Weaver's infringement analysis. That is, Dr. Weaver alleges that Lawson's software is capable of including collections of catalogs because it is capable of including items from multiple different sources or vendors. However, it does not require items from different sources. Lawson's customers could choose to load item data from a single source that relates to a single vendor or manufacturer or supplier and the software would work fine. The other functions and steps cited by Dr. Weaver as possibilities similarly are not necessarily used or practiced in fact by customers. Thus, Lawson's actions are not shown to induce any customer to practice the steps or use the functionality relied upon by Dr. Weaver to prove infringement.

  265. Dr. Weaver alleges that it is the item data loading procedures (PO536) that triggered infringement, if this is the case, there are other ways that Lawson's customers can and do load item data (including manual entry and flat file conversions mentioned above). These are substantial non-infringing uses. Moreover, the data loading procedure can be used to load data