IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN OPPOSITION
OF MOTION IN LIMINE NO. 4 TO EXCLUDE ANY EVIDENCE, EXPERT OPINION,
OTHER TESTIMONY, OR ARGUMENT PERTAINING TO PURPORTED
"DEMONSTRATION SYSTEMS" FOR LAWSON RELEASES 5.0, 6.0, AND 6.1**

Defendant Lawson Software, Inc. ("Lawson") respectfully opposes Plaintiff ePlus, Inc.'s ("ePlus") Motion in Limine to Exclude any Evidence, Expert Opinion, other Testimony, or Argument Pertaining to Purported "Demonstration Systems" for Lawson Releases 5.0, 6.0, and 6.1. ePlus seeks to penalize Lawson for doing what ePlus asked it to do. At ePlus's request, Lawson made three of its legacy systems available for inspection and a witness available for deposition. The legacy systems accurately depict the functionality of Lawson's 5.0, 6.0, and 6.1 systems. Lawson's witness provided detailed information related to the compilations of the system, including the source of the systems and the hardware on which the systems operated.

ePlus's attempt to limit the relevance to invalidity is misplaced. ePlus claims the systems are not relevant because the dates of the platforms and hardware operating the systems post-date 1994. This is not grounds for exclusion. Moreover, the testimony showed that the functionality of the systems as they were demonstrated had the same functionality as the systems as they existed in the early 1990s. This adequately lays the foundation for the prior use. Just as an old

movie can be shown with a newer projector, the old software can run on a newer platform without casting doubt on its origin.  There is no requirement that a company retain its obsolete operating systems forever in order to show their own prior use.  ePlus, which waited to notify Lawson of its claims until it sued Lawson in May 2009, seven years after the purported infringement began and fifteen years after it filed for its patents, is in no position to complain.  It is up to the jury to decide the probative nature of the testimony.

ePlus had the opportunity to cross examine the witness demonstrating the systems and will have the same opportunity at trial.  Had it developed evidence favorable to its cause, ePlus would not hesitate to use it.  Admissibility should not depend on which side is favored by the evidence.  ePlus fails to refute the evidence that the system demonstration was similar to the system offered and used in the 1990s.  Moreover, these systems are probative on a number of issues that do not require the system to date back to the 1990s, but rather just to 2002 when ePlus alleges infringement began, or before.  The other issues include damages, lack of specific intent to cause infringement, and lack of willfulness.  It would be unfairly prejudicial to exclude the demonstrations, and there is no good reason to do so.

## I.      BACKGROUND

In September and October 2009, Lawson disclosed its legacy systems from the 1990s, known as versions 5.0, 6.0, and 6.1.  Lawson produced procedures manuals, instruction guides, training manuals, conversion manuals, application data, and module release information regarding the systems to ePlus on September 3, 2009.  Original source code for the 5.0 system was produced on October 14, 2009.

On April 5, 2010, ePlus served on Lawson its Fifth Notice of Deposition Pursuant to Rule 3)(b)(6). (Exh. 1.)  The topics of the deposition related to the architecture, operation, and

2

functionality of Lawson's legacy systems as previously disclosed. The deposition notice also included a request for inspection of a "live, fully functional" version of Lawson's legacy system at ePlus's counsel's office.

Lawson sought to accommodate ePlus's request, but ePlus decided to postpone the deposition, originally noticed for April 20, 2010. Lawson pushed ePlus to pick a date, but ePlus dragged its feet for weeks. (Exh. 2.) On May 21, 2010, the parties discussed dates for the Rule 30(b)(6) deposition related to the legacy systems. (Exh. 3.) The parties agreed that ePlus would take Richard Lawson's deposition on May 28, 2010, and Jeff Hvass on June 4, 2010. On May 28, 2010, ePlus requested to move Mr. Hvass' deposition from June 4, 2010 to June 7, 2010. Due to conflicts, the parties agreed to take the deposition on June 8, 2010. On June 2, 2010, ePlus requested that Lawson prepare its witness for additional topics at the deposition related to the configuration and specifications of the systems. (Exh 4.)

Lawson prepared three legacy systems for demonstration and inspection. (Exh. 5.) Because these systems were old, they were decommissioned years prior to the filing of the lawsuit, but contained the foundational components of the accused software. (Exh. 6 at 114, lns. 6-14). Because the systems needed to be set up on legacy hardware systems located at Lawson's headquarters in Saint Paul, Minnesota, Lawson connected to the systems using VPN and tel/net sessions. The use of that connectivity did not alter the functionality of the systems. (*Id.* at 241:9-242:11.)

The first legacy system ran Lawson's 5.0 system. Lawson prepared three variations of that system for ePlus's deposition and inspection. The first of those systems, named "cobdeliv," did not contain any data. (*Id.* at 154:12-156:8.) In that sense, it was configured just like any other Lawson system "out of the box." That system accurately reflected how Lawson's systems

3

are delivered to consumers. Indeed, none of Lawson's systems are provided to customers with data. (*Id.* at 192:10-193:9.) The other two 5.0 systems, named "support" and "cyclical," were exactly the same application as the cobdeliv system, except that they contained data. (*Id.* at 57:13-21.) All three of the 5.0 systems were available in 1991. (*Id.* at 241:2-8.)

Lawson also provided ePlus with the requested demonstrations of Lawson's legacy version 6.0 and 6.1 systems. Lawson's 6.0 system was generally available in 1992-1993. (*Id.* at 21:16-24:6.) The 6.1 system was generally available in 1994. (*Id.* at 24:12-17.) Both existed as beta versions prior to those dates. (Exh. 7 at 18:20-19:6; 70:7-12.) The 6.0 system was set up in a Unix environment. That system was running the 6.0.2 version of Lawson's system. Lawson also set up one version of its 6.1 systems in UNIX and another in an AS/400 environment. The environments did not change the functionality, but merely the look. As discussed below, ePlus deposed Mr. Hvass on the operation of the systems, and had him perform certain functions on the systems during his deposition.

### A. Lawson Provided ePlus a Full and Fair Opportunity to Inspect the Legacy Systems

On June 8, 2010, ePlus deposed Jeffrey Hvass with respect to Lawson's version 5.0, 6.0, and 6.1 legacy systems. (Exh 6.) As ePlus had requested, Lawson provided ePlus the opportunity to inspect each of the six legacy systems provided. (*Id.* at 11:8-12.) The deposition was videotaped. (Exh 8-11.)

Prior to the depositions, Lawson provided to ePlus the source code for its various legacy systems. Lawson produced source code for its 5.0 system, which dates to 1991, in October 2009. In early May 2010, Lawson produced a version of its 6.1 code, which had previously not been located. Lawson produced a second copy of that code, which was from Ciber Technologies, one of Lawson's customers on May 24, 2010. Lawson did not have that code in its own possession,

4

but in response to ePlus requests to have physical access to the system, tracked it down at a customer. ePlus was in possession of the source code prior to the depositions.

ePlus's contentions that it could not operate the systems is one reason why requests for inspection exist. As ePlus acknowledges, Lawson's legacy systems (e.g., Lawson's 5.0, 6.0 and 6.1 applications) operate on legacy hardware (e.g., UNIX and AS/400 servers). (Dkt. No. 256 at 3.) Indeed, ePlus states that the hardware and software to operate the systems was obsolete. (*Id.*) Lawson, however, did have the legacy systems and made them available to ePlus for inspection. There is no basis to ePlus's claims that it did not have an opportunity to view the systems. Any delay in viewing the system arose from ePlus's decision to wait from September of 2009, when Lawson disclosed the existence of the prior system, to April 5, 2010, when ePlus asked for the demonstration of the system. Indeed, ePlus had three attorneys and an expert attending Mr. Hvass's deposition. ePlus had an adequate opportunity to inspect the systems.

### B. Testimony Subject to Cross Examination Showed that The Systems Demonstrated at Jeff Hvass' Deposition Had The Same Functionality That Existed in the Original Systems from the Early 1990s

Jeff Hvass testified that he demonstrated Lawson's 5.0 system in 1991 to potential customers. (Exh. 6 at 240:20-241:4.) He further testified that the 5.0 system that he demonstrated in 1991 has the same functionality as the system he demonstrated during his deposition on June 8, 2010. (*Id.* at 241:5-8.) Mr. Hvass also testified that he demonstrated the 6.0 system in 1992 and 1993. (*Id.* at 240:9-19.) He testified that the 6.0 system that he demonstrated at his June 8, 2010, deposition had the same functionality as the system he demonstrated in 1993. (*Id.* at 240:9-19.) Moreover, Mr. Hvass testified that the functionality of the systems would not have changed if the systems had been inspected in St. Paul, where the hardware and software resided at the time of the deposition. (*Id.* at 241:21-242:11.)

### C. Lawson Notified ePlus that the Legacy Systems Are Relevant on Numerous Grounds in Addition to Invalidity

ePlus improperly attempts to limit the relevance of the demonstrations at issue to that of invalidity. ePlus claims that the systems should be excluded because they do not accurately represent any system that was in public use or on sale prior to August 1994. (Dkt. No. 256 at 12.) ePlus ignores the fact that many weeks ago Lawson made it clear that the systems have relevance not only to invalidity, but to other issues as well, which do not require the system to predate the ePlus patents.

While the demonstrations are certainly relevant to invalidity, they are also relevant on a number of other issues. In April of 2010, when ePlus was dragging its feet on deposing Lawson about the old Lawson systems, Lawson informed ePlus that its legacy systems were relevant for many reasons beyond invalidity. (Exh. 2.) On April 29, 2010, Lawson, in a letter to the Court, detailed that the systems were relevant at least on the issues of damages, lack of intent to infringe, lack of willfulness, alterative and non-infringing technology, and background of the art. (Exh. 12.) On May 7, 2010, Lawson set forth the following grounds on which the systems were probative:

      A. providing background on Lawson's current software
      B. damages
      C. lack of intent to infringe / lack of willfulness
      D. obviousness (the scope and content of the prior art)
      E. alternative and non-infringing technology
      F. rebuttal to ePlus's infringement and damages contentions and expert reports

(Exh. 13.) On May 21, 2010, Lawson again reiterated the relevance of the systems for matters beyond invalidity. (Exh. 3.) Thus, it is no surprise to ePlus that Lawson will use these systems as relevant for all of these reasons.

6

The scope of ePlus's motion is fundamentally tied to the idea that the legacy systems will be used only as pre-1994 prior art. ePlus's position is wrong, and ePlus has known that for a long time.

## II. LAWSON'S DEMONSTRATIONS OF LEGACY SYSTEMS SHOULD NOT BE EXCLUDED

### A. The Legacy Systems are Probative to a Number of Legal Issues, including Damages, Lack of Intent, Lack of Willfulness, the State and Background of the Relevant Industry at the Time of the Alleged Invention, and Invalidity

ePlus incorrectly categorizes the legacy systems as probative solely to the issue of invalidity, and argues that they are not admissible unless Lawson can show the systems date back to 1994. (Dkt. No. 256 at p. 6.) The Legacy systems, however, are highly probative for numerous issues that do not require them to date back that far, including damages, lack of specific intent, lack of willfulness, and the state and background of the relevant industry at the time of the alleged invention. The probative value is much more significant than ePlus admits, and not outweighed by any risk of unfair prejudice. Indeed, excluding the evidence would unfairly prejudice Lawson's right to demonstrate the fundamental functionality of its own prior systems.

#### 1. The Legacy Systems Are Probative on the Issue of Damages

The legacy systems and related demonstrations are relevant to the issue of damages. In particular, the legacy systems are non-infringing alternatives available to Lawson when the purported infringement began in 2002. The similarity of the functional attributes of a legacy system is a relevant factor to consider in assessing non-infringing alternatives. *See Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553, (Fed. Cir. 1997) (holding important the similarity of functional attributes relate to the demand of the product). Furthermore, a non-infringing substitute is "available" for purposes of damages if other facts show the infringer could have

7

manufactured the non-infringing alternative and would have known it would be acceptable to consumers at the time of infringement. *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). While *Grain Processing* relates to lost profits, noninfringing alternatives are also relevant to a reasonable royalty. Georgia Pacific royalty factor Number 9 provides "The utility and advantages of the patent property over the ***old modes or devices***, if any, that had been used for working out similar results." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)(emphasis added).

The prior systems are also relevant to damages because they show that Lawson was commercially successful even without the features that purportedly infringe the patents. Georgia-Pacific royalty factor Number 13 is "the portion of the realizable profit that should be credited to the invention ***as distinguished from non-patented elements***, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F. Supp. at 1120 (emphasis added). ePlus concedes that Lawson's pre-2002 legacy systems had non-patented elements. The success of these prior systems reduced the value of the purported patented features. That is true because the systems were in existence at least prior to 2002 when the purported infringement began. It does not matter whether the systems were also prior art dating back to 1994.

ePlus claims that Lawson's systems starting at version 8.0.3 infringed the patents at issue in this case. (Exh. 14 at ¶ 71.) Lawson's systems prior to version 8.0.3, therefore, are non-infringing alternatives. Jeff Hvass showed at his deposition that each of the prior legacy systems contained purchase order, inventory control, and requisitions modules. (Exh. 8, 10, 11 and Exh. 6 at 243:19-244:4.) These are the core features that Lawson has used in its procurement systems from the early 1990s.

Mr. Hvass testified that these modules continue to operate the current systems. Moreover, the functionality is such that customers could use these systems today. Indeed, Mr. Hvass demonstrated the functionality of a search in the systems. (*See, e.g.*, Exh. 8 at 28, Exh. 10 at 5.) He also demonstrated taking the search to a requisition. (*See, e.g.*, Exh. 10 at 18-22.) Mr. Hvass has personal experience demonstrating these systems dating back to the early 1990s. (Exh. 6 at 19:19-20:7.) This lays adequate foundation for the availability and use of the system in earlier years, regardless of the operating system which was used for the demonstration. Fed. R. Evid. 104; 901(b)(1) (testimony of witness with knowledge may properly authenticate that the system is what it is claimed to be). Those systems are relevant on the issue of damages.

### 2. The Legacy Systems are Probative to Rebut ePlus's Claims of Specific Intent to Cause Infringement and Willfulness

The existence of legacy systems is also relevant on the issues of specific intent and lack of willfulness. In order to be liable for inducement of patent infringement, the plaintiff must prove that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). ePlus also alleges that Lawson willfully infringed, which requires a showing of both objective recklessness and subjective recklessness. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The extent to which the system existed prior to the alleged date of infringement goes to show the lack of specific intent and willfulness. Indeed, the more of the system that existed prior to the time of infringement, the better the proof of good faith.

As Mr. Hvass demonstrated at his deposition, each of the legacy systems had the same fundamental functions or functionality closely related to the functionality that ePlus now accuses

9

of infringement. Lawson's systems used those features well before 2002, and in fact at least to the early to mid 1990s. For example, Lawson's legacy systems contained functionality similar to the UNSPSC codes in the current software which are accused of infringement when they were purportedly added in 2002. (Exh. 6 at 201:5-203:4; 246:2-11; Exh. 8 at 5.) UNSPSC codes use a numbering system to classify hierarchies of products. The legacy systems similarly operated classification fields, which allow the user to input data based on a hierarchy. (*Id.*; see also Exh. 6 at 201:21-203:4.) Because Lawson's legacy systems had that functionality, it would be reasonable for Lawson to add in the UNSPSC codes thinking that functionality did not infringe any patent.

Moreover, the Lawson systems have always been able to electronically upload data, which is also a purportedly-new feature that ePlus relies upon for triggering infringement in 2002. (Exh. 14 at ¶ 71.) Lawson's PO536 and IC811, subroutines in the Lawson system, which ePlus contends are the uploading elements that contribute to Lawson's infringement, existed as PO913 and IC911 in the legacy systems. (Exh. 6 at 204:16-206:14; Exh. 8 at 33-35.) The EDI and Item Master functionality operated the same, including the ability to add customer-chosen fields. (Exh. 6 at 206:15- 208:20; Exh. 8 at 36-37.) There would be no reason for Lawson to believe that its uploading, EDI and Item Master functionality infringed a patent when it had been doing the same function for over 20 years. This functionality goes to the issues of Lawson's lack of specific intent and lack of willfulness.

Lawson's similar, prior systems are very relevant to rebut ePlus's charges of specific intent and willfulness and show instead that Lawson in good faith made minor changes to longstanding, noninfringing products. ePlus unilaterally decided to wait until the close of fact discovery to depose Lawson on these systems, despite Lawson's prodding for an earlier

10

deposition.  ePlus cannot use the fact that it dragged its feet to take the deposition as a way to manufacture artificial prejudice.  In contrast, precluding Lawson from using its legacy systems to show a lack of specific intent and lack of willfulness would be unfairly prejudicial.  This is true regardless of whether the proof shows that the systems predate 1994.

### B.  The Legacy Systems are Authentic

The deponent who demonstrated the Lawson Legacy systems, Mr. Hvass, began working for Lawson as a sales representative on May 2, 1983.  (Exh. 6 at 15:13-19.)  He managed Lawson's presentation of its procurement software, trained Lawson's partners on how to sell, install, and run its systems, and was in the field selling the systems to customers. (*Id.* at 15:13-18:1.)  There is no dispute that Mr. Hvass personally used those systems dating back to 1991. (*Id.* at 96:6-19.)  Mr. Hvass has personal knowledge of the systems, having used them before 1994.  ePlus argues that because Mr. Hvass did not have personal involvement in or knowledge of the *source code* for the Legacy systems, he cannot testify about them at all.

Personal knowledge of source code is not necessary to authenticate Lawson's legacy systems.  "It is not necessary that the computer programmer testify in order to authenticate computer-generated records." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040 (9th Cir. 2009); *Fed. R. Evid. 901(b)(9)*.  Rather, a computer system is properly authenticated on a number of grounds, including where a witness testifies that the matter is what it is claimed to be, describes the distinctive characteristics of the system, or describes the system produces an accurate result.  Fed. R. Evid. 901(b).

One who testifies that a photograph accurately depicts a product does not have to have personal knowledge of the inner workings of a camera.  Similarly, Mr. Hvass's testimony as to what Lawson's legacy systems did does not require knowledge of the source code.

Jeff Hvass properly authenticated the legacy systems at his deposition. He testified regarding the dates of the systems, the hardware on which the systems were running, as well as the modification and compilation dates. Mr. Hvass further confirmed that the functionality of the systems was the same as the functionality of the systems as they existed in the early 1990s. (Exh. 6 at 207:22-208:20; 189:4-191:15.) That testimony was based on his first hand experience demonstrating the systems to potential customers. Mr. Hvass' credibility should be assessed by the jury. It would be improper to exclude the legacy system demonstrations.

### C. The Demonstration of the Systems Is Not Unfairly Prejudicial because It Was and Remains Subject to Cross Examination

ePlus incorrectly contends that the Lawson legacy systems are unfairly prejudicial because they do not accurately depict any system in public use before 1994. (Dkt. No. 256 at 6.) Not only does that contention miss the point that the legacy systems are relevant for more reasons than invalidity, it is incorrect. There is no prejudice where the witness testifying about the system is subject to cross examination. In *Liquid Dynamics Corp. v. Vaughan Co.*, the Court held that a model based on an accused infringer's agitation tank was admissible as evidence of infringement. *449 F.3d 1209, 1221 (Fed. Cir. 2006)*. The model was not an original, but comprised nine representative tanks with various tank sizes and nozzle configurations. *Id.* at 1218. The expert for the party who recreated the model testified that the system "did not exactly match the various accused tanks." *Id.* at 1221. The Court, however, held that while the models were not perfect, they were based on reliable methodology and subject to cross examination. The Court further held that it would not invade the province of the jury by reweighing the expert's testimony. Rather, the Court found a reasonable juror could consider the expert's testimony to infer that the similar accused tanks will produce flow similar to the modeled flow. *See id*.

12

Jeff Hvass was subject to cross examination at his deposition related to the demonstration of the legacy systems. Moreover, any demonstration that Lawson provides related to the legacy systems at trial also will be subject to cross examination. The probative value of those systems, regarding the numerous grounds upon which they are relevant, is not outweighed by any prejudice as to the dates of the hardware used to operate the systems. Excluding the evidence, however, would unfairly prejudice Lawson.

### D. The Legacy Systems Exist in Their Current Forms and Are the Best Evidence

ePlus contends that Mr. Hvass's demonstrations violate the best evidence rule. (Dkt. No. 256 at 9.) The legacy systems, however, are what they purport to be—thus they are the original and the best evidence to show those systems. Fed. R. Evid. 1001(3). Indeed, ePlus recorded the demonstration of the legacy systems as they were being demonstrated. Further, Rule 1003 of the Federal Rules of Evidence provides that "a duplicate is admissible" unless a genuine question is raised as to the authenticity of the original or if it would be unfair to admit the duplicate. Here, Lawson is not offering the systems as a duplicate, but what they are—legacy version 5.0, 6.0, and 6.1 systems.

Not only are they the actual systems, they are the best evidence available—indeed Lawson does not have other versions of the systems provided to customers 15-20 years ago. That there have been compilations of the systems over the years does not change the fact they are the actual systems. ePlus had a chance to cross examine Mr. Hvass at his deposition and will have the same opportunity at trial. ePlus fails to raise a genuine issue as to authenticity. To exclude the evidence, however, would prejudice Lawson. It is for a jury to decide the weight to be given the systems.

Moreover, the Best Evidence Rule does not apply to the demonstrations of the legacy systems in this case to the extent they are used to illustrate a witness's testimony regarding the functionality of the systems. The Notes of the Advisory Committee provide:

> The usual course is for a witness on the stand to identify the photograph or motion picture as a correct representation of events which he saw or of a scene with which he is familiar. In fact he adopts the picture as his testimony, or, in common parlance, uses the picture to illustrate his testimony. Under these circumstances, no effort is made to prove the contents of the picture, and the rule is inapplicable.

Fed. R. Evid. 702 advisory committee's note. As Mr. Hvass did at his deposition and Lawson will do at trial, the demonstration systems illustrate witness testimony regarding the functionality of the legacy systems. The Best Evidence Rule does not apply to the systems used in that capacity.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny ePlus's motion in limine to exclude the demonstration of Lawson's legacy systems. The systems are highly probative for a number of issues, including damages, lack of intent, lack of willfulness, state of the art and background of the relevant industry, and invalidity. Lawson properly laid the foundation and authenticated the systems at deposition and will be able to do so at trial. Any inconsistencies in the dates of the hardware is a subject that ePlus can address on cross examination. Excluding demonstrations of the legacy systems would unfairly prejudice Lawson. ePlus's motion should be denied.

LAWSON SOFTWARE, INC.

By   /s/
      Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

       /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*