IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN OPPOSITION OF MOTION IN LIMINE NO. 6 TO EXCLUDE ALLEGED PRIOR ART THAT DEFENDANT PRODUCED AFTER THE CLOSE OF FACT DISCOVERY**

Defendant Lawson Software, Inc. ("Lawson") respectfully opposes Plaintiff ePlus, Inc.'s ("ePlus") Motion in Limine No. 6 to Exclude Alleged Prior Art that Defendant Produced After the Close of Fact Discovery. At issue are four manuals that were produced from a customer, the Lexington Clinic (not Lawson as ePlus suggests), version 6.1 source code produced by a Lawson partner, Ciber Technologies (again, not Lawson), six documents generated in response to ePlus's request for a deposition related to Lawson's legacy systems, and an updated interrogatory response. No other documents are at issue.

The Court should deny ePlus's request to exclude the specific documents at issue. The manuals and 6.1 source code at issue were not in Lawson's control at the time it responded to discovery, and thus Lawson did not delay in producing them. Rather, a Lawson customer and Lawson partner provided the information as a result of ePlus's requests. Moreover, Lawson had previously produced on May 5, 2010, a version 6.1 source code and materials related to its legacy systems. ePlus was not prejudiced in any way in the production of the documents.

Indeed, ePlus deposed a Lawson witness on each of the documents at issue, and deposed Lawson about a demo of the 6.1 system within a few days after it was produced by the customer.  The documents at issue should not be excluded.

The six documents generated in response to ePlus's request for a deposition regarding Lawson's legacy systems did not exist until ePlus requested them.  Three of the documents related to information that was compiled for ePlus for the deposition.  The other three documents did not exist prior to the deposition, but were generated at ePlus's request during the deposition.  Those documents were all at ePlus's request.  Now that ePlus got what it asked for, it seeks to exclude them.  Undoubtedly, if ePlus thought the documents helped ePlus, they would urge their admission.  Admissibility should not be heads-I-win, tails-you-lose.  There is no prejudice to ePlus, but it would be unfairly prejudicial to Lawson to exclude them.

Furthermore, Lawson updated its response to Interrogatory No. 14 to clarify the response based on ePlus's deposition of Richard Lawson.  Lawson's original response indicated that its requisitions module was initially available at least as early as 1992.  Mr. Lawson clarified that response, stating that the module was available in version 5 dating back to 1991.  Both dates are prior to August of 1993, which is the critical date related to patent validity.  The supplement is not prejudicial and should not be excluded.

**I.     BACKGROUND**

Lawson fully complied with ePlus's discovery requests.  In September and October 2009, Lawson disclosed its legacy systems from the 1990s, known as versions 5.0, 6.0, and 6.1. Lawson produced procedures manuals, instruction guides, training manuals, conversion manuals, application data, and module release information regarding the systems to ePlus on September 3, 2009.  Original source code for the 5.0 system was produced on October 14, 2009.  ePlus was on

notice that Lawson intended to rely on those systems for a variety of issues, including damages, lack of intent to infringe, lack of willfulness, and lack of infringement.

The four manuals and one version of source code at issue in this motion should not be excluded. Contrary to ePlus's contentions, those documents came from third parties—Lawson did not possess or control those documents and was justified to supplement its production within one day of when those third parties provided the documents. The documents produced at the Hvass deposition were generated at ePlus's request in connection with that deposition.

### A. Lawson Properly Responded to ePlus's Discovery Requests

Lawson properly responded to ePlus's discovery requests related to its legacy systems. Indeed, Lawson produced 84 manuals that related to Lawson's 5, 6, and 6.1 systems. (Exh. 1.) Those systems date to at least as early as 1991(5.0), 1992(6.0), and 1994 (6.1). (Exh. 2 at 241:2-8; 21:16-24:6; 24:12-17.) Eighty-one of those documents were produced on September 3, 2009. The three remaining documents were produced on May 10, 2010. Further, Lawson produced source code related to its legacy systems on September 17, 2009, September 25, 2009, October 14, 2009, and May 5, 2010. The source code for Lawson's version 6.1, which is the same version at issue in this motion, was produced on May 5, 2010, within the discovery period.

ePlus admits that Lawson disclosed the legacy systems months ago. (Dkt. No. 266 at 5.) Lawson identified "Lawson Software" in interrogatory answers related to prior art on August 24, 2009. (*See* ePlus's Appendix of Exhibits to Motions in Limine filed on 06/18/10, Ex. Z at 13-14.) Lawson's December 8, 2009, invalidity allegations further asserted Lawson software available prior to August 10, 1994 as prior art. (*Id.*, Ex. AA at 1.) Moreover, ePlus acknowledges that it had the documentation related to version 6.1. (Dkt. No. 266 at 910).

3

### B. The Documents and Source Code at Issue Relate to Decommissioned Documents not in Lawson's Possession or Control and Documents Generated for ePlus the Day ePlus First Requested Them

The four product manuals and single version of Lawson legacy source code at issue in this motion relate to versions of Lawson's systems that were decommissioned years prior to the filing of this lawsuit. (Exh. 2 at 114, lns. 6-14). While Lawson fully complied with its discovery obligations and produced the documents it had within its possession and control, there were certain old documents that Lawson no longer maintained. Lawson produced what it had.

In order to accommodate ePlus's requests, Lawson sought to find that information from third parties, including its vendors and customers.

#### 1. Lawson Quickly Produced The Legacy Manuals at Issue After they Were Received from Customer Lexington Clinic

On April 5, 2010, ePlus served its Fifth Notice of 30(b)(6) Deposition on Lawson. The Notice included a request to inspect Lawson's version 6.0 legacy system. Lawson informed ePlus that Lawson did not maintain such a system, but that it would try to accommodate the request and find a system. Lawson began contacting its customers and vendors to determine if they had any operational legacy systems.

In April 2010, Lawson spoke with representatives from the Lexington Clinic regarding Lawson's legacy systems. The Lexington Clinic had been a Lawson customer dating back to the 1980s. While the Lexington Clinic did not have the code for a version 6.0 system, it did have documentation relating to older versions 4 and 5 of Lawson's procurement system. On May 19, 2010, Lexington Clinic provided to Lawson four documents related to legacy systems. Lawson produced the following documents to ePlus the next day, on May 20, 2010:

- Lawson Associates Inc. Pinstripe Products, Accounts Payable System, Unisys – User Guide, Release 4.0 (Dec. 1, 1987) (Exh. 3.)

- Pinstripe Systems Security System Release 4.0, UNISYS/Burroughs (Jan. 27, 1989) (Exh. 4.)
- Pinpoint Products Purchase Order System Tutorial, Release 5.0, COBOL (Feb. 7, 1990) (Exh. 5.)
- Lawson Payroll System User Guide, COBOL – 5.0 (Apr. 15, 1992 (Exh. 6.)

(Dkt. No. 266 at 2.) ePlus claims those documents should have been produced earlier because they were within Lawson's control. (Dkt. No. 265 at 1.) Contrary to ePlus's contentions, the documents were not in Lawson's control. Rather, those documents, which bear the Bates number starting with "LC," were produced by the Lexington Clinic. ePlus further claims that "Lawson had never before identified these documents either in its invalidity contentions, its expert reports, or elsewhere." (Dkt. No. 266 at 5.) That is understandably true, as Lawson had no possession or knowledge of them. But that is no grounds to exclude them. Delay and good faith are not issues here.

There was no prejudice to ePlus in receiving the documents two days after the discovery period closed. The late production was largely of ePlus' own making, and its deferral of depositions gave it plenty of opportunity to inquire about the new materials. ePlus had chosen to delay its deposition related to the legacy system, originally noticed in early April. On April 14, 2010, Lawson informed ePlus that it would produce a witness to provide demonstrations of Lawson's systems on April 20, 2010, in response to ePlus's deposition notice related to the legacy systems. (Exh 7.) ePlus did not respond to Lawson's correspondence for weeks, as the discovery close loomed. On April 28, 2010, Lawson again contacted ePlus regarding the deposition. (Exh. 8.) Again, ePlus did not respond. In May, ePlus finally proposed dates to depose Lawson's witnesses related to the legacy system. ePlus sought an agreement to take the depositions after fact discovery closed, and Lawson agreed. The deposition was taken over two

days, on May 28, 2010, and June 8, 2010. ePlus had the opportunity to review the four manuals and inquire about them at the depositions. There was no delay and no prejudice.

### 2. The 6.1 Source Code Produced on May 24, 2010, was from Ciber

In mid May, 2010, Lawson learned that Ciber, one of Lawson's vendors, had a working copy of Lawson's 6.1 system. Lawson had previously produced the 6.1 source code on May 5, 2010. On May 24, 2010, Lawson produced the Ciber version of the source code to ePlus. Lawson provided to ePlus the instructions to compile the code to operate the Ciber 6.1 system. Moreover, Lawson informed ePlus that it would demonstrate the system set up on its legacy hardware in connection with the upcoming deposition ePlus was taking. That ePlus did not have the technical expertise to operate the system has no bearing on whether the source code was properly produced. Moreover, any issues related to viewing the system were resolved when Lawson demonstrated the system for ePlus, under oath, at a deposition.

### 3. Lawson Supplemented Its Interrogatory Response When the Deponent on the Legacy Software Provided Testimony that Clarified Lawson's Original Response

On May 28, 2010, ePlus deposed Richard Lawson. Mr. Lawson was designated to testify related to the release dates of Lawson's legacy systems. Mr. Lawson testified that Lawson's version 5 system contained an inventory control module, a purchase order module, and a requisitions module. (Exh. 9 at 38:7-39:18.) He further testified that the version 5 system was available in 1990. (*Id.* at 16:5-15; 27:2-12.) The deposition clarified Lawson's response to Interrogatory No. 14 regarding the release dates of its legacy systems.

Lawson's initial response provided that the requisitions module was available at least as early as 1992. On June 4, 2010, Lawson supplemented its response to Interrogatory No. 14 based on the testimony of Richard Lawson to show that the module was available at least as

early as 1991.[1]  The supplementation did not change the fact that Lawson's requisitions module existed more than one year prior to August 1994, the critical date for certain kinds of prior art under 35 U.S.C. §102.  Thus, the change in date was consistent with the prior answer, and did not change the status of the system as prior art.  Moreover, Lawson had produced to ePlus the 5.0 source code in October of 2009, which contained the requisitions module.

### 4. Lawson Provided to ePlus Documents Related to the Demonstration of the Legacy System the Same Day ePlus Requested the Documents

On June 2, 2010, pursuant to its April 5, 2010 notice, ePlus finally confirmed via letter that it would depose Jeff Hvass relating to Lawson's legacy systems.  (Exh. 10.)  That letter requested that Mr. Hvass be prepared to discuss six categories of information not spelled out in the original Notice of Deposition.  The categories requested specific and detailed information, including the specifications of the software and hardware and the configurations of the systems.  In order to have the requested information available, Mr. Hvass prepared a six-page document that detailed the specifications of the system.  (Exh. 11.)

Because the witness would not have been able to recall the highly technical system configurations ePlus requested, Lawson provided the document to ePlus at the outset of the deposition.  Lawson also provided to ePlus an email from Bob Geiger, a Lawson systems engineer, that contained screen shots of the configuration setup for the version 6.1 legacy system.  (Exh. 12.)  Mr. Hvass and ePlus relied on the documents throughout the deposition.  The documents were prepared in preparation of the deposition and did not exist before ePlus's June 2, 2010, letter.

During the June 8, 2010, deposition, ePlus questioned the witness about additional configurations of the legacy systems.  While the witness was prepared to discuss the topics

---

[1] The software was generally available in 1991, but was in beta and otherwise available in 1990.

outlined in the Notice of Deposition and ePlus's June 2, 2010, letter, he did not have the specific information requested. To accommodate ePlus, the witness contacted Roger Shimada and Bob Geiger, Lawson software engineers, to obtain the requested information. Lawson generated that information, which did not previously exist nor had it been previously requested, and produced it during the deposition. (Exh 13, 14, 15.) The first document was a series of screen shots showing the configuration of the operating system and hardware configuration related to the legacy systems. Three additional documents related to the compilation dates of the legacy systems. None of that information existed in the requested format prior to the deposition. Indeed, Mr. Shimada ran a shell script to generate the lists from the code that was operating the demonstration systems. The information was produced in response to specific questions lodged at the deposition. ePlus had the opportunity to review the documents and question the witness regarding those documents.

  **C. ePlus Incorrectly Categorizes the Documents as Relevant Solely to the Issue of Validity—The Documents Are Relevant on Numerous Grounds**

  ePlus improperly limits the relevance of the documents at issue to invalidity. Lawson has long said the systems have relevance not only to invalidity, but to other issues as well, which do not require the system to predate the ePlus patents. In April of 2010, Lawson informed ePlus that its legacy systems were relevant for many reasons beyond invalidity. (Exh. 7.) On April 29, 2010, Lawson, in a letter to the Court, detailing that the systems were relevant at least on the issues of damages, lack of intent to infringe, lack of willfulness, alterative and non-infringing technology, and background of the art. (Exh. 16.) On May 7, 2010, Lawson set forth the following grounds on which the systems were probative:

  A. providing background on Lawson's current software
  B. damages
  C. lack of intent to infringe / lack of willfulness
  D. obviousness (the scope and content of the prior art)
  E. alternative and non-infringing technology
  F. rebuttal to ePlus's infringement and damages contentions and expert reports

(Exh. 17.) On May 21, 2010, Lawson again reiterated the relevance of the systems for matters beyond invalidity. (Exh. 18.) Thus, it is no surprise to ePlus that Lawson will use these systems as relevant for any or all of these reasons.

## II. DISCUSSION

Lawson fully complied with its discovery obligation in producing documents responsive to ePlus's discovery requests. The documents at issue in this motion were from third parties or were timely generated in response to ePlus's requests. ePlus's motion to exclude these documents or testimony related to these documents should be denied.

### A. Lawson's Production of the Lexington and Ciber Documents at Issue Was Timely, Because Lawson Produced them Within Days After It First Had Possession of Them

Lawson promptly produced the documents obtained from third parties Lexington and Ciber and should be allowed to use this information. In *Cadle Col. V. Parks-Matos*, the Court held that the producing party complied with the discovery order despite its production of documents from third parties after the discovery deadline. 267 Fed. Appx. 884, 887 (11th Cir. 2008). Because the documents were not in the producer's control and because no injury resulted from the late production, the Court held that Cadle "had not shown that the Debtor's refused to obey or simply ignored the August 8th order." *Id*. It is only where the producing party discovers or acquires responsive documents that a supplementation is necessary. *Gipson v. Southwestern Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 25457 (D. Kan. Mar. 24, 2009) (holding that a party who

9

later discovery responsive documents shall serve a supplemental response related to the new information). Here, Lawson timely (within days of receipt) produced third party documents, and should not be barred from using them.

### 1. Lawson's Production of Four Manuals From Lexington Clinic and Documents Regarding Ciber's 6.1 System Was Timely

Lawson first produced the manuals and documentation in its possession related to its legacy systems in September of 2009. In order to accommodate ePlus's request to have an inspection of a functioning legacy system, however, Lawson approached customers to locate the requested systems. During that process, while looking for other documentation, Lawson found that the Lexington Clinic had four manuals related to Lawson's older version 4.0 and 5.0 systems. Within a day of receipt from the Lexington Clinic, Lawson produced the documents to ePlus. Lawson timely supplemented the documents when it came into possession of those documents.

Ciber Technologies, a Lawson partner, had an operational 6.1 system. Ciber provided the code to Lawson and Lawson produced that code to ePlus on May 24, 2010. The Ciber 6.1 code is the same version of the Lawson legacy system Lawson previously produced on May 5, 2010. The production of the Ciber system did not prejudice ePlus. ePlus had the opportunity to depose Lawson regarding the functionality of the 6.1 system provided by Ciber.

ePlus was not prejudiced by the timely supplementation. Lawson produced the information as soon as it received it from third parties. ePlus deposed Lawson regarding the legacy systems and has had a full opportunity to cross-examine. The documents should not be excluded from evidence.

### 2. Lawson's Production of Documents Newly Generated Per ePlus's Request at Jeff Hvass' Deposition was Timely

The documents produced at Jeff Hvass' deposition were timely produced based on ePlus's requests. Specifically for purposes of ePlus's deposition, Lawson created a six-page document that identified the setup and configurations of each of the demonstration systems. (Exh. 11.) That document contained specifications and connectivity information that was meant to aid the witness in providing ePlus the information it requested in its June 2, 2010, letter. (Exh. 10.) The second document contained screen shots of the configuration setup of the 6.1 legacy system. (Exh. 12.) Again, that document was prepared in response to ePlus's June 2, 2010, letter.

The four remaining documents at issue were generated by Lawson during the June 8, 2010, deposition. The first document contained screen shots of the configuration setup. (Exh. 19.) The other documents were generated from a shell script to detail the modification dates of the data in the systems. (Exh. 13, 14, 15.) Those documents did not exist prior to ePlus's request for the documents, and were timely produced. ePlus had an opportunity to review the documents and ask questions related to the documents. There was no prejudice. Those documents should not be excluded.

### 3. Lawson's Supplementation of Its Interrogatory Response Was Proper and Non-Prejudicial

Lawson's original response to Interrogatory No. 14, served on August 24, 2009, provided that the Requisitions Module was originally released as Version 6 at least as early as 1992, and was conceived and reduced to practice sometime before that date. During the deposition of Richard Lawson on May 28, 2010, Lawson identified the fact that the Requisitions Module had been a part of version 5.0, which was available at least as early as 1990 in beta forms and

11

generally available by 1991. Both of the dates are prior to August of 1993.

Lawson timely supplemented its response based on the deposition testimony of Mr. Lawson. Further, ePlus was not prejudiced by the supplementation because Lawson had provided to ePlus the source code for the 5.0 system. Moreover, documents Lawson produced show that Lawson's 5.0 system had requisitions. (Exh. 25.) The supplementation was not a "Reversal" as ePlus depicts it, because the original answer, consistent with the supplementation, provided that the date was "at least as early as 1992." Both dates are early enough to be prior art, so the change is of marginal importance in any event.

### B. The Ciber 6.1 Source Code Should Not be Excluded Because it was Produced to ePlus in the Identical Manner in Which Lawson Received it From Ciber

Lawson produced the 6.1 code from Ciber in the identical manner in which it was provided from Ciber. The Federal Rules of Civil Procedure provide that electronically stored information should be produced in the form which it is ordinarily maintained or in a reasonable usable form or forms. ePlus seems to acknowledge this option. (Dkt. No. 266 at 8.) ePlus claims this option is not available to Lawson, but gives no good reason why.

ePlus relies on *N. Natural Gas* to support its position that the Ciber 6.1 source code was required to be produced a reasonably usable form. (Dkt. No. 266 at 7.) That case, however, held that Rule 34(a) requires the responding party to produce *documents* "as they are kept in the usual course of business." *N. Natural Gas Co. v. TEKSystems Global Applications, Outsourcing, LLC*, 2006 U.S. Dist. LEXIS 64149, at *7 (D. Neb. Sept. 6, 2006). Further, the Court stated the producing party must provide the receiving party the same access to the software. *Id.* at *10. The case relates to electronic discovery, not production of computer software for systems that are over 10 years old.

Lawson gave ePlus the same access to the source code that it had. Indeed, Lawson produced the source code in the same manner in which Lawson received it. Lawson, contrary to ePlus's contentions, also provided ePlus instructions to open the system. Indeed, Lawson provided the same instructions that Ciber provided to Lawson in order to compile the software. (Exh. 20.) Moreover, ePlus unfairly alleges that Lawson had "more than nine months" to notify ePlus of the form of the code (Dkt. No. 266 at 9), knowing full well that Lawson did not get the code until days before it produced the code to ePlus.

Moreover, ePlus's contention that the system cannot be opened on a modern computer is no basis to exclude the Ciber 6.1 source code. ePlus contends "to require ePlus to have a mainframe computer from the mid-1990s in order to do any evaluation of the Lawson Release 6.1 source code is entirely unreasonable." (Dkt. No. 266 at 8.) ePlus's position is without merit. The system only runs on legacy systems. That is the nature of an old computer system. To accommodate ePlus, Lawson set up the system on its legacy hardware and produced a witness to operate the system for ePlus. ePlus had the opportunity to view the functionality of the 6.1 system and cross-examine a witness about it. No rule precludes the use of the code at trial, and ePlus will not be prejudiced by its use.

### C. The 6.1 Source Code is Relevant to Issues Other than Invalidity, Including Damages, Lack of Intent, Lack of Willfulness, and The State or Background of the Industry

ePlus incorrectly categorizes the 6.1 source code as relevant solely to the issue of invalidity. (Dkt. No. 266 at 2-4.) The 6.1 Legacy system, however, is highly probative for numerous issues that do not require them to date back that far, including damages, lack of specific intent, and lack of willfulness. The probative value is much more significant than ePlus admits, and not outweighed by any risk of unfair prejudice. Indeed, excluding the evidence

would unfairly prejudice Lawson's right to demonstrate the fundamental functionality of its own prior systems.

### 1. The Legacy Systems Are Probative on the Issue of Damages

The 6.1 legacy system is relevant to the issue of damages. In particular, the system is a non-infringing alternative that was available to Lawson when the purported infringement began in 2002. The similarity of the functional attributes of a legacy system is a relevant factor to consider in assessing non-infringing alternatives. *See Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553, (Fed. Cir. 1997) (holding important the similarity of functional attributes related to the demand of the product). Furthermore, a non-infringing substitute is "available" for purposes of damages if other facts show the infringer could have manufactured the non-infringing alternative and would have known it would be acceptable to consumers at the time of infringement. *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). While *Grain Processing* relates to lost profits, noninfringing alternatives are also relevant to a reasonable royalty. Georgia Pacific royalty factor Number 9 provides "The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

The 6.1 system is also relevant to damages because they show that Lawson was commercially successful even without the features that purportedly infringe the patents. Georgia-Pacific royalty factor Number 13 is "the portion of the realizable profit that should be credited to the invention *as distinguished from non-patented elements*, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F. Supp. at 1120 (emphasis added). ePlus concedes that Lawson's legacy

systems had non-patented elements. The success of the Lawson 6.1 system reduced the value of the purported patented features. That is true because the system was in existence at least prior to 2002 when the purported infringement began. It does not matter whether the system was also prior art dating back to 1994. Moreover, the clear and convincing evidence burden applies only to invalidity, not to non-infringing alternatives.

ePlus claims that Lawson's systems starting at version 8.0.3 infringed the patents at issue in this case. (Exh. 21 at ¶ 71.) Lawson's systems prior to version 8.0.3, therefore, are non-infringing alternatives. Lawson showed at the deposition and inspection of the 6.1 system that the 6.1 system included purchase order, inventory control, and requisitions modules. (Exh. 22 and Exh. 9 at 243:19-244:4.) These are the core features that Lawson has used in its procurement systems from the early 1990s.

Mr. Hvass testified that these modules continue to operate the current systems. Moreover, the functionality is such that customers could use these systems today. The 6.1 system is relevant on the issue of damages.

### 2. The 6.1 Legacy System is Probative to Rebut ePlus's Claims of Specific Intent to Cause Infringement and Willfulness

The existence of the 6.1 legacy system is also relevant on the issues of specific intent and lack of willfulness. In order to be liable for inducement of patent infringement, the plaintiff must prove that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (holding proof of willful infringement requires at least a showing of objective recklessness). The extent to which the system existed

prior to the alleged date of infringement goes to show the lack of specific intent and willfulness. Indeed, the more of the system that existed prior to the time of infringement, the better the proof of good faith.

As shown at the inspection, the 6.1 system had the same fundamental functions or functionality closely related to the functionality that ePlus now accuses of infringement. (Exh. 22, 23, 24 and Exh. 9 at 243:19-20:4.) Lawson's systems used those features well before 2002, and in fact at least to the early to mid 1990s. For example, Lawson's 6.1 legacy system contained functionality similar to the UNSPSC codes in the current software which are accused of infringement when they were purportedly added in 2002. (Exh. 9 at 201:5-203:4; 246:2-11; 243:19-20:4.) UNSPSC codes use a numbering system to classify hierarchies of products. The legacy systems similarly operated classification fields, which allow the user to input data based on a hierarchy. (*Id.*; see also 201:21-203:4.) Because Lawson's 6.1 legacy system had that functionality, it would be reasonable for Lawson to add in the UNSPSC codes thinking that functionality did not infringe any patent.

Moreover, the Lawson systems, including version 6.1, were long able to electronically upload data, which is also a purportedly-new feature that ePlus relies upon for triggering infringement in 2002. (Exh. 21 at ¶ 71.) Lawson's PO536 and IC811, subroutines in the Lawson system, which ePlus contends are the uploading elements that contribute to Lawson's infringement, existed as PO913 and IC911 in the legacy systems. (Exh. 9 at 204:16-206:14; Exh. 23 at 33-35; Exh. 9 at 243:19-20:4.) The EDI and Item Master functionality operated the same, including the ability to add customer-chosen fields. (Exh. 9 at 206:15- 208:20; 243:19-244:4.) There would be no reason for Lawson to believe that its uploading, EDI and Item Master functionality infringed a patent when it had been doing the same function for over 20 years. This

functionality goes to the issues of Lawson's lack of specific intent and lack of willfulness.

Lawson's similar, prior version 6.1 system is very relevant to rebut ePlus's charges of specific intent and willfulness and show instead that Lawson in good faith made minor changes to longstanding, noninfringing products. Precluding Lawson from using its legacy systems to show a lack of specific intent and lack of willfulness would be unfairly prejudicial. This is true regardless of whether the proof shows that the systems predate 1994. The 6.1 source code is relevant to issues other than invalidity. It should not be excluded.

### III. CONCLUSION

ePlus waited years to sue Lawson for infringement, alleging infringement began in 2002 based on patents filed in 1994. It should be no surprise that its delay means relevant older computer systems may run on older formats. Lawson produced this third-party code as soon as it got it, and ran a demo for ePlus within a few days after that, with a deponent who testified under oath. The production was handled exactly as it should be. Other documents were also promptly produced after they were obtained from third parties or newly generated at ePlus's request.

For the foregoing reasons, this Court should deny ePlus's motion in limine to exclude four documents produced by Lexington Clinic, the 6.1 system provided by Ciber, and the documents produced in response to ePlus's requests at the 30(b)(6) deposition of Jeff Hvass. ePlus's motion was limited to those specific documents and should not be construed to go beyond that request. Because those documents were justifiably produced, there is no basis to exclude them from trial. Further, the Court should deny ePlus's request to exclude the supplemental response to Interrogatory 14.

LAWSON SOFTWARE, INC.

By /s/
      Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 2nd day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

        /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*