IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN OPPOSITION OF MOTION *IN LIMINE* NO. 7 TO EXCLUDE CERTAIN EXPERT OPINIONS OF PHILIP GREEN**

Defendant Lawson Software, Inc. ("Lawson") respectfully opposes Plaintiff ePlus, Inc.'s ("ePlus") Motion in Limine No. 7 to Exclude Expert Opinions of Philip Green. ePlus seeks to preclude Mr. Green from testifying about three things: (1) Lawson's previous systems; (2) non-infringing alternatives that were available at the time of the hypothetical negotiation; and (3) Lawson's technology acquisition agreements. ePlus argues that Mr. Green cannot testify about Lawson's previous systems or non-infringing alternatives because he is not a technical expert. ePlus also asserts that Lawson's technology acquisition agreements are not relevant to this case.

ePlus is correct that Mr. Green is being offered as a damages expert, not a technical expert. But he is entitled as a damages expert—and, indeed, required—to rely on the evidence presented in this case and at trial that support his opinion. Thus, he can rely on evidence, including the testimony of others regarding non-infringing alternatives and Lawson's previous systems that are clearly relevant to damages and a reasonable royalty, without himself being an expert on those issues. Mr. Green's report makes it clear that he properly relied on the testimony

of technical witnesses and documents to show the existence of non-infringing alternatives. In addition, Lawson's technology acquisition agreements are relevant to Mr. Green's opinions about the form a typical license agreement takes in the technology at issue in this case. Mr. Green should be permitted to testify regarding the technology acquisition agreements as well.

I.     **BACKGROUND**

At trial, Lawson will rely on fact and expert witnesses and documents to discuss the prior art systems, validity, and infringement. These witnesses may include Lawson employees and former employees (such as Dale Christopherson, Henrik Billgren, Todd Dooner, Jeff Hvass, and Richard Lawson), as well as third party witnesses (such as Preston Staats, Al Jacobs, Jesus Ramos, Laurene Fielder, Jerry O'Connell, Charles Gounaris, Pamela Eng), and Lawson's technical expert, Dr. Michael Shamos. In addition, Lawson will rely on Mr. Green as an expert witness regarding damages.

Both experts agree that the *Georgia-Pacific* factors guide the royalty determination. In Mr. Green's analysis of *Georgia-Pacific* factor number nine ("the utility and advantages of the patent property **over older modes or devices**, if any, that had been used for working out similar results and the nature of the patented invention"), Mr. Green discusses Lawson's previous systems and prior art systems. (Exh. 1, at 32-36 (emphasis added).) In discussing Lawson's previous systems, Mr. Green does not reach his own technical opinions, but rather relies on both Lawson documents and the testimony of witnesses including Richard Lawson, a founder of defendant Lawson. (*See id.* at 10-11.)

In discussing non-infringing alternatives that were available at the time of the hypothetical negotiation, Mr. Green also relies on prior art devices cited and acknowledged by the U.S. Patent and Trademark Office ("PTO") to be prior art in the reexaminations that have

2

been filed on the patents-in-suit. (*See id.* at 35-36 and Exhibit A at 1.) Mr. Green thus properly does not rely on his own technical expertise. Mr. Green's report also cites the depositions of fact witnesses with technical expertise (Mr. Lawson, Mr. Billgren, Mr. Christopherson, *etc*.) who testified regarding Lawson systems that predate 2002 and are not accused of infringement.

In his analysis of *Georgia-Pacific* factor number two (the rates paid by the licensee for the use of other patents comparable to the patent in suit), Mr. Green discusses six of Lawson's technology acquisitions to establish Lawson's course of conduct during the relevant time period. (*Id.* at 25-26.) Specifically, he discusses Lawson's acquisitions of Account4, Keyola, Armature, Numbercraft, ClosedLoop, and Apexion. (*Id.*) In support of this discussion, Mr. Green relies on Lawson's 10-K, Lawson's acquisition history, and publicly available information. (*Id.*) He relies on those agreements to show (1) Lawson's actual course of conduct at the time was to either internally develop or purchase technology, rather than pay running royalties as asserted in the plaintiff's damages analysis, and (2) that a typical license in Lawson's experience is not based on services revenue.

## II. DISCUSSION

### A. Mr. Green's Discussion of Lawson's Previous Systems and Non-Infringing Alternatives is Relevant to the *Georgia-Pacific* Factors and is Based on the Evidence in this Case.

Under Federal Rule of Evidence 702, an expert may testify if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Rule 703 of the Federal Rule of Evidence identifies the information an expert may consider in reaching an opinion. The facts or data upon which an expert may rely include those "made known to the expert at or before the hearing." Fed. R. Evid. 703.

3

An expert has "wide latitude to offer opinions, including those that are not based on first hand knowledge." *Monsanto v. David*, 516 F.3d 1009, 1015-16 (Fed. Cir. 2008). *See generally Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 442-43 (D. Del. 2007) (finding defendant's patent damages expert could rely on hearsay under Rule 703 in support of his analysis of a hypothetical negotiation).

Strong support for allowing Mr. Green's testimony is found in *Micro Chem., Inc. v. Lextron, Inc.*, where the Federal Circuit considered whether a damages expert's testimony on prior systems could be admitted. 317 F.3d 1387, 1392 (Fed. Cir. 2003). In that case, the defendants sought to preclude the plaintiff's damages expert from testifying that the defendants' modified systems could not be considered non-infringing alternatives for purposes of determining the amount of damages. *Id.* at 1390. The defendants also sought to preclude the plaintiff's damages expert from testifying because, according to defendants, the testimony did not comport with Rule 702. *Id.* The district court refused to limit the expert's testimony, and the Federal Circuit affirmed. *Id.* at 1392-93.

Among other things, the court explained that the plaintiff's expert properly opined on the *Georgia-Pacific* factor nine—"the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"—when he testified that the defendants' modified systems were not "available" because they did not exist and, in his opinion, the evidence did not show they would have been acceptable to feedlots. *Id.* at 1393-94. The court concluded that the expert's testimony "was not legally erroneous; it was merely based on Micro Chemical's version of the disputed facts." *Id.* at 1394. *See also United States Gypsum Co. v. Lafarge N. Am.*, 670 F. Supp. 2d 737, 747 (N.D. Ill. 2009) ("Like Plaintiff's own damages expert, Peterson [defendant LaFarge's damages expert] is working from a set of assumptions and

factual underpinnings, some of which must be determined by the trier of fact. The scope of Lafarge's reliance on USG technology is one of the facts that the parties dispute and that must be proved at trial.").

Similarly, Mr. Green is not being offered to provide independent expert or factual opinion on technical issues. Instead, he is being offered as a damages expert who bases his testimony on facts provided by others, some of which may or may not be disputed. In his role as a damages expert, though, he can and should rely on technical evidence to support his opinion. In connection with his opinion on damages in this case, Mr. Green discusses the same *Georgia-Pacific* factor at issue in *Micro Chem*—the utility and advantages of the patent property over older modes or devices, if any, that had been used for working out similar results and the nature of the patented invention. ePlus's expert agrees that the proper methodology for determining a reasonable royalty should include assessment of this factor.

ePlus does not dispute that Mr. Green is a qualified damages expert or that he used reliable principles and methods, namely the *Georgia-Pacific* factors, in developing his opinion. Nor does ePlus dispute that the information Mr. Green relies on is relevant to his analysis. Instead, ePlus asserts that Mr. Green's testimony on Lawson's prior systems and other prior art is not admissible under Rule 702 because he is not a technical expert. Presumably, ePlus would also argue that a technical expert could not give opinions on damages because she or he is not a financial expert. This would leave the jury with no expert assistance at all. However, one expert need not be an expert on every issue in the case in order to assist the jury.

ePlus appears to argue that Mr. Green cannot rely on the facts in evidence unless he discusses them with Dr. Shamos, Lawson's invalidity and noninfringement expert. This is not the law, and ePlus provides no support for this novel proposition. In his report, Mr. Green cites

and relies on a variety of evidence in support of his understanding regarding Lawson's previous systems and non-infringing alternatives, including documents cited by Dr. Shamos. (*See, e.g.*, Exh. 2 at 12-13 ¶¶ 35-36 (citing Request for Reexamination of U.S. Patent No. 6,055,516); Exh. 1 at Exhibit A at 1 (same).)  He confirmed at his deposition that this evidence is consistent with what Dr. Shamos says in his expert reports in this case.  (Exh. 3 at 136:19-21.)

Mr. Green *also* relies, for example, on the testimony of Richard Lawson, the founder of defendant Lawson, to support his understanding of the Lawson's previous systems.  (Exh. 1 at 10-11, 32-36.)  This is well within the realm of the kind of evidence damages experts can consider.  *See Monsanto*, 516 F.3d at 1015-16 (allowing plaintiff's experts to rely on seed report tests that were produced by plaintiff's employees); *Inline Connection*, 470 F. Supp. 2d at 442-43 (allowing defendant's experts to rely on hearsay interviews with defendant's employees and third parties even though defendants never identified the individuals who provided the information). Mr. Green properly bases his damages opinion on his understanding of Lawson's previous systems—an understanding ePlus has not challenged as erroneous.

Mr. Green also relies on the Request for Ex Parte Reexamination of U.S. Patent No. 6,055,516 that Lawson filed to support his understanding of the non-infringing alternatives that were available at and before the time of the hypothetical negotiation.  Mr. Green and the reexaminations cite prior art systems that ePlus does not contend infringe, and which provide comparable functionality to the claimed invention without the need to pay a royalty.  (*See Id.* at 35-36 and Exhibit A at 1; *see also* Exh. 2 at 140:22-25.)  In his deposition, he confirmed that this understanding also was consistent with and further supported by the expert reports Dr. Shamos filed in this case.  (Exh. 2 at 136:19-21.)  Again, Mr. Green is not being offered as a fact or technical expert witness on non-infringing alternatives.  Instead, he is offering his damages

6

opinion based on an understanding of non-infringing alternatives.

There appears to be no dispute in this case that an expert can and must rely on factual evidence provided through documents and testimony in support of his or her analysis. There can also be no dispute that Mr. Green did exactly that. At trial, Lawson will present evidence regarding Lawson's previous systems and non-infringing alternatives in the form of fact and technical witness and documentary evidence. It will be up to the jury to decide what version of any disputed facts it believes—Lawson's or ePlus's. *See Micro Chem.*, 317 F.3d at 1394; *United States Gypsum Co.*, 670 F. Supp. 2d at 747. Mr. Green is not being offered as a fact or technical expert witness on Lawson's prior systems or non-infringing alternatives, and for this reason there is no reason to exclude his testimony on these issues under Rule 702.

      B.      <u>Mr. Green may rely on Lawson's Technology Acquisition Agreements for the Purposes Listed.</u>

Courts have recognized that the parties' course of conduct is relevant when considering the form of a license that would be entered through a hypothetical negotiation in evaluating the amount of a reasonable royalty. *See, e.g.*, *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561-63 (Fed. Cir. 1983) (noting that "notably absent from [the court's] findings is any consideration of the actual negotiations between the parties" and pointing out that defendant's experts testified that "the food processing industry did not, to their knowledge, utilize use royalties in connection with machines for producing food"); *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1368 (D. Del. 1994) ("The Court also finds that the parties' conduct in their actual negotiations is relevant to what their conduct would be in the hypothetical negotiation.").

In discussing *Georgia-Pacific* factor number two—the rates paid by the licensee for the use of other patents comparable to the patent in suit—Mr. Green discusses six of Lawson's technology acquisitions to establish Lawson's course of conduct during the relevant time period.

(Exh. 1 at 25-26.) Acknowledging the differences as well as similarities, he explains that "[t]hese agreements, while not directly comparable to a bare license because they include more than just a license to intellectual property rights, provide guidance as to the structure and terms that Lawson had negotiated." (*Id.* at 25.) He does not rely on the financial terms of these agreements to support a specific royalty rate; instead he uses the agreements to demonstrate that it was typical at the time of the hypothetical negotiation for Lawson to internally develop or purchase technology rights rather than entering into running royalty agreements. The agreements show that Lawson's purchases involved fixed or lump sum amounts and included rights to software with "estimated useful lives of between three and five years." (*Id.* at 26; *see also* Exh. 2 at 264:20 – 265:3 ("a purchase of a technology is the same thing as paying a lump sum").)

Based in part on these other Lawson licenses, Mr. Green offers his opinion that the proper reasonable royalty in this case is a lump-sum and that when the parties were negotiating, Lawson would have estimated the useful live of similar technology for three and five years. These agreements support this opinion and thus are relevant under Rule 402.

### III. CONCLUSION

For the foregoing reasons, Lawson respectfully requests that this court deny ePlus's motion to limit Mr. Green's testimony. Mr. Green's testimony on the issue of Lawson's prior systems and prior noninfringing systems is based on the factual evidence in this case. He is not offering an independent technical or factual expert opinion on the technology, but rather relies on appropriate sources for the facts underlying his opinions, and thus is not precluded from offering damages expert testimony under Rule 702. In addition, the technology acquisition agreements are relevant under Rule 402 to the damages issues in this case.

LAWSON SOFTWARE, INC.

By   /s/
       Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

/s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*