# EXHIBIT 4

VIDEOTAPED DEPOSITION OF MICHAEL IAN SHAMOS, PH.D., J.D.
CONDUCTED ON WEDNESDAY, JUNE 16, 2010

1 (Pages 1 to 4)

---

Page 1

```
 1    UNITED STATES DISTRICT COURT
 2   FOR THE EASTERN DISTRICT OF VIRGINIA
 3           Richmond Division
 4   --------------------------------x
 5   ePLUS, iNC.,            )
 6         Plaintiff,  )
 7     v.              ) Civil Action No.
 8   LAWSON SOFTWARE, INC.,     ) 3:09-cv-620(REP)
 9         Defendant.  )
10   --------------------------------x
11
12       VIDEOTAPED DEPOSITION OF
13     MICHAEL IAN SHAMOS, Ph.D., J.D.
14           Washington, DC
15         Wednesday, June 16, 2010
16              10:06 a.m.
17
18
19
20   Job No.: 1-181012
21   Pages 1 - 252
22   Reported By:  Joan V. Cain
```

Page 2

```
 1      Videotaped Deposition of MICHAEL IAN SHAMOS,
 2   Ph.D., J.D., held at the law offices of:
 3
 4         GOODWIN PROCTER, LLP
 5         901 New York Avenue, Northwest
 6         Washington, DC 20001
 7         (202) 346-4000
 8
 9      Pursuant to Notice, before Joan V. Cain,
10   Court Reporter and Notary Public in and for the
11   District of Columbia.
```

Page 3

```
 1             A P P E A R A N C E S
 2
 3   ON BEHALF OF PLAINTIFF:
 4      JENNIFER A. ALBERT, ESQUIRE
 5      SCOTT L. ROBERTSON, ESQUIRE
 6      GOODWIN PROCTER, LLP
 7      901 New York Avenue, Northwest
 8      Washington, DC 20001
 9      Telephone:  (202) 346-4000
10
11   ON BEHALF OF DEFENDANT:
12      KIRSTIN L. STOLL-DEBELL, ESQUIRE
13      MERCHANT & GOULD
14      Suite 1950
15      1050 Seventeenth Street
16      Denver, Colorado 80265
17      Telephone:  (303) 357-1670
18
19   ALSO PRESENT:
20      Akim Graham, Videographer
```

Page 4

```
 1             C O N T E N T S
 2
 3   EXAMINATION OF MICHAEL IAN SHAMOS, Ph.D., J.D. PAGE
 4     By Ms. Albert           7
 5     By Ms. Stoll-DeBell         245
 6
 7             E X H I B I T S
 8         (Attached to the Transcript.)
 9   SHAMOS DEPOSITION EXHIBITS            PAGE
10   Exh.  1  Rebuttal Report of Expert Michael I.   24
11         Shamos, Ph.D., J.D. Concerning
12         Non-Infringement
13   Exh.  2  Report of Expert Michael I. Shamos,  32
14         Ph.D., J.D. Concerning Invalidity
15   Exh.  3  Document Entitled Chapter 20:     65
16         Application Changes, bearing Bates
17         Nos. L 0373955 through '4057
18   Exh.  4  Document Entitled 8.0.3 Inventory   73
19         Control Release Notes bearing Bates
20         Nos. L 0030416 through '420
```

MERRILL LAD
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026

### Page 173

1  pages 26 through 27. There you state, "I adopt the
2  prior art citations from Lawson's interrogatories,
3  but I do not necessarily adopt the opinions
4  expressed in the interrogatories concerning which
5  claims are invalid in light of which references."
6      Do you see that?
7  A  Yes.
8  Q  So you disagreed with some of the Lawson
9  attorneys' contentions --
10 A  Yes.
11 Q  -- with respect to the prior art?
12 A  Yes, I did, and where I disagreed, I mean I
13 indicated that, and my opinion, at least with
14 respect to my opinion supersedes what was in the
15 interrogatories.
16 Q  For what specific prior art references did
17 you disagree with Lawson's attorneys' contentions?
18 A  I don't recall. We can go through the
19 spreadsheet and see where they say it's invalid and
20 -- or they say this element is present and I didn't
21 find it, we should be able to tell.
22 Q  Can you refer to paragraph 105 on page 27?

### Page 174

1  A  Yes.
2  Q  There you state that, "Although the
3  identified art is cited herein as relevant to
4  invalidity, the fact that these systems existed in
5  the prior art may well be relevant to the case in
6  other ways. For example, the existence of
7  non-infringing alternatives may be relevant to
8  damages. I do not opine on these other potential
9  grounds for relevance, but understand my analysis of
10 the prior art may be used for other purposes."
11     What have the attorn- -- attorneys told you
12 with respect to how your invalidity opinions may be
13 used for other purposes?
14 A  I don't think that they've told me anything
15 specifically, but -- but it often occurs in patent
16 cases where there will be a damages expert and a
17 damages expert will want to base a damages theory or
18 damages calculation on something that the technical
19 expert has opined to, and I would accept that might
20 happen, but I -- I don't think I've been instructed
21 specifically that it will.
22 Q  Have you talked to Lawson's damages expert

### Page 175

1  in this case?
2  A  No. I think I've -- I think I testified
3  that I haven't talked to anybody in the world about
4  this case other than counsel.
5  Q  So -- let's see. So is it true then that
6  the only persons that you've spoken to about the
7  accused Lawson systems are the accused infringer's
8  lawyers; is that correct?
9  A  Yes.
10 Q  How could any of these systems that you
11 rely on that you indicate predate 1994 be considered
12 suitable noninfringing alternative technologies for
13 Lawson's current systems?
14 A  Well, because -- let's suppose a prior art
15 reference is raised for invalidity purposes and it
16 fails. Well, if it fails, then the claims of the
17 patent don't read on it; therefore, it's a
18 noninfringing alternative, and if it were adopted by
19 Lawson, then it would convert the infringing system
20 into a noninfringing one.
21 Q  Do you know of any Lawson customer that
22 would agree to allow Lawson to replace its version 9

### Page 176

1  Lawson system with a pre-1994 system?
2  A  Well, I don't think I'm talking about
3  wholesale replacement with a pre-1994 system. I'm
4  talking about replacing allegedly -- all Lawson
5  would have to do is replace one allegedly infringing
6  element with a noninfringing element to avoid
7  infringement, and it's possible that such elements
8  may exist.
9  Q  Well, you, sir, as a computer scientist,
10 would you be willing now in 2010 to replace your
11 2010 system with a system that predates 1994?
12 A  But that's exactly what I said I wasn't
13 offering an opinion to. What I said was not to
14 replace the entire Lawson version 9 system with some
15 pre-1994 system, but to replace a single allegedly
16 infringing element with a pre-1994 element that
17 performed a similar function. There's plenty of
18 software that I use every day that was written long
19 before 1994. Not everything becomes obsolete.
20 Q  Do you know of any Lawson customer who
21 would be willing to replace a graphical user
22 interface with a green screen?

VIDEOTAPED DEPOSITION OF MICHAEL IAN SHAMOS, PH.D., J.D.
CONDUCTED ON WEDNESDAY, JUNE 16, 2010

45 (Pages 177 to 180)

177

1  MS. STOLL-DEBELL: Objection, form.
2  THE WITNESS: I -- I -- I don't -- I don't
3  suppose I do know, but I never said -- I never
4  suggested that that was a possibility.
5  BY MS. ALBERT:
6  Q  Do you know of any Lawson customer who
7  would be willing to replace a system with keyword
8  search functionality for one without?
9  A  Well, we can go on all day and you can list
10 elements that are not in the asserted claims. Maybe
11 we want to concentrate on the stuff that's in the
12 asserted claims. No, I -- if -- if keyword -- if
13 keyword search -- I -- with respect to noninfringing
14 alternatives, they have to be commercially
15 acceptable, and so there -- whatever the proposed
16 replacement would be, one would have to do an
17 investigation of whether it was commercially
18 acceptable to do it. There are some substitutions I
19 can imagine would be and some I imagine would be
20 ludicrous and wouldn't be.
21 Q  Do you know -- do you know if Lawson has
22 performed any investigation relating to whether any

178

1  of the prior art systems that you've listed in your
2  report would be commercially acceptable alternatives
3  to the Lawson version 9.0 systems?
4  A  I don't know that.
5  Q  Lawson no longer provides maintenance and
6  support for version 6.0 of its procurement software,
7  does it?
8  A  I don't -- I don't know one way or another.
9  Q  How much would it cost Lawson to replace
10 its customers' 9.0 systems with 6.0 systems?
11 A  I -- I haven't even begun to think about
12 that. Never came up.
13 Q  Can you refer to paragraphs 107 through 116
14 of your report?
15 A  Yes.
16 Q  In those paragraphs you describe at some
17 length some systems that were used by AHSC and
18 Baxter Healthcare at various time periods; is that
19 accurate?
20 A  Yes.
21 Q  Confirm for me that you haven't relied on
22 these systems as providing a bases for any of your

179

1  anticipation opinions.
2  A  I confirm that.
3  Q  And nor have you opined that these systems
4  render any of the asserted claims obvious when
5  combined with any of the systems cited in your chart
6  on pages 25 through 26; is that correct?
7  A  Not expressly. I haven't made any express
8  obviousness combinations that include the art
9  discussed in paragraphs 107 to 116. On the other
10 hand, that wouldn't preclude a KSR argument.
11 Q  What do you mean by a KSR argument?
12 A  Well, after KSR when the Supreme Court
13 found that express teachings to combine were not
14 necessary and that the -- they looked more
15 perceptively at what would be within the skill of
16 one of ordinary skill in the art, looking at the
17 progress of the prior art and its apparent
18 direction, reducing certain design choices to a
19 small finite number of choices, et cetera, all
20 result in obvious inventions as opposed to in
21 earlier days they might not have been regarded as
22 obvious.

180

1  Q  Can you turn to the section of your report
2  beginning at paragraph 173 on page 52?
3  A  Yes.
4  Q  And in that section through -- I guess it's
5  paragraph 179, that's a discussion relating to the
6  TV/2 system; is that correct?
7  A  Yes.
8  Q  Now this TV/2 system, that was a search
9  program; is that correct?
10 A  Well, I mean, its fundamental objective was
11 to facilitate search. The documents that described
12 TV/2 talk about ways of integrating that search with
13 other things such as sales and service systems.
14 Q  But TV/2 -- the TV/2 system that you rely
15 on for your opinions as sold by IBM, that was just a
16 search program, right?
17 A  Well --
18 MS. STOLL-DEBELL: Objection, form.
19 THE WITNESS: -- I -- I'm -- I don't think
20 that's an accurate characterization. For example,
21 if you look at paragraph 178, TV/2 was designed to
22 store multiple tech- -- technical documents such as