# EXHIBIT 5

VIDEOTAPED DEPOSITION OF ERNEST BAINBRIDGE LIPSCOMB, III, ESQUIRE
CONDUCTED ON FRIDAY, JUNE 18, 2010

1 (Pages 1 to 4)

```
                                    1
 1         UNITED STATES DISTRICT COURT
 2      FOR THE EASTERN DISTRICT OF VIRGINIA
 3            Richmond Division
 4   ---------------------------------x
 5   ePLUS, iNC.,            )
 6            Plaintiff,  )
 7      v.              ) Civil Action No.
 8   LAWSON SOFTWARE, INC.,     ) 3:09-cv-620(REP)
 9            Defendant.   )
10   ---------------------------------x
11
12          VIDEOTAPED DEPOSITION OF
13      ERNEST BAINBRIDGE LIPSCOMB, III, ESQUIRE
14             Washington, DC
15           Friday, June 18, 2010
16              9:53 a.m.
17
18
19
20   Job No.: 1-181073
21   Pages 1 - 111
22   Reported By:  Joan V. Cain
```

```
                                    2
 1      Videotaped Deposition of ERNEST BAINBRIDGE
 2   LIPSCOMB, III, ESQUIRE, held at the law offices of:
 3
 4          GOODWIN PROCTER, LLP
 5          901 New York Avenue, Northwest
 6          Washington, DC 20001
 7          (202) 346-4000
 8
 9      Pursuant to Notice, before Joan V. Cain,
10   Court Reporter and Notary Public in and for the
11   District of Columbia.
```

```
                                    3
 1             A P P E A R A N C E S
 2
 3   ON BEHALF OF PLAINTIFF:
 4      MICHAEL G. STRAPP, ESQUIRE
 5      GOODWIN PROCTER, LLP
 6      Exchange Place
 7      Boston, Massachusetts 02109
 8      Telephone: (617) 570-1000
 9
10   ON BEHALF OF DEFENDANT:
11      JOSHUA P. GRAHAM, ESQUIRE
12      MERCHANT & GOULD
13      3200 IDS Center
14      80 South Eighth Street
15      Minneapolis, Minnesota 55402-2215
16      Telephone:  (612) 332-5300m
17
18   ALSO PRESENT:
19      Akim Graham, Videographer
```

```
                                    4
 1             C O N T E N T S
 2
 3   EXAMINATION OF ERNEST B. LIPSCOMB, III    PAGE
 4     By Mr. Strapp              6
 5     By Mr. Graham             103
 6
 7             E X H I B I T S
 8       (Attached to the Transcript.)
 9   LIPSCOMB DEPOSITION EXHIBITS          PAGE
10   Exh. 1 Rebuttal Expert Report of Ernest B.   12
11       Lipscomb, III
12   Exh. 2 Gartner Research Publication Paper,   64
13       Bates No'd ePlus 0940869 through '871
14   Exh. 3 ComputerWorld Article Entitled EPlus   67
15       Charges SAP with Patent Infringement,
16       Bates No'd ePlus 940878
```

45

1 reexamination proceeding have the same evidentiary
2 burden of clear and convincing evidence that Lawson
3 would to present -- in presenting invalidity to show
4 a basis for rejection?
5   A   The examiner doesn't have a standard of
6 clear and convincing. He just applies the
7 references. It's an obviousness standard or
8 anticipation or whatever.
9   Q   Do you want to take a break for a few
10 minutes?
11      MR. GRAHAM: Sure.
12      THE VIDEOGRAPHER: Going off the record.
13 The time is 10:43 a.m.
14      (Recess.)
15      THE VIDEOGRAPHER: Back on the record. The
16 time is 10:47 a.m.
17 BY MR. STRAPP:
18   Q   Mr. Lipscomb, we were talking about Seagate
19 technology and the standard that it was set --
20 that's set for willfulness in that case. Is it your
21 understanding that the standard for willfulness
22 announced in the Seagate case in 2007 is the current

46

1 applicable standard for willfulness?
2   A   Yes.
3   Q   Are you familiar with the portion of
4 Seagate that discusses the issue of waiver of the
5 attorney-client privilege with respect to opinion
6 counsel and trial counsel?
7   A   I read the entire case, but I don't really
8 remember the specifics of that part.
9   Q   Well, let me ask you generally. Are you --
10 are you familiar with the principle that a party is
11 not allowed to use the attorney-client privilege as
12 both a sword and shield with respect to opinions of
13 counsel?
14   A   I would agree with that.
15   Q   So would you agree then also that a party
16 cannot use its opinion of counsel simultaneously to
17 gain an advantage while invoking the privilege to
18 prevent the other party from reviewing portions of
19 the opinion of counsel?
20   A   My understanding is that that the current
21 law from Seagate is that you do not have to provide
22 opinions of counsel, and that does not -- it used to

47

1 be years ago that if you didn't rely on your opinion
2 of counsel, then you were very likely to be held to
3 be willful -- a willful infringer. I think Seagate
4 sort of overturned that, that willfulness was not
5 predicated on opinion from counsel.
6   Q   But you would agree that if a party is
7 going to invoke the opinion of counsel as a sword,
8 so to speak, it cannot withhold that opinion of
9 counsel by refusing to waive the attorney-client
10 privilege?
11   A   I would agree with that.
12   Q   Could you turn to paragraph 30 of your
13 report on page 15, please. Now, you had mentioned
14 earlier today that the opinion of counsel can be one
15 of the factors in the totality of factors test to --
16   A   Yes.
17   Q   -- determine whether a party was
18 objectively reckless in continuing to practice -- or
19 continuing to use products accused of infringement,
20 correct?
21   A   Yes.
22   Q   And are you specifically opining in this

48

1 instan- -- in this case that Lawson's opinion of
2 counsel was one of the factors that you were relying
3 upon in reaching your conclusion that Lawson was not
4 objectively reckless in continuing to prac- --
5 continuing to use the products accused of
6 infringement?
7   A   Yes.
8   Q   When did Lawson obtain the opinion of
9 counsel that you are aware of?
10   A   It's my understanding that they obtained
11 opinion of counsel shortly after suit was filed.
12   Q   And who drafted that opinion of counsel?
13   A   I have no idea. I didn't.
14   Q   And what did the opinion of counsel say?
15      MR. GRAHAM: Objection, foundation.
16      THE WITNESS: I have no idea. Never read
17 the opinion.
18 BY MR. STRAPP:
19   Q   Do you know who wrote the opinion?
20   A   You just asked me that.
21   Q   I did. You're right.
22   A   See, I listen. I try to.

Case 3:09-cv-00620-REP Document 320-5 Filed 07/12/10 Page 4 of 4 PageID# 7714
VIDEOTAPED DEPOSITION OF ERNEST BAINBRIDGE LIPSCOMB, III, ESQUIRE
CONDUCTED ON FRIDAY, JUNE 18, 2010

13 (Pages 49 to 52)

**49**

1  Q  You don't know who wrote the opinion and
2  you don't know what the opinion said. Do you know
3  anything at all about the contents of the opinion?
4  A  No.
5  Q  Who informed you that there was an opinion
6  of counsel?
7  A  It was either Kristin -- Kirstin or Peter
8  Gergely.
9  Q  So they told you there's an opinion of
10 counsel but they didn't tell you who wrote the
11 opinion --
12 A  No.
13 Q  -- or what it contained?
14 A  That's correct.
15 Q  But they did tell you that it was received
16 after litigation began?
17 A  That's correct.
18 Q  Now, how is it that an opinion of counsel
19 about which you have no knowledge at all can be, in
20 your opinion, one of the bases for a finding that
21 Lawson was not objectively reckless here?
22 A  An opinion of counsel, presumptively it's

**50**

1  the opinion of counsel is that it's either invalid
2  or no infringement, presumptively, and that being
3  the case, it certainly would be a factor.
4  Q  Well, you say presumptively the opinion of
5  counsel is either invalid or no infringement, but
6  you don't know -- you don't know that, right?
7  A  I've been doing this for almost 45 years
8  and I've never seen an opinion of counsel that says,
9  guys, we're infringing and the patent's valid, so we
10 better stop.
11 Q  So you assume that when someone gets an
12 opinion of counsel, it's going to say what they want
13 it to say?
14 A  No. I assume that it's going to say what
15 counsel believes, what his opinion is in the case.
16 Q  And you assume that his opinion is going to
17 be what the Merchant & Gould attorneys wanted it to
18 be?
19 A  I don't know whether Merchant & Gould is
20 involved with that opinion or not, so I don't -- I
21 don't know how to answer that.
22 Q  Okay. But you have absolutely no knowledge

**51**

1  one way or the other about whether this opinion of
2  counsel found that Lawson was infringing or not
3  infringing the products -- the patents, correct?
4     MR. GRAHAM: Object. Objection, asked and
5  answered.
6     THE WITNESS: I have no knowledge of what
7  the opinion says one way or the other. I just
8  cannot conceive of counsel writing an opinion and
9  saying guys, you're infringing. Stop.
10 BY MR. STRAPP:
11 Q  Well, wouldn't you ask to see the opinion
12 of counsel if it was going to form part of the basis
13 of your opinion that there wasn't objectively
14 reckless -- that -- that Lawson didn't act
15 objectively reckless here?
16 A  I missed the first part of that question.
17 Q  Wouldn't it make sense, in your opinion, to
18 ask Merchant & Gould for a copy of the opinion of
19 counsel to actually read it before you -- before you
20 reached the conclusion that that opinion of counsel
21 could be a basis for finding that Lawson was not
22 objectively reckless?

**52**

1  A  I would say that opinions of counsel always
2  can be, assuming they don't say, guys, stop, would
3  be a factor.
4  Q  So wouldn't it make sense for you to look
5  at the opinion of counsel to make sure that it
6  doesn't say, guys, stop?
7  A  Not necessarily.
8  Q  Why not?
9  A  Why?
10 Q  Because you don't know what it says.
11 A  I presume what it says in the sense that it
12 doesn't say, you know, guys, you need to stop. I
13 mean, nobody does that.
14 Q  Well, why didn't you ask -- if you're not
15 going to ask to actually see it, why didn't you ask
16 the Merchant & Gould attorneys what it said?
17 A  Well, there wasn't any reason to because
18 it's -- it's still a factor. It is a factor. It
19 can be -- if it says, guys, you're infringing, stop,
20 that's a factor also.
21 Q  Correct.
22 A  That's all.