# EXHIBIT 10

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re *Ex Parte* Reexamination of: | |
| | |
| **U.S. Patent No. 6,055,516** | Request for *Ex Parte* Reexamination |
| | under 35 U.S.C. § 302 and |
| Inventors: Johnson *et al.* | 37 C.F.R. § 1.510 |
| | |
| Issue Date:   April 25, 2000 | |
|                    Application No. 09/234,366 | |
|                    Filed:   January 20, 1999 | |
| | |
| For:   Electronic Sourcing System | |

Mail Stop *Ex Parte* Reexamination
ATTN: Central Reexamination Unit
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## DETAILED REQUEST FOR *EX PARTE* REEXAMINATION OF U.S. PATENT NO. 6,055,516

In accordance with 35 U.S.C. § 302 and 37 C.F.R. § 1.510, *ex parte* reexamination of the

U.S. Patent No. 6,055,516 ("the '516 Patent") (Exhibit A) is requested.  As required, this request

includes the following parts:

(1) A statement pointing out each substantial new question of patentability based on prior patents and printed publications;

(2) An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited prior art to every claim for which reexamination is requested;

(3) A copy of every patent or printed publication relied upon or referred to in paragraph (b)(1) and (2) of this section accompanied by an English language translation of all the necessary and pertinent parts of any non-English language patent or printed publication;

(4) A copy of the entire patent including the front face, drawings, and specification/claims (in double column format) for which reexamination is requested, and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent;

(5) A certification that a copy of the request filed by a person other than the patent owner has been served in its entirety on the patent owner at the address as provided for in § 1.33(c), including the name and address of the party served.

**(1)     Statement Pointing Out Each Substantial New Question of Patentability Based on Prior Patents and Printed Publications.**

Requester states that all the claims of the '516 Patent are unpatentable over the following patents and printed publications, either alone or in combination with each other:

U.S. Patent No. 5,712,989 ("the '989 Patent");

U.S. Patent No. 5,319,542 ("the '542 Patent");

the P.O. Writer Plus V.10 Manual ("the P.O. Writer Manual");

A Practical Guide to SABRE Reservations and Ticketing ("the Practical Guide    to SABRE");

the J-CON Manual;

the Gateway 2000/MRO Version ("the Gateway Manual"); and

the IBM Technical Viewer/2 General Information Manual ("the TV/2 Manual") & IBM Technical Viewer/2 brochure ("the TV/2 Brochure").

### A.     The '516 Patent

The '516 Patent is one of three domestic patents directed to the same general electronic sourcing system.  The other two patents are U.S. Patent No. 6,023,683 ("the '683 Patent") (Exhibit B) and U.S. Patent No. 6,505,172 ("the '172 Patent") (Exhibit C).  The '516 Patent is a continuation of the application that issued as the '683 Patent, and the '172 Patent is a division of the application that issued as the '516 Patent.

Both the '683 and '172 Patents are subject to reexamination.  Claims 26-45 of the '683 Patent are subject to an *ex parte* reexamination (control no. 90/008,104).  Each claim stands finally rejected.  (Exhibit D, Final Rejection in the '683 Patent Reexamination).  All five claims of the '172 Patent are subject to an *inter partes* reexamination (control no. 95/000,487).  Each

claim stands initially rejected.  (Exhibit E, Non-Final Rejection in the '172 Patent

Reexamination).

### 1.      The Subject Matter of the '516 Patent

The '516 specification is entitled "Electronic Sourcing System" and relates to:

> systems and methods for interfacing product information, such as is typically
> found in vendor catalogs . . . , and requisition/purchasing systems and methods
> that may use the results of searches of product information.

(Exhibit A, the '516 Patent at col. 1:10-15).

The "Background of the Invention" section acknowledges that, at the time the patent

application was filed, there were a number of known electronic requisition/purchasing systems as

well as computer systems capable of searching product catalog databases.  (Exhibit A, the '516

Patent at cols. 1:15-2:22).

In the Summary of the Invention, the specification describes one object of the invention

as being:

> to provide an electronic sourcing method and system that provides a user with the
> capability of searching a database containing data (including product/vendor
> identification, and other product information) relating to items available from at
> least two product catalogs, and the capability of transferring the product
> information for desired catalog items obtained as a result of the search to a
> requisition/purchasing system for use in generating a requisition including entries
> for the desired catalog items.

(Exhibit A, the '516 Patent at col. 2:51-60)

Thus, the Applicants acknowledged that the invention constituted the bringing together of

two pre-existing capabilities in the prior art; a database/catalog searching system and a

requisition/purchasing system.  In particular, the Applicants disclosed that the preferred

embodiment of the invention was the combination of the prior art Requisition and Inventory

Management program ("RIMS") system taught in the '989 Patent with the prior art catalog search

product from IBM known as TV/2.

Electronic sourcing system 5 also includes a requisition/ purchasing system 40, preferably but not necessarily the Fisher RIMS system, and a search program 50 that is capable of searching through large volumes of information quickly and accurately.  Preferably but not necessarily, the Technical Viewer 2 search program ("TV /2"), available from IBM, is used as search program 50.

(Exhibit A, the '516 Patent at col. 4:6-12).

Preferably, a user will start the electronic sourcing system 5 from Fisher RIMS system 40. Requisitioning on Fisher RIMS system 40 in context of the electronic sourcing system 5 of the present invention is illustrated in pertinent part in FIG. 2 (and is fully described in U.S. Pat. No. 5,712,989).

(Exhibit A, the '516 Patent at col. 6:45-49).

. . . the entire process of listing, sourcing, and ordering products using the Fisher RIMS system 40 can be completed without any reference to a search program 50.

(Exhibit A, the '516 Patent at col. 7:42-44).

More specifically, Figure 1A illustrates that the electronic sourcing system 5 of the '516 Patent includes hardware components such as a Host Computer 10 and a Local Computer 20 (that includes standard hardware peripheral devices Monitor 22, Printer 26 and Keyboard 24). Electronic sourcing system 5 also includes software components; Host Computer 10 operates Host Databases 11, and Local Computer 20 executes an operating system 32 (OS/2) and a Requisition and Inventory Management program 40 (RIMS) (that includes all programs identified with numerals in the "40' s" such as Requisition, Inventory and Customer Specific Databases 42A, 42B and 42C, respectively, as well as Requisition Management Program 44A (REQI), Inventory Sourcing program 44B and Requisition Maintenance Program 44C). Other significant software on Local Computer 20 includes search program 50 (TV/2) for performing catalog searching and Catalog Database 36 in which certain product information is maintained. (*See also* Exhibit A, the '516 Patent at col. 4:6-50).

In general, the electronic sourcing system described in the '516 Patent enables a user to search a database or catalog set for a particular item, select desired items from the search results

4

to generate an order list, generate a requisition containing the selected items on the order list, check the pricing and inventory status of the selected items, and generate one or more purchase orders to vendors for the selected items.  (Exhibit A, the '516 patent at Abstract).  A product search can be performed in two ways: either by using the functionality of the RIMS program 40 (Exhibit F, the '989 Patent, cols. 8:40 - 9:2) or by transmitting a request to search program 50 (TV/2).  (Exhibit A, the '516 Patent at col. 6:45-49).

Following a search of the database(s), an order list may be produced from user selections of matching items found in the database.  (Exhibit A, the '516 Patent at col. 9:40-45).  Using the hit list 47, a user may select a particular item and add it to an order list.  (Exhibit A, the '516 Patent at col. 10:22-25, col. 11 :39-42).  The order list can include information such as (1) vendor number; (2) vendor part (catalog) number; (3) product description; and (4) quantity, for example.  (Exhibit A, the '516 Patent at col. 11:64-67).  In addition, a requisition for selected items may be built.  (Exhibit A, the '516 Patent at cols. 13:5 - 15:38).  This requisition can then be processed into a purchase order. (Exhibit A, the '516 Patent at col. 15:39-41).

### 2.    Prosecution History of the '516 and Related Patents

The '516 Patent issued on April 25, 2000 from an application filed on January 20, 1999. That application was a continuation of an application filed on August 10, 1994, which later issued as the '683 Patent.  The application that matured into the '516 Patent originally included 78 claims.  The Applicant subsequently filed a Preliminary Amendment cancelling claims 1-78 and adding claims 79-120.[1]

---

[1] In the Preliminary Amendment, the applicant indicated it was adding claims 79-121, but the substance of claim 121 was not included.  In the following Office Action, the Examiner indicated that only claims 79-120 were pending.

In a first Office Action, the Examiner rejected claims 79-87, 90, 103-112, and 114-120. The Examiner indicated that each of these claims was anticipated by U.S. Patent No. 4,992,940 to Dworkin:

> . . . . Dworkin ('940) discloses a centralized ordering system.  This centralized ordering system of Dworkin ('940) includes a data base [sic] that contains a number of different categories (i.e. first criteria) that are collections of similar/equivalent products from different vendor catalogs.  These categories of various products are available to the used for  selecting various related products. Based on the user's search request, (i.e. second criteria) the system of Dworkin ('940) searched through the vendor/product database for matching categories and products.  The results of the search, i.e. matching products, are returned to the user.  Based on the returned matching product information, the user may create the one or more requisition order necessary to purchase the selected items according to the vendor's requirements for a requisition order.

The Examiner found claims 88, 89, 91-102, and 113 allowable because they purportedly included an element not disclosed in the considered prior art—"converting items found in one vendor's catalog to equivalent products in another vendor's catalog."  In response to the Office Action, the applicant incorporated this element into the other claims to overcome the anticipation rejections.  As filed, the term "converting" does not appear in the patent specification with respect to interchanging items.

Independent claim 79 incorporated the limitations of dependent claim 88 as well as intervening dependent claims 84-86.  The following language was incorporated from claims 84-86, and 88 into claim 79:

> a catalog selection protocol . . . including matching a vendor identification code
>     with a subset of said collection of catalogs, wherein said subset of catalogs
>     includes both a vendor catalog from a predetermined vendor and a second
>     catalog from a predetermined third party that is one of a manufacturer and a
>     competing vendor, said predetermined third party selling items corresponding
>     to items in said vendor catalog;

Claims 84-86, and 88 were cancelled.  Claim 87 and 89 were amended to depend from claim 79, and claims 80-83, and 90 already depended from claim 79.  Claim 79 issued as independent claim 1; the dependent claims issued as dependent claims 2-8.

Independent claim 110 incorporated the limitations of dependent claim 113 as well as intervening claims 111 and 112.  The following language was incorporated from claims 111-113 into claim 110:

> An electronic sourcing system . . .
> wherein each of at least two catalogs include a generally equivalent item from a
>    different source, said requisition module working in combination with said
>    catalog searching module to determine multiple sources for said item;
> wherein said multiple sources is limited by said catalog searching module
>    providing a match according to said user-generated criteria, said search-
>    module criteria and a determination system that located items are generally
>    equivalent; and
> wherein said determination system includes a cross reference table matching an
>    identification code from a first located item with a second identification code
>    from a second located item.

Claims 111-113 were cancelled.  Claims 114 and 115 were amended to depend from claim 110. Claims 116-120 already depended from claim 110.  Claim 110 issued as independent claim 21; the dependent claims issued as dependent claims 22-28.

Independent claim 121 was added in response to the Office Action.  The applicant stated that claim 121 includes the limitation of claim 79 (prior to amendment), dependent claim 89, and intervening dependent claims 84 and 85.  The following language was incorporated from claims 84, 85, and 89 into claim 121:

> a catalog selection protocol . . . including matching a vendor identification code
>    with a subset of said collection of catalogs, wherein said subset of catalogs
>    includes both a vendor catalog from a predetermined vendor and a second
>    catalog from a predetermined third party;
> . . .
>
> a cross-reference table linking a vendor item catalog number from said vendor
>    catalog with an item catalog number from said predetermined third party.

7

Claim 121 issued as independent claim 29.

The application that matured into the '683 Patent was filed with the same 78 claims originally included in the application that matured into the '516 Patent.  During the prosecution of the '683 Patent application, a number of claims were cancelled, added, and amended.  Finally, the claims to which the applicant added a "converting" limitation were allowed.  This is the same limitation included in the claims of the '516 Patent application that were allowed in the first Office Action and incorporated into the claims additionally allowed in Notice of Allowability. Both the '683 Patent application and the '516 Patent application dealt with the same issues of patentability.

### 3.      The Final Rejection in the Reexamination of the '683 Patent

A Request for *Ex Parte* Reexamination of claims 26-45 of the '683 Patent was filed on February 8, 2000.  That Request listed four prior art references the raised a substantial new question of patentability: the P.O. Writer Manual; the Practical Guide to SABRE; the J-CON Manual; and the Gateway Manual.  On October 28, 2006, the Request was granted as each of these prior art references anticipates and renders obvious each of the claims for which reexamination was requested.

In a Final Office Action, all of the claims being reexamined were rejected.  Despite the patentee's arguments to the contrary, each prior art reference was determined to qualify as prior art.  Each claim was then found to be either anticipated or rendered obvious by the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual.  (Exhibit D, Final Rejection in the '683 Patent Reexamination).

### 4. The Non-Final Rejection in the Reexamination of the '172 Patent

A Request for *Inter Partes* Reexamination of claims 1-5 (all the claims) of the '172 Patent was filed on July 10, 2009.  The Request listed six prior art references that raised substantial new questions of patentability: U.S. Patent No. 6,963,551, the '989 Patent,  the P.O. Writer Manual; the Practical Guide to SABRE; the J-CON Manual; and the Gateway Manual.  On October 23, 2009, all five claims were rejected.

In a Non-Final Rejection, each of the claims being reexamined were found to be anticipated or rendered obvious by the asserted prior art references.  Claims 1 and 3-5 were anticipated by the '989 Patent.  Claim 1-5 were anticipated by each of the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual.  (Exhibit E, Non-Final Rejection in the '172 Patent Reexamination).

### B. The Prior Art

Each of the '989 Patent, the '542 Patent, the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual qualifies as prior art and, as further discussed in section (2), raises a substantial new question of patentability both alone and in combination with each other.

### 1. The '989 Patent

#### a. The '989 Patent Qualifies as Prior Art

As noted above, the disclosures in the specification of the '516 Patent relate to the combination of Fisher Scientific's RIMS system with IBM's TV/2 system.  The '516 Patent includes an admission that the RIMS system was known at the time of filing and is disclosed in the '989 Patent.  (Exhibit A, the '516 Patent at col. 2:15-21).  The '989 Patent issued on January 27, 1998, from an application filed on April 2, 1993.  Thus, the '989 Patent is prior art to the '516

Patent under 35 U.S.C. § 102(e) and describes subject matter admitted to be prior art at least

under 35 U.S.C. § 102(a), and thus is available as prior art under 35 U.S.C. §103.

### b. The '989 Patent Raises a Substantial New Question of Patentability

The '989 Patent presents a new, non-cumulative teaching that was not previously

considered and discussed on the record during the prosecution of the application that matured

into the '516 Patent. *See* MPEP § 2616.  Although the specification of the '516 patent references

the '989 Patent, the '989 Patent is not listed as a Cited Reference on the '516 Patent, nor is any

non-patent publication identified which corresponds to the RIMS system described in the '989

Patent.  Moreover, despite the many similarities between the RIMS system and the '516 Patent,

the '989 Patent was not cited to support any rejection of the claims of the '516 Patent.  Therefore,

there is no indication that the specific, highly relevant disclosures of the '989 Patent were

considered during the original prosecution of the '516 Patent.

For example, the '989 Patent discloses cross-reference tables and what apparently is the

"converting" limitation found to be the basis for allowing the '516 Patent claims.  (*See* Exhibit F,

the '989 Patent at col. 32:16-23 (describing how item from one source is "converted to" a

different item for sourcing and pricing)).  The '989 Patent describes Fisher Scientific's

"requisition and inventory management system," that like the system described in the' 516 patent

operates through cooperation between a local computer and a host computer.   (Exhibit F, the

'989 Patent at Abstract).  Indeed, as conceded in the '516 Patent, the prior art RIMS system

taught in the '989 Patent constitutes the best mode of practicing most of the elements of the

system described in the '516 Patent:

> Electronic sourcing system 5 also includes a requisition/ purchasing system 40,
> **preferably but not necessarily the Fisher RIMS system**, . . .

(Exhibit A, the '516 Patent at col. 4:6-8 (emphasis added)).

> Preferably, a user will start the electronic sourcing system 5 from Fisher RIMS system 40. **Requisitioning on Fisher RIMS system 40 in context of the electronic sourcing system 5 of the present invention** is illustrated in pertinent part in FIG. 2 (and is fully described in U.S. Pat. No. 5,712,989).

(Exhibit A, the '516 Patent at col. 6:45-49 (emphasis added)).

> the entire process of listing, sourcing, and ordering products using the Fisher RIMS system 40 can be completed without any reference to a search program 50.

(Exhibit A, the '516 Patent, col. 7: 42-44).

As further discussed in section (2), the '989 Patent anticipates and alone renders obvious at least claims 1- 6, 9- 12, 15- 19, 21-22, and 29 of the '516 Patent, and in combination with the other cited prior art renders the remaining claims obvious.

### 2.    The '542 Patent

#### a.    The '542 Patent Qualifies as Prior Art

The '542 Patent issued on June 7, 1994, from an application filed on September 27, 1990. Thus, the '542 Patent is prior art to the '516 Patent under 35 U.S.C. § 102(a), (b), and (e).

#### b.    The '542 Patent Raises a Substantial New Question of Patentability

The '542 Patent presents a new, non-cumulative teaching that was not previously considered and discussed on the record during the prosecution of the application that matured into the '516 Patent. *See* MPEP § 2616.  As noted above, the disclosures contained in the specification of the '516 Patent relate to the combination of Fisher Scientific's existing RIMS system with IBM's TV/2 system.  The '516 discloses that IBM's TV/2 is a search program. (Exhibit A, the '516 Patent at col. 4:10-12).  The '542 Patent issued to IBM and enables a user to electronically search various catalogs.  (Exhibit G, the '542 Patent at Fig. 3).

The '542 Patent discloses many claim limitations of the '516 Patent and, like the TV/2 system described in the '516 Patent, enables searching catalogs for use in requisition systems.

The '542 Patent is entitled "SYSTEM FOR ORDERING ITEMS USING AN ELECTRONIC CATALOGUE."  The system includes two major components: (1) Electronic Catalogs and (2) an Electronic Requisition.  (Exhibit G, the '542 Patent at col. 2:17-19 & col. 3:17-21).

The Electronic Catalogs consist of a Supplier Master Catalog from which the Supplier creates a Public Catalog and a Private Catalog.  (Exhibit G, the '542 Patent at col. 3:41-58).  A Public Database includes Public Catalogs from many Suppliers.  (Exhibit G, the '542 Patent at col. 3:49-51).

The Customer can select either the Public Catalog or the Private Catalog to search. (Exhibit G, the '542 Patent at col. 5:42-45 & col. 6:5-7).  The Customer searches for items. (Exhibit G, the '542 Patent at Fig. 3 & col. 5:42-45).  Competitive items are simultaneously displayed and items from multiple suppliers may be compared.  (Exhibit G, the '542 Patent at col. 2:20-26 & col. 7:36-38).  Selected items may then be requisitioned and purchased.  (Exhibit G, the '542 Patent at cols. 5:29 – 6:31).

Although the '542 Patent was disclosed during the original prosecution of the '516 Patent, it was not discussed and its disclosures as described in section (2) below were not considered. Furthermore, the '542 Patent was not considered in combination with the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, or the Gateway Manual, as those prior art references were not disclosed during the original prosecution.

As further discussed in section (2), the '542 Patent anticipates and alone renders obvious at least claims 1-3, 6, 9, 12-16, 19-20, and 29 of the '516 Patent, and in combination with the other cited prior art renders the remaining claims obvious.

### 3.      The P.O. Writer Manual

#### a.      The P.O. Writer Manual Qualifies as Prior Art

PurchasingNet's P.O. Writer Plus system was first introduced and publicly available in 1984 and a major upgrade was released each year thereafter.  During the reexamination of the '683 Patent, the Examiner determined that the P.O. Writer Manual "can be considered as a 'printed publication', as [it] 'was made available to the extent that persons interested in the subject matter, exercising reasonable diligence, can locate the reference'."  (Exhibit H, Non-Final Rejection in the '683 Patent Reexamination at 4-6).

The P.O. Writer Plus V.10 system was implemented and documented in a manual that became publicly available and widely distributed in June 1993 ("the P.O. Writer Manual").  The P.O. Writer Manual accompanied the software and documented the installation, configuration and usage of the software product.  This collection of materials was widely distributed as a unified product to PurchasingNet customers as of June 1993.  (Exhibit I, Declaration of Laurene Fielder in the '683 Patent Reexamination at ¶ 6).

The P.O. Writer Manual was a set of nineteen volumes, eight of which contained material related to the functionality discussed in this Request; the Guided Tour (Exhibit J 1), Purchasing (Exhibit J 2), Data Interface Utility (Exhibit J 3), Requisitioning (Exhibit J 4), Requisition Interface (Exhibit J 5), Inventory Control (Exhibit J 6), and  Purchasing Requisitioning System Administrator's Guide (Exhibit J 7).  (Exhibit I, Declaration of Laurene Fielder in the '683 Patent Reexamination at ¶ 4).  Thus, the P.O. Writer Manual is prior art to the '516 Patent under 35 U.S.C. § 102(a) and (b).

### b.    The P.O. Writer Manual Raises a Substantial New Question of Patentability

The P.O. Writer Manual presents a new, non-cumulative teaching that was not previously considered and discussed on the record during the prosecution of the application that matured into the '516 Patent. *See* MPEP § 2616.  The P.O. Writer Plus system was an electronic sourcing system that included an electronic database that retained and retrieved product information from multiple vendors, including such product information as an item number, item description, inventory location, price, commodity code, unit of measure and vendor identification.  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 22 & 130-31; *see* Exhibit D, Final Rejection in the '683 Patent Reexamination at 21 & 60; *see* Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 18-19).

Product information could be maintained within the P.O. Writer Plus system as product catalogs organized in various ways, including by vendor or by product type.  The P.O. Writer Plus system allowed a user to select product catalogs to search, resulting in a search of less than the entire data set in the database.  The system allowed a user to search for matching items among selected product catalogs by specifying various search criteria including item number, commodity code, and keyword associated to the item description.  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 46-47; *see* Exhibit D, Final Rejection in the '683 Patent Reexamination at 21 & 60; *see* Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 19).

Upon selection of a desired item from the results of a database search, the P.O. Writer Plus system was capable of transferring the relevant product information for the selected item from the database onto an electronic requisition.  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 47-49 & 117-47; *see* Exhibit D, Final Rejection in the '683 Patent Reexamination at 21 & 60; *see* Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 19).  For a selected

item in the requisition, the P.O. Writer Plus system was capable of: (1) determining the availability of the item in the inventory of the customer; (2) utilizing EDI transactions or issuing RFQs to multiple vendors to ascertain, record, and retrieve the availability of the selected item from a prospective vendor; (3) determining the price of an item; (4) cross-referencing or converting data relating to the selected item to a generally equivalent item from a different source; and (5) generating multiple purchase orders from a single requisition.  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 49 & 149-153; *see* Exhibit D, Final Rejection in the '683 Patent Reexamination at 22-23, 60-61, 70, 102; *see* Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 19-21).

The P.O. Writer Manual was not cited by the applicant or considered by the Examiner during prosecution of the '516 Patent, and thus establishes a substantial new question of patentability. As further discussed in section (2), the P.O. Writer Manual anticipates and alone renders obvious at least claims 1, 3, 6-7, 16, and 19 of the '516 Patent, and in combination with the other cited prior art renders the remaining claims obvious.

### 4.      The Practical Guide to SABRE

#### a.      The Practical Guide to SABRE Qualifies as    Prior Art

The third-party-authored Practical Guide to SABRE (Exhibit K 1)*,* describe American Airlines' SABRE system.  The SABRE system was first introduced and commercially available in the late 1960's, and the Practical Guide to SABRE was publicly available in 1992.  (Exhibit K 2, Copyright Registration Certificate for the Practical Guide to SABRE).  During the reexamination of the '683 Patent, the Examiner determined that the Practical Guide to SABRE "can be considered as a 'printed publication', as [it] 'was made available to the extent that persons interested in the subject matter, exercising reasonable diligence, can locate the reference'."

(Exhibit H, Non-Final Rejection in the '683 Patent Reexamination at 4-6).  Thus, the Practical

Guide to SABRE is prior art to the '516 Patent under 35 U.S.C. § 102(a) and (b).

### b.   The Practical Guide to SABRE Raises a Substantial New Question of Patentability

The Practical Guide to SABRE presents a new, non-cumulative teaching that was not

previously considered and discussed on the record during the prosecution of the application that

matured into the '516 Patent. *See* MPEP § 2616.  The SABRE system maintained a massive

collection of catalogs of travel offerings in the SABRE system information database, portions of

which could be selected and searched to locate, for example, a particular desired flight or flights

using multiple search criteria.  (Exhibit K 1, the Practical Guide to SABRE at 2, 51 & 377;

Exhibit D, Final Rejection in the '683 Patent Reexamination at 16 & 47; Exhibit E, Non-Final

Rejection in the '172 Patent Reexamination at 14).

Upon selection of a desired flight from the results of a database search, the SABRE

system could transfer the relevant flight segment information to an electronic itinerary (called a

"Passenger Name Record" or "PNR" in the SABRE literature).  (Exhibit K 1, the Practical Guide

to SABRE at 7, 9-11 & 15-16; Exhibit D, Final Rejection in the '683 Patent Reexamination at 17

& 47; Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 14).  For a selected

flight segment on the itinerary, the SABRE system could: (1) determine the seat availability in

airlines' inventory; (2) determine the price of the airline seat on the itinerary; (3) perform cross-

referencing or converting of a flight segment on the itinerary to determine an alternative airline

offering a comparable flight segment; and (4) generate multiple purchase orders from a single

itinerary if an itinerary included flights on different airlines or included hotel, car, or cruise

reservations.  (Exhibit K 1, the Practical Guide to SABRE at 2, 64, & 279; Exhibit D, Final

Rejection in the '683 Patent Reexamination at 18-19 & 49; Exhibit E, Non-Final Rejection in the

'172 Patent Reexamination at 15-17).

The Pratical Guide to SABRE was not cited by the applicant or considered by the

Examiner during prosecution of the '516 Patent, and thus establish a substantial new question of

patentability.  As further discussed in section (2), the Practical Guide to SABRE anticipates and

alone renders obvious at least claims 1, 3, 5-6, 8-9, 16, 19, and 29 of the '516 Patent and in

combination with the other prior art cited renders the remaining claims obvious.

### 5.      The J-CON Manual

#### a.      The J-CON Manual Qualifies as Prior Art

The J-CON system was first introduced and commercially available prior to 1986, and

the J-CON Manual was publicly available by April 1994.  (Exhibit L, the J-CON Manual).

During the reexamination of the '683 Patent, the Examiner determined that the J-CON Manual

"can be considered as a 'printed publication', as [it] 'was made available to the extent that persons

interested in the subject matter, exercising reasonable diligence, can locate the reference'."

(Exhibit H, Non-Final Rejection in the '683 Patent Reexamination at 4-6).  Thus, the J-CON

Manual is prior art to the '516 Patent under 35 U.S.C. § 102(a).

#### b.      The J-CON Manual Raises a Substantial New Question of Patentability

The J-CON Manual presents a new, non-cumulative teaching that was not previously

considered and discussed on the record during the prosecution of the application that matured

into the '516 Patent. *See* MPEP § 2616.  The J-CON Manual describes an electronic-sourcing

system, the J-CON ("Jobberer-Connection") system, that was designed for use in the operation

and management of automotive parts stores (automotive parts stores were called "Jobbers" in the

J-CON literature).  The J-CON system maintained a library of automotive parts catalogs from

many sources in an electronic database, portions of which could be selected and searched for a desired automotive part.  (Exhibit L, the J-CON Manual at Ch. 3,   Sec. 2, Pages 1 & 11 & Ch. 5, Sec. 3, Page 1; Exhibit D, Final Rejection in the '683 Patent Reexamination at 10 & 33; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 22).

Upon selection of desired parts from database search results, the J-CON system could transfer the relevant automotive parts information for the selected parts from the database onto an electronic requisition (called a "ticket" in the J-CON literature).  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Pages 1, 4 & 8-9; Exhibit D, Final Rejection in the '683 Patent Reexamination at 11-12 & 34; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 23).  For a selected item on the requisition, the J-CON system could electronically determine the current availability in the inventory of the automotive parts store, any sister stores associated with the automotive parts store, and/or independent distributors to the automotive parts store. (Exhibit L, the J-CON Manual at Ch. 2, Sec. 10, Page 15 & Ch. 3, Sec. 2, Pages 6 & 10; Exhibit D, Final Rejection in the '683 Patent Reexamination at 13 & 34; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 25-26).  The J-CON system user could determine the price of parts from data maintained in its local automotive parts database and/or by electronically communicating with its distributor(s).  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Page 4; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 25).

The J-CON system could perform a cross-referencing or converting of data relating to an item on the requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Pages 6 & 11 & Ch. 3, Sec. 4, Pages 1-5; Exhibit D, Final Rejection in the '683 Patent Reexamination at 13-14 & 35-36; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 25-26).

Finally, the J-CON system could generate multiple purchase orders from a single requisition. (Exhibit L, the J-CON Manual at Ch. 4, Sec. 3, Page 1 & Ch. 4, Sec. 4, Pages 1-7; Exhibit D, Final Rejection in the '683 Patent Reexamination at 12; Exhibit E, Non-Final rejection in the '172 Patent Reexamination at 23-24).

The J-CON Manual was not cited by the applicant or considered by the Examiner during prosecution of the '683 Patent, and thus establish a substantial new question of patentability.  As further discussed in section (2) the J-CON Manual in combination with the other cited prior art renders all the claims of the '516 Patent obvious.

**6.      The Gateway Manual**

**a.      The Gateway Manual Qualifies as Prior Art**

Technical Service Associates' (TSA) Gateway system was an electronic sourcing system first introduced and publicly available in 1985, with upgrades released at regular intervals thereafter.  The Gateway Manual was first available to customers in April 1991.  (Exhibit M, Declaration of Jesus Ramos from the '683 Patent Reexamination at ¶ 6).

During the reexamination of the '683 Patent, the Examiner determined that Gateway Manual "can be considered as a 'printed publication', as [it] 'was made available to the extent that persons interested in the subject matter, exercising reasonable diligence, can locate the reference'."  (Exhibit H, Non-Final Rejection in the '683 Patent Reexamination at 4-6).  Thus, the Gateway Manual is prior art to the '516 Patent under 35 U.S.C. § 102(a) and (b).

**b.      The Gateway Manual Raises a Substantial New
        Question of Patentability**

The Gateway Manual presents a new, non-cumulative teaching that was not previously considered and discussed on the record during the prosecution of the application that matured into the '516 Patent. *See* MPEP § 2616.  The Gateway 2000/MRO system was a complete

19

electronic sourcing system with a rich set of catalog, purchasing and inventory management capabilities.  (Exhibit N, the Gateway Manual at 4-18, 4-19 & 15-42; Exhibit D, Final Rejection in the '683 Patent Reexamination at 26 & 73; Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 26).  It included a purchasing module, requisitioning module, and an inventory control module, among others, and maintained a database of third-party product information such as product number, product description, vendor identification code, vendor catalog number, price, commodity code, unit of measure, and inventory status.

The product information database was searchable using multiple search criteria.  (Exhibit N, the Gateway Manual at 4-7 – 4-19; Exhibit D, Final Rejection in the '683 Patent Reexamination at 26-12 & 73; Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 27). The Gateway 2000/MRO system included a separate table in the product information database for electronic product catalogs that the user wished to maintain.  The user could search for and select desired items from electronic catalogs for inclusion on requisitions. The Gateway 2000/MRO system generated requisitions, checked inventory status and pricing for items, converted to alternate sources for items, and generated multiple purchase orders from requisitions.  (Exhibit N, the Gateway Manual at 4-3, 4-5, 4-15, 4-17, 4-20, 4-22, 4-26, 4-27, 4-33 6-3, 6-16 & 6-35; Exhibit D, Final Rejection in the '683 Patent Reexamination at 27-28 & 75-76; Exhibit E, Non-Final Rejection in the '172 Patent Reexamination at 27-28 & 30.)

The Gateway Manual was not cited by the applicant or considered by the Examiner during prosecution of the '516 Patent.  As further discussed in section (2), the Gateway Manual anticipates and alone renders obvious at least claims 1, 3, and 7 of the '516 Patent and in combination with the other prior art cited renders the remaining claims obvious.

7.      **The TV/2 References**

a.      **The IBM TV/2 Qualifies as Prior Art**

The '516 Patent lists the TV/2 Manual (Exhibit O) and the TV/2 Brochure (Exhibit P)

("the TV/2 References," collectively) as prior art.  (Exhibit A, the '516 Patent at cover & col.

4:10-14).  The TV/2 Manual bears copyright registration date of 1991 and describes itself as a

publication.  (Exibit O, the TV/2 Manual at iii).  Thus, the TV/2 Manual is prior art to the '516

Patent under 35 U.S.C. § 102(a) and (b).

b.      **The TV/2 Manual Raises a Substantial New Question of
        Patentability**

The TV/2 Manual presents a new, non-cumulative teaching that was not previously

considered and discussed on the record during the prosecution of the application that matured

into the '516 Patent. *See* MPEP § 2616.  The Applicants admitted certain functionalities of the

TV/2 system that may be considered in conjunction with the TV/2 Manual.  MPEP § 2217(III).

The TV/2 system can be use to make parts catalogs available to users.  (Exhibit O, the

TV/2 Manual at 1).  Multiple catalogs can be searched simultaneously by keyword, catalog

number, or other criteria.  (Ex. A, the '516 Patent at col. 9:16-18 & cols. 9:56 – 10:21; *see*

Exhibit O, the TV/2 Manual at 5).  The TV/2 system can display additional information about

items selected from the search results.  (Ex. A, the '516 Patent at cols. 10:67 – 11:3).  A shopping

list can also be created from the selected items.  (Ex. P, the TV/2 Brochure at 3).  The TV/2

system capable of integrating catalogs with other systems such as order entry, inventory

management, and customer records.  (Ex. P, the TV/2 Brochure at 4).

Although the TV/2 References were disclosed during the original prosecution of the '516

Patent, the were not discussed and their disclosures as described in section (2) below were not

considered.  Furthermore, the TV/2 References were not considered in combination with the P.O.

Writer Manual, the Practical Guide to SABRE, the J-CON Manual, or the Gateway Manual, as those prior art references were not disclosed during the original prosecution.

As further discussed in section (2), the TV/2 References  in combination with each other and with the other cited prior art render all the claims of the '516 Patent obvious.

**(2)      Identification of Every Claim for which Reexamination Is Requested, and a Detailed Explanation of the Pertinency and Manner of Applying the Cited Prior Art to Every Claim for which Reexamination Is Requested.**

Requester is requesting reexamination of claims 1-29 (every claim) of the '516 Patent.

The following is a detailed explanation of the pertinency and manner of applying the prior art cited above in section (1) to every claims for which reexamination is requested.

**A.      Claim 1**

[1] 1.   An electronic sourcing system comprising:
[2] a collection of catalogs of items stored in an electronic format;
[3] a first set of pre-determined criteria associated with said collection of catalogs;
[4] a second set of pre-determined criteria associated with items from each of said catalogs;
[5] a catalog selection protocol, said catalog selection protocol relying on said first set of pre-determined criteria to select less than said entire collection of catalogs, and  [6] including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog; and
[7] a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol.

**1.      "An electronic sourcing system comprising"**

**a.      The '989 Patent Discloses "An electronic sourcing system comprising"**

The '989 Patent discloses an electronic sourcing system.  The '989 Patent is entitled:

JUST-IN-TIME REQUISITION AND INVENTORY MANAGEMENT SYSTEM."

The Abstract to the '989 Patent teaches that:

22

In accordance with the present invention, a requisition and inventory management system is provided which employs both a host computer and a local computer which can be linked to permit two-way data communications in a real time environment.  Each computer has an associated database which can be accessed by that computer.  By accessing its respective database, each computer can build and transmit to the other computer communications blocks of data relating to a particular requisition of an item in Just-in-Time (JIT) inventory or to the management of the JIT inventory.  The other computer can then use the received data to continue processing of the requisition or to update its JIT inventory records.

Indeed, the specification of the '516 Patent acknowledges that the '989 Patent teaches an

electronic sourcing system:

There are a number of known requisition purchasing systems that manage and process requisitions and purchase orders.  One such system is the Fisher Scientific Requisition and Inventory Management System ("Fisher RIMS "), described in U.S. Pat. No. 5,712,989, issued on Jan. 28, 1998, assigned to Fisher Scientific Company of Pittsburgh, Pa., the disclosure of which is incorporated herein by reference.  As its title suggests, Fisher RIMS can also manage inventory.

(Exhibit A, the '516 Patent at col. 1:15-24).

### b. The '542 Patent Discloses "An electronic sourcing system comprising"

The '542 Patent is entitled:

SYSTEM FOR ORDERING ITEMS USING AN ELECTRONIC CATALOGUE

The specification discloses the electronic sourcing system.

The electronic catalog ordering process and system provide an automated facility for procuring standard commercial parts and services.  The two major components are: (1) the Electronic Catalog which permits on-line access to Suppliers' catalogs of products and services; and (2) the Electronic Requisition which automate the hardcopy requisitions and its approval process.  The interactive, electronic coupling of these 2 major components enable a Requestor to complete a purchase request during on system session.  These two major components are distributed among three principal players in the system . . . .

(Exhibit G, the '542 Patent at col. 3:16-27).

### c.     The P.O. Writer Manual Discloses "An electronic sourcing system comprising"

The P.O. Writer Manual discloses an electronic sourcing system.

The P.O. WRITER PLUS Purchasing Module is a collection of programs designed to enable you to easily:

Store, update and retrieve critical purchasing data.

Create and print Requests for Quote, Purchase Orders, Amendments, Blanket Orders and Releases.

Review management summary data on screen or by generating hard copy reports.

The Purchasing Module is the "foundation" of the P.O. WRITER PLUS family of programs. Other Modules available are: Receiving, Vendor Performance, Accounts Payable Interface, Inventory Control, Requisitioning, and Ad-Hoc Reporting Module.  Connectivity Modules include: Data Interface Utility, Remote Requisitioning, Remote Requisitioning Interface, FAX/EDI InterFace, EDI X12 Translation, and Bar Code Interface Programs.

(Exhibit J 2, the P.O. Writer Manual, Purchasing at 1-1).

The availability of electronic sourcing features is evidenced by the Main Menu screen of

the P.O. Writer Plus V.10 system, shown below, including Purchase Orders ("P.O. Create"),

Inventory Control, and Requisitioning ("Requisition Interface").



*Fig. 1. P.O. Writer Plus Main Menu*

(Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 2).

### d.   The Practical Guide to SABRE Discloses "An electronic sourcing system comprising"

The Practical Guide to SABRE discloses an electronic sourcing system.

> SABRE is an interactive and dynamic system.  It is interactive because it is based on a "request and reply" system.  It is a communication device between the user (the travel agent) and SABRE's vast reservoir of knowledge, its data base.  The agent "asks" SABRE for information by typing in a request on a keyboard similar to a typewriter. SABRE responds by displaying the answer on a monitor that looks like a TV screen.
> SABRE is a dynamic system because it is constantly changing.  It is being programmed continually with up-to-date information. Everything from current air fares to advisories for international travelers is provided in a timely and accurate manner.  For example, SABRE stores more than 40 million air fares in the system.  It also makes, on the average, 10,000 fare changes per day.

(Exhibit K 1, the Practical Guide to SABRE at 2).

### e.   The J-CON Manual Discloses "An electronic sourcing system comprising"

The J-CON Manual discloses an electronic sourcing system. The Overview to the J-CON system states that:

25

Overview

Your new J -CON system provides a full range of features to make you and your employees more productive.  J -CON is designed to give you the tools and information you need to compete successfully in the fast-changing automotive aftermarket.

J-CON's Point-of-Sale/Total Recall decreases your employees' training time and increases their accuracy.  The inventory and pricing programs give you greater control over your profit margins and ensure consistent, customer-based pricing.  The purchasing programs enable you to quickly create purchase orders based on your real needs.

(Exhibit L, the J-CON Manual at Ch. l, Sec. l, Page 1)

### f.      The Gateway Manual Discloses "An electronic sourcing system comprising"

The Gateway Manual discloses in the introduction of the REQUISITION PROCESSES

section that the Gateway system is an electronic sourcing system.

The requisition processes incorporate the function for entry of a requisition, maintaining and displaying of requisitions, deleting and printing requisitions, and functions for copying prior orders to  create a new requisition. . . .

Purchase orders can be created from previously entered requisition data, or directly, without having a requisition on file.

(Exhibit N, the Gateway Manual at 4-1).

### g.      The TV/2 References Disclose "An electronic sourcing system comprising"

The TV/2 References disclose making catalog available so users can purchase items from

them.

In particular, information providers (such as manufacturers) can use the program to make parts catalogs and service manuals available to users (for example, their sales and service managers) in an electronic (*online*) format.

(Exhibit O, the TV/2 Manual at 1).

Technical Viewer/2 is suitable for a whole range of uses and industries in which information is supplied in large quantities and updated regularly, and where users need fast access to precise details.

Potential uses include:

. . .

- Integrating parts catalogues with dealers' computer systems such as order entry, inventory management and customer records

(Exhibit P, the TV/2 Brochure at 4).

    **2.**    **"a collection of catalogs of items stored in an electronic format"**

        **a.**    **The '989 Patent Discloses "a collection of catalogs of items stored in an electronic format"**

The '989 Patent discloses a system in which both a host database 20 and a local database 50 can store data related to items from multiple third party suppliers and distributors (i.e., "vendors").



## FIG. 1

Host computer 10 controls all inventory, pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory database 20 (which is **actually comprised of several databases**, as will be described below).

(Exhibit F, the '989 Patent, col. 3: 10-14 (emphasis added)).

Inventory portions of database 20 includes data describing the items and quantities thereof available at **a particular Distributor warehouse 30 and at other Distributor warehouses. Other portions of database 20 includes item**

> **records for each Product regularly sold by the Distributor. Each item record preferably includes information such as Distributor's catalog or part number for the Product, Distributor's list price, Distributor's current cost, Distributor's supplier (vendor) for the Product and a code identifying the Product as part of a product grouping to be treated similarly for customer discounting purposes**.

(Exhibit F, the '989 Patent, col. 3:18-28 (emphasis added)).

> **Host database also includes data regarding items from third party suppliers 39** whose products the Distributor does not routinely supply to its customers.

(Exhibit F, the '989 Patent, col. 3 :65-4: 1 (emphasis added)).

The local database 50 on local computer 40 also contains product information within a

Part Master Table:

> On the hard disk drive of local computer 40 is a local database which is diagrammatically represented by block 50 of FIG. 1. **Local database 50 is a relational database containing records describing the items and their respective quantities and prices of items currently stored in a Just-In-Time (JIT) facility 51.**

(Exhibit F, the '989 Patent, col. 4:21-26 (emphasis added)).

As shown in the excerpt from Fig. 3 below, operating on the local computer 40, a

Customer Service Representative (CSR) enters a stock (i.e., product) number at step 200. In

response, at step 202,

> Local computer searches Part Master Table for entered stock number

If the stock number is found at step 204, the local computer then:

> Update[s] Requisition Item Table with UM, PT, Xref, and Desc from Part master Table entry associated with entered stock number



FIG. 3

Thus, the '989 Patent teaches a system in which portions of a database, i.e., a host database 20 and a local database 50, can store data related to items from multiple third party suppliers. To the extent such collections of data about items are considered "catalogs" for purposes of the claims of the '516 patent, the '989 patent discloses such catalogs.

       **b.**    **The '542 Patent Discloses "a collection of catalogs of items stored in an electronic format"**

The '542 Patent discloses that a supplier creates three separate catalogs: a Master Catalog; a Public Catalog; and Private Catalog.



FIG. 1

(Exhibit G, the '542 Patent).  More than one supplier may maintain such catalogs.

       The first Electronic Catalog segment consists of a Supplier Master Catalog which is maintained by each Supplier.  It is used as the basis for the second Electronic Catalog segment, consisting of the Public Catalog and the Private Catalog.

       The Public Catalog permits multiple customers to access and identify products from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:20-26).

### c.      The P.O. Writer Manual Discloses "a collection of catalogs of items stored in an electronic format"

The P.O. Writer Manual discloses an electronic database to store catalogs:

A Catalogue can be entered by requisitioners or it (the catalogue) can be created from the P.O. WRITER PLUS Item Master File. . . .  This is the recommended method for creating a catalogue. It saves clerical time and effort. The requisitioners will then be working with the same item data that is resident in the Purchasing Module.

31

(*See* Exhibit J 6, the P.O. Writer Manual, Requisitioning at 3-1).  Each catalog is associated with a unique CATALOGUE ID and this field is used to assign an item to a specific catalog.  (Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-231). The P.O. Writer was capable of maintaining multiple catalogs.  The  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 22 & 130-31).  A list of available catalogs may be displayed by Catalog ID.  (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 131).

In the P.O. Writer Plus system, a product catalog could be organized to contain only products supplied by a single vendor (e.g., Best Buy).

The system sorts and displays all items in the Best Buy Catalog that start with the letters CAR, as shown below.

(Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-226).

### d.    The Practical Guide to SABRE Discloses "a collection of catalogs of items stored in an electronic format"

The Practical Guide to SABRE discloses an electronic database to store data relating to items (e.g., flight segments) and associated sources (e.g., airlines):

> SABRE has a comprehensive database containing all American Airlines flights, as well as flights scheduled by many other carriers who choose to participate in the reservation system.

(Exhibit K 1, the Practical Guide to SABRE, at 2).  The flight information maintained in the database is associated with the respective airlines (sources) that offer each of the flights.  To the extent such collections of data about available products and services are considered "catalogs" for purposes of the '516 patent, not only did the SABRE system maintain multiple catalogs from multiple vendors in its local database, it also communicated directly with other reservation systems, updating the system with the most current catalog information.  (Exhibit K 1, the Practical Guide to SABRE at 481).

> ### e.   The Gateway Manual Disclose "a collection of catalogs of items stored in an electronic format"

The Gateway Manual discloses an electronic database to store catalogs:

> The GATEWAY 2000/MRO System provides a capability to define and store vendor catalogues that can be used for selection during PO entry.

(Exhibit N, the Gateway Manual at 15-42).  Multiple catalogs could be stored.

> To select items from a standard catalog, position the cursor at the beginning of the new line item description and press the F7 key.  A list of pre-stored catalog names will be displayed.

> Catalogs can be created for any group of commonly ordered items and used repeatedly throughout requisition and PO processing.  Catalogs contain a heading that describes the catalog plus the vendor name and catalog name.

(Exhibit N, the Gateway Manual at 4-18).

> ### f.   The TV/2 References Disclose "a collection of catalogs of items stored in an electronic format"

The TV/2 References disclose storing multiple catalogs.

> In particular, information providers (such as manufacturers) can use the program to make parts catalogs and service manuals available to users (for example, their sales and service managers) in an electronic (*online*) format.

(Exhibit O, the TV/2 Manual at 1).

> Technical Viewer/2 is suitable for a whole range of uses and industries in which information is supplied in large quantities and updated regularly, and where users need fast access to precise details.
>
> Potential uses include:
>
> . . .
>
> - Integrating parts catalogues with dealers' computer systems such as order entry, inventory management and customer records

(Exhibit O, the TV/2 Brochure at 4).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).

> **3.    "a first set of pre-determined criteria associated with said collection of catalogs"**
>
> > **a.    The '989 Patent Discloses "a first set of pre-determined criteria associated with said collection of catalogs"**

The '989 Patent discloses databases associated with specific criteria:

> "Host computer 10 controls all inventory, pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory database 20 (which is **actually comprised of several databases**, as will be described below). . . ."

(Exhibit F, the '989 Patent at col. 3: 10-14 (emphasis added)).

> Inventory portions of database 20 includes data describing the items and quantities thereof available at a particular Distributor warehouse 30 and at other Distributor warehouses.  Other portions of database 20 includes item records for each Product regularly sold by the Distributor.  **Each item record preferably includes** information such as Distributor's catalog or part number for the Product, Distributor's list price, Distributor's current cost, Distributor's supplier (vendor)

for the Product and **a code identifying the Product as part of a product grouping to be treated similarly for customer discounting purposes**.

(Exhibit F, the '989 Patent at col. 3:18-28 (emphasis added)).

> **b.    The '542 Patent Discloses "a first set of pre-determined criteria associated with said collection of catalogs"**

The '542 Patent discloses three separate databases associated with specific criteria: a

Master Catalog; a Public Catalog; and Private Catalog.



(Exhibit G, the '542 Patent at Fig. 1).  More than one supplier may maintain such catalogs.

> The first Electronic Catalog segment consists of a Supplier Master Catalog which is maintained by each Supplier.  It is used as the basis for the second Electronic Catalog segment, consisting of the Public Catalog and the Private Catalog.
>
> The Public Catalog permits multiple customers to access and identify products from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:20-26).

The '542 Patent also teaches including separate catalogs in different computer systems.

> 1. A system for electronically ordering items comprising:
> . . .
> a first Customer/Requestor computer system containing a first private catalog and
>   having means for accessing said catalogs on said public computer system,
>   means for electronically ordering items directly from the suppler, and means for
>   modifying said first private catalog; and
> a second Customer/Requestor computer system containing a second private
>   catalog and having means for accessing said catalogs on said public computer
>   system, means or electronically ordering items directly from the supplier, and
>   means for modifying said second private catalog so that said second private
>   catalog is different form said first private catalog.

(Exhibit G, the '542 Patent at col. 7:5-29).

> ### c.     The P.O. Writer Manual Discloses "a first set of pre-determined criteria associated with said collection of catalogs"

The P.O. Writer Manual discloses associating a collection of catalogs with

CATALOGUE IDs.  A list of available CATALOGUE IDs was available by pressing a function

key. (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 131; Exhibit J 4, the P.O. Writer

Manual, Requisitioning at 2-7).

> The CREATE REQUISITION FROM CATALOGUE Screen displays.  From this
> screen, there are several ways to display a catalogue.



*Fig. 2-5. Create Requisition From Catalogue Screen*

You can display the catalogue by Catalogue ID:

(Exhibit J 4, the P.O. Writer Manual, Requisitioning at 2-7)

### d.   The Practical Guide to SABRE Discloses "a first set of pre-determined criteria associated with said collection of catalogs"

Portions of the catalog database disclosed in the Practical Guide to SABRE were

associated with different criteria.  For example, specific portions of the airline flights database

were associated with different airlines:

> request specific carrier availability by specifying one or more airlines in the
> availability entry.

(Exhibit K 1, the Practical Guide to SABRE at  51).

### e.   The Gateway Manual Discloses "a first set of pre-determined criteria associated with said collection of catalogs"

The Gateway Manuals discloses catalog names associated with each catalog.

To select items from a standard catalog, position the cursor at the beginning of a
new line item description and press the F7 key. A list of pre-stored catalog names
will be displayed . . .  **To select a catalog, move the lightbar to the desired**

37

**catalog and press enter.** The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).

> **4.**     **"a second set of pre-determined criteria associated with items from each of said catalogs"**

>> **a.**     **The '989 Patent Discloses "a second set of pre-determined criteria associated with items from each of said catalogs"**

The '989 Patent describes the use of local computer 40 and various data screens for

entering product information to find items in the local database 50:

> As the data (e.g., Account Number, Requisition Number and Stock Numbers) associated with a single requisition are **entered through the various data screens of local computer 40**, that computer creates a set of Requisition Tables (a Requisition Header Table and a Requisition Item Table) . . . .

(Exhibit F, the '989 Patent at col. 6:31-34 (emphasis added)).

> The CSR may also **enter an item by using a catalog or reference number** from a third-party supplier other than the Distributor where the same item has both Distributor and third party catalog numbers (which are necessarily different). In the preferred embodiment, most records in local database 50 identify products by a stock number or part number . . . .

(Exhibit F, the '989 Patent at col. 8:24-29 (emphasis added)).

>> **b.**     **The '542 Patent Discloses "a second set of pre-determined criteria associated with items from each of said catalogs"**

The '542 Patent discloses a user searching for items in the private or public catalogs.



(Exhibit G, the '542 Patent at Fig. 3 (cropped)).

> Through an application program, the Requester initiates the requisition by accessing the Public or Private Catalog to search for the item of interest (Block 300).

(Exhibit G, the '542 Patent at col. 5:42-45). Inherently, the catalog items must have some

associated criteria upon with to search.

c.    **The P.O. Writer Manual Discloses "a second set of pre-determined criteria associated with items from each of said catalogs"**

The P.O. Writer Manual describes associating items with criteria, including item number, item description, and commodity code, that at least partially describes a desired item. (Exhibit J 4, the P.O. Writer Manual, Requisitioning at page 2-7).

> For example, if you would like to see only those items whose description begins with PEN, you would enter PEN in the ITEM DESCRIPTION - STARTING WITH field as shown below:

The figure below shows items associated with the descriptions that start with the characters "PEN":



*Fig. 2-8. Entering Quantities*

(Exhibit J 4, the P.O. Writer Manual, Requisitioning at page 2-10).  Alternatively, the P.O. Writer Plus system could display all items that begin with the letters and are supplied by the same vendor.

> The system sorts and displays all items in the Best Buy Catalog that start with the letters CAR, as shown below.



(Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-226).

> **d.**  **The Practical Guide to SABRE Discloses "a second set of pre-determined criteria associated with items from each of said catalogs"**

The Practical Guide to SABRE discloses that items are associated with various criteria, such as city pair, date, departure and arrival time, number of stops, connecting locations, and flight number.

To request seat availability on AA 73, in coach class (Y), departure on March 24, from ORD to HNL:



The entry looks like this without spacing: *1AA73Y24MARORDHNL.*

(Exhibit K 1, the Practical Guide to SABRE at 63).  If the particular flight is sold out, the

SABRE system will automatically search for and display alternatives associated with at least

some of the same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO  LO* -*WL   145A
 24MAR   MON   ORD/CST      HNL/HST-4
SEE CHI FOR CGX/MDW/ORD/PWK
1UA  47 FO YO BO MO QO HO      ORDHNL 5 1140A  447P D10 LS 0 TA
2UA   1 FO CO Y4 B4 M4 QO HO ORDHNL 8 1025A  332P 747 LS 0 TA
3UA 107 FO YO BO MO QO HO      ORDHNL 4 1254P  756P D10 LD 1 TA
4AA 955 F7 Y7 B7 M7 H7 QO KO ORDHNL N  255P 1033P D10 D 1
5UA 111 F4 Y4 B4 M4 QO HO VO ORDLAX 7 1200N  231P 733 L 0 TA
6DL 157 F4 Y4 B4 M4 Q4 H4 K4      HNL 5  555P  927P L10 D 0 TA
         L4
```

   If the class of service is sold out, SABRE displays a city pair availability
for alternate flights.
   In the above response, the requested class, Y, is sold out and the wait list
is open.  SABRE is displaying six alternate flights for the travel date, city pairs,
and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).

   **e.**  **The J-CON Manual Discloses "a second set of pre-determined
     criteria associated with items from each of said catalogs"**

The J -CON Manual describes how the J-CON system included numerous mechanisms

and screen displays for entering product information that was descriptive of items in the parts

database.  One capability described included:

   At the MANUFACTURERS field, enter the numbers of the manufacturers for
   which you want part information. Then press <Enter> to return to the Part Display
   Screen. The Part Display Screen then shows the correct parts for the vehicle and
   manufacturers you selected.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Page 11).

#### f. The Gateway Manual Discloses "a second set of predetermined criteria associated with items from each of said catalogs"

The Gateway Manual describes that each catalog contains information about items.

> When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window. To choose from a catalog position the lightbar to the desired item and press enter. A window will be displayed for entry of the quantity required. Enter a quantity. The system will return for another selection.

(Exhibit N, the Gateway Manual at 4-19).

#### g. The TV/2 References Disclose "a second set of pre-determined criteria associated with items from each of said catalogs"

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3). The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs. TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).

### 5. "a catalog selection protocol . . . relying on said first set of predetermined criteria to select less than said entire collection of catalogs"

#### a. The '989 Patent Discloses "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs"

The '989 Patent discloses using the criteria associated with the databases to limit

which databases are searched:

In the validation step. host computer 10 checks the customer account number, item stock number (**using the product type information to determine what database in host databases 20 to search**) and the price against the relevant information in host database 20 to validate the data in the received purchase order data block.

(Exhibit F, the '989 Patent at col. 18:63-19:1 (emphasis added)).

> **b.    The '542 Patent Discloses "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs"**

The '542 Patent discloses selecting either the Public Catalog or the Private Catalog to

search.

The Buyer may access the Public or the Private Catalog as deemed necessary to perform the normal buying task.

(Exhibit G, the '542 Patent at col. 6:5-7).

Through an application program, the Requester initiates the requisition by accessing the Public or Private Catalog to search for the item of interest (Block 300).

(Exhibit G, the '542 Patent at col. 5:42-45).

The '542 Patent discloses separating catalogs into different computer systems that may be

accessed separately.

1. A system for electronically ordering items comprising:
. . .
a first Customer/Requestor computer system containing a first private catalog and having means for accessing said catalogs on said public computer system, means for electronically ordering items directly from the suppler, and means for modifying said first private catalog; and
a second Customer/Requestor computer system containing a second private catalog and having means for accessing said catalogs on said public computer system, means or electronically ordering items directly from the supplier, and means for modifying said second private catalog so that said second private catalog is different form said first private catalog.

(Exhibit G, the '542 Patent at col. 7:5-29).

c.      **The P.O. Writer Manual Discloses "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs"**

The P.O. Writer Manual discloses that a user was able to select a particular product catalog to search.  For example, if the user knew the CATALOGUE ID of the desired catalog, the user could select that catalog by entering the correct Catalog ID at the top of the CREATE REQUISITION FROM CATALOG screen. (Exhibit J 1, the P.O. Writer Manual, Guided Tour at 131). In the following figure, the user searched the catalogue of the vendor "Best Buy Supply" for all items that start with the letters "CAR."



*Fig. 19-5. Best Buy Catalogue - Sorted By Item Desc.*

(Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-226).  If the user did not know the specific CATALOGUE ID to select, he could view a list of available CATALOGUE IDs by pressing a function key.  (Exhibit J 4, the P.O. Writer Manual, Requisitioning at 2-7). The desired catalog could then be selected from that list.  (Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-224). Alternatively, the user could select all the catalogs for searching by leaving the CATALOGUE

ID field blank in the CREATE REQUISITION FROM CATALOG screen. (Exhibit J 4, the P.O.

Writer Manual, Requisitioning at 2-7).

> **d.     The Practical Guide to SABRE Discloses "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs"**

A user was able to select one or more specified portions of the airline database to search

or, alternatively, search across all airlines.  To select specific portions of the airline flights

database to search, the user is taught to:

> request specific carrier availability by specifying one or more airlines in the availability entry.

(Exhibit K 1, the Practical Guide to SABRE at 51).  The Practical Guide to SABRE explicitly

teaches how a user could search only a portion of the airline flights database.  For example, a

SABRE user could select only the portion of the database containing flight information from

United Airlines to search, rather than the entire set of flights in the database.

> Some travelers have a preference of carriers. This is especially true for participants in an airline's "Frequent Flyer" program. These programs "reward" passengers with discounted or free travel incentives based on the number of miles they have flown on a specific carrier's system. Other passengers simply prefer a specific carrier based on past experience.
>      The basic primary availability entry (for instance, *123JAN ATLMEM 7A)* displays availability for the city pair for *all* airlines. The agent can view an availability for a specific carrier. Most of the major domestic carriers have this capability in SABRE and a list of them can be obtained from the computer system.
>      The format to request carrier specific availability is similar to primary availability. The difference is to add the carrier's two letter code at the end of the availability entry. The *cross* of *Lorraine* key ( + ) is used as a separator and is entered before the carrier code.

(Exhibit K 1, the Practical Guide to SABRE at 53).

        e.        **The Gateway Manual Discloses "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs"**

The Gateway Manuals discloses selecting a catalog by its names.

> To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. A list of pre-stored catalog names will be displayed . . . **To select a catalog, move the lightbar to the desired catalog and press enter.** The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).

        6.        **"a catalog selection protocol . . . including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog"**

        a.        **The '989 Patent Discloses "a catalog selection protocol . . . including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog"**

The '989 Patent discloses using a matching vendor identification code with a subset of said collection of catalogs.  In the '989 Patent the vendor identification code is a product-type code associated with a particular group of vendors.

> Another product type—type 03—comprises the items regularly sold by the Distributor, some of which are stored at Distributor's warehouse 30, some of which are regularly ordered by Distributor from vendors such as vendor 37 for direct shipment to any of Distributor's customers.

(Exhibit F, the '989 Patent at col. 5:28-33).

> Another product type— type 04—comprises items which Distributor does not regularly purchase for resale, but which Distributor can and elects to order from a

vendor 38 (who may be a supplier to Distributor of other products) for sale to particular customers such as Customer.

(Exhibit F, the '989 Patent at col. 5:37-42). Although the example given only includes one vendor for each product type, the '989 Patent clearly contemplates the association of multiple vendor with each product type.

Another product type—type 03—comprises the items regularly sold by the Distributor, some of which are stored at Distributor's warehouse 30, some of which are regularly ordered by Distributor **from vendors** such as vendor 37 for direct shipment to any of Distributor's customers. (Exhibit F, the '989 Patent at col. 5:28-33 (emphasis added)). In addition to product types, the '989 Patent discloses the use of vendor-specific numbers. (*See, e.g.*, the '989 Patent at cols. 37-44 (showing various tables such as Tables V and XVII representing displays which include 'VENDOR NBR")).

> **b.     The '542 Patent Discloses "a catalog selection protocol . . . including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog"**

The '542 Patent discloses selecting either the Public Catalog or the Private Catalog to search.

> The Buyer may access the Public or the Private Catalog as deemed necessary to perform the normal buying task.

(Exhibit G, the '542 Patent at col. 6:5-7).

> Through an application program, the Requester initiates the requisition by accessing the Public or Private Catalog to search for the item of interest (Block 300).

(Exhibit G, the '542 Patent at col. 5:42-45).  The Public Catalog may contain catalogs of several

suppliers.

> The Public Catalog permits multiple customers to access and identify products
> from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:25-26).

> **c.**      **The P.O. Writer Manual Discloses "a catalog selection protocol
> . . . including matching a vendor identification code with a
> subset of said collection of catalogs, wherein said subset of
> catalogs includes both a vendor catalog from a predetermined
> vendor and a second catalog from a predetermined third party
> that is one of a manufacturer and a competing vendor, said
> predetermined third party selling items corresponding to items
> in said vendor catalog"**

The P.O. Writer Manual describes associating a particular CATALOGUE ID with

multiple vendors.  In the P.O. Writer Plus system, a product catalog could be organized to

contain only products supplied by a single vendor (e.g., Best Buy).  (Exhibit J 2, the P.O. Writer

Manual, Purchasing at 2-224 – 2-226 (containing an image of a screen displaying various items

in the Best Buy Catalogue and stating "[i]n this example, the catalogue is composed of all items

for Best Buy Supply.").

> **d.**      **The Practical Guide to SABRE Discloses "a catalog selection
> protocol . . . including matching a vendor identification code
> with a subset of said collection of catalogs, wherein said subset
> of catalogs includes both a vendor catalog from a
> predetermined vendor and a second catalog from a
> predetermined third party that is one of a manufacturer and a
> competing vendor, said predetermined third party selling items
> corresponding to items in said vendor catalog"**

Portions of the catalog database disclosed in the Practical Guide to SABRE could be

selected for searching, resulting in a narrowed database search that did not search the entire set

of product information maintained in the database.  For example, from a group of airline flight

catalogs, car rental catalogs, hotel catalogs, etc., a user of the SABRE system could search just

through a subset that includes only hotel rooms rather than flight segments or rental cars.

(Exhibit K 1, the Practical Guide to SABRE at 377).

Additionally, a user was able to select one or more specified portions of the airline database to search or, alternatively, search across all airlines.  To select specific portions of the airline flights database to search, the user is taught to:

> request specific carrier availability by specifying one or more airlines in the availability entry.

(Exhibit K 1, the Practical Guide to SABRE at page 51).  The Practical Guide to SABRE explicitly teaches how a user could search only a portion of the airline flights database.  For example, a SABRE system user could select only the portion of the database containing flight information from United Airlines to search, rather than the entire set of flights in the database.

> Some travelers have a preference of carriers. This is especially true for participants in an airline's "Frequent Flyer" program. These programs "reward" passengers with discounted or free travel incentives based on the number of miles they have flown on a specific carrier's system. Other passengers simply prefer a specific carrier based on past experience.
>
> The basic primary availability entry (for instance, *123JAN ATLMEM 7A)* displays availability for the city pair for *all* airlines. The agent can view an availability for a specific carrier. Most of the major domestic carriers have this capability in SABRE and a list of them can be obtained from the computer system.
>
> The format to request carrier specific availability is similar to primary availability. The difference is to add the carrier's two letter code at the end of the availability entry. The *cross* of *Lorraine* key ( +) is used as a separator and is entered before the carrier code.

(Exhibit K 1, the Practical Guide to SABRE at page 53).

      e.     **The Gateway Manual Discloses "a catalog selection protocol . . . including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog"**

The Gateway Manual discloses that catalogs could be stored from multiple vendors.

To select items from a standard catalog, position the cursor at the beginning of the new line item description and press the F7 key.  A list of pre-stored catalog names will be displayed.

Catalogs can be created for any group of commonly ordered items and used repeatedly throughout requisition and PO processing.  Catalogs contain a heading that describes the catalog plus the vendor name and catalog name.

(Exhibit N, the Gateway Manual at 4-18).  The catalogs could be selected.

To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. A list of pre-stored catalog names will be displayed . . .  **To select a catalog, move the lightbar to the desired catalog and press enter.** The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).

      7.     **"a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

          a.     **The '989 Patent Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

The '989 Patent teaches a search program that searches for matching items in a database

in response to entered product information and adding information:

In step 202, **local computer 40 searches the Part Master Table in local database 50 for the STOCK NBR that has just been entered** (which can be either the Customer's stock number or a valid cross-reference number such as a

Distributor catalog number). (A description of how the Part Master Table in local database 50 is created by the CSR is set forth in detail below).

(Exhibit F, the '989 Patent at col. 8:46-52 (emphasis added)).

**b.    The '542 Patent Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

The '542 Patent discloses a user searching for items in the private or public catalogs.



(Exhibit G, the '542 Patent at Fig. 3 (cropped)).

Through an application program, the Requester initiates the requisition by accessing the Public or Private Catalog to search for the item of interest (Block 300).

52

(Exhibit G, the '542 Patent at col. 5:42-45).  Inherently, the catalog items must have some

associated criteria upon with to search.

> ### c.    The P.O. Writer Manual Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"

The P.O. Writer Manual describes how a user could search for matching items among

selected product catalogs by entering search criteria, including item number, item description,

and commodity code, that at least partially describes a desired item.  (Exhibit J 4, the P.O. Writer

Manual, Requisitioning at 2-7).

> For example, if you would like to see only those items whose description begins with PEN, you would enter PEN in the ITEM DESCRIPTION - STARTING WITH field as shown below:"



*Fig. 2-7. Sorting By Item Description*

(Exhibit J 4, the P.O. Writer Manual, Requisitioning at 2-9).  The figure below shows the result

of searching the catalog for items whose description starts with the characters "PEN":



*Fig. 2-8. Entering Quantities*

(Exhibit J 4, the P.O. Writer Manual, Requisitioning at 2-10).  The result includes item information in addition to the information used to perform the search.

> ### d.   The Practical Guide to SABRE Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"

The Practical Guide to SABRE teaches that a travel agent could enter information relating to a travel itinerary "that at least partially described at least one desired" portion of the itinerary.   The SABRE travel services database described in the SABRE References could limit the search among catalogs for airline flights, car rentals, hotels, etc. to search, for example, for airline flights using a range of different search criteria, including city pair, date, departure and arrival time, number of stops, and connecting locations.  The search results

> show[] the travel agent what airlines and flight numbers operate between two cities on a given date. Important information such as departure/arrival times, type of equipment, and meal service is also displayed for each flight.

(Exhibit K 1, the Practical Guide to SABRE at 34).  Similarly, the Practical Guide to SABRE teaches that:

> At the end of Chapter 4, you will be able to:
>
> Request specific carrier availability by specifying one or more airlines in the availability entry
>
> Request availability by specifying connecting city . . .
>
> Request flight availability for American Airlines and ·other airlines by flight number, date, and city pair.

(Exhibit K 1, the Practical Guide to SABRE at 51).

> Another way to request availability is by desired arrival time . . .  The function of this type of availability is to display flights that are scheduled nearest to a desired arrival time into the destination."

(Exhibit K 1, the Practical Guide to SABRE at 43).

> This type of availability request will display connecting flight services through a specific connecting city. This type of request is useful when only connecting flight services are available for a passenger and the passenger has a connecting city preference.

(Exhibit K 1, the Practical Guide to SABRE at 55).

> One of the most important functions of the airline computer system is to display seat availability for a given travel date, city pair, and time of departure or arrival.

(Exhibit K 1, the Practical Guide to SABRE at 34).

> **e.**     **The J-CON Manual Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

The J-CON Manual describes the J-CON system's search program for matching items in a database in response to the descriptive information entered by the user.   The J-CON system's automotive parts database was searchable to locate a desired part using multiple descriptive search criteria with "wild cards" to find part numbers and manufacturers.

With PartSource you can use wild cards if you do not know the manufacturer or part number.  Wild cards are character—asterisk and question mark—that stand for any other character that may appear in the same place.  The question mark (?) replaces any one character, and the asterisk (*) replaces zero or more characters. The following chart shows some examples of using wild card characters.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 4, Page 2.)

The system also included a hierarchical search function that leads the user to the desired part through a series of search layers; for example, from auto make, to model, to year, to engine size and type, to relevant assembly (such as brakes, body, cooling, heating, electrical, etc). to sub-assembly, until ultimately, as shown in the screenshot below, a list of relevant parts was presented to the user for selection.  The list of relevant parts includes information in addition to the criteria used to search for the item.  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Pages 1-5).

In addition, a J-CON user could enter part numbers as a basis for searching the database for desired items.

If there is more than one Interchange part that matches the competitive part number you entered, J-CON finds and displays all the possible matching Interchange parts. You can then use <Page Up>, <Page Down>, and the arrow keys to move through the list of Interchange parts.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).

f.     **The Gateway Manual Discloses "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

The Gateway Manual describes that each catalog contains information about items.  The items could be searched a selected once a catalog was selected.

When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required.  Enter a quantity.  The system will return for another selection.

(Exhibit N, the Gateway Manual at 4-19).

> **g.      The TV/2 References Disclose "a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol"**

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).

**B.      Claim 2**

2.   An electronic sourcing system as recited in claim **1,** wherein catalogs comprising said collection of catalogs are stored in separate databases.

> **1.      The '989 Patent Discloses "An electronic sourcing system . . . wherein catalogs comprising said collection of catalogs are stored in separate databases"**

The '989 Patent teaches that the host database is comprised of several databases.

> Host computer 10 controls all inventory. pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory database 20 (which is actually comprised of several databases. as will be described below) in a manner which is well known to those of ordinary skill in the art.

(Exhibit F, the '989 Patent at col. 3:10-15).  Furthermore, the figure of the '989 Patent show that

information related to particular vendors or distributor warehouses originate from separate

sources.



(Exhibit F, the '989 Patent at Fig. 2).

>    **2.    The '542 Patent Discloses "An electronic sourcing system . . . wherein
>    catalogs comprising said collection of catalogs are stored in separate
>    databases"**

The '542 Patent discloses locating different private catalogs on separate computer

systems.

>    1. A system for electronically ordering items comprising:
>    . . .
>    a first Customer/Requestor computer system containing a first private catalog and
>      having means for accessing said catalogs on said public computer system,
>      means for electronically ordering items directly from the suppler, and means for
>      modifying said first private catalog; and
>    a second Customer/Requestor computer system containing a second private
>      catalog and having means for accessing said catalogs on said public computer
>      system, means or electronically ordering items directly from the supplier, and

> means for modifying said second private catalog so that said second private
> catalog is different form said first private catalog.

(Exhibit G, the '542 Patent at col. 7:5-29).

### C.     Claim 3

3.   An electronic sourcing system as recited in claim **1,** wherein said catalogs comprising said collection of catalogs are stored in a single database.

### 1.     The '989 Patent Discloses "An electronic sourcing system . . . wherein said catalogs comprising said collection of catalogs are stored in a single database"

The '989 Patent teaches that the multiple catalog databases are consolidated into a single

database.

> Host computer 10 controls all inventory. pricing and requisitioning operations of
> the Distributor's regularly stocked items using host pricing and inventory database
> 20 (which is actually comprised of several databases. as will be described below)
> in a manner which is well known to those of ordinary skill in the art.

(Exhibit F, the '989 Patent at col. 3:10-15).  Furthermore, the figure of the '989 Patent show that

information related to particular vendors or distributor warehouses originate from separate

sources.



(Exhibit F, the '989 Patent at Fig. 2).  The information from the separate sources are consolidated into a single database.

> Host database 20 also includes data regarding Distributor's cost prices and vendors for items from third-party suppliers 37 and 38 which are regularly distributed by Distributor to its customers.

(Exhibit A, the '989 Patent at col. 3:62-65).

### 2.     The '542 Patent Discloses "An electronic sourcing system . . . wherein said catalogs comprising said collection of catalogs are stored in a single database"

The '542 Patent teaches that the multiple catalogs may be stored in a centralized database.

> In an electronic catalog requisition system in which catalogs of items offered by suppliers are stored on a central catalog database system . . . .

(Exhibit G, the '542 Patent at col. 7:50-52, col. 8:34-36).

> **3.      The P.O. Writer Manual Discloses "An electronic sourcing system . . . wherein said catalogs comprising said collection of catalogs are stored in a single database"**

The P.O. Writer Manual discloses creating a single database of items associated with

different catalogs.

> A Catalogue can be entered by requisitioners or it (the catalogue) can be created from the P.O. WRITER PLUS Item Master File. . . .  This is the recommended method for creating a catalogue. It saves clerical time and effort. The requisitioners will then be working with the same item data that is resident in the Purchasing Module.

 (*See* Exhibit J 4, the P.O. Writer Manual, Requisitioning at 3-1).  Each catalog was associated

with a unique CATALOGUE ID and this field was used to assign an item to a specific catalog.

(Exhibit J-2, the P.O. Writer Manual, Purchasing at 2-231).

> **4.      The Practical Guide to SABRE Discloses "An electronic sourcing system . . . wherein said catalogs comprising said collection of catalogs are stored in a single database"**

The Practical Guide to SABRE discloses a system that maintains data relating to items

(e.g., flight segments) and multiple associated sources (e.g., airlines) in a single database.

> SABRE has a comprehensive database containing all American Airlines flights, as well as flights scheduled by many other carriers who choose to participate in the reservation system.

(Exhibit K 1, the Practical Guide to SABRE at 2).

> **5.      The Gateway Manual Discloses "An electronic sourcing system . . . wherein said catalogs comprising said collection of catalogs are stored in a single database"**

The Gateway Manual discloses a single database to store catalogs:

> The GATEWAY 2000/MRO System provides a capability to define and store vendor catalogues that can be used for selection during PO entry.

(Exhibit N, the Gateway Manual at 15-42).  Multiple catalogs could be stored.

> To select items from a standard catalog, position the cursor at the beginning of the new line item description and press the F7 key. A list of pre-stored catalog names will be displayed.
>
> Catalogs can be created for any group of commonly ordered items and used repeatedly throughout requisition and PO processing. Catalogs contain a heading that describes the catalog plus the vendor name and catalog name.

(Exhibit N, the Gateway Manual at 4-18).

### D.     Claim 4

4.   An electronic sourcing system as recited in claim **1,** wherein said predetermined third party makes items in said vendor catalog.

#### 1.     The '989 Patent Discloses "An electronic sourcing system . . . wherein said predetermined third party makes items in said vendor catalog"

The '989 Patent describes that the items in the database may be associated with a

manufacturer.

> Part Master records (see Table VI) also contain a manufacturer or supplier's catalog or part number, which will be the number used on purchase orders and, for product types 01 and 03, will be the Distributor's catalog or part number. The local database 20 contains a cross-reference file between such stock numbers and a particular supplier's catalog or part number. The creation of this cross-reference file by the CSR is described below.

(Exhibit F, the '989 Patent at col. 8:32-39).

#### 2.     The J-CON Manual Discloses "An electronic sourcing system . . . wherein said predetermined third party makes items in said vendor catalog"

The J-CON Manual describes how the J-CON system maintained automotive parts

information from multiple manufacturers in an electronic database, including such information as

part number, auto make, model, and year, engine size, subassembly, product description,

inventory status, price, manufacturer, distributor(s), and unit of measurement. The database

contained product catalogs of multiple manufacturers and distributors. J-CON's Interchange

module arranged the product information in catalogs by manufacturer. J-CON also arranged

product catalogs by product type.  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Page 4; Ch. 3,

Sec. 4, Page 4 & Ch. 4, Sec. 10, Pages 1-6).

### 3. The TV/2 References Disclose "An electronic sourcing system . . . wherein said predetermined third party makes items in said vendor catalog"

The TV/2 References disclose storing part catalogs for manufacturers.

> In particular, information providers (such as manufacturers) can use the program to make parts catalogs and service manuals available to users (for example, their sales and service managers) in an electronic (*online*) format.

(Exhibit O, the TV/2 Manual at 1).

### E. Claim 5

5. An electronic sourcing system as recited in claim **1,** further including a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party.

### 1. The '989 Patent Discloses "An electronic sourcing system . . . including a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party"

The '989 Patent discloses cross-reference table catalog numbers.

> As described below. database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product. either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).

> Part Master records (see Table VI) also contain a manufacturer or supplier's catalog or part number, which will be the number used on purchase orders and, for product types 01 and 03, will be the Distributor's catalog or part number. The local database SO contains a cross-reference file between such stock numbers and a particular supplier's catalog or part number. The creation of this cross-reference file by the CSR is described below.

(Exhibit F, the '989 Patent at col. 8:32-39).

> In step 202, **local computer 40 searches the Part Master Table in local database 50 for the STOCK NBR that has just been entered** (which can be

63

either the Customer's stock number **or a valid cross-reference number** such as a Distributor catalog number). (A description of how the Part Master Table in local database 50 is created by the CSR is set forth in detail below).

(Exhibit F, the '989 Patent at col. 8:46-52 (emphasis added)).

2.    **The Practical Guide to SABRE Discloses "An electronic sourcing system . . . including a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party"**

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE system will automatically search for and display alternatives associated with at least some of the same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO   LO* -*WL   145A
 24MAR   MON    ORD/CST       HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO    ORDHNL 5 1140A  447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO ORDHNL 8 1025A  332P 747 LS O TA
3UA  107 FO YO BO MO QO HO    ORDHNL 4 1254P  756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO ORDHNL N  255P 1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO ORDLAX 7 1200N  231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4     HNL 5  555P  927P L1O D O TA
         L4
```

If the class of service is sold out, SABRE displays a city pair availability for alternate flights.
In the above response, the requested class, Y, is sold out and the wait list is open.  SABRE is displaying six alternate flights for the travel date, city pairs, and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).  The table shown above enables the user to cross-reference flights from different vendors.

### 3. The J-CON Manual Discloses "An electronic sourcing system . . . including a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party"

The J-CON Manual discloses a cross-reference module.

Interchange is J-CON'S **electronic cross-reference** for parts. You begin InterChange by pressing <InterChange> from any field on the POS screen except WRKSTAT, or from PartFinder.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 2) (emphasis added)).

If you have PartFinder, you can add InterChange to your J-CON.  Interchange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called Interchange parts).  InterChange can find an InterChange part even if you do not know the manufacturer or the complete part number of the competitive part.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 1, Page 1).

### F. Claim 6

6.   An electronic sourcing system as recited in claim **1,** wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information.

### 1. The '989 Patent Discloses "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The '989 Patent describes the use of a catalog number associated with each items:

The CSR may also **enter an item by using a catalog or reference number** from a third-party supplier other than the Distributor where the same item has both Distributor and third party catalog numbers (which are necessarily different). In the preferred embodiment, most records in local database 50 identify products by a stock number or part number . . . .

(Exhibit F, the '989 Patent at col. 8:24-29 (emphasis added)).  The '989 Patent also describes

associating each item with descriptive text.

. . . the Requisition Item Table in local database 50 is updated with the following information from the entry of the Part Master Table associated with the relevant stock number: the default unit of measure; the product type; the cross-reference number, if any; and **a text description of the item**.

(Exhibit F, the '989 Patent at cols. 8:64 – 9:2 (emphasis added)).

### 2. The '542 Patent Discloses "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The '542 Patent teaches that the items in the catalogs may be associated with a specific

part number.

> Features allow the Supplier to load catalog items, load catalog changes, load by specified commodity, **load by specified item part number**.

(Exhibit G, the '542 Patent at col. 5:19-21 (emphasis added)).

### 3. The P.O. Writer Manual Discloses "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The P.O. Writer Manual describes associating items with criteria, including item number,

item description, and commodity code, that at least partially describes a desired item. (Exhibit J

4, the P.O. Writer Manual, Requisitioning at page 2-7).

> For example, if you would like to see only those items whose description begins with PEN, you would enter PEN in the ITEM DESCRIPTION - STARTING WITH field as shown below:

The figure below shows items associated with the descriptions that start with the characters

"PEN":



*Fig. 2-8. Entering Quantities*

(Exhibit J 4, the P.O. Writer Manual, Requisitioning at page 2-10).

### 4. The Practical Guide to SABRE Discloses "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The Practical Guide to SABRE discloses that items are associated with various textual criteria, such as city pair, date, departure and arrival time, number of stops, connecting locations, and flight number.

To request seat availability on AA 73, in coach class (Y), departure on March 24, from ORD to HNL:



The entry looks like this without spacing: *1AA73Y24MARORDHNL.*

(Exhibit K 1, the Practical Guide to SABRE at 63).

67

### 5.     The J-CON Manual Discloses "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The J-CON Manual describes that a user could enter part numbers as a basis for

searching the database for desired items.

> If there is more than one Interchange part that matches the competitive part number you entered, J-CON finds and displays all the possible matching Interchange parts. You can then use <Page Up>, <Page Down>, and the arrow keys to move through the list of Interchange parts.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).

### 6.     The TV/2 References Disclose "An electronic sourcing system . . . wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information"

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).

### G.     Claim 7

7.   An electronic sourcing system as recited in claim **1,** wherein said catalog selection protocol includes providing an electronic listing of available catalogs from said collection of catalogs.

### 1. The P.O. Writer Manual Discloses "An electronic sourcing system . . . wherein said catalog selection protocol includes providing an electronic listing of available catalogs from said collection of catalogs"

The P.O. Writer Manual discloses that if the user did not know the specific catalog to select, a list of available CATALOGUE IDs could be viewed by pressing a function key. (Exhibit J 4, the P.O. Writer Manual, Requisitioning at 2-7).  The desired catalog could then be selected from that list.  (Exhibit J 2, the P.O. Writer Manual, Purchasing at 2-224).

### 2. The Gateway Manual Discloses "An electronic sourcing system . . . wherein said catalog selection protocol includes providing an electronic listing of available catalogs from said collection of catalogs"

The Gateway Manual discloses that the available catalogs could be listed.

> To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. **A list of pre-stored catalog names will be displayed**. . . . .  To select a catalog, move the lightbar to the desired catalog and press enter. The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).

## H. Claim 8

8.  A electronic sourcing system as recited in claim **7**, wherein said electronic listing of available catalogs is less than said collection of catalogs.

### 1. The Practical Guide to SABRE Discloses "An electronic sourcing system . . . wherein said electronic listing of available catalogs is less than said collection of catalogs"

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE system will automatically search for and display alternatives associated with at least some of the same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO   LO* -*WL   145A
  24MAR   MON   ORD/CST      HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO     ORDHNL 5 1140A  447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO  ORDHNL 8 1025A  332P 747 LS O TA
3UA  107 FO YO BO MO QO HO     ORDHNL 4 1254P  756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO  ORDHNL N  255P 1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO  ORDLAX 7 1200N  231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4     HNL 5  555P  927P L1O D O TA
         L4
```

      If the class of service is sold out, SABRE displays a city pair availability
for alternate flights.

      In the above response, the requested class, Y, is sold out and the wait list
is open.  SABRE is displaying six alternate flights for the travel date, city pairs,
and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).  The SABRE system only lists catalogs that

have similar flights to the one originally requested.

    **I.**    **Claim 9**

[1]  9. An electronic sourcing system comprising:
[2]  a collection of catalogs of items stored in an electronic format;
[3]  a first identification code associated with a first item in a first catalog;
    a second identification code associated with a second item in a second catalog,     said first
      item and said second item being generally equivalent, and wherein a selection of one
      identification code from one of said first and second catalogs provides the other
      identification code from the other of said catalogs.

        **1.**      **"An electronic sourcing system comprising"**

              **a.**      **The '989 Patent Discloses "An electronic sourcing system**
                    **comprising"**

      This is the same preamble as in claim 1.  See above for discussion regarding the

disclosure of this limitation in the '989 Patent.

b.      **The '542 Patent Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the '542 Patent.

c.      **The P.O. Writer Manual Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the P.O. Writer Manual.

d.      **The Practical Guide to SABRE Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the Practical Guide to SABRE.

e.      **The J-CON Manual Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the J-CON Manual.

f.      **The Gateway Manual Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the Gateway Manual.

g.      **The TV/2 References Disclose "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the TV/2 References.

71

2.        "a collection of catalogs of items stored in an electronic format"

    a.        **The '989 Patent Discloses "a collection of catalogs of items stored in an electronic format"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the '989 Patent.

    b.        **The '542 Patent Discloses "a collection of catalogs of items stored in an electronic format"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the '542 Patent.

    c.        **The P.O. Writer Manual Discloses "a collection of catalogs of items stored in an electronic format"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the P.O. Writer Manual.

    d.        **The Practical Guide to SABRE Discloses "a collection of catalogs of items stored in an electronic format"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the Practical Guide to SABRE.

    e.        **The Gateway Manual Discloses "An electronic sourcing system comprising"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the Gateway Manual.

    g.        **The TV/2 References Disclose "An electronic sourcing system comprising"**

This is the same limitation that appears in claim 1.  See above for discussion regarding the disclosure of this limitation in the TV/2 References.

3.   "a first identification code associated with a first item in a first catalog;
   a second identification code associated with a second item in a second catalog,
   said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs"

   a.   The '989 Patent Discloses "a first identification code associated with a first item in a first catalog; a second identification code associated with a second item in a second catalog, said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs"

The '989 Patent teaches using cross-reference tables to associates generally equivalent

items from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).

> When the Cross Reference Maintenance data screen 76 is displayed and a data block is sent to host computer 10 containing a vendor number such as 1000 250 or a competitor's number such as B2650250, the host computer 10 will search various files in host database 20 (as during sourcing described above) and recognized each as a number corresponding to Distributor catalog number 02 540K.  The data block returned to the local computer 40 will then contain a set such as:

> VN000020407 1000 250 VN00000001 540K

where the two vendor numbers (VN) represent Corning and the Distributor, respectively, or a set such as

> CP00000013 B2650250 VN00000001 02 540K.

73

If the local database 50 contains the Customer's equivalent (e.g. BREAKERS250 as a stock number), it will add to the Cross-Reference Table lines such as:

| | | | |
|---|---|---|---|
| and: | BREAKER250 | VN00002047 | 1000 250 |
| | BREAKER250 | CP00000013 | B2650250 |

which also contain a description, unit and product type as shown in Table XVII.

(Exhibit F, the '989 Patent at col. 33:52 – 34:10).

**b.    The '542 Patent Discloses "a first identification code associated with a first item in a first catalog; a second identification code associated with a second item in a second catalog, said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs"**

The '542 Patent teaches accessing multiple catalogs.

In an electronic catalog requisition system in which catalogs of items offered by suppliers are stored on a central catalog database system, a method for retrieving information relating to said items . . . .

(Exhibit G, the '542 Patent at col. 7:50-52, col. 8:34-36).

The first Electronic Catalog segment consists of a Supplier Master Catalog which is maintained by each Supplier.  It is used as the basis for the second Electronic Catalog segment, consisting of the Public Catalog and the Private Catalog.

The Public Catalog permits multiple customers to access and identify products from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:20-26).  Generally equivalent items can be displayed

simultaneously.

It is still another object of this invention to provides an electronic catalog ordering system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item

from a first catalog is associated with an item from a second catalog.

   4. The system as claimed in claim 3 wherein said public computer system
   includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).

   **c.**  **The Practical Guide to SABRE Discloses "a first identification
code associated with a first item in a first catalog; a second
identification code associated with a second item in a second
catalog, said first item and said second item being generally
equivalent, and wherein a selection of one identification code
from one of said first and second catalogs provides the other
identification code from the other of said catalogs"**

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE

system will automatically search for and display alternatives associated with at least some of the

same criteria.

```
1AA73Y24MARORDHNL
YO*  F3   MO* QO* HO* BO* KO   LO* -*WL   145A
 24MAR   MON   ORD/CST     HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO      ORDHNL 5 1140A  447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO ORDHNL 8 1025A  332P 747 LS O TA
3UA  107 FO YO BO MO QO HO      ORDHNL 4 1254P  756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO ORDHNL N  255P 1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO ORDLAX 7 1200N  231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4    HNL 5  555P  927P L1O D O TA
         L4
```

  If the class of service is sold out, SABRE displays a city pair availability
for alternate flights.
  In the above response, the requested class, Y, is sold out and the wait list
is open.  SABRE is displaying six alternate flights for the travel date, city pairs,
and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).

         **d.**      **The TV/2 References Disclose "a first identification code associated with a first item in a first catalog; a second identification code associated with a second item in a second catalog, said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs"**

The TV/2 References disclose searching for catalog items associated with specific criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  The same criteria selects items from various catalogs and displays the information for those items.

      **J.**      **Claim 10**

10. An electronic sourcing system as recited in claim **9,** wherein said first identification code is identical to said second identification code.

        **1.**      **The '989 Patent Discloses "An electronic sourcing system . . . wherein said first identification code is identical to said second identification code"**

The '989 Patent discloses using a Distributor's catalog number as the identification code for equivalent parts from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  A given Distributor's catalog number is associated

through the cross-reference table not only to the its vendor's part number, but also to other

supplier to distributor part numbers.

> **2.      The J-CON Manual Discloses "An electronic sourcing system . . . wherein said first identification code is identical to said second identification code"**

The J-CON Manual teaches that interchangeable part from different catalogs are

associated with a "competitive part number" in the cross-referencing module InterChange.

> After you enter the competitive part number and the group or manufacturers to search, J-CON displays the Interchange parts for the competitive part.
>
> If there is more than one InterChange part that matches the competitive part number you entered, J-CON finds and displays all the possible matching Interchange parts. You can then use <Page Up>, <Page Down>, and the mow keys to move through the list of Interchange parts.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).

> **3.      The TV/2 References Disclose "An electronic sourcing system . . . wherein said first identification code is identical to said second identification code"**

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  The same criteria selects items from various catalogs

and displays the information for those items.

### K.      Claim 11

11. An electronic sourcing system as recited in claim **9,** wherein at least of one of said first and second catalogs includes said first and second identification codes.

#### 1.      The '989 Patent Discloses "An electronic sourcing system . . . wherein at least of one of said first and second catalogs includes said first and second identification codes"

The '989 Patent discloses using a Distributor's number catalog number as the

identification code for equivalent parts from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  Because a given Distributor's catalog number may be

associated through the cross-reference table to both its vendor's part number and other supplier to

distributor part numbers, the catalog with the Distributor's catalog number is both the first and

second identification codes.  Thus, the catalog including the Distributor's catalog would include

both the first and second identification codes.

### L.      Claim 12

12. An electronic sourcing system as recited in claim **9,** wherein said selection includes a comparison of said one of said first and second identification codes with a cross-reference table listing both of said identification codes as being generally equivalent.

#### 1.      The '989 Patent Discloses "An electronic sourcing system . . . wherein said selection includes a comparison of said one of said first and second identification codes with a cross-reference table listing both of said identification codes as being generally equivalent"

The '989 Patent teaches using cross-reference tables to associates generally equivalent

items from different catalogs.

As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  The '998 Patent includes an in-depth discussion of

the cross-reference table at columns 31-35.

> **2.      The '542 Patent Discloses "An electronic sourcing system . . . wherein said selection includes a comparison of said one of said first and second identification codes with a cross-reference table listing both of said identification codes as being generally equivalent"**

The '542 Patent teaches displaying generally equivalent items simultaneously.

It is still another object of this invention to provides an electronic catalog ordering system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item

from a first catalog is associated with an item from a second catalog.

4. The system as claimed in claim 3 wherein said public computer system includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).

> **3.      The J-CON Manual Discloses "An electronic sourcing system . . . wherein said selection includes a comparison of said one of said first and second identification codes with a cross-reference table listing both of said identification codes as being generally equivalent"**

The J-CON Manual teaches using cross-reference module to associates generally

equivalent items from different catalogs.

Interchange is J-CON'S electronic cross-reference for parts. You begin InterChange by pressing <InterChange> from any field on the POS screen except WRKSTAT, or from PartFinder.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 2).

If you have PartFinder, you can add InterChange to your J-CON.  Interchange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called Interchange parts).  InterChange can find an

InterChange part even if you do not know the manufacturer or the complete part number of the competitive part.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 1, Page 1).

### M.   Claim 13

13. An electronic sourcing system as recited in claim **9**, wherein a user selects one of said first and second identification codes, lacks access to said catalog, corresponding to said selected identification code, but is given access to the other said catalog corresponding to said non-selected identification code.

**1.   The '542 Patent Discloses "An electronic sourcing system . . . wherein a user selects one of said first and second identification codes, lacks access to said catalog, corresponding to said selected identification code, but is given access to the other said catalog corresponding to said non-selected identification code"**

The '542 Patent discloses enabling the supplier to control access to the Public Catalog.

The Customer Access/Download Control function permits catalog Suppliers to control Customers' access to and downloading of Supplier maintained catalog data on the Public Catalog. This aids Suppliers in controlling where, and to whom, their products/pricing information is made available. Customer access control provides mechanism for catalog Suppliers to control Customer access to their database. When invoked, this would inhibit/permit specific users access to the catalog information.

(Exhibit G, the '542 Patent, col. 5:1-10). As shown in the figure below, however, the buyer

always has access to the Private Catalog.



(Exhibit G, the '542 Patent at Fig. 4 (cropped)).  A user may thus select the public catalog and be

denied access, and then select the private catalog and be given access.

### N.    Claim 14

14. An electronic sourcing system as recited in claim **9**, wherein a user selects one of said first
and second identification codes, and has access to both said first and second catalogs.

> **1.    The '542 Patent Discloses "An electronic sourcing system . . . wherein
> a user selects one of said first and second identification codes, and has
> access to both said first and second catalogs"**

The '542 Patent discloses enabling the supplier to control access to the Public Catalog.

The Customer Access/Download Control function permits catalog Suppliers to
control Customers' access to and downloading of Supplier maintained catalog
data on the Public Catalog.  This aids Suppliers in controlling where, and to

whom, their products/pricing information is made available.  Customer access control provides mechanism for catalog Suppliers to control Customer access to their database.  When invoked, this would inhibit/permit specific users access to the catalog information.

(Exhibit G, the '542 Patent, col. 5:1-10).  As shown in the figure below, however, the buyer always has access to the Private Catalog.



(Exhibit G, the '542 Patent at Fig. 4 (cropped)).  A user may thus select the public catalog and have access to both the public and private catalogs.

### O.    Claim 15

15. An electronic sourcing system as recited in claim **9**, wherein said first and second identification codes correspond to a part number.

1. **The '989 Patent Discloses "An electronic sourcing system . . . wherein said first and second identification codes correspond to a part number"**

The '989 Patent discloses using a Distributor's catalog number and vendor part numbers to associate equivalent parts from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).

2. **The '542 Patent Discloses "An electronic sourcing system . . . wherein said first and second identification codes correspond to a part number"**

The '542 Patent teaches that the items in the catalogs may be associated with a specific part number.

> Features allow the Supplier to load catalog items, load catalog changes, load by specified commodity, **load by specified item part number**.

(Exhibit G, the '542 Patent at col. 5:19-21 (emphasis added)).

3. **The J-CON Manual Discloses "An electronic sourcing system . . . wherein said first and second identification codes correspond to a part number"**

The J-CON Manual teaches using cross-reference module to associates generally equivalent items from different catalogs using the respective part numbers.

> Interchange is J-CON'S electronic cross-reference for parts. You begin InterChange by pressing <InterChange> from any field on the POS screen except WRKSTAT, or from PartFinder.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 2).

> If you have PartFinder, you can add InterChange to your J-CON.  Interchange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called Interchange parts).  InterChange can find an InterChange part even if you do not know the manufacturer or the complete part number of the competitive part.

83

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 1, Page 1).

      **4.**    **The TV/2 References Disclose "An electronic sourcing system . . . wherein said first and second identification codes correspond to a part number"**

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).

      **P.**    **Claim 16**

[1] 16. An electronic sourcing system comprising:
[2] at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog; and
[3] converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog.

      **1.**    **"An electronic sourcing system comprising"**

      **a.**    **The '989 Patent Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the

disclosure of this limitation in the '989 Patent.

      **b.**    **The '542 Patent Discloses "An electronic sourcing system comprising"**

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the '542 Patent.

### c. The P.O. Writer Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the P.O. Writer Manual.

### d. The Practical Guide to SABRE Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the Practical Guide to SABRE.

### e. The J-CON Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the J-CON Manual.

### f. The Gateway Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the Gateway Manual.

### g. The TV/2 References Disclose "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the TV/2 References.

### 2. "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"

     **a.**    **The '989 Patent Discloses "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1.  See above for discussion regarding the disclosure in the '989 Patent of "a collection of catalogs of items stored in an electronic format."

Furthermore, the '989 Patent discloses catalogs that have generally equivalent items:

> The Distributor, other distributors and the Customer will frequently use different identifying part numbers for items which are essentially equivalent. e.g., a 250 ml PYREX Griffin beaker, manufactured by Corning (who designates it as part number 1000 250) could have a Distributor's catalog number 02 540K and competitor's part numbers B2650250, 13912207, and 029827. Distributor and competitors may also have similar products from other vendors (e.g. a 250 rnl KlMAX Griffin beaker from Kimble).

(Exhibit F, the '989 Patent at col. 31:67 – 32:23).

     **b.**    **The '542 Patent Discloses "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1.  See above for discussion regarding the disclosure in the '542 Patent of "a collection of catalogs of items stored in an electronic format."

Furthermore, generally equivalent items can be displayed simultaneously.

> It is still another object of this invention to provides an electronic catalog ordering system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item from a first catalog is associated with an item from a second catalog.

4. The system as claimed in claim 3 wherein said public computer system includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).

> **c.     The P.O. Writer Manual Discloses "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1.  See above for discussion regarding the disclosure in the P.O. Writer Manual of "a collection of catalogs of items stored in an electronic format."

> **d.     The Practical Guide to SABRE Discloses "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1.  See above for discussion regarding the disclosure in the Practical Guide to SABRE of "a collection of catalogs of items stored in an electronic format."

Furthermore, the Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE system will automatically search for and display generally equivalent, available

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO  LO* -*WL   145A
  24MAR   MON   ORD/CST      HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO     ORDHNL 5 1140A   447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO  ORDHNL 8 1025A   332P 747 LS O TA
3UA  107 FO YO BO MO QO HO     ORDHNL 4 1254P   756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO  ORDHNL N  255P  1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO  ORDLAX 7 1200N   231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4     HNL 5  555P   927P L1O D O TA
         L4
```

flights.

> If the class of service is sold out, SABRE displays a city pair availability for alternate flights.
>
> In the above response, the requested class, Y, is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date, city pairs, and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).

> **e.     The Gateway Manual Discloses "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1. See above for discussion regarding the disclosure in the Gateway Manual of "a collection of catalogs of items stored in an electronic format."

> **f.     The TV/2 References Disclose "at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog"**

This limitation is substantially the same as the limitation "a collection of catalogs of items stored in an electronic format" that appears in claim 1. See above for discussion regarding

the disclosure in the TV/2 References of "a collection of catalogs of items stored in an electronic

format."

> ### 3.  "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"

>> #### a.  The '989 Patent Discloses "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"

The '989 Patent teaches using cross-reference tables to associates generally equivalent

items from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  The cross-reference table is used to converting item

information:

> Thus, if the data block contains a line representing a requisition for 02 540K, it will be recognized and host computer 10 will proceed to sourcing 306 and pricing 308.  If, however, the data block contains a line representing a requisition for 1000 250 (Corning part number for the breaker), **a match will be found in the vendor cross reference file in host database 20 and that item converted** to 02 540K for souring 306 and pricing 308.

(Exhibit F, the '989 Patent at col. 32:16-23 (emphasis added).

>> #### b.  The '542 Patent Discloses "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"

The '542 Patent teaches accessing multiple catalogs.

> In an electronic catalog requisition system in which catalogs of items offered by suppliers are stored on a central catalog database system, a method for retrieving information relating to said items . . . .

(Exhibit G, the '542 Patent at col. 7:50-52, col. 8:34-36).

> The first Electronic Catalog segment consists of a Supplier Master Catalog which is maintained by each Supplier.  It is used as the basis for the second

> Electronic Catalog segment, consisting of the Public Catalog and the Private Catalog.
>
> The Public Catalog permits multiple customers to access and identify products from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:20-26).  Generally equivalent items can be displayed simultaneously.

> It is still another object of this invention to provides an electronic catalog ordering system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item from a first catalog is associated with an item from a second catalog.

> 4. The system as claimed in claim 3 wherein said public computer system includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).

> c.    **The P.O. Writer Manual Discloses "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"**

During Purchase Order generation, the vendor listed on the requisition can be automatically converted to different vendors.  (Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 11-15).  During requisition consolidation/splitting, the P.O. Writer system initially includes the vendor from the requisition.



*Fig. 11. Splitting/Consolidating Req's*

(Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 12).  Pressing F6 allows the system to automatically assign different vendors.



*Fig. 12. Assigning Vendor Numbers Automatically*

(Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 13).  After the automatic process,

another vendor is added to the requisition.



*Fig. 13. Assigned Vendor/Buyer Numbers*

(Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 13 (annotation in original)).

> **d.    The Practical Guide to SABRE Discloses "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"**

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE

system will automatically search for and display alternatives associated with at least some of the

same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO   LO* -*WL   145A
  24MAR   MON   ORD/CST      HNL/HST-4
SEE CHI FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO      ORDHNL 5 1140A   447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO   ORDHNL 8 1025A   332P 747 LS O TA
3UA  107 FO YO BO MO QO HO      ORDHNL 4 1254P   756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO   ORDHNL N  255P  1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO   ORDLAX 7 120ON   231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4      HNL 5  555P   927P L1O D O TA
         L4
```

> If the class of service is sold out, SABRE displays a city pair availability for alternate flights.
>
> In the above response, the requested class, Y, is sold out and the wait list is open. SABRE is displaying six alternate flights for the travel date, city pairs, and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64). The table shown above enables the user to convert the data for the original flight into data for an equivalent flight from another source.

### e.   The J-CON Manual Discloses "converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog"

The J-CON Manual teaches using cross-reference module to associates generally equivalent items from different catalogs.

> Interchange is J-CON'S electronic cross-reference for parts. You begin InterChange by pressing <InterChange> from any field on the POS screen except WRKSTAT, or from PartFinder.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 2).

> If you have PartFinder, you can add InterChange to your J-CON. Interchange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called Interchange parts). InterChange can find an InterChange part even if you do not know the manufacturer or the complete part number of the competitive part.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 1, Page 1).

### Q.    Claim 17

17. An electronic sourcing system as recited in claim **16**, wherein at least one catalog database contains said data from each of said catalogs, and said converting means includes a non-catalog database containing a cross-reference table such that use of a reference code corresponding to an entry in said cross-reference table links said item from said first catalog to data relating to said item from said second catalog.

> **1.    The '989 Patent Discloses "An electronic sourcing system . . . wherein at least one catalog database contains said data from each of said catalogs, and said converting means includes a non-catalog database containing a cross-reference table such that use of a reference code corresponding to an entry in said cross-reference table links said item from said first catalog to data relating to said item from said second catalog"**

The '989 Patent discloses a single database that is a compilation of the multiple catalogs.

> Host computer 10 controls all inventory, pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory database 20 (which is **actually comprised of several databases**, as will be described below).

(Exhibit F, the '989 Patent at col. 3: 10-14 (emphasis added)).  The '989 Patent also discloses a

cross-reference table that may be separate from the catalogs.

> As described below. database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product. either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  The cross-reference table is used to converting item

information:

> Thus, if the data block contains a line representing a requisition for 02 540K, it will be recognized and host computer 10 will proceed to sourcing 306 and pricing 308.  If, however, the data block contains a line representing a requisition for 1000 250 (Corning part number for the breaker), **a match will be found in the vendor cross reference file in host database 20 and that item converted** to 02 540K for souring 306 and pricing 308.

(Exhibit F, the '989 Patent at col. 32:16-23 (emphasis added)).

### R.      Claim 18

18. An electronic sourcing system as recited in claim **16**, wherein one or more catalog databases contain said data from each of said catalogs, and said converting means including one or more catalog databases including an identical reference code corresponding to said data from said first catalog and said data from said second catalog.

> **1.      The '989 Patent Discloses "An electronic sourcing system . . . wherein one or more catalog databases contain said data from each of said catalogs, and said converting means including one or more catalog databases including an identical reference code corresponding to said data from said first catalog and said data from said second catalog"**

The '989 Patent discloses a single database that is a compilation of the multiple catalogs.

> Host computer 10 controls all inventory, pricing and requisitioning operations of the Distributor's regularly stocked items using host pricing and inventory database 20 (which is **actually comprised of several databases**, as will be described below).

(Exhibit F, the '989 Patent at col. 3: 10-14 (emphasis added)).  The '989 Patent also discloses a

cross-reference table that may be part of the item catalogs.

> As described below. database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product. either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  The cross-reference table is used to converting item

information:

> Thus, if the data block contains a line representing a requisition for 02 540K, it will be recognized and host computer 10 will proceed to sourcing 306 and pricing 308.  If, however, the data block contains a line representing a requisition for 1000 250 (Corning part number for the breaker), **a match will be found in the vendor cross reference file in host database 20 and that item converted** to 02 540K for souring 306 and pricing 308.

(Exhibit F, the '989 Patent at col. 32:16-23 (emphasis added)).

### S.      Claim 19

19. An electronic sourcing system as recited in claim **16,** wherein said first catalog may be searched separately from said second catalog.

1. **The '989 Patent Discloses "An electronic sourcing system . . . wherein said first catalog may be searched separately from said second catalog"**

The '989 Patent discloses using the criteria associated with the databases to limit

which databases are searched:

> In the validation step. host computer 10 checks the customer account number, item stock number (**using the product type information to determine what database in host databases 20 to search**) and the price against the relevant information in host database 20 to validate the data in the received purchase order data block.

(Exhibit F, the '989 Patent at col. 18:63-19:1 (emphasis added)).

2. **The '542 Patent Discloses "An electronic sourcing system . . . wherein said first catalog may be searched separately from said second catalog"**

The '542 Patent discloses selecting either the Public Catalog or the Private Catalog to

search.

> The Buyer may access the Public or the Private Catalog as deemed necessary to perform the normal buying task.

(Exhibit G, the '542 Patent at col. 6:5-7).

> Through an application program, the Requester initiates the requisition by accessing the Public or Private Catalog to search for the item of interest (Block 300).

(Exhibit G, the '542 Patent at col. 5:42-45).

The '542 Patent discloses separating catalogs into different computer systems that may be

accessed separately.

> 1. A system for electronically ordering items comprising:
> . . .
> a first Customer/Requestor computer system containing a first private catalog and having means for accessing said catalogs on said public computer system, means for electronically ordering items directly from the suppler, and means for modifying said first private catalog; and
> a second Customer/Requestor computer system containing a second private catalog and having means for accessing said catalogs on said public computer

system, means or electronically ordering items directly from the supplier, and means for modifying said second private catalog so that said second private catalog is different form said first private catalog.

(Exhibit G, the '542 Patent at col. 7:5-29).

### 3. The P.O. Writer Manual Discloses "An electronic sourcing system . . . wherein said first catalog may be searched separately from said second catalog"

The P.O. Writer Manual discloses that that a user was able to select a particular product catalog to search.  For example, if the user knew the CATALOGUE ID of the desired catalog, the user could select that catalog by entering the correct Catalog ID at the top of the CREATE REQUISITION FROM CATALOG screen. (Exhibit J 1, the P.O. Writer Manual, Guided Tour at page 131). In the following figure, the user searched the catalogue of the vendor "Best Buy Supply" for all items that start with the letters "CAR."



*Fig. 19-5. Best Buy Catalogue - Sorted By Item Desc.*

(Exhibit J 2, P.O. Writer Manual, Purchasing at page 2-226).  If the user did not know the specific CATALOGUE ID to select, he could view a list of available CATALOGUE IDs by pressing a function key. (Exhibit J 4, the P.O. Writer Manual, Requisitioning at page 2-7).  The

desired catalog could then be selected from that list.  (Exhibit J 2, the P.O. Writer Manual, Purchasing Tutorial at page 2-224).  Alternatively, the user could select all the catalogs for searching by leaving the CATALOGUE ID field blank in the CREATE REQUISITION FROM CATALOG screen. (Exhibit J 4, the P.O. Writer Manual, Requisitioning at page 2-7).

### 4.   The Practical Guide to SABRE Printed Discloses "An electronic sourcing system . . . wherein said first catalog may be searched separately from said second catalog"

Portions of the catalog database disclosed in the Practical Guide to SABRE could be selected for searching, resulting in a narrowed database search that did not search the entire set of product information maintained in the database.  For example, a user of the SABRE system could search for hotel rooms rather than flight segments or rental cars. (Exhibit K 1, the Practical Guide to SABRE at 377).  Additionally, a user was able to select one or more specified portions of the airline database to search or, alternatively, search across all airlines.

### 5.   The Gateway Manual Discloses "An electronic sourcing system . . . wherein said first catalog may be searched separately from said second catalog"

The Gateway Manual discloses selecting a catalog by its names.

> To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. A list of pre-stored catalog names will be displayed . . .  **To select a catalog, move the lightbar to the desired catalog and press enter.** The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).  The selected catalog is then search separately from the other catalogs.

> When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required.  Enter a quantity.  The system will return for another selection.

(Exhibit N, the Gateway Manual at 4-19).

### T.      Claim 20

20. An electronic sourcing system as recited in claim 1**9**, wherein a user lacks access to said first catalog and has access to said second catalog, such that a request for an item in said first catalog provides said data from said second catalog.

### 1.      The '542 Patent Discloses "An electronic sourcing system . . . wherein a user lacks access to said first catalog and has access to said second catalog, such that a request for an item in said first catalog provides said data from said second catalog"

The '542 Patent discloses enabling the supplier to control access to the Public Catalog.

The Customer Access/Download Control function permits catalog Suppliers to control Customers' access to and downloading of Supplier maintained catalog data on the Public Catalog.  This aids Suppliers in controlling where, and to whom, their products/pricing information is made available.  Customer access control provides mechanism for catalog Suppliers to control Customer access to their database.  When invoked, this would inhibit/permit specific users access to the catalog information.

(Exhibit G, the '542 Patent at col. 5:1-10).  As shown in the figure below, however, the buyer always has access to the Private Catalog.



(Exhibit G, the '542 Patent at Fig. 4 (cropped)).  All the items in the Private Catalog are items

downloaded form the Public Catalog.  (Exhibit G, the '542 Patent at col. 4:25-28).  A user may

thus be denied access to the public catalog, but get the information for the item from the private

catalog.

### U.    Claim 21

[1] 21. An electronic sourcing system comprising:

[2] a requisition module including data fields, user-generated criteria entered into at least one of
said data fields to generate at least partial criteria corresponding to a desired item;

[3] a catalog collection searching module, said searching module including a collection of
catalogs of items stored in an electronic format, a catalog selection criteria used to select
less than said entire collection, [4] said searching module being used to generate
additional search-module criteria for said data fields of said requisition module;

[5] a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria;

[6] wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item;

[7] wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, [8] said search-module criteria and a determination system that located items are generally equivalent; and

[9] wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification code from a second located item.

### 1.    "An electronic sourcing system comprising"

#### a.    The '989 Patent Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the '989 Patent.

#### b.    The '542 Patent Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the '542 Patent.

#### c.    The P.O. Writer Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the P.O. Writer Manual.

#### d.    The Practical Guide to SABRE Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the disclosure of this limitation in the Practical Guide to SABRE.

### e. The J-CON Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the

disclosure of this limitation in the J-CON Manual.

### f. The Gateway Manual Discloses "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the

disclosure of this limitation in the Gateway Manual.

### g. The TV/2 References Disclose "An electronic sourcing system comprising"

This is the same preamble as in claim 1.  See above for discussion regarding the

disclosure of this limitation in the Gateway Manual.

### 2. "a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item"

### a. The '989 Patent Discloses "a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item"

The '516 Patent admits that RIMS, as disclosed in the '989 Patent, has numerous modules

including requisition management.  (Exhibit A, the '516 Patent at col. 4:15-25)  Figure 2A from

the '989 Patent shows the REQUISITION MANAGEMENT module.



(Exhibit F, the '989 Patent at Fig. 2A (cropped)).

The '989 Patent also discloses data screens for a user to enter data.

As the data (e.g., Account Number, Requisition Number and Stock Numbers) associated with a single requisition are **entered through the various data screens on local computer 40**, that computer creates a set of Requisition Tables (a Requisition Header Table and a Requisition Item Table) . . . .

(Exhibit F, the '989 Patent at col. 6:31-34 (emphasis added)).

The CSR may also **enter an item by using a catalog or reference number** from a third-party supplier other than the Distributor where the same item has both Distributor and third party catalog numbers (which are necessarily different). In the preferred embodiment, **most records in local database 50 identify products by a stock number or part number . . . .**

103

(Exhibit F, the '989 Patent at col. 8:24-29 (emphasis added)).

> In step 202, **local computer 40 searches the Part Master Table in local database 50** for the STOCK NBR that has just been entered (which can be either the Customer's stock number or a valid cross-reference number such as a Distributor catalog number).

(Exhibit F, the '989 Patent at col. 8:46-51 (emphasis added)).

> **b.** **The J-CON Manual Discloses "a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item"**

The J -CON Manual describes how the J -CON system included numerous mechanisms

and screen displays for a user to enter product information. One capability included:

> At the MANUFACTURERS field, enter the numbers of the manufacturers for which you want part information. Then press <Enter> to return to the Part Display Screen. The Part Display Screen then shows the correct parts for the vehicle and manufacturers you selected.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 2, Page 11).

> **c.** **The TV/2 References Disclose "a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item"**

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  Inherently, the TV/2 system must have some data field to enter the search criteria.

    **3.**    **"a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

        **a.**    **The '989 Patent Discloses "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

This limitation is substantially the same as the combination of limitations "a collection of catalogs of items stored in an electronic format," "a first set of pre-determined criteria associated with said collection of catalogs," and "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs."  See above for discussion regarding the disclosure in the '989 Patent of those limitations.

        **b.**    **The '542 Patent Discloses "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

This limitation is substantially the same as the combination of limitations "a collection of catalogs of items stored in an electronic format," "a first set of pre-determined criteria associated with said collection of catalogs," and "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs."  See above for discussion regarding the disclosure in the '542 Patent of those limitations.

        **c.**    **The P.O. Writer Manual Discloses "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

This limitation is substantially the same as the combination of limitations "a collection of catalogs of items stored in an electronic format," "a first set of pre-determined criteria associated

with said collection of catalogs," and "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs."  See above for discussion regarding the disclosure in the P.O. Writer Manual of those limitations.

> **d.**     **The Practical Guide to SABRE Discloses "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

This limitation is substantially the same as the combination of limitations "a collection of catalogs of items stored in an electronic format," "a first set of pre-determined criteria associated with said collection of catalogs," and "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs."  See above for discussion regarding the disclosure in the Practical Guide to SABRE of those limitations.

> **e.**     **The Gateway Manual Disclose "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection"**

This limitation is substantially the same as the combination of limitations "a collection of catalogs of items stored in an electronic format," "a first set of pre-determined criteria associated with said collection of catalogs," and "a catalog selection protocol . . . relying on said first set of pre-determined criteria to select less than said entire collection of catalogs."  See above for discussion regarding the disclosure in the Gateway Manual of those limitations.

4.    "said searching module being used to generate additional search-
module criteria for said data fields of said requisition module"

a.    The '989 Patent Discloses "said searching module being used to
generate additional search-module criteria for said data fields
of said requisition module"

The '989 Patent disclosed generating additional information from using a stock number a

search criteria.

If, on the other hand, the entered stock number is found in the Part Master Table
in local database 50, as indicated in steps 204 and 208 **the Requisition Item
Table in local database 50 is updated with the following information from the
entry in the Part Master Table associated with the relevant stock number:
the default unit of measure; the product type; the cross-reference number, if
any; and a text description of the item**.

(Exhibit F, the '989 Patent at col. 8:62-9:2 (emphasis added)).

b.    The J-CON Manual Discloses "said searching module being
used to generate additional search-module criteria for said
data fields of said requisition module"

The J-CON Manual discloses that a user could enter part numbers as a basis for searching

the database for desired items.

If there is more than one Interchange part that matches the competitive part
number you entered, J-CON finds and displays all the possible matching
Interchange parts. You can then use <Page Up>, <Page Down>, and the arrow
keys to move through the list of Interchange parts.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).  The results of the search would display

additional information.



(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).

### c. The TV/2 References Disclose "said searching module being used to generate additional search-module criteria for said data fields of said requisition module"

The TV/2 References disclose searching for catalog items associated with specific criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3). The '516 Patent confirms the ability of the TV/2 system to search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs. TV/2 search program 50 would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the search-for items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8). The TV/2 system provides additional information about selected items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs. TV/2 search program 50 would then concatenate those two

> catalogs to perform a keyword, catalog number or other subject search and
> generate a Hit List of pages (panels) from both catalogs where the search-for
> items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  The TV/2 system can display additional information

about items selected from the search results.  (Ex. A, the '516 Patent at cols. 10:67 – 11:3).

**5.** **"a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria"**

    **a.** **The '989 Patent Discloses "a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria"**

The '516 Patent admits sourcing module 44B is from RIMS system.  (Exhibit A, the '516

Patent at col. 4:15- 25).  The '989 Patent discloses that prior art electronic sourcing systems were

well known to include facilities for processing purchase orders for selected items.

> Requisitioning systems that manage and process purchase orders are well known
> in the art. One such system - the Fisher Scientific Reliance system - has been used
> by the customers of Fisher Scientific, the assignee of the present application, for
> some time. Other such systems are described in U.S. Pat. Nos. 4,887,208 and
> 4,972,318. Such systems generally process purchase orders for items and track a
> local inventory.

(Exhibit F, the '989 Patent at col. 1: 6-13 (emphasis added)).  The '516 Patent itself discloses that

the system taught in the '989 Patent was a preferred example of a system for processing purchase

order.

> **There are a number of known requisition purchasing systems that manage
> and process requisitions and purchase orders**.  One such system is the Fisher
> Scientific Requisition and Inventory Management System ("Fisher RIMS"),
> described in U.S. Pat. No. 5,712,989, issued on Jan. 28, 1998, assigned to Fisher
> Scientific Company of Pittsburgh, Pa., the disclosure of which is incorporated
> herein by reference. As its title suggests, Fisher RIMS can also manage inventory.

(Exhibit A, the '516 Patent at col. 1:15-24 (emphasis added)).

109

Electronic sourcing system 5 also includes a requisition / purchasing system 40, **preferably** but not necessarily **the Fisher RIMS system** . . . .

(Exhibit A, the '516 Patent at col. 4:6-8 (emphasis added)).  As shown in Fig. 2A below, the '989

Patent teaches that the requisition is processed to generate purchase orders.



FIG. 2A

　　　In either event, **accepting the requisition by hitting the F2 key once or twice) causes control to be passed to the Purchase Order Build program 112** (shown in FIG. 2A). As described in the diagram FIGS. 5A and 5B, for items of product types 01, 03 and 04, **local computer 40 uses Purchase Order Build Program 112 to create a purchase order between the Customer and the Distributor from the data in the Requisition Header and Item Tables**.

(Exhibit F, the '989 Patent at col. 17: 35-42 (emphasis added)).



FIG. 5A

(annotated)

As shown in steps 334 and 336, **a Purchase Order record internal to the Customer may (at the option of the Customer) be created** and printed out on printer 43 at this stage, recording a sale from the Customer's purchasing department to the requisitioning department or account.

(Exhibit F, the '989 Patent, col. 18:5-9 (emphasis added)).

          **b.**     **The J-CON Manual Discloses "a multiple purchase order generation module, said purchase order generation module**

> **creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria"**

The J-CON Manual discloses that J-CON can generate multiple purchase orders from a single requisition in a number of different ways.  (Exhibit L, the J-CON Manual at Ch. 3, Sec. 3, Page 1).  If a sufficient quantity of a part or parts were not in stock at the Jobber's store, the Jobber could issue purchase order(s) to purchase part(s) from one or more third party vendors (called "warehouses" in the J-CON literature):

> You use Warehouse Inquiry to display price and availability information on parts at your warehouse and **to order parts that you inquire** about.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 10, Page 7 (emphasis added)).

The J-CON Manual further describes how the Warehouse Inquiry Screen is used to generate multiple purchase orders for the matching items from a single requisition, both to multiple suppliers of selected parts and to multiple sister stores where inventory was maintained. (Exhibit L, the J-CON Manual at Ch. 2, Sec. 10, Page 7-16).  The screenshot below illustrates such a transaction.  (Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 8).

```
Calling:   Austin Warehouse                          Inquiry #:    154
IQ Status: LINK ACTIVE (9)                           Comm KB :      33

           QTY                   B    QTY     ON    BUY  WHSE
     MFG   ORD PART NUMBER  WHSE  C  AVAIL   ORDER  INC  PACK    DEALER    CORE    EXT
 01  AC    8   R45TSX        1    C   408     208    8    1       1.08              8.64
 02  GAT   3   24024         1    C    10       0    1    1      16.17             49.51
 03  DEL   1   15258         1    C     4       0    1    1      56.17             56.17
 04
 05
 06
 07
 08
 09
 10

ITEM:      MFG:       QTY:       PART:            WHSE:      BKO/CANCEL:
```

6.    **"wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item"**

a.    **The '989 Patent Discloses "wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item"**

The '989 Patent discloses multiple catalogs with generally equivalent items.

When the Cross Reference Maintenance data screen 76 is displayed and a data block is sent to host computer 10 containing a vendor number such as 1000 250 or a competitor's number such as B2650250, the host computer 10 will search various files in host database 20 (as during sourcing described above) and recognized each as a number corresponding to Distributor catalog number 02 540K.  The data block returned to the local computer 40 will then contain a set such as:

        VN000020407 1000 250 VN00000001 540K

where the two vendor numbers (VN) represent Corning and the Distributor, respectively, or a set such as

        CP00000013 B2650250 VN00000001 02 540K.

If the local database 50 contains the Customer's equivalent (e.g. BREAKERS250 as a stock number), it will add to the Cross-Reference Table lines such as:

|       |             |             |           |
| ----- | ----------- | ----------- | --------- |
|       | BREAKER250  | VN00002047  | 1000 250  |
| and:  | BREAKER250  | CP00000013  | B2650250  |

which also contain a description, unit and product type as shown in Table XVII.

(Exhibit F, the '989 Patent at col. 33:52 – 34:10).

The '989 Patent also discloses using cross-reference table to determine multiple sources

multiple sources from different catalogs.

> As described below. database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product. either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).

> Part Master records (see Table VI) also contain a manufacturer or supplier's catalog or part number, which will be the number used on purchase orders and, for product types 01 and 03, will be the Distributor's catalog or part number. The local database SO contains a cross-reference file between such stock numbers and a particular supplier's catalog or part number. The creation of this cross-reference file by the CSR is described below.

(Exhibit F, the '989 Patent at col. 8:32-39).

> In step 202, **local computer 40 searches the Part Master Table in local database 50 for the STOCK NBR that has just been entered** (which can be either the Customer's stock number or a valid cross-reference number such as a Distributor catalog number). (A description of how the Part Master Table in local database 50 is created by the CSR is set forth in detail below).

(Exhibit F, the '989 Patent at col. 8:46-52 (emphasis added)).

> **b.     The TV/2 References Disclose "wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item"**

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and Promega catalogs.  TV/2 search program 50 would then concatenate those two

114

catalogs to perform a keyword, catalog number or other subject search and
generate a Hit List of pages (panels) from both catalogs where the search-for
items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  Items selected from the list can then be added to a

requisition.

You can create a "shopping list" just be selecting items and passing that list to
another application.

(Exhibit P, the TV/2 Brochure at 3).

7.    **"wherein said multiple sources is limited by said catalog searching
module providing a match according to said user-generated criteria"**

a.    **The '989 Patent Discloses "wherein said multiple sources is
limited by said catalog searching module providing a match
according to said user-generated criteria"**

The '989 Patent discloses using product type information to limit which databases

are searched:

In the validation step. host computer 10 checks the customer account number,
item stock number (**using the product type information to determine what
database in host databases 20 to search**) and the price against the relevant
information in host database 20 to validate the data in the received purchase order
data block.

(Exhibit F, the '989 Patent at col. 18:63-19:1 (emphasis added)).  Product type information is

generated based on information input by the user.

When the [Customer Service Representative] enters an item code in the STOCK
NBR field and hits the ENfER key. local computer 40 begins a program described
in the flowchart is shown in FIG. 3. . . .  If the stock number is not found the Part
Master Table in local database 50 as indicated in steps 204 and 206, the product
type field defaults to product type 03.

(Exhibit F, the '989 Patent at col. 8:40-55).

b.    **The Gateway Manual Discloses "wherein said multiple sources
is limited by said catalog searching module providing a match
according to said user-generated criteria"**

The Gateway Manual discloses the selection of catalogs by catalog name.

115

> To select items from a standard catalog, position the cursor at the beginning of a new line item description and press the F7 key. A list of pre-stored catalog names will be displayed . . . **To select a catalog, move the lightbar to the desired catalog and press enter.** The items listed in this catalog will be displayed for selection.

(Exhibit N, Gateway Manual at page 4-18 (emphasis added)).  The selected catalog is then

search separately from the other catalogs.

> When a catalog has been selected, the items listed in that catalog will be displayed on the screen in a catalog items window.  To choose from a catalog position the lightbar to the desired item and press enter.  A window will be displayed for entry of the quantity required.  Enter a quantity.  The system will return for another selection.

(Exhibit N, the Gateway Manual at 4-19).

### 8.   "said search-module criteria and a determination system that located items are generally equivalent"

#### a.   The '989 Patent Discloses "said search-module criteria and a determination system that located items are generally equivalent"

The '989 Patent discloses multiple catalogs with generally equivalent items.

When the Cross Reference Maintenance data screen 76 is displayed and a data block is sent to host computer 10 containing a vendor number such as 1000 250 or a competitor's number such as B2650250, the host computer 10 will search various files in host database 20 (as during sourcing described above) and recognized each as a number corresponding to Distributor catalog number 02 540K.  The data block returned to the local computer 40 will then contain a set such as:

> VN000020407 1000 250 VN00000001 540K

where the two vendor numbers (VN) represent Corning and the Distributor, respectively, or a set such as

> CP00000013 B2650250 VN00000001 02 540K.

If the local database 50 contains the Customer's equivalent (e.g. BREAKERS250 as a stock number), it will add to the Cross-Reference Table lines such as:

| | | | |
|---|---|---|---|
| and: | BREAKER250 | VN00002047 | 1000 250 |
| | BREAKER250 | CP00000013 | B2650250 |

which also contain a description, unit and product type as shown in Table XVII.

(Exhibit F, the '989 Patent at col. 33:52 – 34:10). The '989 Patent uses a cross reference table to determine that items are generally equivalent.

> As described below. database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product. either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).

> Part Master records (see Table VI) also contain a manufacturer or supplier's catalog or part number, which will be the number used on purchase orders and, for product types 01 and 03, will be the Distributor's catalog or part number. The local database SO contains a cross-reference file between such stock numbers and a particular supplier's catalog or part number. The creation of this cross-reference file by the CSR *is* described below.

(Exhibit F, the '989 Patent at col. 8:32-39).

> In step 202, **local computer 40 searches the Part Master Table in local database 50 for the STOCK NBR that has just been entered** (which can be either the Customer's stock number or a valid cross-reference number such as a Distributor catalog number). (A description of how the Part Master Table in local database 50 is created by the CSR is set forth in detail below.

(Exhibit F, the '989 Patent at col. 8:46-52 (emphasis added)).

### b.   The J-CON Manual Discloses "said search-module criteria and a determination system that located items are generally equivalent"

The J-CON Manual discloses using cross-reference module to determine if items are generally equivalent.

Interchange is J-CON'S electronic cross-reference for parts. You begin InterChange by pressing <InterChange> from any field on the POS screen except WRKSTAT, or from PartFinder.

(Exhibit L, the J-CON Manual at Ch. 2, Sec. 1, Page 2).

If you have PartFinder, you can add InterChange to your J-CON.  Interchange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called Interchange parts).  InterChange can find an InterChange part even if you do not know the manufacturer or the complete part number of the competitive part.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 1, Page 1).

9.      **"wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification code from a second located item"**

a.      **The '989 Patent Discloses "wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification code from a second located item"**

This limitation is substantially the same as the limitation "a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party" from claim 5.  See above for discussion regarding the disclosure in the '989 Patent of that limitation.

b.      **The Practical Guide to SABRE Discloses "wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification code from a second located item"**

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE system will automatically search for and display alternatives associated with at least some of the same criteria.

118

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO   LO* -*WL   145A
 24MAR   MON    ORD/CST      HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO       ORDHNL 5 1140A   447P D10 LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO    ORDHNL 8 1025A   332P 747 LS O TA
3UA  107 FO YO BO MO QO HO       ORDHNL 4 1254P   756P D10 LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO    ORDHNL N  255P  1033P D10 D 1
5UA  111 F4 Y4 B4 M4 QO HO VO    ORDLAX 7 1200N   231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4       HNL 5  555P   927P L10 D O TA
         L4
```

>       If the class of service is sold out, SABRE displays a city pair availability
> for alternate flights.
>       In the above response, the requested class, Y, is sold out and the wait list
> is open.  SABRE is displaying six alternate flights for the travel date, city pairs,
> and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).  The table shown above enables the user to

cross-reference flights from different vendors.

>         c.      **The J-CON Manual Discloses "wherein said determination**
>                 **system includes a cross reference table matching an**
>                 **identification code from a first located item with a second**
>                 **identification code from a second located item"**

This limitation is substantially the same as the limitation "a cross reference table linking a

vendor item catalog number from said vendor catalog with an item catalog number from said

predetermined third party" from claim 5.  See above for discussion regarding the disclosure in

the J-CON Manual of that limitation.

### V.      Claim 22

22.  An electronic sourcing system as recited in claim **21,** wherein said determination system
includes an identical identification code for each of said located items.

119

### 1. The '989 Patent Discloses "An electronic sourcing system . . . "wherein said determination system includes an identical identification code for each of said located items"

The '989 Patent discloses using a Distributor's catalog number as the identification code

for equivalent parts from different catalogs.

> As described below, database 20 may contain cross-references from Distributor's catalog number to its vendor's part number and to similar catalog numbers of other suppliers or distributors for the same Product, either as a part of the item record, in a separate cross-reference file or both.

(Exhibit F, the '989 Patent at col. 3:32-36).  A given Distributor's catalog number is associated

through the cross-reference table not only to the its vendor's part number, but also to other

supplier to distributor part numbers.

### 2. The J-CON Manual Discloses "An electronic sourcing system . . . "wherein said determination system includes an identical identification code for each of said located items"

The J-CON Manual teaches that interchangeable part from different catalogs are

associated with a "competitive part number" in the cross-referencing module InterChange.

> After you enter the competitive part number and the group or manufacturers to search, J-CON displays the Interchange parts for the competitive part.

> If there is more than one InterChange part that matches the competitive part number you entered, J-CON finds and displays all the possible matching Interchange parts. You can then use <Page Up>, <Page Down>, and the mow keys to move through the list of Interchange parts.

(Exhibit L, the J-CON Manual at Ch. 3, Sec. 4, Page 5).

### 3. The TV/2 References Disclose "An electronic sourcing system . . . "wherein said determination system includes an identical identification code for each of said located items"

The TV/2 References disclose searching for catalog items associated with specific

criteria, such as a part number or name.

> Instead, simply call for information by specifying keyword such as product part number or name . . . .

120

(Exhibit P, the TV/2 Brochure at 3).  The '516 Patent confirms the ability of the TV/2 system to

search multiple catalogs by criteria associated with the items.

> If searching for a molecular biology product, the user would select the Fisher and
> Promega catalogs.  TV/2 search program 50 would then concatenate those two
> catalogs to perform a keyword, catalog number or other subject search and
> generate a Hit List of pages (panels) from both catalogs where the search-for
> items were found.

(Exhibit A, the '516 Patent at col. 10: 4-8).  The same criteria selects items from various catalogs

and displays the information for those items.

### W.    Claim 23

23.  An electronic sourcing system as recited in claim **21**, wherein said requisition module
generates a preferred requisition based on at least one of product availability and user preference
in accordance with a determination of multiple sources for a desired item.

> **1.    The '542 Patent Discloses "An electronic sourcing system . . . wherein
> said requisition module generates a preferred requisition based on at
> least one of product availability and user preference in accordance
> with a determination of multiple sources for a desired item"**

The '542 Patent teaches simultaneously displaying generally equivalent items from

different suppliers.

> It is still another object of this invention to provides an electronic catalog ordering
> system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item

from a first catalog is associated with an item from a second catalog.

> 4. The system as claimed in claim 3 wherein said public computer system
> includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).  The user selects, based on its preference, the item to

purchase from an associated supplier.  The selected item is automatically added to a requisition.

> When selected items are selected from the Catalog, the requisition is prefilled
> with required data and only minimal additional data will be needed.

(Exhibit G, the '542 Patent at col. 6:7-9).

    **2.**    **The P.O. Writer Manual Discloses "An electronic sourcing system . . . wherein said requisition module generates a preferred requisition based on at least one of product availability and user preference in accordance with a determination of multiple sources for a desired item"**

The P.O. Writer Manual discloses selecting vendors from which to purchase an item.  A requisition may be split into multiple requisitions based on selected vendors.  (Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 12).  In the process of splitting a requisition, the user may, based on its preference, chose a vendor.

There are tools available to help make decisions:

- To view the original requisition, press **SHIFT-F2**

- To view the P.O. History Card, press **SHIFT-F7**

- Valid vendor number, buyt/ship-to codes may be reviewed by pressing **SHIFT-F4**, and selected by pressing **SHIFT-F3**.

(Exhibit J 5, the P.O. Writer Manual, Requisition Interface at 12).

**X.**    **Claim 24**

24. An electronic sourcing system as recited in claim **21,** wherein less than said catalog selection criteria is determined by at least one of said user-generated criteria or user characteristics.

    **1.**    **The '542 Patent Discloses "An electronic sourcing system . . . wherein less than said catalog selection criteria is determined by at least one of said user-generated criteria or user characteristics"**

The '542 Patent discloses selecting either the Public Catalog or the Private Catalog to search.

The Buyer may access the Public or the Private Catalog as deemed necessary to perform the normal buying task.

(Exhibit G, the '542 Patent at col. 6:5-7).  A customer cannot access the Private Catalog unless it has access to it.

The Private Catalog 110 are then loaded and maintained by Customer 110 on their own local computer systems for access by Customer employees.

(Exhibit G, the '542 Patent at col. 3:52-54).  The supplier can also control access to the Public

Catalogs.

> The Customer Access/Download Control function permits catalog Suppliers to
> control Customers' access to and downloading of Supplier maintained catalog
> data on the Public Catalog.

(Exhibit G, the '542 Patent at col. 5:1-4).

### X.      Claim 25

25. An electronic sourcing system as recited in claim **24,** wherein said user characteristics
include a listing of catalogs from which a user is allowed to purchase.

> ### 1.      The '542 Patent Discloses "An electronic sourcing system . . . wherein
> ### said user characteristics include a listing of catalogs from which a
> ### user is allowed to purchase"

The '542 Patent discloses selecting either the Public Catalog or the Private Catalog to

search.

> The Buyer may access the Public or the Private Catalog as deemed necessary to
> perform the normal buying task.

(Exhibit G, the '542 Paten at col. 6:5-7).  A customer cannot access the Private Catalog unless it

has access to it.

> The Private Catalog 110 are then loaded and maintained by Customer 110 on their
> own local computer systems for access by Customer employees.

(Exhibit G, the '542 Patent at col. 3:52-54).  The supplier can also control access to the Public

Catalogs.

> The Customer Access/Download Control function permits catalog Suppliers to
> control Customers' access to and downloading of Supplier maintained catalog
> data on the Public Catalog.

(Exhibit G, the '542 Patent at col. 5:1-4).

### Z.      Claim 26

26. An electronic sourcing system as recited in claim **21,** wherein said requisition module uses at
least one pre-determined rule to select which of multiple sources to use for said desired item.

1. **The '542 Patent Discloses "An electronic sourcing system . . . wherein said requisition module uses at least one pre-determined rule to select which of multiple sources to use for said desired item"**

The '542 Patent discloses that the Public Catalogs include a functional feature to direct customer to preferred suppliers.

The Public Catalog contains the following functional features: Catalog Query/Display for logically guiding the requestor through the available catalog data; **a Customer preferred path controller which directs the user to preferred Supplier catalogs thereby permitting customers to select products at prenegotiated discounts**; . . .

(Exhibit G, the '542 Patent at col. 2:26-31 (emphasis added)).

2. **The Practical Guide to SABRE Discloses "An electronic sourcing system . . . wherein said pre-determined rule relies on item availability"**

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE system will automatically search for and display alternatives associated with at least some of the same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO  LO* -*WL  145A
 24MAR   MON   ORD/CST      HNL/HST-4
SEE CHI  FOR CGX/MDW/ORD/PWK
1UA   47 FO YO BO MO QO HO      ORDHNL 5 1140A  447P D1O LS O TA
2UA    1 FO CO Y4 B4 M4 QO HO ORDHNL 8 1025A  332P 747 LS O TA
3UA  107 FO YO BO MO QO HO      ORDHNL 4 1254P  756P D1O LD 1 TA
4AA  955 F7 Y7 B7 M7 H7 QO KO ORDHNL N  255P 1033P D1O D 1
5UA  111 F4 Y4 B4 M4 QO HO VO ORDLAX 7 1200N  231P 733 L O TA
6DL  157 F4 Y4 B4 M4 Q4 H4 K4      HNL 5  555P  927P L1O D O TA
          L4
```

If the class of service is sold out, SABRE displays a city pair availability for alternate flights.

In the above response, the requested class, Y, is sold out and the wait list is open.  SABRE is displaying six alternate flights for the travel date, city pairs, and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).  The table above allows the use to select

among generally equivalent flights using availability as a criteria.

### AA.    Claim 27

27. An electronic sourcing system as recited in claim **26,** wherein said pre-determined rule relies
on item availability.

#### 1.    The Practical Guide to SABRE Discloses "An electronic sourcing system . . . wherein said pre-determined rule relies on item availability"

The Practical Guide to SABRE discloses if the particular flight is sold out, the SABRE

system will automatically search for and display alternatives associated with at least some of the

same criteria.

```
1AA73Y24MARORDHNL
YO* F3   MO* QO* HO* BO* KO  LO* -*WL  145A
 24MAR  MON   ORD/CST     HNL/HST-4
SEE CHI FOR CGX/MDW/ORD/PWK
1UA  47 FO YO BO MO QO HO    ORDHNL 5 1140A  447P D10 LS O TA
2UA   1 FO CO Y4 B4 M4 QO HO ORDHNL 8 1025A  332P 747 LS O TA
3UA 107 FO YO BO MO QO HO    ORDHNL 4 1254P  756P D10 LD 1 TA
4AA 955 F7 Y7 B7 M7 H7 QO KO ORDHNL N  255P 1033P D10 D 1
5UA 111 F4 Y4 B4 M4 QO HO VO ORDLAX 7 1200N  231P 733 L O TA
6DL 157 F4 Y4 B4 M4 Q4 H4 K4      HNL 5  555P  927P L10 D O TA
        L4
```

If the class of service is sold out, SABRE displays a city pair availability
for alternate flights.
In the above response, the requested class, Y, is sold out and the wait list
is open.  SABRE is displaying six alternate flights for the travel date, city pairs,
and departure time 11:45 a.m. of the original flight that was requested.

(Exhibit K 1, the Practical Guide to SABRE at 64).  The table above allows the use to select

among generally equivalent flights by availability.

### BB.    Claim 28

28. An electronic sourcing system as recited in claim **26,** wherein said pre-determined rule relies
on a hierarchy of preferred sources.

### 1.    The '542 Patent Discloses "An electronic sourcing system . . . wherein said pre-determined rule relies on a hierarchy of preferred sources"

The '542 Patent discloses that the Public Catalogs include a functional feature to direct

customer to preferred suppliers.

> The Public Catalog contains the following functional features: Catalog Query/Display for logically guiding the requestor through the available catalog data; **a Customer preferred path controller which directs the user to preferred Supplier catalogs thereby permitting customers to select products at prenegotiated discounts**; . . .

(Exhibit G, the '542 Patent at col. 2:26-31 (emphasis added)).

### CC.    Claim 29

[1] 1.  An electronic sourcing system comprising:
[2] a collection of catalogs of items stored in an electronic format;
[3] a first set of pre-determined criteria associated with said collection of catalogs;
[4] a second set of pre-determined criteria associated with items from each of said catalogs;
[5] a catalog selection protocol, said catalog selection protocol relying on said first set of pre-determined criteria to select less than said entire collection of catalogs, and  [6] including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party; and
[7] a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol.
[8] a cross-reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party.

### 1.    The '989 Patent Anticipates Claim 29

Limitations [1]-[7] are substantially the limitation of claim 1.  Limitation [8] is

substantial the same as the limitation in claim 5.  See above for discussion regarding the

disclosure in the '989 Patent of those limitation.

### 2.    The '542 Patent Discloses Limitations [1]-[7]

Limitations [1]-[7] are substantially the limitation of claim 1.  See above for discussion

regarding the disclosure in the '542 Patent of those limitation.  Additionally, the '542 Patent

discloses limitation [8].

The '542 Patent teaches accessing multiple catalogs.

> In an electronic catalog requisition system in which catalogs of items offered by suppliers are stored on a central catalog database system, a method for retrieving information relating to said items . . . .

(Exhibit G, the '542 Patent at col. 7:50-52, col. 8:34-36).

> The first Electronic Catalog segment consists of a Supplier Master Catalog which is maintained by each Supplier.  It is used as the basis for the second Electronic Catalog segment, consisting of the Public Catalog and the Private Catalog.

> The Public Catalog permits multiple customers to access and identify products from a variety of Suppliers.

(Exhibit G, the '542 Patent at col. 2:20-26).  Generally equivalent items can be displayed simultaneously.

> It is still another object of this invention to provides an electronic catalog ordering system that allows the simultaneous display of competitive product information.

(Exhibit G, the '542 Patent at col. 2:20-26).  Once displayed, the criteria associated with one item from a first catalog is associated with an item from a second catalog.

> 4. The system as claimed in claim 3 wherein said public computer system includes means [f]or comparing items for the plurality of suppliers.

(Exhibit G, the '542 Patent at col. 7:36-38).

### 3.      The P.O. Writer Manual Discloses Limitations [1]-[7]

Limitations [1]-[7] are substantially the limitation of claim 1.  See above for discussion regarding the disclosure in the P.O. Writer Manual of those limitation.

### 4.      The Practical Guide to SABRE Anticipates Claim 29

Limitations [1]-[7] are substantially the limitation of claim 1.  Limitation [8] is substantial the same as the limitation in claim 5.  See above for discussion regarding the disclosure in the '989 Patent of those limitation.  See above for discussion regarding the disclosure in the Practical Guide to SABRE of those limitation.

### 5.      The J-CON Manual Discloses Limitations [1], [4], [7], and [8]

Limitations [1]-[7] are substantially the limitation of claim 1.  Limitation [8] is

substantial the same as the limitation in claim 5.  See above for discussion regarding the

disclosure in the J-CON Manual of limitations [1], [4], [7], and [8].

### 6.      The Gateway Manual Discloses Limitation [1]-[7]

Limitations [1]-[7] are substantially the limitation of claim 1.  See above for discussion

regarding the disclosure in the Gateway Manual of those limitation.

### 7.      The TV/2 References Discloses Limitation [1], [2], [4], and [7]

Limitations [1]-[7] are substantially the limitation of claim 1.  See above for discussion

regarding the disclosure in the TV/2 References of limitations [1], [2], [4], and [7].

### DD.    Motivation to Combine Each of the Prior Art References Applied to the Claims of the '516 Patent

Each of the prior art references cited in this Request could be combined with each of the

other references cited to arrive at the claims of the '516 Patent, and each reference independently

provides motivation to do so.

Generally, the '516 Patent relates to electronic requisition systems and searching of

product information.  As previously cited, '516 Patent states that an object of that patent is:

> to provide an electronic sourcing method and system that provides a user with the
> capability of searching a database containing data (including product/vendor
> identification, and other product information) relating to items available from at
> least two product catalogs, and the capability of transferring the product
> information for desired catalog items obtained as a result of the search to a
> requisition/purchasing system for use in generating a requisition including entries
> for the desired catalog items.

(Exhibit A, the '516 Patent at col. 2:51-60).

Each of the prior art references cited in this Request provides either electronic sourcing or

database searching for product or vendor information, and use of that information in a requisition

128

or purchasing system for such items.  Combination of the elements from each of the references included in this request would provide a combination of elements that were familiar at the time of filing of the original application from which the '516 Patent issued.  Combination of software features in these electronic sourcing systems is accomplished according to known methods and yields only predictable results.

In addition, each of the prior art references cited in this Request recites particular features that, when considered by one of skill in the art, would provide motivation to combine those references with the other cited references in the Request.  Examples of such features and motivations to combine follow.

       **1.**     **The '989 Patent is combinable with the '542 Patent, the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, the Gateway Manual, and the TV/2 References.**

The '989 Patent refers specifically to "a requisition and inventory management system. . .in a real time environment."  (Exhibit F, the '989 Patent at Abstract).  An object of that patent is "to provide a requisition and inventory management system which can effectively process requisitions for items of various types including items in JIT [just-in-time] inventory."  (Exhibit F, the '989 Patent at cols. 1:66 – 2:2.  The '989 Patent therefore relates to systems for just-in-time inventory and would be combinable with those references.

Second, not only does the '989 Patent provide motivation to combine with other references, the '516 Patent acknowledges that the '989 Patent was in fact combined with other features to arrive at the subject matter of that patent.  As explained in the '516 Patent, the '989 Patent describes the Fisher RIMS system, which was a requisition/purchasing system:

> Electronic sourcing system 5 also includes a requisition/ purchasing system 40, **preferably but not necessarily the Fisher RIMS system**, . . .

(Exhibit A, the '516 Patent at col. 4:6-8 (emphasis added)).

> Preferably, a user will start the electronic sourcing system 5 from Fisher RIMS
> system 40. **Requisitioning on Fisher RIMS system 40 in context of the**
> **electronic sourcing system 5 of the present invention** is illustrated in pertinent
> part in FIG. 2 (and is fully described in U.S. Pat. No. 5,712,989).

(Exhibit A, the '516 Patent at col. 6:45-49 (emphasis added)).  Therefore, an individual wishing

to process any of a number of types of requisitions would be motivated to combine features of

the '989 Patent with other methods or systems, including those described in the '542 Patent, P.O.

Writer Manual, the Practical Guide to SABRE, J-CON Manual, the Gateway Manual, and the

TV/2 References.

> **2.     The '542 Patent Is Combinable with the '989 Patent, P.O. Writer**
> **Manual, the Practical Guide to SABRE, the J-CON Manual, the**
> **Gateway Manual, and the TV/2 References.**

The '542 Patent relates to electronic procurement systems, and states a number of objects

and advantages of that patent that would provide a particular motivation to combine its

disclosure with other systems.  In one example, the '542 patent states:

> [I]t is an object of this invention to provide a new electronic
> procurement/requisition system and method which allow a purchaser's requisition system
> to be integrated with a catalog system, and a supplier computer system.
> It is another object of this invention to provide an electronic requisition system
> which includes public and private catalogs.
> It is another object of this invention to provide an electronic requisition system
> which allows individual customers to control the products and suppliers that may be
> ordered.

(Exhibit G, the '542 Patent at col. 1:56-68).  Therefore, an individual of skill in the art would be

motivated to combine the '542 patent with other references, including the '989 patent, the P.O.

Writer Manual, the Practical Guide to SABRE, the J-CON Manual, the Gateway Manual, and the

TV/2 References, to incorporate the features of that reference, such as to (1) integrate catalogs

with a requisition system and a supplier system, (2) provide an electronic requisition system

including public and private catalogs, or (3) allow customers to control products and supplies

that may be ordered.

3.      **The P.O. Writer Manual Is Combinable with the '989 Patent, the '542 Patent, the Practical Guide to SABRE, the J-CON Manual, the Gateway Manual, and the TV/2 References.**

The P.O. Writer Plus system was an electronic sourcing system that, as previously explained, allowed a user to select product catalogs to search, resulting in a search of less than the entire data set in the database.  The system allowed a user to search for matching items among selected product catalogs by specifying various search criteria including item number, commodity code, and keyword associated to the item description.  A person of skill in the art would be motivated to combine the P.O. Writer Manual with other references, including the '989 Patent, the '542 Patent, the Practical Guide to SABRE, the J-CON Manual, the Gateway Manual, and the TV/2 References, to incorporate particular searching and catalog management features as disclosed the in P.O Writer Manual into procurement systems.

4.      **The Practical Guide to SABRE Is Combinable with the '989 Patent, '542 Patent, the P.O. Writer Manual, the J-CON Manual, the Gateway Manual, and the TV/2 References.**

The SABRE printed publications describing American Airlines' SABRE system allowed users to price, compare, and reserve flights on a number of different airlines, as well as reserve hotel rooms and other accommodations.  The SABRE printed publications describe searches for different types of reservations (air, hotel, etc.) and therefore allow searches of particular categories of goods according to specific search criteria.  One of skill in the art would be motivated to combine the Practical Guide to SABRE with other references, including the '989 Patent, the '542 Patent, the P.O. Writer Manual, the J-CON Manual, the Gateway Manual, and the TV/2 References, to incorporate the features of that reference and allow searching according to a wide variety of criteria and across different portions of a database.

131

5.     **The J-CON Manual is combinable with the '989 Patent, the '542 Patent, the P.O. Writer Manual, the Practical Guide to SABRE, the Gateway Manual, and the TV/2 References.**

The J-CON system was an electronic sourcing system including a wide variety of functionality, and includes inventory and pricing programs, purchasing programs, accounts receivable programs, sales tracking and forecasting programs.  Because J-CON tracks each of these items, it includes a large number of common features with the other procurement systems described in this Request.  J-CON also includes an Interchange system useable to find substitute products when a selected product is not stocked in inventory.  A person of skill in the art would be motivated to combine the J-CON Manual reference with other references, including the '989 Patent, the '542 Patent, P.O. Writer Manual, the Practical Guide to SABRE, the Gateway Manual, and the TV/2 References, to incorporate the product exchange features of J-CON (and other features included in that system) into procurement systems.

6.     **The Gateway Manual Is Combinable with the '989 Patent, the '542 Patent, the Practical Guide to SABRE, the J-CON Manual, and the TV/2 References.**

Technical Service Associates' (TSA) Gateway system was an electronic sourcing system including a set of catalog, purchasing and inventory management capabilities.  As previously explained, the Gateway 2000/MRO system included a product database including a number of catalogs, which was searchable using multiple search criteria.  The Gateway system supported a commodity code product classification system from which it was possible to determine which items in the product information database were comparable to one another.  The system also maintained vendor data fields in the database associated with each item from which it could be determined whether an alternate vendor existed to supply the same item.  One of skill in the art would be motivated to combine the Gateway references with other references, including the '989

Patent, the '542 Patent, the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON

Manual, and the TV/2 References, to incorporate the alternate product features and catalog

search criteria of the Gateway references into procurement systems.

> **7.** **The TV/2 References are Combinable with the '989 Patent, the '542 Patent, P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the Gateway Manual.**

The TV/2 References explicitly state the TV/2 system should be combined with other

electronic sourcing systems to take advantage of other functionalities.

> You can create a "shopping list" just be selecting items and passing that list to another application.

(Exhibit P, the TV/2 Brochure at 3).

> Technical Viewer/2 is suitable for a whole range of uses and industries in which information is supplied in large quantities and updated regularly, and where users need fast access to precise details.
>
> Potential uses include:
>
> . . .
>
> - Integrating parts catalogues with dealers' computer systems such as order entry, inventory management and customer records

(Exhibit P, the TV/2 Brochure at 4). Therefore, an individual of skill in the art would be

motivated to combine the TV/2 References with other references, including the '989 patent, the

'542 Patent, the P.O. Writer Manual, the Practical Guide to SABRE, the J-CON Manual, and the

Gateway Manual, to incorporate the features of that reference, such as to (1) integrate catalogs

with a requisition system and a supplier system, (2) provide an electronic requisition system

including public and private catalogs, or (3) allow customers to control products and supplies

that may be ordered.

## EE.   Chart of Cited References

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| 1. [1] An electronic sourcing system comprising: | X | X | X | X | X | X | X |
| [2] a collection of catalogs of items stored in an electronic format; | X | X | X | X | | X | X |
| [3] a first set of pre-determined criteria associated with said collection of catalogs; | X | X | X | X | | X | |
| [4] a second set of pre-determined criteria associated with items from each of said catalogs; | X | X | X | X | X | X | X |
| [5] a catalog selection protocol, said catalog selection protocol relying on said first set of pre-determined criteria to select less than said entire collection of catalogs, and | X | X | X | X | | X | |
| [6] including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, said predetermined third party selling items corresponding to items in said vendor catalog; and | X | X | X | X | | X | |
| [7] a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol. | X | X | X | X | X | X | X |
| 2.      An electronic sourcing | X | X | | | | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| system as recited in claim 1, wherein catalogs comprising said collection of catalogs are stored in separate databases. | | | | | | | |
| 3.      An electronic sourcing system as recited in claim 1, wherein said catalogs comprising said collection of catalogs are stored in a single database. | X | X | X | X | | X | |
| 4.      An electronic sourcing system as recited in claim 1, wherein said predetermined third party makes items in said vendor catalog. | X | | | | X | | X |
| 5.      An electronic sourcing system as recited in claim 1, further including a cross reference table linking a vendor item catalog number from said vendor catalog with an item catalog number from said predetermined third party. | X | | | X | X | | |
| 6.      An electronic sourcing system as recited in claim 1, wherein said second set of predetermined criteria includes at least one of a catalog number and item textual information. | X | X | X | X | X | | X |
| 7.      An electronic sourcing system as recited in claim 1, wherein said catalog selection protocol includes providing an electronic listing of available catalogs from said collection of catalogs. | | | X | | | X | |
| 8.  An electronic sourcing system as recited in claim 7, wherein said electronic listing of available catalogs is less than said collection of catalogs. | | | | X | | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| 9. [1]An electronic sourcing system comprising: | X | X | X | X | X | X | X |
| [2] a collection of catalogs of items stored in an electronic format; | X | X | X | X | | X | X |
| [3] a first identification code associated with a first item in a first catalog; a second identification code associated with a second item in a second catalog, said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs. | X | X | | X | | | X |
| 10. An electronic sourcing system as recited in claim 9, wherein said first identification code is identical to said second identification code. | X | | | | X | | X |
| 11.      An electronic sourcing system as recited in claim 9, wherein at least of one of said first and second catalogs includes said first and second identification codes. | X | | | | | | |
| 12.      An electronic sourcing system as recited in claim 9, wherein said selection includes a comparison of said one of said first and second identification codes with a cross-reference table listing both of said identification codes as being generally equivalent. | X | X | | | X | | |
| 13.      An electronic sourcing system as recited in claim 9, | | X | | | | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| wherein a user selects one of said first and second identification codes, lacks access to said catalog corresponding to said selected identification code, but is given access to the other said catalog corresponding to said non-selected identification code. | | | | | | | |
| 14.    An electronic sourcing system as recited in claim 9, wherein a user selects one of said first and second identification codes, and has access to both said first and second catalogs. | | X | | | | | |
| 15.    An electronic sourcing system as recited in claim 9, wherein said first and second identification codes correspond to a part number. | X | X | | | X | | X |
| 16. [1] An electronic sourcing system comprising: | X | X | X | X | X | X | X |
| [2] at least two product catalogs containing data relating to items such that an item in a first catalog is generally equivalent with an item in a second catalog; and | X | X | X | X | | X | X |
| [3] converting means for converting data relating to said item from said first catalog to data relating to said item from said second catalog. | X | X | X | X | X | | |
| 17.    An electronic sourcing system as recited in claim 16, wherein at least one catalog database contains said data from each of said catalogs, and said converting means includes a non-catalog database containing a cross-reference table such that use | X | | | | | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| of a reference code corresponding to an entry in said cross-reference table links said item from said first catalog to data relating to said item from said second catalog. | | | | | | | |
| 18.    An electronic sourcing system as recited in claim 16, wherein one or more catalog databases contain said data from each of said catalogs, and said converting means including one or more catalog databases including an identical reference code corresponding to said data from said first catalog and said data from said second catalog. | X | | | | | | |
| 19.    An electronic sourcing system as recited in claim 16, wherein said first catalog may be searched separately from said second catalog. | X | X | X | X | | X | |
| 20.    An electronic sourcing system as recited in claim 19, wherein a user lacks access to said first catalog and has access to said second catalog, such that a request for an item in said first catalog provides said data from said second catalog. | | X | | | | | |
| 21. [1] An electronic sourcing system comprising: | X | X | X | X | X | X | X |
| [2] a requisition module including data fields, user-generated criteria entered into at least one of said data fields to generate at least partial criteria corresponding to a desired item; | X | | | | X | | X |
| [3] a catalog collection | X | X | X | X | | X | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| searching module, said searching module including a collection of catalogs of items stored in an electronic format, a catalog selection criteria used to select less than said entire collection, | | | | | | | |
| [4] said searching module being used to generate additional search-module criteria for said data fields of said requisition module; | X | | | | X | | X |
| [5] a multiple purchase order generation module, said purchase order generation module creating multiple purchase orders from a single requisition created with said user-generated criteria and said search-module criteria; | X | | | | X | | |
| [6] wherein each of at least two catalogs include a generally equivalent item from a different source, said requisition module working in combination with said catalog searching module to determine multiple sources for said item; | X | | | | | | X |
| [7] wherein said multiple sources is limited by said catalog searching module providing a match according to said user-generated criteria, | X | | | | | X | |
| [8] said search-module criteria and a determination system that located items are generally equivalent; and | X | | | | X | | |
| [9] wherein said determination system includes a cross reference table matching an identification code from a first located item with a second identification | X | | | X | X | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| code from a second located item. | | | | | | | |
| 22.    An electronic sourcing system as recited in claim 21, wherein said determination system includes an identical identification code for each of said located items. | X | | | | X | | X |
| 23.    An electronic sourcing system, as recited in claim 21, wherein said requisition module generates a preferred requisition based on at least one of product availability and user preferences in accordance with a determination of multiple sources for a desired item. | | X | X | | | | |
| 24.    An electronic sourcing system as recited in claim 21, wherein less than said catalog selection criteria is determined by at least one of said user-generated criteria or user characteristics. | | X | | | | | |
| 25.    An electronic sourcing system as recited in claim 24, wherein said user characteristics include a listing of catalogs from which a user is allowed to purchase. | | X | | | | | |
| 26.    An electronic sourcing module as recited in claim 21, wherein said requisition module uses at least one predetermined rule to select which of multiple sources to use for said desired item. | | X | | X | | | |
| 27.    An electronic sourcing system as recited in claim 26, wherein said pre-determined rule relies on item availability. | | | | | X | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| 28.    An electronic sourcing system as recited in claim 26, wherein said pre-determined rule relies on a hierarchy of preferred sources. | | X | | | | | |
| 29. [1] An electronic sourcing system comprising: | X | X | X | X | X | X | X |
| [2] a collection of catalogs of items stored in an electronic format; | X | X | X | X | | X | X |
| [3] a first set of pre-determined criteria associated with said collection of catalogs; | X | X | X | X | | X | |
| [4] a second set of pre-determined criteria associated with items from each of said catalogs; | X | X | X | X | X | X | X |
| [5] a catalog selection protocol, said catalog selection protocol relying on said first set of pre-determined criteria to select less than said entire collection of catalogs, and | X | X | X | X | | X | |
| [6] including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party; and | X | X | X | X | | X | |
| [7] a search program, said search program relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol. | X | X | X | X | X | X | X |
| [8] a cross-reference table linking a vendor item catalog number from said vendor catalog with an item catalog | X | X | | X | X | | |

| Claims of the '516 Patent | '989 Patent | '542 Patent | P.O. Writer | SABRE | J-CON | Gateway | TV/2 |
|---|---|---|---|---|---|---|---|
| number from said predetermined third party. | | | | | | | |

**(3)** **A copy of Every Patent or Printed Publication Relied Upon or Referred to in Paragraph (b)(1) and (2) of this Section Accompanied by an English Language Translation of all the Necessary and Pertinent Parts of any Non-English Language Patent or Printed Publication;**

A copy of every patent or printed publication relied upon or referred to above is attached

hereto as exhibits B-C, F-G, J-L, and N.  There are no non-English references.

**(4)** **A Copy of the Entire Patent Including the Front Face, Drawings, and Specification/Claims (in Double Column Format) for which Reexamination Is Requested, and a Copy of any Disclaimer, Certificate of Correction, or Reexamination Certificate Issued in the Patent;**

An appropriately formatted copy of the entire '516 Patent for which reexamination is

requested is attached hereto as exhibit A.  There are currently no disclaimers, certificates of

correction, or reexamination certificates issued in the '516 Patent.

**(5)** **A Certification that a Copy of the Request Filed by a Person Other than the Patent Owner has been Served in Its Entirety on the Patent Owner at the Address as Provided for in § 1.33(c), Including the Name and Address of the Party Served.**

An appropriate certificate of service is filed herewith as part of the Request for *Ex Parte*

Reexamination Transmittal Form.

November 12, 2007                    Respectfully submitted,


_____
Joshua P. Graham, Reg. No. 59,777
Daniel W. McDonald, Reg. No. 32,044
Andrew J. Lagatta, Reg. No. 62,529
Merchant & Gould, PC
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55419