IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF *e*PLUS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO 2: TO ENFORCE THE COURT'S ORDERS OF MAY 24, 2010 AND MAY 25, 2010 AND EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO ALLEGED PRIOR ART AND INVALIDITY THEORIES NOT SET FORTH IN DEFENDANT'S COURT-ORDERED SECOND SUPPLEMENTAL STATEMENT**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

I.   **INTRODUCTION**

Plaintiff *e*Plus, Inc. ("*e*Plus") respectfully replies in further support of its Motion *In Limine* No. 2: To Enforce the Court's Orders of May 24, 2010 and May 25, 2010 And Exclude Any Evidence, Expert Opinion, Other Testimony, Or Argument Pertaining To Alleged Prior Art And Invalidity Theories Not Set Forth In Defendant's Court-Ordered Second Supplemental Invalidity Statement.

*e*Plus's second motion *in limine* seeks a limited and targeted order from this Court that Defendant cannot introduce evidence at trial of *non-infringement* by comparing the patents-in-suit to the non-accused Lawson versions 6.0 and 5.0 systems, that Dr. Shamos cannot offer opinions as to whether certain prior art invalidates or renders obvious claims of the asserted patents not disclosed in Defendant's Court-Ordered Second Supplemental Invalidity Statement, that Dr. Shamos cannot offer opinions as to other invalidity theories not set forth in Defendant's Court-Ordered Second Supplemental Invalidity Statement and that Dr. Shamos can only rely on the Gateway 2000 MRO Manual in his § 102(b) analysis of the Gateway system. *e*Plus brought this motion because it suspected Defendant would attempt to disregard this Court's repeated orders binding Lawson to validity theories disclosed in its Court-Ordered Second Supplemental Invalidity Statement and ambush *e*Plus at trial – suspicions that are confirmed in Defendant's response to this motion.[1]

Defendant ***does not dispute*** that Dr. Shamos's infringement opinions with respect to the version 6.0 and 5.0 systems are a transparent attempt to circumvent the Court's orders of May 24

---

[1] Defendant has ***again*** raised new validity theories in its Supplemental Summary Judgment Briefing ***filed July 7, 2010***. (Dkt. 316). While Defendant contended in its Second Supplemental Invalidity Statement that only claims 26, 28 and 29 of the '683 patent and claims 1, 2, 6, 9, 21 and 29 are invalid under 35 U.S.C. § 101, ***it now contends that all thirteen asserted claims are invalid under § 101***.

and 25 by necessarily arguing the validity of the asserted patents beyond the single limitation allowed by the Court, ***does not dispute*** that Dr. Shamos's so called infringement report contains countless references to the version 6.0 and 5.0 systems as prior art to the patents-in-suit, ***does not dispute*** that Dr. Shamos offers opinions as to the validity of certain asserted claims in view of the J-CON, Gateway, PO WRITER and King alleged prior art alone as well as 41 obviousness combinations not disclosed in the Court-ordered Second Supplemental Invalidity Statement and ***does not dispute*** that it intends to introduce multiple publications regarding the Gateway system notwithstanding that Dr. Shamos contends ***only*** that Gateway is 102(b) prior art, *i.e.*, was a system purportedly described in a printed publication or on sale or in public use more the one year before the August 10, 1994 priority date of the patents-in-suit.[2]

Rather than responding to the arguments raised in *e*Plus's motion, Defendant instead misdirects the Court's attention by alleging that the non-accused version 5.0 and 6.0 systems are relevant to issues of willfulness, intent to cause indirect infringement and damages (but not the subject of *e*Plus's motion) and rehashing its repeatedly rejected refrain that Dr. Shamos's opinions are not bound by the validity theories disclosed in Defendant's Court-Ordered Second Supplemental Invalidity Statement.[3]  *See, e.g.,* Def's Br. at 9-10 ("the Court should not exclude

---

[2] As such, the other documents regarding the Gateway system are irrelevant as they are dated less than one year prior to August 10, 1994.

[3] Indeed, Defendant actually suggests that the Court ***did not strike any portions of the Lawson 6.0 and 5.0 references and that its reliance on the version 6.0 and 5.0 systems is unbounded***. Def's Br. at 8 ("The Court's May 25, 2010 Order provides no grounds for [*e*Plus's] statement" that the Court excluded Lawson 6.0 and 5.0 as to validity except with respect to the "means for searching for matching items in the database" element).  This Court has already clarified that, with the exception of the limitation of a "means for searching for matching items in the database," Defendant cannot present at trial evidence, expert opinion, other testimony, or argument as to whether the version 6.0 or 5.0 software systems anticipate the patents-in-suit. Based upon that order, *e*Plus's validity expert did not analyze or review Defendant's version 6.0 or 5.0 systems as compared with the patents-in-suit.  Similarly, because *e*Plus does not contend

2

the references for purposes of proving validity that were timely disclosed *in Dr. Shamos' Invalidity Report*." (emphasis added)). Regardless, Defendant's irrelevant arguments are legally false on the merits. The Court should grant *e*Plus's motion.

## II.   ARGUMENT

### A.   Dr. Shamos's Infringement Report Is Another Attempt By Defendant to Implicitly And Explicitly Circumvent The Court's Orders By Introducing The Version 6.0 and 5.0 Systems As Prior Art To The Patents-In-Suit

Defendant *does not dispute* that its introduction of its non-accused version 6.0 and 5.0 systems into Dr. Shamos's infringement report is a back door attempt to perform a validity analysis of the patents-in-suit. This disregard for the Court's Orders prejudices *e*Plus since (1) introduction of the version 6.0 and 5.0 systems for purported infringement purposes necessarily requires a validity analysis – an analysis *e*Plus's validity expert never had an opportunity to perform, (2) Dr. Shamos' reliance on these non-accused products inherently confuses and misleads the jury by suggesting that the version 6.0 and 5.0 software products are prior art to the patents-in-suit (*i.e.* that which later infringes, invalidates if earlier) and (3) *e*Plus had no opportunity to respond to validity contentions contained in Defendant's rebuttal infringement report. Moreover, Defendant first disclosed that it intends to rely on its version 6.0 and 5.0 systems for "infringement" purposes in a letter dated May 7, 2010 – *two days after ePlus had already served its expert report on infringement*.[4] Def's Br. Ex. 3 (Dkt. No. 301-3).

---

that the version 6.0 or 5.0 systems infringe, its infringement expert has not evaluated these systems.

[4] Defendant's contention that it "informed *e*Plus that its legacy systems were relevant beyond the issue of invalidity" in early April, 2010 is directly contradicted by its own supporting documentation. Def's Br. Ex. 3 (Dkt. No. 301-1) ("As we have stated in our responses to Interrogatories, *Lawson intends to rely on Version 6 to provide background information and context in relation to Lawson's obviousness claims*.").

3

Consequently, Dr. Weaver – *e*Plus's infringement expert – never had an opportunity to evaluate whether Defendant's version 6.0 or 5.0 systems infringe the asserted patents.

Defendant similarly ***does not dispute*** the ample evidence suggesting that Dr. Shamos's infringement opinions are merely his invalidity opinions cloaked with infringement headings, including that (1) he relies heavily on the purported functionality of Defendant's version 6.0 and 5.0 systems, comparing the asserted claims to the version 6.0 and 5.0 systems as opposed to the accused products, (2) his infringement analysis of Defendant's version 6.0 and 5.0 systems as compared to the accused products is not tied to any particular claim or the actual language of any claim element, (3) he copies, nearly verbatim, opinions from his validity report into his non-infringement report, (4) he cannot establish that functionality allegedly present in the version 6.0 or 5.0 systems is also present in the accused products (*e.g,.* by evaluating source code or product manuals) and (5) he reviewed the version 6.0 and 5.0 systems only to evaluate the validity of the patents-in-suit. *e*Plus will prove Defendant's infringement by comparing the accused products to the Asserted claims. Dr. Shamos's Infringement Report reveals that he relies on Defendant's version 6.0 and 5.0 systems only to re-argue excluded validity theories.[5]

Defendant alleges that the non-accused systems are relevant to issues other than the validity of the *e*Plus patents such as willfulness, indirect infringement and non-infringing alternatives. Introduction of evidence relating to Defendant's version 6.0 and 5.0 systems as to

---

[5] Defendant also contends, with no analysis, that *e*Plus's infringement report "greatly expanded [its] infringement contentions, creating new potential grounds for opening the door as to the scope of relevant prior art." Def's Br. at 5. Specifically, Defendant argues that "[i]f the Court allows any significant portion of the new infringement analysis into the case, that should open the door for Lawson to use the additional prior art that would otherwise be excluded under the May 25, 2010 Order." Defendant cannot and does not identify any connection between *e*Plus's infringement report – which includes arguments *e*Plus could not have made sooner due to Defendant's delay tactics – and Defendant's attempts to circumvent the Court's Order with respect to its version 6.0 and 5.0 systems by arguing that these systems invalidate the asserted patents.

4

issues of willfulness, indirect infringement, non-infringing alternatives or reasonable royalty is ***simply a ruse*** for arguing that the non-accused systems are prior art, requiring a comparison between the accused products and the non-accused 6.0 and 5.0 products – a comparison which is highly likely to confuse the jury and further prejudice *e*Plus.  Such comparisons also invite the jury to speculate as to the validity of the patents-in-suit in view of Defendant's non-accused products.  In any event, Defendant's suggestions that the version 6.0 and 5.0 systems are relevant to issues other than validity are specious and without legal merit.

> **1.    Defendant's Version 6.0 And 5.0 Systems Are Irrelevant To Whether Lawson Willfully Infringed The *e*Plus Patents As A Matter Of Law**

Defendant's argument that the version 6.0 and 5.0 systems are relevant to whether it willfully infringed the patents-in-suit is baseless and contradicted by the specific cases cited in its brief.  A jury's finding of willful infringement can be premised on "objective recklessness" and includes both an objective and subjective component.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) ("proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness").  An infringer is "objectively reckless" when it "acts despite an objectively high likelihood that its actions constituted infringement of a valid patent" (objective component).  *Id*. at 1371 (citation omitted).  A patentee must further show that "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer" (subjective component).  *Id.* (emphasis added).

The "objective recklessness" at issue here includes whether Defendant was aware or should have been aware of the patents-in-suit and whether it introduced the *accused products* despite a high likelihood that the *accused products* infringed the asserted patents.  Defendant's version 6.0 and 5.0 systems are plainly irrelevant to whether it was "objectively reckless" with

5

respect to the *accused products* and Defendant does not identify *any* contrary authority. While Dr. Shamos opines that "[b]ecause of the strength of the non-infringement arguments contained [in his report] . . . Lawson has an objectively-reasonable basis to believe that it does not infringe the claims of the patents in suit," Dkt. No. 282, Ex. F (Shamos Infringement Report) at ¶ 11,[6] his support for that opinion is premised on his validity analysis with respect to Defendant's version 6.0 and 5.0 systems as compared with the asserted patents – ***the identical analysis pasted verbatim from his Validity Report***.[7]  *See supra* at 4-5.

### 2. Defendant's Non-Accused Systems Are Not Relevant To The Issue Of Whether Defendant Indirectly Infringes The Patents-In-Suit As A Matter Of Law

Defendant's suggestion that the Version 6.0 and 5.0 systems are relevant to indirect infringement is similarly legally baseless. To prove inducement to infringe, a plaintiff must demonstrate "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *see also* 35 U.S.C. § 271(b). Similarly, an accused infringer can be liable for contributory infringement if it sold in the U.S. a material part of a patented device knowing that the part was especially made or adapted for use in a manner that would infringe a patent. 35 U.S.C. § 271(c); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010). As Defendant has repeatedly argued in its own motions, a central issue is Defendant's knowledge of the patents-in-suit. Defendant's version 6.0 and 5.0 systems are plainly not relevant to the issue of whether Defendant knew of the *e*Plus

---

[6] Dkt. No. 282 is the Appendix of Exhibits A-EE filed concurrently with *e*Plus's Motions *in Limine* on June 18, 2010.

[7] Defendant's deception is further exposed by the fact that neither Defendant nor Dr. Shamos rely on Defendant's software versions 7.0 or 8.0 (*i.e.* systems released *after* the priority date of the patents-in-suit) to support their contentions that Defendant did not willfully infringe or intend for its customers to infringe the asserted patents or as non-infringing alternatives.

patents when it sold accused products to its customers and, again, Defendant does not identify *any* contrary authority.

### 3. Defendant Cannot Identify Any Evidence That The Version 6.0 And 5.0 Systems Are Available And Commercially Acceptable Alternatives To The Accused Products

As detailed more fully in *e*Plus's Motion *In Limine* No. 7, Defendant cannot and has not produced any evidence that its version 6.0 and 5.0 systems are non-infringing alternatives to the patents-in-suit. Defendant must specifically establish that the non-accused, early 1990s era, version 6.0 and 5.0 systems were available and commercially acceptable as alternatives to the accused products beginning at the time of the hypothetical negotiation between the parties in 2002. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1354-55 (Fed. Cir. 1999). "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a non-infringing substitute at that time." *Id.* at 1353. Moreover, an acceptable non-infringing alternative is one that contains all the advantages of the patented product. *See TWM Mfg. Co v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986); *see also Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556 (Fed. Cir. 1986) (rejecting infringer's argument that there were non-infringing alternatives available because systems in the prior art performed the same functions).

Defendant's arguments as to whether its version 6.0 and 5.0 systems are non-infringing alternatives are bald, conclusory statements containing no details of the components of any the supposed alternatives and no analysis as to why the alleged alternatives are acceptable. Similarly, none of Defendant's witnesses or experts have even analyzed whether the non-accused version 6.0 and 5.0 systems are an available and commercially acceptable alternative to the accused products.

Indeed, Jeff Hvass, Defendant's own 30(b)(6) designee testified that Defendant's customers "would not be happy with [the] functionality" in the version 5.0 and 6.0 systems as compared with the accused products. Ex. 3 (Hvass Dep.) at 178:21 – 179:4[8]. *See also id.* at 210:21 – 211:5 ("Q: And would it be an available and acceptable alternative for a customer using 9.0 today to be told by Lawson, sorry, you can't use 9.0 anymore, you need to use the procurement modules for 5.0?  A: We have never done that for a client.  Q: And you never would, correct? A: No, it wouldn't be good business practice."). Mr. Hvass similarly testified that no customers even own the hardware required to run the version 5.0 system and a "major number" of its customers could not even run the 6.0 system. *Id.* at 209:22 – 210:20. While Dr. Shamos opines that each of the cited prior art references – including Defendant's version 6.0 and 5.0 systems – are non-infringing alternatives, he performed no investigation as to whether any of the prior art references are available and commercially acceptable alternatives or even whether Defendant provides support services for the version 6.0 systems, prepared no analysis as to how much it would cost to replace the accused products with the non-accused version 6.0 and 5.0 systems and could not identify a single customer willing to switch from an accused product to a system utilizing version 6.0 or 5.0 software. Ex. 4 (Shamos Dep.) at 175:10 – 178:12.

---

[8] The notation "Ex. [NUMBER]" references a particular exhibit located within the Appendix of Exhibits filed concurrently with ePlus's reply briefs in support of its motions in limine.

### B. Defendant Can Only Raise Validity Theories At Trial That Are Disclosed In its Court-Ordered Second Supplemental Statement[9]

This Court has repeatedly ruled that Defendant can only introduce validity theories at trial that are disclosed in the Court-Ordered Second Supplemental Invalidity Statement. *See, e.g.,* Dkt. No. 282, Ex. E (Hearing Tr.) at 97:6 – 100:21 (May 24, 2010) ("if something is not listed on the list of prior art filed on April 9th, it's not coming in"). It is undisputed that Defendant did not assert in the Court-Ordered Second Supplemental Invalidity Statement that the:

(1) J-CON prior art system anticipates claims 6, 26, 28 and 29 of the '683 patent; claims 1, 2, 6, 9, 21 22 and 29 of the '516 patent; and claim 1 of the '172 patent;

(2) Gateway prior art system anticipates claims 3, 6, 28 and 29 of the '683 patent; claims 6, 9, 21 22 and 29 of the '516 patent; and claim 1 of the '172 patent;

(3) PO WRITER system anticipates claims 2, 21 and 22 of the '516 patent and claim 1 of the '172 patent;

(4) King '542 Patent anticipates claims 6, 26, 28 and 29 of the '683 patent; claims 6, 22 and 29 of the '516 patent; and claim 1 of the '172 patent;

(5) 41 combinations of references listed in *e*Plus's memorandum render obvious one or more claims of the patents-in-suit. Br. at 15.

It is further undisputed that Dr. Shamos opines that each of the aforementioned claims is invalid in view of the cited references. Moreover, Defendant again raises validity theories beyond the scope of the Second Supplemental Statement in its Supplemental Summary Judgment Motion in which it contends, for the first time, that asserted claims 3 and 6 of the '683 Patent, claim 22 of

---

[9] The only exception to this general exclusion is that the Court ordered that Lawson may introduce the non-accused systems as prior art to a single claim element: a "means for searching for matching items in the database" and invited briefing as to whether Lawson should be permitted to present evidence at trial as to whether the Lawson 6.0 and Lawson 5.0 systems disclose a "means for building a requisition using data relating to selected matching items and their associated sources."

9

the '516 Patent and claim 1 of the '172 Patent are invalid under 35 U.S.C. § 101.  *See* Dkt. No. 316 (July 7, 2010).

Contrary to Defendant's mistaken assertion, *e*Plus does not offer this motion ***to reargue*** the issue of whether Defendant may introduce prior art *references* not disclosed in the Court-ordered Second Supplemental Invalidity Statement (which the court has taken under advisement).  Def's Br. at 8-10.  Rather, *e*Plus brings this motion to confirm that Defendant ***cannot reargue*** certain validity ***theories*** not listed in the Court-Ordered Second Supplemental Invalidity Statement.  For the same reasons of streamlining the case and limiting prejudice to *e*Plus discussed in *e*Plus's Motion To Strike Portions of Defendant's Expert Report, the Court should similarly exclude from trial evidence, expert opinion or other testimony as to these asserted claims based on the J-CON, Gateway, PO WRITER and King references in addition to the 41 new (albeit wholly conclusory) obviousness combinations.

      **C.**    **Dr. Shamos Should Not Be Permitted To Rely On Gateway Publications Other Than The 2000 MRO Manual**

With respect to the Gateway prior art system, it is undisputed that Dr. Shamos's only opinion is that the "Gateway 2000/ MRO Version (described in the Gateway manual)" anticipates one or more claims of the asserted patents as a printed publication under 35 U.S.C. § 102(b).  *See* Dkt. 282, Ex. B (Shamos Validity Report) at ¶ 101.  It is further undisputed that because Dr. Shamos asserts that the 2000 MRO Manual (date listed as May, 1991) anticipates the patents-in-suit as a printed publication, he should not be permitted to rely on documents other than the 2000 MRO Manual.  Moreover, the additional publications relied upon by Dr. Shamos, cannot – ***by definition*** – qualify as 102(b) prior art since none are purported to have been published prior to August 10, 1993.  All of the cases relied upon by Lawson are inapposite since none involve a situation where an expert's *only* opinion is that a prior art reference invalidates as

10

a printed publication under § 102(b). Consequently, this Court should order that Dr. Shamos cannot rely on any Gateway publication other than the 2000 MRO Manual.

### III.  CONCLUSION

Instead of responding to the arguments and specific request for relief requested in *e*Plus's motion, Defendant instead re-argues whether it should be able circumvent the Court's repeated orders (going so far as to even suggest that the Court did not exclude Lawson 6.0 and 5.0 for validity purposes) that it be bound to allegations contained in its Court-ordered Second Supplemental Statement. Defendant does not dispute that Dr. Shamos's reliance on Lawson version 6.0 and 5.0 in his so called infringement report necessarily argues that the non-accused systems are prior art to the patents-in-suit. Further, the non-accused Lawson products are not relevant to the issues of willfulness, indirect infringement or non-infringing alternatives. Defendant also does not dispute that it did not disclose in its Second Supplemental Statement numerous theories of validity as to the J-CON, Gateway, PO WRITER and King references including 41 new obviousness combinations or that Dr. Shamos relies on Gateway publications other than the 2000 MRO Manual notwithstanding that his only opinion is that the Gateway reference is § 102(b) prior art. Therefore, *e*Plus's motion *in limine* should be granted.

Respectfully submitted,

July 12, 2010

/s/
Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com
cmerritt@cblaw.com

11

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMIT* NO 2: TO ENFORCE THE COURT'S ORDERS OF MAY 24, 2010 AND MAY 25, 2010 AND EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO ALLEGED PRIOR ART AND INVALIDITY THEORIES NOT SET FORTH IN DEFENDANT'S COURT-ORDERED SECOND SUPPLEMENTAL STATEMENT**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

/s/
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com