IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF *e*PLUS INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO 4: TO EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO PURPORTED "DEMONSTRATION SYSTEMS" FOR LAWSON RELEASES 5.0, 6.0, AND 6.1**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

I. **INTRODUCTION**

Plaintiff *e*Plus Inc. ("*e*Plus") respectfully replies in further support of its Motion *in Limine* to Exclude Any Evidence, Expert Opinion, Other Testimony, or Argument Pertaining to Purported "Demonstration Systems" for Lawson Releases 5.0, 6.0, and 6.1.

There is no dispute that Defendant's artificial legacy systems demonstrated during the June 8, 2010 Rule 30(b)(6) deposition of Jeffrey Hvass ("Mr. Hvass") do not accurately depict any system of Defendant in public use prior to August 10 1994, the priority date for the patents-in-suit.  Indeed, Defendant concedes that:

- the demonstration systems are not actual systems of Defendant that were in public use before August 1994;
- the demonstration systems include source code that was created after August 1994; and
- the demonstration systems also incorporate hardware, operating systems, and middleware of post-1994 vintage.

Because Defendant concedes that none of the demonstration systems are actual systems that were in public use before August 1994, there can be no dispute that the systems are neither authentic nor original.  Consequently, they can neither be authenticated nor can they satisfy the best evidence rule in accordance with the Federal Rules of Evidence.  Furthermore, because the artificial legacy systems are not accurate depictions of any pre-1994 system of Defendant, any use of the demonstration systems at trial would be highly prejudicial to *e*Plus.  These demonstration systems, which were manufactured by Defendant solely for the purpose of litigation, will likely confuse and mislead the jury because they will suggest that the systems were available before August 1994, which is exactly what Defendant seeks to accomplish.

Even though the manufactured legacy systems cannot be relevant to Defendant's invalidity allegations at trial because they were created after 1994, and even though Defendant effectively concedes that the introduction of these systems at trial will be highly prejudicial to

*e*Plus, Defendant argues it should be permitted to introduce these demonstrations at trial because they are relevant for reasons besides the purported invalidity of the patents-in-suit. This argument is nothing more than a transparent end-run around the Court's May 25, 2010 Order. In that Order, the Court clarified that, with the exception of the claim limitation of a "means for searching for matching items in the database," Defendant cannot present at trial evidence, expert opinion, other testimony, or argument as to whether Defendant's purported version 5.0 or 6.0 software systems anticipate the patents-in-suit.[1] Based upon that Order, *e*Plus's validity expert did not analyze or review the purported version 5.0 or 6.0 systems as compared with the patents-in-suit. Similarly, because *e*Plus does not contend that the version 5.0 or 6.0 systems infringe, its infringement expert has not evaluated these systems. Notwithstanding the Court's Order, Defendant claims that it should be permitted to introduce its alleged prior art legacy system demonstrations at trial. Not only should Defendant's request be rejected as an attempt to evade the Court's Order, it should also be denied because Defendant's other alleged bases for relevance lack merit and should be rejected.

---

[1] The Court reserved judgment on the claim limitation of a "means for building a requisition using data related to selected matching items and their associated sources." Order (Dkt No. 230, May 25, 2010).

2

## II. ARGUMENT

### A. The Prejudice To *e*Plus Is Incontrovertible As Defendant Concedes That None Of The Recreated Legacy Systems Are Actual Pre-1994 Systems

Defendant concedes that none of the demonstration systems accurately depict any system in public use before August 1994. Not only were none of these systems ever actually publicly available before August 1994, the demonstration systems incorporate source code, hardware, operating systems, and other middleware that post-date August 1994, often by several years or more. Accordingly, the demonstrations are unquestionably prejudicial to *e*Plus, regardless of any alleged relevance to other issues in the case.

In its brief, Defendant acknowledges that the recreated legacy systems are not actual pre-1994 systems. For example, Defendant concedes that the dates of the platforms and hardware operating the systems post-date 1994. Def.'s Br. at 1; *see also id.* at 12. Moreover, contrary to Defendant's assertion, the incorporation of these new platforms and hardware, such as the Lawson Interface Desktop, into the demonstration systems affects the functionality of the systems. *See* Ex. 6 (Supplemental Expert Report of Brooks L. Hilliard Relating to Patent Validity, June 21, 2010) at ¶ 23.[2] In addition, it is undisputed that the source code for multiple programs within the procurement-application suites of the demonstration systems was not completed until after August 10, 1994. Consequently, Defendant's attempt to portray the demonstration systems as simply old movies running on a new projector is far from the truth.

---

[2] The notation "Ex. [NUMBER]" references a particular exhibit located within the Appendix of Exhibits filed concurrently with *e*Plus's reply briefs in support of its motions *in limine*.

3

*See* Def.'s Br. at 2.  A more apt analogy is that the artificial legacy systems are new movies (with a few older components) running on new projectors.[3]

Given Defendant's concession that the artificial legacy systems are not actual pre-1994 systems, Defendant's claim that these demonstration systems are nonetheless authentic and the "best evidence" is meritless for several reasons.  First, Defendant's argument misses entirely the crux of authentication; the demonstration systems cannot be authenticated because, as Defendant admits, the demonstration systems are not what they are purported by Defendant to be, *i.e.*, actual systems in public use before 1994.  Second, even assuming *arguendo* that the demonstration systems are authentic, Mr. Hvass, Defendant's Rule 30(b)(6) witness concerning these systems, could not authenticate them because he has no direct knowledge of the facts surrounding the creation of the source code used by these systems or its subsequent modification. *See* Def.'s Br. at 11; Fed. R. Ev. 901(b)(1).

Although Mr. Hvass offered uncorroborated self-serving testimony about the purported authenticity of the legacy systems, that is insufficient to establish that the demonstration systems are what Defendant says they are.  *The Barbed-Wire Patent*, 143 U.S. 275, 284-285 (1892) ("Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information."); *see also Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1217-18 (Fed. Cir. 2002); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369-70 (Fed. Cir. 1999); *Woodland Trust v.*

---

[3] *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209 (Fed. Cir. 2006), cited by Defendant in its opposition, is irrelevant.  The defendant in *Liquid Dynamics* sought to exclude computer-generated models relied upon by the plaintiff's expert to evaluate infringement of the patent-in-suit by the defendant's products. *Liquid Dynamics*, 449 F.3d at 1220.  *Liquid*

*Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998). Third, the demonstration systems cannot be the "best evidence" because they are not the ***original*** systems used by Defendant's customers prior to 1994, but rather were manufactured for the purpose of this litigation with source code that post-dates the patents-in-suit and hardware, operating systems, and middleware of recent vintage.[4]

The prejudice created by the display of these demonstration systems to a jury is evident. Even if the jury is instructed that the demonstration systems are not prior art to the patents-in-suit, a jury is likely to mistake the demonstration systems for actual legacy systems of Defendant that were being sold to customers before the priority date of the patents-in-suit. Furthermore, regardless of whether the jury appreciates that the demonstration systems are not actual Lawson legacy systems, the jury may well assume that they fairly represent the functionality of Defendant's products that were in public use in August 1994. Finally, the impression created by these live demonstrations, if admitted, will be far more indelible from the jurors' memories than any testimony or product manuals that would more accurately reflect the true functionality of Defendant's legacy systems during the relevant time period.

---

*Dynamics* has absolutely no application to whether Defendant should be permitted to introduce at trial demonstrations of reconstructed, artificial software systems as alleged prior art.

[4] Defendant's reliance on *U-Haul Int'l v. Lumbermens Mutual Casualty Co.*, 576 F.3d 1040 (9th Cir. 2009), is misplaced. *U-Haul* addresses the authentication of computer-generated summaries of records maintained in the ordinary course of business. *Id.* at 1043; Fed. R. Ev. 901(b)(9). Unlike the computer-generated summaries of records in *U-Haul*, the demonstration systems here were neither created nor maintained in the ordinary course of Defendant's business, but instead were ginned up solely for this litigation. Additionally, unlike in *U-Haul*, here Defendant seeks to authenticate an alleged prior art system, which necessarily means that it must also authenticate the date of the creation of the system and identify any subsequent modifications to the system. Because Defendant was required, but failed, to present a witness with first-hand knowledge to attest to the origin and subsequent modification of the systems, it has failed to properly authenticate the alleged legacy systems. Fed. R. Ev. 901(b)(1).

5

### B.     Defendant's Effort To Evade The Court's May 25, 2010 Order Should Not Be Countenanced

In a transparent and desperate attempt to evade the Court's Order restricting the use Defendant can make of its legacy systems at trial, Defendant claims that it should have an unfettered opportunity at trial to introduce the artificial demonstration systems because of their purported relevance to a variety of issues.  This argument fails not only because it contravenes an explicit Order from the Court,[5] but also because the demonstration systems cannot be relevant to any other issues that Defendant asserts for the same reason that they are not relevant to invalidity:  the demonstration systems are not actual legacy systems of Defendant.

The demonstration systems cannot be non-infringing alternatives, as Defendant contends, at least because none of them are actual systems of Defendant that were available and commercially acceptable as alternatives to the accused products at the time of the hypothetical negotiation between the parties in 2002.  *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1354-55 (Fed. Cir. 1999).  First, as set forth above, none of these systems reflect an actual system from Defendant at the time of first infringement.  Second, Defendant has provided no basis to assume that these outdated systems, purportedly released eight years prior to the date of the hypothetical negotiation, would be acceptable alternatives.  To the contrary, Defendant's own Rule 30(b)(6) witness on the demonstration systems admitted that the version 5.0 and 6.0 systems would not be viable alternatives for Defendant's customers:

> *e*Plus Counsel:  Do you think it would be acceptable to a Lawson customer today using Lawson Software 9.0, if you told them you can't use [Lawson] 9.0 anymore, we're going to have to switch you back to Lawson 5.0 or Lawson 6.0 with respect to the procurement software, would that be okay for a customer today?

---

[5] Order (Dkt. No. 230, May 25, 2010).

6

>Mr. Hvass (Lawson): An impossible -- excuse me, a customer would not be happy with that functionality.
>
>* * *
>
>*e*Plus Counsel: And would it be an available and acceptable alternative for a customer using [Lawson] 9.0 today to be told by Lawson, sorry, you can't use [Lawson] 9.0 anymore, you need to use the procurement modules for [Lawson] 5.0?
>
>Mr. Hvass (Lawson): We have never done that for a client.
>
>*e*Plus Counsel: And you never would, correct?
>
>Mr. Hvass (Lawson): No, it wouldn't be good business practice.

Ex. 3 (Hvass Dep. Tr., June 8, 2010) at 178:22-179:6; 210:21-211:5. Indeed, Dr. Michael Shamos, Defendant's expert on validity, admitted that he performed no investigation as to whether the Release 5.0 or 6.0 systems were available and commercially acceptable alternatives or even whether Defendant currently provides maintenance and support services for Release 6.0, prepared no analysis as to how much it would cost to replace the accused products with Release 6.0, and could not identify a single customer willing to switch from an accused product to systems using Release 5.0 or 6.0. Ex. 4 (Shamos Dep.) at 175:10 – 178:12.[6]

Similarly, the demonstration systems cannot be used to show a lack of intent by Defendant in response to *e*Plus's claims of inducing infringement or willful infringement when none of the systems accurately reflects any system of Defendant in use before Defendant's infringement began. As the cases that Defendant itself relies upon establish, whether Defendant's knowledge or recklessness with respect to the patents justifies a finding of induced

---

[6] *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), cited by Defendant as support, involved a patent-infringement defendant that, in sharp contrast to Defendant, actually switched to the alleged non-infringing alternative during the course of litigation between the parties, clearly demonstrating the viability of the non-infringing substitute as an acceptable alternative. 185 F.3d at 1346.

or willful infringement is a question that considers Defendant's notice of the patents-in-suit. *See DSU Medical Corp. v. Medisystems Corp.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328-29 (Fed. Cir. 2009); *In re Seagate Tech.*, 497 F.3d 1360, 1370-72 (Fed. Cir. 2007). Defendant's legacy systems have no bearing on whether Defendant had notice of *e*Plus's patents and either knew, should have known, or recklessly ignored whether its conduct infringed the patents-in-suit.

### III. CONCLUSION

*e*Plus therefore respectfully requests that the Court exclude from evidence the "recreated" legacy system demonstrations and related code, and preclude any related testimony, evidence or argument from Defendant.

                                  Respectfully submitted,

July 12, 2010                             /s/
                                  Henry I. Willett, III (VSB #44655)
                                  Craig T. Merritt (VSB #20281)
                                  **CHRISTIAN & BARTON, LLP**
                                  909 East Main Street, Suite 1200
                                  Richmond, Virginia 23219-3095
                                  Telephone: (804) 697-4100
                                  Facsimile: (804) 697-4112
                                  hwillett@cblaw.com
                                  cmerritt@cblaw.com

                                  Scott L. Robertson *(admitted pro hac vice)*
                                  Jennifer A. Albert *(admitted pro hac vice)*
                                  David M. Young (VSB #35997)
                                  **GOODWIN PROCTER LLP**
                                  901 New York Avenue, N.W.
                                  Washington, DC 20001
                                  Telephone:  (202) 346-4000
                                  Facsimile:   (202) 346-4444
                                  srobertson@goodwinprocter.com
                                  jalbert@goodwinprocter.com
                                  dyoung@goodwinprocter.com

                                  Michael G. Strapp (*admitted pro hac vice*)
                                  James D. Clements  (*admitted pro hac vice*)
                                  **GOODWIN PROCTER LLP**
                                  Exchange Place
                                  53 State Street
                                  Boston, MA 02109-2881
                                  Telephone:  (617) 570-1000
                                  Facsimile:   (617) 523-1231
                                  mstrapp@goodwinprocter.com
                                  jclements@goodwinprocter.com

                                  Attorneys for Plaintiff, *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO. 4:  TO EXCLUDE ANY EVIDENCE, EXPERT OPINION, OTHER TESTIMONY, OR ARGUMENT PERTAINING TO PURPORTED "DEMONSTRATION SYSTEMS" FOR LAWSON RELEASES 5.0, 6.0, AND 6.1**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com
***Counsel for Defendant Lawson Software, Inc.***

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com
***Counsel for Defendant Lawson Software, Inc.***

　　　　　　　　/s/
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com