IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-CV-620 (REP) |
| ) | |
| v. ) | |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF ePLUS INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO. 6:  TO EXCLUDE ALLEGED PRIOR ART THAT DEFENDANT UNTIMELY PRODUCED AFTER THE CLOSE OF FACT DISCOVERY**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

I.  **INTRODUCTION**

Plaintiff *e*Plus Inc. ("*e*Plus") respectfully replies in further support of its Motion *in Limine* to Exclude Alleged Prior Art that Defendant Untimely Produced After the Close of Fact Discovery.

There is no genuine dispute that the documents, interrogatory responses, and source code that are the subject of this motion were produced after the deadline for fact discovery set by the Court. Importantly, Defendant concedes that:

- the discovery *e*Plus seeks to exclude, including product manuals and source code concerning Defendant's purported legacy systems, was untimely served;
- the product manuals and source code that Defendant produced after the close of discovery were responsive to *e*Plus's initial document requests served on July 24, 2009; and
- Defendant did not make any mention of its purported legacy software systems in its Court-ordered second supplemental invalidity contentions served on April 9, 2010.

By Defendant's own admission, therefore, it not only waited until after the close of fact discovery to provide critical documents and information regarding its purported legacy systems in response to discovery requests that had been outstanding for several months, it also concealed its intentions to rely upon these purported legacy systems. This belated, prejudicial discovery should be excluded.

II.  **ARGUMENT**

    A.  **Defendant Has No Excuse For Its Failure To Provide Responsive Discovery Until After The Court-Ordered Deadline**

Defendant failed to provide responsive discovery in a timely manner in accordance with the Court's Scheduling Order and the Federal Rules of Civil Procedure. The discovery it eventually did provide was clearly responsive to *e*Plus's initial document requests served on July

24, 2009.  Defendant's litany of self-serving excuses does not justify its late production of documents and those documents should accordingly be excluded at trial.[1]

Lawson's claim that its belated production of four documents concerning Release 4.0 and 5.0 systems and Release 6.1 source code was because these materials were in the possession of alleged third parties (*viz.* Lexington Clinic and Ciber Technologies) is irrelevant.  See Def.'s Br. at 4-6, 9-10.  Even assuming for the sake of argument that the documents were not within Defendant's control, the documents were clearly responsive to *e*Plus's July 24, 2009 document requests.  *See, e.g.*, Dkt. No. 282, Ex. X (Pl.'s First Set of Reqs. for Prod. of Docs. to Def., July 24, 2009, Request Nos. 5, 6, and 12) at 3, 5.[2]  And as Defendant required no subpoena or other formal process to obtain this discovery, it is clear that Defendant could have obtained it—and then produced it—at any time.  Defendant cannot justify sitting on its hands until the end of fact discovery before beginning its efforts to collect documents that fell squarely within the scope of *e*Plus's outstanding discovery requests.[3]

---

[1] The cases cited by Defendant in support of admitting these late document productions have absolutely no application to the issue.  *In re Matos* (*Cadle Co. v. Parks-Matos*), 267 Fed. Appx. 884 (Fed. Cir. 2008), which involves sections 727(d)(3) and (a)(6)(A) of the U.S. bankruptcy code, addresses the question of whether a debtor's bankruptcy discharge should be revoked for failure to obey a court order.  It has nothing to do either with the Federal Rules of Civil Procedure or with whether documents produced after a Court-ordered deadline should be excluded.  In *Gipson v. Southwestern Bell Telephone Co.*, 2009 WL 790203 (D. Kan. Mar. 24, 2009), a case entailing mutual motions to compel discovery, the Court unremarkably ordered the plaintiffs, pursuant to the defendant's request, to produce any additional responsive documents discovered during the course of discovery in accordance with the Federal Rules.  *Id.* at *5; Fed. R. Civ. P. 26(e)(1).  This is quite the opposite of the current circumstances, where *e*Plus has moved to ***exclude*** documents produced ***after*** the close of fact discovery.

[2] Dkt. No. 282 is the Appendix of Exhibits A-EE filed concurrently with *e*Plus's Motions *in Limine* on June 18, 2010.

[3] Defendant further argues that the documents allegedly received from Lexington Clinic were belatedly produced because of the timing of *e*Plus's Fifth Rule 30(b)(6) Notice of Deposition (Def.'s Br. at 4-5), but there is simply no nexus between the two issues.  *e*Plus's Rule 30(b)(6) Notice of Deposition did not seek any documents from Defendant.  Ex. 7 (Pl.'s Fifth Notice of Dep. of Def. Pursuant to Rule 30(b)(6), Apr. 5, 2010) at 10-12.  Defendant's incoherent

Moreover, the Release 6.1 source code produced by Defendant after the close of discovery was neither produced in a reasonably usable form nor does it hold any relevance to the case. Having produced data (*i.e.*, source code) that cannot even be read using standard computer hardware and software, Defendant, like the plaintiffs in *N. Natural Gas Co. v. TEKSystems Global Applications, Outsourcing*, 2006 U.S. Dist. LEXIS 64149 (D. Neb. Sept. 6, 2006), was obligated either to provide *e*Plus with the same specialized hardware or software needed to review the source code, or to convert the data into a file format readable on a standard computer system. Furthermore, Defendant's argument that admission of the 6.1 source code is justified because of its alleged relevance to issues other than invalidity is not only incorrect,[4] it is simply another transparent attempt to make an end-run around the Court's May 25, 2010 Order limiting the admissibility of systems based on Releases 5.0 and 6.0 for the sole purpose of purportedly showing a single limitation within the asserted claims.[5]

Defendant next attempts to shift the blame to *e*Plus for the late production of documents it produced during the deposition of Mr. Hvass on June 8, 2010, alleging that these documents, which contain file directories and other information regarding source code for multiple purported

---

argument that the late production somehow resulted from the scheduling of this Rule 30(b)(6) deposition is nonsense.

[4] *See* Pl.'s Reply Br. in Supp. of Mot. *in Limine* No. 4 (submitted herewith). *e*Plus makes only one remark in passing regarding Defendant's other alleged bases for the relevance of the Release 6.1 source code. While Defendant pays lip service to the alleged relevance of Release 6.1 to issues such as non-infringing alternatives and intent, Defendant's actions belie its true purpose for seeking to introduce the Release 6.1 source code. Assuming for the sake of argument that Release 6.1 systems were relevant to these issues, even more relevant and useful to Defendant would be Release 7.0 or 8.0 systems, based on subsequent software releases that precede Defendant's first infringing procurement system based on Release 8.0.3. Yet, tellingly, Defendant has made no effort to produce any source code or demonstration systems for the Release 7.0 or 8.0 systems.

[5] *See* Order (Dkt. No. 230, May 25, 2010). The Court reserved judgment on a second claim limitation. *Id.*

legacy software systems, did not exist prior to the deposition and were created in response to *e*Plus's request. Def.'s Br. at 7-8. That these documents did not exist prior to this litigation, but were created at the direction of Defendant's attorneys, in no way excuses their production after the discovery deadline. Defendant announced that it would rely on the purported legacy systems as early as August 2009 and it was undoubtedly well aware long before the close of discovery that it would seek to introduce at trial demonstrations of alleged legacy systems. *See, e.g.*, Def.'s Br. at 2; *see also* Dkt. No. 282, Ex. Z (Def.'s Resps. to Pl.'s First Set of Interrogs. Nos. 1-14, Aug. 24, 2009, Response No. 4) at 13-14.[6]

Defendant was obligated, therefore, to produce during fact discovery not only the demonstration systems themselves, but the file directories and any other source-code information regarding the demonstration systems, which were clearly responsive to *e*Plus's outstanding document requests and directly relevant to the issue of whether the demonstration systems are in fact prior art to the patents-in-suit. *See, e.g.*, Dkt. No. 282, Ex. X (Pl.'s First Set of Reqs. for Prod. of Docs. to Def., July 24, 2009, Request Nos. 5, 6, and 12) at 3, 5. Indeed, Defendant itself offers no reason why it could not have created and produced these responsive documents months earlier. Def.'s Br. at 7-8, 11. That *e*Plus, with little choice but to inspect Defendant's purported legacy demonstration systems after Defendant's stated intention to use them at trial, did not learn of Defendant's ability to generate these responsive documents until the Rule 30(b)(6) deposition on the topic does not excuse Defendant's failure to provide them in a timely manner.

---

[6] Although Defendant announced its intention to rely on the legacy systems as early as August 2009, it later decided that it would not rely on the legacy systems when it deliberately omitted any mention of the legacy systems in its Court-Ordered Second Supplemental Invalidity Statement. Recently, Defendant first disclosed that it intends to rely on the Lawson legacy systems for "infringement" purposes in a letter dated May 7, 2010 – ***two days after ePlus had already served its expert report on infringement***. Of course, Defendant's shifting sands

4

Defendant's final excuse is that its post-discovery supplemental response to Interrogatory No. 14 was permissible to reflect the "clarification" that Mr. Hvass provided regarding the procurement modules purportedly available in Release 5.0 during his deposition. Def.'s Br. at 6-7. This is really no excuse at all. Since Mr. Hvass was the most knowledgeable individual at Defendant regarding the purported Release 5.0 and 6.0 systems, he should have been consulted by Defendant prior to serving any substantive response to Interrogatory No. 14. Instead, Defendant inexcusably made no effort either before or for more than nine months after serving its answer to Interrogatory No. 14 to verify with Mr. Hvass the accuracy of the information disclosed in the original interrogatory answer regarding the Release 5.0 and 6.0 systems. Having neglected its duty to provide complete and accurate interrogatory responses, Defendant should not now be permitted to use its own dereliction as a basis to justify this untimely discovery.

### B. Defendant Provides A Misleading And Incomplete Story In Its Effort To Downplay The Prejudice To *e*Plus Resulting From Its Belated Discovery

Recognizing that its discovery was incontrovertibly untimely, Defendant attempts to downplay the prejudice suffered by *e*Plus by the late discovery. But Defendant's self-serving statements regarding the alleged absence of any prejudice to *e*Plus are intentionally incomplete and misleading. The discovery that Defendant provided after the close of fact discovery significantly alters both the quantity and scope of the evidence regarding Defendant's legacy software systems.

For example, only after the close of fact discovery did Defendant produce documents suggesting that the Release 5.0 systems could potentially be relevant to Defendant's invalidity defense. As Defendant concedes, it did not produce a single product manual for any of the

---

approach on its legacy systems cannot justify its failure to timely produce relevant discovery concerning these systems.

5

procurement modules within Release 5.0 prior to the close of fact discovery that would have disclosed any relevant functionality to compare against the asserted claims.[7]  Nowhere is this more aptly reflected than in the invalidity report of Defendant's own expert, Dr. Michael Shamos, who could not find even one single document to cite regarding the alleged functionality of Release 5.0.  *See* Dkt. No. 282, Ex. B (Report of Michael I. Shamos, Ph.D., J.D. Concerning Invalidity, May 5, 2010) at ¶ 118.  Moreover, Defendant expressly stated in its answer to Interrogatory No. 14 that the Requisitions module was first introduced to Lawson Procurement in Release 6.0, making Release 5.0 irrelevant to the validity of the patents-in-suit.  *See* Ex. 8 (Def.'s Supp. Resps. to Pl.'s Interrogs. Nos. 10, 14, and 24, Dec. 23, 2009) at 9-11.[8]  In fact, Defendant never even asserted Release 5.0 systems as alleged prior art until its inclusion in Dr. Shamos's report on May 5, 2010.  *See* Dkt. No. 282, Ex. B (Report of Expert Michael I. Shamos, Ph.D., J.D. Concerning Invalidity, May 5, 2010) at ¶ 101.  To suggest, as Defendant does, that *e*Plus had fair notice of Lawson's reliance on Release 5.0 is simply implausible.

   Similarly, Defendant's late production of documents relating to Release 4.0 is prejudicial to *e*Plus, because Defendant is seeking to add yet another previously undisclosed legacy system to the case.  The two Release 4.0 documents that are the subject of *e*Plus's motion are the only product manuals on Release 4.0 that Defendant has ever produced.  *See* Def.'s Br., Ex. 1.

---

[7] Within the list of documents that Defendant represents to be the manuals pertaining to Releases 5.0, 6.0, and 6.1 that were produced by Defendant during fact discovery, only five of the listed documents refer to Release 5.0.  Def.'s Br., Ex. 1.  None of these five documents, however, are product manuals for Release 5.0.  Two of the documents, Bates L0010186 and L0026482, disclose procedures for closing out the S3 system at the end of the year.  The other three documents, Bates L0015260, L0015320, and L0016513, are manuals and release notes regarding system upgrades from Release 5.0 to Releases 6.0 and 6.1.

[8] The notation "Ex. [NUMBER]" references a particular exhibit located within the Appendix of Exhibits filed concurrently with *e*Plus's reply briefs in support of its motions *in limine*.

Moreover, Defendant does not dispute the fact that it has never before asserted the relevance of Release 4.0 to the validity of the patents-in-suit or to any other issue.

### III.    CONCLUSION

*e*Plus therefore respectfully requests that the Court exclude from evidence the documents, source code, and interrogatory responses regarding Lawson's legacy software produced or served by Defendant after the close of discovery, and preclude any related testimony, evidence or argument from Defendant.

Respectfully submitted,

July 12, 2010

/s/
Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com
cmerritt@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

        Michael G. Strapp (*admitted pro hac vice*)
        James D. Clements  (*admitted pro hac vice*)
        **GOODWIN PROCTER LLP**
        Exchange Place
        53 State Street
        Boston, MA 02109-2881
        Telephone:  (617) 570-1000
        Facsimile:   (617) 523-1231
        mstrapp@goodwinprocter.com
        jclements@goodwinprocter.com

        Attorneys for Plaintiff, *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO. 6:  TO EXCLUDE ALLEGED PRIOR ART THAT DEFENDANT UNTIMELY PRODUCED AFTER THE CLOSE OF FACT DISCOVERY**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com
***Counsel for Defendant Lawson Software, Inc.***

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

           /s/
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com