IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE ARGUMENTS OR EVIDENCE OF PREVIOUS LITIGATION AND SETTLEMENT AGREEMENTS**

Defendant Lawson Software, Inc. ("Lawson") respectfully replies in support of its motion *in limine* to preclude Plaintiff ePlus Inc. ("ePlus") from presenting evidence or argument relating to other litigations, including any litigation settlement agreements. ePlus's opposition brief does not provide a basis to admit the irrelevant and highly prejudicial litigation settlement agreements. Indeed, ePlus's arguments regarding the weight of precedent are wholly incorrect and even the cases ePlus relies on do not support its position. Supreme Court, Federal Circuit, and district court case law demonstrate that litigation settlement agreements are not relevant and not admissible. Litigation settlement agreements are also prejudicial and inadmissible as compromise agreements.

**I.    DISCUSSION**

    A.    <u>Supreme Court, Federal Circuit, and District Court Case Law Demonstrate that Litigation Settlement Agreements are Generally Not Admissible Because they are not Relevant.</u>

ePlus asserts that the Ariba and SAP litigation settlement agreements are "probative evidence of the economic value of the patents-in-suit" and that Lawson "willfully ignores

decades of Supreme Court and Federal Circuit precedent" in its assertion that the litigation settlement agreements should not be admitted at trial.  (ePlus Response to MIL 1-3 Br. at 1, 11.)  This is not correct.  In fact, over a century of Supreme Court, Federal Circuit, and district court case law demonstrates that litigation settlement agreements should not be admitted at trial.

The Federal Circuit has explained that litigation settlement agreements entered into in the context of litigation have minimal probative value regarding damages.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-28 (Fed. Cir. 2009); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557-58 (Fed. Cir. 1983); *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, No. 09-1454, 2010 U.S. App. LEXIS 12260, at *32 (Fed. Cir. June 16, 2010); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978) ("A royalty, if any, resulting from settlement of an infringement suit between Panduit and a third party, should not be considered evidence of an 'established' royalty and thus a measure of adequate damages here.  License fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation.'" (citation omitted)).

This is consistent with the century-old rule that royalties paid to avoid or settle litigation are not a reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates.  *Rude v. Westcott*, 130 U.S. 152, 164 (1889) ("It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement.  *Many considerations other than the value of the improvements patented may induce the payment in such cases*." (emphasis

added)); *see also Cornely v. Marckwald*, 131 U.S. 159, 161 (1889) (finding patentee's evidence that nine other suits had been settled for a royalty of $50 per infringing machine was not competent evidence to prove an established royalty rate, and explaining that "the payment of a sum in settlement of a claim for an alleged infringement of a patent 'cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owner of the patent in other cases of infringement'" (quoting *Rude*, 130 U.S. at 164)).

The Federal Circuit's decision in *ResQNet.com* did not alter this rule. The admissibility of litigation settlement agreements was not at issue in that case. *ResQNet.com*, 594 F.3d at 872. Indeed, the court recognized that "the hypothetical reasonable royalty calculation occurs before litigation and . . . litigation itself can skew the results." *Id. See also Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 08-273, 2010 U.S. Dist. LEXIS 41514, at *8-9 (E.D. Tex. April 28, 2010) ("Contrary to Defendants' assertion, the recent *ResQNet* decision has not altered the [lack of] admissibility of agreements entered into under the threat of litigation."); *see generally Software Tree, LLC v. Red Hat, Inc.*, No. 09-097, slip op. at 6-7 (E.D. Tex. June 24, 2010) (Exh. 1) ("the Court finds *ResQNet* has not upset this district's case law regarding [lack of] discoverability of settlement negotiations").

Consistent with this rule, district courts routinely exclude litigation settlement agreements from trial because such agreements are not relevant to the damages issues in suit, numerous factors apart from the value of the claim go into the determination to settle, and they are not probative of a reasonable royalty because they do not provide an accurate reflection of what a willing licensor and licensee would do in an arm's length negotiation. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147, 159 (D.R.I. 2009) (excluding licenses entered into as part

of settlements in other cases because they are not probative of a reasonable royalty "because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction"); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 801 (E.D. Tex. 2007) ("The Court therefore finds that evidence of consent decrees, settlements, and licenses made under the threat of litigation would not be proper evidence of Plaintiff's damages to present to the jury."); *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144-45 (N.D. Iowa 2003) (excluding evidence of previous litigation settlement agreement and noting that "the court doubts that the Decree [which was entered pursuant to the settlement with other defendants] has more than marginal relevance, because numerous factors, apart from the value of the claim, go into the determination to settle, so that the Decree actually says little or nothing about the value of Pioneer's claim against Ottawa"); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F. Supp. 1448, 1452 (C.D. Cal. 1993) (following general principal that agreements made "in anticipation of litigation cannot be relied upon to prove a reasonable royalty rate"); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 08-354, slip op. at 3 (E.D. Tex. May 7, 2009) (Exh. 2) (explaining that the AOL litigation settlement agreement included several factors, and while "continued, substantial expense of litigation may have been one factor, there could have also been a variety of other pertinent circumstances, including the parties' respective assessments of their claims, AOL's particular accused technology, AOL's financial status at the time of settlement, and damages derived from the particular accused feature, among many other circumstances," explaining that AOL's financial information is confidential, and holding that the "royalty paid by AOL has minimal, if any, relevance to this litigation"); *Insight Technology Inc. v. SureFire LLC*, No. 04-74, 2009 U.S. Dist. LEXIS 97183, at *3 (D.N.H. Oct. 8, 2009) ("To the extent that Insight wishes to exclude

4

the terms of the settlement agreement itself and SureFire seeks to introduce the terms to prove the value of Insight's reasonable royalty, this evidence is inadmissible at trial. The settlement with Glock was made to resolve ongoing litigation, and is therefore not probative of a reasonable royalty because 'in the usual course [such settlements] do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction.'" (citation omitted)); *Pioneer Corp. v. Samsung SDI Corp.*, No. 06-384, 2008 U.S. Dist. LEXIS 107079, at *16-17 (E.D. Tex. Oct. 2, 2008) (noting that the Federal Circuit "has established a body of case law excluding license agreements 'eroded by litigation' as irrelevant to the *Georgia-Pacific* reasonable royalty analysis" and excluding litigation settlement agreements because "[w]here a license agreement thus arises under the threat of litigation, it has little relevance to the hypothetical reasonable royalty simulation"); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-1974, 2008 U.S. Dist. LEXIS 39343, at *11-13 (N.D.N.Y. May 14, 2008) (J. Rader, sitting by designation) (excluding agreements under Rule 402 and noting "[b]ecause the offers were made and licenses signed under threat of litigation, the offer and license amounts do not speak to 'the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty.'" (quoting *Georgia-Pacific*, 318 F. Supp. at 1120)); *3Com Corp. v. Realtek Semiconductor Corp.*, No. 03-2177, 2008 U.S. Dist. LEXIS 108620, at *12-13 (N.D. Cal. Mar. 24, 2008) (refusing to admit settlement agreement as an example of a licensing agreement probative of the reasonable royalty value).

      The reasoning in these courts has been followed in other cases as well. *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 181 (S.D.N.Y. 1999) (observing "a license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have

negotiated prior to commencement of litigation"), *aff'd without opinion*, 230 F.3d 1379 (Fed. Cir. 2000); *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1134 (W.D. Mich. 1996) ("the Federal Circuit, as well as other courts, has squarely held that in patent infringement litigation such as this the rates paid in the industry as a result of settlement negotiations may not be considered since they do not accurately reflect what a willing licensee would pay a willing licensor in an arm's length negotiation"); *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *10 (noting that "[p]arties enter into settlements for a number of reasons 'other than the value of the improvements patented.' These reasons include not only cost of additional litigation or the relative financial positions of the parties, but also the risk of a sizeable verdict against a defendant" (citation omitted)); *Gen. Elec. Co. v. DR Sys., Inc.*, No. 06-5581, 2007 U.S. Dist. LEXIS 44644, at *6 (E.D.N.Y. June 20, 2007) (noting that "settlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty").

     The SAP and Ariba litigation settlement agreements are not probative of the value of the invention in the patents-in-suit because they reflect settlements based on reasons beyond the value of the technology. *Rude*, 130 U.S. at 164; *Cornely*, 131 U.S. at 161; *Pioneer*, 219 F.R.D. at 144-45. These reasons include not only cost of additional litigation, but other factors as well, such as the parties' respective assessments of their claims, the particular accused technology, the defendant's financial status at the time of settlement, damages derived from the particular accused feature, and the risk of a sizeable verdict against a defendant. *Creative*, slip op. at 3; *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *10. Both SAP and Ariba were settling litigations to avoid additional legal fees, the uncertainty of a final decision, and the risk of treble damages, factors unrelated to the value of the technology.

This SAP and Ariba litigation settlement agreements have little relevance to the hypothetical reasonable royalty situation because they do not accurately reflect what a willing licensor and licensee would actually agree to in an arm's length negotiation. *See Uniloc*, 632 F. Supp. 2d at 159; *Insight*, 2009 U.S. Dist. LEXIS 97183, at *3; *Cornell*, 2008 U.S. Dist. LEXIS 39343, at *12. Among the reasons discussed above, the SAP and Ariba litigation settlement agreements do not reflect what the parties would actually agree to in the absence of risk of willful infringement.

ePlus asserts that it has also charged Lawson with willful infringement. (ePlus Response to MIL 1-3 Br. at 18.) While there is no basis for this allegation, as a matter of law the hypothetical negotiation takes place at the time of first infringement, before there can be any allegation of willful infringement. Thus, contrary to ePlus's suggestion, this is not a "similarity" between the Ariba and SAP litigation settlement agreements and the hypothetical negotiation that would take place in this case. (*Id.*) The *Fromson* case ePlus relies on does not suggest otherwise. (*Id.*) Instead, that case merely stands for the unremarkable proposition that courts can use attorney's fees or treble damages for willfulness to make an infringer whole—not that the hypothetical negotiator is "charged" with the knowledge of a willfulness allegation. *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988).

As discussed in Lawson's opening brief, there are other factors beyond the value of the patented technology and related to litigation that make the Ariba and SAP litigation settlement agreements irrelevant. (*See* Lawson MIL 1 Br. at 2, 9 (listing factors that have nothing to do with the patented technology such as that over 80% of Ariba's products were accused of infringing, that Ariba was facing the closing of its business, that SAP paid ePlus enough to convince ePlus to forego the marking requirement.) As the courts have recognized, the litigation

7

settlement agreements are not relevant to what would constitute a reasonable royalty in this case. *See Creative*, slip op. at 3 (nothing that the defendant's financial status at the time of settlement technology would be a factor in a litigation settlement agreement that would have nothing to do with the value of the patented technology); *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *10 (noting that parties enter into settlements for a number of reasons other than the value of patented technology such as the relative financial positions of the parties).

In addition, as discussed in Lawson's opening brief, there are insufficient facts in evidence to evaluate the actual value of those settlement agreements.  (*See* Lawson MIL 1 Br. at 10-11 (noting factors that are unknown, including the parties' financial situation, the parties' accused products, and the parties' accused revenue).  *Creative*, slip op. at 3 (noting that the defendant's financial information in the previous case was confidential and holding that the royalty paid in the previous case "has minimal, if any, relevance to this litigation" and noting that the particular accused feature would be a factor in a litigation settlement agreement that would have nothing to do with the value of the patented technology).  Even if all the other factors other than the value of the patented technology were removed, the Ariba and SAP litigation settlement agreements would still not be relevant because there is no basis for understanding the value of the patented technology.  For all of these reasons, the Ariba and SAP litigation settlement agreements are irrelevant and should not be admitted in this case.

      B.     <u>Litigation Settlement Agreements are Also Prejudicial and Inadmissible Under Rule 403.</u>

ePlus asserts that the highly probative nature of the Ariba and SAP agreements outweighs any prejudice to Lawson. (ePlus Response to MIL 1-3 Br. at 22.)  This is incorrect.  As discussed above, the Ariba and SAP litigation settlement agreements are irrelevant.  In addition, they are highly prejudicial.

8

District courts have also recognized that litigation settlement agreements have minimal or no probative value and the prejudice and jury confusion substantially outweigh whatever probative value they may have. *See Uniloc USA, Inc.*, 632 F. Supp. 2d at 159 (excluding litigation settlement agreements under Rule 403 because "whatever relevance the evidence could have as to reasonable royalty is substantially outweighed by the unfair prejudice to Microsoft and juror confusion that would likely result from these collateral issues"); *Pioneer Hi-Bred*, 219 F.R.D. at 144-45 (excluding litigation settlement agreements under Rule 403 and noting that parties would be prejudiced by being forced to litigate a "mini-trial" on the "similarities and differences in the facts regarding the 'same' claims against other defendants to determine what, if any, light the [settlement agreement] sheds on the value of the claim against [this defendant]"); *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *10 (excluding litigation settlement agreements under Rule 403 and noting that "admission of these agreements would 'invite a 'mini-trial' on similarities and differences in the facts' between this case and the settled claims. Such a diversion would cause unfair prejudice, confuse the issues, and waste time." (citations omitted)); *Insight Technology*, 2009 U.S. Dist. LEXIS 97183, at *3 (excluding litigation settlement agreement under Rule 403 and noting "any marginal value the Glock settlement terms would have in proving a reasonable royalty is substantially outweighed by the danger of unfair prejudice to Insight and the likelihood of confusing the jury and wasting time. The introduction of the Glock settlement terms would necessitate a lengthy explanation to the jury of the economics of litigation risk, competition, and other considerations that inform a litigation settlement. All of this evidence would be collateral, and therefore confusing and a waste of time." (citation omitted)); *see also Donnelly*, 918 F. Supp. at 1133-34 (W.D. Mich. 1996) (excluding litigation settlement agreements under Rule 408); *Honeywell Int'l, Inc. v. Nikon*

9

*Corp.*, No. 04-1337, 2009 U.S. Dist. LEXIS 17115, at *1-2 (D. Del. Mar. 4, 2009) (same); *Pioneer Corp.*, 2008 U.S. Dist. LEXIS 107079, at *17-18 (same); *Creative*, slip op. at 5-6 (same); *see generally St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Photo Film Co.*, 674 F. Supp. 2d 555, 559 (D. Del. 2009) (denying motion for new trial based on court's exclusion of settlement agreements pursuant to Rule 403 and noting that "St. Clair has not offered any case law supporting the argument that a previous jury verdict may be admitted into evidence to support a patentee's damages claim").

Moreover, the Ariba and SAP litigation settlement agreements should be excluded on the grounds of prejudice, confusion, and waste of time. Admission of litigation settlement agreements unfairly prejudices the defendant. *See, e.g.*, *Uniloc*, 632 F. Supp. 2d at 159. In addition, litigation settlement agreements should be excluded because they can mislead and confuse the jury. *Uniloc*, 632 F. Supp. 2d at 159; *Insight Technology*, 2009 U.S. Dist. LEXIS 97183, at *3; *Creative Internet*, slip op. at 5-6. The Ariba and SAP settlements, totaling $37 million and $17.5 million, are likely to mislead and confuse the jury and unfairly sway the jury far beyond any potential relevance to this case and prejudice Lawson.

Courts have also found that admission of litigation settlement agreements would require a "mini trial" to discuss the similarities and differences between the previous litigation and the case-in-suit. Such a diversion would cause unfair prejudice, confuse the issues, and waste time. *See Pioneer Hi-Bred*, 219 F.R.D. at 144-45; *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *10; *Insight Technology*, 2009 U.S. Dist. LEXIS 97183, at *3. As discussed above, there are many issues that render the Ariba and SAP litigation settlement agreements irrelevant—things that would require a mini-trial were they to be admitted before the jury. For these reasons as well, the Ariba and SAP litigation settlement agreements should not be admitted.

ePlus's proposed instructions—that the parties not be able to introduce evidence that the license agreements were reached after trials or the outcome of those trial (ePlus Response to MIL 1-3 Br. at 23-24)—heightens rather than resolves the issue of prejudice.  The admission of the litigation settlement agreements and the removal of the "mini trial" to discuss the similarities and differences between the previous litigation and the case-in-suit would merely further prejudice Lawson.  The jury would be confused into thinking the settlements are actually arm's length negotiations not tainted by litigation.  Hiding the facts does not remove the taint.  Thus, the admission of the Ariba and SAP litigation settlement agreements would be prejudicial to Lawson and should not be admitted under any circumstances.

        C.       <u>The Cases ePlus Relies on do not Alter these Rules.</u>

The cases ePlus cites do not provide a basis to admit the litigation settlement agreements in this case.  In *Snellman*, the Federal Circuit was reviewing a district court's decision to set aside a jury's damages award.  *Snellman v. Ricoh Co.*, 862 F.2d 283, 289 (Fed. Cir. 1988).  The Federal Circuit noted that "[t]he district court did not explain why it concluded that 'the admission of the IBM-Norfin agreement as a comparable license agreement was probably error'".  *Id.*  The Federal Circuit also explained that "the Norfin-IBM agreement was *not* an attempt to resolve the dispute over infringement or to avoid litigation" and "would become effective only if the appellate litigation ultimately resulted in IBM's liability."  *Id.* at 289 (emphasis added).

The pertinent facts of that case are different than the facts of this case, because the Ariba and SAP litigation settlement agreements resolved the disputes over infringement, ended the litigations, and did not only become effective only "if the appellate litigation ultimately resulted in" liability here.  Unlike the agreement in the *Snellman* case, the Ariba and SAP litigation

11

settlement agreements ensured the continuing litigation ended—avoiding a new trial and appeal in SAP's case, and an appeal and potential new trial in Ariba's case. And had the district court in *Snellman* relied on rules 402 or 403—as the district courts above, many of which have been affirmed on appeal—or otherwise explained its reasons for vacating the jury's damages award, it is possible that the district court's decision would have been affirmed.

In *Studiengesellschaft*, the decision on appeal was a district judge's review of a special master's accounting on damages. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1565 (Fed. Cir. 1988). There was no jury in that case and the question of admissibility under Rule 402, 403, or any other rule was not before the Federal Circuit. *Id.* at 1565, 1570-72. Instead, the only question the Federal Circuit considered was whether the district court correctly gave any weight to a license agreement that was entered into after the Fifth Circuit's final determination that there was infringement. *Id.* at 1570-72. The Federal Circuit rejected the patentee's argument that the royalty rate of the settlement agreement was eroded by litigation because it was not "negotiated 'against a backdrop of continuing litigation' on validity and infringement.'" *Id.* at 1572. Instead, the only "threats" were those the previous accused infringer faced of "an impending accounting and a permanent injunction which would have forced it to shut down its Adams Terminal plant." *Id.* Thus, the Federal Circuit affirmed the district court's decision to consider the license agreement. *Id.* at 1570-72.

The *Studiengesellschaft* case is entirely different from the pertinent facts of this case. Unlike the litigation settlement agreement *Studiengesellschaft*, the Ariba and SAP agreements were entered to end litigation. There was no final decision but-for an accounting. Second, unlike *Studiengesellschaft*, here there is a specific question regarding the issue of admissibility. Third, also unlike *Studiengesellschaft*, this is a jury case, and the court must consider issues of

12

prejudice.

The other cases cited by ePlus also do not support its argument that the litigation settlement agreements should be admitted. In the *Hynix*, there is no suggestion that any party challenged the admissibility of the litigation settlement agreement. *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. 00-20905, 2006 WL 1991760, at *2 (N.D. Cal. July 14, 2006) (mentioning that the litigation settlement agreement was discussed at trial without any suggestion that it was challenged or analysis regarding its admissibility). In the *Tyco* case, the court was merely considering whether settlement negotiations were discoverable—not whether they were admissible at trial in light of challenges based on relevance or prejudice. *See Tyco Healthcare Group LP v. E-Z-Em, Inc.*, No. 07-262, 2010 U.S. Dist. LEXIS 18253, at *7 (E.D. Tex. Mar. 2, 2010) (ordering defendant to produce settlement negotiations).

Indeed, the only two cases cited by ePlus where the court actually admitted litigation settlement agreements over objections regarding their admissibility are *B&H* and *DataTreasury*. In the *B&H* case, the admitted license agreement was entered after the previous court entered final judgment and a permanent injunction. *B&H Mfg., Inc., v. Foster-Forbes Glass Co.*, No. F91-262, 1993 U.S. Dist. LEXIS 21432, at *5 (N.D. Ind. Jan. 6, 1993). And in that case, the accused machines were purchased from the same defendant in the prior litigation that settled after a jury verdict. *Id.* at *2-5. This is different from this case, where a permanent injunction was not entered and the accused machines are not the same.

The *DataTreasury* court stated, without significant analysis, that "In light of *ResQNet*, litigation-related licenses should not be excluded from the March 2010 Phase I trial in the above-captioned case." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 06-72, 2010 U.S. Dist. LEXIS 25291, at *19 (E.D. Tex. Mar. 4, 2010). This decision is inconsistent with Supreme Court case

13

law, Federal Circuit case law, and even other decisions from the same jurisdiction decided since *ResQNet* that have concluded—both before and after the *DataTreasury* case—that the *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation. *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *8-9; *Software Tree*, slip op. at 6-7 (rejecting *DataTreasury*).

Lawson respectfully submits that to the extent *B&H* or *DataTreasury* cases suggest litigation settlement agreements are admissible over objection, they deal with facts very different from those in this case, are not binding on this court, and are against the great weight of precedent as discussed above. Neither of these cases has been relied upon by a district court to allow admission of litigation settlement agreements into evidence at trial.[1]

D. The Litigation Settlement Agreements Should be Excluded Under Rule 408.

Rule 408 provides that evidence of compromise is not admissible to show invalidity of a claim or its amount and applies whether the settlement agreement is between the parties in suit or not. *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir. 1988); *Directv Inc. v. Carrera*, No. 05-2014, 185 Fed. Appx. 266, 2006 U.S. App. LEXIS 14633, at *1-4 (4th Cir. 2006); *see also Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990). Patent litigation settlement agreements are excluded under Rule 408. *See Uniloc*, 632 F. Supp. 2d at 159; *Pioneer Hi-Bred*, 219 F.R.D. at 144-45; *Pioneer Corp.*, 2008 U.S. Dist. LEXIS 107079, at *17-18; *Cornell Univ.*, 2008 U.S. Dist. LEXIS 39343, *10-11; *PharmaStem Therapeutics, Inc. v. Viacell, Inc. et. al.*,

---

[1] In the *Sunstar* case, a Magistrate relied on *B&H* in support of its decision allowing a litigation settlement agreement in at trial. *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01-736, 2004 U.S. Dist. LEXIS 16855, at *95-97 (N.D. Ill. Aug. 20, 2004). That decision was overruled by the district court, which excluded the agreement from trial and explained that "[t]he general rule, as Sunstar notes, is that license fees negotiated under the threat of litigation are not probative of a reasonable royalty because such fees 'may be strongly influenced by a desire to avoid full litigation.'" *Sunstar, Inc. v. Alberto-Culver Co.*, Nos. 01-736, 01-5825, 2005 U.S. Dist. LEXIS

No. 02-148, 2003 U.S. Dist. LEXIS 27869, at *6, 10 (D. Del. Oct. 7, 2003); *Creative Internet*, slip op. at 5-6; *see also Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1338-41 (N.D. Iowa 1995); *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651-52 (N.D. Ill. 1994).

Rule 408 is yet another reason why the litigation settlement agreements should not be admitted in this case, although the rationale is generally similar to that used under Rules 402 and 403. Lawson's motion in limine requests that the settlement agreements be excluded, and Lawson relies on cases that use Rule 408 as the basis for excluding settlement agreements. (*See* Lawson MIL 1 Br. at 5 (relying on *Hanson*, 718 F.2d at 1078-79 (Fed. Cir. 1983) (excluding litigation settlement agreements under Rule 408)); *id.* at 12 (relying on *Uniloc*, 632 F. Supp. 2d at 159 (excluding litigation settlement agreements under Rule 403 and 408)).) Thus, Rule 408 merely provides another basis consistent with Lawson's motion *in limine* for this Court to exclude the litigation license agreements in this case.

### E. The Timing of the Ariba and SAP Litigation Settlement Agreements Likewise Makes them Irrelevant to this Case.

The timing of the litigation settlement agreements may make them irrelevant to the hypothetical negotiation in this case. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276-77 (Fed. Cir. 1999). While consideration of some evidence that arose after the date of first infringement and thus the date of the hypothetical negotiation may be appropriate, it is incorrect to invoke the doctrine to allow the litigation settlement agreements to be considered in this case. In the *Sinclair* case, the Supreme Court explained that "To correct uncertain prophecies in such circumstances is not to charge the offender with elements of value non-existent at the time of his offense." *Sinclair Ref. Co. v. Jenkins Petroleum Co.*, 289 U.S. 689, 698-99 (1933); *see also*

---

23098, at *19-23 (N.D. Ill. Sept. 19, 2005) (citation omitted).

15

*Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988). This "book of wisdom" doctrine is used to "*bring out and expose to light the elements of value that were there from the beginning.*" *Sinclair*, 289 U.S. at 698-99 (emphasis added). The fact that Ariba and SAP would have been sued years later, that Ariba would have been found guilty of willful infringement, and that the parties would both enter into litigation settlement agreements to end the suits is not the kind of information that would have been foreseeable under the "book of wisdom." Indeed, Lawson has been unable to locate any case where the "book of wisdom" doctrine was used to admit or rely upon later-entered litigation settlement agreements.

    F.    <u>ePlus Does Not Appear to Dispute that it Should Not Be Permitted to Discuss the Previous Litigations or that the SciQuest, Perfect Commerce, and Verian Litigation Settlement Agreements should not be Admitted.</u>

In Lawson's motion in limine No. 1, it requested that ePlus not be permitted to discuss the settlements with the co-defendants in this case either. (*E.g.* Lawson MIL 1 Br. at 6.) ePlus does not appear to oppose this portion of ePlus's motion in limine (other than the specific arguments relating to the settlement agreements, as discussed above), as it has not responded to it. In Lawson's motion in limine No. 1, it also requested that ePlus not be permitted to introduce the SciQuest, Perfect Commerce, and Verian litigation settlement agreements for the same reasons the Ariba and SAP litigation settlement agreements should be excluded. ePlus does not appear to oppose this portion of ePlus's motion in limine, as it has not responded to it.

II.    CONCLUSION

For the foregoing reasons, Lawson respectfully requests this Court to grant its motion in limine and exclude arguments or evidence of previous litigation and settlement agreements.

LAWSON SOFTWARE, INC.

By /s/
   Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 12th day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

    /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*