# EXHIBIT 1


Case 3:09-cv-00620-REP   Document 329-1   Filed 07/12/10   Page 2 of 10 PageID# 7987

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **SOFTWARE TREE, LLC** | § | |
| | § | |
| v. | § | NO. 6:09-CV-097 |
| | § | |
| **RED HAT, INC., et al.** | § | |

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Red Hat, Inc.'s ("Defendant") motion to compel production of documents regarding its negotiations with licensees relating to the patent-in-suit (Doc. No. 182). The matter is fully briefed (Doc. Nos. 182, 195, 204, 216). Having considered the parties' submissions, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion.

### BACKGROUND

Plaintiff Software Tree, LLC ("Plaintiff") has licensed U.S. Patent No. 6,136,776 ("the '776 Patent" or "the patent-in-suit") to six entities. Plaintiff entered into two of these licenses, with IBM Corp. ("IBM") and Kyrsagih Bros. LLC ("Kyrsagih Bros."), without filing suit.[1] The four other licenses were entered into within the context of litigation. Plaintiff's license with Oracle Corp. ("Oracle") was entered into as part of a settlement agreement disposing of an earlier-filed action, *Software Tree, LLC v. Oracle Corp.*, No. 6:08-cv-126 (E.D. Tex.). Plaintiff's licenses with Hewlett-Packard Company ("HP"), Dell Inc. ("Dell"), and Genuitec, LLC ("Genuitec") were entered into as part of settlement agreements disposing of allegations in the present case. HP, Dell, and Genuitec were co-defendants of Defendant, but each has been dismissed from this case a result of those

---

[1] The parties dispute whether the IBM and Kyrsagih Bros. licenses was entered into under the threat of litigation. *Compare* PL.'S RESP. at 9-10 (stating all licenses were "entered into either to resolve pending or potential litigation") *with* DEF.'S REPLY at 4 n.6 (disagreeing that all of the licenses are litigation licenses).

1

settlement agreements.  Plaintiff has produced copies of each license agreement[2] but withheld documents reflecting the negotiations underlying those agreements.

## PARTIES' CONTENTIONS

Defendant acknowledges the Eastern District of Texas has historically followed a bright-line rule protecting settlement negotiations from discovery.  DEF.'S MOT. at 6 (citing *Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, No. 2:07-cv-262, 2010 WL 774848, at *2 (E.D. Tex. Mar. 2, 2010) (Ward, J.)).  Defendant argues, however, that this rule has been abrogated by the Federal Circuit's recent opinion in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010).  *Id.* at 7 (citing *Tyco*, 2010 WL 774848, at *2; *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010) (Folsom, C.J.)).  Defendant contends it is now "clear" that documents relating to the negotiation of settlements and litigation licenses are discoverable.  *Id.*  Based upon *ResQNet* and *Tyco*, Defendant argues the Court should compel Plaintiff to produce documents reflecting the negotiations of each of the license agreements it has entered into.  *Id.* at 7-9.

Defendant argues the recent decisions in this district are not alone.  DEF.'S REPLY at 2 (citing *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 583 (N.D. Cal. 2008); *Trs. of Leland Stanford Junior Univ. v. Tyco Int'l*, 253 F.R.D. 521, 523 (C.D. Cal 2008); *In re Subpoena Issued to Commodity Futures Trading Comm's*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005) (herein "*CFTC*").  Defendant relies primary on *Phoenix Solutions*, where defendant Wells Fargo sought discovery of negotiations between the plaintiff and a defendant in a related action.  *Phoenix Solutions*, 254 F.R.D. at 581.  The court held "the third-party negotiations could help Wells Fargo ascertain the extent of its liability to Phoenix and to formulate an appropriate litigation strategy."

---

[2]  Plaintiff has produced only a portion of the Oracle agreement as discussed *infra*.

*Id.* at 582. Defendant argues the requested production is relevant for the reasons identified by the *Phoenix Solutions* court and asks this Court to likewise order production. DEF.'S REPLY at 3-4.

Plaintiff distinguishes *ResQNet*, noting it did not address the admissibility or discoverability of litigation-related licenses. PL.'S RESP. at 7-8, 10. Plaintiff also distinguishes *Tyco*, noting that decision permitted discovery of negotiations underlying a settlement with a party from a *previous* case. *Id.* at 8-9 That is, the licensee was not a former party to that case. *Id.* Plaintiff, extensively quoting *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), argues the need to keep settlement negotiations confidential weighs heavily against compelling production. *Id.* at 10-11. Moreover, Plaintiff contends granting this motion would set a "dangerous precedent" that will chill settlement and "run counter to this 'nation's strong judicial and public policies favoring out of court settlement.'" *Id.* at 13 (quoting *Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993)). Finally, Plaintiff argues the Court's recent decision in *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 1727916, at *3 (E.D. Tex. Apr. 28, 2010), undermines Defendant's reliance on *ResQNet*. PL.'S SUR-REPLY at 2.

## DISCUSSION

In 2003, the Sixth Circuit considered "whether statements made in furtherance of settlement are privileged and protected from third-party discovery." *Goodyear*, 332 F.3d at 977. The court answered the question affirmatively, finding "a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Id.* at 980. The court continued:

> The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used

3

>   on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative *quid pro quos*, and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*Id.* The court also considered the interplay of Rule 408 of the Federal Rules of Evidence, which generally bars admission of settlement agreements. *Id.* at 981. The court found "[t]he fact that Rule 408 provides for exceptions to inadmissibility does not disprove the concept of settlement privilege. . . . [T]he exceptions have been used only to admit the occurrence of settlement talks or the settlement agreement itself for 'another purpose.'" *Id.* That is, Rule 408 states the existence of the talks or the agreement may be admissible, but the content of the talks or agreement are not. *Id.* at 981-82. Finally, the court favorably quoted the advisory committee note to Rule 408, which states one of the grounds for excluding settlement agreements is "[t]he evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."[3] *Id.* at 983. The Sixth Circuit concluded: "[i]n sum, any communications made in furtherance of settlement are privileged." *Id.*

On at least three instances, this district has accepted the *Goodyear* rationale and protected settlement negotiations from discovery. In *Intergraph Hardware Techs. Co. v. Dell Computer Corp.*, No. 2:02-cv-312, slip op. (E.D. Tex. June 3, 2004), the court found settlement negotiations "are privileged as a matter of federal common law, as set forth by the court in [*Goodyear*]. In addition, HP has failed to show that the settlement negotiations and statements made during the course of

---

[3] The advisory committee note continues: "a more impressive ground is promotion of the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408 advisory committee's note ¶ 1.

those negotiations would be particularly relevant to any of the claims or defenses in this case." *Id.* at 1.  In *Soverain Software LLC v. Amazon.com, Inc.*, No 6:04-cv-014, slip op. (E.D. Tex. Feb. 7, 2005), where a remaining defendant was seeking discovery of a former co-defendant's settlement agreement and the underlying negotiations, this Court echoed *Goodyear*'s sentiments, finding "[i]f meditation and settlement negotiations are not kept confidential from other parties to the litigation, parties will be less forthright in their negotiations and less likely to resolve their differences without the need for a trial." *Id.* at 2.  Finally, in *Tessera, Inc. v. Micron Tech., Inc.*, No. 2:05-cv-094, slip op. (E.D. Tex. Apr. 13, 2006), this Court, again applying *Goodyear*, found negotiations that did not result in a license agreement outside of litigation were discoverable but negotiations conducted within the context of litigation were not. *Id.* at 3.  Thus, as noted in *Tyco*, this district "has in the past followed *Goodyear* generally and adopted a bright-line rule that settlement negotiations are privileged while the resulting license agreement is discoverable." 2010 WL 774878, at *2.

The Federal Circuit's decision in *ResQNet* has called this "bright-line rule" into considerable question.  *See Tyco*, 2010 WL 774878, at *2 (stating the decision "cause[d] the Court to shift its approach toward the discoverability of settlement negotiations" and holding "[t]he *Goodyear* privilege does not apply in light of the Federal Circuit's ruling in *ResQNet*"); *see also DataTreasury* 2010 WL 903259, at *2 (finding "[i]n light of *ResQNet*, litigation-related licenses should not be excluded from" the trial and permitting discovery of the underlying negotiations).  Recently, however, this Court distinguished *ResQNet* and held it "has not altered the admissibility of agreements entered into under the threat of litigation." *Fenner*, 2010 WL 1727916, at *3.  After chronicling the century-old tradition of trial and appellate court decisions excluding settlement license agreements, this Court noted admissibility of litigation-related agreements was not before

5

the *ResQNet* panel. *Id.* at *1-3. The Court found "the potential for prejudice and jury confusion substantially outweigh[ed] any probative value" and excluded the agreements. *Id.* at *3. The same rationale supports finding *ResQNet* did not alter the law regarding discoverability.

As Defendant notes, some district courts have found settlement negotiations properly discoverable. In *CFTC*, the District Court for the District of Columbia declined to recognize the settlement privilege recognized by *Goodyear*.[4] 370 F. Supp. 2d at 207. Although the court acknowledged some courts had recognized the privilege, it found no broad consensus in support of it and declined to adopt it. *Id.* at 209-213. In *Stanford*, the Central District of California cited *CFTC* favorably and held "there is no federal privilege preventing the discovery of settlement agreements." 253 F.R.D. at 623. Likewise, in *Phoenix Solutions*, the Northern District of California distinguished *Goodyear* on the basis that in *Goodyear* "the parties held a legitimate and explicit expectation that the settlement agreement documents would remain confidential." 254 F.R.D. at 583. On the other hand, other district courts have recognized the settlement privilege as articulated in *Goodyear* and the Federal Circuit has found protecting settlement negotiations from discovery is not an abuse of discretion. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001) (holding "[i]n light of Medtronic's failure to show the materiality of the settlement agreement and, hence, the relevance of the evidence it would be seeking in discovery, we discern no abuse of discretion").

Consistent with the holding in *Fenner*, 2010 WL 1727916 at *3, the Court finds *ResQNet* has not upset this district's case law regarding discoverability of settlement negotiations. "In *ResQNet*,

---

[4] On appeal, the Court of Appeals for the District of Columbia affirmed the order to compel production based on alternative grounds and "therefore [did] not reach the merits of the district court's ruling that no federal settlement privilege exists under Fed. R. Evidence 501. That question remains open in this circuit." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comms'n*, 439 F.3d 740, 754-55 (D.C. Cir. 2006).

the litigation-related licenses were part of the record and their admissibility was not before the court." *Id.* (citing *ResQNet*, 594 F.3d at 872). Likewise, the discoverability of negotiations underlying those licenses was not before the court. The Court declines to upset its traditional approach to this issue absent clear precedent compelling a new tack. Continuing to exclude underlying negotiations is consistent with this Court's past decisions in *Soverain* and *Tessera* and is most appropriate given the chilling effect such discovery would have on settlements. While the Court recognizes internal settlement strategy may be protected by attorney-client privilege or work-product immunity, the possibility of some negotiation materials being discovered could hamper negotiation efforts and interfere with settlement discussions. Accordingly, continuing to recognize the common law settlement privilege is the most prudent course.

As set forth in *Tessera*, this Court recognizes a settlement privilege that applies to negotiations underlying licensing agreements arising out of litigation. The Court permits discovery of negotiations pertaining to agreements and licenses entered into outside the context of litigation, but not of negotiations pertaining to agreements that settle law suits. This is particularly justified here, where the three of the four settlement agreements are between Plaintiff and former defendants in this case. Moreover, Defendant has not persuasively shown that such negotiations are particularly relevant. Litigation licenses, and the negotiations underlying them, are not probative of the fair value of a patent, but rather are probative of the value of settling a particular case. Likewise, Plaintiff's infringement and damages theories, and relevant prior art, are readily accessible by way of other discovery sources. Accordingly, Defendant is not entitled to discovery of the negotiations pertaining to Oracle, HP, Dell, and Genuitec. The parties dispute whether the IBM and Kyrsagih Bros. licenses agreements were entered into within the context of litigation. Plaintiff contends the possibility of

7

litigation against IBM was discussed prior to entering the agreement. Defendant argues those agreements do not reference litigation or the threat of litigation. Absent a stronger showing that the licenses were entered into within the context of litigation, the Court finds the IBM and Kyrsagih Bros. agreements are not subject to the settlement privilege because they were entered into before any litigation was commenced. Accordingly, Defendant is entitled to discovery of the negotiations pertaining to those agreements.

Finally, the parties dispute to what extent Plaintiff should produce the Oracle agreement. The Oracle agreement resolved litigation filed by Plaintiff, two other related entities, and a parent entity. The agreement consists of a master settlement agreement and four exhibits setting forth the terms between Oracle and each of the other entities. Plaintiff has produced the master agreement and the exhibit setting forth the terms between it and Oracle, but has not produced the other exhibits. Defendant argues it is entitled to a complete copy of the agreement to discover if the settlement sum was apportioned. Def.'s Mot. at 5-6; Def.'s Reply at 1-2. Plaintiff argues the redacted exhibits are irrelevant because they relate to different entities, different patents, and different technologies. Pl.'s Resp. at 5-6. Where an agreement incorporates multiple parts, each part is relevant and necessary for a full understanding of that agreement. Accordingly, the Court finds Defendant is entitled to a complete copy of the agreement.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion. The Court **ORDERS** Plaintiff to produce exhibits A, B, and D to the Oracle agreement and documents relating to the negotiation of the agreements with IBM and Kyrsagih Bros. by June 28, 2010.

**So ORDERED and SIGNED this 24th day of June, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE