IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT
OF MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OF PUBLICATIONS
RELATED TO EPLUS'S PATENT-ENFORCEMENT EFFORTS, LITIGATION, AND
SETTLEMENT AGREEMENTS**

The publications Lawson requests the Court to exclude are substantively shallow, and
ePlus has not—and cannot—present any evidence that any individuals at Lawson ever saw any
of them.  The evidence is affirmatively to the contrary.  Despite ePlus's efforts to recast the law,
it remains clear that the Federal Circuit, in its en banc decision in *in re Seagate, LLC*, 497 F.3d
1360 (Fed. Cir. 2007), heightened the showing required for a finding of willful infringement.
Actual, not constructive, knowledge of the patents-in-suit remains necessary to support findings
of either willful infringement or an intent to induce infringement.  Thus, evidence that does
nothing more than suggest constructive knowledge, as a matter of law, is irrelevant to ePlus's
claims of willful infringement and inducement of infringement.  The Court should exclude these
publications and any testimony or argument related to them.

## I.   CONTRARY TO EPLUS'S ASSERTIONS, ACTUAL KNOWLEDGE OF A RISK OF INFRINGING THE EPLUS PATENTS IS NECESSARY TO PROVIDE INTENT.

Even before the Federal Circuit's decision in *Seagate*, the law was clear in requiring *actual* notice of the patents-in-suit to support a finding of willful infringement.  *Imonex Servs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005), *abrogated by Seagate*, 497 F.3d 1360 ("Actual notice of another's patent rights triggers an affirmative duty of due care.  Constructive notice, as by marking a product with a patent number, is insufficient to trigger this duty."  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990), *abrogated by Seagate*, 497 F.3d 1360 ("[A] party cannot be found to have 'willfully' infringed a patent of which it has no knowledge.")  There is no question that *Seagate* heightened the showing required of a patent holder to support a finding of willful infringement.  *Seagate*, 497 F.3d at 1371 (contrasting the pre-*Seagate* standard, which was akin to negligence, with the new standard articulated in *Seagate*, which requires a showing of "objective recklessness").  ePlus's suggestion that something less than actual knowledge is sufficient for a finding of willful infringement is contrary to *Seagate.*.

ePlus cites *SEB S. A. v. Montgomery Ward & Co.,* 594 F.3d 1360 (Fed. Cir. 2010) to support its claim that actual knowledge is not required to prove willfulness.  However, there the willfulness finding rested on deliberate indifference, a form of actual knowledge.  "At the outset, this Court notes that the Supreme Court has indicated in a different civil context that 'deliberate indifference' is not necessarily a 'should have known' standard."  *Id.* at 1376 (citation omitted).  *SEB* thus holds that actual knowledge is required, rejects the "should have known" standard, and states that "deliberate indifference to a known risk is sufficient because "it is a ***form of actual knowledge*.**  *Id.* (emphasis added).  In *SEB,* the accused infringer bought the patented product.

It copied virtually every feature of the patented product.  It sought clearance of the product from a patent attorney, but did not tell the attorney that it copied the competitor product.  The Court found this evidence to support deliberate indifference, i.e. actual knowledge.  Moreover, the accused infringer did not even argue that its employees were unaware of the patent at issue.  *Id.* at 1378.  In all relevant respects, *SEB* is different from the facts here, which involve no copying, no review of products of product markings, and affirmative denials of knowledge.

ePlus mischaracterizes the court's opinion in *Telecomm'n Sys., Inc. v. Mobile 365*, No. 3:06CV485, 2007 U.S. Dist. LEXIS 99156 (E.D. Va. Sept. 25, 2008).  In its brief, ePlus claims that the court "den[ied] [the] accused infringer's motion for JMOL on willfulness and actual notice of the patent-in-suit since the jury could infer from circumstantial evidence whether accused infringer had actual notice of the patent."  *See* ePlus Opposition to Lawson's Mot. in Limine No. 6 [Doc. No. 297] ("ePlus MIL 6 Opp.") at 7.  That was not the basis of the court's denial of the defendant's motion for judgment as a matter of law on the issue of willfulness in that case.  Instead, the court's denial was based on the fact that the plaintiff had <u>waived its claim</u> for willful infringement in view of *Seagate.  Telecomm'n Sys.*, 2007 U.S. Dist. LEXIS at *27-28. The court never reached the merits of a willfulness argument.  The court's discussion of whether "actual notice" of the patent-in-suit was required was in the context of whether pre-suit damages were recoverable, <u>not</u> willfulness.  *Id.* at *24.

ePlus also mischaracterizes the court's opinion in *QPSX Devs. 5 PTY Ltd. v. Nortel Networks, Inc.*, No. 2:05-CV-268, 2008 U.S. Dist. LEXIS 21076 (E.D. Tex. Mar. 18, 2005).  The court in *QPSX* did not "reject[] [the defendant's] argument that 'insufficient evidence exists of [the defendant's] actual knowledge of the [patent-in-suit]."  (ePlus MIL 6 Opp. at 8).  Instead, the court acknowledged that the jury applied the wrong standard post-*Seagate*, but that the

defendant had waived its objection to the improper instruction and could not subsequently argue that the jury had applied the wrong standard. *QPSX*, 2008 U.S. Dist. LEXIS 21076 at \*4-5. Thus, the court did not address the question of whether *Seagate* requires actual notice of a patent-in-suit to support a finding of willfulness.

Though the court in *Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 689 F. Supp. 2d 929, 944 (S.D. Ohio 2010), found that actual knowledge of the patents-in-suit is not required to support a finding of willful infringement, its conclusion is highly dubious. The court in *Ethicon* acknowledged that the pre-*Seagate* standard required actual knowledge. *Id.* at 944. Despite this, and despite the fact that the Federal Circuit in *Seagate* clearly intended to require a heightened evidentiary hurdle for a finding of willful infringement, the court somehow concluded that a less-supported showing of knowledge was required by *Seagate*. This, clearly, is not good law and this Court is not obliged to follow it.

In *Kba-Giori, N. Am, Inc. v. Muhlbauer, Inc.*, No. 2:08cv34, 2009 U.S. Dist. LEXIS 125259 (E.D. Va. Nov. 2, 2009), the court denied without prejudice the defendant's motion *in limine* that sought to exclude all evidence related to the plaintiff's willfulness claim. *Id.* at \*4-5. The court merely noted that <u>it</u> needed to hear all the evidence on the issue and that it was <u>inclined</u> to admit the evidence and instruct the jury that it may infer actual knowledge. *Id.* Apparently, the defendant had produced some eleventh-hour documents suggesting knowledge of the patent-in-suit, a fact not present in this case. *Id.* The decision does not support the proposition ePlus suggests.

Pre-*Seagate* law clearly required actual notice of the patents-in-suit to support a finding of willful infringement. *Seagate* clearly heightened, rather than lowered, the standard necessary to support a finding of willful infringement. ePlus must still demonstrate that Lawson had actual

knowledge of the patents-in-suit to support a claim of willful infringement.  The publications

Lawson seeks to exclude do not demonstrate such knowledge.

As is the case with willful infringement, a finding that Lawson intended to induce

infringement of the patents-in-suit requires evidence that Lawson had actual notice of the patents

in suit.  *DSU Med. Corp. v. JMS Co. Ltd,* 471 F.3d 1293, 1305 (Fed. Cir. 2006) (specific intent

required to induce infringement).  Though actual knowledge can be inferred from circumstantial

evidence, the publications themselves are such speculative evidence regarding actual knowledge

(due to the lack of evidence that anyone at Lawson saw them) that they have essentially no

probative value.

## II.     THE EVIDENCE PROFFERED IS NOT RELEVANT TO WILLFULNESS OR INTENT AND PREJUDICIAL.

ePlus's opposition includes no evidence that Lawson saw any of the articles.  Moreover,

its effort to create the inference that Lawson saw any of them is woefully insufficient.  ePlus

selectively quotes from the documents, but the documents as a whole reveal that even if Lawson

had seen them, they do not give Lawson notice of a risk of infringing ePlus patents.

ePlus seems to rely most heavily on a February 17, 2005 article from *Gartner Research.*

Lawson's Mem. in Support of Mot. in Limine No. 6 [Doc. No. 267] ("Lawson Mem."), Ex. 1.

Here is what the relevant part of this report says:

> **Recommendations for ISVs:**
> - Ensure that your own innovations are properly patented.
> - Undertake an extensive review of your software's functions against patents known to be in dispute.
> - Set up a contingency fund to handle legal costs in case you are sued.

This article recommends review of patents "*known to be in dispute.*"  At the time, ePlus's patents

were not known to be in dispute.  The report, discussing litigation between parties other than

Lawson, does not even identify the patents-in-suit by their patent numbers and describes the

5

technology claimed in the patents very cursorily as "involving electronic procurement systems." Had Lawson seen the report, it would have provided no awareness of an infringement issue specific to ePlus.

ePlus provides no evidence that anyone at Lawson ever read the article. Though ePlus touts that Lawson subscribes to *Gartner Research*, ePlus ignores the fact that *Gartner Research* is a download-based database of articles akin to Westlaw or Lexis.[1] *See* Ex. 1 hereto (Declaration of Angela Barbato Gondek at ¶ 3.) Lawson's records indicate that no one at Lawson has ever downloaded the *Gartner Research* article at issue. (*Id.* at ¶ 5.)

ePlus proffers absolutely no evidence that Lawson even subscribes to the other trade publications on which it relies, let alone any proof that Lawson saw the publication or the cited article in it. ePlus provides no authentication of the documents or proof of when they may have been available, apparently obtaining them after bringing suit off the Internet. In any event, those unseen articles, had they been seen, would have told Lawson nothing about a risk of infringing the ePlus patents either:

1. An article with a download date of 10/16/2009 claiming to be a February 14, 2005 article from *eWeek* (Lawson Mem., Ex. 2.) does not identify the patents-in-suit by their patent numbers and describes the technology claimed in the patents very cursorily as "electronic procurement technology."

2. An article with a download date of 10/16/2009 claiming to be a February 5, 2005 article from the *New York Times*. (Lawson Mem., Ex. 3.) is under 300 words, a single paragraph, and does not identify the patents-in-suit by their patent numbers. ePlus produced it in a web-based form, and does not even provide a copy of the paper itself from that day to show it was published other than on the Internet. The document provided does not indicate any page or section in which the article appeared, indicating it did not appear in the paper at all.

---

[1] Thus, arguing that someone at Lawson read this specific article is akin to arguing that someone at a law firm with a Westlaw subscription must have read any random unpublished case because it appears on Westlaw.

3.      An article with a download date of 10/16/2009 claiming to be a July 8, 2008 posting on the *Cygnus Supply & Demand Chain Executive* web site references the Ariba settlement, entered over three years before this posting. (ePlus Opp., Ex. 31.)  This posting does not identify the patents-in-suit by their patent numbers.  Its tag line reads "*Customers and partners will be unaffected by claims, Ariba says in announcing $37 million settlement.*"

4.      Another article with a download date of 10/16/2009 claiming to be a September 9, 2005 article from *InfoWorld*.  (Lawson Mem., Ex. 5.)  The article announces a lawsuit, and SAP's denial.  The article identifies the patents-in-suit by patent number but simply describes the claimed technology as "e-commerce-related technologies."

5.      An article with a download date of 10/16/2009 claiming to be a September 8, 2005 article from *Computer World Networking & Internet*.  (Lawson Mem., Ex. 6)  This article is identical to the *InfoWorld* article.

6.      A webpage purportedly from smartmoney.com with an unknown download date, dated 2/14/2005, which includes no patent numbers and announces the Ariba settlement.  (ePlus Opp., Ex. 32.)

ePlus also asserts  Lawson competes with ePlus as indicative of actual knowledge of a risk of infringing the ePlus patents.  The specific instances of purported competition all occurred in 2008 or 2009, except one in late 2006.  *See* Exh. 2 hereto (Deposition of Kenneth Farber (12/17/09) at 207-209).  This competition all occurred after the cited documents were purportedly published.  During this time frame, ePlus admits it had about one hundred competitors.  *Id*. at 92.  Thus, purported competition does nothing to evidence knowledge of a risk of infringement.  The documents are simply not relevant to issues of either willfulness or intent to induce infringement and should be excluded.

Because the case law requires that ePlus demonstrate actual knowledge of the patents-in-suit, the Court should exclude the publications listed above.  The probative value of the publications is minimal for all the reasons discussed above.  The danger of unfair prejudice to Lawson should the publications be admitted into evidence, moreover, is substantial.  The jury might infer that the mere existence of the publications is sufficient to support a conclusion that

Lawson had actual notice of the patents-in-suit, and hold Lawson's legitimate denials unfairly against Lawson.  In view of the inadequate disclosure of the articles, the lack of foundation for their availability at the relevant time, the lack of evidence that anyone at Lawson saw the contested publications, the lack of proof that Lawson saw an ePlus product, and Lawson's affirmative representations that it was unaware of the ePlus patents until it was sued, such a conclusion would be entirely unsupported.

Moreover, the contested publications suffer from a serious time-related defect.  None of them was published before 2005, nearly three years after the alleged initiation of Lawson's alleged infringement.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 178 (D.R.I. 2009) (subjective intent cannot be inferred from events happening after accused infringer developed accused product).  Additionally, Lawson had already been selling the accused systems for nearly three years when ePlus began enforcing the patents-in-suit.  Even if Lawson had read the publications at the time they were published, it could have reasonably inferred from the fact that ePlus was vigorously enforcing the patents-in-suit but was not doing so against Lawson to mean that ePlus did not believe Lawson was infringing.

The articles are highly speculative evidence that will improperly suggest to the jury that Lawson *should* have known about the patents-in-suit.  That is not the legal standard.  The legal standard, as articulated by *Seagate* is that Lawson actually knew of the patents-in-suit.  The mere existence of these publications does not demonstrate that.  The court should exclude them from evidence.

III.    CONCLUSION

For the reasons articulated in its opening memorandum and discussed above, Lawson respectfully requests that the Court exclude the publications listed above from evidence and

preclude ePlus from advancing any argument or testimony relating to the Publications.

LAWSON SOFTWARE, INC.


By____/s/_____
                    Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

9

## CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Craig T. Merritt | James D. Clements |
| Henry I. Willett, III | Goodwin Procter, LLP |
| **CHRISTIAN & BARTON, LLP** | Exchange Place |
| 909 East Main Street, Suite 1200 | 53 State Street |
| Richmond, Virginia 23219-3095 | Boston, MA 02109-2881 |
| cmerritt@cblaw.com | jclements@goodwinprocter.com |
| hwillett@cblaw.com | |

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

          /s/          
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

10