IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 7 TO EXCLUDE ARGUMENTS OR EVIDENCE INCONSISTENT WITH FINDINGS IN THE REEXAMINATIONS OF THE PATENTS-IN-SUIT[1]

ePlus wants it both ways. It wants the jury to defer to the expertise of the U.S. Patent and Trademark Office ("PTO") in initially granting its patents. But when it does not like the PTO's decisions, it wants to make contradictory arguments without the jury getting the benefit of that same PTO expertise. Rather, the Court should prevent ePlus from arguing that the PTO considered U.S. Patent No. 5,712,989 ("the '989 patent") during the initial prosecutions of the patents-in-suit when the PTO has stated during the reexaminations (emphasis added) that "the Johnson '989 patent does *not* appear to have been considered by the examiner in the prosecution." Similarly, ePlus should be prevented from arguing that the '989 patent is not prior art when it clearly is, as affirmed by the PTO with a clear explanation of the relevant law and how it applies. ePlus should also be precluded from arguing that there is no substantial question of patentability (a question different than a final determination of patentability) regarding the

---

[1] In its opposition, ePlus altered the title of Lawson's motion to distort the relief Lawson is seeking.

patents-in-suit. Each of these requests is not intended to bind the Court to the reexamination determinations, as ePlus seems to assume, but rather to prevent ePlus from misleading and confusing the jury.

I.  **The PTO's Determinations that a "Substantial New Question of Patentability" Exists Are Final, Highly Relevant, and Distinct from Its Invalidity Rejections**

In its first argument in opposition to the motion, ePlus discusses that the reexaminations have not *finally* decided invalidity (yet). That argument completely misses the point of Lawson's motion. The issue is that the PTO *has* finally determined that the '989 Patent and other prior art were not previously considered by the PTO when originally granting the patents in suit, and raise a "substantial new question of patentability" regarding those patents. That specific, final finding is highly relevant to the willfulness and specific intent issues in this case, which are separate issues from validity. Indeed, the words of the PTO closely parallel the new *Seagate* willfulness standard. Thus, whether or not the PTO has finally adjudicated validity does not address the high relevance and lack of prejudice or confusion in allowing ePlus to make contradictory assertions.

In its second argument, ePlus argues that the PTO applies different claim construction standards than does a court. *See* ePlus's Opp. to Lawson's Motion in Limine No. 7 [Doc. No. 298] ("ePlus MIL 7 Opp.") at 6. However, ePlus points to no *specific* claim construction applied by the PTO that is broader than the Court's Markman Order. Indeed, ePlus has actually argued *narrower* constructions at the PTO than it proffered in this case's Markman process. For example, to the PTO, ePlus attempted to distinguish prior art by arguing that "converting" in the patents-in-suit must be done automatically. *See* Appeal Brief, *In re: Re-Examination of U.S. Patent 6,023,683* at 100-01 (Exh. 1 hereto) ("The specification makes clear that the 'converting data' step is performed automatically by the electronic sourcing system."). Yet ePlus's expert

2

here argues that converting may be done manually under the claims. *See* Expert Report of Alfred Weaver Relating to Patent Validity at ¶ 132 (Exh. 2 hereto)  Thus, ePlus only pays lip service to this distinction, and it is not shown to have any particular application here.  The other evidentiary issues ePlus raises relate to the PTO's claim rejections, but have no bearing on its findings of a substantial new question of patentability.

ePlus cited section 2242(I) of the Manual of Patent Examining Procedure ("MPEP") to argue that a granting a reexamination request based on finding of a "substantial new question of patentability" is not final.  *See* Manual of Patent Examining Procedure § 2242 (Exh. 3 hereto).  ePlus provided the following quote which reads as though ePlus's position that the finding is non-final was adopted by the PTO:

> "whether a 'substantial new question of patentability exists . . . is final, i.e. not subject to appeal on the merits of the decision . . . a decision to grant a reexamination request *is not a final agency decision and is not ordinarily subject to judicial review."*

(ePlus MIL 7 Opp. at 9.)(emphasis in original)  In fact, this cropped quote is a total distortion of the PTO's position.  The full quote shows that the PTO considers the decision final, based on a Federal Circuit decision, and was only noting the opposite position as a "but see" cite to a district court case (words cropped by ePlus bolded):

> The answer to the question of whether a "substantial new question of patentability" exists**, and therefore whether reexamination may be had, is decided by the Director of the USPTO, and, as 35 U.S.C. 303 provides, that determination** is final, i.e., not subject to appeal on the merits of the decision.  **See** *In re Etter***, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985). But see** *Heinl v. Godici***, 143 F.Supp.2d 593, 596-98 (E.D.Va. 2001) (35 U.S.C. 303 addresses only USPTO decisions to** <u>deny</u> **a request for reexamination and does not bar review of** *ultra vires* **USPTO decisions to** <u>grant</u> **reexamination requests. However,** a decision to grant a reexamination request is not a final agency decision and is not ordinarily subject to judicial review.).

MPEP 2242(I).  In the cited *In re Etter* decision, the Federal Circuit said, "determination of whether a "substantial new question of patentability" exists, and therefore whether reexamination

3

may be had, is discretionary with the Commissioner, and, as § 303 provides, that determination is final, i.e., not subject to appeal." 756 F.2d 852, 857 (Fed. Cir. 1985)).  ePlus cropped the quote to give the impression that the PTO adopted its position, when in fact the PTO clearly rejected it and found the determination final.

ePlus argues that the PTO may change its mind and eventually decide that it did consider the '989 patent during the original prosecution.  (ePlus MIL 7 Opp. at 11.)  ePlus provides no support for this proposition.  While the PTO may change its mind and reverse its rejections in theory, it will not revisit the original decisions to grant the reexaminations.

Lawson thus correctly contends, consistent with the PTO and the Federal Circuit and contrary to ePlus, that a grant of a reexamination request is final determination that a "substantial new question of patentability" exists.  This is consistent with Federal Circuit cases cited by ePlus that state the grant of a request for reexamination is "surely evidence the criterion for reexamination has been met (i.e. that a 'substantial new question of patentability" has been raised . . . ."  (ePlus MIL 7 Opp. at 8 (quoting *Hoechst Celanses Corp. v. BP Chems., Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996).)

Lawson need only show there was "substantial new question of patentability" to defeat willful infringement.  *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  *Seagate* recognizes that the relatively low standard for avoiding a preliminary injunction motion, "only a substantial question as to invalidity," is relevant to willfulness because it "accords with the requirement that recklessness must be shown to recover enhanced damages.  A substantial question about invalidity or infringement is likely sufficient to not only avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct."  497 F.3d at 1374.

As for the evidentiary burden ePlus cites, it is noteworthy that in court, ePlus bears the burden of proving willfulness by clear and convincing evidence and specific intent by a preponderance of evidence. Therefore, the PTO's final finding of a substantial new question should apply with even greater force in court, as the burden rests on the PTO to make the finding.

The fact that the PTO reexaminations are ongoing takes nothing away from the finality of the findings at issue. Regardless of whether the patents-in-suit are eventually found to be valid, the substantial question of patentability findings will survive, and defeat willfulness. *See Rite-Hite Corp v. Kelly Co.*, 56 F.3d 1538, 1575 (Fed. Cir. 1995) ("Kelley mounted a substantial and legitimate challenge to the validity and its infringement of the '847 patent in suit. Kelley was held to be wrong on both points, but its infringement was not willful.") In the same way, even if the PTO finally allows certain claims from the patents-in-suit to issue from reexamination, it will remain true that there existed a substantial question as to the patentability of those claims. MPEP 2242(I) (Exh. 3). There is no chance that the PTO, the Federal Circuit, or any other authority will reverse or alter the finding that there existed a substantial question whether the patents-in-suit are patentable at the time the reexaminations were granted. *See* 35 U.S.C. § 303.

ePlus's citation to the reexamination statistics is misleading. (ePlus MIL 7 Opp. at 9-10.) The PTO grants 92% of reexamination requests, but only 24% of the reexaminations result in confirmation of all the claims. *See Ex Parte* Reexamination Filing Data – March 31, 2010 (Exh. 4 hereto). This means that 76% of reexaminations result in claims changing or being cancelled. The substantial question of patentability that leads the PTO to grant reexamination requesst in the vast majority of cases also leads the PTO to cancel or change claims. ePlus's implication that

only a small portion of reexaminations change the patents is simply not supported by the actual statistics.

ePlus's reliance on *Callaway Golf Co. v. Acushnet Co.* to argue jury confusion is misplaced. (ePlus MIL 7 Opp. at 7 (citing 576 F.3d 1331, 1343 (Fed. Cir. 2009).) In *Callaway*, the question was whether the PTO's rejection of claims during a reexamination would confuse the jury regarding validity. *Id.* at 1342 ("The non-final re-examination determinations were of little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness."). In this case, however, the question is whether the PTO's finding of a substantial new question of patentability should be considered by the jury in determining whether Lawson's infringement, if any, was willful. The jury is presumed capable of distinguishing validity and willfulness.

## II. The PTO Has Finally Determined that it Did Not Consider the '989 Patent During the Initial Prosecution of the Patents-in-Suit

As discussed in Lawson's memorandum in support of its Motion in Limine No. 7, ePlus contends that the PTO considered the '989 patent as prior art during the initial prosecutions of the patents-in-suit, in an effort to deflect its strength as prior art. *See* Lawson's Mem. in Support of Mot. in Limine No. 7 [Doc. No. 270] ("Lawson MIL 7 Mem.") at 8. As also discussed, the PTO repeatedly and finally found during the reexamination that the '989 patent was, in fact, not considered as prior art during the initial prosecutions of the patents-in-suit. (*Id.* at 8-10.) ePlus should not be able to argue what it thinks the PTO did, while blocking the jury from hearing that the PTO itself disagrees.

ePlus asserts that "[a]ll references in the field of the examiner's search are deemed to have been considered by the examiner." (ePlus MIL 7 Opp. at 12.) The case it cites, however, shows that the examiner search only creates a *prima facie* case that the references in the field of the

6

examiner's search have been considered. *E.I. du Pont*, 620 F.2d at 1266.  As the Federal Circuit has held, that *prima facie* case is rebutted by showing that "the uncited art is more relevant than that cited."  *Lindemann Maschinenf Abrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984).  Recognizing the uncertainty of the presumption, the Federal Circuit went on to comment that parties "desiring the benefit of the examiner's evaluation of originally uncited art have available the reexamination procedures under *35 U.S.C. §§ 301-307*." *Id.* at 1460 n.5.  Here, that reexamination process has shown the presumption is unwarranted as to the '989 Patent.  Thus, the PTO's own actual, specific, final findings on the '989 Patent completely rebut and supersede this prima facie, general presumption.

In this case, reexaminations have been granted by the PTO.  The highly experienced reexamination branch of the PTO evaluated the '989 patent and found that it raised a substantial new question of patentability not considered in the initial prosecution of the patents-in-suit.  Thus, the reexaminations involve specific, final findings by the PTO that the PTO did not consider the '989 patent previously.  ePlus should not be allowed to argue otherwise.

### III.    The '989 Patent is Prior Art to the Patents-in-Suit

Lawson provided a detailed description why under the law the '989 patent qualifies as prior art under 35 U.S.C. § 102(a), (b),(e) & § 103(a).  ePlus did not dispute in its opposition that either Lawson or the PTO in reexamination misapplied this law.  Nor did ePlus argue that the PTO determination that the '989 patent qualifies as prior should be disregarded.  (ePlus MIL 7 Opp. at 10-13.)  Under the correct law, the '989 patent qualifies as prior art, and ePlus should not be allowed to argue otherwise.

## IV. ePlus Should be Precluded from Making Inconsistent Arguments to the PTO and in this Litigation

As discussed in Lawson's opening memorandum, ePlus has proffered numerous arguments in this litigation that are inconsistent with its arguments to the PTO. *See* Lawson MIL 7 Mem. at 8. Arguments made by a patentee during a pending reexamination limit the arguments it can make during litigation. *Beneficial Innovations, Inc. v. Blockdot, Inc.*, Nos. 07-263, -555, 2010 U.S. Dist. LEXIS 54151, *5, *12 (E.D. Tex. June 3, 2010) ("The Court rejects Beneficial's arguments that this Court should ignore the arguments and remarks made to the USPTO during reexamination, particularly in light that its arguments to the USPTO are contradictory to arguments it made to this Court.") Although *Beneficial* deals with claim construction, the relevant principle is that the patentee should not be allowed to make one argument to the PTO to avoid prior art and then make a contradictory arguments during litigation. *See id.* ("The Court will not allow Beneficial to make arguments as to the interpretation of claims in this Court and then to make contradictory arguments to the USPTO in distinguishing the prior art without any effect on the scope of the claim.")

Lawson cited to specific instances in which ePlus is arguing inconsistently to the PTO and in this litigation. Lawson MIL 7 Mem. at 4-7. For example, to the PTO, ePlus has argued that "converting" in the patents-in-suit must be done automatically. (Exh. 1 at 100-01 ("The specification makes clear that the 'converting data' step is performed automatically by the electronic sourcing system.").) ePlus took this position to distinguish the prior art. (*Id.* at 85 ("The P.O. Writer Plus system had no capability of automatically switching items . . . .").) ePlus's expert, in contrast, contends that manual converting is within the scope of the claims. (Exh. 2 at ¶ 132.) This inconsistency is irreconcilable because, as ePlus argues in its brief, the PTO supposedly uses the broadest reasonable claim construction in reexam. ePlus should be

8

barred from arguing a claim construction broader than the broadest reasonable construction. Thus, ePlus should not be allowed to argue in this litigation that patents-in-suit do not require "converting" to be done automatically. *Beneficial*, 2010 U.S. Dist. LEXIS 54151, *5, *12; *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, (Fed. Cir. 2001) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") This also holds true for the other inconsistencies in ePlus's arguments to the PTO and in this litigation, which are discussed in Lawson's opening memorandum. Lawson MIL 7 Mem. at 4-7.

Furthermore, ePlus should not be allowed to tout that the patents-in-suit have been found valid by the PTO. In the very case that ePlus cites to argue jury confusion about claimed rejections during reexamination, the Federal Circuit reasoned that claim rejections during reexamination should prevent the patentee from arguing that the rejected claims were previously approved by the PTO. *Callaway*, 576 F.3d at 1342. Specifically, the Federal Circuit noted that patentee arguments that the PTO found the patents-in-suit valid when the patents-in-suit stand rejected in reexamination, "while truthful, ha[ve] potential to mislead the jury by implying that every expert examiner to have considered the patents had concluded that they were valid."[2] *Id.* This is the very misleading implication the ePlus desires by touting that the patents-in-suit are presumed valid while preventing Lawson from telling the jury that at least two of the patents-in-suit stand rejected in reexamination.

---

[2] Statements made by the patentee that the PTO had approved the patents-in-suit were questioned by the Court, but were not directly at issue before the Federal Circuit because the accused infringer had failed to make a timely objection. *Callaway*, 576 F.3d at 1342. Nevertheless, the Federal Circuit's reasoning directly applies to this case.

9

## V. Conclusion

For the reasons stated, Lawson respectfully requests that the Court grant Lawson's Motion in Limine No. 7 and preclude ePlus from presenting arguments or evidence inconsistent with the PTO's *final* determination that the prior art not previously considered by the PTO, specifically including the '989 Patent, raises a "substantial new question of patentability" as to each of the patents-in-suit. Lawson also respectfully requests that the Court preclude ePlus from presenting arguments or evidence inconsistent with the arguments it has made in the reexaminations.

                              LAWSON SOFTWARE, INC.

                              By /s/
                                    Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

          /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

*Counsel for Defendant Lawson Software, Inc.*

11