1

1           IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
2                   RICHMOND DIVISION

3     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                        :
4     ePLUS, INC.,                      :
                                        :
5                       Plaintiff,      :
       v.                               :  Civil Action
6                                       :  No. 3:09CV620
      LAWSON SOFTWARE, INC.,            :
7                                       :  July 16, 2010
                        Defendant.      :
8     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

10

11          COMPLETE TRANSCRIPT OF **CONFERENCE CALL**
              BEFORE THE HONORABLE ROBERT E. PAYNE
12               UNITED STATES DISTRICT JUDGE

13

14

15    APPEARANCES:   (All via telephone)

16    Scott L. Robertson, Esq.
      Jennifer A. Albert, Esq.
17    GOODWIN PROCTOR
      901 New York Avenue, NW
18    Washington, D.C.   20001

19    Craig T. Merritt, Esq.
      CHRISTIAN & BARTON
20    909 E. Main Street, Suite 1200
      Richmond, VA   23219-3095

21
              Counsel for the plaintiff ePlus
22

23

               DIANE J. DAFFRON, RPR
24              OFFICIAL COURT REPORTER
              UNITED STATES DISTRICT COURT
25

 1    APPEARANCES:   (Continuing)

 2    Kirstin L. Stoll-DeBell, Esq.
      MERCHANT & GOULD
 3    1050 17th Street, Suite 1950
      Denver, CO    80265

 4
      Dabney J. Carr, IV, Esq.
 5    TROUTMAN SANDERS
      Troutman Sanders Building
 6    1001 Haxall Point
      P.O. Box 1122
 7    Richmond, VA    23218-1122

 8          Counsel for the defendant Lawson Software

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1            (The proceedings in this matter commenced at

 2   2:00 via conference call.)

 3            THE COURT:  Hello.  This is ePlus v. Lawson

 4   Software, 3:09CV620.  Who is here for whom, starting

 5   with counsel for the plaintiff?  And please give your

 6   name when you speak each time.

 7            MR. MERRITT:  Craig Merritt for ePlus, Your

 8   Honor.

 9            MR. ROBERTSON:  Scott Robertson, Your Honor,

10   from Goodwin Procter.  And I have with me my partner

11   Jennifer Albert.

12            MR. CARR:  Judge, for Lawson Software, this

13   is Dabney Carr, and I have on the line with me Kirstin

14   Stoll-DeBell, who is with Merchant & Gould and I don't

15   believe has yet appeared before you in this case.

16            MS. STOLL-DeBELL:  Good afternoon, Your

17   Honor.

18            THE COURT:  Hello.

19            MR. CARR:  And that's everyone, Your Honor.

20            THE COURT:  All right.  Where is Mr.

21   McDonald?

22            MR. CARR:  Mr. McDonald is on his way to

23   Europe.

24            THE COURT:  For a vacation?

25            MR. CARR:  Yes, sir.
```

4

```
 1            THE COURT:  Well, isn't that nice.

 2            When are the briefs due on the summary

 3    judgment motions on the Bilski question?

 4            MR. ROBERTSON:  Your Honor, this is Scott

 5    Robertson.  We filed our opposition today at noon, and

 6    I think Mr. Merritt is going to deliver a courtesy

 7    copy to chambers.

 8            MR. CARR:  Your Honor, this is Dabney Carr.

 9    Our reply brief is due on Monday.

10            THE COURT:  All right.  We have arguments in

11    this case?

12            MR. CARR:  Yes, Your Honor.  This is Dabney

13    Carr.  The argument on all the summary judgment

14    motions as well as the motions in limine is set for

15    July 28.

16            THE COURT:  All right.

17            What is it that possessed ePlus to file 6- or

18    700 pages of expert report, Mr. Robertson?  Where did

19    you get the notion that that is an appropriate thing

20    to do?

21            MR. ROBERTSON:  Your Honor, I feel like we're

22    being penalized for being too thorough here in this

23    instance.  What we did, Your Honor, is marshal all the

24    evidence we had to establish the infringement.

25            Obviously, I didn't want to be accused of
```

1    withholding anything from the defendant as to our

2    infringement contentions.

3          Back in December, 30 days after the pretrial,

4    we produced 300 pages of claim charts based on the

5    evidence we had at that time and were able to process

6    as to what we thought the infringing systems were.

7    There are a number of different documents,

8    demonstrations, deposition testimony, all that

9    establish that Lawson is infringing the 13 claims

10   that are asserted.

11         THE COURT:  How long do you think it will

12   take you to present that case to the jury?

13         MR. ROBERTSON:  Four and a half days.

14         THE COURT:  Well, here's what I think I'm

15   going to do.  I'm going to get you to take your most

16   representative claim that best represents the patent,

17   and you'll get a couple or three days, four days

18   total, to try that, all of you, and that's both sides,

19   and then we'll see what happens.  What's wrong with

20   that idea?

21         MR. ROBERTSON:  Your Honor, there are many

22   overlapping elements in these claims.  If you

23   establish there's a computer operating system, that

24   there's a database that has catalog items that they

25   can establish inventory, the proof for these things

1    really does sum up very nicely in order to be able to

2    say that here are why the 13 claims, which Your Honor

3    will remember I narrowed from 79 at your suggestion

4    and request, are all infringed.

5         It's not the number of claims, Your Honor,

6    that presents the problem.  I can do it with some

7    demonstrations.  I can do it with some documents.  And

8    there are some admissions from the Lawson 30(b)(6)

9    representatives, and there's also the source code that

10   took us 350 hours to dissect, Your Honor, having to

11   look at it in a secure room under a protective order

12   to bring my expert back and forth to D.C. on seven

13   occasions at great expense.  I've been able to do this

14   with respect to Judge Brinkama and Judge Spencer in a

15   very focused presentation.

16        So, Judge, we shouldn't get caught up on the

17   number of claims.

18        THE COURT:  I'm caught up on the trash that's

19   in the case.  I've got, I don't know, 15 motions in

20   limine and most of them are silly and unnecessary.

21   You should be able to work these things out.

22        I've read the motions for summary judgment

23   that are ripe.  It looks to me like the fact disputes

24   run through them all, and there isn't any way to grant

25   summary judgment.  I'm not even inclined to hear

1    argument on them, to tell you the truth.

2            I don't know about the Bilski issue because I

3    haven't head anything but the opening brief on that.

4    I think I understand what the issue is, and I doubt

5    that summary judgment can be granted as to it, but I

6    have no informed opinion on it.

7            These motions in limine, where on earth does

8    ResQ tell us to disregard the Georgia-Pacific factors,

9    Mr. Robertson?  Those factors require persons not

10   acting under compulsion and dealing at arms' length to

11   have a negotiation.  And I don't read anything in

12   those cases, except for ones I saw from the Eastern

13   District of Texas, that warrant changing the basic

14   approach to make this a trial on the basis of what

15   you've extracted from other people under circumstances

16   not covering Georgia-Pacific.

17           I can't understand why, Mr. Robertson, you

18   have so many experts when the pretrial order is clear

19   as a bell.  It says you have one expert per

20   discipline.  You took one per topic and then split

21   everything up.

22           There's no way the case is going to get tried

23   in four days if all those experts testify the way

24   you're talking about.  It's just not going to happen.

25   And that's one of the reasons why that order was

8

1    issued.  I haven't even really gotten into the study

2    of ePlus' motions in limine.  But I will tell you that

3    I don't think you're on very sound ground on much of

4    any of the things that they have raised in their

5    motions in limine.  I don't need to hear from

6    Professor Manbeck to tell about somebody's state of

7    mind.  He's no expert in state of minds.

8           If he testifies, and it's appropriate to

9    testify about reexamination, if the issue somehow

10   comes up, which I don't think it will, then that's one

11   thing, but that's not where we are.  And you're

12   proposing to have him testify to what they should have

13   known or what their state of mind was.  You can't do

14   that.

15           MR. ROBERTSON:  Yes, Your Honor.

16           THE COURT:  These are just a few of the

17   things that I see that are going to foul this case up,

18   and I'm looking for a way to simplify this case.  And

19   I believe, upon reflection, as I've studied all these

20   papers.  Obviously, I haven't studied things that

21   haven't been filed.  And there are a number of things

22   that have been filed that I'm still looking at, but it

23   seems to me as if this matter gets tried very simply

24   by having you take your most representative claim

25   where once a jury makes a determination on that, we

1    will be able to decide how to approach the case better

2    either from litigation or settlement, and it may be

3    that that will give us a sound basis for preclusion

4    one way or the other.  And it will be a manageable

5    case.

6           Otherwise, I'm looking at a case that I don't

7    see how you're going to get it tried in less than four

8    or five weeks, and I don't intend to do that.

9           MR. ROBERTSON:  Yes, Your Honor.  This is

10   Mr. Robertson if I might quickly react to some of your

11   observation.

12          No. 1 is we presented 13 claims before Judge

13   Spencer in four days.  It's not claims, Your Honor,

14   it's the substance of the elements that we need to

15   prove.  Even if we did represent and claim three to

16   four, it still would establish infringement in 13

17   claims, and I can do that in the same manner that I

18   did in front of Judge Spencer.

19          THE COURT:  Yeah, but you didn't have in that

20   case 6- or 800 pages of expert exhibits either.

21          MR. ROBERTSON:  Yes, we did, Your Honor.  We

22   had essentially the same substance in the expert

23   report.  And it's the same issues that have been

24   presented in Ariba, the same issues that have been

25   presented in SAP, and the same arguments that have

1    been presented in this case, and we had to track

2    through 8 million pages of documents, Your Honor, in

3    order to get there.  We had to take depositions

4    repeatedly because witnesses were ill-informed as to

5    the facts that we were asking for.

6          Eight million pages, Your Honor, is the

7    equivalent of 2 1/2 times the height of the Empire

8    State Building that I had to weed through and hire 11

9    outside contractors for me to do that.

10          Now, your point about Mr. Manbeck on the

11   willfulness issue.  You know, Your Honor, we arranged

12   to have a discussion with Mr. Dabney and with Merchant

13   & Gould on Monday because I realized that we

14   overburdened the Court with all these motions in

15   limine.  I will observe that we've only filed nine.

16   Lawson's filed 12.  They've filed two summary

17   judgments.  And as for their 12 motions in limine, I

18   would characterize seven of them has stealth summary

19   judgments in which they sometimes just verbatim cut

20   and paste from their summary judgment briefs.

21          I don't understand what the purpose of that

22   is because we had hearings on how many summary

23   judgments they could have and what the page limits

24   would be.  It's either one or two things.  They are

25   either trying to evade the page limits or they're

1   trying to evade the number of summary judgments.  But

2   we can cut this down.  And right now, given the

3   Court's observation, I will represent that I will

4   withdraw Mr. Manbeck on this issue of willfulness if

5   they'll withdraw their patent lawyer expert,

6   Mr. Lipscomb, on the same issue, and we'll just let

7   the jury decide whether they have willfully infringed,

8   which is the province of the jury in any event.  So I

9   can just take that off the table right now, your

10  Honor.

11          True to my word at the pretrial, I didn't

12  file a motion for summary judgment.  I think when the

13  defendant filed a motion for summary judgment on seven

14  separate issues and then filed a <u>Bilski</u> summary

15  judgment on what by all accounts from everybody in the

16  patent bar is a big nonevent from the Supreme Court,

17  it just burdens this court.  So we're happy to take

18  whatever we can off the table, but I want to be able

19  to fairly try my case.  And to be held off on the

20  sense that I disclosed too much in my expert report

21  kind of suggests to me, Your Honor, that no good deed

22  goes unpunished.

23          I wanted them to be fully aware of what we

24  were going to be offering in the way of infringement,

25  whether it be source code, which took us weeks to

1    decipher, or whether it be the documents they

2    late-produced, or whether it be our efforts to try and

3    demonstrate that representations made in sworn

4    interrogatories were just not accurate, in fact, were

5    not truthful, and we had to go and take third party

6    depositions of.

7              THE COURT:  Wait a minute.  You're telling me

8    that you want to put before the jury the fact that

9    they made representations in interrogatories that

10   weren't signed by the witnesses, and you went to see

11   other witnesses and found out other information; is

12   that what you're telling me?

13             MR. ROBERTSON:  I can give you an example.

14   This is Mr. Robertson again.

15             THE COURT:  Do you understand that that isn't

16   the office of the jury in this case?  If there's a

17   problem in that respect, it sounds to me like that's a

18   sanctions issue that you can bring after the trial.

19             MR. ROBERTSON:  Well, Your Honor, I do want

20   to be able to enter the evidence that negates the fact

21   that what they offered in their interrogatory answer

22   is not true.

23             THE COURT:  You mean you want to put up a

24   strawman and knock him down?

25             MR. ROBERTSON:  No, Your Honor.  I just want

1    to put up affirmative evidence that what we say is

2    true because we went out and deposed customers of

3    Lawson.

4         Let me give you a specific example, Your

5    Honor, so we're not talking in the abstract.

6    Representation was made to you that Lawson just

7    doesn't do catalogs.  In fact, in hearings and in the

8    pretrial Mr. McDonald represented that we just give

9    them the empty software, and they go load the

10   catalogs, and we have no idea what they're doing.

11        We deposed four customers.  In every

12   instance, those customers said Lawson came in and

13   loaded the catalog data, implemented and assisted us.

14   And we chose those customers almost randomly, Your

15   Honor, and then we did a 30(b)(6) of one of their

16   implementation witnesses, and they said yes, in many

17   instances we load the catalog data.  That's exactly

18   contrary to what they say in their interrogatory

19   answers.

20        THE COURT:  Well, then you were required

21   needlessly to go take a bunch of depositions and incur

22   a bunch of expense, and you're entitled to put on

23   evidence of the affirmative point if it's relevant,

24   but you don't put on the evidence that establishes

25   that they said this, and now you're proving the

1    opposite of it.

2          The way to do that, if you've got an

3    objection on that point about how ill treated you

4    were, that's a sanctions motion, and you can deal with

5    it later.

6          MR. ROBERTSON:  Indeed, Your Honor.  We had a

7    telephonic hearing on this.  I know this is probably

8    ancient history to you, but we had a hearing on this

9    on March 25, and you ordered them to answer our

10   interrogatory answers on implementation.  And they

11   waited another two weeks before they answered it, and

12   even then the answer was inadequate.

13         We had several correspondence back and forth,

14   and we never heard from them again.  So, yes, this

15   will be one of the issues we will be raising at the

16   July 28 hearing on a motion in limine.

17         Look, I don't want to raise strawmen

18   arguments, Your Honor, but I do need to affirmatively

19   prove that they implement catalogs because that's part

20   of their non-infringement defenses, that they don't do

21   it.

22         MR. CARR:  Your Honor, this is Dabney Carr.

23   If I might interject here.  I just want you to know

24   that we contest what Mr. Robertson has been saying and

25   his characterization of the evidence.

```
 1              I don't think it helps in this call to get

 2     down into these details, but I didn't want to go

 3     unresponded to.

 4              THE COURT:  All right.

 5              MS. STOLL-DeBELL:  Your Honor, if we can

 6     respond to your proposal for -- this is

 7     Ms. Stoll-DeBell by the way.  If we can respond to

 8     your proposal, try a representative claim, I think

 9     that's an excellent idea.

10              Mr. Robertson says all 13 claims are the

11     same, but they're not.  There are some that are means

12     plus function claims, there are some that are method

13     claims.  There are some that require requisitions, and

14     some that don't.

15              There are five different accused products for

16     each of these 13 claims, and it's unbelievably

17     complicated to try to sort all that out for the

18     infringement case, let alone the invalidity case.

19              MR. ROBERTSON:  Your Honor, this is

20     Mr. Robertson, if I might briefly respond.

21              It's no more complicated than the SAP and the

22     Ariba case.  And Judge Brinkema tried the Ariba case

23     in eight days.

24              THE COURT:  Do you expect me to buy the

25     assertion that you've been through two trials and
```

1   learned nothing?  And that you haven't changed your

2   approach to the trials based on what you've learned?

3   Come on.  As the old boy said, "I fell off the turnip

4   truck, but it wasn't last night."

5          MR. ROBERTSON:  Your Honor, this is

6   Mr. Robertson.  I've learned much in those two trials.

7   And what I'm trying to represent to you is through

8   those two trials I was able to do in four, four and a

9   half days, and the Court can hold me to that.  Let me

10  put my proofs on, and let me sum up and show how those

11  proofs satisfy the elements of those 13 claims.

12         If we're going to start talking about

13  representative evidence, what are we going to do with

14  the defendants' invalidity positions which still are

15  not confined to the Court's order.  In fact, they

16  filed opposition briefs that said this court has

17  decided nothing with the scope of what the invalidity

18  positions that can be offered at trial are.  And I can

19  cite to you exact page and line of that if you want to

20  see it.

21         I thought it couldn't have been more crystal

22  clear that the Court made some orders that restricted

23  the defendant as to what invalidity position they

24  could take, but apparently the defendant -- when the

25  Court has an opportunity to read their motions in

1    limine and their opposition to ours, in their view,

2    hasn't decided anything.

3              MS. STOLL-DeBELL:  Your Honor, we dispute

4    that.  I'm not sure what Mr. Robertson is talking

5    about.

6              THE COURT:  Let me ask you something.  How

7    can you dispute something that you don't know what

8    he's talking about?

9              MS. STOLL-DeBELL:  I think it's not our

10   position that you have not limited our invalidity

11   case.  We understand that our invalidity case is

12   limited.  We have narrowed the number of references

13   that we rely on, and the invalidity arguments, the

14   non-prior art arguments that we are relying on.  So I

15   don't believe that we have ever said we think it's a

16   free-for-all for invalidity.  We understand we need to

17   be fucused.  We need to stick to the references that

18   we have put in our contention responses, and we intend

19   to do that.

20              And with respect to Mr. Robertson's comments

21   that he shouldn't be punished for being too thorough,

22   they have more than 400 pages of new information and

23   at least six new arguments that were never disclosed

24   to Lawson.  They didn't say a peep about these search

25   indexes until Dr. Weaver's report.  So he was not too

1   thorough.  He was not thorough enough.  We had no

2   notices of any of these arguments that they are

3   making, and for the most part they don't even dispute

4   that they are new.

5         If you go through the highlighted exhibits

6   that we've provided you, Your Honor, Exhibits 3

7   through 5 are Dr. Weaver's 600 pages of claim charts.

8   Those are highlighted.  Exhibit 12 is Mr. Niemeyer's

9   report.  A substantial amount of that is highlighted.

10        We will be submitting today a copy of

11  Dr. Weaver's main report, which is 130-plus pages

12  long.  A substantial part of that is highlighted.

13  These are new arguments they didn't disclose, and they

14  waited until after we narrowed our invalidity case to

15  come up with these new arguments.  And because of

16  that, we are really -- our hands are tied to defend

17  against them.  And the case is already so complicated,

18  it's just totally unfair.

19        MR. ROBERTSON:  Your Honor, this is

20  Mr. Robertson.  Let me just briefly respond.

21        On a hearing on the merits, I can demonstrate

22  how that is just not true.  In fact, part of the

23  problem we had is we didn't get an expert until March

24  who told us they actually had a search index.  Until

25  then, their sworn interrogatories always said they

1    searched the entire database.

2            Let me briefly explain why that is important,

3    but I'd like to have a hearing on this.  And that is a

4    search index is a simple tool that lets you search a

5    database to identify the actual data record you want.

6    It's much like a book that has an index.

7            If Your Honor was reading a book on the Civil

8    War and wanted to go to the first battle of Bull Run,

9    you could go through the book page by page looking for

10   it or you could go to the search index, see where the

11   Battle of Bull Run was referenced at 237 to 241, and

12   go right to it and find the data record.

13           We always knew they did it that way, but

14   their interrogatories said no.  It wasn't until we

15   were able to go the source code and get a witness in

16   March that for the first time they conceded they had a

17   search index.

18           So I don't know how I could have put that in

19   the initial contentions when they represented they

20   didn't do it that way, and we had to look at the

21   source code, and we had to get a witness that would

22   then admit it.

23           There are a lot of issues in this.  I will

24   represent to the Court that on a hearing on the merits

25   on this matter I can establish that we have not

1    asserted infringement against any new products or

2    services that we didn't previously identify in

3    Dr. Weaver's report, and that we haven't added any new

4    theories of infringement in Dr. Weaver's report that

5    we didn't previously identify.  And I will be able to

6    establish that at a hearing.  But, obviously, the

7    Court needs to see the documentation of the evidence

8    on that.  So there are not hundreds of pages of new

9    theories.

10           Is there additional evidence that we do in

11   support of our theories and in support of the fact

12   that these products and services infringe?

13   Absolutely, because we had to go through eight million

14   pages of documents, and we had to go through millions

15   of lines of source code.  And it took us weeks.  Even

16   their own witnesses said it would take that to

17   decipher that source code.

18           So I feel like we're being faulted for having

19   done our diligence on this to come forward with the

20   evidence that establishes that these people

21   overwhelmingly infringed these patents.  And that's

22   just not fair.

23           So if the Court wants to see on a theory by

24   theory basis and on a product and services basis that

25   there's one to one correspondence between our initial

1    contention that I did 30 days after the pretrial and

2    Dr. Weaver's report, I'll show that, and I'll also

3    show why we were hamstrung every step of the way, and

4    why this was a teeth-pulling exercise to try and get

5    the evidence from these guys to establish that they

6    infringe, and to add that evidence in a disciplined

7    matter into their report so they can see how it was

8    that they infringe, and they couldn't say that they

9    were prejudiced.  And we did that all before the close

10   of fact discovery.

11          I will tell you, Your Honor, three days

12   before Dr. Weaver's report was due, the defendant's

13   supplemented their non-infringement contentions and

14   for the first time, one of their non-infringement

15   contentions -- now, let me repeat that.  Three days

16   before Dr. Weaver's report was due they said, We don't

17   sell computers.  So we can't infringe.

18          And guess what, Your Honor?  That's one of

19   the bases for their summary judgment of

20   non-infringement, and they gave that to us three days

21   before Dr. Weaver's report was due, and now it's

22   before you on summary judgment.

23          Now, how is that fair?  We had to scramble,

24   and we dealt with that in his report, but, obviously,

25   we had to deal with that new non-infringement

1   contention raised for the first time three days before

2   Dr. Weaver's report was due.

3          MS. STOLL-DeBELL:  Your Honor, if I might

4   respond briefly.

5          As far as us hamstringing them, we produced

6   source code for all of the accused modules of the

7   products in September.  All of the code that their

8   source code expert relies on is the code that we

9   produced in September.

10          Mr. Robertson says he knows we used search

11   indexes.  That's because everybody uses search

12   indexes.  If you didn't, it would take forever to do a

13   search.  It would be like trying to search Moore's

14   Federal Practical without an index.  It would take too

15   long.

16          Their source code expert in his declaration

17   in support of their opposition said he had the source

18   code in October.  And there's absolutely no reason why

19   they couldn't have disclosed that argument in

20   December.

21          MR. ROBERTSON:  Let me just address that.  It

22   would have been nice if that source code index

23   argument had ended up in an interrogatory because that

24   would have saved us a lot of time.  You said exactly

25   the opposite in your interrogatory answers.

1          Secondly, Your Honor, source code is not like

2     opening up a book and just reading through it.

3     There's an affidavit we put into evidence from our

4     expert who had to make seven trips to D.C. to go into

5     a secure room that they required us to do under a

6     protective order to review that source code.  He had

7     to spend 350 hours to review that to come up with a

8     search index, source code, that we then had to

9     challenge and confront one of their experts on who

10    finally conceded, Yes, we have a search index.

11         I challenge Ms. Stoll-DeBell to go back and

12    show us in an interrogatory answer prior to December

13    22, 2009, in which you indicated that you had a search

14    index.  That will resolve the issue.  If you do that

15    and it's there, I'll concede the point.

16         MS. STOLL-DeBELL:  We didn't say we had a

17    search index because it's not relevant.  We said we

18    searched every record of Item Master and we do, just

19    like when you look at the index of a book, you are

20    searching for something in the entire book.  Just

21    because you use an index to speed that up doesn't mean

22    you're not searching the entire book.  We never said

23    we don't use search indexes.  It's simply not

24    relevant.

25         MR. ROBERTSON:  The --

1          MS. STOLL-DeBELL:  Don't interrupt me.

2          THE COURT:  Hey, hey, hey.  Settle down.  One

3    at a time.  Go on.

4          MS. STOLL-DeBELL:  If I may continue.

5          THE COURT:  Yes.

6          MS. STOLL-DeBELL:  We didn't say we use a

7    search index because it's frankly not relevant.  And I

8    cannot understand or begin to understand how you might

9    say that is a catalog.  It doesn't have any --

10          THE COURT:  All right.  Wait just a minute.

11          I've just been sitting here listening to

12    you-all.  I may take another approach to simplifying

13    the litigation.  I may enjoin anyone from talking

14    except Mr. Merritt and Mr. Carr.  That'll be the end

15    of it.  There will be nobody else talking.  There will

16    be nobody else litigating the case.  They will be the

17    ones who say everything, who make every decision.

18    That might settle the case down a little bit because

19    you-all fight like cats and dogs, and it's ridiculous.

20          Now, I am looking for a way to simplify this

21    case.  I do not see how you can put in 800 pages of

22    testimony about experts and they get an opportunity to

23    cross-examine in four days.  I don't see how that

24    happens.  Now, maybe there's a way to do it.

25          You-all are going to have to figure out a way

1    to try to simplify this case, and I want you-all to

2    start thinking about it.  Unless you hear differently

3    from me, what I want to hear on the 28th -- or 29th,

4    is it?

5             MR. ROBERTSON:  The 28th.

6             THE COURT:  The 28th.  Is argument on motions

7    in limine that remain, which I would like to be told

8    on Tuesday that there are precious few of.

9             I reserve on Bilski.  I have to read the

10   response, and the reply is not due until Monday.  So I

11   can't make any comment on that.

12            I don't think this is a summary judgment

13   case.  And I'd like to know and understand exactly why

14   it is when you get around to it, Mr. Robertson, that

15   you think you can have so many different experts when

16   the order says what it did.

17            The issue on the motion to strike that I have

18   been reading seems to be that Lawson was told to stay

19   with its contentions on invalidity and

20   non-infringement.  And you're going to have to do the

21   same thing.

22            And if you have new theories, Mr. Robertson,

23   that aren't disclosed in your infringement

24   contentions, then to the extent your expert report

25   raises new theories of infringement, you're not going

1   to be able to put those on.

2          Now, I need to know first -- I can't tell

3   from reading these briefs which you concede are new

4   theories that you want to be able to put in, new

5   theories of infringement, because of something that

6   Lawson did that made it impossible for you to know

7   about the contention and which of the information in

8   these expert reports is simply more detail in support

9   of a theory that was announced in the non-infringement

10  contentions.

11         The purpose of having you-all identify your

12  contentions is so you'd know what they were.  And then

13  the experts, of course, are entitled to go look at

14  that and develop evidence about it.  And the evidence

15  is going to be broader than the contention, per se, as

16  a general proposition, it seems to me.

17         What I remember about Lawson is that Lawson

18  had these new contentions.  We weren't talking about

19  the expert reports adding expansive documentation.  We

20  were talking about there being new contentions.  And

21  you-all have to sort that out.  And somebody has to

22  show me in some kind of simple, easy, understood way

23  what's new.

24         MS. STOLL-DeBELL:  Your Honor, if I may

25  speak.  We listed six new arguments on pages 3 and 4

1    of our opening brief.   Those are the arguments that we

2    contend are new.   The doctrine of equivalents, for

3    example.

4         THE COURT:   Well, the doctrine of

5    equivalents, that's going the way of the wicked

6    because that's no longer an issue in the case.   Is it,

7    Mr. Robertson?

8         MR. ROBERTSON:   No, sir.   In fact, let me

9    just take that off the table right now.   Just a little

10   bit of recent history, Your Honor.   We got your

11   Markman order on the Friday evening before the Monday

12   our expert reports were due.   Pursuant to the Court's

13   guidance, I had done analyses both under our claim

14   construction and Lawson's claim construction, which

15   included a DOE analysis if their claim construction

16   prevailed.   It didn't.

17        I'm not presenting evidence at trial on that.

18   It stayed in the expert report, Your Honor, because we

19   were hard pressed to get that out.   We indicated

20   that in our reply brief.

21        THE COURT:   Why didn't you do this?   Why

22   didn't you call the other side and say, Look, there's

23   a section in there about the doctrine of equivalents,

24   and, obviously, you don't need to deal with that

25   because, given the Court's claim construction, we're

1    not putting this on?  That would have solved the whole

2    problem.  They do have telephones up there where you

3    are, don't they?

4           MR. ROBERTSON:  Yes, sir, we do.  And your

5    point is well taken.  I thought we said that in our

6    reply.

7           THE COURT:  Yeah, but the reply is a long

8    way -- there's a lot of blood that's been spilled

9    before you get to the reply, for Pete's sake.

10          MR. ROBERTSON:  The point is well taken, Your

11   Honor.

12          THE COURT:  I want you-all to sit down and

13   talk about ways to simplify this case.  And I truly am

14   not going -- this case in not going to be tried by

15   proxy.  I'm going to go study ResQ and those other

16   cases that you cite, but the way I read cases and the

17   authorities that you have cited that I have been able

18   to read, they don't do away with the basic formulation

19   of the hypothetical negotiation.

20          And throwing in expert reports that are based

21   on figures that came as the direct result of

22   litigation pending appeal or retrial or whatever can

23   hardly be said to be a party not acting under

24   compulsion.

25          In this case, this was something that I was

1    fairly comfortable in my basic knowledge about.   And

2    the way you-all have cited the cases lead me to

3    believe that maybe all that I learned, I didn't learn

4    very well.  So I have to go back and read this stuff.

5           But the things I have read do not prove out

6    the point that I'm wrong.  They prove out the point

7    that I'm right.  I don't know what that does to your

8    case.  I don't know whether it means that you don't

9    have any damage calculations for the reasonable

10   royalty or what.  But we're not going to try a case

11   where we have to let Lawson put in evidence about why

12   these figures got where they were, and, i.e., that

13   there was litigation, and they were thinking about

14   this consideration, the other people were, and it had

15   to be done this way in order to resolve the case.

16          You'd end up trying a sub case, and you'd end

17   up with Rule 403 problems that are very, very

18   problematic.

19          So I don't know what that does to your

20   damages case, but I've got this question.  Given that

21   eight million pages you-all had to read, what are your

22   total legal fees in the case do you estimate right

23   now, Mr. Robertson?  And I'm not going to hold you to

24   it.

25          I'm sure you, like all law firms, get

1    by-the-minute updates on what you've billed and what

2    your collections are, and all that stuff.

3              Roughly, what are the legal fees so far?

4              MR. ROBERTSON:  Well, Your Honor,

5    respectfully, I'd like not to share that with counsel

6    for Lawson unless it's going to be a mutual exchange.

7    And I'm not sure that Ms. Stoll-DeBell is prepared to

8    do that.

9              THE COURT:  I want to know from her what the

10   net worth of Lawson is.

11             MS. STOLL-DeBELL:  The net worth of Lawson?

12             THE COURT:  Yes.

13             MS. STOLL-DeBELL:  I don't know the answer to

14   that, Your Honor.

15             THE COURT:  Here's what you better do.  You

16   better start thinking about it.  You ought to think

17   about how much legal fees he's got because if he wins,

18   he gets legal fees.  If he wins on willfulness, he's

19   going to get treble damages.  And the case is going to

20   end up going to a jury.

21             And your client is not a big player in the

22   world, according to Mr. McDonald.  I don't know if

23   that's true or not.  They are small fish, he led me to

24   believe.

25             And maybe you-all ought to be thinking about

1   the economics of doing what you're doing as far as

2   your client's interest is concerned is the point I'm

3   making.

4          I bet your legal fees may be $30 million

5   before it's over.  Is Lawson worth $30 million?

6   Because if you lose, you're going to have to pay the

7   legal fees.

8          MS. STOLL-DeBELL:  Your Honor, Lawson --

9   depends on the pond that you're looking at whether

10  Lawson is a big fish or a small fish.

11         THE COURT:  I'm looking at the total number

12  of dollars that constitute the shareholders' equity.

13         MS. STOLL-DeBELL:  I don't know the answer to

14  that.

15         THE COURT:  Well, I'm not asking --

16         MS. STOLL-DeBELL:  I do know they have

17  hundreds of millions of dollars in sales.

18         THE COURT:  Okay.  Well, you-all ought to

19  give some thought to all this because --

20         MR. ROBERTSON:  This is Mr. Robertson.  We

21  have been, and we've been making efforts to meet with

22  Judge Dohnal.  And, unfortunately, we weren't able to

23  meet until August 19 was the only date the parties

24  could agree on.  But we are going to meet on

25  August 19.  And I can speak for ePlus that we're going

1    to approach that meeting with a very open mind and try

2    and resolve these matters, taking into account the

3    observations you just made.

4         MS. STOLL-DeBELL:  And I can represent the

5    same for Lawson, Your Honor.

6         THE COURT:  Well, when you come to those

7    settlement meetings, I don't know what Judge Dohnal

8    has told you, but I'm going to tell him that I want a

9    business person there who is at the top levels of the

10   company, not one of the general counsel, who can hear

11   all this stuff that goes on and the arguments that are

12   being made because sometimes business people have a

13   way of cutting through and understanding that the

14   lawyers on their side aren't making any sense, and

15   that helps settle the case.

16        So the same is true for both of you.  And I'm

17   going to tell him I think it's not going to get

18   anywhere unless you get what Judge Williams calls your

19   big marbles there.

20        Now, this, folks, is out of hand.  What's the

21   trial date on this case?

22        MR. ROBERTSON:  September 13, Your Honor.

23   This is Mr. Robertson.

24        THE COURT:  Well, I'm going to continue

25   reading these things, but I just think that I'm going

1    to want to talk to you at least on July 28 and maybe

2    before that about a means of cutting this trial down

3    to manageable proportions because you-all have it way

4    out of hand right now.   Every issue gets litigated to

5    the inth degree and that isn't the way that I think is

6    the best way to resolve this case.

7              I recognize that this is not a simple matter,

8    and it doesn't lend itself to simple solutions, but

9    sometimes finding a simpler approach after you have

10   been through all the wheatfield that you all have been

11   going through can be accomplished once you've gone

12   through the wheatfield and you've realized that there

13   is a lot of wheat and a lot of chaff, and you have to

14   figure out which is which.

15             So I'll be expecting to hear from you on the

16   date set for these motions.

17             MR. MERRITT:  Your Honor, this is Craig

18   Merritt.  May I ask a question?

19             THE COURT:  Yes sir.

20             MR. MERRITT:  What I'm hearing are two big

21   picture issues.  One is the scope of proof at trial

22   and the other is the number of the motions in limine.

23   Would it help if we tried to confer intensively over

24   the next few days and gave to the Court some sort of

25   at least an oral report in the middle of next week so

1    that if we have narrowed things down, you won't be

2    wasting time grinding through a lot of paper?

3            THE COURT:  Well, it would help, but I've

4    read a good many of Lawson's motions in limine in

5    preparation for this phone call.  It doesn't take a

6    long time to read and digest basically the points.

7            What I haven't done is gone back and reviewed

8    some of the detailed proofs that are offered and the

9    details of some of the case law that has been offered.

10   I have read some of the case law on topics that seemed

11   to me that are going to drive the case like what are

12   you going to be able to prove in the way of damages.

13   And I think there are problems there.

14           I, frankly, think that the pretrial order

15   means what it says, and it's been interpreted that way

16   for years.  So I don't understand how we're going to

17   have any issue on that.  And I don't know what that's

18   going to do to the trial of the case, but somebody

19   better be doing some thinking about those things.

20           I'm not doing it just to take work off my

21   shoulders.  That's not the point.  I've had cases that

22   have had a lot more motions in limine than this.  It's

23   the quality of them and the topics to which they are

24   directed that are troubling me.  And not just the

25   quality of the motions, but I mean the quality of the

1    issues.

2           I don't mean to criticize the articulation of

3    the theories in the papers.  That's not the point.

4    The point is, what on earth is going on in this case.

5    I sometimes apprehend that the lawyers don't get

6    along, and it drives an awful lot of the decisional

7    process, and there's a lot of mudslinging that need

8    not be done.

9           All right.  I want to hear from you in the

10   middle of the week if you have been able to narrow

11   down some of these things.  And I'll be reading the

12   Bilski stuff first part of the week.  I'll wait until

13   it's ripe to read it.  It reads better if I read

14   different sections together.

15          All right.  Then you better be prepared to

16   deal with motions in limine.  What is the title of

17   that motion?  Motion to strike, is that what it is?

18   Yes, the motion to strike on the 28th.

19          And before then, as to that motion to strike,

20   I want you to figure out some way in a very simple way

21   to identify this is the contention -- I mean, these

22   are the six -- what did you say there were?  Six or

23   seven of them?

24          MS. STOLL-DeBELL:  If they don't intend to go

25   forward with the doctrine of equivalents, then we're

1    looking at five new arguments.  And those are listed

2    on page 4 of our brief.  And there are one or two

3    sentences describing what we contend is new.

4          THE COURT:  Yeah.  And I want you to show me

5    in something very simple why it's not new.  It's one

6    thing to say the theory is new, i.e., the theory of

7    infringement is new.  It's another to say there's an

8    old theory and you've changed grounds on it entirely

9    from something else.  And it's yet another thing to

10   say it's an old theory and this is just backup for the

11   same basic approach to it or I've broadened the

12   approach to it in a way that doesn't change the nature

13   of the contention.

14         Do you understand the distinction,

15   Mr. Robertson?

16         MR. ROBERTSON:  Absolutely, Your Honor.

17         THE COURT:  Then I wanted you to figure out

18   some simple way to do that.

19         Now, Mr. Willett -- is he not on there?

20         MR. ROBERTSON:  No, he's not.

21         THE COURT:  Well, go get Mr. Willett and have

22   him show you what we used in the WiAV case.  What we

23   had is a contention that somebody's declaration in a

24   summary judgment went beyond the expert report and

25   therefore constituted a new expert report.  And the

1   way we resolved it there was to take what was objected

2   to as not supported by the expert report and as

3   constituting new material, and then having that

4   highlighted in one color.  And then having the other

5   side say, Well, here is where it actually appeared in

6   the expert opinion, highlighted and keyed to a tabbed

7   exhibit that I could immediately turn to and look at

8   and say, Oh, there it is or there it isn't.

9        We had 26 such theories and I dealt with them

10  in relatively short order.  I'm not saying that that

11  is the way to approach the matter in this case, but it

12  is a way of simplifying things so that I can

13  understand precisely where you are and what your

14  evidence is, and why you say it's different, and why

15  you say it's not different.  And I don't have that yet

16  and I want it.  And I want it next week by Wednesday.

17       All right, Mr. Robertson?

18       MR. ROBERTSON:  Understood, Your Honor.  One

19  point of clarification because Your Honor had

20  indicated that you want to hear on the 28th the

21  motions in limine and the motion with respect to

22  striking aspects of the Weaver report.

23       I understand the process Your Honor wants us

24  to go through in order to be able to wrap your arms

25  around that issue.

1        Your Honor also indicated that I thought at

2   one point, please correct me if I'm wrong, that you

3   didn't need to hear argument on the motion for summary

4   judgment, holding the Bilski motion in reserve,

5   because you haven't had the full briefing on it.

6        THE COURT:   I don't know whether I want

7   argument on Bilski or not because I haven't done

8   anything but read the opening brief.

9        MR. ROBERTSON:   I know that.   I'm sorry.   I

10  meant the other motion for summary judgment that has

11  the six or seven separate issues.   I thought you

12  indicated you thought there were disputed issues of

13  fact.

14       THE COURT:   I think there are disputed issues

15  of fact in every one of them.

16       MR. ROBERTSON:   Just for preparation

17  purposes, Your Honor, since I'm arguing that motion,

18  I'd just like to be able -- do I not need to address

19  on the July 28 hearing?

20       THE COURT:   I'm going back and review all

21  this stuff over the weekend, and I'll let you know

22  Monday if I want argument on the invalidity and

23  infringement summary judgment motions.

24       MR. ROBERTSON:   Thank you, Your Honor.   That

25  will be appreciated.

1           THE COURT:  And the marking and the written

2    description.  Whatever is in that complete set other

3    than Bilski.  There are five or six different topics

4    in that motion, and then there's a separate one on

5    Bilski.

6           My inclination right now is there are

7    disputed issues of fact on all of those, and I will

8    let you know on Monday whether I want any argument or

9    not.

10          MR. ROBERTSON:  Thank you. Your Honor.

11          THE COURT:  All right.  Thank you all very

12   much.

13          MR. CARR:  Thank you, Judge.

14          MS. STOLL-DeBELL:  Thank you.

15          MR. ROBERTSON:  Thank you, Judge.

16

17          (The proceedings were adjourned at 4:53.)

18

19          I, Diane J. Daffron, certify that the

20   foregoing is a true and accurate transcription of my

21   stenographic notes.

22

                 /s/                    7/19/10
23   _____   _____
                 DIANE J. DAFFRON, RPR, CCR      DATE

24

25