IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF *e*PLUS INC'S OBJECTIONS TO DEFENDANT'S COUNTER DEPOSITION DESIGNATIONS, COUNTER-COUNTER DESIGNATIONS AND REVISED SUMMARY OF THE DEPOSITION OF DEAN HAGER**

Plaintiff, *e*Plus, Inc. ("*e*Plus"), through counsel, hereby submits the following specific objections to Defendant Lawson Software, Inc. ("Lawson")'s Counter-Deposition Designations of the deposition of Dean Hager and offers the following counter-counter designations and revised summary:

**Specific Objections**

| Defendant's Counter Designations | *e*Plus's Objections to Defendant's Counter Designations | *e*Plus's Counter-Counter Designations |
|---|---|---|
| 30:12-15 | | |
| 50:22-51:1; 51:3; 51:5-7; 51:9-13; 51:15-53:9 | 50:22-51:1; 51:3; 51:5-7; 51:9-13: 106 (counter-designated testimony bears no relation to corresponding designated testimony)<br><br>51:19-53:9: 106 (counter-designated testimony bears no relation to corresponding designated testimony) | |
| 56:2-16; 67:2-68:15; | 67:2-68:15: 106 (counter-designated testimony bears no | |

| Defendant's Counter Designations | *e*Plus's Objections to Defendant's Counter Designations | *e*Plus's Counter-Counter Designations |
|---|---|---|
| 263:1-264:11; 264:19-22 | relation to corresponding designated testimony)<br><br>263:8-264:11: 106 (counter-designated testimony bears no relation to corresponding designated testimony)<br><br>264:19-22: 106 (counter-designated testimony bears no relation to corresponding designated testimony) | |
| 79:7-12 | | |
| 79:21-80:6 | 80:4-6: 402 (witness did not know answer to question) | |
| 105:3-19; 107:3-19 | 107:3: 402 | |
| 109:6-19 | 109:6-15: 402 (witness did not know answer to question) | |
| 112:10-113:21 | 113:15-21: 402; 602 | |
| 126:13-15 | | |
| 235:2-237:6; 239:16-241:16 | | |

LIBNY/4928030.1

## Revised Summary

Designated testimony relates to:

Mr. Hager is the executive vice president of Strategic S3 and Strategic Human Capital Management Group at Lawson Software. He has held this title since June 1, 2009. Prior to that he was senior vice president of product management for four years. (10:13-11:4)

Mr. Hager's understanding is that Procurement Punchout Functionality in Lawson's S3 System is Lawson's internal (runs within the company) procurement software that has the capability of punching out to an externally-provided website and purchasing product off that website, and then bringing it into the procurement process. (18:12-19:4) He explained that Punchout is a separate product from Requisitions, Inventory Control, and Purchase Order, although it uses all three.[1] (116:8-9) Mr. Hager does not recall the exact time, but thinks Lawson procurement software has had this capability for at least three years, but not longer than ten years. (25:21-26:11) Mr. Hager verified that multiple statements that ePlus's counsel identified in a document (that Mr. Hager had not previously seen, because he is not a system administrator)[2] titled "Lawson Procurement Punchout Administration Guide, Version 9.0, November 2006" (L 0046293-332) are consistent with his understanding of how Procurement Punchout operates. (105:3-19; 107:13-19; 108:9-109:5; 109:20-114:20) He explained that Lawson does not approve products which a Lawson system user can select from at a punchout vendor website and does not provide a negotiation for prices of such products. (109:6-19)[3] Mr. Hager also verified that the process flow shown on page two of the PowerPoint presentation titled "Lawson Procurement Punchout" (LE 00181432-459) (which he had not previously seen)[4] is consistent with his understanding of the actual Procurement Punchout flow process. (126:13-15; 128:9-129:3)[5]

---

[1] Lawson proposed inserting this sentence into the summary. ePlus added the clause "although it uses all three" on fairness grounds.

[2] Lawson proposed that the text in the parenthesis should read: "that Mr. Hager had never seen, as he is not a system administrator." ePlus objects to this language, because it suggests that the document was not in front of Mr. Hager when he testified about it.

[3] Lawson proposed inserting the sentence "He explained that Lawson does not approve products in the process and does not provide a negotiation for prices." ePlus added language to clarify that the context of the witness' testimony related to the use of Lawson's Procurement Punchout application to browse vendor websites to "select from approved products" on such websites.

[4] Lawson proposed that the text in the parenthesis should read: "that he had never seen." ePlus objects to this language, because it suggests that the document was not in front of Mr. Hager when he testified about it.

[5] Lawson proposed to add the following two sentences to the end of this paragraph: "Not all of Lawson's customers have Procurement Punchout, Lawson won the healthcare market before it offered Procurement Punchout, Procurement Punchout does not drive S3 sales, and Lawson has never won a sale merely because of its Punchout product. (263:8-264:11)." ePlus objects to these proposed sentences because they summarize counter-designated testimony that bears no relation to the corresponding designated testimony. ePlus has objected to the underlying counter-designations on this same ground. These sentences are also unrelated to the subject

3

The bulk of the sales of Lawson's S3 System are in the U.S.  In the year preceding the date of the deposition, more than ninety percent of the sales were in the U.S.  (30:5-11)  The bulk of Lawson's M3 System sales are not in the United States.[6] (30:12-15)

Most Lawson customers have the Requisitions engine with Purchase Order, and they send Electronic Data Interchange ("EDI") transactions to whoever the vendor is to purchase products.[7] Lawson provides a product that allows EDI transfers to take place, but Mr. Hager is not sure of the technical details. Very few customers actually go out and shop on an external site and purchase in that way.[8] (46:22-47:14)

Inventory management allows an organization to keep track of how many of a particular item the organization has in its inventory for its own use, as opposed to for use in a product that the organization makes and sells.  The S3 systems can perform inventory management through the Inventory Management module.  (49:19-50:21)  The inventory control module tracks the inventory of goods that have already been acquired by a buyer.[9] (79:7-12)

Lawson performs some competitive research.  For the S3 business unit, Melissa Gray is the leader of the group that performs competitive research.  Her group reviews external information and writes competitive-research reports that are distributed to the sales group.  The company has access to industry reports from Gartner, Forrester, Aberdeen, and AMR.  Ms. Gray's group reviews this information.  Mr. Hager reviews these external reports from time-to-time.  (53:10-56:16)  Lawson competes with McKesson, Oracle, SunGard, Tyler, Ultimate, and SucessFactors.  Lawson rarely competes with Ariba.  Prior to the *e*Plus lawsuit, Mr. Hager had never heard of

---

matter of this paragraph, which subject matter pertains to the operation of Procurement Punchout.

[6]  Lawson proposed to add this sentence.  Lawson's proposal used the word "most" instead of the "the bulk."  *e*Plus objects to Lawson's choice of words, because "the bulk" is the exact terminology that the witness used.

[7]  Lawson proposes to edit this sentence to replace "most" with "some" and to replace "they" with "of those that have both."  *e*Plus objects to these suggested edits as mischaracterizing the witness's testimony.

[8]  Lawson proposed the last two sentences in this paragraph.  However, under Lawson's proposal these two sentences appear in inverse order.  Additionally, under Lawson's proposal the current first sentence would read: "Mr. Hager is not sure of the technical details, but thinks Lawson provides a product that allows transfers to take place."  To the extent that these two sentences in the revised summary differ from Lawson's proposal, ePlus objects to Lawson's proposal under Fed. R. Evid. 403 as misleading and confusing the issues.

[9]  Just before the last sentence, Lawson proposes to add the sentence: "Lawson does not create internal catalogs for their customers to use. (50:22-51:18)."  *e*Plus objects to this proposed sentence because this sentence is a summary of counter-designated testimony that bears no relation to the corresponding designated testimony.  *e*Plus has objected to the underlying counter-designation on this same ground.

4

*e*Plus.[10] (52:19-53:9; 263:1-264:11; 264:19-22)

In contrast to the Requisitions module, which would be used by the purchasing department, Requisitions-Self-Service ("RSS") can potentially be used by any company employee through his or her laptop. It allows an employee to generate a requisition on his or her own, without having to call up the requisition department. (77:22-78:13) A user can search catalogs through RSS by selecting the "Search Catalog" option in the "Find/Shop" dropdown menu. (130:7-131:6)

Lawson demonstrates its software to its customers. A routine way it does this is by taking a laptop loaded with the software to its customer's site. Lawson has laptops loaded with the Supply Chain Management application of the S3 product line—including the Requisitions, Purchase Order, Inventory Control, RSS, and Procurement Punchout modules—that its sales force uses for demonstrations. The laptop computer does not need to have Internet access in order to provide or demonstrate the functionality. (91:22-92:18; 93:1-94:17.)

For each customer, Lawson breaks down its licensing and maintenance revenues down to the granularity of a particular software module. In other words, for each customer, Lawson documents the licensing and maintenance revenue attributable to a particular module of a particular application in a particular product line. For service revenue, however, Lawson does not report revenue to this level of granularity. Instead, Lawson reports service revenue by customer. A services contract is entirely charged against a specific customer project. The amount of hours that the individual is on-site working on one product versus another is completely unknown. Lawson does not track their hours in that way. Mr. Hager explained that unless Lawson performed some business value services that are unrelated to the product, which Lawson occasionally does, all implementation services for an S3-only customer would generally be S3-related.[11] Mr. Hager explained that there are examples within the company where the customer has only purchased an S3 product line and certain applications within that product line, and that would be typical as opposed to atypical. (118:14-120:18; 120:20; 67:2-68:15)

Lawson Software Foundation ("LSF") is the technology platform on which both the S3 and the M3 products run. (147:12-22) It includes IBM's WebSphere product. (150:9-12). If a customer purchases S3 or M3, it will, in just about all instances, also require LSF. (150:21-151:5) Revenues attributable to LSF are typically bundled into the revenues for the underlying S3 or M3 purchase. (150:13-20)

Contract revenue is an internal Lawson metric that reflects the full value of the contract. Depending on how a contract is written, Lawson will recognize a percentage of the contract

---

[10] Lawson proposed this last sentence in the paragraph. Lawson's proposal, however, included the word "Lawson" instead of "Mr. Hager." *e*Plus objects to Lawson's word choice as mischaracterizing the witness's testimony.

[11] Lawson proposed this sentence in a different form. Lawson's proposal was: "Mr. Hager explained that unless there were some business value services that are unrelated to the product, which Lawson occasionally does, in general implementation services, if it is an S3 only customer, would be S3-related." To the extent that the sentence in the revised summary differs from Lawson's proposal, *e*Plus objects to Lawson's proposal as confusing and misleading.

5

revenue as license revenue. Thus, license revenue is a subset of contract revenue. Service and maintenance revenue is not a part of contract revenue. Lawson does not report contract revenue externally. (217:5-218:15; 219:14-19; 220:7-221:2)

Respectfully submitted,

_____/s/_____
Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson (admitted *pro hac vice)*
Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
SRobertson@goodwinprocter.com
JAlbert@goodwinprocter.com
DYoung@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
MSrapp@goodwinprocter.com
JClements@Goodwinprocter.com

*Attorneys for Plaintiff, ePlus Inc.*

Dated:  August 11, 2010

7

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC'S OBJECTIONS TO DEFENDANT'S COUNTER DEPOSITION DESIGNATIONS, COUNTER-COUNTER DESIGNATIONS AND REVISED SUMMARY OF THE DEPOSITION OF DEAN HAGER**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis. MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
lawsonscrvicc@)merchantgould.com

Robert A. Angle (VSB# 37691)
Dabney J. Carr, IV (VSB #28679)
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA  23218-1122
Telephone:  (804) 697-1238
Facsimile:  (804) 698-5119
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

                                                                   */s/*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com

LIBW/1736775.2