

DABNEY J. CARR IV
804.697.1238 telephone
804.698.5119 facsimile
dabney.carr@troutmansanders.com

TROUTMAN SANDERS LLP
Attorneys at Law
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122 (23218-1122)
Richmond, Virginia 23219
804.697.1200 telephone
troutmansanders.com

July 19, 2010

**BY MESSENGER**

The Honorable Robert E. Payne
United States District Court for the
Eastern District of Virginia
Federal Courthouse - Room 3000
701 East Broad Street
Richmond, Virginia 23219

      Re:    ePlus, Inc. v. Lawson Software, Inc.
             Civil Action No. 3:09cv620

Dear Judge Payne:

      During the conference call last Friday, you indicated that you were considering whether and on what issues to hear oral argument regarding Lawson's summary judgment motion. You were specifically concerned that there were questions of fact underlying all bases on which Lawson moved. While Lawson believes that there are no legitimate, *material* issues of fact underlying any of the six grounds for summary judgment raised in the motion, this is particularly true for the marking, direct infringement, and indefiniteness issues, and Lawson respectfully requests that the Court grant oral argument at lease on these three issues.

**<u>Absence of Marking:</u>**

      Regarding marking, despite ePlus's efforts to dispute Lawson's statement of undisputed facts, there can be no dispute as to the following facts:

1. ePlus filed suit against SAP accusing SAP of infringing the three patents at issue in this lawsuit.
2. In the SAP lawsuit, ePlus accused the following four SAP products of infringing the patents-in-suit: SRM, ERP, CRM, and mySAP Business Suite ("SAP Accused Products").
3. The ePlus v. SAP lawsuit ended in a settlement wherein ePlus granted SAP a license under the patents-in-suit.
4. SAP paid ePlus $17.5 million for the license.
5. The License Agreement gives SAP the right to sell product that in the absence of such agreement would infringe the patents-in-suit.

ATLANTA   CHICAGO   HONG KONG   LONDON   NEW YORK   NEWARK   NORFOLK   ORANGE COUNTY   PORTLAND
RALEIGH   RICHMOND   SAN DIEGO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC

**TROUTMAN SANDERS**

The Honorable Robert E. Payne
July 19, 2010
Page 2

6. The SAP License Agreement specifically mentions the four SAP Accused Products (SRM, ERP, CRM, and mySAP Business Suite).
7. During settlement negotiations, ePlus tried to get SAP to agree to mark the SAP Accused Products with its patents, but SAP refused.
8. ePlus decided to take the $17.5 million and "move on" without requiring SAP to mark.
9. The SAP License Agreement does not require SAP to mark any products with ePlus's patent numbers.
10. SAP testified that it has continued to sell the SAP Accused Products since it took a license under the patents-in-suit.
11. SAP testified that it has not made any changes to the SAP Accused Products because of the patents-in-suit, the ePlus litigation, or settlement agreement.
12. As of 2005, SAP was selling more than $100 million of accused products per year.
13. SAP has not marked any of the SAP Accused Products with the patents-in-suit.

ePlus tries to create a question of fact by asserting that Lawson has not proven that the patents-in-suit cover the SAP Accused Products. During the SAP litigation, however, *ePlus claimed that the SAP Accused Products infringed the patents-in-suit*, and it cannot escape that contention now. ePlus bears the burden of proof on marking, but provides no evidence that the SAP Accused Products that SAP continues to sell are any different from the products that ePlus contended infringed the patents. To the contrary, SAP's witness provided undisputed testimony that SAP did not change these products to avoid the patents. ePlus cannot avoid summary judgment based solely on an unsupported claim, especially when that claim is the polar opposite of its contentions before this Court during the SAP litigation. Lawson respectfully requests oral argument on this portion of its summary judgment motion.

### No Direct Infringement:

Regarding the system claims, ePlus does not dispute: 1) the accused system claims require a computer; 2) Lawson does not sell computers; 3) the accused system claims require a database or collection of catalogs; and 4) when Lawson sells its software, the Item Master database is empty. Rather, ePlus argues that when Lawson installs its software on its customer's computers and uploads data to its customer's computers that it "makes" an accused system and thus directly infringes. ePlus thus concedes that Lawson is not liable for direct infringement of the system claims except when it both provides implementation services to install its software on its customer's computers and it offers data import services to assist its customers in uploading data to the Item Master database. Thus, Lawson is entitled to summary judgment of no direct infringement for its software sales and services *other than* instances in which it provided installation services and data import services to a particular customer.

Regarding the method claims, ePlus does not dispute that Lawson does not practice all of the method steps *except* for when Lawson presents a demonstration of its system to its

**TROUTMAN
SANDERS**

The Honorable Robert E. Payne
July 19, 2010
Page 3

customers. However, ePlus cannot point to any evidence to show that Lawson generated any actual purchase orders, as required by the claims, during any demonstration. Thus, this is not a legitimate factual dispute. Lawson requests a hearing on this issue.

## Indefiniteness:

Lawson's motion for summary judgment that the means plus function claims are indefinite is a question of law to be decided by this Court, and so there is no dispute of fact which prevents the Court from ruling on this issue. *Encyclopedia Britannica, Inc. v. Alpine Elecs., Inc.* 355 Fed. App'x 389, 392 (Fed. Cir 2009) (citing *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009)).

Sincerely,

Dabney Carr

cc:   Counsel of Record - BY E-MAIL

1961909