6

# EXHIBIT F

```
1                IN THE UNITED STATES DISTRICT COURT

2                FOR THE EASTERN DISTRICT OF VIRGINIA

3                          RICHMOND DIVISION

4

5     ---------------------------------------
                                              :
6     ePLUS, INC.                             :    Civil Action No.
                                              :    3:09CV620
7     vs.                                     :
                                              :
8     LAWSON SOFTWARE, INC.                   :    July 28, 2010
                                              :
9     ---------------------------------------

10

11         COMPLETE TRANSCRIPT OF THE MOTIONS HEARING

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13                 UNITED STATES DISTRICT JUDGE

14
      APPEARANCES:
15
      Scott L. Robertson, Esquire
16    Michael G. Strapp, Esquire
      Jennifer A. Albert, Esquire
17    Goodwin Procter, LLP
      901 New York Avenue NW
18    Suite 900
      Washington, D.C.  20001
19
      Craig T. Merritt, Esquire
20    Christian & Barton, LLP
      909 East Main Street
21    Suite 1200
      Richmond, Virginia  23219-3095
22    Counsel for the plaintiff

23

24                   Peppy Peterson, RPR
                    Official Court Reporter
25              United States District Court
```

```
 1   APPEARANCES:  (cont'g)

 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   1001 Haxall Point
     Richmond, Virginia  23219
 4
     Daniel W. McDonald, Esquire
 5   Kirstin L. Stoll-DeBell, Esquire
     Merchant & Gould, PC
 6   80 South Eighth Street
     Suite 3200
 7   Minneapolis, Minnesota  55402
     Counsel for the defendant
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

217

1 should have raised it earlier with me and with them, and
2 perhaps there's some truth to that.
3   MS. STOLL-DeBELL: So my response to that is, Lawson
4 should not have to suffer for this, and we will suffer unless
5 you grant our motion. If we have to do a continuance and look
6 at hiring another expert, that's substantially more cost in a
7 case that has cost already a lot of time and money, frankly,
8 Your Honor.
9   THE COURT: I'm well aware of that one.
10   MS. STOLL-DeBELL: So, you know, and allowing them to
11 just get by with violating this rule and put on two experts is
12 not fair to Lawson either. It's very prejudicial.
13   THE COURT: I understand your point.
14   MS. STOLL-DeBELL: I would ask that you keep those
15 things in your mind, Your Honor.
16   THE COURT: I've had them in my mind as I've been
17 reading these things. I understand where you are and what the
18 situation is. It's clear from the papers. I probably could
19 have decided this without argument, but I felt like it was only
20 fair to hear. Okay, thank you.
21   Well, the scheduling order says only one expert per
22 discipline is permitted except by order of the Court. In
23 February, or in March, I guess it was -- when was it you made
24 your disclosures, 16(b) that you rely on?
25   MS. STOLL-DeBELL: October.

218

1   THE COURT: October, yes. October ePlus identifies
2 its experts, describes their fields of expertise, and there's
3 significant overlap in them, very significant overlap. And
4 then there is identified what the true state of affairs is when
5 the expert reports are filed. And as it turns out, Mr. Weaver
6 is addressing both infringement and invalidity, and Mr.
7 Niemeyer is addressing a basic subject related to the issue of
8 infringement that is needed by Mr. Weaver in order to formulate
9 his opinions. Mr. Hilliard is addressing just two components
10 of the aspect of invalidity.
11   Right after that occurred -- when were those reports
12 filed, the infringement report?
13   MS. STOLL-DeBELL: I believe it was May 5th.
14   THE COURT: Within a couple of days after that, the
15 defendants complained of the problem to ePlus, and ePlus --
16 neither ePlus nor the defendants then came to the Court and
17 raised it at a point in time when something could have been
18 done about it.
19   Something can be done about it now, and then mindful
20 of the scheduling for motions *in limine*, ePlus thought the best
21 way to deal with it, after they got Lawson's response, was to
22 file a motion *in limine* promptly which they did and acted
23 properly in doing that.
24   The problem that I see here is that the Court has a
25 role in not clarifying what "one per discipline" means, and it

219

1 is not right for the parties to be saddled with the
2 consequences of the Court's failure to be precise in its
3 orders.
4   Mr. Robertson is correct that the purpose of that
5 provision is to avoid redundant, cumulative expert testimony
6 and the situation that is presented when you have three experts
7 testifying essentially to the same thing and you're trying
8 to -- and one side is forced then to try to meet the number of
9 experts that the other side puts on.
10   That was the intent of the provision, and it's the
11 way it's been applied over the years. So I can't say ePlus's
12 interpretation of the word "discipline" is wrong in perspective
13 of its representations that there will be no overlapping
14 testimony. I can't say either that the testimony -- that the
15 interpretation of Lawson was wrong in respect of its
16 interpretation of the matter.
17   Under the circumstances, it's important to remember
18 that under Rule 1 of the Federal Rules, it is the purpose of
19 all the rules, federal and local, to achieve a prompt or a
20 speedy, just, and efficient resolution of cases. So this rule,
21 this order has to be interpreted in respect of the basic
22 concepts of fairness and justice as well.
23   Doing that in this case under the circumstances of
24 this case, so long as there isn't any overlapping testimony,
25 justice can best be served by denying this motion and allowing

220

1 ePlus leave to have either -- I mean Lawson, excuse me, it's
2 been a long day -- to have time to have another expert if it so
3 desires if it feels like it's disadvantaged in the area of
4 source code. I think that -- I'm sure that your own people,
5 you can probably do that in-house, but if you need to go
6 outside, you can go outside, and you can meet Mr. Hilliard's
7 testimony with another expert if you so desire.
8   I think that in that way -- I regret the Court's
9 failure to define the matter more precisely, and I regret that
10 you all didn't bring this to me when it first came up, because
11 I would have solved it by extending your time for getting
12 experts and giving you some extra leeway had it been brought to
13 me, but I don't think that the result that should obtain here,
14 notwithstanding that you all didn't come to the Court as early
15 as you should have, is to prejudice the outcome of the case by
16 striking experts which will, in effect, mean that one party or
17 the other is left without evidence on a topic thereby
18 resulting, or almost assuredly resulting, in a Rule 50(b)
19 motion that will be based on something that's artificial and
20 not in the interest or the spirit of the enforcement of the
21 rules, nor do I think it's fair to keep Lawson tied to where it
22 is right now.
23   It doesn't have to have any other experts. I need
24 for you to fish or cut bait very quickly, but you have every
25 right to talk to your client and caucus among yourselves, and I

## 221

1 didn't really mean to put you in the position that you had to
2 answer right today, but you handled it correctly by saying you
3 had to go talk to somebody, and you're absolutely right. You
4 had to.
5          So that will be the ruling in this motion. How much
6 more do we have in the way of motions? How many, Mr. --
7          MR. McDONALD: I think we have two left, Your Honor,
8 one on the demonstration system and the other on the third
9 party, the South Jersey customer's deposition, and two
10 demonstrations.
11          THE COURT: I think we ought to take a little break.
12 I'll tell you, I'm worried Ms. Peterson is going on strike here
13 anyway, so we'll take about a 15-minute recess, and then we'll
14 try to finish these up this afternoon.
15
16          (Recess taken.)
17
18          THE COURT: Which goes first, ePlus's four or
19 Lawson's nine? Excuse me, Mr. Robertson.
20          MR. ROBERTSON: Sorry, Judge.
21          THE COURT: Which goes first, ePlus's four or
22 Lawson's nine? They both are demonstrations sort of generally.
23          MS. ALBERT: I'll address ePlus number four first if
24 the other side doesn't --
25          THE COURT: Is that okay with you?

## 222

1          MR. McDONALD: That's fine.
2          MS. ALBERT: So, Your Honor, ePlus's motion *in limine*
3 number four addresses these Lawson re-created legacy system
4 demonstrations that are purported to be demonstrations of
5 Lawson system version five and six. As an overview, on our
6 slide 14, the defendant has conceded that the alleged Lawson
7 legacy systems postdate the prior art date of the patents in
8 suit.
9          Much of the relevant source code for these systems
10 was created after August 1994 as demonstrated by the
11 defendant's own documents. Virtually all of the hardware,
12 middle ware, and operating system software that was used for
13 these demonstration systems postdates 1994.
14          The witness who --
15          THE COURT: You all talk about the legacy system.
16 What are you talking about? Is it V6 and V5?
17          MS. ALBERT: Correct, Your Honor. They are
18 represented by Lawson to be version five and version six
19 systems, but it is ePlus's contention that these are not
20 accurate depictions of the Lawson version five and version six
21 systems, because much of the relevant source code for these
22 systems was actually created after the fact. They postdate --
23          THE COURT: After the fact of what?
24          MS. ALBERT: After these systems were represented to
25 have been commercially available. They are also after the

## 223

1 prior art date of the patents in suit, August 10th of 1994, so
2 they are not relevant to show any prior art system. And the
3 hardware, middle ware, and operating system software that was
4 used in these re-created demonstrations, virtually all of that
5 postdates 1994.
6          The witness who proffered the systems could not
7 authenticate that the systems were what they are purported to
8 be by Lawson, so under Rule 901, they should be excluded on
9 that basis. And it's ePlus's position that any demonstration
10 of systems would be highly prejudicial because they would be
11 likely to mislead the jury to think that these are actual
12 Lawson version 5.0 and version 6.0 systems when they are not.
13          THE COURT: Why does 5.0 and 6.0 come into the case
14 at all anyway?
15          MS. ALBERT: Well, I think under Your Honor's orders
16 on the various motions *in limine*, now the admissibility of
17 evidence related to these systems is limited to that one
18 element of the one claim that relates to the means for
19 searching for matching items in the database. I think that's
20 claim three of the '683 patent, and that's the only issue for
21 which --
22          THE COURT: How does this relate to the -- that's an
23 infringement issue, isn't it?
24          MS. ALBERT: I think it was related to a validity
25 issue in that Dr. Shamos dealt with that issue in his

## 224

1 invalidity report, and I think --
2          THE COURT: Fill me in on that. Because this system
3 is for prior art; is that what that is?
4          MS. ALBERT: Well, I believe that they would intend
5 to put this demonstration on at trial in order to establish
6 that the Lawson version 5.0 and version 6.0 systems could
7 perform that element of that claim.
8          THE COURT: So that's an invalidity issue, because
9 it's prior art; is that what the point is?
10          MS. ALBERT: That's what Lawson's contention is, the
11 version 5.0 and version 6.0 systems are prior art systems, but
12 these demonstration systems are not prior art systems. They
13 don't predate the date of the patents because the source code
14 that was used for the systems actually postdates August of '94,
15 and the hardware, the middle ware, and the operating system
16 software postdates 1994. Can you turn to the next slide,
17 please.
18          Slide 15 illustrates some of the source code file
19 directories that were produced by Lawson relating to the source
20 code that was compiled in order to generate these demonstration
21 systems. We've highlighted just an excerpt of these -- it was
22 about a hundred-page document of the source code file listings
23 just to show that, you know, Lawson acknowledges that many of
24 the source code files that are included in the source code that
25 was used for these re-created demonstration systems actually