1

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
2               RICHMOND DIVISION

3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                      :
4   ePLUS, INC.,                      :
                                      :
5                     Plaintiff,      :
     v.                               :   Civil Action
6                                     :   No. 3:09CV620
    LAWSON SOFTWARE, INC.,            :
7                                     :   August 17, 2010
                      Defendant.      :
8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9


10


        COMPLETE TRANSCRIPT OF CONFERENCE CALL
11        BEFORE THE HONORABLE ROBERT E. PAYNE
            UNITED STATES DISTRICT JUDGE
12


13


14   APPEARANCES:   (All via telephone)

15   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
16   GOODWIN PROCTOR
     901 New York Avenue, NW
17   Washington, D.C.   20001

18   Michael G. Strapp, Esq.
     GOODWIN PROCTOR
19   53 State Street
     Boston, MA   02109
20
     Craig T. Merritt, Esq.
21   Henry I. Willett, III, Esq.
     CHRISTIAN & BARTON
22   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095
23
            Counsel for the plaintiff ePlus
24
                DIANE J. DAFFRON, RPR
25            OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT

1    APPEARANCES:   (Continuing)

2    Daniel W. McDaniel, Esq.
     William D. Schultz, Esq.
3    MERCHANT & GOULD
     80 South 8th Street
4    Suite, 3200
     Minneapolis, MN   55402
5
     Kirstin L. Stoll-DeBell, Esq.
6    MERCHANT & GOULD
     1050 17th Street, Suite 1950
7    Denver, CO   80265

8    Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
9    Troutman Sanders Building
     1001 Haxall Point
10   P.O. Box 1122
     Richmond, VA   23218-1122
11
              Counsel for the defendant Lawson Software
12

13   ALSO PRESENT:

14   Leslie Wagner, Law Clerk

15

16

17

18

19

20

21

22

23

24

25

```
 1              (The proceedings in this matter commenced at
 2     2:15 p.m.)

 3

 4              THE COURT:  Hello.  This is ePlus against
 5     Lawson.  And who is here for whom, please?
 6              MR. MERRITT:  Craig Merritt and Henry Willett
 7     for ePlus.
 8              MR. ROBERTSON:  Scott Robertson.  And with me
 9     are my partners, Ms. Albert and Mr. Strapp for ePlus.
10              MR. CARR:  Dabney Carr for Lawson Software.
11              MR. McDONALD:  Dan McDonald, Will Schultz and
12     Kirstin Stoll-DeBell for Lawson.
13              THE COURT:  All right.
14              I apologize for having to change the schedule
15     on you.  And now that you've looked at these various
16     issues and tried to work up your final pretrial order,
17     how much do we have to go over in the final pretrial
18     conference?  I'm looking at how long it will take.
19              MR. ROBERTSON:  Your Honor, this is
20     Mr. Robertson.  Maybe I can address that, and then I
21     might pass the baton to my partners who have been
22     dealing with and working with Lawson's counsel
23     probably from the beginning of last week, Your Honor.
24              I think we've been making discussions on a
25     daily basis.  I think those discussions have gone
```

1   well.  I think we've worked diligently together to try

2   to narrow the issues.  We have a very solid working

3   draft that I think we'll be able to present to the

4   Court probably I would anticipate by Thursday of this

5   week, but don't want to speak out of turn.  I'll let

6   others, including Lawson, weigh in on that.

7        We've narrowed a number of the issues with

8   respect to witnesses who will be appearing live so can

9   avoid deposition designations and the attendant

10  objections that go with those designations, and take

11  those off the Court's plate.

12       There's a very narrow number of witnesses now

13  that would need to be designated.  We're working hard

14  to try and resolve exhibit objections and focus those

15  into groups so that the Court can deal with it.  So

16  let me cut to the chase.

17       You know, I don't envision, but I'll be happy

18  to let everybody weigh in, that this would not last

19  more than two hours would be my projection.  But

20  people who have been closer to it, including

21  Mr. Schultz and Ms. Kirstin Stoll-DeBell, Ms. Albert

22  and Mr. Strapp, who actually were on the phone today

23  from about noon to 1:30, Your Honor, trying to narrow

24  and resolve a lot of these issues.

25            THE COURT:  All right.

1          Who is going to comment?

2          MR. McDONALD:  This is McDonald for Lawson.

3          Does anybody else from ePlus want to add to

4    what Scott just said?  I'll let you do that before we

5    respond.

6          MS. ALBERT:  I think Scott's characterization

7    is fair concerning the efforts we've made to narrow

8    the scope of the issues for the pretrial conference.

9          THE COURT:  Who was that?

10         MR. ROBERTSON:  This is Mr. Robertson again.

11   We're not without our disputes, and we want to focus

12   those, and we will be raising them.  In fact, we may

13   be filing a motion with regard to Lawson's damages

14   expert, Mr. Green, tomorrow, which we narrowed with

15   Lawson today.  So there are still points of

16   disagreement, but we are working diligently to

17   minimize those.

18         THE COURT:  Who was the lady who spoke

19   earlier?

20         MS. ALBERT:  I'm sorry.  That was Ms. Albert

21   for ePlus.

22         THE COURT:  All right.  You said he was

23   correct respecting the efforts that had been made, but

24   you didn't say anything about the results of the

25   efforts.  Do you concur?

1          MS. ALBERT:  Well, I'll defer to Lawson's

2    counsel, but I think that it is correct that we have

3    been working on it on almost a daily basis to narrow

4    the scope of the issues.  We have narrowed the number

5    of objections on exhibits, and we're continuing to

6    work on exhibits, and we have narrowed the scope of

7    the issues regarding the deposition designation issues

8    that need to be discussed, and we are close to getting

9    a draft of the pretrial order ready for filing.

10          MR. McDONALD:  Your Honor, this is McDonald

11    for Lawson if you'd like to hear my reaction to that.

12          THE COURT:  Sure.

13          MR. McDONALD:  I'm pretty much in agreement

14    with everything that's been said so far.  I'll defer

15    to Mr. Schultz or Ms. Stoll-DeBell to add anything,

16    but I think the deposition designations issue is a

17    perfect example.  There were all sorts of objections

18    and cross-designation objections line by line, but

19    we've reached some agreements on live testimony that's

20    going to eliminate needing to read in the vast

21    majority of those depositions.

22          So I do think the bottom line is we have

23    narrowed the issues.  There are some issues, but I

24    think even though they may affect a large number of

25    exhibits, for example, we are going to be able to

7

1    group them into a relatively small number of issues.

2    I think two hours is probably a little ambitious.  I

3    would say it's more likely three hours or maybe a

4    little over that, but I think that's the ball park.

5           THE COURT:  All right.

6           That being the case, I can do that on August

7    31 or September 7.  What does that do other than bring

8    silence to the table?

9           MR. ROBERTSON:  Your Honor, this is

10   Mr. Robertson.

11          August 31, I think, would be preferable to

12   us.  There are a few issues that I would like to bring

13   to the Court's attention before we get to the

14   pretrial.

15          As I indicated, we contemplate filing a

16   motion tomorrow with respect to Lawson's damages

17   expert Mr. Green.

18          THE COURT:  What motion is that, did you say?

19          MR. ROBERTSON:  Well, Your Honor, I think

20   it's a motion to strike Dr. Green's testimony as

21   Lawson's damages expert given Your Honor's previous

22   ruling as to the underlying factual predicate that he

23   relies upon for his opinions.  And we've had an

24   opportunity to reflect on that.  We've had an

25   opportunity to reflect on the Court's ruling with

1   respect to Dr. Mangum.

2          We understand and appreciate the Court

3   understands and appreciates that we respectfully

4   disagree, but it is what it is, and given that, we'd

5   like to raise this issues with the Court earlier

6   rather than later so that the Court has it in front of

7   it.

8          There are some other issues.

9          THE COURT:  So wait a minute.  Excuse me.

10  You're filing a motion on Dr. Green's testimony

11  tomorrow, you say?

12         MR. ROBERTSON:  Yes, sir.

13         THE COURT:  And when are you going to expect

14  a reply?  It's now the 17th of August.

15         MR. ROBERTSON:  I would think before the

16  31st we'd have a reply.

17         THE COURT:  Well, the 18th, you're going to

18  file tomorrow.  You're going to file it on the 18th.

19  They're going to have a period for response, and then

20  you're going to need to reply, I guess, and the

21  standard timeframes under the local rules for

22  responses and replies does not allow for that to be

23  heard by August 31.  So let's think about that and

24  table that issue.

25         MR. ROBERTSON:  Perhaps we can agree on an

1   expedited schedule.  I just wanted to get it out

2   there.

3           THE COURT:  I understand.  I said let's table

4   it and we'll come back to it.

5           What else did you want to raise so we'll all

6   know what we're talking about?

7           MR. ROBERTSON:  Fair enough, Your Honor.

8           Your Honor may recall you permitted Lawson to

9   identify two additional expert witnesses.

10          THE COURT:  Yes.

11          MR. ROBERTSON:  They have now identified

12  those, and they have represented to us, although I

13  want to make sure I'm correct on this, that they're

14  going to submit reports on August 25, and we get an

15  opportunity to depose them sometime after that, which

16  would probably be the week of August 30.

17          We're concerned about those because during

18  our discussions with Lawson on these meet and confers,

19  for example, they represented to us that the source

20  code expert will be addressing Lawson's 7.0 source

21  code.

22          Now, Your Honor will recall that you ruled

23  that the 5.0 version and the 6.0 version was off the

24  table with respect to almost every issue including

25  demonstrations, arguments concerning non-infringing

1    alternatives and lack of willfulness.

2         Apparently, now Lawson's position is that 7.0

3    is now on the table because the Court's ruling wasn't

4    specific as to that, but only 5.0 and 6.0.  And so the

5    same arguments are being raised as part of

6    non-infringing alternatives, lack of willfulness, etc.

7         THE COURT:  Was 7.0 ever on the table?  I

8    don't remember it, but I've got a lot of cases, and I

9    could be wrong.

10        MR. ROBERTSON:  It's our position that it was

11   not, Your Honor.

12        THE COURT:  Then I'm sure I'll get a proper

13   motion from you when you get a reply.

14        MR. ROBERTSON:  Exactly.  Your Honor was

15   asking what issues are on the table.  That's another

16   issue.

17        THE COURT:  All right.  What else?  Anything

18   else?

19        MR. ROBERTSON:  Yes, sir.  There's a newly

20   identified invalidity expert.  He was one of Lawson's

21   fact witnesses before.  Now he's been designated as an

22   expert.  There's a couple issues we're going to raise

23   with regard to that.

24        No. 1 is it's going to be difficult and

25   confusing to the jury to understand when he's wearing

his fact witness hat and when he puts on his expert
witness hat, but there are ways to deal with that, and
we'll be happy to make proposals to the Court as to
when he can be an expert or when he's just testifying
in his percipient factual witness capacity.

The second issue is that it's been
represented to us that he will be raising theories
that go outside of the scope of what Your Honor has
ruled is the four corners of the invalidity theories
that the witnesses can present.

I thought we addressed that issue last
Thursday.  Ms. Stoll-DeBell wasn't on that call.  That
was the call regarding Dr. Mangum.  I raised this
issue again on the call.  The Court indicated that
there would not be any new theories on invalidity
rulings.  There was a ruling, but we're a little
confused.

THE COURT:  I was sure on the last call and
I'm sure now that there will be no expert testimony on
invalidity theories that weren't disclosed pursuant to
the orders.  That issue has previously been briefed
and decided.  I'm not going to revisit that issue.  If
I was wrong, I was wrong, but that's going to be the
rule, and I'm sure Lawson will abide by it, won't you,
Ms. Stoll-DeBell?

1      MS. STOLL-DeBELL:  Yes, Your Honor.

2      THE COURT:  And if you don't, if your toe is

3  off base, your expert's foot is off base, the hatchet

4  will come down upon it, and your expert will go out

5  the door.

6      Now, that's what happens here if you-all

7  start transcending the rulings that have been

8  previously made defining the boundaries.  So I know

9  they won't do that.  So we don't have that problem

10 now, and we'll just abide the event.

11     Next?  Anything else?  That's it, isn't it?

12     MR. ROBERTSON:  No.  The last issue, sir, and

13 this is, you know, in anticipation of filing this

14 motion tomorrow with respect to Dr. Green.

15     One of the issues, you'll recall, was a

16 discussion about whether the depositions of the

17 damages experts actually were part of -- part and

18 parcel of the disclosure under Rule 26 of the Federal

19 Rules of Civil Procedure.

20     And I understood and appreciated that Mr.

21 McDonald confirmed that that arrangement was agreed

22 upon.

23     Dr. Mangum did opine on Dr. Green's opinions

24 in his deposition and rebuttal.  His only opportunity

25 to do so.

1        We understand the Court's ruling with respect

2    to Dr. Mangum's affirmative opinions, and we're not

3    questioning that, but we would respectfully suggest

4    that Dr. Mangum still have an opportunity, to the

5    extent that Dr. Green is permitted to testify after

6    the Court reviews the briefing, to be able to take the

7    witness stand and respond to any opinions offered by

8    Dr. Green.

9        That'll be part of the briefing.  I just

10   wanted to bring it to the Court's attention now so

11   that there were no surprises later on.

12        THE COURT:  I'm sure you don't want to go out

13   with one foot missing either.  And you will go out if

14   you start trying to do the same things.

15        Counsel and the experts just are going to hit

16   the road if you try to infringe upon the previous

17   rulings.  To the extent that they don't do that, you

18   don't take that course, I'll just have to deal with it

19   as it's presented to me.

20        MR. ROBERTSON:  I have one last final issue,

21   Your Honor, if you might indulge me.  I'll be brief.

22        THE COURT:  You already had the final issue.

23        MR. ROBERTSON:  All right.  I just wanted to

24   apprize the Court, but we can raise it at the

25   pretrial, sir.

1        THE COURT:  But you just said there's one

2   last issue.

3        MR. ROBERTSON:  Well, it's related, sir, to

4   the damages issue.

5        THE COURT:  Oh, okay.  What is it?

6        MR. ROBERTSON:  That is we don't have a

7   damages expert, but we respectfully suggest we still

8   have a damages case, and we are going to have to prove

9   that through facts that we're going to put in front of

10  the jury as to accused revenue that we have derived

11  from interrogatory answers, document productions, and

12  corporate Rule 30(b)(6) designated testimony.

13       And the statute states outright that district

14  court shall not grant anything less than a reasonable

15  royalty as part of damages.

16       So while I understand I will not have

17  Dr. Mangum to offer opinions with respect to that, I

18  will be offering factual testimony that supports a

19  damages award that we think is appropriate at the end

20  of the case.

21       I just wanted to get that out front so that

22  there were no surprises.  This is not an effort to any

23  kind of end around the Court's ruling.  I understand

24  the Court's ruling, but the statute says I still have

25  a damages case, and to the extent we can put that on

 1    through factual evidence, Your Honor, I want you to be

 2    aware that we're going to be making that effort, sir.

 3              THE COURT:   It never crossed my mind that you

 4    wouldn't.   I didn't rule anything about your proofs

 5    other than the expert.   That was the only issue in

 6    front of me.

 7              MR. ROBERTSON:   That's good, sir.   Thank you.

 8              THE COURT:   I haven't ruled that you can't

 9    put on a damages case.   How you're going to do it is a

10    different issue.   And if you try to get in Mangum's

11    opinions in some way indirectly that you couldn't get

12    in directly, you're going to run into a big problems.

13              So I imagine that your damage case is going

14    to take a different configuration than Mangum's

15    opinions, you being a savvy lawyer, so I'll wait and

16    see what they are.

17              MR. ROBERTSON:   Yes, sir.   Thank you.

18              THE COURT:   All right.   Is there anything

19    special that you-all need to raise from Lawson?

20              MR. McDONALD:   Your Honor, this is McDonald

21    speaking again.

22              Just on the damages issue, we have taken a

23    look, and I think the Court raised this when we had

24    the hearing in person there about what could ePlus do

25    if their expert on damages was not allowed to testify.

1   We have taken a close look at all of their pretrial

2   disclosures relating to damages, their interrogatory

3   answers regarding damages, their initial and

4   supplemental disclosures under Rule 26.

5          They have nothing else that they have ever

6   disclosed to support damages other than the Mangum

7   report.  And we have found case law that we think

8   makes it pretty clear that they don't have any

9   evidence of the amount of damages.  So they're not

10  going to be able to prove an amount of damages, not

11  withstanding that statute that says you can get a

12  royalty as your minimum damages.

13         The fact is the amount is not going to be

14  able to be proven.  So I do think it makes sense to

15  get some briefing in front of the Court on that,

16  whether ePlus files a motion and we respond to it.

17  I'm not sure what their motion was going to actually

18  be, but that is, I think, the biggest issue we're

19  looking at right now.

20         As you heard, I don't think we really have an

21  issue for either report.  We understand that the Court

22  gave us permission to have two experts that had a very

23  focused topic to respond to each of these two extra

24  ePlus experts; one on the source code, and then one on

25  the 102 and 103 related prior art invalidity issues.

1          We're being meticulous in our focus in

2    dealing with just those topics for each of those two

3    experts and nothing more.

4          But, again, I guess that will be briefed

5    along the course here and flushed out once ePlus gets

6    a chance to actually see these reports, which have not

7    been completed yet.  So it's a little premature to

8    talk about those in any detail right now.

9          THE COURT:  Well, I don't see how all this

10   can get briefed and the depositions get had and have

11   the final pretrial conference on August the 31st.

12   Maybe I'm being unrealistic, but I don't see how that

13   can happen.  So I suggest we do this on September the

14   7th.

15          MR. McDONALD:  That works for Lawson, Your

16   Honor.

17          MR. ROBERTSON:  That works for ePlus, Your

18   Honor.

19          THE COURT:  I don't see any alternative given

20   what you're doing now.  I think we need to, however,

21   define the basic topics by using some short form

22   reference that will be appropriate to recite in a

23   scheduling order and have you agree on a briefing

24   schedule on these matters.

25          Lawson's brief on Dr. Green is coming

1    tomorrow; is that right?

2          MR. ROBERTSON:  It's Mr. Robertson, Your

3    Honor.  And it's ePlus's brief on Dr. Green that will

4    be filed tomorrow.

5          THE COURT:  All right.

6          And then you want to file your response on

7    the 24th of August, Mr. McDonald?

8          MR. McDONALD:  Yes, Your Honor, that's fine.

9          THE COURT:  Then you're going to be taken

10   your -- I mean, your expert reports are coming when?

11   The 25th?

12         MR. McDONALD:  The 25th.

13         THE COURT:  August 25th.  That's your source

14   code and invalidity expert; is that right?

15         MR. McDONALD:  That is correct, Your Honor.

16         THE COURT:  To rebut the points that were

17   made by the experts they were allowed.

18         All right.  And then what other motions are

19   we talking about here?  You said, Mr. McDonald, you

20   have a motion about their damages case, but you don't

21   really know what their damages case is at this point,

22   as I understood it.  Am I correct in that assessment?

23         MR. McDONALD:  Yes, but if it's anything more

24   than zero, basically, we know we have an issue.

25         THE COURT:  Well, I know we have an issue,

1    and I think they contemplate something more than zero.

2    So it seems to me that maybe -- Mr. Robertson, do you

3    know what you're going to put on in the way of

4    evidence sufficient to inform them about it so we can

5    get the issue framed?

6            MR. ROBERTSON:  Yes, sir.

7            THE COURT:  Do you know that now is what I'm

8    trying to ask you?

9            MR. ROBERTSON:  I have a very solid idea of

10   what it is, Your Honor.  If I can make a suggestion,

11   and that is we think a lot of these facts are coming

12   out.  Quite frankly, we think we've obtained a lot of

13   these facts from their own witnesses' mouths.  So this

14   isn't a surprise to them.

15           We know profit margins.  We know the accused

16   revenues.  We know a lot of the things that go into

17   the Georgia-Pacific factors that the Court is going to

18   instruct the jury on.

19           Once we put that evidence in that support the

20   Georgia-Pacific factors, it's a matter of arguing what

21   a reasonable royalty rate should be and what the

22   royalty base should be.  Those are just facts, Your

23   Honor, and we can argue from that.

24           Will that form substantial evidence?  We

25   think so.  My suggestion would be the appropriate time

1    to raise this issue would be on a JMOL at the end of

2    the plaintiff's case after we establish what we think

3    are the underlying facts, whether they be from our own

4    witnesses who provided deposition testimony or

5    Lawson's witnesses, who have given deposition

6    testimony pursuant to Rule 30(b)(6) that binds them.

7            That would be the, I think, suggested way to

8    handle this rather than to try and brief to you all

9    the issues at this point.

10           MR. McDONALD:  Your Honor, this is McDonald

11   speaking again for Lawson.

12           If that's Mr. Robertson's position, then it

13   seems to me that maybe we are the ones that need to

14   file the motion then to exclude any damages theories

15   that ePlus may now propose now that their damages

16   expert is out because they did not disclose any other

17   theories.

18           And whatever evidence may come in about the

19   fact that Lawson has made sales or whatever is one

20   issue.  But if I understand Mr. Robertson right is he

21   wants to get in front of the jury and say, We're

22   entitled to damages in a certain amount or range of

23   amounts, and here's why we think we're entitled to

24   that.  That's a new damages theory, whatever it is,

25   but has never been disclosed properly and should be

1    excluded.   So I do think that we will need a motion on

2    that.

3         MR. ROBERTSON:   This is Mr. Robertson if I

4    might briefly respond.

5         Your Honor, you have been through many a

6    trial.   Facts are facts.   In fact, facts are often

7    stubborn facts.   And the facts are the Georgia-Pacific

8    factors are given to the jury as an instruction.   And

9    they, under the statute, need to arrive at a

10   reasonable royalty rate.   Fact issue.   And they can

11   look at the facts that have come out in this case

12   either from Lawson witnesses or our own.

13        We didn't need to articulate it through a

14   damages expert.   He relied on certain agreements the

15   Court's excluded as far as reliance on those.   We

16   understand that.   But there are facts as to what their

17   profit margins are.   There are facts as far as

18   competition goes between the parties.

19        What happens in the first case before you

20   ever had a license agreement, before you had anything,

21   it still goes to the jury to determine what a

22   reasonable royalty is even if you don't have any prior

23   licenses to rely upon.   That's just what the statute

24   says.

25        And we're just asking, and I can provide the

1   Court with some case law on this if the Court wants a

2   bench brief or whatever.  I just would ask the Court

3   not to prejudge it until the Court hears what the

4   facts are that are going to be coming out.

5            Once the facts come out, like any factual

6   issue, you can argue it to the jury as to whether

7   infringement exists or damages exist and what amount

8   is appropriate.

9            I'm sure the Court will be mindful, and I'm

10  going to be very mindful that I'm not going to be

11  trying to backdoor any of Dr. Mangum's opinions that

12  the Court has said are not admitted.  But there are

13  other underlying facts.  There are 15 factors that the

14  jury must consider that will warrant a reasonable

15  royalty rate as the statute says the Court must

16  assess.

17           THE COURT:  Well, the statute doesn't say

18  that.  The statute doesn't address the admissibility

19  of evidence that's necessary to prove the royalty.

20  The presupposition of the statute is that you shall

21  award no less than a reasonable royalty if a

22  reasonable royalty is proved.

23           So that's really I don't think the issue at

24  all.  I don't think the statute is the answer to the

25  question posed completely, but it's relevant.

1          What I understand Mr. McDonald to be saying

2     is that you didn't make any of these damages about

3     which you're speaking now by way of a Rule

4     26(a)(1)(A)(iii) disclosure or by way of any

5     supplemental disclosures pursuant to the obligations

6     that are imposed for supplementary disclosures under

7     26(e), which says that a party who has made a

8     disclosure under 26(a), among other things, must

9     supplement or correct its disclosure or response, (a)

10    in a timely manner if the party learns that in some

11    material respect the disclosure or response is

12    incomplete or incorrect, and if the additional or

13    corrective information has not otherwise been made

14    known to the other parties during the discovery

15    process or in writing or as ordered by the Court.

16          And whether or not you have is not something

17    that I'm prepared to deal with.  In addition, I hear

18    him saying that they have reviewed interrogatory

19    answers on damages, and you haven't made any

20    appropriate answers to discovery, which would forecast

21    what you're doing by way of damages.  And I'll just

22    have to deal with that when it comes up.

23          If you wanted to file a motion, when do you

24    want to file it, Mr. McDonald?

25          MR. McDONALD:  I'd like to file that by

1   Friday of this week, Your Honor.

2            THE COURT:  And that date is?

3            MR. McDONALD:  August 20th.

4            THE COURT:  The 20th.  File that on the 20th.

5        Mr. Robertson, you file your response to that

6   on the 27th and your reply on the 31st.

7            Did we get a reply scheduled on the other

8   one?  That would be on the 31st, too, then wouldn't

9   it?

10           MS. WAGNER:  The response is coming on the

11  24th.

12           THE COURT:  So the reply would be the 27th,

13  right?

14           MS. WAGNER:  Yes.

15           THE COURT:  All right.  To the ePlus motion.

16  The original date is what, Ms. Wagner?

17           MS. WAGNER:  The 18th.

18           THE COURT:  The 18th.  Then the response

19  brief is the 24th.  And the reply brief to the ePlus

20  motion is the 27th.

21           Now we've got also any motion that Lawson

22  plans to file is to be filed on the dates we have just

23  set, and that will be in an order.  And I'll just deal

24  with whatever I'm presented with at the time.

25           Anything else that you have, Mr. McDonald,

1   that you wish to raise?

2              MR. McDONALD:  No, I don't believe so, Your

3   Honor.  I'll ask Ms. Stoll-DeBell if she has anything

4   to add.

5              MS. STOLL-DeBELL:  Not at this time, Your

6   Honor.

7              THE COURT:  Okay.  All right.

8              Then our pretrial conference will begin at

9   9:30 in the morning on September the 7th.

10             Now, as to depositions, I've given previous

11  instructions in a case in which Mr. Willett -- are you

12  still there, Mr. Willett?

13             MR. WILLETT:  I am, Your Honor.

14             THE COURT:  -- is involved about how to show

15  me the objections that remain after you finish, the

16  objections to the discovery designations.

17             And, in essence, you take the pages of the

18  deposition that you're going to use.  You put them

19  together.  And you highlight the part of the

20  deposition that you're objecting to.  One of you take

21  one color and the other one take another, not using

22  blue or green highlighters.  And in the margin,

23  annotate the basis for the objection by rule number.

24  And then I'll hear you on it.

25             I gather I'm not going to have a lot of that

1   anyway.  The same basic approach will obtain as to any

2   other discovery material that you intend to offer into

3   evidence.

4           And I expect that I will have a lot less by

5   way of testimony to read than the 6- to 8-inch binder

6   that somebody delivered over here the other day.  And

7   whoever delivered those 6- to 8-inch binders is

8   welcome to come get them in view of what you all have

9   said today so that you don't unnecessarily corner the

10  binder market or kill all the forests that are left.

11          Ms. Wagner, I don't know whose those were, do

12  you know?  Both sides?

13          MS. WAGNER:  I think they are ePlus's.

14          THE COURT:  I think they were ePlus's, but

15  I'm not sure.

16          Anyway, you know what to do, Mr. Willett,

17  right?

18          MR. WILLETT:  Judge, a point of clarification

19  because actually after this I'm getting on a call in

20  that other matter, and I want to make sure that

21  everyone is on the same page.

22          The party who is objecting to the deposition

23  designation will, in essence, print off that page,

24  bracket the testimony in question, and then in the

25  margin state their objection using the appropriate

1   federal rule of evidence number.

2          THE COURT:  Wait a minute.  No, wait.  Let me

3   go back.

4          You print off the page.  You take a black pen

5   or a marker and you bracket on the right-hand or

6   left-hand margin, probably the right-hand, the

7   testimony from that page that I am to consider.

8          MR. WILLETT:  Got you.

9          THE COURT:  And if somebody then has an

10  objection to a particular question or answer, you take

11  a yellow highlighter.  Suppose you started on page 25,

12  line 3, and end on page 25, line 18, and the objection

13  is at line 13 through 17, and the answer then is the

14  rest of the page.  Then you're going to highlight

15  that.  And in the margin, you're going to annotate

16  Rule 401, Rule 402, relevance, hearsay, authenticity,

17  etc.  And use the rule number and a brief

18  identification like authenticity or relevance just so

19  I know what you're talking about quickly.  Then I'll

20  be able to understand what you're doing.

21          So the plaintiffs use yellow and the

22  defendants use pink.  Sometimes it comes up that

23  objections are on the same page, particularly where

24  you're looking at fairness issues under Rule 32.

25          Does that help you out, Mr. Willett?

1      MR. WILLETT:  It does, Your Honor.  Thank

2  you.

3      THE COURT:  Okay.  All right.

4      I don't expect to see a lot of deposition

5  testimony now based on what you said.  And I think the

6  jury will appreciate that.

7      MR. ROBERTSON:  Your Honor, this is

8  Mr. Robertson.  If I can raise one final issue I think

9  will be beneficial to both parties and the Court.

10      THE COURT:  Go right ahead.

11      MR. ROBERTSON:  I had said early on that we

12  were contemplating filing the final pretrial order on

13  Thursday of this week, the 19th.

14      Given the Court's schedule and now moving the

15  pretrial to the 7th, I think it would behoove all the

16  parties if we were able to continue the

17  meet-and-confer, try to narrow the issues further to

18  limit the issues for the final pretrial.  And so I

19  might make a suggestion, although I'm open to Mr.

20  McDonald and to you on this, that we would instead of

21  filing the final pretrial order on the 19th, file it

22  on the 25th or perhaps the 26th, still well in

23  advance of the final pretrial, but hopefully,

24  aspirationally, with the idea that we would continue

25  to narrow the issues given the opportunity to continue

1    to discuss them.

2              THE COURT:  Mr. McDonald.

3              MR. McDONALD:  This is McDonald for Lawson.

4    I would agree to that.  I suggest the 26th, Your

5    Honor, as long as that gives you enough time before

6    the 7th.

7              THE COURT:  I think that's fine.

8              MR. ROBERTSON:  Thank you.

9              THE COURT:  Okay.  All right.

10             Now, that's everything that you all have.

11   Have you all worked out an opportunity to go back and

12   talk to Judge Dohnal about resolving the case?

13             MR. ROBERTSON:  It's Mr. Robertson, Your

14   Honor.

15             We're meeting with Judge Dohnal on Thursday,

16   the 19th, at 11 a.m.

17             THE COURT:  All right.  Mr. McDonald, they

18   may not have a damages expert, but the Court is

19   going -- there were many ways of proving damages

20   before experts were ever invented to testify about it,

21   and I haven't ruled on any of those.  And also I have

22   to apply the discovery rules fairly and reasonably and

23   in accord with circuit precedence.

24             So if your client is thinking that they have

25   zero damages, your client may be under a

1   misimpression.   I'm not saying that your client is

2   under an erroneous impression, but I am saying that I

3   guess the best way to put it is the opera isn't over.

4          MR. ROBERTSON:   We may be speaking in terms

5   of chickens not hatching, Your Honor.   I think both

6   are suitable here.   We understand and, of course,

7   believe it goes both ways on all the issues in this

8   case.

9          THE COURT:   Yes, it does.   That's what trials

10  are ultimately about.

11         And I think that, Mr. Robertson, you-all may

12  have gotten an inflated view of life by associating

13  with Dr. Mangum, and maybe in these anti-inflationary

14  times, it's a good idea to reflect on whether you have

15  gotten inflated views of life.

16         All right.   Are there any special issues on

17  the injunction part of this case that are going to

18  require any further hearing than what is already

19  established?

20         MR. ROBERTSON:   Your Honor, this is

21  Mr. Robertson.

22         I think you raise a very interesting point.

23  There are certain issues that might come out that

24  should be heard outside of the purview of the jury on

25  the injunction given some of the Court's rulings.

1      You know, certainly we'd like to address all

2  of the factors that are relevant including our

3  competition, including the past history of some of the

4  settlements and the context of those that the Court

5  may not want the jury to hear any further extent.

6  Balancing the hardships.

7      I would predict, and I've been thinking about

8  this issue, that it might be a one-day hearing once

9  liability was found that would be contemplated

10  sometime after the conclusion of the trial with

11  respect to injunctive issues that should focus the

12  inquiry in the post-eBay world.

13      THE COURT:  You-all are competitors, are you

14  not?

15      MR. McDONALD:  Lawson had never even actually

16  heard of ePlus as a competitor for any practical

17  purpose before they got sued, Your Honor.  This is

18  McDonald speaking.

19      THE COURT:  Well, I guess what I'm saying is

20  that neither one of you are trolls.

21      MR. McDONALD:  No.  They are a business.

22  They've got this product line that's about 1 or

23  2 percent of the total of ePlus revenues, and that's

24  including products that aren't the products at issue

25  in this case even.  So I guess they are not a troll

1   technically, but it's certainly not much of a part of
2   their company.
3               MR. ROBERTSON:  Your Honor, this is
4   Mr. Robertson.
5               I think Mr. McDonald is making my case.  I
6   think this warrants a further factual inquiry after
7   trial is over.
8               THE COURT:  It might very well, and I'll deal
9   with it if and when it is comes up.
10              MR. McDONALD:  Yes, Your Honor.  This is
11  McDonald speaking.
12              I would agree that that's appropriate outside
13  of the jury if it's necessary, if there is a finding
14  of infringement, etc.
15              The other possibility after trial might also
16  be a decision on what an appropriate royalty, if
17  anything, would be appropriate going forward as an
18  alternative to an injunction.
19              You also see some decisions from the courts
20  encouraging the parties to try to negotiate something
21  once there is a finding of liability to see if they
22  can come to an agreement on how the situation should
23  be handled going forward.
24              So I think a few things might happen if there
25  is a finding of liability at trial.

1          THE COURT:  Okay.  All right.  I think we're

2   all sort of mindful of the same questions then.

3          All right.  Thank you all very much.  Make

4   sure you come to the settlement conference with Judge

5   Dohnal with reason.  And it's been a hard-fought case,

6   and I think you don't want the atmosphere of the case

7   to effect the business operations that are inevitably

8   involved in trying to reach a business settlement of a

9   business issue.

10          All right.  Thank you all very much.

11          MR. ROBERTSON:  Thank you.

12          THE COURT:  Bye-bye.

13          (The proceedings were adjourned at 3:00 p.m.)

14

15          I, Diane J. Daffron, certify that the

16   foregoing is a true and accurate transcription of my

17   stenographic notes.

18
                        /s/                    8/20/10
19          _____    _____
                   DIANE J. DAFFRON, RPR, CCR       DATE
20

21

22

23

24

25