IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:09CV620 (REP) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN SUPPORT
OF MOTION TO PRECLUDE EPLUS FROM PRESENTING ANY NEW DAMAGES
THEORIES OR FROM SEEKING DAMAGES AT TRIAL**

ePlus disclosed nothing regarding its damages contentions or theories in discovery until May, when it cited the now-excluded Mangum report. It said nothing about a royalty rate and nothing about a royalty base. Now, with barely three weeks before trial, ePlus has said it will seek damages, yet it still has not disclosed its "Plan B." Especially in view of the complexities of a patent damages claim, this failure prejudices Lawson. ePlus cannot justify its failure to disclose its alternative damages theory earlier, or indeed why as of today Lawson still does not know what it will be. Under Federal Rule of Civil Procedure 37(c)(1) and applicable case law including patent cases, ePlus's failure bars it from seeking damages at trial. Thus, the court should grant Lawson's request to bar ePlus from seeking damages at trial.

**I.  ePlus Did Not Disclose Any Damages Evidence or Theories in Its Required Initial Disclosures or in Response to Discovery Requests**

Federal Rule of Civil Procedure 26(a)(1)(iii) requires a party to identify, for each damages category claimed, a computation of damages, and disclose the evidence on which that computation is based:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

ePlus served its initial disclosures on August 11, 2009. It disclosed nothing about its damages claim, other than it will seek "at least" a reasonable royalty, which does not even disclose whether it will seek a reasonable royalty. Instead, its damages disclosure is all excuses and no information, stating in its entirety:

> ePlus has incurred economic harm as a result of defendants' infringement of the patents-in-suit. Pursuant to 35 U.S.C. § 283, ePlus seeks injunctive relief from defendants' continued infringement of the patents-in-suit. In addition, pursuant to 35 U.S.C. § 284, ePlus seeks damages adequate to compensate it for defendants' infringement of the asserted patents-in-suit in the form of at least a reasonable royalty to compensate ePlus for defendants' patent infringement, together with pre- and post-judgment interest and costs as fixed by the Court. ePlus will also seek increased damages based upon defendants' willful infringement of the patents-in-suit. ePlus also seeks attorneys fees pursuant to 35 U.S.C. § 285 or other applicable law.
> As to the calculation of the amount of damages to which ePlus is entitled, it is difficult at this time for ePlus to make any computation of damages based upon either reasonable royalty or other additional awards absent further discovery and disclosures by the defendants. However, ePlus is in the process of retaining experts to help form a more definite damages computation. ePlus reserves the right to modify its damages theories and calculations or to seek damages under different theories as appropriate in view of information to be discovered in this case and in view of further anticipated expert opinions on the subject of damages.

(Ex. A.) ePlus identified no documents or witness supporting any computation of damages, as Rule 26 further requires. This disclosure was never supplemented.

Lawson inquired about damages in contention interrogatories, but got no information that way either. Specifically, Lawson's discovery request was as follows:

> INTERROGATORY NO. 17
> If ePlus contends it has been damaged by any Defendant's alleged infringement, state all facts that support ePlus's contentions(s), including all bases for and types of damages allegedly suffered (e.g., lost profits, price erosion, and/or reasonable royalty), the amount

2

of and basis for any applicable reasonable royalty rate, and an explanation of any lost profit claim; and identify all documents related to such contention and identify all person(s) with knowledge about such contention.

ePlus's original answer, provided on October 12, 2009, disclosed nothing of substance:

> ANSWER TO INTERROGATORY NO. 17
> To the extent that information responsive to this Interrogatory includes matters that will be presented at trial by, or with the assistance of, an expert witness, then they will be provided in accordance with the scope and timing limitations imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Virginia, and the Scheduling Orders and discovery plans entered in this action.
> ePlus contends, however, that under 35 U.S.C. § 284 it is entitled to compensatory damages in no event less than a reasonable royalty for Lawson's infringement. In addition, ePlus contends that it is entitled to increased damages and attorneys' fees for Lawson's willful infringement pursuant to 35 U.S.C. § 285. However, the answer to this Interrogatory depends in large part on information and documents presently in the possession of Lawson. Lawson has only started producing those documents. Accordingly, ePlus is unable to provide a specific estimate of a reasonable royalty, or other damages, to which it is entitled at this time. ePlus reserves the right to supplement its Answer to this Interrogatory after Lawson's documents are produced and ePlus is able to obtain additional discovery from Lawson.

ePlus supplemented discovery responses on March 12, 2010, but adding nothing about damages:

> SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 17
> None.

On May 18, 2010, the day fact discovery closed, ePlus supplemented its answer only by citing the Mangum and Manbeck reports:

> SECOND SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 17
> ePlus incorporates by reference the Expert Report of Russell W. Mangum III, Ph.D., dated May 3, 2010 and the Expert Report of Harry F. Manbeck, Jr., dated May 3, 2010.

(*See* Ex. B.) Both of these experts have been excluded from trial in this matter. (Doc. Nos. 360 & 401.) ePlus has provided no other damages disclosures. ePlus has not disclosed the amount of and basis for any applicable reasonable royalty rate.

**II.    ePlus's Non-Disclosure Was Neither Substantially Justified Nor Harmless and Precludes ePlus from seeking damages at trial under Rule 37(c)(1).**

3

Because ePlus has not provided information regarding its damages claim as required by Rules 26 and 37, ePlus cannot use that information at a trial. Federal Rule of Civil Procedure 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Rule 37(c) advisory committee notes emphasize that the "automatic sanction" of exclusion "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee note (1993). The alternative, more lenient sanctions referenced in the rule are "primarily intended to apply when a party fails to disclose evidence helpful to an opposing party" and thus would be inappropriate here. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003). And, as this Court has previously recognized in this case, "A party's failure to abide by Court scheduling deadlines may result in the exclusion of testimony. Fed. R. Civ. P. 37(c)." (Doc. No. 435 at 4.)

The "basic purpose" of Rule 37(c)(1) is "preventing surprise and prejudice to the opposing party." *Southern States*, 318 F.3d at 596. The Fourth Circuit applies a five-factor test to determine whether the nondisclosure of evidence is substantially justified or harmless:

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and

(5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 596-97 (applying five-factor test articulated in *Rambus, Inc. v. Infineon Techs. AG*, 145 F.

4

Supp. 2d 721, 726 (E.D. Va. 2001)). The first four factors relate primarily to the harmlessness exception, while the remaining factor relates primarily to the substantial justification exception. *Id.* As the Fourth Circuit has explained, bad faith is not one of these factors and is not required for the exclusion of evidence. *Id.* at 597-98.

This case is a textbook example of when this exclusionary rule should be applied. ePlus's nondisclosure of damages evidence is neither substantially justified nor harmless. Trial is less than a month away, and at this time Lawson has no idea what damages theory or evidence ePlus intends to pursue. Lawson will be surprised by ePlus's undisclosed damages theory, this surprise cannot be cured in time for trial, and the unknown damages theory will disrupt trial substantially. The undisclosed evidence is vitally important to damages—it is *all about* damages.

The first four *Southern States* factors are all focused on the prejudice to Lawson as the party against whom the new theory will be used. These factors provide compelling support for exclusion. Any disclosure of the new damages theory now would unfairly surprise Lawson only days before trial, with no adequate opportunity to cure the surprise. The only disclosure Lawson has regarding damages has been excluded as fundamentally flawed. Any new theory by definition must be significantly different in its underlying bases and analytical approach to the excluded Mangum report, and thus Lawson's efforts to respond to Mangum's report will be of little moment. Discovery is long closed, and the parties are focused on final trial preparations. Even as this brief is being written, Lawson does not know what ePlus's theory will be.

Moreover, the new theory, while undisclosed, certainly relates to important evidence and will disrupt the trial. The issue relates to a request, at least in its prior incarnation, for tens of millions of dollars from Lawson, which ePlus seeks to treble. Damages and only damages are

indeed the reason ePlus brought suit—all of its many prior litigations resulted in checks, not injunctions.

The first four factors—surprise, ability to cure, importance, and disruption—are particularly supportive of exclusion given the many complexities of the potential damages case here. ePlus has accused five different groups of products of infringing 13 claims—although not all five groups of products are accused of infringing all 13 claims. ePlus accuses Lawson of directly infringing, and also of inducing infringement, each of which have differing requirements to obtain damages. Inducement, for example, requires proof of specific intent to infringe, which requires knowledge of the patents and notice of infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). Moreover, as explained in Lawson's summary judgment motion, ePlus failed to require SAP to mark, which should bar any damages at least until ePlus sued Lawson.

The complexities (and flaws) of ePlus's prior damages claim do not end there. ePlus has never contended that it is seeking damages under the entire market value rule, but relies solely on activities of Lawson that are accused of infringement. Yet ePlus seeks damages on products that its infringement expert does not accuse of infringement. ePlus argues, for example, that it should get royalties on sales of the Lawson System Foundation (LSF) product because its infringement expert said in a footnote that LSF is a "prerequisite" to infringement. (Weaver Report at 15 n.1.) Dr. Weaver did not say LSF infringes, but rather claims that LSF is necessary to use the modules that actually contain the accused functionality—the RQ, IC, PO, and RSS modules. (*Id.*)

ePlus is not entitled to double recovery of both a royalty on *selling* the accused modules, and a royalty on selling additional products necessary to *use* the accused modules. Under this overextended logic, ePlus would get paid a royalty on the electricity needed to power the system

as well. Once ePlus is compensated for the sales of the modules accused of infringement, the buyer is free to make full use of those products. *See Aro Mfg. Co. v Convertible Top Co.*, 365 U.S. 336, 342-43 (1961) (finding that replacement of fabric on patented convertible tops was noninfringing repair; "it is 'the use of the whole' of the combination which a purchaser buys'" (citing *Wilson v. Simpson*, 9 How. 109, 123)). And, if the buyer does not infringe, Lawson cannot be liable for inducing infringement, as direct infringement is a necessary element of inducement. *Id.* at 341.

A large portion of Mangum's revenue base was similarly flawed, as most of the revenue included not licensing the software, but rather maintenance and service revenues. Such revenues relate to software bug fixes, patches and updates, training, implementation, and other services. Again, such revenues should not be part of the case, as once the customer buys the accused modules (and ePlus is compensated for that), the customer cannot infringe again by obtaining the services helpful to properly use them. Without knowing what ePlus will do with this claim, Lawson is highly prejudiced.

There is also an issue regarding varying royalties for different products. A royalty rate suitable for application to the price of a patented car tire would presumably not be suitable for application to the price of a whole car which happens to be sold with the patented tire. Similarly, it is not legally appropriate for the same royalty apply to Lawson's large product suites as which might apply to the individual accused modules. *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 06-348, 2010 U.S. Dist. LEXIS 56634, at *12-13 (E.D. Tex. June 9, 2010) (decreasing damages award from the $52 million awarded by the jury to $6.2 million because the royalty base should not have included revenues for both stand-alone drives and for assembled computers incorporating the accused drives—even though the plaintiff's damages expert opined

on a lower revenue for the assembled computers incorporating the accused drives).

In short, in the hope of squeezing every possible dollar out of this case to justify multi-million dollar legal fees, ePlus stretched its damages theory beyond the limits. That was true when it had an expert. Without an expert, its damages case is incomprehensible and irremediable. It is a mess—a mess entirely of ePlus's making. ePlus cannot now rely on undisclosed damages evidence and theories in an attempt to obtain damages through the back door that have been barred through the front. A more compelling application of the first four factors of *Southern States* is hard to imagine.

Regarding the fifth factor, there is no justifiable reason for ePlus's failure to disclose the evidence. ePlus chose to rely solely on its damages expert's unreliable opinion to support its damages claim. The Mangum report, now excluded, cites mostly ePlus's settlements in other cases, conversations with ePlus employees, inventor testimony, public information about Lawson (such as from its website and SEC filings) and licensees, ePlus discovery responses, and the pleadings—information available to ePlus well before it served its initial disclosures. Most of the Lawson deposition testimony cited in the Mangum report dates back several months, to October 2009. Thus, while Lawson has no idea how ePlus would support its undisclosed damages claim, clearly ePlus has long had the information necessary to disclose the basis for damages.

Other than the excluded Mangum report, ePlus disclosed nothing about damages. It failed to provide any clue about its plans, even though it sought damages on the same patents in two prior cases. ePlus must have had some idea of how it would compute damages from early in the case. Early disclosure would not prejudice ePlus in any way, as it could always amend its grounds for damages based on new information if need be. Instead, ePlus made a strategic,

deliberate decision to leave Lawson totally in the dark about its damages theories and computations as long as possible. Its nondisclosure was entirely by choice, designed to give Lawson virtually no time to conduct responsive fact discovery and generally as little time as possible to react. Its decision was based on a risky strategy in a post-*Daubert* era. Its nondisclosure was not substantially justified and inexcusable at a minimum, and deliberate and improper at worst. More is expected of any damages claimant, especially one who sought over $20 million in damages.

ePlus hopes to make lemonade out of lemons from the Court's exclusion of Mangum by dumping information onto the jury and guiding its damages assessment, not by qualified experts, but by counsel's advocacy. Mangum's exclusion and Rule 37(c)(1) do not allow ePlus to replace the *ipse dixit* of a unreliable damages expert opinion with the even more unreliable *ipse dixit* of trial counsel argument. Because ePlus has no excuse for failing to disclose any damages theories, grounds, or computations other than its 11th-hour disclosure of an excluded damages expert report, it cannot pursue a damages case before the jury.

### III. The Relief Lawson Seeks Has Been Applied in Patent and Other Cases

The relief that Lawson seeks—disallowing ePlus from pursuing damages—is supported by law. In *MicroStrategy*, the Federal Circuit Court of Appeals affirmed an Eastern District of Virginia District Court's decision to exclude Plaintiff's damages expert, bar Plaintiff from relying on new damages theories not disclosed until the eve of trial, and grant summary judgment on the grounds that the Plaintiff could not show damages after the evidentiary rulings. *MicroStrategy Inc. v. Business Objects*, 429 F.3d 1344 (Fed. Cir. 2005). In *MicroStrategy*, the Plaintiff's tort case relied heavily on its damages expert and his expert reports. *Id.* at 1353. The expert reports were excluded primarily because of a flawed methodology that made them

9

speculative and unreliable. *Id.* The court also excluded the expert's testimony, as the reports no longer could support his testimony. *Id.* at 1354.

Of particular relevance here, the Plaintiff attempted to rely on non-expert damages theories once its damages expert was excluded. *Id.* The district court prevented Plaintiff from introducing the non-expert damages theories because Plaintiff failed to timely supplement its interrogatories with its new damages theory. *Id.* The court rejected Plaintiff's argument that it did not supplement its answers because it had submitted its expert report instead. *See id.* at 1357. The court then granted summary judgment on damages on the grounds that Plaintiff could not show the amount of damages with a reasonable certainty. *Id.* at 1358.

The Federal Circuit affirmed this decision, concluding that the district court did not abuse its discretion. *Id.* at 1353. The court recognized that Defendant "served an interrogatory on [Plaintiff] that required [Plaintiff] to identify its damages and the factual and methodology for its calculations. At trial, [Plaintiff] sought to introduce evidence of damages not discussed in response to that interrogatory." *Id.* at 1356. The court agreed with the district court that Plaintiff did not supplement its answers. *Id.* at 1357. The Federal Circuit also rejected Plaintiff's argument that under the Fourth Circuit's *Southern States* test, the nondisclosure of evidence was substantially justified or harmless. *Id.* Instead, "the record shows that [Plaintiff]'s new theories surprised [Defendant] on the eve of trial and prejudiced any response" and would require a delay of trial, prejudicing Defendant. *Id.* In addition, most of the information Plaintiff sought to introduce was in Plaintiff's possession well before trial. *Id.* The court explained that Plaintiff "alone is to blame for this situation." *Id.* After determining that the district court's evidentiary rulings were proper, the Federal Circuit affirmed the court's grant of partial summary judgment. *Id.* at 1358. The court explained "[w]hat little evidence the district court did not exclude was

10

simply insufficient to show causation or damages with any reasonable certainty." *Id.*

The district court and Federal Circuit decisions in *MicroStrategy* support the relief Lawson seeks here. Like *MicroStrategy*, ePlus's damages expert and damages expert report were excluded and were the only evidence of damages disclosed. Like *MicroStrategy*, ePlus seeks to rely on an undisclosed damages theory on the eve of trial (although this case is even worse because Lawson still does not even know what the new theory will be). Like *MicroStrategy*, such a last-minute disclosure would prejudice Lawson. Trial in this case is less than a month away. To allow ePlus to pursue undisclosed theories and information at trial would severely prejudice Lawson. Like *MicroStrategy*, ePlus could have disclosed damages evidence or theories prior to trial. Like *MicroStrategy*, this situation was entirely of ePlus's making. For all of the reasons in *MicroStrategy*, this Court should bar ePlus from submitting undisclosed damages theories at trial.

ePlus apparently hopes patent cases are an exception to the requirements of Rule 37(c)(1). ePlus has noted that when infringement has been shown, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284.

Section 284 is not a carte blanche to ignore discovery requirements. The statute "obviates the need to show the fact of damage when infringement is admitted or proven, but that does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). "Although this analysis necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual

basis for a determination of a reasonable royalty. Any rate determined by the trier of fact must be supported by relevant evidence in the record." *Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

The Federal Circuit has confirmed that 35 U.S.C. § 284 does not entitle a patentee to damages that it cannot prove. *Lindemann*, 895 F.2d at 1406. In *Lindemann*, the district court rejected the Plaintiff's sole source of evidence on damages from its damages expert. *Id.* at 1404, 1407. The district court concluded that neither party presented evidence of damages and—after finding for Plaintiff and entering a permanent injunction—awarded Plaintiff "nominal damages in the amount of $ 10,000." *Id.* at 1404-05.

The Federal Circuit recognized that the fact of infringement establishes the fact of damage "because the patentee's right to exclude has been violated," but the court explained that "[t]he patentee must then prove the amount of damage." *Id.* at 1406. The court explained that the Plaintiff "bore the burden and yet failed to adduce evidence dictating a particular amount" and "the paucity of [Plaintiff]'s evidence make its challenge to the amount of the award difficult to understand when an award far less than $ 10,000 would have been supported by the evidence." *Id.* The court rejected Plaintiff's argument that 35 U.S.C. § 284 sets a reasonable royalty as a floor below which damages cannot go, explaining that Plaintiff "forgets that it failed to carry its burden of proving that its proposed royalty would be reasonable." *Id.* The court explained that "the statute obviates the need to show the fact of damage when infringement is admitted or proven, but that does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284." *Id.* (citing *Devex Corp. v. General Motors Corp.*, 667 F.2d 347, 363 (3rd Cir. 1981) (affirming award of zero damages for lack of

evidence and saying: "The statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."), *aff'd on other grounds*, 461 U.S. 648 (1983)).

The Federal Circuit relied on *Lindemann* in *Dow Chemical Co. v. Mee Industries, Inc.*, when it again found that section 284 "'does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284.'" *Id.* at 1382 (quoting *Lindemann*, 895 F.2d at 1407). The *Dow* court concluded that the court should award such reasonable royalties "as the record evidence will support." *Id.*

Other courts have recognized that 35 U.S.C. § 284 does not entitle a patentee to damages it has not proven. In *Boston Scientific Corp. v. Johnson & Johnson*, the court explained that despite the language of section 284, a patentee must put on evidence supporting its assertion of a reasonable royalty rate. 550 F. Supp. 2d 1102, 1120 (N.D. Cal. 2008). The court explained "[w]here the record lacks any evidence of a reasonably royalty rate, the Federal Circuit has approved of awarding 'zero damages'". *Id.* (citing *Lindemann*, 895 F.2d at 1407). The court concluded that the Plaintiff could not present the damages issue to the jury because Plaintiff failed to present sufficient damages evidence. *Id.* at 1121. The court explained that the degree of speculation required from the jury "is exacerbated by the substantial dollar amount of sales to which the royalty rate would be applied." *Id.* at 1121 n.4. The court then awarded Plaintiff no damages because the Plaintiff failed to put on any evidence from which the court could derive a reasonable royalty. *Id.* at 1122 (explaining that any presumption regarding damages "may be rebutted when the patentee fails to put on 'any evidence from which a court may derive a

13

reasonable royalty'" (citation omitted)); *see also Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 509-10 (Fed. Cir. 1990) (affirming the district court's award of "no damages" because none were proven); *Veritas Operating Corp. v. Microsoft Corp.*, No. 06-00703, 2008 U.S. Dist. LEXIS 55627, at *77-81 (W.D. Wash. Jan, 17, 2008) (Magistrate's Report and Rec.) (precluding patentee from asserting a right to recover damages because patentee failed to disclose evidence of how to compute reasonable royalty damages pursuant to Rule 26 and 37 and was unable to carry its burden of proof on damages), *approved and adopted by*, No. 06-0703, 2008 U.S. Dist. LEXIS 18820 (W.D. Wash. March 11, 2008); *National Presto Indus., Inc. v. Black & Decker Inc.*, 760 F. Supp. 699, 701 (N.D. Ill. 1991) (confirming that a patentee that fails to put in evidence of a reasonable royalty during discovery may not seek to recover one at trial).[1]

*Bowling v. Hasbro, Inc.* is not to the contrary. 582 F. Supp. 2d 192, 203-04 (D.R.I. 2008). There the court excluded a damages expert but affirmed the jury's damages award because the "relevant factual predicate for determining a reasonable royalty has been established" *Id.* (citation omitted)). The court noted that "[i]n the absence of such [royalty] evidence, despite the requirements of Section 284, no reasonable royalty can be awarded." *Id.* In that case, though, the defendant's own witness, a senior executive, answered questions on the *Georgia-Pacific* factors at trial without objection. *See id.* at 203. *Bowling* did not address any

---

[1] This is consistent with other cases recognizing that a court can award no damages in patent cases in certain circumstances. *See LG Elecs., Inc. v. Advance Creative Computer Corp.*, No. C-01-01070, 212 F. Supp. 2d 1171, 1176, 1179 (N.D. Cal. 2002) (recognizing that section 284 states that the court "shall" award damages "not less than a reasonable royalty" but recommending that no damages be awarded on plaintiff's motion for default judgment because of an absence of proof); *KEG Techs., Inc. v. Reinhart Laimer*, 436 F. Supp. 2d 1364, 1370 (N.D. Ga. 2006) (denying the patentee a monetary award for defendant's infringement and explaining that the court "found no support for the proposition that a reasonable royalty award can be the product of nothing more than guesswork"); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-7014, 2002 U.S. Dist. LEXIS 28210, at *7 (S.D. Fla. June 4, 2002) (affirming jury verdict that certain defendants did not have to pay a royalty for stipulated infringement).

14

failure to provide discovery or whether exclusion under Rule 37(c)(1) was appropriate, and is of no moment here.

*Lindemann* and *Dow* confirm that section 284 creates a presumption that the *fact* of damages can be proven by a finding of infringement. However, they also hold that the burden of proof remains on the plaintiff as to the *amount*, and if a plaintiff offers no evidence upon which a reasonable royalty calculation can be made, then there is no basis for an award of damages. The only basis for damages ePlus disclosed in its interrogatory responses and disclosures were expert opinions that have been excluded. Even if there is evidence that could support an alternative theory, ePlus failed to properly disclose the theory or its support in discovery.

Evidence regarding the royalty base is likewise irrelevant because there is no admissible evidence from which the jury can determine a royalty rate. Evidence of Lawson's revenue has no relevance unless there is also evidence of a royalty rate to apply to that revenue. It is misleading and prejudicial for the jury to hear that Lawson makes millions of dollars from sales of the accused products without hearing what proper percentage of those revenues should be awarded as a reasonable royalty. ePlus has no admissible evidence of an appropriate royalty rate, and the jury cannot be left to speculate as to the proper rate. Whether documents or witnesses presented at trial may have information relevant to damages is beside the point. The point is that ePlus has entirely failed to disclose its damages theory. Lawson is prejudiced because has no idea what the theory at trial might be, and had no opportunity in discovery or otherwise to respond. Indeed, there was no suggestion in *MicroStrategy* that the documents underlying the Plaintiff's undisclosed theories or the witnesses who might testify to the undisclosed theories were not previously known to the Defendant or that such a fact mattered. Instead, the only issue in *MicroStrategy* was whether the Plaintiff disclosed its damages theory

during discovery. Because it did not, it could not pursue the undisclosed theory at trial. Likewise, ePlus cannot overcome its failure to disclose support for its damages case simply by relying on witnesses Lawson may recognize or evidence Lawson may have seen.

At ePlus's urging (*see, e.g.*, Doc. Nos. 213, 248, 252, 265), this Court has repeatedly cautioned Lawson not to seek to bring in invalidity defenses based on prior art not disclosed in invalidity contention interrogatories. (*See, e.g.*, Doc Nos. 229, 372, 374, 382.) Lawson is precluded even though its prior discovery responses disclosed certain prior art, on the basis that interrogatory responses must properly frame the issues for the case. ePlus must now take its own medicine. *A fortiori*, ePlus cannot prove damages by asserting only days before trial a never-before-asserted damages theory that Lawson has had no notice of and no opportunity to address. ePlus should be precluded from an ambush of Lawson on damages through the back-door when its sole disclosed basis for damages has already been excluded.

## IV.   Conclusion

Trial in this case begins in less than a month, and ePlus appears to contend that it may pursue an undisclosed damages theory based on undisclosed damages evidence and witnesses before the jury. Lawson respectfully requests that this Court exclude ePlus's new unknown damages theory, whatever it may be, and preclude ePlus from seeking damages at trial. Otherwise, Lawson would be ambushed at trial—something the Federal Rules prohibit. Because ePlus failed to properly disclose any damage theory or the support for such a theory, Lawson respectfully requests that this Court bar ePlus from pursuing damages or presenting the damages issue to the jury.

LAWSON SOFTWARE, INC.

By  /s/
  Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Stephen D. Otero (VSB No. 38752)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
steve.otero@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 20th day of August, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

　　　　　　　　　　/s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Stephen D. Otero (VSB No. 38752)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
steve.otero@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

1971904v1