## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |


## FINAL PRETRIAL ORDER

## FINAL PRETRIAL ORDER

In accordance with the local rules of the United States District Court for the Eastern District of Virginia and the Order on Initial Pretrial Conference entered in this civil action, it is ORDERED as follows:

## I.     STIPULATED FACTS

The following facts are stipulated and undisputed:

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq.

2.      This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) for alleged infringement of United States Patent No. 6,023,683 ("the '683 Patent") entitled "Electronic Sourcing System and Method," United States Patent No. 6,055,516 ("the '516 Patent") entitled "Electronic Sourcing System," and United States Patent No. 6,505,172 ("the '172 Patent"), entitled "Electronic Sourcing System."

3.      Plaintiff *e*Plus, Inc. ("*e*Plus") is a Delaware corporation, with its principal place of business at 400 Herndon Parkway, in Herndon, Virginia 20170.

4.      *e*Plus is the lawful assignee of all right, title and interest in and to the '683, '516 and '172 Patents (collectively, the "patents-in-suit").

5.      The '683 patent issued on February 8, 2000.

6.      The '516 patent issued on April 25, 2000.

7.      The '172 patent issued on January 7, 2003.

8.      The patents-in-suit were assigned to *e*Plus on May 15, 2001.

9.      The named inventors of the patents in suit are James M. Johnson, Douglas Momyer, Robert Kinross, and Francis Melly.

2

10.    U.S. Patent No. 5,712,989 ("the '989 patent") is incorporated by reference into the disclosure of the patents-in-suit, and shares two of four inventors with the patents-in-suit.

11.    *e*Plus filed this suit against Lawson Software, Inc. on May 19, 2009.

12.    Defendant Lawson Software, Inc. ("Lawson") is a corporation organized and existing under the laws of the State of Delaware, and maintains its corporate headquarters at 380 St. Peter Street, St. Paul, Minnesota 55102.

13.    This Court has personal jurisdiction over Lawson Software, Inc. because Lawson sells and offers to sell products and services to customers in the Eastern District of Virginia, Richmond Division.

14.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(b) and (c).

15.    *e*Plus alleges that Lawson infringes claims 3, 6, 26, 28, and 29 of the '683 patent.

16.    *e*Plus alleges that Lawson infringes claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.

17.    *e*Plus alleges that Lawson infringes claim 1 of the '172 patent.

18.    Lawson makes, uses, licenses, sells, or offers for sale in the United States software applications and services, including a software product line known as S3.

19.    Included in the Lawson S3 product line is a suite of applications and modules referred to as "S3 Supply Chain Management." These software applications and modules include: Inventory Control, Requisitions, Purchase Order, Lawson EDI, Requisitions Self-Service, and Procurement Punchout.

20.    The current version of the Lawson S3 software suite is Release 9.0.1.

LIBA/2109329.7

21.     Lawson makes, uses, licenses, sells, or offers for sale in the United States software applications and services, including a software product line known as M3.[1]

22.     The M3 product line is comprised of different suites, including Supply Chain Management, Manufacturing, Maintenance, Financials, and CRM.

23.     The M3 Supply Chain Management suite is comprised of a number of software applications, including the M3 e-Procurement application.

24.     The current version of Lawson M3 e-Procurement is 14.1.7.X.

25.     Lawson owns and operates a Web site at the uniform resource locator ("URL") www.lawson.com.

26.     Lawson owns and operates a support and maintenance Web site at the uniform resource locator ("URL") www.mylawson.com.

27.     Lawson makes technical documentation available to licensees of its S3 and M3 products through its "myLawson.com" Web site, including installation guides, implementation guides, configuration guides, release notes, and other documentation.

## II.     WITNESSES

### A.     *e*Plus's Witnesses

See Appendix 1.

### B.     Lawson's Witnesses

See Appendix 2.

## III.    EXHIBITS

### A.     *e*Plus's Exhibits

---

[1] The parties are continuing to work toward a stipulation regarding the Lawson M3 product line and believe that the stipulation may be achieved contingent upon the Court's rulings during the Pretrial Conference.

4

          **1.**      ***e*Plus's Exhibits as to Which There Are No Objections**

See Appendix 3.

          **2.**      ***e*Plus's Exhibits as to Which Lawson Objects and the Grounds for Objection**

See Appendix 4.

**B.**      **Lawson's Exhibits**

          **1.**      **Lawson's Exhibits as to Which There Are No Objections**

See Appendix 5.

          **2.**      **Lawson's Exhibits as to Which *e*Plus's Objects and the Grounds for Objection**

See Appendix 6.

**IV.**    **DISCOVERY DESIGNATIONS**

**A.**      ***e*Plus's Discovery Designations**

          **1.**      ***e*Plus's Deposition Designations (witnesses scheduled to appear by video)**

See Appendix 7.[2]

          **2.**      ***e*Plus's Designations of Lawson's Discovery Responses**

See Appendix 8 (Plaintiff *e*Plus, Inc.'s Designation of Interrogatory Responses).

          **3.**      ***e*Plus's Deposition Designations (witnesses scheduled to appear live at trial)**

See Appendix 9.[3]

---

[2] *e*Plus will call all Lawson witnesses to present live testimony at trial if they are available. *e*Plus believes that because of the limited scope of testimony needed for some Lawson witnesses, however, requiring their presence at trial would be inconsiderate and wasteful.  The parties continue to discuss the issue.

LIBA/2109329.7

      **4.**    *e***Plus's Summaries of its Affirmative Deposition Designations and its Counter-designations**

See Appendix 10.

**B.**    **Lawson's Discovery Designations**

      **1.**    **Lawson's Deposition Designations (witnesses scheduled to appear by video)**

See Appendix 11.

      **2.**    **Lawson's Designations of *e*Plus's Discovery Responses**

See Appendix 12 (Defendant Lawson Software Inc.'s Designation of Interrogatory Responses).

      **3.**    **Lawson's Deposition Designations (witnesses scheduled to appear live at trial)**

See Appendix 13.[4]

**V.**    **FACTUAL CONTENTIONS**

**A.**    *e***Plus's Factual Contentions**

*e*Plus makes the following factual contentions:

1.    *e*Plus designs, markets, licenses, sells and offers to sale electronic sourcing and procurement software applications, services, systems and methods.

---

[3] *e*Plus intends to call these witnesses to present live testimony at trial. *e*Plus includes their deposition designations in the Final Pretrial Order as a precautionary step in the event that any of these witnesses are unable to attend trial due to unforeseen circumstances. Lawson objects to the inclusion of these deposition designations in the Final Pretrial Order.

[4] Lawson intends to call these witnesses to present live testimony at trial. *e*Plus includes their deposition designations in the Final Pretrial Order as a precautionary step in the event that any of these witnesses are unable to attend trial due to unforeseen circumstances. Lawson objects to the inclusion of these deposition designations in the Final Pretrial Order.

LIBA/2109329.7

2.     *e*Plus sells and licenses electronic sourcing and procurement software, Procure(+) and Content(+).

3.     Defendant has been directly infringing claims 3 and 6 of the '683 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

4.     Defendant has been directly infringing claims 26, 28, and 29 of the '683 patent, and continues to do so, through the use of methods incorporating the patented inventions.

5.     Defendant has been indirectly infringing claims 3 and 6 of the '683 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claims 3 and 6 of the '683 patent.  Defendant also provides maintenance services to its customers to assist them in using systems infringing claims 3 and 6 of the '683 patent.

6.     Defendant has been indirectly infringing claims 26, 28, and 29 of the '683 patent, and continues to do so, by contributing to or inducing other third parties to use methods incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems in a manner that infringes claims 26, 28, and 29 of the '683 patent.  Defendant provides maintenance services to its customers to assist them in using systems in a manner that infringes claims 26, 28, and 29 of the '683 patent.

LIBA/2109329.7

7.     Defendant has been directly infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

8.     Defendant has been indirectly infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent. Defendant provides maintenance services to its customers to assist them in using systems infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.

9.     Defendant has been directly infringing claim 1 of the '172 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

10.     Defendant has been indirectly infringing claim 1 of the '172 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claim 1 of the '172 patent.  Defendant provides maintenance services to its customers to assist them in using systems infringing claim 1 of the '172 patent.

11.     The Lawson Inventory Control, Requisitions, and Purchase Order modules comprise a software group referred to as "S3 Procurement."

LIBA/2109329.7

12.     Also included in the Lawson S3 product line are the Lawson System Foundation and Lawson ProcessFlow applications, which are requisite applications for using the S3 Supply Chain Management applications and modules.

13.     The Lawson S3 software systems accused of infringement are systems comprising the Inventory Control, Requisitions, and Purchase Order modules.  These systems must also include Lawson System Foundation and Lawson ProcessFlow.  These systems may also include one or more of the following applications:  Requisitions Self-Service, Procurement Punchout, and/or Lawson EDI.

14.     The M3 product line includes a number of software suites and applications, including M3 Business Engine, M3 Supply Chain Management, and M3 e-Procurement.

15.     The M3 e-Procurement application is comprised of a number of software modules, including the Buy Center, Supply Center, e-Procurement Business Center, e-Procurement Design Center Tools, and XML Application Adapter EPR.

16.     Also included in the Lawson M3 product line is the Lawson System Foundation application, which is a requisite application for using the M3 e-Procurement application.

17.     The Lawson M3 software systems accused of infringement are systems including the M3 e-Procurement application.  These systems must also include the M3 Business Engine and Lawson System Foundation.  These systems may also include the M3 Procurement application.

18.     The current version of the Lawson M3 software suite is 7.1.

19.     The '683 patent is valid.

20.     The '516 patent is valid.

21.     The '172 patent is valid.

9

22.    *e*Plus began marking its electronic sourcing and procurement software applications, services, systems and methods with the patent numbers of the patents-in-suit in October, 2003.

23.    *e*Plus has marked substantially all of its own products made, sold or offered for sale between October, 2003 to present within the meaning of 35 U.S.C. § 287.

24.    *e*Plus has made reasonable efforts to ensure that all required licensees of the patents-in-suit comply with the marking requirements of 35 U.S.C. § 287.

25.    *e*Plus directly competes with Lawson for the sale of electronic sourcing and procurement software applications, services and systems.

26.    Defendant's wrongful conduct has caused *e*Plus to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

27.    *e*Plus is entitled to recover damages adequate to compensate for Defendant's infringement.

28.    Lawson's accused revenue is derived from three sources:  (1) software licensing; (2) maintenance services; and (3) installation, implementation, consulting, and training services.

29.    Lawson's services include initial planning and implementation of clients' systems, along with training and learning tools to help clients optimize the use of the software.

30.    Lawson's maintenance services include the provision of software upgrades, updates, and corrections, along with technical advice and application management.

31.    Lawson requires that its customers pay maintenance fees for at least one year any time a customer licenses software.

32.    Ninety-three percent of Lawson customers renew their maintenance subscriptions.

10

33. In fiscal year 2010, Lawson's total revenue was $736 million. License revenue was $124 million. Maintenance revenue was $353 million. Service revenue was $259 million.

34. The date of the hypothetical negotiation is May 2002.

35. The parties to the hypothetical negotiation are *e*Plus and Lawson.

36. The appropriate start date for the calculation of damages is November 2003.

37. Defendant acted recklessly in its infringement of the patents-in-suit. Defendant was aware of the patents-in-suit and their relevance to Defendant's ongoing business operations no later than October 2003, when *e*Plus began marking its products. Defendant became aware of *e*Plus's products and understood that *e*Plus competed with Lawson in the procurement space no later than 2003. Defendant was made aware of the patents through its subscription to several industry publications that featured *e*Plus and its patent portfolio, among others, including Gartner, Forrester, Aberdeen, VDC, and AMR, no later than 2005. *e*Plus filed this suit against Defendant for infringement of the patents-in-suit on May 4, 2009. Defendant did not obtain an opinion of counsel prior to the filing of this suit, and has refused to disclose the opinion of counsel it obtained shortly after the filing of this suit. Notwithstanding Defendant's knowledge of the patents-in-suit, Defendant continues its infringement. Defendant's infringement has been willful, deliberate and with knowledge of *e*Plus's rights under the patents-in-suit.

38. *e*Plus is entitled to its attorneys' fees and costs as this is an "exceptional case" pursuant to 35 U.S.C. § 285.

39. Each of the Accused S3 Systems[5] includes an Inventory Control module having a database for storing item data.

---

[5] The term "Accused Systems" as used herein refers to all versions of the S3 and M3 systems accused by *e*Plus of infringement, whether licensed separately or with other products.

40.     The Lawson Requisition module has the capability of generating a requisition using item data from the Item Master.

41.     The Lawson Purchase Order module has the capability of creating purchase orders from requisitions.

42.     One purpose of Lawson's Inventory Control module is to set up items within the Item Master database.

43.     When Lawson's Purchase Order module is used with Lawson's Requisition module, once a requisition has been approved, the Purchase Order module takes the approved requisition and creates a purchase order or purchase orders that are required to fulfill on the requisition.

44.     Lawson's Requisitions Self-Service application supports the hierarchical UNSPSC commodity classification schema.  Items in the Item Master can be associated with a commodity classification code and a category.  Selection of a product category, or sub-category, enables retrieval of all items that are associated with the same commodity classification code.

45.     There are a number of different ways in which data may be uploaded to the Item Master database in the Accused S3 Systems, including: (1) importing flat files using the IC 811 program or systems utilities included with the Lawson products; (2) importing the data using Lawson's EDI application; and (3) transferring the data using the PO536 program included with the Lawson products.

46.     The data that is imported into the Item Master may originate from a vendor catalog.

47.     Within the Accused S3 Systems, a vendor item links an Item Master record to a specific vendor.

12

48.     The Accused Systems each include the ability to search the item database using a number of different types of search queries.

49.     The Item Master of the Accused S3 Systems may include multiple items from multiple vendors, suppliers, distributors and manufacturers.

**B.     Lawson's Factual Contentions[6]**

Lawson disputes *e*Plus's factual contentions and makes the following factual contentions:

1.     The Lawson S3 software systems accused of infringement are: (1) Lawson Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules) (hereinafter "S3 Procurement"); (2) Lawson Procurement (i.e., the Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC] modules) is integrated with the Requisitions Self-Service application [SIP / SIPP] (hereinafter "RSS"); (3) S3 Procurement system (Lawson Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC]) integrated with the Requisitions Self-Service [SIP / SIPP] application is integrated with the Procurement Punchout [EPP / EPPH / EPRO] application (hereinafter "Punchout"); and (4) a Lawson system of any of the other three scenarios may also include the Lawson EDI [TCS / HBP] application of the S3 SCM suite for further functionality within the scope of the claims (hereinafter "S3 EDI").

2.     *e*Plus's technical expert does not accuse S3 Procurement or RSS of infringing claims 26 and 29 of the '683 patent.

3.     *e*Plus's technical expert does not accuse S3 Procurement of infringing claims 3, 6, and 28 of the '683 patent or claims 9, 21, and 29 of the '516 patent or claim 1 of the '172 patent.

---

[6] Lawson contends that *e*Plus should be precluded from presenting evidence and arguments in support of its damages claim because it did not disclose such evidence or arguments during discovery.  Many of the following Factual Contentions may be withdrawn (such as ¶¶77-91) if *e*Plus is precluded from presenting proof of damages.

4.      None of the accused software products either as sold or as used include a database with a catalog or multiple catalogs as defined by the Court.

5.      None the accused software products either as sold or as used allow for selecting one or more product catalogs to search or selecting portions of a catalog database to search or include a database maintained so that selected portions may be searched separately.

6.      None of the accused software products as sold or as used use UNSPSC codes to substitute one item for another item.

7.      None of the accused software products as sold or as used have an order list as defined by the Court.

8.      None of the accused software products have a cross-reference table as defined by the Court.

9.      *e*Plus claims that Lawson's S3 version 8.0.3, launched in 2002, was the first version of Lawson's procurement products that infringe.

10.     The prior versions of Lawson's software, including Version 7.2.4, are substantially the same as version 8.0.3.

11.     The Lawson M3 software system accused of infringement is the M3 e-Procurement application [EPR / M3PUR / M3ERE] (hereinafter "M3 e-Procurement").

12.     The current version of the Lawson M3 e-Procurement is 14.1.7.X.

13.     Lawson's S3 Procurement software (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules) (hereinafter "S3 Procurement") does not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

14.     Lawson's S3 Procurement software integrated with the Requisitions Self-Service application [SIP / SIPP] (hereinafter "RSS") does not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

15.     Lawson's S3 Procurement software integrated with RSS and integrated with Procurement Punchout [EPP / EPPH / EPRO] (hereinafter "Punchout") does not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

16.     Lawson's EDI [TCS / HBP] application of the S3 SCM suite integrated with S3 Procurement, RSS, or Punchout (hereinafter "S3 EDI") does not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

17.     Lawson's M3 e-Procurement application [EPR / M3PUR / M3ERE] (hereinafter "M3 e-Procurement") does not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

18.     Lawson's customers who have licensed S3 Procurement do not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

19.     Lawson's customers who have licensed RSS do not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

20.     Lawson's customers who have licensed Punchout do not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

21.     Lawson's customers who have licensed S3 EDI do not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

22.     Lawson's customers who have licensed M3 e-Procurement do not directly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

23.     Lawson does not exercise control or direction over its customers.

24.     Lawson does not exercise control or direction over the third party vendor sites that are connected via Punchout.

25.     Lawson does not exercise control or direction over any third party content providers.

26.     Lawson does not exercise control or direction over any third party suppliers, vendors, distributors, or manufacturers who sell items to Lawson's customers.

27.     Lawson does not make, use, license, sell, or offer for sale the computers needed by customers to use its software or practice the asserted claims.

28.     Lawson does not indirectly infringe any of the asserted claims, namely, claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

29.     Lawson did not have actual knowledge of the patents-in-suit until *e*Plus filed this lawsuit.

LIBA/2109329.7

30.    *e*Plus never gave Lawson  notice of infringement until it served this lawsuit in on May 28, 2009.

31.    *e*Plus never gave Lawson notice of the patents in suit until it served this lawsuit on Lawson on May 28, 2009.

32.    Lawson has good faith defenses to infringement, validity, and damages claims asserted by *e*Plus and has not acted and is not acting despite an objectively high likelihood that its actions constitute infringement of a valid patent.

33.    Lawson did not and is not willfully infringing the patents-in-suit.

34.    *e*Plus's asserted claims are invalid.

35.    U.S. Patent No. 5,712,989 ("the '989 patent") describes the Fisher RIMS system, is incorporated by reference into the disclosure of the patents-in-suit, and shares two of four inventors with the patents-in-suit.

36.    *e*Plus does not allege that Lawson infringes the '989 patent.

37.    The '989 patent is not owned by *e*Plus.

38.    The '989 patent was not considered as prior art during the prosecution of any of the patents-in-suit.

39.    The '989 Patent is prior art to the patents-in-suit under at least 35 U.S.C. §102(e).

40.    The Fisher RIMS system is prior art to the patents-in-suit under at least 35 patents-in-suit under at least 35 U.S.C. §§ 102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

41.    All of *e*Plus's asserted claims are anticipated by the '989 patent.

42.    All of *e*Plus's asserted claims are anticipated by the RIMS system.

17

43.     IBM's Technical Viewer/2 ("TV/2") is prior art to the patents-in-suit under at least 35 U.S.C. §102 (a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

44.     The PO Writer system is prior art to the patents-in-suit under at least 35 U.S.C. §102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

45.     The PO Writer manual is prior art to the patents-in-suit as a printed publication under 35 U.S.C. §§102(a) and (b).

46.     The PO Writer system and manual anticipate claims 3, 6, 26, 28, and 29 of the '683 patent and claims 1 and 6 of the '516 patent.

47.     The J-CON system is prior art to the patents-in-suit under at least 35 U.S.C. §102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

48.     The J-CON manual is prior art to the patents-in-suit as a printed publication under 35 U.S.C. §102(a).

49.     The J-CON system and manual anticipate claim 6 of the '683 patent.

50.     The Gateway 2000/MRO system is prior art to the patents-in-suit under at least 35 patents-in-suit under at least 35 U.S.C. §102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

51.     The Gateway 2000/MRO manual is prior art to the patents-in-suit as a printed publication under 35 U.S.C. §§102(a) and (b).

LIBA/2109329.7

52.     The Gateway system and manual anticipate claim 26 of the '683 patent and claims 1 and 2 of the '516 patent.

53.     U.S. Patent No. 5,319,542 ("the '542 patent") is prior art to the patents-in-suit at least under 35 U.S.C. §§ 102(a) and (b).

54.     The '542 patent anticipates claims 1, 2, 6, and 9 of the '516 patent.

55.     The combination of the Fisher RIMS system/'989 patent and TV/2 render obvious all of the asserted claims of the patents-in-suit.

56.     The combination of the Fisher RIMS system/'989 patent and U.S. Patent No. 4,992,940 ("the '940 patent) render obvious all of the asserted claims of the patents-in-suit.

57.     The combination of the J-CON system/J-CON manual and the '940 patent render obvious claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 9, 21, 22, and 29 of the '516 patent, and claims, and claim 1 of '172 patent.

58.     The combination of the J-CON system/ J-CON manual, the P.O. Writer system/ P.O. Writer manual render obvious claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 6, 9, 21, 22, and 29 of the '516 patent, and claims, and claim 1 of '172 patent.

59.     The U.S. Patent and Trademark Office was not aware of and did not consider the J-CON system/manual, the P.O. Writer system/manual, the Gateway system/manual, or the RIMS system as sold as prior art during the prosecution of the patents in suit.

60.     The '989 patent was incorporated by reference in the patents in suit but was not identified as prior art to the U.S. Patent and Trademark Office or considered as prior art by the U.S. Patent and Trademark Office.

LIBA/2109329.7

61.     None of the J-CON system/manual, the P.O. Writer system/manual, the Gateway system/manual, or the RIMS system or '989 patent are identified as referenced cited by the U.S. Patent and Trademark Office in connection with the prosecution of any of the patents in suit.

62.     Claims 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, and 29 of the '516 patent are invalid under 35 U.S.C. § 101 as directed to non-statutory subject matter.

63.     Claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under 35 U.S.C. § 112 ¶ 1 for not meeting the written description requirement.

64.     Claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent are invalid under 35 U.S.C. § 112 ¶ 2 and ¶6 as indefinite.

65.     Lawson does not lease, license, or sell hardware.

66.     ePlus knew about Lawson's allegedly infringing conduct but inexcusably failed to pursue its infringement claims in a timely and diligent manner from the time that it became aware of Lawson's allegedly infringing actions.

67.     Lawson has been prejudiced by ePlus's inexcusable delay in filing suit.

68.     ePlus is not entitled to damages.

69.     ePlus has not complied with the marking requirements of 35 U.S.C. § 287 and thus is not entitled to recover damages prior May 19, 2009.

70.     ePlus has granted six licenses to third parties to practice the patents-in-suit.

71.     ePlus will not be irreparably injured if a permanent injunction is not entered in this case.

72.     Any harm to ePlus that may have been caused by Lawson's actions can be cured by money damages.

73.     There is no evidence that any of Fisher Scientific's products practiced the claimed inventions of the patents-in-suit.

74.      There is no evidence that Procure (+),Content (+), or any other *e*Plus product practices or has practiced the claimed inventions of the patents-in-suit.

75.     There is no evidence that any of the secondary considerations that *e*Plus contends support a finding of no obviousness have any nexus to the claimed invention of the patents-in-suit.

76.     Lawson is entitled to its attorneys' fees and costs as this is an "exceptional case" pursuant to 35 U.S.C. § 285.

77.     In May 2001, *e*Plus acquired the commercial technology business assets of ProcureNet and assumed certain liabilities.

78.     Among other things, *e*Plus acquired the '683 and '516 patents and the pending application that which later became the '172 patent.  The patents were assessed by *e*Plus to have a fair market value of $12,000.  Their fair market value of $12,000 was established based upon "the expected useful economic life of such patents and the estimated value of similar patents held by others."  Fair market value was defined by *e*Plus for this purpose as the price that a willing buyer and willing seller would have agreed to for the purchase of the asset.

79.     *e*Plus also acquired ProcureNet's procurement software, which ePlus assessed a fair market value of $1,075,000.  This asset was valued assuming that it had a three year useful life before "it undergoes either substantial modifications and improvements, or is completely re-written from scratch, to meet customer needs and to keep pace with rapid changes in the hardware and software industry."  This computation also involved the use of an 18% discount rate that *e*Plus estimated was appropriate "in view of the current economic conditions and

21

significant risks and uncertainties involved in terms of customer acceptance, technological changes, competition, etc."

80.   ProcureNet was not profitable in any year of its operations that it owned the '683 and '516 patents and the pending application that which later became the '172 patent.

81.   *e*Plus is primarily an equipment sales and leasing company.  In the fiscal year ending March 31, 2009, approximately 98% of *e*Plus's revenues were derived from equipment sales and leasing.

82.   *e*Plus also sells electronic sourcing and procurement software, Procure(+) and Content(+), through *e*Plus's Systems, Inc. and *e*Plus Content, Inc.

83.   *e*Plus has had between $2 million and $10.4 million in annual sales of its electronic sourcing and procurement software between 2001 and 2009.

84.   *e*Plus's division which sells procurement software has never made a profit since ePlus acquired the patents in suit in 2001.

85.   *e*Plus and Lawson are not competitors.

86.   Neither Lawson nor *e*Plus have listed one another as competitors in SEC or other public filings.  Effective December 11, 2006, *e*Plus granted to SAP an irrevocable, fully paid-up, non-exclusive worldwide license to practice the patents-in-suit that included the right to sell and offer for sale software, including but not limited to the SRM, ERP, CRM, and mySAP Business Suite products, that in the absence of the license agreement would infringe at least one claim of the patents-in-suit.

87.   The license *e*Plus granted to SAP does not require SAP to mark any products with the patents in suit.

88.     SAP has continued to sell the SRM, ERP, CRM and mySAP Business Suite products since the effective date of its license from *e*Plus.

89.     Since ePlus granted SAP a license, SAP has not made any changes to its SRM, ERP, CRM and mySAP Business Suite products to avoid the patents-in-suit.

90.     SAP has not marked any of its products with the patent numbers of the patents in suit.

91.     There is no evidence that the SRM, ERP, CRM and mySAP Business Suite products that SAP has sold since the effective date of its license from *e*Plus were not covered by at least one claim of the patents-in-suit.

## VI.    TRIABLE ISSUES

### A.     *e*Plus's Triable Issues

*e*Plus identifies the following triable issues:

#### 1.      For the Jury:

1.     Whether Lawson has been directly infringing claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by making, using, importing, selling and offering for sale systems or methods incorporating the use of systems or methods incorporating the patented inventions.

2.     Whether Lawson has been indirectly infringing claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by contributing to or inducing other third parties to use systems or methods incorporating the patented inventions.

3.     Whether Lawson's infringement has been willful, deliberate and with knowledge of ePlus's rights under the patents in suit.

23

4.      Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as being anticipated under Section 102 of the patent laws.

5.      Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as obvious under Section 103 of the patent laws.

6.      Whether claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under Section 112, Para. One, because the patents do not contain a written description of the invention.

7.      Whether claims 1, 9, 21 and 29 of the '516 patent are invalid under Section 112, Para. One, because the claims are not enabled.

8.      The amount of damages ePlus is entitled to recover to compensate for Lawson's infringement.

        **2.      For the Court:**

9.      Whether *e*Plus's claims are barred by laches.

10.     Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 21 and 29 of the '516 patent and claim 1 of the '172 patent are invalid under Section 112, Para. Two, because the claims are not definite.

11.     Whether claim 9 of the '516 patent is invalid under Section 101, because the claim is not directed to statutory subject matter.

12.     Whether *e*Plus is entitled to enhanced damages and/or attorney's fees, as a result of this being an exceptional case pursuant to Section 285 of the patent laws, or as a result of Lawson's willful infringement.

13.     Whether *e*Plus is entitled to permanent injunctive relief.

24

14.     Whether *e*Plus is entitled to such other post-trial relief as the Court may deem just and proper upon a finding of infringement, including without limitation an accounting, and pre-judgment and post-judgment interest.

**B.     Lawson's Triable Issues**

Lawson identifies the following triable issues:

**A.     For the Jury:**

1.     Whether Lawson has been directly infringing claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by making, using, selling and offering for sale the following:

     a.   Lawson S3 Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules);

     b.   Lawson S3 Procurement (i.e., the Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC] modules) is integrated with the Requisitions Self-Service application [SIP / SIPP];

     c.   Lawson S3 Procurement (Lawson Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC]) integrated with the Requisitions Self-Service [SIP / SIPP] application is integrated with the Procurement Punchout [EPP / EPPH / EPRO] application;

     d.   a Lawson system of any of the other three scenarios may also include the Lawson EDI [TCS / HBP] application of the S3 SCM suite for further functionality within the scope of the claims; and

     e.   M3 e-Procurement application [EPR / M3PUR / M3ERE].

2.     Whether Lawson has been indirectly infringing claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by contributing to or inducing other third parties to use of the following software:

a.    Lawson S3 Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules);

b.    Lawson S3 Procurement (i.e., the Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC] modules) is integrated with the Requisitions Self-Service application [SIP / SIPP];

c.    Lawson S3 Procurement (Lawson Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC]) integrated with the Requisitions Self-Service [SIP / SIPP] application is integrated with the Procurement Punchout [EPP / EPPH / EPRO] application;

d.    a Lawson system of any of the other three scenarios may also include the Lawson EDI [TCS / HBP] application of the S3 SCM suite for further functionality within the scope of the claims; and

e.    M3 e-Procurement application [EPR / M3PUR / M3ERE].

3.     If Lawson infringes a valid claim, whether Lawson's infringement has been willful, deliberate and with knowledge of *e*Plus's rights under the patents in suit.

4.     Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as being anticipated under Section 102 of the patent laws.

26

5.      Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as obvious under Section 103 of the patent laws.

6.      Whether claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under Section 112, Para. One, because the patents do not contain a written description of the invention.

7.      If *e*Plus is not precluded from presenting evidence and arguments in support of damages, whether pre-suit damages are excluded because *e*Plus did not comply with the marking statute, 17 U.S.C. §287.

   **B.      For the Court:**

8.      Whether claims 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, and 29 of the '516 patent are invalid under Section 101, because the claims are not directed to statutory subject matter.

9.      Whether claims 3, 6, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid under Section 112, Para. Two, because the claims are not definite.

10.     Whether *e*Plus's claims are barred by laches.

11.     If Lawson infringes a valid claim, whether *e*Plus is entitled to attorney's fees, as a result of this being an exceptional case pursuant to Section 285 of the patent laws, or as a result of Lawson's willful infringement.

12.     If Lawson does not infringe and/or the claims are invalid, whether Lawson is entitled to attorney's fees as a result of this being an exceptional case pursuant to 285 of the patent laws.

27

13.     If Lawson infringes a valid claim, whether *e*Plus is entitled to permanent injunctive relief.

LIBA/2109329.7

Respectfully submitted,

August 26, 2010

_____/s/_____

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com
cmerritt@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements  (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus Inc.

LIBA/2109329.7

_____/s/_____

Dabney J. Carr, IV (VSB #28679)
Robert A. Angle (VSB #37691)
Megan C. Rahman (VSB #42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339


Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081


Attorneys for Defendant, Lawson Software, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2010, I will electronically file the foregoing:

## FINAL PRETRIAL ORDER

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile:  (612) 332-9081
lawsonservice@merchantgould.com

*Counsel for Defendant Lawson Software, Inc.*

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

_____/s/_____

Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com