**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE EPLUS FROM PRESENTING ANY NEW DAMAGES THEORIES OR FROM SEEKING DAMAGES AT TRIAL**

In ePlus's opposition to Lawson's motion to preclude damages, ePlus appears to suggest that at trial it intends to pursue the theory for a reasonable royalty that was already excluded by this Court as being unreliable and irrelevant. ePlus cannot avoid this Court's gatekeeping function and violate the Court's Order by advancing the same theory and evidence at trial that was found fundamentally flawed and excluded.

Because ePlus has not disclosed any damages evidence or theories in its required initial disclosures or in response to discovery requests beyond the excluded expert report, it cannot pursue damages at trial. ePlus asserts that "Defendant cites no authority for the proposition that ePlus has a duty to take the fruits of all the damages-related discovery and package them for Defendant's convenience." (ePlus Br. at 13.) But ePlus has not merely inconvenienced Lawson. ePlus disclosed nothing more than it intends to seek a "reasonable royalty." ePlus has not disclosed what royalty rate it seeks or what evidence it intends to rely upon. ePlus has not disclosed how this evidence would come in or which unnamed witnesses would testify to what the rate should be. Lawson has no idea of the amount of and basis for a reasonable royalty ePlus

will seek at trial. This is not mere inconvenience; it is trial by ambush.

Moreover, ePlus is not entitled to evade the duties of disclosure nor the consequences of non-disclosure merely because the discovery not disclosed is patent damages. The issue here is not whether a patentee may prove reasonable royalty damages without an expert, but whether ePlus has properly disclosed the damages it intends to claim at trial. It did not, and like any other party in any other case is subject to the exclusionary requirements of Rule 37 and *Southern States*. Lawson's motion to exclude should, therefore, be granted.

I.  **ePlus cannot proffer the same damages theory that the Court deemed unreliable and irrelevant when it excluded Mangum's report and testimony.**

   A.  **ePlus cannot bring in through the back-door the rejected Mangum royalty theory.**

ePlus asserts it intends to barrel forward with the rejected theory advanced in the Mangum report. In its response brief, ePlus asserts that its damages theory has not changed from the one the Court has ruled is unreliable, speculative, and inadmissible. (See ePlus Br. at 7.) Such a tactic is in direct defiance of the Court's decision excluding Mangum. Mangum's opinion and testimony was precluded in this case because:

- The use of litigation settlement agreements for purposes of determining a reasonable royalty is shaky under the law, as *Rude v. Westcott* warned that such agreements are unreliable and subsequent cases from all of the circuits counsel against the use of litigation settlement agreements.
- Reliance of only two of the five litigation settlement agreements is without a basis in law or fact.
- The conversion from a lump-sum to a reasonable royalty was speculative.
- The conversion from a range of 2.5-3.7% to a range of 5-6% was without basis.

(2010 08 10 Conf. (Ex. 1) at 29:12-35:12.)[1] These fundamental issues of unreliability and irrelevance do not vanish with the absence of Mangum's testimony.

---

[1] As discussed in detail in Lawson's first motion in limine, litigation settlement agreements are irrelevant for the purposes of determining a reasonable royalty. (2010 06 18 Lawson MIL 1;

2

The Ariba and SAP litigation settlement agreements were the fulcrum of Mangum's proposed royalty rate. But those settlement agreements are inadmissible for the purposes of damages. When the Court excluded Mangum, the Court considered the litigation settlement agreements irrelevant for the purposes of damages. (2010 08 10 Conf. (Ex. 1) at 37:24-39:6.) The Court even asked ePlus's counsel if ePlus asserted there was any *other* reason the litigation settlement agreements could still be admitted into the case. (*Id.*) ePlus's counsel responded that the settlements were relevant to obviousness and laches, but did not suggest that the settlements remained admissible for damages. (*Id.*) The litigation settlement agreements are excluded at least for the purposes of damages. Moreover, ePlus has never disclosed at any point in this case, including its response brief, how it could possibly prove at trial with admissible evidence how to "convert" those lump sum settlements into a running royalty rate suitable for this case. The Court has barred ePlus from relying on Dr. Mangum's speculative opinion based on these irrelevant litigation settlement agreements, and ePlus cannot now continue to rely on them, whether through an expert or otherwise.

Indeed, in ePlus's 30(b)(6) deposition regarding prior licenses, ePlus's designated representative Mr. Farber admitted that ePlus was unaware of the accused SAP and Ariba sales even when the cases settled. (2009 12 17 Farber Depo. (Ex. 2) at 416:6-418:2.) He cited attorney-client privilege when asked about the circumstances of the settlement. (*Id.*) ePlus has disclosed no grounds whatsoever that could support use of the SAP or Ariba settlements for purposes of calculating a royalty in this case. Since those settlements were the focus of its excluded expert's theory, the theory should be excluded as completely groundless and undisclosed.

---

2010 07 12 Lawson Reply MIL 1.)

ePlus's attempt to rely on the same unreliable and rejected theory and evidence to prove damages must be rejected. ePlus cannot offer through the back-door that which has been barred from entering in the front. The main difference is that the back door will be even more unreliable and speculative then the front door, because Lawson does not know who the witnesses are, or what they will say, or what ePlus will say the damages should be, or why.

> **B. To the extent ePlus attempts to offer a new undisclosed theory and rely on evidence not previously disclosed as the basis for damages, that effort should also be excluded.**

ePlus asserts that it is offering the same theory as the one rejected in the Mangum report. ePlus provides no new royalty rate, and no new grounds for such a new royalty rate. In its responsive brief, however, ePlus presents a bullet-pointed list of what it describes as "damages evidence disclosed during discovery". (ePlus Br. at 9-13.) Cryptically, this litany varies from the evidence Dr. Mangum relied upon, suggesting ePlus will in fact proffer a new theory and rate. ePlus does not, however, identify what rate it will seek based on this showing, nor which evidence relied upon to support it. ePlus apparently argues that, because information is found *somewhere* amidst the millions of documents and thousands of deposition pages of discovery in this case, it is entitled to wait until witnesses are on the stand to reveal its royalty rate and the basis for that rate.

This argument makes a mockery of the disclosure requirements of Rules 26, 33, and 37. The question is not whether ePlus can find information in the documents to support a damages claim. The issue is that ePlus failed to *disclose* any of this evidence as evidence relied upon for a royalty, and failed to disclose any royalty that is not the result of its excluded expert's fundamentally flawed analysis. The rules make clear that damages must be disclosed, and failure to do so may result in exclusion of damages at trial.

As an example, in ePlus's responsive brief it asserts that ePlus's commercial products of SupplyLink, Cornerstone, ProcureNet, Content+, Procure+, and Catalog+ are relevant to *Georgia-Pacific* factor eight. (ePlus Br. at 10 (second of three bullet points).) In his analysis of *Georgia-Pacific* factor eight, Mangum never discusses, mentions, or otherwise relies on ePlus's commercial products. (Mangum Rept. (Ex. 3) at 22-25.) Likewise, ePlus points to a discovery response regarding awards for ePlus's commercial products and asserts that this disclosure is relevant to *Georgia-Pacific* factors nine and ten. (ePlus Br. at 11 (first of three bullet points).) In his analysis of *Georgia-Pacific* factors nine and ten, Mangum likewise never discusses, mentions, or otherwise relies on ePlus's commercial product. (Mangum Rept. (Ex. 3) at 25-28.) None of the information that ePlus cites was tied to its damages claim in discovery disclosures, and even its excluded expert did not rely upon it.

ePlus urges that Lawson is sophisticated enough that it should have read ePlus's mind and known it would rely on this evidence. This is fantasy. Indeed, with respect to the example cited above, ePlus actually moved to *exclude* any evidence of its commercial embodiments, and the Court granted that motion. (Doc. No. 280; Doc. No. 368.) Such evidence would be critical to proving that the commercial products are actually covered by the patent claims at issue. The absence of any proof of what these products are makes them irrelevant to damages or any other issue in the case. *See, e.g., Demaco Corp. v. F. von Langsdorff Licensing Ltd*, 851 F.2d 1387, 1392 (Fed. Cir. 1988) (patentee bears a burden to produce evidence establishing a nexus between commercial success and the patented invention). There is no way Lawson could have known ePlus would rely on the commercial products that ePlus's damages expert failed to rely upon and that ePlus itself sought to exclude from trial to support a new damages theory.

Even after reading ePlus's brief, with trial under two weeks away, it remains unclear whether ePlus is proffering the same damages theory as the one excluded, or some new theory. Lawson does not know what reasonable royalty rate ePlus seeks, what evidence it will rely on to support that rate, what analysis will be used to justify the rate, or which witnesses will testify in support of the rate. Its damages disclosures remain void of any such information. Lawson should not have to resort to Tarot cards to ascertain the basis for ePlus's multi-million dollar damages demand at this late date.

The *Microstrategy* decision is compelling support for the relief sought here. ePlus attempts to avoid *MicroStrategy* by arguing that its damages theory has not changed from the one that was precluded in this case. As shown above, if it is true that ePlus's theory is the same, the Court has already ruled that the theory is speculative and inadmissible, so this gets ePlus nowhere. To the extent ePlus intends to change to a new damages theory, *MicroStrategy* shows that ePlus's failure to timely disclose such an alternative theory bars damages here.

This is not a Catch-22. ePlus could have disclosed its expert report, but also provided a response to the substance of Lawson's damages interrogatory and a proper damages disclosure under Rule 26 that would have shown a basis for a royalty aside from the expert opinion. Its prior enforcement efforts involving the patents in suit could have provided a solid head start toward providing such a disclosure. ePlus simply chose not to, perhaps for the tactical reason that the longer it deferred disclosure of its damages theories, the less time Lawson would have to take discovery to refute them. Thus, ePlus had total control of its actions that led to this fate.

Whether or not evidence that could support a particular royalty rate emerged in discovery, the fact remains that ePlus never identified either an appropriate royalty rate not tainted by Dr. Mangum's flawed analysis, nor evidence it contends it will rely upon to support

6

such a rate. Whether some evidence may exist which could have supported a viable theory is no longer the question. The time for that has passed. Because ePlus did not disclose the amount of and basis for any applicable reasonable royalty rate, it cannot seek damages based on such a rate at trial.

## II. There is no special rule in patent cases that a patentee does not need to disclose the amount of and basis for any applicable reasonable royalty rate.

ePlus does not dispute that Federal Rule of Civil Procedure 26(a)(1)(iii) requires "computation of each category of damages claimed" and that, apart from the excluded expert report, ePlus disclosed nothing about its damages claim other than it sought "at least" an unidentified reasonable royalty. Nor does ePlus dispute that Lawson served an interrogatory seeking "the amount of and basis for any applicable reasonable royalty rate" and that ePlus disclosed only that it was entitled to damages "in no event less than a reasonable royalty" until it cited its damages expert report on the last day of fact discovery. ePlus has not disclosed the amount of and basis for any applicable, admissible reasonable royalty rate in violation of Rules 26 and 37. The "automatic sanction" of exclusion is mandated in this case.

ePlus argues that its theory of damages—that it would seek a reasonable royalty—has not changed and that the rule in *Southern States* does not apply here because ePlus disclosed that it was seeking a "reasonable royalty." This is a meaningless disclosure. Rule 26(a) requires that a plaintiff reveal not only the type of damages it will seek but also a computation of those damages. The point of this Rule is to provide a defendant of notice of what damages the plaintiff seeks and why, to give the defendant an opportunity to defend itself. Instead of rebutting a true damages computation, Lawson was left to fight a shadow. It is absurd to suggest that it is sufficient for a patentee to merely disclose it is seeking a "reasonable royalty" without any further disclosure on that issue and then be permitted to seek damages at trial under any

7

undisclosed royalty theory it wants.

ePlus also argues that the *Southern States* rule does not apply because ePlus effectively disclosed the relevant facts to Lawson outside of damages discovery, even if it did not present them in the required discovery responses. But this is not the case. As discussed above, the information disclosed during discovery was not tied to ePlus's damages claim. ePlus cannot place the burden of disclosing its damages claim on Lawson. *See MicroStrategy Inc. v. Business Objects*, 429 F.3d 1344, 1353-54 (Fed. Cir. 2005) (affirming court's decision to bar plaintiff from pursing new damages theories at trial when it did not properly supplement its answers interrogatories without any suggestion that the underlying facts had not previously been disclosed).

ePlus understands this rule full well. It successfully excluded Lawson's ability to rely on its Version 5 and Version 6 systems to support Lawson's invalidity contentions. The exclusion had nothing to do with failure to disclose those versions as prior art in discovery. Lawson's prior contention answers included a detailed explanation of Lawson's prior art systems. Instead, the reason was that Lawson's supplemental invalidity contentions did not repeat the reliance on these prior art systems as proof of invalidity. The issue was *not* whether the information was *disclosed*, but rather Lawson *relied on* the information for purposes of invalidity.

ePlus argued in its motion to strike those systems that "The consequences of Lawson's belated disclosure are clear: because Lawson chose not to *rely upon* these prior art references and invalidity theories in its Second Supplemental Statement, it should not be permitted to present these defenses at trial." (Doc. No. 213 at 18 (emphasis added).) Likewise, because of ePlus's failure to *rely upon* any evidence to support a reasonable royalty rate outside the excluded expert report, ePlus should not be permitted to present such a claim for damages at trial.

8

ePlus appears to argue that patent cases are special and, in such cases, a patentee does not have to disclose the amount of or basis for any damages it is seeking, attempting to distinguish *MicroStrategy* on those grounds. (ePlus Br. at 16.) This is not the law. *See, e.g.*, *Veritas Operating Corp. v. Microsoft Corp.*, No. 06- 00703, 2008 U.S. Dist. LEXIS 55627, at *77-81 (W.D. Wash. Jan, 17, 2008) (Magistrate's Report and Rec.) (precluding patentee from asserting a right to recover damages because patentee failed to disclose evidence of how to compute reasonable royalty damages pursuant to Rule 26 and 37 and was unable to carry its burden of proof on damages), *approved and adopted by*, No. 06-0703, 2008 U.S. Dist. LEXIS 18820 (W.D. Wash. March 11, 2008). The purpose of Rule 37(c)(1) is "preventing surprise and prejudice to the opposing party." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Lawson will be surprised by ePlus's damages theory at trial because ePlus has not disclosed a theory. The fact that this is a complex patent case makes the exclusionary rule even more appropriate to apply, not a rule to be ignored.

The *Dow* case is not to the contrary. In *Dow*, the Federal Circuit rejected the Middle District of Florida District Court's suggestion that there was no evidence in the record supporting a reasonable royalty. *Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1381-82 & n.4 (Fed. Cir. 2003). *Dow* did not deal with the failure of a plaintiff to disclose the amount of and basis for any applicable reasonable royalty rate, and the defendant in *Dow* did not seek to exclude undisclosed evidence under Rule 37, as is the case here and in *Veritas* and *MicroStrategy*. *Dow* simply does not address whether a plaintiff may advance an undisclosed damages theory at trial under *Southern States*.

And, as previously discussed, the *Bowling* case is inapposite to this case. In *Bowling*, there was evidence of an appropriate royalty rate. *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192,

9

203-04 (D.R.I. 2008). There was no challenge to the sufficiency of the plaintiff's damages disclosures at any time—indeed, there was no challenge at all until after trial, when the defendant argued that there was insufficient evidence supporting the jury's verdict of $446,182.40. The *Bowling* case is just a run-of-the-mill example of a defendant challenging a jury's damages award—not a case where the plaintiff was challenged because it seeks to proceed to trial on an undisclosed damages theory.

ePlus does not dispute, as Lawson contended in its opening brief, that ePlus was perfectly capable of disclosing the basis for a royalty rate early in discovery. Nor does it dispute Lawson's assertion that ePlus made a tactical decision to keep Lawson in the dark about the royalty rate and grounds therefore until 15 days remained in fact discovery, making it very difficult for Lawson to gather fact discovery to refute the analysis of the excluded Dr. Mangum. ePlus and its counsel are also sophisticated, enough so to understand the risk they took with such an approach and the distinct possibility that doing so could result in exclusion. Under the *Southern States* analysis, the prejudice to Lawson from allowing an eight-figure trial-by-ambush damages presentation at this late date is significant. It far outweighs the self-induced consequences that should befall ePlus from its deliberate choice to rely entirely on the weak, unreliable, and methodologically-flawed analysis of its excluded expert.

## IV. Conclusion

ePlus argues that its theory is the same as the excluded theory. There is no basis for the Court to countenance such disregard for its exclusionary ruling of Mangum because of his fundamentally flawed and inadmissible theory. ePlus cryptically suggests that the evidence may support a different royalty theory, but even at this late date it refuses to disclose what that theory may be, or even the number it might seek. All Lawson knows about it is that (1) ePlus could

10

have, but did not, disclose that theory during discovery when it was supposed to, (2) ePlus's decision was a tactical one of its own making, and (3) Lawson would be extremely prejudiced if ePlus were allowed to either present the same excluded theory at trial, or present a new theory that even as of today remains undisclosed, with only days remaining before trial.  Because ePlus failed to disclose the amount of and basis for any applicable reasonable royalty rate during discovery other than its excluded expert report, pursuant to Rule 37 and *Southern States* it cannot seek damages at trial.  For the foregoing reasons, Lawson respectfully requests that this Court bar ePlus from seeking damages at trial.

>                       LAWSON SOFTWARE, INC.
>
>
>                       By   /s/
>                              Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 31st day of August, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

      /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*