**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAWSON SOFTWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF *e*PLUS INC.'S PROPOSED JURY INSTRUCTIONS**

Plaintiff, *e*Plus, Inc. ("*e*Plus"), through counsel, hereby submits the following proposed jury instructions for the trial of this action. *e*Plus reserves its right to amend, supplement, or modify these proposed jury instructions as the case proceeds through trial and based upon conferences with opposing counsel. *e*Plus does not waive any objections to instructions relating to issues that are or have been the subject of pending motions, including motions in limine. Neither does *e*Plus concede, by submitting the proposed instructions, that Defendant has met its evidentiary burdens with respect to any of the issues to which the proposed instructions pertain.

## Table of Contents

P-1:  Preliminary Jury Instructions ................................................................................ 1

P-2:  Glossary of Patent Terms ...................................................................................... 8

P-3:  Summary of Patent Issues ...................................................................................... 9

P-4:  Claim Construction – Generally............................................................................ 10

P-5:  Claim Construction for the Case ............................................................................ 11

P-6:  Construction of Means-Plus-Function Claims for the Case.................................. 13

P-7:  Infringement – Generally ...................................................................................... 17

P-8:  Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial ................ 19

P-9:  Direct Infringement – Literal Infringement .......................................................... 20

P-10:  Direct Infringement: Multiple Alleged Infringers................................................ 21

P-11:  Infringement:  Capable Of Infringement.............................................................. 22

P-12:  Infringement And Improvements To Patented Invention ..................................... 23

P-13:  Inducing Patent Infringement............................................................................... 24

P-14:  Induced Infringement – Circumstantial Evidence................................................ 25

P-15:  Indirect Infringement—Contributory Infringement ............................................. 26

P-16:  Direct Infringement By "Literal Infringement" Of Section 112, Paragraph 6 Claim
Requirements ............................................................................................................ 27

P-17:  Independent And Dependent Claims ..................................................................... 29

P-18:  Infringement of Open Ended or "Comprising" Claims......................................... 30

P-19:  Summary of Invalidity Defenses........................................................................... 31

P-20:  Prior Art Defined................................................................................................... 32

P-21:  Anticipation ........................................................................................................... 33

P-22:  Corroboration Of Oral Testimony......................................................................... 35

P-24:  Prior Public Use .................................................................................................... 38

P-25:  Printed Publication ................................................................................................ 39

P-26: Printed Publications – Accessibility to Public ................................................................. 41

P-27: Prior Invention ................................................................................................................ 43

P-28: Prior Patent ..................................................................................................................... 45

P-29: Obviousness .................................................................................................................... 46

P-30: Scope and Content of the Prior Art ................................................................................. 48

P-31: Differences Between the Claimed Invention and the Prior Art ........................................ 49

P-32: Level of Ordinary Skill .................................................................................................... 51

P-33: Factors Indicating Nonobviousness ................................................................................. 52

P-34: Enablement ...................................................................................................................... 53

P-35: Written Description Requirement ..................................................................................... 55

P-36: Damages – Generally ....................................................................................................... 57

P-37: Date Of Commencement Of Damages – Products ............................................................ 58

P-38: Damages – Reasonable Royalty ....................................................................................... 60

P-39: Reasonable Royalty – Doubts Resolved Against Infringer ............................................... 61

P-40: Reasonable Royalty – Generally ...................................................................................... 62

P-41: Reasonable Royalty – Definition ...................................................................................... 63

P-42: Reasonable Royalty – Relevant Factors ........................................................................... 64

P-43: Reasonable Royalty – Timing .......................................................................................... 66

P-44: Willful Infringement ........................................................................................................ 67

**P-1:  Preliminary Jury Instructions**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

## I.      The Nature of the Action and the Parties

This is a patent case.  The patents involved in this case relate to electronic sourcing and procurement software, and related business applications, services, systems and methods.

During the trial, the parties will offer testimony to familiarize you with this technology.

*e*Plus is the owner of three patents, which are identified by the Patent Office number: United States Patent No. 6,023,683 or the '683 Patent; United States Patent No. 6,055,516 or the '516 Patent; and United States Patent No. 6,505,172 or the '172 Patent.  The patents may also be referred to as "the *e*Plus patents" or the "patents-in-suit."  Lawson Software, Inc., is the other party here.

### A.      United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO").  A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the patented invention or a product made by the patented process within the United States or importing it into the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO.  The application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others

skilled in the art to do so.  The specification must also describe what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered sentences. These numbered sentences are called the claims of the patent. The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

An application for a patent is reviewed by a trained PTO examiner.  The examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.  When the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case.  But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.  The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed").  This writing from the patent examiner is called an "office action."  More often than not, the initial office action by the patent examiner rejects the claims.  The applicant then responds to the office action and sometimes changes the claims or submits new claims.  This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history."  You may also hear the "prosecution history" referred to as  the "file history" or the "file wrapper."

**B.      Patent Litigation**

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention or a product made by a patented process, as defined by the claims, within the United States before the term of the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.  The patent owner must prove infringement of the claims of the patent.  The patent owner must also prove the need for damages.

A granted patent is presumed to be valid.  But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the PTO has not considered, for whatever reason, invalidating prior art that is presented to you.  A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid.  The accused infringer must prove invalidity by clear and convincing evidence. I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

**II.     Contentions of the Parties**

*e*Plus contends that Lawson makes, uses, offers to sell, or sells products and methods that infringe claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent, and claim 1 of the '172 patent.  *e*Plus must prove that Lawson infringes one of these

asserted claims by a preponderance of the evidence.  That means that *e*Plus must show that it is more likely that one of Lawson's allegedly infringing products or methods infringe than that it does not infringe.

To determine infringement, you must compare the accused products and methods with each claim that *e*Plus asserts is infringed.  It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is infringed only if Lawson's product or method includes each and every element or method step in that patent claim.  If Lawson's product or method does not contain one or more elements or method steps in that claim, Lawson does not infringe that claim.  You must determine infringement with respect to each patent claim individually.

*e*Plus also contends that Lawson indirectly infringes the asserted claims of the *e*Plus patents by contributing to or inducing other third parties to make and use products or methods incorporating the patented inventions.  In addition, *e*Plus contends that Lawson's infringement has been and continues to be willful.  I will provide you with additional instructions as to the legal requirements for indirect infringement and willfulness at the conclusion of the evidence.

Lawson denies that it is infringing the asserted claims of *e*Plus's patents, either directly or indirectly.  Lawson also contends that the asserted claims are invalid.  Lawson contends that the asserted claims are invalid based upon theories of anticipation under Section 102 of the patent statute, obviousness under Section 103 of the patent statute, and that some of the claims are either not enabled or lack an adequate written description pursuant to Section 112 of the patent statute,  I will provide you with additional instructions as to the legal requirements for these defenses at the conclusion of the evidence.

- 4 -

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the *e*Plus patents, you, the jury, have the ultimate responsibility for deciding whether the claims of the *e*Plus patents are valid.  Lawson must prove invalidity by clear and convincing evidence.  This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

## III.    Trial Procedure

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

- 5 -

After the opening statements, *e*Plus will present its evidence in support of its contention that some of the claims of the '683, '516, and '172 patents have been and continue to be infringed by Lawson, either directly or indirectly, and that the infringement has been and continues to be willful.  To prove infringement of any claim, *e*Plus must persuade you that it is more likely than not that Lawson has infringed that claim.  To persuade you that any infringement was willful, *e*Plus must prove that the infringement was willful by clear and convincing evidence.

Lawson will then present its evidence that the claims of the '683, '516, and '172 patents are invalid.  To prove invalidity of any claim, Lawson must persuade you by clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, Lawson will put on evidence responding to *e*Plus's proof of infringement and willfulness.

*e*Plus may then put on additional evidence responding to Lawson's evidence that the claims of the patents are invalid, and to offer any additional evidence of infringement and willfulness.  This is referred to as "rebuttal" evidence.  *e*Plus's "rebuttal" evidence may respond to any evidence offered by Lawson.

Finally, Lawson may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of the claims of the *e*Plus patents by responding to any evidence offered by *e*Plus on that issue.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments.  These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.

<u>Authorities</u>:

2007 Model Patent Jury Instructions of the American Intellectual Property Law Association ("AIPLA Model Instruction(s)"), Preliminary Jury Instructions (modified to fit the facts of this case) (Section III omitted); Federal Circuit Bar Association Model Jury Instructions ("FCBA Model Instruction(s)"), No. A(5) (modified to fit the facts of the case) (utilized as Section III of proposed instruction).

**P-2:  Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper** – See "prosecution history" below.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

<u>Authorities</u>:

AIPLA Model Instructions, Glossary of Patent Terms.

**Post Trial Instructions**

**P-3:  Summary of Patent Issues**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.   You must decide the following main issues:

1.   Whether *e*Plus has proved by a preponderance of the evidence that Lawson has directly or indirectly infringed Claims 3, 6, 26, 28 and 29 of the '683 Patent.

2.   Whether Lawson has proved by clear and convincing evidence that Claims 3, 6, 26, 28 and 29 of the '683 Patent are invalid.

3.   Whether *e*Plus has proved by a preponderance of the evidence that Lawson has directly or indirectly infringed Claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent.

4.   Whether Lawson has proved by clear and convincing evidence that Claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent are invalid.

5.   Whether *e*Plus has proved by a preponderance of the evidence that Lawson has directly or indirectly infringed Claim 1 of the '172 Patent.

6.   Whether Lawson has proved by clear and convincing evidence that Claim 1 of the '172 Patent is invalid.

7.   If you find that Lawson has infringed any of the asserted claims, whether *e*Plus has proved by clear and convincing evidence that Lawson's infringement is or has been willful.

8.   What amount of damages, if any, *e*Plus has proved.


Authorities:

AIPLA Model Instructions, Post Trial Instructions, No. 1 "Summary of Patent Issues" (modified to fit the facts of this case).

**P-4:  Claim Construction – Generally**

Before you decide whether Lawson has infringed the claims of *e*Plus's patents or whether *e*Plus's patents are invalid, you will have to understand the patent claims.  The patent claims are numbered sentences at the end of the patent.  The patent claims involved here are Claims 3, 6, 26, 28, and 29 of the '683 Patent, Claims 1, 2, 6, 9, 21, 22 and 29 of the '516 Patent, and Claim 1 of the '172 Patent.  For the '683 Patent, the claims begin at column 24, line 57, of the patent, which is Exhibit PX-1 in evidence.  For the '516 Patent, the claims begin at column 23, line 42, which is Exhibit PX-2 in evidence.  For the '172 Patent, claim 1 begins at column 23, line 54, which is Exhibit PX-3 in evidence.  The claims are intended to define, in words, the boundaries of the invention.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

<u>Authorities</u>:

AIPLA Model Instruction No. 2.0 (as modified to fit the facts of this case); 35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988).

**P-5:  Claim Construction for the Case**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

Subset  ( which appears in the '516 Patent, Claims 1, 2, and 29)

The term "subset" is construed to mean less than all of a set.

Protocol  ( which appears in the '516 Patent, Claims 1, 2, 6, and 29)

The term "protocol" is construed to mean a procedure.

Catalog/Product Catalog (which appears in the '683 Patent, Claims 3, 26, 28, 29; and the '516 Patent, Claims 1, 2, 6, 9, 21, 22, 29)

The term "Catalog" and "product catalog" mean an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

Order List  ( which appears in the '172 Patent, Claim 1)

The term "order list" is construed to mean a list of desired catalog items.

Matching Items (which appears in the '683 Patent, Claims 3, 6, 26, 28, and 29; and the '172 Patent, Claim 1)

The term "matching items" means the search results.

Selected Matching Items (which appears in the '683 Patent, Claims 3, 6, 26, 28, and 29; and the '172 Patent, Claim 1)

This term is construed to mean requisition items.

Cross Reference Table (which appears in the '516 Patent, Claims 21, 22, and 29)

The term "cross-reference table" means a table that links vendors items determined to be equivalent between two or more different vendors.

<u>Electronic Sourcing System</u> (which appears in the '683 Patent, Claims 3, and 6; the '516 Patent, Claims 1, 2, 6, 9, 21, 22, and 29; and the '172 Patent, Claim 1)

The term "electronic sourcing system" means an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.

<u>Converting Data Relating To A Selected Matching Item And An Associated Source To Data Relating To An Item And A Different Source</u> (which appears in the '683 Patent, Claims 28, and 29)

This claim term means substituting data relating to a selected matching item and an associated source to data relating to an item and a different source.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

<u>Authorities</u>:

AIPLA Model Instruction No. 2.1 (as modified to fit the facts of this case); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996); *ePlus v. Lawson Software, Inc.,* Civil Action No. 3:09-CV-620 (REP) (*Markman* Order) (Apr. 30, 2010).

**P-6:   Construction of Means-Plus-Function Claims for the Case**

In addition to the claim terms I just mentioned, I must provide you with constructions of several claims which use the phrase "means for" performing a stated "function."  For example, claim 3 of the '683 Patent uses the phrase "means for selecting the product catalogs to search." This "means for" phrase has a special meaning in patent law.  It is called a "means-plus-function" requirement.  It does not cover all of the structures that could perform the function set forth in the claim, namely, "selecting the product catalogs to search" in the example that I just gave to you.  Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to at least one of the structure(s) described in the Patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another.  For purposes of this case, I have identified the structure(s) described in the patents that perform the functions identified in these claims.  Claim 6 of the '683 Patent and Claim 1 of the '172 Patent also include means-plus-function requirements.  You should apply my definition of the function and the structures described in these patents for performing it as you would apply my definition of any other claim term.

**Means for selecting the product catalogs to search ['683 Patent, Claim 3]**

Function:  The function of this element is to select the product catalogs to search.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents.  See e.g., '683 Patent at 4:5-6; 5:9-27; 8:40-56; 9:52-10:20; FIGS. 1-2 (describing search program 50 and requisition/purchasing system 40).

**Means for searching for matching items among the selected product catalogs ['683 Patent, Claim 3]**

- 13 -

Function:  The function of this element is searching for matching items among the selected product catalogs.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.  See e.g., '683 Patent at 4:1-6:38; 7:61-12:37; FIGS. 1-2; APP. III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

### Means for searching for matching items in the database ['683 Patent, Claim 6]

Function:  The function of this element is searching for matching items in the database.

Corresponding structure:  The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.  See e.g., '683 Patent at 4:1-6:38; 7:61-12:37; FIGS. 1-2; APP. III-V and VII (describing local computer 20, search program 50, TV/2, and search program 250).

### Means for building a requisition using data related to selected matching items and their associated source(s) ['683 Patent, Claims 3 and 6]

Function:  The function of this element is building a requisition using data relating to selected matching items and their associated source(s).

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents.  See e.g., '683 Patent at 1:25-35; 3:3-19; 6:40-65; 7:36-8:14; 15:46-49; FIGS. 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

### Means for processing the requisition to generate one or more purchase orders for the selected matching items ['683 Patent, Claims 3 and 6]

Function:  The function of this element is processing the requisition to generate one or more purchase orders for the selected matching items.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.  See e.g., '683 Patent at 1:37-59; 3:3-24; 10:43-54; 15:20-59, FIGS. 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

### Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source ['683 Patent, Claims 3 and 6]

Function:  The function of this element is converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents. See e.g., '683 Patent at 4:60-5:8; 10:43-54; 14:35-45; 16:14-32; 17:19-54, Appendices VIII-X.

**Means for entering product information that at least partially describes at least one desired item ['172 Patent, Claim 1]**

Function:  The function of this element is entering product information that at least partially describes at least one desired item.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents.  See e.g., '172 Patent at 4:6-6:28; 7:66-8:19; 9:55-12:28; 18:23-50; FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

**Means for searching for matching items that match the entered product information in the selected portions of the database ['172 Patent, Claim 1]**

Function:  The function of this element is searching for matching items that match the entered product information in the selected portions of the database.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.  See e.g., '172 Patent at 4:6-6:28; 7:66-8:19; 9:55-12:41; FIGS. 1-2; Appendices III-V and VII (describing local computer 20, search program 50, TV/2 and search program 250).

**Means for generating an order list that includes at least one matching item selected by said means for searching ['172 Patent, Claim 1]**

Function:  The function of this element is generating an order list that includes at least one matching item selected by said means for searching.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.  See e.g., '172 Patent at 4:6-6:28; 7:66-8:13; 9:55-12:28; 18:23-50;

Appendix VI, FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

**Means for building a requisition that uses data obtained from said database relating to selected matching items on said order list ['172 Patent, Claim 1]**

Function:  The function of this element is building a requisition that uses data obtained from said database relating to selected matching items on said order list.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents.  See e.g., '172 Patent at 1:30-40; 3:7-28; 6:45-7:3; 7:41-8:19; FIGS 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

**Means for processing said requisition to generate purchase orders for said selected matching items ['172 Patent, Claim 1]**

Function:  The function of this element is processing a requisition to generate purchase orders for selected matching items.

Corresponding Structure:  The corresponding structures, materials, or acts, of this element are disclosed as a purchase order generation module operating on a computer system having access to the requisition, and its equivalents.  See e.g., '172 Patent at 1:42-55; 3:23-28; 10:53-55; 15:39-61; FIGS 1-3 (describing systems and processes that operate to generate purchase orders including requisition/purchasing system 40).

Authorities:

FCBA Model Instruction No. 2.3(a) (as modified to fit the facts of the case); 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-plus-function limitation with two functions must perform both claimed functions and be an equivalent structure. Equivalence of structure can be shown here if the objects perform both identical functions in substantially the same way to achieve substantially the same result.); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999) (distinguishing between means- or step-plus-function to equivalents available at time of issuance and application of doctrine of equivalents to after-arising inventions); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1351 (Fed. Cir. 1999) ("The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a section 112, ¶ 6, claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998); *ePlus v. Lawson Software, Inc.,* Civil Action No. 3:09-CV-620 (REP) (*Markman* Order) (Apr. 30, 2010).

**P-7:  Infringement – Generally**

Questions 1 through 13 of the Verdict Form ask that you determine whether *e*Plus has shown by a preponderance of the evidence whether any of Lawson's accused products or methods infringe, either directly or indirectly, the asserted claims of the three *e*Plus patents.

I will now instruct you as to the rules you must follow when deciding whether *e*Plus has proven that Lawson infringed any of the claims of the *e*Plus patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention or a product made by a patented method within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, *e*Plus alleges that Lawson's accused products and methods infringe claims 3, 6, 26, 28, and 29 of the '683 Patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent, and claim 1 of the '172 Patent.

You have heard evidence about both *e*Plus's commercial products and methods and Lawson's accused products and methods.  However, in deciding the issue of infringement you may not compare Lawson's accused products and methods to *e*Plus's commercial products and methods.  Rather, you must compare Lawson's accused products and methods to the claims of the *e*Plus patents when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused product or method is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

<u>Authorities</u>:

AIPLA Model Instruction No. 3.0 (as modified to fit the facts of this case); 35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*,517 U.S. 370 (1996).

**P-8:  Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial**

In this case, *e*Plus asserts that Lawson has directly infringed the patent.  Lawson would be liable for directly infringing *e*Plus's patent if you find that *e*Plus has proven that it is more likely than not that Lawson has made, used, offered to sell, sold, or imported into the United States the invention defined in at least one claim of *e*Plus's patents.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

Authorities:

AIPLA Model Instruction No. 3.1 (as modified to fit the facts of this case); 35 U.S.C. § 271(a); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

**P-9:  Direct Infringement – Literal Infringement**

To determine literal infringement, you must compare the accused product or method with each claim that *e*Plus asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Lawson's product or method includes each and every element or method step in that patent claim.  If Lawson's product or method does not contain one or more elements or method steps recited in a claim, Lawson does not literally infringe that claim.  If *e*Plus alleges infringement of a method claim, and there are others apart from Lawson that performed one or more method steps of the claim, there can be no infringement unless *e*Plus has proven that Lawson controlled or directed the activity of the others who performed the method steps.

You must determine literal infringement with respect to each patent claim individually.

The accused product or method should be compared to the invention described in each patent claim it is alleged to infringe, not to *e*Plus's preferred or commercial embodiment of the claimed invention.  The same element or method step of the accused product or method may satisfy more than one element of a claim.

<u>Authorities</u>:

AIPLA Model Instruction No. 3.2 (as modified to fit the facts of this case); *BMC Resources v. Paymentech, L.P.,* 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

**P-10:  Direct Infringement: Multiple Alleged Infringers**

It is not necessary for the acts that constitute infringement to be performed by one person or entity.  When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement.  An alleged infringer cannot avoid infringement of a patented process or method by having another person or company perform one step of the process or method.  Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

*e*Plus alleges that Lawson and a third party have each separately infringed, or that each has acted with the other to collectively infringe, a claim of the *e*Plus patents.

For infringement to be proved, *e*Plus must prove that the elements of a claimed product were combined, made, used, sold, offered for sale, or imported, or all of the steps of a claimed process performed in the United States by a preponderance of the evidence.

Authorities:

FCBA Model Instruction No. 3.7 (multiple alleged infringers) (as modified to fit the facts of the case); 35 U.S.C. § 271(a); *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (infringement by multiple alleged infringers); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005); *NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1313-21 (Fed. Cir. 2005).

**P-11:  Infringement:  Capable Of Infringement**

A product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.  The fact that a product or process may be used in a manner that does not infringe the patent is not a defense to a claim of infringement against Lawson if its product or process is also reasonably capable of a use that infringes the patent.  Evidence that Lawson's product accused of infringement is presently capable of meeting the claim elements establishes infringement.  Also, if Lawson's products or processes are designed to be altered or assembled before operation, Lawson may be held liable for infringement if the product or process, as altered or assembled, infringes a valid claim.

Authorities:

*ePlus v. SAP America, Inc.,* Civil Action No. 3:05-cv-281 (JRS) (E.D. Va. 2006) (Jury Instruction No. 19); *ePlus, Inc. v. Ariba, Inc.*, Case No. 1:04cv612 (E.D. Va. 2005); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1257 (Fed. Cir. 2000); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995); *Intel Corp. v. lTC*, 946 F.2d 821, 832 (Fed. Cir. 1991).

**P-12:  Infringement And Improvements To Patented Invention**

Lawson has presented evidence that its products accused of infringement represent an improvement of the invention described in the claims of the patents in this case.  Proof of this fact does not necessarily mean that the accused Lawson products do not infringe *e*Plus's patent claims.  The tests for infringement remain as I have instructed you.  As long as you find that a Lawson product or service includes all of the elements of at least one of the claims of one of the patents in this case, then you must find that the claims are infringed by Lawson's product or service, despite its improvements.

Authorities:

*ePlus v. SAP America, Inc.,* Civil Action No. 3:05-cv-281 (JRS) (E.D. Va. 2006) (Jury Instruction No. 20); FCBA Model Instruction No. 8.11 (as modified to fit the facts of the case); *Nat'l Presto Indu s., Inc. v. W. Bend Co.,* 76 F.3d 1185, 1191-92 (Fed . Cir. 1996); *Zygo Corp. v.* Wyko Corp., 79 F.3d 1563, 1570 (Fed. Cir. *1996 ); Hoechst Celan ese Corp. v. BP Chems. Ltd. ,* 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC,* 945 F.2d 1173, 1179 (Fed. Cir. 199 1); *Marsh-Mcllirney, Inc. v. Montedoro -Whitney Corp.,* 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours* & *Co.,* 750 F.2d 1569,1580-81 (Fed. Cir. 1984).

**P-13:  Inducing Patent Infringement**

*e*Plus asserts that Lawson has actively induced another to infringe the patent.  To show induced infringement, *e*Plus must prove that it is more likely than not that someone has directly infringed the *e*Plus patents and that Lawson has actively and knowingly aided and abetted that direct infringement.  *e*Plus must show that Lawson actually intended to cause the acts that constitute direct infringement, that Lawson knew of the patent, and that Lawson knew or should have known that its actions would lead to actual infringement.  Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  It is not necessary to show that Lawson has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, there can be no induced infringement.

Authorities:

AIPLA Model Instruction No. 3.3 (as modified to fit the facts of this case); 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp.  v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

**P-14:  Induced Infringement – Circumstantial Evidence**

As I stated, in order to prove that Lawson induced infringement by others, *e*Plus must prove by the preponderance of the evidence that at least one other person directly infringed a claim of the patents in this case, and that Lawson induced that infringement.  Proof of Lawson's inducement of infringement may be shown through either circumstantial or direct evidence, and likewise proof of the direct infringement by another may be shown through circumstantial or direct evidence.

Authorities:

*ePlus v. SAP America, Inc.,* Civil Action No. 3:05-cv-281 (JRS) (E.D. Va. 2006) (Jury Instruction No. 23); *ePlus, Inc. v. Ariba, Inc.*, Case No. 1:04cv612 (E.D. Va. 2005); 35 U.S.C. § 271(b) and (c); *Chiumin atta Concrete Concepts, Inc., v. Cardinal Indus., Inc.*, 2001 W.L. 21304, *5 (Fed. Cir. Jan. 8, 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986); *Imagexpo, L.L.C. v. Microsoft Corp.*, 284 F. Supp.2d 365 (E.D. Va. 2003); *Hilgraeve, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613, 620-21 (E.D. Mich. 2003).

**P-15:  Indirect Infringement—Contributory Infringement**

*e*Plus argues that Lawson is liable for contributory infringement by contributing to the direct infringement of the *e*Plus patents by third parties. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Lawson is liable for contributory infringement of a claim if *e*Plus proves by a preponderance of the evidence that:

(1) Lawson sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process, during the time the *e*Plus patent is in force;

(2) the component or apparatus has no substantial, noninfringing use;

(3) the component or apparatus constitutes a material part of the invention;

(4) Lawson is aware of the *e*Plus patent and knows that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the *e*Plus patent; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, *e*Plus must prove that each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

Authorities:

FCBA Model Instruction No. 3.3 (as modified to fit the facts of the case); 35 U.S.C. § 271(c) ("not a staple article"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) (knowledge of plaintiff's patent and that the part supplied is significant); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1327 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (reversing district court's finding of no contributory infringement and inducement); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (differentiating contributory infringement from inducement); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (direct infringement findings supported contributory infringement findings).

**P-16:   Direct Infringement By "Literal Infringement" Of Section 112, Paragraph 6 Claim Requirements**

As I have previously explained, claims 3 and 6 of the '683 Patent, and claim 1 of the '172 Patent include requirements that are in means-plus-function form.

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set of structures that perform(s) the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to one or more of the described set(s) of structure(s) that I defined earlier as performing the functions recited in these claims.  If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim. Alternatively, even if the product has a structure or a set of structures that performs the function recited in the claim but the structure or set of structures is not either identical or "equivalent" to one or more of the set(s) of structure(s that I defined to you as being described in the *e*Plus patent and performing this function, the product does not literally infringe the asserted claim.

A structure or a set of structures may be found to be "equivalent" to one of the set(s) of structure(s) I have defined as being described in the *e*Plus patent if a person having ordinary skill in the field of technology of the *e*Plus patent either would have considered the differences between them to be insubstantial at the time the patent issued or if that person would have found the structure(s) performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures. Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of

ordinary skill in that art at the time the patent issued.  The fact that a structure or a set of structures is known now and is "equivalent" is not enough. The structure or set of structures must also have been available at the time the patent issued.

In this case, you will have to decide issues regarding the field of technology and the level of ordinary skill in the art.  I will instruct you later how to decide this.

In order to prove direct infringement by literal infringement of a means-plus-function limitation, *e*Plus must prove the above requirements are met by a preponderance of the evidence.

Authorities:

FCBA Model Instruction No. 3.1(b) (as modified to fit the facts of the case); 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003) (holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure performs the identical function recited in the claim and is identical or equivalent to the structure in the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**P-17:  Independent And Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims 3, 6, 26, and 28 of the '683 Patent, claims 1, 9, 21, and 29 of the '516 Patent, and claim 1 of the '172 Patent, are each independent claims.

The remainder of the claims in the *e*Plus patents are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.  A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

Authorities:

FCBA Model Instruction No. 2.2a (as modified to fit the facts of the case).

**P-18:  Infringement of Open Ended or "Comprising" Claims**

  The preambles to the claims use the term "comprising", for example, claim 3 of the '683 Patent uses the phrase "an electronic sourcing system comprising".  The word "comprising" means "including the following but not excluding others."

  If you find that Lawson's product or method includes all of the elements in the claim, the fact that Lawson's product or method might include additional components or method steps would not avoid literal infringement of a claim that uses "comprising" language.

<u>Authorities</u>:

AIPLA Model Instruction No. 3.7 (as modified to fit the facts of this case); *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed. Cir. 1983).

**P-19:  Summary of Invalidity Defenses**

Lawson contends that the asserted claims of the patents-in-suit are invalid.  Lawson must

prove by clear and convincing evidence that each claim is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine

whether each of *e*Plus's claims is invalid.

Lawson contends that all of the asserted patent claims are invalid for the following

reasons:

1.  Lawson contends that all of *e*Plus's asserted claims are anticipated by a single alleged
    prior art reference;

2.  Lawson contends that all of *e*Plus's asserted claims are obvious in light of alleged prior
    art;

3.  Lawson contends that claims 3, 26, and 28 of the '683 Patent, claims 1, 2, 6, 9, 21, 22,
    and 29 of the '516 Patent, and claim 1 of the '172 Patent are invalid for lack of
    enablement; and

4.  Lawson contends that claims 1, 2, 6, 9, and 29 of the '516 Patent are invalid for not
    meeting the written description requirement.

<u>Authorities</u>:

AIPLA Model Instruction No. 4 (as modified to fit the facts of this case).

**P-20:  Prior Art Defined**

Prior art includes any of the following items received into evidence during trial:

1.      any product or method that was publicly known or used by others in the United States before the patented invention was made;

2.      patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.      publications having a date more than one year before the filing date of the patent, or before the invention was made;

4.      any product or method that was in public use or on sale in the United States more than one year before the patent was filed.

<u>Authorities</u>:

AIPLA Model Instruction No. 5 (as modified to fit the facts of this case); 35 U.S.C. § 102.

**P-21:  Anticipation**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, Lawson must prove with clear and convincing evidence that the claimed invention is not new.

In this case, Lawson contends that each of the claims of the *e*Plus patents are anticipated. To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the alleged prior art , you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular alleged prior art reference.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of alleged prior art, but also what inherently resulted from its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed.  It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular

categories of anticipation that Lawson contends apply in this case. I will now instruct you about

those.

<u>Authorities</u>:

AIPLA Model Instruction No. 6.0 (as modified to fit the facts of this case); *Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988).

**P-22:  Corroboration Of Oral Testimony**

Oral testimony alone is insufficient to prove, by clear and convincing evidence, that something is prior art.  This includes any individual or company testifying that his or its invention predates the patents-in-suit.  In addition, in those instances where the patentee uses the date of conception as the invention date rather than relying on the application filing date, the patentee may not use uncorroborated inventor testimony to do so.

Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that the parties have put forth alleging that a particular event or reference occurred before the filing date of the Patents-in-Suit, they must also have provided some sort of corroborating evidence that agrees with that oral testimony.  If you find that the parties have not corroborated their oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art for purposes of invalidating one or more claims of the Patents-in-Suit, or, in the case of the patentee that he conceived of the invention before the patent application date.

If evidence is presented for purposes of attempting to corroborate oral testimony that alleges invalidity, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony.  In making this determination, you should consider the following factors:

1)  The relationship between the corroborating witness and the alleged prior user;

2)  The time period between the event and this trial;

3)  The interest of the corroborating witness in the subject matter of this suit;

4)  Contradiction or impeachment of the witness's testimony;

5)  Extent and detail of the corroborating witness's testimony

6)  The witness's familiarity with the subject matter of the patented invention and the

alleged prior use;

7)  Probability that a prior use could occur considering the state of the art at the time;

8)  Impact of the invention on the industry, and the commercial value of its practice.

Authorities:

*Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 737-38 (Fed. Cir. 2002); 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *Finnigan Corp,. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1367 (Fed. Cir. 1999); *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172 (Fed. Cir. 1999); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Lacotte v. Thomas*, 758 F.2d 611 (Fed. Cir. 1985).

**P-23:  Prior Public Knowledge**

Lawson contends that all of the claims of the *e*Plus patents were anticipated because the inventions defined in those claims were publicly known by others in the United States before they were invented by the inventor(s).

You are instructed that for the purpose of this case the inventions defined by the *e*Plus patent claims were invented on August 10, 1994.

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by the inventors.

Authorities:

AIPLA Model Instruction No. 6.1 (as modified to fit the facts of this case); 35 U.S.C. § 102(a); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

**P-24:  Prior Public Use**

Lawson contends that all of the claims of the *e*Plus patents were anticipated because the inventions defined in those claims were publicly used by others in the United States before they were invented by the inventors, or they were publicly used in the United States more than one year before the *e*Plus inventors filed their patent application on August 10, 1994.

A patent claim is invalid if the invention defined in that claim was publicly used by a person other than the patentee in the United States before it was invented by the patentee, or was publicly used by anyone in the United States more than one year before the effective filing date of the patentee's patent application.  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal is evidence of a public use.  However, secret use by a third party is not public.  If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

Authorities:

AIPLA Model Instruction No. 6.2 (as modified to fit the facts of this case); 35 U.S.C. § 102(a), (b); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23  (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.,* 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith,* 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

**P-25:  Printed Publication**

Lawson contends that all of the claims of the *e*Plus patents were anticipated because the inventions defined in those claims were described in a printed publication more than one year before the inventors filed their U.S. patent application on August 10, 1994.

A patent claim is invalid if the invention defined by that claim was described in a printed publication more than one year prior to the filing date of the U.S. application.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies.  An issued patent is a printed publication.  A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the *e*Plus patents were filed on August 10, 1994, and you may consider evidence that sheds light on the knowledge such a person would have had.

Authorities:

AIPLA Model Instruction No. 6.5 (as modified to fit the facts of this case); 35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l*

*Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984); *In re Wyer,* 655 F.2d 221, 227 (C.C.P.A. 1981); *In re Donohue,* 632 F.2d 123, 125-126 (C.C.P.A. 1980); *In re Samour,* 571 F.2d 559, 562 (C.C.P.A. 1978); *In re Coker,* 463 F.2d 1344, 1348 (C.C.P.A. 1972); *Deep Welding, Inc. v. Sciaky Bros., Inc.,* 417 F.2d 1227, 1235 (7th Cir. 1969); *In re Foster,* 343 F.2d 980, 984-985 (C.C.P.A. 1965).

**P-26: Printed Publications – Accessibility to Public**

As I have stated, in order for a document to qualify as a printed publication, it must have been reasonably accessible to those members of the public who would have been interested in its contents.  The document must have been a work of public character intended for general use; and within reach of the relevant public.  Therefore, an alleged prior art reference is publicly accessible only upon proof that the document was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the art exercising reasonable diligence could have located it.

In order for the document to be one of a public character, it must have been intended and employed for the communication of ideas to persons in general, as distinguished from particular individuals.  Private communications, even if printed, do not fall within this description, whether designed for the use of single persons or of a few restricted groups or persons.  In other words, the document must have been actually published in such a manner that anyone who chose may have availed himself of the information it contained.  Where the document could have been located only by one having been informed of its existence, and not by means of customary research aids available at the relevant time, the document cannot constitute a "printed publication" under the patent laws.  Further, documents disseminated under conditions of confidentiality or to a closed group are not "printed publications" because they were not accessible to the relevant public.

On the other hand, if the document was placed in a location, such as a library, that was readily accessible to persons interested in the art and it was properly and meaningfully indexed, catalogued and shelved, without restriction, then the document was published.

Authorities:

*SRI Int'l Inc. v. Internet Security Sys. Inc.*, 511 F.3d 1186, 85 U.S.P.Q.2d 1489 (Fed. Cir. 2008) (posting of paper on electronic FTP server insufficient to demonstrate public accessibility absent an index, catalogue or other tools for customary and meaningful research); *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378, 78 U.S.P.Q.2d 1684, 1687 (Fed. Cir. 2006); *In re Cronyn*, 890 F.2d 1158, 1159-60 (Fed. Cir. 1989) (although copies of theses were filed in the main college library and indexed by author's name, the theses did not constitute "printed publications" because they were not reasonably accessible to the public; only research aid available to locate theses was author's name which bore no relationship to the subject matters of the theses); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990) (government documents including legend "reproduction or further dissemination is not authorized...not for public release" could not constitute "printed publications"); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) ("The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art . . . ."); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 732 F.2d 903 (Fed. Cir. 1984); (dissemination of only six copies of article insufficient to render such article a "printed publication"); *In re Bayer*, 568 F.2d 1357, 1360-62, 196 U.S.P.Q. 670, 673-675 (C.C.P.A. 1978) (graduate thesis deposited in university library but uncatalogued was not a "printed publication" since it could not have been located by means of customary research aids); *Garrett Corp. v. United States.*, 422 F.2d 874 (Cl. Ct. 1970) (distribution of 80 copies of report within government agencies to government personnel did not constitute publication); *IMX, Inc. v. Lendingtree, LLC*, 405 F. Supp.2d 479, 491 (D. Del. 2005) (user manual for a software program and computer system did not constitute prior art because it was designated "Highly Confidential" and no proof that it was sufficiently accessible to the public to constitute a "printed publication"); *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 2001 WL 34852696 (C.D. Cal. Jun. 4, 2001) (drawing made at meeting not printed publication as no evidence that non-participants had seen drawing and, despite lack of confidentiality agreement, author expected meeting participants to refrain from disclosing ideas); *Allied Tube and Conduit Corp. v. John Maneely Co.*, 125 F. Supp.2d 987, 990 (D. Ariz. 2000) (letter and price list both stamped confidential sent to 20-30 distributors was not accessible to the interested public); *E.I. DuPont De Nemours & Co. v. Cetus Corp.*, 19 USPQ2d 1174, 1185 (N.D. Cal. 1990) ("emphasis is on systematic indexing and availability upon request"); *Aluminum Co. of Am. v. Reynolds Metals Co.*, 14 U.S.P.Q. 1170 (N.D. Ill. 1989) (distribution of 33 copies of progress letter to Navy with export control notice was not publicly accessible because letter was treated by recipients as confidential); *Mead Digital Systems, Inc. v. A.B. Dick Co.*, 521 F. Supp. 164, 182 (S.D. Ohio 1981) (unclassified report distributed under confidential cover to persons and organization in the relevant field was not publicly accessible), *aff'd on other grounds*, 723 F.2d 455, 221 U.S.P.Q. 1035 (6th. Cir. 1983); *de Graffenried v. United States*, 20 Ct. Cl. 458, 16 U.S.P.Q.2d 1321 (Cl. Ct. 1990) (unclassified report available only to registered users of the Defense Technical Information Center (DTIC) was not printed publication where document was available only through cumbersome request procedures); *In re George*, 2 U.S.P.Q.2d 1880 (Bd. Pat. App. & Int. 1987) (research reports released only to research institute's members were not printed publications because members were aware of institute's policy of confidentiality, even though the policy was not specifically stated in writing); *see also* M.P.E.P. § 2128 (8th Ed., Rev. 6, 2007); 1 W. Robinson, *The Law of Patents* §§ 325-326 at 446-48 (1890).

**P-27:  Prior Invention**

Lawson contends that all of the claims of the *e*Plus patents were anticipated because the inventions defined in those claims were invented by another person before the *e*Plus inventors invented their invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress, or conceal the invention.

Lawson must show by clear and convincing evidence *either* that before the *e*Plus inventors invented their invention, a third party reduced to practice a product or method that included all of the elements of the claims of the *e*Plus patents or that a third party was first to conceive the invention and that it exercised reasonable diligence in later reducing the invention to practice.  In addition, Lawson must show that the third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the *e*Plus patent.  However, it is not necessary that *e*Plus inventors had knowledge of that prior invention.

Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose.  A period of delay does not constitute abandonment, suppression, or concealment if the prior inventor was engaged in reasonable efforts to bring the invention to market.

Authorities:

AIPLA Model Instruction No. 6.6 (as modified to fit the facts of this case); 35 U.S.C. § 102; *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254

F.3d 1031, 1035-40 (Fed. Cir. 2001); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1436-37 (Fed. Cir.1988); *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1444-46 (Fed. Cir. 1984).

**P-28:  Prior Patent**

Lawson contends that claims 1, 2, and 9 of the '516 Patent were anticipated because the inventions defined in those claims were patented more than one year before the *e*Plus inventors filed their United States patent application on August 10, 1994.

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country more than one year before the patentee filed his United States patent application.

To show anticipation of the patented invention, Lawson must show by clear and convincing evidence that before August 10, 1994, a patent was issued for an invention that included all of the elements of claims 1, 2, and 9 of the '516 Patent.

Authorities:

AIPLA Model Instruction No. 6.7 (as modified to fit the facts of this case); 35 U.S.C. § 102; *In re Monks,* 588 F.2d 308, 309 (C.C.P.A. 1978); *In re Fuge,* 272 F.2d 954, 956 (C.C.P.A. 1959); *In re Ekenstam,* 256 F.2d 321, 323-24 (C.C.P.A. 1958); *Bendix Corp. v. Balax, Inc.,* 421 F.2d 809, 811-12 (7th Cir. 1970).

**P-29:  Obviousness**

Lawson contends that all of the claims of the *e*Plus patents are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether Lawson has established that the claimed inventions are obvious:

1.     the scope and content of the prior art relied upon by Lawson;

2.     the difference or differences, if any, between each claim of the *e*Plus patents that Lawson contends is obvious and the prior art;

3.     the level of ordinary skill in the art at the time the inventions of the *e*Plus patents were made; and

4.     additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Lawson must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

<u>Authorities</u>:

AIPLA Model Instruction No. 7.0 (as modified to fit the facts of this case); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All*

*Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

**P-30:  Scope and Content of the Prior Art**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You must determine what is the prior art that may be considered in determining whether the *e*Plus patent claims are obvious.  A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problem(s) faced by the inventor(s).

<u>Authorities</u>:

AIPLA Model Instruction No. 7.1 (as modified to fit the facts of this case); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

**P-31:  Differences Between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The

reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that Lawson contends is obvious.

<u>Authorities</u>:

AIPLA Model Instruction No. 7.2 (as modified to fit the facts of this case); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

**P-32:  Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent field of art.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

- the types of problems encountered in the art at the time of the invention; and

- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Authorities:

AIPLA Model Instruction No. 7.3 (as modified to fit the facts of this case); *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

**P-33:  Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.  Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.  Did others try, but fail, to solve the problem solved by the claimed invention?

4.  Did others copy the claimed invention?

5.  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.  Did others in the field, or Lawson praise the claimed invention or express surprise at the making of the claimed invention?

7.  Did others accept licenses under the *e*Plus patents because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

Authorities:

AIPLA Model Instruction No. 7.4 (as modified to fit the facts of this case); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *United States v. Adams,* 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

**P-34:  Enablement**

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation.  In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Lawson bears the burden of establishing lack of enablement by clear and convincing evidence.

Lawson contends that claim[s] 3, 26, and 28 of the '683 Patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent, and claim 1 of the '172 Patent, are invalid for lack of enablement.  The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

Authorities:

AIPLA Model Instruction No. 8 (as modified to fit the facts of this case); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.,* 256 F.3d 1298, 1306

(Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer- Daniels-Midland Co*., 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc*., 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir.), *cert. denied*, 484 U.S. 954 (1987); *Hybritech Inc. v. Monolonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987); *Ralston Purina Co. v. Far-Mar Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985); *Lindmann Maschinenfabrik GMBH v. American Hoist & Derrick Co*., 730 F.2d 1452, 1463 (Fed. Cir. 1984); *White Consolidated Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983).

**P-35:  Written Description Requirement**

The patent law contains certain requirements for the part of the patent called the specification.  Lawson contends that claim(s) 1, 2, 6, 9, and 29 of the '516 Patent are invalid because the specification of the '516 Patent does not contain an adequate written description of the invention.  To succeed, Lawson must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

<u>Authorities</u>:

FCBA Model Instruction No. 4.2(a) (as modified to fit the facts of the case); 35 U.S.C. § 112, ¶¶ 1, 2; *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

**P-36:  Damages – Generally**

If you find that one of Lawson's accused products or methods infringes any of the claims of the *e*Plus patents, and that those claims are not invalid, you must determine the amount of damages to be awarded *e*Plus for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate *e*Plus for the infringement.  Your damage award should put *e*Plus in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

*e*Plus must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of *e*Plus.

<u>Authorities</u>:

AIPLA Model Instruction No. 12.0 (as modified to fit the facts of this case); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

**P-37:  Date Of Commencement Of Damages – Products**

In determining the amount of damages, you must determine when the damages began.

Damages commence on the date that Lawson has both infringed and been notified of the alleged

infringement of one or more of the patents.

If you find that *e*Plus sells a product that includes the claimed invention, you must

determine whether *e*Plus has "marked" that product with the patent number.  "Marking" is

placing either the word "patent" or the abbreviation "pat." with the patent's number on

substantially all of the products that include the patented invention.  *e*Plus has the burden of

establishing that it substantially complied with the marking requirement.  This means *e*Plus must

show that it marked substantially all of the products it made, offered for sale, or sold under its

patent, and that *e*Plus made reasonable efforts to ensure that its licensees who made, offered for

sale, or sold products under the *e*Plus patent marked the products.

If *e*Plus has not marked that product with the patent number, you must determine the date

that Lawson received actual notice of the *e*Plus patent and the specific product alleged to

infringe.  Actual notice means that *e*Plus communicated to Lawson a specific charge of

infringement of the *e*Plus patent by a specific accused product or device.  The filing of the

complaint in this case qualified as actual notice.

If you find that *e*Plus sells a product covered by its patent but marks the product with the

patent number, damages begin without the requirement for actual notice.  In that event, damages

begin on the date *e*Plus began marking substantially all of its products that include the patented

invention.

Authorities:

FCBA Model Instruction No. 6.8 (as modified to fit the facts of the case); 35 U.S.C. § 287;
*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir.
2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J.*

*Baker*, *Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med.*, *Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

**P-38:  Damages – Reasonable Royalty**

The type of patent damages at issue in this case is called a reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

<u>Authorities</u>:

AIPLA Model Instruction No. 12.2 (as modified to fit the facts of this case).

**P-39:  Reasonable Royalty – Doubts Resolved Against Infringer**

All doubts resulting from Lawson's failure to keep proper records are to be resolved in favor of *e*Plus.  Any incorrectness or confusion in Lawson's records should be held against Lawson, not *e*Plus.

<u>Authorities</u>:

AIPLA Model Instruction No. 12.13 (as modified to fit the facts of this case); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**P-40:  Reasonable Royalty – Generally**

If you find that Lawson has infringed one or more of the *e*Plus patent claims, and that the claim is not invalid, you must determine what a reasonable royalty would be for Lawson's infringement.  The patent law specifically provides that the amount of damages that Lawson must pay *e*Plus for infringing *e*Plus's patent may not be less than a reasonable royalty for the use that Lawson made of *e*Plus's invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.  *e*Plus is entitled to a reasonable royalty for all infringing sales.

<u>Authorities</u>:

AIPLA Model Instruction No. 12.14 (as modified to fit the facts of this case); 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

**P-41:  Reasonable Royalty – Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

<u>Authorities:</u>

FCBA Model Instruction No. 6.6; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

**P-42:  Reasonable Royalty – Relevant Factors**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by Lawson to license other patents comparable to the *e*Plus patents-in-suit.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the *e*Plus patents-in-suit and the term of the license.

8.    The established profitability of the products made under the *e*Plus patents; their commercial success; and their current popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.    The extent to which Lawson has made use of the invention; and any evidence that shows the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as Lawson would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

<u>Authorities</u>:

AIPLA Model Instruction No. 12.16 (as modified to fit the facts of this case); *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971).

**P-43:  Reasonable Royalty – Timing**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Lawson after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

Authorities:

AIPLA Model Instruction No. 12.17 (as modified to fit the facts of this case); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir 2004); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

**P-44:  Willful Infringement**

In this case, *e*Plus argues both that Lawson infringed and, further, that Lawson has infringed and continues to infringe willfully.  If you have decided that Lawson has infringed, you must go on and address the additional issue of whether or not this infringement was and is willful.  Willfulness requires you to determine by clear and convincing evidence that Lawson acted recklessly.  To prove that Lawson has acted recklessly, *e*Plus must prove two things by clear and convincing evidence:  The first part of the test is objective:  *e*Plus must persuade you that Lawson acted despite a high likelihood that its actions infringed a valid and enforceable patent.  In making this determination, you may not consider Lawson's state of mind.  Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.  Only if you conclude that Lawson's conduct was reckless do you need to consider the second part of the test.  The second part of the test does depend on Lawson's state of mind.  *e*Plus must persuade you that Lawson actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

To determine whether Lawson had this state of mind, consider all facts which may include, but are not limited, to:

(1)     Whether or not Lawson acted in accordance with the standards of commerce for its industry;

(2)     Whether or not Lawson intentionally copied a product of *e*Plus that is covered by the *e*Plus patents;

(3)     Whether or not there is a reasonable basis to believe that Lawson did not infringe or had a reasonable defense to infringement;

(4)     Whether or not Lawson made a good-faith effort to avoid infringing the *e*Plus patents, for example, whether Lawson has attempted to design around the *e*Plus patents; and

(5)     Whether or not Lawson tried to cover up its infringement.

<u>Authorities</u>:

FCBA Model Instruction No. 3.8 (as modified to fit the facts of the case); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc) (opinion of counsel defense); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness).

Respectfully submitted,

Dated:  September 3, 2010                    _____/s/_____
                                            David M. Young (VSB #35997)
                                            Scott L. Robertson *(admitted pro hac vice)*
                                            Jennifer A. Albert *(admitted pro hac vice)*
                                            Counsel for Plaintiff *e*Plus, Inc.
                                            **GOODWIN PROCTER LLP**
                                            901 New York Avenue, N.W.
                                            Washington, DC 20001
                                            Telephone:  (202) 346-4000
                                            Facsimile:   (202) 346-4444
                                            srobertson@goodwinprocter.com
                                            jalbert@goodwinprocter.com
                                            dyoung@goodwinprocter.com

                                            Henry I. Willett, III (VSB #44655)
                                            Craig T. Merritt (VSB #20281)
                                            **CHRISTIAN & BARTON, LLP**
                                            909 East Main Street, Suite 1200
                                            Richmond, Virginia 23219-3095
                                            Telephone: (804) 697-4100
                                            Facsimile: (804) 697-4112
                                            hwillett@cblaw.com
                                            cmerritt@cblaw.com

                                            Michael G. Strapp (*admitted pro hac vice*)
                                            James D. Clements  (*admitted pro hac vice*)
                                            **GOODWIN PROCTER LLP**
                                            Exchange Place
                                            53 State Street
                                            Boston, MA 02109-2881
                                            Telephone:  (617) 570-1000
                                            Facsimile:   (617) 523-1231
                                            mstrapp@goodwinprocter.com
                                            jclements@goodwinprocter.com

                                            Attorneys for Plaintiff
                                            *e*Plus, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of September, 2010, I will electronically file the foregoing **PLAINTIFF *e*PLUS INC.'S PROPOSED JURY INSTRUCTIONS** with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan C. Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

_____/s/_____
David M. Young
Virginia State Bar #35997
Attorney for Plaintiff *e*Plus, Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com