**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S PRELIMINARY PROPOSED JURY INSTRUCTIONS AND JURY VERDICT FORM

Defendant Lawson Software, Inc. ("Lawson"), by and through its undersigned counsel, hereby submits the following proposed jury instructions and jury verdict form for the trial in this action. Lawson notes that, given the recent change in the trial date, these instructions and verdict form are not due. As Plaintiff has already filed its proposed instructions and verdict form, however, Lawson hereby files these preliminary proposed instructions and verdict form as a courtesy. Lawson reserves its right to amend, supplement, or modify these proposed jury instructions and jury verdict form as the case proceeds through trial and based upon conferences with opposing counsel, particularly in view of the new trial date. Lawson does not waive any objections to instructions relating to issues that are or have been the subject of pending motions, including motions *in limine*. Neither does Lawson concede, by submitting the proposed instructions and verdict form that Plaintiff has met its evidentiary burden with respect to any of the issues to which the proposed instructions and verdict form pertain.

Lawson notes that the substantive instructions included below follow closely the AIPLA's model jury instructions for patent litigation.

## TABLE OF CONTENTS

**Preliminary Jury Instruction**

D-1: The Nature of the Action and the Parties.................................................1

D-2: What a Patent Is and How One is Obtained.............................................2

D-3: Contentions of the Parties.....................................................................4

D-4: Trial Procedure....................................................................................5

D-5: Conduct of the Jury..............................................................................6

D-6: Evidence in the Case............................................................................7

D-7: Expert Witnesses.................................................................................8

D-8: Use of depositions as evidence..............................................................9

D-9: Burdens of Proof................................................................................10

D-10: Glossary of Patent Terms...................................................................11

**Post Trial Instructions**

D-11: Summary of Patent Issues...................................................................12

**Claim Construction**

D-12: Claim Construction – Generally...........................................................13

D-13: Claim Construction for the Case..........................................................14

**Infringement**

D-14: Infringement – Generally....................................................................17

D-15: Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial............18

D-16: Literal Infringement...........................................................................19

D-17: Inducing Patent Infringement..............................................................20

D- 18: Contributory Infringement.................................................................21

D-19: Exhaustion.......................................................................................22

D-20: Infringement of Open-Ended or "Comprising" Claims..............................23

D-21: Joint Infringement.............................................................................24

D-22: Summary of Defenses.........................................................................25

D-23: Prior Art Defined..............................................................................26

**Anticipation**

D-24: Anticipation.....................................................................................27

D-25: Prior Patent.....................................................................................28

**Obviousness**

**D-26: Obviousness**...............................................................................................29

**D-27: Scope and Content of the Prior Art**...........................................................30

**D-28: Differences between the Claimed Invention and the Prior Art**.................31

**D-29: Level of Ordinary Skill**..............................................................................32

**D-30: Secondary Factors Indicating Nonobviousness**........................................33

**Damages**

**D-31: Damages – Generally**.................................................................................34

**D-32: Date Damages Begin**.................................................................................35

**D-33: Reasonable Royalty – Generally**...............................................................36

**D-34: Reasonable Royalty – Definition**...............................................................37

**D-35: Reasonable Royalty – Relevant Factors**....................................................38

**D-36: Reasonable Royalty – Base**.......................................................................40

**D-37: Reasonable Royalty – Accused Products**...................................................41

**D-38: Reasonable Royalty – Timing of Hypothetical Negotiations**...................42

**D-39: Laches**.......................................................................................................43

**D-40: Willful Infringement**.................................................................................45

**D-41: Final Instructions on Jury Deliberations**..................................................46

**DEFENDANT'S PROPOSED JURY VERDICT FORM**....................................47

**Preliminary Jury Instructions**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**D-1: The Nature of the Action and the Parties**

ePlus is the owner of three patents, which are identified by the Patent Office Number: United States Patent No. 6,023,683 or the '683 Patent; United States Patent No. 6,055,516 or the '516 Patent; and United States Patent No. 6,505,172 or the '172 Patent.  The patents may also be referred to as "the patents in suit."

Lawson Software, Inc., is the Defendant in this case.  Lawson founded in St. Paul, Minnesota in 1975, sells business enterprise software.

**D-2: What a Patent Is and How One is Obtained**

This case involves a dispute related to a United States patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to first show you a short film about the patent system and then explain what a patent is and how one is obtained.

The video that I am about to show you directs you to a sample patent.  We have given you a copy of the sample patent so that you can follow along.

*[SHOW VIDEO – The Federal Judicial Center: "An Introduction to the Patent System."]*

Now that you have finished watching the video, let me take a moment to explain what a patent is and how one is obtained. Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO or submitted by the applicant for what is referred to as "prior art." The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time, i.e., whether each claim defines an invention that is new and not obvious in view of the prior art. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes subject matter that existed before the claimed invention. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the patent examiner is

called an "Office Action." If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner, and to change the claims or to submit new claims. This process may go back and forth for some time until the examiner is satisfied whether or not the application meets the requirements for a patent. The papers generated during these communications between the patent examiner and the applicant is called the "prosecution history."

A granted patent is presumed to be valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Lawson has proven that the patent is invalid.

I will now briefly explain the parties' basic contentions in more detail.

**D-3: Contentions of the Parties**

ePlus contends that Lawson makes, uses, offers to sell, or sells products or services that infringe certain claims of the patents in suit. ePlus must prove that Lawson infringes the patents in suit by a preponderance of the evidence. That means that ePlus must show that it is more likely that Lawson's allegedly infringing products and services infringe than they do not infringe.

Lawson denies that it has infringed the patents in suit. Lawson also contends that the asserted claims of the patents in suit are invalid. Lawson's contention that the asserted claims are invalid is based upon its contention that the invention set forth in each claims was either anticipated or rendered obvious by existing inventions at the time the inventors of the patents in suit allegedly invented the claimed inventions.

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the patents in suit, you, the jury, have the ultimate responsibility for deciding whether the claims of the patents in suit are valid. Lawson must prove invalidity by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

**D-4: Trial Procedure**

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence. In the third phase, ePlus goes first in calling witnesses to the stand. The witnesses will be questioned by ePlus's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After ePlus has presented its witnesses, Lawson will call its witnesses, who will be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase. Again, what the lawyers say is not evidence. The closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained to you a little bit about the law. But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts, and I decide questions of law. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language even if you do not agree with me. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**D-5: Conduct of the Jury**

To insure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth*, do not do any research or make any investigation on your own about any matter involved in this case. By way of examples, that means you must not consult a dictionary, textbook, encyclopedia, talk with a person you consider knowledgeable, or go to the Internet for information about some issue or person in this case. In fairness, learn about this case from the evidence you receive here at the trial and apply it to the law as I give it to you.

*Sixth*, cell phones are not permitted in the jury room during deliberation.

*Seventh*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

6

**D-6: Evidence in the Case**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, sworn deposition testimony of certain witnesses, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to [and all facts and events that may have been judicially noticed].

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.[1]

---

[1] 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 103.30 (2001 5th ed.).

**D-7: Expert Witnesses**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.[2]

---

[2] 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 104.40 (2001 5th ed.).

**D-8: Use of depositions as evidence**

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The rules permit the testimony of certain witnesses to be presented by reading their prior deposition testimony into the record or by showing you excerpts of videotaped recordings of the deposition testimony. Such testimony is entitled to the same consideration as live testimony. You should judge its believability and weight and otherwise consider the testimony in the same way as if the witness had been present, and had testified from the witness stand.[3]

---

[3] 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 105.02 (2001 5th ed.).

**D-9: Burdens of Proof**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In this case, the two burdens of proof that applies are called the "preponderance of the evidence" standard or "clear and convincing evidence" standard.

The preponderance of the evidence standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true. Here, to find the patents in suit infringed and to award ePlus it damages you must find that it is more likely than not that Lawson infringes the patent.

The clear and convincing evidence standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is highly probably true. Here, to find the patents in suit invalid, you must be left with a clear conviction that the claim is invalid.

You may have heard of a burden-of-proof standard that is used in criminal cases called "beyond a reasonable doubt" standard. That requirement is the highest burden-of-proof standard. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.[4]

---

[4] ABA Model Jury Instructions: Patent Litigation § 1.

**D-10: Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper of Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.  The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of the prior art.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

**Post Trial Instructions**

**D-11: Summary of Patent Issues**

   I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1.  Whether ePlus has proved that Lawson infringed any asserted claim of the patents in suit.

2.  Whether Lawson has proved that the asserted claims of the patents in suit are invalid.

**Claim Construction**

**D-12: Claim Construction – Generally**

Before you decide whether Lawson has infringed the claims of ePlus's patent or whether ePlus's patent is invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claims 3, 6, 26, 28, and 29 of the '683 Patent; claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent; and claim 1 of the '172 Patent. The claims are intended to define, in words, the boundaries of the invention. Only the claims of a patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.[5]

---

[5] 35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

**D-13: Claim Construction for the Case**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patents in suit have been infringed and whether any claim is invalid. I will not tell you the meanings of the following words and groups of words from the patent claims.

"Subset" means: less than all of a set.

"Protocol" means: a procedure.

"Catalog" and "product catalog" mean: an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a party number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

"Order List" means: a list of desired catalog items.

"Matching items" means: the search results.

"Selected matching items" means: requisition items.

"Cross-reference table" means: a table that links vendors items determined to be equivalent between two or more different vendors.

"Electronic sourcing system" means: an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.

"Converting data relating to a selected matching item and an associated source to data relating to an item and a different source" means: substituting data relating to a selected matching item and an associated source to data relating to an item and a different source. "conversion" involves altering for more effective utilization. Cross-referencing cannot accomplish conversion, as it is ordinarily defined, and is an inadequate construct of the claim term.

"Means for selecting the product catalogs to search" requires an element that performs the function of selecting the product catalogs to search. The corresponding structure is a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents.

"Means for searching matching items among the selected product catalogs" requires an element that performs the function of searching for matching items among the selected product catalogs. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

14

"Means for searching for matching items in the database" requires an element that performs the function of searching for matching items in the database. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for building a requisition using data related to selected matching items and their associated source(s)" requires an element that performs the function of building a requisition using data relating to selected matching items and their associated source(s). The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing the requisition to generate one or more purchase orders for the selected matching items" requires an element that performs the function of processing the requisition to generate on or more purchase orders for the selected matching items. The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.

"Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" requires an element that performs the function of converting data relating to a selected matching item and an associated source to data relating to an item and a different source. The corresponding structure is one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents.

"Means for entering product information that at least partially describes at least one desired item" requires an element that performs the function of entering product information that at least partially describes at least one desired item. The corresponding structure is a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents.

"Means for searching for matching items that match the entered product information in the selected portions of the database" requires an element that performs the function of searching for matching items that match the entered product information in the selected portions of the database. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for generating an order list that includes at least one matching item selected by said means for searching" requires an element that performs the function of generating an order list that includes at least one matching item selected by said means for searching. The corresponding structure is a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.

"Means for building a requisition that uses data obtained for said database relating to selected matching items on said order list" requires an element that performs the function of building a requisition that uses data obtained from said database relating to selected matching items on said order list.  The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing said requisition to generate purchase orders for said selected matching items" requires an element that performs the function of processing a requisition to generate purchase orders for selected matching items.  The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition, and its equivalents.

You should give the rest of the words in the claims and my definitions of them their ordinary meaning in the context of the patent specification and prosecution history.[6]

---

[6] *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996).

**Infringement**

**D-14: Infringement – Generally**

I will now instruct you as to the rules you must follow when deciding whether ePlus has proven that Lawson infringed any of the claims of the patents in suit.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, ePlus alleges that Lawson infringes the patents in suit.

You have heard evidence about both ePlus's commercial embodiment and Lawson's accused products. However, in deciding the issue of infringement you may not compare Lawson's accused products to ePlus's commercial products. Rather, you must compare Lawson's accused products to the claims of the patents in suit when making your decision regarding infringement.

A patent may be infringed directly or indirectly. Direct infringement results if the accused products are covered by at least one claim of the patents in suit. Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.[7]

---

[7] 35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd,*517 U.S. 370 (1996).

**D-15: Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial**

In this case, ePlus asserts that Lawson has directly infringed claims 3, 6, 26, 28, and 29 of U.S. Patent Number 6,023,683 (which I will refer to as the "'683 Patent"), claims 1, 2, 6, 9, 21, 22, and 29 of U.S. Patent Number 6,055,516 (the "'516 Patent"), and claim 1 of U.S. Patent Number 6,505,172 (the "'172 Patent). Lawson would be liable for directly infringing ePlus's patents if you find that ePlus has proven that it is more likely than not that Lawson has made, used, offered to sell, or sold the invention defined in at one claim one of ePlus's patents. Lawson does not directly infringe the patents in suit unless you find by a preponderance of the evidence that the products accused of infringement infringe the asserted claims as the products are sold by Lawson. If such a product does not infringe unless a customer or other third party significantly modifies the product, Lawson cannot be said to directly infringe the asserted claims.[8]

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.[9]

---

[8] *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)

[9] 35 U.S.C. § 271(a); *BMC Res. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

**D-16: Literal Infringement**

To determine literal infringement, you must compare the accused product with each claim that ePlus asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Lawson makes, uses, offers for sale, or sells a product that includes each and every element in that patent claim.  If Lawson's product does not contain one or more elements recited in a claim, Lawson does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe, not to ePlus's preferred or commercial embodiment of the claimed invention.  The same element of the accused product may satisfy more than one element of a claim, u nless the context of the claim indicates that the elements are separate.[10]

---

[10] *BMC Res. v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

**D-17: Inducing Patent Infringement**

ePlus asserts that Lawson has actively induced another to infringe certain claims of the patents in suit. To show induced infringement, ePlus must prove that it is more likely than not that someone, here the customer, has directly infringed asserted claims of the patents of suit and that Lawson has actively and knowingly aided and abetted that direct infringement.

If there is no direct infringement by anyone, there can be no induced infringement. If you do not find that any single entity other than Lawson performed all the steps of a method claim or made, sold, offered for sale, or used all the elements of a system claim, either themselves or by controlling the actions of another entity, then there is no direct infringement. In that event, Lawson cannot be liable for inducing infringement.

If you find that someone other than Lawson directly infringed, then to prove inducement ePlus must show that Lawson actually intended to cause the acts that constitute direct infringement, that Lawson knew of the patent, and that Lawson knew or should have known that its actions would lead to actual infringement. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.

**D- 18: Contributory Infringement**

ePlus also asserts that Lawson has contributed to another's infringement of certain claims of the patents in suit. To show contributory infringement, ePlus must prove that it is more likely than not that there was contributory infringement.

It is not necessary to show that Lawson has directly infringed as long as you find that someone else has directly infringed.

If you do not find that any single entity other than Lawson performed all the steps of a method claim or made, sold, offered for sale, or used all the elements of a system claim, either themselves or by controlling the actions of another entity, then there is no direct infringement. In that event, Lawson cannot have contributed to the infringement of the patent.

If you find someone other than Lawson has directly infringed the claims of the patents in suit, then Lawson would be liable for contributory infringement if:

(1)    Lawson sold, offered for sale, or imported;

(2)    a material component of the patented invention that is not a staple article or commodity of commerce capable of substantial non-infringing use;

(3)    with knowledge of the allegedly infringed patent and that the component was especially made or adapted for use in an infringing method.

A "staple article or commodity [or method] of commerce capable of substantial non-infringing use" is something that has substantial uses other than as a part or component of the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.[11]

If you find that someone other than Lawson directly infringed, then to prove contributory infringement ePlus must show that Lawson actually intended that the component at issue be especially adapted to cause the acts that constitute direct infringement, that Lawson knew of the patent, and that Lawson knew or should have known that its actions would lead to actual infringement.

---

[11] 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**D-19: Exhaustion**

The initial authorized sale of a patented product terminates the patent owner's patent rights to that product.  When a patented item is lawfully made and sold, the patentee cannot further restrict its use.[12]

---

[12] *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).

**D-20: Infringement of Open-Ended or "Comprising" Claims**

The preamble of the claims uses the word "comprising." The word "comprising" means "including the following but not excluding others."

If you find that Lawson's product includes all of the elements of one of the asserted claims, the fact that Lawson's product might include additional elements would not avoid infringement of that claim.[13]

---

[13] *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFg Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

**D-21: Joint Infringement**

Generally, a patent claim is only infringed where the accused infringer is found to have practiced every limitation of the patent claim asserted. One exception to this rule is called "joint infringement" where a party that does not practice every limitation of a certain claim may still be found to infringe the claim where it practices some limitations of the claim and directs or controls the actions of a third party to practice the remaining limitations of the claim.

In this case, ePlus alleges that Lawson infringes certain claims of the patents in suit by making, selling, offering for sale, or using only some of the limitations of these claims and by directing or controlling the actions of others to make, sell, offer for sale, or use the remaining limitations of the claim. In order to find that Lawson infringes any of the asserted claims as a joint infringer, you must find that it is more likely than not that Lawson (1) practices some limitations of the infringed claim and (2) directs or controls the actions of its customers or another so that those customers or others practice all the remaining limitations of the claim that Lawson itself does not practice. Lawson can only be found to have infringed the asserted claims as a joint infringer if you find that it exercised control or direction over the entire practice of a claimed process or the entire manufacture of a clamed apparatus, such that practice of each limitation of the claim can be attributed to Lawson as the controlling party and mastermind who directed the process.[14] A contractual relationship, without more, does not establish the control and direction necessary to prove joint infringement. There must be more.[15]

---

[14] *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, Nos. 2009-1306, -1309, 2010 U.S. App. LEXIS 16455, at *37 (Fed. Cir. Aug. 9, 2010); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).

[15] *BMC Res., Inc. v. Payment, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *Golden Hour Data Sys. v. emsCharts, Inc.*, 91 U.S.P.Q.2D 1565 (E.D. Tex. 2009), *aff'd* 2010 U.S. App. LEXIS 16455, at *37-*39 (Fed. Cir. Aug. 9, 2010)

**D-22: Summary of Defenses**

Lawson contends that the asserted claims of the patents in suit are invalid. Lawson must prove a claim is invalid by clear and convincing evidence.

Claims of the issued patent may be found to be invalid. Thus, you must determine whether each of ePlus's asserted claims is invalid. Lawson contends that the asserted claims are invalid for the following reasons:

(1)      the asserted claims are obvious over prior art; and

(2)      the asserted claims are anticipated by the prior art.

I will not instruct you in more detail regarding Lawson's allegations that the asserted claims of the patents in suit are invalid.

**D-23: Prior Art Defined**

Prior art includes any of the following items received into evidence during trial:

1.      any product that was publicly known or used by others in the United States before the patented invention was made;

2.      patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.      publications having a date more than one year before the filing date of the patent, or before the invention was made;

4.      any product that was in public use or on sale in the United States more than one year before the patent was filed;

5.      any product that was made by anyone before the named inventors created the patented product where the product was not abandoned, suppressed, or concealed.[16]

---

[16] 35 U.S.C. § 102.

**Anticipation**

**D-24: Anticipation**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Lawson must prove with clear and convincing evidence that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single system or item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular art.

In this case, certain claims asserted by ePlus include elements requiring "one or more" of a certain product feature. A piece of prior that includes either one of that product feature or more than one of that product feature and otherwise anticipates an asserted claim renders the asserted claim invalid.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently resulted from its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure at the time of the disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated at the time of the disclosure can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular categories of anticipation that Lawson contends apply in this case. I will now instruct you about those.[17]

---

[17] *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

**D-25: Prior Patent**

Lawson contends that the asserted claims of the patents in suit were anticipated because the inventions defined in those claims were patented by a third party before it was invented by the named inventors.

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country before it was invented by the named inventors.

To show anticipation of the patented inventions, Lawson must show by clear and convincing evidence that, prior to conception of the inventions in the patents in suit, a third party patented an invention that included all of the asserted claims.[18]

---

[18] 35 U.S.C. § 102; *in re Monks*, 588 F.2d 308, 309 (C.C.P.A 1978); *in re Fuge*, 272 F.2d 954, 956 (C.C.P.A. 1959); *in re Ekenstam*, 256 F.2d 321, 323-24 (C.C.P.A. 1958); *Bendix Corp. v. Balax, Inc.*, 421 F.2d 809, 811-12 (7th Cir. 1970).

**Obviousness**

**D-26: Obviousness**

Lawson contends that the asserted claims of the patents in suit are invalid because the claimed invention is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether Lawson has established that the claimed inventions are obvious:

1.      the scope and content of the prior art relied upon by Lawson;

2.      the difference or differences, if any, between each claim of the patents in suit that Lawson contends is obvious and the prior art;

3.      the level of ordinary skill in the art at the time the inventions of the patents in suit was made; and

4.      additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Lawson must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.[19]

---

[19] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

**D-27: Scope and Content of the Prior Art**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  The prior art includes the following items received into evidence during the trial:

In this case, Lawson contends that the following items are prior art:

1.      The Fisher Scientific Requisition and Inventory Management System (RIMS);

2.      Johnson et al. (U.S. Patent No. 5,712,989);

3.      P.O. Writer Plus V.10;

4.      The J-CON system;

5.      IBM Technical Viewer/2 System;

6.      IBM Technical Viewer/2, General Information Manual;

7.      IBM Technical Viewer/2 brochure.


You must determine what is the prior art that may be considered in determining whether the patents in suit are obvious.  A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond the main purpose that a person of ordinary skill in the art would reasonably use to solve the same problem(s) faced by the inventor(s).[20]

---

[20] *KSR Int'l Co. v.* Teleflex *Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood*, 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

**D-28: Differences between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks already known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that Lawson contends is obvious.[21]

---

[21] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

**D-29: Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of electronic procurement.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

The parties agree that a person of ordinary skill in the art is a person in the field of computer science with an undergraduate Bachelor of Science degree and some practical programming experience, perhaps about a year or two of experience, and having an understanding of basic principles of supply chain management and procurement in the 1993 to mid-1994 time frame.[22]

---

[22] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).

**D-30: Secondary Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obvious or nonobviousness of the invention as a whole.

1.    Was there long-felt need for a solution to the problems facing the inventors, which was satisfied by the claimed invention?

2.    Did others try, but fail, to solve the problem solved by the claimed invention?

3.    Did others copy the claimed invention?

4.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

5.    Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious. If Lawson has made a strong showing that the claimed inventions are obvious absent these secondary factors, however, then these secondary considerations might not overcome such a strong showing. Moreover, these secondary factors of nonobviousness are only relevant if ePlus has proven there is a nexus between the merits of the claimed inventions and the evidence of the secondary factors.

In order for commercial success to show that a patent claim is not obvious, ePlus must establish that the commercial product sales were a direct result of the unique characteristics of the features in the patent claim. Expert testimony is necessary to compare commercial products to claims.[23]

---

[23] *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416, 427 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *U.S. v. Adams*, 383 U.S. 39, 52 (1966); *Wyers v. Master Lock Co.*, 95 U.S.P.Q.2d 1525 (Fed. Cir. 2010); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983); *WiAV Solutions LLC v. Motorola, Inc.*, No. 3:09cv447, 2010 U.S. Dist. LEXIS 80448, at *20 (E.D. Va. Aug. 10, 2010).

**Damages**

   **Lawson contends that damages should not be tried to the jury.  In that case, none of the following instructions would be needed.  To preserve its rights, Lawson conditionally proposes the following instruction regarding damages, only to be used if necessary.**

**D-31: Damages – Generally**

   If you find that the accused device infringes any of the claims of the patents in suit, and that those claims are not invalid, you must determine the amount of damages to be awarded ePlus for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

   If you need to determine damages, the amount of those damages must be adequate to compensate ePlus for the infringement.  Your damage award should put ePlus in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  ePlus may not recover damages for the result of any alleged infringement for which it has already received compensation, whether from Lawson or a third party.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

   ePlus must prove each element of its damages by a preponderance of the evidence.

   The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure to damages are given for your guidance in the event you find the evidence in favor of ePlus.[24]

---

[24] 35 U.S.C. § 284 (2004); *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).

**D-32: Date Damages Begin**

The date that ePlus first gave notice to Lawson of its claim of patent infringement is the date at which patent damages begin to be calculated. That date is in dispute here, and it is up to you to determine what that date is. ePlus must prove by a preponderance of the evidence the date it gave notice.

ePlus can give notice in two ways. The first way is to give notice to the public in general. ePlus can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patents in suit on substantially all the products it sold that included the patented invention. Licensees of the patents in suit who use the patented inventions must also mark substantially all of their products that include the patented inventions with the patent numbers. This type of notice is effective from the date ePlus and its licensees began to mark substantially all of their products that use the patented inventions with the patent numbers. If ePlus and/or its licensees did not mark substantially all of their products that use the patented inventions with the patent numbers, then ePlus did not provide notice in this way. ePlus has the burden of proving by a preponderance of the evidence that both it and its licensees properly marked all of their products that use the patented inventions with the patent numbers. If ePlus does not prove compliance with the marking requirements by both it and its licensees, you should find that ePlus has not provided notice by marking.

A second way ePlus can provide notice of its patents is to communicate to Lawson a specific charge that the accused products infringed the patents in suit. This type of notice is effective from the time it is given. If you find that ePlus, before filing this lawsuit, did not properly mark its products or that its licensees did not mark their products and ePlus did not notify Lawson by communicating a specific charge that the allegedly infringing products infringed, then ePlus can only recover damages for infringement that occurred after it sued Lawson when it filed its complaint.[25]

ePlus may not recovery any damages relating to revenues generated by Lawson before the time damages may begin accruing. If Lawson sold a product before ePlus satisfied the marking requirement, ePlus may not recover any damages for the sale of that product, nor may ePlus recover any damages for the later maintenance, servicing, or use of that product.

---

[25] 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *WiAV Solutions LLC v. Motorola, Inc.*, No. 3:09cv447, 2010 U.S. Dist. LEXIS 80448, at *20 (E.D. Va. Aug. 10, 2010).

**D-33: Reasonable Royalty – Generally**

If you find that Lawson has infringed the patents in suit, you must determine what a reasonable royalty would be for Lawson's sales. The patent law specifically provides that the amount of damages that Lawson must pay ePlus for infringing ePlus's patents may not be less than a reasonably royalty for the use that Lawson made of ePlus's invention. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. ePlus is entitled to a reasonable royalty for all infringing sales.[26]

---

[26] 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004); *Minco, Inc. v. Cumbustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

**D-34: Reasonable Royalty – Definition**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonably royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Lawson taking place just before the infringement began. You should also assume that both parties to the negotiation understood the patent to be valid and infringed and were willing to enter into a license.[27]

---

[27] *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

**D-35: Reasonable Royalty – Relevant Factors**

In determining the value of a reasonably royalty, you may consider evidence on any of the following factors:

1.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

2.  The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing other to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

3.  The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

4.  The effect of selling the patent product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

5.  The duration of the patents in suit and the term of the license.

6.  The established profitability of the product made under the patents in suit; their commercial success.

7.  The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

8.  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

9.  The extent to which Lawson has made use of the invention; and any evidence that shows the value of that use.

10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

11. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

12.    The opinion testimony of qualified experts.

13.    The amount that a licensor (such as ePlus) and a licensee (such as Lawson) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

14.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

15.    Any royalties received by ePlus for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

16.    The rates paid by Lawson to license other patents comparable to the patents in suit.[28]

---

[28] *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898, 900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub. nom., Georgia Pacific Corp. v. U.S. Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed. Cir. 1996); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006).

**D-36: Reasonable Royalty – Base**

The royalty base is the amount of accused revenue generated from leasing the accused software. The royalty base is limited to the accused software and does not extend to hardware or other software which does not provide the functionality accused of infringement. Nor does it include maintenance or other service-related revenues which enable or enhance use of the accused products.

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 284-85 (N.D.N.Y. 2009); *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 185 (D.R.I. 2009); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 06-348, 2010 U.S. Dist. LEXIS 56634, at *12-13 (E.D. Tex. June 9, 2010).

**D-37: Reasonable Royalty – Accused Products**

ePlus is only entitled to damages on products it proves are infringing.[29]

---

[29] 35 U.S.C. 285.

**D-38: Reasonable Royalty – Timing of Hypothetical Negotiations**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profit by Lawson after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You only consider this information, however, if it was foreseeable at the time the infringement began.[30]

---

[30] *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

**D-39: Laches**

Lawson contends that ePlus is not entitled to recover damages for acts that occurred before it filed this lawsuit because: (1) ePlus delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Lawson has been or will be prejudiced in a significant way due to ePlus's delay in filing the lawsuit. This is referred to as laches. Lawson must prove delay and prejudice by a preponderance of the evidence.

Whether ePlus's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If the suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. The presumption shifts the burden of proof to ePlus to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if ePlus presents such evidence, the burden of proving laches remains with Lawson. Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Lawson. Facts and circumstances that justify a long delay can include:

(1)     being involved in negotiations with Lawson during the period of delay;

(2)     poverty or illness during the period of delay;

(3)     wartime conditions during the period of delay;

(4)     being involved in a dispute about ownership of the patents in suit during the period of delay;

(5)     being involved in other litigation during the period of delay, but only if ePlus notified Lawson of the other litigation and informed Lawson that the delay is due to ePlus pursuing other infringers; or

(6)     minimal amounts of allegedly infringing activity by Lawson during the period of delay.

If you find unreasonably and unjustified delay occurred, to find laches, you must also determine if Lawson suffered material prejudice as a result of the delay. Prejudice to Lawson can be evidentiary or economic. Whether Lawson suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Lawson not being able to present a full and fair defense on the merits of ePlus's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to a loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Lawson changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if Lawson could have switched to a noninfringing product if sued earlier),

and also whether Lawson's losses as a result of that change in economic position likely would have been avoided if ePlus had filed this lawsuit sooner. In all scenarios, though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonably delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been provided, it should not, in fairness, apply, given all the facts and circumstances in this case.[31]

---

[31] 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc).

**D-40: Willful Infringement**

If you find by a preponderance of the evidence that Lawson infringed ePlus's patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that Lawson acted with "reckless disregard" of the claims of the patents in suit prior to the filing date of this lawsuit.  To show "reckless disregard," ePlus must show by clear and convincing evidence that:

1.     Lawson was aware of ePlus's patents,

2.     Lawson acted despite an objectively high likelihood that its actions infringed a valid patent, and

3.     The objectively high likelihood of infringement was either known or so obvious that it should have been known to Lawson.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Lawson intentionally copied the claimed invention or a product covered by ePlus's patent, whether Lawson relied on competent legal advice, and whether Lawson presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.[32]

---

[32] *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

**D-41: Final Instructions on Jury Deliberations**

That concludes my instructions on patent law. I will now give you some final instructions about conducting your deliberations and returning your verdict.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans for either side in this case. You are judges - judges of the facts. Your only job is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone - including me - how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decisions that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.[33]

---

[33] 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions, § 103.50 (2001 5th ed.).

**DEFENDANT'S PROPOSED JURY VERDICT FORM**

You must consider each question of this Special Verdict Form and answer the questions according to the instructions.

**<u>Patent Invalidity</u>**

1)    Did Lawson prove by clear and convincing evidence that any of the asserted claims are invalid in view of the prior art, either because the claims are obvious, or they are anticipated?

a)    Yes    _____   (Finding is in favor of Lawson)

b)    No    _____   (Finding is in favor of ePlus)

*If your answer to question 1 is "No," go to Question No. 2.*

*If your answer to question 1 is "Yes,"* which claims are invalid in view of prior art?

| | | |
|---|---|---|
| Claim 3 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 26 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 28 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '172 Patent | ☐ Yes | ☐ No |

*If you answered "yes" to all of the above claims, STOP.  Otherwise, go to Question 2.*

2)   Did Lawson prove by clear and convincing evidence that any of the asserted claims of the '516 patent are invalid for failing to meet the written description requirement?

Yes   _____   (Finding is in favor of Lawson)

No   _____   (Finding is in favor of ePlus)

*If your answer to question 2 is "No," go to Question No. 3.*

*If your answer to question 2 is "Yes," which claims are invalid?*

| | | |
|---|---|---|
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

**<u>Accused Products</u>**

3)   Did ePlus prove by a preponderance of the evidence that Lawson's accused software has multiple catalogs?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

4)   Did ePlus prove by a preponderance of the evidence that Lawson's accused software has means for converting data related to a selected matching item and an associated source to data relating to an item and a different source?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

48

5)      Did ePlus prove by a preponderance of the evidence that Lawson's software has a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately?

Yes    \_\_\_\_\_    (Finding is in favor of ePlus)

No    \_\_\_\_\_    (Finding is in favor of Lawson)

*If you answered "No" to Questions 3, 4, and 5, STOP. If you answered "Yes" to any of Questions 3, 4, or 5, CONTINUE*

### Patent Infringement

6)      S3 PROCUREMENT (Inventory Control, Requisition, and Purchase Order Modules)

    a)    <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the S3 Procurement software that included a combination of the inventory control module, the requisition module, and the purchase order module?

        Yes    \_\_\_\_\_    (Finding is in favor of ePlus)

        No    \_\_\_\_\_    (Finding is in favor of Lawson)

        *If your answer to question 6(a) is "No," go to Question No. 6(b).*

        *If your answer to question 6(a) is "Yes," which claims did Lawson directly infringe?*

| | | |
|---|---|---|
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |

        *Go to the next question.*

b) <u>Indirect Infringement:</u>  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the S3 Procurement software that included a combination of the inventory control module, the requisition module, and the purchase order module?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*If your answer to question 6(b) is "No," go to Question No. 7.*

*If your answer to question 6(b) is "Yes,"* which claims did the third party directly infringe?

| | | |
|---|---|---|
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

c) *If your answer to question 6(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*Go to the next question.*

d) *If your answer to question 6(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringe the claim(s)?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*Go to the next question.*

50

**7)     Requisition Self-Service (RSS)**

a)     <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the Requisition Self-Service (RSS) application?

Yes     _____  (Finding is in favor of ePlus)

No      _____  (Finding is in favor of Lawson)

*If your answer to question 7(a) is "No," go to Question No. 6(b).*

*If your answer to question 7(a) is "Yes,"* which claims did Lawson directly infringe?

| | | |
|---|---|---|
| Claim 3 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '172 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

b)   <u>Indirect Infringement:</u>  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the Requisition Self-Service (RSS) application?

Yes      _____   (Finding is in favor of ePlus)

No       _____   (Finding is in favor of Lawson)

*If your answer to question 7(b) is "No," go to Question No. 8.*

*If your answer to question 7(b) is "Yes,"* which claims did the third party directly infringe?

| | | |
|---|---|---|
| Claim 3 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '172 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

c)   *If your answer to question 7(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)?

Yes      _____   (Finding is in favor of ePlus)

No       _____   (Finding is in favor of Lawson)

*Go to the next question.*

d)   *If your answer to question 7(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringe the claim(s)?

Yes   _____ (Finding is in favor of ePlus)

No    _____ (Finding is in favor of Lawson)

*Go to the next question.*

## 8)   **S3 Procurement Punchout**

a)   <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson controls third party vendors who operate Punchout websites?

Yes   _____ (Finding is in favor of ePlus)

No    _____ (Finding is in favor of Lawson)

*If your answer to question 8(a) is "No," go to Question 9.*

*If your answer to question 8(a) is "Yes," go to Question 8(b).*

b)   Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the Procurement Punchout application?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

*If your answer to question 8(b) is "No," go to Question No. 8(c).*

*If your answer to question 8(b) is "Yes,"* which claims did Lawson directly infringe?

Claim 3 of the '683 Patent          ☐ Yes          ☐ No

Claim 6 of the '683 Patent          ☐ Yes          ☐ No

Claim 26 of the '683 Patent        ☐ Yes          ☐ No

Claim 1 of the '516 Patent          ☐ Yes          ☐ No

Claim 2 of the '516 Patent          ☐ Yes          ☐ No

Claim 6 of the '516 Patent          ☐ Yes          ☐ No

Claim 9 of the '516 Patent          ☐ Yes          ☐ No

Claim 21 of the '516 Patent        ☐ Yes          ☐ No

Claim 22 of the '516 Patent        ☐ Yes          ☐ No

Claim 29 of the '516 Patent        ☐ Yes          ☐ No

Claim 1 of the '172 Patent          ☐ Yes          ☐ No

*Go to the next question.*

54

c) <u>Indirect Infringement:</u>  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the Procurement Punchout application?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*If your answer to question 8(c) is "No," go to Question No. 9.*

*If your answer to question 8(c) is "Yes,"* which claims did the third party directly infringe?

Claim 3 of the '683 Patent          ☐ Yes          ☐ No

Claim 6 of the '683 Patent          ☐ Yes          ☐ No

Claim 26 of the '683 Patent         ☐ Yes          ☐ No

Claim 1 of the '516 Patent          ☐ Yes          ☐ No

Claim 2 of the '516 Patent          ☐ Yes          ☐ No

Claim 6 of the '516 Patent          ☐ Yes          ☐ No

Claim 9 of the '516 Patent          ☐ Yes          ☐ No

Claim 21 of the '516 Patent         ☐ Yes          ☐ No

Claim 22 of the '516 Patent         ☐ Yes          ☐ No

Claim 29 of the '516 Patent         ☐ Yes          ☐ No

Claim 1 of the '172 Patent          ☐ Yes          ☐ No

*Go to the next question.*

d) *If your answer to question 8(c) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*Go to the next question.*

55

e)    *If your answer to question 8(c) is "Yes," did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringe the claim(s)?*

Yes    _____ (Finding is in favor of ePlus)

No    _____ (Finding is in favor of Lawson)

*Go to the next question.*

9)    Do you find that ePlus has proved by a preponderance of the evidence that Lawson directly infringed by practicing each step of any of the asserted method claims?

Yes    _____ (Finding is in favor of ePlus)

No    _____ (Finding is in favor of Lawson)

*If your answer to question 9 is "No," go to Question No. 10.*

*If your answer to question 9 is "Yes," which claims did Lawson directly infringe?*

Claim 28 of the '683 Patent         ☐ Yes         ☐ No

Claim 29 of the '683 Patent         ☐ Yes         ☐ No

*Go to the next question.*

10)    Indirect Infringement of Method Claims

a)    Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted method claims by practicing each step of any of the asserted method claims

Yes    _____ (Finding is in favor of ePlus)

No    _____ (Finding is in favor of Lawson)

*If your answer to question 10(a) is "No," go to Question No. 11.*

*If your answer to question 10(a) is "Yes," which claims did the third party directly infringe?*

Claim 28 of the '683 Patent         ☐ Yes         ☐ No

Claim 29 of the '683 Patent         ☐ Yes         ☐ No

    b)   *If your answer to question 10(a) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)

       Yes   \_\_\_\_\_  (Finding is in favor of ePlus)

       No   \_\_\_\_\_  (Finding is in favor of Lawson)

    b)   *If your answer to question 10(a) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringement of the claim(s)?

       Yes   \_\_\_\_\_  (Finding is in favor of ePlus)

       No   \_\_\_\_\_  (Finding is in favor of Lawson)

11)   Has ePlus proved by a preponderance of the evidence that Lawson had specific intent to induce infringement?

       Yes   \_\_\_\_\_  (Finding is in favor of ePlus)

       No   \_\_\_\_\_  (Finding is in favor of Lawson)

*If your answer to question 11 is "Yes,"* when did Lawson have specific intent to induce infringement?

Date: _____

*If your answer to question 11 is "No," you are FINISHED.  Please sign the verdict form and return it to the bailiff.*

### Damages

**[Lawson reserves the right to propose damages-related questions based on the Court's rulings on damages in this case.]**

_____       _____
Foreperson                          Date

LAWSON SOFTWARE, INC.

By    /s/ Robert A. Angle
            Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of September 3, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

 

 

 

 

 

 

 

 

 

 

         /s/ Robert A. Angle
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

59