# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF EPLUS INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO STRIKE THE EXPERT REPORTS OF PRESTON STAATS AND KEITH KNUTH

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
Srikanth K. Reddy (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Andrew N. Stein (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800

*Attorneys for Plaintiff, ePlus, Inc.*

**I.      INTRODUCTION**

The issue here is not and has never been, as Defendant contends, "asymmetry" in the number of experts identified by the parties. Because none of ePlus's experts are going to testify to overlapping opinions, the disparity that Defendant continues to suggest is imaginary. From the beginning, Defendant made the ***deliberate decision*** to limit itself to a single expert for all opinions relevant to the technical issues in the case. Defendant elected to have Dr. Shamos serve as ***both*** its noninfringement and invalidity expert. It could have easily done otherwise. It did not.

Now, given the "opportunity" it apparently believes the Court's Order created with its ruling on Defendant's Motion *in Limine* No. 5, it has taken another strategic tact — Defendant has chosen to "swap out" its invalidity expert for another, in an effort to cure and correct the perceived defects in the record. Further, it responded with a "source code" expert — its own employee — who it could have utilized, in a timely fashion, months ago under the Court's Scheduling Order. Such "relief" was never sought by Defendant in its original motion, nor could it have been contemplated by the Court. This self-granted "remedy," therefore, is in search of a wrong.

While the parties may continue to debate what the Court's "per discipline" provision in the Scheduling Order was intended to address, it clearly did not contemplate a "do over" as a result of the claimed prejudice asserted by Defendant. Defendant acknowledged at the hearing that ePlus had not served "overlapping" expert reports, and as to the distinct legal issues in play, ePlus would offer only one expert on each topic. ePlus pledged as much to the Court. And continues to do so.

What was contemplated, therefore, at least in the mind of ePlus's counsel, and perhaps the Court as well, was that Defendant ***might***, for example, address issues outside of the report of

Dr. Shamos — but still within the Court's rulings as to the scope of the permissible invalidity arguments. That, of course, Defendant decidedly did *not* do.

By choosing to completely "replace" its invalidity expert, Defendant has transformed an imaginary prejudice of its own into a manifest prejudice to ePlus. The trial is potentially less than two weeks away. ePlus received two new expert reports 8 business days ago — almost a month after the Court's ruling.[1] ePlus, therefore, has had — and likely will have, unless this motion is granted — no opportunity to rebut the reports, which is its right under the Federal Rules. Moreover, ePlus will not have the right to depose the experts, unless the Court permits, which even if it does, will necessarily need to occur right in the middle of its trial preparations (or, indeed, in its case-in-chief), to the great prejudice of Plaintiff. Unless the reports are stricken, therefore, (or some reasonable adjustment in the trial schedule can be accommodated), ePlus will be severely and unfairly harmed.

This could have been neither what the Court anticipated nor expected when it issued its Order. Indeed, as noted above, this was completely unnecessary given that in large part Defendant's decision to engage only one "technical" expert was entirely self-inflicted. Defendant — even under its own cramped interpretation of the "per discipline" provision of the Scheduling Order, could have selected two experts for noninfringement and invalidity.

Moreover, nothing prevented Defendant from responding to the report of Mr. Niemeyer on the source code issues under the Court's issued Scheduling Order, and Dr. Shamos *did in fact respond to Mr. Niemeyer's report*. Despite this, after receiving the Court's permission to have a source code expert respond to Mr. Niemeyer, what did Defendant do? It served a completely *unresponsive* report — a report so unrelated to the issues involved in Mr. Niemeyer's report that

---

[1] If the new invalidity report of Dr. Staats is nothing more than a "rehash" of Dr. Shamos, it is difficult to understand why it took Defendant a month to serve it.

2

within *one* day it was forced to concede as much, withdraw it, and serve a revised and "redacted" report. Nevertheless, this second report remains unresponsive, and creates the same manifest prejudice to ePlus that the Dr. Staat's "do over" expert report does.

For these reasons, and the additional reasons set forth below, the Court should strike the reports. The Court's Order permitting the additional expert reports could not have been an open license to unfairly disadvantage ePlus on the eve of trial.

## II.  ARGUMENT

### A.  ePlus is Prejudiced By Dr. Staats's Opinions and Their New Underlying Reasoning

Defendant suggests — self-servingly — that "ePlus has not been 'ambushed' by any new invalidity *theories*." Def.'s Br. at 9 (emphasis added). This, in its view, should end the inquiry. It only begins it. While it may be true that Dr. Staats purported to opine on the same invalidity *theories* that Dr. Shamos had already opined on, the ***underlying reasoning*** of Dr. Staats's opinions differs ***dramatically*** from the underlying opinions of Dr. Shamos. Thereby giving rise to the prejudice to ePlus.

Defendant boldly argues that the Court agreed to this prejudice, and permitted it to proffer wholly new expert reasoning for prior invalidity theories because the Court "***expressly ordered*** that Defendant could ***supplant its single invalidity expert*** with an additional expert on prior-art related invalidity…." Def.'s Br. at 6 (emphasis added). The Court could not have contemplated, however, that Defendant would ***entirely supplant*** its previous expert's opinions with new opinions, and then ***dismiss him***.

Defendant identified Dr. Shamos as its expert 11 months ago. Under the Scheduling Order, it served an invalidity report on May 7, 2010. ePlus responded with the report of Mr. Hilliard on June 9. ePlus deposed Mr. Shamos on his opinions on June 16. Mr. Shamos was free

3

in his deposition to respond and sur-rebut *any* opinions of Mr. Hilliard — by agreement of the parties — in his deposition. And he availed himself of that opportunity.

Now, Defendant abandons this protocol — as expressly ordered by the Court — and seeks to unravel that process with the hollow proffer that Dr. Staats's new opinions are merely "consistent with Dr. Shamos." Def.'s Br. at 6. If this was the relief Defendant sought by its Motion *in Limine* No. 5 — to serve redundant, "consistent" opinions — it should have informed the Court, as it was likely not to resonate as a "wrong" in need of such a "remedy."

There is no question that both Dr. Shamos and Dr. Staats proffer the same opinions. Defendants rush to concede as much. For example, each address the "means for searching for matching items among the selected product catalogs" element of claim 3 of the '683 Patent, and agree that is allegedly disclosed by the P.O. Writer reference. *Compare* Exh. 1[2] (Shamos Invalidity Rpt.) at Ex. 3 ('683 patent, claim 3c) *with* Exh. 15 (Staats Invalidity Rpt.) at ¶ 249. However, both the *evidence* and the *reasoning* employed by each expert to opine that this claim element is disclosed by P.O. Writer differs dramatically:

| Claim Limitation | **Dr. Shamos' Opinion** | **Dr. Staats's Opinion** |
|---|---|---|
| means for searching for matching items among the selected product catalogs ('683 patent, claim 3c) | P.O. WRITER:<br><br>The reference discloses a search program, described, e.g., at L0126941-51. The search is disclosed, e.g., at L0126941-5. A portion of the database matching the entered product information can be located, e.g., by specifying a CATALOGUE ID. L0126944. Search results are shown. | P.O. WRITER:<br><br>In P.O. Writer Plus V.10, selected catalog can be searched for items. (P.O. Writer Plus V.10 Manual at L0127033; L0127035.) Specifically, a selected catalog can be searched for items beginning with a specified letter using the ITEM DESCRIPTION SEQUENCE – STARTING WITH. (L0126945.) Alternatively, a selected |

---

[2] All numbered exhibits referenced herein, e.g., "Exh. [number]," are exhibits filed concurrently with ePlus's Opening Brief. If a lettered exhibit is referenced, e.g., "Exh. [letter]," the exhibit is filed concurrently with this Reply.

4

|  | e.g., at L0126946.<br><br>A file system is disclosed containing the information to be searched: "The 'foundation' of the P.O. WRITER PLUS system is a group of 13 files, referred to as the Master Files. They contain information about what you buy, who you buy from, who does the buying, etc. Information maintained in these files is used to create a Purchase Order." L0126723 (Shamos Rpt. Ex. 3) | catalog can be searched using the ITEM DESCRIPTION FIELD-STARTING WITH. (P.O. Writer Plus V.10 Manual at L0126576.) (¶ 249) |
|---|---|---|

Indeed, Dr. Staats's report is replete with different underlying reasoning on other theories for which Dr. Shamos has already provided his opinion, has already defended at deposition, and has already had rebutted by ePlus.

The new report of Dr. Staats therefore mandates rebuttal by Mr. Hilliard.[3]  If this new report is allowed, ePlus will also have to depose Dr. Staats on the bases of his new opinions and their underlying reasoning.  Moreover, it will be virtually impossible to complete these activities before or during the trial to the extent it commences on September 20.  Thus, the prejudice caused to ePlus as a result of Dr. Staats's new opinions is real and immediate.

### B. Mr. Knuth Exceeded the Bounds of Mr. Niemeyer's Report

Defendant's concession that Mr. Knuth's original report went beyond the bounds of Mr. Niemeyer's report and was not permitted by the Court's Order on Defendant's Motion *in Limine* No. 5 is evidenced by the alacrity within which the Defendant withdrew it and replaced it with another version.  However, Defendant's efforts to mold Mr. Knuth's reports into compliance with the Court's Order do not even begin to go far enough — Mr. Knuth's second report is still flawed in numerous respects and should be stricken.

---

[3] Indeed, it is clear that Dr. Staats's report was written in sur-rebuttal to Mr. Hilliard's rebuttal report — Mr. Hilliard's name appears in Dr. Staats's report over 165 times.

5

### 1. Mr. Knuth Inappropriately Relied on Defendant's Prior Legacy Systems

Mr. Knuth takes the opportunity to introduce more discussion of Defendant's irrelevant "legacy" systems into this case — new, unnamed, systems never before identified in discovery. *See, e.g.,* Exh. 13 (8/26/10 Knuth Rpt.) (making reference to unnamed pre-2002 legacy versions) at ¶ 75 ("this code has been in use since at least 1989"), ¶ 26 ("I am aware of earlier versions of the S3 software that also included these modules, dating back to at least the late 1980s"). Indeed, Defendant admits, begrudgingly, that Mr. Knuth's second report still contains references to Defendant's stricken legacy systems. Def.'s Br. at 6 ("***any remaining references to Lawson's prior systems*** simply corrects [*sic*] statements or misimpressions in the reports of Mr. Niemeyer and Dr. Weaver, and are not invalidity contentions…") (emphasis added). Defendant, however, does not dispute that Mr. Niemeyer "never opined on any of Defendant's prior legacy systems" (ePlus Opening Br. at 21) and that Dr. Shamos already rendered opinions based on Defendant's legacy systems (*See* ePlus Opening Br. at 12-13 (comparing Dr. Shamos's legacy system opinions to Mr. Knuth's legacy system opinions)). Accordingly, Mr. Knuth's opinions based on Defendant's prior legacy systems are inappropriate as both outside the scope of Mr. Niemeyer's opinions and duplicative of Dr. Shamos's opinions. Moreover, they were contrary to this Court's ruling on ePlus's Motion *in Limine* No. 2 that effectively excluded Versions 5.0 and 6.0 in their entirety.

Defendant's argument that Mr. Knuth's opinions based on these unnamed legacy systems are proper because "Mr. Knuth never mentions in his report the Lawson 5.0 or 6.0 systems" is a distinction without a difference. These references to unnamed legacy systems are inappropriate for the same reasons that reference to versions 5.0 and 6.0 is inappropriate — ***all the prior legacy***

6

*systems* "don't do anything but provide confusion [and] delay." Exh. 4 (7/28/10 Tr., the Court) at 187:23-24.

Moreover, it is no answer for Defendant to seek to lessen the impact of Mr. Knuth's opinions regarding Defendant's unnamed legacy systems by insisting that they are not "invalidity" contentions. Def.'s Br. at 6. That is not the point. Version 5.0 and 6.0 were excluded for *all purposes*, save one element of one claim. Version 7.0 and *any other pre-2002 legacy version* is therefore no different.

### 2.  Mr. Knuth Inappropriately Rendered Non-Infringement Opinions

Defendant also adamantly refuses to acknowledge that Mr. Knuth has obviously proffered non-infringement opinions. Def.'s Br. at 8-9. But in the beat of a heart, it acknowledges that Mr. Knuth has at least rendered "infringement-related" opinions. Def.'s Br. at 10 ("*any opinions [of Mr. Knuth] related to infringement* directly respond to Mr. Niemeyer's report or to Dr. Weaver's report that relies on Mr. Niemeyer.") (emphasis added); *see also* Def.'s Br. at 8 ("…each of *Mr. Knuth's statements* cited by ePlus *either responds to or corrects*…the *conclusions drawn by Dr. Weaver* [(*i.e.*, infringement opinions)] based on statements made by Mr. Niemeyer") (emphasis added). Indeed, Mr. Knuth takes the Court's construction of the claim term "catalog," purports to apply it to the facts, and opines that the accused infringing functionality does not meet that construction. *See, e.g.,* Exh. 12 (8/26/10 Knuth Rpt.) at ¶ 31 ("Under [the Court's construction of the term 'catalog'], [the Inventory Control source code module] does not store catalog items, and the Item Master file does not include catalog items."). *This is the epitome of a non-infringement opinion.*

Defendant's only excuse for Mr. Knuth's opinions in this regard is that they purportedly respond to the reports of either Mr. Niemeyer or Dr. Weaver. These non-infringement opinions

7

cannot respond to Mr. Niemeyer, because Mr. Niemeyer never proffers infringement opinions.[4] These non-infringement opinions also cannot respond to Dr. Weaver, because to do so, Mr. Knuth would be proffering opinions that are cumulative of opinions that Dr. Shamos has already given.

Dr. Weaver's reliance on Mr. Niemeyer does not give Mr. Knuth a license to ***further rebut*** Dr. Weaver's infringement opinions because ***Dr. Shamos has already done so***. This was the point of Dr. Shamos's non-infringement report — a report that he was allowed to, and did, provide pursuant to the Scheduling Order. Thus ironically, Defendant now openly offers "overlapping" opinions — the very thing it argued this Court's Scheduling Order prohibited.[5] Mr. Knuth's non-infringement opinions, therefore, are improper in view of Dr. Shamos's non-infringement opinions.

### C. Defendant Will Not Suffer Any Prejudice Should the Court to Grant *ePlus's* Motion

Defendant claims that it is at a disadvantage because ePlus has more technical experts than it does and that it will be prejudiced should the Court grant the present motion. This is simply an attempt to try and replace Dr. Shamos's opinions with the "new and improved" opinions of Dr. Staats and Mr. Knuth. Any "disadvantage" inherent in Defendant's use of a single technical expert on all issues, however, was of its own choosing. Even under its reading of the Scheduling Order, Defendant could have proffered more technical experts than just one.

---

[4] This point is undisputed. Exh. 3 (Shamos Non-Infringement Rpt.) at ¶ 179 ("Mr. Niemeyer does not express any opinions relating to infringement…"); Exh. 12 (8/26/10 Knuth Rpt.) at ¶¶ 19-20 ("…Mr. Niemeyer does not state any ultimate conclusions regarding infringement…").

[5] Defendant suggests that these non-infringement opinions are entirely proper because "***to the extent [they] overlap those of Dr. Shamos***, ePlus has been aware of [them] for months." Def.'s Br. at 10 (emphasis added). This argument is flawed not only because Defendant concedes that these opinions overlap with Dr. Shamos, but also because allowing Defendant to switch Dr. Shamos's opinions out for Mr. Knuth's causes the same prejudice that ePlus will suffer if Defendant is permitted to switch Dr. Shamos's opinions out for Dr. Staats's.

8

For reasons about which ePlus may only speculate, Defendant chose not to and elected to have Dr. Shamos carry the entire burden by himself. To succeed in its argument, Defendant must ignore the fact that it has never suffered a disadvantage in substance because Defendant has already addressed all of ePlus's disclosed — and non-overlapping[6] — technical expert opinions with opinions of its own. Considering the expert disclosures of Drs. Weaver and Shamos, and Messrs. Hilliard and Niemeyer, there is no expert opinion that is unrebutted, and therefore amidst the substance of these opinions there is "parity, symmetry, and fairness." Most importantly, however, Defendant had an opportunity to proffer new opinions that were not overlapping. But it did not.

Finally, Defendant already had the opportunity to "fix" and embellish on Dr. Shamos's opinions within the boundaries of the Scheduling Order. As agreed by the parties, Dr. Shamos was permitted to rebut Dr. Weaver's infringement opinions and Mr. Niemeyer's source code opinions in his non-infringement report, and was entitled to sur-rebut Dr. Weaver's and Mr. Hilliard's validity opinions in his deposition.[7] Dr. Shamos availed himself of that opportunity. Notably, Defendant never disputes that Dr. Shamos had the opportunity to opine on any topic

---

[6] Defendant's counsel conceded that ePlus's validity experts had not proffered overlapping opinions. Exh. A (7/28/10 Hearing Tr.) at 215:24-216:4. Defendant's experts also agree that Mr. Niemeyer's opinions on source code operation do not overlap with Dr. Weaver's opinions on infringement. Exh. 3 (Shamos Non-Infringement Rpt.) at ¶ 179 ("Mr. Niemeyer does not express any opinions relating to infringement…"); Exh. 12 (8/26/10 Knuth Rpt.) at ¶¶ 19-20 ("…Mr. Niemeyer does not state any ultimate conclusions regarding infringement…").

[7] The parties agreed that experts were permitted to give sur-rebuttal opinions in their depositions. Exh. B (8/10/10 Tr., McDonald) at 4:20-24 ("And the agreement was any surrebuttal would be covered by the depositions as well as any inquiries people wanted to go into regarding the original reports that the experts provided.").

9

addressed by ePlus's technical experts and did so.[8]  *See* Exh. 3 (Shamos Non-Infringement Rpt.) at ¶ 3 ("I have been asked to provide an opinion as to whether ePlus has shown that the accused Lawson software infringes the Asserted Claims, ***and to reply in detail to the opinions offered in the Weaver and Niemeyer Reports***.") (emphasis added), ¶¶ 178-182 (substantiating a section entitled "***REBUTTAL TO THE NIEMEYER REPORT***") (emphasis added, capitals in original), ¶ 178 ("Following is ***rebuttal to the statements made and opinions expressed in the Niemeyer Report***.") (emphasis added).

Defendant, therefore, will suffer no prejudice if this motion is granted because there already exists, in the expert disclosures, parity, symmetry, and fairness.  In contrast, with no time left to rebut these new reports, address the arguments, and depose the experts, ePlus will be severely prejudiced.

## III.   CONCLUSION

For these reasons, and the reasons detailed in its opening brief, ePlus respectfully requests that the Court strike the expert reports of Dr. Staats and Mr. Knuth, and exclude their testimony from trial.

---

[8] Defendant contends that it comported with the Court's order, at least with respect to Dr. Staats, because it says the Court permitted it to "meet Mr. Hilliard's testimony with another expert" (Def.'s Br. at 9).  What Defendant ignores is that Dr. Shamos already had the opportunity to ***meet*** Mr. Hilliard's testimony in his own deposition.

Respectfully submitted,

September 6, 2010

           /s/
Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
James D. Clements (admitted *pro hac vice*)
Srikanth K. Reddy (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com
sreddy@goodwinprocter.com

Andrew N. Stein (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 355-3333
astein@goodwinprocter.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of September, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

                                                /s/
                                    Craig T. Merritt (VSB #20281)
                                    Counsel for Plaintiff *e*Plus, Inc.
                                    **CHRISTIAN & BARTON, LLP**
                                    909 East Main Street, Suite 1200
                                    Richmond, Virginia 23219-3095
                                    Telephone: (804) 697-4100
                                    Facsimile: (804) 697-4112
                                    cmerritt@cblaw.com