1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                RICHMOND DIVISION

3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    :
4    ePLUS, INC.,                   :
                                    :
5                     Plaintiff,    :
     v.                             :  Civil Action
6                                   :  No. 3:09CV620
     LAWSON SOFTWARE, INC.,         :
7                                   :  September 8, 2010
                      Defendant.    :
8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ :

9

10

11        COMPLETE TRANSCRIPT OF **CONFERENCE CALL**
          BEFORE THE HONORABLE ROBERT E. PAYNE
12             UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:   (All via telephone)

16   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
17   GOODWIN PROCTOR
     901 New York Avenue, NW
18   Washington, D.C.   20001

19   Craig T. Merritt, Esq.
     **Henry I Willett, III, Esq.**
20   CHRISTIAN & BARTON
     909 E. Main Street, Suite 1200
21   Richmond, VA   23219-3095

22          Counsel for the plaintiff ePlus

23

24             DIANE J. DAFFRON, RPR
             OFFICIAL COURT REPORTER
25          UNITED STATES DISTRICT COURT

```
1      APPEARANCES:   (Continuing)

2      Daniel McDonald, Esq.
       William D. Schultz, Esq.
3      MERCHANT & GOULD
       3200 IDS Center, 80 S. Eighth Street
4      Minneapolis, MN   55402

5      Kirstin L. Stoll-DeBell, Esq.
       MERCHANT & GOULD
6      1050 17th Street, Suite 1950
       Denver, CO   80265
7
       Dabney J. Carr, IV, Esq.
8      TROUTMAN SANDERS
       Troutman Sanders Building
9      1001 Haxall Point
       P.O. Box 1122
10     Richmond, VA   23218-1122

11             Counsel for the defendant Lawson Software

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1              (The proceedings in this matter commenced at

2     3:30 p.m.)

3              THE COURT:  Hello.

4              MR. McDONALD:  Good afternoon, Judge.  This

5     is the ePlus Lawson counsel on the line.

6              THE COURT:  Okay.  Why don't you-all give

7     your names please for the record.

8              MR. McDONALD:  On behalf of ePlus at

9     Christian & Barton you have Craig Merritt and Henry

10    Willett.

11             MR. ROBERTSON:  From Goodwin Proctor, this is

12    Scott Robertson and Jennifer Albert on the phone as

13    well.

14             MR. CARR:  For Lawson Software, this is

15    Dabney Carr at Troutman Sanders.

16             MR. McDONALD:  Good afternoon, Your Honor.

17    Also for Lawson, Dan McDonald, Will Schultz and

18    Kirstin Stoll-DeBelle from Merchant & Gould.

19             THE COURT:  All right.  Thank you for being

20    available.

21             As I was reflecting upon our conversation

22    yesterday, I realized that I was looking at a segment

23    of the calendar where there's a fairly lengthy jury

24    trial that's going to be tried as well as a civil case

25    that's already set in that same period of time for

1   several days.  And I was anticipating that some of

2   those things might move, and I don't believe that they

3   are going to move.

4           And of the trial dates that you all have in

5   there, you have a jury selection on the 30th, three

6   days, and then the next week is five more days.

7   That's nine days or eight days.  And then a couple of

8   days, three days the next week or four.  And then I'm

9   gone and not going to be here for two weeks.  So I'm

10  not sure that even if I can move those cases that -- I

11  know I can move them, but even if I were to move them,

12  that we would be finished with your case unless I just

13  arbitrarily say you've got each a total of X hours,

14  and that's the end of it, and leave the jury time to

15  deliberate and have the instructions and the argument.

16          So you're telling me that you had nine days'

17  worth of evidence.  So I don't think that period of

18  time works if you've got that much evidence.  I

19  realize that if you don't have a damages case, you're

20  not going to have quite as much as you thought you

21  were going to have, but ordinarily the damages case

22  doesn't really take up a great deal of time because of

23  the way it tends to be presented and the nature of

24  cross-examination.

25          Did you ever, Mr. Robertson, go back and talk

1    to your man and see if he could have his block or

2    whatever it was the week of the 13th of September

3    instead of the week of the 20th?

4              MR. ROBERTSON:   (Unintelligible.)

5              THE COURT:   I can't hear you, Mr. Robertson.

6    Sorry.

7              MR. ROBERTSON:   I'm sorry.   I talked to

8    Dr. Weaver this morning.   Mr. McDonald asked me to.

9    And as you might have expected, Your Honor, when we

10   set the schedule yesterday, we started moving a lot of

11   parts, including sending computer equipment back and

12   shutting hotels down.

13             I did talk to Dr. Weaver.   He started

14   scheduling some other things to get them out of the

15   way.   But can I ask the Court a question given the

16   schedule you just suggested because Dan McDonald and I

17   talked this morning?   And if you were to impanel a

18   jury on the 30th, would I assume that we would start

19   with opening statements and move forward with our

20   first witness perhaps that afternoon, and then proceed

21   for three more days from Friday, December 3, and then

22   project to end on December 10 the trial?   And if

23   that's the suggested timeline, I think Mr. McDonald

24   and I can work within that.   I don't want to speak for

25   Mr. McDonald, but we did talk this morning, and we

6

1   were talking about the length of the trial.  And if

2   that were the timeline, I think we could equitably

3   distribute the time to get that accomplished, if I was

4   understanding Your Honor correctly, but perhaps I

5   wasn't.

6               THE COURT:  Well --

7               MR. ROBERTSON:  I won't speak for Mr.

8   McDonald.  I'll let him speak for himself.

9               THE COURT:  Well, do you think you-all could

10  try it in that period of time?

11              MR. McDONALD:  Your Honor, this is Dan

12  McDonald speaking.  My understanding is we were going

13  to pick the jury on the afternoon of the 29th, and

14  then come back the first thing in the morning on

15  Wednesday, December 1st, get going with openings and

16  go right into witnesses from there.

17              I understand we have three days that week and

18  five days the next week.  And if I understood right,

19  we would have Monday the 13th and also Tuesday the

20  14th to wrap it up.  Is that right?

21              THE COURT:  No.  That's what I'm saying.  No,

22  you don't because I am gone beginning the crack of

23  dawn the 17th.  So if you took until the 14th, that

24  doesn't leave the jury but two days.  I don't know

25  what they're going to do, but what it means is if the

1   jury doesn't finish deliberation on the 16th, and I

2   don't know what you mean by "wrap up," whether you

3   mean wrap up the evidence or wrap up with closing

4   arguments, then the jury is down until after the first

5   of the year.  The jury is gone for two weeks, and I

6   don't think that's a very good way to do it.

7           MR. McDONALD:  Well, one thing I've seen

8   before, and if you don't do this, I can appreciate it,

9   but I have seen when a judge was unavailable that

10  another judge or even a magistrate will step in if the

11  jury comes back while the judge that tried the case is

12  unavailable.  So if the jury does need more than two

13  full days, which obviously is a question, somebody

14  else could step in at that point.

15          Is that something you would be receptive in

16  doing?

17          THE COURT:  In many kinds of cases I will do

18  that, and I've done it both ways, but in this case

19  with all the rulings that I've made and all the

20  background, I think it would be a troublesome thing to

21  do to another colleague.  And there's really only one

22  person who could do it, and that's Judge Hudson

23  anyway, and he's got other commitments in December, I

24  think, if I remember correctly.

25          MR. ROBERTSON:  Your Honor, this is

1   Mr. Robertson.  If I could just react to that.  Let me

2   make sure I understand because the dates shifted on me

3   a little.  If we were picking the jury on Monday the

4   29th, and starting on the 30th, we would have nine

5   days to complete by the 10th.  And that would likely

6   give us a window for the jury to deliberate if you had

7   to leave, and I understood you to say on the morning

8   of the 17th for four days.  I would consent to having,

9   if it went beyond that, and I don't foresee that

10  happening, I can't envision that happening, but I

11  would consent to having Magistrate Judge Dohnal serve

12  in the role that Mr. McDonald just suggested in the

13  unlikely contingency that that would happen.  And I

14  think Magistrate Judge Dohnal has some experience with

15  the case.

16          THE COURT:  I know he does, but he's been

17  involved in the settlement, and both sides would have

18  to consent to that before it would happen.  And I

19  haven't checked to see if he's here at that time, but

20  I think actually we were talking about doing the jury

21  selection on the 30th.  I did say the 29th, but I

22  realized that's the Monday after Thanksgiving and

23  moved it to the 30th, I think, and then starting the

24  evidence on the 1st, which is a Wednesday, and then

25  the 2nd and the 3rd.

9

1          Under your discussion, you-all would be

2     finished by the 10th of December, and the jury would

3     have the case the Monday, Tuesday, Wednesday, and

4     Thursday.  And I believe you told me the jury

5     deliberated four days in one of these trials.  I'm not

6     going to say that's going to happen again, but what

7     was the first trial?  How long did that one go?

8          MR. ROBERTSON:  Six hours, Your Honor.

9          THE COURT:  I also have another question for

10    you-all.  It may have an impact on this.  And that is

11    since there are no damages issues and the injunction

12    is the only remedy that's available, is this really a

13    case where a jury is appropriate in any event?

14          MR. ROBERTSON:  This is Mr. Robertson, Your

15    Honor.

16          THE COURT:  Have you all looked at that?

17          MR. ROBERTSON:  I have bumped into this issue

18    once or twice before in my practice, and I think

19    notwithstanding the fact that the Court's ruled that

20    damages are out of the case, at the time of the

21    pleading it was a cause of action at law, and a jury

22    trial was requested, and that's the key.  And these

23    are infringement and validity are issues of fact.  So

24    I think under the authority I'm fairly confident that

25    the Seventh Amendment is implicated and a jury trial

1    is warranted.

2           If the Court would like, I could brief that.

3    I haven't discussed -- if the Court is raising the

4    prospect of waiving a jury trial, I haven't discussed

5    that with my client.

6           THE COURT:  No, I wasn't raising the prospect

7    of waiving a jury trial.  I was raising the question

8    whether a jury is appropriate in this case now, which

9    if the answer is no would change the dynamic of the

10   discussion we're having now.  That's why I raised it.

11          Mr. McDonald, what's your understanding?

12          MR. McDONALD:  Your Honor, this is Dan

13   McDonald speaking for Lawson.

14          I'm not sure what the answer is to your

15   question.  Mr. Robertson may be right, but I think

16   I've also seen some law that does decide whether or

17   not you're entitled to a jury has to do with the

18   relief available, which means that if it was an

19   injunction, it may well be a judge trial.

20          What I'm grappling with a little bit is just

21   wanting to make sure we've got all the right bases

22   covered.  And if it had to be a jury, I'd rather the

23   jury got it the first time if there's any doubt about

24   it is kind of my initial reaction to that.

25          So I'm not ready to go away from having a

1   jury or to advocate for that at this point, but I

2   think, honestly, you raise a fair point.

3           THE COURT:  Well, look at it and let me know

4   what you-all think about it.  You can file your

5   brief -- what is today?  Wednesday?  When do you want

6   to file your brief on it, Mr. Robertson?

7           MR. ROBERTSON:  May I have a week, Your

8   Honor?

9           THE COURT:  Yes, that'll be fine.

10          When do you want to file your brief?

11          MR. McDONALD:  Could I have a week after

12  that, Your Honor?

13          THE COURT:  Sure.

14          MR. McDONALD:  Thank you.

15          THE COURT:  All right.

16          MR. ROBERTSON:  May I have a two-day reply,

17  Your Honor?

18          THE COURT:  Yes.

19          MR. ROBERTSON:  Thank you.

20          THE COURT:  Now, back to the original

21  question.  When you were discussing with your man --

22  what's his name?  Dr. Weaver?

23          MR. ROBERTSON:  Dr. Weaver.

24          THE COURT:  Did you ask him if he could have

25  his procedure this coming week so he would be

1   available to testify the 20th?

2         MR. ROBERTSON:  I did, Your Honor, and he

3   cannot.

4         THE COURT:  Okay.

5         MR. ROBERTSON:  He had some other procedures,

6   and, Your Honor, I did release a book of my hotels

7   just yesterday, sir.

8         THE COURT:  They'll be glad to have them

9   back.  They're anxious to have people.  I wouldn't

10  worry too much about getting the hotels back.

11        MR. ROBERTSON:  It's not been that easy, Your

12  Honor, but I appreciate it, but I do have some

13  problems with not only that.  I've been playing a

14  little ping-pong with my inventors who I don't really

15  completely control.  So that's going to be difficult.

16        THE COURT:  Look, Mr. Robertson.  Let me tell

17  you something.  There's no difficulty in a 24-hour

18  period in saying we're going back to the way we were.

19  And that happens.  Because they haven't rented all

20  these rooms and your guys haven't made any irrevocable

21  plans.  The controlling issue, in my mind, is whether

22  or not the doctor can have his procedure during the

23  13th.  And if he can't, then he can't.  And you've

24  asked him that, and he's told you he can't, and that

25  answered the question.  So I understand that.

1        Well, I suppose we can pick a jury beginning

2   on the 29th and have opening statements and

3   arguments.  And if I'm going to have to clear the

4   afternoon of the 30th, I'm going to have to clear the

5   whole day anyway.  So I can see if other people can do

6   these things and get them straightened out, but you're

7   going to have to be -- that means you would be

8   finished with the entire case, and it would go to the

9   jury on the afternoon of the 10th of December.  And

10  then the jury would have three days or so to

11  deliberate, I think.  I don't think there's any real

12  risk it will go much longer than that.  But anyway,

13  can you all do that?

14        MR. McDONALD:  Yes, Your Honor, the

15  plaintiffs can.

16        MR. ROBERTSON:  I believe so, Your Honor.

17        Just to clarify.  So we pick the jury on the

18  afternoon of the 29th, and then start the case on the

19  30th?

20        THE COURT:  Well, we'll pick the jury

21  probably beginning in the morning around 11:00.  That

22  gives everybody time to get off the road.  You're

23  going to have to come in the day before anyway.  And

24  then you'll pick the jury and do the opening

25  statements on the 29th, and start with the evidence on

1    the morning of the 30th.

2           And then you have four days that week and

3    five days the next week in which to complete the

4    evidence, complete the instructions, and complete your

5    closing argument and instruct the jury.

6           Now, that means that the 10th is going to be

7    basically devoted to instructing the jury.  And

8    you're, in effect, going to have to be finished by

9    December the 9th, which gives you one, two, three,

10   four, five, six, seven, eight, nine days.

11          MR. McDONALD:  Your Honor, this is McDonald

12   talking again.

13          I was just wondering, I think I'd feel a

14   little better about the squeeze here if we could carry

15   it over to the 13th if absolutely necessary.  That

16   would still give us two or three days with the jury

17   deliberations before you leave.  And if we can all

18   stipulate, which I think we probably could, that if

19   Judge Dohnal is available, that he could take care of

20   the jury after you have to leave if they are still

21   deliberating.  Is that an option?

22          THE COURT:  I don't have a problem with that,

23   but I also will tell you that it could be a problem

24   given the nature of this case.

25          MR. ROBERTSON:  I would stipulate to it, Your

1  Honor.

2         THE COURT:  But I'm not interested in having

3  you-all put on evidence on the 13th at all.  I want a

4  fixed period of time.  If you start on the 29th, and

5  if we're going to start on the 29th, you can actually

6  start with some of your witnesses that day, I guess,

7  as long as we're going to have a jury here.  I was

8  going to try to give them a little time to get their

9  lives straight before they have to sit for a while.

10         That gives you nine or ten days to get the

11  case tried.  How would you propose to split it up,

12  those ten days, nine days?

13         MR. ROBERTSON:  Equitably, I would think.

14  Mr. McDonald is a professional.  I could work with

15  him.  I think that would be a fair lot.

16         MR. McDONALD:  This is Mr. McDonald speaking

17  again, Your Honor.

18         My contemplation in asking about Monday, I

19  think it's consistent with what you were suggesting

20  that maybe we need all day on Friday the 10th to get

21  all the evidence in, and we maybe can't quite get to

22  the point of instructing the jury by then, but then

23  that could carry over to the 13th, and I think even

24  having that little extra leeway I would feel

25  comfortable today saying yes, we can make that work.

```
 1            THE COURT:  No, because what that means is
 2   you're not even going to make the arguments until the
 3   13th.  If you're putting on evidence on the 10th,
 4   you're not going to make the arguments until the
 5   13th.  And those arguments are going to take the
 6   better part of the day.  And the instructions will
 7   take what?  How many hours do you think?  You've had
 8   the instructions before in this case, Mr. Robertson.
 9   How long did Judge Spencer and Judge Brinkema take?
10            MR. ROBERTSON:  My memory, Your Honor, is it
11   takes about two hours.
12            THE COURT:  Yes, that's what I was going to
13   say.  Two to three hours probably for these cases.
14   That basically means that the 13th would be not
15   available for deliberation.
16            MR. ROBERTSON:  Mr. McDonald asked me a
17   question.  I don't know if you heard, Your Honor.  In
18   the case of SAP, the plaintiff went for about an hour
19   and a half in closing, and the defendant had an hour
20   and a half.  And then there was about 20 or 30 minutes
21   rebuttal.
22            So that's three and a half hours.  And then
23   two hours of jury instructions, two and a half.  So
24   the Court is right.  That's a full day, effectively,
25   of argument and instructions.
```

```
 1              THE COURT:  Which I would have the 10th be
 2    that day.  And we would start picking the jury --
 3              MR. McDONALD:  This is McDonald speaking
 4    again.
 5              I think Mr. Robertson and I would make our
 6    best efforts to endeavor to be ready by the 10th, but
 7    if we could have that 13th available as an overflow or
 8    whatever you want to call that, that if we can't get
 9    the evidence done by the end of the day on the 9th,
10    I'd feel more comfortable with that.  So I like having
11    that back-up plan of having Judge Dohnal being
12    available.
13              THE COURT:  I understand what you're saying.
14    I'm just not prepared to agree with it.  If we're
15    going to go over to do more than what we're talking
16    about in terms of trial days, they're going to be in
17    the immediate weekend, Saturday.
18              MR. McDONALD:  Okay.  That'll be fine.
19              THE COURT:  What I don't understand,
20    Mr. Robertson, is how much time do you need to try
21    your case?  That's the first thing.  You threw out the
22    figure of three to four days yesterday, and I just am
23    not sure as I reflect on it why you're going to need
24    all that time.  You've tried the case before.  So tell
25    me what you're talking about.  It will help me.
```

18

1           MR. ROBERTSON:  I'm not quite sure if I said
2     three to four days, Your Honor.  What I recall is in
3     the past it's been between four and five days.
4     Typically four and a half.
5           THE COURT:  I may have misremembered.  I'm
6     not going to stake that ground out.  I may have
7     misrecalled it.
8           MR. ROBERTSON:  That's about where I am, Your
9     Honor.
10           THE COURT:  What do you do for five days?
11     What are you doing for four or five days?
12           MR. ROBERTSON:  There's the inventors who
13     typically testify.  There's Dr. Weaver, who needs to
14     pull together a lot of disparate facts.  There's some
15     adverse witnesses I'm going to need to call with
16     respect to certain admissions.  And that isn't always
17     an easy witness to put on when you're doing that, but
18     I try to stay as focused as possible.  I don't try to
19     spin wheels up there, Your Honor.
20           I've done this case twice in the Eastern
21     District of Virginia and the judges are very vigilant
22     about cumulative evidence coming in.
23           THE COURT:  I know.
24           MR. ROBERTSON:  Not coming in.
25           THE COURT:  That's why I'm asking you.

1      MR. ROBERTSON:  That's where I was.  I think

2  it was eight days with Judge Brinkema total.  My

3  memory is, Mr. Carr is on the phone, it was longer

4  than that in the SAP case, but that's my memory.  But

5  again, maybe I'm biased.  The plaintiffs took far less

6  time than the defendants took in that case.  I

7  wouldn't say far less, but the total time, we were at

8  least a day and a half less that they were.

9      I try to put my case on efficiently.  I don't

10  want to put anybody to sleep.  I know it's a patent

11  case.  It's not exactly a capital punishment case, but

12  I'm going to try to get it done as fast as I can.  I

13  have no interest in delaying this.  It doesn't help my

14  case unless I put it on quickly and efficiently, but

15  it's a patent case, Judge.  I'm sure you appreciate

16  that.

17      THE COURT:  I know, but patent lawyers

18  generally tend to think they need more time to do

19  things than really they do sometimes.

20      Mr. McDonald, how long do you envision your

21  case being?

22      MR. McDONALD:  About four days, four and a

23  half days, Your Honor.

24      THE COURT:  All right.  What are you going to

25  do?

1          MR. McDONALD:  Well, we've got prior art

2     systems.  We've got our IBM witnesses.  Two people

3     they're talking about, that TB2 system.  We've got the

4     appeal writer witness.  We have the J-CONN witness.

5     We've got our Lawson people to explain our system on

6     why we don't infringe.  And we've got our expert, Mr.

7     Seamus, who's going to cover invalidity and

8     noninfringement.

9          So we have to defend against noninfringement

10    and also prove invalidity on our side of the case.

11    I'm not including our cross-examination of their

12    witnesses, but we'll be cross-examining their

13    witnesses as well.  That's really part of our case.

14         As we understand it, Judge, on this issue,

15    just so I can clarify because I think it's relevant

16    here, when ePlus calls the inventor, these third-party

17    inventors to the stand, is it appropriate for us to

18    assume that we exhaust that witness while they're on

19    the stand?  For example, if we need to get into

20    invalidity issues with a particular witness because

21    that witness has relevant evidence of that, we do it

22    at that time or do they get recalled?

23         THE COURT:  That really depends upon the

24    agreement of the parties in part and upon the way that

25    testimony goes.

1          I've found that it can be quite confusing to

2     a jury to be having the defense case in patent cases

3     being put on while the infringement case is being put

4     on, and they don't understand what's what.  It's hard

5     enough for them anyway to follow these instructions

6     and these concepts.  So I'm not much inclined to do

7     that in a complex case.

8          I don't know what Mr. Robertson's inclination

9     is to have these people called out of order while they

10    are all on the stand.

11         MR. ROBERTSON:  Let me respond to that and

12    raise one other point.  I guess -- I understand Your

13    Honor's sort of standard procedure to be if it's

14    within the scope of the direct, it's open to cross,

15    but if it's not within the scope of direct, it's not

16    open to cross-examination.  That's just your standard

17    operating procedures.

18         I will see if I can reach an accord with Mr.

19    McDonald.  What I don't want to have happen is while

20    the clock is ticking for me, the defendant is spending

21    a lot of time trying to prove its defenses.

22         One other point I want to make, of course,

23    Your Honor, is Mr. Hilliard, our validity expert, he's

24    a rebuttal witness.  And so we do have a rebuttal

25    case.  That is to call back our validity experts who

1    then have rebutted the defendant's invalidity evidence

2    which they're going to put on.  That typically takes

3    about three-quarters of a day.  So I just wanted to

4    put that out there.

5           As Mr. McDonald noted, if the Court is

6    willing to do it and the jurors are game, I'm

7    perfectly willing to go on a Saturday as well.  I just

8    wanted the Court to be aware of that.

9           THE COURT:  All right.  Well, I've got what

10   your thinking is, and I appreciate it.  I think that

11   maybe it may be smarter just to try this case in

12   January based upon what I'm hearing.  I think that

13   would probably make more sense.  And then you're not

14   constrained to the same extent that you are in

15   December.

16          This cause is fraught with all kinds of

17   problems and difficulties between the parties and

18   between counsel, and I am apprehensive about the

19   fairness, not to Judge Dohnal because I think he can

20   handle it, but the fairness to the record and the

21   parties in just walking out the door with the case not

22   being tried.

23          So you-all have the first couple weeks in

24   January available, do you?

25          MR. ROBERTSON:  This is the plaintiff,

1   Mr. Robertson, Your Honor.  Yes.

2             MR. McDONALD:  For Lawson, Mr. McDonald, Your

3   Honor.

4             It's fine with me and for my team.  I haven't

5   had a chance to talk to the witnesses about that date,

6   but we'll certainly do everything we can to make it

7   work, and I'll let you know right away if we have any

8   issues.  I'm not aware of any.

9             THE COURT:  All right.  I think what we're

10  going to do then is have the trial start on January

11  the 4th.  We'll pick the jury and go right into

12  opening statements or whatever.

13            Do you all want to use the judicial center

14  DVD?

15            MR. ROBERTSON:  This is Mr. Robertson, Your

16  Honor.

17            We discussed that.  I believe Mr. McDonald

18  agreed on that.

19            MR. McDONALD:  That's correct.

20            THE COURT:  All right.  That's fine.  That

21  takes what?  About 20 minutes?

22            MR. McDONALD:  I think so.

23            THE COURT:  All right.

24            MR. ROBERTSON:  Your Honor, this is

25  Mr. Robertson.  Can I just ask a question, sir, about

24

1   this briefing on the jury trial issue then?

2            Given that we have a trial in January, and I

3   was thinking maybe we were a little more pressed for

4   time, can I raise two points?  One, if Mr. McDonald

5   and I both agree that we think the jury trial is

6   appropriate, would the Court still request that

7   briefing?  If so, fine.  But if both parties agree

8   they want to proceed with a jury, I would think that

9   would be unnecessary.  And I don't want to spend money

10  where we don't have to.

11           If the Court still wants that briefing, I'm

12  happy to do it.  Given that we have a little bit more

13  time, I guess I would ask for a little bit more time

14  to give some thought to it and provide the Court with

15  more thoughtful briefing.  So rather than doing it

16  within a week, I would ask until September 20, and

17  then I would give Mr. McDonald as much time as he

18  would like.

19           MR. McDONALD:  I appreciate that.

20           Would you like me to respond to that, Your

21  Honor?  I think that would help.

22           THE COURT:  Yes.

23           MR. McDONALD:  I think there is a decent

24  chance, I know you think Mr. Robertson and I disagree

25  on everything, and maybe generally that's a good rule

1    of thumb, but I think there is some chance that we

2    might agree on this issue if we get a chance to talk

3    about it that might obviate the need for briefing and

4    a decision on your part if you are agreeable to that.

5           And, as Mr. Robertson said, if you want

6    briefing anyway, we'll certainly do that.

7           THE COURT:  I don't want to put you-all to

8    the needless task of briefing something, nor do I --

9    I'm not fishing to try the case and be the finder of

10   the fact.  I'm just concerned about this issue.  And

11   if we don't need to take up the time of a jury to do

12   this because there isn't anything for a jury to

13   decide, then okay.

14          I have a recollection that there are cases on

15   both sides of the issue, but I have never actually had

16   it come up, and I haven't had time to look at it.  So

17   if you-all can agree on what you want to do, then I

18   think that makes sense.  So why don't you-all see if

19   you can do that.

20          MR. ROBERTSON:  Thank you, Your Honor.  This

21   is Mr. Roberson again.

22          THE COURT:  We need to have a date for the

23   final pretrial conference, though, don't we?  What is

24   it?

25          MR. ROBERTSON:  That's what I was just going

1   to raise with Your Honor.  This is Mr. Robertson.

2        Mr. McDonald and I spoke again this morning,

3   and in the spirit of cooperation, we've been talking

4   about we've been making significant progress, and we

5   took the Court's statements yesterday about our

6   exhibits to heart, and we've been working earnestly to

7   try and reduce those.  And we also are looking back at

8   our deposition designations and other issues that

9   might arise.

10        And the suggestion I had, and Mr. McDonald

11   indicated that I think he would be in agreement, but,

12   again, I won't speak for him, is that if we did have a

13   little bit more additional time, we ultimately could

14   save the Court time in dealing with the final pretrial

15   conference.

16        It was scheduled for the 15th, perhaps going

17   over to the 16th.  I think if we pushed it out perhaps

18   a week, it would significantly shorten the time that

19   the Court would have to devote to the issues being

20   raised.

21        THE COURT:  The 15th of September?

22        MR. ROBERTSON:  September 15, yes, sir.

23        MR. McDONALD:  That's the current date, Your

24   Honor.  This is Mr. McDonald speaking.  I think

25   Mr. Robertson is proposing a week after that, and if I

1    could respond to that.

2            I generally agree with Mr. Robertson's

3    comments.  But I guess what I was envisioning -- and

4    Scott, maybe we didn't talk about this specifically --

5    is I think we could come out with a substitute

6    pretrial order that is significantly streamlined from

7    what was already filed.  I know we have many issues in

8    the existing pretrial order that are gone.

9            THE COURT:  I think that's a good idea.  So

10   what do you want to do?  Do it on the 22nd of

11   September?  Is that what you're saying?  You said a

12   week later.

13           MR. ROBERTSON:  That's fine, Your Honor.  I'd

14   like to push it out later if that's available to the

15   Court, and the Court's agreeable to that, and I don't

16   disagree with what Mr. McDonald has just suggested.

17           MR. McDONALD:  I guess, Your Honor, I was

18   contemplating not waiting a long time.  I know the

19   trial is a ways away, but also I wanted to kind of

20   strike while the iron is hot.  Maybe get a substitute

21   pretrial order filed next week and have the pretrial

22   conference the week after that.  Something like that.

23   But, obviously, whatever Your Honor wants to do is

24   fine.

25           THE COURT:  How about Monday, the 27th of

1    September?

2              MR. ROBERTSON:  That's fine.

3              MR. McDONALD:  When would you like the

4    substitute pretrial order, Your Honor?

5              THE COURT:  The 23rd.

6              MR. McDONALD:  That works fine for counsel

7    for Lawson.

8              THE COURT:  Okay.  All right, gentlemen.

9    Thank you all, ladies.  Excuse me.  I got you in

10   there.  Did you hear me?

11             MS. ALBERT:  Yes.

12             THE COURT:  I just hadn't heard you talking.

13   So I was focused wrong.

14             MS. ALBERT:  Thank you, Your Honor.

15             MR. CARR:  Your Honor, this is Dabney Carr.

16   What time on the 27th would you like to have that

17   hearing?

18             THE COURT:  I'm sorry.  I thought I said at

19   10 o'clock.  I wrote it down and I may not have said

20   it.  Thank you for reminding me.

21             MR. McDONALD:  Thank you, Your Honor.

22             MS. ALBERT:  Thank you.

23             THE COURT:  All right.  That takes care of

24   things, and we'll get things going from there.  Thank

25   you so much.  Bye-bye.

1          MR. ROBERTSON:  Bye-bye.

2          (The proceedings were adjourned at 4:06 p.m.)

3          I, Diane J. Daffron, certify that the

4    foregoing is a true and accurate transcription of my

5    stenographic notes.

6

7                    /s/                    9/20/10
            _____    _____
8               DIANE J. DAFFRON, RPR, CCR      DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25