```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                     RICHMOND DIVISION

 4

 5   --------------------------------------
                                          :
 6   ePLUS, INC.                          :    Civil Action No.
                                          :    3:09CV620
 7   vs.                                  :
                                          :
 8   LAWSON SOFTWARE, INC.                :    September 28, 2010
                                          :
 9   --------------------------------------

10

11       COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13               UNITED STATES DISTRICT JUDGE

14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   Goodwin Procter, LLP
     901 New York Avenue NW
18   Suite 900
     Washington, D.C.  20001
19                                    Volume II of II
     Craig T. Merritt, Esquire
20   Christian & Barton, LLP
     909 East Main Street
21   Suite 1200
     Richmond, Virginia  23219-3095
22   Counsel for the plaintiff

23

24               Peppy Peterson, RPR
                 Official Court Reporter
25             United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Robert A. Angle, Esquire
 3    Troutman Sanders, LLP
      Troutman Sanders Building
 4    1001 Haxall Point
      Richmond, Virginia   23219
 5
      Daniel W. McDonald, Esquire
 6    Kirstin L. Stoll-DeBell, Esquire
      William D. Schultz, Esquire
 7    Merchant & Gould, PC
      80 South Eighth Street
 8    Suite 3200
      Minneapolis, Minnesota   55402
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S

 2

 3            THE COURT:  All right, this is a continuation of the

 4    pretrial conference in ePlus, Inc., against Lawson Software,

 5    Inc., civil 3:09CV620.  Let's see.  We now are on deposition

 6    objections -- objections to deposition designations.  Is that

 7    what we're doing this morning?

 8            MR. McDONALD:  Yes.

 9            THE COURT:  And I have a notebook here in front of

10    me.  Cimino, C-i-m-i-n-o, is the name of the witness?

11            MS. STOLL-DeBELL:  Cimino.

12            THE COURT:  All right, what's up?

13            MR. STRAPP:  Your Honor, Cimino is a representative

14    of South Jersey Health Care.  That is one of Lawson's

15    customers, and ePlus took the deposition of Ms. Cimino to

16    inquire about South Jersey's use of Lawson's software that's at

17    issue in this case.

18            I'd like to just streamline this by informing Your

19    Honor that we're withdrawing several of the objections.

20    There's only a couple that --

21            THE COURT:  Which ones are you withdrawing?

22            MR. STRAPP:  The objections that are on pages 30 and

23    31 of the deposition.

24            THE COURT:  All of those withdrawn?

25            MR. STRAPP:  Yes.  We will withdraw the objection
```

1    that's on page 51.

2              THE COURT:  Wait just a minute.  Goes over to 31.  I

3    see, okay.  51 you are withdrawing?

4              MR. STRAPP:  Yes.

5              THE COURT:  All right.

6              MR. STRAPP:  We will withdraw the objection for the

7    testimony on pages 62 and 63.

8              THE COURT:  All right.

9              MR. STRAPP:  The first objection that I'd like to

10   argue and direct Your Honor's attention to is on page 148 of

11   the deposition.

12             THE COURT:  All right.

13             MR. STRAPP:  And the objection that we are posing for

14   148 is the same as for 149, so if I could briefly describe for

15   Your Honor the testimony that's at issue on pages 148 and 149.

16   Lawson's counsel inquired of Ms. Cimino about information that

17   is contained in the data stored on the Lawson Software system

18   that South Jersey is using.

19             In particular, these questions are asking Ms. Cimino

20   for her opinions about various products including diapers and

21   cleaning lotion that are contained within this Lawson Software

22   system at South Jersey.

23             Now, I don't believe that this is relevant or -- I

24   also -- we're also objecting because Ms. Cimino had no

25   knowledge about the cleaning lotion and the diapers that she

1    was asked about.  So for those two reasons, we think that this

2    testimony should not be played to the jury.

3              MR. SCHULTZ:  Your Honor, what is going on here is a

4    demonstration that's going on where the witness, Ms. Cimino, is

5    actually demonstrating the Lawson software.  The data that is

6    in the software is the data that is being asked about.

7              The testimony that is at issue on pages 148 and 149

8    deals with description.  The witness is discussing what the

9    descriptions are and has every right and knowledge with respect

10   to what descriptions are being placed in the software that the

11   witness is looking at.

12             THE COURT:  Rule 602 prohibits.  Objection sustained

13   to both of them.  154.

14             MR. STRAPP:  We will withdraw the remaining

15   objections on pages 153 and 154.

16             THE COURT:  I don't have any objections on 153 on my

17   sheet of paper.

18             MR. STRAPP:  We may have already withdrawn that, so

19   we'll withdraw the remaining objection on page 154.

20             THE COURT:  That takes care of that witness; right?

21             MR. STRAPP:  That's right.

22             THE COURT:  All right, Frank.  How do I know which

23   witness I'm talking about?

24             MS. ALBERT:  Mr. Frank is an executive vice president

25   of Lawson.  These are Lawson's objections to ePlus's

1    designations, so...

2              THE COURT:  I'm sorry, I see.  I was asking a

3    question because it made sense to me and not to you because of

4    the way I had mis-shuffled these papers.  So now I'm going to

5    Mr. Frank, or Ms. Frank, whoever it is.  What are we going to

6    do on this?

7              MS. STOLL-DeBELL:  First of all, Your Honor, we want

8    to withdraw a couple of our objections.  We're withdrawing our

9    objection to pages 227, line 16, to 228, line 13.

10             THE COURT:  All right.

11             MS. STOLL-DeBELL:  And at pages 229, line five, to

12   page 230, line four.

13             THE COURT:  All right.

14             MS. STOLL-DeBELL:  And page 230, lines nine through

15   16.

16             THE COURT:  All right.  That leaves us 30, line

17   seven.

18             MS. STOLL-DeBELL:  This is a question, Your Honor,

19   about Ariba and whether Lawson competes with Ariba.  We don't

20   see how that's relevant.

21             MS. ALBERT:  Your Honor, this particular designation

22   is a continuation of a designation that Lawson did not object

23   to where, up above, on page 29, the witness was asked to name

24   some of the competitors of Lawson --

25             THE COURT:  Line?

1          MS. ALBERT:  Page 29, lines 11 through 15.

2          THE COURT:  Let me look at the question.  "Can you

3    name some of the competitors, principal competitors that Lawson

4    views as in the marketplace competing for your business

5    sectors?"

6          Then they name SAP, Oracle, McKesson, Tyler, Munis,

7    just to name a few, and then there's spellings that go on here,

8    and we took a two-minute recess.  And then the -- we came back

9    and the question is, "How about Ariba?  Does Lawson ever

10   compete with Ariba in the ERT space?

11         To the best of my knowledge, we do on occasion."

12         MS. ALBERT:  We think it's relevant to notice since

13   later on in the deposition this witness said that Lawson

14   engages in competitive intelligence activities and tracks the

15   activities of the competitors, and this goes to some of the

16   publications that we discussed yesterday relating to the

17   litigation between ePlus and Ariba and whether or not Lawson

18   would have had notice of that and the general makeup of the

19   marketplace.

20         In addition, Lawson has a factual contention in its

21   pretrial order section where it contends that ePlus's licensees

22   directly compete with Lawson.  So they are putting the issue of

23   ePlus's licensees into contention in their factual contentions,

24   and this is directly relevant to that issue.

25         MS. STOLL-DeBELL:  First of all, I don't think that

1    Mr. Frank says anywhere that he tracks Ariba.  In fact, he

2    doesn't say that, so as to this notice issue, I don't think

3    it's relevant to that.

4         As to the pretrial order, we had a separate section

5    relating to facts we thought were relevant to the issue of an

6    injunction that were facts to be heard by you and not the jury.

7    So that's how we would respond to that issue.

8         I think Ariba has special issues here because we're

9    going to see a settlement agreement with Ariba and SAP, and

10   it's prejudicial and confusing to bring that in here.  We're

11   talking about the other competitors.  Ariba was not one that

12   the witness mentioned.

13        THE COURT:  But you don't object to including SAP,

14   and that's in the same posture as Ariba.  So logically, I'm

15   having trouble understanding the distinction as to the validity

16   of the argument.  Since you don't object to SAP, why wouldn't

17   the same factors that would permit admission of SAP also permit

18   admission of Ariba?

19        MS. STOLL-DeBELL:  Well, Your Honor, I think we

20   should have objected to SAP, so that was a mistake on our part

21   because I think the issues are the same.  So I would seek to

22   strike SAP from line 14 at page 29 as well.

23        THE COURT:  You haven't made a mistake in this case?

24        MS. ALBERT:  Pardon?

25        THE COURT:  He's laughing over there.  Look,

```
 1    everybody, in big cases like this, you make mistakes, and

 2    people do, and that's just the way things go, and you all --

 3    these kinds of issues -- you've made some other mistakes, but

 4    on these kind of issues, you've done very well getting this

 5    pretrial order ready, so I'm not going to hold anybody's feet

 6    to the fire because they made a slipup if, in fact, there's a

 7    meritorious basis for the objection.

 8              We can get around the technicalities and get to the

 9    substance.  So, anyway, you are saying it shows notice of what?

10    What does the fact that they compete with Lawson -- Lawson

11    competes with Ariba and SAP show notice of I think is what my

12    question is, Ms. Albert.

13              MS. ALBERT:  It shows that they followed activities

14    in the marketplace --

15              THE COURT:  You mean when you add it to the other

16    testimony that says they have competitive intelligence?

17              MS. ALBERT:  Correct.

18              THE COURT:  They have intelligence as to their

19    competitors.

20              MS. ALBERT:  Correct.  And various documents that

21    have been stipulated show that Lawson tracks its competitors,

22    and it has included in those documents entries relating to SAP

23    and Ariba and other competitors, so it chose the general makeup

24    of the marketplace, and the fact that they track their

25    competitors and activities of their competitors is one bit of
```

```
 1    circumstantial evidence that the jury can weigh into whether or

 2    not they had knowledge of ePlus's litigation against Ariba and

 3    SAP.

 4              THE COURT:  All right.  Anything else?

 5              MS. STOLL-DeBELL:  I just don't think this witness

 6    said anything about tracking Ariba or SAP --

 7              THE COURT:  I don't think she said that he did.  I

 8    think she was saying other evidence shows that there's

 9    competitive intelligence gathering and that this testimony

10    shows that Ariba is a competitor as to whom intelligence would

11    be gathered.  Isn't that the point you're making?

12              MS. ALBERT:  That's correct, Your Honor.

13              THE COURT:  Anything else?

14              MS. STOLL-DeBELL:  Yes.  I think the evidence about

15    tracking competitors is current.

16              THE COURT:  Is what?

17              MS. STOLL-DeBELL:  Is current.  It's happening now in

18    2010.  The notice issue goes back to '05 when the Ariba lawsuit

19    was happening or settled.

20              THE COURT:  Are you saying there's no evidence in the

21    record that shows that back in the day, that they tracked

22    competitors?  Is that back at the relevant time period?

23              MS. STOLL-DeBELL:  No, I'm saying tracked Ariba and

24    SAP.  I don't think there's any evidence in the record that

25    they were tracking Ariba and SAP at the relevant time frame
```

1    which would have been, for Ariba 2005, and SAP I think the end

2    of '06.

3            MS. ALBERT:  We disagree with the accuracy of that

4    statement.

5            THE COURT:  On what basis?

6            MS. ALBERT:  I believe there are reports that were

7    produced by Lawson that we discussed yesterday in court that

8    are competitive intelligence reports that show Lawson --

9            THE COURT:  Did they predate those dates?

10           MS. ALBERT:  They predate the current date.

11           THE COURT:  What's the two dates?  2005 and what did

12   you say?

13           MR. CARR:  2006.

14           THE COURT:  2005, 2007.  The question is, do you have

15   evidence that they were doing competitive intelligence

16   gathering before then?

17           MR. ROBERTSON:  Yes, Your Honor.  I took the

18   deposition of Mr. Lohkamp.  Mr. Lohkamp does competitive

19   intelligence and subscribes to a lot of those things, and he

20   says they've been doing it for a long, long time.  Of course

21   they have.  They're in the marketplace.  They need to know --

22           THE COURT:  If they didn't, they'd be one of the few

23   industries in the country that don't, but some of them don't.

24   Okay.  Your point is there's nothing specific about Ariba.

25   This looks to me like it's circumstantial evidence that would

1    permit an inference that they tracked Ariba.  So the objection

2    is overruled as to 30:7 through 30:10.  Next one is 44:2?  Is

3    that the next one?

4              MS. STOLL-DeBELL:  I don't have that.

5              MS. ALBERT:  I have the next one as page 49, lines

6    nine through 20.

7              THE COURT:  What are these things on this -- it says,

8    joint submission of defendant Lawson's objections to

9    plaintiff's designations, et cetera, et cetera, and this is

10   respecting Frank, and the next entry I have is 44:2, and then

11   48:7 is the next entry, and it goes to 49:20, and then the next

12   entry is 50.  Do I have the right document with me?  Am I

13   ruling on the right document?

14             MR. ROBERTSON:  Do you have objections in the margins

15   on your document, Your Honor?

16             THE COURT:  I'm looking at the sheet that you put in

17   front of each of the designations.  Now, let me go to that page

18   and see.  I have the 30:7.

19             MR. ROBERTSON:  What you might have, Your Honor, is

20   you might have the objections in one excerpt of the deposition

21   and then the full designated deposition that's color-coded with

22   the various parties' designations.

23             THE COURT:  I have in front of me the deposition of

24   Frank, and there is an objection noted at 44:2 through 45:14.

25             MS. ALBERT:  I believe that Lawson withdrew that

1    objection.

2             THE COURT:  When?  I mean if they did, it's not on my

3    sheet, and on the printed page there's an objection that

4    begins, it looks to me like it may just go through from line

5    two on 44 through line 11, and the objection is 602.  So has

6    that been withdrawn?

7             MS. STOLL-DeBELL:  I think we withdrew it, Your

8    Honor.

9             THE COURT:  Okay, objection withdrawn.

10            MR. ROBERTSON:  In fact, Your Honor, this is about

11    Lawson filing marketing intelligence --

12            THE COURT:  If it's withdrawn, it doesn't make any

13    difference.  The next one I have is 48:7 through 49:20, but

14    that doesn't match up with the objections that you all have in

15    the marked portion of the depositions actually.

16            MS. STOLL-DeBELL:  So, Your Honor, I'm looking at the

17    highlighted portion, and our objection does relate to page 49,

18    lines nine through 20.

19            THE COURT:  I have -- here, my copy has -- look at

20    the top, 47, and it has lack of summary.  That's the objection.

21            MS. STOLL-DeBELL:  Let me explain that, Your Honor.

22    We had objections to their summaries but agreed to withdraw

23    those based upon the understanding those weren't going to go to

24    the jury.

25            THE COURT:  No, they don't go to the jury.

1           MS. STOLL-DeBELL:  They were just for Your Honor's

2   use.  They won't?  Then we withdraw all of those.

3           THE COURT:  So this is withdrawn.  What I'm using to

4   make my rulings off of is the cover sheets you all had, and I'm

5   annotating those cover sheets, and that's guiding me where I go

6   in the deposition to make a ruling.

7           Now, what I'm seeing is the marked portion of the

8   transcript does not correspond with the designations listed on

9   the sheet of paper that you gave me in the Frank deposition.

10  Now, the other deposition, it was okay, so tell me this:  Do

11  you have an objection to 48:7, line seven, through page 48,

12  line 20?  Is that withdrawn or not?

13          MS. STOLL-DeBELL:  It's withdrawn.

14          THE COURT:  Okay, the objection is withdrawn.

15          MS. STOLL-DeBELL:  I'm looking at maybe an updated

16  version.

17          THE COURT:  Come look at this.  You all come right

18  here and tell me if I've got the right one.  Here's the book,

19  and you can look at the book I have, and you can see that

20  there's no correlation between that list and the book, so you

21  all tell me what I've got.  Have I got the wrong thing?

22          MS. STOLL-DeBELL:  Maybe we can work together here.

23          THE COURT:  Sure.  That's fine.  I'm not criticizing.

24  I just want to make sure I get the right thing.

25          MS. STOLL-DeBELL:  We did withdraw quite a few

1    objections.

2         MS. ALBERT:  I think part of the issue is there's a

3    more complete portion that's been designated, but they only

4    object to a few questions within the designation.

5         THE COURT:  So what should I be guided by?

6         MS. ALBERT:  I think the most accurate is the

7    highlighted portion with the objections in the...

8

9         (Discussion off the record.)

10

11        MS. ALBERT:  I think we need to replace that with --

12   we had a lot of meet-and-confers last week.

13        THE COURT:  That's fine.  Look, that's what it's all

14   about, but there's no sense in doing something that's not

15   consistent with what you all have done, because it's wasting

16   your time and mine.

17

18        (Discussion off the record.)

19

20        THE COURT:  Okay, so you all are ahead of the game

21   now.  Let's go back now.  So now we've got Mr. Frank's, and I

22   overruled the objection to 30:7-30:10; right?

23        MS. STOLL-DeBELL:  Yes.

24        THE COURT:  Now the next thing that we have appears

25   where?

1          MS. STOLL-DeBELL:  Page 49, Your Honor.  It actually

2     starts -- the designated testimony starts at 48, but our

3     objection is to the question that starts on page 49, line nine.

4     So it's the second row on this list of objections.  It starts

5     at page 48:7.

6          THE COURT:  That's what I'm trying to find and read.

7     I don't have a 48 here.  I go from 30 to 32 and then pick up

8     with 49.

9          MR. ROBERTSON:  That's correct.

10         THE COURT:  Is that what I'm supposed to have?

11         MS. STOLL-DeBELL:  I think that's fine, Your Honor.

12         THE COURT:  Then I'm looking at the question that

13    starts on line nine, and like the website, et cetera, is that

14    where I am?

15         MS. STOLL-DeBELL:  Yes.

16         THE COURT:  Let's see what that is.  That's 49, nine

17    through 20.

18         MS. STOLL-DeBELL:  Right.  And so I think this

19    objection is related to several of our -- maybe all of the rest

20    of our objections to this deposition, and they are asking him

21    about legal review, whether they go from legal review like the

22    website and there are other things, RFPs, and we think this is

23    of minimal relevance and is prejudicial.

24         MS. ALBERT:  Can I respond, Your Honor?

25         THE COURT:  I'm reading.  Okay.  Go ahead.

1          MS. ALBERT:  These relate to the request for proposal

2    documents that were discussed at length yesterday.  These are

3    detailed submissions to prospective customers that Lawson makes

4    in order to obtain the award of a contract, and the sections of

5    these RFP responses contain functional descriptions and

6    admissions as to the functionality of the Lawson products at

7    issue here.

8          THE COURT:  And those are admissible.

9          MS. ALBERT:  This testimony goes to the reliability

10   of those documents, and we think it's important that the jury

11   understand and appreciate that these documents go through a

12   thorough vetting process, they are vetted by the sales

13   department, they are vetted by the engineers, they are vetted

14   by the legal department.

15         THE COURT:  Does Lawson contend that their documents

16   are unreliable?

17         MS. ALBERT:  In Dr. Weaver's deposition, some

18   suggestions were made to Dr. Weaver that the RFP responses were

19   mere marketing puffery, and we want to be able to rebut that

20   contention --

21         THE COURT:  You mean in examining Dr. Weaver, they

22   asked him if it was puffery?

23         MS. ALBERT:  They asked him if -- they suggested that

24   he shouldn't base his opinions related to the functionality of

25   Lawson's products on RFP responses because they are pure

1    marketing puffery.  If I can direct you to the next

2    designation, it relates to the same issue, and actually the

3    designated testimony, if you just look up, the question was

4    asked, "Is that with respect to every response to an RFP that

5    goes to a customer, it goes through legal review first?

6              Answer:  That is my understanding.

7              Question:  And, again, that's to insure that nothing

8    misleading is being presented to the customer in describing the

9    features and functionality of the software products being

10   offered?

11             Answer:  Among other reasons, yes."

12             MS. STOLL-DeBELL:  Your Honor, I don't think we're

13   trying to distance ourselves from what we say in the RFPs.  The

14   question of Dr. Weaver that I asked him about that related to

15   something Mr. Hilliard had said in his deposition, and I was

16   asking Dr. Weaver about that.

17             THE COURT:  Well, here's what I think.  The fact that

18   it goes through legal review I'm not sure is relevant to the

19   substantive technical accuracy of it.  How does a lawyer know

20   about all that stuff?  But, on the other hand, the fact that it

21   goes through a review to make sure that functionality and

22   features of the software are being offered are accurate is

23   certainly, it seems to me, relevant.

24             These questions sort of link the two.  Apparently

25   Lawson has them reviewed by a lawyer to insure that nothing

1    misleading is being presented to the customer in describing the

2    features and functionality of the software products being

3    offered, and if Lawson does that, and that's what this witness

4    says, that's somewhat different than I would expect, but that's

5    the course the company has chosen.

6          So it would seem to me that Lawson's decision-making

7    process has made it relevant insofar as confirming the accuracy

8    of the features and functionality.  So the fact that it's a

9    legal review doesn't, one way or the other, cause it to be

10   brought into the reach of 403 as best I can tell if it's

11   otherwise relevant, and it is.

12         MS. STOLL-DeBELL:  Your Honor, I think the legal

13   review that is done by Lawson is for issues to make sure like

14   they don't make an advertising guarantee or something.  They

15   don't -- that kind of thing and not --

16         THE COURT:  That isn't what the witness said, Ms.

17   Stoll-DeBell.  Look at what the witness says.  Among other

18   things, and what are the other things?  Make sure we're

19   presenting our product in the most positive form, communication

20   people can understand, et cetera, but he did say they are

21   reviewing it for functionality and features, the accuracy

22   thereof, so I think the objection is overruled.

23         MS. STOLL-DeBELL:  So if that's the case, Your Honor,

24   I think that takes care of a lot of the rest of our objections.

25   We can go through them quickly.  I think -- so that action

```
 1    takes care of, I think, 50, lines 12 through 20.

 2              THE COURT:  Okay.

 3              MS. STOLL-DeBELL:  As well as 53, lines 11 through

 4    13.

 5              THE COURT:  Okay.

 6              MS. STOLL-DeBELL:  And probably our objection

 7    starting at page 147.

 8              THE COURT:  Okay.

 9              MS. STOLL-DeBELL:  I think that's it.

10              THE COURT:  Now we go to 227; right?  We go to 227.

11              MS. STOLL-DeBELL:  That I withdrew, Your Honor.

12              THE COURT:  The objection is withdrawn?

13              MS. STOLL-DeBELL:  Yes.

14              THE COURT:  Okay.  229?

15              MS. STOLL-DeBELL:  Withdrawn.

16              THE COURT:  And the objection is withdrawn here on

17    230?

18              MS. STOLL-DeBELL:  Yes.

19              THE COURT:  That takes care of Frank; right?

20              MS. STOLL-DeBELL:  Yes.

21              THE COURT:  All right.  Now, we have Robert Irwin.

22              MR. STRAPP:  Your Honor, we can make this one very

23    quick.  ePlus withdraws the objections to the testimony that's

24    designated by Lawson, all of it with respect to Mr. Irwin.

25              THE COURT:  That's everything on this page then;
```

1   right?

2            MR. STRAPP:  Correct.

3            THE COURT:  All right.  Next witness is Manuel

4   Matias.

5            MR. STRAPP:  Your Honor, ePlus also withdraws all of

6   its objections to Mr. Matias's deposition.

7            THE COURT:  I don't have but one here now.

8            MR. SCHULTZ:  That's correct.  There was one.

9            MR. STRAPP:  That's right.  All of these objections

10  have been withdrawn.

11           THE COURT:  All of the preceding ones and the one

12  left for me to rule upon has now been withdrawn.

13           MR. STRAPP:  That's correct.

14           THE COURT:  These are things that are going to then

15  become a part of the final pretrial order, and there will be a

16  record of what's been done.  I just want to make sure we're

17  talking about the same thing.  Oh, my goodness, we have a big

18  boy here.  McEneny?

19           MS. STOLL-DeBELL:  Your Honor, I prefer to call her

20  Fielder, Ms. Fielder.  That's her maiden name, but it's

21  McEneny, I think, is her married name.

22           THE COURT:  Did you unilaterally get her separated?

23           MS. STOLL-DeBELL:  I felt like as someone with a

24  hyphenated name, it was okay for me to make that decision.

25           THE COURT:  I'll tell you one thing -- what if I made

1   it for you?  You think that would be okay for me to do?

2            MS. STOLL-DeBELL:  I would be okay if you called me

3   Stoll.  My husband probably would not.

4            THE COURT:  I won't touch that one.  So anyway,

5   the -- for the record, it's McEneny, but it's the lady you've

6   been calling Ms. Fielder throughout the other document

7   objections, same person; right?

8            MS. STOLL-DeBELL:  Yes, Your Honor.

9            THE COURT:  Okay.

10            MR. ROBERTSON:  Yes, Your Honor, I'm going to be

11   handling the objections for Ms. Fielder.  Let me just

12   preview --

13            THE COURT:  You're not starting off well.

14            MR. ROBERTSON:  I'm going to be withdrawing a

15   number --

16            THE COURT:  That's good.

17            MR. ROBERTSON:  My main objections are going to be

18   the fact she was asked a number of questions that called for

19   expert testimony.  Ms. Fielder has a marketing background.  She

20   is the person who was part of the husband-and-wife team that

21   ran the PO Writer company and had involved some of the prior

22   art that we were talking about yesterday that was partial

23   documents, and so I'm going to be going through those sections

24   and identify those documents.

25            Also, many of the questions infected with claim

1    construction issues that the Court ruled on even those Ms.

2    McEneny, or, excuse me, Ms. Fielder is not a technical person,

3    did not know what claims were at issue, and did not know or

4    understand or even read or was aware of the Court's claim

5    construction, so when they are asking questions that are

6    infected with these claim terms, we think that's improper

7    expert testimony and that the witness is not competent to

8    testify.

9              So those are going to be the main objections we have

10   today, but let's get started on a positive foot, and at page

11   74, line nine, through 75, line nine, we withdraw the

12   objection.

13             MS. STOLL-DeBELL:  Actually, can we go to page 111?

14   I was going to withdraw the testimony there that was objected

15   to.

16             THE COURT:  Testimony withdrawn.

17             MR. ROBERTSON:  That's good.

18             THE COURT:  On 111, line eight, to 112, line six.

19             MS. STOLL-DeBELL:  We had withdrawn the exhibit that

20   that relates to.

21             THE COURT:  All right.  That brings us to 113:11.

22             MR. ROBERTSON:  I might ask Ms. Stoll-DeBell, there

23   are a few other exhibits that were either withdrawn yesterday

24   or were excluded, and I'm not sure I have a complete list of

25   those, so if you're aware of any others as we go through this,

1    I'd appreciate if you'd let me know.  I'm going to withdraw the

2    objections on page 113:12 through page 115:21.

3           The objections on page 117 starting at line two, not

4    highlighted, but through 118, line 25 have to do with the

5    inventory control module.  Our objection is to relevancy.  I

6    don't think it's relevant to the issues in the case if Dr.

7    Shamos doesn't opine on it.

8           MS. STOLL-DeBELL:  He does, and I can bring up his

9    report again.  You guys should have the copy of it yesterday,

10   but he cites this cell K-44, K-144.

11          THE COURT:  Cell K?

12          MR. ROBERTSON:  Just show me, and if that's the case,

13   I'll withdraw the objection.

14          THE COURT:  Go.

15          MS. ALBERT:  What was the citation?

16          MS. STOLL-DeBELL:  I have cell K-144.

17          THE COURT:  How are you saying that, cell K?

18          MS. STOLL-DeBELL:  Your Honor, Dr. Shamos's report

19   was in an Excel spreadsheet, and so it's --

20          THE COURT:  Oh, you're saying Excel K-144.

21          MS. STOLL-DeBELL:  I'm saying cell, which is a little

22   box in the Excel program.  So K is the column and 144 is the

23   row.  So we printed it, but it was really designed to be looked

24   at online, and we produced it that way, too.

25          MS. ALBERT:  We were not provided with that excerpt,

```
 1   so we have no way to determine.

 2              MS. STOLL-DeBELL:  I can show you.

 3              MR. ROBERTSON:  You might want to look for the data

 4   interface.

 5              THE COURT:  Did you say you don't have the excerpt of

 6   the testimony or you don't have the excerpt of the report?

 7              MS. ALBERT:  We don't have the excerpt of Dr.

 8   Shamos's report that was referenced as disclosing that

 9   document.

10              THE COURT:  Okay.

11              MS. STOLL-DeBELL:  When I printed it, I --

12

13              (Discussion off the record.)

14

15              MS. STOLL-DeBELL:  Before we close out on that,

16   Scott, do you agree that the inventory control is cited?

17              MR. ROBERTSON:  I'll withdraw the objections to

18   119 -- excuse me, 117, line two.

19              THE COURT:  To 118, line 25.

20              MR. ROBERTSON:  Yes.

21              THE COURT:  Next one is 119, line eight, to 120, line

22   four.

23              MR. ROBERTSON:  That's also about the inventory

24   control module, so I'll withdraw that, Your Honor.

25              THE COURT:  Next one is 121, line two, 121, line 15.
```

```
 1          MR. ROBERTSON:  I'll withdraw the objection to that,
 2    Your Honor.
 3          THE COURT:  Next one, 123:8 through 124:25.
 4          MR. ROBERTSON:  This has to do with the data
 5    interface utility, and my notes reflect that Dr. Shamos doesn't
 6    rely on it.  Whether the underlying document wasn't objected
 7    to, the fact is, it doesn't have any tendency to prove a fact
 8    that is in dispute, makes it not relevant for purposes of any
 9    invalidity analysis that Dr. Shamos might be offering.  I
10    understand he cited it, but -- it was considered, but he has no
11    opinions with regard to it.
12          THE COURT:  If he has no opinions with respect to it,
13    then I don't see how it's relevant.
14          MS. STOLL-DeBELL:  Your Honor, I think it's rebuttal
15    testimony because this database data interface utility is a
16    mechanism to automatically load catalog data into PO Writer,
17    very similar to Lawson's PO-536 that ePlus is relying on to say
18    Lawson's system has catalogs and Lawson infringes.  And so this
19    testimony and that document are rebuttal evidence.
20          It was cited in our second supplemental invalidity
21    contentions and was listed in Dr. Shamos's report.  Albeit he
22    didn't put a cite to that specific document in his claim chart,
23    I do think it's rebuttal testimony to their infringement
24    position.
25          THE COURT:  How does it come in if he didn't testify
```

1    to it?

2              MS. STOLL-DeBELL:  As rebuttal.

3              THE COURT:  This is Ms. Fielder's testimony, but is

4    this part of the expert issue?

5              MR. ROBERTSON:  It's Ms. Fielder's testimony, Your

6    Honor, and the issue is not relevant to anything in the case.

7    That's our objection, because Dr. Shamos doesn't take it and

8    use it in any way to try and prove any issue that is in

9    dispute.

10             THE COURT:  But she says now it's rebuttal to

11   something you are offering.  What does it rebut?

12             MS. STOLL-DeBELL:  Your Honor, it's coming in through

13   Ms. Fielder-McEneny.

14             THE COURT:  What does it rebut?

15             MS. STOLL-DeBELL:  It rebuts their infringement

16   position that an automatic utility that is used to pull catalog

17   data into a program is an infringement and is covered by their

18   claim.

19             THE COURT:  Who testifies to that?  Who testifies to

20   their position that she's rebutting; Weaver?

21             MS. STOLL-DeBELL:  Yes.

22             THE COURT:  So you are offering this testimony in, as

23   rebuttal to Weaver.

24             MS. STOLL-DeBELL:  Yes, yes.  I'm sure there are

25   others who will, too, but for sure Dr. Weaver.

1          THE COURT:  All right.

2          MS. STOLL-DeBELL:  And it's not expert testimony.

3   She's simply saying what her product did and what this manual

4   describes.

5          MR. ROBERTSON:  Dr. Weaver has no opinions, Your

6   Honor, with respect to PO Writer, and Dr. Weaver did an

7   analysis of the Lawson accused product.

8          THE COURT:  He gave no opinions respecting PO Writer?

9   Is that what you said?

10         MR. ROBERTSON:  Absolutely, none.

11         THE COURT:  Then she can't be rebutting it.

12         MS. STOLL-DeBELL:  Your Honor, he is saying, his

13  opinion is these claims, their claims, cover an automatic

14  utility that downloads catalog data, and this comes back and

15  says, well, if that's true, PO Writer did that, too, and your

16  patent is invalid, so if the claims are broad enough to cover

17  that, PO Writer had it, too, and they are invalid.

18         THE COURT:  And you are offering that testimony by

19  the person who owned the product at the time?

20         MS. STOLL-DeBELL:  Yes.

21         THE COURT:  That you say is prior art.

22         MS. STOLL-DeBELL:  Yes.

23         THE COURT:  Okay.  Why isn't that expert testimony?

24         MS. STOLL-DeBELL:  It's not because she's not looking

25  at the claims.  She's just saying PO Writer did this.  It's a

1    fact.  It's not an opinion, it's a fact.

2              THE COURT:  Sounds to me like she's right.

3              MR. ROBERTSON:  No one makes any comparisons in the

4    claim, Your Honor.  She can't do it --

5              THE COURT:  She's not making it.  That's the point

6    she's making, is you've got somebody who says generally X, Y,

7    and Z, and she's saying, Product Writer -- what is it, PO

8    Writer, did X, Y, and Z, therefore -- and that's probative to

9    show that that's prior art.

10             Now, if that's right and this woman knows what she's

11   talking about because she is the owner of the company, why

12   can't that testimony come in even if your expert doesn't deal

13   with it, because you are offering a theory, and she's rebutting

14   the theory?  She's offering evidence in response thereto.

15             MR. ROBERTSON:  Well, she is not, Your Honor, because

16   Dr. Weaver is saying the claim says A, B, C, D, E, F, and G,

17   and they're saying this might be related to D, and that's it.

18   So, you know, rebutting or saying that something has one

19   functionality doesn't at all invalidate a claim.  You have to

20   look at the claim as a whole.

21             Edison made a light bulb and had an improved

22   filament, but there were lots of light bulbs before it.  It

23   doesn't mean because somebody had a glass bulb, that is prior

24   art to Edison's light bulb.

25             THE COURT:  Doesn't prior art have to address -- in

1    order for it to be invalidating prior art, doesn't it have to

2    address every element of the claim?  Isn't that the rule?

3              MS. STOLL-DeBELL:  Well, it depends on what you're

4    talking about.  If you're talking about 102, that's right.

5              THE COURT:  What's that now?

6              MS. STOLL-DeBELL:  When you are talking about prior

7    art under 102 anticipation, yes.  We are using PO Writer also

8    for obviousness.  We need to get the evidence in, and then

9    we'll connect the dots.  We've heard all these different --

10             THE COURT:  Wait a minute.  But, see, you were saying

11   it's coming in as prior art, invalidating prior art, and it

12   doesn't come in -- maybe I'm wrong on the rule.  I haven't

13   refreshed my memory on it, but isn't the rule that if it's

14   invalidating prior art to a claim, it has to show -- it has to

15   contain every element of the claim; is that right or wrong?

16             MS. STOLL-DeBELL:  That's right if you're using it

17   for prior art under section 102.

18             THE COURT:  I know, but that's what you just said.

19   Now you are shifting ground to nonobviousness, and that's a

20   different argument, and so I don't think that given your

21   concession that it doesn't cover everything in the claim --

22             MS. STOLL-DeBELL:  It does, Your Honor, and Dr.

23   Shamos will talk about it.  We've got this big, huge claim

24   chart where he talks about all the other elements, and we have

25   Ms. Fielder talking about some of the other elements, too, so

1    we are going to put on evidence that it has everything, and

2    we're going to put on evidence that it also is prior art

3    referenced under obviousness.  We're doing both.

4             THE COURT:  We're just staying with the one now.

5             MS. STOLL-DeBELL:  That's because this particular

6    testimony we are talking about relates to one element, but

7    we're going to have a whole bunch of other evidence that

8    relates to PO Writer and the other elements, but right now

9    we're talking about one element, and this testimony and that

10   document relates to that one element that's in rebuttal to what

11   they're going to say.

12            We should be able to put on the evidence of all the

13   different things and connect it up, and, yes, we are talking

14   about one element here, but we have evidence of the other

15   elements from Mrs. Fielder, from Dr. Shamos, from all these PO

16   Writer manuals, many of which are already stipulated and into

17   evidence already.

18            MR. ROBERTSON:  We started this conversation with Ms.

19   Stoll-DeBell conceding that Dr. Shamos doesn't have any opinion

20   on this data interface utility, so there's nobody there to

21   connect these dots.  This is going to be thrown out there, and

22   Dr. Shamos can't patch it all together and try and re-create

23   the invention.

24            THE COURT:  Who is going to testify that it's -- if

25   you add -- you are saying you've got someone testifying to

1    different pieces of the elements, the claim elements.  Who is

2    going to tie it all together and say, therefore, this is prior

3    art?  Somebody has to do that or all you have is a lot of

4    untethered evidence that doesn't mean anything that's relevant

5    to the case on the issue of prior art.  So who is going to tie

6    it together?

7          MS. STOLL-DeBELL:  Let me first say Dr. Shamos is

8    going to tie it together, but he doesn't need to get into this

9    because it's rebuttal.  He's going to say PO Writer has all of

10   the elements of these claims, and this is my testimony and it's

11   in his expert report.

12         THE COURT:  Wait a minute.  What do you mean,

13   rebuttal?  The way this goes is this:  They start off, you have

14   a case, and then they have rebuttal.  That's it.  They go

15   first, you go second, they go last, and that's it.  So it's got

16   to be part of your response case, or it's nothing.

17         The way that you all did rebuttal reports, that has

18   relevance in terms of the discovery process, but it doesn't

19   circumscribe the trial.  So is Shamos going to tie it together?

20   What you've told me is this, unless I misunderstand it:  As to

21   the existence as to whether PO Writer is prior art, you have

22   Shamos or somebody, you have somebody testifying to each --

23   that PO Writer covers each of the individual claims, but you

24   don't -- I mean elements of the claim, but you don't have one

25   somebody saying that that person responds -- that that art

1    relates to all the elements of the claim.

2              So you have to aggregate those together.  If you're

3    going to do that, you then have to have somebody to come in,

4    extract that information and say, ergo, looking at this, this,

5    this, and this, I say this is prior art and it's invalidated.

6    If you can't do that, then there's no relevance to any of this

7    testimony as to prior art.  So let's get that issue straight

8    right now.

9              Have you got somebody who is going to pull it all

10   together and say, as to A, B, C, D, E, F, and G, that is

11   invalidating prior art?  If you don't, forget it.  Let's move

12   on, and then I'll consider your obviousness issue.

13             MS. STOLL-DeBELL:  Your Honor, I think part of my

14   confusion here is we're talking about infringement which is

15   their burden of proof, and then in our case, we're going to

16   come back and we're going to be addressing their infringement

17   case, but then we have the burden of proof on invalidity;

18   right?

19             THE COURT:  You are not getting another go at the

20   apple.  You're going.

21             MS. STOLL-DeBELL:  Right, so in our case, we are

22   addressing their infringement case and putting on our

23   invalidity case.  And Shamos will get up, and he will tie all

24   the elements together, and he does have an opinion that PO

25   Writer anticipates and renders obvious --

 1             THE COURT:  I'm not talking about that.  I'm talking

 2    about prior art now.  We will deal with the issue of

 3    obviousness in another intellectual exercise that will follow

 4    this one.  Right now I'm dealing with the issue about whether

 5    it's prior art.  I don't think it is, because you haven't got

 6    Mr. Shamos or anybody to pull it together and say that it is in

 7    the sense that it's 102 invalidating prior art.

 8             MS. STOLL-DeBELL:  He does.  Maybe this will make it

 9    easier.  This testimony is also relevant to --

10             THE COURT:  I don't want also.  I'll deal with also

11    later.

12             MS. STOLL-DeBELL:  Okay.

13             THE COURT:  Listen, the way I deal with these things

14    is to take the issue served and deal with the issue served.  If

15    there are two bases for admissibility of the evidence and one

16    of them is out, then the record says it's out.  And if it's in

17    for another purpose, it can come in for the other purpose, but

18    the discussion and ruling have to be separate.

19             Now, I think you lose on the issue of whether it's

20    prior art, 102 prior art, but tell me why that's not true, and

21    the reason you lose is because you've got nobody who's going to

22    pull it together and say that.

23             MS. STOLL-DeBELL:  Dr. Shamos will, Your Honor, and

24    he says so in his --

25             THE COURT:  Where does he say that?

 1             MS. STOLL-DeBELL:  Oh, you're talking about -- he's

 2    not going to say this particular testimony makes it prior art.

 3    He has other reasons why he says --

 4             THE COURT:  Then this isn't relevant.

 5             MS. STOLL-DeBELL:  For that issue, right.  Okay, I'm

 6    sorry.

 7             THE COURT:  All right, now, so this can't come in for

 8    Shamos's prior art issue -- I mean to show that this is

 9    probative of meeting a particular element that will be added

10    together by somebody to make it prior art.  Now, you say that

11    the same testimony is relevant to something else.  What is the

12    something else?

13             MS. STOLL-DeBELL:  I think there are two things.

14             THE COURT:  Let's take one at a time.

15             MS. STOLL-DeBELL:  The second thing is it's relevant

16    to rebut and impeach Dr. Weaver's testimony that this automatic

17    utility is something that's novel and new and infringed by the

18    claims.  So he's says, Dr. Weaver says that -- I think in his

19    report he says Lawson's PO 536 utility, this automatic catalog

20    load utility, was put into the infringing product and is one of

21    the things that triggered infringement in this case.

22             The versions before version 8.0.3 did not have this

23    automatic catalogue load utility called PO 536, and that is one

24    of his triggering events that caused him to give his opinion

25    that there is infringement in this case.  This comes back and

1    says in 1993, before the priority date of the patents, another

2    company was doing the same thing.

3              MR. ROBERTSON:  That is an invalidity argument, Your

4    Honor.  That's what they're saying.  Dr. Weaver doesn't say

5    anything about PO Writer, he doesn't say anything about this

6    particular utility that was not in Dr. Shamos's report.  This

7    is a backdoor effort to say when Dr. Weaver says one element is

8    present in the Lawson device, when you have to say all the

9    elements are present, he has to say, A, B, C, D, E, F, and G,

10   they want to come back and say, D, again, is prior art.

11             So this is just the same argument dressed up as a

12   non-infringement argument in rebuttal, and no one ties it

13   together, nobody from Shamos, nobody from Ms. McEneny who

14   couldn't do it anyway because she's not an expert.

15             MS. STOLL-DeBELL:  Your Honor, it is --

16             THE COURT:  She can't testify as an expert in the

17   case.  You agree with that?

18             MS. STOLL-DeBELL:  Yes.  But I don't think this is

19   expert testimony.  This is putting a fact in the record --

20             THE COURT:  That some other expert is going to

21   address.

22             MS. STOLL-DeBELL:  Yes.

23             THE COURT:  What expert is going to address it, and

24   what is that expert going to say?

25             MS. STOLL-DeBELL:  Well, I think we'll use it to

1    cross-examine Dr. Weaver and Mr. Hilliard who is their

2    invalidity expert --

3              THE COURT:  If you're using it to cross-examine them,

4    then you don't -- how can you use somebody's deposition

5    testimony who is not the witness testifying to cross-examine

6    another witness?  I'm not familiar with that technique.  You

7    can't get on the stand and say, Ms. Smith said such and such.

8    That's it.  You can't impeach somebody that way.  That

9    doesn't -- you can't do that, so how else are you going to do

10   it?

11             MS. STOLL-DeBELL:  We can impeach him with the fact

12   that -- I mean, this is a fact.  There is this manual that is

13   in evidence.  There is this testimony that says PO Writer has

14   this functionality, and we can cross-examine both of them based

15   upon that.

16             THE COURT:  Yes, but that's different than the

17   deposition testimony.

18             MS. STOLL-DeBELL:  Well, we're using the deposition

19   testimony to establish the fact that we will use to

20   cross-examine both of their experts.

21             MR. ROBERTSON:  Dr. Weaver has never seen this

22   testimony.  Dr. Weaver's never seen this particular exhibit.

23   Dr. Weaver doesn't rely on it.  Dr. Hilliard doesn't rely on it

24   because he doesn't have to rebut Dr. Shamos on it because Dr.

25   Shamos didn't have an opinion on it.

1          So at this point, Your Honor, I guess if that's what
2     it's being offered for, we've also pressed a Rule 403 objection
3     because this is going to be unduly confusing for the jury, and
4     it's going to waste time.
5          THE COURT:  Anything else on that topic?
6          MS. STOLL-DeBELL:  Yeah, I think it's relevant --
7          THE COURT:  No, on that topic.
8          MS. STOLL-DeBELL:  I don't think so, Your Honor.
9          THE COURT:  All right.  Objection sustained on 403
10    grounds.  This discussion conclusively demonstrates that it
11    will create confusion with the jury and also lead to a lot of
12    additional testimony that ultimately will be for the purpose of
13    rebutting nothing that makes any difference.  So that's delay
14    and confusion, 403.
15         MR. ROBERTSON:  Your Honor, based on that, there's no
16    foundation at all for that exhibit, no relevance to it, so we
17    would ask that that exhibit --
18         THE COURT:  I'm not talking about exhibits.  I'm
19    talking about testimony now.  We'll deal with exhibits later if
20    there's some problem.  All right, now, you have another ground
21    for the admission of this testimony, 123:8 through 124:25; is
22    that right?  What is the other ground?  I don't think you have
23    anymore.
24         MS. STOLL-DeBELL:  Yeah.
25         THE COURT:  All right.  What about the exhibit?  What

1    are you talking about?

2              MR. ROBERTSON:  Well, the exhibit that she's

3    referencing, Your Honor, in this --

4              THE COURT:  What exhibit is it?

5              MR. ROBERTSON:  It's PX-129, sir.

6              THE COURT:  So what about it?

7              MR. ROBERTSON:  Since there's no testimony at all

8    about it from Ms. Fielder any longer, since there's no

9    testimony at all of Dr. Shamos ever in the case, since no one

10   can proffer it, it has no relevance in the case, and,

11   therefore, should be excluded.

12             MS. STOLL-DeBELL:  If you don't have Ms. Fielder

13   talking about it, we don't have --

14             THE COURT:  Defense Exhibit 129 is also objection

15   sustained.  125:4 to 21.

16             MR. ROBERTSON:  This is the same argument --

17             THE COURT:  Wait a minute.  I have to get there.

18             MR. ROBERTSON:  This references the EDI interface

19   module manual, and it's not relevant testimony because Dr.

20   Shamos does not opine on it.  He has no opinions, doesn't say

21   it anticipates, doesn't have any obviousness opinions.  Ms.

22   Fielder, obviously, is not an expert as you've just

23   acknowledged.

24             MS. STOLL-DeBELL:  Your Honor, I think it's the same

25   arguments that we just made.

1           THE COURT:  Same ruling.

2           MR. ROBERTSON:  We'd also then involve Defendant's

3   Exhibit 130, Your Honor, which is being referenced here.

4           THE COURT:  Do you agree?

5           MS. STOLL-DeBELL:  Unfortunately, yes, Your Honor.

6           THE COURT:  That's 126:1?  What did you say, it

7   referenced what?

8           MR. ROBERTSON:  Yes, sir.  The exhibit being

9   discussed --

10          THE COURT:  In DX-130.

11          MR. ROBERTSON:  Yes, sir.

12          THE COURT:  What about the next one, 126:1 through

13  24?

14          MR. ROBERTSON:  Yes, Your Honor, this is -- you'll

15  recall from yesterday, the exhibit being discussed here is

16  DX-122.

17          THE COURT:  This is one of the ones there's further

18  briefing on?

19          MR. ROBERTSON:  I think -- my understanding was Your

20  Honor wanted to see the deposition context in which the exhibit

21  was discussed.  This is one of the partial documents that only

22  had one chapter.  It was missing all the other chapters.

23          THE COURT:  Is this section two?  The document you

24  are talking about was section two of a manual?

25          MR. ROBERTSON:  I believe so, Your Honor.

```
1              THE COURT:  The users' manual.

2              MS. ALBERT:  It was the incomplete document that was

3    one chapter out of a five-chapter --

4              THE COURT:  In what they purport to be a users'

5    manual.

6              MR. ROBERTSON:  It was the purchasing module.

7              THE COURT:  Purchasing manual.

8              MR. ROBERTSON:  Yes, Your Honor.

9              THE COURT:  So this is the testimony that relates to

10   that.

11             MR. ROBERTSON:  Yes, Your Honor.

12             THE COURT:  Where is that?

13             MR. ROBERTSON:  Starts at line one of page 126 and

14   goes through line 24.  You'll see the sum total of the

15   testimony was --

16             THE COURT:  Let me read it.  Okay, I've read it.

17             MR. ROBERTSON:  You will remember one of the prime

18   objections we had was under Federal Rule of Evidence 106 and

19   403 in that was an incomplete document, we couldn't see what

20   else was in it, could have been helpful, could have been not.

21             The Court said that he was disinclined to allow it

22   but wanted to reserve judgment based on the testimony.  One of

23   the issues that was discussed yesterday was whether efforts had

24   been made to obtain a complete version, whether questions had

25   been asked by Lawson's counsel if a complete version existed,
```

```
 1    whether or not Federal Rule of Evidence 106 could be complied
 2    with, and you'll see here no inquiry was made into those
 3    relevant issues as to this incomplete document other than to
 4    identify it and move on.
 5              MS. STOLL-DeBELL:  Well, Your Honor, I think first of
 6    all, this exhibit was marked as two different exhibits during
 7    Ms. Fielder's deposition, so this is not the sum total of the
 8    testimony about it.  So that's the first response.
 9              The second is this is chapter one of the purchasing
10    manual, and you'll recall that Exhibit DX-121 is chapter two
11    and that what is missing is chapters three, four, and five, I
12    think.  This one has got a date on it.
13              We confirmed that we did subpoena Ms. Fielder.  If
14    you look at the first couple pages of her deposition, ePlus's
15    counsel is asking her, did you get a subpoena, did you look for
16    all the documents you had, did you give all the documents you
17    had to us.  She answered, yes, I did, I gave everything to
18    Lawson, and what Lawson had, Lawson gave to you.
19              So the fact of the matter is the remaining chapters
20    no longer exist.  We tried to get them, and they don't exist.
21    They certainly had an opportunity to ask her questions about
22    that if they had --
23              THE COURT:  What do you mean, they don't exist?  She
24    doesn't have them.  She doesn't own the company anymore.
25              MS. STOLL-DeBELL:  She did own the company, though,
```

1    during the SAP lawsuit, and these were subpoenaed then as well,

2    Your Honor, and everything that was used in SAP and admitted

3    and used in the SAP trial is also in evidence here.

4              MR. ROBERTSON:  Our subpoena, Your Honor, only asked

5    for the documents that Ms. Fielder produced to Lawson.  That

6    was the sum total of the subpoena.

7              MS. STOLL-DeBELL:  We issued our own subpoena and

8    asked her for everything she had.  She gave us what she had.

9    These chapters --

10             THE COURT:  She doesn't have it.  I think that's been

11   established.  The question is, does it exist somewhere else,

12   and the question is not does she have it, because I think

13   you've answered that.  She didn't have it.  She testified to

14   that.  That's settled.  The point is, you haven't established

15   that it doesn't exist.

16             MR. ROBERTSON:  Point of clarification, Your Honor.

17   I don't think she did testify that she didn't have it.

18             MS. STOLL-DeBELL:  Well, I think she did.  I think we

19   served her with a subpoena.  She gave us what she had, and she

20   doesn't have this.

21             MR. ROBERTSON:  Cite us to the testimony.  Maybe I'll

22   withdraw my objection.

23             MS. STOLL-DeBELL:  She said she gave you everything

24   she gave Lawson, and we served her a subpoena asking for

25   documents.  We tried to get it.  She gave us what she had.  We

```
 1    took what was also used in the SAP case.  She said, I think
 2    it -- what page is that?  I have a line, Your Honor, but not a
 3    page.  Give me just a minute.
 4              I think at page nine she said, quote, the only
 5    things, I gave you everything I would have given them, them
 6    being Lawson.  So she no longer has it.  She was working --
 7              THE COURT:  The fact you are saying that you
 8    subpoenaed -- did you specifically subpoena this?
 9              MS. STOLL-DeBELL:  Yes.  We asked for the PO Writer
10    documents.
11              THE COURT:  All right.  So she gave you everything
12    she had, so it's inferable, if she didn't give you the rest of
13    the manual, that the rest of the manual she didn't have.  Now,
14    where else could it be?
15              MS. STOLL-DeBELL:  I don't think anywhere, Your
16    Honor.
17              THE COURT:  Who bought the company?
18              MS. STOLL-DeBELL:  She just sold it within the last
19    year.
20              THE COURT:  Who did she sell it to?
21              MS. STOLL-DeBELL:  The name is escaping me now.
22              THE COURT:  Wouldn't that be the place to see if it
23    existed?
24              MS. STOLL-DeBELL:  But, Your Honor, she was working
25    for that company.  She still owned it when she gave testimony
```

1    and was a consultant during the SAP lawsuit, and all of this

2    stuff was produced there.  It's all got SAP numbers on it as

3    well, so had it existed three years ago when that lawsuit was

4    going on, it would have been produced at that time as well.

5          THE COURT:  Maybe, maybe not.  We don't know that.

6    We can't make assumptions like that.  The question is, where

7    was it, what records show that the rest of this doesn't exist,

8    and the answer is, the best I can tell, is that you've

9    established -- you made an inference that she didn't have it,

10   the rest of this manual, and then that's the problem.

11         So that's where we stand.  I don't see any point

12   arguing that anymore, but she does say from her own knowledge,

13   does this accurately represent the product that was sold to

14   customers prior to August 10th of 1993.  Yes.

15         MS. STOLL-DeBELL:  Yes, she does.  Dr. Shamos relies

16   on this extensively, and we cited it extensively in our second

17   supplemental invalidity contentions.  They had every

18   opportunity -- it was their deposition -- to ask her further

19   questions on this.

20         THE COURT:  You know, let me explain something to

21   you.  The part of -- there's a song called *The Gambler*.  You

22   have to know when to hold them, you have to know when to fold

23   them.  You have to know when to walk away, you have to know

24   when to run, and part of a lawyer's job is to know what not to

25   ask, because if you don't ask it, then that lawyer can come

1    into court and say, I didn't build the record for that, and

2    it's not there, so that's an okay thing to do.  So the fact

3    they could have asked something about it doesn't really cut any

4    muster with regard to this issue.  That's a trial tactic lesson

5    that you got free.

6         Now, but why isn't it admissible, because she says

7    it's the section of the purchasing manual for PO Writer Plus,

8    and it represents accurately the products sold to customers

9    prior to August 10, 1993?  Why can't that come in?

10        MR. ROBERTSON:  That's what she says about that

11   section.  The problem is there's four other sections that we

12   don't have, and as Ms. Stoll-DeBell just referenced, Dr. Shamos

13   is going to be relying on this extensively.  That's why we're

14   prejudiced, Your Honor, because we can't see what is in the

15   rest of that document and be able to cross-examine him

16   effectively with respect to that.  So having an incomplete

17   document seriously prejudices us --

18        THE COURT:  What is there -- what can you tell me

19   about the document that would lead me to find that it is -- its

20   missing sections might contain something about which Shamos --

21   it would be important to ask Shamos?  Is this the thing that

22   has the table of contents in it?

23        MR. ROBERTSON:  Yes, sir.

24        THE COURT:  What part of -- you all made some

25   reference to this yesterday.  What part of this table of

1    contents portends that there's something there that's worth

2    invoking Rule 106 on and slamming their expert to the ground on

3    the theory that it's not there?

4            MS. ALBERT:  There is one chapter, if you recall,

5    chapter three, that dealt with implementing the PO Writer

6    system.

7            THE COURT:  What does that mean?

8            MS. ALBERT:  Implementing means how to install it,

9    how to configure it, and then the next chapter --

10           THE COURT:  I understand what implementing means.  I

11   mean technically in the context of the case.

12           MS. ALBERT:  In the context of the case, the product

13   is a multi-module product that has to be put together so that

14   each module can talk to the other.  So there may have been

15   information within that chapter to explain how the purchasing

16   module talks to another module, and then the next chapter after

17   that was related to how to operate the system.  That's directly

18   relevant.

19           THE COURT:  That's functionality.

20           MS. ALBERT:  Right.  That's the functionality of the

21   entire product as it may have been put together, and we don't

22   have that chapter to ascertain how the system was described to

23   operate.

24           THE COURT:  Any other sections?

25           MS. ALBERT:  There were two appendices referenced in

1    there.

2              THE COURT:  For what?

3              MS. ALBERT:  I don't know what's in those appendices,

4    so I don't know if there would have been relevant information.

5    Again, we don't have the -- the document at issue is chapter

6    one of a five-chapter document.

7              THE COURT:  One of the other exhibits was chapter

8    two, wasn't it?

9              MS. ALBERT:  Well, I don't know that for a fact

10   because there was no date on that chapter two.  We don't know

11   that the chapter two that was produced by Lawson comes from the

12   same version of the system as is reflected in DX-122, because

13   we just -- we have Ms. McEneny's testimony that this undated

14   chapter two comes from that document, but I don't have anything

15   within the documents itself to corroborate that that's actually

16   the case.

17             THE COURT:  All right.  What do you say?  Sounds to

18   me like she's right there, Ms. Stoll-DeBell.  You know, you've

19   got part of something, and in order to know whether it all is

20   appropriately dealt with and the subject to be testified about,

21   you need the rest of the document so that you can, A, confirm

22   it is, in fact, the same functionality you are dealing with,

23   and how to use it is the same as is the basis for the opinion,

24   and none of that is there.  Isn't that really what the rule of

25   completeness is all about here now?

```
 1              MS. STOLL-DeBELL:  Well, let me back up, Your Honor.
 2    I think chapter two, I've got some citations for you today that
 3    show that that is part, or at least infer that it is part of
 4    this same version ten manual.  We have Ms. McEneny's testimony
 5    --
 6              THE COURT:  Let's start with section one.  Section
 7    one had a date on the front of it, and it said 10th edition,
 8    April 1993 or something like that.
 9              MS. STOLL-DeBELL:  That's correct.
10              THE COURT:  That was on the first page of section
11    one; right?
12              MS. STOLL-DeBELL:  Yes.
13              THE COURT:  Okay.
14              MS. STOLL-DeBELL:  And it has a table of contents.
15    The appendices she's talking about, one is an index, so I don't
16    think that that matters very much, and the other one is a
17    listing of standard ASCII collating sequence codes, so that is
18    not helpful either, frankly.
19              THE COURT:  I'm glad you know that, because I don't,
20    but that's okay.
21              MR. ROBERTSON:  We respectfully disagree with regard
22    to that.
23              MS. STOLL-DeBELL:  Okay.  In any event, she said --
24    she testified under oath, and this is a witness who is not
25    being paid, she's a fact witness, she has no incentive to not
```

1    tell the truth, she has no stake in this lawsuit, and she says

2    chapter one is an accurate description of this product.

3            We also have chapter two which is a self-contained

4    tutorial which this chapter one says, goes through each of the

5    sub modules of the purchasing module and teaches you how to use

6    them.  So we have the two -- we have two things that a witness

7    has said do accurately represent this product.  We can connect

8    the date.  She says this chapter two is version ten and has the

9    right date, and when you put them together, Your Honor, I think

10   we have enough.  We tried to get it --

11           THE COURT:  You have enough to show one and two --

12   you say -- let's assume that's right, that the inference goes

13   your way to establish that these two are the date of 1993.

14           MS. STOLL-DeBELL:  Yes.

15           THE COURT:  Let's assume you get there.  How do you

16   deal with the rest of their objection which is there's some

17   more of the viscera, chapters three and four or three and five?

18           MS. STOLL-DeBELL:  Three, four, and five.

19           THE COURT:  That aren't there.

20           MS. STOLL-DeBELL:  Chapter five is warning and error

21   messages.

22           THE COURT:  Which chapter?

23           MS. STOLL-DeBELL:  Chapter five.

24           THE COURT:  So it was three and four you were

25   complaining about that you thought were significant, I believe.

1              MS. ALBERT:  Well, I think those are significant

2      based on the title, but without having the other sections

3      including the appendices, there may have been other relevant

4      information in those sections as well.  We don't know.

5              MS. STOLL-DeBELL:  Your Honor, I think Rule 106 is a

6      rule of fairness, and it is called the rule of completeness,

7      and if you look at that Fourth Circuit case we talked about

8      yesterday, it was a case right on point where you couldn't get

9      the remainder of the evidence.  And the Court said, look,

10     neither party destroyed the evidence and we're going to admit

11     in what portions we do have.

12             Here we've got an actual witness who isn't biased,

13     who has no stake in this, and said this accurately reflects the

14     product.

15             MR. ROBERTSON:  Even conceding that, Your Honor, her

16     testimony can't provide three of the five missing chapters.

17     This is being used to attempt to invalidate our patent.

18             THE COURT:  I'm very frustrated because my book

19     doesn't give me the answer right off the top of my head.  Give

20     me a minute to look at something here.  Well, the little

21     handbook on rules, 106 doesn't really cover the question here.

22     I'm going to let you all brief it.

23             MS. STOLL-DeBELL:  Okay.

24             THE COURT:  But here's what I think.  You're going to

25     have to go into Rule 1 -- this is a case that truly, where 106

1    is very important.  Rule 106 technically is really an ordering

2    of proof kind of rule.  It says, if you're going to offer this,

3    hey, then the other side can say, huh-uh, you have to also

4    offer A plus B, and the question here presented, if what's

5    missing is so important to the rest of it that it might be

6    unfair to let what you have in, then the rule of completeness

7    may, in fact, operate to shut it out, and if that doesn't, then

8    Rule 403 does, because it can create confusion, and the

9    prejudice could be substantially outweighed by the probative

10   value.

11          So you all are going to have to take this on and

12   brief it, and you know your briefing schedules.  I think at the

13   end of the day, you need to add up how many briefs you have to

14   have due on such and such days so we'll see if we have you on

15   the right schedule or not.  I don't want to kill you, but

16   anyway, right now that will be the briefing schedule unless you

17   sort something else out.

18          MS. STOLL-DeBELL:  Thank you, Your Honor.

19          THE COURT:  I think this is a pretty important

20   question, and it's really as to a somewhat unresolved question,

21   and I don't know the Fourth Circuit law is going to provide the

22   answer.  I know there are cases on 106 in the Supreme Court,

23   and you're going to have to look at Einstein -- not Einstein.

24          I'm going to call him and tell him what I called him.

25   And what is the guy's name that used to be at the University of

 1    Virginia, begins with an R, went to Georgetown, writes

 2    evidence?  He used to have a good section on it, too, and any

 3    other help you can give me.

 4              MS. STOLL-DeBELL:  Thank you.

 5              MR. ROBERTSON:  I assume --

 6              THE COURT:  In fact, Whitmore might be of help here,

 7    because actually the rule of completeness goes back into common

 8    law.

 9              MR. ROBERTSON:  I assume we're the moving party on

10    this motion?

11              THE COURT:  You just volunteer to be the moving party

12    whenever you get the last word.

13              MS. STOLL-DeBELL:  I think he just wants two turns.

14              THE COURT:  But I think you are the moving party

15    since you are objecting to it.  Okay.  What time is it?

16              THE LAW CLERK:  12:40.

17              THE COURT:  All right, let's go.  Let's see.  The

18    ruling here is this has to be briefed.  Right?

19              MS. STOLL-DeBELL:  Yes.

20              THE COURT:  That's 126, one through 24; right?  So

21    I've got the right issue.

22              MS. STOLL-DeBELL:  Yes.

23              THE COURT:  Okay.  You know, we have a lot of pages

24    here.  I hope you all are withdrawing a whole lot of these.

25              MR. ROBERTSON:  We still have the issue of the expert

 1    testimony involving the claim construction, Your Honor, which

 2    maybe we can deal with globally, but now we're on to page 134

 3    starting at line 12 going to page 135, line ten.

 4              THE COURT:  I have 16 on my little sheet here.  134,

 5    line 14.

 6              MS. STOLL-DeBELL:  Yeah, you know, I had withdrawn

 7    testimony from, I guess, page 134, line ten through 15.  I have

 8    that X-ed out.  I did that.  I withdrew that testimony.

 9              MR. ROBERTSON:  All right, so starting at line 16

10    through 25 on page 134 through page 135, line ten, if you look

11    at the testimony, Your Honor, the objection here is relevancy.

12    There's discussion about how manuals are organized in a filing

13    cabinet.  I don't understand the relevancy of that, and I would

14    then -- I can't hear something compelling on relevancy, I would

15    suggest that it just would be not helpful to the jury and

16    confusing and a waste of time.

17              MS. STOLL-DeBELL:  Your Honor, these manuals, like

18    we've talked about, there are -- there's a version ten program,

19    and there were sub modules of that program and a manual for

20    each of those, and there is an issue about whether this DX-121

21    is part of that version ten manual, and she's talking about how

22    they store them, how they printed them for the customers.

23              So I think it's highly relevant to this issue of what

24    part of these documents were version ten and dated April '93,

25    how does she know that.  She goes through it, and it's just

292

1    establishing her knowledge and giving her some credibility so

2    that when she later testifies about these dates for everything,

3    it's more believable.

4          On the one hand, Mr. Robertson says there's no date

5    on this, this isn't prior art, and on the other, he says,

6    testimony about that is irrelevant.

7          THE COURT:  Objection overruled.  138:4 through 17.

8          MR. ROBERTSON:  This is testimony, Your Honor,

9    concerning a version upgrade kit, and Dr. Shamos has no opinion

10   on it.  He doesn't reference it, and it's not used for any

11   purpose, and I believe that exhibit was withdrawn if I'm not

12   mistaken.

13         MS. STOLL-DeBELL:  I didn't think so.  I thought it

14   was allowed.  139 is an upgrade kit.  It goes to date.  Dr.

15   Shamos isn't going to talk about it, because he's not going to

16   be the main witness who says the stuff is prior art.

17         THE COURT:  Are you all keeping notes on what I did?

18         MR. CARR:  Did you say 139?

19         MS. ALBERT:  Your Honor, my notes reflect that

20   yesterday, when I discussed this exhibit, you reserved judgment

21   based on reviewing the deposition.

22         THE COURT:  I just haven't gone back and looked at

23   what I did.

24         MR. ROBERTSON:  Again, Your Honor, the issue is the

25   same as this date -- interface utility and the EDI interface

1   module manual.  If Dr. Shamos has no opinion on it, hasn't

2   referenced it in his report, can't tie it together to anything,

3   it should be treated similarly to those other two exhibits and

4   testimony.

5          MS. STOLL-DeBELL:  Your Honor, it's not the same

6   issue.  This is just about date.  This isn't about

7   functionality of the software.  It's about when and what

8   customers used to go from version nine to version ten.

9          Dr. Shamos doesn't need to talk about it.  He's not

10  our primary witness on the dates of this prior art.  He is the

11  witness who is going to say the functionality meets the claim

12  limitations, but that's not what this particular exhibit and

13  this testimony is about.  It's merely giving it a date.  It's

14  more corroborating evidence of date, that the date is early

15  enough for this system to be prior art.

16         THE COURT:  Objection overruled.

17         MR. ROBERTSON:  Your Honor, I withdraw the objections

18  at page 138, line 22, to 139:12.

19         THE COURT:  Okay.

20         MR. ROBERTSON:  I withdraw the objection at page 139,

21  line 16, through 140, line 11.

22         THE COURT:  144:20, the next one, we have a live

23  issue or not?

24         MR. ROBERTSON:  I withdraw the objection.

25         THE COURT:  Objection withdrawn.  144, line 20, to

```
1   145, line seven; 145, line nine, to 145, line 19, 12 through
2   19.  149:3 to 150:21.
3            MR. ROBERTSON:  Actually, Your Honor, I'm sorry.  I
4   got confused.  I misspoke.  So on page 144, line 20, through
5   145, line 19, there's a question asked about whether this --
6            THE COURT:  Are you saying you're not withdrawing the
7   objection?
8            MR. ROBERTSON:  I'm not, sir.  I made a mistake.
9            THE COURT:  All right.  Let's see.  144, line 20.
10  Okay.
11           MR. ROBERTSON:  The issue here is whether a set of
12  manuals can be considered a single printed publication or
13  multiple publications.  Under the law of anticipation, Section
14  35 U.S.C. 102, the case law is that a single publication must,
15  within its four corners, have all of the elements that would
16  anticipate a claim.
17           So what's being asked here, what's being suggested is
18  to try to make a multi document, multi-manual document into a
19  single document for purposes of anticipation.  This witness is
20  not competent to give that legal conclusion, and the objection
21  was made at the time.
22           Now, she can say it's a multi manual document, but
23  she can't give a legal conclusion as to whether or not that
24  should be treated as a single publication for purposes of
25  anticipation, and that's what is trying to be elicited here.
```

1           MS. STOLL-DeBELL:  Your Honor, I think, to me, this

2    issue goes to, again, the dates.  All of these manuals were

3    created together as part of one -- as part of version ten of PO

4    Writer.  They were all shipped together, they worked together.

5    She said they were released together.

6           THE COURT:  Are you offering it to try to get into

7    the single publication, around the single publication rule?

8           MS. STOLL-DeBELL:  No.

9           THE COURT:  You're not going to argue that?

10          MS. STOLL-DeBELL:  No --

11          THE COURT:  If she doesn't argue that, can she put it

12   in for dates?

13          MR. ROBERTSON:  Yes.

14          THE COURT:  Done.

15          MS. STOLL-DeBELL:  Let me just make sure I'm clear.

16   We do intend to make the argument that this is a single

17   publication, but we don't intend to use this testimony for

18   that.  There will be a jury instruction that says what the law

19   on that is, and Mr. McDonald, I'm sure, is going to argue it

20   should be a single publication.

21          THE COURT:  How are we going to do that?  See, the

22   problem is this witness's testimony is probative of that if the

23   witness could testify to it.  I'm just not sure the witness

24   could.

25          MS. STOLL-DeBELL:  I think -- can't you do a limiting

1    instruction saying the law on this --

2         THE COURT:  I can do a limiting instruction on

3    anything, Ms. Stoll-DeBell.  The problem is, does it create

4    more problems than it solves and does it lead to jury

5    confusion.  That's the real issue here.

6         MS. STOLL-DeBELL:  This is highly, highly relevant to

7    the argument we're making that all of these manuals go

8    together, and they all were a version of 10 and all have this

9    April 1994 date.

10        MR. ROBERTSON:  May I make a suggestion, Your Honor,

11   that might solve the problem?

12        THE COURT:  What?

13        MR. ROBERTSON:  I would not object to the question

14   that starts on page 144, line 20, and goes through 145, line

15   five, and then I would object to the remainder.  That way Ms.

16   Stoll-DeBell gets her manuals together, but we purge any

17   suggestion of a legal conclusion that would cause confusion to

18   the jury and this point this woman is not competent to give

19   testimony on.  Does that help?

20        MS. STOLL-DeBELL:  How about I have a

21   counterproposal?  What if we take out the first -- yeah, the

22   question starting at page 145, line six, delete that, and then

23   delete the first sentence of her answer.  Delete the "yes," and

24   then delete the "we do consider these to be a single

25   publication" sentence, and then start up at her saying "you

1    wouldn't ship a version ten."  What if we do that?  Then you've

2    got out that she's saying it's a single publication, and we're

3    asking her about it being a single publication.

4            MR. ROBERTSON:  I thought I was being generous with

5    my proposal, so I'd like to stick to it.

6            THE COURT:  Objection sustained as to 145, line six

7    through 19.  Objection overruled, 144:20 to 145:5.  149:3,

8    150:21.

9            MR. ROBERTSON:  My understanding, and maybe Ms.

10   Stoll-DeBell can confirm this, but the underlying exhibit, the

11   ad hoc reporting module, the DX-127 is being withdrawn, and so

12   we would suggest that the testimony is now irrelevant.

13           MS. STOLL-DeBELL:  I'm sorry.  Can I take a look?  I

14   didn't realize it was related to that module.

15           THE COURT:  I'm going to save you all a mercy

16   killing.  None of this testimony is relevant.  It's just

17   confusing, and it doesn't relate to anything that's important

18   in the case.  So let's go.  Next one.  Objection sustained.

19   153:20, 21, 153:25 to 154:1.

20           MR. ROBERTSON:  This is where the testimony begins

21   where Ms. Fielder is asked a series of questions that invoke

22   claim terms and claim language, for example, that the Court

23   construed.  She's being asked whether or not the PO Writer

24   system comprises an electronic sourcing system, for example,

25   one of the claim terms the Court construed.

1              Ms. Fielder, in her testimony, candidly admitted that

2    she hadn't read the patent, she doesn't know what claims are at

3    issue, doesn't understand what claim terms are, never read the

4    Court's construction.  We think a number of these that are

5    going to come along here, Your Honor, are improper testimony,

6    legal conclusions and opinions from a lay witness and should be

7    excluded.

8              THE COURT:  You mean they are expert?

9              MR. ROBERTSON:  From an expert, I'm sorry.

10             THE COURT:  They are expert opinions or improper lay

11   opinions?

12             MR. ROBERTSON:  I think they are both.

13             THE COURT:  A lay opinion can be admissible if it's

14   otherwise based on the witness's knowledge and the reasonable

15   perception, but it can't be -- also it can't be the topic of

16   expert testimony, I believe.  I haven't got the rule out yet,

17   but that's basically what it says I think still.

18             MR. ROBERTSON:  I understand, but as a lay witness,

19   she could not possibly have opinions with respect to the claim

20   construction she never read or a --

21             THE COURT:  But your point is that the only opinion

22   she's given is an expert opinion, and she hasn't qualified as

23   an expert and hasn't been identified as one, even if she's

24   qualified.

25             MR. ROBERTSON:  And has been conceded not to be an

1    expert.  So was PO Writer an electronic sourcing system or not?

2    That's one of the claim terms the Court construed.  It's one of

3    the claim elements.  She has no idea what the Court interpreted

4    electronic sourcing system to mean.  It's highly prejudicial as

5    well, Your Honor, since it's coming from this lay witness.

6           MS. STOLL-DeBELL:  Okay, so first of all, I don't

7    think it's expert testimony for the reasons he just mentioned.

8    She didn't look at the patent.  She didn't look at the Court's

9    construction.  She's answering fact questions about what her

10   product did.  Did it have catalog?  Yes, it did.  In fact, the

11   manuals say catalog all the way throughout.

12          All of these terms have ordinary meanings.

13   Electronic sourcing system is something that's used by all of

14   these companies that offer electronic sourcing systems.

15          THE COURT:  Why did I have to construe it then?

16          MS. STOLL-DeBELL:  Because in patent cases, you need

17   to look at the specification, filing history, and all of that

18   stuff.

19          MR. ROBERTSON:  Your Honor, there's no recognized

20   industry term for this, and that's why it was in dispute, and

21   that's why Your Honor construed it.

22          THE COURT:  Let me tell you how I feel about this.

23   Reading that question and the several I've read, every one of

24   them, one way or the other, call for the application of her

25   opinion to a term, and to the extent that her fact statement is

1     relevant, it would be a 403 objection because it would, in

2     fact, inject the notion that she's testifying about whether or

3     not that product satisfied or didn't satisfy a claim term, and

4     she's really testifying as an expert no matter how you cut it

5     even though there is some colorable argument that she's just

6     testifying to a fact, but to that extent, that fact, the

7     presence of that fact is of marginal substantive relevance, and

8     the prejudicial effect of giving it Lawson expert testimony

9     outweighs substantially the marginal probative value.  And so

10    the prejudice component of 403 is satisfied, and in addition to

11    that, the risk of the confusion to the jury about whether this

12    is an expert or not and any effort to try to cure it by a

13    limiting instruction simply would create further confusion.

14    All of those questions like that go.

15            Now, we're going to lunch, and you all go identify

16    which questions fit that ruling.

17            MS. STOLL-DeBELL:  Your Honor, can I make one

18    additional argument?  ePlus relies on a whole bunch of

19    statements in Lawson's documents that say we have catalogs or

20    we have a catalog.  Those statements were made outside and

21    independent of this Court's interpretation of catalog, and they

22    want to rely on it for that, but then when we ask the same

23    question, does PO Writer have a catalog, they say it's

24    prejudicial.

25            So it seems like what's good for us should be good

1    for them, and if asking witnesses questions about claim terms

2    like catalog is prejudicial and confusing to the jury, all of

3    those documents --

4            THE COURT:  I don't know it's prejudicial -- I'm

5    saying it's the gloss of the expertise.  It's really expert

6    opinion here is what she's being asked to give.  I don't know

7    what Lawson's doing.  I understand what you are saying in sort

8    of a general way, but I'm not going to make a ruling on that

9    now.  That's not what's before me.  I'm just ruling on what's

10   before me.

11           So what I said applies to that first question and

12   anything like it, so you all go agree on what you can agree on

13   as to what's like it.  We'll put in the record, over your

14   objection, of course, that the ruling -- what the ruling is as

15   to which objections and then move on to the rest of it.  We'll

16   take 45 minutes for lunch and come back.

17

18           (Luncheon recess.)

19

20           THE COURT:  What are we doing now?  How many of the

21   things are covered by the ruling?

22           MR. ROBERTSON:  Your Honor, I identified them to Ms.

23   Stoll-DeBell, and she indicated to me she thinks we can agree

24   on some.  I don't think we've got very specifics yet.  She

25   wanted to go through them one by one after I'm informed they

1    tried to persuade to you to reverse your ruling right before

2    the lunch break.

3             MS. STOLL-DeBELL:  I have one additional argument I'd

4    like to make, Your Honor, but what I have done is grouped the

5    objections relating to the term catalog into a group, and those

6    groupings will rise or fall with how you rule on this issue.

7             So I do have that done, plus we have a group of

8    objections that relate to terms other than catalog, and we went

9    through some of those with Mr. Robertson.  He's withdrawing

10   some of them.  Some of them we'll have to argue.

11            THE COURT:  Let's go.

12            MS. STOLL-DeBELL:  Okay.

13            THE COURT:  I don't want this woman testifying about

14   claim terms.  She can't do it, because she's not been

15   designated an expert.  That's the bottom line.  What you are

16   trying to do is get somebody to testify and give expert

17   opinion.

18            She is the owner of the facility, and she hasn't been

19   designated as an expert, and she might qualify as an expert for

20   all I know, but she hasn't been designated, so she can't

21   testify.  It's that simple.  To the extent she's doing that, I

22   don't think it's right.  So let's go.

23            MS. STOLL-DeBELL:  So I think the following

24   objections relate to the term catalog.

25            THE COURT:  Okay.

1          MR. ROBERTSON:  Do I understand the testimony is

2     being withdrawn?

3          MR. McDONALD:  We're going to treat it as requested

4     and objection being sustained to all of those.

5          MS. STOLL-DeBELL:  Yes.  We're not withdrawing them,

6     but we understand the objection will be sustained.  So on the

7     objection starting at page 154:24, and I think it goes through

8     155, line three, and then the next one also, 155, line four

9     through nine.  The next one is 155, line ten through 14.  The

10    next catalog one I have is page 157, lines four through 11.

11    Page 157, line 17, through 158, line seven.  Then I have page

12    161, lines one through four.

13         THE COURT:  Now, wait a minute.  What was the one

14    before that?

15         MS. STOLL-DeBELL:  157, line 17, through 158, line

16    seven.  I may have skipped some, Your Honor.  What I did is I

17    went through and looked at the questions and answers that

18    related to the term catalog.

19         THE COURT:  Okay.  But I haven't ruled that just

20    because she's being asked about a catalog the testimony is out.

21    It's the nature of the question that's important.  Just because

22    it's a catalog, she can testify about -- it depends on the

23    question.  I don't understand the problem here.

24         MS. STOLL-DeBELL:  Maybe we need to go through these

25    one by one.

1           THE COURT:  I'm not going through any more of those.

2    Let's get something we can get done and finished with.  We'll

3    deal with this at the next sitting, because I have a hearing at

4    three o'clock.  O'Loughlin.  Is there any withdrawals or any

5    objections?

6           MR. ROBERTSON:  Yes, sir.

7           THE COURT:  Withdraw them.

8           MR. ROBERTSON:  Page 12, lines 12 and 14, withdrawn.

9           THE COURT:  Wait a minute.  That isn't even -- that's

10   not even listed as the objections.  12:3 to 13:8.  That's the

11   objection.  Are you withdrawing that one?

12          MR. ROBERTSON:  12, I'm sorry, Your Honor.  I may

13   have the wrong document.  12:3 --

14          THE COURT:  Through 13:18.  That's not even marked

15   the same way on my copy.

16          MR. ROBERTSON:  I just have --

17          THE COURT:  There's something wrong with my copy of

18   this.  It's not even marked that way.

19          MR. ROBERTSON:  I just have lines 12 to 15

20   highlighted and objected to.

21          MS. STOLL-DeBELL:  Yes, I do, too.

22          THE COURT:  It's what, 12: what?

23          MR. ROBERTSON:  12:12-15, Your Honor.

24          THE COURT:  Okay.  And that's 403 and 602.

25          MR. ROBERTSON:  That's withdrawn, Your Honor.

 1              THE COURT:  And that's objection withdrawn.

 2              MR. ROBERTSON:  Next one I have is 14:12 to 15:10, I

 3   withdraw those objections.

 4              THE COURT:  Okay.

 5              MR. ROBERTSON:  Next one is 15:15-17, I withdraw the

 6   objection.

 7              THE COURT:  I have here 15:15 to 16:6 on this

 8   document you all gave me.  Which is it?

 9              MS. STOLL-DeBELL:  That's right, but the only

10   objected-to question is lines 15 through 17.

11              THE COURT:  So it's 15 through 17, and strike --

12              MS. STOLL-DeBELL:  The objection, yes.

13              THE COURT:  Is it your understanding -- are you

14   withdrawing the objection or what?

15              MR. ROBERTSON:  Yes.

16              THE COURT:  Okay.

17              MR. ROBERTSON:  Next one I have is 18:8 to 19:10.

18              THE COURT:  So you are leaving out 16:13; you are

19   starting with 18:8.

20              MR. ROBERTSON:  Yes, Your Honor.

21              THE COURT:  To 19:10; right?

22              MR. ROBERTSON:  Yes, sir.

23              THE COURT:  What are you doing?

24              MR. ROBERTSON:  Withdrawing the objection.

25              THE COURT:  Okay.  What about 19:12 to 21?

1          MR. ROBERTSON:  Withdrawing the objection.

2          THE COURT:  Next?

3          MR. ROBERTSON:  The next one I have, Your Honor, is

4    22:9 to 22:  -- excuse me, 22:9-23.

5          THE COURT:  This is strange because -- 22:9 to 22:23?

6          MR. ROBERTSON:  Yeah.

7          THE COURT:  All right.

8          MR. ROBERTSON:  Your Honor, I want to press this

9    objection on relevancy grounds.  There is no question about the

10   Fisher catalog, which is a hardback document, an actual book

11   that's three inches thick has any relevance to the electronic

12   catalogs that the Court construed that are part of this case.

13   I don't think it adds anything.  I think it would be unduly

14   confusing for the jury.

15         MS. STOLL-DeBELL:  Your Honor, there's going to be

16   testimony that ePlus is going to put in about how the Fisher

17   catalog and RIMS was combined with PD-2, and they're going to

18   argue that that was a complicated process, it took a long time,

19   Fisher paid IBM a lot of money to do that, and we are going to

20   rebut that evidence by showing that what took a lot of time was

21   actually taking this big, fat, paper catalog and converting it

22   into an electronic form, and because it was so thick, because

23   it had so much stuff in there, that's what took a long time and

24   that's what cost a lot of money, and it wasn't that it was

25   complicated --

1          THE COURT:  Why is any of that pertinent?

2          MS. STOLL-DeBELL:  Because we are asserting that the

3    combination of RIMS plus TD-2 renders the claims obvious,

4    invalid for obviousness, and they're going to say, no, it

5    wasn't obvious to combine them, and it was difficult to combine

6    them.

7          THE COURT:  What does whether it's difficult to

8    combine them have to do with whether or not it's obvious?  I

9    wasn't aware that difficulty and obviousness were even part of

10   the same equation.

11         MS. STOLL-DeBELL:  I don't think it is relevant.

12         THE COURT:  Good.  Then all that comes out.  The

13   question comes about whether it was difficult, and so does your

14   rebuttal.

15         MS. STOLL-DeBELL:  Yes, it does.

16         MR. ROBERTSON:  The issue, Your Honor, is was it a

17   difficult problem to solve as one of the secondary conditions

18   of nonobviousness.  The problem is readily -- the solution is

19   readily obvious and readily solved, then it could be obvious.

20   If it's time-consuming, are there problems --

21         THE COURT:  Nope, nope.  It's whether it's difficult

22   to solve.  It's not whether it takes time to solve it.  That's

23   not -- there's no case that I know of that says if it takes

24   time to solve it, that makes it -- that affects whether or not

25   it's obvious.  It can be as obvious as the day is long and take

1    you five years to solve it, but so what.

2          MR. ROBERTSON:  But the difficulty in solving the

3    problems can be time-consuming.

4          THE COURT:  That's not the point.  You can say

5    they're difficult problems to solve and prove they are

6    intellectually difficult and you have to go through these steps

7    to do it.  That's one thing, but the fact it took time to do

8    that is nothing.  It doesn't relate.  It's nothing but

9    confusion, and look what it genders right over here, so that's

10   out, and so is yours.

11         MS. STOLL-DeBELL:  Okay.

12         MR. ROBERTSON:  23, lines four to line ten, I

13   withdraw the objection.

14         THE COURT:  What now?  Next one I have is 22:24

15   through 23:10.  What is it?

16         MR. ROBERTSON:  Your Honor, I think you are looking

17   at the brackets rather than just the highlights.

18         THE COURT:  I'm looking at the sheet of paper that

19   I'm making these notations on, and this has got 22:24 to 23:10.

20   Then when I go to 23: -- 22:24, it's bracketed, but -- I think

21   I have another iteration of change that hasn't been reflected

22   in the base document.  So what is the space we're talking

23   about?  23:4 to ten; is that right?

24         MR. ROBERTSON:  Your Honor, are you looking at the

25   defendant's designations column?

```
 1              THE COURT:  I'm looking at this right here, and it

 2    says, plaintiff ePlus's objections to defendant's designations

 3    of the deposition of Johanna O'Loughlin, and it says ePlus's

 4    specific objections, and attached to that are pages that are

 5    highlighted with the rule connoting the objection in the

 6    margin, but I'm writing on and making my rulings on the cover

 7    page which contains these things.

 8              So I've now changed it so that the 23:4 to 23:10 is

 9    all we're dealing with.  Is that it?

10              MS. STOLL-DeBELL:  Yes.

11              THE COURT:  What is this about?

12              MS. STOLL-DeBELL:  This is about who signed the 10-K

13    which is an exhibit.

14              MR. ROBERTSON:  I'm withdrawing the objection, Your

15    Honor.

16              THE COURT:  What difference does that make in this

17    case?  See what I'm saying?  This is the kind of evidence --

18    this is why it's going to take time to try the case, and I'm

19    going to tell you, if you just keep on following this tactic,

20    what's going to happen is you're going to say your time is up,

21    you're not going to be able to present any more evidence on

22    that topic or period.

23              I think there's not but one way to do this, and I'm

24    getting convinced, and that's to give you each a couple of days

25    and that's the end of it, because you all -- what you are
```

```
 1   trying to do is to -- you don't recognize the difference
 2   between what proves something and what proves a point from
 3   which you can make an inference, from which you want an
 4   inference, and that means you can't stack the inferences.
 5   That's how you are trying to prove things here, and it's just
 6   not going to be allowed.  I don't want the jury's time taken up
 7   with stuff like this.
 8            MS. STOLL-DeBELL:  Your Honor, I was planning on
 9   withdrawing that one anyway, but he withdrew the objection
10   before I withdrew the testimony.
11            THE COURT:  Testimony withdrawn.
12            MR. ROBERTSON:  Judge, the next two, well, the
13   next -- yes, two, I have are 28:6 through essentially 29:8.  We
14   didn't designate the objections, but my objection --
15            THE COURT:  I have here listed on this list 23:11 to
16   24:11.  Is that out?
17            MS. STOLL-DeBELL:  That's what I have, and I have
18   that as being in.
19            THE COURT:  Fisher's 10-K, describe the Fisher RIMS
20   product -- what are we doing here?  What are you offering a
21   10-K to describe a product for?
22            MS. STOLL-DeBELL:  Because, Your Honor, it's back in
23   the relevant time frame, and it talks about RIMS and says
24   Fisher was selling the RIMS system and what RIMS did, and RIMS
25   is one of our top pieces of prior art.  So that's why that 10-K
```

1    is in, is it dates it as prior art and says what some of the

2    functionality was.

3              It's a stipulated exhibit, and this section, the one

4    before I withdrew, was related to who signed it, and I was

5    going to pull that testimony out, but the next, the next group

6    says they made it a policy of having accurate 10-Ks, so it's

7    accurate to say it was on sale before the priority dates of the

8    patents.

9              THE COURT:  All right.  So what's the objection to

10   that?

11             MR. ROBERTSON:  I withdrew the objection, Your Honor.

12             THE COURT:  Objection withdrawn.

13             MS. STOLL-DeBELL:  The next group of testimony

14   starting at page 26, line 17, through 27, line 14, I'm

15   withdrawing that testimony.

16             THE COURT:  Starts with 24:19 through 26:25, you are

17   withdrawing that.

18             MS. STOLL-DeBELL:  I'm withdrawing page 26, line

19   17 --

20             THE COURT:  I understand that.  I'm saying that

21   particular range that starts on my page here is encompassed by

22   24:19 through 26:5, and then 26:17 to 27:8, 27:21 to 28:8.

23   What are we doing?

24             MS. STOLL-DeBELL:  I'm only withdrawing a part of it,

25   Your Honor, and I think I'm withdrawing the part that's

1    objected to.

2              THE COURT:  Well, it looks to me like it's objected

3    to.  This is another instance where I have a list over here

4    that has all these things in it, and that -- as objected to,

5    these lines, and yet the highlight is different.  So I don't

6    have the up-to-date version of these things.

7              MR. CARR:  Judge, do you have a column on your sheet

8    titled plaintiff's objections?

9              THE COURT:  I have defendant's designations,

10   plaintiff's objections --

11             MR. CARR:  The plaintiff's objections column, you

12   will see some that are in parentheses, some page and line

13   numbers in parentheses.

14             THE COURT:  Yeah.

15             MR. CARR:  Those are the portions that are objected

16   to of the designation that's in the column to the left.

17             THE COURT:  Yeah, okay.

18             MR. CARR:  So when people are calling out the

19   objected-to part, that's what they're referring to, is what's

20   in the parentheses.

21             THE COURT:  Well, I know, but what I'm saying is --

22             MR. CARR:  The remainder of the designation isn't

23   objected to.

24             THE COURT:  That doesn't correlate -- I guess it

25   does.  All right, I see.  Okay.  Go ahead.

1          MS. STOLL-DeBELL:  Okay.  So I'm withdrawing

2     testimony starting at page 26, line 17, through 27, line 14.

3          MR. ROBERTSON:  I'm sorry.

4          MS. STOLL-DeBELL:  26, line 17, through 27, line 14.

5     I'm pulling out that testimony which includes one of your

6     objections.

7          THE COURT:  It doesn't on my papers over here.  The

8     next objection I have is, according to your -- looking at that

9     column, leading questions, 28:6 down to 28:18.  That's the next

10    objection I have.

11         MS. STOLL-DeBELL:  So there is -- do you have a 602

12    objection for page 27, line nine through 14?

13         THE COURT:  No, I don't have anything on page -- I

14    don't have any objection on page 27 at all.

15         MS. STOLL-DeBELL:  I have -- it's highlighted on my

16    copy.

17         THE COURT:  I have in plaintiff's objections 27:19 --

18    nine through 14, but it's not marked on the page that has --

19    it's not highlighted on the page of the document, so I assumed

20    it was -- in any event, it's withdrawn.

21         MS. STOLL-DeBELL:  It's withdrawn.

22         THE COURT:  Whatever it is, okay.  So now the next

23    thing I've got is 28:6 through 18.  It's a leading question,

24    403 and 602.

25         MR. ROBERTSON:  I'd like to press these objections,

1    Your Honor.  This person, Ms. O'Loughlin, was a former in-house

2    counsel at Fisher Scientific.  She's not an engineer.  She has

3    no technical background.  She signed 10-Ks because that was one

4    of her duties to do, for her to do, and they were prepared by a

5    patent attorney who worked for her was her testimony, and she's

6    being asked technical questions with respect to this, and she

7    was a third-party witness, and she was being led to describe

8    certain information after she had testified earlier that she

9    had just a general idea about what the Fisher RIMS system

10   contained.  So she's asked to read a document and say I see

11   that, and then she says, is that your understanding of the

12   elements of that product.  And then --

13            THE COURT:  This is a lawyer?

14            MR. ROBERTSON:  Yes, Your Honor.

15            MS. STOLL-DeBELL:  She was -- my headline is I'm

16   withdrawing this testimony, Your Honor, from page 28, line six

17   through 23.  I'm checking the next one, Scott.  Give me a

18   second.

19            MR. ROBERTSON:  I think that's all I have.

20            THE COURT:  There's another objection that starts --

21            MS. STOLL-DeBELL:  I'll go all the way through page

22   29, line eight.

23            THE COURT:  Okay.  That takes care of that.  How

24   about these counter designations?  I don't have any markings on

25   that.

1          MR. ROBERTSON:  There are no objections, Your Honor.

2          THE COURT:  Okay.  That one is done.  Kristy Oliver.

3          MR. STRAPP:  Yes, Your Honor.  First I'd like to note

4     we're going to withdraw several of these objections.

5          THE COURT:  Do so quickly.

6          MR. STRAPP:  Okay.  Page 19, line 23, through page

7     20, line seven, objection withdrawn.

8          THE COURT:  Go ahead.

9          MR. STRAPP:  Page 128, line 16 through line 25,

10    objection withdrawn.  Page 129, line 20, through page 130, line

11    four, objection withdrawn.  I'd like to press the objection

12    that's noted at page 131, line three through line seven.

13         MR. SCHULTZ:  Before you do that, we'll withdraw that

14    testimony.  Withdrawing the testimony on page 131, line three

15    through seven.

16         THE COURT:  Next one is 133.

17         MR. STRAPP:  The next objection that I have noted

18    here is page 134, line four.

19         THE COURT:  No, I don't have that.  Okay, it's

20    another one where it hasn't -- so it starts with -- 134, line

21    one through nine; is that it?

22         MR. STRAPP:  That's correct.  The issue here, there

23    was a series of questions that were asked by Lawson's counsel

24    to one of their customers.  This is a representative of one of

25    the customers, and the questions were regarding whether or not

1    the customer -- the questions preceding this particular

2    objection are concerning whether the customer licenses a

3    particular Lawson Software product, and the specific questions

4    that are objected to are prejudicial because what's done here

5    is that the customer is asked to make a logical -- make --

6    reach a conclusion regarding whether or not users at this

7    company have access to catalogs.

8            Catalogs is a claim term that's in dispute as we've

9    discussed with respect to Ms. Fielder, and this question and

10   answer gives the impression to one that there is no access to

11   catalogs whatsoever when really the question and answer aren't

12   about the functionality of the Lawson software that is licensed

13   but rather what the reason is that a particular software

14   product was licensed.  So we think it's misleading and could be

15   confusing to the jury.

16           MR. SCHULTZ:  I'll address the first issue first.

17   When you brought up the issue of the claim term of the

18   catalogs, Your Honor, this actually does correspond with other

19   testimony, and page 44 of this witness's testimony, which was

20   designated by ePlus, has questions regarding the term catalog.

21           It merely responds to those line of questioning that

22   ePlus has designated.  The door is open with respect to the

23   term using catalog which is also a term that has an ordinary

24   meaning.

25           That responds to the first issue.  The second issue

1    is with respect to the 403 objection.  This testimony, because

2    it has --

3             THE COURT:  Is this addressed to the capability of

4    the system or to the functionality of the system as it was

5    bought and thus limited?

6             MR. STRAPP:  Your Honor, the particular question and

7    answer --

8             THE COURT:  It's very difficult for me to understand

9    what it relates to.

10            MR. STRAPP:  That's precisely why we want to object

11   to it.  The question and answer, as I understand it, is about

12   the reason why the customer did not license a particular

13   software module from Lawson.  That module is called Punchout,

14   and that's what the questions and answers are at page 133, line

15   16, all the way through 134, line nine.  It's about whether or

16   not Punchout was licensed and the reasons why it was or wasn't

17   licensed, but the particular question and answer that we're

18   objecting to gives the impression to one who is reading this or

19   will watch the video that the system doesn't have the

20   capability of accessing catalogs generally which is an unfair

21   impression to give because that's not really what the testimony

22   is about.

23            THE COURT:  All right.

24            MR. SCHULTZ:  So, Your Honor, I think what we can

25   maybe do to clear this up is if we took out lines four through

1    six, because at that point we're saying what the system

2    actually does.  Lines seven through nine are clearly relevant

3    to show what the Blount Hospital system does and does not have.

4    It doesn't not give users access to catalogs.

5             THE COURT:  Well, I think the way -- if you review

6    the whole thing in context, it's misleading and confusing.

7    Objection sustained to line four through nine of page 134.

8    Next?

9             MR. STRAPP:  That's all we have for Oliver.

10            THE COURT:  Tolkmit.

11            MR. SCHULTZ:  Your Honor, if I could take one moment

12   for this.  Counsel, Ms. Albert and I, talked about this

13   yesterday, and there's one issue that's involved with Mr.

14   Tolkmit's deposition.  It does not relate to the LSF, the

15   Lawson System Foundation, and Smart Office.  That is on page

16   175, lines ten through 12.  We are withdrawing our objection to

17   that designation.

18            The remainder of the document is only related to the

19   LSF, Process Flow, and Smart Office which the parties are

20   briefing on, Your Honor.  It's our proposal that we include

21   these designations after that briefing has been concluded to

22   determine what is on the relevance of the LSF, Process Flow,

23   and Smart Office.

24            MS. ALBERT:  If I can address that, I agree that the

25   remaining designations relate to this issue of the Lawson

```
 1    System Foundation, Process Flow, and Smart Office.

 2              THE COURT:  Wait a minute.  Which ones are withdrawn?

 3              MS. ALBERT:  He withdrew the objection --

 4              THE COURT:  Objection withdrawn to what?

 5              MS. ALBERT:  To page 175, lines ten through 12.

 6              THE COURT:  Okay.

 7              MS. ALBERT:  The remaining designations do relate to

 8    these issues of the System Foundation, Process Flow, and Smart

 9    Office.  We will include in our briefing various witness's

10    testimony that relates to the issue, because to a witness,

11    every single Lawson witness that was asked about Lawson's

12    System Foundation testified that it was necessary for the

13    operation of the modules.

14              THE COURT:  So if you are right on the point, general

15    point, that that topic comes in, the testimony comes in.  Do

16    you agree with that?

17              MR. SCHULTZ:  There is one additional objection with

18    respect to the -- this witness -- yes, I agree with that.

19              MS. ALBERT:  And this particular witness, Mr.

20    Tolkmit, is actually the chief technology officer of Lawson,

21    and he does confirm in the designated testimony that this

22    Lawson System Foundation is required to operate the system.

23              THE COURT:  That was two lines of page worth of

24    discussion that comes off your brief.  You're trying to argue

25    something you're going to brief.
```

```
 1              MR. ROBERTSON:  Your Honor, while we're on the topic,
 2    I spoke to Mr. McDonald at break.  As you have probably
 3    discerned by now, Ms. Albert is a very key colleague on this
 4    case.  Her father has been in the hospital, and --
 5              THE COURT:  Do you need to leave?
 6              MS. ALBERT:  My father has been in the hospital for
 7    six weeks, and I was planning to go and visit him at the end of
 8    the week.
 9              MR. ROBERTSON:  So I'd ask for some more time, and
10    Mr. McDonald has agreed --
11              THE COURT:  More time to what; brief?  Sure, you work
12    out a schedule and let me know what it is.
13              MS. ALBERT:  Thank you, Your Honor.
14              THE COURT:  I hope your dad gets better.
15              MS. ALBERT:  Thank you.
16              THE COURT:  I know seeing you will make him feel
17    better.
18              MS. ALBERT:  That's what I hope.
19              THE COURT:  Unless you ask him for money.
20              MS. ALBERT:  I don't have a need to ask my father for
21    any money.
22              THE COURT:  That's never stopped my children.
23              THE CLERK:  What does that have to do with --
24              THE COURT:  By the way, are you up for adoption?
25              MR. MERRITT:  I'll put in first dibs on her.
```

1           THE COURT:  All right, let's see, Yuhasz?  This is

2    two depositions, Yuhasz and Williams.

3           MR. STRAPP:  Yuhasz and Williams were representatives

4    of a company called Novant which is one of Lawson's customers.

5    They sort of did a tag-team deposition where they each spoke to

6    different issues that were raised through the subpoena that was

7    sent by each to Novant.  We're withdrawing several objections,

8    so I'd like to just run through those quickly.  Page 18, lines

9    12 through 23, objection is withdrawn.

10          THE COURT:  That's not even on my list of objections.

11          MR. STRAPP:  Okay.

12          THE COURT:  First objection picks up on 35:1.

13          MR. STRAPP:  Okay.  Well, 35:1 through 36:5, we will

14   withdraw that objection.

15          THE COURT:  Next one is 36:24 to 37:8.

16          MR. STRAPP:  Objection is withdrawn.  Now, on page

17   63, line six through line 25 --

18          THE COURT:  There's no objection listed here.

19          MR. SCHULTZ:  It's an objection from Lawson.

20          MR. STRAPP:  We can save some time.  We're going to

21   withdraw that designation.

22          MR. SCHULTZ:  Okay.

23          THE COURT:  I see where it is.  So testimony

24   withdrawn; right?

25          MR. STRAPP:  Correct.

```
 1              MR. SCHULTZ:  Just to confirm, that's 63:6 through

 2    25?

 3              MR. STRAPP:  That's correct.  Page 91, line nine

 4    through line 15, objection withdrawn.

 5              THE COURT:  I don't even have that on my papers.

 6    It's not on the papers anywhere, so it's withdrawn.  So what

 7    else?  Next one I have is 121:7 through 22.

 8              MR. STRAPP:  I think that Lawson has designated page

 9    99, line 25, through page 101, line 13; is that correct?

10              MR. SCHULTZ:  That is correct.

11              MR. STRAPP:  And --

12              THE COURT:  91 through what?

13              MR. STRAPP:  Page 99, line 25.

14              THE COURT:  99 it is, but not 91.

15              MR. STRAPP:  Line 25 through 101, line 13.

16              THE COURT:  Let me get there.  What are you doing

17    with that?

18              MR. STRAPP:  That's Lawson's objection, so I'll let

19    Lawson...

20              MR. SCHULTZ:  Okay, this line of testimony deals with

21    Exhibit 14 which is in the testimony.  That exhibit is

22    Exhibit 253 that deals with the LSF, the Lawson System

23    Foundation, which the parties are going to do additional

24    briefing on.

25              It is our position that if LSF is not relevant, which
```

1   we do not believe it is, this testimony also is not relevant

2   and should not be --

3           THE COURT:  But if it is relevant, it comes in.

4           MR. SCHULTZ:  Yes.

5           THE COURT:  Do you agree?

6           MR. STRAPP:  I agree generally with respect to the

7   last portion of the designation.  Starting at page 101, line

8   one, through page 101, line 13, the earlier portion of the

9   designation, starting on page 99, line 25, through page 100,

10  line 25, that testimony is generally relevant not just to the

11  LSF issue because it's about the contract that was entered into

12  between Lawson and Novant for the services that Lawson provided

13  Novant including but not limited to LSF.

14          It includes also other software modules at issue in

15  this case.  So we will agree that page 101 comes in and rises

16  and falls with the briefing on LSF, but the remainder should

17  come in regardless.

18          MR. SCHULTZ:  Your Honor, if that's the case with

19  respect to Exhibit 14, which is Plaintiff's Exhibit 253, we'd

20  ask that the plaintiff, Plaintiff's Exhibit 253 be redacted so

21  it does not have the LSF line on it.  If that was the case, we

22  would agree to that testimony being admitted.

23          MR. STRAPP:  We'll have to review the document, but I

24  think that may be acceptable.  Of course, if the decision is

25  LSF is relevant, then the document would come in under that.

1            MR. SCHULTZ:  We agree with that.

2            THE COURT:  What else?  Anything else?

3            MR. STRAPP:  The objection on page 121, line seven

4     through line 16, we will withdraw.

5            THE COURT:  159:25 to 160:21.

6            MR. STRAPP:  Correct.  We'd like to press the

7     objection, and specific to page 16 on line nine through line

8     17, within that designation that was just referenced by Your

9     Honor --

10           THE COURT:  150 what?

11           MR. ROBERTSON:  Page 160, line nine.

12           THE COURT:  That's all you are objecting to now?

13           MR. STRAPP:  Through line 17, correct.

14           THE COURT:  160, line nine?

15           MR. STRAPP:  Line nine through line 17.

16           THE COURT:  That is all you are objecting to?

17           MR. STRAPP:  Correct.  We want to press that

18    objection.  This question and answer, the representative from

19    Lawson's customer is asked about information within a catalog

20    and goes on to testify about his interpretation and

21    understanding of the meaning of catalog.  We believe that

22    that's prejudicial testimony, and it's improper opinion, expert

23    opinion about legal construction of a claim term being offered

24    by a lay witness who is not an expert.

25           THE COURT:  Who is this guy?

1          MR. STRAPP:  He is the logistics director at this

2     company called Novant Health Care in North Carolina, and Novant

3     Health Care is a customer of Lawson's.  He was offered to

4     provide testimony about the Lawson products that are at issue

5     that Novant Health Care licenses from Lawson.

6          MR. SCHULTZ:  This is a witness that works with the

7     Lawson software and has the knowledge with respect to the

8     operations of the Lawson software and what information is

9     inserted into the software and, therefore, the question and

10    answer here is relevant.  It's not unfairly prejudicial because

11    the witness is actually explaining his response.

12         THE COURT:  Well, he's making a legal conclusion

13    about the claim term construction is what he's doing.

14    Objection sustained.  Sounds to me like he's been well-briefed.

15    All right, let's go.  161:23 to 162:21.

16         MR. STRAPP:  Our objection there is only to a

17    specific portion of that designation, from 161, line 23,

18    through 162, line four.

19         THE COURT:  All right.

20         MR. STRAPP:  The objection is along the same lines as

21    the previous objection.  The lay witness here is offering an

22    opinion about a term that has loaded meaning because it's a

23    claim term.  Catalogs being loaded or imported into an item

24    master is an issue in dispute between the parties.  It goes to

25    the infringement by Lawson that's alleged by ePlus, and the

1   ultimate conclusion is stated here by a lay witness which we

2   believe would be prejudicial if it was played to the jury.

3           MR. SCHULTZ:  This witness is being asked about

4   supplier catalogs as they are used, as the term is being used

5   in its ordinary sense and ordinary meaning.  There's no other

6   way to ask the question by using those terms.  It would be very

7   prejudicial for Lawson to not be able to ask the question to

8   get a negative response that is not being done on this system.

9           THE COURT:  Why can't he ask him that?

10          MR. STRAPP:  Well, we believe --

11          THE COURT:  That's a far different issue than the

12  previous question.

13          MR. STRAPP:  We believe that the question as phrased

14  is really implicit and pregnant with all sorts of important

15  legal meaning that the witness may or may not have been aware

16  of or may or may not have been prepared for, but the ultimate

17  result of having that question and answer played is unduly

18  prejudicial.  It may be relevant, but that relevance is

19  outweighed by the prejudice to ePlus.

20          THE COURT:  Is it ever shown that he understands what

21  the term catalog means?

22          MR. STRAPP:  Well, he offered opinions, like we just

23  saw --

24          THE COURT:  No, did he understand what it meant as

25  the Court defined it?

1          MR. STRAPP:  I don't believe that he was aware of the

2     Court's claim construction or aware of the patents at issue in

3     this case.

4          MR. SCHULTZ:  Point of clarification is that Mr.

5     Yuhasz is a third-party witness who had his own attorney.

6     There was no preparation by Lawson in connection with this.

7     This is a question that the witness had no familiarity with the

8     claim term.  This is a question --

9          THE COURT:  What does that have to do with this?

10         MR. SCHULTZ:  It's a question and answer that is

11    based on the ordinary meaning of the term.

12         MR. STRAPP:  In a patent case, obviously there's a

13    special significance to words --

14         THE COURT:  What was the defined term that we're

15    talking about?  What did the Markman opinion define?

16         MR. STRAPP:  The term is catalog, and Your Honor

17    defined that term in an opinion dated April 30th, 2010, to

18    mean --

19         MR. ROBERTSON:  An organized collection of items and

20    associated information published by a vendor which includes

21    suppliers, manufacturers, and distributors which preferably

22    includes a part number, price, catalog number, vendor name,

23    vendor ID, textual description of the item, and images of or

24    relating to the item.

25         THE COURT:  Was he shown that definition?

1           MR. STRAPP:  He was not shown that definition.

2           THE COURT:  I believe if he wasn't talking about the

3     term as defined, it can be confusing and call for the injection

4     of other evidence and delay and can cause confusion.  The

5     objection is sustained under 403 grounds.  165:12 to 18.

6           MR. STRAPP:  This is a similar issue here.  One of

7     the terms in the patent calls for searching for selected

8     matching items.  Now, here the witness is testifying about

9     whether or not when a search is done through the Lawson

10    software, the search is over the entire item master, and he

11    answered that what's searched is the entire item master.

12          Now, why that's relevant is because there's an issue

13    in dispute about whether or not in the Lawson software it

14    operates such that it meets the claim element of searching for

15    selected matching items.

16          THE COURT:  I think you all are out-thinking an owl

17    on that one.  He's just describing what he does with what he's

18    bought, and I think he can testify to that.  You are three or

19    four steps removed from the direct issue you are talking about,

20    and the objection is overruled.  165:25 to 166:7.

21          MR. STRAPP:  Again, here the question is about a

22    claim term.  The claim term is generally equivalent, whether or

23    not when Lawson software is searched, one can determine whether

24    the search results --

25          THE COURT:  He says I don't know.  If he doesn't know

1    the answer to something, why is that even admissible?

2           MR. STRAPP:  That's -- we believe it's inadmissible

3    under Rule 602.

4           THE COURT:  It's inadmissible because it doesn't mean

5    anything.  Objection sustained.  Was the light green or red?  I

6    don't know.  Do you think you can get that in?  What are you

7    talking about?

8           MR. SCHULTZ:  Your Honor, that is the last objection

9    with respect to this witness.  However, based on your rulings

10   with respect to catalog, the term catalog was used in other

11   portions of the deposition designation.

12          THE COURT:  Let me see it.  You all have gone too

13   far.  You've fallen into the trap that just because someone

14   mentions a catalog, that it calls for a claim construction.  It

15   doesn't necessarily mean that.

16          MR. SCHULTZ:  It's calling for the exact same type of

17   description that was objected to --

18          THE COURT:  In the one question I ruled on.

19          MR. SCHULTZ:  That's correct, because that testimony

20   related back to the previous testimony that ePlus has

21   designated.

22          THE COURT:  All right, so what are you doing,

23   withdrawing -- objection sustained by virtue of a previous

24   ruling or what?  Which one?

25          MR. SCHULTZ:  What I think we need to do is based on

```
 1    your rulings on the term catalog on the designation from

 2    Lawson, that we go back through this, go back through the

 3    designation and, for fairness, take a look at the other

 4    designations that ePlus did with respect to catalog and come

 5    back before Your Honor.

 6              MR. STRAPP:  Your Honor, both parties had fair and

 7    full opportunity, over a course of two to three months, to work

 8    out designations, work out objections.  Lawson shouldn't be

 9    heard to get a second bite at the apple because it doesn't like

10    one of the rulings on a particular question and answer and go

11    back and redesignate or ask for new objections to be heard by

12    Your Honor.

13              THE COURT:  We're not going to do that.  All right,

14    Ms. Cimino we've already done; right?

15              MR. STRAPP:  That's correct.

16              THE COURT:  That's all of them but catalog in this

17    Fielder-McEneny.  How many others have you got?

18              MS. STOLL-DeBELL:  Your Honor, there's a big, long

19    list of them.  What I would propose is that we go back through

20    and look at the questions about catalog, try and reach

21    agreement on them, and if we can't, have it addressed.  I have

22    probably 15 here that involve catalog in one way or another,

23    and I think in light of the rulings that you've made, I would

24    like more time to go back through and see which of those --

25              THE COURT:  Let's take some of them, a couple of them
```

```
 1    and see -- maybe get some definition.  What is the next one?

 2              MR. ROBERTSON:  Your Honor, we were at --

 3              THE COURT:  161:5 to nine.

 4              MR. ROBERTSON:  I believe we skipped over -- well, we

 5    were going through at the time, and some were being identified,

 6    so is that where you want to start up again?  That's fine.

 7              MS. STOLL-DeBELL:  I think we left off at page 154,

 8    line 13, but that doesn't relate to catalogs, but we didn't

 9    deal with that.  So I don't know if we should go through the

10    catalog ones or we should just start back where we left off.

11              MR. ROBERTSON:  My memory was we left off at 154,

12    line two.

13              THE COURT:  Two through four.  Then you said the rest

14    of them were sustained because of the previous ruling.  So

15    let's take 154:13 through 18.

16              MS. STOLL-DeBELL:  Your Honor, I don't think that's

17    true.  I think that some of the remainder of the objected

18    testimony relating to the objection based on 702 relates to

19    catalog and some of it doesn't.  So it seems to me the most

20    efficient way is just to start going through them starting at

21    line --

22              MR. ROBERTSON:  There are other claim terms that are

23    raised in the context of a lot of these questions and --

24              THE COURT:  I'm just taking the next one in order,

25    164:13 to 18.
```

1          MR. ROBERTSON:  Well, I have one at 154:2 to four,

2    Your Honor, did PO Writer have an electronic --

3          THE COURT:  I already sustained that one according to

4    you all.

5          MS. STOLL-DeBELL:  You withdrew it.

6          MR. ROBERTSON:  I don't recall you sustaining that

7    one.  I was going to withdraw that.  I think you sustained the

8    one right above it.

9          MS. STOLL-DeBELL:  Yes.

10         MR. ROBERTSON:  Electronic database is a claim term

11   in one of the claims, Your Honor, but I think that one is so

12   commonly well known that Ms. Fielder could say that she had a

13   system with an electronic database.

14         THE COURT:  Objection withdrawn.  Is that what you

15   say?

16         MR. ROBERTSON:  Yes, sir.

17         THE COURT:  154:13 to 18.

18         MR. ROBERTSON:  Your Honor, this is a fragment of

19   your claim construction that they are asking Ms. Fielder to

20   confirm.

21         MS. STOLL-DeBELL:  I believe the question is your

22   definition of electronic sourcing system.  I think in its

23   entirety --

24         THE COURT:  Wait a minute.  "Question:  Is it

25   accurate to say that PO Writer product was an electronic system

1    for use by a prospective buyer to locate and find items to

2    purchase from sources, suppliers, vendors or not?

3            Yes."

4            Is that what you are objecting to?

5            MR. ROBERTSON:  They are asking her to apply the

6    Court's claim construction to a product.  This calls for

7    classic expert testimony.  She's not qualified as an expert.

8    She has a background in marketing.  In fact, a lot of these

9    questions, I don't understand why they need Ms. Fielder because

10   they are calling Dr. Shamos to testify as to what the PO Writer

11   did.

12           So why ask a lay witness to draw legal conclusions

13   when you have an expert, technical expert that they're going to

14   be asking the same questions to, but this is part of the claim

15   construction that Your Honor gave, so what they are saying is,

16   draw a legal conclusion and tell us whether or not it satisfies

17   a patent term construed by Judge Payne.

18           THE COURT:  No, they're saying does the product --

19   you, witness, does the product meet this definition or does it

20   do these things.

21           MR. ROBERTSON:  It's a fragment of the claim

22   construction, too, Your Honor, which is also why it's

23   prejudicial.  It's not even complete.

24           THE COURT:  Well, then, it's not a claim

25   construction.  It's just a question about some of the

1    functions.  But is it an expert question is the issue.

2           MS. STOLL-DeBELL:  No.  It's asking her what her

3    system was.  Was it this, she said, yes, it was.  That's not an

4    expert opinion.  It's a fact about what her system was.  Your

5    Honor --

6           THE COURT:  That's only part of the claim term, I

7    think, isn't it?

8           MR. ROBERTSON:  It's part of the construction.

9           THE COURT:  I mean, but it's part of a construed

10   claim.

11          MR. ROBERTSON:  Yes.

12          THE COURT:  But it's not the whole term.

13          MS. STOLL-DeBELL:  What's missing, because it looks

14   complete to me.

15          THE COURT:  What was the term that you say it was a

16   part of?

17          MR. ROBERTSON:  Electronic sourcing system claim term

18   that's asked --

19          THE COURT:  Read what the definition is.

20          MR. ROBERTSON:  Brief indulgence, Your Honor.  I need

21   to find it.  Does electronic sourcing system mean electronic

22   system for use by a prospective buyer to locate and find items

23   to purchase from sources, suppliers, or vendors.

24          THE COURT:  Well, what this question says, is for use

25   by prospective buyer to locate and find buyers, not items but

1    buyers.

2            MS. STOLL-DeBELL:  I think that's a mistake, Your

3    Honor.

4            THE COURT:  Well, it may be, but that's a fairly

5    substantive mistake.  It hasn't been corrected.  It's kind of a

6    nonsensical question to me.  I believe you better put that dog

7    back in the kennel.

8            MS. STOLL-DeBELL:  Okay.  We'll withdraw it.

9            THE COURT:  Let's see.  That's 154:13, testimony

10   withdrawn.

11           MS. STOLL-DeBELL:  13 through 18, right.

12           THE COURT:  13 through 18.  See, what I'm saying is,

13   we got into a lot of these here because you said it was covered

14   by the objection, I mean by the ruling, and I'm not sure it was

15   after listening to you all talk about things, so we're going to

16   have to go through these one at a time and deal with them.  So

17   I'm striking these rulings that I've written in here because I

18   don't know whether they were or not.

19           MS. STOLL-DeBELL:  I agree, Your Honor.

20           THE COURT:  But a careful reading of that question

21   beforehand, all it would have said, oh, well, look, that's a

22   bad question, bad answer, doesn't have anything to do with the

23   case, out, goodbye.  That's the way that ought to have been

24   resolved instead of fighting over everything.

25           You can't go back and correct it.  That's a fairly

1    substantive correction.  You can't go back and correct that

2    now, particularly now that it's been the subject of litigation,

3    so the right to correct it is quite limited in any event, but

4    it can't be done now.  So it was -- it's a question that's just

5    inappropriately worded.  Let's go.  154:24 to 155:1.

6            MR. ROBERTSON:  This is one we think the question, is

7    it accurate to say that the PO Writer manual discloses a

8    collection of catalog of items stored in an electronic format

9    or not, I mean, that obviously invokes the catalogs and, you

10   know, again, is ripe with meaning as to whether or not that

11   corresponds to the Court's construction, and we think that

12   would be the subject of expert testimony and would be unduly

13   prejudicial and will be the subject of expert testimony

14   apparently from Dr. Shamos.

15           So this witness doesn't need to --

16           THE COURT:  Was she shown the Court's construction?

17           MS. STOLL-DeBELL:  No.

18           THE COURT:  You all are the ones who insisted that

19   the term be defined, and now you call for a definition of it.

20   You have to use the definition in asking questions.  It seems

21   to me that a definition of catalog that does not comport with

22   the Court's construction of it presents great -- is fraught

23   with confusion for the jury unless it's shown the witness was

24   answering as to the catalog definition given by the Court, and

25   if she's giving a definition of catalog as called for by the

```
 1    claim construction, she may or may have not be giving expert

 2    testimony, but I think it comes out on 403 grounds in that

 3    particular question.  So the objection is sustained on 154:24.

 4             All right, now, I've got to have the testimony and

 5    hearing in a criminal case now.  That shouldn't take more than

 6    an hour.  Maybe you can sort this out.

 7

 8             (Recess taken.)

 9

10             THE COURT:  All right.  Let us resume our joyful

11    activities.

12             MR. ROBERTSON:  Judge, if I might, we thank you for

13    the time that you provided us because we think we've been able

14    to resolve all of the issues with respect to the McEneny

15    deposition that are outstanding, and we're prepared to go

16    through that and indicate which objections are withdrawn or

17    which testimony is withdrawn.

18             What we discussed during the break was essentially

19    what the Court was getting to, is that context on a lot of

20    these things is everything.  The concern I was having and that

21    I was articulating to the Court was when a witness was being

22    asked a question that would pertain to specific claim language

23    of which they were unaware, of which they were not qualified to

24    give an expert opinion.

25             But the situation is, many of the terms like catalog,
```

1    for example, is used in the colloquial sense, is used in its

2    ordinary meaning, and is used in the context of a lot of things

3    going on, both with the alleged prior art and the accused

4    infringing system.

5          One of the things we were thinking of suggesting to

6    Your Honor was that we come up with some sort of cautionary

7    instruction.  I would assume that Your Honor has a preliminary

8    instruction that talks about expert witnesses and fact

9    witnesses and what they can testify to and how experts can give

10   opinions.

11         THE COURT:  I don't do those preliminarily.  I can do

12   something like that preliminarily, but I usually do that in the

13   final charge, but if you want me to elevate it to the front, I

14   can elevate.  I can do something like that.  That's not -- it's

15   very simple to do.

16         MR. ROBERTSON:  Well, Mr. McDonald and I were working

17   on some language.

18         THE COURT:  I'll be glad to see your language.

19         MR. ROBERTSON:  In particular for, say, a Ms.

20   Fielder, it might be appropriate to indicate that during the

21   course of her testimony, she may be using terms in their

22   ordinary sense that could be claim terms, but she is not using

23   them in the sense that the Court has construed these terms for

24   purposes of this case and that she's not offering opinions or

25   testifying with respect to that construction, that there will

```
 1    be experts who will be utilizing the Court's claim construction

 2    and be able to apply those claim terms to either the prior art

 3    or the accused infringing products.

 4            With that, I think I can live with a lot of the

 5    discussion about catalogs in here.  There were a few that I

 6    thought got a little too close to claim language, and those

 7    questions and answers have been withdrawn.  So we think we can

 8    march through Ms. McEneny's --

 9            THE COURT:  March.  Forward, hut.  Left, right, left,

10    right, left.

11            MR. McDONALD:  Ms. Stoll-DeBell is the lead majorette

12    on this one.

13            THE COURT:  No, no, no.  That's a drill sergeant.

14    That's not any majorette.

15            MS. STOLL-DeBELL:  Okay, so I think we left off at

16    page 155, line four.

17            THE COURT:  That's right.

18            MS. STOLL-DeBELL:  And the objection to lines four

19    through nine has been withdrawn.

20            THE COURT:  All right.

21            MS. STOLL-DeBELL:  The objection to lines ten through

22    14 on that same page have been withdrawn.

23            THE COURT:  Okay.

24            MS. STOLL-DeBELL:  Then the objections at page 155,

25    line 23, through 156, line 15 have been withdrawn.
```

```
 1              THE COURT:  Objections or testimony?

 2              MS. STOLL-DeBELL:  Objections.

 3              THE COURT:  They are withdrawn subject to the -- all

 4    these are withdrawn subject to working out the appropriate

 5    language that you all are going to be charged with doing; is

 6    that right?

 7              MR. ROBERTSON:  Yes, sir, that was the understanding.

 8              THE COURT:  Okay.  All right, 156:16.

 9              MS. STOLL-DeBELL:  That has been withdrawn, the

10    objection.  I'm sorry.  The objection has been withdrawn.

11              THE COURT:  Okay.

12              MS. STOLL-DeBELL:  And then the next one starts at

13    page 157, line five.  The objection has been withdrawn.  We go

14    to page 157, line 17, the objection has been withdrawn.  The

15    next one starts at page 158, line eight, and goes to 160, line

16    seven.

17              This, Your Honor, relates to -- it's either DX-121 or

18    122.  It's one of those PO Writer manuals that we're briefing

19    on the issue of Rule 106.  What we would like do with that is

20    hold this objection and testimony until we get a ruling on that

21    issue.

22              THE COURT:  Okay.

23              MS. STOLL-DeBELL:  The next one I have is page 160,

24    line 22.

25              THE COURT:  All right.
```

1          MS. STOLL-DeBELL:  The objection has been withdrawn.

2          THE COURT:  Okay.

3          MS. STOLL-DeBELL:  The next one is page 161, line

4     one.  I think the objection has been withdrawn on this.

5          THE COURT:  Let's go.

6          MS. STOLL-DeBELL:  Next one is page 161, line five.

7     The objection has been withdrawn.  The next one is 161, line

8     16.  The objection has been withdrawn.  The next one is page

9     162, line 16.  The objection has been withdrawn.  The next one

10    is page 163, line six.

11         THE COURT:  I have 162:22 through 25.  Is that out?

12         MS. STOLL-DeBELL:  I think the objection has been

13    withdrawn.

14         THE COURT:  Okay.  163:1 through five?

15         MS. STOLL-DeBELL:  I think that was part of the

16    earlier one, the objection has been withdrawn.

17         THE COURT:  Okay.

18         MS. STOLL-DeBELL:  Then we go to 163, line six.  The

19    objection has been withdrawn.

20         THE COURT:  Okay.

21         MS. STOLL-DeBELL:  Then we go to page 164, line 11,

22    and that one goes all the way to 165, line 17.  The objection

23    has been withdrawn.

24         Now, the next one we're withdrawing testimony, and

25    that starts at page 165, line 18, through 166, line seven.

1      Again, that's testimony being withdrawn.

2              THE COURT:  Right.

3              MS. STOLL-DeBELL:  The next one was an objection to

4      lines eight through ten.  The objection is withdrawn there.

5              THE COURT:  Okay.

6              MS. STOLL-DeBELL:  So then that takes us to page 171,

7      and the objection as to lines two through ten is withdrawn, and

8      then the testimony from lines 11 to 14 is withdrawn, and then

9      the objections from lines 15 through 18 is withdrawn.

10             Then we go to page 171, line 21.  The objection to

11     that is withdrawn, and I believe that goes all the way to page

12     173, line one.  Then page 173, line 11, the objection is

13     withdrawn.  Page 174, line one, which goes down to page 176,

14     line one, the objection is withdrawn.

15             Okay, page 176, line two, and that one goes all the

16     way to page 179, line 25.  The objection is withdrawn.  Page

17     180, line one, through page 181, line 15, the objection is

18     withdrawn.  Page 181, line 16, through 182, line 20, the

19     objection is withdrawn.

20             Then we're going to go from page 182, line 21, to

21     page 183, line five, the objection is withdrawn, but then at

22     page 183, line six, through page 184, line eight, the testimony

23     is withdrawn.

24             THE COURT:  183, line six through what?

25             MS. STOLL-DeBELL:  Six through page 184, line eight.

```
 1            MR. ROBERTSON:  I'm sorry.  183, line six through --

 2            MS. STOLL-DeBELL:  184, line eight, the testimony is

 3   withdrawn.

 4            THE COURT:  Picks up the next entry.

 5            MS. STOLL-DeBELL:  Right, and that starts at 184,

 6   line nine, to page 185, line three, the objection is withdrawn,

 7   and then the testimony from line four through six is withdrawn.

 8            Then the next entry I have is page 185, line seven.

 9   The testimony there is withdrawn from line seven to line 13.

10   Then from line 14 to 19, the objection is withdrawn which takes

11   me next to page 186, line two.  We're withdrawing the testimony

12   from line two to line 12.  Then we start at page 186, line 18,

13   through 187, line seven, the objection is withdrawn.  Then

14   starting at line eight through line 17, the testimony is

15   withdrawn.  Then we go to page 187 --

16            THE COURT:  189 or 187?

17            MS. STOLL-DeBELL:  187.

18            THE COURT:  187, line nine, through 17 is withdrawn.

19            MS. STOLL-DeBELL:  Eight through 17, the testimony is

20   withdrawn.

21            THE COURT:  Okay.

22            MS. STOLL-DeBELL:  Then page 187, line 18, through

23   188, line 13, the testimony is withdrawn.

24            THE COURT:  Okay.

25            MS. STOLL-DeBELL:  Page 188, line 19, through 189,
```

1    seven, the objection is withdrawn.  Then I start at page 191,

2    line 14, through 193, line one, the testimony is withdrawn.  I

3    think this is the last one, Your Honor.  Line -- or page 204,

4    line 22, through 205, line 20, the objection is withdrawn.

5              THE COURT:  Okay.

6              MS. STOLL-DeBELL:  I think that takes care of it.

7              THE COURT:  All right.

8              MR. McDONALD:  Your Honor, with that agreement, we

9    reached a limiting instruction.  This ruling relating to some

10   of the claim-related questions, I guess I'll call it, we had

11   some of those with respect to some of these customer

12   depositions as well, so I think we'd like a chance to maybe, at

13   some other point here in time --

14             THE COURT:  If you can work it out in a way that's

15   suitable to you all, I'm amenable to doing it.

16             MR. McDONALD:  Appreciate that.  Thank you.

17             THE COURT:  I certainly encourage that.  What I'm

18   going to do, I did the Cimino deposition from this notebook,

19   and I'm going to use it, and I'm going to put all these

20   together, and then a copy of this will be available to you all

21   so you'll have a copy with my handwritten annotations on these

22   rulings.

23             You'll also, I assume, get the transcript so we won't

24   have any misunderstanding, because the court reporter is

25   generally far more accurate than am I.  So I assume you're

1    going to order a transcript of the final pretrial conference,

2    so you'll get that; is that right?

3          MR. McDONALD:  That's correct.

4          THE COURT:  All right, so that's good.  Does that

5    take care of what we have to do on the final pretrial order, or

6    is there anything else we have to do?

7          MR. ROBERTSON:  Judge, we also talked on the break

8    about a couple other housekeeping issues that maybe we should

9    probably raise with you, maybe not resolve them, but just to

10    alert the Court.

11          One is we picked up, I think, another maybe two

12    additional briefs, and we were hoping and we had worked out a

13    schedule among counsel, of course subject to the Court's

14    indulgence, and we were hoping that we --

15          THE COURT:  Give it to me and tell me what it is, and

16    I'm willing to be reasonable about anything that you all are in

17    agreement with, but we need to know it, and I'd like to get it

18    in an order just so we get it done.

19          MR. McDONALD:  Your Honor, on all the issues that

20    were identified for briefing, the opening brief would be due

21    Monday, October 18th, the opposing brief due, I believe it's

22    Thursday, October 28th, and the reply brief would be due

23    Thursday, November 4th is what we're proposing.

24          THE COURT:  That's fine with me.  What I want you to

25    do is do an agreed order that you can get over here that has

1    the topics and the dates in them, and just so there isn't any

2    misunderstanding, let's make sure that you identify who has got

3    the burden so who goes first so that we know -- at least we

4    don't have any misunderstanding and later have to wrestle with

5    it.  Any other housekeeping to do?

6            MR. ROBERTSON:  Your Honor, there were some

7    preliminary instructions that we were concerned about with

8    respect to the fact that the jury is going to be getting three

9    patents with 79 claims.  Only 12 are going to be at issue.

10           We don't want there to be any confusion as to why

11   there was only 12.  Sometimes they might infer something is

12   happening --

13           THE COURT:  They're going to get what, you say?

14           MR. ROBERTSON:  We were hoping to get a preliminary

15   instruction or something, a statement by the Court to let the

16   jury know why only 12 representative claims are at issue

17   instead of 79.  I've been in situations where the jury --

18           THE COURT:  Why do I need to even do that, because

19   you all can frame that issue -- they're not going to get the

20   complaint in this case, because the changes are significant

21   from the complaint, aren't they?

22           MR. ROBERTSON:  No, but they will get the patents,

23   Your Honor, and all 79 claims will be in the patents.  So there

24   could be confusion in the jury room -- many of the claims are

25   similar in scope.

```
1              THE COURT:  Yes, they are.
2              MR. ROBERTSON:  So there may be some confusion as to
3       why is this claim being asserted and this one is not.
4              THE COURT:  Draft an instruction, let me see it.
5              MR. ROBERTSON:  The only other issue I wanted to
6       raise, Your Honor, is I would assume there'd be no argument or
7       reference made to the fact that ePlus's damages case was
8       stricken during --
9              THE COURT:  There won't be.
10             MR. ROBERTSON:  With that, the only other suggestion
11      we had discussed was, the case has changed in scope somewhat,
12      and so should it be resolved, it could impact on jury
13      instructions.  We've already submitted the instructions.  We
14      were going to suggest, if we agreed to another date, to submit
15      revised jury instructions significantly in advance of the trial
16      so as to not inconvenience the Court but also reflect what's
17      now transpired.
18             THE COURT:  That's fine.  They need to be here no
19      later than early November.
20             MR. ROBERTSON:  All right, Your Honor.  Thank you.
21             MR. McDONALD:  Your Honor, Mr. Robertson covered all
22      the issues we had discussed.  I just wanted to ask a question,
23      actually, because yesterday you mentioned something about
24      taking another look at the reexam issue.
25             THE COURT:  I had another note here.  You kept
```

1     raising, in connection with some issue that I was ruling on,

2     about the reexaminations, and I thought that the way I ruled

3     eliminated -- would eliminate any reference to the issue of

4     reexaminations, but as I was reflecting on it, I'm not sure

5     that I really addressed what you were talking about, and so I

6     felt like I needed to understand what you were talking about

7     and to address it if I need to address it.

8            MR. McDONALD:  Maybe what makes sense, Your Honor, is

9     to address it in the context of the briefing we're going to do

10    on the jury trial issue, because I think that's probably where

11    it's going to fit into the context, and we can explain, get you

12    some case law on the issues here of why the reexam is so

13    relevant to the attorneys' fees decision for the Court and/or

14    willfulness.

15           MR. ROBERTSON:  Your Honor, this was fully briefed

16    already in the motion *in limine*, particularly with respect to

17    willfulness, and we responded, and the Court's order addressed

18    all the reasons that they wanted to offer the reexams.  I have

19    the brief for you.

20           THE COURT:  I guess my question is, has something

21    else happened that I didn't know about when I made the ruling?

22           MR. ROBERTSON:  I think it came up in the context of

23    whether we were entitled to a jury trial on the willfulness

24    issue, Your Honor, but I don't think how that impacts --

25           THE COURT:  No, since I ruled on the motion *in*

1    *limine*.

2         MR. ROBERTSON:  I know of no other event other than

3    his argument that's now been raised with respect to whether we

4    get a jury trial on the willfulness issue.

5         MR. McDONALD:  The intervening event was the damages

6    case coming out, and then willfulness would ordinarily be

7    relevant to a decision to increase damages up to treble is now

8    not an issue anymore, so what is the implication and ripple

9    effect of that.  That, I think, is the new question.

10        MR. ROBERTSON:  The only suggestion I would have,

11   Your Honor, is that we agree that any enhanced damages or

12   attorneys' fees, which are also available in an exceptional

13   case, would be considered and granted if they are granted by

14   the Court, and --

15        THE COURT:  You are both in agreement that's how it

16   happens; right?  The Court decides that; right?

17        MR. McDONALD:  Right.

18        MR. ROBERTSON:  So I would think at that time, if the

19   reexams were relevant, and I still maintain they are not, then

20   we could avoid any jury confusion and any prejudice to ePlus,

21   and the Court could address those in the context of whether it

22   was going to provide attorneys' fees to ePlus if we prevailed.

23   That way, we still avoid the jury confusion and delay that the

24   Court was concerned about and the prejudice to ePlus, but we

25   can consider it at a later date if Your Honor, and I hope Your

1    Honor is granting enhanced -- excuse me, attorneys' fees.

2          MR. McDONALD:  I think the context here was what do

3    the parties have a right to a jury and what don't they, and

4    what do we agree and what don't we, and what we agreed was

5    infringement and validity can still go to the jury, but there's

6    still a serious issue as to whether there is a right to a jury

7    or whether it's only by agreement and also a serious question

8    given that damages is out of the case whether there would be a

9    right to a jury specifically on a finding that's now only

10   relevant to the Court's decision in its discretion in an

11   exceptional case to grant fees.  That's --

12         THE COURT:  You mean on the issue of willfulness.

13   They say they are entitled to an issue -- excuse me, jury trial

14   on willfulness; right?

15         MR. ROBERTSON:  Yes, sir.

16         THE COURT:  They don't agree.  You don't agree.

17         MR. McDONALD:  That's right.

18         THE COURT:  So this comes up in respect of how we

19   deal with the jury trial on willfulness; right?  Is that how it

20   shapes up?

21         MR. ROBERTSON:  I would respectfully suggest it

22   doesn't shake out that way because if we have a jury, we should

23   have the reexams out.  If we don't have a jury out on the

24   willfulness issue, why would the reexams need to be considered

25   at all?

```
 1             THE COURT:  No, no, no.  That's not what I'm saying.
 2    I'm trying to frame where this -- you all are ahead of me in
 3    thinking, I think.  The whole issue of the -- the issue that
 4    we're going to have briefing on is whether you get a jury trial
 5    on willfulness; right?
 6             MR. ROBERTSON:  Yes, sir.
 7             THE COURT:  And Mr. McDonald is saying that the
 8    reexams have -- evidence respecting reexamination has a role in
 9    the determination of willfulness; right?
10             MR. McDONALD:  Yes.
11             THE COURT:  And that role, as I understand it,
12    would -- the role to be played in the calculus as to the
13    existence vel non of willfulness insofar as the reexams is
14    concerned would start only when the Patent Office issued its
15    opinion saying the patents weren't valid on the reexam; isn't
16    that right?  In other words, it wouldn't reach back into
17    willfulness.  It would start -- in other words, that issue --
18    let's put it this way:  The evidence of the reexams as to
19    willfulness would be probative only of whether you were acting
20    willfully from the time the Patent Office said no, no, the
21    patents weren't any good; isn't that correct, or am I
22    incorrect?
23             MR. McDONALD:  You are incorrect because the test is
24    a two-part test.  One has to do with the subjective intent of a
25    party, and that, I would agree it's relevant there, but I think
```

1    the case law does indicate that on the objective prong of

2    willfulness, facts that come out later that indicate a

3    substantial defense, either to invalidity or infringement, can

4    meet that objective criteria of objective good-faith defenses

5    and, in effect, do that retroactively as well, and --

6          THE COURT:  I realize that some of the law says that

7    there are certain instances when after-the-fact events are

8    probative of willfulness, but my recollection is that that is a

9    very limited species of reach-back, but I haven't dealt with it

10   in a long time, so you just raise it as part of your brief, but

11   brief it as a separate point.

12         MR. McDONALD:  Okay, thank you.

13         MR. ROBERTSON:  My last point, Your Honor, is it was

14   briefed.  The issue of willfulness was raised with respect to

15   relevancy of the reexamination.  The Court ruled on this

16   already.  Nothing has really changed because we are in a

17   situation before where we had a jury trial on willfulness.  It

18   was not even disputed, and the reexaminations weren't coming

19   in.

20         Now the only thing that's at issue is whether we get

21   a jury trial on this willfulness or not.  So the analysis

22   shouldn't change.

23         THE COURT:  Your brief is going to be very short

24   then, isn't it --

25         MR. ROBERTSON:  I'm going to cite to the Court's

```
 1    order --
 2              THE COURT:  -- on that point.
 3              MR. SCHULTZ:  Your Honor, there's one additional
 4    thing that the parties have agreed upon dealing with appendices
 5    eight and 12.
 6              THE COURT:  For the pretrial order?
 7              MR. SCHULTZ:  That's correct.  Appendix eight deals
 8    with ePlus's designation of interrogatory responses from
 9    Lawson, and the parties have agreed that ePlus will withdraw
10    its designation of interrogatory number ten based on the
11    Court's ruling on damages.
12              MR. STRAPP:  Your Honor, let me put a slight gloss on
13    that.  ePlus is only withdrawing it in light of the Court's
14    objection.  ePlus doesn't agree that this isn't relevant, but
15    in light of the Court's rulings on damages, ePlus will withdraw
16    interrogatory number ten.
17              MR. SCHULTZ:  And, also, ePlus is withdrawing --
18              THE COURT:  Wait a minute.  That's in number eight.
19    All of ten is nothing but -- all of the appendix is five pages
20    having to do with interrogatory number ten.  Pages two through
21    five are withdrawn.
22              MS. STOLL-DeBELL:  Your Honor, if you wouldn't mind,
23    I'd like to try to catch a flight.  I'm going to leave.
24              THE COURT:  Drive carefully.
25              MS. STOLL-DeBELL:  Thank you.
```

1              THE COURT:  Two through five are withdrawn, and on

2       the record, they are withdrawn because of the ruling on

3       damages.

4              MR. STRAPP:  They are not voluntarily withdrawn.

5       They are withdrawn in light of the Court's ruling.

6              THE COURT:  They're withdrawn because they're

7       governed by virtue of the order.

8              MR. STRAPP:  Correct.

9              THE COURT:  You are not waiving anything.

10             MR. STRAPP:  Correct.

11             THE COURT:  I'll just say covered by ruling on

12      damages.

13             MR. ROBERTSON:  Unless the Court wants to reconsider

14      that, Your Honor.

15             THE COURT:  Do you have any new cases on *Daubert* and

16      damages that I ought to look at before I write my opinion?  Has

17      something come up?  I thought maybe you were saying that

18      because something has come up and if the law has changed after

19      I issued an opinion, I need to be mindful of it, and I don't

20      want to put you or the Court of Appeals through any unnecessary

21      exercises.

22             MR. ROBERTSON:  I'll certainly take another look,

23      Your Honor.  The only other issue we thought was now that we

24      had a little bit more time prior to trial, we might be able to

25      have limited discovery with respect to damages, perhaps produce

1    some new reports and -- for both sides, and move forward with

2    the damages case since part of the --

3             THE COURT:  I think that dealing with that after a

4    long day like this is not the proper procedural construct in

5    which to raise it.

6             MR. ROBERTSON:  I understand, Your Honor.

7             THE COURT:  There are constructs in which things can

8    be raised any time they need to be raised or it's appropriate

9    to raise them, and I'm sure you're aware of that.  Okay,

10   appendix eight I've modified.

11            MR. SCHULTZ:  Also in appendix eight is interrogatory

12   number 24, and in light of the Court's ruling with respect to

13   damages, ePlus is withdrawing the reference to interrogatory

14   number ten which is on page ten of the appendix.

15            MR. STRAPP:  We will redact that particular

16   designation so that it does not refer back to interrogatory

17   number ten.

18            THE COURT:  All right.

19            MR. STRAPP:  Preserving, of course, our objection.

20            MR. SCHULTZ:  That is on pages ten and 11.  I

21   misspoke.

22            THE COURT:  All right.

23            MR. SCHULTZ:  That's all we have on appendix eight.

24   We also have -- Lawson will withdraw interrogatory number 21

25   that is listed in appendix 12.

```
1              THE COURT:  What page?

2              MR. STRAPP:  Page three.  Page three of appendix 12.

3              THE COURT:  Number 21, you are withdrawing the whole

4    thing?

5              MR. SCHULTZ:  Correct.

6              THE COURT:  Why is this?

7              MR. SCHULTZ:  It deals with marketing, and based on

8    the ruling with respect to damages, Lawson is withdrawing it.

9              THE COURT:  All right.  I thank you all very much.

10   Just so you understand, I want to be finished with everything

11   that I have to do in this case by the 14th of December.  I

12   don't want to have anything to do with it between the 14th of

13   December and the 4th of January.

14             I think -- we have made a lot of progress today, and

15   I think the progress in the last two days that's been made is

16   because of a more cooperative spirit that I've seen, and I

17   appreciate that very much.  So I'll see -- I guess we don't

18   need to do anything else.  I'll get what I'm going to get from

19   you and wish you well, and have a nice flight back wherever

20   you're going, or drive.

21

22                       (End of proceedings.)

23

24

25
```

1

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6

7     _____/s/_____          _____

      P. E. Peterson, RPR                    Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25