# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |

**REPORT OF EXPERT MICHAEL I. SHAMOS, PH.D, J.D.**
<u>**CONCERNING INVALIDITY**</u>

.

criteria, and these are not recited in the claim. It cannot be determined what it means for two items to "match."

96. Claims 26 and 28 of the '683 Patent recites a first step of "maintaining at least two products catalogs on a database containing data relating to items associated with the respective sources." The term "the respective sources" has no antecedent basis and is indefinite as discussed above in connection with '683 claim 3.

97. Claims 26 and 28 of the '683 Patent recites the step of "selecting the product catalogs to search." The phrase "the product catalogs to search" has no antecedent basis and it is not clear whether "the catalogs to search" refers to the "at least two products catalogs on a database" or some subset of them. A potential infringer would accordingly have no way of determining whether its database would fall within the scope of the claim.

98. Claims 26 and 29 of the '683 Patent recites the step of "determining whether a selected matching item is available in inventory." This phrase is indefinite because is it not clear whose inventory is meant, whether it refers to the user's own inventory or the inventory of the "respective source." Furthermore, an item may be in multiple inventories.

99. Each Asserted Claim is indefinite.

## ANTICIPATION AND OBVIOUSNESS OF THE ASSERTED CLAIMS

100. In performing my analysis, I reviewed numerous items of prior art, located anticipating references and utilized express suggestions in the prior art to combine technologies, such as the suggestion to use advertising display systems in elevators, as a basis for opining that certain claims are obvious. Further, I applied appropriate legal standards, listed earlier, which include the *John Deere* factors and *KSR* principles concerning obviousness.

101. In particular, I have relied on at least the following items of prior art, which I am informed qualify as prior art at least as set forth below:

| Prior Art Reference | Type of Prior Art? |
|---|---|
| 1. Fisher Scientific Requisition and Inventory Management System ("RIMS system") (described in U.S. Patent 5,712,989 and the RIMS brochure) | Known or used – 102(a)<br>On sale or public use – 102(b) |

| Prior Art Reference | Type of Prior Art? |
|---|---|
| a. U.S. Patent 5,712,989 ("Johnson '989") | 102(e) patent |
| b. RIMS brochure | 102(b) publication |
| 2. IBM Technical Viewer/2 system ("IBM TV/2 system") (described in several documents) | Known or used – 102(a) On sale or public use – 102(b) |
| a. TV/2 General Information brochure | 102(b) publication |
| b. TV/2 brochure | 102(b) publication |
| 3. U.S. Patent No. 4,992,940 ("Dworkin '940") | 102(b) patent |
| 4. U.S. Patent No. U.S. Patent No. 5,319,542 ("King Jr. '542") | 102(a) patent |
| 5. US 5,694,551 ("Doyle '551") | 102(e) patent |
| 6. Gateway 2000/MRO Version (described in the Gateway Manual) | 102(b) publication |
| 7. J-Con System (described in the J-Con manual) | Known or used – 102(a) On sale or public use – 102(b) |
| a. J-Con Manual | 102(a) publication |
| 8. P.O. Writer Plus system (described in the P.O. Writer Plus Version 10 manual) | Known or used – 102(a) On sale or public use – 102(b) |
| a. P.O. Writer Plus Version 10 manual | 102(b) publication |
| 9. SABRE system (described in the SABRE Practical Guide) | 102(b) publication |
| 10. Lawson V. 6 system (described in several documents) | Known or used – 102(a) On sale or public use – 102(b) |
| a. Lawson Inventory Control v. 6 Manual | 102(a) publication |
| b. Lawson Requisitions V. 6 Manual | 102(a) publication |
| c. Lawson Purchase Order V. 6 Manual | 102(a) publication |
| 11. Lawson V. 5 system | Known or used – 102(a) On sale or public use – 102(b) |

102. Exhibit 3, which is an integral part of this report, contains a claim chart demonstrating the invalidity of each Asserted Claim. Exhibit 3 is a spreadsheet in which the rows are claim elements and steps and the columns are prior art references. The cell corresponding to an element and a reference contains text if the element is disclosed in the reference or is obvious in light of the reference. The color coding of Exhibit 3 is explained at the top of the spreadsheet.

103. Exhibit 3 also contains matter from Lawson's interrogatories concerning invalidity, which are included in columns that are distinct from my opinions. I adopt the prior art citations

26

from Lawson's interrogatories, but I do not necessarily adopt the opinions expressed in the interrogatories concerning which claims are invalid in light of which references. On that issue I have expressed my own opinion in columns containing headings beginning "Shamos Opinion."

104. To the extent that any reference listed in this report as anticipating any of the Asserted Claims is not deemed to be anticipating, it is my opinion that any missing element or step would have been obvious in light of the art referenced in this report with the motivation to combine as explained herein.

105. Although the identified art is cited herein as relevant to invalidity, the fact that these systems existed in the prior art may well be relevant to the case in other ways. For example, the existence of non-infringing alternatives may be relevant to damages. I do not opine on these other potential grounds for relevance, but understand my analysis of the prior art may be used for other purposes.

106. A condensed summary of the opinions contained in Exhibit 3 can be found in Exhibit 4, which is also an integral part of this report. The color coding in Exhibit 4 differs slightly from that of Exhibit 3. In Exhibit 3, cells corresponding to claim elements are colored individually, based on whether the element is anticipated, obvious or not disclosed. In Exhibit 4, the cells corresponding to elements of a claim are colored only if the entire claim is anticipated (green) or obvious (yellow).

## THE PRIOR ART

### Electronic Sourcing Systems

107. The prior art of electronic sourcing systems is long and extensive. Traditionally, distributors and suppliers, such as American Hospital Supply Corporation (AHSC), sold their products using field salespeople, who worked from their homes and called directly on their customers (e.g. hospitals and other organizations). Orders were generally taken in person by the salesperson, who would then mail the orders to company headquarters. (L0340561). This was time consuming, slow and costly. In 1957, AHSC began to automate its order entry and purchasing system by installing IBM 632 tab-card billing machines in its distribution centers.

the '989 patent was single-source and the asserted claims require purchases from multiple sources, market pressure would provide a motivation to combine RIMs with the '940 patent.

228. During prosecution of the '683 and '516 patents, the Patent Office found that the '940 disclosed all of the claim elements except: 1) converting items found in one vendor's catalog to another vendor; and 2) searching only portions of a catalog database. During the prosecution of the '172 patent, the Applicant argued that Dworkin did not teach a single requisition that could include multiple items and be sourced to different vendors. It is my opinion that the RIMS system teaches these missing elements (as described more fully in Exhibits 3 and 4). Additionally, the '940 patent at least implicitly recognized a need to search a subset of the database – it required a user to first select a category of items to search (hardware vs. software). Thus, it would have been obvious to combine the teaching of RIMS that allowed users to search portions of the RIMS database (see exhibit 3). Further, the '940 patent recognized that items might have two product numbers (a number identifying the product in the database and a manufacturer's model number), thus it would have been obvious to combine the '940 patent with the cross-reference table in RIMS to associate these different numbers together. Finally, to the extent that the '940 patent is deemed not to teach a single requisition that could include multiple items and generate multiple purchase orders (I believe it does teach this element as shown in Exhibit 3), it would have been obvious to combine it with RIMS which teaches multiple purchase orders from a single requisition ('989 patent, Fig. 5A).

**The Combination of J-CON Plus Dworkin '940 Renders the Asserted Claims Obvious**

229. It is my opinion that J-CON anticipates all the Asserted Claims.

230. To the extent that J-CON is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with the Dworkin '940 patent. The combination teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4). As such, the combination of J-Con and the '940 patent renders these claims invalid under 35 U.S.C. §103.

67

231. One of skill in the art would have been motivated to make the combination because

232. One of skill in the art would also have been motivated to make the combination because the '940 patent states, "It is another object to provide a system and method which facilitates the processing of orders for goods or services transmitted by a user." 3:9-11. This capability is provided by J-CON.

233. Furthermore, the '940 patent provided the multi-source capability demanded by the industry at and before the time of the invention.

234. Additionally, the J-CON system included features that one or ordinary skill in the art would have been motivated to use with the '940 invention, including the ability to electronically determine the current availability in the inventory at multiple locations, to perform a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected, and the ability to generate multiple purchase orders from a single requisition (as described above and in detail in Exhibit 3).

**The Combination of J-CON and P.O. Writer Renders the Asserted Claims Obvious**

235. It is my opinion that J-CON anticipates all the Asserted Claims. It is also my opinion that P.O. Writer anticipates all of the asserted claims.

236. To the extent that J-CON and/or P.O. Writer are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with P.O. Writer. The same reasons for making the previous two combinations apply to combining the J-CON system as described in the "J-CON Manual" with P.O. Writer Plus V. 10 as described in the P.O. Writer Plus Manual. The P.O. Writer Plus V. 10 system provided the multi-vendor capability demanded by the industry at and before the time of the invention. The J-CON system included features that one or ordinary skill in the art would have been motivated to use with the PO Writer system, including additional details about

performing a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.

### The Combination of J-CON and Gateway Renders the Asserted Claims Obvious

237. It is my opinion that J-CON anticipates all the Asserted Claims. It is also my opinion that the Gateway 2000/MRO system anticipates all of the asserted claims.

238. To the extent that J-CON and/or Gateway are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with Gateway. The same reasons for making the previous three combinations apply to combining the J-CON system with the Gateway system.

239. Additionally, the J-CON system had a sophisticated system for keeping track of equivalent items, dividing them into "Replaced Parts," "Substitute Parts," and "Can-Use Parts" and a number of different methods of converting among item numbers and substituting alternate parts that one of ordinary skill would have been motivated to use with the Gateway system. (See, e.g., L0124837; L0123551). Similarly, the Gateway Manual discloses in detail how to select a subset of catalogs from a collection of catalogs and then limit a search for items to the selected subset of catalogs, which one of ordinary skill would have been motivated to use with J-CON system. (See, e.g., SAP_2531709-10, SAP_2531615-16, L0128380).

### Secondary Considerations

240. I understand that ePlus contends that secondary considerations demonstrate that the invention is not obvious. (See, e.g., "Plaintiff ePlus Inc.'s First Supplemental Answers and Objections to Defendant Lawson Software, Inc.'s Second Set of Interrogatories" (hereinafter, "Rog. 6").) I understand that ePlus will allege commercial success, demand for the patented product, and praise by others. While I reserve the right to reply to these arguments after I have reviewed ePlus's expert report, the evidence ePlus intends to present (as I currently understand it) does not demonstrate a nexus between these secondary considerations and the claimed invention.

**Reporting** - Every transaction in the ordering process is stored and viewable within Procure+, including audit trails and departmental and management reports.

**Navigator+ and Queries** - Users can define their own queries plus build and store their own workspaces, showing only those transactions that need their attention.

258. I do not see any connection between the Asserted Claims and the secondary considerations cited by ePlus in Rog. 6. In the event that ePlus or its experts come forward with any additional assertions of nonobviousness, I reserve the right to respond to them.

## CONCLUSIONS

259. None of the Asserted Claims is valid.

260. All the Asserted Claims are anticipated, as explained in Exhibits 3 and 4.

261. All the Asserted Claims are also obvious in light of single references, as explained in Exhibits 3 and 4.

262. All the Asserted Claims are also obvious in light of combinations of at most two references, as explained in the main body of this report.

263. Applicants did not invent e-procurement software.

264. Applicants did not invent requisition/purchasing software.

265. Applicants did not invent electronic sourcing systems.

266. Applicants did not invent multiple source electronic sourcing systems.

267. Applicants did not invent a searchable collection of product catalogs.

268. Applicants did not invent search engines for searching parts lists or product catalogs.

269. Plaintiff has not demonstrated secondary considerations sufficient to negate the obviousness of any Asserted Claim.

270. All the Asserted Claims, as detailed above and in Exhibits 3 and 4, are invalid as indefinite.

271. The following claims, as detailed above and in Exhibits 3 and 4, are invalid as lacking written description:

'516 claims 1, 2, 6, 9, 21, 22, 29.

'683 claims 3, 6, 28, 29.

272.   The following claims, as detailed above and in Exhibits 3 and 4, are invalid as lacking enablement:

'516 claims 1, 2, 6, 9, 21, 22, 29.

273.   The following claims, as detailed above and in Exhibits 3 and 4, are invalid as not reciting statutory subject matter, also including hybrid claims:

'516 claims 1, 2, 6, 9, 21, 22, 29.

Executed on May 5, 2010, in Pittsburgh, PA.

_____
Michael Ian Shamos, Ph.D., J.D.