# EXHIBIT J

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                    RICHMOND DIVISION

 4

 5     ---------------------------------------
                                          :
 6     ePLUS, INC.                        :    Civil Action No.
                                          :    3:09CV620
 7     vs.                                :
                                          :
 8     LAWSON SOFTWARE, INC.              :    September 27, 2010
                                          :
 9     ---------------------------------------

10

11       COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13                 UNITED STATES DISTRICT JUDGE

14
       APPEARANCES:
15
       Scott L. Robertson, Esquire
16     Michael G. Strapp, Esquire
       Jennifer A. Albert, Esquire
17     Goodwin Procter, LLP
       901 New York Avenue NW
18     Suite 900
       Washington, D.C.  20001
19                                        Volume I of II
       Craig T. Merritt, Esquire
20     Christian & Barton, LLP
       909 East Main Street
21     Suite 1200
       Richmond, Virginia  23219-3095
22     Counsel for the plaintiff

23

24                  Peppy Peterson, RPR
                   Official Court Reporter
25               United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Robert A. Angle, Esquire
 3    Troutman Sanders, LLP
      Troutman Sanders Building
 4    1001 Haxall Point
      Richmond, Virginia   23219
 5
      Daniel W. McDonald, Esquire
 6    Kirstin L. Stoll-DeBell, Esquire
      William D. Schultz, Esquire
 7    Merchant & Gould, PC
      80 South Eighth Street
 8    Suite 3200
      Minneapolis, Minnesota   55402
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

182

1   the exhibits have already been agreed by court order.

2           THE COURT:  So all that's left is the one

3   page?

4           MS. STOLL-DeBELL:  Yes, sir.

5           THE COURT:  Thank you, ma'am.

6           Okay.  I guess we start with 97 and 98.

7           MS. ALBERT:  DX 97 and DX 98 are related

8   issues.  They are manuals that relate to this J CONN

9   prior art, alleged prior art system.

10          I am going to withdraw our Rule 26 objections

11  to both of those.  But these should be excluded per

12  your order on ePlus' motion in limine No. 2 as they

13  were not cited in Lawson's second supplemental

14  invalidity contentions.

15          MS. STOLL-DeBELL:  Your Honor, I believe you

16  reserved judgment on this issue as to these specific

17  manuals, and that is because we argued that -- and I

18  can pull up your order on that.  So you granted their

19  motion to strike.

20          These J CONN manuals are -- I think we've

21  heard a number of times today that the parties can use

22  additional evidence in support of arguments that were

23  disclosed.  And that's what this falls under.  These

24  are some additional J CONN manuals relating to the J

25  CONN prior art system that we did disclose in our

1  second supplemental invalidity contentions.

2       THE COURT:  What does the order say on motion

3  in limine No. 2?

4       MS. ALBERT:  The order says that for the

5  reasons set forth on the record, plaintiff's motion in

6  limine No. 2 to enforce the Court's prior orders of

7  May 24, 2010, and May 25, 2010, and exclude any expert

8  opinion, other testimony or argument pertaining to

9  alleged prior art and invalidity theories not set

10 forth in the defendant's court ordered second

11 supplemental statement is granted.

12      As to both these two documents, they are not

13 disclosed in the second supplemental invalidity

14 contentions.  So this is about the fourth bite at the

15 apple for arguing to get in evidence that the Court

16 excluded three times already.

17      THE COURT:  I think at one point in time I

18 did reserve judgment on something, but I also thought

19 that that order subsequently took care of the

20 reservation of judgment, but I have to say I'm not

21 sure about that.  So --

22      MS. STOLL-DeBELL:  Your Honor, in your order,

23 Docket No. 230, that was your order on their motion to

24 strike certain things from Dr. Shamos' report.

25      THE COURT:  What was that?  The thing she

1    just read?

2         MS. ALBERT:  This is the order on motion in

3    limine No. 2, which was --

4         THE COURT:  After that.

5         MS. ALBERT:  Was after that.  Subsequent.

6         THE COURT:  In other words, I did something

7    on the motion to strike.  I said I'm going to hold it

8    in abeyance until I understand more.  Then I got the

9    motion in limine, and I ruled on the motion in limine,

10   and I kept it out, I think.  But I'm not sure that's

11   right.  And you're shaking your head no.  And you-all

12   are much closer to it than I am.

13        MS. STOLL-DeBELL:  Your Honor, I think we

14   argued it, and I argued again that this is not new

15   prior art reference.  We disclosed J CONN.  The J CONN

16   system.  It's the second supplemental invalidity

17   statement.  I can hand it up and show you.  We said

18   we're going to rely on the J CONN system as prior art.

19        Now, we did not cite those specific documents

20   in the second supplemental invalidity statement, but

21   they are J CONN manuals.  They are just additional

22   evidence in support of an argument that was properly

23   and fully disclosed.  It's the same thing as what

24   Dr. Weaver -- he had a whole bunch of additional

25   evidence.  Your Honor looked at it and said it's just

1   additional evidence in support --

2         THE COURT:  Of the same disclosed theory.

3         MS. STOLL-DeBELL:  This is the same issue.

4   We've always said J CONN is a system we're relying on.

5   And these are J CONN manuals.

6         MS. ALBERT:  Your Honor, Dr. Shamos, their

7   expert, doesn't even rely on these two manuals for any

8   opinions, nor are they in the second supplemental

9   invalidity contentions.  So how are we properly on

10  notice of these documents?

11        THE COURT:  Wait a minute.  They're not in

12  there, but the J CONN is identified as prior art,

13  right?

14        MS. STOLL-DeBELL:  Yes, Your Honor.

15        THE COURT:  In the second supplemental

16  contentions?

17        MS. STOLL-DeBELL:  Yes, the J CONN system.

18  Actually, Dr. Shamos cites to the manual we cited in

19  the second supplemental in support of J CONN plus

20  these two.  But they are all J CONN manuals.  We've

21  always said from the very beginning of time we're

22  going to rely on J CONN.  These are just additional

23  evidence.

24        And plaintiff's Dr. Weaver is allowed to rely

25  on additional evidence, and Dr. Shamos should, too.

1   They know J CONN is in this case.  It's always been in

2   this case.  There's no surprise here.

3          MS. ALBERT:  He hasn't disclosed any opinions

4   regarding these two documents.

5          THE COURT:  What does he say about these

6   documents?

7          MS. STOLL-DeBELL:  I can bring up a printed

8   copy of his claim chart where he cites to them if

9   you'd like, Your Honor.

10         THE COURT:  Show them to her.

11         MS. ALBERT:  Can you point to a page?

12         THE COURT:  What she's doing now is she's

13  walking.

14         MS. STOLL-DeBELL:  Can I hand up --

15         THE COURT:  Okay.

16         MS. STOLL-DeBELL:  Your Honor, if you'll give

17  me just a minute to look it up.

18         THE COURT:  Okay.

19         MS. STOLL-DeBELL:  I didn't realize they were

20  saying this wasn't cited.

21         THE COURT:  The more I think about it, the

22  more what I reserved judgment on was very early in the

23  process, and these motions in limine came after that,

24  and we're on a more specific briefing of what I had

25  reserved judgment on, but I just don't have a

187

1    recollection beyond that.

2              MR. ROBERTSON:  May I make a suggestion then?

3    Why don't we reserve on this and show you the

4    transcript where you specifically ruled on that when

5    you granted motion in limine No. 2, which is quite

6    specific, that nothing further can come in if it

7    wasn't in the second supplemental.  I feel like we've

8    fought this battle four times now.

9              THE COURT:  Wait a minute.  So has she.

10             MR. ROBERTSON:  I know, but Your Honor has

11   ruled three times.

12             THE COURT:  I know, but the fourth time is a

13   charm.

14             MR. ROBERTSON:  Well, your Honor, then I have

15   a few ones I'd like to reopen, like the damages issue.

16             MS. STOLL-DeBELL:  Well, let's open

17   Dr. Shamos' invalidity contention, too.

18             MR. ROBERTSON:  Let's have some closure, Your

19   Honor.

20             THE COURT:  I've got a better idea.  Why

21   don't we dismiss this case without prejudice.  Let you

22   refile it and start all over again.  All right.

23             MS. ALBERT:  Your Honor, I thought that your

24   ruling on the original motion going back to what

25   Dr. Shamos can testify about is only prior art that

1   was disclosed in the second supplemental invalidity

2   contentions.

3          They are conceding that these two documents

4   are not disclosed in the second supplemental --

5          THE COURT:  I think she actually is not

6   conceding that.  I think she's saying they are

7   disclosed.

8          MS. STOLL-DeBELL:  I said the J CONN system

9   was disclosed as prior art in our second supplemental.

10  These two specific documents were not cited, but J

11  CONN as a system was.

12         THE COURT:  It is cited in Shamos's report?

13         MS. STOLL-DeBELL:  It is.  So if you look at

14  page 1, if you go to the P.O. Writer, J CONN tab, page

15  1.

16         THE COURT:  The '172 patent?

17         MS. STOLL-DeBELL:  Yes, Your Honor.  You will

18  see there are sort of column headings that are

19  letters, and then row headings that are numbers.  So

20  if you go to that green column, it's column S, row 15.

21  It says, "Shamos Opinion Re: J CONN."  And there are

22  some folks from different manuals.

23         The last two there like the last one is

24  125142.  I believe that is Exhibit 98.

25         THE COURT:  What about 97?

1          MS. STOLL-DeBELL:  I can find a cite for

2    that.  It's in here.  I think the one before it is --

3    if you go to the next page, page 2, Your Honor, column

4    S, line 17.

5          THE COURT:  Yes.

6          MS. STOLL-DeBELL:  I'm sorry.  I think I have

7    slight dyslexia.  Hold on.  I'll find it.

8          THE COURT:  Here's what we're going to do on

9    this.  I want to make sure I get it right.  We file a

10    briefing on the same schedule as the other briefing we

11    did, whatever those dates were.  And let's see.  These

12    are your objections, right?

13          MS. ALBERT:  Yes, sir.

14          THE COURT:  You go first.  You respond.  You

15    go second.

16          I think what we may be talking about here

17    is that -- I'm wondering whether what we're talking

18    about is whether I had the Shamos report when I made

19    the ruling, and I said these things weren't disclosed

20    originally, and that's why they couldn't come in.

21    These contentions weren't.

22          And I believe that, as I'm reflecting upon

23    it, there was something substantively -- it wasn't

24    just that the evidence wasn't disclosed, it was that

25    it was a new substantive theory that was being raised

1    by virtue of these references, and I believe that's

2    what I was keeping out.

3          I do believe this, though, that if your

4    expert is permitted, Weaver, to cite in support of

5    your contentions on infringement evidence, ePlus, that

6    wasn't cited in the infringement contentions, but

7    support theories that were disclosed, then the same

8    rule has to apply to them.

9          And if that's where we are, then I may have

10   made a mistake, and if I did, I'm going to correct it.

11   That's the way it is.  Because that rule has to apply

12   both ways.

13         MR. ROBERTSON:  I understand, Your Honor.

14   But you have to remember that these two situations

15   were very different procedural postures because

16   Weaver, you ruled in their motion in limine, did

17   adequately disclose early on in December all of his

18   theories and with numerous exhibits.  But you then

19   said the discovery proceed for another five months,

20   and he was permitted to do that.

21         Very different situation.  They didn't

22   adequately disclose their invalidity contentions.  You

23   ordered them as a result of motion practice to do the

24   second supplemental statement.

25         Then, Your Honor, they filed the Shamos

1  report.  And we filed a motion with respect to the

2  Shamos report.  You ruled then that it was going to be

3  confined to the second supplemental.  Then they

4  continued to try to add additional exhibits, and we

5  brought the motion in limine.  So they are very

6  different procedural postures.

7          THE COURT:  I'm sure you'll synthesize all

8  that for me.

9          MR. ROBERTSON:  Because it does apply to a

10  number of these exhibits that we have objections to.

11          THE COURT:  I understand.

12          MR. ROBERTSON:  You might want to reserve on

13  those until we can document for Your Honor.  And if I

14  might be permitted, I'd like to be able to quote Judge

15  Payne on Judge Payne from that last hearing when you

16  rather express as to what you were ruling and the

17  reason for it.

18          THE COURT:  That's always a dangerous thing

19  to do.  But the bottom line here is that we really

20  have to do what's right.  And if I made a mistake, I'm

21  going to try to correct it here.  If I blew it, I've

22  got to get it right as best I can.  I don't proclaim

23  to be infallible, and I know you-all are going to try

24  to add to that reputation if it goes up on appeal.  So

25  that's okay.  But I'd like to do what I can to save

1    '94?

2              MS. ALBERT:  That's correct.

3              THE COURT:  I mean '93 and '94.

4              MS. ALBERT:  Correct.

5              THE COURT:  Okay.  It looks to me like she's

6    got a point there if it's the fifth revision and

7    there's testimony to that effect.  I don't see how

8    this could come in without testimony establishing its

9    bona fides.  You can't make that decision from the

10   face of it.

11             MR. SCHULTZ:  There will be testimony from

12   Mr. Chuck Gounaris, who will testify as to this

13   document and will testify to any iterations that took

14   place and --

15             THE COURT:  Well, I'm going to reserve until

16   you get a foundation because you need a foundation on

17   this.  It won't fly on its own.

18             112.

19             MS. ALBERT:  112 is a video exhibit relating

20   to this Technical Viewer 2 System.  We have an

21   objection based on ePlus' motion in limine No. 2 and

22   your order that this specific document was not

23   disclosed in the second supplemental invalidity

24   contentions per your order, and, therefore, it's

25   excluded under your ruling on ePlus' motion in limine

1   No. 2.

2          THE COURT:  Okay.  So that's reserved for

3   your briefing.  It's the same as the earlier one in

4   '97 and '98.

5          MS. ALBERT:  In addition, we have an

6   objection.  This one is not disclosed in Dr. Shamos'

7   report, nor is it disclosed in response to -- we had a

8   contention interrogatory that we served on Lawson.

9   Interrogatory No. 9, which I can hand up to you.  It

10  asked that Lawson describe in detail all facts and

11  identify all documents that Lawson contends support or

12  tend to support its defenses, affirmative defenses,

13  and counterclaims, if any, in this action.

14         They cited to some specific documents

15  relating to IBM TV2, but they did not cite to this

16  particular one.

17         THE COURT:  You mean the video.  They didn't

18  cite to the video.

19         MS. ALBERT:  So we have an objection based on

20  Rule 26 on this.  And we also have a relevancy

21  objection since it hasn't been disclosed or cited in

22  any expert report, interrogatory answer, or the second

23  supplemental invalidity contentions.

24         MR. SCHULTZ:  Let me start with the relevancy

25  objection, Your Honor.  It goes to TV2.  It's further

1    support with respect to the documents that were set

2    forth in the invalidity contentions.   Essentially,

3    what it has is screen shots within it that are the

4    same as are in the brochure that is cited in the

5    invalidity contentions.

6          Your Honor, it is not by itself by Bates

7    number cited in the invalidity contentions; however,

8    as we've already had discussion on, TV2 System has

9    been cited.   It's been gone through in depth, and this

10   is further support of the TV2 reference.

11         MS. ALBERT:  Also, respectfully, Your Honor,

12   this particular document is undated.   So there's no --

13   or the video is undated.   So there's no way to really

14   corroborate that it is indeed prior art.

15         MR. SCHULTZ:  Your Honor, there is evidence

16   of that.   I can pull out the testimony from the SAP

17   trial.   We'll have the testimony of Pamela Eng, who is

18   actually in the video and helped create the video.

19   She actually was pregnant after the time that the

20   video was created, and she can date the video based on

21   that that it was made in 1992 or before.   So, yes, we

22   have the evidence and the corroboration with respect

23   to the prior art aspect of the video.

24         MS. ALBERT:  Your Honor, naked testimony

25   cannot be used as corroboration.

1          MR. SCHULTZ:  Your Honor, there's other

2    documents that further corroborate the fact that the

3    video was dated prior to 1992 including the 1991

4    brochure and general information manual with respect

5    to the TV2 System.

6          Ms. Eng by herself was selling this system at

7    trade shows throughout the United States.  She can

8    testify there is corroborating evidence.  The

9    objection has no merit.

10          MS. ALBERT:  Well, I mean, he hasn't

11    addressed by Rule 26 objection that it wasn't cited in

12    response to a contention interrogatory.

13          MR. SCHULTZ:  Your Honor, I did address that

14    issue.  That by its reference, by its Bates number was

15    not included there; however, the TV2 reference was.

16    ePlus was on notice of the TV2 System and it goes to

17    the same issue that we've already addressed.

18          THE COURT:  So the issue is being reserved

19    and there's going to be briefing.

20          MR. SCHULTZ:  Correct.

21          MS. ALBERT:  Well, we have a specific

22    contention interrogatory that asked that you identify

23    every document that you had relied on to support your

24    affirmative defenses.  You have a listing of documents

25    about TV2, and it does not include this document.  And

1    I can hand that up to the Court.

2            THE COURT:  I don't need to.  It seems to me

3    he doesn't dispute that.  He said it wasn't in there.

4    So the question is:  Are you surprised?  Are you

5    prejudiced?  Can it be cured?  Is there a problem

6    applying the Southern States analysis?

7            MS. ALBERT:  We are surprised.

8            THE COURT:  How is it going to foul up the

9    trial?  How are you surprised?

10           MS. ALBERT:  Well --

11           THE COURT:  Given that you knew everything --

12   you knew everything he's talking about, he says, about

13   Ms. Eng, and about the system.  So how are you

14   surprised, I guess, is the question.

15           MS. ALBERT:  It wasn't disclosed anywhere.

16           THE COURT:  I know.

17           MS. ALBERT:  Not in the contention

18   interrogatories, not in the second supplemental

19   invalidity contentions that Your Honor ordered that

20   they disclose everything that they would rely on,

21   their invalidity positions.  It wasn't relied on by

22   Dr. Shamos, and our expert didn't have an opportunity

23   to rebut this particular exhibit because it was never

24   disclosed to us that they intended to rely on it.

25           MR. SCHULTZ:  Your Honor, it's the same

1    expert that they had in the SAP trial.  It's fully

2    disclosed that the TV2 System is a piece of prior art

3    that Lawson is relying upon in this case.

4           THE COURT:  Was this same issue litigated in

5    the SAP trial?

6           MR. SCHULTZ:  It was.

7           THE COURT:  So how are you surprised?  If you

8    have tried it once, you can't really be surprised.

9    And you can cure the surprise because you know how to

10   deal with it.  So how is it going to foul up the

11   trial?  Just get your guy to testify about it.  Is it

12   the same expert you had in the SAP trial or a

13   different one?

14          MS. ALBERT:  It's the same expert, but the

15   issue of obviousness of RIMS and TV2 was not actually

16   before the jury in the SAP case.

17          THE COURT:  They didn't testify about that?

18          MS. ALBERT:  Right.

19          THE COURT:  All right.  It seems to me as if

20   you were asked to disclose those things in a

21   contention interrogatory and you didn't.  And you

22   admittedly didn't.  And while they had some general

23   knowledge about Ms. Eng and what she did and about the

24   viewer, this particular piece of evidence is different

25   than the other evidence that they were told about and

1    that you were going to use.

2          Now, tell me this:  What's different about

3    this video than what they already knew?

4          MR. SCHULTZ:  There's really nothing that's

5    different.

6          THE COURT:  Well, why isn't it cumulative?

7    Why do we need it anyway?

8          MR. SCHULTZ:  It shows the operation of the

9    system that is shown in photographs in the brochure.

10   It's testimony that the jury can take a look at and

11   actually see the operation of the system that they can

12   only see the photographs of in the brochure.

13         We have in our responses to the invalidity

14   contentions a paragraph that Pamela Eng will testify

15   with respect to this issue.  So there should not be

16   any surprise.

17         THE COURT:  To what issue?

18         MR. SCHULTZ:  To the TV2 issue.

19         THE COURT:  I mean to the video or just to

20   the issue of what TV2 is about.

21         MR. SCHULTZ:  She's just testifying -- the

22   video is not disclosed per se in these documents.  I

23   agree with that, Your Honor.  I'm just saying there's

24   no surprise because the whole system is at issue

25   already.

1      THE COURT:  So it's really a repetition.

2  It's a moving version of what there is in the still

3  version; is that what you're saying?

4      MR. SCHULTZ:  It's more descriptive to the

5  jury to see what actually TV2 was at the time.

6      THE COURT:  Okay.  Anything else?

7      MS. ALBERT:  No, Your Honor.

8      THE COURT:  I think the objection is

9  overruled on both points, Rule 26 and relevance, but

10  I'm still reserving on the other issue subject to the

11  brief.

12      All right.  121.

13      MS. ALBERT:  Your Honor, DX 121 is one

14  isolated chapter out of some larger document.  The

15  document is undated.

16      THE COURT:  Excuse me.  Where does this

17  document come from?  Do you know?

18      MS. ALBERT:  It came from Lawson.

19      THE COURT:  Lawson produced it.  Okay.

20  Excuse me.  So it's part of something larger.  Clearly

21  it is.

22      MS. ALBERT:  It doesn't indicate on its face

23  the version of -- this relates to the purchase of

24  what's called P.O. Writer, alleged prior art.

25      THE COURT:  But it's prior art issue, and it

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF VIRGINIA

 3                        RICHMOND DIVISION

 4

 5     ---------------------------------------
                                            :
 6     ePLUS, INC.                          :   Civil Action No.
                                            :   3:09CV620
 7     vs.                                  :
                                            :
 8     LAWSON SOFTWARE, INC.                :   September 28, 2010
                                            :
 9     ---------------------------------------

10

11        COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

12             BEFORE THE HONORABLE ROBERT E. PAYNE

13                  UNITED STATES DISTRICT JUDGE

14
       APPEARANCES:
15
       Scott L. Robertson, Esquire
16     Michael G. Strapp, Esquire
       Jennifer A. Albert, Esquire
17     Goodwin Procter, LLP
       901 New York Avenue NW
18     Suite 900
       Washington, D.C.  20001
19                                          Volume II of II
       Craig T. Merritt, Esquire
20     Christian & Barton, LLP
       909 East Main Street
21     Suite 1200
       Richmond, Virginia  23219-3095
22     Counsel for the plaintiff

23

24                  Peppy Peterson, RPR
                   Official Court Reporter
25              United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Robert A. Angle, Esquire
 3    Troutman Sanders, LLP
      Troutman Sanders Building
 4    1001 Haxall Point
      Richmond, Virginia  23219
 5
      Daniel W. McDonald, Esquire
 6    Kirstin L. Stoll-DeBell, Esquire
      William D. Schultz, Esquire
 7    Merchant & Gould, PC
      80 South Eighth Street
 8    Suite 3200
      Minneapolis, Minnesota  55402
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          MR. ROBERTSON:  I'll withdraw the objection to that,

2     Your Honor.

3          THE COURT:  Next one, 123:8 through 124:25.

4          MR. ROBERTSON:  This has to do with the data

5     interface utility, and my notes reflect that Dr. Shamos doesn't

6     rely on it.  Whether the underlying document wasn't objected

7     to, the fact is, it doesn't have any tendency to prove a fact

8     that is in dispute, makes it not relevant for purposes of any

9     invalidity analysis that Dr. Shamos might be offering.  I

10    understand he cited it, but -- it was considered, but he has no

11    opinions with regard to it.

12         THE COURT:  If he has no opinions with respect to it,

13    then I don't see how it's relevant.

14         MS. STOLL-DeBELL:  Your Honor, I think it's rebuttal

15    testimony because this database data interface utility is a

16    mechanism to automatically load catalog data into PO Writer,

17    very similar to Lawson's PO-536 that ePlus is relying on to say

18    Lawson's system has catalogs and Lawson infringes.  And so this

19    testimony and that document are rebuttal evidence.

20         It was cited in our second supplemental invalidity

21    contentions and was listed in Dr. Shamos's report.  Albeit he

22    didn't put a cite to that specific document in his claim chart,

23    I do think it's rebuttal testimony to their infringement

24    position.

25         THE COURT:  How does it come in if he didn't testify