# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF VIRGINIA

 3                          RICHMOND DIVISION

 4


 5      ---------------------------------------
                                               :
 6       ePLUS, INC.                           :   Civil Action No.
                                               :   3:09CV620
 7       vs.                                   :
                                               :
 8       LAWSON SOFTWARE, INC.                 :   September 27, 2010
                                               :
 9      ---------------------------------------

10


11         COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

12                BEFORE THE HONORABLE ROBERT E. PAYNE

13                     UNITED STATES DISTRICT JUDGE

14
        APPEARANCES:
15
        Scott L. Robertson, Esquire
16      Michael G. Strapp, Esquire
        Jennifer A. Albert, Esquire
17      Goodwin Procter, LLP
        901 New York Avenue NW
18      Suite 900
        Washington, D.C.  20001
19                                                   Volume I of II
        Craig T. Merritt, Esquire
20      Christian & Barton, LLP
        909 East Main Street
21      Suite 1200
        Richmond, Virginia  23219-3095
22      Counsel for the plaintiff

23


24                        Peppy Peterson, RPR
                         Official Court Reporter
25                     United States District Court
```

1                THE COURT:  The proof of record was that it
2    was destroyed.  There wasn't any more.
3                MS. STOLL-DeBELL:  That's true.  We're
4    talking about a manual that's dated 1993.  If we had
5    it, we would have put it in.  We don't.  But what we
6    do have is complete.  It was used in the SAP trial.
7                THE COURT:  Whose manual is it?
8                MS. STOLL-DeBELL:  It's P.O. Writer.
9                THE COURT:  Who owns P.O. Writer?
10               MS. STOLL-DeBELL:  American Tech.  Something
11   like that.
12               THE COURT:  Did you ask them for it?
13               MS. STOLL-DeBELL:  I believe we got what was
14   from the SAP trial.  We did.  It's my understanding we
15   did ask for it.  We have what we could get.  It's a
16   very old document, and I don't think that --
17               THE COURT:  In other words, do you bring
18   it within -- I don't remember the name of the Fourth
19   Circuit case, but there's a case that says, and I
20   think maybe more than one, it basically says if the
21   record shows that it's not possible to satisfy the
22   rule of completeness, then you can let it in and let
23   testimony take care of the validity *vel non* of it as
24   to its reliability.  Isn't that essentially what that
25   case said?

1        MS. STOLL-DeBELL:  It is.  It says, Rule 106
2  is for adding additional things.  I can give you the
3  cite.  It's United States v. Ferguson.
4        THE COURT:  Yes.  But my question is:  What
5  record do you have to tell me that you can't get the
6  rest of the document?
7        MS. STOLL-DeBELL:  It's my understanding,
8  Your Honor, that we did ask American Tech for it.  And
9  I would further point out that they did not complain
10 about it.  Had they come back and said at any point,
11 "This isn't complete," then we would have known it was
12 an issue.  Now we're before trial and it's too late
13 for us to do anything about it.
14       THE COURT:  Well, that isn't really a
15 pertinent point, I don't think, Ms. Stoll-DeBell.
16 They weren't using it.  If you were going the use it,
17 it's your responsibility to recognize it's part of the
18 document.  In fact, they asked about it in a
19 deposition, but it doesn't keep them from objecting to
20 it here.
21       MS. STOLL-DeBELL:  Your Honor, they haven't
22 even alleged that the remaining chapters would make
23 any difference at all anyway.  Chapter 2 was a
24 tutorial about the entire software system.  That's DX
25 122.  It goes through the purposes to show people who

1  Your Honor, that this is Version 10.  It seems to me
2  that this is something that should go to the jury as a
3  question of fact.  She said under oath --
4          THE COURT:  Excuse me.  On DX 122 it says,
5  Software Revision 10.0.
6          MS. ALBERT:  I know.  I don't contend that DX
7  122 is not from Version 10.  What I contend on DX 122
8  is that on the face of the document itself it's
9  supposed to have five chapters and two appendices, and
10 it only includes Chapter 1.
11         THE COURT:  What parts of the index suggest
12 to you that there might be something pertinent about
13 the functionality that's at issue here in the missing
14 sections?
15         MS. ALBERT:  Well, Chapter 3 relates to
16 implementing P.O. Writer Plus.  Chapter 4 relates to
17 using P.O. Writer Plus purchasing manual.  That's
18 directly in issue.
19         MS. STOLL-DeBELL:  Your Honor, first of all,
20 we have a subpoena to Ms. Fielder.  We tried to get
21 the documents that she had.  She didn't have it.  It
22 doesn't exist anymore.  It's very old.  That should
23 not mean that this whole thing should be excluded.
24 And I would further point out that this is prior art,
25 and we need to show that this system has all the

1   features of their claim.
2           So if there's additional chapters like
3   Chapter 3, it would only help us because it may give
4   additional detail to the arguments that we're making.
5           THE COURT:  It might hurt you, too.  You
6   never know.  You can't ever say that what's not there
7   is going to help you because you never know what's
8   there, and it could just as well hurt you.  You can't
9   do that.
10          I'm going to hear her testimony.  She's going
11  to come testify?
12          MS. STOLL-DeBELL:  She's a deposition
13  designation, Your Honor.
14          THE COURT:  I'll read it and see.  You show
15  me where it is and I will look at it and see.
16          MS. STOLL-DeBELL:  Okay.
17          THE COURT:  But I'm disinclined to allow it,
18  but I need to read it.  So she's not coming to
19  testify.  It's all in the deposition.
20          MS. STOLL-DeBELL:  Yes.
21          THE COURT:  You need to give me the
22  deposition with the pages where she establishes the
23  foundation of both these documents.
24          MS. STOLL-DeBELL:  We will, Your Honor.
25          MS. ALBERT:  But that still won't address the

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF VIRGINIA

 3                            RICHMOND DIVISION

 4

 5    ---------------------------------------
                                             :
 6     ePLUS, INC.                           :   Civil Action No.
                                             :   3:09CV620
 7     vs.                                   :
                                             :
 8     LAWSON SOFTWARE, INC.                 :   September 28, 2010
                                             :
 9    ---------------------------------------

10

11         COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

12              BEFORE THE HONORABLE ROBERT E. PAYNE

13                   UNITED STATES DISTRICT JUDGE

14
      APPEARANCES:
15
      Scott L. Robertson, Esquire
16    Michael G. Strapp, Esquire
      Jennifer A. Albert, Esquire
17    Goodwin Procter, LLP
      901 New York Avenue NW
18    Suite 900
      Washington, D.C.  20001
19                                                Volume II of II
      Craig T. Merritt, Esquire
20    Christian & Barton, LLP
      909 East Main Street
21    Suite 1200
      Richmond, Virginia  23219-3095
22    Counsel for the plaintiff

23

24                     Peppy Peterson, RPR
                      Official Court Reporter
25                 United States District Court
```

1    whether or not Federal Rule of Evidence 106 could be complied
2    with, and you'll see here no inquiry was made into those
3    relevant issues as to this incomplete document other than to
4    identify it and move on.
5              MS. STOLL-DeBELL:  Well, Your Honor, I think first of
6    all, this exhibit was marked as two different exhibits during
7    Ms. Fielder's deposition, so this is not the sum total of the
8    testimony about it.  So that's the first response.
9              The second is this is chapter one of the purchasing
10   manual, and you'll recall that Exhibit DX-121 is chapter two
11   and that what is missing is chapters three, four, and five, I
12   think.  This one has got a date on it.
13             We confirmed that we did subpoena Ms. Fielder.  If
14   you look at the first couple pages of her deposition, ePlus's
15   counsel is asking her, did you get a subpoena, did you look for
16   all the documents you had, did you give all the documents you
17   had to us.  She answered, yes, I did, I gave everything to
18   Lawson, and what Lawson had, Lawson gave to you.
19             So the fact of the matter is the remaining chapters
20   no longer exist.  We tried to get them, and they don't exist.
21   They certainly had an opportunity to ask her questions about
22   that if they had --
23             THE COURT:  What do you mean, they don't exist?  She
24   doesn't have them.  She doesn't own the company anymore.
25             MS. STOLL-DeBELL:  She did own the company, though,

1    during the SAP lawsuit, and these were subpoenaed then as well,
2    Your Honor, and everything that was used in SAP and admitted
3    and used in the SAP trial is also in evidence here.
4             MR. ROBERTSON:  Our subpoena, Your Honor, only asked
5    for the documents that Ms. Fielder produced to Lawson.  That
6    was the sum total of the subpoena.
7             MS. STOLL-DeBELL:  We issued our own subpoena and
8    asked her for everything she had.  She gave us what she had.
9    These chapters --
10            THE COURT:  She doesn't have it.  I think that's been
11   established.  The question is, does it exist somewhere else,
12   and the question is not does she have it, because I think
13   you've answered that.  She didn't have it.  She testified to
14   that.  That's settled.  The point is, you haven't established
15   that it doesn't exist.
16            MR. ROBERTSON:  Point of clarification, Your Honor.
17   I don't think she did testify that she didn't have it.
18            MS. STOLL-DeBELL:  Well, I think she did.  I think we
19   served her with a subpoena.  She gave us what she had, and she
20   doesn't have this.
21            MR. ROBERTSON:  Cite us to the testimony.  Maybe I'll
22   withdraw my objection.
23            MS. STOLL-DeBELL:  She said she gave you everything
24   she gave Lawson, and we served her a subpoena asking for
25   documents.  We tried to get it.  She gave us what she had.  We

1    took what was also used in the SAP case.  She said, I think
2    it -- what page is that?  I have a line, Your Honor, but not a
3    page.  Give me just a minute.
4         I think at page nine she said, quote, the only
5    things, I gave you everything I would have given them, them
6    being Lawson.  So she no longer has it.  She was working --
7         THE COURT:  The fact you are saying that you
8    subpoenaed -- did you specifically subpoena this?
9         MS. STOLL-DeBELL:  Yes.  We asked for the PO Writer
10   documents.
11        THE COURT:  All right.  So she gave you everything
12   she had, so it's inferable, if she didn't give you the rest of
13   the manual, that the rest of the manual she didn't have.  Now,
14   where else could it be?
15        MS. STOLL-DeBELL:  I don't think anywhere, Your
16   Honor.
17        THE COURT:  Who bought the company?
18        MS. STOLL-DeBELL:  She just sold it within the last
19   year.
20        THE COURT:  Who did she sell it to?
21        MS. STOLL-DeBELL:  The name is escaping me now.
22        THE COURT:  Wouldn't that be the place to see if it
23   existed?
24        MS. STOLL-DeBELL:  But, Your Honor, she was working
25   for that company.  She still owned it when she gave testimony

1    and was a consultant during the SAP lawsuit, and all of this
2    stuff was produced there.  It's all got SAP numbers on it as
3    well, so had it existed three years ago when that lawsuit was
4    going on, it would have been produced at that time as well.
5              THE COURT:  Maybe, maybe not.  We don't know that.
6    We can't make assumptions like that.  The question is, where
7    was it, what records show that the rest of this doesn't exist,
8    and the answer is, the best I can tell, is that you've
9    established -- you made an inference that she didn't have it,
10   the rest of this manual, and then that's the problem.
11             So that's where we stand.  I don't see any point
12   arguing that anymore, but she does say from her own knowledge,
13   does this accurately represent the product that was sold to
14   customers prior to August 10th of 1993.  Yes.
15             MS. STOLL-DeBELL:  Yes, she does.  Dr. Shamos relies
16   on this extensively, and we cited it extensively in our second
17   supplemental invalidity contentions.  They had every
18   opportunity -- it was their deposition -- to ask her further
19   questions on this.
20             THE COURT:  You know, let me explain something to
21   you.  The part of -- there's a song called *The Gambler*.  You
22   have to know when to hold them, you have to know when to fold
23   them.  You have to know when to walk away, you have to know
24   when to run, and part of a lawyer's job is to know what not to
25   ask, because if you don't ask it, then that lawyer can come

1   into court and say, I didn't build the record for that, and
2   it's not there, so that's an okay thing to do.  So the fact
3   they could have asked something about it doesn't really cut any
4   muster with regard to this issue.  That's a trial tactic lesson
5   that you got free.
6           Now, but why isn't it admissible, because she says
7   it's the section of the purchasing manual for PO Writer Plus,
8   and it represents accurately the products sold to customers
9   prior to August 10, 1993?  Why can't that come in?
10          MR. ROBERTSON:  That's what she says about that
11  section.  The problem is there's four other sections that we
12  don't have, and as Ms. Stoll-DeBell just referenced, Dr. Shamos
13  is going to be relying on this extensively.  That's why we're
14  prejudiced, Your Honor, because we can't see what is in the
15  rest of that document and be able to cross-examine him
16  effectively with respect to that.  So having an incomplete
17  document seriously prejudices us --
18          THE COURT:  What is there -- what can you tell me
19  about the document that would lead me to find that it is -- its
20  missing sections might contain something about which Shamos --
21  it would be important to ask Shamos?  Is this the thing that
22  has the table of contents in it?
23          MR. ROBERTSON:  Yes, sir.
24          THE COURT:  What part of -- you all made some
25  reference to this yesterday.  What part of this table of