# EXHIBIT 9

# GOODWIN | PROCTER

| | |
|---|---|
| Jennifer A. Albert<br>202.346.4322<br>JAlbert@goodwinprocter.com | Goodwin Procter LLP<br>Counselors at Law<br>901 New York Avenue NW<br>Washington, DC 20001<br>T: 202.346.4000<br>F: 202.346.4444 |

December 15, 2009

<u>Via E-Mail</u>

William D. Schultz, Esq.
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215

Re: *ePlus, Inc. v. Lawson Software, Inc.*
    Civil Action No. 3:09cv620(REP)

Dear Will:

This letter sets forth the parties' agreements and understandings with respect to the issues discussed in our meet and confer this morning.

### Lawson Production of S3 Demo System

*e*Plus raised with Lawson problems that *e*Plus has encountered with respect to the lack of functionality of the Lawson S3 demo system. Lawson is checking into the possibility of either providing *e*Plus's counsel with online access to the demo system with Mr. Lohkamp's password with all functionality that would be available to Mr. Lohkamp, or making the S3 demo system available to *e*Plus's counsel at Lawson's headquarters in Minnesota. Lawson stated that it would respond with respect to these alternatives by the end of tomorrow.

### Lawson's Use of Rule 33(d) for its Answers to Interrogatory Nos. 10 and 14

Lawson agreed to supplement its answers to these interrogatories by December 23. The parties agreed that Lawson would supplement its answer to Interrogatory No. 14 to identify the module names, SKUs and releases that possessed the functionality set forth in the interrogatory from 2003 to the present. For Interrogatory No. 10, the parties agreed that Lawson would supplement its answer to state the revenues for the accused products -- as identified in *e*Plus's infringement contentions -- from 2003 to the present. For revenues pre-dating 2005, Lawson will use its best efforts to provide such information by the end of December, but it committed that it would provide this supplementation by the

GOODWIN | PROCTER

William D. Schultz, Esq.
December 15, 2009
Page 2

first week of January. To the extent this issue relates to *ePlus*'s infringement contentions, the parties' agreement with respect to that issue is discussed below.

**Lawson Production of Financial Documents**

As discussed, above, Lawson agreed to supplement its answer to Interrogatory No. 10, including for calculation for pre-2005 revenues of accused products. By December 23, Lawson will also supplement its answer to provide information for FY 2010, and update its answer with respect to license, maintenance, and other professional services revenues relating to the accused products. Lawson will also include the additional SKUs listed in *ePlus*'s letter of December 11.

Lawson stated that it has not yet located the chart of accounts document referred to in Mr. White's deposition, and it is possible that the document does not exist. Lawson agreed to inform *ePlus* by the end of December whether that is the case, or to produce the document if located.

Lawson agreed to provide an updated list of SKUs; however, that document will not be in catalog format. Lawson does not believe that a list of SKUs in catalog format was created after 2005. Lawson will provide this list by December 23.

Lawson agreed to confirm by December 23 whether its revenue spreadsheet previously produced includes revenues for international sales by non-U.S. Lawson entities. Lawson agreed to include such revenues in the updated information it will provide on December 23.

Lawson will look into whether the financial data it previously provided includes M3 products during the time between April 2006 until December 2008. If not, it will provide such data.

Lawson stated that it believes it produced all the CEO Weekly Reports with its production of December 4. *ePlus* will review that production to determine whether it can locate those documents.

**Various Production Issues With Respect to Lawson Documents**

Lawson agreed to look into issues raised by *ePlus* with respect to missing portions of the S3 source code and the schema for the Item Master database. In addition, Lawson will look into whether its identification of the documents corresponding to the M3 Companion was incorrect and whether it has produced the correct documentation. Lawson will produce such information or otherwise respond to *ePlus* with respect to this information by December 23.

LIBW/1726204.1

GOODWIN | PROCTER

William D. Schultz, Esq.
December 15, 2009
Page 3

Lawson stated that it believes it has produced the help texts and overview presentations for the S3 system, but it will verify that and identify the relevant bates range.

Lawson stated that it will look into whether it has produced the Punchout specifications for the implementation of Lawson's punchout connections to its various Punchout partners. Lawson will notify *ePlus*'s counsel of whether this has been done and will identify the relevant Bates ranges. If not produced, *ePlus* reiterates its request that such documents be produced.

Lawson agreed to provide a letter confirming that it has produced all of the Procurement Punchout partner agreements. Lawson stated that there are no written agreements for a number of Lawson's Procurement Punchout partners.

Lawson agreed to provide a letter confirming its statement that it has produced all of the requested industry analyst reports in its possession and that Lawson no longer has access to additional such reports. Lawson will look into whether it will identify the bates range for the documents it has produced.

Lawson agreed to provide a letter confirming that it has produced all relevant customer Requests for Proposals, responses to RFPs and Statements of Work. Lawson will look into whether there are additional professional services files that it has not produced, *e.g.*, with respect to installation, implementation customization services, and the like. Lawson agreed to provide a list of customers of the accused products and the specific products licensed as part of its supplemental response to Interrogatory No. 10 on December 23.

Lawson stated that it believes there is still one Lawson employee (Mr. Alfred Garem) that has refused to produce documents. Lawson agreed to look into that issue and report back. Otherwise, Lawson believes it has collected documents from all relevant Lawson employees, including employees located outside the U.S.

**Lawson Mandatory Invalidity Contentions**

Lawson agreed that by December 23 it would supplement its invalidity disclosures to: 1) disclose for each claim and for each prior art reference whether it relies upon those references for either Section 102 or 103 defenses; 2) state for each claim element, the specific combinations of prior art references relied upon for Lawson's obviousness defenses; and 3) identify for each claim element and prior art combination, the motivations or suggestions to combine the prior art references. *ePlus* withdrew its objection that Lawson's disclosure of Section 101 defenses lacked adequate specificity.

LIBW/1726204.1

GOODWIN | PROCTER

William D. Schultz, Esq.
December 15, 2009
Page 4

### ePlus Mandatory Infringement Contentions

ePlus explained its infringement contentions with respect to identification of the infringing combinations of Lawson modules. With its additional infringement contentions due next week, ePlus agreed to state in its claim charts where each element of an asserted claim exists in the three "core modules" of Lawson accused products, and also where elements of the asserted claims exist in additional "non-core" modules relied upon in ePlus's claim charts.

The parties further discussed what is required of ePlus with respect to disclosure of indirect infringement contentions, which is due next week under the scheduling order. Lawson stated that ePlus is required to identify for the asserted claims the elements that are performed by third parties, i.e., the elements for which ePlus asserts that some party other than Lawson is committing the direct infringement. ePlus explained that it believes Lawson is committing acts of direct infringement by, inter alia, making a complete infringing system within the scope of each claim when it implements such systems for its customers and also by hosting systems that meet all of the claim elements that are used by its customers.

### ePlus Production of Expert Reports from SAP and Ariba Litigations

ePlus will confirm today or tomorrow whether it has produced all the expert reports from the prior SAP and Ariba litigations that it is authorized to produce consistent with the protective orders in those cases.

### ePlus Production of Trial Exhibits and Demonstratives from SAP and Ariba Litigations

ePlus believes that it has already produced, and will confirm by tomorrow that it has produced, the exhibit lists from these litigations as well as the trial exhibits. ePlus will produce or identify if already produced the trial exhibit lists that contain references to the bates numbers from the prior litigations for those trial exhibits.

ePlus further stated that it believes it has produced all the demonstratives from the prior litigations that are in its possession, custody or control, but that it may not have all the demonstratives from those litigations, particularly if they were demonstratives of the opposing parties. ePlus stated that it does not believe that a formal list of the demonstrative exhibits exists from either of those litigations, but that it would search for such a list and produce it if found.

LIBW/1726204.1

GOODWIN | PROCTER

William D. Schultz, Esq.
December 15, 2009
Page 5

ePlus stated that while it has produced exhibits and expert reports in its possession from the *SAP* trial, and all trial exhibits for the *Ariba* trial, Ariba objected to ePlus producing other documents it produced and expert reports that contained its confidential information. ePlus does not object on confidentiality grounds to Lawson requesting such information from Ariba, but at this time it takes no position as to a possible Lawson motion to compel Ariba until Lawson presents further information as to the content of the motion.

### ePlus Production of Win/Loss Reports

ePlus stated that such reports are not formal documents but rather consist of informal e-mails and occasionally attached spreadsheets among sales personnel. ePlus confirmed that it has produced such documents. ePlus has identified all contracts/RFPs of which it is currently aware which involved competition against Lawson in its Answer to Lawson's Interrogatory No. 18. To the extent that ePlus becomes aware of additional RFPs on which ePlus competed against Lawson for the award of the contract, ePlus agreed to supplement its interrogatory answer as that information becomes available.

### ePlus Production of Documents With Large Bates Ranges

ePlus agreed to review the list of documents identified in Lawson's letter of November 16 and get back to Lawson in the next few days as to the reasons why these documents have large bates ranges and were not separated. ePlus informed Lawson that at least some of these documents were produced in this fashion because they were maintained in that fashion by ePlus, such as documents relating to the reexamination proceedings.

### ePlus Production of Third Party Documents Received Pursuant to Subpoena

Lawson stated that it believes that either party that receives third party documents pursuant to a subpoena is obligated to bates label and provide confidentiality labels for those documents when providing them to the opposing party. Specifically, Lawson noted that ePlus had not done so when providing copies to Lawson of documents received from third party Feld Entertainment. ePlus disagreed that the parties' stipulations require this, but that it is willing to agree to this on a reciprocal basis going forward. In addition, ePlus agreed to obtain a cost estimate for undertaking such labeling for the Feld Entertainment production, and to further discuss with Lawson an agreement for splitting the cost for labeling the Feld Entertainment production.

LIBW/1726204.1

GOODWIN | PROCTER

William D. Schultz, Esq.
December 15, 2009
Page 6


If you believe that I have omitted or misstated our agreements with respect to the discussion this morning, please let me know.

Sincerely,

*Jennifer A. Albert*

Jennifer A. Albert

JAA/dja

cc:   Dabney Carr, IV

GOODWIN | PROCTER

LIBW/1726204.1