**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE'S OPPOSITION TO ePLUS'S MOTION TO
EXCLUDE PROPOSED TRIAL EXHIBITS RELATING TO INVALIDITY**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.      ePlus's Objections to the J-CON RDB Guide (DX-98) and the
                J-CON Vol. 3 Manual (DX-97) Should be Overruled Because
                the Exhibits Support Properly Disclosed Invalidity Theories. ........................3

                1.      Factual Background Regarding the J-CON System...................................4

                2.      Lawson Disclosed Two Obviousness Invalidity Theories
                        Based on the J-CON System:  i) Combination of J-CON
                        and PO Writer V. 10; and ii) Combination of J-CON and
                        U.S. Patent No. 4,992,940 ........................................................5

                3.      Dr. Shamos Also Disclosed the same Two Obviousness
                        Opinions Based on the J-CON System:  i) Combination of
                        J-CON and PO Writer V. 10; and ii) Combination of J-
                        CON and U.S. Patent No. 4,992,940...........................................6

                4.      The RDB Guide and Vol. 3 Manual are Merely Additional
                        Evidence that Supports the Two Properly Disclosed
                        Obviousness Theories Based on the J-CON System...............................12

                5.      Admitting the RDB Guide and Vol. 3 Manual into
                        Evidence Does Not Prejudice ePlus .........................................13

        B.      ePlus's Objections to the TV/2 Video (DX-112) Should be
                Overruled ................................................................................14

                1.      The TV/2 Video is Additional Evidence in Support of
                        Properly Disclosed Theories. ...............................................14

                2.      The TV/2 Video is Documentary Evidence that will
                        Corroborate Testimony from Fact Witnesses. .............................17

                3.      Admitting the TV/2 Video into Evidence Will Not
                        Prejudice ePlus..............................................................18

        III.    CONCLUSION .............................................................................19

## I.   __INTRODUCTION__

ePlus seeks to exclude DX-97 (J-CON Manual Vol. 3), DX-98 (J-CON RDB Guide), and DX-112 (Video-TV Interactive Electric Technical Manual) because Lawson did not cite them in the Second Supplemental Initial Statement of Invalidity Defenses. ePlus's motion should be denied because these exhibits are additional evidence that support theories of invalidity that were disclosed in Lawson's contentions. The Court has said several times that both parties are permitted to rely on additional evidence if it supports existing, properly disclosed theories:

> THE COURT: . . .
> I do believe this, though, that if [ePlus's] expert is permitted, Weaver to cite support of [ePlus's] contentions on infringement evidence, ePlus, that wasn't cited in the infringement contentions, but support theories that were disclosed, then the same rule has to apply to [Lawson].
> And if that's where we are, then I may have made a mistake, and if I did, I'm going to correct it. That's the way it is. Because the rule has to apply both ways.

(Sept. 27, 2010 Hr'g Tr. at 190:3-12 (Ex. 1).) This Court permitted ePlus's expert, Dr. Alfred Weaver, to rely on hundreds of pages of new infringement evidence because it supported ePlus's disclosed theories. Lawson should be allowed to do the same.

In its Second Supplemental Invalidity Contentions, Lawson asserted:

6.   The J-CON system as described in the "J-CON Manual";

. . .

- Lawson is asserting J-CON system qualifies as prior art under 35 U.S.C. § 102(b) as in public use and on sale in this country more than one year prior to the date of the application for patent in the United States;

. . .

10.   The J-CON system as described in the "J-CON Manual" in combination with the '940 patent;

- Lawson is asserting this combination of references under 35 U.S.C. § 103;

11. The J-CON system as described in the "J-CON Manual" in combination with P.O. Writer Plus V.10 as described in the P.O. Writer Plus Version 10 manual;

- Lawson is asserting this combination of references under 35 U.S.C. § 103;

(Second Supp. Statement of Invalidity Defenses at 3, 5 (Ex. 2).)

The J-CON systems described in the J-CON manual **existed in 1992**. (SAP Trial Tr. at 1812:1-24 (ePLUS0201429)). **By 1993, several thousand auto stores had purchased and were using the J-CON system described in the J-CON manual**. (SAP Trial Tr. at 1835:9-19). Thus, the J-CON system described in the J-CON manual was **publicly used and sold** more than one year before the filing date of the application of the '683 patent.

(*Id.* at 57 (emphasis added).)  In its contentions, Lawson cited to the J-CON Vol. 1 Manual (DX-96) (admitted), which described the most features.  Lawson's expert, Dr. Michael Shamos, also cited Vol. 1, along with the RDB Guide (DX -98) and Vol. 3 (DX-97) in his expert report.  Contrary to ePlus's contentions, reliance on the RDB Guide and Vol. 3 Manual do not constitute new theories because they describe functionality that is also described in the Vol. 1 Manual and, like the Vol. 1 Manual, describe the J-CON product on sale in the 1992-1993 timeframe.  All three of these manuals support Lawson's long disclosed theory that ePlus's asserted patent claims are invalid based, at least in part, on the J-CON system that was on sale in 1992-1993.

Similarly, the TV/2 video supports Lawson's following invalidity theories:

8. The Fisher RIMS system in combination with the IBM Technical Viewer/2 system ("IBM TV/2 system") and/or the IBM Technical Viewer/2, General Information Manual:

- In addition to the foregoing, Lawson intends to rely on witness testimony and the following documentary evidence to prove that the TV/2 system is prior art that, in combination with the Fisher RIMS system, renders obvious the asserted claims:

  o 5799-IBM Technical Viewer/2 are labeled with Bates number ePLUS0210933-ePLUS0210938;

2

- the IBM Technical Viewer/2, General Information Manual is labeled with Bates numbers L0132122–L0132130;

- the IBM Technical Viewer/2 brochure is labeled with Bates numbers L0132131–L0132134;

- The IBM TV/2 system qualifies as prior art under 35 U.S.C. 102(b) as on sale and in public use more than one year prior to the date of the application for patent in the United States., and as ePlus admitted prior art;

. . .

- Lawson is asserting this combination of prior art under 35 U.S.C. § 103;

(Second Supp. Statement of Invalidity Defenses at 4 (Ex. 2).)  Not only did Lawson properly disclose these theories based on TV/2 in its Second Supplemental Invalidity Contentions, it moved for summary judgment on these theories.  (Lawson Mot. for Summary Judgment at 1 (Dkt. 240).)  The TV/2 video (DX-112) supports these properly disclosed theories.  It demonstrates the TV/2 system and will serve to corroborate witness testimony that the TV/2 system was on sale and in public use before October 1993.  No new invalidity theory is presented by reliance on the TV/2 video; only previously disclosed theories are supported.

## II.   ARGUMENT

### A.   ePlus's Objections to the J-CON RDB Guide (DX-98) and the J-CON Vol. 3 Manual (DX-97) Should be Overruled Because the Exhibits Support Properly Disclosed Invalidity Theories.

ePlus objects to exhibits DX-97 and DX-98 under Fed. R. Civ. P. 37 because they were not cited to in Lawson's Second Supplemental Invalidity Contentions.  This Court should overrule ePlus's objections because these exhibits are additional support for invalidity theories that Lawson properly disclosed in its invalidity contentions.

1.    Factual Background Regarding the J-CON System

J-CON was electronic procurement software for automotive parts retail stores that was developed and sold by a company named Cooperative Computing, Inc. ("CCI").  (SAP Trial Tr. at 1769:25 – 1770:16, 1773:19-22 (Ex. 3).)  Dr. Preston Staats founded CCI with his brother and together they developed and sold the J-CON software.  (*Id.* at 1769:25 – 1770:3, 1770:20 – 1771:5).  Dr. Staats is scheduled to testify at trial.  (Lawson Trial Witness List at 3 (Dkt. 391).) Although ePlus chose not to depose Dr. Staats, he testified at trial in the SAP lawsuit regarding his J-CON system.  (*See* SAP Trial Tr. at 1768:3-4 (Ex. 3).)  Dr. Staats testified (and will testify) that he sold the J-CON system during the late 1980s and early 1990s.  (*See id.* at 1796:19 – 1797:7).  He will testify that CCI never officially released different versions of the J-CON software and that while they continued to add additional features to the software as time progressed, they never removed or changed any existing features of functionality.  As Dr. Staats testified during the SAP trial, "Our customers were charter members of the If It Ain't Broke Don't Fix It Club.  They wanted new stuff.  They didn't want us going back and touching old stuff."  (*Id.* at 1812:21-23.)

The J-CON system is described in several technical publications including: 1) J-CON Vol. 1 Manual (April 1994) (DX-96), which has been admitted into evidence in this case; 2) J-CON RDB Guide (March 1993) (DX-98); and 3) J-CON Vol. 3 Manual (October 1989) (DX-98).  Because he only added, but did not remove functionality, Dr. Staats testified in the SAP trial that certain functionality described and depicted in the 1994 J-CON Vol. 1 Manual was part of J-CON as far back as 1988.  (*Id.* at 1812:1 – 1813:3.)  Likewise, he will testify at trial in this case that the functionality described in the RDB Guide and the Vol. 3 Guide was part of the same J-CON software described in the Vol. 1 Manual in 1994 and was on sale in 1992-1993 timeframe.  (*Id.* at 1812:1-23.)

4

2.      Lawson Disclosed Two Obviousness Invalidity Theories Based on the J-CON System: i) Combination of J-CON and PO Writer V. 10; and ii) Combination of J-CON and U.S. Patent No. 4,992,940

In its Second Supplemental Statement of Invalidity Defenses Lawson asserted that the "J-CON system qualifies as prior art under 35 U.S.C. § 102(b) as in public use and on sale in this country more than one year prior to the date of the application for patent in the United States." (Second Supp. Initial Statement of Invalidity Defenses at 3 (Ex. 2).)  For example, Lawson stated:

> The J-CON systems described in the J-CON manual **existed in 1992**. (SAP Trial Tr. at 1812:1-24 (ePLUS0201429)). **By 1993, several thousand auto stores had purchased and were using the J-CON system described in the J-CON manual**. (SAP Trial Tr. at 1835:9-19). Thus, the J-CON system described in the J-CON manual was **publicly used and sold** more than one year before the filing date of the application of the '683 patent.

(*Id.* at 57 (emphasis added).)  Lawson specifically asserted two obviousness theories based on the use and sale of the J-CON system.  First, Lawson asserted that the combination of the J-CON system and the P.O. Writer Plus Version 10 system rendered the claims obvious.  (*Id.* at 104-120.)  Second, Lawson asserted that the combination of the J-CON system and U.S. Patent No. 4,992,940 ("the Dworkin '940 patent") rendered the claims obvious.  (*Id.* at 88-104.)  Lawson did **not** limit its contentions to a particular version of J-CON.  Rather, as shown in the above quote from Lawson's contentions, Lawson indicated its intent to rely on the J-CON system that was being publicly used and sold in the 1992-1993 timeframe.

To support this obviousness argument based on the J-CON system disclosed its contentions responses, Lawson cited to J-CON Vol. 1 Manual (DX-96), which has been admitted into evidence in this case.  Lawson further indicated that it would rely on witness testimony to prove up its defenses based on J-CON.  (*Id.* at 3-4; *see also* Lawson's Supp. Rule 26(a)(1) Initial Disclosures at 1-2 (Ex. 8).)  The RDB Guide and Vol. 3 Manual will be used as further support

5

for the theory that the J-CON system was publicly used and on sale in 1992-1993, together with either (1) the P.O. Writer V. 10 system or (2) the Dworkin '940 patent, render ePlus's claims obvious and invalid.

      3.    <u>Dr. Shamos Also Disclosed the same Two Obviousness Opinions Based on the J-CON System: i) Combination of J-CON and PO Writer V. 10; and ii) Combination of J-CON and U.S. Patent No. 4,992,940</u>

Dr. Michael Shamos's expert report included the same J-CON obviousness theories that Lawson previously disclosed in its Second Supplemental Initial Statement of Invalidity Defenses: invalidity under §103 based on the combination of the J-CON system as sold and publicly used in or before 1993 and (1) P.O. Writer V. 10 or (2) the Dworkin '940 patent. (Shamos Rep. at 67-69 (Ex. 4).)

Dr. Shamos's expert report contained a large claim chart, produced as a Microsoft Excel document in native form, that included an element-by-element analysis of each prior art reference including the J-CON system, the PO Writer V. 10 system, and the '940 patent. (Ex. 5.) With regard to the J-CON system, Dr. Shamos cited to all three J-CON manuals (Vol. 1, RDB Guide and, Vol. 3). For example, the following is an excerpt from Dr. Shamos's invalidity Excel claim chart for these three references against claim 9 of the '516 Patent (J-CON manual identifications added):

| '516 Patent | Shamos Opinion re P.O. WRITER | Shamos Opinion re . . . U.S. Patent 4,992,940 | Shamos Opinion re J-CON |
|---|---|---|---|
| 9. An electronic sourcing system comprising: | P.O. Writer is an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.<br><br>Locating items is disclosed at L0127525-30 (Requisitioning manual). Purchasing the located items is disclosed at L0126745-56 et seq. | Dworkin discloses an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors: "An automated system assists a user in locating and purchasing goods or services sold by a plurality of vendors. The system | J-CON is an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors<br><br>(Retail) Locating items is disclosed, e.g., at L012360 [Vol. 1]: "PartFinder is J-CON's electronic parts catalog. Use it with Point-of-Sale (POS) to look up the parts a customer wants and put them on the |

| '516 Patent | Shamos Opinion re P.O. WRITER | Shamos Opinion re . . . U.S. Patent 4,992,940 | Shamos Opinion re J-CON |
|---|---|---|---|
| | (Purchasing Tutorial).<br><br>Multiple vendors are disclosed: "P.O. WRITER PLUS keeps a record of your Vendors in the VENDOR MASTER FILE." L0126731<br><br>Claim 9 is anticipated by P.O. Writer. | includes a programmed computer which is linked to a database. The database contains information about a large number of different products and/or services, arranged in various categories. For each product or service, the database contains information on price, vendor, specifications and/or availability." Abstract. | ticket."<br><br>Purchasing items is disclosed, e.g., at L0123459 [Vol. 1] et seq. ("Start the Sale"). (Dealer)  Sourcing for inventory is disclosed, e.g., at L0123681 [Vol. 1] et seq. (Purchasing and Receiving) and, e.g., at L0123964 [Vol 1.] et seq. (Inventory Information).<br><br>Multiple vendors are disclosed: "ORDER BY CODE.  If the manufacturers parts are ordered from one vendor (by line) enter "L"<br>multiple vendors (by subline), enter "S" ... If you have second and third choices for vendors enter their vendor numbers." L0125080 [RDB]<br><br>"Adding and Editing Vendors. Most of your vendors were added when your system was set up.  When you add new vendor most prompts you receive are self-explanatory." L0125142 [RDB]<br><br>Claim 9 is anticipated by J-CON. |
| a collection of catalogs of items stored in an electronic format; | To the extent that ePlus contends that this limitation is met by Lawson's accused system, i.e., that restricting a search by vendor number constitutes searching a "separate portion," this limitation is also met by P.O. Writer and Lawson's prior art system.<br><br>P.O. Writer maintained catalog data in an electronic database (electronic format): "Bayless Stationer publishes a catalogue of office supplies they sell.  A very small portion of this catalogue has been pre-loaded In the sample data | Dworkin discloses this element, as shown in Fig. 1:<br><br>'In the preferred embodiment, the database may be the equivalent of thousands of catalogs of individual suppliers. 3:66-68.  See also '172 claim 1c. | The J-CON system maintained automotive parts information from multiple manufacturers and multiple vendors in an electronic database, including such information as part number, auto make, model, and year, engine size, subassembly, product description, inventory status, price, manufacturer, distributor(s), and unit of measurement. The J-CON system included the information previously maintained by automotive parts stores in a large collection of printed automotive parts catalogs. |

| '516 Patent | Shamos Opinion re P.O. WRITER | Shamos Opinion re . . . U.S. Patent 4,992,940 | Shamos Opinion re J-CON |
|---|---|---|---|
| | base."  L0126575.<br><br>P.O. Writer accommodated catalogs of multiple vendors: "You can now buy this item from Best Buy, Bayless. or any other vendor you would like to select."  L0126552.<br><br>The P.O. Writer database could be searched by vendor number, indicating a portion to be searched separately: "Since you haven't received a response from Bayless yet, order from Best Buy: - In the Vendor Number field, type 12345 [ENTER]."  L0126552.<br><br>Catalogs were published by vendors: "Bayless Stationer publishes a catalogue of office supplies they sell." L0126575 | | "PART-FINDER is J-CONs electronic catalog system that you use together with Point-Of-Sale. You use PART-FINDER to look up parts and Point-Of-Sale to sell them. With PARTFINDER you can forget those time consuming searches through manufacturer catalogs" L0124897 [Vol. 3].<br><br>Changing catalogs is described at L0124922 [Vol. 3]. Therefore, J-CON included a collection of catalogs. |
| a first identification code associated with a first item in a first catalog; | P.O. Writer enabled a user to search for matching items among product catalogs by entering search criteria, including item number, item description, and commodity code, that at least partially describes a desired item. (L0127525 & L0127528).<br><br>The catalogs can be searched by ITEM NUMBER, ITEM DESCRIPTION, COMMODITY CODE, or a portion of these criteria. (SAP_0803523-24.) Therefore, a first identification code is associated with a first item in a first catalog. | "When the user enters the number or identifier of a product or service appearing on the above-described display, the system shows the user the names of the suppliers from whom that product or service can be obtained."  2:25-29. | Items in J-CON can be identified by codes, such as manufacturer's code (L0123450 [Vol. 1]) or part number (L0123456 [Vol 1.]). |
| a second identification code associated with a second item in a second | This element is disclosed at L0126552, which shows a purchase order history screen listing different catalog numbers (first column) for the same item number (A1000) as listed by | "When the user enters the number or identifier of a product or service appearing on the above-described display, shows the user the | "InterChange is J-CONs electronic cross-reference for parts. You begin InterChange by pressing InterChange from any field on the POS screen except WRKSTAT or from PartFinder."  L0123450 [Vol. |

| '516 Patent | Shamos Opinion re P.O. WRITER | Shamos Opinion re . . . U.S. Patent 4,992,940 | Shamos Opinion re J-CON |
|---|---|---|---|
| catalog, said first item and said second item being generally equivalent, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs. | different vendors, e,g, Best Buy and Bayless. | names of the suppliers from whom that product or service can be obtained." 2:25-29. This teaches that the same product, which will have different catalog numbers when listed by different suppliers, will all be retrieved as part of a search.  The user can then request detail information about each product retrieved: "For each product, the entries in FIG. 6 include a number which identifies the product, the name of the manufacturer, the manufacturer's model number for the product, the lowest price available among all the vendors in the database, the average price for the product for all the vendors in the database, and the list price for the product." 6:26-32.   In this manner the "other identification code" is obtained. | 1].  "If you have PartFinder you can add InterChange to your J-CON.  InterChange cross-references parts in lines you don't stock (called competitive parts) to parts in lines you do stock (called InterChange parts). InterChange can find an InterChange part even if you do not know the manufacturer or the complete part number of the competitive part." L0123601 [Vol. 1].  "InterChange is an optional product that you use to find an equivalent (or InterChange) part for a competitive part. You start InterChange from POS or from PartFinder."  L0123621 [Vol. 1].  "InterChange enters the selected part number in the COMPETITIVE PART field so you can use it to search for cross-references."  L0123628 [Vol 1.].  J-CON had a sophisticated system for keeping track of equivalent items, dividing them into "Replaced Parts," "Substitute Parts," and "Can-Use Parts."  L0123551 [Vol 1.]. Furthermore, "Alternate Parts" and "Primary and Alternate Manufacturers" are disclosed at L0123613 [Vol 1.].  A number of different methods of converting among item numbers is disclosed. Substituting an alternate part is described, e.g., at L0124837 [Vol .3]. |

A printed version of Dr. Shamos's claim chart for all asserted claims for the P.O. Writer V. 10, J-CON, and the '940 patent references is attached hereto as Exhibit 5.  In the printed version

9

attached as exhibit 5, Dr. Shamos used green shading to denote his opinion that the shaded

element was anticipated and also obvious in light of the specified prior art reference.  The red

boxes (which were added to Exhibit 5 for purposes of this brief) show which citations were to

the J-CON RDB Guide and J-CON Vol. 3 Manual.  The citations in column S (of Exhibit 5) that

do not contain a red box are to the J-CON Vol. 1 Manual, which has already been admitted.

Additionally, in the body of his expert report, Dr. Shamos explained why one of ordinary

skill in the art would combine the J-CON system with the P.O. Writer V. 10 system and

separately explained why one of ordinary skill in the art would combine the J-CON system with

the '940 Patent.  (Shamos Rep. at 67-69 (Ex. 4).)  For example, Dr. Shamos's expert report stated

in part:

### The Combination of J-CON Plus Dworkin '940 Renders the Asserted Claims Obvious

229. It is my opinion that J-CON anticipates all the Asserted Claims.

230. To the extent that J-CON is not deemed to anticipate any Asserted
Claim, it is my opinion that such claim would have been obvious in view of the
combination of J-CON with the Dworkin '940 patent. The combination teaches all
of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted
claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172
patent as shown in Exhibits 3 and 4). As such, the combination of JCon and the
'940 patent renders these claims invalid under 35 U.S.C. §103.
. . . .

232. One of skill in the art would also have been motivated to make the
combination because the '940 patent states, "It is another object to provide a
system and method which facilitates the processing of orders for goods or services
transmitted by a user." 3:9-11. This capability is provided by J-CON.

233. Furthermore, the '940 patent provided the multi-source capability
demanded by the industry at and before the time of the invention.

234. Additionally, the J-CON system included features that one of
ordinary skill in the art would have been motivated to use with the '940 invention,
including the ability to electronically determine the current availability in the
inventory at multiple locations, to perform a cross-referencing of data relating to

10

an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected, and the ability to generate multiple purchase orders from a single requisition (as described above and in detail in Exhibit 3).

### The Combination of J-CON and P.O. Writer Renders the Asserted Claims Obvious

235. It is my opinion that J-CON anticipates all the Asserted Claims. It is also my opinion that P.O. Writer anticipates all of the asserted claims.

236. To the extent that J-CON and/or P.O. Writer are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with P.O. Writer. The same reasons for making the previous two combinations apply to combining the J-CON system as described in the "J-CON Manual" with P.O. Writer Plus V. 10 as described in the P.O. Writer Plus Manual. . . .

(*Id.* at 65-67.)

ePlus's argument that Dr. Shamos does not rely on the J-CON RDB Guide and the J-CON Vol. 3 Manual to support his obviousness theories is just wrong – he did rely on them as shown above and in Exhibit 5.  This argument is further belied by ePlus's admission that Dr. Shamos relied on those manuals to support his anticipation theories.  (*See* ePlus Br. at 13 (Dkt. 493).)

ePlus apparently seeks to mischaracterize and unduly limit Dr. Shamos's disclosures because he did not **repeat** his comparison of the J-CON system to the claim elements in rendering his obviousness opinions.  There is no such requirement, and such a requirement would add redundancy and confusion to an already complex analysis.  As shown above and in Exhibit 5 hereto, Dr. Shamos identified precisely where the three J-CON manuals disclosed the elements of ePlus's asserted patent claims.  His report clearly relies on this showing to support both his anticipation[1] and obviousness opinions.  (*See* Shamos Rep. at 59-60 (Ex. 3); *see also*

---

[1]     Lawson also contended that the J-CON system anticipates claim 6 of the '683 patent. ePlus has withdrawn its claim of infringement based on claim 6, so anticipation of claim 6 based on J-CON is no longer an issue.  However, how and where the J-CON manuals disclose the

Shamos Claim Chart (Ex. 5).)  He also identified where the P.O. Writer system and the Dworkin '940 patent disclosed the elements of each claim.  (*See* Shamos Claim Chart (Ex. 5).)  ePlus provides no authority or other basis to exclude the RDB Guide and the Vol. 3 Manual simply because Dr. Shamos did not repeat the identification of claim elements in the three manuals under the "Obviousness" heading in the body of his opinion.  To impose such a requirement makes no sense, as it is a waste of time and a waste of paper, and exalts neither form nor substance.

> 4.    The RDB Guide and Vol. 3 Manual are Merely Additional Evidence that Supports the Two Properly Disclosed Obviousness Theories Based on the J-CON System

As ePlus itself successfully advocated, it is proper to rely on additional evidence to support properly disclosed theories.  (*See* Sept. 27, 2010 Hr'g Tr. at 90:10-19 (Ex. 1); *see also* Order (Dkt. 358).)  In support of the two properly disclosed J-CON obviousness theories, Dr. Shamos relied on the J-CON Vol. 1 Manual plus two additional pieces of evidence that Lawson did not cite in its contentions:  the J-CON RDB Guide (DX-98) and the J-CON Vol. 3 Manual (DX-97).  However, the RDB Guide and the Vol. 3 Manual do not create new invalidity theories, but simply serve as additional evidence in support of the two disclosed obviousness theories. They support Lawson's arguments regarding the functionality of the J-CON system that was on sale in 1992-1993, which supports Dr. Shamos's opinions that J-CON plus P.O. Writer V. 10 and J-CON plus the '940 patent invalidate the asserted claims.

Contrary to ePlus's unsupported speculations, the J-CON Vol. 1 Manual (April 1994), the J-CON RDB Guide (March 1993), and the J-CON Vol. 3 Manual (October 1989) all describe similar features of J-CON as sold in 1992-1993.  Dr. Staats will explain at trial that the company added features to J-CON as time progressed, but he did not remove existing features.  For this

elements of other asserted claims remains relevant to the  obviousness theories based on J-CON.

reason, both the RDB Guide and the Vol. 3 Manual describe features that were on sale and in public use in 1992-1993. Dr. Staats will further testify about similar features described in the J-CON Vol. 1 Manual that were in the J-CON product on sale and in public use in 1992-1993. (SAP Trial Tr. at 1812:21-23 (Ex. 3).) Given Lawson's burden to prove invalidity by clear and convincing evidence, it should be allowed to provide this powerful and corroborating evidence of the J-CON prior art.

J-CON is not, as ePlus would have the Court believe, akin to a Ford Mustang that is revamped every year. (*See* ePlus Br. at 12.) Rather, J-CON is more akin to a home that has additions built onto it over time. The rooms of the home (product functions and features) that existed in 1989 still existed in 1993 and 1994. In later years additional rooms (features) were added, but Dr. Staats will testify that none of the pre-existing features or functions were removed. Just as brochures showing the rooms of the home in 1989 could accurately describe rooms of the home that existed in 1994, Dr. Staats's testimony will show that documentation of the features and functions of the J-CON software before 1992 accurately reflect features and functions of the software sold and in public use in 1992-1993.

5. <u>Admitting the RDB Guide and Vol. 3 Manual into Evidence Does Not Prejudice ePlus</u>

Moreover, ePlus has known about the J-CON RDB Guide and the J-CON Vol. 3 Manual for a long time. Dr. Staats testified about both documents during the SAP trial. (SAP Trial Tr. at 1815:9 – 1816:2 (RDB Guide testimony), 1792:6 – 1795:12 (Vol. 3 Manual testimony) (Ex. 3).) As the Court noted during the pretrial conference, ePlus cannot be surprised by documents discussed during the SAP trial. (*See* Sept. 27, 2010 Hr'g Tr. at 203:7-10 (Ex. 1).) As such, Dr. Shamos's use of the J-CON RDB Guide and J-CON Vol. 3 manual do not come as a surprise to ePlus.

ePlus will not otherwise be prejudiced by Dr. Shamos's use of these documents.  Its invalidity expert Mr. Hilliard had an opportunity to respond to this evidence and did respond in his rebuttal expert report.  (*See, e.g.*, Hilliard Rep. at ¶ 207 (Ex. 6).)  Indeed, ePlus should have known that Mr. Hilliard would need to deal with the RDB Guide and the Vol. 3 Manual when the Court declined to preclude them before Mr. Hilliard's report was due.  (Order at 3 (Dkt. 230); *see* May 24, 2010 Hr'g Tr. at 105:5 – 106:6 (Ex. 7).)

### B.   ePlus's Objections to the TV/2 Video (DX-112) Should be Overruled

This Court has already overruled ePlus's objection to the TV/2 video (DX-112) based on alleged discovery deficiencies and based on relevance.  (Sept. 27, 2010 Hr'g Tr. at 205:8-11 (Ex. 1).)  This Court said the only remaining issue was whether ePlus will be prejudiced if this Court admits DX-112.  ePlus reargues the issues it already lost, contending yet again that the TV/2 video should be excluded because it was not cited by Dr. Shamos in his report, it was not disclosed in the Lawson's Second Supplemental Initial Statement of Invalidity Defenses, and it was not disclosed during discovery.  (ePlus Br. at 9.)  In essence, ePlus is asking the Court, without any basis without following proper procedure, to reconsider its prior ruling.  This request should be rejected.  Moreover, admission of the video will not unfairly prejudice ePlus or disrupt trial.

### 1.   The TV/2 Video is Additional Evidence in Support of Properly Disclosed Theories.

This Court has stated that additional evidence may be used to support existing theories and that this rule applies to both parties.  (*See* Sept. 27, 2010 Hr'g Tr. at 90:10-19 (Ex. 1); *see also*  Order (Dkt. 358).)  The TV/2 video **was** produced during discovery and supports Lawson's properly disclosed theory that ePlus's asserted claims are invalid under §103 based on RIMS in combination with TV/2.  Lawson has consistently asserted that combinations of prior art

including the TV/2 system invalidate ePlus's asserted claims.  For example, Lawson stated the

following in its Second Supplemental Initial Statement of Prior Art Defenses:

> Lawson is also asserting the following combination of prior art references render
> obvious the asserted claims:

> 8.      The Fisher RIMS system in combination with the IBM Technical
>         Viewer/2 ("IBM TV/2 system") and/or the IBM Technical Viewer/2,
>         General Information Manual

(Second Supplemental Initial Statement of Prior Art Defenses at 4 (Ex. 2).)   This is consistent

with Dr. Shamos's opinions in his report, which included the following:

### The Combination of TV/2 Plus RIMS Renders
### the Asserted Claims Obvious

. . .

215. The combination of these two systems, RIMS and TV/2 teaches all of
the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted
claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172
patent as shown in Exhibits 3 and 4).  As such, the combination of RIMS and
TV/2 renders these claims invalid under 35 U.S.C. §103.

. . .

217. The TV/2 documents include an explicit motivation to combine the
Fisher RIMS and TV/2 systems.  The IBM Technical Viewer/2 brochure teaches:
"You can also create a 'shopping list' just by selecting items and passing that list
to another application.  For example, you might select parts to be ordered from the
exploded drawings in the parts catalogue.  The part list could then be sent directly
to your parts ordering system . . . ." (L0132133).  It also teaches: "Technical
Viewer/2 is suitable for whole ranges of uses and industries in which information
is supplied in large quantities and updated regularly, and where uses need fast
access to precise details.  Potential uses include: . . . . Integrating part catalogues
with dealers' computer systems such as order entry, inventory management and
customer records . . . ."  (L0132134.)

. . .

221. The RIMS system and TV/2 systems were both designed to operate
on the IBM OS/2 operating system platform, which further demonstrates that it
would have been obvious to one of ordinary skill seeking to have a system with
both extended searching capabilities and a requisition/purchasing system to
combine the Fisher RIMS system with the TV/2 system.  Dynamic data exchange

(DDE) was the known, preferred protocol for exchanging information between applications operating on an OS/2 system.

. . .

(Shamos Rep. at 63-65 (Ex. 4).)  The TV/2 video further supports these theories.

The TV/2 video depicts the same system described in the TV/2 documents that Lawson disclosed in its Second Supplemental Initial Statement of Invalidity Defenses and relied on by Dr. Shamos in his report, only with greater clarity.  For example, the TV/2 video shows screen shots from the TV/2 system similar to fuzzier versions of the images included in the TV/2 brochure, as shown for example below showing images of parts diagrams:

        

TV/2 Video                        TV/2 Brochure (L0132133)

The TV/2 video is additional, and in many cases clearer, documentation showing and demonstrating the TV/2 system, which will be helpful to corroborate the testimony of TV/2 witnesses Lawson will call at trial.  The TV/2 video does not create new theories of invalidity, it only further supports Lawson's long-disclosed theories, which (as ePlus successfully advocated to its benefit) should not be excluded just because it was not specifically identified in contentions.  (*See* Sept. 27, 2010 Hr'g Tr. at 90:10-19 (Ex. 1).)

2.     The TV/2 Video is Documentary Evidence that will Corroborate
            Testimony from Fact Witnesses.

The TV/2 video is evidence relating to the prior art TV/2 system that was in use and on sale before the critical date of the patents-in-suit.  As with any invalidity case, Lawson bears the burden to prove *by clear and convincing evidence* both that TV/2 is prior art (it was on sale and in public use before October 1993) and that it included the necessary elements.  Thus, although the TV/2 video includes information very similar to information in the TV/2 documents relied on by Lawson and Dr. Shamos and countered by ePlus's Mr. Hilliard, Lawson should be allowed to use this additional evidence to meet its burden of proof.

ePlus also disputes that TV/2 is prior art (arguing it was not public and disputing dates, among other things).  The video is highly probative of the disputed fact that the TV/2 system had the disputed features before the critical prior art date and that it was publicly used, and thus should be allowed for this further reason.

Pamela Eng, a former employee of IBM, marketed TV/2 in 1992-1993 and was involved with production of the TV/2 video.  The TV/2 video was shown during the SAP trial, and Ms. Eng testified about it.  (SAP Trial Tr. at 1300:9 – 1302:13 (Ex. 3).)  ePlus cross-examined her about it.  (*Id.* at 1337:7 – 1338:21.)  She testified during the SAP trial that the video was made in 1992.  (*Id.* at 1300:9-16.)  She testified that she was confident about the date of the video because she can tell she made it before she became pregnant (she can tell this by seeing what she looked like in the video) and her son was born in April 1993.  (*Id.* at 1294:20 – 1295:3.)  The video, together with her expected testimony at this trial, is compelling evidence as to the date that TV/2 was on sale and in public use.  It is visually compelling documentation to corroborate Ms. Eng's testimony that TV/2 is prior art.  (*See id.* at 1300:9 – 1301:24.)  As such, it has a very

high probative value to Lawson's invalidity defense, far outweighing any potential unfair prejudice to ePlus.

>     3.     Admitting the TV/2 Video into Evidence Will Not Prejudice ePlus.

ePlus's arguments that it will be prejudiced by the TV/2 video are hollow.  As the Court noted, ePlus cannot be surprised because the TV/2 video was an exhibit discussed during the SAP trial.  (*See* Sept. 27, 2010 Hr'g Tr. at 203:7-10 (Ex. 1).)  ePlus was aware of the TV/2 video even before it filed suit against Lawson and it had the opportunity to and did cross-examine Ms. Eng about this video during the SAP trial.  (SAP Trial Tr. at 1337:7 – 1338:21 (Ex. 3).)

ePlus's contention that its expert, Brooks Hilliard, did not have an opportunity to address the video is false.  Mr. Hilliard was also ePlus's invalidity expert in the SAP case, where the TV/2 video was used as a trial exhibit for SAP's invalidity case.  (*See id.* at 1300:9 – 1302:13.)  Moreover, whether TV/2 qualifies as prior art is not really an expert issue, particularly for a technical expert like Mr. Hilliard.  He is in no better position than the jury to decide whether Ms. Eng's testimony about the TV/2 dates, public uses, and sales is credible.  Rather his job is to testify about whether the technical features of TV/2 meet the claim elements – on this point, the TV/2 video is supportive and cumulative of the evidence he did address and rely.  Thus, this prejudice argument fails.

ePlus's only other argument is that it will be prejudiced by dealing with the evidence. Here, ePlus seeks to unfairly have it both ways.  ePlus has successfully advocated that new evidence should be allowed to support its own previously-disclosed theories.  Yet when faced with application of the same rule for Lawson, ePlus complains of prejudice.  Moreover, the facts do not support its claim of prejudice here.  Lawson has asserted the TV/2 as invalidating prior art since the early in this case.  The TV/2 video supports that theory.  ePlus has known about the

TV/2 video for several years, and had much more time to consider its impact than Lawson has had to consider the additional support for ePlus's infringement claims.  As the Court said, "the rule has to apply both ways."  (Sept. 27, 2010 Hr'g Tr. at 190:3-12 (Ex. 1).)

In sum, this Court should further overrule ePlus's objections to DX-112 because admitting this exhibit will not cause any unfair prejudice to ePlus.

## III.   CONCLUSION

The J-CON manuals and TV/2 video support invalidity theories that were properly disclosed to ePlus during discovery.  The manuals and the video provide helpful clarity and corroboration of the facts underlying the theory, including the date of the prior art.  Given Lawson's heavy burden of proof regarding invalidity, the evidence should be admitted.  Moreover, ePlus has long had notice of the video and manuals, and plenty of opportunity to prepare its response, and thus is not unfairly prejudiced by admission of the exhibits.  For the reasons stated, Lawson respectfully requests that the Court deny ePlus's Motion to Exclude DX-97 (the J-CON Vol. 3 Manual), DX-98 (the J-CON RDB Guide), and DX-112 (the TV/2 Video).

LAWSON SOFTWARE, INC.


By_____/s/_____
              Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339


Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 1st day of November, 2010, a true copy of the foregoing will be filed

electronically with the Clerk of Court using the CM/ECF system, which will send a notification

of such filing (NEF) to the following:

| | |
|---|---|
| Craig T. Merritt | James D. Clements |
| Henry I. Willett, III | Goodwin Procter, LLP |
| **CHRISTIAN & BARTON, LLP** | Exchange Place |
| 909 East Main Street, Suite 1200 | 53 State Street |
| Richmond, Virginia 23219-3095 | Boston, MA 02109-2881 |
| cmerritt@cblaw.com | jclements@goodwinprocter.com |
| hwillett@cblaw.com | |

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*


                            /s/
                    _____
                    Dabney J. Carr, IV (VSB No. 28679)
                    Robert A. Angle (VSB No. 37691)
                    Megan C. Rahman (VSB No. 42678)
                    dabney.carr@troutmansanders.com
                    robert.angle@troutmansanders.com
                    megan.rahman@troutmansanders.com
                    **TROUTMAN SANDERS LLP**
                    1001 Haxall Point
                    Richmond, VA 23219
                    Telephone: (804) 697-1200
                    Facsimile: (804) 697-1339
                    *Counsel for Defendant Lawson Software, Inc.*