**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

ePLUS INC.,                              )
                                         )
      Plaintiff,                       )
                                         )
      v.                               )   Case No. 3:09CV620 (REP)
                                         )
LAWSON SOFTWARE, INC.,                   )
                                         )
      Defendant.                       )


**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF EPLUS'S MOTION TO EXCLUDE
INCOMPLETE ALLEGED PRIOR ART DOCUMENTS**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    ePlus Has Been Long Aware of the P.O. Writer Manual Prior Art and
        Lawson's Reliance on It.............................................................................. 2

    B.    Lawson Had Good Reason to Believe that It Had Obtained Copies of All
        Existing Pages of the P.O. Writer Manual. ............................................... 4

    C.    After the Pretrial Conference, Lawson Contacted Ms. McEneny Again,
        Obtained the Missing Chapters, and Produced them to ePlus.  They Show
        there is no Unfairness in Admitting the Proffered Exhibits. .................... 8

III.   THERE IS NO BASIS TO EXCLUDE DEFENDANT'S EXHIBITS 121 AND
     122. .................................................................................................................... 9

    A.    Rule 106 Is a Rule Of Completeness, Not Exclusion, Rooted In Fairness,
        And Places the Burden on ePlus to Show Prejudice if the Missing Material
        Is Not Admitted. ..................................................................................... 10

    B.    Admission is Fair and Not Unduly Prejudicial Because Lawson Previously
        Relied in Good Faith on the Representations of Ms. McEneny and ePlus
        Regarding Production of P.O. Writer Documents from the SAP Case, and
        Obtained the Missing Chapters Once ePlus Specifically Raised the Rule
        106 Objection. ........................................................................................ 11

    C.    The Recent Discovery Of The Missing Chapters Confirms There Is No
        Reason To Exclude The Proffered Exhibits—With Or Without Chapters 3,
        4, And 5—Under Rule 106. .................................................................... 13

    D.    DX-121 and DX-122 Are Also Admissible Under Rules 402 And 403.............. 15

IV.   CONCLUSION ................................................................................................. 18

## I.    <u>INTRODUCTION</u>

There is no dispute that Lawson disclosed and relied on chapters 1 and 2 of the P.O.
Writer Plus Version 10 Purchasing manual (DX-121 and DX-122) in both its invalidity
contentions and its expert report.  Nevertheless, ePlus seeks an order excluding this prior art
under Federal Rule of Evidence 106 on the basis that the remaining chapters 3, 4, and 5 from this
manual were not available to be entered into evidence.

Rule 106 is a rule of inclusion—not exclusion.  It is also a rule of fairness, intended to
minimize prejudice that might be caused by admitting only portions of documents in evidence.
ePlus attempts to manufacture prejudice by speculating that the missing chapters of the P.O.
Writer manual at issue *might* have something prejudicial.  This is insufficient grounds for
exclusion because ePlus bears the burden of proving prejudice.  Moreover, the missing chapters
of the manual have now been obtained and produced to ePlus.  Their contents show that ePlus's
allegations are completely unfounded.  The missing chapters contain nothing that would suggest
the proffered chapters 1 and 2 of the manual are misleading.  In any event, while Lawson does
*not* seek to admit the missing chapters into evidence, Lawson does not oppose their inclusion if
this is what ePlus wants.  ePlus's motion is moot.

ePlus nevertheless continues to pursue its motion because it has nothing to do with the
fairness or completeness.  Rather, ePlus's goal is to exclude admissible, strong prior art in the
desperate attempt to avoid an invalidity finding at trial, in the shadow of the Patent Office's
repeated rejections of its claims based on the P.O. Writer manual.

ePlus cites no cases in support of its argument that a prior art reference should be
excluded because other portions of the prior art reference are absent.  This is not surprising, as
the chapters stand alone as evidence of prior art, and ePlus cannot meet its burden to show undue

prejudice under Rule 106 based on mere speculation.  In addition, the issue is moot, as the chapters are now available to be admitted in evidence under Rule 106.  ePlus cannot complain about the timing of the production, because it had every opportunity to obtain the additional chapters during discovery.  As a tactical maneuver, ePlus deliberately avoided asking for the chapters back then.  As a further tactical maneuver, ePlus complained they were missing at the pretrial conference.  ePlus waited to raise the completeness issue until a point in time after which it hoped Lawson could do nothing about it.  Now that the chapters have been obtained and produced, the focus should move from tactical maneuvering to the real issues of fairness and inclusion.  The chapters show that there is no unfairness or undue prejudice in admitting Lawson's proffered exhibits, and ePlus's speculative arguments that the exhibits are irrelevant, unfairly prejudicial and misleading are without basis.  As such, this Court should deny ePlus's motion to exclude.

## II.     FACTUAL BACKGROUND

### A.     ePlus Has Been Long Aware of the P.O. Writer Manual Prior Art and Lawson's Reliance on It.

Since early in this case, Lawson has asserted that the P.O. Writer Plus Version 10 system is prior art because it was on sale and in public use more than one year before the filing date of the patents-in-suit.  (Defendant Lawson Software, Inc.'s Second Supplemental Initial Statement of Invalidity Defenses, Ex. A at 2-3.)  Lawson has also asserted that the P.O. Writer Plus Version 10 Manual is both a § 102(b) prior art printed publication *and* evidence that the P.O. Writer system was on sale and in public use.  (*Id.*)  ePlus has long known about P.O. Writer prior art because it was used at trial in the SAP case and because it has been cited during the reexamination at the U.S. Patent and Trademark Office.  ePlus has had ample opportunity over several years to address this strong prior art.

2

The P.O. Writer software was sold by a company named American Tech.  Laurene

(Fielder) McEneny co-owned American Tech and sold the P.O. Writer software.  (10/27/10

Declaration of Laurene McEneny ("McEneny Decl."), Ex. B ¶ 2.)  Her company released a new

version of P.O. Writer every year, usually in the spring.  (6/10/10 Deposition of Laurene

McEneny ("McEneny Dep."), Ex. C at 23:16-24:2, 109:17-111:3.)  American Tech released the

P.O. Writer Plus Version 10 system ("P.O. Writer System") in the spring of 1993.  (*Id.* at 92:6-

8.)  The P.O. Writer System consisted of the several software modules, including purchasing,

requisitioning, inventory control, and data and EDI interfaces.  (*See, e.g.*, P.O. Writer Plus

License Agreement, DX-125, Ex. D.)  At issue here is a user's manual ("P.O. Writer Manual")

that describes the P.O. Writer System.  It has a "Guided Tour" relating to the system and also

manuals corresponding to its modules.  Manuals for each of the modules making up a version

were released together.  (McEneny Dep., Ex. C at 145:12-19.)  The Version 10 manuals also

were released in the Spring of 1993.  (*Id.* at 116:1-25, 110:11-18, 112:12-113:18; Ex. D.)

The P.O. Writer system and the same two chapters from the P.O. Writer purchasing

manual that are at issue here were used as prior art at trial in the SAP lawsuit.  Ms. McEneny

testified about P.O. Writer during the SAP trial.  (04/13/06 McEneny Testimony from ePlus v.

SAP case, Ex. E.)  The same exhibits Lawson has proffered for the trial in this case (chapters 1

and 2) were listed as a trial exhibit in the SAP case.  (03/24/06 ePlus, Inc.'s Objections to SAP's

Proposed Trial Exhibit List, Ex. F.)  ePlus had ample opportunity to cross examine Ms.

McEneny and subpoena her and American Tech for documents in that case.

Lawson disclosed its intent to rely on the P.O. Writer system and P.O. Writer Manual in

its Second Supplemental Invalidity Contentions:

- Lawson intends to rely on witness testimony and the following documentary
evidence to prove that the P.O. Writer Plus V.10 is prior art that anticipated

the asserted claims: The P.O. Writer Plus Version 10 manual is labeled with Bates numbers L0126155–L0127601;

- Lawson is asserting the P.O. Writer Plus V.10 qualifies as prior art under 35 U.S.C. § 102(b) as in public use and on sale in this country more than one year prior to the date of the application for patent in the United States;

- Additionally, the . . . P.O. Writer Plus Version 10 manual qualifies as prior art under 35 U.S.C. §102(b) as a printed publication more than more than one year prior to the date of the application for patent in the United States.

(Defendant Lawson Software, Inc.'s Second Supplemental Initial Statement of Invalidity Defenses, Ex. A at 2-3.)  The cited page ranges include the purchasing module chapters at issue here in exhibits DX-121 and DX-122.  Lawson's invalidity expert, Dr. Michael Shamos, relied on the same purchasing module chapters (DX-121 and DX-122) as well as other specific sections of the P.O. Writer Manual (L0126155-L0127601) in his report.  (*See* Shamos Report, Ex. G at 78.)

At no point during fact or expert discovery did ePlus raise the completeness issue.

### B. <u>Lawson Had Good Reason to Believe that It Had Obtained Copies of All Existing Pages of the P.O. Writer Manual.</u>

During discovery in this case, Defendants served ePlus with a number of document requests seeking documents from the SAP litigation.  Specifically, Document Request No. 68 requested:

All documents and things produced by or to Plaintiff in the civil action ePlus, Inc. v. SAP America, Inc., et al., Case No. 3:05-cv-00281-JRS filed in the Eastern District of Virginia.

(07/23/09 Defendants' Document Requests, Ex. H at 19.)  In response, ePlus produced thousands of pages of documents from the SAP litigation, including over 1500 pages of materials from the P.O. Writer Manual, license agreements/sales of the P.O. Writer system, and marketing and advertising materials for the P.O. Writer System—including DX-121 and DX-122 now at issue.

4

(*See* ePlus Produced Documents ePlus0291785-2044, Ex. I.)[1]  ePlus never indicated that its production of the Manual that it was incomplete in any respect.  This production included the P.O. Writer purchasing module manual (chapters 1 and 2) in the exact form as Lawson has proffered them as an exhibits in this case, with the first two chapters but *without* the remaining three chapters.

Lawson additionally asked ePlus specifically for SAP case materials including copies of the trial exhibits.  ePlus represented that it produced all the trial exhibits it had in its possession.  (12/16/09 Correspondence from ePlus counsel, Ex. J.)  ePlus produced to Lawson only chapters 1 and 2 of the purchasing section of the Manual and only chapters 1 and 2 were listed to be used in the SAP trial.  Lawson has no reason to believe that the exhibit used at the SAP trial was any different than the one that ePlus produced to Lawson and that Lawson now offers.  ePlus apparently has no information to the contrary.  Despite the fact that the same references that ePlus now objects to were previously used as trial exhibits in the SAP case, ePlus's counsel represented that he does not remember there being any issues about incomplete P.O Writer documents in that case.  (09/27/10 Final Pretrial Conference Tr. at 208, Ex. K.)

In addition to asking for and obtaining information from ePlus, Lawson also contacted Ms. McEneny and asked her for documents relating to the P.O. Writer System.  (McEneny Decl.,

---

[1] Multiple copies of the P.O. Writer manual were produced in this case.  *None* of them included chapters 3, 4, and 5 of the purchasing module manual.  For example, Lawson's undersigned counsel produced a copy it had received from Lawson's prior counsel and in doing so included "L" bates numbers.  It is from this copy that Lawson pulled exhibits DX-121 and DX-122.  This copy also bears the "SAP" bates numbers from the SAP case.  (DX-122 is SAP0803283-295 and DX-121 is SAP0803296-542.)  Additionally, ePlus produced another copy of the P.O. Writer Manual to Lawson with "ePlus" bates numbers.  ePlus's production included chapters 1 and 2 of the purchasing module manual (attached hereto as Exhibit I), but did *not* include chapters 3, 4, and 5.  The copy ePlus produced also had the "SAP" bates numbers from the SAP case (SAP0803283-542), which SAP numbers match exactly to the SAP numbers on the copy used as DX-121 and DX-122.

Ex. B ¶ 3.)  Lawson apologizes for mistakenly representing to the Court that it subpoenaed the documents from Ms. McEneny, when in fact it did not use a subpoena to ask for the documents, but rather asked for the documents during discussions with Ms. McEneny regarding Lawson's subpoena of her for her testimony.  In response to Lawson's request, Ms. McEneny told Lawson that she had already produced all of the documents she had for the SAP case and that they should be available from the SAP case materials.  (*Id.*)

Because Ms. McEneny is an independent third party not under Lawson's control, and because ePlus did produce a P.O. Writer Manual that was over 1500 pages long, Lawson did not wish to burden Ms. McEneny with gathering and producing the same voluminous materials yet again.  Lawson believed it already had everything that existed because:

- Lawson asked Ms. McEneny for all P.O. Writer documents;

- Ms. McEneny said she gave everything to SAP for the SAP lawsuit;

- Lawson requested that ePlus produce all documents from the SAP lawsuit;

- ePlus produced documents from the SAP lawsuit including P.O. Writer documents with SAP bates stamps, and did not indicate it withheld any P.O. Writer materials; and

- The P.O. Writer manual (without chapters 3, 4, and 5 of the purchasing module manual) was listed as a trial exhibit in the SAP lawsuit and ePlus produced copies of the trial exhibits from the SAP case to Lawson.

At the time Lawson was seeking this discovery, Lawson did not know that there was an issue regarding completeness of the purchasing module portion of the manual.

Both parties subpoenaed Ms. McEneny for her deposition.  Neither party specifically asked her to produce (again) the P.O. Writer Version 10 Manual.  ePlus requested copies all of

the documents she had produced to Lawson.  (*Id.* ¶ 4.)  She complied and gave ePlus copies of her correspondence with Lawson's counsel.  She did not give ePlus a copy of the P.O. Writer Manual because she had not given another copy of this 1500+ page document to Lawson.

During her deposition, both ePlus and Lawson marked and used as exhibits chapters 1 and 2 of the purchasing section of the P.O. Writer Manual, *the entirety of the purchasing section that ePlus had produced to Lawson*.  Ms. McEneny testified extensively about chapters 1 and 2 of the Purchasing section (DX-121 (Dep. Ex. 6) and DX-122 (Dep. Ex. 5 and 103)) of the P.O. Writer Manual, and her testimony showed that those chapters comprehensively described the P.O. Writer purchasing module.  (Ex. C at 91:14-96:6, 98:6-104:21, 126:1-4.)  For example, regarding Chapter 2, she testified:

> Q.   I'm handing you what's been marked Lawson Exhibit 103.  The Bates range
> is L 0126501 to L 0126513.  Do you recognize this document?
> A.   Yes, I do.
> Q.   What is it?
> A.   It's the section of the purchasing manual for P.O. Writer Plus.
> **Q.   Does this accurately represent the product that was sold to customers**
> **prior to August 10, 1993?**
> **A.   Yes.**
> Q.   Is this a document that was provided to customers prior to August 10, 1993?
> A.   Yes.

(*Id.* at 126:1-15 (emphasis added).)  During Ms. McEneny's deposition, ePlus did not object that either of these documents was incomplete.  Indeed, ePlus admitted DX-122 (Dep. Ex. 5) and DX-121 (Dep. Ex. 6) through Ms. McEneny.  (*Id.* at 91:14-104:21.)  There appeared to be no issue regarding completeness, as ePlus itself had marked and used as an exhibit a version of the manual that was missing chapters 3, 4, and 5 of the purchasing module manual.  Lawson identified DX-121 and DX-122 on its first exhibit list sent to ePlus.  ePlus did not object to these exhibits.  (*See* Plaintiff ePlus, Inc.'s Objections To Defendant Lawson Software, Inc.'s Trial Exhibit List at 11-12 (Doc. No. 432).)  ePlus later added objections for DX-121 and DX-122.

Shortly before the pretrial conference, counsel for both parties participated in a meet and confer conference call during which Lawson asked ePlus to explain the basis for its objections to DX-121 and DX-122.  ePlus complained that the exhibit descriptions were not accurate and Lawson agreed to revise them.  Lawson provided proposed amended descriptions by e-mail on September 23, 2010.  (9/23/10 Stoll-DeBell e-mail, Ex. L.)

In a subsequent phone call on the Friday before the final pretrial conference, ePlus counsel explained *for the first time* its objection that exhibits DX-121 and DX-122 were incomplete because chapters were missing and it would seek to exclude these exhibits on the grounds that chapters 3, 4, and 5 were not in evidence.  ePlus argued at the Final Pretrial Conference that the missing chapters might contain critical information that contradicts Defendant's invalidity contentions based on the proffered chapters and therefore fairness dictated that the additional chapters be admitted.

**C.** **After the Pretrial Conference, Lawson Contacted Ms. McEneny Again, Obtained the Missing Chapters, and Produced them to ePlus.  They Show there is no Unfairness in Admitting the Proffered Exhibits.**

After the pretrial conference on October 11, 2010, Lawson again contacted Ms. McEneny to double-check whether she had copies of the missing sections of the P.O. Writer Manual or if she knew who else might have such documents.  (McEneny Decl., Ex. B ¶ 8.)  She informed Lawson that she was in the process of moving, but would check when she could.  (*Id.* ¶ 9.)  She reiterated her statement that she had provided everything she had in the SAP case.  (*Id.*)

On October 22, 2010, while she was still in the moving process, Ms. McEneny informed Lawson that she found and reviewed the materials she provided in the SAP matter.  (*Id.* ¶ 10.)  For the first time, Lawson learned from Ms. McEneny that she had Chapters 3, 4, and 5 of the Purchasing Module manual.  Lawson promptly sent a messenger to obtain the materials to Ms.

McEneny's new home and produced them to ePlus on October 27.  (*Id.* ¶ 11; Ex. M.)

The materials are consistent with the proffered exhibits and show the exhibits may be fairly admitted, with or without these materials.

### III.   <u>THERE IS NO BASIS TO EXCLUDE DEFENDANT'S EXHIBITS 121 AND 122</u>.

Rule 106 is a rule of completeness and fairness, not exclusion and tactical maneuvering. Here, both completeness and fairness support admission of DX-121 and DX-122.  Lawson was unaware of any completeness concerns during discovery or indeed up until the eve of the pretrial conference.  Based on ePlus's productions from the SAP case and Ms. McEneny's statements that she produced all her P.O. Writer documents in SAP case, Lawson had no reason to think any other documents were needed.  After ePlus raised the 106 objection, Lawson again contacted Ms. McEneny, discovered that the chapters still exist (as reflected in Ms. McEneny's declaration), and immediately obtained them and provided them to ePlus.  There is no risk of unfairness in allowing DX-121 and DX-122 into evidence under these circumstances because ePlus has the opportunity to have the missing chapters admitted, if it so desires.

Defendant's Exhibits 121 and 122 are not incomplete.  They are complete chapters of the Purchasing manual that accurately describe the product sold, as Ms. McEneny testified in her deposition.  Moreover, now that the missing chapters have been reviewed, it is clear that ePlus's speculative concerns about prejudice were unwarranted.  The missing chapters show that the proffered exhibits (DX-121 and DX-122) are not irrelevant, unfairly prejudicial, or misleading. Alternatively, if it is ePlus's position that the remaining chapters should be admitted under Rule 106, Lawson does not object.  Either way, there is absolutely no basis to exclude Defendant's Exhibits 121 and 122 from trial under any rule of evidence.

A.   **Rule 106 Is a Rule Of Completeness, Not Exclusion, Rooted In Fairness, And Places the Burden on ePlus to Show Prejudice if the Missing Material Is Not Admitted.**

The plain text of Federal Rule of Evidence 106 demonstrates that it is *not* a rule of exclusion:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require *the introduction* at that time *of any other part or any other writing* or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed. R. Evid. 106 (emphasis added).  The advisory committee notes explain that the Rule is concerned with misleading impressions created by taking matters out of context and the inadequacy of repair work when delayed to a point later in the trial:

> *The rule is an expression of the rule of completeness*. McCormick § 56. It is manifested as to depositions in Rule 32(a)(4) of the Federal Rules of Civil Procedure, of which the proposed rule is substantially a restatement.
>
> The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial. See McCormick § 56; California Evidence Code § 356. The rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case.

Fed. R. Evid. 106 Adv. Comm. Notes (emphasis added); *see also United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004) ("The purpose of Rule 106 is 'to prevent a party from misleading the jury by allowing into the record relevant portions of [a writing or recorded statement] which clarify or explain the part already received'. . . .  'The rule is protective, merely.  It goes only so far as is necessary to shield a party from adverse inferences, and only allows an explanation or rebuttal of the evidence received.'" (citations omitted)).

As the Fourth Circuit has recognized, the rule does not require the exclusion of evidence. *United States v. Ferguson*, 2010 U.S. App. LEXIS 18910 (4th Cir. Sept. 9, 2010) ("Ferguson

misapprehends Rule 106, and its so-called 'rule of completeness.' . . . .  Ferguson takes a literal view of Rule 106, and argues that because the letters were not available in their complete and unabridged form to anyone, they should not be admitted into evidence under any circumstance. We reject Ferguson's view, as it is not supported by the law."); *see generally Taylor Pipeline Constr., Inc. v Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 704-05 (E.D. Tex. 2006) (noting that while defendant objected to plaintiff's submission of a portion of an e-mail as being incomplete, defendant did not attempt to introduce any missing pages that it asserted court was required to consider for sake of fairness, so its objection failed "in light of its failure to pursue the proper remedy").

ePlus, as the party advancing a challenge under Rule 106, has the burden of proving which portions of the record would be relevant to the trial and how the additional excerpts would place the evidence in context.  *See McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (noting that "[the defendant] has not met his burden under Rule 106").  ePlus did not meet its burden.  It only speculated on what the missing material might have that would show prejudice, without citing to any facts.  ePlus could have attempted to obtain the documents to know for sure, and did not.  Now that Lawson has made the effort and has produced the documents, there is clearly no problem with the proffered exhibits.

B. **Admission is Fair and Not Unduly Prejudicial Because Lawson Previously Relied in Good Faith on the Representations of Ms. McEneny and ePlus Regarding Production of P.O. Writer Documents from the SAP Case, and Obtained the Missing Chapters Once ePlus Specifically Raised the Rule 106 Objection.**

ePlus is incorrect that Lawson made no effort to obtain the complete manuals.  P.O. Writer had been used at trial in the SAP lawsuit.  Lawson served ePlus with a document request asking for all of the documents from the SAP lawsuit.  (Ex. H.)  In response to this request, ePlus

11

produced volumes of documents bearing "SAP bates numbers."  These SAP documents included the P.O. Writer Version 10 Manual, which was 1500+ pages long.  ePlus's production did not include chapters 3, 4, or 5, but ePlus gave no indication that the production was incomplete.

Lawson additionally asked Ms. McEneny for copies of all the documents she had regarding the P.O. Writer system.[2]  (Ex. B.)  She said she gave everything to SAP for the ePlus v. SAP case.  (*Id.*)  Given that a large document described as the P.O. Writer Manual was, in fact, produced *by ePlus* to Lawson having SAP production numbers, it reasonably appeared to Lawson that it received all the P.O. Writer Manual documents that Ms. McEneny had produced. Apparently, Chapters 3, 4, and 5 were not part of the documents that ePlus produced to Lawson. Presumably, ePlus does not have copies of these missing chapters.

Prior to subpoenaing Ms. McEneny for her deposition, Lawson confirmed with the witness that she already produced what she had to SAP and ePlus.  When Lawson used DX-121 and DX-122 at her deposition, both of which ePlus introduced, ePlus never suggested that the documents were incomplete and Lawson had no reason to seek out production beyond what had been produced in the ePlus v. SAP case.  There was no apparent reason to burden Ms. McEneny, as an independent third party, yet again by requesting production of a large number of documents she had produced before.  ePlus ensured Lawson would remain unaware of the issue, and even waived it, not only by failing to raise it, but by *marking and using* both exhibits at Ms. McEneny's deposition as if they were complete documents.

Once ePlus raised the issue, Lawson again contacted Ms. McEneny to see if she could help find the missing chapters.  She was able to find them, and those chapters have now been

---

[2] Lawson's counsel was mistaken when she said Lawson had served Ms. McEneny with a subpoena for documents.  Lawson requested the documents, and served her with a subpoena for a deposition, but did not seek documents with a subpoena.  (Ex. B.)

located and produced to ePlus.  Lawson has acted in good faith throughout the process, and fairness thus supports admission of the exhibits.  In contrast, ePlus apparently made a deliberate decision to lie in the weeds about raising the completeness issue until well after discovery closed.  Now that the remaining chapters have been found and produced, ePlus is in no position to complain about either fairness or undue prejudice.

### C.   The Recent Discovery Of The Missing Chapters Confirms There Is No Reason To Exclude The Proffered Exhibits—With Or Without Chapters 3, 4, And 5—Under Rule 106.

There is no reason to exclude Defendant's trial exhibits 121 and 122—Chapters 1 and 2 of the Purchasing Module P.O. Writer Version 10 Manual.  The chapters stand alone as a disclosure of the prior art P.O. Writer System, and their disclosure was further fleshed out in Ms. McEneny's testimony.  Indeed, Ms. McEneny specifically confirmed that chapters 1-2 accurately reflected what was provided to customers.  The Federal Circuit has approved the use of excerpts from books as prior art in other cases.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1345-46 (Fed. Cir. 2001) (approving use of prior art reference that was an excerpt of a book).  Admission of excerpts from the P.O. Writer Manual are similarly appropriate in this case.

Moreover, now that the additional sections are available, it is clear that nothing in them raises an issue regarding admissibility of DX-121 or DX-122.  ePlus vaguely asserts that "there *is* evidence that the remaining, unproduced portions of the excerpts are relevant to Defendant's invalidity allegations and are likely to more fully describe the functionality of the P.O. Writer software."  (ePlus Br. at 1-2.)  ePlus does not identify what evidence it is referring to nor what it imagines might be in the chapters.  Nor does it explain, even if the chapters contain more information about the prior art, why their exclusion would unduly prejudice ePlus.  The issue is

now moot, however, as the chapters are now available and can be presented at trial.

The missing chapters do not contain anything inconsistent with or different from the evidence Lawson relies on in support of its invalidity contentions.  They show that chapters 1 and 2 fairly present the prior art.  But if ePlus disagrees and wants to have them admitted pursuant to Rule 106, Lawson will not object.

ePlus suggests that it is "far too late" for Lawson to produce the remaining chapters for use at trial.  *This is the wrong issue.*  Lawson has *no* plans to use the missing chapters and does not care whether the missing chapters are used at trial or not.  ePlus touted the potential need to admit the missing chapters, *not* Lawson.  If ePlus chooses not to use them now that it sees they will not help, that is fine with Lawson.

ePlus complains that the chapters should be excluded because it "has no recourse under Rule 106 to require that Defendants introduce at trial the remaining portions of the documents, as fairness would demand."  (ePlus Br. at 17.)  It also complains that even if the missing chapters can be introduced, that it is too late to do so.  ePlus cannot have it both ways, especially when the situation resulted from a deliberate attempt by ePlus to avoid requesting the documents or even raising the completeness issue during discovery.

ePlus also suggests that the admission of the missing chapters should be barred under Rule 37(c) "since Defendant's failure to timely supplement its production of documents was not substantially justified or harmless."  (ePlus Br. at 15.)  ePlus ignores the fact that *it* is the party seeking admission of the missing chapters, *not* Lawson.  In any event, Lawson did timely supplement its responses, within one day of receiving the documents.  Once ePlus raised the issue of incompleteness, Lawson went to the third party and obtained the documents.  ePlus apparently realized the document was incomplete long before Lawson did, yet it consciously

14

chose to "know when to hold them and when to fold them" by not asking Ms. McEneny for the chapters during discovery and not timely raising its Rule 106 objection.  Any delay is of ePlus's own making, and thus to the extent Rule 37(c) applies at all, the production was substantially justified.

In addition, there is no harm.  The chapters are entirely consistent with and cumulative of the prior art disclosures and the witnesses testimony regarding P.O. Writer.  In its brief, ePlus cites to no credible basis for its speculation that there is harm.  And ePlus now has the chapters—if they are in anyway inconsistent with Defendant's exhibits 121 and 122 (which they are not), ePlus can raise that issue with the jury.

### D.      DX-121 and DX-122 Are Also Admissible Under Rules 402 And 403.

Although it did not include relevance or prejudice objections to DX-121 and DX-122 in the pretrial order, ePlus belatedly asserted that the P.O. Writer exhibits should be excluded because there is no evidence regarding their date.  In fact, there is plenty of evidence regarding the dates of these documents.

First, DX-122 (Chapter 1) says on its face that it is the Version 10.0 Purchasing manual dated April 1993:



TENTH EDITION

(APRIL 1993)

Software Revision 10.0

American Tech, Inc. provides this manual "as is" without warranty of any kind, either expressed or implied. American Tech, Inc. may make improvements and or changes in the product(s) and or program(s) described in this manual at any time and without notice.

This publication could contain technical inaccuracies or typographical errors. Changes are periodically made to the information herein; these changes will be incorporated in new editions of this publication.

No part of this work may be reproduced or used in any way for or by any means - graphic, electronic, or mechanical, including photocopying, recording, taping, or information storage and retrieval systems - without express permission from American Tech, Inc.

Requests for copies of this product and for technical information about the system should be made to American Tech, Inc. at:

Colonial Commons
670 N. Beers Street
Holmdel
New Jersey 07733

P.O. WRITER and P.O. WRITER PLUS are registered trademarks of American Tech, Inc. © Copyright 1993.

IBM is a registered trademark of International Business Machines, Inc.

Norton Editor is a registered trademark of Peter Norton Computing, Inc.

EXHIBIT

DX 122
09 cv 620

SAP_0803283

DEPOSITION EXHIBIT

Lawson 103
6 4/6 /10

L0126501

ERIC J. FINZ

(Emphasis added.)  Second, although DX-121 does not have a date on it, it is the corresponding

chapter two to DX-122's chapter one, which is dated.  Ms. McEneny testified that DX-122 (Dep.

Ex. 5 (marked by ePlus) & 103 (marked by Lawson)) was from the Version 10 1993 Purchasing

manual and that DX-121 (Dep. Ex. 6 (marked by ePlus)) was chapter 2 from this same manual:

MR. REDDY:  I've handed a document to be marked as Exhibit No. 5, which is a document Bates labelled L 126501 through 126513.  **And at the top it states "tenth edition," in parentheses, April 1993.**

Q.    If you can take a few moments to familiarize yourself with that document. And do you recognize the collection of approximately twelve pages of documents?

A.    Yes, I recognize these as pages from the purchasing manual at that point in time.

Q.    Now, when you say that point in time, what are you referring to?

A.    **Spring of '93.**

Q.    And is that referring to **version 10** of the P.O. Writer Plus software?

A.    **That's correct.**  This specifically would be relating to the purchasing module.

. . . .

Q.    Okay.  Now, returning to Exhibit No. 5.

A.    Um-hum.

. . . .

Q.    You can set that document aside.

(McEneny Exhibit 6 for identification, document, production numbers L 126718 through L 126964.)

Q.    You've been handed a document which is marked as Exhibit No. 6.  It's a document Bates labelled L 126718 to L 126964. . . .  And before you investigate that page further, can I just ask generally do you recognize this document that's been marked as Exhibit No. 6?

A.    Yes, I do.

Q.    And what do you recognize it to be?

A.    As **chapter 2 of the purchasing module users manual**, which was a self-paste tutorial, to teach users how to use this particular module.

(Ex. C at 91:19-98:25 (emphasis added).)

Q.    Ms. McEneny, can you please take a look at McEneny Exhibit 6, please. And I believe we previously talked about this document.

A.    Yes.

Q.    Did P.O. Writer have a purchasing module in 1993?

A.    Yes.

Q.    Can you take a look at page L0126962.  And I suppose before you do that I should ask, what is this document again?

A.    This is the **tutorial for the purchasing module of P.O. Writer Plus**.  And you want 6962?

. . . .

Q.    **Does this accurately represent the product that was sold to customers prior to August 10, 1993?**

A.    **Yes.**

Q.    **Is this a document that was provided to customers prior to August 10, 1993?**

17

A.   **Yes.**

(*Id.* at 142:11-144:19 (emphasis added).)  Third, DX-122 has a table of contents for the entire

purchasing manual, which says that Chapter 2 is a Tutorial:

**Purchasing - Table Of Contents**

**About This Manual**

**Support**
    Warranty Service
    Support Plans

**Before You Begin**

**Chapter 1. Getting Started**

This chapter explains what the package contains, what hardware and software are
required, and gives you the basic information needed to install and start the
software on your Personal Computer.

**Chapter 2. Tutorial**

This chapter provides a guided tour through each of the Purchasing Module
Submodules. You will learn the fundamentals of using the P.O. WRITER PLUS
Purchasing Module programs.

DX-122 confirms that it is Chapter 2 and that it is a Purchasing Tutorial:

**2. Purchasing Tutorial - Table of Contents**

2-1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2-1

2-2. Building The Master Files . . . . . . . . . . . . . . . . . . . . . . . . . .2-3

These documents corroborate Ms. McEneny's testimony.

There is plenty of evidence for a reasonable jury to find that DX-121 and DX-122 were

part of the Version 10 P.O. Writer Purchasing Manual that was released in April 1993.  Indeed,

there is no evidence to the contrary.  As such, this Court should reject ePlus's relevance and

prejudice objections to these documents under Rules 402 and 403 as well as Rule 106.

**IV.   CONCLUSION**

ePlus is afraid of Lawson's invalidity case and will use any tactic—no matter how

baseless—to attempt to keep the jury from seeing the evidence.  The PTO has already relied on

the P.O. Writer prior art during reexamination to reject the claims in suit.  ePlus attempted to

create grounds for exclusion by failing to object to the completeness of the exhibit when it used it at the deposition of Ms. McEneny, a third party witness who is not expected to testify live at trial, or while discovery remained open.  Indeed, ePlus marked and used the same exhibits it now seeks to exclude at Ms. McEneny's deposition.  ePlus only raised the completeness issue after it hoped Lawson could do nothing about it.  But ePlus's attempts are meritless—Rule 106 is not a rule of exclusion but inclusion.  ePlus failed to show prejudice from admitting the proffered exhibits.  Lawson has nothing to hide.  Now that the remaining chapters have been obtained and produced, the lack of prejudice is clear, and in any event Lawson does not oppose the admission of the additional evidence.  The evidence of dates is more than ample to admit the exhibits as prior art, just as the PTO has relied on P.O. Writer as prior art to reject ePlus's invalid claims. There is absolutely no basis to exclude Defendant's Exhibits 121 and 122 in this case.  For these reasons, Lawson respectfully requests that this Court deny ePlus's motion.

LAWSON SOFTWARE, INC.

By____/s/_____
                Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 1st day of November, 2010, a true copy of the foregoing will be filed

electronically with the Clerk of Court using the CM/ECF system, which will send a notification

of such filing (NEF) to the following:

Craig T. Merritt                                James D. Clements
Henry I. Willett, III                           Goodwin Procter, LLP
**CHRISTIAN & BARTON, LLP**                     Exchange Place
909 East Main Street, Suite 1200                53 State Street
Richmond, Virginia 23219-3095                   Boston, MA 02109-2881
cmerritt@cblaw.com                              jclements@goodwinprocter.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

                                                  /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

21