# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT OF EXPERT MICHAEL I. SHAMOS, PH.D, J.D.**
<u>**CONCERNING INVALIDITY**</u>

.

**OBVIOUSNESS**

**The Combination of TV/2 Plus RIMS Renders the Asserted Claims Obvious**

213. It is my opinion that RIMS as disclosed in the '989 patent anticipates all the Asserted Claims.

214. To the extent that RIMS as disclosed in the '989 patent is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious under 35 U.S.C. §103 in view of the combination of the Fisher RIMS system as described in the '989 patent and the RIMS brochure with the IBM TV/2 system as described in the 5799-IBM Technical Viewer/2, IBM Technical Viewer/2, General Information Manual, and IBM Technical Viewer/2 brochure.

215. The combination of these two systems, RIMS and TV/2 teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4). As such, the combination of RIMS and TV/2 renders these claims invalid under 35 U.S.C. §103.

216. As stated in the patents in suit, the claimed electronic sourcing system "includes requisition/purchasing system 40, preferably but not necessarily the [prior art] Fisher RIMS system, and a search program 50 . . . Preferably, but not necessarily, the Technical Viewer 2 search program ("TV/2"), available from IBM, is used as search program 50." E.g. '683 patent 4:1-9.

217. The TV/2 documents include an explicit motivation to combine the Fisher RIMS and TV/2 systems. The IBM Technical Viewer/2 brochure teaches: "You can also create a 'shopping list' just by selecting items and passing that list to another application. For example, you might select parts to be ordered from the exploded drawings in the parts catalogue. The part list could then be sent directly to your parts ordering system . . . ." (L0132133.) It also teaches: "Technical Viewer/2 is suitable for whole ranges of uses and industries in which information is supplied in large quantities and updated regularly, and where uses need fast access to precise

63

details. Potential uses include: .... Integrating part catalogues with dealers' computer systems such as order entry, inventory management and customer records . . . ." (L0132134.)

218. The RIMS system as described in the '989 patent is a part ordering system that allows order entry and inventory management. ('989 patent, 1:5-7 ("This invention generally relates to systems for requisition and inventory management."); '989 patent, 1:4-17 (Background explaining that the RIMS system is a requisition system, which generally "process purchase orders for items and track inventory."); 8:25-38 (discussing RIMS Parts Master record, which includes "part number")).

219. The TV/2 system was designed with an applications program interface (API) for interfacing the TV/2 system with other systems such as parts ordering systems, like RIMS. Thus, there is reason to combine the Fisher RIMS and TV/2 systems.

220. I understand that there will be testimony at trial to the effect that the patented invention resulted from customers asking Fisher Scientific to manage other types of product inventories other than the products that Fisher supplied, and to provide access to other supplier catalogs. This provided an obvious motive for one of ordinary skill in the art to combine the Fisher RIMS system and the TV/2 system, which was capable of searching for products from Fisher and non-Fisher catalogs and transmitting the results of such searches to a system such as the RIMS system. Indeed, Baxter Healthcare had recognized this need and provided this functionality in connection with the ASAP Express electronic sourcing system in mid-1980s.

221. The RIMS system and TV/2 systems were both designed to operate on the IBM OS/2 operating system platform, which further demonstrates that it would have been obvious to one of ordinary skill seeking to have a system with both extended searching capabilities and a requisition/purchasing system to combine the Fisher RIMS system with the TV/2 system. Dynamic data exchange (DDE) was the known, preferred protocol for exchanging information between applications operating on an OS/2 system.

222. The documents show and I understand that there will be testimony at trial to the effect that the process of creating an interface between TV/2 and RIMS applications was for the

most part straightforward and providing communication between the two was well within the capability of one of ordinary skill in the art. (ePLUS0221672-1693; ePLUS0214243-4265). Most of the time and work that was done on the interface was directed to optimizing the connection to achieve the desired performance and speed, or otherwise enhance or add features. However, none of these changes relate to the limitations of the claims at issue. The changes that were made to each of these systems were not radical and the systems when combined were not dramatically different from what they were before they were combined. In other words, they were the minor, obvious types of changes that are typically required when combining two programs to operate together. Several of these changes related not to making the systems work together, but rather to making the combined system work faster and better. However, such performance improvements are not part of the claimed invention, and thus are irrelevant to the obviousness issue. The most-time consuming part of the process was scanning in Fisher's 2000 page catalog and then cleaning up and formatting the scanned material and building in additional type of searching capabilities into TV/2, such as Boolean and sub-set searches. None of these specific details are required by the asserted claims. Building the interface, which was actually between three systems (TV/2, RIMS, and SPS), was estimated to take about 200 hours, which was a small fraction of the total time spent to build Fisher's sourcing system. (ePLUS0214259-4263). The fact that the process of building the commercial embodiment of the claimed invention was straightforward further supports obviousness.

### The Combination of RIMS Plus Dworkin '940 Renders the Asserted Claims Obvious

223. It is my opinion that RIMS as disclosed in the '989 patent anticipates all the Asserted Claims.

224. To the extent that RIMS as disclosed in the '989 patent is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of the Fisher RIMS system as described in the '989 patent and the RIMS brochure together with the Dworkin '940 patent. Such a combination teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29

of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4). As such, the combination RIMS and the '940 patent renders these claims invalid under 35 U.S.C. §103.

225. One of skill in the art would have been motivated to combine the Fisher RIMS system with the '940 patent. The alleged improvement of RIMS over prior art sourcing systems was its ability to track just-in-time (JIT) inventory. '989 patent, 1:49-50. It therefore teaches combining inventory tracking with prior art sourcing systems.

226. The RIMS system allowed a user to purchase goods offered by plurality of sources (for example, Fisher and Promega as described above and as set forth in detail in Exhibit 3). However, I understand that in trying to distinguish the asserted claims from the RIMS system, ePlus will argue that the RIMS system was actually a "single source system" – that is, it allowed the customer to purchase only from the distributor that ran the RIMS system. While I disagree that RIMS was a "single source system" and dispute that the asserted claims require purchases to be made from different entities as interpreted by ePlus, it is my opinion that even if these were true, there was reason to combine the so-called single source system of RIMS with the '940 patent, which disclosed a system that "assists a user with locating and purchasing goods or services sold by a plurality of vendors." ('940 patent, Abstract.)

227. By 1988, there were over fifty different automated order-entry/material management systems in the marketplace. (L0343536). As order efficiency decreased and logistical costs increased with multiple, incompatible systems, customers became interested in multi-vendor systems. (L0343536-537; L0340565). A multi-vendor system could reduce logistical costs by 10% and provide the advantages of consolidated data. (L0340565). Consolidating information about multiple vendors removed the need for customers to consult hundreds or thousands of vendor catalogs to find the best price for an item. ('940 patent, 1:14-60.) Baxter Healthcare offered a multiple-vendor electronic sourcing system in the late-1980s, years before the patents-in-suit were filed. Thus, even if the Fisher RIMS system as described in

the '989 patent was single-source and the asserted claims require purchases from multiple sources, market pressure would provide a motivation to combine RIMs with the '940 patent.

228. During prosecution of the '683 and '516 patents, the Patent Office found that the '940 disclosed all of the claim elements except: 1) converting items found in one vendor's catalog to another vendor; and 2) searching only portions of a catalog database. During the prosecution of the '172 patent, the Applicant argued that Dworkin did not teach a single requisition that could include multiple items and be sourced to different vendors. It is my opinion that the RIMS system teaches these missing elements (as described more fully in Exhibits 3 and 4). Additionally, the '940 patent at least implicitly recognized a need to search a subset of the database – it required a user to first select a category of items to search (hardware vs. software). Thus, it would have been obvious to combine the teaching of RIMS that allowed users to search portions of the RIMS database (see exhibit 3). Further, the '940 patent recognized that items might have two product numbers (a number identifying the product in the database and a manufacturer's model number), thus it would have been obvious to combine the '940 patent with the cross-reference table in RIMS to associate these different numbers together. Finally, to the extent that the '940 patent is deemed not to teach a single requisition that could include multiple items and generate multiple purchase orders (I believe it does teach this element as shown in Exhibit 3), it would have been obvious to combine it with RIMS which teaches multiple purchase orders from a single requisition ('989 patent, Fig. 5A).

**The Combination of J-CON Plus Dworkin '940 Renders the Asserted Claims Obvious**

229. It is my opinion that J-CON anticipates all the Asserted Claims.

230. To the extent that J-CON is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with the Dworkin '940 patent. The combination teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4). As such, the combination of J-Con and the '940 patent renders these claims invalid under 35 U.S.C. §103.

'516 claims 1, 2, 6, 9, 21, 22, 29.

'683 claims 3, 6, 28, 29.

272. The following claims, as detailed above and in Exhibits 3 and 4, are invalid as lacking enablement:

'516 claims 1, 2, 6, 9, 21, 22, 29.

273. The following claims, as detailed above and in Exhibits 3 and 4, are invalid as not reciting statutory subject matter, also including hybrid claims:

'516 claims 1, 2, 6, 9, 21, 22, 29.


Executed on May 5, 2010, in Pittsburgh, PA.

_____
Michael Ian Shamos, Ph.D., J.D.