**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF *e*PLUS INC.'S OBJECTIONS TO DEFENDANT LAWSON SOFTWARE,
INC.'S PROPOSED JURY INSTRUCTIONS AND PROPOSED VERDICT FORM**

Plaintiff, *e*Plus, Inc. ("*e*Plus"), through counsel, hereby states its objections to Defendant

Lawson Software, Inc.'s proposed jury instructions and proposed verdict form, pursuant to the

amended scheduling order in this action.  *e*Plus reserves its right to amend, supplement, or

modify its objections as appropriate based upon the evidence as the case proceeds through trial

and based upon conferences with opposing counsel.  *e*Plus does not waive any objections to

instructions relating to issues that are or have been the subject of pending motions, including

motions in limine.  Neither does *e*Plus concede, by stating these objections, that Defendant has

met its evidentiary burdens with respect to any of the issues to which the proposed instructions or

verdict form pertain.

**GENERAL OBJECTIONS TO LAWSON'S PROPOSED JURY INSTRUCTIONS**

*e*Plus generally objects to Defendant Lawson Software, Inc.'s ("Lawson") proposed jury instructions on the ground that on numerous occasions, Lawson's proposed instructions contain significant substantive edits from the model instructions on which they are purportedly based, without any disclosure indicating they have been modified, in order to state argumentative and incorrect instructions that are intended to state Lawson's theory of the case. Lawson has substantially deviated from and edited the model instructions. A document showing a redline comparison between several exemplary Lawson proposed instructions and the Model Patent Jury Instructions of the American Intellectual Property Association ("AIPLA") is attached as Exhibit A.

*e*Plus further generally objects to the omission of any instruction that *e*Plus has proposed.

*e*Plus provides the following specific objections to Lawson's proposed instructions:

**PRELIMINARY JURY INSTRUCTIONS**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**D-1:    The Nature of the Action and the Parties**

ePlus is the owner of three patents, which are identified by the Patent Office Number: United States Patent No. 6,023,683 or the '683 Patent; United States Patent No. 6,055,516 or the '516 Patent; and United States Patent No. 6,505,172 or the '172 Patent. The patents may also be referred to as "the patents in suit."

Lawson Software, Inc. is the Defendant in this case. Lawson was founded in St. Paul, Minnesota in 1975. Lawson sells business enterprise software.

**OBJECTION:**  ePlus objects on the ground that, although Lawson states that its proposed instruction is based on an AIPLA model jury instruction(s) (Preliminary Jury Instructions, Sec. I), in this instance it has modified the proposed instruction (without so indicating) to include a gratuitous statement about Lawson's "founding" and the nature of its business, which is not called for by the AIPLA model instructions.[1]

---

[1] For the Court's convenience, ePlus has attached as Exhibit B a copy of the AIPLA Model Patent Jury Instructions. A copy of the model instructions of the Federal Circuit Bar Association ("FCBA") is attached as Exhibit C.

**D-2:     What a Patent Is and How One is Obtained**

As I explained, this case involves a dispute related to three United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to first show you a short film about the patent system and then explain what a patent is and how one is obtained.

The video that I am about to show you directs you to a sample patent. We have given you a copy of the sample patent so that you can follow along.

***[SHOW VIDEO – The Federal Judicial Center: "An Introduction to the Patent System."]***

Now that you have finished watching the video, let me take a moment to explain what a patent is and how one is obtained. Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use the invention. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO or submitted by the applicant for what is referred to as "prior art." The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time, i.e., whether each claim defines an invention that is new and not obvious in view of the prior art. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes subject matter that existed before the claimed invention. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any

claim to be patentable and, thus, would be "allowed." This writing from the patent examiner is called an "Office Action." If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner, and to change the claims or to submit new claims. This process may go back and forth for some time until the examiner is satisfied whether or not the application meets the requirements for a patent. The papers generated during these communications between the patent examiner and the applicant is called the "prosecution history."

A granted patent is presumed to be valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Lawson has proven that the patent is invalid.

I will now briefly explain the parties' basic contentions in more detail.

**OBJECTION:**  *e*Plus objects on the ground that, while the instruction is purportedly based on the AIPLA Model Patent Jury Instruction, Preliminary Jury Instructions, No. 1, in fact Lawson has substantively modified the instruction in numerous respects without so indicating, including, in particular, the paragraph beginning with "A granted patent is presumed to be valid."  There appears to be no reason why the AIPLA model instruction should not be sufficient without Lawson's argumentative modifications.

*e*Plus does not object, however, to the Court showing the jury the jury the Federal Judicial Center video "An Introduction to the Patent System."

**D-3:    Contentions of the Parties**

ePlus contends that Lawson makes, uses, offers to sell, or sells products or services that infringe certain claims of the patents in suit. ePlus must prove that Lawson infringes the patents in suit by a preponderance of the evidence. That means that ePlus must show that it is more likely that Lawson's accused products and services infringe than that they do not infringe.

Lawson denies that it has infringed the patents in suit. Lawson also contends that the patents in suit are invalid. Lawson's contention that the patents in suit are invalid is based on its contention that the invention set forth in each claim was either anticipated or rendered obvious by existing inventions at the time the inventors of the patents in suit allegedly invented the claimed inventions.

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the patents in suit, you, the jury, have the ultimate responsibility for deciding whether the claims of the patents in suit are invalid. Lawson must prove invalidity by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

**OBJECTION:**  *e*Plus objects on the ground that, while the instruction is purportedly based on the AIPLA Model Patent Jury Instruction, Preliminary Jury Instructions, Section II, in fact Lawson has substantively modified the instruction without so indicating.  In particular, Lawson has deleted that portion of the model instruction pertaining to infringement.  There appears to be no reason why the AIPLA model instruction as proposed by *e*Plus should not be sufficient. *e*Plus's proposed instruction more accurately states the contentions of the parties, including the contentions of indirect infringement, and Lawson's defenses under Section 112 of the patent statute, all of which are omitted from Lawson's proposed instruction.

**D-4:   Patents at Issue**

There are three patents at issue in this lawsuit. They all relate to "systems and methods for interfacing product information, such as is typically found in vendor catalogs that are provided to customers, and requisition/purchasing systems and methods that may use the results of searches of product information."

ePlus is accusing Lawson of infringing twelve claims from these three patents. Specifically, the accused claims are:

Claims 3, 26, 28, and 29 from the '683 patent
Claims 1, 2, 6, 21, 22, and 29 from the '516 patent; and
Claim 1 from the '172 patent.

I have already determined the meaning of some of the terms in these accused claims of the patents in suit. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

In this case, many of the terms I have defined are common, everyday terms that you will understand. However, my definition may be different from your understanding of the ordinary meaning of these words. For example, as you will see in the document listing my claim term definitions, I have given the term "catalog" a specific meaning that you must use to decide the issues in this case.

You will hear testimony from fact witnesses and see documents in this case that use some of these claim terms, like catalog, in their ordinary meaning. These witnesses and documents are not using these terms as I have defined them and in many cases the fact witnesses and authors of the documents were unaware of how I defined these terms. For example, if you hear a fact witness testify that some system has a catalog, do not assume that that witness is giving an opinion that that system has a catalog as I have defined it. Likewise, if you see a document that indicates something is a catalog, do not assume the document is using the term as I have defined it. On the other hand, you will hear testimony from expert witnesses who will use my specific definitions to give opinions applying my definitions of claim terms to the accused products or the prior art. These expert witnesses will explicitly tell you that they are using a term as I have defined it.

**OBJECTION:**  *e*Plus objects on the ground that, while the instruction is purportedly based on the FCBA Model Patent Jury Instruction No. A.3, in fact Lawson has substantively modified the instruction in numerous respects, without so indicating.  To the extent the Court should instruct

the jury as to witness use of claim terms and the role of expert testimony, *e*Plus's proposed instructions No. P-7 and P-8 more accurately state the law in a non-argumentative manner.

**D-5: Trial Procedure**

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence. In the third phase, ePlus goes first in calling witnesses to the stand. The witnesses will be questioned by ePlus's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After ePlus has presented its witnesses, Lawson will call its witnesses, who will be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase. As with opening statements, the closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained to you a little bit about the law. But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts, and I decide questions of law. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language even if you do not agree with me. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**OBJECTION:** ePlus objects to the proposed instruction, which, while based on Section III of the Preliminary Jury Instructions of the AIPLA model jury instruction(s), is edited, without so indicating, to delete a statement that "what the lawyers say is not evidence." Further, ePlus believes that in this instance the FCBA Model Instruction No. A.5 (as proposed with ePlus's proposed instructions) more accurately explains to the jury the trial procedure that will be

followed in this case.  Specifically, the FCBA explains the order in which the parties will present evidence of infringement and validity, and the pertinent burdens of proof applicable to each of these issues.

**D-6:     Conduct of the Jury**

To ensure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it,until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth*, do not do any research or make any investigation on your own about any matter involved in this case. By way of examples, that means you must not consult a dictionary, textbook, encyclopedia, talk with a person you consider knowledgeable, or go to the Internet for information about some issue or person in this case. In fairness, learn about this case from the evidence you receive here at the trial and apply it to the law as I give it to you.

*Sixth*, cell phones are not permitted in the jury room during deliberation.

*Seventh*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

**OBJECTION:**  *e*Plus does not object to the proposed instruction.

**D-7:   Evidence in the Case**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, sworn deposition testimony of certain witnesses, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to [and all facts and events that may have been judicially noticed].

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

**OBJECTION:**  *e*Plus objects to the proposed instruction on the ground that Lawson has deleted from its prior version of this proposed instruction a statement further indicating that what the lawyers argue at various times is not evidence.

**D-8:   Expert Witnesses**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists for "expert witnesses." An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling. Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.


**OBJECTION:**  *e*Plus does not object to the proposed instruction.  However, *e*Plus believes that this instruction is unnecessary if *e*Plus's proposed instruction No. P-8 is given to the jury.

**D-9:    Use of depositions as evidence**

During the trial, certain testimony may be presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The rules permit the testimony of certain witnesses to be presented by reading their prior deposition testimony into the record or by showing you excerpts of videotaped recordings of the deposition testimony.  Such testimony is entitled to the same consideration as live testimony.  You should judge its believability and weight and otherwise consider the testimony in the same way as if the witness had been present, and had testified from the witness stand.

**OBJECTION:**  *e*Plus does not object to the proposed instruction.

**D-10:  Burdens of Proof**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In this case, the two burdens of proof that apply are called the "preponderance of the evidence" standard and the "clear and convincing evidence" standard.

The preponderance of the evidence standard requires that, for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true. Here, to find the patents in suit infringed you must find that it is more likely than not that Lawson infringes the patent.

The clear and convincing evidence standard requires that, for a party to prevail, you must be persuaded that what the party seeks to prove is highly probably true. Here, to find the patent claims in suit invalid, you must be left with a clear conviction that the claims are invalid.

You may have heard of a burden-of-proof standard that is used in criminal cases called "beyond a reasonable doubt" standard. That requirement is the highest burden-of-proof standard. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.


**OBJECTION:**  *e*Plus objects on the ground that this issue is better dealt with by the AIPLA Model Instructions, Preliminary Jury Instructions (III), which *e*Plus has proposed be incorporated into its proposed preliminary jury instructions.  *e*Plus believes that its proposed instruction, based on the AIPLA model, more clearly explains the applicable burdens of proof and the issues to which they apply.

**D-11:  Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper of Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of the prior art.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

**OBJECTION:**  *e*Plus objects on the ground that, although Lawson states that its proposed instruction(s) is based on an AIPLA model jury instruction (Preliminary Jury Instructions, Glossary of Patent Terms), in this case the instruction largely tracks the AIPLA model but inexplicably deviates, without so indicating, by providing an altogether different and insufficient

- 15 -

definition of "prior art."  Lawson's proposed instruction does not explain what prior art is but merely states that a person is entitled to a patent only if the invention is new and unobvious in light of prior art.

**POST TRIAL INSTRUCTIONS**

**General Instructions**

**D-12:  Summary of Patent Issues**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

I. Whether ePlus has proved that Lawson infringed any asserted claim of the patents in suit.

II. Whether Lawson has proved that any of the asserted claims of the patents in suit are invalid.


**OBJECTION:**  *e*Plus objects on the ground that Lawson's proposed instruction omits indirect infringement.  In addition, *e*Plus's proposed instruction appropriately lists the asserted claims and notes the applicable burdens of proof for each issue, while Lawson's proposed instruction does not.

**Claim Construction**

**D-13:  The Role of the Claims of a Patent**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**OBJECTION:**  *e*Plus objects to the proposed instruction on the ground that this subject is adequately covered by other instructions proposed by *e*Plus, which are based on the AIPLA Model Instructions (e.g., Preliminary Jury Instructions and Instruction Nos. 2.0, 2.1).  This proposed instruction and D-14 which follows are also confusing to the jury, in that they instruct with respect to what a patent "covers" and whether an accused product "falls within" a claim. *e*Plus believes that this patent law vernacular may confuse the jury into wondering whether "infringement" is something different and a separate requirement from being "covered," and the like.

**D-14:  How a Claim Defines What it Covers**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim by claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

I did not define every claim term for you. For those terms I did not define, you should apply the plain and ordinary meaning of the term as understood by one of ordinary skill in the art in the context of the patent.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

You should always apply the same scope or meaning of each word and phrase in each asserted claim, whether you are considering the infringement issue or the invalidity issue.


**OBJECTION:**  *e*Plus objects to the proposed instruction on the ground that this subject is adequately covered by other instructions proposed by *e*Plus, which are based on the AIPLA Model Instructions.  In addition, while purportedly based on FCBA Model Patent Jury Instruction No. 2.2, Lawson has modified the model instruction in several respects, without so indicating.  This proposed instruction and D-13 which precedes it are also confusing to the jury, in that they instruct with respect to what a patent "covers" and whether an accused product "falls within" a claim.  *e*Plus believes that this patent law vernacular may confuse the jury into

wondering whether "infringement" is something different and a separate requirement from being "covered," and the like.

**D-15:  Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 26 of the '683 patent, for example, is an independent claim.

Claims that are not independent claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**OBJECTION:**  *e*Plus does not object to the proposed instruction.

**D-16:  Means-Plus-Function Claim Limitation**

Claim 3 of the '683 patent uses the phrase "means for selecting the product catalogs." This "means for" phrase has a special meaning in patent law. It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claim, namely, "selecting the product catalogs." Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to the set of structures described in the '683 patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another. For purposes of this case, I have identified the set of structures described in the '683 patent that perform the function of "selecting the product catalogs." When I read you my definitions for certain claim terms, I will identify the structures described in the '683 patent for performing the relevant functions. You should apply my definition of the function and the structures described in the '683 patent for performing it as you would apply my definition of any other claim term.


**OBJECTION:**  *e*Plus objects to the proposed instruction on the ground that *e*Plus's proposed instruction No. P-9 more accurately and clearly follows the FCBA Model Patent Jury Instruction No. 2.3a, on which Lawson's proposed instruction is purportedly based.  Among other things, Lawson's proposed instruction does not inform the jury of the construction of numerous means-plus-function elements that the Court has construed, and, with respect to the sole example given, does not explain to the jury that the element is merely exemplary, giving the jurors the incorrect impression that there is only one such element at issue in the case.  Moreover, Lawson has substantively edited the instruction to delete the statement that the claim element covers a structure that performs the function that is either identical or equivalent to "at least one of" the structures described in the patent.

**D-17:  Claim Construction for the Case**

I will next define the meaning of some of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

"Subset" means: less than all of a set.

"Protocol" means: a procedure.

"Catalog" and "product catalog" mean: an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

"Order List" means: a list of desired catalog items.

"Matching items" means: the search results.

"Selected matching items" means: requisition items.

"Cross-reference table" means: a table that links vendors items determined to be equivalent between two or more different vendors.

"Electronic sourcing system" means: an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.

"Converting data relating to a selected matching item and an associated source to data relating to an item and a different source" means: substituting data relating to a selected matching item and an associated source to data relating to an item and a different source.

"Conversion" involves altering for more effective utilization. Cross-referencing cannot accomplish conversion, as it is ordinarily defined, and is an inadequate construct of the claim term.

"Means for selecting the product catalogs to search" requires an element that performs the function of selecting the product catalogs to search. The corresponding structure is a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents.

"Means for searching matching items among the selected product catalogs" requires an element that performs the function of searching for matching items among the selected product catalogs. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for searching for matching items in the database" requires an element that performs the function of searching for matching items in the database. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for building a requisition using data related to selected matching items and their associated source(s)" requires an element that performs the function of building a requisition using data relating to selected matching items and their associated source(s). The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing the requisition to generate one or more purchase orders for the selected matching items" requires an element that performs the function of processing the requisition to generate on or more purchase orders for the selected matching items. The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.

"Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" requires an element that performs the function of converting data relating to a selected matching item and an associated source to data relating to an item and a different source. The corresponding structure is one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents.

"Means for entering product information that at least partially describes at least one desired item" requires an element that performs the function of entering product information that at least partially describes at least one desired item. The corresponding structure is a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents.

"Means for searching for matching items that match the entered product information in the selected portions of the database" requires an element that performs the function of searching for matching items that match the entered product information in the selected portions of the database. The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for generating an order list that includes at least one matching item selected by said means for searching" requires an element that performs the function of generating an order list that includes at least one matching item selected by said means for searching. The corresponding structure is a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.

"Means for building a requisition that uses data obtained for said database relating to selected matching items on said order list" requires an element that performs the function of building a requisition that uses data obtained from said database relating to selected matching items on said order list. The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing said requisition to generate purchase orders for said selected matching items" requires an element that performs the function of processing a requisition to generate purchase orders for selected matching items. The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition, and its equivalents.

You should give the rest of the words in the claims and my definitions of them their ordinary meaning in the context of the patent specification and prosecution history.


**OBJECTION:** *e*Plus objects on the ground that Lawson's proposed instruction attempts to reconstrue the "converting data" limitation by adding extraneous language to the Court's construction as stated in its *Markman* Order, and its instruction is therefore inaccurate, argumentative, and misleading. The Court's construction is accurately stated in *e*Plus's proposed constructions.

Further, with respect to the means-plus-function elements, Lawson also omits that portion of the Court's *Markman* Order that states specifically where the corresponding structures are found in the specifications of the patents-in-suit. This omission appears throughout all of the means-plus-function elements. Lawson's reference to "means for searching [sic] matching items among the selected product catalogs" also omits the word "for."

Lawson's proposed constructions of these elements also omit the list of the claims in which they appear, which would be helpful to the jury. *e*Plus notes that the proposed instruction omits the specific references to where the claims appear in each of the patents and the applicable exhibit numbers, all of which are suggested in the AIPLA model jury instruction and provided in *e*Plus's proposed instruction. Accordingly, *e*Plus's proposed instruction more accurately tracks the AIPLA model instruction No. 2.1.

**Infringement**

**D-18:  Infringement – Generally**

I will now instruct you as to the rules you must follow when deciding whether ePlus has proven that Lawson infringed any of the claims of the patents in suit.

If any person makes, uses, sells, or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the following patent claims, using the terms I defined, to the accused products and services, and determine whether or not Lawson directly infringes the following claims:

Claims 3, 26, 28, and 29 of the '683 patent.
Claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.
Claim 1 of the '172 patent.

In deciding the issue of infringement you may not compare Lawson's accused products to ePlus's commercial products. Rather, the only correct comparison is between Lawson's accused product and the language of the claim itself, as I have explained its meaning to you. You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claim terms I have defined while giving the remaining claim terms their plain and ordinary meaning. You must also consider the legal requirements for infringement, and the evidence presented to you by the parties.

A patent may be infringed directly or indirectly. I will first discuss direct infringement.

**OBJECTION:**  Although the proposed instruction appears to largely track AIPLA Model Instruction No. 3.0, the proposed instruction omits any cross-reference to the verdict form or, on several occasions, a reference to accused methods or services.  The proposed instruction also omits reference to indirect infringement.  *e*Plus's proposed instruction more accurately tracks the AIPLA model instruction and more fully explains the relevant law as applied to the facts of this case.  *e*Plus therefore objects to Lawson's proposed instruction.

**D-19:  Direct Infringement**

In this case, ePlus asserts that Lawson has directly infringed claims 3, 26, 28, and 29 of U.S. Patent Number 6,023,683 (which I will refer to as the "'683 Patent"), claims 1, 2, 6, 9, 21, 22, and 29 of U.S. Patent Number 6,055,516 (the "'516 Patent"), and claim 1 of U.S. Patent Number 6,505,172 (the "'172 Patent").

To determine direct infringement, you must compare the accused product with each claim that ePlus asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if Lawson makes, uses, offers for sale, or sells a product that includes each and every element in that patent claim. If Lawson's product does not contain one or more elements recited in a claim, Lawson does not directly infringe that claim. You must determine direct infringement with respect to each patent claim individually.

If you find that any combination of products that ePlus alleges is an accused product is missing even one element of an asserted claim, you must find that the accused product is not directly infringing, even if it could be combined with other components that might supply the missing element.

Whether or not Lawson knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

**OBJECTION:**  *e*Plus objects on the ground that, although both the AIPLA and FCBA model instructions cover this issue, Lawson has dispensed with them to come up with its own instruction in order to state its theory of the case in an argumentative manner.  ePlus's proposed instructions Nos. P-10, P-11, P-12, and P-18, more accurately track the model instructions, and more clearly and correctly state the applicable law, including the statement that the same element or step of an accused product or method may satisfy more than one element of a claim.

**D-20:  Infringement Must Occur Under Normal Conditions**

A product does not infringe merely because it can be altered to infringe. If ePlus fails to show that the accused product meets all the limitations of the claim without being altered, modified, or subjected to unnatural conditions, no infringement can be found.

A product does not infringe an asserted claim simply because it may be modified by an end user to infringe the claim. Rather the product must, itself, infringe when sold. A product does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.

**OBJECTION:**  *e*Plus objects on the ground that the instruction (which is not based on any model instruction) is argumentative and inaccurately states the law of infringement.  *e*Plus's proposed instruction No. P-14 accurately states the law and should be given to the jury in lieu of Lawson's proposed instruction.

**D-21:  Infringement - Means-Plus-Function Limitations**

As I have previously explained, claim 3 of the '683 patents include requirements that are in means-plus-function form.

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set of structures that perform(s) the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to the described structure(s) that I defined earlier as performing the function of "selecting the product catalogs." If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim. Alternatively, even if the product has a structure or a set of structures that performs the function recited in the claim but the structure or set of structures is not either identical to the structure(s) that I defined to you as being described in the '683 patent and performing this function, the product does not literally infringe the asserted claim.

In order to prove direct infringement by literal infringement of a means-plus-function limitation, ePlus must prove the above requirements are met by a preponderance of the evidence.

**OBJECTION:**  *e*Plus objects to the proposed instruction on the ground that Lawson has substantively edited the model instruction (FCBA Instruction No. 3.1b) on which it is purportedly based, without so indicating.  Among other things, the proposed instruction deletes from the model instruction any reference to structural equivalence under Section 112, Para. Six, which is expressly acknowledged by this Court's *Markman* Order as being covered by the asserted claims.  Lawson also deletes from the model instruction reference to the fact an accused product or method is covered by a claimed structure if it is identical to "one or more of" the structures described in the patent, improperly implying that a structure must be identical to all the structures described.  In addition, the proposed instruction incorrectly informs the jury that only claim 3 of the '683 Patent includes means-plus-function elements.

**D-22:  Indirect Infringement – Active Inducement**

ePlus alleges that Lawson is liable for infringement by actively inducing others to directly infringe the patent claims at issue. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Lawson is liable for active inducement of a claim only if ePlus proves by a preponderance of the evidence that:

(1) Lawson took action during the time the patents in suit were in force intending to cause acts by others;

(2) Lawson was aware of the patents in suit and knew or should have known that the acts, if taken, would constitute infringement of the patents; and

(3) the acts are actually carried out by the others and directly infringe that claim.

ePlus asserts that Lawson induces its customers to infringe the asserted claims. In order to establish active inducement of infringement, ePlus must prove by a preponderance of the evidence that Lawson's customers themselves directly infringe the claim. However, proof of direct infringement by customers is not sufficient to prove that Lawson induced infringement. Nor is it sufficient that Lawson was aware of the act(s) by its customers that allegedly constitute the direct infringement. Rather, you must find that Lawson specifically intended its customers to infringe the patents in suit, in order to find inducement of infringement.


**OBJECTION:**  *e*Plus objects on the ground that its proposed instruction, which is based on the AIPLA model instruction No. 3.3, more clearly and accurately states the law of inducement. Among other things, the AIPLA model instruction provides the jury with more clear guidance as to the intent requirement for inducement, whereas Lawson's proposed instruction confusingly informs the jury what is supposedly "not" inducement.  In addition, *e*Plus has updated the AIPLA model instruction with respect to recent case law regarding "deliberate indifference" and the intent requirement, whereas Lawson's proposed instruction has not been updated to reflect this recent case law.

**D-23:  Contributory Infringement**

ePlus also argues that Lawson is liable for contributory infringement by contributing to the direct infringement of the asserted claims of the patents in suit by Lawson's customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To prove contributory infringement, ePlus must prove five things by the preponderance of the evidence:

First, Lawson sells or offers to sell a component of a product or a product for use in a method to a third party, in this case Lawson's customers.

Second, the component or product that Lawson sells has no substantial, noninfringing use.

Third, the component or product constitutes a material part of the claimed invention that is not a staple article.

Fourth, Lawson is aware of the patents in suit and knows that the components or products were especially made or adapted for use in an infringing method.

And fifth, the third party's use of Lawson's component or product directly infringes the claim.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has substantial uses other than as a part or component of the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**OBJECTION:**  *e*Plus objects on the ground that Lawson's proposed instruction does not appear to be based on any model instruction, even though both the AIPLA and FCBA model jury instructions cover this issue and do so in a more accurate and less argumentative manner.  In providing its own custom instruction, Lawson's proposal, among other things, rewrites the first requirement of contributory infringement in a manner that will confuse the jury.  *e*Plus's proposed instruction No. P-17 accurately tracks the FCBA model instruction No. 3.2 and should be used in lieu of Lawson's proposed instruction.

**D-24:  Exhaustion**

The sale of a product by the patent owner or under license from the patent owner terminates the patent owner's rights as to that product. When such an item is made and sold, the patentee cannot further restrict use.

**OBJECTION:**  *e*Plus objects on the ground that there is no "exhaustion" issue before the jury, none of the model patent jury instructions provide such an instruction, and Lawson's proposed instruction is an inaccurate, argumentative, and incomplete statement of the law.  Among other things, in order for exhaustion to apply, the sale must be of a patented product, and such sale cannot provide a basis for exhaustion unless the sale was lawful and authorized by the patent owner.  Moreover, the statement that a patentee "cannot further restrict use" is an incomplete and misleading statement of the exhaustion principle.

**D-25:  Infringement of Open-Ended or "Comprising" Claims**

The preamble of the claims uses the word "comprising." The word "comprising" means "including the following but not excluding others."

If you find that Lawson's product includes all of the elements of one of the asserted claims, the fact that Lawson's product might include additional elements would not avoid infringement of that claim.

**OBJECTION:**  Although the proposed instruction appears to track AIPLA Model Instruction No. 3.7 to some extent, *e*Plus objects because the instruction:  1) omits the inclusion of a specific example from the claims of a "comprising" clause, which is intended by the proposed instruction, and 2) Lawson's proposal omits any reference to methods or services.  ePlus's proposed instruction faithfully tracks the AIPLA Model Instruction and is therefore preferable.

**D-26:  Joint Infringement**

Generally, a patent claim is only infringed where the accused infringer is found to have practiced every limitation of the patent claim asserted. One exception to this rule is called "joint infringement" where a party that does not practice every limitation of a certain claim may still be found to infringe the claim where it practices some limitations of the claim and directs or controls the actions of a third party to practice the remaining limitations of the claim.

In this case, ePlus alleges that Lawson infringes certain claims of the patents in suit by making, selling, offering for sale, or using only some of the limitations of these claims and by directing or controlling the actions of others to make, sell, offer for sale, or use the remaining limitations of the claim.

To prove joint infringement, ePlus must prove two things by the preponderance of the evidence:

First, Lawson practices some limitations of the infringed claim.

And second, Lawson directs or controls the actions of its customers or another so that those customers or others practice all the remaining limitations of the claim that Lawson itself does not practice.

Lawson can only be found to have infringed the asserted claims as a joint infringer if you find that it exercised control or direction over the entire practice of a claimed process or the entire manufacture of a clamed apparatus, such that practice of each limitation of the claim can be attributed to Lawson as the controlling party and mastermind who directed the process. A contractual relationship between Lawson and the other party asserted to be practicing the remaining claim limitations, without more, does not establish the control and direction necessary to prove joint infringement. There must be more. Lawson must have exercised control over the system and obtained beneficial use of the system.

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction is an argumentative, incorrect, and misleading instruction, apparently devised from whole cloth, that appears nowhere in any of the standard model patent jury instructions and which is intended to mimic Lawson's closing arguments.  The proposed instruction culls selective statements from Federal Circuit cases, while avoiding other statements that weigh against Lawson's view of the case.  The appropriate jury instruction with respect to "joint" or "divided" infringement is provided in FCBA Model Instruction 3.7, as shown in *e*Plus's proposed instruction P-13.

Numerous problems and misstatements appear throughout Lawson's proposed instruction.  The proposed instruction states that "A contractual relationship, without more, does not establish the control and direction necessary to prove joint infringement.  There must be more."  Among other things, this statement leaves the jury hanging as to *what* more must be proven in order for there to be liability.  Further, the instruction provides no other guidance to the jury as to what "control and direct[ion]" means in this context.

Further, the instruction attempts to "pile on" with respect to this concept and tells the jury in an argumentative fashion that Lawson also must be the "controlling party and mastermind," without informing the jury what that means or what evidence is necessary to prove it.  The proposed instruction also omits important statements from the cited Federal Circuit cases stating that liability for joint infringement may exist where the law would traditional hold a party liable under theories of vicarious liability, or any similar explanation.  Numerous other omissions and misstatements appear throughout.

Accordingly, the proposed instruction is a one-sided, argumentative, misleading and incorrect statement of the law, that appears not to have been adopted by any Court or model jury instruction to date.

**Invalidity**

**D-27:  Summary of Defenses**

Each of the asserted claims (whether in independent or dependent form) is presumed to be valid, independent of the validity of the other claims. Lawson has the burden of proving invalidity by clear and convincing evidence.

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful, and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Lawson's grounds for asserting invalidity.

Lawson has challenged the validity of all of the asserted patent claims on a number of grounds.

I will now explain to you each of Lawson's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**OBJECTION:**  *e*Plus objects to the proposed instruction, which is not a "summary of defenses" but rather an argumentative statement about invalidity.  *e*Plus's proposed instruction P-21 more accurately identifies Lawson's defenses and the claims to which they apply in a neutral manner, as suggested by the AIPLA model instruction No. 4.

**D-28:  Prior Art Defined**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

Lawson is relying some items that ePlus agrees are prior art, and other items that ePlus does not agree are prior art. Lawson must prove by the clear and convincing standard that the items that are in dispute are prior art. In order to do so, Lawson must prove that these items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, any product that was publicly known or used by others in the United States before the patented invention was made, which in this case is August 10, 1994;

Second, patents that issued more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

Third, publications having a date more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

Fourth, any product that was in public use or on sale in the United States more than one year before the patent was filed;

Fifth, the invention was described in a published application for patent by another filed in the United States before the invention by the applicant for patent;

Sixth, the invention was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent; and

Seventh, any other information or activity that the patent owner has admitted is prior art.


**OBJECTION:**  *e*Plus objects to the proposed instruction with respect to item nos. 5, 6, and 7, which are inapplicable to this case and are not included in the AIPLA model instruction No. 5 on which this proposal appears to be loosely based.  Lawson has not presented any invalidity theory to which these instructions are applicable.  Accordingly, *e*Plus's proposed instruction P-22 is a preferable version of this instruction.

**D-29:  Prior Patents and Patent Applications**

An issued patent may be prior art to a patent claim under a number of different circumstances.

First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before the subject matter of the patents in suit was invented.

Second, a U.S. patent may be prior art to a patent claim even if the patent issued after the filing date patents in suit. This occurs when the patent application for the U.S. patent was filed by another person before the subject matter of the patents in suit was invented.

In this case, Lawson relies on the following as prior art patents to the patents in suit:

1.      Johnson et al. (U.S. Patent No. 5,712,989);

2.      King et al. (U.S. Patent No. 5,319,542);

3.      Dworkin (U.S. Patent No. 4,992,940).

In this case, ePlus admits that the King and Dworkin patents are prior art. ePlus only disputes that the Johnson patent is prior art.


**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, apparently not based on any model instruction, purports to apply to all of the claims of the patents-in-suit, whereas Lawson has not asserted a "prior patent" invalidity defense against all of the asserted claims. *e*Plus's proposed instruction No. P-30, which is based on the AIPLA model instruction No.6.7, more accurately instructs the jury on this subject.

**D-30:  Prior Printed Publications**

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public. Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles, or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art. It will also be prior art if it was published before the invention date of the patents in suit, in this case August 10, 1994.

In this case, Lawson relies on the following as prior printed publications to the asserted claims:

1.    IBM Technical Viewer/2, General Information Manual;

2.    IBM Technical Viewer/2 brochure.

3.    The P.O. Writer Plus V.10 manual;

4.    The J-Con Vol. 1 manual;

5.    The J-Con Vol. 3 manual;

6.    The J-Con RDB Guide;

7.    TV Interactive Electrical Technical Manuals;

8.    Fisher RIMS brochure (from RIMS trademark file history).

**OBJECTION:**  *e*Plus objects to the proposed instruction, which is not based on a model instruction, on the ground that, among other things, the instruction lists alleged invalidating prior art that the Court has excluded from the trial of this case.  Pursuant to the Court's rulings, at least items 3 through 6 should not be included in the proposed instruction.  In addition, the proposed instruction purports to apply the listed publications to all of the claims of the patents-in-suit,

whereas Lawson has not asserted all of these publications against all of the asserted claims. *e*Plus's proposed instruction No. P-27, which is based on the AIPLA model instruction No. 6.5, more accurately instructs the jury on this subject.

**D-31:  Prior Public Use or Knowledge**

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent, which in this case was August 10, 1994. The second is where the invention was publicly used by anyone more than one year before the application for the patent was filed. In both circumstances, the public use must have been in the United States.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

You may rely on multiple sources of evidence to prove what was in public use more than one year before the application filing date or before the invention date.

In this case, Lawson relies on the following public uses:

1.      The Fisher Scientific Requisition and Inventory Management System (RIMS);

2.      The P.O. Writer Plus V.10 system;

3.      The J-Con system;

4.      IBM Technical Viewer/2 System.

**OBJECTION:**  *e*Plus objects to the proposed instruction, which is not based on a model instruction, on the ground that, among other things, the instruction purports to apply the listed "public uses" to all of the claims of the patents-in-suit, whereas Lawson has not asserted all of these alleged public uses against all of the asserted claims.  In addition, the proposed instruction vaguely refers to alleged "systems," when there is no evidence that such alleged "systems" existed in the prior art, and the Court has ruled that much of the evidence allegedly pertaining to this alleged prior art is inadmissible on various grounds.  Pursuant to the Court's rulings, none of the listed items should be included in this instruction.  *e*Plus's proposed instruction No. P-26, which is based on the AIPLA model instruction No. 6.2, more accurately instructs the jury on this subject.  Among other things, Lawson's proposed instruction misleadingly and vaguely instructs the jury that it may invalidate the claims based on mere "knowledge" of the asserted uses.

**Anticipation**

**D-32:  Anticipation**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Lawson must prove with clear and convincing evidence that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single system or item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular art.

In this case, certain claims asserted by ePlus include elements requiring "one or more" of a certain product feature. A piece of prior art that includes either one of that product feature or more than one of that product feature and otherwise anticipates an asserted claim renders the asserted claim invalid.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently resulted from its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure at the time of the disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated at the time of the disclosure can still be an invalidating anticipation.

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, while loosely based on AIPLA Model Instruction No. 6.0, departs from that instruction in substantive respects in order to argue Lawson's theory of the case or to slant the instruction to Lawson's perceived benefit.  Among other things, Lawson has added the following paragraph:  "In this case, certain claims asserted by ePlus include elements requiring "one or more" of a certain product feature. A piece of prior art that includes either one of that product feature or more than one of that product feature and otherwise anticipates an asserted claim renders the asserted claim invalid." *e*Plus's proposed instruction P-23 is faithful to the AIPLA Model Instruction No. 6.0 and should be used instead of Lawson's substantively revised instruction.

**Obviousness**

**D-33:  Obviousness**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Lawson contends that all of the asserted claims of the patents in suit are invalid because the claimed invention is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

When determining whether it would have been obvious for a person of skill in the art to combine two pieces of prior art, you may use your own common sense given the facts presented to you.

The following factors must be evaluated to determine whether Lawson has established that the claimed inventions are obvious:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patents and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Lawson must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, while loosely based on AIPLA Model Instruction No. 7.0, departs from that instruction to add additional language to argue Lawson's theory of the case or to slant the instruction to Lawson's perceived benefit. *e*Plus's proposed instruction P-31 is faithful to the AIPLA Model Instruction No. 7.0 and should be used instead of Lawson's substantively revised instruction.

**D-34:  Scope and Content of the Prior Art**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes. The prior art includes the following items received into evidence during the trial:

In this case, Lawson contends that the following items are prior art:

1.    The Fisher Scientific Requisition and Inventory Management System (RIMS);

2.    Johnson et al. (U.S. Patent No. 5,712,989);

3.    King et al. (U.S. Patent No. 5,319,542);

4.    Dworkin (U.S. Patent No. 4,992,940);

5.    The P.O. Writer Plus V.10 system as described in the P.O. Writer Plus V.10 manual;

6.    The J-CON system as described in the J-CON Vol. 1 manual, the J-CON Vol. 3 manual, and the J-CON RDB Guide;

7.    The IBM Technical Viewer/2 System;

8.     IBM Technical Viewer/2, General Information Manual;

9.    IBM Technical Viewer/2 brochure;

10.   TV/2 Video (DX112).

You must determine what is the prior art that may be considered in determining whether the patents in suit are obvious. A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond the main purpose that a person of ordinary skill in the art would reasonably use to solve the same problem(s) faced by the inventor(s).

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, while based loosely on AIPLA Model Instruction No. 7.1, purports to identify the specific prior art the jury may consider while at the same time instructing the jury that it must determine the prior art that it may consider.  The list also improperly suggests that all of the prior art is applicable to all of the asserted claims.  In addition, Lawson's list includes alleged prior art that the Court has either excluded from trial or for which the reference's status as prior art has yet to be determined. *e*Plus does not agree that the jury should be permitted to consider all ten of the alleged references as possible prior art for purposes of obviousness, and at least items 5, 6, and 10 should not be included in the instruction.  In addition, the proposed instruction vaguely refers to alleged

"systems," when there is no evidence that such alleged "systems" existed in the prior art, and the Court has ruled that much of the evidence allegedly pertaining to this alleged prior art is inadmissible on various grounds.  Pursuant to the Court's rulings, at least items 1 and 7 should not be included in this instruction.  The law is more accurately stated in *e*Plus's proposed instruction P-32, which is based on the AIPLA model instruction No. 7.1.

**D-35:  Differences between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. You should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

**OBJECTION:** *e*Plus objects on the ground that the proposed instruction, while loosely based on AIPLA Model Instruction No. 7.2, departs from the AIPLA model instruction, apparently in order to be slanted more in favor of Lawson's invalidity arguments.  First, Lawson omits reference to "or nonobviousness [of the invention as a whole]" in the first paragraph, apparently in an attempt to slant the meaning of the instruction.  Lawson also omits, from the second paragraph, reference to "and the combination yielded results that were predictable to a person of ordinary skill at the time of the invention," thereby shortening the sentence to "if the claimed invention combined elements known in the prior art at the time of the invention, then this evidence would make it more likely that the claim was obvious."  This substantively changes the meaning of the instruction and reduces Lawson's burden of proof with respect to obviousness. Lawson also omits the word "importantly," which is included in the Model Instruction immediately prior to the statement that "a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art."  Finally, Lawson omits from the model instruction the statement that "[m]ost, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known."

Individually and collectively, Lawson's proposed edits are an improper attempt to edit this neutral model instruction in an effort to reduce Lawson's burden of proof with respect to obviousness.  *e*Plus's proposed instruction No. P-33 is faithful to the AIPLA Model Instruction No. 7.2 and should therefore be utilized.

**D-36:  Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of electronic procurement. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

A person of ordinary skill in the art is a person in the field of computer science with an undergraduate Bachelor of Science degree and some practical programming experience, perhaps about a year or two of experience, and having an understanding of basic principles of supply chain management and procurement in the 1993 to mid-1994 time frame.

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, while based on AIPLA Model Instruction No. 7.3, assumes agreement over the pertinent field and the level of ordinary skill, and omits instructions as to how they jury should determine the level of ordinary skill.

**D-37:  Secondary Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. These factors are:

1.    Was there long-felt need for a solution to the problems facing the inventors, which was satisfied by the claimed invention?

2.    Did others try, but fail, to solve the problem solved by the claimed invention?

3.    Did others copy the claimed invention?

4.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

5.    Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious. If Lawson has made a strong showing that the claimed inventions are obvious apart from these secondary factors, however, then these secondary considerations might not overcome such a strong showing. Moreover, these secondary factors of nonobviousness are only relevant if ePlus has proven there is a nexus or direct connection between the merits of the claimed inventions and the evidence of the secondary factors.

In order for commercial success to show that a patent claim is not obvious, ePlus must establish that the commercial product sales were a direct result of the unique characteristics of the features in the patent claim. Expert testimony may be necessary to compare commercial products to claims.

**OBJECTION:**  *e*Plus objects on the ground that the proposed instruction, while loosely based on AIPLA Model Instruction No. 7.4, substantially departs from the AIPLA model instruction in a blatant effort to slant the instruction in favor of Lawson's trial arguments.  First, Lawson omits two of the "secondary factors" that must be considered as evidence of non-obviousness, factors one and seven in the Model Instruction and as included in *e*Plus's proposed instruction.

Second, the following significant portion of Lawson's proposed instruction appears nowhere in the Model Instruction, and is an argumentative, one-sided, incorrect, and misleading statement of the law:

If Lawson has made a strong showing that the claimed inventions are obvious apart from these secondary factors, however, then these secondary considerations might not overcome such a strong showing.  Moreover, these secondary factors of

nonobviousness are only relevant if ePlus has proven there is a nexus or direct connection between the merits of the claimed inventions and the evidence of the secondary factors.  In order for commercial success to show that a patent claim is not obvious, ePlus must establish that the commercial product sales were a direct result of the unique characteristics of the features in the patent claim.  Expert testimony is necessary to compare commercial products to claims.

This language is not in the model instruction, and is an inaccurate and argumentative statement of the law.  *e*Plus therefore objects to the proposed instruction, and *e*Plus's Proposed Instruction No. P-35, which is faithful to the AIPLA Model Instruction No. 7.4, should be used instead.

**Willful Infringement**

> **Lawson contends that willfulness should not be tried to the jury. In that case, none of the following instructions would be needed. To preserve its rights, Lawson conditionally proposes the following instruction regarding willfulness, only to be used if necessary.**

**D-38:  Willful Infringement**

If you find by a preponderance of the evidence that Lawson infringed ePlus's patent, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that Lawson acted with "reckless disregard" of the claims of the patents in suit prior to the filing date of this lawsuit. To show "reckless disregard," ePlus must show by clear and convincing evidence that:

1. Lawson was aware of ePlus's patents when infringement began,

2. Lawson acted despite an objectively high likelihood that its actions infringed a valid patent, and

3. The objectively high likelihood of infringement was either known or so obvious that it should have been known to Lawson.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Lawson intentionally copied the claimed invention or a product covered by ePlus's patent, whether Lawson relied on competent legal advice, and whether Lawson presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

When determining whether any infringement was willful, you must undertake a two-step inquiry. First, you must consider whether Lawson's behavior was objectively reasonable.  If Lawson had a good faith invalidity or noninfringement defense, this fact weighs in favor of a finding that Lawson was objectively reasonable. The facts can show that Lawson was objectively reasonable even if Lawson did not know about those facts. If you find that Lawson's behavior was objectively reasonable, Lawson cannot be found to have willfully infringed the patents in suit. If you find that Lawson's behavior was not objectively reasonable, you must then consider whether Lawson acted despite an objectively-defined risk that was either known or so obvious that it should have been known to Lawson.

**OBJECTION:**  *e*Plus believes that this proposed instruction is now moot as *e*Plus has agreed, as set forth in its notice to the Court of November 22, 2010, that the Court may decide the issue of willfulness.  If the Court decides to determine willfulness, no jury instruction should be necessary.  To the extent the Court determines to have the jury determine willfulness, *e*Plus objects to this incorrect and argumentative instruction which, once again, substantially edits the

AIPLA Model Instruction in order to slant the instruction in Lawson's favor and adopt its trial arguments.  Although the instruction appears loosely based on AIPLA Model Instruction No. 13, Lawson significantly adds:  [Willfulness must be proven by clear and convincing evidence showing that] "Lawson acted with 'reckless disregard' of the claims of the patents in suit prior to the filing date of this lawsuit.  To show 'reckless disregard,' ePlus must show by clear and convincing evidence that …"  This proposal substantially deviates from the Model Instruction and incorrectly instructs the jury as a matter of law that willfulness may be found only if Lawson showed "reckless disregard" that predated the filing date of the lawsuit.

In the event any instruction is required, the Court should adopt either the AIPLA Model Instruction without Lawson's incorrect and argumentative editorializing, or, preferably, adopt the FCBA Model Instruction No. 3.8.  That instruction more clearly explains to the jury the two-part test the jury must consider for willful infringement, and more accurately sets forth examples of the facts the jury may consider as evidence of Lawson's statement of mind, including, *e.g.,* whether or not Lawson made a good-faith effort to avoid infringing or attempted to design around the *e*Plus patents.

**Final Instructions**

**D-39:  Final Instructions on Jury Deliberations**

That concludes my instructions on patent law. I will now give you some final instructions about conducting your deliberations and returning your verdict.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans for either side in this case. You are judges - judges of the facts. Your only job is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone - including me - how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decisions that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

**OBJECTION:**  *e*Plus does not object to the proposed instruction.

## OBJECTIONS TO LAWSON'S PROPOSED JURY VERDICT FORM

*e*Plus objects to Lawson's proposed jury verdict form on the ground that it (i) is overly complicated, (ii) is confusing to the jury, (iii) embodies incorrect proof requirements, and (iv) is clearly designed to unfairly favor Lawson by forcing the jury to find infringement only by first weeding through overly complex and unnecessary factual findings. The proposed jury verdict form does not appear to be based on any model verdict form typically used in patent cases, or any prior verdict forms used in this Court.

*e*Plus also objects that the form requires the jury to first adjudicate Lawson's defenses with respect to invalidity before adjudicating the plaintiff's claims of infringement. Moreover, Lawson's proposed form instructs the jurors to "STOP" if they find in favor of Lawson's defenses. No logical reason exists why the jurors should adjudicate Lawson's defenses before dealing with the plaintiff's claims, or to refrain from adjudicating infringement if they make an invalidity finding.

*e*Plus further objects that while Lawson's proposed form asks the jury to simply determine whether asserted claims are invalid, Lawson inconsistently requires the jurors to make overly complex, multiple fact determinations in order to find infringement. For example, Lawson proposes that the jurors be asked to determine, in separate questions, whether "Lawson's accused software has multiple catalogs," whether it has a "means for converting data," and whether it has a "database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately?" The jurors are then directed that they must "STOP" unless they answer these questions in the affirmative. ***Only then*** may the jurors go on to assess infringement which, again, they are required to do only through an overly complicated series of questions that break out the infringement questions into

- 55 -

direct and indirect infringement, with separate questions for each of third party direct infringement, and Lawson's inducement, and/or contributory infringement.  Finally, after answering all of these questions, the jurors are asked yet again to determine whether Lawson had a specific intent to induce infringement.  All of these questions are repeated in order to require separate verdicts for products or combinations of products such as, e.g., S3 Procurement, Requisition Self-Service, and S3 Procurement Punchout.  Moreover, it appears that Lawson has set forth these questions in a manner intended to incorrectly limit the applicable claims for which Lawson's products are accused.  It further appears that many of Lawson's questions are incorrectly phrased to articulate statements of law which are nothing more than Lawson's theories of the case.  Again, this is inconsistent with Lawson's questions for invalidity, which ask simply whether the claim is invalid (e.g., "Did Lawson prove by clear and convincing evidence that any of the asserted claims are invalid in view of the prior art, either because the claims are obvious, or they are anticipated?").

In short, Lawson's proposed form is blatantly one-sided and clearly intended to allow the jury to find invalidity with minimal thought, while requiring the jury to undergo a tortuous and indecipherable path in order to result in an infringement verdict.  Whereas only two simple questions are provided in order for the jurors to invalidate a claim (those questions asking simply whether the jurors find invalidity and, if so, which claim), in order for the jurors to find, e.g., indirect infringement of a single claim by a single accused product, the jurors must provide an affirmative answer to at least *seven questions*, including three requisite preliminary factual findings.

Accordingly, *e*Plus objects to Lawson's proposed verdict form in its entirety.

Respectfully submitted,

Dated:  November 24, 2010

_____/s/_____

David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
Counsel for Plaintiff *e*Plus, Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
hwillett@cblaw.com
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
James D. Clements  *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff
*e*Plus, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 24th day of November, 2010, I will electronically file the foregoing **PLAINTIFF *e*PLUS INC.'S OBJECTIONS TO DEFENDANT LAWSON SOFTWARE, INC.'S PROPOSED JURY INSTRUCTIONS AND PROPOSED VERDICT FORM** with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan C. Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

_____/s/_____
David M. Young
Virginia State Bar #35997
Attorney for Plaintiff *e*Plus, Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com

# EXHIBIT A

~~**I. The Nature of the Action and the Parties**[1]~~

~~This is a patent case.  The patents involved in this case relate to [subject matter] technology.  [BRIEFLY DESCRIBE TECHNOLOGY INVOLVED].~~

~~During the trial, the parties will offer testimony to familiarize you with this technology.  For your convenience, the parties have also prepared a glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.~~

~~[The Plaintiff] is the owner of a patent, which is identified by the Patent Office number: [full patent number] (which may be called "the [abbreviated patent number] patent"); [IDENTIFY ADDITIONAL PATENTS].  This patent may also be referred to as "[the Plaintiff]'s patent."  [The Defendant] is the other party here.~~

~~A.   United States Patents~~

**D-2:    What a Patent Is and How One is Obtained**

**As I explained, this case involves a dispute related to three United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to first show you a short film about the patent system and then explain what a patent is and how one is obtained.**

**The video that I am about to show you directs you to a sample patent. We have given you a copy of the sample patent so that you can follow along.**

***[SHOW VIDEO – The Federal Judicial Center: "An Introduction to the Patent System."]***

**Now that you have finished watching the video, let me take a moment to explain what a patent is and how one is obtained.** Patents are granted by the United States Patent and Trademark Office (sometimes called **"**the ~~"~~PTO").  A **valid United States** patent gives the ~~owner~~**patent holder** the right ~~to exclude~~**for up to 20 years from the date the patent application was filed to prevent** others from making, using, offering to sell, or selling ~~[[~~the patented invention~~]~~ ~~[a product made by the patented process]]~~ within the United States**,** or **from** importing it into the United States~~.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.~~**, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.**

---

[1] Text that is in red font and stricken through shows text which Lawson has deleted from the model instructions. Text that is in blue font shows that which Lawson has added to the model instructions.  Text that is in green font shows that which is in both the model instructions and Lawson's proposed instructions, but Lawson's proposals move the text to another location within the instructions.

**The process of obtaining a patent is called patent prosecution.** To obtain a patent, **one must first file** an application ~~for a patent must be filed~~ with the PTO. **The PTO is an agency of the Federal Government and employs trained examiners who review applications for patents.** The application includes **what is called** a **"**specification,**"** which must ~~have~~**contain** a written description of the **claimed** invention telling what the invention is, how it works, ~~and~~ how to make **it** and **how to** use it so ~~as to enable~~ others skilled in the ~~art to do so. The specification must also describe what the inventor believed at the time of filing to be the best way of making his or her~~**field will know how to make or use the** invention. The specification concludes with one or more numbered sentences. These ~~numbered sentences~~ are ~~called the claims of~~ the patent~~. The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights~~ **"claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries**.

~~An~~**After the applicant files the** application ~~for,~~ a **PTO** patent ~~is reviewed by a trained PTO examiner. The~~ examiner reviews ~~(or examines)~~ the ~~patent~~ application to determine whether **or not** the claims are patentable **(appropriate for patent protection)** and whether **or not** the specification adequately describes the invention claimed. In examining a patent application, the patent examiner ~~searches~~**reviews** records available to the PTO **or submitted by the applicant** for what is referred to as "prior art~~," and he or she also~~**." The examiner** reviews **this** prior art ~~submitted by the applicant. When the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case. But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application. The patent examiner considers, among other things~~ **to determine whether or not the invention is truly an advance over the state of the art at the time, i.e.,** whether each claim defines an invention that is new~~, useful,~~ and not obvious in view of ~~this prior art.~~**the prior art. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes subject matter that existed before the claimed invention. A patent lists the prior art that the examiner considered; this list is called the "cited references."**

~~Following~~**After** the prior art search and examination of the application, the patent examiner ~~advises~~**informs** the applicant in writing **of** what the ~~patent~~ examiner has found and whether **the examiner considers** any claim ~~is~~**to be** patentable ~~(in other words,~~**and, thus, would be** "allowed"~~).~~ **."** This writing from the patent examiner is called an "~~office action." More often than not, the initial office action by the patent~~**Office Action." If the** examiner rejects the claims~~.~~ ~~The~~**, the** applicant ~~then responds~~**has an opportunity to respond** to the ~~office action~~**examiner,** and ~~sometimes changes~~**to change** the claims or ~~submits~~**to submit** new claims. This process may go back and forth ~~between the patent examiner and the applicant for several months or even years~~**for some time** until the ~~patent~~ examiner is satisfied ~~that~~**whether or not** the application ~~and claims are patentable~~**meets the requirements for a patent.** The ~~collection of~~ papers generated ~~by~~**during these communications** **between** the patent examiner and the applicant ~~during this time of corresponding back and forth~~ is called the "prosecution history." ~~You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."~~

2

A. **Patent Litigation**

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the patented invention] [a product made by the patented process]], as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A granted patent is presumed to be valid. But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid. One example of a way in which the presumption may be overcome is if the PTO has not considered, for whatever reason, invalidating **However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other** prior art that is**will be** presented to you. A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid [and/or unenforceable, if the patent owner unfairly procured the patent in some way. This will be discussed further below]. The accused infringer must prove invalidity [or unenforceability] by clear and convincing evidence. I will discuss more of this topic later.**A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Lawson has proven that the patent is invalid.**

I will now briefly explain the parties**'** basic contentions in more detail.

3

~~II.~~ **D-3:**  **Contentions of the Parties**

~~[The Plaintiff]~~**ePlus** contends that ~~[the Defendant]~~**Lawson** makes, uses, offers to sell, or sells ~~a [[product] [method]] that infringes [claim(s) in dispute] of the [abbreviated patent number] patent.  [The Plaintiff] must prove that [the Defendant]~~**products or services that infringe certain claims of the patents in suit. ePlus must prove that Lawson** infringes the ~~[abbreviated patent number] patent~~**patents in suit** by a preponderance of the evidence.  That means that ~~[the Plaintiff]~~**ePlus** must show that it is more likely that ~~[the Defendant]'s [allegedly infringing product] infringes than it does~~**Lawson's accused products and services infringe than that they do** not infringe.

~~There are two ways in which a patent claim can be directly infringed.[‡] First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."  To determine literal infringement, you must compare the accused [[product] [method]] with each claim that [the Plaintiff] asserts is infringed.  It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.~~

~~A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim.  If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] in that claim, [the Defendant] does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.~~

~~Under the doctrine of equivalents, you may find that [the Defendant]'s [[product] [method]] infringes a claim of the [abbreviated patent number] patent even if not every [[element] [step]] of that claim is present in the [the Defendant]'s [[product] [method]]. However, to do so, you must find that there is an equivalent [[component] [part] [method step]] in the [the Defendant]'s [[product] [method]] for each [[element] [method step]] of the patent claim that is not literally present in the [the Defendant]'s [[product] [method]].  [The Plaintiff] must prove by a~~ preponderance of the evidence ~~that [the Defendant]'s [[product] [method]] contains the equivalent of each element of the claimed invention that is not literally present in the [allegedly infringing product].~~

~~[The Defendant] denies that it is infringing the [abbreviated patent number] patent.  [The Defendant] also contends that the [abbreviated patent number] patent is invalid [and/or unenforceable].  [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY AND UNENFORCEABILITY DEFENSES BEING ASSERTED].~~


**Lawson denies that it has infringed the patents in suit. Lawson also contends that the patents in suit are invalid. Lawson's contention that the patents in suit are invalid is based on its contention that the invention set forth in each claim was either anticipated or**

---

[‡] ~~This section and below should be modified in accordance with the patent owner's infringement contentions, e.g., where the doctrine of equivalents is not at issue.~~

4

**rendered obvious by existing inventions at the time the inventors of the patents in suit allegedly invented the claimed inventions.**

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the [abbreviated patent number] patent**patents in suit**, you, the jury, have the ultimate responsibility for deciding whether the claims of the [abbreviated patent number] patent are valid.  [The Defendant]**patents in suit are invalid. Lawson** must prove invalidity by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

LIBA/2134400.1

**D-11:** **Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper** – See "prosecution history" below. **of Prosecution history – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.**

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application. [Insert additional types of prior art if applicable, e.g., nonpublic art.] **Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of the prior art.**

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the

art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

[Others to be agreed upon between the parties]

7

**~~3.4~~ D-23:** Contributory Infringement

**ePlus also argues that Lawson is liable for contributory infringement by contributing to the direct infringement of the asserted claims of the patents in suit by Lawson's customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.**

~~[The Plaintiff] asserts that [the Defendant] has contributed to another's infringement. To show~~ **To prove** contributory infringement, ~~[the Plaintiff] must prove that it is more likely than not that there was contributory infringement.~~ **ePlus must prove five things by the preponderance of the evidence:**

~~It is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, [the Defendant] cannot have contributed to the infringement of the patent.  If you find someone has directly infringed the [abbreviated patent number] patent, then contributory infringement exists if:~~

~~(1) [the Defendant] sold, offered for sale, or imported;~~

**First, Lawson sells or offers to sell a component of a product or a product for use in a method to a third party, in this case Lawson's customers.**

**Second, the component or product that Lawson sells has no substantial, noninfringing use.**

~~(2)~~**Third, the component or product constitutes** a material ~~component~~**part** of the ~~patented~~**claimed** invention that is not a staple article ~~of commerce capable of substantial non-infringing use;~~ **.**

~~(3) with knowledge~~**Fourth, Lawson is aware of the patents in suit and knows** that the ~~component was~~**components or products were** especially made or adapted for use in an infringing ~~[[product] [method]].~~**method.**

**And fifth, the third party's use of Lawson's component or product directly infringes the claim.**

A "staple article **or commodity** of commerce capable of substantial non-infringing use" is something that has **substantial** uses ~~[[~~other than as a part or component of the patented ~~product] [other than in the patented~~ method~~]]~~, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**5.  D-28:  Prior Art Defined**

Prior art includes any of the following items received into evidence during trial:

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

Lawson is relying some items that ePlus agrees are prior art, and other items that ePlus does not agree are prior art. Lawson must prove by the clear and convincing standard that the items that are in dispute are prior art. In order to do so, Lawson must prove that these items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

1.  First, any [product] [method] that was publicly known or used by others in the United States before the patented invention was made, which in this case is August 10, 1994;

2.  Second, patents that issued more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

3.  Third, publications having a date more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

4.  Fourth, any [product] [method] that was in public use or on sale in the United States more than one year before the patent was filed;

5.      any [product] [method] that was made by anyone before the named inventors created the patented [product] [method] where the [product] [method] was not abandoned, suppressed, or concealed.

[ADD ANY ADDITIONAL TYPES OF PRIOR ART]

In this case, [the Defendant] contends that the following items are prior art: [identify prior art by name]

35 U.S.C. § 102.

Fifth, the invention was described in a published application for patent by another filed in the United States before the invention by the applicant for patent; Sixth, the invention was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent; and

Seventh, any other information or activity that the patent owner has admitted is prior art.

9

## 6.0 D-32:  Anticipation

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, [the Defendant]Lawson must prove with clear and convincing evidence that the claimed invention is not new.

In this case, [the Defendant] contends that the claims of the [abbreviated patent number] patent are anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the _____ patent was described in the July, 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]_____

To anticipate a claim, each and every element in the claim must be present in a single system or item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior [[publication] [patent] [etc.]]art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular [[publication] [patent] [etc.]]. art.

**In this case, certain claims asserted by ePlus include elements requiring "one or more" of a certain product feature. A piece of prior art that includes either one of that product feature or more than one of that product feature and otherwise anticipates an asserted claim renders the asserted claim invalid.**

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior [[publication] [invention] [etc.]]art, but also what inherently resulted from its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed . It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure at the time of the disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated at the time of the disclosure can still be an invalidating anticipation.

_____You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that [the Defendant] contends apply in this case. I will now instruct you about those.

7.0  Obviousness **D-33:        Obviousness**

**Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.**

[The Defendant]**Lawson** contends that claim(s) [numbers] of the [abbreviated patent number] patent**all of the asserted claims of the patents in suit** are invalid because the claimed invention(s) is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

**In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.**

**When determining whether it would have been obvious for a person of skill in the art to combine two pieces of prior art, you may use your own common sense given the facts presented to you.**

The following factors must be evaluated to determine whether [the Defendant]**Lawson** has established that the claimed inventions are obvious:

1. **First, what is** the scope and content of the prior art relied upon by [the Defendant]; **?**

2.        the difference or**Second, what** differences, if any, **are there** between each claim of the [abbreviated patent number] patent that [the Defendant] contends is obvious**the invention of the claims of the patents** and the prior art;**?**

3. **Third, what was** the level of ordinary skill in the art at the time the invention of the [abbreviated patent number] patent was made; and**?**

4.        additional considerations, if any, that indicate that the invention was obvious or
        not obvious.

**Fourth, are there any objective indications of non-obviousness?**

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

[The Defendant]**Lawson** must prove obviousness by clear and convincing evidence.

11

I will now explain each of the four factors in more detail.

LIBA/2134400.1

**7.2  D-35:  Differences Between between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you You should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

13

**7.4 D-37:       Secondary Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. **These factors are:**

[USE ONLY THOSE INSTRUCTIONS THAT ARE APPROPRIATE.]

1.       Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. **1.**  Was there long **-**felt need for a solution to the problem**problems** facing the inventors, which was satisfied by the claimed invention?

3. **2.**  Did others try, but fail, to solve the problem solved by the claimed invention?

4. **3.**  Did others copy the claimed invention?

5. **4.**  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. **5.**  Did others in the field, or [the Defendant] praise the claimed invention or express surprise at the making of the claimed invention?

7.       Did others accept licenses under [abbreviated patent number] patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious. **If Lawson has made a strong showing that the claimed inventions are obvious apart from these secondary factors, however, then these secondary considerations might not overcome such a strong showing. Moreover, these secondary factors of nonobviousness are only relevant if ePlus has proven there is a nexus or direct connection between the merits of the claimed inventions and the evidence of the secondary factors.**

**In order for commercial success to show that a patent claim is not obvious, ePlus must establish that the commercial product sales were a direct result of the unique characteristics of the features in the patent claim. Expert testimony may be necessary to compare commercial products to claims.**

14

# EXHIBIT B

# AIPLA's Model Patent Jury Instructions

© 2008, American Intellectual Property Law Association

Disclaimer

The Model Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been and will be made to ensure that the Model Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent that the information contained in the Model Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

# Table of Contents

Introduction
**Preliminary Jury Instructions**
I.   The Nature of the Action and the Parties
     A.  United States Patents
     B.  Patent Litigation
II.  Contentions of the Parties
III. Trial Procedure
Glossary of Patent Terms
Glossary of Technical Terms
**Post-Trial Instructions**
1.  Summary of Patent Issues
Claim Construction
     2.0  Claim Construction – Generally
     2.1  Claim Construction for the Case

2.2   Construction of Means-Plus-Function Claims for the Case Infringement
3.0   Infringement – Generally
3.1   Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial
3.2   Direct Infringement – Literal Infringement
3.3   Inducing Patent Infringement
3.4   Contributory Infringement
3.5   Infringement of Means-Plus-Function Claims
3.6   Infringement of Dependent Claims
3.7   Infringement of Open Ended or "Comprising" Claims
3.8   Infringement by supply of all or a substantial portion of the components of a patented invention to another country (271(f)(1))
3.9   Infringement by supply of components especially made or adopted for use in the patented invention to another country (271(f)(2))
3.10  Infringement by Import, Sale, Offer for Sale or Use of Product Made Outside United States by Patented Process (infringement under 271(g))
3.11  Direct Infringement – Infringement Under The Doctrine Of Equivalents
3.12  Limitations on the Doctrine of Equivalents – Prior Art
3.13  Limitations on the Doctrine of Equivalents – Prosecution History Estoppel
3.14  Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public
4.  Summary of Invalidity Defense
5.  Prior Art Defined
Anticipation
     6.0   Anticipation

6.1   Prior Public Knowledge
6.2   Prior Public Use
6.3   On Sale Bar
6.4   Experimental Use
6.5   Printed Publication
6.6   Prior Invention
6.7   Prior Patent
6.8   Prior U.S. Application
Obviousness
7.0   Obviousness
7.1   Scope and Content of the Prior Art
7.2   Differences Between the Claimed Invention and the Prior Art
7.3   Level of Ordinary Skill
7.4   Factors Indicating Nonobviousness
8.   Enablement
9.   Written Description Requirement
10.  Best Mode
Unenforceability (Inequitable Conduct)
11.0   Inequitable Conduct - Generally
11.1   Materiality
11.2   Intent to Deceive or Mislead
11.3   Balancing of Materiality and Intent
Damages
12.0   Damages – Generally
12.1   Date Damages Begin
        Alternate A [When the date of the notice of infringement is stipulated]
        Alternate B [When the date of the notice of infringement is disputed]
        Alternate C [When the date damages begin is the date the lawsuit was filed]
12.2   Two Types of Damages – Lost Profits and Reasonable Royalty
12.3   Lost Profits – "But-For" Test
12.4   Lost Profits – Panduit Factors
12.5   Lost Profits – Panduit Factors— Demand
12.6   Lost Profits – Panduit Factors— Acceptable Non-Infringing Substitutes
12.7   Lost Profits – Panduit Factors— Capacity
12.8   Lost Profits – Panduit Factors— Amount of Profit Incremental Income Approach
12.9   Lost Profits – Market Share
12.10  Lost Profits – Price Erosion
12.11  Lost Profits – Cost Escalation
12.12  Lost Profits – Collateral Sales
12.13  Lost Profits – Doubts Resolved Against Infringer
12.14  Reasonable Royalty – Generally
12.15  Reasonable Royalty – Definition
12.16  Reasonable Royalty – Relevant Factors
12.17  Reasonable Royalty – Timing
13.  Willful Infringement
Acknowledgments

# Introduction

### 1.  The 2007 Version

In the Winter of 2007, the Patent Litigation Committee of the American Intellectual Property Law Association undertook the task of updating the AIPLA Model Patent Jury Instructions ("Instructions") to take into account changes to the law since the previous version of the Instructions were published.  The Instructions were originally created in 1997 and were updated previously in 2005.  A Subcommittee was formed to review recent case law and make any necessary changes to the Instructions.  These changes included not only revising the Instructions to take into account recent case law, but to also revise the Instructions to make them simpler and more easily understandable to jurors.  The current revision includes case law through December 31, 2007.

One of the fundamental goals of the Instructions is to provide a model set of jury instructions that would not be biased in

favor of either the patent owner or the accused infringer.  The Instructions are not meant to address every conceivable issue that might arise in patent litigation, however.  Instead, Instructions are provided on those issues that most typically arise in patent litigation and that have clear precedental support.  Even so, it is incumbent upon the litigants to tailor these Instructions to the particular case and to simplify the tasks for the jury by not providing superfluous Instructions.  Of course, it is also intended that these Instructions will be used in conjunction with other instructions dealing with non-patent issues such as credibility and that the trial court will further the jury's understanding of these Instructions by relating the legal principles in the Instructions to the particular factual contentions of the parties.

To further these goals and to enhance the litigants' ability to customize the Instructions to a particular case, the revised Instructions continue the use of bracketed terminology for certain consistent terms.  This mechanism permits the litigants to use the find and replace feature of a word processing program to insert case specific facts.  Examples of the consistent terms are:

[subject matter]
[the patentee]
[the Plaintiff]
[the Defendant]
[full patent number]
[abbreviated patent number]
[claims in dispute]
[allegedly infringing product]
[invention date]
[U.S. filing date]
[critical date]

[anticipating patent]
[alleged analogous art]
[alleged prior publication]
[alleged device on sale]
[infringement notice date]
[lawsuit filing date]
[beginning infringement date]
[collateral products]
[the Plaintiff's product]

In addition to these "find and replace" terms, brackets were also used to indicate where various terminology could be used to customize the Instructions to a particular case.  For example, to take into account the differences between utility and method patents, there will be instructions that include "[[product] [method]]" and the like.  Other examples include "[[product][system]]," "[importing][selling][offering for sale][using]" and "[method][process]]."

The subcommittee at large substantially completed the revisions to the 2005 instructions in October 2007.  Additional research was later done to update the case law through December 31, 2007 and the AIPLA Board of Directors approved the Instructions for publication in March 2008.

March 2008
Scott J. Pivnick
John Schneider
Chairpersons, Model Jury Instructions Subcommittee
Patent Litigation Committee
American Intellectual Property Law Association

# Preliminary Jury Instructions

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

### I.   The Nature of the Action and the Parties

This is a patent case.  The patents involved in this case relate to [subject matter] technology.  [BRIEFLY DESCRIBE TECHNOLOGY INVOLVED].

During the trial, the parties will offer testimony to familiarize you with this technology.  For your convenience, the parties have also prepared a glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

[The Plaintiff] is the owner of a patent, which is identified by the Patent Office number: [full patent number] (which may be called "the [abbreviated patent number] patent"); [IDENTIFY ADDITIONAL PATENTS].  This patent may also be referred to as "[the Plaintiff]'s patent."  [The Defendant] is the other party here.

### A.   United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO").  A patent gives the owner the right to exclude others from making, using, offering to sell, or selling [[the patented invention] [a product made by the patented process]] within the United States or importing it into the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO.  The application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.  The specification must also describe what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered sentences. These numbered sentences are called the claims of the patent.  The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

An application for a patent is reviewed by a trained PTO examiner. The examiner reviews (or examines) the patent application to determine

whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant. When the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case.  But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.  The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed").  This writing from the patent examiner is called an "office action."  More often than not, the initial office action by the patent examiner rejects the claims.  The applicant then responds to the office action and sometimes changes the claims or submits new claims.  This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history."  You may also hear the "prosecution history" referred to as  the "file history" or the "file wrapper."

## B.  Patent Litigation

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the patented invention] [a product made by the patented process]], as defined by the claims, within the United States before the term of the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A granted patent is presumed to be valid.  But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the PTO has not considered, for whatever reason, invalidating prior art that is presented to you.  A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid [and/or unenforceable, if the patent

owner unfairly procured the patent in some way.  This will be discussed
further below].  The accused infringer must prove invalidity [or
unenforceability] by clear and convincing evidence. I will discuss more of this
topic later.

I will now briefly explain the parties' basic contentions in more detail.

## II.  Contentions of the Parties

[The Plaintiff] contends that [the Defendant] makes, uses, offers to sell, or
sells a [[product] [method]] that infringes [claim(s) in dispute] of the [abbreviated
patent number] patent.  [The Plaintiff] must prove that [the Defendant] infringes
the [abbreviated patent number] patent by a preponderance of the evidence.  That
means that [the Plaintiff] must show that it is more likely that [the Defendant]'s
[allegedly infringing product] infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed.[1]
First, a claim can be literally infringed.  Second, a claim can be infringed under
what is called the "doctrine of equivalents."  To determine literal infringement,
you must compare the accused [[product] [method]] with each claim that [the
Plaintiff] asserts is infringed.  It will be my job to tell you what the language of
the patent claims mean. You must follow my instructions as to the meaning of the
patent claims.

A patent claim is literally infringed only if [the Defendant]'s [[product]
[method]] includes each and every [[element] [method step]] in that patent claim.
If [the Defendant]'s [[product] [method]] does not contain one or more
[[elements] [method steps]] in that claim, [the Defendant] does not literally
infringe that claim.  You must determine literal infringement with respect to each
patent claim individually.

Under the doctrine of equivalents, you may find that [the Defendant]'s
[[product] [method]] infringes a claim of the [abbreviated patent number] patent
even if not every [[element] [step]] of that claim is present in [the Defendant]'s
[[product] [method]].  However, to do so, you must find that there is an equivalent
[[component] [part] [method step]] in [the Defendant]'s [[product] [method]] for
each [[element] [method step]] of the patent claim that is not literally present in
[the Defendant]'s [[product] [method]].  [The Plaintiff] must prove by a
preponderance of the evidence that [the Defendant]'s [[product] [method]]
contains the equivalent of each element of the claimed invention that is not
literally present in the [allegedly infringing product].

[The Defendant] denies that it is infringing the [abbreviated patent
number] patent.  [The Defendant] also contends that the [abbreviated patent

---

[1] This section and below should be modified in accordance with the patent owner's infringement
   contentions, e.g., where the doctrine of equivalents is not at issue.

number] patent is invalid [and/or unenforceable].  [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY AND UNENFORCEABILITY DEFENSES BEING ASSERTED].

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the [abbreviated patent number] patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the [abbreviated patent number] patent are valid.  [The Defendant] must prove invalidity by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

### III.  Trial Procedure

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.  This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was to select you as jurors.  We are now about to begin the second phase, the opening statements.  The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence.  In the third phase, [the Plaintiff] goes first in calling witnesses to the witness stand.  These witnesses will be questioned by [the Plaintiff]'s counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After [the Plaintiff] has presented its witnesses, [the Defendant] will call its witnesses, who will also be examined and cross-examined.  The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase. Again, what the lawyers say is not evidence.  The closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law.  I have already explained to you a little bit about the law.  But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case.  You are the judges of the facts, and I decide questions of law.  I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language.  You must follow my explanation of the law and the patent claim language even if you do not agree with me.  Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

# Glossary of Patent Terms

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention.  The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper** – See "prosecution history" below.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application. [Insert additional types of prior art if applicable, e.g., nonpublic art.]

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the

8

PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it.  The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

[Others to be agreed upon between the parties]

# Glossary of Technical Terms

[To be agreed upon between the parties]

# Post Trial Instructions[2]

### 1.  Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following [three] main issues:

1.      Whether [the Plaintiff] has proved that [the Defendant] infringed Claim[s] [claims in dispute] of the [abbreviated patent number] patent.

2.      Whether [the Defendant] has proved that Claim[s] [claims in dispute] of the [abbreviated patent number] patent are invalid.

3.      What amount of damages, if any, [the Plaintiff] has proved.

[LIST ANY OTHER PATENT ISSUES]

**Claim Construction**

### 2.0  Claim Construction – Generally

Before you decide whether [the Defendant] has infringed the claims of [the Plaintiff's] patent or whether [the Plaintiff's] patent is invalid, you will have to understand the patent claims.  The patent claims are numbered sentences at the end of the patent.

---

[2] AIPLA drafted the model instructions assuming the litigated issues included in the instructions will be submitted to the jury.  AIPLA is not suggesting that the parties have a right to a jury trial on all issues included in the instructions.  The instructions used in your case should be tailored to the specific issues being litigated.

The patent claims involved here are [claims in dispute], beginning at column ___, line ___ of the patent, which is exhibit ___ in evidence.  The claims are intended to define, in words, the boundaries of the invention.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988).

## 2.1  Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

[READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996)

## 2.2  Construction of Means-Plus-Function Claims for the Case

The following clause used in claim(s) _____ of the [abbreviated patent number] patent is in a special form called a [["means-plus-function"] ["step-plus-function"]] clause: "_____".  This clause requires a special interpretation.  Those words do not cover all [[means] [steps]] that perform the recited function of "_____", but cover <u>only</u> the [[structure] [step]] described in the patent specification and drawings that performs the function of "_____" or an equivalent of that [[structure] [step]].  The court has found that the [[structure] [step]] in the patent specification that performs that function is:  "_____."  You must use my interpretation of the means-plus-function [[element] [step]] in your deliberations regarding infringement and validity.

35 U.S.C. § 112; *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,*15 F.3d 1573, 1578 (Fed.

Cir. 1993); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**Infringement**

### 3.0  Infringement – Generally

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether [the Plaintiff] has proven that [the Defendant] infringed any of the claims of the [abbreviated patent number] patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling [[the patented invention] [a product made by a patented method]] within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes claim[s] [claims in dispute] of [the Plaintiff]'s [abbreviated patent number] patent.

You have heard evidence about both [the Plaintiff]'s commercial [[product] [method]] and [the Defendant]'s accused [[product] [method]].  However, in deciding the issue of infringement you may not compare [the Defendant]'s accused [[product] [method]] to [the Plaintiff]'s commercial [[product] [method]].  Rather, you must compare the [Defendant]'s accused [[product] [method]] to the claims of the [abbreviated patent number] patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused [[product][method]] is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370 (1996).

### 3.1  Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial

In this case, [the Plaintiff] asserts that [the Defendant] has directly infringed the patent.  [The Defendant] would be liable for directly infringing [the Plaintiff]'s patent if you find that [the Plaintiff] has proven that it is more likely than not that [the Defendant] has made, used, offered to sell, or sold the invention defined in at least one claim of [the Plaintiff]'s patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

35 U.S.C. § 271(a); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

### 3.2  Direct Infringement – Literal Infringement

To determine literal infringement, you must compare the accused [[product] [method]] with each claim that [the Plaintiff] asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim.  If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] recited in a claim, [the Defendant] does not literally infringe that claim.  If [the Plaintiff] alleges infringement of a method claim, and there are others apart from [the Defendant] that performed one or more method steps of the claim, there can be no infringement unless [the Plaintiff] has proven that [the Defendant] controlled or directed the activity of the others who performed the method steps.

You must determine literal infringement with respect to each patent claim individually.

The accused [[product] [method]] should be compared to the invention described in each patent claim it is alleged to infringe, not to the [the Plaintiff]'s preferred or commercial embodiment of the claimed invention.  The same [[element] [method step]] of the accused [product] [method] may satisfy more than one element of a claim.

*BMC Resources v. Paymentech, L.P.,* 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

### 3.3  Inducing Patent Infringement

[The Plaintiff] asserts that [the Defendant] has actively induced another to infringe the patent. To show induced infringement, [the Plaintiff] must prove that it is more likely than not that someone has directly infringed the [abbreviated patent number] patent and that [the Defendant] has actively and knowingly aided and abetted that direct infringement.  [The Plaintiff] must show that [the Defendant] actually intended to cause the acts that constitute direct infringement, that [the Defendant] knew of the patent, and that [the Defendant] knew or should have known that its actions would lead to actual

infringement.  Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  It is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, there can be no induced infringement.

35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005)); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp.  v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

### 3.4  Contributory Infringement

[The Plaintiff] asserts that [the Defendant] has contributed to another's infringement. To show contributory infringement, [the Plaintiff] must prove that it is more likely than not that there was contributory infringement.

It is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, [the Defendant] cannot have contributed to the infringement of the patent.  If you find someone has directly infringed the [abbreviated patent number] patent, then contributory infringement exists if:

(1) [the Defendant] sold, offered for sale, or imported;

(2) a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

(3) with knowledge that the component was especially made or adapted for use in an infringing [[product] [method]].

A "staple article of commerce capable of substantial non-infringing use" is something that has uses [[other than as a part or component of the patented product] [other than in the patented method]], and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

### 3.5  Infringement of Means-Plus-Function Claims

The court has instructed you that claims _____ through _____of the [abbreviated patent number] patent contain [[means-plus-function] [step-plus-function]] clauses.  To show infringement, [the Plaintiff] must prove that it is more likely than not that the [[part of the Defendant's product] [step in the Defendant's method]] that performs the function of "_____" is identical to, or equivalent to, the [[structure] [step]] described in the specification for performing the identical function.

In deciding whether [the Plaintiff] has proven that [the Defendant]'s [[product] [method]] includes structure covered by a [[means-plus-function] [step-plus-function]] requirement, you must first decide whether the [[product] [method]] has any [[structure] [step]] that performs the function I just described to you.  If not, the claim containing that means-plus-function requirement is not infringed.

If you find that [the Defendant]'s accused [[product] [method]] performs the claimed function, you must next identify the [[structure] [step]] in [the Defendant]'s [accused product] that perform[s] this function. After identifying that [[structure] [step]], you must then determine whether [the Plaintiff] has shown that that [[structure] [step]] is either identical to, or equivalent to, any [[structure] [step]] disclosed in the patent specification for performing the function of "_____."  If they are the same or equivalent, the [[means-plus-function] [step-plus-function]] requirement is satisfied by that [[structure] [step]] of the [accused product]. If all the other requirements of the claim are satisfied by structures found in the [accused product], the [accused product] infringes the claim.

Whether the [[structure] [step]] of the accused product is equivalent to a [[structure] [step]] described in the patent specification is decided from the perspective of a person of ordinary skill in the art.  If a person of ordinary skill in the art would consider the differences between the [[structure] [step]] found in [the Defendant]'s product and a [[structure] [step]] described in the patent specification to be insubstantial, the [[structures] [steps]] are equivalent.

35 U.S.C. § 112; *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113-14 (Fed. Cir. 2002); *Asyst Tech, Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369-70 (Fed. Cir. 2001); *Ishida Co. v. Taylor*, 221 F.3d 1310, 1316-17 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 843-44 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-09 (Fed. Cir. 1998); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1578 (Fed. Cir. 1993); *Rite-Hite Corp. v. Kelley Co.,* 819 F.2d 1120, 1123-25 (Fed. Cir. 1987); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,* 805 F.2d 1558, 1562 (Fed. Cir. 1986).

### 3.6  Infringement of Dependent Claims

There are two different types of claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, [Independent Claim] is an independent claim and recites several elements.  [Dependent Claim] is a dependent claim that refers to [Independent Claim] and includes an additional element.  [IDENTIFY THE DIFFERENCES BETWEEN [Independent Claim] AND [Dependent Claim].  [Dependent Claim] requires each of the elements of [Independent Claim], as well as the additional elements identified in [Dependent Claim] itself.

To establish literal infringement of [Dependent Claim], [the Plaintiff] must show that it is more likely than not that the [the Defendant]'s [[product] [method]] includes each and every element of [Dependent Claim].

If you find that the [Independent Claim] from which [Dependent Claim] depends is not literally infringed, then you cannot find that [Dependent Claim] is literally infringed.

*Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (*citing Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.,* 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1552-53 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 626 (Fed. Cir. 1985).

### 3.7  Infringement of Open Ended or "Comprising" Claims

The preamble to claim _____ uses the phrase [RECITE THE PREAMBLE "_____ comprising"].  The word "comprising" means "including the following but not excluding others."

If you find that [the Defendant]'s [[product] [method]] includes all of the elements in claim _____, the fact that [the Defendant]'s [[product] [method]] might include additional [[components] [method steps]] would not avoid literal infringement of a claim that uses "comprising" language.

*Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed. Cir. 1983).

### 3.8 Infringement by Supply of all or a Substantial Portion of the Components of a Patented Invention to Another Country (271(f)(1))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by supplying [or causing to be supplied] all or a substantial portion of the components of the patented [product] [method] from the United States to another country and actively inducing [the assembly of those components into a product] [use of the components in a method] that would infringe the [abbreviated patent number] patent if they had been [assembled ][used] in the United States.

To show infringement under Section 271(f)(1), [the Plaintiff] must prove that it is more likely than not that (1) the [product] [method], as it was intended to be [assembled] [used] outside the United States, [included][would have included] all limitations of at least one of claims _____ of the [abbreviated patent number] patent, (2) [Defendant] supplied [or caused to be supplied] components from the United States that made up all or a substantial portion of the invention of any one of claims _____ of the [abbreviated patent number] patent, and (3) [Defendant] specifically intended to induce [the combination of the components into a product] [use of the components in a way] that would infringe the [abbreviated patent number] patent if the components had been combined in the United States.

35 U.S.C. § 271(f)(1); *Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746, 1757-58 (2007); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

### 3.9  Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention to Another Country (271(f)(2))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by supplying [or causing to be supplied] [a component][components] of an invention covered by at least one claim of the [abbreviated patent number] patent from the United States to a foreign country, where the exported component[s] [was][were] especially made or especially adapted for use in an invention covered by the [abbreviated patent number] patent and [has][have] no substantial non-infringing use, and where [Defendant] knew the component[s] [was][were] especially made or adapted for use in the patented invention and intended for the component[s] to be combined in a way that would have infringed the [abbreviated patent number] patent if the combination had occurred in the United States.

To show infringement under Section 271(f)(2), [the Plaintiff] must prove that it is more likely than not that the (1) [Defendant] actually supplied the components from the

16

United States to a foreign country or caused them to be supplied from the United States to a foreign country, (2) [Defendant] knew or should have known that the components were especially made or adapted for use in a [product] [method] that infringes the [abbreviated patent number] patent, (3) those components have no substantial non-infringing use, and (4) [Defendant] intended for the components to be combined into that [product] [method].  It is not necessary for you to find that the components actually were combined into an infringing [product] [method], as long as you find that [Defendant] intended the components to be combined into a [product][method] that would have infringed the [abbreviated patent number] patent if they had been combined in the United States.

35 U.S.C. § 271(f)(2); *Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746 (2007); *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364, 1367-69 (Fed. Cir. 2001); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1257-58 (Fed. Cir. 2000).

### 3.10  Infringement by Import, Sale, Offer for Sale or Use of Product Made Outside  United States by Patented Process (271(g))

[Plaintiff] asserts that [Defendant] infringed the [abbreviated patent number] patent by [importing][selling][offering for sale][using] a product that was made outside the United States by a process covered by one or more claims of the [abbreviated patent number] patent.

To show infringement under Section 271(g), [the Plaintiff] must prove that it is more likely than not that the (1) [Defendant] [imported][sold][offered for sale][used] a product that was made outside the United States by a process that includes all steps of at least one claim of the [abbreviated patent number] patent, (2) the product was made between [issue date of patent] and [expiration date of patent][date of trial], (3) [Defendant] [imported][sold][offered for sale][used] the product between [issue date of patent] and [expiration date of patent][date of trial].

It is up to you to use your own judgment, based on the evidence presented at trial, to decide whether the product was "made by" the patented process.  However, I am instructing you that you should find that the product was not "made by" by the patented process if you find that either (a) the product was materially changed by later processes, or (b) the product is only a trivial or non-essential part of another product.[3]

35 U.S.C. § 271(g); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001); *Biotec Biologische Naturenpackungen GmbH v. BioCorp., Inc.*, 249 F.3d 1341 (Fed. Cir. 2001); *Eli Lilly & Co. v. American Cyanamid Co.*, 82 F.3d 1568 (Fed. Cir. 1996); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996).

---

[3] In cases where the patentee is unable to determine the process by which the product at issue is made, and the prerequisites of 35 U.S.C. § 295 are satisfied, the presumption of Section 295 may also need to be included in this instruction, requiring the accused infringer to rebut a presumption that the product was made by the patented process.

### 3.11  Direct Infringement – Infringement Under the Doctrine of Equivalents

If you decide that [the Defendant]'s [[product] [method]] does not literally infringe an asserted patent claim, you must then decide whether that [[product] [method]] infringes the asserted claim under what is called the "doctrine of equivalents."  Under the doctrine of equivalents, the [[product] [method]] can infringe an asserted patent claim if it includes [[parts] [steps]] that are identical or equivalent to the requirements of the claim.  If the [[product] [method]] is missing an identical or equivalent [[part] [step]] to even one [[part] [step]] of the asserted patent claim, the [[product] [method]] cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the [[product] [method]] has an identical or equivalent [[part] [step]] to that individual claim requirement.

A [[part] [step]] of a [[product] [method]] is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the [[part] [step]] and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a [[part] [step]] of the [[product] [method]] is not substantial is to consider whether, as of the time of the alleged infringement, the [[part] [step]] of the [[product] [method]] performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the [[product] [method]] is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the [[part] [step]] with the claimed requirement.  The known interchangeability between the claim requirement and the [[part] [step]] of the [[product] [method]] is not necessary to find infringement under the doctrine of equivalents.  The same [[element] [method step]] of the accused [[product] [method]] may satisfy more than one element of a claim.

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

### 3.12  Limitations on the Doctrine of Equivalents – Prior Art

You may not find that a component in [the Defendant]'s [[product] [method]] is equivalent to an element of the patent claim if by doing so the patent claim would cover [[products] [methods]] that were already in the prior art.

*Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed. Cir. 1990).

### 3.13  Limitations on the Doctrine of Equivalents – Prosecution History Estoppel

You are instructed that the doctrine of equivalents is limited by what is called "prosecution history estoppel."  As you have already heard, during prosecution of the patent, the patent applicant often makes arguments and amendments in an attempt to convince the PTO examiner to grant the patent.  The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that was used to distinguish the invention during the prosecution of the patent.

In this case, you are instructed that prosecution history estoppel applies and the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:

[LIST ELEMENTS ON A CLAIM BY CLAIM BASIS]

Unless each of these elements is literally present within [the Defendant's] [[product] [method]], there can be no infringement of the claim.

[THE ABOVE INSTRUCTION ASSUMES PROSECUTION HISTORY ESTOPPEL APPLIES, THAT THE AMENDMENT WAS MADE FOR REASONS RELATED TO PATENTABILITY, AND THAT THE COURT HAS DETERMINED THAT THE PRESUMPTION OF SURRENDER OF EQUIVALENTS HAS NOT BEEN REBUTTED].

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 30-34 (1997); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc).

### 3.14  Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public

When a patent discloses subject matter but does not claim it, the patentee has dedicated that unclaimed subject matter to the public.  If you find that [the patent] discloses, but does not claim, subject matter alleged to be equivalent to an element of the patent claim, then you cannot find that the [[component] [step]] alleged to be equivalent in [the Defendant's] [[product] [method]] is equivalent to that element of the patent claim. This is true even if the failure to claim the subject matter was wholly unintentional.

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378-79 (Fed. Cir. 2005); *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326 (Fed. Cir. 2004); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002) (en banc).

### 4.  Summary of Invalidity Defense

[The Defendant] contends that the asserted claim[s] of the patent[s]-in-suit are invalid.  [The Defendant] must prove by clear and convincing evidence that each claim is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of [the Plaintiff's] claims is invalid.

[The Defendant] contends that all of the asserted patent claims are invalid for the following reasons:

[Insert invalidity contentions]

I will now instruct you in more detail why [the Defendant] alleges that the asserted claim[s] of the [abbreviated patent numbers] is/are invalid.

### 5.  Prior Art Defined

Prior art includes any of the following items received into evidence during trial:

1.      any [product] [method] that was publicly known or used by others in the United States before the patented invention was made;

2.      patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.      publications having a date more than one year before the filing date of the patent, or before the invention was made;

4.      any [product] [method] that was in public use or on sale in the United States more than one year before the patent was filed;

5.      any [product] [method] that was made by anyone before the named inventors created the patented [product] [method] where the [product] [method] was not abandoned, suppressed, or concealed.

[ADD ANY ADDITIONAL TYPES OF PRIOR ART]

In this case, [the Defendant] contends that the following items are prior art: [identify prior art by name]

35 U.S.C. § 102.

**Anticipation**

### 6.0 Anticipation

A person cannot obtain a patent if someone else already has made an identical invention.  Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, [the Defendant] must prove with clear and convincing evidence that the claimed invention is not new.

In this case, [the Defendant] contends that the claims of the [abbreviated patent number] patent are anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the _____ patent was described in the July, 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior [[publication] [patent] [etc.]], you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular [[publication] [patent] [etc.]].

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior [[publication] [invention] [etc.]], but also what inherently resulted from its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed  It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that [the Defendant] contends apply in this case. I will now instruct you about those.

*Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v.*

*Monsanto Co.,* 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988).

### 6.1  Prior Public Knowledge

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was publicly known by others in the United States before it was invented by the inventor(s).

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS:  "You are instructed that the invention defined by claim _____ of the [abbreviated patent number] patent was invented on [invention date]."]

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by [the patentee].

35 U.S.C. § 102(a); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

### 6.2  Prior Public Use

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim [was publicly used by others in the United States before it was invented by [the patentee]] [was publicly used in the United States more than one year before [the patentee] filed his patent application on [effective filing date]].

[IF THERE IS A FACTUAL ISSUE TO BE RESOLVED BY THE JURY AS TO THE DATE OF INVENTION OF THE PATENT CLAIMS IN SUIT, THE JURY SHOULD BE INSTRUCTED HERE AS TO HOW THEY SHOULD DETERMINE THAT DATE OF INVENTION.  OTHERWISE, THE COURT SHOULD INSTRUCT THE JURY AS FOLLOWS:  "You are instructed that the invention defined by claim _____ of the [abbreviated patent number] patent was invented on [invention date]."]

A patent claim is invalid if the invention defined in that claim [was publicly used by a person other than [the patentee] in the United States before it was invented by [the patentee]] [was publicly used by anyone in the United States more than one year before the effective filing date of [the patentee's] patent application].  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  The absence of affirmative steps to conceal is evidence of a public use.  However, secret use by a third party is not public.  If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

35 U.S.C. § 102(a), (b); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.,* 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith,* 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

### 6.3  On Sale Bar

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was on sale in the United States more than one year before [the patentee] filed his U.S. patent application on [U.S. filing date].

A patent claim is invalid if an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States; and (2) ready for patenting more than one year before the patent application date.

An invention was "on sale" if the claimed invention was embodied in the thing sold or commercially offered for sale. It is not required that a sale was actually made. The essential question is whether or not there was an attempt to obtain commercial benefit from the invention.

In order to be on sale, the invention must have been ready for patenting at the time of the alleged offer for sale is made.  An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention.  The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

35 U.S.C. § 102; *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-55 (Fed. Cir. 2002); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047-54 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-49 (Fed. Cir. 2001).

### 6.4  Experimental Use

[The Plaintiff] contends that _____ should not be considered [[a prior public use of the invention] [placing the invention on sale]] because that [[use] [sale]] was experimental. The law recognizes that the inventor must be given the opportunity to develop the invention through experimentation.  Certain activities are experimental if they are a legitimate effort to perfect the invention or to determine if the invention will work for its intended purpose.  So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it.  If you find that [the Defendant] has shown a [[prior

public use] [prior sale]] by clear and convincing evidence, then the burden is on [the Plaintiff] to come forward with evidence showing that the purpose of [the prior public use] [prior sale]] was experimental.

Only experimentation by or under the control of the inventor of the patent [or his assignee] qualifies for this exception. Experimentation by [third party], for its own purposes, does not. The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use, but a public use.

*City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-35 (1877); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353-55 (Fed. Cir. 2002); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071-72 (Fed. Cir. 1992); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549-51 (Fed. Cir. 1990); *U.S. Envtl. Prods. Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *In re Hamilton*, 882 F.2d 1576, 1580-83 (Fed. Cir. 1989); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535-37 (Fed. Cir. 1984); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984); *TP Labs., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 972-73 (Fed. Cir.), *cert. denied,* 469 U.S. 826 (1984); *DL Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1149-50 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983); *In re Theis*, 610 F.2d 786, 792-93 (C.C.P.A. 1979).

### 6.5  Printed Publication

[The Defendant] contends that claim_____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was described in a printed publication [more than one year before [[[the patentee] filed the U.S. patent application on [U.S. filing date]] [[the patentee] invented the invention]].

A patent claim is invalid if the invention defined by that claim was described in a printed publication [[before it was invented by [the patentee]] [more than one year prior to the filing date of the U.S. application]].

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as [[printed pages] [typewritten pages] [magnetic tape] [microfilm] [photographs] [photocopies]]. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one

of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art [[one year before the application for the [abbreviated patent number] patent was filed] [at the time the invention of the [abbreviated patent number] patent was made]], and you may consider evidence that sheds light on the knowledge such a person would have had.

35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984); *In re Wyer,* 655 F.2d 221, 227 (C.C.P.A. 1981); *In re Donohue,* 632 F.2d 123, 125-126 (C.C.P.A. 1980); *In re Samour,* 571 F.2d 559, 562 (C.C.P.A. 1978); *In re Coker,* 463 F.2d 1344, 1348 (C.C.P.A. 1972); *Deep Welding, Inc. v. Sciaky Bros., Inc.,* 417 F.2d 1227, 1235 (7th Cir. 1969); *In re Foster,* 343 F.2d 980, 984-985 (C.C.P.A. 1965).

### 6.6 Prior Invention[3]

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was invented by another person, [third party], before [the patentee] invented his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee[, and that other person did not abandon, suppress, or conceal the invention].

[The Defendant] must show by clear and convincing evidence *either* that before [the patentee] invented his invention, [third party] reduced to practice a [[product] [method]] that included all of the elements of claim ___ of the [abbreviated patent number] patent or that [third party] was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, [the Defendant] must show that [third party]'s device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

[If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the [abbreviated patent number] patent. However, it is not necessary that [the patentee] had knowledge of that prior invention.[4]

---

[3] In cases where priority of invention is an issue to be submitted to the jury, further instructions will be required. For example, the jury will need to consider not only the dates when the respective inventions were conceived, but also when the inventions were reduced to practice. An inventor who claims to be the first to conceive of a prior invention but was the last to reduce to practice must also show reasonable diligence from a time just before the other party entered the field until his own reduction to practice in order for the "prior invention" to anticipate the claimed invention in suit.

Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment if the prior inventor was engaged in reasonable efforts to bring the invention to market.]

35 U.S.C. § 102; *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035-40 (Fed. Cir. 2001); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1436-37 (Fed. Cir.1988); *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1444-46 (Fed. Cir. 1984).

### 6.7  Prior Patent

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was patented by [third party] [[before it was invented by [the patentee] [more than one year before [the patentee] filed his United States patent application on [U.S. filing date]]].

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country [[before it was invented by [the patentee]] [more than one year before [the patentee] filed his United States patent application]].

To show anticipation of the patented invention, [the Defendant] must show by clear and convincing evidence that before [critical date], [third party] patented an invention that included all of the elements of claim _____ of the [abbreviated patent number] patent.

35 U.S.C. § 102; *In re Monks,* 588 F.2d 308, 309 (C.C.P.A. 1978); *In re Fuge,* 272 F.2d 954, 956 (C.C.P.A. 1959); *In re Ekenstam,* 256 F.2d 321, 323-24 (C.C.P.A. 1958); *Bendix Corp. v. Balax, Inc.,* 421 F.2d 809, 811-12 (7th Cir. 1970).

### 6.8  Prior U.S. Application

[The Defendant] contends that claim _____ of the [abbreviated patent number] patent was anticipated because the invention defined in that claim was described in United States patent [anticipating patent number], and because the application for the [anticipating patent] was filed before [the patentee] made his invention.

A claim of the [abbreviated patent number] patent would be invalid if the invention defined by that claim was described in a United States patent issued on a patent application filed by another person before the invention was made by [the patentee].

---

[4] If abandonment, suppression or concealment are at issue in the case, these terms should be defined for the jury. *See Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n*, 54 F.3d 756, 761-62 (Fed. Cir. 1995); *Dow Chem. Co. v. Astro-Valcour Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001).

To show anticipation of the patented invention, [the Defendant] must show by clear and convincing evidence that the application for the [anticipating patent number] patent described each and every element of claim _____ of the [abbreviated patent number] patent and that the specification, claims, and/or drawings of the application for the [anticipating patent number] patent was filed before the date of invention of the [abbreviated patent number] patent.

35 U.S.C. § 102(e); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc*., 872 F.2d 978, 983-84 (Fed. Cir. 1989); *In re Wertheim*, 646 F.2d 527, 536-37 (C.C.P.A. 1981).


**Obviousness**

**7.0  Obviousness**

[The Defendant] contends that claim(s) [numbers] of the [abbreviated patent number] patent are invalid because the claimed invention(s) is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether [the Defendant] has established that the claimed inventions are obvious:

1.   the scope and content of the prior art relied upon by [the Defendant];

2.   the difference or differences, if any, between each claim of the [abbreviated patent number] patent that [the Defendant] contends is obvious and the prior art;

3.   the level of ordinary skill in the art at the time the invention of the [abbreviated patent number] patent was made; and

4.   additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

[The Defendant] must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

### 7.1  Scope and Content of the Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  The prior art includes the following items received into evidence during the trial:

[LIST PRIOR ART STIPULATED TO BY THE PARTIES].

[IF PARTIES DISPUTE THE PRIOR ART, USE THE FOLLOWING]. You must determine what is the prior art that may be considered in determining whether the [abbreviated patent number] patent is obvious.  A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problem(s) faced by the inventor(s).

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

[ADD INSTRUCTIONS ON PRIOR ART CONTENTIONS, E.G., PUBLICATION AND ON-SALE BAR]

### 7.2  Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and

creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

### 7.3  Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the [pertinent art field].  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

[IF THE PARTIES HAVE AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD INCLUDE: "[The Plaintiff] and [the Defendant] contend that the level of ordinary skill in the art is [insert proposal]."

[IF THE PARTIES HAVE NOT AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD CONTINUE AS FOLLOWS].

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

- the types of problems encountered in the art at the time of the invention; and

- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

### 7.4  Factors Indicating Nonobviousness

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

[USE ONLY THOSE INSTRUCTIONS THAT ARE APPROPRIATE.]

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or [the Defendant] praise the claimed invention or express surprise at the making of the claimed invention?

      7.     Did others accept licenses under [abbreviated patent number] patent because of the merits of the claimed invention?

     Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

*Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *United States v. Adams,* 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

## 8.  Enablement

     The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

     A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation. In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. [The defendant] bears the burden of establishing lack of enablement by clear and convincing evidence.

     [The defendant] contends that claim[s] ____ of the [abbreviated patent number] patent [is][are] invalid for lack of enablement. The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.,* 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer- Daniels-Midland Co*., 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc*., 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*,

858 F.2d 731, 737 (Fed. Cir. 1988); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir.), *cert. denied*, 484 U.S. 954 (1987); *Hybritech Inc. v. Monolonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987); *Ralston Purina Co. v. Far-Mar Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985); *Lindmann Maschinenfabrik GMBH v. American Hoist & Derrick Co*., 730 F.2d 1452, 1463 (Fed. Cir. 1984); *White Consolidated Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983).

### 9.  Written Description Requirement

A patent must contain a written description of the [product or process] claimed in the patent.  The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter.  To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.

The [Defendant] contends that the claim[s] of the [abbreviated patent number] patent [is] [are] invalid for failure to satisfy the written description requirement.  [The defendant] bears the burden of establishing lack of written description by clear and convincing evidence.

If you find that [the defendant] has proved that it is highly probable that the [abbreviated patent number] patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

35 U.S.C. § 112; *Falko-Gunter Faulkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co.*, Inc., 358 F.3d 916, 922-928 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002) (en banc); *Turbocare Div. of Demag Delaval Turbomachinery Corp., v. General Elect. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323-24 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the University of California v. Eli Lilly and Co.,* 119 F.3d 1559, 1566-67 (Fed. Cir. 1997); *Vas-Cath., Inc. v. Mahurkar*, 935 F.2d 1555, 1565-66 (Fed. Cir. 1991); *In re Ruschig,* 379 F. 2d 990, 995 (C.C.P.A. 1967).

### 10. Best Mode

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure on how to practice the invention claimed in the patent. The inventor must disclose the best mode he or she knew at the time of filing for carrying out the invention as described in the claims. If an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was filed, then the written description must contain a description of that mode.

[The Defendant] has asserted that [the Plaintiff]'s patent is invalid for failure to satisfy the best mode requirement. [The Defendant] bears the burden of establishing failure to satisfy the best mode requirement by clear and convincing evidence.

To determine whether the inventor complied with the best mode requirements, two questions must be answered:

1.　　At the time the patent application was filed, did [the patentee] consider a particular mode for practicing his invention superior to all other modes?

2.　　If so, did [the patentee] adequately disclose the superior mode in the [abbreviated patent number] patent?

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the application was filed. The first question is subjective.

For instance, a selection made for commercial expediency (such as the availability of certain materials, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode of carrying out the invention. If the inventor contemplated a best mode before he filed the patent application and left it out of the application, an amendment after the filing will not cure an original omission of the best mode disclosure.

The one exception to the best mode requirement is that an inventor need not set forth "routine details" that would be apparent to one skilled in the art.

If the answer to the first question is "yes," the second question of the analysis should be addressed. The second question, an objective inquiry, focuses on the scope of the patented invention and the level of skill in the field of the invention. The disclosure in the specification must be adequate to allow one of ordinary skill in the art to make and use the best mode of the invention. Those skilled in the field of the invention should not have to look to the commercial embodiment in order to practice the best mode.

35 U.S.C. § 112, ¶1; *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1314-1319 (Fed. Cir.

2002); *Mentor H/S, Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001); *Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 963 (Fed. Cir. 2001); *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.,* 215 F.3d 1281, 1286 (Fed. Cir. 2000); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1581 (Fed. Cir. 1996); *U.S. Gypsum Co. v. Nat'l Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558 (Fed. Cir. 1994); *Shearing v. Iolab Corp.,* 975 F.2d 1541, 1545-46 (Fed. Cir. 1992); *Wahl Instruments, Inc. v. Acvious, Inc.,* 950 F.2d 1575, 1581 (Fed. Cir. 1991); *Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1209-10 (Fed. Cir. 1991); *Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 927-28 (Fed. Cir. 1990); *Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1535-36 (Fed. Cir. 1987); *DeGeorge v. Bernier,* 768 F.2d 1318, 1324-25 (Fed. Cir. 1985); *Application of Gay,* 309 F.2d 769, 772 (C.C.P.A. 1962).

[THIS INSTRUCTION WILL NEED TO BE MODIFIED IF A DIVISIONAL OR CONTINUATION-IN-PART APPLICATION IS INVOLVED TO EXPLAIN THAT THE BEST MODE MUST BE DESCRIBED IN A DIVISIONAL OR CONTINUATION-IN-PART APPLICATION].

*Glaxo Inc. v. Novopharm Ltd.,* 52 F.3d 1043, 1049 (Fed. Cir. 1995); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558 (Fed. Cir. 1994); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531-32 (Fed. Cir.1991); *Dana Corp. v. IPC Ltd. Partnership, 860* F.2d 415, 418-19 (Fed. Cir. 1988); *In re Bundy,* 642 F.2d 430, 435 (C.C.P.A. 1981); *In re Sherwood,* 613 F.2d 809 (C.C.P.A. 1980); *In re Hay,* 534 F.2d 917 (C.C.P.A. 1976).

### Unenforceability (Inequitable Conduct)

[INTRODUCTORY NOTE:  "Inequitable conduct is an equitable issue committed to the discretion of the trial court and reviewed by [the Federal Circuit] under an abuse of discretion standard."  *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed. Cir. 2006). That discretion includes the determination to seek an advisory determination on the factual predicates underlying inequitable conduct or on the issue as a whole.  The court should consider whether to charge the jury in detail, to charge the jury solely on materiality, or to retain the issue solely for itself, and should consider using a verdict form that breaks out materiality, intent, and/or balancing.]

### 11.0  Inequitable Conduct – Generally

[The Defendant] contends that [the Plaintiff] may not enforce the [abbreviated patent number] patent against [the Defendant] because [the Plaintiff] engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the [abbreviated patent number] patent.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty.  This duty of candor and

good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application.  An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

[In this case, [the Defendant] asserts that [DESCRIBE BRIEFLY EACH BASIS FOR [THE DEFENDANT]'S UNENFORCEABILITY DEFENSE].]

[The Defendant] must prove inequitable conduct by clear and convincing evidence. To determine whether the [abbreviated patent number] patent was obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

*Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363-64 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *Purdue Pharma L.P. v. Endo Pharm., Inc.,* 438 F.3d 1123, 1128 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

## 11.1  Materiality

[Defendant] contends that _____ was information known to a person with this duty of good faith and candor that was [withheld from] [or] [misrepresented to]] [or] [falsely submitted to] the Patent and Trademark Office during the prosecution of the [abbreviated patent number] patent.  If you find that a person with this duty of good faith and candor [[withheld] [or] [misrepresented]] [or] [submitted false] information when applying for the [abbreviated patent number] patent, you must determine whether that information was material information.

Information is material if it establishes, either alone or in combination with other information that a claim of the patent application would more likely than not meet one of the requirements for a patent.[5]  Information is also material if it refutes or is inconsistent with the information provided to the Patent and Trademark Office or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to

---

[5]  The standard for determining materiality as articulated by the PTO rules changed on January 17, 1992 (effective March 16, 1992).  Under the pre-1992 standard, information is material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent. The Federal Circuit has held that information may be considered "material" under both the 1992 version of 37 CFR 1.56 as well as the pre-1992 standard.  *See, e.g., Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314-16 (Fed. Cir. 2006).

patent protection.  Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

37 C.F.R. § 1.56(b); *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1129 n. 6 (Fed. Cir. 2006); *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314-16 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1364 (Fed. Cir. 2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1320 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 n.3 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997).

### 11.2  Intent to Deceive or Mislead

If you determine that material information was [withheld from] [or] [misrepresented to] [or] [falsely submitted to] the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office.  Intent to deceive the Patent and Trademark Office may be found from direct evidence.  Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

[When a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be that to deceive the Patent and Trademark Office, an inference that the patentee intended to deceive may be appropriate.]  [Simple negligence is insufficient for a holding of inequitable conduct.]

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

*Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F. 3d 1359, 1364 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1137-38 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.,* 438 F. 3d 1123, 1133-34 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239-40 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319-20 (Fed. Cir. 2000); *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1374-76 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-57 (Fed. Cir. 1997); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180-82 (Fed. Cir. 1995); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992).

### 11.3  Balancing of Materiality and Intent

If [the Defendant] has proven by clear and convincing evidence that information was [withheld] [or] [misrepresented] [or] [falsely submitted] by a person with the duty of

good faith and candor, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the [abbreviated patent number] patent. Where the materiality of the [withheld] [or] [misrepresented] [or] [false] information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F. 3d 1359, 1364 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1133-35 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239-41 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

**Damages**

**12.0  Damages – Generally**

If you find that the accused [[device] [method]] infringes any of the claims of the [abbreviated patent number] patent, and that those claims are not invalid, you must determine the amount of damages to be awarded [the Plaintiff] for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate [the Plaintiff] for the infringement.  Your damage award should put [the Plaintiff] in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

[The Plaintiff] must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of [the Plaintiff].

35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002);

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

## 12.1  Date Damages Begin

### (*Alternate A*)

[WHEN THE DATE OF THE NOTICE OF INFRINGEMENT IS STIPULATED]**:**

The date that [the Plaintiff] first gave notice to [the Defendant] of its claim of patent infringement is the date at which patent damages begin to be calculated. That date has been agreed to by the parties to be [infringement notice date].

### (*Alternate B*)

[WHEN THE DATE OF THE NOTICE OF INFRINGEMENT IS DISPUTED – Product claims]**:**

The date that [the Plaintiff] first gave notice to [the Defendant] of its claim of patent infringement is the date at which patent damages begin to be calculated. That date is in dispute here, and it is up to you to determine what that date is. [The Plaintiff] must prove by a preponderance of the evidence the date it gave notice.

[The Plaintiff] can give notice in two ways. The first way is to give notice to the public in general. [The Plaintiff] can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patent invention. [Licensees of the [abbreviated patent number] patent who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.] This type of notice is effective from the date [the Plaintiff] [and its licensees] began to mark substantially all of their products that use the patented invention with the patent number. If [the Plaintiff] [and its licensees] did not mark substantially all of their products that use the patented invention with the patent number, then [the Plaintiff] did not provide notice in this way.

A second way [the Plaintiff] can provide notice of its patent[s] is to communicate to [the Defendant] a specific charge that the [allegedly infringing product] infringed the [abbreviated patent number] patent. This type of notice is effective from the time it is given. If you find that [the Plaintiff], before filing this

lawsuit, did not properly mark its products and did not notify [the Defendant] by communicating a specific charge that the [allegedly infringing product] infringed, then [the Plaintiff] can only recover damages for infringement that occurred after it sued [the Defendant] on [lawsuit filing date].

[IF THERE IS AN ISSUE OF FACT AS TO THE ADEQUACY OF THE PATENTEE'S MARKING, ADDITIONAL INSTRUCTIONS WILL BE REQUIRED].

*(Alternate C)*

[WHEN THE DATE DAMAGES BEGIN IS THE DATE THE LAWSUIT WAS FILED]**:**

The date that damages begin to be calculated in this case is the date this lawsuit was filed, which is [date complaint was filed].

35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987).

### 12.2  Two Types of Damages – Lost Profits and Reasonable Royalty

There are two types of damages for patent infringement. The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.  The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

### 12.3  Lost Profits – "But-For" Test

[The Plaintiff] is seeking its lost profits as its patent damages.

[The Plaintiff] must prove the amount of its lost profits. To recover lost profits for some or all of the infringing sales, [the Plaintiff] must show by a preponderance of evidence that, but for the infringement, [the Plaintiff] would have made profits.  The lost profits may be profits that would have resulted from Plaintiff's sales or a portion of them that [the Defendant] made of [allegedly infringing product]. Thus, part of your job is to determine what the customers who purchased the [allegedly infringing product] [from the Defendant] would have done if the [alleged] infringement had not occurred.  The profits I

have been referring to are the profits allegedly lost by [the Plaintiff], not the profits, if any, made by [the Defendant].

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-1125 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.* 745 F.2d 11, 21 (Fed. Cir. 1984); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1365 (Fed. Cir. 1984); *Central Soya Co. v. Geo A Hormel & Co.,* 723 F.2d 1573, 1578-79 (Fed. Cir. 1983).

### 12.4  Lost Profits – Panduit Factors

You may infer that [the Plaintiff] has proven its lost profits if you find that [the Plaintiff] has proven each of the following factors by a preponderance of the evidence:

      1.     the demand for the patented [[product] [method]],

      2.     absence of acceptable non-infringing substitutes,

      3.     that [the Plaintiff] had the manufacturing and marketing capacity to make the infringing sales [or a portion thereof] actually made by [the Defendant], and

      4.     the amount of profit that [the Plaintiff] would have made but for [the Defendant]'s sales.

I will now explain each of these factors.

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

### 12.5  Lost Profits – Panduit Factors – Demand

Demand for the patented product can be proven by significant sales of [the Plaintiff]'s patented product. Demand for the patented product can also be proven by significant sales of [the Defendant's] product containing the patented features.  However,

if you find that [the Defendant] generated new or different markets by sales or marketing efforts because of features other than those claimed by [the Plaintiff], the sales of [the Defendant's] product cannot establish a demand for the patented product.

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984).

### 12.6  Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes

In order to be an acceptable substitute, the product must have one or more of the advantages of the patented invention that were important to customers.  If, however, the realities of the marketplace are that competitors other than [the Plaintiff] would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then [the Plaintiff] is not entitled to lost profits on those sales. An acceptable non-infringing substitute must be a product that does not infringe the patent. A product does not infringe a patent when it either (a) is sold based on a license under that patent or (b) does not include all the features required by the patent.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or [the Defendant] had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing sales at the time those infringing sales were made.  If you determine that [the Defendant]'s customers would just as likely have purchased a non-infringing acceptable product, then [the Plaintiff] has not shown it lost that sale but for [Defendant]'s sales

In order to assess whether there is an absence of acceptable non-infringing substitutes, you must consider whether non-infringing substitutes existed that were acceptable to the *specific* purchasers of the infringing products, not "purchasers" generally. The test is whether purchasers of [the Defendant]'s product were motivated to make their purchase by features of [the Defendant]'s product that were attributable to the claimed invention.  If so, non-infringing products without those features would not be "acceptable non-infringing substitutes," even if they otherwise competed in the marketplace with the patented and [the Defendant]'s products.

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.,* 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901-902 (Fed. Cir. 1986).

### 12.7  Lost Profits – Panduit Factors – Capacity

[The Plaintiff] is only entitled to lost profits for sales it could have actually made. You should consider whether [the Plaintiff] has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.  [The Plaintiff] must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement.  [The Plaintiff] also must prove that it had the capability to market and sell the additional patented products.

*Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554 (Fed. Cir. 1984).

### 12.8  Lost Profits – Panduit Factors – Amount of Profit Incremental Income Approach

[The Plaintiff] may calculate its lost profits on lost sales by computing the lost revenue for its patented product and subtracting from that figure the amount of additional costs or expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc.  Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale.  These are called fixed costs.  Any costs, which do not vary with increased production or scale, should not be subtracted from the lost revenue when determining damages. Thus, in determining [the Plaintiff's] lost profits, you are not to subtract from its lost revenue the amount of any fixed costs.  The amount of lost profits cannot be speculative but it need not be proved with unerring certainty.

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari,* 767 F.2d 853, 863-864 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554-555 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 12.9  Lost Profits – Market Share

It is not necessary for [the Plaintiff] to prove that [the Plaintiff] and [the Defendant] were the only two suppliers in the market for [the Plaintiff] to demonstrate

entitlement to lost profits. If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by [the Defendant], then [the Plaintiff] may be entitled to lost profits on a portion of the infringing sales.  The burden is on [the Plaintiff], however, to show to a reasonable probability that it would have sold that portion if [the Defendant]'s product had never existed.  By the same token, even if you find that [the Plaintiff] and [the Defendant] were the only two suppliers of products having the advantages of the patented product, it does not necessarily mean that [the Plaintiff] would have made all [the Defendant]'s sales.  The burden is on [the Plaintiff] to show that its product competed in the same market with the [the Defendant]'s product and that it would have made those sales if the infringement had not occurred.

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

## 12.10  Lost Profits – Price Erosion

[The Plaintiff] is entitled to recover additional damages if it can show to a reasonable probability that, if there had been no infringement, [the Plaintiff] [[would have been able to charge higher prices for its patented products] [would not have had to lower its prices]].  In that case, you may also award as additional damages the amount represented by the difference between the amount of profits that [the Plaintiff] would have made by selling its product at the higher price and the amount of profits [the Plaintiff] actually made by selling its product at the lower price that [the Plaintiff] actually charged for its patented product.  This type of damage is referred to as price erosion damage. If you find that [the Plaintiff] suffered price erosion damages, you may also use the higher price in determining [the Plaintiff]'s lost profits from sales lost because of the infringement.  In calculating [the Plaintiff]'s total losses from price erosion, you must take into account any decrease in sales that might have occurred if [the Plaintiff] charged a higher price than it did.  This is called price elasticity. In order to award lost profits based on price erosion, it is not required that [the Plaintiff] knew that the competing product infringed the patent, if [the Plaintiff] reduced its price to meet [the Defendant]'s competition.

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-1379 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minn. Mining & Mfg. Co.  v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-1579 (Fed. Cir. 1992); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

## 12.11  Lost Profits – Cost Escalation

[The Plaintiff] can recover additional damages if it can show that it also lost profits because its costs – such as additional marketing costs – went up as a result of [the

Defendant]'s actions.  [The Plaintiff] must prove that it was more probable than not that its costs went up because of [the Defendant]'s actions, and not for some other reason.

*Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-1325 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1120 (Fed. Cir. 1996).

### 12.12  Lost Profits – Collateral Sales

In this case, [the Plaintiff] contends that the patented product is ordinarily sold along with [collateral products].  To recover lost profits on sales of such collateral products, [the Plaintiff] must prove two things.  First, that it is more likely than not that [the Plaintiff] would have sold the collateral products but for the infringement.  Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit.  Damages for lost profits on lost collateral sales, if any, are calculated in the same manner as I just described for calculating lost profits on the patented product.

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984).

### 12.13  Lost Profits – Doubts Resolved Against Infringer

All doubts resulting from [the Defendant]'s failure to keep proper records are to be resolved in favor of [the Plaintiff].  Any incorrectness or confusion in [the Defendant]'s records should be held against [the Defendant], not [the Plaintiff].

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 12.14  Reasonable Royalty - Generally

If you find that [the Plaintiff] has not proven its claim for lost profits, or if you find that [the Plaintiff] has proven its claim for lost profits for only a portion of the infringing sales, you must then determine what a reasonable royalty would be for that portion of [the Plaintiff]'s sales for which you have not awarded lost profit damages. The patent law specifically provides that the amount of damages that [the Defendant] must pay [the Plaintiff] for infringing [the Plaintiff]'s patent may not be less than a reasonable royalty for the use that [the Defendant] made of [the Plaintiff]'s invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. [The Plaintiff] is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits damages.

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

### 12.15  Reasonable Royalty – Definition

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a [[person] [company]] in the position of [the Defendant] taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971).

### 12.16  Reasonable Royalty – Relevant Factors

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.   Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.   The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.

3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.   The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.   The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.      The duration of the [abbreviated patent number] patent and the term of the license.

8.      The established profitability of the product made under the [abbreviated patent number] patent; its commercial success; and its current popularity.

9.      The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.     The extent to which [the Defendant] has made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as [the Defendant]) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-

81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom*., *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971).

### 12.17   Reasonable Royalty – Timing

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by [the Defendant] after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

*Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir 2004); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

### 13.   Willful Infringement

[The following instruction should be given only if the patent owner contends willful infringement]

If you find by a preponderance of the evidence that [the Defendant] infringed [the Plaintiff]'s patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.      [The Defendant] was aware of [the Plaintiff]'s patent,

2.      [The Defendant] acted despite an objectively high likelihood that its actions infringed a valid patent, and

3.      This objectively high likelihood of infringement was either known or so obvious that it should have been known to [the Defendant].

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether [the Defendant] intentionally copied the claimed invention or a product covered by [the Plaintiff]'s patent, [whether [the

Defendant] relied on competent legal advice[6],] and whether [the Defendant] presented a substantial defense to infringement, including the defense that the patent is invalid [or unenforceable].

*In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

---

[6] This factor, "whether the Defendant relied on competent legal advice," should only be included if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement.  "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel."  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

# Acknowledgments

The contributions of the following attorneys to the drafting and commenting on of these model jury instructions are gratefully acknowledged.

The 1997 Version

| | | |
|---|---|---|
| Mark Abate | Roy E. Hofer | John B. Pegram |
| Ken R. Adams | Michael K. Kirschner | Michael F. Petock |
| Joseph Z. Allen | Steven S. Korniczky | Peter H. Priest |
| Robert L. Baechtold | William E. Lahey | Jerrold B. Reilly |
| Russell J. Barron | Bradley G. Lane | Daniel M. Riess |
| Christopher R. Benson | Robert C. Laurenson | William C. Rooklidge |
| David J. Brezner | Gary H. Levin | Alan J. Ross |
| Henry L. Brinks | Jeffrey I.D. Lewis | John M. Skenyon |
| Jeffrey N. Costakos | Brent P. Lorimer | Allan Sternstein |
| John F. Delaney | Don W. Martens | Lawrence M. Sung |
| Bradford J. Duft | Alice O. Martin | Jennifer A. Tegfeldt |
| Donald R. Dunner | Clifton E. McCann | David C. Wright |
| Richard D. Fladung | Gaynell C. Methvin | |
| Floyd A. Gibson | Frederick G. Michaud, Jr. | |
| Eileen M. Herlihy | Jeffrey D. Mills | |

The 2005 version

| | | |
|---|---|---|
| Kley Achterhof | Rashida MacMurray | Aaron Weiss |
| Stephanie Barbosa | Steven Maslowski | Elizabeth Wright |
| Kelli Deasy | William McGeveran | Jeremy Younkin |
| Denise DeFranco | George Medlock | |
| Barbara Fiacco | Mary Beth Noonan | |
| Katherine Fick | Matthew Pearson | |
| Mareesa Frederick | Mark Schuman | |
| Stephanie Harris | Steve Sheldon | |
| Wendell Harris | Sean Seymour | |
| Andrew Lagatta | John Skenyon | |
| Christy Lea | Stephen Timmins | |
| Kalun Lee | Hema Viswanathan | |

<u>The 2007 version</u>

| | | |
|---|---|---|
| Aaron Barlow | Joshua Masur | John Schneider |
| Dave Bennett | Clifton McCann | Mark Schuman |
| Elaine Hermann Blais | Tim Meece | Jeff Sheldon |
| Walter Bookhardt | Heather Mewes | John Skenyon |
| Scott Breedlove | Joe Miller | Steve Swinton |
| Patrick Coyne | Kenneth Mitchell | Tim Teter |
| John Crossan | John Moran | Kurt Van Thomme |
| Elizabeth Day | Jeff Nichols | David Todd |
| Conor Farley | Scott Pivnick | Michael Valek |
| John Hintz | Mirriam Quinn | Alastair Warr |
| Scott Howard | Amber Rovner | Adam Wichman |
| Kirby Lee | Michael Sacksteder | Daniel Winston |
| Gregory Lyons | John Scheibeler | Steven Zeller |

# EXHIBIT C

**THE FEDERAL CIRCUIT BAR ASSOCIATION**

**MODEL PATENT JURY INSTRUCTIONS**

Last Edited:  November 12, 2009
© Federal Circuit Bar Association 2009

**Acknowledgement**

The Association thanks the Patent Litigation Committee and in particular the Jury Instruction Subcommittee for their efforts in creating these Model Patent Jury Instructions.

## TABLE OF CONTENTS

Preliminary Instructions.................................................................................................1

      A.1    Preliminary Instructions.................................................................................2

WHAT A PATENT IS AND HOW ONE IS OBTAINED .................................................2

      A.2    Preliminary Instructions.................................................................................5

SUMMARY OF CONTENTIONS ....................................................................................5

      A.3    Preliminary Instructions.................................................................................7

PATENT AT ISSUE ........................................................................................................7

      A.4    Preliminary Instructions.................................................................................8

OVERVIEW OF APPLICABLE LAW .............................................................................8

      A.5    Preliminary Instructions...............................................................................11

OUTLINE OF TRIAL ...................................................................................................11

Instructions at the Close of Evidence............................................................................14

      B.1    Summary of Contentions.............................................................................15

SUMMARY OF CONTENTIONS ..................................................................................15

      B.2    Claim Construction .....................................................................................16

2.1    THE ROLE OF THE CLAIMS OF A PATENT .............................................16

      B.2    Claim Construction .....................................................................................17

2.2    HOW A CLAIM DEFINES WHAT IT COVERS .........................................17

      B.2    Claim Construction .....................................................................................19

2.2a    INDEPENDENT AND DEPENDENT CLAIMS .........................................19

      B.2    Claim Construction .....................................................................................20

2.3    CLAIM INTERPRETATION .........................................................................20

      B.2    Claim Construction .....................................................................................21

i

2.3a    SECTION 112, PARAGRAPH 6 ......................................................................21

      B.3    Infringement..................................................................................................23

3.1     INFRINGEMENT GENERALLY..................................................................23

      B.3    Infringement..................................................................................................25

3.1a    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" .................25

      B.3    Infringement..................................................................................................27

3.1b    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF SECTION 112, PARAGRAPH 6 CLAIM REQUIREMENTS.............................................27

      B.3    Infringement..................................................................................................30

3.1c    DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"...........30

      B.3    Infringement..................................................................................................32

3.1d    LIMITATIONS ON DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"...........................................................................................32

      B.3    Infringement..................................................................................................36

3.2     INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT...........................36

      B.3    Infringement..................................................................................................38

3.3     INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT.......38

      B.3    Infringement..................................................................................................40

3.4     INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD......................................40

      B.3    Infringement..................................................................................................42

3.5     INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR IMPORTATION OF A PRODUCT MADE OUTSIDE THE UNITED STATES BY PATENTED PROCESS ......................................................................................................42

      B.3    Infringement..................................................................................................43

3.7     DIRECT INFRINGEMENT: MULTIPLE ALLEGED INFRINGERS OR SOME ACTIONS CONDUCTED OUTSIDE THE UNITED STATES .....................43

      B.3.    Infringement.................................................................................................45

3.8    WILLFUL INFRINGEMENT ............................................................................45

        B.4    Validity ...........................................................................................47

4.1    INVALIDITY—BURDEN OF PROOF ...........................................................47

        B.4.2  Validity—Adequacy of Patent Specification ...........................................48

4.2a   WRITTEN DESCRIPTION REQUIREMENT .................................................48

        B.4.2  Validity—Adequacy of Patent Specification ...........................................50

4.2b   ENABLEMENT ..........................................................................................50

        B.4.2  Validity—Adequacy of Patent Specification ...........................................52

4.2c   BEST MODE .............................................................................................52

        B.4.3  Validity—The Claims ...........................................................................54

4.3a   PRIOR ART ...............................................................................................54

        B.4.3  Validity—The Claims ...........................................................................56

4.3b   ANTICIPATION .........................................................................................56

        B.4.3  Validity—The Claims ...........................................................................59

4.3c   OBVIOUSNESS .........................................................................................59

        B.4.3  Validity—The Claims ...........................................................................62

4.3c(i) LEVEL OF ORDINARY SKILL .................................................................62

4.3c(ii)SCOPE AND CONTENT OF THE PRIOR ART ...........................................62

        B.4.3  Validity—The Claims ...........................................................................64

4.3d   INVENTORSHIP ........................................................................................64

        B.5    Equitable Defenses.............................................................................66

5.1    INEQUITABLE CONDUCT..........................................................................66

5.2    LACHES ....................................................................................................70

        B.5    Equitable Defenses.............................................................................73

5.3    EQUITABLE ESTOPPEL..............................................................................73

B.5     Equitable Defenses ......................................................................75

5.4     PROSECUTION LACHES ................................................................75

B.5     Equitable Defenses ......................................................................77

5.5     UNCLEAN HANDS ...........................................................................77

B.6     Patent Damages ...........................................................................78

6.1     DAMAGES—INTRODUCTION ........................................................78

B.6     Patent Damages ...........................................................................80

6.2     LOST PROFITS—"BUT FOR" TEST ..............................................80

LOST PROFITS—DEMAND ........................................................................81

LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY .........................81

LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY ............................82

LOST PROFITS—CAPACITY .......................................................................83

LOST PROFITS—AMOUNT OF PROFIT ......................................................83

LOST PROFITS—MARKET SHARE ...............................................................84

B.6     Patent Damages ...........................................................................85

6.3     LOST PROFITS—COLLATERAL SALES ........................................85

B.6     Patent Damages ...........................................................................86

6.4     LOST PROFITS—PRICE EROSION ...............................................86

B.6     Patent Damages ...........................................................................88

6.5     REASONABLE ROYALTY—ENTITLEMENT ..................................88

B.6     Patent Damages ...........................................................................89

6.6     REASONABLE ROYALTY—DEFINITION ......................................89

B.6     Patent Damages ...........................................................................90

6.7     REASONABLE ROYALTY—RELEVANT FACTORS ......................90

B.6     Patent Damages ...........................................................................92

iv

6.8     DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS....................................92

        C.     Appendix...........................................................................................................94

GLOSSARY ........................................................................................................................94

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992)................................................................72, 74

*Abbott Laboratories v. Geneva Pharmaceuticals, Inc.*,
  182 F.3d 1315 (Fed. Cir. 1999)........................................................................58

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
  228 F.3d 1338 (Fed. Cir. 2000)..................................................................42, 51

*AK Steel Corp. v. Sollac & Ugine*,
  344 F.3d 1234 (Fed. Cir. 2003)..................................................................18, 51

*Al-Site Corp. v. VSI International Inc.*,
  174 F.3d 1308 (Fed. Cir. 1999)..................................................22, 29, 31, 35

*Alloc, Inc. v. International Trade Commission*,
  342 F.3d 1361 (Fed. Cir. 2003)........................................................................38

*Allvoice Computing PLC v. Nuance Communications, Inc.*,
  504 F.3d 1236 (Fed. Cir. 2007)..................................................................22, 28

*American Medical Systems v. Medical Engineering Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993)............................................................................93

*American Seating Co. v. USSC Group*,
  514 F.3d 1262 (Fed. Cir. 2008)........................................................................82

*American Stock Exchange, LLC v. Mopex, Inc.*,
  250 F. Supp. 2d 323 (S.D.N.Y. 2003)..............................................................57

*Apotex U.S.A., Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001)........................................................................57

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006)..................................................................22, 28

*Aptix Corp. v. Quickturn Design Systems, Inc.*,
  269 F.3d 1369 (Fed. Cir. 2001)........................................................................77

*Ariad v. Lilly*,
  Appeal No. 2008-1248 (Fed. Cir. appeal reinstated Aug. 29, 2009) ..................9, 48

vi

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
 377 U.S. 476 (1964)..................................................................................38, 81

*Automotive Technologies International, Inc. v. BMW of North America, Inc.*,
 501 F.3d 1274 (Fed. Cir. 2007)....................................................................51

*Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*,
 499 F.3d 1293 (Fed. Cir. 2007)....................................................................63

*Bayer AG v. Housey Pharmaceuticals, Inc.*,
 340 F.3d 1367 (Fed. Cir. 2003)....................................................................42

*Bayer AG v. Schein Pharmaceuticals, Inc.*,
 301 F.3d 1306 (Fed. Cir. 2002)....................................................................53

*BIC Leisure Products, Inc. v. Windsurfing International, Inc.*,
 1 F.3d 1214 (Fed. Cir. 1993)............................................................81, 84, 87

*Bruning v. Hirose*,
 161 F.3d 681 (Fed. Cir. 1998)......................................................................53

*Buildex, Inc. v. Kason Industries, Inc.*,
 849 F.2d 1461 (Fed. Cir. 1988)....................................................................47

*Burroughs Wellcome Co. v. Barr Laboratories, Inc.*,
 40 F.3d 1223 (Fed. Cir. 1994)......................................................................65

*Cardiac Pacemakers, Inc. v. St. Jude Medical*,
 Appeal Nos. 07-1296, -1347 (Fed. Cir. 2009) ............................................41

*Carella v. Starlight Archery*,
 804 F.2d 135 (Fed. Cir. 1986)......................................................................81

*Chemcast Corp. v. Arco Industries Corp.*,
 913 F.2d 923 (Fed. Cir. 1990)......................................................................53

*Chiron Corp. v. Genentech, Inc.*,
 363 F.3d 1247 (Fed. Cir. 2004)....................................................................49

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*,
 145 F.3d 1303 (Fed. Cir. 1998)..............................................................22, 29

*CIAS, Inc. v. Alliance Gaming Corp.*,
 504 F.3d 1356 (Fed. Cir. 2007)....................................................................18

*Commonwealth Scientific & Industrial Research Organisation v. Buffalo Technology
 (USA), Inc.*,
 542 F.3d 1363 (Fed. Cir. 2008)....................................................................63

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006)..................................................................18

*Cook Biotech Inc. v. ACell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006)..................................................................18

*Cordis Corp. v. Medtronic Ave., Inc.*,
511 F.3d 1157 (Fed. Cir. 2008)..................................................................63

*Cross Medical Products v. Medtronic Sofamor Danek*,
424 F.3d 1293 (Fed. Cir. 2005)........................................................25, 28, 44

*Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*,
304 U.S. 159 (1938)..................................................................................76

*Crystal Semiconductor Corp. v. Tritech Microelectronics International, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001).......................................................... passim

*Cybor Corp. v. FAS Technologies*,
138 F.3d 1448 (Fed. Cir. 1998)..................................................................20

*D.L. Auld Co. v. Chroma Graphics Corp.*,
714 F.2d 1144 (Fed. Cir. 1983)..................................................................58

*Daiichi Sankyo Co. v. Apotex, Inc.*,
501 F.3d 1254 (Fed. Cir. 2007)..................................................................63

*Dayco Products, Inc. v. Total Containment, Inc.*,
329 F.3d 1358 (Fed. Cir. 2003)..................................................................69

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009)..................................................................81

*Devices for Medicine, Inc. v. Boehl*,
822 F.2d 1062 (Fed. Cir. 1987)..................................................................93

*Digital Control Inc. v. Charles Machine Works*,
437 F.3d 1309 (Fed. Cir. 2006)..................................................................69

*Dippin' Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007)..................................................................63

*Dolly, Inc. v. Spalding & Evenflo Cos.*,
16 F.3d 394 (Fed. Cir. 1994)......................................................................31

*Dow Chemical Co. v. Mee Industries, Inc.*,
341 F.3d 1370 (Fed. Cir. 2003)..................................................................79

*DSU Medical Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)............................................................36

*Ecolochem, Inc. v. Southern California Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000)............................................................57

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)............................................................65

*Ericsson, Inc. v. Harris Corp.*,
    352 F.3d 1369 (Fed. Cir. 2003)........................................................81, 87

*Esai Co. v. Dr. Reddy's Laboratories Ltd.*,
    533 F.3d 1353 (Fed. Cir. 2008)............................................................63

*Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega
    Systems, LLC*,
    350 F.3d 1327 (Fed. Cir. 2003)............................................................37

*Ferring B.V. v. Barr Laboratories, Inc.*,
    437 F.3d 1181 (Fed. Cir. 2006)............................................................69

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003)............................................................35

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)............................................................................31

*Finnigan Corp. v. International Trade Commission*,
    180 F.3d 1354 (Fed. Cir. 1999)............................................................58

*Flex-Rest, LLC v. Steelcase, Inc.*,
    455 F.3d 1351 (Fed. Cir. 2006)............................................................57

*Fonar Corp. v. General Electric Co.*,
    107 F.3d 1543 (Fed. Cir. 1997)............................................................83

*Fromson v. Western Litho Plate & Supply Co.*,
    853 F.2d 1568 (Fed. Cir. 1998)............................................................88

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
    110 F.3d 1573 (Fed. Cir. 1997)............................................................57

*Gargoyles, Inc. v. United States*,
    113 F.3d 1572 (Fed. Cir. 1997)............................................................81

*Gasser Chair Co. v. Infanti Chair Manufacturing Corp.*,
    60 F.3d 770 (Fed. Cir. 1995)..........................................................72, 74

*General Talking Pictures Corp. v. Western Electric Co.*,
   304 U.S. 175 (1938)......................................................................................76

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998)....................................................................49

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970).......................................................89, 91

*Glaxo Inc. v. Novopharm Ltd.*,
   52 F.3d 1043 (Fed. Cir. 1995)......................................................................53

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004).............................................................89, 91

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966).........................................................................................63

*Grain Processing Corp. v. American Maize-Products Co.*,
   185 F.3d 1341 (Fed. Cir. 1999).............................................................79, 82

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.*,
   339 U.S. 605 (1950).....................................................................................31

*Gustafson, Inc. v. Intersystems Industrial Products, Inc.*,
   897 F.2d 508 (Fed. Cir. 1990)......................................................................46

*Gyromat Corp. v. Champion Spark Plug Co.*,
   735 F.2d 549 (Fed. Cir. 1984).............................................................81, 83

*Helifix Ltd. v. Blok-Lok, Ltd.*,
   208 F.3d 1339 (Fed. Cir. 2000)....................................................................58

*Hess v. Advanced Cardiovascular Systems Inc.*,
   106 F.3d 976 (Fed. Cir. 1997)......................................................................65

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990)....................................................................38

*Honeywell International v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004)....................................................................35

*Hughes Aircraft Co. v. United States*,
   140 F.3d 1470 (Fed. Cir. 1998)....................................................................31

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986).............................................................47, 63

*In re Alton*,
   76 F.3d 1168 (Fed. Cir. 1996) ............................................................................49

*In re Bartfeld*,
   925 F.2d 1450 (Fed. Cir. 1991) ...........................................................................57

*In re Bogese II*,
   303 F.3d 1362 (Fed. Cir. 2002) ...........................................................................76

*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986) .............................................................................58

*In re Icon Health & Fitness, Inc.*,
   496 F.3d 1374 (Fed. Cir. 2007) ...........................................................................63

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004) ...........................................................................57

*In re Seagate Technology, LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ...........................................................................46

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988) .............................................................................51

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981) .............................................................................58

*Insituform Technologies, Inc. v. CAT Contracting, Inc.*,
   385 F.3d 1360 (Fed. Cir. 2004) ...........................................................................36

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
   331 F.3d 860 (Fed. Cir. 2003) .............................................................................79

*Interactive Pictures Corp. v. Infinite Pictures Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001) ..............................................................31, 35, 89

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
   327 F.3d 1364 (Fed. Cir. 2003) ...........................................................................18

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ...........................................................................57

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
   787 F.2d 1577 (Fed. Cir. 1986) ...........................................................................58

*Johnson & Johnston Associates v. R.E. Service Co.*,
   285 F.3d 1046 (Fed. Cir. 2002) ...........................................................................31

*Kalman v. Berlyn Corp.*,
    914 F.2d 1473 (Fed. Cir. 1990).................................................................87

*Kendall v. Winsor*,
    62 U.S. 322 (1859)...................................................................................76

*Keystone Driller Co. v. General Excavator Co.*,
    290 U.S. 240 (1933).................................................................................77

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006).................................................................25

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*,
    863 F.2d 867 (Fed. Cir. 1988)...................................................................69

*Knorr-Bremse v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004).................................................................46

*KSR International Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007)..................................................................................63

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983).................................................................79

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    78 F.3d 540 (Fed. Cir. 1996).....................................................................57

*Lampi Corp. v. American Power Products, Inc.*,
    228 F.3d 1365 (Fed. Cir. 2000).................................................................49

*Larson Manufacturing Co. of South Dakota v. Aluminart Products, Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009).................................................................69

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006).................................................................41

*Lizard Technology, Inc. v. Earth Resource Mapping Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005).................................................................49

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).................................................79, 88, 89, 91

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)...........................................................88, 89, 91

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)..................................................................................20

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967, 977 (Fed. Cir. 1995) .................................................................20

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ...............................................79, 89, 91, 93

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
   244 F.3d 1365 (Fed. Cir. 2001) .............................................................38

*MGM Studios Inc. v. Grokster*,
   419 F.3d 1005 (Fed. Cir. 2005) .............................................................36

*Micro Chemical, Inc. v. Great Plains Chemical Co.*,
   103 F.3d 1538 (Fed. Cir. 1997) .............................................................29

*Micro Chemical, Inc. v. Lextron, Inc.*,
   318 F.3d 1119, 1123 (Fed. Cir. 2003) ..............................................81, 82, 84

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) .............................................................................41

*MicroStrategy Inc. v. Business Objects, S.A.*,
   429 F.3d 1344 (Fed. Cir. 2005) .............................................................25

*Minco, Inc. v. Combustion Engineering, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996) ..........................................................87, 88

*Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986) .............................................................26

*Morton International, Inc. v. Cardinal Chemical Co.*,
   5 F.3d 1464 (Fed. Cir. 1993) .................................................................24

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) .............................................................31

*Mycogen Plant Science, Inc. v. Monsanto Co.*,
   243 F.3d 1316 (Fed. Cir. 2001) .............................................................57

*National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*,
   166 F.3d 1190 (Fed. Cir. 1999) .............................................................51

*Netword, LLC v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001) .............................................................25

*Nike Inc. v. Wal-Mart Stores*,
   138 F.3d 1437 (Fed. Cir. 1998) .............................................................93

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)..........................................................................41, 44

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)..................................................................................20

*Odetics, Inc. v. Storage Technology Corp.*,
   185 F.3d 1259 (Fed. Cir. 1999)............................................................................22, 29

*Omega Engineering, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003)..................................................................................28

*On Demand Machine Corp. v. Ingram Industries, Inc.*,
   442 F.3d 1331 (Fed. Cir. 2006)..................................................................................44

*Panduit Corp. v. Stahlin Bros. Fibre Works*, *Inc.*,
   575 F.2d 1152 (6th Cir. 1978) .............................................................................81, 85

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998)............................................................................57, 65

*Paper Converting Machine Co. v. Magna-Graphics Corp.*,
   745 F.2d 11 (Fed. Cir. 1984)......................................................................................83

*Pellegrini v. Analog Devices, Inc.*,
   375 F.3d 1113 (Fed. Cir. 2004)..................................................................................41

*Pfaff v. Wells Electronics Inc.*,
   525 U.S. 55 (1998)......................................................................................................58

*Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*,
   518 F.3d 1353 (Fed. Cir. 2008)..................................................................................53

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................................20

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999)..................................................................................20

*Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.*,
   803 F.2d 1170 (Fed. Cir. 1986)..................................................................................39

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
   411 F.3d 1332 (Fed. Cir. 2005)..................................................................................63

*Purdue Pharma L.P. v. Faulding, Inc.*,
   230 F.3d 1320 (Fed. Cir. 2000)..................................................................................49

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
   772 F.2d 1570 (Fed. Cir. 1985)...............................................................57

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992)..................................................................46

*Regents of the University of California v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997).................................................................49

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 2864 (2009) ...................................38

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)........................................................... passim

*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000)..................................................................63

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003)..................................................................57

*Schumer v. Laboratory Computer Systems, Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002)..................................................................47

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
   927 F.2d 1565 (Fed. Cir. 1991)..................................................................69

*Seal-Flex, Inc. v. Athletic Track & Court Construction*,
   172 F.3d 836 (Fed. Cir. 1999)...................................................................24

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
   758 F.2d 613 (Fed. Cir. 1985)...................................................................65

*Singh v. Brake*,
   222 F.3d 1362 (Fed. Cir. 2000)..................................................................57

*Sitrick v. Dreamworks, LLC*,
   516 F.3d 993 (Fed. Cir. 2008)...................................................................51

*SmithKline Diagnostics, Inc. v. Helena Laboratory Corp.*,
   926 F.2d 1161 (Fed. Cir. 1991)..................................................................82

*Spectra-Physics, Inc. v. Coherent, Inc.*,
   827 F.2d 1524 (Fed. Cir. 1987)..................................................................53

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
   953 F.2d 1360 (Fed. Cir. 1991)...............................................................79, 82

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008)................................................................69

*State Industries, Inc. v. Mor-Flo Industries, Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989)..........................................................84, 85

*Symbol Technologies, Inc. v. Lemelson Medical, Education & Research
    Foundation, L.P.*,
    277 F.3d 1361 (Fed. Cir. 2002)................................................................76

*Symbol Technologies, Inc. v. Lemelson Medical, Education & Research
    Foundation, L.P.*,
    301 F. Supp. 2d 1147 (D. Nev. 2004), *aff'd*, 422 F.3d 1378 (Fed. Cir. 2005) ......................76

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*,
    492 F.3d 1350 (Fed. Cir. 2007)................................................................63

*Toro Co. v. Deere & Co.*,
    355 F.3d 1313 (Fed. Cir. 2004)................................................................57

*Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc.*,
    750 F.2d 1552 (Fed. Cir. 1984)................................................................89

*Transco Products Inc. v. Performance Contracting, Inc.*,
    38 F.3d 551 (Fed. Cir. 1994)................................................................53

*Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*,
    425 F.3d 1366 (Fed. Cir. 2005)................................................................41

*Union Pacific Resource Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001)................................................................51

*University of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004)................................................................49

*Upjohn Co. v. Mova Pharmaceutical Corp.*,
    225 F.3d 1306 (Fed. Cir. 2000)................................................................69

*Valmont Industries, Inc. v. Reinke Manufacturing Co.*,
    983 F.2d 1039 (Fed. Cir. 1993)................................................................29

*Vehicular Technologies Corp. v. Titan Wheel Inteernational, Inc.*,
    212 F.3d 1377 (Fed. Cir. 2000)................................................................18

*Vulcan Engineering Co. v. FATA Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002)................................................................87

*Wahl Instruments, Inc. v. Acvious, Inc.*,
    950 F.2d 1575 (Fed. Cir. 1991)................................................................53

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997)................................................................................31

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)..............................................................37

*Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005)..............................................................24

*Webster Electric Co. v. Splitdorf Electrical Co.*,
    264 U.S. 463 (1924)..............................................................................76

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
    904 F.2d 676 (Fed. Cir. 1990)................................................................35

*WMS Gaming Inc. v. International Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)..................................................22, 29, 46

*Woodbridge v. United States*,
    263 U.S. 50 (1923)................................................................................76

*z4 Technologies, Inc. v. Microsoft Corp.*,
    507 F.3d 1340 (Fed. Cir. 2007)..............................................................63

## FEDERAL STATUTES

35 U.S.C. § 101................................................................................................47

35 U.S.C. § 102..............................................................................47, 54, 57, 65

35 U.S.C. § 103..........................................................................................47, 63

35 U.S.C. § 112........................................................................................ passim

35 U.S.C. § 251................................................................................................47

35 U.S.C. § 256................................................................................................65

35 U.S.C. § 271........................................................................................ passim

35 U.S.C. § 282........................................................................................ passim

35 U.S.C. § 284..........................................................................46, 79, 81, 88

35 U.S.C. § 287................................................................................................93

**OTHER AUTHORITIES**

Fifth Circuit Pattern Jury Instructions, Instructions 9.8 (2006) ......................................................91

Model Patent Jury Instructions for the Northern District of California.........................................63

PTO Rule 56 ...........................................................................................................................................69

Seventh Circuit Pattern Jury Instructions (2008).........................................................................46

United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions,
    Instructions 9.8 (1999) .................................................................................................................89

**Preliminary Instructions**

*A.1     Preliminary Instructions*

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to a United States patent.  Before summarizing the positions

of the parties and the issues involved in the dispute, let me take a moment to explain what a

patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the

PTO").  A valid United States patent gives the patent holder the right [for up to 20 years from the

date the patent application was filed] [for 17 years from the date the patent issued] to prevent

others from making, using, offering to sell, or selling the patented invention within the United

States, or from importing it into the United States, without the patent holder's permission.  A

violation of the patent holder's rights is called infringement.  The patent holder may try to

enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first

file an application with the PTO.  The PTO is an agency of the Federal Government and employs

trained Examiners who review applications for patents.  The application includes what is called a

"specification," which contains a written description of the claimed invention telling what the

invention is, how it works, how to make it, and how to use it.  The specification concludes with

one or more numbered sentences.  These are the patent "claims."  When the patent is eventually

granted by the PTO, the claims define the boundaries of its protection and give notice to the

public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine

whether or not the claims are patentable (appropriate for patent protection) and whether or not

2

the specification adequately describes the invention claimed.  In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art."  The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.  Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed.  A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called an "Office Action."  If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims.  This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue.  Sometimes, patents are issued after appeals within the PTO or to a court.  The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.  A person accused of infringement

has the right to argue here in federal court that a claimed invention in the patent is invalid

because it does not meet the requirements for a patent.  It is your job to consider the evidence

presented by the parties and determine independently whether or not [alleged infringer] has

proven that the patent is invalid.

*A.2*    ***Preliminary Instructions***

## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are [patent holder] and [alleged infringer].  The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder].  For your convenience, the parties and I will often refer to this patent number [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."

[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent.  [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]

The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed claims [ ] of the [ ] patent.  [Alleged infringer] also argues that claims [ ] are invalid.  I will instruct you later as to the ways in which a patent may be invalid.  In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.  [Add other defenses, if applicable.]

5

Your job will be to decide whether or not claims [ ] of the [ ] patent have been infringed and whether or not those claims are invalid.  If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  [You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.]

**A.3    *Preliminary Instructions***

**PATENT AT ISSUE**

The Court should show the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue.  The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions.

The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time.  If the claim constructions are handed out, the following instruction should be read:

I have already determined the meaning of the claims of the [ ] patent.  You have been given a document reflecting those meanings.  For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning.  You are to apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

***A.4***     ***Preliminary Instructions***

### OVERVIEW OF APPLICABLE LAW

[The Court may wish to give preliminary instructions that are applicable to the specific issues in the case. This may help focus the jury on the facts that are relevant to the issues it will have to decide. Even if preliminary instructions are given, the Court would, nonetheless, give complete instructions at the close of evidence.]

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether [alleged infringer] has infringed the claims of the [ ] patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, [alleged infringer] may infringe the [ ] patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the [ ] patent. [Alleged infringer] may also indirectly infringe the [ ] patent by contributing to infringement by another entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the [ ] patent is invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is

8

obvious.  For a claim to be invalid because it is not new, [alleged infringer] must show, by clear

and convincing evidence, that all of the elements of a claim are present in a single previous

device or method, or sufficiently described in a single previous printed publication or patent.  We

call these "prior art."  If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious.  Even though every

element of a claim is not shown or sufficiently described in a single piece of "prior art," the

claim may still be invalid if it would have been obvious to a person of ordinary skill in the field

of technology of the patent at the relevant time.  You will need to consider a number of questions

in deciding whether the invention(s) claimed in the [ ] patent are obvious.  I will provide you

detailed instructions on these questions at the conclusion of the case.

[Where a written description or enablement defense is presented: A patent may also be invalid if

its description in the specification does not meet certain requirements.  To be valid, a patent must

meet the "written description" requirement.  In order to meet this written description requirement,

the description of the invention in the specification portion of the patent must be detailed enough

to demonstrate that the applicant actually possessed the invention as broadly as claimed in the

claims of the issued patent.[1]  The disclosure of a patent must also meet the "enablement"

requirement.  To meet this requirement, the description in the patent has to be sufficiently full

and clear to have allowed persons of ordinary skill in the field of technology of the patent to

make and use the invention without undue experimentation, at the time the patent application

was originally filed.]

---

[1] Under review in *Ariad v. Lilly*, Appeal No. 2008-1248 (Fed. Cir. appeal reinstated Aug. 21,
2009) (en banc).

If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  A damages award should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what [patent holder] would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate [patent holder] and not to punish [alleged infringer]. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate [patent holder] for the infringement, in order to punish [alleged infringer].  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

***A.5    Preliminary Instructions***

### OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, [patent holder] will present its evidence in support of its contention that [some of the] [the] claims of the [ ] patent have been [and continue to be] infringed by [alleged infringer] [and that the infringement has been [and continues to be] willful].  To prove

11

infringement of any claim, [patent holder] must persuade you that it is more likely than not that [alleged infringer] has infringed that claim.  [To persuade you that any infringement was willful, [patent holder] must prove that the infringement was willful by clear and convincing evidence.]

[Alleged infringer] will then present its evidence that the claims of the [ ] patent are invalid [and/or unenforceable].  To prove invalidity [and/or unenforceability] of any claim, [alleged infringer] must persuade you by clear and convincing evidence that the claim is invalid [or unenforceable.  In addition to presenting its evidence of invalidity [and/or unenforceability], [alleged infringer] will put on evidence responding to [patent holder]'s proof of infringement [and willfulness].

[Patent holder] may then put on additional evidence responding to [alleged infringer]'s evidence that the claims of the [ ] patent are invalid [and/or unenforceable], and to offer any additional evidence of infringement [and willfulness].  This is referred to as "rebuttal" evidence.  [Patent holder]'s "rebuttal" evidence may respond to any evidence offered by [alleged infringer].

Finally, [alleged infringer] may have the option to put on its "rebuttal" evidence to support its contentions as to the validity [and/or enforceability] of [some of the] [the] claims of the [ ] patent by responding to any evidence offered by [patent holder] on that issue.

[During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  The attorneys' comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.]

After the evidence has been presented, [the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case] [I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments].  These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.

**Instructions at the Close of Evidence**

***B.1***      ***Summary of Contentions***

## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, [patent holder] seeks money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], and [offering for sale] [products] [methods] that [patent holder] argues are covered by claims [ ] of the [ ] patent.  These are the asserted claims of the [ ] patent.  [Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [contributed to the infringement of these claims of the [ ] patent by others].  The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed the asserted claims of the [ ] patent [and argues that, in addition, claims [ ] are invalid.]  [Add other defenses if applicable.]

Your job is to decide whether [alleged infringer] has infringed the asserted claims of the [ ] patent and whether any of the asserted claims of the [ ] patent are invalid.  If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  [You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.]

15

### *B.2    Claim Construction*

## 2.1    THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of

patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The

claims are important because it is the words of the claims that define what a patent covers.  The

figures and text in the rest of the patent provide a description and/or examples of the invention

and provide a context for the claims, but it is the claims that define the breadth of the patent's

coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may

cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what

each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there

is infringement of the claim and to decide whether or not the claim is invalid.  The law says that

it is my role to define the terms of the claims and it is your role to apply my definitions to the

issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the

case, I have determined the meaning of the claims and I will provide to you my definitions of

certain claim terms.  You must accept my definitions of these words in the claims as being

correct.  It is your job to take these definitions and apply them to the issues that you are deciding,

including the issues of infringement and validity.

16

### *B.2    Claim Construction*

## 2.2    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you

understand what each claim covers, then you are prepared to decide the issues that you will be

asked to decide, such as infringement and invalidity.

<u>Authorities</u>

For "comprising," *see, e.g.*, *Cook Biotech Inc. v. ACell, Inc*., 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is open-ended and allows for additional steps."); for "consisting of," *see, e.g.*, *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'"); for "consisting essentially of," *see, e.g.*, *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) ("consisting essentially of" is a middle ground between open-ended term "comprising" and closed-ended phrase "consisting of").

### *B.2*    *Claim Construction*

#### 2.2a    INDEPENDENT AND DEPENDENT CLAIMS

[This instruction should only be given where both dependent and independent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim(s) [ ] of the [ ] patent are each independent claims.

The remainder of the claims in the [ ] patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

[Note: It may be helpful to submit to the jury a chart setting forth all dependencies for each dependent claim.]

### *B.2    Claim Construction*

## 2.3     CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

[Court gives its claim interpretation.  This instruction may be divided up into claim-by-claim sub-instructions if the Court believes it would be helpful.]

Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (remanding to the district court to determine the construction of "only if" when the "ordinary" meaning did not resolve the parties' dispute); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

**B.2     Claim Construction**

### 2.3a     SECTION 112, PARAGRAPH 6

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means-plus-function requirements:

Claim [ ] uses the phrase "means for [function]."  This "means for" phrase has a special meaning in patent law.  It is called a "means-plus-function" requirement.  It does not cover all of the structures that could perform the function set forth in the claim, namely, "[function]."  Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to [at least one of] the [set(s) of] structure(s) described in the [ ] patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another.  For purposes of this case, I have identified the [set(s) of] structure(s) described in the [ ] patent that perform(s) the function of "[function]."  [Claims [ ] also include similar means-plus-function requirements.]  When I read you my definitions for certain claim terms a few moments ago, I identified the structures described in the [ ] patent for performing the relevant functions.  You should apply my definition of the function and the structures described in the [ ] patent for performing it as you would apply my definition of any other claim term.

Where claims include step-plus-function requirements:

Claim [ ] uses the phrase "step for [function]."  It does not cover all of the acts that could perform the function set forth in the claim.  Instead, it covers acts that perform that function and

21

are either identical or "equivalent" to [at least one of] the [set(s) of] act(s) described in the [ ]

patent for performing that function.  The issue of whether two structures are identical or

equivalent is for you to decide.  I will explain to you later how to determine whether two acts or

two sets of acts are "equivalent" to one another.  For purposes of this case, I have identified the

[set(s) of] act(s) described in the [ ] patent that perform(s) the function of "[function]."  [Claims

[ ] also include similar step-plus-function requirements.]  When I read you my definitions for

certain claim terms a few moments ago, I identified the acts described in the [ ] patent for

performing the relevant functions.  You should apply my definition of the function and the acts

described in the [ ] patent for performing it as you would apply my definition of any other claim

term.

Authorities

35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-plus-function limitation with two functions must perform both claimed functions and be an equivalent structure.  Equivalence of structure can be shown here if the objects perform both identical functions in substantially the same way to achieve substantially the same result.); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999) (distinguishing between means- or step-plus-function to equivalents available at time of issuance and application of doctrine of equivalents to after-arising inventions); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1351 (Fed. Cir. 1999) ("The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a section 112, ¶ 6, claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998).

***B.3   Infringement***

### 3.1     INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not [alleged infringer] has infringed the [ ] patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are five possible ways that a claim may be infringed.  The five types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; (4) infringement through the supply of components from the United States to another country; and (5) infringement through importation of a product made abroad by a patented process.  Active inducement and contributory infringement are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.  To prove indirect infringement, [patent holder] must also prove that [alleged infringer]'s indirect infringement caused direct infringement.

In this case, [patent holder] has alleged that [alleged infringer] directly infringes the [ ] patent.  [[In addition,] [patent holder] has alleged that [alleged direct infringer] directly infringes the [ ] patent, and [alleged infringer] is liable for [actively inducing or contributing to] that direct infringement by [alleged direct infringer].  [Patent holder] has also alleged that [alleged infringer] is liable for [infringement through the supply of components from the United States for combination outside of the United States] [and/or] [infringement through importation into the United States of a product made by the patented process].]

In order to prove infringement, [patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more

likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

Authorities

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

**B.3    Infringement**

### 3.1a    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement

under the doctrine of equivalents."  In order to prove direct infringement by literal infringement,

[patent holder] must prove by a preponderance of the evidence, i.e., that it is more likely than not,

that [alleged infringer] made, used, sold, offered for sale within, or imported into, the United

States a [product or process] that meets all of the requirements of a claim and did so without the

permission of [patent holder] during the time the [ ] patent was in force.  You must compare the

[product or process] with each and every one of the requirements of a claim to determine

whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement.

There is one exception to this rule.  If you find that a claim on which other claims depend is not

infringed, there cannot be infringement of any dependent claim that refers directly or indirectly

to that independent claim.  On the other hand, if you find that an independent claim has been

infringed, you must still decide, separately, whether the [product or process] meets additional

requirements of any claims that depend from the independent claim, thus, whether those claims

have also been infringed.  A dependent claim includes all the requirements of any of the claims

to which it refers plus additional requirements of its own.

<u>Authorities</u>

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not
infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429
F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not
contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d
1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where accused product did not include
each claim limitation); *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir.
2001) (no literal infringement where all of the elements of the claim not present in the accused

system); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

***B.3***     ***Infringement***

### 3.1b    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF SECTION 112, PARAGRAPH 6 CLAIM REQUIREMENTS

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means/step-plus-function requirements:

As I have previously explained, claims [ ] include requirements that are in [means/step-plus-function] form.

A product or a process meets a means/step-plus-function requirement of a claim if: (1) it has [a structure or a set of structures/an action or a set of actions] that perform(s) the identical function recited in the claim, and (2) that [structure or set of structures/action or set of actions] is either identical or "equivalent" to [one or more of] the described [set(s) of] [structure(s)/ action(s)] that I defined earlier as performing the function of [functional limitation].  If the [product] does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the [product] does not literally infringe the claim.  Alternatively, even if the [product] has [a structure or a set of structures] that performs the function recited in the claim but the [structure or set of structures] is not either identical or "equivalent" to [one or more of] the [set(s) of] [structure(s)/action(s)] that I defined to you as being described in the [ ] patent and performing this function, the [product] does not literally infringe the asserted claim.

[A structure or a set of structures/An action or a set of actions] may be found to be "equivalent" to [one of] [the/a] [set(s) of] [structure(s)/action(s)] I have defined as being described in the [ ] patent if a person having ordinary skill in the field of technology of the [ ] patent either would

27

have considered the differences between them to be insubstantial at the time the [ ] patent issued

or if that person would have found the [structure(s)/actions(s)] performed the function in

substantially the same way to accomplish substantially the same result.  In deciding whether the

differences would be "insubstantial," you may consider whether a person having an ordinary

level of skill in the field of technology of the patent would have known of the interchangeability

of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for

the structures to be considered to be interchangeable, the interchangeability of the two structures

must have been known to persons of ordinary skill in that art at the time the patent issued.  The

fact that [a structure or a set of structures/an act or a set of acts] is known now and is

"equivalent" is not enough.  The [structure or set of structures/act or set of acts] must also have

been available at the time the [ ] patent issued.

[In this case, the parties have agreed that the relevant field of technology is [field of technology]

and that a person having an ordinary level of skill would [qualifications].]  [In this case, you will

have to decide [issues regarding field of technology and level of ordinary skill in the art].  I will

instruct you later how to decide this.]

In order to prove direct infringement by literal infringement of a means-plus/step-plus-function

limitation, [patent holder] must prove the above requirements are met by a preponderance of the

evidence.

Authorities

35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-
41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293,
1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-
34 (Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003)
(holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure
performs the identical function recited in the claim and is identical or equivalent to the structure

28

in the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**B.3**    ***Infringement***

**3.1c    DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]

If a [person] [company] makes, uses, sells, offers to sell within, or imports into the United States a [product] [process] that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a [product or process] infringes a claim if the accused [product or process] [contains elements or performs steps] corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused [product or process]. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the [structure or action] to be considered interchangeable, the [structure or action] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," [patent holder] must prove the equivalency of the [structure or actions] to a claim element by a preponderance of the evidence.

If claims with means-plus-function clauses are at issue:

30

When the claim requirement that is not met by the [product or process] is a ["means-plus-function" or "step-plus-function"] requirement, and if you determined that there is no "literal infringement" because there is no [structure or set of structures/action or set of actions] in the [product or process] that performs the specific function of the means-plus-function requirement,, you may decide that the [structure or action] nonetheless corresponds to the requirements of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" [structure or action].

On the other hand, if you find that the accused [product or process] has no corresponding [structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or action(s)] that I defined as performing that function, then you must find that there is no infringement under the doctrine of equivalents.  This is the case even if you find that the accused [product or process] has some other [structure or set of structures/action or set of actions] that performs the specific function of the means-plus-function requirement.  In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "doctrine of equivalents."

Authorities

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc.*, 274 F.3d 1371, 1381-82 (Fed. Cir. 2001); *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (no infringement under the doctrine of equivalents); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (distinguishing between the doctrine of equivalents and the statutory term "equivalents"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

***B.3    Infringement***

### 3.1d    LIMITATIONS ON DIRECT INFRINGEMENT
### "UNDER THE DOCTRINE OF EQUIVALENTS"

[Although the applicability of these limitations is ultimately decided by the Court, this

instruction is provided for the case in which the Court decides to submit these issues to the jury

for advisory findings.]

[If there is a question as to whether the prior art limits the doctrine of equivalents:

The prior art may preclude a finding of infringement under the doctrine of equivalents.  I will

explain what "prior art" is, but, generally speaking, "prior art" is things that were already known

or done before the invention.  In reaching your decisions in this case, you must use the definition

of "prior art" that I provide to you.]

[Statement of the law not using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of

equivalents for a particular [product or process] that is accused of infringing a particular claim,

you must determine what [products or processes] are in the "prior art" as well as what [products

or processes] would have been obvious from the "prior art" to a person having an ordinary level

of skill in the field of technology of the patent at the time of the invention.

If [alleged infringer] establishes that a [product or process] that (1) meets the same claim

requirements as the [product or process] that is accused of infringing and (2) has the same

allegedly "equivalent" alternative feature(s) as the [product or process] that is accused of

infringing is in the prior art or would have been obvious from the prior art to a person having

ordinary skill in the field of technology of the invention at the time of the invention, you must find that the claim has not been infringed.

[Alleged infringer] has the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.]

[Alternative statement of the law using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents, you must first have in mind a "hypothetical claim" that would cover the accused, allegedly equivalent [product or process] literally.  The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would be met by the allegedly "equivalent" hypothetical claim.

Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness.  I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness.  You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for anticipation or obviousness.  If you determine that the "hypothetical claim" would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.]

[If there is a question as to whether a disclosure in the patent precludes equivalence:

You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) of that [product or process]

33

was/were described somewhere in the patent and (2) that [product or process] is not covered literally by any of the claims of the patent.]

[If there is a question as to argument-based prosecution history estoppel:

You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly "equivalent" alternative aspect of that [product or process].]

[If there is a question as to amendment-based prosecution history estoppel:

[Alleged infringer] has argued that [patent holder] cannot assert infringement under the doctrine of equivalents due to statements [patent holder] made to the PTO in order to get the claim allowed in the first place.  In order to find [accused product] to be equivalent, you must also make certain findings regarding the statements [patent holder] made to the PTO in order to get the [ ] patent.  Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by [alleged infringer] to limit the scope of equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative.  You may not find that the

34

alternative feature of the [accused product or process] is an equivalent to an unmet requirement of a claim if that requirement was added to the claim (or to any claim of the [ ] patent) by amendment during the prosecution of the applications that led to issuance of the [ ] patent, unless you also find that at least one of these factors that I have identified to you.]

[If there is a question as to vitiation:

You may not determine that an alternative aspect of a [product or process] is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.]

<u>Authorities</u>

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 676, 684 (Fed. Cir. 1990).

***B.3    Infringement***

### 3.2    INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT

[Patent holder] alleges that [alleged infringer] is liable for infringement by actively inducing [someone else][some other company] to directly infringe the [ ] patent literally or under the doctrine of equivalents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Alleged infringer] is liable for active inducement of a claim only if [patent holder] proves by a preponderance of the evidence that:

(1)     [alleged infringer] took action during the time the [ ] patent was in force intending to cause acts by [insert name or other description of alleged direct infringer];

(2)     [alleged infringer] was aware of the [ ] patent and knew or should have known that the acts, if taken, would constitute infringement of that patent; and

(3)     the acts are actually carried out by the [insert name or other description of direct infringer and directly infringe that claim].

In order to establish active inducement of infringement, it is not sufficient that [insert name or other description of alleged direct infringer] itself directly infringes the claim.  Nor is it sufficient that [alleged infringer] was aware of the act(s) by [insert name or other description of alleged direct infringer] that allegedly constitute the direct infringement.  Rather, you must find that [accused infringer] specifically intended [insert name or other description of alleged direct infringer] to infringe the [ ] patent, in order to find inducement of infringement.

Authorities

35 U.S.C. § 271(b); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc.*

36

*v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

*B.3*    *Infringement*

### 3.3    INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT

[Patent holder] argues that [alleged infringer] is liable for contributory infringement by contributing to the direct infringement of the [ ] patent by [insert name or other description of direct infringer].  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Alleged infringer] is liable for contributory infringement of a claim if [patent holder] proves by a preponderance of the evidence:

(1)    [alleged infringer] sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process, during the time the [ ] patent is in force;

(2)    the component or apparatus has no substantial, noninfringing use;

(3)    the component or apparatus constitutes a material part of the invention;

(4)    [alleged infringer] is aware of the [ ] patent and knows that the [products or processes] for which the [component or apparatus] has no other substantial use may be covered by a claim of the [ ] patent or may satisfy a claim of the [ ] patent under the doctrine of equivalents; and

(5)    that use directly infringes the claim.

In order to prove contributory infringement, [patent holder] must prove that each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

Authorities

35 U.S.C. § 271(c) ("not a staple article"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) (knowledge of plaintiff's patent and that the part supplied is significant); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1327 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (reversing district court's finding of no contributory infringement and inducement); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir.

1990) (differentiating contributory infringement from inducement); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (direct infringement findings supported contributory infringement findings).

***B.3     Infringement***

## 3.4     INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD

[This instruction should be given if patentee asserts infringement under 35 U.S.C. § 271(f)(1) or

§  271(f)(2).]

[If § 271(f)(2)—active inducement—is at issue:

[Alleged infringer] is liable for § 271(f)(1) infringement of a claim (active inducement of foreign

combination of components supplied from the United States) if patentee proves by a

preponderance of the evidence that:

(1)     [alleged infringer] supplies [or causes to be supplied] components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of any one of the claims of the [ ] patent;

(2)     [alleged infringer] takes action intentionally to cause another to act by [insert name or other description of direct infringer] outside of the United States to [assemble the components];

(3)     [alleged infringer] knows of the [ ] patent, and knows (or should have known) that the encouraged acts constitute infringement of that patent; and

(4)     the encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

In order to establish active inducement of infringement, it is not sufficient that [insert name or

other description of direct infringer] itself allegedly directly infringes the claim.  Nor is it

sufficient that [alleged infringer] was aware of the act(s) that allegedly constitute the direct

infringement.  Rather, you must find that [alleged infringer] specifically intended for [insert

name or other description of direct infringer] to infringe the [ ] patent, in order to find

inducement of infringement.  If you do not find that [alleged infringer] specifically intended to

40

infringe, then you must find that [alleged infringer] has not actively induced the alleged

infringement under § 271(f)(1).]

[If § 271(f)(2)—contributory foreign infringement—is at issue:

[Alleged infringer] is [also] liable for § 271(f)(2) infringement of a claim if [patent holder]

proves by a preponderance of the evidence that:

(1)      [alleged infringer] supplies a component, or causes a component to be supplied, from the United States to a place outside of the United States;

(2)      the only substantial use for the component is in a product that [product or process] would infringe if the combination had occurred in the United States;

(3)      [alleged infringer] is aware of the [ ] patent and knows that the [component or apparatus] has no other substantial use and may be covered by a claim of the patent [literally or under the doctrine of equivalents]; and

(4)      intends for the component to be used by [insert name of other description of alleged direct infringer] and it was used in a product that would directly infringe the claim if it had been used in the United States.]

Authorities

35 U.S.C. § 271(f); *Cardiac Pacemakers, Inc. v. St. Jude Med.*, Appeal Nos. 07-1296, -1347 (Fed. Cir. 2009) (§ 271(f) does not cover method claims); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1222-23 (Fed. Cir. 2006); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117-18 (Fed. Cir. 2004); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1366 (Fed. Cir. 2005); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005).

***B.3   Infringement***

**3.5     INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR IMPORTATION OF A PRODUCT MADE OUTSIDE THE UNITED STATES BY PATENTED PROCESS**

[Alleged infringer] is liable for direct infringement of a claim if [patent holder] proves by a preponderance of the evidence that [alleged infringer], without [patent holder]'s authorization, imports, offers to sell, sells, or uses within the United States a product which was made outside of the United States during the time the [ ] patent is in force by a process that, if performed in the United States, would infringe the claim literally or under the doctrine of equivalents.  However, if the product has been materially changed by an additional process or the product has become a trivial and nonessential component of another product, you must find [alleged infringer] did not infringe the [ ] patent.

<u>Authorities</u>

35 U.S.C. § 271(g); *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367 (Fed. Cir. 2003) (finding infringement under this section); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1347 (Fed. Cir. 2000) (same).

***B.3***   ***Infringement***

**3.7     DIRECT INFRINGEMENT: MULTIPLE ALLEGED INFRINGERS OR SOME ACTIONS CONDUCTED OUTSIDE THE UNITED STATES**

[This instruction should only be given where there are multiple alleged infringers or some of the allegedly infringing conduct occurred outside of the United States.]

You must make a determination of infringement separately for each of the alleged infringers. Therefore, if you find that a claim is not infringed by any one alleged infringer, you must go on to consider whether that claim is infringed by the others.

It is not necessary for the acts that constitute infringement to be performed by one person or entity.  When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement.  An alleged infringer cannot avoid infringement of a patented process or method by having another [person] [company] perform one step of the process or method.  Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

[Patent holder] alleges that [alleged infringer A] and [alleged infringer B, etc.] have each separately infringed [or that each has acted with the other to collectively infringe] a claim of the [ ] patent.

For infringement to be proved, [patent holder] must prove that the elements of a claimed product were combined, made, used, sold, offered for sale, or imported [or all of the steps of a claimed process performed] in the United States by a preponderance of the evidence.

43

Where geographically disparate infringement of a system claim is alleged, add:

[Patent holder] claims infringement even though some of the elements of the claim were located outside of the United States.  For infringement, [patent holder] must prove by a preponderance of the evidence that either all of the elements of a claimed product were combined, made, used, sold, offered for sale, or imported in the United States, or that the benefit or control of the system was enjoyed by a person using the system in the United States.

<u>Authorities</u>

35 U.S.C. § 271(a); *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (infringement by multiple alleged infringers); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005); *NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1313-21 (Fed. Cir. 2005).

***B.3    Infringement***

## 3.8    WILLFUL INFRINGEMENT

[This instruction should be given only if willfulness is in issue.]

In this case, [patent holder] argues both that [alleged infringer] infringed and, further, that [alleged infringer] infringed willfully.  If you have decided that [alleged infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that [alleged infringer] acted recklessly.  To prove that [alleged infringer] acted willfully, [patent holder] must prove two things by clear and convincing evidence: First, that there was a high likelihood that [alleged infringer]'s actions infringed a valid patent.  In making this determination, you may not consider [alleged infringer]'s state of mind, but you may take into account the normal standards of commerce.  Second, if you find this threshold is satisfied, you must also find by clear and convincing evidence that this objectively defined risk was either known or so obvious that it should have been known to [alleged infringer].

To do this, you must consider all of the facts, which may include but are not limited to:

(1)    Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [ ] patent;

(2)    Whether or not there is a reasonable basis to believe that [alleged infringer] did not infringe or had a reasonable defense to infringement;

(3)    Whether or not [alleged infringer] made a good-faith effort to avoid infringing the [ ] patent, for example, whether [alleged infringer] attempted to design around the [ ] patent; [and]

(4)    Whether or not [alleged infringer] tried to cover up its infringement[./; and]

45

(5)      [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:

[Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable].  You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

Authorities

35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc) (opinion of counsel defense); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness).

Committee Comments: Some other pattern jury instructions decline to provide a list of nonexhaustive considerations, *see, e.g.*, Seventh Circuit, 2008 Patent Jury Instructions, at 11.2.14, on the theory that the factors are better left to attorney argument or may mislead a jury to believe other factors should not be considered.  (www.ca7.uscourts.gov/Pattern-Jury-Instr.)  Appropriate factors for the jury's consideration may be tailored to each case, or may be omitted.

***B.4    Validity***

## 4.1    INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer] has proven that claims [ ] of the [ ] patent are invalid.  To prove that any claim of a patent is invalid, [alleged infringer] must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

<u>Authorities</u>

35 U.S.C. § 282 (patents presumed valid).  Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

47

### B.4.2   Validity—Adequacy of Patent Specification

#### 4.2a     WRITTEN DESCRIPTION REQUIREMENT[2]

The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification of the [ ] patent does not contain an adequate written description of the invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or

---

[2] Under review in *Ariad v. Lilly*, Appeal No. 2008-1248 (Fed. Cir. appeal reinstated Aug. 21, 2009) (en banc).

any particular requirement in a claim need not be expressly disclosed in the original patent

application if a person having ordinary skill in the field of technology of the patent at the time of

filing would have understood that the full scope or missing requirement is in the written

description in the patent application.

<u>Authorities</u>

35 U.S.C. § 112, ¶¶ 1, 2; *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

### *B.4.2   Validity—Adequacy of Patent Specification*

## 4.2b   ENABLEMENT

The patent law contains certain requirements for the part of the patent called the specification.

[Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid

because the specification does not contain a sufficiently full and clear description of how to

make and use the full scope of the claimed invention.  To succeed, [alleged infringer] must show

by clear and convincing evidence that the [ ] patent does not contain a sufficiently full and clear

description of the claimed invention.  To be sufficiently full and clear, the description must

contain enough information to have allowed a person having ordinary skill in the field of

technology of the patent to make and use the full scope of the claimed invention at the time the

[original] patent application was filed.  This is known as the "enablement" requirement.  If a

patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of

technology of the patent to make and use the full scope of the claimed invention at the time of

[original] filing without having to conduct undue experimentation.  However, some amount of

experimentation to make and use the invention is allowable.  In deciding whether a person

having ordinary skill would have to experiment unduly in order to make and use the invention,

you may consider several factors:

(1)      the time and cost of any necessary experimentation;

(2)      how routine any necessary experimentation is in the field of [identify field];

(3)      whether the patent discloses specific working examples of the claimed invention;

(4)      the amount of guidance presented in the patent;

(5)      the nature and predictability of the field of [identify field];

(6)      the level of ordinary skill in the field of [identify field]; and

(7)      the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision

whether or not the degree of experimentation required is undue based upon all of the evidence

presented to you.  You should weigh these factors and determine whether or not, in the context

of this invention and the state of the art at the time of the [original] application, a person having

ordinary skill would need to experiment unduly to make and use the full scope of the claimed

invention.


<u>Authorities</u>

35 U.S.C. § 112, ¶ 1; *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The
scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that
the public knowledge is enriched by the patent specification to a degree at least commensurate
with the scope of the claims.'") (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys.,
Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
501 F.3d 1274, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled); *AK
Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim
is "part of the *quid pro quo* of the patent bargain"); *Union Pac. Res. Co. v. Chesapeake Energy
Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)
(factors for determining undue experimentation).

***B.4.2   Validity—Adequacy of Patent Specification***

## 4.2c    BEST MODE

The patent law contains certain requirements for the part of the patent called the specification.

[Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid

because the specification does not describe the best way to [make/use/carry out] the claimed

invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that the

[ ] patent does not disclose what [the inventor] [any of the inventors] believed to be the best way

to [make/use/carry out] the claimed invention at the time the patent application was filed.  This is

known as the "best mode" requirement.  It ensures that the public obtains a full disclosure of the

best way to [make/use/carry out] the claimed invention that was known to [the

inventor/inventors] at the time the [original] patent application was first filed.  The best mode

requirement is designed to prohibit [the inventor/any of the inventors] from concealing a better

mode of practicing the invention than the mode [he/she/they] disclosed in the patent application.

The best mode requirement must be determined on a claim-by-claim basis.

The best mode requirement focuses on what [the inventor/the inventors] believed at the time the

[original] patent application was filed.  It does not matter whether the best mode contemplated by

[the inventor/any of the inventors] was considered by others to have been the best way to carry

out the claimed invention.  Nor does it matter that the [inventor/inventors] failed to disclose a

better way to carry out the claimed invention if the [inventor/inventors] did not believe it to be

better at the time they filed the original application.

If [the inventor/any of the inventors] believed there was a best way to carry out any claim of the

invention and the [ ] patent does not adequately disclose it, the claim is invalid.  In deciding

whether or not the best mode has been included in the [ ] patent, you must consider two questions.

First, you must decide whether or not [the inventor/any of the inventors] believed there to be a best way to practice the claimed invention at the time that application was filed.  If [the inventor did not believe/none of the inventors believed] there to be a best way to carry out the claimed invention, there is no requirement that the [ ] patent describe a best mode.

Second, you must decide whether or not the [ ] patent describes what [the inventor/any of the inventors] believed to be the best mode at the time the [original] patent application was filed for [each claim at issue].  The disclosure of the best mode must be detailed enough to enable a person having ordinary skill in the field of technology of the patent to [make/use/carry out] that best mode without undue experimentation.  The patent specification need not disclose routine details concerning the quality and nature of the best mode if such details would be readily apparent to a person of ordinary skill in the field.  Although a patent specification must disclose at least the best mode for each claim, it may also disclose other modes as well, and it need not state which of the modes disclosed is considered by the [inventor/inventors] to be the best.

Authorities

35 U.S.C. § 112, ¶ 1; *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1364-65 (Fed. Cir. 2008); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1320 (Fed. Cir. 2002); *Bruning v. Hirose*, 161 F.3d 681, 686-87 (Fed. Cir. 1998) (if inventor does not have a subjective awareness of a best mode for practicing the claimed invention at the time of filing of the patent application, no best mode violation can occur); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1049-52 (Fed. Cir. 1995); *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557-62 (Fed. Cir. 1994); *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1579-84 (Fed. Cir. 1991); *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926-28 (Fed. Cir. 1990); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535-37 (Fed. Cir. 1987).

### *B.4.3   Validity—The Claims*

## 4.3a     PRIOR ART

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or [insert date if undisputed] or more than one year before the filing date of the patent application.  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.  [Where appropriate, add limitation that subject matter developed by another which qualifies as prior art only under one or more of subsections (e), (f), and (g) of 35 U.S.C. § 102 where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person, or subject to an obligation of assignment to the same person.]

[For anticipation:

For the claim to be invalid because it is not new, [alleged infringer] must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.]

[If invention date is disputed: In this case, you must determine the date of invention [or conception] [and/or] [reduction to practice] for the [claimed invention or alleged prior art].

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.]

***B.4.3   Validity—The Claims***

## 4.3b    ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical [product or process] has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

[Alleged infringer] contends that claim(s) [ ] of the [ ] patent is/are invalid because the claimed invention(s) is/are anticipated or because [patent holder] lost the right to obtain a patent.  [Alleged infringer] must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.

Here is a list of ways that [alleged infringer] can show that a patent claim was not new or that the patentee lost the right to patent the claim(s) [choose those that apply based on alleged infringer's contentions]:

(1)     An invention is not new if it was known to or used by others in the United States before the [insert date of invention].  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the [insert date of invention].  [A description is a "printed publication" only if it was publicly accessible.]

(3)     [Patent holder] has lost her or his rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by [patent holder] or anyone else, more than a year before [insert date], which is the effective filing date of the application for the [ ] patent.  An invention was patented by another if the other patent describes the same invention claimed by [patent holder] to a person having ordinary skill in the technology.

(4)     [Patent holder] has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before [insert date], which is the effective filing date of the application for the [ ] patent.  An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered

for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

(5)      [Patent holder] has lost his or her rights if he or she abandoned the invention.

(6)      [Patent holder] has lost her or his rights if she or he had already obtained a patent for the invention in a foreign country before the filing date of the application in the United States or the patent application was filed in a foreign country more than a year before the filing date of the application for the patent in the United States.

(7)      An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

(8)      An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the [ ] patent].

(9)      [Patent holder] is not entitled to the [ ] patent if [named inventor] did not himself invent the invention.

(10)      An invention is not new if the invention was made by someone else in the United States before the invention was made by [patent holder] and the other person did not abandon, suppress, or conceal the invention.


If an interference proceeding has been declared, additional instructions should be given on this

issue.


Authorities

35 U.S.C. § 102(a)-(g); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003);

*In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

### B.4.3   Validity—The Claims

**4.3c    OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

[Alleged infringer] may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of [insert the field of the invention].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the claimed invention was made [or at the critical date for art triggering a statutory bar], the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention [or the critical date] there was a reason that would have prompted a person having ordinary skill in the field of [the invention] to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention

59

provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e., consider only what was known at the time of the invention [or the critical date].

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention [or the critical date] and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a.  Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.  Whether the invention satisfied a long-felt need;

c.  Whether others had tried and failed to make the invention;

d.  Whether others invented the invention at roughly the same time;

e.  Whether others copied the invention;

f.  Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.  Whether the invention achieved unexpected results;

h.  Whether others in the field praised the invention;

i.  Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.  Whether others sought or obtained rights to the patent from the patent holder; and

k.  Whether the inventor proceeded contrary to accepted wisdom in the field.

### *B.4.3   Validity—The Claims*

## 4.3c(i)  LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of [invention] is, you should consider all

the evidence introduced at trial, including but not limited to: (1) the levels of education and

experience of the inventor and other persons actively working in the field; (2) the types of

problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with

which innovations are made; and (5) the sophistication of the technology.

## 4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART

[Option 1: parties stipulate to prior art.]

In considering whether the claimed invention was obvious at the time it was made, you should

consider the scope and content of the following prior art:  [Insert art as stipulated].

[Option 2: parties dispute the prior art.]

In considering whether the claimed invention was obvious, you must first determine the scope

and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior

art in the same field as the claimed invention, regardless of the problem addressed by the item or

reference, and prior art from different fields that a person of ordinary skill in the art using

common sense might combine if familiar so as to solve the problem, like fitting together the

pieces of a puzzle.  When a party attacking the validity of a patent relies on prior art which was

specifically considered by the Examiner during the prosecution of the application leading to the

issuance of the patent, that party bears the burden of overcoming the deference due a qualified

government agency official presumed to have performed his or her job.

Authorities

35 U.S.C. § 103(a).  The four-factor test, including articulation of the objective factors, is found in *Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1966); *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000).  The test was reaffirmed in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007) ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls.").  *See also Cordis Corp. v. Medtronic Ave., Inc.*, 511 F.3d 1157, 1172 (Fed. Cir. 2008).

In cases where the invalidity defense is based on a combination of prior art, the proper inquiry is a flexible analysis considering whether, among other factors, the prior art teaches, suggests, or motivates the claimed invention.  *KSR*, 550 U.S. at 419-20; *Esai Co. v. Dr. Reddy's Labs. Ltd.*, 533 F.3d 1353, 1356-57 (Fed. Cir. 2008); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380-81 (Fed. Cir. 1986).

Obviousness should be assessed at the time of the invention.  Fact-finders should be made aware "of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."  *KSR*, 550 U.S. at 421.

For recent authority that invalidity must be shown by clear and convincing evidence, *see z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1354 (Fed. Cir. 2007).  Obviousness should be evaluated on a claim-by-claim basis.  *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1303 (Fed. Cir. 2007).

For factors to consider in determining the level of ordinary skill, *see, e.g.*, *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *Ruiz*, 234 F.3d at 666-67.  For authority on the standards for determining the scope and content of prior art, *see, e.g.*, *KSR*, 550 U.S. at 420; *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005).

Committee Comments:  The Model Patent Jury Instructions for the Northern District of California, section 4.3, n.9, advise that jury instructions on obviousness are advisory only as obviousness is a question of law to be decided by the court, citing *KSR*, 550 U.S. at 427, and *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007).  Oct. 7, 2007, http:///www.cand.uscourts.gov.  However, the Federal Circuit continues to emphasize the factual nature of the issues underlying a determination of obviousness.  *See, e.g.*, *Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1375 (Fed. Cir. 2008).

***B.4.3   Validity—The Claims***

### 4.3d   INVENTORSHIP

[This instruction should only be given in the event the alleged infringer has contended that the patent suffers from improper inventorship.]

In this case, [alleged infringer] contends that the [ ] patent is invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent [even if that claim has not been alleged to be infringed]. Whether the contribution is significant is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

<u>Authorities</u>

35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid."); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

### B.5    Equitable Defenses

[Although these equitable defenses are ultimately decided by the Court, these instructions are provided for the case in which the Court decides to submit these issues to the jury for advisory findings.]

### 5.1    INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office.  This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. [Alleged infringer] must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the [ ] patent withheld material information or submitted materially false information or statements to the PTO during the examination of the [ ] patent(s), and that the person did so with an intent to deceive the Examiner into issuing the [ ] patent(s).

I will now explain to you what "material" and "intent to deceive" mean.

**Material**

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy a requirement for a valid patent.  Examples of such requirements would include that the disclosure must be enabling and contain an adequate written description, and that the invention must be new and nonobvious, among others.  Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the Examiner that the invention was not patentable or when making an argument to the Examiner that the invention was patentable.  Information or statements are also material if there is a substantial likelihood that a reasonable Examiner would consider them important in deciding whether to allow the application to issue as a patent.  False information or statements may be considered material if they would (alone or in combination) falsely suggest that the applicant satisfied a patentability requirement.  Withheld information that is cumulative of, or less relevant to any patentability requirement compared to information the examiner already had from any source, is not material (because the Examiner already had similar information on which to make a judgment on patentability).  Material information may be deemed withheld if it was included along with large quantities of other information that is not material so that it would have been hard for the Examiner to recognize its materiality.

Because the degree of materiality of the information is factored into the ultimate determination I make concerning the enforceability of the patent, the jury form will ask you to identify the issue for which the information or statements was material and to rate its materiality on a scale from low to high [or one to ten].  You may only find information or statements to be material if there is clear and convincing evidence that they are material.

67

**Intent to Deceive**

In order for inequitable conduct to have occurred, [alleged infringer] must establish that any [failure to disclose material information/false or misleading statements] [was/were] done with an intent to deceive the Examiner.  If the [failure to disclose material information/false or misleading statements] occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct.  However, intent requires that the person allegedly making false statements know they are false or allegedly withholding information know that it is material.

**Balancing of Materiality and Intent**

If you find that [alleged infringer] has proved by clear and convincing evidence that [material information was withheld/materially misleading statements were made or false information provided] and, further, that these acts or omissions were done with an intent to deceive the Examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that [patent holder or other relevant person(s)] committed inequitable conduct and the patent(s) should in fairness be declared unenforceable.  When performing this balancing, the higher the level of materiality of [the withheld information/the false and misleading statements], the lower the level of intent that is required to establish inequitable conduct, and vice versa.  Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality.  There must be

clear and convincing evidence that establishes materiality and there must be clear and convincing

evidence that establishes an intent to deceive.  If clear and convincing evidence of either, or both,

is missing, there can be no inequitable conduct.

<u>Authorities</u>

35 U.S.C. § 282; *Larson Mfg. Co. of S.D. v. Aluminart Prods., Ltd.*, 559 F.3d 1317 (Fed. Cir. 2009) (vacating district court's determination of inequitable conduct because of lack of materiality); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("[A]t least a threshold level of each element—i.e., both materiality and intent to deceive—must be proven by clear and convincing evidence." (citations omitted)); *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006) (explaining PTO Rule 56 standards of materiality); *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

## 5.2     LACHES

[Alleged infringer] contends that [patent holder] is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) [patent holder] delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) [alleged infringer] has been or will be prejudiced in a significant way due to [patent holder]'s delay in filing the lawsuit.  This is referred to as laches.  [Alleged infringer] must prove delay and prejudice by a preponderance of the evidence.

Whether [patent holder]'s delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.  This presumption shifts the burden of proof to [patent holder] to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if [patent holder] presents such evidence, the burden of proving laches remains with [alleged infringer].  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to [alleged infringer].  Facts and circumstances that can justify a long delay can include:

(1)     being involved in other litigation during the period of delay;

(2)     being involved in negotiations with [alleged infringer] during the period of delay;

(3)     poverty or illness during the period of delay;

(4)     wartime conditions during the period of delay;

(5)     being involved in a dispute about ownership of the patent during the period of delay; or

(6)      minimal amounts of allegedly infringing activity by [alleged infringer] during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if [alleged infringer] suffered material prejudice as a result of the delay.  Prejudice to [alleged infringer] can be evidentiary or economic.  Whether [alleged infringer] suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in [alleged infringer] not being able to present a full and fair defense on the merits to [patent holder]'s infringement claim.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Economic prejudice is determined by whether or not [alleged infringer] changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if [alleged infringer] could have switched to a noninfringing product if sued earlier), and also whether [alleged infringer]'s losses as a result of that change in economic position likely would have been avoided if [patent holder] had filed this lawsuit sooner.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances.  Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice).  You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

71

Authorities

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc).

***B.5     Equitable Defenses***

### 5.3     EQUITABLE ESTOPPEL

The owner of a patent may forfeit its right to any relief from an infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel" and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.  [Alleged infringer] must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

[Alleged infringer] contends that [patent holder] made a misleading communication about [ ] before [patent holder] filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact [patent holder] communicated with [alleged infringer] about [ ] prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to [alleged infringer] can be evidentiary or economic in form.  Whether [alleged infringer] suffered evidentiary harm is a question that must be answered by evaluating whether [alleged infringer] will be unable to present a full and fair defense on the merits of [patent holder]'s claim(s).  Not being able to present a full and fair defense on the merits of [patent

holder]'s claim(s) can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Whether [alleged infringer] suffered economic prejudice is a question that must be answered by evaluating whether [alleged infringer] changed its economic position as a result of its reliance on any misleading communication from [patent holder] about [ ], resulting in losses beyond merely paying for infringement (such as if [alleged infringer] could have switched to a noninfringing product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.

Authorities

35 U.S.C. § 282;  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

***B.5    Equitable Defenses***

## 5.4    PROSECUTION LACHES

The owner of a patent may be barred from enforcing claims of a patent against an infringer where: (1) there was an unreasonably long delay in filing the claims of the patent, and (2) the infringer, another private party, or the public will be prejudiced if the patent holder is entitled to enforce the patent despite the unreasonable delay in securing the claims of the patent.  This is referred to as prosecution laches, and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.

The delay that must be considered is the period of time beginning when [patent holder or its predecessor(s) in interest] filed the original application for a patent and ending when [patent holder or its predecessor(s) in interest] filed the application for the patent asserted in this lawsuit. [Patent holder] filed the original application for a patent on [ ], and filed the application for the patent asserted in this lawsuit on [ ].

Whether [patent holder]'s delay in securing the patent asserted in this lawsuit was unreasonably long is a question that must be answered, and you should consider the facts and circumstances as they existed during the period of delay.  In determining whether [alleged infringer], another private party, or the public will be prejudiced as a result of any unreasonably long delay in filing the claims of the patent(s) asserted in this case by considering whether [alleged infringer] or others invested time, money, and effort in developing, manufacturing, or selling products now covered by the patent(s) asserted in this case during the period of unreasonably long delay, whether other private parties have done so and may be potentially subject to infringement, and whether the time when the public will be able to freely practice the invention(s) now covered by the patent(s) asserted in this case was unduly and unfairly postponed as a result of delay.

75

You may also consider whether [patent holder] intentionally or deliberately delayed the time when it filed the claims of the patent(s) and whether [alleged infringer] or the public was aware that patent applications were pending that did or potentially could have covered the invention.

<u>Authorities</u>

35 U.S.C. § 282; *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159 (1938); *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175 (1938); *Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463 (1924); *Woodbridge v. United States*, 263 U.S. 50 (1923); *Kendall v. Winsor*, 62 U.S. 322 (1859); *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("[T]he equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution even though the applicant complied with pertinent statutes and rules."); *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 301 F. Supp. 2d 1147 (D. Nev. 2004) (patent claims unenforceable because eighteen- to thirty-nine-year delay in prosecuting patents was unreasonable and unjustified), *aff'd*, 422 F.3d 1378 (Fed. Cir. 2005); *see also In re Bogese II*, 303 F.3d 1362 (Fed. Cir. 2002) (affirming patent board's order of forfeiture of patent rights after twelve continuation applications over eight-year period and failure to advance prosecution of application).

***B.5.    Equitable Defenses***

## 5.5    UNCLEAN HANDS

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit.  This is referred to as "unclean hands," and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, [patent holder] acted in such an unfair way towards [alleged infringer] or the Court in the matters relating to the controversy between [patent holder] and [alleged infringer] that, in fairness, [patent holder] should be denied the relief it seeks in this lawsuit.  [Alleged infringer] must prove unclean hands by a preponderance of the evidence.

<u>Authorities</u>

35 U.S.C. § 282; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) (affirming dismissal of patent holder's complaints for unclean hands from suppressing evidence of prior use in another litigation); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) (affirming district court's finding of unclean hands when inventor added new material to signed and dated pages, but vacating judgment of unenforceability because unclean hands do not nullify grant of personal property).

***B.6    Patent Damages***

## 6.1    DAMAGES—INTRODUCTION

If you find that [alleged infringer] infringed any valid claim of the [ ] patent, you must then consider what amount of damages to award to [patent holder]. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate [patent holder] for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred.

[Patent holder] has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that [patent holder] establishes that it more likely than not suffered.

There are different types of damages that [patent holder] may be entitled to recover. In this case, [patent holder] seeks [insert as appropriate, e.g., lost profits, price erosion, lost convoyed sales, or a reasonable royalty]. Lost profits consist of any actual reduction in business profits [patent holder] suffered as a result of [alleged infringer]'s infringement. A reasonable royalty is defined as the money amount [patent holder] and [alleged infringer] would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages shortly. Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale; *fill in other infringing act*].

78

Committee Comments and Authorities

*See* 35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

A patent holder is not entitled to damages that are remote or speculative. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Lam*, 718 F.2d at 1067 (holding that lost profits, as well as the harm to the goodwill of the entire market stemming from the infringer's inferior product, were not remote or speculative, and thus recoverable). The Federal Circuit has opined, in *dicta*, that "remote consequences, such as a heart attack of the inventor or loss in value of shares of common stock of a patentee corporation caused indirectly by infringement are not compensable." *Rite-Hite*, 56 F.3d at 1546. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991).

When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the alleged infringer. *Lam*, 718 F.2d at 1064. Any such adverse consequences must rest on the alleged infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate records. *Id*.

***B.6     Patent Damages***

## 6.2     LOST PROFITS—"BUT FOR" TEST

[This instruction should only be given in the event the patent holder is seeking lost profits damages, in whole or in part.]

In this case, [patent holder] seeks to recover lost profits for some of [alleged infringer]'s sales of [infringing product], and a reasonable royalty on the rest of [alleged infringer]'s sales.

To recover lost profits (as opposed to reasonable royalties), [patent holder] must show a causal relationship between the infringement and [patent holder]'s loss of profit.  In other words, [patent holder] must show that, but for the infringement, there is a reasonable probability that [patent holder] would have earned higher profits.  To show this, [patent holder] must prove that, if there had been no infringement, [it would have made some portion of the sales that [alleged infringer] made of the infringing product,] [it would have sold more products that are functionally related to those products,] [it would have sold its products at higher prices,] [or it would have had lower costs].

[Patent holder] is entitled to lost profits if it establishes each of the following:

(1)     That there was a demand for the patented [product] [method] [product produced by the method].

(2)     That there were no available, acceptable, noninfringing substitute products, or, if there were, its market share of the number of the sales made by [alleged infringer] that [patent holder] would have made, despite the availability of other acceptable noninfringing substitutes.

(3)     That [patent holder] had the manufacturing and marketing capacity to make any infringing sales actually made by [alleged infringer] and for which [patent holder] seeks an award of lost profits—in other words, that [patent holder] was capable of satisfying the demand.

(4)    The amount of profit that [patent holder] would have made if [alleged infringer] had not infringed.

Committee Comments and Authorities

35 U.S.C. § 284; *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

The four-factor "but for" test was first articulated in *Panduit*, 575 F.2d at 1156, and has since been adopted by the Federal Circuit.  *See, e.g.*, *Rite-Hite*, 56 F.3d at 1545.  It is not, however, the only available method for proving lost profits.  *Id.*; *see also BIC*, 1 F.3d at 1218-19.

Once a patent holder has shown the four elements of the *Panduit* test, the burden then shifts to alleged infringer to show that patent holder's "but for" causation analysis is unreasonable under the specific circumstances.  *Rite-Hite*, 56 F.3d at 1545.


## LOST PROFITS—DEMAND

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

Authorities

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).


## LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY

To be an "acceptable, [noninfringing] substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product and a patent holder's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent

holder's and an alleged infringer's products.  On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

Authorities

*Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

**LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY**

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period.  Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement.  Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

Authorities

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (holding that an unused, but available, noninfringing process was an acceptable substitute); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the [alternative] machine at the time of infringement.").

## LOST PROFITS—CAPACITY

A patent holder is only entitled to lost profits for sales it could have actually made.  In other words, [patent holder] must show that it had the manufacturing and marketing capability to make the sales it said it lost.  This means [patent holder] must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

Authorities

*Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (finding that the patent holder, a young company, would have expanded to meet the increased demand created by the success of the patented product); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

## LOST PROFITS—AMOUNT OF PROFIT

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.  Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

Authorities

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

## LOST PROFITS—MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products.  A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available.  In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market.  Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

Authorities

*State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1557 (Fed. Cir. 1989); *BIC Leisure Prods.*, *Inc. v. Windsurfing Int'l*, *Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Micro Chem.*, *Inc. v. Lextron*, *Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, *Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001).

*B.6    Patent Damages*

### 6.3    LOST PROFITS—COLLATERAL SALES

[This instruction should only be given in the event that patent holder is seeking lost profits from collateral sales.]

In this case, [patent holder] is seeking lost profits from sales of [   ], which [patent holder] contends it would have sold along with the product it sells that competes with the infringing products [   ].  These products sold along with the competitive product are called collateral products.

To recover lost profits on sales of such collateral products, [patent holder] must establish two things.  First, [patent holder] must establish it is more likely than not that [patent holder] would have sold the collateral products but for the infringement.  Second, a collateral product and the competitive product together must be analogous to components of a single assembly or parts of a complete machine, or, in other words, they must constitute a single functional unit.

Recovery for lost profits on sales of collateral products must not include items that essentially have no functional relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.

Committee Comments and Authorities

The relationship required to recover lost profits on collateral sales is outlined in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc) (denying recovery for lost profits on collateral sales where nonpatented product lacked a functional relationship to the patented product); *see also State Indus.*, *Inc. v. Mar-Flo Indus.*, *Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works*, *Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

***B.6    Patent Damages***

## 6.4    LOST PROFITS—PRICE EROSION

[This instruction should only be given in the event that patent holder contends it should be compensated for price erosion.]

[Patent holder] can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, [patent holder] would have been able to charge higher prices for some of its products.  If this fact is established, you may award as additional damages the difference between:

(A) the amount of profits [patent holder] would have made by selling its product at the higher price, and

(B) the amount of profits [patent holder] actually made by selling its product at the lower price [patent holder] actually charged for its product.

This type of damage is referred to as price-erosion damage.

If you find that [patent holder] suffered price erosion, you may also use the higher price in determining [patent holder]'s lost profits from sales that were lost because of the infringement. In calculating [patent holder]'s total losses from price erosion, you must take into account any drop in sales that would have resulted from charging a higher price.

You may also award as damages the amount of any increase in [patent holder]'s costs, such as additional marketing costs, caused by competition from the infringing product.

86

<u>Authorities</u>

*Compare Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001) (upholding denial of price-erosion damages where patentee failed to show how higher prices would have affected demand for the patented product), *with Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003) (upholding award of price-erosion damages where patentee offered sufficient proof of an inelastic market that would support price increases without a drop in sales of the patented product); *see also Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1485 (Fed. Cir. 1990).

***B.6    Patent Damages***

## 6.5    REASONABLE ROYALTY—ENTITLEMENT

If you find that [patent holder] has established infringement, [patent holder] is entitled to at least

a reasonable royalty to compensate it for that infringement.  If you find that [patent holder] has

not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of

the infringing sales, then you must award [patent holder] a reasonable royalty for all infringing

sales for which it has not been awarded lost profits damages.

<u>Authorities</u>

35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009)
(vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. Tritech
Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply
Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109,
1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996);
*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

### B.6    Patent Damages

## 6.6    REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

Authorities

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores*, *Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

***B.6    Patent Damages***

### 6.7    REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to

the parties at the time the infringement began.  Some of the kinds of factors that you may

consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Committee Comments and Authorities

These are the so-called "*Georgia-Pacific*" factors, which can be considered in evaluating the hypothetical negotiations.  Although lengthy, the Committee believes it is necessary for all factors to be shared with the jury, so as to not unfairly emphasize any one factor.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker*, *Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard*, *Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions, Instructions 9.8 (2006), www.1b5.uscourts.gov/juryinstructions.

***B.6    Patent Damages***

### 6.8    DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must determine when the damages began.  Damages commence on the date that [alleged infringer] has both infringed and been notified of the alleged infringement of the [ ] patent [choose those that apply]:

Alternative A:

[Patent holder] and [alleged infringer] agree that date was [insert date].

Alternative B:

If you find that [patent holder] sells a product that includes the claimed invention, you must determine whether [patent holder] has "marked" that product with the patent number.  "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.  [Patent holder] has the burden of establishing that it substantially complied with the marking requirement.  This means [patent holder] must show that it marked substantially all of the products it made, offered for sale, or sold under the [ ] patent, [and that [patent holder] made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the [ ] patent marked the products].

[If [patent holder] has not marked that product with the patent number, you must determine the date that [alleged infringer] received actual notice of the [ ] patent and the specific product alleged to infringe.] [Actual notice means that [patent holder] communicated to [alleged infringer] a specific charge of infringement of the [ ] patent by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.  [However, [patent holder] claims to have

provided actual notice prior to filing of the complaint, on [date], when it [sent a letter to [alleged infringer]].  [Patent holder] has the burden of establishing that it is more probable than not [alleged infringer] received notice of infringement on [date].]

[If you find that [patent holder] *[choose A]* does not sell a product covered by the [ ] patent *[or choose B]* sells such a product but marks the product with the patent number, damages begin without the requirement for actual notice.  If you find that the [ ] patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began.  If you find that the [ ] patent was granted after the infringing activity began, damages should be calculated as of [date patent issued].]

Committee Comments and Authorities

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

Notice through marking is constructive notice.  *See Maxwell*, 86 F.3d at 1111-12 (holding that when 95% of patented product offered for sale was marked by licensee retailer with "patent pending," even after the patent had been granted and remaining 5% of product remained unmarked, constructive notice had been made under 35 U.S.C. § 287(a) where patentee demonstrated efforts to correct licensee's mistakes).

In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); *see Am. Med. Sys.*, 6 F.3d at 1538 ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method."). Accordingly, the calculation of damages for infringement of method claims should begin as of the date the patent issued or the date the infringement began, whichever was first.  *Crystal Semiconductor*, 246 F.3d at 1353.

93

*C.*     *Appendix*

## GLOSSARY

Some of the terms in this glossary will be defined in more detail in the legal instructions you are

given.  The definitions in the instructions must be followed and must control your deliberations.

Add any technical terms from the art involved that may be used during trial and have agreed

upon definitions.  Delete any of the following terms which may not be applicable in a particular

case.]

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and

Trademark Office and the public to determine quickly the nature and gist of the technical

disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in

response to an office action taken by an Examiner or independently by the patent applicant

during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and,

therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer,

becomes the owner of the rights assigned.

**Best Mode**: The best way the inventor actually knew to make or use the invention at the time of

the patent application.  If the applicant had a best mode as of the time the application was first

filed, it must be set forth in the patent specification.

94

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

95

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using, or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from

96

the date the patent application was filed (or 17 years from the date the patent issued).  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement**: A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.