**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PRELIMINARY PROPOSED JURY
INSTRUCTIONS AND JURY VERDICT FORM (REVISED)**

Defendant Lawson Software, Inc. ("Lawson"), by and through its undersigned counsel, hereby submits the following revised proposed jury instructions and jury verdict form for the trial in this action. None of the proposed instructions are substantively changed from the instructions Lawson filed on November 17, but the list of authorities for certain instructions has been revised to indicate where the model instructions have been modified given the facts of this case.

Lawson reserves its right to amend, supplement, or modify these proposed jury instructions and jury verdict form as the case proceeds through trial and based upon conferences with opposing counsel. Lawson does not waive any objections to instructions relating to issues that are or have been the subject of pending motions, including motions *in limine*. Neither does Lawson concede, by submitting the proposed instructions and verdict form that Plaintiff has met its evidentiary burden with respect to any of the issues to which the proposed instructions and verdict form pertain.

## TABLE OF CONTENTS

PRELIMINARY JURY INSTRUCTIONS ......................................................................1
     D-1:   The Nature of the Action and the Parties.......................................1
     D-2:   What a Patent Is and How One is Obtained ...............................2
     D-3:   Contentions of the Parties ..............................................................4
     D-4:   Patents at Issue ................................................................................5
     D-5:   Trial Procedure ...............................................................................6
     D-6:   Conduct of the Jury........................................................................7
     D-7:   Evidence in the Case........................................................................8
     D-8:   Expert Witnesses .............................................................................9
     D-9:   Use of depositions as evidence....................................................10
     D-10:  Burdens of Proof ...........................................................................11
     D-11:  Glossary of Patent Terms .............................................................12
POST TRIAL INSTRUCTIONS .................................................................................13
   General Instructions .........................................................................................13
     D-12:  Summary of Patent Issues ............................................................13
   Claim Construction ...........................................................................................14
     D-13:  The Role of the Claims of a Patent .............................................14
     D-14:  How a Claim Defines What it Covers ..........................................15
     D-15:  Independent and Dependent Claims.............................................16
     D-16:  Means-Plus-Function Claim Limitation ......................................17
     D-17:  Claim Construction for the Case ..................................................18
   Infringement ......................................................................................................21
     D-18:  Infringement – Generally..............................................................21
     D-19:  Direct Infringement.......................................................................22
     D-20:  Infringement Must Occur Under Normal Conditions.................23
     D-21:  Infringement - Means-Plus-Function Limitations ......................24
     D-22:  Indirect Infringement – Active Inducement ...............................25
     D-23:  Contributory Infringement ..........................................................26
     D-24:  Exhaustion .....................................................................................27
     D-25:  Infringement of Open-Ended or "Comprising" Claims ..............28
     D-26:  Joint Infringement.........................................................................29
   Invalidity ............................................................................................................30
     D-27:  Summary of Defenses ....................................................................30
     D-28:  Prior Art Defined .........................................................................31
     D-29:  Prior Patents and Patent Applications ........................................32
     D-30:  Prior Printed Publications ...........................................................33
     D-31:  Prior Public Use or Knowledge...................................................34
   Anticipation .......................................................................................................35
     D-32:  Anticipation ...................................................................................35
   Obviousness .......................................................................................................36
     D-33:  Obviousness ...................................................................................36
     D-34:  Scope and Content of the Prior Art .............................................38
     D-35:  Differences between the Claimed Invention and the Prior Art ..........39
     D-36:  Level of Ordinary Skill ................................................................40

      **D-37:  Secondary Factors Indicating Nonobviousness**................................**41**

**Willful Infringement** ...........................................................................................42

      **D-38:  Willful Infringement** ..........................................................................**42**

**Final Instructions** ................................................................................................43

      **D-39:  Final Instructions on Jury Deliberations**..........................................**43**

**PRELIMINARY JURY INSTRUCTIONS**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**D-1:   The Nature of the Action and the Parties**

ePlus is the owner of three patents, which are identified by the Patent Office Number: United States Patent No. 6,023,683 or the '683 Patent; United States Patent No. 6,055,516 or the '516 Patent; and United States Patent No. 6,505,172 or the '172 Patent.  The patents may also be referred to as "the patents in suit."

Lawson Software, Inc. is the Defendant in this case.  Lawson was founded in St. Paul, Minnesota in 1975.  Lawson sells business enterprise software.

**Authority:** AIPLA's Model Patent Jury Instructions, I (modified to fit the facts of this case).

**D-2:   What a Patent Is and How One is Obtained**

As I explained, this case involves a dispute related to three United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to first show you a short film about the patent system and then explain what a patent is and how one is obtained.

The video that I am about to show you directs you to a sample patent.  We have given you a copy of the sample patent so that you can follow along.

*[SHOW VIDEO – The Federal Judicial Center: "An Introduction to the Patent System."]*

Now that you have finished watching the video, let me take a moment to explain what a patent is and how one is obtained. Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use the invention.  The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO or submitted by the applicant for what is referred to as "prior art." The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time, i.e., whether each claim defines an invention that is new and not obvious in view of the prior art. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes subject matter that existed before the claimed invention. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the patent examiner is

called an "Office Action." If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner, and to change the claims or to submit new claims. This process may go back and forth for some time until the examiner is satisfied whether or not the application meets the requirements for a patent. The papers generated during these communications between the patent examiner and the applicant is called the "prosecution history."

A granted patent is presumed to be valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Lawson has proven that the patent is invalid.

I will now briefly explain the parties' basic contentions in more detail.

**Authority:** AIPLA's Model Patent Jury Instructions, I (modified to fit the facts of this case).

**D-3:   Contentions of the Parties**

ePlus contends that Lawson makes, uses, offers to sell, or sells products or services that infringe certain claims of the patents in suit.  ePlus must prove that Lawson infringes the patents in suit by a preponderance of the evidence.  That means that ePlus must show that it is more likely that Lawson's accused products and services infringe than that they do not infringe.

Lawson denies that it has infringed the patents in suit.  Lawson also contends that the patents in suit are invalid.  Lawson's contention that the patents in suit are invalid is based on its contention that the invention set forth in each claim was either anticipated or rendered obvious by existing inventions at the time the inventors of the patents in suit allegedly invented the claimed inventions.

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the patents in suit, you, the jury, have the ultimate responsibility for deciding whether the claims of the patents in suit are invalid.  Lawson must prove invalidity by clear and convincing evidence.  This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

**Authority:** AIPLA's Model Patent Jury Instructions, II (modified to fit the facts of this case).

**D-4:   Patents at Issue**

There are three patents at issue in this lawsuit.  They all relate to "systems and methods for interfacing product information, such as is typically found in vendor catalogs that are provided to customers, and requisition/purchasing systems and methods that may use the results of searches of product information."

ePlus is accusing Lawson of infringing twelve claims from these three patents.  Specifically, the accused claims are:

Claims 3, 26, 28, and 29 from the '683 patent
Claims 1, 2, 6, 21, 22, and 29 from the '516 patent; and
Claim 1 from the '172 patent.

I have already determined the meaning of some of the terms in these accused claims of the patents in suit.  You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

In this case, many of the terms I have defined are common, everyday terms that you will understand.  However, my definition may be different from your understanding of the ordinary meaning of these words.  For example, as you will see in the document listing my claim term definitions, I have given the term "catalog" a specific meaning that you must use to decide the issues in this case.

You will hear testimony from fact witnesses and see documents in this case that use some of these claim terms, like catalog, in their ordinary meaning.  These witnesses and documents are not using these terms as I have defined them and in many cases the fact witnesses and authors of the documents were unaware of how I defined these terms.  For example, if you hear a fact witness testify that some system has a catalog, do not assume that that witness is giving an opinion that that system has a catalog as I have defined it.  Likewise, if you see a document that indicates something is a catalog, do not assume the document is using the term as I have defined it.  On the other hand, you will hear testimony from expert witnesses who will use my specific definitions to give opinions applying my definitions of claim terms to the accused products or the prior art.  These expert witnesses will explicitly tell you that they are using a term as I have defined it.

**Authority:**  The Federal Circuit Bar Association Model Patent Jury Instructions, A.3 (modified to fit the facts of this case).

**D-5:   Trial Procedure**

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was to select you as jurors.  We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence.  In the third phase, ePlus goes first in calling witnesses to the stand.  The witnesses will be questioned by ePlus's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  After ePlus has presented its witnesses, Lawson will call its witnesses, who will be examined and cross-examined.  The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in.  You are to wait until all the evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase.  As with opening statements, the closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions.  In that phase, I will instruct you on the law.  I have already explained to you a little bit about the law.  But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts, and I decide questions of law.  I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language.  You must follow my explanation of the law and the patent claim language even if you do not agree with me.  Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**Authority:** AIPLA's Model Patent Jury Instructions, III.

**D-6:**   **Conduct of the Jury**

To ensure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me.  If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.  If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused.  If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth*, do not do any research or make any investigation on your own about any matter involved in this case.  By way of examples, that means you must not consult a dictionary, textbook, encyclopedia, talk with a person you consider knowledgeable, or go to the Internet for information about some issue or person in this case.  In fairness, learn about this case from the evidence you receive here at the trial and apply it to the law as I give it to you.

*Sixth*, cell phones are not permitted in the jury room during deliberation.

*Seventh*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

**Authority:** 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 101.11 (2001 5th ed.) (modified to fit the facts of this case).

**D-7:   Evidence in the Case**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, sworn deposition testimony of certain witnesses, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to [and all facts and events that may have been judicially noticed].

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

**Authority:** 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 103.30 (2001 5th ed.).

**D-8:   Expert Witnesses**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

**Authority:** 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 104.40 (2001 5th ed.).

**D-9:    Use of depositions as evidence**

During the trial, certain testimony may be presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The rules permit the testimony of certain witnesses to be presented by reading their prior deposition testimony into the record or by showing you excerpts of videotaped recordings of the deposition testimony. Such testimony is entitled to the same consideration as live testimony. You should judge its believability and weight and otherwise consider the testimony in the same way as if the witness had been present, and had testified from the witness stand.

**Authority:** 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 105.02 (2001 5th ed.) (modified to fit the facts of this case).

**D-10:  Burdens of Proof**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof."  In this case, the two burdens of proof that apply are called the "preponderance of the evidence" standard and the "clear and convincing evidence" standard.

The preponderance of the evidence standard requires that, for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true.  Here, to find the patents in suit infringed you must find that it is more likely than not that Lawson infringes the patent.

The clear and convincing evidence standard requires that, for a party to prevail, you must be persuaded that what the party seeks to prove is highly probably true.  Here, to find the patent claims in suit invalid, you must be left with a clear conviction that the claims are invalid.

You may have heard of a burden-of-proof standard that is used in criminal cases called "beyond a reasonable doubt" standard.  That requirement is the highest burden-of-proof standard. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

**Authority:** ABA Model Jury Instructions: Patent Litigation § 1 (modified to fit the facts of this case).

**D-11:  Glossary of Patent Terms**

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper of Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.  The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of the prior art.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

**Authority:** AIPLA's Model Patent Jury Instructions, III (modified to fit the facts of this case).

**POST TRIAL INSTRUCTIONS**

**General Instructions**

**D-12:  Summary of Patent Issues**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1.  Whether ePlus has proved that Lawson infringed any asserted claim of the patents in suit.

2.  Whether Lawson has proved that any of the asserted claims of the patents in suit are invalid.

**Authority:** AIPLA's Model Patent Jury Instruction, 1 (modified to fit the facts of this case).

**Claim Construction**

**D-13:  The Role of the Claims of a Patent**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**Authority:** The Federal Circuit Bar Association, Model Patent Jury Instructions, 2.1.

14

**D-14:  How a Claim Defines What it Covers**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim by claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

I did not define every claim term for you.  For those terms I did not define, you should apply the plain and ordinary meaning of the term as understood by one of ordinary skill in the art in the context of the patent.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

You should always apply the same scope or meaning of each word and phrase in each asserted claim, whether you are considering the infringement issue or the invalidity issue.

**Authority**: The Federal Circuit Bar Association, Model Patent Jury Instructions, 2.2 (modified to fit the facts of this case); For "comprising," *see, e.g., Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is open-ended and allows for additional steps."); for "consisting of," *see, e.g., Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006).

**D-15:  Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 26 of the '683 patent, for example, is an independent claim.

Claims that are not independent claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**Authority:** The Federal Circuit Bar Association, Model Patent Jury Instructions, 2.2a (modified to fit the facts of this case).

**D-16:   Means-Plus-Function Claim Limitation**

Claim 3 of the '683 patent uses the phrase "means for selecting the product catalogs." This "means for" phrase has a special meaning in patent law. It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claim, namely, "selecting the product catalogs." Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to the set of structures described in the '683 patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another. For purposes of this case, I have identified the set of structures described in the '683 patent that perform the function of "selecting the product catalogs." When I read you my definitions for certain claim terms, I will identify the structures described in the '683 patent for performing the relevant functions. You should apply my definition of the function and the structures described in the '683 patent for performing it as you would apply my definition of any other claim term.

**Authority:** The Federal Circuit Bar Association, Model Patent Jury Instructions, 2.3a; 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc*., 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp*., 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-plus-function limitation with two functions must perform both claimed functions and be an equivalent structure. Equivalence of structure can be shown here if the objects perform both identical functions in substantially the same way to achieve substantially the same result.); *Al-Site Corp. v. VSI Int'l Inc*., 174 F.3d 1308, 1318-21 (Fed. Cir. 1999) (distinguishing between means- or step-plus-function to equivalents available at time of issuance and application of doctrine of equivalents to after-arising inventions); *WMS Gaming Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1351 (Fed. Cir. 1999) ("The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a section 112, ¶ 6, claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."); *Odetics, Inc. v. Storage Tech. Corp*., 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998).

**D-17:   Claim Construction for the Case**

I will next define the meaning of some of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

"Subset" means: less than all of a set.

"Protocol" means: a procedure.

"Catalog" and "product catalog" mean: an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

"Order List" means: a list of desired catalog items.

"Matching items" means: the search results.

"Selected matching items" means: requisition items.

"Cross-reference table" means: a table that links vendors items determined to be equivalent between two or more different vendors.

"Electronic sourcing system" means: an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers or vendors.

"Converting data relating to a selected matching item and an associated source to data relating to an item and a different source" means: substituting data relating to a selected matching item and an associated source to data relating to an item and a different source. "Conversion" involves altering for more effective utilization.  Cross-referencing cannot accomplish conversion, as it is ordinarily defined, and is an inadequate construct of the claim term.

"Means for selecting the product catalogs to search" requires an element that performs the function of selecting the product catalogs to search.  The corresponding structure is a user interface that allows the user to select a catalog; a catalog module that selects product catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents.

"Means for searching matching items among the selected product catalogs" requires an element that performs the function of searching for matching items among the selected product catalogs.  The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for searching for matching items in the database" requires an element that

performs the function of searching for matching items in the database.  The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for building a requisition using data related to selected matching items and their associated source(s)" requires an element that performs the function of building a requisition using data relating to selected matching items and their associated source(s).  The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing the requisition to generate one or more purchase orders for the selected matching items" requires an element that performs the function of processing the requisition to generate on or more purchase orders for the selected matching items.  The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition; and its equivalents.

"Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" requires an element that performs the function of converting data relating to a selected matching item and an associated source to data relating to an item and a different source.  The corresponding structure is one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents.

"Means for entering product information that at least partially describes at least one desired item" requires an element that performs the function of entering product information that at least partially describes at least one desired item.  The corresponding structure is a user interface operating on a computer through which a user may provide input; and one or more software modules that provide product information describing an item or a combination thereof, and their equivalents.

"Means for searching for matching items that match the entered product information in the selected portions of the database" requires an element that performs the function of searching for matching items that match the entered product information in the selected portions of the database.  The corresponding structure is search programs and modules operating on a computer system with access to data in a database or other file system, and their equivalents.

"Means for generating an order list that includes at least one matching item selected by said means for searching" requires an element that performs the function of generating an order list that includes at least one matching item selected by said means for searching.  The corresponding structure is a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents.

"Means for building a requisition that uses data obtained for said database relating to

19

selected matching items on said order list" requires an element that performs the function of building a requisition that uses data obtained from said database relating to selected matching items on said order list. The corresponding structure is a requisition module operating on a computer system having access to data in the database, and its equivalents.

"Means for processing said requisition to generate purchase orders for said selected matching items" requires an element that performs the function of processing a requisition to generate purchase orders for selected matching items. The corresponding structure is a purchase order generation module operating on a computer system having access to the requisition, and its equivalents.

You should give the rest of the words in the claims and my definitions of them their ordinary meaning in the context of the patent specification and prosecution history.

**Authority:** *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996).

**Infringement**

**D-18: Infringement – Generally**

I will now instruct you as to the rules you must follow when deciding whether ePlus has proven that Lawson infringed any of the claims of the patents in suit.

If any person makes, uses, sells, or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the following patent claims, using the terms I defined, to the accused products and services, and determine whether or not Lawson directly infringes the following claims:

Claims 3, 26, 28, and 29 of the '683 patent.
Claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.
Claim 1 of the '172 patent.

In deciding the issue of infringement you may not compare Lawson's accused products to ePlus's commercial products. Rather, the only correct comparison is between Lawson's accused product and the language of the claim itself, as I have explained its meaning to you. You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claim terms I have defined while giving the remaining claim terms their plain and ordinary meaning. You must also consider the legal requirements for infringement, and the evidence presented to you by the parties.

A patent may be infringed directly or indirectly. I will first discuss direct infringement.

**Authority:** 35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*,517 U.S. 370 (1996).

**D-19:  Direct Infringement**

In this case, ePlus asserts that Lawson has directly infringed claims 3, 26, 28, and 29 of U.S. Patent Number 6,023,683 (which I will refer to as the "'683 Patent"), claims 1, 2, 6, 9, 21, 22, and 29 of U.S. Patent Number 6,055,516 (the "'516 Patent"), and claim 1 of U.S. Patent Number 6,505,172 (the "'172 Patent").

To determine direct infringement, you must compare the accused product with each claim that ePlus asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if Lawson makes, uses, offers for sale, or sells a product that includes each and every element in that patent claim.  If Lawson's product does not contain one or more elements recited in a claim, Lawson does not directly infringe that claim. You must determine direct infringement with respect to each patent claim individually.

If you find that any combination of products that ePlus alleges is an accused product is missing even one element of an asserted claim, you must find that the accused product is not directly infringing, even if it could be combined with other components that might supply the missing element.

Whether or not Lawson knew that what it was doing was an infringement does not matter.  A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

**Authority:** 35 U.S.C. § 271(a); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Trach & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Environtech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

**D-20:  Infringement Must Occur Under Normal Conditions**

A product does not infringe merely because it can be altered to infringe.  If ePlus fails to show that the accused product meets all the limitations of the claim without being altered, modified, or subjected to unnatural conditions, no infringement can be found.

A product does not infringe an asserted claim simply because it may be modified by an end user to infringe the claim.  Rather the product must, itself, infringe when sold.  A product does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.

**Authority:** *Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1257 (Fed. Cir. 2000); *High Tech Medical Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555–1556 (Fed. Cir. 1995).

**D-21:  Infringement - Means-Plus-Function Limitations**

As I have previously explained, claim 3 of the '683 patents include requirements that are in means-plus-function form.

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set of structures that perform(s) the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to the described structure(s) that I defined earlier as performing the function of "selecting the product catalogs." If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim. Alternatively, even if the product has a structure or a set of structures that performs the function recited in the claim but the structure or set of structures is not either identical to the structure(s) that I defined to you as being described in the '683 patent and performing this function, the product does not literally infringe the asserted claim.

In order to prove direct infringement by literal infringement of a means-plus-function limitation, ePlus must prove the above requirements are met by a preponderance of the evidence.

**Authority:** The Federal Circuit Bar Association, Model Patent Jury Instructions, 3.1b (modified to fit the facts of this case); 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003) (holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure performs the identical function recited in the claim and is identical or equivalent to the structure in the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**D-22:  Indirect Infringement – Active Inducement**

ePlus alleges that Lawson is liable for infringement by actively inducing others to directly infringe the patent claims at issue.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Lawson is liable for active inducement of a claim only if ePlus proves by a preponderance of the evidence that:

(1) Lawson took action during the time the patents in suit were in force intending to cause acts by others;

(2) Lawson was aware of the patents in suit and knew or should have known that the acts, if taken, would constitute infringement of the patents; and

(3) the acts are actually carried out by the others and directly infringe that claim.

ePlus asserts that Lawson induces its customers to infringe the asserted claims.  In order to establish active inducement of infringement, ePlus must prove by a preponderance of the evidence that Lawson's customers themselves directly infringe the claim.  However, proof of direct infringement by customers is not sufficient to prove that Lawson induced infringement.  Nor is it sufficient that Lawson was aware of the act(s) by its customers that allegedly constitute the direct infringement. Rather, you must find that Lawson specifically intended its customers to infringe the patents in suit, in order to find inducement of infringement.

**Authority:** The Federal Circuit Bar Association, Model Patent Jury Instructions, 3.2 (modified to fit the facts of this case); 35 U.S.C. § 271(b); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

**D-23:  Contributory Infringement**

ePlus also argues that Lawson is liable for contributory infringement by contributing to the direct infringement of the asserted claims of the patents in suit by Lawson's customers.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To prove contributory infringement, ePlus must prove five things by the preponderance of the evidence:

First, Lawson sells or offers to sell a component of a product or a product for use in a method to a third party, in this case Lawson's customers.

Second, the component or product that Lawson sells has no substantial, noninfringing use.

Third, the component or product constitutes a material part of the claimed invention that is not a staple article.

Fourth, Lawson is aware of the patents in suit and knows that the components or products were especially made or adapted for use in an infringing method.

And fifth, the third party's use of Lawson's component or product directly infringes the claim.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has substantial uses other than as a part or component of the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**Authority:** 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**D-24:  Exhaustion**

The sale of a product by the patent owner or under license from the patent owner terminates the patent owner's rights as to that product.  When such an item is made and sold, the patentee cannot further restrict use.

**Authority:** *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).

**D-25:   Infringement of Open-Ended or "Comprising" Claims**

The preamble of the claims uses the word "comprising."  The word "comprising" means "including the following but not excluding others."

If you find that Lawson's product includes all of the elements of one of the asserted claims, the fact that Lawson's product might include additional elements would not avoid infringement of that claim.

**Authority:** *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFg Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

**D-26:   Joint Infringement**

Generally, a patent claim is only infringed where the accused infringer is found to have practiced every limitation of the patent claim asserted.  One exception to this rule is called "joint infringement" where a party that does not practice every limitation of a certain claim may still be found to infringe the claim where it practices some limitations of the claim and directs or controls the actions of a third party to practice the remaining limitations of the claim.

In this case, ePlus alleges that Lawson infringes certain claims of the patents in suit by making, selling, offering for sale, or using only some of the limitations of these claims and by directing or controlling the actions of others to make, sell, offer for sale, or use the remaining limitations of the claim.

To prove joint infringement, ePlus must prove two things by the preponderance of the evidence:

First, Lawson practices some limitations of the infringed claim.

And second, Lawson directs or controls the actions of its customers or another so that those customers or others practice all the remaining limitations of the claim that Lawson itself does not practice.

Lawson can only be found to have infringed the asserted claims as a joint infringer if you find that it exercised control or direction over the entire practice of a claimed process or the entire manufacture of a clamed apparatus, such that practice of each limitation of the claim can be attributed to Lawson as the controlling party and mastermind who directed the process.  A contractual relationship between Lawson and the other party asserted to be practicing the remaining claim limitations, without more, does not establish the control and direction necessary to prove joint infringement.  There must be more.  Lawson must have exercised control over the system and obtained beneficial use of the system.

**Authority:** *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, Nos. 2009-1306, -1309, 2010 U.S. App. LEXIS 16455, at *37 (Fed. Cir. Aug. 9, 2010); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008); *BMC Res., Inc. v. Payment, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *Golden Hour Data Sys. v. emsCharts, Inc.*, 91 U.S.P.Q.2D 1565 (E.D. Tex. 2009), *aff'd* 2010 U.S. App. LEXIS 16455, at *37-39 (Fed. Cir. Aug. 9, 2010).

**Invalidity**

**D-27: Summary of Defenses**

Each of the asserted claims (whether in independent or dependent form) is presumed to be valid, independent of the validity of the other claims. Lawson has the burden of proving invalidity by clear and convincing evidence.

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful, and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Lawson's grounds for asserting invalidity.

Lawson has challenged the validity of all of the asserted patent claims on a number of grounds.

I will now explain to you each of Lawson's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**Authorities:** 35 U.S.C. § 282 ("A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001) ("Throughout the obviousness determination, a patent retains its statutory presumption of validity and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." (internal citations omitted)); *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984) ("[I]ncluded within the presumption of validity is a presumption of novelty, a presumption of nonobviousness and a presumption of utility, each of which must be presumed to have been met.").

**D-28:  Prior Art Defined**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before.  That which came before is referred to as the "prior art."

Lawson is relying some items that ePlus agrees are prior art, and other items that ePlus does not agree are prior art.  Lawson must prove by the clear and convincing standard that the items that are in dispute are prior art.  In order to do so, Lawson must prove that these items fall within one or more of the different categories of prior art recognized by the patent laws.  These categories include:

First, any product that was publicly known or used by others in the United States before the patented invention was made, which in this case is August 10, 1994;

Second, patents that issued more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

Third, publications having a date more than one year before the filing date of the patent, or before the invention was made, which in this case is August 10, 1994;

Fourth, any product that was in public use or on sale in the United States more than one year before the patent was filed;

Fifth, the invention was described in a published application for patent by another filed in the United States before the invention by the applicant for patent;

Sixth, the invention was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent; and

Seventh, any other information or activity that the patent owner has admitted is prior art.

**Authority:** 35 U.S.C. § 102; *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003).

**D-29: Prior Patents and Patent Applications**

An issued patent may be prior art to a patent claim under a number of different circumstances.

First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before the subject matter of the patents in suit was invented.

Second, a U.S. patent may be prior art to a patent claim even if the patent issued after the filing date patents in suit.  This occurs when the patent application for the U.S. patent was filed by another person before the subject matter of the patents in suit was invented.

In this case, Lawson relies on the following as prior art patents to the patents in suit:

1.   Johnson et al. (U.S. Patent No. 5,712,989);

2.   King et al. (U.S. Patent No. 5,319,542);

3.   Dworkin (U.S. Patent No. 4,992,940).

In this case, ePlus admits that the King and Dworkin patents are prior art.  ePlus only disputes that the Johnson patent is prior art.

**Authority:** 35 U.S.C. §§ 102(a), (b), & (e); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991).

**D-30:  Prior Printed Publications**

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles, or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art.  It will also be prior art if it was published before the invention date of the patents in suit, in this case August 10, 1994.

In this case, Lawson relies on the following as prior printed publications to the asserted claims:

1.    IBM Technical Viewer/2, General Information Manual;

2.    IBM Technical Viewer/2 brochure.

3.    The P.O. Writer Plus V.10 manual;

4.    The J-Con Vol. 1 manual;

5.    The J-Con Vol. 3 manual;

6.    The J-Con RDB Guide;

7.    TV Interactive Electrical Technical Manuals;

8.    Fisher RIMS brochure (from RIMS trademark file history).

**Authorities:** *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn*, 890 F.2d 1158, 1159-61 (Fed. Cir. 1989); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *Mass. Isnt. of Tech. v. AB Fortia*, 774 F.2d 1104, 1108-09 (Fed. Cir. 1985); *In re Wyer*, 655 F.2d 221, 225 (C.C.P.A. 1981).

**D-31:  Prior Public Use or Knowledge**

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances.  The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent, which in this case was August 10, 1994.  The second is where the invention was publicly used by anyone more than one year before the application for the patent was filed.  In both circumstances, the public use must have been in the United States.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public.  Private or secret knowledge or use by another is not prior art.

You may rely on multiple sources of evidence to prove what was in public use more than one year before the application filing date or before the invention date.

In this case, Lawson relies on the following public uses:

1.      The Fisher Scientific Requisition and Inventory Management System (RIMS);

2.      The P.O. Writer Plus V.10 system;

3.      The J-Con system;

4.      IBM Technical Viewer/2 System.

**Authority:** *Engate, Inc. v. Esquire Deposition Servs., LLC*, 331 F. Supp. 2d 673, 687 (N.D. Ill. 2004) ("However, the basis for our conclusion that Claim 5 is invalid is that the technology described in the claim was in public use prior to the critical date. The Court cites the articles as evidentiary support for what technology was in use in the CICs, not as an independent ground for finding the claim invalid. The Court can rely on several sources to describe all the technological elements available in the courtrooms that -- when used together -- constituted functionalities claimed in Engate's patents."); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1352 (Fed. Cir. 2004), reversed on other grounds, *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 126 S.Ct. 980 (2006) ("[T]he undisputed evidence [of prior use] combined contemporaneous correspondence, color photographs, witness testimony, and promotional videos.  Together, it established numerous points of identity between the Unitherm process and the patented process."); *Mitsubishi Elec. Corp. v. Ampex Corp.*, 190 F.3d 1300 (Fed. Cir. 1999) (relying on combination of testimonial, documentary, and opinion evidence to show prior public use).

**Anticipation**

**D-32:   Anticipation**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Lawson must prove with clear and convincing evidence that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single system or item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular art.

In this case, certain claims asserted by ePlus include elements requiring "one or more" of a certain product feature.  A piece of prior art that includes either one of that product feature or more than one of that product feature and otherwise anticipates an asserted claim renders the asserted claim invalid.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently resulted from its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure at the time of the disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated at the time of the disclosure can still be an invalidating anticipation.

**Authority:** *Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988).

**Obviousness**

**D-33:  Obviousness**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Lawson contends that all of the asserted claims of the patents in suit are invalid because the claimed invention is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

When determining whether it would have been obvious for a person of skill in the art to combine two pieces of prior art, you may use your own common sense given the facts presented to you.

The following factors must be evaluated to determine whether Lawson has established that the claimed inventions are obvious:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patents and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Lawson must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

**Authority:** *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-*

*Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

**D-34:  Scope and Content of the Prior Art**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  The prior art includes the following items received into evidence during the trial:

In this case, Lawson contends that the following items are prior art:

1.     The Fisher Scientific Requisition and Inventory Management System (RIMS);

2.     Johnson et al. (U.S. Patent No. 5,712,989);

3.     King et al. (U.S. Patent No. 5,319,542);

4.     Dworkin (U.S. Patent No. 4,992,940);

5.     The P.O. Writer Plus V.10 system as described in the P.O. Writer Plus V.10 manual;

6.     The J-CON system as described in the J-CON Vol. 1 manual, the J-CON Vol. 3 manual, and the J-CON RDB Guide;

7.     The IBM Technical Viewer/2 System;

8.     IBM Technical Viewer/2, General Information Manual;

9.     IBM Technical Viewer/2 brochure;

10.    TV/2 Video (DX112).

You must determine what is the prior art that may be considered in determining whether the patents in suit are obvious.  A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond the main purpose that a person of ordinary skill in the art would reasonably use to solve the same problem(s) faced by the inventor(s).

**Authority:** *KSR Int'l Co. v.* Teleflex *Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

**D-35:  Differences between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  You should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

**Authority:** *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

**D-36:  Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of electronic procurement.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

A person of ordinary skill in the art is a person in the field of computer science with an undergraduate Bachelor of Science degree and some practical programming experience, perhaps about a year or two of experience, and having an understanding of basic principles of supply chain management and procurement in the 1993 to mid-1994 time frame.

**Authority:** *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-18 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).

**D-37:  Secondary Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  These factors are:

1.    Was there long-felt need for a solution to the problems facing the inventors, which was satisfied by the claimed invention?

2.    Did others try, but fail, to solve the problem solved by the claimed invention?

3.    Did others copy the claimed invention?

4.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

5.    Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.  If Lawson has made a strong showing that the claimed inventions are obvious apart from these secondary factors, however, then these secondary considerations might not overcome such a strong showing.  Moreover, these secondary factors of nonobviousness are only relevant if ePlus has proven there is a nexus or direct connection between the merits of the claimed inventions and the evidence of the secondary factors.

In order for commercial success to show that a patent claim is not obvious, ePlus must establish that the commercial product sales were a direct result of the unique characteristics of the features in the patent claim.  Expert testimony may be necessary to compare commercial products to claims.

**Authority:** *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416, 427 (2007); *Graham v. John Deer Co.*, 383 U.S. 1, 17-18 (1966); *U.S. v. Adams*, 383 U.S. 39, 52 (1966); *Wyers v. Master Lock Co.*, 95 U.S.P.Q.2d 1525 (Fed. Cir. 2010); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983); *WiAV Solutions LLC v. Motorola, Inc.*, No. 3:09cv447, 2010 U.S. Dist. LEXIS 80448, at *20 (E.D. Va. Aug. 10, 2010).

**Willful Infringement**

**Lawson contends that willfulness should not be tried to the jury. In that case, none of the following instructions would be needed. To preserve its rights, Lawson conditionally proposes the following instruction regarding willfulness, only to be used if necessary.**

**D-38:  Willful Infringement**

If you find by a preponderance of the evidence that Lawson infringed ePlus's patent, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that Lawson acted with "reckless disregard" of the claims of the patents in suit prior to the filing date of this lawsuit. To show "reckless disregard," ePlus must show by clear and convincing evidence that:

1. Lawson was aware of ePlus's patents when infringement began,

2. Lawson acted despite an objectively high likelihood that its actions infringed a valid patent, and

3. The objectively high likelihood of infringement was either known or so obvious that it should have been known to Lawson.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Lawson intentionally copied the claimed invention or a product covered by ePlus's patent, whether Lawson relied on competent legal advice, and whether Lawson presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

When determining whether any infringement was willful, you must undertake a two-step inquiry. First, you must consider whether Lawson's behavior was objectively reasonable. If Lawson had a good faith invalidity or noninfringement defense, this fact weighs in favor of a finding that Lawson was objectively reasonable. The facts can show that Lawson was objectively reasonable even if Lawson did not know about those facts. If you find that Lawson's behavior was objectively reasonable, Lawson cannot be found to have willfully infringed the patents in suit. If you find that Lawson's behavior was not objectively reasonable, you must then consider whether Lawson acted despite an objectively-defined risk that was either known or so obvious that it should have been known to Lawson.

**Authority:** *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

**Final Instructions**

**D-39:  Final Instructions on Jury Deliberations**

That concludes my instructions on patent law. I will now give you some final instructions about conducting your deliberations and returning your verdict.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans for either side in this case. You are judges - judges of the facts. Your only job is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone - including me - how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decisions that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

**Authority:** 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions, § 103.50 (2001 5th ed.).

## DEFENDANT'S PROPOSED JURY VERDICT FORM

You must consider each question of this Special Verdict Form and answer the questions according to the instructions.

### **Patent Invalidity**

1) Did Lawson prove by clear and convincing evidence that any of the asserted claims are invalid in view of the prior art, either because the claims are obvious, or they are anticipated?

    a)     Yes     _____   (Finding is in favor of Lawson)

    b)     No     _____   (Finding is in favor of ePlus)

*If your answer to question 1 is "No," go to Question No. 2.*

*If your answer to question 1 is "Yes," which claims are invalid in view of prior art?*

| | | |
|---|---|---|
| Claim 3 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 26 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 28 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '172 Patent | ☐ Yes | ☐ No |

*If you answered "yes" to all of the above claims, STOP. Otherwise, go to Question 2.*

2)      Did Lawson prove by clear and convincing evidence that any of the asserted claims of the '516 patent are invalid for failing to meet the written description requirement?

Yes      _____ (Finding is in favor of Lawson)

No       _____ (Finding is in favor of ePlus)

*If your answer to question 2 is "No," go to Question No. 3.*

*If your answer to question 2 is "Yes,"* which claims are invalid?

Claim 1 of the '516 Patent          ☐ Yes          ☐ No

Claim 2 of the '516 Patent          ☐ Yes          ☐ No

Claim 6 of the '516 Patent          ☐ Yes          ☐ No

Claim 9 of the '516 Patent          ☐ Yes          ☐ No

Claim 21 of the '516 Patent         ☐ Yes          ☐ No

Claim 22 of the '516 Patent         ☐ Yes          ☐ No

Claim 29 of the '516 Patent         ☐ Yes          ☐ No

*Go to the next question.*

## Accused Products: Infringement

3)      Did ePlus prove by a preponderance of the evidence that Lawson's accused software has multiple catalogs?

Yes      _____ (Finding is in favor of ePlus)

No       _____ (Finding is in favor of Lawson)

4)      Did ePlus prove by a preponderance of the evidence that Lawson's accused software has means for converting data related to a selected matching item and an associated source to data relating to an item and a different source?

Yes      _____ (Finding is in favor of ePlus)

No       _____ (Finding is in favor of Lawson)

5)   Did ePlus prove by a preponderance of the evidence that Lawson's software has a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

*If you answered "No" to Questions 3, 4, and 5, STOP.  If you answered "Yes" to any of Questions 3, 4, or 5, CONTINUE*

**6)   S3 PROCUREMENT (Inventory Control, Requisition, and Purchase Order Modules)**

a)   <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the S3 Procurement software combination of the inventory control module, the requisition module, and the purchase order module?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

*If your answer to question 6(a) is "No," go to Question No. 6(b).*

*If your answer to question 6(a) is "Yes,"* which claims did Lawson directly infringe?

Claim 1 of the '516 Patent          ☐ Yes          ☐ No

Claim 2 of the '516 Patent          ☐ Yes          ☐ No

Claim 6 of the '516 Patent          ☐ Yes          ☐ No

Claim 9 of the '516 Patent          ☐ Yes          ☐ No

*Go to the next question.*

b) <u>Indirect Infringement:</u>  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the S3 Procurement software combination of the inventory control module, the requisition module, and the purchase order module?

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

*If your answer to question 6(b) is "No," go to Question No. 7.*

*If your answer to question 6(b) is "Yes,"* which claims did the third party directly infringe?

| | | |
|---|---|---|
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

c) *If your answer to question 6(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)?

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

*Go to the next question.*

d) *If your answer to question 6(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringement of the claim(s)?

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

*Go to the next question.*

**7)** **Requisition Self-Service (RSS)**

a) <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the combination of the inventory control module, the requisition module, the purchase order module, and the Requisition Self-Service (RSS) application?

Yes      _____  (Finding is in favor of ePlus)

No       _____  (Finding is in favor of Lawson)

*If your answer to question 7(a) is "No," go to Question No. 6(b).*

*If your answer to question 7(a) is "Yes,"* which claims did Lawson directly infringe?

| | | |
|---|---|---|
| Claim 3 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 2 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 6 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 9 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 21 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 22 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '516 Patent | ☐ Yes | ☐ No |
| Claim 1 of the '172 Patent | ☐ Yes | ☐ No |

*Go to the next question.*

b)  <u>Indirect Infringement:</u>  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the combination of the inventory control module, the requisition module, the purchase order module, and the Requisition Self-Service (RSS) application?

Yes  _____  (Finding is in favor of ePlus)

No  _____  (Finding is in favor of Lawson)

*If your answer to question 7(b) is "No," go to Question No. 8.*

*If your answer to question 7(b) is "Yes,"* which claims did the third party directly infringe?

Claim 3 of the '683 Patent  ☐ Yes  ☐ No

Claim 1 of the '516 Patent  ☐ Yes  ☐ No

Claim 2 of the '516 Patent  ☐ Yes  ☐ No

Claim 6 of the '516 Patent  ☐ Yes  ☐ No

Claim 9 of the '516 Patent  ☐ Yes  ☐ No

Claim 21 of the '516 Patent  ☐ Yes  ☐ No

Claim 22 of the '516 Patent  ☐ Yes  ☐ No

Claim 29 of the '516 Patent  ☐ Yes  ☐ No

Claim 1 of the '172 Patent  ☐ Yes  ☐ No

*Go to the next question.*

c)  *If your answer to question 7(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)?

Yes  _____  (Finding is in favor of ePlus)

No  _____  (Finding is in favor of Lawson)

*Go to the next question.*

d)   *If your answer to question 7(b) is "Yes," did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringe the claim(s)?*

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

*Go to the next question.*

## 8)   S3 Procurement Punchout

a)   <u>Direct Infringement:</u>  Did ePlus prove by a preponderance of the evidence that Lawson controls third party vendors who operate Punchout websites?

Yes   _____   (Finding is in favor of ePlus)

No   _____   (Finding is in favor of Lawson)

*If your answer to question 8(a) is "No," go to Question 9.*

*If your answer to question 8(a) is "Yes," go to Question 8(b).*

50

b)  Did ePlus prove by a preponderance of the evidence that Lawson directly infringed any of the asserted claims by making, using, selling, or offering for sale the combination of the inventory control module, the requisition module, the purchase order module, and the Procurement Punchout application?

Yes _____ (Finding is in favor of ePlus)

No _____ (Finding is in favor of Lawson)

*If your answer to question 8(b) is "No," go to Question No. 8(c).*

*If your answer to question 8(b) is "Yes,"* which claims did Lawson directly infringe?

Claim 3 of the '683 Patent          ☐ Yes          ☐ No

Claim 1 of the '516 Patent          ☐ Yes          ☐ No

Claim 2 of the '516 Patent          ☐ Yes          ☐ No

Claim 6 of the '516 Patent          ☐ Yes          ☐ No

Claim 9 of the '516 Patent          ☐ Yes          ☐ No

Claim 21 of the '516 Patent         ☐ Yes          ☐ No

Claim 22 of the '516 Patent         ☐ Yes          ☐ No

Claim 29 of the '516 Patent         ☐ Yes          ☐ No

Claim 1 of the '172 Patent          ☐ Yes          ☐ No

*Go to the next question.*

c)   Indirect Infringement:  Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted claims by making, using, selling, or offering for sale the combination of the inventory control module, the requisition module, the purchase order module, and the Procurement Punchout application?

Yes   _____ (Finding is in favor of ePlus)

No   _____ (Finding is in favor of Lawson)

*If your answer to question 8(c) is "No," go to Question No. 9.*

*If your answer to question 8(c) is "Yes,"* which claims did the third party directly infringe by using the combination of the inventory control module, the requisition module, the purchase order module, and the Procurement Punchout application?

Claim 3 of the '683 Patent   ☐ Yes   ☐ No

Claim 1 of the '516 Patent   ☐ Yes   ☐ No

Claim 2 of the '516 Patent   ☐ Yes   ☐ No

Claim 6 of the '516 Patent   ☐ Yes   ☐ No

Claim 9 of the '516 Patent   ☐ Yes   ☐ No

Claim 21 of the '516 Patent   ☐ Yes   ☐ No

Claim 22 of the '516 Patent   ☐ Yes   ☐ No

Claim 29 of the '516 Patent   ☐ Yes   ☐ No

Claim 1 of the '172 Patent   ☐ Yes   ☐ No

*Go to the next question.*

d)   *If your answer to question 8(c) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s) with the Punchout application?

Yes   _____ (Finding is in favor of ePlus)

No   _____ (Finding is in favor of Lawson)

*Go to the next question.*

e)   *If your answer to question 8(c) is "Yes," did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringement of the claim(s) with the Punchout application?*

Yes   \_\_\_\_\_   (Finding is in favor of ePlus)

No    \_\_\_\_\_   (Finding is in favor of Lawson)

*Go to the next question.*

f)   Has ePlus proved by preponderance of the evidence that Lawson specifically intended to induce infringement?

Yes   \_\_\_\_\_   (Finding is in favor of ePlus)

No    \_\_\_\_\_   (Finding is in favor of Lawson)

*Go to the next question.*

9)   **Method claims**

a)   <u>Direct infringement</u>: Do you find that ePlus has proved by a preponderance of the evidence that Lawson directly infringed by practicing each step of any of the asserted method claims (claims 26, 28, and 29 of the '683 patent)?

Yes   \_\_\_\_\_   (Finding is in favor of ePlus)

No    \_\_\_\_\_   (Finding is in favor of Lawson)

*If your answer to question 9(a) is "No," go to Question No. 9(b).*

*If your answer to question 9(b) is "Yes," which claims did Lawson directly infringe?*

Claim 26 of the '683 Patent          ☐ Yes          ☐ No

Claim 28 of the '683 Patent          ☐ Yes          ☐ No

Claim 29 of the '683 Patent          ☐ Yes          ☐ No

*Go to the next question.*

b)   <u>Indirect Infringement</u>: Did ePlus prove by a preponderance of the evidence that a third party directly infringed any of the asserted method claims by practicing each step of any of the asserted method claims

53

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

*If your answer to question 9(b) is "No," go to Question No. 10.*

*If your answer to question 9(b) is "Yes,"* which claims did the third party directly infringe?

| | | |
|---|---|---|
| Claim 26 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 28 of the '683 Patent | ☐ Yes | ☐ No |
| Claim 29 of the '683 Patent | ☐ Yes | ☐ No |

c)   *If your answer to question 9(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson induced the third party to directly infringe the claim(s)

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

d)   *If your answer to question 9(b) is "Yes,"* did ePlus prove by a preponderance of the evidence that Lawson contributed to the third party's direct infringement of the claim(s)?

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

e)   Has ePlus proved by a preponderance of the evidence that Lawson specifically intended to induce infringement?

Yes       _____   (Finding is in favor of ePlus)

No        _____   (Finding is in favor of Lawson)

*If your answer to question 9(e) is "No," you are FINISHED.  Please sign the verdict form and return it to the bailiff.*

*If your answer to question 9(e) is "Yes,"* when did Lawson have specific intent to induce infringement?

Date: _____

*You are FINISHED.  Please sign the verdict form and return it to the bailiff.*

54

LAWSON SOFTWARE, INC.

By_____/s/_____
              Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of November, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*