# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS, INC., ) | |
| ) | |
| ) | Civil Action No. 3:09-cv-620 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LAWSON SOFTWARE, INC. ) | |
| ) | |
| ) | |
| Defendant. ) | |

**REPORT OF EXPERT MICHAEL I. SHAMOS, PH.D, J.D.**
<u>**CONCERNING INVALIDITY**</u>

.

the '989 patent was single-source and the asserted claims require purchases from multiple sources, market pressure would provide a motivation to combine RIMs with the '940 patent.

228. During prosecution of the '683 and '516 patents, the Patent Office found that the '940 disclosed all of the claim elements except: 1) converting items found in one vendor's catalog to another vendor; and 2) searching only portions of a catalog database. During the prosecution of the '172 patent, the Applicant argued that Dworkin did not teach a single requisition that could include multiple items and be sourced to different vendors. It is my opinion that the RIMS system teaches these missing elements (as described more fully in Exhibits 3 and 4). Additionally, the '940 patent at least implicitly recognized a need to search a subset of the database – it required a user to first select a category of items to search (hardware vs. software). Thus, it would have been obvious to combine the teaching of RIMS that allowed users to search portions of the RIMS database (see exhibit 3). Further, the '940 patent recognized that items might have two product numbers (a number identifying the product in the database and a manufacturer's model number), thus it would have been obvious to combine the '940 patent with the cross-reference table in RIMS to associate these different numbers together. Finally, to the extent that the '940 patent is deemed not to teach a single requisition that could include multiple items and generate multiple purchase orders (I believe it does teach this element as shown in Exhibit 3), it would have been obvious to combine it with RIMS which teaches multiple purchase orders from a single requisition ('989 patent, Fig. 5A).

**The Combination of J-CON Plus Dworkin '940 Renders the Asserted Claims Obvious**

229. It is my opinion that J-CON anticipates all the Asserted Claims.

230. To the extent that J-CON is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with the Dworkin '940 patent. The combination teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4). As such, the combination of J-Con and the '940 patent renders these claims invalid under 35 U.S.C. §103.

231. One of skill in the art would have been motivated to make the combination because

232. One of skill in the art would also have been motivated to make the combination because the '940 patent states, "It is another object to provide a system and method which facilitates the processing of orders for goods or services transmitted by a user." 3:9-11. This capability is provided by J-CON.

233. Furthermore, the '940 patent provided the multi-source capability demanded by the industry at and before the time of the invention.

234. Additionally, the J-CON system included features that one or ordinary skill in the art would have been motivated to use with the '940 invention, including the ability to electronically determine the current availability in the inventory at multiple locations, to perform a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected, and the ability to generate multiple purchase orders from a single requisition (as described above and in detail in Exhibit 3).

### The Combination of J-CON and P.O. Writer Renders the Asserted Claims Obvious

235. It is my opinion that J-CON anticipates all the Asserted Claims. It is also my opinion that P.O. Writer anticipates all of the asserted claims.

236. To the extent that J-CON and/or P.O. Writer are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with P.O. Writer. The same reasons for making the previous two combinations apply to combining the J-CON system as described in the "J-CON Manual" with P.O. Writer Plus V. 10 as described in the P.O. Writer Plus Manual. The P.O. Writer Plus V. 10 system provided the multi-vendor capability demanded by the industry at and before the time of the invention. The J-CON system included features that one or ordinary skill in the art would have been motivated to use with the PO Writer system, including additional details about

performing a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.

### The Combination of J-CON and Gateway Renders the Asserted Claims Obvious

237. It is my opinion that J-CON anticipates all the Asserted Claims. It is also my opinion that the Gateway 2000/MRO system anticipates all of the asserted claims.

238. To the extent that J-CON and/or Gateway are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with Gateway. The same reasons for making the previous three combinations apply to combining the J-CON system with the Gateway system.

239. Additionally, the J-CON system had a sophisticated system for keeping track of equivalent items, dividing them into "Replaced Parts," "Substitute Parts," and "Can-Use Parts" and a number of different methods of converting among item numbers and substituting alternate parts that one of ordinary skill would have been motivated to use with the Gateway system. (See, e.g., L0124837; L0123551). Similarly, the Gateway Manual discloses in detail how to select a subset of catalogs from a collection of catalogs and then limit a search for items to the selected subset of catalogs, which one of ordinary skill would have been motivated to use with J-CON system. (See, e.g., SAP_2531709-10, SAP_2531615-16, L0128380).

### Secondary Considerations

240. I understand that ePlus contends that secondary considerations demonstrate that the invention is not obvious. (See, e.g., "Plaintiff ePlus Inc.'s First Supplemental Answers and Objections to Defendant Lawson Software, Inc.'s Second Set of Interrogatories" (hereinafter, "Rog. 6").) I understand that ePlus will allege commercial success, demand for the patented product, and praise by others. While I reserve the right to reply to these arguments after I have reviewed ePlus's expert report, the evidence ePlus intends to present (as I currently understand it) does not demonstrate a nexus between these secondary considerations and the claimed invention.

'516 claims 1, 2, 6, 9, 21, 22, 29.

'683 claims 3, 6, 28, 29.

272. The following claims, as detailed above and in Exhibits 3 and 4, are invalid as lacking enablement:

'516 claims 1, 2, 6, 9, 21, 22, 29.

273. The following claims, as detailed above and in Exhibits 3 and 4, are invalid as not reciting statutory subject matter, also including hybrid claims:

'516 claims 1, 2, 6, 9, 21, 22, 29.

Executed on May 5, 2010, in Pittsburgh, PA.

_Michael Ian Shamos_
Michael Ian Shamos, Ph.D., J.D.