**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN OPPOSITION TO
ePLUS INC'S MOTION TO ENFORCE PRIOR COURT ORDERS**

## I.      INTRODUCTION

While styled as a "Motion to Enforce Prior Court Orders," ePlus, Inc.'s ("ePlus") motion is rather a series of previously waived witness objections, untimely motions in limine on moot issues and a stealth motion for summary judgment, all of which are predicated on inaccurate statements about the evidence that Lawson Software, Inc. ("Lawson") has advised ePlus that it intends to present.

For example, in the second sentence of its supporting Memorandum, ePlus states that Lawson "has recently informed ePlus – only weeks before trial – that it intends to introduce testimony and evidence that the Court has already excluded – in some instances, repeatedly." Plaintiff ePlus, Inc's Brief in Support of its Motion to Enforce Prior Court Orders [Doc. #526] (hereinafter "ePlus Mem.") at 1. This statement is incorrect in several respects. First, Lawson did not "recently inform ePlus" about any testimony or evidence. As one example, both of the fact witnesses that ePlus seeks to exclude, Jeff Hvass and Richard Lawson, were identified during discovery, deposed by ePlus, listed on Lawson's Witness List (filed August 6, 2010) and

listed in the Final Pretrial Order.  *See* Final Pretrial Order [Doc. No. 480], Appendix 2.  Prior to its recent motion, ePlus never raised any objection to either witness – even when the Court specifically asked if ePlus had any objections to Lawson's witnesses at the Final Pretrial Conference -- and thus has waived any objection to their testimony.  *See* Transcript of Final Pretrial Conference, Sept. 27, 2010 at 6 (cited portions attached as Ex. A).

Second, the evidence that Lawson actually intends to offer at trial – as opposed to what ePlus wrongly claims Lawson intends to offer -- has never been excluded by any prior Order of the Court.  Again using Mr. Lawson as an example, ePlus asserts that "Defendant has suggested that Mr. Lawson will offer testimony about prior versions of Defendant's software – the so-called 'Legacy Systems.'  Mr. Lawson will opine about the development, functionality and features of the prior versions of Defendant's software ..."  *See* ePlus Mem. at 3.  To the contrary, Lawson stated the exact opposite to ePlus on multiple occasions, including in a meet and confer telephone conference on November 17, 2010 and in a letter dated November 29, 2010 and made clear that Mr. Lawson would *not* testify about Lawson's legacy systems.  *See* Nov. 29, 2010 Letter from William D. Schultz to Michael Strapp at 4 (attached as Ex. B).[1]  Indeed, given Lawson's unequivocal representations to ePlus that Mr. Lawson's testimony will relate to the accused products and not the legacy systems or any invalidity issues, Lawson is at a loss to understand how ePlus could claim otherwise.

---

[1]     In its November 29 letter, Lawson very clearly stated that Mr. Lawson's testimony was limited to the accused systems and did *not* include the excluded legacy systems.  *See* Ex. B at 4 (Mr. Lawson "will not offer testimony excluded by the Court regarding the legacy systems."); ("Mr. Lawson will also testify with respect to development of *the accused products*." . . . "Mr. Lawson will testify as to the facts regarding the procedures in place at Lawson to develop *the accused systems* and Lawson's lack of specific intent to cause infringement.") (emphasis added).  Lawson also made clear that Mr. Lawson would not offer any expert opinions.  *Id*. ("Mr. Lawson will not offer expert testimony.  Mr. Lawson will not be offered to prove invalidity.").

2

ePlus's Memorandum is shot through with similarly unsupported allegations about Lawson and its counsel. For example, ePlus refers to Lawson's "obstinate refusal to abide by Court Orders" and claims that Lawson "announced it intends to ignore [the Court's] ruling" regarding the scope of Mr. Knuth's testimony. *See* ePlus Mem. at 1, 2. Again, these claims have no basis in fact. Lawson made no such "announcement" nor has it taken any action supporting even an implication that it would ignore or defy any Order of the Court. To the contrary, in a second letter to ePlus dated November 29, Lawson specifically stated that

> Lawson will only offer testimony from Mr. Knuth that relates specifically to source code and responds to Mr. Niemeyer's opinions. In that regard, Lawson will not offer testimony related to prior versions, invalidity, or infringement as instructed by the Court.

*See* Nov. 29, 2010 Letter from William D. Schultz to Michael Strapp at 1 (attached as Ex. C). These statements are completely consistent with the Court's Order regarding Mr. Knuth.[2]

Putting aside ePlus's many accusations and strained assertions, the motion itself has no merit. ePlus's objections to Mr. Hvass have not only been waived, both Mr. Hvass and the substance of his testimony were properly disclosed in discovery. Moreover, Mr. Hvass' testimony is fact testimony, based on his personal knowledge and experience, not expert testimony on non-infringement or any other issues. ePlus's motions with regard to Mr. Lawson and Mr. Knuth should both be denied as moot, as ePlus only seeks relief that the Court has already granted, and there is no indication that Lawson intends to violate the Orders relating to those witnesses. Finally, ePlus's motions with regard to J-CON and P.O. Writer ignore that Dr.

---

[2] ePlus even goes so far as to claim that if Mr. Lawson's testimony is permitted, *Lawson's counsel* "will then surely argue to the jury that the prior versions of Lawson software invalidate the asserted ePlus patents" in violation of the Court's Orders. *See* ePlus Mem. at 18. The allegation that Lawson's counsel would willfully defy an Order of the Court is extremely serious. In this instance, it is baseless and should be withdrawn or stricken. Claims that Lawson or its counsel would ignore or defy the Court's Orders serve no legitimate purpose and have no place in this case.

3

Shamos did not rely solely on the exhibits that the Court has excluded but also on admitted exhibits that provide sufficient foundation for his opinions. ePlus's motion relating to J-CON and P.O. Writer is little more than an untimely motion for summary judgment, filed without leave of Court as required by Local Rule 56(C), which improperly asks the Court to weigh the evidence and adjudicate Lawson's claims of invalidity.

## II.   <u>ARGUMENT</u>

**A.   The Court Should Deny ePlus's Motion to Exclude the Testimony of Jeff Hvass.**

1.   <u>ePlus has waived any objection to Mr. Hvass.</u>

ePlus long ago waived any objection it might have to Mr. Hvass. Mr. Hvass was listed among Lawson's trial witnesses, and ePlus expressed no objection to his testifying at trial. *See* Ex. A. ePlus made no objection to Mr. Hvass between the time Lawson identified him as a trial witness on August 6 and the Final Pretrial Conference on September 27. Further, at the beginning of the Final Pretrial Conference, the Court asked both parties if they had any objections to any of the witnesses listed in the Final Pretrial Order. Again, ePlus raised no objection, thus waiving any further objection to Mr. Hvass or Lawson's other witnesses. *See* Transcript of Final Pretrial Conference at 6 (Ex. A).

ePlus attempts to escape its clear waiver of any objection to Mr. Hvass as a trial witness by claiming that it only learned after the Final Pretrial Conference that Lawson intended to introduce "excluded non-infringement" expert opinions through Mr. Hvass. *See* ePlus Mem. at 14, n. 6. As explained below, however, Mr. Hvass will not offer any expert opinions, much less an expert opinion of non-infringement. ePlus offers no other excuse for its failure to object to Mr. Hvass when the Court sought such objections, and so its motion to exclude Mr. Hvass should be denied as waived.

4

2.      Mr. Hvass will not provide expert testimony.

ePlus wrongly insists throughout its motion that Mr. Hvass will provide expert testimony on non-infringement.  *See* ePlus Mem. at 3, 13-15.  ePlus does not identify this non-existent "non-infringement testimony," nor does it support its allegations with any evidence.  In truth, Lawson advised ePlus more than two weeks ago that Mr. Hvass will simply explain to the jury how Lawson's accused systems, which are admitted into evidence as DX-335, operate.  *See* Ex. B at 1-2.  Mr. Hvass will demonstrate to the jury, using DX-335, how the systems are meant to be used by a customer.  This is the only sense in which Mr. Hvass will demonstrate the accused products.  Such a demonstration is purely fact testimony based on Mr. Hvass' personal knowledge and experience; it is not expert testimony.[3]

Mr. Hvass' demonstration of DX-335 is no different from testimony from any fact witness that explains a piece of admitted evidence.  Just as a fact witness may explain a document that is admitted into evidence, and testify based on personal knowledge about that document's contents, purpose and meaning, a fact witness may show and demonstrate to the jury a physical exhibit, like DX-335, and explain to the jury how that physical exhibit works, based on that witness' personal knowledge and experience.[4]  Even though they are software programs,

---

[3]      ePlus also argues that Mr. Hvass may not offer lay opinions under Fed. R. Evid. 701 because any lay opinions he might give are "not based on his rational perception."  *See* ePlus Mem. at 15.  ePlus does not even attempt to explain how lay opinions from Mr. Hvass about the operation of the accused systems, which he uses and demonstrates every day, are not "rationally based on the perception of the witness," as Rule 701 requires.  Lawson does not intend to offer any lay opinions from Mr. Hvass, but if it did, such opinions would be admissible.  Rule 26 does not require disclosure of lay opinions under Rule 701, and Mr. Hvass has sufficient knowledge and experience on which to rationally base opinions about how the accused systems operate.

[4]      For example, if this case were about a mousetrap, a knowledgeable witness, such as a mousetrap salesman, would be permitted to testify about the features of the mousetrap and show the jury how the mousetrap works.  Mr. Hvass' demonstration of the operation and functionality of the accused systems is no different.

the Lawson accused systems that are loaded onto the laptop computer that is DX-335 are no different from any other exhibit which can be shown and demonstrated to the jury so that the jury can understand how the systems work.  Testimony about how the Lawson systems operate and how they are used by customers is purely factual testimony, based on Mr. Hvass' knowledge and experience, not expert testimony.

Mr. Hvass will also provide fact testimony about how Dr. Weaver's demonstration of the accused system using PX-402 is **not** representative of the accused systems provided by Lawson to customers and **not** how Lawson demonstrates the accused systems to customers.[5]  The version of the accused systems relied on by Dr. Weaver (PX-402) was modified by ePlus after Lawson produced it in discovery, and it is Lawson's position that Dr. Weaver's demonstration of how that system may be used is contrary to the way it is demonstrated to Lawson's customers. Testimony about the differences between DX-335 (the Lawson system with mock data added for trial) and PX-402 (the Lawson systems as modified by ePlus) is fact testimony based on Mr. Hvass' personal knowledge, not expert testimony.  Likewise, testimony about the differences between the demonstration conducted by Dr. Weaver and the demonstrations Lawson conducts for its customers is purely fact testimony, not opinion testimony or expert opinion testimony.

Mr. Hvass' testimony is relevant both to whether Lawson directly infringes and to whether Lawson aided or encouraged infringement by its customers, which is required to prove inducement of infringement under 35 U.S.C. 271(b).  *See e.g., DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) ("To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and *knowingly* aid[ed] and abett[ed] another's direct infringement.'") (emphasis in original)

---

[5]    Mr. Hvass attended Dr. Weaver's deposition where he demonstrated DX-402.

(citations omitted).  Mr. Hvass' testimony that PX-402, as modified by ePlus for litigation, differs from the accused systems as provided by Lawson to its customers and that Dr. Weaver's demonstration of PX-402 differs from how Lawson demonstrates the accused systems to its customers will thus rebut ePlus's claim that Lawson aided and encouraged infringement by its customers.

At its core, ePlus's argument is based on the flawed premise that only an expert witness can demonstrate PX-402 or DX-335 to the jury.  DX-335 and PX-402 are merely software programs on a computer, and one does not need to be an expert witness to demonstrate to a jury how to operate a software program loaded onto a computer, especially software programs designed to be used by laypersons working at Lawson's customers.  Likewise, one does not need to be an expert to testify about the difference between the operation of a software program loaded with one set of data, such as PX-402, and the same program loaded with another set of data, such as DX-335.  Such testimony does not require scientific or technical knowledge and is not beyond the lay understanding of a jury and so is not expert testimony.  ePlus's goal is simple – to prevent Lawson from showing the jury its accused systems, even though those accused systems have been admitted into evidence, and to prevent Lawson from showing the jury that ePlus's modified version of Lawson's system differs from actual accused systems.  That evidence from Lawson does not require any expert testimony, and Mr. Hvass clearly has the necessary personal knowledge to provide that testimony.

       3.    <u>Hvass was properly disclosed as a witness.</u>

ePlus also incorrectly asserts that Lawson "never disclosed Mr. Hvass during fact discovery," as required by Rule 26(a)(1) and as requested in ePlus's interrogatories.  *See* ePlus Mem. at 2, 4-5.  Specifically, ePlus states that Mr. Hvass should have been identified in response

to its Interrogatory No. 1, which seeks the identity of individuals with knowledge relevant to non-infringement, and Interrogatory No. 4, which seeks the identity of trial witnesses and the subject matter of their testimony.  *Id.* at 5, 14.  In truth, Mr. Hvass' identity and the subject matter of his testimony have been known to ePlus since at least the time he was deposed on June 8, more than six months ago, and his identity as a trial witness has been known to ePlus for more than four months, since he was listed on Lawson's trial witness list on August 6.  Likewise, the subject matter of Mr. Hvass' trial testimony and his relevant knowledge – the operation and functionality of the accused systems – as well as the information required by Rule 26(a)(1) have been known to ePlus for a long time.[6]  ePlus's questions to Mr. Hvass in his deposition, for example, make clear that it was well aware that Mr. Hvass' knowledge included the current Lawson systems.  *See* Deposition of Jeff Hvass (June 8, 2010) at 17-18 (cited portions attached as Ex. D).  In his deposition, Mr. Hvass testified about his experience demonstrating the accused system to current clients and prospects, about his demonstrations of the accused systems and about the functionality of the accused systems.  *Id.* at 17-18, 34, 178-79, 189, 207-10.  ePlus also deposed Mr. Hvass about how Lawson delivers the accused systems to customers without any data.  *Id.* at 192-93.

Fed. R. Civ. P. 26(e) provides that a party may supplement initial disclosures or interrogatory responses by making additional or corrective information known to the other parties "during the discovery process or in writing."  There is no requirement, as ePlus appears to

---

[6]      ePlus states that Mr. Hvass was only designated to testify about Lawson's legacy systems, ePlus Mem. at 2, 5, 14, but conveniently omits that the testimony Mr. Hvass gave in that deposition extended to the accused systems.  Moreover, if ePlus truly felt that Mr. Hvass' knowledge was limited to Lawson's legacy systems, as it claims in its motion, it would have objected to him at the Final Pretrial Conference, which occurred long after the Court excluded the legacy systems from trial.  In truth, ePlus was well aware from Mr. Hvass' deposition that the scope of his knowledge included both the legacy systems and the accused systems.

contend, that a party must include any supplemental information in a formal supplemental interrogatory response or supplemental initial disclosures.  The information sought by ePlus's interrogatories and required to be provided in initial disclosures – Mr. Hvass' identity, the type of knowledge he has and the subject matter of his trial testimony – was provided through his deposition and his listing as a trial witness, and so there is no basis to exclude Mr. Hvass testimony for non-disclosure.  Moreover, Mr. Hvass' testimony will be limited to the operation and functionality of the Lawson accused systems.  All of the details regarding the operation and functionality of those systems have been fully disclosed in the voluminous amount of documents and testimony produced by Lawson.  There simply can be no claim that ePlus is not fully aware of all of the information that Mr. Hvass may provide in his trial testimony or that it is surprised that Lawson will want to demonstrate the exhibits admitted into evidence to the jury.

    4.    <u>The functionality that Mr. Hvass will demonstrate was fully disclosed in discovery.</u>

ePlus also incorrectly claims that Lawson has failed to disclose or produce the Mr. Hvass' "demonstration."  *See* ePlus Mem. at 2, 3-4, 16.  This argument fundamentally misapprehends the nature of Mr. Hvass' testimony.  There is no tangible "demonstration" that Mr. Hvass will provide that can be admitted as an exhibit or produced in discovery.  As stated above, the only sense in which Mr. Hvass will demonstrate the accused products is to show the jury how the accused systems admitted as DX-335 work, that is, how they operate and the functionality they contain.  Moreover, Lawson has produced voluminous amounts of information about the operation and functionality of its systems and so has fully disclosed all of the functionality that Mr. Hvass may demonstrate at trial.[7]  ePlus's position is tantamount to a claim

---

[7]    Using the mousetrap analogy again, a party could produce a mountain of documents about a mousetrap, but a demonstration of how the mousetrap works would still be relevant and

that no witness may testify about a physical exhibit, such as DX-335 or PX-402, unless the exact testimony that witness intends to give has been recorded and produced in discovery. That is not what the rules require.

Moreover, ePlus does not identify any discovery request to which a trial demonstration by Mr. Hvass would be responsive. All but one of the discovery requests that ePlus identifies, *see* ePlus Mem. at 3, are requests for production of documents. Lawson has produced voluminous amounts of documents relating to the functionality that Mr. Hvass will demonstrate to the jury, and there are no documents which show the specific demonstration that Mr. Hvass will provide at trial. Thus, Lawson has not failed to produce any documents sought in any of ePlus's requests for production of documents.

ePlus also claims that Mr. Hvass' testimony should have been identified in response to Interrogatory No. 16. *Id.* ePlus did not submit a copy of Interrogatory 16 with its Motion, presumably because it recognized that Interrogatory No. 16 only seeks *facts and contentions* relating to Lawson's non-infringement defenses and asks Lawson to *identify documents* that support Lawson's defense of non-infringement. *See* ePlus's Interrogatory No. 16 to Lawson (attached as Ex. E). Lawson has fully disclosed all of its facts and contentions relating to its non-infringement defenses, including facts and contentions relating to the operation and functionality of the accused systems which Mr. Hvass will demonstrate at trial, and there are no documents relating to Mr. Hvass' trial demonstration to be identified in response to Interrogatory No. 16. Thus, ePlus's claim that Lawson failed to fully respond to its discovery requests is groundless.

Nor is Mr. Hvass' demonstration to the jury analogous to the demonstration on which Dr. Weaver relies for his infringement opinions. Dr. Weaver is an expert witness specially retained

---

not cumulative of the written descriptions of the mousetrap's operation.

for litigation who is required to produce all of the information which he considered in formulating his opinions. Such information includes the specific demonstrations he performed to reach his infringement opinions. Mr. Hvass, on the other hand, is not an expert witness and is not providing any opinions.

Mr. Hvass's testimony is also relevant to limit the prejudice from ePlus's late disclosure of the data that ePlus loaded on PX-402. ePlus did not produce all of the data used in Dr. Weaver's demonstration several months ago, as it claims. In fact, ePlus did not produce the load files containing the data that ePlus added to the accused systems for Dr. Weaver's demonstration until November 17. *See* Ex. B at 2-3. Before it had those load files, Lawson did not have the version of its accused system that is PX-402 and which Dr. Weaver will use for his demonstration at trial. Jeff Hvass was at the deposition where Dr. Weaver used PX-402, and thus has seen the operation of that system with the files that were not previously produced.

### 5.   Mr. Hvass' testimony is not the same as the opinions from Mr. Knuth that the Court has excluded nor does it overlap with Dr. Shamos' opinions.

Finally, ePlus claims, but never explains, that Mr. Hvass' "opinions" are the same as the opinions from Mr. Knuth that the Court has excluded and overlap with Dr. Shamos' non-infringement opinions. *See* ePlus Mem. at 16-17. It's not clear how Mr. Hvass' testimony can, on the one hand, have been excluded and, on the other hand, overlap with opinions that have not been excluded. In any event, Mr. Hvass will not render any opinions. He will only testify to facts regarding the operation and functionality of the accused systems. Further, Mr. Hvass is not, as Mr. Knuth is, testifying in any way about source code. Finally, while Mr. Hvass' testimony is relevant to whether the accused products infringe, he will not compare the accused products to the patents at issue or in any other way say anything that overlaps with an opinion of non-infringement from Dr. Shamos.

**B.      ePlus's Motion to Preclude Mr. Lawson from Testifying About the Lawson Legacy Systems is Moot.**

As with Mr. Hvass, ePlus fundamentally misstates the testimony that Lawson has represented Richard Lawson will provide at trial.  First, ePlus insists that Lawson intends to have Mr. Lawson testify about the Lawson legacy systems, *see* ePlus Mem. at 17-18, even though Lawson told ePlus in a telephone conference call on November 15 and in its letter on November 29 that Mr. Lawson would not testify about the Lawson legacy systems (e.g., versions 5 and 6). *See* Ex. B at 4.  Then, ePlus claims that Lawson stated that Mr. Lawson "intends to offer [testimony] regarding the 'historic development' of Lawson's software" and that testimony "is a poorly disguised expert invalidity opinion" regarding the Lawson legacy systems.  *See* ePlus Mem. at 18.  From this inaccurate premise, ePlus leaps to the conclusion that Mr. Lawson will not only testify about the Lawson legacy systems, he will offer invalidity opinions about those systems. *Id.* at 18-19.

These claims are baseless.  Lawson very clearly stated that Mr. Lawson would testify about "the background of the company," "the development of the accused systems," including "the facts regarding the procedures in place at Lawson to develop the accused systems and Lawson's lack of specific intent to cause infringement."  *See* Ex. B at 4.  ePlus does not object to Mr. Lawson's testimony about the background of the company, *see* ePlus Mem. at 17,[8] and Lawson very clearly stated that all other testimony from Mr. Lawson would relate to the accused systems, not the legacy systems.  There is simply no basis for ePlus to assert that Lawson claims

---

[8]      Mr. Lawson was identified in Lawson's Rule 26(a)(1) disclosures and on Lawson's trial witness list.  He was also deposed both as a Rule 30(b)(6) witness and in his personal capacity, and so, unlike Mr. Hvass, ePlus does not claim that he was not properly disclosed.

that Mr. Lawson will testify about the Lawson legacy systems, much less offer an expert opinion about those systems.

The Court should reject Lawson's straw-man allegations regarding Mr. Lawson's testimony. The Court has excluded any evidence regarding the Lawson legacy systems and Lawson has repeatedly advised ePlus that it does not intend to admit any testimony regarding those systems through Mr. Lawson or anyone else. Thus, ePlus's motion merely seeks relief that has already been granted, and the motion should be denied as moot.

**C.     ePlus's Motion to Limit Mr. Knuth's Testimony to Source Code and rebuttal of Dr. Niemeyer is Moot.**

ePlus also moves to limit Mr. Knuth's trial testimony to those portions of his August 25, 2010 report that relate to source code. As with its motion regarding Mr. Lawson, this issue is entirely moot. The Court has already entered an Order limiting Mr. Knuth's testimony to a rebuttal of Mr. Niemeyer's testimony about source code. Moreover, in a second letter to ePlus dated November 29, Lawson specifically stated to ePlus that "Lawson will only offer testimony from Mr. Knuth that relates specifically to source code and responds to Mr. Niemeyer's opinions. In that regard, Lawson will not offer testimony related to prior versions, invalidity, or infringement as instructed by the Court." *See* Ex. C.

Despite Lawson's crystal-clear statement that it intends to fully comply with the Court's Order limiting Mr. Knuth to testifying about source code issues in response to Dr. Niemeyer, ePlus nevertheless asserts that Lawson is attempting "to re-introduce all of Mr. Knuth's opinions, including opinions that do not concern source code and were not offered to rebut Mr. Niemeyer . . . ", *see* ePlus Mem. at 9 and that Lawson "contends that Mr. Knuth's testimony is **essentially unbounded** because he 'opined on source code issues throughout his report.'" *See* ePlus Mem. at 19-20 (emphasis in original). How ePlus can make such a claim is a mystery. As Lawson's

letter makes clear, Lawson is not attempting to re-introduce all of Mr. Knuth's opinions nor did it assert that Mr. Knuth's testimony was "unbounded" in any way.  As with Mr. Lawson, ePlus creates -- out of thin air -- the straw-man claim that "Lawson refuses to concede that Mr. Knuth's expert testimony must be limited to those portions of his expert report that analyze source code and rebut Mr. Niemeyer."  In reality, Lawson simply reaffirmed that Mr. Knuth testified about source code issues throughout his report, including paragraphs 16-17 and 21-32, not just in the few cherry-picked paragraphs of his report identified by ePlus.

Finally, ePlus raises the entirely irrelevant issue of a report from Mr. Knuth that even ePlus admits *was withdrawn the day after ePlus objected to it.  See* ePlus Mem. at 7-8.  ePlus does not even attempt to explain the relevance of a report which was withdrawn over a month ago.  There is no legitimate reason for ePlus to burden the Court with a lengthy expert report that has been withdrawn.

As with Mr. Lawson, ePlus requests no relief relating to Mr. Knuth which the Court has not already granted and does not offer a single concrete piece of evidence that Lawson has any intent to violate this Court's Order regarding Mr. Knuth.  As a result, the Court should deny this motion as moot.

### D. ePlus's Motion to Exclude the J-CON System Should be Denied Because Dr. Shamos Relies on DX-96, Not Just DX-97 and DX-98, to Support his Obviousness Opinions Regarding J-CON.

Lawson intends to assert two obviousness theories based on the J-CON System:  1) the combination of J-CON plus the Dworkin patent renders claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent obvious; and 2) the combination of the J-CON System and the P.O. Writer System renders claims 3, 26, 28

and 29 of the '683 patent, claims 1, 9, and 29 of the '516 patent and claim 1 of the '172 patent obvious.  *See* Final Pretrial Order [Doc. No. 480] at ¶¶ 44-45.

ePlus argues that all evidence of J-CON should be excluded because the Court has excluded two J-CON exhibits, DX-97 and DX-98.[9]  ePlus ignores, however, that in addition to DX-97 and DX-98, Dr. Shamos also relied on the J-CON Manual marked as DX-96, which has been admitted into evidence, for his obviousness opinions.  ePlus makes only a passing reference to DX-96 and does not address Dr. Shamos' reliance on DX-96 at all.  *See* ePlus Mem. at 20-21.  In fact, Dr. Shamos relied on DX-96 in support of both of his obviousness opinions involving J-CON.

First, Dr. Shamos relied on the J-CON Manual[10] (DX-96) to describe the functionality of the J-CON system, as shown in the quoted portions below:

> 196.   The J-CON Manual describes an electronic-sourcing system, the J-CON ("Jobber-Connection") system, that was designed for use in the operation and management of automotive parts stores (automotive parts stores were called "Jobbers" in the J-CON literature).  The J-CON system maintained a library of automotive parts catalogs from many sources in an electronic database, portions of which could be selected and searched for a desired automotive part.  (The J-CON Manual at Ch. 3,  Sec. 2, Pages 1 & 11 & Ch. 5, Sec. 3, Page 1 . . . .).

> 197.   Upon selection of desired parts from database search results, the J-CON system could transfer the relevant automotive parts information for the selected parts from the database onto an electronic requisition (called a "ticket" in the J-CON literature).  (The J-CON Manual at Ch. 3, Sec. 2, Pages 1, 4 & 8-9 . . . .).  For a selected item on the requisition, the J-CON system could electronically determine the current availability in the inventory of the automotive parts store, any sister stores associated with the automotive parts store, and/or independent distributors to the automotive parts

---

[9]     ePlus's motion also contains an entirely irrelevant argument about Dr. Shamos' anticipation opinions related to J-CON.  *See* ePlus Mem. at 9, 20.  Dr. Shamos asserted that J-CON anticipated only one claim of the patents at issue -- claim 6 of the '683 patent -- and ePlus has since withdrawn its claims of infringement related to claim 6.

[10]     In his report, Dr. Shamos referred to DX-96 as the "J-CON Manual" or the "J-CON Manual Volume 1", referred to excluded DX-97 as the "J-CON System User's Manual Volume 3," and referred to excluded exhibit DX-98 as the  J-CON RDB Guide."  See Shamos Invalidity Report at p. 78 (cited portions attached as Ex. F).

store.  (The J-CON Manual at Ch. 2, Sec. 10, Page 15 & Ch. 3, Sec. 2, Pages 6 & 10; . . . .).

      198.    The J-CON system user could determine the price of parts from data maintained in its local automotive parts database and/or by electronically communicating with its distributor(s).  (The J-CON Manual at Ch. 3, Sec. 2, Page 4; . . . .).

      199.    The J-CON system could perform a cross-referencing or converting of data relating to an item on the requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.  (The J-CON Manual at Ch. 3, Sec. 2, Pages 6 & 11 & Ch. 3, Sec. 4, Pages 1-5; . . . . ).

      200.    Finally, the J-CON system could generate multiple purchase orders from a single requisition.  (The J-CON Manual at Ch. 4, Sec. 3, Page 1 & Ch. 4, Sec. 4, Pages 1-7; . . . .).

Shamos Invalidity Report at 59-60 (Ex. F).  ePlus's motion entirely ignores this detailed discussion of DX-96, which supported all of Dr. Shamos' opinions as to J-CON.  Instead, ePlus incorrectly cites only to the portions of Dr. Shamos' report in which he states his ultimate conclusions about obviousness.  *See* ePlus Mem. at 11, 21.  Dr. Shamos' ultimate conclusions are obviously based on the entire preceding report, including the discussion of J-CON cited above. ePlus cannot simply pretend that Dr. Shamos' earlier disclosure of his reliance on DX-96 for the features of J-CON does not exist.

    Dr. Shamos also cited to and relied heavily on DX-96 in his claim charts (Ex. 3 to his report) for the combination of J-CON and Dworkin and for the combination of J-CON and P.O. Writer.[11]  Indeed, in his J-CON/Dworkin claim chart, Dr. Shamos cited to DX-96 and/or the Dworkin patent for every element of claims 3, 26, 28 and 29 of the '683 patent, claims 1, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent.  *See* Appendix A attached hereto (summarizing citations to admitted exhibits in J-CON/Dworkin claim chart (Ex. G)).  Similarly,

---

[11]    The portion of Dr. Shamos' claim chart that relates to the combination of J-CON and Dworkin is attached as Ex. G, and the portion of Dr. Shamos' claim chart that relates to the combination of J-CON and P.O. Writer is attached as Exh. H.

Dr. Shamos' claim chart for the combination of J-CON and P.O. Writer cited to DX-96 and/or one of the admitted P.O. Writer exhibits (e.g. DX-117 and DX-141) for every element of claims 3, 26, 28 and 29 of the '683 patent, claims 1, 9 and 29 of the '516 patent and claim 1 of the '172 patent.  *See* Appendix B attached hereto (summarizing citations to admitted exhibits in J-CON/P.O. Writer claim chart (Ex. H)).

In truth, ePlus's motion to exclude J-CON is not a motion to enforce the Court's Orders but rather a stealth motion for summary judgment that seeks an adjudication that there is insufficient evidence that the claims listed above are obvious in light of the combinations of J-CON and Dworkin and J-CON and P.O. Writer.  Such a motion is untimely and does not comply with the requirements of either Fed. R. Civ. P. 56 or Local Rule 56.  Similarly, ePlus's motion improperly requests that the Court weigh the evidence and reach the determination that Dr. Shamos' opinion that the combination of the J-CON system, as disclosed in DX-96, and either Dworkin or P.O. Writer do not render the claims obvious.  Of course, only the jury can weigh the evidence, and the Court cannot rule on the sufficiency of the evidence of obviousness until it has heard that evidence and ePlus has moved for judgment as a matter of law at the close of Lawson's evidence.

### E.  Dr. Shamos Does Not Rely Solely on DX-121 and DX-122 for his Opinion that P.O. Writer Anticipates Claims 3, 28 and 29 of the '683 Patent.

Contrary to ePlus's claim, Dr. Shamos does not rely solely on DX-121 and DX-122 for his opinion that the P.O. Writer system anticipates claims 3, 28 and 29 of the '683 patent.[12]  In

---

[12]     ePlus has also requested that Lawson withdraw certain of its designations of Ms. McEneny's testimony.  *See* ePlus Mem. at 10, n. 3.  Lawson has agreed to withdraw most of the specified designations if ePlus will agree to withdraw ePlus's following designations that also relate to DX-121 and DX-122: 91:15-92:5, 92:13-22, 93:10-18, 98:6-25, 99:19-100:10, 101:4-102:3, 102:5-8, 102:17-19, 102:21-104:19.  *Id.*  ePlus has not yet responded to this request.  Lawson did not agree to withdraw the following McEneny designations: 95:4-96:5 and 160:22-

Appendix 2 to its motion, ePlus asserts that Dr. Shamos relies solely on DX-121 and DX-122 for two elements of claim 3 (elements 3(b) and 3(c)), one element of claim 28 (element 28(c)) and one element of claim 29 (element 29(c)).   *See* ePlus Mem., Appendix 2.[13]   For three of these claim elements -- "searching for matching items" (elements 28(c) and 29(c)) and "means for searching for matching items" (element 3(c)) -- Dr. Shamos's claim chart cited not only DX-121 and 122 but also adopted information from Lawson's interrogatory responses, through which he cited to DX-141.   *See* Appendix C attached hereto (summarizing citations to admitted exhibits in Dr. Shamos' P.O. Writer claim chart.  Dr. Shamos' P.O. Writer claim chart is attached as Ex. J).

In addition, in his report itself, Dr. Shamos stated that "The P.O. Writer Plus system allowed a user to select product catalogs to search, resulting in a search of less than the entire data set in the database.  The system allowed a user to search for matching items among selected product catalogs by specifying various search criteria including item number, commodity code, and keyword associated to the item description.  (The P.O. Writer Manual, Guided Tour at 46-47; . . . .)."  The Guided Tour that Dr. Shamos' cites has been admitted as DX-117.  *See* Shamos Invalidity Report at ¶ 182 at p. 54 (Ex. F).  Dr. Shamos' report also cites the Guided Tour (DX-117) for his opinion that the P.O. Writer system had a "means for selecting product catalogs to search" element (claim 3(b) of ePlus's App. 2).  *Id.*

In addition, under the Court's construction, "means for selecting product catalogs to search" (element 3(b)) and "selecting product catalogs to search" (element 28(b) in ePlus's App.

---

161:15, because this testimony relates to a general question not tied to a document; and 161:16-166:16, because this testimony either relates to general questions or questions related to Dep. Ex. 115 (trial exhibit DX-141), which has been admitted into evidence.  *See* Dec. 9, 2010 Letter from Kirstin Stoll-Debell to Jennifer Albert at 1-2 (attached as Ex. I).

[13]    Note that elements 28(c) and 29(c) in ePlus's Appendix 2 are identical because claim 29 depends on claim 28.

2) are equivalent, and so Dr. Shamos' citation to DX-117 (see element 28(b) in App. 2), also applies to element 3(b).  Thus, ePlus cannot claim that it was not on notice that Dr. Shamos would opine that his opinions as to these elements were supported by other admitted exhibits.

Finally, as stated above, the Court should deny ePlus's motion to exclude Dr. Shamos' opinion that the combination of J-CON and P.O. Writer render the asserted claims obvious. While ePlus claims that Dr. Shamos' opinion regarding the combination of J-CON and P.O. Writer are "conclusory and unsupported," *see* ePlus Mem. at 23-24, ePlus offers no support for this assertion and simply ignores the other sections of Dr. Shamos' report which discuss J-CON and P.O. Writer in detail and ignores Dr. Shamos' detailed claim charts for the combination of J-CON and P.O. Writer.

## III.    CONCLUSION

For the foregoing reasons, Lawson Software respectfully requests (1) that the motion to exclude the testimony of Jeffrey Hvass be denied; (2) that the motion to limit the testimony of Richard Lawson be denied as moot; (3) that the motion to limit the testimony of Keith Knuth be denied as moot; (4) that the motion to exclude evidence of the J-CON system be denied; and (5) that the motion to exclude Dr. Shamos' opinion that the P.O. Writer system anticipates claims 3, 28 and 29 of the '683 patent and that the combination of the J-CON system and the P.O. Writer system renders the asserted claim obvious be denied.

LAWSON SOFTWARE, INC.


By____/s/_____
         Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 14th day of December, 2010, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*