# EXHIBIT C

## JURY INSTRUCTION NO. 1

### Province of the Court and Jury

Members of the Jury, now that you have heard the evidence and the arguments, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law, as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

The parties' counsels have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by me in these instructions, you are to be governed by my instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case. It is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

JURY INSTRUCTION NO. 2

Preponderance of the Evidence

The term "preponderance of the evidence" means that the party with this burden of proof on an issue must produce evidence which, when considered in light of all that facts, leads you to believe that what that party claims is more likely true than not true. To put it differently, if a party has the burden of proof by a preponderance of the evidence on an issue, and you were to put the competing evidence regarding that issue on opposite sides of balance scales, the party would meet is burden if the evidence supporting it would make the scales tip a bit to its side.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty. Proof of an absolute certainty is seldom possible in any case.

JURY INSTRUTION NO. 3

Inferences Defined

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the bald statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from facts that you find have been proven or stipulated, such reasonable inferences as seem justified in the light of your experience.

Inferences or deductions are conclusion which reason and common sense lead you to draw from the facts that have been established by the evidence in the case.

JURY INSTRUCITON NO. 4

<u>Direct and Circumstantial Evidence</u>

Generally speaking, there are two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence – such as the testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

## JURY INSTRUCTION NO. 5

### Credibility of the Witnesses

The test is not which side brings the greater number of witnesses or presents the greater quality *[quantity]* of evidence, but rather which witness and which evidence appeals to your minds as being the most accurate and trustworthy. The testimony of a single witness, which produces in your minds belief in the likelihood of truth, is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if after consideration of all the evidence in the case you hold greater belief in the accuracy and reliability of the one witness.

You as jurors are the sole judges of the credibility of the witnesses and the weight that their testimony deserves. You may be guided by the appearance and conduct of the witness, by the manner in which he or she testifies, or by the character testimony given. You should carefully scrutinize all testimony given, the circumstances under which each witness has testified, and every matter in evidence that tends to show whether a witness is worthy of belief.

Consider the witness's intelligence, state of mind, the witness's opportunity to know about the things testified to, his or her memory, their demeanor while testifying, the witness's interest in the outcome of the case and any bias or prejudice the witness may or may not have, whether the evidence contradicts the witness's testimony, or any other factor that bears on the believability of their testimony.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.  You may, in short, accept or reject the testimony of any witness in whole or in part.

JURY INSTRUCTION NO. 6

<u>Impeachment of Witnesses</u>

A witness may be discredited or impeached by contradictory evidence, by a showing that they testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something – or has failed to say or do something – that is inconsistent with their present testimony.  If you believe that any witness has been so discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

## JURY INSTRUCTION NO. 7

### Deposition Testimony

During the trial of this case, certain testimony ahs been presented to you by way of deposition consisting of sworn, recorded answers to questions asked of witnesses in advance of the trial by one or more of the attorneys for the parties in the case.  Such testimony is entitled to the same consideration and is to be judge as to credibility and weighed and otherwise considered by the jury, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

JURY INSTRUCTION NO. 8

<u>Evidence:  Excluding Argument of Counsel and Comment of Court</u>

As I told you earlier, it is your duty to determine the facts.  In doing so, you must consider only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits.  Remember that any statements, objections, or arguments made by the lawyers are not evidence.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice.  In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case.  What the lawyers say is not binding upon you.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case.  Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

## JURY INSTRUCTIONS NO. 9

## INFRINGEMENT AND VALIDITY

### THE PATENT SYSTEM

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

JURY **INSTRUCTION NO. 10**

## CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused process or product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

## JURY INSTRUCTION NO. 11

**THE CLAIMS OF THE PATENTS-IN-SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

There are two types of claims at issue in this case – method claims and system claims.

Claims 26-30 and 45 of the '683 patent are method claims. A method claim recites a series of steps that must be performed. Claims 1, 2, 5, 6, 8, 21, and 29 of the '516 patent are system claims. A system claim recites a system having certain claimed limitations.

JURY INSTRUCTION NO. 12

## INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim 26 of the '683 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the other claim or claims to which it refers, as well as the additional elements recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 27 of the '683 Patent is a dependent claim. It refers to claim 26. To determine what dependent claim 27 covers, the words of that claim and the words of claim 26 must be read together.

## JURY INSTRUCTION NO. 13

## "COMPRISING" CLAIMS

The beginning portion, or preamble, of certain claims of the patents in this case use the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products or processes having only the elements or steps that are recited in the claim, but also covers products or processes that add additional elements or steps.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

Claims 26-30 and 45 of the '683 Patent and claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent use the "comprising" language.

## JURY INSTRUCTION NO. 14

## CONSTRUCTION OF KEY CLAIM TERMS

I will now define the meaning of certain words used in the patent claims at issue. You must use these definitions to determine infringement and invalidity.

**Database**: a collection of related information organized in a useful manner that provides a base or foundation for procedures, such as retrieving information.

**Electronic sourcing system:** an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers, or vendors.

**Generally equivalent:** substantially similar.

**Items:** products or services.

**Matching items:** search results.

**Product catalog:** an organized collection of items and associated information which can include, for example, a part number, price, catalog number, vendor name, vendor ID, a textual description of an item, and images of or relating to the item.

**Purchase order:** a commission or instruction to buy something.

**Requisition:** a formal list of needed and/or required items.

**Selected matching items:** items in search results that have been selected for inclusion in a requisition.

**Source:** a supplier, vendor or distributor of products or services.

**Vendor:** a seller of a product or service.

## JURY INSTRUCTION NO. 15

## PATENT INFRINGEMENT GENERALLY - DIRECT INFRINGEMENT

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells, offers to sell, or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who induce infringement by others.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare patent claims 26-30 and 45 of the '683 Patent and claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent, as I have defined those claims, to the accused products or processes, and determine whether or not there is infringement. You should not compare SAP's products or processes with any specific example set out in the '683 Patent or the '516 Patent, or with ePlus's products or processes. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not SAP knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she

believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not know the patent exists.

In this case, ePlus asserts that SAP's SRM Product directly infringes claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent.  It is your job to determine whether or not ePlus has proved by a preponderance of the evidence that SAP has directly infringed any of these claims of the '516 Patent.

## JURY INSTRUCTION NO. 16

## INFRINGEMENT - EVERY CLAIM ELEMENT MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

In order to infringe a patent claim, a product or process must include every element of the claim. If SAP's Electronic Sourcing System omits even a single structural element or step recited in a claim, then you must find that SAP has not infringed that claim. You must consider each of the claims of patents in this case separately.

A claim element may be present in a product or process in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim element is literally present if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim element is present in an accused product or process under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structural element or step of the accused product or process and the structural element or step recited in the patent claim element are interchangeable. A person of ordinary skill is a person with average education and average training in the field.

Equivalency is determined by what was known at the time the infringement occurred, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not

describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

JURY **INSTRUCTION NO. 17**

**DETERMINATION OF INFRINGEMENT**

Taking each claim of the '683 Patent and the '516 Patent separately, if you find that ePlus has proved by a preponderance of the evidence that each and every element of the claim is present, either literally or under the doctrine of equivalents, in SAP's accused SRM Product, then you must find that SAP's SRM Product infringes that claim.

## JURY INSTRUCTION NO. 18

## INFRINGEMENT OF DEPENDENT CLAIMS

My instructions on infringement so far have related to independent claims. As I told you, the '683 Patent and the '516 Patent also contain dependent claims. A dependent claim includes each of the elements of the independent claim to which it refers, plus additional elements.

If you find that an independent claim of any of the patents has been infringed, you must separately determine whether the dependent claims have also been infringed.

JURY INSTRUCTION NO. 19

**INFRINGEMENT : CAPABLE OF INFRINGEMENT**

A product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.  The fact that a product or process may be used in a manner that does not infringe the patent is not a defense to a claim of infringement against SAP if its product or process is also reasonably capable of a use that infringes the patent.  Evidence that SAP's product accused of infringement is presently capable of meeting the claim elements establishes infringement.  Also, if SAP's products or processes are designed to be altered or assembled before operation, SAP may be held liable for infringement if the product or process, as altered or assembled, infringes a valid claim.

## JURY INSTRUCTION NO. 20

## INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION

SAP has presented evidence that its SRM Product accused of infringement represents an improvement of the invention described in the claims of the patents in this case. Proof of this fact does not necessarily mean that the accused SAP's SRM Product does not infringe ePlus's patent claims. The tests for infringement remain as I have instructed you. As long as you find that SAP's SRM Product includes all of the elements of at least one of the claims of one of the patents in this case, either literally or under the doctrine of equivalents, then you must find that the claims are infringed by SAP's Electronic Sourcing System, despite defendant's improvements.

JURY **INSTRUCTION NO. 22**

**INDUCING PATENT INFRINGEMENT – REQUIRED PROOF**

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. In order to prove inducement, ePlus must prove that it is more probable than not that SAP knew of the '683 and '516 patents and encouraged or instructed its customers to use SRM in a manner that infringes the patents. ePlus must also prove that it is more probable than not that an SAP customer infringed the patents. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

ePlus asserts that SAP induced infringement. ePlus must prove four things by the more probable than not standard:

First, SAP encouraged or instructed its customers how to use SAP's SRM product in a manner that you, the jury, find infringes the '683 or '516 claims.

Second, SAP knew of the '683 or '516 patents.

Third, SAP knew or should have known that its encouragement or instructions would likely result in its customers doing that which you find to be an infringement of the '683 or '516 patents.

Fourth, an SAP customer directly infringed the '683 or '516 patents.

If, and only if, you are persuaded of each of these four things may you find that SAP induced patent infringement.

24

## JURY INSTRUCTION NO. 23

## INDUCED INFRINGEMENT - CIRCUMSTANTIAL EVIDENCE

As I stated, in order to prove that SAP induced infringement by others, ePlus must prove by the preponderance of the evidence that at least one other person directly infringed a claim of the patents in this case, and that SAP induced that infringement. Proof of SAP's inducement of infringement may be shown through either circumstantial or direct evidence, and likewise proof of the direct infringement by another may be shown through circumstantial or direct evidence.

JURY INSTRUCTION NO. 24

<u>Limitations on the Doctrine of Equivalents</u>

The patent law places certain limits on the doctrine of equivalents.  It is my duty to decide whether or not any of these limitations applies in this case and to instruct you on my decision.  You must use my instruction in considering both infringement and invalidity.

One limit on the doctrine of equivalents occurs as the result of change to the patent claims or arguments that the patent owner made in order to obtain his or her patent.  Sometimes, the PTO may reject a claim as anticipated or obvious in light of the prior art.  The patentee may respond by submitting a new claim or amended claim that contains additional limitations to overcome the PTO's rejection.

The patentee's decision to submit an amended claim in response to a PTO rejection is taken as a concession that the invention as patented does not reach as far as the original claim.  Having narrowed the claim in response to a rejection, the patentee may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.  Prosecution history estoppel prevents an inventor's attempts to avoid the PTO's gatekeeping role and seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent.

## JURY INSTRUCTION NO. 25

**VALIDITY IN GENERAL**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful ~~and non-obvious~~. A patent cannot take away from the public their right to use what was already known when the invention was made. The terms "new," and "useful" have special meanings under the patent laws. I will explain these terms to you as we discuss SAP's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description of the invention in the patent and how to make and use it.

SAP has challenged the validity of the claims of the patents in this case on a number of grounds. SAP must prove that a patent claim is invalid by clear and convincing evidence.

## JURY INSTRUCITON NO. 26

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of '683 and '516 patents to issue, you, the jury, have the ultimate responsibility for deciding whether the claims of the '683 and '516 patents are valid. SAP bears the burden of proving invalidity by clear and convincing evidence.  When I say that a particular party must prove something by "clear and convincing evidence, this is what I mean:  When you have considered all of the evidence you are convinced that it is highly probable that it is true.  This is a higher burden than a preponderance of the evidence; on the other hand, this does not require proof beyond a reasonable doubt.  It will be your job to determine whether the defendant has met its burden of proving the invalidity of the '683 and '516 patents claims.  Clear and convincing evidence is evidence that produces in your mind an abiding conviction that the claims are invalid.

I will now explain to you each of SAP's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

## JURY INSTRUCTION NO. 27

### *WRITTEN DESCRIPTION*

A patent must contain a written description of the claimed inventions. The purpose of the written description requirement is to make sure that the inventor had in mind the invention as claimed in the issued patent, at the time the application for the patent was originally filed. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if the person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

A patent claim is not invalid for lack of written description simply because it covers products or methods that utilize technological advances. The law does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention.

SAP contends that claims 26-30 and 45 of the '683 patent and claims 1, 2, 5, 6, 8, 21, and 29 of the '516 patent are invalid for lack of an adequate written description of the claimed invention. If you find that SAP has proved by clear and convincing evidence that the patent application does not adequately convey to one skilled in the art that the inventors were in possession of any of the inventions claimed in claims 26-30 and 45 of the '683 patent or claims 1, 2, 5, 6, 8, 21, and 29 of the '516 patent, then you must find that such claim is invalid.

## JURY INSTRUCTION NO. 28

**BEST MODE**

The patent laws require that if the inventor knew of a best way, or "mode," of making and using the claimed invention at the time the application for the patent was filed, then the patent specification must contain a description of that mode. This is called the 'best mode" requirement.

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure of how to use the invention claimed in the patent. It prevents an inventor from obtaining a patent, while at the same time not disclosing to the public his or her preferred way of making or using the claimed invention. The inventor must disclose the best mode he or she knew of for making or using the invention as it is described in the patent claims.

Determining whether or not an inventor disclosed his best mode involves answering two questions. The first question relates to what the inventor knew at the time the application for the patent was filed. In this case, August 10, 1994. The first question is: At the time the application was filed, did the inventor know of a way, or mode, of making or using the invention claimed in the patent that the inventor considered to be better than any other mode? This first question is subjective. In other words, it involves only what the inventor thought or believed.

If you find that the answer to the first question is no -- that is, the inventor did not know of a best mode of making or using his or her invention at the time the application was filed -- you should stop there. The patent cannot be invalid for failure

to disclose the best mode if the inventor did not know of a best mode when the application was filed.

If you find that the inventor did know of a best mode at the time the application was filed, then you must consider the second question, which is:  Does the patent contain a description of the inventor's best mode that is sufficient to enable a person of ordinary skill in the field of the invention to carry out the best mode?  This question is objective.  It depends, not on what the inventor thought or understood, but rather on what a person of ordinary skill in the field of the invention reading the patent would understand.

A patent describes the best mode if it contains enough information that a person of ordinary skill in the art reading the patent would be able to carry out the best mode without undue experimentation.  That means that a skilled person reading the patent would be able to make and use the best mode of the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

SAP contends that claims 26-30 and 45 of the '683 Patent and claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent are invalid for failure to disclose the best mode.  If you find that SAP proved by clear and convincing evidence that (1) the inventor of the '683 Patent and the '516 Patent had a best mode of practicing the inventions claimed in claims 26-30 and 45 of the '683 Patent and claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent on August 10, 1994, and (2) the '683 Patent and the '516 Patent do not contain a written description that would enable a person skilled in the art to make and use that

best mode without undue experimentation, then you must find that these claims are invalid.

JURY **INSTRUCTION NO. 29**

**THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new ~~and not obvious~~ in light of what was known by the public before the invention was made. That knowledge which came before is referred to as the "prior art."

SAP is relying on items that ePlus does not agree are prior art. SAP must prove by clear and convincing evidence that these items are prior art. In order to do so, SAP must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

~~Second, anything that was described in a patent issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.~~

*Second*

~~Third~~, anything that was in public use *or on sale* more than one year before the filing of the patent application.

**PRIOR ART - DATE OF INVENTION**

Many of the different categories of prior art refer to the date on which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an

invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort.  The actual making of the invention is referred to as "reduction to practice."  An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed.  This is also referred to as a "constructive reduction to practice."  In this case, that date is August 10, 1994. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art.  The first occurs when the inventor on the patent actually made the invention  before the date of the art.  Art dated after the inventor actually made the invention is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice.  In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the

everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by SAP in this case.

## JURY INSTRUCTION NO. 30

## PRIOR ART - PRIOR PUBLIC USE OR KNOWLEDGE

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent. The second is where the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant. A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

A prior use more than one year before the application filing date by the inventor or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

In this case, SAP relies on SABRE, J-Con, P.O. Writer Plus, Gateway, and SAP R/2 as a prior public use or knowledge before the inventor's date of invention, and SAP

relies on the same prior art as a prior public use more than one year before the filing date of

the application for the '683 and '516 patents [information to be supplied by defendant].

Oral testimony of a single witness alone is insufficient to prove a prior public use.

SAP has the burden of presenting evidence to corroborate the witness on each element of a

patent claim alleged to have been included in the system allegedly publicly used prior to

the date of invention.  Corroboration is required because a witness claiming prior

inventorship or prior public use might be tempted to describe his actions in an unjustifiably

self-serving manner.  The strongest and most reliable evidence is documentary or physical

evidence made at the same time as the alleged prior public use or invention.  In some

circumstances, a second witness' oral testimony may corroborate that of another witness if

certain factors are met.

To determine whether SAP has proven that each of these systems had all of the

elements alleged to have been in public use prior to the date of invention of the '683 Patent

or the '516 Patent, you must consider whether there is corroborating evidence to any

witness' testimony presented.  In reaching that determination, you are to consider, 1) the

relationship between any allegedly corroborating witness and the alleged prior use; 2) the

time period between the alleged event and today; 3) the interest of the allegedly

corroborating witness in the subject matter in this case; 4) contradiction or impeachment of

the witness' testimony; 5) the extent and details of the corroborating testimony; 6) the

witness' familiarity with the subject matter of the patented invention and prior use; 7) the

probability that a prior use could occur considering the state of the art at the time; and 8)

the impact of the invention on the industry, and the commercial value of its practice.

JURY INSTRUCTION NO. 32

**ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every element of the claim must be present within a single item of prior art, whether that prior art is a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. In other words, a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider what is expressly stated or present in the item of prior art, and also what is inherently present. Something is inherent in an item of prior art if it is always present

38

in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

In this case, defendant contends that claims 26-30 and 45 of the '683 Patent and claims 1-2, 5-6, 8, 21 and 29 of the '516 Patent, are invalid because they are anticipated. If you find that SAP has proved by clear and convincing evidence that a claim is anticipated, then you must find that the claim is invalid.

JURY INSTRUCITON NO. 36

<u>Expert Opinion</u>

The Rules of Evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for expert witnesses.  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that other evidence outweighs it, you may disregard the opinion entirely.

The experts in this case were:

Edward Davis

Daniel Menasce

Brooks Hilliard

Harry Manbeck, Jr.

Alfred Weaver

## JURY INSTRUCTION NO. 37

### <u>DUTY TO DELIBERATE</u>

Any verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate in an effort to reach agreement if you can do so without doing violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning verdict.

Remember at all times, you are not partisans.  You are judges – of the facts. Your sole interest is to seek the truth from the evidence in the case.

JURY INSTRUCTION NO. 38

<u>VERDICT</u>

Upon retiring to the jury room you should first select one of your member to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.  Verdict forms have been prepared for your convenience.

[Explain form.]

You will take the verdict forms to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign it, and then signal for the clerk in preparation for your return to the courtroom.

If, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson, and summons one of my clerks, who will then bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.