**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| *e*PLUS INC.,             ) | |
|             ) | |
|        **Plaintiff,**       ) | **Civil Action No. 3:09-CV-620 (REP)** |
|             ) | |
|       **v.**               ) | |
|             ) | |
| **LAWSON SOFTWARE, INC.,**       ) | |
|             ) | |
|             ) | |
|             ) | |
|        **Defendant.**       ) | |

**PLAINTIFF *e*PLUS INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO ENFORCE PRIOR COURT ORDERS**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

*Counsel for Plaintiff, ePlus, Inc.*

TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 3

    A.  **Defendant May Not Introduce Undisclosed Demonstrations Of Its Systems And Undisclosed Rebuttal Expert Opinions** .................................................... 3

    B.  **Defendant May Not Offer Testimony About The "Development" Of Its Systems Through Mr. Lawson** ........................................................................ 9

    C.  **Defendant Stubbornly Refuses To Respect The Court's Order Excluding Mr. Knuth's Expert Opinions** ................................................................................ 12

    D.  **Testimony Concerning The J-CON System Must Be Excluded Because Dr. Shamos Does Not Cite Any Evidence To Support His Conclusory J-CON Obviousness Theories** ...................................................................................... 14

    E.  **Testimony Regarding The P.O. Writer System Must Be Strictly Limited In Light Of Prior Court Orders** .......................................................................... 18

III. CONCLUSION .......................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010)..................................................................................... 3

*ATD Corp. v. Lydall, Inc.*,
    159 F. 3d 534 (Fed. Cir. 1998)..................................................................................... 16

*Bott v. Four Star Corp.*,
    807 F.2d 1567 (Fed. Cir. 1986)..................................................................................... 3

*Chiron Corp. v. Genentech, Inc.*,
    268 F. Supp. 2d 1117 (E.D. Cal. 2002) ...................................................................... 3

*Coles v. Perry*,
    217 F.R.D. 1 (D.D.C. 2003)........................................................................................ 4

*Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*,
    534 F. Supp. 2d 616 (D. Md. 2008), *aff'd*, 310 Fed. Appx. 404 (Fed. Cir. 2009) .................... 4

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
    464 F.3d 1356 (Fed. Cir. 2006)............................................................................... 18, 19

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008)............................................................................... 16, 19

*Izumi Prods. Co. v. Koninklijke Philips Electronics N.V.*,
    140 Fed. Appx. 236 (Fed. Cir. 2005)........................................................................... 16

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004) .................................................................................. 18

*Linear Tech. Corp. v. Micrel, Inc.*,
    2006 U.S. Dist. LEXIS 96860 (N.D. Cal. June 9, 2006)............................................... 3

*Motorola Credit Corp. v. Uzan*,
    561 F.3d 123 (2d Cir. 2009)........................................................................................ 2

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005).................................................................................. 17

*Orion IP, LLC v. Mercedes-Benz USA, LLC*,
    2008 WL 5378040 (E.D. Tex. 2008), *rev'd on other grounds*, 605 F.3d 967 (Fed. Cir. 2010)
    ..................................................................................................................... 17, 18

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
    536 F.3d 1256 (Fed. Cir. 2008) .................................................................................. 18

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996)..................................................................................... 3

*Takeda Chem. Indus. v. Mylan Labs., Inc.*,
  459 F. Supp. 2d 227 (S.D.N.Y. 2006) ............................................................... 3

*Third Wave Techs. Inc. v. Stratagene Corp.*,
  405 F. Supp. 2d 991 (W.D. Wis. 2005) ............................................................. 3

*Tritek Techs., Inc. v. United States*,
  67 Fed. Cl. 727 (Fed. Cl. 2005) ......................................................................... 7

*U.S. v. Loggins*,
  486 F.3d 977 (7th Cir. 2007) .............................................................................. 4

*Upjohn Co. v. Mova Pharm. Corp.*,
  225 F.3d 1306 (Fed. Cir. 2000) ................................................................... 17, 19

**Statutes**

35 U.S.C. § 285 ........................................................................................................ 3

**Rules**

Fed. R. Civ. P. 26 ............................................................................................ 8, 9, 16

Fed. R. Civ. P. 37 .............................................................................................. 3, 4, 8

Fed. R. Evid. 602 .................................................................................................... 12

## I.      INTRODUCTION

Throughout this litigation Defendant has chosen to treat Court Orders as mere suggestions.  Now, on the eve of trial, Defendant once again argues in its Opposition that it is entitled to introduce testimony and evidence the Court has already excluded.  Defendant makes this argument even as, in the very same breath, it pays lip-service to, and feigns outrage at the notion it would ever violate the Court's Orders.

To take but one example, Defendant initially suggests in its Opposition "that it intends to fully comply with the Court's Order limiting Mr. Knuth to testifying about source code issues in response to Mr. Niemeyer."  Opp'n Br. at 13.  Yet in the very same paragraph, Defendant shamelessly reveals its plan to ignore the Court's Order by introducing testimony from Mr. Knuth drawn from his entire — newly revised — expert report.  Although the Court has already ruled otherwise, Defendant contends that Mr. Knuth may testify about all opinions expressed in his expert report because "Mr. Knuth testified about source code issues throughout his report." *Id*. at 14.

Similarly, Defendant initially claims in its Opposition that it does not intend to introduce excluded "testimony regarding [the Lawson legacy] systems through Mr. Lawson."  *Id.* at 13. Yet Defendant acknowledges almost immediately that Mr. Lawson plans to testify about "the development of the accused systems" to demonstrate Defendant's "lack of specific intent to cause infringement."  *Id.* at 12.  Of course Mr. Lawson's proposed testimony is a "carbon copy" of the excluded expert opinions of Dr. Shamos, who opined that the development of the accused software from Lawson Legacy Systems showed Defendant's lack of specific intent to cause infringement.  The Court has — on at least four occasions — excluded testimony and evidence about prior versions of Defendant's software **and** explicitly ruled that the development of

Defendant's software *is not "pertinent to lack of specific intent to induce infringement*."
Defendant's refusal to heed these Orders is pure legal chutzpah.[1]

Defendant's Opposition is chock-full of additional admissions about evidence and
testimony it intends to introduce that has either already been excluded by Court Orders or was
never disclosed by Defendant.  For example:

- Defendant intends to present a demonstration of the accused systems that it never
  produced through Mr. Hvass, a witness Defendant never identified in its initial
  disclosures or interrogatory responses.  *Id.* at 9-11.

- Defendant seeks to elicit rebuttal expert testimony from Mr. Hvass even though
  Defendant neither identified Mr. Hvass as an expert witness, nor provided *e*Plus with an
  expert report disclosing the opinions Mr. Hvass seeks to offer at trial.  *Id.* at 7-9.

- Defendant admits that Dr. Shamos cannot offer any anticipation opinions concerning the
  J-CON system, yet Defendant suggests that Dr. Shamos's excluded anticipation opinions
  can be magically transformed into admissible obviousness opinions just because
  Defendant says so*.  Id.* at 14-17.

Absent an Order granting *e*Plus's Motion, Defendant will attempt to introduce testimony
and evidence at trial that the Court has already excluded — in some instances, repeatedly.  At a
minimum, Defendant's plans to introduce excluded testimony and evidence will seriously
disrupt, and unnecessarily prolong, the trial.  Each time Defendant attempts to offer excluded
exhibits or elicit excluded testimony, *e*Plus will be forced to interrupt witness examinations and
object to Defendant's violation of prior Court Orders.  Trial is fast approaching and Defendant
should not be permitted to treat Court Orders as optional advisory opinions.  Respectfully, the
Court should grant *e*Plus's Motion and preclude Defendant from offering through Mr. Knuth,
Mr. Hvass, Mr. Lawson and Dr. Shamos evidence and testimony that has already been

---

[1]    "Chutzpah" is a "legal term of art" and has been described as "that quality enshrined in a
man who, having killed his mother and father, throws himself on the mercy of the court because
he is an orphan."  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 n.5 (2d Cir. 2009) (citation
omitted).

excluded.[2]

## II.    ARGUMENT

### A.    Defendant May Not Introduce Undisclosed Demonstrations Of Its Systems And Undisclosed Rebuttal Expert Opinions

Defendant admits in its Opposition that it intends to offer at trial demonstrations of the accused systems it never produced in discovery and rebuttal expert noninfringement opinions it never disclosed.  What is more, Defendant unabashedly lays out its plan to introduce this undisclosed evidence through Mr. Hvass, a witness Defendant never identified in its initial disclosures or its interrogatory responses.  Defendant's disclosure violations with respect to the proposed testimony of Mr. Hvass are legion.  Under Federal Rule of Civil Procedure 37, sanctions for a failure to identify a witness, disclose expert opinions or produce discovery are automatic and mandatory unless the party facing the sanction can prove that its violation was

---

[2]    Now that ePlus has agreed to waive its Seventh Amendment right to a jury trial on the issue of willfulness and the Court will instead hear evidence on this issue in post-trial hearings, Defendant's refusal to follow Court Orders is a factor the Court may consider in deciding willfulness and determining whether to award ePlus attorneys' fees.  *See Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir. 1986) ("In determining whether an infringer acted in bad faith … the court will consider the totality of the circumstances, including … the infringer's behavior as a party to the litigation."); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) ("Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional under § 285."); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed. Cir. 2010) (case may be found exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, misconduct during litigation, or vexatious litigation); *Linear Tech. Corp. v. Micrel, Inc.*, 2006 U.S. Dist. LEXIS 96860 (N.D. Cal. June 9, 2006) (awarding treble damages to plaintiff for willful infringement and holding that "improper litigation tactics or otherwise bad faith conduct during the course of litigation weighs in favor of a finding of willful infringement"); *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1124 (E.D. Cal. 2002) (denying defendant's motion for summary judgment of non-willfulness and holding "bad faith conduct in litigation is a factor that may be considered in evaluating whether an infringer acted willfully"); *Takeda Chem. Indus. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 250 (S.D.N.Y. 2006) (considering defendant's disobedience of multiple court orders as a factor in awarding attorneys' fees to plaintiff under 35 U.S.C. § 285); *Third Wave Techs. Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1017 (W.D. Wis. 2005) (taking into account defendant's disobedience of a court order as a factor in awarding enhanced damages and attorneys' fees to plaintiff).

substantially justified or harmless.  *See, e.g., Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616 (D. Md. 2008), *aff'd*, 310 Fed. Appx. 404 (Fed. Cir. 2009) (the only exceptions to exclusion of evidence are in situations in which the failure to disclose can be substantially justified or is harmless); *Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003) (defendant's failure to timely disclose documents and witnesses results will result in automatic sanction of exclusion of evidence unless defendant can establish that failure was harmless); *see also* Ex. 3 (Sept. 7, 2010 Hearing Tr.) at 94:19 – 95:7 (quoting Rule 37 and noting that exclusion is the typical remedy for failure to disclose information).[3]  Pursuant to Rule 37, the Court should enter an Order precluding Mr. Hvass from offering (1) a demonstration of the accused systems that Defendant never produced and (2) rebuttal noninfringement expert opinions that Defendant never disclosed.

Defendant argues that Rule 37 sanctions should not apply to its failure to produce its demonstration of the accused systems because "the functionality that Mr. Hvass will demonstrate was fully disclosed in discovery."  Opp'n Br. at 9.  But Defendant's production of documents concerning the functionality of the accused systems cannot cure the severe prejudice that flows from its refusal to produce the demonstration.

First, regardless of whether Defendant produced selected documents about its systems, its failure to produce the demonstration means that *e*Plus will be ambushed at trial with a demonstration it has never before seen.  *See U.S. v. Loggins*, 486 F.3d 977, 988 (7th Cir. 2007) ("trial by ambush has absolutely nothing to recommend itself to the judicial process").  *e*Plus will not have the benefit of reviewing the demonstration to determine how best to cross-examine Mr. Hvass about the demonstration; *e*Plus will not have had the opportunity to depose Mr. Hvass

---

[3]    Exhibits 1-15 refer to exhibits to *e*Plus's opening brief.  Exhibits 16-40 refer to exhibits to *e*Plus's reply brief.

about the authenticity of the demonstration and the manner in which it was prepared; and *e*Plus's expert witnesses will not have the opportunity to study the demonstration and offer their opinions about the demonstration.

*In sharp contrast to the demonstration Defendant refuses to produce*, **the system demonstrations *e*Plus will offer at trial were produced seven months ago, prior to the close of fact discovery**. Accordingly, unlike *e*Plus, Defendant, its counsel, and its expert witnesses, have all had more than a half-year to closely and carefully review *e*Plus's demonstrations, inquire about the demonstrations at a deposition of *e*Plus's expert witness, and prepare cross-examination questions for trial concerning the demonstrations. As background, *e*Plus worked tirelessly for months to procure operational accused systems from Defendant.[4] Once the systems were fully operational, *e*Plus created several demonstrations of the accused systems. *All of these demonstrations were produced to Defendant on May 5, 2010*, *both as native video files and as sets of screen snapshots*. *See* Ex. 24 (Letter from M. Hayes to K. Drieman dated May 5, 2010). *e*Plus not only produced the demonstrations to Defendant during discovery, it also provided Defendant with the opportunity to inquire at length about the demonstrations during Dr. Weaver's two-day deposition in July 2010*.[5] Defendant should not be permitted to gain an unfair advantage at trial by ambushing *e*Plus with a demonstration of the accused systems, especially

---

[4]   *See, e.g.,* Ex. 16 (Email from J. Albert to W. Schultz dated Oct. 5, 2009); Ex. 17 (Email from J. Albert to W. Schultz dated Oct. 7, 2009); Ex. 18 (Letter from J. Albert to W. Schultz dated Oct. 15, 2009); Ex. 19 (Letter from J. Albert to W. Schultz dated Jan. 29, 2010); Ex. 20 (Letter from J. Albert to W. Schultz dated Feb. 5, 2010); Ex. 21 (Letter from M. Strapp to W. Schultz dated Feb. 8, 2010); Ex. 22 (Letter from J. Clements to J. Graham dated Feb. 9, 2010); Ex. 23 (Email from W. Schultz to J. Albert dated Apr. 20, 2010).

[5]   *See* Ex. 25 (Weaver Dep. Tr., July 20, 2010) at 55:23-57:6; 67:6-99:20; and 136:21-139:23; Ex. 26 (Weaver Dep. Tr., July 21, 2010) at 156:8-158:12; 168:13-176:23; 204:19-226:20; and 251:5-274:22.

when *e*Plus dutifully and timely produced to Defendant its own demonstrations of the accused systems.[6]

Defendant argues, in the alternative, that it should not be sanctioned for its failure to produce the demonstration because *e*Plus never propounded "any discovery request to which a trial demonstration by Mr. Hvass would be responsive."  Opp'n Br. at 10.  Defendant's argument is frankly preposterous.  ***ePlus issued no fewer than nine discovery requests to which Defendant's trial demonstration is responsive***.  *See, e.g.,* Ex. 27 (Pl.'s First Set of Reqs. for Produc. of Docs. to Def., July 24, 2009) at RFP Nos. 5, 6, 7, 9, 23, 26, 32, and 47; Ex. 28 (Pl.'s Second Set of Interrogs. to Def., Aug. 26, 2009) at Interrog. No. 16.  For example, *e*Plus sought during discovery:

- All documents and things that may be used as ***exhibits at any hearing in this case, including***, but not limited to, a Markman hearing, a hearing on a dispositive motion and ***trial***.  (RFP No. 9).

- All documents and things that refer, reflect, or relate to ***any*** advertisement, promotion, display, ***demonstration*** or marketing ***by Lawson*** or its predecessors ***regarding its Electronic Sourcing and Procurement System***(s) and/or Service(s), products, applications, services, processes and/or operations or by others after August 10, 1994 including, without limitation, technical bulletins or updates, operations manuals, training manuals, bills of material, brochures and product descriptions.  (RFP No. 23).

- All documents and things that refer, reflect, or relate to ***any*** display, ***demonstration***, presentation, speech, seminar, webinar, sales pitch, training program, ***concerning Lawson's Electronic Sourcing and Procurement System***(s) and/or Service(s), products, applications, services, processes and/or operations.  (RFP No. 26).

Similarly, *e*Plus sought documents that ***support, refute, or relate*** to any of ***Lawson's Affirmative Defenses*** (RFP No. 5); documents ***supporting any contention that any claim of the patents in***

---

[6]   Defendant's failure to produce the demonstration it intends to offer at trial is no different than its failure to produce during discovery the video of the TV/2 system (DX-112).  Just as the Court excluded DX-112 from admission at trial because DX-112 was "not disclosed," the Court should also exclude from admission at trial Defendant's undisclosed demonstration.  *See* Order (Dkt. No. 516, Nov. 19, 2010) (excluding from evidence DX-112).

**suit is not infringed** (RFP No. 6); and documents **provided to, used by, received by, consulted or relied upon by any trial witness** (RFP No. 7).

Defendant's contention that its demonstration is not a "document" and therefore not responsive to the requests set forth above is also nonsensical.  Opp'n Br. at 10.  *e*Plus specifically defined "documents" in each of the above requests to include, among other things, recorded, computerized or electronic data; videotape, sound recordings, and motion pictures; computer, electronic, mechanical or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, programs, etc.); and digital image files, video files (*e.g.,* data stored in MPEG, JPEG, GIF, TIFF and BMP formats) and any other information stored magnetically, optically or electronically.  *See* Ex. 29 (Pl.'s First Set of Interrogs. to Def., July 24, 2009) at ¶ 6.  Defendant cannot seriously dispute that its unproduced demonstration is responsive to several of *e*Plus's discovery requests.

Mr. Hvass's proposed trial testimony should be excluded not only because it concerns a demonstration of the accused systems that was never produced, but also because it will include rebuttal expert opinions that Defendant has never disclosed.  Indeed, Defendant admits in its Opposition that Mr. Hvass will provide rebuttal "testimony about how Dr. Weaver's demonstration of the accused system using PX-402 is not representative of the accused systems provided by Lawson to customers and not how Lawson demonstrates the accused systems to customers."  Opp'n Br. at 6.

While Defendant incorrectly characterizes this proposed rebuttal testimony as "fact testimony" rather than "expert testimony,"  in fact, testimony offered from a purported fact witness, such as Mr. Hvass, about the demonstration of accused systems is impermissible expert opinion.  *See Tritek Techs., Inc. v. United States*, 67 Fed. Cl. 727, 734 (Fed. Cl. 2005) (excluding

from evidence statements from fact witness on demonstration of accused device as impermissible expert testimony).  Mr. Hvass cannot offer his opinions about the accuracy or authenticity of Dr. Weaver's demonstrations because Defendant did not disclose those opinions and the basis and reasons for them during discovery.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

Defendant has had *e*Plus's demonstrations of the accused systems for more than seven months.  Defendant's disclosed noninfringement expert, Dr. Shamos, could have reviewed the demonstrations and commented about the "representativeness" and "accuracy" and "authenticity" of *e*Plus's demonstrations in his expert reports.  Opp'n Br. at 6.  Indeed, Mr. Hvass, who attended Dr. Weaver's depositions, could have been disclosed as an expert by Defendant, and Defendant could then have submitted a report from Mr. Hvass disclosing the same opinions he now plans to offer at trial.  Instead, Defendant deliberately chose to flout the disclosure requirements of Rule 26 in an effort to ambush *e*Plus at trial with a demonstration it never produced and rebuttal expert opinions it never disclosed.  Defendant's tactical decision to violate Rule 26 to gain an unfair advantage at trial has consequences.  Pursuant to Rule 37, Mr. Hvass may not offer undisclosed rebuttal noninfringement opinions or testimony regarding an unproduced demonstration.

Defendant's plan to offer undisclosed expert opinions and an unproduced demonstration is especially galling because Defendant seeks to introduce this information through Mr. Hvass, a witness Defendant did not disclose during fact discovery.  In its Opposition, Defendant argues that its failure to disclose Mr. Hvass pursuant to Rule 26(a) and Rule 26(e) is of no moment because *e*Plus did not object to Defendant's witness list at the Final Pretrial Conference on

September 27, 2010.[7]  Conspicuously missing from Defendant's Opposition, however, is the fact that *Defendant did not inform ePlus about its plan to introduce through Mr. Hvass a demonstration it never produced and rebuttal expert opinions it never disclosed until a November 15, 2010 telephone conference, seven weeks after the Final Pretrial Conference and less than two months before trial*.  *e*Plus filed this Motion right after Defendant confirmed that it would not withdraw Mr. Hvass from its witness list.  *e*Plus has not waived any objection to the trial testimony of Mr. Hvass.  To the contrary, *e*Plus promptly and timely objected to the admissibility of testimony and information that Defendant never disclosed during discovery in violation of Rule 26.

### B. Defendant May Not Offer Testimony About The "Development" Of Its Systems Through Mr. Lawson

By its own admission, Defendant intends to offer Mr. Lawson to testify about the "development" of the accused systems.  Opp'n Br. at 12.  But Defendant has repeatedly alleged that *the accused systems were developed from the Lawson Legacy Systems*; thus, any testimony regarding the "development" of the accused systems is *de facto* testimony about the excluded

---

[7]    Defendant also suggests that its failure to disclose Mr. Hvass during discovery was harmless because "the identity and the subject matter of his testimony have been known to ePlus since at least the time he was deposed on June 8."  Opp'n Br. at 8.  That argument is baseless.  Mr. Hvass was identified by Defendant prior to his deposition exclusively as a Rule 30(b)(6) witness concerning the excluded Lawson Legacy Systems.  *See* Ex. 7 (Hvass Dep. Tr., June 8, 2010) at 11:4-17; Ex. 8 (Hvass Dep., Hvass Ex. 1).  Accordingly, Mr. Hvass's deposition testimony was limited to the Lawson Legacy Systems.  *Id.*  Indeed, at no point in his deposition did Mr. Hvass ever offer any substantive testimony about the systems *e*Plus accuses of infringement, let alone describe the demonstration of the accused systems he now intends to provide at trial.  The deposition excerpts Defendant cites as evidence of Mr. Hvass's testimony regarding the accused systems were unrelated to both the demonstration of the accused systems and the rebuttal noninfringement expert opinions Mr. Hvass now intends to offer at trial.  *See, e.g.*, Ex. 30 (Hvass Dep. Tr., June 8, 2010) at 15:13-18:1 (inquiring about past positions that Mr. Hvass has held at Lawson); *id.* at 33:22-34:21 (inquiring about other software loaded on the Lawson servers running the alleged Lawson 5.0 and 6.0 systems); and *id.* at 178:21-179:6 (inquiring about the commercial acceptability of Lawson versions 5.0 and 6.0 to Defendant's current customers); *see also id.* at 189:4-10; 210:9-211:2.

Lawson Legacy Systems. According to the now-excluded testimony of Defendant's experts Dr. Shamos, Mr. Knuth, and Mr. Green, Defendant can no more offer testimony about the so-called "development" of the accused systems without discussing the excluded Lawson Legacy Systems than a man can tell you how he got where he is without mentioning where he came from. For example, Dr. Shamos testified during his deposition that all current versions of the accused systems are built upon previous versions of the now-excluded Lawson Legacy Systems. Ex. 31 (Shamos Dep. Tr., June 16, 2010) at 64:15-16 ("versions build on previous versions"). And as the basis for his opinion that Defendant lacked intent to infringe — the same point Defendant now seeks to establish with Mr. Lawson's testimony — Dr. Shamos stated that "Lawson has been selling the [accused] IC, RQ, and PO modules for many years, going back to at least the early 1990s and well before the priority date of the Patents – *most of the accused features were part of or similar to Lawson's non-infringing prior software* . . . ." Ex. 32 (Shamos Rebuttal Rpt., June 3, 2010) at ¶ 263(a).[8] Mr. Philip Green, Defendant's damages expert, made similar statements in his since-excluded report regarding the development of the accused systems from the Lawson Legacy Systems, stating, for instance, that "Lawson has been selling *the same general product since about 1993 with new versions issued from time-to-time*." Ex. 33 (Green Rpt., June 3, 2010) at 9.[9]

---

[8] *See also* Ex. 32 (Shamos Rebuttal Rpt., June 3, 2010) at ¶ 23 ("The Requisition module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release."); *id.* at ¶ 26 ("The Inventory Control module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release."); *id.* at ¶ 29 ("The Purchase Order module has had essentially the same structure, function, and operation since at least Version 5.0 through the current release."); *id.* at ¶ 33 ("The Item Master database has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release of the Inventory Control module.").

[9] *See also* Ex. 33 (Green Rpt., June 3, 2010) at 10 ("Lawson has been offering its version 6.1 product since at least 1994. This system included requisition capabilities, centralizing of invoicing, and payments and inventory functions. I understand that Lawson still offers these

Mr. Lawson's proposed testimony on the so-called "development" of the accused systems is therefore nothing more than a "Trojan horse" to introduce excluded evidence regarding the Lawson Legacy Systems.  Indeed, Defendant's stated objective for Mr. Lawson's testimony — to prove lack of intent to infringe — is the same reason Defendant previously proffered as a basis for the admissibility of Dr. Shamos's opinions on the excluded Lawson Legacy Systems. *Compare* Opp'n Br. at 12 *with* Ex. 34 (Defendant's Opp'n Br. to *e*Plus's Mot. in Limine No. 2, Dkt. No. 301, July 2, 2010) at 2.  The Court explicitly rejected this rationale, ruling that ***the Lawson Legacy Systems are not "pertinent to lack of specific intent to induce infringement***." *See* Ex. 9 (Hearing Tr., Dkt. No. 393, July 28, 2010) at 187:19-24 ("I don't think [the Lawson Legacy Systems are] pertinent ***to lack of specific intent to induce infringement*** either or to discredit *e*Plus's infringement and damages contention for the same reason." (emphasis added)). Indeed, the Court has ordered the Lawson Legacy Systems stricken from the case on ***four separate occasions***.[10]  Acknowledging that its experts**,** Dr. Shamos, Mr. Knuth, and Mr. Green, have been precluded from testifying on the Lawson Legacy Systems, Defendant seeks to introduce this same excluded testimony through a purported fact witness, Mr. Lawson.  But the

---

products today without significant changes from what was offered before May 2002."); *id.* at 12 ("Prior to May 2002, Lawson offered procurement software that has not been accused of infringement.  Lawson's alleged infringement is based on its inclusion of a particular feature set in its procurement software.  Accordingly, the accused technology amounts to only an incremental portion of the functionality included in Lawson's procurement systems."); *id.* at 33 ("In virtually all other respects, the prior Lawson systems were identical to the version 8.0.3 system and had the added benefit of being compatible with its other systems.").

[10]   *See* Ex. 35 (Hearing Tr., Dkt. No. 232, May 24, 2010) at 103:21-104:7; Ex. 9 (Hearing Tr., Dkt. No. 393, July 28, 2010) at 186:15-188:7; Ex. 36 (Hearing Tr., Dkt. No. 444, Aug. 17, 2010) at 11:18-12:10; and Ex. 3 (Hearing Tr., Dkt. No. 475, Sept. 7, 2010) at 116:3-117:19.

Court's Orders apply to any testimony regarding the Lawson Legacy Systems, whether from an expert or a fact witness.[11]

ePlus would be severely prejudiced if Mr. Lawson were permitted to testify about the "development" of the accused systems and thereby introduce excluded evidence and testimony about the Lawson Legacy Systems.  Because every exhibit and demonstration relating to the Lawson Legacy Systems has already been correctly excluded, Mr. Lawson's *ipse dixit* about the Lawson Legacy Systems will be the only evidence presented at trial regarding the excluded prior versions of Defendant's systems.  Mr. Lawson will testify freely regarding the Lawson Legacy Systems without a shred of corroborating evidence and without fear of reproof on cross-examination.[12]  Respectfully, the Court should enforce its prior Orders excluding the Lawson Legacy Systems and issue an Order precluding Mr. Lawson from testifying about the so-called "development" of the accused systems at trial.

### C.   Defendant Stubbornly Refuses To Respect The Court's Order Excluding Mr. Knuth's Expert Opinions

Defendant suggests that *e*Plus's request to restrict Mr. Knuth's testimony to the specific portions of his expert report that concern source code "is entirely moot."  Opp'n Br. at 13. Defendant even pays homage in its Opposition to the Court Order "limiting Mr. Knuth's testimony to a rebuttal of Mr. Niemeyer's testimony about source code."  *Id.*  But even as

---

[11]   Even if the Court had not already excluded the Lawson Legacy Systems on **four separate occasions**, Mr. Lawson would still not be able to testify about the accused systems because he acknowledged during his deposition that he is several years removed from any software development at Lawson and therefore possesses no personal knowledge about the actual operation of the accused systems.  *See* Ex. 37 (Lawson Dep. Tr., May 28, 2010) at 7:20-8:1; 25:6-11; Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

[12]   In fact, Mr. Lawson cannot even be confined by his prior deposition testimony, as he exhibited little recollection of any details about the Lawson Legacy Systems during his deposition.  *See, e.g.,* Ex. 37 (Lawson Dep. Tr., May 28, 2010) at 15:17-16:4; 24:11-20; 27:13-28:2; 29:5-10; 32:8-33:10; 40:19-41:1; 43:14-22; 44:16-45:18; and 53:3-12.

Defendant proclaims that it will "fully comply with the Court's Order," Defendant argues that Mr. Knuth's testimony should not be limited to those few paragraphs of Mr. Knuth's expert report that deal with *source code* because "Mr. Knuth testified about *source code issues* throughout his report."  Opp'n Br. at 14.

It is not clear why Defendant believes it can violate an explicit Court Order.  Perhaps Defendant thinks that if it unilaterally changes the Court's Order specifically prohibiting testimony unrelated to "*source code*" into a more ambiguous order only prohibiting testimony about "*source code issues*" it will then be free to introduce opinions in Mr. Knuth's expert report that, according to Defendant, have some tangential relationship to "source code issues." Whatever Defendant's rationale may be, however, there simply can be no justification for Defendant's refusal to abide by a straightforward and unambiguous Court Order.

The Court has already warned Defendant that if Mr. Knuth testifies to anything beyond "the meaning of the source code" it will "get smacked."  Ex. 3 (Sept. 7, 2010 Hearing Tr.) at 116:17-117:13 (emphasis added).  Furthermore, the Court has already decided that Mr. Knuth's report included improper opinions on infringement and prior versions of Lawson software.  *Id.* ("Now, what's happened is that Lawson has taken advantage of the situation, has gone well beyond what it is that I ordered and contemplated. . . .  I don't want [Mr. Knuth] to get into *prior versions*, I don't want him to get into *infringement or invalidity*. . . .  If Knuth can testify only on *the meaning of the source codes*, then he can testify.  And that's all.") (emphasis added). Defendant refuses to heed the Court's warning and chooses to violate the Court's Order at its own peril.

Unless the Court restricts Mr. Knuth's testimony to those few paragraphs of his report that actually contain an analysis of source code and rebut Mr. Niemeyer's expert opinions (*i.e.,*

paragraphs 37 (except the first sentence), 48, 69-70, 82 (except the first two sentences), 83, 91 (except the last two sentences), 103 (except the second sentence), and 104), Defendant — by its own admission — will attempt to introduce all of the rest of Mr. Knuth's opinions that have already been excluded.[13]   Defendant offers no support in its Opposition for its conclusory contention that additional paragraphs of Mr. Knuth's report also concern source code, nor does Defendant challenge the fact that it never produced during discovery Appendices B, E and F to Mr. Knuth's August 25, 2010 expert report or the "Video Demonstrations 1-4" cited therein.[14] For all of these reasons, the Court should reaffirm its prior Order and strictly limit Mr. Knuth's testimony at trial to the specific paragraphs of his expert report that actually contain an analysis of the source code of the accused systems.

### D.   Testimony Concerning The J-CON System Must Be Excluded Because Dr. Shamos Does Not Cite Any Evidence To Support His Conclusory J-CON Obviousness Theories

Defendant concedes in its Opposition that Dr. Shamos cannot opine at trial that the J-CON system anticipates any of the asserted claims.  Opp'n Br. at 15 n.9.  Defendant also does not challenge the fact that Dr. Shamos does not rely on any documents or evidence to support his opinions that the combination of the J-CON system and either the system described in the Dworkin '940 patent or the P.O. Writer system renders obvious the asserted claims.  And Defendant cannot dispute that the only opinions Dr. Shamos provides in his claim chart concerning the J-CON system are anticipation opinions.

---

[13]   Appendix 1 to *ePlus's* opening memorandum is the August 26, 2010 expert report of Mr. Knuth, with those few paragraphs of Mr. Knuth's report that actually contain an analysis of source code highlighted.

[14]   Defendant's plan to elicit from Mr. Knuth rebuttal expert opinions that are based upon evidence Defendant never disclosed during discovery violates Rule 26 and this Court's disclosure obligations.

Defendant argues in its Opposition that Dr. Shamos relies upon the one remaining exhibit concerning the J-CON system, DX-96, to support his excluded anticipation theories.  But, Defendant fails to inform the Court that Dr. Shamos nowhere cites or relies upon DX-96 in support of his obviousness opinions with respect to the J-CON system.  Indeed, Dr. Shamos's only disclosed opinions with respect to his two J-CON obviousness theories are contained in *seven conclusory paragraphs in which Dr. Shamos never once cites DX-96*.  Ex. 12 (Shamos Invalidity Rpt., Dkt. No. 526-14) at ¶¶ 230-236.  For example, Dr. Shamos opines:

> To the extent that J-CON is not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with the Dworkin '940 patent.  The combination teaches all of the elements of asserted claims 3, 6, 26, 28, and 29 of the '683 patent, asserted claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and asserted claim 1 of the '172 patent as shown in Exhibits 3 and 4.  As such, the combination of J-Con and the '940 patent renders these claims invalid under 35 U.S.C. §103.

*Id.* at ¶ 230.  In fact, in certain instances Dr. Shamos does not even express his obviousness opinions in complete sentences in his report.  For instance, Dr. Shamos writes:  "One of skill in the art would have been motivated to make the combination because [*sic*]."  *Id.* at ¶ 231.

Left with no admissible evidentiary basis for Dr. Shamos's J-CON obviousness opinions, Defendant instead manufactures support *by deliberately mischaracterizing and re-labeling Dr. Shamos's excluded J-CON anticipation opinions as obviousness opinions and by expanding the scope of Dr. Shamos's obviousness opinions on the eve of trial*.  For example:

- Defendant mischaracterizes Dr. Shamos's anticipation claim chart as "claim charts" relating to the "combination of J-CON and Dworkin" and "J-CON and P.O. Writer." Opp'n Br. at 16 n.11 (referencing Dkt. Nos. 530-7; 530-8; 530-11 and 530-12). *In fact, no such claim charts exist.* Rather, Defendant misleads the Court by doctoring Dr. Shamos's anticipation claim chart to hide columns between the J-CON column and the Dworkin and P.O. Writer columns to suggest that this anticipation chart actually relates to obviousness "combinations."  Defendant's petty mischief is belied both by the chart itself, which reveals that all of Dr. Shamos's opinions relating to the J-CON system are *anticipation opinions*, and by Dr. Shamos's "condensed summary of the opinions

15

contained in [the claim chart]," in which he states *that his opinions, as set forth in his claim chart, only concerns anticipation of the asserted claims by the P.O. Writer system and the J-CON system*.  Ex. 38 (Shamos Invalidity Rpt., May 5, 2010) at ¶ 106; Ex. 39 (Shamos Invalidity Rpt., Ex. 4) (excerpting exhibit).

- Defendant misleadingly attempts to broaden the scope of Dr. Shamos's expert opinions by mischaracterizing invalidity theories regarding the J-CON system disclosed only in Defendant's interrogatories as Dr. Shamos's expert opinions.  *See, e.g.,* Dkt. Nos. 530-11; 530-12.  But, Defendant deceptively omits the salient fact that *Dr. Shamos specifically disclaimed any reliance on those interrogatory responses*.  Ex. 38 (Shamos Invalidity Rpt., May 5, 2010) at ¶ 103 ("[The claim chart] also contains *matter from Lawson's interrogatories … that are distinct from my opinions…. I have expressed my own opinion in columns containing headings beginning 'Shamos Opinion.'*").

- Defendant baselessly claims that Dr. Shamos's obviousness opinions regarding the J-CON system "are obviously based on the entire preceding report."  Opp'n Br. at 16.  And yet, *Defendant does not and cannot cite to a single statement in Dr. Shamos's report where he opines that functionality allegedly present in the J-CON system renders obvious one or more of the asserted claims*.  *See* Ex. 38 (Shamos Invalidity Rpt., May 5, 2010) at ¶¶ 213-228.

As *e*Plus explained in its Motion to Exclude DX 97, DX 98 and DX 112 — which Motion the Court granted — an expert cannot simply re-label his anticipation opinions as obviousness opinions.  *See Izumi Prods. Co. v. Koninklijke Philips Electronics N.V.*, 140 Fed. Appx. 236, 244 (Fed. Cir. 2005) (district court did not abuse its discretion in excluding conclusory expert testimony regarding infringement where opinion was based solely on expert's subjective belief); *ATD Corp. v. Lydall, Inc.*, 159 F. 3d 534, 546 (Fed. Cir. 1998) (reversing jury verdict finding claims obvious where evidence taught away from combining references and Defendant's expert offered conclusory obviousness opinions and relied on the same references he had used for his anticipation opinions).  Defendant does not cite any contrary authority.

Moreover, Dr. Shamos's conclusory and unsupported obviousness opinions are legally insufficient as a matter of law.  As the Federal Circuit made clear in *Innogenetics, N.V. v. Abbott Labs.*, conclusory invalidity opinions lacking evidentiary or analytical basis should be stricken under Rule 26:

> The district court did not err in finding that [Defendant's expert] report on the alleged obviousness of the asserted claims of the [patent-at-issue] was deficient for purposes of disclosure under Rule 26. *For each of the claims that he analyzes for obviousness, [Defendant's expert] merely lists a number of prior art references and then concludes with the stock phrase "to one skilled in the art it would have been obvious* to perform the genotyping method in [claims 1-9 & 12-13] of the [patent-at-issue]." *There must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. Nowhere does [Defendant's expert] state how or why a person ordinarily skilled in the art would have found the claims of the [patent-at-issue] obvious in light of some combination of those particular references.* As the district court found: "*It is not credible to think that a lay jury could examine [the prior art] that defendant cited as prior art or any of the other references and determine on its own whether there were differences among them and the [patent-at-issue]*." *Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness*.

512 F.3d 1363, 1373 (Fed. Cir. 2008) (emphasis added and citations omitted). *See also Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000) (reversing district court finding of obviousness noting that "there must be factual support for an expert's conclusory opinion"); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1325 (Fed. Cir. 2005) (affirming denial of JMOL on invalidity since Defendant expert's "conclusory evidence is hardly enough to meet [Defendant's] high burden of clear and convincing evidence with respect to anticipation and obviousness").

Dr. Shamos *never described* how the J-CON system and any other system can be combined to render obvious any of the asserted claims. Instead, Dr. Shamos offers *conclusory opinions that two prior art combinations including the J-CON system render the asserted claims obvious*. The Defendant's expert in *Orion IP, LLC v. Mercedes-Benz USA, LLC* evoked language nearly identical to Dr. Shamos. The expert in *Orion* explained after providing his anticipation theories that:

> If the jury should find that there's a missing step in some of the prior art compared to the claims, I think it's for certain that someone of ordinary skill in the art would have been able to combine either from their own knowledge or from one of the other reference that I just suggested, the two other pieces of prior art, you can take parts from them to complete an embodiment and thereby also made obvious the claims of the [patents-in-suit].

2008 WL 5378040, *3 (E.D. Tex. 2008) (denying motion for JMOL because of deficiencies in expert's conclusory and unsupported obviousness opinion), *rev'd on other grounds*, 605 F.3d 967 (Fed. Cir. 2010). Like the expert in *Orion*, Dr. Shamos's obviousness opinions are conclusory and unsupported. Indeed, Dr. Shamos's opinions concerning the J-CON system are not even tied to particular claims as Dr. Shamos does not analyze or even mention how the cited combinations of references render obvious any asserted claims. *See, e.g., DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1372 (Fed. Cir. 2006) (the factfinder "must evaluate obviousness on a claim-by-claim basis"). Because Dr. Shamos's obviousness opinions concerning the J-CON system are conclusory and unsupported, the Court should preclude Dr. Shamos from offering those opinions at trial.[15]

**E.   Testimony Regarding The P.O. Writer System Must Be Strictly Limited In Light Of Prior Court Orders**

The Court should exclude (1) any testimony or expert opinion that the P.O. Writer system renders obvious any asserted claim and (2) any testimony or expert opinion that the P.O. Writer system anticipates claims 3, 28 and 29 of the '683 patent.

---

[15]   As the Court has made clear, fact testimony that is not tied to expert testimony is either not relevant or unduly prejudicial. *See* Ex. 40 (Hearing Tr., Dkt. No. 526-17, Sept. 28, 2010) at 263:12-13, 268:24 – 269:6. *See also Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 n. 4 (Fed. Cir. 2004). Defendant does not cite any contrary authority. Thus, the Court should exclude not only Dr. Shamos's conclusory and unsupported obviousness opinions regarding the J-CON system, but also any fact testimony and evidence concerning the J-CON system.

First, Defendant agrees that Dr. Shamos's only P.O. Writer obviousness theory is that the combination of the J-CON system and the P.O. Writer system renders obvious each asserted claim.  Because Dr. Shamos's conclusory opinions that the J-CON system renders obvious any asserted claim must be excluded for the reasons set forth above, the Court should also exclude any opinion that the P.O. Writer system in combination with the J-CON system renders obvious any asserted claim for the same reasons.  *See, e.g., Innogenetics*, 512 F.3d at 1373; *Upjohn*, 225 F.3d at 1311. [16]

Second, Defendant should also be precluded from offering any testimony that the P.O. Writer system anticipates claims 3, 28 and 29 of the '683 patent in light of the Court's order excluding DX-121 and DX-122.  ***Defendant points to no admissible evidence in Dr. Shamos's claim chart or expert reports as support for his opinion that the P.O. Writer anticipates each element of claims 3, 28 and 29 of the '683 patent***.  In light of the limitations of Dr. Shamos's actual opinions, Defendant manufactures new evidence in support of Dr. Shamos's opinions that the P.O. Writer anticipates each element of claims 3, 28 and 29.  For example, Defendant claims that Dr. Shamos "adopted information from Lawson's interrogatory responses, through which he cited to [another exhibit]."  Opp'n Br. at 18.  But, again, Defendant ignores the critical fact that Dr. Shamos ***specifically disclaimed any reliance on those interrogatory responses***.  Ex. 38 (Shamos Invalidity Rpt., May 5, 2010) at ¶ 103 ("[The claim chart] also contains matter from Lawson's interrogatories … ***that are distinct from my opinions***….  I have ***expressed my own***

---

[16]  Like Dr. Shamos's obviousness opinions concerning the J-CON system, Dr. Shamos's obviousness opinions with respect to the P.O. Writer system (as combined with the J-CON system) should be excluded for the additional reason that these "opinions" are not tied to any particular claim and there is no discussion of how the cited combination of references render obvious any asserted claims.  *See, e.g., DyStar*, 464 F.3d at 1372.

*opinion in columns containing headings beginning 'Shamos Opinion.'*").[17]  Because Dr. Shamos did not rely on admissible evidence for his opinions that the P.O. Writer anticipates each element of claims 3, 28 and 29 of the '683 patent, those opinions should be excluded at trial.

## III.   CONCLUSION

For the foregoing reasons and the reasons set forth in *e*Plus's opening memorandum, *e*Plus respectfully requests that the Court issue an Order (1) excluding Mr. Hvass from offering any trial testimony; (2) precluding Mr. Lawson from offering testimony regarding any prior versions of the Lawson systems; (3) limiting Mr. Knuth's testimony at trial to those few paragraphs of his expert report in which he analyzes the source code for the accused systems; (4) precluding Defendant from offering any testimony or other evidence concerning the J-CON system; (5) precluding Defendant from offering any testimony or other evidence concerning its allegation that the P.O. Writer system in combination with the J-CON system render obvious any asserted claim; and (6) precluding Defendant from offering any testimony or other evidence concerning its allegation that the P.O. Writer system anticipates claims 3, 28 and 29 of the '683 patent.

---

[17]   Likewise, Defendant suggests that the Court should treat Dr. Shamos's introductory statements about the P.O. Writer system as evidence in support of his obviousness opinions, even though Dr. Shamos never cites any of those introductory statements evidence as support for his obviousness opinions.  Opp'n Br. at 18.

Respectfully submitted,

*e*Plus, Inc.

By Counsel

December 21, 2010                    _____/s/_____

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com

*Counsel for Plaintiff, ePlus, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2010, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S REPLY IN SUPPORT OF ITS
MOTION TO ENFORCE PRIOR COURT ORDERS**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc.***

_____/s/_____
Craig T. Merritt (VSB #20281)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com