# EXHIBIT 32

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |

## REBUTTAL REPORT OF EXPERT MICHAEL I. SHAMOS, PH.D, J.D.
## CONCERNING NON-INFRINGEMENT

.

    b. You can request stock items, non-stock items, special items, and services on a single requisition. . . .

    c. You can quickly create purchase orders from requisitions using a one step process.

    d. You can split requisitions among multiple purchase orders. Buyer review is available before creation of a purchase order, which enables you to combine multiple requisitions for the same line item to one purchase order. (Requisitions Procedures Manual (Release 6.0) (January 1994) (© 1994) at Introduction, v) (L0009725-0009773) at L0009729).

    e. "The Lawson Requisition application lets you create requests with demand on stock and demand on vendors, replenish part locations, and process and manage requisitions." (Requisition User Guide (Version 9.0) (November 2006) at 11 (L0044880); Christopherson Depo at 114:1-22).

23. The Requisition module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release. ((*See, e.g.,* Requisitions Procedures Manual (Release 6.0) (January 1994) (© 1994) at Introduction, v) (L0009725-0009773); Requisition User Guide (Version 9.0) (November 2006); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 6 (L0017235).)

24. Lawson has been selling its Inventory Control module since well before the priority date of the Patents. The purpose of Lawson's Inventory Control module is to set up items within the Item Master database, which was intended from inception to provide customers with away to manage their inventory of products (as opposed to providing a list of products offered for sale by vendors) and to control how many of each item the customer actually has. "So you might do periodic inventory to make sure that what your stock says is in the computer is actually what you do have." (*See, e.g.,* Christopherson Dep. at 120:3-120:11). In addition to setting up the Item Master database, the Inventory Control module essentially keeps track of the customer's inventory, where is the inventory at. Customers may have more than one supply

room, may have distribution centers, and the IC module keeps track of the current stock level of those locations. (*See, e.g.,* Christopherson Dep. at 122:8-122:14).

25. The Inventory Control system "maintains and controls inventory for up to 9,999 different companies. At a minimum the Inventory Control system provides the information necessary to support buying and selling operations. Controlling the inventory, knowing exactly what is in stock and where it is, is the first step. The second step is to manage the inventory by having the right amount of inventory available at the right time, reducing your inventory investment, while maintaining the desired customer service level. Lawson's Inventory Control System can have a significant impact on the success of your business." (Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994) at vii (L0012843).) It "lets you define items and manage inventory. The application receives items that you purchase from a vendor or replenish form another location and moves out items by issue, transfer or allocation." (Inventory Control User Guide (Version 9.0.1) (November 2008) at 13 (L0032261); Christopherson Depo at 120:3-11, 8-14.)

26. The Inventory Control module has had essentially the same basic structure, function, and operation since at least Version 5.0 through the current release. (*See, e.g.,* Inventory Control Procedures Manual (Release 6.0) (January 1994) (© 1994); Inventory Control User Guide (Version 9.0.1) (November 2008); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 1-3 (L0017230-32).)

27. Lawson also has been selling its Purchase Order module since well before the priority date of the Patents. Lawson's Purchase Order module functions in a number a different ways. A customer that does not use requisitions may use it to purchase an item or set of items or set of goods, services, etc. from a vendor. It may also be used with the Requisition module, which is how most of Lawson's customers use it. In this scenario, once a requisition has been approved, the PO module takes the approved requisition and creates the purchase order or purchase orders that are required to fulfill on the requisition, if the item is not in stock. If the item is in stock, it is just taken from stockroom, "unless of course you need some from the

8

stockroom, maybe you hit a minimum threshold of stocking levels and stuff, in which case the purchase order would go out." (*See, e.g.,* Christopherson Dep. at 124:17-125:17).

28. "The Lawson Purchase Order system is designed to assist Purchasing agents, Accounts Payable and Receiving clerks, and Accounting and Inventory Management personnel in buying inventory and internal supplies while minimizing inventory cost. You also have the ability to match vendor invoices to purchase orders. You can set up the system quickly and easily, especially if you use it with the Lawson Accounts Payable system. Once the invoice is approved and you release the invoice batch, the invoice becomes the responsibility of the Lawson Accounts Payable system." (Purchase Order Procedures Manual (Release 6.0) (January 1994) (© 1994) (L0013146-0013295 at L0013151.) "The Lawson Purchase Order application lets you create and issue purchase orders, and manage the receiving process." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 11 (L0044092); Christopherson Depo at 122:19-124:6.) "You can also create purchase orders from another application such as Inventory Control, Requisitions, or Order Entry." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 115 (L0044196).) "The Purchase Order application receives order requests from other applications and creates purchase orders from those requests." (Purchase Order User Guide (Version 9.0.1 (November 2008) at 146 (L0044227).)

29. The Purchase Order module has had essentially the same structure, function, and operation since at least Version 5.0 through the current release. (Purchase Order Procedures Manual (Release 6.0) (January 1994) (© 1994) (L0013146-0013295); Purchase Order User Guide (Version 9.0.1 (November 2008); Summary of 5.0 and 6.0 Differences – IC, PO & RQ at 3-6 (L0017232-35).)

30. The following discussion regarding the Item Master database supports my opinions, disclosed in detail herein, that Lawson's Accused Software does not comprise multiple product catalogs, means for selecting product catalogs, catalog selection protocols, and the like.

31. Lawson's Inventory Control module has always included a database ("Item Master") that allows customers to upload or enter data regarding items that could be ordered

9

30. The '172 Patent was filed with 78 claims. In a Preliminary Amendment, the Applicants cancelled claims 1-78 and added claim 79. In a first Office Action, the Patent Office rejected claim 79 under 35 U.S.C. §102(b) based on Dworkin and issued a double patenting rejection based on MPEP §804 and In re Schneller. This rejection relates to the situation where patent protection for the particular subject matter was "fully disclosed in and covered by the claims of the patent, [and] would be extended by allowance of the appealed claims. If there is no valid excuse or mitigating circumstances making it either reasonable or equitable to make an exception, and where there is no terminal disclaimer, the rule against "double patenting" must be applied. (MPEP §804).

31. In response, the Applicants argued that "a requisition only identifies needed items but the purchase order authorizes a vendor/supplier to supply an item or items to satisfy a need" and that Dworkin does not teach creating requisition orders, but only of creating an order for an item. The Applicants argued in contrast the claimed invention teaches a single requisition can include multiple items and be sourced to different vendors. However in a supplemental amendment, the Applicants cancelled claim 79 because it was identical to claim 19 of the '683 patent. The Applicants also added claims 81-84.

32. In a final Office Action, the Patent Office rejected claims 81-84 based on double patenting over the '683 patent and reiterated its rejection based on *In re Schneller*. In response, the Applicants stated that "inadvertently omitted the claimed subject matter from the '683 patent" and filed terminal disclaimer. In response, the Patent Office issued a notice of allowance for the pending claims.

33. A Request for *Ex Parte* Reexamination of claims 26-45 of the '683 Patent was filed on September 15, 2006. That Request listed four prior art references the raised a substantial new question of patentability: the P.O. Writer Manual; the Practical Guide to SABRE; the J-CON Manual; and the Gateway Printed Publications. On October 28, 2006, the Patent Office granted the Request because it found that each of these prior art references anticipated and renders obvious each of the claims for which reexamination was requested. In a Final Office Action

11

**Opinion 8: Lawson Does Not Indirectly Infringe the Asserted Claims**

260. Paragraphs 360-376 are directed to a discussion of indirect infringement. Indirect infringement requires the existence of some direct infringer. Because there is no claim all of whose elements are present or all of whose steps are performed, there can be no direct infringement, and thus no indirect infringement.

261. Dr. Weaver fails to show a customer who is directly infringing. Absent proof of direct infringement, there can be no inducement to infringe.

262. Additionally, Lawson is not liable for either inducing or contributory infringement because it lacks specific intent to cause infringement. Plaintiff has no evidence that anyone at Lawson knew of the Patents until this lawsuit was filed in May 2009. Thus, there can be no indirect infringement prior to the filing of the instant lawsuit.

263. Continuing after May 2009, Lawson had an objective good faith basis to believe its Accused Software does not infringe the Patents as described above, and thus did not know (and should not have known) that its actions would induce infringement or contribute to infringement, particularly in view of the following:

   a. Lawson has been selling the IC, RQ, and PO modules for many years, going back to at least the early 1990s and well before the priority date of the Patents – most of the accused features were part or similar to Lawson's non-infringing prior software;

   b. Lawson's software uses the Item Master database instead of multiple catalogs, and has done this for many, many years;

   c. Plaintiff's original inducement contentions of Sept. 2009 were based on Digital Depot, which Lawson stopped offering years earlier, and Punchout, which as shown above, Lawson does not control;

   d. By the time Plaintiff filed this suit the Patent Office had issued a final office action rejecting claims of the '683 patent, which is based on the same application as the '172 and '516 patents;

other than data from vendor catalogs, such as data from legacy purchasing systems. The mere fact that Lawson offers this functionality does not induce customers to use it to load vendor catalog data, so this does not show inducement to infringe either.

### Opinion 9: Lawson Does Not Infringe the Asserted Claims Under the Doctrine of Equivalents

266. I understand that Plaintiff's infringement contentions did not assert infringement under the doctrine of equivalents. Similarly, although Dr. Weaver's report mentions "doctrine of equivalents" he does not provide any specific infringement allegations based on the doctrine of equivalents, making it very difficult for me to rebut. He does not identify any claim elements for which he relies on the doctrine of equivalents, let alone disclose his opinions regarding how Lawson's software performs substantially the same function, in substantially the same way, and obtains substantially the same result as that literally taught by the claims of the patent. As such, I can only respond in kind by noting that the Asserted Claims were amended during prosecution and thus the doctrine of equivalents will be limited by prosecution history estoppel. Further, Plaintiff may not use the doctrine of equivalents to capture that which is in the prior art.

### CONCLUSIONS.

267. For the reasons stated above, Dr. Weaver has not demonstrated that any Asserted Claim is infringed by any version of the Lawson software.

Executed on June 3, 2010, in Pittsburgh, PA.

*Michael Ian Shamos*
Michael Ian Shamos, Ph.D., J.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| *e*PLUS, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2010, I caused the following documents:

1. Rebuttal Report of Expert Michael I. Shamos, Ph.D., J.D., Concerning Non-Infringement with Exhibits 5-6;
2. Rebuttal Expert Report of Ernest B. Lipscomb, III Under Rule 26(a)(2)(B) of The Federal Rules of Civil Procedure with Exhibits A-C; and
3. Certificate of Service

to be served on the following individuals via electronic mail:

Goodwin Proctor ePlus team at ePlusGoodwinService@goodwinprocter.com
Craig Merritt at cmerritt@cblaw.com
Henry Willett at hwillett@cblaw.com
Kimberly Perkins at kperkins@cblaw.com
Leslie Blacka at lblacka@cblaw.com
Perry Coburn at pcoburn@cblaw.com
Stephanie VanBuren at svanburen@cblaw.com


Dated: June 3, 2010                                           s/Kristin M. Drieman
                                                                          Kristin M. Drieman

.