```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4

 5    ---------------------------------------
                                          :
 6    ePLUS, INC.                         :    Civil Action No.
                                          :    3:09CV620
 7    vs.                                 :
                                          :
 8    LAWSON SOFTWARE, INC.               :    December 30, 2010
                                          :
 9    ---------------------------------------

10

11        COMPLETE TRANSCRIPT OF THE TELEPHONE CONFERENCE

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13                UNITED STATES DISTRICT JUDGE

14
      APPEARANCES:
15
      Scott L. Robertson, Esquire
16    Michael G. Strapp, Esquire
      Jennifer A. Albert, Esquire
17    David M. Young, Esquire
      Goodwin Procter, LLP
18    901 New York Avenue NW
      Suite 900
19    Washington, D.C.  20001

20    Craig T. Merritt, Esquire
      Christian & Barton, LLP
21    909 East Main Street
      Suite 1200
22    Richmond, Virginia  23219-3095
      Counsel for the plaintiff
23

24                  Peppy Peterson, RPR
                  Official Court Reporter
25              United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219

 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
      Merchant & Gould, PC
 7    80 South Eighth Street
      Suite 3200
 8    Minneapolis, Minnesota  55402

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        P R O C E E D I N G S

2

3              THE COURT:  Hello.

4              MR. MERRITT:  Good afternoon, Judge.

5              THE COURT:  Hello.  This is ePlus against Lawson, and

6      identify yourselves for the record and who you represent,

7      please, and remember to give your name when you speak.

8              MR. MERRITT:  Judge, for ePlus, this is Craig

9      Merritt, and my colleagues from Goodwin Procter can identify

10     themselves.

11             MR. ROBERTSON:  Good afternoon, Your Honor.  This is

12     Scott Robertson.  With me on the phone here in Richmond are my

13     partners Michael Strapp and Jennifer Albert.

14             MR. YOUNG:  And David Young of Goodwin Procter

15     calling in from Washington, D.C.

16             MR. CARR:  Judge, this is Dabney Carr, and my

17     colleagues from Merchant and Gould can identify themselves.

18             MR. McDONALD:  Good afternoon, Your Honor.  Dan

19     McDonald and Will Schultz are calling in for Lawson.

20             MS. STOLL-DeBELL:  And, Your Honor, Kirstin

21     Stoll-DeBell for Lawson is also on the phone.

22             THE COURT:  If I had realized you were all in

23     Richmond, you could have come over here and done this.

24             MR. McDONALD:  We're dodging in between the

25     snowstorms.  I think we'll make it, but we're not there yet.

1           THE COURT:  Well, if you get to Richmond, it will be

2   60 degrees over the New Year holiday.

3           MR. McDONALD:  Let me rebook my ticket immediately.

4           THE COURT:  All right, I have a motion to sequester

5   witnesses which was just filed on the 22nd of December, or was

6   filed on the 22nd.  I don't have any response.  Do we have a

7   response?

8           MR. CARR:  Judge, this is Dabney Carr.  I filed a

9   response this morning, and I believe a reply was filed just

10  about an hour or so ago.

11          THE COURT:  Oh, yes, I see.  I do have the response

12  here.  I haven't read the reply.  Let's see.  All right.  Do

13  you all want to argue that as well?  I've just read the

14  response.  I don't know what the reply says.

15          MR. ROBERTSON:  Judge, this is Mr. Robertson.  We

16  obviously, given the fact that we're going to start the trial

17  in a matter of days, on Tuesday, so I think it's important to

18  address.  I would -- you know, I would like to give the Court

19  the opportunity to read the briefing.

20          Mr. Merritt is prepared to address the issues.  I

21  think it's closely tied to our motion to enforce the Court's

22  orders with respect to certain moving-target expert opinions

23  we've been dealing with.

24          THE COURT:  Okay.  Well, here's what I want to tell

25  you:  This supplemental expert -- experts don't have a right to

1    reserve opinions and change their opinions, because the whole

2    process, the reason that the rules were changed to require

3    experts to do what they were supposed to do under Rule 26 is to

4    pin them down and not have changing opinions so that people

5    have to deal with them as they evolve.

6         That was the game that was being played up to and

7    including trial before the amendments to the rule in -- what

8    was it -- 1993, I believe these came in.  And these experts

9    that say, I reserve the right, they don't have any more right

10   than the man in the moon to do that, and they're not allowed to

11   do it.

12        So they go with the original reports.  That's all

13   they can go with, and the ones on which they were deposed, and

14   you can't just keep changing reports.  I don't care which side

15   is doing that.  You can't do it.

16        Now, we've made provisions, I believe, in this case

17   for rebuttal reports, and those rebuttal reports are intended

18   to rebut what was in the opposing party's response expert

19   reports.  So those are the only reports that are allowed, and I

20   understand this whole concept of supplementation, but you can't

21   use supplementation as a vehicle to get around the concept of

22   the rules.  So maybe that will help you all in preparing for

23   trial.

24        I will read the papers.  I've read the response.

25   Give me a minute and I'll read the reply.  It's not very long.

1    And I'll hear your argument, Mr. Merritt, if you all are

2    prepared to argue.

3         MR. MERRITT:  Your Honor, I'd be happy to.  Would you

4    like me to take a moment so you can continue looking at the

5    reply?

6         THE COURT:  Yes, and I'll have to ask Mr. McDonald if

7    he's ready to address it, too.

8         MR. McDONALD:  I believe -- Kirstin, were you going

9    to handle this one?

10        MS. STOLL-DeBELL:  Sure.

11        MR. McDONALD:  Okay.  Actually, Your Honor, I'll go

12   ahead and handle that motion anyway.  We're ready.  This is Dan

13   McDonald for Lawson.

14        THE COURT:  All right.  Well, I'm still reading.  All

15   right, I've read the reply brief as well as the response brief.

16        MR. MERRITT:  Judge Payne, this is Craig Merritt on

17   behalf of ePlus.  It's a fairly straightforward request, we

18   believe.  I know the Court is well familiar with Rule 615 of

19   Federal Rules of Evidence.

20        Under Fourth Circuit law, and you have the case we

21   provided to you in our opening brief, the *Opus 3* case, there is

22   a presumption in favor of sequestration when it is requested by

23   a party.  It is subject to the exceptions that are set out in

24   the rule.

25        We understand that Lawson is trying to proceed under

1    exception number three which is a person whose presence is

2    shown by Lawson to be essential to the presentation of Lawson's

3    cause.  Your ruling, under Fourth Circuit law, is discretionary

4    on this, but we believe that there are very good reasons in the

5    context of this particular case to exercise that discretion to

6    keep the experts out.

7         The *Opus 3* case is pretty clear and pretty helpful in

8    pointing out that the expert in that case, although he was, in

9    fact, a fact witness as well and had the opportunity to look at

10   the parties' records, to look at all of the matters on which he

11   is going to testify, all the relevant records and analyze them,

12   that he had prepared his own written analysis prior to trial.

13   Everything had been disclosed to him.

14        He had disclosed everything he needed to disclose,

15   and under those circumstances, the defendant who was trying to

16   keep him in the courtroom simply couldn't meet its burden, and

17   it is the defendant's burden, or the person who is opposing the

18   sequestration, to show why that person is essential.

19        It's clear from this case, as well as from the

20   Pennsylvania case that we cited in our reply brief, that

21   essential means essential.  It doesn't mean preferable or

22   something someone would like to do.

23        I don't think it's any secret that this motion is

24   aimed primarily at Dr. Shamos.  We have filed a number of

25   motions during the course of the litigation expressing our

1    concern from the start that he was something of an all-purpose

2    expert who seemed to be able to move in a very easily malleable

3    fashion from one opinion to another and has said in his own

4    report, notwithstanding what I understand you've just told us,

5    that he reserves the right to sit in the courtroom and generate

6    opinions on the fly.  We would just like to avoid that

7    potential by simply having him and all the other experts

8    excluded.

9              THE COURT:  Mr. McDonald?

10             MR. McDONALD:  Your Honor, I think there's two main

11   reasons why, in addition to the case law, of course, which very

12   rarely excludes experts, and I don't think any cases were cited

13   that involved a patent case.

14             Allowing our expert, Dr. Shamos, to be there and, of

15   course, then ePlus's experts can be there as well, that is not

16   inconsistent with anything relating to limiting them to what's

17   in their reports, and the reason for that is the fundamental

18   distinction that has been addressed and utilized a number of

19   times throughout this case.

20             The difference between having opinions that are fixed

21   based on theories that are fixed versus having what specific

22   pieces of evidence that would support that theory, or support

23   that opinion, and in an expert report, it's kind of by

24   definition they are relying on assumptions, in effect, of what

25   the evidence will come in as.

1            Those are facts, factual assumptions, whereas at

2    trial, they can rely on the actual evidence as presented that

3    would correspond to those assumptions and not deviate from

4    those assumptions.  We are not seeking the chance to make this

5    a notice of facts, but it would be confusing for the jury to

6    have an expert come in and just say, well, I'm assuming some

7    facts, and testify in a way that would not bear relation to the

8    actual fact witnesses as they have testified in the case.

9            THE COURT:  Wait a minute.  You said not make it an

10   ozone of facts.  What are you talking about?

11           MR. McDONALD:  I didn't use the word ozone.  I'm

12   trying to remember what phrase I did use there, but the same

13   operative facts that he relied on for purposes of his report as

14   an assumption, the exact same facts as they come into evidence.

15   He can refer to the witness Smith or Jones or whoever and say,

16   that witness testified as to that fact and that's the basis for

17   that opinion.

18           The effect is the same.  It just changes from an

19   assumption at the point of his report to actual evidence as

20   presented at trial when he testifies.  That's number one.

21           Then number two is, the other aspect of allowing the

22   expert there is to assist us in trial during trial before the

23   expert testifies.  He's very knowledgeable in this technology

24   field, and he will be assisting us during trial if he's able to

25   attend the trial and hear the other witnesses as they go along.

1        That's another reason why we think it's very fair and

2    why the rules in the case law that you see certainly

3    contemplate that experts are regularly and routinely allowed to

4    attend the rest of the trial and are not sequestered.

5        THE COURT:  All right.  Anything else, Mr. Merritt?

6        MR. MERRITT:  Your Honor, I'll simply respond to

7    those two points in reverse.  One thing this case doesn't lack

8    is very capable, experienced lawyers, and I certainly believe

9    that Mr. McDonald and Mr. Carr can try their case very

10   effectively without Dr. Shamos at their shoulder.

11       In response to his first point, it strikes me that if

12   an expert has been out of the courtroom and is brought in to

13   testify, that it's the lawyer's job to make sure that questions

14   are asked based on the evidence that's in the record and that

15   the jury has either heard or they reasonably expect the jury to

16   hear, and I'm not concerned about confusion about that as long

17   as the lawyers do their jobs.

18       MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

19   If you'll permit me an indulgence, I don't want to step in here

20   given that Mr. Merritt's argument, I think, was cogently made,

21   but I do want to make one point if you'd allow me.

22       THE COURT:  Go ahead.

23       MR. ROBERTSON:  Dr. Shamos has had unfettered access

24   to any Lawson employee he wanted to talk to to understand the

25   operations and the functionality of the system for purposes of

1    his opinions.  Dr. Shamos has had unfettered access to any of

2    the witnesses concerning invalidity since they are all

3    consultants of Lawson.

4            So the arguments that somehow he needs to hear the

5    testimony now new and afresh only suggests to me exactly Your

6    Honor's concern which was that these opinions are going to

7    shift from day to day, and we'll be hearing them for the first

8    time during the trial.

9            If an expert can do that, then there's no reason for

10   Rule 26 disclosures anymore such that the opinions are

11   disclosed and the reasons and bases therefor are set forth so

12   we can do it in an orderly and proper fashion, and that's what

13   we have here.

14           Now, this is a situation that cuts both ways.  My

15   experts are not going to sit in on any of the trial as well,

16   and they will be testifying based on the evidence that was

17   disclosed in their reports.  So we think it's only fair that we

18   don't have these moving targets going forward, and as Mr.

19   Merritt said, particularly in this case which I think we're

20   going to get to in a few moments in our motion to enforce the

21   Court's orders.  Thank you.

22           MR. McDONALD:  Your Honor, this is Dan McDonald.  May

23   I respond to those points?

24           THE COURT:  Sure.

25           MR. McDONALD:  On the unfettered access issue, there

1    is a key piece of prior art.  It's the RIMS system that is the

2    prior Fisher Scientific system that we certainly have not had

3    unfettered access to the witnesses.  Those are the listed

4    inventors on the patents-in-suit that also have knowledge of

5    that system that are the paid consultants of ePlus, and so Dr.

6    Shamos certainly has not had unfettered access to those people.

7         And this idea that the trial can somehow run amok, I

8    think, is belied by the fact that Mr. Robertson and his team

9    tried the *SAP* case with these exact same patents with an order

10   from the Court that allowed the experts to attend the trial,

11   and they were not sequestered from the case, and yet that case

12   was able to be tried just fine.

13        MR. ROBERTSON:  Two points in response to that, Your

14   Honor.  This is Mr. Robertson again.  I tried the *Ariba* case,

15   and Judge Brinkema excluded all the experts from that case.

16   That was involving the same patents-in-suit.  I've tried many

17   patent cases where the experts have been excluded.

18        Secondly, Mr. McDonald deposed all three of the

19   inventors, and I'm certain, because it's cited in Dr. Shamos's

20   report, that he reviewed those depositions of those experts.

21   So there should be no surprise there as well.

22        THE COURT:  Mr. Robertson, what kind of telephone are

23   you working from?

24        MR. ROBERTSON:  Working from a speakerphone, Your

25   Honor, so I apologize.  I hear there's some echo involved; is

1   that right?

2          THE COURT:  There is an echo and a fading, so maybe

3   you can get off the speakerphone.

4          MR. ROBERTSON:  Your Honor, I'll try and dial in to

5   the call on my cell phone.  I apologize.

6          THE COURT:  You're not any better now than you were

7   when you were on the speakerphone.

8          MR. ROBERTSON:  I'm in the midst of dialing, Your

9   Honor.  It's going to take me a minute.  I apologize.

10         MR. MERRITT:  Do we still have a connection?

11         THE COURT:  I don't know.

12         MR. ROBERTSON:  Your Honor, can you hear me?

13         MR. MERRITT:  You have to turn the other phone off.

14  You're getting an echo.

15         MR. ROBERTSON:  Your Honor, I'm sorry.  Can you hear

16  me now?

17         THE COURT:  I can.

18         MR. ROBERTSON:  I feel like that Verizon commercial,

19  but I guess let me refute the two points I tried to make, and

20  that was, one, Mr. McDonald has deposed all the inventors, and

21  so there should be no surprise there, and Dr. Shamos has

22  reviewed and read the inventor depositions.

23         THE COURT:  All right.

24         MR. ROBERTSON:  Number two, I've been a party to many

25  a case where the experts have been excluded including cases

1    involving these patents in front of Judge Brinkema.  So to the

2    extent that Judge Spencer made his discretionary decision in

3    that case, we respectfully lived with it, but in this case, we

4    think it's particularly inappropriate because we believe that

5    Dr. Shamos should not be able to shape his opinions that he's

6    already given based on testimony he now says he's heard for the

7    first time and that we'd be hearing for the first time at

8    trial.

9             THE COURT:  All right.  Thank you.  In the Fourth

10   Circuit, the controlling case is still *Opus 3, Limited, against*

11   *Heritage Park, Inc.*, and there the Fourth Circuit held that

12   because of its important role in reaching the truth, Rule 615

13   carries a presumption favoring sequestration citing its

14   decision in *United States against Farnham*, and, therefore, the

15   Court held, that the rule's exemptions, of which there are

16   several, are to be construed narrowly in favor of the party

17   requesting sequestration, and for the same reason, the parties

18   seeking to avoid sequestration of a witness bears the burden of

19   proving that a Rule 615 exemption applies.

20             The exception involved here is the one in Federal

21   Rule of Evidence 615(3) which says that the rule does not

22   authorize exclusion of a person whose presence is shown by a

23   party to be essential to the presentation of the party's cause.

24   That burden must be carried by Lawson in this case.

25             In reviewing the information that's been provided, I

1    do not see that Lawson has carried that burden.  It has not

2    shown that Dr. Shamos or any other expert is essential to the

3    presentation of its cause.  The experts have had reports,

4    opening reports, rebuttal reports, and they've had access to an

5    enormous quantity of information, have formed their opinions,

6    and I believe that there's been ample time here to prepare this

7    case for trial even after the final pretrial conference, and so

8    I don't find that the burden has been met here.

9            Further, I will say that I am inclined to believe

10   that I have been confronted in this case with the most

11   difficult of circumstances, which is the shifting of opinions

12   already, and the shifting of theories, and I don't want any

13   more of it.

14           I'm going to have, I see, difficulty at trial anyway

15   in making -- in policing the experts staying to their opinions

16   because the opinions are so long, and we've already had a

17   number of instances where there have been problems along those

18   lines.

19           So considering all of those factors, the Court

20   exercises its discretion and grants plaintiff's ePlus, Inc.'s

21   request to sequester witnesses pursuant to Federal Rule of

22   Evidence 615.

23           The next issue to be dealt with is the proposed --

24   the motion, excuse me, of ePlus.  It's entitled, plaintiff

25   ePlus, Inc.'s motion to enforce prior court orders.  I've read

1    the briefing on all of that.  I am -- again, I want to remind

2    counsel that I don't know what the experts are doing about

3    changing opinions, but neither side is going to be able to do

4    that, and I'll expect you to be able, at trial, if an expert is

5    offering an opinion, to be able to point precisely where in an

6    expert's report that same opinion appears, because if it is not

7    there, it isn't coming in.

8         That's been the rule around here for a long time, and

9    it is the rule under the evidence, and it is the necessary rule

10   to enforce the purpose of the 1993 amendments calling for the

11   Rule 26(e) disclosure reports that are specified in the rule.

12        All right, plaintiff's, ePlus's motion to enforce

13   prior court orders -- well, it's kind of troublesome to me that

14   I have to be even entertaining a motion like this.  I expect

15   the orders to be adhered to, and I don't understand why we're

16   at this point in this case, but there are several different

17   issues raised here, and --

18        MR. ROBERTSON:  Yes, sir.  Maybe I can try to provide

19   some structure to the issues that are raised here because you

20   are correct, there are probably at least five separate topics

21   involving the Court's prior orders.

22        If I might maybe highlight what those five topics are

23   and then address them in order, that might work unless the

24   Court has any specific questions from the outset, but, yes, we

25   are troubled as well, Your Honor, by what we sense is a

1    repeated effort to circumvent the Court's most explicit orders

2    with respect to any of these witnesses, and I think Your Honor

3    characterized it well when it said we shouldn't have experts

4    testifying as to things they haven't disclosed in their

5    reports.

6            Part of the problem we're having now is we're having

7    fact witnesses that are being identified at this late date who

8    are now purporting to act as experts, provide opinions, and

9    introduce evidence that was never disclosed to us, even to this

10   very day, one business day away from trial, and was not

11   presented to the Court during the final pretrial --

12           THE COURT:  Let's put some structure to this.  The

13   first issue is Mr. -- is it pronounced Hvass?

14           MR. ROBERTSON:  I think it's pronounced Hvass.

15           THE COURT:  Mr. Hvass's proposed testimony about a

16   demonstration.

17           MR. ROBERTSON:  Yes, sir.

18           THE COURT:  As I understand the arguments, Mr. Hvass

19   was not disclosed in the Rule 26(a) or (e) disclosures, that is

20   he was not disclosed as a witness who had knowledge of

21   discoverable information under (a) or an expert under (e) of

22   26.

23           He did not issue a report under 26.  He is

24   testifying, according to ePlus, to expert reports, expert

25   issues nonetheless.  He was deposed, but he was deposed as a

1   30(b)(6) witness and not on the topic of this demonstration.

2   The demonstration has never been disclosed as of this, the time

3   of the briefs.  Those are the basic points that you are making;

4   is that right, Mr. Robertson?

5            MR. ROBERTSON:  That's exactly right, Your Honor.

6            THE COURT:  And Mr. McDonald --

7            MR. ROBERTSON:  As of today, we haven't seen whatever

8   demonstration that Mr. Hvass is going to disclose.  He was a

9   30(b)(6) witness as Your Honor notes correctly, but it was on

10  the now-excluded Legacy system.  He demoed that.  That's what

11  he was presented for, and nothing else, and it's been

12  represented that he's going to be offering rebuttal opinions to

13  the demonstrations of Dr. Weaver which we fully disclosed seven

14  months ago, which we provided to the defendant, which we

15  permitted them to depose Dr. Weaver on over two days, and which

16  they've now had for what?  Some seven months.

17            And so we find ourselves in a situation where one

18  business day out from trial, they're going to be putting on

19  some demonstrations, and their representation is that, well,

20  they put on their exhibit list a laptop that said that they

21  could demo the system, but they've never told us what it is.

22  So we're going to be seeing it as you will, Judge, for the

23  first time at trial.  We just think that's unfair, improper --

24            THE COURT:  Are you saying the demonstration is

25  listed as an undisclosed exhibit?

 1              MR. ROBERTSON:  Absolutely, Your Honor.  We've never

 2    seen it.  We don't even know what it is.

 3              In contrast, they've had our demonstrations for seven

 4    months and took depositions on them.

 5              THE COURT:  All right.  And, Mr. McDonald, your

 6    theory is that, A, Mr. Hvass is a fact witness, not an expert

 7    witness, and that you don't dispute that he was not disclosed

 8    in a 26(a) or (e) disclosure, but you say he was deposed, and

 9    you say the functionality to which he is going to testify has

10    been described in documents that have been provided by your

11    side in the case.  And then you say there was a waiver of any

12    objection because the plaintiff did not object when Mr. Hvass

13    was listed as a witness in your pretrial order.  Those are the

14    arguments you make; is that right?

15              MR. SCHULTZ:  Your Honor, this is Will Schultz.  I'll

16    be responding to this particular issue.

17              THE COURT:  All right, Mr. Schultz.

18              MR. SCHULTZ:  Your Honor, that is correct.  Those are

19    our points.  I would like to respond to some of the points that

20    Mr. Robertson made.

21              THE COURT:  That's fine.

22              MR. SCHULTZ:  First of all, with respect to the

23    demonstration, what is really happening here is that Mr. Hvass

24    is a fact witness who will show the operation of a physical

25    exhibit, and that is going through what the actual physical

1   exhibit is, and that is DX-335, which is Lawson's demonstration

2   system, as well as PX-402 which is the Lawson demonstration

3   system that has been altered by ePlus.

4           THE COURT:  Mr. Schultz, they say that the

5   demonstration -- what do you call it, DX what?

6           MR. SCHULTZ:  DX-335, so Defendant's Exhibit 335.

7           THE COURT:  And that's never been disclosed to them.

8           MR. SCHULTZ:  It has been disclosed to them.  It has

9   been on our witness list --

10          THE COURT:  No, no, no --

11          MR. SCHULTZ:  I provided a copy to ePlus in the form

12  of PX-402 which they have modified.  DX-335 is an actual laptop

13  computer.

14          THE COURT:  Are you saying that DX-335 is the same as

15  PX-402?

16          MR. SCHULTZ:  It was originally; however, ePlus has

17  modified their version of what we have as 335 to include

18  additional documents and data uploaded including data that was

19  never provided to us in discovery.

20          THE COURT:  You haven't made any complaints about

21  that, so I don't need to hear that, but what I'd like --

22          MR. SCHULTZ:  (Inaudible) in our motion --

23          THE COURT:  I don't care what was in your motion.  I

24  said you haven't objected to it.  It wasn't in your motion, it

25  was in your response brief, so I'm not dealing with that issue

1   now.  I'm dealing with the issue that's on the table in the

2   motions.

3           MR. SCHULTZ:  Your Honor, that issue does go to the

4   prejudice that would be afforded --

5           THE COURT:  Mr. Schultz, you raise issues by

6   presenting them in motions if you've got some complaint about

7   it.  Now, to the extent it's an argument on the prejudice --

8   the fact aspect of it is argument on the prejudice, I

9   understand that point, but I want to -- wait a minute.

10          Mr. Robertson, is it correct that sometime ago,

11  months ago in discovery, you got DX-335, and then you took it

12  and converted it to PX-402?  That's what he said.  Is that true

13  or not?

14          MR. ROBERTSON:  What's accurate, Your Honor, and

15  excuse me if I'm not precise on these exhibits, but what's

16  accurate is, we asked for in discovery a demonstration system

17  of the Lawson accused software.  It was provided on a laptop.

18          The problem we had was that it did not have

19  sufficient data on it.  As Your Honor notes now from this case,

20  you need to search for multiple items and be able to choose

21  among the multiple vendors that provide the items.

22          THE COURT:  Don't give too much information.  Just go

23  on with the point.  It didn't have what you needed.

24          MR. ROBERTSON:  It didn't have what we needed, so we

25  asked Lawson over a series of months to assist us.  We finally

1  got one of their consultants to help us load the data to be

2  able to demonstrate the functionality, and once we did, we gave

3  that laptop back to them months ago with that fully loaded data

4  on it.

5         About a month ago, we learned for the first time that

6  they wanted to now do some sort of demonstration and wanted our

7  assistance which we said we'd provide, but it's your laptop,

8  it's got the data on it, it's back in your possession.  We

9  never heard back from them until just recently that now they

10  were going to do a full demonstration which, as I said in the

11  beginning, has never been provided to us.

12         There is nothing that prevented them from, in

13  response to Dr. Weaver's demonstrations provided back in May of

14  2010, from having Dr. Shamos do his own demonstrations

15  illustrating whatever points they wanted to make in rebuttal

16  and providing that to us so we could have dealt with it in an

17  orderly fashion under the Court's scheduling order, but here we

18  are, as I say, one business day out from trial, and I haven't

19  seen this demonstration they want to put on to this day

20  although they've had that laptop for several months with the

21  data for the item information that we loaded to be able to

22  demonstrate its capabilities.  In fact, they had it at Dr.

23  Weaver's deposition in July of 2010.

24         MR. SCHULTZ:  Your Honor, if I could respond to that.

25  It is my understanding that we were not provided the -- if Mr.

1  Robertson is referring to the version that they uploaded

2  additional information to, we were not provided the actual

3  laptop computer back.  We were provided some of the information

4  that was uploaded onto the computer.

5         We thereafter requested that they provide all of the

6  information.  We have now received all of the information, but

7  the point here is that this is a physical exhibit.

8         THE COURT:  You mean they gave you -- you all are

9  obfuscating.  Is the demonstration of the same -- is it going

10  to be the running of the laptop that was given in DX-335?

11         MR. SCHULTZ:  Yes, Your Honor.

12         THE COURT:  And that's all that Hvass is going to do,

13  is turn on the computer?

14         MR. SCHULTZ:  What Mr. Hvass will do is turn on the

15  computer and show the operation of the --

16         THE COURT:  What does that mean, Mr. Schultz?

17  Listen, folks, I'm going to tell you, I kind of need to have

18  you to be accurate and avoid any misstatements here.  What does

19  it mean -- there's a difference between turning on a computer

20  and letting it run and turning on a computer and operating it.

21  That's what I'm asking you.  What is he going to do; just turn

22  on the computer and let it run in the form it was disclosed, or

23  is he going to turn it on and actually sit there and try to

24  operate it?

25         MR. SCHULTZ:  This is Mr. Schultz.  What he will be

1    doing is turning on the computer, and I don't know how specific

2    you want me to get, but there's actually --

3           THE COURT:  I don't want you to get too much

4    information.  I want to get right down to the bottom line.  Is

5    he going to be actually operating the computer, or is he

6    turning it on and letting it do its thing?

7           MR. SCHULTZ:  Turning on the computer and then

8    clicking on the software that is on the computer to show the

9    operation of the system.

10          THE COURT:  And have you given the other side a

11   presage of what it is that he's going to do?

12          MR. SCHULTZ:  We've given them the laptop computer,

13   nothing more.

14          THE COURT:  The answer to that question then is no.

15   Do you want to try that on for size?  Is that correct?  I'm

16   going to take it as no unless you tell me otherwise.  Is it no?

17          MR. SCHULTZ:  It's no.

18          THE COURT:  All right.  That's how we answer

19   questions, Mr. Schultz.  Don't be obfuscating things here.  All

20   right.  So, Mr. Robertson, you had this thing.  Couldn't you

21   just -- did they tell you how to operate it?

22          MR. ROBERTSON:  Well, we had sufficient

23   information --

24          THE COURT:  Don't you obfuscate either.  I'm talking

25   to both of you.

1          MR. ROBERTSON:  Your Honor, we did, through trial and

2     error, learn how to operate it.  It was not an easy exercise,

3     and as I said, we had to load data on it to be able to show its

4     functionality.  The problem is, we have no idea, as Your Honor

5     just elucidated, as to what they want to do with it.

6          I don't know if it's been modified since we provided

7     it to them.  I don't know anything about it, and I have no idea

8     what Mr. Hvass wants to do.  What they've told us is Mr. Hvass

9     is going to do this to contradict or to undermine Dr. Weaver's

10    opinions.

11         THE COURT:  Mr. Schultz, is that the purpose of what

12    Mr. Hvass is going to do, is to contradict the opinions of Dr.

13    Weaver?

14         MR. SCHULTZ:  No, Your Honor.  What Mr. Hvass is

15    intending to do is to provide an accurate depiction to the jury

16    of what the Lawson demonstration system is.  His testimony is

17    to show that this 402, PX-402 is not the accurate demonstration

18    laptop that is provided to customers.

19         It's that basic and that straightforward, and to

20    answer your question of Mr. Robertson in a straightforward way,

21    yes, Lawson provided instruction tutorial on how to operate the

22    demonstration system several times.  Mr. Keith Lohkamp was the

23    person who did that, and I was on the phone when that occurred.

24         MR. ROBERTSON:  Your Honor, let me just read from

25    their brief.  It says, Mr. Hvass --

1          THE COURT:  Where are you reading from?

2          MR. ROBERTSON:  Sir, I'm reading from the opposition.

3          THE COURT:  What page?

4          MR. ROBERTSON:  At page six, first full paragraph.

5   Mr. Hvass will also provide fact testimony about how Dr.

6   Weaver's demonstration of the accused system is not

7   representative of the accused system provided by Lawson to

8   customers and not how Lawson demonstrates the accused systems

9   to customers.  That's exactly verbatim from page six of the

10  brief, directly contradicts the representation just made by Mr.

11  Schultz to you.

12         So he's obviously being called in rebuttal to Dr.

13  Weaver.  We haven't seen these demonstrations.  They've had

14  these demonstrations that we did with their own laptop for

15  seven months.  This is just unfair surprise at not even the

16  11th hour.  We're now at the 13th hour, Your Honor, and we just

17  think that if this was going to be raised, it could have been

18  raised early on because there was no surprise to them.  We

19  should have been dealing with this at the pretrial conference

20  three months ago back in September, Your Honor.

21         THE COURT:  All right, Mr. Schultz --

22         MR. ROBERTSON:  We would respectfully request --

23  thank you.

24         THE COURT:  Mr. Schultz, do you have anything else to

25  say?  I cut you off and went over to Mr. Robertson to get a

1    position, and I don't know whether you had anything else -- get

2    a position while it was fresh in my mind, and I don't know

3    whether you have anything else you'd like to add or not.  Go

4    right ahead if you do.

5            MR. SCHULTZ:  Just, Your Honor, with respect to Dr.

6    Weaver's demo, that is PX-402, and if there's any confusion,

7    that's what Mr. Hvass will be doing, is looking at PX-402, and

8    he will be explaining how it's different than the Lawson

9    demonstration system.

10           THE COURT:  All right.  Is that it on Hvass?

11           MR. ROBERTSON:  Yes, Your Honor, that's all.

12           THE COURT:  As to Mr. Hvass, the motion of the

13   defendant is granted.  Mr. Hvass was not listed as -- disclosed

14   as a witness under Rule 26(a) or 26(e).  The bottom line is

15   that he wasn't disclosed as somebody who had knowledge of the

16   situation.

17           He was deposed as -- of the demonstration to be

18   offered.  He was deposed as a 30(b)(6) witness on the subject

19   of the Lawson Legacy system, not on other systems -- not on the

20   demonstration or as a factual witness.

21           The fact of the matter is, when all is said and done,

22   his testimony is an effort to rebut Dr. Weaver's demonstration.

23   To the extent there's a factual part of it, that factual part

24   is a predicate to that end, and he wasn't disclosed as a fact

25   witness, as a person with knowledge of the facts, and those

1    disclosures -- it's too late to come up with them now.

2          It can't be justified on the theory that the issue of

3    functionality was in documents that were disclosed, nor as

4    Lawson -- I mean the plaintiff waived the objection by not

5    dealing with it at the final pretrial conference because they

6    didn't learn about it until after the final pretrial

7    conference, exactly what was being done, and they did then

8    timely file an objection to the testimony of Mr. Hvass.

9          So the motion is granted as to Mr. Hvass.  The next

10   issue is Mr. Lawson.

11         MR. ROBERTSON:  Your Honor, I think, just for the

12   record, I think you misspoke.  You said the defendant's motion

13   is granted, and I just wanted --

14         THE COURT:  Yes, plaintiff's motion.  ePlus's motion.

15   You are correct.  All right, Mr. Lawson's testimony.

16         MR. ROBERTSON:  Yes, Your Honor.  Again, we don't

17   object to Mr. Lawson as being not identified on initial

18   disclosures.  He was deposed, but, again, he was deposed after

19   the close of fact discovery on the so-called Legacy systems.

20         The Court has dealt with this ad nauseam and at least

21   on four occasions has issued orders, including a motion in

22   limine which I think was ePlus's motion in limine number four,

23   that the Legacy system has no relevance, they are prejudicial,

24   they will be confusing to the jury.  We dealt with this again

25   with the expert report of Mr. Knuth in which they had inserted

1    the Legacy systems once again, and this time they tried to

2    refer to Legacy system 7.0 as your order -- Your Honor had

3    excluded all of the evidence with respect to the other prior

4    Legacy systems.

5         If I might just briefly reference docket entry number

6    381 which was Your Honor's order on July 30, 2010, it said, for

7    the reasons set forth in the record on July 28th at hearing,

8    plaintiff's motion in limine number four to exclude any

9    evidence, expert opinion, or other testimony or argument

10   pertaining to purported demonstration systems for Lawson

11   releases 5.0, 6.0, 6.1 is granted.

12        After that, Your Honor, we had the issue with the

13   Knuth report, which Your Honor made a ruling on which we're

14   going to address in a minute, in which they tried to inject

15   7.0, and I think Your Honor in no -- in a very conclusive way

16   indicated that Mr. Knuth could only testify as to source code

17   and excluded any reference to even version 7.0.

18        You may recall that the defendant had issued a report

19   that had referenced a 7.0.  They then did a redline version the

20   next day removing 7.0, and Your Honor made very clear that

21   there would be no testimony about Legacy systems.

22        What they are doing now and what they've represented

23   to us is that Mr. Lawson will come and he will testify about

24   the, quote, development, unquote, of prior Lawson systems,

25   unquote.  Now, they are not specific as to version five, six,

1    seven, or otherwise, and they've also said that it goes to

2    Lawson's lack of intent which Your Honor expressly addressed in

3    his order excluding these issues.

4              The problem we're really confronted with now --

5              THE COURT:  You mean number 381?

6              MR. ROBERTSON:  I believe there was a second order,

7    Your Honor, if I can just find it for a second here.  I'll give

8    you the exact quote.  Permit me indulgence here.

9              Your Honor, it was in the July 28, 2010, hearing

10   transcript at pages 186 to 187.  And you said to the extent

11   that Legacy systems are relevant, the presentation of that

12   evidence would offend Rule 403 because it would cause delay,

13   confusion, and make side trials out of a very difficult case

14   already, and the jury, I expect, I anticipate would be

15   hopelessly confused.  I don't think it's pertinent to lack of

16   specific intent to induce infringement either or to discredit

17   ePlus's infringement and damages contentions for the same

18   reason.  To the extent it might be relevant, it's a 403

19   analysis, and the use the pre-2002 systems don't do anything

20   but provide confusion and delay.

21             On that basis, Your Honor ruled that all of the

22   Legacy systems were to be excluded.  Now, earlier, there was

23   one exception with respect to claim six of our '683 patent.

24   You might recall, Your Honor, I withdrew claim six as one of

25   the asserted claims, and so now the defendant has acknowledged

1   they have no relevance whatsoever, but, yet, they still want to

2   introduce, through Mr. Lawson, the history of the system with

3   references to what its capabilities were prior to 2002, the

4   accused systems, and now that all of the exhibits have been

5   withdrawn or excluded, I'm put in a position where I have no

6   ability whatsoever to even cross-examine the witness or impeach

7   him given the fact that I have no idea what he's going to say

8   as to what these prior art systems did.

9          As I said, no less than four times has the Court

10  ruled on this now, and we think if this is a wolf, it's a wolf

11  in wolf's clothing, not in sheep's clothing, and I just don't

12  want to be in a position to have to get up there and disrupt

13  the trial if Mr. Lawson is going to try and bring this Trojan

14  horse Legacy system into evidence once again.

15         THE COURT:  All right, who is going to handle this

16  for Lawson?

17         MR. SCHULTZ:  This is Will Schultz again.  I think

18  there's one fundamental issue in what Mr. Robertson said, and

19  that is when he said that Lawson is going to use Mr. Lawson to

20  testify about the development of prior Lawson systems.

21         That is completely inaccurate.  In fact, what we said

22  to ePlus in our meet-and-confer conferences is that we would

23  not use Mr. Lawson to testify about prior Lawson systems.  We

24  told him, we told ePlus that Mr. Lawson would be used for three

25  reasons; one, the background of the Lawson company.  Apparently

1  there's no objection to that.  Two, essentially the competitors

2  of Lawson; three, the development of the accused systems, and

3  I'd like to explain to Your Honor what we meant by the

4  development of the accused systems.

5       By no means are we going to get into the Lawson

6  Legacy systems by going version five has this feature, version

7  six has this feature.  That's not what we're going to do.  That

8  is not what we told ePlus that we're going to do, and the

9  mischaracterization in their briefing to the contrary is

10  absurd.  We're going to use Mr. Lawson to go through and show

11  how Lawson actually implements a feature that is in the accused

12  system.

13       THE COURT:  Excuse me, Mr. Schultz.  Do we have

14  everybody still on the phone?  I keep getting these beeps.  Do

15  you know what that is?  Mr. Carr, are you here?  Hello?

16       MR. CARR:  Yes, sir, I had you on mute to cut down

17  the background noise.

18       THE COURT:  Mr. Merritt, are you here?

19       MR. MERRITT:  I'm here, Judge.

20       THE COURT:  Mr. Robertson?

21       MR. ROBERTSON:  Yes, sir.

22       THE COURT:  Mr. McDonald?

23       MR. McDONALD:  Yes, sir.

24       THE COURT:  Okay.  Now, Mr. Robertson, is it correct

25  that you don't object to Mr. Lawson testifying background about

1    the Lawson company or Lawson's competitors?

2              MR. ROBERTSON:  I don't object to that, no.

3              THE COURT:  And Lawson's competitors; is that right?

4              MR. ROBERTSON:  That's correct, sir.

5              THE COURT:  So there's no objection there.

6              MR. ROBERTSON:  I do object, though, to this

7    so-called quote, and this is at page 12 of Lawson's opposition,

8    the, quote, development of the accused system.

9              THE COURT:  He is about ready to explain that.  I cut

10   him off to assure that there wasn't any residual issue that I

11   needed to decide.  Excuse me, Mr. Schultz.  You may now resume,

12   and I apologize for interrupting you.

13             MR. SCHULTZ:  Thank you, Your Honor.  The development

14   of the accused systems is the process by which Lawson

15   implements a new feature in its accused systems.  For example,

16   if a customer wants a particular feature, let's use Punchout

17   for example, and multiple customers then want to have a

18   particular feature, for example, Punchout, the process that Mr.

19   Lawson will explain is how that actually gets into the system,

20   and we're talking about the accused systems here.

21             And process is once there's a critical mass, there's

22   a committee that goes through and examines whether it's

23   feasible or not, and then they'll go through and how the

24   developers go through it, and then it will actually get into

25   the version of the system, in this case the accused systems.

1          THE COURT:  And that's all he's going to testify to?

2          MR. SCHULTZ:  That's what he's going to testify to.

3          THE COURT:  So basically he'll get up and say, in

4     very short order, that if they get a request from a customer

5     about a new feature, and there's enough new customers who want

6     it, a committee in the company decides whether it's feasible or

7     not and decides to implement it; is that right?

8          MR. SCHULTZ:  Your Honor, there's one addition to

9     that, and that is that the whole point of that testimony is to

10    show that Lawson does not reverse engineer from other

11    competitors, and it does not take or copy anything from ePlus.

12    That's going to be part of the testimony as well.

13         THE COURT:  Okay, but he's going to answer those

14    questions you just added to that; is that right?

15         MR. SCHULTZ:  Absolutely.

16         THE COURT:  Is that the extent of the testimony you

17    envision by having him say he's going to talk about the

18    development of the accused Lawson systems?

19         MR. SCHULTZ:  Yes, Your Honor.

20         THE COURT:  All right.  Mr. Robertson, what's wrong

21    with that?  You can't possibly have any objection to that.

22         MR. ROBERTSON:  Well, Your Honor, it's like the

23    proverbial, you know, crack in the dam.  What I just heard --

24         THE COURT:  Wait a minute.

25         MR. ROBERTSON:  I wouldn't have an objection to that,

1    Your Honor.  If that's what Your Honor wants to limit him to,

2    fine, but I don't want to hear that the development of the

3    system means that they had this functionality, you know,

4    20 years ago.

5         THE COURT:  Mr. Robertson, he did not say that the

6    man is going to testify to that.

7         MR. ROBERTSON:  Okay, Your Honor.

8         THE COURT:  Mark this down.  Get it from the

9    transcript.  Mr. Schultz, that's what this man can testify to;

10   okay?

11        MR. SCHULTZ:  I understand, Your Honor.

12        THE COURT:  The motion is denied -- plaintiff's

13   motion is denied as to Mr. -- the objection to Mr. Lawson's

14   testimony provided that it will be confined to the background

15   of the Lawson company, the identity of Lawson's competitors,

16   and the development of the accused Lawson's systems in this

17   sense and this sense only:  That there will be -- if there is a

18   demand for a new feature by a customer and there's enough new

19   customers who want it, then there's a committee that decides

20   what to do and how to do it and whether it's feasible,

21   economically and technically, and that's what was done with the

22   accused system here, and that the process does not include

23   reverse engineering or stealing from ePlus, and that's his

24   testimony and that's it.  So for those reasons, the motion is

25   denied as to the objection to Mr. Lawson's testimony.  Mr.

1    Knuth is next.  Mr. Robertson.

2         MR. ROBERTSON:  Yes, Your Honor.  Mr. Robertson.  You

3    will recall that Mr. Knuth was an expert that was added by

4    Lawson to specifically address, under the Court's order, Mr.

5    Niemeyer's source code report.  Just to refresh, Your Honor,

6    you will recall Mr. Niemeyer simply read the source code of the

7    accused products and rendered a report.  He didn't render any

8    non-infringement opinions.

9         We were at the hearing with Your Honor, and, in fact,

10   there was an entirely new report, much of which addressed Dr.

11   Weaver's infringement analysis, much of which went outside

12   completely of what the Court had permitted Lawson to do.  We

13   presented Your Honor with a motion, and again, if I can just

14   briefly quote, this is from the transcript of the September 7,

15   2010, hearing at pages 116 and 117.

16        THE COURT:  September 7th, what; 2010 hearing?

17        MR. ROBERTSON:  Yes, sir.  It's at page seven of our

18   opening brief, and I'm going to paraphrase if I can because

19   it's fairly lengthy, but after argument, the Court said, if, in

20   fact, Knuth can testify just to source code, then I suppose

21   it's all right to let him testify to that.  Is there a part of

22   his report where he testifies just to source code, that's all,

23   and responds to Niemeyer?

24        Your Honor went to say, I'm talking about source

25   code.  I don't want him to get into prior versions, I don't

1    want him to get into infringement or invalidity.  What happens

2    is when you get leeway from the Court, you better stay within

3    it or you get smacked.  I'm not going back, and I'm not going

4    to have the effort to be equitable turned into a 180-degree

5    turn.

6            Skip a little down, Your Honor, you said, when you

7    overstep the bounds at this stage of the proceeding, the only

8    thing I can do is cut it out.  If Knuth can testify only on the

9    means of source code, then he can testify and that's all.

10           Now, seven weeks after Your Honor made that ruling,

11   we got a new Knuth report.  Not only was it limited to what the

12   Court had expressly instructed, it was new, expanded, and had

13   all the same opinions in there, and most cleverly sprinkled

14   throughout the report in multiple paragraphs, they just

15   repeated the mantra, source code, to take an opinion that had

16   nothing to do with it and subtly say, oh, and by the way, it

17   relates to source code.

18           The day after we received this new report, seven

19   weeks after Your Honor had ruled most definitively, we wrote

20   them a letter and said if they did not withdraw this report

21   immediately, that we were going to seek sanctions and costs

22   from the Court.  Showing the guilty conscience, they withdrew

23   it the next day.

24           Now a month after that, we had another conversation

25   with them wherein they expressly stated, and I believe we

1    attached this as an email exhibit to our reply, that they
2    thought that Mr. Knuth could testify fully as to his original
3    report because, in essence, it was all about source code, where
4    in reality there's probably less than a half dozen paragraphs
5    that address source code issues.
6           So we find ourselves, Your Honor, at extreme
7    frustration at this point when we are confronted with just a
8    complete disregard for this Court's most expressed order with
9    respect to Mr. Knuth.  If he is not confined to these source
10   code issues on Niemeyer, as Your Honor ruled, then we are going
11   to ask for sanctions at this point, Your Honor, because this is
12   just beyond the pale.
13          THE COURT:  Who is going to address this?
14          MR. SCHULTZ:  Your Honor, this is Will Schultz again.
15   Your Honor, I'd like to just point out that we have written
16   several times to ePlus, had meet-and-confers with ePlus
17   regarding the scope of testimony of Mr. Knuth.  The bottom line
18   of those meet-and-confers is that we have agreed that Mr. Knuth
19   will not testify as to anything dealing with Dr. Weaver,
20   anything dealing with non-infringement, anything dealing with
21   invalidity.
22          The point of our correspondence back and forth, the
23   point of what we've always been saying is that Mr. Knuth is a
24   rebuttal witness to Mr. Niemeyer who, by ePlus's admission, is
25   a source code expert.  What ePlus is trying to do is say Mr.

1    Niemeyer can testify to whatever he wants to, it's not source

2    code, even if it's not source code, and now Mr. Knuth cannot

3    rebut what Mr. Niemeyer is doing.

4         The bottom line here, Your Honor, is -- what we said

5    in our brief is that we will not testify and Mr. Knuth will not

6    testify to anything in his report that originally dealt with

7    Mr. Weaver, non-infringement, or invalidity, and he will

8    constrain every one of his comments on his testimony to source

9    code and his responses to Mr. Niemeyer.

10        THE COURT:  Mr. Robertson?

11        MR. ROBERTSON:  Let me respond and quote from their

12   brief again.  This is defendant's opposition.  It's

13   document 530 at page 14.  It says, in reality, Lawson simply

14   reaffirmed that Mr. Knuth will testify about source code issues

15   throughout his report including not only the paragraphs --

16        THE COURT:  Wait a minute.  I don't see this.  Page

17   14?

18        MR. ROBERTSON:  Page 14, sir.  In reality, it's about

19   five lines down.

20        THE COURT:  Okay, let me read it.

21        MR. ROBERTSON:  In other words, they're saying source

22   code issues are identified throughout his report, not just the

23   six or seven or eight paragraphs we identified that they claim

24   we, quote, cherry-picked from his report.  The reality is, if

25   you look at those paragraphs, that's the only place he talks

1    about source code.  Every other paragraph of his multipage,

2    multi-paragraph report, which the Court has already stricken,

3    are addressed to Dr. Weaver's infringing opinions and more

4    including the Legacy systems which Your Honor also has

5    addressed.

6            Let me just make one other point if I could, Your

7    Honor.  Just two days ago, we received a so-called corrected

8    exhibit list from Lawson in which the Defendant's Exhibit

9    Number 370 is identified as, quote, reserved exhibits as to

10   Keith Knuth.  We have no idea what these are.  We certainly

11   haven't seen them.

12           As you know, we had the final pretrial conference

13   three months ago, and for them to serve us some corrected

14   exhibit report with unidentified exhibits to Mr. Knuth's new

15   expert report that was already stricken by the Court, I just

16   think is -- again, I'm sorry, but it's beyond the pale.

17           THE COURT:  Mr. Schultz?

18           MR. SCHULTZ:  Yes, Your Honor.  I would like to go

19   back to one of the original things that Mr. Robertson had said,

20   and that deals with the new report that we had provided to

21   ePlus.  After the Court's hearing with respect to the original

22   Keith Knuth report, Lawson's understanding on that issue was we

23   needed to go back and provide an undated report based on what

24   the Court had done.

25           After we provided that report to ePlus, ePlus then

1    came back and said that's not what its understanding was, its

2    understanding was that we were going to use the original report

3    and limit it to the particular testimony that would be

4    admitted, therefore, source code and dealing with Niemeyer.  We

5    agreed, and, therefore, did take away the report.

6              By no means was that a guilty conscience.  It was

7    simply a means of finding a resolution between the parties on

8    what was actually going to happen.  Bottom line here, Your

9    Honor, is that we intend to abide by your Court's ruling.  We

10   will not -- Mr. Knuth will not address anything dealing with

11   Mr. Weaver.  He will not address anything dealing with

12   non-infringement.  He will not address anything dealing with

13   invalidity.  He will testify to Mr. Niemeyer's report dealing

14   with source code.

15             THE COURT:  Well, Mr. Schultz, as I remember it, the

16   parts of his report were very limited that dealt with source

17   code in response to Mr. Niemeyer, and I haven't gone back to

18   check them all, but my indication is that it was paragraph 16,

19   17, and 21 through 32, and that was it.

20             Now, I don't know -- are you saying you are agreeing

21   to confine his testimony to those topics?

22             MR. SCHULTZ:  Your Honor, actually those were the

23   topics -- those were -- the paragraphs that you just recited

24   were the paragraphs that Lawson provided as examples that went

25   beyond, that essentially also included source code.

1     What ePlus did is they selected portions of paragraph

2   37, 48, 69 to 70, 82 to 83, 91, and 103 and 104 as the versions

3   that they said included source code.  We, as an example, cited

4   back to them paragraph 16 and 17 and 21 to 32 as dealing with

5   JavaScript, Java, COBOL, and XML, FXML, clearly showing that

6   there is more paragraphs to the Niemeyer report that deal with

7   source code than what ePlus had cherry-picked, and we used that

8   term appropriately.

9     THE COURT:  37, 38, 69, 70, and what?

10     MR. SCHULTZ:  82 to 83, 91, and 103 and 104.

11     THE COURT:  Mr. Robertson, you agree that 37, 38, 69,

12   70, 82 to 83, 91, and 103 to 104 deal with source code and

13   rebut Niemeyer; is that right?

14     MR. ROBERTSON:  Your Honor, at page 20 of our brief

15   --

16     THE COURT:  Answer that question.

17     MR. ROBERTSON:  Let me make sure I have these right,

18   Your Honor.  It was paragraphs 37, 48 --

19     THE COURT:  38.  No.  37, 38, 69 --

20     MR. SCHULTZ:  Your Honor, this is Mr. Schultz.  We

21   also have 48.  If I had misspoken before, it was 37, 48.

22     THE COURT:  Okay, sorry.  37, 48, 69, 70, 82, 83, 91,

23   103, and 104, you believe, Mr. Robertson, that those are source

24   code -- is testimony about source code rebutting Niemeyer; is

25   that right?

```
 1              MR. ROBERTSON:  Your Honor, you'll see at page 20 of
 2    our opening brief that we specifically identify those
 3    paragraphs, 37, although we believe the first sentence is
 4    inappropriate, 48, 69, 70, 82, except the first two sentences,
 5    83, 91, except the last two sentences, 103, except the second
 6    sentence, and 104.  That's what we think properly falls within
 7    the Court's prior order that we represented to Your Honor at
 8    page 20 of our opening brief.
 9              THE COURT:  Do we have the Knuth report here?
10              THE LAW CLERK:  Yes.
11              THE COURT:  I'm going to tell you something.  It just
12    is absurd to me that you all are where you are.  It's just
13    silly.
14              I think -- I was reading my notes wrong.  It was
15    the -- the problem I was having was with paragraphs 16 and 17
16    and 21 to 32, not that they were the okay paragraphs.
17              So I'm getting the Knuth report, and I'm going to
18    tell you, Mr. Schultz, if you don't show me page and line, the
19    first time I'm not going to entertain any more, exactly where
20    this rebuts Niemeyer.
21              MR. SCHULTZ:  Yes, Your Honor.
22              THE COURT:  I'm not having the mere fact that there's
23    some kind of source code something in there used as a Trojan
24    horse to get something else in, and I really don't like this.
25    So I'm not going to spend my time on it anymore, so you have
```

1    one chance, and it begins with paragraph 16.  Then we'll go to

2    17.  The first time there's something not there, the rest of it

3    doesn't get in, because this is a waste of my time and yours.

4    You all should be getting ready for trial which is what I'm

5    trying to do.

6              MR. SCHULTZ:  Your Honor, do you have the report yet?

7              THE COURT:  No, she's gone to get it.

8              MR. SCHULTZ:  Okay.

9              THE COURT:  All right, I have the report of Keith

10   Knuth concerning source code, and I'm going to paragraph 16.

11   All right, show me.

12             MR. SCHULTZ:  Yes, Your Honor.  Dealing with Mr.

13   Knuth at paragraph 16, it specifically talks about paragraph 21

14   to 32 of Mr. Niemeyer's report.  That's dealing with the

15   JavaScript, the languages, the programming languages that are

16   in Mr. Niemeyer's report.  Paragraph 16 specifically deals with

17   Mr. Niemeyer's report, does not get into invalidity,

18   non-infringement, and does not get into what Mr. Weaver talked

19   about.  This is specifically dealing with source code issues

20   that Mr. Niemeyer addressed in his report.

21             THE COURT:  Mr. Robertson.

22             MR. ROBERTSON:  Your Honor, let me cut this short,

23   because I know your patience is probably getting to an end.

24             THE COURT:  My patience is not inexhaustible, but my

25   nickname is Job.  But I don't have patience for people who

1    don't do their homework and cause me to have to go through

2    something that makes no sense, and it looks to me like Mr.

3    Schultz is right based on the text of paragraph 16 of the Knuth

4    report.

5          MR. ROBERTSON:  All I was going to say, Your Honor,

6    is, all this says is that ePlus didn't invent these source code

7    languages, programming languages.  I'll stipulate to that, so I

8    don't have a problem with paragraph 16.  That doesn't -- we

9    don't claim that we did in our patent.

10         MR. SCHULTZ:  Your Honor, this is just an attempt to

11   try to resolve this issue.

12         THE COURT:  17.

13         MR. SCHULTZ:  To the extent that Mr. Knuth, in his

14   report, refers specifically to Mr. Niemeyer, it seems to Lawson

15   that that is in the Court's order that he's able to respond to

16   that.  Am I reading that correctly, Your Honor?

17         THE COURT:  I'm not giving an advisory opinion on

18   that, and I can't -- the answer is I can't do it because the

19   way you all have these opinions written, there's so much

20   interconnection between stating X and then amplifying it to the

21   fact that X actually equals Y and Z, it's a problem for me.  I

22   can't agree to that.

23         This says, in addition to the program languages

24   discussed by Mr. Niemeyer.  So you mention him, and then you go

25   on to a whole lot of functional code in paragraph 17.  That

1    doesn't seem to me -- you're talking about the functional code

2    within the software is written in proprietary language called

3    4GL.  It's a programming language developed by Lawson to

4    increase efficiency.  What do you say about that, Mr. Schultz?

5          MR. SCHULTZ:  Yes, that's to clarify what Mr.

6    Niemeyer is talking about in paragraphs 21 to 32 of his report.

7    Essentially, what Mr. Niemeyer is doing is he is talking about

8    the programming languages.  Mr. Knuth is clarifying what the

9    actual system language is, in other words the source code of

10   the Lawson system.  It's the 4GL.  It's a proprietary language.

11         MR. ROBERTSON:  It's not relevant to anything, but

12   you know what?  Let's move on.  You know, if he wants to make

13   this statement at trial, I don't see the relevancy to the

14   infringement issues, but I don't have a problem with it.

15         THE COURT:  Which 21 to 32 are you talking about?

16   Does Knuth's paragraphs 21 and 32, do those paragraphs

17   correspond to Niemeyer's 21 through 32?

18         MR. SCHULTZ:  No, Your Honor.  What the illustration

19   was that we had in the brief and in the correspondence to ePlus

20   was that paragraph 16 and 17 of the Knuth report respond to

21   paragraphs 21 to 32 of the Niemeyer report.  In other words,

22   what we're doing is we're saying there is this connection

23   between source code that Mr. Niemeyer is talking about and what

24   Mr. Knuth testified to --

25         THE COURT:  Go read your paragraph page 14.  In

1    reality, Lawson simply reaffirmed that Mr. Knuth testified

2    about source code issues throughout his report including

3    paragraph 16 and 17 and 21 through 32.

4             Now, you keep talking about Niemeyer's report 21

5    through 32, and I asked you are those are the same numbered --

6    are they correlative numbers, and you said no, but I want to

7    get this finished and decide -- do you agree, Mr. Robertson,

8    that he can put in paragraphs 16, 17, 21 through 32 of the

9    Knuth report; yes or no?

10            MR. ROBERTSON:   No.  16 and 17, yes.  21 through 32

11   have nothing to do with the source code.  It's basically Mr.

12   Knuth testifying on functionality and supposedly what the

13   architecture of the S3 software does.  He doesn't discuss

14   source code anywhere in this paragraph, Your Honor.

15            THE COURT:   Where does he discuss source code in

16   those paragraphs, Mr. Schultz?  I don't see it, but it could be

17   I don't understand.  Tell me where in those paragraphs is there

18   any discussion of source code.

19            MR. SCHULTZ:   What he is doing, Your Honor, is --

20            THE COURT:   I didn't ask you that.  I said show me

21   where in that paragraph, sir, there is any discussion of source

22   code.

23            MR. SCHULTZ:   Paragraph 21 is responding to Niemeyer

24   report at 41 to 157.  It specifically responds to that report,

25   Mr. Niemeyer's report, that deals with source code of the

1    Requisitions Self-Service Punchout and Requisition creation
2    tabs.  Those paragraphs -- this is a perforatory paragraph,
3    paragraph 21.
4              It then gets into the specifics of the source code
5    starting in paragraph 22 that starts about describing the IC
6    module.  It specifically identifies by paragraph 22 the
7    inventory control user guide, what we're talking about here
8    that deals with the source code.
9              MR. ROBERTSON:  I might briefly respond, Your Honor.
10   That's exactly right.  It's addressing user guides that are not
11   source code.  What Mr. Niemeyer did was he read the source code
12   and said, here's what the source code discloses.
13             What Mr. Knuth is purporting to do here is to make
14   non-infringement arguments based on documentation that has
15   nothing to do with the source code.  User guides are not source
16   code, and you'll see throughout all those paragraphs cited not
17   one place, not one citation to anything is there any reference
18   to the actual source code of the accused software at issue
19   here.
20             MR. SCHULTZ:  Your Honor, for example, at paragraph
21   26, it specifically refers to the S3 application source code
22   and identifies the specific Bates number that goes along with
23   that.  This whole line of paragraphs here under paragraph B,
24   including 21, all the way through deal with Mr. Niemeyer's
25   specific report which, according to ePlus, must deal with

1    source code.

2         MR. ROBERTSON:  I'm sorry.  Can you please, Mr.

3    Schultz, direct me in paragraph 26 to the specific source code

4    reference you are making, because I don't see anything in

5    there.

6         MR. SCHULTZ:  Paragraph 26, third line up from the

7    bottom it says, see generally S3 application source code with

8    the Bates number L0135743.  Furthermore, after that, if I go

9    back to the user guide, paragraph 22 that I was referring to,

10   I'd refer you to Mr. Niemeyer's report where he specifically

11   includes that specific document in his report.

12        Mr. Knuth is responding to Mr. Niemeyer and his use

13   of the user guide, so obviously he's using that in his source

14   code report.  It's on footnote eight on page seven of Mr.

15   Niemeyer's report.

16        MR. ROBERTSON:  I must have a different copy of the

17   expert report because I don't see any reference in paragraph

18   26 -- I apologize -- that has anything to do with referencing

19   any specific source code document.

20        MR. SCHULTZ:  Excuse me, Mr. Robertson.  Do you have

21   an electronic copy, because you can do a search for that.

22        MR. ROBERTSON:  I have a hard copy in front of me.

23        THE COURT:  Read your paragraph 26, Mr. Robertson.

24        MR. ROBERTSON:  Mr. Niemeyer indicates that Lawson

25   System Foundation is required to run any of the individual

1    software modules --

2            THE COURT:  That's not the text of paragraph 26 of

3    the report that I have.

4            MR. SCHULTZ:  Mr. Robertson, you are reading from

5    what we have as paragraph number 27.  If you look back at the

6    paragraph before that, that's where it states application

7    source code.

8            MR. ROBERTSON:  I apologize.  I was looking at the

9    newly revised version you sent me after the Judge ruled, so let

10   me get to the proper paragraph which I gather is 27.

11           THE COURT:  26.

12           MR. ROBERTSON:  Is that right, Mr. Schultz?  I just

13   want to be on the same page.

14           THE COURT:  Paragraph 26, page eight, of the report

15   dated -- what's the date of this thing?

16           MR. ROBERTSON:  Okay, Your Honor --

17           THE COURT:  Dated August 25, 2010.

18           MR. ROBERTSON:  I have it now, sir.

19           THE COURT:  Look how much time you all took because

20   you're not dealing with the right reports.

21           MR. ROBERTSON:  Here again, Your Honor, last line of

22   26 says, again, dealing with this Legacy system, which Your

23   Honor has already ruled should be out of the case, last

24   sentence, I am aware of earlier versions of the S3 software

25   that include these modules dating back to at least the 1980s.

1           MR. SCHULTZ:  And, Your Honor, Lawson has already

2   agreed not to testify about those issues that are in this

3   report.  This is a moot issue.  We've already agreed to comply

4   with the Court's orders.

5           THE COURT:  I'm going to tell you something.  Mr.

6   Merritt, you and Mr. Carr work with these people and make sure

7   whether we have a problem or not as to -- right now Knuth can

8   testify to 37, 48, 69 and 70, 82 to 83, 91, 103, and 104 with

9   the exceptions of the sentences that ePlus objected to and to

10  paragraphs 16 and 17 of his report.

11          As to the 21 through 32, I'm not sure that you all --

12  of the Knuth report of August 25th, I'm not sure you all are

13  even singing from the same sheet of music, and you're wasting

14  my time here having to deal with it.  Mr. Merritt and Mr. Carr,

15  I charge you with the responsibility of sorting it out.  That's

16  it.

17          MR. CARR:  Sorting it out, sir, is that what you

18  said?

19          THE COURT:  Sorting it out.  I want it done right,

20  please.

21          MR. CARR:  Yes, sir, we'll do that.

22          MR. MERRITT:  Yes, sir.

23          THE COURT:  Next issue is what, J-CON?  Is that what

24  we're dealing with?

25          MR. ROBERTSON:  Yes, sir.

1          THE COURT:  We're going to take a recess, give the

2    court reporter and the rest of us a little break.  I guess the

3    best thing to do is, can you call back in?

4          MR. MERRITT:  Yes, sir.  We can reset the call.  You

5    tell us how many minutes, and I'll reset it that far from now.

6          THE COURT:  Four o'clock, and it is -- by my watch,

7    it is 3:37.  Thank you.

8

9          (Recess taken.)

10

11          THE COURT:  Hello.

12          MR. MERRITT:  Yes, sir, Judge.  We have the same

13    group reassembled.

14          THE COURT:  Okay.  The next issue -- just a minute.

15    I want to dislodge these things from my desk, put them on Ms.

16    Haggard's responsibility.

17          The next issue relates to the effort to exclude J-CON

18    because Shamos relies on -- excuse me, to exclude Shamos's

19    testimony about the J-CON system because Dr. Shamos does not

20    cite any evidence to support his J-CON obviousness theories; is

21    that where we are?

22          MR. ROBERTSON:  Yes, I think that's where we are.

23          THE COURT:  All right.

24          MR. ROBERTSON:  I'm happy to address that issue.  Do

25    we have a better connection?

```
 1              THE COURT:  Yes, we have a much better connection.
 2    And the way the briefing shakes out, it looks to me is that he
 3    addresses it, and 96 is the position of -- in Exhibit 96 is the
 4    position of Lawson; is that right, Mr. McDonald -- who is going
 5    to deal with it for Lawson?
 6              MS. STOLL-DeBELL:  Your Honor, this is Ms.
 7    Stoll-DeBell, and I will be addressing it.  Which exhibit are
 8    you talking about, though?
 9              THE COURT:  Well, it's Dr. Shamos's testimony on
10    J-CON, and they say that basically he can't testify to it
11    because 97 and 98 have been excluded; isn't that right, Mr.
12    Robertson?
13              MR. ROBERTSON:  Yes, Your Honor.  I have additional
14    arguments to make, but, in essence, that's right, consistent
15    with your order of November 19, 2010, that was docket entry
16    number 516.
17              THE COURT:  What does that say?
18              MR. ROBERTSON:  In pertinent part, Your Honor, it
19    says that Dr. Shamos does not rely in any way on DX-97 or 98 to
20    support his obviousness opinions.  You also found that DX-112
21    was not disclosed in responses to interrogatories, and
22    accordingly, you ruled that the motion is granted and any
23    testimony related thereto or based thereon are excluded from
24    admission at trial.
25              Your Honor is correct that DX-96 was also cited, but
```

1    it was never cited in support of any obviousness opinion.  It

2    was only cited in support of an anticipation opinion, and I

3    think I can say confidently, because I'm reading from the

4    defendant's brief, that the defendant has conceded that Dr.

5    Shamos had only one anticipation claim related to the patents

6    at issue.  That was claim six of the '683 patent which ePlus

7    has since withdrawn, and this is at page 15 of their opposition

8    at note, footnote nine.  So there are no longer any

9    anticipation claims based on J-CON.

10          The fact is, in his report, he never identified any

11   exhibits as relying on for an obviousness opinion which is why

12   Your Honor struck DX-97 and 98.  You have the benefit of your

13   own order on November 19th.  What happened here then is in

14   response to our motion, the defendant submitted some charts

15   which they relabeled as combinations or obviousness charts.

16          For example, it would be their Exhibit G which they

17   call the J-CON/Dworkin claim chart in order to suggest that

18   there was some obviousness argument.  If you look at that

19   chart, and I say this generously, it has been doctored in the

20   sense that it was an anticipation report that was

21   multi-columned in which they deleted several, probably a half

22   dozen columns in order to put juxtaposed an anticipation

23   argument they had made for J-CON next to an anticipation

24   argument they had made for Dworkin, and now they simply

25   relabeled it as an obviousness argument in order to try to

1    avoid the import of Your Honor's order of November 19, 2010.

2         The same reasoning that Your Honor applied in that

3    order wherein that Dr. Shamos makes no reference to DX-97, 98,

4    or for that matter DX-96, and it's conceded that he has no

5    anticipation arguments, we would think it would apply equally

6    to DX-96.  Having had that same law of the case applied, there

7    simply is no J-CON prior art defense.

8         Let me just point out to you one other thing, Your

9    Honor.  If you look at Exhibit 39 to our reply brief which was

10   filed on December 21st, you'll see an invalidity analysis done

11   by Dr. Shamos.  This is not our document.  This is Dr. Shamos's

12   document, and he addresses all the asserted claims for both

13   P.O. Writer and J-CON.  In two columns, he identifies all the

14   bases for his opinions, and in every instance, every instance

15   his opinion is that those claims are anticipated by P.O. Writer

16   and J-CON, no obviousness analysis.

17        His obviousness analysis is some conclusory

18   paragraphs which Your Honor has already determined were

19   conclusory with respect to the other exhibits and cites to no

20   exhibits whatsoever including, as Your Honor noted, DX-97,

21   DX-98, or DX-96.

22        Given all that we were provided with was our

23   anticipation argument, for the defendant at this point to

24   simply relabel them, relabel these anticipation arguments as

25   obviousness in order to try and do an end-around of the Court's

1    order, we think is entirely improper at this late date.

2            THE COURT:  Ms. Stoll-DeBell.

3            MS. STOLL-DeBELL:  Yes, Your Honor.  We are not

4    relabeling anticipation arguments as obviousness arguments.

5    Dr. Shamos, in his report, gave an opinion that J-CON plus the

6    Dworkin patent rendered the claims obvious and a second opinion

7    that the combination of J-CON plus P.O. Writer rendered the

8    claims obvious.  And, Your Honor, we provided you with a copy

9    of Dr. Shamos's entire report this morning.  I don't know if

10   you have that in front of you.

11           THE COURT:  Just a minute.  Wait a minute.  I do have

12   it.  I need to get to it here.

13           MS. STOLL-DeBELL:  Okay.  I'm going to direct you to

14   some paragraphs that show you how Dr. Shamos disclosed his

15   obviousness --

16           THE COURT:  Well, first tell me where he has those

17   opinions.  Where are they?

18           MS. STOLL-DeBELL:  They are in multiple places in his

19   report and in his claim chart, so if you go to -- do you have

20   the main body of his report?

21           THE COURT:  I have the report, and it's 83 pages with

22   his CV, and it's dated May 5, 2010, on page 76.  Is that it?

23           MS. STOLL-DeBELL:  Okay, Your Honor, yes.  If you

24   would go to paragraph 102, please, on page 26.

25           THE COURT:  Page 26, 102.

1            MS. STOLL-DeBELL:  And in this paragraph, you'll

2     see --

3            THE COURT:  Wait a minute.  Let me get there.

4            MS. STOLL-DeBELL:  I'm sorry.  It's a little hard on

5     the phone.

6            THE COURT:  Okay.

7            MS. STOLL-DeBELL:  Here he's talking about what

8     Exhibit 3 is, and he says Exhibit 3 is an integral part of his

9     report, and it contains a claim chart demonstrating the

10    invalidity of each asserted claim.

11           Now, Mr. Robertson just told you that the claim chart

12    is an anticipation claim chart.  That's simply not true.  It's

13    an invalidity claim chart that disclosed his opinions based

14    upon anticipation and obviousness, and you can see that he says

15    that right here in paragraph 102.

16           Now, if you turn the page, Your Honor, to paragraph

17    104 --

18           THE COURT:  Wait a minute.  I don't see where he says

19    that.

20           MS. STOLL-DeBELL:  Okay, he says Exhibit 3 which is

21    the claim chart contains a claim chart demonstrating the

22    invalidity of each asserted claim.

23           THE COURT:  Yes, but he doesn't mention -- what is

24    the basis?

25           MS. STOLL-DeBELL:  I need to go to other places to

1   show you that, Your Honor, so I'm going to do that now.  My

2   point with that sentence is he doesn't say it's an anticipation

3   claim chart, and he doesn't say it's an obviousness claim

4   chart.  He says it's his invalidity claim chart that

5   demonstrates his invalidity opinions for each asserted claim.

6   Then if you go to paragraph 104 on the next page, Your Honor.

7              THE COURT:  Yes.

8              MS. STOLL-DeBELL:  Okay.  He says, to the extent that

9   any reference listed in this report as anticipating any of the

10  asserted claims is not deemed to be anticipating, it is my

11  opinion that any missing element or step would have been

12  obvious in light of the art referenced in this report with the

13  motivation to combine as explained herein.

14             So he, I think, again is saying that claim chart, it

15  may be anticipation and obviousness, and I'm going to tell you

16  how that is throughout this report.  So, again, Exhibit 3 is

17  not just an anticipation claim chart.  It's both.

18             Now, Your Honor, if you can turn to page 67 starting

19  at paragraph 229.

20             THE COURT:  Just a minute.  Okay.

21             MS. STOLL-DeBELL:  Are you there?

22             THE COURT:  Yes.

23             MS. STOLL-DeBELL:  Now, these are his paragraphs

24  where he talks about the motivation to combine J-CON with

25  Dworkin, and specifically in paragraph 230 -- now, again, he

1    says, one of my opinions is that J-CON anticipates all of these

2    claims.  But he also says in paragraph 230, it's also my

3    opinion that it renders the claims obvious when combined with

4    this Dworkin patent, and he says in the second sentence there,

5    the combination teaches all of the elements of asserted claims,

6    and he lists the claims he is going to use, as shown in

7    Exhibits 3 and 4.

8            So right here, Your Honor, he's saying, I have an

9    opinion that J-CON plus Dworkin rendered these patents obvious,

10   and if you want to see my claim-by-claim analysis of where each

11   of these references discloses each element, go to Exhibit 3,

12   that claim chart.  Then he goes on to talk about why he thinks

13   there's a motivation to combine these two references.

14           Now, if we look at --

15           THE COURT:  Wait a minute.  You are relying on

16   paragraph 230 then; right?

17           MS. STOLL-DeBELL:  That, plus 102 and 104 to say that

18   Exhibit 3 is not just an anticipation claim chart.  It's

19   anticipation and obviousness.  Then we can go to, Your Honor --

20           THE COURT:  What about 231 through 234, what is that?

21           MS. STOLL-DeBELL:  He is talking about why one of

22   ordinary skill in the art would be motivated to combine J-CON

23   plus Dworkin.

24           THE COURT:  And that is obviousness --

25           MS. STOLL-DeBELL:  Yes, it's obvious to do so.

```
1   Because you need -- for obviousness, you need to show that each

2   claim element is in one or more of the references you are

3   combining, and then you want to say, and not only that, but one

4   of ordinary skill in the art would combine them.

5               THE COURT:  All right.

6               MS. STOLL-DeBELL:  That's what the rest of those

7   paragraphs are about.

8               THE COURT:  All right.

9               MS. STOLL DeBELL:  Now, Your Honor, if you could turn

10  to our Exhibit G that we filed in support of our opposition

11  brief.

12              THE COURT:  I don't have that with me here.  I have

13  to go get it.

14              MS. STOLL-DeBELL:  Okay.  Your Honor, could you -- do

15  you have Appendix A also?  That one goes with it.  Appendix A

16  and Exhibit G.

17              THE COURT:  Appendix A to what?

18              MS. STOLL-DeBELL:  Appendix A to our opposition

19  brief.

20              THE COURT:  I think I do have that here.  Let me see.

21              MS. STOLL-DeBELL:  It's docket 530-11.

22              THE COURT:  I have the brief.  I just don't know if I

23  have the appendix here.  No, I don't have Appendix A.  I've got

24  Exhibit G.  What about Exhibit G?

25              MS. STOLL-DeBELL:  Exhibit G is a portion of that
```

1    Exhibit 3 claim chart that we just read about.  Now, Exhibit 3

2    claim chart, Your Honor, was always meant to be a Microsoft

3    Excel document.  He has something like 28 different columns for

4    each of the different pieces of prior art that Dr. Shamos uses.

5    To print it, to print the things that are relevant for you to

6    see, I did, in fact, hide some of those columns, and the

7    columns I hid related to like the Gateway reference that we

8    withdrew and some of the other references that are no longer

9    part of this case for one reason or another, either we withdrew

10   them or they were excluded.  So I didn't print those for you.

11          I wanted to make it big enough so that you could read

12   it and put in what is relevant, and so what you see here are

13   the columns from that claim chart that relate to J-CON and

14   Dworkin.  So this also is Dr. Shamos's opinion that supports,

15   you know, the opinion he disclosed that he believes it would be

16   obvious to combine J-CON plus Dworkin, and when you do so, they

17   teach all of the elements of the claims, of the asserted

18   claims.

19          So for Mr. Robertson to say that Dr. Shamos did not

20   disclose his opinion that J-CON plus Dworkin renders the claims

21   obvious is just wrong.  We've just seen that he did, in fact,

22   do that, Your Honor.

23          THE COURT:  All right, Mr. Robertson --

24          MS. STOLL-DeBELL:  That was my first point.  If I can

25   move to the second point, Your Honor.

1          THE COURT:  I don't want you to go to P.O. Writer.

2          MS. STOLL-DeBELL:  No, my second point for J-CON.

3    Mr. Robertson showed you, I think it was his Exhibit 39, and

4    that was a portion of another claim chart that Dr. Shamos had

5    as part of his report.  Do you have that in front of you, Your

6    Honor?

7          THE COURT:  No.  I can't possibly keep all these

8    exhibits in my office.

9          MS. STOLL-DeBELL:  Okay.  Well, in any event, the

10   point of that is it was Exhibit 4 that we just read about, it

11   also relates to both anticipation and obviousness.  When we

12   looked at those paragraphs of Dr. Shamos's report, he said, my

13   obviousness opinions are disclosed in Exhibit 3 and 4.

14         You know, the fact of the matter is Dr. Shamos did

15   give an opinion that J-CON anticipates the claims, and he gave

16   an opinion that J-CON in combination with Dworkin and J-CON in

17   combination with P.O. Writer render obvious the claims.  For

18   various reasons he's not going to get into anticipation at

19   trial, but that doesn't mean he didn't disclose his obviousness

20   opinions.  He did.  He very clearly did.  He's got

21   element-by-element citations to that Exhibit 96 which is in

22   evidence, Your Honor.

23         Now, you know, the motion or the order that Mr.

24   Robertson referred you to, that related to two other J-CON

25   exhibits and they are out, but Exhibit 96 has always been in

1  this case.  It was stipulated.  It's a stipulated exhibit, and

2  in our Appendix A we show you element by element where Dr.

3  Shamos, in his report, whether it's his claim chart or the main

4  body of his report, cited to that admitted Exhibit 96.

5          THE COURT:  Where on Appendix A?

6          MS. STOLL-DeBELL:  You can look at the first page.

7  This is sort of element by element for each claim, but the

8  middle column is citations to Exhibit DX-96.

9          THE COURT:  I've got it -- it doesn't say 96.

10         MS. STOLL-DeBELL:  So, Your Honor, when Dr. Shamos

11 put his claim chart together, we didn't have trial exhibit

12 numbers.

13         THE COURT:  Is that the same as Exhibit F?

14         MS. STOLL-DeBELL:  Exhibit F is the -- no.  Exhibit F

15 is the claim chart we filed in our opposition --

16         THE COURT:  He's referring to Exhibit G then; is that

17 right?

18         MS. STOLL-DeBELL:  No, Your Honor.  You are in

19 Appendix A; right?

20         THE COURT:  Yes.

21         MS. STOLL-DeBELL:  Go to the middle column and go

22 down to the bottom.

23         THE COURT:  You mean the last page of the appendix?

24         MS. STOLL-DeBELL:  No, I'm on page one, and I'm in

25 the middle column of that table you see on page one.

1          THE COURT:  Yes, it says admitted exhibits relied on

2   by Dr. Shamos for J-CON.

3          MS. STOLL-DeBELL:  Okay.  So Exhibit F is Dr.

4   Shamos's actual report.

5          THE COURT:  Yeah.

6          MS. STOLL-DeBELL:  And then we quoted from that

7   report.  So at paragraph 196 of Dr. Shamos's report, he says,

8   the J-CON manual described, and it goes through that quote.

9   That quote is from the DX-96, and you can see that because I

10  put in a parenthetical at the end of that, DX-96.

11          So all I did is I went into his report, and every

12  time he quoted from or cited his DX-96, I put it in this chart

13  to show you he extensively relied on DX-96 and will do so at

14  trial.

15          THE COURT:  Okay.

16          MS. STOLL-DeBELL:  If you flip through this, Your

17  Honor, you'll see there's something for every element.  There's

18  a citation to either DX-96 or to that Dworkin patent which is

19  also admitted.

20          For every element of these claims, we will have Dr.

21  Shamos get up and give the opinion he properly and adequately

22  disclosed in his report and talk about the motivation to

23  combine these two that he said in his report, and we ought to

24  be able to do that, Your Honor.  We properly disclosed it.

25          THE COURT:  All right, Mr. Robertson.

1          MR. ROBERTSON:  Yes, Your Honor, thank you.  I know

2   there's a lot of paper we're shuffling here, but if you could

3   refer back to what was Exhibit G to defendant's opposition, the

4   chart.

5          THE COURT:  I've got it.

6          MR. ROBERTSON:  I'd like to take you, first of all,

7   there's a column S there which says Shamos opinion re J-CON.

8          THE COURT:  Yes.

9          MR. ROBERTSON:  Bottom of page two, opinion, claim

10  one is anticipated by J-CON.  I can skip you further, on page

11  14, same column, Shamos opinion re J-CON.  Column 21 is

12  anticipated by J-CON.

13         THE COURT:  Wait a minute.  Page 14?

14         MR. ROBERTSON:  Yes, sir.  Midway through the page.

15  Are you with me, sir?

16         THE COURT:  I am now.

17         MR. ROBERTSON:  Okay.  Skipping ahead to page 19,

18  same column on the bottom of the page, claim 29 is anticipated

19  by J-CON.

20         THE COURT:  Look over there at the column, the next

21  one down, J-CON renders claim 29 obvious when combined with the

22  Fisher.  Oh, that's not Writer, P.O. Writer or the other one,

23  okay.

24         MR. ROBERTSON:  Indeed, Your Honor, those were in

25  answers to interrogatories that were not in the second

1    supplemental instruction that Dr. Shamos actually specifically

2    disclaimed by saying that the claim charts contain matters

3    Lawson's interrogatories that are distinct from my opinions,

4    not I express my own opinions in the columns containing

5    headings beginning Shamos opinion.

6           There's no question that Dr. Shamos is making these

7    opinions.  I'm not going to belabor the point, Your Honor, but

8    if you go through every single example that's in Exhibit G,

9    every instance Dr. Shamos made an anticipation opinion and an

10   anticipation opinion only.

11          THE COURT:  Well, wait a minute.  It's obvious from

12   that exhibit that he made an anticipation opinion, but he also

13   says in a couple of places to the extent that they are not

14   anticipated, they would have been obvious in these answers in

15   102 or 104.

16          Is it your argument that he doesn't give any details

17   about obviousness, that what he does is just give a conclusory

18   opinion about obviousness and that's insufficient under the

19   case law?

20          MR. ROBERTSON:  That's exactly right, Your Honor.

21          THE COURT:  Why isn't that right, Ms. Stoll-DeBell?

22   You are trying to -- as I understand your argument, you want me

23   to look at Exhibit G.  Exhibit G, he doesn't give any

24   obviousness opinions under the category of Shamos opinion.  He

25   gives anticipation opinions, and then you want me to go look at

1    the photographs 102, 104, and I think 231 or something, and

2    because he says to the extent they are not anticipated, they

3    are obvious, conclude that he's given an obvious opinion but he

4    hasn't given the detailed obviousness.  He hasn't gone through

5    the obviousness drill in his opinions it doesn't look to me

6    like.

7            That's what you're asking me to do, isn't it, is to

8    say because he just sort of conclusorily adopts -- says, well,

9    if they're not anticipated they are obvious, then that's --

10   you're saying that's sufficient; isn't that right?

11           MS. STOLL-DeBELL:  No, that's not.  He gives detailed

12   opinions.  He says, Exhibit 3 is anticipation and it's

13   obviousness, and he says at paragraph 230, it's obvious when

14   combined that you can see where each of those references

15   discloses each claim element in Exhibit 3.

16           THE COURT:  Where is Exhibit 3?

17           MS. STOLL-DeBELL:  Exhibit 3 is Exhibit G.

18           THE COURT:  Oh, okay.

19           MS. STOLL-DeBELL:  Your Honor --

20           THE COURT:  Wait a minute.  You have to understand

21   something.  You all are so into this case that you use

22   shorthand.  To me, Exhibit G contains nothing but anticipation

23   opinions.  Now, show me in Exhibit G where he says anything

24   about obviousness under the heading Shamos opinion re J-CON.

25   Take me to a page that says that.

1          MS. STOLL-DeBELL:  Your Honor, I don't think he does

2     in Exhibit G, but he says at paragraph 230, Exhibit G is my

3     obviousness.

4          All Exhibit G is is a citation to the documents that

5     he's going to use to say --

6          THE COURT:  Wait a minute.  230 says, to the extent

7     that J-CON is not deemed to anticipate any asserted claim, it

8     is my opinion that such claim would have been obvious in view

9     of the combination of J-CON with Dworkin.  Combination teaches

10    all of the elements asserted, of asserted claims three, six,

11    26, 28, and 29 of the '683 patent, asserted claims one, two,

12    six, nine, 21, 22, and 29 of the '516 patent, and asserted

13    claim one of the '172 patent as shown in, and now he talks

14    about Exhibit G.  It says Exhibit 3, but you say that's the

15    same thing.

16         As such, the combination of J-CON and the '940 patent

17    renders these claims invalid.  Well, to me, all he's done is

18    make a conclusory statement sort of in the alternative that,

19    well, if you don't agree with anticipation, it's obviousness.

20    But he hasn't really explained obviousness which the Federal

21    Circuit requires be explained in a lot more detail than appears

22    in paragraph 230.

23         MS. STOLL-DeBELL:  Okay.  So 230 cites to Exhibit 3

24    which is Exhibit G.  And in Exhibit G, he says element by

25    element here's where J-CON discloses this element, here's where

1    Dworkin discloses this element.  So he's got an

2    element-by-element analysis for each of the two references he

3    says equal his obviousness combination.

4            So that is sufficient by the Federal Circuit.  ePlus

5    knows exactly what he's going to get on the stand and say.

6    J-CON is an electronic sourcing system, it teaches this

7    element, go see this page of the DX-96, and Dworkin has this,

8    go see this page of the Dworkin patent.  So the only other

9    thing we needed to do for obviousness is say, why would someone

10   put those two together.

11           Find element by element in each reference you're

12   going to say, you know, that reference teaches that element,

13   and in the body of his report, he says this is why there would

14   be a reason to combine.

15           THE COURT:  You mean paragraph 231 through 234?

16           MS. STOLL-DeBELL:  Right.  So he says, one of skill

17   in the art would have been motivated to make the combination

18   because the '940 patent states -- this is paragraph 232 --

19           THE COURT:  Why didn't you have him say -- why

20   doesn't he say, in my opinion, in the Shamos opinion -- why

21   wouldn't you have him say that it's obvious?  He doesn't --

22           MS. STOLL-DeBELL:  It does.

23           THE COURT:  It doesn't say it in the -- in his own

24   summary of his exhibit that says Shamos opinion -- he says it

25   re J-CON, but he doesn't say it re the combination.  He says

 1    anticipation.  He doesn't say -- he doesn't say anything about

 2    the combination being obvious except his --

 3              MS. STOLL-DeBELL:  He does in his report.  He says it

 4    in his report at paragraph 230.  Does he need to say it four

 5    times instead of three times?  You know, the fact of the matter

 6    is ePlus --

 7              THE COURT:  The fact of the matter is that this guy's

 8    report is babble and gobbledygook, and you all are going to get

 9    crucified at trial with it because you can't follow anything

10    he's said or done, and that's exactly the problem I have with

11    this guy.

12              He's cute.  He's real cute here.  He gives long

13    opinions on anticipation, and then he sort of puts -- you can

14    see what he did.  He added 230 right at the end as an

15    obviousness, and he doesn't really explain why.  And even under

16    the -- even if you compare Shamos opinion page seven, for

17    example, claim one is anticipated by J-CON under Shamos opinion

18    re Dworkin, claim one is anticipated by Dworkin.  He doesn't

19    talk about the combinations being obvious.

20              And the same thing, what he's doing is he's giving

21    the reasons why in this Exhibit G, on all these claims why they

22    are anticipated, but he's not saying why they are obvious, and

23    it's just kind of silly, and I don't know how you can be

24    allowed to do this kind of thing.

25              MS. STOLL-DeBELL:  Your Honor, it says in the title

1   above paragraph 223, for example, the combination of RIMS plus

2   Dworkin is obvious.  I guess I didn't think he needed to copy

3   the exact same data and put it into a claim chart and make this

4   claim chart another -- you know, that much longer.

5          It's all the same information.  He has an

6   element-by-element cite to each reference.  He says the

7   combination renders these claims obvious, and this is why one

8   would be motivated to combine them.  That is what we need to

9   put forth under Federal Circuit law to show something is

10  obvious.

11         Now, the fact that he also says it's anticipated

12  doesn't mean it can't also be obvious.  There are two theories,

13  and he disclosed both of them, and he --

14         THE COURT:  Was he deposed --

15         MS. STOLL-DeBELL:  And on top of that, Your Honor,

16  they deposed him.  They asked him questions about this claim

17  chart.  This is the first we've heard about any of this.

18         THE COURT:  Was he deposed about these questions,

19  this chart, Exhibit G, and these paragraphs on the topic of

20  obviousness as opposed to anticipation?

21         MS. STOLL-DeBELL:  Yes.  Ms. Albert asked him, they

22  went through, and that was the entire Exhibit 3, so it had the

23  columns for, you know, the other prior art that has been

24  withdrawn like Gateway.

25         THE COURT:  You don't need to tell me about that.

1          MS. STOLL-DeBELL:  Okay, but, yes, she did, and I

2     looked at it today.  She absolutely went through this claim

3     chart.  He explained it to her.  He explained Exhibit 4 to her.

4     He explained the obviousness.  She asked me questions about it.

5          THE COURT:  So notwithstanding the conclusory nature

6     of the report, you are saying that they understood and knew

7     that he was using the same reasoning as he used for

8     anticipation that he was using for obviousness; is that right?

9          MS. STOLL-DeBELL:  Yes, Your Honor, and he says that.

10    He says that in those paragraphs I cited you to, paragraphs

11    102, 104, and 230.  He says, I'm using the same reasoning that

12    I'm using for anticipation for obviousness.  And it makes

13    sense.  He's looking at the same documents, and he's talking

14    about the same claim elements.

15         THE COURT:  Well, you know, the problem is that isn't

16    what he says.  He says the same reasons for making the previous

17    two combinations apply to combining J-CON system as described

18    in the J-CON with P.O. Writer, blah, blah, blah.  He doesn't

19    say exactly what you said.  Well, that's in 235.  Let's go back

20    to 230.  He doesn't say he's using the same reasons.  It

21    doesn't say it.

22         But, Mr. Robertson, it looks to me like you had a

23    chance to depose him about it and that the objection would have

24    been to the report itself, not to try to exclude it at this

25    stage of the proceedings given that you know -- and your man is

1   going to be able to respond to this, isn't he?

2          MR. ROBERTSON:  We did not respond to opinions that

3   were not offered.  When we took Dr. Shamos's deposition, what

4   we did was pin him down to the opinions he gave.  Those were

5   anticipation opinions.  We actually pointed out that he did not

6   make any kind of reasoned articulation that is required for an

7   obviousness analysis which Your Honor has picked up upon.

8          If you look at, for example, paragraph 231 of Dr.

9   Shamos's report, it says, one skilled in the art would have

10  been motivated to make the combination because, and then

11  there's nothing else there.  So how are we to know what part

12  of, for example, J-CON, from what element of the claim that Dr.

13  Shamos is relying upon and what part of Dworkin for what

14  element of the claim Dr. Shamos is relying on if he provides no

15  analysis whatsoever.

16         And if I could just direct the Court to page 16 and

17  17 of our reply brief and cite to you the *Innogenetics* case v.

18  *Abbott Labs*, and the citation for that is 512 F.3d 1363 and

19  specifically at 1373.  It's a 2008 case, so it is a post-KSR

20  case from the Supreme Court on this issue of obviousness.

21         THE COURT:  What page?

22         MR. ROBERTSON:  If you will permit me, I won't

23  belabor it, but I'd like to read to you because I think its

24  consistent exactly with Your Honor's thinking here.

25         THE COURT:  What page?

1          MR. ROBERTSON:  Page 17, Your Honor, of our reply
2    brief.
3          THE COURT:  It's the cite to *Innogenetics v. Abbott*
4    *Labs*.  Your paragraphs begins on page 16?
5          MR. ROBERTSON:  Yes, sir.
6          THE COURT:  Have I given you the view that I'm unable
7    to read, I've lost my capacity to read?
8          MR. ROBERTSON:  No, sir.  I'll take that as a given
9    that you've read the case and understand its point.
10          THE COURT:  Do you have anything else other than
11    what's in the brief that you want to direct my attention to in
12    that case?
13          MR. ROBERTSON:  The only thing I would like to say is
14    nowhere did we ever receive obviousness claim charts from Dr.
15    Shamos with respect to either J-CON or P.O. Writer, and we were
16    entitled to that under the discovery that we asked for, and to
17    simply say after the fact when anticipation claims have been
18    struck or withdrawn that they can suddenly magically transform
19    into obviousness claims, we think is, again, improper and in
20    violation of the Rule 26 disclosures that were required.
21    That's all I would say, sir.
22          THE COURT:  What about J-CON, Writer?  It's the same
23    argument, isn't it?
24          MR. ROBERTSON:  Yes, sir.  It's the same argument,
25    and it's the same reasoning that Your Honor applied in your

1    order of November 19th when it said if these exhibits weren't

2    specifically referenced and they weren't provided with the

3    proper analysis, then the expert should be excluded and the

4    exhibits should be inadmissible.

5         MS. STOLL-DeBELL:  Your Honor, I do think it's the

6    same issue for J-CON and Dworkin plus J-CON and P.O. Writer,

7    but I would like to point out that ePlus's invalidity expert,

8    Mr. Hilliard, did address these issues in his report, and I

9    deposed him on it.  We talked about the combination of J-CON

10   with the other references.

11        Dr. Shamos has four combinations in his report,

12   obviousness combinations, and I asked Mr. Hilliard about it,

13   and Mr. Hilliard addressed it.  So for ePlus to say that they

14   haven't had the opportunity to respond or didn't respond is

15   just wrong.  These have been since they were disclosed in our

16   interrogatories responses, they were in our second supplemental

17   responses, they were in Dr. Shamos's report, Mr. Hilliard

18   rebutted them, Ms. Albert deposed Dr. Shamos on them, and I

19   deposed Mr. Hilliard on them.

20        There is nothing that -- I mean, they know

21   everything.  They know where for each element we're going to

22   rely, and they know why he's going to say there's a motivation

23   to combine.

24        MR. ROBERTSON:  Your Honor, just briefly, we don't

25   know everything.  We know what's been said in paragraph 230

1    which is as conclusory as you can get that somehow combination

2    teaches all of the elements.  Dr. Hilliard addressed a lot of

3    prior art that's now been either excluded by the Court or

4    voluntarily withdrawn.  Of course he had to do that, and if

5    he's asked the question, he's going to answer it during his

6    deposition.

7            That doesn't mean that that alleviates the unfair

8    surprise that's resulted from a failure to disclose under

9    Rule 26.

10           MS. STOLL-DeBELL:  Your Honor, I mean, if you look at

11   Exhibit G, I can go right to page two and say, okay, electronic

12   sourcing system.

13           THE COURT:  Wait a minute.  I've got to get to

14   Exhibit G.  What page?

15           MS. STOLL-DeBELL:  I'm just on page two.

16           THE COURT:  Okay, let me go.  All right.

17           MS. STOLL-DeBELL:  So I'm just looking at the first

18   element, an electronic sourcing system, which is row 15.

19   Shamos says, here is where, you know, there is proof that J-CON

20   is an electronic sourcing system.  That's in column F.  In

21   column Z, he says, this is where Dworkin says that.  This is

22   the element-by-element disclosure.

23           THE COURT:  But that's anticipation.

24           MS. STOLL-DeBELL:  It's both, Your Honor.

25           THE COURT:  He doesn't explain that it is.  He just

1    talks about it in terms of anticipation, and he talks about it

2    in the preceding column, obviousness was combined with RIMS and

3    Doyle and P.O. Writer and SABRE and the Gateway or IBM.  What

4    is that column?  What is that?

5            MS. STOLL-DeBELL:  Where are you at?

6            THE COURT:  Column R.

7            MS. STOLL-DeBELL:  This is citations he pulled from

8    Lawson's interrogatory responses.

9            THE COURT:  And they are not his, so he's --

10           MS. STOLL-DeBELL:  I think they are his.  He said he

11   -- he said very clearly in his report, I think it was at

12   paragraph 103, I adopt Lawson's prior art citations.  Then he

13   says, I don't necessarily adopt their opinions.  He says, I

14   don't necessarily adopt their opinions.

15           That doesn't mean I don't adopt them, and if you

16   look, Your Honor, at page one of Exhibit G, he has his little

17   color coding scheme there.  I'm on page one, and I'm at row

18   A-8, and you will see a gray cell.  It says, a cell with gray

19   shading indicates that it is not adopted.  So anything that is

20   gray in here he says I don't adopt which is where the

21   necessarily comes in.

22           These things he adopted.  There's no gray shading in

23   this Exhibit G.  I guess, Your Honor, he could have -- I guess

24   he could have copied exactly this Exhibit G and labeled it

25   obviousness, but he told them, I'm asserting these

1    combinations.  They are --

2          THE COURT:  Ms. Stoll-DeBell, wait a minute.  It is

3    just axiomatic that anticipation and obvious are not the same

4    things.  I mean, they really aren't, and what makes something

5    anticipated does not make it obvious, and if you want to

6    explain that something is obvious, you have to explain why you

7    think it's obvious.

8          He's explained fully why he think it's anticipated,

9    but he hasn't -- he hasn't made an analysis other than to say

10   because I say so, the same analysis applies to obviousness as I

11   have said as to anticipation, so if it loses as to

12   anticipation, it's nonetheless obvious.

13         He, therefore, obviously -- that's a bad word.  He

14   therefore, quite clearly, knows that there's a difference, but

15   he hasn't explained the difference, and he can't be heard to

16   say everything I said about anticipation applies with equal

17   force to obviousness, because that's just not the calculus that

18   the Federal Circuit requires, is it?

19         MS. STOLL-DeBELL:  Well, okay, so for -- no, they are

20   different theories, Your Honor, but they are related.

21   Anticipation you need to show every claim element is tied in a

22   single reference; right?

23         THE COURT:  Yes.

24         MS. STOLL-DeBELL:  And obviousness, you are combining

25   more than one reference, but you still have to look and say,

1   well, where in that reference is this claim element taught, and

2   in that way they are the same.  You have extra things you have

3   to do for obviousness because you are combining two references,

4   and that extra stuff is the test set forth in the *Graham* case.

5          You have to talk about why would it be obvious for

6   one of ordinary skill in the art to combine these two

7   references, but obviousness inherently has anticipation in it

8   because you have to look at that reference and say where does

9   this disclose the preamble, where does this disclose the first

10  element, where does this disclose the second element, and you

11  do that for each of the obviousness references, and then you

12  say, these extra things that is part of obviousness that is not

13  part of anticipation, why would one of ordinary skill in the

14  art combine them?

15         So they are different, but they are very related, and

16  they are related in the sense that you need to go through and

17  show where each claim element is disclosed, and that is what

18  Exhibit 3 does, or Exhibit G.  That's not the whole report,

19  Your Honor.  The whole report is the claim chart plus the body

20  of his report.

21         THE COURT:  As to J-CON plus Dworkin, that's in

22  paragraph 230.

23         MS. STOLL-DeBELL:  231 through 235.

24         THE COURT:  Well, 230 through 235.

25         MS. STOLL-DeBELL:  229 through 234.

1          THE COURT:  229 just says it anticipates.

2          MS. STOLL-DeBELL:  I'm sorry.  You're right.  230

3    through 234.  So when you put all of those together, he's

4    disclosed what he needs to disclose because he's got element by

5    element here is where J-CON teaches this element, here's where

6    it teaches this element.  Here's where Dworkin teaches this

7    element, here's where Dworkin teaches that element, and I would

8    combine them because of the reasons he sets forth in paragraphs

9    232 through 234.

10          THE COURT:  All right.  Anything else, Mr. Robertson?

11    It's your motion.

12          MR. ROBERTSON:  Yes, Your Honor.  There's just no

13    reason articulation is required by the Supreme Court how you

14    would combine these two and what elements from each you would

15    draw upon for every individual claim element.  You can't have

16    an expert who just waves his hands up there and says, in my

17    opinion, it would have been obvious.

18          That's inconsistent with the Federal Circuit case law

19    and just inconsistent with Rules of Federal Civil Procedure and

20    fairness.  We were not put on proper notice, and if this is the

21    sum total of his opinions, then all he did was wave his hands.

22          MS. STOLL-DeBELL:  Your Honor, Mr. Hilliard

23    responded.  He rebutted these opinions, so they were put on

24    fair notice.  They had Dr. Shamos, they deposed him.  I deposed

25    Mr. Hilliard on this stuff.  It has been part of this case.

1    They are on notice.

2              MR. ROBERTSON:  Mr. Hilliard testified that Dr.

3    Shamos's opinions on obviousness were conclusory.  That was his

4    testimony, and that is the truth.

5              MS. STOLL-DeBELL:  Your Honor, I actually have a

6    quote from Dr. Shamos's deposition --

7              THE COURT:  Dr. Shamos or Dr. Hilliard?

8              MS. STOLL-DeBELL:  Dr. Shamos.  Ms. Albert asked him,

9    and this is at page 237, line ten, of Dr. Shamos's deposition.

10   Question:  And then beginning at page -- well, at the bottom of

11   page 67 through a portion of page 68, you set forth your

12   opinions that the asserted claims are obvious based upon the

13   combination of J-CON and Dworkin; correct?  And Dr. Shamos says

14   yes.

15             They were on notice he was asserting this

16   combination, Your Honor, and to the extent, you know -- they

17   certainly can always move for a directed verdict at the end of

18   the day, but it's just not fair to look at this right now.  He

19   gave his report, he gave element by element citations to

20   references that are stipulated, that are in evidence.  He

21   explained why he wants to combine them, and we ought to be able

22   to put that evidence on to the jury.

23             THE COURT:  Now, this is a motion to enforce previous

24   orders.  What previous order am I enforcing if I grant, if I

25   strike this man's report -- if I keep him from testifying about

1    Exhibit 96, et cetera?

2          MR. ROBERTSON:  Your Honor, both consistent with your

3    order of November 19th which was excluding any opinions of

4    counsel -- or excuse me, of experts that did not specifically

5    reference and articulate reasons why the opinion is supported.

6    Also consistent with Your Honor's earlier order with respect to

7    Dr. Shamos's opinions being limited to only those things that

8    were supported in his expert report and not outside of the

9    second supplemental statement.

10         MS. STOLL-DeBELL:  Your Honor, I completely disagree.

11         THE COURT:  What orders are those?

12         MR. ROBERTSON:  Your Honor, I'm looking at, I think

13   it's document -- bear with me for a second.  Document 516,

14   theories not disclosed in the Court-ordered second supplemental

15   invalidity statement which was docket entry number 492, and

16   there was more than one order on Dr. Shamos and the second

17   supplemental, and I am trying to identify and locate that right

18   now, sir.

19         MS. STOLL-DeBELL:  Your Honor, this J-CON plus

20   Dworkin combination was in our second supplemental invalidity

21   contentions, and it was not part of their previous motion on

22   the second supplemental invalidity contentions or Dr. Shamos,

23   because it was in our second supplemental invalidity statement.

24         We did go claim by claim and say why we believe that

25   the combination of J-CON plus Dworkin and the combination of

1    J-CON plus P.O. Writer render these claims obvious, and we said

2    why we think one of ordinary skill in the art would be

3    motivated to combine them.  That is absolutely in our second

4    supplemental invalidity statement.

5            It has not been part of the briefing or motions or

6    orders on any of that.  And with regard to the order that you

7    entered in December, that related to two other exhibits.  It

8    had nothing to do with Dr. Shamos.  It was whether these

9    exhibits, you were going to sustain their objection to them.

10   Those exhibits are out.  We understand that, but Dr. Shamos

11   also cited to the exhibit that is in.  So this is not a motion

12   to enforce prior Court orders.  It has never been raised to you

13   before.

14           MR. ROBERTSON:  Your Honor, this is Mr. Robertson

15   again.  Also document number 382 which was filed, an order

16   filed by Your Honor on July 30th, and let me quote it for you.

17   For the reasons set on in the record during the July 28, 2010,

18   hearing, the plaintiff's motion in limine number two to enforce

19   the Court's orders of May 24th and May 25, 2010, and exclude

20   any expert opinion, other testimony, or argument pertaining to

21   alleged prior art and invalidity theories not set forth in

22   defendant's Court-ordered second supplemental statement is

23   granted.  That was July 30th.

24           These opinions that you see in Dr. Shamos's report

25   are the only opinions that relate to J-CON and Dworkin, so it

1    doesn't matter that even in fact, and I will respectfully

2    disagree with counsel's representation, that obviousness

3    opinions were set forth in the interrogatory answers or the

4    succeeded second supplemental, because they were not, and if

5    anything, they were as conclusory as Dr. Shamos's, but Dr.

6    Shamos needs to be limited to those reports, to those opinions

7    that are supported by the evidence, and, clearly, the theories

8    that he's articulating with respect to obviousness fall far

9    short of that under the case law.

10           MS. STOLL-DeBELL:  Your Honor, I'm looking at our

11   second supplemental invalidity statements.  At page 88, we have

12   a whole section that's entitled the J-CON system in combination

13   with the Dworkin patent, the '940 patent, render certain claims

14   obvious, and it goes from page 88 -- I'm paging down to see

15   where this even ends.  Page 88 through page 104 is our

16   disclosure in our second supplemental invalidity contentions

17   that the combination of J-CON plus Dworkin render the claims

18   obvious.

19           And then at page 104, we have another heading, the

20   J-CON system in combination with the P.O. Writer system render

21   claims obvious, and that goes from page 104 -- I'm paging

22   through all these claim charts.

23           MR. ROBERTSON:  But that wasn't in Dr. Shamos's

24   report; isn't that right?

25           MS. STOLL-DeBELL:  Mr. Robertson -- Your Honor, it

1    was in Dr. Shamos's report as I just said.  This issue was not

2    part of the prior orders which is what we have been discussing

3    because it was properly disclosed in our second supplemental

4    invalidity contentions.

5            Your Honor, we did disclose those two combinations

6    based upon J-CON, based upon obviousness in our second

7    supplemental invalidity contentions.  We have over 30 pages of

8    information on those two obviousness combinations.

9            Dr. Shamos disclosed it in his report.  He talked

10   about the motivation to combine, and he had it element by

11   element citation to exhibits that are admitted for trial, and

12   he ought to be able to get on the stand and give those

13   opinions.

14           THE COURT:  All right.  I think I've heard enough.  I

15   don't like the way that you all have done your reports, but

16   that's not what this issue is about.  I don't think this

17   relates to a previous motion to enforce -- I mean a previous

18   Court order in any significant way because it is in the second

19   supplemental.

20           His report, as verbose as it is, is almost

21   ununderstandable to me.  I'm sure you all have taken

22   depositions on it and understand what he's saying or you would

23   have been in here in another format.  So I'm going to deny the

24   motion as to the J-CON, Writer, and Dworkin and -- I mean J-CON

25   combined with Dworkin and combined with P.O. Writer, because I

1    don't think it relates to a previous order.  That's the end of

2    it all, isn't it now?

3              MS. STOLL-DeBELL:  Your Honor, there was one

4    remaining issue, but I think I can resolve it without having

5    Mr. Robertson speak.  They had some complaints about Dr.

6    Shamos's anticipation argument based upon P.O. Writer for three

7    claims, and we will not assert those at trial, so that should

8    resolve all the issues.

9              And so to make the record clear, we will not have Dr.

10   Shamos testify about anticipation based upon P.O. Writer for

11   claims three, 28, and 29 of the '683 patents.

12             THE COURT:  Hold on.  Say it again.

13             MS. STOLL-DeBELL:  We will not have Dr. Shamos

14   testify about anticipation based upon P.O. Writer for claims

15   three, 28, and 29 of the '683 patent.

16             THE COURT:  And that addresses which part about --

17             MS. STOLL-DeBELL:  I believe that's the only

18   remaining issue in plaintiff's motion, Your Honor.

19             THE COURT:  But which issue is it?

20             MS. STOLL-DeBELL:  It's the P.O. Writer issue.

21             MR. CARR:  Judge, this is Dabney Carr.  Kirstin,

22   maybe you also want to make clear which anticipation of P.O.

23   Writer claims that were not objected to.

24             MS. STOLL-DeBELL:  Yes, there are still three

25   remaining claims they didn't object to in their motion.

1          THE COURT:  You are talking about number six of their

2     motion.

3          MS. STOLL-DeBELL:  Yes.  I'm looking for their

4     motion.

5          THE COURT:  Precluding defendant from offering

6     testimony or other evidence concerning its allegation that P.O.

7     Writer prior art anticipates three, 28, and 29 of the '693

8     patent.

9          MS. STOLL-DeBELL:  Yes, Your Honor.  We will not

10    assert that.

11         THE COURT:  So that aspect of the motion is denied as

12    moot.

13         MS. STOLL-DeBELL:  Yes, Your Honor.

14         THE COURT:  Okay.  That takes care of everything,

15    does it, ladies and gentlemen?

16         MS. STOLL-DeBELL:  I just want to point out, as Mr.

17    Carr said, Your Honor, we still do -- we still will assert P.O.

18    Writer anticipation based upon three other claims.

19         THE COURT:  What claims are they?

20         MS. STOLL-DeBELL:  Claims 26 of the '683, and claims

21    one and six of the '516.

22         THE COURT:  Say again.

23         MS. STOLL-DeBELL:  Claim one and six of the '516

24    patent and claim 26 of the '683 patent.

25         THE COURT:  All right.

1          MS. STOLL-DeBELL:  I think that takes care of that.

2          THE COURT:  Are you all through with that, all that

3     motion now, Mr. Robertson?

4          MR. ROBERTSON:  One other issue, Your Honor, that's

5     come up, but I know that the day is late and we've been on the

6     phone for a long time, that deal with the fact that now that

7     the Court excluded Defendant's Exhibits 121 and 122 that have

8     to deal with P.O. Writer, there was significant deposition

9     testimony by Ms. McEneny that is no longer corroborated by

10    those documents as they are inadmissible.  We've submitted that

11    to the Court for consideration with the citations we believe

12    now for deposition testimony should be --

13         THE COURT:  Wait a minute.  What motion is that?

14         MR. ROBERTSON:  It's in -- I'm sorry.  Let me

15    identify it for you, Your Honor.  It's at page 23 of our

16    opening brief.

17         THE COURT:  Is that one of the six things that's in

18    the opinion -- I mean in the motion?

19         MR. ROBERTSON:  I'm sorry, Your Honor.  It may not be

20    in the actual paper motion itself.  It was briefed in there --

21    if it was not in the motion, it was done inadvertently.

22         MS. STOLL-DeBELL:  Your Honor, I might be able to

23    shorten this a little bit, too.  I agree that there should not

24    be deposition testimony from Ms. McEneny regarding the exhibits

25    that were taken out, DX-21 and -- 121 and 122, and I think our

1   only point is to the extent that some of the testimony ePlus

2   designated that relates to those exhibits should be out as

3   well.

4               THE COURT:  Of course it should.

5               MS. STOLL-DeBELL:  They don't seem to want to agree

6   to that, Your Honor.

7               THE COURT:  Well, of course you're going to agree to

8   that, aren't you?

9               MS. STOLL-DeBELL:  I sent them a letter listing which

10  segments of testimony I thought related to those exhibits and

11  said, I'm going to pull out ours, Lawson's, but you need to

12  pull out yours, too.

13              THE COURT:  You need to pull them out, don't you, Mr.

14  Robertson?

15              MR. ROBERTSON:  I don't think we need to take your

16  time with this.  The answer is if it relates to that exhibit,

17  I'll take it out.  If there's an admission Ms. McEneny made

18  about her system that it couldn't perform certain

19  functionality, that's not going to be in those exhibits.  The

20  documents don't say what it can't do.  What she was testifying

21  is what it couldn't do.  That was an admission.

22              THE COURT:  Get it straight.  You can't use the

23  testimony if they can't.  All right.

24              MS. STOLL-DeBELL:  Your Honor, perhaps we could just

25  deal with these issues on the call with Mr. Carr and Mr.

1    Merritt.

2            THE COURT:  Get them straight and reduce it to an

3    order.

4            MS. STOLL-DeBELL:  Okay.

5            THE COURT:  How many witnesses are you going to have,

6    Mr. Robertson?

7            MR. ROBERTSON:  Rough guess right now, Your Honor,

8    live witnesses, I think eight live and I think three by

9    depositions.  We've been working -- or four, excuse me, by

10   deposition.  We've been working with counsel to try and limit

11   as much as possible the number of -- the time for the

12   depositions.  At last count, I think for all the depositions

13   it's under four hours.  So that's where we stand on that, sir.

14           THE COURT:  How about you, Mr. McDonald?

15           MR. McDONALD:  We have, I believe, nine live

16   witnesses and two depositions which I believe are both pretty

17   short.

18           THE COURT:  I'm going to tell you something.  The way

19   all these papers come in, you're going to have the jury totally

20   confused before sundown the first day if you don't figure out a

21   way to streamline the case and sort it out.  They're never

22   going to understand any of this stuff.

23           I may have to declare a mistrial if I feel like you

24   all have bollixed everything up and made it impossible for the

25   jury to understand, because you have an obligation to put on a

1    case that the jury can understand, and I can tell you from

2    reading the gobbledygook that Shamos writes, about 40 minutes

3    of him and those jurors are going to feel like somebody is

4    trying to anesthetize them, and about five minutes after that,

5    they're going to go on off to sleep, so you better get it

6    straight.

7           I don't know, I haven't read many of these other

8    reports recently, but I told you earlier that yours -- how long

9    was your guy's report, Mr. Robertson?  180 pages or something?

10          MR. ROBERTSON:  That's probably right, Your Honor,

11   but obviously I don't want to put the jury to sleep, so we're

12   going to try to keep them as entertained and alert as possible.

13          THE COURT:  This is a hard case for a jury to

14   understand, and you're going to have problems.  We've agreed

15   we're going to show the Federal Judicial Center CD at the

16   beginning; right?

17          MR. McDONALD:  That's correct, Your Honor.

18          MR. ROBERTSON:  That's correct.

19          MR. McDONALD:  We have the question that maybe Mr.

20   Robertson would agree would be helpful.  We appreciate getting

21   the list of the jury pool.  Is it possible that the Court could

22   have the order of selection of the jurors picked perhaps on

23   Monday and get that to us ahead of time?  That might help us

24   streamline the selection process.

25          THE COURT:  What did you say?

 1          MR. McDONALD:  The order that you'll be calling them

 2     from the jury pool and putting them up into the seats, can you

 3     draw that order on Monday instead of Tuesday and get that to

 4     us?

 5          THE COURT:  They are drawn by lot the day of the

 6     hearing.

 7          MR. McDONALD:  And I'm just asking, and I understand

 8     if you don't want to do it, but it would be convenient, I

 9     think, for both parties if you drew it by lot on Monday instead

10     of Tuesday and we knew ahead of time.

11          THE COURT:  We don't even know who is going to show

12     up.  You're going to have nine jurors; right?

13          MR. McDONALD:  That's our understanding.  I think you

14     mentioned that before.

15          THE COURT:  I want you to have for the jurors a

16     notebook, and the notebook will have in it the following

17     things, so you'll need nine of them:  You'll have each of the

18     patents and highlighted the claim language, just the claim

19     language so they can quickly see what is at issue, and put a

20     tab on it.

21          MR. McDONALD:  Your Honor, to clarify, would that be

22     just the claims that are asserted?

23          THE COURT:  Yes, the claims that are at issue.  You

24     put a little tag of some kind where the claims begin so that

25     they can -- one of these little neon flags so that they can

1   quickly get to that part, and then just highlight them in the

2   yellow highlight what the claims are.  And then we've got the

3   witness list; right?

4           THE LAW CLERK:  Yes.

5           THE COURT:  We've taken your witness list, and we've

6   made a copy, and we're going to give that to the jurors.  I

7   want you to have in that notebook the claim construction for

8   each term and then what the term means and have that labeled so

9   they can get to it very readily.

10          And then I want you to have in that notebook -- this

11  would be the first thing in it -- the patent that is used in

12  the Federal Judicial Center tape so they can follow along with

13  that very readily.

14          MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

15  We've already prepared those notebooks exactly as you've

16  described including a glossary of terms as you've construed it

17  in the Markman ruling.  I will send that over by email tonight

18  to counsel for Lawson so they can assure themselves that it's

19  faithful to your Court's ruling.

20          May I also suggest, we had included in the back some

21  three-hole paged lined paper in case the jurors want to take

22  notes, but I don't know what Your Honor's feeling is with

23  respect to whether it permits or doesn't permit note-taking.

24          THE COURT:  I let them take all the notes they want

25  to, so go ahead and make your notes there.  That's fine.  Is

1   there anything else that you all think needs to be in the

2   notebook for the jurors?

3        MR. ROBERTSON:  That's fine from the plaintiff's

4   perspective, Your Honor.

5        MR. McDONALD:  I don't think Lawson has anything to

6   add, Your Honor.

7        THE COURT:  I've been through these exhibits, I mean

8   these proposed instructions you want to give at the beginning,

9   and I'm really not giving those kinds of instructions.  I think

10  this tape and the standard instructions that I give are going

11  to be sufficient.

12       I do think it's appropriate when you all, if you

13  order your case, for you to make a brief, just a statement to

14  the jury that says, we're now offering evidence on

15  infringement, and when your time comes, you can say, we're

16  offering evidence of non-infringement, and then if you have new

17  witnesses, we're offering evidence about the defense of

18  invalidity or whatever.

19       I think some transitional statements are appropriate

20  without any argument, just a little transition, to help the

21  jury follow along.  If you're going to do it with the same

22  witness, now I'm going to turn to ask you some questions

23  related to another of our defenses.  Do you see what I'm

24  talking about, gentlemen, ladies?

25       MR. McDONALD:  Absolutely, Your Honor.  Thank you for

1    giving us the chance to do that.

2           THE COURT:  It will help them be oriented to what you

3    are doing, and if you abuse that process, then I'll have to

4    deal with it later.

5           How long do you estimate now your case is going to

6    be, Mr. Robertson?  You've, I'm sure, been honing it down.

7    I've got to tell the jury what we're looking at.

8           MR. ROBERTSON:  Yes, Your Honor.  I've given that a

9    lot of thought.  The first day is going to be eaten up by a lot

10   of jury selection, the Judge's preliminary instructions, the

11   opening statement, the playing of the videotape.  I'm hoping to

12   get somebody on as fast as possible and get through at least a

13   witness, if not two, that first day, but to be candid with Your

14   Honor, I don't think that we're going to be able to rest our

15   case by that Friday, because really that will only give us

16   three full days since we're starting on Tuesday.

17          THE COURT:  By the way, on January 10th, we're not

18   going to have court.

19          MR. ROBERTSON:  Also, Your Honor, I wanted to point

20   out January 17th is Martin Luther King Day, so I assume we're

21   not going to have court on that day as well.

22          THE COURT:  Don't assume.  I'm going to wait and see

23   how we're going.

24          MR. ROBERTSON:  If Your Honor has nothing further, I

25   just have one housekeeping matter I wanted to raise that the

1    parties have been discussing, and that is in calling witnesses,

2    I understood Your Honor to indicate before that the Court is

3    inclined to fairly confine cross-examination to the scope of

4    the direct examination.

5             THE COURT:  That's correct.

6             MR. ROBERTSON:  We are going to be calling some

7    Lawson witnesses as adverse witnesses.

8             THE COURT:  You have the right to do that.

9             MR. ROBERTSON:  I'm sorry, sir?

10            THE COURT:  You have the right to do that, and you

11   can treat them --

12            MR. ROBERTSON:  The suggestion has been made by

13   Lawson that then they would want to address issues that they

14   need to raise in their case in chief while that witness is on

15   the stand --

16            THE COURT:  No.

17            MR. ROBERTSON:  -- and what I don't want to have

18   happen, quite frankly, Your Honor --

19            THE COURT:  Wait a minute, Mr. Robertson.  We're not

20   going to do that in this case.

21            MR. ROBERTSON:  Thank you, sir.

22            THE COURT:  They are going to come back and address

23   their own people in their own case.  It's hard enough for a

24   jury to follow these cases without having control over them,

25   and I found in the past that calling witnesses out of order

1    except when there's an emergency of some kind has created

2    problems, and allowing one party to call the other party's

3    witness during its case such as when you are calling a Lawson

4    witness and then Lawson using its time to put on part of its

5    case is confusing to the jury, and I think it's best in

6    complicated cases, not just patent cases but all complicated

7    cases, to follow a more structured approach.

8              MR. SCHULTZ:  Your Honor, this is Mr. Schultz.  May I

9    comment on the inventors and also one of Lawson's witnesses,

10   please?

11             THE COURT:  What?

12             MR. SCHULTZ:  The parties have also talked about the

13   inventors, and the inventors will be going in in ePlus's case

14   in chief.  We have agreed with ePlus to exhaust those inventors

15   when they first take the stand based on the fact that both

16   parties believe that the topic areas that will be covered will

17   be very consistent with what ePlus is going to be calling those

18   witnesses.  Is that okay with Your Honor?

19             THE COURT:  I don't know what you mean.

20             MR. SCHULTZ:  May we exhaust the inventors when they

21   first take the stand with the topics that we desire, that

22   Lawson desires to question them on?  Mr. Robertson, maybe you

23   can comment on that issue as well.  I know I've dealt with Mr.

24   Strapp before on this issue.

25             MR. ROBERTSON:  I think I will be raising issues that

1   you want to address, Mr. Schultz, in direct, so I think it will

2   be fairly within the scope of the direct for cross-examination.

3   I can't imagine that it won't be with respect to those

4   inventors.

5         MR. SCHULTZ:  The reason I bring this up, Your Honor,

6   is Lawson does not want to be precluded from asking any

7   questions that may go outside of the scope of direct

8   examination of the inventor.  Otherwise, we want to have those

9   inventors be able to come back in our case in chief.

10        THE COURT:  They can come back in your case in chief.

11        MR. SCHULTZ:  Your Honor, the other issue that I

12  have is --

13        THE COURT:  I would like to have -- just so you

14  understand gentlemen, lady, each case is a discrete

15  presentation.  This is a case that may actually, in part, get

16  resolved on directed verdict, and I can't decide that -- I

17  don't want to decide that in the hodgepodge of the melding of

18  testimony.

19        If I have to remember, when considering the

20  obviousness, Rule 50 motion that's coming what was said back in

21  the beginning, I think that's going to be difficult to keep in

22  mind and to keep sorted out, and I just want to keep it in

23  order.

24        MR. SCHULTZ:  Your Honor, the other issue we had is

25  one of our witnesses will be available the first week of trial.

1    That is Hannah Raleigh.  ePlus has Hannah on their witness

2    list.  Ms. Raleigh will be in Mumbai starting the 11th of

3    January.  We would ask the Court for the exception to exhaust

4    that witness when she takes the stand.

5            THE COURT:  Who is Ms. Raleigh?

6            MR. SCHULTZ:  Ms. Raleigh is one of Lawson's

7    employees.

8            THE COURT:  Why is she going to Mumbai?

9            MR. SCHULTZ:  Part of her job.

10           THE COURT:  Well, again -- what's the nature of her

11   testimony?  I don't like doing that.

12           MR. SCHULTZ:  And I don't know what ePlus plans on

13   calling her for.

14           THE COURT:  What do you want her for?

15           MR. SCHULTZ:  We actually don't need her for much.

16   Essentially to rebut what ePlus does.

17           THE COURT:  Well, you ought to be able to do that by

18   cross-examination, because if they ask a topic and you want to

19   respond to what they ask, you ought to be able to ask that on

20   cross-examination, shouldn't you?

21           MR. SCHULTZ:  Yes, Your Honor.  I just wanted to

22   raise the issue for the Court's understanding of Ms. Raleigh.

23           THE COURT:  Ms. Raleigh may be making several trips.

24   Again, I don't want -- I don't want this case split up.  If

25   somebody has an emergency and we can't help it, then that

1    happens, but this is something you all can plan for.

2            Uh-oh.  Are you all there?  They're gone.

3            (Brief interruption.)

4            THE COURT:  Hello.

5            MR. MERRITT:  Judge.

6            THE COURT:  All right.  Is everybody here assembled?

7    I don't know what happened.

8            MR. MERRITT:  Judge, this is Craig Merritt.  I'll

9    take responsibility.  I bumped a button on my phone, and since

10   this phone is the lynchpin of the whole call, everybody dropped

11   off.  I apologize.

12           THE COURT:  The last we were talking about was Hannah

13   Raleigh, and I said she might have to make a trip back, and I'd

14   like to follow the fairly strict approach to things, I think,

15   is where we were.  Anything else that you all need to deal

16   with?

17           MR. MERRITT:  Judge, the only thing I can think of is

18   for those who haven't tried a case with you, juror voir dire is

19   not an opportunity for people to get warm and fuzzy with the

20   jurors, and I assume that you'll be holding that pretty tightly

21   based on the questions we've submitted.

22           THE COURT:  Yes, I'll be conducting the examination

23   myself as usual in this district, and I don't anticipate that

24   it's going to take very long to pick this jury and that the

25   videotape -- I mean the DVD from the Judicial Center is about

1    20 minutes.  How long do you anticipate opening statements to

2    be?

3              MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

4    Certainly going to be less than an hour.  I'm going to be

5    shooting for 40 to 45 minutes.

6              THE COURT:  How about you, Mr. McDonald?

7              MR. McDONALD:  45 minutes was my target, Your Honor.

8    I'll try to match Mr. Robertson.

9              THE COURT:  All right.  So we ought to be able to

10   start -- we'll start at 9:30 and take the jury -- I expect by

11   11:00 we'll have a jury at the latest.  Is ePlus, is it a

12   publicly traded company?

13             MR. ROBERTSON:  Yes, sir.

14             THE COURT:  And Lawson is or is not?

15             MR. McDONALD:  Lawson is, Your Honor.

16             THE COURT:  So we'll have -- all right.  On the voir

17   dire examination, do you all have -- you all have submitted

18   questions.  Have you looked at each other's questions?  Have

19   you looked at the proposed questions?

20             MR. ROBERTSON:  Your Honor, I personally have not,

21   but one of my members of my team has, and I guess if you have

22   questions about it, he can address that.

23             THE COURT:  Are there any objections to the other

24   side's questions?

25             MR. YOUNG:  Your Honor, this is David Young for

1    ePlus.  We do not have any objections to the proposed voir

2    dire.

3            MS. HUGHEY:  Yes, Your Honor, this is Rachel Hughey

4    for Lawson.  The instructions were similar.  The parties'

5    structure was a little bit different.

6            MR. McDONALD:  We don't have any objections?

7            MS. HUGHEY:  No.

8            MR. McDONALD:  No objections from Lawson, Your Honor,

9    to theirs, to ePlus's.

10           THE COURT:  All right.  Okay.  Is there anything else

11   that we have pending now that we need to deal with?

12           MR. McDONALD:  Was a there a question or two about a

13   couple of exhibits?  I think there is a couple, isn't there?

14           MS. STOLL-DeBELL:  We have some possible disputed

15   issues regarding some exhibits, Your Honor, that we -- I don't

16   know.  We may be able to reach a resolution on them.  From our

17   perspective, I think there are two exhibits on ePlus's exhibit

18   list that we think should be off.  One of them is a duplicate

19   exhibit of one that you sustained our objections to.

20           Basically they are Lawson's annual reports, and they

21   were part of the group of financial documents that you heard

22   argument on at the pretrial, and we objected saying they were

23   not relevant, no longer part of the case.  ePlus said they were

24   relevant to secondary considerations, and you disagreed and

25   sustained their objection.  So we'd ask ePlus to take them off

1    the list.

2         MR. STRAPP:  Your Honor, this is Michael Strapp for

3    ePlus.  We haven't yet -- we've heard an objection.  We haven't

4    heard the rationale for the objection, nor have we had a chance

5    yet to meet and confer regarding those exhibits, and we will do

6    so.

7         We've also raised similarly a few issues with respect

8    to Lawson's final trial exhibit list including two exhibits

9    concerning P.O. Writer that have been already, we believe, been

10   excluded by Your Honor.

11        MS. STOLL-DeBELL:  Michael, I agree, they have.

12        MR. STRAPP:  As well as a category of exhibits

13   reserved for Mr. Knuth which have never yet been identified

14   which we believe are improper as well.

15        MS. STOLL-DeBELL:  I think the Knuth thing, I would

16   propose we address that during the meet-and-confer call that

17   we're going to have regarding Mr. Knuth.

18        MR. ROBERTSON:  We don't need to take the Court's

19   time on this.  We should just resolve these issues, shouldn't

20   we?

21        MS. STOLL-DeBELL:  I agree.

22        THE COURT:  Anything else?  All right.  That's it.

23   Thank you all very much.

24

25                    (End of proceedings.)

1

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6

7     _____/s/_____          _____

8     P. E. Peterson, RPR                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25