# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED FINAL PRETRIAL ORDER

FINAL PRETRIAL ORDER

In accordance with the local rules of the United States District Court for the Eastern District of Virginia and the Order on Initial Pretrial Conference entered in this civil action, it is ORDERED as follows:

## I.    STIPULATED FACTS

The following facts are stipulated and undisputed:

1.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq.

2.    This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) for alleged infringement of United States Patent No. 6,023,683 ("the '683 Patent") entitled "Electronic Sourcing System and Method," United States Patent No. 6,055,516 ("the '516 Patent") entitled "Electronic Sourcing System," and United States Patent No. 6,505,172 ("the '172 Patent"), entitled "Electronic Sourcing System."

3.    Plaintiff *e*Plus, Inc. ("*e*Plus") is a Delaware corporation, with its principal place of business at 400 Herndon Parkway, in Herndon, Virginia 20170.

4.    *e*Plus is the lawful assignee of all right, title and interest in and to the '683, '516 and '172 Patents (collectively, the "patents-in-suit").

5.    The '683 patent issued on February 8, 2000.

6.    The '516 patent issued on April 25, 2000.

7.    The '172 patent issued on January 7, 2003.

8.    The patents-in-suit were assigned to *e*Plus on May 15, 2001.

9.    The named inventors of the patents in suit are James M. Johnson, Douglas Momyer, Robert Kinross, and Francis Melly.

2

10. U.S. Patent No. 5,712,989 ("the '989 patent") is incorporated by reference into the disclosure of the patents-in-suit, and shares two of four inventors with the patents-in-suit.

11. *e*Plus filed this suit against Lawson Software, Inc. on May 19, 2009.

12. Defendant Lawson Software, Inc. ("Lawson") is a corporation organized and existing under the laws of the State of Delaware, and maintains its corporate headquarters at 380 St. Peter Street, St. Paul, Minnesota 55102.

13. This Court has personal jurisdiction over Lawson Software, Inc. because Lawson sells and offers to sell products and services to customers in the Eastern District of Virginia, Richmond Division.

14. Venue is proper in this district and division pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(b) and (c).

15. *e*Plus alleges that Lawson infringes claims 3, 26, 28, and 29 of the '683 patent.

16. *e*Plus alleges that Lawson infringes claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.

17. *e*Plus alleges that Lawson infringes claim 1 of the '172 patent.

18. Lawson makes, uses, licenses, sells, or offers for sale in the United States software applications and services, including a software product line known as S3.

19. Included in the Lawson S3 product line is a suite of applications and modules referred to as "S3 Supply Chain Management." These software applications and modules include: Inventory Control, Requisitions, Purchase Order, Lawson EDI, Requisitions Self-Service, and Procurement Punchout.

20. The current version of the Lawson S3 software suite is Release 9.0.1.

21. Lawson owns and operates a Web site at the uniform resource locator ("URL") www.lawson.com.

22. Lawson owns and operates a support and maintenance Web site at the uniform resource locator ("URL") www.mylawson.com.

23. Lawson makes technical documentation available to licensees of its S3 products through its "myLawson.com" Web site, including installation guides, implementation guides, configuration guides, release notes, and other documentation.

## II. STIPULATION WITH RESPECT TO M3 INFRINGEMENT[1]

1. In this case, *e*Plus has accused of infringement Lawson's e-procurement systems from two different procurement product lines, hereinafter referred to as the "S3 Procurement Product Line" and the "M3 Procurement Product Line."

2. With respect to the accused products in the M3 Procurement Product Line, Lawson and *e*Plus stipulate that the issue of whether these accused products infringe the asserted claims will not be tried, but rather will be determined based on whether the accused products in the S3 Procurement Product Line are found to infringe the asserted claims. In the event any of the accused products in the S3 Procurement Product Line are found to infringe any of the asserted claims, Lawson and *e*Plus stipulate that the accused products in the M3 Procurement Product Line made, used, sold, offered for sale and/or imported into the United States will likewise be found to infringe such claims. In the event that none of the accused products in the S3 Procurement Product Line is found to infringe any of the asserted claims, Lawson and *e*Plus stipulate that the accused products in the M3 Procurement Product Line will likewise be found not to infringe such claims.

3.      Accordingly, Lawson and *e*Plus stipulate that they will not introduce evidence or argument with respect to the M3 Procurement Product Line, and that infringement liability for the accused products in the M3 Procurement Product Line will be based on findings of infringement with respect to the accused products in the S3 Procurement Product Line. Likewise, Lawson and *e*Plus stipulate that they will not introduce evidence or argument specifically directed to the M3 Procurement Product Line, and that such evidence is not necessary in order for any remedy to encompass that product made, used, offered for sale, sold and/or imported into the United States.

## III.   WITNESSES

### A.     *e*Plus's Witnesses

*See* Appendix 1.

### B.     Lawson's Witnesses

*See* Appendix 2.

## IV.   EXHIBITS

### A.     *e*Plus's Exhibits

#### 1.     *e*Plus's Exhibits as to Which There Are No Objections

*See* Appendix 3.

#### 2.     *e*Plus's Exhibits as to Which Lawson Objects and the Grounds for Objection

*See* Appendix 4.

### B.     Lawson's Exhibits

#### 1.     Lawson's Exhibits as to Which There Are No Objections

---

[1] The parties agree that it is unnecessary to inform the jury about this "Stipulation With Respect to M3 Infringement."

*See* Appendix 5.

      **2.**      **Lawson's Exhibits as to Which *e*Plus's Objects and the Grounds for Objection**

*See* Appendix 6.

**V.**     **DISCOVERY DESIGNATIONS**

     **A.**      ***e*Plus's Discovery Designations**

         **1.**      ***e*Plus's Deposition Designations (witnesses scheduled to appear by video)**

*See* Appendix 7.

         **2.**      ***e*Plus's Designations of Lawson's Discovery Responses**

*See* Appendix 8 (Plaintiff *e*Plus, Inc.'s Designation of Interrogatory Responses).

         **3.**      ***e*Plus's Deposition Designations (witnesses scheduled to appear live at trial)**

*See* Appendix 9.

         **4.**      ***e*Plus's Summaries of its Affirmative Deposition Designations and its Counter-designations**

*See* Appendix 10.

     **B.**      **Lawson's Discovery Designations**

         **1.**      **Lawson's Deposition Designations (witnesses scheduled to appear by video)**

*See* Appendix 11.

         **2.**      **Lawson's Designations of *e*Plus's Discovery Responses**

*See* Appendix 12 (Defendant Lawson Software Inc.'s Designation of Interrogatory

Responses).

         **3.**      **Lawson's Deposition Designations (witnesses scheduled to appear live at trial)**

*See* Appendix 13.

## VI.    FACTUAL CONTENTIONS

### A.    *e*Plus's Factual Contentions

*e*Plus makes the following factual contentions:

1.    *e*Plus designs, markets, licenses, sells and offers to sell electronic sourcing and procurement software applications, services, systems and methods.

2.    *e*Plus sells and licenses electronic sourcing and procurement software, Procure(+) and Content(+).

3.    Defendant has been directly infringing claim 3 of the '683 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

4.    Defendant has been directly infringing claims 26, 28, and 29 of the '683 patent, and continues to do so, through the use of methods incorporating the patented inventions.

5.    Defendant's customers have been directly infringing claims 3, 26, 28, and 29 of the '683 patent, and continue to do so, through the use of apparatuses and methods incorporating the patented inventions.

6.    Defendant has been indirectly infringing claim 3 of the '683 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claim 3 of the '683 patent.  Defendant also provides maintenance services to its customers to assist them in using systems infringing claim 3 of the '683 patent.

7.     Defendant has been indirectly infringing claims 26, 28, and 29 of the '683 patent, and continues to do so, by contributing to or inducing other third parties to use methods incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems in a manner that infringes claims 26, 28, and 29 of the '683 patent.  Defendant provides maintenance services to its customers to assist them in using systems in a manner that infringes claims 26, 28, and 29 of the '683 patent.

8.     Defendant has been directly infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

9.     Defendant's customers have been directly infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and continue to do so, through the use of apparatuses incorporating the patented inventions.

10.     Defendant has been indirectly infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent. Defendant provides maintenance services to its customers to assist them in using systems infringing claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent.

11.     Defendant has been directly infringing claim 1 of the '172 patent, and continues to do so, by making, using, selling and offering for sale apparatuses incorporating the patented inventions.

LIBA/2109329.5

12.     Defendant's customers have been directly infringing claim 1 of the '172 patent, and continue to do so, through the use of apparatuses incorporating the patented inventions.

13.     Defendant has been indirectly infringing claim 1 of the '172 patent, and continues to do so, by contributing to or inducing other third parties to make and use apparatuses incorporating the patented inventions.  Defendant sells implementation, installation, training, and consulting services to assist its customers with the installation, implementation, and use of systems infringing claim 1 of the '172 patent.  Defendant provides maintenance services to its customers to assist them in using systems infringing claim 1 of the '172 patent.

14.     The Lawson Inventory Control, Requisitions, and Purchase Order modules comprise a software group referred to as "S3 Procurement."

15.     Also included in the Lawson S3 product line are the Lawson System Foundation and Lawson ProcessFlow applications, which are necessary for operating the S3 Supply Chain Management applications and modules.

16.     The Lawson S3 software systems accused of infringement are systems comprising the Inventory Control, Requisitions, and Purchase Order modules.  These systems must also include Lawson System Foundation and Lawson ProcessFlow.  These systems may also include one or more of the following applications:  Requisitions Self-Service, Procurement Punchout, and/or Lawson EDI.

17.     Each of the Accused S3 Systems[2] includes an Inventory Control module having a database for storing item data.

18.     The Lawson Requisition module has the capability of generating a requisition using item data from the Item Master.

19.     The Lawson Purchase Order module has the capability of creating purchase orders from requisitions.

20.     One purpose of Lawson's Inventory Control module is to set up items within the Item Master.

21.     When Lawson's Purchase Order module is used with Lawson's Requisition module, once a requisition has been approved, the Purchase Order module takes the approved requisition and creates a purchase order or purchase orders that are required to fulfill on the requisition.

22.     Lawson's Requisitions Self-Service application supports the hierarchical UNSPSC commodity classification schema.  Items in the Item Master can be associated with a commodity classification code and a category.  Selection of a product category, or sub-category, enables retrieval of all items that are associated with the same commodity classification code.

23.     There are a number of different ways in which data may be uploaded to the database in the Accused S3 Systems, including: (1) importing flat files using the IC 811 program or systems utilities included with the Lawson products; (2) importing the data using Lawson's EDI application; and (3) transferring the data using the PO536 program included with the Lawson products.

24.     The data that is imported into the Item Master may originate from a vendor catalog.

25.     Within the Accused S3 Systems, a vendor item links an Item Master record to a specific vendor.

---

[2] The term "Accused Systems" as used herein refers to all versions of the S3 systems accused by *e*Plus of infringement, whether licensed separately or with other products.

26.     The Accused S3 Systems each include the ability to search the item database using a number of different types of search queries.

27.     The Item Master of the Accused S3 Systems may include multiple items from multiple vendors, suppliers, distributors and manufacturers.

28.     Defendant provides services to its customers during implementation of the Accused S3 Systems, including system design and configuration, installation of the Lawson software onto computer systems, integration of the various modules, development of prototypes, loading of vendor item data into the Item Master, and testing of the system before and after it goes live.

29.     Defendant also provides services to its customers to extract catalog data from another procurement system and import it into the Item Master.

30.     Defendant exercises direction and control over its customers by, among other things, requiring each customer of the Accused S3 Systems to enter into a Software Customer Agreement.  The terms and conditions of these Software Customer Agreements define and restrict the manner in which Lawson's customers may install, use, and modify the Accused S3 Systems.

31.     Defendant contracts with supplier catalog-content providers to provide access to supplier catalog data for the Accused S3 Systems, and Defendant exercises direction and control over these supplier catalog-content providers.

32.     The Lawson EDI application provides an interface between the S3 Procurement system and the system user's vendors using electronic data interchange ("EDI") to facilitate the import of vendor item data into the Item Master, to transmit purchase orders to vendors and to receive purchase order confirmations from vendors.

11

33.     Defendant enters into agreements with EDI trading partners, with whom Defendant arranges pre-defined mapping schemes.  Defendant implements customers' EDI connections to these trading partners to facilitate the partners' transmission of catalog data for download into the Item Master, and Defendant exercises direction and control over these EDI trading partners.

34.     Defendant also has contractual relationships with Punchout trading partners and digital marketplaces such that a user of an Accused S3 System which includes the Procurement Punchout module can access multiple supplier product catalogs of Defendant's Punchout trading partners via Punchout connectivity.

35.     Defendant provides Punchout specifications to its Punchout trading partners and provides services to assist these partners in implementation of connections between their vendor Punchout catalogs and Accused S3 Systems of Defendant's customers.

36.     Defendant delivers pre-configured connectors to its customers for connection of the Defendant customers' Accused S3 Systems to the Defendant's partner Punchout sites, and Defendant exercises direction and control over these Punchout trading partners and digital marketplaces.

37.     *e*Plus directly competes with Lawson for the sale of electronic sourcing and procurement software applications, services and systems.

38.     Defendant's wrongful conduct has caused *e*Plus to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

39.     *e*Plus has no adequate remedy at law to compensate for Defendant's ongoing infringement of its patents.

40.     *e*Plus did not inexcusably delay in bringing this patent-infringement action against Lawson.

41.     *e*Plus has diligently enforced its patents.  *e*Plus has been involved in prior enforcement actions involving the patents-in-suit, including *ePlus Inc. v. Ariba, Inc.*, Case No. 1:04-cv-00612-LMB-BRP, and *ePlus Inc. v. SAP America, Inc.*, Case No. 3:05-cv-00281-JRS, both in the Eastern District of Virginia.

42.     Defendant has not been prejudiced by the timing of *e*Plus's patent-infringement action against Lawson.

43.     Defendant would not be unduly harmed by an injunction.

44.     The balance of hardships between *e*Plus and Defendant favors the entry of an injunction against Lawson.

45.     The public interest favors the entry of an injunction against Defendant.

46.     Defendant's accused revenue is derived from three sources:  (1) software licensing; (2) maintenance services; and (3) installation, implementation, consulting, and training services.

47.     Defendant's services include initial planning and implementation of clients' systems, along with training and learning tools to help clients optimize the use of the software.

48.     Defendant's maintenance services include the provision of software upgrades, updates, and corrections, along with technical advice and application management.

49.     Defendant requires that its customers pay maintenance fees for at least one year any time a customer licenses software.

50.     Ninety-three percent of Defendant's customers renew their maintenance subscriptions.

51.     In fiscal year 2010, Defendant's total revenue was $736 million.  License revenue was $124 million.  Maintenance revenue was $353 million.  Service revenue was $259 million.

52.     Defendant has been commercially successful in exploiting its infringement of the patents-in-suit.  Among other things, (1) Defendant generated $84,142,397 between November 1, 2003 and March 31, 2010 by licensing software that infringes the patents-in-suit; (2) Defendant generated $271,272,444 between November 1, 2003 and March 31, 2010 from the maintenance services it provides to its customers who license Lawson software that infringes the patents-in-suit; and (3) Defendant generated $245,299,599 between November 1, 2003 and May 15, 2010 from its installation, implementation, consulting, and training services for customers who license Lawson software that infringes the patents-in-suit.

53.     Defendant acted recklessly in its infringement of the patents-in-suit.  Defendant was aware of the patents-in-suit and their relevance to Defendant's ongoing business operations no later than October 2003, when *e*Plus began marking its products.  Defendant became aware of *e*Plus's products and understood that *e*Plus competed with Lawson in the procurement space no later than 2003.  Defendant was made aware of the patents no later than 2005 through its subscription to several industry publications that featured *e*Plus and its patent portfolio including, among others, Gartner, Forrester, Aberdeen, VDC, and AMR.  *e*Plus filed this suit against Defendant for infringement of the patents-in-suit on May 4, 2009.  Defendant did not obtain an opinion of counsel prior to the filing of this suit, and has refused to disclose the opinion of counsel it obtained shortly after the filing of this suit.  Notwithstanding Defendant's knowledge of the patents-in-suit, Defendant continues its infringement.  Defendant has made no changes to any of its S3 software systems to avoid infringing the patents-in-suit.  Defendant's infringement has been willful, deliberate and with knowledge of *e*Plus's rights under the patents-in-suit.

LIBA/2109329.5

54. *e*Plus is entitled to its attorneys' fees and costs as this is an "exceptional case" pursuant to 35 U.S.C. § 285.

55. The '683 patent is valid.

56. The '516 patent is valid.

57. The '172 patent is valid.

58. None of the prior art asserted by Defendant anticipates any of the asserted claims of the patents-in-suit.

59. There is no combination of the prior art asserted by Defendant that renders obvious any of the asserted claims of the patents-in-suit.

60. Secondary considerations of non-obviousness, including commercial success, licensing, praise from others, long-felt but unmet need, skepticism by experts, and copying of the inventions by competitors, demonstrate that the patented inventions were not obvious at the time of invention.

61. One of ordinary skill in the art of the patents-in-suit would be a person in the field of computer science with an undergraduate Bachelor of Science degree and some practical programming experience, perhaps about a year or two of experience, and having an understanding of basic principles of supply chain management and procurement in the 1993 to mid-1994 time frame.

62. The claimed inventions fall within the statutory classes of patentable subject matter under 35 U.S.C. § 101.

63. The patent specification for the '683 patent, the '516 patent, and the '172 patent describes the inventions in sufficient detail to demonstrate that the named inventors were in possession of the claimed inventions.

64.     The asserted claims of the patents-in-suit particularly point out and distinctly claim the patented inventions.

65.     U.S. Patent Application Serial Number 08/288,577 (the "'577 Application") was filed in the U.S. Patent and Trademark Office on August 10, 1994.

66.     Each of the three patents-in-suit derives priority from the date of filing of the '577 Application.

67.     U.S. Patent No. 5,712,989 (the "'989 Patent"), at the time the '577 Application was filed, was owned by the same person as the owner of rights to the '577 Application, Fisher Scientific.  Accordingly, the '989 Patent cannot be used as part of a combination to invalidate claim 1 of the '172 Patent under 35 U.S.C. § 103.

68.     The named inventors of the '989 Patent, James M. Johnson and Douglas Momyer, are also named inventors of the three patents-in-suit.  Accordingly, the disclosure of the '989 Patent is not prior art to the asserted claims under 35 U.S.C. § 102(e) as such disclosure does not constitute an invention by another as required by the statute.

69.     The '989 Patent was expressly considered by the Patent Office Examiner during prosecution of the three patents-in-suit.

70.     The Fisher RIMS system was expressly considered by the Patent Office Examiner during prosecution of the three patents-in-suit.

71.     The '989 Patent was expressly incorporated by reference into the specification of the patents-in-suit.

72.     The specification for the patents-in-suit references the Fisher RIMS system 49 times.

16

73.     The inventors expressly disclosed the Fisher RIMS system in the Background of the Invention section of the specification for the patents-in-suit.

74.     The Patent Office Examiner's search notes included in the prosecution file history for the '577 Application indicate that the Examiner searched Class/Subclass 705/28, the class in which the '989 Patent is classified, two times after the '989 Patent was issued.

75.     The Patent Office Examiner who examined the applications which issued as the patents-in-suit expressly considered the IBM TV/2 search program in examining the asserted claims and found all of the asserted claims patentable over that search program.

76.     The IBM Technical Viewer/2 General Information Manual is listed under the References Cited section of each of the patents-in suit.

77.     The IBM Technical Viewer/2 product information brochure is listed under the References Cited section of each of the patents-in-suit.

78.     The Patent Office Examiner who examined the applications which issued as the patents-in-suit expressly considered U.S. Patent No. 4,992,940 to Dworkin (the "Dworkin Patent") in examining the asserted claims and found all of the asserted claims patentable over the Dworkin Patent.

79.     The Dworkin Patent is listed under the References Cited section of each of the patents-in-suit.

80.     The Patent Office Examiner who examined the applications which issued as the patents-in-suit expressly considered U.S. Patent No. 5,319,542 to King et al. (the "'542 Patent") in examining the asserted claims and found all of the asserted claims patentable over the '542 Patent.

LIBA/2109329.5

81.     The '542 Patent is listed under the References Cited section of each of the patents-in-suit.

82.     The PO Writer manuals are not printed publication prior art under 35 U.S.C. § 102 because they were not publicly accessible to persons of ordinary skill in the art.

83.     The licensor of the PO Writer software maintained the PO Writer software and related manuals as confidential and precluded distribution of such materials other than to licensees.

84.     The J-CON manuals are not printed publication prior art under 35 U.S.C. § 102 because they were not publicly accessible to persons of ordinary skill in the art.

85.     The licensor of the J-CON software maintained the J-CON software and related manuals as confidential and precluded distribution of such materials other than to licensees.

### B.     Lawson's Factual Contentions

#### 1.     Factual Contentions for Issues to be Tried to a Jury:

Lawson disputes *e*Plus's factual contentions and makes the following factual contentions:

1.     The Lawson S3 software systems accused of literal infringement are: (1) Lawson Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules) (hereinafter "S3 Procurement"); (2) Lawson S3 Procurement (i.e., the Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC] modules) integrated with the Requisitions Self-Service application [SIP / SIPP] (hereinafter "RSS"); (3) Lawson S3 Procurement (Lawson Requisitions [RQ], Purchase Order [PO] and Inventory Control [IC]) integrated with RSS [SIP / SIPP] application and integrated with the Procurement Punchout [EPP / EPPH / EPRO] application (hereinafter "Punchout"); and (4) a Lawson system of any of the other three scenarios may also include the

18

Lawson EDI [TCS / HBP] application of the S3 SCM suite for further functionality within the scope of the claims (hereinafter "S3 EDI").

2.      *e*Plus does not accuse S3 Procurement or RSS of infringing claims 26 and 29 of the '683 patent.

3.      *e*Plus's does not accuse S3 Procurement of infringing claims 3 and 28 of the '683 patent or claims 9, 21, and 29 of the '516 patent or claim 1 of the '172 patent.

4.      None of the accused software products either as sold or as used include a catalog or multiple catalogs.

5.      None of the accused software products either as sold or as used allow for selecting one or more product catalogs to search or selecting portions of a catalog database to search or include a database maintained so that selected portions may be searched separately.

6.      None of the accused software products as sold or as used use UNSPSC codes to convert or substitute one item for another item.

7.      None of the accused software products as sold or as used have an order list.

8.      None of the accused software products have a cross-reference table.

9.      Lawson does not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent by making, offering for sale, or selling S3 Procurement software (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules) (hereinafter "S3 Procurement").

10.      Lawson does not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the

19

'172 patent by making, offering for sale, or selling S3 Procurement software integrated with the Requisitions Self-Service application [SIP / SIPP] (hereinafter "RSS").

11.     Lawson does not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent by making, offering for sale, or selling S3 Procurement software integrated with RSS and integrated with Procurement Punchout [EPP / EPPH / EPRO] (hereinafter "Punchout").

12.     Lawson does not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent by making, offering for sale, or selling EDI [TCS / HBP] application of the S3 SCM suite integrated with S3 Procurement, RSS, or Punchout (hereinafter "S3 EDI").

13.     Lawson's customers who have licensed S3 Procurement do not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

14.     Lawson's customers who have licensed RSS do not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

15.     Lawson's customers who have licensed Punchout do not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

16.     Lawson's customers who have licensed S3 EDI do not infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

17.     Lawson does not exercise control or direction over its customers.

18.     Lawson does not exercise control or direction over the third party vendor sites that are connected via Punchout.

19.     Lawson does not exercise control or direction over any third party content providers.

20.     Lawson does not exercise control or direction over any third party suppliers, vendors, distributors, or manufacturers who sell items to Lawson's customers.

21.     Lawson does not make, use, license, sell, or offer for sale computers.

22.     Lawson does not lease, license, or sell hardware.

23.     Lawson does not indirectly infringe any of the asserted claims, namely, claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent.

24.     *e*Plus's asserted claims are invalid.

25.     One of ordinary skill in the art for the patents in suit would have an undergraduate degree in computer science, or equivalent work experience, and, in addition, two years experience designing or programming electronic ordering systems.

26.     U.S. Patent No. 5,712,989 ("the '989 patent") describes the Fisher RIMS system.

27.     *e*Plus does not allege that Lawson infringes the '989 patent.

28.     The '989 patent is not owned by *e*Plus.

29.     The '989 patent was not identified on the patents in suit as prior art and was not considered as prior art during the prosecution of any of the patents-in-suit.

30.     The '989 Patent is prior art to the patents-in-suit under at least 35 U.S.C. §102(e).

31.     The Fisher RIMS system is prior art to the patents-in-suit under at least 35 patents-in-suit under at least 35 U.S.C. §§ 102(a) and (b) because it was on sale or in public use

more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

32.    All of *e*Plus's asserted claims are anticipated by the '989 patent.

33.    All of *e*Plus's asserted claims are anticipated by the RIMS system.

34.    IBM's Technical Viewer/2 ("TV/2") is prior art to the patents-in-suit under at least 35 U.S.C. §102 (a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

35.    The PO Writer system is prior art to the patents-in-suit under at least 35 U.S.C. §102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

36.    The PO Writer manual is prior art to the patents-in-suit as a printed publication under 35 U.S.C. §§102(a) and (b).

37.    The PO Writer system and manual anticipate claims 3, 26, 28, and 29 of the '683 patent and claims 1 and 6 of the '516 patent.

38.    The J-CON system is prior art to the patents-in-suit under at least 35 U.S.C. §102(a) and (b) because it was on sale or in public use more than one year before the filing date of the patents-in-suit and was known and used before the invention date of the patents-in-suit.

39.    The J-CON manual is prior art to the patents-in-suit as a printed publication under 35 U.S.C. §102(a).

40.    U.S. Patent No. 5,319,542 ("the '542 patent") is prior art to the patents-in-suit at least under 35 U.S.C. §§ 102(a) and (b).

41.    The '542 patent anticipates claims 1, 2, and 9 of the '516 patent.

LIBA/2109329.5

42. The combination of the Fisher RIMS system/'989 patent and TV/2 render obvious all of the asserted claims of the patents-in-suit.

43. The combination of the Fisher RIMS system/'989 patent and U.S. Patent No. 4,992,940 ("the '940 patent) render obvious all of the asserted claims of the patents-in-suit.

44. The combination of the J-CON system/J-CON manual and the '940 patent render obvious claims 3, 26, 28, and 29 of the '683 patent, claims 1, 9, 21, 22, and 29 of the '516 patent, and claims, and claim 1 of '172 patent.

45. The combination of the J-CON system/ J-CON manual, the P.O. Writer system/ P.O. Writer manual render obvious claims 3, 26, 28, and 29 of the '683 patent, claims 1, 6, 9, 21, 22, and 29 of the '516 patent, and claims, and claim 1 of '172 patent.

46. The U.S. Patent and Trademark Office was not aware of and did not consider the J-CON system/manual, the P.O. Writer system/manual, or the RIMS system as sold or in public use as prior art during the prosecution of the patents in suit.

47. None of the J-CON system/manual, the P.O. Writer system/manual, or the RIMS system or '989 patent are identified as references cited by the U.S. Patent and Trademark Office in connection with the prosecution of any of the patents in suit.

48. Fisher Scientific's products do not practice the claimed inventions of the patents-in-suit.

49. Procure (+), Content (+), and other *e*Plus products do not practice and have not practiced the claimed inventions of the patents-in-suit.

50. The secondary considerations that *e*Plus contends support a finding of no obviousness have no nexus to the claimed invention of the patents-in-suit.

51.     The following facts may be relevant to rebut *e*Plus's evidence, if any, of secondary considerations of non-obviousness[3]:

a.     Among other things, *e*Plus acquired the '683 and '516 patents and the pending application that which later became the '172 patent. The patents were assessed by *e*Plus to have a fair market value of $12,000.  Their fair market value of $12,000 was established based upon "the expected useful economic life of such patents and the estimated value of similar patents held by others."

b.     ProcureNet was not profitable in any year of its operations that it owned the '683 and '516 patents and the pending application that which later became the '172 patent.

c.     *e*Plus is primarily an equipment sales and leasing company.  In the fiscal year ending March 31, 2009, approximately 98% of *e*Plus's revenues were derived from equipment sales and leasing.

d.     *e*Plus also sells electronic sourcing and procurement software, Procure(+) and Content(+), through *e*Plus's Systems, Inc. and *e*Plus Content, Inc.

e.     *e*Plus has had between $2 million and $10.4 million in annual sales of its electronic sourcing and procurement software between 2001 and 2009.

---

[3]     Lawson contends that *e*Plus cannot present evidence of secondary considerations of non-obviousness at trial because it does not have and/or has not disclosed any evidence or arguments to prove that there is a nexus between the alleged secondary considerations and the claimed invention.

24

       f.     *e*Plus's division which sells procurement software has never made a profit since *e*Plus acquired the patents in suit in 2001.

52.     Claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under 35 U.S.C. § 112 ¶ 1 for not meeting the written description requirement.

**2.    Factual Contentions for Issues to be Tried to the Court:**

1.     Claims 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, and 29 of the '516 patent are invalid under 35 U.S.C. § 101 as directed to non-statutory subject matter.

2.     Claims 3, 26, 28, and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent, and claim 1 of the '172 patent are invalid under 35 U.S.C. § 112 ¶ 2 and ¶ 6 as indefinite.

3.     Lawson did not have actual knowledge of the patents-in-suit until *e*Plus filed this lawsuit.

4.     *e*Plus never gave Lawson notice of infringement until it served this lawsuit in on May 28, 2009.

5.     *e*Plus never gave Lawson notice of the patents in suit until it served this lawsuit on Lawson on May 28, 2009.

6.     Lawson has good faith defenses to infringement and validity claims asserted by *e*Plus and has not acted and is not acting despite an objectively high likelihood that its actions constitute infringement of a valid patent.

7.     Lawson's good faith defenses to infringement and validity include:

       a.     The Patent Office has granted requests to reexamine claims in all of the patents-in-suit based in whole or part on prior art Lawson is asserting in this lawsuit.

---

b.      On July 18, 2006, SAP filed a request to reexamine claims 26-45 of the '683 patent.  The Patent Office granted this request finding that the following four prior art references created a substantial new question of patentability: J-CON Manual, Volume 1; A Practical Guide to SABRE Reservations and Ticketing; P.O. Writer Guided Tour Version 10.0; and Gateway 2000/MRO.  After granting the request for reexamination, the Patent Office initially and finally rejected these claims based on this prior art.  *e*Plus has appealed the Patent Office's rejections to the Board of Patent Appeals and Interferences.  The appeal is scheduled for oral argument in October 2010.

c.      On November 12, 2009, Lawson filed a request to reexamine all of the claims of the '516 patent.  The Patent Office granted the request finding that the following prior art references created a substantial new question of patentability: the '989 patent, the '542 patent, J-CON Manual, Volume  1; A Practical Guide to SABRE Reservations and Ticketing; and P.O. Writer Guided Tour Version 10.0.  On July 8, 2010, the Patent Office issued a non-final office action rejecting all of the claims based on one or more of the foregoing prior art references.

d.      On July 10, 2009, Lawson filed a request to reexamine all of the claims of the '172 patent.  The Patent Office granted the request finding that the following prior art references created a substantial new question of patentability: the '989 patent, the '551 patent, J-CON Manual , Volume 1, A Practical Guide to SABRE Reservations and Ticketing, P.O. Writer Guided Tour Version 10.0, and Gateway 2000/MRO.  After granting the request for reexamination, the Patent Office issued a non-final office action rejecting these claims based on

26

this prior art and thereafter issued an action closing prosecution including rejection of these claims based on this prior art.

       e.    On June 25, 2010, Lawson filed a request to reexamine claims 1-25 of the '683 patent. The Patent Office granted this request on September 2, 2010, finding that the following prior art references created a substantial new question of patentability: the '989 patent; J-CON Manual, Volume 1, A Practical Guide to SABRE Reservations and Ticketing, P.O. Writer Guided Tour Version 10.0, and Gateway 2000/MRO.

8.    Lawson did not and is not willfully infringing the patents-in-suit.

9.    Lawson is entitled to its attorneys' fees and costs as this is an "exceptional case" pursuant to 35 U.S.C. § 285.

10.    *e*Plus has granted six licenses to third parties to practice the patents-in-suit.

11.    Some, if not all, of *e*Plus's licensees compete with Lawson.

12.    Some, if not all, of *e*Plus's licensees compete with *e*Plus.

13.    *e*Plus has never lost a sale to Lawson.

14.    Most if not all of Lawson's marketing efforts are directed to potential customers that *e*Plus has not solicited.

15.    *e*Plus's business is not harmed by Lawson's infringement (if any).

16.    *e*Plus knew about Lawson's allegedly infringing conduct but inexcusably failed to pursue its infringement claims in a timely and diligent manner from the time that it became aware of Lawson's allegedly infringing actions.

17.    *e*Plus waited at least five years to take any action to pursue its infringement claims against Lawson.

18.    *e*Plus did not seek a preliminary injunction against Lawson.

27

Case 3:09-cv-00620-REP Document 556-11 Filed 01/13/11 Page 29 of 36 PageID# 15175

19.     Lawson has been prejudiced by *e*Plus's inexcusable delay in filing suit.

20.     *e*Plus sought monetary damages but was precluded from obtaining such damages as a sanction for violating Fed. R. Civ. P. 37(c).

21.     *e*Plus will not be irreparably injured if a permanent injunction is not entered in this case.

22.     Any harm to *e*Plus that may have been caused by Lawson's actions can be cured by money damages.

23.     Lawson would be harmed by an injunction.

24.     The balance of harms favors denial of injunctive relief.

25.     *e*Plus has never specified to Lawson the actions of Lawson it seeks to enjoin.

26.     The public interest favors denial of an injunction.

## VII.  TRIABLE ISSUES

### A.     *e*Plus's Triable Issues

*e*Plus identifies the following triable issues:

#### 1.     For the Jury:

1.     Whether Lawson has been directly infringing claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by making, using, importing, selling and offering for sale systems or methods incorporating the use of systems or methods incorporating the patented inventions.

2.     Whether Lawson has been indirectly infringing claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by contributing to or inducing other third parties to use systems or methods incorporating the patented inventions.

3.      Whether Lawson's infringement has been willful, deliberate and with knowledge of *e*Plus's rights under the patents in suit.

4.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as being anticipated under Section 102 of the patent laws.

5.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent are invalid as obvious under Section 103 of the patent laws.

6.      Whether claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under Section 112, Para. One, because the patents do not contain a written description of the invention.

**2.      For the Court:**

7.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 21 and 29 of the '516 patent and claim 1 of the '172 patent are invalid under Section 112, Para. Two, because the claims are not definite.

8.      Whether claim 9 of the '516 patent is invalid under Section 101, because the claim is not directed to statutory subject matter.

9.      Whether *e*Plus is entitled to attorney's fees, as a result of this being an exceptional case pursuant to Section 285 of the patent laws, or as a result of Lawson's willful infringement.

10.      Whether *e*Plus is entitled to permanent injunctive relief.

11.      Whether *e*Plus is entitled to such other post-trial relief as the Court may deem just and proper upon a finding of infringement, including without limitation an accounting.

**B.      Lawson's Triable Issues**

Lawson identifies the following triable issues:

1.      **For the Jury:**

1.      Whether Lawson has been directly and literally infringing claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by making, using, selling and offering for sale the following:

   a. Lawson S3 Procurement (a package within the S3 SCM suite that includes Lawson Requisitions [RQ], Lawson Purchase Order [PO] and Lawson Inventory Control [IC] modules) ("S3 Procurement");

   b. Lawson S3 Procurement integrated with the Requisitions Self-Service application [SIP / SIPP] ("RSS");

   c. Lawson S3 Procurement, integrated with the RSS, and integrated with the Procurement Punchout [EPP / EPPH / EPRO] application ("Punchout");

   d. a Lawson system of any of the other three scenarios may also include the Lawson EDI [TCS / HBP] application ("S3 EDI") of the S3 SCM suite for further functionality within the scope of the claims.

2.      Whether Lawson has been indirectly infringing claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and 29 of the '516 patent and claim 1 of the '172 patent, and whether it continues to do so, by inducing other third parties to use the following software:

   a.  Lawson S3 Procurement;

   b. Lawson S3 Procurement integrated with RSS;

   c. Lawson S3 Procurement, integrated with RSS, and integrated with Punchout; and

LIBA/2109329.5

d. a Lawson system of any of the other three scenarios may also include the

Lawson S3 EDI.

3.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and

29 of the '516 patent and claim 1 of the '172 patent are invalid as being anticipated under

Section 102 of the patent laws.

4.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and

29 of the '516 patent and claim 1 of the '172 patent are invalid as obvious under Section 103 of

the patent laws.

5.      Whether claims 1, 2, 6, 9 and 29 of the '516 patent are invalid under Section 112,

Para. One, because the patents do not contain a written description of the invention.

**2.      For the Court:**

6.      Whether claims 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, and 29 of the

'516 patent are invalid under Section 101, because the claims are not directed to statutory subject

matter.

7.      Whether claims 3, 26, 28 and 29 of the '683 patent, claims 1, 2, 6, 9, 21, 22 and

29 of the '516 patent and claim 1 of the '172 patent are invalid under Section 112, Para. Two,

because the claims are not definite.

8.      If Lawson infringes a valid claim, whether the case is exceptional based on

Lawson's infringement being willful, deliberate and with knowledge of *e*Plus's rights under the

patents in suit.

9.      If Lawson infringes a valid claim, whether *e*Plus is entitled to attorney's fees, as a

result of this being an exceptional case pursuant to Section 285 of the patent laws.

10.     If Lawson does not infringe and/or the claims are invalid, whether Lawson is entitled to attorney's fees as a result of this being an exceptional case pursuant to 285 of the patent laws.

11.     If Lawson infringes a valid claim, whether *e*Plus is entitled to injunctive relief.

LIBA/2109329.5

Respectfully submitted,

September 23, 2010

_____ /s/ _____
Henry I. Willett, III (VSB #44655)
Craig T. Merritt (VSB #20281)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements  (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus Inc.

_____ /s/ _____
Dabney J. Carr, IV (VSB #28679)
Robert A. Angle (VSB #37691)
Megan C. Rahman (VSB #42678)

33

dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Attorneys for Defendant, Lawson Software, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2010, I will electronically file the foregoing:

## FINAL PRETRIAL ORDER

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Joshua P. Graham, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
lawsonservice@merchantgould.com

### *Counsel for Defendant Lawson Software, Inc.*

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

### *Counsel for Defendant Lawson Software, Inc.*

_____ /s/ _____
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com