

LEXSEE 383 F.3D 1337

**KNORR-BREMSE SYSTEME FUER NUTZFAHRZEUGE GMBH, Plaintiff-Cross Appellant, v. DANA CORPORATION, Defendant-Appellant, and HALDEX BRAKE PRODUCTS CORPORATION, and HALDEX BRAKE PRODUCTS AB, Defendants-Appellants.**

01-1357, -1376, 02-1221, -1256

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*383 F.3d 1337*; *2004 U.S. App. LEXIS 19185*; *72 U.S.P.Q.2D (BNA) 1560*; *65 Fed. R. Evid. Serv. (Callaghan) 365*

**September 13, 2004, Decided**

**SUBSEQUENT HISTORY:** On remand at, Costs and fees proceeding at, Motion denied by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 372 F. Supp. 2d 833, 2005 U.S. Dist. LEXIS 11256 (E.D. Va., June 6, 2005)*

**PRIOR HISTORY:**   [**1] Appealed from: United States District Court for the Eastern District of Virginia. Judge T. S. Ellis, III.
*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 344 F.3d 1336, 2003 U.S. App. LEXIS 19817 (Fed. Cir., 2003)*

**DISPOSITION:**    Vacated and remanded, cross appeal affirmed.

**COUNSEL:** Jeffrey D. Sanok, Crowell & Moring L.L.P., of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were Michael I. Coe, Herbert I. Cantor and Karen Canaan. Of counsel were John C. Lenahan, Edward R. Murray and Clifton Elgarten.

Ellen A. Efros, Rader, Fishman & Grauer, PLLC, of Washington, DC, for defendant-appellant Dana Corporation, joined in the brief of Haldex Brake Products AB, et al.

Stanley H. Lieberstein, St. Onge Steward Johnston & Reens, LLC, of Stamford, Connecticut, argued for defendants-appellants Haldex Brake Products AB and Haldex Brake Products Corporation; and defendant-appellant Dana Corporation. With him on the brief for Haldex were Wesley W. Whitmyer, Jr. and Richard J. Basile. Of counsel were James P. Jeffry, Michael G. Gabriel, and David W. Aldrich.

Ralph P. Albrecht, Venable LLP, of Washington, DC, for amicus curiae Bar Association of the District of Columbia-Patent, Trademark & Copyright Section. With him on the brief was Lynn E. Eccleston, The Eccleston Law Firm, of Washington, DC.

Norman L. Balmer, Washington [**2] & Lee University School of Law, of Lexington, Virginia, for amicus curiae Lexington Patent Policy Group.

Nicholas M. Cannella, Fitzpatrick, Cella, Harper & Scinto, of New York, New York, for amicus curiae New York Intellectual Property Law Association. With him on the brief was F. Christopher Mizzo. Of counsel on the brief was Melvin C. Garner, Darby & Darby P.C., of New York, New York.

Donald S. Chisum, Morrison & Foerster LLP, of Palo Alto, California, for amici curiae BEA Systems, Inc. and Novell, Inc. With him on the brief was Emily A. Evans. Of counsel were Michael A. Jacobs and Alison M. Tucher, of San Francisco, California.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, for amicus curiae American Intellectual Property Law

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

Association. With him on the brief was Jeffrey I.D. Lewis, Patterson, Belknap, Webb & Tyler, LLP, of New York, New York. Also on the brief was David G. Conlin, Edwards & Angell, LLP, of Boston, Massachusetts.

George E. Hutchinson, Executive Director, Federal Circuit Bar Association, of Washington, DC, for amicus curiae Federal Circuit Bar Association. With him on the brief was Robert L. Baechtold, [**3] Fitzpatrick, Cella, Harper & Scinto, of New York, New York.

Jerold A. Jacover, Brinks Hofer Gilson & Lione, of Chicago, Illinois, for amicus curiae The City of Chicago. With him on the brief were Roy E. Hofer, Thomas J. Filarski, Meredith Martin Addy and Janet A. Pioli.

Kelly L. Morron, Chadbourne & Parke LLP, of New York, New York, for amicus curiae The Association of the Bar of the City of New York. With him on the brief was Peter A. Sullivan, Hughes Hubbard & Reed LLP, of New York, New York.

Steven L. Friedman, Dilworth Paxson LLP, of Philadelphia, Pennsylvania, for amicus curiae Securities Industry Association.

Ronald E. Myrick, Chair, Amicus Brief Committee, Intellectual Property Owners Association, of Washington, DC, for amicus curiae Intellectual Property Owners Association. With him on the brief were Paul H. Berghoff and Joshua R. Rich, McDonnell Boehnen Hulbert & Berghoff, of Chicago, Illinois. Of counsel was Herbert C. Wamsley, Intellectual Property Owners Association, of Washington, DC.

Frank E. Scherkenbach, Fish & Richardson P.C., of Boston, Massachusetts, for amicus curiae Microsoft Corporation. With him on the brief were John A. Dragseth, of [**4] Minneapolis, Minnesota; and Jennifer K. Bush, of San Diego, California.

Steven C. Sereboff, SoCal IP Law Group, of Westlake Village, California, for amicus curiae Conejo Valley Bar Association. With him on the brief was Karol M. Pessin.

Edward R. Reines, Weil, Gotshal & Manges LLP, of Redwood Shores, California, for amici curiae United States Council for International Business, et al. With him on the brief were Matthew D. Powers and Steven C. Carlson.

Elizabeth H. Rader, Center for Internet & Society, Stanford Law School, of Stanford, California, for amicus curiae Public Patent Foundation. With her on the brief was Daniel B. Ravicher, Executive Director, Public Patent Foundation, of New York, New York.

Philip T. Petti, Fitch, Even, Tabin & Flannery, of Chicago, Illinois, for amicus curiae The Association of Patent Law Firms. With him on the brief was G. Paul Edgell.

Mitchell G. Stockwell, Kilpatrick Stockton LLP, of Atlanta, Georgia, for amicus curiae Association of Corporate Counsel. With him on the brief was Cynthia B. Rothschild, of Winston-Salem, North Carolina.

Joshua D. Sarnoff, Glushko-Samuelson Intellectual Property Law Clinic, Washington College [**5] of Law, American University, of Washington, DC, for amicus curiae Public Knowledge.

Brian P. Barrett, Eli Lilly and Company, of Indianapolis, Indiana, for amicus curiae Biotechnology Industry Organization. With him on the brief was Thomas S. Borecki, Baxter Healthcare Corporation, of Deerfield, Illinois.

Joel W. Nomkin, Brown & Bain, P.A., of Phoenix, Arizona, for amicus curiae Semiconductor Industry Association.

William A. Rakoczy, Lord, Bissell & Brook LLP, of Chicago, Illinois, for amicus curiae Generic Pharmaceutical Association. With him on the brief was Hugh S. Balsam.

L.J. Chris Martiniak, Heller Ehrman White & McAuliffe LLP, of San Francisco, California, for amici curiae Computer Associates International, Inc., et al.

Dennis W. Archer, President, American Bar Association, of Chicago, Illinois, for amicus curiae American Bar Association. With him on the brief were Richard P. Beem and Joseph N Welch II.

L. Gene Spears, Baker Botts, L.L.P., of Houston, Texas, for amicus curiae Houston Intellectual Property Law Association.

John E. Peterson, Paul, Hastings, Janofsky & Walker, LLP, of San Diego, California, for amicus curiae San Diego Intellectual [**6] Property Law Association. With him on the brief were Douglas E. Olson and Howard N. Wisnia.

**JUDGES:** Before MAYER, Chief Judge, NEWMAN, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST,

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 3 of 11 PageID# 15232

Page 3
383 F.3d 1337, \*; 2004 U.S. App. LEXIS 19185, \*\*;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

Circuit Judges. * Opinion for the court filed by Circuit Judge NEWMAN. Concurring in part and dissenting in part opinion filed by Circuit Judge DYK.

> \*   MICHEL, Circuit Judge, took no part in the consideration or decision of this case.

**OPINION BY:** NEWMAN

**OPINION**

[*1340] NEWMAN, *Circuit Judge*.

Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH is the owner of *United States Patent No. 5,927,445* (the *'445 patent*) entitled "Disk Brake For Vehicles Having Insertable Actuator," is sued on July 27, 1999. At trial to the United States District Court for the Eastern District of Virginia, the appellants Dana Corporation, Haldex Brake Products Corporation, and Haldex Brake Products AB were found liable for infringement and willful infringement. [1] No damages were awarded, for there were no sales of the infringing brakes. Based on the finding of willful infringement the court awarded partial attorney fees under *35 U.S.C. § 285*.

> 1   *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 133 F. Supp. 2d 833 (E.D. Va. 2001)* (partial summary judgment) ("*Knorr-Bremse I*"); *133 F. Supp. 2d 843 (E.D. Va. 2001)* (findings of fact and conclusions of law) ("*Knorr-Bremse II*"); *2001 U.S. Dist. LEXIS 25438, Civ. A. No. 00-803-A (E.D. Va. Mar. 7, 2001)* (final judgment); No. 00-803-A (E.D. Va. Apr. 9, 2001) (amended final judgment) ("*Knorr-Bremse III*").

[\*\*7] The appellants seek reversal of the finding of willful infringement, arguing that an adverse inference should not have been drawn from the withholding by Haldex of an opinion of counsel concerning the patent issues, and from the failure of Dana to obtain its own opinion of counsel. Applying [*1341] our precedent, the district court inferred that the opinion of counsel withheld by Haldex was unfavorable to the defendants. After argument of the appeal we took this case en banc in order to reconsider our precedent with respect to these aspects. The parties were asked to submit additional briefing on four questions, and amicus curiae briefs were invited. [2] *Knorr-Bremse, 344 F.3d 1336 (Fed. Cir. 2003)* (En banc Order).

> 2   Amicus curiae briefs were filed by the American Bar Association; American Intellectual Property Law Association; Association of the Bar of the City of New York; Association of Corporate Counsel; Association of Patent Law Firms; Bar Association of the District of Columbia; BEA Systems, Inc. and Novell, Inc.; Biotechnology Industry Organization; The City of Chicago; Computer Associates International, Inc. et al.; Conejo Valley Bar Association; Federal Circuit Bar Association; Generic Pharmaceutical Association; Houston Intellectual Property Law Association; Intellectual Property Owners Association; Lexington Patent Policy Group; Microsoft Corporation; New York Intellectual Property Law Association; Public Knowledge; Public Patent Foundation; San Diego Intellectual Property Law Association; Securities Industry Association; Semiconductor Industry Association; and the United States Council for International Business, Center for Advanced Study & Research on Intellectual Property et al.

[\*\*8] We now hold that no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel. Precedent to the contrary is overruled. We therefore vacate the judgment of willful infringement and remand for re-determination, on consideration of the totality of the circumstances but without the evidentiary contribution or presumptive weight of an adverse inference that any opinion of counsel was or would have been unfavorable.

BACKGROUND

Knorr-Bremse, a German corporation, manufactures air disk brakes for use in heavy commercial vehicles, primarily Class 6-8 trucks known as eighteen wheelers, semis, or tractor-trailers. Knorr-Bremse states that air disk brake technology is superior to the previously dominant technology of hydraulically or pneumatically actuated drum brakes, and that air disk brakes have widely supplanted drum brakes for trucks in the European market.

Dana, an American corporation, and the Swedish company Haldex Brake Products AB and its United States affiliate, agreed to collaborate to sell in the United States an air disk brake manufactured by Haldex in Sweden. [\*\*9] The appellants imported into the United States about 100 units of a Haldex brake designated the Mark II model. Between 1997 and 1999 the Mark II brake was installed in approximately eighteen trucks of Dana and various potential customers. The trucks were used in transport, and brake performance records were required to be kept and provided to Dana. Dana and Haldex advertised these brakes at trade shows and in industry media in the United States.

Knorr-Bremse in December 1998 orally notified Dana of patent disputes with Haldex in Europe involving the Mark II brake, and told the appellants that patent

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 4 of 11 PageID# 15233

Page 4

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

applications were pending in the United States. On August 31, 1999 Knorr-Bremse notified Dana in writing of infringement litigation against Haldex in Europe, and that Knorr-Bremse's United States *'445 patent* had issued on July 27, 1999. Knorr-Bremse filed this infringement suit on May 15, 2000. In September 2000 Haldex presented to the district court a modified brake design designated the Mark III, and moved for a summary declaration of non-infringement by the Mark [*1342] III brake. Knorr-Bremse in turn moved for summary judgment of literal infringement by the Mark II brake, and infringement [**10] by the Mark III either literally or under the doctrine of equivalents. After a hearing in November 2000 the district court granted Knorr-Bremse's motion for summary judgment of literal infringement by the Mark II brake, and set for trial the issues with respect to the Mark III. Before and after the judgment of infringement by the Mark II, Dana and others continued to operate trucks in the United States containing the Mark II brake. Following a bench trial in January 2001, the district court found literal infringement by the Mark III brake.

On the issue of willful infringement, Haldex told the court that it had consulted European and United States counsel concerning Knorr-Bremse's patents, but declined to produce any legal opinion or to disclose the advice received, asserting the attorney-client privilege. Dana stated that it did not itself consult counsel, but relied on Haldex. Applying Federal Circuit precedent, the district court found: "It is reasonable to conclude that such opinions were unfavorable." The court discussed the evidence for and against willful infringement and concluded that "the totality of the circumstances compels the conclusion that defendants' use of the Mark [**11] II air disk brake, and indeed Dana's continued use of the Mark II air disk brake on various of its vehicles [after the judgment of infringement] amounts to willful infringement of the *'445 patent*." *Knorr-Bremse II, 133 F. Supp. 2d at 863*. Based on the finding of willful infringement the court found that the case was "exceptional" under *35 U.S.C. § 285*, and awarded Knorr-Bremse its attorney fees for the portion of the litigation that related to the Mark II brake, but not the Mark III.

The appellants appeal only the issue of willfulness of the infringement and the ensuing award of attorney fees. Knorr-Bremse cross-appeals, seeking to enjoin the appellants from retaining and using the brake performance records and test data obtained through use of the Mark II brake.

I

WILLFUL INFRINGEMENT

In discussing "willful" behavior and its consequences, the Supreme Court has observed that "the word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent," *McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 100 L. Ed. 2d 115, 108 S. Ct. 1677 (1988),* [**12] the Court citing conventional definitions such as "voluntary," "deliberate," and "intentional." *Id.* The concept of "willful infringement" is not simply a conduit for enhancement of damages; it is a statement that patent infringement, like other civil wrongs, is disfavored, and intentional disregard of legal rights warrants deterrence. Remedy for willful infringement is founded on *35 U.S.C. § 284* ("the court may increase the damages up to three times the amount found or assessed") and *35 U.S.C. § 285* ("the court in exceptional cases may award reasonable attorney fees to the prevailing party"). *See generally Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508, 12 L. Ed. 2d 457, 84 S. Ct. 1526, 1964 Dec. Comm'r Pat. 760 (1964)* (the patentee "could in a case of willful or bad-faith infringement recover punitive or 'increased' damages under the statute's trebling provision").

Determination of willfulness is made on consideration of the totality of the circumstances, *see Gustafson, Inc. v. Intersystems* [*1343] *Indus. Prods., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990)*, and may include contributions of several factors, as compiled, *e.g.*, in [**13] *Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1110 (Fed. Cir. 1986)* and *Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992)*. These contributions are evaluated and weighed by the trier of fact, for, as this court remarked in *Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1125-26 (Fed. Cir. 1987)*, "'willfulness' in infringement, as in life, is not an all-or-nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights."

Fundamental to determination of willful infringement is the duty to act in accordance with law. Reinforcement of this duty was a foundation of the formation of the Federal Circuit court, at a time when widespread disregard of patent rights was undermining the national innovation incentive. *See Advisory Committee On Industrial Innovation Final Report*, Dep't of Commerce (Sep. 1979). Thus in *Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir. 1983)* the court stressed the legal obligation to respect valid patent rights. The court's opinion quoted [**14] the infringer's attorney who, without obtaining review by patent counsel of the patents at issue, advised the client

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 5 of 11 PageID# 15234

Page 5

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

to "continue to refuse to even discuss the payment of a royalty." *Id. at 1385*. The attorney advised that "courts, in recent years, have -- in patent infringement cases -- found the patents claimed to be infringed upon invalid in approximately 80% of the cases," and that for this reason the patentee would probably not risk filing suit. *Id.* On this record of flagrant disregard of presumptively valid patents without analysis, the Federal Circuit ruled that "where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing," including "the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity." *Id. at 1389-90*.

*Underwater Devices* did not raise any issue of attorney-client privilege, while applying precedent that a finding of willfulness requires the factfinder to find by clear and convincing evidence "that the infringer acted in disregard of the patent," citing [**15] *Stickle v. Heublein, Inc., 716 F.2d 1550, 1565 (Fed. Cir. 1983)*. The aspect of privilege arose in *Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565 (Fed. Cir. 1986)*, where the Federal Circuit observed that the infringer "has not even asserted that it sought advice of counsel when notified of the allowed claims and [the patentee's] warning, or at any time before it began this litigation," and held that the infringer's "silence on the subject, in alleged reliance on the attorney-client privilege, would warrant the conclusion that it either obtained no advice of counsel or did so and was advised that its importation and sale of the accused products would be an infringement of valid U.S. patents." *Id. at 1580*. Thus arose the adverse inference, reinforced in *Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568 (Fed. Cir. 1988)*, and establishing the general rule that "a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention." *Id. at 1572-73*. Throughout [**16] this evolution the focus was not on attorney-client relationships, but on disrespect for law. However, implementation of this precedent has resulted in inappropriate burdens on the attorney-client relationship.

We took this case en banc to review this precedent. While judicial departure from [*1344] stare decisis always requires "special justification," *Arizona v. Rumsey, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 104 S. Ct. 2305 (1984)*, the "conceptual underpinnings" of this precedent, *see id.*, have significantly diminished in force. The adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel, is no longer warranted. Precedent authorizing such inference is overruled.

We answer the four questions presented for en banc review, as follows:

QUESTION 1

When the attorney-client privilege and/or work-product privilege is invoked by a defendant in an infringement suit, is it appropriate for the trier of fact to draw an adverse inference with respect to willful infringement?

The answer is "no." Although the duty to respect the law is undiminished, no adverse inference shall arise [**17] from invocation of the attorney-client and/or work product privilege.

The Supreme Court describes the attorney-client privilege as "the oldest of the privileges for confidential communications known to common law," and has stressed the public purpose

> to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*. Professor Wigmore has elaborated:

> The lawyer must have the whole of his client's case, or he cannot pretend to give any useful advice. . . . That the whole will not be told to counsel unless the privilege is confidential, is perfectly clear. A man who seeks advice, seeks it because he believes that he may do so safely; he will rarely make disclosure which may be used against him; rather than create an adverse witness in his lawyer, he will refuse all private arbitration, and [**18] take the chance of a trial.

8 J. Wigmore, *Evidence in Trials at Common Law* § 2291 at 548 (McNaughton rev. 1961). *See Hunt v. Blackburn, 128 U.S. 464, 470, 32 L. Ed. 488, 9 S. Ct. 125*

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 6 of 11 PageID# 15235

Page 6

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

*(1888)* (the attorney-client privilege is designed to encourage candid exchange of information).

Although this court has never suggested that opinions of counsel concerning patents are not privileged, the inference that withheld opinions are adverse to the client's actions can distort the attorney-client relationship, in derogation of the foundations of that relationship. We conclude that a special rule affecting attorney-client relationships in patent cases is not warranted. *See Swidler & Berlin v. United States, 524 U.S. 399, 410, 141 L. Ed. 2d 379, 118 S. Ct. 2081 (1998)* (ad hoc exceptions to privilege may cause "general erosion"). There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney. As Professor McCormick has explained, the attorney-client privilege protects "interests and relationships which [**19] . . . are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice." 1 *McCormick on Evidence* § 72, 299 (5th ed. 1999).

[*1345] There is precedent for the drawing of adverse inferences in circumstances other than those involving attorney-client relationships; for example when a party's refusal to testify or produce evidence in civil suits creates a presumption of an intent to withhold damaging information that is material to the litigation.³ However, the courts have declined to impose adverse inferences on invocation of the attorney-client privilege. *See*, *e.g.*, *Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 225-26 (2nd Cir. 1999)* (no adverse inference from the defendant's refusal to produce an opinion letter of counsel in a trademark dilution case), *overruled on other grounds sub nom. Moseley v. Secret Catalogue, 537 U.S. 418, 155 L. Ed. 2d 1, 123 S. Ct. 1115 (2003)*; *Parker v. Prudential Ins. Co., 900 F.2d 772, 775 (4th Cir. 1990)* (no negative inference from assertion of attorney-client privilege). We now hold that this rule applies to the same extent in [**20] patent cases as in other areas of law. A defendant may of course choose to waive the privilege and produce the advice of counsel. However, the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice.

---

3   For example, in *Baxter v. Palmigiano, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976)* the Court confirmed that in civil proceedings fact finders may draw adverse inferences against a party who refuses to testify. *See also*, *e.g.*, *Int'l Chem. Workers Union, Local 683c v. Columbian Chems. Co., 331 F.3d 491, 497 (5th Cir. 2003)* ("when a subpoena is ignored, a party can draw an adverse inference"); *Penalty Kick Management, Ltd. v. Coca Cola Co., 318 F.3d 1284, 1294 (11th Cir. 2003)* (adverse inference drawn from a party's failure to preserve evidence when predicated on bad faith); *MacNaughton v. United States, 888 F.2d 418, 423 (6th Cir. 1989)* (permitting adverse inference from failure to call witnesses peculiarly within the party's power to produce).

[**21]

### QUESTION 2

When the defendant had not obtained legal advice, is it appropriate to draw an adverse inference with respect to willful infringement?

The answer, again, is "no." The issue here is not of privilege, but whether there is a legal duty upon a potential infringer to consult with counsel, such that failure to do so will provide an inference or evidentiary presumption that such opinion would have been negative.

Dana Corporation did not seek independent legal advice, upon notice by Knorr-Bremse of the pendency of the '445 application in the United States and of the issuance of the *'445 patent*, followed by the charge of infringement. In tandem with our holding that it is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable, we also hold that it is inappropriate to draw a similar adverse inference from failure to consult counsel. The amici curiae describe the burdens and costs of the requirement, as pressed in litigation, for early and full study by counsel of every potentially adverse patent of which the defendant had knowledge, citing cases such as *Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998)*, [**22] wherein the court held that to avoid liability for willful infringement in that case, an exculpatory opinion of counsel must fully address all potential infringement and validity issues. Although other cases have imposed less rigorous criteria, the issue has occasioned extensive satellite litigation, distorting the "conceptual underpinnings" of *Underwater Devices* and *Kloster Speedsteel*. Although there continues to be "an affirmative duty of due care to avoid infringement of the known patent rights of others," *L.A. Gear* [*1346] *Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1127 (Fed. Cir. 1993)*, the failure to obtain an exculpatory opinion of

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 7 of 11 PageID# 15236

Page 7

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable.

### QUESTION 3

If the court concludes that the law should be changed, and the adverse inference withdrawn as applied to this case, what are the consequences for this case?

#### A

The district court based its willfulness determination on several factors in addition to the adverse inference arising from the assertion of attorney-client privilege by Haldex and the failure of Dana to obtain legal advice. [**23] This court has explained that "there are no hard and fast per se rules" with respect to willfulness of infringement. *Rolls-Royce, 800 F.2d at 1110*. Precedent illustrates various factors, some weighing on the side of culpability and some that are mitigating or ameliorating. *See Read v. Portec*, *supra*.

The district court found, on the evidence presented, that literal infringement by the Mark II brake was reasonably clear and did not present close legal or factual questions. As for the validity of the *'445 patent*, the court found that "given the quantity and quality of the evidence presented by defendants at trial on the issues of obviousness and indefiniteness, it cannot fairly be said that defendants, throughout the litigation, had a good faith belief that the *'445 patent* would ultimately be found invalid on these grounds." *Knorr-Bremse II, 133 F. Supp. 2d at 863*. The court also found that the appellants failed to take prompt remedial action to terminate infringement after the judgment of literal infringement by the Mark II, stating that "Dana deliberately yielded to market pressures in deciding to continue using the infringing [**24] Mark II air disk brakes on test vehicles pending future receipt of replacement Mark III air disk brakes." *Id.* The court also found that "although Haldex indeed developed the Mark III air disk brake in a good faith effort to design around the *'445 patent*, Haldex nonetheless continued to use the Mark II air disk brake throughout the redesign effort, including displaying Mark II air disk brakes at various automotive conferences in the United States and distributing Mark II promotional literature to potential customers at these conferences," *id.*; the court also noted that infringement was not then enjoined. *Knorr-Bremse III*, at 2.

The district court also considered Haldex's invocation of the attorney-client privilege in order to withhold its opinions of counsel, and Dana's failure to obtain an independent legal opinion despite the warning and notice of infringement. The appellants argue that but for the adverse inference of unfavorable opinions drawn from these actions, the finding of willfulness of infringement is not supported. Knorr-Bremse responds that willful infringement is well supported by the remaining findings. Because elimination of the adverse inference as drawn [**25] by the district court is a material change in the totality of the circumstances, a fresh weighing of the evidence is required to determine whether the defendants committed willful infringement. This determination is the primary responsibility and authority of the district court. We therefore vacate the finding of willful infringement and remand for redetermination of the issue.

Several amici curiae raised the question of whether the trier of fact, particularly a jury, can or should be told whether or not counsel was consulted (albeit without any [*1347] inference as to the nature of the advice received) as part of the totality of the circumstances relevant to the question of willful infringement. The amici pointed to various hypothetical circumstances in which such information could be relevant, even when there was no issue of attorney-client privilege. That aspect is not raised by this case, was not before the district court, and has not been briefed on this appeal. Today we resolve only the question of whether adverse inferences of unfavorable opinions can be drawn, and hold that they can not.

#### B

The appellants also argue that the award of attorney fees is a matter of punitive damages, [**26] and is therefore improper. Precedent and statute do not support this position. *35 U.S.C. § 285* provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party"; and the court has confirmed that a finding of willful infringement may qualify a case as exceptional under *§ 285*. *See, e.g.*, *Modine Mfg. Co. v. The Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990)*. That there were not actual damages does not render the award of attorney fees punitive. Attorney fees are compensatory, and may provide a fair remedy in appropriate cases. Upon a finding of willful infringement, the award of attorney fees is within the district court's sound discretion.

In view of our vacatur of the finding of willful infringement, the award of attorney fees is also vacated. On remand the award may be reconsidered, should the judgment of willful infringement be restored.

### QUESTION 4

Case 3:09-cv-00620-REP Document 558-2 Filed 01/13/11 Page 8 of 11 PageID# 15237

Page 8

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

Should the existence of a substantial defense to infringement be sufficient to defeat liability for willful infringement even if no legal advice has been secured?

The answer is "no." Precedent includes this factor with others to [**27] be considered among the totality of circumstances, stressing the "theme of whether a prudent person would have sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated," *SRI Int'l v. Advanced Tech. Lab., 127 F.3d 1462, 1465 (Fed. Cir. 1997)*. However, precedent also authorizes the trier of fact to accord each factor the weight warranted by its strength in the particular case. We deem this approach preferable to abstracting any factor for per se treatment, for this greater flexibility enables the trier of fact to fit the decision to all of the circumstances. We thus decline to adopt a per se rule.

II

THE CROSS APPEAL

The district court rejected Knorr-Bremse's request for destruction of the technical data that were obtained by the appellants for the Haldex air disk brakes. The court found that much of the data were obtained before issuance of the patent, and that some of the data relate to non-infringing aspects including design-around efforts and safety studies. *Knorr-Bremse III*, at 2. We do not discern reversible error in the court's decision of this issue. That decision is affirmed.

[**28] SUMMARY

An adverse inference that a legal opinion was or would have been unfavorable shall not be drawn from invocation of the attorney-client and/or work product privileges or from failure to consult with counsel. Contrary holdings and suggestions of precedent are overruled.

[*1348] This case is remanded for redetermination of the issue of willful infringement and any remedy therefor.

Costs

Each party shall bear its costs.

*VACATED AND REMANDED; CROSS-APPEAL AFFIRMED*

**CONCUR BY:** DYK, Circuit Judge (In Part)

**DISSENT BY:** DYK, Circuit Judge (In Part)

**DISSENT**

DYK, *Circuit Judge*, concurring-in-part and dissenting-in-part.

I join the majority opinion insofar as it eliminates an adverse inference (that an opinion of counsel would be unfavorable) from the infringer's failure to disclose or obtain an opinion of counsel. I do not join the majority opinion to the extent that it may be read as reaffirming that "where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing." Maj. Op., *ante*, at 7 (quoting *Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389 (Fed. Cir. 1983))*. [**29]

There is a substantial question as to whether the due care requirement is consistent with the Supreme Court cases holding that punitive damages can only be awarded in situations where the conduct is reprehensible. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003)*; *BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996)* ("*Gore*"). While the majority properly refrains from addressing this constitutional issue, as it has not been briefed or argued by the parties or *amici* in this case, I write separately to note my view that enhancing damages for failure to comply with the due care requirement cannot be squared with those recent Supreme Court cases.

I

We have often recognized that enhanced damages awarded pursuant to *35 U.S.C. § 284* are a form of punitive damages. *See, e.g.*, *Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996)* ("Enhanced damages are punitive, not compensatory."). [4] Punitive damages are awarded to punish reprehensible behavior, referred to in this context as willful infringement. "Enhancement . . . depends [**30] on a showing of willful infringement or other indicium of bad faith warranting punitive damages." *Id.*; *see also Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1192 (Fed. Cir. 1996)* ("Liability for willfulness of infringement turns on considerations of intent, state of mind, and culpability."); *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991)* ("Under our cases, enhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith.").

4   This case, of course, does not involve an award of enhanced damages, but rather an award of attorney fees based on a willfulness finding. The majority correctly rejects the contention that an award of attorney fees pursuant to *35 U.S.C. §*

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 9 of 11 PageID# 15238

Page 9

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

*285* is a form of punitive damages. *See* Maj. Op., *ante*, at 13-14. While attorney fees are not punitive damages, our case law makes clear that, where attorney fees are awarded based on a willfulness finding, the same standard for willfulness applies to both enhancement and attorney fees. *See, e.g.*, *Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1340 (Fed. Cir. 2004)*. Thus, while it might not be unconstitutional to award attorney fees on a due care theory, if we were to restrict the award of enhanced damages, an award of attorney fees on a willfulness theory would also be restricted because the same standard applies to both.

[**31] There are many circumstances that may create an appropriate predicate for a finding of willful infringement, and hence punitive damages, including deliberate [*1349] copying, concealing infringing activity, infringement where the infringer knows that it is infringing or where it knows it has only frivolous defenses, infringement designed to injure a competitor, etc. We have appropriately held that such activity is reprehensible and that enhanced damages may be awarded in such circumstances. *See, e.g.*, *Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1583 (Fed. Cir. 1996)* ("Willful infringement is . . . a measure of reasonable commercial behavior in the context of the tort of patent infringement. The extent to which the infringer disregarded the property rights of the patentee, the deliberateness of the tortious acts, or other manifestations of unethical or injurious commercial conduct, may provide grounds for a finding of willful infringement and the enhancement of damages."); *L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1127 (Fed. Cir. 1993)* (reversing the district court's ruling that infringement was not willful because the infringer's [**32] "deliberate copying was strong evidence of willful infringement, without any exculpatory evidence to balance the weight"); *Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed. Cir. 1992)* (including "whether defendant attempted to conceal its misconduct" as a factor to be considered in enhancing damages); *Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 978-79 (Fed. Cir. 1986)* (affirming the district court's finding of willfulness based on the district court's findings that the infringer "faithfully copied the claimed invention, took an untenable position regarding validity of the patent, and *presented a frivolous defense of noninfringement*" (emphasis added)).

But a potential infringer's mere failure to engage in due care is not itself reprehensible conduct. To hold that it is effectively shifts the burden of proof on the issue of willfulness from the patentee to the infringer, which must show that its infringement is not willful by showing that it exercised due care. While the duty of care is only one factor in the determination of enhanced damages, no one can seriously doubt that, both in the minds of the jurors (in determining willfulness) and in [**33] the decision of the district court (concerning enhancement), the duty of care is by far the preeminent factor in the vast majority of cases.

II

The duty of care requirement finds no support in the patent damages statute, the legislative history, or Supreme Court opinions. The enhancement statute merely provides that "the court may increase the damages up to three times the amount found [by the jury] or assessed [by the court]." *35 U.S.C. § 284 (2000)*. No other mention is made of enhancement, willful infringement, or a duty of care. The present statute, which was enacted in 1952, simply "consolidates the provisions relating to damages" from the previous version of the patent law. S. Rep. No. 82-1979, at 29 (1952); H.R. Rep. No. 82-1923, at 29 (1952). The previous version of the statute - in effect since 1836 - provided that courts can enhance damages "according to the circumstances of the case." [5] Our attention [*1350] has been directed to no meaningful legislative history for the current statute or the earlier statutes.

> 5  The Patent Act of 1870 provided:
>
>> Whenever in any [patent infringement] action a verdict shall be rendered for the plaintiff, the court may enter judgment thereon for any sum above the amount found by the verdict as the actual damages sustained, according to the circumstances of the case, not exceeding three times the amount of such verdict, together with the costs.
>
> Ch. 230, § 59, 16 Stat. 198, 207 (1870). The Patent Act of 1836 likewise provided:
>> It shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case, with costs . . . .

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

Ch. 357, § 14, 5 Stat. 117, 123 (1836).

[**34] Nor does any of the few Supreme Court cases interpreting *section 284* provide any basis for a duty of care. Indeed, they appear to limit enhanced damages to cases of "willful or bad-faith infringement," *Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508, 12 L. Ed. 2d 457, 84 S. Ct. 1526, 1964 Dec. Comm'r Pat. 760 (1964)* (stating that the patentee "could in a case of willful or bad-faith infringement recover punitive or 'increased' damages under the statute's trebling provision"), or "wanton or malicious" injury, *Seymour v. McCormick, 57 U.S. 480, 489, 14 L. Ed. 1024 (1853)* ("It is true, where the injury is wanton or malicious, a jury may inflict vindictive or exemplary damages, not to recompense the plaintiff, but to punish the defendant."). Furthermore, the entire provenance of the due care requirement is dictum in earlier regional circuit cases. *See Milgo Elec. Corp. v. United Bus. Communications, Inc., 623 F.2d 645, 666 (10th Cir.), cert. denied, 449 U.S. 1066, 66 L. Ed. 2d 610 (1980); Coleman Co. v. Holly Mfg. Co., 269 F.2d 660, 666 (9th Cir. 1959).*

III

Whatever justification there may have been for the due care approach [**35] in the past, that doctrine has been undermined by the decisions of the Supreme Court beginning in 1996, which have limited the award of punitive damages on due process grounds. *See, e.g.*, *State Farm, 538 U.S. at 416-18*; *Gore, 517 U.S. at 568*. The Supreme Court first held in *Gore* that an award of punitive damages can violate the *Due Process Clause*, [6] stating that "perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *517 U.S. at 575*. The Court stated:

> There is no evidence that BMW acted in bad faith when it sought to establish the appropriate line between presumptively minor damage and damage requiring disclosure to purchasers. . . . In this regard, it is also significant that there is no evidence that BMW persisted in a course of conduct after it had been adjudged unlawful on even one occasion, let alone repeated occasions.
>
> Finally, the record in this case discloses no deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive . . . .

*Id. at 579*. The Court [**36] further explained the importance of reprehensibility to an award of punitive damages in *State Farm*, making clear that reprehensibility is indispensable to a punitive damages award:

> Punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id. at 419*. Thus, even where the damages multiple is within accepted [*1351] bounds, the Court has required a finding of reprehensibility as a predicate to an award of punitive damages. Patent law is not an island separated from the main body of American jurisprudence. The same requirement of reprehensibility restricts an award of enhanced damages in patent cases as in other cases. When an infringer merely fails to exercise his supposed duty of care, there are "none of the circumstances ordinarily associated with egregiously improper conduct" that could be sufficiently reprehensible to warrant imposition of punitive damages, as in *Gore. 517 U.S. at 580*. [7]

---

6 The Court had previously held in *Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 113 L. Ed. 2d 1, 111 S. Ct. 1032 (1991)*, that punitive damage awards can violate the *Due Process Clause*, but the particular damage award in *Haslip* did not violate that clause. *Id. at 18-19.*

[**37]

7 The imposition of treble damages by a court based on a lack of due care by an infringer is unlike such an imposition for violations of the *Sherman Act* or for intentional use of a counterfeit mark in violation of the *Lanham Act*, where damages are automatically trebled pursuant to statute, based on a congressional judgment that the conduct is *per se* reprehensible. *See 15 U.S.C. § 15(a) (2000)*; *15 U.S.C. § 1117(b) (2000)*. Here, significantly and unlike in those situations, there is no judgment by Congress that infringement is *per se* reprehensible conduct requiring automatic trebling.

V

Finally, in my view, the imposition of the due care requirement has produced nothing of benefit to the patent system. In cases where the potential infringer has been guilty of deliberate copying, concealment of infringement, or other reprehensible conduct, enhanced

Case 3:09-cv-00620-REP   Document 558-2   Filed 01/13/11   Page 11 of 11 PageID# 15240

Page 11

383 F.3d 1337, *; 2004 U.S. App. LEXIS 19185, **;
72 U.S.P.Q.2D (BNA) 1560; 65 Fed. R. Evid. Serv. (Callaghan) 365

damages serve a useful purpose. But where such reprehensible conduct is absent, it is unnecessary to stretch the law of punitive damages to protect the patentee because the patentee can secure [**38] a preliminary injunction once he has learned of infringement. If the patentee is unable to secure a preliminary injunction because he cannot make a clear showing of likelihood of success on the merits (the accused infringer having a substantial defense, *see, e.g.*, *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004)*; *Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350-51 (Fed. Cir. 2001))*, there is no reason the patentee should be able to secure punitive damages based merely on a showing of lack of "due care" by the accused infringer during the pendency of the litigation.

Second, the due care requirement exists in the context of patent law that is complex, where ultimate outcomes are difficult to predict, and, as the majority holds, the existence of a substantial defense on the merits will not bar a finding of willfulness. *See* Maj. Op., *ante*, at 14. As the *amici* point out, the due care requirement has fostered a reluctance to review patents for fear that the mere knowledge of a patent will lead to a finding of lack of due care, *see, e.g.*, *Amici Curiae* Br. of U.S. Council for Int'l [**39] Bus. *et al.* at 9 n.4; a cottage industry of window-dressing legal opinions by third party counsel designed to protect the real decision-making process between litigating counsel and the company's executives, *see, e.g., id.* at 9; the imposition of substantial legal costs on companies seeking to introduce innovative products, *see, e.g., Amicus Curiae* Br. of Sec. Indus. Ass'n at 9-11; and an enhanced ability of holders of dubious patents to force competitors' products off of the market through the threat of enhanced damages, *see, e.g., id.* at 5-6. These concerns have led *amici*, [8] the Federal Trade Commission working group, [9] and a committee of the [*1352] National Academies, [10] to urge us to reconsider our willfulness jurisprudence.

    8   *See, e.g.*, Br. for *Amicus Curiae* Am. Intellectual Prop. Law Ass'n at 6-8; Br. for *Amicus Curiae* N.Y. Intellectual Prop. Law Ass'n at 9-11.

    9   *See, e.g.*, Federal Trade Comm'n, *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy*, ch. 5, at 31 (2003), available at http://www.ftc.gov/os/2003/10/innovationrpt.pdf ("The Commission recommends that legislation be enacted requiring either actual, written notice of infringement from the patentee or deliberate copying of the patentee's invention, knowing it to be patented, as a predicate for willful infringement."). *See generally id.* at 28-31.

[**40]

    10   *See, e.g.*, Comm. on Intellectual Prop. Rights in the Knowledge-Based Economy, The National Academies, *A Patent System for the 21st Century* 119 (Stephen A. Merrill et al. eds., 2004), available at http://www.nap.edu/html/patentsystem/ 0309089107.pdf ("Lacking evidence of its beneficial deterrent effect but with evidence of its perverse anti-disclosure consequences, the committee recommends elimination of the provision for enhanced damages based on a subjective finding of willful infringement."). *See generally id.* at 118-20.

The majority opinion here ameliorates these concerns to some very limited extent by eliminating the inference that an undisclosed or unobtained opinion of counsel was or would have been adverse. But the majority opinion does not address whether a potential infringer can satisfy the requirement of due care without securing and disclosing an opinion of counsel, or, if such an opinion is not absolutely required, whether an adverse inference can be drawn from the accused infringer's failure to obtain and disclose such an opinion. More fundamentally, the opinion [**41] does not address whether the due care requirement, whatever its parameters, is consistent with the Supreme Court's punitive damages jurisprudence.

I would recognize that the due care requirement is a relic of the past and eliminate it as a factor in the willfulness and enhancement analysis.