IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I.    INTRODUCTION**

Lawson Software, Inc. ("Lawson") respectfully moves this Court for judgment as a matter of pursuant to Rule 50 of the Federal Rules of Civil Procedure. ePlus, Inc. ("ePlus") has been fully heard on the issues of infringement and validity, and a reasonable jury does not have a legally sufficient evidentiary basis to find for ePlus on either of these issues.

**II.   INFRINGEMENT**

The patentee bears the burden of proving infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006). Literal infringement requires that each and every claim limitation be present in the accused device or method. *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). The absence of even a single claim limitation precludes a finding of literal infringement of the entire claim. *Id.* ("the failure to meet a single limitation is sufficient to negate infringement of the claim") (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)).

ePlus has been fully heard on the issue of infringement during this jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for ePlus. Thus, this Court should deny ePlus's motion for judgment as a matter of law and grant Lawson's judgment as a matter of law on the issue of infringement. In addition to the reasons that have already been discussed and will be discussed at the hearing on the judgment as a matter of law, Lawson moves for judgment as a matter of law on the issues discussed below.

> A. The jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of infringement of the accused Punchout product.

During trial, ePlus asserted that the accused Lawson system that included Punchout met the required claim limitations of all asserted claims. However, ePlus did not make a prima facie case of infringement for this accused device. There has been no showing that any one party performs every single one of the claimed steps of the method claims when using Punchout . Because there is no single direct infringer, there can be no indirect infringement, either. Similarly, there has been no showing that the Lawson system using Punchout includes all the elements of the asserted system claims. For this reason, the jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of infringement of the accused Punchout product and this Court should grant judgment as a matter of law that the Punchout system does not infringe any of the asserted claims.

> 1. There is no single entity that performs all of the claimed steps of the asserted method claims.

Claims 26, 28, and 29 of the '683 patent all are method claims. All of them include the step of "maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources." There is no dispute that the Punchout "external catalogs," as Dr. Weaver referred to them, are not maintained in the Lawson Item Master. Instead, as Dr. Weaver testified, a customer can "punch-out" to a vendor's external catalog. (Tr.

2

at 572:12-19.) Thus, the vendor maintains any catalogs.

Further, claims 26 and 29 require "determining whether a selected matching item is available in inventory," which Lawson also does not do. Dr. Weaver never asserted that Lawson directly performed this step, instead merely opining in a conclusory fashion that Punchout allows the step to happen. (*See* Tr. at 803:8-21 ("the Punchout module that lets us check inventory externally"); Tr. at 573:18-574:4 ("using the Punchout system, I can look into the external catalog of a vendor"); Tr. at 608:18-25 (Punchout "is a mechanism that makes that possible")); *see also* Tr. at 801:8-802:1; Tr. at 786:14-787:10; Tr. at 789:6-18.) Indeed, Dr. Weaver acknowledged that Lawson did not have any idea what was available in inventory of third party vendors:

> Q. Is it true that in your examples the Staples and the Dell, not Lawson, would have control over checking out the inventory?
> A. That's true, the information comes from the Punchout partner.
> Q. Lawson has no idea what Dell or Staples has in inventory, right?
> A. Probably not.

(Tr. at 879:17-24.) Again, it is the vendor—if anyone—that determines whether a selected matching item is available in inventory.

All of the method claims also require "searching for matching items," which Lawson does not do. Instead, a user searches on a vendor's website, using the vendor's search engine, as Dr. Weaver admitted:

> Q. If I understood you right, when a customer uses that Stapleslink.com Punchout, can they do a search for products at the Stapleslink.com website?
> A. Yes.
> Q. Whose responsible for putting together the computer stuff that you need to do a search at the Stapleslink.com website?
> A. The search on the stapleslink.com website uses the Staples search engine.

(Tr. at 878:7-15.) Thus, this step is performed, again, by the vendor, whose search engine is being used.

3

> 2. <u>The Lawson system does not contain all the elements of the asserted system claims when using Punchout.</u>

Claim 3 of the '683 patent and claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent are all system claims that require multiple catalogs. Dr. Weaver opined that these claims were infringed by the Punchout product because Punchout allows users to have access to external vendor catalogs. (Tr. at 662:18-24.) Again, though, these external vendor catalogs are not Lawson's— Dr. Weaver admitted that the user was "shopping within that [external vendor] catalog." (*Id.*) Claim 1 of the '172 patent is also a system claim, which requires "a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately." Dr. Weaver opined that this limitation was met by "the separate databases of the external Punchout sites." (Tr. at 922:3-4.) But there is no dispute that Lawson does not maintain the separate databases of the external Punchout sites—those external vendor catalogs are maintained by the vendor.

Lawson does not practice all of the claimed method steps with respect to the Punchout product and Lawson's system does not meet all of the required system limitations with respect to the Punchout product. Nor do Lawson's customers practice the steps or meet the system claims. ePlus has not accused the vendors of directly infringing the Punchout claims in this case. Thus, there is no single entity that practices all of the claimed method steps or has all of the required system elements.

> 3. <u>ePlus cannot rely on indirect infringement because there is no direct infringer.</u>

ePlus appears to assert, in the alternative, that if Lawson does not directly infringe the claims that it is nevertheless guilty as an indirect infringer. This argument fails. Liability for indirect infringement—either contributory infringement or induced infringement—requires proof of direct infringement first. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687

4

(Fed. Cir. 1986). The customer is not a direct infringer because, pursuant to ePlus's arguments, at a minimum the vendor maintains any catalogs and performs the searching steps. ePlus has not pointed to a single direct infringer, so there can be no indirect infringement.

> B.  The jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of direct infringement of the method claims.

Pursuant to 35 U.S.C. § 271(a), direct infringement requires a single party to perform every step of a claimed method. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379-80 (Fed. Cir. 2007); *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005); *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).

Claims 26, 28, and 29 of the '683 patent all are method claims. Lawson does not directly perform any of the steps in these method claims. At trial, ePlus did not even accuse Lawson of performing all of the steps of these claims. Indeed, when questioned by ePlus's counsel, Dr. Weaver never argued Lawson performed the steps and merely opined on what the customers might do. With respect to the method step of "maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources," which is included in each of the method claims, Dr. Weaver merely opined that the customers perform this step:

> Q. So do you have an opinion as to whether or not *customers* can perform the step of maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources?
> A. Yes, all of the systems do that.
> Q. Okay, all five?
> A. All five.

Likewise, respect to the method step of "selecting the product catalogs to search," Dr. Weaver opined that the customers are the ones who select the product catalogs to search:

> Q. Now, the same for claim 28, do you have an opinion as to whether or not *customers*, using all five of the systems as they are configured and defined, can select or -- can

5

>perform the steps of selecting product catalogs to search?
>A. Yes, they can.
>Q. Now, that would be the same for both claim 26 and 28?
>A. Yes, it's the same.

(Tr. at 799:12-23 (emphasis added).) And with respect to the step of "searching for matching items among the selected product catalogs," Dr. Weaver again opined that it was the customers who performed this step:

>Q. Does all five of the accused Lawson systems have the ability to, capability of building a requisition using data relating to selected matching items and their associated sources?
>A. Yes.
>Q. Can the *customers* perform that step with all five configurations that we've defined?
>A. Yes.

(Tr. at 800:14-21 (emphasis added).) There can be no argument that Lawson does not perform the steps of "selecting the product catalogs to search" or "searching for matching items among the selected product catalogs." If these steps are performed, it is by the customer.

Thus, the jury does not have a legally sufficient basis to find for ePlus on the issue of direct infringement of the method claims, and this Court should grant judgment as a matter of law that Lawson does not directly infringe any of the method claims.

>C. <u>The jury does not have a legally sufficient evidentiary basis to find for ePlus on the means-plus function limitations.</u>

Claim 3 of the '683 patent and claim 1 of the '172 patent are means-plus-function claims.

Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003). Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the

6

same way, with substantially the same result. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

To establish infringement of a means-plus-function claim, "it is insufficient for the patent holder to present testimony 'based only on a functional, not a structural, analysis.'" *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005) (quoting *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222 (Fed. Cir. 1996). Because of the requirement that the accused structure be specifically identified and compared to the claimed structure, the Federal Circuit has repeatedly held that conclusory statements without a specific discussion of structure are insufficient for a patentee to meet its burden of proof with respect to infringement of a means-plus-function claim. *Intellectual Science and Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1185-86 (Fed. Cir. 2009) (finding that expert's statement that the structures in the accused devices "perform the same function as the claimed 'data transmitting means' (i.e., transmitting to the host computer), in the same way (i.e., through a time division multiplexed structure) to achieve the same result (i.e., transmitted information sets)" was an insufficient conclusory statement and "to permit a jury to conclude that the playback signal selection device is an ITDM, Dr. Michalson needed to supply at a minimum some description about the specific features of the accused playback signal selection device's multiplexing of the audio information stream"); *Cytologix*, 424 F.3d at 1178 ("Here, CytoLogix failed to identify the structure in the specification that is the 'temperature controller means' and compare it to the structure of the accused device. Accordingly, because CytoLogix failed to present substantial evidence of infringement of claim 13 of the '693 patent, the jury verdict of infringement of claim 13 must be reversed."); *Paradox Security Systems, Ltd. v. ADT Security Services, Inc.*, No. 10-1012, 2010 U.S. App. LEXIS 15553, at *11-12 (Fed. Cir. July 19, 2010) (affirming district court's grant of

7

judgment as a matter of law of noninfringement of means-plus-function claim because plaintiff's expert's "statements were entirely conclusory; he pointed to no structure in the DSC schematic shown above, or in any of the other schematics of DSC accused circuitry that were admitted into evidence, that identified a 'DC bias source coupled to the transmit opto coupler input' as construed by the court").

Claim 3 of the '683 patent has five means-plus function limitations. Claim 1 of the '172 patent has five different means-plus function limitations. Pursuant to the parties' request, the Court construed every single one of these means-plus-function terms and provided the function and structure required to infringe. (Doc. No. 204.) During trial, ePlus asserted that Lawson's Accused Systems infringe these claims, but failed to meet its prima facie burden of proof on infringement because Dr. Weaver never opined *what* that accused structure would in Lawson's accused products.

Dr. Weaver provided only conclusory and legally irrelevant opinions regarding the means-plus-function claim elements. Dr. Weaver failed to provide any opinion on how Lawson's Accused Products met the structural requirements of the claims. For example, for "means for selecting the product catalogs to search" of claim 3 of the '683 patent, Dr. Weaver opined as follows:

> Q In each of these scenarios, does all five systems, do they provide the means for selecting a product catalog to search?
> A Yes.

(Tr. 797:13-15.) He said nothing more about this element. He never recognized the function as defined by this Court nor opined that the function was performed by Lawson's Accused Systems. He also never recognized the structure as defined by this Court, asserted what alleged structure performed this means in Lawson's Accused Products, or opined on whether it was the same or

8

equivalent structure defined by the Court.

Likewise, with respect to claim 1 of the '172 patent, Dr. Weaver opined as follows regarding "means for processing said requisition to generate purchase orders for said selected matching items":

> Q Do configurations 2, 3 and 5 have a means for processing said requisition to generate purchase orders for said selected matching items?
> A They do. We saw that in the demo.

(Tr. at 818:11-14.) He said no more.[1] This is entirely insufficient to prove infringement of the means plus function claims.

These are not just harmless oversights. Whether these claim elements are met was a disputed issue in this case. (*See* Tr. at 1831:2-18 (Dr. Shamos explaining that, with respect to the "means for selecting the product catalogs to search" element of claim 3 of the '683 patent, there is "Not even remotely" any structure in the Lawson Accused Systems corresponding to this element); Tr. at 1859:15-23 (Dr. Shamos explaining that element "f" in claim 1—"means for processing said requisition to generate purchase orders for said selected matching items"—is not met "since there are no selected matching items on said order list, you can't generate purchase

---

[1] Dr. Weaver's opinions on the other means-plus-function claims fared no better. (*See* ("means for searching for matching items among the selected product catalogs," Tr. at 557:17-558:7; Tr. at 781:8-11; Tr. at 797:16-19; Tr. at 813:20-814:1; "means for searching for matching items among the selected product catalogs," Tr. at 557:17-558:7; Tr. at 781:8-11; Tr. at 797:16-19; Tr. at 813:20-814:1; "means for building a requisition using data relating to selected matching items and their associated source(s)," Tr. at 781:22-782:3; Tr. at 797:20-24; "means for processing the requisition to generate one or more purchase orders for the selected matching items," Tr. at 560:4-11; Tr. at 797:25-798:3; "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source," Tr. at 561:16-562:6; Tr. at 798:4-11; Tr. at 783:1-9; "means for entering product information that at least partially describes at least one desired item," Tr. at 793:1-7; Tr. at 817:9-12; "means for searching for matching items that match the entered product information in the selected portions of the database," Tr. at 813:22-814:1; Tr. at 817:13-22; Tr. at 818:15-20; "means for generating an order list that includes at least one matching item selected by said means for searching," Tr. at 817:23-818:5; "means for building a requisition that uses data obtained from said database

orders from them. So neither of those means is present in the Lawson system").)

Dr. Weaver made nothing more than conclusory allegations that the function and structure required by the means-plus-function claims were met. This is insufficient as a matter of law. *See Intellectual Science and Tech*, 589 F.3d at 1185-86; *Cytologix*, 424 F.3d at 1178 *Paradox*, 2010 U.S. App. LEXIS 15553, at *11-12. For this reason, ePlus cannot meet its burden that Lawson's Accused Products infringe the means-plus-function claims.

### D. The jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of indirect infringement.

ePlus accuses Lawson of indirectly infringing every single one of the asserted claims. However, liability for indirect infringement requires a direct infringer, and ePlus has not proven that Lawson's customers directly infringe. Even if Lawson's customers do directly infringe, however, there can be no indirect infringement because the required legal elements for indirect infringement have not been met.

#### 1. Because there is no direct infringement, there can be no indirect infringement.

Liability for indirect infringement—either contributory infringement or induced infringement—requires proof of direct infringement first. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986). ePlus has failed to prove that Lawson's customers directly infringe. As discussed above, ePlus has failed to prove that Lawson's customers directly infringe with respect to the Punchout system. Moreover, ePlus has failed to prove that Lawson's customers directly infringe any of the other claims. Instead, ePlus attempted to offer garbled evidence in which sometimes it is Lawson, sometimes the customer, and sometimes a third party vendor who is accused of infringing. Without their direct

---

relating to selected matching items on said order list," Tr. at 815:16-25; Tr. at 818:6-10.)

10

infringement, there is no indirect infringement.

>    2. Even if the customers directly infringe, Lawson is not guilty of indirect infringement because the legal requirements for indirect infringement are not met.

Lawson is entitled to judgment as a matter of law on the issue of indirect infringement. Both contributory and induced infringement require intent. Contributory infringement requires proof that the accused infringer offers a "component of a patented machine . . . *knowing the same to be especially made or especially adapted for use in infringement of such patent*, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c) (emphasis added). The Federal Circuit has instructed that for this requirement to be met, "plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing'". *Cross Medical Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citing *Golden Blount, Inc. v. Robert H. Peterson*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

For induced infringement, a patentee must demonstrate the accused infringer's actual or constructive knowledge of the patent and its intent to induce infringement of the patent. Inducement requires culpable conduct, namely that "the alleged infringer's actions induced infringing acts and that he *knew or should have known* his actions would induce actual infringements." 35 U.S.C. § 271(b) (emphasis added). This requirement "necessarily includes the requirement that he or she knew of the patent". *DSU Med. Corp. v. JMS Co. Ltd*, 471 F.3d 1293, 1304 (Fed. Cir. 2006); *see also SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1376-77 (Fed. Cir. 2010) (finding that proving indirect infringement requires a showing of actual knowledge about the patent or "deliberate indifference," which may be defeated by a showing that the accused infringer was genuinely unaware of the risk of infringement).

11

The legal requirements for contributory and induced infringement have not been met in this case. Both contributory and induced infringement require knowledge of the patents-in-suit. There is no evidence that Lawson knew of the patents before this lawsuit was filed in May 2009. Further, there is no evidence that Lawson should have known of ePlus's patents. And ePlus has not argued that the intent element is met based on anything that has occurred after May 2009, when Lawson learned of the patents. Even if ePlus did base its indirect infringement case entirely on Lawson's activities after May of 2009, its assertion would fail because the only evidence in the case is that Lawson does not act with the required intent.

The decisions in *DSU Medical* and *Cross Medical* show that, as a matter of law, Lawson cannot be liable for induced or contributory infringement for the time period *before* it had actual knowledge the patents-in-suit. And the evidence at trial demonstrates that Lawson did not learn of the patents-in-suit until ePlus filed this lawsuit in May 2009. All Lawson witnesses have testified that Lawson had no knowledge of the patents-in-suit or any possible infringement of the patents before suit. (Tr. at 1569:25-1570:4; Tr. at 1079:6-9.) There is no factual dispute that Lawson did not have actual notice of the ePlus patents prior to May 2009, let alone that Lawson should have known that it was infringing the patents. And there are no allegations in this case that Lawson had any access to ePlus's patented products, copied any aspect of those products, or reverse-engineered any aspect of the ePlus products.

ePlus cannot rely solely on constructive notice to show actual knowledge for indirect infringement. ePlus has not identified any evidence to show that anyone at Lawson was aware of ePlus's patents or its lawsuits. Further, none of the press coverage related to activities of Lawson. The fact that ePlus sued companies making products entirely different from Lawson's products cannot form the basis of the knowledge and intent requirement for induced

12

infringement. ePlus claims that Lawson's version 8.0.3, launched in 2002, was the first version of Lawson's procurement products that infringe. The articles ePlus cites to support its constructive-notice theory did not even exist at that time. On the facts here, there is no basis to find Lawson copied ePlus' product or deliberately avoided discovering the ePlus patents.

Lawson had absolutely no reason, and certainly no duty, to look for the ePlus patents. Indeed, the Federal Circuit has eliminated any duty on the part of an accused infringer to seek advice of counsel, even when the patentee is aware of the patent at issue. *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (overruling *Underwater Devices Inc. v. Morrison-Knudsen Co.,* and holding accused infringer has no affirmative duty to determine whether or not he was infringing). Lawson's alleged infringement began by simply introducing a new version of a product it had sold for decades. To impose an implied duty to search for and find ePlus's patents runs counter to the en banc *Seagate* decision, which eliminated any duty entirely.

ePlus does not base its indirect infringement allegations on Lawson's post-May 2009 activities. Even if it did, after the lawsuit was filed, ePlus cannot establish the requisite intent because the only evidence at trial demonstrates that Lawson reasonably believed there was no infringement. Indeed, in cases where an accused infringer only finds out about the patents when the lawsuit is filed, courts recognize that there is no liability for indirect infringement if the infringer relies upon advice of counsel that it does not infringe. *See, e.g.*, *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553-54 (Fed. Cir. 1990) (reversing finding of infringement by inducement where defendants were not aware of patent until suit was filed and defendants' subsequent infringing acts continued upon good faith belief based on advice of counsel that its products did not infringe). Here, the only evidence demonstrates that after Lawson was sued it did not believe there was infringement and so Lawson did not have the

13

required intent for indirect infringement.

Dr. Weaver's opinion on the issue of induced infringement is totally irrelevant. Not only is it conclusory, he does not consider the knowledge requirement at all.

### III. INVALIDITY

In addition, Lawson is entitled to judgment as a matter of law on the issue of invalidity because a reasonable jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of invalidity of the asserted claims, as has been discussed and will be more fully addressed in the oral argument on judgment as a matter of law. At trial, documents demonstrated and witnesses testified regarding the features and functionality of the prior art RIMS system disclosed in the '989 patent and the prior art TV/2 product. Dr. Shamos went through every single claim and explained why the references alone anticipated and why in combination they rendered the claims obvious.

This combination of RIMS plus TV/2 renders every single asserted claim of the patents in suit obvious. The TV/2 literature specifically says to combine TV/2 with a parts ordering and inventory management system. The '989 patent was a parts ordering and inventory management system. The patents-in-suit do no more than combine the '989 patent with TV/2. This is an obvious combination that renders the claims invalid. In addition, there are no secondary considerations of nonobviousness. For this reason, Lawson is entitled to judgment as a matter of law on the issue of invalidity.

### IV. CONCLUSION

For the foregoing reasons, Lawson respectfully requests that this Court grant judgment as a matter of law for Lawson on all issues.

LAWSON SOFTWARE, INC.


By   /s/
   Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

15

## CERTIFICATE OF SERVICE

I certify that on this 21st day of January, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

      /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*