**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAWSON SOFTWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 50(a) AND 35 U.S.C. § 271(a), (b), AND (c), AND IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

*Counsel for Plaintiff, ePlus, Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW..............................2

III.  ARGUMENT ........................................................................................................3

      A.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson
           With Respect To Direct Infringement Of The Asserted Claims..............................3

      B.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson
           With Respect To Inducement Of Infringement Of The Asserted Claims..............13

      C.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson
           With Respect To Contributory Infringement Of The Asserted Claims ................19

IV.   CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BMC Res., Inc. v. Paymentech, L.P.,*
    498 F.3d 1373 (Fed. Cir. 2007) ........................................................................ 11

*Broadcom Corp. v. Qualcomm Inc.,*
    543 F.3d 683 (Fed. Cir. 2009) ............................................................ 14, 15, 17

*Dolly v. Spalding & Evenflo Cos., Inc.,*
    16 F.3d 394 (Fed. Cir. 1994) ............................................................................ 3

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006) ........................................................ 13, 14, 19

*Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.,*
    287 F.3d 1108 (Fed. Cir. 2002) ........................................................................ 3

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010) ........................................................................ 3

*Global-Tech Appliances, Inc. v. SEB S.A.*
    131 S.Ct. 458 (Oct. 12, 2010) ........................................................................ 14

*Hilgraeve Corp. v. Symantec Corp.,*
    265 F.3d 1336 (Fed. Cir. 2001) ........................................................................ 3

*Humanscale Corp. v. Compx Int'l, Inc.,*
    2010 WL 3222411 (E.D. Va. Aug. 16, 2010) .................................................. 2

*i4i Ltd. Partnership v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010) ........................................................................ 13

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner Gmbh,*
    408 F.3d 1374 (Fed. Cir. 2005) ...................................................................... 14

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ...................................................................... 20

*Manville Sales Corp. v. Paramount Sys., Inc.,*
    917 F.2d 544 (Fed. Cir. 1990) ........................................................................ 13

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005) ...................................................................... 15

*Mentor H/S Inc. v. Medical Device Alliance, Inc.,*
    244 F.3d 1365 (Fed. Cir. 2001) ................................................................ 19, 21

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
    370 F.3d 1354 (Fed. Cir. 2004) ................................................................ 14, 15

ii

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005).........................................................................................15, 18

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
  476 F. Supp.2d 1143 (N.D. Cal. 2007)...........................................................20, 21

*Mullins v. Equifax Info. Servs., LLC*,
  2007 WL 2471080 (E.D.Va. Aug. 27, 2007)...........................................................2

*nCube Corp. v. SeaChange Int'l, Inc.*,
  436 F.3d 1317 (Fed. Cir. 2006) ...........................................................................14

*Philips Electronics No. Am. Corp. v. Remote Solution Co., Ltd.*,
  411 F. Supp.2d 479 (D. Del. 2006)........................................................................20

*SEB S.A. v. Montgomery Ward & Co.*,
  594 F.3d 1360 (Fed. Cir. 2010) ...............................................................14, 17, 20

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
  602 F.3d 1325 (Fed. Cir. 2010) ..............................................................................2

**Statutes**

35 U.S.C. § 112..............................................................................................................3

35 U.S.C. § 271.....................................................................................................passim

**Rules**

Federal Rule of Civil Procedure 50 .........................................................................1, 2

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Plaintiff *e*Plus, Inc. ("*e*Plus"), by counsel, respectfully moves for judgment as a matter of law that Defendant Lawson Software, Inc. ("Lawson"), infringes all the asserted claims of the patents-in-suit, both directly and/or indirectly (and both through inducement of infringement and/or contributory infringement). Lawson has been fully heard on the infringement issues, and a reasonable jury would not have a legally sufficient evidentiary basis to find for Lawson as to its infringement of asserted claims 3, 26, 28, and 29 of United States Patent No. 6,023,683 (or, "the '683 Patent"); claims 1, 2, 6, 9, 21, 22, and 29 of United States Patent No. 6,055,516 (or, "the '516 Patent"); and claim 1 of United States Patent No. 6,505,172 (or, "the '172 Patent").[1]  *e*Plus also requests that the Court deny Lawson's motion for judgment as a matter of law of non-infringement.

The Court heard, through the testimony of *e*Plus's expert witness Dr. Alfred Weaver and Lawson's own lay witnesses and company documents, evidence that established that the accused configurations of Lawson's S3 system infringe the asserted claims.[2]  The testimony of Lawson's expert witness, Dr. Michael Shamos, failed to provide a legally sufficient evidentiary basis for denying this motion.  Indeed, the centerpiece of Lawson's non-infringement argument, as expressed through Dr. Shamos' testimony, was a new claim construction of "catalog" and "published by a vendor" that the Court never adopted and, indeed, firmly rejected.  Moreover, Dr. Shamos conceded that in forming his non-infringement opinions he did not speak with a single employee, customer, or "Punchout partner" involved in Lawson's accused S3 system.

---

[1] This brief sets forth *e*Plus's arguments in support of judgment as a matter of law pursuant to its oral argument on Friday, January 21.

[2] Pursuant to the parties' stipulation in the Final Pretrial Order, Lawson agreed that any adjudication of infringement of the S3 system applies also to its M3 system.  Accordingly, the Court's grant of judgment as a matter of law should apply to the M3 system as well.

Lawson also disclaimed any argument of non-infringement based on whether customers — as distinct from Lawson itself — implemented modules of the accused infringing configurations. Tr. 1497:11-18 (Counsel for Lawson:  "I don't think we're going to dispute now — we don't have to worry about how many customers or whether there was [sic] some that we didn't help load that data.  I don't think this is an issue … it's not a defense that we're asserting.") (*see* Exhibit 9, attached).

*e*Plus therefore respectfully requests that the Court grant judgment as a matter of law that Lawson infringes all the asserted claims, both directly and indirectly (through both inducement of infringement and contributory infringement), pursuant to 35 U.S.C. § 271(a), (b), and (c).  In support of this motion, *e*Plus relies upon the full evidentiary record admitted during the infringement phase of this case.

## II.     LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

Fed. R. Civ. P. 50(a) provides that judgment as a matter of law may be granted when a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1331 (Fed. Cir. 2010) (quoting rule).  Under the rule, "the court must examine the evidence in the light most favorable to the nonmoving party and ascertain 'whether a reasonable trier of fact could draw only one conclusion from the evidence.'"  *Humanscale Corp. v. Compx Int'l, Inc.,* 2010 WL 3222411, * 1 (E.D. Va. Aug. 16, 2010) (quoting *GSM Dealer Servs., Inc. v. Chrsyler Corp.,* 32 F.3d 139, 142 (4th Cir. 1994)).  Thus, "[t]he district court is not free to weigh the evidence presented at trial" but must give the non-movant "the benefit of all reasonable inferences that may be drawn from the evidence."  *Mullins v. Equifax Info. Servs.*, *LLC*, 2007 WL 2471080, at *1 (E.D.Va. Aug. 27, 2007).

III.    **ARGUMENT**

A.    **There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With Respect To Direct Infringement Of The Asserted Claims**

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  To show infringement, "the plaintiff must establish that the accused device includes every limitation of the claim or an equivalent of each limitation."  *Dolly v. Spalding & Evenflo Cos., Inc.,* 16 F.3d 394, 397 (Fed. Cir. 1994).  In this case, *e*Plus has not relied upon infringement under the doctrine of equivalents and therefore only literal infringement is at issue in this motion.[3]

As the Court has recognized throughout the trial, a product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.  *See, e.g., Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197 (Fed. Cir. 2010); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).  Whether a product or process may be used in a manner that does not infringe the patent is not a defense if Lawson's product or process is also reasonably capable of a use that infringes the patent.  *Hilgraeve,* 265 F.3d at 1343.  Thus, evidence that Lawson's product accused of infringement is presently capable of meeting the claim elements establishes infringement.

---

[3] With respect to means-plus-function elements, however, the structures for such elements include statutory equivalents pursuant to Section 112, Paragraph 6, as the Court expressly found in its *Markman* Order.  35 U.S.C. § 112, Para. 6 ("such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.").  Infringement of such claim elements constitutes literal infringement.

As briefly summarized below, the evidence firmly established Lawson's direct infringement.

- *e*Plus's expert Dr. Weaver reviewed a Lawson demonstration system and showed the jury, through recordings of the real-time operation of the S3 procurement system, the manner in which the accused configurations infringe the asserted claims according to the Court's claim construction. Tr. at 504:5-15, 634:7-653:3, 683:6-703:24, 725:14-729:7, 760:13-766:12 (Weaver).[4]  After walking through specific examples showing the functionality of the accused configurations, Dr. Weaver opined that all of the asserted claims were directly infringed.

- *e*Plus's expert Patrick Niemeyer testified that he reviewed the Lawson source code with respect to the disputed functions of the Lawson software. Tr. 1228:11-1230:1 (Niemeyer).  His testimony fully supported Dr. Weaver's opinions as to the functionality of the S3 system.  Mr. Niemeyer's testimony as to the source code was unrebutted.

- Lawson's marketing literature, technical documentation, Statements of Work ("SOWs"), and responses to customer Requests for Proposals ("RFPs") expressly claimed the functionality covered by the asserted claims.  *See, e.g.,* Tr. at 539:8–542:7, 543:25–544:7 (Weaver); PX-149 at L0092759, L0092767 (Lawson rating itself as having "leading edge capabilities" in "ability to produce supply catalogs by item number, manufacturer, vendor, class and inventory location"); Tr. 546:19-555:14 (Weaver); PX-219 at L0108867-69 (Lawson RFP response claiming functionality of asserted claims).

The focus of Lawson's non-infringement arguments was on the "catalog" element. However, there was more than sufficient evidence that the accused S3 configurations meet this limitation.

- The Lawson S3 procurement system consists of both multiple catalogs within the internal S3 database and external Punchout catalogs.  *See, e.g.*, Tr. 654:23-655:18 (Weaver); PX-280 at LE00206849.  The S3 system includes internal vendor catalogs comprised of the item master and vendor item tables.  Tr. at 541:10-542:7, 702:12-23, 704:3-12, 704:24-705:5 (Weaver); PX-149 at L0092767.  Additionally, Lawson Procurement

---

[4] The cited transcript pages are attached as the following exhibits:  Exhibit 1 (Dr. Alf Weaver; Exhibit 2 (Patrick Niemeyer); Exhibit 3 (Michael Shamos); Exhibit 4 (Keith Lohkamp); Exhibit 5 (Dale Christopherson); Exhibit 6 (Hannah Raleigh); Exhibit 7 (William Yuhasz); Exhibit 8 (Ken Farber); Exhibit 9 (arguments of counsel).

Punchout allows users to access multiple external vendor catalogs and bring selected items back into the Lawson S3 system for requisitioning. Tr. 702:24-703:6, 703:21-24 (Weaver); PX-280 at LE00206846.

- The internal vendor catalogs found in the item master and vendor item tables each comprise an organized collection of items and associated information. This fact was explicitly conceded by Dr. Shamos, Lawson's own expert on infringement. Tr. 1879:20-1880:3 (Shamos). The vendor item table, which can include vendor and price information, is linked to the item master table in the Lawson database. Tr. 1001:6-11 (Lohkamp); Tr. 1624:25-1625:24 (Christopherson); Tr. 1905:10-14 (Shamos).

- These internal vendor catalogs are published by a vendor. Lawson's own employees testified that the catalog information loaded into the item master is made known and disclosed to Lawson's customers by vendors. *See, e.g.,* Tr. 1595:23-1596:3, 1620:23-1621:3 (Christopherson); Tr. 1675:19-21 (Raleigh); Tr. 1001:16-24, 1007:14-17 (Lohkamp). Lawson's own documents also established that catalog items in the Lawson S3 procurement system are published by a vendor. *See, e.g.,* PX-108 at L0052015; PX-114 at L0000812-13; PX-188 at L0001888; PX-398 at L0000971; PX-521 at LE01280428; and PX-522 at L0043551.

- The vendor discloses and makes generally known to the customer item-catalog information—such as vendor item number, vendor item description, unit of measure, and unit price—that ends up in the item master and vendor item tables. Tr. 1591:15-1592:1; 1593:9-12; 1595:23-1596:19; 1598:11-14; 1599:9-1600:17; 1600:24-1602:22; 1620:23-1621:3; 1627:13-24 (Christopherson).

> *ePlus Counsel:  The vendor provides the item catalog information that ends up in the item master; isn't that right?*
>
> *Mr. Christopherson:  That is some of the information that ends up there.*

Tr. 1593:9-12 (Christopherson) (emphasis added).

- The Lawson S3 system enables the import of vendor catalogs in multiple ways. The first step for loading catalog data is to obtain the vendor catalog information. Tr. 1008:14-24 (Lohkamp); PX-113. The Lawson EDI application allows users to receive electronically transmitted vendor catalogs using the EDI 832 catalog import process. Tr. 630:10-631:1, 669:1-16, 670:1-17 (Weaver); PX-109 at LE00187618; PX-280 at LE00206834, LE00206842. Catalog data can also be imported using Microsoft Add-ins (via Excel uploads). Tr. 669:1-11; PX-280 at LE00206834 (Weaver). Vendor catalogs can also be imported into the

5

accused Lawson systems using the PO536 vendor-catalog load program. Tr. 669:1-11; PX-280 at LE00206834 (Weaver). This loading of vendor catalog information is part of the core functionality of the S3 procurement product in the Purchase Order module. Tr. 1001:16-24, 1002:4-13 (Lohkamp). The catalog content from vendors is loaded into the item master and vendor item tables. Tr. 1006:14-1007:9, 1007:14-20 (Lohkamp); PX-113.

- The internal vendor catalogs made up of the item master and vendor item tables include a multitude of data fields associated with the items in the catalogs. Lawson's own employees and the experts from both *e*Plus and Lawson testified that the catalog information in the S3 procurement system can include part numbers, prices, catalog numbers, vendor names, vendor IDs, textual descriptions of items, UNSPSC codes associated with the items, images of items, and multiple user-defined fields. *See, e.g.,* Tr. 1000:18-1001:15 (Lohkamp); Tr. 1607:24-1608:16 (Christopherson); Tr. 613:22-614:13 (Weaver); Tr. 1896:20-24 (Shamos); Tr. 1236:22-25, 1239:14-18, 1265:17-24, 1266:6-13 (Niemeyer).

- The S3 procurement system incorporates the use of external catalogs through Punchout vendor sites. The use of these Punchout vendor catalogs in the S3 procurement system was seen in two of the demonstrations conducted by Dr. Weaver. *See, e.g.,* PX-379 at ePLUS0948966. Lawson's own witnesses also testified that the Procurement Punchout application includes the capability to punchout to multi-vendor catalogs. *See, e.g.,* Tr. 1159:11-14 (Christopherson).

- The punchout process is different than accessing a retail website from a home computer because the Lawson system is "intermediating or controlling" the process in several ways. In the case of the Lawson system, it happens within the Requisitions Self-Service application; the Lawson system both establishes the connection to the remote site, performs a login operation for the user, and then, when the shopping is completed, receives the results of the shopping from the remote site and incorporates them into the user's shopping cart within Requisitions Self-Service. Tr. 1254:2-17 (Niemeyer). While punching out to an external punchout vendor site using Procurement Punchout, the Lawson user remains connected to the Lawson system at all times. Tr. 1631:19-22, 1633:7-11 (Christopherson).

The S3 procurement system allows users to select product catalogs to search and to

search for matching items among the selected product catalogs.

- Users of the Lawson S3 system can select catalogs by a number of criteria, including vendor, manufacturer, and catalog number. Tr. 673:22-674:2, 699:12-24, 701:23-702:11 (Weaver); PX-170 at L0068883-84; PX-215 at

L0096172.  Users can also use a partial item description or the UNSPSC classification codes.  Tr. 699:12-24 (Weaver).

- The capability to select product catalogs to search in the Lawson S3 system was confirmed by Lawson's own witnesses.  For example, Lawson's Director of Product Development, Dale Christopherson, and Lawson's expert on infringement, Dr. Shamos, both acknowledged that the S3 procurement system allows users to restrict their search to matching items from a particular vendor.  *See* Tr. 1604:10-23 (Christopherson) and Tr. 1902:7-12, 1929:12-16 (Shamos).  Lawson's responses to requests for proposals from potential customers also established that the S3 procurement system included the capability to search by vendor catalog number and by vendor name.  Tr. 1054:23-1055:2, 1055:17-19 (Lohkamp); PX-215 at L0096172.

The Lawson documents confirm that the Lawson system employs a search index to enable a search to be performed among the selected product catalogs or selected portions of the system's database.

- Using Lawson's software and documents, *e*Plus's experts explained in detail the operation of the index in the Lawson S3 system.  Dr. Weaver demonstrated how the index searches only selected portions of the Lawson database.  *See* Tr. 711:1-10, 705:10-706:4, 716:23-717:16 (Weaver).  By using a search index, the accused Lawson systems are able to perform searches much faster than would be possible if searching the full database. Tr. 705:10-706:4, 706:8-16 (Weaver).  Keyword fields for the search index are defined using the keyword search setup (IC00.5) program.  Tr. 706:21-707:10, 709:15-24 (Weaver); PX-136 at LE02932714.  These searchable fields come from the item master table, vendor item table, and item location table, and can include a number of criteria including user-defined fields.  Tr. 719:18-720:15; PX-127 at LE00192060-62 (Weaver).  The search index is then created from all the keywords found in those fields using the keyword search load (IC800) program.  Tr. 706:21-707:10; 709:15-24 (Weaver); PX-136 at LE002932713.  The keyword detail table is the key index of search terms, and it relates a specific search term which has been found to the origin field in which it was located and the item number of the item in which it was found.  Tr. 1243:11-16 (Niemeyer).  The Lawson search engine searches the index for the keyword, finds records in the database matching that keyword, then extracts that data from the database.  Tr. 711:1-10 (Weaver).

- Lawson's expert, Dr. Shamos, conceded that an index is used for searching in the Lawson database, and even acknowledged that "in a sense" the index makes it possible "to avoid searching an entire database each time" by "allow[ing] particular records containing specific data to be

7

located quickly."  Tr. 1925:9-21 (Shamos); *see also* Tr. 1920:1-4,
1921:22-1922:2 (Shamos).

Items can be selected from results of searches of the selected product catalogs or selected
portions of the database and placed into the shopping cart within Requisition Self Service.  Tr.
567:25-568-19 (Weaver).  The shopping cart within Requisitions Self-Service is an order list
where users can add or delete items before the requisition is created.  *See, e.g.*, Tr. 568:20-569:15
(Weaver); Tr. 1157:3-6, 1158:6-14 (Christopherson).  The shopping cart in Requisitions Self-
Service can be dynamically built from results of conducting searches of the item master and of
vendor punchout catalogs.  Tr. 1157:3-10 (Christopherson).  A user may select an item from a
search result should be added to the shopping cart.  Tr. 1246:17-1247:2 (Niemeyer).  Items can
be added and removed from the shopping cart until a checkout operation is performed.  *Id.*

It was undisputed that once a user clicks "Checkout," the system builds a requisition
using data relating to the selected matching items and their associated sources that were included
in the Shopping Cart.  Tr. 1158:6-14 (Christopherson).  Dr. Weaver offered an unrebutted expert
opinion that the accused Lawson systems have the capability to create requisitions for selected
items.  *See, e.g.*, Tr. 654:7-22; PX-280 at LE00206848-49 (Weaver).  Lawson employees and
documents also confirmed without dispute that the S3 procurement system allows users to build
requisitions using data relating to matching items and their associated sources.

- For example, Keith Lohkamp, Lawson's Product Strategist for S3 Supply
  Chain Management, testified that Requisitions Self-Service is marketed as
  a way for customers to search for items and build requisitions.  Tr.
  1010:24-1011:5 (Lohkamp).

- Similarly, Lawson's Requisitions Self-Service Guide states that users "can
  create a requisition by using one or more of the following Find/Shop menu
  tasks: - Search Catalog …. – Categories…-Punchout."  PX-98 at
  L0045502.

Once a requisition is approved, the requisition is released and then transferred to the purchase order system.  Tr. 1158:15-18 (Christopherson).  Users of the Lawson system can use a program, PO100, to generate one or more purchase orders that correspond to the items that are listed in a particular requisition.  Tr. 1250:18-24, 1251:22-1252:21 (Niemeyer).

It was undisputed that the system's United Nations Standards Products and Services Codes (UNSPSC) coding schema acts as a cross-reference table to cross-reference between generally equivalent items from multiple sources.

- The Categories search in the S3 system enables searching for items by category using the United Nations Standards Products and Services Codes (UNSPSC).  Tr. 692:2-18 (Weaver); PX-280 at LE00206846.  UNSPSC codes create an item hierarchy of four levels (segment, family, class, and commodity).  Tr. 629:2-18 (Weaver).  UNSPSC codes can be imported and assigned to items in the Item Master using programs such as IC 11.1 Tr. 629:2-18 (Weaver).  Users can search through the four category levels to open the segment tree to product, family, class, commodity, branches, and items, and select items at any level.  Tr. 629:2-18 (Weaver).

- Expert testimony from Dr. Weaver, and a third-party white paper on the UNSPSC code relied upon by Dr. Shamos, established that items sharing the same eight-digit UNSPSC code are generally equivalent or substitutable.  Tr. 612:15-20 (Weaver); PX-11 at ePLUS0227043; *see also* Tr. 1911:22-1912:10 (Shamos).  Using the Lawson accused systems, Dr. Weaver demonstrated converting a requisition item from one vendor to a generally equivalent item from a second vendor.  *See, e.g.*, Tr. 640:22-641:6, 642:7-14, 643:16-644:1, 644:11-13 (Weaver) (converting IBM ThinkPad from Office Max to Dell Inspiron from Dell).

- Lawson's own employees and customers also confirmed that the S3 procurement system includes the capability to find similar products from different vendors that are all cross-referenced to the same UNSPSC category.  Tr. 1555:25-1556:3, 1156:23-1157:2 (Christopherson) and Tr. 1709:24-1710:3 (Yuhasz).

There are multiple means by which the system can determine the availability of a selected matching item in a vendor's inventory.  The jury heard undisputed evidence that information on inventory availability can be obtained in the S3 procurement system both through the use of

9

purchase-order acknowledgements in the Lawson EDI application as well as within some

Punchout vendor catalogs accessible through the Procurement Punchout application.

- Dr. Weaver offered unrebutted expert testimony on how the EDI 855 purchase order acknowledgement transaction employed within the Lawson EDI application provides inventory-availability information to the Lawson user after a purchase order has been generated and transmitted to the vendor.  Tr. 572:23-573:13, 603:17-604:17, 670:1-17 (Weaver).

- Mr. Lohkamp testified that using the Lawson Procurement Punchout application, a Lawson customer can go to a specially prepared website of a vendor, determine what items are available for sale, bring selected item data back, import it into the Lawson Requisition Self-Service shopping cart, and then move forward with the requisition and purchase order generation process.  Tr. 1014:24-1015:6 (Lohkamp).  Additionally, Dr. Weaver walked through two demonstrations showing inventory-availability information in multiple Punchout vendor sites.  *See, e.g.*, Tr. 692:5-12, 694:4-9, 764:14-18 (Weaver); PX-367; PX-368; PX-379; PX-380.

Lawson customers can access a hosted procurement system that Lawson itself operates at

a facility leased by Lawson; these customers can perform purchasing functions and order from

multiple vendors.  Tr. 941:16-21, 942:4-24 (Raleigh); Tr. 1037:22-1038:8, 1048:4-14

(Lohkamp).  The hosted solution also can include Lawson Procurement Punchout.  Tr. 1038:8-12

(Lohkamp).

According to Lawson's own witnesses and documents, Lawson regularly performs a full

range of implementation services to assist customers in loading the S3 system with vendor

catalog data.[5]  Hannah Raleigh, a project director at Lawson, testified that Lawson provides

implementation services to its customers that include all aspects up to and including bringing a

system live into actual production operation.  Tr. 936:23-937:1, 941:6-10 (Raleigh).  As part of

---

[5] While Lawson has disclaimed any defense of non-infringement based on whether its customers — as distinct from Lawson itself — load catalog data into the S3 database (*see* Tr. 1497:11-18), *e*Plus includes this evidence to show that in any event there could be no genuine dispute on the issue.

these implementation services, Lawson assists or even itself performs the catalog data conversion and migration from the customer's legacy system to the Lawson S3 system.  *See* Tr. 941:22-942:3, 943:9-23, 948:21-949:1, 950:20-951:1 (Raleigh); 1040:9-12 (Lohkamp); *see also* PX-219 at L0108954-55; PX-216 at LE00645374-76; PX-276 at L0294103-06.  In fact, Dale Christopherson, Lawson's Director of Product Development, testified that ***in most situations*** Lawson Professional Services provides the actual installation and implementation services for the S3 procurement system.  Tr. 1160:24-1161:5 (Christopherson).

The evidence establishes that a Lawson system user (*e.g.*, a Lawson customer or a Lawson employee using a Lawson system while demonstrating the product), can use the Lawson system to perform processes including each step of the three method claims at issue, claims 26, 28 and 29 of the '683 Patent.  Dr. Weaver demonstrated how a Lawson system user using a Lawson system can perform the processes of each of these claims.  *See* PX-376; PX-374 (Dr. Weaver's demonstration of using categories search functionality and performing all steps of process of claim 28); PX-368; PX-367 (Dr. Weaver's demonstration of use of Lawson system to perform all steps of process of claim 26); PX-380; PX-379 (Dr. Weaver's demonstration of use of Lawson system to perform all steps of process of claim 29).  To the extent Lawson contends that any steps of the method claims are sometimes performed by another party (*e.g.*, a "Punchout Partner"), the evidence established that Lawson controls or directs the performance of those steps.  Although direct infringement of a method claim generally requires that one party perform or use every step of the claimed method, direct infringement may be found where one party exercises "control or direction" over the claimed process such that every step is deemed attributable to the controlling party.  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).  The law thereby imposes vicarious liability on a party for the acts of another in

such circumstances.  *Id.* at 1379.  "A defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf."  *Id.*

Dr. Weaver testified, without objection, to Lawson's direction and control of the performance of the steps; the evidence showed that Lawson establishes the technical requirements for the Punchout operation that the Punchout partners are obliged to follow pursuant to their agreements with Lawson and Lawson's customers.  Tr. 663:17-664:16 (Weaver).

Furthermore, the jury saw and heard testimony regarding contractual agreements that Lawson enters into with its Punchout trading partners in order to facilitate the development of interfaces between the S3 procurement system and the vendor sites.  *See, e.g.,* Tr. 1019:12-19, 1149:12-16 (Lohkamp); PX-190 at LE00232215.  Pursuant to these agreements, Lawson would perform the initial configuration and testing for the punchout communications.  *See* Tr. 1020:14-23, 1023:14-22 (Lohkamp); PX-104 at LE00017986; PX-191 at LE00503591.  As part of the partnership agreement, Lawson's Punchout trading partners pay Lawson an up-front fee as well as an annual fee.  *See* Tr. 1022:25-1023:2 (Lohkamp); PX-104 at LE00017986; PX-190 at LE00232223.  Lawson provides the partners with its punchout specifications and its consultants perform the work necessary to enable the trading partner for the Procurement Punchout application.  Tr. 680:12-23 (Weaver); PX-104 at LE00027989; PX-212 at L0002372.  Lawson provides generic punchout transaction sets and cXML purchase-order formats to its customers for the listed trading partners.  Tr. at 677:25-678:12 (Weaver); PX-105 at L0046361.

The jury also saw documents and heard testimony regarding Lawson's control of the configuration and implementation of the connection between the S3 procurement system and external Punchout vendor sites.  Lawson's Product Strategist for S3 Supply Chain Management,

Keith Lohkamp, and Lawson's infringement expert, Dr. Shamos, agreed that Lawson controls

the format for communications between Lawson and its Punchout trading partners.  Tr. 1150:9-

14 (Lohkamp); Tr. 1927:20-24 (Shamos).  Dr. Weaver showed through his demonstrations of the

S3 procurement system how Lawson uses a unique URL web address for each Punchout

shopping session that is specially configured for the customer.  *See, e.g.,* PX-379 at

ePLUS0948967; *see also* Tr. 1633:19-1634:3 (Christopherson).  Mr. Christopherson testified

that Lawson users remain connected to the Requisitions Self-Service application throughout their

Punchout shopping sessions.  Tr. 1631:19-22; 1633:7-11 (Christopherson).  And, as set forth

supra, a Lawson system user, using the Lawson system, can use the Lawson system to conduct

each step of the process claims.  *See* supra at 11.

All of the elements of the asserted claims were proven, and there is no legally sufficient

evidentiary basis for a reasonable jury to find otherwise.  Accordingly, judgment as a matter of

law is appropriate with respect to direct infringement of all asserted claims.

### B.     There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With Respect To Inducement Of Infringement Of The Asserted Claims

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement

of a patent shall be liable as an infringer."  35 U.S.C. §271(b).  To prove infringement under

Section 271(b), *e*Plus must show (1) direct infringement of an asserted claim, and (2) that

Lawson's "actions induced infringing acts and that it knew or should have known its actions

would induce actual infringement."  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544,

553 (Fed. Cir. 1990); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir.

2006) (en banc in relevant part).  For inducement of infringement of a method claim, the direct

infringement exists where at least one person performed the method claimed.  *i4i Ltd.*

*Partnership v. Microsoft Corp.,* 598 F.3d 831, 850 (Fed. Cir. 2010).

The law is firmly established that the infringer's intent to induce infringement may be, and typically is, established through circumstantial evidence. *Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 700 (Fed. Cir. 2009) ("There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se.*") (citation omitted); *see also DSU,* 471 F.3d at 1306; *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) (requisite intent to induce "may be inferred from all of the circumstances."). The Federal Circuit has emphasized that "[t]he drawing of inferences, particularly in respect of an intent-implicating question … is peculiarly within the province of the fact finder that observed the witnesses." *Broadcom,* 543 F.3d at 700 (quoting *Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1110 (Fed. Cir. 1986)). Moreover, such intent may be established where an alleged infringer "knew or should have known" that its actions would induce infringement. *Broadcom,* 543 F.3d at 699; *DSU,* 471 F.3d at 1306. Indeed, even for allegations such as willful infringement where "actual notice" is required, the display of marked products at trade shows and advertising literature stating that the products were patented may constitute relevant circumstantial evidence of such notice. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner Gmbh,* 408 F.3d 1374, 1377-78 (Fed. Cir. 2005).

As with contributory infringement, discussed *infra,* to the extent that the intent requirement for inducement encompasses some form of knowledge or awareness of the patent, again, "constructive knowledge" may suffice. *See SEB S.A. v. Montgomery Ward & Co.,* 594 F.3d 1360, 1378 (Fed. Cir. 2010), *cert. granted, Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 458 (Oct. 12, 2010) (holding that intent may be shown through circumstantial evidence of

14

"deliberate indifference" and stating "[t]his opinion does not purport to establish the **outer limits** of the type of knowledge needed for inducement.  For instance, a patentee may perhaps only need to show … constructive knowledge with persuasive evidence of disregard for clear patent markings, similar to the constructive notice requirement in section 287(a)") (emphasis added); *Broadcom,* 543 F.3d at 698-700 (Fed. Cir. 2009) (generally discussing requirement that alleged infringer knowingly induced infringement).

Conduct such as advertising infringing uses, instructing how to engage in infringing uses, demonstrating infringing uses, and recommending infringing uses, is strong evidence of specific intent to cause the actions that constitute direct infringement.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005);[6] *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378-80 (Fed. Cir. 2005); *Metabolite*, 370 F.3d at 1365. Further, that an accused inducer desires to profit from sales that might be used to infringe may also be indicative of intent to cause the direct infringement.  *Grokster*, 545 U.S. at 939-40.  In evaluating Lawson's intent, the jury may consider all the circumstances, including the absence of an opinion of counsel of non-infringement and invalidity.  *Broadcom,* 543 F.3d at 698-700. Additional (albeit non-exclusive) circumstances that may be evidence of Lawson's intent to induce infringement may include whether it worked closely with its customers to develop and support the accused products, and whether it failed to make changes to its products or instruct its customers how to avoid infringement after becoming aware of the patents.  *Id.* at 700.

As summarized below, the evidence established both the direct infringement by customers, and the inducement of that infringement by Lawson:

---

[6] Although *Grokster* was not a patent case, the Supreme Court noted the similarities between inducement of infringement in copyright law and patent law, and the Federal Circuit has cited it approvingly for its guidance on inducing patent infringement.  *See, e.g., MEMC,* 420 F.3d at 1379.

- Lawson has known of the patents since no later than the filing of the complaint and, since that time, it has not ceased its infringement, modified its accused products to avoid infringement, or provided any different instructions to its customers as to how they may avoid infringement.  *See* Tr. 1152:1-6 (Lohkamp) (everyone at Lawson has been aware of the patents-in-suit since May 2009); Tr. 1165:20-1166:9 (Christopherson) (Lawson does not engage in any intellectual property clearance investigation before releasing new software enhancements and has taken no efforts since May 2009 to modify or redesign the Lawson S3 system). Indeed, Lawson concedes that it works closely with its customers in installing, implementing, servicing, and maintaining the accused systems, and therefore it cannot plausibly claim to be unaware of its customers' infringing uses.[7]  Accordingly, the requisite intent to induce has existed since no later than the filing of the complaint.

- In addition, the jury heard evidence to establish that the patents-in-suit were widely publicized within the industry, that Lawson knew of *e*Plus as a competitor, and that *e*Plus marked its products covered by the patents-in-suit.  *See, e.g.,* Tr. at 1316:9-1317:11 (Farber) (*e*Plus Patents discussed in

---

[7] *See supra* at 10-11; *see also* Tr. 936:23-937:1; 940:17-941:10 (Raleigh) (implementation services); Tr. 937:2-10 (Raleigh) (upgrade consulting services); Tr. 940:8-12 (Raleigh) (installation services); Tr. 941:16-21, 942:4-24 (Raleigh) (hosting services); Tr. 941:22-942:3, 942:25-943:23, 945:19-946:6, 946:13-16, 947:15-18, 947:23-948:4, 948:21-949:1, 949:22-950:12, 950:20-951:1 (Raleigh) (data conversion and migration services); Tr. 952:19-954:14 (Raleigh) (maintenance services); Tr. 1022:11-24 (Lohkamp) (implementation of Procurement Punchout); Tr. 1037:22-1038:4, 1048:4-14 (Lohkamp) (hosting services); Tr. 1038:18-23 (Lohkamp) (installation services); Tr. 1040:9-12 (Lohkamp) (data conversion and migration services); Tr. 1040:25-1041:22 (Lohkamp) (maintenance services); Tr. 1160:18-1161:5, 1622:18-1623:4, 1623:18-24 (Christopherson) (installation and implementation services); Tr. 1161:6-18 (Christopherson) (maintenance services); Tr. 1165:20-1166:9 (Christopherson) (Lawson does not engage in any intellectual property clearance investigation and has undertaken no efforts since ePlus complaint to redesign accused S3 products); Tr. 1705:23-1706:1, 1706:13-17 (Yuhasz) (implementation services that Lawson provided to Novant Health); Tr. 1707:3-8 (Yuhasz) (maintenance services that Lawson provided to Novant Health); Tr. 744:21-746:1 (Weaver) (implementation services); Tr. 749:3-750:11 (Weaver) (data migration and conversion services); PX-219 (Lawson Response to Scottsdale RFP) at L0108954-55 (implementation services provided by Lawson to Scottsdale); PX-216 (Statement of Work for Jackson Health System) at LE00645374-76 (data migration and conversion services provided by Lawson to Jackson Health); PX-276 (Statement of Work for Deaconess Health System) at L0294103-06 (data migration and conversion services provided by Lawson to Deaconess Health); Tr. 759:2-11 (Weaver) (installation and implementation services for Procurement Punchout); PX-103 (Punchout FAQ) at L0135324 (Punchout installation); Tr. 772:13-773:14 (Weaver) (describing range of services and training provided by Lawson to its customers); Tr. 774:20-775:16 (Weaver) (hosting and implementation services); Tr. 773:15-774:7 (Weaver) (training services); Tr. 774:8-19 (Weaver) (Lawson technical support).

wide range of publications); Tr. 1322:11-18 (Farber) (Gartner recommends reviewing software functionality against litigated patents); PX-325 (Gartner research report discussing *e*Plus patent litigation); Tr. at 1307:6–1310:6, 1327:5-12, 1353:8–1354:8 (Farber) (product marking); PX-448, PX-417 (product marking documents); Tr. 1352:3–1353:7 (press release announcing issuance of '172 Patent). Thus, under the applicable standard for intent, Lawson had actual knowledge of the patents-in-suit or would be deemed "deliberately indifferent" even before the filing of the complaint in this action. *See SEB,* 594 F.3d 1378 (Fed. Cir. 2010) (holding that infringer had actual knowledge of patents even though no direct evidence that infringer was specifically informed of the patents-in-suit).

- Lawson has not asserted advice of counsel in this case. *See Broadcom,* 543 F.3d at 698-700 (holding that absence of advice of counsel is a relevant factor in evaluating intent for inducement).

- As set forth *supra*, the evidence established that the accused configurations of the S3 system meet all the elements of the asserted claims. Lawson's customers use the accused configurations, and "use" is an act of direct infringement. 35 U.S.C. § 271(a). Accordingly, the direct infringement element of the test for inducement of infringement has been met.

- The jury heard ample evidence of Lawson's activities that induce the customers' infringement, including, but not limited to: (i) advertising and marketing of its accused product for infringing uses,[8] (ii) working closely with its customers and instructing them how to engage in infringing uses (and failing to instruct them how to avoid infringing uses after obtaining knowledge of the *e*Plus patents),[9] (iii) demonstrating infringing uses,[10] (iv)

---

[8] *See, e.g.,* Frank Tr. (PX-517) 17:22-18:6 (describing various marketing activities for Lawson ERP solutions); Frank Tr. 33:11-34:2 (Lawson white papers provide specific production information); Frank Tr. 39:22-40:10 (Lawson prepares standard answers to common questions about the features and functionality of its products); PX-118 (Lawson Response to Cherry Creek RFP) at LE00429173, LE00429193, LE00429345, LE00429358; PX-215 (Lawson Response to Jackson Health RFP) at L0096171-72; PX-149 (Lawson Response to Holland Hospital RFI) at L0092767; PX-226 (Lawson Response to Blount Memorial RFP) at L0083416, L0083422; PX-154 (Lawson webpage: Requisitions); PX-153 (Lawson webpage: Procurement Punchout); PX-156 (Lawson webpage: Purchase Order); PX-157 (Lawson webpage: Requisitions Self-Service); PX-129 (Lawson Software e-Procurement: Revolutionizing the Healthcare Supply Chain, a Lawson Software White Paper) at LE00163488-89 (comparing Lawson electronic procurement to traditional procurement).

[9] *See, e.g.,* PX-131 (Requisitions Self-Service Installation Guide); Tr. 577:21-578:7 (Weaver) (explaining purpose of PX-131); PX-211 (Procurement Punchout Installation Guide); PX-97 (Requisitions User Guide); PX-108 (Purchase Order User Guide); Tr. 595:15-19 (Weaver)

desire to profit from sales,[11] (v) working with its customers to train them and install, implement, configure, test, maintain, and service the infringing products.[12] *Grokster,* 545 U.S. at 936-40 (holding that such actions are evidence of intent to induce).

---

(explaining purpose of PX-97); PX-112 (Inventory Control User Guide); Tr. 609:1-6 (Weaver) (explaining purpose of PX-112); Tr. 624:18-629:9 (Weaver) (explaining purpose of Lawson user guides); PX-98 (Requisitions Self-Service User Guide); Tr. 625:10-19 (explaining purpose of PX-98 user guide).

[10] *See, e.g.,* PX-136 (Requisitions Self-Service 8.1, 9.0); Tr. 708:3-21 (Weaver) (explaining purpose of PX-136); PX-101 (Empowering Your People with Lawson Requisitions Self-Service and Procurement Punchout) (demonstrating use of Lawson Procurement Punchout); Frank Tr. 50:21-51:21 (Lawson uses webinars to show customers the features and functionality of Lawson's products); Frank Tr. 74:22-75:21 (Lawson's solutions consultants use demonstration laptops to show customers how its products work).

[11] *See, e.g.,* Tr. 1042:5-25 (Lohkamp) (describing relative revenue at Lawson from licensing, maintenance, and services); Frank Tr. 88:6-89:10; 114:8-117:17 (describing revenues at Lawson associated with licensing, maintenance, and servicing of Lawson software products).

[12] *See, e.g.,* Tr. 936:13-17 (Raleigh) Lawson training services); Tr. 936:18-22 (Raleigh) (project management services); Tr. 936:23-937:1; 940:17-941:10 (Raleigh) (implementation services); Tr. 937:2-10 (Raleigh) (upgrade consulting services); Tr. 937:11-15 (Raleigh) (technical-development services); Tr. 937:16-938:1 (Raleigh) (learning services); Tr. 940:8-12 (Raleigh) (installation services); Tr. 941:16-21, 942:4-24 (Raleigh) (Lawson hosting services); Tr. 941:22-942:3, 942:25-943:23, 945:19-946:6, 946:13-16, 947:15-18, 947:23-948:4, 948:21-949:1, 949:22-950:12, 950:20-951:1 (Raleigh) (Lawson data conversion and migration services); Tr. 952:19-954:14 (Raleigh) (Lawson maintenance services); Tr. 1016:13-16 (Lohkamp) (Lawson manuals and guides provided to customers); Tr. 1016:16-18, 1040:13-24 (Lohkamp) (Lawson training services); Tr. 1022:11-24 (Lohkamp) (Lawson implementation of Procurement Punchout); Tr. 1037:22-1038:4, 1048:4-14 (Lohkamp) (Lawson hosting services); Tr. 1038:18-23 (Lohkamp) (Lawson installation services); Tr. 1040:9-12 (Lohkamp) (Lawson data conversion and migration services); Tr. 1040:25-1041:22 (Lohkamp) (Lawson maintenance services); Tr. 1160:18-1161:5, 1622:18-1623:4, 1623:18-24 (Christopherson) (installation and implementation services); Tr. 1161:6-18 (Christopherson) (Lawson maintenance services); Tr. 1165:20-1166:9 (Christopherson) (Lawson does not engage in any intellectual property clearance investigation and has undertaken no efforts since ePlus complaint to redesign accused S3 products); Tr. 1705:23-1706:1, 1706:13-17 (Yuhasz) (implementation services that Lawson provided to Novant Health); Tr. 1706:18-1707:2 (Yuhasz) (training services that Lawson provided to Novant Health); Tr. 1707:3-8 (Yuhasz) (maintenance services that Lawson provided to Novant Health); Tr. 1707:9-13 (Yuhasz) (user guides that Lawson provided to Novant Health); Tr. 744:21-746:1 (Weaver) (implementation services); Tr. 749:3-750:11 (Weaver) (data migration and conversion services); PX-219 (Lawson Response to Scottsdale RFP) at L0108954-55 (implementation services provided by Lawson to Scottsdale); PX-216 (Statement of Work for Jackson Health System) at LE00645374-76 (data migration and conversion services provided by Lawson to Jackson Health); PX-276 (Statement of Work for Deaconess Health System) at L0294103-06 (data migration and conversion services provided by Lawson to Deaconess

Accordingly, judgment as a matter of law is warranted with respect to inducement of all asserted claims.

### C.      There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With Respect To Contributory Infringement Of The Asserted Claims

Section 271(c) of the Patent Act provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition of a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).  Contributory infringement under Section 271(c) consists of the following elements: (1) an act of direct infringement; (2) the accused product is not a staple article of commerce; (3) the accused infringer engaged in conduct that contributed to another's infringement (*e.g.*, made sales in the United States); and (4) the accused infringer had knowledge of the patent and infringement (*e.g.*, a customer engaged in an act of direct infringement from the accused infringer's sales in the United States).  *DSU,* 471 F.3d at 1303. For contributory infringement, the intent requirement is "minimal."  *Id.*

Evidence showing a lack of any other actual noninfringing use is sufficient to support a finding of a non-staple article of commerce.  *See, e.g.*, *Mentor H/S Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing JMOL of noninfringement

Health); Tr. 759:2-11 (Weaver) (installation and implementation services for Procurement Punchout); PX-103 (Punchout FAQ) at L0135324 (Punchout installation); Tr. 772:13-773:14 (Weaver) (describing range of services and training provided by Lawson to its customers); Tr. 774:20-775:16 (Weaver) (hosting and implementation services); Tr. 773:15-774:7 (Weaver) (training services); Tr. 774:8-19 (Weaver) (Lawson technical support).

because the record did not indicate any other actual use of the device except for the patented ultrasonic liposuction procedure).  Moreover, an infringer cannot escape liability as a contributory infringer merely by embedding an infringing apparatus in a larger product with some additional, separable features before selling it.  *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1321 (Fed. Cir. 2009).[13]

To the extent this allegation requires evidence of Lawson's knowledge or awareness of the patents-in-suit,[14] constructive notice is sufficient.  Actual notice is not required.  *Philips Electronics No. Am. Corp. v. Remote Solution Co., Ltd.,* 411 F. Supp.2d 479, 482-83 (D. Del. 2006) (holding that knowledge element of contributory infringement can be satisfied by "constructive knowledge" and stating "[t]o decide otherwise would allow a party to escape liability by ignoring the facts available to it, a result inconsistent with the purpose of the patent laws.  Thus, the evidence set forth above, such as product marking, is persuasive evidence of constructive notice).[15]  *See SEB,* 594 F.3d at 1378 (characterizing product marking as a form of

---

[13] Thus, in *Lucent*, the accused infringer Microsoft was deemed to have committed contributory infringement through its inclusion of a "date picker tool" within its Outlook software package, notwithstanding Microsoft's argument that the Outlook software package had many non-infringing uses not implicated by the asserted claims.  *Id.* at 1321 ("Inclusion of the date-picker feature within a larger program does not change the date-picker's ability to infringe.").

[14] *See* 35 U.S.C. § 271(c) (requiring that infringing act be committed "***knowing*** the same [component] to be especially made or especially adapted for use in infringement of such patent") (emphasis added).

[15] To be clear, *e*Plus contends, and Defendant has not disputed, that Defendant has had actual notice of the patents-in-suit since no later than the filing of the complaint in this action.  This actual notice more than suffices to form the basis for induced and contributory infringement continuing since that time.  *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.,* 476 F. Supp.2d 1143, 1158 (N.D. Cal. 2007), clarified on denial of reconsideration, 2007 WL 110861 (N.D. Cal. 2007) (denying accused infringer summary judgment of no contributory infringement based on contention that defendant lacked actual notice of patent until served with complaint).  Because Lawson has disputed its "intent," however, *e*Plus should be entitled to show that Defendant's inducement and contributory infringement (and its intent in committing that infringement) predated the filing of the complaint.

constructive notice).  And as with inducement, the jury may reasonably conclude that Lawson knew of an infringing use when it is aware that at least some of its accused product configurations are used in an infringing manner.  *Monolithic Power,* 476 F. Supp.2d at 1158.

Again, the evidence firmly established Lawson's contributory infringement:

First, as set forth above, the evidence established the direct infringement element required for contributory infringement.

Second, as also set forth above, the knowledge element was firmly established.  At a minimum, Lawson concedes it was aware of the patents-in-suit since no later than the filing of the complaint.  *See, e.g.,* Tr. 1152:1-6 (Lohkamp).  Moreover, the facts were more than sufficient to establish Lawson's constructive notice of the patents even before the filing of the complaint, which is all that is required for induced or contributory infringement.  *See supra* at 16-17.

Third, there was simply no evidence from which a reasonable jury could find a legally sufficient evidentiary basis for finding that the accused configurations constitute a "staple article of commerce."  Indeed, as explained by Dr. Weaver, the sole use for the accused configurations was to conduct activities that infringed the patents-in-suit.  Tr. 775:17-776:2, 776:12-23 (Weaver); *see, e.g.*, *Mentor H/S*, 244 F.3d at 1379 (reversing JMOL of noninfringement because the record did not indicate any other actual use of the device except for the patented ultrasonic liposuction procedure).  To the extent Lawson might have argued that substantial non-infringing uses existed when customers performed or contributed certain elements, *e.g.*, the loading of catalog data, Lawson expressly disclaimed any such argument.  Tr. 1497:11-18 (Counsel for Lawson:  "I don't think we're going to dispute now — we don't have to worry about how many customers or whether there was [sic] some that we didn't help load that data.  I don't think this is

an issue."  The Court:  "You're not going to offer evidence on that topic."  Counsel for Lawson: "No, it's not a defense that we're asserting.").

Fourth, as set forth above with respect to inducement, there can be no question that *e*Plus established that Lawson had knowledge of its customers' infringement.  As with inducement, Lawson's deep involvement in (i) advertising and marketing its accused product for infringing uses, (ii) working closely with its customers and instructing them how to engage in infringing uses (and failing to instruct them how to avoid infringing uses after obtaining knowledge of the *e*Plus patents), (iii) demonstrating infringing uses, and (iv) working with its customers to train them and install, implement, configure, test, maintain, and service the infringing products, clearly demonstrates the requisite knowledge.  *See supra* at 17-18.  Judgment as a matter of law is therefore appropriate with respect to contributory infringement of all asserted claims.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, and based on the full evidentiary record at trial, *e*Plus respectfully moves for judgment as a matter of law that Lawson infringes all the asserted claims of the patents-in-suit, both directly and/or indirectly (and both through inducement of infringement and/or contributory infringement), and further requests that the Court deny Lawson's motion for judgment as a matter of law of non-infringement.  Lawson has been fully heard on the infringement issues, and a reasonable jury would not have a legally sufficient evidentiary basis to find for Lawson as to its infringement of asserted claims 3, 26, 28, and 29 of United States Patent No. 6,023,683 (or, "the '683 Patent"); claims 1, 2, 6, 9, 21, 22, and 29 of United States Patent No. 6,055,516 (or, "the '516 Patent"); and claim 1 of United States Patent No. 6,505,172 (or, "the '172 Patent").

Respectfully submitted,


January 23, 2011

_____/s/_____
David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com


Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff ePlus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com


Michael G. Strapp *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com


Attorneys for Plaintiff, *e*Plus inc

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of January, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT OF A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 50(a) AND 35 U.S.C. § 271(a), (b), AND (c) ), AND IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com
*Counsel for Defendant Lawson Software, Inc.*

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*


_____
*/s/*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com