# EXHIBIT 3

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF VIRGINIA

 3                         RICHMOND DIVISION

 4

 5      ----------------------------------------
                                                :
 6       ePLUS, INC.                            :    Civil Action No.
                                                :    3:09CV620
 7       vs.                                    :
                                                :
 8       LAWSON SOFTWARE, INC.                  :    January 14, 2011
                                                :
 9      ----------------------------------------

10

11             COMPLETE TRANSCRIPT OF THE JURY TRIAL

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13          UNITED STATES DISTRICT JUDGE, AND A JURY

14
        APPEARANCES:
15
        Scott L. Robertson, Esquire
16      Michael G. Strapp, Esquire
        Jennifer A. Albert, Esquire
17      David M. Young, Esquire
        Goodwin Procter, LLP
18      901 New York Avenue NW
        Suite 900
19      Washington, D.C.  20001

20      Craig T. Merritt, Esquire
        Christian & Barton, LLP
21      909 East Main Street
        Suite 1200
22      Richmond, Virginia  23219-3095
        Counsel for the plaintiff
23

24                      Peppy Peterson, RPR
                        Official Court Reporter
25                   United States District Court
```

1  A    No.
2  Q    Because you didn't talk to anybody at Lawson,
3  right?
4  A    If I had, I don't think I would have brought up
5  the Court's claim construction with them.
6  Q    Well, if you saw a lot of documents that were
7  using the term "catalog," wouldn't you be at least
8  curious as to whether or not that satisfied the
9  Court's claim construction when they used had term?
10 A    No, because terms are frequently used in a way
11 that's different from the way they are construed in a
12 particular patent.
13 Q    Sure.  And sometimes they are used as they are
14 construed in a particular patent, aren't they?
15 A    It can occur.
16 Q    But you didn't make that inquiry, right?
17           THE COURT:  He's already answered that
18 already.
19           MR. ROBERTSON:  I'll move on.
20 Q    Can we take a look at the Court's claim
21 construction for "catalog"?  I understood you to say
22 yesterday that an organized collection of items and
23 associated information was -- I think you said the
24 item master there is certainly an organized collection
25 of items and associated information in the item

1  master.  So that prong of the construction would be
2  satisfied?
3  A    Yes.
4  Q    Then you also testified that the item master can
5  have information in it such as part number, price,
6  catalog number, vendor name, vendor ID, a textual
7  description of the item, and images that were relating
8  to the item.  You know that the item master didn't
9  have that kind of data, right?
10 A    I didn't mention images, but I mentioned some of
11 the others.
12 Q    You do know that the Lawson software is capable of
13 including images of the item, right?
14 A    I actually didn't know one way or the other.
15 Q    You didn't investigate that?
16 A    No.
17 Q    So if that is evidence in the record that they
18 can, that wouldn't affect your opinion one way or the
19 other?
20 A    No.
21           MR. McDONALD:  Objection.  Lack of
22 foundation.
23           THE COURT:  Overruled.
24 Q    So you'd agree with me also that you faithfully
25 applied the Court's construction for vendor to include

1  electronically produced catalog from a vendor, right?
2  A   It may or may not be.  That may be true for some
3  catalogs.
4  Q   Did you make any investigation into that?
5  A   Well, I know what the structure of item master is.
6  And item master has fields, some of which are in
7  vendor catalogs and some of which are not in some
8  vendor catalogs.  And if there's a field in a vendor
9  catalog for which there's no place in item master, it
10 cannot be imported into item master.
11 Q   Does it have to import all the fields?
12 A   No.
13 Q   The Court's claim construction made clear that
14 some of the data about the item is just preferably but
15 not necessarily; isn't that right?
16 A   Correct.
17 Q   So it doesn't even have to include all the things
18 that the Court identifies in its construction, right?
19 A   I never assumed it did have to include those.
20 Q   But you have seen in the item master this kind of
21 data, haven't you?  Part number, price, catalog
22 number, vendor name, vendor ID, textual description of
23 the item?
24 A   Yes.
25 Q   Now, you know that a system or device that is

1  A    If the proposition is that --
2  Q    Can you answer that question fairly yes or no?
3           THE COURT:  Just a minutes.  Listen to the
4  question he asked and answer that question.
5           THE WITNESS:  Okay.
6  A    Could you repeat it?
7  Q    Sure.  If the user who's populating the fields
8  with information, price, unit of measure, textual
9  description also uses one of these user created fields
10 and enters a vendor name, you could search by that
11 vendor name; isn't that right?
12 A    Yes.  You could search by that vendor name, but --
13 Q    That's fine.  You have answered the question.
14      Now, let me ask you this:  If I had two
15 catalogs -- just assume I have two catalogs in the
16 item database, the item master, a Home Depot catalog
17 and a Dell computer catalog, right?  And just assume
18 for purposes of my question that Home Depot is not
19 selling computers, all right?
20 A    Yes.
21 Q    If I type in a keyword "laptop," I'm not going to
22 get any catalog data from Home Depot, am I?
23 A    Not if they don't have any laptops.
24 Q    I'm going to get laptops from the Dell computer,
25 correct?

1  that the data about items available from different
2  vendors can be loaded into the Lawson software,
3  correct, that item master?
4  A   Yes.
5  Q   And you would agree, sir, that the Lawson item
6  master can contain data associated with multiple
7  vendors, correct?
8  A   Data associated with items from multiple vendors,
9  yes.
10 Q   And you understand that in the Lawson's accused
11 systems, there's a link between the Lawson items in
12 the item master table and vendor items in the vendor
13 item tables, correct?
14 A   Yes.
15 Q   And the vendor item links and the item master
16 record, which can be a non-stock item or a vendor item
17 to a specific vendor, correct?
18 A   Yes.
19 Q   And you'd agree that data that is imported into
20 the item master may have originated from a number of
21 different sources including a vendor catalog for the
22 customer itself, correct?
23 A   Yes.
24 Q   And you understand that there are many instances
25 where Lawson personnel load catalog data into the

SHAMOS - CROSS                          1911

1  case?

2  A    Yes.

3  Q    If you'll turn to the second page of Plaintiff's

4  Exhibit 522, at the top you see there there's a new

5  feature called the vendor catalog load?

6  A    Yes.

7  Q    And the description that Lawson provided was "New

8  functionality has been added to electronically load a

9  vendor file which contains vendor item, unit of

10 measure, and unit price information into the purchase

11 order application."  Do you see that?

12 A    Yes.

13 Q    That's the representation that Lawson made was

14 part of the new functionality of this accused 8.0.3

15 procurement system, correct?

16 A    Well, it's a statement that they have made in

17 their documentation.

18 Q    The price information and the unit of measure,

19 that's some of the elements that are in the Court's

20 claim construction for "catalog," correct?

21 A    Yes.

22 Q    You talked a little bit about this UNSPSC

23 classification codes.  Do you recall that?

24 A    Yes.

25 Q    And you referred to a white paper; is that right,

                        SHAMOS - CROSS                    1912

 1  sir?
 2  A    Yes.
 3  Q    Can I have Plaintiff's Exhibit No. 11, please.
 4            THE CLERK:  Are we talking about Plaintiff's
 5  Exhibit 11?  Is that what you said?
 6            MR. ROBERTSON:  Yes.
 7            THE CLERK:  Thank you.
 8  Q    Is this the white paper you were referring to when
 9  you gave your testimony on direct?
10  A    Well, I think it is.
11  Q    This is a white paper concerning the UNSPSC,
12  correct?
13  A    Oh, it is.  I'm just looking to see whether it's
14  the same one, and I'm not actually sure that it is.
15  Q    Why don't you take a look at the page that ends
16  with the Bates label 044.
17  A    Yes.
18  Q    That's the --
19  A    I have no reason to dispute that this is the one.
20  I could check against my report.  I could check the
21  Bates number, but I'm not disputing it.
22  Q    I understand.  But that's the example you used in
23  your demonstratives; isn't that right, sir?
24  A    Yes.
25  Q    And we can both agree that Granada Research is an

1  Q   When searching or sorting the database, the
2  program uses the index rather than the full database;
3  isn't that a correct statement?
4  A   Well, it makes use of the index.
5  Q   So it uses the index rather than the full
6  database?
7  A   Well, no.  It uses the full database.  It doesn't
8  look at every record in the entire database.
9          MR. ROBERTSON:  Can we put up slide 15.  It's
10 093R07, page 5.
11 BY MR. ROBERTSON:
12 Q   Do you recognize the Microsoft Computer
13 Dictionary, correct?
14 A   Well, this is Webster's New World Computer
15 Dictionary, but I do recognize Microsoft Computer
16 Dictionary.
17 Q   Webster's New World Dictionary also is a computer
18 dictionary, correct?
19 A   Yes.
20 Q   And you'd agree that you didn't author that,
21 correct?
22 A   I certainly agree with that.
23 Q   And Dr. Weaver didn't author that, did he?
24 A   I don't know.
25 Q   Well, it says when searching or sorting the

1  database here, the program uses the index rather than
2  the full database; is that right?
3  A   Yes.  Well, I think that's a colloquialism as to
4  what "use" means.
5  Q   It's supposed to be a definition in a dictionary,
6  isn't it?
7  A   Well, it supposed to be.
8  Q   So you disagree with it?
9  A   I think I disagree with the interpretation of it.
10 This is designed to give somebody who looks at this
11 dictionary an understanding of what an index is.  I
12 don't think it's a precise definition, for example, at
13 the level of the Courts construction.
14     The index is used so that you don't have to look
15 at every individual record in the entire database, but
16 the index indexes the entire database.  So you can by
17 looking in the index determine, for example, if an
18 item is not in the entire database.  You can tell that
19 by looking in the index.  And if it is in the
20 database, then the index will tell you where to go to
21 find it.
22 Q   So you don't go through the whole database, you
23 just go to where the pointer is that the index is
24 telling you to go to?
25 A   Depends.

1  Q    In that file record?
2  A    That's right.
3  Q    Thank you.  Why don't we take a look at slide 100,
4  if we could.  This is talking about an indexed
5  sequential access method.  Do you see that?
6  A    Yes.
7         MR. McDONALD:  I object this.  It's outside
8  the scope and cumulative and wasting time.
9         MR. ROBERTSON:  There's a lot of discussion
10 on what an index search is and whether it searches
11 selected portions of the database.
12        MR. McDONALD:  Not under the sequential
13 access method.
14        THE COURT:  I'm going to overrule the
15 question until I hear a question other than do you
16 recognize.  I think the question was is it an index
17 sequential access method that's being described, so I
18 don't know what the question is yet really.
19 BY MR. ROBERTSON:
20 Q    Is that what is being described here and defined?
21 A    Yes.
22 Q    And this index search we're talking about in the
23 Lawson software is this kind of sequential access
24 method, correct?
25 A    I don't think it is, no.

1            THE COURT:  Do you have a copy of his report
2   for him?
3            MR. ROBERTSON:  Yes, sir.
4            THE COURT:  What paragraph?
5            MR. ROBERTSON:  Paragraph 134, on page 40.
6            THE COURT:  Page 40, paragraph 134, Dr.
7   Shamos, is what he's going to ask you about.
8   BY MR. ROBERTSON:
9   Q    You indicate here that as a hypothetical
10  proposition, it's possible in a sense to avoid
11  searching an entire database each time by creating
12  indexes that allow particular records containing
13  specific data to be located quickly.  Did you say that
14  in that your report?
15  A    Yes, it says "in a sense."
16  Q    Thank you.  You also said in this regard, a
17  database index is similar to the index of a book which
18  makes it unnecessary to scan the entire book to locate
19  the occurrence of a word each time a search is
20  performed, correct?
21  A    Yes.
22  Q    With respect to the Punchout functionality and
23  Punchout procurement, you understand that when the
24  customer is using that functionality with the
25  requisition self service module, they're operating

1  A    The phrase I'm having trouble with is
2  "communication protocols."
3             THE COURT:  You do not know what they are?
4             THE WITNESS:  I know what they are.
5             THE COURT:  Do you not know what he means?
6             THE WITNESS:  I think I know what he means,
7  but I think it's different from what he said.
8  BY MR. ROBERTSON:
9  Q    What do you understand communication protocols to
10 mean?
11 A    Well, you can't create communication protocols
12 over the Internet.  You have to use standardized
13 communication protocols.
14      If what you mean is Lawson's facility have the
15 ability to connect to the vendors so that you can
16 search the vendor's website, the answer is yes.
17 Q    And law also creates those protocols to return the
18 data from a vendor for inclusion into a requisition
19 and then a purchase order; isn't that right?
20 A    I'll have a lot easier time if we don't use the
21 word "protocols."  Just say mechanism and I'll agree
22 with you.
23 Q    Well, Lawson creates that mechanism?
24 A    Yes.
25 Q    Are you familiar with the term handshake used in

1  recall that?

2  A    Yes.

3  Q    Can we go to the page 5 of the glossary, the means

4  for selecting product catalogs to search?

5       You were asked about this particular claim element

6  in Claim Three of the '683 patent?

7  A    Yes.

8  Q    One of the structures the Court indicated there is

9  a user interface that allows the user to select a

10 catalog, do you see that?

11 A    Yes.

12 Q    If in one of those user defined fields, I had the

13 vendor name, the Lawson software presents a user

14 interface that would allow me to select that vendor in

15 that field, correct?

16 A    If you -- yes, in a sense.

17 Q    Thank you.  Also in this claim construction, the

18 Court indicated that the structure, corresponding

19 structure, is what's described, and at the end he

20 indicates "and their equivalents," do you see that?

21 A    Yes.

22 Q    You weren't asked by Mr. McDonald about the

23 equivalents, were you?

24 A    No.

25 Q    If you'll go to page 3, the means for generating