# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| *e*PLUS Inc., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-CV-620 (REP) |
| ) | |
| v. ) | |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF *e*PLUS INC.'S FIRST SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANT LAWSON SOFTWARE, INC.'S FIFTH SET OF INTERROGATORIES (Nos. 19-20)

Pursuant to Fed. R. Civ. P. 33 and Local Rule 26(c), Plaintiff *e*Plus inc. ("*e*Plus" or "Plaintiff"), by and through its attorneys, hereby further objects to and answers the Fifth Set of Interrogatories ("Interrogatories") served by Defendant Lawson Software, Inc. ("Defendant" or "Lawson") upon *e*Plus.

## GENERAL OBJECTIONS

*e*Plus makes the following General Objections, whether or not separately set forth in response to each Interrogatory, to each and every instruction, definition, and question posed in the Interrogatories:

1.      *e*Plus objects to Defendant's Fifth Set of Interrogatories, including the Definitions and Instructions, to the extent they seek to impose discovery obligations beyond those imposed by the Local Rules of the United States District Court for the Eastern District of Virginia, the Federal Rules of Civil Procedure, and/or other applicable law.

2.      *e*Plus objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, unreasonably cumulative or duplicative, seek information that is more conveniently or less expensively obtained from another source, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

3.      *e*Plus objects to the Interrogatories to the extent that they seek information that is protected by the attorney-client privilege, work product doctrine and/or any other applicable privilege or immunity from discovery, including any jointly held privilege, or otherwise not properly subject to discovery under the Federal Rules of Civil Procedure.  Documents and information subject to such claim of privilege will not be produced in connection with Defendant's discovery requests, and any inadvertent production of such documents or information shall not be deemed a waiver of any applicable privilege.

4.      *e*Plus objects to the Interrogatories to the extent that they seek information that does not exist, or that is not reasonably available to or within the knowledge, possession, custody, or control of *e*Plus.

5.      *e*Plus objects to the Interrogatories to the extent that they seek information that is already within the knowledge of Defendant or that is readily accessible to Defendant, as through public sources.

6.      *e*Plus objects to each Interrogatory to the extent that it is duplicative of other discovery to be produced in this case or seeks information which is more easily available through other, less burdensome means.

7.      *e*Plus objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter of this action or to a claim or defense of any party and/or is not reasonably calculated to lead to the discovery of admissible evidence.

LIBW/1736914.1

8.      *e*Plus objects to the Interrogatories to the extent that they fail to describe the requested information with reasonable particularity, are indefinite as to time or scope or otherwise not limited to a time frame relevant to this litigation and to the patents-in-suit, and are therefore unduly burdensome, oppressive, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      *e*Plus objects to the Interrogatories to the extent that they seek information which, if furnished, would violate any domestic or foreign judicial order, protective order or stipulation of confidentiality entered with respect to such information.

10.      *e*Plus objects to the Interrogatories to the extent that they require a legal conclusion.

11.      *e*Plus objects generally to each Interrogatory, Definition and Instruction to the extent that it purports to characterize the pleadings, claims or factual matters in or involving this matter.

12.      *e*Plus objects to each Interrogatory, Definition or Instruction to the extent it is unlimited in time or otherwise not limited to a time frame relevant to this litigation.

13.      *e*Plus objects to the Definition of "*e*Plus," "You," "Your" and "Plaintiff" as overly broad and unduly burdensome to the extent that each definition improperly includes persons or entities not within *e*Plus's control, and/or who are otherwise not within the scope of discovery contemplated by the Federal Rules of Civil Procedure.  *e*Plus further objects to Defendant's definition of "*e*Plus" as overly broad and unduly burdensome to the extent that such definition covers subsidiaries or other related companies whose information and documents are neither relevant to the subject matter of this action nor likely to lead to the discovery of admissible evidence.

-3-

14.     *e*Plus objects to the Instruction in Paragraph 31 of Defendant's Interrogatories to the extent it seeks to impose discovery obligations beyond those imposed by the Local Rules of the United States District Court for the Eastern District of Virginia, the Federal Rules of Civil Procedure, and/or other applicable law. *e*Plus further objects to this Instruction as overly broad and unduly burdensome.

15.     *e*Plus objects to the Definition of "electronic data" to the extent it seeks to impose discovery obligations beyond those imposed by the Local Rules of the United States District Court for the Eastern District of Virginia, the Federal Rules of Civil Procedure, and/or other applicable law. *e*Plus further objects to this Instruction as overly broad and unduly burdensome. *e*Plus further objects to the Definition of "document" and "documents" to the extent it incorporates the Definition of "electronic data."

16.     *e*Plus objects to the Definition of "Defendant" and "Defendants" as vague, ambiguous, overly broad, and unduly burdensome.

17.     *e*Plus objects to the Definition of "Fisher Scientific" as vague, ambiguous, overly broad, and unduly burdensome.

18.     *e*Plus objects to the Definition of "Prior Art" to the extent it is overbroad and inconsistent with the meaning of that term under the Patent Act and to the extent the Interrogatories incorporating this Definition call for a legal conclusion.

19.     *e*Plus objects to the Definition of "accused product(s)" as vague and ambiguous.

20.     *e*Plus objects to the Definition of "sale" as vague and ambiguous and to the extent it is inconsistent with the meaning of that term under the Patent Act and/or controlling legal precedent and to the extent the Interrogatories incorporating this definition call for a legal conclusion.

-4-

21.     *e*Plus objects to the Definition of "infringe" and conjugations thereof to the extent it is overbroad and inconsistent with the meaning of that term under the Patent Act and controlling legal precedent and to the extent the Interrogatories incorporating this Definition call for a legal conclusion.

*e*Plus expressly incorporates each of the foregoing General Objections into each of the Specific Objections set forth below.  No response to an Interrogatory shall be understood as, nor is it intended to be, a waiver of any General Objection or any Specific Objection that may be separately stated with respect to any response.  Nor shall any response to an Interrogatory be deemed to constitute any agreement or concession that the subject matter thereof is relevant to this action.

All of the responses set forth below are made without waiving or intending to waive any objection, including but not limited to objections as to competency, relevancy, materiality, authenticity, privilege, or admissibility.  *e*Plus reserves the right to revise or supplement its responses to the Interrogatories at any time should additional responsive information be discovered and/or additional claims be asserted.  *e*Plus also reserves the right to assert additional objections at any time.

## SPECIFIC OBJECTIONS AND ANSWERS

### INTERROGATORY NO. 19:

Describe in detail on a limitation-by-limitation basis for each prior art reference listed below, which limitation(s) of claims 3, 6, 26, 28 and 29 of U.S. Patent No. 6,023,683, claims 1, 2, 6, 9, 21, 22, and 29 of the U.S. Patent No. 6,055,516, and claim 1 of U.S. Patent No. 6,505,172, *e*Plus contends are not disclosed in, are not taught by, or are not obvious based on the prior art reference, state all facts and identify all documents that support *e*Plus's contention, and identify all persons with knowledge about such contention.  *e*Plus's [sic] must respond with respect to each of the following:

A. the Fisher RIMS system;

B. U.S. Patent No. U.S. Patent No. 5,712,989;

C. Lawson software available prior to August 10, 1994;

D. Lawson Requisitions Procedures Manual (L0012554—L0012599);

E. Lawson Inventory Control Procedures Manual (L0012837—L0013145);

F. Lawson Purchase Order Procedures Manual (L0013146—L0013295);

G. Lawson Purchase Order User Text (L0015615—L0016422);

H. U.S. Patent No. 5,319,542;

I. U.S. Patent No. 5,694,551;

J. the P.O. Writer system;

K. the P.O. Writer Manual (L0126148—L0127601);

L. the SABRE system;

M. A Practical Guide to SABRE Reservation and Ticketing (L0125223 — L0125723);

N. Reservation and Ticketing with SABRE (L0125725—L0126046);

O. SABRE Total Access (L0126048—L0126103);

P. SABRE Savvy (L0126106—L0126146);

Q. the J-CON system;

R. the J-CON Manual (L0123414—L0124584);

S. the J-CON System User's Manual (L0124586—L0125034);

T. The J-CON/RDB Guide (L0125036—L0125221);

U. the Gateway system;

V. the Gateway 2000/MRS System manual (L0127603—L127886);

W. TSA Gateway Purchasing Manual (L0127887—L0128208);

X. TSA Gateway Inventory Process User Manual (L0128209 — L0128356);

Y. TSA Gateway DOS Product Overview (L0128368 — L0128395);

Z. the IBM TV/2 system;

AA. IBM Technical Viewer/2 General Information Manual (L0132122—L0132130); and

BB. IBM Technical View/2 brochure (L0132131 — L00132134).

## OBJECTIONS:

*e*Plus objects to this Interrogatory to the extent that it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine. *e*Plus also objects to this Interrogatory as overly broad and unduly burdensome. *e*Plus further objects to this Interrogatory to the extent that it seeks information that is within the possession of Defendant.

*e*Plus objects to this Interrogatory as prematurely seeking expert discovery. *e*Plus will provide its validity contentions regarding the patents-in-suit in accordance with the schedule for expert discovery set forth in the Court's Scheduling Order. *e*Plus further objects to this Interrogatory to the extent it seeks to shift Lawson's burden of proof to *e*Plus.

Additionally, *e*Plus objects to this Interrogatory as vague and ambiguous. First, it is unclear what specific system, version thereof and release dates are requested for certain of the alleged prior art references, *e.g.*, "the Fisher RIMS system," "the IBM TV/2 system," "the J-CON system," etc. Each of these systems evolved over a period of time and had different features, components and functionality over time. Second, Lawson's initial invalidity claim charts are so vague as to Lawson's allegations concerning the alleged prior art references purported teachings as to preclude rebuttals from *e*Plus.

*e*Plus further objects to this Interrogatory as, in and of itself, exceeding the number of interrogatories permitted.

Subject to and without waiver of its General and Specific Objections, *e*Plus will provide a response to this Interrogatory.

## ANSWER TO INTERROGATORY NO. 19

Subject to the forgoing objections, *e*Plus responds as follows. The burden of proof

-7-

regarding invalidity of the U.S. Patent Nos. 6,023,683; 6,055,516; and 6,505,172 ("the Patents-in-Suit") belongs to Lawson, and Lawson cannot impermissibly shift its burden of proof to ePlus via this interrogatory. ePlus further responds that claims 3, 6, 26, 28 and 29 of U.S. Patent No. 6,023,683 ("the '683 Patent"), claims 1, 2, 6, 9, 21, 22, and 29 of the U.S. Patent No. 6,055,516 ("the '516 Patent"), and claim 1 of U.S. Patent No. 6,505,172 ("the '172 Patent") are not invalidated (i.e., either by anticipating or rendering obvious, either alone or in combination, pursuant to 35 U.S.C. §§ 102 and/or 103) by the references cited above because such references do not disclose each of the claim elements of the Patents-in-Suit either expressly or inherently.

With respect to U.S. Patent No. U.S. Patent No. [sic] 5,712,989 ("the '989 patent"), ePlus notes that the '989 patent was invented by two of the inventors of the Patents-in-Suit and was incorporated by reference into the specification of the Patents-in-Suit. The '989 Patent does not constitute prior art to the Patents-in-suit since it is not an invention "by another." Moreover, the Patent and Trademark Office considered the '989 patent and allowed the claims of the Patents-in-Suit over the '989 patent. In addition, the validity of the claims of the Patents-in-Suit over the '989 patent was reaffirmed following trial to a jury in the *ePlus, Inc. v. Ariba, Inc.* litigation.

The '989 patent describes a system for replenishing and managing a customer's JIT inventory. It discusses a hierarchy of distribution centers wherein there is a Distributor site and a customer site. The system includes two computers; a host computer located at the Distributor site and a local computer used by a Customer Service Representative ("CSR") for Distributor at the customer's facility. The two computers are linked in a network. The Distributor has the customer's inventory at the Distributor site and also has co-located inventory at the customer's site. The CSR can search a local database that contains records of the items currently stored in the local JIT inventory at the customer's facility and can generate a local requisition on the local

-8-

computer. If the item is available in the local inventory, then the CSR will source that item from the local inventory and update the local inventory record. If the item is not available in the inventory located at the customer's facility, the local computer can communicate to the host computer and transmit a request to transfer the item from the Distributor's facility to the customer location and will update both inventory records for the inventory at the Distributor's site and at the customer's site.

Although the system described in the '989 patent has databases associated with the local and host computer, these databases are not the same as the vendor catalogs and catalog databases described and claimed in the Patents-in-Suit. The item records in the databases do not relate to products being offered for sale by vendors. They relate to items that are already owned by the customer. And there is no concept of multiple vendors. All items are sourced by the single Distributor. Nor does a user ever make a selection of catalog databases or product catalogs to search from a choice of multiple catalog databases or product catalogs. The CSR at the local computer can only search the local database and the user of the host computer can only search the host computer's database. The customer's system can build a requisition, but only to requisition items from the customer's local inventory. If the item is not available in the customer's local inventory, then a transfer request is sent to the host computer to transfer the item from the customer's inventory at the Distributor's site. This is not the same as sending a purchase order to a vendor to purchase an item. If the Distributor does not have the item at its facility, it can place an order, but the customer's system never places a purchase order. Moreover, there is no description of the CSR being able to conduct a search of a vendor product catalog to locate a desired item and being able to retrieve matching items from a product catalog using a search engine program, or being able to retrieve a generally equivalent item from the

-9-

search by means of cross-reference table functionality.

With respect to Lawson's reference to specific Lawson documents by Bates numbers (i.e., "Lawson Requisitions Procedures Manual" (L0012554—L0012599), "Lawson Inventory Control Procedures Manual" (L0012837—L0013145), "Lawson Purchase Order Procedures Manual" (L0013146—L0013295), and "Lawson Purchase Order User Text" (L0015615—L0016422), *e*Plus again states that the burden of proof rests with Lawson to establish the invalidity of the Patents-in-Suit by clear and convincing evidence. Lawson's invalidity contentions as set forth in Lawson's Response to *e*Plus's Interrogatory No. 4 provide no explanation why Lawson believes that these documents potentially qualify as prior art.

Furthermore, the Lawson manuals cited by Lawson, either alone or in combination, do not disclose each of the elements of any of the claims of the Patents-in-Suit either expressly or inherently. For example, none of these references disclose at least two product catalogs containing data relating to items associated with at least two sources. None of the portions of these references cited by Lawson in its invalidity contentions disclose a database associated with at least two sources that would allow performing a search for an item from at least two vendors. Moreover, the citations provided by Lawson in its invalidity contentions with respect to these manuals do not support the propositions for which they are cited. For example, pages L0013209-13210 of the Purchase Order Procedures manual do not describe a requisition process, contrary to Lawson's contentions. *See* Christopherson Dep. at 411:13-413:6. Page L0009741 of the Requisitions Procedure Manual does not describe a process of building a requisition using data related to selected matching items and their associated sources, contrary to Lawson's contentions, as Lawson's 30(b)(6) representative acknowledged. Christopherson Dep. at 413:11-417:3. Page L0013226 of the Purchase Order Procedures manual does not describe the process

-10-

of building a requisition using matching item results of a search of a product catalog as Lawson contends.  Rather, it describes a process of a user manually creating a purchase order, as Lawson's 30(b)(6) representative acknowledged.  Christopherson Dep. at 417:4-418:4.  Lawson has presented no evidence that any Lawson system available prior to August 10, 1994 invalidates any of the asserted claims of the *e*Plus patents.

With respect to U.S. Patent No. 5,319,542 ("the King patent"), *e*Plus notes that the King patent was considered by the Patent Examiner during the prosecution of the application that became the '683 Patent.  Thus, the Patent and Trademark Office considered the King patent and allowed the claims of the '683 patent over the King patent.  Nor does the King patent disclose a system that includes each and every element of any of the claims of the Patents-in-suit, either expressly or inherently.  For example, although the King patent could generate a requisition, the requisition may be for a single item only.  There is no description of multi-line requisitions. Thus, there is no means for generating multiple purchase orders from a single requisition disclosed.  Nor is there any means described for determining whether an item is available in a supplier's inventory.  The King patent also fails to disclose a database that is maintained in a manner so that selected portions may be searched separately.

With respect to U.S. Patent No. 5,694,551 ("the Doyle patent"), this patent relates to a data processing network to handle aspects of customer orders that are channeled to a central supplier and filled by departments of the central supplier or by outside vendors, as determined by the central supplier.  The central computer at the central supplier's location handles the data processing requirements for customer orders, routes those orders to appropriate departments within the central supplier or to outside vendors, handles the delivery of the ordered products to the customers, handles all aspects of invoicing and payment and performs customer assistance

-11-

functions.  The central supplier's computer system, rather than the customer's computer system, processes requisition item information and segregates that information into an order to be fulfilled by the central supplier or by individual vendors.[1]  Thus, the system described in the Doyle patent is not an electronic sourcing system at all, because the central supplier, rather than the customer, makes all sourcing determinations for a customer's requirements.

The Doyle patent does not disclose each of the elements of any claim of the Patents-in-Suit either expressly or inherently.  For example, there is no teaching or suggestion of the ability of the customer to search a database for items associated with multiple vendors or to select particular vendors to source desired items.  Using the system disclosed in the Doyle patent, the central computer at the central supplier's facility receives requisitions created on the customer's computer, rather than providing means by which customers may search for matching items of multiple suppliers, generate an order list, build a requisition and process the requisition to generate purchase orders to different suppliers.  The Doyle patent instead discloses a system that would operate such that once the customer submits a requisition to the central supplier, the customer is out of the loop.  The customer has no capability to decide from which vendor he wishes to purchase a desired product.  Moreover, the system disclosed in the Doyle patent only includes a single item catalog accessible to a customer and that item catalog does not include an indication of multiple sources from which items may be sourced.  The sourcing determinations cannot be made by the customer, but rather must be performed by the central computer at the central supplier's facility.[2]  For these reasons, the jury in the *Ariba* litigation found the claims of the Patents-in-suit valid over this reference

With regard to the P.O. Writer Manual (L0126148—L0127601), this reference does not

---

[1] *See, e.g.*, Col. 3:59-Col. 4:20.

LIBW/1736914.1

disclose each of the elements of any claim of the Patents-in-Suit either expressly or inherently. For example, the system disclosed in the P.O. Writer Manual is not capable of selecting among at least two catalogs and searching therein for matching items from which a requisition can be built and a purchase order generated. The system cannot be used by a prospective buyer to search for and find goods in vendor product catalogs and to select which source or vendor from which to build a requisition and issue a purchase order from the results of such searched and matched item(s). Moreover, the system does not enable product comparison by use of cross-reference tables. The system also does not have any means to determine the availability of a catalog item in a supplier's inventory.

With regard to the SABRE documents referenced by Lawson, *i.e.*, Practical Guide to SABRE Reservation and Ticketing (L0125223—L0125723), Reservation and Ticketing with SABRE (L0125725—L0126046), SABRE Total Access (L0126048—L0126103), and SABRE Savvy (L0126106—L0126146), these references, either alone or in combination, do not disclose each of the elements of any claim of the Patents-in-Suit either expressly or inherently. For example, the SABRE documents do not disclose "an electronic sourcing system" in accordance with the claims of the Patents-in-Suit. The SABRE system was an airline reservation system. The SABRE documents do not disclose a system that can be used "to locate and find items to purchase from sources, suppliers, or vendors." No purchase was accomplished via the SABRE system. The system was used to make reservations. The SABRE documents also do not disclose a purchasing system, or a "sourcing" system for use by a prospective purchaser. Furthermore, the documents relating to the SABRE system do not disclose any means for building a requisition or any means for generating a purchase order.

---

[2] *See, e.g.*, Doyle Patent, Col. 5:21-36.

LIBW/1736914.1

With regard to the J-CON documents referenced by Lawson, *i.e.*, the J-CON Manual (L0123414—L0124584), the J-CON System User's Manual (L0124586—L0125034), and the J-CON/RDB Guide (L0125036—L0125221), these references, either alone or in combination, do not disclose each of the elements of any claim of the Patents-in-Suit either expressly or inherently.  For example, none of the J-CON documents disclose an "electronic sourcing system."  These documents disclose a retail-oriented sales and inventory system rather than a purchasing or sourcing system.  Such a system could not be used by a prospective customer to locate and find goods in multiple vendor product catalogs and to select which source or vendor from which to make a purchase of an item.  Such a system could not be used by a prospective customer to build requisitions or generate purchase orders.

With regard to the Gateway documents referenced by Lawson, *i.e.*, the Gateway 2000/MRS System Manual (L0127603—L127886), the TSA Gateway Purchasing Manual (L0127887—L0128208), the TSA Gateway Inventory Process User Manual (L0128209—L0128356), and the TSA Gateway DOS Product Overview (L0128368—L0128395), these references, either alone or in combination, do not disclose each of the elements of any claim of the Patents-in-Suit either expressly or inherently.  For example, none of the Gateway documents describe an "electronic sourcing system" that could be used by a prospective buyer to locate and find goods in vendor product catalogs and to select which source or vendor from which to make a purchase of a requested item.  Moreover, none of the Gateway documents disclose a system enabling product comparison by use of cross-reference tables or having any means for determining the availability of an item in a supplier's inventory.

With respect to the IBM Technical Viewer/2 General Information Manual (L0132122—L0132130) and the IBM Technical View/2 brochure (L0132131—L00132134), *e*Plus notes that

-14-

these references were disclosed to the Patent and Trademark Office during prosecution of the applications that became the Patents-in-Suit. Thus, the Patent and Trademark Office considered these references and allowed the claims of the Patents-in-Suit over them. Moreover, the search engine disclosed in the cited documents fails to satisfy any element of any of the asserted claims of the Patents-in-suit.

## FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 19

The burden of proof rests with Lawson to establish the invalidity of the patents-in-suit by clear and convincing evidence. Lawson's supplemental invalidity contentions fall well short of meeting this burden and fail to present a *prima facie* case of invalidity that requires a response from *e*Plus. The multiple references cited by Lawson fail to expressly or inherently teach or suggest numerous claim elements. For example, Lawson fails to establish that its numerous documents should be treated as a single anticipating item of prior art. Lawson also improperly combines multiple systems and then discusses the combined references as if they were a single product. This contention is factually incorrect and Lawson has failed to support it with evidence. In addition, Lawson improperly combines references regarding systems from vastly different time periods. Lawson has failed to establish that the features and operation of each of these systems was static over the time period spanned by the references and documents cited, if any. Moreover, to the extent that Lawson asserts that the claims are invalid pursuant to 35 U.S.C. § 103, Lawson's invalidity contentions fail to identify a sufficient motivation to combine such references. Lawson has not identified any reason, other than conclusory statements, that would have prompted a person of ordinary skill to combine any of the references in the ways claimed by the patents-in-suit.

Lawson's Interrogatory No. 19 and Lawson's Second Supplemental Initial Statement of

Invalidity Defenses also fail to comply with the Court's Order at the telephonic hearing on March 26, 2010. Specifically, Judge Payne ordered Lawson to, among other things, limit Lawson's invalidity contentions to 7 or 8 references (Tr. at 8). Lawson's supplemental invalidity contentions cite at least 11 references: 1. The Fisher Scientific Requisition and Inventory Management System ("the Fisher RIMS system"); 2. U.S. Patent No. 5,712,989; 3. U.S. Patent No. 5,319,542; 4. P.O. Writer Plus V.10; 5. The SABRE system as described in "A Practical Guide to SABRE Reservation and Ticketing"; 6. The J-CON system as described in the "J-CON Manual"; 7. The Gateway 2000/MRO Version as described in "Gateway 2000/MRO Version, May 1991"; 8. IBM Technical Viewer/2 system ("IBM TV/2 system"); 9. IBM Technical Viewer/2, General Information Manual; 10. IBM Technical Viewer/2 brochure; and 11. U.S. Patent No. 4,992,940. Despite *e*Plus's objection, Lawson has failed to withdraw the 3 or 4 references from its invalidity contentions that would be needed to comply with the Court's Order. Similarly, despite ePlus's numerous requests, Lawson has refused to withdraw the prior art references in its interrogatories that it has chosen not to assert, namely, the references listed in its response to Interrogatory No. 4 and in Lawson's Interrogatory No. 19, but which are not included in Lawson's Second Supplemental Statement of Invalidity Defenses.

Moreover, as set forth in ePlus's responses to Lawson's Interrogatory No. 20, incorporated herein by reference, objective indicia also exist to indicate that the inventions claimed in the patent were not obvious at the time of the inventions. ePlus's products utilizing the patented invention have received numerous industry awards and recognition, as one example.

With respect to Lawson's contentions under 35 U.S.C. § 101, Lawson's contention that the claims are directed to a process without any meaningful limitations directed to a machine is factually incorrect. The claims are directed to an electronic sourcing system and processes

-16-

conducted using such electronic sourcing system.

With respect to Lawson's contentions under 35 U.S.C. § 112, claim elements reciting various means have more than adequate written description in the patent specification so that a person of ordinary skill in the art would understand that the inventors were in possession of the claimed inventions at the time the patent application was filed. The proper analysis of the adequacy of a patent specification's written description under Section 112 is directed to whether the description in the patent specification is adequate to convey to a person of ordinary skill in the art that the inventors were in possession of the inventions of the patent claims. For example, as acknowledged in Lawson's contentions, the patent specification states that there were pre-existing requisition software programs, such as that described in the inventors' own prior '989 Patent. A person of ordinary skill in the art comes to the table having knowledge of such prior systems. Thus, the fact that the specification states that the RIMS program described in the '989 Patent could be used to implement some of the requisition functionality of the claims provides an adequate written description to a person of ordinary skill in the art. Moreover, a person of ordinary skill in the art would understand that for purposes of designing and implementing the systems and processes of the claims, a variety of types of databases could be used for the systems and a variety of database schema could be used. Such databases and schema would be matters of design choice. Certainly, relational databases and relational database management systems were known to persons of ordinary skill in the art in August 1994. Additionally, a person of ordinary skill in the art would have known in August 1994 that product catalog item data of the type described in the specification could have been stored in a relational database in which the data is organized in logically related data arrays, then indexed and queried by means of a relational database management system using indexing.

-17-

Despite Lawson's failure to comply with the Court's Order and without waiving its objections, *e*Plus addresses herein each of the references cited in Lawson's Second Supplemental Statement of Invalidity Defenses in Appendices A, B, and C. *e*Plus also incorporates by reference the rebuttal expert report on validity that it will serve on June 9, 2010.

## INTERROGATORY NO. 20:

If *e*Plus contends that the combination of the prior art references identified below do not render obvious claims 3, 6, 26, 28 and 29 of U.S. Patent No. 6,023,683, claims 1, 2, 6, 9, 21, 22, and 29 of the U.S. Patent No. 6,055,516, and claim 1 of U.S. Patent No. 6,505,172, describe in detail which limitation(s) of the claims are not provided in each combination, why a person of ordinary skill in the art would not combine the references, why the combination would not be obvious, and all facts that support *e*Plus's contention, and identify all documents and persons with knowledge about such contention. *e*Plus's [sic] must respond with respect to each of the following:

  A. Lawson software available prior to August 10, 1994 combined with the Fisher RIMS system;

  B. Lawson software available prior to August 10, 1994 combined with U.S. Patent No. 5,319,542;

  C. Lawson software available prior to August 10, 1994 combined with U.S. Patent No. 5,694,551.

  D. Lawson software available prior to August 10, 1994 combined with the P.O. Writer system;

  E. Lawson software available prior to August 10, 1994 combined with the SABRE Writer system;

  F. Lawson software available prior to August 10, 1994 combined with the J-CON system;

  G. Lawson software available prior to August 10, 1994 combined with the Gateway system;

  H. Lawson software available prior to August 10, 1994 combined with the IBM TV/2 system;

  I. The Fisher RIMS system combined with U.S. Patent No. 5,319,542;

  J. The Fisher RIMS system combined with U.S. Patent No. 5,694,551;

  K. The Fisher RIMS system combined with the P.O. Writer system;

L. The Fisher RIMS system combined with the SABRE system;

M. The Fisher RIMS system combined with the J-CON system;

N. The Fisher RIMS system combined with the Gateway system;

O. The Fisher RIMS system combined with the IBM TV/2 system;

P. U.S. Patent No. 5,319,542 combined with U.S. Patent No. 5,694,551;

Q. U.S. Patent No. 5,319,542 combined with the P.O. Writer system;

R. U.S. Patent No. 5,319,542 combined with the SABRE system;

S. U.S. Patent No. 5,319,542 combined with the J-CON system;

T. U.S. Patent No. 5,319,542 combined with the Gateway system;

U. U.S. Patent No. 5,319,542 combined with the IBM TV/2 system;

V. U.S. Patent No. 5,694,551 combined with the P.O. Writer system;

W. U.S. Patent No. 5,694,551 combined with the SABRE system;

X. U.S. Patent No. 5,694,551 combined with the J-CON system;

Y. U.S. Patent No. 5,694,551 combined with the Gateway system;

Z. U.S. Patent No. 5,694,551 combined with the IBM .TV/2 system;

AA. The P.O. Writer system combined with the SABRE system;

BB. The P.O. Writer system combined with the J-CON system;

CC. The P.O. Writer system combined with the Gateway system;

DD. The P.O. Writer system combined with the IBM TV/2 system;

EE. The SABRE system combined with the J-CON system;

FF. The SABRE system combined with the Gateway system;

GG. The SABRE system combined with the IBM TV/2 system;

HH. The J-CON system combined with the Gateway system;

II. The J-CON system combined with the IBM TV/2 system; and

JJ. The Gateway system combined with the IBM TV/2 system.

-19-

**OBJECTIONS:**

*e*Plus objects to this Interrogatory to the extent that it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine. *e*Plus also objects to this Interrogatory as overly broad and unduly burdensome. *e*Plus further objects to this Interrogatory to the extent that it seeks information that is within the possession of Defendant.

*e*Plus objects to this Interrogatory as prematurely seeking expert discovery. *e*Plus will provide its validity contentions regarding the patents-in-suit in accordance with the schedule for expert discovery set forth in the Court's Scheduling Order.

*e*Plus objects to this Interrogatory to the extent that it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine. *e*Plus also objects to this Interrogatory as overly broad and unduly burdensome. *e*Plus further objects to this Interrogatory to the extent that it seeks information that is within the possession of Defendant.

*e*Plus objects to this Interrogatory as prematurely seeking expert discovery. *e*Plus will provide its validity contentions regarding the patents-in-suit in accordance with the schedule for expert discovery set forth in the Court's Scheduling Order. *e*Plus further objects to this Interrogatory to the extent it seeks to shift Lawson's burden of proof to *e*Plus.

Additionally, *e*Plus objects to this Interrogatory as vague and ambiguous. First, it is unclear what specific system, version thereof and release dates are requested for certain of the alleged prior art references, *e.g.*, "the Fisher RIMS system," "the IBM TV/2 system," "the J-CON system," etc. Each of these systems evolved over a period of time and had different features, components and functionality over time. Second, Lawson's initial invalidity claim charts are so vague as to Lawson's allegations concerning the alleged prior art references purported teachings as to preclude rebuttals from *e*Plus.

-20-

*e*Plus further objects to this Interrogatory as, in and of itself, exceeding the number of interrogatories permitted.

## ANSWER TO INTERROGATORY NO. 20

Subject to the forgoing objections, *e*Plus responds as follows.  The burden of proof rests with Lawson to establish the invalidity of U.S. Patent Nos. 6,023,683; 6,055,516; and 6,505,172 ("the Patents-in-Suit") by clear and convincing evidence, and Lawson cannot impermissibly shift its burden of proof to *e*Plus via this interrogatory.  The combinations of references enumerated by Lawson above fail to present a *prima facie* case of invalidity that requires a response from *e*Plus.  Lawson has not even provided contentions with respect to most of the combinations.

*e*Plus further responds that claims 3, 6, 26, 28 and 29 of U.S. Patent No. 6,023,683 ("the '683 Patent"), claims 1, 2, 6, 9, 21, 22, and 29 of the U.S. Patent No. 6,055,516 ("the '516 Patent"), and claim 1 of U.S. Patent No. 6,505,172 ("the '172 Patent") are not rendered obvious by any of the combinations of references enumerated by Lawson above.  *See, e.g.*, discussions above in the Answer to Interrogatory No. 19.  Moreover, Lawson has not shown that there is any suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the references or to combine the references' disclosures to arrive at the inventions claimed in the Patents-in-Suit.  Further, Lawson has not shown that a person of ordinary skill in the art would combine the alleged references with any reasonable expectation of success.

Objective indicia also exist to indicate that the inventions claimed in the Patents-in-Suit were not obvious at the time of the inventions.  *e*Plus's products utilizing the patented invention have received numerous industry awards and recognition.  For example, *e*Plus was named one of the 2003 and 2004 Supply & Demand Chain Executive 100 List of Leading Supply Chain

-21-

Product Providers.  *e*Plus's inclusion in this list reflects the industry's recognition of *e*Plus's Enterprise Chain Management product offerings which include its procurement catalog, content management, and eProcurement products Content+$^{TM}$ and Procure+$^{TM}$.  Moreover, in 2003, *e*Plus was ranked #1 on the Aberdeen Group's Supply Chain 50 Report as the leading supply chain management technology provider for its suite of electronic procurement and procurement catalog content management products and services that can be used to support customers' strategic sourcing and management initiatives.  Also in 2003, *e*Plus was named to iSource Business Magazine's "iSource 100" list of leading supply chain-enabling organizations.  The iSource 100 list recognized *e*Plus for its innovative Enterprise Cost Management platform, which includes its suite of electronic procurement, product and catalog content management products.

The prior owners of the Patents-in-Suit also received awards for their technology reflecting the industry's recognition of the pioneering nature of that technology.  For example, in March 1997, *e*Plus's predecessor, ProcureNet, received an Internet Electronic Commerce Conference Award for its innovation and excellence in electronic commerce relating to its launch of its first public electronic mall for business-to-business transactions.  This electronic mall interfaced directly to the participants' requisition and order entry systems.

Also, when *e*Plus's predecessor Fisher Scientific first introduced the patented technology, it was initially met with some degree of skepticism.  As the president of Fisher Technology Group noted when FisherTechnology Group launched a software application incorporating the patented inventions in 1997, "FTG first had to do a bit of education.  Most buyers and suppliers hadn't modified their business process to facilitate electronic commerce.  As a result, FTG spent a lot of time helping its beta customers web-enable their business data and then establish

-22-

consistent business processes to use that data effectively for procurement."[3]

In addition, the inventions of the Patents-in-suit have achieved a high degree of commercial success as evidenced by the success of Ariba's and SAP's licensed products.

## FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 20

The burden of proof rests with Lawson to establish the invalidity of the patents-in-suit by clear and convincing evidence. Lawson's supplemental invalidity contentions fall well short of meeting this burden and fail to present a *prima facie* case of invalidity that requires a response from *e*Plus. The multiple references cited by Lawson fail to expressly or inherently teach or suggest numerous claim elements. For example, Lawson fails to establish that its numerous documents should be treated as a single anticipating item of prior art. Lawson also improperly combines multiple systems and then discusses the combined references as if they were a single product. This contention is factually incorrect and Lawson has failed to support it with evidence. In addition, Lawson improperly combines references regarding systems from vastly different time periods. Lawson has failed to establish that the features and operation of each of these systems was static over the time period spanned by the references and documents cited, if any. Moreover, to the extent that Lawson asserts that the claims are invalid pursuant to 35 U.S.C. § 103, Lawson's invalidity contentions fail to identify a sufficient motivation to combine such references. Lawson has not identified any reason, other than conclusory statements, that would have prompted a person of ordinary skill to combine any of the references in the ways claimed by the patents-in-suit.

Lawson's Interrogatory No. 20 and Lawson's Second Supplemental Initial Statement of Invalidity Defenses also fail to comply with the Court's Order at the telephonic hearing on

---

[3] "Window of Opportunity," CIO Magazine (June 1, 1998).

-23-

March 26, 2010.  Specifically, Judge Payne ordered Lawson to, among other things, limit Lawson's invalidity contentions to 7 or 8 references (Tr. at 8).  Lawson's supplemental invalidity contentions cite at least 11 references and four combinations: 1. The Fisher Scientific Requisition and Inventory Management System ("the Fisher RIMS system"); 2. U.S. Patent No. 5,712,989; 3. U.S. Patent No. 5,319,542; 4. P.O. Writer Plus V.10; 5. The SABRE system as describe in "A Practical Guide to SABRE Reservation and Ticketing"; 6. The J-CON system as described in the "J-CON Manual"; 7. The Gateway 2000/MRO Version as described in "Gateway 2000/MRO Version, May 1991"; 8. IBM Technical Viewer/2 system ("IBM TV/2 system"); 9. IBM Technical Viewer/2, General Information Manual; 10. IBM Technical Viewer/2 brochure; and 11. U.S. Patent No. 4,992,940.  Despite *e*Plus's objection, Lawson has failed to withdraw the 3 or 4 references from its invalidity contentions that would be needed to comply with the Court's Order.  Similarly, despite ePlus's numerous requests, Lawson has refused to withdraw the prior art references and combinations in its interrogatories that it has chosen not to assert, namely, the references listed in its response to Interrogatory No. 4 and in Lawson's Interrogatory No. 20, but which are not included in Lawson's Second Supplemental Statement of Invalidity Defenses.

Moreover, as discussed above, objective indicia also exist to indicate that the inventions claimed in the patent were not obvious at the time of the inventions. ePlus's products utilizing the patented invention have received numerous industry awards and recognition.  *See e*Plus's Answer and First Supplemental Answer to Lawson's Interrogatory No. 6.

With respect to Lawson's contentions under 35 U.S.C. § 101, Lawson's contention that the claims are directed to a process without any meaningful limitations directed to a machine is factually incorrect.  The claims are directed to an electronic sourcing system and processes conducted employing such systems.

With respect to Lawson's contentions under 35 U.S.C. § 112, claim elements reciting various means have more than adequate written description in the patent specification so that a person of ordinary skill in the art would understand that the inventors were in possession of the claimed inventions at the time the patent application was filed. The proper analysis of the adequacy of a patent specification's written description under Section 112 is directed to whether the description in the patent specification is adequate to convey to a person of ordinary skill in the art that the inventors were in possession of the inventions of the patent claims. For example, as acknowledged in Lawson's contentions, the patent specification states that there were pre-existing requisition software programs, such as that described in the inventors' own prior '989 Patent. A person of ordinary skill in the art comes to the table having knowledge of such prior systems. Thus, the fact that the specification states that the RIMS program described in the '989 Patent could be used to implement some of the requisitioning functionality of the claims provides an adequate written description to a person of ordinary skill in the art. Moreover, a person of ordinary skill in the art would understand that for purposes of designing and implementing the systems and processes of the claims, a variety of types of databases could be used for the systems and a variety of database schema could be used. Such databases and schema would be matters of design choice. Certainly, relational databases and relational database management systems were known to persons of ordinary skill in the art in August 1994. Additionally, a person of ordinary skill in the art would have known in August 1994 that product catalog item data of the type described in the specification could have been stored in a relational database in which the data is organized in logically related data arrays, then indexed and queried by means of a relational database management system using indexing.

Despite Lawson's failure to comply with the Court's Order and without waiving its

objections, *e*Plus addresses herein each of the references cited in Lawson's Second Supplemental Statement of Invalidity Defenses in Appendices A, B, and C.  *e*Plus also incorporates by reference the rebuttal expert report on validity that it will serve on June 9, 2010.

Respectfully submitted,

Date:  May 18, 2010

*[signature]*

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, L.L.P.**
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112
cmerritt@cblaw.com
hwillett@cblaw.com

Jennifer A. Albert (*admitted pro hac vice*)
Scott L. Robertson (*admitted pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
jalbert@goodwinprocter.com
srobertson@goodwinprocter.com
dyoung@goodwinprocter.com

Michael Strapp (*admitted pro hac vice*)
James D. Clements  (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
lshiferman@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus inc.

-26-

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of May, 2010, I will serve Plaintiff *e*Plus inc.'s First Supplemental Answers and Objections to Defendant Lawson Software, Inc.'s Fifth Set of Interrogatories, on the following counsel of record as indicated:

*via electronic mail:*

> Daniel W. McDonald, *pro hac vice*
> William D. Schultz, *pro hac vice*
> Rachel C. Hughey, *pro hac vice*
> Joshua P. Graham, *pro hac vice*
> Andrew Lagatta, *pro hac vice*
> Merchant & Gould P.C.
> 3200 IDS Center
> 80 South 8th Street
> Minneapolis, MN 55402-2215
> Lawsonservice@merchantgould.com
>
> Robert A. Angle (VSB# 37691)
> Dabney J. Carr, IV (VSB #28679)
> Troutman Sanders LLP
> P.O. Box 1122
> Richmond, VA  23218-1122
> Telephone:  (804) 697-1238
> Facsimile:  (804) 698-5119
> robert.angle@troutmansanders.com
> dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

*Jennifer A. Albert*