**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

ePLUS INC.,                              )
                                         )
      Plaintiff,                    )
                                         )
      v.                            )    Case No. 3:09CV620 (REP)
                                         )
LAWSON SOFTWARE, INC.,                   )
                                         )
                                         )
      Defendant.                    )


**DEFENDANT LAWSON SOFTWARE, INC.'S BRIEF IN OPPOSITION TO EPLUS'S**
**MOTION FOR JUDGMENT AS A MATTER OF LAW AND IN FURTHER SUPPORT**
**OF LAWSON'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

1

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ON ACCUSED PRODUCTS ..................................1

III.    DISCUSSION ........................................................................................3

        A.      Lawson's Accused Products do not infringe eleven of the twelve claims
                because they do not meet the required selecting and searching limitations. ..........5

                1.      Lawson's Accused Products do not infringe claims 3, 26, 28, and
                        29 of the '683 patent and claims 1, 2, 6, 21, 22, and 29 of the '516
                        patent because the Accused Products do not "select less than the
                        entire collection" of catalogs to search or have a "means for
                        selecting the product catalogs to search," nor do the have a step of
                        selecting the product catalogs to search. ....................................................... 5

                2.      Lawson's Accused Products do not infringe claim 1 of the '172
                        patent because they do not have the limitation that "selected
                        portions of the database may be searched separately." ............................... 7

                3.      Lawson's Accused Products do not infringe claims 3, 28, and 29 of
                        the '683 patent and claim 1 of the '172 patent because they do not
                        meet the required "searching" limitations. ..................................................... 8

                4.      Lawson's Accused Products do not infringe claims 1, 21, 22, or 29
                        of the '516 patent because they do not have a "catalog selection
                        protocol" or "catalog selection criteria." ..................................................... 8

        B.      Lawson's Accused Products do not infringe claims 1, 9, 21, 22, or 29 of
                the '516 patent or claims 3, 28, or 29 of the '683 patent because the
                UNSPSC codes do provide for identical or equivalent items, do not
                provide a "cross-reference table," do not allow for searching of identical
                or matching items, and do not allow for matching of a vendor
                identification code with a subset of said collection of catalogs. ............................8

                1.      Lawson's Accused Products do not infringe claims 9, 21, or 22 of
                        the '516 patent because they do not have identical or equivalent
                        items. ..................................................................................................................... 9

                2.      Lawson's Accused Products do not infringe claims 21, 22, or 29 of
                        the '516 patent because they do not have a "cross-reference table." ........ 10

                3.      Lawson's Accused Products do not infringe claims 3, 28, or 29 of
                        the '683 patent because they do not have a "means for converting
                        data relating to a selected matching item and an associated source
                        to data relating to an item and a different source" or a step of
                        "converting data relating to a selected matching item and an
                        associated source to data relating to an item and a different

           source." ........................................................................................................ 10

      4.    Lawson's Accused Products do not infringe claims 1 or 29 of the '516 patent because they cannot "match a vendor identification code with a subset of said collection of catalogs." .................................. 12

C.    Lawson does not infringe claims 26 or 29 of the '516 patent because it does not perform the method step of "determining whether a selected matching item is available in inventory." ...........................................................12

D.    Lawson's Accused Products do not infringe any of the accused claims because they do not have multiple catalogs as defined by the Court....................13

      1.    Lawson's Accused Products do not infringe claims 3, 26, 28, and 29 of the '683 patent and claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent because the Accused Products do not contain a "catalog," let alone multiple catalogs. ..................................................... 13

      2.    Lawson's Accused Products do not infringe claim 1 of the '172 patent because they do not have an "order list" or a "means for generating an order list." ........................................................................ 18

E.    There are many other reasons Lawson and its Accused Systems do not infringe. ........................................................................................................19

      1.    Lawson's Accused Products do not infringe claim 2 of the '516 patent because they do not have a collection of catalogs are stored in separate databases. ................................................................................. 19

      2.    Lawson's Accused Products do not infringe claims 21 of the '516 patent because they do not meet the requirement of "said searching module being used to generate additional search-module criteria for said data fields of said requisition module." ....................................... 19

      3.    ePlus's infringement theory is contrary to law. ....................................... 20

F.    Dr. Weaver's conclusory infringement allegations are insufficient to meet ePlus's burden of infringement. ...........................................................................21

G.    There are many other reasons demonstrating that Lawson does not infringe. ........................................................................................................21

IV.      **CONCLUSION** ...................................................................................................22

## I.   INTRODUCTION

A reasonable jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of infringement.  Reviewing the required claim elements at issue in this case against the Lawson systems accused of infringement demonstrates that Lawson does not infringe the asserted claims.  Lawson opposes ePlus's motion for judgment as a matter of law on the issue of infringement and renews and supplements its own request for judgment as a matter of law.

ePlus's memorandum in support of its judgment as a matter of law does not identify the disputed claim limitations and does not identify  how Lawson—or Lawson's customers—meet the elements of the system claims, practice the steps of the method claims, or have the function and structure as required by the means-plus-function claims.  ePlus has done nothing more than make conclusory statements as opposed to tying evidence to the required claim language.  Likewise, in its motion for judgment as a matter of law, ePlus generically refers to all five accused systems instead of analyzing how the different products meet different claim limitations.  There is no dispute that the five Lawson's Accused Systems are different, but ePlus attempts to prove its case by lumping them all together without any specific discussion of where or how the claim limitations are met.  ePlus has not met its burden to show that the claim limitations are met.  ePlus's motion for judgment as a matter of law should be denied and Lawson's motion for judgment as a matter of law should be granted.

## II.   BACKGROUND ON ACCUSED PRODUCTS

During trial, Dr. Weaver provided his infringement opinion on five Lawson systems:

(1) S3 Procurement (IC, PO, and RQ) (which Dr. Weaver referred to as system 1),
(2) RSS combined with S3 (system 2),
(3) Punchout combined with S3 and RSS (system 3),
(4) EDI combined with S3 (system 4), and
(5) all modules combined (system 5).

1

(Tr. (Weaver) at 795:15-796:22.)  ePlus does not accuse all Lawson systems of infringing all asserted claims.[1]

There is no dispute that these different modules have different functionality.  ePlus's contentions related to these claims, however, are general allegations and do not tie any of the asserted claims to the functionality of the accused systems.

ePlus argues that S3 Procurement alone infringes only two of the claims—claims 1 and 6 of the '516 patent.  ePlus does not assert that S3 Procurement alone has the capability to search for matching items, convert data, determine whether a selected matching item is available in inventory, etc.  Instead, it merely asserts that these systems have catalogs, a search capability, and allow for requisitions and purchase orders.

Dr. Weaver accused the RSS module of infringing all claims except claims 26 or 29 of the '683 patent and claim 2 of the '516 patent.  In its brief, ePlus asserts that UNSPSC codes in Lawson's Item Master "act[] as a cross-reference table to cross-reference between generally equivalent items from multiple sources." (Br. at 9.)  At trial, ePlus alleged that category searching of UNSPSC codes was available only in the RSS module.  (Tr. (Weaver) at 1269:3-13.)  ePlus also asserts that the RSS module had an order list in the form of a shopping cart.  (Br. at 8.)  Thus, ePlus argues that the addition of the RSS module meets the requirements of converting, cross-reference tables, order list, etc.

_____

[1] Tr. at 796:23-798:13 ('683 patent claim 3 only accused of infringing systems 2, 3, 4, and 5); Tr. at 801:10-20 ('683 patent claim 26 only accused of infringing systems 3, 4, and 5); Tr. at 802:2-11 ('683 patent claim 28 only accused of infringing systems 2, 3, and 5); Tr. at 803:13-15 ('683 patent claim 29 only accused of infringing systems 3 and 5); Tr. at 823:14-21 ('516 patent claim 2 only accused of infringing systems 3 and 5); Tr. at 827:4-828:25 ('516 patent claim 9 only accused of infringing systems 2, 3, and 5); Tr. at 829:5-23 ('516 patent claim 21 only accused of infringing systems 2, 3, and 5); Tr. at 833:1-9 ('516 patent claim 22 only accused of infringing systems 2, 3, and 5); Tr. at 834:2-8 ('516 patent claim 29 only accused of infringing systems 2, 3, and 5); Tr. at 816:1-12 ('172 patent claim 1 only accused of infringing systems 2, 3, and 5).

Dr. Weaver did not accuse EDI (system 4) of infringing claims 28 or 29 of the '683 patent, claims 2, 9, 21, or 29 of the '516 patent, or claim 1 of the '172 patent. (At trial Dr. Weaver incorrectly accused claim 3 of the '683 patent of infringing the EDI system (Tr. 798:12-13; Tr. (Weaver) at 795:15-796:22; Tr. (Weaver) at 802:2-13), but ePlus correctly did not include that allegation on its jury form.) ePlus asserts that EDI allows for checking inventory. (Br. at 5, 10.)

ePlus accuses system 3—Punchout plus RSS and S3 Procurement—of infringing all claims. ePlus argues that Punchout has external Punchout catalogs and allows for checking inventory. (Br. at 4.) ePlus does not assert that the combination of all accused modules (system 5) adds any additional functionality that is missing from the separately accused systems. That is, there are no claims that are accused of infringing *only* the combination of all elements (system 5).

These general allegations are insufficient as a matter of law to find infringement. ePlus's failure to tie the functionality of the accused systems to the specific claim elements is fatal to ePlus's infringement case. Analysis of the claims to the accused systems shows there is no infringement.

## III.   DISCUSSION

The patentee bears the burden of proving infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006). To prove infringement, the patentee must show that the accused infringer practices every single step or the accused device meets every asserted claim limitation. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005); *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997); *see generally Contech Stormwater Solutions, Inc. v. Baysaver Techns., Inc.*, No. 2008-1206, 2009 WL 361376, at *4

3

(Fed. Cir. Feb. 13, 2009) (finding no literal infringement because the accused device does not contain one element of the asserted claim). The absence of even a single claim limitation precludes a finding of literal infringement of the entire claim. *Rohm and Haas*, 127 F.3d at 1092 ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim . . . .") (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)).

ePlus has been fully heard on the issues of infringement during this jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for ePlus on the issue of infringement. The evidence at trial demonstrates why Lawson does not infringe.

Each of the accused claims differs in scope and required limitations. The accused claims include method, means-plus-function, and system claims. Each of those claim types requires a distinct legal analysis to prove infringement. To show the claims do not infringe, however, only one element need be absent. Eleven of the twelve asserted claims explicitly require multiple catalogs. Ten claims require selecting the product catalogs or databases to search   Nine claims require cross-reference tables, converting data relating to a selected matching item and an associated source to data relating to an item and a different source, or equivalent items. Two claims require determining whether an item is available in inventory. *Lawson's Accused Systems do not meet any of these claim limitations.*

Certainly, there has been much focus at trial on the requirement that the "catalog" limitation be met. For the reasons fully stated at trial and in this brief, Lawson's Accused products do not meet this requirement. *But this is not the only limitation that Lawson's Accused Systems do not meet.* A review of the claim language demonstrates that even if Lawson's Accused Systems meet the requirements of "at least two product catalogs," "maintaining at least two product catalogs on a database," etc., Lawson still does not infringe. Indeed, reviewing the

4

additional requirements of the claims only further buttresses the evidence that Lawson does not meet the multiple catalogs requirements.

> A. **Lawson's Accused Products do not infringe eleven of the twelve claims because they do not meet the required selecting and searching limitations.**

Importantly, even if ePlus were correct that the Item Master plus vendor item table constituted a catalog and multiple catalogs (which it does not, as discussed below), ePlus has not shown Lawson's system meet the other claim limitations. Specifically, most of the claims have limitations directed to separately selecting and searching the multiple catalogs. Lawson's Accused Products cannot do that. For this independent reason, Lawson does not infringe.

> 1. **Lawson's Accused Products do not infringe claims 3, 26, 28, and 29 of the '683 patent and claims 1, 2, 6, 21, 22, and 29 of the '516 patent because the Accused Products do not "select less than the entire collection" of catalogs to search or have a "means for selecting the product catalogs to search," nor do the have a step of selecting the product catalogs to search.**

Ten of the twelve claims have limitations regarding "select product catalogs to search" or "select less than the entire collection" of catalogs to search. ('682 patent claims 3 ("means for selecting the product catalogs to search"), 26 ("selecting the product catalogs to search"), 28 (same), 29 (same); '516 patent claims 1 ("select less than said entire collection of catalogs"), 2 (same), 6 (same), 21 ("select less than said entire collection"), 22 (same), 29 ("select less than said entire collection of catalogs"). Even if the Item Master plus vendor item table could be considered "multiple catalogs," Lawson still does not infringe because it is not possible to select less than the entire Item Master to search.

The Court construed the means-plus-function term "means for selecting the product catalogs to search" as follows:

> The function of this element is to select the product catalogs to search.
> The corresponding structures, materials, or acts, of this element are disclosed as a user interface that allows the user to select a catalog; a catalog module that selects product

catalogs based on preferences or history; a catalog search module that identifies product catalogs or a combination thereof; and their equivalents. See e.g., '683 Patent at 4:5-6; 5:9-27; 8:40-56; 9:52-10:20; FIGs. 1-2 (describing search program 50 and requisition/purchasing system 40).

(Doc. 204 at 44-45.)

None of Lawson's Accused Systems "select product catalogs to search" or "select less than the entire collection" of catalogs to search or have such a searching means. The accused software is not capable of selecting a subset of the Item Master for searching. (Tr. (Shamos) at 1807:19-23; Tr. (Shamos) at 1810:18-20; Tr. (Shamos) at 1831:7-18; Tr. (Shamos) at 1757:15-18.) There is no screen on the search portion that allows part of the Item Master to be selected for searching. (Tr. (Shamos) at 1762:17-20.) Further, the Item Master is organized in such a way that it cannot be searched separately by one vendor or another. (Tr. (Shamos) at 1762:21-1763:8.)

ePlus asserts that when a user runs a search on the Accused Products with a single keyword this meets the claim limitations of "select product catalogs to search" or "select less than the entire collection" of catalogs to search because "Lawson system employs a search index to enable a search to be performed among the selected product catalogs or selected portions of the system's database." (Br. at 7.) This is wrong. When a search is run, it is run on the entire Item Master. (Tr. (Shamos) at 1807:19-23; Tr. (Shamos) at 1810:18-20; Tr. (Shamos) at 1831:7-18; Tr. (Shamos) at 1757:15-18.) There is no mechanism to allow for searching selected product catalogs.

Further, the claims require a user to select what catalogs to search before the searching occurs. Lawson's search engine does not perform two steps. Instead, Lawson's Accused Systems' search engine searches all item records. A user cannot select to search less than all item records in the Item Master. Keyword searching does not select a catalog. (Tr. (Shamos) at

6

1935:13-18.)  As Dr. Shamos explained, "[t]he purpose of indexing is to speed up a search.  It doesn't limit the universe of things that you're searching." (Tr. (Shamos) at 1812:3-4.)  That is, indexing does not eliminate a portion of the Item Master from being searched. (Tr. (Shamos) at 1764:17-25.)  When a user types in a keyword the entire Item Master is still searched.  (Tr. (Shamos) at 1767:16-1768:15.)

For the same reasons, the Accused Product do not have "selected product catalogs" or "selected portions of the database". ('683 patent claim 26 ("searching for matching items among the selected product catalogs"), 28 (same); '172 patent claim 1 ("means for searching for matching items that match the entered product information in the selected portions of the database").)  (Tr. (Shamos) at 1835:19-1836:6.)

> 2.   Lawson's Accused Products do not infringe claim 1 of the '172 patent because they do not have the limitation that "selected portions of the database may be searched separately."

Claim 1 of the '172 patent requires "a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately." ('172 patent claim 1).  Lawson's Accused Products do not have a database maintained such that selected portions of the database may be maintained separately.  (Tr. (Shamos) at 1840:13-24; Tr. (Shamos) at 1847:20-25; Tr. (Shamos) at 1757:4-18.)  As discussed above, when a search is performed on the Item Master, the entire Item Master is searched. (*Id.*) Thus, the Item Master cannot be searched separately.  In addition, the items are not associated with vendors such that the Item Master can be searched by vendor.  (Tr. (Shamos) at 1842:21-1843:3.)  There is no vendor field in the Item Master.  (*Id.*; Tr. (Shamos) at 1844:10-22.)  Thus, claim 1 of the '172 patent is not infringed.

     3.     Lawson's Accused Products do not infringe claims 3, 28, and 29 of the '683 patent and claim 1 of the '172 patent because they do not meet the required "searching" limitations.

Claims 3, 28, and 29 of the '683 patent require "searching for matching items **among the selected** product catalogs" or "means for searching for matching items **among the selected** product catalogs." These elements are not met by Lawson's Accused Systems. As discussed above, the organization of the Item Master does not allow for searching separately by one vendor or another. (Tr. (Shamos) at 1762:21-1763:4; Tr. (Christopherson) at 15216-10.)

     4.     Lawson's Accused Products do not infringe claims 1, 21, 22, or 29 of the '516 patent because they do not have a "catalog selection protocol" or "catalog selection criteria."

The '516 patent claims 1 and 29 both require a "catalog selection protocol" or a "catalog selection criteria." ('516 patent claim ("a catalog selection protocol"), 21 ("catalog selection criteria"), 22 (same), 29 ("catalog selection protocol").) The parties agree that "protocol" means "procedure." The Accused Products do not have a "catalog selection protocol" or "catalog selection criteria" because, as discussed above, there is no way to search less than the entire Item Master. (Tr. (Shamos) at 1809:3-15; Tr. (Shamos) at 1822:3-17.)

B.     Lawson's Accused Products do not infringe claims 1, 9, 21, 22, or 29 of the '516 patent or claims 3, 28, or 29 of the '683 patent because the UNSPSC codes do provide for identical or equivalent items, do not provide a "cross-reference table," do not allow for searching of identical or matching items, and do not allow for matching of a vendor identification code with a subset of said collection of catalogs.

An additional independent reason why Lawson does not infringe is because its Accused Products do not meet the limitations regarding cross-reference tables or identical or equivalent items. ePlus's reliance on UNSPSC codes to meet these different limitations must fail. The specific claim elements are not met because UNSPSC codes identify general product categories—items within the same code are not necessarily identical or equivalent items. Even if

UNSPSC codes did identify identical or equivalent items, Lawson's Accused System does not engage in any kind of converting.

In addition, in Lawson's Accused systems, the UNSPSC codes can be used for searching only in the RSS application. (Tr. (Shamos) at 1819:10-12.) Thus, even if UNSPSC codes could be considered to meet this limitation, Lawson S3, Lawson EDI, and Lawson Punchout would not infringe.

      1.    <u>Lawson's Accused Products do not infringe claims 9, 21, or 22 of the '516 patent because they do not have identical or equivalent items.</u>

Lawson's Accused Products do not infringe claims 9, 21, or 22 of the '516 patent because they do not have "two equivalent items in two catalogs," a "selection of one equivalent item provides identification code of the equivalent item," or "equivalent items have identical identification codes" as required. ('516 patent, claim 9 ("said first item and said second item being generally equivalent")), 21 ("each of at least two catalogs include a generally equivalent item from a different source"), or 22 (same and "said determination system includes an identical identification code for each of said located items"). The Court construed "selected matching items" as "requisition items." (Doc. No. 204 at 21.)

Lawson's Accused Products do not meet this limitation because there is no way to ask the Lawson Accused Products for identical or generally equivalent items. (Tr. (Shamos) at 1817:13-15.) Dr. Weaver alleges that the United Nations Standard Products and Services Code ("UNSPSC") codes are codes for "generally equivalent" items. This is not correct. UNSPSC codes are an 8-digit hierarchical scheme for classifying products. (Tr. (Shamos) at 1818:8-12; Tr. (Shamos) at 1820:4-20.) A user can add UNSPSC codes to Item Master. But UNSPSC codes are not for "generally equivalent" items. (Tr. (Shamos) at 1818:8-1819:4.) For example, "pen refills" are a class of product. (Tr. (Shamos) at 1820:4-20.) Two different pen refills are

not necessarily equivalent, as they may fit into different pens. (*Id.*) They may have different colors of ink. (*Id.*) Thus, UNSPSC codes do not define equivalent items.

In addition, the Lawson Accused Systems do not make a determination that items are generally equivalent. (Tr. (Shamos) at 1823:19-25.) Even if a user previously made such a determination, there is no way of making that determination through the Lawson Accused Systems. (*Id.*)

> ### 2. Lawson's Accused Products do not infringe claims 21, 22, or 29 of the '516 patent because they do not have a "cross-reference table."

In addition, Lawson's Accused Products do not infringe claim 21, 22, or 29 of the '516 patent because they do not have "a cross-reference table" as required. ('516 patent, claims 21, 22 & 29.) The Court construed "cross-reference table" to mean "a table that links vendors items determined to be equivalent between two o[r] more different vendors". (Doc. No. 204 at 26.) The Accused Products do not have a cross-reference table.

Dr. Weaver argues that UNSPSC codes in the Item Master (if present) make it a cross-reference table. This is not correct. UNSPSC codes do not define equivalent items. Therefore, a table with UNSPSC codes is not a "cross-reference table" as defined by the Court. In addition, the Lawson Accused systems do not use UNSPSC codes for cross-referencing. (Tr. (Shamos) at 1821:1-5.) Because claims 21, 22, and 29 of the '516 patent require a "cross reference table," which the Accused Products do not have, the claims are not infringed.

> ### 3. Lawson's Accused Products do not infringe claims 3, 28, or 29 of the '683 patent because they do not have a "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" or a step of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."

Lawson's Accused Products do not infringe claims 3, 28, or 29 of the '683 patent because

they do not have a "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" or a step of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source." ('683 patent claim 3 ("means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source"), 28 ("converting data relating to a selected matching item and an associated source to data relating to an item and a different source"), 29 (same).)

The Court construed "Means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source" as follows:

> The function of this element is converting data relating to a selected matching item and an associated source to data relating to an item and a different source.
> The corresponding structures, materials, or acts, of this element are disclosed as one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents. See e.g. '683 Patent at 4:60-5:8; 10:43-54; 14:35-45; 16:14-32; 17:19-54, Appendices VIII-X.

(Doc. No. 204 at 47-48.)  The Court construed "converting data relating to a selected matching item and an associated source to data relating to an item and a different source" as "substituting data relating to a selected matching item and an associated source to data relating to an item and a different source."  (Doc. No. 204 at 31.)

Nothing in Lawson's software performs the function of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."  (Tr. (Shamos) at 1833:19-1834:5.)  There is no conversion in the Lawson Accused Systems.  (Tr. (Shamos) at 1818:8-1819:19.)  A user cannot use the UNSPSC codes to convert data relating to a selected matching item and an associated source to data relating to an item and

a different source and they do not have a means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source.

ePlus argues that a customer can add equivalent items to their catalog using UNSPSC codes and convert them to other items. The problem with this argument is that the claims require that the software perform the converting. This step cannot be met by a person substituting products. The claims require a system that includes the converting step. And, again, if a customer's actions would be sufficient to meet this limitation, the claims would not be directly infringed because Lawson did not do the converting.

4. Lawson's Accused Products do not infringe claims 1 or 29 of the '516 patent because they cannot "match a vendor identification code with a subset of said collection of catalogs."

The '516 patent claims 1 and 29 both require a system to "match a vendor identification code with a subset of said collection of catalogs." ('516 patent claim 1 ("match a vendor identification code with a subset of said collection of catalogs"), 29 (same). Lawson's systems do not do this. While UNSPSC codes may be entered into a database by a user, there is no matching that goes on. (Tr. (Shamos) at 1818:9-1819:4.)

C. Lawson does not infringe claims 26 or 29 of the '516 patent because it does not perform the method step of "determining whether a selected matching item is available in inventory."

Two of the method claims require the method step of "determining whether a selected matching item is available in inventory." ('516 patent claims 26 & 29.) Lawson does not perform this step. (Tr. (Shamos) at 1836:12-16; *id.* at 1839:22-25.) In addition, the Accused Products are unable to do so. (*Id.*) Dr. Weaver asserted in a conclusory statement that these elements could be met by using Punchout: "So using the Punchout system, I can look into the external catalog of a vendor. And if this vendor supports this capability, I can determine whether

the item I want to order is available in inventory." (Tr. (Weaver) at 573:22-574:1; *see also id.* at 608:22-25, 786:14-22.) But, even if Dr. Weaver is correct, this step is not performed by Lawson or its Accused Products. Second, Dr. Weaver asserted this method step could be performed by "this purchase order being sent to a vendor and the purchase order response coming back." (*Id.* at 574:2-3.) Again, though, even if Dr. Weaver is correct, this method step is not performed by Lawson or its Accused Product. Further, Dr. Weaver admitted that Lawson had no idea what was in a third party's inventory. (Tr. (Weaver) at 879:17-24.) Thus, Lawson does not perform this method step, so it does not directly infringe. Likewise, Lawson's Accused Systems are unable to perform this step.

> D. **Lawson's Accused Products do not infringe any of the accused claims because they do not have multiple catalogs as defined by the Court.**
>
>> 1. **Lawson's Accused Products do not infringe claims 3, 26, 28, and 29 of the '683 patent and claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent because the Accused Products do not contain a "catalog," let alone multiple catalogs.**

Eleven of the twelve asserted claims explicitly require multiple catalogs. ('683 patent claim 3 ("at least two product catalogs"), 26 (same), 28 (same), and 29 (same); '516 patent claims 1 ("a collection of catalogs"), 2 (same), 6 (same), 9 (same), 21 (same), 22 (same), and 29 (same).)

The Court construed the term "catalog" to mean:

> An organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

(Doc. No. 204 at 11.) The Court further instructed the jury that:

> Published by a vendor is used in the definition of the claim term catalog, product catalog. Published simply means to make generally known. Published by a vendor simply means that at some point in time, a vendor, such as a supplier, a manufacturer, a distributor has

13

made generally known or has disclosed an organized collection of items or associated information, preferably but not necessarily including a part number, price, catalog number, vendor name, vendor ID, textual description of the item and images relating to the item.

(Tr. (Court) at 1523:5-13.)

None of Lawson's Accused Systems, alone or in combination, has multiple catalogs. First, Lawson's Accused Products do not even have a single catalog.  (Tr. (Shamos) at 1747:17-21.)  The Item Master in the Accused Products is not a catalog, let alone multiple catalogs. Customers maintain the Item Master on a private network that contains customer selected information and other information added by the customer regarding only those items that the customer wants to purchase.  (Tr. (Shamos) at 1750:2-7.)  This is not the same as a catalog as defined by the Court.  The Item Master is not an organized collection of items and associated information, published by a vendor.

Further, the asserted claims do not require only one catalog—they require multiple catalogs.  Eleven of the asserted claims require "at least two product catalogs" or "a collection of product catalogs."  Even if Dr. Weaver's unsupported arguments regarding Lawson's Item Master combined with its vendor item table could be considered a "catalog," there can be no dispute that Lawson's accused products do not have "at least two product catalogs" or "a collection of catalogs."  Lawson has only one Item Master.  It does not have multiple Item Masters.  Because Lawson does not have "at least two product catalogs" or a "collection of product catalogs," Lawson does not infringe these claims.  (Tr. (Shamos) at 1748:1-4.)

Dr. Weaver's opinion on the issue of catalog changed as the trial progressed, further crystallizing why the Item Master alone or in combination with anything else is not multiple catalogs.  ePlus's expert Dr. Weaver first opined that the item master and the vendor item table were a single catalog:

14

> THE COURT: Is the item master and the vendor item table, in your view, the only aspect of the Lawson systems that are accused that meets the definition of catalog?
> THE WITNESS: Yes, Your Honor.
> THE COURT: All right.

(Tr. (Weaver) at 615:14-18.)  Later, he opined that the Punchout module provided additional

catalogs:

> THE COURT: Then your opinion of what in the Lawson system infringes is not confined only to -- excuse me. Your opinion of what in the Lawson system meets the Court's definition of catalog is not confined to the item master plus
> the vendor item table?
> THE WITNESS: You are correct, Your Honor. The item master and vendor item table would be an instance of a catalog within the Lawson system. These Punchout catalogs are external. They are an additional instance of catalogs.

(Tr. (Weaver) at 616:13-21.)  He then opined that the Item Master alone was also multiple

catalogs:

> THE COURT: Excuse me. Before you do that, are you saying in your view item master is not a single catalog but is a multiple catalog because it has imported into it all number of parts of other catalogs?
> THE WITNESS: Well, let me just be clear.
> THE COURT: Yes.
> THE WITNESS: If the item master is built by importing multiple vendor catalogs, then in my opinion is that database contains multiple vendor catalogs.
> THE COURT: But what if it is built by importing part of multiple catalogs, parts of catalogs?
> THE WITNESS: In my opinion, it's still multiple catalogs.

(Tr. (Weaver) at 704:3-19.)  He admitted that under his theory, *any single search criteria ended*

*up with a catalog*:

> Q If I searched for the number 5, it would generate a list of all the things that had a number 5 in the description?
> A It would.
> Q In your opinion, each one of them is a separate catalog; is that right?
> A Yes.
> Q So is there really any limit to the number of catalogs in the Lawson item master the way you looked at it?
> A No.

(Tr. (Weaver) at 871:4-14.)  Dr. Weaver then opined that the item master and the vendor item

table had data from catalogs, which meant that it was "a catalog, and it is many catalogs":

> Q I just want to have some clarity here if I can, because I want to make sure I understand it, on what constitutes the catalogs in the Lawson accused systems, and for this I think we can talk about all five configurations. So can you tell us, because I do recall the Judge had a question, so what is it?
> A It's the item master and the vendor item table.
> THE COURT: So that's a catalog?
> THE WITNESS: It contains data from catalogs.
> THE COURT: But is that a catalog within the meaning of the claim construction as you see it?
> THE WITNESS: It is a catalog, and it is many catalogs. It's important that I make clear that it contains items from many catalogs, in the plural.
> THE COURT: All right. And then is there any other catalog in the Lawson system?
> THE WITNESS: No, sir. It has only one database.

(Tr. (Weaver) at 920:2-18.)  He repeated his argument that the Lawson item master and vendor item table contain data from external catalogs:

> THE COURT: So then there are two kinds of catalogs that we deal with. One is item master plus vendor item table, and the other is the Punchout catalogs.
> THE WITNESS: Your Honor, you are correct, and the point I was trying to make is that the Lawson item master and vendor item table, which are collectively the database, you could -- it contains item data from many external catalogs.

(Tr. (Weaver) at 921:8-18.)

Dr. Weaver's opinion—that any search criteria would provide a catalog and that the Item Master plus vendor item table is both one catalog and many catalogs—demonstrates why Lawson's Accused Systems do not have multiple catalogs.  Lawson's Accused Products have nothing more than a list of items.  The Item Master alone or in combination with the vendor item table does not contain separate catalogs.  Whether the Item Master may contain some data from a vendor catalog is irrelevant.  The question is whether Lawson's Accused Products contain multiple catalogs.  They do not.

In its motion for judgment as a matter of law, ePlus argues that "The internal vendor catalogs found in the item master and vendor item tables each comprise an organized collection

16

of items and associated information." (Br. at 4.)  The Item Master is a single database that
contains items as discussed above.  It is not organized into separate catalogs.  Indeed, Dr. Weaver
did not demonstrate how to access a catalog on any Lawson system, because they do not exist.
Rather, he merely conducted a search and whatever result appeared he deemed a catalog.  A
catalog for the number "5" is not a catalog.  A catalog for color "blue" is not a catalog.  Dr.
Weaver's suggestion to the contrary is ridiculous.

Dr. Weaver also asserted that the Accused Products met the "catalog" requirement
because Lawson documents sometimes use the term "catalog".  (Tr. (Weaver) at 537:22-538:3.)
This does prove infringement.  These documents were created before the Court defined the term,
the document authors were not aware of Court's definition.  Indeed, the Lawson witnesses
explicitly explained what they meant by the claim, and that meaning is not the same as the
Court's definition.  (See, e.g., Tr. (Raleigh) at 950:13-19.)

ePlus makes much of its argument that Lawson's Accused Systems allegedly have the
capability of importing entire vendor catalogs.  First, this is not true.  As the witnesses explained,
because of the structure of the Lawson Accused Systems, it would not be possible to import an
entire vendor catalog.  (Tr. (Christopherson) at 1651:16-18 ("Q Can you download information
for all of the items from a vendor's catalog into the item master database? A No."); id. 1654:5-
1655:6.)  Further, this is a red herring.  ePlus was not able to point to a single instance where
that alleged importation actually happened.  Lawson's customers do not want entire vendor
catalogs and the system is not set up that way.  Rather, Lawson's customers want a specific list
of only the items that they want to buy—not entire vendor catalogs.  (Tr. (Lohkamp) at 1007:7-
9.)

Lawson's system would still not meet the requirement in the claims even if the system

were deemed to have a catalog and multiple catalogs.  The Item Master is just one list.  It is not organized into separate catalogs.  It is not possible to search separate "catalogs" by vendor.  The Item Master does not allow for searching separately by one vendor or another.  (Tr. (Shamos) at 1762:21-1763:4; Tr. (Christopherson) at 15216-10.)  ePlus's own software expert Mr. Niemeyer recognized that Lawson's Item Master is nothing more than a relational database—he never asserted that it was organized by catalogs associated by source.  (Tr. (Niemeyer) at 1235:17-1236:6.)  He specifically admitted that the Item Master does not even have a field for vendor name.  (*Id.* at 1266:6-17; *id.* at 1267:15-21.)  Moreover, there is no evidence that a user can select a specific vendor catalog – to show all of that vendor's products.

A private subset of information selected by a customer to add onto a list is not a single catalog and it is certainly not multiple separate catalogs.  For this single and straightforward reason, Lawson does infringe eleven of the twelve asserted claims—'683 patent claims 3, 26, 28, and 29 and '516 patent claims 1, 2, 6, 9, 21, 22, and 29.

> 2. <u>Lawson's Accused Products do not infringe claim 1 of the '172 patent because they do not have an "order list" or a "means for generating an order list."</u>

While the '172 patent does not specifically recite the term "catalog," it requires catalog items to be infringing, as Dr. Weaver recognized.  (Tr. (Weaver) at 897:10-17.)  The '172 patent claim 1 requires an "order list" and a "means for generating an order list that includes at least one matching item selected by said means for searching."  The Court defined "order list" as "a list of desired catalog items" and interpreted "means for generating an order list" as follows:

> The function of this element is generating an order list that includes at least one matching item selected by said means for searching.
>
> The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and

their equivalents. See e.g., '172 Patent at 4:6-6:28; 7:66-8:13; 9:55-12:28; 18:23-50; Appendix VI, FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

(Doc. No. 204 at 14 & 50.)

Lawson does not have an order list (a list of desired catalog items).  (Tr. (Shamos) at 1769:7-22; Tr. (Shamos) at 1848:20-21; Tr. (Shamos) at 1859:18-23.)  Because Lawson's Accused Systems do not have catalogs, as discussed above, this element is not met.  (Tr. (Shamos) at 1769:19-22.)  Because there is no order list, there is no means for generating one. (Tr. (Shamos) at 1769:16-18.)

E.     <u>There are many other reasons Lawson and its Accused Systems do not infringe.</u>

In addition to the general reasons discussed above, there are many specific reasons Lawson's Accused Systems do not meet the specific limitations of certain claims, as set forth in detail at trial.  Dr. Shamos testified regarding every single claim and provided the reasons the claim limitations were not met beyond the reasons discussed above.  Some of the many reasons are given as examples below.

    1.     <u>Lawson's Accused Products do not infringe claim 2 of the '516 patent because they do not have a collection of catalogs are stored in separate databases.</u>

Even if Lawson's Item Master could be considered a "catalog"—which it is not—or "multiple catalogs"—which it is not—Lawson's accused products still do not infringe claim 2 because they do not have  "catalogs comprising said collection of catalogs are stored in separate databases." ('516 patent claim 2.)  The Item Master is a single database—not separate databases. (Tr. (Shamos) at 1814:18-21.)

    2.     <u>Lawson's Accused Products do not infringe claims 21 of the '516 patent because they do not meet the requirement of "said searching module being used to generate additional search-module criteria for said data fields of said requisition module."</u>

Claim 21 of the '516 patent requires "said searching module being used to generate additional search-module criteria for said data fields of said requisition module," which Lawson's Accused Systems do not have.  In Lawson's Accused Products, there are not any additional search module criteria.  A user can search certain fields in Lawson's Accused Software that are set up when the Item Master is set up, but there is no searching module being used to generate additional search-module criteria.  (Tr. (Shamos) at 1822:21-1823:2.)

     3.    ePlus's infringement theory is contrary to law.

As the courts have recognized, when claims are written in a sequential manner, the steps must occur in that order for infringement to occur.  *E-Pass Tech., Inc. v. 3COM Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) (the step of "transferring a data set" must come before the later recited step of "storing said *transferred* data set"); *Mantech Envir. Corp. v. Hudson Envir. Servs., Inc.*, 152 F.3d 1368 (Fed. Cir. 1998) ("the sequential nature of the claim steps is apparent from the plain meaning of the claim language").

For example, claim 1 of the '172 patent requires searching the selected portions of a database.  Specifically, claim 1 has the limitations of "a database containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately" and "means for searching for matching items that match the entered product information in the *selected* portions of the database."  As the claims indicate, selection must occur and be performed before the searching step.

ePlus has neither alleged nor proven that Lawson's systems accused of infringing this claim meet the required claim limitations.  ePlus argues that the "database" limitation is met by the Item Master, the vendor item table, and the item location table in Lawson's accused products.  (Tr. (Weaver) at 925:5-8.)  ePlus further argues that the requirement that "selected portions of

the database may be searched separately" is met by "the keyword search index." (Tr. (Weaver) at 812:3-8.) Selected portions of the Item Master are not searched. ePlus's key word search index theory conflates these two separate steps. Under ePlus's proposed infringement theory, searching and selecting would happen at the same time.

F.     Dr. Weaver's conclusory infringement allegations are insufficient to meet ePlus's burden of infringement.

At trial, ePlus relied on its infringement expert, Dr. Weaver, to set forth the basis of its infringement contentions. Dr. Weaver's conclusory statements are insufficient to meet ePlus's burden of proof on the issue of infringement. As an example, during trial, ePlus's attorney asked Dr. Weaver the following question:

> What configurations satisfy Claim Six that has at least one of the catalogs – excuse me -- wherein said set of predetermined criteria includes at least one of the catalog number and item textual information?

(Tr. (Weaver) at 824:19-23.) Dr. Weaver answered, "All five." (Tr. (Weaver) at 824:24.) But Dr. Weaver never opined on when this limitation would be met. This conclusory assertion is insufficient to meet ePlus's prima facie burden of infringement. This kind of conclusory testimony abounded in Dr. Weaver's testimony and provides an independent reason why ePlus cannot meet its burden of proof with respect to infringement.

G.     There are many other reasons demonstrating that Lawson does not infringe.

In addition, for the reasons set forth at trial and in Lawson's motion for judgment as a matter of law filed on January 21, there are additional reasons why Lawson does not infringe. As previously set forth in Lawson's January 21 brief for judgment as a matter of law, the jury does not have a legally sufficient evidentiary basis to find for ePlus on the issue of infringement of the accused Punchout product, as no single entity performs all required steps or has all required elements. In addition, the jury does not have a legally sufficient evidentiary basis to

find for ePlus on the issue of direct infringement of the method claims, as Lawson does not

perform the method steps as required by law.  In addition, the jury does not have a legally

sufficient evidentiary basis to find for ePlus on the means-plus function limitations because ePlus

never even alleged what structure in Lawson's Accused Products would meet the claim

limitations.  Also, the jury does not have a legally sufficient evidentiary basis to find for ePlus on

the issue of indirect infringement, as there is no direct infringer and the legal requirements of that

claim have not been met.  (In its brief, ePlus does not set forth the proper legal standard for

indirect infringement.  Also, ePlus's vicarious liability argument must fail—it is not asserting

joint infringement and there is no dispute that Lawson does not have control over its customers

or any third party.)  Further, there are additional reasons Lawson does not infringe, as set forth at

trial, in its briefs, and in the oral arguments on judgment as a matter of law.  Indeed, Dr. Shamos

went through every single claim limitation and provided reasons why there is no infringement

beyond the reasons discussed above.

## IV.    CONCLUSION

For the foregoing reasons, Lawson respectfully requests that this Court deny ePlus its

request for judgment as a matter of law and grant judgment as a matter of law for Lawson on

infringement.


                                    LAWSON SOFTWARE, INC.


                                    By____/s/____Robert A. Angle_____
                                          Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com

robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of January, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com
rspendlove@goodwinprocter.com

*Attorneys for Plaintiff*

            /s/     Robert A. Angle   
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

24