# EXHIBIT 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                    RICHMOND DIVISION

 4

 5    ---------------------------------------
                                            :
 6     ePLUS, INC.                          :   Civil Action No.
                                            :   3:09CV620
 7     vs.                                  :
                                            :
 8     LAWSON SOFTWARE, INC.                :   January 4, 2011
                                            :
 9    ---------------------------------------

10

11          COMPLETE TRANSCRIPT OF THE JURY TRIAL

12          BEFORE THE HONORABLE ROBERT E. PAYNE

13        UNITED STATES DISTRICT JUDGE, AND A JUDGE

14
      APPEARANCES:
15
      Scott L. Robertson, Esquire
16    Michael G. Strapp, Esquire
      Jennifer A. Albert, Esquire
17    David M. Young, Esquire
      Goodwin Procter, LLP
18    901 New York Avenue NW
      Suite 900
19    Washington, D.C.  20001

20    Craig T. Merritt, Esquire
      Christian & Barton, LLP
21    909 East Main Street
      Suite 1200
22    Richmond, Virginia  23219-3095
      Counsel for the plaintiff

23

24                   Peppy Peterson, RPR
                   Official Court Reporter
25               United States District Court
```

1    them.

2              THE COURT:   Okay.   Are any of them Lawson systems?

3              PROSPECTIVE JUROR:   No.

4              THE COURT:   EPlus systems?

5              PROSPECTIVE JUROR:   Not that I'm aware of, no.

6              THE COURT:   Thank you.   Anybody else?   Would that

7    keep you from giving a fair trial here?

8              PROSPECTIVE JUROR:   No, sir.

9              THE COURT:   Thank you.   Anybody else?   Yes, sir, your

10   name.

11             PROSPECTIVE JUROR:   Jon Meyers.

12             THE COURT:   Mr. Meyers, what about you?

13             PROSPECTIVE JUROR:   I work with a broker/dealer that

14   has proprietary software as well.

15             THE COURT:   Do you work with the software?

16             PROSPECTIVE JUROR:   No, sir.

17             THE COURT:   Do they sell it or produce it?

18             PROSPECTIVE JUROR:   It's part of our system.

19             THE COURT:   Is there anything about that that would

20   keep you from giving a fair trial?

21             PROSPECTIVE JUROR:   No, sir.

22             THE COURT:   Okay, on across.   Your name?

23             PROSPECTIVE JUROR:   John Murgatroyd.   I've worked for

24   Basic Commerce & Industries at Dahlgren, Virginia.   I support

25   the Department of Navy as a weapons systems engineer, and we

1   have -- we develop software, but we mostly act to inspect

2   software that DOD or a DOD contractor has developed.

3              THE COURT:  And does any of that involve procurement

4   or sourcing software?

5              PROSPECTIVE JUROR:  Not directly, no.  When I was

6   active duty in the military, I was involved, but not --

7              THE COURT:  You were involved in what?

8              PROSPECTIVE JUROR:  In aiding with procurement.

9              THE COURT:  What did you procure?

10             PROSPECTIVE JUROR:  Mostly weapons systems and

11  Tomahawk cruise missiles systems.

12             THE COURT:  From specialty weapons people?

13             PROSPECTIVE JUROR:  Yes, sir.

14             THE COURT:  Did you use Lawson or ePlus software in

15  any way?

16             PROSPECTIVE JUROR:  Not that I --

17             THE COURT:  Not that you know about, all right.

18  Thank you very much.  Yes, over here.  That's Ms. Moore, is it?

19             PROSPECTIVE JUROR:  Yes.  My brother worked dozens of

20  years ago in Silicon Valley designing software, and I don't

21  remember the name of his company.  And I also have a good

22  friend who currently works for a company that contracts with

23  the government designing software, but, again, I don't know the

24  name of the company.

25             THE COURT:  All right.  Is there anything about any

1              THE COURT:  Thank you.  On down the back row.  All

2    right, back row, anybody involved in a lawsuit as a plaintiff,

3    defendant, or witness?

4              Have you, any member of your family, or close friend

5    ever been employed by the U.S. Patent and Trademark Office,

6    also known as the PTO?  If the answer is yes, let me hear from

7    you.  Second row?  Third row?  Fourth row?  Nobody.  All right.

8              Has anybody ever been employed by or been an officer

9    or owned any stock in Fisher Scientific procurement?  If the

10   answer is yes, stand and let me know.  The answer is no.

11             Now, ladies and gentlemen, as I told you, this case

12   is expected to go perhaps three weeks.  I need to know now

13   whether any of you have any special disability or problem that

14   would keep you from sitting as a fair and impartial juror in

15   this case for these people to decide these issues over that

16   period of time.

17             Now, I'm not going to go into all of the situations.

18   We have, for example, had people who have difficulty hearing,

19   and they just simply don't feel comfortable deciding cases on

20   the basis of things they've heard.  We've also had people who

21   have had difficulty seeing in a case where there's a lot to be

22   looked at in the way of evidence, not necessarily read but

23   looked at and examined.  They don't feel comfortable deciding

24   on the basis of what they see.

25             I'm not suggesting those things are disabilities, but

1    in their case they did, so that kind of thing is the kind of

2    thing I'm talking about.  In addition, we've had people who are

3    on pain medication and they simply cannot function.  They are

4    kind of fuzzy because of the pain medication.  We've had other

5    people who actually are in pain and don't take medication, and

6    because they are in pain, they simply cannot focus their

7    attention on what people are saying and don't feel comfortable

8    making decisions.

9           We had one lady on one occasion who said she could

10   serve the first several days of the tile, but she didn't think

11   she could do the rest of it because she was going to have

12   open-heart surgery and wouldn't be back.  There are different

13   reasons.  I'm not going to try to go through all of them.

14   Don't you think for one minute that everybody in here doesn't

15   know that service for a significant period of time presents a

16   burden for everybody.  We know that.

17          That's not the kind of burden I'm talking about.  I'm

18   talking about some special disability or problem that would

19   keep you from giving these people a fair trial and being a fair

20   and impartial juror.  So if you have anything like that, I'm

21   going to take it up here at the sidebar.  Mr. Langford -- I

22   mean at the bench, and Mr. Langford will guide you up here.

23          The rest of you are going to be subjected to cruel

24   and unusual punishment because we're going to turn on the white

25   noise system that somebody decided was effective in keeping the

1  rest of you from hearing what's going on up here, but I think

2  mostly what it does is irritate you, so I'm sorry, because it

3  does irritate me.  All right.  Lawyers come up here please.

4          Whoever is handling the challenges, come on up.  You

5  come here, you come here, and leave a place in the middle.

6  Come up please, ma'am.  And then and y'all need to talk into

7  this thing.  Here comes the noise.  Here, speak into this.

8          (Discussion at sidebar as follows:)

9          PROSPECTIVE JUROR:  Lisa Briscoe.

10          THE COURT:  Okay, Ms. Briscoe, what is your

11  situation.

12          PROSPECTIVE JUROR:  I have anxiety attacks and also

13  take Tramadol for my back which causes me to get sleepy

14  sometimes, drowsy.

15          THE COURT:  Let me ask you this:  Sometimes when I

16  take extra strength Tylenol, I want to fall up stand and move

17  around a little bit, I'm okay.  Can you do that, or does taking

18  the medicine make you real drowsy?

19          PROSPECTIVE JUROR:  Yes, this kind does.  I can't

20  stand as much or sit too long.  This is what I take like every

21  four hours or every six hours.

22          THE COURT:  You do?

23          PROSPECTIVE JUROR:  Yes, sir.

24          THE COURT:  Anybody have any questions of Ms.

25  Briscoe?

```
 1              MR. MERRITT:  I just wanted to clarify what
 2    medication she's taking.
 3              THE COURT:  Tramadol, T-r-a-m-a-d-o-l, and it does
 4    affect you.
 5              PROSPECTIVE JUROR:  Yes, sir.
 6              THE COURT:  Thank you.  You may go back to your seat.
 7    All right.  Look at that line.  I told you.  Come on up.  Wait
 8    just a minute.  All right, that is Ms. Downs; right?  What is
 9    your situation?
10              PROSPECTIVE JUROR:  Well, I'm afraid I'm not going to
11    be very partial to anything in the court system.  My son is in
12    prison, and we just had a hearing for a reconsideration of his
13    sentencing up in Maryland, and I just -- and it was turned
14    down, and all this was in December.  It's just left me very
15    unfair towards the court system.
16              THE COURT:  Now, that was in Maryland; it wasn't in
17    the federal court?
18              PROSPECTIVE JUROR:  No, it was not.
19              THE COURT:  And it didn't involve patents.
20              PROSPECTIVE JUROR:  No, it did not.
21              THE COURT:  It involved criminal law.
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  Do you think you could put all that aside
24    and decide this case, because what you're really deciding is
25    not the court.  You are deciding the rights between ePlus and
```

1    Lawson, not anything to do with the court.  Do you think you

2    could be fair?

3            PROSPECTIVE JUROR:  I would certainly try.

4            THE COURT:  Yes, I know, but could you, because you

5    have to say -- in order for them to be comfortable, they have

6    to be comfortable knowing either you could or couldn't, and

7    it's okay if you can't, but if you can, let us know.  If you

8    can't, you let us know, too.

9            PROSPECTIVE JUROR:  Yes, I will.

10           THE COURT:  You can?  All right, okay.  Thank you.

11   Okay.  Your name?

12           PROSPECTIVE JUROR:  Erika Powell.

13           THE COURT:  All right, Ms. Powell, what is your

14   situation?

15           PROSPECTIVE JUROR:  I don't know if it will be an

16   issue, but I have to go back to school on the 15th.

17           THE COURT:  Where do you go to school?

18           PROSPECTIVE JUROR:  UVa.

19           THE COURT:  You all don't go to class up there

20   anyway, do you?  Anybody have any questions for Ms. Powell?

21           MR. McDONALD:  No, sir.

22           MR. MERRITT:  No, sir.

23           PROSPECTIVE JUROR:  All right, thank you.

24           THE COURT:  All right.  This lady.  What is your

25   name?

1             PROSPECTIVE JUROR:  Monica Redwood.

2             THE COURT:  Okay, Ms. Redwood, what is your

3    situation.

4             PROSPECTIVE JUROR:  I have scheduled Rituxan

5    infusions coming up for rheumatoid arthritis.

6             THE COURT:  You have scheduled what?

7             PROSPECTIVE JUROR:  Rituxan infusions.

8             THE COURT:  What does that mean?

9             PROSPECTIVE JUROR:  It's for treatment for rheumatoid

10   arthritis.  It's IV drugs.  It takes about six hours.

11            THE COURT:  Do you know when it's scheduled?

12            PROSPECTIVE JUROR:  Tomorrow.

13            THE COURT:  Now, is that something you have to have a

14   regular schedule, or could it be rescheduled for next Monday,

15   January 10th?

16            PROSPECTIVE JUROR:  It's a two-step process.  I had

17   my first infusion two weeks ago.

18            THE COURT:  So you need to take this one on this

19   date.

20            PROSPECTIVE JUROR:  Right.

21            THE COURT:  Anybody have any questions?

22            MR. McDONALD:  No.

23            THE COURT:  Thank you, ma'am.  Okay.  Your name is

24   what?

25            PROSPECTIVE JUROR:  Brenton Carson.

1              THE COURT:  Who is your son-in-law?

2              PROSPECTIVE JUROR:  Brian Boggs.  He no longer is

3    there.  He's with Dominion Power now.

4              THE COURT:  Is there anything about his being there

5    or the fact that he left there that would keep you from giving

6    a fair trial to the parties?

7              PROSPECTIVE JUROR:  No, sir.  I just needed to let

8    you know.

9              THE COURT:  I know that, and I told you I'd rather

10   have later knowledge than not.  That's fine.  Anybody have any

11   questions?

12             MR. MERRITT:  No, sir.

13             THE COURT:  Thank you, Ms. Carrington.  We've got one

14   more.

15             PROSPECTIVE JUROR:  Jon Meyers.

16             THE COURT:  Yes, Mr. Meyers, what is your situation?

17             PROSPECTIVE JUROR:  I'm just asking.  Mine's a

18   business issue, but if this thing goes three or four weeks --

19             THE COURT:  It could go three, it could go four, but

20   I doubt it.

21             PROSPECTIVE JUROR:  I was going to wait to see if you

22   pulled me or not, but my issue is I'm a sole proprietor.  I

23   have a presentation on the 24th of January for a new account,

24   and --

25             THE COURT:  You'd probably have to move that.

1            PROSPECTIVE JUROR:  If I move it, I'd lose the deal.

2    I've got no choice.  I'm competing against two other companies,

3    and that's the day the board makes the decision.

4            THE COURT:  Would that keep you from giving a fair

5    trial here today if you were to do that?

6            PROSPECTIVE JUROR:  I'm sorry?

7            THE COURT:  Would that keep you from giving a fair

8    trial --

9            PROSPECTIVE JUROR:  Begrudging, you mean?  No.  It's

10   just I'd lose the deal.

11           THE COURT:  You are a sole proprietor in what area?

12           PROSPECTIVE JUROR:  I'm in financial services.  I'm

13   competing for a contract, and I've got no one else I can give

14   it to to do.

15           THE COURT:  It says you were a sales manager here.

16           PROSPECTIVE JUROR:  Same difference.  Of a financial

17   services group.  Independent contractor for them.

18           THE COURT:  Independent contractor?

19           PROSPECTIVE JUROR:  Yes, sir.

20           THE COURT:  All right.  Anybody have any questions?

21           MR. MERRITT:  I just want to confirm the date of that

22   presentation.

23           PROSPECTIVE JUROR:  Monday, the 24th.  I think that's

24   a Monday.

25           THE COURT:  That's right.  Thank you very much.  That

1    sessions from now on.

2              There will not be a hearing of any evidence

3    on next Monday, January 10.  We'll be off for that.  I

4    haven't decided whether we'll be off for January 17,

5    which is a federal holiday.  I think it's a state

6    holiday, too.  And so I haven't decided that.  That

7    kind of depends on where we are in the case.

8              And so now if you will go with Mr. Langford,

9    I have some business to take up with the lawyers.  And

10   he will let you make phone calls and tell people

11   what's happened in your life.

12             Mr. Neal, you order them lunch.  You-all may

13   remain seated while the jury is being excused, please.

14             (Jury out.)

15             THE COURT:  All right.  Now, I got this email

16   from Mr. Strapp yesterday.  I don't understand what

17   it's about.  Can somebody tell me what the objection

18   to whatever Lawson is going to do in opening statement

19   is?

20             MR. ROBERTSON:  Yes, Your Honor.  Thank you.

21             This issue was raised with Your Honor on at

22   least two occasions before.  The first being at that

23   time Markman hearing.

24             THE COURT:  But what is the issue?  I don't

25   understand it.

97

 1            MR. ROBERTSON:  Tab 6, Your Honor.

 2            THE COURT:  Where is the catalog?

 3            MR. ROBERTSON:  It's the first claim term.

 4            THE COURT:  Okay.  I see.  All right.

 5            MR. ROBERTSON:  So the issue here, Your Honor

 6  is --

 7            THE COURT:  Well, the claim construction has

 8  "published by a vendor" in it.

 9            MR. ROBERTSON:  I understand.  And what they

10  want to do now, Your Honor, is use that as a vessel to

11  imbue further construction into what published by a

12  vendor means.

13            Dr. Shamos, their expert, has suggested that

14  "published by a vendor" means you have to have the

15  entire catalog with all its information, not any

16  subsets, nothing.  That it would be just as if a paper

17  catalog was made into an electronic catalog.

18            What "catalog" was intended to mean, what

19  Your Honor construed it, is that it has to have

20  certain vendor information.

21            THE COURT:  You-all did not ask me to

22  construe "published," did you?

23            MR. ROBERTSON:  No, sir.

24            THE COURT:  "Published" doesn't have any

25  meaning other than its normal and ordinary meaning,

1  does it?

2          MR. ROBERTSON:  I think you even suggested at

3  the pretrial conference.  Your Honor.  That

4  "published" simply meant it could be writing or

5  verbally.  Writing could even be electronic.  And it

6  simply had to be information that was supplied by the

7  vendor.  That's all we're looking for.  We don't think

8  published means --

9          THE COURT:  What reason do you have to

10 believe that they're going to disobey what I've ruled?

11         MR. ROBERTSON:  Because --

12         THE COURT:  Have they told you they are going

13 to argue that or what?

14         MR. ROBERTSON:  Well, they have argued that

15 in one of their slides, Your Honor, that we find to be

16 contrary to the Court's construction.

17         THE COURT:  Which slide are you talking

18 about?

19         MR. ROBERTSON:  They are not numbered, Your

20 Honor.  It's the one that says, Evidence.  Lawson

21 systems.  It's very different.  That's the first one.

22         THE COURT:  Well, all it says --

23         MR. ROBERTSON:  The suggestion, if I might,

24 Your Honor, is going to be that a Lawson customer can

25 take data, information, such as defined in your