# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |  |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF *ePLUS*, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INVALIDITY OF THE ASSERTED CLAIMS PURSUANT TO FED. R. CIV. P. 50 (a), AND FOR JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52 WITH RESPECT TO NON-JURY DEFENSES UNDER 35 U.S.C. §§ 101 AND 112, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Counsel for Plaintiff, ePlus, Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................1

II.  LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW..............................1

III. ARGUMENT ...........................................................................................................2

A.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With
     Respect To The Validity Of The Asserted Claims Under 35 U.S.C. § 102............2

     1.   There is No Legally Sufficient Evidentiary Basis Upon Which A
          Reasonable Jury Could Find That The "Fisher RIMS system" Anticipates
          Any of The Asserted Claims........................................................................4

     2.   There is no legally sufficient evidentiary basis upon which a reasonable
          jury could find that the '989 Patent anticipates each of the asserted claims5

B.   The '989 Patent Does Not Qualify as Prior Art Under Section 102(e) .................7

C.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With
     Respect To The Validity Of The Asserted Claims Under 35 U.S.C. § 103............9

D.   As a Matter of Law, the '989 Patent Cannot Be Used As An Obviousness
     Reference Against the '172 Patent.........................................................................15

E.   None Of The Asserted Claims Are Indefinite Or Constitute Unpatentable Subject
     Matter.....................................................................................................................17

     1.   The Claims Recite Patentable Subject Matter ...........................................18

     2.   The Claims Are Not Indefinite ..................................................................22

F.   There is No Evidence To Support Lawson With Respect To The Validity Of The
     Asserted Claims Under 35 U.S.C. § 112, ¶ 1 (Written Description)....................24

IV.  CONCLUSION........................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Advanced Display Sys. Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000)..................................................................................... 5

*Applied Materials, Inc. v. Gemini Research Corp.*,
835 F.2d 279 (Fed. Cir. 1987)....................................................................................... 8

*Chore-Time Equip. Inc. v. Cumberland Corp.*,
713 F.2d 774 (Fed. Cir. 1983)....................................................................................... 4

*Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*,
2010 U.S. Dist. LEXIS 6806 (S.D. Ohio Jan. 27, 2010) ....................................... 7, 8

*Exxon Research & Eng'g Co. v. U.S.*,
265 F.3d 1371 (Fed. Cir. 2001)................................................................................... 22

*Gould v. General Photonics Corp.*,
534 F. Supp. 399 (N.D. Cal. 1982) ...................................................................... 13, 26

*Graham v. John Deere Co.*,
383 U.S. 1 (1966).......................................................................................................... 9

*Humanscale Corp. v. Compx Int'l, Inc.*,
2010 WL 3222411 (E.D. Va. Aug. 16, 2010).............................................................. 1

*In re Geiger*,
815 F.2d 686 (Fed. Cir. 1987)....................................................................................... 9

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995)..................................................................................... 10

*In re Land*,
368 F.2d 866 (C.C.P.A. 1966) ...................................................................................... 8

*In re Piasecki*,
745 F.2d 1468 (Fed. Cir. 1984)................................................................................... 10

*Ind. Mills & Mfg. v. Dorel Indus.*,
458 F. Supp. 2d 890 (S.D. Ind. 2006) ........................................................................ 13

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008)................................................................................... 11

*Jimenez v. Quarterman*,
129 S. Ct. 681 (2009).................................................................................................... 8

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004)............................................................................. 3, 12

*KSR v. Teleflex*,
550 U.S. 398 (2007)................................................................................................ 9, 10

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
2010 WL 1451203 (D.N.H. Apr. 8, 2010)............................................................ 3, 12

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)..................................................................................................... 21

*Miles-Hickman v. David Powers Homes, Inc.*,
613 F. Supp. 2d 872 (S.D. Tex. 2009) ......................................................................... 2

*Minnesota Mining & Manufacturing Co. v. Johnson & Johnson Orthopedics, Inc.*,
    976 F.2d 1559 (Fed. Cir. 1992) .......................................................................... 10
*Mullins v. Equifax Info. Servs., LLC*,
    2007 WL 2471080 (E.D. Va. Aug. 27, 2007) ...................................................... 2
*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
    520 F.3d 1358 (Fed. Cir. 2008) ........................................................................... 9
*Pfizer Inc. v. Perrigo Co.*,
    988 F. Supp. 686 (S.D.N.Y. 1997) ..................................................................... 13
*Polaroid Corp. v. Eastman Kodak Co.*
    641 F. Supp. 828 (D. Mass. 1985), *aff'd* 789 F.2d 1556 (Fed. Cir. 1986) ............... 13
*Praxair, Inc. v. Atmi, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008) ......................................................................... 22
*Prima Tek II, LLC v. Polypap, SARL*,
    412 F.3d 1284 (Fed. Cir. 2005) ........................................................................... 4
*Prometheus Labs., Inc. v. Mayo Collaborative Servs.*,
    2010 WL 5175124 (Fed. Cir. Dec. 17, 2010) ................................................ 20, 21
*Proveris Scientific Corp. v. Innovasystems, Inc.*,
    536 F.3d 1256 (Fed. Cir. 2008) ..................................................................... 3, 12
*Research Corp. Techs. v. Microsoft Corp.*,
    2010 U.S. App. LEXIS 24984 (Dec. 8, 2010 Fed. Cir.) ............................... 8, 16, 19
*Riverwood Int'l Corp. v. R. A. Jones & Co.*,
    324 F.3d 1346 (Fed. Cir. 2003) ..................................................................... 8, 16
*Stratoflex Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1998) ......................................................................... 10
*Union Carbide Corp. v. American Can Co.*,
    724 F.2d 1567 (Fed. Cir. 1984) ........................................................................... 4
*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ........................................................................... 1
*Vulcan Eng'g. Co., Inc. v. Fata Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002) ......................................................................... 10

**Statutes**

35 U.S.C. § 101 ................................................................................................ passim
35 U.S.C. § 102 ................................................................................................ passim
35 U.S.C. § 103 ...................................................................................................... 3
35 U.S.C. § 112 .......................................................................................... 17, 23, 24
35 U.S.C. §120 .................................................................................................... 16

**Other Authorities**

American Inventor's Protection Act,
    Pub. L. 106-113 §4807, 113 Stat. 1536, 1501A-591 (1999) .............................. 16
CHISUM ON PATENTS ........................................................................................... 3
Webster's II New Riverside University Dictionary .......................................................... 7, 8

**Rules**

Federal Rule of Civil Procedure 50 ................................................................................................. 1
Federal Rule of Civil Procedure 52 ............................................................................. 1, 2, 17, 18

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Plaintiff *e*Plus, Inc. ("*e*Plus"), by counsel, respectfully moves for judgment as a matter of law that Defendant Lawson Software, Inc. ("Lawson"), has failed to show a legally sufficient evidentiary basis on which a reasonable jury could find that any of the asserted claims are invalid under any theory, including invalidity under Sections 102, 103, and 112 of the patent statute.[1]  Because Lawson's additional defenses of indefiniteness (Section 112) and unpatentable subject matter (Section 101) constitute issues of law for the Court, rather than jury issues, *e*Plus also moves for a judgment of no invalidity on partial findings pursuant to Rule 52 or, alternatively, for judgment as a matter of law pursuant to Rule 50, with respect to these defenses.  Lawson has been fully heard with respect to all of its invalidity contentions.  Accordingly, *e*Plus respectfully requests that the Court grant judgment as a matter of law that the asserted claims of the patents-in-suit are not invalid.

## II.     LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50(a) provides that judgment as a matter of law may be granted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1331 (Fed. Cir. 2010) (quoting rule).  Under the rule, "the court must examine the evidence in the light most favorable to the nonmoving party and ascertain 'whether a reasonable trier of fact could draw only one conclusion from the evidence.'"  *Humanscale Corp. v. Compx Int'l, Inc.,* 2010 WL 3222411, * 1 (E.D. Va. Aug. 16, 2010) (quoting *GSM Dealer Servs., Inc. v. Chrsyler Corp.,* 32 F.3d 139, 142 (4th Cir. 1994)).  Thus, "[t]he district court is not free to weigh the evidence presented at trial" but must give the non-movant "the benefit of all

---

[1]  This brief sets forth *e*Plus's arguments in support of judgment as a matter of law pursuant to its oral argument on Friday, January 21.

reasonable inferences that may be drawn from the evidence." *Mullins v. Equifax Info. Servs.*, *LLC*, 2007 WL 2471080, *1 (E.D. Va. Aug. 27, 2007) (internal citations omitted).

For actions tried without a jury, Federal Rule of Civil Procedure 52 establishes the framework for factual findings and legal conclusions to be made by the court. "The court must find the facts specially and state its conclusions of law separately" and "[j]udgment must be entered under Rule 58." Fed. R. Civ. P. 52(a)(1). The court may render judgment against a party on a claim or defense after the party has been fully heard on the issues pertinent to the claim or defense:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence.

Fed. R. Civ. P. 52(c). The court may enter judgment on non-jury issues presented in the course of a jury trial pursuant to Rule 52. *See, e.g., Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872 (S.D. Tex. 2009) (construing Rule 50 motion raising non-jury issues as a request for a judgment on partial findings pursuant to Rule 52(c)).

## III.   ARGUMENT

### A.   There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With Respect To The Validity Of The Asserted Claims Under 35 U.S.C. § 102

There is no legally sufficient evidentiary basis upon which a reasonable jury could find that the "Fisher RIMS system," U.S. Patent No. 5,712,989 (the "'989 Patent"), or the "RIMS brochure" (DX 61) anticipate any of the asserted claims.[2]

---

[2]  Defendant asserted in the Final Pre-Trial Order that U.S. Pat. No. 5,319,542 (to King) and the P.O. Writer System and/ or P.O. Writer Manual anticipate one or more of the asserted claims. Dkt. No. 480 (Amended Final Pre-Trial Order ) at 21-22.  Defendant did not introduce any

An invention is patentable only if it has not been anticipated by an earlier reference, device, or practice as defined under 35 U.S.C. § 102. *See* 35 U.S.C. § 102(a)-(e). Anticipation requires that each element of the claim at issue be found in a single prior art reference. *See, e.g., Verizon*, 602 F.3d at 1336-37. The single prior art reference also must enable the claimed invention such that a person of ordinary skill in the art could practice the invention without undue experimentation. *See id.* Anticipation is analyzed on a claim-by-claim basis and the standard for anticipation is one of "strict identity." 1 CHISUM ON PATENTS, § 3.02 (2002).

In general, a defendant – particularly in cases involving complex technology – must introduce expert testimony to explain to the jury how fact evidence anticipates or renders obvious each of the asserted claims. *See Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (expert testimony is required to establish invalidity where the "subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson"); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 n. 4 (Fed. Cir. 2004) (reversing district court for permitting jury to evaluate prior art fact evidence untethered to expert testimony, stating that "we hold that [Defendant] needed some explanatory testimony or other evidence to compare [the prior art] with the patent at issue given that the [prior art] reference is a technical patent document"); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 2010 WL 1451203, *3 (D.N.H. Apr. 8, 2010) ("In light of the technical and complex nature of the invention . . . prior art is not admissible to show invalidity under § 102 or § 103 unless a qualified expert witness provides an opinion to explain the art and its relationship to the [patent-in-suit].").[3]

---

expert testimony at trial to support these theories and neither reference is included in the Court's charge to the jury.

[3] While the Federal Circuit has held in certain instances that expert testimony is not a prerequisite to a jury verdict of invalidity, those instances involve comparatively simple technologies which a lay jury can understand without explanation from an expert. *See, e.g.,*

1.      **There is No Legally Sufficient Evidentiary Basis Upon Which A Reasonable Jury Could Find That The "Fisher RIMS system" Anticipates Any of The Asserted Claims.**

Dr. Shamos did not rely on either the "Fisher RIMS system" or the RIMS brochure to support his opinion that the asserted claims are invalid for anticipation.  Tr. 2546:2-9 (Shamos) (Ex. 1)[4].  For this reason alone, there is no legally sufficient evidentiary basis upon which a reasonable jury could find that the "Fisher RIMS system"[5] anticipates any of the asserted claims. What is more, Mr. Momyer, co-inventor of both the Electronic Sourcing System and the RIMS system testified that Fisher Scientific Co. ("Fisher") released between 30 and 40 different versions of the so-called "RIMS system."  Tr. 2135:11-18 (Momyer) (Ex. 2).  As the Court observed, this testimony is undisputed.

Defendant does not identify any particular version of the "Fisher RIMS system" that it contends existed at any particular point in time and which anticipates or renders obvious the asserted claims, except to state generically that the '989 Patent "describes the Fisher RIMS system."  Dkt. No. 480 (Amended Final Pre-Trial Order ) at 21.  Defendant did not introduce any evidence that Fisher ever used, sold or offered to sell a version of the RIMS system that included

---

*Prima Tek II, LLC v. Polypap, SARL*, 412 F.3d 1284 (Fed. Cir. 2005) (involving "an assembly and method" to display flowers); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567 (Fed. Cir. 1984) (plastic bag dispenser); *Chore-Time Equip. Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983) (poultry feeder).  In a case such as this in which both parties put on hours of testimony from specialized experts, the jury cannot be expected to understand the technology without the aid of expert testimony.

[4] The cited transcript pages are attached as the following exhibits:  Exhibit 1 (Michael Shamos); Exhibit 2 (Doug Momyer); Exhibit 3 (Brooks Hilliard); Exhibit 5 (Lawson counsel); Exhibit 6 (Pamela Eng); Exhibit 7 (Charles Gounaris); Exhibit 8 (Bob Kinross); Exhibit 9 (James Johnson).

[5] Based on the Proposed Verdict Form Defendant filed with the Court on January 23, 2011, it appears Defendant no longer contends that the RIMS Brochure is an anticipating reference. Defendant represented in open court on January 24, 2011 that it agrees that the RIMS Brochure is no longer an anticipating reference.

the features described in the '989 Patent.  Indeed, the unrebutted testimony establishes that ***the '989 Patent does not describe the RIMS system actually in use in April 1993***, since Fisher never implemented at least some of the features discussed in the '989 Patent into a functioning system.  Tr. 2083:9 – 2084:3 (Momyer) (Ex. 2); 2676:21 – 2677:12 (Hilliard) (Ex. 3).

Likewise, Defendant never introduced any evidence that Fisher sold a version of the RIMS system that performed the features discussed in the RIMS brochure (DX-61).  In contrast, Mr. Momyer testified that Fisher never implemented many of the features discussed in the RIMS brochure (DX-61).  Tr. 253:4 – 254:14 (Momyer) (Ex. 2).  Again, this testimony is unrebutted.  Furthermore, Defendant has not introduced any evidence that the RIMS brochure would have enabled a person of ordinary skill to practice the features of the asserted claims without undue experimentation.  *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1277 (Fed. Cir. 2000) (single prior art reference for anticipation must enable the claimed invention such that a person of ordinary skill in the art could practice the invention without undue experimentation).  Accordingly, for at least these reasons, there is no legally sufficient evidentiary basis for a jury to render a verdict of anticipation.

> **2.      There is no legally sufficient evidentiary basis upon which a reasonable jury could find that the '989 Patent anticipates each of the asserted claims**

No reasonable jury would have a legally sufficient evidentiary basis to find that the '989 Patent anticipates any of the asserted claims.  Moreover, *e*Plus is entitled to Judgment as a Matter of Law on Defendant's anticipation defense because Dr. Shamos did not offer any expert opinion that the '989 Patent anticipates any of the asserted claims.  Rather, Dr. Shamos gave his conclusory opinion that if the jury determines that the '989 Patent discloses "at least two catalogs and collection of catalogs, then RIMS anticipates the asserted claims because RIMS has everything else."  Tr. 2509:1-7 (Shamos) (Ex. 1).  But Dr. Shamos never opined that the '989

Patent actually disclosed each element of any of the following asserted claims: claim 3 of the '683 Patent; claims 1, 2, 6, 21, 22 and 29 of the '516 Patent; or claim 1 of the '172 Patent.[6]

Further, no reasonable jury could find that the '989 Patent anticipates the asserted claims since the '989 Patent does not disclose several elements and features including that:

- The '989 Patent does not disclose an electronic-sourcing system. It was used by a customer-service representative of a Distributor, not a buyer, and lacked multiple sources for items. Tr. 2679:4-13 (Hilliard) (Ex. 3).

- The '989 Patent does not disclose a system with multiple vendor catalogs, or a database having items associated with multiple vendors, as Dr. Shamos concedes. The database contained only inventory records, and items within the database lacked any associated source-related information. Tr. 2679:14 – 2681:2 (Hilliard) (Ex. 3).

- The '989 Patent does not disclose a system with catalog-selection capability or a search program as required to meet the Court's construction under claim 3 of the '683 Patent. Nor did it include any catalogs to select. Tr. 2681:3-11 (Hilliard) (Ex. 3).

- The '989 Patent does not disclose a system with a search program for searching. Items could only be looked up by item number, and only a single item record could be retrieved at a time, as disclosed in the '989 Patent. Tr. 2681:12 – 2683:12 (Hilliard) (Ex. 3).

---

[6] The table below references portions of Dr. Shamos's testimony wherein he gives his opinions on whether any prior art discloses a particular element. In no instance, does Dr. Shamos opine that the '989 Patent discloses the elements listed below:

| Claim/ Element | Tr. Reference (Shamos) (Ex. 1) | Missing element(s) |
|---|---|---|
| '516/ claim 1 [b, c, d] | 2446:2 – 2448:3 | Predetermined criteria; catalog selection protocol |
| '516/ claim 2 | 2451:16 – 2452:6 | Depends from claim 1 |
| '516/ claim 6 | 2452:7 – 2453:14 | Depends from claim 1 |
| '516/ claim 21 [c] | 2459:6-20 | Catalog selection criteria |
| 516/ claim 22 | 2464:13 – 2467:18 | Depends from claim 21 |
| 516/ claim 29 [b, c, d] | 2467:19 – 2468:7 | Predetermined criteria; catalog selection protocol |
| '683/ claim 3 [b] | 2470:9 – 2471:13 | Selecting catalogs |
| '172/ claim 1 [b] | 2492:16-23 | Applying '683/ claim 3[b] |

- The '989 Patent does not disclose a system with the capability to generate purchase orders from requisitions. Purchase orders were generated by a separate system on the Fisher mainframe host computer. There was no linkage between these purchase orders and the requisitions created by the system. Tr. 2686:24 – 2688:9; 2693:25 – 2695:17 (Hilliard) (Ex. 3).

- The '989 Patent does not disclose a system with a requisition capable of converting data about a requisition item from one source to data about a similar item from a different source. There was no associated source information in the requisitions built by the system as shown in Table 1 at Col. 37 of the '989 Patent. Tr. 2695:18 – 2697:23 (Hilliard) (Ex. 3).

Thus, for at least the forgoing reasons, there is no legally sufficient evidentiary basis upon which a reasonable jury could find that the '989 Patent anticipates each of the asserted claims.

**B.      The '989 Patent Does Not Qualify as Prior Art Under Section 102(e)**

The Court should not permit the '989 Patent to be used as prior art against the patents-in-suit under 35 U.S.C. § 102 (e). This provision provides that a person shall be entitled to a patent unless the invention was described in "a patent granted on an application for patent ***by another*** filed in the United States before the invention by the applicant for patent. . . ." (emphasis added). The plain language of the statute requires the presence of at least one other, uncommon inventor on the alleged prior art patent. Webster's II New Riverside University Dictionary defines "another" as "a different one" or "an additional one." Ex. 10 (WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1988)) at 111. Because the '989 Patent does not include any inventor who is not also named on the patents-in-suit, the '989 Patent is not "by another" and should not be available for use as prior art against the patents-in-suit.

There is currently conflicting precedent regarding the meaning of "by another" under 35 U.S.C. § 102 (e). *See Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 2010 U.S. Dist. LEXIS 6806, *27 (S.D. Ohio Jan. 27, 2010) ("[t]his Court finds that the law that defines what constitutes 'by another' is muddled."). Some courts have held that a reference may be found to be "by another" under Section 102(e) where the inventors listed on a prior art patent overlap with, but are not

identical to, those listed on a later patent.  *See In re Land*, 368 F.2d 866, 881 (C.C.P.A. 1966).

The Federal Circuit, however, has held that the opposite may be true: "the fact that an application

has named a different inventive entity than a patent does not necessarily make that patent prior

art."  *Applied Materials, Inc. v. Gemini Research Corp.*, 835 F.2d 279, 281 (Fed. Cir. 1987)

(explaining that "even though an application and a patent have been conceived by different

inventive entities, if they share one or more persons as joint inventors, the 35 U.S.C. § 102 (e)

exclusion for a patent granted to 'another' is not necessarily satisfied.").  Rather, the question of

whether a reference is prior art thus may turn on whether the portions of the reference relied on

as prior art, and the subject matter of the claims in question, represent the work of a common

inventive entity.  *See Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346, 1356 (Fed. Cir.

2003); *Ethicon Endo-Surgery*, 2010 U.S. Dist. LEXIS 6806, *31-32.  In this case, Defendant

failed to establish that the portions of the '989 Patent relied on as prior art meet this test and,

therefore, the '989 Patent should not be available as prior art.

Moreover, in light of the absence of any clear precedent, as well as the Federal Circuit's

disavowal of an automatic rule for inventions conceived by overlapping inventors, the plain

language of 35 U.S.C. § 102 (e) offers the best guidance under this circumstance.  *See Jimenez v.*

*Quarterman,* 129 S. Ct. 681, 685 (2009) ("It is well established that, when the statutory language

is plain, we must enforce it according to its terms.").  As articulated above, the plain meaning of

"another" is "a different one" or "an additional one."  *See* Ex. 10 (WEBSTER'S II NEW RIVERSIDE

UNIVERSITY DICTIONARY (1988)) at 111 (defining "another" as "a different one" or "an

additional one").  On its face, therefore, the statutory language "by another" requires the

presence of at least one additional, ***different*** inventor on the alleged prior art patent.

Applying this plain language interpretation to the issue at hand, the '989 Patent was not made "by another" as required by 35 U.S.C. § 102 (e), and therefore does not qualify as prior art to any of the patents-in-suit.  The '989 Patent names two inventors, James M. Johnson and Douglas A. Momyer, while the patents-in-suit all name four inventors, James M. Johnson, Robert P. Kinross, Francis J. Melly, and Douglas A. Momyer.  For this reason, the '989 Patent should not be available for use as prior art against the patents-in-suit.[7]

### C.    There Is No Legally Sufficient Evidentiary Basis To Find For Lawson With Respect To The Validity Of The Asserted Claims Under 35 U.S.C. § 103

A patent may be obtained only if the subject matter of the invention would not have been obvious at the time of the invention.  35 U.S.C. § 103(a).  An invention is "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made, considering: (i) the scope and content of the prior art relied upon; (ii) the differences between each claim and the prior art; (iii) the level of ordinary skill in the art at the time the invention was made; and (iv) additional secondary considerations that indicate that the invention was not obvious.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

When attempting to combine alleged prior art references, there must have been something in the prior art as a whole to suggest the desirability, and therefore the obviousness, of making the combination.  *See, e.g., In re Geiger*, 815 F.2d 686 (Fed. Cir. 1987).  This requirement — known as the "teaching-suggestion-or-motivation to combine" test — remains one test for analyzing obviousness following *KSR v. Teleflex*, 550 U.S. 398 (2007).  *See, e.g., Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364-65 (Fed. Cir. 2008).

---

[7] Lawson did not assert any basis for considering the '989 Patent as prior art other than 35 U.S.C. § 102 (e).  *See* Dkt. No. 480 (Revised Amended Final Pre-trial Order) at ¶ 30.

Secondary considerations, where present, must be considered by the court. *See Stratoflex Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1998). Licenses of the patents-in-suit to third parties are relevant indicia of non-obviousness of an issued patent. *In re GPAC Inc.*, 57 F.3d 1573 (Fed. Cir. 1995) (licenses taken under a patent may constitute evidence of nonobviousness); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1575 (Fed. Cir. 1992) (stating that patentee's and infringer's major competitor took a license from the patentee and noting that "such real world considerations provide a colorful picture of the state of the art, what was known by those in the art, and a solid evidentiary foundation on which to rest a nonobviousness determination."). Additionally, evidence of long felt, unmet need is evidence of non-obviousness as is industry recognition in the form or awards or praise. *Vulcan Eng'g. Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002) ("Appreciation by contemporaries skilled in the field of the invention is a useful indicator of whether the invention would have been obvious to such persons at the time it was made."); *In re Piasecki*, 745 F.2d 1468, 1471 (Fed. Cir. 1984) (reversing obviousness finding based on evidence of secondary considerations, including long felt, unmet need).

Further, it is often necessary for a court to look at interrelated teachings of multiple patents, the effects of demands known in the design community or present in the marketplace, and the background knowledge possessed by a person of ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patents in issue. *KSR*, 550 U.S. at 418. To facilitate review, the analysis should be made explicit. *Id.* An obviousness challenge cannot be sustained by mere conclusory statements; instead "[t]here must be some articulated reasoning with some rational underpinning

to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).

Preliminarily, Defendant obscures the fact that it is actually relying upon six different references, each of which is fundamentally defective.[8]  For example, Defendant relies upon "the Fisher RIMS System" without ever defining during the trial what that is.  As discussed above, Defendant does not identify any particular version of the "Fisher RIMS system," except to state generically that the '989 Patent "describes the Fisher RIMS system."  Dkt. No. 480 (Amended Final Pre-Trial Order ) at 21.  Defendant has not presented evidence from which a jury could determine that the system described in the '989 Patent ever qualified as a public use.  While "RIMS systems" existed before and after August, 1993, the evidence is undisputed that the particular RIMS system described in the '989 Patent was not.  And Defendant has never analyzed or explained how the system discussed in the RIMS Brochure corresponds to the system in the '989 Patent.  Thus, when Defendant asserts, for example, the '989 Patent, a RIMS Brochure, and an alleged "RIMS system" as prior art, it suggests that they are all one and the same.  In truth, Defendant is talking about three different alleged prior art references, but it glosses over this critical fact.  Similarly, Defendant relies on an undefined "TV/2 System" without ever explaining what the features of that system are or introducing any evidence at trial that the system was used, sold, or offered for sale.

Defendant thus contends that the combination of the '989 Patent and the TV/2 search program renders obvious all the asserted claims of the patents-in-suit.  Dkt. No. 480 (Revised Amended Final Pre-trial Order) at 23; Tr. 2798:9-11 (Lawson counsel) (Ex. 5).  No reasonable

---

[8]  In the Joint Alleged Prior Art Instructions filed January 22, 2011, Defendant asserted that, for obviousness, it is relying on (1) "The Fisher RIMS System," (2) the '989 Patent, (3) "The RIMS Brochure," (4) "The TV/2 General Information Brochure," (5) "The TV/2 Brochure," and (6) The TV/2 System."

jury could find that any of the asserted claims are rendered obvious by the combinations relied

upon by Defendant, e.g., the '989 Patent, and "the TV/2 system" or either of the TV/2

documents.[9]

Defendant also failed to present any evidence from which a reasonable jury could find

that what is described in the '989 Patent and a TV/2 "System" as alleged, were ever in public use

or on sale.  As explained above, Dr. Shamos relied exclusively on the '989 Patent itself to

support his obviousness theory presented at trial.  Tr. 2548:2-5 (Shamos) (Ex. 1).  But Defendant

failed to introduce any evidence that a "RIMS system" containing each of the features disclosed

in the '989 Patent was publicly used, sold or offered for sale.  Tr. 231:17-232:5; 233:14-19

(Momyer) (Ex. 2).  Further, Defendant's own paid consultants, former IBM employees Pamela

Eng and Charles Gounaris, testified that no TV/2 system was in public use before August 10,

1994.  Tr. 2001:21-23; 2003:11-2004:3 (Eng) (Ex. 6); 2242:10-2245:11 (Gounaris) (Ex. 7).

---

[9] Defendant also stated in the Final Pre-Trial Order its factual contention that:

- The combination of the Fisher RIMS system/'989 Patent and U.S. Patent No.
  4,992,940 ("the '940 patent) render obvious all of the asserted claims of the patents-
  in-suit.  Dkt. No. 480 (Revised Amended Final Pre-trial Order) at ¶ 43.

- The combination of the J-CON system/J-CON manual and the '940 patent render
  obvious claims 3, 26, 28, and 29 of the '683 Patent, claims 1, 9, 21, 22, and 29 of the
  '516 Patent, and claims, and claim 1 of '172 Patent.  Dkt. No. 480 (Revised Amended
  Final Pre-trial Order) at ¶ 44.

- The combination of the J-CON system/ J-CON manual, the P.O. Writer system/ P.O.
  Writer manual render obvious claims 3, 26, 28, and 29 of the '683 Patent, claims 1, 6,
  9, 21, 22, and 29 of the '516 Patent, and claims, and claim 1 of '172 Patent.  Dkt. No.
  480 (Revised Amended Final Pre-trial Order) at ¶ 45.

Defendant offered no expert testimony at trial to support any of these contentions.  And it did not
introduce the '940 patent into evidence.  Consequently, the record is bare of adequate support
form which a reasonable jury could find that any of these combinations renders obvious the
asserted claims.  *Proveris*, 536 F.3d at 1267; *Koito Mfg.*, 381 F.3d at 1152 n. 4; *Marine Polymer
Techs.,* 2010 WL 1451203 at *3.

Indeed, the first commercial version of the TV/2 product ever made was used in connection with Fisher's electronic-sourcing system.  Tr. 2001:21-23; 2003:11-2004:3; 2004:12-18 (Eng) (Ex. 6).  And Defendant has not introduced any evidence of a motivation to combine any of these references beyond Dr. Shamos's conclusory assertions.

The Patent and Trademark Office allowed 79 claims in the asserted patents despite having both the '989 Patent and the TV/2 brochures before it.  Both RIMS and TV/2 are referenced dozens of  times in the specification.[10]  A reference disclosed in the patent specification is presumed to have been considered by the Patent and Trademark Office.  *See Mills & Mfg. v. Dorel Indus.*, 458 F. Supp. 2d 890, 931 (S.D. Ind. 2006); *Pfizer Inc. v. Perrigo Co.*, 988 F. Supp. 686, 692 (S.D.N.Y. 1997); *Polaroid Corp. v. Eastman Kodak Co.*, 641 F. Supp. 828, 833 (D. Mass. 1985), *aff'd* 789 F.2d 1556 (Fed. Cir. 1986); *Ind.*; *Gould v. General Photonics Corp.*, 534 F. Supp. 399, 403 (N.D. Cal. 1982).

Moreover, even as alleged by Defendant, the combination of the '989 Patent and the TV/2 product lacks at least the following elements of the asserted claims:

- Neither the system allegedly described in the '989 Patent nor the alleged TV/2 product was an electronic-sourcing system.  As disclosed in the'989 Patent and acknowledged by Defendant's expert, the RIMS system was used by a customer service representative at a distribution center, not a prospective buyer.  PX-1 at Abstract; Tr. 234:5-19 (Momyer) (Ex. 2); Tr. 2575:18-24; 2576:5-25 (Shamos) (Ex. 1); Tr. 2677:13-2678:10 (Hilliard) (Ex. 3).  The documents relied upon by Defendant also show that the TV/2 product was simply a document-viewer program, not a procurement system.  *See* DX-105 at G0000006 ("Technical Viewer/2 is an electronic documentation program that any organization can use to produce and display large amounts of information."); DX-107 at G0000030 ("[TV/2] enables users to locate precise details and diagrams quickly from an IBM Personal System/2 workstation."); *see also* Tr. 1954:5-12 (Eng) (Ex. 6); Tr. 2710:15-2711:7 (Hilliard) (Ex. 3).

- Neither the system allegedly described in the '989 Patent nor the alleged TV/2 product included multiple product catalogs.  The RIMS system was a single-source system.  Tr.

---

[10] *See, e.g.*, PX-1 at col.1, ll. 12-25; col. 1., l. 61; col. 2, l. 12; col. 2, l. 15; col. 4, l. 3; col. 4, l. 6; col. 4, l. 8; col. 4, l. 19; col. 5, l. 64; col. 6, l. 36; col. 9, l. 5; col. 9, l. 22; col. 9, l. 34; col. 10, l. 41; col. 12, l. 53; etc.

340:13-15 (Momyer) (Ex. 2). The TV/2 product was simply a search program. Tr. 444:3-6 (Kinross) (Ex. 8); Tr. 1981:24-1982:8 (Eng) (Ex. 6); Tr. 2711:8-13 (Hilliard) (Ex. 3). Even Defendant's own expert agreed. Tr. 2321-2322:5 (Shamos) (Ex. 1).

- Neither the system allegedly described in the '989 Patent nor the alleged TV/2 product included the capability to convert data about a requisition item associated with one source to a similar item from a different source. No sources were associated with the requisition-line items in the RIMS system. Tr. 265:5-2; 343:11-344:12 (Momyer) (Ex. 2). The TV/2 product did not generate requisitions at all. Tr. 2560:23-2561:10 (Shamos) (Ex. 1); Tr. 2711:14-18 (Hilliard) (Ex. 3).

- Neither the system allegedly described in the '989 Patent nor the alleged TV/2 product included the capability to generate purchase orders from requisitions. The RIMS system did not generate purchase orders from the data in the requisitions. Tr. 265:5-21 (Momyer); Tr. 458:15-25 (Johnson). Because requisitions generated by the RIMS system did not include source-related data, purchase orders could only be created, if at all, at the distributor's mainframe-host computer with manual intervention by a purchasing-department employee. Tr. 353:8-12, 354:24-355:3, 393:24-394:15 (Momyer) (Ex. 2). The TV/2 product did not generate purchase orders at all. Tr. 2712:17-24 (Hilliard) (Ex. 3).

- Neither the system allegedly described in the '989 Patent nor the alleged TV/2 product included the capability to determine the availability of selected matching requisition items in external-vendor inventory. Tr. 460:10-15 (Johnson) (Ex. 9); Tr. 2713:21-2715:3 (Hilliard) (Ex. 3).

Furthermore, it is undisputed that numerous modifications were made to the RIMS system and the TV/2 product in order to build the patented electronic-sourcing system. *See, e.g.,* Tr. 293:3-294:3 (Momyer) (Ex. 2); Tr. 2005:9-13 (Eng) (Ex. 6); Tr. 2561:11-21 (Shamos) (Ex. 1). Among the necessary modifications made to the RIMS system were:

- Modification of the user interface to enable use by prospective customers. Tr. 457:1-20 (Johnson) (Ex. 9).

- Modification to accommodate multiple catalog databases having items associated with vendors. Tr. 404:10-14 (Momyer) (Ex. 2).

- Modification to enable the transfer of matching items found in search results to the requisition and purchasing system. Tr. 454:13-455:8 (Johnson) (Ex. 9); 2561:11-16 (Shamos) (Ex. 1).

- Development of the capability to generate purchase orders from requisitions. Tr. 458:7-14 (Johnson) (Ex. 1).

14

- Development of the capability to divide a single requisition among multiple purchase orders directed to multiple vendors.  Tr. 450:18-451:11 (Johnson) (Ex. 9).

- Modification to enable communication to external-vendor databases to determine the availability of requisition items in vendor inventory.  Tr. 451:17-23, 459:16-460:9 (Johnson) (Ex. 9).

Among the necessary modifications made to the TV/2 product were:

- Development of the capability to search catalog databases.  Tr. 292:6-12 (Momyer) (Ex. 2); 444:7-445:25 (Kinross) (Ex. 8); 2012:19-2013:5; 2013:14-2014:1 (Eng) (Ex. 6); Tr. 2561:17-21 (Shamos) (Ex. 1).

- Development of the capability to select catalogs to search.  Tr. 411:2-412:2 (Kinross) (Ex. 8); 2006:6-15; 2007:16-21; 2008:18-2009:3; 2009:17-23 (Eng) (Ex. 6).

- Development of an order list necessary to retain matching items found in conducting searches of catalogs.  Tr. 408:22-409:3 (Kinross) (Ex. 8).

- Development of an interface to accommodate the transfer of data between the search program and the requisitioning system.  Tr. 2009:4-16; 2010:9-17; 2014:2-5 (Eng) (Ex. 6); 2561:11-16 (Shamos) (Ex. 1).

Moreover, Dr. Shamos did not consider objective indicia of non-obviousness such as licensing of the patents-in-suit or industry recognition.  And Dr. Shamos's opinion that the J-CON system or the P.O. Writer system could meet the need for an electronic sourcing system was conclusory, unsupported and without any reasoned basis.

Accordingly, for at least these reasons, *e*Plus is entitled to judgment as a matter of law that the alleged RIMS system combined with the alleged TV/2 system do not render any asserted claim of the patents invalid.

## D.     As a Matter of Law, the '989 Patent Cannot Be Used As An Obviousness Reference Against the '172 Patent

The '989 Patent cannot be used as an obviousness reference against the '172 Patent under Section 103 of the patent statute.  Indeed, if it were to qualify as prior art at all, the '989 Patent

may qualify only under Section 102(e).[11]  Because of this, and because the '172 Patent was under

an obligation of assignment to the owner of the '989 Patent, the '989 Patent is disqualified as

obviousness prior art against the '172 Patent under Section 103(c)(1).  The relevant subsection of

Section 103 reads:

> *[s]ubject matter developed by another person*, which qualifies as prior art only under one or more of subsections (e), (f), and (g) of section 102 of this title, *shall not preclude patentability under this section where the subject matter and the claimed invention were*, at the time the claimed invention was made, owned by the same person or *subject to an obligation of assignment to the same person*.

35 U.S.C. § 103(c)(1) (2006) (emphasis added).  This subsection of 103(c) was amended in 1999

to include subsection 102(e), and is applicable to patents "filed on or after the November 29,

1999 effective date."  *Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1355 fn. 2

(Fed. Cir. 2003); *see also* American Inventor's Protection Act, Pub. L. 106-113 §4807, 113 Stat.

1536, 1501A-591 (1999).

The '172 Patent was filed on March 22, 2000 and claimed the benefit of the filing date of

the '683 Patent, which was filed on August 10, 1994.  PX- 003 ('172 Patent) at ePLUS0222999.

Accordingly, the date on which the invention claimed by the '172 Patent was made is that

patent's effective filing date — August 10, 1994.  *See* 35 U.S.C. §120.

---

[11] The '989 Patent was not published until it issued on January 27, 1998.  PX-0010.  Because the '989 Patent was not published until 1998, it does not qualify as prior art to the '172 Patent under section 103(a), which requires the prior art invention to be described in a printed publication more than one year prior to the '172 Patent's invention date of August 14, 1994.  *See* 35 U.S.C. §102 (a).  Likewise, the '989 Patent does not qualify as prior art under section 102(b), which requires that the prior art invention be described in a printed publication more than one year prior to the '172 Patent's effective filing date of August 14, 1994.  *See* 35 U.S.C. §102 (b); *see also* 35 U.S.C. §120 (explaining how a later filed application is entitled to the benefit of the filing date of an earlier filed application for prior art purposes); *see also Research Corp. Techs. v. Microsoft Corp.*, 2010 U.S. App. LEXIS 24984, *22 (Fed. Cir. Dec. 8, 2010) (explaining effective filing dates for prior art purposes under 35 U.S.C. § 120).

On August 10, 1994, the inventors of the '172 Patent were under an obligation to assign their invention to Fisher in consideration of their employment, and in fact did assign that invention to Fisher on September 30, 1994.  PX-007 ('683 Patent File History) at ePLUS0205143.  With respect to the '989 Patent, the invention claimed therein was owned by Fisher at least between its April 2, 1993 filing date and its January 27, 1998 issue date.  *See* (PX-10) at 1.  Indeed, Defendant does not dispute that the common ownership prong of Section 103(c)(1) is satisfied with respect to the '989 and '172 Patents.  Tr. at 2843:18-21 (Ex. 5) ("THE COURT: Why weren't they owned by the same person?  COUNSEL FOR DEFENDANT: They are.  I'm not disputing that.").

Because the '989 Patent is, if at all, only prior art to the '172 Patent under 35 U.S.C. Section 102 (e) and because it is undisputed that the invention claimed by the '172 Patent was subject to an obligation of assignment to Fisher — the owner of the '989 Patent — when it was made on August 10, 1994, the '989 Patent may not be used as a prior art reference to preclude the patentability of the '172 Patent as a matter of law.  35 U.S.C. § 103(c)(1) (2006).

**E.    None Of The Asserted Claims Are Indefinite Or Constitute Unpatentable Subject Matter**

The Court should find under Federal Rule of Civil Procedure 52, or alternatively under Federal Rule of Civil Procedure 50, that none of the asserted claims of the patents-in-suit are invalid as unpatentable subject matter under 35 U.S.C. § 101, or indefinite under 35 U.S.C. § 112, ¶ 2.  Defendant's factual contentions in the Final Pretrial Order include Defendant's previously-litigated assertions that certain claims are "directed to non-statutory subject matter" and certain claims are "are invalid under 35 U.S.C. § 112 ¶ 2 and ¶ 6 as indefinite."  Dkt. No. 480 (Revised Amended Final Pre-trial Order) at 25.  These are not really "factual contentions,"

and Defendant fails to identify any specific factual issue that the Court should decide.[12]

Moreover, Defendant has not introduced any evidence in the course of this trial that would create a factual dispute with respect to these defenses.  That is because these are issues of law, not issues of fact.  There are no relevant facts in dispute, and no factual issues for the Court to decide.

The Court has already rejected Defendant's challenges to the patentability of the subject matter of the claims, and to their definiteness.  The Court initially rejected Defendant's claim construction positions that certain terms were indefinite, and then denied Defendant's motions for summary judgment.  *See* Dkt. Nos. 144, 151, 204, 356, 357.  To the extent Defendant seeks to re-raise these issues with the Court, it now seeks a second bite of the apple with respect to the *Bilski* issue, and a third bite of the apple with respect to indefiniteness.  *e*Plus respectfully requests that the Court put these issues to rest, and pursuant to Fed. R. Civ. P. 52, or in the alternative, Rule 50(a), rule, as a matter of law, that the claims satisfy the requirements for patentable subject matter, and are not indefinite.[13]

### 1.    The Claims Recite Patentable Subject Matter

#### a.    The Law Has Not Changed Since the Supreme Court's *Bilski* Decision

The Court already concluded that Defendant's argument that certain claims of the asserted patents[14] fail to claim patentable subject matter was "based on a distorted reading of the

---

[12]  Defendant filed a motion for Judgment as a Matter of Law On Section 101 Invalidity on January 24, 2011.  While *e*Plus reserves its right to respond, Defendant offered no evidence at trial to support its patentability defense under Section 101 and conceded that it "did not try" that issue.  Tr. 2874:18 – 2875:19; 2877:7-16 (Lawson counsel) (Ex. 5).

[13]  *e*Plus recognizes that the Court indicated during oral argument on January 21, 2011, that no further action is required with respect to these defenses.

[14]  In its Motion for Summary Judgment of Invalidity of Asserted Claims Under 35 U.S.C. § 101 (Dkt. No. 316), Defendant asserted that all 13 asserted claims are invalid.  Defendant now asserts

decision in *Bilski v. Kappos*, and the principal decisions cited therein . . . ."  Dkt No. 357 (Order) at 1 (citation omitted).  Nothing has changed to alter that conclusion.  Two recent decisions of the Federal Circuit confirm that this Court's decision denying summary judgment of invalidity was correct.

The Federal Circuit's decision in *Research Corp. Techs., Inc. v. Microsoft Corp.*, 2010 WL 4971008 (Fed. Cir. Dec. 8, 2010), confirms that algorithms intended for use on general purpose computers are not as such disqualified as abstract ideas, and that a claim's requirement for a general purpose computer does not implicate any special analysis.  The court reversed a trial court's summary judgment of invalidity of method claims for halftoning of images.  *Id.* at *1.  First, there was no question that the claimed methods were a process, and therefore, fell within the statutory language for patentable subject matter.  *Id.* at *7.  Likewise, here, it is undeniable that the claims in the patents-in-suit fall within the statutory language for patentable subject matter.

Next, in determining whether the patents claimed an abstract idea, the court articulated a very high threshold for "abstractness."  Noting that the Supreme Court did not provide a rigid formula or definition for abstractness, the Federal Circuit did not:

> presume to define "abstract" beyond the recognition that this disqualifying characteristic ***should exhibit itself so manifestly*** as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act.

*Id*.  The methods did not claim an abstract idea because they present "functional and palpable applications in the field of computer technology."  *Id*.  Similarly, the patents-in-suit are specifically directed to the functional and palpable application of specific e-procurement

---

only that claims 26, 28 and 29 of the '683 Patent and claims 1, 2, 6, 9, and 29 of the '516 Patent are invalid under 35 U.S.C. § 101.

concepts to computer technology.  Certainly, they do not exhibit abstractness "so manifestly as to override the broad statutory category[y]" processes, to which they belong.  *Id.* at *8.

Finally, the Federal Circuit rejected the two-step dissection analysis Defendant advocated in its Motion for Summary Judgment, and found that the claimed methods were directed to patentable subject matter because they sought protection for a process ***in computer applications***. *Id.*  Thus, this Court correctly rejected Defendant's attempt to dissect out various concepts in the patents-in-suit, and then analyze the remainder of the claim.

The Federal Circuit's decision in *Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 2010 WL 5175124 (Fed. Cir. Dec. 17, 2010), reaffirmed the importance of the machine-or-transformation test following the Supreme Court's *Bilski* decision.  *Id.* at *6-8.

> Thus, the Court did not disavow the machine-or-transformation test. And, as applied to the present claims, the "useful and important clue, an investigative tool," ***leads to a clear and compelling conclusion***, *viz.*, that the present claims pass muster under § 101. They do not encompass laws of nature or preempt natural correlations.

*Id.* at *7. (emphasis added).  The court also considered whether the method claims preempted all use of the correlations in the claimed methods:

> Prometheus's claims are drawn not to a law of nature, but to a particular application of naturally occurring correlations, and accordingly do not preempt all uses of the recited correlations between metabolite levels and drug efficacy or toxicity.

*Id.*  There is no dispute that the claims in the patent-in-suit here all require a computer, and therefore, satisfy the machine-or-transformation test.  This compels the conclusion that the claims pass muster under Section 101.  Furthermore, to the extent it is appropriate to conduct an additional "preemption" analysis on claims that satisfy the machine-or-transformation test, and *e*Plus does not agree that it is, the patents-in-suit do not preempt all uses of comparison shopping, as Defendant asserted in its Motion for Summary Judgment.

20

**b.      There Are No Relevant Disputed Facts**

Notwithstanding Defendant's placeholder in the facts section of the Pre-Trial Order, patentability under Section 101 is a question of law.  *Prometheus*, 2010 WL 5175124, *4. Analysis of patentability certainly requires an understanding of the invention, as claimed; however, that too is a question of law, not fact.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389-90 (1996).  Accordingly, there are no facts to be found that can be relevant to the Court's inquiry.

*e*Plus recognizes that the Court's Order denying Defendant's Motion for Summary Judgment stated that there were "genuine disputes of material facts as to the issues underlying the legal issue of patentability (specifically Lawson's asserted Facts Nos. 9-11)."  Order at 1. However, each of Defendant's three purported "facts" actually stated a legal conclusion concerning the claims and the invention, and none of these conclusions are factual issues. Defendant's Fact No. 9 argued that none of the Asserted Claims recites any transformation or the use of a "special purpose computer," which is Defendant's interpretation of the claims, not a fact. Defendant's Fact No. 10 quoted a statement from the *e*Plus Expert Report of Dr. Russell Mangum to argue that all eProcurement systems necessarily practice the Asserted Claims, again a legal interpretation concerning the breadth of the claims.  Defendant's Fact No. 11 quoted a portion of the transcript of the deposition of Robert Kinross to argue for a grossly oversimplified mischaracterization of the claimed inventions, again a legal issue.

Furthermore, Defendant has introduced no testimony, either as to facts or opinion, that bears on patentability under Section 101.  Defendant bears the burden of proving invalidity under Section 101, and to the extent there are any factual issues underlying the legal issue of patentability, Defendant has failed to prove those facts during trial.  Accordingly, for all the same reasons that the Court previously rejected Defendant's motion for summary judgment, the Court

should find that the asserted claims are directed to patentable subject matter under 35 U.S.C. § 101.

### 2.      The Claims Are Not Indefinite

This Court has twice rejected Defendant's arguments that the asserted claims are indefinite, and nothing has happened since to warrant a different result now.  "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. Atmi, Inc.,* 543 F.3d 1306, 1319 (Fed. Cir. 2008).  A claim is indefinite only if it is not amenable to construction, in other words, if it is insolubly ambiguous and no narrowing construction can properly be adopted.  Thus, the Federal Circuit has stated: "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree," the claim is sufficiently definite.  *Exxon Research & Eng'g Co. v. U.S.,* 265 F.3d 1371 (Fed. Cir. 2001).

In its claim construction briefing, Defendant argued that the specification lacked a corresponding structure for the "multiple purchase order generation module" ('516 Patent claims 21 and 22), "means for processing [the/said] requisition" ('683 Patent claims 3 and 6, '172 Patent claim 1), and "means for converting data" ('683 Patent claims 3 and 6) claim limitations, rendering these claims indefinite.  Dkt. No. 144 (Lawson's Opening Claim Construction Br.) at 18-21; Dkt. No. 151 (Lawson's Responsive Claim Construction Br.) at 14-16.  This Court correctly found that the "multiple purchase order generation module" is not a means-plus-function element, and Defendant's "no corresponding structure" argument was therefore inapplicable.  Dkt. No. 204 (Mem. Order) at 43-44.  As for the "means for processing [the/said] requisition" and "means for converting data" terms, the Court performed the required analysis and properly identified a corresponding structure for each.  *Id.* at 47-48, 51.

In its Motion for Summary Judgment (Dkt. No. 240), Defendant renewed its attack on the "means for processing [the/said] requisition" terms, this time arguing that the Court's construction was indefinite because it supposedly failed to identify a corresponding structure. *Id.* at 24-26. The Court saw Defendant's argument for what it was, "a motion to reconsider the Markman decision without satisfying any of the factors that warrant reconsideration." Dkt. No. 356 (Order) at 1.

In the Final Pretrial Order, however, Defendant asserted as "factual contentions for issues to be tried to the court" that all 12 of the asserted claims "are invalid under 35 U.S.C. § 112 ¶ 2 and ¶ 6 as indefinite." Dkt. No. 480 (Revised Amended Final Pre-trial Order) at 25. First, Defendant is now raising supposed indefiniteness issues that it did not brief during claim construction or summary judgment, regarding claim terms that it does not identify, and pertaining to claims it did not previously challenge. The time is long past for raising new claim construction arguments to the Court — Defendant has waived all arguments it failed to previously present.

Second, as for the two means-plus-function elements Defendant did previously challenge, there is nothing new in the record to justify a different result. Indeed, there cannot be because the construction of these terms is a pure question of law. Accordingly, there cannot be any trial testimony that bears on this issue. There are no underlying facts to be found and no separate finding of facts on this issue is necessary. For the reasons set forth in the Court's claim construction Memorandum and Order, the claims reciting these means-plus-function elements are not indefinite, and the Court should so rule.

**F.    There is No Evidence To Support Lawson With Respect To The Validity Of The Asserted Claims Under 35 U.S.C. § 112, ¶ 1 (Written Description)**

*e*Plus is entitled to judgment as a matter of law that the asserted claims of the patents-in-suit are not invalid for lack of an adequate written description under 35 U.S.C. § 112, ¶ 1. Defendant alleged in the Final Pretrial Order that claims 1, 2, 6, 9, and 29 of the '516 Patent are invalid pursuant to this defense.  *See* Final Pretrial Order at 31.  Defendant bears the burden of proof to show lack of written description, as with all issues of patent validity, by clear and convincing evidence.  Yet Defendant failed to introduce **any** evidence at trial to support this allegation, whether expert testimony or otherwise.  Defendant also agreed that the jury should not be instructed on this issue.  Thus, no reasonable jury would have a legally sufficient evidentiary basis to find in Defendant's favor on this issue.

**IV.    CONCLUSION**

Accordingly, for at least the foregoing reasons, *e*Plus respectfully moves for judgment as a matter of law that all the asserted claims of the patents-in-suit are not invalid, and further requests that the Court deny Defendant's motion for judgment as a matter of law of invalidity. Defendant has been fully heard on the validity issues, and a reasonable jury would not have a legally sufficient evidentiary basis to find for Defendant as to the validity of asserted claims 3, 26, 28, and 29 of the '683 Patent, claims 1, 2, 6, 9, 21, 22, and 29 of the '516 Patent, and claim 1 of the '172 Patent.  *e*Plus also respectfully moves for judgment on partial findings or, alternatively, for judgment as a matter of law, that all the asserted claims of the patents-in-suit are not indefinite and are directed to patentable subject matter.

Respectfully submitted,

January 24, 2011

_____/s/_____
David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
*Counsel for Plaintiff ePlus, Inc.*
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com

*Attorneys for Plaintiff, e*Plus, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INVALIDITY OF THE ASSERTED CLAIMS PURSUANT TO FED. R. CIV. P. 50 AND FOR JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52 WITH RESPECT TO NON-JURY DEFENSES UNDER 35 U.S.C. §§ 101 AND 112, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

*Counsel for Defendant Lawson Software, Inc.*

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

_____/s/_____
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com