# EXHIBIT 5

1       MS. STOLL-DeBELL:  We don't intend to have
2  Dr. Shamos talk about J-CON plus Dworkin.
3       THE COURT:  He's not going to talk about it
4  so why are you talking about it?
5       MR. ROBERTSON:  Well, then Dr. Staats doesn't
6  need to testify because if Dr. Shamos isn't going to
7  talk about J-CON and Dworkin, then there's no basis to
8  have Dr. Staats testify about J-CON because it then
9  has no relevance to this case because it would be
10 completely untethered to expert testimony.
11      To address that point, Your Honor, we did
12 raise this precise J-CON plus Dworkin issue in the
13 brief that we filed back on -- that we had the
14 argument on December 30.  That's what the argument
15 became focused on.  It became focused on P.O. Writer
16 and J-CON because of the slides we received this
17 weekend.  But in respect to the J-CON plus Dworkin --
18      THE COURT:  They are not offering that.
19      MR. ROBERTSON:  All right.  Then Dr. Staats
20 shouldn't be permitted to testify.
21      THE COURT:  Why?  Ms. What's-Her-Name was
22 allowed to testify.
23      MR. ROBERTSON:  Ms. McEneny?
24      THE COURT:  The Laurene McEneny show.
25      MR. ROBERTSON:  They are contending --

1   the documents demonstrated and the witnesses testified
2   regarding the features and functionality of the prior
3   art RIMS system disclosed in the '989 patent.
4           THE COURT:  Let's take the anticipation.
5   What is it that anticipates?
6           MS. HUGHEY:  The RIMS system alone
7   anticipates every single claim of the patents-in-suit.
8           THE COURT:  All right.
9           MS. HUGHEY:  In combination, the RIMS system
10  and the TV/2 product render every single one of the
11  claims of the patents-in-suit obvious.
12          Dr. Shamos went through every single claim
13  and explained both the anticipation and obviousness
14  analysis.  The evidence at trial further demonstrated
15  that both systems are prior art.
16          The combination of RIMS plus TV/2 renders
17  every single asserted claim of the patents-in-suit
18  obvious.  The preferred embodiment disclosed in the
19  patents is the combination of RIMS plus TV/2 and the
20  Court's construction is consistent with that.
21          The TV/2 literature specifically says to
22  combine TV/2 with the parts ordering system and
23  inventory management system.  The RIMS system
24  disclosed in the '989 patent was a part ordering and
25  inventory management system.

2874

 1          MS. HUGHEY:  I actually agreed with Your
 2  Honor at that time that it didn't make sense.
 3          THE COURT:  I know that if you were wrong and
 4  I was wrong, we ought to straighten it out.
 5          MS. HUGHEY:  Yes, that's right.  I suppose
 6  the point is, Your Honor, I don't believe that ePlus
 7  is entitled to judgment as a matter of law on written
 8  description or enablement because those aren't defense
 9  that we even raised at trial; however, if it's Your
10  Honor's position that a defense that was at some point
11  in the case and not dropped before trial can then have
12  a judgment as a matter of law granted against it, then
13  the same should apply to Lawson and we're entitled to
14  judgment as a matter of law on all those other claims.
15          THE COURT:  I think you're right about that.
16          MS. HUGHEY:  Okay.  To make that record
17  clear.
18          The second point, Ms. Albert raised the 112,
19  paragraph 6, and paragraph 2 on 101, issues of law.
20  The enablement issue of law and statutory subject
21  matter issue of law.
22          I agree with Ms. Albert.  That's an issue for
23  the Court to decide.  Lawson moved for summary
24  judgment on those pure issues of law.
25          THE COURT:  And I denied it.

1    MS. HUGHEY: That summary judgment was
2 denied. It's my understanding that that issue is now
3 preserved for appeal and that Your Honor doesn't have
4 to rerule on it, but just to make the record clear,
5 Lawson again moves for judgment as a matter of law on
6 the 112, paragraph 6, and 101 claims.
7    THE COURT: How can you do that?
8    MS. HUGHEY: Your Honor --
9    THE COURT: You didn't try them.
10   MS. HUGHEY: We did not try them.
11   THE COURT: You relied for better or for
12 worse on the summary judgment decision.
13   MS. HUGHEY: Correct.
14   THE COURT: And your appeal point is that the
15 Court erred in failing to grant summary judgment.
16   MS. HUGHEY: Correct, Your Honor.
17   THE COURT: That's where the matter stays.
18 There's no judgment to be obtained on that at this
19 juncture, I don't think.
20   Now that was with respect to what issue?
21   MS. HUGHEY: 112, paragraph 2 and 6,
22 enablement issue, and the 101 statutory subject matter
23 issue.
24   THE COURT: You mean the patentability issue?
25   MS. HUGHEY: Correct, Your Honor.

1           THE COURT:  All right.  And those have
2  already been decided in the motion for summary
3  judgment, right?
4           MS. HUGHEY:  Correct.
5           THE COURT:  So I don't need to address those.
6           MS. HUGHEY:  That's any understanding.
7           THE COURT:  And then the 101 is the issue of
8  patentability, which is the subject matter or, i.e.,
9  the Bilski issue, and I erred as a matter of law in
10 failing to grant the summary judgment on that, right?
11          MS. HUGHEY:  Correct.
12          THE COURT:  And that's where it lies because
13 it never came into trial one way or the other?
14          MS. HUGHEY:  Correct.
15          THE COURT:  I don't need to deal with that
16 either.
17          MS. HUGHEY:  Okay.  And I think the issues
18 have been fully raised, but just for the record I
19 disagree with Ms. Albert.  Dr. Shamos explained every
20 element.
21          THE COURT:  You disagree with Ms. Albert on
22 general principles on everything she said.
23          MS. HUGHEY:  Correct, Your Honor.
24          If you have any questions, I'm happy to
25 answer them.