```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF VIRGINIA

 3                         RICHMOND DIVISION

 4


 5      ----------------------------------------
                                                :
 6        ePLUS, INC.                           :    Civil Action No.
                                                :    3:09CV620
 7        vs.                                   :
                                                :
 8        LAWSON SOFTWARE, INC.                 :    February 4, 2011
                                                :
 9      ----------------------------------------

10


11           COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

12              BEFORE THE HONORABLE ROBERT E. PAYNE

13                   UNITED STATES DISTRICT JUDGE

14
        APPEARANCES:
15
        Scott L. Robertson, Esquire
16      Michael G. Strapp, Esquire
        Goodwin Procter, LLP
17      901 New York Avenue NW
        Suite 900
18      Washington, D.C.  20001

19      Craig T. Merritt, Esquire
        Henry I. Willett, III, Esquire
20      Christian & Barton, LLP
        909 East Main Street
21      Suite 1200
        Richmond, Virginia  23219-3095
22      Counsel for the plaintiff

23

24                        Peppy Peterson, RPR
                          Official Court Reporter
25                     United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia   23219

 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    Merchant & Gould, PC
      80 South Eighth Street
 7    Suite 3200
      Minneapolis, Minnesota   55402
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2

3          THE COURT: This is ePlus against Lawson, 3:09CV620.
4  Starting with counsel for the plaintiff, please identify
5  yourself and identify who you represent, and when you speak,
6  give your name.
7          MR. MERRITT: Craig Merritt and Henry Willett in
8  Richmond for ePlus.
9          MR. ROBERTSON: Scott Robertson from Goodwin Procter
10 in D.C.
11         MR. STRAPP: Michael Strapp from Goodwin Procter in
12 Boston.
13         MR. CARR: Dabney Carr from TroutmanSanders for
14 Lawson Software.
15         MR. McDONALD: Good afternoon, Your Honor. This is
16 Dan McDonald with Will Schultz in Minneapolis for Lawson
17 Software.
18         MS. STOLL-DeBELL: And good afternoon, Your Honor.
19 Kirstin Stoll-DeBell with Merchant and Gould for Lawson
20 Software.
21         THE COURT: All right. I had the great withdrawal
22 this past week from not having had the occasion of your
23 company, so I'm glad to know that the week now will not be a
24 total loss since we can communicate this afternoon.
25         I have ePlus's motion and memo in support of leave to

1   serve expedited discovery, and I have the response of Lawson,
2   and I've read them both.  Mr. Robertson, it's your motion.
3            MR. ROBERTSON:  Yes, sir.  Thank you.  What we've
4   done here is tried to have some very focused discovery that
5   should have been provided, we believe, during the discovery
6   period that the Court allowed.  We think we had interrogatories
7   that covered this, but since we have this injunction hearing
8   coming up, and since there's been representations made that
9   Lawson believes it does not compete with ePlus, and
10  competition, obviously, is going to be an important issue in
11  the injunction hearing, we've asked for this limited discovery
12  which we think will not be burdensome or cumbersome or onerous
13  for Lawson to provide.
14           In fact, in the Court's amended final pretrial order,
15  there was certain representations made by Lawson that we think
16  would not be supported by the evidence should we be able to
17  obtain it.  For example -- and I'm reading from page 27 of the
18  amended final pretrial order.  For example, it says, ePlus has
19  never lost a sale to Lawson.  That's paragraph 13 on page 27 of
20  the final pretrial order.
21           Most, if not all, of Lawson's marketing efforts are
22  directed to potential customers that ePlus has not solicited.
23  ePlus has not been harmed by Lawson's infringement.  There are
24  other representations made that they actually compete with
25  ePlus's licensees, so what we're trying to find out, Your

1  Honor, is who have they solicited so we can see over the past
2  years the overlap in the competition, and we think, based on
3  the information we have -- it's been fairly extensive, and let
4  me just make a couple observations.
5       As you know, Ken Farber was our corporate
6  representative sitting at trial table the entire time.  It was
7  a revelation to him on a few occasions when certain customers
8  came up that Lawson had actually solicited and obtained
9  business from that he was competing for, and until trial, he
10 was unaware of that, as he should have been, because you may
11 recall that Lawson witnesses, in particular Mr. Keith Lohkamp,
12 testified that in many instances, the companies are unaware
13 when they respond to these RFPs who their competition is, and,
14 in fact, if I could just point out, let me cite to this:  I
15 know we have some issues with the page citations to the
16 transcripts, but I'm looking at trial transcript day five, I
17 believe it is page 1,079, and it's actually the Court's
18 question.
19      "The Court:  Were you aware that ePlus was bidding
20 for some component of Novant's business?
21      The Witness:"  This is Mr. Lohkamp.  "I was aware of
22 it after the fact when it was pointed out that they had been
23 there."
24      Question from the Court:  "This RFP process, that's
25 often done secret, and by that I mean the person, the potential

Case 3:09-cv-00620-REP   Document 613   Filed 02/09/11   Page 6 of 16 PageID# 16320

6

1  customer doesn't always inform the bidder who all the other
2  competition is; isn't that fair to say?
3           Answer:  That's correct.
4           And that's typical, isn't it?  That's typical for a
5  lot of situations?"
6           You may recall that Mr. Farber took the witness stand
7  and actually confirmed Mr. Lohkamp's testimony that it's true,
8  they often don't know who the competition is when they bid on
9  these RFPs, so what we want, and what we actually had asked for
10 in discovery during, you know, the discovery phase, was who had
11 they made offers for sale these infringing systems.
12          That was interrogatory number 24 which Your Honor may
13 recall we had a dispute about, a motion to compel, and a motion
14 to compel that the Court granted.  But to this day, we still
15 don't have information as to who all the customers are they
16 solicited.
17          THE COURT:  Just a minute, Mr. Robertson.  The way I
18 read their response brief, they say they did file that
19 information in supplemental answers.  Have you gone back since
20 you read their brief to ascertain what they did file?
21          MR. ROBERTSON:  I have, Your Honor.  They are talking
22 about these appendices A through D, and we do have -- those
23 were supposed to be actual licensees, and we have been able to
24 determine some overlap between actual licensees that they
25 secured business from that we believe we've competed with or at

```
 1    least we solicited --
 2            THE COURT:  Actual licensees of Lawson; is that what
 3    you are saying?
 4            MR. ROBERTSON:  Yes, sir.
 5            THE COURT:  All right, go ahead.
 6            MR. ROBERTSON:  But we don't know, for example, did
 7    we go head to head with these guys on certain customers that
 8    perhaps neither of us got the business but we were in
 9    competition, and, you know, I'd like to be able to show that.
10    We asked for that in interrogatory number 24, that is did you
11    ever make an offer for sale, and we didn't receive that
12    information.  So I don't want to --
13            THE COURT:  If these RFPs are kept confidential and
14    you don't know who you are competing with, how can they give
15    you that information?
16            MR. ROBERTSON:  They can tell us who they solicited,
17    and I can ask my client who they solicited during the relevant
18    time period.
19            THE COURT:  So you just want a list of the names of
20    the people that they -- from whom they solicited or from whom
21    they got -- or to whom they responded on RFPs or what?  What is
22    the difference between solicited and responding to an RFP?
23            MR. ROBERTSON:  No difference, Your Honor.  I think
24    if they could tell us they responded to an RFP for a specific
25    customer, and then I can find out from my client whether they
```

```
 1   responded to an RFP for a specific customer, that would be
 2   evidence to show that there was competition in the marketplace
 3   for those customers.
 4           THE COURT:  But you're not asking them, Mr.
 5   Robertson, to go check their records of everybody they called
 6   or sent a letter to or something like that?  I mean, that
 7   includes solicited.  Solicited -- if I write you a letter and
 8   say, I'd like to have a chance to meet you and bid on some of
 9   your stuff, that's solicitation.  That's not the same thing as
10   doing an RFP.  I'm trying to, you see, ascertain the extent of
11   what you're asking.
12           MR. ROBERTSON:  I understand, sir, and let me make
13   this representation to you:  I asked my client if this was
14   going to be difficult for them to determine, and within a
15   matter of a few hours they said they could provide me with a
16   list of all the companies they had pitched, whether it was
17   responding to an RFP or whether it was just sending out
18   information saying, hey, we have these products, these Procure+
19   and Content+ products that would be, you know, may be
20   attractive to you and you would need them, and they could
21   provide that information.
22           Companies keep these kinds of records so they know,
23   you know, what companies have we approached for what business.
24   So, I mean, if Your Honor thinks that's too onerous, I
25   understand.  I could probably live with just who are all the
```

1   companies that they ever responded to with an RFP response.
2           THE COURT:  What period of time?
3           MR. ROBERTSON:  Let's go back -- my client said they
4   could do it back five years and provide me with that
5   information readily which I would turn over in discovery to the
6   defendant, and so that's the period of time I would ask.
7   Technically, I think the period would be six to seven years
8   given that we're asserting infringement from 2003 forward, but
9   I'd just like to be able to show the Court that we compete with
10  these guys everyday in the marketplace, and representations to
11  the contrary were even refuted by evidence at trial that my
12  client learned for the first time.
13          We had the Deaconess Hospital contract, and we were
14  ousted by Lawson, and Ken Farber learned that for the first
15  time when he heard that testimony at trial.
16          THE COURT: All right.  Mr. McDonald, are you
17  handling this?
18          MS. STOLL-DeBELL:  Your Honor, I'm going to.  This is
19  Ms. Stoll-DeBell.
20          THE COURT:  All right.
21          MS. STOLL-DeBELL:  You know, we have a couple of
22  responses to this.  First of all, I think it's important to
23  point out that we produced during discovery the information
24  that we have regarding this issue, and so what Lawson does is
25  it keeps track of its customers and potential customers in a

1  database run by salesforce.com, and it includes not only
2  customers who actually purchase product from Lawson but, I
3  think, also customers that they tried to solicit in some form
4  or another.
5         It's a fairly big Microsoft Excel document, and we
6  produced it with Bates number L0345043.  It includes, I don't
7  know, tens of thousands of lines with different customers, who
8  the contact was, what happened with it, I think all of the
9  information that Mr. Robertson is looking for, and it was our
10 intent to actually supplement and produce an updated version of
11 this document on February 14th to comply with our requirement
12 to set forth the evidence we are going to rely on at the
13 evidentiary hearing.
14         So, you know, I think it goes back to had Mr.
15 Robertson picked up the phone and called us, we could have
16 talked about this, and a motion was really unnecessary.
17         THE COURT:  Mr. Robertson, what about that?  She says
18 she's given it to you, she's identified the document, and she's
19 going to supplement.  Do you have that document?
20         MR. ROBERTSON:  Can I have the Bates number again,
21 Ms. Stoll-DeBell?
22         MS. STOLL-DeBELL:  Yes.  It's L0345043.
23         MR. ROBERTSON:  L03 -- I'm sorry.  Please go slower.
24 L0345 --
25         MS. STOLL-DeBELL:  043.

```
 1              THE COURT:  Now, Mr. Robertson, you know what the
 2    court reporter goes through.
 3              MR. ROBERTSON:  Your Honor, I've been working on
 4    that.  I really have.
 5              THE COURT:  What are you doing; taking shots for it
 6    or what?
 7              MR. MERRITT:  Judge, he's just hanging around with me
 8    more.
 9              MR. ROBERTSON:  Let me go back and look at this
10    document, Your Honor, and if there's a supplementation, and I
11    will follow up on this.  I mean, obviously there's been
12    millions of documents produced in this.  This is an Excel
13    spreadsheet, you say, Ms. Stoll-DeBell, that includes all of
14    the solicitations for the infringing systems?
15              MS. STOLL-DeBELL:  I don't know if it includes all of
16    them.  It's the document that we keep, so does it include every
17    time a Lawson sales rep picked up the phone like the Judge
18    said?  I don't know, but it is what Lawson has.  It's the
19    record that it keeps in the ordinary course of its business.
20    It's got 33,000 lines in it.  So I do think it is
21    comprehensive.
22              THE COURT:  You see what a phone call would have
23    produced there, Mr. Robertson?  That's why these rules are in
24    place, to save everybody time, money, and effort.  It seems
25    like that part of it may be sorted out here.  Is there anything
```

```
 1   else?
 2            MS. STOLL-DeBELL:  Your Honor, our other issue is we
 3   are working on getting our evidentiary disclosure done and
 4   produced to ePlus and the Court on February 14th.  They've
 5   asked for it five days early, and I think it's unnecessary,
 6   unfair, and burdensome.  We will provide all of this
 7   information as required by your order on February 14th, and
 8   then ePlus will have a week to look at that and respond to it.
 9            THE COURT:  Let me ask you this:  If you keep this in
10   the ordinary course of business, this data, all you have to do
11   is go tell -- what is it called, Sales Force, Inc.?
12            MS. STOLL-DeBELL:  Salesforce.com.
13            THE COURT:  Tell salesforce.com to plunk its magic
14   little button and print it out and send it to them.  What's the
15   problem with that?
16            MS. STOLL-DeBELL:  That's true, Your Honor, but you
17   already set up a time frame for that, and the time frame is
18   ePlus is going to do their first disclosure on the 7th, we're
19   going to do ours on the 14th, and then they get a chance to
20   respond a week later.
21            THE COURT:  Yes, I know.
22            MS. STOLL-DeBELL:  I suppose we could send them that
23   report, but we have a whole bunch of other stuff, and they'll
24   have plenty of time to look at it, to respond to it, to
25   formulate whatever rebuttal evidence they want to gather, and
```

1   there is -- you know, there's no reason to do it any earlier.
2            THE COURT:  All right, Mr. Robertson, is there
3   anything else that is the subject of this motion?
4            MR. ROBERTSON:  I'd just like to confirm with Ms.
5   Stoll-DeBell we're focusing now on the procurement systems that
6   are going to be part of this spreadsheet, right, the infringing
7   systems that were found to infringe, because that's what I want
8   to focus on so we can see if there's competition overlap.  If
9   that's the case, we'd appreciate it sooner, but the Court set a
10  schedule, and we're willing to live by the schedule.
11           THE COURT:  So the question is --
12           MS. STOLL-DeBELL:  I'm going to have to look at it
13  and see how it separates it out.  I know it sort of breaks out
14  S3 versus M3.  It may have additional information.
15           THE COURT:  Okay, hold it. Go have the conversation
16  and see if you can solve it amongst yourselves, okay?  That's
17  what should have been done to begin with, and it sounds to me
18  like a little discussion would have gone a long way.
19           Is there anything else in the motion that I need to
20  deal with in terms of expediting it or in terms of anything
21  that needs to be expedited?  There are three things you asked
22  for, I think you said.  Is it just the competition list that
23  you are talking about?
24           MR. ROBERTSON:  Well, Your Honor, there's a
25  representation that -- in the final pretrial conference that

1    says, without any equivocation, that ePlus never lost a sale to
2    Lawson, and we'd just like to know what the basis of that
3    statement is.  That was a representation made to the Court
4    under Rule 11.
5              THE COURT:  They're going to provide that, aren't
6    you, Ms. Stoll-DeBell?
7              MS. STOLL-DeBELL:  Yes.  We're going to do that in
8    our evidentiary disclosures on February 14th.
9              THE COURT:  I think I've already set that up.  That
10   will be sufficient.  Anything else?
11             MR. ROBERTSON:  No, sir.
12             THE COURT:  Well, I'm going to deny this as moot with
13   the hope that you all can work out the disclosure.  I think
14   they are entitled to that, Ms. Stoll-DeBell.  I don't have any
15   question about it, and let's keep in mind that the jury
16   returned a verdict of no infringement on certain systems,
17   configurations I guess it was, and let's see if we can focus on
18   a way to get the answers focused on the infringing products.
19             MS. STOLL-DeBELL:  Your Honor, we'll try.  I mean, we
20   have what we keep in the ordinary course of business, and I
21   can't answer you right now if it's an easy matter to separate
22   those out.  We'll do everything that we can within the time
23   frame that we have to try and focus it on what was found to
24   infringe.
25             THE COURT:  All right.  You all continue your

1    conversation.  It looks to me like the conversation has gotten
2    a lot of mileage so far in order to deal with the situation.
3             Now, what's the third one?  Three additional
4    interrogatories.  One of them was the competition, one of them
5    was who they lost the sales to.  Is there anything else so I
6    don't have to do this but once?
7             MR. ROBERTSON:  There was a representation, Your
8    Honor, in the final pretrial order that most, if not all, of
9    Lawson's marketing efforts are directed to potential customers
10   that ePlus has not solicited, and we wanted to know what the
11   basis of that factual representation to the Court was in the
12   final pretrial order.  Quite frankly, I don't know how they
13   would know that, but if they made that representation, we'd
14   like to understand the factual basis.
15            THE COURT:  On the 14th, you file an answer to that
16   interrogatory, Ms. Stoll-DeBell; okay?
17            MS. STOLL-DeBELL:  Okay.
18            THE COURT:  Then you'll have it all together, and if
19   we have to adjust something, we'll just adjust it if there's a
20   crisis, but I don't think there will be.  Everything else all
21   right?
22            MR. ROBERTSON:  Yes, sir.
23            THE COURT:  All right.  So I guess -- Mr. McDonald,
24   do you have anything, Ms. Stoll-DeBell?
25            MR. McDONALD:  I don't have anything else, Your

```
 1   Honor.  Thank you for asking.
 2              MS. STOLL-DeBELL:  No, Your Honor.
 3              THE COURT:  You all take care.  Thank you very much.
 4   Have a nice weekend.
 5
 6              (End of proceedings.)
 7
 8
 9
10             I certify that the foregoing is a correct transcript
11   from the record of proceedings in the above-entitled matter.
12
13
14        /s/                              _____
     P. E. Peterson, RPR                   Date
15
16
17
18
19
20
21
22
23
24
25
```