IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STRIKE THE RULE 26 EXPERT DISCLOSURE AND DECLARATION OF LARRY W. EVANS IN SUPPORT OF PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff, ePlus Inc.*

Scott L. Robertson (admitted *pro hac vice)*
Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT...........................................................................................................3

      A.   The Court Authorized The Parties To Supplement Their Rule 26
           Disclosures For The Injunction Hearing, And Lawson Itself Represented
           That It Intended To Identify New Fact And Possibly Expert Witnesses.................3

      B.   Lawson's Contention That ePlus Failed At The Post-Verdict Conference
           To State Its Intention To Use Mr. Evans Is Without Merit .....................................5

      C.   Expert Testimony May Be Appropriate With Respect To The Four Factors
           Considered On A Permanent Injunction Motion .....................................................6

      D.   Mr. Evans Does Not Lecture The Court As To What The Law Is Or
           Should Be.................................................................................................................9

      E.   Lawson Has Had Ample Time To Prepare Its Own Expert Declaration...............12

III.  CONCLUSION......................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*,
 2005 WL 3454283 .................................................................................................................. 10

*Am. Med. Sys. v. Laser Peripherals, LLC*,
 712 F. Supp. 2d 885 (D. Minn. 2010)...................................................................................... 10

*Amgen, Inc. v. F. Hoffmann La Roche Ltd.*,
 581 F. Supp. 2d 160 (D. Mass. 2008) ........................................................................................ 7

*Atari Corp. v. Sega of Am.*,
 869 F. Supp. 783 (N.D. Cal. 1994) ............................................................................................ 8

*Huntwise, Inc. v. Higdon Motion Decoy Sys.*,
 2010 WL 5146525 (E.D.La. 2010) .......................................................................................... 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
 598 F.3d 831 (Fed. Cir. 2010) ................................................................................................. 10

*IGT v. Alliance Gaming Corp.*,
 2008 WL 7084607 (D. Nev. Oct. 21, 2008) ............................................................................ 10

*Lab Crafters, Inc. v. Flow Safe, Inc.*,
 2007 WL 7034303 (E.D.N.Y. Oct. 26, 2007).......................................................................... 10

*MercExchange, L.L.C. v. eBay, Inc.*,
 547 U.S. 388 (2006)................................................................................................................... 9

*Micro Chem., Inc. v. Lextron, Inc.*,
 317 F.3d 1387 (Fed. Cir. 2003) ............................................................................................... 11

*Ortho McNeil Pharm., Inc. v. Barr Labs., Inc.*,
 2009 WL 2182665 (D.N.J. July 22, 2009)................................................................................. 7

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
 237 F.3d 1359 (Fed. Cir. 2001) ................................................................................................. 7

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms.*,
 2011 WL 383861 (D. N.J. Feb. 3, 2011) ................................................................................. 11

*Snellman v. Ricoh Co.*,
 862 F.2d 283 (Fed. Cir. 1988) ................................................................................................. 10

**Other Authorities**

Michael W. Carroll, *Patents and Diversity in Innovation Policy Conference: Patent Injunctions and the Problem of Uniformity Cost*, 13 MICH. TELECOMM. TECH. L. REV. 421 (Spring 2007) 8

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................... 1, 3, 4, 8

I.  **INTRODUCTION**

Plaintiff *e*Plus, Inc. ("*e*Plus"), by counsel, respectfully requests that the Court deny Defendant Lawson Software, Inc.'s ("Lawson") so-called emergency motion to strike the Rule 26 expert disclosure and declaration of Larry W. Evans in support of *e*Plus's motion for a permanent injunction. Lawson's motion is without merit for several reasons.

First, this Court stated at the January 27 post-verdict conference that the injunction proceeding had been severed from the trial on liability, and it authorized the parties to update and supplement their Rule 26 disclosures for the injunction proceeding. *e*Plus's identification of Mr. Evans and the service of his expert declaration does simply that. Indeed, it was Lawson that raised in the first instance its intention to submit new evidence at the injunction proceeding, and ***its motion is wholly at odds with its own stated intention at the post-verdict conference to put on the testimony of newly-identified fact and expert witnesses at the evidentiary hearing***. If the Court were to strike Mr. Evans on grounds of late disclosure, as Lawson contends it should, the Court must also strike any newly-identified fact witness, evidence, or expert testimony offered by Lawson for the purpose of the injunction proceeding.

Second, Lawson's contention that *e*Plus failed at the post-verdict conference to state its intention to use Mr. Evans is baseless. At that conference, Lawson's local and outside counsel contradicted one another with respect to Lawson's intention to put on witnesses and new evidence at the injunction proceeding. In response, *e*Plus's counsel reasonably informed the Court that he would have to consider whether *e*Plus desired to put on evidence or simply present argument. *e*Plus did not, as Lawson now suggests, concede that it would not submit any new evidence or expert testimony.

Third, Lawson's argument that expert testimony is inappropriate with respect to an injunction is meritless. Lawson does not cite any case in support of this proposition, and patent

cases often involve expert testimony in connection with application of the four-factor test for an injunction. Indeed, Lawson itself suggested that it might present expert testimony in conjunction with the injunction proceeding. Further, Mr. Evans, as a person with decades of patent licensing experience, is particularly well qualified to provide such testimony.

Fourth, Mr. Evans does not, as Lawson contends, purport to lecture the Court or opine as to what the law is with respect to injunctions. Mr. Evans does what any expert should do in a patent case, namely, identify his understanding of the legal framework for his opinions, and then offer his opinions based on the facts before the Court. Indeed, this is what *e*Plus's and Lawson's own experts on infringement and validity have purported to do throughout the liability trial. Because the injunction proceeding is not before a jury, the Court's *Daubert* or "gatekeeper" function is not implicated with respect to the danger of jury confusion from an expert's testimony. To the extent the Court believes various statements of Mr. Evans' declaration purport to lecture the Court on what the law is or should be, the Court may simply disregard those statements.

Fifth, Lawson's argument that it has insufficient time to respond to Mr. Evans' declaration is not compelling, in light of the fact that Lawson has had even more time than did *e*Plus to prepare an expert declaration since the time the verdict was rendered. Nonetheless, *e*Plus will not object to the Court granting Lawson an extra one or two days to provide an appropriate expert declaration in response to that of Mr. Evans, and *e*Plus will still provide its reply to such a declaration within the time frame already established by the Court.

## II.     ARGUMENT

### A. The Court Authorized The Parties To Supplement Their Rule 26 Disclosures For The Injunction Hearing, And Lawson Itself Represented That It Intended To Identify New Fact And Possibly Expert Witnesses

At the post-verdict conference, this Court acknowledged that the injunction proceeding had been severed from the trial on liability, and it authorized the parties to update and supplement their Rule 26 disclosures for the injunction proceeding.  The Court stated, "I regard that each of you in this instance, when you file what I have dictated that you file, directed that you file, will be satisfying your obligations to *update your discovery on the issue of injunctive relief because injunctive relief has been effectively severed from the case by virtue of the pretrial proceedings*.  I think you will have satisfied your Rule 26 updates when you file these things, and that's what I'm looking for."  Ex. 1 (cited portions of trial transcript), Tr. 3419:11-19 (emphasis added).  *e*Plus's identification of Mr. Evans and the service of his expert declaration does simply that.  Clearly, the import of the Court's ruling was that the parties were *not* restricted to the discovery disclosures they had made in connection with the liability phase of the trial.

Moreover, Lawson's motion is wholly at odds with its own stated intention to put on the testimony of newly-identified fact *and expert* witnesses at the evidentiary hearing for the injunction motion.  At the post-verdict conference, Lawson's counsel represented that *Lawson intended to present at least the following new fact and expert testimony*:

(1) "bring in a witness to talk about the harm to Lawson if an injunction is granted," Tr. 3405:3-5;

(2) "present evidence on the public interest issue … in particular, regarding the current status of the rejections of these patents on re-exam," including "*the assistance of an expert* to

3

summarize what's going on there and *how that might relate to injunctive relief*, *we could present an expert on that*," Tr. 3405:6-13 (emphasis added); and

(3) submit evidence "if there's *particular customers out there that are hospitals or something where if they were in the throes of offering the system or implementing the system and that had to come to a halt, would that have impact on hospitals* …., Tr. 3408:3-8 (emphasis added); *see also* Tr. 3409:4-5 (evidence pertaining to harm "[t]o Lawson and potentially its potential customers here as well").

As described by Lawson's counsel, this evidence has not previously been disclosed in Lawson's Rule 26(a)(1) disclosures of witnesses or in its expert reports, or in any other discovery responses provided by Lawson to date. For example, Lawson did not (and still has not) identified customer witnesses to testify as to the harm to them from an injunction, either in its Rule 26(a)(1) disclosures or the final pretrial order. Likewise, Lawson also has not served an expert report or identified any fact witnesses to testify as to how the public interest would supposedly be disserved by an injunction, based on the current status of the PTO reexamination proceedings or for any other reason.

Accordingly, if the Court were to strike Mr. Evans on grounds of supposedly "late" disclosure, as Lawson contends it should, the Court must also strike any newly-identified fact witness or expert testimony offered by Lawson for the purpose of the injunction proceeding. Indeed, the same logic advocated by Lawson in this motion would likewise require that Lawson be prohibited from offering any new documents or testimony not previously disclosed pursuant to the scheduling order governing the liability trial.[1]

---

[1] Indeed, as further evidence that Lawson itself intends to submit new evidence at the injunction proceeding, the same day it filed its "emergency motion" Lawson requested that *ePlus* produce, *inter alia,* new discovery relating to *ePlus*'s covered products dating back to 2001.

4

**B.     Lawson's Contention That *e*Plus Failed At The Post-Verdict Conference To State Its Intention To Use Mr. Evans Is Without Merit**

Lawson's contention that *e*Plus failed at the post-verdict conference to state its intention to use Mr. Evans is baseless. At that conference, Lawson's local and outside counsel contradicted one another with respect to Lawson's intention to put on witnesses at the injunction proceeding. The Court had asked the parties to consider and confer over whether additional evidence would be required, after which the following discussion took place:

> MR. ROBERTSON (counsel for *e*Plus): My conversation with Mr. Carr during the recess, and I understand he talked to Mr. McDonald, was we don't think it would be necessary to have any witnesses appear to testify. We think that the record is the record, and we can rely on that. We think we could simply brief the issue and argue it.
>
> ****
>
> MR. CARR (local counsel for Lawson): If we don't have any witnesses, a half day for arguments I thought sounded acceptable. Mr. McDonald, do you have any comment on that?
>
> MR. McDONALD (outside counsel for Lawson, participating telephonically): ***On the witnesses issue, I would like to have a chance to talk that over with the Lawson people.*** … I think there is a possibility we'd want to bring in a witness to talk about the harm to Lawson if an injunction is granted. We would like to present evidence on the public interest issue as well, and in particular, regarding the current status of the rejections of these patents on re-exam. I don't know that we necessarily need a witness for that. We could probably submit that on the papers. If the Court would like ***the assistance of an expert to summarize what's going on there and how that might relate to injunctive relief, we could present an expert on that***.

Tr. 3403:25-3404:5, 3404:19-3405:13 (emphasis added).

> THE COURT: Well, he [Lawson] says that Lawson wants a witness on the issue of injury; is that right?
>
> MR. McDONALD: Yes, Your Honor. I'd at least like to talk to them about that in view of the verdict and see if there is evidence that would be of assistance to the Court on that issue. I think it's a distinct possibility.

Tr. 3406:2-7.  As noted above, Lawson's counsel then continued to suggest that it might want to submit additional new evidence of alleged harm to its customers from an injunction.  Tr. 3408:3-8; 3409:4-5.

In light of Lawson's abrupt about-face with respect to the submission of new evidence, *e*Plus's counsel appropriately informed the Court that he would have to consider whether *e*Plus desired to put on additional evidence as well:

> MR. ROBERTSON:  All right, well, this changed dramatically from when I talked to Mr. Carr about an hour ago, so I would just –
>
> THE COURT:  Look, just settle down.

Tr. 3409:4-8.

> MR. ROBERTSON:  Well, Your Honor, let me just say, this is a very fluid situation.  If he's going to be offering evidence, I might need to have some rebuttal evidence.
>
> ****
>
> MR. ROBERTSON:  There's been some issue here about competition.  I think we've established that we're in competition, but I could forth [sic] further evidence to show that ePlus directly competes with Lawson.
>
> THE COURT:  Well, then, that's direct evidence that you need to put on.

Tr. 3411:23-3412:16.

Thus, *e*Plus did not, as Lawson now suggests, concede that it would not submit any new evidence or expert testimony.

    **C.    Expert Testimony May Be Appropriate With Respect To The Four Factors Considered On A Permanent Injunction Motion**

Third, Lawson's argument that expert testimony is inappropriate with respect to an injunction is meritless.  Lawson does not cite any case in support of this proposition, and in fact many patent cases have considered expert testimony in connection with application of the four-

6

factor test for an injunction. And again, Lawson itself suggested that it might present expert testimony in conjunction with the injunction proceeding.[2]

When deciding whether to grant an injunction, it is not uncommon for courts to consider expert opinion regarding the four factors recited in *eBay*, namely, irreparable harm to the patent owner, the inadequacy of a remedy at law, the balance of hardships between the parties, and the effect on the public interest. *See, e.g., Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1362 (Fed. Cir. 2001) (as basis for granting preliminary injunction, district court considered expert declarations regarding irreparable harm to patent owner from the likelihood of price erosion, loss of market share, and market expansion); *Ortho McNeil Pharm., Inc. v. Barr Labs., Inc.*, 2009 WL 2182665, \*\* 9-10 (D.N.J. July 22, 2009) (evaluating expert declarations from both parties regarding irreparable harm to patent owner in determining that injunctive relief was warranted); *Amgen, Inc. v. F. Hoffmann La Roche Ltd.*, 581 F. Supp. 2d 160, 212 (D. Mass. 2008) (relying on expert testimony from separate trial on remedies in finding the first three *eBay* factors strongly in favor of injunction); *Atari Corp. v. Sega of Am.*, 869 F. Supp. 783, 791-792

---

[2] In further contrast to its argument that Mr. Evans' expert testimony is irrelevant and unnecessary, Lawson argues — without citation to authority — that expert testimony is ***essential*** for purposes of injunctive relief to establish that *e*Plus's products are covered by the patents-in-suit. Lawson Br. at 2, n.1. Lawson states, however, that this issue is "beyond the scope of this motion." *Id.* Lawson's argument ignores that the Court has already ruled that *e*Plus Systems' President Mr. Ken Farber is competent to testify that *e*Plus's products are covered by the patents-in-suit, as Mr. Farber testified at trial. Tr. at 2634:14–2637:7 (Farber). Mr. Farber testified that *e*Plus's products performed the functions disclosed in the patents and moreover that *e*Plus has consistently marked since 2002 all literature and software with the numbers of the patents-in-suit. Tr. at 1302:6–1303:4; 1309:1–1310:9. Further, *e*Plus's predecessors-in-interest to the patents-in-suit likewise practiced the patented inventions. The inventors of the patents-in-suit testified that Fisher's SupplyLink product (later renamed as Cornerstone) was the brand name of the commercial system sold by Fisher that practiced the patented technology. Tr. at 225:24–227:2 (Momyer); 2211:11-17 (Kinross). *e*Plus acquired the patents-in-suit from ProcureNet, who also developed products embodying the patented technology. Tr. 203:18–204:5 (Marion); 2639:7–2640:2 (Farber). Accordingly, any suggestion that *e*Plus should be treated as a "non-practicing entity" for purposes of injunctive relief is wholly without merit.

(N.D. Cal. 1994) (considering expert declaration regarding irreparable harm to patent owner); *see also* Michael W. Carroll, *Patents and Diversity in Innovation Policy Conference: Patent Injunctions and the Problem of Uniformity Cost*, 13 MICH. TELECOMM. TECH. L. REV. 421, 440-41 (Spring 2007) (stating that one of the two most common sources of facts to assess an injunction's effect on the public interest is expert testimony).

Further, contrary to Lawson's contention that Mr. Evans is merely a "patent lawyer" who has no expertise to opine on issues relevant to injunctive relief, Mr. Evans is a highly experienced licensing professional who is uniquely positioned to analyze the evidence and provide opinions relevant to the four-factor test for injunctive relief. This is particularly the case given that Lawson's counsel indicated at the post-verdict conference that it intends to present evidence concerning the facts surrounding ePlus's licensing of the patens-in-suit and its contention that such licensing indicates that there is no irreparable harm to ePlus. Tr. at 3407:18-3408:8. Mr. Evans is well-suited to analyze the circumstances surrounding ePlus's licenses and how that relates to the four-factor injunctive relief test, and he did just that in his Declaration. *See* Rule 26 Expert Disclosure and Declaration of Larry W. Evans in Support of Plaintiff's Motion for Entry of Permanent Injunction at ¶¶ 62-72 (attached as Ex. 2).

For 17 years, Mr. Evans headed the corporate Patent and License Department of Sohio and B.P. America, serving as Chief Patent Counsel and Vice President of Licensing. Ex. 2 at ¶ 9. In that capacity, he personally negotiated hundreds of licenses. Moreover, he was responsible for resolving (through negotiation, arbitration or litigation) numerous patent disputes with licensees, competitors and partners of Sohio/B.P. *Id.* He also had responsibility for the direction of litigations both prior to verdict and after, including areas such as settlements and injunctions. *Id*. at ¶10. He has had other hands-on licensing experience over the past 45 years, as detailed in

8

his declaration. Thus, he has real world practical experience in licensing that can be brought to bear in rebuttal to Lawson's contentions that ePlus's licensing should somehow preclude the availability of injunctive relief.

In addition, Mr. Evans has represented the U.S. Government in negotiations with foreign governments with respect to the importance of having a right to exclude in their patent statutes. *See id* at ¶¶92-97. He served as the President of the Licensing Executives Society U.S./Canada Chapter and as the President of the Licensing Executives Society International. In that capacity, he actively promoted the U.S. patent laws both in negotiations with foreign delegations as well as through testimony given in Congressional hearings. In his testimony and negotiations, he has emphasized the right to exclude under the U.S. Patent Act as the cornerstone to the U.S. patent system. *See id.*

Mr. Evans' opinions are based on his significant 45 (plus) years of experience in the field of patent licensing, remedies and dispute resolution and, *e*Plus believes, will assist the Court in analyzing the relevant issues here. It is difficult to imagine who would be better qualified to provide such expert testimony, particularly where Lawson has placed *e*Plus's licensing of the patents-in-suit at issue.

### D. Mr. Evans Does Not Lecture The Court As To What The Law Is Or Should Be

Fourth, Mr. Evans does not, as Lawson contends, purport to lecture the Court or opine as to what the law is with respect to injunctions. *e*Plus certainly understands that whether a permanent injunction should issue is governed by the four-factor test articulated in *MercExchange, L.L.C. v. eBay, Inc.,* 547 U.S. 388 (2006). Mr. Evans does not instruct or opine otherwise, nor does Lawson identify any manner in which Mr. Evans' alleged "legal opinions"

9

are incorrect. To the contrary, Lawson's brief concedes that Mr. Evans' opinions apply the *eBay* factors to the facts of the case. Def's Br. at 6.

Mr. Evans therefore fulfills the requisite role of any expert in a patent case, namely, he identifies his understanding of the legal framework for his opinions, and then offers his opinions based on the facts before the Court. Lawson's own motion states, "[Mr. Evans] repeat[s] ***fact testimony offered by others*** and then ***state[s] his opinions on how the Court should apply the law*** to determine whether to grant a permanent injunction." *Id.* at 2 (emphasis added).

In this same respect, experts in patent cases typically opine on the application of facts to legal standards, including but not limited to the issues of infringement, *see, e.g., Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303 (E.D.N.Y. Oct. 26, 2007) (testimony of electrical engineering expert with background in patent law assisted the trier of the fact with respect to infringement cause of action),[3] validity, *see, e.g., Am. Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885 (D. Minn. 2010) (expert correctly identified legal standards for definiteness, written description, and enablement in his expert report),[4] unenforceability, *see, e.g., IGT v. Alliance Gaming Corp.*, 2008 WL 7084607, at \*\*1-2 (D. Nev. Oct. 21, 2008) (permitting inequitable conduct expert to offer opinion regarding plaintiff's alleged breach of duty of candor and good faith to the Patent and Trademark Office), and remedies, *see, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (upholding district court's admission of expert testimony on damages and stating, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or

---

[3] *See also Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, 2005 WL 3454283 (expert testimony properly applied correct legal standard for patent infringement) (D. Del. Dec. 16, 2005); *Snellman v. Ricoh Co.*, 862 F.2d 283, 288 (Fed. Cir. 1988) (expert's testimony and conclusion on infringement provided substantial evidence to support jury verdict of infringement).

accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.").[5] Accordingly, there is no reason that an expert cannot likewise opine on the application of the relevant facts to the four-factor test under *eBay*.

This is nothing more than what *e*Plus's and Lawson's own experts on infringement and validity purported to do throughout the liability trial. For example, Lawson's liability expert, Dr. Shamos was not a percipient witness as to any of the facts about which his testimony concerned. Rather, he relied on "fact testimony offered by others." *Compare* Def's Br. at 2 (contending that Mr. Evans does nothing more than "repeat fact testimony offered by others and then state his opinions"). Dr. Shamos had no first-hand knowledge of the Lawson products, and he conceded at trial that he could have, but did not, speak with any Lawson employee about the accused infringing products. Neither did Dr. Shamos use or demonstrate the accused Lawson systems. Lawson proffered Dr. Shamos as an expert who purported to provide opinions as to how the jury should apply the law to the facts in order to either find non-infringement or invalidity.

To the extent the Court believes various statements of Mr. Evans' declaration purport to lecture the Court on what the law is or should be, the Court may simply disregard those statements. This proceeding is not conducted before a jury, and therefore there is no risk of undue jury confusion or prejudice arising from Lawson's charge that some of Mr. Evans' statements constitute irrelevant "legal opinions."

---

[4] *See also Huntwise, Inc. v. Higdon Motion Decoy Sys.*, 2010 WL 5146525 (E.D.La. 2010) (rejecting argument that proposed mechanical engineering expert was not qualified to offer opinions on patent validity).

[5] *See also Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms.*, 2011 WL 383861 (D. N.J. Feb. 3, 2011) (denying plaintiff's motion to exclude expert report which properly applied the traditional *Georgia-Pacific* factors to determine a reasonable royalty rate); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387 (Fed. Cir. 2003) (noting that both parties' experts supported their reasonable royalty determination with an analysis of relevant legal factors based on their client's views of the disputed facts).

### E. Lawson Has Had Ample Time To Prepare Its Own Expert Declaration

Finally, Lawson contends that it has insufficient time to respond to Mr. Evans' declaration. This argument is not compelling, in light of the fact that Lawson has had even more time than did *e*Plus to prepare an expert declaration since the verdict was rendered. The jury returned its verdict on January 27, and Lawson stated on that same day that it was considering the submission of new evidence and expert testimony. Tr. 3403:25-3404:5, 3404:19-3405:13. The Court permitted Lawson a longer period of time in which to update its disclosures for the injunction proceeding.

Nonetheless, *e*Plus will not object to the Court granting Lawson an extra one or two days to provide an appropriate expert declaration in response to that of Mr. Evans, and *e*Plus will still provide any reply within the time frame already established by the Court.[6]

## III. CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court deny Lawson's emergency motion to strike the expert disclosure and declaration of Mr. Evans.

---

[6] Lawson did not meet and confer with *e*Plus either prior to or after filing its "emergency" motion. Had it done so, *e*Plus would have extended this offer directly.

12

Respectfully submitted,

February 10, 2011

/s/

David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
Counsel for Plaintiff *e*Plus, Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com
hwillett@cblaw.com

Michael G. Strapp (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus Inc.

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STRIKE THE RULE 26 EXPERT DISCLOSURE AND DECLARATION OF LARRY W. EVANS IN SUPPORT OF PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan C. Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

/s/

David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com