1

1           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
2                  RICHMOND DIVISION

3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    :
4    ePLUS, INC.,                   :
                                    :
5                    Plaintiff,     :
     v.                             :   Civil Action
6                                   :   No. 3:09CV620
    LAWSON SOFTWARE, INC.,          :
7                                   :   February 11, 2011
                     Defendant.     :
8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

10

11        COMPLETE TRANSCRIPT OF **CONFERENCE CALL**
          BEFORE THE HONORABLE ROBERT E. PAYNE
12            UNITED STATES DISTRICT JUDGE.

13

14

15   APPEARANCES:  (Via telephone)

16   Scott L. Robertson, Esq.
     **Michael T. Strapp, Esq.**
17   GOODWIN PROCTOR
     901 New York Avenue, NW
18   Washington, D.C.   20001

19   Henry Willett, Esq.
     CHRISTIAN & BARTON
20   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095
21
             Counsel for the plaintiff ePlus
22

23             DIANE J. DAFFRON, RPR
             OFFICIAL COURT REPORTER
24         UNITED STATES DISTRICT COURT

25

2

1    APPEARANCES:   (Continuing)

2    Daniel W. McDonald, Esq.
     MERCHANT & GOULD
3    3200 IDS Center
     80 South Eighth Street
4    Minneapolis, MN   55402-2215

5    Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
6    Troutman Sanders Building
     1001 Haxall Point
7    P.O. Box 1122
     Richmond, VA   23218-1122

8
              Counsel for the defendant Lawson Software.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          (The proceedings in this matter commenced at

2     4:00 p.m.)

3

4          THE COURT:  All right.  This is ePlus against

5     Lawson.  Who's on for whom?

6          MR. ROBERTSON:  Scott Robinson, Your Honor,

7     for plaintiff ePlus.  And my partner Michael Strapp is

8     on as well as Henry Willett from Christian Barton.

9          THE COURT:  All right.

10          MR. CARR:  Your Honor, this is Dabney Carr

11     for defendant Lawson.  And Dan McDonald at Merchant &

12     Gould is also on the line.

13          THE COURT:  All right.  Well, I've read

14     through your papers.  I'm in the middle of a criminal

15     trial taking an afternoon recess.  So let's boil it

16     down to the essence.

17          What is this man Evans, what is he going to

18     testify to that's not already in the record or that I

19     can't do by reviewing the law?

20          MR. ROBERTSON:  Your Honor, one of the

21     things -- this is Mr. Robertson, I'm sorry.  One of

22     the things I wanted to do is just address this issue

23     of the licensing of the patents-in-suit.

24          The Court has heard on numerous times Mr.

25     McDonald argue that ePlus has licensed freely.  And

1  the licenses are in evidence, but Mr. Evans is a

2  licensing expert.  And Mr. Evans can speak to directly

3  what those terms are, how they were carefully

4  negotiated, how the grant is strictly circumscribed,

5  how the grant is not transferable, a lot of the

6  factors that go into the test the Court is going to

7  have to consider under the eBay decision.

8          There have been numerous experts who

9  testified as to those facts.  I fashioned this as both

10  a Rule 26 disclosure and a declaration.  A declaration

11  that the Court can consider when it considers our

12  briefing on the issue after we've had an evidentiary

13  hearing.

14          We don't have to call Mr. Evans.  I'd like to

15  call him.  I think it would be probably 30 minutes of

16  direct examination.  But here's the dilemma I find

17  himself in, Your Honor.

18          On numerous occasions Your Honor, correctly

19  so, has directed the parties to march down to Judge

20  Dohnal's office and see if we can't resolve this case.

21  Judge Spencer did exactly the same thing, too, in the

22  SAP case.  And I did march down that hallway, and I

23  did settle the case with SAP.  And now three years

24  later I'm hearing, Well, ePlus licenses freely because

25  it resolves these disputes.

1          The Court knows, quite correctly, that

2     resolution of litigation by settlement agreements and

3     in patent cases by license agreements is a favored

4     policy.  It has to be so.  There are scarce judicial

5     resources, and we need to resolve these cases on a

6     favorable basis if we can.  And we shouldn't be heard

7     three years later down the road to say, Well, ePlus

8     licenses people, therefore it's not entitled to a

9     remedy.  That's just wrong, Your Honor.

10          If Judge Spencer had said to me, Do this, and

11     I would have said, Wait, three years from now I'm

12     going to be in front of Judge Payne, and someone is

13     going to turn around and say I license freely, he

14     would have laughed at me.  But that's exactly what's

15     going on here.

16          THE COURT:  Well, he probably would have

17     walked down the hall and hit me.

18          MR. ROBERTSON:  Well, but Mr. Evans can put

19     this in context.  He can describe the nature of these

20     licenses.  He speaks to several factors on this, Your

21     Honor, the adequate remedy of the law.  We're in the

22     position we're in.  The only remedy we have now is an

23     injunction.  And Lawson would have us have no remedy,

24     Your Honor, by saying because we license freely,

25     according to them.  I can tell you, nothing could be

6

1   more free than the license I'm not going to give to

2   Lawson.  But we license freely, you should address

3   that issue.  The balance of the hardships, you can

4   address that issue, and whether or not it's in the

5   public interest, be able to resolve patent disputes

6   through licensing.

7           This all comes, Your Honor, from a

8   concurrence of Judge Kennedy in the eBay case, a

9   concurrence that I would say was not, let's just say,

10  wisely thought through.  Because how are federal

11  judges to resolve disputes if they can't in a patent

12  case have the parties enter into a mutually agreeable

13  license?

14          And I will just observe, Your Honor --

15          THE COURT:  Well, it would be contrary to the

16  whole process of litigation if we couldn't do that.

17          MR. ROBERTSON:  Exactly.

18          THE COURT:  It would lead to nothing but

19  lawsuits going to trial and never getting resolved,

20  and it would discourage people from settling cases

21  ahead of time because they would have nothing at all

22  to lose at the end of the case.  So I'm not buying

23  that argument.  So I don't know why I need anybody to

24  tell me about that, though.

25          MR. ROBERTSON:  I'd like him to explain to

1  you about how these licenses were narrowly

2  circumscribed, but, Your Honor, I don't need to call

3  him as a witness.  You have his declaration.  The

4  Court understands the law, and the Court can accept

5  it, reject it, or otherwise.  But only today I was

6  informed by Mr. Strapp that Mr. Carr has said that

7  Lawson is calling multiple unnamed witnesses that have

8  never been disclosed pursuant to Rule 26 to testify

9  that it's against the public interest for injunctions

10  to enter.  I don't even know who they are.  They have

11  never been identified before to this day.

12          THE COURT:  Whoa, whoa.

13          MR. CARR:  Judge, that's far afield of this

14  motion.

15          THE COURT:  Whoa.  Wait a minute.  We're not

16  going to have that.  Hold on.

17          MR. ROBERTSON:  I'm sorry.

18          THE COURT:  Time out.

19          When I said "supplement your disclosures for

20  the injunction," I meant those things that had been

21  already posited and needed to be supplemented.  I

22  didn't mean start all over again with something new,

23  either one of you.

24          And why do I need to be told -- but I think I

25  do need to understand what Lawson proposes to do in

1    order to assess this part of this issue.

2         So what is it that Lawson proposes to do on

3    the issue of the injunction?  The brief says you're

4    not really going to call anybody.

5         MR. CARR:  Your Honor, the brief says -- I'm

6    sorry.  This is Dabney Carr.  The brief says that we

7    won't call any experts.  And we aren't calling any

8    experts.  And I'll mention that ePlus on Monday

9    identified a great deal of new information that it was

10   going to rely on in addition to witnesses that it was

11   going to rely on, fact witnesses, on the injunction.

12        We're going to do nothing different than what

13   ePlus has done.  And perhaps Mr. McDonald can address

14   more specifically which witnesses we're going to use,

15   but I recall that at the hearing on January 27th

16   before Your Honor Mr. McDonald was quite clear that we

17   would have to offer a witness from Lawson on the issue

18   of the irreparable harm to Lawson from the entry of a

19   permanent injunction in order to make a record on that

20   issue.  So we're not doing anything differently --

21        THE COURT:  Well, that's one witness on the

22   irreparable injury to Lawson.  That's not anything to

23   do with public interest.  What's the public interest?

24        What are we talking about, Mr. McDonald?

25        MR. McDONALD:  I think on the public interest

1    issue, Your Honor, we don't really have any new

2    witnesses on that issue.  We might have our people

3    that are already on our witness list that are even on

4    ePlus's witness list specific to this hearing, like

5    Mr. Frank, perhaps talk about the impact of a possible

6    injunction on our customers, and maybe one could

7    categorize that as the public interest, maybe not, I

8    don't know, but we're not really going to do anything

9    farther afield than that.

10           On this licensing issue that we're talking

11   about today with Mr. Evans, we don't have any new

12   witnesses or old witnesses, for that matter.  I think

13   we're going to rely on the fact record there, but it

14   is certainly relevant what's going on in the

15   competitive marketplace.  That's very clear from the

16   case law to know how prominent a competitor Lawson is

17   in this marketplace versus others in the marketplace

18   so we know if Lawson is marketing, what's going to be

19   the impact on ePlus.

20           Well, the fact that SAP has the research

21   reports that are already in evidence show --

22           THE COURT:  Show down.  You're going so fast

23   that there's not even a break that I can tell you to

24   slow down.  You filled up the airways.  I lost

25   everything you said and so did the court reporter.

1           MR. McDONALD:  Okay.  To back it up here,

2    we're certainly not planning on bringing in a witness

3    on the issue of the licensing, what these license say.

4    I think they speak for themselves.  I don't see any

5    need for any witnesses to tell the Court what the

6    licenses say or how the law should relate to that.

7           This issue of bringing in new witnesses on

8    the public interest, I think was the Court's question.

9    What I was saying is we will use a witness perhaps

10   that's already on ePlus's list.  They've asked us to

11   bring Mr. Frank of Lawson, for example, to talk.  And

12   he has some knowledge of at least what an impact of

13   the injunction might be on Lawson's customers and

14   perhaps that would be considered some part of the

15   equitable considerations here whether it's considered

16   public interest or something else.

17          I suppose the label, different people can

18   label it different ways, but there may be that, but

19   we're not going to be bringing in any experts or

20   anybody else, frankly, just from a public interest at

21   some broad perspective.  That's not going to happen.

22          What is going to happen is we already have on

23   record some research reports like from Gartner and

24   AMR, etc., about who actually competes in this

25   marketplace, and that's certainly very relevant to

1    whether or not there's any irreparable harm to ePlus

2    from an injunction because if ePlus is a small player

3    in this market and Lawson is a small player in this

4    market, which those research reports show, that's

5    certainly going to be relevant to whether or not an

6    injunction or not having an injunction even affects

7    ePlus in any significant way.

8           We will be updating those research reports.

9    We're trying to get some 2010 versions of those to

10   show that, in fact, those parties are small in this

11   market and are dominated by parties such as SAP and

12   Ariba, who are licensees.  And for whatever reason,

13   whether the public policy favors licenses or not, the

14   fact is that those are the dominant players in the

15   marketplace as well as some others that are not

16   licensees, that's certainly going to be very relevant

17   to whether or not an injunction against a party that

18   has 1 percent or 4 percent of the market like these

19   research reports show Lawson has, well, that certainly

20   is going to indicate that an injunction isn't going to

21   help ePlus.  It's not going to alleviate any lost

22   market shares or sales to ePlus because there aren't

23   any when the market is sliced up in that particular

24   way.

25           Also a --

1            THE COURT:  Wait a minute.  I'm not following

2      what you're saying.  It seems to me that what you're

3      really saying is that both of you compete in the small

4      player part of the same market.  You're not competing

5      with SAP.  You're competing with the small boys.

6            MR. McDONALD:  That's not correct.  These

7      research reports show who the competitors are in these

8      marketplaces.  Lawson might be about No. 10 on some of

9      these lists.  So we're certainly competing out there

10     in these marketplaces, but it's a very small

11     percentage of the market share.  That doesn't

12     necessarily mean we're competing for the same

13     customers.  That's not an implication of that at all.

14            MR. ROBERTSON:  This is Mr. Robertson.

15            I'm not going to argue the merits of this.

16     We have a hearing coming up, and then you have an

17     April 4 hearing on this stuff.

18            I will agree with Mr. McDonald that

19     competition is important.  I don't understand the

20     argument because I'm an adjudicated infringer, but I'm

21     only a small part of the market.  That means you don't

22     get an injunction.  But we'll address that at the

23     time.

24            What I just want to make clear here is if the

25     Court doesn't want to hear Mr. Evens, I understand.

1    I'd like the declaration to be considered for what the

2    Court considers its value to be, if any.  I can call

3    Mr. Evens if they want to cross-examine him, but I

4    don't have to.  And that's what we're here on today.

5         But I want to make sure because Mr. Strapp,

6    who's on the phone, and Mr. Carr, who's on the phone,

7    had a conversation this morning where it was

8    represented, from what I understood, that there was

9    going to be some third-party witnesses, customers of

10   Lawson, called about the public interest.  And I'm

11   hearing Mr. McDonald say just the opposite.

12        If that's the case, I'll take him at his

13   word, but I don't want to be surprised by any

14   witnesses that have not been previously disclosed and

15   are going to be told to me for the first time

16   apparently on Monday.

17        If that's the case, Mr. McDonald, please let

18   me know now because I just appreciate that heads up.

19        MR. McDONALD:  At this point I don't

20   anticipate that we're going to be using any customer

21   declarations or witnesses or anything like that.  I

22   guess if we were, it might be one customer of some

23   sort to give that perspective, but it certainly

24   wouldn't be anything dramatically different from

25   what's already been heard before.

1      THE COURT:  You-all are going to know what
2   each other is going to tender on Monday.  So why don't
3   you save your powder until then.
4      I will say this:  Licenses are not simple
5   matters.  The terms of the licenses, it might be
6   helpful to have them discussed to some extent, but
7   other factors that are in Mr. Evans' affidavit or
8   report or whatever it is, Rule 26 expert disclosure --
9   is there anything I don't know about ePlus' efforts to
10  enforce its patents rights so far?
11     MR. ROBERTSON:  He does address competition,
12  but, you know, that's the guts of it.  A large part of
13  it is his substantial credentials.
14     THE COURT:  So you want me to be influenced
15  by his credentials even though juries are not supposed
16  to be influenced by the *eminence grise* of the experts
17  but by the substance of what they say.  Is that what
18  you're saying, Mr. Robertson?
19     MR. ROBERTSON:  That's exactly right, Your
20  Honor.  I'd like you to be very impressed with his
21  credentials, but I think the man knows licensing and
22  understands how these licenses arose.  But I think
23  Your Honor understands the public policy that's at
24  work here.
25     As I say, you've given us a day, and I

1    remember when we were trying this case, Judge, and we

2    had about five and a half hours of actual testimony.

3    I was planning on calling three witnesses.   If

4    Mr. Evans isn't one of them, that's fine.   The Court

5    can consider his declaration for whatever value or

6    lack of value it finds.   But I would like the Court to

7    understand that these licenses were carefully

8    negotiated and painstakingly circumscribed such that

9    we do not exercise -- we're not a patent troll out

10   there, as Mr. Devis, the CEO of Lawson, suggested the

11   day after the jury verdict out there just licensing

12   anybody.

13        We spent millions of dollars to bring this

14   infringer to where we find ourselves now, and we want

15   a remedy, Judge.   We don't have damages.   If we don't

16   have an injunction, quite frankly, sir, we'll be the

17   first prevailing patent owner in the history of the

18   United States that never got a remedy.

19        MR. McDONALD:   Well, on that issue, Your

20   Honor, I think Mr. Robertson would like you to think

21   it's an injunction or nothing, but the fact is that

22   after a trial, the patent statute does provide for the

23   right for an accounting, and the Court could grant the

24   royalty going forward.

25        He doesn't want to talk about that unless the

1    Court denies him an injunction, but the fact that the

2    Court excluded their damages before the jury

3    pre-verdict does not necessarily preclude the Court as

4    an equitable matter of awarding a royalty as an

5    alternative to an injunction post-verdict.

6         MR. ROBERTSON:  That's a whole nother hearing

7    for a whole nother day, Mr. McDonald, if that ever

8    gets there because there's no evidence of record right

9    now as to what -- whether or not the Court could even

10   impose compulsory license on ePlus.

11        MR. McDONALD:  Well, I understand it's not of

12   record right now because ePlus does not want to make

13   that record because they don't want the Court to

14   realize that is an alternative, but that doesn't mean

15   it's not an adequate legal remedy or equitable remedy

16   alternative to an injunction.

17        THE COURT:  Can I do that on the basis of the

18   existing record, Mr. McDonald?

19        MR. McDONALD:  I don't think you could, Your

20   Honor.  I think you would have to have a separate

21   hearing on that.  We have a whole new deck that we've

22   dealt here because the jury found that the core

23   procurement product and core product with EDI do not

24   infringe.  So I think that dramatically affects the

25   value of the reasonable royalty specific to the RSS

1    and Punchout alternatives.  That was not something

2    that really could have been dealt with even before

3    trial.  So I think we need a new record on that.

4         MR. ROBERTSON:  Mr. McDonald, you shouldn't

5    be complaining about a permanent injunction because

6    you've got the core technology you can just tell your

7    customers to convert to.  Why don't you just rely on

8    that?  So there's no harm to Lawson at all.

9         THE COURT:  Did you all agree to both root

10   for the Packers in the Super Bowl?  Because that's the

11   only thing you agreed on.

12        I don't think I need to hear from Mr. Evans.

13   If there are any other problems that arise when

14   you-all do your filings, we'll have to deal with it.

15   And if somebody is trying to get up on somebody

16   because this is an equitable proceeding, I believe

17   that it would be appropriate for me to give you all a

18   relief if you're not following the instructions that I

19   gave you or somebody is being unfair.  I'll just wait,

20   and in the words of my colleague Judge Williams, and

21   abide the event.

22        In the meantime, Mr. McDonald, if your client

23   is banking on no injunction, then I suggest maybe your

24   client might want to reflect on that and whether

25   that's really a very viable position.

1          Have you all arranged to talk to Judge

2  Dohnal?

3          MR. ROBERTSON:  Your Honor, I think what Mr.

4  Carr communicated is that we were interested in

5  talking about mediation.

6          THE COURT:  Oh, yeah.  Have you arranged with

7  that mediation yet?

8          MR. McDONALD:  No, we haven't.  We've been

9  dealing with this evidentiary disclosure.

10          THE COURT:  Good.  You're going to either do

11  it with Judge Dohnal or you're going to do it

12  independently, and you're going to do it on a tight

13  schedule, and I don't have time to deal with it now.

14  I want the name on Monday of who you want to mediate

15  with and the date.  On Tuesday, I'd like to know what

16  schedule you have set up for achieving mediation

17  within the short range.  That meaning two or three

18  weeks.

19          And you just tell your chief executive

20  officer that he or she will be there, each one of you.

21  And there will be no --

22          MR. ROBERTSON:  I would like to deal with

23  Judge Dohnal, Your Honor.

24          THE COURT:  There's no substitutes.  There's

25  no nothing going on.  This has not been intelligently

1   approached from a standpoint of commercial resolution

2   as of this date, and I don't know why that's so, but

3   it hasn't, and I'm going to make sure it happens now.

4           I thought that you all told us that you both

5   agreed to go with an outside mediator who was a

6   software expert.

7           MR. CARR:  No, Your Honor, it was me who

8   spoke to Erica Haggard, and what I said was that

9   Lawson wanted to go with an outside mediator, and I

10  wanted to make sure it was all right with you before

11  we approached ePlus about it, and she said that it was

12  all right with you.

13          THE COURT:  Yeah, you can talk about it, but

14  have you resolved it?

15          MR. CARR:  We have not, Your Honor.

16          THE COURT:  Have you talked to them about it?

17          MR. CARR:  Mr. McDonald will have to respond

18  to that.

19          MR. McDONALD:  No, I haven't talked to Scott

20  about that, Your Honor, I'm sorry, but we will do that

21  immediately.

22          THE COURT:  Yeah.  I'll hear from you on

23  Monday who your mediator is.  It's either that or

24  Judge Dohnal.  And we're going to get going on it.

25          MR. CARR:  Judge Payne, this is Dabney Carr

1  again.  Before we get off the line, just a

2  clarification about Mr. Evans.

3          You had said you did not want to hear from

4  Mr. Evans.  Our motion was both to strike his

5  declaration and not to hear from him.  I heard

6  Mr. Robertson say a few times that he is satisfied

7  with you considering that declaration for what it's

8  worth.  We would request that the entire declaration

9  be struck from the record.

10          THE COURT:  Well, I'll deal with that later.

11  I may even need to call him back and hear him

12  depending on how you-all approach this thing now.

13          I'm kind of worn thin with people trying to

14  get one up on each other and not actually discussing

15  exactly how to proceed.  If I have to, I'll just

16  restructure the whole thing and we'll have expert

17  testimony.  I'll just jettison everything that's been

18  done to date, and we'll have expert testimony, and

19  we'll deal with it.

20          I'm trying to get you-all to do this in a way

21  that gets it done quickly and reasonably because

22  you-all have it all fresh in your minds, so do I, and

23  I was trying to save you the economic burden of a more

24  full scale hearing, but if I have to do it that way, I

25  will.

1          All right.  Thank you all very much.

2          MR. CARR:  Thank you, Your Honor.

3          MR. ROBERTSON:  Thank you, Your Honor.

4          THE COURT:  Bye.

5

6          (The proceedings were adjourned at 4:28 p.m.)

7

8          I, Diane J. Daffron, certify that the

9    foregoing is a true and accurate transcription of my

10   stenographic notes.

11

12          /s/                          2/13/11
     _____    _____
13          DIANE J. DAFFRON, RPR, CCR      DATE