IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF DEFENDANT LAWSON SOFTWARE, INC.'S MOTION TO COMPEL PLAINTIFF'S TOTAL REVENUES FROM SALES OF PROCURE+, CONTENT+ AND RELATED SERVICES**

Defendant Lawson Software, Inc. ("Lawson") hereby moves under Rule 37(a) of the Federal Rules of Civil Procedure for an order compelling Plaintiff ePlus, Inc. ("ePlus") to disclose the specific revenues generated by the sale of the products it alleges practice the patents in suit—Procure+ and Content+—and the revenues generated by servicing these products. ePlus alleges sales of these products, but provides no supporting documents specific to those products. ePlus has not alleged that producing these figures is impossible, but has simply refused to do so. Instead, ePlus has offered what it unilaterally deems an "appropriate measure" of these revenues by pointing to the sales of two ePlus divisions ("ePlus Systems" and "ePlus Content Services") whose sales include but are not limited to the products at issue. (Ex. A (ePlus Rebuttal Disclosure) at 3 n.1.) The Court should compel ePlus to disclose these sales figures, broken down by product. If ePlus fails to produce the product-specific sales by February 28, the Court should rule that ePlus may not rely on its alleged sales of Procure+ and Content+ at the March 3, 2011 hearing regarding an injunction.

## RULE 37(a)(1) CERTIFICATION

Lawson's counsel certifies that it has in good faith conferred with counsel for ePlus in an effort to obtain the sales and services revenues for Content+ and Procure+ without resorting to Court action. Lawson's efforts have been unsuccessful, as ePlus refused to provide itemized sales.

## ARGUMENT

Under Rule 37(a) of the Federal Rules of Civil Procedure, a party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). Despite several requests from Lawson (*e.g.*, Ex. B (Lawson's Reqs. for Prod. 102, 135, and 137); Ex. C (02/09/2011 email from Kirstin Stoll-DeBell to ePlus counsel); Ex. D (02/02/2011 email from Dabney Carr to Michael Strapp)), ePlus has failed to disclose the specific revenues generated by sales of its Content+ and Procure+ products. ePlus has also failed to disclose the revenues generated by servicing its Content+ and Procure+ products. ePlus's counsel asserted:

> I don't believe that ePlus has any specific revenue information for Procure+ and Content+ beyond the information that was already (a) produced during discovery, (b) identified in response to written discovery requests, (c) described in deposition testimony, (d) described in trial testimony, and (e) identified in ePlus's supplemental Rule 26 disclosure. If ePlus does have additional revenue information for Procure+ and Content+, we will supplement our earlier disclosures on February 21.

(Ex. D.) None of the listed sources, however, specify sales of the Content+ or Procure+ products. Nor did ePlus supplement its earlier disclosures with new sales data.

Despite this failure, ePlus's rebuttal disclosure in support of its request for injunctive relief relies on purported sales of its Content+ and Procure+ products. ePlus alleges these products are "critically important" products that embody at least some of the claims of the patents in suit. (Ex. A at 3-4; Ex. E (ePlus Supplemental Disclosure) at 4-7.) ePlus argues that

2

the revenue generated by sales of Procure+ and Content+ since 2001 exceeds $50 million. (Ex. A at 3.)

As support for this figure, ePlus points to trial exhibit DX-292 (attached hereto as Ex. F). This summary document aggregates revenues generated from sales of two divisions of ePlus, namely ePlus Systems and ePlus Content Services. (*Id.*) The summary (which shows ten years of losses of the Systems Division) provides no specific breakdown of sales within the Divisions, and no sales specific to Procure+ or Content+. It includes two spreadsheets-one entitled "Income Statement-ePlus Systems," and one entitled "Income Statement-ePlus Content." It generally lists "Sales of equipment," which is clearly not the Content+ or Procure+ software. It also lists "Fee and other income/ePlusSuite revenues," which clearly is not limited to Procure+ or Content+. (Ex. F.)

Mr. Farber, the President of the Systems Division, testified that the System Division currently includes five categories: (1) e-procurement, (2) content and catalog management, and three other product categories including (3) asset management, (4) document management systems, and (5) spend analytics:

> Q. Okay. So have you had 5 categories for 3 about 2 years now?
> A. If you want to consider all 5 of those categories together, yes.
> Q. Well, whether they're together or not, I mean, have you had a structure within your division at ePlus that has had these 5 categories that you listed for about 2 years now?
> A. Yeah. I think I answered the question.

\*\*\*

> Q. So since 2001 up until the time spend analytics was added, the 4 product categories in your division were e-procurement, 1, content and catalog management, 2, asset management, 3, and document management systems, 4; is that right?
> A. Correct.

3

(Ex. G (12/16/09 Dep. of Ken Farber) at 15: 2-11; 16:8-15.) Thus, the Systems Division sales clearly include sales of several products other than Procure+ and Content+. And it is not clear what the "ePlus Content" spreadsheet includes, because content management is part of the Systems Division.

ePlus implies that the Division sales figures accurately represent Procure+ and Content+ sales, but at least implicitly concedes in its disclosure that the sales figures provided include sales revenues from products other than Procure+ and Content+. (*See* Ex. A at 3 ("[R]evenues from sales for *virtually* all of ePlus's products and services unrelated to ePlus's patented e-procurement software are tracked as revenues for ePlus operating companies other than ePlus Systems and ePlus Content Services." (emphasis added).) Though ePlus asserts in its supplemental disclosure that the sales revenues generated by the ePlus Systems and ePlus Content Services are an "appropriate measure" of the sales of Content+ and Procure+, ePlus does not argue that the total sales revenues of these divisions, disclosed in DX-292, include *only* revenues generated by the sale of Content+ and Procure+. ePlus does not even disclose or attempt to estimate what portion of the revenue figures stated in DX-292 is attributable to sales of Content+ or Procure+. Nor does it itemize or even purport to include any service revenue. Mr. Farber's testimony cited above shows that these Divisions sales include sales of products other than Content+ and Procure+. ePlus is hiding the ball and has offered no justification for doing so.

ePlus's counsel suggested that ePlus produced the best available data. (Ex. D.) This defies common sense, as it is unimaginable that a company selling "spend analytic" and "asset management" software would not track sales of specific products. ePlus should be required to produce such data.

ePlus heavily relies on its purported sales of Procure+ and Content+ products in its rebuttal evidentiary disclosure. Specifically, ePlus asserts that, because of the importance of its Content+ and Procure+ products, it will be irreparably harmed if the Court does not enjoin Lawson. Yet even the overstated division-wide sales reflect less than 2% of ePlus's total revenues. ePlus should not be allowed to continue to conceal the hard sales data that would show the sales of the products it cites are an even smaller fraction of its total sales and of the relevant market. Simply put, ePlus should not be allowed to rely on such allegations in support of its request for injunctive relief without disclosing the data that substantiates those sales.

The Court should also order ePlus to disclose the total revenues generated from servicing the Procure+ and Content+ products, if any. As with its specific sales revenues, ePlus has not disclosed the revenues generated from such services. The Systems Division sales summary provided, DX-292, does not even include a line for service revenue. (Ex. F.)

If ePlus fails to disclose the sales and services revenue specifically for the Content+ and Procure+ products by February 28, the Court should preclude ePlus from relying on purported sales or services related to Procure+ and Content+ in support of its request for injunctive relief pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.

## CONCLUSION

ePlus's February 22, 2011 rebuttal disclosure alleges the Procure+ and Content+ products are "critically important." It relies on sales associated with those products to support its claim of irreparable harm. Yet it continues to refuse to provide license and any other revenue data specific to those two products, relying instead on sales figures that it admits includes several other product categories. It is incredible that ePlus, a company which purports to sell sophisticated financial business software, would not have the data necessary to disclose annual

5

license and service revenues associated with these purportedly-important products. Therefore, the Court should compel ePlus to disclose its annual licensing and any other revenues (such as services) generated from Procure+ and Content+ products by February 28, in advance of the March 3 evidentiary hearing. If ePlus fails to do so, it should be precluded from relying on any sales associated with Procure+ and Content+ in connection with its request for an injunction.

LAWSON SOFTWARE, INC.

By  /s/ Robert A. Angle
    Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 23rd day of February, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

 

/s/      Robert A. Angle
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

2027991v1