# EXHIBIT B

# KAUFMAN & CANOLES
attorneys at law

Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510

*Mailing Address*
Post Office Box 3037
Norfolk, VA 23514

Stephen E. Noona
(757) 624.3239
senoona@kaufcan.com

T (757) 624.3000
F (757) 624.3169

kaufCAN.com

July 23, 2009

**VIA HAND DELIVERY**

Gregory N. Stillman, Esq.
Hunton & Williams
500 East Main Street, Suite 1000
Norfolk, VA  23510

Re:  **ePLUS, Inc. v. Perfect Commerce, Inc., SciQuest, Inc.,
Lawson Software, Inc., and Verian Technologies, Inc.
Civil Action No. 2:09cv232**

Dear Greg:

Enclosed is the service copy of Defendants Perfect Commerce, LLC, SciQuest, Inc. and Lawson Software, Inc.'s First Set of Requests for Production of Documents and Things.

Please call me if you have questions.

Sincerely,

Stephen E. Noona

SEN/lat
Enclosure

cc:   Brent L. VanNorman, Esq. (via e-mail)
David M. Young, Esq. (via e-mail)
Scott L. Robertson, Esq. (via e-mail)
Shirley Sperling Paley, Esq. (via e-mail)
Daniel Johnson, Jr., Esq. (via e-mail)

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

Gregory N. Stillman, Esq.
July 23, 2009
Page 2


      Rita E. Tautkus, Esq. (via e-mail)
      Robert W. Busby, Jr., Esq. (via e-mail)
      Kenneth W. Brothers, Esq. (via e-mail)

1504832\1

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| EPLUS, INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>PERFECT COMMERCE, INC.,<br>SCIQUEST, INC., LAWSON<br>SOFTWARE, INC., and VERIAN<br>TECHNOLOGIES, INC.,<br><br>               Defendants. | Civil Action No. 2:09-CV-232-HCM-TEM |

**DEFENDANTS PERFECT COMMERCE, LLC, SCIQUEST, INC., AND LAWSON SOFTWARE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Perfect Commerce, LLC, SciQuest, Inc., and Lawson Software, Inc. (collectively "Defendants"), request that Plaintiff, ePlus, Inc., ("ePlus"), produce the following documents and things requested below, in accordance with the Definitions and Instructions that follow. The requested documents and things must be produced for copying and inspection at the offices of Morgan, Lewis & Bockius, 1111 Pennsylvania Avenue, N.W., Washington, D.C. 20004, within thirty (30) days of the date of service of these requests, or at such other time and location as the parties may agree.

## DEFINITIONS AND INSTRUCTIONS

1.     "ePlus," "You," "Your," and "Plaintiff" means Plaintiff ePlus, Inc., its predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational

1

or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

2.      "Defendant" or "Defendants" shall mean Perfect Commerce, LLC, SciQuest, Inc., and/or Lawson Software, Inc., alone or in any combination, their subsidiaries, divisions, affiliates, predecessors, and any present or former officers, directors, trustees, employees, agents, or representatives, including counsel.

3.      "Fisher Scientific" means Fisher Scientific Company LLC, its predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

4.      "IBM" means International Business Machines Corp., its predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

5.      "Loral Federal Systems" means Loral Federal Systems, its predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

6.      The term "person" shall mean both natural persons and/or other business entities,

2

associations, government agency or other organization recognizable at law and the "acts" of a

person are defined to include the acts of directors, officers, owners, members, employees, agents

or attorneys acting on the person's behalf.

7.      The terms "document" or "documents" means the original and each non-identical

copy of any written, printed, typed, recorded, computerized or electronic data, taped, graphic, or

other matter, in whatever form, whether in final or draft, including but not limited to all materials

that constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules

of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the

Federal Rules of Civil Procedure. "Electronic data" includes without limitation all text files

(including word processing documents and presentations), spread sheets, electronic mail

documents (emails), instant messages including those saved as files and stored on computer

systems, databases, calendars, computer system activity logs, audit trails, data used for electronic

data interchange, Internet usage files, network access information, voicemail, digitized audio,

digital image files, video files (*e.g.*, data stored in MPEG, JPEG, GIF, TIFF, and BMP formats)

and any other information stored magnetically, optically or electronically, and data stored on

workstations, laptops, network servers, removable media, handheld devices, backup tapes, hard

disk drives, diskettes and other computer media such as magnetic tape, floppy disks, memory

sticks and recordable optical disks.  If documents are identified in lieu of answering a document

request, identify the documents in sufficient detail to permit Defendants to locate and identify, as

readily as ePlus, the documents and portions therein from which the answer may be ascertained.

8.      Any form of the terms "concerning" or "relating" shall mean referring to,

describing, evidencing, constituting, or otherwise discussing in any way the subject matter, or

any part thereof, identified in a request.

9.      The terms "communication" or "communications" shall mean any communication regardless of the manner in which such communication took place, including but not limited to, personal conversations, correspondence, electronic or computer mail (emails), telephone calls, facsimile communications, or telegrams.

10.     The terms "and" and "or" shall be understood as either conjunctive or disjunctive whichever is more inclusive in content.

11.     The terms "any" and "all" shall be considered to include "each and every."

12.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa.

13.     The terms "thing" or "things" have the broadest meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure, and include every kind of tangible item, other than a document, in your possession, custody or control, for example without limitation prototypes, samples, models, or specimens.

14.     "Prior art" includes without limitation the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to U.S. patents having application filing dates before the filing date of any subject patent, printed publications published before the filing date of any subject patent, anything in public use or on sale more than one year before the filing date of any subject patent, any design needs or market conditions relating to the subject patents and existing as of the filing dates of relating to the subject patents, anything in secret commercial use by an inventor of any subject patent more than one year before the filing date of the subject patent, anything known or used in a publicly accessible form by one other than an inventor of any subject patent before the filing date of the subject patent, or anything invented by one other than an inventor of any subject patent before the filing date of the subject patent.

4

15.     The terms "conception" or "conceived" shall mean or refer to the mental formulation by the inventor of an idea claimed as an alleged invention.

16.     The term "reduction to practice" and/or "reduced to practice" shall mean or refer to the completion of the first prototype or experimental version of the alleged invention.

17.     The term "prosecution" shall mean or refer to proceedings before any patent office, either the United States Patent and Trademark Office or a foreign patent office, in connection with the filing of a particular application and/or issuance of a particular patent.

18.     The term "public use" shall mean or refer to any public or private use or demonstration, whether experimental or otherwise, of the alleged invention or which disclosed the alleged invention to anyone other than an employee, agent or attorney of the inventor, including without limitation existing or potential investors, licensees, customers or distributors.

19.     Patents or patent applications "related" or "relating" to a patent shall mean or refer to any patents (whether expired or in force) and patent applications (whether issued, pending or abandoned) that include any common disclosure with the patent, or that refer in any way to the patent, including but not limited to continuations, continuations-in-part, divisionals, or any foreign counterpart applications or patents.

20.     The term "sale" shall mean or refer to public or private efforts of any sort in connection with the commercialization of an alleged invention, whether experimental or otherwise, including without limitation any offers for sale or license, actual sales or licenses, or any advertising of the alleged invention.

21.     The term "patents-in-suit" means any or all of U.S. Patent Nos. 6,023,683 ("the '683 patent"), 6,055,516 ("the '516 patent"), and 6,505,172 ("the '172 patent").

22.     The term "patents-in-suit and related applications" refers to the patents-in-suit as

well as all patents, patent applications, continuation applications, continuation-in-part

applications, and divisional applications, whether published or unpublished, U.S. or foreign, that

cite the patents-in-suit, incorporate them by reference or otherwise, claim priority from or are

used as a basis for the priority date for these patent applications.

23.     The term "patented inventions" means the inventions described in the patents-in-

suit and related inventions.

24.     "Inventor(s)" or "named inventor(s)" refers to, for purposes of these requests, the

listed inventors on the patents-in-suit, James N. Johnson, Robert P. Kinross, Francis J. Melly,

and Douglas A. Momyer.  This definition is not to be construed as an admission that the listed

inventors on the patents-in-suit are inclusive of all the actual inventors of the patents-in-suit.

25.     The term "commercial embodiment" means any product or device or prototype

thereof, manufactured, used, imported, sold, or offered for sale by ePlus, or a licensee, sub-

licensee or assignee of ePlus, that embodies or practices any subject matter of any asserted claim

of the counterclaim patent, or embodies or practices any subject matter disclosed or described in

the counterclaim patent.

26.     "Plaintiff products" means any product, apparatus, device, system, technology,

prototype, method, or service (whether experimental or not, whether intended for sale or

commercialization or not, or whether reduced to practice or not) used, manufactured, tested,

offered for sale, sold, or licensed by or for Plaintiff.

27.     The term "accused product(s)" means any and all products accused of

infringement by Plaintiff.  If this term is used in connection with a specific patent or patents, then

it refers to any and all products accused by Plaintiff of infringing the specified patent or patents.

28.     The term "Complaint" refers to the complaint for patent infringement filed by

Plaintiff on or about May 19, 2009.

29.     "Due diligence" means any efforts, conversations, reviews of documentation or investigations of any kind into the title, utility, validity, value, strategic value or commercial usefulness of patents, applications for patents, or other assets prior to the acquisition of those patents, applications, or assets.

30.     "Date" means the day, month, and year, if ascertainable and if not, the best approximation thereof including in relation to other events.

31.     "Filing date" refers to the date on which a patent application is filed in the U.S. Patent and Trademark Office.

32.     "Infringe" or any variant thereof, including but not limited to "infringing" and "infringement," refers to any infringement pursuant to 35 U.S.C. § 271 whether direct, indirect, contributory or by inducement.

33.     If you withhold any document or any portion thereof on a claim of privilege or any other claim of immunity from discovery, then for each document or portion withheld, state the following:

(a)   the type of document (e.g. letter, memorandum, contract, etc.);

(b)   its title;

(c)   its date;

(d)   its subject matter;

(e)   the name, address, and employer, at the time of preparation, of the individual(s) who authored, drafted, or prepared it;

(f)   the name, address, and employer, at the time of dissemination, of the individual(s) to whom it was directed, circulated, or copied or who had access thereto; and

(g)    state the grounds upon which the document is being withheld (e.g. "attorney-client privilege," "work-product doctrine," etc.).

34.    If you contend that a portion of a document contains information which is immune from discovery, then produce the document with the immune portion redacted therefrom and describe the redacted portion in a privilege log pursuant to the instructions in the preceding paragraph.

35.    If you object to any of these requests, then fully state the reasons and every basis for each objection.  If you object to any part or aspect of a request, then specify the part or aspect.  Similarly, if you do not object to a particular request, but are unable to respond fully to that request, then respond to the fullest extent possible at the time of response and provide an explanation for the lack of a full response.

36.    These requests require the production of documents in the same form and order as they are kept in the usual course of business, or organized and labeled to correspond with the particular requests set forth below.  If you choose the former method, produce the documents in the boxes, file folders, bindings, or other containers in which the documents are found, leaving intact any titles, labels, or other descriptions thereon.

37.    Maintain and produce to Defendants a record of the source of each document produced, including the file name, and location where each document was located in the usual course of business and identifying the person, group, or department having possession, custody, or control of each document.

38.    These requests extend to all documents and things in your possession, custody, or control.  If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody, or control, state this circumstance and identify such documents or things and who has possession, custody, or control of the documents or things.

39.    When an identified document is destroyed or alleged to have been destroyed: (a) state the date and reasons for its destruction, (b) identify each person or entity having knowledge

8

of its destruction, and (c) identify each person or entity responsible for its destruction.

40.     Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to make the materials intelligible.

41.     Selection and numbering of responsive documents shall be performed in such a manner as to enable the source of each document to be determined.

42.     Available English translations shall be provided for any document containing foreign language text.

43.     These requests shall be deemed to be continuing within the meaning of Rules 26(e)(1) and (2) of the Federal Rules of Civil Procedure.  If, after responding to these requests in writing or by production, you obtain or become aware of any further documents that would be responsive to these requests, you must timely supplement your production and responses.

44.     The above definitions are not intended to be interpretations of any of the terms of the patents-in-suit.  Neither party shall be bound by the interpretations used herein except with respect to these discovery requests.

## **REQUESTS**

1.     All documents that you may use to support your claims or defenses.

2.     All documents relating to any of the Defendants, including without limitation all documents relating to any and all accused products.

3.     All documents relating to the patents-in-suit or any related patents or patent applications, including all foreign counterparts thereof.

4.     All non-identical copies of prosecution histories of the patents-in-suit and any related patents or patent applications, including foreign counterparts thereof.

5.     All documents and things relating to Plaintiff's use of each of the alleged inventions described in each claim of each patent-in-suit.

6.      All documents and things relating to the conception, design, development, actual reduction to practice or diligence in the reduction to practice of each alleged invention of each of the patents-in-suit, including without limitation, the first drawing or sketch of each such alleged invention, the first written description of each such alleged invention, any discussion by any Plaintiff committee, or person on the need or acceptability of patenting the alleged invention, and the first disclosure of each such alleged invention to any person other than an alleged inventor thereof, also including but not limited to, all documents concerning inventorship of the subject matter of each claim of each of the patents-in-suit.

7.      All documents and things related to any meeting between Plaintiff or Fisher Scientific or any other person acting on behalf of Plaintiff or Fisher Scientific and IBM or Loral Federal Systems or any other person acting on behalf of IBM or Loral Federal Systems, including but not limited to Charles Gounaris, Pamela Eng (f/k/a Pamela Jenkins), Allen Rolland, Kevin French, Jim Gomola, Claus Mokawka, Harry Alexander, Bill Saville, Steve Redmond, Dave Preston, Anthony Ormston, Fred Fosbury, and George Briese.

8.      All documents and things related to any agreements between Plaintiff or Fisher Scientific or any other person acting on behalf of Plaintiff or Fisher Scientific and IBM or Loral Federal Systems or any other person acting on behalf of IBM or Loral Federal Systems, including, without limitation any non-disclosure and consulting agreement(s).

9.      All documents and things related to any communications between Plaintiff or Fisher Scientific or any other person acting on behalf of Plaintiff or Fisher Scientific and IBM or Loral Federal Systems or any other person acting on behalf of IBM or Loral Federal Systems, including, without limitation any documents concerning any alleged invention within the scope of any claim of any of the patents-in-suit.

10.     All documents and things related the input, advice, consultations, proposals, suggestions, and contributions related to the patented inventions from IBM or Loral Federal Systems or any other person acting on behalf of IBM or Loral Federal Systems, including without limitation any handouts, handwritten notes, spreadsheets, prototypes, presentations, emails, journals, notebooks, or demonstrations.

11.     All documents and things relating to the identification, selection, or determination of the named inventors for each of the claims of the patents-in-suit.

12.     All documents that relate to the inventor(s) for each of the claims in each of the patents-in-suit, including but not limited to all technical articles, publications, presentations, and the like, authored by, presented by, or in the possession of any inventor of any of the patents-in-suit, all lab notebooks, notes, experimentation documentation, hypothesis and results, invention disclosures and other writings of such inventors.

13.     For each of the inventors of each of the patents-in-suit, documents sufficient to show or identify the period of employment, affiliation, or association with Plaintiff or Fisher Scientific, including the dates of hire and termination of such employment, affiliation, or association, and all documents that relate to the employment files of each such inventor.

14.     Documents sufficient to determine the last-known residence and employment of each of the named inventors of the patents-in-suit.

15.     For each of the inventors of each of the patents-in-suit, all documents relating to the inventor's involvement or contributions to conception and actual reduction to practice, in whole or in part, of the alleged invention described or claimed in his or her patent(s), and the dates of such alleged involvement or contributions.

16.     All documents relating to Plaintiff's diligence or lack thereof in its alleged

11

reduction to practice of the alleged invention of each claim of each of the patents-in-suit.

17.    All documents relating to the dates on which, and the circumstances under which, Plaintiff and/or the inventors of the patents-in-suit first learned of the prior art identified to the United States Patent and Trademark Office during the prosecution of each of the patents-in-suit.

18.    All documents that relate to communications with any person, including, but not limited to, the inventors of the patents-in-suit, that relate to actual or potential prior art for any of the patents-in-suit, irrespective of whether or not the prior art has been cited to the United States Patent and Trademark Office.

19.    All documents relating to any inventor's beliefs for proof of concept and best mode for any alleged invention within the scope of any of the claims in the patents-in-suit.

20.    All documents and things relating to testing, developmental, experimental or research activities with respect to each alleged invention of each of the patents-in-suit, including without limitation, such activities relating to the design, construction, and operation of the first device, apparatus, product, model, system, method, or prototype to operate for the intended purpose of each such alleged invention and to any antecedent device, apparatus, product, model, system, method, or prototype thereof.

21.    Documents sufficient to identify all persons who participated in the design, development, implementation, debugging, testing, or evaluation of any product, implementing or embodying, in whole or in part, the alleged invention of any claim of the patents-in-suit.

22.    All documents relating to the functions, methods of operation or results of the alleged invention of each claim of the patents-in-suit.

23.    All documents relating to any Plaintiff policy, protocol, strategy, plan, or practice, whether formal or informal, stated or unstated, regarding patents, including but not limited to,

filing and prosecution of all forms of patent applications (including but not limited to original applications, continuation applications, divisional applications, reissues, reexaminations, and divisional applications), acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, licensing patents or patented technology, or cross-licensing patents or patented technology.

24.    All documents relating to document retention policies of the Plaintiff, including without limitation employee manuals, training manuals, proprietary rights agreements, offer letters, termination letters, exit interview memoranda, post-employment notification letters, and Frequently Asked Questions or FAQs.

25.    All documents sufficient to describe how the Plaintiff organizes and stores all documents under its possession, custody or control.

26.    All documents sufficient to describe the organizational structure of Plaintiff, particularly the corporate structure, officers, board of directors, and predecessor corporations.

27.    All documents relating to the file histories of the patents-in-suit.

28.    All documents relating to any patent application filed by Plaintiff anywhere in the world relating to any claim of the patents-in-suit.

29.    All documents and things relating to any embodiment of the alleged invention of any of the patents-in-suit that were not disclosed to the U.S. Patent and Trademark Office, including but not limited to any drawings, schematics, illustration, writings, specifications, data sheets and technical manuals.

30.    All documents and things relating to any decision or communication to bring or not to bring any information or material to the attention of the U.S. Patent and Trademark Office,

13

either prior to, during, or after the prosecution of the applications, including requests for reexamination or reissue, for each of the patents-in-suit.

31.    All documents and things relating to any consideration, evaluation, study, or analysis given as to whether or not an application for, an application for reissue of, or a request for reexamination of, any of the patents-in-suit (including continuation, continuation-in-part, or divisional applications thereof or based thereon) should be prepared or filed.

32.    All documents and things relating to any request for reexamination of any patent-in-suit, including without limitation the request for reexamination of the '683 patent, a complete copy of such requests, all documents that passed in either direction between any of Plaintiff's outside counsel, Plaintiff's personnel, the inventors, the patentees, each patent attorney or agent in connection with the request and all statements made to the U.S. Patent and Trademark Office concerning the request.

33.    All documents and things relating to Plaintiff's response to the reexamination of the '683 patent and all statements made to the U.S. Patent and Trademark Office and/or Board of Patent Appeals and Interferences related to the reexamination.

34.    All documents relating to the earliest description, in whole or in part, of the alleged invention of each claim of each of the patents-in-suit.

35.    All documents and things relating to the preparation or prosecution of each foreign patent application corresponding in whole or in part, to the U.S. applications, including requests for reexamination and reissue, for each patent-in-suit, including without limitation, all documents relating to any prior art cited or considered by Plaintiff, the patentees, the inventors, the patent applicant, the patent applicant's attorney or agent or any patent examiner, and any conflict, interference, opposition, infringement, nullity, revocation or other proceeding involving

14

such foreign applications or any patent issuing thereon, and Plaintiff's complete prosecution file for each such foreign application.

36.     All documents relating to opinion letters referring to any of the patents-in-suit.

37.     Documents sufficient to identify all persons involved with prosecuting the patents-in-suit and any related patents or patent applications, including foreign counterparts thereof.

38.     All documents in the possession of Plaintiff relating to the prosecution of each of the patents-in-suit, including but not limited to, invention disclosures, draft patent applications, patent applications, communications, and drafts of communications related to the prosecution of the patents-in-suit.

39.     All documents in the possession of Plaintiff's patent prosecution attorney(s) relating to the prosecution of each of the patents-in-suit, including but not limited to, invention disclosures, draft patent applications, patent applications, communications, and drafts of communications related to the prosecution of the patents-in-suit.

40.     All documents related to communications between any patent prosecution attorney and any Plaintiff representative regarding the prosecution of the patents-in-suit.

41.     For each of the patents-in-suit, all documents relating to the transfer of ownership rights from either the inventor(s) or Fisher Scientific to Plaintiff, including but not limited to, contracts, license agreements, assignments, and any other documents related to or tending to show chain of ownership from the inventor(s) of each of the patents-in-suit or Fisher Scientific to Plaintiff.

42.     All documents relating to any assignment, sale, acquisition, license or transfer of any rights relating to any patent-in-suit or any related patents or patent applications, including for

each such document the identity of the parties thereto and the payments made by the parties.

43.    All documents and communications relating to Plaintiff's due diligence efforts in the acquisition of any of the patents-in-suit.

44.    All documents that describe the Plaintiff's belief of the value of any of the patents-in-suit.

45.    All textbooks, articles, journals, or other publications of any kind relating in any way to any of the alleged inventions described in any claim of the patents-in-suit.

46.    For each of the patents-in-suit, all printed publications relating to the patent and predate the filing date of such patent.

47.    For each of the patents-in-suit, all documents relating to the first use, disclosure, display, demonstration, preview, or exhibit of any product that uses or has ever used, in whole or in part, the alleged invention of any claim of such patent.

48.    All documents relating to prior art or potential prior art to the patents-in-suit, including but not limited to pre-existing products, systems, methods, or descriptions that relate to the subjects of the alleged inventions of the patents-in-suit.

49.    All documents distributed by or on behalf of Plaintiff to investors, insurers, or potential investors or insurers or other potential sources of funding that directly or indirectly relate to any of the patents-in-suit or the alleged inventions thereof, or the development, manufacture and/or sale of any product incorporating any of the alleged inventions of any claim of the patents-in-suit.

50.    All documents relating to any long-felt need that has been filled by any product implementing or embodying the alleged invention of any of the claims of the patents-in-suit, including but not limited to, all such documents and things which tend in any way to support or

16

negate a contention of long-felt need.

51. All documents and things relating to any commercial success achieved by Plaintiff's products using the alleged invention of any of the patents-in-suit, including without limitation, all such documents and things which tend in any way to support or negate a contention of commercial success, including any documents supporting a nexus between any alleged invention of the patents-in-suit and the commercial success of such products.

52. All documents relating to any alleged failure by those skilled in the art to appreciate any problem alleged to have been solved by any alleged invention of any of the claims of the patents-in-suit.

53. For each of the patents-in-suit, all documents relating to the marketability of, market demand for, or consumer acceptance of any commercial embodiment of the alleged invention.

54. All documents relating to non-infringing alternatives or acceptable substitutes, if any, or the lack thereof, for any alleged invention described in any specification or any claim or claims of the patents-in-suit.

55. All documents relating to any secondary consideration that any invention described in any specification or any claim or claims of the patents-in-suit is not obvious.

56. All documents relating to or tending to show copying by any person of the alleged inventions in the patents-in-suit.

57. All documents cited in the patents-in-suit.

58. All documents related to any prior art search for the patents-in-suit.

59. All documents resulting from a prior art search relating to the patents-in-suit.

60. For each of the patents-in-suit, all documents relating to the first offer for sale of

any Plaintiff's product implementing or embodying, in whole or in part, the alleged invention, or any claim of such patent-in-suit, and all other such offers within the following year.

61.     For each of the patents-in-suit, all documents relating to the first actual sale of any Plaintiff product implementing or embodying, in whole or in part, the alleged invention, or any claim of such patent-in-suit, and all other such sales within the following year.

62.     All documents that relate to any differences or similarities between the scope and content of the subject matter of the patents-in-suit or the subject matter of any claims of the patents-in-suit and one or more items of actual or potential prior art or one or more pre-existing products, systems, methods, or descriptions.

63.     For each of the patents-in-suit, all documents that relate to promotional literature or other materials prepared or disseminated for any product that incorporates any of the alleged inventions of any of the claims of any of the patents-in-suit prior to its filing date, including but not limited to, announcements, leaflets, pamphlets, product specification sheets, product brochures, product manuals, and advertising, and all drafts and all other documents relating to the preparation of any of the foregoing.

64.     All documents and things relating to any lawsuit, and to the decision to bring such lawsuit, alleging infringement by any person other than Plaintiff of one or more claims of any of the patents-in-suit.

65.     For each of the patents-in-suit, all documents and things relating to the scope, validity or invalidity, infringement or non-infringement, or enforceability or unenforceability of each patent-in-suit, and any study, search, investigation, or opinion relating to such topics.

66.     For each of the patents-in-suit, all documents relating to any charge of infringement made by Plaintiff to any other person and all documents relating to any subsequent

18

negotiations or communications relating to any such charge.

67.     All documents and things produced by or to Plaintiff or that will be produced by or to Plaintiff in any civil action other than this action alleging infringement or involving a declaratory judgment of non-infringement, invalidity or unenforceability concerning one or more claims of any of the patents-in-suit, including without limitation, deposition transcripts, deposition exhibits, trial exhibits, motions for summary judgment and supporting and opposing memoranda and proofs (affidavits, declarations, exhibits, and the like).

68.     All documents and things produced by or to Plaintiff in the civil action *ePlus, Inc. v. SAP America, Inc., et al.*, Case No. 3:05-cv-00281-JRS filed in the Eastern District of Virginia.

69.     All documents and things produced by or to Plaintiff in the civil action *ePlus, Inc. v. Ariba, Inc.*, Case No. 1:04-cv-00612-LMB-BRP filed in the Eastern District of Virginia.

70.     All documents and things under Plaintiff's possession, custody, or control that were produced by or to Fisher Scientific in any civil action other than this action alleging infringement or involving a declaratory judgment of non-infringement, invalidity or unenforceability concerning one or more claims of any of the patents-in-suit, including without limitation, deposition transcripts, deposition exhibits, trial exhibits, motions for summary judgment and supporting and opposing memoranda and proofs (affidavits, declarations, exhibits, and the like).

71.     All documents evidencing or relating to each Defendant's alleged use or infringement of any alleged invention disclosed, described, or claimed in any patent-in-suit, including without limitation all documents establishing or otherwise showing when and how Plaintiff first learned of any such alleged use or infringement.

72.    All documents constituting, evidencing or relating to any analysis of any Defendant's product for potential or actual infringement of any patent-in-suit.

73.    All documents and things relating to any lawsuit, arbitration or other legal proceeding involving any foreign patent corresponding or related to, in whole or in part, any of the patents-in-suit.

74.    All documents relating to any instance where a third party has been accused of infringing any claim of the patents-in-suit including, but not limited to, the name and address of each third party, the circumstances surrounding the accusation, their response, and the resolution of the accusation (including the identification of any resultant litigation, arbitration, mediation, or other enforcement proceeding) if any.

75.    All documents and things relating to the alleged infringement by any Defendant of one or more claims in any of the patents-in-suit.

76.    For each of the patents-in-suit, all documents and things that relate to each and every claim that Plaintiff contends is infringed by any accused product.

77.    All documents relating to Plaintiff's first awareness of any alleged infringement or potential alleged infringement by any Defendant of any of the patents-in-suit.

78.    All documents and things relating to information Plaintiff possessed prior to the filing of the Complaint with respect to the construction or operation of any accused products, including without limitation, any information which Plaintiff contends provided a basis for making such a charge of infringement.

79.    All documents and things relating to knowledge by Plaintiff of the alleged infringement by any Defendant of one or more claims of any of the patents-in-suit, including but not limited to, documents relating to Plaintiff's knowledge or acquisition of knowledge,

20

suspicion, investigation, or conclusion that any Defendant used, manufactured, sold, or offered for sale any products that Plaintiff contends employ any alleged invention of any claim of the patents-in-suit.

80.     All documents that relate to any term used in any claim of the patents-in-suit.

81.     All documents relating to the interpretation, scope or construction of each term within any of the claims in any of the patents-in-suit, including without limitation all documents related to any claim construction in any lawsuit alleging infringement by any person of one or more claims of any of the patents-in-suit.

82.     All documents supporting Plaintiff's proposed construction for any of the claim terms of any claim of any of the patents-in-suit, including without limitation all documents related to any claim construction in any lawsuit alleging infringement by any person of one or more claims of any of the patents-in-suit.

83.     All documents and things relating to any comparison of the structure, function, or operation of any embodiments that use any alleged invention within the scope of any of the claims in the patents-in-suit with any of the accused products.

84.     All documents relating to any study, evaluation or analysis by or on behalf of Plaintiff that any accused product might infringe any patent-in-suit, regardless of the results of such evaluation or analysis.

85.     All documents and things relating to any study, evaluation, or analysis by or on behalf of Plaintiff that any product of any person other than Defendants might infringe any of the patents-in-suit, including without limitation, any notice, warnings or charge of infringement to any such person.

86.     All documents relating to any analyses of the claims of the patents-in-suit,

including but not limited to, claim charts, summaries, and infringement analyses.

87.     All documents relating to any claim charts, draft claim charts, and analysis for any of the patents-in-suit, including but not limited to, documents comparing the structure, function, or operation of any accused product on the one hand and on the other, any alleged invention within the scope of any of the claims in the patents-in-suit.

88.     All documents relating to the decision to bring this lawsuit.

89.     All documents relating to Plaintiff's pre-suit investigation of Defendants' products.

90.     All documents that support Plaintiff's allegations in the Complaint.

91.     All documents that Plaintiff intends to rely on at trial or at any pre-trial hearing.

92.     Any documents that support Plaintiff's claim of willful infringement.

93.     Any documents that support Plaintiff's claim that this is an exceptional case.

94.     For each affirmative defense asserted by each Defendant, all documents that Plaintiff alleges support its contention that each such affirmative defense does not bar Plaintiff's cause of action.

95.     To the extent Plaintiff intends to rely on the Doctrine of Equivalents, all documents supporting Plaintiff's allegations that any accused product allegedly infringes any alleged invention within the scope of any of the claims in the patents-in-suit under the Doctrine of Equivalents.

96.     All documents relating to communications between Plaintiff and any third party regarding the patents-in-suit, including all analyses, claim charts, and patents and publications related to any of the patents-in-suit.

97.     All documents that relate to communications between Plaintiff and any person

relating to products, systems, or methods embodying the invention of any claim of any of the patents-in-suit.

98. All documents relating to comparison of the design, structure, function, or operation of accused products against the specification or any claim of the patents-in-suit.

99. All documents concerning any commercial embodiments made by any person of each asserted claim of the patents-in-suit, including but not limited to documents concerning the products within the scope of each claim of each of the patents-in-suit.

100. All documents relating to the invention, design, engineering, development, testing or operation conducted by Plaintiff or any third party of any commercial embodiment that is allegedly within the scope of any of the claims in the patents-in-suit.

101. For each of the patents-in-suit, all documents and things that relate to the design or development of any product implementing or embodying, in whole or in part, any alleged invention of any of the claims of any of the patents-in-suit.

102. All documents and things relating to advertising, sales, and promotion of each Plaintiff product that embodies or incorporates any alleged invention of any claim of any of the patents-in-suit.

103. All documents and things relating to complaints or problems with the performance of each Plaintiff product which uses alleged inventions of any claim of any of the patents-in-suit.

104. All documents that evidence, refer or relate to any persons who participated in the design, development, implementation, debugging, testing, or evaluation of any Plaintiff product implementing or embodying, in whole or in part, any of the alleged inventions in the patents-in-suit.

105.    Documents including organizational charts sufficient to identify the names, job titles, and duties of Plaintiff's directors, officers, employees, contractors, and any third party involved in i) the creation, design, development, testing, evaluation, operation, public relations, sales, or marketing of Plaintiff products, embodying or implementing, in whole or in part, any of the alleged inventions within the scope of any claim of any of the patents-in-suit or ii) the licensing or other grant of rights in or to any claim of any of the patents-in-suit.

106.    All documents and things relating to any communications, oral or in writing, between Plaintiff and any named Defendant in this suit (including Verian Technologies, Inc.), including but not limited to all documents relating to the negotiations between Plaintiff and any named Defendant in this suit (including Verian Technologies, Inc.), regarding the licensing of any of the patents-in-suit.

107.    All documents that relate to any actual or potential license or option to license agreement, including without limitation, cross-licenses, agreements of non-assertion, covenants not to sue, acquisition agreements, and other types of agreements and/or negotiation for such that relates to or involves any patent-in-suit, including without limitation, all documents relating to communications concerning any such license agreement or negotiation.

108.    All documents that relate to any actual or potential license agreement, including without limitation, cross-licenses, agreements of non-assertion, covenants not to sue, acquisition agreements, and other types of agreements, and/or negotiation for such that relates to or involves any Plaintiff patents, including without limitation, all documents relating to communications concerning any such license agreement or negotiation.

109.    All documents that relate to Plaintiff's licensing program, policy and practice, including but not limited to, all documents relating to any communications or decision regarding

24

whether or not to assign, sell, transfer, license, or offer to assign, sell, transfer, or license to any person any interest in the patents-in-suit.

110.    All documents that relate to any license agreement, including without limitation, cross-licenses, agreements of non-assertion, covenants not to sue, acquisition agreement, and any other types of agreements, and/or negotiation for such that relates to any prior owner or assignee of any of the patents-in-suit.

111.    All agreements, settlements and licenses entered into by Plaintiff relating in whole or in part in any way to one or more of the patents-in-suit.

112.    All documents relating to any license payments, royalties, or other consideration Plaintiff has received or expects to receive for licenses or other rights under any of the patents-in-suit.

113.    All documents and things relating to any notices, warnings or charges of infringement considered by or made by Plaintiff to any of the Defendants in connection with any of the patents-in-suit.

114.    All documents and things concerning efforts of any person in marking any article with the patent numbers of any of the patents-in-suit, any failure to mark, or any other notice with respect to the patents-in-suit.

115.    All documents relating to any requirements that Plaintiff's licensee(s) of any of the patents-in-suit must follow regarding patent markings in accordance with 35 U.S.C. § 287.

116.    All documents related to Plaintiff's compliance with 35 U.S.C. § 287 relating to the patents-in-suit.

117.    All documents sufficient to identify Plaintiff's accounting practices and methods, including but not limited to, practices and methods for determining costs and profits.

25

118.    All documents relating to Plaintiff's tax returns starting from 1996 to the present.

119.    All documents relating to Plaintiff's annual reports to shareholders, annual and quarterly profit and loss statements, Form 10-K reports filed with the U.S. Securities and Exchange Commission, and any prospectus prepared or filed since 1996.

120.    All of Plaintiff's accounting documents relating to the Plaintiff products that embody or implement the invention of any claim of any of the patents-in-suit, including but not limited to, Plaintiff's chart of accounts, accounting policies and procedures manuals, detailed year-end ledgers for the years 1996 through the present, detailed year-end general ledgers for the years 1996 to present, audited financial statements for the years 1996 through the present, and unaudited financial statements for the years 1996 to the present.

121.    All documents relating to communications between Plaintiff and tax authorities regarding the value of any of the patents-in-suit.

122.    All documents relating to communications between any third party and tax authorities regarding the value of any of the patents-in-suit.

123.    All documents relating to communications with investment bankers, auditors, accountants, investors, and their agents, employees, and officers regarding the value of the patents-in-suit.

124.    All documents relating to any damages theory that Plaintiff intends to assert in this lawsuit, including all documents forming any part of the basis for any calculations of lost profits, price erosion, or a reasonable royalty for the patents-in-suit, individually or in any combination.

125.    All documents relating to or tending to show a reasonable royalty for each of the patents-in-suit.

126.    All documents relating to or tending to show royalty rates received by Plaintiff for licensing other patents that are directed to electronic sourcing systems, products, methods, or services.

127.    All documents relating to or tending to show an established royalty rate for each patents-in-suit.

128.    All documents relating to or tending to show replacement of prior art products, systems, methods, services, devices, and apparatus by Plaintiff products that embody or implement the invention of any claim of any patent-in-suit for reasons relating to the alleged value or usefulness of such invention(s).

129.    All documents relating to or tending to show portions of profits or selling prices of Plaintiff products that are attributable to the value of the inventions claimed in the patents-in-suit.

130.    For each of the patents-in-suit, all documents relating to sales of any Plaintiff products that embody or implement the invention of any claim of any patent-in-suit that were not marked with or otherwise identified with the patent numbers of any of the patents-in-suit associated with such Plaintiff product.

131.    All documents that relate to communications between Plaintiff and any purchaser, user, developer, or licensee (as to each, both potential and actual) of any product implementing or embodying, in whole or in part, any alleged invention of any of the claims of any patent-in-suit.

132.    All documents that relate to Plaintiff's costs for the manufacture and sale of any Plaintiff product that includes any alleged invention of any claim of the patents-in-suit.

133.    All financial statements and reports of Plaintiff from the year Plaintiff first sold

27

any product that embodies, implements or uses, in whole or in part, any alleged invention described in any claim of any of the patents-in-suit.

134.   All documents relating to price lists, pricing memorandums, and pricing strategies for Plaintiff products that embody or implement any alleged invention of any claims of any of the patents-in-suit.

135.   All documents relating to market segmentation, market approach, pricing, sales, and business plans for Plaintiff products that embody or implement any alleged invention of any claims of any of the patents-in-suit.

136.   All documents relating to account representative(s), sales reports, status reports, call reports (weekly, monthly, bi-monthly, and yearly), and customer reports for Plaintiff products that embody or implement the invention of any claims of any of the patents-in-suit.

137.   All documents relating to sales reports of Plaintiff, including monthly, quarterly, and annual sales of Plaintiff products that embody, implement, or use any alleged invention of any claim of any of the patents-in-suit.

138.   For all Plaintiff products that embody or implement any alleged invention of any claim of any of the patents-in-suit, all documents relating to sales contracts, invoices, purchase orders, promotions, profitability margins, quantities sold, and product lifetimes for all wholesale and retail distribution channels.

139.   All documents relating to financial analyses relating to any of the Plaintiff products that incorporate the alleged inventions of any claim of the patents-in-suit, including but not limited to, market shares, sales projections, demand analyses, cost of components or materials, cost of labor, and profit margins.

140.   All documents that relate to any sales, offers for sale, sales inquiries, or purchase

28

inquiries of Plaintiff products embodying the invention of any claim of any of the patents-in-suit.

Dated:  July 23, 2009

_____

Stephen E. Noona
(VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:   (757) 624-3000
Facsimile:   (757) 624-3169
senoona@kaufcan.com

*Counsel for Defendants Perfect Commerce, LLC,
SciQuest, Inc. and Lawson Software, Inc.*

Daniel Johnson, Jr. (*pro hac vice* pending)
Rita E. Tautkus (*pro hac vice* pending)
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:   (415) 442-1000
Facsimile:   (415) 442-1001
djjohnson@morganlewis.com
rtautkus@morganlewis.com

Robert W. Busby, Jr. (VSB No. 41312)
Bradford A. Cangro (*pro hac vice* pending)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone:   (202) 739-3000
Facsimile:   (202) 739-3001
rbusby@morganlewis.com
bcangro@morganlewis.com

*Counsel for Defendants SciQuest, Inc. and Lawson
Software, Inc*

Kenneth W. Brothers (*pro hac vice* pending)
Dickstein Shapiro LLP

1835 Eye Street NW
Washington, DC 20006
Telephone:      (202) 420-4128
Facsimile:       (202) 420-2201
brothersk@dicksteinshapiro.com

*Counsel for Defendant Perfect Commerce, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2009, I will serve by hand and electronic mail the

foregoing Defendants Perfect Commerce, LLC, SciQuest, Inc., And Lawson Software, Inc.'s

First Set of Requests for Production of Documents and Things on the following:

Gregory N. Stillman
Brent Lee VanNorman
Hunton & Williams
500 East Main Street, Suite 1000
Norfolk, VA 23510
Tel.: 757-640-5300
Fax.: 757-625-7720
gstillman@hunton.com
bvannorman@hunton.com

David M. Young
VSB No. 35997
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
dyoung@goodwinprocter.com

OF COUNSEL:

Scott L. Robertson
Jennifer A. Albert
Christopher C. Campbell (VSB No. 36244)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202 346-4000
Fax.: 202-346-4444
srobertson@goodwinprocter.com

Shirley Sperling Paley
James D. Clements
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA  02109-2881

31

Tel.: 617-570-1000
Fax.: 617-523-1231
spaley@goodwinprocter.com
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

James John Briody
Sutherland, Asbill & Brennan
1275 Penn Avenue, NW
Suite 800
Washington, DC 20004-2404
(202) 383-0100
jim.briody@sutherland.com

George E. Kostel (VSB  No. 34757)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue, NW Suite 900
Washington, DC  20001
Tel.: 202-712-2800
Fax.: 202-712-2862
george.kostel@nelsonmullins.com

*Attorneys for Defendant Verian Technologies, Inc.*

_____
Stephen E. Noona
(VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:     (757) 624-3000
Facsimile:      (757) 624-3169

*Counsel for Defendants Perfect Commerce LLC,
incorrectly identified as Perfect Commerce, Inc,
SciQuest, Inc. and Lawson Software, Inc.*

1504799\1

32