# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

CONDITIONAL RULE 26 REBUTTAL EXPERT DISCLOSURE AND DECLARATION
OF HARRY F. MANBECK, JR. IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF PERMANENT INJUNCTION

I, Harry F. Manbeck, Jr., declare and state as follows:

## I.    INTRODUCTION

1.    My name is Harry F. Manbeck, Jr.  I have been retained by counsel for Plaintiff

*e*Plus, Inc. ("*e*Plus") as an expert on patent practice and procedure with respect to the litigation

currently before the Court in the above-captioned matter.  I have been asked by *e*Plus to consider

certain materials relating to the reexaminations of U.S. Patent No. 6,023,683 ("the '683 Patent"),

U.S. Patent No. 6,055,516 ("the '516 Patent"), and U.S. Patent No. 6,505,172 ("the '172 Patent")

(collectively "the *e*Plus Patents" or the "patents-in-suit").

## II.    BACKGROUND AND QUALIFICATIONS

2.    I am a former Assistant Secretary of Commerce and Commissioner of Patents and

Trademarks of the United States, having been appointed by former President George Herbert

Walker Bush.  I served in this position from March 1990 to May 1992.  I am a member of the

Bar of the District of Columbia and other jurisdictions, and I am registered to practice before the

United States Patent and Trademark Office ("PTO").  I am currently a partner in the firm of Rothwell, Figg, Ernst & Manbeck.  My offices are located at 1425 K Street, N.W., Suite 800, Washington D.C. 20005.  A copy of my *curriculum vitae* is attached hereto as Exhibit A.

3.      Prior to serving as Assistant Secretary and Commissioner of the PTO, I practiced patent law for over thirty-five years.  At the time that I assumed those offices, I was the General Patent Counsel for the General Electric Company.  I joined General Electric as a test engineer in 1949, became a patent attorney in 1955, and I advanced to become General Patent Counsel in 1970, a position that I held for twenty years.  As the Commissioner of Patents, the General Patent Counsel and in my other positions at General Electric, and in my present practice I have had extensive experience with patent practice and procedures, as well as the policies and practices that were applied by the PTO to the examination of patent applications.  In particular, I have considerable expertise in the analysis and interpretation of events occurring during the prosecution of patent applications before the PTO, including reexaminations.

4.      I receive compensation from *e*Plus at my standard hourly rate, currently $700, for every hour that I devote to providing the expert analysis and testimony requested of me in this case.  My travel and incidental expenses related to my engagement as an expert witness are reimbursed by *e*Plus as well.  No part of my compensation depends upon the outcome of this matter.

5.      For purposes of forming my opinions and conclusions, I have considered a variety of materials.  In particular, I have considered the patents at issue in this matter, the '683 Patent, the '172 Patent and the '516 Patent.  I have also considered the reexamination file histories of each patent, as well as other documents indicated below.

6.      I have been asked by counsel for *e*Plus, Inc. ("*e*Plus") to review Defendant Lawson Software, Inc.'s Rule 26 Supplemental Disclosure Concerning Injunctive Relief and Evidentiary Hearing dated February 14, 2011 as it relates to Lawson's contention that the balance of the harms favors Lawson because *e*Plus's patents are currently in reexamination and, according to Lawson, are "highly likely to be found invalid." I have also been asked to review the Declaration of Lawson's counsel Robert A. Kalinsky submitted by Lawson with its disclosure.

7.      I understand that *e*Plus intends to file a motion seeking to exclude from the injunction proceedings in this matter any reference to the reexaminations that are currently in progress for the patents-in-suit. However, and without prejudicing *e*Plus's intended motion, I have been asked by *e*Plus to review the reexamination file histories of the patents-in-suit, and to discuss PTO reexamination procedure and statistics so that if Lawson's counsel Mr. Kalinsky, or any other Lawson witness, is permitted to testify concerning those reexaminations, *e*Plus will be able to rebut such testimony.

8.      The reexamination proceedings that are currently in progress for the patents-in-suit are simply that, ***in progress***. As I more fully explain below, these proceedings have a number of steps to traverse in the U.S. Patent & Trademark Office ("PTO"), the Board of Patent Appeals and Interferences ("BPAI") and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") before a final determination is reached, and claims are confirmed, amended or canceled with final effect.

## III.    MATERIALS RELIED UPON

9.      A list of materials that I have considered and relied upon in forming the opinions set forth in this disclosure/declaration is provided below:

3

(a)     Reexamination File History of the '172 Patent;

(b)     Reexamination File History of the '516 Patent;

(c)     Reexamination File History of the '683 Patent;

(d)     Median Time to Disposition in Cases Terminated After Hearing or Submission (FY2001-FY2010), U.S. Court of Appeals for the Federal Circuit;

(e)     *Ex Parte* Reexamination Filing Data (Dec. 31, 2010), U.S. Patent and Trademark Office;

(f)     *Inter Partes* Reexamination Filing Data (Dec. 31, 2010); U.S. Patent and Trademark Office;

(g)     Defendant Lawson Software, Inc.'s Rule 26 Supplemental Disclosure Concerning Injunctive Relief and Evidentiary Hearing (Feb. 14, 2011);

(h)     the Declaration of Robert A. Kalinsky of Defendant's law firm Merchant & Gould;

(i)     the jury's verdict in the present litigation; and

(j)     trial testimony of Lawson's expert Dr. Michael Shamos.

## IV.    FACTUAL BACKGROUND

10.    *e*Plus is a Delaware corporation having a principal place of business at 13595 Dulles Technology Drive, Herndon, Virginia.  I understand and am informed that *e*Plus has previously litigated the '683, '516 and '172 Patents.  Those previous actions were heard in the Alexandria and Richmond divisions of this Court.

11.    During the previous litigations, claims of the patents were construed by this Court.  These prior litigations include:

- *e*Plus, Inc. v. Ariba, Civil Action No. 1:04cv612 ("*Ariba*");
- *e*Plus, Inc. v. SAP America, Inc., et al., Civil Action No. 3:05cv281 (JRS) ("*SAP*").

12.    I am informed that both previous litigations ended favorably for *e*Plus through a settlement and license, in the case of *Ariba* following a favorable adjudication on the merits at

trial. I also understand that each of the original Defendants in the instant action with the exception of Lawson has entered into a settlement agreement with *e*Plus.

13.    I further understand that a jury trial in this action was conducted from January 4, 2011 through January 27, 2011. I understand that the jury rendered a verdict in *e*Plus's favor finding that three different system configurations of accused Lawson products infringed certain of the asserted claims. In addition, I am informed and understand that the jury found that Lawson failed to prove that any of the asserted claims of the patents-in-suit was invalid. *See* Jury Verdict dated Jan. 27, 2011.

14.    The '683 Patent issued on February 8, 2000. The '516 Patent issued on April 25, 2000. The '172 Patent issued on January 7, 2003. The *e*Plus Patents contain claims directed to electronic sourcing systems and methods performed by electronic sourcing systems. The '683 Patent will expire on February 8, 2017. The '516 and '172 Patents will both expire on August 10, 2014.

15.    I observe that all three patents share a detailed and lengthy written disclosure. The disclosure describes several embodiments of electric sourcing systems and methods performed by such systems. An electronic sourcing system, according to the patents, is an electronic system for use by a prospective buyer to locate and find items to requisition and then purchase from sources. The electronic sourcing and procurement systems and methods automate internal corporate purchasing processes, resulting in considerable savings in time and expense. Corporate customer users may search for items for sale from multiple selected electronic catalogs (each associated with a supplier source), determine whether a selected matching item found in the catalog search is available in the supplier's inventory, find related items available from other suppliers; and build requisitions from the selected matching items found in the

catalog search(es).  If a requisition is approved, the system then generates electronic purchase orders to each different supplier identified in the approved requisition.  *See, e.g.*, '683 Patent, Col. 3:3-24.

16.     All three of the patents-in-suit derive priority from Application Serial No. 08/288,577, filed August 10, 1994.

## V.     OVERVIEW OF EVENTS OCCURRING DURING THE REEXAMINATIONS OF THE PATENTS-IN-SUIT

### A.     Reexamination Control No. 90/008,104 (Claims 26-45 of U.S. Patent No. 6,023,683)

17.     I have considered the publicly-available materials for the reexamination of claims 26-45 of the '683 Patent, which has been assigned Reexamination No. 90/008,104 by the United States Patent & Trademark Office ("PTO").

18.     On July 17, 2006, SAP AG and SAP America, Inc. (collectively, "SAP"), requested *ex parte* reexamination of claims 26-45 of the '683 Patent.

19.     On August 17, 2006, the PTO issued a Notice of Failure to Comply With *Ex Parte* Reexamination Request Filing Requirements pursuant to 37 C.F.R. 1.510(c).  The PTO pointed out several deficiencies in SAP's reexamination request.

20.     On September 14, 2006, SAP filed an amended request for *ex parte* reexamination of the '683 Patent.  On October 28, 2006, the PTO Examiner granted the Request contending that there were substantial new questions of patentability ("SNQs") raised based on 21 alleged prior art references.  I am informed that all of the prior art raised in the reexamination request was raised in the *SAP* litigation.

21.     On January 29, 2007, *e*Plus filed a Patent Owner's Statement responding to the Examiner's SNQs.  *e*Plus pointed out that many of the alleged references relied upon by the PTO

6

Examiner are not prior art because they did not pre-date the '683 Patent's priority date. Moreover, *e*Plus pointed out that several of the purported prior art references relied upon were not either patents or printed publications, but, rather, were executable computer code and screen display printouts for allegedly reconstructed computer systems. Thus, *e*Plus contended that such materials were not permissible under the reexamination statute. In addition, several of the purported "references" relied upon for alleged anticipation grounds were actually combinations of references which did not constitute a single publication.

22.     On February 29, 2008, the PTO Examiner issued a first Office Action in response to the Patent Owner's Statement relying on only 4 of the alleged prior art references for anticipation purposes and no longer relying on any SNQs based on alleged obviousness of the claims. The four remaining references are manuals relating to the SABRE, Gateway, JCON and P.O. Writer systems. The Examiner also no longer relied on any SNQs based on the executable computer code and screen display printouts. I am informed and understand that although Lawson asserted each of the four alleged prior art references during the course of the current litigation, it dropped its contentions relating to the SABRE and Gateway systems prior to trial and its expert did not render any opinions concerning the other two purported references at trial. *See*, *e.g.*, Trial Transcript at 2405:20-2510:13 (Shamos Direct); 2538:17-2592:19 (Shamos Cross); 2592:22-2613:16 (Shamos Redirect).

23.     On May 29, 2008, *e*Plus submitted a response to the February 29, 2008 Office Action with a supporting declaration from a technical expert. The response contained dozens of pages of argument distinguishing claims 26-45 from the four cited references.

24.     On January 8, 2009, the PTO Examiner issued a final Office Action maintaining his rejection of claims 26-45 based on the four allegedly anticipatory references.

25.     On March 6, 2009, *e*Plus filed a Notice of Appeal to the PTO's Board of Patent Appeals and Interferences ("BPAI").

26.     On May 6, 2009, *e*Plus filed an Appeal Brief with the BPAI appealing each pending ground of rejection.  The PTO Examiner did not file an Answer to ePlus's Appeal Brief until February 26, 2010.  ePlus filed a Reply Brief on April 26, 2010.

27.     An oral hearing was held before the PTO's Board of Patent Appeals and Interferences ("BPAI") on October 20, 2010.

28.     The BPAI has yet to issue a decision in connection with this reexamination proceeding.

29.     I note that *e*Plus has not amended any of claims 26-45 of the '683 Patent during the course of the pending reexamination.  Nor has *e*Plus added any new claims.

30.     I also note that at least two of the Examiner's pending grounds for rejection appear to be based upon a legally improper claim construction.  The PTO Examiner has refused to acknowledge or apply the claim constructions rendered by the Court in either the *Ariba* or *SAP* litigations or those rendered by this Court in the current litigation.

31.     Independent claim 26 is illustrative.  That claim recites the following:

> 26.     A method comprising the steps of:
>
> maintaining at least two product catalogs on a database containing data relating to items associated with the respective sources;
>
> selecting the product catalogs to search;
>
> searching for matching items among the selected product catalogs;
>
> building a requisition using data relating to selected matching items and their associated source(s);

processing the requisition to generate one or more purchase orders for the selected matching items; and

determining whether a selected matching item is available in inventory.

32.     According to the disclosed methods, a computer is provided with a catalog database comprised of at least two product catalogs, each associated with a respective source. '683 Patent, Col. 4:35-37.  In this context, a "catalog" is an organized collection of items and associated source information.  The catalog item information typically includes such information as part number, price, catalog number, vendor name or ID, as well as textual information and images of or relating to the items.  '683 Patent, Col. 4:37-41.

33.     The disclosed methods facilitate searching multiple catalogs associated with different sources, *e.g.*, suppliers, vendors or distributors of products or services.  '683 Patent, Col. 4:45-46.  The disclosed methods permit the customer end-user to select the catalogs to be searched for a needed item.  '683 Patent, Col. 9:52-55.  The electronic sourcing methods permit the customer to then search the selected catalogs to identify needed items from different sources.  Matching items found in conducting searches of the multiple catalogs may be selected for inclusion in an electronic requisition built by the system.  '683 Patent, Col. 10:2-43.  As discussed in more detail below, "requisitioning" means "requesting a needed item."  Thus a "requisition" is the "formal written request to purchase something needed."

34.     Importantly, the disclosed electronic sourcing methods also provide for automatically generating one or more purchase orders from the electronic requisition.  '683 Patent, Col. 15:20-49.  In this context, a "purchase order" is "a commission or instruction to buy something."  Thus, for example, after a requisition has been approved, the electronic sourcing system generates one or more electronic purchase orders from the requisition, for example,

generating a purchase order to transmit to each separate source associated with the items included in the requisition. *Id.*

35.     The disclosed methods are also used to determine the availability of a selected matching catalog item (*e.g.*, an item found in a search of the selected catalog(s)) in inventory of the associated source of the item. '683 Patent, Col. 14:4-20.

36.     During reexamination, as with original examination, although the PTO is to give claims their broadest reasonable interpretation, such interpretation must take into account any definitions presented in the patent specification and must be consistent with the interpretation that a person of ordinary skill in the art would reach. *In re Suito Surface, Inc.*, 603 F.3d. 1255 (Fed. Cir. 2010) (vacating BPAI's decision regarding claim construction; "the broadest-construction rubric coupled with the term 'comprising' does not give the PTO unfettered license to interpret claims to embrace anything remotely related to the claimed invention. Rather, claims should always be read in light of the specification and teachings in the underlying patent."); *In re American Academy of Science Tech. Center,* 367 F.3d 1359, 1364 (Fed. Cir. 2004) (cited in *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1378-79 (Fed. Cir. 2007)); *In re Cartright,* 165 F.3d 1353, 1358 (Fed. Cir. 1999).

37.     The PTO Examiner, however, appears to have interpreted the claim term "requisition" to mean "an order for something" notwithstanding that the patent claims and specification explicitly require and disclose a separate step of building a "requisition" that occurs prior to the step of processing the requisition to generate one or more "purchase orders." The '683 Patent specification clearly describes that a "requisition" is "a formal request to purchase something." This step can occur before a user has selected a source from which to purchase a desired item, for example. '683 Patent, Col. 13:63-Col. 14:65. The "requisition" is described in

10

the patent as a document internal to the purchasing organization.  It is not transmitted to a supplier.  Instead, it may be submitted internally for approval prior to the generation of any purchase order.  *See, e.g.*, '683 Patent, Col. 15:10-22.  Once the "requisition" is approved, it can be converted to one or more purchase orders by the system.  *See, e.g.*, '683 Patent, Col. 15:20-22.  Thus, the specification distinguishes between a request internal to the purchasing organization to purchase something (requisition) and the formal contractual agreement to purchase something which is sent from the purchaser to the supplier (the purchase order).

38.     Therefore, in my opinion, the Examiner's construction of "requisition" as "an order for something" is incorrect and not sustainable.  I believe that each of the Examiner's grounds for rejection which rely upon this improper claim construction is not likely to be sustained by the BPAI.

**B.      Reexamination Control No. 95/000,487 (Claims 1-5 of U.S. Patent No. 6,505,172)**

39.     I have also considered the publicly-availability materials for the *inter partes* reexamination of claims 1-5 of the '172 Patent.

40.     I note that Lawson, through its counsel Merchant & Gould, did not file a request for reexamination of the '172 Patent until July 10, 2009, after this lawsuit was pending.

41.     *Inter partes* reexamination is different from *ex parte* reexamination in that the third party who requested reexamination has rights to participate in the conduct of the reexamination, including commenting on the Patent Owner's responses to Office Actions, and, like the Patent Owner, has rights to appeal the conclusions of the Examiner to the BPAI and to the Federal Circuit.

42.    On July 27, 2009, the PTO issued a Notice of Incomplete Reexam Request and on August 21, 2009, Lawson, through its counsel, Merchant & Gould, filed a corrected request for *inter partes* reexamination of the '172 Patent.

43.    On October 23, 2009, the PTO granted the request for *inter partes* reexamination. I note, however, that the PTO did not adopt all grounds of rejection urged by Lawson.

44.    Simultaneously with the order granting the reexamination the PTO Examiner also issued a first Office Action rejecting claims 1-5 of the '172 Patent as allegedly anticipated by six purported prior art references, including the inventors' own patent, 5,712,989 ("the '989 Patent"), the JCON Manual, and the P.O. Writer Plus manual.

45.    I am informed and understand that all six references relied upon by the Examiner were asserted by Lawson in the current proceeding as forming bases for its prior art invalidity defenses.  I am further informed and understand that Lawson failed to offer expert testimony at trial that any of these references anticipated any patent claim.  *See* Tr. at 2405:20-2510:13 (Shamos Direct); 2538:17-2592:19 (Shamos Cross); 2592:22-2613:16 (Shamos Redirect).

46.    *e*Plus filed a response to the Office Action on December 23, 2009 and an expert declaration setting forth its arguments distinguishing the patent claims over each purported reference relied upon by the Examiner.

47.    On March 22, 2010, Mr. Robert Kalinsky and Mr. Daniel McDonald of Merchant & Gould filed Comments in response to *e*Plus's Response to the Office Action on behalf of Lawson.

48.    An Action Closing Prosecution was mailed on July 8, 2010.  *e*Plus filed a response to that Action on August 9, 2010.  Lawson filed comments on September 8, 2010, in response to *e*Plus's Response.

49.     On January 13, 2011, the PTO mailed a Right of Appeal Notice.

50.     On February 11, 2011, *e*Plus filed a Notice of Appeal.

51.     I note that at least two of the Examiner's pending grounds for rejection are based upon the same legally improper claim constructions for "requisition" and "purchase order" as discussed above.  Thus, for the reasons discussed above, I believe that each of the Examiner's grounds for rejection which rely upon these improper claim constructions is not likely to be sustained by the BPAI.

**C.     Reexamination Control No. 90/009,636 (Claims 1-29 of U.S. Patent No. 6,055,516)**

52.     I have considered the publicly-available materials for the reexamination of claims 1-29 of the '516 Patent, which has been assigned Reexamination No. 90/009,636 by the U.S. Patent & Trademark Office ("PTO") ("the '516 Reexamination").

53.     On November 12, 2009, almost six months after the litigation was filed, Lawson, through litigation counsel Daniel McDonald, requested *ex parte* reexamination of claims 1-29 of the '516 Patent.

54.     I note that Lawson's request for reexamination was based on the same alleged prior art documents as were unsuccessfully asserted by Lawson in support of its prior art defenses in the litigation.  Importantly, Lawson's litigation counsel takes the position in the submission to the PTO that the inventors' '989 Patent anticipates the claims of the '516 Patent, whereas, at trial, Lawson's expert conceded that the '989 Patent fails to anticipate any claim of the patents-in-suit.  I note that Lawson's counsel has never informed the PTO Examiner that the position it is taking at the PTO is inconsistent with the position its expert took during this litigation.  *See* Tr. at 2426:24-2427:5 (Shamos Direct) (conceding that the '989 Patent fails to disclose multiple catalogs); Tr. at 2557:4-2561:14 (Shamos Cross) (conceding that because the

13

'989 Patent fails to disclose multiple catalogs numerous other claim elements cannot be satisfied).

55.     On January 15, 2010, the PTO issued an order granting the request for *ex parte* reexamination.

56.     On July 8, 2010, the PTO Examiner issued a non-final Office Action rejecting claims 1-29 of the '516 Patent.  However, the PTO Examiner did not adopt all grounds of rejection urged by Lawson in the reexam request.  The PTO Examiner only applied 4 grounds of rejection out of the 7 proposed by Lawson.  For example, the PTO Examiner did not initially reject all 29 claims as anticipated by the '989 Patent.  In addition, I note that the Examiner has applied the King '592 Patent that was already considered by the PTO during the original examination of the '516 Patent.  Moreover, I note that again at least one of the Examiner's pending grounds for rejection is based upon the same legally improper claim constructions for "requisition" and "purchase order" as discussed above.  Thus, I believe that such rejection is not likely to be sustained by the BPAI.

57.     *e*Plus filed a response to the initial Office Action on September 8, 2010.  *e*Plus provided substantive comments and an expert declaration distinguishing the claims over each purported prior art reference.

58.     As of the writing of this Disclosure/Declaration, the '516 Patent reexamination proceeding is still pending.

**D.      Reexamination Control No. 90/011,066 (Claims 1-25 of the '683 Patent)**

59.     On June 25, 2010, more than a year after the initiation of this litigation, Robert Kalinsky and Daniel McDonald of Merchant & Gould, filed a request for *ex parte* reexamination of claims 1-25 of the '683 Patent on behalf of Lawson.  In that request, Lawson alleges that claims 1-25 are invalid  based on each of seven purported prior art references either alone or in

14

various different combinations.  Importantly, Lawson's litigation counsel asserted before the

PTO that the '989 Patent fully anticipated each claim and failed to inform the PTO that Lawson's

expert conceded during this litigation that the '989 Patent did not anticipate any claim of the '683

Patent.

      60.     The PTO Examiner issued an order granting the request for reexamination on

September 2, 2010.

      61.     On February 10, 2011, the PTO Examiner issued an Office Action rejecting

claims 1-25 of the '683 Patent.  The PTO Examiner did not adopt all grounds of rejection urged

by Lawson in the reexam request.  Instead, the PTO Examiner only applied six of the seven

purported prior art references asserted by Lawson and failed to adopt any of the alleged

obviousness combinations of references proposed by Lawson.

      62.     As of the writing of this Disclosure/Declaration, *e*Plus has yet to file a response to

the initial Office Action.

## VI.   A REEXAMINATION IS STILL PENDING UNTIL A CERTIFICATE HAS ISSUED

      63.     As set forth above, claims are not cancelled or confirmed in reexaminations, until

a final action has issued, all appeals have been exhausted, *and* a certificate has issued.  35 U.S.C.

§ 316(a) ("In an *inter partes* reexamination proceeding[,] when the time for appeal has expired

*or any appeal proceeding has terminated*, the Director shall issue and publish a certificate

canceling any claim of the patent finally determined to be unpatentable, confirming any claim of

the patent determined to be patentable, and incorporating in the patent any proposed amended or

new claim determined to be patentable.") (emphasis added); 35 U.S.C. § 307(a) ("In an [*ex*

*parte*] reexamination proceeding [], when the time for appeal has expired *or any appeal*

*proceeding has terminated*, the Director will issue and publish a certificate canceling any claim

of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.") (emphasis added).  For example, although the PTO Examiner has rejected certain patent claims in the pending reexaminations, these are not final determinations of patentability because no Reexamination Certificate has issued confirming, canceling or amending any claim subject to reexamination.

64.     Moreover, the PTO is free to reconsider its initial determinations in a reexamination prior to issuing a reexamination certificate.  *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002) ("A reexamination is complete upon the statutorily mandated issuance of a reexamination certificate….").

## VII.   PATENTS ARE PRESUMED VALID, NOTWITHSTANDING AN ON-GOING REEXAMINATION PROCEEDING

65.     The U.S. Patent Laws provide to each issued U.S. patent a presumption of validity.  35 U.S.C. § 282 ("A patent shall be presumed valid.  Each claim of a patent…shall be presumed valid independently of the validity of other claims…").

66.     The presumption of validity remains unaltered throughout the entire reexamination process.  *See Intelligent Peripheral Devices, Inc. v. Smartpad, Inc.*, 1998 U.S. Dist. LEXIS 16986, *6-7 (N.D. Cal. Oct. 26, 1998) (holding that, despite the fact that an appeal was pending before the BPAI, the patent-at-issue "continue[d] to enjoy a presumption of validity for [the] purposes of this [district court] action."); *see also Greenwood v. Hattori Seiko Co., Ltd.*, 900 F.2d 238, 240 (Fed. Cir. 1990) ("The district court has misperceived the purpose and effect of reexamination, and has treated the reexamination as if it were part of [plaintiff's] suit against [defendant]….Because the court's misperceptions caused it to disregard the presumption that all patents are valid, its judgment must be vacated.") (citations omitted).

## VIII.  *INTER PARTES* REEXAMINATION PROCEDURE AND PRACTICE

67.     Attached as Exhibit B is a procedural flowchart taken directly from the PTO's Manual of Patent Examining Procedure ("MPEP") showing the various steps inherent in *inter partes* reexamination proceedings.  Attached as Exhibit C is a chart correlating the steps in the flowchart of Exhibit B to the relevant statutes or regulations and the time periods associated with each step in the flowchart.  Attached as Exhibit D is a table of statistics issued by the U.S. Court of Appeals for the Federal Circuit indicating the median time to disposition in cases terminated after hearing or submission.

68.     The parties may only appeal the Examiner's decisions to the BPAI after receipt of a Right of Appeal Notice.  A Right of Appeal Notice is "a final action" and may include a "final rejection.  37 C.F.R. § 1.953(c).  It is therefore appealable, unlike an Action Closing Prosecution. *See* MPEP §§ 2673.01, 2673.02.  On appeal, the BPAI may affirm or reverse the Examiner's rejections or the BPAI may remand the proceeding to the Examiner for further consideration. Moreover, the BPAI may issue new grounds of rejection thus sending the proceeding back to the Examiner for further prosecution.  The proceeding then winds its way back up to the BPAI. Assuming a final adverse decision of the BPAI, the Patent Owner may then appeal such decision of the BPAI to the Federal Circuit.

69.     There is no deadline, either statutory or under the rules, for the completion by the PTO of any phase of either *inter partes* or *ex parte* reexamination once the reexamination has been declared and the first office action has been mailed.

70.     Out of 1115 *inter partes* Reexamination Requests filed as of December 31, 2010, only just under 20% of the reexaminations have concluded, *i.e.,* Reexamination Certificates were

issued.  *See* Exhibit E.  A Reexamination Certificate may issue following an appeal, but it can issue sooner if the Patent Owner ceases to participate in the proceedings.  *See* M.P.E.P. § 2687.

71.     The PTO's statistics for *inter partes* reexamination pendency (Exhibit E) indicate that the average pendency for *inter partes* reexamination is 36.3 months.  However, this number simply does not reflect the average or expected pendency for cases where the patent owner fights to preserve its patent.  In those cases, the actual pendency is much longer.

72.     The Institute for Progress, an independent intellectual property think tank co-founded by Kevin Rivette, former Chairman of the USPTO Public Patent Advisory Committee, released a white paper in 2008 addressing the PTO's reexamination pendency statistics.  *See* Exhibit F attached.  In this white paper, the authors confirm that while the PTO's pendency data may be statistically accurate, it is based on the small number of *inter partes* reexaminations wherein Reexamination Certificates had issued.  The Institute's white paper indicates that where the patent owner actively participates in the reexamination process rather than merely allowing it to proceed undefended, the average pendency is actually much longer than for cases where there is no appeal to the BPAI.  According to the Institute's research, in cases that are appealed, the pendency is in excess of 70 months, although the data is incomplete for such cases.  This 70 month average pendency period further increases if either party appeals the BPAI's decision to the Federal Circuit.  Based on the Federal Circuit's statistics (Exhibit D), it should take on average nearly 9.6 additional months to reach a final decision regarding the reexamination.

73.     Given the fact that so few *inter partes* Reexamination Certificates have issued and the circumstances surrounding their issuance, the rate that claims were subject to cancellation or amendment in those completed *inter partes* reexaminations would not appear to be a predictable indicator of the rate of such cancellation or amendment for all *inter partes* reexaminations.

18

However, the PTO's statistics regarding *ex parte* reexaminations — a much larger sample size — indicate that all claims are cancelled in such reexaminations approximately 12% of the time. *See* Exhibit G.

74.     Of the 221 *inter partes* reexaminations for which certificates have been issued, in 53% of those proceedings the patentability of at least some of the patent claims has been confirmed.  *See* Ex. E.

## IX.     *EX PARTE* REEXAMINATION PROCEDURE AND PRACTICE

75.     With respect to *ex parte* reexaminations, because such proceedings have been in effect since 1981 and the number of requests for *ex parte* reexaminations are far greater (11,211 to date), it is difficult to track each proceeding through to ultimate conclusion in the same manner as set forth above for the *inter partes* proceedings.  However, attached as Exhibit H is a procedural flowchart taken from the MPEP showing the various steps inherent in *ex parte* reexamination proceedings.

76.     As is evident from the flowchart of Exhibit H, the final rejection in an *ex parte* reexamination proceeding is far from being a final determination as to the validity of the reexamined patent.  The PTO's statistics, however, show that only 12% of the cases result in all claims being canceled.  *See* Exhibit G.  Thus, in 88% of the *ex parte* reexamination proceedings for which certificates have been issued, the patentability of at least some of the patent claims has been confirmed.  *Id.*

77.     After issuance of a final rejection, the Patent Owner then has the right to appeal an Examiner's rejection in a final rejection to the PTO's BPAI by filing a Notice of Appeal.  An Appeal Brief is to be filed by the Patent Owner within two months after the filing of the Notice of Appeal.  The Examiner is to file an Answer to the Patent Owner's Appeal Brief within two

19

months thereafter.  In some cases, the Patent Owner may file a Reply Brief if the Examiner raises a new issue in the Answer.

78.     Once the issues are fully briefed, the file is transferred from the Examining branch to the BPAI.  The Patent Owner may file a request for an oral hearing and the oral hearing before the BPAI is typically conducted within six to twelve months after the request for oral hearing is filed.

79.     The BPAI's decision on appeal typically issues within one to three months after the oral hearing, although there is no deadline and the decision may take longer.

80.     The Patent Owner may file a request for a rehearing of any unfavorable BPAI decision within two months after receipt of the BPAI decision.  The BPAI's decision on the request for rehearing typically issues within one to two months thereafter, although there is no deadline for the decision.

81.     If the BPAI's decision remains unfavorable, the Patent Owner has the statutory right to appeal the decision within 60 days to the Federal Circuit.  The Federal Circuit will set its own schedule for briefing and argument.  As indicated in Exhibit D, the median time for disposition in the Federal Circuit for an appeal of a PTO decision is 9.6 months.  There is no deadline by which the Federal Circuit must decide the appeal.

82.     The PTO's statistics show an average pendency of 25.6 months for *ex parte* reexaminations, that is from the time the request is granted to the time the certificate is issued. *See* Exhibit G.  As with the pendency data for *inter partes* reexaminations, I believe that the 25.6 month average is skewed in favor of cases where the patent owner is not vigorously defending its patent.  The majority of cases in which a final rejection is issued are not appealed to the BPAI. Of those that are, fewer still are again appealed to the Federal Circuit.  Indeed, the facts of this

case show that contested reexaminations are very likely to exceed the average pendency by many months, if not years.  SAP filed the first request for reexamination of the '683 Patent more than 54 months ago and this reexamination proceeding may not conclude at any time in the near future.

## X.   THE PATENTS ARE LIKELY TO BE NEAR EXPIRATION UPON THE TERMINATION OF THE REEXAMINATIONS

83.     As noted above, it is likely that in the normal course both the *inter partes* reexamination of the '172 Patent, and *ex parte* reexaminations of the '683 Patent and the '516 Patent will extend until late in the life of each patent and possibly thereafter.  Given that one of the rights of the patent owner is to seek a permanent injunction and exclude its competitor from infringement, ePlus will be effectively denied one of the significant remedies available to it under federal patent law if injunctive relief is denied because of the pendency of the reexaminations.  Claims are not cancelled or confirmed in reexaminations until a final action or ACP has issued, all appeals have been exhausted, and a reexamination certificate has issued.  *See* 37 C.F.R. § 997(a) ("Upon the conclusion of an *inter partes* reexamination proceeding, the Director will issue a certificate in accordance with 35 U.S.C. 316…."); 35 U.S.C. § 316(a) ("In an *inter partes* reexamination proceeding…., when the time for appeal has expired or any appeal proceeding has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.").  *See also* M.P.E.P. § 2288 (Upon conclusion of the *ex parte* reexamination proceeding, the examiner must prepare a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" (NIRC) by completing form PTOL-469.  If appropriate, an examiner's amendment will also be prepared.  Where claims are found patentable, reasons must

21

be given for each claim found patentable.  In addition, the examiner must prepare the reexamination file so that the Office of Publications can prepare and issue a certificate in accordance with 35 U.S.C. 307 and 37 C.F.R. 1.570 setting forth the results of the reexamination proceeding and the content of the patent following the proceeding.

84.    Accordingly, the date for any final cancellation or confirmation of the claims as a result of the reexaminations is likely to take years to complete, and will likely not be completed until late in the life of each patent and possibly thereafter.

## XI.    INTERIM, NON-FINAL FINDINGS IN REEXAMINATIONS

85.    As discussed above, a reexamination proceeding, whether *ex parte* or *inter partes*, is not completed, and does not in fact make any changes to the patent under reexamination, until a reexamination certificate is issued that cancels claims, confirms claims, and/or modifies claims and/or the specification.  This is so even if amendments have been accepted by the Examiner or the BPAI and even if claims have been finally rejected or finally confirmed by the Examiner or the BPAI.

86.    The PTO is free to reconsider its initial determinations in a reexamination prior to issuing a reexamination certificate.  *See Fresenius Med. Care Holdings*, 2007 WL 1655625 at *4 (N.D. Cal. 2007).

87.    Until a certificate is issued in a reexamination, final disposition of any reexamination proceeding is unknown, and therefore, until such a certificate issues, it remains possible that the PTO's determination in the reexamination will have no ultimate bearing on the scope or life of the patent.  *See Fresenius*; *see also Texas MP3 Technologies v. Samsung Electronics*, 2007 WL 3219372 (E.D. Tex. 2007).

## XII.    CONCLUSION

88.     At least because of the uncertainty surrounding non-final reexamination proceedings, it is my opinion that Lawson's reliance, for any purpose, on the fact that reexaminations are underway for the patents-in-suit and any happenings during such reexamination proceedings is misplaced.

89.     Should Mr. Kalinsky, or any other witness, be permitted to testify concerning these non-final, interim reexamination proceedings at the injunction hearing, I intend to respond by offering testimony to place these reexamination proceedings in context.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 22 day of February, 2011 in Washington, D.C.

Harry F. Manbeck, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2011, I will electronically file the foregoing

**CONDITIONAL RULE 26 REBUTTAL EXPERT DISCLOSURE AND DECLARATION
OF HARRY F. MANBECK, JR. IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF PERMANENT INJUNCTION**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
lawsonservice@merchantgould.com

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
Megan C. Rahman
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com
megan.rahman@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

_____/s/_____

David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com

# EXHIBIT A

### BIOGRAPHY
### HARRY F. MANBECK, JR.

Harry F. Manbeck, Jr. is an attorney-at-law and a member of the firm of Rothwell, Figg, Ernst & Manbeck, P.C. The firm and Mr. Manbeck's offices are located at 1425 K Street, N.W., Suite 800, Washington, DC 20005. From March 1990 to May 1992, he was Assistant Secretary of Commerce and Commissioner of Patents and Trademarks of the United States. He was nominated to these offices by President Bush on October 11, 1989 and confirmed by the Senate on March 9, 1990.

Prior to his government service, Mr. Manbeck practiced patent law for over thirty-five years and at the time of his appointment he was General Patent Counsel of the General Electric Company. He joined General Electric in 1949 and advanced to become General Patent Counsel in 1970, which position he held until becoming Commissioner. Prior to joining the General Electric Company, he served in the U.S. Army Signal Corps.

A native of Honesdale, Pennsylvania, Mr. Manbeck graduated with Highest Honors from Lehigh University in 1949 with a B.S. in Electrical Engineering. He received his L.L.B. with Honors from the University of Louisville in 1954. Mr. Manbeck is a member of the District of Columbia, Connecticut, Indiana, Kentucky and Massachusetts bars and is admitted to practice before the Court of Appeals for the Federal Circuit. He is also registered to practice in front of the United States Patent and Trademark Office.

Mr. Manbeck has served as Chairman of the Patent, Trademark and Copyright Section of the American Bar Association; President of the Association of Corporate Patent Counsel; a Director of the Intellectual Property Owners, Inc.; and a Director of the Bar Association of the Court of Appeals for the Federal Circuit. He is also a member of the American Intellectual Property Law Association and the Connecticut Patent Law Association. In 1984 Mr. Manbeck was awarded the Whitney North Seymour Medal of the American Arbitration Association for contributions made to the process of arbitration in the United States.

Mr. Manbeck is married to the former Julia P. McCarthy and they reside in McLean, Virginia.

1563386.1

## PUBLICATIONS AUTHORED BY
### Harry F. Manbeck, Jr.

1.      "Voluntary Arbitration of Patent Disputes - The Background to 35 U.S.C. 294",
AIPLA Quarterly J. #4, pp. 268-273, Fall 1983.

2.      "Entering Our Third Century", Keynote Address Before the American Bar Association
Section of Patent, Trademark and Copyright Law, Chicago, Illinois, August 4, 1990,
72 JPOS 1177 (1990).

3.      "The Evolution and Issue of New Rule 56", 20 AIPLA Quarterly J., #3 & 4, pp. 137-
144, Fall 1992.

4.      "The Federal Circuit - First Ten Years of Patentability Decisions", 14 George Mason
Univ. L.R. 499 (1992).

5.      "Key License Clauses for Technology License Agreements", Technology Licensing
1988, Course Handbook, Series #245, Practicing Law Institute, Patents, Copyrights,
Trademarks and Literary Property.

6.      Author and Presenter, "Current Developments in U.S. and International Law & Policy",
Hatsumei Kyokai (Japan Institute of Invention and Innovation) (Tokyo,
Japan; March 8, 1993).

7.      Co-Author with C. Chalsen and M. Murray, "A Report on the Recommendations of the
Advisory Commission on Patent Law Reform", Selected Legal Papers, American Intellectual
Property Law Association, Vol. X, No. 2, pp. 3-20 (January 1993).

8.      Co-Author and Co-Presenter with C. Chalsen, "A Report on the Advisory Commission
on Patent Law Reform", Chizaiken (Japan Institute of Intellectual Property) (Tokyo, Japan;
September 16, 1992).

9.      Co-Author and Co-Presenter with C. Chalsen, "Techniques for Obtaining a Strong U.S.
Patent", Japanese Group of A.I.P.P.I.; Presented: Tokyo, Japan, September 18,
1992, Published: Journal of the Japanese Group A.I.P.P.I., Vol. 38, No. 1, pp. 16-22
(January 1993).

10.      Co-Author with C. Chalsen and M. Murray; and Co-Presenter, "Effective Handling of
Jury Trials in Patent Cases", Presented: Tokyo, Japan; September 18, 1992, Published: Journal
of the Japanese Group A.I.P.P.I., Vol. 37, Nos. 9-10, pp. 12-18
(September - October 1992).

## CASES IN WHICH HARRY F. MANBECK, JR.
## HAS TESTIFIED SINCE JANUARY 2007

1.    Case Name:    **Aspex Eyewear, Inc., Chic Optic, Inc.** and **Contour Optik, Inc., v. Safilo USA, Inc.**
     Case No.:    04 Civ. 7473 (SHS)
     Court:    United States District Court, Southern District of New York

2.    Case Name:    **Highway Equipment Company, Inc. v. Cives Corporation and Monroe Truck Equipment, Inc.**
     Case No.:    C04-147LRR
     Court:    United States District Court, Cedar Rapids District

3.    Case Name:    **O2 Micro International Limited v. Samsung Electronics, Co. LTD., Samsung Electronics America, Inc., Samsung SDI Co., LTD., Samsung SDI America, Inc.**
     Case No.:    2:04-CV-323 (Ward)
     Court:    United States District Court, Eastern District of Texas, Marshall Division

4.    Case Name:    **CPI v. St. Jude Medical, Inc.,** *et al.*
     Case No.:    04-0067-SLR
     Court:    United States District Court, District of Delaware

5.    Case Name:    **Med Immune Oncology v. Sun Pharmaceutical Industries**
     Case No.:    1:04-CV-02612-MJG
     Court:    United States District Court, District of Maryland

6.    Case Name:    **Prometheus Laboratories, Inc. v. Mayo Collaborative Services dba Mayo Medical Laboratories** and **Mayo Clinic Rochester**
     Case No.:    04 cv 1200 JAH (RBB)
     Court:    United States District Court, Southern District of California

7.    Case Name:    **Armament Systems Procedures, Inc., v. IQ Hong Kong Limited, et al.**
     Case No.:    00-C-1257
     Court:    United States District Court, Eastern District of Wisconsin

8.  Case Name:     **Enzo Biochem, Inc., Enzo Life Sciences, Inc.,** and **Yale University v. Applera
    Corp.** and **Tropix, Inc.**
    Case No.:       3-04CV-929(JBA)
    Court:          United States District Court, District of Connecticut

9.  Case Name:     **Schlindler Elevator Corporation** and **Inventio AG v. Otis Elevator Company**
    Civil Action No.: 06-CV-05377 (RCC)
    Court:          United States District Court, Southern District of New York

10. Case Name:     **Arrow Communication Laboratories, Inc.,** and **Tresness Irrevocable Patent
    Trust v. John Mezzalingua Associates, Inc.**
    Case No.:       5:05-CV-1456 (NAM/EP)
    Court:          United States District Court, Northern District of New York

11. Case Name:     **Sky Technologies, LLC v. Ariba, Inc.**
    Case No.:       06CA11889
    Court:          United States District Court, District of Massachusetts

12. Case Name:     **Mobile Micromedia Solutions LLC v. Nissan North America, Inc.**
    Case No.:       5:05-CV-230
    Court:          United States District Court, Eastern District of Texas, Texarkana Division

13. Case Name:     **TGIP, Inc. v. AT&T Corp., Verizon Communications, Inc., Bell Atlantic
    Communications, Inc. d/b/a Verizon Long Distance, Verizon Select Services, Inc.,
    MCI, Inc., MCI Communications Services, Inc. d/b/a MCI, MCI Network
    Services, Inc., Teleconnect Long Distance Services & Systems Company d/b/a
    Telecom*USA, IDT Corporation, U.S. South Communications, Inc. d/b/a U.S.
    South and d/b/a Interactive Communications International Inc. a/k/a Incomm,
    Pre Holdings, Inc., Pre Solutions, Inc.**
    Case No.:       2-06 CV-105
    Court:          United States District Court, Eastern District of Texas, Marshall Division

14. Case Name:     **Amgen v. Ariad Pharmaceuticals, Harvard University, Massachusetts
    Institute of Technology** and **Whitehead Technology**
    Civil Action No.: 06-259-MPT
    Court:          United States District Court for the District of Delaware

15. Case Name:     **SmarTire Systems, Inc. v. Siemens VDO Automotive Corp., et al.**
    Civil Action No.: 1 :07-cv-932
    Court:          United States District Court for the Eastern District of Virginia (Alexandria Division)

1819275-1

16. Case Name:       **Chemfree Corporation v. J. Walter, Inc.** and **J. Walter Co., Ltd.**
    Civil Action No.:  1:04-CV-3711-JTC
    Court:             United States District Court for the Northern District of Ohio, Eastern Division

17. Case Name:       **Sky Technologies LLC v. SAP AG, SAP America, Inc.** and **Oracle Corporation**
    Civ. Action No.:   2:06-cv-440-DF
    Court:             United States District Court for the Eastern District of Texas, Marshall Division

18. Case Name:       **In the Matter of Certain Ground Fault Circuit Interrupters and Products Containing the Same**
    Investigation No.: 337-TA-615
    Court:             United States International Trade Commission, Washington, DC

19. Case Name:       **In Re Certain digital Television Sets**
    Investigation No.: 337-TA-617
    Court:             United States International Trade Commission

20. Case Name:       **Vaxiion Therapeutics v. Foley & Lardner**
    Case No.:          3:07-cv-00280-IEG-RBB
    Court:             United States District Court, Southern District of California, San Diego

21. Case Name:       **Siemens AG v. Seagate Technology**
    Case No.:          SACV 06-788-JVS (ANx)
    Court:             United States District Court for the Central District of California, Southern Division

22. Case Name:       **Verizon Services Corp., Verizon Communications, Inc., MCI Communications Corporation,** and **Verizon Business Global LLC v. Cox FiberNet Virginia, Inc., Cox Virginia Telecom, Inc., Cox Communications Hampton Roads LLC, CoxCom, Inc.,** and **Cox Communications, Inc.**
    Civ. Action No.:   2:08 CV20-JBF/TEM
    Court:             United States District Court for the Eastern District of Virginia

23. Case Name:       **D. Yogi Goswami v. Universal Air Technology, Inc., a New Jersey Corporation** and **Lennox Industries, Inc., an Iowa corporation**
    Case No.:          01-02-CA-101
    Court:             Eighth Judicial Circuit in and for Alachua County, Florida

1819275-1

24.  Case Name:     **New Medium LLC, AV Technologies LLC, J. Carl Cooper, Pixel Instruments Corporation, IP Innovation LLC,** and **Technology Licensing Corporation v. Barco N.V.,** and **Syntax-Brillian Corporation**
     Case No.:       05 C 5620
     Court:          United States District Court for the Northern District of Illinois, Eastern Division

25.  Case Name:     **SuperSpeed, LLC v. IBM Corporation**
     Case No.:       2:07-CV-089-TJW
     Court:          United States District Court for the Eastern District of Texas, Marshall Division

26.  Case Name:     **Timothy & Thomas LLC v. Viral Genetics, Inc. and Haig Keledjian**
     Case No.:       06-CV-1813
     Court:          Northern District of Illinois, Eastern Division

27.  Case Name:     **Davis-Lynch, Inc. v. Weatherford International, Inc.**
     Case No.:       06:07-CV-559
     Court:          United States District for the Eastern District of Texas, Tyler Division

28.  Case Name:     **I-Flow Corporation v. Apex Medical Technologies, Inc.** and **Mark McGlothlin**
     Case No.:       07-CV-1200 DMS (NLS)
     Court:          United States District Court for the Southern District of California

29.  Case Name:     **National Elevator Cab & Door Corp. v. H&B, Inc.**
     Case No.:       07 CV 1562 (RML)
     Court:          United States District Court for the Eastern District of New York

30.  Case Name:     **ePlus, Inc. v. Lawson Software, Inc.**
     Case No.:       3:09-CV-00620 (REP)
     Court:          United States District Court for the Eastern District of Virginia, Richmond Division

31.  Case Name:     **Bright Response, LLC F/K/A Polaris IP, LLC v. Google Inc., et al.**
     Case No.:       2:07-CV-371-CE
     Court:          United States District Court for the Eastern District of Texas, Marshall Division

32.  Case Name:     **Purepac Pharmaceutical Co. v. Pfizer Inc., Warner-Lambert Company LLC, Gödecke GmbH, and Pfizer Pharmaceuticals LLC**
     Case No.:       00-cv-2931, MDL 1384
     Court:          New Jersey District Court

1819275-1

33. Case Name:    TecSec, Incorporated v. International Business Machines, et al.
     Case No.:      1:10CV115 CMH-TCB
     Court:        U.S. District Court for the Eastern District of Virginia

1819275-1

# EXHIBIT B

**>



*Inter Partes* Reexamination (applicable rule section)
PROCEDURE BEFORE APPEAL

OPTIONAL INTER PARTES REEXAMINATION



*Inter Partes* Reexamination (applicable rule section)
**APPEAL PROCEDURE**
**Single Third Party Requester**

Flow chart on page 2600-6 is omitted as it applies only to reexaminations commenced prior to November 2, 2002.

OPTIONAL INTER PARTES REEXAMINATION                    2601.01



Rev. 5, Aug. 2006

# EXHIBIT C

## INTER PARTES REEXAMINATION TIME LINE (USE WITH MPEP FLOWCHART)

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| 1. | Request for Reexamination filed | **37 CFR § 1.913** | |
| 2. | Reexamination ordered and Initial Office action issued | **37 CFR § 1.931** (Order for *inter partes* reexamination.) **37 CFR § 1.935** (Initial Office Action may accompany the order for *inter partes* reexamination.) | Issuance of initial Office action ranges from 13 days to 2.2 years after Reexamination Order entered |
| 3. | Patent Owner Response | **37 CFR § 1.945** | 1 to 2 months from date of Office Action |
| 4. | 3rd Party requester comments | **37 CFR § 1.947** | 30 days from date of service of patent owner response |
| 5. | Office Action issued | **37 CFR § 1.949** | ranges from 0.3 to 5.2 years |
| 6. | *[if Office Action closes prosecution –]* Patent Owner submits comments/amendments in response to Action closing prosecution *AND/OR* Patent Owner files a Rule 1.181 petition | **37 CFR § 1.951 Options after Office action closing prosecution in *inter partes* reexamination.** (a) After an Office action closing prosecution in an *inter partes* reexamination, the patent owner may once file comments limited to the issues raised in the Office action closing prosecution. The comments can include a proposed amendment to the claims, which amendment will be subject to the criteria of § 1.116 as to whether or not it shall be admitted. The comments must be filed within the time set for response in the Office action closing prosecution. **MPEP § 2672.VI. ACTION CLOSING PROSECUTION – PREMATURE** If the patent owner is of the opinion that the Office action closing | Action closing prosecution (ACP) sets time for response (typically 30 days or 1 month, whichever is longer) Petition that ACP is premature: file within time set for |

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | prosecution in the *inter partes* reexamination proceeding is premature, the patent owner may, in addition to the comments submitted under 37 CFR 1.951(a), file a petition under 37 CFR 1.181 within the time period for filing the comments under 37 CFR 1.951(a). | response to ACP. |
| | | **MPEP § 2672.III.  ACTION TAKEN BY EXAMINER** It should be kept in mind that a patent owner cannot, as a matter of right, amend claims rejected in the ACP, add new claims after an ACP, nor reinstate previously canceled claims. A showing under 37 CFR 1.116(b) is required and will be evaluated by the examiner for all proposed amendments after the ACP, except where an amendment merely cancels claims, adopts examiner's suggestions, removes issues for appeal, or in some other way requires only a cursory review by the examiner. | |
| 7. | 3rd Party Responding comments AND/OR response to Patent Owner's Rule 1.181 petition | **37 CFR § 1.951** **(b)** When the patent owner does file comments, a third party requester may once file comments responsive to the patent owner's comments within 30 days from the date of service of patent owner's comments on the third party requester. **MPEP§ 2672.VI.  ACTION CLOSING PROSECUTION - PREMATURE** The third party requester may then once file, as a paper separate from any submission under 37 CFR 1.951(b), comments responsive to the patent owner's petition under 37 CFR 1.181 within 30 days from the date of service of the patent owner's petition under 37 CFR 1.181 on the third party requester. | 30 days from date of service of patent owner response |
| 8. | Examiner considers comments.  Examiner may then issue a Right of Appeal Notice. *OR* | **§ 1.953  Examiner's Right of Appeal Notice in *inter partes* reexamination.** **(a)** Upon considering the comments of the patent owner and the third party requester subsequent to the Office action closing prosecution in an *inter partes* reexamination, or upon expiration of the time for submitting such comments, the examiner shall issue a Right of Appeal | ranges from 1.9 months to 3.5 years |

2

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | Examiner may reopen prosecution. | Notice, unless the examiner reopens prosecution and issues another Office action on the merits.<br><br>**(b)** Expedited Right of Appeal Notice: At any time after the patent owner's response to the initial Office action on the merits in an *inter partes* reexamination, the patent owner and all third party requesters may stipulate that the issues are appropriate for a final action, which would include a final rejection and/or a final determination favorable to patentability, and may request the issuance of a Right of Appeal Notice. The request must have the concurrence of the patent owner and all third party requesters present in the proceeding and must identify all of the appealable issues and the positions of the patent owner and all third party requesters on those issues. If the examiner determines that no other issues are present or should be raised, a Right of Appeal Notice limited to the identified issues shall be issued. | |
| 9. | *[if Examiner does not reopen prosecution –]*<br><br>Examiner issues Right of Appeal Notice (Final Office action) | **37 CFR § 1.953 (e)** The Right of Appeal Notice shall be a final action, which comprises a final rejection setting forth each ground of rejection and/or final decision favorable to patentability including each determination not to make a proposed rejection, an identification of the status of each claim, and the reasons for decisions favorable to patentability and/or the grounds of rejection for each claim. No amendment can be made in response to the Right of Appeal Notice. The Right of Appeal Notice shall set a one-month time period for either party to appeal. If no notice of appeal is filed, prosecution in the *inter partes* reexamination proceeding will be terminated, and the Director will proceed to issue and publish a certificate under §1.997 in accordance with the Right of Appeal Notice. | ranges from 1.9 months to 3.5 years |
| 10. | Either or both parties may file a Notice of Appeal | **37 CFR § 41.61 Notice of appeal and cross appeal to Board.** **(a)(1)** Upon the issuance of a Right of Appeal Notice under § 1.953 of this title, the owner may appeal to the Board with respect to the final rejection of any claim of the patent by filing a notice of appeal within the time provided in the Right of Appeal Notice and paying the fee set forth in § 41.20(b)(1). | within 1 month from Right of Appeal Notice |

3

LIBW/1714585 1

| Step in *Inter Partes* Reexam Flow Chart | Relevant Statute or Rules | Time Period |
|---|---|---|
| | **(a)(2)** Upon the issuance of a Right of Appeal Notice under § 1.953 of this title, the requester may appeal to the Board with respect to any final decision favorable to the patentability, including any final determination not to make a proposed rejection, of any original, proposed amended, or new claim of the patent by filing a notice of appeal within the time provided in the Right of Appeal. | |
| 11. If a party does not file a notice of appeal and his/her opponent does, the party may file a Notice of Cross Appeal | **37 CFR § 41.61** <br> **(b)(1)** Within fourteen days of service of a requester's notice of appeal under paragraph (a)(2) of this section and upon payment of the fee set forth in § 41.20(b)(1), an owner who has not filed a notice of appeal may file a notice of cross appeal with respect to the final rejection of any claim of the patent. <br><br> **(b)(2)** Within fourteen days of service of an owner's notice of appeal under paragraph (a)(1) of this section and upon payment of the fee set forth in §41.20(b)(1), a requester who has not filed a notice of appeal may file a notice of cross appeal with respect to any final decision favorable to the patentability, including any final determination not to make a proposed rejection, of any original, proposed amended, or new claim of the patent. | 14 days after service of opponent's Notice of Appeal |
| | **MPEP § 2674.** Where a notice of appeal or notice of cross appeal is timely filed but is defective, e.g., missing fee or missing portion of the fee, no proof of service is included, it is signed by an inappropriate party or is unsigned, failure to identify the appealed claims; 37 CFR 41.61(f) provides the appropriate party one opportunity to file, within a nonextendable period of one month, an amended notice of appeal or cross appeal that corrects the defect(s). | 1 month to cure defects in timely-filed Notice of Appeal |
| 12. Appeal Brief / Cross-Appeal Brief | **37 CFR § 41.66. Time for filing briefs.** <br> **(a)** An appellant's brief must be filed no later than two months from the latest filing date of the last-filed notice of appeal or cross appeal or, if any party to the proceeding is entitled to file an appeal or cross | 2 months from last-filed notice of appeal or cross appeal |

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | appeal but fails to timely do so, no later than two months from the expiration of the time for filing (by the last party entitled to do so) such notice of appeal or cross appeal. The time for filing an appellant's brief or an amended appellant's brief may not be extended. | |
| 13. | Reply Brief | **37 CFR § 41.66(b).** Once an appellant's brief has been properly filed, any brief must be filed by respondent within one month from the date of service of the appellant's brief. The time for filing a respondent's brief or an amended respondent's brief may not be extended. | due 1 month from service of Appeal Brief |
| 14. | Examiner's Answer | **37 CFR § 41.66(c).** The examiner will consider both the appellant's and respondent's briefs and may prepare an examiner's answer under § 41.69. | typically one to three months after receipt of respondent's brief |
| 15. | *[if Examiner does not change position on any rejection –]* Either or both parties can file Rebuttal Brief | **37 CFR § 41.66(d).** Any appellant may file a rebuttal brief under § 41.71 within one month of the date of the examiner's answer. The time for filing a rebuttal brief or an amended rebuttal brief may not be extended. | within 1 month after date of Examiner's Answer |
| | Request for Oral Hearing (not shown in flow chart) | **37 CFR § 41.73(b).** If an appellant or respondent desires an oral hearing, he or she must file, as a separate paper captioned 'REQUEST FOR ORAL HEARING," a written request for such hearing accompanied by the fee set forth in § 41.20(b)(3) within two months after the date of the examiner's answer. | within 2 months after the date of Examiner's Answer |
| | Oral Hearing Before BPAI (not shown in flow chart) | | within 6-12 months after filing of request for oral hearing. |
| 16. | Board Decision The PTO's Board of Patent Appeals and Interferences (BPAI) may: | **37 CFR § 41.77 Decisions and other actions by the Board.** **(a)** The Board of Patent Appeals and Interferences, in its decision, may affirm or reverse each decision of the examiner on all issues raised on each appealed claim, or remand the reexamination proceeding to the examiner for further consideration. The reversal of the examiner's | ranges from 1.5 to 3.7 years after issuance of Right of Appeal Notice |

5

LJBW/1714585.1

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | (1) affirm the Examiner's decision<br><br>(2) reverse the Examiner's decision<br><br>(3) remand the proceeding to Examiner for further consideration<br><br>(4) provide a new ground of rejection | determination not to make a rejection proposed by the third party requester constitutes a decision adverse to the patentability of the claims which are subject to that proposed rejection which will be set forth in the decision of the Board of Patent Appeals and Interferences as a new ground of rejection under paragraph (b) of this section. The affirmance of the rejection of a claim on any of the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, except as to any ground specifically reversed.<br><br>**(b)** Should the Board reverse the examiner's determination not to make a rejection proposed by a requester, the Board shall set forth in the opinion in support of its decision a new ground of rejection; or should the Board have knowledge of any grounds not raised in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, which statement shall constitute a new ground of rejection of the claim. **Any decision which includes a new ground of rejection pursuant to this paragraph shall _not_ be considered final for judicial review.** | |
| 17. | *[If either party appeals to Fed Cir.—]*<br><br>Fed. Cir. appeal process | **35 U.S.C. §§ 141-145.**<br><br>**35 U.S.C. §§ 141-142.** When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the Director, within such time after the date of the decision from which the appeal is taken as the Director prescribes, but in no case less than 60 days after that date. | 60 days after Board decision |
| | Fed. Cir. sets schedule for briefing and argument (not shown in flow chart) | | |
| | Fed. Cir. decision (not shown in flow chart) | | Median is 8.9 months from docketing date to disposition date. |

6

LIBW/1714585.1

| | Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | | *See* Ex. C. |
| 18. | *[If Board decision is not final for judicial review—]* Patent Owner amendment and/or showing of new evidence | **37 CFR § 41.77(b)** ... When the Board makes a new ground of rejection, the owner, within one month from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal proceeding as to the rejected claim: (1) *Reopen prosecution.* The owner may file a response requesting reopening of prosecution before the examiner. Such a response must be either an amendment of the claims so rejected or new evidence relating to the claims so rejected, or both. (2) *Request rehearing. See below.* | within 1 month of Board Decision |
| 19. | 3rd Party Requester comments | **37 CFR § 41.77(c).** Where the owner has filed a response requesting reopening of prosecution under paragraph (b)(1) of this section, any requester, within one month of the date of service of the owner's response, may once file comments on the response. Such written comments must be limited to the issues raised by the Board's opinion reflecting its decision and the owner's response. Any requester that had not previously filed an appeal or cross appeal and is seeking under this subsection to file comments or a reply to the comments is subject to the appeal and brief fees under § 41.20 (b)(1) and (2), respectively, which must accompany the comments or reply. | within 1 month of service of patent owner's response |
| 20. | Examiner's Determination | **37 CFR § 41.77(d).** Following any response by the owner under paragraph (b)(1) of this section and any written comments from a requester under paragraph (c) of this section, the proceeding will be remanded to the examiner. The statement of the Board shall be binding upon the examiner unless an amendment or new evidence not previously of record is made which, in the opinion of the examiner, overcomes the new ground of rejection stated in the decision. The examiner will consider any owner response under paragraph (b)(1) of this section and any written comments by a requester under paragraph (c) of this section and issue a determination that the rejection is maintained or has been overcome. | indeterminate (no *inter partes* reexamination has progressed this far) |

7

| Step in *Inter Partes* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|
| 21. Either party comments & the other party replies | **37 CFR § 41.77(e).** Within one month of the examiner's determination pursuant to paragraph (d) of this section, the owner or any requester may once submit comments in response to the examiner's determination. Within one month of the date of service of comments in response to the examiner's determination, the owner and any requesters may file a reply to the comments. No requester reply may address the comments of any other requester reply. Any requester that had not previously filed an appeal or cross appeal and is seeking under this subsection to file comments or a reply to the comments is subject to the appeal and brief fees under § 41.20(b)(1) and (2), respectively, which must accompany the comments or reply. | comments within 1 month of examiner's determination; *plus* reply within 1 month of comments |
| 22. Reexamination proceeding returned to Board for Board Decision | **37 CFR § 41.77(f).** After submission of any comments and any reply pursuant to paragraph (e) of this section, or after time has expired, the proceeding will be returned to the Board which shall reconsider the matter and issue a new decision. The new decision is deemed to incorporate the earlier decision, except for those portions specifically withdrawn. | returned to Board upon comments and reply, or after expiration of 1-2 months |
| *[Loop back to Step (16) Board Decision above ]* | **37 CFR §§ 41.77(a), 41.77(b).** | *see time periods above for BPAI review* |
| 23. *[Alternative option after any Board Decision –]* Patent Owner and/or 3rd Party Requester Request for Rehearing | **37 CFR § 41.79 Rehearing.** (a) Parties to the appeal may file a request for rehearing of the decision within one month of the date of: (1)The original decision of the Board under § 41.77(a), (2)The original § 41.77(b) decision under the provisions of § 41.77(b)(2), (3)The expiration of the time for the owner to take action under § 41.77(b)(2), or (4)The new decision of the Board under § 41.77(f). | within 1 month of Board Decision |

8

| | | | |
|---|---|---|---|
| 24. | Opposing Party's Comments | **37 CFR § 41.79(c)** Within one month of the date of service of any request for rehearing under paragraph (a) of this section, or any further request for rehearing under paragraph (d) of this section, the owner and all requesters may once file comments in opposition to the request for rehearing or the further request for rehearing. The comments in opposition must be limited to the issues raised in the request for rehearing or the further request for rehearing.<br>**(e)** The times for requesting rehearing under paragraph (a) of this section, for requesting further rehearing under paragraph (c) of this section, and for submitting comments under paragraph (b) of this section may not be extended. | within 1 month of Request for Rehearing |
| 25. | Board Decision | **37 CFR § 41.79(d)** If a party to an appeal files a request for rehearing under paragraph (a) of this section, or a further request for rehearing under this section, the Board shall render a decision on the request for rehearing. The decision on the request for rehearing is deemed to incorporate the earlier opinion reflecting its decision for appeal, except for those portions specifically withdrawn on rehearing and is final for the purpose of judicial review, except when noted otherwise in the decision on rehearing. | indeterminate (no *inter partes* reexamination has progressed this far) |
| 26. | *[If Board's decision on rehearing is not a new decision –]*<br>Appeal to Fed. Cir.<br>*[If Board's decision on rehearing becomes a new decision, loop back to Step (23) Request for Rehearing]* | 37 § 41.79(d) … If the Board opinion reflecting its decision on rehearing becomes, in effect, a new decision, and the Board so indicates, then any party to the appeal may, within one month of the new decision, file a further request for rehearing of the new decision under this subsection. Such further request for rehearing must comply with paragraph (b) of this section. | *see* time periods set forth above for rehearing and/or Fed. Cir. appeal |

9

LIBW/1714585.1

# EXHIBIT D

# United States Court of Appeals for the Federal Circuit

Median Time to Disposition in Cases Terminated After Hearing or Submission[1]

Docketing Date[2] to Disposition Date, in Months

| | FY 01 | FY 02 | FY 03 | FY 04 | FY 05 | FY 06 | FY 07 | FY 08 | FY 09 | FY 10 | Overall Median per Origin |
|---|---|---|---|---|---|---|---|---|---|---|---|
| District Court | 13.3 | 12.3 | 11.3 | 11.7 | 11.6 | 11.5 | 11.6 | 11.0 | 11.0 | 11.0 | 11.7 |
| Court of Federal Claims | 12.0 | 11.4 | 9.8 | 11.0 | 11.2 | 10.0 | 10.0 | 9.2 | 10.3 | 10.0 | 10.6 |
| Court of International Trade | 14.5 | 14.7 | 11.2 | 12.0 | 11.5 | 11.7 | 11.9 | 12.4 | 11.5 | 11.0 | 12.0 |
| Court of Appeals Veterans Claims | 11.3 | 12.9 | 10.6 | 10.0 | 9.9 | 8.4 | 8.4 | 8.0 | 9.3 | 9.3 | 9.6 |
| Board of Contract Appeals | 12.0 | 11.3 | 12.6 | 9.7 | 10.5 | 11.7 | 10.4 | 9.6 | 11.9 | 8.8 | 11.3 |
| Department of Veterans Affairs | 19.9 | 11.1 | 13.8 | n/a | 14.4 | 13.7 | 11.3 | 4.8 | 18.9 | n/a | 13.8 |
| Department of Justice | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | 8.9 | 8.9 | 8.9 |
| International Trade Commission | 6.8 | n/a | 17.1 | 16.0 | 16.4 | 15.6 | 13.6 | 14.4 | 14.4 | 14.8 | 14.8 |
| Merit Systems Protection Board | 7.5 | 7.2 | 7.6 | 6.9 | 7.5 | 6.5 | 6.4 | 5.8 | 6.5 | 6.1 | 6.8 |
| Office of Compliance | 10.2 | n/a | 19.6 | 10.1 | 13.3 | 14.0 | n/a | 19.0 | n/a | 13.0 | 13.5 |
| Patent and Trademark Office | 10.6 | 10.7 | 9.5 | 9.6 | 10.3 | 10.0 | 9.6 | 8.9 | 9.3 | 8.2 | 9.6 |
| **Overall Median per Fiscal Year** | 11.2 | 10.5 | 9.6 | 10.0 | 9.9 | 9.3 | 9.1 | 9.0 | 9.3 | 9.3 | |

1 Excludes cross and consolidated appeals, writs, and OPM petitions

2 Calculated from Date of Docketing or Date of Reinstatement, whichever is later

# EXHIBIT E



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Inter Partes* Reexamination Filing Data – December 31, 2010

1. Total requests filed since start of *inter partes* reexam on 11/29/99 ........................................................1115[1]

2. Number of filings by discipline

| | | |
|---|---|---|
| a. | Chemical Operation | 202 | 18% |
| b. | Electrical Operation | 576 | 52% |
| c. | Mechanical Operation | 325 | 29% |
| d. | Design Patents | 12 | 1% |

3. Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 2000 | 0 | 2003 | 21 | 2006 | 70 | 2009 | 258 |
| 2001 | 1 | 2004 | 27 | 2007 | 126 | 2010 | 281 |
| 2002 | 4 | 2005 | 59 | 2008 | 168 | 2011YTD | 100 |

4. Number known to be in litigation .................................................787 ..................70%

5. Decisions on requests ..............................................................................................972

   a. No. granted ..................................................................................... 932 ........................96%

      (1) By examiner      930
      (2) By Director (on petition)      2

   b. No. not granted ............................................................................ 40 ..........................4%

      (1) By examiner      36
      (2) Reexam vacated      4

6. Overall reexamination pendency  (Filing date to certificate issue date)
   a. Average pendency      36.3 (mos.)
   b. Median pendency      31.7 (mos.)

7. Total inter partes reexamination certificates issued (1999 - present) ...........................................221

| | | | |
|---|---|---|---|
| a. | Certificates with all claims confirmed | 22 | 10% |
| b. | Certificates with all claims canceled (or disclaimed) | 103 | 47% |
| c. | Certificates with claims changes | 96 | 43% |

---

[1] Of the requests received in FY 2011, 4 requests have not yet been accorded a filing date, and 1 request has had preprocessing terminated, for failure to comply with the requirements of 37 CFR 1.915.  See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

# EXHIBIT F



**Reexamining *Inter partes* Reexam**

Beginning in 1981, U.S. patent law set up patent reexamination as an administrative alternative to litigation for addressing patent validity concerns.  The idea was to create a less expensive and speedier alternative to decide questions of patent validity.  Although the level of scrutiny of the U.S. patent system has risen dramatically in light of the ongoing debate over patent reform, reexamination has received relatively little attention.  Recently however, we have observed a number of trends that suggest that it might be time to carefully reexamine patent reexamination, particularly *inter partes* reexamination.

In doing so, we have discovered the following:
- *Inter partes* reexaminations requests are rising rapidly – a 6X increase between 2003 and 2007
- Reexamination, particularly *inter partes* reexamination is not simply used as an alternative to litigation, but an integral part of litigation strategy – more than half (52%) of patents in *inter partes* reexams are known to be in litigation during their reexamination
- Virtually all requests for *inter partes* reexamination are granted – 95% of *inter partes* reexam requests are granted, and this statistic may actually understate the effective grant rate
- To date, there has never been a single *inter partes* reexamination that has gone through the entire reexamination process (including appeal) and made it to completion – only three have ever received a decision by the Board of Patent Appeals and Interferences
- Despite a mandate for "special dispatch", the time required to complete an *inter partes* reexamination is much longer than commonly believed
    - Without appeal, the average pendency period for *inter partes* reexam is 43.5 months, much longer than the 28.5 months reported by the USPTO – a 95% confidence interval would put the pendency between 34 and 53 months
    - Although no *inter partes* reexam has ever been completed after being appealed, the average pendency for appealed *inter partes* reexams  is 78.4 months (assuming no rework by the patent office or secondary appeal) - a 95% confidence interval would put the pendency between 5 and 8 years

**Why reexamine *inter partes* reexams?**
Over the last several years, the number of reexamination requests at the USPTO has been rising rapidly.  This is particularly true for *inter partes* reexams.  The number of requests for *inter partes* reexam had increased 6X from 24 in calendar 2003 to 142 in calendar 2007. (Note:  Our analysis is based on calendar years rather than the USPTO's fiscal year.)  This increase appears to be a result of the increasing use of reexamination as an integral part of litigation strategy by defendants or potential defendants in patent

INSTITUTE
*for*
PROGRESS

litigation.  According to USPTO statistics, more than half (52%) of all patents subject to *inter partes* reexamination are known to be in litigation during the reexamination process.

The story of Microsoft and Avistar is a particularly telling example.  After six months of licensing negotiation, Microsoft has requested reexamination of 24 of Avistar's 29 U.S. patents.  Although Avistar's key patents have previously survived two significant litigations, Microsoft's actions have delayed its licensing program and placed the company into financial distress resulting in a 25% reduction in its U.S. and European workforce.

Although the reexamination statute in the U.S. may have been intended to provide an alternative to litigation, the actual use of reexamination appears to be an augmentation of litigation strategy rather than an alternative.  In many cases, patent litigation in U.S. courts and 337 actions at the International Trade Commission (investigations of unfair trade practices related to IP infringement) run simultaneously with reexamination at the Patent Office.  Simultaneous litigation and reexamination raise serious questions for U.S. courts about whether to wait for the results of a pending reexamination or continue with their court proceedings.

The conclusions so far have been mixed.  In some cases, patent litigation has been stayed pending the results of reexam, while in others, the cases have continued.  Many people will remember for example that Judge Spencer who presided over the contentious patent battle between NTP and RIM over the "Blackberry patents" famously refused to stay the litigation proceedings despite the fact that the PTO had issued an initial rejection of the claims at issue.

These difficult and often critical decisions by circuit court judges and administrative law judges depend heavily on their understanding and expectations of what will happen in the reexamination process at the PTO.  How reliable are initial office actions as a predictor of final results in a reexamination?  How long will the process take?  How often are the patent examiner's finding upheld on appeal?  For judges, these questions are critical in determining whether a request for a stay should be granted.  For litigants, these questions can strongly influence litigation strategy.

*Ex parte* reexamination was established by statute in 1981, and more than 9,000 reexamination requests have been filed with more than 6,000 reexamination certificates issued (signaling the completion of the process).  The *ex parte* reexamination process is well established.  Much less is known about *inter partes* reexams.  Established by statute in November of 1999, the first *inter partes* reexamination was not requested until 2001.  Through mid-April of 2008, there have been 396 requests for *inter partes* reexamination at the USPTO, and only 16 of those have received reexamination certificates.

INSTITUTE
*for*
PROGRESS

Given the rising importance of reexaminations in general, and the relative scarcity of information about *inter partes* reexam specifically, we decided to take a closer look to discover what can be learned about this relatively little understood process.

**What did we do?**
To examine the *inter partes* reexamination process, we copied transaction level data for every *inter partes* reexamination from the USPTO's PAIR database. These transactions reveal both the sequence and the timing of each step through the process. The database we created all cases and transactions through April 16, 2008.

We noted and corrected a number of anomalies in the PTO data including:
- Several reexaminations appeared to proceed without the initial "Request for *Inter partes* Reexamination" transaction in the PTO data – we investigated and manually filled in this missing data
- Several reexaminations included references to "*ex parte*" reexamination despite the fact that they were "*inter partes*" reexams – we manually reviewed and resolved each discrepancy
- Duplicate transactions (same reexam number, same transaction, same date) were eliminated – these were generally not errors, but represent instances where the documents were uploaded into the PAIR system in multiple parts

We then extracted the key milestone transactions in the reexamination process and mapped the process and timeline for every *inter partes* reexamination to discover what path each case had taken through the process, and how long each step in the process takes. The results of our analysis are briefly described below, and more fully captured in the attached presentation slides.

**What did we find?**
Requests for *inter partes* reexamination are rising rapidly
As described above, the number of *inter partes* reexamination requests is rising rapidly. In 2007, there were 142 requests for *inter partes* reexams, three times as many as in 2005, and nearly six times as many as in 2003. *Inter partes* reexam requests have risen nearly 90% per year (CAGR) over the last five years.

Nearly all *inter partes* reexamination request are granted
Granting a request for reexamination is not automatic. The standard for granting a reexamination request requires that a "significant new question" of patentability must be presented by the requestor. Since their inception in 2001, there have been 396 requests for *inter partes* reexamination requested at the USPTO. Of these, 354 have reached a decision about whether the reexamination request will be granted. Over this period, ninety-five percent of all *inter partes* reexam requests have been granted. With so few requests being denied (19), we reviewed each case where a reexamination was denied, and found that the effective denial rate may actually be overstated. A number of the

INSTITUTE
*for*
PROGRESS

nineteen requests for reexamination that were denied are from a small number of inventions where multiple patent reexams were requested. Still others were not for utility patents, but were request for reexamination of design patents. It is fair to say that virtually all requests for *inter partes* reexamination are granted. Whatever threshold has been established by the Patent Office for determining a "significant new question" of patentability, few requestors have been unable to clear it.

The *inter partes* reexamination process is not linear
By tracing every single *inter partes* reexamination through the process, we were able to discover the path through reexamination that is actually followed by real patents in process. While the majority of patents follow the main sequence (Request → Grant → Non-final Office Action → ACP → Reexam Certificate), some cases skip steps, and others repeat steps multiple times. For example, some reexams skip over multiple steps and proceed quickly to a Reexam Certificate. This happens most often when the patent holder fails to respond to the Patent Office within the statutory timeframe, and the PTO proceeds to issue a certificate. Still other times, patents repeat steps multiple times. About one-quarter of the time *inter partes* reexams include multiple "Non-final Office Actions", and about one-tenth of the time they receive multiple "Actions Closing Prosecution".

One-quarter of all *inter partes* reexam decisions are appealed, but none has ever proceeded through appeal to the end of the process
One of the major challenges in examining the *inter partes* reexam process is that very few cases have proceeded all the way through the process. Through mid-April 2008, only nineteen cases have ever proceeded past the Notice of Right to Appeal. Of these, approximately one-quarter (5 cases - 26%) have been appealed to the Board of Patent Appeals and Interferences (BPAI), one case (~5%) went back for another Action Closing Prosecution, and the remaining 13 cases (68%) moved on to "Intent to Issue a Reexam Certificate".

Of the cases that have gone on to appeal, only three have received a decision by the BPAI. None of the three decisions represents a final decision by the BPAI that can be appealed to the Federal Circuit as in each case, the Board added new grounds for rejection and remanded the cases to the Patent Office for further action. None of the three cases has reached a final Reexamination Certificate, and it has taken 4, 4, and 5 years for the cases to get to the initial BPAI decision.

The average pendency of 28.5 months reported by the USPTO is highly skewed
The USPTO regularly publishes statistics about *inter partes* reexaminations. According to their latest publication (December 31, 2007), the average pendency (Filing date to certificate issue date) is 28.5 months. This calculation is based on only 12 *inter partes* reexaminations that had reached a final certificate by that date. In our analysis which is up to date as of April 16, 2008, we found 16 reexaminations that had reached a final

INSTITUTE
for
PROGRESS

certificate.  Our calculation of average pendency for those cases was only slightly longer at 30.1 months.

However, in carefully examining the 16 cases that have received final certificates, we note that 10 of the completed reexams skipped directly from the "First Non-final Action" to the "Intent to Issue a Reexam Certificate".  Upon closer inspection, each of these cases skipped multiple steps because the patent owner failed to respond to the office action.  The average pendency of these cases was 24 months, while the average for the remaining six cases that followed the basic process (Non-final Action → ACP → Right of Appeal → Notice of Intent to Issue a Reexam Certificate → Reexam Certificate) was ~39 months.  It should be noted that NONE of the cases that have received a final Reexam Certificate have gone to appeal.

While mathematically accurate, the pendency statistic provided by the USPTO is highly misleading.  An appropriate reading of the statistic is that the Patent Office takes two years to dispose of a patent through *inter partes* reexam if the patent holder doesn't care to defend its rights.  It takes significantly longer to get to a resolution if the patent holder participates in the process.

Average pendency for an un-appealed *inter partes* reexam is more than 3.5 years
Given the small number of cases that have proceeded through the *inter partes* reexam process, a more appropriate way to estimate average pendency is to calculate the time required for cases to proceed through each step in the process and sum them up.  We calculated an average time and a 95% confidence interval for each step in the main sequence.  Based on our calculations, it takes more than 3 ½ years (43.5 months) for the average case to proceed through the basic reexam process to a final conclusion – this assumes that the case is not appealed to the BPAI or beyond.  A 95% confidence interval suggests a range of between 34 and 53 months for average pendency for an un-appealed *inter partes* reexam.

Expected pendency for appealed *inter partes* reexams is at least 6.5 years
*Inter partes* cases that go through the appeal process can be expected to take much longer than the 3 ½ years described above.  Calculating average pendency for appealed cases is difficult because as we have noted, there has never been an appealed *inter partes* case that has completed the process.  However, if we make a conservative assumption that all cases that go through the appeal process will receive a decision by the BPAI and immediately move to"Intent to Issue a Reexam Certificate", then we can calculate an average expected pendency.  The result of this calculation is that average pendency (assuming no "rework" by the patent office and no secondary appeals to the BPAI, the Federal Circuit, or the Supreme Court) is 78.4 months – slightly longer than 6.5 years.  A 95% confidence interval suggests an average pendency for appealed cases (again, assuming no rework) is between 5 and 8 years (60-97 months)!  Given that the only three *inter partes* reexam cases that have received a BPAI decision all require further "rework" and are subject to further appeal, these estimates may be highly conservative.



According to statute, reexam cases are to be handled with "special dispatch". This means that reexam cases are to receive priority over all other cases. The Patent Office has reportedly set a target of 24 months to complete the reexam process, but so far, the actual time to conclude an *inter partes* reexam is far beyond this target. This can not help but raise significant concern to anyone who is interested in the efficient administration of justice in the U.S. patent system.

**Conclusion**

The *inter partes* reexam process requires special attention by the U.S. Patent Office. At present, the time to complete these cases far exceeds the expectation of "special dispatch" embodied in the patent statute. Federal judges, administrative law judges, and litigants should take special note of these facts as they can significantly impact the progress of patent litigation.

**About the Authors:**

**Mark Blaxill** and **Ralph Eckardt** are founding Fellows of the Institute for Progress, and authors of the upcoming book The Invisible Edge: Taking Your Strategy to the Next Level Using Intellectual Property (Portfolio, March 2009). They are managing partners of 3LP Advisors, an investment advisory firm focused on intellectual property transactions. Blaxill is a former vice president of The Boston Consulting Group (BCG) and was head of its Strategy practice initiative. Eckardt is the former head of BCG's Intellectual Property Strategy practice.

**Your service request was successfully submitted!**
**Please Print A Copy For Your Records**

Date Submitted: 2/17/11 7:54 AM.

Pending Request Confirmation Number: CAB1683793.

Please review your service request details below, and print out a
copy of them for your reference.

An email has been sent to danderson@goodwinprocter.com as
confirmation that your request was received and is PENDING
PROCESSING. Within 2 business days, you will receive a FINAL
EMAIL confirming successful completion of your payment.

**If you do not receive your email confirmation within 2
business day, please contact us at HOA@CABanc.com**

Your Service Request details:

| | |
|---|---|
| Request Type | E-Check Payment |
| Request ID | CAB1683793 |
| First_Name | Denise |
| Last_Name | Anderson |
| Billing_Address | 8012 Lakecrest Drive |
| Billing_City | Greenbelt |
| Billing_State | MD |
| Billing_Zip | 20770 |
| Phone_Area | 301 |
| Phone_Prefix | 345 |
| Phone_Suffix | 0262 |
| Email | danderson@goodwinprocter.com |
| Property_Address | |
| Property_City | |
| Property_State | |
| Property_Zip | |
| Management_Company_ID | 7060 |
| Association_ID | 000092 |
| Association_Name | Charlestowne Village Condominium |
| Management_Company | C/O CVI |
| Association_Account_Number | 000-92LD-8012-02 |
| ACH_Name | Denise J Anderson |
| ACH_Amount | $334.00 |
| ACH_Account_Number | 1010131154306 |

home check payment screen
Case 3:09-cv-00620-REP   Document 639-1   Filed 03/28/11   Page 61 of 95 PageID# 16728
Page 2 of 2

| ACH_Bank_Name | Wachovia |
|---|---|
| ACH_Routing_Number | 054001220 |
| Total_Charge | $334.00 |

Please print this page for your records.

▸ **Print**        ▸ **Close**

Privacy Policy | Security Statement

# INSTITUTE for PROGRESS

*The rational voice on Intellectual Property*

# Reexamining
# Inter Partes Reexam

## April 2008

www.instituteforprogress.com



# Data Source and Method of Analysis

- All data was taken directly from the USPTO PAIR system
- Includes all Inter Partes Reexam cases and transactions listed through April 16, 2008
  - Includes 95/000,001 through 95/000,362 and 95/001,001 through 95/001,037 except for cases 95/001,007 and 95/001,025 for which there is no data in PAIR
  - Case 95/000,350 is excluded from timeline analysis since no date is recorded for "Receipt of Original Inter Partes Reexam Request"
- All transactions were downloaded from the Electronic File Wrapper, and were augmented with additional transactions from the Transaction History wherever missing elements were identified
- Obvious anomalies were corrected manually
  - For example:
    - "Receipt of Original Inter Partes Reexam Request" identified where missing
    - Many erroneous references to "Ex Parte Reexams" were reviewed and eliminated
    - Duplicate transactions (same case number, same transaction, same date) were eliminated
- Key milestones for each case were extracted along with their dates, and the analysis was performed on these transactions

2

# Requests for Inter Partes Reexams have been Rising Rapidly



Request for Inter Partes Reexams by Year of Request

In 2007, there were ~6 times as many inter partes reexam requests as in 2003

(1)   Actual through 4/16/2008, Forecast equals (108 days/365 days) X 44 reexam requests to date
Note:   Reexam requests are based on calendar years rather than fiscal years as generally reported by the USPTO
Source: USPTO PAIR Database; Institute for Progress analysis

3



# Virtually all Requests for Inter Partes Reexamination are Granted

4



Decisions on Request for Inter Partes Reexam

95% (333)   4% (15)   1% (4)   354

Reexam ordered   Reexam denied   Reexam vacated   Total Decisions

Among those rejected, several are for the same invention, and several others are design patents

Source:  USPTO PAIR Database; Institute for Progress analysis



Source: USPTO PAIR Database; Institute for Progress analysis




# ...Other Cases Repeat Steps Multiple Times

All Inter Partes Reexams through April 16, 2008

Inter Partes Reexam Including Repeated Steps



Source: USPTO PAIR Database; Institute for Progress analysis

# Flow of Cases through the USPTO Inter Partes Reexamination Process

All Inter Partes Reexams through April 16, 2008



## Overview of Inter Partes Reexam Process



Note: Three other paths are not included on chart – A to F - 1,0%; A to G - 1,0%; B to G - 1,1%
Source: USPTO PAIR Database; Institute for Progress analysis




Correction of Inter Partes Reexam Requests INSTITUTE for PROGRESS
Jumped in 2006, and has Subsided Since

Percent of Inter Partes Reexam Requests Requiring Correction

9

Source:  USPTO PAIR Database; Institute for Progress analysis



Seventy Percent of IPREs receive a 1st Office Action on the Same Day as the Reexam is Ordered

**Distribution of IPRE Cases: Days between Reexam Order and 1st Office Action**



Source: USPTO PAIR Database; Institute for Progress analysis



The USPTO Reports an Average Pendency of 28.5 Months; This Estimate is Skewed by Cases that have Skipped Steps

*Institute for Progress*

Path taken by I-P Reexams that have received a Reexam Certificate

The 16 Inter Partes Reexams that have received a final certificate made it through the case because they skipped steps
- In 10 of 16 cases, the patent holder did not respond to an office action
- None of the patent holders appealed the decision

The low average pendency that the USPTO reports is driven by the cases that skipped steps
- Pendency for the 10 cases that skipped steps was ~24 months
- Pendency for the 6 cases that went through ACP and Right of Appeal was ~39 months

**Key:**
| Step | # — Number of reexams leaving step on this path |
| | % — Percent of reexams leaving step on this path |
Arrow coloring: ⟶ Normal sequence  ⟶ Skipped steps

Note:   The 16 cases here include all cases receiving a Reexam Certificate through April 16, 2008. The most recent data published by the USPTO includes only 12 cases through the end of their fiscal year (9/30/2007). The average pendency of these 16 cases is slightly longer (30.1 months) than the USPTO's statistic based on 12 cases.

Source:   USPTO PAIR Database; Institute for Progress analysis

11

The Normal IPRE Process Takes Much Longer than the USPTO's 28.5 Months – even without an appeal

INSTITUTE for PROGRESS

12



Timeline of Inter Partes Reexams Without Appeal

95% Confidence Interval
Upper Bound
Lower Bound
Mean

Request - Decision — 2.4 ± 0.1
Decision - 1st Office Action — 1.7 ± 0.5
1st Office Action - 1st ACP — 15.8 ± 1.8
1st ACP - Right of Appeal — 9.8 ± 1.6
Right of Appeal - Intent to Issue — 7.7 ± 3.7
Intent to Issue - Certificate Issued — 6.2 ± 1.7
Total — 43.5 ± 9.4

0   10   20   30   40   50   60 Months

Without an appeal, the average expected pendancy period for inter partes reexams is between 34 and 53 months

Source:  USPTO PAIR Database; Institute for Progress analysis

# With an Appeal, the IPRE Process Takes at least Five to Eight Years

This Estimate Dos Not Include "Rework" and Secondary Appeals



INSTITUTE for PROGRESS

## Timeline of Inter Partes Reexams With Appeal



95% Confidence Interval

Lower Bound — Upper Bound

Mean

| Stage | Value |
|---|---|
| Request - Decision | 2.4 ± 0.1 |
| Decision - 1st Office Action | 1.7 ± 0.5 |
| 1st Office Action - 1st ACP | 15.8 ± 1.8 |
| 1st ACP - Right of Appeal | 9.8 ± 1.6 |
| Right of Appeal - Appeal Docketed | 28.9 ± 6.4 |
| Appeal Docketed - BPAI Decision | 6.0 ± 2.3 |
| BPAI Decision - Intent to Issue [1] | 7.7 ± 3.7 |
| Intent to Issue - Certificate Issued | 6.2 ± 1.7 |
| Total | 78.4 ± 18.1 plus ? |

*Nobody knows how long a case may spend in "rework" or secondary appeal"*
*No IPRE case has ever reached this stage*

0   20   40   60   80   100 Months

With an appeal, the pendancy period for inter partes reexams is AT LEAST 60 to 97 months (5-8 years!) ...and that doesn't include "rework" after an appeal or secondary appeals

(1) Assumes the same time from BPAI Decision – Intent to Issue as for Right of Appeal – Intent to Issue
Source: USPTO PAIR Database; Institute for Progress analysis

# How Far Have the Inter Partes Reexams Gotten?
# Where Does the Work-In-Process Sit?
All Inter Partes Reexams through April 16, 2008

INSTITUTE for PROGRESS

## IPRE Cases by Year of Original Request and Last Step COMPLETED

**Original Request for Inter Partes Rexam**
'07 – 5
'08 – 23
Tot – 28

**Reexam Ordered**
'05 – 2
'06 – 12
'07 – 34
'08 – 4
Tot – 52

**Non-Final Action**
'03 – 2
'04 – 10
'05 – 11
'06 – 40
'07 – 72
'08 – 12
Tot – 147

**Action Closing Prosecution**
'02 – 1
'03 – 2
'04 – 6
'05 – 10
'06 – 22
'07 – 9
Tot – 50

**Appeal Docketed**
'03 – 2
Tot – 2

**BPAI Decision**
'02 – 1
'03 – 2
Tot – 3

**Court of Appeals**

**Corrected Request for Inter Partes Reexam**
'07 – 7
'08 – 5
Tot – 12

**Reexam Denied**
'05 – 3
'07 – 6
Tot – 9

**Reexam Order Vacated**
'03 – 2
'07 – 1
Tot – 3

**Reexam Terminated**
'05 – 3
'06 – 4
'07 – 3
Tot – 10

**Right of Appeal Notice**
'02 – 3
'03 – 8
'04 – 14
'05 – 13
'06 – 7
'07 – 2
Tot – 47

**Intent to Issue Certificate**
'03 – 4
'04 – 2
'05 – 3
'06 – 4
'07 – 3
Tot – 16

**Reexam Certificate Issued**
'01 – 2
'02 – 1
'03 – 2
'04 – 5
'05 – 3
'06 – 3
Tot – 16

Source: USPTO PAIR Database; Institute for Progress analysis

# Patents that go through Inter Partes Reexam are fairly young





Source: USPTO PAIR database, Grant Dates from Micropatent, Institute for Progress analysis

INSTITUTE
*for*
PROGRESS

# About the authors

**Mark Blaxill** and **Ralph Eckardt** are founding Fellows of the Institute for Progress, and authors of the upcoming book The Invisible Edge: Taking Your Strategy to the Next Level Using Intellectual Property (Portfolio, March 2009). They are managing partners of 3LP Advisors, an investment advisory firm focused on intellectual property transactions. Blaxill is a former vice president of The Boston Consulting Group (BCG) and was head of its Strategy practice initiative. Eckardt is the former head of BCG's Intellectual Property Strategy practice.

16

# EXHIBIT G



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

_Ex Parte_ Reexamination Filing Data  -  December 31, 2010

1.  Total requests filed since start of *ex parte* reexam on 07/01/81 ................................. 11211[1]

|   |   |   |
|---|---|---|
| a. By patent owner | 3715 | 33% |
| b. By other member of public | 7331 | 66% |
| c. By order of Commissioner | 165 | 1% |

2.  Number of filings by discipline

|   |   |   |
|---|---|---|
| a. Chemical Operation | 3104 | 28% |
| b. Electrical Operation | 4106 | 37% |
| c. Mechanical Operation | 3824 | 34% |
| d. Design Patents | 177 | 1% |

3.  Annual *Ex Parte* Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 643 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | 2008 | 680 |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | 2009 | 658 |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | 2010 | 780 |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | 2011YTD | 188 |
| 1988 | 268 | 1996 | 418 | 2004 | 441 |   |   |

4.  Number known to be in litigation................…….…….................. .3639..............32%

5.  Decisions on requests.........................................................................10705

   a.  No. granted...................................................…..9835..............92%

   |   |   |
   |---|---|
   | (1) By examiner | 9720 |
   | (2) By Director (on petition) | 115 |

   b.  No. denied ..................................................……..870..............8%

   |   |   |
   |---|---|
   | (1) By examiner | 835 |
   | (2) Reexam vacated | 35 |

---

[1]Of the requests received in FY 2011, 7 requests have not yet been accorded a filing date, and preprocessing of 6 requests was terminated for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

1

6.   Total examiner denials (includes denials reversed by Director)……………........................950

    a.  Patent owner requester                   455       48%
    b.  Third party requester                    495       52%

7.   Overall reexamination pendency (Filing date to certificate issue date)

    a.  Average pendency           25.6 (mos.)
    b.  Median pendency           20.0 (mos.)

8.   Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 21% | 24% | 12% | 23% |
| b. All claims cancelled | 9% | 13% | 23% | 12% |
| c. Claims changes | 70% | 63% | 65% | 65% |

9.   Total *ex parte* reexamination certificates issued (1981 – present) ……………………….7952

    a.  Certificates with all claims confirmed    1843    23%
    b.  Certificates with all claims canceled    914    12%
    c.  Certificates with claims changes    5195    65%

10.  Reexam claim analysis – requester is patent owner or 3rd party or Commissioner initiated.

    a.  Certificates – PATENT OWNER REQUESTER ………………………………...2971

       (1) All claims confirmed    641    21%
       (2) All claims canceled    257    9%
       (3) Claim changes    2073    70%

    b.  Certificates – 3rd PARTY REQUESTER …………………………………………...4826

       (1) All claims confirmed    1184    24%
       (2) All claims canceled    622    13%
       (3) Claim changes    3020    63%

    c.  Certificates – COMMISSIONER INITIATED REEXAM …………….………......155

       (1) All claims confirmed    18    12%
       (2) All claims canceled    35    23%
       (3) Claim changes    102    65%

# EXHIBIT H

CITATION OF PRIOR ART AND EX PARTE REEXAMINATION OF PATENTS          2201

\*\*>



**Ex Parte** Reexamination - PROCEDURE PRIOR TO APPEAL
(applicable rule section)

### *Ex Parte* Reexamination – PROCEDURE FROM TIME OF APPEAL
(applicable rule section)



## EX PARTE REEXAMINATION TIME LINE (USE WITH MPEP FLOWCHART)

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| 1. | Request for Reexamination filed | **37 CFR § 1.510 Request for *ex parte* reexamination.** | |
| 2. | Notice of request Published in Official Gazette | **37 CFR § 1.11 Files open to the public.** | |
| 3. | Reexamination ordered | **37 CFR § 1.525 Order for *ex parte* reexamination.** | |
| 4. | Patent Owner statement | **37 CFR § 1.530 Statement by patent owner in *ex parte* reexamination; amendment by patent owner in *ex parte* reexamination.**<br><br>(b) The order for *ex parte* reexamination will set a period of not less than two months from the date of the order within which the patent owner may file a statement on the new question of patentability, including any proposed amendments the patent owner wishes to make. | 2 months or more from date of the order |
| 5. | Third Party Requester reply | **37 CFR § 1.535 Reply by third party requester in *ex parte* reexamination.**<br>A reply to the patent owner's statement under § 1.530 may be filed by the *ex parte* reexamination requester within two months from the date of service of the patent owner's statement. Any reply by the *ex parte* requester must be served upon the patent owner in accordance with § 1.248. If the patent owner does not file a statement under § 1.530, no reply or other submission from the *ex parte* reexamination requester will be considered. | within 2 months of service of patent owner's statement |
| 6. | Examiner issues Office Action | **37 CFR § 1.104 Nature of examination.** | time period varies (can be over one year) |

1

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| 7. | Patent Owner response after non-final action | **37 CFR § 1.550   Conduct   of   *ex   parte*   reexamination proceedings.** <br> (b) The patent owner in an *ex parte* reexamination proceeding will be given at least thirty days to respond to any Office action. In response to any rejection, such response may include further statements and/or proposed amendments or new claims to place the patent in a condition where all claims, if amended as proposed, would be patentable. <br> (c) The time for taking any action by a patent owner in an *ex parte* reexamination proceeding will be extended only for sufficient cause and for a reasonable time specified. Any request for such extension must be filed on or before the day on which action by the patent owner is due, but in no case will the mere filing of a request effect any extension. Any request for such extension must be accompanied by the petition fee set forth in § 1.17(g). <br> (d) If the patent owner fails to file a timely and appropriate response to any Office action or any written statement of an interview required under § 1.560(b), the prosecution in the *ex parte* reexamination proceeding will be a terminated prosecution, and the Director will proceed to issue and publish a certificate concluding   the   reexamination   proceeding   under   § 1.570   in accordance with the last action of the Office. | 30 days – 6 months |
| 8. | Examiner issues final rejection | **37 CFR § 1.113 Final rejection or action.** | time period varies (can be over one year) |
| 9. | Patent Owner paper after final rejection | **MPEP § 2272.I**  The statutory period for response to a final rejection in a reexamination proceeding will normally be two (2) months. If a response to the final rejection is filed, the time period set in the final rejection continues to run. The time period is | within 2 months of final rejection |

2

| Step No. | Step in *Ex Parte* Reexam Flow Chart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | automatically extended by 1 month (in accordance with the guidelines set forth in MPEP § 2265) if the response is the first response after the final rejection and a notice of appeal has not yet been filed. Any advisory Office action using form PTOL-467, Ex Parte Reexamination Advisory Action Before the Filing of an Appeal Brief, which is issued in reply to patent owner's response after final rejection (and prior to the filing of the notice of appeal) will inform the patent owner of the automatic 1 month extension of time. It should be noted that the filing of any timely first response to a final rejection (even an informal response or even a response that is not signed) will automatically result in the extension of the shortened statutory period for an additional month. Note further that the patent owner is entitled to know the examiner's ruling on a timely response filed after final rejection before being required to file a notice of appeal. Notification of the examiner's ruling should reach the patent owner with sufficient time for the patent owner to consider the ruling and act on it. Accordingly, the period for response to the final rejection should be appropriately extended in the examiner's advisory action. See Theodore Groz & Sohne & Ernst Bechert Nadelfabrik KG v. Quigg, 10 USPQ2d 1787 (D.D.C. 1988). The period for response may not, however, be extended to run past 6 months from the date of the final rejection.<br><br>**MPEP § 2272.II** The practice of giving the patent owner a time period to supply an omission in a bona fide response (as set forth in MPEP § 2266.01) does not apply after a final Office action. If a bona fide response to an examiner's action is filed after final rejection (before the expiration of the permissible response period), but through an apparent oversight or inadvertence, some point necessary to fully respond has been omitted, the examiner | |

| Step No. | Step in Ex Parte Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | should not issue (to the patent owner) a notice of failure to fully respond. Rather, an advisory Office action (form PTOL-467) should be issued with an explanation of the omission. | |
| | | **37 CFR § 1.116 Amendments and affidavits or other evidence after final action and prior to appeal.** | time period varies |
| 10. | Examiner considers the paper and may reopen prosecution; Patent Owner may submit amendments, affidavits and other evidence after final Office Action and prior to appeal | | |
| 11. | *[If Examiner does not reopen prosecution–]* Patent Owner files Notice of Appeal | **37 CFR § 41.31 Appeal to Board.** (3) Every owner of a patent under *ex parte* reexamination filed under § 1.510 of this title on or after November 29, 1999, any of whose claims has been finally (§ 1.113 of this title) rejected, may appeal from the decision of the examiner to the Board by filing a notice of appeal accompanied by the fee set forth in § 41.20(b)(1) within the time period provided under § 1.134 of this title for reply.

**37 CFR § 1.134 Time period for reply to an Office action.** An Office action will notify the applicant of any non-statutory or shortened statutory time period set for reply to an Office action. Unless the applicant is notified in writing that a reply is required in less than six months, a maximum period of six months is allowed.

**MPEP § 2273 Appeal in *Ex Parte* Reexamination** The period for filing the notice of appeal is the period set for response in the last Office action which is normally 2 months. The timely filing of a first response to a final rejection having a shortened statutory period for response is construed as including a request to extend the period for response an additional month, | within 2-6 months |

4

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | even if an extension has been previously granted, as long as the period for response does not exceed 6 months from the date of the final rejection. The normal *ex parte* appeal procedures set forth at 37 CFR § 41.31 through 37 CFR § 41.54 apply in *ex parte* reexamination, except as pointed out in this Chapter. A third party requester may not appeal or otherwise participate in the appeal. | |
| 12. | Patent Owner files Appeal Brief | **37 CFR § 41.37 Appeal brief.** <br><br> **(a)(1)** Appellant must file a brief under this section within two months from the date of filing the notice of appeal under § 41.31. <br><br> **(e)** The time periods set forth in this section are extendable under the provisions of § 1.136 of this title for patent applications and § 1.550(c) of this title for *ex parte* reexamination proceedings. <br><br> **37 CFR § 1.550 Conduct of *ex parte* reexamination pro-ceedings.** <br><br> **(c)** The time for taking any action by a patent owner in an *ex parte* reexamination proceeding will be extended only for sufficient cause and for a reasonable time specified. Any request for such extension must be filed on or before the day on which action by the patent owner is due, but in no case will the mere filing of a request effect any extension. Any request for such extension must be accompanied by the petition fee set forth in § 1.17(g). See § 1.304(a) for extensions of time for filing a notice of appeal to the U.S. Court of Appeals for the Federal Circuit or for commencing a civil action. <br><br> **MPEP 2274.III. EXTENSION OF TIME FOR FILING APPEAL BRIEF** <br><br> In the event that the patent owner finds that he or she is unable to file a brief within the time allowed by the rules, he or she may file | within 2 months of Notice of Appeal, but extendable under 1.550(c). |

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | a petition with the appropriate extension of time fee, to the Central Reexamination Unit (CRU) or Technology Center (TC), requesting additional time (usually 1 month), and give reasons for the request. The petition should contain the address to which the response is to be sent. If sufficient cause is shown and the petition is filed prior to the expiration of the period sought to be extended ( 37 CFR 1.550(c)), the CRU or TC Director is authorized to grant the extension for up to 1 month. Requests for extensions of time for more than 1 month will also be decided by the CRU or TC Director, but will not be granted unless extraordinary circumstances are involved; e.g., death or incapacitation of the patent owner. The time extended is added to the last calendar day of the original period, as opposed to being added to the day it would have been due when said last day is a Saturday, Sunday, or Federal holiday. | |
| 13. | Appeal Conference | | time period varies |
| 14. | *[if examiner does not change position to add new ground of rejection]* Examiner's Answer | **37 CFR § 41.39 Examiner's answer.** (a)(1) The primary examiner may, within such time as may be directed by the Director, furnish a written answer to the appeal brief including such explanation of the invention claimed and of the references relied upon and grounds of rejection as may be necessary, supplying a copy to appellant. If the primary examiner determines that the appeal does not comply with the provisions of §§ 41.31 and 41.37 or does not relate to an appealable action, the primary examiner shall make such determination of record. | time period varies (can range from two months to over a year) |
| 15. | Patent Owner files Reply Brief | **37 CFR § 41.41 Reply brief.** (a)(1) Appellant may file a reply brief to an examiner's answer within two months from the date of the examiner's answer. | within 2 months of Examiner's Answer, extendable for good cause |

6

| Step No. | Step in *Ex Parte* Reexam Flow Chart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | (e) Extensions of time under § 1.136 (a) of this title for patent applications are not applicable to the time period set forth in this section. See § 1.136 (b) of this title for extensions of time to reply for patent applications and § 1.550 (c) of this title for extensions of time to reply for *ex parte* reexamination proceedings. | shown |
| 16. | *[if Examiner still does not reopen prosecution—]* Acknowledge Reply Brief | **37 CFR § 41.43 Examiner's response to reply brief.** **(a)(1)** After receipt of a reply brief in compliance with § 41.41, the primary examiner must acknowledge receipt and entry of the reply brief. In addition, the primary examiner may withdraw the final rejection and reopen prosecution or may furnish a supplemental examiner's answer responding to any new issue raised in the reply brief. | time period varies |
| 17. | Request for Oral Hearing (not shown in flow chart) | **37 CFR § 41.47** | within 2 months after Examiner's Answer or Supplemental Examiner's Answer |
| 18. | Oral Hearing Before BPAI (not shown in flow chart) | **37 CFR § 41.47** | timing varies; typically within 6-12 months after filing of request for oral hearing |
| 19. | Board Decision The Board may: (1) affirm the Examiner's decision (2) reverse the Examiner's decision | **37 CFR § 41.50 Decisions and other actions by the Board.** | time period varies |

7

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | (3) remand the proceeding to the Examiner for further consideration; or<br><br>(4) provide a new ground of rejection | | |
| | [*if Board Decision is adverse to Patent Owner*] | | |
| 20. | Patent Owner requests rehearing<br><br>[*Loop back to Board Decision*] | **37 CFR § 41.50 Decisions and other actions by the Board.** **(b)** Should the Board have knowledge of any grounds not involved in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, which statement constitutes a new ground of rejection of the claim. A new ground of rejection pursuant to this paragraph shall not be considered final for judicial review. When the Board makes a new ground of rejection, the appellant, within two months from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claims:<br>    **(2)** Request rehearing. Request that the proceeding be reheard under § 41.52 by the Board upon the same record. The request for rehearing must address any new ground of rejection and state with particularity the points believed to have been misapprehended or overlooked in entering the new ground of rejection and also state all other grounds upon which rehearing is sought. | Within 2 months of Board Decision |
| 21. | OR<br><br>Patent Owner Amendment and/or Showing of new | **37 CFR § 41.50 Decisions and other actions by the Board.** **(b)** Should the Board have knowledge of any grounds not involved in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, | Within 2 months of Board Decision |

8

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | evidence | which statement constitutes a new ground of rejection of the claim. A new ground of rejection pursuant to this paragraph shall not be considered final for judicial review. When the Board makes a new ground of rejection, the appellant, within two months from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claims:<br><br>(1) Reopen prosecution. Submit an appropriate amendment of the claims so rejected or new evidence relating to the claims so rejected, or both, and have the matter reconsidered by the examiner, in which event the proceeding will be remanded to the examiner. The new ground of rejection is binding upon the examiner unless an amendment or new evidence not previously of record is made which, in the opinion of the examiner, overcomes the new ground of rejection stated in the decision. Should the examiner reject the claims, appellant may again appeal to the Board pursuant to this subpart. | |
| 22. | OR<br><br>Patent Owner appeals to Federal Circuit<br><br>*[Reexam Certificate issues only upon Court Decision]* | **37 CFR § 1.301 Appeal to U.S. Court of Appeals for the Federal Circuit.**<br>Any applicant, or any owner of a patent involved in any *ex parte* reexamination proceeding filed under § 1.510, dissatisfied with the decision of the Board of Patent Appeals and Interferences, and any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences, may appeal to the U.S. Court of Appeals for the Federal Circuit. The appellant must take the following steps in such an appeal: In the U. S. Patent and Trademark Office, file a written notice of appeal directed to the Director (§§ 1.302 and 1.304); and in the Court, file a copy of the notice of appeal and pay the fee for appeal as provided by the rules of the Court. For appeals by patent owners and third party requesters in *inter partes* reexamination proceedings filed under § | Within 2 months of Board Decision |

9

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | 1.913, § 1.983 is controlling.<br><br>**37 CFR § 1.304 Time for appeal or civil action.**<br>(a)(1) The time for filing the notice of appeal to the U.S. Court of Appeals for the Federal Circuit (§ 1.302) or for commencing a civil action (§ 1.303) is two months from the date of the decision of the Board of Patent Appeals and Interferences. If a request for rehearing or reconsideration of the decision is filed within the time period provided under § 41.52(a), § 41.79(a), or § 41.127(d) of this title, the time for filing an appeal or commencing a civil action shall expire two months after action on the request. In contested cases before the Board of Patent Appeals and Interferences, the time for filing a cross-appeal or cross-action expires:<br>(i) Fourteen days after service of the notice of appeal or the summons and complaint; or<br>(ii) Two months after the date of decision of the Board of Patent Appeals and Interferences, whichever is later.<br>(2) The time periods set forth in this section are not subject to the provisions of § 1.136, § 1.550(c), or § 1.956, or of § 41.4 of this title.<br>(3) The Director may extend the time for filing an appeal or commencing a civil action:<br>(i) For good cause shown if requested in writing before the expiration of the period for filing an appeal or commencing a civil action, or<br>(ii) Upon written request after the expiration of the period for filing an appeal or commencing a civil action upon a showing that the failure to act was the result of excusable neglect.<br>(b) The times specified in this section in days are calendar days. The time specified herein in months are calendar months except that one day shall be added to any two-month period which | |

10

| Step No. | Step in *Ex Parte* Reexam Flow Chart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
| | | includes February 28. If the last day of the time specified for appeal or commencing a civil action falls on a Saturday, Sunday or Federal holiday in the District of Columbia, the time is extended to the next day which is neither a Saturday, Sunday nor a Federal holiday.<br><br>**MPEP § 2279  Appeal to Courts**<br><br>In an *ex parte* reexamination filed on or after November 29, 1999, the patent owner may appeal the decision of the Board of Patent Appeals and Interferences only to the United States Court of Appeals for the Federal Circuit pursuant to 35 U.S.C. 141. This is based on the current version of 35 U.S.C. 141 and 35 U.S.C. 145 as they were amended by Public Law 106-113. This "current version" of 35 U.S.C. 141 and 35 U.S.C. 145 applies to appeals in reexamination, where the reexamination was filed in the Office on or after November 29, 1999. See Section 13202(d) of Public Law 107-273.<br><br>A third party requester of an *ex parte* reexamination may not seek judicial review. Yuasa Battery v. Comm'r, 3 USPQ2d 1143 (D.D.C. 1987).<br><br>While the reexamination statutory provisions do not provide for participation by any third party requester during any court review, the courts have permitted intervention by a third party requester in appropriate circumstances. See In re Etter, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985) and Reed v. Quigg, 230 USPQ 62 (D.D.C. 1986). See also MPEP § 1216, § 1216.01, and § 1216.02. A third party requester who is permitted to intervene in a civil action has no standing to appeal the court's decision, Boeing Co. v. | |

11

| Step No. | Step in *Ex Parte* Reexam FlowChart | Relevant Statute or Rules | Time Period |
|---|---|---|---|
|  |  | Comm'r, 853 F.2d 878, 7 USPQ2d 1487 (Fed. Cir. 1988). |  |

12