515

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                 RICHMOND DIVISION

3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                      :
4    ePLUS, INC.,                     :
                                      :
5                      Plaintiff,     :
     v.                               :  Civil Action
6                                     :  No. 3:09CV620
     LAWSON SOFTWARE, INC.,           :
7                                     :  January 6, 2011
                       Defendant.     :
8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

10

11          COMPLETE TRANSCRIPT OF **JURY TRIAL**
          BEFORE THE HONORABLE ROBERT E. PAYNE
12       UNITED STATES DISTRICT JUDGE, AND A JURY

13

14

15    APPEARANCES:

16    Scott L. Robertson, Esq.
      Jennifer A. Albert, Esq.
17    **Michael T. Strapp, Esq.**
      **David M. Young, Esq.**
18    GOODWIN PROCTOR
      901 New York Avenue, NW
19    Washington, D.C.   20001

20    Craig T. Merritt, Esq.
      CHRISTIAN & BARTON
21    909 E. Main Street, Suite 1200
      Richmond, VA   23219-3095
22
              Counsel for the plaintiff ePlus
23

24
              DIANE J. DAFFRON, RPR
25           OFFICIAL COURT REPORTER
           UNITED STATES DISTRICT COURT

1    APPEARANCES:   (Continuing)

2    Daniel W. McDonald, Esq.
     **Kirstin L. Stoll-DeBell, Esq.**
3    **William D. Schultz, Esq.**
     MERCHANT & GOULD
4    3200 IDS Center
     80 South Eighth Street
5    Minneapolis, MN   55402-2215

6    Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
7    Troutman Sanders Building
     1001 Haxall Point
8    P.O. Box 1122
     Richmond, VA   23218-1122

9
          Counsel for the defendant Lawson Software.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

517

1            (The proceedings in this matter commenced at

2      9:20 a.m.)

3            THE CLERK:  Civil Action No. 3:09CV00620,

4      ePlus, Incorporated v. Lawson Software, Incorporated.

5      Mr. Scott L. Robertson, Mr. Craig T. Merritt,

6      Ms. Jennifer A. Albert, Mr. Michael T. Strapp, and Mr.

7      David M. Young represent the plaintiff.

8            Mr. Daniel W. McDaniel, Mr. Dabney J. Carr,

9      IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D.

10     Schultz represent the defendant.

11           Are counsel ready to proceed?

12           MR. ROBERTSON:  Yes, Your Honor.

13           MR. McDONALD:  Yes, Your Honor.

14           THE COURT:  All right.  Thank you very much.

15           I apologize for keeping you-all waiting this

16     morning.  I had a mechanical malfunction that I needed

17     to attend to, and I'm not very mechanically oriented.

18           All right, Mr. Robertson.

19           Dr. Weaver, I remind you you're under the

20     same oath which you took yesterday.

21           THE WITNESS:  Yes, Your Honor.

22     BY MR. ROBERTSON:  (Continuing)

23     Q   Good morning, Dr. Weaver.

24     A   Good morning.

25     Q   If we could have Plaintiff's Exhibit No. 1 back up

1    on the screen again, the '683 patent, the cover page

2    here.

3        Dr. Weaver, the jurors have seen this exhibit now

4    several times and it's in their jury notebooks.  This

5    is at tab 2.  Can you just tell us what is the title

6    of the patent?

7    A    Electronic Sourcing System and Method.

8    Q    Has the Court defined the term "electronic

9    sourcing system"?

10   A    Yes, it has.

11   Q    What's your understanding as to what that

12   construction is?

13   A    In the glossary of claim terms, the "electronic

14   sourcing system" has been defined by the Court to be

15   an electronic system for use by a prospective buyer to

16   locate and find items to purchase from sources,

17   suppliers or vendors.

18   Q    What is your understanding of what a source is,

19   sir?

20   A    A source would be a vendor or a manufacturer or a

21   distributor.

22   Q    In the Court's construction of the claim term

23   "catalog" or "product catalog," how does the Court

24   define what a vendor can be?

25   A    The vendor, in the Court's construction, a vendor

1  would include suppliers, manufacturers, and

2  distributors.

3  Q    Did you apply those terms when you conducted your

4  infringement analysis?

5  A    Yes, I did.

6  Q    Just what's your understanding at a high level

7  overview of what these patents are about, sir?

8  A    The invention in the patents is to bring together

9  electronic technology so that we can have electronic

10 catalogs.  They can be kept in a database.  They can

11 be searched.  Items could be found.  Items could be

12 selected.  Items could be put on a requisition, and

13 then the requisition could be turned into a purchase

14 order.  And then depending on which claims we're

15 talking about, there's also the capability of checking

16 on whether an item is available in inventory and

17 taking one item and finding generally similar items

18 that you might want to substitute.

19 Q    The title in the patent says, "Electronic Sourcing

20 System and Method."  So what's your understanding of

21 the term "method" in the title of the patent?

22 A    A method is a process.

23 Q    What types of processes are we talking about in

24 this electronic sourcing system?

25 A    So these are steps that a computer would follow.

WEAVER - DIRECT                      520

1  Q   Now, the Court's instructed the jury that it is

2  claims that define the property right, and it is the

3  claims that need to be examined in order to determine

4  the infringement and not embodiments from the

5  specifications, so they understand that.

6      So could we just take a specific look at a claim,

7  for example, so we can start to understand the claim

8  language in context.  And for that, I'd like to use

9  Claim Three of the '683 patent.  We have a

10 demonstrative for that.

11     Now, Dr. Weaver, was this a demonstrative created

12 at your direction?

13 A   Yes, it was.

14 Q   Is it a fair and accurate depiction of Claim Three

15 of the '683 patent?

16 A   Yes, it is.

17 Q   Why you have color-coded these separate claim

18 elements?

19 A   We're going to be going through the operation of

20 the patent and ultimately the Lawson system, and I

21 thought that since these claim terms are recurring

22 themes, it might be easier for us to understand it if

23 they were color-coded.  So, for instance, when we talk

24 about having multiple product catalogs, I've coded the

25 demonstratives in orange.  And if we're talking about

1  selecting product catalogs, I've colored them in

2  green, and so on.

3  Q    You have consistently applied this color scheme to

4  the claim elements throughout?

5  A    Yes.

6  Q    Now, you have conducted an analysis with respect

7  to the 12 claims that are being asserted in this case

8  in the three patents?

9  A    Yes.

10  Q    What I'd just like to do is just walk through

11  them.  I think you had the same juror notebook that

12  the jury has, but let's start with the first patent,

13  the '683 patent, under tab 2 in the jury notebook, and

14  you'll see there are yellow tabs on them.  If we could

15  go to the first yellow tab, which is at column 25 in

16  Claim Three.  Do you see that highlighted?

17  A    Yes, I do.

18  Q    That's the same Claim Three that you have

19  color-coded?

20  A    Yes.

21  Q    Also Claim 26 is at issue, correct?

22  A    Yes, it is.

23  Q    And Claim 28 is at issue, correct?

24  A    Correct.

25  Q    And Claim 29 is at issue, correct?

1    A    Correct.

2    Q    Let's just turn back to Claim Three for a second.

3    Is that a system claim or is that a method claim?

4    A    This is a system claim.

5    Q    Can you explain to the jury what you understand a

6    system claim to be?

7    A    So this is a claim about how an electronic

8    sourcing system operates and the characteristics that

9    it has.

10   Q    Is it the structure of the system?

11   A    Yes, it is.

12   Q    Claim 26 says it's a method comprising the steps

13   of.  Can you explain to the jury what your

14   understanding is of what a method claim is?

15   A    The method claim is a process, and these are the

16   elements of the claim that you see in 26 are the steps

17   that an electronic sourcing system would take a

18   computerized system.

19   Q    So these are steps that have to be performed,

20   these are the steps that have to be completed to

21   perform the method?

22   A    That is correct.

23   Q    Claim 28 is a method claim?

24   A    Yes, it is.

25   Q    Claim 29 says, The method of Claim 28 further

1    comprising the step of determining whether a selected

2    matching item is available in inventory.  Do you see

3    that?

4    A    I do.

5    Q    What's your understanding of the nature and type

6    of Claim 29?

7    A    Claim 29 is a dependent claim, and it depends upon

8    Claim 28.

9    Q    What does that mean in terms of our understanding

10   of the analysis that you're going to conduct?

11   A    That means that if we're to show infringement of

12   Claim 29, we must also show infringement of Claim 28.

13   Q    So in order to claim Claim 29 infringes, we'll

14   have to establish that a Lawson system performs all

15   the steps of Claim 28 along with the steps that are in

16   Claim 29; is that correct?

17   A    Yes, it is.

18   Q    To prove Claim 28 infringes, do we have to prove

19   Claim 29 infringes?

20   A    No.

21   Q    Can we prove that Claim 29 infringes without

22   proving Claim 28 infringes?

23   A    No.

24   Q    Thank you.

25        Why don't we go to tab 3, which is the '516

1    patent, and you'll see that is tabbed as well.  The

2    first claim appears at column 23.  Is that a system

3    claim or a method claim?

4    A    This is a system claim.

5    Q    And Claim Two is also at issue.  Do you see that?

6    A    I do.

7    Q    Is that one of the dependent claims you have just

8    explained?

9    A    Yes, it depends on Claim One.

10   Q    So we would need to establish that the accused

11   product that Lawson has all the elements of Claim One

12   including the element of Claim Two if we were to

13   establish that Claim Two infringes; is that right?

14   A    That's right.

15   Q    Claim Six is also a dependent claim; is that

16   right?

17   A    Yes.

18   Q    It depends from Claim One, do you see that?

19   A    Yes.

20   Q    To prove that Claim Six infringes then, we'd have

21   to prove all the elements of Claim One plus the

22   additional element of Claim Six; is that right?

23   A    Yes, it is.

24   Q    Would we have to prove that Claim Two infringes in

25   order to prove that Claim Six infringes?

1   A    No.

2   Q    Why is that?

3   A    Because Six is not dependent on Two.

4   Q    It's only dependent on Claim One?

5   A    It's only dependent on Claim One.

6   Q    Claim Nine, is that a dependent or independent

7   claim?

8   A    Independent.

9   Q    Is that a system or method?

10  A    System.

11  Q    Okay.  Claim 21 is also at issue.  Do you see

12  that?

13  A    Yes.

14  Q    And Claim 22 is at issue?

15  A    Yes.

16  Q    Both are system claims.  And, again, Claim 22 is

17  one of those the dependent claims; is that correct?

18  A    Yes, it is.

19  Q    Claim 29 is at issue, and that is also a system,

20  correct?

21  A    Yes.

22  Q    Finally, under tab 4, we have the '172 patent.

23  Only one asserted claim here, and that is Claim One,

24  and that starts at column 23.  Is that a system or a

25  method claim, sir?

1    A    This is a system claim.

2    Q    Does Claim One of the '172 patent actually recite

3    catalogs?

4    A    No, it has a database rather than catalogs.

5    Q    What does the database contain?

6    A    It's data relating to items from multiple vendors.

7    Q    So in that instance, would the Court's instruction

8    of catalog apply to Claim One of the '172 patent since

9    it doesn't recite that claim term?

10   A    No, it would not.

11   Q    And that would be for purposes of both

12   infringement and invalidity, correct?

13   A    Correct.

14   Q    Why don't we take a look at the color-coded scheme

15   for Claim 28.  That's 330193.  So you have also this

16   is a method claim that's in the '683 patent, and

17   you've color-coded this as well; is that right?

18   A    Correct.

19   Q    And the same color schemes for your Claim Three,

20   which is the system claim, correlate to the steps of

21   Claim 28?

22   A    Yes.

23   Q    Now, just referring back to Claim Three for a

24   minute, the electronic sourcing system, color-coded,

25   this has six elements, is that right, to comprise the

1    electronic sourcing system?

2    A    That's right.

3    Q    It uses the term "comprising."  Do you see that?

4    A    I do.

5    Q    What is your understanding of what the term

6    "comprising" means?

7    A    Including but not limited to.

8    Q    When you say "including but not limited to," does

9    that mean that in order to prove infringement, all of

10   these six elements need to be present in the accused

11   product, the Lawson S3 procurement system, but it may

12   have additional elements and that doesn't avoid

13   infringement?

14   A    That's correct.

15   Q    But we at least have to have these six; is that

16   right?

17   A    That's correct.

18   Q    But if I have 7, 8, 9 or even 100 additional

19   elements, is that relevant to the infringement

20   analysis?

21   A    No, only these six.

22   Q    So if we establish these six, the fact there are

23   other elements, doesn't avoid infringement; is that

24   your understanding?

25   A    That's correct.

1   Q    Could I just refer you back to the glossary, if I

2   could, as to the Judge's construction of "catalog."

3   Do you see that?

4   A    I do.

5   Q    Why don't we just read it out loud if we could

6   because I'm going to have some questions about that?

7   A    So a catalog or product catalog is defined to be

8   an organized collection of items and associated

9   information published by a vendor, which includes

10  suppliers, manufacturers, and distributors, which

11  preferably includes a part number, price, catalog

12  number, vendor name, vendor ID, a textual description

13  of the item, and images of or relating to the item.

14  Q    Now, it says "preferably includes."  What is your

15  understanding as to what the Court mean when it said

16  "preferably includes"?

17  A    That these are examples of data items that might

18  be there.

19  Q    Do they all have to be there under the Court's

20  construction?

21  A    No.

22  Q    It also indicates that it is an organized

23  collection of items and associated information

24  published by a vendor.  Do you see that?

25  A    I do.

1   Q    Does the Court's construction anywhere in it

2   indicate who has to select this organized collection

3   of items to be included as a catalog?

4   A    No.

5   Q    Does the Court's construction preclude anybody

6   from selecting this organized collection of items

7   available from vendors?

8   A    No.

9   Q    The Court also indicates in here that there can be

10  a textual description of the item.  Do you see that?

11  A    Sure.

12  Q    Does the Court's construction anywhere indicate

13  how detailed that description needs to be?

14  A    No, it does not.

15  Q    You've worked with electronic procurement systems

16  including the Lawson system, correct?

17  A    Yes, I have.

18  Q    Have you seen textual descriptions of the items in

19  those systems?

20  A    Many times.

21  Q    There's a certain number of characters that you

22  can enter in the entry system in the Lawson accused

23  product.  Do you understand that?

24  A    Yes.

25  Q    Does the Court's construction have anywhere in

1  there any kind of limitation on the number of

2  characters that can be included in the textual

3  description?

4  A    No.

5  Q    So the Court's construction says you have to have

6  a textual description, but it doesn't specify the

7  detail that's required; is that right?

8  A    Well, it doesn't even say you have to have a

9  textual description.  It's an example of a field that

10  may be there, but there is no requirement as to things

11  like the length of the description.

12  Q    It's one of those things the Court said preferably

13  should be there?

14  A    That's right.

15  Q    So then this organized collection of items and

16  associated information, it can come from anywhere or

17  be selected by anybody; is that right?

18  A    Yes.

19  Q    Does the Court indicate in its definition of a

20  product catalog that it has to include an entire

21  catalog?

22  A    No.

23  Q    Does it preclude that a catalog could include a

24  subset of items?

25  A    No, it says preferably.

1   Q    It's silent as to that; is that right?

2   A    Right.

3   Q    Agnostic?

4   A    Yes.

5   Q    Thank you.

6        The Court's catalog construction also says that

7   this collection of items and associated information is

8   published by a vendor.  Do you see that?

9   A    I do.

10  Q    Can you look through the glossary for me and find

11  where the Court construed "published by a vendor"?

12  A    It's not there.

13  Q    So the Court didn't construe "published by a

14  vendor" anywhere in this glossary or to your knowledge

15  in these proceedings; is that right?

16  A    That's correct.

17  Q    You were deposed in this case.  They took your

18  testimony under oath?

19  A    Yes.

20  Q    Do you recall being asked a question at your

21  deposition as to what "published by a vendor" means?

22  A    Yes.

23  Q    Did you have any guidance from the Court as to

24  what "published by a vendor" means?

25  A    No.

1    Q    So what did you do when you were asked that

2    question?  You gave a response, I assume?

3    A    Yes, I gave a common sense answer.

4    Q    What was that answer?

5    A    That "published by a vendor" means that the data

6    is available from the vendor.

7    Q    So the vendor either verbally or in writing, even

8    electronic writing, is the source of that information;

9    is that your understanding?

10   A    That's what I said.

11   Q    That's your common sense understanding of what

12   "published by a vendor" means?

13   A    Yes.

14            THE COURT:  What does his common sense

15   understanding have to do with anything in the case?

16            MR. ROBERTSON:  Well, at some point, Your

17   Honor --

18            THE COURT:  It has to be the understanding of

19   a person of ordinary skill in the art, doesn't it?

20            MR. ROBERTSON:  Fair enough.  Let me ask you

21   that.

22   BY MR. ROBERTSON:

23   Q    Would that be your understanding as to what the

24   understanding of a person of ordinary skill in the art

25   would -- how they would construe "published by a

1   vendor"?

2   A    Yes.

3           MR. ROBERTSON:  Thank you, Your Honor.

4           THE COURT:  Just a minute.  You have this

5   glossary of terms here.  How this came to happen is

6   this.  The law is that the terms as they are used in

7   any patent is a matter for the Court to interpret if

8   there's a dispute about what the terms mean.

9           At the beginning of the case, I told the

10  parties, Tell me what terms you think are in dispute,

11  and I then will interpret those terms if you can't

12  agree upon them.  And that's how it came to be that I,

13  the Court, interpreted the claims.  And that's why

14  you're bound by the Court's interpretation.  There was

15  no interpretation, the record would reflect, of

16  "published by a vendor" because nobody asked that

17  there be an interpretation of "published by a vendor."

18          And the general rule is that a term that

19  isn't defined by the Court has its ordinary and usual

20  meaning.  And in patent law that is the ordinary and

21  usual meaning of a person who is of ordinary skill in

22  the art.  That's somebody whom they have defined for

23  you yesterday that I believe have a college degree in

24  computer sciences or electrical engineering or a like

25  discipline and have a year or two of writing software

WEAVER - DIRECT                    534

1   and understanding the electronic or working in the

2   electronic procurement process.

3           So that's how we got -- that's what this is

4   all about.  And I'm beginning to believe that

5   Mr. Robertson may want to testify and that Dr. Weaver

6   may want to be the judge, the way the questions are

7   going.  So I don't think he really wants that or you

8   want that.  So let's get on.

9   BY MR. ROBERTSON:

10  Q   I just want to understand with respect to the

11  catalog information that's preferably included under

12  the Court's construction, what is you are

13  understanding of what a person of ordinary skill in

14  the art would understand as who would be the source of

15  that information, the part number, the price, the

16  vendor ID, etc.?

17  A   A person of ordinary skill in the art would, it's

18  in my opinion, that a person of ordinary skill in the

19  art would believe that that data came from the vendor.

20  Q   Can we show the short form of Claim Three.  The

21  color coded short version.

22      Doctor, here is a demonstrative created at your

23  direction.  What are you trying to illustrate here?

24          THE COURT:  He keeps using the term

25  "demonstrative," and I bet you don't use that in your

WEAVER - DIRECT                    535

1    everyday vernacular.  It's sort of a lawyer term.  And

2    it just simply means this is something that has been

3    created to help show you things in a visual way and

4    help you understand testimony.

5           The demonstrative is short for a

6    demonstrative exhibit, but it really isn't something

7    that you'll have as part of the record, but it is

8    intended to help you use this and listen to the

9    witness' testimony and follow along and better

10   understand what's being said.

11          I guess we've all gone along to the point in

12   our lives where, at least for some of us, visual

13   learning is a help and an aid to oral understanding,

14   and that's part of what this is all about.  It's

15   defined to help you.  All right.

16          MR. ROBERTSON:  Thank you, Your Honor.

17   Q    Sir, what are you trying to illustrate in this

18   demonstrative?

19   A    I was trying to capture the essence of the claim

20   elements and to present with each one an icon that

21   would help us visually remember what they mean.

22   Q    So what are the icons here, if you could just --

23   A    So for the first one, maintaining at least two

24   product catalogs, my icon is a set of catalogs that

25   are electronic because they are embedded in a

1    computer.  For the selecting the product catalogs of

2    the three catalogs that I have shown, I've highlighted

3    one, and it's bordered by red to indicate selected.

4        For the pink one, searching for matching items, I

5    used a flashlight shinning into the database that's in

6    the computer.

7        For building a requisition, I've got an icon of a

8    requisition that would be created by the system.

9        And for the generating one or more purchase

10   orders, I've got an icon of a purchase order that's

11   being produced by the electronic system.

12       And for converting data, I've got an icon of two

13   test tubes that are either similar or identical.

14   Q    Have you maintained the color scheme for this

15   demonstrative as well?

16   A    Yes, this is the same as the long form of Claim

17   Three.

18   Q    And you have a similar demonstrative for the

19   method claim, Claim 26, of the '683 patent?

20   A    I do.

21   Q    Do you have that on your screen, Doctor?

22   A    Yes.

23   Q    Tell us what you're illustrating with this method

24   claim.  This has a new step I don't think we've seen

25   before.

1   A    That's right.   That's the one at the bottom.   So

2   when we talk about maintaining at least two product

3   catalogs, I've got the same icon of three catalogs

4   stored electronically.

5        For selecting the product catalog, same icon.   One

6   of the catalogs is highlighted because it's been

7   selected.

8        For matching items, still using the search light.

9        For building a requisition, still using a picture

10  of a requisition.

11       For the purchase order, still using the icon of

12  the purchase order.

13       And then the new one, determining availability in

14  inventory, I'm trying to illustrate that we're looking

15  into the records of how many items are on hand to

16  determine whether a particular item that I might wish

17  to order is available in a vendor's inventory.

18  Q    Now, Doctor, you indicated yesterday that you

19  reviewed a number of the documents that were produced

20  by Lawson in this case; is that right?

21  A    Yes.

22  Q    Does Lawson use the term "product catalog" in its

23  literature?

24  A    Yes, many times.

25  Q    Have you made a determination in your review of

1  these documents whether Lawson uses that term, product

2  catalog, consistently with the Court's definition?

3  A    Yes, they do.

4  Q    Why don't we take a look at Plaintiff's Exhibit.

5          THE COURT:  Excuse me.

6          MR. McDONALD:  Your Honor, we're getting into

7  the issue of catalogs.  It's not so much an objection,

8  but I request the Court to remind the jury about the

9  use of the word catalogs by the witnesses versus the

10 claim, use of the word catalogs in the claim at this

11 point.

12         THE COURT:  I think what he was saying, I

13 think the question related to whether he understood

14 the use of the word "catalog" in the Lawson literature

15 that he had reviewed to be the same as the definition

16 that the Court gave the term.

17         Wasn't that the question?

18         MR. ROBERTSON:  Yes, Your Honor.

19         THE COURT:  I don't see that that instruction

20 is required.

21         MR. ROBERTSON:  Thank you.

22 Q    Could we see Plaintiff's Exhibit 149, please.

23 That is in Volume IV.

24         THE COURT:  What is it that you're having him

25 look at?

WEAVER - DIRECT                    539

1          MR. ROBERTSON:  I was going to identify it

2     right now, Your Honor.

3               THE COURT:  What exhibit?

4               MR. ROBERTSON:  149.

5               THE CLERK:  149, plaintiff's, Your Honor.

6               MR. ROBERTSON:  Plaintiff's Exhibit 149.

7     BY MR. ROBERTSON:

8     Q    Can you tell me what this is, Doctor?

9     A    This is a request -- excuse me.  It's a response

10    to a request for information from Holland Hospital.

11    Q    And it's a response that Lawson gave to a request

12    for information?

13    A    That's correct.

14    Q    And this request for information, is that similar

15    in your understanding as to what these RFPs were you

16    were describing yesterday?

17    A    Yes, they are.

18    Q    So was Lawson responding to information that

19    Holland Hospital was requesting?

20    A    Yes, they were.

21    Q    Can we turn to the page in Exhibit 149 that ends

22    with the Bates label 759.

23         In the middle here under instructions for

24    application, functional requirements questions,

25    there's A, B, C and D.  Could you highlight that for

1  us, please.

2      So these are instructions that Holland Hospital is

3  giving to Lawson as to how they should indicate the

4  availability of certain requirements in the Lawson

5  system; is that your understanding?

6  A    Yes.

7  Q    So why don't you tell the jury what these

8  various -- what A, B, C and D mean in Holland

9  Hospital's requirements questions?

10 A    So what Holland Hospital did was to produce a set

11 of questions asking about, as we said yesterday,

12 capabilities and functionality, and the requested

13 response was first this letter coding, A, B, C, D.  So

14 if the response is A, as you can see in the legend

15 here, then the functionality that's being requested

16 is -- Lawson is saying it's available and currently

17 installed.

18     If the response is B or C or D, then it's as you

19 can read, under development or customized or simply

20 not available.

21 Q    So A is available and currently installed; is that

22 right?

23 A    That's right.

24 Q    Underneath that is a heading called "rating

25 column."  Could you highlight that for us, please?

1    And for each requirement listed Lawson was required to

2    rate the application's performance on a scale of 0 to

3    7 with 0 indicating no performance and 7 indicating

4    leading edge capabilities.  Do you see that?

5    A    Yes.

6    Q    Could you turn to the page that ends with 767 in

7    this response that Lawson gave to Holland Hospital.

8    Do you see the question No. 10?

9    A    I sure do.

10   Q    Can you tell us -- there it says, "ability to

11   produce supply catalogs by item number, manufacturer,

12   vendor, class and inventory location.  Do you see

13   that?

14   A    Yes.

15   Q    And what was Lawson's response to this

16   requirement?

17   A    So the letter code is A, which, as we just saw,

18   meant that this is installed and available.  And the

19   numeric rating code is 7, which, as we just saw, meant

20   leading edge capabilities.

21   Q    If we go back to the front page of Plaintiff's

22   Exhibit 149 and just highlight the date for us,

23   please.

24        Was Lawson representing as of January 6, 2006,

25   that it had the ability to produce supply catalogs by

WEAVER - DIRECT                         542

1   item number, manufacturer, vendor, class and inventory

2   location, and that it was a leading edge capability?

3   A    That's what this document says.

4   Q    Is that description of its capability to produce

5   these catalogs in your opinion consistent with the

6   Court's definition of a catalog?

7   A    Yes.

8          THE COURT:  Now, ladies and gentlemen, just

9   so you understand, he's not testifying about what

10  Lawson intended when they used that term.  He's

11  testifying about his interpretation of what that term

12  means as Lawson used it.  He can't know what Lawson

13  intended.  Maybe if Lawson intended something else,

14  they can put on somebody to testify that that's not

15  what we intended, and you have to take that into

16  account in deciding the case.

17         Is that the kind of instruction you wanted?

18         MR. McDONALD:  Yes, Your Honor.  That will be

19  fine.

20         THE COURT:  Mr. Robertson, how do we know

21  that that response there has anything to do with the

22  systems that are accused?  They can be talking about

23  the Lawson common fraud system for all I know, not

24  that there is one of those.  But do we have a basis

25  for any of this?  And have we yet told the jury what

1   the Lawson system is that's accused.  It's System 3,

2   isn't it?  That's what it is, isn't it?  Did he look

3   at that?

4          MR. ROBERTSON:  Let me ask you that, Doctor.

5   Q   What systems, what functionality, what modules did

6   you look at with respect to the Lawson system when you

7   rendered your opinions concerning infringement?

8   A   There's an S3 procurement system that has a series

9   of modules, software programs inside.  So there's a

10  Lawson system foundation.  There's a Lawson process

11  flow.  There's a requisition module, a purchase order

12  module, and inventory control module.  There are other

13  modules that can sit on top of those like requisition,

14  self service, a Punchout, which I'll explain later,

15  and an EDI, electronic data interchange module.

16  Q   Could they be combined in various configurations?

17  A   They can.  There are certain things that must be

18  present and others that can optionally be hooked

19  together.

20  Q   Was it your understanding that Lawson in the

21  response to the Holland Hospital --

22         THE COURT:  What was your understanding as to

23  what Lawson used to prepare the response?  Instead of

24  leading him; ask him.

25  Q   What was your understanding that Lawson was

WEAVER - DIRECT                           544

1  proposing to Holland Hospital in response to its

2  request for information?

3  A   The S3 procurement system.

4          THE COURT:  In other words, they used the S3

5  system in order to prepare that response; is that your

6  understanding?

7          THE WITNESS:  Yes, Your Honor.

8          THE COURT:  What's a module?  You used that

9  term.

10          THE WITNESS:  I'm sorry, Your Honor.

11          THE COURT:  What is a module as you used that

12  term?

13          THE WITNESS:  Oh, a module is a piece of

14  software, and we call it a module because it fits

15  together with others.

16  BY MR. ROBERTSON:

17  Q   Dr. Weaver, if I could just take you back to 149,

18  Plaintiff's Exhibit 149, back to that page that was

19  759.  And under the material management requirements

20  up at the top third bullet down, do you see that?

21  A   Yes.

22  Q   What is it that were the requirements?

23  A   So the requirements are these three modules:

24  Inventory control, purchasing, and requisitioning.

25  Q   Were those the modules that you have looked at

WEAVER - DIRECT                    545

1  with respect to conducting your infringement analysis

2  among others?

3  A    Yes.

4        THE COURT:   I don't know that the doctor

5  explained this and I just missed it.  What was being

6  requested, is your understanding, by Holland Hospital

7  here?  Was it being requested, for example, to give us

8  a proposal for a system we could buy?  Was it a

9  proposal for you doing work using your system?

10       I think you-all may be more familiar,

11  Mr. Robertson, with the case than perhaps the jury and

12  I are, and it might be helpful to keep that in mind.

13       What do you understand, Dr. Weaver, the

14  request for proposal was actually asking Lawson to

15  provide after you read it?

16       THE WITNESS:   Well, Your Honor, this was a

17  request for information rather than request for

18  proposal.  So this is asking questions about what

19  functionality and capabilities Lawson could provide.

20  So depending upon the question, the answer might be

21  that --

22       THE COURT:   Excuse me.  Lawson could provide

23  by doing it or following up with it or Lawson could

24  provide by giving them some software and letting them

25  do it or what?

WEAVER - DIRECT                    546

1           THE WITNESS:  Yeah, that was exactly what my

2    answer was going to be.  Depending on the question,

3    the response might be that Lawson would license a

4    software module to the hospital, and the hospital

5    personnel could run it and maintain it.  Or perhaps

6    Lawson would install it for them or perhaps Lawson

7    would host it for them.

8           THE COURT:  What does that mean?  What does

9    host it mean?

10          THE WITNESS:  Host it means that the software

11   that runs the system physically resides on a computer

12   server, a big computer system, that Lawson itself owns

13   and maintains so that it's always available.

14          THE COURT:  But the hospital could use it?

15          THE WITNESS:  Yes, it would be for the

16   hospital's use.

17          MR. ROBERTSON:  Thank you, Doctor.

18   BY MR. ROBERTSON:

19   Q   Let me ask you to take a look at Plaintiff's

20   Exhibit No. 219.  It's in Volume V.

21          THE COURT:  319?

22          MR. ROBERTSON:  219, Your Honor.

23   BY MR. ROBERTSON:

24   Q   Doctor, tell us what Plaintiff's Exhibit 219 is.

25   A   The Scottsdale Unified School District wrote a

1    request for proposal and this is Lawson's response to

2    that RFP.

3    Q    What is the date of this?

4    A    December 14, 2005.

5    Q    Let me focus you then on -- well, what was your

6    understanding that the Scottsdale Unified School

7    District, No. 48, was requesting Lawson to make a

8    proposal for?

9    A    Financial management software.

10   Q    Did it also include procurement software?

11   A    Yes, it did.

12   Q    Can I direct you to the page that ends with the

13   Bates label 687.  And at the top of the page there's a

14   heading called "Lawson's Procurement Suite."  Do you

15   see that?

16   A    I do.

17   Q    There's a subheading, "Purchase Order."  Do you

18   see that?

19   A    I do.

20   Q    Is the purchase order module one of the pieces of

21   software that you did some analysis with respect to

22   your infringement opinions?

23   A    Yes, it's one of those modules.

24   Q    And what does Lawson represent here, focusing now

25   on about --

WEAVER - DIRECT                          548

1        MR. ROBERTSON:  Starting at the beginning

2   down to about "receiving goods," midway through that

3   paragraph, if you could highlight that for me, Mike.

4   The entire paragraph.

5   Q    What is Lawson indicating here in response to this

6   request for proposal as to the purchase order module

7   of its procurement suite?

8   A    So after the words "Lawson's purchase order," it

9   says that it streamlines the procurement process from

10  establishing vendor pricing, agreements, and

11  contracts, importing and maintaining item information,

12  creating and issuing purchase orders to receiving

13  goods.

14  Q    And purchase order is a subject of the claims that

15  are at issue in this case?

16  A    Yes.

17  Q    What does Lawson say there with respect to the

18  advantage of this purchase order module that they are

19  offering?

20  A    That it's going to improve efficiency.

21  Q    How is it going to do that?

22  A    By automating this process of putting everything

23  on a computer.

24  Q    All right.  Can you explain to the jury what this

25  vendor price agreement is that's referenced here?

1   A    Sure.  The vendor price agreement is a contractual

2   agreement between Lawson's customer and a particular

3   vendor that the vendor is going to supply a set of

4   items at a fixed cost or at a particular cost.

5   Q    It references here to importing item information.

6   What's your understanding with respect to what

7   importing item information means in Plaintiff's

8   Exhibit 219, this response to an RFP?

9   A    When you have a database of information, it has to

10  be filled.  We call it populated.  You populate the

11  database.  And the way that or one of the ways that

12  you can do that is to bring in data and put it into

13  the format that is appropriate for the database.  And

14  that process is called importing.  Importing data into

15  the database.

16  Q    Can you turn to the next page, please.  And on

17  this page it's entitled, Requisitions.  Do you see

18  that?

19  A    Yes.

20  Q    Is that one of the software modules that you

21  examined in order to determine your make your

22  infringement analysis?

23  A    Yes, it's part of the procurement suite.

24  Q    At the bottom there's a heading that says, Several

25  Features of Lawson's Requisition Include.  Do you see

1    that?

2    A    I do.

3    Q    There are six bullet points, I believe.  Can you

4    focus us in on the bullet points you think are

5    significant to your opinions?

6    A    The two that I think are important here are the

7    first bullet point, custom catalogs and templates.

8    And the fourth one; stock, nonstock, special items or

9    services on a single requisition.

10   Q    Why do you find those significant?

11   A    Because these relate to the patent claims.

12   Q    In what way?

13   A    In that the patent talks about being able to have

14   electronic catalogs, and that as items are picked on a

15   hit list, then it becomes ultimately an order list, a

16   chosen set of items.  That ultimately becomes a

17   requisition.  And that is what the requisitioning

18   system in Lawson does.

19   Q    It indicates you can have stock, nonstock, special

20   items or services on a single requisition.  Is that

21   significant in your analysis?

22   A    Oh, yes.  If you recall from yesterday, when I was

23   starting my computer lab back in the '70s, the

24   purchasing specialist and I had to write -- had to

25   take my list of wants and divide that so that we were

1   sending requisitions to an individual vendor to get

2   quotes.  So it's a convenience and a time saver and a

3   cost saver if I can put all of the items that I want

4   to order on a single requisition.

5        And then in this case because it's computerized,

6   the purchase order module can look at the requisition

7   and look at that single requisition and divide it into

8   purchase orders automatically.  So the single

9   requisition is a big deal.

10  Q    What's a nonstock item, sir?

11  A    Well, that's something that the company does not

12  have in stock and so it's bought from an external

13  vendor.

14  Q    This ability to buy various items from various

15  vendors and place them on a single requisition, is

16  that included in any of the claim elements that you

17  have examined?

18  A    Yes, it is.

19  Q    Can you give us just an example.  Can I look at

20  Claim Three of the '683 patent?

21  A    Sure.

22  Q    Tell us where that particular feature is.

23  A    Sure.  That is being color-coded in blue.  Means

24  for building a requisition using data related to

25  selected matching items and their associated sources.

1    Q    So we could have a requisition with matching items

2    from more than one source; is that right?

3    A    That's right.

4    Q    Is that consistent with the representation that

5    Lawson is making in its response to a request for

6    proposal on page 868 of Plaintiff's Exhibit 219?

7    A    Yes, it is.  It's talking about nonstock items on

8    a single requisition.

9    Q    Can you take a look at the next page titled

10   "Inventory Control."  Is the inventory control module

11   one of the modules you examined in conducting your

12   infringement analysis?

13   A    Yes, it is a third module in the procurement

14   suite.

15   Q    Is there anything you'd like to direct us to here?

16   What does the inventory control module permit you to

17   do?

18   A    Yes.  The introductory sentence there explains

19   what's going on.  Inventory control enables you to

20   effectively monitor and manage inventory throughout

21   the organization.  It's flexible design and complete

22   integration with requisitions and purpose order

23   applications help facilitate a smooth flow of

24   information and products.

25        So, again, this inventory control is one of the

1   three main software modules in the procurement suite

2   along with requisitions that we just looked at, and

3   before that, the purchase order module.

4   Q    Could we go to, in 219, could we go to the page

5   that ends in 013?  It's actually PX 219 at 0179.  Let

6   me make sure I've got it.  Thank you.  Okay.

7         There's a series of questions here.  Let me just

8   go to the beginning of it.  They start at page 177 of

9   this exhibit.  Do you see it says,

10  Requisition/purchase order process, No. 9, at the top

11  there?

12  A    I'm sorry.  What page?

13  Q    177 of 180.  It's in the middle at the bottom

14  there.

15  A    Page 177?

16  Q    Yes, sir.  It ends with 0119011.

17            THE COURT:  What do you mean ends with?

18            MR. ROBERTSON:  Excuse me?

19            THE COURT:  It ends?  What's the "it"?

20            MR. ROBERTSON:  The Bates number, Your Honor.

21            THE COURT:  The lower number in the number is

22  a Bates number, and what number is that one?

23            MR. ROBERTSON:  This is exhibit number --

24            THE COURT:  No, what number is the Bates

25  number?  Sorry.

WEAVER - DIRECT                    554

1          MR. ROBERTSON:  9011.

2          THE COURT:  Can you find that, Doctor?

3          THE WITNESS:  Yes.  That's my page 180.

4    BY MR. ROBERTSON:

5    Q   So there's a heading 9 there called

6    Requisition/purchase order process.  Do you see that?

7    A   Right.  I've got it now.

8    Q   Well, there are a number of questions that are

9    being asked under that heading, correct?

10   A   Right.

11   Q   And Lawson is giving a number of responses.  Do

12   you see that?

13   A   I do.

14   Q   Okay.  Can you go now to page 179 of 180 or where

15   it ends with the Bates label 9013, and there's a

16   question G.  Do you see that?

17   A   I do.

18   Q   Now, confirm for me that we're still talking about

19   the requisition/purchase order process questions that

20   are being asked by Scottsdale Unified School District?

21   A   Yes.

22   Q   Okay.  There's a question there:  Does the system

23   allow for a catalog of preapproved items for the

24   requisitioners to choose from.  Do you see that?

25   A   I do.

1    Q    What was Lawson's response?

2    A    Individual departments and users can establish

3    custom catalogs that reflect their unique ordering

4    patterns.   Furthermore, you can establish catalogs for

5    certain days of the week by item classification,

6    vendor, or other criteria.

7    Q    Turning back to that Claim Three demonstrative we

8    have, the first element says at least two product

9    catalogs.   Do you see that?

10   A    I do.

11   Q    Can there be more than two?

12   A    Oh, yes.

13   Q    But there must be a minimum of two?

14   A    That's right.

15   Q    When we're talking about these, the claim element

16   three, which says, Means for selecting product

17   catalogs to search, just explain what your

18   understanding of that is from the perspective of a

19   person of ordinary skill in the art.

20   A    This means that there must be a user interface

21   capability that allows a user to select one or more of

22   the catalogs that are available in the system.

23   Q    Can we go to -- this is demonstrative 093, page 1.

24   Side by side.   This is the short form color-coded

25   demonstrative.   Can you put that next to the 093, page

1   2?

2       You mention the term "user interface," Doctor.

3   What did you mean by that term?

4   A   That's a computer science term of art and it means

5   the way that the computer program is going to

6   converse, as it were, with the human user.   And if

7   you're familiar with Google or Yahoo, you're familiar

8   with a text box where you type in.   In Google, you're

9   typing in a search query.   But that text box is an

10  example of a user interface.

11      If you're represented with a drop down menu and

12  you click on the top element, the drop down menu opens

13  up, and you can scroll down and pick one of those

14  elements.

15      If you have a selection to make and you have a

16  series of radio buttons, then you can click on one

17  button, and you have made a selection of one out of

18  however many choices there are.

19      If you double click on a hyperlink, then that user

20  interface element is directing the browser to go to

21  another page.   So --

22  Q   Let me stop and ask you what a hyperlink is?

23  A   Hyperlink is an encoding within a web page that

24  says -- that redirects the browser to a different page

25  when you click on it.

WEAVER - DIRECT                    557

1   Q    Sir, with respect to this claim element, for

2   purposes of the jury's determination, what is relevant

3   to your determination in their assessment of whether

4   infringement occurred?

5   A    It's whether or not that user interface exists in

6   the Lawson system.

7   Q    And in your analysis of the Lawson system, does

8   that, in fact, exist?

9   A    Yes.  I'm going to demonstrate that later.

10  Q    This claim element we've been looking at for the

11  means of selecting the product catalogs to search,

12  does the claim require that the user select multiple

13  product catalogs to search simultaneously?

14  A    No, not simultaneously.  You could search one

15  catalog and then search another one.  So a serial

16  search would satisfy this claim element.

17  Q    Going back to the third element of Claim Three,

18  which recites means for searching for matching items

19  among the selected product catalogs, and you have

20  illustrated this in your diagram.  What's your

21  understanding of how the system needs to perform in

22  order to accomplish that element?

23  A    Well, if you're going to search, then you need a

24  search program.  And the search program has to have

25  input, a query, so it knows what to search for.  And

WEAVER - DIRECT                    558

1   so if you have a search program and if the user can

2   input a search request, then that search program can

3   identify matching items, items that match the query

4   term among the selected product catalogs.

5       You could also do it not only with textual search,

6   but with drop down menus.  You could search that way,

7   too.

8   Q   You used the term "drop down menu."  Could you

9   just explain what you mean when you use that term?

10  A   Yes.  So in building a web page, this is done

11  using hypertext markup language, HTML, and there's a

12  standard construct there that's a drop down menu.  So

13  you program this so when this is displayed to the

14  user, there is a top level catagory, and it typically

15  says "select."  And if you click on select, then the

16  menu opens up.  It drops down and a series of choices

17  are presented.  And then you can take the mouse and

18  pick one of those.

19      The most insidious of these is when you're trying

20  to fill in your address and the choice is state.  You

21  click on state, and all the 50 states fill up your

22  whole screen, and you have got to go pick one.

23  Q   In one of these demonstrations you're going to do

24  on the Lawson accused product, will we see this drop

25  down menu?

1    A    We sure will.

2    Q    The next element of Claim Three, which is

3    color-coded blue and has this means for building a

4    requisition using data relating to selected matching

5    items and their associated sources, what's your

6    understanding as to what a requisition is?

7    A    The requisition is the formal list of items that

8    you wish to purchase.

9    Q    Moving on to the next element of Claim Three,

10   which is yellow in your illustration.  It says, A

11   means for processing the requisition to generate one

12   or more purchase orders for the selected matching

13   items.  You mention the term "purchase order" when you

14   were discussing requisitions.  How does a purchase

15   order differ from a requisition?

16   A    The requisition is the list of things you want.  A

17   purchase order is the contract vehicle for buying.  So

18   when I have a purchase order and I send it to a

19   company, this is the legal document that says I want

20   to buy the item or items on this purchase order.

21        Requisition is your total list of things you'd

22   like to buy.  Purchase orders go to individual

23   companies.

24   Q    When you're providing your understanding of the

25   definitions and the meanings of these terms, is that

1   the same understanding as a person of ordinary skill

2   in the art at the time?

3   A    Yes.

4   Q    So how would the fifth element of Claim Three be

5   satisfied?

6   A    We would have to see a requisition module that can

7   take the formal requisition, which could have many

8   items from many vendors, and then turn that into one

9   or more purchase orders.  And, typically, you have all

10  the items from one vendor on one purchase order if you

11  can do it.  If they are present.

12  Q    Moving on to the sixth and last element of Claim

13  Three, which you have color-coded brown.  That element

14  recites means for converting data relating to a

15  selected matching item and an associated source to

16  data relating to an item and a different source.  How

17  are we to understand that claim element?

18  A    So if I have a list of items and for some

19  reason -- let's say I want to do comparison shopping

20  or say that the item that I want, I've checked the

21  inventory, and it's not available.  So there has to be

22  a converting means whereby I can look for similar

23  items, and this is all computer assisted.  I can find

24  similar items that I might choose instead of the one

25  that I had initially inquired about.

WEAVER - DIRECT                    561

1          MR. McDONALD:  Your Honor, I'm going to

2     object to this question about this.  This is a

3     means-plus-function clause and he's asking him what it

4     means.  It should be done in the context of the --

5          THE COURT:  I was just looking at page 2 of

6     the glossary.  I think that's been defined over there.

7          MR. ROBERTSON:  I was just going to ask him

8     to go to that page.

9          THE COURT:  Don't be having him give his own

10    constructions, please, before you ask him to go to the

11    ones that have been construed.

12    BY MR. ROBERTSON:

13    Q    If you go to page 2 of the Court's glossary, Dr.

14    Weaver.

15    A    Yes.

16    Q    What's the function that's being defined here on

17    the means for converting data for this claim element?

18    A    The function of this element is converting data

19    related to a selected matching item and an associated

20    source.

21    Q    According to the Court, how can this function be

22    accomplished?  By what structure?

23    A    The corresponding structures, materials or acts of

24    this element are disclosed as one or more non-catalog

25    databases identifying cross-referenced items,

1  identical items, or generally equivalent items; one or

2  more cross-reference tables or file identifying

3  cross-referenced items, identical items, or generally

4  equivalent items; one or more codes corresponding to

5  cross-referenced items, identical items or generally

6  equivalent items; and their equivalents.

7  Q    In that definition there are non-catalog databases

8  identifying cross-referenced items, identical items or

9  generally equivalent items, cross-reference tables or

10 files and one or more codes.

11     As a computer scientist, can you tell us what your

12 understanding as a person of ordinary skill in the art

13 would understand those three terms to mean?

14 A    Sure.  So a non-catalog database is a file that is

15 not part of the physical structure of the database

16 system.  So it's an external file.

17     In this context, it's identifying the

18 cross-referenced items.  So, for instance, we might

19 have a vendor -- think of a file that has records.

20 Think of that as a row in a table.  We might have one

21 vendor's part number and a second vendor's part number

22 in that row.  And if this is in a cross-reference

23 index that indicates in this context that those two

24 part numbers are identical or generally equivalent --

25 let's see.  What was the next one?  Okay.

1    Cross-reference tables or files.  So this is a larger

2    structure, but it contains that same type of

3    information.  Vendor part No. 1 is equivalent to this

4    other vendor part No. 2.

5         And by equivalent, I mean identical or generally

6    equivalent.

7         And then by codes, this means that there is an

8    understood structure, understood by the computer and

9    perhaps by the human inputting these codes as to what

10   the codes mean.  So in one case --

11             MR. McDONALD:  Your Honor, I'm going to

12   object.  I don't think his interpretation of codes is

13   in his report.

14   BY MR. ROBERTSON:

15   Q   Doctor, did you do analysis of whether or not the

16   Lawson system employs codes for performing this

17   cross-referencing capability or this means for

18   converting data as the Court has construed the claim?

19   A   Yes, it does.

20   Q   What type of codes?

21   A   That particular code is called a UNSPSC code,

22   United Nations Standard Products and Services Codes.

23   Q   We're going to come back to that, but could you

24   just briefly explain to the jury what type of code

25   that is.

1          THE COURT:  Why don't you tell me where it is

2     here because that's what the objection is.

3          MR. McDONALD:  He's talking about UNSPSC

4     codes, Your Honor.  I will agree that's in there.

5          THE COURT:  The objection is withdrawn.

6          MR. ROBERTSON:  Thank you.

7     Q    In examining this kind of cross-referencing or

8     converting capability, is it described in the patent?

9     A    Yes.

10    Q    Why don't we use the '683 patent, if we can, and

11    go to column 16.  That's at tab 2 in the juror

12    notebook specifically at about lines 19 through 27.

13    What's the example being given here as how this

14    cross-referencing or converting process for finding

15    identical or generally equivalent items can be

16    accomplished?

17    A    The general idea here is that a particular part

18    number has been entered into this electronic sourcing

19    system and that particular part number is not

20    available, but the cross-referencing system using the

21    cross-reference index finds that another vendor's part

22    number is the same or generally equivalent, and it

23    substitutes the second part number for the first.

24    Q    Why don't we go to a different claim now, Claim 26

25    of the '683 patent.  And I want to focus on this last

1    element.   This determining whether selected matching

2    items is available in inventory.   Can you tell us how

3    the patent describes that process?

4    A    When the customer service representative who is

5    using the system does a search for an item, one of the

6    functions that is supported here is inquiring about

7    what quantity of those items is available in the

8    inventory database.   And so if you inquire and you get

9    back a quantity of zero or if you get back a quantity

10   that's less than the number you want, you know that

11   those items are not available in inventory.

12   Q    You indicated there could be a CSR.   That's a

13   customer service representative.   Does it have to be

14   in the patent?

15   A    No, that's just an example.

16   Q    The claim itself doesn't recite whoever the user

17   is, does it?

18   A    No.

19   Q    I'd like to talk a little bit now about sort of a

20   general overview of the Lawson accused systems and

21   methods that you have examined as part of your

22   analysis.   Would that be all right?

23   A    Sure.

24   Q    Do we have a demonstrative that you have prepared

25   as to what you consider the procurement system in the

1  various modules to be?

2  A    We do.

3  Q    Now, this was prepared at your direction?

4  A    Yes.

5  Q    What are you intending to illustrate here, sir?

6  A    I'm trying to show the various modules and

7  components that are in the Lawson system, and I've

8  tried to map them by color to the claims of the '683,

9  Claim 26.

10 Q    By the way, Doctor, is your touch screen working?

11 A    Yes.

12 Q    So you might want to, if you need to, you can

13 utilize that capability.

14 A    I can use my pointer.

15 Q    All right.  So I'm sorry.  I interrupted you.  You

16 have got a catalog database icon there.  Do you see

17 that?

18 A    Right here.  So this is the set of catalogs in

19 electronic form.

20 Q    Actually is that the user sitting at the computer?

21 Do you see the catalog database?

22 A    Yes.

23 Q    Where?

24 A    You're talking about this one.

25 Q    Yes, sir.

1    A    Yeah, okay.  So the catalog database is the

2    electronic form of the catalogs all put together so

3    that they can be searched.  That is the catalog

4    database.

5    Q    Does the Lawson procurement system include a

6    database in its inventory control module?

7    A    Yes, it does.

8    Q    Can supplier product catalog be loaded into that

9    control module?

10   A    Yes, we'll see that.

11   Q    What's the selection icon?

12   A    Of all the catalogs that are in the database, the

13   user interface provides a way to select one or more

14   that are going to be searched.

15   Q    Now, you have all of these modules I see here

16   within a gray box.  What are you trying to illustrate

17   there?

18   A    The gray box is the Lawson system.

19   Q    And these are the various components?

20   A    These are components, modules.

21   Q    There's an icon there for searching for matching

22   items.  Do you see that?

23   A    Yes.

24   Q    What did you intend to illustrate there?

25   A    Using the user interface, one engages a search

1    program and gives it a search query or initiates a

2    search using a characteristic of a drop down menu.

3    And the search engine then engages and returns items

4    that match the query.

5    Q    Did you examine a Lawson software program that

6    permits a user of a Lawson system to perform that

7    functionality?

8    A    Yes, the requisitioning system does that.

9    Q    You have building a requisition icon here.  Do you

10   see that?

11   A    Yes.

12   Q    Please explain what you're intending to illustrate

13   there?

14   A    So in the Lawson system you build a shopping cart,

15   then you add and delete items from it until you're

16   satisfied with it.  And then you do a checkout from

17   the Lawson system.  And that engages the requisition

18   system and builds the requisition of all the items

19   that you want to order.

20   Q    Are you familiar with the term "a shopping cart"?

21   A    Yes.

22   Q    Is that consistent with your understanding of

23   building a requisition?

24   A    Well, it's not the requisition.  It's the data

25   structure that can be modified.  You can add and

1    delete to it.  So in computer terminology, we call

2    this a cache, a C-A-C-H-E.  So it's a data structure

3    that holds data, and then it's going to be transferred

4    to the requisition module, and it's in the requisition

5    module that the requisition is created.

6    Q    All right.  Thank you for that correction.  So is

7    it consistent with an order list?

8    A    The order list is the shopping cart and that's

9    what becomes the requisition.

10   Q    Did the Court define what an order list is in its

11   glossary of claim terms?

12   A    Yes.  A list of desired catalog items.

13   Q    Did you apply that construction in doing your

14   infringement analysis?

15   A    Absolutely.

16   Q    Next you have an icon for generating purchase

17   orders.  Do you see that as part of the overview of

18   the Lawson procurement system?

19   A    Yes.

20   Q    Can you explain that process here?

21   A    So we've got our requisition.  This is our formal

22   list of the things we want to buy.  It might have one

23   item.  It might have a hundred items.  The items might

24   be from one vendor or they might be from 100 vendors.

25   Whatever that requisition says, the purchase order

1  module takes that requisition and typically pulls out

2  all of the requisition items that are going to be

3  ordered from a single vendor and creates a purchase

4  order for that vendor.  Then it pulls all the items

5  that go to another vendor and creates a separate

6  purchase order for the second vendor and so on until

7  all the items in the requisition have appeared in some

8  purchase order.

9  Q    Did you do analysis of any Lawson software program

10 or module that performs that functionality?

11 A    Yes, we're going to see that, and it's going to be

12 the Lawson P.O. 100 program.  Their purchase order

13 program that converts a requisition into one or more

14 purchase orders.

15 Q    Now, you've illustrated a number of arrows between

16 these various software programs or modules that you've

17 identified as part of the overall Lawson infringing

18 system.  What are you intending to indicate by those

19 arrows?

20 A    Well, the arrows with the single head indicate

21 unit directional information flow.  The arrows that

22 are double-headed indicate bidirectional data flow

23 back and forth.

24      So, for instance, the arrow here between selection

25 and searching, you use that user interface to engage

1    the search engine.   That's one-way data flow.

2        Down here, for instance, purchase orders go out to

3    the Internet, but responses come back.   So there's

4    bidirectional data flow there.

5    Q   You've got outside of the Lawson system you've got

6    this little cloud that you have illustrated that has

7    Internet in it.   What are you attempting to illustrate

8    there?

9    A   Well, the cloud is the classic icon for the

10   Internet, meaning lost of networks, lots of computers,

11   you don't necessarily know whether they are, you don't

12   usually care, but the computer can by sending

13   addresses through the Internet can arrive at a

14   particular destination.   So here Bio-Rad is an example

15   of a vendor.

16       So by using this route I can send information to

17   the vendor.   When the vendor gets that purchase order,

18   it can send a purchase order acknowledgment back to

19   the Lawson software.

20   Q   Is there a software module or software program

21   that you did an analysis of that permits the Lawson

22   system, the accused system, to employ the Internet to

23   go out to vendors and obtain information, do searches,

24   and then return data to complete requisitions and

25   purchase orders?

1  A    Yes.   There's a system called Punchout that we'll

2  see that allows us to access vendors.   There's also an

3  electronic data interchange software module that

4  allows us to send purchase orders and get purchase

5  order responses.

6  Q    You used the term "Punchout."   Is that the term

7  that Lawson uses for its software module?

8  A    Yes, this is their term.

9  Q    Have you seen that term "Punchout" employed in

10 other procurement systems?

11 A    Yes, it's a common term of art.

12 Q    Now, what's your understanding as to what is meant

13 when they use the term "Punchout"?

14 A    So there's the Lawson system.   The user engages

15 the Lawson system and using the capabilities of the

16 Lawson system goes to a vendor website, one that's

17 been created for this customer.   And so this idea of

18 looking at an external vendor's specialized website is

19 called punching out of the Lawson system.

20 Q    Have you done a demonstration of that using a

21 Lawson system?

22 A    Yes.

23 Q    When this purchase order response comes back from

24 a supplier, what types of information can be in it

25 that might be useful to the user in making its

1  selection and determination as to what it might want

2  to purchase?

3  A    So when we use the Punchout capability, some of

4  these vendors support the capability of reporting

5  whether the item that you want is available in

6  inventory.  And so we can see in what's called the

7  Punchout response, we see on a web page displayed in

8  the Lawson system whether or not the item is available

9  in inventory.

10     And if we're using the electronic data interchange

11  module, the purchase order goes to a vendor, and the

12  vendor can reply, and the purchase order responds as

13  to whether that item is available in inventory.

14  Q    So you have this software module within the Lawson

15  system about determining availability and inventory.

16  Do you see that?

17  A    Right here, yes.

18  Q    I think you may have touched on it, but can you

19  tell us the ways in which this accused Lawson system

20  can satisfy the element of determining the

21  availability of inventory within its accused system?

22  A    Yes.  So using the Punchout system, I can look

23  into the external catalog of a vendor.  And if this

24  vendor supports this capability, I can determine

25  whether the item I want to order is available in

1    inventory.  That's one1 way.

2        The other way is this purchase order being sent to

3    a vendor and the purchase order response coming back

4    there's two ways to do that.

5    Q    Are you familiar with the term EDI?

6    A    Electronic data interchange.

7    Q    Can you explain to the jury what that is?

8    A    So this was big in the 1970s and has gotten even

9    bigger today.  When companies want to communicate with

10   each other -- well, let me start with individuals.  If

11   you and I want to exchange information, a typical way

12   would be email.  So email works for individuals, but

13   it isn't structured.  You don't know what's going to

14   be in the email.

15       So electronic data interchange is a set of

16   standardized forms like purchase order, purchase order

17   response, invoice, advance ship notification.  And

18   what is standardized about them is the information

19   that's in it is in a particular place and it's of a

20   particular length and it's of a particular type of

21   data so that a computer then doesn't have any problem

22   figuring out what it means.

23       So that's what EDI does.  It exchanges information

24   in a structured formal way between companies.

25   Q    You indicated that EDI has been available since

WEAVER - DIRECT                    575

1   the '70s, but the overall components of this system,

2   they haven't been available since the '70s, have they?

3   A    I don't think so.

4   Q    And you can take known technology and combine it

5   to come up with something new and useful; is that

6   right, Doctor?

7   A    Sure.

8   Q    The converting icon, I think you talked a little

9   bit about this, but in the Lawson system, how do they

10  perform this functionality of the conversion to find

11  similar, identical or generally equivalent items?

12  A    I mentioned these UNSPSC codes.  So I'll explain

13  later in detail what they mean, but the gist of it is

14  that by using an 8-digit code, you are drilling down

15  to what's going to be called the commodity level of

16  information.  And if multiple items have this same

17  8-digit code, then by the definition of the code they

18  are generally equivalent and substitutable.

19       So the Lawson system uses this UNSPSC code in

20  order to accomplish that task.

21  Q    So now that you have discussed sort of the overall

22  functionality of the system in general terms and how

23  it can perform it, you identified various software

24  programs or modules that Lawson offers to do that

25  functionality.  Can they be configured in various

1  ways?

2  A    Yes.   Certain modules are required and certain

3  modules are optional.

4  Q    Did you prepare a demonstrative to show how these

5  various Lawson procurement S3 modules can be -- these

6  components can build to an infringing system?

7  A    Yes, I have several demonstratives that build on

8  each other to illustrate how the software modules

9  build on each other.

10 Q    Let's go to the first demonstrative you have.   And

11 this one is entitled "Lawson's electronic sourcing

12 systems."   And you have a yellow box there.   What is

13 that?

14 A    So as the name suggests, the platform technology

15 foundation contains the modules that have to be in a

16 functioning Lawson system.

17      Two of those are the Lawson system foundation,

18 which is, again, a set of common computer implemented

19 activities that every software module is going to

20 need.   For instance, communication with other modules.

21      The process flow is a module that controls and

22 directs the approval process.   So when a requisition

23 comes in, typically a manager approves it, and that

24 approval process is done by the process flow module.

25      So these two are required for all of the S3

1  procurement systems.

2  Q   In your analysis and review of the documents and

3  the deposition testimony, did you make a determination

4  that these foundational software modules were required

5  as part of the Lawson infringing system?

6  A   Yes, in the documentation that I read it was very

7  clear that the Lawson system foundation, LSF, had to

8  be installed before you could install the modules of

9  the S3 procurement system.  Likewise, the process flow

10 had to be there as well.

11 Q   In your report, you called the Lawson system

12 foundation a prerequisite module.  What did you mean

13 by that?

14 A   The LSF must be there before you can load the

15 modules that are the procurement suite.

16 Q   In order to purchase the procurement suite

17 license, the procurement suite, does a customer of

18 Lawson have to license this Lawson system foundation

19 and process flow?

20 A   That's what the documentation says.

21 Q   Well, I think you touched on the process flow

22 already, but let's take a look, if we can, at the

23 Lawson requisition self service installation guide,

24 which is PX 131.  It's in binder 3, Dr. Weaver.

25     Is this document is entitled, "Lawson requisitions

1   Self Service Installation Guide."  Did you review this

2   as part of your preparation for your expert report?

3   A   Yes, I did.

4   Q   So what is this document?

5   A   This document explains to the customer how they

6   should go about installing this requisition self

7   service module.  We're going to call it the RSS.

8   Q   If we could go to bar code 4.  It's item 4 of this

9   document.  There's a box entitled, "System

10  Requirements" there.  Do you see that?

11  A   I do.

12  Q   Where is the information relevant to the Lawson

13  system foundation here?

14  A   It says that the following software and hardware

15  requirements must be met before you install the

16  product.  And then in the table below, the first row

17  says, "Lawson system foundation."

18  Q   Okay.  So before you can install Lawson's

19  requisition self service, one of the requirement

20  components is the Lawson system foundation; is that

21  right?

22  A   That's what this says.

23          MR. McDONALD:  Your Honor, I object.  It's a

24  little unclear at this point because requisition self

25  service is a different module from the ones we were

1    talking about earlier.  So I would object as

2    ambiguous.

3             MR. ROBERTSON:  It's one of the component

4    modules that Dr. Weaver has already mentioned.  We can

5    go back and finish building the blocks if you'd like.

6    Q    Let's go back to your building components, if we

7    could.  Then we can circle back.

8         So you have got your platform technology here of

9    the Lawson system foundation and the process flow.

10   What is the next software module or program that you

11   need in order to have an infringing system?

12   A    The procurement modules that are needed for an

13   infringing system include purchase order, requisitions

14   and inventory control.  These are the three that we

15   just saw in the previous documents.  And for

16   clarification, the requisition self service is going

17   to sit on top of this.

18   Q    But at this point, let's go back, at this point

19   with this platform and these three modules, does that

20   comprise an infringing system?

21   A    Yes, it does.

22   Q    And you're going to discuss in detail the purchase

23   order module, the requisitions module, and the

24   inventory control module in the context of Lawson's

25   documents and witness testimony?

1   A    Yes, I am.

2   Q    Well, let's go to the next build then.  So the

3   next thing you placed on top of this platform here

4   we're building is this module or software program

5   called "requisition self service."  Do you see that?

6   A    I do.

7   Q    Why did you do that?  Why did you make the

8   arrangement like this?

9   A    Because the requisition self service is a module

10  that is modern and user friendly.  So it has a web

11  based interface.  But it uses the functionality of the

12  requisition module below it.

13       So requisition self service can be installed only

14  if you already have the requisition module beneath it.

15  So you can think of, in software terms, the

16  requisition module provides a certain set of

17  capabilities and functionalities, and requisition self

18  service is a user friendly overlay on top of that.

19  Q    Does it permit more end users to utilize the --

20  A    Yes.  By user friendly, this means that you don't

21  need as much training.  You don't need to be as much

22  of a specialist.  It's more for the guy on the street.

23  Q    Does the requisition self service permit Lawson to

24  distribute the functionality for this electronic

25  sourcing and procurement to a greater number of

1   individuals within a company, for example?

2   A    Yes, it does.

3   Q    Do you know whether or not Lawson when it licenses

4   this requisition self service module, licenses it on

5   the basis of the number of potential users of that

6   software module?

7   A    Yes.

8   Q    Do they?

9   A    Yes.

10  Q    Just so I'm clear, the requisition self service

11  module can't work without the requisition module that

12  sits upon the Lawson system foundation and process

13  flow flat on technology foundation.  Is that what

14  you're indicating?

15  A    Yes, that's correct.

16  Q    Is there another module that you did an analysis

17  of?

18  A    Yes.  So there's a Punchout module, which I kind

19  of indicated for.  It sits on top of requisition self

20  service.

21  Q    Are we going to see some documentation and have

22  you reviewed some testimony in which the purchase

23  order requisitions and inventory control modules that

24  are all the S3 procuring modules require the Lawson

25  system foundation?

WEAVER - DIRECT                     582

1    A    Yes.

2    Q    Do they?

3    A    They do.

4    Q    So just going back then to Plaintiff's Exhibit

5    No. 131, which was the --

6              THE COURT:  Go back to the other one just a

7    minute.

8              Are you saying that you can't use the

9    procurement Punchout without also using the RSS, the

10   S3, and the foundation?

11             THE WITNESS:  Yes, Your Honor.

12             THE COURT:  All right.  Go ahead.

13             MR. ROBERTSON:  I was going to come to that,

14   Your Honor, but thank you.

15   BY MR. ROBERTSON:

16   Q    Let's go back to that for a second since the Court

17   has raised the question.

18        So if I'm going to have procurement Punchout, that

19   capability to go out over the Internet and go to

20   individual vendors for specially created Lawson vendor

21   website in order to do my shopping, I must have

22   licensed requisition self service, the three S3

23   procurement modules, and the platform technology

24   foundation including Lawson's system foundation and

25   process flow; is that right?

WEAVER - DIRECT                    583

1    A    That's correct.

2    Q    Is that reflected in the documents and the

3    testimony that you have seen?

4    A    Yes, it is.

5    Q    And just so we're clear, procurement Punchout

6    sitting alone, can it perform the functionality of

7    going out over the Internet to individual vendors in

8    order to do this shopping function?

9    A    No.

10   Q    Requisition self service sitting alone without the

11   S3 procurement modules and the platform technology,

12   can it perform any of the functionality that's

13   described in the patents?

14   A    No.

15   Q    Let me just be clear then.  So Punchout

16   procurement alone in your opinion doesn't infringe any

17   of the claims of the patent?

18   A    Not by itself.

19   Q    Well, requisition self service alone doesn't

20   infringe any of the claims of the patent?

21   A    Correct.

22   Q    If we could go back to just the yellow and blue.

23   In this configuration, are you going to have opinions

24   with respect to whether or not the functionality

25   provided by the software here, the capability of the

1    software infringes the claims of the patent?

2    A    I'm going to have an opinion on that.

3    Q    Why don't you just preview that opinion?

4    A    And my opinion is that this is an instance of an

5    infringing system.

6    Q    Let's add the next module.  Is this going to be

7    also instances of infringing activity under the claims

8    at issue here?

9    A    Yes, it is.

10   Q    Let's add the next module.  Is this also going to

11   be instances of infringing activity under the claims

12   that are at issue here?

13   A    Yes.

14   Q    Let's add the next module.  Here's a module that

15   sits on these S3 procurement modules called the

16   electronic data interchange.  You talked a little bit

17   about that.  Is that a module that Lawson offers as

18   part of its infringing system?

19   A    Yes, it is.

20   Q    And that is sitting on top of your S3 procurement

21   modules and your platform technology modules.  Do you

22   see that?

23   A    That's right.

24   Q    With just the electronic data interchange and the

25   S3 procurement modules and the platform technology

1    foundation, can that be an instance of infringing

2    activity under the asserted claims?

3    A    Yes, it can.

4    Q    Again, just to be clear, though, because this can

5    be a little confusing.  I don't need all of these

6    modules in order to infringe the claims, do I?

7    A    You do not.

8              THE COURT:  Are you at a transition point?

9              MR. ROBERTSON:  This would be a good time to

10   break, Your Honor.

11             THE COURT:  All right, ladies and gentlemen.

12   We'll have the morning recess for about 20 minutes.

13   And, if you will, just take your notepads with you.

14   That will be fine.

15             (The jury is out.)

16             All right.  We'll be in recess for 20

17   minutes.

18             (Brief recess taken.)

19

20

21

22

23

24

25