SHAMOS - DIRECT                    1740

1    (The jury is present.)

2         THE COURT:  Excuse me.  I interrupted you.

3  So you need to go back to go whatever question you

4  were on before.

5  BY MR. McDONALD:

6  Q   Doctor, how about if we put up slide No. 4,

7  please.

8         THE COURT:  Doctor, it's right there in front

9  of you.  Can you see it?

10         THE WITNESS:  Yes, I can.  I was just

11  wondering how the jury is seeing it.

12         THE COURT:  They have some down there.

13         THE WITNESS:  I got that.  Okay.

14  BY MR. McDONALD:

15  Q   Everybody has a tv.  So don't worry.

16  A   Is this one of those draw on it screens?

17  Q   Yes.  So if you hit the lower left corner, all

18  those marks you just put on will disappear.

19     Now, did you put some slides together in

20  connection with getting ready to testify here today,

21  Dr. Shamos?

22  A   Yes.

23  Q   I'm going to use a few of those this afternoon and

24  probably a few more tomorrow, but you have a summary

25  that you put together.  Is this one of the slides you

1  put together?

2  A    Yes.

3  Q    Just to clarify here, Mr. Robertson asked me to do

4  this.  So we've got four numbered systems on this

5  slide, correct?

6  A    Yes.

7  Q    Also there's a combination of that EDI plus S3

8  Procurement.  Did you also look at EDI plus S3

9  Procurement with the RSS system as well?

10  A    Yes, I looked at everything that was alleged in

11  Dr. Weaver's report.

12  Q    Would that be a fifth system, in effect, if we

13  were going to add another number or would you just

14  consider that as part of No. 3?

15  A    I didn't specifically list it.  It should be a

16  fifth one.

17  Q    So that would be a fifth one.  Then the EDI system

18  plus S3 plus the Punchout, is that the sixth one?  Did

19  you look at that one as well?

20  A    Yes.

21  Q    Now, you have got some brackets here with 1, 2, 3.

22  Do you see that?

23  A    Correct.

24  Q    What was your summary with respect to those first

25  three products regarding the infringement issue?

1   A    It says on the left, These products use the same

2   item master database, which means that when one is

3   looking for items to order, the only place that is

4   considered is what's in item master.   That's not the

5   case for Punchout plus RSS.

6   Q    So you put the combination of Punchout plus RSS

7   plus EDI with the lower group there or with the upper

8   group?

9   A    Anything that involved Punchout would be in the

10  lower group.

11  Q    So that sixth one would be in the lower group and

12  the fifth one would be in the upper group?

13  A    Yes.

14  Q    So just so we're clear on the record here, those

15  first three systems that are listed here associated

16  with the item master issue, can you summarize what

17  those three systems are?

18  A    Well, it's as they say.   S3 is the fundamental

19  product that has those three listed modules.   No. 2

20  adds in requisition self service.   And No. 3 combines

21  EDI, which is a mechanism for a customer to

22  communicate with other parties over electronic means

23  with that combined with S3.

24  Q    Those are all products that use the item master

25  database?

SHAMOS - DIRECT          1743

1    A    That use only the item master database.

2    Q    With respect to Punchout, what were you trying to

3    convey with that information on the left-hand side of

4    this slide?

5    A    Well, for Punchout the user has the ability to go

6    and visit a website that is maintained by a vendor or

7    supplier of products and perform a search of those

8    products using that vendor's search capability and

9    that's not available in plain S3.

10              MR. McDONALD:  Can you take that slide off

11   for now.

12   BY MR. McDONALD:

13   Q    Doctor Shamos, as part of your review of the

14   patents involved in this case and with the file

15   histories, did you look at those materials the

16   standpoint of what one of ordinary skill in the art

17   would consider those materials to mean?

18   A    Yes.

19   Q    Generally, can you describe for me the person of

20   ordinary skill in the art, as you understood it, for

21   purposes of your analysis?

22   A    Yes.  The one of ordinary skill in the art is

23   someone who ought to be able to make and use the

24   invention without undue experimentation.

25        So I looked at what was disclosed in the patents

1   and looked at what level of skill or education would

2   be required for someone to be able to do that, and it

3   has to be somebody with the ability to write computer

4   programs and computer systems.  And so, typically,

5   that would be considered to be somebody who has an

6   undergraduate degree in computer science or the

7   equivalent or equivalent experience.

8        And because these are electronic procurement

9   systems, which are of a very serious nature.  They

10  involve sometimes very large orders.  They are

11  critical to a company.  I don't think you would put a

12  novice on a job like that.  So I believe that somebody

13  would have needed two years experience in and around

14  commercial ordering systems, electronic procurement

15  systems.

16  Q   So when you did your analysis in this case, did

17  you do it with an eye toward a person as you just

18  described would review the patents and understand

19  them?

20  A   Yes.

21  Q   Is there a time component to that as well in terms

22  of what year that person of ordinary skill would be in

23  existence?

24  A   There are different applications of the ordinary

25  skill in the art for infringement and invalidity.

1  Q   Let's stick with infringement at this point.  Is

2  there a time component to a person of ordinary skill

3  that you viewed this from the perspective of for

4  purposes of infringement?

5  A   Well, to understanding the meaning of the claim

6  terms one goes back to the time when the invention --

7           MR. ROBERTSON:  Objection, Your Honor.

8           THE COURT:  The answer to the question is at

9  the time of the invention, period, right?

10          THE WITNESS:  Correct.

11          THE COURT:  And the time of the invention is

12 when the patent is what?  Is that your understanding?

13          THE WITNESS:  Well, when the application is

14 filed.

15          THE COURT:  What's that?

16 Q   1994.

17 A   Correct.

18          THE COURT:  What?

19          MR. McDONALD:  1994.  I'll try to pick it up

20 here at the end.  I'm sorry.

21 Q   From reviewing these materials to the patents from

22 the perspective of one of ordinary skill, can you

23 summarize for us generally how the patents describe

24 the invention at issue here?

25          MR. ROBERTSON:  I'm going to object, Your

SHAMOS - DIRECT                    1746

1   Honor, to generally how it describes.  In fact,

2   there's a slide here that I was anticipating Mr.

3   McDonald bringing up and we have an objection to

4   because we think it pertains to getting legal

5   opinions.  That has been ruled out of the case.  Also

6   to attempting to recharacterize or reargue the Markman

7   ruling, in which the Court has given a construction.

8         So how they generally describe it doesn't

9   really matter, Your Honor, and it's going to be a

10  reference here to the prosecution of the patents.

11        MR. McDONALD:  Your Honor, I don't have any

12  slides up there.  I'm trying to avoid the issues that

13  they raised with us at least to get through this

14  afternoon on that.  I'm not talking about the file

15  history at this point.

16        I'm asking about after reading the patents,

17  generally what's the invention, which I think is very

18  helpful to the jury's understanding of a complex case.

19        MR. ROBERTSON:  The claims define the

20  invention, Your Honor.  It's the claims that the jury

21  is going to have to look at, not some characterization

22  of what generally the invention is.

23        THE COURT:  I think Mr. Robertson is right.

24  Sustained.

25  BY MR. McDONALD:

1   Q   Can you tell me --

2            MR. McDONALD:   Can we go to slide No. 6,

3   please?   Put that up.

4   Q   Dr. Shamos, you put this slide together as well,

5   correct?

6   A   Yes.

7   Q   Does this slide up on the screen right now, is

8   this displaying your No. 1 reason for non-infringement

9   in this case?

10   A   It is.   There are many reasons.   There are two

11   reasons that I think cover a huge fraction of the

12   claims, and we'll go through those two first, and then

13   later on when we get into the individual claims, I'll

14   be able to give the other reasons.

15   Q   So what's reason No. 1 of your reasons for

16   non-infringement?

17   A   Well, reason No. 1 is 11 out of the 12 claims

18   require a catalog or catalogs.   And because Lawson's

19   products don't have a catalog, they can't satisfy the

20   requirements of at least 11 of the 12 claims.

21   Q   Why in your opinion do 11 of the 12 claims -- I'll

22   withdraw that.

23       Why in your opinion do Lawson's systems not

24   infringe those 11 claims that you're talking about in

25   some?

SHAMOS - DIRECT                    1748

1   A   Because 11 of those 12 claims require two or more

2   catalogs and unless you have two or more catalogs, you

3   can't infringe those claims.

4   Q   Do you know whether or not Dr. Weaver agrees with

5   you that that infringement would turn on whether or

6   not 11 of those 12 claims have multiple catalogs?

7   A   Well, my recollection from his report is his

8   opinion is that they do have catalogs.

9   Q   Do you understand he would agree with the

10  principal, though, that if the Lawson systems did not

11  have multiple catalogs, 11 of the 12 claims would not

12  be infringed?

13  A   He should agree with it.  I don't know.

14          MR. ROBERTSON:  Objection.

15          THE COURT:  Sustained.

16  BY MR. McDONALD:

17  Q   Why don't we go to slide No. 8, please.

18      Do you see up on the screen, Dr. Shamos, this is

19  another slide that you prepared, correct?

20  A   Yes.

21  Q   Well, what are you depicting here in this slide?

22  A   I'm just reiterating the Court's -- literally the

23  Court's construction of the term "catalog."

24  Q   How did you use this Court construction of the

25  term "catalog" in your an analysis?

SHAMOS - DIRECT                    1749

1    A    Well, I looked at item master and I tried to

2    determine whether item master satisfied the Court's

3    construction.  And I concluded that it didn't.  And so

4    therefore it doesn't have a catalog.

5    Q    So when doing that analysis, did you use the Court

6    construction as set forth here on this slide?

7    A    It's a basic prerequisite of the analysis.

8    Q    If we could go to the next slide that you put

9    together, please.  I think this one is not objected

10   to.

11        So here in this next slide, No. 9, Dr. Shamos, can

12   you summarize your reasons why the Lawson system does

13   not have a catalog?

14   A    Yes.  Right now we're --

15   Q    I'll walk you through this step by step here and

16   we'll stick with the question and answer format.

17   A    Yes.

18   Q    I'll start by saying can you give me a summary of

19   why in your opinion the Lawson systems do not have a

20   catalog as the Court has defined that term?

21   A    Well, I think we should just go back to the

22   previous slide and go look through the Court's

23   construction.

24        They are certainly an organized collection of

25   items and associated information in item master.  So

SHAMOS - DIRECT                1750

1   that prong of the construction would be satisfied.

2   But that information is not published by a vendor,

3   either a supplier, manufacturer or distributor.  It's

4   carefully handpicked by a customer.  A customer

5   decides what to import into that item master database,

6   and it doesn't constitute a catalog or even multiple

7   catalogs.

8   Q    What is your understanding as to what an item

9   master does in the Lawson systems?

10  A    Item master, I think, is intended to represent the

11  universe of items that an employee of a corporation is

12  able to buy regardless of what the source may be.

13  Q    What's your understanding as to what sort of

14  information is in the item master in the Lawson

15  systems?

16  A    It has information about items.  It would have

17  their name, it would have a catalog number, it may

18  have an identification of who's selling the item, an

19  identification of who manufactured the item.  It has

20  information about any special pricing terms that are

21  available to this particular customer because of

22  contracts that they may have entered into with

23  suppliers, and other information that the user of the

24  system finds useful to associate with particular

25  items.

1  Q   Can you summarize for me the differences between

2  the Lawson systems item master and catalogs as the

3  Court construed it?

4  A   Well, a catalog is a compendium of information

5  about the things that a vendor is offering for sale.

6          THE COURT:  I've defined what a catalog is

7  and that's the end of it.  Whether anybody agrees with

8  it, that's the catalog definition.

9          MR. McDONALD:  Sure.

10         THE COURT:  We're not going to have him

11  defining the catalogs.  I've told you-all that before.

12         MR. McDONALD:  That wasn't my intent.

13         THE COURT:  Well, he did.  He started off

14  defining it.  So let's don't have it.  And I don't

15  really want to have to deal with this problem, Mr.

16  McDonald.  He can testify, but I don't want to have to

17  be constantly monitoring whether there's compliance

18  with the requirement that the terms are those defined

19  by the Court.

20  BY MR. McDONALD:

21  Q   Do you have an understanding as to whether or not

22  the item master in the Lawson systems includes

23  information about a customer's inventory of a given

24  item?

25  A   Yes.

SHAMOS - DIRECT                    1752

1    Q    What sort of information does the item master have

2    about a customer's inventory of a given item?

3    A    One piece of information is quantity on hand.

4    Another piece of information that be where the item

5    can be found, where the inventory is physically

6    located.

7    Q    When you say where it can be found or located, are

8    you talking about where at the customer's premises it

9    could be located or something else?

10   A    It may be that -- well, the customer is typically

11   going to have information about how much of that

12   particular item he has on hand on his premises.  He

13   generally doesn't know how much a vendor would have

14   available.

15   Q    Are you familiar with how the item descriptions

16   are created for purposes of the item master?

17   A    Not in detail.  There's a field in item master

18   that allows for a description of a product.  Those

19   descriptions can be imported from files provided by

20   vendors or they can be hand created by the customer.

21   Q    Have you seen some documents in this case relating

22   to Lawson where they refer to features of the Lawson

23   systems in terms of being able to load vendor catalog

24   data and the like?

25   A    Yes.

SHAMOS - DIRECT                1753

1    Q    Given that those documents do use the term

2    "catalogs," why is it that you concluded that that

3    wouldn't indicate that the item master has multiple

4    catalogs?

5              MR. ROBERTSON:  Objection to the form of that

6    question, Your Honor.

7              THE COURT:  What is objectionable about the

8    form?  That different documents have different reasons

9    or that he can't testify to it or what?

10             MR. ROBERTSON:  He can't testify and

11   characterize what those documents mean and whether

12   they do doesn't mean they comply with the Court's

13   claim construction because they use the term

14   "catalog."

15             THE COURT:  So the objection to the form of

16   the question is that he doesn't have any basis for

17   knowing what the author of a particular document

18   meant.  Is that right, Mr. Robertson?

19             MR. ROBERTSON:  Yes.  Thank you for

20   articulating that for me, sir.

21             THE COURT:  What's your response to that, Mr.

22   McDonald?

23             MR. McDONALD:  I don't think my question was

24   asking what the author of the documents meant.  I was

25   asking basically for how he incorporated his analysis

SHAMOS - DIRECT                1754

1    of those documents into his conclusions for this case.

2              THE COURT:   I think that's correct, but I

3    think that's a different way of asking the same

4    question.   It's sustained.

5    BY MR. McDONALD:

6    Q    Do you have an understanding, Dr. Shamos, based on

7    your review of the materials in this case as to how

8    the item master is created in the Lawson systems?

9    A    Yes.

10   Q    What's your understanding?

11   A    When the Lawson software is delivered or installed

12   at a customer, the item master is empty.  It has no

13   items in it.  It has to be populated with items by the

14   customer.  Sometimes with the assistance of Lawson.

15   The sources of information that the customer may use

16   to populate the item master database is completely up

17   to the customer.

18      In some cases, they begin with electronic files

19   that are available from vendors and they pick and

20   choose those items from the vendors that they would

21   like to incorporate.

22      Because the format of item master does not conform

23   to the format of any known vendor's information

24   system, data has to be plucked out and it has to be

25   changed in format so that it can be entered into item

1   master.

2   Q   When you say "plucked," I think that was the word

3   you used, what do you mean by that?

4   A   Selected.

5           MR. ROBERTSON:  Can I just have a continuing

6   objection to this line of questioning pursuant to the

7   Court's earlier ruling?

8           THE COURT:  Yes.

9           MR. ROBERTSON:  Thank you, sir.

10  BY MR. McDONALD:

11  Q   How did you get that understanding as to how the

12  item master is created, Dr. Shamos?

13  A   From reading the deposition testimony.

14  Q   I think I forgot to follow-up on the question.  I

15  think you used the word plucked, and I just want to

16  clarify.  What did you mean by plucking in the context

17  of the item master?

18  A   It's in general impossible to import everything

19  from an external file into item master.  The reason is

20  that item master has a very particular structure

21  that's set up by Lawson that may not have room for or

22  even field names for everything that might be in that

23  external file.  So somebody has to make a decision as

24  to what pieces of information from the external file

25  are going to be imported into item master.  And that's

1756

1    what I meant by plucking.  It's really selecting.

2            THE COURT:  All right.  The way to deal with

3    that is to answer that I meant by "plucking,"

4    selecting, without all of the other material, Dr.

5    Shamos, because then you aren't answering the question

6    that was asked.  And the lawyer on the other side

7    doesn't even have an opportunity to object except to

8    strike the answer.  And then we have confusion.  So

9    please confine your answers to the question that's

10   asked and only the question that's asked.

11           THE WITNESS:  I understand, Your Honor.

12           THE COURT:  Okay.

13   BY MR. McDONALD:

14   Q   So this catalog issue in the item master not being

15   multiple catalogs, that deals with 11 of the 12

16   asserted claims, right?

17   A   Yes.

18   Q   Now, let's turn to the 12th claim.

19           MR. McDONALD:  Could we go to slide No. 12,

20   please.

21   Q   Did you also put this slide together, Dr. Shamos?

22   A   Yes.

23   Q   Is this slide relating to that 12th claim?

24   A   Yes.

25   Q   Can you summarize for us why in your opinion that

1    12th claim, which is Claim One of the '172 patent, in

2    your opinion is not infringed by any of the Lawson

3    systems in this case?

4    A    Yes.  It pertains to this limitation in the second

5    bullet point there.  That claim requires, and it's in

6    quotation marks.  It's the literal language of the

7    claim.  Database containing data relating to items

8    associated with at least two vendors maintained so

9    that selected portions of the database may be searched

10   separately.  And it's not possible to perform that

11   kind of search in the Lawson system.  You can't search

12   selected portions separately.

13   Q    Why can't you search selected portions of the

14   Lawson database separately?

15   A    There's no mechanism for even specifying such a

16   portion.  It's item master that is searched.  I can't

17   say I want to look at the right half or the left half

18   or the first half of item master.

19   Q    Do the patents-in-suit, do they describe some

20   functionality relating to selecting portions of a

21   database to search?

22   A    Yes, there are limitations.

23            MR. ROBERTSON:  I'm going to object because

24   it's plain language that controls.  This claim term

25   wasn't construed, so it has its ordinary meaning.  The

SHAMOS - DIRECT                    1758

1  suggestion is now we're going to go to the

2  specification that Dr. Shamos is going to provide a

3  construction for this term that was not in dispute

4  among the parties.

5          MR. McDONALD:  We're not talking about claim

6  construction, Your Honor.  I think we're going to find

7  an illustrative example.  I'll make that very clear.

8  It's an illustrative example of what the patents are

9  really talking about when they talk about selecting

10  portions to search.  It's really to help the jury

11  understand what's going on here.

12          THE COURT:  Are you talking about finding an

13  illustrative example where?

14          MR. McDONALD:  In column 9.

15          THE COURT:  In the specification?

16          MR. McDONALD:  Yes.  The preferred

17  embodiment.  Certainly the expert should be allowed to

18  talk about the preferred embodiment of the invention

19  to help explain how he reached his opinion, sir.

20          THE COURT:  He can talk about that.  That

21  wasn't the question.  Just ask him did he consider the

22  preferred embodiment in arriving at his opinions, and

23  what did he conclude from that.

24          He can do that, can't he, Mr. Robertson?

25          MR. ROBERTSON:  Well, Your Honor, I think --

SHAMOS - DIRECT                 1759

1      THE COURT:  With the instruction of the jury

2  that the invention is not confined to the preferred

3  embodiment.  That's just an example.  But as long as

4  the jury understands that, can't Dr. Shamos answer

5  that question?

6      MR. ROBERTSON:  With that instruction, Your

7  Honor, I withdraw the objection as long as we

8  understand the claims and we're not talking about the

9  preferred embodiment.

10     THE COURT:  No, he can say how he used the

11  preferred embodiment to arrive at his opinions with

12  the understanding for the jury that the preferred

13  embodiment is not part of the claim.  It's an example

14  of how you can use the invention in the claim.

15     Is that correct, counsel?  Is that a correct

16  statement?

17     MR. ROBERTSON:  Yes.

18     MR. McDONALD:  Yes, it's a preferred

19  embodiment, but just one embodiments of the claims.

20     THE COURT:  One of perhaps many?  All right.

21  That question you can ask, but it's not on the table.

22  So go ahead and ask it.

23     MR. ROBERTSON:  Your Honor, I want to renew

24  one additional objection, and I apologize, but this

25  was not Dr. Shamos' report.

1      THE COURT:  This isn't his report?

2      MR. ROBERTSON:  It's not in his report.

3      THE COURT:  Oh, it's not in his report.

4      All right.  Show me, counsel, where it is in

5  his report.  I have the report here.

6      MR. McDONALD:  All right.

7      THE COURT:  Well, what I have here is

8  actually the -- what do you call these?

9      THE WITNESS:  The spreadsheets.

10      THE COURT:  The spreadsheets.  Thank you very

11  much.  I have the spreadsheets.  I have the rest of

12  the report also, don't I?

13      MR. McDONALD:  Do you have the reports as

14  well?

15      THE COURT:  I do have the reports.  I have

16  the report and I just need to find what I've got.

17  Well, let's see.  I have the rebuttal report of

18  non-infringement.  Is that what you're talking about

19  that's not in?  Is that correct?  I mean, is that what

20  we're talking about?

21      MR. McDONALD:  That's what we're talking

22  about.

23      THE COURT:  So I now have the right data.  If

24  somebody would like to tell me where it is.  Just

25  refer, me to either a paragraph or to the designation

SHAMOS - DIRECT          1761

1  system used by Dr. Shamos on his chart or I guess

2  there's a page or something on it, isn't there?

3           MR. McDONALD:  I think a paragraph 229 of his

4  report, Your Honor, is the relevant place to go to

5  refer to his opinion.

6           THE COURT:  Do you have a page number?

7           MR. McDONALD:  No, I don't.

8           THE COURT:  Wait just a minute.

9           MR. McDONALD:  That's pages 63 to 64, Your

10 Honor.

11          THE COURT:  It's at 229.

12          MR. McDONALD:  Paragraph 229 goes into the

13 issue of selecting catalogs to search.

14          What I can do is just walk him through that

15 paragraph.  I'll withdraw that pending question and

16 we'll take it a step at a time and see if we can just

17 do it that way.

18          THE COURT:  All right.

19 BY MR. McDONALD:

20 Q   Dr. Weaver --

21          THE COURT:  No.

22          MR. McDONALD:  Did it again.

23          THE COURT:  He's sensitive to this Dr. Shamos

24 because I renamed him several times.

25          MR. McDONALD:  That's right.  I have to take

1   it out on somebody.

2   BY MR. McDONALD:

3   Q   Dr. Weaver, why is it?

4        MR. McDONALD:  I did it again.

5        THE COURT:  I'm wondering if -- we'll try one

6   more time.  If we can't, we'll adjourn.

7   Q   Dr. Shamos.

8   A   Yes, that's correct.

9   Q   Thank you.

10       MR. McDONALD:  Is that okay to be leading,

11  Your Honor, on that one?

12       THE COURT:  Lead him right down the road.

13  Q   Dr. Shamos, what is it about the structure and

14  operation of the item master in the Lawson system that

15  precludes selected portions of it from being searched

16  separately?

17  A   Well, there are several mechanisms.  One is that

18  there isn't a screen or capability that says I would

19  like to search such and such portion.  You can't even

20  specify it.

21       Furthermore, the organization of the item master

22  database doesn't allow, for example, selection or

23  searching separately by one vendor or another.  It's

24  just not organized that way.  That kind of search is

25  even precluded by the organization of the database.

SHAMOS - DIRECT                    1763

1   Q    How do you know that?

2   A    Oh, because there's a document that I looked at

3   that's part of Lawson's documentation that describes

4   every field in the item master database.

5   Q    Do you have an understanding as to what the other

6   expert, Dr. Weaver, says about how indexing relates to

7   whether or not the Lawson system would satisfy this

8   claim?

9   A    I don't know what he said here.  I know what he

10   said in his report.

11   Q    Okay.  Do you believe that the indexing done in

12   the Lawson item master would mean that the item master

13   in effect has selected portions that may be searched

14   separately as required by Claim One of the '172

15   patent?

16   A    No.

17   Q    Why is it that that indexing feature of the item

18   master doesn't result in infringement of Claim One of

19   the '172 patent, Dr. Shamos?

20   A    Because all indexing does is it speeds up a

21   search.  It doesn't allow you to eliminate a portion

22   of the database from being searched.

23   Q    The index, is that a selected portion of the

24   database?

25   A    No.

1    Q    Why not?

2    A    No one is doing the selecting.

3    Q    Now, is it your understanding in the patent that

4    the preferred embodiment, does it describe selecting?

5         MR. ROBERTSON:  Objection, Your Honor.  This

6    is what is not in Dr. Shamos' report.

7         THE COURT:  Please ask the question again.  I

8    was trying to look at something that he said, and I'm

9    not sure I got it exactly.

10   BY MR. McDONALD:

11   Q    Well, Dr. Shamos, as part of your report --

12        THE COURT:  Don't answer, Doctor, because

13   there's obviously going to be an objection.

14        MR. McDONALD:  Maybe not on this one.

15        THE COURT:  Maybe not on this one.  Okay.

16        MR. McDONALD:  Hope springs eternal.

17   BY MR. McDONALD:

18   Q    Dr. Shamos, as part of your analysis specific to

19   Claim One of the '172 patent, did you look at the

20   preferred embodiment descriptions, the description in

21   the patent?

22        MR. ROBERTSON:  He can answer that question

23   if he looked at it.

24   A    Yes.

25   Q    Did that analysis contribute to your conclusion

SHAMOS - DIRECT                    1765

1   that Claim One of the '172 patent is not infringed?

2   A   It may have contributed to it.  I think there are

3   multiple reasons it's not infringed.  I think one of

4   those reasons is bolstered by a description of the

5   preferred embodiment.

6   Q   Is there any discussion in the '172 patent or the

7   other patents-in-suit that indicate that indexing a

8   database is what is meant by selected portions of the

9   database may be searched separately?

10  A   No.

11  Q   How sure are you of that?

12          MR. ROBERTSON:  Object, Your Honor.  It

13  doesn't have to be in order -- there has to be an

14  embodiment.  It doesn't have to be an index in there

15  in order to satisfy the claim language.  The claim

16  language is what the claim language is.  Again, he's

17  trying to limit it to a preferred embodiment.

18          MR. McDONALD:  I'm just asking questions one

19  at a time, Your Honor.  We can't answer every question

20  at once here.

21          THE COURT:  The question that's actually on

22  the table is how sure are you of that, and that's not

23  a proper question.  But the substantive question to

24  which the objection was taken is overruled.  And his

25  answer is already on the record on that.

1    BY MR. McDONALD:

2    Q    Dr. Shamos, can we turn now to slide No. 17 here

3    and your reason No. 2 for non-infringement.  This is

4    another slide you prepared; is that correct?

5    A    Yes.

6    Q    What is your reason No. 2 for non-infringement?

7    A    Ten of the 12 claims require selecting catalogs to

8    search.  If there's no catalog, and certainly if

9    there's not more than one catalog, it's not possible

10   to select catalogs to search.

11   Q    Do you have and understanding from reading

12   Dr. Weaver's report as to what he is saying is how

13   Lawson system selects a catalog or catalogs to search?

14   A    I don't recall it sitting here.

15   Q    All right.

16              THE COURT:  I didn't hear what you said.

17              THE WITNESS:  I don't recall it sitting here.

18   I'm sure I read it.  I just can't spit it back out

19   now.

20   Q    Do you recall whether Dr. Weaver in his report

21   talked about a keyword search relating to selecting

22   catalogs to search for purposes of the claims in this

23   case?

24   A    I do recall that.

25   Q    What is your understanding as to the reason

1   Dr. Weaver says the Lawson system selects catalogs to

2   search?

3   A    I couldn't make any sense out of it.  There's a

4   keyword search function and it's --

5   Q    When you say "keyword search function," what are

6   you talking about right now?

7   A    So, for example, if I wanted to --

8   Q    I'm just saying what system?

9   A    S3.

10  Q    The Lawson system?

11  A    The Lawson system yes.

12  Q    So you're talking about the keyword search in the

13  Lawson system, right?

14  A    Yes.

15  Q    I'm sorry.  Go ahead.

16  A    If a keyword appears in a record in the item

17  master database, then it can be retrieved using

18  keyword search.  If, for example, and I think this has

19  something to do with the example in Dr. Weaver's

20  report, suppose when I was entering the description of

21  an item I happen to also put the manufacturer's name

22  in there like Dell, for example, for a computer

23  manufacturer.  So instead of just saying and X3D

24  computer, I put Dell X3D.

25       And then later on someone went and searched for

1   the keyword "Dell," then that particular record would

2   be retrieved.  But that describes what's retrieved.

3   It doesn't describe what gets searched.  What gets

4   searched is all of item master.

5   Q   So is it your understanding that these claims

6   require that you select the catalogs to search and

7   then search them?

8   A   Well, the claims do require that.  The selecting

9   step is just the selecting step, but then the search

10  is then restricted to those catalogs that are

11  selected.

12  Q   In the Lawson keyword search, does it not have

13  that process then, is that what you're saying, of

14  selecting catalogs to search and then searching them?

15  A   That's correct.  There's only item master.

16  Q   Now, if we could return to Claim One of the '172

17  patent.  I think I might have overlooked it.  There

18  was a second reason.  That one claim, that doesn't

19  explicitedly use the word "catalogs," at least another

20  reason it doesn't infringe in your opinion other than

21  the one you already described; is that correct?

22  A   I think so.

23  Q   Could we turn to slide No. 13, please?  Did you

24  also put together this slide Dr. Shamos?

25  A   Yes.

SHAMOS - DIRECT                    1769

1    Q    This relates to that 12th claim that does not

2    explicitly use the word "catalog," is that correct?

3    A    Yes.

4    Q    What are you trying to portray to us here in this

5    slide with respect to your analysis of why Claim One

6    of the '172 patent is not infringed?

7    A    One of the elements of that claim is means for

8    generating an order list.  And what I have after that

9    first bullet point, the function and structure.  The

10   function is taken from the Court's construction.

11   Structure, I took the first part of the Court's

12   construction.  I left off the specific examples of

13   structure that were in the construction.  But that's

14   because I don't think that's necessary on this

15   particular slide.

16        The question is:  If there can't be an order list,

17   then there certainly can't be a means for generating

18   an order list.

19        And the construction of order list is a list of

20   desired catalog items.  And if there's no catalog, you

21   can't have a list of desired catalog items.  You could

22   have a list of desired items.

23             MR. McDONALD:  Can we go to Plaintiff's

24   Exhibit No. 3?  Is that the '172 patent, Plaintiff's

25   Exhibit 3?

SHAMOS - DIRECT                    1770

1    BY MR. McDONALD:

2    Q    And go to Claim One, please.   This starts at the

3    bottom left column.   Let's blow up the bottom left

4    column to start off here.

5         So do we have up on the screen right now, Dr.

6    Shamos, at least a portion of Claim One of the '172

7    patent?

8    A    Yes.

9    Q    I think you can touch the screen here if that will

10   help.   Can you indicate where in this claim it talks

11   about that order list issue?

12   A    I'll do it without touching it.   It's line 65.

13   Means for generating an order list that includes at

14   least one matching item selected by said means for

15   search.

16   Q    Is that the element that you were talking about

17   when we were talking though slide 13?

18   A    Yes.

19             THE COURT:   That's the element that's not in

20   the Lawson system in your opinion.   Is that what

21   you're saying?

22             THE WITNESS:   That's correct.

23   BY MR. McDONALD:

24   Q    Is that at least one of the reasons for

25   non-infringement of this particular claim?

1       THE COURT:  That's reason No. 2, right?

2       MR. McDONALD:  Well, actually --

3       THE COURT:  Well, you started off with reason

4  No. 2.

5       MR. McDONALD:  It probably caused a little

6  confusion.

7  BY MR. McDONALD:

8  Q   This specific one, is this reason No. 2, Dr.

9  Shamos, in your slides?

10 A   Well, it's a second reason that the '172 claim is

11 not infringed.

12 Q   Thank you.

13     Can we blow up the rest of Claim One here in the

14 next column?

15     Does the concept of an order list come up in any

16 of the other elements of Claim One of the '172 patent,

17 Dr. Shamos?

18 A   Yes, it's a requirement of the means for building

19 a requisition, that first element at the top of the

20 rectangle.

21 Q   In what sense is an order list required for that

22 element?

23 A   Well, it's the order list is explicitly mentioned

24 in that means.  Means for building requisition that

25 uses data obtained from said database relating to

1  selected matching items on said order list.  And if

2  there's no order list, then that means for binding a

3  requisition cannot exist.

4  Q   So this is a second element in Claim One of the

5  '172 patents that requires this concept of an order

6  list being involved in the Lawson system?

7  A   Yes.

8  Q   And the Lawson system doesn't have that order

9  list, correct?

10  A   That's right.

11  Q   Let's return now to picking up where we left off

12  there after we left Claim One.

13          THE COURT:  Before you finish, on Claim One

14  there are really three reasons why you think there's

15  no infringement then.  One is that you can't search

16  selected portions separately of the database.  And the

17  other two are the ones you just testified to having to

18  do with the order list; is that right?

19          THE WITNESS:  Yes, you could count them as

20  three, but I was coalescing the last two because they

21  both relate to order list.

22          THE COURT:  Okay.  It's fair to say there's

23  no order list function.

24          THE WITNESS:  That's right.

25          THE COURT:  And that's really the two reasons

1   why you say that in the claims?

2         THE WITNESS:  Yes, because it shows up in two

3   different means, elements, but it's the same reasons

4   sort of.

5         MR. McDONALD:  If we could go back to the

6   first few elements of Claim One, Bill, of the '172

7   patent.

8   BY MR. McDONALD:

9   Q   Dr. Shamos, the Judge referred to the other reason

10  other than the one relating to the order list.  Can

11  you tell me which element your other reason for

12  non-infringement of this claim, where the other

13  element is that relates to that other non-infringement

14  reason?

15  A   Yes.  It's right below the line labeled 1 at the

16  top beginning, A database containing data relating to

17  items.  That element at the end.  So that selected

18  portions of the database may be searched separately.

19  You can't select separate portions of the database in

20  item master.

21  Q   So is it true that if the Lawson system is lacking

22  either one of those two features of Claim One, that it

23  would not infringe Claim One?

24  A   That's right.

25         THE COURT:  That's his opinion.

1     MR. McDONALD:  Okay.

2  Q   Is that your opinion, Dr. Shamos?

3  A   Well, it's my opinion that it's missing all of

4  them.  It's also my opinion if it were missing any one

5  of them, the claim wouldn't be infringed.

6  Q   Now, with respect to your reason No. 2, can you

7  again just summarize briefly for us your main reason,

8  No. 2, why 10 of the 12 claims aren't infringed?

9     THE COURT:  We're no longer on the '172

10 patent, Claim One.

11    MR. McDONALD:  That's correct.  Why don't we

12 go back to slide 17 from Dr. Shamos' slides.

13    THE COURT:  Did you think he was unclear?  I

14 thought he was pretty straightforward in what he said.

15    MR. McDONALD:  That's just music to my ears,

16 Your Honor, when I'm examining an expert witness.

17    THE COURT:  I don't think you need to repeat

18 everything unless you think there was some confusion.

19    MR. McDONALD:  Okay.

20 BY MR. McDONALD:

21 Q   So to summarize here your reason No. 2 for

22 infringement, Dr. Shamos, is that up on the screen

23 right now with this slide you prepared?

24 A   Yes.

25 Q   In a nutshell, what is your reason No. 2 for

1  non-infringement?

2  A    If there are no catalogs, you can't select

3  catalogs to search.   Surely true if there aren't

4  multiple catalogs.

5  Q    And that reason applies to 10 of the 12 claims,

6  correct?

7  A    Yes.

8  Q    So the other 2 claims, one of them is that '172

9  patent, Claim One, that we were just talking about,

10  right?

11  A    That's right.

12  Q    Do you recall what the other claim is of the 12?

13  A    I don't recall it by number.

14  Q    Can we go to slide No. 20 of the slides you

15  prepared?

16      This one talks about remaining claims for reason

17  No. 2; is that right, Dr. Shamos?

18  A    Yes.

19  Q    Does this refresh your recollection of a specific

20  claim of the specific patent involved with the other

21  one of those two claims that doesn't get addressed by

22  your reason No. 2?

23  A    Yes, it does.

24  Q    Which claim is that second claim?

25  A    It's the '516, Claim 9.   That doesn't require

SHAMOS - DIRECT                    1776

1   selecting catalogs, but it does require two catalogs

2   or a collection of catalogs.

3           MR. McDONALD:  Can we put up from the 516

4   patent, I believe that's Plaintiff's Exhibit 2, Claim

5   9, please.

6   BY MR. McDONALD:

7   Q   Looks like that one carries over to the next page

8   as well.  So I guess we'll just take this one a few

9   elements at a time here, Dr. Shamos.  All right?

10          Let's just say take a look at this Claim 9 of the

11  '516 patent and walk us through which elements of that

12  particular claim are elements in your opinion are not

13  found in the Lawson systems.

14  A   Yes.  We're just focusing on my first two reasons,

15  but the first element, a collection of catalogs of

16  items stored in an electronic format, there isn't a

17  collection of catalogs in S3.

18  Q   That's for the reasons you have already gone

19  through?

20  A   That's right.

21  Q   Are there any other elements in these first few

22  elements that are up on the screen right now regarding

23  Claim 9 of the '516 patent that relate to your reason

24  No. 1 or reason No. 2 for non-infringement?

25  A   Yes.  If you don't have a collection of catalogs,

1    you can't have a first catalog and a second catalog.

2    So that second identification code associated with a

3    second item in a second catalog can't exist because

4    there is no second catalog.  Even if there were a

5    first catalog.

6         MR. McDONALD:  All right.  Now, Bill, can you

7    go ahead and highlight any other elements of Claim 9

8    that might have carried over to the other column to

9    make sure we have covered what we want to cover at

10   this point.

11   BY MR. McDONALD:

12   Q    So we have now got the carryover portion of Claim

13   9 of the '516 patent up on the screen; is that right,

14   Dr. Shamos?

15   A    Yes.

16   Q    Does that last part now that's just been added to

17   the screen, does that relate at all to your reasons

18   No. 1 and 2 for non-infringement?

19   A    Yes.  Because that last limitation wherein a

20   selection, etc., that refers to first and second

21   catalogs.  And in the last line it refers to the other

22   of said catalogs.  If you don't have catalogs, you

23   can't have first and second.  You can't have other.

24   And even if you had one catalog, you wouldn't have

25   first and second or other.

1  Q   So while we're on the '516 patent, I'd like to

2  turn now and go through each of the 12 asserted claims

3  one at a time just to make sure we've hit each one of

4  them, all right?

5  A   Yes.

6          THE COURT:  You're shifting gears?

7          MR. McDONALD:  Yes.

8          THE COURT:  I think it's a good place to let

9  the jury go home for the night.

10          MR. McDONALD:  Sustained.

11          THE COURT:  Thank you.  I appreciate that.

12          Ladies and gentlemen, we'll start in the

13  morning.  Now, how are you finding nine o'clock?  Is

14  it okay to do it?  All right.  Nine o'clock.  I'll get

15  here a little earlier with the donuts.

16          Drive carefully.  Leave your notebooks with

17  Mr. Neal.  He'll take care of them for you.

18          (The jury is out.)

19          MR. McDONALD:  Your Honor, I just got word.

20  We did file a responsive brief to ePlus' brief on this

21  intent.

22          THE COURT:  It's too late.

23          MR. McDONALD:  Can I suggest --

24          THE COURT:  Response time lapsed.  Do you

25  mind if I read it?

1779

1    MR. McDONALD:   Yes.   I was just going to

2 suggest, does it make sense to come in a few minutes

3 before nine in the morning tomorrow?

4    THE COURT:   Not if I'm going to get the

5 donuts as I promised from Westmoreland Bakery.

6    Mr. Neal offered to get them, but I think

7 maybe we'll just do that at some break.

8    But I needs the cases and the brief.   She's

9 printing off the brief right now.   And I'll look at

10 those tonight.   I'll take them home with me and read

11 them and then we'll find some time tomorrow to do it.

12    How long is Dr. Shamos' testimony going to

13 go?

14    MR. McDONALD:   I think another hour or so,

15 Your Honor, on direct anyway.   And just to be clear

16 here, and I've talked to Mr. Robertson about this and

17 I think we're all in agreement on this, our

18 understanding anyway is I should just be putting up

19 Dr. Shamos right now for infringement.   Then we're

20 going to bring him back to talk about validity issues

21 later once we've had our validity witnesses come in

22 and testify when we get to that part of the case.

23    Is that consistent with Your Honor's

24 understanding?

25    THE COURT:   I was envisioning breaking up the

1    testimony by topic.  I wasn't saying he should hit the

2    road and come back.  I didn't mean that.  You're

3    saying you need predicate witnesses to make his

4    testimony better understood?

5            MR. McDONALD:  I think it's logical.

6            THE COURT:  It's all right to do it that way

7    if you-all had planned to do it that way.

8            MR. McDONALD:  That's what we've given

9    Mr. Robertson notice of.

10           MR. ROBERTSON:  That's okay.  I don't have a

11   problem with that.

12           And you also have a witness issue you need to

13   deal with.

14           MR. McDONALD:  I think we're moving along at

15   a good enough pace here that this shouldn't be a

16   problem, but we have one fact witness that we don't

17   have under agreement.  She's just voluntarily showing

18   up.  It's the former IBM lady.

19           Tomorrow is the only day she could testify.

20   She's a validity witness.  I think it's going to work

21   out fine.  Mr. Robertson has been gracious enough to

22   indicate that if for some reason if Mr. Shamos is up

23   on the stand too long tomorrow, but at this point I

24   don't anticipate that being a problem, he was going

25   to, subject to Your Honor's approval, let us put her

1  on the stand.

2        THE COURT:  That kind of thing happens.

3        MR. McDONALD:  Her schedule was tough to work

4  with.  I thought it was because of that.  Even though

5  we're paying her evidently, it's been a challenge.

6        So thank you, Mr. Robertson.

7        I apologize for that, Your Honor.

8        THE COURT:  All right.

9        MR. McDONALD:  Thank you.

10       THE COURT:  Okay.  When am I going to get

11 from you-all any memorandum on the leave to file an

12 offer of proof?  Or have you agreed that it's okay or

13 has it been filed?

14       MR. MERRITT:  It was filed yesterday, Your

15 Honor.

16       THE COURT:  No, no, no, I mean the defense's

17 response.

18       MR. McDONALD:  If we file it by first thing

19 in the morning, Your Honor.

20       THE COURT:  I'm not pushing you to do that.

21 It's not that critical.  I just want to do a

22 housekeeping thing.  I'm not anxious to break

23 somebody's evening up into a miserable night.  It

24 doesn't need to go at that pace.  Good Lord, there's

25 enough that has to go at that past anyway.

1782

1        MR. McDONALD:  I'm going to propose --

2        THE COURT:  Monday or Tuesday?

3        MR. McDONALD:  How about the end of the day

4  Monday?

5        THE COURT:  Okay.  Will the electronics still

6  work?

7        THE CLERK:  I think it will.  Let me check.

8        MR. CARR:  Your Honor, the courthouse would

9  be closed.  So we wouldn't be able to deliver a

10  courtesy copy to you; is that correct?

11        THE COURT:  But Ms. Haggard knows how to work

12  the magic twanger.

13        MR. CARR:  Well make arrangements with

14  Ms. Haggard to get you your copy.  Thank you, Your

15  Honor.

16        THE COURT:  All right.  Did you have some

17  kind of thing about slides that need to be dealt with

18  that we're going to use in Dr. Shamos' testimony or

19  have you all worked that out?

20        MR. McDONALD:  I was trying to get through a

21  lot of this without even using some of them.  So I'm

22  going to try to look at that overnight here and maybe

23  we can do a little more back and forth and try to

24  narrow it down a little more.

25        THE COURT:  That sounds fine.

1    All right.  Your cases, Ms. Stoll-DeBell, do

2  they deal on this absence of counsel, opinion of

3  counsel, do they have any cases where some court has

4  actually addressed this issue in terms of showing

5  infringement and the intent element of infringement.

6  It's too late.  Induced infringement.  Sorry.

7    Did your cases have any direct relevance or

8  is this by analogy by you, too?

9    MS. STOLL-DeBELL:  No, Your Honor, we're

10  unable to find any case anywhere that has found that

11  the decision not to waive attorney-client privilege is

12  relevant to the intent element of inducing

13  infringement.

14    In fact, as I was reading the *Broadcom* case,

15  and it's in our memo as well, after the section we

16  were reading today, it actually goes on to say the

17  fact that *Qualcomm* had gotten invalidity opinions and

18  decided not to waive attorney-client privilege.  That

19  actually was excluded from evidence in that case.

20    THE COURT:  By the trial judge?

21    MS. STOLL-DeBELL:  Yes.  And the Court said

22  that was the right thing to do.  In these cases,

23  *Broadcom* relates to a failure to get opinion of

24  counsel.  It's a very different thing, Your Honor.

25    THE COURT:  It is a different thing in many

1  ways, but, honestly, it is very confusing, I think.

2  Frankly, I think the whole opinion of counsel

3  jurisprudence of the Federal Circuit needs to be

4  revisited, but I don't want to be the vehicle for

5  occasioning revisitation.

6  I just think it's gotten kind of confused as

7  the law has gotten shifted with Seagate and some of

8  these other cases.  But I don't want to be the

9  vehicle.

10  All right.  Mr. Strapp, did you find any

11  cases that were right on point like you said you'd do?

12  MR. STRAPP:  No, Your Honor.  I thought there

13  might be a district court case on point.  I went back

14  and checked it, but it's not specifically on that

15  point.

16  THE COURT:  Did anybody check to see if there

17  were any Law Review articles on the non-disclosure of

18  counsel?  Sometimes the absence of proof or authority

19  is a good thing, too.

20  MR. STRAPP:  Your Honor, we did find a few

21  cases that talk about that in the context of

22  willfulness, but that's specifically distinguished

23  from the context of indirect infringement.

24  THE COURT:  The problem I see is that there's

25  a tension between the concept that you shouldn't --

1    you don't have a duty to go running around getting

2    opinions and the nondisclosure of an opinion.

3            And if you really get down -- what is the

4    phrase you-all use?  Drill down into the whole

5    jurisprudence of it, I think there are some

6    fundamental flaws because what it does is basically,

7    in allowing that information in, because it runs afoul

8    of the basic rule that you can't have this jury

9    speculating about what the answer to the opinion that

10   wasn't disclosed was.  And that's the problem.

11           And I understand your position.  You're

12   arguing for an extension of the law that is reflected

13   in *Broadcom*, and I'll hear further.  I'll read these

14   cases and hear argument tomorrow.

15           MS. STOLL-DeBELL:  Your Honor, I just note

16   that we're very concerned about the questions and the

17   impression it left with the jury.

18           THE COURT:  I can solve it depending on the

19   ruling, won't I?

20           MS. STOLL-DeBELL:  Okay.

21           THE COURT:  We'll say "strike the evidence"

22   if the answer is it doesn't come in.  Don't you think?

23           MS. STOLL-DeBELL:  Yes.

24           THE COURT:  Is that what you want me to do?

25           MS. STOLL-DeBELL:  Yes, we have several

1   instructions that we think will be appropriate.

2           THE COURT:  Several?  How about one good one?

3           MS. STOLL-DeBELL:  One with many facets, Your

4   Honor.

5           THE COURT:  Listen, I'm going to make you sit

6   on the jury.  I think every lawyer ought to have to

7   sit on a jury and ought to have to listen to these

8   instructions and try to figure out what do they mean.

9   Because if you read them from the jury's standpoint,

10  particularly these model instructions in the patent

11  area, what they're doing is -- nobody has really made

12  a real good effort to simplify them yet.

13          Judge Spencer did better in SAP in

14  simplifying the instructions than almost anybody I've

15  ever seen, but there have with some legal changes

16  since that time that prohibit me from adopting them

17  full scale.

18          All right.  That takes care of them.  I'm not

19  real hopeful that you're going to get your evidence or

20  I don't think you ought to be hopeful that you're

21  going to get that evidence in, Mr. Robertson, because

22  it seems to me it invites the jury to speculate and

23  it's a problem, I think.

24          MR. ROBERTSON:  I understand, Your Honor.

25  We're also concerned about prejudice given the fact we

1   proffered that in good faith when it came up with the

2   witness that he had a lay opinion as to his intent.  I

3   thought it was relevant then because his lay opinion

4   as to the intent I didn't think was very persuasive,

5   but if you go get a legal opinion on these issues that

6   obviously involve the patents, and then you make the

7   conscious decision not to disclose it, I think that's

8   part of the circumstantial evidence they can consider.

9           I understand Your Honor's ruling.

10          THE COURT:  I haven't rules.

11          MR. ROBERTSON:  I understand Your Honor's

12   suggestion which way you might rule, but you're going

13   to be fair and read the papers.

14          THE COURT:  I thought maybe if I gave you all

15   some insight into where I was right now since we're on

16   the fly that your arguments might be better informed

17   in the morning, just as my thinking will be better

18   informed if I read what you-all tendered for me to

19   read.

20          Thank you so much for the overnight present.

21   I appreciate it.

22

23          (The proceedings were adjourned at 5:26 p.m.)

24

25

1788

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25