```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF VIRGINIA

3                     RICHMOND DIVISION

4

5    ---------------------------------------
                                           :
6    ePLUS, INC.                           :    Civil Action No.
                                           :    3:09CV620
7    vs.                                   :
                                           :
8    LAWSON SOFTWARE, INC.                 :    January 14, 2011
                                           :
9    ---------------------------------------

10

11           COMPLETE TRANSCRIPT OF THE JURY TRIAL

12          BEFORE THE HONORABLE ROBERT E. PAYNE

13        UNITED STATES DISTRICT JUDGE, AND A JURY

14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   David M. Young, Esquire
     Goodwin Procter, LLP
18   901 New York Avenue NW
     Suite 900
19   Washington, D.C.  20001

20   Craig T. Merritt, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia  23219-3095
     Counsel for the plaintiff
23

24               Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court
```

```
 1    APPEARANCES:   (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219

 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
      Merchant & Gould, PC
 7    80 South Eighth Street
      Suite 3200
 8    Minneapolis, Minnesota  55402

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        P R O C E E D I N G S

2

3            THE CLERK:  Civil action number 3:09CV00620, ePlus,

4    Incorporated, versus Lawson Software, Incorporated.  Mr. Scott

5    L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and

6    Mr. Michael G. Strapp represent the plaintiff.

7            Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.

8    Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent

9    the defendant.  Are counsel ready to proceed?

10           MR. ROBERTSON:  Plaintiff is, Your Honor.

11           MR. McDONALD:  Yes, we are.

12           THE COURT:  All right.  Ladies and gentlemen, I'm

13   pleased to report to you my unofficial survey that the economy

14   is recovered.  For the first time in 40 years of trading at the

15   Westhampton Bakery, I had to wait 20 to 30 minutes even to get

16   served, and this the lowest period of the year for that bakery,

17   they tell me.  So I just wanted you to know, but I told them I

18   was waiting because I had promised you would get your donuts

19   and I don't want to be guilty.

20           Dr. Shamos, I saw him earlier.  Dr. Shamos, I remind

21   you -- everybody is renaming you, aren't they?

22           THE WITNESS:  We'll see.

23           THE COURT:  I remind you you are under the same oath

24   you took yesterday, sir.

25           THE WITNESS:  Yes, sir.

1       THE COURT:  Thank you.

2

3                        **MICHAEL I. SHAMOS,**

4       a witness, called by the defendant, having been previously

5       duly sworn, testified as follows:

6                        DIRECT EXAMINATION

7       BY MR. McDONALD:  (resuming)

8       Q    Good morning, Dr. Shamos.  How are you?

9       A    Good morning.  I'm good.

10      Q    I would like to pick up where we left off, if I got it

11      right anyway here this morning, with this slide showing some of

12      the elements of claim one of the '516 patent on this slide that

13      you put together.  Can you walk us through --

14               THE COURT:  Mr. McDonald, excuse me.  Just for

15      orientation purposes, when we left off, you had said that you

16      were going through each claim one by one to show, and that's

17      what you are doing.

18               MR. McDONALD:  Thank you, yes.

19               THE COURT:  I said it's a good time to take a break,

20      so that's what we'll be doing now, is hearing Dr. Shamos's

21      opinion on each claim that's at issue.

22      Q    We have the 12 claims.  We're going to take them one at a

23      time; right, Dr. Shamos?

24      A    Yes.

25      Q    Okay.  So let's start here with what you have on your

1    slide, claim one of the '516 patent.  Can you walk us through

2    your thought process as you put this slide together to explain

3    your opinion about that claim?

4    A    Yes.  What I did here was I took each one of the asserted

5    claims.  I think the text of each claim is present in its

6    entirety, and I splint them out element by element, and where I

7    had a comment relating to that element, I put it in blue.

8         So the first element of the '516, claim one, is a

9    collection of catalogs of items stored in an electronic format,

10   and as I explained yesterday, there certainly is no collection

11   of catalogs.  So that element isn't present.

12   Q    Why don't we stop there for a moment, because I passed

13   over a slide yesterday, but I think we can come back to that

14   now today.  If we can go to slide ten that talks about the

15   catalog issue.  This is another slide you created; right, Dr.

16   Shamos?

17   A    Yes.

18   Q    So this relates to claim one of the '516 patent that we

19   started talking about today.

20        MR. ROBERTSON:  Your Honor, I am going to object to

21   this slide.  I apologize.

22        THE COURT:  Wait a minute.  Take the slide off,

23   please.

24        MR. ROBERTSON:  The last bullet point, Your Honor, as

25   addressed before, it says item master not published by a

1    vendor.  This was something that Your Honor addressed with Mr.

2    Christopherson.  That's not consistent with the Court's claim

3    construction.  The item master doesn't have to be published by

4    a vendor.  I think you took that up before.

5             THE COURT:  This is his reason for doing it.  We'll

6    deal with all of that later, I think.

7             MR. McDONALD:  Your Honor, just to be clear --

8             THE COURT:  Excuse me.  I'm sorry.  This is his

9    reason for his opinion, and I think he's entitled to give that.

10   Whether he's right or not, it's what you and Mr. McDonald will

11   have to argue to the jury.

12            MR. McDONALD:  So you know, we tried to go through

13   all these slides last night, and I thought actually this one

14   had been approved by ePlus's attorneys, and I'm trying to only

15   go through the slides today we've already cleared up.  So I

16   apologize for any glitches we have.

17            THE COURT:  I don't know that there was a glitch.

18   Anyway, the objection is overruled, and you may proceed.  Put

19   it back up, please, sir.

20   Q    So, Dr. Shamos, this was the slide you put together that

21   relates to the word catalog as defined by the Court in all the

22   various claims that use the word catalog; is that right?

23   A    Yes.

24   Q    So it's not just claim one of the '516 patent, right, that

25   we're talking about when we talk about catalogs?

1    A    That's right.  It's any time the word catalog is used.

2    Q    Okay.  So why don't you take us a bullet point at a time

3    and a take a pause here, and maybe I can ask you a question

4    between each bullet point to tell us about your analysis here

5    of the catalogs issue in this case.

6    A    Okay.  Well, we have to look at where the data in item

7    master comes from, because item master starts out empty when

8    the system is installed.  The purpose for the system is to

9    allow a user at a particular company, particular licensee of

10   this software, to be able to select items that he wants to have

11   supplied to him, wants to order.

12   Q    Let me stop you there.  Do you look at that as the same

13   purpose or a different purpose from a catalog as the Court has

14   defined it?

15   A    The purpose for a catalog is to allow somebody to know

16   what a vendor is offering, what their menu of selection is that

17   they can buy.  That's the purpose of the catalog.

18   Q    Is that the purpose of the Lawson item master?

19   A    Yes.

20   Q    Is the purpose of the item master of the Lawson system to

21   show the products that a vendor is offering to sell?

22   A    No.  It's to show the set of products that this company is

23   possibly interested in buying.

24   Q    So I'll let you continue then through the bullet points.

25   A    Yes.  So, there are many different ways in which data can

1   get into item master.  One way is that vendors make available,

2   in an electronic form, the list of products that they offer.

3   The customer can then choose from among those products the ones

4   that it would like to load into item master.  That's one way.

5       Another is it doesn't even have to start from a vendor.

6   It can be from databases that already exist at the customer.

7   The customer can decide to load those into item master.

8       Now, it's conceivable that somebody could take a vendor's

9   catalog and load absolutely everything that was in that catalog

10  that would fit into item master, into item master.  In that

11  case, I wouldn't see any particular difference between the

12  vendor's catalog and item master.  I don't have any evidence

13  that that ever occurred or ever does occur.

14  Q    In your report, I think when you were addressing this

15  issue, you talked in terms of a phonebook and an address book;

16  do you recall that?

17  A    Yes.

18  Q    Can you explain how that would relate here to your

19  analysis of the issue you were just talking about?

20  A    Yes.  Well, I have an address book, as many people do.  It

21  contains a list of people that I have a feeling that sometime

22  in the future I may want to contact or may want to call or may

23  want to write to, and one way to construct an address book is

24  to go through the phonebook, look up the phone numbers of the

25  people that you are familiar with, and you write those into

1    your address book.

2         You can think of the phonebook as the phone company's

3    catalog.  It's the list of people that are available to be

4    called by that phone company.  But an address book is not the

5    same thing as that.  The address book is uniquely crafted by

6    me.  It's my selection of those people that are callable that

7    I'm interested in calling.

8    Q    Is it your understanding that under Dr. Weaver's analysis,

9    would he consider that address book in your example there a

10   catalog as the Court has defined it or not?

11   A    That's my understanding.

12   Q    What is your understanding?

13   A    Of his opinion.

14   Q    What is your understanding?

15   A    My recollection from --

16        THE COURT:  Just a minute.  He doesn't have any way

17   of answering what Dr. Weaver testified to in court, because he

18   doesn't know, he was excluded, and what he remembers of Dr.

19   Weaver's report isn't appropriate for examination because the

20   reports don't come into evidence.

21        It's only the testimony that comes into evidence, and

22   so I don't think either one of you need to be questioning what

23   the other expert did in his report.  Those reports are done for

24   purposes of giving opinions and having preliminary matters.

25   The only purpose of it here in court, of the report here in

1    court is if an expert testifies beyond the scope of the report,

2    you need -- either one of you objects to it, to tell me what

3    the problem is, and I rule that he can't or can testify

4    depending upon whether the report covered that topic.

5            Otherwise, we're get -- what we're doing is actually

6    letting in the back door hearsay testimony about the other

7    person's report, and if the Doctor didn't testify to that in

8    court, and he doesn't have any way of knowing what Dr. Weaver

9    testified to, he can't be examined about that.  So let's don't

10   be asking him, anybody about the other expert's report or their

11   testimony because they don't know.

12   Q    In your --

13           THE COURT:  There's a way to frame questions that

14   deal with whatever was said, but that's up to you.  You know

15   how to do that.

16   Q    In your example, Dr. Shamos, regarding your personal

17   address book, if I understood right you are saying your address

18   book is not like a published phonebook?

19   A    That's right.

20   Q    Even though -- now, in your example, did some of the data

21   in your address book originate from the phone company's

22   published phonebook?

23   A    Yes.  That's where phone numbers come from.

24   Q    Does that change your answer as to whether your personal

25   address book is a published phonebook or not?

1   A    No.

2   Q    Why don't you go ahead and continue with this slide.

3   A    Yes.  So the third bullet point, even if a customer loads

4   all item data from a published vendor catalog, that is if it

5   only comes from one place, that still doesn't mean it's a

6   catalog within the Court's construction.

7   Q    Why is that?

8   A    It was not emitted by a vendor.

9   Q    It was not?  I'm sorry?

10  A    It was not emitted, it was not distributed by a vendor.

11            THE COURT:  Just a minute.  The Court's construction

12  doesn't have anything to do with distributed by a vendor.  It

13  has published by a vendor.  That testimony -- what he just did

14  is give claim construction.

15            Let's keep it to the claim construction, please, the

16  questions, because it's hard enough for the jury to follow

17  technical issues in any patent case without having to undo what

18  has been done here.  So just, please, straighten it out.

19  Q    Maybe it would be useful, Dr. Shamos, if we just go to

20  slide ten, please.  This is some analysis that you did as to

21  why an item master in the Lawson system is different from the

22  catalog as defined by the Court; is that right?

23  A    Yes.

24  Q    Can you walk us through one bullet point at a time,

25  please, what you put together in this slide.

1          MR. ROBERTSON:  Your Honor, can I just have a running

2    objection to that?  First, it calls for a narrative, but

3    secondly, this has to do with our earlier issue with respect --

4          THE COURT:  He's now explaining the basis for his

5    opinion.

6          MR. ROBERTSON:  I understand, Your Honor.

7          THE COURT:  Within certain parameters, he can do

8    that, but if he starts -- you understand the reason why I'm

9    concerned in this particular case, do you not?

10         MR. McDONALD:  I understand you want us --

11         THE COURT:  Let me see counsel up here for just a

12   minute.

13

14         (Discussion at sidebar as follows:)

15

16         THE COURT:  My concern is I have excluded a great

17   number of his opinions, and I don't -- unless the questions are

18   framed in a way that Mr. Robertson knows what is coming, then I

19   get confronted with the situation that I have to go back and

20   undo, and that creates confusion in the minds of the jury.  And

21   I believe the expert, just like Dr. Weaver did, has the

22   opportunity to explain his opinions, but I think other than

23   just turning him on and turning him loose, if you could keep a

24   handle on it, that will solve that problem.  Then if there is

25   an objection -- I mean, you've seen this big thing they've

1   filed about what opinions are in and what aren't, and in this

2   particular case, I think we'll be better able to handle it

3   without having to undo anything, if, in fact, it needs undoing.

4   Do you see what my problem is here?

5           MR. McDONALD:  I do exactly, Your Honor.  I'm going

6   to give you a little context here.  That's one of the reasons

7   why we meticulously went through every slide that I'm going to

8   go through with ePlus's counsel before we got in here.  So

9   there's no surprises, at least on the slides, so it's really

10  going to guide things.  This slide, they've approved this

11  slide, and I'm not touching any slides today they haven't

12  already seen.

13          MR. ROBERTSON:  I understand --

14          THE COURT:  But you going to have to -- if, in fact,

15  there's an excursion in an answer you're going to have to stand

16  up and do something about it immediately.  It's impossible for

17  me to undo something once it's been said.  That said, I think

18  it's only fair that an expert have a chance reasonably to

19  explain his opinion.  That's just the way it's been done.

20          MR. ROBERTSON:  I appreciate that, Your Honor, but I

21  think his opinions still need to stay within the boundaries of

22  the Court's claim construction.  They have to be relevant to

23  the Court's claim construction, and they can't deviate from the

24  Court's claim construction.  So as long as -- I will be

25  objecting if he starts to suggest that your claim construction

1   can be satisfied by his, as he just did, essentially rewriting

2   it to suit his opinions.

3              THE COURT:  You see, he got into distributed in his

4   answer.  You didn't ask him --

5              MR. McDONALD:  You said something about emitted or

6   something.

7              THE COURT:  That isn't distributed.

8              MR. McDONALD:  With the slides, I'm really trying to

9   get him to stick to his bullet points here --

10              THE COURT:  I know.  That's one of the reasons I'm

11   saying all this, is if you have control of it, it's easier.

12              MR. McDONALD:  I'll try to focus my questions a

13   little more, but I do have a concern if Mr. Robertson is going

14   to say, well, I know the slides, I'm going to keep objecting to

15   what's on the slides, because we had a lot of give-and-take

16   over what's in these slides.  I don't want him to come in after

17   we've already given up some things and say, okay, now that

18   you've given up your stuff, I'm going to take more away.  I

19   think if it's on the slides, we've already agreed to that.

20              THE COURT:  Mr. Robertson, he says basically you have

21   agreed that as to the things on the slides, the area of

22   testimony can be covered; is that true?

23              MR. ROBERTSON:  I've agreed that this slide can be

24   covered.  What I didn't like about the question, Your Honor, is

25   it was give us all the reasons why you are now going to say

1     that these points here satisfy or don't satisfy the Court's

2     claims construction of catalog.

3              THE COURT:  I think he can do that point by point.

4              MR. McDONALD:  At least we have an agreement that as

5     to the slides themselves, we've already agreed.

6              THE COURT:  Have you?

7              MR. ROBERTSON:  Yes.

8              MR. McDONALD:  I'll just try to keep it real tied to

9     these slides, and that should keep us out of trouble.

10             THE COURT:  Thank you.

11

12             (End of sidebar discussion.)

13

14             THE COURT:  I thought this would make things go a

15    little better, I think.

16    Q    Dr. Shamos, I think we were on the first bullet point

17    here.  Had you finished talking specific about what the point

18    was you were making on that first bullet point on slide number

19    ten that's up on the screen right now?

20    A    I actually thought we were about to do bullet point number

21    four.

22    Q    That shows you how good my memory is.  Why don't we zero

23    in now on bullet point number four, item master is created by

24    the customer and includes this data.  Can you tell how that

25    specific point, sticking with that point, relates to your

1    opinion in this case?

2    A    Yes.  Certainly there's information about an item that

3    comes from a vendor.  For example, typically the part number of

4    the vendor, the number you would use to specify what product it

5    is you'd like to order, that's created by the vendor.  That's

6    part of the vendor's data.

7         So some of the data that goes into item master does come

8    directly from a vendor.  There's other information that doesn't

9    come directly from a vendor.  For example, the way the customer

10   chooses to describe the product, the name of it, relates to the

11   terminology that happens to be used in that company.  It may

12   not be the same as the name of the product in the vendor's

13   catalog, but, undoubtedly, some of the data that's going to end

14   up in item master has come from the vendor originally.

15   However, it's the vender -- it's the customer that's doing the

16   selection of which pieces of data it chooses to include in item

17   master.

18   Q    You have another slide that goes into that issue in a

19   little more detail; right?

20   A    Yes.

21   Q    So for those reasons, your bottom line here is this is why

22   the Lawson item master is not a catalog as the Court has

23   defined that term?

24   A    That's right.

25   Q    Let's go to slide number ten now.  I'm sorry.  Can you

1   give me a few other examples of the sort of information that a

2   customer adds to the item master that would not come from a

3   vendor?

4   A    Yes.  The customer can add special pricing information, if

5   it gets a discount, it adds information about quantity on hand

6   that it may have in its own inventory.

7   Q    How about approval process, are you aware of whether

8   customers sometimes have information in there about approval

9   process?

10          MR. ROBERTSON:  Objection, relevancy.

11          MR. McDONALD:  It's just another example of the

12   things we've already been talking about.

13          THE COURT:  As I recall it, the software, from the

14   testimony that your witness has put on, there's a special way

15   to get the customer approval, and that's not being accused in

16   the case.

17          MR. McDONALD:  I'm talking actually about the

18   information in the item master that relates to the approval

19   process.

20          THE COURT:  I see.  All right.  Overruled.

21   A    I don't have a specific recollection of that.

22   Q    I think you already talked about the issue of special

23   pricing.  I think we covered that one, didn't we?

24   A    Yes.

25   Q    Let's move on then.  Do you have an understanding as to

1    what ePlus contends is the number of catalogs that would be in

2    a typical Lawson item master or not?

3           MR. ROBERTSON:  Objection.  There's no contention by

4    ePlus as to a typical number of catalogs that can be in item

5    master.  There's no foundation for that.

6           MR. McDONALD:  If he doesn't, he doesn't.  I guess if

7    they're agreeing to that, I guess fine.

8           THE COURT:  It's not a contention, it's not relevant,

9    so I agree with that.  It's not been raised in anything that's

10   come up in the case yet, so I sustain the objection to that.

11   Q    So in your opinion, Dr. Shamos, is the item master in the

12   Lawson system published by anyone?

13   A    No.

14   Q    Let's pick up again and go back to slide 21, please.  So

15   we've talked about '516, claim one, element A so far.  Can we

16   now go to element B, please, and tell us your analysis specific

17   to element B of claim one of the '516 patent?

18   A    Yes.  Well, element B is a first set of predetermined

19   criteria associated with said collection of catalogs.  While in

20   the patent, the first set of predetermined criteria are used

21   for selecting less than the entire collection of catalogs, and

22   it's not possible to do that in the S3 system, so there aren't

23   such a set of criteria.

24          THE COURT:  Excuse me just a minute.  Is it not

25   possible because there's no -- in your view, because there's no

1    catalogs?

2              THE WITNESS:  No.

3              THE COURT:  Or is it not possible for some reason

4    independent of your view that there's no catalog?

5              THE WITNESS:  Let's assume hypothetically that item

6    master were a catalog, or even --

7              THE COURT:  Assume that it has catalogs in it.

8              THE WITNESS:  Let's assume that it has catalogs in it

9    hypothetically.

10             THE COURT:  Your first element is, it doesn't include

11   a collection of catalogs.  What I'm asking you is very simple.

12   Is your opinion on the second point based on the fact that

13   there's no collection of catalogs, or is it based on some

14   independent reason?

15             THE WITNESS:  It's independent, Your Honor.

16             THE COURT:  Good.  Go ahead and explain that then.

17   Thank you.  I just needed to understand that.  So it's the

18   second reason, all right.

19   Q    What is the additional reason you are talking about

20   specific to element B of claim one?

21   A    Because even if item master were considered to be a

22   collection of catalogs, there's no way of selecting less than

23   all of them.  There's no mechanism within S3 to do that.

24   Q    Why don't we go to the next slide, please.  Here you've

25   got the element that you have labeled C of claim one of the

1  '516 patent; right, Dr. Shamos?

2  A    Yes.

3  Q    Can you explain to us the reason why you say that element

4  is not satisfied in the Lawson item master -- or the Lawson

5  system?

6  A    Yes.  The second set of predetermined criteria that really

7  are the searching criteria, what items would I like to find for

8  possible ordering, and there, the reason that element C is not

9  present, that ties in to element A which is if there's no

10 catalog, you can't have predetermined criteria for associated

11 with items from the catalog.

12 Q    So for this one, you say it's not satisfied because

13 there's no catalogs again?

14 A    That's right.

15 Q    Let's move to the next slide.  This goes to the fourth

16 element that you've labeled as D of claim one of the '516

17 patent; correct?

18 A    Yes.

19 Q    Now, this is kind of a longer element that you've got on

20 the slide that fits the black type on your slide; correct?

21 A    The black type is the remainder of the claim language for

22 element D.

23 Q    So can you summarize for us what your reasoning was

24 specific to this element?  I'm not asking you to read the whole

25 element unless it's absolutely necessary, but can you summarize

1   any way why, in your opinion, the Lawson systems at issue here

2   do not satisfy this element?

3   A    Yes.  Well, there's no catalog selection protocol.

4   Q    Maybe -- I'm sorry.  I don't mean to interrupt.  Go ahead.

5   A    The parties agreed that the word protocol means procedure,

6   so there has to be a procedure for doing catalog selection, and

7   in the first part of element D, that procedure is based on that

8   first set of predetermined criteria for selecting less than the

9   entire collection of catalogs.  That was the element B which

10  independent of the fact there are no catalogs, there's no

11  selection procedure in S3.

12      Now -- and there are a number of other reasons that relate

13  to this claim.  The wherein clause makes a reference to a

14  second catalog from a third party.  Well, if there isn't more

15  than one catalog, then there can't be a second catalog.

16      MR. McDONALD:  Bill, can you highlight that wherein

17  clause, please, up on the slide so we can see what Dr. Shamos

18  is talking about?  It's the third paragraph basically in black

19  type.

20      THE COURT:  I think the jury can see it.  If you're

21  having trouble -- he can point.  Circle what you are talking

22  about.  Or did he get?  They got it already.  Thank you.

23  A    Okay.  The clause makes reference to both a vendor catalog

24  and a second catalog.  So that would mean that you have to have

25  at least two catalogs.

1    Q    And the language of this claim, does that first catalog,

2    that's a vendor catalog from a predetermined vendor; correct?

3    A    Yes.

4    Q    And so does the system also have to have, in addition to

5    that, a second catalog from a predetermined third party that is

6    one of a manufacturer and a competing vendor; correct?

7    A    Yes.  And then there's a further limitation that the third

8    party has to sell items corresponding in that first catalog,

9    the vendor catalog.

10   Q    Do you -- in your opinion, for the reasons you've just

11   given, this particular clause is not satisfied in any of the

12   Lawson systems at issue; is that right?

13   A    That's right, because you don't more than -- certainly

14   don't have more than one catalog.  Also, there's another reason

15   relating to the second clause, the including matching of vendor

16   identification code with a subset of said collection of

17   catalogs.

18        There's no collection of catalogs, but even if there were,

19   there's no subset of catalogs because there's no way of

20   specifying such a subset in the Lawson system.

21   Q    Now go to the next slide.  This is actually some further

22   discussion of the element that was on the prior slide; right,

23   Dr. Shamos?

24   A    Yes.

25   Q    Have we already covered what's on that slide --

1           THE COURT:  Take that slide down.  Look at the first

2     point on it.

3           MR. McDONALD:  We'll leave that one off.

4           THE COURT:  Okay.  Remember what I said.

5           MR. McDONALD:  Slipped through, Your Honor.  Sorry.

6           THE COURT:  That's all right.  The fact of the matter

7     is, ladies and gentlemen, this is big litigation.  You can see

8     the amount of paper, and sometimes mistakes happen in

9     litigation.  It just does.  They're not trying to do anything

10    wrong.  Both sides have had a few mistakes, but as a general

11    proposition, it's all been done pretty well.

12          A lot of this is done with the help of legal

13    assistants, and both sides have excellent legal assistants

14    help, so I didn't mean to be -- I'm not being critical.  I'm

15    just trying to be observant and keep it within the bounds of

16    rules which I hope the lawyers will help me out with.

17          MR. McDONALD:  Thank you, Your Honor.

18    Q    Why don't we go back to slide 23.  Now, in the first part

19    of that element at the very top of the slide, Dr. Shamos, do

20    you see the language about to select less than said entire

21    collection of catalogs?

22    A    Yes.

23    Q    Did you look at the issue of whether or not the fact that

24    the Lawson item master has indexing would mean that it would

25    satisfy that part of that element?

1   A      Yes.

2   Q      What was your conclusion about that?

3   A      The purpose of indexing is to speed up a search.  It

4   doesn't limit the universe of things that you're searching.

5   Q      Well, there was -- if you use as an example, a typical

6   book might have an index in the back, and you want to look up a

7   word in the index of the book.  Aren't you just searching the

8   index and not the whole book in that case?

9   A      I think it depends on what you mean by search.  Let's

10  suppose I have a book that has a thorough index, that every

11  word in the book occurs somewhere in the index, and if I'm

12  looking for the presence or absence of a word in that book, I

13  know that I can determine that by looking in the index, because

14  if it's not in the index, it's not in the book.

15         However, the index is making a statement about the entire

16  book.  I haven't restricted it to, does the word occur in the

17  first chapter.  It's still the entire book, and so the purpose

18  of an index is to let me know quickly whether or not something

19  is in a particular database or a particular database file.

20         It doesn't narrow down where you are looking.  You're

21  still looking over the entire database.  So indexing is just --

22  it's a way of making the search more efficient.  People who --

23  I've heard of people who actually maintain their pantry with

24  food items in alphabetical order so they can go very quickly

25  and see if they have something in the pantry, but they still

1813

1    are still searching the entire pantry.  They don't look through

2    each individual box or package, but because of the way they've

3    arranged their pantry, they can tell immediately whether

4    something is in the totality of the items that they have

5    available for cooking.  It's the same thing with an index of a

6    database.  It just permits you to learn faster whether or not

7    something is in the entire database.

8    Q    Thank you.  Let's go to slide 25, please.  Maybe we can

9    reasonably go through this.  Is this the final element of claim

10   one of the '516 patent up on the screen here, Dr. Shamos?

11   A    Yes.  You can tell that from the period after the word

12   protocol.

13   Q    Can you tell us in a nutshell here, are there any

14   additional reason for non-infringement that are specific to

15   this claim that you haven't already talked about?

16   A    No.  The reason is it relates to the catalog selection

17   protocol which doesn't exist, so you can't have this element.

18   Q    I was asking so you didn't have to go through the whole

19   explanation again, so let's move on then to the next slide,

20   please.  We've got up on the screen here, Dr. Shamos, another

21   slide.  Is this a slide that you prepared regarding claim two

22   of the '516 patent?

23   A    Yes.

24   Q    Is this another one of the 12 asserted claims in this

25   case?

1   A    Yes.

2   Q    Can you tell us whether or not in your opinion that claim

3   is infringed by any of the Lawson systems at issue here?

4   A    My opinion is it's not.

5   Q    And can you explain briefly why that is?

6   A    Yes.  There are two reasons.  One is this is a dependent

7   claim, and I assume that's all been talked about to the jury,

8   what a dependent claim is.

9          MR. McDONALD:  Your Honor, do you think it's

10  necessary for Dr. Shamos to explain that issue to the jury?

11         THE COURT:  Do you feel like understand it?  I know

12  it's been talked about.  Okay, they seem to feel comfortable,

13  and I think it's been adequately addressed, but if they didn't,

14  I was going to say let's go ahead and do it again.

15  Q    Basically for all the reasons claim one isn't infringed,

16  those same reasons would apply here to the second claim of the

17  '516 patent; correct?

18  A    That's correct.  But, also, the other reason is that this

19  has a limitation of, the collection of catalogs are stored in

20  separate databases.  Well, that's -- there's one database in

21  item master.  There weren't separate databases.

22  Q    So there's one more reason specific to this claim?

23  A    Yes.

24  Q    Let's go to the next slide, please, number 27.  Does this

25  claim six of the '516 patent, Dr. Shamos, also depend from

1   claim one?

2   A    Yes, it does.

3   Q    Is it your opinion that the same reasons apply to claim

4   six of the '516 patent for your opinions that you've already

5   talked about regarding claim one?

6   A    Well, I mean, that's the way it is.  If a parent claim is

7   not infringed, a dependent claim can't be infringed.  I don't

8   have an additional reason for claim six other than that it

9   depends from claim one.

10  Q    Let's go to slide 28, please.  Which claim is at issue

11  here, Dr. Shamos?

12  A    '516, claim nine.

13  Q    This looks like a new claim that's an independent claim

14  we're talking about here; is that right?

15  A    Yes, it's an independent claim that has some elements in

16  common with previous claims.

17  Q    Why don't you take us one element at a time here, and stop

18  as you go through each element and tell me what your analysis

19  is specific to the first element you labeled A in claim nine of

20  the '516 patent.

21  A    Yes.  Well, this is the collection of catalogs element,

22  and so since there's no collection of catalogs, this element

23  can't be present.

24  Q    Why don't you go to the second element you marked as B.

25  Can you explain why, in your opinion, that element is not

1   satisfied by the Lawson systems?

2   A    Yes.  B requires a first identification code associated

3   with a first item in a first catalog.  If there's no catalog,

4   there can't be a first catalog.

5   Q    Let's got to the next slide, number 29, please.  This

6   slide is a continuation of the elements of claim nine of the

7   '516 patent; is that right?

8   A    Yes.

9   Q    Can you tell us about your analysis specific to this

10  element you labeled C, the third element of claim nine of the

11  '516 patent?

12  A    Yes.  There are at least two reasons.

13       MR. ROBERTSON:  I object again.  There's a

14  characterization of Dr. Weaver in this slide.

15       MR. McDONALD:  How about if we pop up -- I'll

16  withdraw the question, Your Honor.

17       THE COURT:  All right.

18       MR. McDONALD:  Can we go on the '516 patent,

19  Plaintiff's Exhibit 2, I believe, and put up claim nine.

20  Q    We're talking now about the last long element of this

21  claim; is that right, Dr. Shamos?

22  A    Not yet.  I think we're talking about still first

23  identification code and the second identification code.

24  Q    Okay.  Let's zero in on this second identification code

25  element then at this point.  Can you explain your opinion as to

1   whether or not the Lawson accused system satisfies that element

2   of claim nine?

3   A    Yes.  In order for there to be a second identification

4   code, there has to be a second catalog, and even if there's one

5   catalog, there weren't two catalogs in S3.  So that element

6   can't be present.

7   Q    Is there some language in this element about the second

8   item being, quote, generally equivalent?

9   A    Yes.

10  Q    Do you have an opinion as to whether in the Lawson system,

11  the Lawson systems accused here, satisfy that part of that

12  element?

13  A    There's no notion in the Lawson systems of general

14  equivalents.  There's no way to ask the system for a generally

15  equivalent item.

16  Q    Do you have an understanding as to what aspect of the

17  Lawson system is dependent in this case to satisfy that part of

18  that element?

19  A    Only from expert reports.

20  Q    Let's go to slide 30 then, if we can turn to that, Bill.

21  Dr. Weaver, did you look at --

22          MR. ROBERTSON:  Dr. Weaver?

23  A    I am Shamos.

24          MR. McDONALD:  I made it this far today.

25  Q    Dr. Shamos, did you look at all at the issue of whether or

1    not in the Lawson system the use of the UNSPSC codes would

2    satisfy any claim elements of any of the asserted claims in

3    this case relating to generally equivalent items?

4    A     Did I look at that?

5    Q     What was your conclusion about that?

6    A     That it doesn't.

7    Q     Why not?

8    A     So, the UNSPSC code is a generally accepted international

9    coding to categorize products.  There's a big difference

10   between desks and chairs, and so if you gave a code to desks,

11   you could immediately tell that something was a desk and it

12   wasn't a chair.  And it happens to be hierarchically organized.

13        That is, it has different levels, so you can get to office

14   furniture, and then within office furniture you could have

15   desks, and then within desks you can desks with drawers or

16   without drawers, et cetera.

17        The Lawson software does provide the ability for a

18   customer to enter UNSPSC codes into the item master database if

19   he wants to do that, and sometimes it's useful for people who

20   are ordering things to know what the UNSPSC code is associated

21   with a particular item, but those UNSPSC codes are not used for

22   the purpose of determining whether things are generally

23   equivalent.

24        There's no automatic conversion.  I can't go and say, if

25   you're out of stock of this product, please give me another one

1    that has the same UNSPSC code.  So there's no converting that's

2    going on.  There's no matching that goes on with respect to

3    UNSPSC codes even though they may be physically present in the

4    database.

5    Q    You have here, and this is another slide we have up on the

6    screen that you prepared; is that right?

7    A    Yes.

8    Q    On the last point there, what's the last bullet point?

9    Can you explain what you meant by that?

10   A    It's only within RSS, not the totality of the systems that

11   are accused.  It's only RSS that allows even searching of the

12   UNSPSC code.

13   Q    Can we turn to the next slide, please, 31.

14   A    Yes.

15   Q    Is this another slide you put together, Dr. Shamos?

16   A    Well, I put it together, but literally it's copied out of

17   a white paper that was published explaining what UNSPSC codes

18   are.  So I didn't write the words that are on the slide except

19   for the title.

20          THE COURT:  In other words, you made the slide.

21          THE WITNESS:  I made the slide.  I had an electronic

22   copy of that white paper.  I had it on the screen.  I used a

23   photo editor, and I did a screen capture and then cropped it

24   down and stuck it on the slide directly out of that UNSPSC

25   white paper.

1   Q    Can you tell us in a nutshell, Dr. Shamos, what your main

2   point was for putting together this particular slide as it

3   relates to your testimony here?

4   A    Yes.  It was to show this eight-digit classification of

5   items and why it's hierarchical.  This is the UNSPSC

6   explanation of what these codes look like.  The code, as you

7   can see at the bottom where it says pen refills equals UNSPSC

8   classification 44-12-19-03.

9        The significance of those numbers, 12, 19, and 03, depend

10  on the fact that they are coming from 44.  So 44 is office

11  equipment, accessories, and supplies.  Within that, 12 is

12  office supplies.  Within 12, 19 is ink and led refills, and

13  within 19, 03 is pen refills.  And so what 44-12-19-03 tells

14  you is it's a pen refill.

15       It doesn't tell you what kind of pen, and so if I want to

16  buy a refill for my pen, it's going to have to have -- if

17  there's any UNSPSC classification at all, it's going to have to

18  have 44, 12, 19, 03, but I can't just buy any pen refill.  It

19  has to fit in that particular pen.  So these UNSPSC codes don't

20  describe substitutable or generally equivalent items.

21  Q    Can we turn to the next slide, please, number 32.  I think

22  you've essentially already covered the first three bullet

23  points on this slide?

24  A    Yes, we can go right to number four.

25  Q    What was your point with bullet point number four?

Shamos - Direct                                              1821

1   A    Just -- what the point is, let's suppose a customer does

2   load UNSPSC codes into item master for some reason.  They do

3   not become a cross-reference table.  For one thing, they don't

4   cross-reference generally equivalent items, but second of all,

5   they're not used by the Lawson system for cross-referencing.

6   Q    Then your fifth bullet point here looks like you are

7   talking about two of the claims of the '516 patent; correct?

8   A    Yes.  We haven't talked about those claims yet, but they

9   both require a cross-reference table.  So they are not

10  infringed based on the UNSPSC theory.

11  Q    So when we get to those claims, we'll refer to this

12  briefly.

13  A    Yes.

14  Q    So if we can go to the next slide, number 33, please.

15  A    Yes.  Well, there's claim 21.

16  Q    So can you tell me with respect to this slide 33, let's go

17  to element B here on this slide since that's where you have

18  some of the blue text.  Can you explain your opinion of why

19  Lawson's accused systems do not satisfy that second element of

20  claim 21 of the '516 patent?

21  A    Yes.  Element B requires a collection of catalogs, and

22  we've already talked about there isn't a collection of

23  catalogs.  So this catalog collection searching module as

24  defined in this claim can't exist in the S3 system.

25  Q    Let's go to slide 34, please.  There you've got the third

1    element that you've marked C in claim 21 of the '516 patent; is

2    that right, Dr. Shamos?

3    A    Yes.

4    Q    That's a catalog selection criteria used to select less

5    than said entire collection; correct?

6    A    Yes.

7    Q    Is it your understanding that the collection being

8    referenced there is the collection of catalogs?

9    A    Yes.

10   Q    Can you explain why, in your opinion, the Lawson accused

11   systems don't satisfy this element of claim 21?

12   A    Yes.  We already talked about this.  This is essentially

13   the same thing as the catalog selection protocol, so you

14   can't -- even if you considered item master to be a collection

15   of catalogs, there's still no way of limiting or selecting less

16   than all of it for searching.  So element C isn't present in

17   any Lawson system.

18   Q    Thank you.  Let's talk about the elements you've marked D

19   here on slide 34.  Can you explain what your opinion is related

20   to that one?

21   A    Yes.  D says, said searching module being used to generate

22   additional search module criteria for said data fields.  There

23   aren't any additional search module criteria.  There are

24   certain fields that you can search on, and they are not

25   generated by any software.  They are set up initially when item

1    master is set up.  So I don't even -- I don't even get how that

2    can be accused.

3    Q    Let's go to the next slide then, number 35.  Are there --

4    we've got up here what you've designated as elements E and F,

5    basically the fifth and sixth elements of claim 21 of the '516

6    patent; correct?

7    A    Yes.

8    Q    Are there any additional reasons, in your opinion, that

9    those elements aren't satisfied by the Lawson systems other

10   than the ones you've already talked about?

11   A    No.

12   Q    Let's move on then to slides 36, the next slide, please.

13   You've got here elements G and H which would be the 7th and

14   eighth elements of this claim 21; is that correct?

15   A    Those are the last two elements.

16   Q    Do you have any additional reasons for Lawson systems not

17   satisfying these two elements other than the reasons you've

18   already talked about?

19   A    Yes.  For element G there, at the end of that wherein

20   clause, there's recited, a determination system that located

21   items are generally equivalent.  The Lawson system doesn't have

22   any such determination system.  It doesn't make a determination

23   that items are generally equivalent, and even if a human being

24   previously had made that determination, there's no way of

25   determining that through the Lawson system.

1    Q    Are there any other new reasons specifically to elements G

2    and H for your opinions?

3    A    Well, H requires the cross-reference table I talked about

4    previously with respect to UNSPSC codes.  It's not there.

5    Q    Anything else new on this slide then?

6    A    No.

7    Q    Let's go to element -- the next slide, please, number 37.

8    You put this slide together because the slide we've just been

9    talking about.  Claim 21 of the '516 patent specifically calls

10   out a cross-reference table; right?

11   A    Yes.

12   Q    So you've got the Court's construction up here of what a

13   cross-reference table is; is that right?

14   A    Yes.

15   Q    That's a table that links vendors, items determined to be

16   equivalent between two -- should that be two or more different

17   vendors?  It says the word "of."

18   A    I think there may have been a typo somewhere.  From the

19   point of view of meaning, I think it should be "or."

20   Q    And using that definition then, was it your conclusion

21   that the Lawson systems that are accused here don't have that

22   cross-reference table as set forth in claim 21 of the '516

23   patent?

24   A    Yes.  There's no such table.

25            THE COURT:  I think he said that two or three times

1    already, hasn't he?

2              MR. McDONALD:  I'm trying to keep it moving here,

3    Your Honor.  If he's covered it, that's fine.

4    Q    Let's go to claim 38, or excuse me, slide 38.  This is a

5    new claim now we haven't talked about yet, Dr. Shamos; is that

6    right?

7    A    Yes.

8    Q    This is claim 22 of the '516 patent; correct?

9    A    Yes.

10   Q    This is a dependent claim from the claim we were just

11   talking about, claim 21; right?

12   A    Yes.

13   Q    Do you have any additional reasons for non-infringement of

14   that dependent claim beyond what you talked about regarding

15   claim 21?

16   A    No.

17   Q    Is your opinion that claim is or is not infringed?

18   A    It's not infringed.

19   Q    Let's go to the next slide, please, 39.  This is your

20   slide regarding claim 29 of the '516 patent; is that right?

21   A    Yes.

22   Q    It looks like your first comments on this slide go to the

23   third element you've designated with the letter C; correct?

24   A    Well, it's below letter C, but basically elements A, B,

25   and C are exactly the same as the elements of '516, claim one,

Shamos - Direct

1   A, B, and C.

2   Q    So for the same reasons you talked about for claim one of

3   the '516 patent, those first three elements of your analysis

4   would apply to these three elements; is that right?

5   A    Yes.

6   Q    Would your conclusion be that those elements are or are

7   not satisfied in the Lawson system?

8   A    None of those elements are present.

9   Q    Thank you.  Let's go to slide number 40, please.  This is

10  your slide regarding the fourth element of claim 29 of the '516

11  patent; is that right?

12  A    Yes.

13  Q    You've got some reasons here why the Lawson systems are

14  not -- or do not satisfy this element; correct?

15  A    That's right.

16  Q    Can you briefly summarize those reasons for me, please.

17  A    Yes.  The summary would be that this element D includes

18  pieces that we've already seen before.  The various elements

19  are recited in there appeared in previous claims, and I already

20  discussed that they weren't present.  That's what's listed at

21  the bottom of the slide in blue.

22  Q    So what you've previously discussed are in quotes there,

23  basically, at the bottom of this slide?

24  A    Yes.

25  Q    So for all those reasons you already gave, is it your

1   opinion that this fourth element is or is not satisfied by the

2   Lawson system?

3   A    It's not satisfied.

4   Q    Let's go to slide 41, please.  This slide has the fifth

5   and sixth elements of claim 29 of the '516 patent; correct?

6   A    Yes.

7   Q    Can we take a look at the fifth element.  Can you tell us

8   briefly why you have an opinion about that and what it is?

9   A    Yes.  These elements simply recite other elements that

10  we've previously seen, the catalogs selection protocol and

11  cross-reference table.  Since they are not present, these

12  elements aren't present either.

13  Q    Thank you.  Let's go to slide 42, please.  Now, this is

14  turning to a new patent now; right, Dr. Shamos?

15  A    Yes.

16  Q    So this is the '683 patent.  We're going to go through the

17  accused claims in that patent now; is that correct?

18  A    Yes.

19  Q    So the first claim listed in the '683 patent, that's among

20  the accused claims, claim three?

21  A    Yes.

22  Q    Why don't you take it from the top here with claim three

23  and your element A and tell us briefly here why, in your

24  opinion, that first element of claim three is not satisfied by

25  the Lawson systems?

1   A     Element A starts out with at least two product catalogs.

2   Lawson does not have at least two product catalogs, so A isn't

3   satisfied.

4   Q     What is your opinion about whether element B of claim

5   three of the '683 patent is satisfied?

6   A     Element B is a means for selecting the product catalogs to

7   search, and the function of that means is that selecting less

8   than all the catalogs, and Lawson has no mechanism for doing

9   that, so that means cannot exist.

10  Q     Can we go to slide 43, please.  What are you doing here in

11  this slide, Dr. Shamos?

12  A     I'm just giving in black the Court's construction, and

13  blue is my, how I'm relating that to the Lawson system.

14          MR. ROBERTSON:  Your Honor, I'm going to object.  I

15  think this is inconsistent with the Court's construction.

16          MR. McDONALD:  Bill, do you have the actual

17  construction for this means --

18          THE COURT:  Just a minute.  Let me get mine out.

19          MR. McDONALD:  I'll withdrawn the question, Your

20  Honor, and go right to it.  I think we can eliminate any

21  issues --

22          THE COURT:  Disregard his testimony and the question

23  on that point then, please.  That testimony I'm referring to is

24  the comments about having no means for selecting product

25  catalogs to search.

1    Q    Do you see up on the screen, Dr. Shamos, something -- I'll

2    represent to you that's the Court's entire construction of the

3    means for selecting the product catalogs to search for claim

4    three; do you see that?

5    A    Yes.

6    Q    Did you apply that construction in your analysis here?

7    A    Yes.

8    Q    Now, there's some reference and some numbers near the end

9    of the Court's definition there.  Do you see that?

10   A    Yes.

11         MR. McDONALD:  And, Bill, I wonder if we can

12   highlight the line with all the columns in it.

13   Q    What is your understanding as to what that section of the

14   Court's construction is referring to?

15   A    It's showing structure that's disclosed in the

16   specification that correspond to this particular means element.

17   Q    The means element is the means for selecting the product

18   catalogs to search; right?

19   A    Yes.

20         MR. McDONALD:  So, Bill, can you go to the '683

21   patent, to column nine, line 52, which would be the last one of

22   the ones listed there.  I would go all the way to the bottom of

23   that column.  I think -- can you also grab that part of column

24   ten that goes to down to line 20?

25         MR. ROBERTSON:  I'm going to object.  This is not in

1   Dr. Shamos's report.

2             MR. McDONALD:  Actually it is, Your Honor, paragraph

3   218.  And also 233.

4             THE COURT:  Wait a minute.

5             MR. ROBERTSON:  The Court's claim construction isn't

6   there, Your Honor.  That's all that's in it.

7             THE COURT:  218 is the claim construction.  233?

8             MR. McDONALD:  Yes.  Although I think both are

9   relevant here since he cites them in both paragraphs.

10            MR. ROBERTSON:  I do see, Your Honor, 233 does cite

11  to that specification.  I think that's what you were

12  identifying, Mr. McDonald?

13            MR. McDONALD:  Let me clarify, Your Honor.  This is

14  also one of the slides that they had already approved before we

15  came in today.

16            MR. ROBERTSON:  I'll withdraw the objection, Your

17  Honor.

18            THE COURT:  I think you should.  Sorry.

19            MR. McDONALD:  Can we put that back up?  Let's put

20  up, Bill, column nine, line 52, to column ten, line seven.

21  Q    This is a section that's found in all three of the

22  patents; right, Dr. Shamos?

23  A    Yes.

24  Q    Can you tell us generally what this section of the patent

25  is talking about?

1    A    It describes how you select a catalog.

2    Q    Is this section one of the sections of the patent that the

3    Court said was the structure that corresponds to the "means for

4    selecting the product catalogs to search" element of claim

5    three of the '683 patent?

6    A    Yes.

7    Q    Can you explain to us then how this section of the patent

8    describes selecting product catalogs to search?

9    A    I think it's very straightforward.  This is showing an

10   example where the database would have four different catalogs,

11   and they are numbered one, two, three, four.  They are distinct

12   catalogs, and a mechanism is provided so that the user can make

13   a selection from one, two, three, four, or possibly any subset

14   of one, two, three, four to restrict the search to just those

15   catalogs.

16   Q    Did you see anything like that in the Lawson systems

17   accused of infringement in this case?

18   A    Not even remotely.

19   Q    Let's -- you can take that off the screen, I guess.  Can

20   we go back to that slide, the slide we left off at?  It's 42.

21   Let's go back to 42.  This has the element regarding selecting

22   product catalogs to search; correct?

23   A    Yes.

24   Q    You looked at the search issue as part of your analysis;

25   correct?

1   A    Well, yes, I looked at the means for selecting part of it.

2   Q    I just want to talk generally about the searching that's

3   talked about in this and other claims, the concept of searching

4   for a moment, all right?

5   A    Okay.

6   Q    Remember in your analysis, you looked at the issue of

7   whether word searches, that you could do keyword searches in

8   the Lawson system, whether that would correspond to selecting

9   catalogs to search or selecting portions of a database to

10  search; do you remember that?

11  A    We talked about that yesterday.

12  Q    But I think you had some analysis that you had done in

13  your report regarding searching, for example, by color; do you

14  remember that?  Searching, for example, red or green or blue?

15  A    Only vaguely.

16  Q    Well, if you did a search in the Lawson systems for the

17  color red, could you come back with products with an item

18  description that has the word red in it?

19  A    Yes.

20  Q    Would that mean you just generated a catalog of red

21  products under the Court's claim construction?

22  A    No.  It would mean that you searched item master and found

23  all the items in which red was used as a descriptor.

24  Q    Those are two different things?

25  A    Well, yes.  The result of the search is a hit list.  It's

Shamos - Direct                                              1833

1    not a catalog.

2    Q    Like the search results you get back from Google; right?

3    A    I think that's a good analogy, yes.

4    Q    Could we go to slide number 46, please.  We're still on

5    claim three of the '683.  This is the sixth element; correct?

6    A    I lost count, but it's one of the elements.

7    Q    Fair enough.  Maybe we'll go back briefly to slide 45 with

8    the element that's designated F there.  That's the element that

9    refers to means for converting data relating to a selected

10   matching item; correct?

11   A    Yes.

12   Q    Actually, I've lost track as well.  I don't think we've

13   gone through this slide.  Do you recall if we've talked about

14   it?

15   A    We haven't.

16   Q    So can you tell me what your opinion is as to whether or

17   not the Lawson system satisfies that element F that you have

18   identified on this slide in claim three of the '683 patent?

19   A    Yes.  It doesn't.  There's no means for converting in the

20   Lawson system.

21   Q    And does your reasoning for that relate to your analysis

22   of the UNSPSC codes that you've already talked about, or is it

23   something else?

24   A    Well, it's possible in the Lawson system that there are

25   different items that come from different sources, it can be

1    supplied from different sources, so this element F is talking

2    about the means for converting data related to a selected

3    matching item and an associated source to data relating to an

4    item and a different source.  There's nothing in the Lawson

5    system that does that conversion.

6              MR. McDONALD:  Bill, could we put up the Court's

7    construction of means for converting data related to a selected

8    matching item.

9    Q    The last one on this page.  Dr. Shamos, in reaching your

10   conclusion that the Lawson systems accused here don't satisfy

11   this element of claim three relating to a means for converting

12   data, did you analyze this Court's construction regarding the

13   function of that element as well as its corresponding

14   structure?

15   A    Yes.

16   Q    Let's move on then to slide number 47, please.  So now

17   we're done with claim three.  So for all those reasons you just

18   gave, Dr. Shamos, is it your opinion that claim three of the

19   '683 patent is or is not infringed by any of the Lawson

20   systems?

21   A    It's not infringed because many of the elements are

22   missing.

23   Q    Let's move on now to claim 26.  This is a method claim; is

24   that right?

25   A    Yes.

1835

1   Q     Here on slide 47, you again broke the steps of that method

2   claim into A, B, and C parts; correct?

3   A     Yes.

4   Q     Can you take us one at a time here and explain the

5   reasoning as to why the Lawson systems do or do not satisfy

6   those elements?

7   A     Yes.  A requires maintaining at least two product

8   catalogs, and Lawson systems don't maintain at least two

9   product catalogs.

10  Q     For all the reasons you've already talked about; right?

11  A     Yes.

12  Q     Okay, let's go to the next one.

13  A     B, selecting the product catalogs to search, even if there

14  were catalogs in the Lawson system, you can't select them for

15  searching.  There's no mechanism to do that.

16  Q     So that keyword searching, does that satisfy the selecting

17  the product catalogs to search function or not?

18  A     It doesn't select a catalog.

19  Q     How about for the third element of claim 26?

20  A     In order to perform the step of searching for matching

21  items among the selected product catalogs, you have to have

22  selected product catalogs which means you have to be able to

23  select, and you can't do that in the Lawson systems, so you

24  can't perform the searching step.

25  Q     These are all reasons you've already gone over; right?

1    A    Almost.

2    Q    Is there something a little new about this element?

3    A    Just a little new.  It says, searching for matching items

4    among the selected product catalogs.  You can do searching in

5    the Lawson system, but you can't search among the selected

6    product catalogs.

7    Q    Let's go to slide 48, please.  You have there the last

8    three elements of this method claim 26; correct?

9    A    Yes.

10   Q    Can you explain to us your analysis relating to those

11   three elements?

12   A    Yes.  These are steps that are performed -- if at all,

13   they are performed by the user, they are not performed by

14   Lawson.  Lawson has no idea what somebody wants to requisition.

15   Lawson has no idea what the inventory levels are of somebody's

16   inventory.

17   Q    Okay.  But these are reasons for non-infringement in

18   addition to the reasons that you already listed for the first

19   three elements of this claim; correct?

20   A    This has to do with who performs the steps.

21   Q    Regardless of who performs the steps, is your reasoning

22   regarding catalogs and selecting product catalogs, would they

23   be sufficient or not sufficient to say that this method isn't

24   performed by anybody?

25   A    Well, element D requires selected matching items.  Since

1    there weren't selected matching items, you can't perform step

2    D.  Step E requires selected matching items.  If you don't have

3    those, you can't perform step E.  And step F requires selected

4    matching items, and if you don't have a selected matching item,

5    you can't perform step F.  So nobody can perform them, but even

6    if somebody did, it's not Lawson.

7    Q    Let's go to slide 49, please.  This is, looks like -- I

8    think we have a little disconnect on the heading for this one.

9    It says claim 28, but the number is claim 26.  How about if we

10   pop up the claim itself from '683 just to make sure -- claim 28

11   of the '683 patent.

12        Dr. Shamos, I'm going to try to work from the claim in the

13   patent itself.  If you need to refer back to your slides, let

14   me know, and we can go back to that?

15   A    I don't think it will be necessary.

16   Q    Can you summarize here your opinion as to whether or not

17   Lawson system or the use of that system would --

18        THE COURT:  Mr. McDonald, excuse me.  It might be

19   easier for the jury to follow things if we just assume that 26

20   is the 28 and use the slide.  Is there any reason you can't do

21   that, Mr. Robertson?

22        MR. ROBERTSON:  No, that's fine, Your Honor.

23        THE COURT:  Just go back to the slide there.  I think

24   it may be easier to follow.  I think the -- right there.  Take

25   that, and then you can use that.  That's fine.

1          THE WITNESS:  I think that's right.

2          THE COURT:  This slide relates and his testimony is

3   relating to claim 28 which is in column 27 of the '683 patent,

4   okay.  Go ahead.

5          MR. McDONALD:  That was my attempt to make a 28 which

6   didn't turn out very well.

7          THE COURT:  Oh, I thought you were marking it out.

8   Q    Dr. Shamos, can you summarize your opinions relating to

9   whether or not the use of the Lawson systems would infringe

10  this method claim 28 of the '683 patent?

11  A    Yes.  For element A, Lawson does not maintain at least two

12  product catalogs, so that step isn't performed.  The Lawson

13  system doesn't allow selecting the product catalogs to search,

14  so step B can't be performed.

15  Q    You've already talked about that one as well?

16  A    Yes.  I've already talked about C also.

17  Q    C goes to no selected product catalogs?

18  A    That's right.

19  Q    Let's go to slide 50, please.

20  A    Right.  This is the same for the previous claim except for

21  step F.  Step F is a converting data step.  They all -- steps D

22  and E refer to selected matching items.  If you don't have

23  selected matching items, you can't perform those steps.

24  Q    That is whether you are Lawson or anybody else?

25  A    That's right.  Nobody can perform those steps.  And

1   likewise, F is now -- that's a new step.  It's a converting

2   data step.  That also requires selected matching items, but

3   even if these were performed, they are not performed by Lawson.

4   Q    Is this converting data element, does that, again, relate

5   back to the UNSPSC codes issue, or is that something else?

6   A    I understand that's plaintiff's theory.

7   Q    So for all the reasons you already gave about that issue

8   as well, nobody would be practicing that last element of claim

9   28; is that right?

10  A    Yes.

11  Q    Let's go to slide 51, please.  This is your slide

12  regarding claim 29 of the '683 patent; is that right?

13  A    Yes.

14  Q    Is claim 29 a dependent claim?

15  A    Yes, it depends from 28.

16  Q    So do you have -- all your reasons regarding claim 28

17  apply here to claim 29; right?

18  A    Yes.

19  Q    Do you have any additional reasons for claim 29?

20  A    Yes.

21  Q    What is your additional reason?

22  A    Lawson itself has no way of determining whether any item

23  is in a customer's inventory.  Only the customer can determine

24  that.  So if that step is performed at all, it's not performed

25  by Lawson.

Shamos - Direct

1  Q    Let's go now to slide number 52.  This is the last of the

2  asserted claims as we've gone through today; correct, Dr.

3  Shamos?

4  A    Yes.

5  Q    '172, claim one; right?

6  A    Yes.

7  Q    I think we talked about this yesterday to some extent, but

8  let's see if we can not repeat anything from yesterday.  But

9  can you summarize here as we go through element by element what

10 your opinion is as to whether or not any of the Lawson systems

11 accused in this case satisfy that first element of claim one of

12 the '172 patent?

13 A    Yes.  So the first element is a database containing data

14 relating to items associated with at least two vendors

15 maintained so that select portions of the database may be

16 searched separately.

17      Now, I'm familiar with the structure of the item master

18 database which is a relational database that contains a number

19 of tables, one of which happens to be called item master.  Item

20 master is a single table.  It is not maintained so that any

21 piece of it can be searched separately.  When a search is

22 performed on item master, it's all of the item master that is

23 searched.  And so there are no portions, and there is no

24 element A in Lawson's system.

25 Q    As part of your analysis in this case, did you review any

1   of the searches that Dr. Weaver had performed regarding the

2   word Dell?

3   A    Yes.

4   Q    Could we pop up Plaintiff's Exhibit 363, please.  Do you

5   recall looking at some shots of the screens of a -- I guess I

6   might have misstated that.  I don't know that Dr. Weaver

7   performed it or somebody else performed it for him, but this

8   was from Dr. Weaver's materials.  Do you remember seeing

9   snapshots as he progressed through some clicking through the

10  Lawson systems accused here?

11  A    Yes.

12         MR. McDONALD:  Okay.  Can we go up to -- I think it

13  would be page 31 of which slide, Bill.

14  Q    Do you recall, Dr. Shamos, seeing -- there was -- there

15  you go.  Seeing in the search here a snapshot showing somebody

16  putting in a search term?

17  A    Yes.

18  Q    And is this what we have highlighted up on the screen

19  here?  Is that a portion of a Lawson screen where you could do

20  a search?

21  A    Yes.

22         MR. McDONALD:  And actually, Bill, can we grab that

23  so we can get the blue part, too.

24  Q    Can you tell by looking at this, Dr. Shamos, which module

25  of the Lawson system we're in?

1  A    We're in the search module.

2  Q    I'm just going to underline something here.  I see a

3  reference to RSS.  Does that mean we're talking about that

4  requisition self-service module here?

5  A    I think so.

6  Q    Now, can you point at where you type in the search term

7  that you want to search here on the screen?

8  A    It's in that search bar.

9  Q    There's some reference down below that -- I'm going to put

10 a parenthesis around that -- to search all fields; do you see

11 that?

12 A    Yes.

13 Q    There's a checkmark in that box; do you see that?

14 A    Yes.

15 Q    What does that mean?

16 A    A record in item master has a number of fields associated

17 with it; for example, description of product, inventory load

18 product, manufacturer's part number of product, things like

19 that.  And what that checkmark is saying is I want to look for

20 the word Dell in every field in the table.

21 Q    Is one of the fields you can look at vendor?

22 A    No.

23 Q    So you can search lots of fields here, but you can't

24 search for a vendor here; correct?

25 A    There's a list over on the right.  If I didn't check

1843

1   search all fields, then I would go over to the right and check

2   the fields that I wanted to search.  And so that's a list of

3   them, and vendor isn't there.

4           MR. McDONALD:  Can we go to the next page of this

5   exhibit, please, maybe blow up the left half of that page.

6   Q    What is your understanding of what's on this page of this

7   demonstration, Dr. Shamos?

8   A    Well, this was the result of the processing of the search.

9   This is the hit list, and actually I think this makes it very

10  clear.  If you look at the -- starting with the second column

11  that says quantity -- actually start with the third column that

12  says item and then description and then UOM, which is unit of

13  measure --

14          THE COURT:  Are you using the first example there,

15  Dr. Shamos, first thing on the hit list?

16          THE WITNESS:  I was actually referring to the entire

17  rectangle that's at the bottom that has a set of headings at

18  the top.  One says, add to cart and then quantity and then item

19  description, unit of measure.

20          THE COURT:  Can we blow up that first level there.

21          THE WITNESS:  Yeah, blow up the first level with the

22  first set of hits.

23          THE COURT:  Can you read that a little bit better,

24  ladies and gentlemen?

25          THE WITNESS:  This is the first hit among search

1    results, and what's shown up at the top after add to cart and

2    quantity, those are things it's asking the user to subsequently

3    enter.

4            So if I want to buy one or more of this particular

5    item, I would put -- I would click in there, and a checkmark

6    would appear, and then I could specify in the quantity field

7    how many of them I wanted.  But let's look at what the actual

8    results of the hit are.  Under the description field, it says

9    Dell, comma, Dimension 8100.

10           What that means is that whoever put the description

11   of that computer into the database decided that they wanted to

12   put in the string Dell because they want to identify it was a

13   Dell computer.  But if you look at what the field is, the field

14   isn't a vendor field.  The field is a description field.  You

15   can put anything you want in there.

16           When you do a search for where Dell appears, it may

17   be that if the customer was really meticulous and they very

18   carefully put a vendor -- sorry, manufacturer for every one of

19   the items in the database, then you could retrieve all of the

20   items that were from Dell.  But you still had to search all of

21   item master in order to do it.  It's not restricting the search

22   to selected portions.  It's searching the whole database.

23   Q    So if we move on then, go through the -- can we go to page

24   34 of this Exhibit 363, Bill.  I just wanted to show, this is

25   the same search results, I believe, Dr. Shamos, but they've

1  moved this scroll bar down so you can see the last two items

2  that were returned from the results.

3  A    Yes.

4  Q    So we got a total of six items on this Dell search.  Does

5  that ring a bell?

6  A    That sounds right.

7  Q    So now if we go up to page -- so this is just searching

8  the word Dell, we got back six items that had the word Dell in

9  the description line basically; right?

10  A    Yes.

11  Q    Now, can we jump ahead to page 48 of 363?  So we've still

12  got that search result up on this slide, but now if we go to I

13  think the next slide or next page, 49, this is capturing -- you

14  can see in the upper left corner, they are in the middle of

15  typing in some additional words into that word search, and

16  they've now added a comma after the word Dell and starting to

17  type Dimension; do you see that?

18  A    Yes.

19  Q    Jump up just two more slides up to page 51.  So this was

20  the part of the demonstration where the word search had Dell

21  comma Dimension 8100; correct, Dr. Shamos?

22  A    Yes.

23  Q    And what does it mean below that to have what I'm putting

24  in parentheses here, search all fields?

25  A    The same thing as it meant before.  It means look at every

1  field in item master to see if it contains the string Dell

2  comma Dimension 8100.

3  Q    So what actually happens in the Lawson system when the

4  user types in that search, Dell comma Dimension 8100?

5  A    Searches the whole database.  And, in fact, it's clear

6  from the way the user put in that search that the user had some

7  very specific understanding of how elements are coded into this

8  database.

9  Q    Why --

10 A    If I were looking for a Dell Dimension, I would never put

11 a comma after the word Dell.

12 Q    What do you think that implies here, that the person doing

13 this demonstration put a comma after the Dell?

14 A    It means he knew how the database was structured, and he

15 knew whoever put in the manufacturer name put a comma after the

16 manufacturer name.

17 Q    Let me put --

18 A    Because if you search for Dell Dimension without a comma,

19 you probably wouldn't get any hits.

20 Q    And I've put a very crude arrow there down by the

21 description column for the first of the two items returned

22 here.  Do you see that?

23 A    Yes.

24 Q    And then the description there, can you me whether or not

25 there's a comma after the Dell?

1    A    Yes, it is.  That's why this was a responsive hit.

2    Q    So if the user had put in the word Dell Dimension 8100

3    without a comma, do we know whether or not we would have got

4    these results back?

5    A    I don't know, because I don't know if there any fields

6    that happen to be coded that way, but we certainly wouldn't

7    retrieve these items that were retrieved.

8    Q    So is what's shown on the screen right now, was that

9    search of Dimension 8100 just in a portion of the item master

10   that had Dell products or not?

11   A    No.  It's the whole item master.

12            MR. McDONALD:  Okay, take that one off.  Can we turn

13   to page 52 now of Dr. Shamos's slides.

14   Q    So, Dr. Shamos, I think we touched on this yesterday, but

15   I want to come back to it now that we've gone through that

16   demo, that set of demo slides.

17        With respect to claim one of the '172 patent, can you tell

18   us what your opinion is about element of A of that claim as

19   shown here on slide 52?

20   A    Yes.  The database is not maintained so that selected

21   portions can be searched separately.  The search is over the

22   entire database.  There are no portions of the database.

23   Furthermore, there's no way to select portions of the database.

24   Even if there did exist portions, they can't be selectively

25   selected, and you can't search item master by vendor.

1   Q    So for all those reasons, element A of claim one of the

2   '172 patent, in your opinion, is not infringed?

3   A    Correct.

4   Q    All right, can we turn to element B here.

5        MR. McDONALD:  Give me a moment, Your Honor.  Let's

6   go to slide 53, please.

7   Q    Is this a continuation of your analysis of claim one of

8   the '172 patent, Dr. Shamos?

9   A    Yes.

10  Q    Can you summarize your opinions as set forth on this

11  slide?

12  A    Yes.  C is a means for searching, but it requires selected

13  portions of the database.  There are no selected portions, so

14  the means can't exist.

15  Q    Okay.  And then the next element, that's the means for

16  generating order list that includes at least one matching item

17  selected by said means for searching; correct?

18  A    Yes.

19  Q    And what was your conclusion regarding that element?

20  A    We talked about order list yesterday.  Lawson doesn't

21  generate an order list, but even if it did, it has -- would

22  have to include at least one matching item selected by said

23  means for searching, but the means for searching doesn't exist,

24  so the means for generating can't exist either.

25       MR. McDONALD:  Can we go, Bill, back to the Court's

1    construction of the claims and specifically the one for means

2    for generating order list here in claim one of the '172 patent?

3    Q    So this is the function as the Court construed the

4    function and then the description of the structure as well as

5    the examples of the structure set forth in the patent itself;

6    right, Dr. Shamos?

7    A    Yes.

8    Q    So, you see there's a reference there to the section

9    between column four, line six, and column six, line 28?

10   A    Yes.

11          MR. McDONALD:  Can we, Bill, put up the '172 patent

12   starting at column four, please, line six, and basically

13   continuing from there.  Actually down -- maybe about halfway

14   down.

15   Q    This is a section of the patent here, Dr. Shamos, that was

16   referred back in that Court's construction of the means for

17   generating an order list; correct?

18   A    Yes.  It's exemplary of that.

19   Q    And you see there there's some discussion of figure 1A?

20   A    Yes.

21          MR. McDONALD:  Bill, could we put up figure 1A?

22          MR. ROBERTSON:  Your Honor, I'm sorry.  I may be

23   confused here, but are we looking, Mr. McDonald, at '172 or

24   '683, the specification here?  I don't think these lines are

25   correspondent, but I may be mistaken.

1           MR. McDONALD:  I think we're in the right place.

2           THE COURT:  You do think or don't think?

3           MR. McDONALD:  I believe we are in the right place.

4           THE COURT:  Which column is this in '172?

5           MR. McDONALD:  Column four.

6           THE WITNESS:  The Court's construction, which

7    specification was it making reference to?

8           MR. McDONALD:  Maybe we should go back to that.

9           THE COURT:  Wait just a minute, Dr. Shamos.  I'm not

10   sure whether there's still and issue to be resolved.

11          MR. ROBERTSON:  We have the '683 patent on the

12   screen, and I believe we were talking about the '172 patent,

13   and so the Court has the columns and line numbers in the

14   corresponding structure in its construction.

15          I just think we should be working off the '172 patent

16   that actually has the specific columns and lines that the Court

17   has cited.

18          THE COURT:  But it's the same text, isn't it?

19          MR. ROBERTSON:  It's the same text, Your Honor, but

20   not the same column and line numbers.

21          THE COURT:  I understand.  I'm just trying to

22   understand.  So let's just go to the '172 patent and find the

23   same text.

24          MR. McDONALD:  Bill, can you go back to the Court's

25   construction of the means for generating an order list.  So we

1   want to go to the '172 patent, column four, line six.  Can we

2   do that now?

3   Q    All right, so pretty much the same stuff, right, Dr.

4   Shamos, we were looking at a moment ago?

5   A    It should be identical stuff.

6            THE COURT:  Situated differently because of some of

7   the spacing on the first page.

8            THE WITNESS:  Yes.

9            THE COURT:  And the figures.

10  Q    So there's a reference there, you see, to figure 1A?

11  A    Yes.

12  Q    And you did look at figure 1A as part of your analysis in

13  this case?

14  A    Oh, yes.

15           MR. McDONALD:  Bill, could you put up figure 1A of

16  the '172 patent, please.

17  Q    Dr. Shamos, can you explain what is it about figure 1A --

18  and this figure 1A, by the way, that's the same in all three

19  patents; right?

20  A    Yes.

21  Q    Can you tell us what it is about figure 1A that

22  contributed to your analysis of why the Lawson systems don't

23  have catalogs?

24           MR. ROBERTSON:  I object, Your Honor.  It's the

25  claims that control, not a figure in the patent.  That's a

Shamos - Direct

1   preferred embodiment, and so the Court's construction should

2   control here.

3            MR. McDONALD:  Of course, but he's obviously one of

4   ordinary skill reading the patent as part of his analysis.  I

5   think we should be able to show the jury a figure from the

6   patent to help them understand the analysis.  That is in his

7   report.

8            THE COURT:  I think I've ruled on this earlier.  He

9   can use the figure 1A because it is a preferred embodiment.

10  But, remember, what controls is the claims.  He's offering this

11  to explain to you why he reached certain conclusions, and you

12  need to also keep in mind that the preferred embodiment is one

13  way of practicing the invention of the patent, but it's not the

14  only way.

15           He's using this example to help explain his opinion,

16  and you can consider it for that purpose, mindful that there

17  can be many other ways of practicing the claims in the patent

18  that are not the preferred embodiment or any embodiment for

19  that matter.  All right, go ahead.

20           MR. McDONALD:  Thank you, Your Honor.

21  Q    Dr. Shamos, you have in front of you on the screen there

22  figure 1A from specifically here the '172 patent, but it's the

23  same in the other ones.  Can you point on the screen here to

24  where the catalog database is located?

25  A    Well, it's number 36.  It's around here somewhere.  For

1    some reason, it's not responding much to my touches.

2    Q    You have to push pretty firmly to get it to pay attention

3    to you, I found out.  So that's the catalog database as set

4    forth and described as the preferred embodiment in the patents;

5    is that right?

6    A    Yes.

7    Q    Now, in the preferred embodiment, as shown here in figure

8    1A, does it show some other databases that aren't represented

9    to be catalogs?

10   A    Yes.

11   Q    Can you point to a few of those?

12   A    There, up at the top here, the 42s, 42A, 42B, and 42C.

13   Q    Now, you see an arrow just to the left of those that comes

14   out of the number 40 with the word RIMS below it?

15   A    Yes.

16   Q    What is your understanding as to what that means, what it

17   means to one of ordinary skill?

18   A    This is all part of RIMS.

19   Q    Are you familiar with the RIMS system at all?

20   A    Yes.

21   Q    How did you get familiar with that?

22   A    It was described in a printed patent.  There's literature

23   about it.

24   Q    Was the application for that RIMS patent, was it or was it

25   not incorporated by reference into the patents-in-suit?

1   A    It was.

2   Q    Do you have an understanding as to whether or not the RIMS

3   system had a parts master in it?

4              MR. ROBERTSON:  Your Honor, I'm going to object.  Now

5   we are talking about another patent and another invention, and

6   now it's getting, if it hasn't stepped over the line already,

7   very close to contradicting what the Court's construction is

8   here of the '172.

9              MR. McDONALD:  I don't know what he's taking about.

10  We're talking about this figure and what the figure means.

11  Based on information incorporated by reference into the

12  patents-in-suit.  We are talking about the patents-in-suit

13  here.

14             THE COURT:  Okay, but my recollection is that the

15  incorporation by reference is of a different document, not RIMS

16  as shown in 40, that it has a particular term, and I'll have to

17  go back and look at it, but I thought we dealt with this once

18  before and I told you what you could or couldn't do, but let me

19  go look.

20             Fisher RIMS is the patent number '571 -- is the

21  abbreviation for the patent 5712989.  Fisher RIMS, not RIMS,

22  Fisher RIMS, and that's not shown in the figure, and I think

23  that you have to establish whether he understood -- what he

24  understood before he can testify to anything.

25             I'm not going to rule on the objection, but there's a

1    significant difference in short-forming something Fisher RIMS

2    and calling it RIMS, particularly in view of the record we have

3    in this case.

4              MR. McDONALD:  Let me lay a foundation for that, Your

5    Honor.  Can we go back to column four of the '172 patent, Bill.

6    Go to line one, I think, just to make sure we capture

7    everything and the first third of the column.

8    Q    I have a little arrow here, Dr. Shamos, that I've drawn at

9    column four beginning at about line six.  Do you see there

10   where it says electronic sourcing system five also includes a

11   requisition system 40, preferably but not necessarily the

12   Fisher RIMS system; do you see that?

13   A    Yes.

14             MR. ROBERTSON:  Objection, Your Honor.  That was

15   exactly Your Honor's point, preferably but not necessarily the

16   Fisher RIMS system.

17             MR. McDONALD:  I don't think that was your point,

18   Your Honor.  I think the point is, what is 40 representing

19   here.

20             THE COURT:  The objection is premature.  You haven't

21   asked the question yet.

22   Q    Do you see that sentence, Dr. Shamos?

23   A    Yes.

24             MR. McDONALD:  All right, if we go back to column one

25   of the '172 patent, please.  Can you blow up column one, Bill,

1    about the first third of it or so.  Right about there.

2    Q    Do you see there about line 19 or so, Dr. Shamos, that it

3    refers to, quote, Fisher RIMS as what's described in that US

4    patent number 5712989?

5    A    Yes.

6    Q    So if we go back to column four now of the '172 patent up

7    at line eight or so, is it pretty clear here that that system

8    40 is preferably but not necessarily the Fisher RIMS system as

9    described in column one?

10            MR. ROBERTSON:  I object to the leading, Your Honor,

11   and I also object to the fact that it says, is a requisition

12   system 40 preferably but not necessarily Fisher RIMS.

13            THE COURT:  Yes, and that was his question.

14   Overruled.  Don't lead.  Just ask him what he understands.  The

15   cat is out of the bag now, but don't do that anymore.

16            MR. McDONALD:  Can we scroll a little further down,

17   Bill, grab maybe the next five lines or so, column four.

18   Q    Do you see there, Dr. Shamos, the sentence beginning on

19   line 15 of column four where it says, Fisher RIMS system 40 is

20   comprised of numerous program modules and lists several numbers

21   connected with that number 44; correct?

22   A    Yes.

23            MR. McDONALD:  And can you scroll down a little

24   further now, Bill.  Grab -- get down to that line 25 and get a

25   few more lines.

1   Q    Can you see her beginning at about line 25 of column four,

2   Dr. Shamos, where it says Fisher RIMS system 40 also includes

3   several Fisher RIMS databases 42?

4   A    Yes.

5   Q    Then goes it on to list that that preferably includes

6   requisition databases 42A, inventory databases 42B, and

7   customer-specific databases 42C, each maintained within OS/2,

8   operating system 32?

9   A    Yes.

10  Q    Is it your understanding that --

11         THE COURT:  What is your understanding?

12  Q    What is your understanding as to whether or not those

13  databases 42, as shown in figure 1A, are the databases from the

14  Fisher RIMS system?

15  A    I think that one of skill in the art looking at this text

16  and figure 1A would understand that figure 1A is a preferred

17  embodiment, and the description in this column four says that

18  preferably RIMS is the Fisher RIMS system.  So it's describing

19  a preferred embodiment.

20         THE COURT:  Preferably but not necessarily.

21         THE WITNESS:  Correct.  One could understand that

22  something else could be substituted for the word RIMS in figure

23  1A, but as it stands, RIMS, as used in this patent, refers to

24  Fisher's RIMS system.

25  Q    Can we return to figure 1A now.

1        THE COURT:  Excuse me.  Do you -- that wasn't what

2   the question was.  It's not as used in the patent.  It's as

3   used in figure 1A, and I'm going to limit the answer to that,

4   because that's all this is, is what's in figure 1A.

5        And the other thing is we're getting so far into the

6   Fisher that you're trenching on the Court's construction here.

7   Let's move on now.  Fisher and this patent aren't the same

8   thing.  They are different, and if this patent is not -- you

9   know, we're not getting into that for purposes of infringement.

10  If it has some other issue, then we'll deal with it later, but

11  let's go.

12       MR. McDONALD:  I agree, but I think figure A1 will

13  help understand --

14       THE COURT:  I know, but, Mr. McDonald, he didn't

15  do -- he went beyond where the question went.  You were asking

16  about figure 1A.  Then he incorporated it into the whole patent

17  which includes the claims and everything else, and that isn't

18  right.  That's what his answer said.

19       MR. McDONALD:  His answer was very clear.  I thought

20  he was talking about the preferred embodiment, Your Honor.

21       THE COURT:  No, he said -- he slipped from the

22  preferred embodiment to the patent, and the patent is a whole

23  lot more than figure 1A, and figure 1A has a specific meaning.

24  So his answer can stand as to figure 1A but not as to the

25  patent.

Shamos - Direct

1       Let's move on to something else now because you are

2  getting in an area that's going to engender confusion and delay

3  because there's going to have to be a lot more testimony that

4  will come in if we keep up with this approach, and I think I've

5  told you that a couple times, so let's go.

6       MR. McDONALD:  Your Honor, will I at least be able to

7  go through that with the inventors when I call them back?

8       THE COURT:  I don't rule in apprehendo.  We won't

9  take the time until that comes up.  I don't think it's a proper

10  thing to do at this point.

11  Q   Why don't we go back to your slides, Dr. Shamos, slide --

12  let's go to slide 55, actually, at this point, continue with

13  claim one of the '172 patent.  I think we're getting near the

14  end here.

15       Can you summarize for us the reasons for your opinion that

16  claim one of the '172 patent is not infringed with respect to

17  these elements E and F that are on page 55 of your slides?

18  A   Yes.  These are not new reasons.  We've already talked

19  about the order list.  Since there's no order list, there can't

20  be selected matching items on said order list, and for means F,

21  since there are no selected matching items on said order list,

22  you can't generate purchase orders from them.  So neither of

23  those means is present in the Lawson system.

24  Q   Dr. Shamos, did you also look at the Lawson punchout,

25  procurement punchout module as part of your analysis?

Shamos - Direct

1    A     Yes.

2    Q     Turn to slide 56, please.  Now, in your opinion, does the

3    Lawson procurement punchout module combined with the other, any

4    of the other Lawson modules we've talked about, does that

5    infringe any of the asserted claims in this case?

6    A     No.

7    Q     Why is that?

8    A     Well, what punchout basically does is allow you to jump --

9    in fact, I think the letters O-U-T in punchout mean you are

10   leaving the Lawson system, and you're going somewhere else.

11   You're going to a vendor's website, and the vendor can maintain

12   up-to-date information about products it has available.  The

13   vendor can provide search capabilities so you can look around

14   for product that you want might want to buy from there, and

15   that search capability has nothing do with the Lawson system.

16   It's maintained completely separately by the vendor, and the

17   Lawson system doesn't even know what search capabilities are

18   available at punchout.

19   Q     What is it that the Lawson system does do to facilitate

20   the punchout process, if anything?

21   A     I think it provides a link whereby you can jump to a

22   vendor system.

23   Q     Can you get information back from the vendor system?

24   A     Yes.

25   Q     Is it your understanding that in the accused punchout

1  configurations -- let me ask it this way:  Are there any item

2  related databases at issue when a customer is using a Lawson

3  system with a punchout function?

4  A    I didn't understand the question.

5  Q    Okay.  Well, you were mentioning a search functionality.

6  Let's come back to that.  What was being searched when you

7  talked about the search functionality?  What did you have in

8  mind was being searched in punchout?

9  A    Well, when you invoke punchout, you're actually literally

10 visiting another vendor's website, and if that vendor provides

11 a search capability, then you can do searching at the vendor

12 website.

13 Q    What are you searching for at the vendor website?

14 A    Presumably you are searching for products that meet some

15 descriptor that you've got, so if I'm looking at office

16 supplies, I can -- assuming that Office Depot is one of the

17 punchout vendors, I can go to the Office Depot site, and I can

18 look for -- I can type in pen refills, and whatever pen refills

19 Office Depot is offering will show up on the search screen

20 that's being produced by the vendor website.

21 Q    Did you see any functionality or mechanisms or anything as

22 part of the Lawson system that would give the Lawson system any

23 control over either the search functions at the vendor websites

24 or the data at the vendor websites being searched?

25 A    There isn't any such.

1   Q    Why is it that information that you've been describing

2   here would lead one to conclude that the punchout configuration

3   doesn't infringe any of the asserted claims?

4   A    Well, because if you look at the elements of the asserted

5   claims, it doesn't fill in the missing element.  There's no

6   claim that would be infringed because of punchout that isn't

7   already not infringed without punchout.

8   Q    There's a lot of negatives.  I'm not sure if I followed

9   that, but with respect to the claims that require catalogs or

10  databases, that's all of them; right?  They either require

11  catalogs or databases?

12  A    Yes.

13  Q    In the punchout configuration, does the Lawson system have

14  any catalogs or databases?

15  A    No.  The vendor has databases.  I mean, there are lots of

16  databases in the world.  The world has more than one catalog,

17  but the world is not incorporated in the Lawson system.

18  Q    I'd like to turn finally here to the inducement and

19  contributory infringement issues, Dr. Shamos.  Did you also

20  look at those issues?

21  A    Yes.

22  Q    What opinion did you reach regarding whether or not Lawson

23  induces infringement of any of the 12 asserted claims?

24  A    Well, I don't think any of the asserted claims are

25  infringed, so without an infringer, there can't be inducement

1    of infringement.

2    Q    What is your opinion as to whether or not Lawson performs

3    any contributory infringement with respect to any of the 12

4    asserted claims?

5    A    Contributory infringement requires that there be a direct

6    infringer.  Without a direct infringer, you can't be a

7    contributory infringer.

8    Q    Dr. Shamos, I'll just ask you here, because I think I'm

9    near the end, have I missed any important points from your

10   analysis and opinions in this case regarding non-infringement

11   that we haven't already covered?

12           MR. ROBERTSON:  Objection, Your Honor.  That calls

13   for a narrative.

14           MR. McDONALD:  That's a yes or no question, Your

15   Honor.

16           THE COURT:  That is a yes or no question.

17   Q    Just yes or no, Dr. Shamos.

18   A    No.

19           MR. McDONALD:  I have no further questions.  Thank

20   you, Dr. Shamos.

21           THE COURT:  I think it's time, ladies and gentlemen,

22   to take our morning recess.  Take your notebooks with you.

23   We'll take -- I think we're going to take about 30 minutes

24   because I need to talk to the lawyers while you all are out,

25   and then we need a little break, too.