2251

1        CROSS-EXAMINATION

2    BY MR. ROBERTSON:

3    Q    Mr. Gounaris, it's my understanding you are a paid

4    consultant for Lawson in this case; is that right?

5    A    Yes.

6    Q    You've been compensated for providing testimony

7    for Lawson; is that right?

8    A    Preparation.

9    Q    You also were a paid witness for SAP in the SAP

10   enforcement action, correct?

11   A    Yes.

12   Q    And isn't it true as of the time that your

13   deposition was taken in this case, about seven months

14   ago, you had already billed Lawson in excess of

15   $12,000; is that right?

16   A    That's correct.

17   Q    Since that time you have billed significantly

18   more; is that fair to say?

19   A    I billed more.

20   Q    In between this case and the SAP case, you have

21   made tens of thousands of dollars from your testimony

22   involving your role with IBM in these cases; is that

23   correct?

24   A    Yes.

25   Q    You indicated you met with Mr. Melly, who's one of

1   the inventors of the patents, you understand that,

2   right?

3   A    Yeah.

4   Q    Isn't it true that Mr. Melly basically shared with

5   you at the time that Fisher was coming up with this

6   invention that they were spending a significant amount

7   of money and it was a growing amount of money on the

8   production of paper catalogs, thousands of items in

9   it, and they were concerned about that expense and

10  wanted to come up with a method to be able to develop

11  innovation that would give them a competitive

12  advantage and reduce that cost?  He was looking for

13  something innovative, wasn't he, sir?

14  A    Yes.

15  Q    And you indicated that you were going to try and

16  help him in that you had a discussion how you were

17  going to approach that innovation, correct?

18  A    Several discussions.

19  Q    You indicated, as I say, you were the project

20  manager for this?

21  A    No.

22  Q    What was your exact title?

23  A    I was engagement manager and then became

24  principal.  We had another person who was our project

25  manager.

GOUNARIS - DIRECT                    2253

1   Q    So you understand, in that role, that

2   Fisher-Scientific insisted on a confidentiality

3   agreement or nondisclosure agreement, right?

4              MR. SCHULTZ:  Objection, beyond the scope.  I

5   never got into any confidentiality agreements.

6              THE COURT:  You got into how they were hired

7   and why.  Overruled.

8   A    There was an exchange of confidential information

9   document, yes.

10  Q    You understand in that exchange it was

11  Fisher-Scientific who was providing the confidential

12  information to IBM; isn't that right?

13             MR. SCHULTZ:  Objection, cumulative.  This is

14  the same testimony we heard from Ms. Eng.

15             THE COURT:  Then you shouldn't have called

16  him.  Overruled.

17  Q    You understand that, right, sir?

18  A    Could you repeat again?

19  Q    Yes.  It was Fisher-Scientific who was providing

20  the confidential information to IBM under that

21  agreement that you signed, right?

22  A    That's right.

23  Q    You also understand as part of this agreement for

24  IBM to subcontract to assist Fisher-Scientific in this

25  project that there was what's known as a non-compete

GOUNARIS - DIRECT                2254

1   clause?  Are you familiar with that term?

2   A    I'm familiar with non-compete.

3   Q    So everyone understands, you understand a

4   non-compete clause to mean that for some period of

5   time certain individuals are restricted from

6   performing services for a competitor, for example,

7   once they have been hired in this case by

8   Fisher-Scientific, right?

9   A    That's correct.

10   Q    And in this contract, there was such a non-compete

11   clause, right?

12   A    There was.

13   Q    And you're aware that you were never identified in

14   that non-compete clause as somebody who was

15   restricted, correct?

16   A    Yes.

17   Q    Ms. Eng was, right?  You're familiar with her?

18   A    The names are in the contract.  They are written

19   there and who the companies were.  It's very spelled

20   out in the contract.

21          MR. ROBERTSON:  No further questions.  Thank

22   you.

23          THE COURT:  Can he be excused permanently?

24          MR. SCHULTZ:  Yes, Your Honor.

25          THE COURT:  Can he be excused permanently?

2255

1          MR. ROBERTSON:  Yes.

2          THE COURT:  Thank you, sir, for giving us

3   your testimony, and you're relieved from your

4   obligation to be here.  You are excused.

5              (The witness was excused from the witness

6   stand.)

7          THE COURT:  We'll take a 20-minute recess at

8   this time.

9              (Brief recess taken.)

10             (The jury is present.)

11         THE COURT:  Next witness.

12         MS. HUGHEY:  Yes, Your Honor.  The next

13   witness is going to be Laurene McEneny.  She's the

14   prior art witness for the prior P.O. Writer system.

15   It's going to be a video.

16         THE COURT:  Dare I ask the length thereof.

17         MS. HUGHEY:  It's 1 hour, 25 minutes.  And

18   the designations for your reference, Your Honor,

19   Lawson was able to get it down to --

20         THE COURT:  I don't care.  I don't think that

21   needs to go there.  I understand.

22         Do we have a transcript?

23         MS. HUGHEY:  Yes, Your Honor.

24         THE COURT:  Okay.  All right.

25         THE CLERK:  What's her name?

1          MS. HUGHEY:  Laurene McEneny, L-a-u-r-e-n-e,

2    McEneny, M-c-E-n-e-n-y.  And I can tell you in advance

3    what exhibits will be admitted through the witness, if

4    you'd like.

5          THE COURT:  May I have that transcript so I

6    can write my copy on it?  What are they?

7          MS. HUGHEY:  The exhibits are DX 117, DX 125,

8    DX 126, DX 133, DX 139, DX 140, DX 141, and PX 482.

9          THE COURT:  What?

10         THE CLERK:  482, Your Honor.

11         MS. HUGHEY:  The last one was PX 482.

12         THE COURT:  It was PX, not DX.

13         Ladies and gentlemen, we have some deposition

14    testimony.  This is the last deposition, is it, that

15    we have?

16         MS. HUGHEY:  Yes, Your Honor.

17         THE COURT:  All right.  May I see

18    Mr. Robertson and Mr. McDonald up here while you-all

19    are listening to her testimony.

20         (The video is being played at this time for

21    the jury.)

22         THE COURT:  Looks to me like from following

23    along at the pace and following along with this

24    there's another 30 minutes or so; is that about right?

25         MS. HUGHEY:  Approximately.

1           THE COURT:  I think the jury has been here
2      long enough today, and it's probably a good idea to
3      let them go on home, and we'll do this in the morning.
4           Just to give you some idea of what the
5      lawyers think is the status of things, assuming
6      everything goes all right, they plan to have Lawson
7      wrap up tomorrow sometime, and ePlus has about a day
8      of rebuttal testimony.  So that means that the
9      evidence ought to be concluded by Thursday.  And on
10     Friday you'll hear closing arguments and the final
11     instructions and begin your deliberations.
12          You can deliberate Saturday if you want to.
13     You can go home and spend the weekend.  You can come
14     back Monday and deliberate.  I'm not telling you how
15     long you have to deliberate.  I'm just saying that's
16     what I think will happen.
17          Now, it's possible depending on some rulings
18     that I make that schedule won't we met and they won't
19     wrap up until Friday sometime.
20          Is that a fair statement based on what
21     you-all now think?
22          MR. ROBERTSON:  Yes, Your Honor.
23          MR. McDONALD:  Yes.
24          THE COURT:  They are mindful of the fact,
25     both of them, both sides, that this is a significant

1    imposition upon your time, and your families, and your

2    employers, and they have been working hard even as

3    they have gone along to curtail what they're doing as

4    they see how the evidence is coming in and trying to

5    tailor it to be effective and efficient at the same

6    time.

7         That's what they think now.  I think someone

8    had asked what did we foresee, and that's the best I

9    can come up with at this time after consulting with

10   the lawyers.

11        So thank you very much.  Drive carefully and

12   we'll see you tomorrow morning at nine o'clock.

13        (The jury is exiting the courtroom for the

14   evening at 5:13 p.m.)

15        THE COURT:  All right.  Where do you stand on

16   resolving the 167 slides and the testimony and what I

17   have to rule on?  Do you know?

18        MR. ROBERTSON:  They both haven't actually

19   been downloaded.  Progress has been made, but I know

20   that there was substantial progress made, and it's my

21   understanding was several hours have been spent trying

22   to resolve this.

23        THE COURT:  Where are they?  Where are the

24   resolvers?

25        MR. ROBERTSON:  Ms. Stoll-DeBell was one of

1    the resolvers.  I hear it's confined itself to the

2    J-CONN and P.O. Writer issues, but we have made

3    substantial headway in resolving most of the other

4    issues.

5              So I think we can treat them not slide by

6    slide, but perhaps my catagory, but I haven't had an

7    opportunity to speak with my colleague with respect to

8    that.

9              THE COURT:  Neither one of you have.

10             MR. McDONALD:  I think, conceptually, I'm

11   going to try to keep the P.O. Writer and J-CONN stuff,

12   try to tailor it out a little bit tonight.  So to the

13   extent there are issues, I can turn it into non-issues

14   and focus on the RIMS and TV/2.

15             It sounds like that's been generally

16   resolved.

17             THE COURT:  All right.  Do you have one other

18   person, a fact witness?  Who is it?

19             MR. McDONALD:  Yes, it's Preston Staats.  He

20   is the witness regarding the J-CONN prior art.

21             MR. ROBERTSON:  You also have my inventor.

22             MR. McDONALD:  Yes, Mr. Johnson.

23             THE COURT:  Will Johnson be longer or shorter

24   than the others?

25             MR. McDONALD:  He'll be shorter.  Just a

2260

1    little cleanup, not repeating.  It's my goal to not

2    repeat what the other inventors have said.

3            MR. ROBERTSON:  I wanted to raise two matters

4    with you.  Let me bring it to your attention.  One is

5    we have revised the glossary to include your

6    definition or your construction or your supplemental

7    construction on published by a vendor.  I've done it

8    two ways.

9            One, I put it in a glossary of terms, or,

10   two, I've just done it as an additional supplemental

11   instruction that could go behind the glossary of

12   terms.  I'm going to give a copy to Mr. McDonald

13   tonight, and I might just make a suggestion that that

14   might be helpful to have in the jurors' notebooks

15   since the Court has now construed that claim.

16           THE COURT:  My practice is to give the jury

17   the instructions.  I've taken your instructions.  I've

18   tried to simplify them, basically, by eliminating

19   repetition.

20           If you'll look at the instructions, there was

21   a great deal of repetition because a lot of standard

22   instructions were used without clipping out the things

23   that were repeated in others.  And I will review those

24   again tonight after they have been retyped, I think,

25   and I'll get them to you.

2261

1           MR. ROBERTSON:  May I just raise one second

2    issue, Your Honor, and that is what is the Court's

3    pleasure with respect to when you want to argue these

4    things or hear argument or --

5           THE COURT:  As soon as the evidence is in.  I

6    don't think it's fair to argue instructions before the

7    evidence is in because it just changes.  And you have

8    to redo things so much.  We'll do it as soon as the

9    evidence is in.

10          MR. ROBERTSON:  Did I understand Your Honor

11   was going to provide a draft at some point in the next

12   day or two so we can focus on what's important and

13   maybe even resolve any differences?

14          THE COURT:  Yes, I hope I'll give it to you

15   sometime tomorrow.  I have to read it again.  I have

16   taken what have you done and spent, with the help of

17   Ms. Haggard, reorganizing them.  I've tried to put

18   them together in a way that the jury can understand.

19          I have edited them to some extent, but

20   basically to take out redundant information.  I think

21   I've tossed three or four of them or maybe more

22   because I didn't think they belonged, but I have all

23   of what you-all have tendered available for the charge

24   conference, and we'll have the charge conference after

25   the evidence is in.

1          And then you'll be able to -- the procedure

2    is you don't have to stand up and deal with things.

3    You can sit down, but you have to speak up so the

4    court reporter can hear you because you probably have

5    lots of paper that you need to look at.  Then we'll go

6    from there.

7          I have looked at these proposed curative

8    instructions on the issue of advice of counsel.  And

9    my view is it's better to be simple than complicated,

10   and I believe that I'll just tell them that when

11   Mr. Christopherson testified, there was some testimony

12   about whether he or other lay witnesses at Lawson

13   formed a viewpoint about whether Lawson infringed the

14   patents or whether Lawson obtained an opinion of

15   counsel of non-infringement or invalidity of the

16   patents.

17         I instruct you now that I have excluded all

18   that testimony.  I'm asking you to disregard it

19   entirely.  Obviously, that will be the subject of the

20   charge conference, but it is essentially the first

21   paragraph of Lawson's -- I mean of ePlus' proposal,

22   and the second paragraph added to it with the rest of

23   it stricken out.  It's not essentially.  That is what

24   it is.

25         I don't think it's wise to get into telling

1    the jurors legal theory.  I think the important thing

2    is to do what I told them will happen at the beginning

3    of the case, and that is if there's something that has

4    to be stricken, you can't consider it.  Otherwise, I

5    think you put too much focus on the issue and that

6    raises more questions often than it answers.  So

7    that's what I propose to do with that.

8            And plaintiff ePlus' brief or motion to

9    preclude evidence or argument of non-infringement due

10   to defendants failure to provide discovery related to

11   customer specific implementations of accused products

12   should be denied as moot, should it not?

13           MR. ROBERTSON:  Based on Mr. McDonald's

14   representation of stipulation, I think that is

15   correct, Your Honor.

16           THE COURT:  I've held it, but I haven't heard

17   anything that causes me to deal with it yet.  Unless

18   something happens tomorrow making me have to deal with

19   it, that's what I propose to do.

20           I have received and read Lawson's memorandum

21   in opposition to the offer of proof question.  I will

22   give ePlus -- this was filed yesterday at sometime.

23   I'll give ePlus a chance to respond to it.

24           Let me tell you just what I'm concerned

25   about.  I think that you're entitled to make an offer

1    of proof about what you presented to me inveighing me

2    to make a decision.  I don't think you're entitled to

3    include in that offer of proof matters that I didn't

4    consider because -- I mean, it may have changed my

5    mind.  I don't know.  I haven't looked at them at all

6    at this point.

7         And I understand from Lawson's brief that

8    there are a lot of things that were offered that are

9    new.  There was a fairly extensive proffer made in the

10   argument, if I remember correctly, and so that's kind

11   of the consideration that I have.

12        However, even if that prompts a decision to

13   deny the motion for leave to file, I think it's

14   obligatory on the Court to allow that to be placed in

15   the record in its entirety so that the Court of

16   Appeals can conclude whether I erred.

17        The two or three cases that Lawson cited that

18   seem to address that situation looked to me as if that

19   was the procedure followed by the District Court, but

20   I do think that the underlying issue, both here and

21   perhaps more importantly on appeal, is that items that

22   weren't presented to the District Court for decision,

23   it might have an import on the ruling made that can't

24   be considered on appeal, at least in the Fourth

25   Circuit they can't, and I think the Federal Circuit

2265

1   follows pretty much the same rule.

2          MR. ROBERTSON:  Your Honor, could I just

3   request then, it really doesn't have any impact on the

4   jury.  Could we have until Friday to file that reply?

5          THE COURT:  Sure.  You've made it in a timely

6   fashion.  And you-all have enough to do without

7   generating more paper, but I thought I had it, I've

8   read it, and I'd let you know where we stand on the

9   matter, and then we'll go from there.

10          MR. ROBERTSON:  Thank you.

11          THE COURT:  All right.  Is there anything

12   else that we need to take up this evening?

13          MR. McDONALD:  No, Your Honor.

14          MR. ROBERTSON:  I'm sorry?

15          THE COURT:  Anything else you all need to

16   take up?

17          MR. ROBERTSON:  No, sir.

18          THE COURT:  Are you all in agreement on the

19   verdict form because I'm reviewing it, and I know

20   there were some complaints about it at one time,

21   differences of opinion at one time, and I don't know

22   whether you've resolved it or not.

23          MR. McDONALD:  I think the main issue was

24   whether we were going to have the different Lawson's

25   systems on the infringement issue.

2266

1           THE COURT:  What?

2           MR. McDONALD:  I think the main issue was

3   whether we were going to ask on an accused system

4   basis because certain others, about five or six Lawson

5   --

6           THE COURT:  Five.  I think there were five

7   combos.

8           MR. McDONALD:  Right.  Some were accused of

9   certain things and not others.

10          THE COURT:  Yes.  Because right at the end of

11  Dr. Weaver's testimony I believe that Mr. Robertson

12  went through and kind of identified which claims

13  involved all of the systems, which claims involved

14  only certain parts of the system, and Dr. Weaver was

15  very specific about that.  And I'm inclined at this

16  stage, in particular, because I think you-all are

17  entitled to know what the verdict form is.

18          MR. ROBERTSON:  Yes, Your Honor.

19          THE COURT:  As the case was tried.  Plus I

20  think the Court needs to have that answer in deciding

21  how to frame any injunctive relief that may ensue a

22  verdict in favor of the plaintiff.

23          MR. ROBERTSON:  We've gone ahead and prepared

24  another draft based on the configurations that were

25  subject of the testimony and as to which claims those

1    configurations would apply.

2           So I have a draft.  I can go back and check

3    on it tonight, and I'll provide it to Mr. McDonald for

4    his review, and see if he can agree with it, or if he

5    doesn't, if he has any further suggestions.

6           THE COURT:  All right.  And then do you ask

7    judgment -- I believe you just said is the patent

8    valid after each one of the questions of infringement

9    in the first iteration of that form.  Is that what

10   you've done, too, following?

11          MR. ROBERTSON:  With respect to that, I think

12   we have a suggestion after that.  For example, they

13   are going to be finding obviousness or anticipation

14   based on a reference.  We now have a question, what

15   reference or references do you find invalidate the

16   claims?  So it's also specific as to the prior art.

17   That is, the jury so finds we invalidate one or more

18   claims.

19          But I'll be happy to provide a copy of it to

20   the Court just to review, not filing it with the

21   clerk's office until we have an opportunity --

22          THE COURT:  Yes, I think that's fine.  You

23   two look at it and then see what you think, and then

24   give it to me.

25          I'm inclined not to tie them in very tightly

1    on which references just because it's burdensome.

2          MR. McDONALD:  It's going to be an awful long

3    form if you put in each one of the individual pieces

4    of prior art.

5          It's already long as it is.  That will make

6    it longer than I think it needs to be is my first

7    reaction, but we'll take a look at what he proposes.

8    I don't want to take a position sight unseen.

9          THE COURT:  No, I don't either.

10         Did I tell them nine in the morning.

11         THE CLERK:  I believe you did.

12         THE COURT:  Thank you.

13         MR. McDONALD:  Your Honor, the closing

14   arguments, I have a question about that.  I would

15   assume the normal order would be that the plaintiff

16   goes first, the defendant second, and then plaintiff

17   rebuts, is that regular?  My question is because we

18   have the burden of proof on invalidity, would there be

19   an opportunity -- some courts give the defendant who

20   has that burden to prove invalidity a chance to rebut

21   on that issue.

22         THE COURT:  Have you all talked about that?

23         MR. McDONALD:  No, I was wondering if you had

24   a procedure that was typical in a situation like this.

25         THE COURT:  Typically, it's an opening and

1    closing and a rebuttal by plaintiff.

2         MR. ROBERTSON:  That's how it was handled in

3    *Ariba* and *SAP*, Your Honor, before Judge Brinkema and

4    Judge Spencer.

5         THE COURT:  I think he wants to -- do you

6    want to handle it like they do in Minnesota?

7         Do you know what that is, Mr. Robertson?

8         MR. ROBERTSON:  Your Honor --

9         THE COURT:  The defendant goes first, and

10   then the plaintiff goes last, and that's the end of

11   it.  There isn't any other that I know of.

12        Do they still do that?

13        MR. McDONALD:  Yes.

14        MR. ROBERTSON:  There is no counterclaim

15   pending, Your Honor.  It is on the affirmative

16   defense.

17        THE COURT:  I understand.  And my reaction

18   is, you use the standard format.  And I generally

19   don't put time limits on lawyers.  I do think if

20   you're going to be using demonstrative exhibits in

21   your closings that you need to show them to the other

22   side so that I don't have a big problem at some point.

23        I mean, if they have previously been dealt

24   with and used at the trial, you don't need to do that,

25   but if you're going to use something that you haven't

 1   used before, I think it's a good idea to let the other

 2   side see basically what you're doing.

 3           MR. McDONALD:  Okay, Your Honor.

 4           THE COURT:  But maybe you all have a

 5   convention on that, too?  I know the world of bridge

 6   has passed me by because all the conventions have

 7   changed, and now I feel like I've been changed by your

 8   conventions.

 9           MR. ROBERTSON:  I have one question with

10   respect to these demonstratives.  There's been some

11   testimony in the case that we would like to obviously

12   emphasize.  There's been testimony, I'm sure, that

13   Lawson would like to emphasize.

14           Does the Court have any prohibition of

15   including a Q and A, for example, from the transcript?

16           THE COURT:  No, you can both do that if you

17   want to.  I think that's helpful to the jury.

18           The one question that you must give some

19   thought to, and it's tended to crop up more frequently

20   recently than it used to, and that is the jurors get

21   back there and they start deliberating, and they want

22   to know if they can have the demonstratives or some of

23   them.  And you just better get prepared for that.

24           I think it's an epidemic, even though I've

25   told them they are not admitted.  But it's happened a

2271

1  lot.  It tends to happen more in criminal cases than

2  others.

3          All right.  Is there anything else?  Thank

4  you very much.

5

6          (The proceedings were adjourned at 5:30 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25