2272

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
2              RICHMOND DIVISION

3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    :
4   ePLUS, INC.,                    :
                                    :
5                    Plaintiff,     :
     v.                             :  Civil Action
6                                   :  No. 3:09CV620
    LAWSON SOFTWARE, INC.,          :
7                                   :  January 19, 2011
                     Defendant.     :
8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

          COMPLETE TRANSCRIPT OF **JURY TRIAL**
10      BEFORE THE HONORABLE ROBERT E. PAYNE
        UNITED STATES DISTRICT JUDGE, AND A JURY
11

12

13

14   APPEARANCES:

15   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
16   **Michael T. Strapp, Esq.**
     GOODWIN PROCTOR
17   901 New York Avenue, NW
     Washington, D.C.   20001
18

19   Craig T. Merritt, Esq.
     CHRISTIAN & BARTON
20   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095
21
          Counsel for the plaintiff ePlus
22

23

24          DIANE J. DAFFRON, RPR
            OFFICIAL COURT REPORTER
25        UNITED STATES DISTRICT COURT

2273

APPEARANCES:   (Continuing)

Daniel W. McDonald, Esq.
**Kirstin L. Stoll-DeBell, Esq.**
**William D. Schultz, Esq.**
**Rachel C. Hughey, Esq.**
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN   55402-2215


Dabney J. Carr, IV, Esq.
TROUTMAN SANDERS
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122
Richmond, VA   23218-1122

          Counsel for the defendant Lawson Software.

2274

1    (The proceedings in this matter commenced at

2    9:00 a.m.)

3        THE CLERK:   Civil Action No. 3:09CV00620.

4    EPlus, Incorporated v. Lawson Software, Incorporated.

5        Mr. Scott L. Robertson, Mr. Craig T. Merritt,

6    Ms. Jennifer A. Albert, and Mr. Michael T. Strapp

7    represent the plaintiff.  Mr. Daniel W. McDaniel,

8    Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell,

9    Mr. William D. Schultz, and Ms. Rachel C. Hughey

10   represent the defendant.

11       Are counsel ready to proceed?

12       MR. ROBERTSON:   The plaintiff is, Your Honor.

13       MR. McDONALD:   Yes, Your Honor, we are.

14       THE COURT:   Good morning, ladies and

15   gentlemen.  We're going to resume the Laurene McEneny

16   show, which appears at this hour only once.  It's

17   under the sponsorship of Lawson Software, Inc. through

18   the cooperation of the plaintiff.  And then we're

19   going to have some testimony.

20       I may, I'm told, have to deal with a motion

21   after this.  So I don't know.  We may have to take a

22   recess, but we'll see what we're doing.

23       I think what the lawyers have been doing is

24   trying to work out ways to continually, as they have

25   gone on, make the trial more efficient and reduce the

1    amount of time, your time, that has to be consumed in

2    the process.  That takes a lot of hard work, and

3    sometimes there's, as you can imagine, friction that

4    develops in the decisional process that has to be

5    resolved by yours truly.  And it's better if we don't

6    expose you to all that because, I have to tell you, it

7    sometimes confuses me, and you don't need to be

8    visited with all that.  So we'll see.

9             All right.  Are you ready to play.

10            MS. HUGHEY:  Yes, Your Honor.

11            THE COURT:  All right.  All systems go.

12            MS. HUGHEY:  Yes.

13            THE COURT:  All right.

14            (The video of Laurene McEneny is resumed

15    playing at this time.)

16            THE COURT:  Is it through?

17            MS. HUGHEY:  Yes, Your Honor.  We'd like to

18    submit Exhibit 403, which is the testimony of

19    Ms. McEneny, into evidence.

20            THE COURT:  Into evidence, 403?

21            MS. HUGHEY:  Yes.

22            THE COURT:  All right.  It's been admitted.

23    All right.

24            (Defendant's Exhibit 403 is admitted into

25    evidence.)

2276

1          THE COURT:  Yes, Mr. McDonald, what do you

2     have.

3          Mr. Robertson?

4          MR. ROBERTSON:  Your Honor, I have one issue

5     to take up with respect to this witness, and I would

6     ask that if Mr. McDonald and I could just briefly

7     approach to discuss that matter.

8          THE COURT:  All right.  Excuse me, ladies and

9     gentlemen.  I'm going to insult your ears.

10          (The following side bar conference is begun:)

11          MR. ROBERTSON:  Your Honor may recall during

12     the pretrial conference we raised the issue in

13     particular about this witness and concern about others

14     will be discussing terms that were construed by the

15     Court that have specialized meaning.  I think it was

16     brought out during this deposition with respect to

17     this particular witness, Ms. McEneny, we raised the

18     issue, and the Court indicated it was going to give a

19     cautionary, advisory instruction that, for example,

20     she was testifying as a fact witness without the

21     benefit of the Court's construction.

22          It's going to come up again to the extent

23     that Dr. Staats testifies this morning.  In fact, it's

24     going to happen.  He's a pH.D  He's got the honorary

25     title of doctor.  We're going to be referring to him

2277

1    as doctor.  I don't want the jury to have a

2    misunderstanding that these witnesses are expert

3    witnesses.

4            THE COURT:  That was Mr. --

5            MR. ROBERTSON:  No, that was Mr. Knuth.

6    We're no longer calling Mr. Knuth.

7            MR. McDONALD:  He was a fact witness kind of

8    like Ms. McEneny, only for a different product, the

9    J-CON product.  He was there selling it.

10           THE COURT:  I thought you were abandoning the

11   J-CON.

12           MR. McDONALD:  No, we were going to -- we

13   will shorten it up quite a bit when we go through with

14   Dr. Shamos, but the prior art is going to come in

15   through Dr. Staats as a fact witness.

16           MR. ROBERTSON:  My concern is there's some

17   confusion as to whether these are fact witnesses or

18   experts because they're going to be using those terms

19   that the Court has construed.

20           THE COURT:  What do you want me to do?

21           MR. ROBERTSON:  Your Honor had suggested at

22   the time of the pretrial that it was going to explain

23   that this was a fact witness, not an expert, and to

24   the extent they were using the Court's claim terms,

25   that the claim terms controlled, not the lay witness'

2278

1   understanding of them.  Your Honor even formulated an

2   instruction.

3            THE COURT:  I understand.  I think you can --

4            MR. McDONALD:  There's something you can tell

5   on a preliminary basis about all the fact witness.

6   I'm not sure we need to do it again specifically at

7   this point, specificly for Mr. Staats testimony.  If

8   he uses the word "catalog," it will come out in the

9   testimony as it did with Ms. McEneny that she didn't

10  know what the Court's construction was.

11           THE COURT:  That was one of the last

12  questions.

13           MR. McDONALD:  Right.

14           MR. ROBERTSON:  At a minimum, can we explain

15  that Ms. McEneny was testifying just as a fact witness

16  and not as an expert, and if Your Honor has a general

17  instruction on that.  I think I am concerned with Mr.

18  Staats because I'm sure that Mr. McDonald or whoever

19  is doing the direct examination is going to credential

20  Mr. Staats, Dr. Staats, with his educational

21  background.  And there's likelihood of confusion.

22           MR. McDONALD:  He sold the J-CON products.

23  He's the one that recognizes the documentation, knows

24  the features as a factual matter.  He was the person

25  selling the product with the features that he's going

1    to testify about.  So he's not testifying as an expert

2    on infringement or validity.  He's just saying this is

3    what I sold and here's its features.

4           THE COURT:  What is his doctorate in?

5           MR. SCHULTZ:  Electrical engineering.

6           MR. McDONALD:  I don't know if that's

7    relevant.

8           THE COURT:  It sounds to me like he's an

9    expert.

10          MR. McDONALD:  No, no, no.  He was there

11   selling this product.  He was the head of the company.

12   I don't think we'll make a big deal about his

13   doctorate.  He's a computer guy just like the IBM

14   people or the other folks.  He just knows something

15   about computers.  He's not an expert.  And I don't

16   think the jury was confused about that with these

17   other witnesses, and I don't think they will be

18   confused with Mr. Staats.

19          MR. ROBERTSON:  Your Honor, the confusion may

20   be resulting because at one point Lawson tried to

21   substitute Dr. Staats for Dr. Shamos and dropped Dr.

22   Shamos.  You ruled that he couldn't testify as an

23   expert.  They are representing he's going to be

24   testifying about this J-CON system.  It's going to

25   come up with respect to the slides that we want to

1  discuss because what's happening now with Dr. Shamos,

2  he's presenting detailed, element by element, claim by

3  claim obviousness analysis that he never disclosed in

4  his expert report.  We raised this yesterday.

5          There's one paragraph that Dr. Shamos has

6  about combining J-CON with this P.O. Writer system for

7  obviousness.  There are no longer any anticipation

8  claims with respect J-CON for Dr. Staats.

9          So our objection, we'd like to raise with the

10  Court, and it's going to take away some time with the

11  jury, but it's very important because these slides for

12  the first time are what they have given us are what

13  they contend is a claim by claim, element by element

14  obviousness argument.

15          THE COURT:  Are you saying we need what

16  Shamos is going to testify to before Staats testifies?

17          THE COURT:  I would say yes because, Your

18  Honor, if Dr. Staats -- if Dr. Shamos, and there's

19  only one paragraph on obviousness, and there's no

20  analysis, then Dr. Staats' testimony is completely

21  untethered to any kind of relevance as the Dr. Shamos'

22  opinions as Your Honor has already ruled.  We can't

23  have some witness come in here testifying to all those

24  things without an expert tying it together and

25  connecting the dots, and that's exactly what's going

1    to happen.

2            Someone has to connect the dots, but it can't

3    be with Dr. Staats because he didn't do an expert

4    report.  The only person that did an expert report on

5    this combination of J-CON and P.O. Writer is Dr.

6    Shamos, and it's in one paragraph.

7            THE COURT:  I'm going to excuse the jury.

8            (The sidebar conference has concluded.)

9            THE COURT:  I need to take something up

10   further with them, and I don't think you need any more

11   white noise.  You talk about something that will

12   destroy your harmony and your waa, that's it.

13           (The jury is exiting the courtroom.)

14           THE COURT:  I gather that this issue that you

15   were raising, Mr. Robertson, is embodied in the email

16   chain that I got today.  Somehow there's a connection

17   between what Dr. Staats is going to testify to and the

18   Dr. Shamos issue.

19           As I understand your point, just so I get the

20   issue framed, you're objecting to Dr. Staats

21   testifying because he would be testifying to matters

22   that have no relevance in the case and that would be

23   prejudicial and confusing to the jury because there is

24   no expert that is going to link the factual matters

25   that he's testifying to back to an obviousness opinion

2282

1   by Dr. Shamus.  Is that basically the framework we're

2   operating in?

3           MR. ROBERTSON:  That's the essence of it,

4   Your Honor.

5           THE COURT:  Where is Dr. Shamos's obviousness

6   opinion that you say is the end of it all?

7           MR. ROBERTSON:  Your Honor, if I might hand

8   it up to the Court.

9           THE COURT:  I have his report up here.

10          MR. ROBERTSON:  Well, I've got the excerpt

11   for you Your, Honor.

12          THE COURT:  All right.  This is an excerpt

13   from Dr. Shamos' invalidity report.

14          MR. ROBERTSON:  If I can focus you in on

15   paragraph 236.  He actually has two paragraphs in its

16   entirety in his report that talk about the combination

17   of this J-CON reference, which Dr. Staats is going to

18   testify about in P.O. Writer, which we just heard.

19   235 is simply an introductory paragraph.

20          THE COURT:  You say there's no anticipation

21   issue now.

22          MR. ROBERTSON:  No, it's been conceded by the

23   defendant that they are not offering J-CON for any

24   anticipation theory.

25          Now, you'll recall that that's all that Dr.

1    Staats did in his expert report.

2          THE COURT:  Dr. Shamos?

3          MR. ROBERTSON:  Excuse me, I misspoke.  Dr.

4    Shamos.  And there were claim charts on anticipation

5    and what they this did was identify what they thought

6    the elements were going to show, but they didn't show

7    in what way there was going to be any combination of

8    those elements.

9          There was a long claim chart where they said

10   this is disclosed in J-CON or this is disclosed in

11   P.O. Writer, but we're talking about some 10 claims

12   and 56 elements and nowhere is there any explanation

13   in any obviousness chart because, quite frankly, it

14   was conceded that Dr. Shamos did no obviousness

15   charts, notwithstanding the Court's scheduling order

16   that it issued earlier in the case --

17         THE COURT:  You're saying 236 is the only

18   place where he deals with obviousness and J-CON?

19         MR. ROBERTSON:  And P.O. Writer.

20         THE COURT:  Both or either?

21         MR. ROBERTSON:  Well, together.  He's saying

22   that together J-CON and P.O. Writer render the claims

23   obvious.

24         And I think we pointed out to the Court that

25   there needs to be some sort of reasoned analysis.  In

1    fact, if I could just go to the KSR case, which is the

2    Supreme Court's most --

3              THE COURT:  Wait a minute.  I just need to

4    refresh my memory on 236.  He starts off with a clause

5    that says, "To the extent that J-CON and/or P.O.

6    Writer are not deemed to anticipate any asserted

7    claim," and now we don't have any anticipation issue.

8              MR. ROBERTSON:  That's correct.

9              THE COURT:  "It is my opinion that such claim

10   would have been obvious in view of the combination.

11   The same reason for making the previous two

12   combinations apply to combining the J-CON system as

13   described in the J-CON manual with P.O. Writer Plus as

14   described in the P.O. Writer Plus manual."

15             Well, I don't understand what previous two

16   combinations.

17             MR. ROBERTSON:  He actually had a combination

18   on J-CON plus Dworkin and RIMS plus Dworkin.  They are

19   coming different references.

20             I would suggest, Your Honor, that those

21   paragraphs are as conclusory as this one, although

22   there's more than simply one paragraph.  But, again,

23   there's no claim chart.  There's no claim by claim,

24   element by element explanation.

25             THE COURT:  Wait just a minute.  The P.O.

1    Writer Plus Version 10 system provided the

2    multi-vendor capability demanded by the industry at

3    and before the time of the invention.

4            So that's why he puts in -- that's his reason

5    for including P.O. Writer 2 as an obviousness

6    component.

7            The J-CON system included features that one

8    of ordinary skill in the art would have been motivated

9    to use with the P.O. Writer including additional

10   details about performing a cross referencing data

11   relating to an item on requisition to determine an

12   alternate source for the same source -- an alternate

13   source for the same item and/or an acceptable

14   substitute for the item initially selected.  And

15   that's why he says you would add J-CON to P.O. Writer,

16   right?

17           MR. ROBERTSON:  Yes, Your Honor.

18           THE COURT:  So he's given those two reasons.

19           MR. ROBERTSON:  That's right.

20           THE COURT:  And he can testify to those two

21   reasons.

22           MR. ROBERTSON:  I perfectly agree.  If that's

23   the extent, if that's the confines of his testimony

24   because that's what he put in his report, I will

25   cross-examine him on that, but we were talking about

2286

1   10 claims that were represented are invalidated and 56

2   separate elements.  And that's the sum total of his

3   analysis.  And that's inadequate under the case law

4   including the Supreme Court's pronouncement on

5   obviousness in its most recent opportunity to address

6   that issue.

7            And if I just might --

8            THE COURT:  That's on KSR?

9            MR. ROBERTSON:  Yes, sir.

10           THE COURT:  I mean in KSR.

11           MR. ROBERTSON:  And the citation for that is

12   550 U.S. 398.

13           THE COURT:  Do you have a copy of it here for

14   me?

15           All right.  What page?

16           MR. ROBERTSON:  It's page 12, I think, of the

17   actual Westlaw printout.  It starts at, I think, about

18   418 of the actual decision.

19           THE COURT:  Okay.

20           MR. ROBERTSON:  A sentence that begins,

21   "Often it will be necessary for a court to look to

22   interrelated teachings of multiple patents, the

23   effects of demands known to the design community or

24   present in the marketplace, and the background

25   knowledge possessed by a person having ordinary skill

1 in the art all in order to determine whether there was

2 an apparent reason to combine the known elements,"

3 but that's elements, "in a fashion claimed by the

4 patent at issue.  To facilitate review, this analysis

5 should be made explicit."

6 It goes on to cite in this Federal Circuit

7 case that says, "Rejections on obviousness grounds

8 cannot be sustained by mere conclusory statements.

9 Instead there must be some articulated reasoning with

10 some rational underpinnings to support the legal

11 conclusion of obviousness."

12 We also cited to Your Honor the Innogenetics

13 v. Abbott Labs case, which is a post KSR case from the

14 Federal Circuit, and the citation there is 512 F.3d

15 1363 at 1373, and that's a 2,000 case.

16 There it was dealing with an expert's

17 obviousness conclusions, and it said for each of the

18 claims you analyze for obviousness, defendant's expert

19 merely lists a number of prior art references and then

20 concludes with the stock phrase to one skilled in the

21 art it would have been obvious to perform these

22 particular steps in the claim.

23 Again, it goes on to quote KSR.  There must

24 be some articulated reasoning with some rational

25 underpinning to support the legal conclusion of

1  obviousness.

2          I'm skipping down now, Your Honor.  It's not

3  credible to think that a lay jury could examine the

4  prior art that the defendant cited as prior art or any

5  of the other references and determine on its own

6  whether there were differences among them and the

7  patent at issue.  Such vague testimony would not have

8  been helpful to a lay jury avoiding the pitfalls of

9  hindsight that belie the determination of obviousness.

10          THE COURT:  Do you have a copy of that case?

11          MR. ROBERTSON:  I do not, Your Honor.  It was

12  cited in the brief, but I can get it for you in short

13  order.

14          THE COURT:  We can get it.  It's quicker back

15  there.

16          MR. ROBERTSON:  So the problem we have now,

17  Your Honor, is we were presented on Monday night with

18  22 slides that conduct an obviousness analysis of

19  J-CON and P.O. Writer on a claim by claim, element by

20  element basis.  We think that was improper under the

21  law.  We think it was improper under the Court's

22  scheduling order.  Were think it's contrary to both

23  the spirit and letter of your ruling on the second

24  supplemental statement.

25          And we think on that basis to have Mr. Staats

1  or Dr. Staats testify about this J-CON system in

2  detail leaving the impression with the jury that it's

3  now going to be all tied together, all these elements,

4  by Dr. Shamos when he should be limited to this single

5  paragraph that he has listed in his expert report

6  would be improper.

7          THE COURT:  All right.

8          MR. ROBERTSON:  To anticipate what I think my

9  opposing counsel is going to say --

10          THE COURT:  Let them say it.

11          MR. ROBERTSON:  All right.  Let me address it

12  when --

13          THE COURT:  They may fall into the bear trap

14  that you laid.

15          MR. ROBERTSON:  All right.  Thank you, Your

16  Honor.  I would just say, Your Honor, there are some

17  slides that we have issues with with respect to this

18  that we think trespass onto the Court's claim

19  constructions.

20          THE COURT:  We'll deal with those later.

21          MR. ROBERTSON:  Yes.  Thank you, Your Honor.

22          THE COURT:  All right.  Ms. Stoll-DeBell,

23  what I want you to do is show me where in Dr. Shamos'

24  opinion he does the analysis required by *KSR*, *Kahn* and

25  *Innogenetics*.  Where in the report, not the slides,

2290

1    but where in the report, where does he do it?

2            MS. STOLL-DeBELL:  He does his claim by claim

3    analysis for each of those elements in his Exhibit 3

4    claim chart.  And, Your Honor, you'll recall that --

5            THE COURT:  Is that this big thing?

6            MS. STOLL-DeBELL:  Yes, but it will say J-CON

7    plus P.O. Writer on it.  They were separated out.

8            THE COURT:  Let me get this straight now.  It

9    is not done anywhere textually in this report, is that

10   correct or not correct, other than in 236?

11           MS. STOLL-DeBELL:  That's not correct.

12           THE COURT:  Where is it?  Start with that.  I

13   thought that I dealt with this once before, but I

14   think I may have erred.

15           MS. STOLL-DeBELL:  You did.  We spent over an

16   hour.

17           THE COURT:  I need to know in the report

18   where is it that he does what these cases require him

19   to do?  Because I agree that it is -- if he can't do

20   it, I don't think that Dr. Staats can come in and

21   testify because I think that, while it is conceptually

22   relevant, is confusing to the jury and, further, it

23   interjects all kinds of prejudice if there's nobody to

24   link it together because of the reasons explained in

25   Innogenetics.

2291

1          Give me the pages of his report where he says

2     that.

3          MS. STOLL-DeBELL:  Okay.  Your Honor --

4          THE COURT:  Is that in the --

5          MS. STOLL-DeBELL:  So his report is set up,

6     it's set up in this way.  He first goes through and

7     describes all of the prior art references he's going

8     to rely on including P.O. Writer.

9          THE COURT:  I'm not going to hear this.

10    We're going to do it paragraph by paragraph so I can

11    see what you're talking about.  So I need to get the

12    report in front of me, if you'll excuse me.

13         He gave me experts.  Okay.  I've got the

14    whole report here now.  Thank you.

15         MS. STOLL-DeBELL:  Do you also have Exhibit 3

16    for P.O. Writer and J-CON?

17         THE COURT:  Is that this big thing that they

18    presented?

19         MS. STOLL-DeBELL:  It is, but I have, I

20    think, a more user friendly version of it that we

21    handed up yesterday.

22         THE COURT:  Can I have it?

23         MS. STOLL-DeBELL:  Yes, sir.

24         THE COURT:  Do I have one?  You say you

25    handed it up yesterday.  What did you hand up?

 1          MS. STOLL-DeBELL:  Mr. McDonald did.

 2          THE COURT:  What did you hand up?

 3          MS. STOLL-DeBELL:  This.

 4          THE COURT:  Okay.  Take yours back then.

 5     This is all the slides.  Come here and look and tell

 6     me where.  This is what Mr. McDonald gave me

 7     yesterday.  You tell me what you're talking about and

 8     find it for me, then I'll have what you have.

 9          That's Exhibit H to what?

10          MS. STOLL-DeBELL:  It was to their motion to

11     enforce prior court orders that we dealt with on

12     December 30.

13          THE COURT:  All right.  Now, show me in the

14     text of Shamos' invalidity report where it is that he

15     talks about the combination of J-CON and P.O. Writer

16     and obviousness.

17          MS. STOLL-DeBELL:  We looked at the one

18     paragraph where he talked about the combination, and

19     what I think Mr. Robertson is saying is you also have

20     to do an element by element analysis of where those

21     references teach each claim.

22          The element by element analysis occurs in a

23     number of places in Dr. Shamos' report.  For P.O.

24     Writer, it starts at paragraph 180, which is on page

25     54, and goes to paragraph --

2293

1          THE COURT:  I have to find it.  180 has been

2     stricken.

3          MS. STOLL-DeBELL:  Okay.  181.  This is his

4     element by element analysis or talking about what it

5     is that P.O. Writer discloses.  He has a similar

6     section for J-CON.

7          THE COURT:  181.  Is that it?

8          MS. STOLL-DeBELL:  Through 185.  I'm sorry.

9     185 includes the reexam, Your Honor.  So 184.

10          THE COURT:  Well, now, the way I read this, I

11     don't see that he's discussing any claim by claim,

12     element by element combination of P.O. Writer and

13     J-CON.  He's just discussing generally what P.O.

14     Writer Plus permitted.

15          MS. STOLL-DeBELL:  That's true, and he has a

16     similar discussion for J-CON.

17          THE COURT:  Where is that?

18          MS. STOLL-DeBELL:  J-CON starts at -- the

19     section starts at paragraph 195, but I think you want

20     to look at paragraph 196 on page 59.

21          THE COURT:  196, the J-CON?

22          MS. STOLL-DeBELL:  Yes.  And that goes

23     through the next couple of pages.

24          THE COURT:  Paragraph 196 through where?  200

25     or 201?

2294

1        MS. STOLL-DeBELL:  201.

2        THE COURT:  All right.  Now, the way I read

3   this -- I've read this before.  The way I read this,

4   this describes the J-CON system alone and nothing in

5   combination with P.O. Writer.  Is that right or wrong?

6        MS. STOLL-DeBELL:  That's right.  That

7   section is J-CON.

8        THE COURT:  It doesn't discuss any

9   combination and how it would be obvious, right?

10       MS. STOLL-DeBELL:  Right.  That happened at

11  the paragraph you looked at earlier.

12       THE COURT:  236?

13       MS. STOLL-DeBELL:  Yes.

14       THE COURT:  Okay.  So that happened at 236?

15       MS. STOLL-DeBELL:  Yes.

16       THE COURT:  Okay.

17       MS. STOLL-DeBELL:  Then he also did a claim

18  by claim, element by element analysis where he cited

19  to each of the trial exhibits to show where each of

20  those shows each claim element.

21       THE COURT:  Wait a minute.  And that's, you

22  say, Exhibit H?

23       MS. STOLL-DeBELL:  Yes.  Which was -- and it

24  was Exhibit H, Your Honor.

25       THE COURT:  Wait a minute.  This says

2295

1    invalidity analysis of Johnson, et al. what am I

2    talking about?  What part of Exhibit H do you want me

3    on?  I've got it.

4              MS. STOLL-DeBELL:  I think maybe I gave you

5    the wrong one, Your Honor.

6              THE COURT:  My guess is that there are other

7    patents on other pages of this.  I don't know.  Let me

8    look.  What I have is Johnson, and I don't see

9    anything for --

10             MS. STOLL-DeBELL:  Look at page 2, Your

11   Honor.

12             THE COURT:  Yes.

13             MS. STOLL-DeBELL:  Your Honor, I think it

14   might be easier if we're looking at the same document.

15             THE COURT:  I am.  I thought.

16             MS. STOLL-DeBELL:  I handed you up an

17   identical copy of what I have.

18             THE COURT:  Have you given that to,

19   Mr. Robertson?

20             MS. STOLL-DeBELL:  It's the same thing only

21   it has trial exhibits copied on there so we know which

22   trial exhibits.

23             THE COURT:  All right.  Give Mr. Robertson a

24   copy so he knows what you're talking about.

25             MS. STOLL-DeBELL:  Okay.  Some do you have

                                                          2296

 1  this, Your Honor?

 2          THE COURT:  I have what you have handed me.

 3  It's got your handwriting or somebody, P.O.

 4  Writer/J-CON on the top of it?

 5          MS. STOLL-DeBELL:  Yes, that's correct.  So

 6  this is the portion of Exhibit 3 that related to his

 7  disclosure on P.O. Writer and J-CON.

 8          THE COURT:  Well, the first one says, in the

 9  first column, says invalidity of Johnson, et al.

10          MS. STOLL-DeBELL:  That's because Johnson was

11  the first named inventor on the patents-in-suit.  So

12  if you look down, it says '683, '516 and '172 patents.

13          THE COURT:  Then it has paragraph two.  What

14  does that relate to?

15          MS. STOLL-DeBELL:  This is a key to the color

16  coding within this chart.  So the actual claim by

17  claim analysis starts at the -- really at the top of

18  page 2, Your Honor.

19          So column A is the actual claims, asserted

20  claims in this case.

21          THE COURT:  Let's see.  Wait a minute.  In

22  key No. 5 he says -- no, it's 6.  A cell with light

23  yellow shading indicates a claim that's not asserted

24  to be anticipated by the reference in its column but

25  is obvious.

1          MS. STOLL-DeBELL:  So, Your Honor, at his

2    deposition he explained to ePlus, and they asked him

3    questions about how to understand this claim chart.

4    In fact, it went on for six pages at his deposition.

5    And he explained it as this:  This Exhibit 3 tells you

6    where to go for a reference to see where that claim

7    element is disclosed.

8          If it is shaded green, that means the

9    reference explicitly teaches that element.  If it is

10   shaded yellow, the reference does not explicitly teach

11   that element, but it would be obvious in light of that

12   reference alone.

13         So it's a different kind of obviousness than

14   obviousness under 103, and he explained this at

15   length.

16         THE COURT:  I don't see where he says in this

17   claim chart element by element the combination of

18   J-CON and P.O. Writer makes it obvious as opposed to

19   it's obvious for some other reason.  Can you show me

20   that so I can get started looking at it?

21         MS. STOLL-DeBELL:  He says that in his

22   report, Your Honor.

23         THE COURT:  He doesn't.

24         MS. STOLL-DeBELL:  He does.

25         THE COURT:  Let me say this.  If your theory

1   is that it's adequately disclosed by 236, then I was

2   wrong.  It is not because it's conclusory.  If I

3   thought you were telling me that, and I didn't

4   understand, I remember the argument we had on this was

5   that if you read these things carefully, these charts

6   carefully, you can find the combination.  Now you're

7   telling me you can't find the combination.

8          Unless you can tell me that you can find the

9   combination of J-CON and P.O. Writer applied on an

10  element by element basis claim by claim in this

11  exhibit that you have got, I've got trouble.  So let's

12  go.  Because the text doesn't do it.

13         Now, tell me how or where the actual report

14  does it.

15         MS. STOLL-DeBELL:  Well, I think I'm not

16  understanding what you're asking or you're not

17  understanding what I'm saying because I think it's a

18  combination of everything together.

19         THE COURT:  No.  That's what I'm saying.  I

20  am saying this:  You can't combine it all together and

21  make it read the way you want it to read the way he

22  should have written it in the beginning.

23         So, for example, I don't think you can take,

24  Here's J-CON, here's this P.O. Writer, and without an

25  explanation of why the two combine, then say that

1   paragraph 236 does the job.

2          So I'm asking you now to tell me where in the

3   exhibit you just handed me, which is Exhibit H to that

4   motion that we had and has been annotated now with

5   P.O. Writer and J-CON at the top in handwriting, where

6   does he do that in this document?  If he does, then I

7   think the problem is solved.  If he doesn't, I have

8   another issue.

9          So where does he do it?

10         MS. STOLL-DeBELL:  Well, if you look at the

11  claim charts, and let's go to page 3.

12         THE COURT:  All right.  Page 3.

13         MS. STOLL-DeBELL:  This is just an example

14  because it's the same throughout.  We're looking at

15  element 1A.  If you see row 17, Your Honor.

16         THE COURT:  Wait a minute.  17?

17         MS. STOLL-DeBELL:  Yes.

18         THE COURT:  Is what follows below the 17, is

19  that where you want me to look?

20         MS. STOLL-DeBELL:  It's above it.  So the

21  number 17 is at the bottom of that row.

22         THE COURT:  I don't know what you mean by

23  row, but there's a number 17, and above it in the far

24  left-hand column is the number 13.  Is that the

25  boundary of what you want me to look at?

2300

1          MS. STOLL-DeBELL:  Yes, sir.

2          THE COURT:  All right.  Now, asserted claim

3   is --

4          MS. STOLL-DeBELL:  Claim One of the '172.

5   And you can see that that claim element is a database

6   containing data relating to items associated with at

7   least two vendors.  That the actual claim element.

8          THE COURT:  That's the claim.  All right.

9          MS. STOLL-DeBELL:  Column B is just short

10  form to tell you where you're at.  So it's the first

11  element of Claim One of the '172 element 1A.  Then we

12  can go to column K.  So --

13         THE COURT:  Wait a minute.  Column J is P.O.

14  Writer per interrogatory responses and something.  I

15  don't know what.

16         MS. STOLL-DeBELL:  Well, he basically copied

17  the citations we had in our interrogatory responses.

18  You can skip over that column.

19         THE COURT:  So column J doesn't have anything

20  to do with this?

21         MS. STOLL-DeBELL:  I think it's relevant

22  disclosure, but I don't think we need to get into it

23  now.  It's not relevant to what we're doing now.

24         THE COURT:  In column K, he gives an opinion

25  re --

1          MS. STOLL-DeBELL:  P.O. Writer.  And he cites

2   to the various documents, in this case it's DX 17, to

3   show where P.O. Writer teaches this element.

4          THE COURT:  All right.

5          MS. STOLL-DeBELL:  Then skip column R and go

6   to column S.

7          THE COURT:  S is his opinion re:  J-CON.

8          MS. STOLL-DeBELL:  Yes.

9          THE COURT:  Okay.

10          MS. STOLL-DeBELL:  And in this column you can

11   see he has quotes from the J-CON manual about where

12   J-CON teaches this element.

13          THE COURT:  Yes.

14          MS. STOLL-DeBELL:  He does this for every

15   element, which I agree, is required by KSR.  You must

16   say where in each reference you're using in your

17   obviousness combination that reference teaches these

18   claim elements.

19          THE COURT:  But nowhere does he explain in

20   this chart how the combination renders the matter

21   obvious.  He does explain, according to you, and he

22   does this -- it's a funny way of saying things and

23   doing things, but it perhaps can be read to say that

24   P.O. Writer, standing alone, it helps render it

25   obvious.  But, you see, the problem is he's really --

2302

```
1    this chart is built around anticipation, right?
2              MS. STOLL-DeBELL:  No.
3              THE COURT:  Yes.
4              MS. STOLL-DeBELL:  No.
5              THE COURT:  And then he says -- this is the
6    argument you made before.  You told me to do this, and
7    I kind of understood it then.  You said you take the
8    chart, and it was anticipation, and then if you read
9    the text of 236 it says to the extent it's not
10   anticipated, it's obvious, and you say it's the same.
11   Then as to a single reference, I can understand that
12   perhaps that's one way to read this.  Are you
13   following me?
14             MS. STOLL-DeBELL:  I am, and I think that --
15             THE COURT:  That's what you just told me,
16   right?
17             MS. STOLL-DeBELL:  I told you earlier, yes.
18   There is obviousness for a single reference in this
19   chart.  There's obviousness for a combination of
20   references and there's anticipation.
21             THE COURT:  Where is the obviousness for the
22   combination of J-CON and P.O. Writer in this chart?
23             MS. STOLL-DeBELL:  This chart, all it does is
24   say where each reference teaches each claim element.
25   Then you go back to the report.
```

2303

 1              THE COURT:  Which report?  Where?

 2              MS. STOLL-DeBELL:  To his report.

 3              THE COURT:  What paragraph?

 4              MS. STOLL-DeBELL:  Well, let's look at

 5     paragraph 104.  That's where he says, My Exhibit 3 is

 6     an invalidity chart.  And it deals with anticipation

 7     and obviousness.  And he also explained this to

 8     Ms. Albert in his deposition.  You have to read them

 9     together, Your Honor.

10              THE COURT:  Do you have to read them

11     together, but nowhere do I see where the combination

12     is explained.  That's what I'm trying to get to.

13              MS. STOLL-DeBELL:  So there are two parts you

14     have to show for obviousness.

15              THE COURT:  And I don't want to have any

16     general sentence or statement.  I want it he says in

17     paragraph such and such at sentence such and such that

18     there is this combination analysis that's made for

19     these two things.  Where does he say that?

20              MS. STOLL-DeBELL:  We go back to 236.  But

21     what I'm saying, Your Honor, for obviousness you have

22     to have two things, right?  You have to have an

23     element by element analysis to show that somewhere

24     within your combination of references they teach all

25     of the elements of the claim.  That's what

1   Mr. Robertson was saying with KSR.  That's what the

2   claim chart does.

3            Then you also have to show for obviousness

4   that there is a reason to combine them together.

5   That's what paragraph 236 does.

6            THE COURT:  But the predicate is that there

7   are two elements that are combined, and he doesn't say

8   that in the chart that I see.

9            MS. STOLL-DeBELL:  No, he says that in

10   paragraph 236.  He says all of the elements for both

11   references are taught in Exhibit 3.  And I would

12   combine them for these reasons.

13            THE COURT:  Where?

14            MS. STOLL-DeBELL:  236.

15            THE COURT:  I'm trying to get there.  Okay.

16   All right.  Okay.  Excuse me.

17            It is my opinion that such claim would have

18   been obvious in view of the combination of J-CON with

19   P.O. Writer, right?

20            MS. STOLL-DeBELL:  Yes.

21            THE COURT:  Where does he say the reasons?

22   The only thing that I see that remotely resembles

23   reasons in 236 is -- that's a conclusion that he just

24   stated.  The reasons sentence is as follows:  The same

25   reasons for making the previous two combinations

1   apply.  Now, what are the previous two combinations?

2           MS. STOLL-DeBELL:  So we have to go to -- he

3   talks about RIMS plus Dworkin.  That's the first of

4   the two.  And that starts at paragraph 65.

5           THE COURT:  What's the next one?

6           MS. STOLL-DeBELL:  I'm sorry.  Page 65, Your

7   Honor.

8           The second combination is J-CON plus Dworkin,

9   and that starts at paragraph 230 on page 67.  So --

10          THE COURT:  Page what?

11          MS. STOLL-DeBELL:  Page 67, paragraph 230.

12  In both of those he explains that all of the claims he

13  believes are obvious as shown in Exhibits 3 and 4.

14          So, for example, I'm reading paragraph 230 of

15  page 67.  And then he goes on to explain his reasons.

16  EPlus contends that J-CON is a single source system.

17  P.O. Writer is a multiple source system.  Or he says

18  that with J-CON and Dworkin.

19          THE COURT:  But he's not going to testify

20  about it.

21          MS. STOLL-DeBELL:  He's not.

22          THE COURT:  About RIMS plus Dworkin.

23          MS. STOLL-DeBELL:  He's not actually.

24          THE COURT:  Where are the imported reasons

25  then?  Help me with -- let's take what begins on page

1  65 with the combination of RIMS plus Dworkin, 940.

2  Where is the reason?

3          MS. STOLL-DeBELL:  Well, so the reasons start

4  at paragraph 225 on page 66.  But, Your Honor, I'll

5  tell you that Dr. Shamos, as far as his reasons for

6  combining J-CON and P.O. Writer, he looks at what he

7  says in paragraph 236 for that.  And then he will rely

8  on what he says in this claim chart for the element by

9  element analysis.

10          So I don't intend to have him get up and talk

11  about RIMS plus Dworkin or --

12          THE COURT:  But he can't even do -- so you're

13  not -- you're taking that sentencing out of the

14  equation then?

15          MS. STOLL-DeBELL:  Yes, because I don't think

16  we need it.  I think he's got a reason why he would

17  combine J-CON and P.O. Writer in paragraph 236 and

18  that's what he'll testify to.

19          THE COURT:  I'm not talking about that.

20  You're taking out the sentences, out of 36, that the

21  same reasons for making the previous two combinations

22  applies to combining J-CON system as described in the

23  J-CON system with P.O. Writer Plus V 10 as described

24  in the P.O. Writer Plus manual.  You're taking all of

25  that out.

```
 1            MS. STOLL-DeBELL:  I'm taking all of that out

 2   except to the extent that they say his opinions on

 3   element by element are shown in Exhibits 3 and 4.

 4            THE COURT:  Where is Exhibit 3 and 4?

 5            MS. STOLL-DeBELL:  Exhibit 3 is this claim

 6   chart we just looked at.  That's Exhibit 3.

 7            THE COURT:  Okay.  What's 4?

 8            MS. STOLL-DeBELL:  Four is just a shorter --

 9   a shorter version of this.

10            THE COURT:  Of 3?

11            MS. STOLL-DeBELL:  Yes.  It doesn't get into

12   the actual citations.

13            THE COURT:  Okay.

14            MS. STOLL-DeBELL:  I don't think we need to

15   look at Exhibit 4.

16            THE COURT:  Then that takes us back to

17   whether this claim chart that he did shows a

18   combination.

19            MS. STOLL-DeBELL:  I agree.

20            THE COURT:  Where does he show a combination?

21            MS. STOLL-DeBELL:  It shows where each

22   reference teaches each element.  The reason to combine

23   those references are in paragraph 236 of his report.

24            THE COURT:  And the reason is, "It is my

25   opinion that such claim would have been obvious in
```

1    view of the combination of J-CON with P.O. Writer," is

2    that right?

3         MS. STOLL-DeBELL:  Plus it goes on to say,

4    The P.O. Writer system provided a multiple vendor

5    capability demanded by the industry at and before the

6    time of the invention.  J-CON included features that

7    one of ordinary skill in the art would be motivated to

8    use with the P.O. Writer system including additional

9    details about performing cross referencing of data

10   relating to an item or requisition to determine an

11   alternative source for the same item and/or an

12   acceptable substitute for the item initially selected.

13        THE COURT:  Where does he talk about the

14   Exhibits 3 and 4 in this paragraph?

15        MS. STOLL-DeBELL:  I think he mistakenly did

16   not refer to Exhibit 3 in this paragraph, Your Honor,

17   so for that I would refer back up to the two earlier

18   combinations, paragraph 224 and 230, where he says his

19   obviousness opinions are shown in Exhibit 3, which is

20   the one we're talking about here.

21        THE COURT:  What paragraph?

22        MS. STOLL-DeBELL:  Paragraph 224.

23        The second to last line of paragraph 224 on

24   page 65, he says the combination teaches all of the

25   elements of the asserted claims.  And then if you go

1   on to page 66, first line, As shown in Exhibits 3 and

2   4.

3            THE COURT:  Exhibits 3 -- I mean, 4 is

4   nothing but something less than 3?

5            MS. STOLL-DeBELL:  Yes.

6            THE COURT:  So I don't need to pay attention

7   to it.

8            MS. STOLL-DeBELL:  No.  Then he does the same

9   thing again at paragraph 230.  He says the combination

10  teaches all of the elements.  I'm at page 67,

11  paragraph 230, THE fourth line down.  The combination

12  teaches all the elements of the asserted claims as

13  shown in Exhibit 3.

14           THE COURT:  Okay.

15           MS. STOLL-DeBELL:  I mean he should have said

16  that again for J-CON and P.O. Writer, but he did refer

17  back up.  So he was maybe being shorter than what he

18  should have been.  But the bottom line is the

19  combination is taught in Exhibit 3.

20           THE COURT:  All right.

21           MS. STOLL-DeBELL:  Which is the claim chart

22  in front of you.  Also, Your Honor, at paragraph 104

23  of his report, which is on page 27 -- actually, I'm

24  sorry.  It's paragraph 102 at page 26.

25           THE COURT:  104 says to the extent that any

2310

1   reference.

2          MS. STOLL-DeBELL:  I meant to direct you to

3   paragraph 102, page 26.  I'm sorry.

4          THE COURT:  102.

5          MS. STOLL-DeBELL:  This is talking about what

6   Exhibit 3 is, which is the claim chart that you looked

7   at.

8          Exhibit 3 is an integral part of his report

9   and contains a claim chart demonstrating the

10  invalidity of each asserted claim.

11         Exhibit 3 is a spreadsheet in which the rows

12  are claim elements and steps and columns are prior art

13  references.  A cell corresponding to an element and a

14  reference contains text if the element is disclosed in

15  the reference or is obvious in light of the reference.

16  The color coding is explained.

17         THE COURT:  All right.  Anything else?

18         MS. STOLL-DeBELL:  Yes.  In his deposition,

19  he explained this in detail.  They asked him.  "Are

20  you asserting the combination of J-CON and P.O.

21  Writer?"

22         He answered:  Yes.

23         Ms. Albert went through -- she printed up her

24  version of that Exhibit 3 and he went through and he

25  explained exactly what it meant, and that it did, in

2311

1    fact, show both anticipation and obviousness.   And

2    walked her through exactly how it was and how the

3    combinations worked and how they tied back to his

4    report.

5              THE COURT:   What does that do?   Because he's

6    to do this in perspective of his report, not in his

7    deposition.   Do you understand?

8              I think maybe you-all have lost sight of

9    something.   In 1993, the federal rules were amended.

10   They were amended to prohibit just this sort of

11   gamesmanship that's going on here.   They were amended

12   to say that an expert must put in his report all of

13   the things that he's going to rely on, the statement

14   of reasons, and it must be complete.

15             The very idea, if you look at the history of

16   it, was to allow me as the receiver of the report to

17   decide, Well, I'm happy to just rely on this

18   deposition if I want to because it's got everything in

19   it.   And the other reason was that the expert cannot

20   go beyond what was in that report.   And if he steps

21   one foot outside that boundary, he cannot testify to

22   that issue.   And you-all seem to have the view that

23   these rule changes didn't mean anything.

24             And this expert is -- this is the amazing

25   thing to he me about the way this guy has done his

2312

1   report is that he's a lawyer and practiced patent law.

2   My goodness.  How could he not know all this?

3            MS. STOLL-DeBELL:  Your Honor, I don't think

4   he's stepping outside of his report.  I think every

5   single slide, especially after I've gone through with

6   ePlus for hours yesterday, is a verbatim quote from

7   his report.

8            THE COURT:  I want to hear from ePlus now.  I

9   want to get to the basis of this.

10            MS. STOLL-DeBELL:  All he did in his

11   deposition is explain what that chart shoes.

12            THE COURT:  All right.  Let's take Exhibit 3,

13   which you've got a copied of now.  And by the way, I

14   want this marked as an exhibit for the decisional

15   process.  So make sure I do that.

16            MR. ROBERTSON:  For purposes of this, Your

17   Honor, may I actually hand you the color-coded one?

18            THE COURT:  Is that the one you just handed

19   me last week with the report?

20            MR. ROBERTSON:  Yes.  Then you have it.

21            THE COURT:  A long spreadsheet?

22            MR. ROBERTSON:  Yes, sir.

23            THE COURT:  Exhibit B?

24            MR. ROBERTSON:  Yes.

25            MS. STOLL-DeBELL:  Can we have a copy.

2313

1              THE COURT:  You have a copy of it.  I don't

2      know whether you have it there.

3              MS. STOLL-DeBELL:  Not his color-coded.

4              MR. ROBERTSON:  So it was just represented to

5      you that --

6              THE COURT:  Let's take the paragraph that

7      she's talking about.

8              MR. ROBERTSON:  Which paragraph would that

9      be, Your Honor?

10             THE COURT:  It's on page 3.  She said that I

11     can add on page 3, Exhibit 3, Shamos opinion re P.O.

12     Writer, plus Shamos' opinion -- well, it's not the

13     same.  This isn't the same thing that she gave me.

14             MR. ROBERTSON:  That's the chart that was

15     given to us with Dr. Shamos' report, and it was

16     color-coded a Ms. Stoll-DeBell just indicated.

17             THE COURT:  Do you have this thing she handed

18     out to me, P.O. Writer/J-CON?  Did you give him a

19     copy, Ms. Stoll-DeBell?

20             MS. STOLL-DeBELL:  I did, Your Honor.  The

21     only difference is the little boxes I added in with

22     the trial exhibit numbers because when it was created,

23     we didn't have trial exhibits.  So that's the only

24     thing I did to this.

25             THE COURT:  But the point is does he have it

2314

1    in front of him?

2            MR. ROBERTSON:  I think I may.  I'm trying to

3    get oriented.  Is this it?

4            MS. STOLL-DeBELL:  Yes.

5            THE COURT:  All right.  If you turn to page 3

6    of that report, that exhibit, it deals with the '172

7    patent and the one.  And it says, "Shamos opinion P.O.

8    Writer" and "Shamos opinion re J-CON."

9            MR. ROBERTSON:  Yes, Your Honor.

10           THE COURT:  Okay.  Now, she acknowledges that

11   that chart does not combine P.O. Writer and J-CON.

12           MR. ROBERTSON:  Yes.

13           THE COURT:  It doesn't do it.  But she says

14   it is done by 236.  How is it done by 236?  It is

15   done, she says, in two ways.  The first sentence says

16   to the extent it's not deemed to anticipate it is my

17   opinion that such claim would have been obvious in

18   view of the combination of J-CON and P.O. Writer.

19           And then the reasons he gives are the same

20   reason for making the previous two combinations apply

21   to combining the J-CON system as described in the

22   J-CON manual with P.O. Writer Plus V 10 as described

23   in the P.O. Writer Plus manual.

24           And that, she says, really refers back to

25   Exhibits 3 and 4 and the paragraphs that deal with the

1    combination of RIMS and Dworkin and J-CON and Dworkin.

2    And they show a combination.  And he incorporated the

3    same reasoning by reference.  Therefore, the

4    information has been presented as to the combination.

5            Now, why isn't that show?  That's your

6    argument, isn't it, Ms. Stoll-DeBell?

7            MS. STOLL-DeBELL:  Yes.

8            THE COURT:  Okay.

9            MR. ROBERTSON:  For several reasons, Your

10   Honor.  First, with respect to the combinations of

11   RIMS and Dworkin, I don't even know how we could apply

12   the combinations of J-CON and P.O. Writer.  They are

13   two separate complete difference references to try and

14   say that something shows something and something

15   different shows something else.  I can't even follow.

16   But it doesn't do it on a claim by claim basis.  It's

17   very conclusory.

18           In fact, if you look back at the combinations

19   he has for RIMS and Dworkin, and for I believe it was

20   J-CON and Dworkin, it's almost equally as conclusory

21   as the representation with the combination of J-CON

22   and P.O. Writer.

23           He doesn't go through all the separate claims

24   that are at issue.  He doesn't go through all the

25   separate elements.  And what they want to do is they

1   want to go to this Exhibit 3, which was an

2   anticipation chart because it was color-coded.  And

3   you'll see green is indicated as being anticipation.

4   And almost every single one -- in fact, for P.O.

5   Writer and J-CON every single representation is in

6   green, that it's anticipated.

7          So what they want to do is say we can just

8   put those together.  But how are we, ePlus, to know

9   which element from J-CON you're combining with which

10  element from P.O. Writer?

11         In fact, I would suggest, Your Honor, that

12  the number of permutations that could be combined for

13  that are almost infinite because I have no idea what

14  they are relying on and what they're not.

15         But what's most revealing, Your Honor, is

16  that they were able to do it over the weekend when

17  they made 22 slides that they now want to do on a

18  claim by claim and element basis for J-CON and P.O.

19  Writer.

20         If they could do it this past weekend, why

21  couldn't they do it months ago when Dr. Shamos had to

22  do his report, months ago when the Court ordered the

23  second supplemental, and months ago when the Court

24  said the scheduling order required them to do the

25  analysis on a claim by claim basis?

1              So then to come up with it now, I would

2    suggest to Your Honor, is just complete surprise and a

3    litigation by ambush that we now have to deal with and

4    try and figure out for the first time how I'm supposed

5    to cross-examine on these things.

6              THE COURT:  Are you basically moving under

7    Rule 37 for preclusion of the evidence for failure to

8    comply with the requirement that they provide this

9    ahead of time at trial?  I mean, ahead of time in

10   response to the second supplemental?

11             MR. ROBERTSON:  These new --

12             THE COURT:  Is that your theory?

13             MR. ROBERTSON:  Yes, sir, that's part of our

14   theory.

15             THE COURT:  What's the other part of it?

16             MR. ROBERTSON:  The other part of the theory

17   is they had an obligation under the final pretrial

18   order to focus in on what the facts were going to be,

19   present it to the Court --

20             THE COURT:  What part of the final pretrial

21   order did they disobey?

22             MR. ROBERTSON:  I think they had to identify

23   what the triable issues were, and they had to identify

24   what they were going to rely on for those triable

25   issues, and they incorporated, I believe, the expert

1  report.

2        We should have been entitled to rely on a

3  representation that this was going to be anticipation,

4  and if you were going to do obviousness --

5        THE COURT:  This meaning what was the

6  original iteration?  The document from which Exhibit 3

7  was taken.

8        MR. ROBERTSON:  Yes, sir.

9        THE COURT:  Or the original Exhibit 3 to the

10 report of Dr. Shamos.

11       MR. ROBERTSON:  Yes.

12       And, specifically, we're seeking exclusion of

13 those -- I'm sorry.  It also specifically, Your Honor,

14 since we're introducing these slides or they are

15 attempting to introduce these slides, this is rife

16 with mischief for presenting evidence that is, I

17 think, outside of the Court's rulings and would just

18 create undo confusion.

19       THE COURT:  Rife with mischief really is a

20 way of saying that there is a potential for other

21 prejudice, but you don't really know what it is.  So I

22 can't rule on that basis.  You don't make decisions on

23 sanctions for exclusion on that kind of apprehension.

24 That just wouldn't be right.  So let's don't do that.

25 Don't invite the error.

2319

1          MR. ROBERTSON:  Understood.  Let me just

2   suggest, I suppose the paragraphs that are in there in

3   their conclusory fashion were disclosed to us and

4   could perhaps be the subject of cross-examination of

5   Dr. Shamos on specifically the only thing he said

6   without reference to these exhibits.

7          I think I understood that Exhibit 4 they are

8   not referencing because if you look at Exhibit 4, all

9   the opinions were anticipation opinions and not

10  obviousness opinions.

11         So if this is excluded and only --

12         THE COURT:  This meaning --

13         MR. ROBERTSON:  This meaning Exhibit 3 where

14  they purport to have this detailed analysis for

15  invalidity.

16         THE COURT:  They're not offering Exhibit 3.

17  That was Exhibit 3 to the report.

18         MR. ROBERTSON:  But they are offering now the

19  analysis that was an anticipation analysis.

20         THE COURT:  What they are saying is that what

21  he's going to testify to is shown there in the claim

22  by claim basis which has been explained as an

23  obviousness argument by reading paragraph 236 in

24  conjunction with that and by considering the

25  incorporated parts of the RIMS Dworkin combo and the

1   J-CON Dworkin combo that's incorporated in 236.

2   That's what they are offering.

3           MR. ROBERTSON:  But there was never any

4   disclosure as to which elements of RIMS or which

5   elements of Dworkin or which elements of P.O. Writer

6   or which elements of J-CON were going to be combined.

7           THE COURT:  You're just basically revisiting

8   the ruling that I made week, aren't you?  Not last

9   week.  It seems like a year and a half ago.

10          MS. STOLL-DeBELL:  December 30.

11          THE COURT:  It was the end of the year.  It

12  was your New Year's present.  Isn't that what we're

13  doing now?  And you're doing it in perspective of the

14  fact that I have a better understanding of all of what

15  it's about now that it's been narrowed down in the

16  fashion it's been narrowed down?  Is that really where

17  we are?

18          MR. ROBERTSON:  Sir --

19          THE COURT:  Yes or no?

20          MR. ROBERTSON:  Yes, in this sense, though.

21  It has been perfectly focused now by the fact they

22  came forward with these slides that were not revealed

23  to us before would show how inadequate their

24  disclosures were before and what they really were

25  trying to do here.  That was my suspicion back then.

2321

1    I think the Court had some apprehension.  I don't

2    think the issue was perfectly focused because it

3    hadn't occurred, but now it's occurring right before

4    us.

5         THE COURT:  It's occurring meaning?

6         MR. ROBERTSON:  That they are offering now

7    these new opinions in combinations that were not

8    disclosed in the report.  So I think Rule 37 most

9    certainly is an appropriate vehicle for dealing with

10   this issue at this time.

11        THE COURT:  Any other reasons that have

12   besides what you have just said?

13        MR. ROBERTSON:  Well, other than the fact

14   that I would think even the paragraphs that they would

15   like to rely on, for example 236, don't satisfy the

16   standard that the Supreme Court requires in the *KSR*

17   case or that the Federal Circuit has now reemphasized

18   in the *Innogenetics* case that I gave you.

19        And I might just say, Your Honor, to the

20   extent now they are relying on these --

21        THE COURT:  What page of *Innogenetics* were

22   you relying on?

23        MR. ROBERTSON:  It's 1373, Your Honor.

24        THE COURT:  It's near the end of the opinion?

25        MR. ROBERTSON:  I believe so.  I have just

2322

1   have an excerpt in front of me.

2           THE COURT:  Does it have -- I think they are

3   entitled to know, and I'd like to know, too, does it

4   have a headnotes so we can all make an easy jump

5   there?

6           MR. ROBERTSON:  I just have an excerpt from

7   it.

8           THE COURT:  Ms. Haggard has given me pages 15

9   and 16 of the report.  Maybe that's what you're

10  talking about.  Read me what yours starts with.

11          MR. ROBERTSON:  The District Court did not

12  err in finding the defendant's expert report on the

13  alleged obviousness of the asserted claims of the

14  patent at issue was deficient for purposes of

15  disclosure under Rule 26.

16          THE COURT:  All right.  Hold on.  Well, I

17  think I see.  Invalidity obviousness starts on page 12

18  of the printout.  And that would be on page --

19          MS. STOLL-DeBELL:  Your Honor --

20          THE COURT:  1372.  And now I need -- what

21  you're reading from is Dr. Patterson's testimony

22  headnote 15?  And then it says, "The District Court

23  did not err in finding that Dr. Patterson's report on

24  the alleged obviousness of the '704 patent was

25  deficient for purposes of disclosure under Rule 26."

 1          MS. STOLL-DeBELL:  Your Honor, I'm not sure

 2    what you're looking at.  We don't have a copy.

 3          MR. ROBERTSON:  Your Honor, I don't even have

 4    a copy of the case.  I have a copy of an excerpt that

 5    I had from a memo that was prepared, which I was

 6    quoting from, but it's at that --

 7          THE COURT:  That's where I was starting.

 8          Now, excuse me, Ms. Stoll-DeBell.  What would

 9    you like to say because you-all were talking over

10    behind Mr. Robertson and while he and I were talking,

11    and I didn't hear.

12          MS. STOLL-DeBELL:  I apologize for that.

13          I don't have a copy of what you're looking

14    at.

15          THE COURT:  Why do you need a copy of any law

16    when it's cited?

17          MS. STOLL-DeBELL:  I would like to be able to

18    respond to it.

19          THE COURT:  You do?

20          MS. STOLL-DeBELL:  I do, yes.

21          THE COURT:  Does anybody have a copy for her?

22          MR. ROBERTSON:  It is the *Innogenetics* case.

23          THE COURT:  And the text, just so you won't

24    have to go through the agony I went through -- are you

25    going to print her a copy?

2324

1          MS. HAGGARD:  Yes.

2          THE COURT:  Is there a way to print only page

3     12?  I know that you can do that, but that's what he's

4     talking about is page 12 through 14 because that then

5     picks up with the anticipation issue.

6          MS. STOLL-DeBELL:  Yeah.  Maybe we should

7     print another page.

8          MS. HAGGARD:  I'll put that on top.

9          MS. STOLL-DeBELL:  Thank you.

10          THE COURT:  Ms. Haggard's hourly fee is very

11     significant, and the Lexus time is very valuable.

12          Okay.  Let's go.  Where does the quote that

13     you were relying on end, Mr. Robertson?

14          MR. ROBERTSON:  I'm sorry, Your Honor.  I

15     didn't hear you.

16          THE COURT:  Where was the quote in

17     *Innogenetics* that you were relying on, where does it

18     end?  What's the concluding paragraph or sentence?

19          MR. ROBERTSON:  I think the important parts

20     of it, for example, are after where the Federal

21     Circuit finds the District Court did not err in

22     finding that the report was deficient for purposes of

23     disclosure goes on to say for each of the claims he

24     analyzes for obviousness, it's referring to the expert

25     there, merely lists the number of prior art references

 1    and then concludes with the stock phrase to one

 2    skilled in the art, it would have been obvious to have

 3    performed the -- and this was the genotyping methods

 4    of the claims at issue.

 5            There must be some articulated reason with

 6    some rational underpinning to support the legal

 7    conclusions of obviousness.

 8            Nowhere does, again this is the defendant's

 9    expert, state how or why a person of ordinary skill in

10    the art could have found the claims of the

11    patents-in-suit obvious in light of some combination

12    of those particular references.  It goes on to say, As

13    the District Court found, it is not credible to think

14    that a lay jury could examine the prior art that

15    defendant cited as prior art or any of the other

16    references and determine on its own whether there were

17    differences among them and the patents at issue.

18            Such vague testimony would not have been

19    helpful to a lay jury in averting the pitfalls of

20    hindsight that belie a determination of obviousness.

21            THE COURT:  You took some liberties with the

22    quotation, but not in any material way.  You left out

23    the specifics and put in like the patent at issue is

24    the '704 patent, and a person ordinarily skilled in

25    the art was the text instead of person of ordinary

2326

1   skill in the art, but it doesn't change the meaning.

2   　　　　MR. ROBERTSON:  I apologize, Your Honor.  I

3   just have an excerpt.

4   　　　　THE COURT:  I understand, and I'm not

5   criticizing you.  I'm trying to save Ms. Stoll-DeBell

6   some time so she can get on with life.

7   　　　　What's that fellow from BP who said he just

8   wants his life back?  I now for the first time can

9   appreciate how he felt.

10   　　　　MR. ROBERTSON:  I would again rely on the

11   Supreme Court's most recent pronouncement which

12   indicates --

13   　　　　THE COURT:  Which is *KSR*?

14   　　　　MR. ROBERTSON:  Yes, sir.  And this is at

15   page 418 of the decision.  I think it's at page 1741

16   of the Supreme Court Reporter.

17   　　　　It's necessary for a court, and I'm

18   paraphrasing here, to look at the interrelated

19   teachings, demand of the design community, the

20   background of a person having ordinary skill in the

21   art in order to determine whether there's an apparent

22   reason to combine the known elements in the fashion

23   claimed by the patent at issue.  To facilitate this

24   review, analysis should be made explicit.

25   　　　　And I would suggest, Your Honor, that the

1    Court required that explicit analysis both in its

2    initial scheduling order when it required an element

3    by element, claim by claim analysis, and it required

4    it again in the second supplemental statement.  And it

5    clearly, I think, the evidence that this could have

6    been done is the fact that over the weekend we now

7    have these element by element, claim by claim --

8              THE COURT:  Can I see what you're talking

9    about, the 22 slides, so that I can compare them to

10   the charts that I have here?  That's the argument

11   you're making and inveighing me to do.  So I think I

12   need to see what you're looking at.

13             You said 22 slides.  I want the 22 that

14   you're talking about.  I don't want the list.  I want

15   the slides.  And I want to know -- that's more than

16   22.

17             MR. ROBERTSON:  The red flags are the 22,

18   Your Honor.

19             THE COURT:  Well, here, I've got this.  This

20   is what I've got.  Is this what you handed up

21   yesterday?  You tell me what pages they are in here.

22   I've got this thing.

23             MS. STOLL-DeBELL:  Do you have the slides

24   from yesterday?

25             THE COURT:  I have what he gave me.  It goes

2328

1    through 165.  That's what he just handed up to me.

2          MS. STOLL-DeBELL:  Because we deleted a lot,

3    Your Honor.  You'll see big red X's.  Those are the

4    ones we deleted.  We put red X's through so the

5    numbers wouldn't change.

6          THE COURT:  All right.  Would you like to

7    tell me where to look for the first one?

8          MR. ROBERTSON:  Yes, Your Honor.  For the

9    first time we're seeing here representation to Claim

10   One of the '516.

11         THE COURT:  Give me the page number in the

12   lower right-hand corner.

13         MR. ROBERTSON:  I'm sorry, sir.  99.

14         THE COURT:  Okay.

15         MR. ROBERTSON:  Do you see what he's doing?

16         THE COURT:  Wait a minute.  On Exhibit 3, Ms.

17   Stoll-DeBell, he says, "Refer to DX 141, P.O. Writer,

18   Exhibit 3, cell 34."  Is that this Exhibit 3 that I've

19   got here?

20         MS. STOLL-DeBELL:  Yes, Your Honor.

21         THE COURT:  Where is cell 34?  Is that that

22   numbered column the left?

23         MS. STOLL-DeBELL:  Yes.

24         THE COURT:  Hold on.  That is 34.  Okay.

25         MS. STOLL-DeBELL:  So K 34 is on --

2329

1           THE COURT:  Page 6?

2           MS. STOLL-DeBELL:  Yes.

3           THE COURT:  I need to look at Shamos' opinion

4     re P.O. Writer in column K, Shamos opinion re J-CON in

5     column S.

6           MS. STOLL-DeBELL:  Just to make the record

7     clear, Your Honor, that red box, we're not going to

8     show the jury.  That's directions to Mr. McDonald to

9     actually get into that DX141 and show that page.

10          THE COURT:  That's fine, but it helps me to

11    understand it.

12          All right.  Using that as an example, what's

13    wrong?

14          MR. ROBERTSON:  Your Honor, I've just been

15    handed this for the first time.  I haven't even been

16    able to open the page to it.

17          THE COURT:  You think you got it after I did?

18          MS. STOLL-DeBELL:  No, I think that we gave

19    them yesterday morning slides that had cites to

20    exactly the cells in Exhibit 3 for each specific

21    paragraph on each slide.

22          THE COURT:  Do you have now this abridged

23    version that she handed me?  It starts off with '516,

24    Claim One, page 99.  And he's basically saying, Take a

25    look at Exhibit 3, and under P.O. Writer, the text of

2330

1    this slide is the same as the text of the first column

2    under K.   P.O. Writer is an electronic system for use

3    by a prospective buyer to locate and find items,

4    sources, suppliers or vendors.

5            Then under J-CON, column S, it says, Part

6    finder.  I have to find part finder.  Oh, here it is.

7    Part finder is an electronic system for use by a

8    prospective buyer to locate and find items from

9    sources, suppliers or vendors based on -- that's what

10   page 99 says.  And there's no text.

11           MS. STOLL-DeBELL:  Your Honor, that J-CON

12   comes from cell S 34 on the same page you're looking

13   at.

14           THE COURT:  I don't see it.  It doesn't say

15   that.

16           MS. STOLL-DeBELL:  It's the second paragraph.

17   So you're looking at S 34, and the second paragraph

18   says, Retail.  Locating items is disclosed at L012360.

19   Then it has that exact quote in it, and it cites to

20   that same Bates number.

21           THE COURT:  All right.

22           MS. STOLL-DeBELL:  It's actually an exact

23   quote out of Exhibit 3.  That's all this slide is.

24           THE COURT:  I understand.  Actually, it's not

25   an exact quote.  It begins with the part finder part

1   under retail, not with locating.

2            MS. STOLL-DeBELL:   That's true.

3            THE COURT:   Okay.   Now I've got it.

4        So you had this a long time ago.   This

5   information.   The same information that is on 99 you

6   had a long time ago, she says.   And if you look at

7   claim -- if you look at K, column K and column S, you

8   did have it a long time ago whenever you got his

9   report that had Exhibit 3 in it, didn't you?

10           MR. ROBERTSON:   Your Honor, I'm trying -- I

11   apologize.   I'm trying to find where we are on P.O.

12   Writer.   This is column 34.   There was no --

13           THE COURT:   You should be on page 6.

14           MR. ROBERTSON:   I am on page 6.

15           THE COURT:   If you look under column K, the

16   reference to P.O. Writer at the bottom of the slide,

17   page 99, is a direct quote from the first entry under

18   column K, Shamos opinion re P.O. Writer.

19       Then if you go over to column S under Shamos

20   opinion re J-CON in the second paragraph "(Retail),"

21   beginning with the second sentence, "PartFinder" is a

22   direct quote from that column.   So you had these two

23   quotes on Exhibit 3.

24           MR. ROBERTSON:   I had this anticipation

25   chart, Your Honor, that says this element was going to

2332

1  be anticipated, yes.  No one ever said here's how

2  we're going to combine these two.

3        If we're just doing it for one, there are an

4  infinite number of combinations.

5        THE COURT:  We have need to do it for one so

6  I can understand.  Remember how far ahead you-all are

7  and also will be of me.  I'm behind.  And I don't have

8  the capacity of Silky Sullivan.  You don't even know

9  who that is, do you?

10        I've gone to page 6 of the original of

11  Exhibit 3 and it is in green.  And green is what?

12  What's the color code for green?

13        MR. ROBERTSON:  Invalidity, Your Honor.

14  Anticipation.

15        THE COURT:  Wait a minute.  I thought senior

16  judges could get out of this kind of work.

17        "A cell with light green shading indicates a

18  claim element that is anticipated by the reference in

19  its column (possibly also asserted to be obvious)."

20        MS. STOLL-DeBELL:  That's right.

21        THE COURT:  Okay.  So you had all this.

22        MR. ROBERTSON:  Your Honor, if you look at

23  this chart, all of them are color green.  So all of

24  them are possibly obvious.  But, again, it doesn't

25  tell us on a claim by claim, element by element basis

2333

1    which ones they are going to select and which ones

2    they are not.

3              So the selection was made for the first time

4    for these slides.  That's the first time it was

5    revealed to us in all these things because remember --

6              THE COURT:  So you're claiming surprise and

7    prejudice?

8              MR. ROBERTSON:  Yes, sir, because --

9              THE COURT:  You're relying on the *Southern*

10   *States* test or do you have another test you want me to

11   apply?

12             MR. ROBERTSON:  Yes, sir.  That's the test

13   I'd like you to apply.  I could not discern from this

14   color-coded chart which combination was going to be

15   presented at any time.

16             THE COURT:  Okay.  Anything else?

17             MR. ROBERTSON:  No, sir.

18             THE COURT:  Smart as you are, you could

19   figure that out, couldn't you?

20             MR. ROBERTSON:  No, sir.  Not with that

21   number of elements.  At one point, Your Honor, I had

22   to tell them they had to get down to seven references.

23   We were dealing with dozens at this point.

24             I can't tell until -- in fact, I was

25   surprised to see it for the first time on the weekend.

2334

1          THE COURT:  I shouldn't have said that.  I

2     invited that barrage.

3          All right.  This is going to be the end of

4     it.  I'm going to have to decide now.

5          Okay, Ms. Stoll-DeBell.

6          MS. STOLL-DeBELL:  Let me start off by saying

7     that every slide that we intend to use, we did cut

8     them down substantially, but every slide goes exactly

9     right back to this Exhibit 3.

10          THE COURT:  What?  I lost --

11          MS. STOLL-DeBELL:  Every slide that we intend

12     to use today with J-CON and P.O. Writer goes exactly

13     back to Exhibit 3, just like you saw that slide 99.

14     We have checked it, doublechecked it, triplechecked

15     it.  We're not going to say anything other than what's

16     in here.  We're not going to go to a document other

17     than what's in here, and we're not even going to go to

18     a quote in a document that's not in here.

19          THE COURT:  Thank you.

20          MS. STOLL-DeBELL:  So they have had all of

21     this information.  They didn't even raise this issue

22     until about two weeks ago, Your Honor, and they did so

23     in the guise of a motion to enforce prior Court

24     orders.

25          There was no prior Court order on this.  You

1    never precluded this before.  And you can look at

2    their bench brief, Your Honor, that they filed this

3    week, and there's a chart here I'm happy to hand it

4    up.  They said we can rely on J-CON and P.O. Writer.

5    If they thought it wasn't sufficient, they could have

6    filed a motion for summary judgment.  They could have

7    filed a motion to preclude.  In fact, they filed

8    countless numbers of motions to preclude us to do

9    things, and this was not one of them.

10              THE COURT:  I think --

11              MS. STOLL-DeBELL:  The day before Dr. Shamos

12   is supposed to go on the stand all of a sudden we

13   can't make an argument we've disclosed all along.  It

14   was in our second supplemental invalidity contentions.

15   I can give you the pages for that.  So that's why it

16   wasn't part of a prior Court order.

17              This is ambush.  It's ambush to show up on

18   the day that our expert supposed to go on the stand

19   and say we didn't properly disclose something.

20              THE COURT:  They made this same argument back

21   awhile ago, and I think one of the reasons that I made

22   the decision on December 30, and I didn't identify any

23   Court order that was involved, according to you.

24   That's what I think you said, right?

25              MS. STOLL-DeBELL:  That's right, Your Honor.

2336

1    There was no Court order precluding it.  They never

2    asked you to preclude it.

3              THE COURT:  Not to preclude it, but to do

4    something.  He says that the Court order to do

5    something was to do this pursuant to the second

6    supplemental -- the order that required the second

7    supplemental -- supplement to the interrogatory, which

8    had to do with outlining all your references and

9    claims by claim analysis.

10             MS. STOLL-DeBELL:  And we did at pages 104 to

11   page 120 of our second supplemental invalidity

12   contentions, we set forth element by element analysis

13   of J-CON plus P.O. Writer.  So we did do that.  We

14   disclosed it to them long ago.

15             THE COURT:  Where is that?

16             MS. STOLL-DeBELL:  The second supplemental

17   invalidity contentions.

18             THE COURT:  What are the paragraphs that

19   you're referring to?

20             MS. STOLL-DeBELL:  I don't think we actually

21   have a copy of it.  I can cite pages to it Your Honor.

22   I could show you on the computer.  I don't think they

23   contest that we disclosed J-CON plus P.O. Writer in

24   our second supplemental invalidity contentions.

25             THE COURT:  No, I don't think they contest

1   that.  I think they contest you didn't do what you

2   were supposed to do, the element by element that

3   you're doing now.

4           MS. STOLL-DeBELL:  If they contested that,

5   they should have raised it long ago.

6           THE COURT:  They did raise it on December 30.

7           MS. STOLL-DeBELL:  In the guise of a motion

8   to enforce a Court order.  That was a

9   misrepresentation.  There was never a Court order that

10  said we shouldn't be able to raise this combination.

11          THE COURT:  That's true.  That isn't what the

12  issue was.  The issue is that you didn't disclose the

13  combination adequately in anything that you did.

14          Where are those supplemental interrogatory

15  answers?  Have they got them?  Did the gentleman back

16  there for ePlus, did he come up with them?

17          MR. ROBERTSON:  Your Honor may recall that

18  they are circumscribed by what was in Dr. Shamos'

19  report.  That Dr. Shamos couldn't testify unless it

20  was in the second supplemental, but he doesn't have

21  any of that analysis in the second supplemental.

22          THE COURT:  Can I have the page?

23          MS. STOLL-DeBELL:  Page 104, I believe, Your

24  Honor.  I don't have a copy in front of me, but that's

25  what I believe where J-CON plus P.O. Writer starts.

2338

1    Did you find page 104, Your Honor?

2              THE COURT:  Yes.

3              MS. STOLL-DeBELL:  Okay.

4              THE COURT:  All right.

5              MS. STOLL-DeBELL:  And it goes to page 120

6    for J-CON plus P.O. Writer.

7              THE COURT:  All right, Mr. Robertson, doesn't

8    this go on a claim by claim basis?

9              MR. ROBERTSON:  I'm sorry?

10             THE COURT:  Doesn't this go on a claim by

11   claim basis?

12             MR. ROBERTSON:  It does, but Dr. Shamos

13   disclaimed these interrogatory answers in his report

14   and said he didn't rely on that, and that he had his

15   own opinions, and that's what we relied on.  And the

16   Court's ruling was he was confined to his report as it

17   was circumscribed from the second supplemental.

18             This is not in Dr. Shamos' report.  And we

19   also mention, Your Honor, the scheduling order also

20   required there be this element by element, claim by

21   claim basis.

22             MS. STOLL-DeBELL:  I'm not saying we're using

23   the second supplemental for Dr. Shamos.  He has his

24   report and he's going to use his report.  I'm merely

25   saying we disclosed J-CON plus P.O. Writer in the

1    second supplemental as we were required to do, and

2    then Dr. Shamos has his own opinion on J-CON and P.O.

3    Writer.

4          There was not a Court order precluding us

5    from raising J-CON plus P.O. Writer.

6          THE COURT:  Thank you.

7          MR. ROBERTSON:  I'm not suggesting --

8          THE COURT:  Just a minute.  Are you through?

9          MS. STOLL-DeBELL:  I think so.  Other than to

10   just say, again, he did say the how and why to do the

11   combination in that paragraph 236.  I think it's

12   sufficient enough to let it go to the jury, Your

13   Honor.

14         THE COURT:  Okay.  I understand.  Now, the

15   question I have for Mr. Robertson.  What is your

16   motion?  What is your request and what is the ground

17   for it?

18         If you proceed under Rule 37 for violating a

19   Court order, you have to identify the Court order.  If

20   you proceed under Rule 37, the failing to make a

21   disclosure, you have to tell me that's what it is.

22         If you're not, and you said you were going

23   under Rule 37, and you wanted me to apply the

24   rationale of Rule 37, that analysis was based on

25   *Rambus v. Infineon*, which has to do with failure to

1    make disclosures and the test to be used for failure

2    to make disclosure.

3            I guess what you're saying now is that we

4    ordered expert reports, and the expert reports had to

5    have claim by claim analysis in order to satisfy the

6    Supreme Court and Fourth Circuit opinions on

7    obviousness, and they didn't do it.  So they didn't

8    make an adequate disclosure until just the other day,

9    and you were surprised, and you're prejudiced, and,

10   therefore, that's what I should be doing under Rule 37

11   or is it something else?

12           MR. ROBERTSON:  Yes, sir.  Your scheduling

13   order specifically stated that we had to comply with

14   Federal Rules of Civil Procedure with respect to

15   expert disclosures, and what they needed to contain,

16   and how there should not be any surprise with respect

17   to that.  And I think we have been surprised by the

18   fact that now Dr. Shamos is going to be testifying

19   about things that weren't disclosed.

20           THE COURT:  How have you been surprised if

21   you knew the answers, if you knew what he was going to

22   do in the interrogatory answers?

23           MR. ROBERTSON:  Because he did not rely on

24   the interrogatory answers.  In fact, he actually

25   disclaims the interrogatory answers in his report, and

1  he didn't say, I'm incorporating the second

2  supplemental statement and the analysis in there in my

3  report.

4         He said, I'm giving you new claim charts, and

5  I'm giving you these paragraphs, and that's going to

6  be the basis of my testimony.  And now what they want

7  to do is fall back on something that they actually

8  indicated that they weren't going to rely on.

9         If Dr. Shamos --

10        THE COURT:  You mean the expert indicated he

11  wasn't going to rely on, i.e., the interrogatory

12  answers?

13        MR. ROBERTSON:  Excuse me, sir?

14        THE COURT:  I.e., the interrogatory answers?

15        MR. ROBERTSON:  Yes, sir.  He said he had his

16  own opinions.

17        THE COURT:  All right.

18        MS. STOLL-DeBELL:  Your Honor, could I just

19  point out one little thing.  He did not disclaim the

20  interrogatory answers.  He said he adopted the

21  citations.

22        Paragraph 3 of his report, 103, page 26.

23        THE COURT:  What?

24        MS. STOLL-DeBELL:  Dr. Shamos --

25        THE COURT:  Where?

2342

1          MS. STOLL-DeBELL:  Shamos' report.

2          THE COURT:  What paragraph?

3          MS. STOLL-DeBELL:  Page 26, paragraph 103.

4   It starts at the very bottom of page 26.  And this is

5   those columns, Your Honor, J and R that we sort of

6   skipped over.

7          THE COURT:  I understand.

8          MS. STOLL-DeBELL:  He says, I adopt the prior

9   art citations from Lawson's interrogatories.  I adopt

10  them.

11         THE COURT:  The prior art.  He says, Exhibit

12  3 also contains matters from Lawson's interrogatories

13  concerning invalidity, which are included in columns

14  that are distinct from my opinions.  I adopt the prior

15  art citations from Lawson's interrogatories, but I do

16  not necessarily adopt the opinions expressed in the

17  interrogatories concerning which claims are invalid in

18  the light of which references.

19         On that issue, I have expressed my own

20  opinion in columns containing the heading beginning

21  Shamos opinion.

22         MS. STOLL-DeBELL:  That's right.  He doesn't

23  necessarily adopt them, but he doesn't say he

24  disclaims them either, Your Honor.  And for the most

25  part those citations are very similar if not identical

1    to what we had in our second supplemental.

2             THE COURT:  All right.  Thank you.

3             MS. STOLL-DeBELL:  Thank you.

4             MR. ROBERTSON:  I just have one last point.

5             THE COURT:  You have the burden to carry the

6    proof on the motion.  So you can have the last word,

7    but this is the last word.

8             MR. ROBERTSON:  Yes, Your Honor.

9             Just last night Ms. Stoll-DeBell emailed us

10   and told us that they would not be relying on any the

11   columns that were in the report that contained the

12   interrogatory answers.

13            THE COURT:  All right.  Before me is a motion

14   to foreclose the testimony of Dr. Shamos in its

15   entirety on the issue of obviousness that arises from

16   the combination of the J-CON and the P.O. Writer.  The

17   ground for that request is the violation of the

18   scheduling order, which requires claim by claim

19   analysis of any obviousness as well as the

20   requirements of the federal rules which requires the

21   expert to state fully the grounds of the opinion, the

22   reasons therefore, and the materials cited in respect

23   thereof, and as those rules would be applied under the

24   instruction of the Supreme Court of the United States

25   in *KSR* and of the Federal Circuit in *Innogenetics* and

1   *Kahn.*

2            And the requested relief is to preclude Dr.

3   Shamos from testifying at all on the invalidity of

4   J-CON Plus in combination with P.O. Writer.  Is that

5   the basic relief you seek?

6            MR. ROBERTSON:  Yes, Your Honor.  I would

7   just make one point.  The same analysis would apply

8   both to TV/2 and RIMS.

9            THE COURT:  We're not arguing TV/2 and RIMS.

10            MR. ROBERTSON:  All right.  And also --

11            THE COURT:  That's not here and you're not

12   going to bootstrap it.  And it's not before me.  I

13   haven't been through -- I don't know how long we've

14   been sitting here.  Over an hour and a half.  Don't be

15   doing that anymore.  Sit down.

16            MR. ROBERTSON:  Your Honor, I just want to

17   say, well, to the extent that they haven't presented

18   that analysis, Dr. Staats' fact testimony --

19            THE COURT:  I'm dealing with something else.

20   I'm talking about Dr. Shamos' report.

21            MR. ROBERTSON:  Yes.  That's the relief, Your

22   Honor.

23            THE COURT:  All right.  At the beginning of

24   the argument, ePlus' counsel said that it would be

25   sufficient if Dr. Shamos were confined to the text of

1    paragraph 236, and then said but that paragraph

2    basically doesn't comply with *KSR* requirements or

3    *Innogenetics* requirements as well.

4         The response of ePlus is that in response to

5    the order requiring it to answer second supplemental

6    interrogatories, it provided interrogatory answers

7    that go from page 104 to 120 that outline the

8    combination of J-CON and P.O. Writer.  And that is

9    correct.  Lawson did, in fact, do that.

10        However, in his report Dr. Shamos said that

11   his claim chart, Exhibit 3, also contains matters from

12   Lawson's interrogatories concerning invalidity which

13   are included in columns that are distinct from my

14   opinions.  I adopt the prior art citations from

15   Lawson's interrogatories, but I do not necessarily

16   adopt the opinions expressed in the interrogatories

17   concerning which claims are valid in light of which

18   references.  On that issue, I have expressed my own

19   opinion in columns containing headings beginning

20   Shamos opinion.

21        Therefore, the interrogatory answers really

22   do not play into this analysis because the challenge

23   is to a report that does not show the combination of

24   J-CON and P.O. Writer.  And that is the first issue

25   that I have to decide.

2346

1          It is said by Lawson that the report does in

2     fact cover the combination in paragraph 236.  In

3     paragraph 236, Dr. Shamos, under a general heading

4     called the combination of J-CON and P.O. Writer

5     renders the asserted claims obvious, says as follows.

6     235 is the paragraph.  It is my opinion that J-CON

7     anticipates all asserted claims.  It is also my

8     opinion that P.O. Writer anticipates all of the

9     asserted claims.

10          In paragraph 236, he says, To the extent that

11    J-CON and/or P.O. Writer are not deemed to anticipate

12    any asserted claim, it is my opinion that such claim

13    would have been obvious in view of the combination of

14    J-CON with P.O. Writer.  The same reasons for making

15    the previous two combinations, that is his assertion

16    that the RIMS patent and the Dworkin patent, and the

17    J-CON and the Dworkin patent taken together, apply to

18    combining the J-CON system as described in the J-CON

19    manual with P.O. Writer Plus V 10 as described in the

20    P.O. Writer manual.

21          The P.O. Writer Plus V 10 system provided the

22    multi-vendor capability demanded by the industry at

23    the time and before the time of the invention.  The

24    J-CON system included features that one of ordinary

25    skill in the art would have been motivated to use with

1   the P.O. Writer system including additional details

2   about performing a cross referencing of data relating

3   to an item on a requisition to determine an

4   alternative source for the same item and/or an

5   acceptable substitute for the item initially selected.

6         It is asserted by Lawson that Dr. Shamos

7   omitted from his report the citations to Exhibits 3

8   and 4 from that paragraph.  And Exhibits 3 and 4 to

9   his report do not appear there.  Four is an

10  anticipation chart and 3 is a claim chart that

11  includes all of what is in 4.  Three is a matter that

12  has been argued here today.

13        Now, it is argued then that if one goes back

14  to page 54, paragraph 181, where Dr. Shamos recites

15  P.O. Writer Plus V10, that he recites what P.O. Writer

16  has in paragraphs 181 through 184.  He does do that,

17  but he does not show any combination there.

18        It is also said that if one goes to page 65

19  where he discusses the combination of the RIMS patent

20  plus Dworkin 940 rendering the claims obvious, that he

21  has explained in 223, 224, 225 and 226 how to combine

22  those two as well as one sentence from 227.  Much of

23  what he has said in 227 is -- I guess 228.  Much of

24  227 has been stricken.

25        He has also said that the combination of

2348

1  J-CON plus Dworkin 940 renders the asserted claims

2  obvious in Dr. Shamos' report, and he discusses that

3  in 229 through 234.

4         And that brings us to his discussion of the

5  combination of J-CON and P.O. Writer.  And the test

6  here must be understood in view of the decisions of

7  the Supreme Court in *KSR* and others.

8         There the Court says that it will be

9  necessary for a court to look to interrelated

10 teachings of multiple patents, the effects of demands

11 known to the design community, or present in the

12 marketplace, and the background knowledge possessed by

13 a person having ordinary skill in the art all in order

14 to determine whether there was an apparent reason to

15 combine the known elements in the fashion claimed by

16 the patent at issue.  To facilitate review, this

17 analysis should be made explicit.

18        Then citing *Kahn* with approval, the Court

19 cites that part of *Kahn* which says rejections on

20 obviousness grounds cannot be sustained by mere

21 conclusory statements.  Instead, there must be some

22 articulated reasonings with some rational underpinning

23 to support the legal conclusions of obviousness.

24        The Federal Circuit has since *KSR* decided

25 *Innogenetics*, I-n-n-o-g-e-n-e-t-i-c-s, *Innogenetics v.*

1    *Abbott Laboratories*, there the Court held, the

2    District Court held, that an expert's report on

3    obviousness asserted claims was deficient for purposes

4    of the disclosure under Rule 26 for each of the claims

5    that he analyzes for obviousness.  Dr. Patterson

6    merely lists, said the Court, a number of prior art

7    references and then concludes with the stock phrase

8    "To one skilled in the art, it would have been obvious

9    to perform the genotyping methods in the claims that

10   were at issue there of that patent that was at issue."

11           The Court went on to say that there must be

12   some articulated reasoning with some rational

13   underpinning to support the legal conclusion of

14   obviousness citing *Kahn* and *KSR*.  Again, it cites *KSR*

15   or *Kahn* requiring the analysis to be made specific.

16   And then to give guidance about what should be done,

17   the Court says, nowhere does Dr. Patterson state how

18   or why a person of ordinary skill in the art would

19   have found the claims of the '704 patent obvious in

20   light of some combination of those particular

21   references.

22           "As the District Court found, it is not

23   credible to think that a lay jury could examine the

24   Cha application, the Resnick patent that defendant

25   cited as prior art or any of the other references and

1   determine on its own whether there were differences

2   among them and the '704 patent.  Such vague testimony

3   would not have been helpful to a lay jury in avoiding

4   the pitfalls of hindsight that belie a determination

5   of obviousness."

6          It is that measure of the disclosure

7   obligation that is to be applied to the adequacy of

8   the report here.  This matter was brought to the

9   attention of the Court on December 30, and I denied

10  the motion to enforce prior Court orders.  That was

11  the vehicle for presenting this issue to the Court.

12  And at the time I had some concern about the adequacy

13  of the Shamos report, but as I understood the

14  arguments being made to me, and they were really made

15  in that brief and then on the telephone, I erred on

16  the side of allowing this matter to go forward to see

17  where crystallization could occur and whether or not

18  the parties could sort this out.  And that

19  crystallization has gone forward, and it has resulted

20  in the filing the night before last of a number of

21  slides wherein the element by element analysis that is

22  required has been proffered as an outline to be aided

23  by Dr. Shamos' testimony.

24          In that element, first, I need at this point

25  to say that if one goes back and looks at Exhibit 3

2351

1    and reads through it carefully, one sees and it is

2    admitted in the argument that nowhere in the chart,

3    Exhibit 3, under Shamos opinions does Dr. Shamos

4    combine the J-CON and the P.O. Writer at all.  He just

5    doesn't do it in the claim by claim analysis.  It

6    doesn't say any combination.

7         We are left to get to that point to use

8    paragraph 236.  And the bottom line is that 236 does

9    not satisfy the requirements of *KSR* or *Innogenetics*.

10   It is a conclusory opinion about obviousness.  It

11   incorporates or purports to incorporate by reference

12   or it does incorporate by reference the reasons given

13   for explaining to other patents that would be obvious,

14   that's RIMS plus Dworkin and J-CON plus Dworkin,

15   without in any way explaining how those reasons apply

16   to this scenario.

17        And you can go back and read the discussion

18   of Dworkin plus J-CON and Dworkin plus RIMS, and you

19   cannot see how to make the combination analysis that

20   is suggested by the incorporation by reference

21   sentence.  It just simply can't be done.  So the

22   incorporation by reference does not carry the day.

23        That then leaves the next sentence.  The P.O.

24   Writer plus V10 system provided the multi-vendor

25   capability demanded by the industry at and before the

1    time of the invention.  The J-CON system included

2    features that one of ordinary skill in the art would

3    have been motivated to use with the P.O. Writer

4    system, including additional details about performing

5    a cross referencing of data relating to an item on a

6    requisition to determine an alternative source with

7    the same item and/or an acceptable substitute for the

8    item initially selected.

9         That description is inadequate to the day as

10   required by *KRS* as supplemented by *Innogenetics*.  And

11   it's explicit teaching and command harkening back to

12   the Kahn decision about the need to articulate how and

13   why a person of ordinary skilled in the art would have

14   found the claim of the '704 patent obvious in light of

15   some combination of those particular references.

16        It is possible, I suppose, to allow Dr.

17   Shamos to testify to the P.O. Writer the sentence that

18   is the last sentence of paragraph 236.  However, that

19   is in such conclusory form that, like the District

20   Court in *Innogenetics*, it is not credible to think

21   that a lay jury could examine that text and reach any

22   conclusion on its own.

23        So the motion then has to be tested.  This is

24   a failure disclose after extensive opportunity to do

25   so the actual details of the opinion required by those

1    cases as well as by the actual articulation of Rule

2    26, which requires the expert to state in full all of

3    the opinions and all the reasons therefore, and in a

4    combination opinion there has to be a combination

5    explained in the way that *Innogenetics* and *KSR*

6    require.

7           And so the question is:  Can his testimony

8    then be excluded?  The test to be applied here is the

9    *Southern States* test according to the plaintiff.  And

10   that test has its Genesis in the decision called

11   *Rambus v. Infineon*.

12          Failure adequately to disclose under Rule

13   26(c) is excused by two exceptions.  Does anybody

14   have --

15          Do you have a current Federal Rules down at

16   your desk?

17          MS. HAGGARD:  No, but I can go grab one.

18          THE COURT:  Mine is blocked by all these

19   documents and I can't reach it.  I can't even move the

20   file.

21          Have you got one?  That's it.  Rule 37(c)

22   says if a party fails to provide information or

23   identify witnesses as required by Rule 26(a) or (e),

24   the party is not allowed to use that information or

25   witness to supply evidence on a motion in a hearing or

1    at a trial unless the failure was substantially

2    justified or is harmless.  The sanctions that are

3    permitted are outlined.

4         That same basic framework animated the

5    *Southern States*.  The first test is was the party

6    surprised about the testimony?  The answer to that is

7    yes and no.  EPlus has known for some time about the

8    combination theory of J-CON plus P.O. Writer.  But the

9    it has not been on notice of exactly what Lawson was

10   going to say about how that combination occurred until

11   these slides were presented a couple of nights ago.

12   And even now they are being narrowed down.  So I think

13   it's fair to say the surprise component augers in

14   favor of ePlus.

15        The nature of the surprise is particularly

16   important given the Supreme Court's and Federal

17   Circuit's recent articulations of the need for

18   specificity on combination testimony and obviousness.

19        The next test is the ability of the party to

20   cure that surprise.  Given the convoluted nature of

21   Dr. Shamos' reasoning, and it's almost impossible to

22   expect the opposing party to have anticipated exactly

23   what was going to be delivered to it today or last

24   night or night before last, I guess it was, I'm sorry,

25   and to cure the surprise by effective

2355

1    cross-examination.  And that's what has to be done

2    here.  That's the cure.  Plus the need to have its own

3    expert reassess all of the testimony now being offered

4    in the form that it's now being offered in order to

5    adjust to the surprise.

6         And that would be a method that conceptually

7    could be available to cure, but to do that would allow

8    this testimony, if presented, by Dr. Shamos to disrupt

9    the trial.  And I don't really have any good

10   explanation on the record for failure to sort this out

11   in the way that they were going to use it at trial.

12        I've told the parties from the beginning they

13   needed to sort this out specifically.  And I on

14   numerous occasions said the consequence can be

15   exclusion, and you need to be aware of all that and

16   tried to give the parties an opportunity to make sure

17   they understood what the consequence were.  And so I

18   don't find the explanation for the failure to disclose

19   what should have been disclosed adequate.  And the

20   importance of the testimony, it's the lynchpin of the

21   J-CON, P.O. Writer obviousness argument, and so it's

22   critical, and it's important to both sides, obviously.

23        Applying all those tests, I find that there

24   has been a failure to disclose as required, and the

25   sanctions are imposing of attorneys' fees, inform the

1    jury of the failure are other sanctions including any

2    of the others listed in 37(D)(2)(a) 1 through 6 and

3    (B)(2)(a) 1 through 6, directing that matters embraced

4    in the order or other designated facts be taken as

5    established for purposes of the action as the

6    prevailing party claims, prohibiting the disobedient

7    party from supporting or opposing designated claims of

8    defenses or from introducing designated matters in

9    evidence, striking pleadings in whole or in part,

10   staying further proceedings until the order is obeyed,

11   dismissing the action or proceeding in whole or in

12   part, rendering a default judgment against the

13   disobedient party.  I believe that's the right

14   reference, (a) 1 through 6.

15          So the remedy here is, the only practical

16   remedy given the situation, is to preclude the

17   testimony of Dr. Shamos on the issue of combination of

18   J-CON and P.O. Writer.  The motion to that extent is

19   granted.

20          Now, you said there's something else about

21   Dr. Staats.

22          MR. ROBERTSON:  Yes, Your Honor.  Can I refer

23   you back to Dr. Shamos' report beginning at page 68?

24          THE COURT:  Well, let me ask you this

25   fundamental question.  Can an invalidity or

2357

1  combination ever be sustained on the basis of fact

2  testimony only?

3          MR. ROBERTSON:  I don't believe it can, Your

4  Honor.

5          THE COURT:  Is there a case that holds that?

6          MR. ROBERTSON:  I think the cases that -- let

7  me just refer you, if I can, to, I think, *Proveris*

8  *Scientific Corp. v. Innovasystems*, 536 F.3d 1256,

9  1257.

10          THE COURT:  Cite it again.

11          MR. ROBERTSON:  It's *Proveris* --

12          THE COURT:  Just the case.

13          MR. ROBERTSON:  536 F.3d 1256, 1257, Federal

14  Circuit, 2008.  Expert testimony is required to

15  establish invalidity where the subject matter is

16  sufficiently complex to fall beyond the grasp of an

17  ordinary layperson.  That's a parenthetical that's

18  coming out of that case.

19          Also I can cite *Koito Manufacturing Co. v.*

20  *Turn-Key-Tech*, 381 F.3d 1142 at page 1152, that's

21  Federal Circuit, 2004.  We hold that the defendant

22  needed some explanatory testimony or other evidence to

23  compare the prior art, the patent at issue, given that

24  the prior art reference was a technical document.

25          So we would suggest, Your Honor, that in the

1   context of this case with the complexity and the

2   nature of the technology here, this kind of testimony

3   needs to be tethered to expert testimony for the jury

4   to actually be able to apprehend, understand, and do

5   the appropriate analysis.

6        And so with respect to Dr. Staats, it's been

7   conceded that he has -- that they are offering no

8   anticipation opinions with respect to him.  They do

9   have a combination of J-CON and Dworkin, which Your

10   Honor has already referred to.

11        In the same exact analysis that the Court has

12   just done with respect to J-CON and P.O. Writer, if it

13   was followed, it's equally as conclusory.

14        In fact, if I could just direct the Court to

15   one paragraph, if I could, just to illustrate this

16   point at page 68 of Dr. Shamos' report.

17        THE COURT:  Are you bringing this up for the

18   first time?

19        MR. ROBERTSON:  No, sir.

20        THE COURT:  What is it that you think we

21   can -- you just keep going and going and going.

22   Ultimately, there was a precursor motion as to which I

23   probably didn't do the right thing, and I'm trying to

24   cure it, but I don't remember any objection to Staats

25   on J-CON and Dworkin.

2359

1          MS. STOLL-DeBELL:  We don't intend to have

2    Dr. Shamos talk about J-CON plus Dworkin.

3          THE COURT:  He's not going to talk about it

4    so why are you talking about it?

5          MR. ROBERTSON:  Well, then Dr. Staats doesn't

6    need to testify because if Dr. Shamos isn't going to

7    talk about J-CON and Dworkin, then there's no basis to

8    have Dr. Staats testify about J-CON because it then

9    has no relevance to this case because it would be

10   completely untethered to expert testimony.

11          To address that point, Your Honor, we did

12   raise this precise J-CON plus Dworkin issue in the

13   brief that we filed back on -- that we had the

14   argument on December 30.  That's what the argument

15   became focused on.  It became focused on P.O. Writer

16   and J-CON because of the slides we received this

17   weekend.  But in respect to the J-CON plus Dworkin --

18          THE COURT:  They are not offering that.

19          MR. ROBERTSON:  All right.  Then Dr. Staats

20   shouldn't be permitted to testify.

21          THE COURT:  Why?  Ms. What's-Her-Name was

22   allowed to testify.

23          MR. ROBERTSON:  Ms. McEneny?

24          THE COURT:  The Laurene McEneny show.

25          MR. ROBERTSON:  They are contending --

2360

 1          THE COURT:  It's on anticipation.

 2          MR. ROBERTSON:  Three claims that anticipate

 3     from Ms. McEneny.

 4          THE COURT:  So Staats is only on invalidity.

 5     I mean obviousness.

 6          MR. ROBERTSON:  Yes, sir.  So now there's no

 7     expert testimony with respect to obviousness or

 8     combinations on either.  So we would then submit that

 9     Dr. Staats' testimony would be completely

10     inappropriate.

11          THE COURT:  All right.  Why should Dr. Staats

12     be allowed to testify in view of the ruling, Ms.

13     Stoll-DeBell?  Why isn't this one of those technical

14     matters that, in fact, it does require some expert

15     testimony to determine obviousness, and that without

16     the expert being unable to testify about it, Dr.

17     Staats can't get into any evidence because it's not

18     relevant, and even if it were relevant, it can be

19     confusing and lead to further testimony to address his

20     testimony on the issue which really doesn't need to be

21     addressed.

22          MS. STOLL-DeBELL:  Well, I don't think we

23     have to answer that question, Your Honor, because he

24     can offer testimony that Dr. Shamos can use to rebut

25     ePlus' evidence of secondary considerations.

2361

1          So if you go to Dr. Shamos' report, page

2     70 --

3          THE COURT:  I'm talking about the combination

4     component now.

5          MS. STOLL-DeBELL:  Well, I think Dr. Staats

6     can testify about what J-CON did and we can use that

7     to say that J-CON satisfied some unmet need that they

8     are talking about.  So it's not relying on J-CON as a

9     prior art reference.  It is relying on J-CON to rebut

10    some of ePlus' secondary considerations, and this is

11    disclosed specifically in Dr. Shamos' report.

12         So Dr. Shamos can talk about J-CON still with

13    regard to these paragraphs.

14         THE COURT:  Secondary considerations come up

15    in what context?

16         MS. STOLL-DeBELL:  They'll come up in the

17    context of obviousness with regard to the RIMS plus

18    TV/2 testimony that Dr. Shamos will give.  So he'll

19    get up and say the claims are obvious, RIMS plus TV/2

20    go for that, and then he'll also say there are no

21    secondary considerations that show that this invention

22    is not obvious.

23         THE COURT:  How does J-CON play into the

24    secondary consideration response to the obviousness

25    testimony based on RIMS plus TV/2?

2362

1          MS. STOLL-DeBELL:  Well, I think the easiest

2     way is to go look at what Dr. Shamos said about that

3     in his report.  He has three specific paragraphs.

4          THE COURT:  What page?

5          MS. STOLL-DeBELL:  Page 70.  The first one is

6     paragraph 242.

7          THE COURT:  242.  Okay.  Go ahead.

8          MS. STOLL-DeBELL:  He basically says ePlus is

9     speaking of the prior art, that since the electronic

10    catalogs were limited to a single vendor's product,

11    comparison shopping among different vendors could not

12    be conducted.  The statement is incorrect.

13         At least the following prior art systems

14    allowed comparison shopping among multiple vendors,

15    and J-CON is listed as one of them.

16         Then if you go, Your Honor, to the next page.

17         THE COURT:  Page or paragraph?

18         MS. STOLL-DeBELL:  Page.  71.

19         THE COURT:  All right.

20         MS. STOLL-DeBELL:  Paragraph 246.  So ePlus

21    asserts that the inventors recognize that the

22    electronic sourcing system could also include

23    databases having vendor's inventory information or

24    other inventory determination means so that for a

25    particular selected item from a catalog database

2363

 1    search, the system could determine its availability in

 2    the inventory of a vendor.  Even if vendors had that

 3    realization, so did numerous others before them.  Such

 4    capability was provided by at least the following

 5    prior art systems.  And J-CON is one of the ones they

 6    list.

 7            And there's the next paragraph, 247, says

 8    ePlus asserts that if a particular vendor was out of

 9    stock with respect to a selected item, the inventors

10    recognize that the system should be capable of finding

11    another item available from a different vendor in

12    another vendor catalog by means of, for example, a

13    database which identifies cross-reference items.

14            THE COURT:  So he can testify to these

15    things?

16            MS. STOLL-DeBELL:  Yes, Your Honor.  And this

17    goes to the scope and content of the prior art, which

18    is one of the Graham factors for obviousness.

19            THE COURT:  Why does Staats testify to this?

20    Why doesn't this come not from Staats' testimony, but

21    from the references of the J-CON patent?

22            MS. STOLL-DeBELL:  I think I was

23    misinterpreting who you meant by he.  Dr. Shamos can

24    testify about these things.  Dr. Staats will put in

25    the facts.

2364

1          THE COURT:  What facts?

2          MS. STOLL-DeBELL:  The fact that J-CON did

3  these things.  So J-CON offered comparison shopping as

4  talked about in paragraph 242.  So Staats will just

5  put on the facts that support Dr. Shamos' opinions set

6  forth in these three paragraphs.

7          THE COURT:  All right.  I see.

8          MS. STOLL-DeBELL:  The other one is the

9  inventory information and cross referencing.

10          THE COURT:  246, 247 and 242; is that right?

11          MS. STOLL-DeBELL:  Yes.  Then I would just

12  also note for the record that a party is not required

13  to put on expert testimony of obviousness.  That was

14  held in the *Wyers* case from the Federal Circuit.

15          THE COURT:  What is the cite for that?

16          MS. STOLL-DeBELL:  616 F.3d 1231.

17          THE COURT:  How do you deal with cases that

18  he cited that says in technical matters like this, you

19  need to --

20          MS. STOLL-DeBELL:  Well, I think it's not

21  required.  I think putting on Dr. Staats to put on the

22  facts about J-CON, and you know there's been plenty of

23  testimony about --

24          THE COURT:  Wait a minute.  If you're not

25  going to offer his testimony, anything about the

1   secondary consideration, that's not even an issue.

2   The only time that's an issue is if you say that

3   Staats can testify to things about combination, and

4   the case can go to the jury on the combination issue

5   of J-CON plus P.O. Writer on the basis of Staats and

6   what's her name?

7          MS. STOLL-DeBELL:  I don't think I'm saying

8   that.

9          THE COURT:  Okay.  Then we don't have this

10  issue because he's not testifying on anything but

11  these three paragraphs.

12         MS. STOLL-DeBELL:  I'm saying he can do that,

13  and, in addition, he can talk about the functionality

14  of the J-CON system, and we wouldn't need Dr. Shamos

15  to testify about that.  Even if Dr. Shamos doesn't

16  testify about the combination of J-CON and P.O. Writer

17  or J-CON and Dworkin, I'm saying that the law is we do

18  not have to have expert testimony for that.  So that's

19  a separate issue.

20         THE COURT:  Why is that an issue now?  If

21  you're not going to offer Staats' testimony -- the

22  issue came up only because he asked to keep Staats

23  from testifying about the obviousness component so the

24  jury doesn't get anything.  Because the jury is not

25  going to get any obviousness issue on P.O. Writer plus

2366

1    J-CON because there's no expert to support it, and an

2    expert is required to support that particular kind of

3    obviousness testimony.

4           Now, you said in response to that, Well,

5    we're not offering anymore given your ruling.   And I

6    realize it was because of the ruling, and you

7    preserved your objection to that, that you say you're

8    not even offering his testimony on the issue of the

9    combination.   You're offering it only on what it did

10   as a factual predicate to support Shamos' testimony in

11   242, 246 and 247; isn't that right?

12          MS. STOLL-DeBELL:   I am saying that he should

13   be able to testify about paragraph 242.   That Dr.

14   Staats should be able to testify about the factual

15   predicate underlying paragraphs 242, 246 and 247.

16          THE COURT:   And that's secretary

17   consideration.

18          MS. STOLL-DeBELL:   Yes.

19          THE COURT:   That's the only thing you're now

20   offering him for?

21          MS. STOLL-DeBELL:   No.   That's one issue.   I

22   think he should be able to testify about that.   I

23   think there's a second issue that Dr. Staats should be

24   able to get up and put on the facts about J-CON and

25   that we ought to be able to in closing argument argue

1    the combination of J-CON and P.O. Writer because we

2    haven't been precluded from making that.  Dr. Shamos

3    has been.  So Dr. Shamos can't testify about it, but

4    the Federal Circuit has said you do not need to have

5    expert testimony on obviousness.

6            THE COURT:  You all are going to have to

7    brief this, but I don't know why on earth you can make

8    that argument in this case.  This seems to me to be --

9    it's not a case where a jury could do it by itself

10   just like in the *Innogenetics*.  I recognize that you

11   don't always have to have an expert.  That's not the

12   issue.  The issue is in this case, don't you think?

13           How can they decide that issue in this case

14   without an expert?

15           MS. STOLL-DeBELL:  I think it can.  I think

16   we have had a lot of testimony from the inventors.

17   We've seen what the claims are.  Dr. Staats will get

18   up and testify about the elements there, and it will

19   be explained in closing argument.

20           THE COURT:  Okay.

21           MS. STOLL-DeBELL:  I don't think this is an

22   extremely complex invention, Your Honor, where you're

23   talking about --

24           THE COURT:  You may not because you probably

25   function in the world of sophistication, but we're

2368

1    talking about an average jury.  This is hard.  I mean,

2    I spent I don't know how many hours trying to

3    understand this stuff, and I have to go back and read.

4    It's like reading the rules of the Supreme Court of

5    Virginia.  I wouldn't think about filing a brief there

6    without reading those rules every time.

7             Well, every time that I have to deal with

8    this I have to go back and check these patents and

9    some of the basics on them just so I understand them.

10   What do you think the jury is going to do?

11            Let me hear Mr. Robertson.

12            MS. STOLL-DeBELL:  I think that's a separate

13   issue.

14            THE COURT:  No, it isn't.  Because it's the

15   scope of what he's going to testify to.

16            MS. STOLL-DeBELL:  I think for sure he ought

17   to be able to testify about the factual predicate

18   underlying those three paragraphs.

19            THE COURT:  I understand.

20            How much more of this do I have to deal with?

21   You know what?  This has now taken up half of this

22   day.  I don't understand.  I'm going to tell you

23   something.  What you have done is convinced me beyond

24   question that the next people who come in here to try

25   a patent case are going to be on a leash that Ripley

1  is not going to believe, and they're going to do it

2  without disrupting and tearing up the life of juries.

3         These people do not make the kind of money

4  that you all make, and they had a right to have

5  you-all prepared and have it over with so that I don't

6  have to interrupt their day taking half their day

7  doing this.

8         If I had known this, I could have let them

9  not come in until 1 o'clock.  I don't understand what

10  you-all think.

11         MR. ROBERTSON:  I apologize, Your Honor.  We

12  received 167 slides.  We met for hours yesterday.

13  They would only reduce them to 107.  We still have

14  these problems.

15         Now your ruling has just taken out at least

16  26 more, and I think there are some others.  I don't

17  want to have to go through them with the Court either,

18  but this is what we've been presented with.

19         If you want me to deal with them as they come

20  up during the trial, I can also do that, but that

21  would also be disruptive.

22         THE COURT:  What I want you to do is to solve

23  it by agreement.

24         MR. ROBERTSON:  We will do that.

25         THE COURT:  I want you to have solved this

1    stuff.   You should done it months ago.

2              MR. ROBERTSON:   I just got the slides Monday

3    night, Your Honor.   I'm sorry.

4              THE COURT:   That's because you-all made a

5    side deal that puts you at that risk.   You should have

6    never made that side deal.   Otherwise, the rule is

7    exhibits that's aren't done at the pretrial conference

8    don't come in, and that includes demonstrative

9    exhibits.   So you-all made a side deal that made all

10   this possible.   You didn't run it by me.   You didn't

11   check anything with anybody.   It's not allowed.

12   Here's what happens because you do it.   Because we're

13   in the process of having to solve these problems.   And

14   every time you get up, you come up with something

15   else.

16             Now, address the question of Dr. Staats.

17             MR. ROBERTSON:   I would not have a problem

18   with Dr. Shamos testifying as to these three

19   paragraphs that have been cited.

20             THE COURT:   That's not an issue.   Dr. Staats,

21   can he testify to the facts that Shamos would use in

22   there?

23             MR. ROBERTSON:   I don't think he needs to or

24   has to.   In fact, I think it would be nothing more

25   than confusing and cause undue delay and would be

1   misleading.  It's represented to me this morning that

2   Dr. Staats would be testifying on direct examination

3   for an hour and a half to an hour and three-quarters,

4   and I would at least have an hour of cross-examination

5   for what?  To establish that he had some system that

6   did something that is no longer relevant to any issue

7   of invalidity in this case, obviousness or

8   anticipation.

9              THE COURT:  They say that his testimony is

10  relevant to obviousness.  That because the J-CON

11  system -- you heard her.

12             MR. ROBERTSON:  There's no --

13             THE COURT:  Why do you make a statement like

14  that?

15             MR. ROBERTSON:  There's no expert opinion in

16  this case anymore, Your Honor, that has anything to do

17  with obviousness.  So he can't take the stand --

18             THE COURT:  There's no expert opinion

19  about --

20             MR. ROBERTSON:  About J-CON for anticipation

21  or obviousness.

22             THE COURT:  But there is about RIMS and TV/2.

23             MR. ROBERTSON:  And they can present Dr.

24  Shamos with respect to RIMS and TV/2.

25             THE COURT:  What they're saying is that the

2372

1   evidence that Staats would give about the J-CON system

2   is relevant to support the opinions that Shamos would

3   give in 242, 246 and 247.  Why can't Shamos do that?

4   I mean, why can't Staats do that?

5           MR. ROBERTSON:  Dr. Staats would give Dr.

6   Shamos' opinions in those paragraphs?

7           THE COURT:  Oh, come on.

8           MR. ROBERTSON:  I don't understand.

9           THE COURT:  For Pete's sake.  Just listen.

10  What she said, and it's simple as it can be, and I

11  don't want to spend a lot of time reiterating things

12  you're not listening to.  Staats testifies about the

13  components and the operation of J-CON, she says, in

14  order to provide a factual basis for this testimony

15  forecast in paragraphs 242, 246 and 247 of the Shamos

16  report, which go to the secondary considerations,

17  which secondary considerations are pertinent still in

18  the case because there still is an obviousness issue

19  on RIMS and TV/2.

20          Why can't Staats testify about that topic,

21  that kind of topic?

22          MR. ROBERTSON:  Well, if Staats can testify

23  he has a prior art system that he says allowed

24  comparison shopping among multiple vendors, and that's

25  it, then if it's limited to that, fine.  If it's going

2373

1    to be 2 1/2 hours of him describing the entire system

2    that is no longer relevant to invalidity, I don't

3    understand what the purpose is.  If he wanted to say,

4    for example, that --

5            THE COURT:  No.  So he can do that as long as

6    his testimony is confined to those issues.

7            MR. ROBERTSON:  On paragraphs 242, 246 --

8            THE COURT:  Yes, that's what she said.

9            She also says that this issue of J-CON being

10   combined with P.O. Writer can go to the jury without

11   an expert, and that your objection to Staats'

12   testimony on other aspects of the J-CON operation is

13   not well taken even in the face of the ruling that

14   keeps out Dr. Shamos' testimony on that issue because

15   the issue can go to the jury without an expert.

16           Isn't that your second point, Ms.

17   Stoll-DeBell?

18           MS. STOLL-DeBELL:  Yes, Your Honor.

19           THE COURT:  What's your response to that?

20           MR. ROBERTSON:  My response to that is I

21   haven't had an opportunity to look at the case she's

22   referenced.  I don't believe that that is, in fact,

23   the case, but if it is, I'm certain it's going to be

24   in a case that is of such simple technology with a

25   lack of complexity that the cases that I have cited to

2374

1   Your Honor in which an expert has to provide some sort

2   of roadmap and guidance.

3           THE COURT:  Have you got the case?

4           MS. STOLL-DeBELL:  I do.

5           THE COURT:  Give it to him.

6           I'm going to take a break and let the court

7   reporters shift, and I'll finish this up, and then

8   we're going to get going with the testimony.

9           MS. STOLL-DeBELL:  We're going to deal with

10  all this issue and ask only that Staats be put on to

11  do a factual predicate for paragraphs 242, 246 and

12  247, and withdraw our request to put the issue of

13  J-CON plus P.O. Writer -- whatever paragraphs I said.

14          THE COURT:  You said 242, 246 and 247.  And

15  he's saying 244.  And you didn't talk about that.

16          MS. STOLL-DeBELL:  Your Honor, I guess I

17  missed a paragraph when I was talking about it.

18          THE COURT:  You want to include 244?

19          MS. STOLL-DeBELL:  Yes, I would.

20          THE COURT:  That's all right.  That happens.

21          MS. STOLL-DeBELL:  But we're going to

22  withdraw our request to put P.O. Writer plus J-CON to

23  the jury without an expert.

24          THE COURT:  All right.  Thank you.

25          We'll take a recess and we'll come can and he

2375

1   can testify to that.

2          How long will his testimony be?

3          MR. SCHULTZ:  About 45 minutes, Your Honor.

4          THE COURT:  All right.  Thank you very much.

5   We'll take a recess.  Tell the jury.

6          Did we order lunch for them?

7          MR. LANGFORD:  They are eating downstairs.

8          THE COURT:  Are they down there now?

9          MR. LANGFORD:  No.

10         THE COURT:  Can they go on down there now?

11         MR. LANGFORD:  Yes.

12         THE COURT:  Let's let the jury go to lunch

13  and we'll take a lunch recess.  Then we'll come back

14  at 1 o'clock and be ready to go with the whole

15  shooting match including Dr. Shamos.

16         Thank you.

17             (Luncheon recess at 12:01 p.m.)

18

19

20

21

22

23

24

25