2985

1          THE COURT:  Is somebody going to give me the

2    patent statute?  Thank you.

3          I don't know what on earth I did with it.

4          MR. ROBERTSON:  I think I just want to add

5    two constructs to give Your Honor to try to frame the

6    issue here.  The first construct is this.  Dr. Shamos

7    relies on just three things for his opinion.  The '989

8    patent as it existed and was issued, the TV/2

9    brochure, and the TV/2 general information manual.  He

10   testified under cross-examination those were the only

11   three things he relied on to form either his

12   anticipation or obviousness opinions.

13          He didn't rely on the '989, under the RIMS

14   system, whatever configuration you want to call it at

15   whatever time, he didn't rely on the TV/2 system,

16   whatever configuration at whatever time, and he didn't

17   rely on the RIMS brochure at all.  He didn't have

18   opinions with respect to those three things.

19          So to sit here now and sort of argue what

20   bucket they fall in under 102(a) or 102(b) I think is

21   a frolicking detour because there isn't expert

22   testimony which would permit the jury to conclude that

23   the RIMS system, for example, whatever version or

24   iteration was, it could invalidate any claim for

25   example.

2986

1           The other construct I want to raise is the

2     testimony was that the RIMS system had many versions

3     and many variations starting as early as 1989.  Would

4     I concede there was some RIMS system out there?  Yes.

5     But without any specificity as to what features it

6     actually had, it can't provide the basis under 102(a)

7     or 102(b) to invalidate the claims because we don't

8     have that level of specificity.

9           Certainly the RIMS brochure, I would submit,

10    doesn't have that level of specificity, particularly

11    when you consider that the Lawson's expert couldn't

12    even articulate a reasonable basis as to why it would

13    invalidate any claim and did not do so.

14          MR. McDONALD:  Your Honor, I can address

15    that.  The patents-in-suit actually provide the direct

16    linkage between the description Dr. Shamos relied on

17    in the patent, the '989 RIMS patent on the one hand,

18    and the fact that that RIMS system as described in

19    that patent corresponds to the RIMS system that was

20    known under 102(a) and in public use and on sale under

21    102(b).

22          The section of the patents are in, for

23    example, in the '683 patent, and this language is in

24    all three of them, but in the paragraph beginning at

25    line 10 and continuing to line 35 of column 1 of the

2987

1    '683 patent, it specifically links the Fisher RIMS

2    system "described in U.S. Patent No. 5,712,989."

3         It is that exact system as described.  It

4    describes it as "known requisition purchasing

5    systems."  It's one of the systems that are admitted

6    in the background section of the patent as known as

7    of -- from the April 2, '93 filing date.

8         THE COURT:  Well, it's known.

9         MR. McDONALD:  Yes.

10        THE COURT:  But was it known who, to where,

11   when?

12        MR. McDONALD:  We have other evidence that

13   establishes that, but what this says is that specific

14   system that Dr. Shamos relied on was known.  We've got

15   the corroborating and other information from the

16   inventors and relating to the brochure and their time

17   line that show that that was known and how the RIMS

18   system was known out there in the '92, '93 time frame.

19   Ms. O'Loughlin's testimony, as well, about that.  But

20   the patent establishes --

21        THE COURT:  Ms. O'Loughlin's doesn't testify

22   to that.  Ms. O'Loughlin's testimony was neigh unto

23   useless.  It basically established that she signed

24   some things.  And then she typically thought she was

25   signing truthful things.  And then they used an

1    application and that some version of the RIMS system

2    was in effect when she signed that document, which is

3    the trademark application.  And the attached document

4    is a brochure.  That brochure Dr. Shamos didn't lay

5    any connection to at all.  So that is not probative of

6    when this was in the public domain.

7            If it was a preponderance of the evidence

8    standard, it might very well be something the jury

9    could do, but how could you find that by a clear and

10   convincing evidence when the undisputed evidence from

11   the inventors is that there never was a system such as

12   described in the patent, the '989 patent, which what's

13   his name relied on, Shamos relied on, that everyone

14   would market anywhere.

15           MR. McDONALD:  The testimony --

16           THE COURT:  There were versions that did, but

17   not that one.

18           MR. McDONALD:  But when you put their

19   testimony, and obviously they were bias witnesses

20   fighting this issue, but that time line doesn't lie.

21   Mr. Kinross said he put that time line together with

22   Mr. Momyer looking over his shoulder that shows that

23   all the features relevant to this case were in that

24   RIMS system as of 1993.  That brochure does certainly

25   corroborate and bolster that information.  That's a

1    document Mr. Momyer picked a couple of things where he

2    said, Well, we didn't have all the interfaces

3    developed yet, but he had very little that he said in

4    there that actually was not representative of the

5    system as described in that brochure.

6         We're entitled to that same inference that

7    ePlus has been trying to draw in this case, which is

8    when Fisher came out with some documents distributed

9    into the public, distributed to the U.S. Patent and

10   Trademark Office, and representing the use of that

11   Fisher RIMS trademark in commerce, that that document

12   is a truthful and accurate document.  The testimony

13   from the inventors was that it was put together --

14         THE COURT:  What system is it?  That's the

15   point.  What system is it that's the truthful document

16   to which you are entitled to an inference on?  I think

17   you're entitled to an inference that a publicly filed

18   document is truthful, but it doesn't refer to the

19   patent.

20         MR. McDONALD:  It's April of '93 is when it

21   was filed.

22         THE COURT:  Wait a minute, Mr. McDonald.  You

23   have to stop trying to put something else into the

24   equation and answer what I'm asking you because I'm

25   trying to get to a resolution of this.

2990

1          There's no evidence as to what system was

2     being described in that trademark application, is

3     there?  What date?

4          MR. McDONALD:  Absolutely, Your Honor.

5          THE COURT:  Just tell me who did it.  Don't

6     be larding up with yeah, there is.  Tell me who did it

7     and what did he or she say.

8          MR. McDONALD:  We have the trademark brochure

9     itself was represented as accurate information with

10    respect to its ability to generate requisitions.

11         THE COURT:  Just a minute.  What is the date?

12         MR. McDONALD:  Pardon?

13         THE COURT:  It wasn't dated.

14         MR. McDONALD:  It had a date stamp on it at

15    the Trademark Office of April of '93.

16         THE COURT:  That's the date it was in the

17    Trademark Office.  It wasn't dated.

18         MR. McDONALD:  Well, that's right, but that

19    certainly establishes that it was in existence in

20    April of '93, which is more than one year before the

21    filing date of the patent-in-suit and it represented

22    to the Trademark Office as an example proof of use of

23    the trademark in commerce by that date.  So we do have

24    that date very well established.

25         THE COURT:  That's use of the trademark in

2991

1    commerce, not the system.

2            MR. McDONALD:  Well, the trademark

3    application specifically says the trademark is used

4    with a computer system.  There was --

5            THE COURT:  Of a computer system.  Not the

6    one in the patent.

7            MR. ROBERTSON:  Your Honor, can I just read

8    the cross-examination of Dr. Shamos?  It's right on

9    point here.

10           Question:  And you're aware that the RIMS

11   system starting perhaps the late '80s all the way up

12   to the year 2000 went through many iterations,

13   correct, many different versions?

14           Yes.

15           Which version are you relying on when you're

16   rendering your opinions?

17           Answer:  That described the '989 patent.

18           Question:  So it's only confined to the '989

19   patent, right?  You're not relying on and you didn't

20   offer any testimony with respect to any versions that

21   were in commercial use between the late '90s and 1994,

22   for example, right?

23           Answer:  I don't have personal knowledge, but

24   there was testimony that the '989 patent fairly

25   described the actual RIMS system as it was

2992

1    distributed.

2           Question:  There was also testimony from the

3    inventors in their deposition that many of the

4    functionalities of the '989 patent never implemented.

5    Do you recall reviewing that?

6           Yes.

7           So what you're relying on when you're

8    offering your opinions, though, is just the '989

9    patent; isn't that right?

10          MR. McDONALD:  We're not disputing that that

11   --

12          MR. ROBERTSON:  I'm sorry, no.  Did you point

13   to any other versions or produce any other

14   documentation of a technical nature of the RIMS system

15   as being used between 1989 and 2000?

16          No, I didn't personally because, as I said, I

17   don't have personal knowledge of the RIMS system as

18   distributed.

19          Would it be fair to say that the inventors

20   have personal knowledge of the RIMS system because

21   they worked on it, right?

22          I don't know what knowledge they have.  I

23   know what they said.

24          Well, you know that Mr. Momyer and

25   Mr. Johnson are actually inventors of the '989 patent,

2993

1   correct?

2           Yes.

3           And I then went on to ask him about whether

4   they would be in a better position to understand

5   what's in the patent.  And, of course, he didn't agree

6   with me on that.  But he certainly didn't have any

7   knowledge of any of the versions and disclaimed

8   relying on any of the versions and only relied on the

9   '989 patent.

10          THE COURT:  So your point is that because he

11  didn't, this evidence that they are arguing about is

12  irrelevant?

13          MR. ROBERTSON:  Twofold.  One, there's nobody

14  to testify that whatever system was in effect between

15  1989, let's say, and 1994 invalidates any claim

16  because the expert didn't do it.

17          And No. 2, there's no evidence in the record

18  with specific specificity to show what the features

19  are of these unnamed versions or iterations that

20  existed during that time period to be able to show by

21  clear and convincing evidence that a jury could rely

22  on under *Anderson v. Liberty Lobby*, and could come

23  back with a conclusion as to a finding on that basis.

24          THE COURT:  And that sends the '172, Claim

25  One, invalidity case out the door.

2994

1            MR. ROBERTSON:  I would suggest that or else

2    I would suggest it doesn't permit the jury to consider

3    some unspecified '989 system or RIMS system as an

4    invalidating prior public use or on sale device.

5            THE COURT:  So it results in JMOL on all

6    claims of all patents instead of the way it was

7    presented to me was that it was a '172, Claim One,

8    issue.  Now, I think you're broadening it to try to

9    reach all of the claims, and it was never argued that

10   way.

11           MR. ROBERTSON:  No, sir.

12           THE COURT:  So you're arguing it only with

13   respect to '172, Claim One?

14           MR. ROBERTSON:  Yes, sir.  But I am arguing

15   that an unspecified RIMS system without any expert

16   testimony to offer to the jury that this unspecified

17   system invalidated any claim can't go to the jury.

18   Similarly, just while we're on the topic --

19           THE COURT:  Well, that relates to all the

20   claims.

21           MR. ROBERTSON:  Just for on sale or prior

22   public use.  But the '989 patent still can be

23   considered as prior art for the '683 patent and the

24   '516 patent for anticipation and obviousness based on

25   that and the 2 TV/2 brochures.

1          THE COURT:  So your theory is that what takes

2     102(a) out of the case for '172, Claim One, also takes

3     the 102(a) out of the case for the other claims as

4     well; is that right?

5          MR. ROBERTSON:  Yes, I'm being told.

6          MS. ALBERT:  We're saying they have no right

7     to submit to the jury any theory under 102(a) or

8     102(b) whatsoever.  Their only theory for anticipation

9     would be strictly under 102(e) as to the '989 patent.

10         THE COURT:  And they can't do that because of

11    the commonality of assignment provision.

12         MR. ROBERTSON:  But that is only for Claim

13    One of the '172 patent.

14         MS. ALBERT:  No.

15         THE COURT:  You're asking for JMOL

16    unarticulated on everything.  Do you see what you've

17    done?  And you didn't actually present it that way.

18         MS. ALBERT:  That's true, yes.

19         THE COURT:  Well, isn't that the consequence?

20         MS. ALBERT:  Yes.

21         THE COURT:  What you said in the argument,

22    and I have a big Post-it on here, relates to Claim

23    One, '172 patent, on this whole 103, 102(a), (b) and

24    (e) issue.

25         MS. ALBERT:  So the 102(a) and B issues go to

2996

1   all claims.

2          So, Your Honor, we're saying that there is no

3   theory that could be sent to the jury under Section

4   102(a) or 102(b) because there has been no evidence

5   offered of any RIMS system that existed prior to 1994

6   that was in public use or on sale.  We just don't know

7   which specific version at what particular time having

8   what particular features they would rely on.

9          THE COURT:  And in order to anticipate, the

10  single reference has to hit every element of every

11  claim.

12         MS. ALBERT:  Right.  So we're saying they

13  couldn't have no theory under 102(a) or 102(b) to go

14  to the jury.  Then as to this 103(c), that only

15  applies to Claim One of the '172.

16         Well, the 102(e), our JMOL this morning would

17  apply to all of the asserted claims because the '989

18  patent has been offered as an anticipatory prior art

19  reference against all of the claims.  And if it's a

20  102(e) reference, then we're saying it's not an

21  invention by none.

22         MR. McDONALD:  Your Honor, there is further

23  evidence that contradicts what ePlus --

24         THE COURT:  Just one minute, if you would,

25  please.

 1          But if the only reference is 102(e), then by
 2   another means, according to Ms. Stoll-DeBell in
 3   102(e), that it has to be virtual identity of others,
 4   right?  In other words, is that where your another
 5   argument comes in?
 6          MR. McDONALD:  That's right.  If we're only
 7   going in on 102 anticipation, as opposed to
 8   obviousness, that's when this issue comes up.  And
 9   there is certainly evidence to show because that Claim
10   One of the '172, that's the one that doesn't even have
11   the catalogs in it.  So there is substantial evidence
12   to show that RIMS system did have a sort of database
13   and other features that would anticipate that specific
14   claim all by itself.  There is anticipation.
15          Moreover, on this issue of the RIMS system
16   changing, because I think we're showing that the
17   system was in the marketplace on sale in '92 or early
18   '93.  The question was raised, Well, yes, but what
19   version was it?
20          We did get evidence out of the one of the
21   inventors, he had to admit that the RIMS system, he
22   testified under oath, was pretty much "wrapped up" by
23   1991.
24          This was also corroborated by the time line
25   that shows all the key features that would be related

1  to satisfying the elements of Claim One of the '172

2  patent were in the RIMS system prior to 1993.

3          I understand ePlus can argue all about

4  changes they say were made, but these reluctant

5  inventors still had to admit through that time line

6  and that testimony about the system being wrapped up

7  that there was some firmness to what was in existence

8  by April of '93.  It was a RIMS system that had the

9  key features that were relevant to the claims.

10          THE COURT:  Where is the Kinross comment?

11  I've got it.  It's Exhibit DX 402.

12          MS. ALBERT:  Your Honor, there hasn't --

13          THE COURT:  What do you say about this?

14          MS. ALBERT:  There hasn't been any expert

15  testimony to apply that time line on a claim by claim,

16  element by element basis under the rigorous analysis

17  that's required to prove anticipation.  Nobody

18  performed that analysis.

19          MR. McDONALD:  That's not --

20          MR. ROBERTSON:  The bottom line, Your Honor,

21  if Dr. Shamos didn't take this system, whatever it is,

22  and maybe he did agree that it has some level of

23  detail, and tell the jury why it invalidates, isn't

24  that the end of the inquiry?  Because he didn't do

25  that on the RIMS system.  He didn't do that on what

1   they are going to argue was a TV/2 system in

2   existence.  And he didn't do it on the RIMS brochure.

3        So we just can't send something to the jury

4   where there was no expert opinion to show how it

5   anticipated or rendered obvious every element of all

6   the claims in suit.

7        MR. McDONALD:  I think they're putting more

8   on Dr. Shamos' shoulders than he needs to have.  He

9   compared the claims to the description of the RIMS

10  system in the April '93 filing for patent.  Other

11  evidence establishes that that same product as

12  described in that filing was on sale.  Dr. Shamos

13  doesn't have to provide that evidence in order for the

14  jury to find that it's also prior art for those other

15  reasons.

16       This time line establishes along with the

17  testimony of the system being wrapped up and the RIMS

18  brochure that describes these many key features that

19  are relevant to the claim elements.  This other

20  evidence establishes the facts that the RIMS system

21  was on sale, was in public use, was known in the

22  marketplace in ways that would make it prior art under

23  102(a) and (b).

24       MS. ALBERT:  I don't think the post fact time

25  line of Mr. Kinross establishes a clear and convincing

1    evidence that any system had those features.  As he

2    testified, he made that time line sometime in like

3    2005 without any documents to corroborate it.  And

4    this was just based on his memory 20 years later.

5          MR. McDONALD:  These are adverse witnesses

6    that had every incentive to do what ePlus is trying to

7    do today, which is to try to muck up the evidence of

8    when RIMS had features and things came in later.  But

9    even so, these biased witnesses that are aligned with

10   ePlus put together this time line admitting that it

11   had all of these features that you see going back to

12   1989 to 1992.  So this is very powerful evidence, Your

13   Honor, that should be able to go to the jury on these

14   features.

15         MR. ROBERTSON:  But there's no expert

16   evidence saying whatever is here renders every element

17   of the claim invalid.  You would think if this was

18   powerful evidence, Dr. Shamos would have taken it and

19   said, Yes, I also relied on Mr. Kinross' time line,

20   and let me tell you why each and every element of the

21   claims is satisfied by this document, the RIMS

22   brochure, or any other evidence he has to some

23   commercial use or embodiment of the system.  He didn't

24   do it.

25         I would submit he didn't do it because he

1    couldn't do it, which is essentially what he admitted

2    in his cross-examination.

3             THE COURT:  What did Ms. Eng say about the

4    development of the TV/2 interface?  If I recall

5    correctly, she said quite clearly that they started to

6    work and that whole project wasn't even complete until

7    1995 after she left.

8             MR. McDONALD:  That's a different issue.

9             THE COURT:  No, it isn't, and I'll tell you

10   why it isn't.  Because on Kinross, for example, 1993,

11   it says developed TV interface.  What it is is that's

12   when it started, but you-all have convincingly proved

13   that it may have started in 1993, but it wasn't ready

14   until 1995.  So this evidence is not probative at all

15   of whether this was out in the public domain or was on

16   sale one year beforehand, that it was out in the

17   public domain before August of '94 or on sale one year

18   before, in April of '93.

19            So, I mean, it seems to me that this

20   document, the Kinross document, which has some

21   probative value has been utterly gutted by the

22   testimony of your own witness Ms. Eng.

23            MR. McDONALD:  Your Honor --

24            THE COURT:  She is your consultant and she

25   and Gounaris blew that theory right out of the water.

3002

1        MR. McDONALD:  Well, I think this is

2   consistent with that, but the point is --

3        THE COURT:  How is it consistent with that?

4   Ms. Eng and Mr. Gounaris said what was done at IBM

5   with the TV/2 interface wasn't finished until 1995.

6   How is it consistent with this time line prepared

7   years after the fact where they thought that the TV/2

8   interface was developed?

9        MR. McDONALD:  That was the final

10  development.  They did also testified that at the very

11  beginning of the project they did a prototype to

12  demonstrate all the features were workable in an

13  embodiment of a product.

14       THE COURT:  It didn't work.

15       MR. McDONALD:  It did work.  They had one

16  with a few pages of the catalog.  It wasn't the full

17  thing, but it did work.

18       THE COURT:  What they did is had some slides.

19  They didn't have anything that worked.

20       MR. McDONALD:  The first phase of their

21  interaction between Fisher and IBM was to put together

22  a smaller version of a demonstration model that showed

23  a few pages.

24       THE COURT:  I know you tried like the dickens

25  to get her to call it a demonstration and model, and

3003

1    all it was was a bunch of pictures.  That's all it

2    was.

3            MR. McDONALD:  That's different testimony,

4    Your Honor.  We're taking about two different things.

5            THE COURT:  No, we're not.  We're talking

6    about the exact --

7            MR. McDONALD:  Again, this goes to the weight

8    and credibility of the evidence.

9            THE COURT:  No, it doesn't.  The question is:

10   In deciding whether or not there's clear and

11   convincing evidence, you don't judge the credibility

12   of the evidence, but you look at the evidence to see

13   whether in the aggregate a jury could look at that

14   evidence and conclude firmly a proposition in this

15   proposition that the patent was invalid under the

16   theories being offered.  And that is what you do.  And

17   that's not the same thing as weighing the evidence.

18   It's assessing what it is that the evidence construed

19   in your favor could do.

20           MR. McDONALD:  Right.  And with that April

21   '93 patent filing, the jury has every right to

22   conclude through their common sense and just applying

23   what people do in that they filed the patent

24   application based on the RIMS system as it existed in

25   April of '93, as it was being offered for sale.

3004

1          That would be the logical thing to do.   And
2    the jury could put that into the equation as well here
3    and weigh all the evidence.   That April '93 filing
4    would be logically the most relevant description of
5    the product as it existed one year and four months
6    before the patents in this suit were even filed.
7          THE COURT:   But if you don't have an expert
8    that does anything with any of these on sale issues
9    given the complexity of the system, what difference
10   does it make?
11         MR. McDONALD:   Well, the expert went through
12   detailed description of the RIMS system that the
13   patent itself links to being a known requisition
14   system, and the same timing as the trademark
15   application.   He doesn't have to give them all the
16   different types of prior art in order for the jury to
17   look at the other evidence of the sale and use and
18   public knowledge aspects of the RIMS evidence and say,
19   Yes, it's all the same system.   Of course, they did it
20   at the same time.   If you take that snapshot in
21   April of '93, there's no evidence they had a lot of
22   different RIMS systems floating around at any given
23   moment.
24         The April '93 RIMS system is the April '93
25   RIMS system for all purposes.

1        THE COURT:  The evidence, and it's not

2    disputed as far as I know, is that from the time it

3    was developed until the time the application was filed

4    that it was changed, and it went through something

5    like 40 iterations.  And that's not disputed.  And

6    then in addition to that, the inventors testified that

7    there never was a system implemented at anytime that

8    did all of what was in that patent.

9        Now, is there any evidence to contradict

10   either one of those statements?

11       MR. McDONALD:  Well, that's very general

12   testimony, Your Honor.

13       THE COURT:  I understand that, but I'm asking

14   you general or specific, is there anything to respond

15   to that?

16       MR. McDONALD:  Well, I think that testimony

17   to some extent is contradicted by the RIMS brochure

18   that they distributed in the pubic.  They are in

19   conflict.  Their testimony to some extent is in

20   conflict with what the Fisher company was representing

21   publicly were the capabilities of that system.  So,

22   yes, there is a conflict in the evidence of that.

23       THE COURT:  And it comes from the Fisher

24   brochure.

25       MR. McDONALD:  Yes.  They testified that some

1    of the features -- oh, we didn't do that.  Well, the

2    brochure represented that it does do that.  So there's

3    a conflict right there.  Some of their testimony is in

4    conflict with the time line here.  And also I think

5    it's in conflict with just the logic here that if they

6    were really making a bunch of changes to the Fisher

7    RIMS system after April of '93, why do all the patents

8    in this suit filed not until August of '94 only rely

9    on that description that's one year and four months

10   old?  Why wouldn't they have given an undated

11   description using whatever version of RIMS had changed

12   between April of '93?

13           THE COURT:  There's no evidence in the case

14   that addressed that issue.

15           That's really a specialized topic about

16   whether you change what's in an application and update

17   it.

18           MR. McDONALD:  This is a new application.

19           THE COURT:  You proved that yourself.

20           All right.  Let me resolve this.  I'm going

21   to hold in abeyance ePlus' motions for JMOL on the

22   issue of invalidity on all scores on this.

23           I'm going to deny the motion of Lawson for

24   JMOL on the invalidity issues.  And I'm going to send

25   the invalidity issues to the jury.

1          If I were deciding the case, I would find

2     that there is no clear and convincing evidence to

3     prove any component of validity, but there are factual

4     discrepancies that a jury needs to resolve.  And when

5     we have a complete record, a verdict comes out the

6     wrong way for somebody, I'm sure we'll have, for

7     ePlus, we'll have a motion on that.

8          If, as I expect, the jury returns a verdict

9     in favor of ePlus on these issues, then I won't have

10    to deal with the JMOL, but I have reserved it.

11         What do we do here with this instruction?

12    Let's get back to the instructions.

13         MS. STOLL-DeBELL:  Your Honor, we would ask

14    under Rule 37 that they be precluded from making this

15    argument that we can't assert obviousness for Claim

16    One of the '172 patent because they did not assert

17    that in their interrogatory responses.

18         THE COURT:  But you allowed them to put it

19    into the final pretrial order without objection, and I

20    have to show -- I don't apply the Rule 37 test to

21    something that's in that order, do I?

22         MS. STOLL-DeBELL:  Your Honor, that was their

23    portion of the pretrial order.  We had P.O. Writer

24    plus J-CON in the final pretrial, and we were still

25    precluded there.  Their section of the pretrial order,

1   we had no control over it, and it was not a joint

2   section, and they didn't put it in their interrogatory

3   responses.

4          MS. ALBERT:  Your Honor, we did raise the

5   103(c)(1) issue in our opposition to Lawson's motion

6   for summary judgment of invalidity on obviousness back

7   whenever that was filed in June.

8          MS. STOLL-DeBELL:  That was after discovery

9   closed.  It didn't relieve them of their obligation to

10  disclose their theories in their contention

11  interrogatories.  We've been held very firmly to that

12  obligation in this case, and we have been precluded

13  from theories that we raised in the pretrial order,

14  and they should be held up to the same standard.

15         If that was their theory, it needed to go in

16  their interrogatories responses.  It wasn't there and

17  they should be precluded.

18         We went all the way through this trial, Your

19  Honor, and they didn't bring it up once.  It wasn't in

20  their jury instructions.  They asked their expert --

21         THE COURT:  I'll take care of that later if

22  it comes to pass that I need to take care of it.

23         MS. ALBERT:  It would not have been in a jury

24  instruction because it's a pure matter of law.

25         THE COURT:  It's a matter of law anyway.

3009

1          MS. STOLL-DeBELL:  They put them in their

2     jury instructions now for the first time.

3          THE COURT:  All right.  Let's go.  We're on

4     29.  And we take that out at the bottom.  What else?

5          MR. ROBERTSON:  Yes, Your Honor.  So we

6     agreed to take out line 3 on 29.

7          THE COURT:  No, you have agreed to take out

8     all of paragraph 3.

9          MR. ROBERTSON:  I'm sorry, yes.

10          THE COURT:  And the word "and" and put a

11     period after the word "art" on 29.

12          MR. ROBERTSON:  Yes, sir.  And we need to --

13          MR. CARR:  The issue, Your Honor, is whether

14     '172 should be included in that list of patents that

15     is in No. 2.  That's the issue.

16          MR. ROBERTSON:  It's agnostic as to any

17     patent right now.

18          THE COURT:  There's nothing in there.

19          MR. McDONALD:  So do we agree that the "of

20     the '683 and '516 patents" should come out?

21          MR. ROBERTSON:  I'm looking at the Court's

22     instruction.  So if you go back to the Court's

23     instruction, it doesn't specify any patents.  So we're

24     agreeing to the Court's construction as we understand

25     the Court's ruling.

3010

1          MS. STOLL-DeBELL:  Okay.

2          THE COURT:  Everybody agree that that's the

3   right instruction given the reservations?

4          Is there an objection to 30?  Or what's the

5   next one to which there is an objection?

6          MR. ROBERTSON:  So --

7          THE COURT:  Do you have an objection to 30?

8          MR. ROBERTSON:  Yes, sir.

9          THE COURT:  What is it?

10          MR. ROBERTSON:  No. 2 we think should come

11   out because there's no patent at issue more than one

12   year before the filing date of the patent or before

13   the invention was made.

14          MR. McDONALD:  We would agree with that.

15          THE COURT:  Yes.  It should be -- wait a

16   minute.  The whole 2 comes out, doesn't it?

17          MR. ROBERTSON:  Yes, sir.

18          MR. McDONALD:  That's right.

19          THE COURT:  Right.  And then --

20          MR. ROBERTSON:  And I guess the rest can stay

21   the same in light of your ruling, Your Honor.

22          THE COURT:  And then you renumber these

23   things.  Does everybody agree?

24          MR. McDONALD:  Agreed.

25          THE COURT:  All right.

1          MR. ROBERTSON:  I'm sorry, Your Honor.  I'm
2    reminded at one point we'd like to come to agreement.
3    I think we did on the break as to what prior art can
4    be considered either for on sale, public use, the
5    patents or what not, and I think the list that we had
6    and we're going to propose an instruction would be
7    that the '989 patent, which Dr. Shamos did testify,
8    the TV/2 brochure, which Dr. Shamos did testify, the
9    TV/2 general information manual, and then now there's
10   this RIMS system, TV/2 system, and RIMS brochure.
11   Those latter three we disagree have a level of
12   specificity necessary for the jury --
13          THE COURT:  No, because they have insisted
14   it's as described in the '989.  So it's the RIMS
15   system and the TV/2 system as described in the '989.
16          MR. ROBERTSON:  Well --
17          THE COURT:  That's it.
18          MR. ROBERTSON:  All right.
19          THE COURT:  That's their argument.  And
20   that's the limit on it.  So the jury will never know
21   what RIMS system there is if there are 40 different
22   versions of it and we don't tell them.
23          MR. McDONALD:  Just to be clear, the type of
24   prior art it could be, though, with RIMS system could
25   be on sale, public use --

3012

1          THE COURT:  That's irrelevant to what I'm

2    talking about.  The identity of the prior art is the

3    patent of the '989 patent, the RIMS system, and the

4    TV/2 system as described therein in those two

5    brochures.  And then --

6          MR. McDONALD:  The TV/2 system is not

7    described in the RIMS patent.  It's just the RIMS

8    system --

9          THE COURT:  The TV/2 system is described some

10   in there.  It's not described in the detail that RIMS

11   --

12         MR. ROBERTSON:  I think we agree that it's

13   the TV/2 system that's described in the two brochures.

14         THE COURT:  In the brochures?

15         MS. STOLL-DeBELL:  Yes.

16         THE COURT:  What I'm saying is you do

17   describe it in the patent because you incorporate

18   those two brochures in the --

19         MR. ROBERTSON:  Not in the '989.

20         THE COURT:  Not in the '989.

21         MR. McDONALD:  It's very confusing to have

22   the one patent in the other patent.

23         MR. ROBERTSON:  Let me just make clear for

24   the record, though, I agree that's what they are

25   proposing.  I didn't want to suggest that we were

1    agreeing that ePlus agrees that those three pieces of

2    those three systems or brochure are prior art.

3                MR. McDONALD:  But there's TV/2 literature,

4    the two pieces of literature we agree on, the RIMS

5    patent we agree on.  We also assert that the RIMS

6    brochure is prior art evidence.

7                THE COURT:  What's the RIMS brochure?

8                MR. McDONALD:  What is it?

9                THE COURT:  Which RIMS brochure?

10               MR. ROBERTSON:  The advertiser's brochure

11   attached to the trademark application, Your Honor,

12   that Ms. O'Loughlin testified to.

13               THE COURT:  That's different than the RIMS

14   brochure that's referred to in the patent or the same

15   one?

16               MR. McDONALD:  There is no RIMS brochure

17   referred to.  There's a Technical Viewer/2 system

18   that's referred to.

19               THE COURT:  TV/2, okay.

20               MR. McDONALD:  But the RIMS brochure is DX

21   61, and also in the file it's DX 62.  It's the

22   identical brochure.  So it's just one RIMS brochure.

23   That's evidence.

24               There's also the testimony about the RIMS

25   system being on sale.

3014

1        THE COURT:  I'm not going to tell them about

2   that.

3        MR. McDONALD:  Well, we're entitled to have

4   them know that it was on sale because that's

5   additional kind of prior art.

6        THE COURT:  Whether it was on sale is a fact

7   issue, and I would find that it wasn't on sale.  A

8   reasonable juror, I think, would find that it wasn't

9   on sale.  So I'm not going to tell them that it was on

10  sale because that's their province, isn't it?

11       MR. McDONALD:  Well, it's a fact issue is

12  what I'm saying for the jury?

13       THE COURT:  Whether it's on sale is a fact

14  issue.

15       MR. McDONALD:  Right.  But we're saying

16  that's one of our contentions.  I think we're trying

17  to get a list of what's being contended here.

18       MR. ROBERTSON:  I regret to tell Your Honor I

19  may have misspoke on this RIMS brochure because Dr.

20  Shamos didn't offer testimony about it, so we didn't

21  offer rebuttal testimony that it would, in fact, not

22  invalidate.  So we're in disagreement.

23       THE COURT:  Leave this alone.  I'm not going

24  to deal with this right now.  Let's get on to what we

25  have got on the table.  You'll have to deal with that

1   later.

2           All right.  What's the next objection on the

3   instructions you were given?

4           MR. ROBERTSON:  I'm sorry, before we get to

5   32, I think 31, Your Honor, we wanted to insert the

6   one patent that's alleged to be anticipated.  In this

7   case, Lawson can contend that each of the claims of

8   ePlus patents are anticipated by, and we wanted to put

9   in the '989 patent.

10          THE COURT:  Do you object to that?

11          MR. McDONALD:  We don't object to adding

12  that.  We just think that the additional description

13  of the RIMS system should also be listed as

14  anticipation.

15          MR. ROBERTSON:  We'd object to that.

16          MR. McDONALD:  That's what you said we're

17  going to move on from that.

18          THE COURT:  I'm not going to deal with that

19  now.  What I'll do is at the point -- you-all are

20  going to have to work out how to deal with this or I'm

21  going to have to decide it, and I'll just say the

22  people contend that the prior art is such and such.

23  And you have to decide what the prior art is.

24          The people that contend that the anticipating

25  is, and you'll have to decide whether it anticipates.

1    And I'll do that in a separate instruction, and I

2    don't need to modify these to do that.  So you-all

3    need to prepare that list and help me see, each of

4    you, what your contentions are on those points.

5             So any 32?

6             MR. ROBERTSON:  No, sir.

7             MS. STOLL-DeBELL:  Actually, on 32, Your

8    Honor, I think we'd like to say in the second line,

9    Lawson contends that all the claims of ePlus' patents

10   were anticipated and/or rendered obvious.  So as it

11   was originally drafted, I think it just said

12   anticipated, and then I added "rendered obvious," but

13   it really should be "anticipated and/or rendered

14   obvious," to make it less confusing.

15            THE COURT:  You took out "rendered obvious"

16   in your instruction on this.  You took out

17   "anticipated" and put in --

18            MS. STOLL-DeBELL:  I know.  That was a

19   mistake, Your Honor.

20            THE COURT:  All right.

21            MR. ROBERTSON:  Your Honor, there's a

22   separate instruction on obviousness.

23            THE COURT:  Yeah.  I don't think that we're

24   going do that.  I'm trying to keep this in a discrete

25   breakout for this jury to understand, and all it

```
 1    does -- quite using the jury -- let me tell you.  I'm

 2    not using instructions to lard it up.  And I'm now at

 3    the point where if I find that what you're doing is

 4    trying to lard it up, I'm just going to go throw it

 5    out because the obligation here is to give them a

 6    correct and reasonable instruction.

 7              I already have instructions later on

 8    obviousness.  And that's what we're going to do.

 9              MS. STOLL-DeBELL:  Okay.

10              THE COURT:  We're not going to add it

11    together.  That's confusing and causes problems.  So

12    any objections to 32?  I'll get to obviousness later.

13              MR. ROBERTSON:  No objection, Your Honor.

14              THE COURT:  None other than wanting to put in

15    anticipated and obvious; is that right?

16              MR. McDONALD:  And/or obvious.

17              THE COURT:  And or, yes.

18              Prior public use.

19              MR. ROBERTSON:  The same issue, Your Honor.

20              THE COURT:  What's the same issue?

21              MR. ROBERTSON:  We want to enter "and/or

22    rendered obvious."

23              THE COURT:  Well, I'm not going to do that.

24    I'm going to deal with obviousness in other

25    instructions.
```

3018

1        MR. McDONALD:  Understood.  We want the same

2    thing, but we understand the answer is the same.

3        There is at the bottom of that page, this is

4    some language we had proposed to have eliminated when

5    we were discussing with Mr. Robertson before.  He said

6    he would think about it.  Do you have an answer?

7        MS. STOLL-DeBELL:  We didn't think

8    experimental use was really an issue in this case.

9        MR. McDONALD:  It would be very confusing for

10   the jury to hear about experimental use.

11       MR. ROBERTSON:  I'll agree to strike it, Your

12   Honor.

13       THE COURT:  Experimental use or determine if

14   it was capable of performing its intended use?

15       MR. McDONALD:  The whole last sentence that

16   begins with the word "if."

17       THE COURT:  I know, but there's more than

18   just experimental use in there, and I thought this was

19   in simply because of what went on over at the IBM and

20   whatever you call it, the IBM project.  That's what

21   they were doing, it seems to me.

22       MR. McDONALD:  This relates to there's a very

23   discrete exception to on sale, which is experimental

24   use, and there's no evidence on it.

25       MR. ROBERTSON:  I actually made a note in the

1   margin about TV/2, Your Honor.  So let me press and

2   say we'd like to keep that language in.

3        MR. McDONALD:  Moreover, that's a specific

4   affirmative thing that should have been disclosed in

5   their interrogatories.  They never disclosed an

6   experimental use exception to the on sale.  So it

7   should not come in for that reason as well.

8        MR. ROBERTSON:  This was their burden.  They

9   put on a witness.  We cross-examined.  I thought we

10  established these facts.  I can't tell you what their

11  witness is going to say before they get on the witness

12  stand.  And we dealt with it as we did with Ms. Eng

13  and Mr. Gounaris.

14        THE COURT:  Did you ask them an interrogatory

15  that said, Tell us what your contentions are as to

16  this in response to our contention of on sale bar?

17        MR. McDONALD:  Yes, we presented the on sale

18  bar as one of the reasons for invalidity.  We asked

19  for their contentions in response to that.

20        THE COURT:  What did they say?

21        MR. McDONALD:  They didn't say anything about

22  experimental use.

23        MR. ROBERTSON:  I didn't know -- they didn't

24  tell us the facts about TV/2.  All they said is we're

25  going to rely on TV/2.  And it was the brochures that

1   were identified.  So now they brought a witness live

2   and they testified and we elicited that there's been

3   experimental use.

4        MR. McDONALD:  Ms. Eng, I think, has met

5   Mr. Robertson more than once before, about five years

6   ago.  I don't think he can say anything she had to say

7   was a surprise.

8        MR. ROBERTSON:  She was your consultant.  I

9   couldn't talk to her.  I could only depose her.

10        MR. McDONALD:  You could have talked to her.

11        MR. ROBERTSON:  I don't think ethically I

12   could have once you identified her as a consultant.

13   But let's move forward.  I think it's appropriate we

14   have this last sentence in here.  I think it was from

15   a standard instruction, and it's an accurate statement

16   of the law.

17        THE COURT:  Well, unless you-all show me

18   something that knocks it out because of a failure to

19   provide discovery -- I think what happened here is

20   that the issue became framed far differently after

21   discovery and in the trial and in the pretrial order.

22   And you-all basically preserved all this in the

23   pretrial order.  And I don't know that this is an

24   instance where the discovery actually called for this

25   given the framing of the issues at that time.

1          MR. McDONALD:  Your Honor, referring to the

2    pretrial order, there's no reference at all to

3    experimental use in the pretrial order.

4          THE COURT:  No.  You preserved the issue of

5    on sale bar, and then it became crystalized at the

6    trial.

7          MR. McDONALD:  I think experimental use has

8    to be --

9          THE COURT:  I'll let you-all research it and

10   brief it.  These are things you could have raised a

11   long time ago.  You didn't.  And I'm not going to have

12   them raised here.  I have to go back and check every

13   piece of paper in order to make it.  And I have found

14   that when I've checked paper based on assertions, the

15   partner doesn't also bear out the assertions in this

16   case.  And I've had that on both sides.  I'm not

17   levying blame on one side or the other.  But I can't

18   make these decisions without having the evidence and

19   I'm not going to.

20         MR. ROBERTSON:  Just so it's clear on the

21   record, Your Honor, I understand Your Honor's earlier

22   ruling.  Our position is there shouldn't be any prior

23   public use instruction, but I understand the Court's

24   ruling.  I just don't want my acquiescence in this to

25   suggest that --

3022

1          THE COURT:  Do you think that anybody who

2     reads this record would believe that you ever

3     acquiesced in anything?

4          Okay.  34.  There are no objections to 34?

5          MR. ROBERTSON:  On 34, Your Honor, there is

6     public use or knowledge in there, but I understand the

7     Court's ruling, and given the Court's ruling, we had

8     some suggested language, but we will now withdraw that

9     understanding it's over our objection.

10          THE COURT:  35.

11          MR. McDONALD:  35, Your Honor, I think there

12     was just on line 3, let's start there.  The

13     "inventors," I think that word should be "inventions."

14          THE COURT:  It's there.

15          MR. McDONALD:  That's already been corrected.

16          THE COURT:  The first thing is they talk

17     about anticipated.

18          MR. McDONALD:  Right.  We would repeat our

19     request that be in or rendered obvious, understanding

20     that you already ruled on that issue.

21          THE COURT:  I think, don't we get back here

22     and deal with that in the obviousness?  If we don't,

23     we'll add it back there, but I just don't want to

24     confuse the jury.

25          MR. McDONALD:  Understood.

1          THE COURT:  Because there are certain

2    components of the ensuing text that don't relate to

3    obviousness, the way the instruction has been prepared

4    from the model instructions and the once you-all

5    tendered.  So I'm trying to keep it all together.

6          Now, you object to "in order to be on sale,

7    the invention" --

8          MR. McDONALD:  No, Your Honor.  We'll just

9    withdraw that objection.  We'll leave it in.

10         THE COURT:  So you're fine with 35 as it is.

11         You're fine with 35 as it is with your

12   objection to the whole concept.  Is that right,

13   Mr. Robertson?

14         MR. ROBERTSON:  Yes, sir.

15         THE COURT:  Okay.  36.

16         MR. ROBERTSON:  Your Honor, what we'd like

17   with respect to this printed publication is to add

18   just a level of specificity as to what the printed

19   publications are that the jury should be considering.

20   And one of the reasons we're pressing that, Your

21   Honor, is because you will recall there were some

22   other suggestions with respect to the J-CON system and

23   the P.O. Writer system that we understand are now not

24   at issue any longer.

25         And there were questions by the jury with

1    respect to those systems.

2          MR. McDONALD:  I don't know if we have to

3    talk about that.  I don't think we have a problem

4    specifying what we're talking about when we say

5    "printed publications."  We don't dispute that these

6    two TV/2 documents should be amongst the list.  We

7    would just add a third one, the RIMS brochure.

8          MR. ROBERTSON:  Again, Your Honor, we agree

9    that the TV/2 general information manual and the

10   brochure should be there.  We are in disagreement on

11   the RIMS brochure.

12         THE COURT:  And you disagree why?

13         MR. ROBERTSON:  Well, because, first, it

14   doesn't have a level of specificity that a jury could

15   find by clear and convincing evidence that it

16   validates, and there was no expert testimony

17   whatsoever that would permit the jury to draw that

18   conclusion under the standard.  And we believe the

19   cases we've cited to you before about the requirement

20   for expert testimony --

21         THE COURT:  KSR?

22         MR. ROBERTSON:  That's *Kioto* and *Proveris* and

23   *Innogenetics*.

24         THE COURT:  All right.  Well, I thought you

25   objected to it because there wasn't any factual basis

1    to conclude when it was --

2            MR. ROBERTSON:  Well, there's no date on it,

3    but I will concede it was attached to a trademark

4    application that has a date.

5            THE COURT:  Filed in '92.

6            MR. ROBERTSON:  Yes, sir.

7            MR. McDONALD:  Filed in April '93.  April

8    '93.

9            MR. ROBERTSON:  I think a reasonable

10   inference could be that it existed in April of 1993.

11   I won't quibble with that.

12           THE COURT:  So what do you want to do?  Isn't

13   this just going to be picked up in you all's

14   instruction that we contend that this is prior art.

15   We contend that it's not.  It's up to you, the jury,

16   to decide which it is.

17           MR. ROBERTSON:  That's fine, Your Honor.  I

18   think that will be a good place to focus it.

19           THE COURT:  The second paragraph you wanted

20   to take out, but that was basically because you didn't

21   think there was any evidence on that.

22           Mr. Robertson, I was talking to you.  They

23   don't object to it.

24           MR. ROBERTSON:  To taking it out?

25           THE COURT:  They don't object to the

3026

 1    instruction I'm giving.  You want it taken out.  Why?

 2    What the Sam Hill is going on?

 3              MR. ROBERTSON:  We can leave it in, Your

 4    Honor.

 5              THE COURT:  Okay.  Come on.  Let's go.

 6              MR. McDONALD:  On the second page, Your

 7    Honor, we've reached agreement that those last two

 8    sentences of the penultimate paragraph on issued

 9    patent is a printed publication.  A published patent

10    application is a printed publication as of its

11    publication date.  We both agree those can be

12    stricken.

13              THE COURT:  I'm taken it out then.  Far be it

14    from me to stand in the way of disagreement.

15              37, any objections to 37?

16              MS. STOLL-DeBELL:  We pretty much reached an

17    agreement on this one, Your Honor.

18              THE COURT:  Good.

19              MS. STOLL-DeBELL:  And you can actually look

20    at ePlus' version.

21              THE COURT:  Look at ePlus' version.

22              MR. McDONALD:  Let's take it from the top.

23              THE COURT:  Take out a prior issued patent on

24    the third line.  Do you all agree?

25              MS. STOLL-DeBELL:  Yes.

```
 1              THE COURT:  All right.  And take the second
 2     sentence out, right?
 3              MS. STOLL-DeBELL:  Yes, Your Honor.
 4              THE COURT:  It's the second paragraph and the
 5     second sentence.  Same thing.  The paragraph first,
 6     you-all agree that should come out?
 7              MS. STOLL-DeBELL:  Yes.
 8              THE COURT:  All right.  And then second comes
 9     out?
10              MS. STOLL-DeBELL:  Yes.
11              THE COURT:  And then in this case Lawson
12     relies on the following as a prior art -- as a patent
13     prior art patent.
14              MS. STOLL-DeBELL:  Yes.
15              THE COURT:  As a prior art patent to the
16     patents-in-suit.  And that then is Johnson, et al.,
17     right?
18              MS. STOLL-DeBELL:  Yes.
19              THE COURT:  And we take out these others.
20     Okay.
21              In this case, okay, we take out ePlus.  We
22     take out "admits that the King and Dworkin patents are
23     prior art but it."  Okay.
24              All right.  That's fine.
25              MR. McDONALD:  Your Honor, on that one, I
```

                                                          3028

1    think we should fix title to it as well.

2            THE COURT:  We don't have any titles.  The

3    titles are simply for you-all to have something to go

4    by.  The jury's version has the number.  It has no

5    title and it has no footers with authority.  They are

6    just for you and for us to talk about.

7            MS. STOLL-DeBELL:  Okay.

8            THE COURT:  So the second page is okay of

9    that.

10           Now we're on obviousness.

11           MR. ROBERTSON:  We have number 38 we wanted

12   to insert the '683 and '516 on the basis of this '172,

13   but we now agree with the Court's construction based

14   on the ruling.

15           THE COURT:  And your objection there to that

16   is preserved, I take it; is that what you're saying?

17           MR. ROBERTSON:  Yes, sir.

18           THE COURT:  So are you in agreement with

19   No. 38, Lawson?

20           MR. McDONALD:  We have no objections to 38.

21           MR. ROBERTSON:  Actually, Your Honor, I

22   should just note for the record, though, on 36, it's

23   printed publication, we had an objection to that, but

24   I understand the Court's ruling.

25           THE COURT:  All right.  39?

3029

1          MR. ROBERTSON:  We have no objections, Your

2     Honor.

3          MR. McDONALD:  No objections, Your Honor.

4          THE COURT:  I would say at this point we

5     would put in either here or someplace we have to put

6     in what you contend is the prior art.  One way to do

7     it is to say in the front up by anticipation that you

8     consider it anticipates and they consider it's

9     disputed.  And you have to decide.  And then do the

10    obviousness as a separate one back here if they are

11    different.  And then I'll just stick them in as an (A)

12    instruction behind whatever instruction they follow.

13         MS. STOLL-DeBELL:  Okay.

14         THE COURT:  You'll get that to me tomorrow.

15    Non-pejorative, non-larded up.  Okay?

16         MS. STOLL-DeBELL:  Okay.

17         THE COURT:  40, any objections?

18         MR. ROBERTSON:  No, Your Honor.

19         MR. McDONALD:  No, Your Honor.

20         THE COURT:  41?

21         MR. ROBERTSON:  No, Your Honor.

22         MR. McDONALD:  No objections.

23         THE COURT:  42?

24         MR. ROBERTSON:  We both had some changes

25    here, but I think we worked out most of them.

3030

1        THE COURT:  Somebody want to tell me what you

2   want to do?

3        MR. STRAPP:  Your Honor, for paragraph 2

4   where it starts, "Was there longfelt," the parties

5   agreed to add in the words after the comma "but

6   unresolved."

7        MR. ROBERTSON:  "Longfelt, but unresolved."

8        THE COURT:  Wait a minute.  All right.

9        MR. STRAPP:  And paragraph No. 6, the parties

10  agreed to strike after field strict comma or Lawson.

11       THE COURT:  What?

12       MR. STRAPP:  It should read, "Did others in

13  the field praise," and then strike "or Lawson."

14       THE COURT:  Oh.  How did that get in there?

15       MR. STRAPP:  And then the last change the

16  parties agreed to make, if you take a look at ePlus'

17  red line version, on the next page after the

18  instruction we added a sentence, the parties agreed

19  on, that states, "answering any, or all, of these

20  questions yes may suggest that the claim is not

21  obvious."

22       THE COURT:  Well, you know I think that's

23  also in the model instruction, but why tell them that?

24  That's a silly sentence.  Why would we do that?

25       MR. ROBERTSON:  Your Honor, we withdraw it.

3031

1          THE COURT:  What have we been telling them up

2   to that time?  All right.

3          All right 43 is out.  Right?

4          MR. STRAPP:  Yes, 43 is out.

5          THE COURT:  And 44?

6          MR. ROBERTSON:  No objection.

7          THE COURT:  All right.

8          Does that take care of the instructions?  I

9   need to do the instruction that I'll put in that says

10  about the advice of counsel.  And I read it to you,

11  and you approved it, but I want to make sure that

12  you-all agree.

13         MR. McDONALD:  I don't think we actually

14  heard it, Your Honor.

15         THE COURT:  Yes, you did.  It's in the

16  record.  This one somebody can find.  I told you I'm

17  going to tell the jury this, and I read it to you.

18         Jurors, the other day when Mr. Christopherson

19  testified, there was some testimony about whether he

20  or other lay witnesses at Lawson formed a viewpoint

21  about whether Lawson infringed the patents or whether

22  Lawson obtained an opinion of counsel of

23  non-infringement or invalidity of the patents.  I

24  instruct you now that I've excluded all that

25  testimony, and I'm asking you to disregard it.

1          MR. McDONALD:  We do have an objection to a

2   part of that, and that's the part that would exclude

3   the lay testimony.  We don't think the fact that we

4   proffered nonprivileged evidence on the issue should

5   --

6          THE COURT:  This is the language that you

7   proposed.  Oh, no.  This came from ePlus.

8          MR. McDONALD:  Our proposal was to focus on

9   the opinion of counsel issue and just have the jury

10   disregard the evidence relating to that issue, but

11   allow the testimony about the analysis apart from

12   counsel.

13          So we had proposed jury instruction No. 3

14   that says, "Lawson had no duty to get an opinion from

15   counsel on whether or not it infringes ePlus' patents.

16   Both parties in this case have received advice from

17   counsel without disclosing that advice to the other

18   party.  This is normal.  You may make no

19   determinations based on the fact that Lawson did not

20   disclose the opinion it received from its Lawson's to

21   ePlus.  That fact has nothing to do with this case."

22          MR. ROBERTSON:  Your Honor, we'd object to

23   that.

24          THE COURT:  I'm not giving that.  I'm going

25   to strike the part that says whether he or other lay

1  witnesses at Lawson formed a viewpoint about whether

2  Lawson infringed the patents, and it will read, "The

3  other day Mr. Christopherson testified there was some

4  testimony about whether Lawson obtained an opinion of

5  non-infringement or invalidity of the patents.  I

6  instruct you now I've excluded all that testimony and

7  I'm instructing you to disregard it."

8          MR. McDONALD:  Our objection, Your Honor,

9  just to be clear, is that we do think the jury needs

10  to be clear that the fact that we didn't produce the

11  advice shouldn't be held against us in a sense.

12  That's what we think is missing.

13          MR. ROBERTSON:  I think the instruction makes

14  that clear and is adequate.

15          THE COURT:  I'll just add that has nothing do

16  with the case.

17          All right.  And that will be inserted in

18  instruction number No. 13A.

19          Now, is there anything else I need to go over

20  here with the instructions?

21          MR. ROBERTSON:  Well, Your Honor, we need to

22  get together and give you a summary of what the prior

23  art is going to be.  I would anticipate we could do

24  something like Lawson contends that the prior art at

25  issue is X and ePlus contends the alleged prior art

3034

1  involved is Y.

2          THE COURT:  It's up to you to decide these as

3  a factual matter based on the instruction I give you

4  on those points, right?

5          MR. ROBERTSON:  Right.  The other thing we

6  have, Your Honor --

7          THE COURT:  Is that what you're going to

8  prepare?

9          MS. STOLL-DeBELL:  Yes, sir.

10          THE COURT:  Where is the first time prior art

11  is mentioned?  Is it the same prior art for

12  anticipation and obviousness now?  Huh?

13          MS. STOLL-DeBELL:  Not exactly.  The RIMS

14  stuff is anticipation and obviousness.  TV/2 is just

15  obviousness.

16          THE COURT:  Then you need to do one for

17  anticipation and one for obviousness.

18          MS. STOLL-DeBELL:  Okay.

19          THE COURT:  All right.  Wait just a minute.

20  Wait just a minute.  Let's go back to the one about

21  scope of the prior art.  I don't think that would be

22  right then if you're right.  Back near the back

23  there's something about scope of the prior art.

24          MR. STRAPP:  Your Honor, there's a summary of

25  invalidity defenses.  Maybe it would make sense to put

3035

1    it there.

2              THE COURT:  We'll just solve this problem

3    first.

4              No. 39, the prior art that you considered

5    previously for anticipation is also prior art for

6    obviousness.  We can't say that then in light of what

7    Ms. Stoll-DeBell just said, right?

8              MS. STOLL-DeBELL:  Right.

9              THE COURT:  So this will be replaced by --

10             MS. STOLL-DeBELL:  Your Honor --

11             THE COURT:  The definition is the same, the

12   paragraph is the same.  Why don't we do this.  Why

13   don't we just have you all prepare Lawson contends

14   that prior art for obviousness is X.  EPlus contends

15   that prior art for obviousness is Y.  It's up to you

16   to decide what is prior art for obviousness.  And

17   we'll put that in here at No. 39.

18             I'm going to call that new obviousness, which

19   I hope you'll have over here in the morning.

20             MS. STOLL-DeBELL:  Okay.

21             THE COURT:  All right?

22             MS. STOLL-DeBELL:  Yes.

23             THE COURT:  All right.  And then back at

24   instruction No. 30.  After No. 30, it will be 30A, and

25   you will say, Lawson contends that prior art for

1   anticipation purposes is X.  EPlus contends that it is

2   Y, and it's up to you to decide.

3          MR. ROBERTSON:  Just for the record, Your

4   Honor, I understand your ruling on the '989 patent and

5   the JMOL is going to be granted, so, obviously, that

6   would be over our objection with respect to that

7   patent.

8          We don't have an allegation as to what the

9   prior art is.

10          THE COURT:  Just say ePlus disagrees that any

11   of this is prior art.  The logical extension of what I

12   said is if I were negotiating with the other side

13   would be to say, ePlus contends that none of this is

14   prior art.  If you don't agree with any of it, that's

15   the only way you can articulate it, right?

16          MR. ROBERTSON:  Yes, Your Honor.

17          THE COURT:  Okay.  Those two things I will

18   expect over.  That's a 30A and a new whatever it was.

19          MR. McDONALD:  39.

20          THE COURT:  39.  Okay.

21          Now, is there any other instruction I need to

22   deal with?

23          MR. ROBERTSON:  Your Honor, we wanted to

24   press again our request that there be instruction that

25   demonstratives are not evidence.  We think,

1  particularly in a patent case, it can be very

2  confusing for a jury when they see a lot of documents

3  that can constitute evidence such as evidence produced

4  by the parties --

5          THE COURT:  I agree that that's an

6  appropriate instruction.  I have a substantial

7  disagreement with your fundamental theory.  When you

8  try cases the way you tried them and you use these

9  demonstratives as the vehicle for presenting complex

10 testimony and bullet pointing it, the jury inevitably

11 is going to come back and say I'd like to have it.

12 And I think you ought to give it to them because

13 you're going to use it.  You've used it in the

14 testimony.  You've used it in the argument.  And you

15 have to agree on what you're going to give to them.

16 But you have an absolute right to be told that the

17 demonstratives are not exhibits and can't be

18 considered.  And you have an absolute right to keep

19 the demonstratives -- there actually is a case about

20 whether demonstratives go back to the jury.  And I

21 think the case is *United States v. Johnson*, and an

22 immanent jurist dissented in the case while he was

23 sitting on the Fourth Circuit.  And I can't remember

24 which way it went, in any event, I felt that's a help,

25 but that's something you-all can do only if you agree

1   to it.

2          You had things with Dr. Shamos that

3   illustrated very well what your theories were.  And

4   remember what you're asking them to take care of, to

5   think about, and to keep track of.

6          And you had things that explained very well

7   what your theories were.  And I am not trying the case

8   for either one of you, but if you want the

9   instruction, I will give an instruction.

10          MR. ROBERTSON:  We had an agreed instruction

11   on it.

12          THE COURT:  Can I have it?  You're not taking

13   the wise advice of on old man.  I can see that right

14   now.

15          MR. ROBERTSON:  I'd like to hand this up to

16   the Court because this was our agreed instruction.

17   I'd like to think about it a little bit.  Quite

18   frankly, if I wanted to concede anything, Your Honor,

19   it would be that we got out-demonstratived in this

20   case, and I'm a little concerned that some of the

21   demonstratives, for example, with Dr. Shamos were sort

22   of like a written brief summarizing arguments, and I

23   am reluctant to send something like that back to the

24   jury.

25          THE COURT:  Look, that's a decision that

3039

1   trial lawyers make in their tactical decisions, and

2   you-all can do that if you want.  All I intended to

3   say was if you-all are in agreement and want to do it,

4   we'll craft an instruction and do it.  But it's up to

5   you.  If you feel like you have been

6   out-demonstratived, I wouldn't think about agreeing to

7   that.  It would be crazy.

8           All right let's see.  You-all agree on this

9   text?

10          MR. McDONALD:  I didn't read it over in

11  detail, but if it say "demonstratives" --

12          THE COURT:  Let me read it to you.

13          "Certain demonstratives exhibits have been

14  shown to you in the course of the trial.  Those

15  demonstrative exhibits are used for convenience and to

16  help explain the facts in the case.  They are not

17  themselves evidence or proof of any facts.  If they

18  don't correctly reflect the facts shown by the

19  evidence in the case, you should disregard the

20  demonstratives and determine the facts" -- I just

21  think I'd take that sentence out.  Just say, "They are

22  not themselves evidence or proof of any facts,"

23  period.  Won't that solve it?

24          MR. McDONALD:  That works for us without the

25  last sentence.

1          MR. ROBERTSON:  That's fine.

2          THE COURT:  Okay.  All right.  And we'll make

3    that jury instruction number -- this will be

4    instruction No. 14A.  Okay?

5          Now, you-all have handed me other things, and

6    I don't purport to have been a good housekeeper up

7    here.  I just want to make sure we don't have anything

8    else you-all need me to deal with by way of

9    instructions.

10          We have a verdict form to deal with.  We're

11    going to take a break in a minute.

12          MR. ROBERTSON:  Your Honor, we do have this

13    issue about whether or not the '989 was considered by

14    the examiner, and we've argued that this morning.  We

15    have proffered authority.  Lawson's proffered

16    authority.  We did propose an instruction on it.

17          THE COURT:  I'm sure I have it up here among

18    these things.  Do you have an extra copy I can look

19    at?

20          MR. ROBERTSON:  This is my only copy, but you

21    can look at it.

22          THE COURT:  Any objection to that?  To the

23    substance of it as opposed to the giving of it?

24          MR. SCHULTZ:  Your Honor, just for

25    clarifying, are you referring to ePlus instruction 42?

 1          THE COURT:  42, plaintiff's proposed

 2   instruction, prior art considered by the examiner.  I

 3   understand your position that you think that it's not

 4   even prior art.  I disagree with that, and I think the

 5   cases that were cited -- I think if you read the

 6   manual as a whole, and what do you call it, the MPEP

 7   as a whole, it is clear that the disclosure made in

 8   this case in this patent can be considered as having

 9   been considered as prior art on the facts of this

10   case, and the objection that you've made to striking

11   it -- I guess you made a request to strike it, didn't

12   you?

13          MR. SCHULTZ:  Yes, sir, with respect to

14   instruction No. 42, I am.

15          THE COURT:  I think that's the ruling in the

16   *Gould* case and the --

17          MR. ROBERTSON:  *Eastman Kodak*?

18          THE COURT:  *Polaroid v. Eastman Kodak*,

19   *Indiana Mills*, and the manual taken as a whole teach

20   that that's the applicable rule.

21          So now that being the case, what do we do

22   about instructing it?  Why does it come up?  Why does

23   it come up at all if nobody argues it?

24          Suppose I just say you can't make the

25   argument that it's not prior art or wasn't considered?

3042

1    Because there really isn't any evidence on that except

2    what appears in the file folder, and the guy actually

3    wrote something in the file folder about the matter.

4              So how do you propose that we deal with it

5    now we're at this point on the law, Mr. Schultz?

6              MR. SCHULTZ:  We also submitted an

7    instruction on this matter, Your Honor, and it's in

8    our proposed instruction, the red line version you

9    have there.

10             THE COURT:  Which one is it?

11             MR. SCHULTZ:  Lawson proposed jury

12   instruction No. 1.

13             THE COURT:  I don't have it.

14             MR. SCHULTZ:  Your Honor, it's actually

15   No. 2.

16             THE COURT:  I start with 8.

17             MR. SCHULTZ:  It's at the back, Your Honor.

18             THE COURT:  Oh, it's at the back.  Excuse me.

19   Three.

20             MR. SCHULTZ:  It's No. 2.  So Lawson proposed

21   jury instruction No. 2.

22             THE COURT:  Two.  Okay.  The face of any

23   patent issued by the United States Patent and

24   Trademark Office list of references that are cited to

25   the Patent and Trademark Office under the heading

1    "References cited."  This list includes all the

2    references the examiner considered as prior art when

3    determining whether to grant a patent to the claimed

4    subject matter.

5             Okay.  I can't give that given the ruling of

6    law that I've made.  So what about the one that they

7    gave?

8             MR. SCHULTZ:  Your Honor, I think Plaintiff's

9    Proposed Instruction No. 42 would be very highly

10   prejudicial to Lawson.

11            THE COURT:  Let's get down to where the

12   rubber meets the road.  Why are we going to have this

13   issue argued to the jury at all now?  Why does that

14   even come in and, therefore, why do we need to

15   instruct, Mr. Robertson?

16            MR. ROBERTSON:  If the defendant doesn't

17   argue it, I don't think we need an instruction.  But

18   I've asked counsel --

19            THE COURT:  Given the ruling of law that I've

20   made, how can you argue it?

21            MR. McDONALD:  I guess given your ruling,

22   Your Honor, I understand we can't argue it.  So if we

23   can't argue it, I don't see the need for that

24   instruction.

25            THE COURT:  There's no need for an

3044

1    instruction, do you agree?

2          MR. McDONALD:  That's right.  I understand

3    the ruling specific to the RIMS patent, the '989

4    patent.  The RIMS brochure, for example, that wasn't

5    disclosed to the Patent Office.  I assume we could

6    talk about that.

7          THE COURT:  Absolutely.

8          MR. ROBERTSON:  My colleagues reminded me

9    throughout the case --

10         THE COURT:  But you can't do it by saying it

11   has to be in those lists.

12         MR. McDONALD:  Okay.

13         THE COURT:  Because that would then implicate

14   the effect of the '989 that was disclosed.  You just

15   have to figure out a way to do it and say --

16         MR. McDONALD:  That's not inconsistent with

17   your ruling.

18         THE COURT:  Yes.

19         MR. McDONALD:  I understand.

20         MR. ROBERTSON:  Given Your Honor's ruling as

21   to what the state of the law is, we can certainly

22   argue that it was considered since it's cited

23   throughout the patent 59 times and listed as

24   incorporated by reference.

25         THE COURT:  Why is that an issue?

1        MR. ROBERTSON:  Because the presumption of

2   validity attaches there and also because --

3        THE COURT:  Well, I'm going to tell them the

4   presumption -- let me tell you something.  Don't be

5   outthinking owls now about whether or not -- because

6   could you open up a door that doesn't need to be

7   opened up.  I think it's a neutral factor here in this

8   case.

9        MR. ROBERTSON:  I think Dr. Shamos was asked

10  whether or not it was considered by the Patent Office.

11  So I think there's been testimony in the case that it

12  wasn't considered.

13       THE COURT:  I think I said he couldn't

14  testify to that.  Go back and check it because I do

15  remember that in cross-examination, I believe, of one

16  witness there was the file wrapper was an exhibit, and

17  there was the question, Well, now look at this.  And

18  he had marked through the application number and

19  written in the patent number.  And I'm not sure what

20  came of all of that.

21       MR. ROBERTSON:  We'll go back and check, Your

22  Honor.

23       THE COURT:  All right.  But if you're going

24  to argue that, you look at what I ruled and whether it

25  came in.  I think I precluded him from testifying

1   about it.

2          MR. McDONALD:  We don't think it should be at

3   issue, and we'll stir clear of it.  I understand your

4   ruling and we'll argue it consistent with that and any

5   instruction we think would be prejudicial, especially

6   in view of what's going on with the reexaminations in

7   the case.

8          THE COURT:  Is there any issue that you think

9   isn't impacted by the reexaminations?

10          MR. McDONALD:  Those reexams are looking

11   pretty good right now.

12          THE COURT:  I'm sure they are.  See what

13   happens when you kind of zing those little zingers in?

14   It doesn't have anything to do with what I'm doing on

15   a particular issue.

16          Do you have some issue that I need to

17   actually confront with respect to the reexaminations

18   that, in fact, I haven't already ruled on?

19          MR. McDONALD:  No.  The issue is whether they

20   are going to be able to argue it in closing arguments

21   that the Patent Office did consider the '989 patent,

22   and I'm saying that on specific issue I think you're

23   saying we shouldn't be talking about it anyway.

24          Maybe I'm kicking a sleeping dog here.  I'm

25   not sure, but I think if you allowed them to go there,

1    and I can't talk about it, but they can go there on

2    that, that's going to be prejudicial to me anyway, but

3    it's going to be especially prejudicial and unfair in

4    view of what's going on in the reexams.

5         MR. ROBERTSON:  The reexams aren't in

6    evidence.  The patent is in evidence.  And Your Honor

7    made a ruling of law that said consistent with all

8    those other cases and the MPEP, that it must be

9    considered by the examiner.

10        THE COURT:  No, that it's there to be

11   considered as prior art by the examiner.  There's a

12   big difference.  I'm not going to say that the

13   examiner considered it.  I don't know whether he did

14   or not.

15        If I were the finder of the fact, I would

16   find from the law that he could consider it, and that,

17   in fact, it was considered.  But my question is:  How

18   does that issue come up with respect to what they have

19   to decide?  Is there an issue that they actually have

20   to decide with respect to what was considered by the

21   Patent Office now?

22        MR. McDONALD:  The context, I guess, really

23   is the burden we have is clear and convincing evidence

24   either way, and some people might say that shifts

25   because if you assume that the examiner saw the prior,

3048

1   art, that might make the burden higher or lower.

2   That's one of these patent lawyer debates on the head

3   of a pin.

4           THE COURT:  I agree it's how many angels can

5   stand on a head of a pin, and I never have been good

6   about deciding that issue.

7           All right.  Now, so there are no other

8   instructions at this time.  Are you going to get those

9   over to me first thing in the morning?

10          MS. STOLL-DeBELL:  Email them?

11          THE COURT:  You can email them to

12  Ms. Haggard.  She will get them taken care of for me.

13          MR. ROBERTSON:  Your Honor, we did have that

14  curative instruction with respect to Dr. Shamos' slide

15  that had the Court's claim constructions in it.  I

16  proposed that if the defendant was not going to use

17  those in closing arguments, then we don't need a

18  curative instruction, but I don't think we resolved

19  that.

20          MR. McDONALD:  I asked for a copy of what

21  slides they were talking about.

22          THE COURT:  That was the last topic I

23  heard -- discussion I heard on the topic was Mr.

24  McDonald requested what is it you're talking about,

25  and I think that's a reasonable thing.

3049

1          MR. ROBERTSON:  I apologize.  I will get that
2  to you.
3          THE COURT:  Get it to him, and we'll deal
4  with that.
5          All right.  Now, we have a verdict form.  So
6  we're going to take a break.
7
8          (Recess taken.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25