1          (The jury is present.)

2          THE COURT:   Now we're going to turn to the

3    questions of invalidity.   And claims of a patent, as

4    you know, can be found to be invalid, and Lawson

5    contends that the claims here, all of them, are

6    invalid.

7          Remember that a patent is presumed to be

8    valid and, therefore, Lawson has to proved by clear

9    and convincing evidence that a claim is invalid.

10          Clear and convincing evidence is evidence

11   which produces in your minds an abiding conviction

12   that the truth of the factual contentions are highly

13   probable.   In other words, it's different from a

14   preponderance of the evidence standard.

15          For those of you who have been in criminal

16   cases, it's not as high as beyond a reasonable doubt,

17   but it's higher than preponderance and less than a

18   reasonable doubt.   And that instruction is No. 29 if

19   you need to refresh your memory on it.

20          Lawson contends that all the claims are

21   invalid for anticipation and are obvious.   Those are

22   the two grounds.   And they are obvious in view or

23   anticipated in view of prior art references.   In

24   particular, Lawson says that all of ePlus' claims are

25   anticipated by certain prior art references and

1   contends they are obvious by prior art references.

2          The following things can be prior art:

3          (1)   Any product or method that was publicly

4   known or used by others in the United States before

5   the patented invention was made;

6          (2)   publications having a date more than one

7   year before the filing date of the patent;

8          (3)   any product or method that was in public

9   use or on sale in the United States more than one year

10  before the patent was filed;

11         (4)   any patent granted on an application for

12  patent by another person filed in the United States

13  before the invention by the applicant for the patent.

14         Lawson contends that the following, each one

15  of them, are prior art that anticipates.  Now, there's

16  a difference between their contention of what is prior

17  art that anticipates the patent and what is prior art

18  that makes the patent obvious.  And this is the prior

19  art for purposes of anticipation.  And that is what

20  they call the Fisher RIMS system and also U.S. Patent

21  number, what's been called the '989 patent.

22         EPlus disputes that any of those are prior

23  art or that any of these anticipate the asserted

24  claims.  It is up to you to decide what is or isn't

25  prior art in accord with instructions that I give you.

1          Both the parties have reviewed parts of the

2     '683 patent that use the term "incorporation by

3     reference."  I think it's early in the specification.

4     Incorporation by reference is a legal phrase that

5     allows a patent applicant to make any other document

6     become part of the patent application in such a manner

7     that the incorporated document can be considered to be

8     part of the patent application just as if incorporated

9     documents have been fully set out in the application.

10         So if I incorporated something by reference,

11    I say, "I incorporate this by reference with this."

12    And I have that written in here.  Everything that is

13    on this piece of paper now becomes part of that piece

14    of paper without having to retype it and put it all in

15    there.  That is simply what incorporation by reference

16    means.

17         Now, on the topic of anticipation, we begin

18    with the premise that a person cannot obtain a patent

19    if someone else already has made an identical

20    invention.  So, simply put, the invention has to be

21    new.  An invention that is not new or novel is said to

22    be anticipated by prior art.

23         Under the patent laws, an invention that is

24    anticipated is not entitled to be patented at all.  To

25    prove anticipation, Lawson must prove by clear and

1   convincing evidence that the claimed invention is not

2   new.  In this case, Lawson contends that each of the

3   claims of the ePlus patents are anticipated.  To

4   anticipate, each and every element in the claim must

5   be present in the single item of prior art.

6        So looking at what Lawson has said is the

7   prior art, all right, you've got the Fisher RIMS

8   system.  First, you have to find what the Fisher RIMS

9   system is.  Go look at it.  And then you have to

10  decide is each and every element in a claim present in

11  a single item of that prior art.

12       Same thing with the '989 patent.  Get the

13  '989 patent.  You've heard what they say about it all.

14  You know what their arguments are.  The issue is, is

15  each and every element in a claim present in the '989

16  patent?  And you just do that claim by claim.

17       Anticipation, therefore, cannot be

18  established by combining two or more items of prior

19  art.  You can't do that.  Now, that's different than

20  in obviousness.  In obviousness, there is an argument

21  for combination, but in anticipation, it all has to be

22  in one document or it doesn't anticipate or in one of

23  the things that I have told you is prior art.

24       In determining whether every one of the

25  elements of the claimed invention is found in the

alleged prior art, you should take into account what a

person of ordinary skill in the art would have

understood from his or her examination of the prior

art reference.

In other words, what would a person of

ordinary skill in the art have concluded from viewing

the '789 patent, once you find it, and the Fisher RIMS

system, once you determine what you're going to do

with that.

In determining whether a single item of prior

art anticipates a patent claim, you should take into

consideration not only what is expressly disclosed in

the particular item of the alleged prior art, but also

what inherently resulted from its practice.  This is

called inherency, and a party claiming inherency must

prove it by clear and convincing evidence.  To

establish inherency, the evidence must make clear that

the prior art either necessarily resulted in the

missing descriptive matter and that it would be so

recognized by a person of ordinary skill in the art at

the time that patent application was filed.  And you

just keep those instructions in mind and apply them to

each anticipation that you have before you.

Now, Lawson contends that all of the claims

of the ePlus patents were anticipated because the

1  invention defined in those claims were publicly known

2  by others in the United States before they were

3  invented by the inventors.  The inventions defined by

4  the ePlus patent claims were invented on August 10,

5  1994.

6          A patent claim is invalid if the invention

7  defined in that claim was publicly known by others in

8  the United States before it was invented by the

9  inventors.

10          Lawson also contends that all of the claims

11  of the ePlus patents were anticipated because the

12  inventions defined in those claims were publicly used

13  by others in the United States before they were

14  invented by the inventors or they were publicly used

15  in the United States more than one year before the

16  ePlus inventors filed their application on August 10,

17  1994.

18          A patent claim is invalid if the invention

19  defined in that claim was publicly used by a person

20  other than the patentee in the United States before it

21  was invented by the patentee or was publicly used by

22  anyone in the United States more than a year before

23  the effective filing date of the patentee's patent

24  application.

25          An invention is publicly used if it is used

1    by the inventor by a person who is not under any

2    limitation, restriction or obligation of secrecy to

3    the inventor.  The absence of affirmative steps to

4    conceal is evidence of a prior use; however, secret

5    use by a third part is not public use.  If the public

6    use was an experimental use performed in order to

7    bring the invention to perfection or to determine if

8    the invention is capable of performing its intended

9    purpose, then such a use does not invalidate the

10   claim.

11          Now, oral testimony alone, the lawyers

12   referred to this, is just not enough to establish the

13   existence of a prior public use or knowledge by clear

14   and convincing evidence.

15          Generally, oral testimony of prior public use

16   or knowledge must be corroborated in order to

17   invalidate a patent.  Corroboration simply means

18   supported.

19          Documentary or physical evidence that is made

20   contemporaneously with the inventive process provides

21   the most reliable proof that the alleged prior art

22   inventor's testimony has been corroborated.

23          If you find that Lawson has not corroborated

24   the oral testimony that they rely on to show prior

25   public use or knowledge with other evidence, then you

3272

1    are not permitted to find that the subject of that

2    oral testimony qualifies as prior public use or

3    knowledge for purposes of invalidating one or more

4    claims of the patents-in-suit.

5         If evidence is presented for purposes of

6    attempting to corroborate oral testimony that alleges

7    invalidity, then you have to determine whether this

8    evidence, in fact, properly corroborates the oral

9    testimony.  So in other words, if somebody said, well,

10   it was publicly known or publicly used or it or there

11   was knowledge of it, and that's the oral testimony,

12   then you have to look is there any other evidence that

13   backs that up.  If there isn't any other evidence that

14   backs it up, that's all there is, then you can't

15   consider that as proven by clear and convincing

16   evidence.

17        So you look and see what else is the other

18   evidence to corroborate it.  And in looking at that

19   other evidence and whether you should consider it, you

20   decide what's the relationship between the

21   corroborating witness and the alleged prior user;

22   what's the time period between the event that's being

23   used to corroborate and the trial; what's the interest

24   of the corroborating witness in the subject matter of

25   this suit; any contradiction or impeachment of the

1    witness's testimony; the extent and detail of

2    corroborating witness's testimony; the witness's

3    familiarity with the subject matter of the patented

4    invention and the alleged prior use; probability that

5    a prior use could occur considering the state of the

6    art at the time; and the impact of the invention on

7    the industry, and the commercial value of its

8    practice.

9           Lawson also contends that all of the claims

10   of the ePlus patents were anticipated because the

11   inventions defined in those claims were publicly sold

12   or offered for sale more than one year before the

13   ePlus inventors filed their application on August 10,

14   1994.

15          A patent claim is invalid if, more than a

16   year before the patent application date, an embodiment

17   of the claimed invention was both (1) subject to

18   commercial offering for sale in the United States and

19   (2) ready for patenting.  They have to prove that by

20   clear and convincing evidence.  That is, Lawson does.

21          An invention was "on sale" if the claimed

22   invention was embodied in the thing sold or

23   commercially offered for sale.  It is not required

24   that a sale is actually made.  The essential question

25   is whether or not there was an attempt to obtain

3274

1    commercial benefit with the invention.

2           In order to be on sale, the invention claimed

3    in the patent must have been ready for patenting at

4    the time of the alleged offer for sale is made.   An

5    invention is ready for patenting either when it is

6    reduced to practice or when the inventor has prepared

7    drawings or other descriptions of the invention

8    sufficient to allow a person of ordinary skill in the

9    art to make use of the invention.   The claimed

10   invention is ready for patenting when there is reason

11   to believe it would work for its intended purpose.

12          Lawson also contends that all of the claims

13   of the ePlus patents were anticipated because the

14   inventions defined in those claims were described in a

15   printed publication that was published either before

16   the inventors made the claimed inventions, that is on

17   August 10, 1994, or more than one year before they

18   filed those claims.   That would be before August 10,

19   1993.

20          MR. ROBERTSON:   Your Honor, may we approach,

21   sir?

22          THE COURT:   What?

23          MR. ROBERTSON:   May we approach?

24          THE COURT:   Yes.

25          (The following sidebar conference is begun:)

1          MR. ROBERTSON:  Correct me if I'm wrong, but

2   this should be out now since the RIMS brochure is no

3   longer anticipatory.

4          THE COURT:  Would you speak into the

5   microphone.  What should be out?

6          MR. ROBERTSON:  This instruction because the

7   only printed publication I thought that was being

8   alleged was the RIMS brochure.

9          MS. STOLL-DeBELL:  This is what I was trying

10  to say yesterday.  This needs to go in because TV/2

11  general information manual and the TV/2 brochure

12  qualifies as prior art under this section.  So I had

13  talked about putting anticipation.

14          MR. McDONALD:  Just to be clear, they are not

15  only anticipatory references, but they are prior art

16  references because they are printed publications.

17          THE COURT:  No, they don't go in here.  This

18  is anticipation.

19          MR. McDONALD:  They have to be explained

20  somewhere.

21          THE COURT:  That doesn't count.  You don't

22  just do somewhere.  You have to do it for a particular

23  purpose.  What do you all think?  Most people don't

24  deal with these things the way you-all did.  You left

25  an awful lot, both of you did, of instruction in here

1    that doesn't need to be here.  You don't have any

2    evidence on half of it.  It's just ridiculous.

3            If this has any applicability, it goes in

4    obviousness; is that right?

5            MR. McDONALD:  That would be right.

6            THE COURT:  Do you agree with that?

7            MR. ROBERTSON:  Yes.

8            THE COURT:  I'll change it and put it there.

9    All right.

10           (The sidebar conference is concluded.)

11           THE COURT:  Now, I think at one time you-all

12   heard in the opening argument that Lawson also relied

13   on the printed publication rule as respecting

14   anticipation.  They don't do that anymore.  And so

15   what I just said about claims of the ePlus patent were

16   anticipated because they were described in a printed

17   publication before the invention or a year before,

18   that doesn't apply because that's not part of the case

19   anymore.  I will deal with that topic in obviousness.

20           Lawson also does contend, though, that all of

21   the claims of ePlus' patents were anticipated by a

22   patent that issued from a prior patent application.  A

23   patent may be prior art to a patent claim even if the

24   patent issued after the filing date of the

25   patents-in-suit.  This occurs when the patent

3277

 1    application for the earlier patent was filed by

 2    another person before the subject matter of the

 3    patents-in-suit that was invented.  In this case, the

 4    prior art patent is the '989 patent.  And ePlus, of

 5    course, does not admit that the patent anticipates the

 6    ePlus patents-in-suit and disputes that the '989

 7    patent is prior art.

 8          Now, we're going to turn to obviousness.

 9    Another theory of obviousness or invalidity, excuse

10    me, is obviousness.  And a claimed invention is

11    invalid as obvious if it would have been obvious to a

12    person of ordinary skill in the art of the claimed

13    invention at the time the invention was made.

14          Unlike anticipation, which allows

15    consideration of only one item of prior art,

16    obviousness may be shown by considering more than one

17    item.  So in anticipation, there's no combination

18    issue.  It all has to appear in a single item of prior

19    art or it's not proved by clear and convincing

20    evidence.

21          And obviousness can be found by clear and

22    convincing evidence, as I'll tell you later, that the

23    combination renders it obvious.

24          The following factors have to be evaluated to

25    determine whether Lawson has established by clear and

1    convincing evidence that the claimed inventions are

2    obvious.

3           Now, before we go into that, let me tell you

4    that Lawson contends that a combination of two or more

5    of the following is prior art that renders obvious the

6    asserted claims here, and they consider all of the

7    claims are obvious.

8           One is the Fisher RIMS system.  One is the

9    '989 patent.  Another one is the so-called RIMS

10   brochure, the kind of purple thing that was attached

11   to the trademark application, the TV/2 general

12   information brochure, the TV/2 brochure, and the TV/2

13   system.

14          EPlus disputes that any of those are prior

15   art or that any of them, if prior art, even render

16   obvious the claims.  And you have to decide what is

17   the prior art.

18          So what are you going to take into account in

19   establishing and deciding whether Lawson has

20   established by clear and convincing evidence that the

21   claimed inventions are obvious?

22          (1) The scope and content of the prior art

23   relied upon by Lawson;

24          (2)  the difference or differences, if any,

25   between each claim of the ePlus patents that Lawson

1   contends is obvious and the prior art on which Lawson

2   bases its assertion of obviousness;

3            (3)  the level of ordinary skill in the art

4   at the time the invention of the ePlus patents were

5   made.  That's August of 1994.

6            Additional considerations, if any, that

7   indicate that the invention was obvious or not

8   obvious.  Each of those factors have to be evaluated,

9   although they may be analyzed in any order, but you

10  must perform a separate analysis for each of the

11  claim.  And obviousness, as I said must, be proved by

12  clear and convincing evidence, obviousness.

13           You should analyze whether there are any

14  relevant differences between the prior art and the

15  claimed invention from the viewpoint of a person of

16  ordinary skill in the art at the time of the

17  invention.  So your analysis has to determine the

18  impact, if any, of such differences on the obviousness

19  or non-obviousness of the invention as a whole and not

20  on merely some portion of it.

21           In analyzing the relevance of the differences

22  between the claimed invention and the prior art, you

23  do not need to look for precise teaching in the prior

24  art directed to the subject matter of the claim.  In

25  other words, it doesn't have to say, Do this, do this,

1   and do that.

2          You may take into account the inferences and

3   creative steps that a person of ordinary skill in the

4   art would have employed in reviewing the prior art at

5   the time of the invention.

6          Importantly, a claim is not proved obvious

7   merely by of demonstrating that each of the elements

8   was independently known in the prior art.

9          Most, if not all, inventions rely on building

10  blocks long since uncovered, and claimed discoveries

11  almost of necessity will likely be combinations of

12  what is already know.

13         Therefore, you should consider whether a

14  reason existed at the time of the invention at issue

15  here that would have prompted a person of ordinary

16  skill in the art in the relevant field to combine the

17  known elements in the way the claimed invention does.

18  The reason could come from the prior art, from the

19  background knowledge of one of ordinary skill in the

20  art, from the nature of the problem, the market

21  demand, or common sense.

22         Again, you must do it on a claim by claim

23  basis.

24         The determination of whether a claimed

25  invention is obvious is based on the perspective of a

```
 1   person of ordinary skill in the art.  That person is
 2   presumed to know all the art that you have determined
 3   to be reasonably relevant.  That is, that you find is
 4   prior art.  And that person can use common sense to
 5   solve the problems.
 6           Now, there are factors indicating obviousness
 7   that you should take into account.  You must also
 8   consider certain factors which, if established, may
 9   indicate that the invention would not have been
10   obvious, as well.
11           MR. ROBERTSON:  Your Honor, I think you
12   misspoke.  You said there are factors that are
13   indicating obviousness.  I think it's factors
14   indicating non-obviousness.  I just wanted to make
15   sure of the title there.
16           THE COURT:  I didn't read the title.  They
17   don't read the titles into this.
18           MR. ROBERTSON:  I'm sorry, sir.
19           THE COURT:  I didn't read the title.  I never
20   do.  But I'll be clear.  Let's start again.
21           You have to also consider certain factors,
22   which, if they are proved or if they are established,
23   may indicate that the invention would not have been
24   obvious.  And no factor alone is dispositive, and you
25   must consider the obviousness or non-obviousness of
```

3282

1    the invention as a whole.

2          So what do you consider there?

3          (1)  Were products covered by a claim

4    commercially successful?  That is, were products that

5    were covered by the claim in the patent commercially

6    successful due to the merits of the claim invention

7    rather than due to advertising, promotion,

8    salesmanship, or features of the product other than

9    those found in the claim?

10          (2)  Was there a long felt, but unresolved,

11    need for a solution to the problem facing the

12    inventors, which was satisfied by the claimed

13    invention?

14          (3)  Did others try, but fail, to solve the

15    problem solved by the claimed invention?

16          (4)  Did others copy the claimed invention?

17          (5)  Did the claimed invention achieve

18    unexpectedly superior results over the closest prior

19    art?

20          (6)  Did others in the field praise the

21    claimed invention or express surprise at the making of

22    the claimed invention?

23          (7)  Did others accept licenses under the

24    ePlus patents because of the merits of the claimed

25    invention?

3283

1          Now, Lawson also contends that the claims in

2   the ePlus patents were obvious because the invention

3   defined in those claims were described in a printed

4   publication that was published before the inventors

5   made the claimed invention on August 10, 1994, or more

6   than one year before the inventors filed their U.S.

7   Patent application on August 10, 1994.

8          A patent claim is invalid if the invention

9   defined by that claim was described in a printed

10  publication before it was invented by the patentee or

11  more than one year prior to the filing date of the

12  patent-in-suit.

13         A printed publication must be reasonably

14  accessible to those members of the public who would be

15  interested in its contents or who would most likely

16  use it to qualify for a printed publication within the

17  meaning of this instruction.

18         An alleged prior art reference is reasonably

19  accessible upon a satisfactory showing that the

20  document was disseminated or otherwise made available

21  to the extent that persons ordinarily skilled in the

22  art exercising reasonable diligence can locate it.  It

23  is not necessary that the printed publication be

24  available to every member of the public, thus

25  publications may include not only such things as

1   books, periodicals, and newspapers, but also

2   publications that are not widely available to the

3   public such as trade catalogs, journal articles, and

4   scholarly papers that are distributed or available to

5   those who are skilled in the art.

6          The information must, however, have been

7   maintained in some form, such as printed pages,

8   typewritten pages, magnetic tape, microfilm,

9   photographs or photocopies.

10         For a printed publication to render a claim

11  obvious, it must.  When read by a person of ordinary

12  skill in the art, expressly or inherently disclose

13  what?  The combination?

14         You know, this is why I asked you to do these

15  things, and you didn't do them.  It's not right as

16  it's printed.  If you can't tell me now how to correct

17  it, I'm striking the whole instruction.

18         MR. McDONALD:  I think that first sentence of

19  that as last paragraph can just be deleted.  Then you

20  can just pick it up from there.  I think that's all

21  you have to do is take out that one sentence.

22         MR. ROBERTSON:  I disagree.

23         THE COURT:  Surprise, surprise.

24         MR. McDONALD:  I think we would agree the

25  whole last paragraph is unnecessary.

3285

1          THE COURT:  All right.  It's out.  Okay.

2          All right, ladies and gentlemen, that brings

3     us to what you do when you leave here, and it's going

4     to be up to you as to how you handle it.

5          When you retire to your jury room to begin

6     your deliberations, you elect one of your members to

7     act as the foreperson.  And that foreperson will

8     preside over your deliberations and be your

9     spokesperson here in court.

10          Your verdict has to represent the collective

11     judgment of the jury.  In order to return a verdict,

12     it is necessary that each juror agree to it.  In other

13     words, your verdict must be unanimous.

14          It is your duty as jurors to consult with one

15     another and to deliberate with one another with a view

16     toward reaching an agreement if you can do so without

17     violence to individual judgment.  Each of you must

18     decide the case for himself or herself, but do that

19     only after you impartially consider it with the

20     evidence in the case along with your fellow jurors.

21          In the course of your deliberations, don't

22     hesitate to change your opinion if you think you're

23     wrong and if you think somebody else is right.  But

24     don't surrender your honest convictions merely for the

25     sake of returning a verdict or because of the opinions

1   of other jurors are different than your own.

2          And remember at all times you're not

3   partisans; you are the judges.  You are the judges of

4   the facts in this case.  And your sole interest is to

5   seek the truth from the evidence that is received

6   during the trial.

7          Keep in mind your verdict must be based

8   solely on the evidence and the law, that nothing

9   you've seen or heard outside can be considered.

10  Nothing I've said and done during the trial is

11  intended to suggest to you in any way what I think

12  your verdict to be.  That's up to you.

13         Nothing in these instructions is intended to

14  suggest what your verdict ought to be.  Nothing in the

15  verdict form is intended to do that.  They are all

16  offered to help you along the way.

17         Now, the verdict form is fairly

18  straightforward.  You'll remember that they started,

19  when Dr. Weaver testified, ePlus presented its claims

20  of infringement in accord with certain configurations.

21  So you have got configurations 1 through 5 that you

22  have to decide here.

23         Looks like that you have a lot more to do

24  than perhaps you do, but in order to make sure that

25  you focus on what you are to focus on and we

1    understand what you have decided, we've determined

2    that this is the best way for you to record what you

3    do.

4              So when you have reached your unanimous

5    verdict on whether configuration 1, which is defined

6    here, infringes Claim 1 of the '516 patent, you check

7    yes or no, whichever your unanimous verdict is.

8              Then you go to '516, Claim 6, yes or no.

9              Then you go down to configuration 2, and it's

10   yes or no, whichever your unanimous result is for the

11   patent that's alleged to infringe.  And that

12   configuration is alleged to infringe two claims of the

13   '683 patent.

14             And then there are six claims of the '516

15   patent, and one claim of the '172 patent.

16             And then there's configuration 3,

17   configuration 4, configuration 5, and then you've got

18   infringement.

19             And then you turn to invalidity.

20             Remember that the burden of proof on this

21   part, that is infringement, is different than it is

22   for this next part, Roman numeral 2, validity.

23             Then:  Do you find that Lawson has proved by

24   clear and convincing evidence that any of the

25   following claims are anticipated by the Fisher RIMS

1  system?  And you check off yes or no depending on what

2  you unanimously agree upon.

3       Do you find by clear and convincing evidence

4  that any of the following claims are anticipated by

5  the '989 patent?  Same thing.  And I'm not going

6  through it all.

7       And then you get to obviousness.  And

8  obviousness is a little different.  Do you find that

9  Lawson has proved by clear and convincing evidence

10  that any of the claims are obvious in light of the

11  combination of (1) either the RIMS system, the RIMS

12  brochure and/or the '989, and (2) either the TV/2

13  system or the TV/2 brochure and/or the TV/2 general

14  information, Claim 3, yes or no.

15       If you answered yes, then you put in here,

16  the next line down, what combination was it you found?

17       Mr. McDonald, when he was making his argument

18  slipped.  He said that you should just fill in here

19  RIMS and TV/2 if that's what you found.  Well, that's

20  not right.  You have to fill in which ones of these

21  combinations listed in here if you find any

22  combinations.  If you answered yes, you check yes, and

23  then you write down for us which one, combination or

24  combinations, you found.  And you have to be unanimous

25  as to the combination.  So you could not, for example,

3289

1   come back with a verdict that said half of you believe

2   it was the '989 patent and the TV/2 general

3   information manual, and the other half of you find it

4   was something else.  You have to be in agreement and

5   unanimous agreement on any alleged obviousness

6   reference.

7           Then you do that for each of the claims that

8   are listed in subparagraph (c)(1) through whatever it

9   is, 12.

10          And then the verdict form, when you've got

11  it, it's signed by the foreperson and dated, and you

12  bring it back here.  You tell us when you have got a

13  unanimous verdict.

14          Now, how you proceed from this point on --

15  one other thing.  If during your you deliberations it

16  somehow is necessary for you to communicate with the

17  Court, do you that by sending a note signed by the

18  foreperson, or all of you, or some of you if the

19  foreperson doesn't want to sign it, and I will then

20  communicate with the lawyers and respond to you either

21  in writing or ask you to come back in here and give

22  you a response.

23          Please bear in mind that when you give us a

24  note, if you do, we don't ever need to know how you're

25  divided on the issue if you are divided.  We don't

1   want to know we're divided 4 to 4 or 3 to 5 or

2   whatever it is.  All we need to know on the numbering

3   is when you have got a unanimous verdict.

4          Now, what you do from this point on is on

5   your schedule.  You let us know.  You can deliberate

6   and you can stay for a while in the evening if you

7   want do that.  If you want to come back tomorrow, what

8   is it now?  4:00 o'clock.  If you want dinner, you

9   need to let us know about an hour ahead of time so we

10  can get you a meal.

11         About the best we can do is pizza, but if

12  somebody has some special dietary requirement, we'll

13  try to find something for you and won't make you eat

14  pizza.

15         You-all just tell us what you want to do and

16  you're on your own schedule.  And I'm not suggesting

17  in what I've said how long you should deliberate.

18  That's all up to you.

19         Any requests for additional instructions or

20  any objections to the instructions that were given?

21         MR. ROBERTSON:  No, Your Honor.

22         THE COURT:  Other than what was in the charge

23  conference, which were preserved.

24         MR. McDONALD:  No, Your Honor.

25         THE COURT:  All right.  Thank you.

3291

1        Ladies and gentlemen, we'll send you the

2   verdict form.  We'll send you a copy of the

3   instructions.  I'm going to have to have a couple

4   modifications made that I made on them, but it won't

5   take long.  You'll get all of the evidence.

6        You're going to have a computer; is that

7   right?

8        MR. ROBERTSON:  Yes, Your Honor.

9        THE COURT:  And what is it that they are

10  going to do with the computer?

11       MR. ROBERTSON:  They can play the

12  demonstrations that Dr. Weaver offered.

13       THE COURT:  How do they do that?  Is it a CD?

14       MR. ROBERTSON:  The computer is all set and

15  ready to go.  Just turn it on.  Mr. Neal is going to

16  learn how to do it and he'll be able to tell the jury.

17       THE CLERK:  God help us.

18       THE COURT:  No, help them.

19       All right.  We'll send the evidence back to

20  you.  You-all can go ahead.  Thank you very much.  We

21  will await your decision.

22       (The jury begins deliberation at 4:10 p.m.)

23       THE COURT:  Have you got a list of exhibits

24  that are going back?

25       MR. MERRITT:  Your Honor, we have a list of

3292

1   the plaintiff's admitted exhibits.  I believe Mr. Carr

2   has a list of the defendant's.  Everybody has compared

3   notes on them.  I believe we are in agreement on what

4   should go back.

5            THE COURT:  All right.  How are you going to

6   mark what should go back?

7            MR. CARR:  We each put into binders the ones

8   that are going back.

9            THE COURT:  How are we going to put it in the

10  record?

11           MR. CARR:  We can read it into the record

12  with Ms. Daffron.

13           THE COURT:  What I don't want is -- it's not

14  as much a problem with civil cases, but I don't want a

15  Lentz problem.  Do you know what that is?

16           MR. CARR:  Yes, sir.  Mr. Neal has pointed

17  that out.

18           THE COURT:  All right.  You dictate it into

19  the record then.

20           MR. MERRITT:  Yes, sir.

21           THE COURT:  All right.  Now, on the

22  instructions, I'm going change 30A by taking out

23  paragraph 3.

24           On 37, I'm changing the last paragraph by

25  deleting the word "either," the next to the last word

1   in the third line from the bottom, and instead of

2   putting in "Johnson," I'm going to put "the '989."

3   That's a hangover from when there were more than one

4   patent references there.

5           Then on No. 36, in the second line I've

6   changed the word "anticipated" to "obvious."  In the

7   third paragraph, third line from the bottom of that

8   paragraph I took out -- no, I didn't take it out.  I

9   thought I did, but I didn't.  Sorry.

10          And then I took out -- excuse me.  On the

11  third page of that instruction, the entire last

12  paragraph on your agreement.

13          With those changes, those will be the

14  instructions that will go back to the jury.  Is there

15  anything else we need to do?

16          MR. ROBERTSON:  Not from my perspective, Your

17  Honor.

18          MR. McDONALD:  No, Your Honor.

19          THE COURT:  Counsel will remain available to

20  deal with any questions that there are.

21          THE CLERK:  Judge, I hate to bother you, but

22  we have two questions about the exhibits.  Maybe we

23  have to wait until the jury comes back.

24          THE COURT:  Wait just a minute.  Take this to

25  Ms. Hooper and have her change the jury set.  Leave

1    mine like they are.  Have her change the jury set and

2    bring that back here, if you would.

3              What's the question?

4              THE CLERK:  The set of exhibits that's going

5    back to the jury, you may have to make a decision

6    depending on what happens.  So we can retain them.

7    They may want to clean up something.  They put all the

8    exhibits in the record.  Normally we would return

9    exhibits to counsel.

10             Do you want to keep them in this instance or

11   do you want to just keep the exhibits that went back

12   to the jury?

13             THE COURT:  I am going to let all of the

14   exhibits go back to counsel.  Once we've got in the

15   record (A) what is admitted, and (B) what has gone

16   back to the jury, we know that, and it's up to counsel

17   to faithfully preserved those.  And the plaintiff will

18   keep the plaintiff's and the defendants will keep the

19   defendant's.  Or you-all can charge one or the other

20   with the responsibility and pay them rent or moving

21   fees or whatever you need to pay.

22             Tomorrow I want somebody to come to my office

23   and haul away all of the paper and trees that you've

24   killed so I don't have to put up with it anymore.

25             THE CLERK:  I will await the jury

3295

1  instructions, and I will get the exhibits back to the

2  counsel.

3        THE COURT:  All right.  We'll be in recess.

4  There's nothing else we need to do now because we

5  don't have any willfulness trial; is that right?

6        MR. ROBERTSON:  That's right, Your Honor.

7        MR. McDONALD:  Yes, sir.

8        THE COURT:  Now that you've done this

9  exercise, do you think there's a reason why the chief

10  people of each side ought not go down and talk to --

11  who was it, Judge Dohnal or Judge Lauck?

12        MR. MERRITT:  Judge Dohnal.

13        THE COURT:  And talk to Judge Dohnal and see

14  if you can compromise?  Or do you still want to beat

15  heads against each other and give Mr. McDonald a

16  Mercedes and give Mr. Robertson a BMW?

17        MR. ROBERTSON:  I have a Ford 150 truck.

18        THE COURT:  You want a Ford 150?

19        THE CLERK:  He says he has one.

20        THE COURT:  You-all ought to think about that

21  and decide.  If I were you, I'd be trying to work out

22  a compromise that didn't result in a total wipeout.

23  It's particularly risky for Lawson.

24        All right.

25        (Recess taken.)

3296

1              (The following is dictated into the record by

2    the attorneys:)

3              MR. MERRITT:   The following are Plaintiff's

4    Exhibits that are being sent back to the jury to use

5    during its deliberations.

6              PX 1 through 11, inclusive, PX 13, and from

7    now on instead of prefacing them with PX, I'll simply

8    read the number.   Each of these is preceded by a PX:

9    25, 32, 38, 43, 97, 98, 101, 103, 104, 105, 108, 109,

10   110, 112, 113, 117, 118, 127, 129, 131, 136, 149, 150

11   --

12             MR. CARR:   150 was supposed to have been

13   redacted.   Has that been done?

14             MR. MERRITT:   Let's put a mark next to that

15   question and I'll doublecheck that after I finish with

16   the list.   PX 150 we're going to go back and check for

17   redaction.

18             153 is next, 154, 155, 156, 157, 170, 173,

19   188, 190, 191, 202, 208, 211, 212, 215, 216, 219, 225,

20   226, 228, 229, 230, 231, 234, 237, 238, 239, 276, 280,

21   317, 319, 320, 325, 337, 361, 363, 364, 367, 368, 374,

22   376, 379, 380, 417, 448, 464, 470, 482, and now we

23   have a series of exhibits that have some sub numbers

24   beginning with PX 501B1, that's B as in boy, PX 501D1,

25   D as in dog, PX 501I, PX 501L as in lion, PX 501M,

3297

1  PX 501N, PX 501R.

2          And finally '516, 521, 522.  That concludes

3  the PX list.  And if we could go off the record for a

4  minute before I forget and let me check on the status

5  of PX 150.

6          MR. CARR:  Let me read mine, then we'll look

7  at it together.  The defense exhibits going back to

8  the jury are DX 7, DX 45, DX 61, DX 62, DX 96, DX 105,

9  DX 107, DX 117, DX 125, DX 126, DX 133, DX 139, DX

10  140, DX 141, DX 207, DX 211, DX 212, DX 213, DX 230,

11  DX 400, and 402.

12          (Recess taken.)