3301

1        **IN THE UNITED STATES DISTRICT COURT**
        FOR THE EASTERN DISTRICT OF VIRGINIA
2           RICHMOND DIVISION

3  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                         :
4  ePLUS, INC.,           :
                         :
5             Plaintiff,   :
  v.                 :  Civil Action
6                     :  No. 3:09CV620
  LAWSON SOFTWARE, INC.,   :
7                    :  January 25, 2011
            Defendant.   :
8  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9

10

11       COMPLETE TRANSCRIPT OF **JURY TRIAL**
      BEFORE THE HONORABLE ROBERT E. PAYNE
12    UNITED STATES DISTRICT JUDGE, AND A JURY

13

14

15  APPEARANCES:

16  Scott L. Robertson, Esq.
  **Michael T. Strapp, Esq.**
17  GOODWIN PROCTOR
  901 New York Avenue, NW
18  Washington, D.C.   20001

19  Craig T. Merritt, Esq.
  CHRISTIAN & BARTON
20  909 E. Main Street, Suite 1200
  Richmond, VA   23219-3095
21
       Counsel for the plaintiff ePlus
22

23
          DIANE J. DAFFRON, RPR
24        OFFICIAL COURT REPORTER
       UNITED STATES DISTRICT COURT
25

3302

APPEARANCES:   (Continuing)

Dabney J. Carr, IV, Esq.
TROUTMAN SANDERS
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122
Richmond, VA   23218-1122

        Counsel for the defendant Lawson Software.

3303

1           (The proceedings in this matter commenced at

2    9:09 a.m.)

3

4           THE CLERK:  Civil Action No. 3:09CV00620,

5    *ePlus, Incorporated v. Lawson Software, Incorporated*.

6    Mr. Scott L. Robertson, Mr. Craig T. Merritt, and

7    Mr. Michael T. Strapp represent the plaintiff.

8    Mr. Dabney J. Carr, IV represents the defendant.

9           Are counsel ready to proceed?

10          MR. ROBERTSON:  Yes, Your Honor.

11          MR. McDONALD:  Yes, Your Honor.

12          THE COURT:  Good morning, ladies and

13   gentlemen.  The record reflects that all the jurors

14   are here assembled and they will return to their

15   deliberations.

16          Mr. Neal, have you given them menus?

17          THE CLERK:  Yes, sir, they've completed them.

18          THE COURT:  All right.  Thank you very much.

19          And we'll see you when you have a verdict.

20   Thank you.

21          (The jury resumes deliberation at 9:11 a.m.)

22          THE COURT:  All right.  We have this question

23   about the offer of proof now that the briefs are in.

24   Can I just decide that on the papers or does anybody

25   want argument on it?

3304

1          MR. MERRITT:  Your Honor, we're happy to have

2     it decided on the papers.  I think we've spilled about

3     all the ink over it that can be spilled.

4          MR. McDONALD:  That's fine with Lawson, Your

5     Honor.

6          THE COURT:  All right.  I'll just decide it

7     on the papers.  And then you-all need to talk about a

8     briefing schedule on that.  There were two motions

9     that were filed yesterday.

10         MR. ROBERTSON:  JMOL, no invalidity, Your

11    Honor, and there's a Rule 37 motion filed by Lawson.

12         MR. CARR:  Yes, the Rule 37 motion has to do

13    with the Section 103(c)(1) issue.  We can work

14    something out.

15         THE COURT:  And you have a motion for what?

16         MR. ROBERTSON:  JMOL, no invalidity.

17         THE COURT:  No invalidity.

18         MR. CARR:  And we need to set a schedule for

19    us to respond to that.

20         THE COURT:  All right.  You all do that and

21    I'd like to go on and get this stuff done while it's

22    relatively fresh in my mind, if you don't mind.  So if

23    you could get an expedited, not an expedited, but a

24    schedule that's not a leisurely one, I would

25    appreciate it.

3305

1          MR. ROBERTSON:  Sure.

2          THE COURT:  All right.  Thank you very much.

3          MR. ROBERTSON:  Thank you.

4          THE COURT:  Not all of you have to wait here

5   all the time.

6          MR. ROBERTSON:  Your Honor, I think we've

7   worked it without Mr. Neal.

8          Mr. Neal, do you know when their lunch period

9   is?

10         THE COURT:  Generally, what time does lunch

11  come?

12         THE CLERK:  Between 12:30 and 1:00.

13         MR. ROBERTSON:  We'll check in with Mr. Neal.

14  He has our phone numbers, and we'll have somebody in

15  the conference room at all times.

16         THE CLERK:  I'm come find you.  You don't

17  have to check back.

18         THE COURT:  I've think it's better for you

19  just to call and tell them when the lunch period is.

20         MR. CARR:  That sounds fine.

21         THE COURT:  All right.  Thank you.

22         MR. ROBERTSON:  Thank you, Judge.

23         (Recess taken.)

24         (Court resumes session.  The jury is not

25  present.)

1          THE COURT:  All right.  In Section II,

2     validity, (A) what are we supposed to use to define

3     "Fisher RIMS" in A?

4          Next question:  Since J-CON and P.O. Writer

5     aren't listed on our verdict sheet, are we to consider

6     them as prior art?  Isn't that what they were included

7     in the case for?

8          Next question:  Was P.O. Writer meant to be

9     considered as a competing, similar system or was that

10    evidence not to be included in deliberations?

11         Next question:  In jury instruction, Judge

12    Payne spoke of anticipation.  Two items combined are

13    not prior art.  So anticipation does not apply

14    anymore; is that correct?

15         Let's take the easy ones first at the back.

16    I propose to call them back in here and refer them to

17    the anticipation instructions and to remind them that

18    you can't combine two pieces of prior art for purposes

19    of anticipation, that it all has to be -- that you

20    have to consider whether there's anything in one

21    single prior reference, prior art reference.  And

22    anticipation is in the case but not in terms of the

23    combination, that the combination applies only to the

24    obviousness; is that right?

25         MR. ROBERTSON:  I think, Your Honor, there

3307

1    are two sentences from your instruction No. 31 that

2    would respond to this.  And they are:  To anticipate a

3    claim, each and every element in the claim must be

4    present in a single item of prior art.  Anticipation

5    cannot be established by combining two or more items

6    of prior art.

7              MR. CARR:  Your Honor, it occurs to me that

8    what they might be confused about is that there are

9    two references that are accused, that are offered to

10   be anticipatory, and I wondered if it might me helpful

11   to them to clarify to them because those are in the

12   instructions, those two references, and just to let

13   them know that they need to consider each separately.

14             I think that would be helpful to them to let

15   them know.  I think where they may be confused is they

16   have been given two references for anticipation and

17   they may be thinking of them together.

18             THE COURT:  That's possible.

19             MR. ROBERTSON:  Your Honor, the verdict form

20   breaks those down separately.  So the verdict form

21   takes care of that issue.

22             THE COURT:  Well, nonetheless, anything that

23   will help them is fine.

24             All right.  I think I know how to deal with

25   that one.

3308

1          Now, on P.O. Writer, the bottom line is that

2     they are out of the case, isn't it?  They are not to

3     be considered.

4          MR. CARR:  No, Your Honor.  P.O. Writer and

5     J-CON, if you will remember at the time of Dr. Shamos'

6     testimony, were being offered on the issue of

7     secondary considerations of non-obviousness on long

8     felt need.  As systems that were in the marketplace at

9     the relevant time that were meeting the needs of the

10    marketplace.  That was your ruling.

11         THE COURT:  I think I allowed the evidence to

12    come in for that purpose because it occurred after the

13    combination.  I don't think he testified about that.

14         MR. CARR:  Your Honor, yes, he did testify

15    about both of those systems on that point.

16         THE COURT:  What did he say?

17         MR. CARR:  What I would suggestion here if

18    you said they were offered on that point is that you

19    can tell the jury that they are not being offered as

20    prior art for either anticipation or obviousness as

21    long as you tell them that they are offered on

22    secretary considerations of non-obviousness on the

23    long felt need and meeting the needs of the

24    marketplace point.  That would be what I would

25    suggest.

1          MR. ROBERTSON:  That's not the question they

2    asked, Your Honor.  They're asking can it be

3    considered for purposes of prior art for this verdict

4    form.  Isn't that what they are included in the case

5    for?  That's what's now confusing.  They were included

6    in the case.  There was no argument made at the

7    closing argument that they were prior art.  There was

8    no testimony --

9          THE COURT:  Yes, Mr. McDonald started arguing

10   them as prior art, and I told him that he could not

11   argue them as prior art because they were not on the

12   list of prior art either for obviousness or

13   anticipation and he couldn't do that.

14         MR. McDONALD:  But they are prior art for

15   purposes of secondary considerations of

16   non-obviousness.  Prior art just means existed before

17   the patent.

18         THE COURT:  I don't think that's a proper

19   term for that.  I think it can be considered.  The way

20   that evidence can be considered is whether those

21   systems which existed not as prior art but in the

22   commercial world demonstrated that there was no long

23   felt need, but I don't remember Dr. Shamos testifying

24   about that, and I don't remember anybody else

25   testifying about it.

3310

1           MR. CARR:  Well, Your Honor, I would

2    disagree.  I think tie records speaks for itself.

3           THE COURT:  Well, I have to have the record.

4    Get the transcripts and show me where it is.  That's

5    one of the reasons I don't think too much of these

6    people who tried the case being out of town when these

7    questions come in.

8           Do you know where it is, where he testified

9    about it, Mr. Robertson?  Can you help me out?  I know

10   it's not your ox that needs to be pulled out of the

11   ditch, but at least you're here.

12          MR. ROBERTSON:  I have it in the other room,

13   Your Honor.  I'll go check.  I don't recall it.  I

14   recall some testimony from Mr. Staats and the McEneny

15   deposition in which they said when they had the

16   system, at what point in time.  I don't think it was

17   argued as a secondary fact, but I'd have to go check

18   that.

19          THE COURT:  When Mr. McDonald was making his

20   argument, he made the point at some point, I think

21   maybe up at the side bar, that it was to be used for

22   long felt need, but he didn't ever -- he wasn't

23   arguing it as prior art.  He was arguing it to show

24   long felt need, but he never made that argument that I

25   remember either.

1        MR. CARR:  I think he felt that your ruling

2   precluded him from going any farther on J-CON or P.O.

3   Writer, so he needed to leave that alone.

4        THE COURT:  My ruling was you're arguing it

5   for prior art.  You can't do that.  That's what I

6   ruled.

7        MR. ROBERTSON:  Your Honor --

8        THE COURT:  I remember very well what

9   happened.  And if he wasn't picking up on what the

10  drill is on the distinction he was making, that's, I

11  think, his problem, not something I created.

12       MR. ROBERTSON:  And I don't want now an

13  argument to be made with respect to answering the

14  question as to what it should be applied to.  The

15  question is very specific about the verdict form.  And

16  the verdict form says what the prior art is they can

17  consider.

18       THE COURT:  Well, I know what you want, but

19  also if the evidence is in the case, and it came in

20  for long felt need, and now the question is what do we

21  do with it, then it's in the case, and it seems to me

22  that he didn't argue it in his closing argument as

23  evidence of long felt need.  It was there to be argued

24  for that purpose.  There was no other reason to let it

25  in because I had already cut out the combination

3312

1    issues, and if Dr. Shamos testified about it in some

2    way and established it in context of long felt need,

3    then I think I need to clarify for the jury that there

4    is something to that effect in the case

5    notwithstanding that it wasn't in the closing

6    arguments.

7            MR. ROBERTSON:  We'll go check that, Your

8    Honor, but to the extent -- I mean, I think we should

9    clarify it so there's no confusion that it can't be

10   considered prior art for purposes of the verdict form.

11           THE COURT:  There's no question about that.

12           MR. CARR:  I don't have any problem with

13   doing that because it can't be considered for

14   anticipation or obviousness as prior art, but it can

15   be considered on secondary considerations.  I think

16   that would help them the most.

17           MR. ROBERTSON:  Let's go check the record,

18   Your Honor.

19           THE COURT:  Yes.  Now, what do I do with the

20   top problem?

21           MR. ROBERTSON:  Well, this was exactly our

22   fear, Your Honor, that this unspecified, undefined

23   so-called Fisher RIMS system that they are struggling

24   with now because there's insufficient detail for it.

25           We have a suggestion.  My preference,

3313

1  obviously, would be that it didn't go to the jury, but

2  we've crossed that Rubicon.  So here would be my

3  suggestion.  To define Fisher RIMS, you must first

4  determine that there was clear and convincing evidence

5  sufficient to describe the system and its features as

6  of the relevant dates.

7          MR. CARR:  Your Honor, I think that is

8  argument.  I think this is the kind of question that

9  the way it's appropriate to respond to it is that they

10 have to rely on the evidence that they heard from the

11 witnesses and through the documents.  I don't think

12 you can go farther than that or say anything in

13 addition to what is already in the instructions.

14         THE COURT:  Go look at that transcript.

15         MR. CARR:  For Dr. Shamos?

16         THE COURT:  I'll let them go.

17         MR. CARR:  I think I'll need to look at it

18 with them, Your Honor.  So I can agree on what it

19 says.

20         THE COURT:  Of course, you will.  You'll have

21 a chance to do that, but I'm trying to kill two birds

22 with one stone.  Let them find where he's testifying

23 about it, and then you can double check.  I'm not

24 trying in any way -- you see, basically, I thought

25 that the advantage of having this transcript was that

3314

1    you all could plug in the magic twanger and say,

2    "Shamos, long felt need," and it would take you to

3    where he testified to that.

4         MR. CARR:  I don't know that anybody has it

5    electronically here.  We're just going to have to go

6    through the hard copy and look for when he talked

7    about P.O. Writer and J-CON and see what he said.

8         MR. ROBERTSON:  I think it only applies to

9    P.O. Writer.  There's only one question as to P.O.

10   Writer as a competing, similar system.  The other ones

11   ask whether J-CON and P.O. Writer are prior art.  And

12   the answer to that is no.

13        MR. CARR:  I think, Your Honor, they're

14   related.  It's clear that they are trying to figure

15   out what they can use J-CON and P.O. Writer for, and I

16   think the way to make sense and is fair to both sides

17   is simply to tell them that.  And I'm not trying to

18   say that they should be told that they can be used as

19   prior art for anticipation or obviousness, but they

20   should be told what they can use them for, and that is

21   not unfair to ePlus.

22        MR. MERRITT:  Your Honor, before coming to a

23   final decision on this use of J-CON and P.O. Writer --

24        THE COURT:  Can you hold on for just one

25   minute?

1          MR. MERRITT:  Yes.  I'm sorry.

2          THE COURT:  Just hold that thought and I'll

3   be with you.

4          As to the first question, I think I would

5   say, Lawson asserts that something called Fisher RIMS

6   system is prior art for purposes of anticipation and

7   obviousness.  Lawson must prove that what it refers to

8   as Fisher RIMS is prior art by clear and convincing

9   evidence.  EPlus argues that Lawson has not proved by

10  clear and convincing evidence that anything called

11  Fisher RIMS existed sufficiently to be prior art.  You

12  must decide from the evidence whether Lawson has

13  proved by clear and convincing evidence that something

14  called Fisher RIMS is prior art for either purpose.

15  That anything called Fisher RIMS.

16         What do you think about that answer?  Isn't

17  that really where we are?

18         MR. CARR:  I think that's very

19  straightforward, Your Honor.

20         MR. ROBERTSON:  One suggestion, Your Honor.

21         THE COURT:  Sure.

22         MR. ROBERTSON:  Was there something called

23  Fisher RIMS?  I think the evidence would say there is

24  something called Fisher RIMS, but the question is:

25  What were its features at what relevant date?  So I

3316

1   think if the Court could just say what its features

2   were at the appropriate time.

3           MR. CARR:  Your Honor, I think the way you

4   expressed it went far enough.  And we're getting down

5   into the details, in the weeds, of what the evidence

6   was, and I just don't think that helps the jury to do

7   that.

8           Mr. Robertson, I think, is really getting

9   into argument, and that's where he would say what you

10  have done is fine.

11          MR. ROBERTSON:  Your Honor, the devil is in

12  the details here.  It has to have each and every

13  element of each and every claim.  So what the features

14  are of this so-called Fisher RIMS system is what needs

15  to be established, not --

16          THE COURT:  Will you give me some language?

17          MR. ROBERTSON:  Can I give you some?

18          THE COURT:  Yes.  Will you do that?

19          MR. CARR:  Your Honor, obviously, to

20  anticipate, it has to meet every claim, and that's in

21  the instructions.  That's not going to their question.

22          THE COURT:  Well, I think that --

23          MR. ROBERTSON:  I think it's somewhere in

24  there where you described the Fisher RIMS system and

25  its features as of the relevant date would be the

1    pertinent inquiry.

2         As Your Honor knows, there were 40 iterations

3    at least.  There were things they never implemented in

4    the '989 patent.

5         MR. CARR:  Well, Your Honor, now

6    Mr. Robertson is arguing his case to you, and if I

7    could have an opportunity to respond, I would.

8         MR. ROBERTSON:  I'm giving you the reasons

9    why I think something that's directed to what the

10   features are is the thing that the jury needs to

11   determine was sufficiently proven.  Obviously, I don't

12   want my argument to go into the answer to this

13   question, but this has posed the exact problem we were

14   concerned about.

15        Obviously, this is a very thoughtful

16   question, Your Honor, by the jury because they are

17   struggling with and they are grappling with what this

18   means.  Someone is thinking very clearly back there.

19        THE COURT:  Lawson asserts that something

20   called Fisher RIMS is prior art for purposes of

21   anticipation and obviousness.  Lawson must prove by

22   clear and convincing evidence what the Fisher RIMS

23   system was that it contends to be prior art by showing

24   that some version of Fisher RIMS had all of the

25   features and functionality of the claims at issue on a

3318

1    claim by claim basis.

2          EPlus contends that Lawson has not met this

3    burden.  It's for you to decide whether Lawson has

4    done that by clear and convincing evidence.

5          Will that do it for both of you?

6          MR. MERRITT:  Your Honor, that's acceptable

7    to ePlus.

8          MR. CARR:  Your Honor, you used two words,

9    something called Fisher RIMS, in the first line.  That

10   would be the only part that I think ought to come out.

11         THE COURT:  Why?  That's the very problem

12   that was created by the evidence that you offered.

13   You never defined what it was.

14         MR. CARR:  You're characterizing Fisher RIMS,

15   and you've gone on to say that they need to prove to

16   you the different elements.  By using those two words

17   "something called" I think is prejudicial to Lawson.

18         THE COURT:  Why?  Because that's what you

19   have done.  You've called it that.

20         MR. CARR:  Again, Your Honor, I don't think

21   it's appropriate for instruction to the jury to

22   include that phrase because it tends to characterize

23   the evidence and tends to deliver the message that

24   there was nothing called Fisher RIMS.  We disagree.

25         THE COURT:  There wasn't, and I think I may

3319

1   have erred in letting it go as a prior art reference

2   because there's so much about it that is unknown, and

3   I don't think Dr. Shamos ever stood tall and delivered

4   on it.

5          Here's the real problem that's created.  It's

6   that your man, no matter what it is, your man Shamos

7   only based his opinion on invalidity only on the '989

8   patent.  That's the fundamental problem here.  And I

9   may have erred in letting it go to the jury.

10          Lawson asserts what it refers to as the

11   Fisher RIMS system.  I'll do that.

12          MR. CARR:  That's fine.

13          THE COURT:  That takes care of the first one.

14          All right.  Now, you were saying something,

15   Mr. Merritt, and I just interrupted you.

16          MR. MERRITT:  Yes, sir.  This is in

17   connection with both the J-CON/P.O. Writer combined

18   question and the P.O. Writer question.  In our zeal to

19   clarify that, I think we should be careful not to

20   invite the Court into making an error as to what the

21   legal effect of that evidence is.

22          Jury instruction No. 42, which I don't think

23   is a terribly controversial instruction, correctly

24   states the law.

25          THE COURT:  Just a minute.  Let me get there.

3320

1          MR. MERRITT:  Yes, sir.

2          THE COURT:  Okay.  Just a second.

3          MR. MERRITT:  Yes, sir.

4          THE COURT:  Okay.

5          MR. MERRITT:  However we clarify this with

6   the jury in whatever form, we shouldn't inadvertently

7   reverse this instruction.  The purpose of this

8   evidence on long felt but unresolved need, which is

9   factor two, is that it indicates the invention would

10  not have been obvious, and we don't want to

11  inadvertently reverse that concept.

12         THE COURT:  I agree.  I absolutely agree, and

13  I had in mind marking 42 as the instruction that I

14  refer them to when answering this question.

15         MR. CARR:  I think if you just refer them to

16  that instruction and maybe even to .2, that would be

17  fine.

18         MR. ROBERTSON:  I just want to make clear

19  that it is not prior art for purposes of the verdict

20  form that they can consider invalidating --

21         THE COURT:  Yes, that has to be answered in

22  the first part of the claim that it can't be

23  considered as prior art for the purposes of either

24  anticipation or obviousness.  It was permitted into

25  the case only for them to consider in deciding what is

3321

1   discussed in instruction No. 42 and the particular

2   paragraph two.

3           MR. MERRITT:  And it may be helpful, Your

4   Honor --

5           THE COURT:  And I'll read that all again.

6           MR. MERRITT:  It may be helpful to tell the

7   jury the only items that you may consider for any

8   purpose are correctly set forth in your verdict form.

9   The question seems to imply there may have been an

10  inadvertent admission from the form and to say it

11  positively may also help that.

12          THE COURT:  I think that's also in the

13  instructions.

14          Do you want to go check that transcript for

15  me?

16          MR. CARR:  Yes, Your Honor.

17          THE COURT:  What was the instruction on the

18  last one there, Mr. Merritt, again?

19          MR. CARR:  42?

20          THE COURT:  No, I'm sorry, the last question.

21          MR. ROBERTSON:  31.

22          THE COURT:  31.

23          MR. ROBERTSON:  Yes, there are two sentences

24  in there, Your Honor.

25          THE COURT:  Right.  I just need to make

3322

1    myself a note.

2              MR. MERRITT:  Your Honor --

3              THE COURT:  Hold on.  Let me just get there

4    and make sure I'm right about that.

5              MR. CARR:  The only point, Your Honor, that I

6    made is that I think it would be helpful to them to

7    clarify that they just need to consider each of those

8    separately and not together.

9              THE COURT:  What sentence were you talking

10   about?

11             MR. ROBERTSON:  The second full paragraph,

12   second sentence, "To anticipate a claim, each and

13   every element in the claim must be present in a single

14   item of prior art."

15             Next sentence, "Anticipation cannot be

16   established by combining two or more items of prior

17   art."

18             THE COURT:  Okay.  Now, so we need to take a

19   recess now for you-all to go check that transcript.

20             MR. MERRITT:  Mr. Honor, let me ask, given

21   the fact we seem to be in agreement on what works for

22   the J-CON and P.O. Writer, I think that was the

23   relevance of looking at Shamos.

24             So do we agree now?

25             MR. CARR:  That's fine, Your Honor.  I think

3323

1   that's a good way to leave it.

2          THE COURT:  All right.  Let's get the jury

3   back in here.

4          THE CLERK:  That question is Court Exhibit 5.

5          THE COURT:  You haven't marked it, have you?

6          THE CLERK:  No, sir.  I wanted to check the

7   record first to make sure I'm correct.

8          (The jury is present.)

9          THE COURT:  All right.  Ladies and gentlemen,

10  first, your first question is:  In section II,

11  validity (A) what are we supposed to use to define

12  "Fisher RIMS" in A?

13         Lawson asserts that what it refers to as the

14  Fisher RIMS system is prior art for purposes of

15  anticipation and obviousness.  It appears in both

16  those places.  Lawson must prove by clear and

17  convincing evidence what the Fisher RIMS system was

18  that it contends to be prior art by showing that some

19  version of Fisher RIMS had all the features and

20  functionality of the claims at issue on a claim by

21  claim basis.  That's where we start.

22         Now, ePlus contends that Lawson hasn't met

23  that burden.  That was their argument to you.  Their

24  argument was they didn't show any version of Fisher

25  RIMS had the functionality of the claims at issue on a

1   claim by claim basis.

2          It is for you to decide whether Lawson has

3   met its burden by clear and convincing evidence.   In

4   other words, you decide whether Lawson has proved what

5   I outlined for you.   Does that help you?

6          THE JURY:   Yes.

7          THE COURT:   Okay.

8          The next question is:   Since J-CON and P.O.

9   Writer aren't listed on our verdict sheet, are we to

10  consider them as prior art?   Isn't that what they were

11  included in the case for?   Was P.O. Writer meant to be

12  considered as a competing, similar system or was that

13  evidence not to be included in deliberations?

14         There really are two parts of that, and for

15  that I would like to refer you to instruction 30,

16  which lists prior art for purposes of anticipation,

17  and to instruction 39, which lists the prior art

18  that's at issue for obviousness.

19         You will note that neither J-CON or P.O.

20  Writer is listed as prior art either for purposes of

21  anticipation or for purposes of obviousness.   That

22  means that you cannot consider either P.O. Writer or

23  J-CON or the combination thereof for purposes of

24  deciding anticipation or obviousness.

25         Are you with me so far?

3325

1          THE JURY:  Yes.

2          THE COURT:  Now, you asked is that evidence

3    in the case still?  That is, that there existed

4    something called J-CON and P.O. Writer.  And the

5    answer to that is I refer you to instruction 42.  42,

6    I told you, has certain factors which, if established,

7    may indicate that the invention would not have been

8    obvious.  In other words, these are things that show

9    non-obviousness.  None of those factors alone is

10   dispositive and you must consider the obviousness or

11   non-obviousness of this invention as a whole.

12          But if you'll look at No. 2 in that list,

13   there are six things or seven things, I think, in that

14   list.  Yes.  No. 2 says, Was there a long felt but

15   unresolved need for a solution to the problem facing

16   the inventors?  The inventors meaning of the '683, the

17   '516, and the '172 patents, which was satisfied by the

18   claimed invention.  And the evidence about that there

19   is a J-CON and there is a P.O. Writer was admitted for

20   you to consider in deciding whether or not you think

21   there was a long felt but unresolved need for a

22   solution to the problem facing the inventors in this

23   case, which was satisfied by the claimed invention.

24   In other words, that evidence is related and admitted

25   only for the purpose for you to consider in deciding

1    the issue of non-obviousness as outlined in

2    instruction No. 42, which I can read it all over again

3    to you, but I think you can consider it yourselves

4    when you get back in the jury room.

5            I think we have now answered them as we

6    agreed; is that right, Mr. Robertson and Mr. Carr?

7            MR. CARR:  Yes, Your Honor.

8            Do you have a second -- another question?

9            MR. ROBERTSON:  Yes, Your Honor, I would like

10   to point out that all the factors need to be

11   considered --

12           THE COURT:  All the what?

13           MR. ROBERTSON:  All the factors need to be

14   considered under instruction 42 as you have given it.

15           THE COURT:  Yes.  I said I could read them

16   all, but they said they didn't want them read, they

17   could read them themselves.

18           MR. ROBERTSON:  Understood.  Thank you.

19           THE COURT:  Now, in your last question, it

20   is, "In jury instructions, Judge Payne spoke of

21   anticipation:  Two items combined are not prior art.

22   So anticipation does not apply anymore.  Is this

23   correct?"

24           Let me refer to you instruction No. 31, which

25   deals with anticipation, and in the second paragraph

1    there, it says, To anticipate a claim, each and every

2    element in the claim must be present in a single item

3    of prior art.  A single item of prior art.

4    Anticipation cannot be established by combining two or

5    more items of prior art.

6                So are you with me there?

7                THE JURY:  Yes.

8                THE COURT:  Now, I'll point out to you that,

9    I've told you before, that in deciding obviousness,

10   you can consider combinations of prior art, but in

11   anticipation, you can't.  To anticipate, everything

12   has to be in one piece of prior art.  Okay?  Does that

13   answer your questions?

14               THE JURY:  Yes.

15               THE COURT:  Any objections to the answers?

16               MR. CARR:  No, Your Honor.

17               MR. ROBERTSON:  No, Your Honor.

18               THE COURT:  All right.  Thank you very much.

19   You-all may retire to deliberate your verdict.

20               (The jury resumes their deliberations at

21   11:34 a.m.)

22               THE COURT:  I guess they are working their

23   way through things.  Their lunches haven't come yet,

24   have they?

25               MR. LANGFORD:  No.

3328

```
 1              THE COURT:  Mr. Neal will tell you about
 2    that.  Thank you very much.
 3              (Recess taken.)
 4              (Court resumes at 2:15.  The jury is not
 5    present.)
 6              THE COURT:  Where is the question?
 7              THE CLERK:  I gave it to Ms. Haggard.
 8              THE COURT:  "Could we please have the trial
 9    transcripts for Dr. Weaver, Dr. Shamos, Patrick
10    Niemeyer, and Brooks Hilliard?"
11              What do you think, gentlemen?
12              MR. CARR:  I mentioned to Mr. Robertson
13    beforehand, it's fine with Lawson.  It's up to the
14    judge whether you send transcripts back, but they've
15    asked for it, and they wanted it.  And we think that's
16    what you ought to do, but we understand it's up to
17    you.
18              MR. ROBERTSON:  We think, Your Honor, there's
19    a jury instruction on it with respect to the evidence.
20    And it's the jurors' recollections that should
21    control.  We're going to get way down in the weeds if
22    we start trying to piece together all these
23    transcripts.
24              THE COURT:  What?
25              MR. ROBERTSON:  We think that they should
```

1   rely on their recollections of the witnesses

2   testimony.

3           THE COURT:  Well, I told the jury in the

4   beginning we didn't have the transcripts to give to

5   them, didn't have the capacity to do that.  The reason

6   for doing that is because in the past, we 've never

7   had the transcript to give them.  And now even we

8   generally don't have daily transcripts.

9           And they know we have them now because, in

10  fact, both of you cited them in your closing

11  arguments.  And I'm wondering why if the jury is

12  willing to look through all that and you-all haven't

13  taken exception to any of the transcripts, have you?

14  Anybody?

15          MR. CARR:  As to their accuracy, do you mean?

16          THE COURT:  Yes.

17          MR. CARR:  No.

18          THE COURT:  You haven't had any, have you,

19  Mr. Robertson?

20          MR. ROBERTSON:  I did review some.  There are

21  some inaccuracies, but we haven't had the time to

22  correct them.  For example, at one point I asked

23  whether a customer had looked at something and it said

24  in the transcript whether the court had looked at

25  something.  I just noticed that one discrepancy.

3330

1          I think on the large part the court reporters

2    have done a remarkable job given how fast some of the

3    lawyers talk, myself not included, of course.  But I

4    would think that they are largely, in large part, I

5    would not quibble with the accuracy, Your Honor.

6    That's not my objection.

7          THE COURT:  Well, if they are willing to go

8    through and look at them.

9          MR. ROBERTSON:  It's going to take us a

10   little time to assemble them, as you might expect,

11   Your Honor, because, for example, I think Dr. Weaver

12   testified over the course of three days.  So this is

13   not something I can turn around in a few moments, but

14   we can do our best.

15         THE COURT:  Let me ask you something.  Can

16   the court reporters print out just parts of the

17   transcript?

18         THE COURT REPORTER:  Judge, Peppy is not here

19   today and she has her part at home with her.  I don't

20   have that here.  They haven't been filed yet.

21         THE COURT:  They haven't been filed yet?

22         THE COURT REPORTER:  No, sir.

23         THE COURT:  Do you all have other things to

24   do before you file them?  Are these unedited versions

25   or what?

1          THE COURT REPORTER:  We just haven't had time

2    to file them and they haven't been proofed.

3          MR. ROBERTSON:  We're talking literally

4    several hundred pages.

5          THE COURT:  What?

6          MR. ROBERTSON:  We're talking literally

7    several hundred pages, Your Honor, for these four

8    individuals.

9          THE COURT:  Yeah.  I can imagine.  They

10   talked -- Dr. Weaver was here for a day and a half,

11   wasn't he?  And Dr. Shamos was here for about the same

12   period of time.

13         MR. CARR:  He was split up.

14         THE COURT:  He was split up, but if you added

15   it all together we're looking at probably a day plus

16   testimony.

17         MR. CARR:  Yes, I think that's right.

18         THE COURT:  And then Mr. Niemeyer was what,

19   about three or four hours.  Three hours.  Four hours.

20   And Mr. Hilliard was probably about the same, I think.

21   So I would imagine if you needed to, you could print

22   out just a part of the transcript?

23         THE COURT REPORTER:  Yes.

24         THE COURT:  But the court reporter who has

25   part of the transcript is not here today, and the only

1    way I know for her to do that is to segment it out and

2    then e-mail it to you.

3            See how technical I've became?  It's absurd.

4    And email it to you.  And then you could do that.  But

5    that doesn't solve the problem that the transcript

6    hasn't been edited.

7            MR. CARR:  It hasn't been proofed, I think,

8    is what --

9            THE COURT:  I mean proofed.  Excuse me.

10           MR. CARR:  We'd be happy to edit it.

11           THE COURT:  We don't usually do that.  That's

12   a good point.

13           MR. MERRITT:  Judge, the thought crosses my

14   mind, I don't know if this is the case or not, I

15   really wonder if this question is a proxy just for one

16   or two issues that they are really struggling about

17   that may be touched upon in these transcripts but fall

18   short of having to produce four transcripts wholesale.

19   I don't know if it's helpful for the Court to inquire

20   further about that or this just gets us further in the

21   weeds.  But it just crosses my mind that maybe there

22   is some issue that these four people all addressed,

23   and somehow by seeing them lined up, they are able to

24   resolve that issue.

25           I don't know.  I just raise it for the good

1    of the cause.

2           THE COURT:  I had given some thought to that,

3    too, when I was told that they had asked the court

4    security officer for the transcripts.  I said, Well,

5    go back and ask them what they want.  And they came

6    back with this.

7           I think the original verbal request was for

8    the transcript, and they didn't say, as far as I knew,

9    from beginning to the end, and the depositions.

10          Didn't they ask for the depositions,

11   Mr. Langford?

12          MR. LANGFORD:  Yes.

13          THE COURT:  And the depositions are exhibits.

14   They just didn't go back to them, I believe.  I

15   believe that we had talked about it previously, and I

16   think we said if they asked for them, we could give

17   them to them, but they didn't ask for them when I sent

18   him back.

19          Now, they have decided -- when I told them to

20   write down what they wanted so I could get it to you

21   all without having something slip between the cup and

22   the lip in the information sense, they just wanted the

23   trial transcripts for these four people.  And we

24   haven't had those things proofed yet.

25          And I think you're probably right, that they

3334

1   probably are focusing on some issue, but then the

2   question would come, Well, what's the testimony that

3   relates to that issue?  And I think ePlus might have

4   one view of that and Lawson might have another view of

5   that.  And so I would be inclined to give them the

6   whole and let them find what they wanted if I were

7   going to do anything.

8           MR. ROBERTSON:  I am concerned, Your Honor,

9   they have not been proofed yet.  I have gone through

10  some of them and there are just --

11          THE COURT:  I can say this.  Just by looking

12  at Ms. Daffron's face, I think she was concerned

13  whether they are proofed, too.

14          I think that what I've seen of the

15  transcripts, I've really not seen much by the way of

16  error, or any error, but I've only seen what you-all

17  have used in your closing arguments.

18          MR. CARR:  We can certainly tell them that

19  they have not been proofed.

20          THE COURT:  Yes.  In part, I wonder whether

21  the problem could be solved by asking them whether

22  what they really want is the part used in closing

23  arguments.

24          MR. CARR:  Perhaps we put in a little from

25  each of these witnesses in closings, but in general I

1    think most of what was quoted in closings was not from

2    these four.

3            THE COURT:  Yeah, I think you're right

4    actually.  The more I think about that, I think you're

5    right, Mr. Carr.  While there were transcripts used,

6    it wasn't from these four.  Dr. Shamos was three or

7    four times by Mr. Robertson, and I think Mr. Weaver

8    was a couple times by Mr. McDonald.  Your point is

9    well taken.

10           Well, I think what I'll do is tell them the

11   transcripts haven't been proofed yet in their entirety

12   and they have to rely upon their memories of what the

13   witnesses said given that they haven't been proofed.

14   I don't know what else to do.

15           Does it concern you that they haven't been

16   proofed, Mr. Carr?

17           MR. CARR:  It does not.

18           THE COURT:  I'll have to say that what I've

19   seen of them doesn't indicate there's anything much

20   that would be served by proofing.  But to say that is

21   a major jump because it's very little that I've read

22   in my legal career that didn't improve by being

23   proofed.

24           Is this the original question that you gave

25   me?  All right.

3336

1          I'll say the transcripts have been prepared,

2     but they have not been proofread in their entirety,

3     and, therefore, you will need to rely on your

4     recollection of the testimony.

5          Is that satisfactory?

6          MR. ROBERTSON:  Your Honor, in all candor,

7     Your Honor, I don't know if there is any right answer

8     to this, but that is satisfactory.  I'm almost in

9     perfect equipoise on this, but I am concerned about

10    the transcripts going back there not proofed.  So I

11    think I'm in agreement with you and would not object

12    to that instruction.

13         MR. CARR:  That answer is fine from Lawson's

14    standpoint if that's your decision that they should

15    not have them.

16         THE COURT:  The comment is fine.  You'd

17    prefer they have the transcript?

18         MR. CARR:  Exactly.

19         THE COURT:  I think the record is clear on

20    that.  But I think it's wise to make it clear.

21         MR. CARR:  That's right.

22         THE COURT:  Here is the question.

23         THE CLERK:  The answer will be 7, the

24    question is 6.

25         THE COURT:  Okay.  Does that take care of

```
 1    everything so far?  Put a copy of that back up here so
 2    I'll have it in case we need it.
 3             MR. CARR:  Judge?
 4             THE COURT:  Yes.
 5             MR. CARR:  This does not need to go on the
 6    record.  This is a point of personal preference.
 7             (Off the record discussion.)
 8             (Recess taken.)
 9             (Court resumes session at 5:30 p.m.  The jury
10    is present.)
11             THE COURT:  All right.  Ladies and gentlemen,
12    you are through for the day and will come back
13    tomorrow.  When do you want to come back?  Is 9
14    o'clock all right?
15             THE JURY:  Yes.
16             THE COURT:  We'll see you at 9 o'clock
17    tomorrow.  Do you want your lunch brought to you or do
18    you want to get out of confinement?  You didn't
19    realize that serving on a jury is sort of like being
20    on lockdown, did you?  Because if you want lunch,
21    we'll have it brought to you, but if you want to get
22    out and go on your own --
23             THE JURY:  We can just bring lunch in.
24             THE COURT:  You want us to bring lunch?
25             THE JURY:  Yes, please.
```

3338

1          THE COURT:  All right.  We'll do it.  As hard
2   as you-all work, what we're asking you to do, that's
3   the least we can do for you.
4          Thank you.  Drive carefully.  Mr. Neal will
5   take care of your notebooks.  In fact, he'll just lock
6   the room up so you don't have to move things.
7          (The jury is leaving for the evening to
8   return tomorrow at 9:00.)
9          THE COURT:  Do you feel lonely, Mr. Carr?
10          MR. CARR:  I've got my little room in the
11   hallway.  People come by and see me in there and come
12   talk to me.
13          THE COURT:  You can get some billable hours.
14   We don't need to be on record for this.
15          (Off-the-record discussion.)
16          THE COURT:  See you in the morning at nine.
17          (The proceedings were adjourned at 5:32 p.m.)
18
19
20
21
22
23
24
25