3339

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
2              RICHMOND DIVISION

3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                  :
4   ePLUS, INC.,                  :
                                  :
5                    Plaintiff,   :
    v.                            :   Civil Action
6                                 :   No. 3:09CV620
    LAWSON SOFTWARE, INC.,        :
7                                 :   January 26, 2011
                     Defendant.   :
8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ :

9

10

11        COMPLETE TRANSCRIPT OF **JURY TRIAL**
        BEFORE THE HONORABLE ROBERT E. PAYNE
12      UNITED STATES DISTRICT JUDGE, AND A JURY

13

14

15   APPEARANCES:

16   Scott L. Robertson, Esq.
     **Michael T. Strapp, Esq.**
17   GOODWIN PROCTOR
     901 New York Avenue, NW
18   Washington, D.C.   20001

19   Craig T. Merritt, Esq.
     CHRISTIAN & BARTON
20   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095

21
             Counsel for the plaintiff ePlus
22

23

            DIANE J. DAFFRON, RPR
24          OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT
25

3340

1    APPEARANCES:   (Continuing)

2    Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
3    Troutman Sanders Building
     1001 Haxall Point
4    P.O. Box 1122
     Richmond, VA   23218-1122
5
             Counsel for the defendant Lawson Software.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3341

1            (The proceedings in this matter commenced at

2     9:14 a.m.  The jury is not present.)

3            THE CLERK:  Civil action No. 3:09CV00620,

4     *ePlus, Incorporated v. Lawson Software, Incorporated.*

5            Mr. Scott L. Robertson, Mr. Craig T. Merritt,

6     and Mr. Michael T. Strapp represent the plaintiff.

7     Mr. Dabney G. Carr, IV, represents the defendant.

8            Are counsel ready to proceed?

9            MR. ROBERTSON:  Yes, Your Honor.

10           MR. McDONALD:  Yes, Your Honor.

11           THE COURT:  All right.  The juror who usually

12    sits right here on the end, the blonde lady, yesterday

13    afternoon told us that she might need to leave early

14    today to get some medicine that was being prescribed

15    for her, and we said fine, but you can also go in the

16    morning and we'll start later.

17           And also after, I guess after they were

18    excused, I mentioned to Mr. Langford that she could go

19    during the lunch hour, too, if she wanted to, that we

20    would work that out.

21           Mr. Langford this morning approached her.

22    Apparently, there's some difficulty about being sure

23    when the medication is going to be called in for her,

24    but this is all beside the point to the point that I

25    am now going to bring to your attention.  It's just

1    the lead up to it.  She said when he suggested, as I

2    had asked him to do, that if she wanted to go at

3    lunch, that we'd work that timing out for her.  She

4    said, Well, I'll just go off my meds.

5          And Mr. Langford wisely said, Well, no, the

6    judge wouldn't want you to do that.  And she said,

7    Look, I just want to get off this jury.  I'm talking

8    one thing; they're talking another.  They're talking

9    about me.  They are conspiring against me.

10         And Mr. Langford said, I don't want to hear

11   anymore, in a polite way.  He said, Do you want me to

12   bring this to the Judge's attention?  And she said,

13   Yes.

14         And having been brought to my attention, it

15   seems to me as if it's appropriate to direct it to

16   your attention to solicit your ideas about what, if

17   anything, I ought to do.

18         MR. MERRITT:  Can we chat for a minute, Your

19   Honor?

20         THE COURT:  Yes, you can.  I'll tell you I

21   have not had this particular iteration of a problem in

22   the time that I've been practicing law.

23         MR. CARR:  I haven't either, Your Honor.

24         THE COURT:  Mr. Northrup and I one time had a

25   case, Mr. Carr, where I had one of my key witnesses

3343

1    came back in an arbitration after lunch and he was

2    drunk.  That was a piece of cake to solve compared to

3    this.

4          MR. CARR:  Does it make a difference that the

5    jury has started deliberations?  I've had jurors like

6    we had where the woman got sick during trial, but I

7    don't think I've never had a situation in the middle

8    of deliberations.

9          THE COURT:  Oh, yeah, I've had them called

10   away because of illness, a death in the family.  And

11   the federal system doesn't have alternates for civil

12   cases, which is why I impaneled a nine-person jury to

13   begin with in a three-week case.  So I don't think the

14   excusing of her makes a difference whether it's after

15   or before.

16         It's, substantively, what do you all suggest

17   I ought to do?  I think you are both entitled to be

18   heard on that.

19         I don't know that you all know this.  This is

20   something perhaps you might take into account because

21   I know it, and it's really irrelevant to anything

22   that's going on.  The lady about whom we're speaking

23   is a smoker.  And she comes back from the breaks

24   sometimes later than the 20 minutes allotted and

25   sometimes she's late coming in in the morning.  And it

3344

1   may be that something has been said about that.  I

2   don't know.  To my knowledge, nothing has been said

3   about that, but in any event, that's a fact that I

4   know that you all are entitled to know.

5          Yes, Mr. Merritt.

6          MR. MERRITT:  Your Honor, I've never

7   encountered this either and join Mr. Carr in that

8   regard.

9          I will say that it has not gone unnoticed

10  that for whatever reason this juror appears to be

11  disengaged from the process.

12          THE COURT:  I'm not following you about that.

13          MR. MERRITT:  You see body language in the

14  jury box.

15          THE COURT:  You mean --

16          MR. MERRITT:  Disengaged from her fellow

17  jurors generally.  We have commented on it among

18  ourselves.  I don't know if it has anything to do

19  with -- we don't know what her situation is with the

20  medication or what it's for or anything.  It's all

21  surmise and we can't begin to guess.  And we don't

22  know, obviously, what anybody's leanings are on any of

23  the issues.

24          We are concerned if there's a juror who for

25  whatever reason has psychologically checked out of

1    this process and is not a full participate, that that

2    could cut against either party and may not be serving

3    the whole jury system well.

4         So from that standpoint we think it's a

5    concern if she's not a fully engaged participate in

6    this regardless of what her leanings are.  Then

7    perhaps that doesn't serve either party.

8         THE COURT:  I didn't notice during the trial

9    or closing arguments any of what you said, but I have

10   to tell you, I haven't really been watching the jury.

11   I've been paying attention to what you-all have been

12   doing.  It's so much going on that I pretty much have

13   really focused on the main participants rather than

14   the jury.

15        MR. MERRITT:  It had became noticeable during

16   the deliberative process when the jury was coming back

17   in.  There was a very -- I don't know if this is a

18   juror who has distanced herself from the others or

19   whatever, but just the body language, the looking

20   forward at the wall, and there appears to be some just

21   general tuning out of what is going on to the point

22   where we had commented on it among ourselves yesterday

23   we had noticed it.

24        Again, I don't know what that portends for

25   either party.  For all I know, she may be the only

1    person on the jury who thinks that ePlus has the

2    stronger side of this, but either way, if we have a

3    disengaged person who is not engaged with the other

4    jurors and engaged with the process, we're not sure

5    that that -- maybe she should just be released to go

6    home, and we would still have the appropriate number

7    of jurors, and they would hopefully be able to reach a

8    verdict.

9              THE COURT:  Mr. Carr, what saith you?

10             MR. CARR:  Your Honor, I guess what I would

11   like to suggest is that we don't do anything right

12   now.  I would like a chance to call Mr. McDonald and

13   chat with him about it and think about it.

14             I am concerned about excusing a juror because

15   they're not getting along.  I think there are going to

16   be a lot of reasons to excuse a juror, and illness

17   being a good reason.  But there are all kinds of

18   juries where internally they are not getting along.

19   And I'm not sure it's appropriate if somebody doesn't

20   want to participate or feels like they are not

21   participating fully, that we just let them go, and

22   that's the way we reach -- we just allow the jury to

23   be smaller, and I want to think about that.

24             So my suggestion would be that we go ahead

25   and send them off to deliberate this morning.  And

3347

1    maybe by the lunch hour bring them back in and we

2    resolve it.  Or maybe we just come back with you.

3              THE COURT:  Oh, no.  It has to be resolved

4    right away.  That's one of the problems about Mr.

5    McDonald taking off now.  He's here, isn't he,

6    available to the telephone?

7              MR. CARR:  Yes, he's available, and if you

8    want to take a five-minute break or a ten-minute

9    break, I can go call him.

10             THE COURT:  Yes.  And you tell him to be on

11   station because I'm not going to let this go forward

12   until I understand what the situation is.

13             One of the things I can do is go ahead and

14   question her apart from the other jurors and ask her

15   what the situation is.

16             If we are going to do that, there are two

17   ways to do that:

18             One is to have her come into my office with

19   one person from each side and the court reporter and

20   do it.

21             Another is to ask her to come in here.  And I

22   think what I would do is clear the courtroom of all

23   but the representatives, Mr. Robertson, Mr. Merritt,

24   and Mr. Carr, and if Mr. McDonald wanted to be on the

25   phone, I could do that, but I don't want a lot of

3348

1  people involved.  It's intimidating to somebody to

2  have too many people.

3          MR. MERRITT:  Your Honor, just two things I

4  agree completely with Mr. Carr that jurors should be

5  expected to butt heads over things, and we should

6  never have anybody leave the jury.

7          The statement "The other jurors are

8  conspiring against me" has a, for lack of a better

9  word, a slightly --

10          THE COURT:  Excuse me one minute.  I think

11  she also said, Mr. Langford, you correct me if I'm

12  wrong, "They're talking about me."

13          MR. LANGFORD:  Yes.

14          THE COURT:  She also said, "They're talking

15  about me," and I don't know that I actually said that.

16  I intended to, and I think I left that out of the

17  discussion accidentally.

18          So that connotes a problem, I think.  I

19  didn't perceive Mr. Merritt's motion as excusing her

20  for the reason that there was conflict.

21          MR. MERRITT:  Absolutely not.

22          THE COURT:  I think he was saying she's

23  disengaged from the process, and this is further

24  evidence of what we believe we've been sort of looking

25  at.

3349

1      MR. CARR:  I have to say, honestly, appearing

2 to be disengaged from the process is not a reason to

3 excuse a juror.

4      THE COURT:  Appearing to be is not because

5 there are plenty of jurors who drift off and look up

6 there.

7      MR. MERRITT:  Your Honor, were it not coupled

8 with the things that you just reported to us,

9 obviously, we wouldn't have even raised it, but I

10 thought I would share with the Court our own

11 observation to the extent it's useful.

12      THE COURT:  Do you think I ought to talk to

13 her about this now?

14      MR. CARR:  I think that's a good idea.  And,

15 Judge, you can do it in whatever form you think best,

16 but she may feel more comfortable sitting in your

17 office than sitting in this courtroom.

18      THE COURT:  That's fine with me.  That's why

19 I said I'm asking your views on it.  Is that all right

20 with you-all?

21      MR. MERRITT:  It is, Your Honor.

22      THE COURT:  All right.  Well, Mr. Robertson,

23 Mr. Merritt, Mr. Carr, and the court reporter will

24 come back.

25      MR. ROBERTSON:  Your Honor, I'm happy to just

3350

1   have Mr. Merritt go back.

2           THE COURT:  That's fine.  And we'll do that

3   back in my office and see where we go.  All right.  I

4   guess that's it for now.

5           (Recess taken.  Pages 3351 through 3372 are

6   contained in a sealed transcript and filed under seal.

7   This transcript resumes with page number 3373.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            (Court is resumed and the jury is present.)

2            THE COURT:  Ladies and gentlemen, I'm going

3    to give you some further instruction.  One of the

4    jurors feels some discomfort in the deliberative

5    process.  And it is normal in the deliberative process

6    that people have different views about things.

7            I don't know if you have ever seen the movie

8    called *Twelve Angry Men*, but it's a case study in how

9    sometimes the process works.  People have views, and

10   then the more there's a discussion of views, sometimes

11   people change their minds on things.  And so what I'm

12   going to do is this:  Ask you to consult with one

13   another carefully and think over again with a view to

14   reaching a unanimous agreement.

15           So each of you have to decide this case, as I

16   said earlier, for yourself, doing that only after an

17   impartial consideration of the evidence in the case

18   with your fellow jurors.

19           As I've said before, you shouldn't hesitate

20   to reexamine your own views or change your opinion if

21   it is erroneous.  You should keep in mind that each

22   juror of one view should reconsider his or her own

23   views in light of the views of the majority in this

24   process.

25           And likewise, each juror who is in the

3374

1   majority should reconsider his or her own views in

2   light of the opinions of the jurors who are in the

3   minority.

4         Of course, as I told you before, you should

5   not surrender your honest conviction as to the weight

6   or effect of evidence solely because of the opinion of

7   your fellow jurors or for the purpose of returning a

8   verdict.

9         You need to keep in mind at all times that

10   the plaintiff has the burden of proving by a

11   preponderance of the evidence the issue of

12   infringement.  And the defendant has the view of

13   proving by clear and convincing evidence, as I have

14   defined it in those instructions, and you have them

15   back there, the issues of invalidity.

16         And you need to keep those burdens of proof

17   in mind when you're deciding the case.  It's important

18   to assess when you're looking at infringement:  Now,

19   has to plaintiff proved it's more likely than not that

20   this claim, that claim, or the other has been

21   infringed?  Because you're looking at the evidence,

22   and nothing is perfect in this world, and you're never

23   going to get all the clear answers that you want.

24   That's just the way things are.

25         I want to get here the instruction on clear

1    and convincing evidence.

2         Does anybody remember the number of it here?

3         Because you have to consider the same thing

4    for the defendant.  In No. 29, that appears.  And I've

5    told you the claims of an issued patent may be found

6    invalid.  Then I've told you that Lawson must prove by

7    clear and convincing evidence that a claim is invalid,

8    considering it claim by claim, and that that kind of

9    evidence, clear and convincing, is evidence which

10   produces in your minds an abiding conviction that the

11   truth of the factual contentions are highly probable.

12        So in making your decisions, you do have a

13   difference in assessing the question of infringement

14   and the questions of invalidity, and you need to keep

15   that in mind.

16        It's also a good idea to keep in mind that

17   this case has taken considerable time of you and the

18   parties to try.  And there doesn't appear any reason

19   to believe anybody else could decide it any better

20   than you can.  You-all are eight competent, capable

21   people who have devoted your time, effort and

22   attention to this.

23        And it isn't unusual in the course of jury

24   deliberations that people have strong feelings about

25   one issue or another, one side or another.  And that's

1   all right.   There's nothing wrong with that.   But in

2   the course of trying to discharge your duty, you have

3   to calmly, carefully, deliberately talk about it all,

4   and then remember that you're not partisans, you're

5   the judges in the case.   And considering then which is

6   the right result according to the instructions that I

7   have given you.

8          So if you-all will continue your

9   deliberations in that fashion, I will appreciate it

10  very much.   And you-all can retire.

11         Anything else that you think I need to say?

12         MR. MERRITT:   No, sir.

13         MR. CARR:   No, Your Honor.

14         THE COURT:   Thank you very much.   You can

15  retire to deliberate your verdict.

16         (The jury is retiring to continue their

17  deliberations at 10:08 a.m.)

18         THE COURT:   Just for the record, that was a

19  modified Allen charge, but I think I tried to modify

20  it to what circumstance we were confronted with by the

21  facts, mindful of the fact that Mr. Carr -- I think

22  you said that some of it is stern, of the traditional

23  charge is stern.   And a lot of that has to do with how

24  it's articulated, but the fact of the matter is it may

25  presuppose the first part of it, the standard charge,

3377

1   kind of presupposes that they actually have locked,

2   and I'm not sure that they actually have locked

3   inasmuch as they have not completely engaged.  And

4   that's what I hope we can accomplish now.

5             MR. ROBERTSON:  *Twelve Angry Men* is one of my

6   favorite movies, Judge.

7             THE COURT:  It's one of the best.  Somebody

8   made an updated version.

9             MR. ROBERTSON:  Jack Lemon was in it in the

10  Henry Fonda role.

11            THE COURT:  Yes, but it wasn't as good as

12  Henry Fonda.

13            THE CLERK:  Better than *My Cousin Vinny*?

14            THE COURT:  It's of a different genre.

15            THE CLERK:  I've seen it.  I'm just kidding.

16            THE COURT:  Make sure Mr. McDonald is around.

17  And he can't go anywhere that he's not available to

18  the phone until this is over.

19            MR. CARR:  I have his cellphone number, and

20  he answers on the second ring.

21            THE COURT:  Okay.

22            (Recess taken.)

23            (Court is resumed at 4:45 p.m.  The jury is

24  not present.)

25            THE COURT:  You have got the question.

3378

1    Several jurors were under the impression that the

2    Court said we would have Dr. Shamos' claim by claim

3    analysis for review.  Is it possible to get that - I

4    guess it means along with Dr. Weaver's - claim by

5    claim analysis?

6           I don't know what I said that suggested that.

7    It may have been that I said it hadn't been proofed.

8    So they inferred it was being proofed and it would be

9    there, but I'm fairly sure I told them they couldn't

10   have it because we didn't have it.  And I think I said

11   it hadn't been proofed.

12          Isn't that what I said?

13          MR. CARR:  I don't remember you talking about

14   a claim by claim analysis.  I remember talking about

15   the transcript of the testimony.

16          THE COURT:  Their whole testimony.  That's

17   what I mean.

18          MR. ROBERTSON:  There was a request for all

19   the transcripts.

20          THE COURT:  It was the transcript of the four

21   experts.

22          MR. ROBERTSON:  Let me try and break this

23   down because I'm a little confused by this.  The only

24   overlap between Dr. Weaver, who was our infringement

25   expert, and Dr. Shamos, who was their non-infringement

1  expert, is on those issues.  Both had to do a claim by

2  claim, element by element analysis.  That testimony is

3  what the testimony is.

4        I think their best recollection of what that

5  testimony is is what they need to rely on because

6  we're not giving them the transcripts from what I

7  think we understood from the prior ruling.

8        So that's where we are at in that scenario.

9  They need to use their recollection, as the Court has

10 instructed them.  I think at this point we're still

11 not in a position to give them transcripts.  I'm still

12 not comfortable in giving them the transcripts on

13 that.  But if the overlap is just the infringement

14 issue, but it's a little ambiguous whether this goes

15 beyond that.

16       But, Your Honor, I think they just have to

17 rely on their recollections and do the best they can

18 with the evidence before them.  They do have the

19 Lawson documents they can refer to in order to

20 determine whether there's infringement.

21       They do have Dr. Weaver's demonstration that

22 they can look at to determine.  And that is what they

23 should consider.

24       THE COURT:  Well, it occurs to me that if

25 we're going to give them claim by claim analyses, we

1    need to tell them that the claim by claim analyses

2    relates to two components of the case; one is

3    infringement and one is invalidity.

4            And if what they want is only the

5    infringement, then we need to understand that.  If

6    they want the invalidity, then that also would

7    require, if we gave them Dr. Shamos' invalidity

8    opinions, we'd have to give them Mr. Hilliard's as

9    well, I would think.

10           MR. CARR:  Yes, sir, I would agree with that.

11           THE COURT:  Okay.

12           MR. CARR:  But you're back to the question, I

13   think Mr. Robertson pointed out, whether to give them

14   the transcript.

15           THE COURT:  Yes.

16           MR. CARR:  We're inclined to give them to

17   them, but we had this discussion yesterday, and I

18   think it's up to you.

19           THE COURT:  We first have to identify where

20   the claim by claim analysis is in the transcripts.

21   You first have to say where is that.

22           MR. CARR:  We talked about that a little bit

23   yesterday.  What I would say I believe you said was it

24   will be difficult for us to choose which part of the

25   testimony to give them, that we probably just have to

1    give it all to them.  That's an issue.

2           MR. ROBERTSON:  I agree with Mr. Carr.  Not

3    only is it an issue as to what we'd agree on, it would

4    take some time to agree on it.

5           Let's be clear.  Dr. Shamos in his claim by

6    claim analysis, and this isn't improper, I'm not

7    trying to suggest that, but what he said was, This is

8    absent.  And all I would point out is what is absent.

9           For example, on infringement he said, There

10   are no catalogs in the Lawson system.  And he based

11   that on his interpretation of the Court's

12   construction.  So he didn't have to go through every

13   element by element basis.

14          His position was if an element is missing,

15   that's the end of the inquiry.  I don't disagree with

16   that theoretical.  Obviously, I disagree with it as to

17   the facts.

18          Invalidity, we don't need to go through every

19   claim by claim element.  We say, Here's what's missing

20   from the prior art.  Once we do that, an element is

21   missing, as the Court understands, that establishes

22   that there's no invalidity because you have to have

23   all of the elements.

24          So the instruction is correct.  The evidence

25   is focused on what is either present or absent, and

3382

```
 1   that's what's going to be there.  The other part about
 2   what the problems with the transcripts are, and I
 3   don't know where we are on whether we have proofed
 4   them yet, but we went back and were looking at some of
 5   them, and there are a number of side bars that are in
 6   the transcript during the course of those --
 7             THE COURT:  They would have to be edited out.
 8             MR. ROBERTSON:  Exactly.
 9             THE COURT:  No question about that.
10             MR. ROBERTSON:  So this is going to take some
11   time, Your Honor.  So I come back to the situation we
12   still have a problem with the proofs.  We still have a
13   problem with editing out things.  And we still have a
14   problem with putting undue emphasis on the
15   transcripts.
16             I just still think -- I sense what they are
17   grappling with, Your Honor.
18             THE COURT:  I'm glad that you have got that
19   extrasensory perception, because I can't claim to be
20   as prescient as you are about it.
21             MR. ROBERTSON:  You have some stellar
22   instincts, Your Honor.  But I just think we have to
23   stick with where we started out and just say you have
24   to -- it does need to be claim by claim, element by
25   element, but you need to rely on your memories and
```

1    your recollection of what the evidence is.

2         MR. CARR:  Your Honor, one other suggestion.

3    We just have different views about whether they should

4    have the transcripts.  We don't think that the

5    proofing problem is big.  But if you decide that they

6    should have some transcripts, given the time, that's

7    something where you can tell them come back at nine,

8    and the parties overnight can pull together the

9    transcripts, take out the side bars and have them

10   ready for the jury in the morning.

11        MR. ROBERTSON:  I think that would be an

12   enormous exercise, Your Honor.  Particularly since I

13   have great confidence in Mr. Carr, who has been

14   thoroughly empowered, as I understand when the Court

15   asked that question, but we're going to be dealing

16   with people in Minnesota who are out there.  I don't

17   think we're going to come to an accord over what is

18   supposed to be presented to them and what's not

19   supposed to be presented to them in this transcript.

20        MR. CARR:  I wasn't suggesting that we do

21   anything but give them all the testimony from each of

22   those witnesses.

23        THE COURT:  You were talking about giving

24   them all the testimony from each of those three

25   witnesses but excise the side bars.

3384

1          MR. CARR:  Exactly.  I think it's four

2     witnesses.

3          MR. ROBERTSON:  Your Honor, then there's

4     J-CON involved, there is P.O. Writer, things that

5     didn't have to do with this claim by claim, element by

6     element analysis.  I'm not clear.  This looks like

7     they're talking about infringement.

8          THE COURT:  Do you know what this is?

9          MR. ROBERTSON:  Three fingers.

10          THE COURT:  That's it.  There's an old phrase

11     that's indigenous to the bar round here.  It's the

12     three phrase rule.  And that is you made your point

13     three phrases ago.  Stop talking.

14          MR. ROBERTSON:  I understand.

15          THE COURT:  I fear that it is too complicated

16     a question to pull all this out now given the rulings

17     that I've made about what is pertinent and what is not

18     given some of the testimony, stricken some of the

19     testimony, and that exercise would be one that would

20     take a great deal of time and care, and I have to say

21     that I've not seen that process work very well.  It's

22     not as bad here as it is in Congress, but it's

23     approaching it.

24          Although I notice that today you-all didn't

25     sit together, and I don't understand why you didn't.

3385

1          MR. ROBERTSON:  I will hug Mr. Carr right

2    now.

3          THE COURT:  I bet --

4          MR. CARR:  That's right.  Mr. Strapp should

5    sit on my side.

6          THE COURT:  All right.  I'm going to advise

7    them the transcripts are not available; therefore, you

8    need to rely on your recollection of the evidence.  Is

9    that sufficient?

10         MR. ROBERTSON:  Yes, sir.

11         THE COURT:  Now, give this to them, Mr. Neal,

12   so they can continue.  They are going to stay -- and

13   mark that Court Exhibit 9.

14         The jury said they want to stay until 5:30

15   night and leave.  One of the jurors is from

16   Fredericksburg, and his wife called and reported that

17   they have an inch of something up there, and he's

18   spending the night in a hotel, so he'll be here.

19         One of the jurors needs to get some medicine

20   in the morning.  So we're not going to start until

21   9:30, and that can be done.

22         The jurors let Mr. Langford know that they

23   want to eat dinner tomorrow night, and they wanted to

24   work as late as it took.

25         Don't plan any birthday dinners tomorrow.

3386

1          MR. CARR:  I've run out of relatives to claim

2     a birthday.

3          THE COURT:  What?

4          MR. CARR:  I've run out of relatives to claim

5     a birthday.

6          THE COURT:  I was looking for one.  I thought

7     it was a good idea.  But my wife's is not until

8     February.

9          So that's what we've been told.  Now, what

10    all that means, I don't know, but now you know.

11         We'll wait and see if they say anything else.

12    My suggestion is that you may just want to stay around

13    for the next half hour to see if anything else

14    happens.  I don't have a specific reason for that

15    except that I'd hate for Mr. Robertson to try to make

16    it here in four minutes and break his neck on the ice.

17         MR. ROBERTSON:  Ms. Haggard suggested I

18    needed exercise.  I tried to tell her I've already

19    lost 13 pounds in four weeks, Your Honor.

20         MR. MERRITT:  Judge, I have run up and down

21    the hill so many times today that I'm going to need to

22    ring out my underwear.  It's pouring rain.  My socks

23    are literally squishing when I walk.

24         THE CLERK:  My wife called and wanted to know

25    if I could spend the night in a hotel.

3387

1          THE COURT:  If you can get Mr. Galindo to

2    approve it, I'm all for it.

3          All right.  We'll be in recess.

4          (Recess taken.)

5          (Court resumes at 5:26 p.m.  The jury is

6    present.)

7          THE COURT:  It's snowing outside.  Well, you

8    can see better than we can.  You have got more glass

9    than we've got.

10          I don't know what's going to happen.  You've

11    got the number to call tomorrow and we'll see.  Unless

12    otherwise instructed on that, we'll start at 9:30 in

13    the morning.

14          As I understand it, you want to work tomorrow

15    night as late as you want to work.  That's fine with

16    me.  I'll make sure that we tell the people who have

17    to deal with the heat and things like that we have

18    some of that, and we'll work out some dinner

19    arrangements for you.

20          With this advance notice, we'll try to find a

21    couple of places with a menu or something.  Is there

22    anybody who doesn't like pizza or can't eat pizza?

23    All right.  You may be eating pizza.  We'll see.

24          All right.  We'll see you tomorrow at 9:30.

25    Drive carefully.

3388

1             (The jury is exiting the courtroom at 5:28

2    p.m. to return in the morning at 9:30 a.m.)

3             THE COURT:  All right.  Anything else you-all

4    need to deal with today?

5             MR. CARR:  No, sir.

6             MR. ROBERTSON:  No, sir.

7             THE COURT:  Sounds to me like it may be a

8    long day tomorrow.

9             MR. CARR:  Because of the weather?  I don't

10   understand.

11            THE COURT:  Because the jury has told us they

12   are going to work until they finish.

13            MR. CARR:  Oh, a long day.  I thought you

14   said a lost day.

15            MR. MERRITT:  Judge, if they finish and the

16   pizza has already been ordered, can we have a pizza

17   party?

18            THE COURT:  You sure can.

19            THE CLERK:  Nothing wrong with Little

20   Caesars.

21            THE COURT:  I won't join you, but you-all can

22   have whatever is left.

23            THE CLERK:  Your Honor, you do remember the

24   time you sent me out for a turkey sandwich in

25   Alexandria for one of the jurors, don't you?

3389

1          THE COURT:  Yes.

2          THE CLERK:  I'll always remember it.

3          THE COURT:  His response was, "Do what?"

4

5          (The proceedings were adjourned at 5:29 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25