```
 1            IN THE UNITED STATES DISTRICT COURT

 2           FOR THE EASTERN DISTRICT OF VIRGINIA

 3                    RICHMOND DIVISION

 4

 5    ---------------------------------------
                                            :
 6    ePLUS, INC.                           :    Civil Action No.
                                            :    3:09CV620
 7    vs.                                   :
                                            :
 8    LAWSON SOFTWARE, INC.                 :    January 27, 2011
                                            :
 9    ---------------------------------------

10

11          COMPLETE TRANSCRIPT OF THE JURY TRIAL

12         BEFORE THE HONORABLE ROBERT E. PAYNE

13       UNITED STATES DISTRICT JUDGE, AND A JURY

14

15    APPEARANCES:

16    Scott L. Robertson, Esquire
      Michael G. Strapp, Esquire
17    David M. Young, Esquire
      Goodwin Procter, LLP
18    901 New York Avenue NW
      Suite 900
19    Washington, D.C.  20001

20    Craig T. Merritt, Esquire
      Christian & Barton, LLP
21    909 East Main Street
      Suite 1200
22    Richmond, Virginia  23219-3095
      Counsel for the plaintiff

23

24              Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219
      Counsel for the defendant
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              P R O C E E D I N G S

2

3                    THE CLERK:  Civil action number 3:09CV00620, ePlus

4     Incorporated versus Lawson Software Incorporated.  Mr. Scott L.

5     Robertson, Mr. Craig T. Merritt, Mr. Michael G. Strapp

6     represent the plaintiff.  Mr. Dabney J. Carr, IV, represents

7     the defendant.  Are counsel ready to proceed?

8                    MR. ROBERTSON:  Yes, Your Honor.

9                    MR. CARR:  Yes, Your Honor.

10                   THE COURT:  All right, ladies and gentlemen, the

11    record will reflect that the jury is here assembled, and I

12    don't remember who it was that spent the night last night.  I

13    hope your accommodations were all right.

14                   JUROR:  They were good.

15                   THE COURT:  And you got everything taken care of with

16    the financial part of it because you shouldn't -- one time we

17    had a juror, and you watch out, because sometimes -- the juror

18    got a bill about six months later.  So you keep your eyes open,

19    and we'll take care of it.

20                   All right, you may resume your deliberations.  Let us

21    know what your plans are, and we'll be here the whole time.

22    We're planning -- if you need to stay late, we're planning to

23    be late.  There's a limit to how late I can stay.  All right,

24    thank you.  I don't know.  We'll face that if and when it

25    happens.

1          (Jury out.)

2

3          THE COURT:  The latest I've ever stayed was --

4          THE CLERK:  I was going to say, that would be a

5     first.

6          THE COURT:  Was 11:30 or something like that.

7

8          (Discussion off the record.)

9

10         THE COURT:  We will be in recess.

11

12         (Court recessed while jury deliberates.)

13         (Jury in.)

14

15         THE CLERK:  Madam Foreperson, has the jury reached a

16    unanimous verdict in this case?

17         JURY FOREPERSON:  We have.

18         THE COURT:  All right.  Publish the verdict, please.

19         THE CLERK:  This is in civil action number

20    3:09CV00620, ePlus Incorporated versus Lawson Software,

21    Incorporated.  We, the jury, find as follows, number one, on

22    infringement.

23         Do you find that ePlus has proven that it is more

24    likely than not that the following accused configurations of

25    the Lawson S3 procurement system have infringed the listed

1    claims of the ePlus patents either directly or indirectly?  As

2    to each claim, a yes answer is a finding for ePlus, a no answer

3    is a finding for Lawson.

4            Configuration number one, core S3 procurement system

5    (Lawson System Foundation, LSF/process flow, in combination

6    with inventory control, requisition, and purchase order

7    modules:  516 patent, claim one, answer, no.

8            '516 patent, claim six, answer, no.

9            Configuration number two, core S3 procurement system,

10   Lawson system foundation, LSF/process flow in combination with

11   inventory control, requisition, and purchase order modules, and

12   requisition self-service or, in quotation, RSS:  '683 patent,

13   claim three, answer no.

14           '683 patent, claim 28, answer, no.

15           '516 patent, claim one, answer, no.

16           '516 patent, claim six, answer, no.

17           '516 patent, claim nine, answer, no.

18           '516 patent, claim 21, answer, no.

19           '516 patent, claim 22, answer, no.

20           '516 patent, claim 29, answer, no.

21           '172 patent, claim one, answer, yes.

22           Configuration number three, core S3 procurement

23   system, Lawson system foundation, LSF/process flow, in

24   combination with inventory control, requisition, and purchase

25   order, modules, requisition self-service, or RSS, and punchout:

1    683 patent, claim three, answer, yes.

2              '683 patent, claim 26, answer, yes.

3              '683 patent, claim 28, answer, yes.

4              '683 patent, claim 29, answer, yes.

5              '516 patent, claim one, answer, no.

6              '516 patent, claim two, answer, no.

7              '516 patent, claim six, answer, no.

8              '516 patent, claim nine, answer, no.

9              '516 patent, claim 21, answer, no.

10             '516 patent, claim 22, answer, no.

11             '517 patent, claim 29, answer, no.

12             '172 patent, claim one, answer, yes.

13             Configuration number four, core S3 procurement

14   system, Lawson system foundation, LSF/process flow, in

15   combination with inventory control, requisition, and purchase

16   order modules and electronic data interchange, or EDI:

17             '683 patent, claim 26, answer, no.

18             '516 patent, claim one, answer, no.

19             '516 patent, claim six, answer, no.

20             Configuration number five, core S3 procurement

21   system, Lawson System Foundation, LSF/process flow, in

22   combination with inventory control, requisition, and purchase

23   order modules, requisition self-service or RSS, punchout, and

24   electronic data interchange or EDI:

25             '683 patent, claim three, answer, yes.

```
1                   '683 patent, claim 26, answer, yes.

2                   '683 patent, claim 28, answer, yes.

3                   '683 patent, claim 29, answer, yes.

4                   '516 patent, claim one, answer, no.

5                   '516 patent, claim two, answer, no.

6                   '516 patent, claim six, answer, no.

7                   '516 patent, claim nine, answer, no.

8                   '516 patent, claim 21, answer, no.

9                   '516 patent, claim 22, answer, no.

10                  '516 patent, claim 29, answer, no.

11                  '172 patent, claim one, answer, yes.

12          Two, validity, as to each claim, a yes answer is a

13  finding for Lawson.  A no answer is a finding for ePlus.  Do

14  you find that Lawson has proven by clear and convincing

15  evidence that any of the following claims are anticipated by

16  the Fisher RIMS system:

17                  '683 patent, claim three, answer, no.

18                  '683 patent, claim 26, answer, no.

19                  '683 patent, claim 28, answer, no.

20                  '683 patent, claim 29, answer, no.

21                  '516 patent, claim one, answer, no.

22                  '516 patent, claim two, answer, no.

23                  '516 patent, claim six, answer, no.

24                  '516 patent, claim nine, answer, no.

25                  '516 patent, claim 21, answer, no.
```

```
1              '516 patent, claim 22, answer, no.

2              '516 patent, claim 29, answer, no.

3              '172 patent, claim one, answer, no.

4         B, do you find that Lawson has proven by clear and

5    convincing evidence that any of the following claims are

6    anticipated by U.S. patent number 5,712,989:

7              '683 patent, claim three, answer, no.

8              '683 patent, claim 26, answer, no.

9              '683 patent, claim 28, answer, no.

10             '683 patent, claim 29, answer, no.

11             '516 patent, claim one, answer, no.

12             '516 patent, claim two, answer, no.

13             '516 patent, claim six, answer, no.

14             '516 patent, claim nine, answer, no.

15             '516 patent, claim 21, answer, no.

16             '516 patent, claim 22, answer, no.

17             '516 patent, claim 29, answer, no.

18             '172 patent, claim one, answer, no.

19        C, do you find that Lawson has proven by clear and

20   convincing evidence that any of the following claims are

21   obvious in light of the combination of, one, either the RIMS

22   system, the RIMS brochure, and/or U.S. patent number 5,712,989,

23   and, two, either the TV/2 system, the TV/2 brochure, and/or the

24   TV/2 general information manual:

25             One, '683 patent, claim three, answer, no.
```

```
 1                    Two, '683 patent, claim 26, no.

 2                    Three, '683 patent, claim 28, answer, no.

 3                    Four, '683 patent, claim 29, answer, no.

 4                    Five, '516 patent, claim one, answer, no.

 5                    Six, '516 patent, claim two, answer, no.

 6                    Seven, '516 patent, claim six, answer, no.

 7                    Eight, '516 patent, claim nine, answer, no.

 8                    Nine, '516 patent, claim 21, answer, no.

 9                    Ten, '516 patent, claim 22, answer, no.

10                    11, '516 patent, claim 29, answer, no.

11                    12, '172 patent, claim one, answer, no.  It's dated

12       January 27th, 2011, and it's signed by all members of the jury

13       panel, Leanne W. Wight, Kristin M. Caufield, Betty Rose

14       Raymond, George Andrew Kiersarsky, Jason Lamont Chalmers,

15       Marchelle Lee Sossong, Richard Lee Compher, and Carrie Emerson.

16       Ladies and gentlemen of the jury, is this your unanimous

17       verdict in this case.

18                    (Indicating affirmatively.)

19                    THE CLERK:  Thank you.

20                    THE COURT:  Is there any reason we can't discharge

21       the jury?

22                    MR. CARR:  Your Honor, I would like to request to

23       poll the jury.

24                    THE COURT:  Poll the jury, Mr. Clerk.

25                    THE CLERK:  Ladies and gentlemen, if indeed this was
```

1    your verdict in this case, please respond by stating yes.

2    Kristin Caufield.

3              JUROR:  Yes.

4              THE CLERK:  Leanne Wight.

5              JUROR:  Yes.

6              THE CLERK:  Betty Raymond.

7              JUROR:  Yes.

8              THE CLERK:  Gregory Kiersarsky.

9              JUROR:  Yes.

10             THE CLERK:  Jason Chalmers.

11             JUROR:  Yes.

12             THE CLERK:  Marchelle Sossong.

13             JUROR:  Yes.

14             THE CLERK:  Richard Compher.

15             JUROR:  Yes.

16             THE CLERK:  Carrie Emerson.

17             JUROR:  Yes.

18             THE CLERK:  Thank you.

19             THE COURT:  Ladies and gentlemen, on behalf of the

20   counsel and the Court and the parties, I want to thank you for

21   the discharge of the civic duty that you have performed almost

22   for a month now.  Your service has been exemplary, your

23   attention to detail has been exemplary, your persistence in the

24   face of difficulty, your paying attention, the care with which

25   you have discharged your duty has been a credit to the

1    citizenry in the discharge of this very difficult duty in any

2    case, but it is particularly difficult in patent cases that

3    deal with topics which with you are generally not familiar.

4            On behalf of everyone here, I'd like to express

5    appreciation to you, and all of us understand the imposition

6    that it has wrought upon you, your families, your employers,

7    your friends and we'd also note that no matter what the

8    situation, it is never easy to sit in judgment when the rights

9    of fellow citizens are involved.  But it is essential that we

10   have people willing to do that and who did it as

11   conscientiously as you have in this case.

12           Have you reviewed the verdict form and you see no

13   need for any further discussion with the jury on any part of

14   it, counsel?

15           MR. ROBERTSON:  Not for plaintiff, Your Honor.

16           MR. CARR:  Not for defendant, Your Honor.

17           THE COURT:  Thank you very much.  Ladies and

18   gentlemen, you are excused with our gratitude.  Thank you.

19   Drive carefully.  Enjoy some free time.

20

21           (Jury out.)

22

23           THE COURT:  We will need to have a hearing on an

24   injunction.

25           MR. ROBERTSON:  Yes, sir.

```
 1              THE COURT:  And I need to know what the dimensions of
 2     it are.  I'd like for you all to confer and to talk with me in
 3     a few minutes about how it will proceed, how long it will take,
 4     when we will do it.
 5              If you will talk for a few minutes and then get back
 6     in touch with me, I'd appreciate it.  We can do it in my
 7     chambers, and we can plug in Mr. McDonald if you'd like to.
 8              MR. CARR:  I think that's probably a good idea.  Your
 9     Honor, have you thought -- have you considered whether you
10     would like briefing before the injunction hearing?
11              THE COURT:  I think I want the evidence, and I want
12     all the evidence in and then I'll have post-trial briefing.  Is
13     there any reason you all can't pull that together and talk with
14     me in, say, half an hour or so?
15              MR. CARR:  No reason at all.
16              MR. ROBERTSON:  That's fine, Your Honor.
17              THE COURT:  All right.  We'll be in --
18              THE CLERK:  You have a supervised release right now.
19              THE COURT:  They're going to have to wait for a few
20     minutes.  I'll talk with you all in approximately half an hour.
21
22              (Recess.)
23              (In chambers with Mr. McDonald appearing
24     telephonically.)
25
```

```
 1              THE COURT:  Hello, Mr. McDonald.  This is a
 2    post-verdict conference being held in chambers in the ePlus v.
 3    Lawson case.  Mr. Robertson, Mr. Strapp are here, Mr. Carr, and
 4    Mr. Merritt are in chambers, and Mr. McDonald is here.  The
 5    purpose is to discuss where do we go from here.  You've been
 6    read in on what the verdict was; is that right?
 7              MR. McDONALD:  I have, Your Honor.  Thank you.
 8              THE COURT:  All right.  So the relief available is an
 9    injunction if an injunction is appropriate, there being no
10    damages.
11              MR. McDONALD:  I'm sorry, Your Honor, I'm not hearing
12    you very well.
13              THE COURT:  The relief available is an injunction if
14    an injunction is appropriate there being no damages in the
15    case.  So what do you propose to do about that issue, Mr.
16    Robertson?
17              MR. ROBERTSON:  Your Honor, I was talking to Mr. Carr
18    during the recess, and first, we have this issue of outstanding
19    JMOLs which we think, just as a matter of proper procedure,
20    should probably --
21              MR. McDONALD:  Scott, could you speak up a little
22    bit.
23              MR. ROBERTSON:  Yes, Mr. McDonald, I'll try.  We have
24    this issue of some outstanding JMOLs.  I think the Court has
25    denied Lawson's JMOLs.  We still reserved on our JMOLs.
```

1    Obviously, we'd like to be heard on those just as a matter of

2    course to be able to make sure the record is consistent.

3            THE COURT:  There's no need for them where a verdict

4    has been returned in your favor.

5            MR. ROBERTSON:  Well --

6            THE COURT:  You have to figure out which of the

7    verdicts, which of the verdicts I need to focus on.

8            MR. ROBERTSON:  I think technically, Your Honor, we

9    could argue that notwithstanding that the jury found against us

10   on some of the infringement issues, we should be entitled to

11   judgment as a matter of law on infringement.  I think the Court

12   can probably do that on the papers and we need not delay

13   ourselves.  I think I understand what the Court is thinking is

14   coming from that, but --

15           THE COURT:  It's not coming from anywhere except that

16   I don't believe that judgment as a matter of law is any longer

17   appropriate on a case where a verdict has been returned in

18   one's favor.

19           MR. ROBERTSON:  Let us review that.  If you want to

20   just focus on the remedy of the injunction --

21           THE COURT:  I want to schedule whatever hearing has

22   to be had and get it on my book.  I don't have a lot of time,

23   and I want to get you in and done while it's relatively fresh

24   in everybody's minds.

25           MR. ROBERTSON:  My conversation with Mr. Carr during

1    the recess, and I understand he talked to Mr. McDonald, was we

2    don't think it would be necessary to have any witnesses appear

3    to testify.  We think that the record is the record, and we can

4    rely on that.  We think we could simply brief the issue and

5    argue it.

6          Obviously the Court knows that there are four factors

7    under *eBay v. MercExchange*.  Obviously, I'm quite familiar with

8    that case since I was the plaintiff's counsel in that case that

9    went to the Supreme Court.  We have irreparable injury and no

10   adequate remedy at law, we think that's where we are given the

11   Court's ruling on the damages issue.

12         Then there's the balancing of the hardships, and

13   there's the public interest, and we think we could put together

14   briefing with that, with respect to that, and that we think

15   that we would ask for an injunction hearing at the Court's

16   first possible opportunity but within the next three weeks.  We

17   would anticipate that it would take a half day, Mr. Carr, to

18   present arguments?

19         MR. CARR:  If we don't have any witnesses, a half day

20   for arguments I thought sounded acceptable.  Mr. McDonald, do

21   you have any comment on that?

22         MR. McDONALD:  On the witnesses issue, I would like

23   to have a chance to talk that over with the Lawson people.  I

24   think on the issue of irreparable harm, now that we've got a

25   specific answer from the jury to talk about that situation,

1   which products would be subject to the injunction potentially

2   and which ones wouldn't and what is the impact on Lawson from

3   doing that, I think there is a possibility we'd want to bring

4   in a witness to talk about the harm to Lawson if an injunction

5   is granted.

6          We would like to present evidence on the public

7   interest issue as well, and in particular, regarding the

8   current status of the rejections of these patents on re-exam.

9   I don't know that we necessarily need a witness for that.  We

10  could probably submit that on the papers.  If the Court would

11  like the assistance of an expert to summarize what's going on

12  there and how that might relate to injunctive relief, we could

13  present an expert on that.

14         MR. ROBERTSON:  Obviously, Your Honor, I think you

15  know our position with respect to the reexams.

16         MR. McDONALD:  I cannot hear Mr. Robertson.

17         MR. ROBERTSON:  I'm sorry, Mr. McDonald.  Obviously,

18  Your Honor knows our position with respect reexams.  They are

19  not before the Court, they are not in evidence, and they are

20  not relevant to these proceedings.

21         THE COURT:  I'm sorry, I still can't --

22         MR. ROBERTSON:  They are two separate proceedings,

23  Mr. McDonald, and we don't think they've been introduced in

24  evidence, we don't think they're appropriate at this time, but

25  I'm sure you will be briefing that, and I'll be responding to

1    that for the Court.

2              THE COURT:  Well, he says that Lawson wants a witness

3    on the issue of injury; is that right?

4              MR. McDONALD:  Yes, Your Honor.  I'd at least like to

5    talk to them about that in view of the verdict and see if there

6    is evidence that would be of assistance to the Court on that

7    issue.  I think it's a distinct possibility.

8              THE COURT:  I'm having trouble to some extent because

9    I haven't thought through the results of this verdict form

10   findings, but you are much more familiar with all these

11   products and systems than I am, but what would you see as the

12   scope of the injunction here, Mr. Robertson, based on what you

13   know?  Now, I'm not going to hold you to anything because you

14   have the right to reflect upon it, but I'm trying --

15             MR. McDONALD:  Well, it appeared to me that it would

16   be specific to the RSS and punchout configurations.

17             MR. ROBERTSON:  Well, the configurations that were

18   found to be infringing were configuration two, three, and five.

19   I think those are specifically defined, and the evidence is

20   what the evidence was, and the jury verdict spelled that out.

21   So that's what we'd be seeking as the scope of the injunction,

22   those configurations that included those modules and

23   applications, including the Lawson system foundation and

24   process flow in combination with the modules that were found to

25   infringe.  I think there's 11 separate claims for three

1    separate configurations.  That would be one.

2         Now, remember, Your Honor, the injury to Lawson is

3    almost entirely irrelevant here.  It's the irreparable harm to

4    ePlus.  It's the no adequate remedy for ePlus.  It only comes

5    into play, if at all, in the balancing of the hardships, and

6    it's hardly the place of the now-adjudicated infringer to come

7    forth and say that the actions the jury have found to infringe

8    will cause me a hardship.  That is the consequences of the

9    infringement.

10        THE COURT:  But isn't the message of eBay that we are

11   to consider the standard formulation of injunctive relief which

12   includes the irreparable injury to you, the effect of the

13   injury to the other party, of course the likelihood of success

14   is no factor here because it's already happened, and there

15   aren't any other factors that come into account respecting the

16   adequacy vel non of the remedy at law and any public interest

17   factors.

18        MR. McDONALD:  That's right, Your Honor.  The fact

19   that these patents have all been licensed as lump sum licenses

20   where none of their -- all of their licensees have suddenly

21   written them a check and continue to sell these technologies

22   out there and that this business is less than two percent of

23   ePlus's business certainly indicate that there is a situation

24   where there is no irreparable harm to ePlus.

25        We want to show the balance of harm there with that

1    very minimal harm to them in contrast to whatever impact there

2    would be on Lawson, which I do need to talk to them about, and

3    see what that issue might be, if there's particular customers

4    out there that are hospitals or something where if they were in

5    the throes of offering the system or implementing the system

6    someplace and that had to come to a halt, would that have an

7    impact on hospitals could be something that might be relevant

8    to the Court's analysis.

9              MR. ROBERTSON:  Well, Your Honor, first of all, the

10   hardship to Lawson only comes in, if at all, on this one

11   factor, this balancing of the hardships, and typically the fact

12   that the infringer built his entire business upon a foundation

13   of infringement is not something that -- otherwise, that would

14   be dispositive in every case, because an injunction is going to

15   have some hardship, no doubt, on the infringer.  That's what we

16   have here.

17             THE COURT:  I think I understand all that.  I just

18   want to know what evidence I'm going to have to deal with, and

19   is there anything unusual about the scope of the injunction

20   that I'm going to have to deal with.

21             MR. ROBERTSON:  I don't think there is anything

22   unusual.  I think it's been crystalized fairly nicely with the

23   fact the way the evidence came in, the configurations and the

24   specific modules that are implicated.

25             THE COURT:  So you don't envision any more evidence.

1    You're just going to use the trial evidence, but Mr. McDonald

2    wants probably some evidence, at least on the public interest

3    and on the harm to Lawson.

4            MR. McDONALD:  To Lawson and potentially it's

5    potential customers here as well, yes.

6            MR. ROBERTSON:  All right, well, this changed

7    dramatically from when I talked to Mr. Carr about an hour ago,

8    so I would just --

9            THE COURT:  Look, just settle down.

10           MR. ROBERTSON:  I understand.  Sir, I need to take

11   into account what evidence -- I mean I understand Mr. McDonald

12   is formulating this right now.  I would need to take into

13   account what he would be offering, and I'd need to be able to

14   determine if I need to have rebuttal witnesses in light of

15   that.

16           You know, of course, there's going to be someone who

17   is going to come in and say, yes, we'll be inconvenienced if we

18   have to stop using the Lawson software.  That can be

19   accommodated in a number of ways.  You can have a phase-out

20   accomodation, say six months, whatever.  My client, who

21   competes with Lawson, could offer services, perhaps even at a

22   discounted rate in order to be able to replace that kind of

23   thing.  That happens all the time.

24           MR. McDONALD:  When we're talking about an

25   injunction, I think there's some software cases out there that

1   make it pretty clear.  We're not going back to preexisting

2   customers who already have systems in place.  The injunction

3   would only be a prospective thing in terms of future sales.

4           That's obviously maybe something that Mr. Robertson

5   is trying to plant the seed on that, that we're going to go

6   backwards here, but those past systems would have been the sort

7   of systems that would be subject to damages that they now can't

8   get because of Rule 37, but they don't get a second bite at the

9   apple for past customers and try to get an injunction against

10  the systems that were installed many, many years ago.

11          MR. ROBERTSON:  I strongly and respectfully disagree

12  with that because Lawson's now been found to induce

13  infringements by its customers.  The ongoing use of those

14  customers and Lawson's service, maintenance, and

15  implementation, and upgrades, and all the things they continue

16  to do is the induced infringement that's now been found to be

17  infringement.

18          So those systems in operation right now, Your Honor,

19  that they continue to maintain are absolutely infringing, and

20  they need to be enjoined as well.  That is well within the

21  scope --

22          THE COURT:  But do you enjoin the use of the system

23  by the customer on its own without Lawson?

24          MR. ROBERTSON:  No.  You enjoin Lawson's continued

25  inducing of infringement which means they have to stop

1  maintaining, stop servicing, stop upgrading, stop doing all the

2  things that constitute the aiding and abetting and assisting of

3  those --

4        MR. McDONALD:  Yes, I don't think you do enjoy the

5  customer, Your Honor, and we will be able to supply some case

6  law and very analogous situations, for example, where parties

7  are precluded from getting past damages if they failed to mark

8  the patent number for example, and the Courts don't say, okay,

9  well, even though you can't get damages for those systems sold

10 before, we're still going to enjoin your ability to continue to

11 service those customers in a software system context.  So I

12 think that's an issue we obviously have to brief.

13       THE COURT:  Has the Federal Circuit ruled on that?

14       MR. ROBERTSON:  Absolutely.  There's a number of

15 cases, Your Honor.  What Mr. McDonald said, I think, is exactly

16 right in the sense he said it's going forward.  So going

17 forward, stop maintaining, stop servicing, stop implementing,

18 and stop upgrading.

19       THE COURT:  All right, I think I understand.  I think

20 this:  We ought to have all of the evidence on before we have

21 any briefing, so, Mr. McDonald, you tell him -- since you say

22 you don't want any evidence --

23       MR. ROBERTSON:  Well, Your Honor, let me just say,

24 this is a very fluid situation.  If he's going to be offering

25 evidence, I might need to have some rebuttal evidence.

1        THE COURT:  I didn't say anything about rebuttal

2    evidence yet.  Do you want me to hear me out, give me one

3    minute?

4        MR. ROBERTSON:  Yes, sir.  I'm sorry.

5        THE COURT:  I have in mind that since you don't want

6    to put on any evidence in direct on your opening, you would let

7    him put on whatever evidence he's going to put on, and then you

8    would put on any rebuttal evidence from what you said.  Now, if

9    you think you don't want to do that, you want to do it another

10   way, that's all right.

11       MR. ROBERTSON:  There's been some issue here about

12   competition.  I think we've established that we're in

13   competition, but I could forth further evidence to show that

14   ePlus directly completes with Lawson.

15       THE COURT:  Well, then, that's direct evidence that

16   you need to put on.

17       MR. ROBERTSON:  I think that's right, Your Honor.  If

18   it's still being denied or still in controversy, then I think

19   that would be something --

20       THE COURT:  They'd deny it, I'm sure.  They haven't

21   admitted anything.

22       MR. MERRITT:  Your Honor, before we move on that,

23   there's a subtlety in this I want to be sure I'm not missing.

24   When Mr. Robertson stands up to seek the injunction, even

25   though he's not bringing live witnesses to court necessarily, I

1   assume he will be presenting to you argument based on evidence

2   that's in the record.

3           Is there some way that you that you would like to

4   have that summarized or presented in a way short of him

5   standing and arguing and making repeated references, some sort

6   of a summary or something that would be useful to the Court?

7           MR. ROBERTSON:  I'd like to brief it, Your Honor.

8   I'd like to marshal the evidence and present it to you, and I'd

9   like to have them respond, and then I'd like to reply.

10          MR. MERRITT:  Well, the reason I raised it is the

11  Court had indicated a desire for post-hearing briefs --

12          THE COURT:  After it's all done.

13          MR. MERRITT:  At the hearing itself, is there

14  something that would aid the Court in understanding what we're

15  referring to even if it is just out of the record?

16          THE COURT:  Yes.  What I have in mind is this:  You

17  decide, Mr. Robertson, by X date, what you want to put on, and

18  if you are relying on part of the record, say to prove

19  competition, then you extract and present an exhibit that has

20  that in it.  You extract from the record that, and if you want

21  to add anything to it, then you add to it, and you need to tell

22  them what you are going to be doing.

23          Then you need to do the same thing.  If you're going

24  to rely on the record, Mr. McDonald, you extract what you want

25  from the record.  If you're going to add anything to it, you

1    add to it, and you all need to disclose to each other what you

2    are doing, and then you do any rebuttal that you need to do.

3            I want to set a schedule for you all disclosing that

4    information to each other, what, basically, you're going to put

5    on.  I don't envision any need for any further discovery on the

6    issue of damages.  Neither one of you have mentioned it -- I

7    mean on injunction, and --

8            MR. McDONALD:  I guess the only question there, Your

9    Honor, is if either one of us is actually going to call a live

10   witness or wants to offer up a declaration or something, it

11   seems like the other side should have a chance to take that

12   person's deposition.

13           MR. ROBERTSON:  I don't think that's necessary, Your

14   Honor.  We're going to put these witnesses on, we'll be able to

15   cross-examine them --

16           MR. McDONALD:  I'm sorry, Mr. Robertson --

17           MR. ROBERTSON:  I don't think that's necessary, Dan.

18   We can make a proffer or you can have a declaration or you can

19   outline what it's going to be, and I think we should just get

20   on with this.

21           There may be some additional exhibits, for example,

22   evidentiary exhibits.  For example, Mr. Farber informs me that

23   through the summer, that there's been a number of RFPs that

24   he's been competing with with Lawson that have come to his

25   attention.  So the competition is ongoing.  That's happened

1    since the close of discovery.

2              THE COURT:  I assume that you will inform the people

3    who are soliciting the proposals that there has now been a

4    finding of infringement and that an -- and that will be

5    something they need to keep in mind, because that will be part

6    of the evidence that I'll be hearing, I suppose, from what you

7    are saying, and if it involves injunction against Lawson

8    continuing to bid on any pending projects, then the customers,

9    I think, have a right to know that is a possibility now.

10             MR. ROBERTSON:  I think that would be a wise

11   practice, Your Honor, and I anticipate there may even be a

12   press release or two that come out with respect to the outcome

13   of this --

14             MR. McDONALD:  I'm sorry.  If someone is talking

15   right now, I can't hear.

16             MR. ROBERTSON:  Yes, Mr. McDonald, I anticipate that

17   in the competitive process, we would make known the outcome of

18   this trial as it's ongoing, but what I was suggesting to the

19   Court was that during the course of this past summer and

20   continuing in the fall, there's been a number of instances

21   where we've been competing head to head with Lawson, and we'd

22   like to present that evidence to the Court.

23             MR. McDONALD:  I'm not sure why that wasn't provided

24   in supplemental discovery.  You had a duty to supplement

25   discovery related to that issue right up until trial.  We

1    haven't seen anything else, so I'm surprised to hear about

2    this, and I think we should have an opportunity to deal with

3    this and/or seek to exclude it as information not produced in

4    discovery.

5              THE COURT:  I'm not getting into a round of all that,

6    gentlemen.  We are going to go forward.  We're not going to

7    have any delays.  We're going do this, and we are not playing

8    the four-corners offense here.

9              We're going to have a hearing.  I want you all to --

10   ePlus, how long will it take you to notify what you want to put

11   on, notify them what you're going to put on in your opening

12   presentation on injunction?

13             MR. ROBERTSON:  Could I ask for two weeks, Your

14   Honor, or if you would like less, ten days?

15             THE COURT:  And then how long would it take you after

16   that to give them a response, say what you are going to offer

17   in your case, Mr. McDonald?

18             MR. McDONALD:  Judge, I didn't quite hear what the

19   bottom line was from Mr. Robertson.  What would be --

20             THE COURT:  Ten days to two weeks is what he said --

21             MR. McDONALD:  Two weeks from now?

22             THE COURT:  Ten days to two weeks he said.

23             MR. McDONALD:  I think three weeks would be good for

24   Lawson, Your Honor.

25             THE COURT:  That's too long.  What you are doing --

1    you don't understand something.  You all are putting me in the

2    middle of a period of trials that I'm not going to have any

3    time to hear your injunction.  I want this over now.

4            MR. ROBERTSON:  Tell me what your pleasure is, Your

5    Honor, and we'll satisfy it.

6            THE COURT:  We can't drag it out.  ePlus has won.  If

7    they are entitled to an injunction, they're entitled to it

8    right away, as promptly as the Court can get to it and give you

9    all both the process that you are due to prepare for it, but I

10   have other things to take into account, and you are talking

11   about a schedule that won't even really get this thing to me

12   until I begin to start a series of criminal and civil trials

13   that I know are not going away, and I won't be able to get to

14   you all until the fall, and I'm not going to do that.  So I'm

15   sorry to burden you all after what you've done, but I know it's

16   been hard work, but I would like for you, by the 14th, which is

17   Monday --

18           MR. CARR:  Talking about ePlus when you say you.

19           THE COURT:  What is today?  Wait a minute.  Let me

20   look.  The 27th.  By Monday, the 7th of February, to put

21   together and notify Lawson what it is that you intend to offer

22   by way of evidence on the issue of injunction, both from the

23   record and new.

24           On the 14th, Lawson should do its response.  You can

25   be doing all of your work while they are working, too, Mr.

1   McDonald.

2          MR. McDONALD:  Sure, we'll do that.

3          THE COURT:  And on the 21st of February, you file the

4   same thing respecting rebuttal.

5          MR. CARR:  Judge, I have a suggestion.  Would it be

6   helpful if we designate the evidence as you've laid out the

7   schedule, and then at the end of that we put together a joint

8   appendix and provide it all to you in one --

9          THE COURT:  A joint appendix or whatever you want me

10  to do.  You have to look and see.  It may be easier for me to

11  look at it if it's associated with your findings of fact and

12  conclusions of law on the injunction.

13         Then when you have all of that information, is it

14  your desire to file pretrial findings of facts and conclusions

15  of law on the injunctive relief, Mr. Robertson?  You said you

16  wanted to brief it, and I didn't know whether you meant brief

17  it before I hear any evidence or not.

18         MR. ROBERTSON:  I think it might make sense, Your

19  Honor, to have you hear the evidence and then have us have a

20  very expedited briefing schedule after that as to what both

21  parties think that the evidence has demonstrated.  We could

22  probably do that within a ten-day period for initial briefs,

23  responsive briefs, and reply briefs since it is our burden.

24         THE COURT:  All right.  I don't see that we're -- ask

25  Ms. Hooper to come in.

```
 1
 2                    (Discussion off the record.)
 3
 4              THE COURT:  It will take one day, you think?
 5              MR. ROBERTSON:  Yes.
 6              MR. CARR:  I would think so.  Dan, do you agree?
 7              MR. McDONALD:  The question was how long would an
 8    evidentiary hearing take?
 9              THE COURT:  Yes.
10              MR. McDONALD:  Yes, I think one day or less.
11              THE COURT:  I'll hear you on March 3rd beginning at
12    9:30 in the morning.  I regard that each of you in this
13    instance, when you file what I have dictated that you file,
14    directed that you file, will be satisfying your obligations to
15    update your discovery on the issue of injunctive relief because
16    injunctive relief has been effectively severed from the case by
17    virtue of the pretrial proceedings.  I think you will have
18    satisfied your Rule 26 updates when you file these things, and
19    that's what I'm looking for.
20              Now, the 3rd of March.  All right, then, when would
21    you give me a brief, Mr. Robertson, an opening brief and
22    findings of facts and conclusion of law post-trial?
23              MR. CARR:  What's the day of the week, the 3rd of
24    March?
25              THE COURT:  It's a Thursday.
```

1          MR. ROBERTSON:  The following Monday, Your Honor?

2          MR. McDONALD:  Are you setting a briefing schedule at

3    this point?  I can't hear what's going on.

4          THE COURT:  Yes.  The 14th of March, that gives you a

5    long time.  You ought to be able to pull it together then.  You

6    file your opening brief on the 14th of March.  You file your

7    opening brief on the 21st of March.  You file your response --

8          MR. McDONALD:  Your Honor, may I mention something,

9    and I understand if it doesn't matter here, but my children

10   have their spring break from school the week of March 14th, and

11   I understand you have to keep this moving along.

12          I'm just wondering if I could at least get a couple

13   extra days, and if ePlus would like a couple of days past the

14   14th, I certainly wouldn't have a problem with that.

15          THE COURT:  When do you mean?

16          MR. McDONALD:  Pardon?

17          THE COURT:  When do you want to file it?

18          MR. McDONALD:  I would at least like it to be a

19   little later in the week of the 21st such as the 23rd or 24th

20   of March.

21          THE COURT:  That's awfully late.  I just don't

22   generally allow spring breaks to dictate schedules here.  What

23   good does it do you to get the 21st of March if you're going to

24   be gone all that week?

25          MR. McDONALD:  I'm sorry, Your Honor.  I understood

1    that ePlus was proposing their brief would be due on the 14th,

2    our brief would be due on the 22nd.  I was simply asking for

3    another two days before our brief would be due.

4              THE COURT:  The 23rd then?

5              MR. McDONALD:  Yes.

6              THE COURT:  I see.  I thought you were asking for all

7    that week.

8              MR. McDONALD:  Oh, no.

9              THE COURT:  All right, March 23rd for the response

10   and then your reply.

11             MR. ROBERTSON:  29th, Your Honor, we would request.

12             THE COURT:  28th of March.

13             MR. ROBERTSON:  That's fine.

14             MR. CARR:  You heard he said the 29th.

15             THE COURT:  What?

16             MR. ROBERTSON:  I had suggested the 29th, because

17   it's coming in on a Wednesday night, and we'd only have two

18   business days until that Monday, but if I could get to

19   the following Tuesday --

20             THE COURT:  You bill extra on the weekends, don't

21   you?

22             MR. ROBERTSON:  No, I don't, sir.

23             THE COURT:  29th of March for the reply.  I thought

24   you said the 28th.  All right.  Do I then need to hear argument

25   on all this?

```
 1            MR. ROBERTSON:  I don't think so, Your Honor.

 2            MR. McDONALD:  I would think so, Your Honor, from

 3     Lawson's standpoint.

 4            THE COURT:  April 4th.

 5            MR. CARR:  Do you have a time?

 6            THE COURT:  At 9:30.  What date did I set the hearing

 7     on?

 8            THE CLERK:  March 3rd at 9:30 a.m.

 9            THE COURT:  All right.

10            MR. ROBERTSON:  Sir, just one other issue to raise

11     with you.  Of course -- we hope and respect that the injunction

12     will be entered, but, of course, there will be a motion -- if

13     it is entered, there will be a motion pursuant to Rule 8(a) for

14     the district court to stay the injunction pending the appeal,

15     and that will have to be briefed and addressed, and then, of

16     course, they need to renew the motion with the Federal Circuit

17     to stay if the district judge does not stay --

18            THE COURT:  I'm sorry.  I couldn't hear.  I think it

19     was Mr. --

20            MR. ROBERTSON:  If an injunction is entered, Dan, as

21     you know, you then have the opportunity to move to stay the

22     injunction pending the appeal.  That has to be brought in the

23     first instance pursuant to federal appellate rule 8(a), I

24     believe, to the district judge.  If the district judge denies

25     that, then you renew your rule 8(a) motion to the Federal
```

1    Circuit.  So I just wanted to alert the Court there's a
2    possibility that that briefing will be built into the schedule
3    after the injunction hearing.
4              THE COURT:  It may be.  Just abide the event and see
5    what happens.  If I get such a motion, it better be quick,
6    because I'm telling you, I don't have a lot of time to be
7    spending on this case anymore.  I've got other people demanding
8    to be heard who have been put in the wings, and some of those
9    people are in criminal cases.  So they're going to have to get
10   some priority.  So I'll expect you all to hustle your bustle
11   rustle, and we'll go from there.  So we've got the schedule set
12   up; is that right?
13             MR. CARR:  Judge, I don't want us to leave without --
14   Mr. Robertson mentioned the JMOLs briefly.  You have denied
15   Lawson's JMOLs already.  We will want to renew those JMOLs
16   after the entry of verdict as the rules provide us.
17             MR. ROBERTSON:  Judgment.
18             MR. CARR:  That's right.  After the entry of
19   judgment, sorry, as the rules allow and I don't know if --
20             THE COURT:  I don't want anymore of these.  I don't
21   see any point in doing this again.  It's just going to be
22   wasting paper, for Pete's sake.  Just because there's a
23   procedure there that's to be done doesn't mean you have to use
24   it.  You've had a full and a fair trial by the jury, and the
25   jury has made these decisions.  I would urge you to reflect --

1    you don't need to make them to preserve anything for appeal, so

2    I would urge you to reflect on whether you believe it's a

3    worthwhile thing to do.

4            I can't tell you not to do them, but it seems to me

5    that just because something is there to be done, it doesn't

6    have to be done.  I'm not sure why you need -- you need to

7    decide which, if any, of your rule 50 motions, Mr. Robertson,

8    in view of the verdict form, need to be entertained.

9            MR. ROBERTSON:  One was already denied, Your Honor.

10           THE COURT:  You don't have any at all on invalidity

11   left because you won, and I don't intend to spend any time

12   dealing with those, but you do have judgments as a matter of

13   law for infringement; right?

14           MR. ROBERTSON:  Yes, Your Honor.

15           THE COURT:  So you need to go back there and look and

16   see whether or not you need to press that and why.

17           MR. ROBERTSON:  I understand.

18           MR. CARR:  All right, Your Honor.

19           THE COURT:  You need to tell them what they are.  And

20   I'm not holding up anything on the injunction for these JMOLs

21   at this point, so you all need to get in your clarifying motion

22   right away and get your briefs in before the injunctive

23   process.

24           MR. ROBERTSON:  Mr. Carr was representing they still

25   have two briefs that they need to file in response to ours.

```
1              MR. CARR:  I think we have to file one brief in
2    response to yours.
3              THE COURT:  Why do you need to now until he clarifies
4    what it is he's asking for, because there's no sense in you
5    replying to anything that he no longer is tendering to me
6    because he's won.
7              MR. CARR:  You're right.  In fact, the one we have
8    not responded to is about invalidity, and that's moot.  So I
9    don't think we need to respond.  We have already responded on
10   the other JMOL on infringement.
11             MR. ROBERTSON:  I think our renewed JMOL would be
12   three pages long, something along those lines.
13             MR. CARR:  Right.  And, Judge, I've heard your
14   direction about whether we need to re-file them, and we will
15   reflect on that as you suggested.
16             THE COURT:  Well, you may.  It may be something I
17   don't understand.  I acknowledge there are sophisticated
18   approaches, nuances to these issues that I may not grasp as
19   quickly as you all do, so if you have them, you have them, but
20   it seems to me right now that the important thing here is to
21   get on with what needs to be done to complete the cycle and the
22   process.
23             In that regard, do you have any judgments as a matter
24   of law on infringement -- I mean on any other issue like
25   indefiniteness and all that other stuff?  That's dead now,
```

1    isn't it?

2              MR. ROBERTSON:  I think that's correct, Your Honor.

3              THE COURT:  The 103 issues and all that.

4              MR. ROBERTSON:  Given the jury's verdict, I think

5    those are moot.

6              THE COURT:  I want you to canvas what you filed and

7    agree so I can do it on the record, what's moot and what you

8    don't need to deal with.  You all just need to be dealing with

9    what's live and what you need to deal with without worrying

10   about other the things, and so do I.

11             MR. ROBERTSON:  We would like judgment entered.

12             THE COURT:  The clerk will enter verdict on judgment

13   -- judgment on the verdict.  I do it every single time.  Mr.

14   Neal has had a tough time for years.

15             THE CLERK:  I never actually entered judgment on a

16   complex case like this.  I'm going to have to run that by you.

17             MR. ROBERTSON:  Would you like us to submit a

18   proposed verdict --

19             THE COURT:  Get me a final judgment order.

20             MR. CARR:  Why don't we do what Mr. Robertson

21   suggested beforehand.  We'll look at it, and if we have any

22   difference of opinion, we bring it to the Court.

23             THE COURT:  Get it quick.

24             MR. ROBERTSON:  Understood.

25             THE COURT:  The other question I have is this:  If

1  there's an injunction and there is a motion to stay it, you're

2  going to have to post the bond, I would suppose, here.

3          MR. ROBERTSON:  I think that's right.

4          THE COURT:  I think that's required, and in this

5  case, what is the kind of bond that we would have to post?

6          MR. ROBERTSON:  Judge Brinkema suggested it would be

7  a dollar, but I will go back and look and see what would be

8  appropriate in this case.  I need to reflect on that, Your

9  Honor.

10         THE COURT:  A dollar?

11         MR. ROBERTSON:  That's right, Your Honor.

12         THE COURT:  One time -- I won't say it.  But I

13 hope -- if all I've been dealing with here, and I have to go

14 write this jury a letter and tell them it's a dollar that

15 they've been litigating over, we spent more than that on

16 lunches.

17         MR. ROBERTSON:  That would be the potential harm to

18 the defendant if the injunction entered, and she thought the

19 harm would not be significant given the fact that they had

20 built their entire business upon a foundation of infringement.

21         MR. McDONALD:  I think we need to look at the issue

22 of the bond, Your Honor.  I think generally, though, the

23 measure is, what if the injunction should not have been entered

24 and the party enjoined lost sales and profits as a result.

25 That is typically my experience how you measure the bond.

1          Now, what exact situation would require a bond at

2    this point, I think I need to review that.  I think I heard the

3    number $1 there?  Again, it's been fading in and out, but I

4    don't think that's how we measure the injunction.

5          As I understand it, the bond would be how Lawson

6    could recover for any damages that occurred, did incur due to a

7    wrong injunction entered, and obviously a dollar wouldn't be

8    adequate to cover that.

9          THE COURT:  Actually, I think the bond issue is if a

10   stay of the injunction is entered so you don't face an

11   injunction, what bond does Lawson post against what it is that

12   ePlus has by way of injury as a consequence of the stay.  Is it

13   a supersedeas bond or another kind of bond?  I think that's the

14   issue.

15         MR. ROBERTSON:  I think we need to go back and

16   reflect on that and include it in the briefing for Your Honor.

17         THE COURT:  Yes.  All right.  Is there anything else

18   that needs to be done?

19         MR. McDONALD:  I don't know if Mr. Carr can just hand

20   Mr. Robertson a dollar and we could call this a day?

21         THE COURT:  We'll flip for it and -- now, is there an

22   issue in this case -- there isn't any issue of exceptionalness

23   here warranting the imposition of fees, or is there?

24         MR. ROBERTSON:  We'd like to actually go back and

25   look at that, Your Honor.  We think there is case law that

1    would support --

2             MR. McDONALD:  What is the question, Your Honor?

3             THE COURT:  Whether it's an exceptional case

4    warranting the imposition of attorneys' fee.  I said is there

5    that issue that's involved in this case, and I didn't recall

6    that it was, but --

7             MR. McDONALD:  I think the willfulness would have

8    been the grounds for that, and since they dropped that, I think

9    it's essentially out of the case.  I think there's also an

10   issue with respect to who is the prevailing party when you have

11   a split decision like this with some of the products found

12   infringed and others not.

13            THE COURT:  Is that the law of the regional circuit,

14   or is that the law of the Federal Circuit, because I know the

15   law in the regional circuit, but I don't know that I know that

16   issue in the law of the Federal Circuit.

17            MR. McDONALD:  What I have in mind -- I don't have a

18   specific case cite in my mind, but there was a Federal Circuit

19   case about a split verdict like this, but I don't have the

20   specific site, so I don't want to go on record and represent

21   that to you right now, Your Honor.

22            MR. ROBERTSON:  Let us go look at this, but it's

23   ePlus's position that whether this is an exceptional case is

24   still an open question.

25            THE COURT:  All right.  You all need to get in front

```
 1    of me if it is.  Is there anything else that needs to be done?
 2              MR. ROBERTSON:  Only to thank the Court.
 3              THE COURT:  All right, folks, you have all your
 4    documents out of here now?
 5              MR. CARR:  We have to get the exhibits out.  That
 6    went to the jury, but we will take care of that this afternoon
 7    or tomorrow.
 8              THE COURT:  Probably tomorrow would be a good idea.
 9    That will give us a chance to clear out the jury room.  All
10    right.  Thank you all very much.  We'll move forward on this
11    schedule, and we'll proceed.
12              Mr. McDonald, you all -- what is the phrase that I
13    heard someone say not long ago?  You all blew doors right
14    quickly after the hearing, and I had put on the table to you
15    all, you and your client, about talking with someone about
16    settlement discussions, and I never heard from any of you about
17    it.
18              It seems to me that this is an appropriate time to
19    reflect upon that.  Is your client amenable to discussing
20    settlement, Mr. McDonald?
21              MR. McDONALD:  Yes, my client is amenable to that.
22    They had been amenable earlier and had hoped to revisit it
23    after the Court had eliminated the damages claim from ePlus.
24    The problem is they really didn't budge at all, basically were
25    seeking a settlement figure based on their original damages
```

1    claim, and it just wasn't getting us anywhere.

2         They've actually tried to make overtures directly to

3    ePlus management that were rebuffed.  Mr. Robertson required

4    that all communications go through him.  I think we've been

5    trying do that, and from our standpoint, the door is still open

6    if ePlus indicates interest and wants to talk about it.  I

7    think I could find somebody at Lawson who would be the

8    appropriate person to engage in that.

9         THE COURT:  How about you, Mr. Robertson?

10        MR. ROBERTSON:  We're always willing and agreeable to

11   talk, Your Honor, but, obviously, we've gone through a lot

12   here, and the playing field has shifted significantly --

13        THE COURT:  Speak up so he can hear you.

14        MR. ROBERTSON:  We understand where we are now.

15   We've had to go through and prove infringement and invalidity,

16   so we believe that the circumstances have changed.  That's, you

17   know --

18        THE COURT:  They have changed.  There isn't any

19   question about that.  It also is not -- it isn't unheard of

20   that where a trial court takes a course in the case that takes

21   out damages but there's an injunction that's there, then one

22   way to avoid the consequences of an injunction is a license,

23   and you take royalties that are adjusted downward for that --

24        MR. ROBERTSON:  Understood.

25        THE COURT:  -- from your highest demand of five to

1    six percent.  What was it?  It was in the $20 million range,

2    but your people have to understand, if you're going to get

3    anywhere with this, that they now have something in hand that's

4    worthwhile, and that under the circumstances, this is a case

5    where you stand, Mr. McDonald, to face an injunction, and it's

6    worth your while to start talking about what's the money worth,

7    the business consideration worth to get this matter sorted out

8    now instead of later.

9            And it seems to me that if you're both willing to

10   realize that there were some things that went one way and some

11   things that went another, and that it presents a ground to

12   settle, then one of the magistrates -- who is it, Judge Dohnal

13   or Judge Lauck?

14           MR. ROBERTSON:  Judge Dohnal.

15           THE COURT:  Who could help you out.  Who helped you

16   settle, if anybody, SAP?

17           MR. ROBERTSON:  Judge Dohnal.

18           MR. CARR:  He did initially.  I think it was between

19   the parties directly after that.

20           MR. ROBERTSON:  I think he was involved pretty much

21   right to the end.  I think the parties had to wordsmith the

22   agreement, but Judge Dohnal got us to a number, but, Your

23   Honor, my client was here at the close of the testimony on

24   Friday.  My client stayed here, and my client was more than

25   willing to meet with a representative of Lawson at that time.

1    There just wasn't a representative of Lawson here for him to

2    meet with.

3           THE COURT:  I know but --

4           MR. McDONALD:  I don't think that's a very fair

5    presentation of the situation.  We had there vice president and

6    general counsel there.  There was no effort to talk to us about

7    anything --

8           THE COURT:  Let's don't --

9           MR. McDONALD:  I do, though, agree that with the

10   verdict now in and we see which products are infringing, which

11   ones are not, that should also kind of recalibrate the system

12   here as to what's at issue and what revenues are really going

13   to be at issue here, and I would welcome discussions that would

14   be focused on what was the actual result here, and I think that

15   that could lead to a result if ePlus was actually willing, for

16   example, to just base the royalty on the products that the jury

17   found infringing, but to date they haven't had any interest in

18   doing anything like that.

19          THE COURT:  Well, let's reflect on some things here

20   as well.  One of the things, if I were thinking about settling

21   this case, is what's going to happen if an injunction is issued

22   and you go on appeal and you don't get a stay on appeal from

23   the District Court, and what is the Federal Circuit going to do

24   if that happens, and then what is ePlus going to appeal.

25          Well, I can tell you one thing I know they're going

1    to appeal.  I don't know what else they're going to appeal, but

2    they're going to say that I was wrong on Dr. Mangum, and that

3    could change the whole dynamic of everything, and I think you

4    have to understand that that is something that needs to be

5    considered as well.

6           I don't know what else they're going to appeal.  I

7    can guarantee you one thing.  They're going to appeal anything

8    they think they can without violating the rules of ethics

9    because nobody has dropped anything yet.

10          MR. ROBERTSON:  I dropped willfulness, Your Honor.

11          THE COURT:  I know.  It almost floored me.  I had to

12   get the rescue squad called, but, Mr. Robertson, you have to

13   realize there were some rulings that went against them that

14   they think might affect -- they may want to take up on the

15   invalidity issues, too.

16          So there's a lot here, but I can tell you,

17   Mr. McDonald, if your people think they're going to get out

18   cheap, I don't think that's going to happen, and that isn't the

19   attitude with which they need to come here.  They need to come

20   with the fact that they have been found guilty of some very

21   substantial infringements, and the fact that 11 percent of the

22   people use punchout and a nickel will get you a Coke in terms

23   of resolving the case.  That's not where you start the case.

24          And, Mr. Robertson, if you think you can get

25   everything back that you lost out of your damages, you're

1    whistling Dixie, too.  So you need to come at it, perhaps, from

2    a fresher mind.  And I'd like to hear from you on Monday if you

3    want Judge Dohnal to get involved in settlement discussions

4    with you, and I want a commitment that you're both willing to

5    take into account the kinds of things I've said today, and I

6    really mean it.

7         If you think you're going to get to your original

8    view of things, Mr. McDonald, it isn't happening, and you're

9    wasting everybody's time.  Same thing with you, Mr. Robertson.

10   If you're think you're getting everything, you are wasting

11   everybody's times, but there are middle grounds in these

12   situations, and they're actually middle grounds where maybe you

13   all can each benefit from a business standpoint.

14        MR. ROBERTSON:  Your Honor, we worked it out with

15   Ariba, we worked it out with SAP, and we worked it out with

16   others.  We don't come --

17        MR. McDONALD:  I'll certainly talk to the Lawson

18   people about that, Your Honor.  I understand what you are

19   saying.  I'm going to do what I can to facilitate that

20   communication.

21        THE COURT:  Who is, in the words of Judge Williams,

22   the big marble at Lawson now?

23        MR. McDONALD:  The big marble?

24        THE COURT:  That's the one that makes the decisions.

25   He says you have to bring your big marble to the game.

```
 1              MR. McDONALD:  I guess that's a question I should go
 2    ask.  I don't know want to answer that question without --
 3              THE COURT:  You don't want to be the marble.
 4              MR. McDONALD:  That will be the question I ask and
 5    exactly the way I will ask it.
 6              THE COURT:  Here's the rule that I have.  You all, I
 7    think, ought to give some thought to how you want to proceed,
 8    and you need to have somebody who can make the decision to
 9    settle this case at a very high level without having to go talk
10    to anybody else or losing his or her job, and Mr. Robertson has
11    to have exactly the same thing, and I don't want to see any
12    general counsel showing up at a meeting as the sole
13    representative of the company.
14              They always have tunnel vision has been my
15    experience.  Not all of them end up with tunnel vision, but it
16    starts that way.  They certainly are welcome to come to the
17    meeting, but that's what the pretrial order generally says
18    anyway, and that is, bring the business person who can handle
19    the matter and make the decision.
20              The attorneys' fees are running, and that's the way
21    things are.  All right, is there anything else you all need to
22    do?  So I'll hear from you on Monday about whether you want to
23    engage Judge Dohnal further.
24              MR. CARR:  All right.
25              THE COURT:  I think it will be to your benefit to do
```

1    so, but you have to come to it with a different spirit than you

2    have right now, and off we go.  So enjoy the weekend, because I

3    know you're going to be working through it.

4              MR. ROBERTSON:  No rest for the weary.

5              THE COURT:  Mr. McDonald, I have a question for you.

6    How much weight did you lose during the trial?  Mr. Robertson

7    says that he lost 13 or 14 pounds in three weeks.

8              MR. McDONALD:  I didn't lose that much.  I lost about

9    six or seven.

10             THE COURT:  Okay.  I think maybe I need to get back

11   to trial work.  Goodbye.  See you all.

12             MR. McDONALD:  Thank you.

13

14             (End of proceedings.)

15

16

17             We certify that the foregoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20

21   _____          _____
     P. E. Peterson, RPR               Date
22

23
     _____          _____
24   Diane J. Daffron, RPR             Date

25