**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF LAWSON'S**
**MOTION FOR A STAY OF ANY PERMANENT INJUNCTION**
**AND ADDRESSING THE RELATED BOND ISSUE**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT ................................................................................................. 2

        A.      A Stay is Warranted because Lawson has Shown
                Substantial Issues on the Merits Relating to Invalidity
                and Infringement ..................................................................................... 2

                1.      ePlus Ignores the Jury's Holding that Lawson's
                        Core System Does not Infringe. ................................................. 2

                2.      The Rejections of ePlus's Patent Claims on
                        Reexamination Show that Lawson Has a Substantial
                        Case on the Merits of its Invalidity Defenses and
                        that a Stay is Warranted. ............................................................ 5

                3.      Serious Questions Exist Regarding Whether the
                        Means-Plus Function Claims, As Construed, Are
                        Invalid as Indefinite. .................................................................. 6

                4.      Infringement Related to the Punchout Claims is
                        Likely to be Overturned or Reversed because ePlus
                        Failed to Show that there is Any Direct Infringement
                        by Anyone, Therefore There Cannot Be Indirect
                        Infringement No Matter What ..................................................... 8

                5.      Lawson is Likely to Show that Maintaining and
                        Servicing Pre-Existing Customers is not
                        Infringement as a Matter of Law. ............................................... 9

        B.      Customers and the Public Will Suffer Irremediable
                Harm Unless the Injunction is Stayed Pending Appeal. .................... 12

        C.      Lawson likely will Suffer Irreversible and Immeasurable
                Harm unless the Injunction is Stayed ................................................ 14

        D.      ePlus will not Suffer Irreparable Harm if any Injunction
                is Stayed Pending Appeal .................................................................. 16

        E.      ePlus Improperly Calculates a Bond Based on an
                Inappropriate Base ............................................................................. 18

IV.     CONCLUSION .......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Aristocrat Techs. Austl. PTY Ltd v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ...................................................................................7

*Arthocare Corp. v. Smith & Nephew*,
315 F. Supp. 2d 615 (D. Del. 2004) ..............................................................................5

*BMC Res., Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007) ....................................................................................8

*C.B.S. Employees Federal Credit Union v. Donaldson*
*Lufkin & Jenrette Sec. Corp.*,
716 F. Supp. 307 (W.D. Tenn. 1989) ...........................................................................4

*Connell v. Sears, Roebuck & Co.*,
722 F.2d 1542 (Fed. Cir. 1983) ...................................................................................3

*Endress + Hauser, Inc. et al., vs. Hawk Measurement Systems Pty. Ltd., et*
*al.*, 932 F. Supp. 1147 (S.D. Ind. 1996) ....................................................................3, 4

*eBay Inc. v. MercExchange L.L.C.*,
547 U.S. 388 (2006) ...................................................................................................16

*Ecolab Inc. v. Envirochem, Inc.*,
2000 U.S. App. LEXIS 20187 (Fed. Cir., July 21, 2000) ...........................................18

*Encyclopaedia Britannica, Inc. v. Alpine Elecs., Inc.*
355 Fed. Appx. 389, 392 (Fed. Cir. 2009) ....................................................................7

*GTE Products Corp. v. Kennametal, Inc.*,
772 F. Supp. 907 (W.D. Va. 1991) .............................................................................19

*Johns Hopkins Univ. v. Cellpro, Inc.*,
152 F.3d 1342 (Fed. Cir. 1998) ...................................................................................3

*Neopost Industrie B.V. v. PFE Int'l, Inc.*,
403 F. Supp. 2d 669 (N.D. Ill. 2005) ..........................................................................10

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999) ..................................................................................11

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007)........................................................................17

*Rohm & Haas Co. v. Brotech Corp.*,
127 F.3d 1089 (Fed. Cir. 1997)........................................................................10

*Standard Havens Prods. v. Gencor Indus.*,
897 F.2d 511 (Fed. Cir. 1990).....................................................................6, 11

*Washington Area Transit Commission v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977) ...........................................................................4

## STATE CASES

*Magnesystems, Inc. v. Nikken, Inc.*,
1994 WL 808421 (C.D. Cal. Aug. 8, 1994).................................................5, 6

## FEDERAL STATUTES

35 U.S.C. § 112 ¶¶ 2, 6.......................................................................................7

35 U.S.C. § 283 ..................................................................................................17

I. __INTRODUCTION__

This lawsuit has been hard fought by both parties at the trial court level and will continue to be vigorously litigated on appeal.  It involves serious legal questions, which is demonstrated in no small part by the fact that the jury rendered a split verdict and the fact that the U.S. Patent and Trademark Office has rejected all of ePlus's patent claims, at least once, and in most cases several times.  The appeal of some of these rejections to the Federal Circuit should follow a similar time track to the appeal of this lawsuit.  In its opening brief, Lawson identified several substantial questions on the merits that warrant a stay of an injunction.  This Court need not find that Lawson's ultimate success on these issues is a mathematical probability, and indeed, may grant a stay even though it found against Lawson on these issues.  The issue here is whether the questions on the merits are serious and substantial – they are.  A stay is warranted.

Moreover, balancing the harm ePlus will suffer if an injunction is stayed against the harm Lawson will suffer if a stay is denied makes clear that a stay is warranted.  It is undisputed that the product sales ePlus contends will be irreparably harmed (Procure+ and Content+) are a tiny part of its overall business (less than 1% in 2010).  ePlus claims it will lose sales, but cannot prove it lost even a single sale in the past nine years *because of the infringing products*.  It may be theoretically possible that ePlus might lose a sale going forward if Lawson is not enjoined, but this harm will be remedied if ePlus prevails on appeal.

Lawson, on the other hand, will undoubtedly lose sales if enjoined.  It will undoubtedly suffer harm to its reputation and customer relationships if it has to cancel new sales in process and if it cannot maintain and service the RSS and Punchout products it has

been selling for years.  Lawson's harm will not be remedied if the Federal Circuit finds it was wrongfully enjoined.  Lawson's customers will undoubtedly suffer harm if they have no one to service and maintain their products.  The harm to Lawson's customers will not be remedied if the injunction was wrongfully entered.  As such, if this Court grants ePlus's motion for a permanent injunction, it should stay this injunction pending appeal.

## II.   <u>ARGUMENT</u>

If an injunction is entered in this case, it should be stayed, because a stay will not cause irreparable harm, but it is the only way to prevent irreparable harm.

### A.   <u>A Stay is Warranted because Lawson has Shown Substantial Issues on the Merits Relating to Invalidity and Infringement.</u>

ePlus relies on the Court's summary judgment findings, rulings on motions in limine, and the jury verdict to argue that Lawson has not shown a substantial case on the merits.  Those very decisions, however, form the basis for the issues that will be appealed. They do not contradict Lawson's arguments in its opening brief that there are serious legal issues that support a stay pending appeal

#### 1.   <u>ePlus Ignores the Jury's Holding that Lawson's Core System Does not Infringe.</u>

ePlus argues that the Court's comments, made mid-way through trial, show Lawson is not likely to succeed on appeal.  ePlus relies on a comment from the Court that "I would clearly find that there is infringement of everything that Dr. Weaver said, that each system infringed each claim for the reasons he stated."  (Dkt. No. 704 at 3 (citing Trial. Tr. at 2849:8-9).)  The jury, however, found that Lawson's Core Procurement System did not infringe and that the RSS configuration infringed only one out of twelve asserted claims.  That single claim, claim 1 of the '172 patent, was the only claim that did

not require multiple catalogs.  It is the most susceptible to reversal on appeal of the invalidity defenses because it is the broadest, and thus most likely to read on prior art that was excluded over Lawson's objection.

With respect to invalidity, the Court precluded Lawson from introducing as prior art the J-CON and P.O. Writer systems.  The PTO's final rejections of the claims in reexamination based on that prior art alone shows a substantial issue for appeal.  Moreover, both of those pieces of art were found to anticipate the claims at issue in reexamination, meaning each system had all of the elements necessary to render the claims invalid.  Lawson was precluded from introducing J-CON and P.O. Writer on obviousness grounds, which allows the jury to consider the combination of the art.  If the art separately anticipates, there is a substantial question about whether, when combined, the art would render the claims obvious.  *See, e.g., Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1357 n.21 (Fed. Cir. 1998) (holding a disclosure that anticipates also renders a claim obvious); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) ("a disclosure that anticipates . . . also renders the claim invalid under § 103, for anticipation is the epitome of obviousness.") (citations and internal quotes omitted).  And the foregoing is supplemented by the fact that another reference which was before the jury—the '989 patent—was found to anticipate the claims at issue in reexamination.

ePlus's legal support for its positions is severely lacking.  ePlus selectively cites to the *Endress + Hauser* case for the proposition that facts already reconsidered by the district court show that an appeal is unlikely to succeed.   ePlus, however, omits the reasoning for that court's holding.  In *Endress + Hauser*, the defendant argued for a stay by "merely referenc[ing] its previous motions to reconsider and to alter and amend, both

of which were denied; stat[ing] that each of those motions raised serious questions

regarding the accuracy of this court's judgment; and not[ing] that the Federal Circuit will

apply a *de novo* standard of review." *Endress + Hauser, Inc. v. Hawk,* 932 F. Supp.

1147, 1149 (S.D. Ind. 1996). ePlus chose to selectively remove the underlying basis for

the Court's decision, which is inapposite to the case here because Lawson has put on

witness testimony, documentary evidence, and declarations from customers to support its

request for a stay. Furthermore, as noted in *C.B.S. Employees Federal Credit Union v.*

*Donaldson Lufkin & Jenrette Sec. Corp.,* 716 F. Supp. 307, 309-310 (W.D. Tenn. 1989):

> In applying the first prong of the *Hilton* test to the present case, it is
> unlikely that a district court would ever be able to find that defendants will
> be likely to succeed on the merits of their appeal. To make such a finding,
> the district court would be saying that it erred in not granting defendant's
> original motion to stay the proceedings pending arbitration, and that the
> court of appeals is likely to reverse its decision. This Court is not prepared
> to make such a statement and does not feel that it must in order to satisfy
> the first prong of the Hilton test. In *Washington Area Transit Commission*
> *v. Holiday Tours, Inc.,* 182 U.S. App. D.C. 220, 559 F.2d 841 (D.C. Cir.
> 1977), the court stated: A court, when confronted with a case in which the
> other three factors strongly favor interim relief, may exercise its discretion
> to grant a stay if the movant has made a substantial case on the merits. **The**
> **court is not required to find that ultimate success by the movant is a**
> **mathematical probability, and indeed as in this case, may grant a stay**
> **even though its own approach may be contrary to movant's view of**
> **the merits.** 559 F.2d at 843. The *Washington Area Transit* court went on
> to state that the first prong of the test is satisfied when the movant presents
> a "serious legal question," regardless whether he has shown a mathematical
> probability of success. *Id.* at 844.

*Id.* (emphasis added). ePlus is asking this Court to deny the stay based on an incorrect

interpretation of the law. This Court should evaluate the issues on appeal by determining

whether there is a substantial case on the merits and whether Lawson has serious legal

questions. Both are present here, as discussed in detail in Lawson's opening brief.

2.     The Rejections of ePlus's Patent Claims on Reexamination Show that Lawson Has a Substantial Case on the Merits of its Invalidity Defenses and that a Stay is Warranted.

The PTO's final rejections of the patent claims found to be infringed are highly relevant to the issues of an injunction and a stay of any injunction.  ePlus continues to misinform this Court that it should ignore the reexaminations because they are non-final. First, the PTO has **finally rejected** claims 1 of the '172 patent and claims 26, 28, and 29 of the '683 patent.  (DX-243 (1/13/11 final rejection); DX237 (1/8/2009 final rejection).) That means that three expert examiners have reviewed the claims against the prior art and determined that the claims are invalid.  MPEP §§ 2271.01 and 2671.03 (DX-485, ¶ 22); 1/13/11 Final Rejection at p. 21 (DX-488) (signed by multiple examiners ("conferees")) (DX-551).  This fact alone shows a substantial issue for appeal.  Moreover, all of these final rejections are on appeal to the Board of Patent Appeals and Interferences.  Notice of Appeal for Reexamination No. 95/000,487 ('172 Patent) (DX-489); File History for Reexamination No. 90/008,104 ('683 Patent, claims 26-45) (DX-237).  Oral argument was heard on the appeal of the final rejection of claims 26, 28, and 29 of the '683 patent in October 2010.  A decision is imminent.  If the rejection is affirmed, ePlus will likely appeal that decision to the Federal Circuit (the timing of which will be likely be concurrent with the appeal of this case).  The claims are not in a situation where the PTO has merely granted the reexamination request.

Second, the only cases that ePlus points to in support of its positions are related to circumstances where the reexaminations were in their infancy, which is not the case here. In *Arthocare Corp. v. Smith & Nephew*, 315 F. Supp. 2d 615, 619 (D. Del. 2004), the "ongoing reexamination proceedings" were in infancy, as the accused infringer

argued that the PTO's mere grant of the requests for reexamination merited a stay. *Id.* ePlus's citation to *Magnesystems, Inc. v. Nikken*, *Inc.*, 1994 WL 808421 (C.D. Cal. Aug. 8, 1994) is similarly inapposite. There, the court denied a motion to stay the permanent injunction on the basis of a reexamination request filed approximately **one month after** the grant of a permanent injunction based on art previously considered by the court, as well as newly discovered prior art. *Id.* at *7. This case is even farther afield because there was no grant of the reexamination request, let alone a PTO finding of invalidity. *Id.*

As discussed above, the reexamination proceedings have reached a final stage, and cast serious doubts as to the verdict and the validity of the asserted patents. Moreover, there is no requirement that the appeal process be final for the reexaminations to have relevance to the inquiry of whether there is a substantial question on the merits that warrants a stay of an injunction. Indeed, ePlus's position is directly contrary to the Federal Circuit's holding that "the mere existence of conflicting views on validity as between a court and the Patent and Trademark Office supports [the movant's] contention there exists an important legal question regarding validity." *Standard Havens I*, 897 F.2d at 514; *see also E.I. duPont*, 835 F.2d at 277 (granting stay pending appeal in view of reexamination decision finding claims invalid).

The Court's rulings preventing Lawson from providing the jury a full scope of the prior art shows the substantial question on appeal. This Court should recognize that the very agency that granted the patents has now found its decision was improper.

        3.     <u>Serious Questions Exist Regarding Whether the Means-Plus Function Claims, As Construed, Are Invalid as Indefinite.</u>

ePlus argues one of ordinary skill in the art would understand the Court's construction to perform the purchase order generating function "according to the processes described in the sections of the specification relied upon by the Court."  (Opp. at 7).  ePlus confuses the enablement requirement with the requirement that means-plus-function *claim elements* be definite under 35 U.S.C. § 112 ¶¶ 2, 6.  *Aristocrat Techs. Austl. PTY Ltd* v. *Int'l Game Tech.,* 521 F.3d 1328, 1337-38 (Fed. Cir. 2008) ("'consideration of the understanding of one skilled in the art in no way relieves the patentee of adequately disclosing sufficient structure in the specification.' It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function."); *Encyclopedia Britannica, Inc.* v. *Alpine Elecs., Inc.,* 355 Fed. App'x 389, 394-95 (Fed. Cir. 2009).

The law requires that ePlus's patent specification include an algorithm to explain how to carry out the claimed means plus function claim elements.  *Encyclopaedia Britannica, Inc. v. Alpine Elecs., Inc.* 355 Fed. Appx. 389, 392 (Fed. Cir. 2009).  However, the Court's claim construction of the means for processing purchase order(s) claim elements, among other elements, does not include an algorithm.  It includes no structure beyond the recited function, which is "processing a requisition to generate [one or more] purchase orders for the selected matching items."  Similarly, the patents' specification describes *only* the result of generating one or more purchase orders, but not the algorithm for *how* they are generated.  Although the sufficiency of the disclosure of an algorithmic structure should be judged in light of what one of ordinary skill in the art would understand the disclosure to impart, that principle has no application here because there was no algorithm disclosed at all.

7

In sum, serious questions exist about whether infringed means plus function claims are indefinite under §112, ¶ 2 for failure to disclose sufficient structure as required by §112, ¶ 6. This factor strongly supports a stay of injunction pending appeal.

    4.    <u>Infringement Related to the Punchout Claims is Likely to be Overturned or Reversed because ePlus Failed to Show that there is Any Direct Infringement by Anyone, Therefore There Cannot Be Indirect Infringement No Matter What</u>

To prevail on appeal, ePlus must have met its burden to prove that either Lawson directly infringed the claim(s) OR that someone else directly infringed the claim(s) AND that Lawson induced the third party's direct infringement. ePlus does not dispute that *Lawson* did *not* directly infringe these claims *by itself*. Rather, its opposition brief focuses on the issues of indirect infringement and joint infringement.

ePlus's argument on indirect infringement focuses exclusively on the issue of Lawson's inducement and wholly ignores the requirement that it prove that someone other than Lawson directly infringed these claims. ePlus did not prove that any single actor performed all of the method steps *or* that any single system contained all of the system elements. All of the evidence at trial showed that some things happen on the customer's Lawson system, such as building a requisition and generating a purchase order, and some things happen on the vendor's system, such as searching for items in a database (which is also on the vendor's system). Indeed, ePlus's expert admitted that the punchout vendor is responsible for some, but not all, of the claim elements. *See, e.g.,* Trial Tr. at 662:11-24; 778:12-779:5; 1373 (DX-533). Therefore, there was no direct infringement by anyone. Without any direct infringement, there can be no indirect infringement, no matter what Lawson does or does not do. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379

(Fed. Cir. 2007) ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.").

Regarding joint infringement, ePlus responds that it made numerous arguments during trial regarding joint infringement. It did. But then it waived its joint infringement claim and this Court precluded ePlus from raising it again. (DX532 at 1384.) Although both parties originally proposed jury instructions on joint infringement and both objected to the other's proposed instructions (Dkt. 511 at 32; Dkt. 467 at 24; Dkt. 512 at 23; Dkt. 523 at 77-79), the final jury instructions did *not* include an instruction on joint infringement because ePlus waived this argument. The jury could not have found for ePlus on joint infringement because they were not instructed on this issue.

5.   Lawson is Likely to Show that Maintaining and Servicing Pre-Existing Customers is not Infringement as a Matter of Law.

ePlus contends that Lawson admits that an injunction could properly enjoin installation, implementation, and maintenance of infringing systems for new customers. (Dkt. No. 704 at 13). Not true. To the contrary, Lawson's opposition brief to ePlus's motion for an injunction sets forth the reasons why any injunction is improper. (Dkt. Nos. 705 and 706.) ePlus also attempts to conflate Lawson's position that an injunction should not issue at all because Lawson also argues that the Court should stay any injunction that relates to services. (*Id.* at 13-14.) The Court required Lawson to file a brief relating to a stay of an injunction before any injunction was entered. To be clear, Lawson objects to the entry of any injunction. Moreover, if this Court were to enter an injunction for any scope, that injunction should be stayed.

ePlus incorrectly contends that there is no dispute that implementation, maintenance, and support services are inherently acts of infringement.  (Dkt. No. 704 at 15.)  ePlus's sole witness on the issue of infringement was Dr. Weaver.  Dr. Weaver's sole testimony on the issue of service and maintenance being a separate act of infringement was the following exchange:

> Q: Now, if Lawson provides such an electronic sourcing system to its customers and assists them in implementation, maintenance, servicing and all the training materials, guides, manuals, online services, etc., do you have an opinion as to whether or not all these remaining elements are indirectly infringed by Lawson by providing those services?
>
> A: My opinion is that they do.

(DX-532 at 818:21-819:3.)  Dr. Weaver and ePlus provided no analysis as to the reasoning behind that conclusion.  As a matter of law, ePlus's evidence on that point was insufficient for the jury to find that Lawson's separate servicing and maintenance of products already sold constitutes infringement.  *Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 676 (N.D. Ill. 2005) ("Instead of describing how the accused devices infringe each claim of PFE's patents, [the expert] simply recites the patent claim language and states that the accused devices incorporate those claim criteria, without explaining how, why, or in what way. These general and conclusory statements, standing alone, do not establish patent infringement by a preponderance of the evidence.") *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093 (Fed. Cir. 1997) (same).

Moreover, the cases Lawson cited in its moving papers show that a plaintiff is not permitted to enjoin ongoing maintenance of pre-existing products where it was precluded from obtaining damages on the sale of those products.  (Dkt. No. 643 at 14-16.)

ePlus's delay in bringing this lawsuit has exponentially increased the irreparable harm Lawson will suffer if it is enjoined from servicing and maintaining RSS products that it has been selling for the past 15 years. ePlus's delay and the harm is has caused Lawson support a stay pending appeal. ePlus's citation to the footnote in the *Windsurfing* decision is misplaced because the Federal Circuit has previously noted that "Windsurfing involved the improper denial of an injunction, not a stay pending appeal," and that "[c]ertainly, *Windsurfing* does not overcome the equities of a case." *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 515 (Fed. Cir. 1990). Furthermore, "[n]or can *Windsurfing* be applied mechanically," and "[i]f it were, no stay pending appeal could ever issue in an infringement case." *Id.*

ePlus claims it has a legitimate excuse for its delay in suing Lawson because for seven years it has pursued patent infringement against six corporations. (Dkt. No. 704 at 14-15.) Not once before it filed suit in May of 2009, did it inform Lawson of any allegation of infringement. That failure to inform Lawson, combined with SAP's failure to mark (Dkt. No. 643 at 16), show that ePlus cannot recover past damages for sales it made before the verdict. Because it cannot recover those past damages, it is not permitted to do an end-run around that process and obtain an injunction on these same products, which it will then use as leverage to get the damages it was precluded from recovering. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273-74 (Fed. Cir. 1999) (holding patentee cannot use leverage of an injunction to extract royalties that it is precluded from recovering). To the extent the Court finds maintenance acts of infringement, a stay is warranted to have that issue resolved by the Federal Circuit.

**B.**   **Customers and the Public Will Suffer Irremediable Harm Unless the Injunction is Stayed Pending Appeal.**

ePlus's contends that the harm to consumers is not real because of Lawson purportedly did not inform its customers about this lawsuit.  This argument strains credibility.  First, the testimony was that Lawson did make public announcements about the Lawsuit, did talk with its customers about this matter, likely made a customer announcement, and that its customers are aware of the lawsuit, the verdict, and the possible injunction.  Inj. Tr. at 209:22-210:6; 255:3-24 (DX-532).  Second, Lawson's internal procedures related to notifying customers about the status of its products have nothing to do with whether an injunction will harm to the consumers.  The fact of the matter is that Lawson's customers and the public will be harmed if an injunction is entered against Lawson that precludes Lawson from servicing and maintaining previously sold products.  As such, if an injunction is entered, it must be stayed pending appeal.

Moreover, the harm to Lawson's customers and the public is not "wholly manufactured" as ePlus contends.  (Dkt. No. 704 at 16.)  Lawson submitted declarations of its customers showing the harm that would befall them if they did not have maintenance and service of the RSS product.  (Reasoner Declaration (DX-486); Johnson Declaration (DX-484).)  As an example, a software bug would prevent hospitals from generating purchase orders from released requisitions without Lawson's maintenance.  (DX486, ¶ 3.)  Further, Providence Hospital's declaration instructed that it would have to re-train its 4,000 users to use any changed software.  (*Id.* at ¶ 14.)  That cannot be done overnight.  The Court also heard live testimony from Dean Hager, Lawson's Executive Vice President of S3 products, who explained the harm that would befall Lawson and its customers.  Mr.

Hager testified that the purchasing system in Lawson's hospitals is "mission critical to the care that they provide their patients." (DX-533 at 213:16-19.) The harm is not minor. It is real, and it will affect the healthcare costs and costs of every other customer who has implemented Lawson's RSS and Punchout systems.

ePlus's contention that Lawson's customers would simply opt for ePlus's product has no basis in fact and is nothing more than speculation. (Dkt. No. 704 at 18.) ePlus has provided no evidence that its software can operate in the largest hospitals in the country. There is no evidence that ePlus understands or has software that has the legal requirements for the healthcare industry. Ken Farber could not name a single current hospital using ePlus's Procure+ software. Lawson's system, on the other hand, is used by a third of the hospitals in this country. (DX-533 at 219:17-21.) Over sixty percent of the top 50 hospitals in the country operate using Lawson's systems. (*Id.* at 213:8-10.) Dean Hager further testified that Lawson provides regulatory releases that are designed to assure the customers abide by the law of the land. (DX533 at 209:4-21.) There is no evidence ePlus has that knowledge, let alone the software to support the regulations. Mr. Farber admitted that he is not familiar with what hospitals would require by way of support for procurement products. (*Id.* at 163:17-19.) Mr. Hager testified that it would be "unlikely" that any of Lawson's customers would pick ePlus because ePlus does not have a lot of experience in healthcare and would not have the necessary references to qualify as a solution. (DX-533 at 223:5-224:6.) Indeed, the software in question runs the procurement of hospitals, cities, counties, water systems, schools, police departments, and other public utilities. (DX-409; DX-533 at 178:4-18.)

Lawson's customers who are in the process of implementing RSS and Punchout and those who are currently going through the selection process and have placed Lawson on the "short list" will be equally harmed by an injunction that is not stayed. ePlus simply ignores the testimony that selection of replacement procurement software from any of the dozens of competitors that offer similar software takes months, on average, to complete. (DX-533 at 219:1-16; DX-486 at ¶7-8.)  This is not software that can be uploaded over the weekend.  (Id. at 169:19-170:2.)  Thus, immediately switching to a competitor's product is not a viable option for Lawson customers.  Absent a stay of any injunction, these customers will face significant retraining, delays, added costs, and likely errors in procurement without Lawson's support and maintenance.

**C.**    **Lawson likely will Suffer Irreversible and Immeasurable Harm unless the Injunction is Stayed.**

ePlus does not dispute that Lawson will suffer harm and incur costs if the Court enters an injunction without a stay.  Rather, ePlus contends that harm is a result of "natural consequences."  (Dkt. No. 704 at 20.)  That is contrary to the facts.  Lawson introduced its procurement line of products in 1975.  Lawson built its business during that time, developing new products and modules.  Indeed, its RSS product was introduced in 1997, fifteen years ago.  (DX-409 ("SIP" and "SIPP" are the SKUs for RSS) (showing delivery of these SKUs starting in 1997)).  Many of the customers who will be harmed by this injunction purchased RSS from Lawson before 2002, when ePlus contends the infringement began.  ePlus did not inform Lawson of its infringement allegations until it filed this suit in 2009.  Meanwhile, Lawson continued building its business based on its

own technology.  ePlus has no right to blame Lawson for its years of product development and sales when ePlus did not even write a letter that it claimed infringement.

Lawson will be harmed if the Court were to enjoin Lawson from selling its RSS and Punchout technology.  ePlus cites to testimony from Dale Christopherson and Dean Hager that Lawson would still be able to compete in the Supply Chain Market.  (Dkt. No. 704.)  This is a separate issue from the harm that will befall customers who already purchased and implemented the RSS and Punchout products or the customers who have purchased these products but have not implemented yet or the customers who are in the process of implementing them.  Such will also harm Lawson – it will damage its reputation and customer relationships, among other things.  Lawson will be irreparably harmed if it cannot continue to maintain and services the products it already sold or products it is in the process of selling.

Moreover, customers who have selected Lawson as a provider, but have not yet completed the purchase will suffer harm from an injunction.  This will also harm Lawson – it will lose sales and customers, and suffer irreparable damage to its reputation, without a stay pending appeal.  Several customers have selected Lawson as a provider of RSS or Punchout, but will not complete their purchases before the injunction goes into effect. (DX-441 (showing "short listed" stage and status of purchase).)  If Lawson is immediately enjoined and these customers are forced to go elsewhere, it is unlikely that they would return even if Lawson prevails on appeal.  Additionally, outstanding bids that include RSS would need to start anew, which as shown above may take months if not years.  (DX533 at 219:1-10, *see also* DX486 at ¶ 7.)

If this Court enters an injunction without a stay, Lawson will have no recourse to recover the lost sales and damage to reputation caused by the injunction. A wrongfully entered permanent injunction will damage Lawson without repair.

**D.      ePlus will not Suffer Irreparable Harm if any Injunction is Stayed Pending Appeal.**

ePlus cannot credibly claim that it will be irreparably harmed if any injunction is stayed pending appeal based on the fact that it waited years to bring this lawsuit, fully aware the whole time of Lawson's products. (DX533 at 147:18-149:6, 154:8-25.) ePlus contends the Patent Statute gives it the right to exclude Lawson. (Dkt. No. 704 at 23.) The Supreme Court, however, has made it clear that ePlus has no automatic right to exclude Lawson. Rather it must prove that absent an injunction, it will suffer irreparable harm that is not compensable by money damages, that the balance of harms favors an injunction, and that an injunction will serve the public interest. *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388 (2006). It cannot prove any of these things.

ePlus claims it will lose market share with respect to its patented products if the Court entered a stay of any injunction. First, this claim is unsupported. ePlus has not put on any evidence of its market share, let alone evidence to show that it has lost market share. Second, it would have to prove that any loss in market share was *caused by Lawson's infringing products*, which it cannot do. As ePlus readily admits, it has dozens of competitors who might be partially or wholly responsible for any market harm ePlus may have suffered.   (DX-533 at 120:19-21; 143:9-144:6; DX-416.) Third, ePlus filed a statement with the SEC in 2009 blaming its declining sales in eprocurement software on the downturn in the economy. It did not blame Lawson. (FF at ¶13). Moreover, ePlus's

eprocurement software accounts for less than 1.5% of its revenues – lost sales or market

share for such a tiny part of its business will not be irreparable.  The raw data further

shows ePlus will not be harmed with a stay of any injunction:

- 98 percent of the ERP market is available to ePlus with zero competition from Lawson.  (DX-533 at 188:3-15.)
- 100 percent of the non-ERP market looking for eProcurement software is available to ePlus with zero competition from Lawson.  (*Id.* at 190:3-16.)
- Mr. Farber identified only two new business customer wins for Procure+ in 2010. (*Id.* at 98:14-99:10.)
- Mr. Farber was not able to name even a single business opportunity ePlus lost due to the sale of Lawson's RSS and Punchout products.  (*Id.* at 117:25-119:8.)
- Mr. Farber was not able to name any current hospital customers using ePlus's Procure+ software Mr. Farber was able to name.  (*Id.* at 85:25-86:8.)
- Lawson sold 29 RSS units in the past year  (DX-409.)
- Lawson sold only one RSS unit in the past year to a customer outside of the healthcare or public sector  (*Id.*)

These facts (as opposed to ePlus's uncorroborated general statements) show that ePlus

will not lose market share if the Court were to stay any injunction.  As described in

Lawson's opposition to the motion for permanent injunction (Dkt. No. 705 at  16-17),

whether Lawson is enjoined or not will have no impact on ePlus's business.

    ePlus simply ignores the fact that it can be compensated if an injunction is stayed

but ePlus prevails on appeal.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314

(Fed. Cir. 2007) (ongoing royalties satisfy equitable relief provisions of 35 U.S.C. § 283).

    Further, the harm to the public for being forced away from Lawson's RSS product

is significant.  Using Mr. Farber's very conservative estimate that it costs $150,000 to

implement new procurement software, the costs of switching all of Lawson's customers

from RSS to something else would be $42 million.  Additionally, as described in detail in

Lawson's injunction opposition, there are significant non-financial harms that would be

caused by enjoining Lawson without a stay.  (Dkt. No. 705 at 19-21.)

ePlus is not likely to receive any benefit from staying any injunction. ePlus claims that it would be able to replace Lawson's RSS. That is foolish. ePlus has little to no experience in the healthcare market, let alone large hospitals. There is no evidence that ePlus could actually take over Lawson's procurement product. A stay will not cause ePlus to lose any business. ePlus can be compensated in the form of a prospective royalty to the extent the appeal is decided in ePlus's favor. Any other result would cause irreparable injury to Lawson, its customers, and the public at large.

**E.   ePlus Improperly Calculates a Bond Based on an Inappropriate Base.**

Lawson is solvent and has cash and cash equivalents on hand that would cover any reasonable prospective royalty. (DX-214 at 85.) Thus, there is no need for it to post a bond. That issue is fully set forth in Lawson's moving brief. A finding that no bond is required would eliminate the need to address the amount of a bond.

ePlus follows its contention that a bond is necessary with an absurd calculation of $56 million dollars[1], over two times the amount that it sought for six years of damages in this case for *all* products, including those found not to infringe. (Dkt. No. 704 at 30.) The absurdity of that figure should show the Court that the number is being used for flash value. Moreover, the calculation of the $56 million is completely wrong.

ePlus derived that figure based on a reading of cases that are not on point. ePlus cites *Ecolab Inc. v. Envirochem, Inc.*, for the proposition that Lawson should be required to contribute a percentage of its receipts into escrow. 2000 U.S. App. LEXIS 20187 (Fed. Cir., July 21, 2000). In that case, however, the accused infringer was unable to

---

[1]      ePlus contends that it has not given Lawson a license because Lawson has not been willing to pay a "reasonable amount" for such a license. Inj. Tr. at 91:11-92:7 (DX-533). However, the fact that ePlus

afford the bond amount required by the district court and thus requested an alternate arrangement, namely an escrow account designed to secure the patent owner's interests. *Id.* at *2. Furthermore, the amount of the escrow was expressly determined by the means of a consent judgment. *Id.* at *3. None of the concerns at issue in *Ecolab* are at issue here because Lawson possesses the financial wherewithal to cover any damages award ePlus claims to be entitled to – even though this Court has found that ePlus is entitled to no past damages and the jury found that several accused products do not infringe, and Lawson certainly has not requested the establishment of an escrow account.

Moreover, ePlus's citation to *GTE Products Corp. v. Kennametal, Inc.*, 772 F. Supp. 907 (W.D. Va. 1991), is off base because in that case the patent holder was awarded damages for lost profits. *Id.* at 918-19. Accordingly, the court there found that an appropriate measure for the potential injury during a one-year stay of the permanent injunction was a measure of the expected lost profits damages the patent-holder would have received. *Id.* at 920. Here, ePlus was awarded no damages, let alone lost profits. Indeed, ePlus did not even seek lost profits. Accordingly, the measure of a prospective bond amount should not provide a *de facto* lost profits damages award for the expected period of the stay during the appeal.

ePlus's proposed bond figure is also incorrect because it based the figure on all of the accused products, including those that were found not to infringe. Any bond amount should be based only on RSS and Punchout.

---

continues to demand more and more money despite being precluded from past damages and failing to

IV.     **CONCLUSION**

ePlus's opposition to Lawson's motion for a stay is based on general statements without support.  Lawson identified a number of substantial issues for appeal.  This Court need not reverse itself in finding that a stay is appropriate.  Moreover, Lawson has shown that an injunction without a stay will cause Lawson and its customers irreparable harm. Lawson cannot be compensated for lost sales and opportunities should the Federal Circuit rule in its favor.  ePlus, on the other hand, can be fully compensated if it prevails on appeal.  As such, a stay of any injunction is appropriate.

LAWSON SOFTWARE, INC.

By_____/s/_____
        Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON,**
**FARABOW,**
**GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

prove infringement of Lawson's core products demonstrates the unreasonableness of ePlus's bond request.

## CERTIFICATE OF SERVICE

I certify that on this 1st day of April, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software,*
*Inc*

21