IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ePLUS, INC.

    Plaintiff,

v.   Civil No. 3:09cv620

LAWSON SOFTWARE, INC.,

    Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Lawson Software, Inc.'s ("Lawson") Motion for a Stay of any Permanent Injunction (Docket No. 642). For the reasons set forth below, the motion will be denied.

## STATEMENT OF BACKGROUND FACTS

ePlus, Inc. ("ePlus") filed this action against Lawson alleging that Lawson had infringed, and was continuing to infringe ePlus's patents through Lawson's manufacture, use, sale, offer for sale, and/or importation into the United States of infringing products, methods, processes, services, and systems that are primarily used or primarily adapted for use in electronic sourcing and procurement software applications, services, systems, and methods. At issue were three ePlus patents ("patents-in-suit") related to enterprise-procurement

software ("e-procurement software"): U.S. Patent Nos. 6,023,683 (the "'683 patent"), 6,055,516 (the "'516 patent"), and 6,505,172 (the "'172 patent"). The specific claims at issue during trial were claims 3, 26, 28, and 29 of the '683 patent; claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent; and claim 1 of the '172 patent. Further detail of the history of this litigation is discussed in the Court's Memorandum Opinion explaining the issuance of the permanent injunction. See Memorandum Opinion, Docket No. 728.

Trial commenced on January 4, 2011. On January 27, the jury reached a unanimous verdict and found that the '683 patent and the '172 patent were infringed, but not the '516 patent. The jury further found that all asserted claims of the patents-in-suit were valid. Specifically, the jury determined that the following configurations of Lawson's Core S3 Procurement System infringe the asserted claims identified below, both directly and indirectly:

- Lawson's S3 Procurement System (Lawson System Foundation ("LSF")/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules) and Requisition Self-Service ("RSS"), infringes claim 1 of the '172 patent;

2

- Lawson's S3 Procurement System, RSS, and Punchout, infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent;

- Lawson's S3 Procurement System, RSS, Punchout, and Electronic Data Interchange ("EDI"), infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent; and

- Pursuant to the parties' Amended Final Pretrial Order (Docket No. 481), Section II, because ePlus proved that the aforementioned configurations of Lawson's S3 Procurement System infringe claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent, both directly and indirectly, ePlus also proved that Lawson's M3 Procurement System infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent, both directly and indirectly.

On March 27, 2011, the Court held an evidentiary hearing on the issues of a permanent injunction and a stay of any permanent injunction. The parties then briefed the issues, and the Court heard oral argument on April 4, 2011. The parties briefed the stay issue at the same time they briefed the injunction issue so as not to delay a decision on the stay issue in the event an injunction was issued.

3

The Court granted ePlus's Motion for a Permanent Injunction on May 23, 2011. Order, Docket No. 729. The Memorandum Opinion is incorporated herein by reference. Memorandum Opinion, Docket No. 728.

## DISCUSSION

In support of its motion for a stay of the injunction pending appeal, Lawson argues that it has made a strong showing that it is likely to succeed on the merits with respect to four issues; that a stay will minimize irreparable harm to Lawson's customers, the public, and Lawson; and that ePlus can be compensated for any losses it suffers while an injunction is stayed by awarding it damages for infringing sales made during this period. ePlus opposes a stay of the injunction pending appeal. It claims that it will continue to suffer irreparable harm, while neither Lawson nor the public will suffer any harm from the injunction. Furthermore, it disagrees that Lawson has shown a likelihood of success on the merits.

In deciding whether to grant a motion for a stay pending resolution of post-trial motions or appeal under Fed. R. Civ. P. 62(b) or 62(c), a court should consider the following:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

> substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990) ("Standard Havens I") (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The Court need not give each factor equal weight. Id. Furthermore, "likelihood of success in the appeal is not a rigid concept." Id. Accordingly, to obtain a stay pending appeal, a movant must establish a strong likelihood of success on appeal, or, failing that, "'demonstrate a substantial case on the merits,' provided the other factors militate in movant's favor." Id. at 513 (emphasis in original) (quoting Hilton, 481 U.S. at 778). In other words, the court "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987).

1. **Likelihood of Success on the Merits**

Lawson contends that it has made a strong showing that it will likely succeed on the merits with respect to four issues. First, Lawson argues that the Patent and Trademark Office's ("PTO") rejections of the infringed claims of the '172 patent and the '683 patent during the pending reexamination proceedings demonstrate that Lawson will likely succeed on appeal in having the jury's finding of the claims' validity overturned. Before

5

trial, the Court addressed the relevancy of the reexamination proceedings three times. First, the Court denied Lawson's motion to stay the litigation pending the reexaminations. See Docket No. 198. Second, it denied Lawson's motion *in limine* to exclude arguments or evidence inconsistent with the reexaminations. See Docket No. 362. Third, it granted ePlus's motion *in limine* to exclude arguments or evidence relating to the reexaminations. See Docket No. 375. Lawson resurrects those same arguments in arguing that it has a strong likelihood of succeeding on appeal on its contention that the asserted claims of the infringed patents are invalid.

As things currently stand, the reexaminations of the infringed claims are in various procedural postures, further complicating the analysis. A claim is not invalidated unless and until the entire reexamination process, culminating in an appeal to the Federal Circuit, has occurred, a final decision is reached adverse to the patentee, and a certificate is issued by the PTO cancelling the patent claims. Here, by far the most advanced reexamination proceeding is the final Office Action of the PTO rejecting claims 26-45 of the '683 patent, which the Board of Patent Appeals and Interferences ("BPAI") recently affirmed on May 18, 2011. ePlus has two months to seek a rehearing, brief the issues in error, and petition to present new evidence that has come to light, which it intends to do.

The BPAI then would issue a decision. The case could be remanded back to the PTO Examiner for further proceedings, or be ripe for appeal to the Federal Circuit. ePlus has stated that it intends to pursue appeal to the Federal Circuit if it receives an adverse ruling from the BPAI on the rehearing. The next most advanced reexamination proceeding is the PTO's Action Closing Prosecution, rejecting claims 1-5 of the '172 patent. On February 2, 2011, ePlus filed a Notice of Appeal on the Action Closing Prosecution in that reexamination. Finally, the PTO recently issued an initial, non-final Office Action rejecting Claims 1-25 of the '683 patent on February 10, 2011.

Lawson claims that the rejection of every asserted claim of the infringed patents shows that, at minimum, substantial questions exist as to the validity of those claims. ePlus strongly disagrees with Lawson's position, distinguishing patent litigation before an Article III United States District Court from the reexamination proceedings before the PTO. It argues that this Court should take into account that the two are "entirely different proceedings, with different rules of claim construction, different burdens of proof, and different evidentiary practices." Pl.'s Br. in Opp'n at 4. Furthermore, according to ePlus, the mere potential for invalidity in the reexamination proceedings should not alter the jury's verdict finding all the asserted claims valid.

7

The Court finds that Lawson has not made a strong showing of a likelihood of success, or raised a substantial case, on the claims' invalidity based on the rejections of the claims in the ongoing reexamination proceedings.

As support for its argument, Lawson relies heavily on Standard Havens Products, Inc. v. Gencor Industries, Inc., No. 93-1208, 1993 WL 172432, at *1 (Fed. Cir. May 21, 1993) ("Standard Havens III"), a one-page, unpublished opinion of the Federal Circuit reversing the district court's denial of a stay of the permanent injunction and stay of the damages proceedings subsequent to a completed PTO reexamination. Lawson cites the decision for the proposition that "the Federal Circuit [] instructed the district court to stay the permanent injunction 'until the reexamination decision becomes final,'" Def.'s Mem. in Supp. at 6, and implies that the Standard Havens III decision requires this Court to do the same here. However, unlike the circumstances in this case, where the BPAI has only recently affirmed the PTO's rejection of claims 26-45 of the '683 patent -- the claims furthest along in the reexamination process -- by the time the district court denied the stay of the permanent injunction in Standard Havens, the BPAI had affirmed the PTO's final action rejecting the patent-at-issue and that decision was on appeal to the District Court for the District of Columbia. Standard Havens Prods., Inc. v. Gencor Indus., Inc., 810 F.

8

Supp. 1072, 1073 (W.D. Mo. 1993) ("<u>Standard Havens II</u>"). Thus, two different district courts were involved in the dispute at the same time. Here, even though the BPAI recently affirmed the rejection of claims 26-45 of the '683 patent, there are two other less-advanced reexamination proceedings ongoing that affect two other infringed claims in this litigation -- claim 1 of the '172 patent and claim 3 of the '683 patent. Undoubtedly, in addition to the appeals that ePlus will take with respect to the BPAI's affirmation of the rejection of claims 26-45 of the '683 patent, whatever final action the PTO takes with respect to claim 1 of the '172 patent and claim 3 of the '683 patent will go before the BPAI, and thereafter to the Federal Circuit, until all possible appeals have been exhausted by ePlus.

The uncertainty of both the outcome of those appeals and the length of time until the last reexamination proceeding is concluded is troubling when the Court considers that the patents-in-suit are due to expire in a few years, the jury has found that the patents are valid, and ePlus has been awarded the remedy for the jury's finding of Lawson's infringement. To grant a stay of the permanent injunction based on the reexamination proceedings would put into doubt whether ePlus would ever enjoy the remedy to which it has proven it is entitled.

The Court recognizes the impact of a final PTO finding of invalidity,[1] affirmed by the BPAI and the Federal Circuit; however, due to the uncertainty of that outcome at an uncertain date in the future, coupled with the advanced stage of this litigation, the Court "opts not to subvert itself to an administrative process still in its initial stages." MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 565 (E.D. Va. 2007). After conducting a lengthy trial, which resulted in a finding of infringement on two of the patents-in-suit and of validity of all asserted claims, the Court "does not favorably view further delay predicated upon an administrative process of indeterminate length." Id. at 564.

Moreover, Lawson had a full and fair opportunity to litigate the issue of invalidity. The evidence it presented was weak. The jury recognized that weakness and properly returned a verdict supporting the validity of each patent. Lawson has not

---

[1] With respect to the weight given to Standard Havens III, the Court agrees with the district court's analysis of the decision in MercExchange: It is "unpublished, offers very little analysis, and appears to be premised in part upon the district court 'incorrectly conclud[ing] that the reexamination decision can have no effect on th[e] infringement suit.'" MercExchange, 500 F. Supp. 2d at 564 (alterations in original) (quoting Standard Havens III, 1993 WL 172432, at *1). This is an apprehension under which this Court certainly does not suffer. Here, the Court recognizes that the final reexamination proceeding affects the injunction, but believes that, given the advanced stage of this litigation and the indeterminate amount of time a final reexamination decision may take invalidating all the claims of the two patents, Lawson has not met its burden with respect to the first factor of success on the merits.

shown how the decisions on reexamination would permit the jury's verdict on validity to be set aside on appeal.

Accordingly, the Court concludes that the pending reexaminations neither show that Lawson is likely to succeed on the merits nor that it has a substantial case on the merits with respect to the claims' invalidity.

Next, Lawson argues that it is likely to prevail on appeal that claim 1 of the '172 patent and claim 3 of the '683 patent are invalid because the patent specifications lack sufficient corresponding structure to support certain means of the elements. Both claims contain means-plus-functions. Claim 1 of the '172 patent recites a "means of processing the requisition to generate purchase orders" and claim 3 of the '683 patent recites a "means for processing the requisition to generate one or more purchase orders for the selected matching items." When construing a means-plus-function, a court must first identify the function explicitly recited in the claim, and then "identify the corresponding structure set forth in the written description that performs the particular function set forth in the claim." Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1369 (Fed. Cir. 2001). When a means-plus-function limitation is a computer programmed with software to carry out the claimed function, a corresponding algorithm is required to provide sufficient disclosure of structure under 35 U.S.C. § 112

¶ 6 to avoid indefiniteness under § 112 ¶ 2. <u>Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.</u>, 521 F.3d 1328, 1333-34, 1337-38 (Fed. Cir. 2008). With respect to the means-plus-functions at issue, the Court previously determined the corresponding structure described in the specification to be "a purchase order generation module operating on a computer system having access to the requisition; and its equivalents." Docket No. 204, at 47, 51. Notwithstanding this construction, Lawson claims that claim 1 of the '172 patent and claim 3 of the '683 patent actually are "invalid because the structures corresponding to the purchase order generation means elements disclose no algorithm that limits the scope of these elements." Def.'s Mem. in Supp. at 10. For the reasons that the Court previously rejected this argument when construing the means-plus-function claims in the Court's <u>Markman</u> decision, <u>see</u> Docket No. 204, at 36-38, and when denying Lawson's motion for summary judgment to the extent it sought judgment based on the means-plus-function claims being invalid as indefinite under 35 U.S.C. § 112 ¶ 2, <u>see</u> Docket No. 356, at 1, the Court again rejects Lawson's argument and finds that Lawson has not, based on this indefiniteness argument, made a strong showing that it will likely succeed in demonstrating the claims' invalidity, or raised a substantial question to that effect.

Next, Lawson asserts that the infringement verdict related to Punchout is likely to be overturned or vacated because ePlus failed to show that Lawson directly infringes or induces infringement of the elements of the claims provided at vendor websites that are not used or controlled by Lawson. Specifically, Lawson claims that with respect to claims 26, 28, and 29 of the '683 patent, so-called method claims, there is no evidence of direct infringement because no party, let alone Lawson, performs all the steps of the method claims, and there is no joint infringement -- another form of direct infringement -- because ePlus waived its joint infringement contention at trial. Furthermore, Lawson argues that, with respect to claim 1 of the '172 patent and claim 3 of the '683 patent, so-called system claims, Lawson cannot be held liable for directly infringing these claims because Lawson does not make, sell, or use a system with all the claimed components. Furthermore, says Lawson, ePlus did not demonstrate that Lawson indirectly infringed these claims by inducing infringement because ePlus failed to show that Lawson specifically induced use of all elements of these claims.

ePlus disagrees with Lawson's position. It argues that it proved indirect infringement of the system claims because Lawson's customers commit direct infringement through their use of the infringing systems and Lawson induces and contributes to

13

that infringing use through repair, installation, implementation, maintenance, service, fixing, updating, etc., of the infringing systems. Furthermore, ePlus argues that the evidence demonstrated that Lawson directly infringes all the claims because it makes, uses, sells, and offers to sell the infringing systems. To the extent that other parties perform one of the steps of the three method claims, ePlus contends that: (1) it did not waive its joint infringement theory; and (2) that the evidence was "abundant" that Lawson directs and controls the performance of those steps.

After reviewing the evidence introduced at trial, the Court is satisfied that the jury's verdict of infringement, both direct and indirect, is fully supported by the evidence. At trial, ePlus's infringement expert, Dr. Weaver, reviewed a Lawson demonstration system and showed the jury, through recordings of the real-time operation of the Core S3 Procurement System, the manner in which the adjudicated configurations of Lawson's systems infringe the claims. In fact, Dr. Weaver performed two demonstrations involving the use of Punchout vendor catalogs. After walking through specific examples showing the functionality of the accused configurations, Dr. Weaver opined that all of the claims were infringed. ePlus's source code expert, Dr. Niemeyer, also testified that he reviewed the Lawson source code with respect to the dispute

14

functions of the Lawson software. His testimony fully supported Dr. Weaver's opinions respecting the functionality of the Core S3 Procurement System. Through expert testimony, documentary evidence, and fact witnesses, ePlus introduced sufficient evidence to support the jury's finding of infringement, both direct and indirect, with respect to the Punchout application. Nothing that Lawson has said in support of its motion to stay the injunction shows a likelihood success on the issue on appeal.

Finally, Lawson argues that it is likely to show that its continued maintenance and service of infringing systems it sold before the verdict is not infringement as a matter of law. As explained in the Court's Memorandum Opinion explaining the issuance of the injunction, see Docket No. 728, at 50-59, Lawson's arguments are based on Federal Circuit decisions that are not factually like this case, and the Court does not believe that extending Fonar Corp. v. General Electric Co., 107 F.3d 1543 (Fed. Cir. 1997), and Odetics, Inc. v. Storage Technology Corp., 185 F.3d 1259 (Fed. Cir. 1999) to the facts of this case would be supported at all by the legal reasoning of those decisions. Accordingly, the Court concludes Lawson has not made a strong showing that it is likely to succeed on the merits or raised a substantial case on the merits with respect to its

15

contention that servicing/maintaining pre-verdict infringing systems is not infringement as a matter of law.

In sum, the Court finds that Lawson has not made a strong showing that it is likely to succeed on the merits on any of the four issues raised in its papers. Even if one of these issues raised a substantial question for appeal, the balance of the equities does not weigh in Lawson's favor such that the injunction should be stayed. Rather, the balance of the equities strongly favors ePlus every day that Lawson continues to sell, service, and maintain the infringing systems, and Lawson has not presented a compelling case, based on either questions of law or fact, that would support action by this Court that disregards the irreparable harm that Lawson's infringement imposes on ePlus.

2.  **Irreparable Injury to Lawson**

Analysis of irreparable injury to Lawson weighs more in the context of deciding whether to stay the injunction than in the context of the motion for permanent injunction. See SynQor, Inc. v. Artesyn Techs., Inc., No. 2:07-CV-497-TJW-CE, 2011 WL 238645, at *10 (E.D. Tex. Jan. 24, 2011) ("[T]he harm to the defendant is less important in the context of a motion for a permanent injunction," as the "analysis changes in the context of a request for a stay on appeal because of the chance for reversal."). Lawson claims that it will suffer irreparable harm

16

in the form of damage to its reputation, lost sales, and its potential breach of hundreds of maintenance contracts with customers who purchased infringing systems before the verdict.

While the Court does not doubt that Lawson will incur a loss as a result of the injunction, the harms which it claims simply "mirror[] the success" that Lawson has enjoyed in the marketplace and flow from its infringement of ePlus's patents. E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 659 F. Supp. 92, 95 (D. Del. 1987) (citation and quotation marks omitted). Moreover, given Lawson's size, financial condition, and the relatively small amount of its business and revenue derived from sales, maintenance, and service of the infringing systems, any loss cannot be considered irreparable. Enjoining the Core S3 Procurement System, in combination with RSS and Punchout, will not preclude Lawson from competing in the supply chain management market either. Accordingly, the Court finds that this factor weighs against a stay.

3. **Substantial Injury to Interested Parties**

ePlus, on the other hand, will continue to suffer irreparable harm each day Lawson continues to infringe its patents. ePlus has shown that it has, and will continue, to lose sales, market share, and cross-sales and up-sales of its VAR products due to Lawson's infringement. Moreover, absent an injunction, ePlus's right to exclude Lawson will continue to be

violated. These harms, despite Lawson's arguments to the contrary, are not amenable to a damages remedy, and to stay the injunction would only prolong the harm to ePlus without providing a remedy. Thus, this factor does not support a stay.

4.      **The Public Interest**

Finally, Lawson claims that, if it is enjoined from the continued maintenance and service of infringing systems sold before the verdict, then the public interest will be harmed because of inconvenience and disruption to its healthcare customers' continued use of their infringing systems. The Court has addressed Lawson's concern on this point, explaining that ultimately, the injunction will not stop Lawson's healthcare customers from operating and providing care to patients. Moreover, the sunset provision in the injunction will give these customers time to explore and implement the many alternatives that can be utilized in order to mitigate any harm. Considering Lawson's argument in perspective of the other aspects of the public interest discussed fully in the Memorandum Opinion explaining the issuance of the injunction, see Docket No. 728, at 43-49, it seems rather clear that the public interest factor augers against a stay of the injunction.

18

## CONCLUSION

For the reasons set forth above, Lawson's Motion for a Stay of Any Permanent Injunction (Docket No. 642) will be denied.

```
                              /s/           REP
         _____
              Senior United States District Judge
```

Richmond, Virginia
Date: May 24, 2011

19