# EXHIBIT C

```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                  RICHMOND DIVISION




EPLUS, INC.,

            Plaintiff,
       v.                       Civil Action No.
                                3:09CV00620
LAWSON SOFTWARE, INC.,

            Defendant.




   Before:   THE HONORABLE ROBERT E. PAYNE, JUDGE

        HEARING ON EPLUS' MOTION TO STRIKE



                     May 24, 2010


                  Richmond, Virginia










                CHANDLER and HALASZ, INC.
                   Shorthand Reporters
                      P.O. Box 9349
                 Richmond, Virginia 23227
                     (804) 730-1222
       Reported by:  Tracy Johnson, RPR, CCR, CLR
```

1           MR. MCDONALD:  I disagree with that.  That
2    was the intent.
3           THE COURT:  All right.  Now -- all right.
4    Now, why is it pertinent to the issue, why are these
5    paragraphs pertinent to the issue of invalidity given
6    that you did not disclose these in your supplemental
7    invalidity contentions?  Why are they -- how do they
8    get in, given that you violated the instruction that
9    you were given?
10          MR. MCDONALD:  Because we did not violate
11   any instructions given to us, Your Honor.  We did
12   streamline our invalidity contentions in the
13   supplemental set on April 9th, but there were no
14   instructions to us that we had no opportunities after
15   that date under any circumstances to either, A,
16   further supplement those or, B, have any variation
17   whatsoever in our expert report from what's in those.
18   That was not in the order of the Court and we did not
19   understand it that way.  We certainly --
20          THE COURT:  You were told that if you
21   didn't have the prior art in these supplemental
22   contentions so people could understand what you were
23   talking about, it wasn't going to come in at trial.  I
24   don't know how on earth you could think you could get
25   it in by sticking it in an expert's opinion.  That's a

1  disingenuous argument, I think.
2              MR. MCDONALD:  Well, you have the court
3  order in front of you, Your Honor.  We certainly
4  understood the Court's desire that we limit and bring
5  down, pare down our invalidity contentions, but we
6  honestly did not understand that it was going to
7  become immutable on that date, regardless on either
8  what our expert thought or regardless of whether the
9  Markman decision of the Court deviated and went
10 broader than what we had proposed.
11             THE COURT:  You're just running on about
12 topics that are unrelated.  Now, if the Markman opens
13 the door, then we can talk about that.  What part --
14 tell me how you are confused by the text on April -- I
15 mean on March the 26th, beginning with page 4.
16             What is it that led you believe that you
17 could do what you've just said; get it in in an
18 expert's opinion, if you didn't put the contention in
19 in the supplemental contentions list?
20             MR. MCDONALD:  Well, these are the
21 initial infrin- -- excuse me.  These are the initial
22 invalidity contentions that we had supplemented.  This
23 would now be the second time --
24             THE COURT:  No, they're not supplemented.
25             MR. MCDONALD:  -- initial invalidity

```
 1                MR. MCDONALD:  Yes.  We've withdrawn our
 2   depositions of the witnesses.
 3                THE COURT:  It's out for all purposes.
 4                MR. MCDONALD:  That's fine.
 5                MR. ROBERTSON:  Thank you, Your Honor.
 6                THE COURT:  All right.  Well, the pretrial
 7   orders mean what they say, and in the
 8   original Pretrial Schedule A, paragraph J3, to which
 9   the parties agreed, the Court ordered that the
10   defendant shall file an initial statement identifying
11   each of its invalidity defenses with specificity, and
12   such statements shall also include a list of all prior
13   art on which it relies, including a citation by Bates
14   number of any documents produced relating to each such
15   prior art reference, and a complete and detailed
16   explanation of what it alleges that each listed prior
17   art reference shows in claim chart form on an
18   element-by-element, claim-by-claim basis and how that
19   prior art invalidates the claims asserted by the
20   plaintiff.
21                On March the 26th, the Court was hearing a
22   motion to compel brought by the defendants when it
23   appeared that there was an issue respecting the
24   invalidity contentions and defenses, and the Court
25   instructed that the -- said the following:  You told
```

```
 1   me you were going to have seven or eight, and we're
 2   talking about prior art references, and I want you to
 3   do them like I said, claim by claim, element by
 4   element.  What is it in that prior -- in the prior
 5   art -- what is it that in the prior art invalidates
 6   it, and then you take the page out of the prior art
 7   and not only do you write it out, you highlight it and
 8   you hand it to them.
 9               Basically, it is true, as the defendant
10   says, that the Court at that juncture did not tell the
11   defendants that if they didn't have it in the
12   supplemental list that had been ordered in the right
13   way, that they would have -- that it wasn't coming in
14   at all.  You don't have to be told that there are
15   consequences to disobeying scheduling orders.
16               But on April the 9th, there was a
17   subsequent filing, and the subsequent filing deleted a
18   number of the -- the prior art references, including
19   Lawson version 6 and 5.
20               During the course of that discussion on
21   April the 29th, there came up a discussion about
22   April -- about Lawson 6.0 version, and I said, Lawson
23   6.0 version is not in the prior art unless it was
24   listed in the prior art that was filed on April 9th.
25   Was it or wasn't it?
```

```
 1                Mr. Robertson:  No, it wasn't.
 2                Well, that's that simple.
 3                Mr. McDonald:  Well, we dispute that, Your
 4   Honor.  The document will speak for itself.  I
 5   understand you can't decide that now when we're both
 6   saying opposite things.
 7                And I said:  I have to see more about it,
 8   but I can tell you one thing; if it's not in that
 9   answer, that disclosure, it's not coming in.
10                Yet on May the 3rd, without coming to
11   court and saying they didn't understand the limits
12   that had been articulated on April the 29th and March
13   the 26th and the scheduling order, the defendants
14   listed a whole bunch of new prior art and invalidity
15   contentions; thereby frustrating the very purpose of
16   the order entered, Exhibit A, to the brief of the --
17   of the plaintiff in this motion, which is Pretrial
18   Schedule A, J3, which they -- paragraph J3, which they
19   agreed to.  And so if it's not listed on the -- if
20   something is not listed on the list of prior art filed
21   on April 9th, it's not coming in.
22                Now, there is a -- an exception to that
23   rule, and it's created by the decision of the -- of
24   the Court in Johns Hopkins University versus CellPro.
25   And while this case is not directly governed by
```

```
 1   CellPro, it is analogous, and that is that the Markman
 2   opinion gave constructions, and if a -- if -- if a
 3   party can show that a Markman decision somehow changed
 4   the rules of the game, then it is entitled to have
 5   some relief in terms of subsequent discovery or
 6   theories or prior art or invalidity contentions in the
 7   event that that actually happens.
 8              Now, I am told here that there are two
 9   instances appearing on page 6 and 7 of the defendant's
10   brief in which the claim construction necessitated the
11   presentation of additional opinions.  One is -- and
12   just so the record is clear, we discussed this in
13   terms of -- in terms that somewhat confuse the record.
14              I kept asking about the first example --
15   or the first instance given by Lawson, and that
16   appears on page 6 of their reply -- of their response
17   brief, and it says, The Court's construction of "means
18   for building a requisition using data relating to
19   selected matching items and their associated sources"
20   was one place that was -- that the Markman -- the rule
21   of CellPro had to be applied.
22              Because of the very confusing nature of
23   Mr. Shamos' report and the exhibits to it, one of
24   which is Exhibit 3 and it wasn't numbered, counsel for
25   Lawson kept going to a place in the report which
```

```
 1                    REPORTER'S CERTIFICATE
 2           I do hereby certify that the foregoing is a
 3   true and accurate transcription of my stenographic
 4   notes taken in this matter to the best of my ability.
 5
 6
 7                      _____
                          Tracy Johnson, RPR, CCR, CLR
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```