# EXHIBIT F

```
                                                                1

 1               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     RICHMOND DIVISION

 3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                      :
 4   ePLUS, INC.,                     :
                                      :
 5                  Plaintiff,        :
     v.                               :  Civil Action
 6                                    :  No. 3:09CV620
     LAWSON SOFTWARE, INC.,           :
 7                                    :  January 22, 2010
                    Defendant.        :
 8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

 9

10

11           COMPLETE TRANSCRIPT OF **MARKMAN HEARING**
             BEFORE THE HONORABLE ROBERT E. PAYNE
12                 UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
17   GOODWIN PROCTOR
     901 New York Avenue, NW
18   Washington, D.C.   20001

19   Craig T. Merritt, Esq.
     CHRISTIAN & BARTON
20   909 E. Main Street, Suite 1200
     Richmond, VA   23219-3095
21
              Counsel for the plaintiff ePlus
22

23
                     DIANE J. DAFFRON, RPR
24                  OFFICIAL COURT REPORTER
                   UNITED STATES DISTRICT COURT
25
```

 1  Your Honor in the patent where there are catalogs

 2  published by suppliers, published by distributors.

 3              THE COURT:  What's the difference between a

 4  supplier and a vendor and a distributor and a vendor?

 5              MR. ROBERTSON:  Well, there are also

 6  manufacturer catalogs that are in there.

 7              THE COURT:  What's the difference?

 8              MR. ROBERTSON:  A manufacturer may not be

 9  actually selling the goods.  A supplier or distributor

10  may be selling other vendor goods.  Typically, like in

11  the Fisher Scientific situation, Fisher Scientific was

12  a distributor of other manufacturers and other vendors'

13  goods.  They sold test tubes and beakers and pipettes

14  and syringes and laboratory equipment, test kits for

15  hospitals.  They rarely made anything or manufactured

16  anything themselves.

17              So to take and import vendor catalog would, I

18  think, is inserted in there to give this defendant a

19  non-infringement argument.  Why?  What they do is they

20  compile catalogs from a variety of different sources.

21  They sometimes do, and what some of the evidence would

22  show is they will take an old system in which someone

23  has a database of catalog items, and they will transfer

24  that - it's called a legacy system because it's their

25  old system - to their new system, and import that data

 1            THE COURT:  It talks about vendors, but it
 2   doesn't limit it to vendors and you're trying to limit
 3   it.
 4            MR. McDONALD:  But when the invention itself,
 5   though, is so focused on this concept of the new thing
 6   using this catalog database with this large volume of
 7   information --
 8            THE COURT:  See, that's what I'm saying.  You
 9   shouldn't be making arguments like that.  That's what
10   I'm saying.  You're arguing about how many angels can
11   stand on the head of a pin.  And there's no real merit
12   to it.  And it's the kind of thing that obscures the
13   ability of courts to efficiently process patent cases.
14            I really think in making your arguments, both
15   of you need to be facing the fact that -- face this
16   fact:  That if, in fact, I make a claim determination,
17   and I later find that what it is is a sneaky way to get
18   a summary judgment in, I may reconstrue the claim in
19   the summary judgment process because I'm not going
20   to -- this is one of the reasons why often I find that
21   it's important to have the claim construction and the
22   summary judgment proceed apace, and I may in fact just
23   do that in this case.  Holding everything until I see
24   your summary judgment motions.  But I really think that
25   there has come to be this approach to claim

1  construction that it is a "gotcha" for summary judgment
2  instead of being what it was intended to be.  And what
3  it was intended to be is where there really are genuine
4  ambiguities in a patent, let's get a construction and
5  live with it.
6            And sometimes that's going to result in
7  summary judgment and sometimes it's not.  And now claim
8  construction is becoming a way to try to structure and
9  rewrite claims in such a way as to get a summary
10 judgment.  And I want you to stop it.  Okay.
11           MR. ROBERTSON:  Just for record, I was
12 referencing the '683 Patent at column 4, lines 46 to
13 60, where all those different supplier, manufacturer or
14 vendor catalogs are described.  Of course, Fisher
15 Scientific was --
16           THE COURT:  Where is it?
17           MR. ROBERTSON:  Do you have that column?
18           THE COURT:  '683?
19           MR. ROBERTSON:  Column 4, 46 to 60, for
20 example.  There are other examples that we gave in the
21 brief.  But here you are, Judge, we're talking about
22 distributor catalogs, suppliers, manufacturers, other
23 distributors listing vendor products.
24           With that I'd like to move on from "catalog"
25 unless you have any other questions with respect to

```
 1  wasn't it?
 2              MR. ROBERTSON:  June 14.
 3              THE COURT:  And when I set that trial, I will
 4  tell you what it is.  It's a date that I have to be in
 5  Oregon.  I didn't realize that I had to be in Oregon,
 6  and I've been trying to work out a way to tell you
 7  exactly what the trial was before I did the order.  But
 8  I'll sign the order and you all can have it.  You've
 9  been abiding by it anyway, haven't you?
10              MR. CARR:  Yes, sir.
11              THE COURT:  All right.  Okay.  Does that take
12  care of what we're going to do today?
13              MR. McDONALD:  Yes, sir.
14              THE COURT:  Thank you all very much.  We'll
15  see you on the 27th.
16              We'll be in adjournment.
17
18              (The proceedings were adjourned at 5:20 p.m.)
19
20              I, Diane J. Daffron, certify that the
21  foregoing is a true and accurate transcription of my
22  stenographic notes.
23
                        /s/                          1/26/10
24              _____      _____
                DIANE J. DAFFRON, RPR, CCR             DATE
25
```