# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------
:
ePLUS, INC. : Civil Action No.
: 3:09CV620
vs. :
:
LAWSON SOFTWARE, INC. : January 4, 2011
:
--------------------------------------

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001
Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)
Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV00620, ePlus, Incorporated versus Lawson Software, Incorporated. Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr. Michael G. Strapp, and Mr. David Young represent the plaintiff.

Mr. Daniel W. McDonald, Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent the defendant. Are counsel ready to proceed?

MR. ROBERTSON: Yes, Your Honor, plaintiff is.

MR. McDONALD: Yes, Your Honor. Thank you.

THE COURT: All right. Good morning, ladies and gentlemen. On behalf of the Court and counsel and the parties, I'd like to thank you for your participation this morning in one of the most important civic duties that citizens of our country have.

We are a society which has chosen to rule itself in accord with the rule of law, and we have taken in our Constitution and our laws measures to make sure that we have an effective legal system by which people can resolve their disputes in court rather than in the streets, and if we did not have the service of jurors to make the sacrifices that jurors are called upon to do so, then our system of justice that is administered in accord with our Constitution and our statutes could not exist.

And so what you are called upon to do is a public duty of the highest order which, of course, all of us know entail sacrifices for you and for your families and for your employers and imposes burdens upon you beyond that of the ordinary responsibilities that you have which are already significant, and all of us know that.

This case involves a dispute over patents. There are -- the plaintiff here is ePlus, Incorporated, or Inc., and ePlus, whose lawyers are sitting over here, has some patents that are issued by the United States Patent Office, a process that is sanctioned and approved by the Constitution of the country and the laws of the nation, and the patents all are long-numbered.

They have six figures, and, in fact, I expect most of us would like to earn incomes in accord with the size of the numbers of these patents, but they are referred to by three small digits, the last three digits of the patent. I don't know that any of you know anything about these patents, but I want to let you know and understand what these patents are.

There's a patent number 6023683 which is called the '683 patent. There's patent number 6055516 or the '516 patent. There's patent number 6505172 or the '172 patent. Sometimes, patents may be referred to, instead of using these short numbers, '516 or '683 as the patents-in-suit. That's just a term that lawyers sometimes use to talk about the patents that

of items and associated information, published by a vendor, which includes suppliers, manufacturers, and distributors, which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and nothing else.

MS. STOLL-DeBELL: Your Honor, we have that exact definition as one of the slides they objected to. It is a quote of your claim construction of the term "catalog." That is what we intend to use. We intend to put on a non-infringement case that our product does not meet this definition. That is our non-infringement case. We've said this all along.

Mr. McDonald said it at the Markman hearing that we didn't have catalogs. We have like a shopping list for the grocery store, not a published catalog. We said it in our non-infringement interrogatory contentions. We don't have published catalogs.

Dr. Shamus said it in his expert report. We don't have published catalogs.

THE COURT: I didn't say "published catalogs." I decided a collection of items and associated information published by a vendor. That's different than saying it's a published catalog. And you can't say "published catalog" with a view to conveying the notion that you have the Sears catalog,



and that's what we're talking about or anything else.

MS. STOLL-DeBELL: And I apologize. I misspoke, Your Honor. If you look at our slides, we say we do not have catalogs published by a vendor. This is another slide that they used. That's what Dr. Shamos used in his report. That exact language. We don't have catalogs published by a vendor.

THE COURT: You have Lawson does not infringe the ePlus patents?

MS. STOLL-DeBELL: Yes. And I can give you the paragraph of Dr. Shamos' report. I can cite you to of our interrogatory responses where we said we do not have catalogs published by vendors. We do not have multiple catalogs. We are arguing that we do not meet your definition of "catalog."

THE COURT: I didn't say it had to be multiple catalogs. I said it has to be an organized collection of items and associated information. That doesn't say "catalogs."

MS. STOLL-DeBELL: The claims do. The claims call for a collection of catalogs, two or more catalogs, Your Honor. So you're right. Your definition is for a single catalog. If you look at the claim language, it actually calls for more than one.



THE COURT: All right. Thank you.

I don't understand, Mr. Robertson, where they are going across the line. I really don't.

MR. ROBERTSON: I'd like to just point out the very same slide that was just mentioned by Ms. Stoll-DeBell Lawson does not infringe the ePlus patent, says "Lawson does not have published catalogs."

THE COURT: Yeah. And they're not going to say that. They're not saying that.

MR. ROBERTSON: Then I would expect this slide wouldn't be included.

THE COURT: No. I just told them. I said they are not saying that. They are saying what I said, and that's it.

MR. ROBERTSON: Thank you, Your Honor.

THE COURT: And the other thing that we're doing to do is we're not going to have the closing argument in the opening statements. I don't want you getting into arguments about why people are wrong in making closing statements and what's wrong with the expert testimony. You can frame the issues in what your expert is going to do.

The other thing is -- yes, Ms. Stoll-DeBell, what else?



MS. STOLL-DeBELL: I'm sorry. We will not say "published catalogs," but we do intend to argue and we have disclosed all throughout this case, that our product is not published. It's not published at all and is not published by a vendor.

THE COURT: Well, you have to come up with some definition of "published" that doesn't include the written or the spoken word because that's what I've said it belongs to.

I'm telling you, I want it understood -- whether I'm right or wrong, I don't know. I think I'm right in the way I interpreted it. But I spent a lot of time and effort, and so did you-all, in giving the terms the meaning I thought they had. And that's going to be the terms that are going to be used. And no amount of workaround is going to happen.

And the consequence of a workaround is going to be this: If I find that you are just -- and I've had this problem. I've never had to say this before. But if I find any more of what I've encountered, which is trying to do indirectly what I've said you can't do directly, and I'm not talking about you personally, I'm talking about your side, then the consequence is going to be is I'm inclined to grant a motion for judgment as a matter of law for the other side on the

theory that that's an appropriate sanction for repeated disobedience of the Court's directives because I can't conduct a trial being constantly on the concern that somebody is trying to come in the back door.

Now, if I did it wrong, you-all have recourse to that in the federal circuit, and that's fine, but I want you to understand I don't deal with things that way.

MS. STOLL-DeBELL: I understand, Your Honor, and I would like to remind you this came up at the pretrial conference as well. We have not taken issue with the meaning of the term "published." Dr. Weaver has said that published means originated, and we intend to cross-examine him on that. I asked him about it in his deposition. And Dr. Shamos gave a rebuttal report that "published" does not mean originated.

THE COURT: I don't care what the experts say. It's what the Court says that's the issue and you-all didn't call upon me to determine the meaning of "published." Now, it's not unheard of that courts have to make claim construction interpretations during the trial.

I haven't gone back, I think I did this once

before, and looked at the ordinary meaning of the word "published" in the dictionary, and that's what we're going to use because nobody has taken the view that "published" means anything other than what it means.

MS. STOLL-DeBELL: It is our position it has the ordinary meaning, too, Your Honor. To the extent that Dr. Weaver says it doesn't, we intend to cross-examine him on that.

THE COURT: You sure can.

MS. STOLL-DeBELL: Okay.

THE COURT: And that's fine.

Anything else on that point?

MS. STOLL-DeBELL: I don't think so.

THE COURT: You modify your slides accordingly.

Now, let's keep in mind the order of things. It's ePlus' responsibility to prove infringement, and cross-examination on infringement is not a time to develop invalidity. I'm not going to hear that that way. I want it all clean, all the evidence cleanly, crisply and organizedly presented on the issue of infringement.

If you need to call witnesses back to talk to them about invalidity, you can do that. Any witness who is here and whose testimony you need, you can have

back. But I don't want, and I think I've told you this before, but some of the things that have been said recently suggest to me that maybe you-all contemplate a commingling. And I don't want a commingling.

That way the Rul3 50 issues are very cleanly and crisply dealt with, the record is as it needs to be, and it will be easier for the jury to understand what happens when I tell them that preponderance of the evidence is how they have to decide infringement. And clear and convincing evidence is how they have to decide invalidity. All right.

MR. ROBERTSON: Your Honor, may I briefly address that? I want to make sure I don't run afoul of Your Honor's ruling.

THE COURT: Why are you dealing with invalidity? Don't you anticipate. You can't anticipate and start trying your response to invalidity in the early days of the case because your foot is then off base. Does that make it clear?

MR. ROBERTSON: It does, but let me just raise the context of this, Your Honor. The inventors are going to come forward and tell how they developed their invention. That is the subject matter of these patents. Part of it is a development of a system that

they are also the inventors on, at least two of the three inventors were inventors on, and they are going to say how in part they took that system and made changes and modifications to solve problems that are the subject matter of the patents that have to be addressed here.

THE COURT: Well, that goes to the issue of whether it's new and useful.

MR. ROBERTSON: Well, it goes to the issue of what the inventors actually invented and how they went around solving a problem. Solving a problem is really what invention is all about. I've never been involved in a patent case where the inventors couldn't come forward and say --

THE COURT: Mr. Robertson, I made a clear statement, and you stay within those bounds. And you're smart enough to figure out how to ask those questions that way. If what you're trying to do is somehow use the inventors in anticipation of an invalidity defense, you can't do that. You can bring them back and you can put on that testimony after he's put on invalidity evidence.

Now, that's the way cases are tried, patent or otherwise. You have the burden, you have an issue, and you have got to prive it, and you're staying

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------
:
ePLUS, INC. : Civil Action No.
: 3:09CV620
vs. :
:
LAWSON SOFTWARE, INC. : January 11, 2011
:
--------------------------------------

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001
Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)
Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV00620, ePlus, Incorporated versus Lawson Software, Incorporated. Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr. Michael G. Strapp, and Mr. David Young represent the plaintiff.

Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent the defendant. Are counsel ready to proceed?

MR. ROBERTSON: Plaintiff is, Your Honor.

MR. McDONALD: Yes, we are, Your Honor.

THE COURT: What did you all need to talk about?

MS. STOLL-DeBELL: We actually resolved it, Your Honor, between the time we that mentioned --

THE COURT: Tell them to bring the jury in. What do we have this morning?

MR. ROBERTSON: The first witness we're calling this morning is Mr. Keith Lohkamp, Your Honor. He's a Lawson employee. I have a number of binders associated with the witnesses this morning. I want to make sure my paralegal -- oh.

(Jury in.)

THE COURT: Good morning, ladies and gentlemen. All

right, we have a witness. Next witness.

MR. ROBERTSON: Mr. Keith Lohkamp.

THE COURT: All right, Keith Lohkamp.

KEITH LOHKAMP,

a witness, called by the plaintiff, having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. ROBERTSON:

Q Good morning, Mr. Lohkamp.

A Good morning.

Q Mr. Lohkamp, you are a Lawson Software employee; correct?

A Yes, I am.

Q And you are a product strategist for supply chain management; correct?

A Yes.

THE COURT: Can we get the witness to spell his last.

Q Can you please spell your last name, sir, for the record.

A It's L-o-h-k-a-m-p.

Q Can you explain to the jury essentially what supply chain management is?

A Supply chain management involves the procurement of goods and services and the management of the inventory related to managing those goods. It also includes, can include the sell side, so selling those goods and services as well.

And this questioning goes to directly to that. Where did this information originate? The organized collection. Who created that?

MR. ROBERTSON: There's no "who created it" in your construction, Your Honor.

THE COURT: I don't understand where the "who" is unless you're trying to establish that "published by a vendor" means selecting something to put in the item master. Is that what you're trying to show?

MS. STOLL-DeBELL: I'm trying to show that Lawson's item master is not published by a vendor. The organized collection of items is something that is created by Lawson's customer, not by a vendor. So it's selected, it's organized, all of that stuff is done by the customer not a vendor.

And, therefore, and for other reasons as well, it's not published by a vendor. It's something --

THE COURT: You're offering this evidence to support your view that placement of items in the item master is not a catalog; is that right? Because the items in the catalog are not published by a vendor; is that right?

MS. STOLL-DeBELL: Yes, and the item master

itself is not published by a vendor.

THE COURT: And that's basically your defense in this case, isn't it?

MS. STOLL-DeBELL: It's one of them.

THE COURT: Well, it's the principal one, isn't it.

MS. STOLL-DeBELL: The principal one in that item master is not a catalog published by a vendor, yes.

THE COURT: The principal defense to the issue of catalog, isn't it?

MS. STOLL-DeBELL: Yes.

THE COURT: Objection overruled, but the jury can make its decision on the fact whether it's admitted only to do -- not for the definition of "catalog," but having to do with published by a vendor. And those are issues that you'll have to argue based on the testimony and the record.

MS. STOLL-DeBELL: Thank you.

THE COURT: That's all it's admitted for, ladies and gentlemen.

Who puts it in the catalog doesn't change the definition of the catalog that the Court has construed because the Court's construction doesn't mention who puts the catalog together. All right.

BY MS. STOLL-DeBELL:

Q You probably need me to ask my question again?

A Yes, please.

Q I'll do the best I can.

Who selects the items that are included in item master?

MR. ROBERTSON: Can I have a running objection to this line of questioning because I just don't want to keep interrupting?

THE COURT: It's the same one I just overruled. So you obviously have that. She's just repeating the question that she had. Go ahead.

And running objections to questions are not good things because nobody knows where the running stops. So if you have an objection to a question, you have to raise it, but on this one, you've already raised it.

So who in your understanding selects the items to be put in the item master?

THE WITNESS: The customer selects the items to be put in the item master.

Q Why doesn't Lawson select the items that go into the item master?

A Because we don't know what our customers purchase, and we don't have visibility into the items they have

on contract or want to purchase.

Q What's the purpose of item master?

A The purpose of the item master is to create a list of goods and services that our customers are typically going to want to purchase or maintain in inventory. And so the goal is to be able to make that list available to their employees.

Q Is it possible for a customer to decide to include every item a vendor sells in the item master?

MR. ROBERTSON: Objection. It calls for speculation, Your Honor.

THE COURT: Well, if he knows.

Do you know that?

THE WITNESS: Yes, I do know that.

THE COURT: All right.

A It is possible, but our customers typically --

THE COURT: All she asked is: Is it possible?

A Yes, it's possible.

Q Have you ever seen one of your customers or are you aware of a situation where one of your customers decided to include every single item a vendor sells in their item master?

A I'm not aware of that situation.

Q Do you encourage customers to include all the

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------
:
ePLUS, INC. : Civil Action No.
: 3:09CV620
vs. :
:
LAWSON SOFTWARE, INC. : January 13, 2011
:
--------------------------------------

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001
Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)
Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV620, ePlus, Incorporated, versus Lawson Software, Incorporated. Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and Mr. Michael G. Strapp represent the plaintiff.

Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent the defendant. Are counsel ready to proceed?

MR. ROBERTSON: Plaintiff is, Your Honor. Thank you.

MR. McDONALD: Yes, Your Honor. Thank you.

THE COURT: Do you need to see me about something before the jury comes in?

MR. ROBERTSON: Yes, Your Honor. You had asked us to take a look at those appendices with respect to our motion on this implementation on a customer-by-customer basis.

THE COURT: Yeah.

MR. ROBERTSON: We have done that, and the reason I raised it, Your Honor, is one of the witnesses that's going to be called this morning is Ms. Hannah Raleigh. You may recall she testified once already. She is involved with Lawson Professional Services that has to do -- that has responsibility for implementation of the Lawson software products, and we're concerned that she's going to be getting into areas in and presenting testimony that Lawson is going to contend are

defenses to infringement later that are directly implicated by that interrogatory number 24.

What I have provided Your Honor with is the appendices that were referenced in the answers to the interrogatories, the transcript from the March 26th hearing, telephonic hearing on the motion to compel, and the relevant citations to the transcript where this issue came up, and I do want to continue to press the motion, Your Honor.

We do think that the answers, even with the appendices, were nowhere near what was called for and what Your Honor directed Lawson to do in response to that.

If I might just, Your Honor, you may recall that these appendices that are being referenced were provided to ePlus three months before the motion to compel was presented, and the appendices do not respond to the interrogatory as represented by counsel for Lawson.

Indeed, if you look at some of the appendices, for example --

THE COURT: Is A appendix A?

MR. ROBERTSON: Yes, sir. Under the tab December 23, 2009, response to interrogatory number -- yeah, A is one.

THE COURT: March 26th is the first tab, the transcript, and then there's an A behind that. Is that appendix A or not?

MR. ROBERTSON: I believe appendix A, Your Honor, is

Q Does that refresh your recollection that this new functionality was added with respect to 8.0.3 when this release note came out?
A This reflects -- it does help refresh my memory about these particular release notes, yes.
THE COURT: That wasn't the question. The question was: Does it refresh your recollection that the new functionality has been added to electronically load a vendor file which contains vendor item, unit of measure, and unit of price information into the purchase order application? Does it refresh your recollection on that point?
THE WITNESS: Yes, it does.
THE COURT: All right. And did it?
THE WITNESS: Did it do what?
THE COURT: Did it do what it said in that first sentence that you've been talking about?
THE WITNESS: Yes, it did, Your Honor.
THE COURT: All right. Let's go.
BY MR. ROBERTSON:
Q The next bullet point says, Item 3 identifies how a Lawson item number should be created when adding the catalog item to the item master. Do you see that?
A Yes.
Q Those are the terms you used, the catalog item,

isn't that right, when you made this new release note for Version 8.0.3?
A That's a term that was used by the technical writer.
Q You're not trying to run away from "catalog," are you, sir?
A No. You did ask me "did you use that term," and I did not use that term.
Q I'm sorry. It was an indefinite pronoun. Did Lawson use "catalog item" when it did these release notes?
A Yes, it did.
Q On this import process?
A Yes.
Q It's the vendor that are provides the item catalog in a CSV format; is that right?
A That's correct.
Q The vendor discloses or makes known that item information in that CSV format, correct?
A Discloses to whom?
Q The customer.
A To the customer, yes.
Q And Lawson in this vendor import agreement process calls that vendor information "item catalog information," right?

A That's correct.
Q And you would agree with me that that item catalog information disclosed by the vendor or the supplier through a vendor agreement import process ends up in the item master, correct?
A Say that again.
Q Yes. The vendor or the supplier who provides this item catalog information to the customer can be imported through this process we're talking about here, this vendor agreement import, into the item master?
MS. STOLL-DeBELL: Objection to form of the question. It's unclear.
MR. ROBERTSON: I'll rephrase, Your Honor.
THE COURT: All right.
MS. STOLL-DeBELL: I think he talked about a supplier being loaded in.
MR. ROBERTSON: I'll rephrase the question.
BY MR. ROBERTSON:
Q The vendor that has provided the catalog item information in a CSV format ends up through this process in the item master; isn't that right?
MS. STOLL-DeBELL: Objection. The vendor -- the question is unclear.
THE COURT: Are you asking whether the vendor

ends up in the item master?
MR. ROBERTSON: No.
THE COURT: That's what her objection is and I think it's well taken.
MR. ROBERTSON: Let me rephrase then.
THE COURT: It's the item that ends up there, I think.
BY MR. ROBERTSON:
Q The vendor provides the item catalog information that ends up in the item master; isn't that right?
A That is some of the information that ends up there.
Q Why don't you take a look at this vendor import price agreement again. Let me see if I can refresh your recollection on the process. If you would look at the page that ends 428.
A Sorry about that. I was in the wrong document.
Q That's all right. Take your time. Do you see that page is entitled, Vendor agreement import?
A That's correct.
Q And in the first box, it says, Vendor provides item catalog in CSV format. Do you see that?
A That's correct.
MS. STOLL-DeBELL: Your Honor, he hasn't asked him if this refreshes his recollection, and the

Honor, to generally how it describes. In fact, there's a slide here that I was anticipating Mr. McDonald bringing up and we have an objection to because we think it pertains to getting legal opinions. That has been ruled out of the case. Also to attempting to recharacterize or reargue the Markman ruling, in which the Court has given a construction.

So how they generally describe it doesn't really matter, Your Honor, and it's going to be a reference here to the prosecution of the patents.

MR. McDONALD: Your Honor, I don't have any slides up there. I'm trying to avoid the issues that they raised with us at least to get through this afternoon on that. I'm not talking about the file history at this point.

I'm asking about after reading the patents, generally what's the invention, which I think is very helpful to the jury's understanding of a complex case.

MR. ROBERTSON: The claims define the invention, Your Honor. It's the claims that the jury is going to have to look at, not some characterization of what generally the invention is.

THE COURT: I think Mr. Robertson is right. Sustained.

BY MR. McDONALD:

Q Can you tell me --

MR. McDONALD: Can we go to slide No. 6, please? Put that up.

Q Dr. Shamos, you put this slide together as well, correct?

A Yes.

Q Does this slide up on the screen right now, is this displaying your No. 1 reason for non-infringement in this case?

A It is. There are many reasons. There are two reasons that I think cover a huge fraction of the claims, and we'll go through those two first, and then later on when we get into the individual claims, I'll be able to give the other reasons.

Q So what's reason No. 1 of your reasons for non-infringement?

A Well, reason No. 1 is 11 out of the 12 claims require a catalog or catalogs. And because Lawson's products don't have a catalog, they can't satisfy the requirements of at least 11 of the 12 claims.

Q Why in your opinion do 11 of the 12 claims -- I'll withdraw that.

Why in your opinion do Lawson's systems not infringe those 11 claims that you're talking about in some?

A Because 11 of those 12 claims require two or more catalogs and unless you have two or more catalogs, you can't infringe those claims.

Q Do you know whether or not Dr. Weaver agrees with you that that infringement would turn on whether or not 11 of those 12 claims have multiple catalogs?

A Well, my recollection from his report is his opinion is that they do have catalogs.

Q Do you understand he would agree with the principal, though, that if the Lawson systems did not have multiple catalogs, 11 of the 12 claims would not be infringed?

A He should agree with it. I don't know.

MR. ROBERTSON: Objection.

THE COURT: Sustained.

BY MR. McDONALD:

Q Why don't we go to slide No. 8, please.

Do you see up on the screen, Dr. Shamos, this is another slide that you prepared, correct?

A Yes.

Q Well, what are you depicting here in this slide?

A I'm just reiterating the Court's -- literally the Court's construction of the term "catalog."

Q How did you use this Court construction of the term "catalog" in your an analysis?

A Well, I looked at item master and I tried to determine whether item master satisfied the Court's construction. And I concluded that it didn't. And so therefore it doesn't have a catalog.

Q So when doing that analysis, did you use the Court construction as set forth here on this slide?

A It's a basic prerequisite of the analysis.

Q If we could go to the next slide that you put together, please. I think this one is not objected to.

So here in this next slide, No. 9, Dr. Shamos, can you summarize your reasons why the Lawson system does not have a catalog?

A Yes. Right now we're --

Q I'll walk you through this step by step here and we'll stick with the question and answer format.

A Yes.

Q I'll start by saying can you give me a summary of why in your opinion the Lawson systems do not have a catalog as the Court has defined that term?

A Well, I think we should just go back to the previous slide and go look through the Court's construction.

They are certainly an organized collection of items and associated information in item master. So

that prong of the construction would be satisfied. But that information is not published by a vendor, either a supplier, manufacturer or distributor. It's carefully handpicked by a customer. A customer decides what to import into that item master database, and it doesn't constitute a catalog or even multiple catalogs.

Q What is your understanding as to what an item master does in the Lawson systems?

A Item master, I think, is intended to represent the universe of items that an employee of a corporation is able to buy regardless of what the source may be.

Q What's your understanding as to what sort of information is in the item master in the Lawson systems?

A It has information about items. It would have their name, it would have a catalog number, it may have an identification of who's selling the item, an identification of who manufactured the item. It has information about any special pricing terms that are available to this particular customer because of contracts that they may have entered into with suppliers, and other information that the user of the system finds useful to associate with particular items.

Q Can you summarize for me the differences between the Lawson systems item master and catalogs as the Court construed it?

A Well, a catalog is a compendium of information about the things that a vendor is offering for sale.

THE COURT: I've defined what a catalog is and that's the end of it. Whether anybody agrees with it, that's the catalog definition.

MR. McDONALD: Sure.

THE COURT: We're not going to have him defining the catalogs. I've told you-all that before.

MR. McDONALD: That wasn't my intent.

THE COURT: Well, he did. He started off defining it. So let's don't have it. And I don't really want to have to deal with this problem, Mr. McDonald. He can testify, but I don't want to have to be constantly monitoring whether there's compliance with the requirement that the terms are those defined by the Court.

BY MR. McDONALD:

Q Do you have an understanding as to whether or not the item master in the Lawson systems includes information about a customer's inventory of a given item?

A Yes.

Q What sort of information does the item master have about a customer's inventory of a given item?

A One piece of information is quantity on hand. Another piece of information that be where the item can be found, where the inventory is physically located.

Q When you say where it can be found or located, are you talking about where at the customer's premises it could be located or something else?

A It may be that -- well, the customer is typically going to have information about how much of that particular item he has on hand on his premises. He generally doesn't know how much a vendor would have available.

Q Are you familiar with how the item descriptions are created for purposes of the item master?

A Not in detail. There's a field in item master that allows for a description of a product. Those descriptions can be imported from files provided by vendors or they can be hand created by the customer.

Q Have you seen some documents in this case relating to Lawson where they refer to features of the Lawson systems in terms of being able to load vendor catalog data and the like?

A Yes.

Q Given that those documents do use the term "catalogs," why is it that you concluded that that wouldn't indicate that the item master has multiple catalogs?

MR. ROBERTSON: Objection to the form of that question, Your Honor.

THE COURT: What is objectionable about the form? That different documents have different reasons or that he can't testify to it or what?

MR. ROBERTSON: He can't testify and characterize what those documents mean and whether they do doesn't mean they comply with the Court's claim construction because they use the term "catalog."

THE COURT: So the objection to the form of the question is that he doesn't have any basis for knowing what the author of a particular document meant. Is that right, Mr. Robertson?

MR. ROBERTSON: Yes. Thank you for articulating that for me, sir.

THE COURT: What's your response to that, Mr. McDonald?

MR. McDONALD: I don't think my question was asking what the author of the documents meant. I was asking basically for how he incorporated his analysis

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------
:
ePLUS, INC. : Civil Action No.
: 3:09CV620
vs. :
:
LAWSON SOFTWARE, INC. : January 21, 2011
:
--------------------------------------

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001
Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)
Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV00620, ePlus, Incorporated, versus Lawson Software, Incorporated. Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and Mr. Michael G. Strapp represent the plaintiffs.

Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, Mr. William D. Schultz, and Ms. Rachel Hughey represent the defendant. Are counsel ready to proceed?

MR. ROBERTSON: Yes, Your Honor.

MR. McDONALD: Yes, Your Honor.

THE COURT: All right. We'll take plaintiff's JMOL motion first.

MR. ROBERTSON: Good morning, Your Honor.

THE COURT: Good morning.

MR. ROBERTSON: I'm going to be arguing plaintiff's judgment as a matter of law with respect to infringement, and Ms. Albert will be addressing plaintiff's judgment as a matter of law with respect to the invalidity issues.

Your Honor, Rule 50 provides that judgment as a matter of law may be granted when a reasonable jury would not have a legally sufficient evidentiary basis to find for the party Lawson on that issue. ePlus moves for JMOL that Lawson infringes all the asserted claims of the patents-in-suit, both directly and indirectly, both through inducement of

infringement and contributory infringement.

I'm not going to go through all the asserted claims, Your Honor. I know Your Honor is familiar with them, and that would just take up too much time, and I know we're pressed for time here this morning with the Court's schedule this afternoon, but let me hit a high point, first start off by saying, we contend that the defendants non-infringement case in this proceeding has been really based on misdirection, that they have ignored the Court's claim construction with respect to catalog. They rewrote the provision for published by a vendor to suit their manufactured non-infringement positions.

It required the Court, I think midcourse through this case, to issue the instruction with respect to published by a vendor to bring some clarity to what the Court intended when it gave its instruction with respect to what a catalog is.

It did not mean, as the defendant contended, that the item data associated with the catalog could not be selected -- or had to be selected by the customer or modified or deleted or reformatted or be an entire catalog. That was never intended by the Court, and its revised published-by-a-vendor construction made that clear, and I think the arguments made on that, the non-infringement arguments that were based on that have no sound footing in the record on this case.

We believe that the best evidence in this case has come from, indeed, Lawson's own witnesses and documents. Mr.

met, there is no infringement.

To answer your question, I do agree with ePlus's position that capability allows for infringement. The second question with respect to the specific issue of catalogs is that here, there is no catalog. Like I said, both parties agree that at some point data that's been drawn from a catalog, a vendor catalog and changed is not a catalog.

THE COURT: But you don't even agree if I put my whole catalog in, that I've got a catalog in the item master vendor table.

MS. HUGHEY: I would agree that that would be an infringement if that happened, but it does not, nor is it capable of happening. That's my point.

THE COURT: Why isn't it capable of happening? In fact, every witness that testified said it is, including Mr. Christopherson. What he said was, in words of one syllable, sure, that can done, but that isn't the way it's usually used. That's what he said.

MS. HUGHEY: The evidence that was coming in was that the item master -- all the evidence that came in about the item master is that it is uniquely organized and created by a customer, it does not look like a published catalog, it's a private collection of personal items, has special price information. These are not -- this is a not a catalog, a vendor catalog like the Sears catalog. This is a grocery list.

THE COURT: That isn't the question. Your witness testified that the -- that I could put one or more entire catalogs into the item master if I wanted to depending on the capacity of the item master I bought, and your position is that even if I do that, the item master parts list, vendor item list isn't a catalog, and I don't understand that at all.

MS. HUGHEY: Your Honor, the evidence that came into this case is that the item master is like a grocery list, and so, yes, people were saying in theory -- in context, they were talking about what kind of information could be drawn in, but in reality, all the evidence came in that that item master is a grocery list. It is not a catalog.

THE COURT: What about something -- you make it sound like a grocery list that my wife goes to the store or sends me to the store with a list of 20 items. There are hundreds of thousands of items in most of these item masters, and they came -- all that information came from vendors, and it was -- and the information -- your user transformed some of it, edited some of it and moved some of it, gave some information that's not in the catalog such as price because they worked out a special price deal, but what's in the catalog that is created by the item master is the price, or what's in the item master, whatever you want to call it, is the price, for example.

Now, I don't understand how you can have something that's a hundred thousand items, or in many instances more than

that, and 10,000 vendors and you don't have a catalog of what's in there just because it came from multiple sources. That's what you are saying. You're saying you can't -- you don't have a catalog because it came from 10,000 different vendors or a thousand.

MS. HUGHEY: No, that's not why it's not a catalog. It's not a catalog because it doesn't meet the Court's definition of catalog. The Court's definition of catalog requires an organized collection of items and associated information published by a vendor.

At no point was any of the information pulled from a catalog and then transformed, as we've gone through in great detail, and then put into the item master, also known as a grocery list.

THE COURT: In fact, that's exactly what Mr. Christopherson said did happen under the ETL process that he testified to in connection with this exhibit, and the T in that is transformation. That is exactly what he did.

MS. HUGHEY: The transformation is the whole point of change. There is a -- everyone agrees that the Sears catalog or the Montgomery Ward catalog is a catalog. It comes from that point, it is -- it is changed and then put in the item master like a grocery list. That is the T. That is what we're talking about. It's not the same.

THE COURT: I don't understand why it isn't.

MS. HUGHEY: It's not the same because it doesn't meet the Court's definition of catalog. The Court's definition of catalog is an organized collection of items and associated information published by a vendor.

THE COURT: What is wrong with that? You can't just cite the whole thing. You now need to tell me what part of the definition it doesn't fit.

MS. HUGHEY: Yes. Specifically the published by a vendor. It requires the items --

THE COURT: Why isn't it published by a vendor?

MS. HUGHEY: The items in the item master have never been published by a vendor.

THE COURT: Of course they have. Where did they come from in the first place?

MS. HUGHEY: There was a published vendor catalog.

THE COURT: And that was published by the vendor.

MS. HUGHEY: That was.

THE COURT: Then I go to the catalog, I look at it, and then I have Remmington shotgun model 12 in there. Well, my system won't take a Remmington shotgun model 12, so what I do is I take that vendor information, and I transform it to RSG and 12 so it will fit the number of characters.

All I've done is transformed the exact data, loaded that into my system, and I have my own little catalog there. If I want a AK-47 and a Berretta and a long gun, and I take

THE COURT: Is that what the case holds? That's what this case holds -- that's what this case about the travel candle holds, that, in fact, there was no evidence that the travel candle was used in the infringing way.

MR. ROBERTSON: There's amble evidence in this case that it's used in the infringing way, both from Mr. Christopherson and --

THE COURT: Here's the bottom line. I'm the finder of the fact. I would clearly find that there is infringement of everything that Dr. Weaver said, that each system infringed each claim for the reasons he stated. There isn't any question that I would do that.

But I'm not the finder of the fact. So under these facts, under the evidence in this case, don't I have to let the jury decide that case and then come back at the end of the day and see whether that's right? So what I'm inclined to do is reserve judgment on this motion, because I will tell you -- I personally am having real trouble deciding why there's any defense to infringement at all.

MR. ROBERTSON: I understand.

THE COURT: But I believe that I do have to let the case go to the jury subject to my ability to control that, and I'm going to take this motion under advisement, deny the motion of no infringement by Lawson, keep your motion under advisement.

MR. ROBERTSON: I understand, Your Honor. Thank you.

THE COURT: All right, now, invalidity. I believe that -- Ms. Hughey, are you doing that one, too?

MS. HUGHEY: I am, Your Honor, and I promise to be much slower this time.

THE COURT: Because if you don't, you're going to get knee-capped but not buy me.

Let's see. Is this a good place for the court reporters to switch and for us to take a little recess?

(Recess taken.)

THE COURT: All right.

MS. HUGHEY: Hello, Your Honor. May it please the Court. Lawson moves for judgment as a matter of law on the issue of invalidity because a reasonable jury does not have a reasonable evidentiary basis to find for ePlus on the issue.

At trial documents demonstrated and witnesses testified --

THE COURT: Now, there are three grounds of invalidity. One is anticipation.

MS. HUGHEY: Correct.

THE COURT: One is obviousness.

MS. HUGHEY: Correct.

THE COURT: And the other is written description.

MS. HUGHEY: No, Your Honor, Lawson is not asserting written description.

THE COURT: That was there at one time.

MS. HUGHEY: Correct.

THE COURT: That's no longer there. So I don't need to deal with that one.

MS. HUGHEY: Correct.

THE COURT: So you have anticipation and obviousness.

MS. HUGHEY: Correct, Your Honor. At trial

the documents demonstrated and the witnesses testified regarding the features and functionality of the prior art RIMS system disclosed in the '989 patent.

THE COURT: Let's take the anticipation. What is it that anticipates?

MS. HUGHEY: The RIMS system alone anticipates every single claim of the patents-in-suit.

THE COURT: All right.

MS. HUGHEY: In combination, the RIMS system and the TV/2 product render every single one of the claims of the patents-in-suit obvious.

Dr. Shamos went through every single claim and explained both the anticipation and obviousness analysis. The evidence at trial further demonstrated that both systems are prior art.

The combination of RIMS plus TV/2 renders every single asserted claim of the patents-in-suit obvious. The preferred embodiment disclosed in the patents is the combination of RIMS plus TV/2 and the Court's construction is consistent with that.

The TV/2 literature specifically says to combine TV/2 with the parts ordering system and inventory management system. The RIMS system disclosed in the '989 patent was a part ordering and inventory management system.

doesn't contain the sixth, then it doesn't infringe, so it has to have them all.

There also are method claims, and those, in this case, are claims 26, 28, and 29 of the '683 patent, and that method claim recites a series of steps that have to be performed, and to infringe a method claim, it must be proved that use of an accused system performs each of the steps as defined in the claim, and, again, they have to prove all of it. If they only prove one out of five, then that's not enough. If they prove five out of six, that's not enough.

Now, you've also heard some evidence from the experts about independent and dependent claims. An independent claim simply recites its own elements or steps and does not refer to any other claim. A dependent claim includes all the elements or steps of another claim, that is the claim from which it depends, plus one or more other elements or steps.

So it will say a system comprising or a method comprising or method for doing this as recited in claim one which also, or that also does, and that's a dependent claim because it recites the claim that it comes from.

A dependent claim, of course, is infringed only if all elements or the steps of the independent claim, as well as the other element listed in the dependent claim, are shown to exist in an accused system or method. So in other words, to prove infringement of the dependent claim, you have to prove,

A, that all of the elements of the claim from which it depends are infringed and the one which is new as well. Now, the dependent claims at issue in this case are claim 29 of the '683 patent, and claims two, six, and 22 of the '516 patent.

These instructions are numbered. If you need to know that, all of this is recited for you in instruction number 17 so you can identify, but you can also tell by the language they use as well.

And all of the other claims here are independent claims. The claims here, all of them actually, whether they are system claims or method claims, use the term comprising. Comprising simply means including but not limited to or contain. Thus, claims that contain the word comprising cover any accused system or method that includes the elements of the claims even if that accused method or system includes additional functionality or steps.

What is important is whether the accused system or method of a claim using the term comprising includes all the elements of the claim. If it does, then infringement is proved even if the accused system or method includes even more functionality or features.

Now, to decide the issues of infringement and invalidity, you're going to need to understand the claims of the patents because as both lawyers, I think, have pointed out and was in the video before, the claims define the boundaries

of the rights that ePlus has in its patents, that anybody has in their patents.

Now, those instructions -- I mean those patents are in your notebook, and each of the claims that are at issue are highlighted in yellow, and I've defined the claim terms, and you have to use those terms, and they are in your notebook as well, and you use those same definitions in deciding both infringement and invalidity. And the definitions are those as would be given and are understood by one of ordinary skill in the art, and you've heard people talking about.

One of the few things that I think the parties agreed upon in this case is who was the person of ordinary skill in the art, and that is someone in the field of computer science with an undergraduate Bachelor of Science degree and some practical programming experience, perhaps about a year or two, and having an understanding of the basic principles of supply chain management and procurement during the 1993 to mid 1994 time frame.

If the Court has not given you a definition, then the words of a claim are to be given their usual and ordinary meanings. The parts of the patent that precede the claim are called the abstract, and I believe somebody pointed that out to you -- that has some evidentiary value, of course, because it tells you things -- and the written description or specification, but neither the written description nor the

abstract nor the drawings, which are called figures, can be infringed. The infringement is of the claims, not the things that precede the claims, and that's what you are looking at.

The term published by a vendor was used, and I'll remind you of that definition. I think they read it, and you probably have it perfectly in mind now, but published by a vendor is used in the definition of the claim term catalog/product catalog.

Published simply means to make generally known. Published by a vendor simply means that at some point in time, a vendor, such as a supplier, a manufacturer, or a distributor, has made generally known or has disclosed an organized collection of items and associated information, preferably but not necessarily including the part number, price, catalog number, vendor name, vendor ID, a textual description of the items, and images of or relating to the item.

Now, two of the claims here contain what is referred to as means for performing a stated function in the elements, and you've got those interpreted in your book as well. Claim three of the '683 patent and claim one of the '172 patent have elements that also include the means plus function requirements.

That term, means for, has a special meaning in patent law. One example is that claim three of the '683 patent uses the phrase means for selecting the product catalogs to search.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------
:
ePLUS, INC. : Civil Action No.
: 3:09CV620
vs. :
:
LAWSON SOFTWARE, INC. : January 24, 2011
:
--------------------------------------

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001

Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)
Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV00620, ePlus, Incorporated versus Lawson Software, Incorporated. Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and Mr. Michael G. Strapp represent the plaintiff.

Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, Mr. William D. Schultz represent the defendant. Are counsel ready to proceed?

MR. ROBERTSON: Yes, Your Honor.

MR. McDONALD: Yes, Your Honor.

THE COURT: All right. I was very sorry to hear about Ms. Albert's father passing away. You all both wrote letters about it. I don't see the point in bringing that to the attention the jury. Do either one of you?

In the old days, when people didn't do what they were supposed to do, they got keelhauled. I'm about ready to institute that procedure here. It's time for the jury to get going, and I've had to read all this stuff now. I told you what to do about this verdict form, and it was pretty easy, and it's unnecessary to go through all this stuff.

Now, apparently we're going to have to revise it anyway because -- and some of the instructions. What instructions have to be revised because Lawson is not contending that the RIMS brochure is prior art? Which one is

arguing?

MR. YOUNG: Your Honor, David Young for ePlus. It's instruction 3-A that was submitted to the Court over the weekend. It lists as I think reference number three, RIMS brochure, and that would have to come out now because it appears that Lawson does not have that as an anticipated reference on its own verdict form.

THE COURT: Is that right?

MR. McDONALD: Yes, that's right, Your Honor.

THE COURT: So I suppose I need to tell the jury simply to disregard any testimony about the RIMS brochure as prior art.

MR. McDONALD: No, it not anticipatory prior art meaning it's not all by itself anticipating a claim. We're still using it for obviousness and support for the on sale, the RIMS as prior art and 102(a) and (b), but the brochure, all by itself, we're not contending is an anticipating reference, but it would be used to support number one in the instruction which is the Fisher RIMS system as prior art.

THE COURT: What do you mean, to be used to support? If you're going to use it --

MR. McDONALD: It's evidence of the Fisher RIMS system as it was being sold and --

THE COURT: Well, if it's evidence of it, it comes out of 39, too, because you're not contending that it is