# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF *e*PLUS, INC.'S CORRECTED BRIEF IN SUPPORT OF ITS MOTION FOR
EXCEPTIONAL CASE FINDING AND ATTORNEYS' FEES
PURSUANT TO 35 U.S.C. § 285**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice)*
Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

*Attorneys for Plaintiff, ePlus, Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................5

    A.    Lawson's Refusal To Abide the Court's Orders Regarding Invalidity
        Contentions ................................................................................................5

        1.    The Court's orders requiring defendant to set forth its invalidity
            contentions with specificity ........................................................... 5

        2.    Defendant's attempts to introduce new invalidity theories through its
            expert Dr. Michael Shamos ........................................................... 6

    B.    Defendant's Attempt To Rewrite Its Expert Disclosures On The Eve Of
        Trial .........................................................................................................10

    C.    Lawson's Baseless Non-Infringement Arguments Regarding "Published
        By A Vendor" ...........................................................................................12

III.  ARGUMENT ......................................................................................................18

    A.    ePlus Is The Prevailing Party .................................................................19

    B.    Defendant's Vexatious Tactics Relating To Its Invalidity Case, The Knuth
        Report And The "Published By A Vendor" Issue Make This Case
        Exceptional ..............................................................................................20

    C.    Awarding ePlus At Least The Portion Of Its Attorneys Fees Related To
        Defendant's Vexatious Litigation Strategy And Other Misconduct Is
        Appropriate ..............................................................................................23

        1.    Defendant is culpable for its willful disregard of the court's orders ........ 24

        2.    The validity questions were not close ...................................... 24

        3.    Defendant's litigation behavior before and at trial ................... 25

IV.   CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Afros S.p.A. v. Krauss-Maffei Corp.,*
  671 F.Supp. 1402 (D. Del. 1987)............................................................................ 23

*Amsted Indus. v. Buckeye Steel Castings Co.,*
  23 F.3d 374 (Fed. Cir. 1994) ................................................................................... 22

*Automated Bus. Cos. v. NEC Am., Inc.,*
  202 F.3d 1353 (Fed. Cir. 2000) .............................................................................. 19

*Beckman Instruments, Inc. v. LKB Produkter AB,*
  892 F.2d 1547 (Fed. Cir. 1989) ........................................................................ 19, 20

*Bolivar v. Pocklington,*
  975 F. 2d 28 (1st Cir. 1992).................................................................................... 21

*Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.,*
  393 F.3d 1378 (Fed. Cir. 2005) ........................................................................ 18, 19

*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,*
  962 F.2d 1048 (Fed. Cir. 1992) .............................................................................. 19

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.,*
  723 F.2d 1573 (Fed. Cir. 1983) ........................................................................ 19, 23

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991)................................................................................................... 22

*Cruz v. Savage,*
  896 F.2d 626 (1st Cir. 1990)................................................................................... 21

*Eltech Sys. v. PPG Indus.,*
  903 F.2d 805 (Fed. Cir. 1990) ............................................................................... 21

*Enpat, Inv. v. Microsoft Corp.,*
  26 F. Supp. 2d 811 (E.D. Va. 1998) ...................................................................... 23

*Former Employees of Motorola Ceramic Prods. v. United States,*
  336 F.3d 1360 (Fed. Cir. 2003) .............................................................................. 19

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983).................................................................................................. 19

*Humanscale Corp. v. Compx Int'l Inc.,*
  2010 WL 3304261 (E.D. Va. Aug. 16, 2010)......................................................... 18

*In re Omeprazole Patent Lit.,*
  483 F.3d 1364 (Fed. Cir. 2007) .............................................................................. 19

*Inland Steel Co. v. LTV Steel Co.,*
  364 F. 3d 1318 (Fed. Cir. 2004) ............................................................................. 19

*Interspiro USA, Inc. v. Figgie Int'l, Inc.*,
  815 F. Supp. 1488 (D. Del. 1993), *aff'd* 18 F. 3d 927 (Fed. Cir. 1994) ............................ 20, 25

*IVAC Corp. v. Terumo Corp.*,
  1990 WL 180202 (S.D. Cal. Aug. 9, 1990) ................................................................. 23, 24

*Junker v. Eddings*,
  396 F.3d 1359 (Fed. Cir. 2005) ................................................................................. 24

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*,
  464 F.3d 1339 (Fed. Cir. 2006) ................................................................................. 19

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996) ................................................................................... 24

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
  182 F.3d 1356 (Fed. Cir. 1999) ................................................................................. 22

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
  781 F.2d 198 (Fed. Cir. 1986) ................................................................................... 24

*Samsung Elecs. Co. v. Rambus, Inc.*,
  439 F. Supp.2d 524 (E.D. Va. 2006) .......................................................................... 24

*Sanford v. Commonwealth of Virginia*,
  689 F. Supp. 2d 802 (E.D. Va. 2010) .................................................................... 18, 21

*Sensonics, Inc. v. Aerosonic Corp.*,
  81 F.3d 1566 (Fed. Cir. 1996) ................................................................................... 20

*Serio–US Inds., Inc. v. Plastic Recovery Techs. Corp.*,
  459 F.3d 1311 (Fed.Cir. 2006) ................................................................................... 21

*Serrano v. Telular Corp.*,
  111 F.3d 1578 (Fed. Cir. 1997) ................................................................................. 22

*Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*,
  929 F.2d 676 (Fed. Cir. 1991) ................................................................................... 23

*Superior Fireplace Co. v. Majestic Products Co.*,
  270 F.3d 1358 (Fed. Cir. 2001), *reh'g and reh'g en banc denied* (Jan. 9, 2002) .................... 24

*Synthon IP, Inc. v. Pfizer Inc.*,
  484 F. Supp. 2d 437 (E.D. Va. 2007) ......................................................................... 21

*Takeda Chem. Indus. Ltd. v. Mylan Labs. Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008) ............................................................................ 19, 22

*Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*,
  459 F. Supp. 2d 227 (S.D.N.Y. 2006), *aff'd* 549 F.3d 1381 (Fed. Cir. 2008) ........................ 22

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989) ................................................................................................. 19

*Third Wave Techs. Inc. v. Stratagene Corp.*,
  405 F. Supp. 2d 991 (W.D. Wis. 2005) ....................................................................... 22

**Statutes**

35 U.S.C. § 102 ............................................................................................................... 6

35 U.S.C. § 103 ............................................................................................................... 6

35 U.S.C. § 284 ............................................................................................................. 22

35 U.S.C. § 285 ....................................................................................................... passim

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................ 9

Fed. R. Civ. P. 54 .................................................................................................... 20, 23

## I.     INTRODUCTION

A jury of the Eastern District of Virginia found that each claim of the patents-in-suit is valid and that Lawson Software Inc. ("Lawson" or "Defendant") infringes five claims of those patents.  The Court has permanently enjoined Defendant from selling or servicing infringing product configurations and has denied Defendant's request for a stay of that injunction.  In so ruling, the Court took note of the litigation tactics employed by Lawson, stating that Lawson used a "highly contentious approach to this litigation, which was to contest virtually every issue (often needlessly and with dubious reason)."  Dkt. No. 728 (Opinion) at 31.  *e*Plus now asks this Court to exercise its discretion pursuant to 35 U.S.C. § 285, and find this to be an exceptional case and award *e*Plus, at a minimum, its reasonable attorneys' fees associated with defending against Lawson's vexatious litigation conduct as identified herein.

Defendant unnecessarily delayed the administration of justice by disregarding the Court's orders, trying to ambush *e*Plus with new expert reports on the eve of trial, and speciously manufacturing non-infringement defenses based on the notion that the item data maintained in its item master is not "published by a vendor."  Specifically, Defendant's tactics relating to its (1) refusal to abide by the Court's orders limiting its invalidity case to what it timely disclosed in invalidity contentions (2) attempt to replace its experts long after discovery had closed and on the eve of trial and (3) attempt to make a "gotcha" non-infringement argument based on a spurious mischaracterization of this Court's *Markman* ruling, were uniquely vexatious within the meaning of the case law applying Section 285.

Defendant refused to abide by the Court's several orders restricting Defendant's invalidity arguments to those that it timely and sufficiently disclosed in its invalidity contentions. In total, the Court was required to issue at least **six orders** holding that Defendant's invalidity case was limited to theories disclosed in its invalidity contentions and, even then, *e*Plus and the

Court were still required to deal with Defendant's moving target invalidity contentions throughout an already complex and lengthy trial.  As early as November, 2009, the Court made it clear to Defendant that it must set forth its invalidity contentions in writing and with specificity. Despite that order, Defendant's invalidity expert report served May 5, 2010 included over a dozen new bases for invalidity.  *e*Plus immediately moved to strike the new opinions.  In a scheduling conference, the Court long ago warned Defendant that it risked imposition of fees by disregarding the Court's orders precluding it from raising new invalidity theories:

> MR. CARR: Your Honor, I've just got to say, there are two sides to this story.
>
> THE COURT: There are to every one, and that's why I want to see, but the easy way to do it is that you show me the new stuff highlighted . . . .
>
>              \*       \*       \*       \*
>
> THE COURT: And then you do yours in the contention saying this is where Seamus's [sic] report, page seven, that he identifies as not in the report actually is -- or not in the contentions is in the contentions, and if it's not there, it isn't coming in.
>
> ***And just keep yourself some separate time records and attorney's fees records for all this, and we'll deal with all this later****.* But I'm -- and I don't believe, what I don't believe is what I'm reading in these papers that experts are talking about hundreds of pages of documents and claim charts, and ***I'm going to tell you, we're not going to have it.*** I don't know what they're doing.
>
>              \*       \*       \*       \*
>
> The remedy I'm going to take is to bounce your expert's testimony and get rid of it.

Ex. A (Hearing Tr.) at 8:22 – 9:25 (May 18, 2010).  Ignoring the Court's warning, Defendant continued to raise new invalidity theories over and over again.  As a result, the Court was forced

to review dozens of rounds of briefing and hear several days worth of oral argument relating to Defendant's adamant refusal to abide by the Court's orders.[1]

Lawson's playbook also included an attempted bait and switch by trying to replace its expert witnesses on the eve of trial.  Lawson tried to replace its invalidity expert long after the close of discovery with a new expert armed with new opinions (and new reasoning underscoring those opinions) and to introduce a source code expert who, in addition to analyzing the source code of the infringing products, went beyond that by also offering non-infringement and stealth invalidity opinions even though the Court specifically instructed Defendant that it could not do so.

And, just as *e*Plus predicted at the *Markman* hearing on January 22, 2010, Lawson's trial strategy was to argue that the catalog data maintained in the Lawson system item master database was not "published by a vendor" based on an interpretation of the Court's claim construction that Lawson knew was not what the Court intended.  Despite the Court's repeated statements that Defendant could not use this "gotcha" defense at trial, Lawson still did so, ultimately forcing the Court to construe the terms "published" and "published by a vendor" in the midst of trial.

The sum of Defendant's actions establish that the Court should find this to be an exceptional case.  *e*Plus specifically seeks at a minimum its reasonable attorneys' fees associated with briefing, oral argument, trial preparation and trial with respect to the following motions and issues:

---

[1]  Indeed, even in the middle of the trial, the Court had to recess the jury for nearly all of the morning session to review Dr. Shamos's expert report to assess whether his planned testimony was commensurate in scope with the opinions disclosed in his expert report.  As a result of this review, the Court struck Dr. Shamos's proposed testimony relating to the J-CON and PO Writer systems.

3

- Motion to Strike Portions of Defendant's Expert Report and Exclude From Trial Alleged Prior Art and Invalidity Arguments Not Disclosed in Defendant's Court-Ordered Invalidity Contentions (Dkt. Nos. 212-215, 218, 224, 227, 234, 235)

- Preparing for and taking the depositions of Richard Lawson and Jeffery Hvass on May 28, 2010 and June 8, 2010, respectively as Rule 30(b)(6) designees on topics relating to Lawson legacy systems

- Motion *in Limine* No. 2: To Enforce the Court's Orders of May 24, 2010 and May 25, 2010 and Exclude Any Evidence, Expert Opinion, Other Testimony, or Argument Pertaining to Alleged Prior Art and Invalidity Theories Not Set Forth in Defendant's Court-Ordered Second Supplemental Statement (Dkt. Nos. 248, 249, 322)

- Motion *in Limine* No. 4: To Exclude any Evidence, Expert Opinion, Other Testimony or Argument Pertaining to Purported "Demonstration Systems" for Lawson Releases 5.0, 6.0 and 6.1 (Dkt. Nos. 255-256, 324)

- Motion *in Limine* No. 6: Exclude Alleged Prior Art that Defendant Untimely Produced After the Close of Fact Discovery (Dkt. Nos. 266-267, 326)

- Motion to Strike the Expert Reports of Preston Staats and Keith Knuth (Dkt. Nos. 455-457, 460, 469)

- Motion to Exclude Defendant's Proposed Trial Exhibits Relating to Invalidity Theories Not Disclosed in the Court-Ordered Second Supplemental Invalidity Statement or Relied Upon by Defendant's Invalidity Expert (Dkt. Nos. 492, 493, 508)

- Motion to Exclude Incomplete Alleged Prior Art Documents Pursuant to Federal Rules of Evidence (Dkt. Nos. 495-496, 507)

- Motion to Enforce Prior Court Orders (Dkt. Nos. 525, 526, 535)

- Memorandum Concerning the Scope of Expert Testimony Offered by Dr. Michael Shamos (Dkt. No. 556)

- Motion to Preclude Dr. Shamos from Testifying as to Obviousness of the Combination of JCON and PO Writer (orally at trial; *see also* Dkt. No. 580)

- Oral motions at trial pertaining to Defendant's arguments relating to whether Lawson's item master is "published by a vendor"

- Briefing and oral argument relating to Defendant's injection of its "Published By a Vendor" defense at trial.

The Court should exercise its discretion, find this to be an exceptional case and award *e*Plus its reasonable attorneys' fees associated with preparing and arguing the motions and memoranda listed, and dealing with related arguments during the Pretrial Conference and trial.

## II.   BACKGROUND

### A.   Lawson's Refusal To Abide the Court's Orders Regarding Invalidity Contentions

#### 1.   The Court's orders requiring defendant to set forth its invalidity contentions with specificity

In two initial orders, the Court made clear that Lawson was to have disclosed its invalidity theories with specificity and that it would be limited at trial to only those theories and evidence disclosed in its invalidity contentions.

First, the Court's November 2009 Scheduling Order, and as subsequently amended, required Defendant to identify with specificity (as to its invalidity defenses) "all prior art on which it relies, ***including a citation by Bates number of any documents produced relating to each such prior art reference***," as well as "a complete and detailed explanation of what it alleges that ***each listed prior art reference*** shows in claim chart form on an element-by-element, claim-by-claim basis and how that prior art invalidates the claims asserted by plaintiff."  Dkt. No. 121 (Exhibit A, Pretrial Schedule A) at § J(3) (Nov. 18, 2009) (emphasis added).

Second, after finding that Lawson failed to comply with the Scheduling Order, the Court ordered Defendant on March 26, 2010 to comply by serving its Second Supplemental Statement of Invalidity Defenses ("Second Supplemental Statement").[2]  In no uncertain terms, the Court emphatically reiterated its requirement that Defendant specifically disclose each invalidity theory and all supporting evidence that Defendant relied upon in each document:

---

[2]  Just as the Court ordered *e*Plus to limit its infringement case to 13 representative claims, the Court ordered Defendant to limit the invalidating prior art it would rely on.

THE COURT:  Look, you, Mr. McDonald, have gone hog wild and crazy with these references, and they are inadequate.  They just are.  I've never seen any prior art references, alleged invalidity references, as crazy as this.

You're just going to have to pick --

MR. McDONALD:  Well, Your Honor --

THE COURT:  Wait a minute, Mr. McDonald.  You told me you were going to have seven or eight, and I want you to do them like I said; claim-by-claim, element-by-element.  What is it that in the prior art invalidates it?  And then you *take the page of the prior art, and not only do you write it out, you highlight it, and you hand it to them*.

They don't have to answer anything until you start doing it right and until you cut down your references and make them specific.  *It's not sufficient to tell somebody some saber* [sic] *system or some whatever it is*.  I know that you said that you all gave them the page number, but *that's not enough*.  That *doesn't do what I asked you to do*.  You-all have complicated the case unnecessarily.

Ex. B (Hearing Tr.) at 7:19 – 8:15 (March 26, 2010) (emphasis added).

Defendant served its Second Supplemental Statement on April 9, 2010, identifying eleven bases for finding the patents-in-suit invalid based on prior art (i.e., 35 U.S.C. §§ 102, 103).

### 2.    Defendant's attempts to introduce new invalidity theories through its expert Dr. Michael Shamos

In contravention of the Court's orders limiting invalidity defenses, Defendant's expert invalidity report served several weeks later on May 5, 2010 contained many new theories not disclosed in the invalidity contentions, including opinions based on new references Baxter Healthcare, DynaText, InnerView Prism, "Catalog Databases and Search Engines," Lawson system versions 5.0 and 6.0 and US Pat. No. 5,694,551 (to Doyle), along with Section 101 invalidity theories alleging that the asserted claims were "improper hybrid claims."  *e*Plus promptly moved to strike.  *See* Motion to Strike Portions of Defendant's Expert Report (Dkt.

6

Nos. 212-215, May 14, 2010).  The Court granted-in-part *e*Plus's motion to strike, again noting

expressly that Defendant's invalidity theories were limited to those disclosed in the Second

Supplemental Statement:

> THE COURT: All right.  Well, the pretrial orders mean what they
> say, and in the original Pretrial Schedule A, paragraph J3, to which
> the parties agreed, the Court ordered that the defendant shall file an
> initial statement identifying each of its invalidity defenses with
> specificity, and such statements shall also include a list of all prior
> art on which it relies, including a citation by Bates number of any
> documents produced relating to each such prior art reference, and a
> complete and ***detailed explanation of what it alleges that each
> listed prior art reference shows in claim chart form on an
> element-by-element, claim-by-claim basis and how that prior art
> invalidates the claims asserted by the plaintiff.***
>
>                  \*      \*      \*      \*
>
> ***And I said:  I have to see more about it, but I can tell you one
> thing; if it's not in that answer, that disclosure, it's not coming
> in.***
>
> Yet on May the 3rd, without coming to court and saying they
> didn't understand the limits that had been articulated on April the
> 29th and March the 26th and the scheduling order, the defendants
> listed a whole bunch of new prior art and invalidity contentions;
> thereby frustrating the very purpose of the order entered, Exhibit
> A, to the brief of the -- of the plaintiff in this motion, which is
> Pretrial Schedule A, J3, which they -- paragraph J3, which they
> agreed to.  ***And so if it's not listed on the – if something is not
> listed on the list of prior art filed on April 9th, it's not coming in.***

Ex. C (Hearing Tr.) at 97:6 – 100:21 (May 24, 2010) (emphasis added).  *See also id.* at 47:20 –

48:1 (commenting that "You were told that if you didn't have the prior art in these supplemental

contentions so people could understand what you were talking about, it wasn't going to come in

at trial.  ***I don't know how on earth you could think you could get it in by sticking it in an
expert's opinion***.  ***That's a disingenuous argument, I think***.") (emphasis added).

Notwithstanding the Court's order on *e*Plus's motion to strike, Defendant persisted in

introducing invalidity theories not disclosed in the Second Supplemental Statement.  Moreover,

Defendant tried to re-label invalidity theories relating to its legacy systems excluded by the Court in *e*Plus's first motion to strike as "non-infringement opinions" in the Shamos Non-infringement Report.  In response, *e*Plus moved *in limine* to exclude Dr. Shamos' new opinions.  Motion *in Limine* No. 2, at 2 (June 18, 2010) (Dkt. No. 248).  In granting *e*Plus's motion, the Court ordered, ***for a fourth time***, that Dr. Shamos could not offer anticipation, obviousness or any other invalidity opinions not disclosed in the Second Supplemental Statement.  *See* Dkt. No. 382 (Order) (July 30, 2010).  After lengthy oral argument, the Court again emphasized the importance of the Second Supplemental Statement in limiting prejudice to *e*Plus:

> THE COURT:  This motion is going to be granted.  This report goes somewhat considerably off the reservation established by the previous orders of the Court ***beginning with the requirements that contentions, invalidity contentions be stated*** at a certain time, and then Lawson was given a second bite at the apple and told to restate them, and ***those orders were put in place in order that everybody would know how the discovery was to proceed, what were the contentions, what are the contentions, what do we then direct the discovery to***.
>
> ***They are not just pro forma requirements of throwing up pieces of paper into the file that contain something about invalidity***.  They shape – they are the skeleton of the case to which the flesh and muscles and viscera are attached by discovery, and they mean something.

Ex. D (Hearing Tr.) at 183:24 – 184:12 (July 28, 2010) (emphasis added).

Yet after what were then four orders from this Court, Defendant remained defiant in proposing invalidity trial exhibits not disclosed in the Second Supplemental Statement.  Defendant's refusal to abide by the Court's orders again forced *e*Plus to move to exclude proposed trial exhibits not disclosed in the Second Supplemental Statement.  *See* Motion to Exclude Defendant's Proposed Trial Exhibits (Oct. 21, 2010, Dkt. Nos. 492-493).  After holding that the proposed exhibits "were not disclosed by the defendant in its Second Supplemental

Statement of Invalidity Defenses," the Court granted *e*Plus's motion.  Dkt. No. 516 (Order) at 1 (Nov. 19, 2010).  In a similar vein, Defendant tried to invalidate portions of the patents-in-suit using only certain chapters of "Version 10" of the alleged prior art P.O. Writer manual.  *e*Plus moved to exclude these incomplete documents.  *See* Motion to Exclude Incomplete Alleged Prior Art Documents (Oct. 21, 2010, Dkt. Nos. 495-496).  In its opposition, Lawson introduced an affidavit purportedly attaching a copy of the full Version 10 manual.  Upon further inspection, however, the documents showed that the manual Lawson cited in its opposition brief ***was not from Version 10 but from a later produced Version 11***.  Dkt. No. 507 (Reply in Support of Motion to Exclude Incomplete Alleged Prior Art) at 7 (Nov. 8, 2010).  Again, the Court granted *e*Plus's motion and ordered that the alleged prior art was not admissible.  Dkt. No. 515 (Order) at 1 (Nov. 19, 2010).

And even after ***five Court orders***, Defendant attempted to re-write the permissible scope of its invalidity expert's testimony ***at trial***, introducing numerous new bases for its J-CON/ PO Writer obviousness defenses.[3]  Specifically, Dr. Shamos intended to testify as to opinions not disclosed in his expert report or in the Second Supplemental Statement.  *e*Plus orally moved at trial on January 19, 2011 to preclude Dr. Shamos from testifying as to the alleged obviousness of *e*Plus's patents based upon the combination of J-CON and PO Writer as a sanction under Fed. R. Civ. P. 37.  After a nearly two hour hearing, the Court granted *e*Plus's motion.  Dkt. No. 580 (Order) at 1 (Jan. 19, 2011).

---

[3] By then anticipating that Defendant might disobey the Court's repeated orders restricting invalidity defenses, *e*Plus preemptively filed a bench memorandum for the Court detailing the history of how the Court circumscribed Dr. Shamos's invalidity testimony, in order to ensure that his trial testimony did not exceed the scope the Court had permitted.  *See* Dkt. No. 556 (Memorandum Concerning the Scope of Expert Testimony Offered by Dr. Michael Shamos) (Jan. 13, 2011).  Of course, Defendant's actions at trial only confirmed *e*Plus's suspicions.

**B.** **Defendant's Attempt To Rewrite Its Expert Disclosures On The Eve Of Trial**

Defendant tried to rewrite its expert disclosures on the eve of trial by (1) replacing its invalidity expert Dr. Shamos with a new alleged expert – Dr. Preston Staats and (2) introducing one of its employees as a source code expert and offering opinions straying outside the scope permitted by the Court and into alleged non-infringement and stealth invalidity theories.

Perhaps recognizing that Dr. Shamos's invalidity opinions were tainted after the Court's several orders limiting his testimony, Defendant sought to replace Dr. Shamos with a new alleged validity expert – Dr. Preston Staats – on August 25, 2010, well after discovery closed. Defendant offered the Staats Invalidity Report as a "do over" for the discredited Shamos Invalidity Report. But like the Shamos Invalidity Report, the Staats Invalidity Report again included new bases for invalidity not disclosed in the Second Supplemental Statement.

Defendant similarly tried to introduce a new infringement and invalidity expert (Keith Knuth) cloaked as a "source code expert." Defendant offered Mr. Knuth as a conduit to introduce non-infringement theories supposedly based on Knuth's review of the source code of the infringing products. And, incredibly, the Knuth Report included non-infringement and invalidity opinions nearly identical to the opinions the Court had already stricken from Dr. Shamos's reports in granting *e*Plus's second motion *in limine*.[4] Specifically, Defendant tried to

---

[4] In the July hearing on *e*Plus's Motion *in Limine* No. 2, the Court made clear that Defendant could not rely on Lawson legacy systems 5.0 and 6.0 to support its invalidity or non-infringement defenses since Defendant did not disclose either system in the Court-Ordered Second Supplemental Statement. Incredibly, Defendant instead tried to inject new invalidity and non-infringement theories relying on Lawson legacy system version 7.0 in the Knuth report.

introduce "non-infringement opinions" based on a comparison of the accused systems to Lawson

prior art legacy systems.[5]

ePlus promptly moved to strike both expert reports.  *See* Motion to Strike the Expert

Reports of Preston Staats and Keith Knuth (Aug. 30, 2010) (Dkt. Nos. 455-457, 460).  Viewing

Defendant's actions as a blatant attempt to pull a "bait and switch" on the eve of trial, the Court

granted ePlus's motion to strike in part, noting that:

> I issued the opinion or the order that I issued allowing the extra
> experts for Lawson, and ***it never crossed my mind that one expert
> would be substituted for another, nor do I think that anything I
> said or did reasonably could have led to that result***, and there was
> to be an expert who was to address just the source codes.
>
> Now, what's happened is that ***Lawson has taken advantage of the
> situation, has gone well beyond what it is that I ordered and
> contemplated***.  I think I made that clear, and the bottom line is that
> Staats and Knuth aren't going to testify.  I'm going back to where I
> was.  ***I didn't give you all free rein [sic] to go out and get new
> experts and change the game at the end of the time.***  I was trying
> to allow some equity into a situation.

Ex E (Hearing Tr.) at 116:3-16 (Sept. 7, 2010) (emphasis added).  Recognizing that Defendant

tried to shoehorn a permitted source code expert into a non-infringement expert, the Court

---

[5]  Defendant also forced ePlus to expend resources conducting Rule 30(b)(6) depositions of
Richard Lawson and Jeffrey Hvass on May 28, 2010 and June 8, 2010, respectively relating to
the supposed Lawson legacy systems and to prepare a motion *in limine* to exclude evidence
relating to Lawson legacy systems which Defendant produced after the close of discovery which
was also not disclosed in the Second Supplemental Statement.  *See* Dkt. Nos. 255-256, 324
(Motion *in Limine* No. 4: Exclude any Evidence, Expert Opinion, Other Testimony or Argument
Pertaining to Purported "Demonstration Systems" for Lawson Releases 5.0, 6.0 and 6.1).
Similarly, ePlus had to file another motion in *limine* to exclude alleged demonstration systems
for the legacy systems not disclosed in the Second Supplemental Statement which Lawson tried
to introduce as evidence of invalidity and non-infringement.  *See* Dkt. Nos. 266-267, 326
(Motion *in Limine* No. 6: Exclude Alleged Prior Art that Defendant Untimely Produced After the
Close of Fact Discovery).  The Court granted both of ePlus's motions.  *See* Dkt. Nos. 372, 381
(granting motions).

similarly ordered that Mr. Knuth could only testify as to source code.  Dkt. No. 472 (Order) at 1 (Sept. 9, 2010).

Still, Defendant refused to comply with the Court's order relating to the Knuth Report. As a result, *e*Plus was forced to file yet another motion to limit Mr. Knuth's testimony to the few paragraphs in his report discussing opinions relating only to source code.  Motion to Enforce Prior Court Orders (Dkt. Nos. 525, 526, 535).  Ultimately, the scope of Mr. Knuth's testimony became so limited that Lawson never called him to testify at trial.

### C.    Lawson's Baseless Non-Infringement Arguments Regarding "Published By A Vendor"

Defendant also committed vexatious litigation conduct by arguing at trial that the systems of the patent claims must include catalogs that were published by a vendor.

As the Court is aware, nearly all of the asserted claims recite the term "catalog."  *See, e.g.,* '683 patent at Col 25:9-11 (claiming "an electronic sourcing system comprising: at least two product catalogs containing data relating to items associated with the respective sources . . . "). The Court construed the term "catalog" to mean "an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item."  Dkt. No. 204 (*Markman* Op.) at 10-11.

During the *Markman* process, Defendant contended that the Court should construe "catalog" to mean "[a] collection of text and images organized and published by a vendor, representing products sold by that vendor."  *See* Dkt. No. 144 (Opening Br.) at 21 (Jan. 6, 2010). Indeed, Defendant repeatedly argued that a catalog may only be compiled by a vendor.  *See id* at 22-23 (arguing that catalogs must be "published by a vendor" and that a "grocery store shopping

12

list or an inventory record" are not catalogs).[6]  *e*Plus responded that Defendant's "published by a vendor" claim construction was meant to be a thinly veiled summary judgment non-infringement defense based on Defendant's claims as to the manner in which catalogs are included within its item master.  Ex. F (Markman Hearing Tr.) at 31:3 – 32:8.

The Court ***repeatedly and expressly rejected Defendant's proposed construction that the catalog content can only go from the vendor directly to the Lawson item master database***:

> THE COURT: You agree with his definition now, don't you, after you have read the briefs?
>
> MR. McDONALD: No, Your Honor.
>
> THE COURT: Why not? I mean, really ***and truly, there's no basis for the limitation of a vendor that I can find*** because they do – I think it's time for you all to sort of really come to reason and rationality. ***[The specification] talk[s] about all kinds of third parties, manufacturers, suppliers, distributors. Some of whom sell. Some vend. Some of whom don't. And it doesn't appear in the claim language.*** So why do we have to bring that in or why do we have to spend any more time arguing other than you saying something like this: You know, after having read their briefs, I think we can live with that. How about that?
>
> MR. McDONALD: The patent itself, Your Honor, does talk about vendors and that is the –
>
> THE COURT: ***It talks about vendors, but it doesn't limit it to vendors and you're trying to limit it.***
>
> MR. McDONALD: But when the invention itself, though, is so focused on this concept of the new thing 6 using this catalog database with this large volume of information --
>
> THE COURT: See, that's what I'm saying. ***You shouldn't be making arguments like that***. That's what I'm saying. You're

---

[6]  Defendant repeatedly argued its "shopping list" non-infringement defense at trial – ***(the same defense the Court rejected at the Markman hearing.)*** *See, e.g.,* Trial Tr. at 101:13-19 (Jan. 4, 2011) ("We have like a shopping list for the grocery store, not a published catalog.  We said it in our non-infringement interrogatory contentions.  We don't have published catalogs.  Dr. Shamos said it in his expert report.  We don't have published catalogs.").

> arguing about how many angels can stand on the head of a pin.
> **And there's no real merit to it.** And it's the kind of thing that
> obscures the ability of courts to efficiently process patent cases.

Ex. F (Markman Hearing Tr.) at 31:9 – 33:13 (Jan. 22, 2010) (emphasis added).

While the Court' s construction of "catalog" includes the phrase "published by a vendor,"

the Court did not intend for its definition to require that the catalog contents of Lawson's item

master be the identical data that is published by a vendor – who places vendor data into the

Lawson catalog is not relevant:

> THE COURT: **Who puts [item information] in the [Lawson]
> catalog doesn't change the definition of the catalog that the
> Court has construed because the Court's construction doesn't
> mention who puts the catalog together**."

*See, e.g.,* Ex. G (Trial Tr.) at 1083:22-25 (Jan. 11, 2011) (emphasis added).  Indeed, the Court

admonished Defendant not to treat the claim construction process as a "gotcha" non-

infringement argument.   Ex. F (Markman Hearing Tr.) at 33:16 – 34:10 ("I really think that

there has come to be this approach to claim construction that it is a 'gotcha' for summary

judgment instead of being what it was intended to be. . . . And now claim construction is

becoming a way to try to structure and rewrite claims in such a way as to get a summary

judgment.  And I want you to stop it.  Okay.").

Despite the Court's guidance, Lawson persisted in trying to distort the Court's claim

construction.  At the final pre-trial conference, for instance, Lawson sought to introduce as

evidence a dictionary definition of the work "published."  After oral argument, Lawson agreed to

withdraw its exhibit.  And Defendant did not obscure the fact that it was working on a "gotcha"

despite the Court's warning.  Ex. H (Hearing Tr.) at 235:1-10 (Sept. 27, 2010) (MS. STOLL-

DeBELL: . . . We can withdraw it.  THE COURT: That would be a good thing. . . . THE

COURT: Were you working on a gotcha?  MS. STOLL-DeBELL: To the extent that I'm trying to win this case, Your Honor, yes . . .")

According to Lawson, the term "published" meant that the catalog data had to come from printed catalogs that were formally published by the vendors such as a Sears print catalog. Lawson further strained the term "published" to imply that excerpts of a vendor's catalog were not within the scope of the term.  *See, e.g.,* Ex. G (Trial Tr.) at 101:13-19 (Jan. 4, 2011).  Further, Lawson argued that although the catalog data maintained within the Lawson systems' item master database was originally disseminated by a vendor, it was not "published by a vendor" if the Lawson system user engaged in any reorganization, reformatting or transformation of such vendor catalog data.  Lawson's distortion of the Court's construction of the term "catalog" forced the Court to formulate a construction of the terms "published" and "published by a vendor" mid-trial:

> Published simply means to make generally known.  Published by a vendor simply means that at some point in time, a vendor, such as a supplier, a manufacturer, or a distributor, has made generally known or has disclosed an organized collection of items and associated information, preferably but not necessarily including the part number, price, catalog number, vendor name, vendor ID, a textual description of the items, and images of or relating to the item.

Ex. G (Trial Tr.) at 3249:9-16 (Jan. 24, 2011).  This new instruction should have foreclosed any further argument on the issue from Lawson as Lawson's own witnesses and documents confirmed that the catalog data stored in the item master was at some point made generally known by or was disclosed as part of an organized collection of items by a vendor.  *See, e.g.,* Ex. G (Trial Tr.) at 1590:21 – 1593:12 (Jan. 13, 2011) (Christopherson Cross).  Yet, Lawson persisted.

Indeed, Defendant sought to ambush *e*Plus at trial by arguing to the jury in its opening statement that the Lawson item master is not "published by a vendor" and does not contain "published catalogs."[7] *e*Plus orally moved *in limine* to preclude Defendant from arguing that its item master does not contain "published catalogs" or data "published by a vendor." The Court granted *e*Plus's motion, holding that Defendants could not argue that its item master does not contain "published catalogs." Ex. G (Trial Tr.) at 101:20 – 102:1 (Jan. 4, 2011) ("you can't say 'published catalog' with a view to conveying the notion that you have the Sears catalog, and that's what we're talking about or anything else.").

The Court again admonished Defendant for its repeated attempts to evade the Court's earlier orders:

> THE COURT: . . . I'm telling you, I want it understood -- whether I'm right or wrong, I don't know. I think I'm right in the way I interpreted it. But I spent a lot of time and effort, and so did you-all, in giving the terms the meaning I thought they had. And that's going to be the terms that are going to be used. And ***no amount of workaround is going to happen.***
>
> And the consequence of a workaround is going to be this: ***If I find that you are just -- and I've had this problem. I've never had to say this before. But if I find any more of what I've encountered, which is trying to do indirectly what I've said you can't do directly, and I'm not talking about you personally, I'm talking about your side, then the consequence is going to be is I'm inclined to grant a motion for judgment as a matter of law for the other side on the theory that that's an appropriate sanction for repeated disobedience of the Court's directives because I can't conduct a trial being constantly on the concern that somebody is trying to come in the back door.***
>
> Now, if I did it wrong, you-all have recourse to that in the federal circuit, and that's fine, but I want you to understand I don't deal with things that way.

Ex. G (Trial Tr.) at 104:6-105:9 (Jan. 4, 2011) (emphasis added).

---

[7] Lawson revealed its plans when it produced its proposed slides for its opening statement on the evening before trial.

Astonishingly, Lawson again ignored the Court's order, arguing to the jury that data in

Defendant's item master is not "published by a vendor" since it includes only certain items.

Defendant's expert witness Dr. Shamos testified as follows:

> Q  I'll start by saying can you give me a summary of why in your opinion the Lawson systems do not have a catalog as the Court has defined that term?
>
> A  Well, I think we should just go back to the previous slide and go look through the Court's construction.  They are certainly an organized collection of items and associated information in item master.  So that prong of the construction would be satisfied.  *But that information is not published by a vendor, either a supplier, manufacturer or distributor.  It's carefully handpicked by a customer.  A customer decides what to import into that item master database, and it doesn't constitute a catalog or even multiple catalogs.*

Ex. G (Trial Tr.) at 1749:18-1750:7 (Jan. 13, 2011) (Shamos Direct)  (emphasis added).  And

Defendant offered the identical argument in support of its motion for judgment as a matter of law

of no infringement:

> MS. HUGHEY: The transformation is the whole point of change.  There is a – everyone agrees that the Sears catalog or the Montgomery Ward catalog is a catalog. It comes from that point, it is – it is changed and then put in the item master like a grocery list.  That is the T. That is what we're talking about. It's not the same.
>
> [….] It's not the same because it doesn't meet the Court's definition of catalog. The Court's definition of catalog is an organized collection of items and associated information published by a vendor.
>
> THE COURT: What is wrong with that? You can't just cite the whole thing. You now need to tell me what part of the definition it doesn't fit.
>
> MS. HUGHEY: Yes. Specifically the published by a vendor. It requires the items –
>
> THE COURT: Why isn't it published by a vendor?

> MS. HUGHEY: ***The items in the item master have never been published by a vendor.***

Ex G (Trial Tr.) at 2831:19-2831:12 (Jan. 21, 2011) (emphasis added).  The Court denied

Defendant's motion, stating that if it was the finder of fact it would find Lawson to have

infringed:

> THE COURT: Here's the bottom line.  ***I'm the finder of the fact. I would clearly find that there is infringement of everything that Dr. Weaver said, that each system infringed each claim for the reasons he stated***.  There isn't any question that I would do that. But I'm not the finder of the fact. So under these facts, under the evidence in this case, don't I have to let the jury decide that case and then come back at the end of the day and see whether that's right? So what I'm inclined to do is reserve judgment on this motion, because I will tell you -- ***I personally am having real trouble deciding why there's any defense to infringement at all.***

*Id*. at 2849:8-19 (emphasis added).

## III.   ARGUMENT

*e*Plus is the prevailing party in the litigation, and the Court should find the case to be

exceptional and award *e*Plus its reasonable attorneys' fees, at least with respect to Defendant's

litigation tactics relating to its invalidity case, expert reports and whether the item master is

"published by a vendor,"

The Court may award reasonable attorneys' fees to a prevailing party "in exceptional

cases."  35 U.S.C. § 285.[8]  The Court has discretion to award attorney fees and to employ any

particularly methodology to assess a reasonable award.  *Brooks Furniture Mfg., Inc. v. Dutailier

Intern., Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005).  The purpose of a fee award under Section

285 is to "compensate the prevailing party for its monetary outlays in the prosecution or defense

---

[8]  Alternatively, a fee award is also an appropriate sanction under the Court's inherent authority. *See Sanford v. Commonwealth of Virginia*, 689 F. Supp. 2d 802, 810 (E.D. Va. 2010); *Humanscale Corp. v. Compx Int'l Inc.*, 2010 WL 3304261 (E.D. Va. Aug. 16, 2010) (citing *Sanford*).

of the suit." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)).  And "one of the purposes of §285 is to prevent 'gross injustice' when the accused infringer has litigated in bad faith.'" *Takeda Chem. Indus. Ltd. v. Mylan Labs. Inc.*, 549 F.3d 1381, 1387 (Fed. Cir. 2008) (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). *e*Plus bears the burden of proving this is an exceptional case by clear and convincing evidence. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992).

### A.    *e*Plus Is The Prevailing Party

There can be no reasonable dispute that *e*Plus is the prevailing party in this litigation.  A party is a prevailing party if it receives "'at least some relief on the merits, which alters . . . the legal relationship of the parties.'"  *Inland Steel Co. v. LTV Steel Co.*, 364 F. 3d 1318, 1320 (Fed. Cir. 2004) (quoting *Former Employees of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003), other citations omitted).  "Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses."  *Brooks,* 393 F.3d at 1381.  Accordingly, a plaintiff "may be considered [a] 'prevailing part[y]' for attorney's fees purposes if [it] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, n.7 (1983)).  Thus, "[t]he fact that a party does not prevail on all of its claims does not, however, preclude it from being the prevailing party for purposes of awarding [relief] under Rule 54(d)." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.,* 464 F.3d 1339, 1347 (Fed. Cir. 2006); *see also In re Omeprazole Patent Lit.,* 483 F.3d 1364, 1376 (Fed. Cir. 2007) (upholding district court's finding that patentee was prevailing party even though eight claims of one patent were found invalid).

The jury found in *e*Plus's favor on each of the thirty-six questions relating to invalidity on the verdict form.  Dkt. No. 600 (Verdict) at 4-7 (Jan. 27, 2011).  Moreover, the jury found that three different configurations of Defendant's accused S3 software system infringed five claims of two of the patents-in-suit.  *Id.*  And the Court has entered an injunction permanently enjoining Lawson from, *inter alia*, making, using or offering to sell the infringing product configurations. Dkt. No. 729 (Order) (May 23, 2011).  Accordingly, *e*Plus is the prevailing party for the purpose of Rule 54(d) and 35 U.S.C. § 285.

> **B.   Defendant's Vexatious Tactics Relating To Its Invalidity Case, The Knuth Report And The "Published By A Vendor" Issue Make This Case Exceptional**

Lawson's refusal to abide by the Court's orders consumed countless hours of the Court's time and forced *e*Plus to prepare hundreds of pages of briefing and related pleadings and conduct numerous oral arguments asking the Court to force Lawson to comply at least ***eight times***. Lawson's conduct also forced *e*Plus to prepare for and address these issues at the Pretrial Conference, in the midst of an already complex and time consuming trial.

The Court is free to consider broad evidence in assessing whether a case is exceptional "including misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (citations omitted) (affirming the district court exceptional case determination based primarily on defendant's strategy of vexatious litigation activity).  *See also e.g.,  Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) ("Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional under § 285."  (citations omitted)); *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1521 (D. Del. 1993), *aff'd* 18 F. 3d 927 (Fed. Cir. 1994) ("An exceptional case is one in which it would be grossly unfair for the prevailing party to bear the cost of litigation, or where the conduct of the

losing party is marked by bad-faith or unfairness."); *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 441 (E.D. Va. 2007) ("Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." (quoting *Serio–US Inds., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321–22 (Fed.Cir.2006))).  The totality of the circumstances are relevant in evaluating whether a case is exceptional.  *Eltech Sys. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

This Court has noted that "vexatious" conduct includes acts that are "without reasonable or probable cause or excuse; harassing; annoying" and as "causing or likely to cause vexation: distressing, afflictive."  *Sanford*, 689 F. Supp. 2d at 810.  Courts in non-patent contexts have similarly held that conduct is "vexatious" if it involves "a serious and steady disregard for the orderly processes of justice."  *Bolivar v. Pocklington*, 975 F. 2d 28 (1st Cir. 1992); *accord Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990).  Defendant's tactics as to its invalidity case, the Knuth Report, and the "published by a vendor" issue rise to the level of vexatious under all of these definitions.

Defendant's conduct set forth *supra* unreasonably and unnecessarily extended the proceedings.  In March 2010, the Court made it crystal clear to Defendant that it must disclose any invalidity theory it planned to rely on it the Second Supplemental Statement.  After Defendant failed to abide the Court's order in May 2010, ***the Court warned Defendant that its disregard for the Court's order could subject it to an award of fees***.  Notwithstanding the Court's order on *e*Plus's first motion to strike invalidity theories not disclosed in the Second Supplemental Statement, Defendant ***continued*** to violate the Court's orders – forcing *e*Plus to fully brief and argue multiple motions to strike invalidity arguments not disclosed in the Second

21

Supplemental Statement.  Similarly, Defendant's refusal to exclude infringement arguments from the Knuth Report and attempt to introduce invalidity opinions based on the Lawson legacy systems already excluded by the Court forced *e*Plus to fully brief and argue two motions to strike.  And Defendant's re-injection of the "published by a vendor" issue unnecessarily prolonged the trial and forced the Court and *e*Plus to expend valuable resources developing additional claim constructions.

Defendant's repeated disregard of the Court's orders is itself a basis for *e*Plus's request for attorneys fees under 35 U.S.C. § 285.  *See, e.g., Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 250 (S.D.N.Y. 2006) (considering the defendant's disobedience of multiple court orders as a factor in awarding attorneys' fees to plaintiff under 35 U.S.C. § 285), *aff'd* 549 F.3d 1381 (Fed. Cir. 2008); *Third Wave Techs. Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1017 (W.D. Wis. 2005) (taking into account defendant's disobedience of a court order as a factor in awarding enhanced damages and attorneys' fees to plaintiff under 35 U.S.C. §§ 284 and 285).  *See also Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order." (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (internal quotations omitted))). Defendant's pattern of disregard for the Court's orders relating to disclosure requirements warrants a finding that this is an exceptional case.[9]

---

[9]  Numerous courts have held that similar conduct amounts to vexatious litigation warranting an exceptional case finding.  *See Takeda*, 549 F. 3d at 1387 (affirming finding or exceptional case and award of attorneys fees based in part on litigation misconduct relating to invalidity arguments, stating that Defendants actions "created confusion, wasted valuable court time, and increased the burden of the litigation on the parties"); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999) (remanding case for consideration of whether certain litigation tactics amounted to vexatious litigation in evaluating motion for attorneys fees); *Serrano v. Telular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997) (Litigation conduct causing wasteful use of resources and needless expense is sufficient to support an

C.   **Awarding *e*Plus At Least The Portion Of Its Attorneys Fees Related To Defendant's Vexatious Litigation Strategy And Other Misconduct Is Appropriate**[10]

Because of Lawson's repeated disregard of the Court's orders and in view of the fact that the validity questions were not close, this Court should award *e*Plus its reasonable attorneys' fees associated with briefing and arguing these issues.  "The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).

After the Court determines that the case is exceptional, it must determine whether awarding attorneys fees is appropriate. "The [] decision to award attorney fees, *vel non*, is discretionary and 'permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other

---

"exceptional case" finding and award of attorney fees, noting that"[t]he district court cited several examples of Serrano's litigation conduct that resulted in needless expense by Telular."); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 679 (Fed. Cir. 1991) (affirming award of attorneys' fees grounded on opposing party's pattern of vexatious litigation tactics); *IVAC Corp. v. Terumo Corp.*, 1990 WL 180202, 2 (S.D. Cal. Aug. 9, 1990) (finding exceptional case and awarding fees based on vexatious litigation since "[Defendant] took unmeritorious positions throughout this lawsuit in terms of strategy and decision making, motions made and evidence marshalled."); *Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F.Supp. 1402, 1441 (D. Del. 1987) (finding exceptional case and awarding fees based on vexatious tactics since "defendant's conduct during the case, designed to obfuscate and frustrate rather than promote the litigation process").

[10]  *e*Plus fairly estimates that its fees related to the issues set forth in this motion are approximately $1,200,000.  In the event the Court grants this motion, *e*Plus will supply the Court with documentation of its fees as the Court may require.  This procedure complies with Fed. R. Civ. P. 54 (d)(2), which does not require the movant to supply documentation prior to the motion being granted.  *See* Fed. R. Civ. P. 54(d)(2)(B)(iii) (motion must "state the amount sought or provide a fair estimate of it;"); Comments to 1993 Amendments ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees … What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees(or a fair estimate)").  *See also Enpat, Inv. v. Microsoft Corp.*, 26 F. Supp. 2d 811 (E.D. Va. 1998) (allowing party to furnish fee amount after fee award entered).

factors whereby fee shifting may serve as an instrument of justice.'"  *Superior Fireplace Co. v. Majestic Products Co.*, 270 F.3d 1358 (Fed. Cir. 2001), *reh'g and reh'g en banc denied* (Jan. 9, 2002) (quoting *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996), other citations omitted).  *See also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (factors to consider include the "closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser"); *IVAC Corp.*, 1990 WL 180202, at 1 (same).[11]  If a case is exceptional, "the aggrieved party is entitled to an award of the portion of its attorney fees which related to the vexatious litigation strategy and other misconduct."  *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp.2d 524, 572 (E.D. Va. 2006).

### 1.  Defendant is culpable for its willful disregard of the court's orders

Defendant is wholly culpable for its conduct which unnecessarily prolonged the case, consumed several days of the Court's time and forced *e*Plus to expend valuable resources authoring hundreds of pages of briefing, preparing and conducting oral arguments, and participating in trial preparation and a trial prolonged by Defendant's tactics.  Defendant's level of culpability is heightened by the fact that the Court expressly warned Defendant that it may be required to pay *e*Plus's attorneys fees if it continued to disregard the Court's orders.  Similarly, the Court instructed Defendant at the Markman hearing not to use the claim construction process as some sort of infringement "gotcha."  Yet Defendant did exactly that.

### 2.  The validity questions were not close

The validity question was not close.  The jury found in *e*Plus's favor on each of the thirty-six questions relating to invalidity on the verdict form.  Dkt. No. 600 (Verdict) at 4-7 (Jan.

---

[11]  "Although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling."  *Junker v. Eddings*, 396 F.3d 1359, 1365 (Fed. Cir. 2005).

27, 2011).  As the Court observed, Lawson's invalidity case "was weak."  Dkt. No. 734

(Opinion) at 10.  This factor thus favors an award of fees to *e*Plus.  *See also Interspiro*, 815 F.

Supp. at 1521 (awarding attorney fees because infringement question "was not close," Defendant

failed to make non-infringing design-around, and other conduct), *aff'd* 18 F.3d 927 (Fed. Cir.

1994).

### 3.    Defendant's litigation behavior before and at trial

Defendant simply refused to abide the Court's orders.  For example, the Court had to

order Lawson to limit its invalidity arguments to what it timely disclosed in the Second

Supplemental Statement at least six times.  Moreover, Defendant ambushed *e*Plus and the Court

at trial with the very "gotcha" argument the Court warned Defendant against, namely, that the

Lawson item master does not contain "published catalogs" or the catalog data in the item master

was not "published by a vendor."

## IV.    CONCLUSION

Defendant's litigation tactics crossed the line into vexatious litigation conduct that merits

an exceptional case finding and an award of reasonable attorneys' fees.  The Court's orders were

painstakingly clear, and Lawson refused to follow them.  The Court should not have been

required to expend its valuable resources evaluating numerous motions to enforce orders that

Lawson refused to follow.  For all the reasons stated herein, the Court should find this case to be

exceptional, and award *e*Plus its reasonable attorneys' fees at least with respect to the issues

identified in this motion.

Respectfully submitted,

June 6, 2011

_____ /s/ _____
David M. Young (VSB #35997)
Scott L. Robertson (*admitted pro hac vice*)
Jennifer A. Albert (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
James D. Clements (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Attorneys for Plaintiff *e*Plus Inc.

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of June, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S CORRECTED BRIEF IN SUPPORT OF ITS MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Daniel McDonald, *pro hac vice*<br>Kirsten Stoll-DeBell, *pro hac vice*<br>William D. Schultz, *pro hac vice*<br>Rachel C. Hughey, *pro hac vice*<br>Andrew Lagatta, *pro hac vice*<br>MERCHANT & GOULD<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 332-5300<br>Facsimile: 612) 332-9081<br>lawsonservice@merchantgould.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW<br>GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>Don.dunner@finnegan.com<br>Erika.arner@finnegan.com | ***Counsel for Defendant Lawson Software, Inc.*** |

          /s/
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com