**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION TO MODIFY AND CLARIFY THE INJUNCTION**

Defendant Lawson Software, Inc. respectfully moves this Court under Federal Rules of

Civil Procedure 59(e), 60(b), and 62(c) to modify and / or clarify the Injunction issued on May

23, 2011. (Doc. No. 729.)  The Supreme Court's recent decision in *SEB* applies a heightened

standard for proving indirect infringement as Lawson advanced at trial, and not as ePlus

convinced the Court to instruct the jury.  The *SEB* case demonstrates that the portion of the

Injunction directed to service activities that could only constitute indirect infringement should be

vacated because both the jury's infringement determination and the portion of the Injunction

directed to such service activities are premised on erroneous law.

To the extent any portion of the service component of the Injunction is maintained, its

scope at least should be clarified to ensure that it does not apply to servicing or similar activities

involving those portions of customer systems *other than* the specific enjoined configurations,

even if the customers also have the enjoined configurations.  While comments by the Court and

ePlus at various hearings both indicate that it was not the intent of the Injunction to enjoin

service-relate activities involving non-enjoined configurations, the syntax of the Injunction is not

clear as to what services are enjoined.  Clarification will eliminate any issue.  Finally, the

Injunction should not apply to any products on which ePlus would not be entitled to obtain

damages.  In granting the injunction, the court's distinction of the *Fonar* case cannot stand

because ePlus, like the plaintiff in *Fonar* did not prove that it met the marking requirement with

respect to licensees.

I.     **The Services-Related Portion of the Injunction Directed to Inducement of Infringement Should be Vacated in Light of the Supreme Court's *SEB* Decision on Induced Infringement.**

    A.     <u>A Significant Change in the Law is Grounds to Modify an Injunction.</u>

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . .

from a final judgment, order, or proceeding . . . [if] applying it prospectively is no longer

equitable . . . ."  Fed. R. Civ. P. 60(b)(5).  Likewise, Rule 59(e) allows a party to request the

court to alter or amend a judgment.  Fed. R. Civ. P. 59(e).  An injunction is a "judgment" under

Rule 59(e).  *See Square D Co. v. Fastrak Softworks, Inc.*, 107 F.3d 448, 450 n.1 (7th Cir. 1997).

Due to the equitable nature of injunctive relief, district courts have wide discretion to determine

under what circumstances the grant of injunctive relief is appropriate and under what

circumstances the modification or dissolution of that injunction is warranted.  *Sys. Fed'n No. 91

v. Wright*, 364 U.S. 642, 647 (1961); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394

(2006).

Under Rule 60, an injunction may be amended where a substantial change in law has

occurred since the injunction was entered or there is a good reason the court should modify the

order.  *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1254 (9th Cir. 1999).  Like Rule

60, Rule 59(e) permits a court to amend a judgment to accommodate an intervening change in

controlling law and to correct a clear error of law or prevent manifest injustice.  *See Hutchinson*

*v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Permanent injunctions "typically have both past effects and future implications. Generally, courts have refused to undo the past, executed effects of the judgments, but they have, almost uniformly, recognized that it would be unjust to give prospective effect to a judgment now known to be improper." *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987) (affirming alteration of injunction based on subsequent change in the law); *see also United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932) ("[A] court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong.").

"When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). Courts have specifically recognized that a change in law provides a basis to alter or amend an injunction. *Amado v. Microsoft Corporation*, 517 F.3d 1353, 1361 (Fed. Cir. 2008) ("We conclude that the district court was well within its discretion in this case to reconsider the prospective application of the permanent injunction on remand in light of the Supreme Court's decision in *eBay*.") *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992) (holding that it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show "a significant change either in factual conditions or in law"); *Plyler v. Moore*, 100 F.3d 365, 371 (4th Cir. 1996) ("A judgment providing for injunctive relief, however, remains subject to subsequent changes in the law."); *Valero v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000) ("[T]he vacatur of injunctive orders under Rule 60(b)(5) is governed by the altogether different standards set forth by the Supreme Court in *Agostini v. Felton*, 521 U.S.

3

203, 138 L. Ed. 2d 391, 117 S. Ct. 1997 (1997), where, as here, the vacatur is sought on the grounds of a significant change in fact or law.").

A change in the law is particularly good grounds for modification here, because post-trial briefing has not even begun.  Among the factors present in this case that weigh in favor of altering the Court's Injunction regarding the services-related portion of the Injunction are (1) the relief at issue is prospective in nature, *Ritter*, 811 F.2d at 1402, (2) little time has passed since the Court entered the Injunction, *id.*, and (3) there has been a significant change in the law, *Amado*, 517 F.3d at 1361.  While Courts justifiably may be reluctant to disturb decisions that are long final, here, the appellate process is just beginning, so no such concerns exist.

     B.     <u>The Recent *Global-Tech v SEB* Supreme Court Decision Was a Significant Change in the Law that Eliminates the Basis for the Inducement Portion of the Injunction.</u>

At ePlus's urging, and over Lawson's objection, the jury was instructed using a legal standard on induced infringement that now has been rejected by the Supreme Court in the recent *SEB* case.  *Global-Tech Appliances, Inc., v. SEB S. A.*, __ U.S. __, 2011 U.S. LEXIS 4022, at *21 (Sup. Ct. May 31, 2011).  Specifically, that case overruled the Federal Circuit's law regarding the state of mind required for inducement of infringement, rejecting a reckless disregard standard in favor of a higher standard of actual knowledge or willful blindness.  Thus, the verdict and the services portion of the resulting Injunction are premised on recently-overruled law.  As will be discussed in Lawson's judgment as a matter of law and new trial briefs, the jury's infringement determination should be reversed, or at a minimum remanded for a new trial and the Injunction should be vacated.  The portion of the Injunction that prohibits service-related inducement activities, therefore, cannot stand.

Lawson challenged the indirect infringement instruction prior to the jury charge, explaining that reckless disregard was the improper standard to apply.  (*See* Tr. at 2967:17-20 ("this reckless disregard standard is confusing. As Mr. Robertson noted, the Supreme Court has granted cert on that case, and I just don't think it's good law, and I don't think it makes sense to put it in this case").)  ePlus advocated the reckless disregard standard, asserting, "They announced the standard can be reckless disregard. . . . A case that's on [certiorari] is still the law of the land until and -- if and until the Supreme Court overturns it."  (Tr. at 2967:23-2968:2.) This Court applied law advanced by ePlus, explaining "I'm obligated to apply the Federal Circuit law, not what I think the Court would do, the Supreme Court is going to do."  (Tr. at 2971:11-13.)  Over Lawson's objection the jury was instructed that "knowledge of the patent may be established by a finding that Lawson had actual knowledge of the patent *or* that Lawson ***deliberately disregarded a known risk*** that ePlus had a protective patent."  (Jury Instruction No. 26 (emphasis added).)

The law that the jury was instructed on has been overruled by the Supreme Court. Specifically, the *SEB* Court held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."  *SEB*, 2011 U.S. LEXIS 4022, at \*21. While the Court explained that "willful blindness" could meet that requirement, it explained that standard "surpasses recklessness and negligence."  *Id.* at \*27.  Because the jury here was instructed that the requisite intent required was mere deliberate disregard of a known risk that ePlus had a patent, it was not instructed on the proper law of indirect infringement.  Indeed, both ePlus's and the Court's comments confirm that the Court instructed the jury on the lower standard of intent now rejected.

While the jury made no explicit finding that services constituted induced or indirect infringement, ePlus sought and obtained an Injunction against services based on the jury implicitly finding indirect infringement:

> It is indisputable that the jury's verdict encompasses indirect infringement. *See* Dkt. No. 600. That verdict is supported by substantial evidence at trial from Lawson's own witnesses and documents about the significant installation, implementation, configuration, data migration and conversion, maintenance and support, training and consulting services that Lawson provides.

(Doc. No. 708 at 18.)  The Court adopted this view in granting the Injunction:

> The jury also found that Lawson indirectly infringed the '172 and '683 patents. By fixing, updating, repairing, maintaining, and/or servicing the infringing systems, Lawson engages in indirect infringement because "[w]here use infringes, repair does also, for it perpetuates the infringing use."  Accordingly, every time that Lawson fixes, updates, services, repairs, or maintains the infringing system configurations for its customers, it engages in indirect infringement by perpetuating its customers' infringing use. Lawson's infringement in this manner should therefore be enjoined.

(Doc. No. 728 at 52 (citation omitted, emphasis removed).)  Thus, inducement was the underpinning of the service-related aspects of the Injunction.  Because the inducement findings were based on erroneous instructions to the jury, the inducement portion of the Injunction cannot stand.

Lawson also objected to the instructions because the proper legal standard for the jury instructions regarding inducement is intent to infringe—not merely intent to act.  (*See* Doc. No. 573 at 11 (Lawson proposing the following edit: "ePlus must show that Lawson actually intended to *cause ~~the acts that constitute~~ direct infringement*") (emphasis added).)  ePlus, on the other hand, advanced the lower intent to *act* standard.  (*See* Doc. No. 512 at 25.)  The Court adopted ePlus's lower standard, instructing the jury that "ePlus must show that Lawson actually intended to cause the acts that constitute direct infringement."  (Jury Instruction No. 26.)

This portion of the inducement instruction is also incorrect under the new *SEB* decision. The *SEB* Court explained that intent to act is not enough—induced infringement "requires knowledge that the induced acts constitute patent infringement." *SEB*, 2011 U.S. LEXIS 4022, at *21. The difference is important.  As the *SEB* Court explained by example, it is the difference between a situation where a used car salesman "induced the customer to purchase a car that happened to be damaged, a fact of which the salesman may have been unaware"—which does not give rise to liability—and a situation where "the salesman knew that the car was damaged"— which might give rise to liability.  *Id.* at *10, *21.

Here, the jury was not instructed on the proper law of induced infringement—that the intent requires knowledge that the induced acts constitute patent infringement, not merely intent to induce acts that constitute infringement.  This is a much more stringent standard, and indeed one that ePlus never even purported to meet before, during, or after trial.  Because the new *SEB* case changed the law in a manner that shows the jury was erroneously instructed in this respect as well, the Injunction against services cannot stand.

As such, Lawson seeks an edit to the Order as follows:

it is hereby ORDERED that the Defendant, Lawson Software, Inc. ("Lawson"), . . . are permanently from directly ~~or indirectly~~ making, using, offering to sell, or selling within the United States or importing into the United States any of the following product configurations and/or ~~installation, implementation, design, configuration, consulting,~~ upgrade, ~~maintenance and support and training and other related and associated services~~ and any colorable variations thereof (the "Infringing Products ~~and Services~~"):
***
~~In addition, Lawson is enjoined from:~~
~~(1) Circulating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services; and~~
~~(2) Aiding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services within the United States. This injunction extends to the provision of any instruction, encouragement, installation, implementation, maintenance or support for any of the Infringing Products and Services.~~

7

\*\*\*

It is further ORDERED that, with respect to ~~Lawson's installation, implementation, design, configuration, consulting, upgrade, maintenance, support, training, and other related and associated services for~~ the 277 customers who previously purchased the adjudicated infringing systems detailed above before the verdict and who provide only healthcare services, this Order will not take effect until November 23, 2011.

## II.   This Court Should Clarify that the Servicing Portion of the Injunction Does Not Prohibit Servicing Customers with Respect to those Parts of their Systems that are Common to Non-Infringing Products.

35 U.S.C. § 283 provides: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  Noninfringing uses cannot be enjoined under the statute because they do not violate a right secured by patent.  *Id.*; *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345-46 (1961).

The Federal Circuit "has stressed that a trial court, upon a finding of infringement, must *narrowly tailor* an injunction to fit the specific adjudged violations."  *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (emphasis added); *see aslo Gemveto Jewelry Co. v. Jeff Cooper, Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986) ("injunctive relief should be narrowly tailored to fit the specific legal violations").  Any injunction "cannot impose unnecessary restraints on lawful activity."  *Riles*, 298 F.3d at 1311.  A court may not enter an injunction so broad that it enjoins non-infringing acts.  *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 777 (Fed. Cir. 1993).  "Therefore, the only acts that the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated device."  *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004).

Lawson requests clarification confirming that the Order permits Lawson to service non-infringing components for customers who have "Infringing Products" as defined by the Order.

Customers who have Infringing Products also necessarily have non-infringing components.  The

jury concluded that Lawson's Core S3 Procurement System (comprising LSF, Process Flow, and

the Inventory Control, Requisition, and Purchase Order modules) does not infringe any claim of

the patents-in-suit.  (Doc. No. 600.)  The jury also found the Core Procurement System in

combination with EDI did not infringe any claims of the patents-in-suit.  (*Id.*)  Lawson seeks

confirmation that the Injunction Order does not enjoin Lawson from servicing those non-

infringing products even if the customer also owns the additional components that are required

parts of infringing configurations, namely RSS and Punchout.

    Lawson understands the order as not prohibiting servicing non-infringing products.  It

appears that is not the intent, as prior to the jury verdict ePlus admitted at the pretrial conference

that it was not seeking to enjoin LSF and ProcessFlow:

> THE COURT: Let's play this out and assume you are right. Assume you prove
> that there's infringement of the other things that are charged as infringing. I issue an
> injunction against using those. I do not issue an injunction against the Lawson platform,
> Lawson System Foundation and ProcessFlow.  They can use that to do anything else.

> MR. ROBERTSON: I would agree with that. I would not ask for an injunction
> that would ask to enjoin Lawson Software Foundation, for example, when it's being used
> with financial accounting.

> THE COURT: How would I enjoin it when it is being used with anything else
> that's infringed? As long as I say you can't use the infringing product, period, it doesn't
> make any difference whether you use it with a hamburger patty or a George Foreman
> grill or a computer or these foundations, does it? If you use it, you are, in fact, violating
> the injunction; isn't that right?

> MR. ROBERTSON: No, in this sense, Your Honor, because **it's not an
> infringing apparatus or it's not performing the steps of the method claim** without
> being able to access and utilize the foundation. You can't build a house without a
> foundation, and once you do, the house is a complete house.  That's what's going on
> here.  **So we would not ask to enjoin Lawson System Foundation when it's being
> used with something that doesn't create an entire infringing system.** It's like putting
> together a house. You need that foundation, otherwise the house can't stand up. But if the
> foundation were used to build something else and the patent covered houses that could be
> utilized by people, that is a use in an infringing system.

> THE COURT: **I don't envision any circumstance in which I would enjoin the Lawson System Foundation and ProcessFlow [9] at all.** I would enjoin the use of anything that infringes, and if they used it on that process, of course it would be an infringement, but it wouldn't make any difference if they used it on some other process. It would still be an infringement and a violation -- a violation of the injunction in either case.

(September 27, 2010 Hearing Tr. at 146-47 (Ex. 1) (emphasis added).)  This is consistent with the law, as prohibiting activities related to non-infringing configurations would be contrary to law, as discussed above.  The Injunction Order should not be construed so broadly as to preclude Lawson from servicing the non-infringing configurations because it will improperly restrain non-infringing conduct.  *See Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1366 (Fed. Cir. 1998) ("Judicial restraint of lawful noninfringing activities must be avoided.").  Nevertheless, out of an abundance of caution pending clarification, Lawson ceased servicing the non-infringing products for those customers who also had RSS.  Lawson seeks clarification to assure that its activities are in compliance with the Injunction Order.

The Injunction rightly does not prohibit Lawson's customers from continuing to use the RSS and Punchout products they purchased before the verdict.  (Doc. No. 729.)  The Injunction only enjoins Lawson from selling and servicing the following configurations, all of which include RSS, two including Punchout, and one including EDI:

(1)     Lawson's Core S3 Procurement System (Lawson System Foundation ("LSF") /Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules) and Requisition Self-Service or "RSS";

(2)     Lawson's Core S3 Procurement System (LSF/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules), RSS, and Punchout; and

(3)     Lawson's Core S3 Procurement System (LSF/Process in combination with Inventory Control, Requisition, and Purchase Order Modules), RSS, Punchout, and Electronic Data Interchange or "EDI".

(*Id.*)

Customers who license the configurations found to infringe also license the foundational, multi-use LSF and Process Flow products in connection with non-infringing products and configurations.  LSF and Process Flow support many other non-infringing software products, such as Lawson's Human Resources and Financial Management software systems.  Likewise, S3 Core Procurement System and Core Procurement System with or without EDI were found not to infringe.  All S3 customers subject to the injunction at least have the noninfringing S3 Core Procurement System.  Lawson should not be prohibited from servicing those systems—which include LSF, Process Flow, and other products—or EDI, even if customers also own configurations found to infringe.  Lawson therefore requests that the Court clarify the Order such that Lawson clearly may continue to service S3 Core Procurement System (including LSF or Process Flow) with or without EDI, so long as it does not service the configurations found infringing, which specifically also require the RSS and Punchout modules.

Lawson thus seeks a clarification to the Injunction through an additional section that states:

> This Order does not prohibit Lawson from making, selling, offering for sale, installing, implementing, configuring, consulting, upgrading, maintaining, supporting, or other services directed to the use of LSF and Process Flow with non-procurement modules. This Order also does not prohibit Lawson from making, selling, offering for sale, installing, implementing, configuring, consulting, upgrading, maintaining, supporting, or other services directed to the use of the Core S3 Procurement system (which includes LSF, Process Flow, and other modules) or EDI, either alone, in combination with each other, or in combination with products other than RSS and Punchout.

## III.   The Injunction is Overbroad Because ePlus Failed to Prove Marking by Licensees and Thus is not Entitled to Injunctive Relief for Products that Predate the Filing of the Lawsuit.

As discussed above, an injunction should be modified if it is based on an error of law, especially when the case is not final.  *Amado*, 517 F.3d at 1361; *see also Genentech, Inc. v. Novo*

*Nordisk A/S*, 108 F.3d 1361, 1363 (Fed. Cir. 1997) (vacating preliminary injunction based on an error of law).

The district court ruled that ePlus is not entitled to any damages for past sales.  (*See* Doc. No. 472.)  Nevertheless, the Court enjoined servicing past customers.  The Court denied damages as a sanction under Rule 37, but distinguished cases which bar injunctive or other relief for servicing customers who purchased products pre-suit that were not subject to damages due to failure to mark or laches.  (Doc. No. 728 at 50-59.)  *See Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1555 (Fed. Cir. 1997) (marking case where court held "If a machine was sold under circumstances that did not subject its seller to damages, then subsequent repair cannot subject it to damages. One is entitled to repair that which is sold free of liability for infringement."); *see also Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273-74 (Fed. Cir. 1999) (laches case).

The Court's Injunction Order and accompanying Memorandum do not address the issue of ePlus's failure to contractually require licensee SAP to mark or ePlus's failure to prove that any of its five licensees mark.  While the Court barred damages under Rule 37, that decision did not relieve ePlus of its duty to prove marking in order to obtain injunctive relief for pre-lawsuit sales.  ePlus is not entitled to past damages unless it proved it met the marking requirement.  35 U.S.C. § 287(a) states as follows:

> Patentees, *and persons making, offering for sale, or selling within the United States any patented article for or under them*, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent. . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement. . . ."

*Id.* (emphasis added).  *See generally Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1375 (Fed. Cir. 2008) ("Neither party disputes that [the licensee] Minks Engineering did not mark its

products and that the damages recoverable by [the patent owner] Minks are therefore limited by the date that [the accused infringer] received notice satisfying the requirements of § 287(a).").

Of critical importance here, ePlus must show not only that it marked its own products with the patent number, but that its licensees marked as well. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (explaining that the marking requirement of section 287 applies to both a patentee and to its licensees). The burden of pleading and proving marking sits squarely with ePlus. *See Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) (explaining that the "duty of alleging, and the burden of proving, [marking] is upon the plaintiff"); *Sentry Prot. Prods. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (quoting *Dunlap*). ePlus did not meet its burden.

ePlus never alleged that its licensees mark their products, either in its discovery responses, in the pretrial order, or at trial. (*See* Doc. No. 480 Appendix 12 at 3 (ePlus total response to Lawson Interrogatory 21 requesting "all facts supporting any assertion that SAP marks SAP's products licensed by ePlus" was "ePlus and SAP entered into a license agreement effective December 11, 2006. ePlus has produced this agreement, and it bears the Bates numbers ePLUS0940777-801. This document speaks for itself. As facts regarding SAP's marking policies are more appropriately discovered from SAP, and not from ePlus, ePlus notes its understanding that Lawson is taking the deposition of SAP on May 11."); PX-318 (SAP license does not require marking); 5/11/2010 Gerard Wissing deposition at 52:5-16 (Ex. 2) (SAP witness testifying that SAP does not mark its licensed products with ePlus patent numbers); Doc. No. 480 at 14 ¶ 53 (ePlus, in Amended Final Pretrial Order, alleged it marked its products, but never alleged its licensees marked their products).)

While ePlus touted its five licenses as evidence of commercial success (Tr. at 142:16-23; Tr. at 2619:25-2920:12; Tr. at 2625:5-17; Tr. at 2626:15-25; Tr. at 2628:4-11; Tr. at 2631:1-20; Tr. at 2632:11-20), ePlus did not prove that a single one of its five licensees mark their products. Indeed, the SAP license has no requirement to mark and the SAP witness testified that SAP did not mark.  (*See* PX-318; 5/11/2010 Gerard Wissing deposition at 52:5-16 (Ex. 2).)  In the absence of any proof that ePlus met the marking requirement, an Injunction that bars Lawson from servicing products that it could not obtain damages on is overbroad.

Because the limitation on damages at issue here is failure to mark, there is no basis to distinguish the *Fonar* case, which held that there can be no injunctive relief for servicing pre-suit customers in the absence of marking.  *Fonar*, 107 F.3d at 1555.  Thus, the Injunction should not apply to any licensees of any pre-May 2009 products.  As such, Lawson seeks an amendment to the Order as follows:

> This Order does not prohibit Lawson from directly or indirectly making, selling, offering for sale, installing, implementing, configuring, consulting, upgrading, maintaining, supporting, or other services for any products purchased prior to May 19, 2009.

## III.   Conclusion

For the foregoing reasons, Lawson respectfully requests that this Court modify, amend, and / or clarify the Injunction issued on May 23, 2011.

LAWSON SOFTWARE, INC.


By_____/s/  Robert A. Angle_____
            Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**

1001 Haxall Point, Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339


Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400


*Counsel for Defendant Lawson Software, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of June, 2011, a true copy of the foregoing will be filed

electronically with the Clerk of Court using the CM/ECF system, which will send a notification

of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

 

 

 

 

_____/s/ Robert A. Angle_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

#2061963v1