# EXHIBIT A

10-K 1 form10k.htm EPLUS INC. FORM 10-K 03-31-2011

# UNITED STATES
# SECURITIES AND EXHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended **March 31, 2011**

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from ___ to ___.

Commission file number: **1-34167**

# *e*Plus inc.
(Exact name of registrant as specified in its charter)

| **Delaware** | **54-1817218** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**13595 Dulles Technology Drive, Herndon, VA 20171-3413**
(Address, including zip code, of principal offices)

Registrant's telephone number, including area code: **(703) 984-8400**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $.01 par value | Nasdaq Global Market |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 of Section 15(d) of the Act.
Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.
Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (Section 229.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).
Yes ☐ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See definition of "large accelerated filer", "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act (Check one):

| | | | | |
|---|---:|---:|---:|---:|
| Cost of sales, products and services | 696,370 | 537,128 | 159,242 | 29.6% |
| Professional and other fees | 14,014 | 8,269 | 5,745 | 69.5% |
| Salaries and benefits | 74,706 | 65,224 | 9,482 | 14.5% |
| General and administrative | 13,220 | 12,916 | 304 | 2.4% |
| Total costs and expenses | 798,310 | 623,537 | 174,773 | 28.0% |
| Segment earnings | $ 26,888 | $ 14,606 | $ 12,282 | 84.1% |

*Total revenues.* Total revenues for the year ended March 31, 2011 increased by $187.1 million, or 29.3%, to $825.2 million, due to increased sales of products and services offset by a reduction in patent settlement income. In calendar year 2010, IT spending in most categories increased driven by the general economic recovery, the deferral of IT spending by many customers in prior years, and the investment in new technologies. As a result, demand for our products and services increased over the prior year; however, demand has stabilized during the last two quarters. While we had year over year growth in sales of products and services for each quarter during the year ended March 31, 2011, we experienced a sequential decrease in sales of products and services during the last two quarters. The sequential and year over year change in sales of products and services is summarized below:

| Quarter Ended | Sequential | Year over Year |
|---|---:|---:|
| June 30, 2010 | 5.9% | 25.4% |
| September 30, 2010 | 26.0% | 40.9% |
| December 31, 2010 | (1.1%) | 34.4% |
| March 31, 2011 | (8.1%) | 21.3% |

We rely on our vendors to fulfill shipments to our customers, which have been occurring on a regular basis. Our average open orders for the years ended March 31, 2011 and 2010 were $47.9 million and $41.4 million, respectively. In addition, we had deferred revenue of $30.3 million at March 31, 2011, compared to $22.3 million at March 30, 2010, relating to bundled hardware and service arrangements that were not completed by the end of the year. We recognize revenue on multiple deliverable revenue arrangements when the services are completed.

Patent settlement income decreased due to a settlement and license agreement entered into during the year ended March 31, 2010, with three defendants, wherein the complaint was dismissed with prejudice and each defendant was granted a license in specified ePlus patents. During the years ended March 31, 2011 and 2010, we received $125 thousand and $3.5 million, respectively, of payments related to this settlement agreement.

*Total costs and expenses.* Total costs and expenses for the year ended March 31, 2011 increased $174.8 million or 28.0%, to $798.3 million due to increases in cost of sales, products and services, professional and other fees and salaries and benefits. The increase in cost of sales, products and services was consistent with the increase in sales of products and services. Our gross margin on the sale of products and services improved to 14.7% for the year ended March 31, 2011, from 14.1% in the prior year. The improvement in gross margin was primarily due to changes in the customer product mix as well as additional vendor incentives earned. There are ongoing changes to the incentives programs offered to us by our vendors. Accordingly, we may not be able to maintain the level of manufacturer incentives we are currently receiving, which may cause gross margins to change.

Professional and other fees increased $5.7 million, or 69.5%, to $14.0 million, compared to $8.3 million during the prior year. These increases are primarily due to increased legal and other fees related to the patent infringement litigation, which were $10.5 million and $5.2 million for the years ended March 31, 2011 and 2010, respectively. These types of patent infringement cases are complex in nature, are likely to have significant expenses associated with them. We cannot predict whether we will be successful in our claims for damages, whether any award ultimately received will exceed the costs incurred to pursue these matters, or how long it will take to bring these matters to resolution.

Salaries and benefits expense increased $9.5 million or 14.5% to $74.7 million, compared to $65.2 million during the prior year. This increase is driven by increased commissions associated with the increase in sales and gross profit during the year, as well as an increase in salaries due to an increase the number of employees.

*Segment earnings.* As a result of the foregoing, segment earnings increased $12.3 million, or 84.1%, to $26.9 million for the year ended March 31, 2011.

## Financing Business Segment

The results of operations for our financing business segment for the years ended March 31, 2011 and 2010 were as follows (in thousands):

| | Year Ended March 31, | | | |
|---|---:|---:|---:|---:|
| | 2011 | 2010 | Change | |
| Lease revenue | $ 35,367 | $ 38,107 | $ (2,740) | (7.2%) |
| Fee and other income | 2,460 | 610 | 1,850 | 303.3% |

| | |
|---|---|
| 31.1 | Rule 13a-14(a) and 15d-14(a) Certification of the Chief Executive Officer of *e*Plus inc. |
| 31.2 | Rule 13a-14(a) and 15d-14(a) Certification of the Chief Financial Officer of *e*Plus inc. |
| 32.1 | Section 1350 certification of the Chief Executive Officer and Chief Financial Officer of *e*Plus inc. |

**(b) See item 15(a)(3) above.**

**(c) See Item 15(a)(1) and 15(a)(2) above.**

---

48

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or Section 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

*e*PLUS INC.

/s/ PHILLIP G. NORTON
By: Phillip G. Norton, Chairman of the Board,
President and Chief Executive Officer
Date: June 9, 2011

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

/s/ PHILLIP G. NORTON
By: Phillip G. Norton, Chairman of the Board,
President, Chief Executive Officer
(Principal Executive Officer)
Date: June 9, 2011

/s/ BRUCE M. BOWEN
By: Bruce M. Bowen, Director and Executive
Vice President
Date: June 9, 2011

/s/ ELAINE D. MARION
By: Elaine D. Marion, Chief Financial Officer
(Principal Financial and Accounting Officer)
Date: June 9, 2011

/s/ C. THOMAS FAULDERS, III
By: C. Thomas Faulders, III, Director
Date: June 9, 2011

/s/ TERRENCE O'DONNELL
By: Terrence O'Donnell, Director
Date: June 9, 2011

/s/ LAWRENCE S. HERMAN
By: Lawrence S. Herman, Director
Date: June 9, 2011

/s/ MILTON E. COOPER, JR.
By: Milton E. Cooper, Jr., Director
Date: June 9, 2011

/s/ ERIC D. HOVDE
By: Eric D. Hovde, Director
Date: June 9, 2011

/s/ JOHN CALLIES
By: John E. Callies, Director
Date: June 9, 2011

49

Table of Contents

## ePlus inc. AND SUBSIDIARIES
## INDEX TO FINANCIAL STATEMENTS AND SCHEDULES

|  | PAGE |
|---|---|
| Report of Independent Registered Public Accounting Firm | F-2 |
| Consolidated Balance Sheets as of March 31, 2011 and 2010 | F-4 |
| Consolidated Statements of Operations for the Years Ended March 31, 2011, 2010 and 2009 | F-5 |
| Consolidated Statements of Cash Flows for the Years Ended March 31, 2011, 2010 and 2009 | F-6 |
| Consolidated Statements of Stockholders' Equity for the Years Ended March 31, 2011, 2010 and 2009 | F-8 |
| Notes to Consolidated Financial Statements | F-9 |

F-1

Table of Contents

**REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

To the Board of Directors and Stockholders of ePlus inc.
Herndon, Virginia

We have audited the accompanying consolidated balance sheets of ePlus inc. and subsidiaries (the "Company") as of March 31, 2011 and 2010, and the related consolidated statements of income, stockholders' equity, and cash flows for each of the three years in the period ended March 31, 2011. Our audits also included the financial statement schedules listed in the Index at Item 15. We also have audited the Company's internal control over financial reporting as of March 31, 2011, based on criteria established in *Internal Control — Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission. The Company's management is responsible for these financial statements and financial statement schedules, for maintaining effective internal control over financial reporting, and for its assessment of the effectiveness of internal control over financial reporting, included in the accompanying Management's Report on Internal Control Over Financial Reporting. Our responsibility is to express an opinion on these financial statements and financial statement schedules and an opinion on the Company's internal control over financial reporting based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement and whether effective internal control over financial reporting was maintained in all material respects. Our audits of the financial statements included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. Our audit of internal control over financial reporting included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. Our audits also included performing such other procedures as we considered necessary in the circumstances. We believe that our audits provide a reasonable basis for our opinions.

A company's internal control over financial reporting is a process designed by, or under the supervision of, the company's principal executive and principal financial officers, or persons performing similar functions, and effected by the company's board of directors, management, and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

F-2

Table of Contents

Because of the inherent limitations of internal control over financial reporting, including the possibility of collusion or improper management override of controls,