# EXHIBIT G

1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE EASTERN DISTRICT OF VIRGINIA
 3                        RICHMOND DIVISION
 4
 5     ----------------------------------------
                                               :
 6     ePLUS, INC.                             :   Civil Action No.
                                               :   3:09CV620
 7     vs.                                     :
                                               :
 8     LAWSON SOFTWARE, INC.                   :   July 28, 2010
                                               :
 9     ----------------------------------------
10
11         COMPLETE TRANSCRIPT OF THE MOTIONS HEARING
12           BEFORE THE HONORABLE ROBERT E. PAYNE
13                UNITED STATES DISTRICT JUDGE
14
       APPEARANCES:
15
       Scott L. Robertson, Esquire
16     Michael G. Strapp, Esquire
       Jennifer A. Albert, Esquire
17     Goodwin Procter, LLP
       901 New York Avenue NW
18     Suite 900
       Washington, D.C.  20001
19
       Craig T. Merritt, Esquire
20     Christian & Barton, LLP
       909 East Main Street
21     Suite 1200
       Richmond, Virginia  23219-3095
22     Counsel for the plaintiff
23
24               Peppy Peterson, RPR
                 Official Court Reporter
25             United States District Court
```

```
 1   anybody on 101 -- 112, description, enablement, and
 2   indefiniteness, because Hilliard didn't opine on those issues.
 3   Is that a correct assertion, in your view?
 4           MS. STOLL-DeBELL:  Yes, I think it is.
 5           THE COURT:  So in essence what you are asking me to
 6   do is to grant judgment for you because they had their foot off
 7   base, i.e., they're going to be at the point where they don't
 8   have any testimony, and a Rule 50 motion would have to be
 9   granted at the end of the case, and we'd be going through all
10   this for nothing insofar as they're concerned, and so I think I
11   understand.  Is there anything else that you've got to argue?
12           MS. STOLL-DeBELL:  No, I don't think so.
13           THE COURT:  You've made quite a good argument, and
14   it's a forceful one and a right one, but in many respects, I
15   think the Court has got to be mindful of the fact that perhaps
16   it played a role in this situation as well, and when that
17   happens, the Court has to be somewhat more understanding than
18   when the parties are on their own, do something that is
19   prohibited by an order.  So that's kind of what's on my mind,
20   and if you want to address any of that, you can.
21           MS. STOLL-DeBELL:  I just think Lawson didn't do
22   anything wrong here for this particular issue.
23           THE COURT:  You didn't, and I don't think he's argued
24   for one minute that you did anything wrong with respect to what
25   you designated and how you interpreted things.  He did say you
```

1    should have raised it earlier with me and with them, and
2    perhaps there's some truth to that.
3            MS. STOLL-DeBELL:  So my response to that is, Lawson
4    should not have to suffer for this, and we will suffer unless
5    you grant our motion.  If we have to do a continuance and look
6    at hiring another expert, that's substantially more cost in a
7    case that has cost already a lot of time and money, frankly,
8    Your Honor.
9            THE COURT:  I'm well aware of that one.
10           MS. STOLL-DeBELL:  So, you know, and allowing them to
11   just get by with violating this rule and put on two experts is
12   not fair to Lawson either.  It's very prejudicial.
13           THE COURT:  I understand your point.
14           MS. STOLL-DeBELL:  I would ask that you keep those
15   things in your mind, Your Honor.
16           THE COURT:  I've had them in my mind as I've been
17   reading these things.  I understand where you are and what the
18   situation is.  It's clear from the papers.  I probably could
19   have decided this without argument, but I felt like it was only
20   fair to hear.  Okay, thank you.
21           Well, the scheduling order says only one expert per
22   discipline is permitted except by order of the Court.  In
23   February, or in March, I guess it was -- when was it you made
24   your disclosures, 16(b) that you rely on?
25           MS. STOLL-DeBELL:  October.

1          THE COURT: October, yes. October ePlus identifies
2     its experts, describes their fields of expertise, and there's
3     significant overlap in them, very significant overlap. And
4     then there is identified what the true state of affairs is when
5     the expert reports are filed. And as it turns out, Mr. Weaver
6     is addressing both infringement and invalidity, and Mr.
7     Niemeyer is addressing a basic subject related to the issue of
8     infringement that is needed by Mr. Weaver in order to formulate
9     his opinions. Mr. Hilliard is addressing just two components
10    of the aspect of invalidity.
11         Right after that occurred -- when were those reports
12    filed, the infringement report?
13         MS. STOLL-DeBELL: I believe it was May 5th.
14         THE COURT: Within a couple of days after that, the
15    defendants complained of the problem to ePlus, and ePlus --
16    neither ePlus nor the defendants then came to the Court and
17    raised it at a point in time when something could have been
18    done about it.
19         Something can be done about it now, and then mindful
20    of the scheduling for motions *in limine*, ePlus thought the best
21    way to deal with it, after they got Lawson's response, was to
22    file a motion *in limine* promptly which they did and acted
23    properly in doing that.
24         The problem that I see here is that the Court has a
25    role in not clarifying what "one per discipline" means, and it

1   is not right for the parties to be saddled with the
2   consequences of the Court's failure to be precise in its
3   orders.
4           Mr. Robertson is correct that the purpose of that
5   provision is to avoid redundant, cumulative expert testimony
6   and the situation that is presented when you have three experts
7   testifying essentially to the same thing and you're trying
8   to -- and one side is forced then to try to meet the number of
9   experts that the other side puts on.
10          That was the intent of the provision, and it's the
11  way it's been applied over the years.  So I can't say ePlus's
12  interpretation of the word "discipline" is wrong in perspective
13  of its representations that there will be no overlapping
14  testimony.  I can't say either that the testimony -- that the
15  interpretation of Lawson was wrong in respect of its
16  interpretation of the matter.
17          Under the circumstances, it's important to remember
18  that under Rule 1 of the Federal Rules, it is the purpose of
19  all the rules, federal and local, to achieve a prompt or a
20  speedy, just, and efficient resolution of cases.  So this rule,
21  this order has to be interpreted in respect of the basic
22  concepts of fairness and justice as well.
23          Doing that in this case under the circumstances of
24  this case, so long as there isn't any overlapping testimony,
25  justice can best be served by denying this motion and allowing

1   ePlus leave to have either -- I mean Lawson, excuse me, it's
2   been a long day -- to have time to have another expert if it so
3   desires if it feels like it's disadvantaged in the area of
4   source code.  I think that -- I'm sure that your own people,
5   you can probably do that in-house, but if you need to go
6   outside, you can go outside, and you can meet Mr. Hilliard's
7   testimony with another expert if you so desire.
8           I think that in that way -- I regret the Court's
9   failure to define the matter more precisely, and I regret that
10  you all didn't bring this to me when it first came up, because
11  I would have solved it by extending your time for getting
12  experts and giving you some extra leeway had it been brought to
13  me, but I don't think that the result that should obtain here,
14  notwithstanding that you all didn't come to the Court as early
15  as you should have, is to prejudice the outcome of the case by
16  striking experts which will, in effect, mean that one party or
17  the other is left without evidence on a topic thereby
18  resulting, or almost assuredly resulting, in a Rule 50(b)
19  motion that will be based on something that's artificial and
20  not in the interest or the spirit of the enforcement of the
21  rules, nor do I think it's fair to keep Lawson tied to where it
22  is right now.
23          It doesn't have to have any other experts.  I need
24  for you to fish or cut bait very quickly, but you have every
25  right to talk to your client and caucus among yourselves, and I

1   didn't really mean to put you in the position that you had to
2   answer right today, but you handled it correctly by saying you
3   had to go talk to somebody, and you're absolutely right.  You
4   had to.
5           So that will be the ruling in this motion.  How much
6   more do we have in the way of motions?  How many, Mr. --
7           MR. McDONALD:  I think we have two left, Your Honor,
8   one on the demonstration system and the other on the third
9   party, the South Jersey customer's deposition, and two
10  demonstrations.
11          THE COURT:  I think we ought to take a little break.
12  I'll tell you, I'm worried Ms. Peterson is going on strike here
13  anyway, so we'll take about a 15-minute recess, and then we'll
14  try to finish these up this afternoon.
15
16          (Recess taken.)
17
18          THE COURT:  Which goes first, ePlus's four or
19  Lawson's nine?  Excuse me, Mr. Robertson.
20          MR. ROBERTSON:  Sorry, Judge.
21          THE COURT:  Which goes first, ePlus's four or
22  Lawson's nine?  They both are demonstrations sort of generally.
23          MS. ALBERT:  I'll address ePlus number four first if
24  the other side doesn't --
25          THE COURT:  Is that okay with you?

```
 1            THE COURT:  August 19th.  Both of you have some
 2   problems in the case, folks, problems that warrant a serious
 3   look at whether you're going to settle it or not, and I will
 4   say -- I wasn't saying this for settlement purposes.  I
 5   genuinely believe that your damages case takes a hit for the
 6   reasons that I expressed, and I wasn't trying to communicate
 7   that for purposes of inviting you all to settle, but whereas
 8   here you have liability problems, and you might make sure you
 9   communicate this to Mr. McDonald, and you do, I think, have
10   some liability problems, and they have damage problems.
11            That usually provides a reasonably efficacious way in
12   which to try to reach an accommodation that businesspeople can
13   live with.  All right?  Thank you.  We will be in adjournment.
14
15                     (End of proceedings.)
16
17
18            I certify that the foregoing is a correct transcript
19   from the record of proceedings in the above-entitled matter.
20
21
22        _____/s/_____              _____
          P. E. Peterson, RPR                   Date
23
24
25
```