**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAWSON SOFTWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF *e*PLUS INC.'S BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 50(B) OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(A)**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Counsel for Plaintiff ePlus Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARDS ...................................................................................................2

    A. Judgment As A Matter of Law..............................................................................2

    B. Direct Infringement...............................................................................................3

    C. Induced Infringement............................................................................................3

    D. Contributory Infringement ...................................................................................6

III. ARGUMENT...................................................................................................................6

    A. Defendant's Infringing System Configurations ...................................................6

    B. The Functionality Of The Accused Systems Was Established At Trial .................8

        1. No Reasonable Jury Could Find That The Accused Systems
            Function Without Catalogs ........................................................................ 8

        2. No Reasonable Jury Could Find That The Accused Systems Lack
            The Capability To Select Product Catalogs To Search And Search
            Them ....................................................................................................... 11

    C. Undisputed Functionality Common To All Five Configurations ..........................12

    D. Additional Functionality Specific To Certain Infringing Configurations.............14

        1. No Reasonable Jury Could Find That The RSS Application Does
            Not Include The Capability To Cross Reference Between Items
            From Different Sources............................................................................ 14

        2. No Reasonable Jury Could Find That The EDI Application Does
            Not Include The Capability To Determine Availability Of An Item
            In Inventory............................................................................................ 15

        3. No Reasonable Jury Could Find That The Punchout System
            Configurations Do Not Maintain Multiple Catalogs ............................... 16

    E. No Reasonable Jury Could Find That Defendant Did Not Directly Infringe
       The '516 And '683 Patents ...................................................................................18

        1. Defendant Directly Infringes Claims 1 And 6 Of The '516 Patent
            With Configuration Nos. 1 Through 5...................................................... 18

        2. Defendant Directly Infringes Claim 2 Of The '516 Patent With
            Configuration Nos. 3 And 5...................................................................... 20

        3. Defendant Directly Infringes Claims 9 And 29 Of The '516 Patent
            With Configuration Nos. 2, 3 And 5.......................................................... 20

        4. Defendant Directly Infringes Claims 21 And 22 Of The '516
            Patent With Configuration Nos. 2, 3 And 5............................................... 22

     5.    Defendant Directly Infringes Claim 3 Of The '683 Patent With Configuration Nos. 2, 3, And 5 ............................................................. 23

F.    No Reasonable Jury Could Find That Defendant Did Not Indirectly Infringe The '516 And '683 Patents ................................................................25

     1.    Defendant Induces Infringement Of The '683 And '516 Patents ............ 25

     2.    Defendant Contributes To Infringement Of The '516 And '683 Patents ...................................................................................................... 29

IV.    CONCLUSION ......................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMC Res., Inc. v. Paymentech, L.P.,*
  498 F.3d 1373 (Fed. Cir. 2007) ................................................................. 3

*Broadcom Corp. v. Qualcomm Inc.,*
  543 F.3d 683 (Fed. Cir. 2009) ........................................................ 4, 5, 27

*Dolly v. Spalding & Evenflo Cos., Inc.,*
  16 F.3d 394 (Fed. Cir. 1994) ...................................................................... 3

*DSU Med. Corp. v. JMS Co.,*
  471 F.3d 1293 (Fed. Cir. 2006) .............................................................. 4, 6

*Fantasy Sports Props. v. Sportsline.com, Inc.,*
  287 F.3d 1108 (Fed. Cir. 2002) ................................................................. 3

*Fellowes, Inc. v. Michilin Prosperity Co.,*
  491 F. Supp.2d 571 (E.D. Va. 2007) ......................................................... 2

*Finjan, Inc. v. Secure Computing Corp.,*
  626 F.3d 1197 (Fed. Cir. 2010) ................................................................. 3

*Global-Tech Appliances, Inc. v. SEB S.A.,*
  536 U.S. __, 2011 WL 2119109 (May 31, 2011) .................................... 4, 5

*Hilgraeve Corp. v. Symantec Corp.,*
  265 F.3d 1336 (Fed. Cir. 2001) ................................................................. 3

*Humanscale Corp. v. Compx Int'l, Inc.,*
  2010 WL 3222411 (E.D. Va. Aug. 16, 2010).............................................. 2

*i4i Ltd. Partnership v. Microsoft Corp.,*
  598 F.3d 831 (Fed. Cir. 2010), *aff'd on other grounds*, 536 U.S. __, 2011 WL 2224428
  (June 9, 2011) ............................................................................................. 4

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner Gmbh,*
  408 F.3d 1374 (Fed. Cir. 2005) .............................................................. 2, 4

*LNP Eng'g Plastics, Inc. v. Kawasaki Chem. Holding Co.,*
  275 F.3d 1347 (Fed. Cir. 2001) ................................................................. 2

*Lovell v. BBNT Solutions, LLC,*
  295 F. Supp.2d 611 (E.D. Va. 2003) ......................................................... 1

*MEMC Elec. Mat., Inc. v. Mitsubishi Materials Silicon Corp.,*
  420 F.3d 1369 (Fed. Cir. 2005) ................................................................. 5

*Mentor H/S Inc. v. Medical Device Alliance, Inc.,*
  244 F.3d 1365 (Fed. Cir. 2001) ............................................................ 6, 29

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
  370 F.3d 1354 (Fed. Cir. 2004) ................................................................. 5

iii

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)...............................................................................................5

*Monolithic Power Sys., Inc. v. O2 Micro Int'l. Ltd.*,
   476 F. Supp.2d 1143 (N.D. Cal. 2007), *clarified on other grounds on denial of
reconsideration*, 2007 WL 110861 (N.D. Cal. 2007).............................................5

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
   536 F.3d 1256 (Fed. Cir. 2008) ............................................................................2

*Ray v. CSX Transp. Inc.*,
   189 Fed. Appx. 154 (4th Cir. 2006)......................................................................2

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988) ..............................................................................4

**Statutes**

35 U.S.C. § 271.........................................................................................3, 4, 6, 26

**Rules**

Fed. R. Civ. P. 50.........................................................................................1, 2

Fed. R. Civ. P. 59.........................................................................................1

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(b),[1] Plaintiff *ePlus* Inc. ("*ePlus*") renews its motion for judgment as a matter of law that all of the accused configurations of systems made, sold and offered for sale by Defendant Lawson Software, Inc. ("Lawson") directly infringe or can be used to directly infringe all of the asserted claims, and that Lawson induces and contributes to the infringing use of such systems.[2]  The undisputed evidence proven through admissions of Defendant's own witnesses and in its documents, as well as the irrefutable demonstrations of the accused systems in operation, establish beyond doubt that Defendant infringes all the asserted claims of *ePlus*'s patents-in-suit.  No reasonable jury could have found otherwise.[3]

In response to overwhelming evidence of infringement, Defendant's sole non-infringement position was based upon a mischaracterization of the Court's construction of "catalog" and the term "published by a vendor" that was included in that construction.  Defendant's mischaracterizations at trial required the Court to make a mid-course correction and provide the jury with the proper meaning of that term.  Once Defendant's smokescreen was lifted, there should have been no dispute that each accused system configuration contains

---

[1] Under Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."

[2] In the alternative, pursuant to Fed. R. Civ. P. 50(b) and 59(a), *ePlus* requests that the Court grant a new trial as to those non-infringement findings. Rule 59(a) provides that the court may grant a new trial on all of some of the issues after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court. *See also Lovell v. BBNT Solutions, LLC,* 295 F. Supp.2d 611, 617-18 (E.D. Va. 2003) (court may set aside verdict and grant new trial if verdict (i) is against the clear weight of the evidence; (ii) is based upon evidence which is false; or (iii) will result in a miscarriage of justice).

[3] Indeed, although the Court reserved judgment on *ePlus*'s JMOL, it stated that "[If] I'm the trier of fact, I would clearly find that there is infringement of everything that Dr. Weaver said, ... I personally am having real trouble deciding why there's any defense to infringement at all."  Tr. 2849:8-25.  (Excerpts of the trial transcript are submitted as Ex. A.)

multiple "catalogs" that are "published by a vendor." Thus, each accused system directly infringes the asserted claims. The evidence was also overwhelming that Defendant induces and contributes to its customers' infringing uses of such systems. *e*Plus is entitled to judgment of infringement of all asserted claims as a matter of law.

## II.    LEGAL STANDARDS

### A.    Judgment As A Matter of Law

Judgment as a matter of law "is appropriate when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008). The Court should "overturn a jury's verdict only if, upon the record before the jury, reasonable jurors could not have reached that verdict." *LNP Eng'g Plastics, Inc. v. Kawasaki Chem. Holding Co.*, 275 F.3d 1347, 1353 (Fed. Cir. 2001).[4] If "a party moved for judgment as a matter of law on an issue prior to the case going to the jury, then it may renew its JMOL on that issue after the trial." *Humanscale Corp. v. Compx Int'l, Inc.*, 2010 WL 3222411, at *1 (E.D. Va. Aug. 16, 2010). In determining whether to grant JMOL under Rule 50(b), the Court "must examine the evidence in the light most favorable to the non-moving party and determine whether a reasonable trier of fact could draw only one conclusion from the evidence." *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp.2d 571, 576-577 (E.D. Va. 2007) (citations omitted); *see also Ray v. CSX Transp. Inc.*, 189 Fed. Appx. 154, 159 (4th Cir. 2006) ("Under Rule 50(b), [the] inquiry is whether a jury, viewing the evidence in the light most favorable to [the non-moving

---

[4] "The grant or denial of [JMOL] is a procedural issue not unique to patent law, [and is] reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Imonex Serv. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005). While *LNP* involved an appeal from a district court in the Third Circuit, the Third Circuit standard for grant of JMOL is substantially identical to that of the Fourth Circuit.

party], could have properly reached the conclusion reached by this jury.").

### B.     Direct Infringement

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  To show infringement, the patentee must establish that the accused device includes every element of the claim or an equivalent of each element.  *Dolly v. Spalding & Evenflo Cos., Inc.,* 16 F.3d 394, 397 (Fed. Cir. 1994).

As the Court recognized throughout the trial, an accused product or process infringes if it is reasonably capable of satisfying the claim elements, even though it may also be capable of operating in a way that does not infringe.  *See, e.g., Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Fantasy Sports Props. v. Sportsline.com, Inc.,* 287 F.3d 1108, 1118-19 (Fed. Cir. 2002); *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).  Whether a product or process may be used in a manner that does not infringe the patent is not a defense if Defendant's product or process is also reasonably capable of a use that infringes the patent.  *Hilgraeve,* 265 F.3d at 1343.

Although direct infringement of a method claim generally requires that one party perform every step of the claimed method, direct infringement may be found where one party exercises "control or direction" over the claimed process such that every step is deemed attributable to the controlling party.  *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1380 (Fed. Cir. 2007).  The law thereby imposes vicarious liability on a party for the acts of another in such circumstances.  *Id.* at 1379.  "A defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf." *Id.*

### C.     Induced Infringement

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement

of a patent shall be liable as an infringer." 35 U.S.C. §271(b).  To prove infringement under

Section 271(b), ePlus must show (1) direct infringement of an asserted claim by a third party,

and (2) that Defendant had knowledge that the induced acts constitute patent infringement.

*Global-Tech Appliances, Inc. v. SEB S.A.*, 536 U.S. __, 2011 WL 2119109 *7 (May 31, 2011);

*see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant

part) (must show that "the alleged infringer knew or should have known that his actions would

induce actual infringement").  For induced infringement of a method claim, the direct

infringement exists where at least one person performed the method claimed.  *i4i Ltd.*

*Partnership v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), *aff'd on other grounds*, 536

U.S. __, 2011 WL 2224428 (June 9, 2011) .

   The law is firmly established that the infringer's intent to induce infringement may be,

and typically is, established through circumstantial evidence.  *Broadcom Corp. v. Qualcomm*

*Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2009) ("There is no requirement that direct evidence be

introduced, nor is a jury's preference for circumstantial evidence over direct evidence

unreasonable *per se*."); *see also Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir.

1988) (intent to induce "may be inferred from all of the circumstances.").[5]

   To the extent that the intent requirement for inducement encompasses some form of

knowledge or awareness of the patent, the Supreme Court has recently held that "willful

blindness" suffices to meet that requirement.  *Global-Tech*, 536 U.S. at __, 2011 WL 2119109 at

**7-10 (affirming inducement verdict).[6]  A willfully blind defendant is "one who takes deliberate

---

[5] The display of marked products at trade shows and advertising literature stating that the
products were patented may constitute relevant circumstantial evidence of such notice.  *Imonex*
*Servs.*, 408 F.3d at 1377-78.

[6] It is undisputed that Defendant has had actual knowledge of the patents-in-suit since no later
than the filing of the complaint.  Tr. 1569:25-1570:4 (Christopherson); Tr. 1065:4-1067:24

actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at \*9. "[D]efendants cannot escape the reach of [the] statute[] by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances." *Id.* at \*8. Such defendant is "just as culpable as those who have actual knowledge." *Id.*

Conduct such as advertising infringing uses, instructing how to engage in infringing uses, demonstrating infringing uses, and recommending infringing uses, is strong evidence of specific intent to cause the acts that constitute direct infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *MEMC Elec. Mat., Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378-80 (Fed. Cir. 2005); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).[7] Further, that an accused inducer desires to profit from sales of products that might be used to infringe may also be indicative of intent to cause the direct infringement. *Grokster*, 545 U.S. at 939-40. In evaluating Defendant's intent, the jury may consider all the circumstances, including the absence of an opinion of counsel of non-infringement and invalidity. *Broadcom*, 543 F.3d at 698-700. Additional (albeit non-exclusive) circumstances that are evidence of Defendant's intent to induce infringement may include whether it worked closely with its customers to develop and support the accused products, and whether it failed to make changes to its products or instruct its customers how to

---

(Lohkamp). This actual knowledge clearly suffices to form the basis for indirect infringement continuing since that time. *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 476 F. Supp.2d 1143, 1158 (N.D. Cal. 2007), *clarified on other grounds on denial of reconsideration*, 2007 WL 110861 (N.D. Cal. 2007) (denying summary judgment of no contributory infringement based on contention that defendant lacked actual notice of patent until served with complaint).

[7] Although *Grokster* was not a patent case, the Supreme Court noted the similarities between induced infringement in copyright and patent law, and the Federal Circuit has repeatedly cited it approvingly for its guidance on inducing patent infringement. *See, e.g., MEMC*, 420 F.3d at 1379.

avoid infringement after becoming aware of the patents.  *Id.* at 700.

### D.      Contributory Infringement

Section 271(c) of the Patent Act provides that "[w]hoever offers to sell or sells within the United States ... a component of a patented machine, manufacture, combination, ... or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  Contributory infringement therefore requires that: (1) Defendant made and/or sold the accused product; (2) the accused product has no substantial non-infringing use in its accused configuration; (3) Defendant "engaged in conduct (made sales) within the United States that contributed to another's direct infringement;" and (4) a third party engaged in an act of direct infringement on those sales that Defendant made in the United States. *DSU.* 471 F.3d at 1303.  For contributory infringement, the intent requirement is "minimal." *Id.*

Evidence showing a lack of any other actual noninfringing use is sufficient to support a finding of a non-staple article of commerce.  *See, e.g., Mentor H/S Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing JMOL of noninfringement because the record did not indicate any other actual use of the device except for the patented ultrasonic liposuction procedure).

## III.   ARGUMENT

### A.      Defendant's Infringing System Configurations

During trial, the jury was presented with irrefutable evidence that multiple configurations of Defendant's S3 Procurement System and procurement applications infringe one or more asserted claims of the patents-in-suit.  A summary of the accused configurations is provided in the following table.  *See also* Ex. B (Weaver system configurations demonstrative).

| Accused System Configuration | Description | Asserted Claims[8] |
|---|---|---|
| Configuration No. 1 | Lawson's Core S3 Procurement System (Lawson System Foundation and ProcessFlow in combination with the Inventory Control, Requisitions, and Purchase Order modules). | '516 Patent, claims 1 and 6. |
| Configuration No. 2 | Lawson's Core S3 Procurement System (Lawson System Foundation and ProcessFlow in combination with the Inventory Control, Requisitions, and Purchase Order modules) coupled with its Requisitions Self-Service application ("RSS"). | '683 Patent, claims 3 and 28.<br><br>'516 Patent, claims 1, 6, 9, 21, 22, and 29.<br><br>**'172 Patent, claim 1.** |
| Configuration No. 3 | Lawson's Core S3 Procurement System (Lawson System Foundation and ProcessFlow in combination with the Inventory Control, Requisitions, and Purchase Order modules) coupled with RSS and its Procurement Punchout application ("Punchout"). | **'683 Patent, claims 3, 26, 28, and 29.**<br><br>'516 Patent, claims 1, 2, 6, 9, 21, 22, and 29.<br><br>**'172 Patent, claim 1.** |
| Configuration No. 4 | Lawson's Core S3 Procurement System (Lawson System Foundation and ProcessFlow in combination with the Inventory Control, Requisitions, and Purchase Order modules) coupled with its EDI application ("EDI"). | '683 Patent, claim 26.<br><br>'516 Patent, claims 1 and 6. |
| Configuration No. 5 | Lawson's Core S3 Procurement System (Lawson System Foundation and ProcessFlow in combination with the Inventory Control, Requisitions, and Purchase Order modules) coupled with RSS, Punchout, and EDI. | **'683 Patent, claims 3, 26, 28, and 29.**<br><br>'516 Patent, claims 1, 2, 6, 9, 21, 22, and 29.<br><br>**'172 Patent, claim 1.** |

---

[8] Claims that the jury found to be infringed by the corresponding configuration of the accused systems are noted in bold. The asserted claims of the '683 and '516 Patents are in Exs. D and E, respectively.

Following trial, the jury rendered a verdict that Configuration No. 2 infringes claim 1 of the '172 Patent, and that Configuration Nos. 3 and 5 infringe claims 3, 26, 28, and 29 of the '683 Patent, and claim 1 of the '172 Patent.[9]

## B.     The Functionality Of The Accused Systems Was Established At Trial

Defendant's own documents and witnesses conclusively established the infringing functionality of each configuration of the accused systems such that no reasonable jury could find in Defendant's favor with respect to any of the asserted claims.

### 1.     No Reasonable Jury Could Find That The Accused Systems Function Without Catalogs

The centerpiece of Defendant's non-infringement defense, based upon a distorted reading of the Court's claim construction, was its contention that the core S3 Procurement System did not include multiple catalogs that were "published by a vendor."  No doubt this improper argument confused the jury.  But there is no legally sufficient evidentiary basis to support a finding that the accused systems do not include "catalogs" that were "published by a vendor" as defined by the Court, particularly where, as here, Defendant's own documents and witnesses confirmed that thousands of product catalogs "made generally known or disclosed" by vendors are loaded into the item master of the core S3 Procurement System.

The Court construed "catalog" as:

> an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors), which preferably includes a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

---

[9] Pursuant to the Parties' Stipulation With Respect To M3 Infringement, as set forth in the Revised Amended Final Pretrial Order (Dkt. No. 481) at Section II, because *e*Plus proved that the aforementioned system configurations infringe claims 3, 26, 28, and 29 of the '683 Patent, and claim 1 of the '172 Patent, *e*Plus also proved that Defendant's M3 e-Procurement Software infringes claims 3, 26, 28, and 29 of the '683 Patent, and claim 1 of the '172 Patent.

Dkt. No. 204 at 11. Indeed, this was the construction proposed by Defendant. During trial, the Court construed "published by a vendor" — part of the Court's construction of "catalog" — to mean:

> at some point in time, a vendor such as a supplier, a manufacturer, or a distributor has made generally known or has disclosed an organized collection of items and associated information preferably but not necessarily including a part number, price, catalog number, vendor name, vendor ID, a textual description of the item, and images of or relating to the item.

Tr. 1888:8-16 (Court). *See also* Jury Inst. No. 20 (Ex. C).

Uncontested evidence demonstrated that vendor catalog data is loaded into the item master and vendor item tables (collectively, the "item master"), which are found in the core S3 Procurement System components included in all five system configurations. These vendor catalogs each comprise an organized collection of items and associated information, a fact conceded by Defendant's own infringement expert. Tr. 1879:20-1880:11 (Shamos). It was further conceded that the items in these vendor catalogs include data fields such as part numbers, prices, catalog numbers, vendor names, vendor IDs, textual descriptions of items, UNSPSC codes, images, and multiple user-defined fields. *See, e.g.,* Tr. 1000:13-1001:20; 1048:18-1052:1 (ability to have vendor catalogs in S3 Procurement system is "fully provided out of the box") (Lohkamp); Tr. 1607:24-1608:16 (Christopherson); Tr. 1879:20-1880:11 (1896:20-24 (Shamos). *See also* PX-118 (RFP Resp. to Cherry Creek School Dist.) at LE00429193 (S3 Procurement System enables you to establish catalogs by vendor), LE00429358; PX-149 (RFP Resp. to Holland Hospital) at L0092759, L0092767 (S3 system can "produce supply catalogs by item number, manufacturer, vendor"); Tr. 613:22-614:13 (Weaver); Tr. 1236:22-25, 1239:14-18, 1265:17-1266:13 (Niemeyer). Defendant's customers also testified that they maintain thousands of supplier catalogs within the S3 system item master. Matias Dep. (PX-520A) at 14:20-25;

19:9-13 (Robert Wood Johnson Hospital maintains 3000 vendor catalogs); Tr. 1707:14-23 (Yuhasz) (Novant maintains 10,000 vendor catalogs).

The only point that Defendant disputed was whether these catalogs were "published by a vendor." *See, e.g.,* Tr. 1886:23-1887:4 (Shamos). But, as acknowledged by Defendant's corporate representative, the vendor discloses and makes generally known to the system user the catalog item information that is loaded into the item master. Tr. 1593:9-12 (Christopherson) ("Q: The vendor provides the item catalog information that ends up in the item master; isn't that right? A: That is some of the information that ends up there.); *see also* Tr. 1591:15-1592:1 ("Q: It's the vendor that provides the item catalog in a CSV format; is that right? A: That's correct. Q: The vendor discloses or makes known that item information in that CSV format, correct? ... A: To the customer, yes."); 1593-1606:12 (conceding that catalog item data disclosed by a vendor and imported into the S3 item master includes vendor item number, item description, unit of measure, item cost, UNSPSC codes and other data); 1607:9-1613:4 (System with EDI module can receive a catalog file from a vendor that contains data for each item including the vendor's item description, vendor identifier, price, unit of measure, vendor's catalog number); 1620:23-1621:3; 1627:13-24; *see also* PX-521 at LE01280421 ("Vendor Agreement Import: a process used to load vendor item information into the Lawson system"); and at LE01280428 (illustrating step of "vendor provides item catalog in CSV format" through step of "create Item Master/Vendor Item records"). Because each of the five system configurations includes the item master, each system configuration can store thousands of vendor item catalogs that were published by a vendor.

2.    **No Reasonable Jury Could Find That The Accused Systems Lack The Capability To Select Product Catalogs To Search And Search Them**

Demonstrations of the accused systems and Defendant's own documents conclusively established that the user interface included in each system configuration enables a user to select product catalogs to search. *See, e.g.,* PX-376 (demonstration); PX-374 (screenshots for PX-376); Tr. 631:2-653:3 (Weaver narrating demonstration); PX-280 (RFP Resp. to Presbyterian Healthcare) at LE00206848-49; PX-136 (RSS Presentation) at LE02932713; PX-368 (demonstration); PX-367 (screenshots for PX-368); PX-380 (demonstration); PX-379 (screenshots for PX-379); PX-361. For example, it was admitted that a user could input a vendor name into the search user interface and select vendor catalogs to search. Tr. 1604:7-23 (Christopherson); Tr. 1902:7-12 ("You could search by that vendor name"); 1929:12-16 (Shamos).

Further, the jury saw and heard irrefutable evidence that each system configuration has the capability to search within the selected product catalogs by a number of criteria, including vendor, manufacturer, catalog number, and partial item description. Tr. 1054:18-1055:22 (can search by vendor catalog number, partial item description, vendor name, manufacturer name, classification code) (Lohkamp); PX-170 (RFP Resp. to CML Healthcare) at L0068883-84 (can search catalogs by vendor, manufacturer, catalog number, partial item description, classification codes); PX-215 (RFP Resp. to Jackson Health Care) at L0096172; PX-280 (RFP Resp. to Presbyterian Healthcare) at LE00206853; PX-98 (RSS User Guide) at L0045505; PX-127 (S3 Item Search Center) (defining the item fields that are searchable within the item master); PX-136 (RSS Presentation) at LE02932687, LE02932696-700 (describing how to "search the catalog" and make item fields searchable); PX-376 (demonstration); PX-374 (screenshots for PX-376); PX-378 (demonstration); PX-379 (screenshots for PX-378); PX-380 (demonstration); PX-379

(screenshots for PX-380).  *See also* Tr. 666:8-667:7; Tr. 673:4-674:2; 699:13-702:11 (Weaver).

This search capability is provided through the Requisitions module, which is common to all five

configurations.[10]

### C.      Undisputed Functionality Common To All Five Configurations

It was undisputed that each of the accused system configurations (1) is an electronic

sourcing system, (2) builds requisitions, and (3) generates purchase orders.  Therefore, no

reasonable jury could find that these elements were absent from the accused systems.

Defendant's own witnesses and documents, as well as demonstrations of the systems,

established that each of the five system configurations is an electronic system for use by a

prospective buyer to locate and find items to purchase from vendors.  *See, e.g.*, PX-97

(Requisitions User Guide) at L0061108 (Requisitions application allows the user to create

requisitions to request items from vendors); PX-98 (RSS User Guide) at L0045480 (RSS

application lets the user create requisitions to request items from vendors); PX-101 (presentation)

at ePLUS 0621239-40 ; PX-108 (Purchase Order User Guide) at L0052032 ("The Purchase

Order application receives requests for goods or services from the Lawson Requisitions

application.  Purchase orders can then be created automatically to fill the requisition."); PX-153

(website page entitled "Procurement"); PX-376 (demonstration); PX-374 (screenshots for PX-

376); PX-380 (demonstration); PX-379 (screenshots for PX-380); Tr. 993:20-994:3 (Lawson

offers a suite of supply chain management products which are used for the procurement of goods

and services); 1010:19-1011:10 (Lohkamp).  *See also* Tr. 547:5-560:11; 565:19-575:20; 779:6-

19; 789:23-790:9; 819:4-15 (Weaver).

---

[10] Because the S3 Procurement System uses a search index, a user may search within selected
catalogs.  The system does not search the entire item master each time a search query is
executed.  It uses the index to lookup the locations of item records in the database that match the
search query.  PX-127; PX-136 at LE02932687, LE02932696-700; Tr. 705:6-714:11; 715:5-
716:13; 716:20-721:16 (Weaver); Tr. 1235:7-1237:19; 1241:17-1246:16 (Niemeyer).

It was also conceded that each of the five system configurations builds requisitions. Indeed, Defendant's own employees, documents and the system demonstrations confirmed this. Tr. 1157:3-1158:14 (Christopherson) (when user clicks checkout, the system moves items from the Shopping Cart and creates a requisition); Tr. 1010:24-1011:5 (Lohkamp); PX-97 (Requisitions User Guide) at L0061108 (Requisitions application lets the user create requisitions to request products from vendors); PX-98 (RSS User Guide) at L0045480, L0045502-507; PX-280 (RFP Resp. to Presbyterian Healthcare) at LE00206848-49; PX-376 (demonstration); PX-374 (screenshots for PX-376); PX-378 (demonstration); PX-379 (screenshots for PX-378); PX-380; PX-379. *See also* Tr. 654:7-22 (Weaver). This requisition capability is provided through the Requisitions module of the core S3 Procurement System, which is common to all five configurations. Tr. 549:24-550:18, 590:9-591:1 (Weaver).

Finally, no reasonable jury could find that each accused system does not generate purchase orders. Again, Defendant's own witnesses, documents and the system demonstrations conclusively established that each configuration generates purchase orders from requisitions. *See* PX-219 (RFP Resp. to Scottsdale School Dist.) at L0108867-69; PX-108 (Purchase Order User Guide) at L0052029 ("Lawson Purchase Order application lets you create and issue purchase orders"), L0052032 ("The Purchase Order application receives order requests for goods or services from the Lawson Requisitions application. Purchase orders can then be created automatically to fill the requisition."); L0052061, L0052161-170; PX-376 (demonstration); PX-374 (screenshots for PX-376); PX-378 (demonstration); PX-379 (screenshots for PX-378); PX-380 (demonstration); PX-379 (screenshots for PX-380); Tr. 1158:15-18 (Christopherson). Purchase orders are generated using the Purchase Order module of the core S3 Procurement System, which is common to all five configurations. Tr. 548:5-23, 550:19-551:18, 569:16-

570:14 (Weaver).  *See also* Tr. 1250:18-24, 1251:22-1252:21 (Niemeyer).

### D.    Additional Functionality Specific To Certain Infringing Configurations

There is also no question about what functionality the optional applications — RSS, Punchout, and EDI — add to the various configurations of the accused systems.  The jury saw and heard conclusive evidence at trial showing that (1) RSS includes the capability to cross reference between items from multiple vendors, (2) EDI includes the capability to provide information on the availability of an item in a supplier's inventory and receive catalog files from vendors, and (3) Punchout enables system access to multiple vendor catalogs stored on separate databases.  In light of this evidence, no reasonable jury could find that system configurations incorporating these applications do not satisfy the corresponding claim elements.

### 1.    No Reasonable Jury Could Find That The RSS Application Does Not Include The Capability To Cross Reference Between Items From Different Sources

Defendant's own witnesses and documents confirmed that RSS, which is part of Configuration Nos. 2, 3, and 5, provides the capability to incorporate the United Nations Standardized Products and Services Codes (UNSPSC) classification coding schema.  To implement this functionality, each catalog item is associated with a UNSPSC code.  Similarly, categories in the Category Search hierarchy tree correspond to the UNSPSC classification hierarchy.  Because each catalog item has been associated with and cross-referenced to a corresponding UNSPSC code in the item master and, similarly, because each product category in the category hierarchy tree has also been cross-referenced to a corresponding UNSPSC code, a system user navigating down the product category hierarchy tree can click on a branch of that tree and find all items that have been cross-referenced to the same UNSPSC code as associated with that branch of the tree.  This cross-referencing functionality enables the user to find similar, generally equivalent or identical items from multiple sources in accordance with the patent

claims. Tr. 1555:25-1556:3, 1156:23-1157:2 (Christopherson) ("Q: Isn't it true that a user of the Lawson system that has this UNSPSC capability can find items from different vendors that were all cross-referenced to the same product category? A: That's correct, yes."); Tr. 1013:3-25 (Lohkamp); Tr. 1708:25-1710:3 (Yuhasz) ("Q: If a user at Novant was using Lawson requisition self-service searching for an item by using a UNSPSC code, that user could find items from multiple vendors with the same UNSPSC code; isn't that correct? A: Yes."); PX-98 (RSS User Guide) at L0045500 (describing use of UNSPSC codes); PX-112 (Inventory Control User Guide) at L0032294-311; PX-376 (demonstration); PX-374 (screenshots for PX-376); PX-280 at LE00206846. *See also* Tr. 628:20-630:1, 692:2-18 (Weaver). Items sharing the same eight-digit UNSPSC code are generally equivalent or substitutable. Tr. 575:8-20; 612:15-20 (Weaver); PX-11 (UNSPSC White Paper) at ePLUS0227043. For example, using the accused systems, Dr. Weaver demonstrated converting a selected IBM Thinkpad computer from Office Max to a Dell Inspiron computer from Dell. *See, e.g.,* PX-376 (demonstration); PX-374 (screenshots for PX-376); Tr. 636:2-644:16 (Weaver). A reasonable jury could not fail to find that each accused system configuration that includes RSS has the capability to convert an item associated with a first source to a similar, generally equivalent or identical item associated with a different source.

**2.** **No Reasonable Jury Could Find That The EDI Application Does Not Include The Capability To Determine Availability Of An Item In Inventory**

Defendant's own documents established that the EDI application, which is part of Configuration Nos. 4 and 5, receives information on the availability of items in suppliers' inventories through the EDI 855 purchase order acknowledgement transaction. PX-108 (Purchase Order User Guide) at L0052173 ("item is on backorder"); PX-109 (Lawson S3 EDI Presentation) at LE00187619-20; PX-280 (RFP Resp. to Presbyterian Healthcare) at LE00206842. *See also* Tr. 603:20, 608:1-17; 669:22-670:17 (Weaver). No reasonable jury

could find otherwise.[11]

### 3. No Reasonable Jury Could Find That The Punchout System Configurations Do Not Maintain Multiple Catalogs

The jury saw demonstrations of the accused systems and heard testimony establishing that the Punchout application, which is part of Configuration Nos. 3 and 5, provides the accused systems access to multiple catalogs of Defendant's Punchout Trading Partners stored on separate databases. *See, e.g.,* PX-380 (demonstration); PX-379 (screenshots of PX-380); PX-368 (demonstration); PX-367 (screenshots of PX-368); Tr. 762:19-24, 766:13-18 (Weaver). Defendant does not dispute this, but contends that these vendor catalogs are not part of the accused systems. *e*Plus presented irrefutable evidence at trial, however, that Defendant exercises direction and control over its Punchout Trading Partners, and that, therefore, these vendor catalogs are part of Defendant's systems.[12]

First, one cannot make use of Punchout without having installed the core S3 Procurement System and RSS. PX-131 (RSS Install. Guide) at LE03258753; PX-100 (Punchout Admin. Guide) at L0046299-301; PX-211 (Punchout Install. Guide) at L0234784-85, L0234788. *See also* Tr. 581:16-583:21 (Weaver); Tr. 999:12-18 (Lohkamp). Second, when the S3 Procurement System invokes Punchout, the user remains connected to and within Defendant's system at all times. *See, e.g.,* PX-380 (demonstration); PX-379 (screenshots for PX-380); Tr. 1631:19-22, 1633:7-11 (Christopherson) ("Q: When the Lawson system punches out to the Punchout... partner's catalog, you remain connected to the Lawson system, correct? A. Correct."). *See also*

---

[11] As set forth above, Defendant's witnesses and documents also established the capability of a system having the EDI application to receive catalog files from vendors. *See supra* at 10.

[12] It should be noted, however, that these system configurations directly infringe the asserted claims without the Punchout catalogs because, as discussed above, multiple vendor catalogs are loaded into the item master of the core S3 Procurement System, a component of both Configuration Nos. 3 and 5.

Tr. 661:21-662:3;763:10-764:13, 766:13-18 (Weaver).

Using Punchout, the user can select (via the RSS user interface) to have the system connect to a special vendor catalog created for the user by Defendant's Punchout Trading Partner. Tr. 1633:19-1634:3 (Christopherson). *Defendant's* Punchout application provides the communications protocols for this process and *Defendant* provides services to connect the Lawson system to this catalog. PX-212 (Vendor Implem. Tech. Spec. Punchout); PX-103 (Punchout FAQs) at L0135324 ("Q: Who typically performs the installation? A: Lawson Professional Services.") Selected items are returned to the RSS Shopping Cart for building a requisition and generating purchase orders. PX-100 at L0046299-300; PX-380; PX-379.

Defendant's witnesses conceded that Defendant provides its Punchout Trading Partners with the specifications it requires to establish the necessary communications to enable item data to be transmitted to RSS. PX-212 (Vendor Implem. Tech. Spec. Punchout); Tr. 1150:9-14 (Lohkamp); Tr. 1927:20-24 (Shamos). *See also* Tr. 658:4-665:7 (Weaver).

*e*Plus's expert testified extensively, and without objection, to Defendant's direction and control of each step of the claimed methods that can be performed using System Configurations 3 and 5. *See, e.g.*, Tr. 660:12-19; 661:21-662:3; 663:6-665:7; 677:25-678:12, 680:12-23; 683:4-5; 759:2-9; 763:21-764:13, 766:13-18; 875:8-876:17; 880:5-17; 918:2-7 (Weaver).

Furthermore, the jury heard testimony regarding contractual agreements that Defendant enters into with its Punchout Trading Partners in order to facilitate the required communication protocols and interfaces between the S3 Procurement System and the vendor catalogs. *See, e.g.*, Tr. 1019:12-19, 1149:12-16 (Lohkamp); PX-190 (Punchout Ptnr. Agmt.) at LE00232215; PX-191 (Punchout Services Order Form) at LE00503591; PX-104 at LE 00017986. Pursuant to these agreements (express and implied), Defendant installs Punchout, configures and implements

the system and tests the communications.  *See* Tr. 1020:14-23, 1022:25-1023:2, 1023:14-22 (Lohkamp); PX-104 at LE00017986; PX-191 at LE00503591; PX-190 at LE00232223.  Thus, Defendant directs and controls the configuration and implementation of the entire system and no reasonable jury could find that System Configurations 3 and 5 do not include the capability to maintain multiple vendor catalogs on separate databases.

### E.      No Reasonable Jury Could Find That Defendant Did Not Directly Infringe The '516 And '683 Patents

Because the relevant functionality of the accused systems was not in dispute, it follows that no reasonable jury could have found in Defendant's favor on infringement.  In each instance where the jury found one or more configurations of the accused systems did not infringe a claim, the overwhelming evidence showed that each claim element was literally met by these systems. *e*Plus is therefore entitled to judgment as a matter of law of infringement on these claims.

### 1.      Defendant Directly Infringes Claims 1 And 6 Of The '516 Patent With Configuration Nos. 1 Through 5

No reasonable jury could have found that Defendant does not directly infringe claims 1 and 6 of the '516 Patent by making, using, selling, and offering to sell Configuration Nos. 1 through 5 of the accused Lawson systems.  The conclusive evidence presented at trial established that every element of these claims was met by all five configurations of the accused systems:

- Each of these configurations is an electronic sourcing system.  *See supra* at 12.

- Each of these configurations includes a collection of catalogs of items stored in an electronic format.  *See supra* at 8-10, 16-18.

  o  According to Lawson's corporate representative, the core S3 Procurement System, included in each of the 5 system configurations, has the capability of loading an electronic file of catalog item data received from and disclosed by a vendor which includes for each item at least a vendor item description, unit price, unit of measure and vendor item number.  Tr. 1591:15-1593:12; 1593:13-1603:17 (Christopherson).

  o  As Mr. Christopherson testified:

      Q:  And, in this chart, you're saying that the vendor gives this electronic format, which we've identified, for example, as the

CSV file, gives that information to the customer, okay.  Is that right?

A:   That's correct.

Q:   So in your lay person understanding, by giving that information, is it disclosing that to the customer?

A:   It's disclosing that to the customer.

Tr. 1620:18-1621:3.

○   According to Mr. Christopherson, the item master of the core S3 Procurement System has the capability to store more than 100,000 catalog items from over 10,000 separate vendors.  Tr. 1621:16-1622:10 (Christopherson).[13]

• Each of these system configurations includes a catalog-selection protocol that relies on a first set of pre-determined criteria to select less than the entire collection of catalogs.

○   The catalog selection protocol can include matching a vendor identification code with a subset of the collection of catalogs.  As set forth above, catalogs can be selected using a variety of different protocols including, for example, vendor or manufacturer name (*e.g.*, vendor identification codes).  *See supra* at 11-12.

○   The subset of catalogs selected using the catalog selection protocol can include both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party that is one of a manufacturer and a competing vendor, the predetermined third party selling items corresponding to items in the vendor catalog. As set forth above, since a user can select catalogs using, for example, manufacturer name, a subset of catalogs in the item master can be selected comprising a catalog for the manufacturer as well as a catalog of a vendor that sells the manufacturer's products.  This functionality was demonstrated to the jury.  *See* PX-364 (showing use of catalog selection protocol "Dell" which selects a subset of catalogs from item master including both the Dell catalog and the Diablo catalog) and PX-363 (screenshots for PX-364).  *See also* Tr. 724:22-729:7; 820:15-821:15 (Weaver).

• There was no dispute that each of the system configurations includes a search program that can employ a second set of criteria to select specific items from the catalogs determined from the catalog selection protocol.  *See supra* at 11-12.  *See also* Tr. 1012:18-1013:2 (system has search capability) (Lohkamp); Tr. 1738:24-1739:3 (acknowledging that the S3 Procurement System has "a search function to look within the database to determine if particular items are there") (Shamos).  This functionality was demonstrated at trial.  PX-364 (use of "Dell" as catalog selection protocol to select a subset of catalogs including the Dell catalog and the Diablo catalog and using

---

[13] *See also* Tr. 1000:18-1001:15 (Lohkamp); Tr. 613:22-614:13; 819:16-22 (Weaver); Tr. 1236:22-25, 1239:14-18, 1265:17-24, 1266:6-13 (Niemeyer).

a second criteria of item description "Dimension 8100" to search within the selected subset of catalogs); PX-363 (screenshots for PX-364); Tr. 724:22-729:7 (Weaver) (narrating demonstration of PX-364); *see also* Tr. 820:8-14, 821:16-822:1 (Weaver).

- With regard to claim 6 of the '516 patent, each of the configurations employs a second set of predetermined criteria that includes at least one of a catalog number and item textual information. *See* PX-364 (second set of predetermined criteria was item textual information "Dimension 8100"); PX-363; *see also* Tr. 724:22-729:7; 824:18-24 (Weaver).

### 2.   Defendant Directly Infringes Claim 2 Of The '516 Patent With Configuration Nos. 3 And 5

No reasonable jury could have found that Defendant does not directly infringe claim 2 of the '516 Patent by making, using, selling, and offering to sell Configuration Nos. 3 and 5 of the accused systems. As discussed above, all five system configurations satisfy the elements of claim 1, from which claim 2 depends, including Configuration Nos. 3 and 5. The undisputed evidence also showed that Configurations 3 and 5, which include the Punchout application, have the capability to maintain a collection of catalogs in separate databases as required by claim 2. *See supra* at 16-18; *see also* Tr. 1630:18-24 (systems which include Punchout have the capability to "seamlessly browse from Lawson's requisition self-service to vendor websites") (Christopherson); Tr. 1927:9-24 (systems connect to vendor websites and Lawson creates the mechanism for connection) (Shamos); Tr. 762:13-24 (Weaver) (system searches catalogs stored in internal item master database as well as Punchout catalog databases); Tr. 823:1-824:6 (Weaver); PX-368 (demonstration illustrating connections to both Staples and Dell catalog databases); PX-370; PX-380.

### 3.   Defendant Directly Infringes Claims 9 And 29 Of The '516 Patent With Configuration Nos. 2, 3 And 5

No reasonable jury could have found that Defendant does not directly infringe claims 9 and 29 of the '516 Patent by making, using, selling, and offering to sell Configuration Nos. 2, 3, and 5 of the accused systems. Conclusive evidence at trial established that each element of these

claims was met by these system configurations.

- Each of these configurations is an electronic sourcing system. *See supra* at 12; *see also* Tr. 825:6-9, 834:5-8 (Weaver).

- Each of these configurations includes a collection of catalogs of items stored in an electronic format. *See supra* at 8-10, 16-18; *see also* Tr. 825:10-12, 834:9-11 (Weaver).

- Each of these configurations, which include the RSS application, has the capability of using the UNSPSC codes to cross reference between generally equivalent items from multiple sources. *See supra* at 14-15; *see also* Tr. 827:4-22 (Weaver).

  o With regard to claim 9 of the '516 Patent, the system's cross-reference table provides a first identification code associated with a first item in a first catalog (*e.g.*, a UNSPSC code) and second identification code associated with a second item in a second catalog (*e.g.*, a UNSPSC code), and when the items have the same UNSPSC code, they are generally equivalent. Selection of the UNSPSC code associated with a particular category of the category hierarchy tree provides all items associated with that UNSPSC code. Thus, selection of one identification code from one of the first and second catalogs provides the other identification code from the other catalog. *See supra* at 14-15; *see also* Tr. 827:4-22 (Weaver).

  o With regard to claim 29 of the '516 patent, this cross-reference table links a vendor item catalog number from the vendor catalog with an item catalog number from a predetermined third party. *See supra* at 14-15; *see also* Tr. 835:23-836:4 (Weaver).

- With regard to claim 29 of the '516 Patent (and as discussed above with respect to claim 1 of the '516 Patent), each of these configurations also includes a catalog-selection protocol that relies on a first set of pre-determined criteria to select less than the entire collection of catalogs. *See supra* at 11-12; 19-20; *see also* Tr. 834:12-15, 834:20-835:11 (Weaver).

  o The catalog selection protocol includes matching a vendor identification code with a subset of the collection of catalogs. *See supra* at 11-12; 19-20; *see also* Tr. 724:22-729:7; 834:20-835:11 (Weaver); PX-363; PX-364.

  o The subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party. *See supra* at 19-20; *see also* Tr. 724:22-729:7; 834:20-835:11 (Weaver); PX-363; PX-364.

- Also with regard to claim 29 of the '516 Patent, each of these configurations includes a search program that can employ a second set of criteria to select specific items from the catalogs determined from the catalog selection protocol. *See supra* at 11-12; 19-20; *see* Tr. 834:16-19, 835:12-22 (Weaver).

**4.      Defendant Directly Infringes Claims 21 And 22 Of The '516 Patent
With Configuration Nos. 2, 3 And 5**

No reasonable jury could have found that Defendant does not directly infringe claims 21

and 22 of the '516 Patent by making, using, selling, and offering to sell Configuration Nos. 2, 3,

and 5 of the accused systems.  The irrefutable evidence showed that each element of these claims

was met by these system configurations.

- Each of these configurations is an electronic sourcing system. *See supra* at 12; *see also* Tr. 829:24-830:3 (Weaver).

- Each of these configurations includes a collection of catalogs of items stored in an electronic format. *See supra* at 8-10; 16-18; *see also* Tr. 830:13-831:4 (Weaver).

- It was undisputed that each of these configurations includes a requisition module that includes data fields, where user-generated criteria can be entered into at least one of the data fields to generate partial criteria corresponding to a desired item. *See supra* at 13; *see also* Tr. 830:4-12 (Weaver).  For example, a partial item description may be entered by the user. PX-368; PX-367; PX-374; PX-376; PX-379; PX-380.

- It was undisputed that each of these configurations uses a catalog selection criteria to select less than the entire collection of catalogs. *See supra* at 11-12; 19-20; *see also* Tr. 830:13-831:4 (Weaver).

- Each of these configurations includes a catalog collection searching module (*e.g.*, a search program) that can be used to generate additional search-module criteria for the data fields of the requisition module. *See supra* at 11-12; 19-20; *see also* Tr. 830:13-831:4 (Weaver).  For example, the search results include more detailed descriptions of items with cost information which is used for the requisition. PX-368; PX-367; PX-374; PX-376; PX-379; PX-380.

- It was undisputed that each of these configurations includes a multiple purchase-order generation module that generates multiple purchase orders from a single requisition. *See supra* at 13-14; *see also* Tr. 831:5-11 (Weaver).  This capability was demonstrated to the jury. *See* PX-368 (demonstration); PX-367 (screenshots); Tr. 695:21-698:2 (narrating PX-368 and showing use of P0100 program to process requisition RQ919 to generate two purchase orders, one to Staples for a desk and one to Dell for a printer); PX-370; PX-369; PX-376; PX-374; Tr. 648:10-651:11 (Weaver) (system generated two purchase orders from Requisition RQ911, one to Baxter Healthcare for surgical gloves and one to Diablo for Dell computer); PX-380; PX-379; *see also* Tr 765:18-766:12 (Weaver).

- For each of these configurations, which includes the RSS application, the requisition module works in combination with the catalog searching module to determine

multiple sources for generally equivalent items.  *See supra* at 14-15; *see also* Tr. 831:12-21 (Weaver).

○   The multiple sources are limited by the catalog searching module providing a match according to the user-generated criteria, the search-module criteria, and a determination system that located items are generally equivalent.  The determination system includes a cross-reference table matching an identification code from a first located item (*e.g.*, its UNSPSC code) with a second identification code from a second located item (*e.g.*, its UNSPSC code).  *See supra* at 14-15; *see also* Tr. 829:5-23, 831:22-832:6; 832:7-17 (Weaver).

- For claim 22 of the '516 patent, the determination system includes an identical identification code for each of the located items.  For example, each of the first located item and the second located item can have the same UNSPSC code.  *See supra* at 14-15; *see also* Tr. 833:1-17 (Weaver).

### 5.   Defendant Directly Infringes Claim 3 Of The '683 Patent With Configuration Nos. 2, 3, And 5

No reasonable jury could have failed to find that Defendant directly infringes claim 3 of the '683 Patent by making, using, selling, and offering to sell Configuration Nos. 2, 3, and 5 of the accused systems.  The evidence established that each element of claim 3 was met by these configurations.

- It was undisputed that each of these configurations is an electronic sourcing system.  *See supra* at 12; *see also* Tr. 797:4-7 (Weaver).

- As Defendant conceded, each of these configurations includes the capability to maintain at least two product catalogs containing data relating to items associated with the respective sources.  Such catalogs can be maintained in the S3 item master for each Configuration or, with respect to Configurations 3 and 5, in the S3 item master and/or at Punchout sites.  *See supra* at 8-10; 16-18; *see also* Tr. 797:8-12 (Weaver).

- As discussed above, it was undisputed that each of these configurations includes means for selecting the product catalogs to search—a user interface that allows the user to select the product catalogs to search.  *See supra* at 11; *see also* Tr. 797:13-15 (Weaver).

- It was undisputed that each of these configurations includes means for searching for matching items among the selected product catalogs—a search module operating on a computer system with access to data in a database to search for matching items among the selected product catalogs.  *See supra* at 11-12; *see also* Tr. 797:16-19 (Weaver).

23

- It was undisputed that each of these configurations includes means for building a requisition using data relating to selected matching items and their associated source(s) — a requisition module operating on a computer system having access to data in the database for building a requisition using data relating to selected matching items and their associated sources. *See supra* at 13; *see also* Tr. 797:20-24 (Weaver).

- It was conceded that each of these configurations includes means for processing the requisition to generate one or more purchase orders for the selected matching items— a purchase order generation module operating on a computer system having access to the requisition. *See supra* at 13-14; *see also* Tr. 797:25-798:3 (Weaver).

- As discussed above, each of these configurations (which all include the RSS application) includes means for converting data related to a selected matching item and an associated source to data relating to an item and a different source – one or more codes corresponding to cross-referenced items, identical items or generally equivalent items. *See supra* at 14-15.

Nor could a reasonable jury have found that Defendant does not directly infringe claim 28 of the '683 Patent by making, using, selling, and offering to sell Configuration No. 2 of the accused systems. Moreover, a reasonable jury could not have found that Configuration No. 4 does not directly infringe claim 26 of the '683 Patent. The conclusive evidence showed that a Lawson system user — such as a Lawson customer or a Lawson employee performing a product demonstration — can use either Configuration Nos. 2 or 4 to perform all steps of the methods recited in those claims:

- Both configurations enable the user to maintain at least two product catalogs containing data relating to items associated with the respective sources. *See supra* at 8-10; 16-18; *see also* Tr. 799:12-18 (Weaver).

- Both configurations enable the user to select the product catalogs to search. *See supra* at 11; *see also* Tr. 799:19-25 (Weaver).

- Both configurations enable the user to search for matching items among the selected product catalogs. *See supra* at 11-12; *see also* Tr. 800:1-13 (Weaver).

- It was undisputed that both configurations enable the user to build a requisition using data relating to selected matching items and their associated sources. *See supra* at 13; *see also* Tr. 800:14-21 (Weaver).

24

- It was undisputed that both configurations enable the user to process the requisition to generate one or more purchase orders for the selected matching items. *See supra* at 13; *see also* Tr. 800:22-801:3 (Weaver).

- With regard to claim 26, Defendant's own documents established that Configuration No. 4, which includes the EDI application, enables a user to determine whether a selected matching item is available in the supplier's inventory. *See supra* at 15-16; *see also* Tr. 801:10-20 (Weaver).

- With regard to claim 28, Defendant's witnesses conceded that Configuration No. 2, which includes the RSS application with the UNSPSC classification schema, enables the user to convert data relating to a selected matching item and an associated source to data relating to an item and a different source. *See supra* at 14-15; *see also* Tr. 802:2-9 (Weaver).

**F.      No Reasonable Jury Could Find That Defendant Did Not Indirectly Infringe The '516 And '683 Patents**

Not only could no reasonable jury fail to find that Defendant directly infringes the asserted claims of the '516 and '683 Patents with the configurations of the accused systems identified above, such a jury could not have failed to find that Defendant indirectly infringes those same claims.  Overwhelming evidence at trial through the testimony of Defendant's own witnesses established that Defendant induces and contributes to the direct infringement by its customers.

**1.      Defendant Induces Infringement Of The '683 And '516 Patents**

The evidence at trial overwhelmingly demonstrated that Defendant actively induces the infringement of the '516 and '683 Patents by selling and offering to sell the identified configurations of the accused systems with the intent that its customers use those systems in an infringing manner.  Moreover, Defendant installs its software on its customers' systems, configures and implements the infringing systems and provides services to its customers to maintain the systems.  Further, Defendant provides instructions and training to its customers on how to use the systems in an infringing manner.

- It was undisputed that Defendant installs its software and configures and implements the infringing systems for its customers. *See* Tr. 936:23-937:1, 940:13-941:15

(Raleigh) (Lawson provides implementation services); Tr. 941:22-942:3; 942:25-951:1 (Raleigh) (Lawson provides data conversion and migration services to load catalog data into customers' systems); Tr. 937:2-10 (Lawson assists clients with moving from one version of system to next); Tr. 1022:11-24 (Lohkamp) (Lawson implements systems with Punchout); Tr. 1038:18-23 (Lohkamp) (Lawson's installation services); Tr. 1040:9-12 (Lohkamp) (data conversion and migration services); Tr. 1160:18-1161:5; 1622:18-1623:24 (Christopherson) (installation and implementation services); Tr. 1705:23-1706:17 (Yuhasz) (Lawson provided implementation services to Novant); PX-219 (RFP Resp. to Scottsdale) at L0108954-55 (describing implementation services Lawson agreed to provide); PX-216 (Stmt. of Work for Jackson Health Sys.) at LE00645374-76 (catalog data migration services to be provided); PX-276 (Stmt. of Work for Deaconess Health Sys.) at L0294103-06 (data migration and conversion services); PX-103 (Punchout FAQs) at L0135324 (Punchout installation and implementation services). *See also* Tr. 744:21-746:1 (Weaver) (implementation services); Tr. 749:3-750:11 (Weaver) (data migration and conversion services); Tr. 759:2-11 (Weaver) (installation and implementation services for Punchout).[14]

- Defendant provides maintenance and support services to maintain the operability of its customers' systems. Tr. 951:2-954:14 (Raleigh) (maintenance and support services include 24x7 emergency support, provision of user documentation via support website, pager services, WebEx diagnostic services); PX-208 (Maintenance Services Handbook); Tr. 1040:25-1041:22 (Lohkamp) (maintenance services); Tr. 1707:3-8 (Yuhasz) (maintenance services provided to Novant); Tr. 1161:6-18 (Christopherson (maintenance services); Tr. 774:8-19 (Weaver) (technical support services).

- It was uncontested that Defendant will host its clients' systems in its facilities and on its own computer systems. Tr. 941:16-942:24 (Raleigh); Tr. 1037:22-1038:4; 1048:4-14 (Lohkamp); Tr. 774: 20-775:16 (Weaver).

- It was admitted that Defendant provides instruction and training to its customers in operating the systems. Tr. 937:16-940:7 (Raleigh) (describing different training courses offered); PX-202 (catalog of courses); PX-136 (RSS training session). *See also* Tr. 772:13-774:7 (Weaver) (training services).

- It was conceded that Defendant provides user manuals and system documentation to instruct its customers on how to install, configure and use the systems. *See, e.g.*, PX-97 (Requisitions User Guide); PX-98 (RSS User Guide); PX-100 (Punchout Admin. Guide); PX-108 (Purchase Order User Guide); PX-112 (Inventory Control User Guide); PX-131 (RSS Install. Guide); PX-211 (Punchout Install. Guide).

---

[14] Because these services entail implementation of an entire fully-functioning infringing system, they also constitute acts of direct infringement, *e.g.*, an unauthorized "making" of the infringing systems. 35 U.S.C. § 271(a).

The jury also saw and heard considerable evidence that Defendant has the requisite intent to induce infringement. Defendant has known of the patents since no later than the filing of the Complaint and, since that time, it has not ceased its infringement, modified its accused products to avoid infringement, or provided any different instructions to its customers as to how they may avoid infringement. *See* Tr. 1152:1-6 (Lohkamp) (Defendant has been aware of the patents-in-suit since May 2009); Tr. 1165:20-1166:9 (Defendant made no efforts to modify or redesign the accused S3 Procurement Systems after learning of patents); 1569:25-1570:4 (was aware of *e*Plus patents since May 10, 2009) (Christopherson). Further, Defendant concedes that it works closely with its customers in designing, configuring, installing, implementing, servicing, and maintaining the accused systems, and therefore it cannot plausibly claim to be unaware of its customers' infringing uses. Moreover, Defendant has not asserted reliance upon advice of counsel. *See Broadcom,* 543 F.3d at 698-700 (absence of advice of counsel is a relevant factor in evaluating intent for inducement).

In addition, the jury heard evidence to establish that the patents-in-suit were widely publicized within the industry, that Defendant knew of *e*Plus as a competitor, and that *e*Plus marked its products covered by the patents-in-suit. *See, e.g.,* Tr. 1065:4-1075:3 (Lohkamp) (saw *e*Plus at industry trade shows; *e*Plus' products discussed in industry analyst reports; Defendant competed against *e*Plus for business for at least Cleveland Clinic and Novant); Tr. 1316:9-1317:11 (Farber) (*e*Plus patents discussed in wide range of publications); Tr. 1322:11-18 (Farber) (Gartner recommends reviewing software functionality against *e*Plus patents); PX-325 (Gartner report discussing *e*Plus patent litigation); Tr. 1307:6–1310:6, 1327:5-12, 1353:8–1354:8 (Farber) (*e*Plus marks its patented products); PX-448, PX-417 (product marking documents); Tr. 1352:3–1353:7 (Farber) (press release announcing issuance of '172 Patent). Thus, under the

applicable standard for intent, Defendant had actual knowledge of the patents-in-suit or would be deemed "willfully blind" to their existence even before the filing of the Complaint in this action. *See Global-Tech,* 131 S. Ct at 2071-72 (affirming verdict of induced infringement where jury could have easily found that infringer exhibited "willful blindness" to the patents even though no direct evidence that infringer was specifically informed of them).

In addition, Defendant continues to aid and abet its customers in using the systems in a manner that infringes the asserted claims. The jury heard ample evidence of Defendant's activities that induce the customers' infringement, including, but not limited to: (i) advertising and marketing of its accused products for infringing uses,[15] (ii) instructing and training its customers how to engage in infringing uses (and failing to instruct them how to avoid infringing uses after obtaining knowledge of the *e*Plus patents),[16] (iii) demonstrating infringing uses,[17] (iv) profiting from sales of systems and services,[18] and (v) installing, implementing, configuring,

---

[15] *See, e.g.,* Frank Tr. (PX-517) 17:22-18:6 (describing various marketing activities); Frank Tr. 33:11-34:2 (white papers provide specific product information); Frank Tr. 39:22-40:10 (Lawson prepares standard answers to common questions about the features and functionality of its products); PX-118 (RFP Resp. to Cherry Creek) at LE00429173, LE00429193, LE00429345, LE00429358; PX-215 (RFP Resp. to Jackson Health) at L0096171-72; PX-149 (Resp. to Holland Hospital RFI) at L0092767; PX-226 (RFP Resp. to Blount Memorial) at L0083416, L0083422; PX-154 (webpage: Requisitions); PX-153 (webpage: Procurement Punchout); PX-156 (webpage: Purchase Order); PX-157 (webpage: Requisitions Self-Service); PX-129 (Lawson Software e-Procurement White Paper) at LE00163488-89 (comparing Lawson electronic procurement to traditional procurement).

[16] *See supra* at 26.

[17] *See, e.g.,* PX-136 (RSS 8.1, 9.0); Tr. 708:3-21 (Weaver) (explaining purpose of PX-136); PX-101 (Lawson webinar demonstrating use of Punchout); Frank Tr. (PX-517) 50:21-51:21 (Lawson uses webinars to show customers the features and functionality of its products); Frank Tr. 74:22-75:21 (Lawson's solutions consultants use demonstration laptops to show customers how its products work).

[18] *See, e.g.,* Tr. 1042:5-25 (Lohkamp) (describing relative revenues received from licensing, maintenance, and implementation services); Frank Tr. 88:6-89:10; 114:8-117:17 (describing revenues associated with licensing, maintenance, and implementation services).

testing, maintaining, and servicing the infringing products.[19]  *Grokster,* 545 U.S. at 936-40 (holding that such actions are evidence of intent to induce).

### 2.    Defendant Contributes To Infringement Of The '516 And '683 Patents

The evidence at trial also established that Defendant contributorily infringes the claims of the '516 and '683 Patents by making, selling and offering to sell the identified configurations of the accused systems, which lack any substantial non-infringing uses.  Defendant knew that the accused systems were especially made or especially adapted for use in an infringing manner. Moreover, the accused systems are not staple articles suitable for substantial non-infringing use.

Defendant concedes it was aware of the patents-in-suit since no later than the filing of the Complaint.  *See, e.g.,* Tr. 1152:1-6 (Lohkamp); Tr. 1569:25-1570:4 (Christopherson).  Moreover, as set forth above, the facts were more than sufficient to establish either Defendant's knowledge of the patents or its willful blindness to the existence of the patents even before the filing of the Complaint.  *See supra* at 25-29.

Nor can there be any question that Defendant had knowledge of its customers' infringement.  *See supra* at 25-29.

Further, no reasonable jury could have concluded that the infringing system configurations were "staple articles of commerce" and Defendant never argued otherwise. Indeed, the sole use for the accused systems was to conduct infringing activities.  Tr. 775:17-776:2, 776:12-23 (Weaver); *see, e.g., Mentor H/S,* 244 F.3d at 1379.

## IV.    CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court grant its motion for judgment as a matter of law and hold that Defendant infringes all the asserted claims of the

---

[19] *See supra* at [    ].

patents-in-suit, both directly and indirectly.  In the alternative, *e*Plus requests that the Court grant

a new trial as to the jury's noninfringement findings.

                                        Respectfully submitted,

June 22, 2011                           _____/s/_____
                                        David M. Young (VSB #35997)
                                        Scott L. Robertson *(admitted pro hac vice)*
                                        Jennifer A. Albert *(admitted pro hac vice)*
                                        **GOODWIN PROCTER LLP**
                                        901 New York Avenue, N.W.
                                        Washington, DC 20001
                                        Telephone:  (202) 346-4000
                                        Facsimile:  (202) 346-4444
                                        dyoung@goodwinprocter.com
                                        srobertson@goodwinprocter.com
                                        jalbert@goodwinprocter.com

                                        Craig T. Merritt (VSB #20281)
                                        **CHRISTIAN & BARTON, LLP**
                                        909 East Main Street, Suite 1200
                                        Richmond, Virginia 23219-3095
                                        Telephone: (804) 697-4100
                                        Facsimile: (804) 697-4112
                                        cmerritt@cblaw.com

                                        Michael G. Strapp (*admitted pro hac vice*)
                                        **GOODWIN PROCTER LLP**
                                        Exchange Place
                                        53 State Street
                                        Boston, MA 02109-2881
                                        Telephone:  (617) 570-1000
                                        Facsimile:  (617) 523-1231
                                        mstrapp@goodwinprocter.com
                                        Attorneys for Plaintiff *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 22 day of June, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 50(B) OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(A)**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Donald R. Dunner, *pro hac vice*
Erika H. Arner, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000
(202) 408-4444
***Counsel for Defendant Lawson Software, Inc***

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

_____/s/_____
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com

Counsel for Plaintiff *e*Plus Inc.