**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S BRIEF IN SUPPORT OF ITS RENEWED**
**MOTION FOR NEW TRIAL**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................1

II.    A NEW TRIAL SHOULD BE GRANTED ON INVALIDITY ......................................1

      A.     There Were Conflicting and Confusing Messages Given to the
            Jury Regarding the J-CON and P.O. Writer Systems that
            Unfairly Prejudiced Lawson With Respect to Invalidity. ...................................1

            1.     Chronology of Events Regarding J-CON and P.O. Writer Invalidity
                    Theory .......................................................................................... 2

            2.     Lawson Was Prejudiced Because Although It and Its Expert Were
                    Allowed to Provide Testimony About How P.O. Writer and J-CON Met
                    the Needs of the Market, Lawson Was Stopped in the Middle of Closing
                    Arguments, Absent any Objection from ePlus, and Chastised Before the
                    Jury for Relying on the Same Evidence for the Same Purpose. ................. 7

            3.     The Jury Was Confused About the Status of P.O. Writer and J-CON,
                    Confirming that a New Trial on Invalidity is Warranted.......................... 12

            4.     A New Trial on Invalidity is Warranted Because This Court Erred in
                    Excluding the J-CON and P.O. Writer Obviousness Defense. ................. 13

      B.     There Were Conflicting and Confusing Messages Given to the
            Jury Regarding Whether the Patent Office Considered the
            RIMS '989 Patent During Prosecution .............................................................15

      C.     The Court Erred in Excluding the Evidence Relating to the
            Reexams ......................................................................................................17

      D.     The ePlus License Agreements Should Have Been Excluded as
            Irrelevant and Prejudicial ............................................................................17

III.   LAWSON IS ENTITLED TO A NEW TRIAL ON INDIRECT
      INFRINGEMENT ...........................................................................................19

      A.     Lawson Is Entitled to a New Trial Because the Law on
            Inducement in the Jury Instruction Was Incorrect in view of
            the New Supreme Court *SEB* Decision. ............................................................19

      B.     Lawson is Entitled to a New Trial on Induced and
            Contributory Infringement Because of ePlus's Improper and
            Prejudicial Questions on Privilege Issues. .......................................................22

IV.     THE CUMULATIVE ERROR DOCTRINE DEMONSTRATES A
        NEW TRIAL REGARDING INVALIDTY AND INDIRECT
        INFRINGEMENT IS WARRANTED .......................................................................26

V.      CONCLUSION ...................................................................................................27

## EXHIBIT INDEX

Exhibit 1:  Excerpt pages from Lawson' Second Supplemental Initial Statement of Invalidity

Exhibit 2:  Excerpt pages from the Expert Report of Dr. Shamos

Exhibit 3:  Excerpt transcript pages from the *ePlus v. Lawson* Trial

Exhibit 4:  Slides from the Invalidity PowerPoint of Dr. Shamos

Exhibit 5:  Excerpt transcript pages from 09/27/10 Pretrial Conference

## Previously Marked Trial Exhibits:

PX-1:  U.S. Patent No. 6,023,683

DX-240:  '516 Reexam Decision dated Jan. 15, 2010

DX-242:  Order Granting Request for Reexamination in Reexamination Control No. 95/000,487,
dated October 23, 2009

## I.      INTRODUCTION

Lawson respectfully moves for a new trial on the issues of indirect infringement and invalidity pursuant to Fed. R. Civ. P. 59.  This motion is joined with Lawson's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, which is filed concurrently herewith.

Rule 59(a) allows the Court to grant a new trial if it finds the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice. *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).  Additionally, when the jury is given the wrong legal standard in the jury instruction, the Court should grant a new trial.  *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1275 (Fed. Cir. 2000).  The decision to grant or deny a new trial is within the sound discretion of this Court and, *unlike* the standard for determining judgment as a matter of law, the Court need not view the evidence in the light most favorable to ePlus.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

Lawson is entitled to a new trial on the grounds raised in its JMOL briefs.  Those arguments are incorporated by reference.  The following brief sets forth additional reasons for which this Court should grant Lawson a new trial on invalidity and indirect infringement.

## II.     A NEW TRIAL SHOULD BE GRANTED ON INVALIDITY

### A.      There Were Conflicting and Confusing Messages Given to the Jury Regarding the J-CON and P.O. Writer Systems that Unfairly Prejudiced Lawson With Respect to Invalidity.

On the same day that Lawson's invalidity expert was scheduled to take the stand, this Court decided to preclude one of Lawson's primary invalidity theories, namely that the combination of J-CON and P.O. Writer rendered the claims invalid.  This ruling was made *after* the parties had discussed this theory in opening argument and *after* fact witnesses had testified

about it.  It was also made after pretrial rulings indicated this prior art combination could be used to prove the asserted claims were invalid.  This belated ruling confused the jury and caused substantial prejudice to Lawson.

Excluding an instruction relating to a claim or defense presented to a jury may result in a prejudicial error that causes jury confusion and results in a miscarriage of justice, sufficient to warrant a new trial.  In *Buckley v. Mukasey*, 538 F.3d 306 (4th Cir. 2008), the plaintiff sought a new trial because the district court refused to instruct the jury on one of its employment discrimination claims even though the plaintiff put on evidence regarding the claim at trial.  The Fourth Circuit reversed this decision finding that there was sufficient evidence at trial to support the claim and remanded the case for a new trial because:

> By excluding plaintiff's "record of disability" instruction, the Court concludes that prejudicial error occurred in that this instruction was supported by evidence sufficient for consideration by the jury. **The omission to so instruct, given the evidence presented to the jury on "record of disability" was likely confusing on the issue of "perceived disability" as well, resulting in a miscarriage of justice.** Therefore, the plaintiff's motion for a new trial will be granted.

*Id.* at 881 (emphasis added).

This Court erred in excluding Lawson's invalidity defense based on the combination of J-CON and P.O. Writer, which ultimately caused jury confusion and resulted in a miscarriage of justice.

> 1. Chronology of Events Regarding J-CON and P.O. Writer Invalidity Theory

In its Second Supplemental Statement of Invalidity Contentions ("SSIC"), Lawson asserted that a combination of the J-CON System and the P.O. Writer V. 10 System renders obvious claims 3, 26, 28, 29 of the '683 patent, claims 1, 9, and 29 of the '516 patent, and claim 1 of the '172 patent.  (SSIC at 5, 104-120 (Ex. 1)).

> **J.    The J-CON System as Described in the "J-CON Manual" in Combination with P.O. Writer Plus V.10 as Described in the P.O. Writer Plus Version 10 Manual**
>
> The J-CON system as described in the "J-CON Manual" in combination with P.O. Writer Plus V.10 as described in the P.O. Writer Plus manual invalidates claims 3, 6, 26, 28, and 29 of the '683 patent, claims 1, 9, 21, 22, and 29 of the '516 patent, and claims, and claim 1 of '172 patent under 35 U.S.C. § 103. For the reasons stated above, The J-CON system as described in

*Id.* at 104.  Lawson cited the J-CON manual (DX-96) to support these contentions.  Dr. Shamos disclosed the same opinion in his expert report on invalidity, wherein he cited three J-CON manuals (DX-96, DX-97, and DX-98).  (Ex. 2 - 5/10/2010 Shamos Invalidity Report at ¶¶ 100-106, 180-185, 195-202, 213-258).

> **The Combination of J-CON and P.O. Writer Renders the Asserted Claims Obvious**
>
> 235.    It is my opinion that J-CON anticipates all the Asserted Claims.  It is also my opinion that P.O. Writer anticipates all of the asserted claims.
>
> 236.    To the extent that J-CON and/or P.O. Writer are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with P.O. Writer.  The same reasons for making the previous two combinations apply to combining the J-CON system as described in the "J-CON Manual" with P.O. Writer Plus V. 10 as described in the P.O. Writer Plus Manual.  The P.O. Writer Plus V. 10 system provided the multi-vendor capability demanded by the industry at and before the time of the invention.  The J-CON system included features that one or ordinary skill in the art would have been motivated to use with the PO Writer system, including additional details about
>
> performing a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.

Shamos Invalidity Report at ¶¶ 235-236.  One of the "previous two combinations" referenced in paragraph 236 was the J-CON system with U.S. Patent No. 4,992,940.  The reasons to combine included:

> 233.   Furthermore, the '940 patent provided the multi-source capability demanded by
> the industry at and before the time of the invention.
>
> 234.   Additionally, the J-CON system included features that one or ordinary skill in the
> art would have been motivated to use with the '940 invention, including the ability to
> electronically determine the current availability in the inventory at multiple locations, to perform
> a cross-referencing of data relating to an item on a requisition to determine an alternative source
> for the same item and/or an acceptable substitute for the item initially selected, and the ability to
> generate multiple purchase orders from a single requisition (as described above and in detail in
> Exhibit 3).

Shamos Invalidity Report at ¶¶ 233-234.  Like the '940 patent, P.O. Writer provided multi-

vendor or source capability:

> 181.   The P.O. Writer Plus system was an electronic sourcing system that included an
> electronic database that retained and retrieved product information from multiple vendors,
> including information such as an item number, item description, inventory location, price,
> commodity code, unit of measure, and vendor identification.  (The P.O. Writer Manual, Guided
> Tour at 22 & 130-31; Final Rejection in the '683 Patent Reexamination at 21 & 60; Non-Final
> Rejection in the '172 Patent Reexamination at 18-19).  Product information could be maintained
> within the P.O. Writer Plus system as product catalogs organized in various ways, including by
> vendor or by product type.

Shamos Invalidity Report at ¶ 181.  Dr. Shamos's invalidity report also contained a massive

invalidity claim chart (Exhibit 3) that included an element-by-element analysis of all of the prior

art he opined upon, including the J-CON System and the P.O. Writer System.

Although ePlus moved several times to strike various theories from Dr. Shamos's

invalidity report for various reasons, it did not move (before either the original pretrial order or

amended pretrial orders were entered in August and September 2010, respectively) to strike or

otherwise exclude Dr. Shamos from testifying about obviousness based on the combination of J-

CON and P.O. Writer for these claims.

This J-CON and P.O. Writer invalidity theory was listed as an issue to be tried to the jury in the original and Amended Pretrial Orders (Dkts. 450 at 19 (¶58) & 480 at 23 (¶45).  ePlus did not object to this listing.

On December 10, 2010, ePlus moved to exclude all invalidity opinions relating to J-CON, arguing that they had been excluded as part of a prior court order.  (Dkt. 526 at 20-22). Despite previously moving to exclude other prior art arguments on similar grounds, ePlus did not raise this issue until December 2010, *less than one month before* trial.  Lawson opposed this motion, and showed that the combination of J-CON and P.O. Writer was disclosed in the Second Supplemental Invalidity Contentions and that Dr. Shamos had relied on an admitted exhibit (DX-96) to support his opinions regarding obviousness based on J-CON and P.O. Writer.  (Dkt. 530 at 14-17).  Thus, this prior art combination was ***not*** excluded by any court order.  This Court held a telephone hearing on this matter on December 30, 2010 and denied the motion as it related to J-CON because:

> I don't think this relates to a previous motion to enforce -- I mean a previous Court order in any significant way because it is in the second supplemental.

(Dkt. 542 at 85).

At trial, both Mr. Robertson and Mr. McDonald told the jury in their opening arguments that Lawson was asserting that the combination of J-CON and P.O. Writer rendered the claims obvious.  For example, Mr. Robertson stated, among other things:

> So what they need to do is then try and put together what's known as an obviousness case. To say, Well, a person of ordinary skill in the art back in 1994 would have somehow known to take the J-CONN system and combine it with the P.O. system and take the J-CONN system and combine it with some other patent they are going to point you to, and then really in hindsight make up the invention that was conceived of and reduced to practice back in 1994.

(Ex. 3 - Robertson, Tr. at 155-157).

5

ePlus even gave the Court a bench memo affirming that P.O. Writer and J-Con were among the prior art combinations that may be asserted by Lawson to support invalidity. ePlus gave this memo to the Court on January 13, 2011, in the middle of trial, summarizing which invalidity theories were in the case and which were not:

Limits on scope of expert testimony that can be offered by Dr. Shamos

| Patent | '683 | | | | '516 | | | | | | | '172 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Claim | 3 | 26 | 28 | 29 | 1 | 2 | 6 | 9 | 21 | 22 | 29 | 1 |
| Anticipation | | | | | | | | | | | | |
| RIMS Patent | X | X | X | X | X | X | X | X | X | X | X | X |
| P.O. Writer | | X | | | X | | X | | | | | |
| King '542 | | | | | X | X | | | | | | |
| Obviousness | | | | | | | | | | | | |
| RIMS + TV/2 | X | X | X | X | X | X | X | X | X | X | X | X |
| RIMS + Dworkin | X | X | X | X | X | X | X | X | X | X | X | X |
| JCON + Dworkin | X | X | X | X | X | | | X | X | X | X | X |
| JCON + P.O. Writer | X | X | X | X | X | | | X | X | X | X | X |
| Other Bases for Invalidity | | | | | | | | | | | | |

(Dkt. 556 at 3) (highlighting added).

Two fact witnesses discussed the J-CON and P.O. Writer systems: Laurene McEneny and Preston Staats (limited in scope based on the Court's ruling the morning of his testimony). During trial, the jury asked questions about the J-CON system and the P.O. Writer system. (Tr. at 2511-2512). The jury was told that the Court would deal with the questions later, but the Court never dealt with these questions again. (Tr. at 2538:8-9; 3057:6-8).

On January 19, 2011, the same day that Lawson's invalidity expert Dr. Shamos would take the stand, ePlus orally moved to preclude Dr. Shamos from giving his obviousness opinions regarding P.O. Writer and J-CON. ePlus based its motion on grounds similar to those resolved against ePlus on December 30 -- failure to adequately disclose these P.O. Writer and J-CON obviousness opinions in the Shamos expert report. Tr. at 2279. Dr. Shamos served his invalidity

report on May 5, 2010.  This time, however, the Court granted ePlus's motion.  Tr. at 2355.

Although Ms. McEneny's deposition regarding P.O. Writer was already played for the jury on

January 18 and 19, the Court provided the jury with no explanation as to the changed status of

this and the J-CON prior art.

There were no good grounds for revisiting the issue *during* trial.  Indeed, when this Court

made a mistake reading its revised definition of "published by a vendor" to the jury, ePlus

argued that it would be confusing to change the definition *after* it had already been misread to

the jury.  This Court agreed.  (Tr. at 2942:9-2945:19 ("I think I need to be consistent with what

I've already told the jury, particularly if I articulated it and you all answered questions on it.").

The same standard should have applied to Lawson's J-CON and P.O. Writer invalidity defense.

The jury was told that Lawson would be relying on this defense, and Lawson should have been

allowed to do so, particularly because ePlus had every opportunity to raise its complaints about

Dr. Shamos's expert report months earlier.  The exclusion of this prior art as a basis for

invalidity in the middle of trial, reversing pretrial rulings that refused to exclude it and contrary

to ePlus's bench memo during trial admitting the combination was properly presented to the jury,

unfairly prejudiced Lawson.

2.    <u>Lawson Was Prejudiced Because Although It and Its Expert Were
Allowed to Provide Testimony About How P.O. Writer and J-CON Met
the Needs of the Market, Lawson Was Stopped in the Middle of Closing
Arguments, Absent any Objection from ePlus, and Chastised Before the
Jury for Relying on the Same Evidence for the Same Purpose.</u>

The Court's ruling in mid-trial that precluded reliance on P.O. Writer and J-CON to

prove invalidity under 35 U.S.C. §103, but allowed Dr. Shamos to testify about the J-CON and

P.O. Writer systems for the limited purpose of showing that they met the needs of the claimed

invention at the time the claimed invention was conceived, and therefore negated any secondary

7

considerations of non-obviousness.  (*See, e.g.,* Tr. at 2372:9-2375:1.)  He was not allowed to rely

on them as prior art that proved the claims invalid as obvious.  (Tr. at 2356:15-20.)

The patents-in-suit relate to electronic sourcing and procurement.  (Weaver, Tr. 500:22-

24.)

> The invention in the patents is to bring together electronic technology so that we can have
> electronic catalogs. They can be kept in a database. They can be searched. Items could be
> found. Items could be selected. Items could be put on a requisition, and then the
> requisition could be turned into a purchase order. And then depending on which claims
> we're talking about, there's also the capability of checking on whether an item is
> available in inventory and taking one item and finding generally similar items that you
> might want to substitute.

(Weaver, Tr. 519:8-18.)  Dr. Shamos testified that there were no long-felt, but unresolved needs

relating to such electronic sourcing and procurement because these needs were satisfied by at

least two other prior procurement systems, namely P.O. Writer and J-CON:

> Q Why don't you go ahead and walk us through what you have here on slide ten.
>
> A Yes. Well, in PO Writer, you could specify a catalog for searching and give a
> partial specification of an item. And so it says at the top, for example, say you
> want to display all items in the –
> . . . .
>
> Q Let's go back to slide ten, Dr. Shamos.
>
> A Yes.
>
> Q Can you tell us what you are showing us here?
>
> A Yes. Basically this says that if I want to restrict my search to just the Bayless
> catalog, then I can search for a particular item that has this partial description in
> just that catalog. So this was done by PO Writer.
>
> Q With respect to this issue of whether there's a long-felt unmet need in the
> marketplace for something, how does this relate to that particular secondary
> consideration?
>
> A Well, the only thing that allegedly was missing, as least at recited by the
> patents, is the ability to search multiple catalogs, and this did that.

(Tr. at 2497:3-2501:11).  Dr. Shamos testified that the P.O. Writer system also satisfied the need

to allow users to select a catalog for searching and then search for matching items specifically

within the selected catalogs:



(Tr. at 2496:25-2501:5 (Ex. 4 - discussing slide 10)).  Dr. Shamos testified that PO Writer

satisfied the need for users to create a requisition with items from multiple catalogs and the need

to split a single requisition into multiple purchase orders:



9

## P.O. Writer

A user could create multiple purchase orders from a requisition:

### 14. Requisitioning Interface

The REQUISITIONING INTERFACE allows you to turn Purchase Requisitions into Purchase Orders quickly and easily. Requisitions can be automatically consolidated onto one Purchase Order. A Requisition can also be split, creating any number of Purchase Orders.

L0126680
(DX-117)

EPLUS V. LAWSON SHAMOS DIRECT TESTIMONY                    12

(Tr. at 2503:1-2504:1 (Ex. 4 - discussing slides 11-12)).

ePlus's validity expert, Brooks Hilliard, testified about the P.O. Writer system, rebutting Dr. Shamos's testimony.  (Hilliard, Tr. at 2665:3-22 (discussing P.O. Writer as an "alleged prior art system"; 2671:24-2673:8; 2675:3-2676:25).

Dr. Shamos testified that the J-CON system satisfied the need to maintain multiple catalogs, the need to do product searches among the multiple catalogs, and the need to create requisitions from the hit results obtained from the catalogs.  It also satisfied the need to generate multiple purchase orders from a single requisition.  He testified that J-CON satisfied the need to check inventory availability and to cross-reference and convert a catalog number from one vendor to that of another vendor.  (Shamos, Tr. at 2506:1-10).

ePlus seized on the 11th-hour revocation of the invalidity defense, asking Dr. Shamos to confirm he gave no opinion at trial about the J-CON and P.O. Writer prior art. (Tr. at 2543:6-2545:13).  When Lawson's counsel tried to ask follow up questions on redirect, he was not permitted to do so.  (Tr. at 2610:5-25).

10

Thus, there had been evidence from two fact witnesses *and* two expert witnesses about these systems, and P.O. Writer and J-CON documentation was allowed into evidence for the purpose of showing those systems met the needs of the marketplace for procurement systems (to refute ePlus's claim that its invention addressed unmet needs).

Despite the fact that this evidence had been admitted in the case through multiple witnesses, when Lawson's counsel during closing argument sought to refer to the *same* evidence for the *same* purpose and indeed refer to the *same* slides used by its expert to describe the systems, the Court interrupted and blocked the argument, absent objection from ePlus:

> [Counsel:] Now, we showed you a little bit of additional prior art as well to give you the context for the marketplace and show that the needs in the market for these types of products for purchasing and requisition systems were already being met by some pretty old systems. That was those P.O. Writer and J-CON systems. And heard some testimony about both of those things.
>
> ****
> And if we go to the next slide. Another one of Mr. Shamos' slides here just to give an example of how this P.O. Writer documentation described that a user could create a requisition. Pick the part. Now, I put it on that requisition list.
>
> THE COURT: Why are we talking about P.O. Writer? Instruction 29 and 30A don't have that in there at all.
>
> MR. McDONALD: This was to show the needs of the marketplace were being met and goes to the obviousness issue.
>
> THE COURT: It does not go as prior art, and you're arguing it as prior art, and it's inconsistent with what you said you want as prior art. You can't have that argument. That's not right.

(Tr. at 3162-63). By blocking this presentation in the middle of closing argument and saying, "You can't have that argument. That's not right," the Court created jury confusion and unfairly gave the jury the false impression that Lawson's counsel was improperly discussing J-Con and P.O. Writer. This prejudiced Lawson and further shows that a new trial on invalidity is warranted.

11

3.    The Jury Was Confused About the Status of P.O. Writer and J-CON, Confirming that a New Trial on Invalidity is Warranted.

Precluding Lawson's invalidity arguments based on J-CON and P.O. Writer in the middle of trial, based on purported deficiencies in a report timely filed seven months earlier, after ePlus had already lost a motion to exclude the evidence, after ePlus had acknowledged during trial that these systems were in the case and could be used to invalidate the claims, after the prior art had been raised by both sides in opening arguments, and after two fact witnesses and two expert witnesses provided testimony about the systems, caused great jury confusion and severely prejudiced Lawson.  Even before closing arguments, ePlus acknowledged concern about jury confusion regarding J-CON and P.O. Writer.  (Robertson, Tr. at 2528:4-17; 2535:13-2536:6; 3057:1-8).  The inconsistent rulings regarding these systems exacerbated this confusion.

The jury's confusion is demonstrated by their questions about the status of J-CON and P.O. Writer as prior art during deliberations:

```
 4            Next question:  Since J-CON and P.O. Writer
 5    aren't listed on our verdict sheet, are we to consider
 6    them as prior art?  Isn't that what they were included
 7    in the case for?
 8            Next question:  Was P.O. Writer meant to be
 9    considered as a competing, similar system or was that
10    evidence not to be included in deliberations?
```

(Tr. at 3306:4-10).  Moreover, the fact that the jury asked several questions about this defense shows how important this issue was and illustrates why the exclusion of this defense callused serious prejudice to Lawson.  *Kozlowski v. Hampton School Board*, 2003 U.S. App. LEXIS 20226, *30-31 (4th Cir. 2003) (finding jurors' questions during deliberations supported the grant of a new trial).  Although this Court attempted to clear up this confusion when answering these questions, it was too little too late. The Court told the jury it could not use J-CON and P.O.

12

Writer or the combination thereof for anticipation or obviousness, but could consider them for the issue of whether there was a long felt but unmet need in connection with the obviousness inquiry.  (Tr. at 3324-3325).  This was consistent with the court's mid-trial ruling, but inconsistent with its statements in the middle of Lawson's closing argument.  A new trial on invalidity is warranted to avoid a miscarriage of justice.

   4. <u>A New Trial on Invalidity is Warranted Because This Court Erred in Excluding the J-CON and P.O. Writer Obviousness Defense.</u>

  When a district court improperly excludes evidence from a jury on a claim or defense, this may result in a miscarriage of justice warranting a new trial.  *Buckley v. Mukasey*, 538 F.3d 306, 320-21 (4th Cir. 2008) (reversing denial of motion for new trial because trial improperly excluded evidence from the jury); *Kozlowski*, 2003 U.S. App. LEXIS 20226, at *45 (same).  In the case, this Court improperly excluded the J-CON and P.O. Writer obviousness defense because it found that Dr. Shamos's Claim Chart (Exhibit 3) related only to anticipation and not obviousness, and Dr. Shamos had not adequately disclosed his obviousness opinions regarding this prior art.  (See, e.g., Tr. at 2301:25-2310:17 ("But, you see, the problem is he's really -- this chart is built around anticipation . . . .").)

  This Court's decision to exclude seems to have been based on a misunderstanding of the relationship between anticipation under §102 and obviousness under §103.  The Federal Circuit has often said:  "anticipation is the epitome of obviousness" and a claim that is anticipated by prior art is also rendered obvious.  *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 542 (Fed. Cir. 2011); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1357 n.21 (Fed. Cir. 1998) (a disclosure that anticipates also renders a claim obvious); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) ('a disclosure that anticipates . . . also renders the claim invalid under § 103, for anticipation is the epitome of obviousness.") (citations and internal

quotation marks omitted); *In re Pearson*, 494 F.2d 1399, 1402 (CCPA 1974) (anticipation is "the ultimate . . . obviousness") (citations and internal quotation marks omitted).  Therefore, although Dr. Shamos's Exhibit 3 claim chart did disclose his anticipation opinions regarding this prior art, it also was sufficient to disclose his element-by-element obviousness opinions as he explained in ¶¶ 102-104 of his report.  Indeed, Dr. Shamos explained that his claim chart supported both his anticipation <u>and</u> obviousness opinions:

> 102.  Exhibit 3, which is an integral part of this report, contains a claim chart demonstrating the invalidity of each Asserted Claim.  Exhibit 3 is a spreadsheet in which the rows are claim elements and steps and the columns are prior art references.  The cell corresponding to an element and a reference contains text if the element is disclosed in the reference or is obvious in light of the reference.  The color coding of Exhibit 3 is explained at the top of the spreadsheet.
>
> . . . .
>
> 104.  To the extent that any reference listed in this report as anticipating any of the Asserted Claims is not deemed to be anticipating, it is my opinion that any missing element or step would have been obvious in light of the art referenced in this report with the motivation to combine as explained herein.

Shamos Invalidity Report at ¶¶ 102-104.  This element-by-element disclosure coupled with his reasons to combine the J-CON and P.O. Writer prior art for obviousness (quoted above) were sufficient to put ePlus on notice as to the substance of Dr. Shamos's opinions.  Indeed, ePlus deposed Dr. Shamos about the J-CON and P.O. Writer obviousness opinions (Tr. at 2310:18-2311:4) and did not complain about the level of detail in his expert report until shortly before trial.  As such, this Court improperly excluded this invalidity defense, which resulted in a miscarriage of justice that requires a new trial on invalidity.

**B.**   **There Were Conflicting and Confusing Messages Given to the Jury Regarding Whether the Patent Office Considered the RIMS '989 Patent During Prosecution**

The preferred embodiment of the present invention was a combination of RIMS and TV/2. (Momyer, Tr. 264:19-267:19.)  The patented system includes a "requisition/purchasing system 40, preferably but not necessarily the Fisher RIMS system, and a search program 50" that is "[p]referably but not necessarily the Technical Viewer 2 search program (TV/2) available from IBM." ('683 patent, 4:1-9 (PX-001).)  Lawson's primary invalidity defense at trial was that the combination of the RIMS patent, U.S. Patent No. 5,712,989 ("the '989 Patent"), with the TV/2 System rendered the asserted claims invalid as obvious.

While the jury found the asserted claims not invalid, ePlus repeatedly told the jury that the '989 patent was fully considered by the Patent Office and that the Patent Office allowed the claims over the combination of RIMS plus TV/2.[1]  Lawson, on the other hand, was blocked from showing the jury that the Patent Office itself said in granting the reexamination requests that the '989 patent raised a new issue because it was not considered by the Patent Office during the original prosecution of the patents.[2]  For example, ePlus was allowed to argue:

> MR. ROBERTSON: Let's talk a little bit about invalidity because the case now is raised with respect to what are going to be called six prior art references. Four of those six were considered by the Patent Office. Two of them I already referenced to you being that RIMS system and the TV2 system. They represent either alone or in isolation or in combination, those references invalidate all 12 of the patent claims that are at issue.  We believe the evidence will show exactly the opposite, that the Patent Office was fully aware of it and that the RIMS system is radically different from what the patented system is. And that can be explained by at least two of the inventors who were responsible for and were the named inventors on the RIMS system.

---

[1]   *See, e.g.,* Tr. at 134:6-24; Tr. at 135:21-136:15; Tr. at 153:21-154:11; Momyer, Tr. at 261:15-266:3, 2128:20-2129:16, 2138:25-2140:2; Shamos, Tr. at 2553:22-2557:3).

[2]   *See, e.g.,* Tr. at 157:21-159:13; Momyer, Tr. at 2093:22-2096:20, 2098:8-2099:2; Kinross, Tr. at 2211:1-2215:15; Shamos, Tr. at 2599:20-2601:5, 2601:16-2610:3.

(Tr. at 153:21-154:11).  But Lawson was precluded from introducing evidence to show that the Patent Office, itself, found that there was no evidence that it had considered the '989 patent during the prosecution of '172 patent.  (Tr. at 158:17-159:13).

This resulted in the jury receiving skewed and inaccurate information about what the Patent Office thought about the '989 patent's impact on the validity of the claims.

Moreover, ePlus was allowed to dispute that the '989 was prior art (Tr. at 3266), even though the Patent Office has specifically rejected this argument during the reexaminations.  (See DX-240, '516 Reexam Decision dated Jan. 15, 2010, at 4 ("Upon inspection of the Johnson '989 Patent, the examiner notes that the reference carries a different inventive entity than that of the instant application that matured into the '516 Patent, and is not part of the priority chain of the instant' 516 Patent. Thus, the reference is seen to qualify as prior art under 35 U.S.C. 102(e)."); *id.* at 12 ("the examiner notes that the reference of the Johnson '989 Patent would qualify as prior art under 35 U.S.C. 1 02(e), as a different inventive entity exists for the Johnson '989 Patent than that of the instant '516 Patent, therein being a patent 'by another'.").).

The Patent Office's own actions show that, contrary to ePlus's repeated assertions at trial, the '989 patent is prior art that presented a new question of patentability, as it was unclear whether this patent was even considered as prior art during the original prosecution of the patents.  (DX-242 - Order Granting Request for Reexamination in Reexamination Control No. 95/000,487, dated October 23, 2009 at 5 ("Further . . . the Johnson '989 Patent was referenced in the Background of the Invention of the '172 Patent, but the reference was not used as the basis for any rejection, **nor is the record clear that the examiner at the time considered the Johnson '989 Patent.**  Thus, in this proceeding the Johnson '989 Patent is being viewed in a new light with respect to the original prosecution of the application that became the '172

Patent.") (emphasis added).)  For this additional reason, a new trial on invalidity is warranted to avoid a miscarriage of justice.

This is a separate issue from whether the Court was correct to exclude the evidence of the reexaminations.  The issue here is that this Court's rulings improperly allowed ePlus to mislead the jury about whether the Patent Office had considered the '989 patent and the RIMS system as prior art and allowed the claims to issue over this prior art.  The Patent Office said the record was unclear as to whether it had considered the '989 as prior art, yet ePlus was allowed to say it was considered, and Lawson was blocked from showing the evidence to the contrary.

As such this Court should grant Lawson's motion for a new trial on invalidity.

### C.    The Court Erred in Excluding the Evidence Relating to the Reexams

This Court erred in excluding evidence of the reexams of the patents-in-suit, and particularly in excluding the final decisions granting reexamination, which were highly relevant to Lawson's defense that it did not have the requisite intent for indirect infringement.  (*See, e.g.,* Dkt. Nos. 268; 270; 333 at 2, 5; & 362).  Additionally, it was prejudicial and unfair to allow ePlus to tout the presumption of validity of the patents-in-suit without also letting the jury know that the Patent Office had ongoing reexaminations and had made final determinations that there were substantial new questions of patentability for all three of the patents-in-suit.  (*See id.*, Tr. 1642:30-1644:6; 2922:23-2923:13; 3041:1-3048:6).

As such this Court should grant Lawson's motion for a new trial on invalidity.

### D.    The ePlus License Agreements Should Have Been Excluded as Irrelevant and Prejudicial

At the pretrial conference, over Lawson's objections, this Court decided to allow ePlus to use the settlement agreements for other lawsuits ePlus had filed on the patents-in-suit to rebut

invalidity through this purported evidence of secondary considerations of non-obviousness.  (Ex. 5 - 9/27/10 Pretrial Transcript at 71).

When a patentee offers objective evidence of nonobviousness, there must be a sufficient relationship, often called a "nexus," between that evidence and the patented invention.  *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir. 1994).  At trial, ePlus argued that the licenses to the patents-in-suit were secondary considerations that proved non-obviousness.  (Farber, Tr. at 2619-2633:8) (Hilliard, Tr. at 2740:1-15).  ePlus repeatedly mentioned that they made $60 million on these licenses.  (Tr. at 142, 213, 2620, 2625, 2627, 2630-32, 2654-55, 3093).  Although patent licenses may sometimes be relevant to show non-obviousness, a patent owner must prove that the licenses were taken *because of the merits of the claimed invention.*  ePlus did not present any evidence in this regard.  To the contrary, all of ePlus's licenses were taken to settle litigation (Tr. at 2652:3-9) and it is just as likely the reason the defendants took these licenses was to avoid the costs and uncertainties of litigation.  Thus, they had minimal probative value to this issue of obviousness.

Moreover, to the extent evidence of previous litigation settlement agreements have any probative value, such minimal probative value is substantially outweighed by the unfair prejudice to Lawson caused by the admission of this evidence.  *See, e.g., Uniloc USA Inc.* v. *Microsoft Corp.,* 640 F. Supp. 2d 150, 185 (D.R.I. 2009) (finding that even mentioning an irrelevant sales number was prejudicial because it encouraged the jury to award damages in excess of the contribution of the patented invention).  The Ariba and SAP settlements, totaling $37 million and $17.5 million, likely unfairly swayed the jury far beyond any potential relevance to this case.  Indeed, these large numbers may have unfairly swayed the jury into believing the patents must be valid if these other companies paid so much money to license the patents, even though ePlus provided no evidence about why Ariba

and SAP decided to settle their lawsuits with ePlus.  As such, this Court should grant Lawson's

motion for a new trial on invalidity.

**III.     LAWSON IS ENTITLED TO A NEW TRIAL ON INDIRECT INFRINGEMENT**

  **A.     Lawson Is Entitled to a New Trial Because the Law on Inducement in the Jury Instruction Was Incorrect in view of the New Supreme Court *SEB* Decision.**

  When the jury is given the wrong legal standard in the jury instruction, the Court should

grant a new trial.  *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1275 (Fed. Cir.

2000).

  At ePlus's urging, and over Lawson's objection, the jury was instructed using an

improper legal standard on induced infringement that now has been rejected by the Supreme

Court in the recent *SEB* case.  *Global-Tech Appliances, Inc., v. SEB S. A.*, __ U.S. __, 2011 U.S.

LEXIS 4022, at **21 (Sup. Ct. May 31, 2011).  Specifically, that case overruled the Federal

Circuit's law regarding the state of mind required for inducement of infringement, rejecting a

reckless disregard standard in favor of a higher standard of actual knowledge or willful

blindness.  Thus, the verdict is premised on recently-overruled law.  The jury's infringement

determination should be remanded for a new trial based on the correct legal standard.

  Lawson challenged the indirect infringement instruction prior to the jury charge,

explaining that reckless disregard was the improper standard to apply.  (*See* Tr. at 2967:17-20

("this reckless disregard standard is confusing. As Mr. Robertson noted, the Supreme Court has

granted cert on that case, and I just don't think it's good law, and I don't think it makes sense to

put it in this case").)  ePlus advocated the reckless disregard standard, asserting, "They

announced the standard can be reckless disregard. . . . A case that's on [certiorari] is still the law

of the land until and -- if and until the Supreme Court overturns it."  (Tr. at 2967:23-2968:2.)

This Court applied law advanced by ePlus, explaining "I'm obligated to apply the Federal Circuit

law, not what I think the Court would do, the Supreme Court is going to do."  (Tr. at 2971:11-

13.)  The jury was instructed that "knowledge of the patent may be established by a finding that

Lawson had actual knowledge of the patent *or* that Lawson *deliberately disregarded a known*

*risk* that ePlus had a protective patent."  (Jury Instruction No. 26 (emphasis added).)

The law that the jury was instructed on has now been overruled by the Supreme Court.

Specifically, the *SEB* Court held that "induced infringement under § 271(b) requires knowledge

that the induced acts constitute patent infringement."  *SEB*, 2011 U.S. LEXIS 4022, at **21.

While the Court explained that "willful blindness" could meet that requirement, it explained that

standard "surpasses recklessness and negligence."  *Id.* at **27.

> While the Courts of Appeals articulate the doctrine of willful blindness in slightly
> different ways, all appear to agree on two basic requirements: **(1) the defendant**
> **must subjectively believe that there is a high probability that a fact exists and**
> **(2) the defendant must take deliberate actions to avoid learning of that fact.**
> We think these requirements give willful blindness an appropriately limited scope
> that surpasses recklessness and negligence.  Under this formulation, a willfully
> blind defendant is one who takes deliberate actions to avoid confirming a high
> probability of wrongdoing and who can almost be said to have actually known the
> critical facts.  By contrast, a reckless defendant is one who merely knows of a
> substantial and unjustified risk of such wrongdoing, and a negligent defendant is
> one who should have known of a similar risk but, in fact, did not, see.

*Global-Tech*,  2011 U.S. LEXIS 4022, at **26 (emphasis added) (citations omitted). In this case,

the jury was not instructed on either element of willful blindness, and there was no evidence to

support it.  Further, the Supreme Court held that the Federal Circuit's deliberate indifference test

departed from the willful blindness test in two regards:

> First, it permits a finding of knowledge when there is merely a "known risk" that
> the induced acts are infringing. Second, in demanding only "deliberate
> indifference" to that risk, the Federal Circuit's test does not require active efforts
> by an inducer to avoid knowing about the infringing nature of the activities.

*Id.* at **28.  The jury instruction used in this case suffers from the same two problems.  Because

the jury here was instructed that the requisite intent required mere deliberate disregard of a

known risk that ePlus had a "protective" patent, it was not instructed on the proper law of indirect infringement.  Indeed, both ePlus's and the Court's comments confirm that the Court instructed the jury on the lower standard of intent now rejected.

Lawson also objected to the instructions because the proper legal standard for the jury instructions regarding inducement is intent to infringe—not merely intent to act.  (*See* Doc. No. 573 at 11 (Lawson proposing the following edit: "ePlus must show that Lawson actually intended to *cause ~~the acts that constitute~~ direct infringement*") (emphasis added).)  ePlus, on the other hand, advanced the lower intent to *act* standard.  (*See* Doc. No. 512 at 25.)  The Court adopted ePlus's lower standard, instructing the jury that "ePlus must show that Lawson actually intended to cause the acts that constitute direct infringement."  (Jury Instruction No. 26.)

This portion of the inducement instruction is also incorrect under the new *SEB* decision.  The *SEB* Court explained that intent to act is not enough—induced infringement "requires knowledge that the induced acts constitute patent infringement."  *SEB*, 2011 U.S. LEXIS 4022, at **21. The difference is important.  As the *SEB* Court explained by example, it is the difference between a situation where a used car salesman "induced the customer to purchase a car that happened to be damaged, a fact of which the salesman may have been unaware"—which does not give rise to liability—and a situation where "the salesman knew that the car was damaged"— which might give rise to liability.  *Id.* at *10, *21.  The jury was not instructed on the proper law of induced infringement—that the intent requires knowledge that the induced acts constitute patent infringement, not merely intent to induce acts that constitute infringement.  This is a much more stringent standard, and indeed one that ePlus never even purported to meet before, during, or after trial.  The evidence showed that Lawson lacked the requisite intent.

The verdict did not require the jury to specify whether infringement was direct or indirect—rather it asked the jury to find whether Lawson's accused systems infringed "either directly or indirectly."  (Dkt. No. 600.)  Because the new *SEB* case changed the law in a manner that shows the jury was erroneously instructed, and because the jury's verdict could have been based on erroneous law, the verdict cannot stand.   If the verdict of indirect infringement is not reversed, as Lawson requests in its JMOL motion, Lawson at least is entitled to a new trial with respect to induced and contributory infringement.

**B.      Lawson is Entitled to a New Trial on Induced and Contributory Infringement Because of ePlus's Improper and Prejudicial Questions on Privilege Issues.**

During trial, Lawson's Director of Product Development testified that it was his lay opinion that Lawson was doing something different than the patents.  (Christopherson, Tr. at 1575).

Q Did you think Lawson was doing something different than the patents?

A Yes.

. . . .
Q What did you do after you read the patents?

A I'll provided recommendation that in my belief, my reading, we weren't doing that patent, first, and that they didn't need to do any changes with the software that was currently available.

(Christopherson, Tr. at 1575:23-1577:3).  On redirect, ePlus asked Mr. Christopherson about whether Lawson obtained advice of counsel.  Lawson's counsel objected, but this Court allowed the question of whether an opinion of counsel was obtained to stand:

Q You did something else, didn't you, sir, besides making the recommendation that no changes would be made to the software?

A I'm not sure what you're referring to, sir.

Q Lawson went out and sought a legal opinion with respect to these patents, didn't they, sir?

MS. STOLL-DeBELL: Objection, Your Honor. I don't think it's appropriate to get into whether we got an opinion or not. It's not relevant.
. . . .

MS. STOLL-DeBELL: I was going to say I asked him what he thought and what he did. I did not ask him about any communications he had with any of Lawson's attorneys outside or inside. I was merely asking him what he personally thought and what he did. So it's outside the scope as well.

THE COURT: Well, I don't think it is. I think it's fair cross-examination. Just answer the question yes or no because I'm going to have to take it question by question. I think what he did, whether he got a legal opinion, can be considered depending on what the answer is. If his answer was no, he didn't, then I'll tell the jury one thing. If the answer is yes, then I have to tell the jury something else. So the objection is overruled. You may answer the question whether you sought a legal opinion respecting whether your products infringed.

MR. ROBERTSON: Well, actually, I don't know what the legal opinion says and whether it was infringement, Your Honor, or was some other basis.

THE COURT: All right. You can ask your own question.

[MR. ROBERTSON:] Did you seek a legal opinion of any kind, whatever?

MR. ROBERTSON: [MR. CHRISTOPHERSON:]  Yes.[3]

Q I don't want to know the content of that because that was privileged; however, the fact is you didn't turn it over in discovery to ePlus; isn't that right?
. . . .

MS. STOLL-DeBELL: So I think the objection is outside the scope of my direct, not relevant, prejudicial.

THE COURT: Why is it relevant?

MR. ROBERTSON: It's relevant --

THE COURT: What case?

MR. ROBERTSON: Broadcom v. Qualcomm, Your Honor. In that case, the accused infringers --

---

[3]    This answer was provided by Mr. Christopherson, not Mr. Robertson.

THE COURT: I'll tell you what we'll do. I'll deal with this at a recess. You can have the right to come back into this area.

(Tr. at 1577:10-1579:13).  As shown above, Lawson objected to this line of questioning arguing that ePlus's questions were unfairly prejudicial and had no probative value.  (*See id.*)

The failure to disclose an opinion of counsel is not relevant to the question of indirect infringement and should not be disclosed to the jury.  The Federal Circuit has held that "no adverse inference shall arise from invocation of the attorney-client and/or work product privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004), *overruled on other grounds by In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007).  If an accused infringer obtains an opinion of counsel and does not waive the attorney-client privilege, the patentee cannot then use that fact to suggest liability, per *Knorr-Bremse*.  Any alternative rule would mean that patentees who obtain opinions of counsel after an accusation of infringement in a good faith effort to evaluate their potential liability would be required to disclose such opinions to avoid negative inferences.  This Court ultimately agreed with Lawson because no court has held that that the failure to disclose an opinion is admissible as proof of the intent part of the induced infringement equation.  *See id.*  But by then, the damage had been done.  ePlus unfairly created an inference in the jury's mind that Lawson secured an unfavorable opinion of counsel, knowing that it should not have asked any questions about any opinions.

Further, ePlus's suggestion that Lawson behaved improperly by failing to disclose these opinions to ePlus was unfairly prejudicial.

To cure this prejudice, Lawson proposed that the Court give the following corrective instruction:

Lawson Proposed Jury Instruction No. 3

> Lawson had no duty to get an opinion from counsel on whether or not it infringes
> ePlus's patents. Both parties in this case have received advice from counsel
> without disclosing that advice to the other party. This is normal. You may make
> no determinations based on the fact that Lawson did not disclose the opinion it
> received from its lawyers to ePlus. That fact has nothing to do with this case.

(Dkt. 573 at 28). Lawson further objected that ePlus's proposed instruction went too far because it required the jury to disregard Mr. Christopherson's lay opinion regarding infringement and did not instruct the jury that Lawson had no duty to get an opinion of counsel. (Tr. 1868:18-1869:3; 3032:8-3033:16).

Rather than giving Lawson's proposed instruction, the Court instructed the jury as follows:

> Jurors, the other day when Mr. Christopherson testified, there was some testimony about
> whether Lawson obtained an opinion of counsel of non-infringement or invalidity of the
> patents. I instruct you know that I have excluded all of that testimony and I am
> instructing you to disregard it. That has nothing to do with this case.

(Jury Instruction No. 13A; Tr. 3240-9-17). The Court's attempt to cure this prejudice was inadequate. It was confusing as to which testimony was to be disregarded and it did not inform the jury that Lawson had no duty to get an opinion of counsel.

ePlus's questions were quite prejudicial. The corrective instruction was insufficient, and in fact exacerbated the damage because it suggested that the jury to disregard Lawson's affirmative, non-privileged evidence of good faith, namely the lay opinion. The questions and instruction likely unfairly infected the jury's finding of specific intent as related to indirect infringement. These questions were particularly prejudicial in light of the fact that ePlus had to prove intent for indirect infringement. Because there is no evidence of intent to infringe as discussed above and in Lawson's judgment as a matter of law brief, the jury had virtually no

other evidence of intent than this wrongful line of questioning and the Court's instruction.  Not only was this question wrongful—ePlus had absolutely no basis to argue it was a permissible question.  Thus, at a minimum Lawson is entitled to a new trial on the issue of indirect (induced and contributory) infringement.

## IV.   THE CUMULATIVE ERROR DOCTRINE DEMONSTRATES A NEW TRIAL REGARDING INVALIDTY AND INDIRECT INFRINGEMENT IS WARRANTED

The Fourth Circuit has recognized that the collective force of multiple errors can, in some instances, warrant reversal or a new trial even when one or two of the errors standing alone would not.  *Kozlowski*, 2003 U.S. App. LEXIS 20226, at *59-62.  The *Kozlowski* decision was from an employment discrimination case where the district court erred by refusing to instruct the jury on one of plaintiff's claims, excluding evidence to support the plaintiff's claims, admitting prejudicial evidence in support of defendant's claims, and failing to sequester a main defense witness.  *Id.* at *59.  In support of its decision to grant a new trial, the Fourth Circuit stated:

> Given the number of the errors in this case and the seriousness of at least some of those errors, such as the court's failure to sequester the defendant's main fact witness, we conclude that the cumulative effect of the errors was substantially prejudicial to Kozlowski's case. The errors affected both the evidence that the jury was permitted to consider as well as the legal standard that the jury was asked to apply to that evidence.

*Id. at *61.*

Similarly, the number of error in this case and the seriousness of these errors warrant a new trial on the issues of invalidity and indirect infringement.  Like *Kozlowski*, the errors in this case affected both the evidence that the jury was improperly permitted to consider, such as ePlus's arguments that the Patent Office considered the RIMS 989 patent, the evidence that the jury was not permitted to consider, such as Dr. Shamos's testimony that the combination of J-CON and P.O. Writer rendered certain claims obvious and the fact that the Patent Office has

26

found substantial questions of patentability exist for all of the patents-in-suit, as well as the legal standards that the jury was asked to apply that evidence, such as the erroneous jury instruction on inducing infringement.  Each of the errors discussed in this brief, as well as Lawson's JMOL brief, caused serious prejudice to Lawson, but taken collectively strongly demonstrate a miscarriage of justice that clearly warrants a new trial on these issues.  Lawson appropriately tailors its request for new trial to the issues affected by the errors, namely invalidity and indirect infringement, as new trial on other issues is unwarranted, unnecessary, and prejudicial.

## V.   **CONCLUSION**

For all of the foregoing reasons, as well as those described in Lawson's JMOL motion, filed concurrently herewith, Lawson respectfully requests that this Court grant Lawson's motion for a new trial on the issues of induced and contributory infringement and invalidity.

LAWSON SOFTWARE, INC.


By: _____/s/_____
                Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of June, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

                                                    /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*