IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF *e*PLUS INC.'S
BILL OF COSTS PURSUANT TO 28 U.S.C. § 1920,
FED. R. CIV. P. 54(D)(1) AND LOCAL RULE 54(D)(1)**

In opposing plaintiff *e*Plus, Inc.'s Bill of Costs, defendant Lawson Software, Inc. mischaracterizes or ignores controlling law in an effort to avoid its obligation to pay costs to the prevailing party in this case, *e*Plus. *See* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1) ("[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party.").

Pursuant to Rule 54(d)(1), and particularly given that the Court has now entered an injunction in *e*Plus's favor, *e*Plus is entitled to costs except in very unusual circumstances, none of which are present here. To overcome the presumption, Lawson, as the non-prevailing party, is required to give specific reasons explaining why it would be inappropriate to award the costs sought by *e*Plus. *Synergistic Int'l, L.L.C. v. Korman*, 2007 U.S. Dist. LEXIS 9798 (E.D. Va. Feb. 8, 2007) ("[o]nce the prevailing party makes this showing, the burden shifts to the losing party to show that taxation of such costs would be improper."). Lawson's Objections to *e*Plus's Bill of Costs ("Lawson's Objections") fail to overcome this presumption.

Lawson argues that *e*Plus did not prevail on its claims because: (i) "the case was a close one," (Lawson's Objections at 10); (ii) "[the] injunction provided no benefit to *e*Plus because Lawson has [allegedly] introduced a non-infringing version of its product which avoids the injunction," (Lawson's Objections at 1); and (iii) "Lawson successfully defeated *e*Plus's damage claim," and thus prevailed (Lawson's Objections at 2). None of these arguments have merit.

*First*, whether the case was "a close one" is immaterial to whether *e*Plus ultimately prevailed. It bears noting, however, that the Court commented on various occasions throughout the trial that if it were the finder of fact it would find for *e*Plus on both the infringement and validity issues. *See* Exhibit A (Trial Tr.) at 2849:8-19; 3006:20-3007:10 (Jan. 21, 2011) ("If I were deciding the case, I would find that there is no clear and convincing evidence to prove any component of [in]validity."; Dkt. No. 734 (Opinion) at 10 (observing Lawson's invalidity case "was weak"). Indeed, with respect to infringement, the Court commented that "…I would clearly find that there is infringement of everything that Dr. Weaver said, that each system infringed each claim for the reasons he stated. There isn't any question that I would do that… I personally am having real trouble deciding why there's any defense to infringement at all." *See* Exhibit A at 2849:8-19; *see also* 3006:20-3007:10 (indicating with respect to validity issues that it expected the jury to return a verdict in favor of *e*Plus on those issues). Moreover, the standard under Rule 54(d)(1) is whether *e*Plus prevailed, not whether or not the case was allegedly "close."

*Second*, Lawson's arguments with respect to the injunction demonstrate all the more why an award to *e*Plus of its costs (and attorney's fees, as set forth in a separate motion), is appropriate. Only weeks ago Lawson argued to this Court (and later to the Federal Circuit) against an injunction and in support of a stay because "the sky would otherwise fall" on Lawson

and its customers. Lawson's witnesses (including one whom the Court expressly characterized as not credible) argued that it would take as much as nine months and up to a million dollars per customer for customers to transition to non-infringing systems. *See, e.g.,* Lawson's Reply Brief in Support of Motion for a Stay of Any Permanent Injunction (Dkt. No. 709) (arguing that Lawson will "likely will suffer irreversible and immeasurable harm in the form of damage to its reputation and immeasurable lost sales and may be forced to breach hundreds of customer contracts if this Court enters an injunction without a stay."); Exhibit B (Injunction Hearing Trans.) at 219:1-10 (Hager) (stating that it would take a Lawson customer nine months on average to implement the non-infringing system); *id.* at 262:17-263:11 (Hager) (estimating that it would cost a Lawson customer $750,000 to implement the non-infringing system on average, up to $1,000,000). In consideration of Lawson's arguments, this Court included a sunset provision allowing health care customers six months in which to make the transition.

Yet only ***days*** after this Court entered the injunction and denied the stay, Lawson publicly announced that it had immediately available for download by customers a *free* installation that would allegedly avoid infringement, and would take only twenty to thirty minutes to implement. *See* Exhibit C (Lawson Software Inc. Release entitled "Immediate replacement of Requisitions Self Service software products required," May 27, 2011). As if to complete the subterfuge, Lawson now argues that the injunction provided no benefit to *e*Plus because Lawson has introduced this allegedly non-infringing version of its product which avoids the injunction.[1] The mere *ipse dixit* of Lawson's counsel that such is the case will not suffice. Even if true, this contention does not make *e*Plus any less of a "prevailing party," and Lawson cites no law for the proposition that "prevailing party" status is lost if the infringer later "designs around" the Court's

---

[1] *e*Plus is very doubtful that Lawson's alleged "design-around" does, in fact, avoid infringement, and it has requested that Lawson supply documentation to substantiate its claim.

injunction.[2]

*Third*, no reasonable person following this dispute, or understanding what it means to "prevail" under the controlling authority, could conclude anything other than that this was a victory for *e*Plus and a defeat for Lawson.[3] Nevertheless, Lawson argues that it "successfully defeated ePlus's damage claim," and, therefore, Lawson is the prevailing party here. Lawson's argument is belied by the fact that it did not file its own Bill of Costs; indeed, an injunction is "significant relief **in and of itself**." *Tao of Sys. Integration v. Analytical Servs. & Materials*, 412 F. Supp.2d 571, 581 (E.D. Va. 2006) (emphasis added). Under controlling law, complete and total victory is not required for *e*Plus to be awarded its costs as the prevailing party. *See, e.g., Jop v. City of Hampton*, 163 F.R.D. 486 (E.D. Va. 1995). Where, as here, *e*Plus has: i) obtained a verdict and judgment of infringement of five claims and validity with respect to all three of the patents-in-suit; and ii) the Court has entered a permanent injunction requiring Lawson to immediately stop selling and servicing products relating to electronic procurement systems that infringe *e*Plus's patents, *e*Plus is without doubt the prevailing party and is thus entitled to its costs in this case.

*Fourth*, and finally, *e*Plus's costs and fees in this case were appropriate and reasonable under the circumstances, given the number of disputed issues and the gravity of accusations hurled at *e*Plus by Lawson. Indeed, Lawson does not identify a single entry in the Bill of Costs

---

[2] Moreover, Lawson's argument is inconsistent for yet another reason: Lawson recently filed a motion for this Court to modify the injunction. (Dkt. 749). If, as Lawson contends, the injunction has had no impact upon it, Lawson's motion would be entirely unnecessary.

[3] The cases cited by Lawson in support of its arguments point do not bolster its position, or they are not precedential authority for this Court. For example, in *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 522 (4th Cir. 2002), the Fourth Circuit *affirmed* an award of costs to U.S.Search.com after prevailing on its summary judgment motion, even though it voluntarily dismissed a counterclaim against U.S. Search LLC.

that it believes to be without justification, and for that reason alone, *e*Plus should be awarded the full amount of its Bill of Costs. Moreover, Lawson does not provide any information as to its own relative costs to suggest that *e*Plus's claimed costs are excessive in light of the length and complexity of the case. Indeed, *e*Plus seeks costs that represent only a small portion of the actual costs that it has actually incurred in prosecuting the lawsuit.

Accordingly, *e*Plus requests that the Court award the full amount of the costs requested.

### I. THE COSTS THAT EPLUS SEEKS ARE ALLOWABLE PURSUANT TO 28 U.S.C. § 1920 AND RULE 54

All of the taxable costs sought by *e*Plus as part of its Bill of Costs are of the type contemplated and allowable by Section 1920.

As an initial matter, Lawson appears to concede that *e*Plus is entitled to at least $39,686.97. The remainder of *e*Plus's costs are also taxable, as set forth below and in its initial submission and supporting attorney declaration.

A significant number of Lawson's objections are premised on the argument that some of the itemized costs are purportedly not recoverable pursuant to the Taxation of Costs Guidelines, United States District Court for the Eastern District of Virginia (effective 9/27/97) ("the Guidelines").[4] *See, e.g,* Lawson Objections at 3. The recoverable costs, however, are governed by the federal statute (28 USC § 1920), Fed. R. Civ. P. 54(d)(1), and federal court decisions construing those provisions, and by this Court's Local Rule 54(D)(1). The Guidelines to which

---

[4] Lawson also objects on the basis that *e*Plus did not meet-and-confer with Lawson prior to submitting its bill of costs. As the Court is aware, during the course of the litigation the parties could not agree on much, if anything. So true here, where Lawson does not even concede that *e*Plus is the prevailing party. Regardless, Lawson points to no controlling authority requiring *e*Plus to meet-and-confer with Lawson in this particular instance. Local Rule 7(D) concerning motion practice, upon which Lawson relies for this requirement, is inapplicable here. *e*Plus filed a bill of costs with the Clerk, not a motion, and was not required to meet-and-confer with Lawson prior to filing.

Lawson frequently refers are just that – guidelines – which expressly provide that they are not binding in the first sentence: "The following statement ***does not purport to be a unanimous practice of this court***. It is for the judge who rendered the judgment to decide whether the costs were 'necessarily incurred in the case.'" (Guidelines at 1, emphasis added.) Indeed, this Court's Local Rule 54(D) makes no reference whatsoever to the Guidelines.

As set forth below, each of the items that Lawson has objected to is recoverable as shown by the authorities cited herein and in *e*Plus's Declaration of Jennifer Albert ("Albert Decl.") and Memorandum in Support of Bill of Costs.

### A. *Proc Hac Vice* Fees Are Appropriately Taxable

Lawson first objects to taxation of *pro hac vice* fees because "[t]he Cost Guidelines specifically state that miscellaneous costs, which would include *pro hac vice* application fees, are not taxable." (Lawson's Objections at 3.) Lawson's interpretation of the Guidelines is wrong.

*First*, contrary to Lawson's objection, nowhere in the Guidelines are *pro hac vice* fees identified as non-taxable "miscellaneous costs."

*Second*, and more importantly, this Court has consistently held that Fees of the Clerk, including *pro hac vice* fees, are appropriately taxable. This rule was reiterated just a few weeks ago in *Mann v. Heckler & Koch Def., Inc.*, 2011 U.S. Dist. LEXIS 46045 (E.D. Va. Apr. 28, 2011), in which this Court said:

> 28 U.S.C. § 1920(1) provides that "[f]ees of the clerk" are taxable as costs. ***And this Court has found that pro hac vice fees are taxable under this provision.*** *Synergistic Int'l, L.L.C. v. Korman*, No. 05-49, 2007 U.S. Dist. LEXIS 9798, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007) (awarding $150 in *pro hac vice* fees).

*Id.* (emphasis added). Therefore, *e*Plus requests that the Court grant its costs related to *pro hac vice* applications and the Complaint's filing fee.

B.   **The Fees Of The Court Reporter Are Properly Taxable**

1.   **Transcripts of Court Proceedings**

Lawson objects to taxation of fees of the Court Reporter for transcripts of proceedings before the Court because they were not "prepared pursuant to stipulation of parties with agreement to tax as costs" and were "prepared solely for convenience of counsel, as all the transcripts were in this case." (Lawson's Objections at 3.) Lawson's interpretation of the controlling authority is once again flawed.

Lawson takes issue with the submitted costs for pre-trial and post-trial transcripts, and "premium" costs for daily transcripts, as not being reasonable, necessary costs. Lawson's primary argument with respect to the daily transcript is that the costs of court transcripts are taxable only "[w]hen prepared pursuant to stipulation of parties with agreement to tax as costs." Not only is Lawson's position incorrect, it is wholly unreasonable in light of the fact that Lawson itself obtained the daily transcript during trial. Indeed, counsel for the parties expressly agreed they would share the costs for that daily transcripts. *See* Email from K. Drieman [Lawson] to M. Hayes [ePlus], dated December 9, 2010 ("The parties have agreed to share the costs of daily transcripts. Each party will pay $3.62/page. The transcripts will be delivered via email in PDF format."), submitted herewith as Exhibit D. Lawson cannot now argue that these "premium" costs were unnecessary.

Moreover, courts often assess costs of the daily trial transcript for cases that are "lengthy and complex." *See Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000). "The ordinary costs of the transcript of the testimony are usually born by the losing party and it would seem that the same rule should be applied in this case . . . in which the parties agreed at the outset that daily copy should be provided." *Allen v. County School Board*, 266 F.2d 507, 512 (4th Cir. 1959).

As previously stated in *e*Plus's Memorandum in Support of its Bill of Costs, the daily transcript was necessary because of the length and complexity of the trial, which lasted for three weeks and included the live testimony of more than a dozen expert and fact witnesses. The daily transcript greatly facilitated efficient presentation of witness testimony, particularly because a number of the witnesses' testimony spanned the course of multiple days during trial. Daily trial transcripts are routinely utilized in complicated patent trials and are necessary to allow the parties to manage the record, evaluate the testimony as it is put to record, and prepare for the next day's proceedings. Moreover, the daily transcripts were utilized extensively by both parties and the Court in connection with various trial motions, motions for judgment as a matter of law, jury instructions and verdict forms, and other legal and evidentiary issues that were raised during the course of trial. For Lawson to argue otherwise is meritless.

Moreover, Lawson's objection to "premium" daily transcripts overreaches. Rather than request that the Court award *e*Plus the Court Reporter's fees at the *standard* rate, Lawson requests that the Court deny *e*Plus ***all fees*** of the Court Reporter relating to transcripts for court proceedings. This is improper, given that Court in *Mann* has recently explained that rush fees are indeed taxable where reasonably justified. *Mann,* 2011 U.S. Dist. LEXIS 46045, at *10-13 (holding that "where reasonably justified, rush fees are indeed taxable" in context of subpoena service).

In addition to trial transcripts, the Court also has the power to tax costs of pre-trial and post-trial transcripts. *See, e.g., Independent Iron Works, Inc. v. U. S. Steel Corp.*, 322 F.2d 656 (9th Cir. 1963); *Modick v. Carvel Stores of New York, Inc.*, 209 F. Supp. 361 (S.D.N.Y. 1962); *Wade v. Mississippi Co-op. Extension Service*, 64 F.R.D. 102 (N.D. Miss. 1974) (holding that where, due to complex and technical nature of subject matter, transcripts of pretrial hearing were

essential for counsel to effectively present their case in post-trial briefs, assessment of costs for stenographic transcription thereof was warranted).

The pre-trial, post-trial, and evidentiary hearing transcripts were necessary for use in this case. For example, these transcripts were relied upon by *e*Plus on a number of occasions with respect to the issues pertaining to the Court's rulings with respect to discovery disputes, witness testimony, or lack thereof. Both parties have cited to such hearing transcripts both during the trial and in connection with post-trial motions before this Court. As just one example, these transcripts were most recently used in connection with *e*Plus's Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (Dkt. No. 742-1), as *e*Plus cited the many occasions on which this Court found that Lawson was attempting to circumvent prior rulings with respect to the scope of its invalidity allegations.

In sum, the daily trial transcripts and pre-trial and post-trial transcripts were necessarily obtained for use in the case for all these reasons, and *e*Plus submits that its request for recovery of costs is appropriate.

### 2.    Deposition Transcripts

Lawson does not object to deposition transcript fees, with the exception of $5,527.50 in fees for videotaped depositions and $1,200.00 in videographer fees. (Lawson Objections at 4.) Lawson objects on the basis that the Guidelines allegedly "clearly prohibit" the taxation of videotaped deposition costs, unless an authorizing order or stipulation provides for taxing these costs. However, portions of the deposition videos of Messrs. Frank and Matias and Mesdames Oliver, McEneny, and O'Loughlin ***were played to the jury by Lawson itself during trial***. Lawson should not be heard now to complain of the cost.

Moreover, it should be emphasized that *e*Plus did not request reimbursement for all video depositions but only certain depositions for which video was necessary for the presentation of the

case. It was necessary to videotape the depositions of Messrs. Christopherson, White, Yuhasz, and Dooner, and Ms. Cimino, because during their depositions they performed live demonstrations of, for example, Lawson's accused software. Such demonstrations could not adequately be captured by stenography alone, and Lawson's objections do not even address this point. This Court will undoubtedly recall the importance of the system demonstrations to the presentation of evidence in this case. Accordingly, the costs of these few deposition transcripts and videotapes are properly taxed.

In sum, Lawson does not dispute that *e*Plus is entitled to $34,702.60 in taxable costs for fees of the Court reporter under 28 U.S.C. § 1920(2). However, for the foregoing reasons, *e*Plus is also entitled to costs for the court transcripts and limited videography fees. Therefore, *e*Plus is entitled to claimed costs of $62,174.04.

### C.   Fees For Travel And Lodging For Witnesses Are Properly Taxable

Lawson next takes issue with the travel, lodging, and subsistence costs of *e*Plus's witnesses. (Lawson's Objections at 5-6.)

With respect to the common carrier costs, Lawson simply raises non-specific challenges to the submitted costs as disallowed under the Guidelines. Lawson is once again incorrect and notably made no effort to confirm whether any of the airfares could have been obtained at the time at a more economical rate. *e*Plus has submitted actual invoices for travel by common carrier and Lawson should be taxed the amounts identified for the costs as outlined by *e*Plus, namely, $6,074.80.

Lawson then argues that ePlus "inflates" its request for subsistence for these witnesses – by a grand total of approximately $1500. (Lawson's Objections at 5-6.) To put Lawson's allegation in perspective, it wishes the Court to believe that *e*Plus "inflated" its subsistence costs by an amount representing ***0.8% of ePlus's total Bill of Costs***. This Objection is meritless for at

least two reasons:

*First*, **Lawson itself** had the inventors (and Mr. Farber) on its witness list, and insisted that they be available to testify when Lawson wanted to call them. Thus, Lawson would have incurred the cost of transporting and lodging these witnesses in any event.

Moreover, the Court requested that *ePlus* witnesses remain available to be called back to the stand by Lawson, and further that the witnesses had to be available to testify multiple times if necessary for the infringement and validity issues in the case. Similarly, the Court requested that Messrs. Momyer, Kinross, Johnson, Weaver, and Niemeyer remain available to be called back to the stand and further ordered that Lawson be prepared to provide transportion, if necessary, for example:

> THE COURT: All right. You're going to be required, Mr. Momyer, to come back here and testify potentially in another part of the case either at the request of the Lawson people or the request of Mr. Robertson. So you're --
> MR. McDONALD: I need to call him.
> THE COURT: Didn't I say at the request of the Lawson?
> \*\*\*
> THE COURT: It may be that either side may want you back, and you can be released from your obligation to be here upon your agreement to come back when they request you to come back. Do we have your agreement?
> \*\*\*
> You must give the gentleman reasonable notice to get him back. And, of course, you must take whatever steps are necessary to get him back here on the schedule that is required.

Exhibit E, Trial Tr. at 397:24 - 399:10; *see* Exhibit E, Trial Tr. at 446:3 - 446:16 ("THE COURT: Can [Mr. Kinross] be excused permanently or do you need him back? MR. McDONALD: I need him back, Your Honor."); 478:19 - 479:25 ("THE COURT: Do you need [Mr. Johnson] back? MR. McDONALD: Yes, Your Honor."); 923:4-10 (THE COURT: Where is Dr. Weaver? ... They're going to need you back in the defendant's case. And, of course, you're probably going to be called in the plaintiff's rebuttal case, so you are released to go about your

business upon your agreement to come back when we need you, and I assume you'll do that. Thank you for being here."); and 1298:7-19 ("THE COURT: All right, Mr. Niemeyer, [Lawson] may need you back later in the case. So you're excused temporarily so long as you agree to come back when they notify you that you need to come back. Do you agree to do that?").

Accordingly, *e*Plus was required to incur the costs of travel, lodging, and meals for not only the precise days the out-of-town witnesses actually testified, but also the additional days that witnesses were required to be in Richmond in order to be available as per the Court's instructions or as requested by Lawson. *e*Plus has requested reimbursement for a reasonable portion of those additional costs, which should be granted as outlined in Albert Decl., Exhibit D.

*Second*, with respect to the lodging and subsistence costs, as shown in Exh. D to the Albert Decl., *e*Plus requests Lawson be taxed for ***a fraction*** of travel, lodging and subsistence for the witnesses ***actually incurred*** by *e*Plus. Courts have routinely granted costs for expenses incurred by witnesses for meals, travel, and lodging, when an itemized breakdown was presented to the court. *Leggett & Platt, Inc. v. Hickory Springs Mfg., Co.*, 149 F.Supp.2d 394, 396-97 (N.D. Ill. 2001) (granting $6,963.37 in witness fees where prevailing party submitted itemization of expenses incurred by each witness and opposing party did not object). Assessing costs for itemized witnesses expenses are therefore within the Court's discretion, and these costs should be taxed accordingly. Here, *e*Plus has applied the Per Diem rate set by the General Services Administration rather than the actual cost incurred. Moreover, *e*Plus requests an award of subsistence costs for Messrs. Farber, Hilliard, Johnson, Kinross, Momyer, and Niemeyer arrived at multiplying the Per Diem Rate set by the General Services Administration for "Meals & Incidentals" times a number of days significantly less than the actual number of days each witness was in attendance. Accordingly, *e*Plus requested costs of lodging and subsistence at but

a fraction of the actual cost incurred to *e*Plus.

    **D.**    **Copying Costs**

Finally, Lawson objects to *e*Plus's copying costs on the basis that the Guidelines only permit the taxation of the cost of papers obtained from third-party records custodians and documentary exhibits admitted into evidence at hearing or trial. Lawson once again is plainly wrong.

The fact that every exhibit was not ultimately utilized does not detract from its reasonable necessity. This Court has previously adopted the rule, reiterated recently in *Francisco v. Verizon South, Inc.*, 272 F.R.D. 436, 445 (E.D. Va. 2011), that "copying costs are ***necessarily incurred*** in the pursuit of a successful effort, ***whether or not the materials are actually made part of the record***," (citing *Jefferson v. Briner, Inc.*, No. 3:05cv652, 2006 U.S. Dist. LEXIS 70819, 2006 WL 2850648, at *2 (E.D. Va. Sept. 29, 2006); *Rodriguez-Garcia v. Davila*, 904 F.2d 90 (1st Cir. 1990) ("...if the costs were reasonably necessary to the maintenance of the action, then they are allowable."); *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 867 (7th Cir. 1981) (copying costs properly awarded for any document "necessarily obtained for use in the case" without having to be formally made part of the record) (emphasis added)). Additionally, in *Synergistic International*, this Court held that copying costs were "necessary to the litigation and are properly taxable." *Synergistic Int'l, LLC*, 2007 U.S. Dist. LEXIS 9798, 2007 WL 517676, at *5.

Here, the majority of the copies identified by *e*Plus were either admitted into evidence, used at trial, or were identified by Lawson or *e*Plus as being exhibits that were intended to be used at trial. Having more than one copy of potential exhibits and depositions on hand is important to attorneys for efficient presentation at trial. These copies allow the different members of the trial team to prepare efficiently for witness testimony and to further prepare for the fluid nature of responding to the opposing side's arguments presented at trial. Yet, *e*Plus did

not request taxation of copies for itself as Lawson implies; instead, as shown in Exhibit E, *ePlus* only requested taxation of copies ***provided to the Court, the Clerk, and Lawson itself.***

In many instances, *ePlus* requested outside vendors to prepare two sets of the identified documents for the Court (as required), one set for the Clerk (as required), one set for Lawson, and additional copies for *ePlus*. Because *ePlus* requests taxation of the cost of the provision of copies for the Court and Lawson, in Exh. E ***ePlus subtracted all additional sets from the invoice amount to arrive at the properly taxable amount***. The amount of sets created for the Court, the Clerk, and Lawson is identified in Col. F as "Taxable Sets". Proportionally reducing the Total Invoice Amount paid by *ePlus* in light of the smaller number of "Taxable Sets" results in a ***substantially lower*** "Taxable Amount" than the amount actually incurred by *ePlus*, as shown in Col. G. Therefore, the number of copies has been conservatively estimated by *ePlus* in an effort to fairly eliminate any non-recoverable costs associated with extra copies of exhibits, correspondence and pleadings made for the convenience of attorneys. This Court has held that photocopy charges are properly taxable to the extent that the copies were furnished to the Court or opposing counsel. *Bd. of Dir. v. Anden Group*, 135 F.R.D. 129, 138 (E.D. Va. 1991). Accordingly, the Court should tax the costs associated with trial exhibits, jury notebooks, pleadings, etc. as delineated in *ePlus*'s Bill of Costs.

Lawson further objects to the taxation of costs for producing documents to Lawson during discovery on the basis that these costs are not encompassed within § 1920(4). (Lawson's Objections at 6.) Lawson once again misapprehends the statute and controlling authority. In fact, this Court addressed this precise question mere weeks ago in *Mann*, 2011 U.S. Dist. LEXIS at *23-24. With respect to "copying," this Court expressly held that "when starting with an electronic document, the process of burning the document onto a CD to turn over in discovery is

'copying.'" and "it likewise seems clear that where the document copied is responsive to a discovery request, it is 'necessarily obtained for use in the case.'" *Id.*

Here, like in *Mann,* *e*Plus delivered the documents for which it seeks reimbursement in response to Lawson's discovery requests. *e*Plus's actual costs for exporting and endorsing *e*Plus documents requested by Lawson during discovery is identified in the Albert Decl., Exhibit F. Unlike the prevailing party in *Mann*, *e*Plus has <u>not</u> requested any other costs associated with electronic production, *e.g.*, the costs of creating a database, searching, de-duping, etc. Again, it is notable that Lawson does not proffer its own relative costs to suggest that *e*Plus's request is any way excessive or disproportionate. Accordingly, *e*Plus requests that the Court award *e*Plus for the copying documents in response to Lawson's discovery requests.

## II.   CONCLUSION

For the reasons stated herein, as well as those reasons stated in *e*Plus's initial memorandum in support of its Bill of Costs, *e*Plus respectfully requests the Court award the requested costs in full.

Respectfully submitted,

July 1, 2011

/s/
David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

*Attorneys for Plaintiff ePlus Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2011, I will electronically file the foregoing

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF ePLUS INC.'S BILL OF COSTS PURSUANT TO 28 U.S.C. § 1920, FED. R. CIV. P. 54(D)(1) AND LOCAL RULE 54(D)(1)**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Daniel McDonald, *pro hac vice*<br>Kirsten Stoll-DeBell, *pro hac vice*<br>William D. Schultz, *pro hac vice*<br>Rachel C. Hughey, *pro hac vice*<br>Andrew Lagatta, *pro hac vice*<br>MERCHANT & GOULD<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 332-5300<br>Facsimile: 612) 332-9081<br>lawsonservice@merchantgould.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW<br>GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>Don.dunner@finnegan.com<br>Erika.arner@finnegan.com | ***Counsel for Defendant Lawson Software, Inc.*** |

                                                       /s/
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com