# EXHIBIT A

**2797**

```
 1         IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    RICHMOND DIVISION
 4
 5    -------------------------------------
                                          :
 6    ePLUS, INC.             : Civil Action No.
                              : 3:09CV620
 7    vs.                     :
                              :
 8    LAWSON SOFTWARE, INC.   : January 21, 2011
                              :
 9    -------------------------------------
10
11         COMPLETE TRANSCRIPT OF THE JURY TRIAL
12         BEFORE THE HONORABLE ROBERT E. PAYNE
13         UNITED STATES DISTRICT JUDGE, AND A JURY
14
      APPEARANCES:
15
         Scott L. Robertson, Esquire
16       Michael G. Strapp, Esquire
         Jennifer A. Albert, Esquire
17       David M. Young, Esquire
           Goodwin Procter, LLP
18         901 New York Avenue NW
           Suite 900
19         Washington, D.C.  20001
20       Craig T. Merritt, Esquire
           Christian & Barton, LLP
21         909 East Main Street
           Suite 1200
22         Richmond, Virginia  23219-3095
           Counsel for the plaintiff
23
24             Peppy Peterson, RPR
               Official Court Reporter
25             United States District Court
```

**2798**

```
 1    APPEARANCES: (cont'g)
 2    Dabney J. Carr, IV, Esquire
        Troutman Sanders, LLP
 3      Troutman Sanders Building
        1001 Haxall Point
 4      Richmond, Virginia  23219
 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
        Merchant & Gould, PC
 7      80 South Eighth Street
        Suite 3200
 8      Minneapolis, Minnesota  55402
 9
10
...
25
```

**2799**

```
 1                    P R O C E E D I N G S
 2
 3         THE CLERK:  Civil action number 3:09CV00620, ePlus,
 4    Incorporated, versus Lawson Software, Incorporated.  Mr. Scott
 5    L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and
 6    Mr. Michael G. Strapp represent the plaintiffs.
 7         Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 8    Kirstin L. Stoll-DeBell, Mr. William D. Schultz, and Ms. Rachel
 9    Hughey represent the defendant.  Are counsel ready to proceed?
10         MR. ROBERTSON:  Yes, Your Honor.
11         MR. McDONALD:  Yes, Your Honor.
12         THE COURT:  All right.  We'll take plaintiff's JMOL
13    motion first.
14         MR. ROBERTSON:  Good morning, Your Honor.
15         THE COURT:  Good morning.
16         MR. ROBERTSON:  I'm going to be arguing plaintiff's
17    judgment as a matter of law with respect to infringement, and
18    Ms. Albert will be addressing plaintiff's judgment as a matter
19    of law with respect to the invalidity issues.
20         Your Honor, Rule 50 provides that judgment as a
21    matter of law may be granted when a reasonable jury would not
22    have a legally sufficient evidentiary basis to find for the
23    party Lawson on that issue.  ePlus moves for JMOL that Lawson
24    infringes all the asserted claims of the patents-in-suit, both
25    directly and indirectly, both through inducement of
```

**2800**

```
 1    infringement and contributory infringement.
 2         I'm not going to go through all the asserted claims,
 3    Your Honor.  I know Your Honor is familiar with them, and that
 4    would just take up too much time, and I know we're pressed for
 5    time here this morning with the Court's schedule this
 6    afternoon, but let me hit a high point, first start off by
 7    saying, we contend that the defendants non-infringement case in
 8    this proceeding has been really based on misdirection, that
 9    they have ignored the Court's claim construction with respect
10    to catalog.  They rewrote the provision for published by a
11    vendor to suit their manufactured non-infringement positions.
12         It required the Court, I think midcourse through this
13    case, to issue the instruction with respect to published by a
14    vendor to bring some clarity to what the Court intended when it
15    gave its instruction with respect to what a catalog is.
16         It did not mean, as the defendant contended, that the
17    item data associated with the catalog could not be selected --
18    or had to be selected by the customer or modified or deleted or
19    reformatted or be an entire catalog.  That was never intended
20    by the Court, and its revised published-by-a-vendor
21    construction made that clear, and I think the arguments made on
22    that, the non-infringement arguments that were based on that
23    have no sound footing in the record on this case.
24         We believe that the best evidence in this case has
25    come from, indeed, Lawson's own witnesses and documents.  Mr.
```

**2849**

1   THE COURT: Is that what the case holds? That's what
2   this case holds -- that's what this case about the travel
3   candle holds, that, in fact, there was no evidence that the
4   travel candle was used in the infringing way.
5       MR. ROBERTSON: There's amble evidence in this case
6   that it's used in the infringing way, both from Mr.
7   Christopherson and --
8       THE COURT: Here's the bottom line. I'm the finder
9   of the fact. I would clearly find that there is infringement
10  of everything that Dr. Weaver said, that each system infringed
11  each claim for the reasons he stated. There isn't any question
12  that I would do that.
13      But I'm not the finder of the fact. So under these
14  facts, under the evidence in this case, don't I have to let the
15  jury decide that case and then come back at the end of the day
16  and see whether that's right? So what I'm inclined to do is
17  reserve judgment on this motion, because I will tell you -- I
18  personally am having real trouble deciding why there's any
19  defense to infringement at all.
20      MR. ROBERTSON: I understand.
21      THE COURT: But I believe that I do have to let the
22  case go to the jury subject to my ability to control that, and
23  I'm going to take this motion under advisement, deny the motion
24  of no infringement by Lawson, keep your motion under
25  advisement.

**2850**

1       MR. ROBERTSON: I understand, Your Honor. Thank you.
2       THE COURT: All right, now, invalidity. I believe
3   that -- Ms. Hughey, are you doing that one, too?
4       MS. HUGHEY: I am, Your Honor, and I promise to be
5   much slower this time.
6       THE COURT: Because if you don't, you're going to get
7   knee-capped but not buy me.
8       Let's see. Is this a good place for the court
9   reporters to switch and for us to take a little recess?
10
11      (Recess taken.)

**2851**

1       THE COURT: All right.
2       MS. HUGHEY: Hello, Your Honor. May it
3   please the Court. Lawson moves for judgment as a
4   matter of law on the issue of invalidity because a
5   reasonable jury does not have a reasonable evidentiary
6   basis to find for ePlus on the issue.
7       At trial documents demonstrated and witnesses
8   testified --
9       THE COURT: Now, there are three grounds of
10  invalidity. One is anticipation.
11      MS. HUGHEY: Correct.
12      THE COURT: One is obviousness.
13      MS. HUGHEY: Correct.
14      THE COURT: And the other is written
15  description.
16      MS. HUGHEY: No, Your Honor, Lawson is not
17  asserting written description.
18      THE COURT: That was there at one time.
19      MS. HUGHEY: Correct.
20      THE COURT: That's no longer there. So I
21  don't need to deal with that one.
22      MS. HUGHEY: Correct.
23      THE COURT: So you have anticipation and
24  obviousness.
25      MS. HUGHEY: Correct, Your Honor. At trial

**2852**

1   the documents demonstrated and the witnesses testified
2   regarding the features and functionality of the prior
3   art RIMS system disclosed in the '989 patent.
4       THE COURT: Let's take the anticipation.
5   What is it that anticipates?
6       MS. HUGHEY: The RIMS system alone
7   anticipates every single claim of the patents-in-suit.
8       THE COURT: All right.
9       MS. HUGHEY: In combination, the RIMS system
10  and the TV/2 product render every single one of the
11  claims of the patents-in-suit obvious.
12      Dr. Shamos went through every single claim
13  and explained both the anticipation and obviousness
14  analysis. The evidence at trial further demonstrated
15  that both systems are prior art.
16      The combination of RIMS plus TV/2 renders
17  every single asserted claim of the patents-in-suit
18  obvious. The preferred embodiment disclosed in the
19  patents is the combination of RIMS plus TV/2 and the
20  Court's construction is consistent with that.
21      The TV/2 literature specifically says to
22  combine TV/2 with the parts ordering system and
23  inventory management system. The RIMS system
24  disclosed in the '989 patent was a part ordering and
25  inventory management system.

3006

1   MR. CARR: Exactly.
2   THE COURT: Absent evidence to the contrary.
3   MR. ROBERTSON: I'm not concerned about J-CON and PO
4   Writer. We're concerned about these other references that at
5   least the Court has taken under reservation on our JMOL that
6   may not be invalidating, but if it's a black box, we will never
7   know, and the Court will not be able to address the JMOL issue
8   that's still pending after the verdict.
9   THE COURT: All right. Anybody have anything else?
10  MR. CARR: Other than what is prior art is in the
11  instructions.
12  THE COURT: Yes.
13  MR. CARR: So that last concern, I don't see it.
14  THE COURT: I think it's a good idea to have them
15  separated out by anticipation and by obviousness, and you could
16  make their job easier by listing that which is contended to be
17  and have them say yes or no.
18  MR. ROBERTSON: We'll take a stab at that, Your
19  Honor, and we'll get it to them early tomorrow, like 6:00 a.m.
20  when you get up, Ms. Stoll-DeBell.
21  MS. STOLL-DeBELL: Not tomorrow.
22  MR. CARR: Is that something you need tomorrow?
23  THE COURT: I'm going -- I don't need it tomorrow
24  because my secretary is not going to be doing it. She is going
25  to be doing the instructions, and she's coming in tomorrow to

3007

1   do that.
2   MR. CARR: If we get you the verdict form over the
3   weekend, that would be sufficient because we're going to be
4   doing it.
5   THE COURT: As long as you all -- you understand what
6   I'm saying to do?
7   MR. CARR: To break it out --
8   THE COURT: Break it out by anticipation and
9   obviousness --
10  MR. CARR: And call out the references.
11  THE COURT: That is one way to do it. The way this
12  is done is it requires them to specify the references. I think
13  it is easier for them to decide if you identify the references
14  and say yes or no.
15  MR. CARR: Okay. That's what we would prefer. I
16  don't want to have to make the jury fill in the reference. We
17  will put the reference in, and they can say yes or no.
18  MR. ROBERTSON: Mr. Carr, let's confer about it if we
19  can. I don't want to get into something that opens up a bigger
20  can of worms. I'd like to have a meet-and-confer and see if we
21  can come to agreement.
22  THE COURT: Be careful for which you ask. Does that
23  take care of what we're doing here?
24  MR. CARR: We have one more issue to bring up with
25  Your Honor, and we have been talking about the exhibits that

3008

1   will go back to the jury.
2   THE COURT: I asked you to do a list of the things.
3   MR. CARR: We're very close. We've been working with
4   Mr. Neal on that. We only have two issues that we want to
5   bring to you. The first is the license agreements. There are,
6   I think, four or five plaintiff's exhibits that are the license
7   agreements.
8   THE COURT: You mean --
9   MR. CARR: SAP, Ariba, Verian, SciQuest, Perfect
10  Commerce. We don't feel that those should go back to the jury.
11  Remember you dealt with those exhibits that were on the screen
12  and you took them off I screen, I think it was yesterday?
13  THE COURT: Yes, I remember. Why do they need to go
14  back to the jury?
15  MR. CARR: Exactly.
16  MR. ROBERTSON: Your Honor, we want them to see the
17  licensing terms, what was cross-licensed, and we've offered to
18  redact anything that has to do with the litigation, so all they
19  see is the patents, the consideration we got in response, all
20  of the Ariba licenses -- excuse me, patents that they had, so
21  the jury understands the significance of the commercial
22  success. They have a document in their hand, and they can see
23  the numbers that resulted --
24  THE COURT: You'll redact the things that have to do
25  --

3009

1   MR. ROBERTSON: Anything that has to do with
2   litigation will not be there, and we'll give that to them in
3   advance, and if they have any further issue, we'll address that
4   and redact further.
5   THE COURT: I don't see any problem with that.
6   MR. ROBERTSON: The only other issue we have with
7   respect to an exhibit, you may recall there was DX --
8   MR. CARR: We haven't resolved the license agreement
9   yet. We don't agree to that redaction. We think it should be
10  all or nothing, and we don't think --
11  THE COURT: Well, I think it's fair to have a
12  redacted version. Why do you think taking the litigation out
13  of it is -- it's going to have settlement agreement, and
14  they've already been told that it was the product of
15  litigation.
16  MR. CARR: And they had detailed testimony from Mr.
17  Farber about it, so they can argue that. They don't need the
18  license agreements in addition to what testimony is already in
19  the case, and that's why you took it off the screen.
20  THE COURT: I took it off the screen because the
21  litigation stuff was in there, and I thought that was going to
22  be confusing. I didn't have any objection to or wasn't trying
23  to address the terms of the agreement. It was the context in
24  this which the terms were presented which was -- the whereas
25  clauses and the releases, I believe, and there were other