# EXHIBIT E

### Page 258

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
 2                  RICHMOND DIVISION
 3   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                              :
 4   ePLUS, INC.,             :
                              :
 5           Plaintiff,       :
        v.                    : Civil Action
 6                            : No. 3:09CV620
     LAWSON SOFTWARE, INC.,   :
 7                            : January 5, 2011
             Defendant.       :
 8   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:
 9
10
11       COMPLETE TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE ROBERT E. PAYNE
12       UNITED STATES DISTRICT JUDGE, AND A JURY
13
14
15   APPEARANCES:
16   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
17   Michael T. Strapp, Esq.
     David M. Young, Esq.
18   GOODWIN PROCTOR
     901 New York Avenue, NW
19   Washington, D.C.  20001
20   Craig T. Merritt, Esq.
     CHRISTIAN & BARTON
21   909 E. Main Street, Suite 1200
     Richmond, VA  23219-3095
22
           Counsel for the plaintiff ePlus
23
24
           DIANE J. DAFFRON, RPR
25         OFFICIAL COURT REPORTER
           UNITED STATES DISTRICT COURT
```

### Page 259

```
 1   APPEARANCES:  (Continuing)
 2   Daniel W. McDonald, Esq.
     Kirstin L. Stoll-DeBell, Esq.
 3   William D. Schultz, Esq.
     MERCHANT & GOULD
 4   3200 IDS Center
     80 South Eighth Street
 5   Minneapolis, MN  55402-2215
 6   Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
 7   Troutman Sanders Building
     1001 Haxall Point
 8   P.O. Box 1122
     Richmond, VA  23218-1122
 9
       Counsel for the defendant Lawson Software.
```

### Page 260

1  (The proceedings in this matter commenced at
2  9:30 a.m.)
3     THE CLERK:  Civil Action No. 3:09CV00620,
4  ePlus, Incorporated v. Lawson Software, Incorporated.
5  Mr. Scott L. Robertson, Mr. Craig T. Merritt,
6  Ms. Jennifer Albert, Mr. Michael T. Strapp, and
7  Mr. David Young represent the plaintiff.
8     Mr. Daniel W. McDonald, Mr. Dabney J. Carr,
9  IV, Ms. Kirstin Stoll-DeBell, and Mr. William D.
10 Schultz represent the department.
11    Are counsel ready to proceed?
12    MR. ROBERTSON:  Yes, Your Honor.
13    MR. McDONALD:  Yes, Your Honor.
14    THE COURT:  All right.  Good morning, ladies
15 and gentlemen.
16    THE JURY:  Good morning.
17    THE COURT:  All right, Mr. Robertson, you may
18 resume your examination of the witness.
19    MR. ROBERTSON:  Thank you, Your Honor.
20    THE COURT:  And I remind you, sir, you're
21 under the same oath which you took yesterday.
22    THE WITNESS:  Yes, sir.
23 BY MR. ROBERTSON:  (Continuing)
24 Q  MR. Momyer, we spent a good deal of time yesterday
25 discussing this RIMS system which you were named

### Page 261

1  inventor along with Mr. Johnson.  Do you recall that?
2  A  Yes, I do.
3  Q  I'd like to move on now to this electronic
4  sourcing system and method, the inventions that are
5  subject of the patents that are at issue here if we
6  could.  All right?
7  A  Okay.
8  Q  Tab 1 in your witness notebook, I believe it's
9  Plaintiff's Exhibit No. 1, if you could go to column
10 1.
11    THE COURT:  That's also in your small book
12 there if you need to.
13 Q  And tab 2.  Thank you.
14    So we're on column 1 now of the '683 patent,
15 Exhibit No. 1.  Now, suggestion was made yesterday
16 that the Patent Office was unaware of the RIMS patent.
17 Did you disclose the RIMS patent to the Patent Office?
18 A  Yes, I believe so.
19    MR. McDONALD:  Objection, Your Honor.  This
20 is going to the validity issue.  Again, I thought we
21 were going to stick with infringement.
22    THE COURT:  Isn't it?
23    MR. ROBERTSON:  No, Your Honor.
24    THE COURT:  Why does it have to do with
25 infringement?

2011.01.05 Trial Transcript Day 2  1/5/2011  2:53:00 PM

### 394

1  data link described above local computer 40 waits for
2  a response from the host as shown in block 340.
3  Q   What if anything does that have to do with
4  generating P.O. orders, if anything?
5  A   Well, that's the process that RIMS was using to
6  transmit information to the host to the build the
7  P.O.s.  So all of the items that were on a requisition
8  would have been put in a data block along with the
9  affinity of the customer and passed up to the host
10  computer, which would then proceed to build a purchase
11  order.
12  Q   Was it your understanding that the RIMS system
13  operated by having the host generate the purchase
14  order?
15  A   Yes.
16  Q   Can you go to column 31?
17       THE COURT:  Why don't you stop a minute.
18  While we're here, pull the thing up.  You see these
19  after the purchase order data block described in step,
20  and then there's a number 338, and is transmitted to
21  host computer, and then there is the number 10, and it
22  continues, and there are numbers interspersed there.
23  What those numbers are references back to a particular
24  figure that are being talked about.  In this instance
25  there are references back to figure 8.  And it is a

### 395

1  way to say the data block is described in step 338 if
2  you go back and look at the figure 5A, and it says a
3  host computer is -- has got those lines to it and has
4  the number 10 if you go back and look at figure 5A.
5  So all of those numbers when you are reading them, if
6  you want to cross-reference back to the drawings, you
7  can do that, but if you just want to read them, you
8  just don't read -- you just don't pay any attention to
9  the numbers unless you're going back to check them.
10       Is that a fair statement?
11       MR. ROBERTSON:  Yes.  And thank you for that,
12  Your Honor.
13       THE COURT:  Excuse me.  Go ahead.
14  BY MR. ROBERTSON:
15  Q   The figure 5A that's referenced here you were
16  asked about on cross-examination, correct?
17  A   5A?
18  Q   Yes.  If you want to go to it, it's at page 11 of
19  42 in the patent and it ends with Bates No. 904.  I
20  think it was characterized as a flow chart?
21  A   Yes, I have it.
22  Q   So that section that we were just reading from is
23  referencing that figure; is that right?
24  A   Yes.
25  Q   Now, on to column 31.  On this topic of

### 396

1  cross-referencing, I think you informed us that that
2  section goes over to actually the bottom of column 34;
3  is that right?
4  A   Yes.
5  Q   Could the RIMS system use a cross-reference table
6  to take a requisition item say from a Fisher product
7  to identify a similar item from another vendor that
8  could then requisition from that vendor?
9  A   No.
10       MR. ROBERTSON:  Thank you.  I have no further
11  questions.  Actually, I'm sorry.  I misspoke.  One
12  last question.
13  Q   If I can take you to the '683 patent, figure 1A.
14  You were asked some questions about figure 1A and
15  figure 1B, do you recall that?
16  A   Yes.
17  Q   Are these two different embodiments that were
18  disclosed in your patent?
19  A   Yes.
20  Q   Is your invention confined to either to figure 1A?
21       MR. McDONALD:  Objection, Your Honor.  This
22  goes to his understanding of the scope of the claims.
23       MR. ROBERTSON:  He was asked about figure 1A.
24  I'm just asking if this is an embodiment.  I didn't
25  ask him anything about a claim.

### 397

1       THE COURT:  Yes, you are.
2       MR. ROBERTSON:  I'm just asking if this is an
3  embodiment of his invention.
4       THE COURT:  These two.
5       MR. ROBERTSON:  Well --
6       THE COURT:  It's two different embodiments.
7  BY MR. ROBERTSON:
8  Q   Let me start with figure 1A.  Is figure 1A one
9  embodiment of your invention?
10  A   Yes.
11  Q   Is figure 1B another embodiment of your invention?
12  A   Yes.
13  Q   Are these merely preferred embodiments?
14  A   Yes.
15  Q   Do you have an understanding whether or not your
16  inventions are confined to either of those
17  embodiments.  Do you have an understanding?
18  A   Yes.
19       MR. McDONALD:  Objection, Your Honor.
20       THE COURT:  Overruled.
21  Q   What's your understanding?
22  A   My understanding is there are other embodiments.
23       MR. ROBERTSON:  Thank you.
24       THE COURT:  All right.  You're going to be
25  required, Mr. Momyer, to come back here and testify

**398**

1  potentially in another part of the case either at the
2  request of the Lawson people or the request of
3  Mr. Robertson. So you're --
4      MR. McDONALD: I need to call him.
5      THE COURT: Didn't I say at the request of
6  the Lawson?
7      MR. McDONALD: No, I thought you said
8  Mr. Robertson.
9      THE COURT: I did. Instead of using you, I
10 used your client.
11     MR. McDONALD: Sorry.
12     THE COURT: It may be that either side may
13 want you back, and you can be released from your
14 obligation to be here upon your agreement to come back
15 when they request you to come back. Do we have your
16 agreement?
17     THE WITNESS: Yes, you do.
18     THE COURT: Reluctantly.
19     THE WITNESS: Yes, very reluctantly.
20     THE COURT: I don't think you're unusual in
21 giving a reluctant agreement.
22     THE WITNESS: I do want to leave the
23 courtroom right now, so yes.
24     THE COURT: Well, we wouldn't keep you in the
25 courtroom, but we would ask you to stay here.

**399**

1      THE WITNESS: Okay. It's a nice facility,
2  but I'd rather --
3      THE COURT: You can go home to Pittsburgh in
4  colder weather than we have here and come back if
5  you're needed.
6      You must give the gentleman reasonable notice
7  to get him back. And, of course, you must take
8  whatever steps are necessary to get him back here on
9  the schedule that is required by providing him
10 transportation. All right.
11     THE WITNESS: Thank you.
12     (The witness was excused from the witness
13 stand.)
14     THE COURT: Next witness.
15     Under the circumstances, is anybody offering
16 the deposition as an exhibit?
17     MR. McDONALD: No, Your Honor.
18     THE COURT: All right. Thank you.
19     All right. Next witness.
20     MR. ROBERTSON: The plaintiff would call
21 Robert Kinross, Your Honor.
22
23     ROBERT KINROSS, called by the Plaintiff, first
24 being duly sworn, testified as follows:
25

**400**

1      DIRECT EXAMINATION
2  BY MR. ROBERTSON:
3  Q  Sir, can you please introduce yourself to the
4  jury?
5  A  My name is Robert Kinross. I'm from Ben Allen,
6  Pennsylvania, which is a suburb of Pittsburgh.
7  Q  Let me stop you there. We'll get through this a
8  lot quicker if we just go step-by-step?
9  A  Okay.
10 Q  And the jury has heard of you, Mr. Kinross, as one
11 of the named inventors of these three patents
12 involving electronic sourcing. Is that accurate to
13 say you were one of the inventors?
14 A  Yes.
15 Q  You were working at Fisher-Scientific for a period
16 of time; is that right?
17 A  That's correct.
18 Q  When was it that you worked at Fisher-Scientific?
19 A  I worked there for 24 years. From 1979 until
20 2003.
21 Q  Briefly, what positions during those 24 years did
22 you hold with Fisher-Scientific?
23 A  I had a number of positions. I was hired as a
24 programmer analyst specializing in CICS. And I
25 advanced to systems analyst. I also became a systems

**401**

1  programmer, which was a function of maintaining the
2  CICS software. And I advanced to manager of
3  electronic catalog development.
4  Q  So you mentioned a few things there. I just want
5  to see if we can clarify them. You said you were a
6  program analyst in CICS. Can you explain to the jury
7  what that is? If you can, try in the simplest terms
8  so I can understand.
9  A  A programmer analyst is a person who takes
10 requirements and turns them into actual computer code.
11 And the CICS aspect of it is to know what the CICS
12 interfaces are and implement those in the program.
13     THE COURT: What does CICS stand for?
14     THE WITNESS: CICS is a Customer Information
15 Control System. It was a control program supplied by
16 IBM to control the hardware and software of a
17 computer.
18 BY MR. ROBERTSON:
19 Q  Is that kind of a tool for performing those
20 activities?
21 A  It's more of an infrastructure that provides for
22 development. So you could term it as a tool, but I
23 think it would be more than a tool.
24 Q  When you were at Fisher in those positions, can
25 you tell us some of the things that you did just very

### Page 446

1  MR. ROBERTSON: Thank you. I have nothing
2  further.
3  THE COURT: Can he be excused permanently or
4  do you need him back?
5  MR. McDONALD: I need him back, Your Honor.
6  THE COURT: All right. Mr. Kinross, you may
7  be required to come back here. And rather than have
8  you stay around, if you'll agree to come back when
9  they call you, and they'll give you as much notice as
10 they can, then you can leave.
11 THE WITNESS: Okay.
12 THE COURT: Under those conditions. Is that
13 all right with you?
14 THE WITNESS: Yes, that's fine.
15 THE COURT: All right. Well, have a safe
16 trip back to Pittsburgh.
17 THE WITNESS: All right. Thank you.
18 Should I leave these documents here?
19 THE COURT: Yes, just leave them there.
20  (The witness was excused from the witness
21 stand.)
22 THE COURT: Next witness.
23 MR. ROBERTSON: Yes, Your Honor. The
24 plaintiff would call Mr. James Johnson.
25 THE COURT: Are you-all all right or do you

### Page 447

1  need a recess? I didn't think to ask you all. Are
2  you okay now?
3  THE JURY: Yes.
4  THE COURT: Okay. If anybody needs anything,
5  make sure you let us know.
6  All right. Let's go. Who?
7  MR. ROBERTSON: James Johnson, Your Honor.
8  (Transcript continues on page 448.)

### Page 448

1  JIM JOHNSON,
2  a witness, called by the plaintiff, having been first duly
3  sworn, testified as follows:
4
5  MR. ROBERTSON: I'm sorry, is the witness sworn?
6  THE COURT: Yes, he's been sworn.
7
8  DIRECT EXAMINATION
9  BY MR. ROBERTSON:
10 Q  Sir, would you please introduce yourself to the jury.
11 A  My name is Jim Johnson.
12 Q  And where do you live, Mr. Johnson?
13 A  Pittsburgh, PA.
14 Q  And just briefly, give me your educational background.
15 A  Let's see. I have an associate's degree in computer
16 science. I also have a bachelor's degree in applied science
17 from Slippery Rock University.
18 Q  And have you ever taken any graduate classes?
19 A  I did start a graduate study but, unfortunately, never
20 finished.
21 Q  What do you currently do for a living, sir?
22 A  I'm the APV of information technology for a company called
23 Utility Service Partners.
24 Q  You said AVP. What does that stand for?
25 A  Assistant vice president.

### Page 449

Johnson - Direct                    449
1  Q  And IT, is that information technology?
2  A  Yes.
3  Q  And what is the business of Utilities Service Partners,
4  sir?
5  A  We provide service line warranties to customers that we
6  will come out and replace or fix your utility lines if they
7  break.
8  Q  And utility lines, what do you mean when you are using
9  that? Are you talking electrical lines?
10 A  Actually, yes. Electrical lines, gas lines, sewer lines.
11 Most homeowners don't realize in their area that they own the
12 line from the main, which is owned by the utility, to the
13 house.
14 Q  And before that company that handles these utility
15 services, you worked in the information technology department;
16 is that right?
17 A  I'm sorry.
18 Q  You worked in the information technology department for
19 that company?
20 A  Yes.
21 Q  At some point in your career, did you work with Fisher
22 Scientific?
23 A  Yes.
24 Q  When was that?
25 A  I believe I started in 1986 and up until 1998. About 12,

### 478

Johnson - Redirect

1  Q   What does it indicate a type 07 product is?
2  A   That's what I'm having a hard time recollecting.
3  Q   It says that distributor orders from Fairmont in
4  parentheses right after it. Do you see that?
5  A   Yes.
6  Q   Fairmont is not Fisher, is it?
7  A   No.
8  Q   So is that another vendor that's making product available?
9  A   That's another vendor that we wanted to put into the
10 catalog, yes, and we did want to be able to process purchase
11 orders to them.
12 Q   So for those third-party vendors such as this Fairmont
13 type 07 product, were database or program changes necessary to
14 RIMS to accommodate that type of third-party product?
15 A   Were database changes required, yes.
16 Q   Were they made?
17 A   Yes.
18     MR. ROBERTSON: Thank you. That's all I have.
19     THE COURT: Do you need him back?
20     MR. McDONALD: Yes, Your Honor.
21     THE COURT: Mr. Johnson, they're going to need you
22 back for another part of the case, so there's no need for you
23 to stay here in Richmond as much as we'd like to have you. But
24 you'll have to come back, and you'll be excused temporarily if
25 you agree to come back. They'll give you notice and get you

### 479

1  down here, pay your expenses to come.
2      THE WITNESS: Can I ask a question?
3      THE COURT: Yes.
4      THE WITNESS: I'm going to be out of the country at
5  the end of the month. I hope this doesn't interrupt that.
6      THE COURT: I hope it doesn't, too. They may be
7  flying you back from Europe.
8      THE WITNESS: It's the Caribbean, it's not Europe.
9      THE COURT: I will talk to them about how to handle
10 it in a way that will get you -- when is your departure?
11     THE WITNESS: My wife and I are leaving the last week
12 of January.
13     THE COURT: What day?
14     THE WITNESS: I think it's the Monday.
15     THE COURT: You give them the date, and we'll talk
16 about it.
17     THE WITNESS: Thank you.
18     THE COURT: We'll figure out a way to keep you from
19 missing a vacation.
20     THE WITNESS: I'd appreciate it.
21     THE COURT: I don't want to be named in any civil
22 action. All right. With that understanding that we'll work
23 around your schedule, you'll agree to be back, do you?
24     THE WITNESS: Yes.
25     THE COURT: Thank you. You are excused. All right,

### 480

1  ladies and gentlemen, we'll take the afternoon recess. We'll
2  take 20 minutes. Take your notebooks with you. Please be
3  seated while the jury is being excused.
4
5      (Jury out.)
6
7      THE COURT: All right, you can be excused, sir. Now,
8  what are you going to do next, Mr. Robertson?
9      MR. ROBERTSON: We have about our infringement
10 expert, Your Honor, Dr. Weaver.
11     THE COURT: So we're going to get started with him.
12     MR. ROBERTSON: Yes, sir. There's a number of
13 exhibits involved. I don't want it to appear intimidating when
14 it's brought in. Some of them are large manuals, but he's
15 going to be referring to select pages, but I think it does
16 constitute eight volumes.
17     THE COURT: You don't need to give them to me, do
18 you?
19     MR. ROBERTSON: I certainly hope not.
20     THE COURT: I don't think I need them unless I have
21 to rule on something. What I do want -- have I got all of his
22 reports?
23     MR. ROBERTSON: Expert reports?
24     THE COURT: Yes.
25     MR. ROBERTSON: I believe we have a set here.

### 481

1      THE COURT: Okay, because if I get an objection
2  because something is beyond the scope of the report, I need the
3  report to deal with it.
4      MR. ROBERTSON: I understand, Your Honor.
5      THE COURT: I don't know that we're going to have
6  that, but for each expert, I do need the reports. All right,
7  we'll take a 20-minute --
8      MR. ROBERTSON: Your Honor, may I raise one quick
9  housekeeping issue? You may recall Dr. Weaver had medical
10 issues and needs to stretch his back every once in a while.
11     THE COURT: He can stand up any time he wants to.
12     MR. ROBERTSON: All right, thank you, sir.
13     THE COURT: I mean if we need to take a break, we
14 will, but I hope we won't be here that long. All right, Mr.
15 Merritt?
16     MR. MERRITT: Yes, sir.
17     THE COURT: Get an appointment for these two with
18 your doctor for else we're all going to be infected.
19     MR. MERRITT: Judge, I need one, too. They've
20 infected me now. We'll get a group rate, too.
21     THE COURT: If you can't get yours, I'll go get mine.
22 Don't anybody come up this way.
23     MR. MERRITT: You don't mind if people have a cough
24 drop?
25     THE COURT: I've been taking them all day. I have

## Page 741

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF VIRGINIA
 3                        RICHMOND DIVISION
 4
 5    -------------------------------------
                                           :
 6    ePLUS, INC.              : Civil Action No.
                               : 3:09CV620
 7    vs.                      :
                               :
 8    LAWSON SOFTWARE, INC.    : January 7, 2011
                               :
 9    -------------------------------------
10
11         COMPLETE TRANSCRIPT OF THE JURY TRIAL
12         BEFORE THE HONORABLE ROBERT E. PAYNE
13        UNITED STATES DISTRICT JUDGE, AND A JURY
14
      APPEARANCES:
15
      Scott L. Robertson, Esquire
16    Michael G. Strapp, Esquire
      Jennifer A. Albert, Esquire
17    David M. Young, Esquire
      Goodwin Procter, LLP
18    901 New York Avenue NW
      Suite 900
19    Washington, D.C.  20001
20    Craig T. Merritt, Esquire
      Christian & Barton, LLP
21    909 East Main Street
      Suite 1200
22    Richmond, Virginia  23219-3095
      Counsel for the plaintiff
23
24            Peppy Peterson, RPR
              Official Court Reporter
25           United States District Court
```

## Page 742

```
 1    APPEARANCES: (cont'g)
 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219
 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
      Merchant & Gould, PC
 7    80 South Eighth Street
      Suite 3200
 8    Minneapolis, Minnesota  55402
```

## Page 743

```
 1                    P R O C E E D I N G S
 2
 3         THE CLERK:  Civil action number 3:09CV620, ePlus,
 4    Incorporated, versus Lawson Software, Incorporated.  Mr. Scott
 5    L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr.
 6    Michael G. Strapp, and Mr. David Young represent the plaintiff.
 7         Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 8    Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent
 9    the defendant.  Are counsel ready to proceed?
10         MR. ROBERTSON:  Yes, Your Honor.
11         MR. McDONALD:  Yes, sir.
12         THE COURT:  Good morning.  Good morning, ladies and
13    gentlemen.  I was informed by the clerk that you all needed to
14    know the procedure for asking questions, and if you have
15    questions, it's all right.
16         I think the best way to do this is for you to write
17    your question out and then send it up to Mr. Neal, and he'll
18    give it to me, because there's some kind of questions that,
19    perhaps, are better -- I will tell you immediately, I can't
20    answer that or we can't get into that.
21         Others -- and I found this to be the case most of the
22    time.  Other questions are very helpful to the lawyers to have,
23    because if you have -- you are the ones who have to decide the
24    case, and if you have a question, they need to know it and need
25    to work out a way to get the information to you through their
```

## Page 744

```
 1    questions.
 2         So if you feel like you have a question, you can
 3    write them out, send them to me, and I'll take them and look at
 4    them.  Unless it's something that I can't allow, we'll work out
 5    a way to get you the information that you need.
 6         You all look like you're not as drained as you were
 7    when you left yesterday afternoon.  I feel the same way, so
 8    let's get a fresh start.  Let's go ahead, Mr. Robertson.
 9         MR. ROBERTSON:  Thank you, Your Honor.  Good morning.
10
11             ALFRED C. WEAVER,
12    a witness, called by the plaintiff, having been previously
13    duly sworn, testified as follows:
14             DIRECT EXAMINATION
15    BY MR. ROBERTSON:  (resuming)
16    Q   Good morning, Dr. Weaver.
17    A   Good morning, Mr. Robertson.
18    Q   I'd like to start out looking at Plaintiff's Exhibit
19    Number 219, if I could, sir, in binder number five.  Before we
20    get there, I have a few preliminary questions.
21         Do you know whether or not Lawson provides services to its
22    customers to assist them in importing vendor catalog data into
23    its item master?
24    A   Yes, I do.  There was witness testimony to that from the
25    customers.
```

## Page 921

Weaver - Redirect

1  and I'd like some clarification. Keeping in mind the Court's
2  construction of the term catalogs/product catalog, are the
3  Punchout catalogs also catalogs within the meaning of the claim
4  construction in your opinion, or are they not?
5        THE WITNESS: They are.
6        THE COURT: So then there are two kinds of catalogs
7  that we deal with. One is item master plus vendor item table,
8  and the other is the Punchout catalogs.
9        THE WITNESS: Your Honor, you are correct, and the
10 point I was trying to make is that the Lawson item master and
11 vendor item table, which are collectively the database, you
12 could -- it contains item data from many external catalogs.
13 Q  We were referring to that internal catalog that you
14 indicated is the item master table and the vendor table with
15 data?
16 A  Right.
17 Q  As the internal catalog; is that right?
18 A  Yes.
19 Q  And this Punchout catalog, what's the shorthand we've been
20 using to refer to those catalogs?
21 A  Those are external catalogs.
22 Q  And in particular, there was one claim -- I believe it was
23 dependent claim two in the '516 patent -- which required
24 catalogs to be stored separate databases; do you recall that?
25 A  I have that in front of me.

## Page 922

Weaver - Redirect

1  Q  So in that claim, what did you find constituting a
2  separate database?
3  A  Those were the separate databases of the external Punchout
4  sites.
5  Q  There was some questions about keyword search. If I
6  search for a keyword, and it generates a matching item -- will
7  it generate a matching item for any vendor who is offering
8  items that match that keyword?
9  A  Yes.
10 Q  So if I use a keyword laptop, and the Lawson accused
11 system has ten different catalogs, Dell, Hewlett Packard, IBM,
12 Sony, that are all selling laptops, what will happen when I hit
13 the enter button on that search?
14 A  The search engine will find all of the items containing
15 that keyword, display multiple items from multiple vendors.
16 Q  So have I searched the catalogs that have any of those
17 items that match my keyword?
18 A  The ones that match the keywords, yes.
19 Q  Could claim two also be satisfied by a system having
20 internal database plus an external Punchout database?
21 A  Sure.
22       THE COURT: Is that it?
23       MR. ROBERTSON: That's it, Your Honor. Thank you.
24       THE COURT: Ladies and gentlemen, we're going to take
25 about a 15-minute recess.

## Page 923

1
2        (Recess taken.)
3
4        THE COURT: Where is Dr. Weaver? You don't need to
5  come up. They're going to need you back in the defendant's
6  case. And, of course, you're probably going to be called in
7  the plaintiff's rebuttal case, so you are released to go about
8  your business upon your agreement to come back when we need
9  you, and I assume you'll do that. Thank you for being here.
10       THE WITNESS: Yes, sir, thank you, Your Honor.
11       MR. McDONALD: I was going to say, this question
12 actually might involve him helping us answer it.
13       THE COURT: Oh, okay. Why don't you sit down there
14 for a minute. We might need you. Thank you. That was a good
15 catch.
16       Did you get the question from the juror? The item
17 master plus the item table plus the item something equals a
18 database. I think that was the item master plus the vendor
19 table plus the vendor item locator.
20       THE WITNESS: Item location table.
21       THE COURT: But I think it's probably -- if you all
22 don't stipulate to that, maybe you better have him testify to
23 it.
24       MR. McDONALD: It might be in the transcript where we
25 could read it back if we have a transcript --

## Page 924

1        THE COURT: I think we had a different court
2  reporter. We'll just -- come on back to the stand for a
3  minute, and get the jury, please. Thank you very much.
4
5        (Jury in.)
6
7        THE COURT: I'm going to mark this as Court
8  Exhibit 1.
9        MS. STOLL-DeBELL: Your Honor, I was going to step
10 out and tell Mr. Lohkamp he can leave.
11       THE COURT: Mr. Who?
12       MS. STOLL-DeBELL: One of our witnesses.
13       MR. McDONALD: She's just going to step out of the
14 courtroom for a moment.
15       THE COURT: Oh, sure.
16       MR. McDONALD: I could have said that much better.
17       THE COURT: I just had a little trouble hearing.
18 You'll I understand that when you get older.
19       All right, ladies and gentlemen, who is going to ask
20 this question to get it straight? Mr. Robertson, do you want
21 to go ahead?
22       MR. ROBERTSON: Sure. Dr. Weaver, there's been a
23 question concerning what the, I guess the catalogs of the
24 Lawson systems are, and --
25       THE COURT: No. The question is the database. He

## 925

1  testified earlier about a database, and then I asked him a
2  question, and the question is, the item master plus the item
3  table plus the item question mark equals a database, and that
4  really wasn't what he said, but it was close.
5       Will you recite, sir, what you said was the database
6  in response to the question we were talking about earlier?
7       THE WITNESS: Yes, Your Honor. The database is the
8  item master, the vendor table, and the item location table.
9       THE COURT: Item location table is the other question
10 mark. All right.
11      MR. ROBERTSON: Can I ask you what database is that,
12 Dr. Weaver?
13      THE COURT: That's fine. You can ask that question.
14 Then Mr. McDonald, since he's the one that started it all
15 anyway, can have a shot at it, too.
16      THE WITNESS: That's the Lawson database.
17      MR. ROBERTSON: Thank you.
18      THE COURT: Mr. McDonald, do you want to ask him
19 anything?
20      MR. McDONALD: Nothing else, Your Honor.
21      THE COURT: All right, Dr. Weaver, you're excused
22 subject to the recall we talked about a little while ago.
23      THE WITNESS: Thank you, Your Honor. Thanks to the
24 jury.
25      THE COURT: All right, your next witness, please,

## 926

1  sir, Mr. Robertson.
2       MR. ROBERTSON: (No response.)
3       THE COURT: Mr. Robertson is resting his case.
4       MR. ROBERTSON: I'm sorry, Your Honor. No, Your
5  Honor, we have a deposition, video deposition of Mr. Jeffrey
6  Frank, a vice president of marketing for Lawson.
7       THE COURT: All right. Ladies and gentlemen, a
8  deposition is something that occurs before the trial, and in
9  the course of the pretrial proceedings, the lawyers for each
10 side get together, and they ask a witness certain questions.
11 And the witness is testifying. In this instance, this witness
12 is an officer of Lawson, and I'll give you further instructions
13 about how you consider the testimony of officers of a
14 corporation, but it's just as if Mr. Frank was sitting right
15 there and testifying. You're just going to see it on
16 television, because they are entitled to do that.
17      MR. ROBERTSON: There would be some exhibits with Mr.
18 Frank's testimony, and I have a copies of his transcript if the
19 Court and law clerk would like them.
20      THE COURT: Does the jury need exhibits?
21      MR. ROBERTSON: They will ultimately get the exhibits
22 in the jury room.
23      THE COURT: I mean are they shown on the screen.
24      MR. ROBERTSON: They will be depicted on the screen
25 as we're going through the video.

## 927

1       THE COURT: Okay. All right, is your screen all
2  right? All right, you don't need it dark. All right, thank
3  you.
4
5       (Videotaped deposition of Jeffrey P. Frank played.)
6       (Playback interrupted.)
7
8       MR. McDONALD: We thought this was going to be the
9  stipulated version of the video. It does not appear to be the
10 one we had worked out.
11      THE COURT: You mean -- is it up to here?
12      MR. McDONALD: I think up to just a couple minutes
13 ago it was, yes. It looked familiar. If we can take it off
14 the screen for a moment, please.
15      THE COURT: Beginning with where?
16      MR. McDONALD: I think actually number 22 at page
17 ten, somewhere around there.
18      THE COURT: About the initial licensing component?
19 Is it fair to say that for products such as this, Lawson
20 generates revenues for all four of those categories, is that
21 what you're talking about?
22      MR. McDONALD: Yes. Actually, number 22 -- back it
23 up a little bit, but that's close enough.
24      THE COURT: I don't have -- yes, 22 --
25      MR. McDONALD: There's an entry number 22nd that

## 928

1  begins at 88:06. That's where I would start.
2       THE COURT: Where do you end?
3       MR. ROBERTSON: Your Honor, could I just be heard
4  briefly?
5       THE COURT: First I'd like to define what we're
6  talking about.
7       MR. McDONALD: I think I would end it at least 11:08,
8  Your Honor, without reading further. Actually, it may continue
9  from there as well. It does not end at 11:08.
10      THE COURT: Does it include all of 22, item 22?
11      MR. McDONALD: Yes, all of item 22 --
12      THE COURT: Over to 23?
13      MR. McDONALD: Yes, it continues with item 23.
14      THE COURT: Down to where?
15      MR. McDONALD: All of 23, yes. 24, I can't tell.
16 That's a question and answer. I can't tell the context of
17 that. 25 would seem to include a string that is one we would
18 dispute as well.
19      I have to say, I honestly don't have the actual
20 stipulated parts, but this stuff looks specifically like things
21 I thought had actually been excluded by the Court.
22      THE COURT: Well, that goes all the way down through
23 25, that topic does.
24      MR. McDONALD: I believe you are right.
25      THE COURT: Just so I understand, your objection is

## Page 1188

```
 1        IN THE UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF VIRGINIA
 3                  RICHMOND DIVISION
 4
 5   -------------------------------------
                                         :
 6   ePLUS, INC.              : Civil Action No.
                              : 3:09CV620
 7   vs.                      :
                              :
 8   LAWSON SOFTWARE, INC.    : January 12, 2011
                              :
 9   -------------------------------------
10
11         COMPLETE TRANSCRIPT OF THE JURY TRIAL
12         BEFORE THE HONORABLE ROBERT E. PAYNE
13       UNITED STATES DISTRICT JUDGE, AND A JURY
14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   David M. Young, Esquire
     Goodwin Procter, LLP
18   901 New York Avenue NW
     Suite 900
19   Washington, D.C.  20001
20   Craig T. Merritt, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia  23219-3095
     Counsel for the plaintiff
23
24        Peppy Peterson, RPR
          Official Court Reporter
25        United States District Court
```

## Page 1189

```
 1   APPEARANCES:  (cont'g)
 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia  23219
 5   Daniel W. McDonald, Esquire
     Kirstin L. Stoll-DeBell, Esquire
 6   William D. Schultz, Esquire
     Merchant & Gould, PC
 7   80 South Eighth Street
     Suite 3200
 8   Minneapolis, Minnesota  55402
```

## Page 1190

             P R O C E E D I N G S

    THE CLERK:  Civil action number 3:09CV00620, ePlus, Incorporated, versus Lawson Software, Incorporated.  Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr. Michael G. Strapp represent the plaintiff.

    Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent the defendant.  Are counsel ready to proceed?

    MR. ROBERTSON:  Plaintiff is, Your Honor.

    MR. McDONALD:  Yes, Your Honor.

    THE COURT:  All right.  You said you wanted to see me before the jury comes in.

    MR. McDONALD:  Yeah, there's basically three issues we wanted to raise.

    THE COURT:  The court reporters always can hear better if you come to the lectern.

    MR. McDONALD:  There's basically three issues that we wanted to raise this morning.  One is our third witness in our case that we start today is Ms. Raleigh.

    THE COURT:  Third witness in what?

    MR. McDONALD:  In our case when we start presenting our case today.  We have Mr. Richard Lawson first, Mr. Christopherson second, and then Hannah Raleigh was supposed to come back and be third today.

## Page 1191

    She was supposed to be back last night from New York, and New York is getting hammered real bad by this blizzard. She's trying to get another flight, but her flight is not going to get her here until after the trial day is over today.  So we've been trying to work something out with ePlus about what we would do next because we haven't disclosed any exhibits or anything for the next witness.

    THE COURT:  Just call the next witness, the expert or whoever you've got here.  There's no magic to the order of putting people on.

    MR. McDONALD:  The next witness we would have actually here is Mr. Lohkamp, calling him back.

    THE COURT:  Good.

    MR. McDONALD:  That's fine.  They haven't had a chance to get ready for their cross-examination.

    THE COURT:  They'll be ready.  They knew basically what you were going to do anyway.  They're not going to do it on your cross-examination; they were going to do redirect, so we're going to reverse things.

    MR. McDONALD:  We do have a deposition of Ms. O'Loughlin on the RIMS prior art issue that we can move up in the order.

    THE COURT:  Is that carefully edited to eliminate the trash?

    MR. McDONALD:  That's being worked on as we speak,

## NIEMEYER - REDIRECT     1296

1  about the functionality of these six different
2  features that you were asked to investigate?
3  A  No, it was not. I was able to determine the
4  relevant source code and review what was necessary to
5  understand those functions.
6  Q  Was it necessary to review all of the source code
7  relevant to the inventory control module in order to
8  render your opinions about the functionality of the
9  features that you investigated?
10 A  No. Again, I was able to determine which subset
11 was necessary for review.
12      MS. ALBERT: Mike, could we have slide 86
13 back, please.
14      THE COURT: Slide what?
15      MS. ALBERT: 86.
16      THE COURT: Is that this one?
17      MS. ALBERT: I'm sorry.
18      THE COURT: You didn't get to this because he
19 hadn't seen it before except there was a different
20 version of it with the blue stacked on top, and I
21 sustained the objection.
22      MS. ALBERT: Slide 85. I'm sorry. My
23 eyesight is going. Sorry.
24 BY MS. ALBERT:
25 Q  Now, are all of the tables illustrated in your

## NIEMEYER - REDIRECT     1297

1  demonstrative here included within the item master
2  database?
3  A  Yes, they are.
4  Q  Is there a field for vendor name in one of the
5  tables within this database?
6  A  I believe the POITEMVEN table includes a field for
7  vendor name.
8  Q  What tables of the item master database are
9  indexed for keyword searching?
10 A  My understanding is that the ITEMMAST table, the
11 POITEMVEN table, and the ITEMLOC table.
12 Q  You mentioned these user defined fields in the
13 ITEMMAST table. Can you explain what these user
14 defined fields are?
15 A  Yes. These are sort of like empty slots or empty
16 spaces left in the table, which can be filled in with
17 data determined by the user. So there's some extra
18 storage space that the user can fill with data of
19 their choosing, and those fields can be indexed for
20 search within the Lawson system.
21 Q  So can a user put any type of data that they want
22 into one of these user defined fields?
23 A  Yes, they could.
24 Q  Would a vendor name be a type of data that a user
25 could put into one of these user defined fields?

## NIEMEYER - REDIRECT     1298

1  A  Yes.
2  Q  Can these user defined fields be enabled for
3  keyword searching?
4  A  Yes, they can.
5      MS. ALBERT: Thank you. I have nothing
6  further.
7      THE COURT: You need Mr. Niemeyer back in
8  your rebuttal?
9      MR. ROBERTSON: I don't think so, Your Honor,
10 but I'd like to reserve on that.
11     THE COURT: All right, Mr. Niemeyer, they may
12 need you back later in the case. So you're excused
13 temporarily so long as you agree to come back when
14 they notify you that you need to come back. Do you
15 agree to do that?
16     THE WITNESS: Sure.
17     THE COURT: Thank you very much. You're
18 excused temporarily. Thank you.
19     THE WITNESS: Thank you, Your Honor.
20     (The witness was excused from the witness
21 stand.)
22     THE COURT: Next witness.
23     MR. STRAPP: EPlus calls as its next witness
24 Mr. Farber.
25     THE COURT: All right.

## NIEMEYER - REDIRECT     1299

2     KENNETH G. FARBER, called by the Plaintiff, first
3  being duly sworn, testified as follows:

5     DIRECT EXAMINATION
6  BY MR. STRAPP:
7  Q  Would you please state your name for the record?
8  A  Kenneth G. Farber.
9  Q  Please describe where you're presently employed.
10 A  I'm presently employed at ePlus, Incorporated.
11 Q  What's your position at ePlus?
12 A  I'm the president of ePlus Systems and Content
13 Services.
14 Q  How long have you been in that position?
15 A  About 10 years now.
16 Q  Was that your first position at ePlus?
17 A  Yes, it was.
18 Q  How did you come to work at ePlus?
19 A  I worked at a company called ProcureNet that sold
20 some of the assets of that company to ePlus. So I
21 joined ePlus following that acquisition.
22 Q  What was the business of ProcureNet, the company
23 you worked at before ePlus?
24 A  The component business that I worked at,
25 ProcureNet, dealt with sourcing and catalog management