# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| *e*PLUS INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-CV-620 (REP) |
| ) | |
| v. ) | |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF *e*PLUS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY'S FEES PURSUANT TO 35 U.S.C. § 285

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Attorneys for Plaintiff, ePlus, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Lawson's Baseless Litigation Arguments Have Continued After The Trial ...........2

    B. That *e*Plus Did Not Request The Full Amount Of Its Attorney's Fees Is No Basis To Deny Its Motion ...................................................................................3

    C. *e*Plus Is The Prevailing Party ...................................................................................5

    D. Lawson's Vexatious And Bad Faith Litigation Conduct Establish This Is An Exceptional Case .................................................................................................6

        1. Defendant's repeated refusal to limit its invalidity contentions to what it disclosed in its Second Supplemental Statement was vexatious litigation. .................................................................................. 8

        2. Lawson's attempt to circumvent the Court's orders by placing opinions already excluded or otherwise stricken into the Staats and Knuth Reports was vexatious litigation. .................................................... 11

        3. Lawson's repeated non-infringement arguments pertaining to whether its catalogs are "published by a vendor" was vexatious litigation. ......................................................................................................... 13

III. CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005) .................................................................................................. 5

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001).................................................................................................................. 5

*Eltech Sys., Corp. v. PPG Indus.*,
  903 F.2d 805 (Fed. Cir. 1990) ................................................................................................ 10

*In re Omeprazole Patent Lit.*,
  483 F.3d 1364 (Fed. Cir. 2007) ................................................................................................ 5

*IVAC Corp. v. Terumo Corp.*,
  1990 WL 180202 (S.D. Cal. Aug. 9, 1990) .............................................................................. 7

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*,
  464 F.3d 1339 (Fed. Cir. 2006) ................................................................................................ 5

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  372 F.Supp.2d 833 (E.D. Va. 2005) .................................................................................. 7, 10

*Samsung Elecs. Co. v. Rambus, Inc.*,
  439 F. Supp.2d 524 (E.D. Va. 2006), *vacated as moot,* 523 F.3d 1374 (Fed. Cir. 2008) ...... 4, 7

*Sanford v. Commonwealth of Virginia*,
  689 F. Supp. 2d 802 (E.D. Va. 2010) ....................................................................................... 8

*Serrano v. Telular Corp.*,
  111 F.3d 1578 (Fed. Cir. 1997) ................................................................................................ 6

*Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*,
  929 F.2d 676 (Fed. Cir. 1991) .................................................................................................. 6

*Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*,
  459 F. Supp. 2d 227 (S.D.N.Y. 2006), *aff'd,* 549 F.3d 1381 (Fed. Cir. 2008).......................... 7

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989).................................................................................................................. 5

**Statutes**

35 U.S.C. § 102............................................................................................................................ 11

35 U.S.C. § 103............................................................................................................................ 11

## I.     INTRODUCTION

None of Defendant Lawson Software, Inc.'s ("Lawson") arguments merit denial of Plaintiff *e*Plus Inc.'s ("*e*Plus") request that this Court find this to be an exceptional case and award *e*Plus its reasonable attorney's fees.  In fact, since the trial of this action, Lawson's meritless litigation arguments have only continued.  As the Court will recall, when Lawson argued against the permanent injunction and in favor of a stay, it contended that the sky would fall on it and its customers if an injunction were entered.  Lawson made similar claims in "emergency motions" to the Federal Circuit.  In consideration of such arguments, this Court generously included a six month sunset provision for Lawson's health care customers.  Yet only days after this Court entered the injunction and denied the stay, Lawson announced that it had a supposed "design-around" that its customers could implement *for free* in less than half an hour.  Ex. I.  Lawson has also filed a motion for the Court to reconsider or modify the injunction based on the same arguments this Court has already heard and ruled upon, and, moreover, based on arguments that Lawson expressly withdrew at trial.  *See generally* Dkt. Nos. 749, 750.[1]

In addition, that *e*Plus requested only a portion of its attorney's fees actually incurred is no basis to deny the motion.  And no amount of Lawson's mantra that all of its tactics were undertaken "reasonabl[y]" and in "good faith," makes it so, particularly when the Court has already heard all of these issues and ruled adversely to Lawson.  Lawson's opposition, again, is little more than a rehash of arguments the Court has already heard and rejected in the context of discovery and trial motions.

Accordingly, the Court should grant *e*Plus's motion, declare the case exceptional, and award *e*Plus its reasonable attorney's fees.

---

[1] *e*Plus's opposition to Lawson's motion to reconsider will be filed this same day.

II.     **ARGUMENT**

    A.     **Lawson's Baseless Litigation Arguments Have Continued After The Trial**

Although Lawson repeatedly professes that all of its litigation tactics have been undertaken reasonably and in good faith, its post-trial conduct is further evidence to the contrary. In opposing the motion for a permanent injunction and in support of its request for a stay, Lawson argued vehemently that severe harm would befall it and its customers if an injunction were entered. Lawson claimed that it would cost as much as a million dollars per customer and take nearly a year for customers to transition to a non-infringing system. Ex. J, Inj. Tr. 219:1-10 (Hager) (would take customers nine months on average to implement non-infringing system); 262:17-263:11 (Hager) (estimating that it would take a customer about nine months to implement non-infringing system at a cost of $750,000 on average and that some customers might incur costs greater than $1 million). This Court expressly found Lawson's primary witness, Mr. Hager, to not be credible in his claims. Ex. K, Hearing Tr. 75:20-25 (Apr. 4, 2011) ("I'm going to find, I found Mr. Hager's testimony to be so exaggerated … I don't believe him. He just exaggerated and exaggerated and made more out of it than made any sense, so I don't accept his testimony as credible.") Nonetheless, the Court generously included a six month sunset provision for health care customers in consideration of the inconvenience such customers might face. Dkt. No. 729 at 4.

Yet within days of the Court's injunction and stay orders, Lawson announced to its customers that it had immediately available a supposed "design-around" that the customers could implement for free in a half an hour or less. Ex. I.[2] There is simply no way to square Lawson's

---

[2] *e*Plus is highly skeptical of Lawson's claim to have this "design around," and publicly-available information suggests that Lawson's supposed changes to its systems are superficial. When *e*Plus requested that Lawson provide back-up documentation for its claims, Lawson

2

present stance with the dire predictions that it posed to this Court when it was considering the injunction and stay motions.

In addition, Lawson has filed a motion for the Court to reconsider, clarify, or modify the injunction order, supposedly in response to a Supreme Court decision that pertains to the knowledge of the patents-in-suit required for inducement. Dkt. Nos. 749, 750. As *e*Plus has argued separately in opposition to that motion this same day, the Supreme Court decision has no bearing on the issues in this case and does not require this Court to revisit the injunction order whatsoever. But moreover, Lawson's motion rehashes arguments that this Court has already heard and rejected, and that have no connection with the Supreme Court decision on which the motion is purportedly based. Indeed, the motion includes arguments that Lawson either failed to raise, or raised and **withdrew,** at trial. *See* Ex. L, Tr. 2965:12 – 2966:18 (Lawson raising, and then withdrawing, objection now presented in motion to reconsider injunction order).

**B.    That *e*Plus Did Not Request The Full Amount Of Its Attorney's Fees Is No Basis To Deny Its Motion**

Proving the axiom that "no good deed goes unpunished," Lawson argues that the Court should deny *e*Plus's motion because it requested only a fraction of the attorney's fees that it actually incurred in the prosecution of this action. However, as evidenced by the lack of any case law support for Lawson's argument, that *e*Plus itself proposed to reasonably limit its fees is no basis to deny the motion. This Court has discretion to determine the amount of a fee award to *e*Plus, and it follows that the Court may award less than the full amount of *e*Plus's fees. *Samsung Elecs. Co. v. Rambus, Inc.,* 439 F. Supp.2d 524, 572 (E.D. Va. 2006), *vacated as moot,*

---

adamantly refused to provide anything more than limited information, and pointedly argued that this Court lacked jurisdiction to authorize any discovery of the alleged design-around.

523 F.3d 1374 (Fed. Cir. 2008). That *e*Plus has opted to self-limit its fee request in this manner does not show that it should not be awarded any fees whatsoever.

In fact, the issues for which *e*Plus has proposed to limit its fee request — Lawson's ceaseless attempts to evade the Court's orders with respect to invalidity theories, and Lawson's non-infringement argument based on "published by a vendor" — were central to the trial of this case. For many of the claim elements, it was essentially undisputed that Lawson met them, and the "published by a vendor" issue became the centerpiece of Lawson's non-infringement position. *See* Ex. N, Tr. 3174:15-18 (Lawson closing argument stating, "We made it pretty clear from the first moment in this case that this issue came down to the catalogs issue").

Likewise, the scope of Lawson's invalidity allegations resulted in countless skirmishes before and during trial that should have been unnecessary, and Lawson's positions continued to "evolve" throughout the trial. These were not mere "perceived procedural irregularities," as Lawson blithely refers to them. Opp. at 4. As the Court stated in connection with its many orders pertaining to Lawson's evolving invalidity theories, the Court's requirements for timely and complete disclosure of invalidity theories "were put in place in order that everybody would know how the discovery was to proceed, what were the contentions, what are the contentions, what do we then direct the discovery to. They are not just pro forma requirements … they are the skeleton of the case to which the flesh and muscles and viscera are attached by discovery, and they mean something." *e*Plus Opening Br., Ex. D (Hearing Tr.) at 183:24-184:12 (July 28, 2010). Accordingly, these were not trivial issues. The Court should therefore reject Lawson's argument that the motion should be denied because it requests only a fraction of *e*Plus's fees actually incurred.

### C. *e*Plus Is The Prevailing Party

Lawson implies that it, not *e*Plus, is the prevailing party. Opp. Br. at 2-4 (section entitled "Lawson's Successful Defense"). This argument is without merit. A plaintiff is "[a] 'prevailing part[y]' for attorney's fees purposes if [it] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, n.7 (1983)); *see also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001) (prevailing party received at least some relief on the merits of its claim and such relief creates a material alteration in the legal relationship of the parties). It is well established that a party need not succeed on every issue in order to be considered the "prevailing party" for purposes of a request for attorney's fees. *See, e.g., In re Omeprazole Patent Lit.,* 483 F.3d 1364, 1376 (Fed. Cir. 2007); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.,* 464 F.3d 1339, 1347 (Fed. Cir. 2006); *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Lawson does not cite even a single case in support of its position.

Lawson's argument that *e*Plus initially alleged infringement of all 79 claims of the three patents-in-suit is wholly irrelevant for another reason. The Court required *e*Plus to limit the number of asserted claims for trial in order to make the trial more efficient, it did not render a substantive ruling that Lawson did not infringe the 67 claims that were not asserted at trial. Indeed, *e*Plus believes that Lawson's accused system configurations do, in fact, infringe all of the claims of the patents-in-suit.

*e*Plus's Complaint sought, among other relief, a decree that each of the three patents-in-suit are valid, a decree that Lawson has infringed each patent-in-suit and an order permanently enjoining Lawson's continued infringement. *See* Compl. (Dkt. No. 1) at 9-10. The Court's

5

judgment and injunction order materially altered the legal relationship between the parties and provided *e*Plus with a substantial amount of the relief it sought in filing the Complaint.

Lawson argues that the PTO's reexaminations of the patents-in-suit — ***in completely separate proceedings*** — somehow make it the prevailing party ***in this litigation***. Opp. Br. at 3. Not surprisingly, Lawson does not cite any case to support its position that a separate administrative proceeding dictates whether a party has prevailed in litigation before this federal district court. Nor could it. Not only are those proceedings entirely separate, they are not final (indeed, it is possible they are years away from final resolution). Moreover, the most advanced of those proceedings — and that on which Lawson primarily relies, Opp. at 3 — was not initiated by Lawson at all, and pertains to different prior art from that relied upon by Lawson at the trial of this case. Accordingly, it would be anomalous to hold that Lawson is the prevailing party in this case because of a separate, non-final administrative proceeding to which Lawson is not a party, and which pertains to different prior art from that asserted by Lawson in this litigation.

### D. Lawson's Vexatious And Bad Faith Litigation Conduct Establish This Is An Exceptional Case

As set forth in *e*Plus's opening brief, the Court is free to consider the totality of circumstances, including vexatious litigation conduct, in assessing whether a case is exceptional, and a party's disregard for a Court order is itself a basis for finding a case to be exceptional.[3]

---

[3] Lawson makes the blanket statement that *e*Plus's cited cases "primarily concern patentees who either willfully infringed, engaged in equitable [sic] conduct before the USPTO, filed frivolous or baseless infringement lawsuits, or all of the above." Opp. Br. at 14. However, courts have found cases to be exceptional even where there is no willful infringement. *See, e.g., Serrano v. Telular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997) (affirming finding of exceptional case and award of fees where "district court cited several examples of [Defendant's] litigation conduct that resulted in needless expense by [Plaintiff]" ***including that Defendant continually re-litigated issues already decided***); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 679 (Fed. Cir. 1991) (affirming finding of exceptional case and award of attorneys fees based on

6

Moreover, as discussed *supra,* courts have found cases to be exceptional even though the prevailing party did not achieve a complete and total victory. *See, e.g., IVAC Corp. v. Terumo Corp.*, 1990 WL 180202, *2 (S.D. Cal. Aug. 9, 1990) (finding exceptional case and awarding fees where jury found that Defendant had infringed twelve of sixteen claims).

Lawson's arguments seem to suggest that a case cannot be exceptional unless each action taken by the losing party amounted to vexatious litigation. This is not the law; as set forth *supra,* the Court has the discretion to apportion fees based on the extent to which vexatious litigation tactics affected the case. *Samsung Elecs.,* 439 F. Supp.2d at 572. Moreover, Lawson's repeated claims that its actions were "reasonable" and in "good faith" do not make it so. Lawson's explanations for its actions are mere rehashes of the arguments that Lawson already presented, and the Court rejected, when these issues were previously before the Court. As was set forth in *e*Plus's opening brief and herein, the Court repeatedly found that Lawson's actions were impermissible under the Court's Orders, and taken without good cause. These tactics resulted in the Court stating in its post-trial opinion that Lawson used a "highly contentious approach to this litigation, which was to contest virtually every issue (often needlessly and with dubious reason"). Dkt. No. 728 at 31.

---

pattern of vexatious litigation conduct); *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 250 (S.D.N.Y. 2006) (finding exceptional case and awarding fees citing, *inter alia*, **Defendant's shifting theory of invalidity**), *aff'd* 549 F.3d 1381 (Fed. Cir. 2008) (awarding fees due to **defendant's disobedience of court orders**). Lawson's reliance on *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp.2d 833, 851-52 (E.D. Va. 2005) is unavailing given that the Court denied the request for attorney's fees because the patentee could not show that the infringer engaged in any bad faith litigation tactics during the proceedings.

### 1. Defendant's repeated refusal to limit its invalidity contentions to what it disclosed in its Second Supplemental Statement was vexatious litigation.

With respect to Lawson's ever-evolving invalidity theories, its Opposition does little more than reargue the discovery motions that this Court already resolved against Lawson. Not only did the Court reject Lawson's arguments when the motions were before the Court, the Court also admonished Lawson that it would consider granting *e*Plus judgment as a matter of law if Lawson persisted in its evasions of the Court's orders throughout the trial. *See e*Plus Opening Br. (Dkt. No. 740-2), Ex. G, Tr. 104:6-105:9 (THE COURT: "that's an appropriate sanction for ***repeated disobedience of the Court's directives*** because I can't conduct a trial being constantly on the concern that somebody is trying to come in the back door") (emphasis added).

The Court ordered very early in the case that Lawson must disclose its invalidity defenses and evidence to be relied upon with specificity – Lawson ***violated that order at least six times***, forcing *e*Plus to expend considerable time and resources to seek relief from the Court. And of course, the Court was required to expend considerable time and effort in addressing those motions. Lawson's repeated defiance of the Court's orders was vexatious and "without reasonable or probable cause or excuse." *See Sanford v. Commonwealth of Virginia*, 689 F. Supp.2d 802, 810 (E.D. Va. 2010). As a result of this vexatious conduct, this Court should find this to be an exceptional case.

Defendant states that it "did not violate any Court orders." Opp. Br. at 14. The record is clearly to the contrary. Lawson simply ignores each of the Court's orders limiting its theories and evidence to what it timely and sufficiently disclosed in the invalidity disclosures. The Court's November, 2009 Scheduling Order required Defendant to identify all prior art theories and to disclose every document relied upon by bates number. Dkt. No. 121, Pretrial Schedule A at § J(3). The Court found that Lawson did not comply with this order because it did not set

8

forth its invalidity theories with sufficient specificity. The Court gave Lawson a second chance by ordering Lawson to provide the Second Supplemental Statement. *e*Plus Opening Br., Ex. B at 7:19 – 8:15 ("you take the page of the prior art, and not only do you write it out, you highlight it, and you hand it to them . . .They don't have to answer anything until you start doing it right and until you cut down your references and make them specific. It's not sufficient to tell somebody some saber [sic] system or some whatever it is.").[4]

Employing a classic "blame the victim" strategy, Lawson attempts to shift the blame to *e*Plus for Lawson's repeated violations of the Court's orders relating to the invalidity contentions. Opp. Br. at 7 ("Rather than efficiently raising of [sic] all of its issues with Dr. Shamos' May 5, 2010 invalidity report at one time . . . *e*Plus later filed another motion . . ."); *see id*. at 8 ("After possessing Dr. Shamos' invalidity report for over eight months, *e*Plus orally presented yet another motion . . ."). Such arguments serve only to expose Lawson's litigation tactics: Lawson took the view that it was free to evade the Court's orders unless and until *e*Plus brought a motion to force compliance. And that *e*Plus had to bring multiple motions reflects that every time *e*Plus obtained a Court Order enforcing the boundaries set by the Second Supplemental Statement, Lawson attempted some new means by which to evade the prior orders. Thus, for example, it was not until Lawson's experts — such as Dr. Shamos — served expert opinions that exceeded the scope of the Second Supplemental Statement that it became apparent *e*Plus would have to file a motion to address Lawson's new invalidity theories.

---

[4] Lawson's argument that "*e*Plus did not file any motion complaining about this supplemental disclosure" is wholly irrelevant. Opp. Br. at 4-5. *e*Plus raised the inadequacies of Lawson's initial disclosure with the Court, and the Court ordered Lawson to provide the Second Supplemental Statement. ***Thereafter,*** Lawson violated that Court order by exceeding the scope of the Second Supplemental Statement, which the Court had made clear would not be tolerated. *e*Plus did, in fact, raise the motions set forth in its opening brief to ***enforce*** the Court's Order that limited Lawson to what it set forth with the requisite specificity in the Court-ordered Second Supplemental Statement.

9

Lawson now claims that "in good faith" it included new theories and references in Dr. Shamos's Invalidity Report because "the Court's broad construction of certain means plus function terms made additional prior art relevant to Lawson's invalidity case."[5]  Opp Br. at 5. This argument is without merit.  If Lawson truly believed that the Court's *Markman* Order justified the assertion of new invalidity theories, the proper course of action would have been to approach the Court for relief (and confer with *e*Plus) and explain the alleged justification, and seek the appropriate relief from the prior orders.  Lawson did not do so, but instead assumed for itself the unilateral right to disregard the Court's orders.

Dr. Shamos's report contained ***at least 36 new anticipation theories and 41 new obviousness theories based on combinations of references***.  Dkt. No. 249 (Mem. in Support of *e*Plus Motion *in limine* No. 2) at 8, 12.  Lawson injected these new theories into Dr. Shamos's report without disclosing the new theories to *e*Plus or asking the Court for leave to amend its Second Supplemental Statement.  Lawson contends that the new prior art was relevant to other issues such as non-infringing alternatives and infringement.  Opp. Br. at 6.  Again, these are the same arguments that Lawson already presented in connection with the pertinent motions, and which the Court already resolved against Lawson.  In response to such arguments, the Court stated, "I don't know how on earth you could think you could get it in by sticking it in an expert's opinion.  That's a disingenuous argument, I think."  ePlus Opening Br., Ex. C, Hearing Tr. at 47:20-48:1 (May 24, 2010).  And Lawson provides no justification for cutting and pasting sections from Dr. Shamos' Invalidity Report excluded by the Court into Dr. Shamos' Non-

---

[5] Lawson avers that when it exceeded the bounds of the Court-ordered Second Supplemental Statement, it did so with "good faith." The Court can infer bad faith based on "manifestly unreasonable" conduct. *See Eltech Sys., Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990); *see also Knorr-Bremse*, 372 F. Supp.2d at 849, n.25 ("Bad faith misconduct may also include 'bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation.'" (citations omitted)).

Infringement Report.  Dkt. No. 249 (Mem. in Support of *e*Plus Motion *in limine* No. 2) at 5-6 (identifying 15 examplary paragraphs copied verbatim from the stricken invalidity report into the non-infringement report).  Lawson cites no documents or evidence in the record to support its "good faith" argument.

It is further undisputed that Lawson attempted to introduce invalidity exhibits (*e.g.,* DX 97, DX 98 and DX 112) that it did not disclose in its Court-ordered Second Supplemental Statement.  Opp. Br. at 8.  The Court's orders were clear:  Defendant was required to have disclosed both its invalidity theories and the specific evidence by bates number that it planned to rely upon.  *See supra* at 8.  And as the Court noted, the new exhibits Lawson sought to introduce related to versions of the alleged prior art systems ***distinct*** from those disclosed in its Court-ordered Second Supplemental Statement.  *See* Order (Dkt. No. 516) at 1 ("DX-97 and DX-98 relate to the so-called J-CON Systems existing in October 1989 and March 1993 whereas the J-CON System that was disclosed is that version which is described in the April 1994 J-CON Manual which was disclosed in the Second Supplemental Statement").[6]

### 2. Lawson's attempt to circumvent the Court's orders by placing opinions already excluded or otherwise stricken into the Staats and Knuth Reports was vexatious litigation.

The Court permitted Lawson to use an expert with respect to source code and another with respect to invalidity under 35 U.S.C. §§ 102 and § 103.  Dkt. No. 384.  The Court did not permit Lawson to utilize the Court's Order as a mulligan for its invalidity expert, whose opinions

---

[6] Lawson also does not dispute that it submitted an affidavit to the Court claiming that a document reflected the features and functions of Version 10 of the P.O. Writer system, when in reality it corresponded to a version released after the critical date (Version 11).  Lawson tries to excuse this conduct by arguing that its attempts to place the documents into evidence did not "violate[] any court order."  Opp. Br. at 8.  While the Court has not expressly ordered that Lawson cannot submit false affidavits, this practice certainly evidences vexatious litigation conduct supporting an exceptional case finding.

11

had been substantially limited under prior Court orders. Lawson cannot and does not offer any good faith explanation as to why it exceeded the scope of the Court's order by taking a "do over" of its invalidity expert's report, nor by offering opinions from a source code expert regarding non-infringement[7] and invalidity, many of which, again, the Court already excluded. Thus, the Court stated when ruling on *e*Plus's motion, "it never crossed my mind that one expert would be substituted for another, nor do I think that anything I said or did reasonably could have led to that result …." *e*Plus Opening Br., Ex. E, Hearing Tr. at 116:3-16 (Sept. 7, 2010).

Each of these facts set forth in *e*Plus's opening brief is undisputed:

- Lawson tried to take a "mulligan" on its invalidity expert report by replacing the theories disclosed and excluded in the Shamos Invalidity Report with the new theories in the Staats Report;

- Lawson's new expert report from Dr. Staats also included invalidity theories and arguments not disclosed in the Second Supplemental Statement;

- Defendant's source code expert – Mr. Knuth – offered non-infringement opinions notwithstanding the Court's order limiting the scope of his opinions only to source code (*see e*Plus Motion to Strike (Dkt. No. 460) at 9-12 (listing exemplary non-infringement opinions between Shamos and Knuth Reports));

- Mr. Knuth offered stealth invalidity theories relying on the Lawson legacy systems.

As to the final point, Mr. Knuth's stealth invalidity theories based on the Lawson legacy systems were copied from portions of the Shamos report that the Court had already ordered stricken in granting ePlus's second motion in limine. See Dkt. No. 460 (ePlus Motion to Strike) at 12-13 (table comparing Knuth invalidity opinions to Shamos invalidity opinions ordered stricken by the Court)).

---

[7] Because *e*Plus had provided a report pertaining to source code from an expert who did not offer infringement opinions, the Court permitted Lawson to likewise provide a report from an expert pertaining to source code, without venturing into non-infringement opinions.

Lawson also concedes that "Mr. Knuth discussed the source code functionality of Lawson's legacy systems," but attempts to excuse the fact by stating that "Lawson's legacy systems were relevant to certain prior art issues, and also to other issues such as damages and non-infringement." Opp. Br. at 9. This argument, however, actually shows that Lawson violated at least two Court orders: first, Lawson violated the Court's order that Mr. Knuth was only to analyze the source code of the accused systems; second, the Court ordered, on July 28, 2010 — *one month before Lawson served the Knuth Report* — that the Lawson legacy systems were not relevant to any issue in the case. Ex M (Hearing Tr.) (July 28, 2010) at 187:23-24 (reasoning that "the use of the pre-2002 systems don't do anything but provide confusion [and] delay").

Accordingly, Lawson's opposition fails to provide any compelling justification for its violations of the Court's orders.

### 3. Lawson's repeated non-infringement arguments pertaining to whether its catalogs are "published by a vendor" was vexatious litigation.

Lawson's "gotcha" trial defense — that its catalog content allegedly is not "published by a vendor" — is another example of its vexatious practice in this litigation. The Court repeatedly admonished that the question of who places what data into the Lawson item master is not relevant to the Court's construction of the claims, and that what was relevant was simply whether the data came from a vendor at some point in time. Yet Defendant persisted in presenting a non-infringement defense at trial to the effect that catalog data must be unchanged from the form in which the vendor provided it.

Lawson offers no tenable defense as to why it persisted in this manner after the Court's ruling was crystal clear. It is not reasonably disputed that: (i) the Court repeatedly rejected Defendant's theory wherein catalog content must go from the vendor directly into the Lawson item master database; (ii) the Court's claim construction does not require the catalog content to

13

be identical to the data that is delivered from the vendor; and (iii) at trial, the Court determined it was necessary to render a construction of the term "published" because of the danger of jury confusion arising from Lawson's refusal to abide by the Court's *Markman* opinion and the Court's ruling, on the first day of trial, that Lawson could not suggest to the jury that its item master is not a "published catalog." Lawson's persistence in raising this defense constituted an adamant refusal to try the case within the boundaries and rulings the Court set for the trial of this case. Lawson's tactic heightened the potential for jury confusion,[8] prolonged the trial, and unjustifiably multiplied the proceedings.

## III. CONCLUSION

For the foregoing reasons, and those set forth in *e*Plus's opening brief, the Court should find this to be an exceptional case and award *e*Plus its reasonable attorney's fees. In response to this motion, Lawson relies primarily on arguments the Court has already heard and rejected. Lawson engaged in a blatant and prolonged pattern of violating this Court's orders and rearguing issues the Court had already heard and fully addressed. This conduct has only continued since the trial of the action in connection with the post-trial injunction and stay motions. Such tactics constitute vexatious litigation conduct, which is an ample basis for an exceptional case finding and an award of reasonable attorney's fees.

---

[8] Indeed, Lawson appears to attribute the jury's non-infringement findings in part to Lawson's "published by a vendor" argument. Opp. at 10.

Respectfully submitted,

July 1, 2011

*/s/*

David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
Attorneys for Plaintiff *e*Plus Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY'S FEES PURSUANT TO 35 U.S.C. § 285**

with the Clerk of Court using the CM/ECF system which will then send a notification of such

filing (NEF) via email to the following*:*

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Donald R. Dunner, *pro hac vice*
Erika H. Arner, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000
(202) 408-4444
***Counsel for Defendant Lawson Software, Inc***

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

　　　　　　　*/s/*　　　　　　　
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com

Counsel for Plaintiff *e*Plus Inc.