# EXHIBIT K

```
 1         IN THE UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF VIRGINIA
 3               RICHMOND DIVISION
 4   -------------------------------------
                                          :
 5   ePLUS, INC.            :  Civil Action No.
                            :  3:09CV620
 6   vs.                    :
                            :
 7   LAWSON SOFTWARE, INC.  :  April 4, 2011
                            :
 8   -------------------------------------
 9
10        COMPLETE TRANSCRIPT OF ORAL ARGUMENT
11        BEFORE THE HONORABLE ROBERT E. PAYNE
12             UNITED STATES DISTRICT JUDGE
13
14   APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   Goodwin Procter, LLP
     901 New York Avenue NW
18   Suite 900
     Washington, D.C.  20001
19
     Craig T. Merritt, Esquire
20   Henry I. Willett, III, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia  23219-3095
     Counsel for the plaintiff
23
24            Peppy Peterson, RPR
              Official Court Reporter
25          United States District Court
```

```
 1   APPEARANCES:  (cont'g)
 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia  23219
 5   Daniel W. McDonald, Esquire
     Kirstin L. Stoll-DeBell, Esquire
 6   William D. Schultz, Esquire
     Merchant & Gould, PC
 7   80 South Eighth Street
     Suite 3200
 8   Minneapolis, Minnesota  55402
```

```
 1                    P R O C E E D I N G S
 2
 3        THE CLERK:  Civil action 3:09CV00620, ePlus,
 4   Incorporated versus Lawson Software, Incorporated.  Mr. Scott
 5   L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr.
 6   Henry I. Willett, III, and Mr. Michael G. Strapp represent the
 7   plaintiff.
 8        Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 9   Kirstin L. Stoll-DeBell, Mr. William D. Schultz, Ms. Rachel C.
10   Hughey represent the defendant.  Are counsel ready to proceed?
11        MR. ROBERTSON:  Plaintiff is, Your Honor.
12        MR. McDONALD:  Yes, we are, Your Honor.
13        THE COURT:  All right.  ePlus's motion for injunctive
14   relief argument, the record having been made.  Good morning,
15   Mr. Robertson.
16        MR. ROBERTSON:  Good morning, Your Honor.  May it
17   please the Court, as you know, we're here on three motions
18   today:  ePlus's motion for a permanent injunction, Lawson's
19   motion for a stay of any such injunction if granted in the
20   Court's discretion, and the posting of any bond, and ePlus's
21   motion to strike the Kalinsky declaration who is Mr. McDonald's
22   law partner at Merchant & Gould, and any evidence concerning
23   the relevant reexaminations of the patent that the Court's
24   ruled on on three occasions now in this case.
25        Starting with the permanent injunction, Your Honor,
```

```
 1   obviously ePlus believes that particularly under the facts of
 2   this case, a permanent injunction is warranted and that that
 3   injunction should not be stayed.  If I could, I would like to
 4   start with some first principles.
 5        We touched on this briefly at the evidentiary
 6   hearing, but as the Court knows, the only right granted to the
 7   patent owner under the Patent Act is the right to exclude, and
 8   that is equitable relief for prospective injury going forward
 9   as infringement is a continuing tort.  And the act itself, if
10   we can look at Section 261 of the Patent Act, states that
11   patents shall have the attributes of personal property.
12        And in this case, indeed, it's unique personal
13   property, because by definition the invention is novel and
14   nonobvious.  In fact, the Court may recall, prior to the
15   commencement of the trial, we showed the Judicial Conference
16   videotape to the jury to explain a little bit of background
17   about the patent laws and how they operate.  The patent was,
18   indeed, compared to in that video as like a deed to land, and,
19   in fact, the infringement was analogized to a trespass on that
20   property right.
21        And for past trespasses, the only thing the Court can
22   actually do is award monetary damages because the injury has
23   already occurred, but for future trespasses, a Court may, in
24   its discretion and in its equitable powers, grant an injunction
25   to prevent future trespasses.  In fact, patents are often
```

73

1  whatever reason, the patent holder can't do an end-around that
2  by trying to extract a royalty from current users of those
3  pre-complaint devices because that, in effect, undercuts the
4  Court's denial of damages and their loss of the rights to
5  damages. If it's a latches case or marking or whatever the
6  reason, you can't do an end-around that loss of relief there.
7       Now, ePlus really doesn't deal with that issue. They
8  have a couple case cites in their brief on that that really
9  aren't on point at all. The preemption devices case, there
10  they tried to say there was some holding that repair would be
11  infringing. There, the defendant actually conceded that the
12  activities at issue were infringing. The Court didn't decide
13  anything, and a doctrine that would go to repair would fly in
14  the face of that Aro/Convertible decision from the Supreme
15  Court anyway.
16       The Mendenhall case didn't get into injunctive
17  issues, so they don't stand for the propositions ePlus has
18  presented for them. So I think the law is fairly unequivocal
19  there that if you lost the chance for damages for a given sale,
20  you can't come back later and get some prospective relief as to
21  that same sale.
22       THE COURT: The marking issue is a what, an element
23  or a defense?
24       MR. McDONALD: It is the affirmative duty of the
25  patentee to prove marking and satisfaction of 287.

74

1       THE COURT: Is that an issue in the final pretrial
2  order as to the case?
3       MR. McDONALD: I don't believe so.
4       THE COURT: I don't recall it.
5       MR. McDONALD: I don't believe so.
6       THE COURT: So that issue is gone from the case by
7  agreement. What's the consequence of agreeing that it's not
8  part of the case? You can't base an argument on it -- if it
9  was something that helps you, you're supposed to get it into
10  the case to get it tried; right?
11       MR. McDONALD: They have the burden of proof on it.
12       THE COURT: No, but if they have the burden of proof
13  and there's no issue on it, I mean, it is an issue which has
14  been satisfied because you all have agreed it's not a triable
15  issue.
16       MR. McDONALD: Well, we made a record on it on the
17  summary judgment. Once damages were out of the case --
18       THE COURT: Summary judgment doesn't have anything to
19  do with this. If you read the federal rules on the final
20  pretrial order, it supersedes everything, and you need to show
21  a different thing, a different standard. You need to meet a
22  different standard even to get that amended, so it's
23  controlling, and if that's not an issue to be tried, I don't
24  see why I get into it at this stage of the case under Rule 16
25  -- I can't remember now the new amendment, whether it's (e) or

75

1  (f). But anyway, it's the final pretrial order rule.
2       MR. McDONALD: I guess I would understand it to be a
3  burden on ePlus. If they're seeking a particular injunctive
4  breadth, they've got to show an entitlement to that, and they
5  haven't done it.
6       I think that's fair, whatever the pretrial order
7  says. They've got the burden of showing their entitlement to
8  the injunctive relief, and they haven't done it.
9       Specific to the services beyond this issue, now,
10  whether there even could be any relief that the Court could
11  provide ePlus, when you look at the injunctive factors, this
12  one is a particularly compelling situation for denying
13  injunctive relief, because ePlus has never competed for
14  servicing Lawson customers out there.
15       There's zero evidence that this is some sort of a
16  harm to them that will be alleviated if Lawson is enjoined.
17  There's zero proof on that. We have shown that it's going to
18  hurt existing customers. We have systems right now that
19  sometimes take years to implement.
20       THE COURT: You know, I have to tell you and I'm
21  going to find, I found Mr. Hager's testimony to be so
22  exaggerated, and I told him at the time to back away from it or
23  I was going to find this, I don't believe him. He just
24  exaggerated and exaggerated and made more out of it than made
25  any sense, so I don't accept his testimony as credible.

76

1       Do you have any other evidence on that issue other
2  than Mr. Hager's testimony, because I don't buy what he has to
3  say. He was a very effective lawyer, but that's about all.
4       MR. McDONALD: We have our declarations from the
5  customers themselves. There are two declarations that are in
6  evidence that talk about their needs here and that it does have
7  an impact on them if we're all of a sudden -- if they are all
8  of a sudden left without support here.
9       There weren't other options. I think that is an
10  undisputed fact. Whatever issues you have about Mr. Hager's
11  testimony, I don't think it's disputed here that nobody else
12  out there provides Lawson customers with that sort of support
13  services, so they really will be high and dry --
14       THE COURT: They can have another system put in.
15       MR. McDONALD: But the evidence does show that takes
16  a significant amount of time, especially in the health care
17  industry which Mr. Farber doesn't know about because they don't
18  have any hospitals as customers, at least not right now, but it
19  takes a lot of time to decide what you need, to solicit bids or
20  responses to the RFPs to get it down to the short list, to pick
21  somebody, to negotiate the contract, and then to implement that
22  system through your organization.
23       You're talking about some of these larger hospitals,
24  that's multiple hospitals, thousands of users, it takes a
25  significant amount of time. I think at least a nine-month

Oral Argument Hearing Transcript  4/4/2011  3:37:00 PM

113

1   right now, if there is to be any sunset provision, it should be
2   no longer than three to six months, and it should only apply if
3   it does at all to those bona fide hospitals that may have some
4   public interest, but, again, I think based on those two
5   declarations you have before you, the Court couldn't make such
6   a finding.
7           There is the stay motion, Your Honor.  They've argued
8   a number of reasons they believe that they're going to prevail
9   on appeal.  I think that's all in the papers.
10          THE COURT:  I think that's all briefed thoroughly.
11  So is the motion to strike the declaration.
12          MR. ROBERTSON:  So we would be happy to submit those
13  on the papers.
14          THE COURT:  The matters are submitted.  Thank you
15  very much.  We'll be in recess.
16
17          (End of proceedings.)
18
19
20          I certify that the foregoing is a correct transcript
21  from the record of proceedings in the above-entitled matter.
22
23
24      /s/                   _____
        P. E. Peterson, RPR            Date
25