# EXHIBIT M

**Page 1**

```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION


-----------------------------------
                                   :
ePLUS, INC.                        :  Civil Action No.
                                   :  3:09CV620
     vs.                           :
                                   :
LAWSON SOFTWARE, INC.              :  July 28, 2010
                                   :
-----------------------------------


       COMPLETE TRANSCRIPT OF THE MOTIONS HEARING
          BEFORE THE HONORABLE ROBERT E. PAYNE
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C.  20001

Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia  23219-3095
Counsel for the plaintiff


                Peppy Peterson, RPR
                Official Court Reporter
                United States District Court
```

**Page 2**

```
APPEARANCES: (cont'g)

Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
1001 Haxall Point
Richmond, Virginia  23219

Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota  55402
Counsel for the defendant
```

**Page 3**

P R O C E E D I N G S

THE CLERK: Civil action number 3:09CV00620, ePlus, Inc., versus Lawson Software, Inc. Will counsel please state their names for the record and identify the parties they represent.

MR. MERRITT: Greg Merritt, Christian & Barton, for ePlus.

MR. ROBERTSON: Scott Robertson, Goodwin Procter firm. With me are my partners.

MR. STRAPP: Michael Strapp.

MS. ALBERT: Jennifer Albert.

MR. CARR: Dabney Carr, Troutman Sanders, for Lawson Software.

MR. McDONALD: Good morning, Your Honor. Dan McDonald, Merchant & Gould, representing Lawson Software, and with me today, I'd like to introduce Kirstin Stoll-DeBell, also with Merchant & Gould, also representing Lawson Software.

MS. STOLL-DeBELL: Good morning.

THE COURT: Morning. I always think it's a good idea to throw counsel a curve ball. I always enjoyed it so much when judges did it to me.

I've decided, upon further reflection, that I would like to hear your views on the damages issue reflected in Lawson's -- what is it, motion in limine number one? Is that

**Page 4**

what it is?

MR. McDONALD: That's one of them, Your Honor. There's one, two, and three all related to the damages issue.

THE COURT: I mean the settlement.

MR. McDONALD: That's where you want to start?

THE COURT: No, we'll start with the motion for summary judgment, but I would like somebody to -- I'd like for you to address that. I don't want a lot of -- we don't have a lot of time to do this, and we've got a lot to do, so get right to the point. All right, the motion for summary judgment on the written description.

MR. McDONALD: Thank you, Your Honor. May it please the Court, I have some binders with PowerPoint slides I'd like to hand up.

THE COURT: Is that a question of law or fact?

MR. McDONALD: It's a question of fact, but the facts are undisputed. Can I hand up the binders?

THE COURT: I'm sorry, it's in paragraph four of what is to be argued.

MR. McDONALD: That was just a fast ball, not a curve ball.

THE COURT: I don't know. Maybe that was a slider. All right.

MR. McDONALD: Is the PowerPoint visible on the screen right now for Your Honor?

### 185

```
06:57:43   1    Now, to the extent that Dr. Shamos can offer evidence
06:57:56   2    focused only on those claims and why they anticipate it, he's
06:58:04   3    not bound by the evidence offered at the time of the second
06:58:08   4    supplemental. He can offer, just like Dr. Weaver can offer,
06:58:12   5    additional evidence directed to the same proposition, but that
06:58:16   6    isn't what he did.
06:58:17   7        What he did is, he went out and he concocted a whole
06:58:21   8    new game, and he's not going to be allowed to testify to it,
06:58:26   9    and he can't now go back and find all these references that he
06:58:32  10    constitutes -- that you all say on your side, Lawson, is new
06:58:37  11    evidence in support of the old contention. He's bound to those
06:58:42  12    things that were in his report on which he relied to support
06:58:49  13    the anticipations identified in the 14 claims.
06:58:54  14        I hope that everybody is clear on that, and in that
06:58:58  15    way, Lawson and ePlus are going to be treated the same. But I
06:59:05  16    don't believe the big difference is that Shamos didn't confine
06:59:11  17    himself to the original contentions as did Weaver when he
06:59:15  18    confined himself to the original infringement contentions and
06:59:20  19    then offered more evidence than, in fact, was referred to
06:59:25  20    earlier.
06:59:27  21        That's permissible for him, and it would be for Dr.
06:59:32  22    Shamos had he done that. I don't see that he did it, but if
06:59:38  23    you can show he did it, he did it, but let me tell when you
06:59:41  24    come to trial, when you have him on the witness stand, you
06:59:44  25    better have something to hand up to me to show me exactly how
```

### 186

```
06:59:47   1    and where and when it -- what he's testifying to relates back
06:59:54   2    to those original claims because he has, I've been able to tell
06:59:59   3    from what I've been given, a propensity to roam and wander, and
07:00:03   4    you better get him back on the reservation, because if he roams
07:00:08   5    and wanders and I have to tell him more than once, he will be
07:00:11   6    roaming and wandering out the back door.
07:00:13   7        And the same is true for Dr. Weaver. They're not
07:00:17   8    going to take over the courtroom and do what they want to do.
07:00:20   9    It's going to be done according to the rules.
07:00:23  10        The same is true for these obviousness combinations,
07:00:34  11    41 brand new ones. They weren't disclosed. Now, if he
07:00:44  12    identified Gateway references originally that were other than
07:00:53  13    the 2000/MRO manual, he can testify about that. If he didn't,
07:00:59  14    he can't.
07:01:02  15        The next issue is whether this evidence of Shamos's
07:01:09  16    that you're fighting over is relevant to the issue of damages.
07:01:13  17    It is said that it's relevant to the issue of non-infringing
07:01:17  18    alternative. I don't believe that that's been established.
07:01:19  19        It is true that the original orders on this point
07:01:23  20    that we were dealing with dealt with invalidity contentions,
07:01:27  21    but you can't get in all these extrinsic information that
07:01:32  22    really relate to points of invalidity under the guise of
07:01:39  23    something else. In other words, you can't dress them up in
07:01:42  24    another dress and send them out into the world. That would be
07:01:50  25    like -- would be like what Jefferson Davis did to lead the
```

### 187

```
07:01:56   1    confederacy, dressed up like his wife in a dress and headed
07:02:00   2    out. We can't have that.
07:02:02   3        I don't see how any of this evidence bears on the
07:02:10   4    damages issue, nor do I see how the evidence that 6.5 -- six
07:02:17   5    and 5V systems and earlier are substantially the same as the
07:02:23   6    8.0.3 systems that are accused has any probative value as to
07:02:30   7    the willfulness issue, and to the extent that it has value on
07:02:35   8    that issue, i.e., to the extent it's relevant on that issue,
07:02:40   9    the presentation of that evidence would offend Rule 403 because
07:02:45  10    it would cause delay, confusion, and make side trials out of a
07:02:51  11    very difficult case already, and the jury, I expect, I
07:02:57  12    anticipate would be hopelessly confused.
07:03:03  13        With the help of a mind substantially better than my
07:03:09  14    own, for sometime I have been trying to understand what's been
07:03:13  15    going on in this area, and if I can get confused by it, I have
07:03:17  16    every confidence that a jury can. I have to make sure what I'm
07:03:21  17    doing every time that I deal with this issue just to avoid
07:03:26  18    confusion.
07:03:28  19        I don't think it's pertinent to lack of specific
07:03:31  20    intent to induce infringement either or to discredit ePlus's
07:03:36  21    infringement and damages contention for the same reason. To
07:03:39  22    the extent it might be relevant, it's a 403 analysis, and the
07:03:47  23    use of the pre-2002 systems don't do anything but provide
07:04:02  24    confusion, delay.
07:04:08  25        Also, to the extent that Shamos is proffered to
```

### 188

```
07:04:27   1    testify to something on infringement, he already testified that
07:04:31   2    he didn't study the information on it for infringement
07:04:36   3    purposes. He did it for invalidity purposes, that is the
07:04:41   4    information we're talking about, and so his opinions on that
07:04:48   5    point that are repeated in the infringement issue from the
07:04:51   6    invalidity issue are not either relevant, nor do they fit --
07:05:00   7    nor do they satisfy the fit part of *Daubert*.
07:05:07   8        All right, I think that takes care of all the issues
07:05:09   9    in that motion. Now we have defendant's motion number five.
07:05:49  10    Who is going to do that?
07:05:51  11        MS. STOLL-DeBELL: I am, Your Honor. Just gathering
07:05:55  12    my stuff.
07:05:58  13        THE COURT: You know what? It might be the best
07:06:00  14    thing to do is let Mr. Robertson go first and explain just
07:06:05  15    exactly who is testifying to what so that I get that fixed in
07:06:09  16    my mind. That's this motion, isn't it? Do we have the right
07:06:12  17    one, limit to one expert on infringement and one on invalidity?
07:06:17  18        MS. STOLL-DeBELL: Yes, that's right. I can tell you
07:06:19  19    also.
07:06:20  20        THE COURT: You want to do it? Why don't you go
07:06:22  21    ahead. Since you're planning to do it, you go ahead. Which
07:06:24  22    one of these tabs is it? Five.
07:06:32  23        MS. STOLL-DeBELL: We're looking at slide number 38.
07:06:36  24    Does that help you?
07:06:36  25        THE COURT: Let me get your book first. All right.
```

253

| | | |
|---|---|---|
| 09:06:03 | 1 | but at least it is irrelevant as to the method -- I mean as to |
| 09:06:08 | 2 | the apparatus even in the acknowledgment of the defendant, and |
| 09:06:13 | 3 | it is -- it is not cumulative evidence, it being the only |
| 09:06:19 | 4 | actual system that shows the RQ in operation in the hands of |
| 09:06:25 | 5 | the customer, and the prejudicial aspect, I think, that would |
| 09:06:28 | 6 | arise from the missteps that the woman made can be cured by |
| 09:06:34 | 7 | just letting the jury see the videotape and see how it works. |
| 09:06:39 | 8 | But I'm going to instruct you both to review it carefully, and |
| 09:06:43 | 9 | if what we've got is a comedy of errors, it's not going to come |
| 09:06:47 | 10 | in because that's wasteful of the jury's time.  So the motion |
| 09:06:52 | 11 | will be provisionally denied. |
| 09:06:59 | 12 | That leaves me with a few things to do; is that |
| 09:07:02 | 13 | right?  We don't have any more motions to argue; is that right? |
| 09:07:07 | 14 | MR. McDONALD:  That's correct, Your Honor.  Your |
| 09:07:09 | 15 | Honor, I wonder if I would have leave because I have a |
| 09:07:12 | 16 | seven o'clock flight. |
| 09:07:13 | 17 | THE COURT:  Hit the road. |
| 09:07:15 | 18 | MR. McDONALD:  Thank you. |
| 09:07:17 | 19 | THE COURT:  You are cutting it close as it is. |
| 09:07:19 | 20 | MR. McDONALD:  I agree.  Thank you, Your Honor. |
| 09:07:24 | 21 | THE COURT:  All right, Mr. McDonald is gone, but |
| 09:07:27 | 22 | we're going to go.  You all have a time to talk with Judge |
| 09:07:35 | 23 | Dohnal? |
| 09:07:35 | 24 | MR. ROBERTSON:  August 19th. |
| 09:07:36 | 25 | MR. CARR:  Correct, Your Honor. |

254

| | | |
|---|---|---|
| 09:07:38 | 1 | THE COURT:  August 19th.  Both of you have some |
| 09:07:42 | 2 | problems in the case, folks, problems that warrant a serious |
| 09:07:47 | 3 | look at whether you're going to settle it or not, and I will |
| 09:07:53 | 4 | say -- I wasn't saying this for settlement purposes.  I |
| 09:07:58 | 5 | genuinely believe that your damages case takes a hit for the |
| 09:08:03 | 6 | reasons that I expressed, and I wasn't trying to communicate |
| 09:08:06 | 7 | that for purposes of inviting you all to settle, but whereas |
| 09:08:12 | 8 | here you have liability problems, and you might make sure you |
| 09:08:16 | 9 | communicate this to Mr. McDonald, and you do, I think, have |
| 09:08:20 | 10 | some liability problems, and they have damage problems. |
| 09:08:24 | 11 | That usually provides a reasonably efficacious way in |
| 09:08:29 | 12 | which to try to reach an accommodation that businesspeople can |
| 09:08:33 | 13 | live with.  All right?  Thank you.  We will be in adjournment. |
| | 14 | |
| | 15 | (End of proceedings.) |
| | 16 | |
| | 17 | |
| | 18 | I certify that the foregoing is a correct transcript |
| | 19 | from the record of proceedings in the above-entitled matter. |
| | 20 | |
| | 21 | |
| | 22 | _____/s/_____        _____ |
| | | P. E. Peterson, RPR                Date |
| | 23 | |
| | 24 | |
| | 25 | |