# EXHIBIT N

**3078**

```
 1         IN THE UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF VIRGINIA
 3                   RICHMOND DIVISION
 4
 5   -------------------------------------
                                          :
 6   ePLUS, INC.             : Civil Action No.
                             :  3:09CV620
 7   vs.                     :
                             :
 8   LAWSON SOFTWARE, INC.   : January 24, 2011
                             :
 9   -------------------------------------
10
11        COMPLETE TRANSCRIPT OF THE JURY TRIAL
12        BEFORE THE HONORABLE ROBERT E. PAYNE
13      UNITED STATES DISTRICT JUDGE, AND A JURY
14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     David M. Young, Esquire
17   Goodwin Procter, LLP
     901 New York Avenue NW
18   Suite 900
     Washington, D.C.  20001
19
     Craig T. Merritt, Esquire
20   Christian & Barton, LLP
     909 East Main Street
21   Suite 1200
     Richmond, Virginia  23219-3095
22   Counsel for the plaintiff
23
24         Peppy Peterson, RPR
           Official Court Reporter
25         United States District Court
```

**3079**

```
 1   APPEARANCES:  (cont'g)
 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia  23219
 5   Daniel W. McDonald, Esquire
     Kirstin L. Stoll-DeBell, Esquire
 6   William D. Schultz, Esquire
     Merchant & Gould, PC
 7   80 South Eighth Street
     Suite 3200
 8   Minneapolis, Minnesota  55402
```

**3080**

 1         P R O C E E D I N G S
 2
 3         THE CLERK:  Civil action number 3:09CV00620, ePlus, Incorporated versus Lawson Software, Incorporated.  Mr. Scott L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, and Mr. Michael G. Strapp represent the plaintiff.
 7         Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms. Kirstin L. Stoll-DeBell, Mr. William D. Schultz represent the defendant.  Are counsel ready to proceed?
10         MR. ROBERTSON:  Yes, Your Honor.
11         MR. McDONALD:  Yes, Your Honor.
12         THE COURT:  All right.  I was very sorry to hear about Ms. Albert's father passing away.  You all both wrote letters about it.  I don't see the point in bringing that to the attention the jury.  Do either one of you?
16         In the old days, when people didn't do what they were supposed to do, they got keelhauled.  I'm about ready to institute that procedure here.  It's time for the jury to get going, and I've had to read all this stuff now.  I told you what to do about this verdict form, and it was pretty easy, and it's unnecessary to go through all this stuff.
22         Now, apparently we're going to have to revise it anyway because -- and some of the instructions.  What instructions have to be revised because Lawson is not contending that the RIMS brochure is prior art?  Which one is

**3081**

 1   arguing?
 2         MR. YOUNG:  Your Honor, David Young for ePlus.  It's instruction 3-A that was submitted to the Court over the weekend.  It lists as I think reference number three, RIMS brochure, and that would have to come out now because it appears that Lawson does not have that as an anticipated reference on its own verdict form.
 8         THE COURT:  Is that right?
 9         MR. McDONALD:  Yes, that's right, Your Honor.
10         THE COURT:  So I suppose I need to tell the jury simply to disregard any testimony about the RIMS brochure as prior art.
13         MR. McDONALD:  No, it not anticipatory prior art meaning it's not all by itself anticipating a claim.  We're still using it for obviousness and support for the on sale, the RIMS as prior art and 102(a) and (b), but the brochure, all by itself, we're not contending is an anticipating reference, but it would be used to support number one in the instruction which is the Fisher RIMS system as prior art.
20         THE COURT:  What do you mean, to be used to support?  If you're going to use it --
22         MR. McDONALD:  It's evidence of the Fisher RIMS system as it was being sold and --
24         THE COURT:  Well, if it's evidence of it, it comes out of 39, too, because you're not contending that it is

**3174**

1  choice. And that doesn't stop ePlus from going to the
2  Patent Office, but it is true and the Judge will
3  instruct you that even if a product isn't the subject
4  of a patent like TV/2, if it's on sale more than a
5  year before the filing date of the ePlus patent, it's
6  still prior art. EPlus can't go get a patent on that
7  same thing. So that's how it works. So that's why
8  the Patent Office doesn't always have all the details
9  about what everybody is doing out there.
10      So that's why because you have this critical
11  information here in the courtroom that the Patent
12  Office didn't get why you should reach a different
13  conclusion from the Patent Office. So that's why you
14  should decide that the claims are invalid.
15      Let's go down to question No. 3 about
16  infringement. We made it pretty clear from the first
17  moment in this case that this issue came down to the
18  catalogs issue.
19      And if we could go to 45F. Mr. Weaver at
20  least acknowledged that 11 of the 12 claims in this
21  case required not just one catalog, but multiple
22  catalogs in the Lawson system. So if Lawson doesn't
23  have multiple catalogs, Lawson at least does not
24  infringe those 11 claims. We're all on the same page
25  on that. That's why we didn't waste your time on all

**3175**

1  these other deals in the case, why it really came down
2  to the catalogs.
3      And if we go to the slide 46, this was the
4  Court's definition of catalogs. It has the term
5  published by a vendor in it, and the Court also has an
6  instruction for you on that.
7      And we showed you here, this is Exhibit 257,
8  it's a demonstrative, but it's nothing of the sort you
9  haven't seen before. It's one of these big catalogs.
10  We don't get them in the mail so much anymore, but we
11  used to. And something like this pretty clearly meets
12  that Court definition. You can apply this pretty
13  well. It's an organized collection. You have got the
14  ladies clothes at the beginning. Then it goes to kids
15  and boots and shoes and so on, product by product
16  organized. It's about items. Things Sears is selling
17  with associated information. Published by Sears.
18  They are a seller, a distributor, whatever you want to
19  call it. Includes things like a part number, price,
20  catalog number, vendor name. Sears is on the front.
21  It may not be on every page, but certainly on the
22  front.
23      I don't know if it has a vendor ID, but this
24  list isn't something that's required that you have to
25  have all of these. That's why it has the word

**3176**

1  preferably, right? Then a textual description of
2  items and preferably, not necessarily, images of the
3  items.
4      So that meets the definition of a catalog
5  pretty well. That holds up with your common sense.
6  And it's pretty consistent if we go to slide 48, I
7  think it is. Even what the patent says about
8  catalogs. This is a feature of the invention to have
9  multiple catalogs from different suppliers. And it
10  gives these examples. And I'll summarize it here, but
11  basically it talks about published by a vendor,
12  distributor, having the distributor's catalog numbers
13  for their listed products. And also vendor
14  manufacturer part numbers. Down at the bottom, line
15  52 there, it further contained catalogs published by
16  some of the vendor manufacturers. Again having part
17  numbers and the like.
18      Then if you go down to about line 56. It can
19  also contain catalogs published by outside suppliers,
20  other manufacturers, distributors listing their vendor
21  products different from those in the distributor
22  catalog. So these are all these different published
23  things out there.
24      So if we go back to 46. So that was the
25  Court's definition of "catalog." Very consistent with

**3177**

1  what the patent says. What about that last claim?
2  I'll just talk about that a little bit. That 12th
3  claim. That's Claim 1 of the '172 patent.
4      Now, that claim has a claim element that
5  refers to something called an order list. So I want
6  to show you the Court's definition of that in slide
7  49. So even that claim requires a means for
8  generating an order list, which is a list of desired
9  catalog items. So here's where that concept of
10  catalog comes into play here.
11      And if we look at slide 49A, Dr. Weaver, his
12  analysis was entirely reliant on his opinion that the
13  Lawson system had catalogs in it. And that even
14  included this claim.
15      And if we could go to the next slide here.
16  This was Dr. Weaver's testimony specific to that Claim
17  1 of the '172 patent. It's kind of a long question
18  here, but what's being shown here is his opinion about
19  Lawson infringing that claim, and specifically the
20  part of that claim that refers to an order list, that
21  was based in part on his analysis concluding that the
22  desired items - do you remember an order list is a
23  list of desired catalog items - included in results of
24  searches of product catalogs, and that's what he
25  called catalog items. That's how he looked at it for