**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ePLUS INC.'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY
AND CLARIFY THE INJUNCTION, AND IN OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATION
OF THIS COURT'S SEVERAL ORDERS**

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

*Counsel for Plaintiff ePlus Inc.*

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 5

    A.  The Supreme Court's *Global-Tech* Decision On Induced Infringement Has No Bearing On This Case Or The Injunction Order ............................................... 5

        1.  A change in the law does not necessarily establish grounds to modify an injunction. ........................................................................................................ 5

        2.  The *Global-Tech* decision provides no basis for reconsideration, clarification, or modification of the injunction order. ................................... 7

            a.  *Global-Tech* is immaterial to the injunction order. ............................. 8

            b.  The Court's jury instruction was consistent with *Global-Tech*. ......... 11

    B.  There Is No Need To Modify Or Clarify An Injunction Order That Specifically Tracks The Product Configurations And/Or Services The Jury Found To Infringe ................................................................................................. 16

    C.  Defendant's Request For Reconsideration Of Orders Enjoining The Servicing or Maintaining Of Infringing Products Sold Prior To The Injunction Should Be Denied ........................................................................................................... 19

III. CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alexander v. Britt*,
  89 F.3d 194 (4th Cir. 1996) ........................................................................ 7

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2009) .................................................................. 16

*Chilton v. Clayborne*,
  2010 WL 98689 (E.D.Va. Jan. 11, 2010) .................................................. 5

*Crutchfield v. United States Army Corps of Eng'rs*,
  175 F. Supp.2d 835 (E.D.Va. 2001) ........................................................... 7

*Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*,
  993 F.2d 46 (4th Cir. 1993) ...................................................................... 20

*DSU Med. Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ..................................................... 9, 12, 13

*Fonar Corp. v. General Elec. Co.*,
  107 F.3d 1543 (Fed. Cir. 1997) ................................................. 4, 19, 20, 21

*Global-Tech Appliances, Inc. v. SEB, S.A.*,
  __ U.S. __, 2011 WL 2119109 (May 31, 2011) .............................. passim

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354 (Fed. Cir. 2006) .................................................................. 9

*Harrison v. Watts*,
  609 F. Supp.2d 561 (E.D.Va. 2009) ..................................................... 5, 20

*Horne v. Flores*,
  __ U.S. __, 129 S. Ct. 2579 (2009) ........................................................... 5

*Hutchinson v. Staton*,
  994 F.2d 1076 (4th Cir. 1993) .................................................................... 6

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
  259 F. Supp.2d 192 (D. Conn. 2003) .......................................................... 9

*Johnson v. Evatt*,
  993 F.2d 1537, 1993 WL 177800 (4th Cir. May 26, 1993) ...................... 14

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
  476 F. Supp.2d 1143 (N.D. Cal. 2007), *clarified on other grounds on denial of reconsideration*, 2007 WL 110861 (N.D. Cal. 2007) ...................... 10

*Netscape Communs. Corp. v. Valueclick, Inc.*,
  704 F. Supp.2d 544 (E.D. Va. 2010) .................................................... 5, 20

*Odetics, Inc. v. Storage Technology,*
    185 F.3d 1259 (Fed. Cir. 1999) ............................................................ 4, 19

*Pall Corp. v. Micron Separations, Inc.,*
    66 F.3d 1211 (Fed. Cir. 1995) ................................................................. 9

*Ritter v. Smith,*
    811 F.2d 1398 (11th Cir. 1987) ............................................................... 6

*Rufo v. Inmates of Suffolk County Jail,*
    502 U.S. 367 (1992) .............................................................................. 6, 7

*SEB, S.A. v. Montgomery Ward & Co., Inc.,*
    594 F.3d 1360 (Fed. Cir. 2010) ............................................................. 14

*Trojan, Inc. v. Shat-R-Shield, Inc.,*
    885 F.2d 854 (Fed. Cir. 1989) ................................................................. 2

**Statutes**

28 U.S.C. § 1292 ........................................................................................ 2

35 U.S.C. § 271 ........................................................................................ 9

**Rules**

Fed. R. Civ. P. 60 .................................................................................... 6, 7

Fed. R. Civ. P. 65 ....................................................................................... 4

Plaintiff ePlus, Inc. ("ePlus") submits this Brief in Opposition to Defendant Lawson Software, Inc.'s Motion to Modify or Clarify the Injunction, and to reconsider several orders this Court long-ago resolved.  ePlus respectfully requests that the Court deny Lawson's Motion in its entirety.

## I.    INTRODUCTION

Defendant Lawson Software, Inc.'s Motion to Modify and Clarify the Court's Injunction is nothing more than a garden-variety motion for reconsideration, albeit without satisfying the high burden that such a motion requires in this Court.  Through the guise of relying on the recent Supreme Court decision in *Global-Tech Appliances, Inc. v. SEB, S.A.*, __ U.S. __, 2011 WL 2119109 (May 31, 2011) ("*Global-Tech*"), Defendant attempts to revisit a number of arguments this Court has dealt with on numerous occasions and rejected.

Grasping *Global-Tech* as a lifeline for this purpose, the relief Defendant seeks has little or nothing to do with the decision in that case.  *Global-Tech*, therefore, is purely a pretext for rearguing issues this Court has already decided adversely to Defendant.  Indeed, if the relief sought here was truly necessary, why did Defendant wait more than four weeks after the injunction issued to ask for it?  In fact, within three days after the injunction issued, Defendant informed the Federal Circuit that it anticipated filing an immediate motion to modify the injunction in its "Petition For Panel Reconsideration of the Single-Judge Order Denying Lawson Software's Motion for a Temporary Stay of the District Court's Injunction Pending Consideration of an Emergency Motion for Stay."  Ex. A at 3 n.1.  It then did nothing for almost a month.

Even after the *Global-Tech* decision issued, Defendant waited another three weeks to file the instant motion — thereby revealing that *Global-Tech* is nothing more than a pretext in order to advance an untimely and baseless "motion to reconsider" this Court's previous well-

considered rulings.  Moreover, Defendant is asking the Federal Circuit in the first instance to consider several of the arguments it raises in ***this*** motion — concurrently.  It hardly serves judicial economy to ask two separate tribunals to consider the same arguments simultaneously.

This course of conduct suggests ulterior motives.  The Federal Circuit has not acted on Defendant's emergency motion to stay the injunction.  Moreover, it has denied Defendant's petition to a three judge panel denying its emergency motion for a temporary stay.  Ex. B.  Accordingly, no stay of the injunction has been entered ***and the injunction is in full force and effect***.

But the denial of a motion to modify the injunction may be appealable anew.  *See* 28 U.S.C. § 1292(a)(1) ("Interlocutory orders of the district courts of the United States … refusing to … modify injunctions" are appealable).[1]  Thus, it appears that Defendant wants to "restart the clock" since its efforts so far in the Federal Circuit have proved fruitless.  Such a strategy does not support the repeated review of the long-settled rulings Defendant seeks here.

Not surprisingly, motions to modify injunctions are not routinely granted, particularly under the circumstances presented here.  The movant bears a heavy burden seeking such relief.  Indeed, Defendant has failed to meet its burden of establishing that *Global-Tech* warrants revisiting the injunction order or providing any other requested relief.  The relevant case law, in this Court and in others, emphasizes the extraordinary nature of the relief sought by Defendant, and accordingly, details the factors which must be considered.  These factors include whether the change in law "renders continued enforcement 'detrimental to the public interest,'" and whether

---

[1] As Defendant is undoubtedly well aware, this Court's order denying Defendant's motion to modify the injunction could be immediately appealable.  *Trojan, Inc. v. Shat-R-Shield, Inc.*, 885 F.2d 854, 855 n.1 (Fed. Cir. 1989) ("An order refusing to modify an injunction is immediately appealable under 28 U.S.C. § 1292 (1982) and ordinarily receives separate and priority treatment").  To this end, Defendant's motion is nothing more than a thinly-concealed attempt to restart the ticking clock on Defendant's original appeal to the Federal Circuit.

"the proposed modification is suitably tailored to the changed circumstance."  Moreover, this Court previously set forth a list of at least six factors to be considered in ruling on a motion such as Defendant's, including "whether the party subject to [the injunction's] terms has complied or attempted to comply in good faith with the injunction," and "the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction."  *See infra* at 5-7. Accordingly, Defendant's argument that it is entitled to this extraordinary remedy is not supported by the law or the facts of this case.

In addition, the recent Supreme Court's *Global-Tech* decision has no real relevance under the facts of this case.  *Global-Tech* cannot bear the weight that Defendant places upon it and does not merit this Court's revisiting of the injunction order in any way.  Indeed, not only were this Court's instructions and the jury verdict consistent with *Global-Tech,* more importantly, the Supreme Court's decision is simply irrelevant to Defendant's motion.  Among other reasons, Defendant's knowledge of the patents-in-suit — the sole issue addressed in *Global-Tech* — is conclusively established with respect to any future acts of infringement, and that is what this Court's ***forward-looking*** injunction order pertains to.  Moreover, even had there been only a verdict of direct infringement, that would be sufficient basis for the Court to enjoin future acts of indirect infringement.

In addition, contrary to Defendant's argument, this Court did ***not*** provide the jury instruction *e*Plus requested or, indeed, ***any*** instruction utilizing the "deliberate indifference" standard that the *Global-Tech* Court addressed while affirming an inducement verdict.  Further, Defendant's motion is based on an argument that it raised at trial and then expressly ***withdrew*** after this Court established that Defendant had mischaracterized the Court's instruction.  Finally,

the facts were more than sufficient to show that Defendant possessed the requisite knowledge and intent for inducement as set forth in *Global-Tech*.

Nor does the Court need to concern itself with "clarifying" an injunction order that was specific as to the "Infringing Products and/or Services" that were agreed-upon by Defendant; included in the Jury Verdict Form; included in the stipulated Judgment; and virtually uncontested by Defendant at trial. Nor did Defendant proffer its own proposed injunction order for the Court's consideration. Moreover, the evidence was uncontradicted that Defendant's Lawson Software Foundation (LSF) and ProcessFlow were part of the accused configurations the jury found to infringe. Thus, the injunction warrants no modification. Indeed, the "modification" proposed by Defendant would only prove confusing, and *e*Plus knows of no authority whatsoever that an injunction should include a "disclaimer" as to products purportedly ***not*** covered by the order. By definition, an injunction need only "describe in reasonable detail" "the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). This Court's injunction clearly and specifically does so.

Finally, Defendant's attempts to reargue issues concerning marking or alleged limitations of remedies based on the decisions in *Fonar* and *Odetics* have been rejected by this Court. They were briefed by the parties both in the injunction and the motion to stay (Dkt. Nos. 640-642, 704-709, 714), and addressed by this Court at length in its Memorandum Opinions on both Dkt. Nos. 728, 734. Therefore, there can be no question that these arguments are nothing but pure reargument. And, as noted above, the same arguments are now pending before the Federal Circuit.

In sum, this motion should be summarily denied. Indeed, it is, once again, exemplary of a pattern of Defendant to vexatiously multiply the proceedings by attempting to reargue, reargue,

*and* reargue, rulings it lost, lost, *and* lost, but is unwilling to accept.

## II.   ARGUMENT

### A.   The Supreme Court's *Global-Tech* Decision On Induced Infringement Has No Bearing On This Case Or The Injunction Order

#### 1.   A change in the law does not necessarily establish grounds to modify an injunction.

In requesting that this Court reconsider, modify, or clarify, its injunction order, Defendant bears a heavy burden.  Typically, this Court reserves this "extraordinary remedy" for similarly "'extraordinary circumstances' in which: (i) there is an intervening change in the law; (ii) new evidence not available at trial has been discovered; or (iii) a clear error of law must be corrected in order to prevent manifest injustice."  *Netscape Communs. Corp. v. Valueclick, Inc.*, 704 F. Supp.2d 544, 546 (E.D.Va. 2010); *Harrison v. Watts*, 609 F. Supp.2d 561, 569 (E.D.Va. 2009) (denying plaintiff's Motion for Reconsideration) ("…[R]elief under Rule 60(b) is extraordinary and is to be granted only upon a showing of exceptional circumstances… Rule 60(b) does not permit reconsideration of legal issues addressed in an earlier ruling."); *see also Chilton v. Clayborne*, 2010 WL 98689 at *3-*4 (E.D.Va. Jan. 11, 2010) (denying motion for reconsideration and supplemental motion for reconsideration).  As discussed herein, Defendant does not come close to meeting this standard.

Further, as the party seeking to modify an injunction, the burden of establishing that a change in law justifies relief is Defendant's:  "The party seeking relief bears the burden of establishing that changed circumstances warrant relief[.]"  *Horne v. Flores*, __ U.S. __, 129 S. Ct. 2579, 2593 (2009) (reversing judgment upholding the denial of relief from consent decree) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law *renders*

***continued enforcement 'detrimental to the public interest*.'") (emphasis added). Again, Defendant cannot carry its burden to establish that *Global-Tech* warrants revisiting the injunction order or providing the requested relief. Indeed, as will be shown, many of the issues Defendant raises have nothing to do with *Global-Tech.*

Moreover, the cases cited by Defendant do not support the relief that it requests. For instance, Defendant relies upon *Ritter v. Smith,* 811 F.2d 1398 (11th Cir. 1987) – a case decided under Fed. R. Civ. P. 60(b)***(6)*** – for the proposition that "[g]enerally, courts have…almost uniformly, recognized that it would be unjust to give prospective effect to a judgment now known to be improper." Brf. at 3. In *Ritter*, however, the Eleventh Circuit repeatedly described the nature of the relief sought under Fed. R. Civ. P. 60(b)(6) as "extraordinary[,]" and "conclude[d] that ***something more than a 'mere' change in the law is necessary*** to provide the grounds for Rule 60(b)(6) relief[.]" *Ritter*, 811 F.2d at 1401 (emphasis added). The decision to grant relief under Rule 60(b)(6), therefore, was based on the unique and "sufficiently extraordinary" circumstances of that case. *Id.* Moreover, in *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993), there was no assertion of an intervening change in the law, and the Fourth Circuit actually ***reversed*** the district court's grant of the plaintiff's motion to alter or amend the judgment. *Id.* at 1082.

Where Defendant ***has*** cited relevant case law, it has inexplicably ignored it. The cases cited by Defendant further provide that: "[o]nce a moving party has met its burden of establishing either a change in fact or in law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 391 (1992) (ruling on the effect of changed law or facts to modification of consent decrees); *accord Alexander v.*

-6-

*Britt*, 89 F.3d 194, 198 (4th Cir. 1996) (affirming the district court's **denial** of motion to terminate consent decree based on a change in factual circumstances). Defendant's request, therefore, which would essentially undermine the Court's injunction order, is not "suitably tailored to the [allegedly] changed circumstance[.]" *Rufo, supra* at 391.

Other cases in this Court further emphasize the extraordinary nature of the relief sought by Defendant, and additionally, list various factors which should be considered before deciding to modify an injunction. *Crutchfield v. United States Army Corps of Eng'rs*, 175 F. Supp.2d 835, 844 (E.D.Va. 2001) (denying Defendant's motion to dissolve permanent injunction based on changed factual circumstances and setting forth several factors, including "whether the party subject to its terms has complied or attempted to comply in good faith with the injunction[,]" "the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction" and "whether the moving party can demonstrate a significant, unforeseen change in the facts or law and whether such changed circumstances have made compliance substantially more onerous or have made the decree unworkable[,]" to be considered in ruling on a motion made under Fed. R. Civ. P. 60(b)(5)). In this case, there are no changed circumstances that merit this Court's reconsideration of the injunction order whatsoever.

> **2. The *Global-Tech* decision provides no basis for reconsideration, clarification, or modification of the injunction order.**

The Court should reject Defendant's strained attempt to link the Supreme Court's *Global-Tech* decision to the injunction order. Not only did this Court's instructions and the jury verdict comport with *Global-Tech,* moreover, the Supreme Court's decision is irrelevant to this Court's injunction order for several reasons.[2]

---

[2] As the Court is aware, the verdict form in this case, to which Defendant agreed in relevant part, asked the jury to determine whether Defendant infringed, either ***directly or indirectly***, and the jury was instructed on both induced and contributory infringement. Dkt. No. 600. Accordingly,

First, with respect to the injunction that is directed against Defendant's *future* infringement (or *future* acts of inducement), any debates over the requisite knowledge of the patents or the intent standard for inducement are immaterial:  Defendant *knows* of the patents-in-suit and, moreover, *knows* that it is infringing them (and inducing infringement by others) as evidenced by the jury verdict in this case.  As Defendant itself argues, the injunction is directed against future acts of infringement.  Brf. at 3.  Thus, with respect to such future acts, Defendant surely meets the standard for inducement.[3]  Moreover, Defendant has met that standard since no later than upon service of the complaint in this action through its continued acts of infringement and inducement.  Relatedly, even if the verdict in this case were only one of direct infringement, the injunction could still properly prohibit future acts of inducement:  an infringer should not be permitted to do indirectly that which it is prohibited from doing directly.

Second, this Court's jury instruction with respect to inducement was not inconsistent with *Global-Tech*.  Defendant's arguments mischaracterize this Court's jury instruction rulings by suggesting that the Court granted *e*Plus's proposed "deliberate indifference" instruction, when in fact the Court did not.

### a.    *Global-Tech* is immaterial to the injunction order.

With respect to the first point, Defendant cannot reasonably dispute that it now has actual knowledge of the patents-in-suit.  Moreover, Defendant knows — as much as any accused

---

the verdict of infringement of any claim in this case could be upheld on the basis of direct, induced, and/or contributory infringement.  Further with respect to the language of the injunction order, as ePlus set forth in its brief, the Court's injunction order (Dkt. No. 729) tracked the language of the parties' stipulated proposed judgment (Dkt. Nos. 723, 724, 736), which in turn tracked the language of the Verdict Form.  Dkt. No. 600.  Defendant did not file a proposed alternative injunction order.

[3] Indeed, if an adjudicated infringer such as Defendant is not deemed to have the requisite knowledge and intent with respect to future acts of inducement, then how could the knowledge and intent standard ever be met?

infringer could ever know — that it has actually infringed those patents and that its actions induce infringement by others.  In the face of an adverse jury verdict Defendant cannot plausibly claim that the knowledge and intent standards are not met, at the very least on a going-forward basis.  *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer"); *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part) (plaintiff has burden of showing that infringer induced infringing acts and that he knew or should have known that his actions would induce actual infringement); *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1364 n.4 (Fed. Cir. 2006) (explaining that inducement standard was satisfied "because it is undisputed that [the alleged infringer] had notice of the patent").  Indeed, Defendant has had actual knowledge of the patents-in-suit since no later than the service of the complaint in this action.[4]

Accordingly, although Defendant's conduct met the standard of *Global-Tech,* discussed *infra,* that question is immaterial to the viability of the injunction order in this case against future acts of inducement.  In fact, ***this Court could rightly prohibit future acts of inducement based solely on a direct infringement verdict***.  *See Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 259 F. Supp.2d 192, 198 (D. Conn. 2003) (entering injunction against indirect infringement based solely on direct infringement verdict and stating "*[t]he focus of the injunction is to protect against future infringement, no matter how it is manifested*") (emphasis added).

To hold otherwise would be wholly anomalous by permitting Defendant to induce others to commit infringement even after Defendant itself has been adjudicated as an infringer.  *Id.; see also Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1221 (Fed. Cir. 1995) ("***patent***

---

[4] Evidence at trial also showed that Defendant likely knew of the patents ***prior to*** the filing of suit, as Defendant was aware of *e*Plus as a competitor, *e*Plus marked its covered products, and industry research analysts relied upon by Lawson executives publicized *e*Plus's prior litigations enforcing the same patents-in-suit.  *See* Dkt. No. 756 at 27-28.

*infringement is a continuing tort, and an action even if innocently begun does not automatically retain its purity as circumstances change*.  The filing of a lawsuit does not stop the clock insofar as *culpability may arise from continuing disregard of the legal rights of the patentee*.") (emphasis added).  Thus, the fundamental premise of Lawson's motion is simply wrong.

Relatedly, *Global-Tech* is irrelevant to the injunction and the inducement verdict in this case for the additional reason that Defendant actually knew of the patents-in-suit since no later than the service of the complaint, and it continued its own infringement and inducement of infringing acts after that time.  Again, such actual knowledge clearly suffices to form the basis for indirect infringement continuing after that time.  *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 476 F. Supp.2d 1143, 1158 (N.D. Cal. 2007), *clarified on other grounds on denial of reconsideration*, 2007 WL 110861 (N.D. Cal. 2007) (denying summary judgment of no contributory infringement based on contention that defendant lacked actual notice of patent until served with complaint).

After service of the complaint and while the lawsuit was pending, Defendant did not cease its infringement, modify its accused products to avoid infringement, or provide any different instructions to its customers as to how they may avoid infringement.  *See* Dkt. No. 756 at 27; Tr. 1152:1-6 (Lohkamp)[5] (Defendant has been aware of the patents-in-suit since May 2009); Tr. 1165:20-1166:9 (Defendant made no efforts to modify or redesign the accused S3 Procurement Systems after learning of patents); 1569:25-1570:4 (was aware of *e*Plus patents since May 10, 2009) (Christopherson).  Further, it was undisputed that Defendant continued to work closely with its customers in designing, configuring, installing, implementing, servicing,

---

[5] Excerpts of the Trial Transcripts are attached as Ex. D.

and maintaining the accused systems, and therefore it cannot plausibly claim to have been unaware of its customers' infringing uses. And, as noted above, it certainly is not unaware of them now.

Accordingly, for all these reasons, *Global-Tech* is simply irrelevant to both the inducement verdict in this case and this Court's injunction against future acts of inducement.

> **b.     The Court's jury instruction was consistent with *Global-Tech*.**

With respect to the second point, this Court's jury instruction pertaining to inducement does not conflict with *Global-Tech*. In this regard, Defendant's argument regarding the "intent to infringe" versus the "intent to act" borders on the outrageous. At the charging conference Lawson presented the very same argument that it repeats here. ***However, after the Court pointed out that Defendant's argument omitted (as it does here) key words from the Court's instruction, Defendant withdrew the objection.*** Yet now Defendant repeats the very same omission and presents the same objection it withdrew at trial.

Defendant contends that the Court erroneously instructed the jury over Defendant's objection in which it argued that "the intent requires knowledge that the induced acts constitute patent infringement, not merely intent to induce acts that constitute infringement." Brf. at 6. Defendant's brief, however, avoids citation of the entire instruction (or even the applicable sentence) and, in so doing, mischaracterizes the Court's instruction in a manner that could only be intentional. *Id.* at 6 (Defendant's citation omitting that portion of instruction that stated "Lawson knew or should have known that its actions would lead to actual infringement"). Thus, this sentence of the Court's multi-paragraph instruction actually stated: "ePlus, thus, must show that Lawson actually intended to cause the acts that constitute infringement ***and*** that Lawson ***knew of the patent and*** that Lawson ***knew or should have known that its actions would lead to actual infringement***." Tr. 3255:14 – 3257:12 (emphasis added). This instruction is word-for-

word the language of *DSU,* the very case on which Defendant purportedly based (and then

withdrew) its objection at trial.  *DSU,* 471 F.3d at 1304 (referring twice to requirement that

defendant "knew **or should have known** that his actions would induce actual infringements")

(emphasis added); Tr. 2965:12 – 2966:18 (Defendant's counsel raising, and subsequently

withdrawing, objection ostensibly based on *DSU* decision).

The following colloquy took place during the charging conference of January 21, 2011, at

which Defendant raised, and then ***withdrew***, an objection to the instruction based on the

argument that *DSU* required that Defendant have the intent to infringe, and not merely the intent

to act:

> THE COURT:   Okay, [Jury Instruction] 26.
>
> *   *   *
>
> THE COURT:  Let's go to about the eighth line down, acts that constitute.
>
> MS. STOLL-DeBELL:  So, Your Honor, with that, ***I think the Federal Circuit held in DSU Medical Corporation that intent for indirect infringement requires an intent to cause the actual infringement, not the acts that constitute infringement***.
>
> THE COURT:  What is the difference?
>
> MS. STOLL-DeBELL:  You'd have to actually know about a patent and intend to cause the infringement as opposed to intend to just cause something that you don't know is an infringement.
>
> So I just took out the acts that constitute, because that is the holding of the *DSU Medical Corp*.  It was actually an en banc decision from the Federal Circuit to resolve a conflict in their law, and they held exactly that, that the intent is to cause --
>
> THE COURT:  ***That's what the next clause says.  It says -- you are not reading the whole thing.  You are just editing out something.  Cause the acts that constitute direct infringement, comma, that Lawson knew of the patent and Lawson knew or should have known that its actions would lead to actual infringement.  I mean, that seems to me to do*** --
>
> MS. STOLL-DeBELL:  ***I'll withdraw that redline***.
>
> THE COURT:  Okay.

-12-

MS. STOLL-DeBELL:  *I'll put my horse back in the barn, Your Honor*.

THE COURT:  That's a good thing to do.  A good horsewoman knows when to stable a mount.

Tr. 2965:12 – 2966:18 (emphasis added).

Neither does *Global-Tech* render the Court's instruction erroneous.  Indeed, the Supreme Court's opinion never discusses *DSU*.  At issue in *Global-Tech* was the Federal Circuit's use of "deliberate indifference" for determining when an accused infringer can be held to have **knowledge of the patents**.  *Id.* at *4, 8-9 ("[defendant argues that the statute] demands more than willful blindness with respect to *the induced acts* that constitute infringement.  This question, however, is not at issue here.") (citation omitted) (emphasis in original).

With respect to the use of "knew or should have known," this Court's instruction differentiated between (i) the issue of Defendant's knowledge of the patents and (ii) whether Defendant knew it was inducing infringement.  The Court required actual knowledge for the first question, and that Defendant "knew or should have known" for the second question.  Accordingly, Defendant's argument should be rejected, both because its argument about the Court's instruction is incorrect and egregiously mischaracterizes what the Court said, but also because Defendant withdrew its objection.

Further, and contrary to what Defendant's motion suggests, this Court's jury instruction did not include the "deliberate indifference" standard that was disapproved of in *Global-Tech.*  In that case*,* the relevant jury instruction stated, in pertinent part, that "[d]efendants cannot be liable for inducing infringement *if they had no reason to be aware of the existence of the [patent-in-suit].*"  Brief for Respondent at 26a, *Global-Tech Appliances Inc. v. SEB, S.A.,* 2011 WL 2119109 (May 31, 2011) (No. 10-6) (emphasis added).[6]  The Federal Circuit affirmed the

---

[6] This Court did not utilize a "no reason to be aware of the existence" standard, nor did *e*Plus

inducement verdict, holding that the infringer had exhibited "deliberate indifference."  *SEB, S.A. v. Montgomery Ward & Co., Inc.,* 594 F.3d 1360, 1376-77 (Fed. Cir. 2010).  The Supreme Court, although disapproving of the Federal Circuit's use of "deliberate indifference," ***affirmed*** the verdict under the doctrine of "willful blindness."  *Global-Tech,* 2011 WL 2119109, at *7-10.

In this case, this Court's instruction made no reference to "indifference" (whether "deliberate" or otherwise), stating in part:

> So here, in order to find that Lawson has induced somebody else to infringe, you do have to consider Lawson's state of mind, i.e., that they actively and knowingly aided and abetted the indirect infringement by their customers.  ePlus, thus, must show that Lawson actually intended to cause the acts that constitute infringement and that Lawson knew of the patent and that Lawson knew or should have known that its actions would lead to actual infringement.
>
> Knowledge of the patent may be established by a finding that Lawson had actual knowledge of the patent or that Lawson ***deliberately disregarded a known risk*** that ePlus had a protective patent.  Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement such as advertising an infringing use or instructing someone on how to engage in the infringing use.

Tr. 3255:14 – 3257:12 (emphasis added).[7]

---

advocate that standard.  Neither did the Court utilize a "reckless disregard" standard as Defendant asserts at page 5 of its brief and page 19 of its brief in support of motion for a new trial.  Dkt. No. 762.  Defendant's citations are to the oral arguments of counsel, not the Court's jury instruction.

[7] The Court's inducement instruction in its entirety comprised several paragraphs and more than a page of text.  It is well-established that what the jury understood is to be determined by reading it "in the context of the [jury] charge as a whole."  *Johnson v. Evatt,*  993 F.2d 1537, 1993 WL 177800, *2 (4th Cir. May 26, 1993) (citations omitted).  In rejecting a criminal defendant's argument that the trial court erred in instructing as to the legal definition of "malice," the Fourth Circuit repeated the Supreme Court's admonition that jurors do not "'sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might,'" and the jurors' "'commonsense understanding of the instructions … [was] likely to [have] prevail[ed] over technical hair-splitting.'"  *Id.* (quoting *Boyde v. California,* 494 U.S. 370, 380-81 (1990)).

Thus, this Court's instruction made no mention of "deliberate indifference" and, taken as a whole, was consistent with the "willful blindness" doctrine as described in *Global-Tech*. *Global-Tech,* 2011 WL 2119109 at *9 ("a willfully blind defendant is one who takes ***deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts***.") (emphasis added).[8]

The distinction between mere "indifference" (disapproved of in *Global-Tech*) versus "disregard[] a known risk …." (utilized by this Court) is surely not lost on Defendant. Indeed, Defendant assiduously avoids mentioning that this Court did ***not*** include any reference to "indifference" in its instruction, although it was the Federal Circuit's use of "deliberate indifference" that was at issue and addressed in *Global-Tech*. *Id.* at *4. Whereas "indifference" means, *e.g.,* "[n]ot mattering one way or the other, "having no particular interest or concern: APATHETIC," "disregard" means, *e.g.,* "[t]o treat without the proper respect or attentiveness," or "[l]ack of thoughtful attention or due regard, ***esp. when willful***." Webster's II New Riverside University Dictionary, 389, 623 (1988) (emphasis added). It is ironic that Defendant wholly avoids this distinction (e.g., apathetic versus willful), while at the same time insisting that a supposed distinction between "willful blindness" versus "deliberate disregard[] a known risk …." is so marked and egregious that the trial verdict should be vacated and the injunction gutted.[9]

---

[8] *e*Plus had, in fact, requested that the Court's instruction include the "deliberate ***indifference***" language from the Federal Circuit's *SEB* decision but, as shown above, this Court did not provide *e*Plus's requested instruction. Dkt. No. 523 at 79 (*e*Plus Proposed Instruction No. P-15 including "deliberate indifference" language).

[9] *Compare Global-Tech,* 2011 WL 2119109 at *8-9 (citing with approval two definitions of "willful blindness" (i) as including situation in which "a person is aware of a high probability of [the fact's] existence, unless he actually believed that it does not exist" and (ii) "defendant must subjectively believe that there is a high probability that a fact exists and … defendant must take deliberate actions to avoid learning of that fact) (citation omitted); *with* Court's Jury Instruction

Finally, Defendant provides no support for its bald assumption that the evidence was insufficient, or to show that any alleged error in the instruction was not harmless.[10]   The evidence was sufficient for the jury to find that:  (1) Defendant had actual knowledge of the patents-in-suit prior to the lawsuit, *see, e.g.,* Tr. 1065:4 – 1067:24 (Lohkamp); 1307:22 – 1308:5; 1309:21 – 1310:6; 1318:23 – 1320:3 (Farber); (2) Defendant was at least "willfully blind" to the existence of the patents-in-suit prior to the lawsuit; or (3) Defendant possessed the requisite knowledge and intent based on its continuing infringement for nearly two years after the filing of the complaint.[11]

### B.   There Is No Need To Modify Or Clarify An Injunction Order That Specifically Tracks The Product Configurations And/Or Services The Jury Found To Infringe

Defendant's proposed "modification" to the injunction order to include a "negative" provision purporting to explain what the injunction "does not prohibit," *see* Brf. at 11, is entirely unnecessary, ripe with mischief, and would ultimately prove more confusing than "clarifying."

---

No. 26 ("you do have to consider Lawson's state of mind, i.e., that they actively and knowingly aided and abetted the indirect infringement … that Lawson actually intended to cause the acts that constitute infringement and that Lawson knew of the patent and that Lawson knew or should have known that its actions would lead to actual infringement … Knowledge of the patent may be established by a finding that Lawson had actual knowledge of the patent or that Lawson deliberately disregarded a known risk that ePlus had a protective patent.").  Tr. 3255:14 – 3257:12.

[10] Again, Defendant's arguments also ignore that the jury verdict could also have rested on direct and contributory infringement.

[11] As noted *supra*, Defendant made no changes to its accused products even though it now claims to have had an easy "design-around" that can be implemented free to customers in less than half an hour's time.  The testimony of one of Lawson's corporate officers further showed that it was cavalier once it learned of the patents.  Tr. 1569:25 – 1577:3 (Christopherson).  Defendant stood on the privilege, but the absence of an opinion of counsel remains a relevant factor in determining Defendant's intent.  *Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 698-700 (Fed. Cir. 2009).  And the evidence of Defendant's inducing activities (such as advertising, installing, servicing, instructing, maintaining, etc., was overwhelming and essentially undisputed. *See* Dkt. No. 582 at 10-11, 15-19.

-16-

The record here is completely undisputed with regard to the infringing configurations the jury considered. As set forth in footnote two, the configurations listed in the Jury Verdict Form were agreed upon by Defendant. The accused configurations were agreed upon during trial. The Judgment — reflecting the infringing configurations — was stipulated to by Defendant. The Court's injunction order directly tracks the jury's verdict.[12] Indeed, the infringing configurations are clearly set forth at page 10 of Defendant's own motion. There is nothing at all "confusing," therefore, as to the details of the systems found to infringe.

Thus, Defendant's reliance upon the colloquy between the Court and ePlus's counsel on September 27, 2010, Brf. at 9-10, is entirely misplaced. Subsequent to that colloquy, *e*Plus briefed the issue regarding the accused Defendant systems (*see* Dkt. No. 498), Defendant responded (*see* Dkt. No. 504). Thereafter, the Court rendered its ruling finding:

> **[T]hat the Lawson System Foundation and Process Flow are relevant to the plaintiff's infringement case because:** (1) there is evidence that **they are used in performing the functionality** recited in the asserted claims; (2) there is evidence that **they are components** of the accused systems; (3) there is evidence that **they are essential to the operation** of the accused systems; and (4) **they are closely interconnected** with other identified software applications and modules that are components of the accused infringing systems, and further finding that the Lawson System Foundation and ProcessFlow are **relevant components of the accused S3 systems** and further finding that those components were timely disclosed by the plaintiff, it is hereby ORDERED that the PLAINTIFF ePLUS INC.'S MOTION REGARDING RELEVANCE AND DISCLOSURE OF ACCUSED LAWSON SYSTEMS (Docket No. 498) is granted and that Plaintiff's Exhibit 456 and Plaintiff's Exhibit 506 are admissible.

*See* Dkt No. 514 (emphasis added).

The issue was then tried to the jury. Indeed, Defendant's own counsel elicited testimony

---

[12] As noted above, notwithstanding Defendant had every opportunity to do so, it never submitted its own form of an injunction order.

concerning the relevance of these foundational software products to the infringing configurations.

> MS. STOLL-DEBELL:  At a high level, what is LSF?
>
> A.  Lawson System Foundation, it is a basis for the 4GL, Lawson 4GL applications such as purchase order, requisitions or RQ, and inventory control.  ***They need that in order to operate***, but not only do they need it to operate, they need it in order to actually be compiled.

Tr. 1506:18-23 (emphasis added).  Of course, Dr. Weaver had already confirmed the very fact that LSF and ProcessFlow are necessary to the infringing configurations.  *See* Tr. 576:4-578:22; 581:10-15; 581:21-582:3; 582:18-583:14; 588:7-14; 593:14-24.  The Court inquired, therefore, why this ***confirmatory*** testimony was necessary.  Tr. 1507:12-16.  At which point counsel for *e*Plus offered to stipulate that *e*Plus would agree "that LSF works with the other products as long as [Lawson] stipulate[s] it works with the accused products."  Tr. 1507:20-21.  Defendant's counsel responded:

> MS. STOLL-DEBELL: I think we do.
>
> THE COURT: Do you or not?
>
> MS. STOLL-DEBELL: We do.
>
> THE COURT:  Okay, done.  Now we don't need to talk about anything else.

*Id.* at 1507:23-1508:2.

Once again, when the Verdict Form was discussed with the Court, the issue concerning the relevance of LSF and ProcessFlow to the infringing configurations was discussed at length, and agreement was reached.  Tr. 3050:1-3055:23.  There can be no question, therefore, that the injunction properly reflects the Verdict Form, the Judgment, the evidence, and Defendant's own stipulation in open Court.

Thus, there is no need to add a level of confusion as to what the injunction purportedly ***does not*** cover, and is, in counsel for *e*Plus's experience, entirely unprecedented.  Injunctions

should address "the act or acts sought to be restrained," not acts that are not enjoined.

If Defendant's customers employ LSF and ProcessFlow with the other modules found to infringe, Defendant should not be permitted to service, maintain or further implement those systems, all acts clearly covered by this Court's Injunction.

### C. Defendant's Request For Reconsideration Of Orders Enjoining The Servicing or Maintaining Of Infringing Products Sold Prior To The Injunction Should Be Denied

During the past three months, Defendant has repeatedly argued that it should not be enjoined from servicing and maintaining infringing products purchased by its customers before the entry of the injunction. *See, e.g.,* Dkt. No. 643 at 14-17; Dkt. No. 705 at 26-28 (relying in both instances on *Odetics, Inc. v. Storage Technology*, 185 F.3d 1259 (Fed. Cir. 1999) and *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543 (Fed. Cir. 1997)), and Ex. C (Lawson Emergency Mot. for a Stay) at 13-14.

This Court rejected Defendant's argument in detailed opinions, including the Court's opinion granting the permanent injunction, which included ten full pages devoted to refuting Defendant's argument that *Odetics* and *Fonar* compelled the Court to permit Defendant to service and maintain products found to infringe.  Dkt. No. 728 at 50-59; *see also* Dkt. No. 734 at 15-16.

Undeterred by this Court's rulings, Defendant raised the same argument in the Federal Circuit in its emergency motion for a stay pending appeal of the injunction. Ex. C at 13-14.  And now, in its fourth bite at the apple, Defendant argues again in the instant motion that pursuant to *Odetics* and *Fonar* this Court should reconsider its earlier rulings and modify the injunction to permit Defendant to service and maintain infringing products sold prior to the injunction. Defendant's motion for reconsideration should be denied.

First, Defendant has not shown any circumstances that would justify its request for the

extraordinary remedy of reconsideration of the Court's earlier rulings.  As noted above, relief

under Rules 59(e) and 60(b), two of the Federal Rules invoked by Defendant, is "extraordinary"

and will not be granted absent "a showing of extraordinary circumstances."  *Dowell v. State*

*Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *Netscape Communs. Corp. v.*

*Valueclick, Inc.*, 704 F. Supp.2d 544, 546 (E.D. Va. 2010) ("Motions for reconsideration

pursuant to Rules 59(e) and 60(b)(6) are considered to be requests for an extraordinary remedy

reserved only for extraordinary circumstances").  Importantly, "***Rule 60(b) does not permit***

***reconsideration of legal issues addressed in an earlier ruling***."  *Harrison v. Watts*, 609 F.

Supp.2d 561 (E.D. Va. 2009).  Instead, motions for reconsideration are appropriate only if "(i)

there is an intervening change in the law; (ii) new evidence not available at trial has been

discovered; or (iii) a clear error of law must be corrected in order to prevent manifest injustice."

*Netscape Communs. Corp.*, 704 F. Supp.2d at 546.  Defendant's request for reconsideration must

be denied not only because it seeks reconsideration of the Court's decision on legal issues

addressed in earlier rulings, but also because Defendant has not even attempted to show that

there was a change in the law, that new evidence has been discovered or that a clear error of law

must be corrected to prevent manifest injustice.

Second, the new twist to Defendant's old argument — namely that "there is no basis to

distinguish the *Fonar* case" because there was "an absence of any proof that ePlus met the

marking requirement," Brf. at 14 — has already been rejected by the Court and is contradicted

by overwhelming evidence presented at trial.  On at least three occasions the Court has rejected

the notion that there was no proof that *e*Plus met the marking requirement.  *See* Order Denying

Lawson's Motion for Summary Judgment (Dkt. No. 356) at 1 (denying motion to "extent the

motion seeks judgment for failure to mark under 35 U.S.C. § 287"); Order Denying Lawson's

Motion *In Limine* To Exclude Evidence of Damages Prior to Suit (Dkt. No. 364) at 1 (denying request to preclude evidence and argument relating to pre-suit damages for failure to comply with marking requirement); Order Granting *e*Plus's Motion for Permanent Injunction (Dkt. No. 728) at 57 (distinguishing *e*Plus from patentee in *Fonar* because unlike *Fonar* patentee, "*e*Plus began marking its patents in 2003").

Indeed, the evidence is simply ***overwhelming*** that *e*Plus marks its products and that *e*Plus has required its licensees to mark products sold pursuant to the licenses to the patents-in-suit. *See, e.g.,* Tr. 1307:6-1308:5, 1309:1-1310:9, 1353:8-1354:8 (Farber); PX-43 at ¶¶11-14 (requiring Ariba to mark products with *e*Plus patents); PX-317 at ¶14 (requiring Perfect Commerce to mark products with *e*Plus patents); PX-319 at ¶14 (requiring SciQuest to mark products with *e*Plus patents); PX-320 at ¶14 (requiring Verian to mark products with *e*Plus patents); PX-417 (*e*Plus brochure); PX-448 (*e*Plus brochure).[13]  This evidence was presented to the jury at trial over Defendant's objection, and the evidence was unrebutted.  *See* Tr. 1303:8-1304:7, 1308:8-11 (Farber).  Defendant's attempt to put a new spin on an old argument simply fails.

## III.    CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court deny the Defendant's Motion to Modify, Clarify the Injunction, or to Reconsider any collateral orders implicated by the Injunction.

---

[13] The "evidence" Lawson cites in its motion to show the "absence of any proof that *e*Plus met the marking requirement," is 11 lines from the deposition of an SAP employee, Gerard Wissing — a deposition that ***is not part of the trial record in this case***.  *See* Brf. at 13-14.  In any event, the cited testimony from Mr. Wissing's deposition fails to show that there is an absence of proof that *e*Plus met the marking requirement.

Respectfully submitted,

July 1, 2011

_____/s/_____

David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
James D. Clements  *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com
jclements@goodwinprocter.com

Attorneys for Plaintiff *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2011, I will electronically file the foregoing

**PLAINTIFF ePLUS INC.'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY AND CLARIFY THE INJUNCTION, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS COURT'S SEVERAL ORDERS**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Daniel McDonald, *pro hac vice*<br>Kirsten Stoll-DeBell, *pro hac vice*<br>William D. Schultz, *pro hac vice*<br>Rachel C. Hughey, *pro hac vice*<br>Andrew Lagatta, *pro hac vice*<br>MERCHANT & GOULD<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 332-5300<br>Facsimile: 612) 332-9081<br>lawsonservice@merchantgould.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW<br>GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>Don.dunner@finnegan.com<br>Erika.arner@finnegan.com | ***Counsel for Defendant Lawson Software, Inc.*** |

_____/s/_____

David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com