# EXHIBIT C

2011-____
_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
_____

ePLUS, INC.,
*Plaintiff-Appellee,*

v.

LAWSON SOFTWARE, INC.,
*Defendant-Appellant.*
_____

# EMERGENCY MOTION
# OF LAWSON SOFTWARE FOR A STAY PENDING APPEAL
# OF THE DISTRICT COURT'S INJUNCTION
_____

Donald R. Dunner
Kara F. Stoll
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant-Appellant*
*Lawson Software, Inc.*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   THE INJUNCTION SHOULD BE STAYED .............................................. 4

    A.   Lawson's Appeal Will Likely Succeed on the Merits .......................... 5

        1.   The jury's finding of infringement by Lawson's
            Punchout product is legally unsupportable. ............................... 5

        2.   The remaining claim is invalid. ................................................. 8

    B.   The Remaining Factors Favor Staying the Injunction ....................... 11

        1.   Lawson and its customers will be harmed if the
            injunction is not stayed. ........................................................... 11

        2.   ePlus will suffer little harm if the injunction is stayed. ........... 15

        3.   The public interest favors a stay. ............................................. 18

III.  CONCLUSION ............................................................................................. 20

*Lawson Software's motion for a stay pending appeal contains no confidential information. However, some exhibits contain information designated as confidential under the Protective Order entered into in this matter in the U.S. District Court for the Eastern District of Virginia.*

# TABLE OF AUTHORITIES

## CASES

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) .......................................................................... 13

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  629 F.3d 1311 (Fed. Cir. 2010), *vacated*, 2011 WL 1518909 (Fed. Cir.
  Apr. 20, 2011) .................................................................................................... 2

*Am. Cynamid Co. v. U.S. Surgical Corp.*,
  833 F. Supp. 92 (D. Conn. 1992) ...................................................................... 19

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) .......................................................................... 9

*Biomedino, LLC v. Waters Techs. Corp.*,
  490 F.3d 946 (Fed. Cir. 2007) ............................................................................ 8

*Blackboard, Inc. v. Desire2Learn Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ........................................................................ 10

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007) .................................................................. 2, 6, 7

*Centillion Data Systems, LLC v. Qwest Commc'ns Int'l*,
  631 F.3d 1279 (Fed. Cir. 2011) .......................................................................... 8

*eBay v. MercExchange, LLC*,
  547 U.S. 388 (2006) .......................................................................................... 16

*Encyclopedia Britannica, Inc. v. Alpine Elecs., Inc.*,
  355 Fed. App'x 389 (Fed. Cir. 2009) .................................................................. 9

*Finisar Corp. v. DirecTV Group, Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008) ........................................................................ 11

*Fonar Corp. v. General Elec. Co.*,
  107 F.3d 1543 (Fed. Cir. 1997) ........................................................................ 14

iii

*Hybritech Inc. v. Abbott Labs.*,
    849 F.2d 1446 (Fed. Cir. 1988) .................................................................... 19

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...................................................................... 7

*MercExchange, L.L.C. v. eBay, Inc.*,
    500 F. Supp. 2d 556 (E.D. Va. 2007) ................................................ 14, 15, 16

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ............................................................. 2, 5, 6

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ................................................................... 14

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ................................................................... 18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    723 F. Supp. 2d 1284 (S.D. Cal. 2010) ......................................................... 18

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ..................................................................... 15

*Roland Mach. Co. v. Dresser Indus., Inc.*,
    749 F.2d 380 (7th Cir. 1984) ......................................................................... 4

*Standard Havens Prods., Inc. v. Gencor Industries, Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) .................................................................... 1, 4

## STATUTES

35 U.S.C. § 102 ............................................................................................. 14

35 U.S.C. § 112 ............................................................................................... 8

35 U.S.C. § 283 ............................................................................................. 18

# I.    PRELIMINARY STATEMENT

ePlus sued Lawson Software and three other companies in May 2009 for

infringement of three patents[1] related to computer systems for procurement.  The

other defendants settled before trial by licensing the ePlus patents for an aggregate

of $3.5M.  After a jury found that three of Lawson's accused product

configurations infringed five of ePlus's twelve asserted claims, ePlus sought a

permanent injunction, despite the fact that all five claims stand currently rejected

by the PTO on reexamination.[2]  Indeed, four of the five claims are under "final"

rejection, with the rejections of three of them having been affirmed by the Board of

Patent Appeals and Interferences.  (Ex. 20, 32.)  Following an evidentiary hearing,

the district court granted a permanent injunction.  (Exs. 4, 5.)  While Lawson filed

a motion to stay the injunction pending appeal well before the injunction issued,

the district court's injunction is immediately operative and contains no provision

for a stay (with one exception to be discussed below).  It is for that reason that this

emergency motion has been filed.  The district court has not yet entered final

judgment, so post-trial motions have yet to be filed.

_____

[1] U.S. Pat. Nos. 6,023,683 (Ex. 1); 6,055,516 (Ex. 2) and 6,505,172 (Ex. 3).

[2] While the district court refused to consider the PTO's rejections, granting ePlus's
motion to strike this evidence (Ex. 6), this Court is asked to take judicial notice
of the PTO's actions in the reexamination proceedings.  *Standard Havens
Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990).

Beyond the foregoing, the factors that must be weighed together when considering a motion for stay favor the granting of a stay pending appeal in this case.  Lawson is likely to succeed on appeal on every claim found infringed.  All of the claims relate to Lawson's Punchout product, which allows Lawson customers to leave Lawson's system and link to third party vendor websites. Every one of these claims requires multiple parties, so there can be no single direct infringer.[3]  Thus, ePlus cannot show infringement by the Punchout product as a matter of law.  One of these claims was also found to be infringed by Lawson's RSS product, but that claim is indefinite as a matter of law.  Despite acknowledging that this claim's computer software means requires an algorithm as its corresponding structure, the district court did not and could not identify any algorithm for performing the claimed function, because the specification shows an empty "black box" as the supporting structure.  Without more, the claim is invalid as a matter of law.

---

[3] Recently, this Court vacated its opinion in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), and issued an order setting the case for en banc rehearing.  2011 WL 1518909 (Fed. Cir. Apr. 20, 2011).  Unless and until the Court issues an opinion in *Akamai*, the cases on which Lawson relies, *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), and *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), remain good law and support the positions taken in this motion.

2

The serious harm that the injunction will cause Lawson, its customers, and the public also weighs in favor of granting a stay pending appeal. As detailed below, Lawson may lose significant sales that are already underway to non-party customers who have chosen Lawson's RSS and/or Punchout products but who did not complete the purchasing process before the injunction issued. If the injunction on providing maintenance, support, and related services is not stayed, Lawson's customers, who are entitled as a matter of law to repair and maintain previously purchased products, will have no alternative provider to turn to when bugs or other problems cause their systems to go down. For medical professionals and patients at the hundreds of hospitals and healthcare facilities served by Lawson, these issues will disrupt service and could affect the quality of patient care. While the district court delayed implementation of the injunction against servicing some Lawson customers who provide only healthcare services, this does not adequately mitigate the harm to Lawson, its customers, and the public. For example, this would not address the harm to Lawson customers who provide both healthcare services and other services.

Moreover, the minimal harm that ePlus might suffer if the injunction is stayed militates in favor of a stay. ePlus waited years to bring this lawsuit against Lawson. ePlus has granted licenses to five of its biggest competitors and offered to license Lawson, demonstrating its willingness to forego injunctive relief. ePlus has

3

not shown that enjoining Lawson now would result in any new sales for ePlus. Although the district court rejected ePlus's request for damages on prior sales, if ePlus prevails on appeal, any harm suffered during a stay can be compensated by a royalty on Lawson's post-verdict sales.

Lawson therefore requests this Court to stay the injunction until Lawson's appeal is resolved. Further, because this injunction is effective immediately and does not provide for Lawson's requested stay pending appeal, Lawson requests that the Court immediately stay the injunction pending its decision on this motion. ePlus has indicated that it opposes the motion and will respond.

## II.    THE INJUNCTION SHOULD BE STAYED

Determining whether an injunction should be stayed pending appeal involves four considerations: (1) the likelihood of success on the merits; (2) the harm to the moving party; (3) the harm to the non-moving party; and (4) the public interest. *Standard Havens Prods., Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Where, as here, the likelihood of success on the merits is high, the balance of the harms need not favor Lawson as heavily. *Id.* at 513 (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984) to explain that injunctions apply a "'sliding scale approach': 'The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor;

4

the less likely he is to win, the more need it weigh in his favor.'"). Nonetheless, as detailed below, the balance of harms also favors a stay.

### A.    Lawson's Appeal Will Likely Succeed on the Merits

Beyond the fact that the PTO in the reexamination proceedings has found every one of the claims infringed to be anticipated by multiple references, Lawson is likely to succeed on the merits on appeal for every claim found to be infringed for several additional reasons.  Four of the five claims found infringed, *i.e.,* claims 3, 26, 28, and 29 of the '683 patent, relate only to Lawson's Punchout product. Lawson could not be liable as a matter of law for infringing these claims because ePlus has not shown that any one party performs all of the claimed steps or possesses all of the elements of the claimed system.  The remaining claim, claim 1 of the '172 patent, is invalid as a matter of law because it is indefinite.

### 1.    The jury's finding of infringement by Lawson's Punchout product is legally unsupportable.

The jury found that Lawson's Punchout product, when combined with its core Procurement module and Requisition Self Service (RSS), infringed four claims of the '683 patent—method claims 26, 28, and 29 and system claim 3—and claim 1 of the '172 patent.  As a matter of law, however, Lawson could not be liable for infringing any of these claims, either directly or indirectly.

ePlus has not proved that any single party performs all of the steps of method claims 26, 28, and 29 of the '683 patent. "[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007)). [4] Multiple parties are involved in the Punchout configurations, including: (1) Lawson, (2) Lawson's customers, and (3) third party vendors. None of these entities performs all the steps of the method claims.

ePlus did not allege or prove that Lawson performs all of the steps of these claims, such as the step of "processing the requisition to generate one or more purchase orders" (required by all three claims) which is performed by customers operating Lawson's software. (Ex. 7 (Weaver Direct) at 607:1-14.) Moreover, according to ePlus's expert, the third-party vendor performs steps required by all three claims, including "searching for matching items" and "maintaining at least two product catalogs," as well as the step in claim 26 of "determining whether a selected matching item is available in inventory." (Ex. 8 (Weaver Cross) at

---

[4] See footnote 3, *supra*.

6

877:25-878:15; 879:17-24)  Therefore, no one entity performs all of the steps recited in claims 26, 28, and 29 of the '683 patent.

Thus the issue of infringement turns on whether Lawson "sufficiently controls or directs other parties" such that Lawson itself "can be said to have performed every step of the asserted claim." *Muniauction*,  532 F.3d at 1329. Here, Lawson does not direct or control the third party vendor.  Instead, they interact with "arms-length cooperation" which "will not give rise to direct infringement by any party." *Muniauction*, 532 F.3d at 1329 (quoting *BMC Resources*, 498 F.3d at 1371).

Because no one entity performs all of the steps recited in claims 26, 28, and 29 of the '683 patent and there is no "direction or control" to establish joint infringement, Lawson is likely to prevail on appeal on the issue of direct infringement.  Without direct infringement, there can be no liability for indirect infringement. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010).  Thus, Lawson is also likely to prevail on the issue of indirect infringement.

For similar reasons, ePlus has not proved that any single party possesses all of the elements of the system of claim 3 of the '683 patent or the system of claim 1 of the '172 patent.  System claim 3 of the '683 patent requires "at least two product catalogs" and system claim 1 of the '172 patent requires "data relating to items associated with at least two vendors."  ePlus's expert admitted that in Punchout,

7

the user accesses catalogs maintained by third party vendors, not Lawson.  (Ex. 7

(Weaver Direct) at 572:12-19.)  He explained that "[t]he user engages the Lawson

system and using the capabilities of the Lawson system goes to a vendor website,

one that's been created for this customer.  And so this idea of looking at an

external vendor's specialized website is called punching out of the Lawson

system."  *Id.*  ePlus has therefore not shown that any single party possesses all of

the elements of the claimed systems.  To the extent that ePlus may rely upon

*Centillion Data Systems, LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279 (Fed. Cir.

2011), to argue that the customer is a single user of the overall system, this would

require a showing that Lawson indirectly infringed.  However, ePlus has not shown

that Lawson possessed the specific intent required to induce infringement or the

knowledge that its system was infringing that would be needed to support a claim

of contributory infringement.  Lawson is therefore likely to prevail on appeal on

the issues of direct and indirect infringement of the Punchout system claims.

### 2.      The remaining claim is invalid.

The only claim found infringed by Lawson's Requisition Self Service (RSS)

product without Punchout, claim 1 of the '172 patent, is invalid because it is

indefinite under 35 U.S.C. § 112 ¶¶ 2 and 6.  Claim 3 of the '683 patent, one of the

Punchout claims discussed above, is also invalid for this reason.  These claims are

written in "means-plus-function" format.  To properly construe means-plus-

function claims under 35 U.S.C. § 112 ¶ 6, a court must (1) identify the claimed function, which most often is simply the function recited in the claim following the word "means"; and (2) locate in the specification the precise structure that the patent identifies as corresponding to the recited function. *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). Where, as here, the structure for performing a claimed function is a computer programmed with software to carry out the claimed function (Ex. 9 (Claim Construction Op.) at 33), a corresponding algorithm is required to provide sufficient disclosure of structure under § 112 ¶ 6 to avoid indefiniteness under § 112 ¶ 2. *Encyclopedia Britannica, Inc. v. Alpine Elecs., Inc.*, 355 Fed. App'x 389, 395 (Fed. Cir. 2009) (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337-38 (Fed. Cir. 2008)). The district court's constructions of claims 1 and 3 failed to identify any specific algorithms disclosed in the specification to perform several of the claimed functions. Indeed, the specification shared by the '172 and '683 patents contains no such algorithm support. The claims, therefore, are indefinite under § 112 ¶ 2.

More specifically, claim 1 of the '172 patent recites "means for processing said requisition to generate purchase orders for said selected matching item" and claim 3 of the '683 patent recites "means for processing the requisition to generate one or more purchase orders for the selected matching items." According to the

9

district court, they recite functions performed by "a purchase order generation module operating on a computer system having access to the requisition, and its equivalents." (Ex. 9 (Claim Construction Op.) at 47, 51.)  Despite acknowledging that "[f]or a computer-implemented means-plus-function claim, the corresponding structure must specify an algorithm for performing the function programmed in a special-purpose computer" (Ex. 9 (Claim Construction Op.) at 33), the district court identified none.  Indeed, the patent specification reveals no specific algorithm for processing a requisition to generate purchase orders.  The common specification merely states that "[o]nce a requisition has been inventory sourced and accepted by the [customer service representative], it can be converted to one or more purchase orders, as represented by step 114 in FIG. 3." (Ex. 1, '683 patent, col. 15, ll. 20-33.)   Far from illuminating the specific algorithm for generating purchase orders from a requisition, step 114 of Figure 3 shows only an empty box labeled "Purchase Orders."  This Court has found similar means-plus-function claims indefinite when the only disclosed algorithm to support software structure is "merely a black box that performs a recited function." *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009).

Claim 3 of the '683 patent also recites "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source."  The district court construed the structure as "non-catalog

10

databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalent." (Ex. 9 (Claim Construction Op.) at 47-48.) However, the "databases," "tables" and "codes" identified by the district court do not provide any explanation of how the claimed "conversion" will be performed. "[S]imply reciting 'software' without providing some detail about the means to accomplish the function is not enough." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008). When, as here, the specification does not disclose how a function is performed by software operating on a computer system, the claim is indefinite. *Id.* Without adequate structure disclosed in the specification to support the recited functions, claims 1 of the '172 patent and claim 3 of the '683 patent are invalid as a matter of law.

**B.     The Remaining Factors Favor Staying the Injunction**

Lawson, its customers, and the public will suffer serious harm if the injunction is not stayed. Moreover, any harm to ePlus from a stay would be minimal.

**1.     Lawson and its customers will be harmed if the injunction is not stayed.**

11

Lawson will lose sales and customers, and suffer irreparable damage to its reputation, without a stay pending appeal.  Several customers selected Lawson to provide S3 Supply Chain Management software, which includes RSS and Punchout, (Ex. 10 (Inj. Hr'g, Hager) at 179:12-21; Ex. 11 (Lohkamp Direct) at 994:1-8), but did not complete their purchases before the injunction issued.  (Ex. 12.)  Lawson has informed ePlus that it is in the process of decommissioning sales of RSS and introducing a new product called Requisition Center (Ex. 31), but ePlus has not responded to Lawson's request to discuss the matter and, indeed, ePlus stated at the injunction hearing that there can be no effective design-around. (Ex. 33 (Inj. Hr'g) at 112:12-14.)  ePlus's silence on the new product thus leaves Lawson's pending sales in jeopardy without a stay of the injunction.

If these customers are forced to go elsewhere, it is unlikely that they would return even if Lawson prevails on appeal.  Lawson enjoys less than a 2% market share compared to its major competitors like SAP and Oracle.  (Ex. 13.)  Such a loss of customers and in-process sales would damage Lawson irreparably.

Lawson's reputation will be harmed if it is not allowed to maintain and service its products already implemented at customer sites.  Lawson's customers, many of whom licensed RSS and Punchout before ePlus alleges infringement began, rely on Lawson to maintain and support the previously purchased products. (*See* Ex. 14 (Johnson Decl.) at ¶¶ 6-10, Ex. 15 (Reasoner Decl.) at ¶¶ 10-13.)

Lawson is the only source for maintenance of RSS and Punchout.  (*See, e.g.,* Ex. 15 (Reasoner Decl.) at ¶ 16.)  Although the district court contends that suitable non-infringing alternative products exist, there is no dispute that only Lawson can provide support for its own installed products.

While Lawson is undertaking efforts to transition existing RSS customers to the new Requisition Center product, this transition will take time.  Even if the injunction is overturned on appeal, Lawson will have no recourse to regain its good reputation with its service and maintenance customers.

Lawson's current and prospective customers will also be harmed if the injunction is not stayed.[5]  The district court ruled that ePlus is not entitled to any damages for past sales.  (Ex. 16.)  Given that fact, Lawson's customers in those past sales are entitled as a matter of law to maintain their Lawson products.  "If a machine was sold under circumstances that did not subject its seller to damages, then subsequent repair cannot subject it to damages.  One is entitled to repair that which is sold free of liability for infringement."  *Fonar Corp. v. General Elec. Co.,*

---

[5] The district court cites *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008) in arguing that the harm to customers is "irrelevant." (Ex. 4 at 40). *Acumed* addressed the granting of an injunction and not a stay pending appeal. Here, this Court generally "weighs the equities as they affect the parties and the public." *DuPont*, 835 F.2d at 278.  Thus, at a minimum, the harm to Lawson's customers, as members of the public, is relevant to consideration of a stay.

107 F.3d 1543, 1555 (Fed. Cir. 1997); *see also Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273-74 (Fed. Cir. 1999).  The district court attempted to distinguish these cases but acknowledged that this is an issue "not previously addressed" by this Court.  (Ex. 4 at 51.)  In fact, the district court's order barring ePlus from recovering damages as a discovery sanction is analogous to the facts of *Fonar* and *Odetics*.  In all three cases, the patentee was permitted to obtain a remedy for future infringement by new devices but was barred from obtaining damages for past infringement by old devices; the patentee did not expressly authorize the past infringement; and damages were barred because the patentee failed to take an affirmative action that is required to prove damages.

The irreparable harm to Lawson from the injunction seems all the more unfair given that the PTO will likely continue to affirm its pending rejections and invalidate the claims-in-suit when the reexamination proceedings conclude.  As courts have recognized, an ongoing reexamination, especially one involving claim rejections, is relevant to the issue of a permanent injunction.  See *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 574-75 n.15 (E.D. Va. 2007).  Four of the claims found to be infringed have been finally rejected under 35 U.S.C. § 102 as being anticipated by multiple prior art references.  (Ex. 17, 20, 32.) The fifth has also been rejected as being anticipated by multiple prior art references.  (Ex. 18.) In fact, the Board of Patent Appeals has affirmed the rejections of claims 26, 28,

and 29 of the '683 patent as being anticipated by two separate pieces of prior art. (Ex. 32). If Lawson is enjoined now and the PTO's rejections of all of the claims-in-suit are affirmed, Lawson will have no way to recoup the sales or customers it lost while enjoined.

### 2. ePlus will suffer little harm if the injunction is stayed.

The facts show that any harm to ePlus from a stay would be minor and could be remedied, if ePlus prevails on appeal, by damages on Lawson's post-verdict sales. Although ePlus first learned of Lawson's accused products in 2002, it did not file suit until May 2009. (Ex. 22 (Inj. Hr'g, Farber) at 147:18-149:6, 154:8-25.) This long period of inaction demonstrates that ePlus was not being seriously harmed by the status quo, and thus would not be harmed by a stay now. *See, e.g., MercExchange*, 500 F. Supp. 2d at 573 n.13. The district court discounted ePlus's delay in filing suit against Lawson, yet this Court has held that such delay "would appear to negate irreparable harm." *Polymer Techs. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996). While the district court is correct that a patentee need not sue all alleged infringers at once, failure to do so can nonetheless negate a finding of irreparable harm when it indicates "willingness to accept royalty-type damages in lieu of market exclusivity." *Id.* at 976.

ePlus has granted non-exclusive, lump sum licenses to five of its biggest competitors. (Ex. 22 (Inj. Hr'g, Farber) at 150:15-18; Ex. 23, 24, 25, 26, 27.) In

fact, every previous lawsuit instituted by ePlus on these patents has resulted in a license. (Ex. 22 (Inj. Hr'g, Farber) at 150:12-14.) This strongly mitigates the likelihood of irreparable harm to ePlus. *eBay v. MercExchange, LLC*, 547 U.S. 388, 393 (2006); *see also MercExchange*, 500 F. Supp. 2d at 572 (finding no irreparable harm and that "MercExchange's modus operandi appears to be to seek out companies that are *already market participants* that are infringing, or potentially infringing, on MercExchange's patents and negotiate to maximize the value of a license, entered into as a settlement to, or avoidance of, litigation"). The district court rejected this evidence refuting irreparable injury because "courts simply cannot be heard to urge parties to settle and then to [sic] use the fact that they settled against them." (Ex. 4 at 36-37.) Widespread licensing, however, undermines the exclusivity that underlies any claim of irreparable harm, regardless of whether or not any court encouraged the settlements. Indeed, the evidence demonstrates that ePlus's real motive in seeking an injunction is not to maintain exclusivity but to pressure Lawson to accept a "reasonable dollar amount," with ePlus's own counsel arguing that an injunction would present a "level playing field" and allow ePlus to return to the licensing table. (Ex. 22 (Inj. Hr'g, Farber) at 23:10-14, 78:15-22; 91:17-92:3.)

Lawson and ePlus are not direct competitors in relevant markets and the sale of Lawson's products does not deprive ePlus of sales. Both parties agree that

16

Lawson offers a total ERP software suite, including many different components and functionalities, (*See* Ex. 22 (Inj. Hr'g, Farber) at 49:17-50:1; Ex. 10 (Inj. Hr'g, Hager) at 179:22-180:21.), while ePlus does not offer a full ERP solution and instead sells a "best-of-breed" standalone eProcurement solution that can be added to an existing ERP system. (Ex. 22 (Inj. Hr'g, Farber) at 140:14-16; Ex. 10 (Inj. Hr'g, Hager) at 186:8-9.) The district court acknowledged that Lawson and ePlus do not compete in their respective ERP and "best of breed" markets. (Ex. 4 at 17.) Yet the injunction precludes Lawson from selling to and supporting customers even in the markets where the parties do not compete.

There is no evidence that ePlus would capture any of Lawson's sales of RSS or Punchout if Lawson is not able to make these sales. Even if ePlus can prove it lost a few sales to Lawson, dozens of other companies sell non-infringing or licensed eProcurement software, both as part of integrated ERP solutions and as standalone "best-of-breed" solutions. (Ex. 22 (Inj. Hr'g, Farber) at 49:2-4, 49:11-13, 56:20-57:7, 119:18-121:1, 143:25-144:6; Ex. 28; Ex. 29.) Indeed, ePlus admitted that Punchout is an industry standard product that virtually everyone sells. (Ex. 22 (Inj. Hr'g, Farber) at 144:22-25.) Additionally, ePlus's sales of the products it contends are covered by the patents-in-suit have never been more than 1.5% of ePlus's total revenues in any given year. (*Id.* at 92:8-93:15.) There is nothing to show that enjoining Lawson from selling and servicing RSS and

17

Punchout will cause ePlus to make any new sales, and any harm that ePlus suffers related to its procurement software will have little impact, if any, on ePlus as a whole. If an injunction is stayed but ePlus prevails on appeal, it will have a ready remedy: a royalty on Lawson's post-judgment sales. An ongoing royalty for future sales may even be granted in lieu of an injunction. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) (holding ongoing royalties satisfy the equitable relief provisions of 35 U.S.C. § 283); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1338 (S.D. Cal. 2010) ("Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate."). The district court claims that a royalty cannot be calculated here, but the evidence shows quantifiable price differences between Lawson's non-enjoined core procurement product and the enjoined product configurations including the RSS and Punchout modules, providing an ample framework for setting a royalty.

### 3. The public interest favors a stay.

Enjoining Lawson from servicing and maintaining products that have already been sold to healthcare providers and hospitals will likely have a significant adverse effect on the communities these facilities serve. Lawson's products are used in hundreds of healthcare facilities around the country and worldwide. (Ex. 10 (Inj. Hr'g, Hager) at 214:2-5.; *see* Ex. 28 at 14-15 (The

18

Lawson S3 system with Punchout "has notable traction in healthcare, education and the public sector.").) In fact, a majority of Lawson's RSS and Punchout customers are hospitals and healthcare organizations. (Ex. 30.) In cases involving medical products or public health facilities, this Court has explained that while there exists a public interest in protecting valid patent rights, a district court should also consider "whether there exists some critical public interest that would be injured" by injunctive relief. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988); *see also Am. Cynamid Co. v. U.S. Surgical Corp.*, 833 F. Supp. 92, 134 (D. Conn. 1992) (denying a preliminary injunction because, among other things, it would leave doctors and hospitals without access to medical supplies).

Although the district court delayed implementation of the injunction against providing maintenance, support, and related services to Lawson's customers who provide only healthcare services, implicitly recognizing this harm, its limited delay will not prevent the public from being harmed by the injunction. For example, Lawson would still be enjoined from providing maintenance, support, and related services to customers who provide healthcare services in addition to other services, or healthcare providers who purchased RSS and/or Punchout after the verdict was entered but before any injunction issued. Likewise, Lawson would be enjoined from servicing other public sector customers, including schools and municipal governments. The district court provided no reason to exclude these customers

19

from its sunset provision.  Like the direct harm to Lawson, the harm to these

healthcare providers and their patients would be largely irreversible, even if the

district court's ruling is overturned on appeal.  Even with an injunction, ePlus will

not benefit because it does not offer a viable alternative for hospitals and other

healthcare facilities.

## III.   CONCLUSION

If the district court's injunction is not stayed pending appeal, Lawson, its

customers, and the public will suffer serious harm.  In contrast, any harm to ePlus

from a stay would be minimal.  Moreover, Lawson is likely to succeed on the

merits of the appeal.  Weighed together, these facts demonstrate that a stay should

issue.

Accordingly, Lawson respectfully requests a stay of the injunction.

Dated: May 24, 2011                          Respectfully submitted,

Donald R. Dunner
Kara F. Stoll
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant-Appellant*
*Lawson Software, Inc.*

20

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

EPLUS, INC. V. LAWSON SOFTWARE, INC.
No. 2011-____

CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for defendant-appellant Lawson Software, Inc. certify the following:

1. The full name of every party or amicus represented by us is:

      Lawson Software, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

      Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

      Not applicable.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear in this court are:

Dabney J. Carr, IV, Robert A. Angle, Megan C. Rahman
  TROUTMAN SANDERS LLP

Daniel McDonald, William D. Schultz, Kirstin Stoll-DeBell, Rachel C. Hughey, Andrew J. Lagatta, Joshua P. Graham
  MERCHANT & GOULD P.C.

Donald R. Dunner, Kara F. Stoll, Erika H. Arner
    FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.

Dated: May 24, 2011

Respectfully submitted,

Donald R. Dunner
Kara F. Stoll
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant-Appellant
Lawson Software, Inc.*

21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 3:09-cv-620 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT LAWSON SOFTWARE, INC.'S
## NOTICE OF INTERLOCUTORY APPEAL

Notice is hereby given that Lawson Software, Inc. ("Lawson") appeals to the United

States Court of Appeals for the Federal Circuit from the Permanent Injunction issued by this

Court on May 23, 2011 (Docket No.729). Appellate jurisdiction arises from the statute

permitting interlocutory appeals from orders granting injunctions. 28 U.S.C. § 1292(a)(1) &

(c)(1).

The Court has not entered final judgment and, therefore, this is not an appeal from a final

judgment under 28 U.S.C. § 1292(c)(2).

Because the permanent injunction was issued after a jury trial and several rulings and

decisions of this Court, Lawson's appeal from the permanent injunction also necessarily includes

all decisions and rulings that underlie or are intertwined with that injunction, and that otherwise

affect the questions of validity and infringement of U.S. Patents Nos. 6,023,683, 6,055,516, and

6,505,172 (collectively, "the asserted patents"). Those underlying or intertwined decisions and

rulings include, but are not limited to:

2040439v1

1. The Permanent Injunction Order (Docket No. 729) and the Memorandum Opinion accompanying the Permanent Injunction Order (Docket No. 728);

2. The district court's denial of Lawson's motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) (Docket No. 602);

3. The jury's verdict that the asserted patents were not proven invalid and have been infringed by Lawson (Docket No. 600);

4. The district court's rulings during the jury trial;

5. The district court's rulings on Plaintiff's and Defendant's motions in limine (including Docket Nos. 362, 365, 372, 373, 375, 382);

6. The district court's denial of Defendant's motions for summary judgment (including Docket Nos. 356, 357, and 395);

7. The district court's Memorandum Opinion and Order interpreting the claims of the asserted patents (Docket Nos. 204, 205); and

8. The district court's Memorandum Opinions and Orders excluding prior art evidence from trial (including Docket Nos. 435, 436, 516).

With the filing of the notice of appeal is the $450.00 appeal fee required by 28 U.S.C. § 1913 and the $5.00 filing fee required by 28 U.S.C. § 1917.

LAWSON SOFTWARE, INC.

By _____/s/_____

Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point, Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Daniel McDonald (admitted *pro hac vice*)
Kirstin L. Stoll-Debell (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of May, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*



DABNEY J. CARR IV
804.697.1238 telephone
804.698.5119 facsimile
dabney.carr@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122 (23218-1122)
Richmond, Virginia  23219
804.697.1200 telephone
troutmansanders.com

May 24, 2011

Fernando Galindo, Clerk
United States District Court for the
Eastern District of Virginia
Spottswood W. Robinson, III and
Robert R. Merhige, Jr.
Federal Courthouse - Room 3000
701 East Broad Street
Richmond, Virginia  23219

Re:   **ePlus, Inc. v. Lawson Software, Inc.**
      **Civil Action No. 3:09cv620**

Dear Mr. Galindo:

I enclose a check in the amount of $455.00, which represents the $450.00 appeal fee required by 28 U.S.C. § 1913 and the $5.00 filing fee required by 28 U.S.C. § 1917 relating to Defendant Lawson Software, Inc.'s Notice of Interlocutory Appeal [Docket No. 730], which was filed electronically on May 23, 2011.

With kind regards, I am

Sincerely,

Dabney Carr

Enclosure

cc:   Counsel of Record - w/out enclosure
      Judge Robert E. Payne – w/out enclosure

ATLANTA   CHICAGO   HONG KONG   LONDON   NEW YORK   NEWARK   NORFOLK   ORANGE COUNTY   PORTLAND
RALEIGH   RICHMOND   SAN DIEGO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC
2054802v1

**TROUTMAN SANDERS LLP**          Vendor No.   31268     - Clerk, USDC, Eastern District of VA          Check No.545997

Check Desc:

| Inv # | Inv. Date | Description | Gross | Discount | Net |
|-------|-----------|-------------|-------|----------|-----|
| 040511 | 4/5/2011 | | $455.00 | | $455.00 |
| | PAYEE: Clerk, USDC, Eastern District of VA; REQUEST#: 338953; DATE: 4/5/2011. Filing fee for notice of appeal | | | | 455.00 |
| | | Totals | $455.00 | | $455.00 |

SAFEGUARD. LITHO USA. SFBL4 CK75B614L

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

## TROUTMAN SANDERS LLP

**ATTORNEYS AT LAW**

No. 545997

Wachovia, N.A.
Valdosta, Georgia

A LIMITED LIABILITY PARTNERSHIP
BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E.- SUITE 5200
ATLANTA, GEORGIA 30308-2216
Email: accts_payable@troutmansanders.com

64-975/612

**Date**
04/05/2011

PAY   *Four hundred fifty-five and 00/100 DOLLARS*          **$455.00**

TWO SIGNATURES REQUIRED OVER $1000.00
VOID AFTER 90 DAYS

TO THE
ORDER
OF   Clerk, USDC, Eastern District of VA



THIS DOCUMENT CONTAINS HEAT SENSITIVE INK - TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑆545997⑆ ⑉061209756⑉ 2079900030141⑈

2011-_____

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

_____

ePLUS, INC.,
*Plaintiff-Appellee,*

v.

LAWSON SOFTWARE, INC.
*Defendant-Appellant.*

_____

**TEMPORARY STAY ORDER**

UPON CONSIDERATION of LAWSON'S EMERGENCY MOTION FOR

A STAY PENDING APPEAL OF THE DISTRICT COURT'S INJUNCTION,

filed on May 24, 2011, it is ORDERED that:

The district court's injunction, entered on May 23, 2011, will be temporarily

stayed pending receipt of ePlus's response and Lawson's reply thereto.  This

temporary stay is not based on a consideration of the merits, but is granted to

preserve the status quo while the Court considers the parties' papers.


Date: _____          FOR THE COURT: _____

2011-\_\_\_\_

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

ePLUS, INC.,
*Plaintiff-Appellee,*

v.

LAWSON SOFTWARE, INC.
*Defendant-Appellant.*

_____

## STAY ORDER

UPON CONSIDERATION OF LAWSON'S EMERGENCY MOTION

FOR A STAY PENDING APPEAL OF THE DISTRICT COURT'S

INJUNCTION, filed on May 24, 2011, it is ORDERED that:

The motion is GRANTED, and the district court's injunction, entered on

May 23, 2011, will be stayed pending resolution of the present appeal for the sale

and service of the following Lawson products: Lawson's Core S3 Procurement

System in combination with Requisition Self Service (RSS); Lawson's Core S3

Procurement System in combination with RSS and Punchout; Lawson's Core S3

Procurement System in combination with RSS, Punchout, and Electronic Data

Interchange; and Lawson's M3 e-Procurement Software.

Date:_____                    FOR THE COURT: _____

2

## CERTIFICATE OF SERVICE

I hereby certify that two copies of the foregoing EMERGENCY MOTION

FOR A STAY PENDING APPEAL OF THE DISTRICT COURT'S

INJUNCTION were served by Federal Express on the May 24, 2011, on the

following counsel of record:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*