# PX-317

Confidential

# SETTLEMENT AND LICENSE AGREEMENT

THIS SETTLEMENT AND LICENSE AGREEMENT (the "Agreement") is made and entered into this _28 th_ day of August, 2009 (the "Effective Date") between ePlus inc. ("ePlus"), on the one hand, and Perfect Commerce, LLC ("Perfect"), on the other hand (referred to collectively herein as the "Parties" or in the singular as "Party").

Perfect is a limited liability company organized under the laws of the Commonwealth of Virginia having its principal place of business at One Compass Way, Suite 120, Newport News, VA 23606. ePlus is a Delaware corporation having its principal place of business at 13595 Dulles Technology Drive, Herndon, VA 20171. As used herein, "Perfect" and "ePlus" shall each include the Parties' respective officers, directors, shareholders, agents, and employees.

WHEREAS, certain disputes have arisen between the Parties including, without limitation, the claims asserted by ePlus in the case captioned *ePlus, Inc. v. Perfect Commerce, Inc., SciQuest, Inc., Lawson Software, Inc. and Verian Technologies, Inc.*, Civil Action No. 2:09cv232, now pending in the United States District Court for the Eastern District of Virginia (Norfolk Division) (hereinafter referred to as "the Action");

WHEREAS, the Parties wish to terminate the Action by agreeing to a settlement of all claims, defenses, and counterclaims asserted or which could have been asserted in the Action; and

NOW, THEREFORE, in consideration of the promises, mutual covenants and agreements herein contained and other good and valuable consideration, the receipt, validity, and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

### A. DEFINITIONS

1. "ePlus Patents" means U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent") and 6,505,172 (the "'172 Patent").

2. "Change in Control" of a Party means (a) the consummation of the sale, transfer or other disposition of all or substantially all of the Party's assets (an "Asset Acquisition"), (b) the acquisition by another entity, person or group of affiliated persons of the Party's securities, whether by merger, consolidation, tender offer, purchase or otherwise and whether in one transaction or a series of related transactions ("Stock Acquisition"), if, after such Stock Acquisition, the acquiring entity, person or group of persons would hold at least a majority of the outstanding voting stock of the Party (or the surviving entity). Notwithstanding the foregoing a "Change in Control" shall not include a transaction if its sole purpose is to change the state of a Party's incorporation or to

LIBW/1717097.1



Confidential

create a holding company that will be owned in substantially the same proportions by the persons who held the Party's securities immediately prior to such transaction. "Change in Control" includes any Change in Control as a result of a bankruptcy proceeding against Perfect.

3. The term "Affiliate" means any subsidiary, corporation, firm or entity directly or indirectly controlled by, or under common control of any Party. "Control," as used in this definition, means the ownership, directly or indirectly, of 50 percent or more of the shares of stock entitled to vote for the election of directors in the case of a corporation, or 50 percent or more of the equity interest in the case of any other type of entity. This definition shall in no way include Lawson Software, Inc., or its successors, assigns or subsidiaries.

4. "eProcurement" shall mean any system, including software, hardware and/or network architecture, that is capable of facilitating the creation of procurement catalogs of items, performing a search for data regarding a catalog item or items each associated with a source, creating a requisition for the item(s), and, when desired, generating one or more purchase orders for the item(s).

### B. LICENSE FEE PAYMENTS

5. In consideration for the grant from ePlus to Perfect of the executory license set forth below, Perfect shall pay to ePlus an advance payment in a total amount as set forth in Exhibit A. Said license shall be contingent on the above payment.

6. Absent written notice delivered by ePlus at least three (3) business days in advance or otherwise agreed in writing by the Parties, payments hereunder shall be made to ePlus by wire transfer to:

Wachovia Bank, NA
Philadelphia, PA
ABA No.: 031-201-467
Acct. No.: 2014 15939 6552

7. All payments made under this Section B are non-refundable.

### C. DISMISSAL

8. Contemporaneous with the execution of this Agreement and the Mutual Release (described below), the attorneys of record for the Parties will jointly submit to the Court a Proposed Stipulation and Order of Dismissal without prejudice in the form attached hereto as Exhibit B. Ninety-one (91) days after the License Fee Payment has been received, ePlus agrees that it will submit a dismissal order to the Court that will dismiss Perfect from the case with prejudice.

LIBW/1717097.1

CONFIDENTIAL

ePLUS0940766

PX0317, Page 2 of 12

Confidential

### D.   MUTUAL RELEASES

9.   ePlus Releases. Contingent upon the payment set forth in Section 5, ePlus, on behalf of itself and its Affiliates and their respective successors and assigns, irrevocably releases, acquits and forever discharges Perfect and its Affiliates and their respective officers, directors, employees, agents, predecessors, successors, assigns, customers, representatives and attorneys (the "Perfect Releasees") from any and all claims or liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to actions taken before the Effective Date by the Perfect Releasees in connection with the Action or the ePlus Patents; provided, however, that nothing contained within this release shall be deemed to release Perfect from any of its duties or obligations set forth under this Agreement.

10.   Perfect Releases. Perfect, on behalf of itself and its Affiliates and their respective successors and assigns, irrevocably releases, acquits and forever discharges ePlus and its Affiliates and their respective officers, directors, employees, agents, predecessors, successors, assigns, customers, representatives and attorneys (the "ePlus Releasees"), from any and all claims or liabilities of any kind or nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to actions taken before the Effective Date by ePlus Releasees in connection with the Action; provided, however, that nothing contained within this release shall be deemed to release ePlus from any of its duties or obligations set forth under this Agreement.

11.   General Releases. The releases by ePlus and Perfect in this Agreement include an express, informed, knowing and voluntary waiver and relinquishment to the fullest extent permitted by law. In this connection, the Parties acknowledge that they may have sustained damages, losses, costs or expenses which are presently unknown and unsuspected and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. The Parties hereto further acknowledge that they have negotiated this Agreement taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs and expenses arising from or relating to the Action, the ePlus Patents and the relationship between the Parties, and the Parties hereto voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on general releases.

### E.   LITIGATIONS AND REEXAMINATIONS

12.   Reexamination of ePlus Patents. Perfect agrees that neither it nor any of its Affiliates, representatives or agents shall directly or indirectly file, induce or encourage the filing of a request for reexamination of any of the ePlus Patents with the U.S. Patent and Trademark Office or aid, assist or participate in any reexamination or other Patent Office proceeding involving any of the ePlus Patents.

LIBW/1717097.1

CONFIDENTIAL                                                                                             ePLUS0940767

PX0317, Page 3 of 12

Confidential

13. <u>Litigation Against ePlus Patents</u>. Neither Perfect, nor any of its Affiliates, representatives or agents will initiate, induce, encourage, voluntarily join, participate, or finance, either directly or indirectly, any litigation or other claim or court proceeding against ePlus, or any successor or assign of ePlus, arising from, pertaining to, or related to the validity or enforceability of any claim of any of the ePlus Patents, except as required by court order, and except fees owed for counsel as previously incurred prior to the Effective Date

### F.   LICENSES OF INTELLECTUAL PROPERTY

14. Subject to the terms and conditions set forth herein, and in exchange for, and contingent upon, Perfect's payment of the license fee set forth in Paragraph 5 above, ePlus grants to Perfect a personal, non-exclusive, non-transferable, non-sublicensable, non-assignable (subject to limited assignment rights in Section 15 below), fully paid-up, worldwide license to make, import, sell and offer for sale any products and services that are covered by one or more claims of the ePlus Patents, where each patent license granted under this paragraph shall terminate at the expiration of the patent covered by such license. All such products which are imported, distributed, sold, offered for sale or utilized in any manner and which are covered by one or more claims of any ePlus Patent will be marked pursuant to 35 U.S.C. §287 in a form mutually agreed to by the Parties. In no event does the license granted hereunder extend to Lawson Software, Inc., or its successors, assigns or Affiliates.

15. The patent license granted in this Section is personal to Perfect and Perfect may not assign this Agreement or any portion hereof except as provided in this paragraph without the prior written consent of ePlus. In the event of a Change of Control of Perfect ninety-one (91) days or longer after the payment by Perfect of the license fee due under Paragraph 5 whereby any third party acquires all or substantially all of the assets, business or any product line(s) of Perfect, ePlus hereby provides its written consent as required by this paragraph for assignment of the license solely with regard to Perfect products and services (as they existed as of the date of the Change of Control, and as the Perfect products and services may be subsequently matured and developed.) The assignment shall not extend the license to any product or service of such Change of Control entity, or any combination of any product or service of any such Change of Control entity with any eProcurement or catalog content management product of Perfect or any eProcurement service sold by Perfect, if the product or service of such Change of Control entity or the combination of any product or service of such Change of Control entity with any eProcurement or catalog content management product of Perfect or any eProcurement service of Perfect would otherwise infringe the ePlus Patents. In no event shall any Change of Control effectuate a license transfer to any party that is at the time of the Change of Control a named defendant in eProcurement Patent litigation with ePlus. This section does not release any such Change of Control entity from any claim that ePlus may have that the products and/or services of the Change of Control entity may infringe one or more claims of the ePlus Patents.

4

LIBW/1717097.1

Confidential

16.     Except as specifically set forth in this Section, this Agreement does not grant either Party any license to, or otherwise transfer any rights in, any intellectual property of either Party.

17.     If Perfect, or a trustee acting on Perfect's behalf in a bankruptcy proceeding, should prosecute against ePlus an action to avoid and recover any portion of the payments paid to ePlus in Paragraph 5 above then, upon entry of an order directing ePlus to make any such payment, ePlus shall have the right, but not the obligation, to rescind the entirety of this Settlement and License Agreement, including the grant to Perfect of the executory patent license.

18.     Covenant Not to Sue. Each Party, for itself and its present and future Affiliates (the "Covenantor"), covenants not to sue the other Party, or any of the other Party's Affiliates (the "Covenantee") for any claim that the Covenantee's manufacture, use, sale, offer for sale, lease, importation, distribution or other transfer of eProcurement products or services constitutes direct infringement, indirect infringement, contributory infringement or inducement of infringement of any eProcurement patents now owned or hereafter acquired or obtained by the Covenantor within five (5) years after the Effective Date. Each Covenantor further covenants and agrees to indemnify and hold each Covenantee harmless from any and all costs, attorneys' fees, damages or other fees the Covenantee incurs or that are assessed in the event of an actual or threatened patent infringement suit or claim made by Covenantor alleging that the manufacture, use, sale, offer for sale, lease, importation, distribution or other transfer by the Covenantee of any eProcurement product or service constitutes direct, indirect, contributory or inducement of infringement of any Covenantor patent now owned or hereafter acquired or obtained by the Covenantor within five (5) years after the Effective Date. ePlus's covenant granted in this Section shall be contingent upon the payment by Perfect of the amount set forth in Section 5.

### G.     REPRESENTATIONS AND WARRANTIES.

19.     Mutual Representatives and Warranties. Each Party represents and warrants, solely to and for the benefit of the other Party, that:

(a) it has the full right, power and authority to enter into this Agreement and perform its obligations hereunder and, in the case of ePlus, to grant the license set forth in Section 14 above;

(b) its performance of this Agreement shall not conflict with or result in a breach or violation of any of the terms or provisions or constitute a default under any other agreement by which it is bound or to which its assets are subject; and

(c) when executed and delivered, this Agreement shall constitute a legal, valid and binding obligation enforceable against it in accordance with its terms.

LIBW/1717097.1

CONFIDENTIAL                                                                ePLUS0940769

PX0317, Page 5 of 12

Confidential

20. Representations and Warranties of Perfect.

(a) Perfect represents and warrants that it is not currently in engaged with any third party beyond mere discussion, concerning the sale or transfer of all or substantially all of its assets or a merger, consolidation or other similar transaction pursuant to which a Change in Control of Perfect would be effectuated; and

(b) Perfect represents and warrants that the income statements, audited financials and other financial documents provided to ePlus for review prior to the execution of this Agreement were, to the best of Perfect's knowledge based on its current accounting practices, and subject to audit adjustment, true and accurate statements of its financial condition for 2002 to present.

21. General Disclaimer. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 19, THE ePlus PATENTS ARE LICENSED "AS IS" WITHOUT WARRANTY OF ANY KIND, AND EACH PARTY HEREBY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS, IMPLIED, AND STATUTORY, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.

22. Additional Disclaimers. Without limiting the generality of Section 19, ePlus makes no express or implied warranty (a) as to the validity, enforceability or scope of any ePlus Patent, or (b) that any product or service made, used, sold, offered for sale or imported or otherwise transferred under any license granted under this Agreement is or will be free from infringement of rights of third parties.

23. Omitted.

### H. MISCELLANEOUS

24. Each Party is to bear its own costs and attorneys fees as it relates to the Litigation.

25. Court's Continuing Jurisdiction. The Parties agree that the Court shall retain continuing jurisdiction over the enforcement of this Agreement. In the event any dispute arises over the terms of this Agreement, the dispute will be heard in the United States District Court for the Eastern District of Virginia (Norfolk Division).

26. Choice of Law. The form, execution, validity, construction and effect of this Agreement shall be determined in accordance with the laws of the State of Delaware.

27. Notices. Any notices that are required or permitted hereunder shall be sent as follows and are deemed effective upon receipt:

CONFIDENTIAL

ePLUS0940770

PX0317, Page 6 of 12

Confidential

To Perfect:

Perfect Commerce, LLC
One Compass Way, Suite 120
Newport News, VA 23606
Attention: Legal Department

With a Copy to:

Kenneth W. Brothers
Dickstein Shapiro LLP
1825 Eye St. NW
Washington DC 20006
Fax 202-420-2201

To ePlus:

ePlus inc.
13595 Dulles Technology Drive
Herndon, VA 20171-3413
Attention: Erica S. Stoecker, General Counsel
Fax: (703) 984-8720

With a copy to:

Scott L. Robertson
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001
Fax. 202.346.4444

28. Non-Waiver. The waiver of any breach of any provision of this Agreement shall not be deemed to be a waiver of any other breach of the same or any other provision of this Agreement.

29. Non-Agency. Nothing contained in this Agreement or the performance thereof is intended to or shall be construed to create any relationship or agency, partnership or joint venture between or among the Parties.

30. Enforcing ePlus Patents. Nothing in this Agreement shall be construed as an agreement by ePlus to bring actions or suits against third parties for infringement of the ePlus Patents, or conferring any right to Perfect or its Affiliates to bring actions or suits against third parties for infringement of the ePlus Patents.

7

LIBW/1717097.1

CONFIDENTIAL

ePLUS0940771

PX0317, Page 7 of 12

Confidential

31. <u>Assignment</u>. Except as provided in Section 15, Perfect may not assign this Agreement without the prior written consent of ePlus, which ePlus may grant or deny in its sole discretion. Any attempted or purported assignment or delegation by Perfect in violation of this Section shall be null and void. Nothing in this provision shall restrict or prevent ePlus from transferring, assigning or licensing any of the ePlus Patents without prior written notice or consent of Perfect, but subject to the rights and licenses granted hereunder.

32. <u>Confidentiality.</u> From and after the Effective Date, neither Party shall disclose the terms of this Agreement without the prior written consent of the other Party, except that a Party may make any of the following disclosures without prior written consent of the other Party: (a) to any governmental or regulatory body having jurisdiction and/or regulatory obligations specifically requiring such disclosure; (b) in response to a valid subpoena or as otherwise may be required by law; (c) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports filed with the Securities and Exchange Commission, or any other filings, reports or disclosures that may be deemed necessary under applicable laws or regulations, provided that before such disclosure the Party making the disclosure shall use its best efforts to redact portions of this Agreement to the extent permitted by applicable law and regulations; (d) to a Party's accountants, legal counsel, tax advisors and other financial and legal advisors, subject to obligations of confidentiality and/or privilege; and (e) in confidence, in connection with a proposed merger, acquisition or similar transaction.

33. <u>Governing Law</u>. This Agreement will be governed by and construed in accordance with the internal laws of the state of Delaware.

34. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes all promises or understandings made prior to or contemporaneously herewith with respect to such subject matter.

35. <u>Severability</u>. In the event that any provision of this Agreement is deemed invalid, unenforceable or void by a final, non-appealable judgment of a court of competent jurisdiction in a proceeding initiated by a third party, the remainder of this Agreement shall be interpreted to the extent possible to effect the overall intention of the Parties of the Effective Date.

36. <u>Multiple Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

37. <u>Modification</u>. This Agreement may not be amended, modified or altered in any way, except in a writing identified as such and signed by all Parties hereto.

8

LIBW/1717097.1



CONFIDENTIAL

ePLUS0940772

PX0317, Page 8 of 12

Confidential

38. <u>Cumulation</u>. All rights and remedies enumerated in this Agreement will be cumulative and none will exclude any other right or remedy permitted herein or by law.

39. <u>Representation by Counsel</u>. Each of the Parties acknowledges that it has been represented by counsel in connection with the negotiation, drafting and execution of this Agreement. The language used in this Agreement shall be deemed to be language chosen by all Parties to express their mutual intent, and no strict rule of construction against any Party shall be applied to any term or provision hereof.

40. <u>Captions</u>. The captions to the sections or subsections of this Agreement are solely for the convenience of the Parties, are not a part of this Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Agreement or any provision hereof.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed through its duly authorized representative below.

ePlus inc.

By: [signature]

Printed Name: Elaine D. Marion

Title: Chief Financial Officer


Perfect Commerce, LLC

By: [signature]

Printed Name: GEORGE HAMPTON WALL JR.

Title: President & CEO

9

LIBW/1717097.1

CONFIDENTIAL ePLUS0940773

PX0317, Page 9 of 12

Confidential

## EXHIBIT B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| ePLUS iNC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PERFECT COMMERCE, INC., )<br>SCIQUEST, INC., LAWSON SOFTWARE, )<br>INC., and SCIQUEST, INC., )<br>)<br>)<br>Defendants. ) | Civil Action No. 2:09cv232 |

### STIPULATION AND ORDER OF DISMISSAL
### BETWEEN PLAINTIFF ePLUS iNC. AND
### DEFENDANT PERFECT COMMERCE, LLC

Plaintiff ePlus inc. and Defendant Perfect Commerce, LLC, by and through their undersigned counsel and pursuant to a settlement agreement reached between them, do hereby stipulate and agree to a dismissal of the claims of this action as between them (and their claims, counterclaims, third-party claims and/or any cross claims) without prejudice, and with each side to bear its own costs except as the settlement agreement between them otherwise provides. This dismissal pertains only to such claims between Plaintiff ePlus inc. and Defendant Perfect Commerce, LLC and not as to any other defendant in this action. Defendant Lawson Software, Inc. consents to this Stipulation of Dismissal.

LIBW/1717097.1

CONFIDENTIAL

ePLUS0940774

PX0317, Page 10 of 12

Confidential

Dated: August \_\_\_\_\_, 2009                Respectfully submitted,

By: _____        By: _____
   Gregory N. Stillman (VSB No. 14308)        Stephen E. Noona (VSB No. 25367)
   Hunton & Williams, LLP                      Kaufman & Canoles, P.C.
   500 East Main Street, Suite 1000            150 West Main Street, Suite 2100
   Norfolk, VA 23510                           Norfolk, VA 23510
   Telephone: (757) 640-5300                   Telephone: (757) 624-3000
   Facsimile: (757) 625-7720                   Facsimile (757) 624-3169
   Email: gstillman@hunton.com                 Email: senoona@kaufcan.com
   Email: bvannorman@hunton.com

Counsel for Defendants Perfect Commerce, LLC and Lawson Software, Inc.

Scott L. Robertson
Jennifer A. Albert
Goodwin Procter, LLP
901 New York Ave., N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
Email: srobertson@goodwinprocter.com
Email: jalbert@goodwinprocter.com

Counsel for Plaintiff ePlus inc.

2

LIBW/1717097.1

Confidential

## EXHIBIT A

**License Fee Payment**: Seven hundred thousand and fifty thousand dollars ($750,000.00) payable in full on or before October 2, 2009.

3

LIBW/1717097.1



CONFIDENTIAL

ePLUS0940776

PX0317, Page 12 of 12