# PX-319

**PX-0319**

## SETTLEMENT AND LICENSE AGREEMENT

THIS SETTLEMENT AND LICENSE AGREEMENT (this "Agreement") is made and entered into this 19th day of August, 2009 (the "Effective Date") between *e*Plus, Inc. ("*e*Plus"), on the one hand, and SciQuest, Inc. ("SciQuest"), on the other hand (referred to collectively herein as the "Parties" or in the singular as "Party").

SciQuest is a Delaware corporation having its principal place of business at 6501 Weston Parkway, Suite 200, Cary, North Carolina 27513. *e*Plus is a Delaware corporation having its principal place of business at 13595 Dulles Technology Drive, Herndon, VA 20171. As used herein, "SciQuest" and "*e*Plus" shall each include the Parties' respective officers, directors, stockholders, agents, and employees.

WHEREAS, certain disputes have arisen between the Parties including, without limitation, the claims asserted by *e*Plus in the case captioned *ePlus, Inc. v. Perfect Commerce, Inc., SciQuest, Inc., Lawson Software, Inc. and Verian Technologies, Inc.*, Civil Action No. 2:09cv232, now pending in the United States District Court for the Eastern District of Virginia (Norfolk Division) (hereinafter referred to as "the Action");

WHEREAS, the Parties wish to terminate the Action by agreeing to a settlement of all claims, defenses, and counterclaims asserted or which could have been asserted in the Action; and

NOW, THEREFORE, in consideration of the promises, mutual covenants and agreements herein contained and other good and valuable consideration, the receipt, validity, and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

### A.   DEFINITIONS

1.      "*e*Plus Patents" means U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent"), 6,505,172 (the "'172 Patent") and 7,526,494 (the "'494 Patent"), as well as any and all patents existing or subsequently issuing from applications from which the listed patents claim priority or issuing from continuations, divisionals, continuations in part, reexaminations, reissues, extensions, and renewals of the listed patents.

2.      "Change in Control" of a Party means (a) the consummation of the sale, transfer or other disposition of all or substantially all of the Party's assets (an "Asset Acquisition") or (b) the acquisition by another entity, person or group of affiliated persons of the Party's securities, whether by merger, consolidation, tender offer, purchase or otherwise and whether in one transaction or a series of related transactions (a "Stock Acquisition"), if, after such Stock Acquisition, the acquiring entity, person or group of persons would hold at least a majority of the outstanding voting stock of the Party (or the

CONFIDENTIAL

ePLUS0940802

surviving entity). Notwithstanding the foregoing a "Change in Control" shall not include a transaction if its sole purpose is to change the state of a Party's incorporation or to create a holding company that will be owned in substantially the same proportions by the persons who held the Party's securities immediately prior to such transaction. "Change in Control" includes any Change in Control as a result of a bankruptcy proceeding against SciQuest.

3.      The term "Subsidiary" means any corporation, firm or entity of which any Party owns, directly or indirectly, of 50 percent or more of the shares of stock entitled to vote for the election of directors in the case of a corporation, or 50 percent or more of the equity interest in the case of any other type of entity. This definition shall in no way include Lawson Software, Inc., Perfect Commerce, LLC, or their successors, assigns or subsidiaries.

4.      "eProcurement" shall mean any system, including software, hardware and/or network architecture, that is capable of facilitating the creation of procurement catalogs of items, performing a search for data regarding a catalog item or items each associated with a source, creating a requisition for the item(s), and, when desired, generating one or more purchase orders for the item(s).

### B.      LICENSE FEE PAYMENTS

5.      In consideration for the grant from ePlus to SciQuest of the executory license set forth below, SciQuest shall pay to ePlus a total amount as set forth in Exhibit A.

6.      Absent written notice delivered by ePlus at least three (3) business days in advance or otherwise agreed in writing by the Parties, payments hereunder shall be made to ePlus by wire transfer to:

> Wachovia Bank, NA
> Philadelphia, PA
> ABA No.: 031-201-467
> Acct. No.: 2014 15939 6522

7.      All payments made under this Section B are non-refundable.

### C.      DISMISSAL WITH PREJUDICE

8.      Contemporaneous with the execution of this Agreement, the attorneys of record for the Parties will jointly submit to the Court a Proposed Stipulation and Order of Dismissal with Prejudice in the form attached hereto as Exhibit B.

2

CONFIDENTIAL

ePLUS0940803

## D.   MUTUAL RELEASES

9.   *e*Plus Releases. *e*Plus, on behalf of itself and its Subsidiaries and their respective successors and assigns, irrevocably releases, acquits and forever discharges SciQuest and its Subsidiaries and their respective officers, directors, employees, agents, predecessors, successors, assigns, representatives and attorneys (the "SciQuest Releasees") from any and all claims or liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to actions taken before the Effective Date by the SciQuest Releasees in connection with the Action or the *e*Plus Patents; provided, however, that nothing contained within this release shall be deemed to release SciQuest from any of its duties or obligations set forth under this Agreement.

10.   SciQuest Releases. SciQuest , on behalf of itself and its Subsidiaries and their respective successors and assigns, irrevocably releases, acquits and forever discharges *e*Plus and its Subsidiaries and their respective officers, directors, employees, agents, predecessors, successors, assigns, representatives and attorneys (the "*e*Plus Releasees"), from any and all claims or liabilities of any kind or nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to actions taken before the Effective Date by *e*Plus Releasees in connection with the Action; provided, however, that nothing contained within this release shall be deemed to release *e*Plus from any of its duties or obligations set forth under this Agreement.

11.   General Releases. The releases by *e*Plus and SciQuest in this Agreement include an express, informed, knowing and voluntary waiver and relinquishment to the fullest extent permitted by law. In this connection, the Parties acknowledge that they may have sustained damages, losses, costs or expenses which are presently unknown and unsuspected and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. The Parties hereto further acknowledge that they have negotiated this Agreement taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs and expenses arising from or relating to the Action, the *e*Plus Patents and the relationship between the Parties, and the Parties hereto voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on general releases.

## E.   LITIGATIONS AND REEXAMINATIONS

12.   Reexamination of *e*Plus Patents. SciQuest agrees that neither it nor any of its Subsidiaries, representatives or agents shall directly or indirectly file, induce or encourage the filing of a request for reexamination of any of the *e*Plus Patents with the U.S. Patent and Trademark Office or aid, assist or participate in any reexamination or other Patent Office proceeding involving any of the *e*Plus Patents.

3

CONFIDENTIAL

ePLUS0940804

13.     Litigation Against *ePlus* Patents. Neither SciQuest, nor any of its Subsidiaries, representatives or agents will initiate, induce, encourage, voluntarily join, participate, or finance, either directly or indirectly, any litigation or other claim or court proceeding against *ePlus*, or any successor or assign of *ePlus*, arising from, pertaining to, or related to the validity or enforceability of any claim of any of the *ePlus* Patents, except as required by court order.

F.     **LICENSES OF INTELLECTUAL PROPERTY**

14.     Subject to the terms and conditions set forth herein, and in exchange for SciQuest's promise to pay the license fee set forth in Paragraph 5 above, *ePlus* grants to SciQuest a personal, non-exclusive, non-transferable, non-sublicensable, non-assignable, fully paid-up, worldwide license to make, import, sell and offer for sale any products and services that are covered by one or more claims of the *ePlus* Patents, where each patent license granted under this paragraph shall terminate at the expiration of the patent covered by such license. All such products which are imported, distributed, sold, offered for sale or utilized in any manner and which are covered by one or more claims of any *ePlus* Patent will be marked pursuant to 35 U.S.C. §287 in a form mutually agreed to by the Parties. In no event does the license granted hereunder extend to Lawson Software, Inc or Perfect Commerce, LLC or their successors, assigns or Subsidiaries.

15.     The patent license granted in this Section does not extend to any entities that consummate an Asset Acquisition or a Stock Acquisition with SciQuest that results in a Change in Control of SciQuest after the Effective Date without the prior written consent of *ePlus*, which *ePlus* may grant or deny in its sole discretion. Notwithstanding the foregoing, the patent license granted in this Section does extend: (1) to entities that SciQuest acquires in an Asset Acquisition or a Stock Acquisition where such acquisition does not result in a Change in Control of SciQuest and (2) to entities that engage in an Asset Acquisition or Stock Acquisition with SciQuest that results in a Change in Control of SciQuest (and to any combined entity resulting from such Change in Control), but in each such case only with respect to SciQuest's existing licensed products and services on the date of such transaction, as well as to future modifications and generations of these licensed products and services reflecting the evolution of such licensed products and services in the ordinary course of business and not to the products or services of the acquired or acquiring entity. This Section does not release any acquired or acquiring entity from any claim that *ePlus* may have that the products and/or services of the acquired or acquiring entity may infringe one or more claims of the *ePlus* Patents.

16.     The patent license granted in this Section of this Agreement is executory in nature within the meaning of 11 U.S.C. § 365(n).

17.     Except as specifically set forth in this Section, this Agreement does not grant either Party any license to, or otherwise transfer any rights in, any intellectual property of either Party.

4

CONFIDENTIAL

ePLUS0940805

18.     Any failure by SciQuest to make the payments called for in Section B (uncured within 24 hours after notice) shall result in the automatic termination of the patent license granted by ePlus to SciQuest under this Section.

19.     In the event SciQuest becomes a debtor in a bankruptcy proceeding, SciQuest agrees that, within seven (7) calendar days of the commencement of the bankruptcy proceeding, it will file an expedited motion in the bankruptcy court seeking authorization to either assume or reject the executory patent license granted by ePlus.  A failure to file and prosecute such a motion, or thereafter to have failed to assume or reject the executory patent license within twenty-five (25) calendar days after the commencement of the bankruptcy proceeding, will result in the immediate and automatic termination of the executory patent license without the need for any action by ePlus.  In connection with any assumption, SciQuest shall be required to cure all defaults and otherwise shall satisfy the preconditions to assumption described in 11 U.S.C. §365.

20.     If SciQuest, or a trustee acting on SciQuest's behalf in a bankruptcy proceeding, should prosecute against ePlus an action to avoid and recover any portion of the payments paid to ePlus in Paragraph 5 above then, upon entry of an order directing ePlus to make any such payment, ePlus shall have the right, but not the obligation, to rescind the entirety of this Agreement, including the grant to SciQuest of the executory patent license.

21.     Covenant Not to Sue.  Each Party (the "Covenantor") covenants not to sue the other Party, or any of the other Party's  Subsidiaries, customers, resellers and transactional end users of the other Party's eProcurement products and/or services (the "Covenantee") at any time for any claim that the Covenantee's manufacture, use, sale, offer for sale, lease, importation, distribution or other transfer of eProcurement products or services constitutes direct infringement, indirect infringement, contributory infringement or inducement of infringement of any eProcurement patents now owned or hereafter acquired or obtained by the Covenantor. Each Covenantor further covenants and agrees to indemnify and hold each Covenantee harmless from any and all costs, attorneys' fees, damages, or other fees it incurs or that are assessed in the event of an actual or threatened patent infringement suit or claim made by Covenantor against a Covenantee alleging that the manufacture, use, sale, offer for sale, lease, importation, distribution or other transfer by the Covenantee of any eProcurement product or service constitutes direct, indirect, contributory or inducement of infringement of any patent now owned or hereafter acquired or obtained by the Covenantor.   In the event of an Asset Acquisition or a Stock Acquisition involving SciQuest, whether it results in a Change of Control or not, this covenant shall extend to the other parties engaged in such Asset Acquisition or Stock Acquisition but only with respect to SciQuest's existing licensed products and services on the date of such transaction, as well as to future modifications and generations of these licensed products and services reflecting the evolution of such licensed products and services in the ordinary course of business and not to the products and services of the acquired or acquiring entity.  In no event does the covenant granted hereunder extend to Lawson Software, Inc. or Perfect Commerce, LLC or their successors, assigns or Subsidiaries.

5

CONFIDENTIAL

ePLUS0940806

G.     **REPRESENTATIONS AND WARRANTIES.**

22.     Mutual Representatives and Warranties. Each Party represents and warrants, solely to and for the benefit of the other Party, that:

(a) it has the full right, power and authority to enter into this Agreement and perform its obligations hereunder and, in the case of *ePlus*, to grant the license set forth in Section 14 above;

(b) its performance of this Agreement shall not conflict with or result in a breach or violation of any of the terms or provisions or constitute a default under any other agreement by which it is bound or to which its assets are subject; and

(c) when executed and delivered, this Agreement shall constitute a legal, valid and binding obligation enforceable against it in accordance with its terms.

23.     Representations and Warranties of SciQuest. SciQuest represents and warrants that it is not currently in discussions with any third party concerning the sale or transfer of all or substantially all of its assets or a merger, consolidation or other similar transaction pursuant to which a Change in Control of SciQuest would be effectuated.

24.     General Disclaimer. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 22, THE *ePlus* PATENTS ARE LICENSED "AS IS" WITHOUT WARRANTY OF ANY KIND, AND EACH PARTY HEREBY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS, IMPLIED, AND STATUTORY, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.

25.     Additional Disclaimers. Without limiting the generality of Section 22, *ePlus* makes no express or implied warranty (a) as to the validity, enforceability or scope of any *ePlus* Patent, or (b) that any product or service made, used, sold, offered for sale or imported or otherwise transferred under any licensed granted under this Agreement is or will be free from infringement of rights of third parties.

26.     Validity and Enforceability. SciQuest admits and agrees that the ePlus Patents are valid and enforceable.

H.     **MISCELLANEOUS**

27.     Each Party is to bear its own costs and attorneys fees as it relates to the Litigation.

28.     Court's Continuing Jurisdiction. The Parties agree that the Court shall retain continuing jurisdiction over the enforcement of this Agreement. In the event any

6

CONFIDENTIAL

ePLUS0940807

dispute arises over the terms of this Agreement, the dispute will be heard in the United States District Court for the Eastern District of Virginia (Norfolk Division).

29.   RESERVED

30.   Notices. Any notices that are required or permitted hereunder shall be sent as follows and are deemed effective upon receipt:

To SciQuest:

SciQuest, Inc.
6501 Weston Parkway
Suite 200
Cary, NC  27513
Attention: Stephen Wiehe
Fax:  (919) 659-6366

With a Copy to:


Morgan, Lewis & Bockius LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2121
Fax: (650) 843-4001
Attention:  Andrew J. Gray IV

and

Morris, Manning & Martin, LLP
3343 Peachtree Road, NE
Suite 1600
Atlanta, GA  30326
Attention: Grant W. Collingsworth, Esq.
Fax:  (404) 365-9532



To ePlus:

ePlus Inc.
13595 Dulles Technology Drive
Herndon, VA 20171-3413
Attention:  Erica S. Stoecker, General Counsel
Fax: (703) 984-8720

7

CONFIDENTIAL

ePLUS0940808

With a copy to:

Scott L. Robertson
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001
Fax: (202)346-4444

31.     Non-Waiver.  The waiver of any breach of any provision of this
Agreement shall not be deemed to be a waiver of any other breach of the same or any
other provision of this Agreement.

32.     Non-Agency.  Nothing contained in this Agreement or the performance
thereof is intended to or shall be construed to create any relationship or agency,
partnership or joint venture between or among the Parties.

33.     Enforcing *ePlus* Patents.  Nothing in this Agreement shall be construed as
an agreement by *ePlus* to bring actions or suits against third parties for infringement of
the *ePlus* Patents, or conferring any right to SciQuest or its Subsidiaries to bring actions
or suits against third parties for infringement of the *ePlus* Patents.

34.     Assignment.  SciQuest may not assign this Agreement without the prior
written consent of *ePlus*, which *ePlus* may grant or deny in its sole discretion.  Any
attempted or purported assignment or delegation by SciQuest in violation of this Section
shall be null and void.  Nothing in this provision shall restrict or prevent *ePlus* from
transferring, assigning or licensing any of the *ePlus* Patents without prior written notice
or consent of SciQuest, but subject to the rights and licenses granted hereunder.

35.     Confidentiality.  From and after the Effective Date, neither Party shall
disclose the terms of this Agreement without the prior written consent of the other Party,
except that a Party may make any of the following disclosures without prior written
consent of the other Party: (a) to any governmental or regulatory body having jurisdiction
and/or regulatory obligations specifically requiring such disclosure; (b) in response to a
valid subpoena or as otherwise may be required by law; (c) for the purposes of disclosure
in connection with the Securities Exchange Act of 1934, as amended, the Securities Act
of 1933, as amended, and any other reports filed with the Securities and Exchange
Commission, or any other filings, reports or disclosures that may be deemed necessary
under applicable laws or regulations, provided that before such disclosure the Party
making the disclosure shall use its best efforts to redact portions of this Agreement to the
extent permitted by applicable law and regulations; (d) to a Party's accountants, legal
counsel, tax advisors and other financial and legal advisors, subject to obligations of
confidentiality and/or privilege; and (e) in confidence, in connection with a proposed
merger, acquisition or similar transaction.

8

ePLUS0940809

36.     Governing Law. This Agreement will be governed by and construed in accordance with the internal laws of the state of Delaware.

37.     Entire Agreement. This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes all promises or understandings made prior to or contemporaneously herewith with respect to such subject matter.

38.     Severability. In the event that any provision of this Agreement is deemed invalid, unenforceable or void by a final, non-appealable judgment of a court of competent jurisdiction in a proceeding initiated by a third party, the remainder of this Agreement shall be interpreted to the extent possible to effect the overall intention of the Parties of the Effective Date.

39.     Multiple Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

40.     Modification. This Agreement may not be amended, modified or altered in any way, except in a writing identified as such and signed by all Parties hereto.

41.     Cumulation. All rights and remedies enumerated in this Agreement will be cumulative and none will exclude any other right or remedy permitted herein or by law.

42.     Representation by Counsel. Each of the Parties acknowledges that it has been represented by counsel in connection with the negotiation, drafting and execution of this Agreement. The language used in this Agreement shall be deemed to be language chosen by all Parties to express their mutual intent, and no strict rule of construction against any Party shall be applied to any term or provision hereof.

43.     Captions. The captions to the sections or subsections of this Agreement are solely for the convenience of the Parties, are not a part of this Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Agreement or any provision hereof.

9

CONFIDENTIAL

ePLUS0940810

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed through its duly authorized representative below.

ePlus inc.

By

Printed Name: Elaine D. Marion

Title: Chief Financial Officer


SeiQuest, Inc.

By

Printed Name: Jennifer Kaelin

Title: Chief Financial Officer

10

ePLUS0940811

## EXHIBIT A

**License Fee Payment**:  Two million and four hundred thousand dollars ($2,400,000.00) payable within two days after the Effective Date of this Settlement and License Agreement.

3

CONFIDENTIAL

ePLUS0940812

PX0319, Page 11 of 13

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| ePLUS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:09cv232 |
| v. | ) | |
| | ) | |
| PERFECT COMMERCE, INC., | ) | |
| SCIQUEST, INC., LAWSON SOFTWARE, | ) | |
| INC., and SCIQUEST, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE**
**BETWEEN PLAINTIFF ePLUS, INC. AND**
**DEFENDANT SCIQUEST, INC.**

Plaintiff ePlus, Inc. and Defendant SciQuest, Inc., by and through their undersigned counsel and pursuant to a settlement agreement reached between them, do hereby stipulate and agree to a dismissal of the claims of this action as between them (and their claims, counterclaims, third-party claims and/or any cross claims) with prejudice and on the merits, and with each side to bear its own costs except as the settlement agreement between them otherwise provides. This dismissal pertains only to such claims between Plaintiff ePlus, Inc. and Defendant SciQuest, Inc. and not as to any other defendant in this action.

CONFIDENTIAL

ePLUS0940813

Dated: August _____, 2009

By: _____
    Gregory N. Stillman (VSB No. 14308)
    Hunton & Williams LLP
    500 East Main Street
    Suite 1000
    Norfolk, VA 23510
    Telephone: (757) 640-5300
    Facsimile: (757) 625-7720
    email: gstillman@hunton.com

    Scott L. Robertson
    Jennifer A. Albert
    GOODWIN PROCTER LLP
    901 New York Avenue, N.W.
    Washington, DC 20001
    Telephone: (202) 346-4000
    Facsimile: (202) 346-4444

    Counsel for Plaintiff
    ePlus inc.

Respectfully submitted,

By: _____
    Daniel Johnson, Jr.
    Rita E. Tautkus
    Morgan, Lewis & Bockius LLP
    One Market, Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001
    email: djjohnson@morganlewis.com

By: _____
    Stephen E. Noona (VSB No. 25367)
    Kaufman & Canoles, P.C.
    150 West Main Street, Suite 2100
    Norfolk, VA 23510
    Telephone: (757) 624-3000
    Facsimile: (757) 624-3169
    email: senoona@kaufcan.com

    Counsel for Defendant
    SciQuest, Inc.

2

CONFIDENTIAL

ePLUS0940814

PX0319, Page 13 of 13