# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF *e*PLUS INC.'S OPPOSITION TO
## DEFENDANT LAWSON SOFTWARE, INC.'S MOTION FOR NEW TRIAL

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Counsel for Plaintiff, ePlus Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD ............................................................................................1

III.  ARGUMENT .........................................................................................................2

      A.   The Court's Exclusion Of Undisclosed Obviousness Expert Opinions
           Concerning J-CON and P.O. Writer Was Correct, Did Not Prejudice
           Defendant, And Is Not Grounds For A New Trial...........................................2

           1.   The Court Correctly Excluded Dr. Shamos's Testimony
                Concerning The Alleged Obviousness Combination Of J-CON
                And P.O. Writer .................................................................................. 4

           2.   The Timing Of The Court's Ruling Was A Consequence Of
                Defendant's Decision To Withhold Dr. Shamos's Surprise
                Opinions Until Trial............................................................................ 8

           3.   ePlus, Not Defendant, Was Prejudiced By Defendant's Decision
                To Introduce Misleading Evidence Concerning J-CON And P.O.
                Writer................................................................................................ 12

      B.   Defendant's Arguments Concerning The Patent Office's Consideration Of
           The '989 Patent Are Not Grounds For A New Trial .....................................14

      C.   The Court's Rulings Excluding The Reexaminations Are Not Grounds For
           A New Trial ....................................................................................................18

      D.   The Court's Ruling Admitting License Agreements To The Patents-In-Suit
           Is Not Grounds For A New Trial ....................................................................19

      E.   There Was No Testimony Concerning Defendant's Opinion Of Counsel
           At Trial............................................................................................................23

      F.   The Global-Tech Decision Provides No Basis For A New Trial.....................26

      G.   The Cumulative Error Doctrine Is Inapplicable And Irrelevant .....................29

IV.   CONCLUSION....................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anthony v. Ward*,
   336 Fed. Appx. 311 (4th Cir. 2009)......................................................................... 29

*Bennett v. R&L Carriers Shared Servs., LLC*,
   744 F. Supp.2d 494 (E.D. Va. 2010) ................................................................... 2, 20

*Brinkley-Obu v. Hughes Training, Inc.*,
   36 F.3d 336 (4th Cir. 1994) ................................................................................... 2, 4

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ............................................................................ 25, 29

*Cline v. Wal-Mart Stores, Inc.*,
   144 F.3d 294 (4th Cir. 1998) ................................................................................ 1, 20

*Dennis v. Gen. Elec. Corp.*,
   762 F.2d 365 (4th Cir. 1985) ...................................................................................... 6

*Edwards v. Steinns*,
   207 F.2d 734 (4th Cir. 1953) .................................................................................... 26

*Gemtron Corp. v. Saint-Gobain Corp.*,
   572 F.3d 1371 (Fed. Cir. 2009) .................................................................................. 1

*Global-Tech Appliances, Inc. v. SEB, S.A.*,
   536 U.S. ___, 131 S. Ct. 2060 (May 31, 2011) .......................................... 26, 27, 28

*Hinkle v. City of Clarksburg*,
   81 F.3d 416 (4th Cir. 1996) ...................................................................................... 24

*In re GPAC Inc.*,
   57 F.3d 1573 (Fed. Cir. 1995) ............................................................................ 22, 23

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008) .............................................................................. 4, 7

*Jarrell v. Ford Motor Co.*,
   327 F.2d 233 (4th Cir. 1964) .................................................................................... 25

*Johnson v. Evatt*,
   1993 WL 177800 (4th Cir. May 26, 1993) .............................................................. 27

*Jones v. Ford Motor Co.*,
   204 Fed. Appx. 280 (4th Cir. 2006) ..................................................................... 2, 20

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech*, LLC,
   381 F.3d 1142 (Fed. Cir. 2004) .................................................................................. 7

*Kozlowski v. Hampton School Board*,
   2003 WL 22273073 (4th Cir. Oct. 3, 2003) ....................................................... 29, 30

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007)........................................................................................ 4, 6

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) ............................................................................ 22

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
   476 F. Supp.2d 1143 (N.D. Cal. 2007) .................................................................. 29

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ............................................................................ 7

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
   635 F.3d 539 (Fed. Cir. 2011) ............................................................................ 6

*Pounds v. Board of Trustees*,
   2000 WL 655936 (4th Cir. May 12, 2000) ............................................................ 25

*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000) ............................................................................ 22

*Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*,
   584 F. Supp.2d 832 (E.D. Va. 2008) .................................................................... 20

*Stratoflex, Inc. v. Aeroquip Corp.*,
   713 F.2d 1530 (Fed. Cir. 1983) ........................................................................ 22, 23

*Taylor v. Virginia Union Univ.*,
   193 F.3d 219 (4th Cir. 1999) ............................................................................ 2

*The John Hopkins Univ. v. Cellpro, Inc.*,
   152 F.3d 1342 (Fed. Cir. 1998) .......................................................................... 6

*The Upjohn Co. v. Mova Pharm. Corp.*,
   225 F.3d 1306 (Fed. Cir. 2000) .......................................................................... 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
   640 F. Supp.2d 150 (D.R.I. 2009) ...................................................................... 20

*United States v. Basham*,
   561 F.3d 302 (4th Cir. 2009) .......................................................................... 29, 30

*United States v. Francisco*,
   35 F.3d 116 (4th Cir. 1994) ............................................................................ 24

*United States v. Hunt*,
   749 F.2d 1078 (4th Cir. 1984) .......................................................................... 26

**Rules**

Fed. R. Civ. P. 26 .................................................................................................. 4, 8

Fed. R. Civ. P. 37 .................................................................................................. 4

Fed. R. Civ. P. 61 .................................................................................................. 2

## I.      INTRODUCTION

Defendant asks the Court to set aside a jury verdict and order a new trial because of a few allegedly erroneous evidentiary rulings and a single jury instruction on induced infringement. Defendant suggests that these rulings and the instruction are grounds for undoing a complex, admittedly expensive three-week patent infringement trial.  Defendant's motion should be denied because it does not even come close to meeting the standard for a new trial.

First, each evidentiary ruling and the jury instruction that Defendant complains about were correctly decided by the Court.  Second, even if the Court erred in excluding or admitting certain evidence or in its instruction on induced infringement — which it did not — Defendant has not shown that it was prejudiced by any of these rulings.  Indeed, several of the rulings Defendant now challenges prejudiced *e*Plus, not Defendant.  Third, Defendant cannot prevail on a motion for a new trial when its substantial rights have not been affected.  Indeed, in deciding this motion, the Court must disregard all errors and defects that do not affect Defendant's substantial rights, unless (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice.

## II.     LEGAL STANDARD

The decision to grant or deny a motion for a new trial in a patent infringement action is governed by regional circuit law.  *See, e.g., Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1379 (Fed. Cir. 2009).  Under Fourth Circuit law, a new trial may be granted only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

Rulings concerning the admissibility of evidence are generally not appropriate grounds

for a new trial because "[i]n ruling on the admissibility or exclusion of evidence, the district court has broad latitude." *Jones v. Ford Motor Co.*, 204 Fed. Appx. 280, 282 (4th Cir. 2006) (citations omitted). As this Court has held, "no error in admitting or excluding evidence is ground for granting a new trial unless the error affect[s] a [] party's substantial rights." *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp.2d 494, 539 (E.D. Va. 2010) (quoting FED. R. CIV. P. 61). "Thus, it is only errors that cause substantial harm to the moving party that justify a new trial, and errors that are not prejudicial do not necessitate a new trial." *Id.* Accordingly, "[u]nless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new trial…. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

In order to determine whether assumed evidentiary errors did not affect substantial rights, and therefore were harmless, the Court "need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors. This test appropriately focuses upon whether the error itself had substantial influence." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 234-235 (4th Cir. 1999) (*en banc*). Thus, even in instances where a district court may have erred, the Fourth Circuit has frequently concluded that the error was harmless and does not warrant a new trial. *See, e.g., Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 355-356 (4th Cir. 1994).

## III.   ARGUMENT

### A.   The Court's Exclusion Of Undisclosed Obviousness Expert Opinions Concerning J-CON and P.O. Writer Was Correct, Did Not Prejudice Defendant, And Is Not Grounds For A New Trial

Defendant argues that the Court's ruling precluding Dr. Shamos, Defendant's technical

2

expert, from testifying about the J-CON and P.O. Writer obviousness combination was error and that the timing of the ruling prejudiced Defendant. Defendant's argument is wrong on both counts.

First, the Court appropriately excluded testimony from Dr. Shamos about the combination of J-CON and P.O. Writer because Defendant failed to disclose in Dr. Shamos's expert report the detailed obviousness opinions it sought to elicit at trial. Dr. Shamos's expert report and claim chart contain only a solitary, conclusory paragraph regarding the combination of J-CON and P.O. Writer with no analysis whatsoever. The detailed claim-by-claim, element-by-element obviousness opinions that Dr. Shamos intended to offer at trial were never disclosed prior to trial.

Second, the mid-trial resolution of the Court's decision was entirely of Defendant's own making. Defendant never disclosed Dr. Shamos's detailed analysis of the J-CON and P.O. Writer combination during discovery. Instead, Defendant ambushed *e*Plus with this analysis on the eve of Dr. Shamos's testimony, forcing *e*Plus to seek relief from the Court. It was *e*Plus, not Defendant, that was prejudiced when it was forced to devote substantial resources in the middle of trial to address Dr. Shamos's new expert opinions.

Assuming *arguendo* that the Court's evidentiary ruling was error — and for all the reasons set forth herein it was not — the error was harmless. Pretrial rulings by the Court had already strictly circumscribed the purposes for which Defendant could introduce J-CON and P.O. Writer at trial. Accordingly, Lawson's counsel made virtually no mention of either prior art system in his opening statement, and Defendant even voluntarily dropped its contention that P.O. Writer anticipated the patents-in-suit prior to closing arguments. The Court's ruling excluding untimely disclosed expert obviousness opinions that were peripheral to Defendant's invalidity

3

allegations did not affect Defendant's substantial rights.  The fact is, Defendant's invalidity case

was strikingly infirm regardless of the Court's ruling.  Indeed, as the Court even remarked, "[i]f I

were deciding the case, I would find that there is no clear and convincing evidence to prove any

component of" Defendant's invalidity case.  Tr. 3007:1-10.  Thus, even if the Court's ruling

excluding Dr. Shamos's obviousness opinions-was error, the error was harmless and is not

grounds for a new trial.  *See Brinkley-Obu*, 36 F.3d at 355-356 (affirming district court's denial

of defendant's motion for new trial based on potentially erroneous admission of trial exhibits

where "overwhelming evidence" supported plaintiff's claim).

## 1. The Court Correctly Excluded Dr. Shamos's Testimony Concerning The Alleged Obviousness Combination Of J-CON And P.O. Writer

The Court's ruling excluding Dr. Shamos's testimony concerning the combination of J-

CON and P.O. Writer was a correct evidentiary ruling mandated by Rules 26 and 37 of the

Federal Rules of Civil Procedure, under *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) and

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008).

Rule 26(a)(2)(B)(i) requires an expert witness to prepare a written report that contains "a

complete statement of all opinions the witness will express and the basis and reasons for them."

Under Rule 26(e)(2) any "additions or changes to this information must be disclosed by the time

the party's pretrial disclosures under Rule 26(a)(3) are due."  And if a party fails to provide the

information "required by Rule 26(a) or 26(e), the party is not allowed to use that information . . .

at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The Court appropriately relied upon Rules 26 and 37 in precluding Dr. Shamos from

offering new opinions at trial regarding the J-CON and P.O. Writer obviousness combination

that Dr. Shamos had not disclosed in his expert report.  The Court first determined that Dr.

Shamos's only reference in his report to the J-CON and P.O. Writer combination was a single,

conclusory paragraph, reproduced below.  Tr. at 2346:1-2347:5.

> 236.  To the extent that J-CON and/or P.O. Writer are not deemed to anticipate any Asserted Claim, it is my opinion that such claim would have been obvious in view of the combination of J-CON with P.O. Writer.  The same reasons for making the previous two combinations apply to combining the J-CON system as described in the "J-CON Manual" with P.O. Writer Plus V. 10 as described in the P.O. Writer Plus Manual.  The P.O. Writer Plus V. 10 system provided the multi-vendor capability demanded by the industry at and before the time of the invention.  The J-CON system included features that one of ordinary skill in the art would have been motivated to use with the PO Writer system, including additional details about performing a cross-referencing of data relating to an item on a requisition to determine an alternative source for the same item and/or an acceptable substitute for the item initially selected.

The Court next rejected Defendant's contention that Dr. Shamos's *anticipation claim chart* — which was Exhibit 3 to his report — was somehow part of the conclusory *obviousness opinion* in paragraph 236.  As the Court explained:

> [I]f one goes back and looks at Exhibit 3 and reads through it carefully, one sees and it is admitted in the argument that *nowhere in the chart*, Exhibit 3, under Shamos opinions *does Dr. Shamos combine the J-CON and the P.O. Writer at all.  He just doesn't do it in the claim by claim analysis.  It doesn't say any combination.*

Tr. 2350:25-2351:6.[1]

Defendant now suggests that the Court's ruling was error because "a claim that is anticipated by prior art is also rendered obvious."  Brf. at 13.  According to Defendant, even though Dr. Shamos's claim chart was limited to anticipation opinions, "it was also sufficient to disclose his ... obviousness opinions."  *Id.* at 13-14.  As an initial matter, however, Defendant never objected to the Court's evidentiary ruling on this basis at trial, and its failure to timely object means that its request for a new trial must be denied.  *Dennis v. Gen. Elec. Corp.*, 762

---

[1] Excerpts of the trial transcript are attached as Exhibit 1.

F.2d 365, 367 (4th Cir. 1985) (affirming denial of motion for new trial where moving party "has failed to timely object to the alleged impropriety giving rise to the motion").  Moreover, none of the cases cited by Defendant in its motion even address the issue of whether an expert should be permitted to offer detailed opinions at trial that had not previously been disclosed in an expert report.[2]

The Court not only correctly precluded Dr. Shamos from offering new, undisclosed obviousness opinions at trial, it also appropriately excluded Dr. Shamos from offering at trial the single, conclusory opinion on the J-CON and P.O. Writer combination purportedly disclosed in his expert report.  In its ruling from the bench, the Court explained that the Supreme Court has specifically directed that parties must make "explicit" the analysis underlying an obviousness allegation – i.e., "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art."  KSR, 550 U.S. at 418; Tr. 2348:4-23.  Accordingly, "rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."  550 U.S. at 418 (citing In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006)).  Because Dr. Shamos's expert report contained only a conclusory statement with no reasoning whatsoever to support his obviousness opinion, the Court's ruling excluding that statement was correct.  See Tr. 2352:9-22 (noting that opinion "is inadequate" because it does not "articulate how and why a person of ordinary skill[] in the art would have found the claim … obvious in light of some combination of those particular references…. [and] it is not credible to

---

[2] See Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 547-548 (Fed. Cir. 2011); The John Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1356-57 (Fed. Cir. 1998).

think that a lay jury could examine that text and reach any conclusion on its own.").[3]

The Court's ruling excluding Dr. Shamos's testimony is fully consistent with the district court's ruling in *Innogenetics* excluding expert testimony on obviousness, a ruling upheld by the Federal Circuit. As the Federal Circuit explained:

> The district court did not err in finding that [Defendant's expert] report on the alleged obviousness of the asserted claims of the [patent-at-issue] was deficient for purposes of disclosure under Rule 26. For each of the claims that he analyzes for obviousness, [Defendant's expert] merely lists a number of prior art references and then concludes with the stock phrase "to one skilled in the art it would have been obvious to perform the genotyping method in claims 1-9 & 12-13 of the [patent-at-issue]." ***There must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. Nowhere does [Defendant's expert] state how or why a person ordinarily skilled in the art would have found the claims of the [patent-at-issue] obvious in light of some combination of those particular references.*** As the district court found: "***It is not credible to think that a lay jury could examine [the references] that defendant cited as prior art or any of the other references and determine on its own whether there were differences among them and the [patent-at-issue].*" *Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness.***

*Innogenetics*, 512 F.3d at 1373 (emphasis added) (internal quotations and citations omitted); Tr. 2348:24-2350:5 (relying upon *Innogenetics* in excluding Dr. Shamos's obviousness opinions); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech*, LLC, 381 F.3d 1142, 1152 n.4 (Fed. Cir. 2004) (reversing court that permitted jury to analyze prior art without expert testimony, reasoning that prior art warranted expert testimony).[4]

---

[3] The Court also noted that although Dr. Shamos "purports to incorporate [in paragraph 236] by reference … the reasons given for explaining [why] other patents [ ] would be obvious … you cannot see [in Dr. Shamos's report] how to make the combination analysis that is suggested by the incorporation by reference sentence. It just simply can't be done. So the incorporation by reference does not carry the day." Tr. 2351:11-22.

[4] *See also The Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000) (reversing judgment of obviousness noting that "there must be factual support for an expert's conclusory opinion"); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1325 (Fed. Cir. 2005) (affirming denial of JMOL on invalidity since Defendant expert's "conclusory evidence is

After determining that Dr. Shamos had not adequately disclosed his obviousness opinions, the Court analyzed whether, pursuant to Rule 37(c)(1), Defendant's failure to comply with the expert disclosure requirements of Rule 26 should be excused because the "failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1).  The Court determined that Defendant had proffered no explanation for its "failure to disclose what should have been disclosed," Tr. 2355:17-19, and that *e*Plus had been harmed and could not "cure the surprise" of Dr. Shamos's inadequate expert disclosure "by effective cross-examination." *Id.* at 2354:19-2355:1.  Accordingly, and appropriately, the Court excluded Dr. Shamos's opinions on the alleged obviousness combination of J-CON and P.O. Writer.

### 2. The Timing Of The Court's Ruling Was A Consequence Of Defendant's Decision To Withhold Dr. Shamos's Surprise Opinions Until Trial

Defendant argues that it was prejudiced by the mid-trial timing of the Court's ruling excluding Dr. Shamos's undisclosed testimony.  But Defendant does not acknowledge that the timing of the Court's ruling was a direct consequence of its decision to withhold Dr. Shamos's obviousness opinions from *e*Plus until the middle of trial.  Indeed, although Defendant's motion includes a five-page "Chronology of Events Regarding J-CON and P.O. Writer Invalidity Theory," Defendant omits from its chronology the very events that gave rise to the exclusionary ruling at issue here. *See* Brf. at 2-7.

As background, at the outset of trial it was the understanding of ***both parties*** that testimony and evidence concerning J-CON and P.O. Writer would be limited because of the Court's rulings excluding key exhibits and testimony.  For example, several of Dr. Shamos's opinions had not been disclosed in its Second Supplemental Statement of Invalidity Defenses,

---

hardly enough to meet [Defendant's] high burden of clear and convincing evidence with respect to anticipation and obviousness").

and on July 30, 2010, the Court struck all of those opinions.  Dkt. No. 382.  Because Defendant

had not properly disclosed its anticipation allegations with respect to J-CON, the effect of the

July 30, 2010 Order was to preclude it from offering testimony or evidence that J-CON

anticipates any asserted claims.  Similarly, the Court granted *e*Plus's motions to exclude

additional trial exhibits relating to J-CON and P.O. Writer on November 19, 2010.  Dkt. Nos.

515-516.  The effect of these orders was to exclude all of Defendant's anticipation theories with

respect to the P.O. Writer system except as they pertained to three asserted claims.

 Thus, at the outset of trial Defendant's invalidity case as it concerned P.O. Writer and J-

CON was limited to an allegation that P.O. Writer anticipated three asserted claims and that P.O.

Writer in combination with J-CON rendered obvious the asserted claims, ***but only for the limited***

***conclusory reason set forth in Dr. Shamos's expert report.***[5]  Because Defendant's invalidity

case concerning P.O. Writer and J-CON was severely circumscribed, Defendant's counsel paid

virtually no attention to these prior art references in his opening statement.  The following, in its

entirety, is the portion of Defendant's opening statement devoted to P.O. Writer and J-CON:

> Now, there's some other prior art which you'll hear about like the J-CON system
> and P.O. Writer.  We'll hear some testimony from people that know about that
> system.  I'm not going to spend much more time.  You'll have plenty of time to
> hear all the details about that, but there's other prior art that also shows why all 12
> of the claims in the patents here that are asserted by *e*Plus are invalid.

Tr. 195:18-24 (Lawson counsel); *see also* Ex. 10 (Defendant's Opening Statement

Demonstrative Slides) (containing only one slide that mentions J-CON or P.O. Writer).

 In light of the marginal importance of this prior art to its invalidity case, Defendant did

---

[5] As Defendant acknowledges, *e*Plus moved prior to trial to exclude Dr. Shamos's conclusory single-paragraph opinion on the J-CON and P.O. Writer combination in a motion to enforce prior Court orders.  Brf. at 5.  Because the Court denied *e*Plus's pretrial motion, the parties understood that Dr. Shamos could offer an opinion on the J-CON and P.O. Writer combination at trial, but only if the opinion at trial was the same, conclusory opinion that had been disclosed in Dr. Shamos's expert report.

not call a single live witness to testify about P.O. Writer prior to Dr. Shamos's testimony. Instead, Defendant opted to play limited portions of the deposition of Ms. McEneny, ostensibly related to its allegation that P.O. Writer anticipated three claims. Yet even that testimony was later rendered irrelevant when Defendant voluntarily withdrew its P.O. Writer anticipation claim before the case was submitted to the jury. However, on the evening of January 17, 2011, only hours before Dr. Shamos was scheduled to take the stand, Defendant sent *e*Plus 167 slides summarizing Dr. Shamos's testimony. *See* Ex. 2 (Email from M. Martinez to Goodwin Procter on 1/17/11 at 6:02 p.m.). *e*Plus immediately objected to these slides, explaining that the slides (1) referenced documents or portions of documents that Dr. Shamos never mentioned or relied upon in his expert reports, (2) included opinions that had already been excluded by prior Court orders and (3) included opinions never disclosed in Dr. Shamos's expert reports. *See* Ex. 3 (Email from M. Strapp to K. Stoll-DeBell on 1/17/11 at 11:08 p.m.).[6]

Dr. Shamos's testimony was postponed so that counsel could meet and confer on January 18 to resolve the disputes concerning Dr. Shamos's slides. After the parties' conference, Defendant agreed to delete 58 of Dr. Shamos' original 167 slides and to modify several others, *See* Ex. 4 (Email from K. Stoll-DeBell to M. Strapp on 1/19/11 at 8:08 a.m.), and Defendant

---

[6] After reviewing each of the 167 slides in the early morning hours of January 18, 2011, *e*Plus sent Defendant an email noting that it had "uncovered problems with Dr. Shamos's slides of a much greater magnitude than we anticipated last night." Namely, as *e*Plus explained, (1) more than 100 slides contained claim-by-claim, element-by-element obviousness opinions that were not disclosed in Dr. Shamos's report; (2) 55 slides referenced material different from the material disclosed in the report; (3) 35 slides disclosed element-by-element anticipation opinions that did not match the opinions disclosed in the report; (4) 18 slides contained undisclosed opinions about the functionality of prior art references; (5) 8 slides contained legal opinions that the Court had already precluded Dr. Shamos from offering; (6) 5 slides contained invalidity opinions that the Court had already struck; (7) 4 slides referenced "Plaintiff's infringement theory" or "Plaintiff's theory of catalogs" even though Dr. Shamos was excluded from court during Plaintiff's infringement case-in-chief pursuant to Federal Rule of Evidence 615; and (8) 2 slides described

provided *e*Plus with a replacement set of slides.  *See* Ex. 5 (Email from E. Chad to M. Strapp on 1/18/11 at 8:30 p.m.).

Unfortunately, Defendant's replacement slides still contained detailed obviousness opinions regarding J-CON and P.O. Writer that had not been disclosed in Dr. Shamos's expert report.  As *e*Plus explained in an email to Defendant the morning of January 19:

> Although Dr. Shamos's report does not contain claim-by-claim or element-by-element obviousness allegations with respect to JCON & PO Writer and is, in total, a single paragraph of Dr. Shamos's report, ***Dr. Shamos's revised set of slides include several slides that detail on a claim-by-claim and element-by-element basis JCON & PO Writer obviousness opinions for each asserted claim on an element-by-element basis that were not disclosed in Dr. Shamos's expert report.*** *See* Slides 99-104, 107-110, 124-128, 131, 137-145.

*See* Ex. 7 (Email from M. Strapp to K. Stoll-DeBell on 1/19/11 at 8:16 a.m.).

Because Defendant refused to voluntarily withdraw the offending slides, *e*Plus was forced to raise the issue in court on the morning of January 19.  After hearing extensive argument and comparing Dr. Shamos's conclusory opinion in his expert report with the detailed claim-by-claim and element-by-element obviousness opinions in the slides provided to *e*Plus during trial, the Court excluded Dr. Shamos's J-CON and P.O. Writer obviousness opinions in a ruling from the bench that same morning.  *See generally* Tr. 2281:14-2356:19.

Incredibly, Defendant's decision to provide *e*Plus with scores of improper demonstrative slides on the eve of Dr. Shamos's trial testimony does not even warrant a mention in Defendant's brief.  Instead, Defendant pretends that it was *e*Plus who deliberately delayed seeking relief from the Court.  Defendant's contention is inconsistent with reality.  Defendant made the calculated decision to ambush *e*Plus at trial with detailed expert opinions that it had never disclosed.  This tactic forced the parties and the Court to litigate the issue in the middle of trial, wasting a great

---

new invalidity theories Dr. Shamos never previously disclosed.  *See* Ex. 8 (Email from M. Strapp to K. Stoll-DeBell on 1/18/11 at 8:24 a.m.).

deal of the Court's and the jury's time. Defendant should not be heard now to complain about prejudice related to the Court's ruling, when the timing of that ruling was entirely the result of its belated expert disclosure.

### 3. *e*Plus, Not Defendant, Was Prejudiced By Defendant's Decision To Introduce Misleading Evidence Concerning J-CON And P.O. Writer

Defendant suggests that it was prejudiced because the jury was permitted to hear evidence regarding J-CON and P.O. Writer notwithstanding the Court's appropriate ruling excluding Dr. Shamos's obviousness opinions. Defendant's argument defies logic and common sense. If any party was prejudiced by Defendant's introduction of confusing, misleading and marginally relevant evidence concerning J-CON and P.O. Writer, it was *e*Plus, not Defendant. Indeed, after the Court's ruling excluding Dr. Shamos from offering newly-disclosed obviousness opinions about J-CON and P.O. Writer, *e*Plus specifically requested that Defendant not be permitted to introduce testimony concerning J-CON. Tr. 2359:5-10. Yet over *e*Plus's objection, Defendant was permitted to introduce testimony from both Dr. Shamos and Dr. Staats concerning P.O. Writer and J-CON to purportedly rebut secondary considerations that the alleged obviousness combination of RIMS and TV/2 was not obvious. *e*Plus warned that this testimony "would be nothing more than confusing and cause undue delay and would be misleading." Tr. 2370:24-2371:1. Defendant nonetheless proceeded to elicit this testimony from Dr. Shamos and Dr. Staats.

In closing argument, Defendant again attempted to unfairly exploit the Court's ruling concerning P.O. Writer and J-CON. Instead of arguing that P.O. Writer and J-CON rebutted secondary considerations of non-obviousness, Defendant instead launched into a discussion about the allegedly invalidating "features" of the P.O. Writer system. Tr. 3162:21-3163:3. For example, Defendant argued in closing that P.O. Writer included features that permitted

12

"selecting catalogs to search, selecting parts of the database to search . . . searching them in a two-step process . . . creat[ing] a requisition . . . [and putting the requisition] on [a] requisition list." *Id.* The Court appropriately shut down this line of argument, noting that the thrust of the argument was that P.O. Writer was invalidating prior art, not that P.O. Writer rebutted secondary considerations of non-obviousness. *Id.* at 3163:10-15. Because Defendant had voluntarily withdrawn its allegation that P.O. Writer anticipated the asserted claims prior to closing arguments, the Court correctly remarked that detailed argument about particular allegedly invalidating functionality of P.O. Writer was not relevant. *Id.* at 3163:4-6, 3163:10-15.

The testimony concerning P.O. Writer and J-CON elicited by Defendant after the ruling excluding Dr. Shamos's obviousness opinions combined with its closing argument no doubt left the jury questioning why these prior art systems were mentioned if they had not even been asked to determine whether the systems invalidated any asserted claim. During deliberations the jury inquired: "Since J-CON and P.O. Writer aren't listed on our verdict sheet, are we to consider them as prior art? Isn't that what they were included in the case for?" *Id.* at 3306:4-7.

Fortunately, the Court concisely and correctly cleared up the confusion sown by Defendant by explaining to the jury during deliberations the limited purpose for which it was permitted to consider J-CON and P.O. Writer:

> COURT:   [N]either J-CON or P.O. Writer is listed as prior art [in the jury instructions] for purposes of anticipation or for purposes of obviousness. That means that you cannot consider either P.O. Writer or J-CON or the combination thereof for purposes of deciding anticipation or obviousness.
>
> Are you with me so far?
>
> JURY:  Yes.
>
> COURT:  Now you asked is that evidence in the case still?  ....  *[T]he evidence ... that there is a J-CON and there is a P.O. Writer was admitted for you to consider in deciding whether or not you think there was a long felt but unresolved need for a solution to the problem facing the inventors in this case,*

*which was satisfied by the claimed invention. In other words, that evidence is related and admitted only for the purpose for you to consider in deciding the issue of non-obviousness as outlined in Instruction No. 42.*

*I think we have now answered them as we agreed; is that right, Mr. Robertson and Mr. Carr?*

*LAWSON COUNSEL: Yes, Your Honor.*

Tr. 3324:19-3326:7 (Jury Deliberations) (emphasis added).

As Defendant acknowledges in its motion, the Court's response to the jury question concerning J-CON and P.O. Writer during deliberations "was consistent with the court's mid-trial ruling." Brf. at 13. Indeed, lead counsel for Defendant during deliberations, Mr. Carr, acknowledged as much when he noted on the record that that the Court's response to the jury question was appropriate and agreed upon by the parties.

Defendant engaged in a transparent, but unsuccessful attempt to sow jury confusion and prejudice *e*Plus by introducing anticipation evidence regarding P.O. Writer and then voluntarily withdrawing its anticipation claims and by introducing evidence and argument concerning J-CON and P.O. Writer even after the Court had ruled that it could not claim that the systems rendered the patents obvious. Defendant now seeks to parlay its failed attempts to confuse and mislead the jury into a new trial. Defendant's request should be rebuffed.

**B.      Defendant's Argument Concerning The Patent Office's Consideration Of The '989 Patent Are Not Grounds For A New Trial**

Defendant claims that it is entitled to a new trial because *e*Plus was allowed to argue that the Patent Office considered the '989 patent during prosecution of the patents-in-suit, but "Lawson was blocked from showing the evidence to the contrary." Brf. at 17. Defendant mischaracterizes the trial record. In fact, on several occasions, Defendant was permitted to elicit testimony from fact and expert witnesses to attempt to show that the '989 patent was not considered by the Patent Office. Defendant argued during opening and closing arguments that

14

the Patent Office had not considered the '989 patent or the RIMS System during prosecution of the patents-in-suit.

In opening argument, Defendant argued that the '989 patent had not been considered by the Patent Office because it was neither among the references provided to the Patent Office, nor was it on the list of references cited by the patent examiner:

> There's a real clear system here to make sure that stuff is considered as prior art by the Patent Office, but if you go back to the big version of the patent … you won't see anywhere on that list of references cited any brochures or literature about the RIMS systems…. [T]he RIMS patent is number 5712989…. So there's the other patents, and you can see they skip right over that number I just mentioned, 5712989. That's the RIMS patent. That RIMS patent and the RIMS literature did not make it on the list. It's not in the list the Fisher people gave to the Patent Office. It's not on any list that the examiner initialed as prior art he considered, and it didn't make it on the patents either as references cited and considered by the Patent Office.

Tr. 194:7-25.

During the cross examination of Mr. Kinross, an inventor of the patents-in-suit, Defendant again suggested that the '989 patent had not been considered by the Patent Office:

> LAWSON COUNSEL: Mr. Kinross, could we go ahead and just put Plaintiff's Exhibit 1, the '683 patent, up on the screen so you'll know what we're talking about. Go to the first page there, the part references cited -- there's a section, do you see in the lower left of what's blown up on the screen, Mr. Kinross, the words references cited?
>
> MR. KINROSS: Yes, I see that.
>
> LAWSON COUNSEL: And over on the right side … there's a list of patents. That list of patents doesn't include the RIMS patent. That's number 5712989; correct?
>
> COURT: You mean under references cited?
>
> LAWSON COUNSEL: Yeah, under the U.S. patents documents, references cited.
>
> LAWSON COUNSEL: It does not include 5719 -- excuse me, 5712989; correct?
>
> ….

MR. KINROSS:  I don't see it under references cited, no.

LAWSON COUNSEL:   Then there's a few entries under the title other publications on this page; right, Mr. Kinross? Right side there?

MR. KINROSS:  Yes.

LAWSON COUNSEL:  And there's no reference to any RIMS publications there; correct?

MR. KINROSS:  That's correct.

Tr. 2213:22-2214:24.

In its case-in-chief, Defendant also attempted to show that the Patent Office had not

considered the '989 patent.  For example, Defendant's counsel asked Dr. Shamos:

LAWSON COUNSEL:  [W]ith respect to the portions of the file histories of the patents in this case that specifically identify prior art references, okay, can we talk about that for a moment?

DR. SHAMOS:  Yes.

LAWSON COUNSEL:  Was there any literature regarding the RIMS system that was disclosed and identified as prior art?

DR. SHAMOS:  No.

....

LAWSON COUNSEL:  And if we go to the Plaintiff's Exhibit 1, please, the '683 patent, and to the first page under other publications, the top third of the page there, do you see that blown up on the screen right now, Dr. Shamos?

DR. SHAMOS:  Yes.

....

LAWSON COUNSEL:  This list, at least this part of it shown up on the screen, doesn't have any reference to the RIMS system; right?

DR. SHAMOS:  No.

LAWSON COUNSEL:  Did you review the list of publications disclosed on all three of the patents-in-suit as part of your analysis?

DR. SHAMOS:  Yes.

16

> LAWSON COUNSEL:  Did you see any references at all in those three lists for the three patents-in-suit to any literature regarding the RIMS system?
>
> DR. SHAMOS:  No.

Tr. 2410:21-2412:1.

On redirect examination of Dr. Shamos, Lawson's counsel again attempted to show that the Patent Office had not considered the '989 patent or the RIMS system during prosecution of the patents-in-suit:

> LAWSON COUNSEL:  Let's turn now to the patent, the file history, Exhibit 4 ….  [L]et's talk about the issue of whether or not there was a disclosure to the Patent Office that any aspect of the RIMS system was actually prior art.  Did you look at the file history, Exhibit 4, to determine whether or not the RIMS system was actually disclosed as prior art?
>
> DR. SHAMOS:  Yes.
>
> LAWSON COUNSEL:  What did you conclude about that?
>
> DR. SHAMOS:  It wasn't.

Tr. 2599:20-2600:6.

Finally, in closing, Defendant again argued to the jury that the Patent Office had not considered the RIMS System during the prosecution of the patents-in-suit:

> There's critical information that you have now that the Patent Office didn't have. You have a copy of the RIMS brochure….  The Patent Office didn't have that…. That's particularly telling here if you look at 45D.  This is the part of this and all three patents have something similar to the patents-in-suit.  This lists the publications involved here that were disclosed and what the Patent Office did consider….  And there's a few publications on here about various Fisher systems … but there are not any publications regarding the RIMS system provided with any of the patents.  So that's the information that you have that the Patent Office did not have….  So that's why because you have this critical information here in the courtroom that the Patent Office didn't get why you should reach a different conclusion from the Patent Office.  So that's why you should decide that the claims are invalid.

Tr. 3172:24-3174:14.

17

Defendant's request for a new trial should be denied because, contrary to its contention, Defendant was permitted to present evidence and argument to the jury to suggest that the '989 patent had not been considered during the prosecution of the patents-in-suit.[7]  As set forth above, Defendant argued on several occasions that the Patent Office was not aware of the '989 patent during prosecution of the patents.  ePlus, on the other hand, also introduced substantial evidence to show that the '989 patent and the RIMS System were considered by the Patent Office.  The jury, as fact-finder, was appropriately permitted to reach its own conclusion about whether the '989 patent and the RIMS System had actually been considered by the Patent Office.[8]

### C.   The Court's Rulings Excluding The Reexaminations Are Not Grounds For A New Trial

Defendant half-heartedly argues that the Court's exclusion of the reexaminations of the patents-in-suit is grounds for a new trial.  Brf. at 17.  Defendant's request for a new trial on these grounds should be denied.

---

[7] Even if the Court had precluded Defendant from arguing that the '989 patent was not considered by the Patent Office, Defendant has not shown how such a ruling would have affected its substantial rights.

The ultimate issue on validity presented to the jury was not whether the Patent Office had considered the '989 patent, but instead whether Defendant had proven by "clear and convincing" evidence that the patents-in-suit were invalid.  The jury determined that Defendant had not met its burden of proof with respect to any of the patents-in-suit and Defendant has no basis to suggest that the jury would have found otherwise if it had concluded that the '989 patent had not been considered by the Patent Office.

[8] The clear weight of the evidence introduced at trial suggests that the Patent Office did, in fact, consider the '989 patent and the RIMS System during the prosecution of the patents-in-suit. First, as Mr. Momyer, one of the inventors, testified, the RIMS System is mentioned ***more than 50*** times in the specifications of the patents-in-suit.  Tr. 2139:25-2141:2 (Momyer); *see also* Tr. 2919:10-20 (Court) ("It's utterly silly to suggest -- I mean, what is this? .... They are told in spades if you can't figure out that a prior art is involved with a '989, you ought not have that job, for Lord's sake.  It's not mentioned but 50 times in there.").  Second, the Examiner actually annotated the '683 patent application to reference the '989 patent.  PX-4 at ePlus0703575; Tr. 2569:6-2570:5 (Shamos); Tr. at 2921:11-15 (Court) ("The patent examiner actually looked at all this.  He actually annotated – there's evidence in the record that he even changed the application to the actual issued patent.  Clearly, the guy or lady looked at, whoever it was.").

Before trial, the Court rejected Defendant's arguments regarding the relevance of the reexaminations three times. First, the Court denied Defendant's motion to stay the litigation pending the reexaminations. *See* Docket No. 198. Second, it denied Defendant's motion *in limine* to exclude arguments or evidence inconsistent with the reexaminations. *See* Docket No. 362. Third, it granted *e*Plus's motion *in limine* to exclude arguments or evidence relating to the reexaminations. *See* Docket No. 375.

Defendant then ***again*** "resurrect[ed] those same arguments in arguing that it has a strong likelihood of succeeding on appeal on its contention that the asserted claims of the infringed patents are invalid." Dkt. No. 734 at 6. In over five pages of its opinion denying Defendant's request for a stay of the injunction, the Court dissected Defendant's argument, concluding "that the pending reexaminations neither show that Defendant is likely to succeed on the merits nor that it has a substantial case on the merits with respect to the claims' invalidity." *Id.* at 11.

Defendant's latest attempt to revive its reexamination arguments fails for all of the same reasons that the Court has already articulated in its prior orders.[9] Defendant's request for a new trial in light of the exclusion of the reexaminations should be denied.

**D.    The Court's Ruling Admitting License Agreements To The Patents-In-Suit Is Not Grounds For A New Trial**

Defendant acknowledges in its motion that patent licenses may "be relevant to show non-obviousness," and that the licenses to the patents-in-suit in this case had at least "minimal probative value to this issue of obviousness." Brf. at 18. Notwithstanding this concession, Defendant argues in the very same breath that the Court's admission of the license agreements "may have unfairly swayed the jury" and that the Court should therefore "grant Lawson's motion

---

[9] Defendant has subsequently raised the same reexamination argument in its emergency motion to stay the injunction filed in the Federal Circuit. Ex. 9 (Defendant's Emergency Motion to Stay Injunction, Case No. 2011-1396, 5/24/11) at 14-15.

for a new trial on invalidity." *Id.* at 18-19.  Defendant's request for a new trial on these grounds should be rejected.

First, a ruling regarding the admissibility of evidence is insufficient grounds for a new trial unless the error affects a party's substantial rights.  *See Bennett*, 744 F. Supp.2d at 539-543 (denying motion for new trial on grounds that admission of evidence was error).  Defendant's request for a new trial must be denied because it does not even allege that its substantial rights were affected by the admission of the license agreements.  Defendant's speculative contention that there ***may*** have been error in admitting the license agreements because the agreements ***may*** have unfairly swayed the jury is a far cry from actually demonstrating — or from even alleging — that the Court's evidentiary ruling was a "miscarriage of justice" that affected Defendant's substantial rights.  *See, e.g., Cline*, 144 F.3d at 301; *Jones*, 204 Fed. Appx. at 282.[10]

Second, because, as even Defendant acknowledges, the license agreements have probative value, the Court properly struck "the balance under Rule 403 … in favor of admissibility."  *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 584 F. Supp.2d 832, 838 (E.D. Va. 2008) (citing *U.S. v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)).

Third, any potential prejudice to Defendant from the admission of the license agreements was cured by (i) the Court's contemporaneous instruction to the jury about the limited purposes for which it could consider the patent license agreements;[11] (ii) the Court's refusal to allow *e*Plus

---

[10] Defendant's reliance on dicta from a Rhode Island district court for the proposition that the admission of the license agreements was prejudicial is misplaced.  *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp.2d 150 (D.R.I. 2009).  *Uniloc* does not involve consideration of any alleged prejudice in the use of patent license agreements whatsoever.

[11] Tr. 2638:15-2639:1 ("I told you, ladies and gentlemen, you're not going to be concerned with money at the end of the case.  This is being offered because it has -- this evidence that he's just testified to is being offered because it's pertinent to one of the issues that are called secondary considerations that I'll tell you about later, but as a general proposition, in response to a claim that a patent is obvious in view of the prior art, the patentee can introduce evidence showing,

counsel to publish the agreements to the jury during trial;[12] and (iii) Defendant's opportunity to cross-examine *e*Plus's President about the license agreements.[13]  For example, Defendant contends that the amount of "the Ariba and SAP settlements, totaling $37 million and $17.5 million, likely unfairly swayed the jury" because of "these large numbers."  Brf. at 18.  But Defendant fails to mention that (i) the Court instructed the jury that it could "not … be concerned with money at the end of the case," Tr. 2638:15-16; (ii) *e*Plus was not even permitted to show the Ariba and SAP agreements to the jury during trial, *id.* at 2622:17-2623:11; and (iii) *e*Plus's President testified about all the licenses of *e*Plus's competitors to the patents-in-suit, not just the Ariba and SAP agreements, *id.* at 2619:25-2633:8.[14]

Fourth, Defendant is mistaken when it suggests that the license agreements should not have been admitted because they allegedly had minimal probative value.  The agreements were relevant to disproving Defendant's counterclaim and affirmative defense of obviousness.[15]

---

among others things, that there has been commercial success of the patent, and that's something that you can take into account in deciding invalidity, and that's why this evidence is coming in on this topic.").

[12] Tr. 2622:17-2623:11 ("COURT: . . . Mr. McDonald, do you want the exhibits in?  LAWSON COUNSEL:  We had opposed their admission at one point, Your Honor, but you said they could come in.  We would ***stipulate*** to what he's already testified about the cumulative numbers. I think he could probably get through it without having to go through these things.)

[13] Tr. 2639:5-2653:15 (Farber Cross).

[14] Defendant was even permitted to elicit testimony about a purported $12,000 valuation of the patents-in-suit, which presumably could also have negated the alleged impact of the "large numbers" of the Ariba and SAP agreements.  *See* Tr. 2647:17-20 (Farber Cross).

[15] The licenses also are relevant to other issues in the case including, for example, induced infringement.  Inducement of infringement requires that Defendant have some knowledge of the patents-in-suit, and that it possesses the requisite intent to induce infringement.  Defendant contended that it did not have knowledge of the patents-in-suit prior to the filing of the complaint, and that it lacked the requisite intent to induce infringement.  The license agreements were relevant because evidence was presented that showed how the agreements were made public under circumstances that likely made Defendant aware of the patents-in-suit prior to the filing of the complaint.  *See, e.g.,* Tr. 1318:5-1322:18 (Farber) (testifying that license agreement

Indeed, it is well-established that the existence of such license agreements constitutes a "secondary consideration" of non-obviousness. Under binding Federal Circuit precedent, such licenses **must** be considered by the jury in order to assess Defendant's obviousness defense and counterclaim.[16]

Defendant argues that the licenses should not have been admitted to show non-obviousness because of the absence of any nexus between the merits of the claimed invention and the licenses. In fact, *e*Plus introduced evidence of the nexus between the claimed inventions, the licenses taken by its competitors, and the related commercial success of the claimed inventions including (1) the terms of the various licenses; (2) the specific circumstances under which they were granted; (3) the patents and claims which are incorporated by the licensing program; (4) that the licensing of the inventions arose out of recognition and acceptance of the subject matter claimed in the patents at issue; and (5) whether these licenses were part of a package including additional patent, trademark, or other rights. *See* Tr. 1319:25-1320:8 (Farber); 2619:25-2633:8 (Farber); *see also In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995);

---

between *e*Plus and Ariba was subject of a Gartner research report); *id.* at 1067:12-24 (Lohkamp) (Defendant considers Gartner to produce some of the most reliable industry publications).

[16] *See, e.g., Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) ("*[E]vidence rising out of the so-called "secondary considerations" must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record*.... Enroute to a conclusion on obviousness, a court must not stop until *all* pieces of evidence on that issue have been fully considered and each has been given its appropriate weight.... *It is error to exclude that evidence from consideration*.") (emphasis added) (internal citations omitted); *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004) (licensing of invention to eight companies and initial skepticism about invention constituted substantial evidence that asserted claim was not obvious); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) ( "The district court erred in failing to consider, or at least to discuss, evidence of secondary considerations. Our precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness.") (citations omitted).

*Stratoflex*, 713 F.2d at 1539.[17]

### E.   There Was No Testimony Concerning Defendant's Opinion Of Counsel At Trial

The Court should deny Defendant's request for a new trial on the grounds that it was prejudiced by purported testimony concerning Defendant's failure to disclose its opinion of counsel. In fact, the Court excluded it.

As an initial matter, Defendant never even suggests that the admission of the allegedly improper "testimony" about its opinion of counsel rises to the level of a "miscarriage of justice" or somehow affected Defendant's substantial rights. For that reason alone, Defendant's request for a new trial must be denied.

In fact, Defendant suffered no prejudice from the alleged testimony concerning its opinion of counsel. It never happened. When *e*Plus asked Mr. Christopherson whether Defendant had disclosed its opinion of counsel, Defendant's counsel objected and the Court did not require Mr. Christopherson to respond to the question. Tr. 1579:15-1580:22. In other words, *there was no testimony at all concerning whether Defendant had or had not disclosed its opinion of counsel.* Defendant cannot be prejudiced that it failed to disclose an opinion of counsel when the jury never learned of that failure.

To the extent there was any prejudice to Defendant simply because *e*Plus's counsel *asked* Mr. Christopherson whether Defendant had disclosed its opinion of counsel, any such prejudice was cured by the Court's instruction that testimony concerning the opinion of counsel had been excluded and should not be considered. Tr. 3240:10-17; *see Hinkle v. City of Clarksburg*, 81

---

[17] Even if *e*Plus had not demonstrated that each license was taken because of the merits of the patents-in-suit, the license agreements could still constitute objective evidence of non-obviousness. *In re GPAC*, 57 F.3d at 1580 (licenses taken under patent-in-suit may constitute evidence of non-obviousness even if the patentee does not demonstrate a nexus between the merits of the invention and the licenses).

F.3d 416, 427 (4th Cir. 1996) (upholding denial of new trial because of curative instruction and noting "[j]uries are presumed to follow instructions provided them"); *United States v. Francisco*, 35 F.3d 116, 119 (4th Cir. 1994) ("We generally follow the presumption that the jury obeyed the limiting instructions of the district court.").

Defendant's suggestion that the Court's instruction was inadequate because "[i]t was confusing as to which testimony was to be disregarded" is simply wrong. Brf. at 25. The Court informed the jury that it had excluded ***all testimony*** concerning "whether Lawson obtained an opinion of counsel of non-infringement or invalidity on the patents" and instructed the jury to disregard "***whatever*** was said" about the topic. Tr. 3240:13-17. There was nothing confusing or inadequate about the Court's instruction; the instruction was clear, concise and unambiguous.

In truth, if any party was prejudiced by Mr. Christopherson's testimony it was *e*Plus, not Defendant. During the ***direct*** examination of Mr. Christopherson, Defendant was permitted to inquire about Mr. Christopherson's lay opinion regarding whether Defendant infringed the patents-in-suit. Tr. 1569:25-1577:3. Notwithstanding several objections from *e*Plus, Mr. Christopherson testified that he reviewed the patents and determined that Defendant did not infringe them. *Id.* at 1570:5-9, 1572:20-23. And even though Mr. Christopherson was not an expert witness, he was permitted to testify about the purported basis for his lay opinion. *Id.* at 1573:25-1574:10. Mr. Christopherson was also allowed to inform the jury about his "recommendation" to Defendant that "they didn't need to do any changes with the software" since, in his lay opinion, "we weren't doing that patent." *Id.* at 1576:24-1577:3. Defendant was permitted to introduce Mr. Christopherson's lay opinion of non-infringement because, according to Defendant, that lay opinion was relevant to the intent prong of *e*Plus's allegation of indirect infringement. *Id.* at 1572:5-17 (Court instructing jury that testimony was relevant to "whether

24

there was an intent to have an infringement").

Because Mr. Christopherson testified on *direct* examination about his own lay opinion of noninfringement, *e*Plus should have been permitted on cross examination to inquire about the Lawson opinion of counsel concerning infringement and validity that was also at least equally relevant to Defendant's intent to induce infringement.  *See Jarrell v. Ford Motor Co.*, 327 F.2d 233, 235 (4th Cir. 1964) (defendant was rightfully permitted to introduce testimony to refute suggestions of appellants' witness that "opened up the matter"); *Pounds v. Board of Trustees*, 2000 WL 655936 (4th Cir. May 12, 2000) (cross examination questions regarding perceptions of relevant issues were not unfairly prejudicial where witness "placed at issue her perceptions" on direct examination).

Although Defendant clearly "opened the door" on direct examination to inquiry on cross examination regarding Defendant's intent, that door was slammed shut when *e*Plus asked Mr. Christopherson about the opinion of counsel Defendant had obtained but refused to disclose.[18] Thus, if any party was prejudiced it was *e*Plus, not Defendant; *e*Plus should have been permitted to establish that Defendant had not produced an opinion of counsel, but instead stood on the attorney-client privilege.  *See Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 698-700 (Fed. Cir. 2008) (addressing the relevance of the absence of opinion of counsel evidence, and holding that the absence of such evidence was relevant and admissible for purpose of showing Defendant's culpability for inducement purposes).

---

[18] Assume, for example, that Mr. Christopherson formed his lay opinion of non-infringement even though Defendant had obtained an opinion of counsel that stated that the patent-in-suit were valid and infringed by Defendant.  In those circumstances, *e*Plus should have been permitted to explore the inconsistencies between Mr. Christopherson's lay opinion and the opinion of Defendant's professional expert patent counsel.  Instead, *e*Plus was not allowed to inquire about the content of Defendant's state of mind and was not even permitted to establish that Defendant refused to turn over its opinion of counsel.

There can be no question that Defendant "opened the door" to the issue of its intent to induce infringement on direct examination, and it cannot now complain about the line of inquiry pursued on that very same topic by *e*Plus on cross examination.  *See Edwards v. Steinns*, 207 F.2d 734, 736 n.1 (4th Cir. 1953) (affirming judgment, denying motion for new trial; "The plaintiff himself offered the evidence that opened the door for the testimony that occasioned the confusion.  He is hardly in a position to complain about what followed."); *United States v. Hunt*, 749 F.2d 1078, 1084 (4th Cir. 1984) ("Having 'opened the door' the defendant may not be heard to complain of testimony which proved adverse to his position that the government had no reason to investigate him.").

### F.     The *Global-Tech* Decision Provides No Basis For A New Trial

The Supreme Court's opinion in *Global-Tech Appliances, Inc. v. SEB, S.A.*, 536 U.S. ___, 131 S. Ct. 2060 (May 31, 2011), provides no basis for a new trial.  Defendant's argument regarding the "intent to infringe" versus the "intent to act" borders on the outrageous.  Brf. at 21. As set forth in greater detail in *e*Plus's opposition to Defendant's motion to reconsider the injunction, Dkt. No. 767, at the charging conference Defendant presented the very same argument.  ***However, after the Court pointed out that Defendant's argument omitted (as it does here) key words from the Court's instruction, Defendant withdrew the objection.***  Tr. 2965:12 – 2966:18 (Charging Conference) (COURT: ***That's what the next clause says.  It says -- you are not reading the whole thing.  You are just editing out something.  Cause the acts that constitute direct infringement, comma, that Defendant knew of the patent and Defendant knew or should have known that its actions would lead to actual infringement.  I mean, that seems to me to do --*** LAWSON COUNSEL: ***I'll withdraw that redline…. I'll put my horse back in the barn, Your Honor.***)

Neither does *Global-Tech* render the Court's instruction erroneous. At issue in *Global-Tech* was the Federal Circuit's use of "deliberate indifference" for determining when an accused infringer can be held to have **knowledge of the patents**. *Global-Tech,* 131 S. Ct. at 2065, 2070 ("[defendant argues that the statute] demands more than willful blindness with respect to *the induced acts* that constitute infringement. This question, however, is not at issue here.") (citation omitted) (emphasis original). This Court's instruction differentiated between (i) Defendant's knowledge of the patents and (ii) whether Defendant knew it was inducing infringements. The Court did not, as Defendant contends, adopt a mere "intent to act" standard; instead, it required actual knowledge for the first question, and that Defendant "knew or should have known" for the second question. Tr. 3255:14 – 3257:12 (Court). Accordingly, Defendant's argument should be rejected, both because its argument about the Court's instruction is incorrect and mischaracterizes what the Court said, but also because Defendant withdrew its objection.

Further, and contrary to what Defendant's motion suggests, this Court's jury instruction did not include the "deliberate indifference" standard that was disapproved of in *Global-Tech* and, in fact, made no reference to "indifference," (whether "deliberate" or otherwise). Tr. 3255:14-3256:14.[19]

Thus, this Court's instruction made no mention of "deliberate indifference" and, taken as a whole, was consistent with the "willful blindness" doctrine as described in *Global-Tech*.[20]

---

[19] Neither did the Court utilize a "reckless disregard" standard as Defendant suggests at page 19 of its brief. Defendant's citations are to the oral arguments of counsel, not the Court's jury instruction.

[20] The Court's inducement instruction in its entirety comprised several paragraphs and more than a page of text. It is well-established that what the jury understood is to be determined by reading it "in the context of the jury charge as a whole." *Johnson v. Evatt*, 1993 WL 177800, at *2 (4th Cir. May 26, 1993) (alterations and citations omitted). In rejecting an argument that the trial court erred in instructing as to the legal definition of "malice," the Fourth Circuit repeated the Supreme Court's admonition that jurors do not "'sit in solitary isolation booths parsing

*Global-Tech,* 131 S. Ct. at 2070-71 ("a willfully blind defendant is one who takes **deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts**.") (emphasis added).[21]  The Supreme Court actually *affirmed* the verdict under the doctrine of "willful blindness." *Id.* at 2068-72.

Finally, Defendant provides no support for its bald assumption that the evidence was insufficient, or its claim that any alleged error in the instruction was not harmless.[22]  The evidence was sufficient for the jury to find that:  (1) Defendant had actual knowledge of the patents-in-suit prior to the lawsuit, *see, e.g.,* Tr. 1065:4 – 1067:24 (Lohkamp); 1307:22 – 1308:5; 1309:21 – 1310:6; 1318:23 – 1320:3 (Farber);[23] (2) Defendant was at least "willfully blind" to the existence of the patents-in-suit prior to the lawsuit; or (3) Defendant possessed the requisite knowledge and intent based on its continuing infringement for nearly two years after the filing of

---

instructions for subtle shades of meaning in the same way that lawyers might,'" and the jurors' "'commonsense understanding of the instructions was likely to have prevailed over technical hair-splitting.'" *Id.* (quoting *Boyde v. California,* 494 U.S. 370, 380-81 (1990)) (alterations omitted).

[21] *e*Plus had, in fact, requested that the Court's instruction include the "deliberate indifference" language from the Federal Circuit's *SEB* decision but, as shown above, this Court did not provide *e*Plus's requested instruction.  Dkt. No. 523 (12/3/10) at 79 (*e*Plus Proposed Instruction No. P-15 including "deliberate indifference" language).

[22] Defendant's motion assumes, without explanation, that this argument affects the contributory infringement verdict, when in fact it cannot.  Brf. at 22.  Defendant presents no argument that the contributory infringement instruction was erroneous and, indeed, it did not object to it.  As the Court is aware, the verdict form in this case, to which Defendant agreed in relevant part, asked the jury to determine whether Defendant infringed, either directly or indirectly, and the jury was instructed on both induced and contributory infringement.  Dkt. No. 600.  Accordingly, the verdict of infringement of any claim in this case could be upheld on the basis of direct, induced, and/or contributory infringement.

[23] Evidence at trial showed that Defendant was aware of *e*Plus as a competitor, *e*Plus marked its covered products, and industry research analysts relied upon by Defendant's executives publicized *e*Plus's prior litigations enforcing the same patents-in-suit.  *See* Dkt. No. 756 at 27-28.

the complaint.[24]

### G.     The Cumulative Error Doctrine Is Inapplicable And Irrelevant

Defendant argues that even if all of the alleged errors of the Court in themselves are harmless, the sum effect of these assumed errors warrants a new trial under the cumulative-error doctrine.  Brf. at 26.  But the only case Defendant cites for support, *Kozlowski v. Hampton School Board*, 2003 WL 22273073 (4th Cir. Oct. 3, 2003), is an unpublished decision that marks the *only* instance when the Fourth Circuit has ever applied the cumulative-error doctrine in the civil context.  *Kozlowski* has not even been recognized by the Fourth Circuit *itself* as binding precedent.  In fact, the Fourth Circuit recently stated that it has "yet to determine whether the cumulative error doctrine [even] applies in the civil context." *Anthony v. Ward*, 336 Fed. Appx. 311, 322 (4th Cir. 2009).

Furthermore, even assuming for the sake of argument that *Kozlowski* is controlling law, Defendant cannot simply rely on a few assumed errors by the Court, however trivial, to justify its demand for a new trial.  *See United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) ("Generally, … if a court determines that none of a defendant's claims warrant reversal

---

[24] *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 476 F. Supp.2d 1143, 1158 (N.D. Cal. 2007) (denying summary judgment of no contributory infringement based on contention that defendant lacked actual notice of patent until served with complaint), *clarified on other grounds on denial of reconsideration*, 2007 WL 1108615 (N.D. Cal. Apr. 11, 2007).  Defendant made no changes to its accused products even though it now claims to have had an easy "design-around" that can be implemented free to customers in less than half an hour's time.  The testimony of one of Defendant's corporate officers further showed that it was cavalier once it learned of the patents.  Tr. 1569:25 – 1577:3 (Christopherson).  Defendant stood on the privilege, but the absence of an opinion of counsel remains a relevant factor in determining Defendant's intent. *Broadcom*, 543 F.3d at 698-700.  And the evidence of Defendant's inducing activities (such as advertising, installing, servicing, instructing, maintaining, etc.), was overwhelming and essentially undisputed. *See* Dkt. No. 582 at 10-11, 15-19.

individually, it will decline to employ the unusual remedy of reversing for cumulative error.").[25]

By contrast, because none of the alleged errors of which Defendant complains, even if valid,

"work any cognizable harm, it necessarily follows that the cumulative error doctrine finds no

foothold." *Basham*, 561 F.3d at 330.

IV.     **CONCLUSION**

For all of the foregoing reasons, *e*Plus respectfully asks the Court to deny Defendant's

motion for a new trial.

Respectfully submitted,


July 5, 2011                                    _____/s/_____
                                                David M. Young (VSB #35997)
                                                Scott L. Robertson *(admitted pro hac vice)*
                                                Jennifer A. Albert *(admitted pro hac vice)*
                                                **GOODWIN PROCTER LLP**
                                                901 New York Avenue, N.W.
                                                Washington, DC 20001
                                                Telephone:  (202) 346-4000
                                                Facsimile:   (202) 346-4444
                                                dyoung@goodwinprocter.com
                                                srobertson@goodwinprocter.com
                                                jalbert@goodwinprocter.com

                                                Craig T. Merritt (VSB #20281)
                                                Henry I. Willett, III (VSB #44655)
                                                Counsel for Plaintiff *e*Plus Inc.
                                                **CHRISTIAN & BARTON, LLP**
                                                909 East Main Street, Suite 1200
                                                Richmond, Virginia 23219-3095
                                                Telephone: (804) 697-4100
                                                Facsimile: (804) 697-4112
                                                cmerritt@cblaw.com
                                                hwillett@cblaw.com

---

[25] *Kozlowski* represented an exception to this general rule because the district court had made several serious errors that undermined the plaintiff's case, several of which the Fourth Circuit noted may have in themselves warranted a new trial. *Kozlowski*, 2003 WL 22273073, at *10, 15-16, 18.

Michael G. Strapp (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com

Attorneys for Plaintiff, *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S OPPOSITION TO**
**DEFENDANT LAWSON SOFTWARE, INC.'S MOTION FOR NEW TRIAL**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Daniel McDonald, *pro hac vice*<br>Kirsten Stoll-DeBell, *pro hac vice*<br>William D. Schultz, *pro hac vice*<br>Rachel C. Hughey, *pro hac vice*<br>Andrew Lagatta, *pro hac vice*<br>MERCHANT & GOULD<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 332-5300<br>Facsimile: 612) 332-9081<br>lawsonservice@merchantgould.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW<br>GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>Don.dunner@finnegan.com<br>Erika.arner@finnegan.com | ***Counsel for Defendant Lawson Software, Inc.*** |

_____
*/s/*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com