**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S OPPOSITION TO PLAINTIFF EPLUS'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND**
**INDIRECT INFRINGEMENT, OR IN THE ALTERNATIVE, FOR A NEW TRIAL**

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    LEGAL STANDARDS .........................................................................................3

IV.     SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S NON-
        INFRINGEMENT VERDICT ...............................................................................4

        A.      Substantial Evidence Supports the Jury's Verdict that Lawson
                Did NOT Directly or Indirectly Infringe Claim 3 of the '683
                Patent with Respect to System 2 ............................................................4

        B.      Substantial Evidence Supports the Jury's Verdict that Lawson
                Did NOT Infringe the Cross-Referencing Claims of the '516
                Patent .......................................................................................................6

        C.      Substantial Evidence Supports the Jury's Verdict that Lawson
                Did NOT Infringe the Method Claims .....................................................8

                1.      No Reasonable Jury Could Find that Lawson, or Anyone
                        Else, Directly Infringed the Method Claims .................................8

                2.      A Reasonable Jury Could Readily Find that ePlus failed to
                        Prove Lawson Caused any Third Party to Perform the
                        Method Claims ............................................................................11

        D.      Substantial Evidence Supports the Jury's Verdict that
                Lawson's Systems 1, 2, and 4 Did NOT Directly or Indirectly
                Infringe the Asserted '516 Patent Claims and the Asserted '683
                Patent Claims .........................................................................................12

                1.      A Reasonable Jury Could Conclude that the Item Master
                        Database Did Not Include Multiple Catalogs .............................12

                2.      There Was Substantial Evidence for a Reasonable Jury to
                        Conclude that Lawson's Core Procurement and RSS
                        Software Did Not Permit Selecting Catalogs for Searching....................16

                3.      There Was Substantial Evidence for a Reasonable Jury to
                        Conclude that Lawson's Core Procurement and RSS
                        Software Did Not Permit Searching Less than the Entire
                        Collection of Catalogs.................................................................20

**E.**     **Substantial Evidence Supports the Jury's Verdict that Lawson's Punchout Software Did NOT Directly or Indirectly Infringe the '516 Claims that Require Simultaneous Searching of Multiple Catalogs**................................................................21

**F.**     **ePlus Cannot Rely on the Doctrine of Joint Infringement to Support its JMOL Motion, and the Evidence Failed to Support this Theory**................................................................22

**G.**     **Substantial Evidence Supports the Jury's Verdict that Lawson Did NOT Indirectly Infringe the Non-Infringed Claims**................................26

**V.**     **CONCLUSION** ................................................................30

## I.    <u>INTRODUCTION</u>

The jury found that ePlus failed to meet its burden to prove 27 counts of infringement against Lawson relating to ten of its eleven asserted claims.  ePlus asks this Court to grant JMOL for these counts.  To prevail on its JMOL motion, ePlus has to prove that a reasonable jury would have been compelled by the evidence to find that Lawson committed infringing acts involving every single element of these claims.  However, if a reasonable jury could find that ePlus failed to prove even one portion of one element of a claim, it would be improper for the Court to grant JMOL of direct infringement or indirect infringement as to that claim.  Despite this high burden, ePlus's 30-page JMOL brief is almost entirely devoid of discussion of the actual language of the claims and fails to make any showing on an element-by-element basis.  Further still, many of its representations of the factual record are not supported.

The evidence showed that Lawson had many strong non-infringement defenses:

- The Core Procurement and RSS software configurations did not infringe the '683 patent claims or the '516 patent claims because the Item Master database did not meet the Court's definition of "catalog."

- Item Master was one collection of item information, not multiple collections of item information (catalogs) as required by the claims.

- The Core Procurement and RSS software configurations did not permit a user to select catalogs (or portions of a database) to search and search only those selected catalogs (or portions) as required by all of the asserted '683 patent claims and claims 1, 2, 6, 21, 22, and 29 of the '516 patent.

- Even the lowest level of the UNSPSC hierarchy was not limited to generally equivalent items as required by claims with the converting and cross-referencing claim limitations (claims 3 and 28 of the '683 patent and claims 9, 21, 22, and 29 of the '516 patent).

- The RSS product does not infringe claim 3 of the '683 patent because the software does not provide a means to substitute items, rather human activity is required to perform conversion.

- ePlus did not prove that anyone, let alone a single entity, actually practiced all the

1

steps of any method claims.

- Lawson's actions involving Punchout software did not infringe any of the asserted '683 patent claims or the '516 patent claims because Lawson had no control over the content or functionality of the punchout vendor's website or inventory, yet ePlus relied on the vendor websites to supply claim elements that were otherwise missing.

As demonstrated below, there was substantial evidence for a reasonable jury to find for Lawson on all of these non-infringement theories, and more.

Moreover, there was substantial evidence for a reasonable jury to find that Lawson did not intend to induce or contribute to another's infringement of these claims. ePlus presented no evidence that Lawson intended to cause infringement, which is required for indirect infringement. Indeed, the evidence showed that Lawson did not even know about ePlus's patents until this lawsuit was filed, and in good faith believed its systems, which date back many years before ePlus sued, did not infringe. Indeed, ePlus dropped its claim for willful infringement, at least implicitly conceding it had no proof that Lawson intended to infringe. ePlus likewise did not prove that Lawson was a contributory infringer because the evidence showed that Lawson did not believe its products infringed. Thus, JMOL of indirect infringement would also be improper.

Finally, new trial is not warranted. ePlus's motion should be denied in its entirety.

## II.   <u>BACKGROUND</u>

During trial, ePlus accused the following five configurations of infringing twelve claims of U.S. Patent Nos. 6,023,683 ("the '683 patent"), 6,055,516 ("the '516 patent"), and 6,505,172 ("the '172 patent") (collectively "the patents-in-suit"):

    (1)     S3 Core Procurement (referred to as "System 1");
    (2)     RSS combined with S3 Core Procurement ("System 2");
    (3)     Punchout combined with RSS and S3 Core Procurement ("System 3");
    (4)     EDI combined with S3 Core Procurement ("System 4"), and

2

      (5)     Punchout combined with RSS, EDI, and S3 Core Procurement ("System 5").

(Weaver, Tr. at 795:15-796:22 (attached as Exhibit A)).  The jury found that:

- System 1 did not infringe claims 1 and 6 of the '516 patent;

- System 2 did not infringe claims 3 and 28 of the '683 patent and claims 1, 6, 9, 21, 22, and 29 of the '516 patent;

- Systems 3 and 5 did not infringe claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent; and

- System 4 did not infringe claims 1 and 6 of the '516 patent and claim 26 of the '683 patent.

(Dkt. 600).  As shown below, ePlus failed to prove Lawson infringed these claims.

## III.   LEGAL STANDARDS

Judgment as a matter of law is appropriate *only* if this Court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings.  Fed. R. Civ. P. 50(a)(1); *Konkel v. Bob Evans Farms*, 165 F.3d 275, 279 (4th Cir. 1999).  The evidence should be reviewed in the light most favorable to the prevailing party and all reasonable inferences should be drawn in its favor.   *Ray v. CSX Transp. Inc.*, 189 Fed. Appx. 154, 159 (4th Cir. 2006).  ePlus bore the burden to prove infringement by a preponderance of the evidence, which makes it even more difficult for it to prevail on its JMOL motion.  *Nobelpharma Ab. v. Implant Innovations*, 141 F.3d 1059, 1065 (Fed. Cir. 1998) ("Grant of JMOL in favor of a party bearing the burden of proof may be granted only where (1) the movant "has established [its] case by evidence that the jury would not be at liberty to disbelieve and (2) the only reasonable conclusion is in [the movant's] favor.").

When made after the jury has returned its verdict, a Rule 50 motion may be joined with a motion for a new trial under Rule 59.  Fed. R. Civ. P. 50(b).  Rule 59(a) allows the Court to grant a new trial if it finds the verdict is against the clear weight of the evidence, is based on false

evidence or will result in a miscarriage of justice.  *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).

## IV.   SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S NON-INFRINGEMENT VERDICT

The asserted claims are lengthy and include many detailed elements.  To prove that Lawson either directly or indirectly infringed any of these claims, ePlus had the burden to prove that Lawson's accused software includes every element of each claim.  If a reasonable jury could find that ePlus failed to prove even one portion of one element, it would be improper for the Court to grant JMOL of direct infringement or indirect infringement.  Lawson addresses several elements that the jury could reasonably find were missing, even though only one missing element would be enough to defeat ePlus's motion for JMOL and new trial.

### A.   Substantial Evidence Supports the Jury's Verdict that Lawson Did NOT Directly or Indirectly Infringe Claim 3 of the '683 Patent with Respect to System 2

Claim 3 of the '683 patent requires:  "means for converting data related to a selected matching item and an associated source to data relating to an item and a different source."  This Court defined the function and structure of this element to be:

- Function: "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."

- Structure: "one or more non-catalog databases identifying cross-referenced items, identical items, or generally equivalent items; one or more cross-reference tables or file identifying cross-referenced items, identical items or generally equivalent items; one or more codes corresponding to cross-referenced items, identical items or generally equivalent items; and their equivalents . . . ."

(Markman Order at 48 (Dkt. 204)).  Further, the Court defined the term "converting" to mean "substituting."  (*Id.* at 30).

ePlus argues that the 8-digit commodity-level UNSPSC codes used in Lawson's RSS

4

category search function "enables a user to find similar, generally equivalent or identical items from multiple sources . . . ." (ePlus Brief at 14). ePlus cites only its own expert's testimony to support this argument. However, one expert and two fact witnesses testified that even the lowest level UNSPSC code is not limited to generally equivalent items. (Shamos, Tr. 1817:25-1819:4; Christopherson, Tr. at 1557:24-1558:21; Yuhasz, Tr. at 1703:4-23). The White Paper on which ePlus's expert relied states that the codes do not turn products into commodities, but rather are akin to indicating which products would be in the same section of a grocery store. (PX-11 at 7). ePlus presented no evidence that a Lawson customer ever used UNSPSC codes to select equivalent items. Indeed, all of the customers that testified said that they do not use UNSPSC codes and/or don't even know what they are. (Yuhasz, Tr. at 1709:3-6; Oliver, PX-518A at 22:25-23:2; Matias, PX-520A at 29:3-8). This countervailing evidence shows that a reasonable jury could find that Lawson's RSS configuration (System 2) does not infringe claim 3.

Moreover, ePlus did not prove Lawson's software contains the structure required for the means for converting. Under the court's construction, the function has to be performed by structure such as cross-reference tables or databases. The patent describes databases including "cross references from the Distributor's catalog number to its corresponding vendor's part (catalog) number and to similar corresponding catalog numbers of other vendors (suppliers or distributors) for the same Product." ('683 patent, col. 5:4-8 (PX-001)). Dr. Weaver testified:

> The general idea here is that a particular part number has been entered **into this electronic sourcing system** and that particular part number is not available, but the cross-referencing system using the cross-reference index finds that another vendor's part number is the same or generally equivalent, **and it substitutes** the second part number for the first.

(Weaver, Tr. 564:17-23 (emphasis added)). Dr. Shamos also recognized that means plus function claim elements must be performed by the computer. (Tr. at 2577:23-25 ("Well, I would

5

agree that for the means-plus-function claims, the means isn't a human being.")).

ePlus presented no evidence that Lawson's system includes such structure. Instead, the only substituting that was demonstrated at trial was done by a person without using any cross reference tables or the like. Dr. Weaver described a purported converting process whereby he simply chose to delete an item from his shopping cart and add a different item:

> So now I have both notebook computers in the Lawson shopping cart, and **I'm going to go up here to this X and delete the ThinkPad**. Continue. And like all good software, it asks me, do you really want to delete that, and I say, yes. Okay. Stop. So at this point, I have done the UNSPSC code, found two generally equivalent notebook computers, **chose one, added it to the shopping cart, added the other one to the shopping cart, deleted the first one**. So I've been able to convert one item from one source, the ThinkPad from Office Max, into an equivalent item from another source, the Dell Inspiron here, and having done that, I'm now going to go back and pick another category and find another item to add so that I'll have multiple items in my shopping cart.

(Tr. at 644:2-16 (emphasis added) (discussing (PX-374; PX 376 (attached as PX-376 (CD) to Dkt. No. 758-18))). *See also* (Weaver, Tr. at 652:10-653:3). Lawson's RSS software does not do any item conversions or substitutions using the structure required by the Court's construction or its equivalent. (Shamos, Tr. at 1818:24-1819:2 ("There's no automatic conversion. I can't go and say, if you're out of stock of this product, please give me another one that has the same UNSPSC code. So there's no converting that's going on.")).

Thus, substantial evidence supports the verdict that RSS does not have a means for converting as required by claim 3 of the '683 patent. As such, this Court should deny ePlus's motion for JMOL that System 2 directly or indirectly infringes claim 3 of the '683 patent.

**B.    Substantial Evidence Supports the Jury's Verdict that Lawson Did NOT Infringe the Cross-Referencing Claims of the '516 Patent**

Claims 21, 22 and 29 of the '516 patent require an cross-reference table (emphasis added):

- Claims 21 and 22: "said search-module criteria and **a determination system that located items are generally equivalent**; and wherein said determination system includes **a cross reference table** matching an identification code from a first located

6

item with a second identification code from a second located item . . . ."

- Claim 29:  "**cross reference table** linking a vendor item catalog number from said vendor with an item catalog number from said predetermined third party."

Similarly, claim 9 requires a set of codes indicating generally equivalent items:

- Claim 9:  "a second identification code associated with a second item in a second catalog, said first item and said second item **being generally equivalent**, and wherein a selection of one identification code from one of said first and second catalogs provides the other identification code from the other of said catalogs . . . ."

This Court defined "cross-reference" table to mean:  "a table that links vendors items **determined to be equivalent** between two or more different vendors."  (Markman Order at 26 (emphasis added)).  Nowhere in the '516 or other ePlus patents is the use of UNSPSC codes for any purpose either claimed or mentioned.

ePlus's brief does not quote these claim limitations.  Nor does ePlus provide evidence that they exist in the Lawson systems.  They do not exist in the Lawson systems.   ePlus relied exclusively on the UNSPSC commodity code search within the RSS module to prove its assertion that Lawson's Systems 2, 3, and 5 satisfied the foregoing claim limitations.  (ePlus Brief at 14).  However, there was no evidence that this is a cross reference table.  There is no table of items determined to be equivalent in the Lawson systems.  Dr. Weaver and ePlus cited no structure in the Lawson systems that determined equivalents.  As shown above, substantial evidence showed that UNSPSC codes did not provide generally equivalent items.  (Shamos, Tr. 1817:25-1819:4; Christopherson, Tr. at 1557:24-1558:21; Yuhasz, Tr. at 1703:4-23; PX 11 at 7).  At least because a reasonable jury could find ePlus failed to prove the elements of the claims requiring equivalents and cross-reference tables, this Court should deny ePlus's motion for JMOL that Systems 2, 3, and 5 infringe claims 9, 21, 22, and 29 of the '516 patent.

C. **Substantial Evidence Supports the Jury's Verdict that Lawson Did NOT Infringe the Method Claims**

Pursuant to 35 U.S.C. § 271(a), direct infringement requires *a single party* to perform every step of a claimed method.  *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379-80 (Fed. Cir. 2007); *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005); *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); Jury Instructions (Tr. at 3253:23-24).  Thus, for Lawson to be liable for direct infringement of the method claims, ePlus had the burden to prove that Lawson performed all of the steps of the claimed methods.  The evidence supports the jury's verdict that ePlus failed to meet its burden as to the method claims.

The method claims all require the following steps:

- "maintaining at least two products catalogs on a database containing data relating to items associated with the respective sources;"

- "selecting the product catalogs to search;"

- "searching for matching items among the selected product catalogs;"

- "building a requisition using data relating to selected matching items and their associated source(s);"

- "processing the requisition to generate one or more purchase orders for the selected matching items;"

Claim 26 additionally requires the step of "determining whether a selected matching item is available in inventory."  Claim 28 additionally requires the step of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."  Claim 29 requires both the inventory step from claim 26 and the converting step from claim 28.

1. No Reasonable Jury Could Find that Lawson, or Anyone Else, Directly Infringed the Method Claims

Lawson sells software to customers, who then use the software to procure items from

third party vendors.  ePlus properly spent little time at trial trying to show that Lawson performed the method claims because the customers are the ones who use the software.  Dr. Weaver made only a conclusory statement that Lawson (as opposed to its customers) directly infringed the method claims in the case of that small fraction of Lawson customers who have Lawson host its software applications for them.  (Tr. at 775:3-16).  Yet Dr. Weaver also explained that when Lawson "hosts" a system "the *customer* can go to the Lawson system and use it."  (Tr. 775:3-16).   Lawson does not perform the steps of the method claims when it hosts software—the customer is still the one who actually uses the software to search for items, build requisitions, and generate purchase orders.  As the jury heard, in a hosted environment, "the system is actually still the customer's system."  (Raleigh, Tr. 942:11-13).  Similarly, Dr. Weaver never testified that Lawson performs the method steps by demonstrating its software to its customers.  No Lawson witness testified that Lawson performed the steps of any method claim, and neither Dr. Weaver nor ePlus's brief point to any such testimony.

Because the evidence is lacking that Lawson directly infringed the method claims, this leaves only the possibility that Lawson induced or contributorily infringed the method claims.  Any such finding requires a showing by ePlus of direct infringement by a third party.  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961).  A reasonable jury could readily find that ePlus offered wholly inadequate proof of such direct third-party infringement.

ePlus did not present evidence that a single Lawson customer actually performed all the steps of any method claim.  Dr. Weaver did not even suggest there was such proof.  Instead, almost all of Dr. Weaver's testimony regarding the method claims was directed to whether Lawson's *customers* ***could*** perform the steps of the method claims.  For example, with respect to the method step of "maintaining at least two product catalogs on a database containing data

9

relating to items associated with the respective sources," Dr. Weaver testified that the customers "can" perform this step.  (Tr. at 799:12-16).  Likewise, Dr. Weaver opined that the customers "can" select the product catalogs to search.  (Weaver, Tr. at 799:12-23 ).  Dr. Weaver also opined that customers had "the ability to, **capability** of building a requisition . . . ."  (Weaver, Tr. at 800:14-21 (emphasis added)).

To prove infringement of a method claim, ePlus must prove actual performance of all the steps.  It is not enough to show that a method *could have been* performed on a system.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Joy Tech., Inc.* v. *Flakt, Inc.*, 6 F.3d 770, 773-774 (Fed. Cir. 1993) (recognizing that the sale of the apparatus that is capable of performing a claimed method is not a direct infringement of a method claim because a method claim is directly infringed *only* when the method is actually performed).  ePlus ignored this requirement.  Dr. Weaver's testimony about the method claims related to whether the software was *capable of* performing the method steps, but did not prove that anyone--customers, Lawson, or anyone else-- actually performed these steps.  *Id*.  This is not sufficient to prove direct infringement of a method claim.  *Id.*

For example, claim 26 of the '683 patent requires the step of "determining whether a selected matching item is available in inventory."  ePlus argues that no reasonable jury could find that the EDI application of System 4 "does not include the capability to determine availability of an item in inventory."  (ePlus Brief at 15).  That capability, even if it exists, is insufficient to prove anyone actually performed the method of claim 26.

Moreover, ePlus fails to identify who the purported direct infringer is in this scenario.  In fact, ePlus's own expert testified that it is the third party vendor (not Lawson or the customer) who determines inventory availability in an EDI 855 PO acknowledgment.  (Weaver, Tr. at

604:12-17 ("The purchase order acknowledgment which is EDI 855, and that's where there is the opportunity **for the supplier to tell the customer** whether or not the order can be filled and whether or not the items that are being ordered are available in inventory.") (emphasis added)). However, ePlus did not even try to prove that the vendors perform other steps of this method claim, such as searching for matching items and building a requisition. Therefore, there was not sufficient evidence at trial to prove that any single entity performs every step of claim 26.

Without sufficient proof that either a customer or a vendor is a direct infringer, there can be no indirect infringement by Lawson. *Aro Mfg.*, 365 U.S. at 341-42. A reasonable jury readily could have found that ePlus failed to prove that Lawson, or anyone else, actually practiced all of the steps of any of the method claims. Without a direct infringer, Lawson cannot infringe indirectly. Thus, ePlus's motion for JMOL that System 2 (core procurement) directly or indirectly infringes claim 28 of the '683 patent and System 4 (core procurement + EDI) directly or indirectly infringes claim 26 of the '683 patent should be denied.

2.  A Reasonable Jury Could Readily Find that ePlus failed to Prove Lawson Caused any Third Party to Perform the Method Claims

The above shows ample support for a jury finding that ePlus failed to prove the required direct infringement of a method claim either by Lawson or a third party customer or vendor. That is enough to defeat ePlus's motion with respect to the method claims. There are many more reasons those findings are justified.

For example, ePlus asserts that circumstantial evidence may support findings that Lawson induced customers to perform the method steps. (ePlus Brief at 4). However, ePlus cites only to general testimony about Lawson helping customers load systems or use the system. This evidence did nothing to show that customers performed the *specific steps required by the method claims*. Moreover, the evidence showed that Lawson customers met their procurement needs in a

variety of configurations.  ePlus did not and cannot show that any particular method was necessarily used by customers.  For example, each of the method claims requires either converting, checking inventory, or both.  The customers who testified were not shown to need or even use either of these functions.  (Yuhasz, Tr. at 1709:3-6; Oliver, PX-518A at 22:25-23:2; Matias, PX-520A at 29:3-8 (all testifying that they did not use or even know what UNSPSC codes are)).  Therefore, a reasonable jury could readily find that ePlus's purported circumstantial, general proof that Lawson assisted customers failed to show that Lawson induced or contributed to anyone to perform each of the required steps of the method claims.

Moreover, as discussed in the final section of the brief, a reasonable jury could have and indeed should have found that ePlus failed to prove that Lawson had the intent to cause infringement.  This is a necessary element of indirect infringement, and thus this lack of proof is a further reason to deny ePlus's motion with respect to the method claims.

**D.**   **Substantial Evidence Supports the Jury's Verdict that Lawson's Systems 1, 2, and 4 Did NOT Directly or Indirectly Infringe the Asserted '516 Patent Claims and the Asserted '683 Patent Claims**

**1.**   A Reasonable Jury Could Conclude that the Item Master Database Did Not Include Multiple Catalogs

All of the asserted claims of the '516 patent require "a collection of catalogs of items stored in an electronic format . . . ."  All of the asserted claims of the '683 patent require: "at least two product catalogs containing data relating to items associated with the respective sources . . . ."  This Court interpreted "catalog" to mean, in part:  "an organized collection of items and associated information, published by a vendor (which includes suppliers, manufacturers, and distributors) . . . ."  (Markman at 11).

Lawson showed that its Item Master database (that includes the item master tables, vendor item tables, and item location tables) does not meet this Court's definition of "catalog."

12

This is not an "improper" argument as ePlus asserts. It is based on the evidence, including testimony of Lawson witnesses and customers that the Item Master is not a catalog and does not meet the court's definition of catalog.

For example, Lawson witnesses testified that even if some of the data that ends up in the Item Master database originated from an organized collection of items published by a vendor, it is fundamentally changed before it is loaded into Item Master such that Item Master is not an organized collection of items published by a vendor. The process of importing information into Item Master is called Extraction, Transformation, Load (the "ETL procedure"). (Christopherson, Tr. at 1532:11-1534:10; 1538:9-1543:20). The transformation step involves selecting only those items from the vendor's file that the customer wants to purchase, adding additional information such as inventory availability and additional data fields specific to Lawson's software, deleting information from the vendor that the customer does not want, and modifying information from the vendor, such as the item description. *See id.* After the transformation process is finished, the transformed data is loaded into different tables within the Item Master database. *See id.*

Lawson additionally showed that the Item Master is only one collection of items, so it could not meet the requirement for multiple catalogs that shows up in at least 11 of the 12 asserted claims. (All of the '516 patent claims require "a **collection of** catalogs of items stored in an electronic format . . . ." All of the asserted claims of the '683 patent require: "**at least two** product catalogs containing data relating to items associated with the respective sources . . . .").

For accused Systems 1, 2, and 4, ePlus argued that Lawson's Item Master database (which included item master tables, vendor item tables, and item location tables) constituted multiple catalogs. However, no fact witness supported this theory. *See, e.g.,* (Christopherson, Tr. at 1525:5-1527:25; 1532:11-1543:20; Lohkamp, Tr. 1000:13-17; 1084:5-1088:21)) The only

witness that testified in support of this point was ePlus's paid expert, Dr. Weaver.  His testimony about what constitutes multiple catalogs was so broad as to at least lack credibility for a reasonable juror, if not completely defy logic:

> Q Is it your understanding that any search you could do on the Lawson item master product description for any keyword search in itself could generate another catalog?
>
> A Yes, pretty much.
>
> Q So if you had searched for the word "blue," you get back results from the Lawson item master that would be the catalog of blue things?
>
> A Yes.
>
> Q Or things with the word "blue" in their description?
>
> A It would.
> . . . .
>
> Q In your opinion, each one of them is a separate catalog; is that right?
>
> A Yes.
>
> Q So is there really any limit to the number of catalogs in the Lawson item master the way you looked at it?
>
> A No

(Weaver, Tr. at 870:17-871:14); *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009); ("We decline to require the jury to accept the testimony of KCI's lone infringement witness, Dr. Orgill. The jury was instructed that it was not required to accept any particular witness's testimony, and the Fifth Circuit has made clear that the jury is entitled to disbelieve a party's expert if it chooses.").

Other witnesses testified that Item Master did *not* include multiple catalogs.  For example, Dr. Shamos testified:  "I think, 11 out of the 12 claims, asserted claims require catalogs, and I used the construction that was propounded by the Court for the word catalog and

didn't find catalogs in the Lawson system." (Tr. at 1738:5-10; 1747:1-1756:17 (explaining why Item Master is not multiple catalogs).

ePlus misquotes several witnesses to try to prove its point. (ePlus Brief at 9-11). For example, contrary to ePlus's assertions, none of Lawson's customers testified that they maintain thousands of supplier catalogs within their Lawson Item Master database. Bill Yuhasz testified that his Item Master had items associated with 10,000 *vendors*, not "10,000 vendor catalogs" as ePlus claims. (Tr. 1707:20-23) ("Q And isn't it correct that those 70,000 to 80,000 items are associated with approximately 10,000 different vendors; is that correct? A Yes. In rough numbers."). Indeed, he testified that his Lawson system did not have product catalogs, and that was why Novant was looking to replace Lawson's software with a competitor's product. (Tr. at 1692:15-23). Lawson's other customers similarly did not testify that they have multiple product catalogs. (Oliver, PX-518A at 17:4-6; Matias, PX-520A at 19:9-13).

There was testimony at trial that Lawson's Item Master database was basically a customer-created, single list of items (and associated information) that a customer might want to buy. (Lohkamp, Tr. at 1000:6-17). There was testimony at trial that the prior art RIMS system also included a single list of items a customer might want to buy, called a "Parts Master." (Momyer, Tr. at 2109:25-2111:5). Like the Item Master, the RIMS Parts Master database had items selected by the customer and associated with third party vendors. (Shamos, Tr. at 2508:21-2509:25; Momyer, Tr. at 2202:17-19). Consistent with Lawson's showing that the Item Master is not a collection of catalogs as claimed, one of ePlus's key witnesses, inventor Doug Momyer, testified that that the RIMS's Parts Master was *different from* the collection of catalogs required by the patent claims in this case. (Momyer, Tr. at 335:15-337:24). At trial, Dr. Shamos testified that Item Master was essentially the same as RIMS' Parts Master. (Tr. at 2427:22-2428:11;

2508:21-2509:25).

Finally, in an attempt to cure its failure to meet its burden of proof on this issue, ePlus resorts to the argument that all it had to prove was that Item Master was "reasonably capable" of including multiple catalogs.  Not true.  As the jury was instructed, the reasonably capable test relates *only* to claim elements that recite a capability.  (Jury Instructions, Tr. at 3254:23-3255:8). Indeed, in those instances in which the Federal Circuit has found that a product that is reasonably *capable* of infringing the asserted claims of the patent(s) in suit, the *claims themselves* described capabilities as elements.  *Finjan,* 626 F.3d at 1204 .  In *Finjan,* the asserted claims at issue recited limitations that were drawn to a capability, such as: "a logical engine *for preventing* execution," "a communications engine *for obtaining* a Downloadable," and "a linking engine . . . *for forming* a sandbox package . . . ."  *Id.* (emphasis in original).

Here, the claims do **not** recite a system "capable of" storing catalogs (e.g. a database for storing catalogs).  Instead, the claims require "a collection of catalogs" or "two or more catalogs" – *actual catalogs*.  Thus, ePlus's arguments that Item Master was *capable of* incorporating multiple catalogs invite legal error, are irrelevant, and do not warrant JMOL of infringement.

In sum, plenty of evidence produced at trial would allow a reasonable jury to decide that Lawson's Item Master did not constitute multiple catalogs.  For at least this reason, this Court should deny ePlus's JMOL for infringement and new trial request for all of the asserted '516 claims.

> 2. <u>There Was Substantial Evidence for a Reasonable Jury to Conclude that Lawson's Core Procurement and RSS Software Did Not Permit Selecting Catalogs for Searching</u>

Most of the asserted claims include limitations related to selecting catalogs to search and searching the selected catalogs:

- Claim 3 of the '683 patent requires:
  - "means for selecting the product catalogs to search"
  - "means for searching for matching items **among the selected product catalogs**"

- Claims 26, 28, and 29 of the '683 patent require:
  - "selecting the product catalogs to search"
  - "searching for matching items **among the selected product catalogs**"

- Claims 1, 2, 6, and 29 of the '516 patent require:
  - "a catalog selection protocol, said catalog selection protocol relying on said first set of predetermined criteria to select less than said entire collection of catalogs, and including matching a vendor identification code with a subset of said collection of catalogs, wherein said subset of catalogs includes both a vendor catalog from a predetermined vendor and a second catalog from a predetermined third party . . . ."
  - "a search program, said search program relying on said second set of criteria to select specific items **from said catalogs determined from said catalog selection protocol**"

- Claim 21 and 22 of the '516 patent require:
  - "a catalog collection searching module, said searching module including a collection of catalogs of items stored in an electronic format"
  - "a catalog selection criteria used to select **less than said entire collection**"

As shown from the bolded text above, the claims require that the search for matching items be done *only on* the selected subset of catalogs, not the entire catalog database. (Weaver, Tr. at 722:19-23 ("Then there's a catalog selection protocol whereby you use the first predetermined criteria to select less than all of the catalogs. And then you use the second predetermined criteria to search within that subset in order to find matching items."); Shamos, Tr. at 1768:5-11 ("The selecting step is just the selecting step, but then the search is then restricted to those catalogs that are selected.")).

For accused Systems 1, 2, and 4, ePlus argued that Lawson's Item Master database (specifically item master tables and vendor item tables) constituted a collection of catalogs and a user could select catalogs to search by doing a keyword search.  (ePlus Brief at 11; Weaver, Tr. at 925:5-16).  Dr. Weaver's definition of Lawson's catalog database did *not* include an index.

Yet, he testified that the index "*rather than the full database*" is used to perform the claimed searching functions, because such searches are "*faster than* sorts or searches performed on the *actual database*."  (Tr. at 706:13-16 (emphasis added)).  There is no testimony that Lawson's system searches portions of the *actual database*, let alone portions of that database that have already been selected.  To the contrary, the testimony was that the purported Lawson Item Master database is *not* searched *at all*.  (Weaver, Tr. at 925:5-16, 706:13-16).  Dr. Weaver testified that the index as a whole, not mere selected portions, are searched.  (Tr. at 706-707).  Thus, there is no Lawson database which has only selected portions searched.  Moreover, while the index may represent information in the whole Item Master database, it is not selected catalogs from the database and never represents information in only selected catalogs, whether or not the database is wrongly considered to be multiple catalogs.

ePlus relied on a misleading demonstration by Dr. Weaver to prove infringement of this claim element.  Dr. Weaver's demonstration showed two searches of Item Master – the first one searched for the keyword "Dell" and the second one searched for the keywords "Dell, Dimension."  He tried to portray the second search as a more "refine[d]," "more specific search inquiry" than the first search, in an attempt to convince the jury that Lawson's system would first select catalogs, then search *only* within those catalogs:

> Yes, we're going to see searching for the first criteria of Dell. And then from those catalogs, we'll see that there are multiple vendors for Dell. And then we'll refine the search with a Dimension 8100, and we'll find that there are multiple vendors for a more specific search inquiry, and that satisfies the elements of Claim One of the '516.

(Weaver, Tr. at 725:18-24).  As noted above, claim 1 of the '516 patent requires "a search program, said search program relying on said second set of criteria to select specific items **from said catalogs determined from said catalog selection protocol.**"

Dr. Shamos showed that this demonstration was misleading.  Dr. Weaver's second search

was not a search within the first search or within selected catalogs, but rather Dr. Weaver

conducted two separate searches of the index for the entire Item Master database.  Thus, Dr.

Weaver's demo did not show Lawson's systems met the requirement of searching within

selected catalogs.  Dr. Weaver's demo showed what keywords were retrieved in the search

("Dell", or "Dell, Dimension"), it did not show what gets searched.  What gets searched is all of

item master:

> Q So is it your understanding that these claims require that you select the catalogs to
> search and then search them?
>
> A Well, the claims do require that. The selecting step is just the selecting step, but then
> the search is then restricted to those catalogs that are selected.
>
> Q  In the Lawson keyword search, does it not have that process then, is that what you're
> saying, of selecting catalogs to search and then searching them?
>
> A  That's correct. There's only item master.

(Shamos, Tr. at 1767:12-1768:11).

Moreover, Dr. Weaver's demo was misleading because he portrayed searches as searches

by vendor, when in fact he was simply doing word searches of item descriptions.   For example,

he portrayed a "Dell, Dimension" search as a vendor search when in fact the results were merely

items that had that keyword phrase in the item description, not a vendor field.  (Shamos, Tr. at

1841:4-1847:11; Lawson closing, Tr. at 3190:23-3191:22).  This was simply a keyword search,

which could not indicate whether the search results came from a particular vendor or not.  The

fact that ePlus resorted to misleading testimony only confirms that a jury could have readily

found that ePlus failed to meet its burden of proof, and also defeats the request for a new trial.

None of the testimony or exhibits cited by ePlus at pages 11-12 of its brief proves that

Lawson's Core Procurement or RSS software permitted a user to select catalogs to search and

search *only* selected catalogs.  Rather, this evidence demonstrates only that the index for the

entire Item Master may be searched using various criteria.  *See, e.g.,* PX-170 at L0068883-84;

PX-215 at L0096172; PX-280 at LE00206853; PX-98 at L0045505; PX-127.

As such, there was enough evidence for a reasonable jury to find that Lawson's Systems

1, 2, and 4 did not meet the selecting catalogs and searching selected catalogs elements of claims

3, 26, 28, and 29 of the '683 patent and claims 1, 2, 6, 21, 22, and 29 of the '516 patent.

> 3. <u>There Was Substantial Evidence for a Reasonable Jury to Conclude that Lawson's Core Procurement and RSS Software Did Not Permit Searching Less than the Entire Collection of Catalogs</u>

Claims 1, 2, 6, 21, 22 and 29 of the '516 patent require selecting "less than the entire

collection of catalogs" for searching.  The patents describe providing a list of catalogs, selecting

the ones the user wants to search, and then restricting the search to the selected catalogs:

**10**

When multiple catalogs are present in catalog database **36**, search program **50** contains a function associated with the catalog symbol of the footer bar and screen window (not shown) for selecting catalogs to be searched. For example, the following choices might be available:

1. Fisher General Catalog 93–94;
2. Fairmont Supplies Catalog;
3. NIST Standards Catalog; and
4. Promega Biological Research Products Catalog.

Fairmont and NIST catalogs list products not in the Fisher General Catalog, but many of the products listed in the Promega catalog are also listed in the Fisher General Catalog (identified by corresponding Fisher catalog numbers). If searching for a molecular biology product, the user would select the Fisher and Promega catalogs. TV/2 search pro-

gram **50** would then concatenate those two catalogs to perform a keyword, catalog number or other subject search and generate a Hit List of pages (panels) from both catalogs where the searched-for items were found. Similarly, the user might select the Fisher and NIST catalogs when searching for quality control standards or might select the Fisher and Fairmont catalogs when searching for supplies.

If the search is initiated from requisition/purchasing program **40**, for example from the Requisition Management data screen **110** of the Fisher RIMS system, then the catalogs searched can be determined by the information provided. If, for example, Promega is indicated as the desired requisition item vendor, interface **60** would direct TV/2 search program **50** to search the Fisher and Promega catalogs. If Fairmont is indicated as vendor, the interface would direct TV/2 to search the Fairmont and Fisher catalogs. If no catalog delimiting information is entered for the item desired to be requisitioned, interface **60** would be set up to search only the Fisher catalog or, alternatively, to search all catalogs in catalog database **36**.

('683 patent at cols. 9-10 (PX-001)).

The evidence showed that none of Lawson's systems provided for such searching.  As

described in the preceding section with regard to Dr. Weaver's Dell, Dimension demonstration,

when Item Master is searched in RSS or in the Core Procurement RQ module, an index of all of

the item records in Item Master are searched.  It is not possible to search for items in only

selected portions or particular "catalogs" for items from Dell.  Analogizing the Item Master to a

book with an index (as did Dr. Weaver), Dr. Shamos testified that the Lawson index search still effectively searches "the entire book," not merely chapters or selected portions of the book. (Tr. at 1812:9-22). As such, there was sufficient evidence for a reasonable jury to conclude that Systems 1, 2, and 4 are not capable of searching less than all of a collection of catalogs or selected portions of a database or set of catalogs. This lack of evidence supports the jury's findings that asserted claims of the '516 patent were not infringed.

E. **Substantial Evidence Supports the Jury's Verdict that Lawson's Punchout Software Did NOT Directly or Indirectly Infringe the '516 Claims that Require Simultaneous Searching of Multiple Catalogs**

Claims 1, 2, 6, and 29 of the '516 patent, each of which recites an electronic sourcing system, require (emphasis added):

> a catalog selection protocol, . . . relying on said first set of pre-determined criteria **to select** less than said entire collection of catalogs, **and including** matching a vendor identification code **with a subset of said collection of catalogs**, wherein said subset of catalogs **includes both a** vendor catalog . . . **and a second** catalog . . . ; [and]
> a search program, . . . relying on said second set of criteria to select specific items from said catalogs determined from said catalog selection protocol.

On its face, these elements require that the electronic sourcing system have a protocol (or "procedure") to select less than an entire collection of catalogs based on certain criteria, where the selection includes a subset of the collection of catalogs that includes at least two catalogs (i.e. a vendor catalog and a second catalog), and a search program to search the subset of selected catalogs to select items based on a second set of criteria.

These elements are convoluted and unclear, but the patent appears to describe the catalog selection protocol in the following passage, in which the system selects certain catalogs to search based on selection of a desired vendor:

> If the search is initiated from requisition/purchasing pro-
> gram **40**, for example from the Requisition Management
> data screen **110** of the Fisher RIMS system, then the catalogs
> searched can be determined by the information provided. If,
> for example, Promega is indicated as the desired requisition
> item vendor, interface **60** would direct TV/2 search program
> **50** to search the Fisher and Fairmont catalogs. If no catalog
> delimiting information is entered for the item desired to be
> requisitioned, interface **60** would be set up to search only the
> Fisher catalog or, alternatively, to search all catalogs in
> catalog database **36**.

('516 patent, col. 10:12-22).  Again, ePlus fails to even recite these claim elements, let alone

show why a jury would have been compelled to find the elements present in Lawson's systems.

The evidence failed to show that any of the accused Lawson systems have such a catalog

selection protocol or search program.  None of the cited testimony at page 19 of ePlus's Brief

states that Lawson's Punchout configurations select catalogs based on any criteria.  Likewise,

none of the cited testimony at page 19 of ePlus's Brief states that Lawson's Punchout

configurations can search catalogs selected by such a protocol.  For example, the cited

Christopherson testimony relates to how many items may be stored in Item Master, but says

nothing about searching.  (Tr. at 1621:16-1622:10).  The cited Lohkamp testimony says only that

RSS has a "search catalog" drop-down menu.  (Tr. at 1012:18-1013:2).  ePlus did not put on any

evidence to show that catalogs are selected or searched pursuant to any criteria or protocol.

Therefore, JMOL that Systems 3 and 5 infringe claims 1, 2, 6, and 29 of the '516 patent should

be denied, as should ePlus's request for a new trial.

### F.    ePlus Cannot Rely on the Doctrine of Joint Infringement to Support its JMOL Motion, and the Evidence Failed to Support this Theory

ePlus' motion effectively concedes that Lawson does not create or maintain the so-called

"external catalogs" located on punchout vendor's websites, but argues that Lawson exercises

direction and control over the vendors who purportedly do maintain these catalogs.  (ePlus Brief

at 16-17).  ePlus thus seeks to invoke the limited "joint infringement" exception to the

requirement that a single party perform all of the steps of a claimed method or use all of the

elements of a claimed system to be held liable for direct infringement.

Joint infringement only occurs in situations where the actions of multiple parties combine to perform all steps or elements of a claim *and one party* exercises "control and direction" over the entire process or system such that every step or element is attributable to the controlling party. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324 (Fed. Cir. 2008) (citing *BMC*, 498 F.3d at 1380-81); *Golden Hour Data Sys. v. emsCharts, Inc.*, 614 F.3d 1367, 1381 (Fed. Cir. 2010) (applying the theory of joint infringement to system claims).

ePlus cannot rely on this doctrine because it waived it. At the close of ePlus's infringement case, Lawson moved for judgment as a matter of law under Rule 50(a) on the issue of joint infringement arguing that ePlus did not meet it burden to prove that Lawson exercises "control and direction" over the punchout vendors such that every step or element they perform is attributable to Lawson. (Tr. at 1365:10-17). In response, ePlus indicated to the Court that it did not intend to pursue a joint infringement theory in this case. (Tr. at 1379:12-24; 1382:10-1384:10 ("THE COURT: But you didn't have that theory, and you told me you didn't have the joint infringement theory under the direct infringement . . . .")). The Court found ePlus had conceded joint infringement in response to Lawson's Rule 50(a) motion:

```
1        THE COURT:  You are through.  You don't have any
2  joint infringement claim under anything.  That's what you told
3  me, and that's it.  Sit down.  Have a seat.  That's it.
```

(Tr. at 1384:1-3).

Consistent with the waiver, although both parties originally proposed jury instructions on joint infringement and both objected to the other's proposed instructions (Dkt. 511 at 32; Dkt. 467 at 24; Dkt. 512 at 23; Dkt. 523 at 77-79), neither party requested an instruction on joint infringement at the final jury instruction conference. As a result, the Court did not include a

joint infringement instruction in its final jury instructions.

ePlus may not challenge the jury's findings by relying on a theory never presented to the jury. Joint infringement cannot support ePlus's argument that JMOL should be granted that Lawson's Punchout Systems 3 and 5 infringe the asserted claims of the '516 patent.

In any event, substantial evidence demonstrated that Lawson did not have the control over the punchout vendors required for joint infringement. For example, all of the '516 claims require "a collection of catalogs of items stored in an electronic format . . . " and the search program recited above. The evidence amply supported a conclusion that ePlus failed to prove that Lawson controlled whether punchout vendors provided catalogs or a search program:

- <u>Dr. Weaver</u>: "Q: You do understand, don't you, Dr. Weaver, that Lawson doesn't dictate what vendors make available to customers when they are a Punchout partner? A: I think that's right." (Tr. at 875:4-7).

- <u>Dr. Weaver</u>: "Q: With the Stapleslink.com website, who is in charge of loading up a list of products on that website? A: Staples is in charge of the content displayed on the website. Q: Does Lawson have any say in what content Staples displays at that website? A: I don't know." (Tr. at 877:25-878:6).

- <u>Keith Lohkamp</u>: "Q: Does Lawson control the content or functionality of a punchout vendor's website? A: No, we do not. . . ." (Tr. at 1131:5-1135:14).

Similarly, Lawson does not suggest, let alone mandate, that the punchout vendors have any specific searching functionality. (Weaver, Tr. at 878:11-17; Lohkamp, Tr. at 1135:12-1140: 13).

ePlus's motion argues that Lawson controls the punchout vendors because punchout users need Lawson products to use Punchout, and because the user remains connected to Lawson's system at all times. Motion at 16. These allegations do not prove that Lawson controls those aspects of punchout vendors that *specifically* relate to the claim elements not provided by Lawson. Once again, ePlus's analysis fails to tie the evidence to particular claim elements. Whether a program is needed for connecting to a vendor is a very different question

from whether the maker of the program controls the vendor on the other end of the connection.
Similarly, agreeing on a format of messages, especially when that format is an industry standard
like cXML, does not mean one party controls whether another party provides certain content,
uses multiple catalogs or selection protocols, or invokes a particular search engine. (Lohkamp,
Tr. at 1132:2-1135:14) ("[Q] Q Does Lawson select the user name or password that's sent in this
cXML message?  A No, we do not.  Q Who does that?  A The customer in combination with the
vendor. . . . Q  Does Lawson control the content of that XML message that the vendor's website
sends back? A No. . . .").  Thus, ePlus failed to show that Lawson has control over whether third
party vendors or others provide the required claim elements.

ePlus cites Lawson contracts with some Punchout vendors, but these  contracts similarly
related only to the communication format used by the customer's Lawson system and the
punchout vendor's system.  By their express language the contracts expressly do not control the
content or functionality of these third party websites.  (Keith Lohkamp, Tr. at 1020:14-23).
These contracts provide specifically that:

- "[E]ach party shall contract for its own products and services directly with customers." (PX-190 at ¶3.3).

- "[E]ach party shall bear no obligation to the customer whatsoever with respect to products or services of the other party."  (PX-190 at ¶ 3.3).

- "The Parties are each independent contractors and neither Party shall be, nor represent itself to be, the . . . legal partner, joint venturer, server, agent, fiduciary or legal representative of the other Party for any purpose whatsoever.  Neither Party is granted any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of the other party, or to bind the other Party in any matter or thing whatsoever, including, without limitation, the right or authority to obligate the other Party to accept or deliver any order, or to sell or refuse to sell any customer. . . ."  (PX-190 at ¶ 9.1).

Thus, even if ePlus had properly pursued a joint infringement jury instruction, a reasonable jury
would have found that the requisite control was lacking for joint infringement.

25

Because (1) Lawson, itself, does not provide all of the elements of the asserted '516 patent claims; (2) ePlus waived its joint infringement claim, (3) the jury was not asked to determine joint infringement, and (4) substantial evidence shows that Lawson did not have the required control over third parties to find joint infringement with respect to the claim elements, this Court should deny ePlus's JMOL motion that Systems 3 and 5 infringe claims 1, 2, 6, 21, 22, and 29 of the '516 patent, and deny the new trial request.

### G.  Substantial Evidence Supports the Jury's Verdict that Lawson Did NOT Indirectly Infringe the Non-Infringed Claims

As previously discussed in Lawson's JMOL arguments during trial, the jury did not have a legally sufficient basis to find that Lawson indirectly infringes any claims.  (Dkt. 575 at 10-14). First, there is no indirect infringement because there is no direct infringer.  (*Id*).  Further, the legal requirements for indirect infringement were not met.  (*Id*).  That is still the case and Lawson incorporates its earlier arguments by reference.

Contributory infringement requires proof that the accused infringer offers a "component of a patented machine . . . *knowing the same to be especially made or especially adapted for use in infringement of such patent*, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c) (emphasis added).  The Federal Circuit has instructed that for this requirement to be met, "plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing'". *Cross Medical Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). The Supreme Court recently announced in *Global Tech* that inducement under 271(b) also requires knowledge of the patent that is infringed, and further requires "knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, __ U.S. __, 2011 U.S. LEXIS 4022, at *20-21 (Sup. Ct. May 31, 2011).

The decisions in *Cross Medical* and *SEB* show that, as a matter of law, Lawson cannot be liable for induced or contributory infringement because it did not know about the patents before this lawsuit was filed.  While *SEB* indicates that knowledge can be demonstrated through willful blindness, ePlus does not cite any evidence that would present a plausible basis to infer willful blindness, which would require at a minimum that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact" (*Id.* at *26-27).  ePlus did not allege, let alone present any evidence to show that Lawson took any deliberate actions to avoid learning of ePlus's patents.  Indeed, ePlus accused Lawson systems dating back to 2002.  All Lawson witnesses have testified that Lawson had no knowledge of the patents-in-suit or any possible infringement of the patents before this lawsuit was filed.  (Christopherson, Tr. at 1569:25-1570:4; Lohkamp, Tr. at 1079:6-9).  Unlike the facts of the *SEB* case, there are no allegations in this case that Lawson had any access to ePlus's patented products, copied any aspect of those products, or reverse-engineered any aspect of the ePlus products to make its products.  Neither Dr. Weaver nor any other witness testified that Lawson intended to induce direct infringement.

The jury in this case was instructed using the old Federal Circuit standard that required mere deliberate disregard and did not require such "active efforts" to avoid knowing about the infringing nature of the activities.  The Supreme Court's analysis leaves no doubt that this Federal Circuit standard was lower, overruled, and wrong.  (Jury Instruction No. 26).[1]  But even under the old, lower standard for indirect infringement, ePlus cannot establish the requisite intent to infringe because the only evidence at trial demonstrated that Lawson reasonably believed there was no infringement.  (Christopherson, Tr. at 1572:5-1577:3).  During trial, Lawson's

---

[1]      Lawson incorporates its detailed discussion regarding the change in law caused by the *SEB* case from its Memorandum in Support Defendant's Motion to Modify/Clarify Injunction (Dkt. 750) and its Reply Memorandum in Support of Motion to Modify and Clarify the Injunction (filed concurrently herewith).

Director of Product Development testified that it was his lay opinion that Lawson was doing something different than the patents.  (Christopherson, Tr. at 1575:23-1577:3).  Moreover, Lawson reasonably defended itself at trial and argued that its products did not infringe, demonstrating to the jury that it did not believe that its products infringed ePlus's patents.  The evidence at trial demonstrated that Lawson did not even learn of the patents-in-suit until ePlus filed this lawsuit in May 2009.  Further, ePlus dropped its willfulness claim after trial, at least implicitly acknowledging that evidence could support a finding that Lawson lacked intent to infringe.  (Tr. at 3295).

ePlus cites cases in support of the proposition that "[c]onduct such as advertising infringing uses, instructing how to engage in infringing uses, demonstrating infringing uses, and recommending infringing uses, is strong evidence of **specific intent to cause the acts** that constitute direct infringement."  (ePlus Brief at 5 (emphasis added)).  Mere intent to cause the acts constituting direct infringement, however, is insufficient to support a claim of induced infringement.  *Global-Tech,* 2011 U.S. LEXIS 4022, at *21.  Rather, specific intent for indirect infringement requires that the inducer persuade another to engage in conduct that the inducer *knows* is infringement.  *Id.*  ePlus improperly invites the Court to apply the erroneous legal standard rejected in *SEB*.

Misapplying the law yet again, ePlus argues that a desire to profit from sales of products that might be used to infringe may show intent to cause direct infringement.  ePlus cites *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (U.S. 2005) to support its argument.  This copyright case involved two defendants who distributed free software that allowed users to share *exact copies* of other people's music and movies that were clearly covered by copyright.  Moreover, the companies had actively encouraged copyright infringement.  *Id.* at 939.  In light of these

unique factual circumstances, the Court found that the commercial benefit of selling advertisements in this situation may be indicative of unlawful intent because "the commercial sense of [the defendants'] enterprise turns on high-volume use, which the record shows is infringing." *Id.* at 940. Here, in contrast, Lawson did not facilitate the sale of copies of ePlus's products. Lawson developed its products independently, long before it even knew about ePlus's patents. No case stands for the proposition that ePlus extols, namely that the fact that an accused infringer makes a profit on its software proves intent to knowingly cause others to infringe a patent. The argument should be rejected.

ePlus erroneously argues that the jury may consider the absence of an opinion of counsel to show intent for indirect infringement. There was **no absence** of opinions in this case. Lawson obtained opinions. It elected not to waive attorney-client privilege for these opinions. As the Court already ruled, the failure to disclose the opinion of counsel is not relevant to the question of indirect infringement and should not have been disclosed to the jury. (Tr. at 1869:8-1871:17); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004), *overruled on other grounds by In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (holding if an accused infringer obtains an opinion of counsel and does not waive the attorney-client privilege, the patentee cannot then use that fact to suggest liability). Indeed, the fact that ePlus improperly questioned Lawson witnesses before the jury about Lawson's opinion of counsel is reason enough to deny ePlus's requests for JMOL and new trial, as ePlus must have known that the law precludes use of a party's decision to assert privilege as to opinions obtained to prove intent.

As such, substantial evidence does not support a verdict that Lawson had the requisite intent to commit indirect infringement.

Finally, with regard to contributory infringement, ePlus bore the burden to prove the absence of non-infringing uses.  Its only evidence on this point was conclusory sentences from Dr. Weaver.  (Tr. at 775:17-776:23; 836:24-837:13).  Indeed, Dr. Weaver's testimony infers that if only one vendor catalog is loaded, this would be a non-infringing use.  Additionally, Dr. Weaver relied exclusively on UNSPSC commodity codes in RSS to prove infringement of the converting and cross-reference table claims.  However, none of the customers who testified said that they actually used these codes.  This is an example of another non-infringing use.  There was sufficient evidence for a reasonable jury to find that ePlus had not proven all of the elements of its contributory infringement claims.

For these reasons, ePlus's motion for JMOL and new trial on indirect infringement should be denied.

## V.   CONCLUSION

For all of the foregoing reasons, Lawson respectfully requests that this Court deny ePlus's Motion for JMOL for infringement and adopt the jury's noninfringement findings including noninfringement of the following accused systems and claims:

- System 1 for claims 1 and 6 of the '516 patent;

- System 2 for claims 3 and 28 of the '683 patent and claims 1, 6, 9, 21, 22, and 29 of the '516 patent;

- Systems 3 and 5 for claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent; and

- System 4 for claims 1 and 6 of the '516 patent and claim 26 of the '683 patent.

For these same reasons, ePlus's motion for a new trial on these issues should be denied.

LAWSON SOFTWARE, INC.


By: _____/s/_____
            Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 5th day of July, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*


                              _____/s/_____
                              Dabney J. Carr, IV (VSB No. 28679)
                              Robert A. Angle (VSB No. 37691)
                              Megan C. Rahman (VSB No. 42678)
                              dabney.carr@troutmansanders.com
                              robert.angle@troutmansanders.com
                              megan.rahman@troutmansanders.com
                              **TROUTMAN SANDERS LLP**
                              1001 Haxall Point
                              Richmond, VA 23219
                              Telephone:  (804) 697-1200
                              Facsimile:  (804) 697-1339
                              *Counsel for Defendant Lawson Software, Inc.*