**PX-190**

**PX-0190**

## LAWSON SOFTWARE AMERICAS, INC.
## PROCUREMENT PUNCHOUT PARTNER AGREEMENT

This non-exclusive Procurement Punchout Partner Agreement (the "Agreement") entered into between Lawson Software Americas, Inc. ("Lawson"), a Delaware corporation with its principal offices located at 380 St. Peter Street, St. Paul, Minnesota, U.S.A. 55102-1302 and Partner, whose name, principal business address, and jurisdiction of incorporation are set forth below, (collectively "the Parties"), determines the rights and obligations of Lawson and Partner with respect to the subject matter of this Agreement.

| Partner Name: | Global Healthcare Exchange, LLC |
|---|---|
| Address: | 1315 W. Century Drive |
| City: | Louisville |
| State/Zip or Province/Postal Code: | Colorado, 80027 |
| Country: | USA |
| Jurisdiction of Incorporation: | Delaware |

In consideration of the promises and mutual covenants and representations contained herein, the Parties agree as follows:

### ARTICLE I

### DEFINITIONS

For the purpose of this Agreement, the following are defined terms:

1.1 "Customer" shall mean business entities within the Territory who are using the Products.

1.2 "Effective Date" shall mean the date when authorized representatives of both Lawson and Partner have signed this Agreement as indicated at the end of this Agreement in the space marked "Date" below Lawson's signature to this Agreement.

1.3 "Employee" shall mean a person employed by either Party to this Agreement.

1.4 "Intellectual Property Rights" shall mean all copyrights, confidentiality rights, trade secret rights, trademark rights, patent rights and other intellectual property rights.

1.5 "Marks" shall mean all trademarks, service marks, trade names, company names, logos, other proprietary or commercial rights, or other words or symbols identifying the Products, Other Products, Lawson's business, or its Third Parties' businesses.

1.6 "Material" shall include Lawson sales brochures, solicitation materials, manuals, presentation materials, Business Practices and Price List, training materials and demonstration products.

1.7 "Modifications or Enhancements" means any modifications or enhancements to or derivative works of the Products that contain or use any object code or source code developed by a Party or its Third Parties.

1.8 "Potential Customer" shall mean business entities within the Territory who are interested in licensing the versions of Lawson-owned or delivered Products

1.9 "Products" means the products, owned or delivered by Lawson each of which includes the Software, Documentation, and media.

1.10 "Term" shall mean the period during which this Agreement is effective as defined in Section 6.1.

1.11 "Territory" shall mean: North America.

1.12 "Third Party" shall mean a business entity that has authorized Lawson to distribute that entity's Software and Documentation to Client by sublicense between Lawson and Client.

1.13 The masculine and feminine shall each include the others, the singular and plural shall each include the other, and this Agreement shall be read accordingly when required by the facts.

### ARTICLE II

### INTENT OF THE AGREEMENT

The intent of this Agreement is to provide the opportunity for the Parties to facilitate the use of their respective products by entering into a relationship that will facilitate (i) the development of the appropriate interfaces or punchout between Lawson Products and the Partners website(s), and (ii) the performance of joint marketing activities. The Parties understand and agree that the nature and extent



EXHIBIT
Lohkamp 9
10-20-09

LE00232215
CONFIDENTIAL

of any development effort by a Party shall be mutually agreed to by the Parties and any services shall be documented and agreed to in a Services Order Form or Statement of Work.

### 2.2  Discretionary Sales

Lawson and Partner agree that Lawson may indirectly or directly market, license, install, maintain and support any of the Products in the Territory, without payment to Partner.

## ARTICLE III

## OBLIGATIONS OF THE PARTIES

### 3.1  Software

Upon execution of a Business Partner License Agreement ("License") between the Parties, either Party may deliver to the other Party the software programs necessary to create and maintain the interfaces or punchout between the Parties' Products or websites, the source and/or object code related to those software programs, and the documentation applicable to the software programs, necessary to develop and maintain the interfaces to the other Party's software programs. Support for such software programs shall be provided under the respective License. Nothing contained herein shall obligate either Party to enter into such License. Lawson shall have the exclusive right to deny Partner a software license for any or all Lawson Software Products or Services; such right shall be at the sole discretion of Lawson.

### 3.2  Marketing

Joint sales calls, conferences and other presentations, and the nature and extent of any sales and marketing effort by a Party, shall be entirely at that Party's discretion and expense.

### 3.3  Licensing and Support

Each Party shall contract for its own products and services directly with Customers. Licensing, installation, maintenance, support and any supplementary services or agreements with Customers shall be solely the obligation of the contracting Party. Unless otherwise agreed in writing, each Party shall bear no obligation to the Customer whatsoever, with respect to products or services of the other Party. Neither Party is obligated to license or sell its products or services to a particular Potential Customer or Customer. Each Party is free to unilaterally determine its own pricing.

### 3.4  Representations

Neither Party is authorized to make any representations or warranties concerning the other Party, its products, or its services except as are set forth in the other Party's published marketing literature for such products and services current as of the date of representation. Each Party agrees to avoid deceptive, misleading, derogatory, or unethical practices detrimental to the other Party or its products or services.

## ARTICLE IV

## Partner Obligations

### 4.0  Partner Modifications

Partner agrees that it will at least ten (10) days prior to any change to its website, or interface that would affect the Lawson Product, provide Lawson written notice of such changes. Further Partner agrees to take any and all steps necessary to assist Lawson in the redevelopment and deployment of the Punchout where required.

The Parties will mutually agree upon a statement of work for any development and deployment work that maybe required based upon this Section 4.0.

### 4.1  Partner Resources

Partner will provide Lawson with a Technical contact, an account and an id to a test site.

## ARTICLE V

## TERM AND TERMINATION

### 5.1  Term

This Agreement shall commence on the Effective Date and shall continue for two (2) years (the "Term") unless sooner terminated in accordance with its terms. Thereafter, the Term may be renewed on an annual basis by mutual agreement and in writing at least thirty

LE00232216
CONFIDENTIAL

(30) days prior to the expiration of the Agreement, unless (i) either Party elects to terminate for reasons indicated in Section 5.2 below or (ii) either Party notifies the other of its election not to renew this Agreement. Such notice to be provided to the other Party, in writing, thirty (30) days prior to the annual expiration date.

### 5.2 Termination

Lawson shall have just cause to terminate this Agreement upon occurrence of any termination event specified below.

a. Partner ceases to conduct business in the normal course,

b. Partner becomes insolvent,

c. Partner enters into suspension of payments, moratorium, reorganization or bankruptcy,

d. Partner makes a general assignment for benefit of creditors,

e. Partner admits in writing its inability to pay debts as they mature,

f. Partner suffers or permits the appointment of a receiver for its business or assets, or avails itself of or becomes subject to any other judicial or administrative proceeding that relates to insolvency or protection of creditors' rights,

g. Partner fails to meet the obligations set forth in Article III of this Agreement.

h. Partner fails to provide Dedicated Staff under this Agreement.

i. Partner fails to comply with Lawson's Code of Conduct.

Should any termination event occur, Lawson may elect to terminate this Agreement prior to the expiration of the Term. Lawson shall provide Partner with thirty (30) days notice, in writing, of its intent to terminate the Agreement.

Either Party may terminate this Agreement prior to the expiration of the Term for a material breach by the other Party upon a final determination that there has been such a material breach, pursuant to the procedures for resolving disputes set forth in Section 9.7, which termination shall be effective upon the date of such final determination.

Not withstanding the foregoing, either Party may terminate this Agreement without cause, provided sixty (60) days notice is given, in writing, to the other Party.

### 5.3 Termination Obligations

Upon termination of this Agreement, all rights granted to Partner under this Agreement shall immediately cease, and the Parties shall promptly comply with the termination obligations specified in this Section 5.3 and shall cooperate with each other in the orderly closure of relations.

5.3.1   Except for termination for a material breach, upon termination of this Agreement both Parties shall retain such copies of the other Party's Products and retain any interfaces or punchouts developed between the Parties' Products necessary for the sole and limited purpose of continuing to maintain and support the integration between the Parties' Products for each Party's Customers. Lawson may in its discretion remove the Partner and the punchout from its next release or next version of the Procurement Punchout program upon termination of this Agreement.

5.3.2   Upon termination of this Agreement for material breach, if requested in writing by the other Party, (i) the breaching party shall return to the other Party or destroy all of the other Party's documentation and other materials belonging to the other Party in the breaching Party's possession that are related to this Agreement within fifteen (15) days of the date of the receipt of such request; and (ii) the breaching Party will disconnect all connections between the other Party's applicable website and the breaching Party's applicable website within fifteen (15) days of the date of receipt of such request.

ARTICLE VI
WARRANTY, INDEMNIFICATION, DISCLAIMER
AND LIMITATION OF LIABILITY

### 6.1 Warranty

EXCEPT AS EXPRESSLY PROVIDED IN WHICHEVER LICENSE GOVERNS IN A PARTICULAR CIRCUMSTANCE, ALL WARRANTIES, CONDITIONS, REPRESENTATIONS, INDEMNITIES, AND GUARANTEES WITH RESPECT TO THE PRODUCTS OR OTHER PRODUCTS, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, PRIOR ORAL OR WRITTEN STATEMENTS BY LAWSON OR OTHERWISE (INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE) ARE HEREBY OVERRIDDEN, EXCLUDED AND DISCLAIMED.

### 6.2 Indemnification

Procurement Pocurement Punch Out Partner Agreement-GHX                           Page 3 of 9

LE00232217
CONFIDENTIAL

6.2.1 Each Party shall indemnify the other Party against any and all third party claims, costs, expenses (including reasonable attorney's fees and expenses), losses and liabilities, claimed by third parties, arising out of its products or services referenced in this Agreement, except to the extent such claims arise out of representations made by the Indemnitee which are not expressly authorized by this Agreement, or representations that are not made by the Indemnitor. This indemnification is contingent upon Indemnitor's right to control the defense of the litigation, Indemnitee's cooperation and taking such actions as the Indemnitor reasonably requests at Indemnitor's expense, and Indemnitee's giving Indemnitor prompt written notice of any claim. This Section 6.2.1 is subject to the provisions of Section 6.4.

6.2.2 Lawson recognizes that Partner may make modifications and enhancements to the Products to meet specific needs of Customers or the marketplace, or to interface the Products with other software not provided by Lawson. Partner shall assume any and all risks and liabilities arising from such modifications and enhancements until such time as they may be made a part of the base Products. Partner shall indemnify Lawson for any infringement and warranty expansion for such modifications and enhancements. This Section 6.2.2 is subject to the provisions of Section 6.4.

6.2.3 Partner shall indemnify Lawson against any and all claims, costs, expenses (including reasonable attorney's fees and expenses), losses, liabilities and penalties, claimed by third parties or governmental agencies, arising out of Partner's breach of its obligations under Section 9.13 of this Agreement. This Section 6.2.3 is subject to the provisions of Section 6.4.

### 6.3 Disclaimer

Lawson shall have no indemnity obligation to Partner under this Article VII if the patent, copyright, trade secret or other intellectual property infringement claim results from a modification of the Products not provided by Lawson, or the combination of the Products and/or Other Products with other software not provided by Lawson.

### 6.4 Limitation of Liability

EXCEPT WITH RESPECT TO THIRD PARTY INDEMNITY CLAIMS PER SECTION 6.2 ABOVE AND CLAIMS FOR BREACH OF ARTICLE VIII BELOW, IN NO EVENT WILL LAWSON, LAWSON'S THIRD PARTIES OR PARTNER BE LIABLE FOR INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOSS OF PROFITS, REVENUE, DATA OR USE, INCURRED BY EITHER PARTY, WHETHER IN CONTRACT OR TORT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NEITHER PARTY WILL SEEK OR APPLY FOR SUCH DAMAGES. EXCEPT WITH RESPECT TO THIRD PARTY INDEMNITY CLAIMS PER SECTION 6.2 ABOVE AND CLAIMS FOR BREACH OF ARTICLE VIII BELOW, OR BODILY INJURY OR DIRECT DAMAGE TO REAL OR TANGIBLE PERSONAL PROPERTY TO THE EXTENT CAUSED BY LAWSON'S GROSS NEGLIGENCE, LAWSON'S AND ITS THIRD PARTIES' AGGREGATE AND CUMULATIVE LIABILITY FOR DAMAGES TO PARTNER FOR THE AGREEMENT, WHETHER IN CONTRACT OR TORT, SHALL BE LIMITED TO ACTUAL DIRECT MONEY DAMAGES IN AN AMOUNT NOT TO EXCEED THE COMMISSION FEES FOR THE SPECIFIC PRODUCT(S) AT ISSUE, IF PARTNER NOTIFIES LAWSON OF THE CLAIM WITHIN ONE YEAR AFTER THE CAUSE OF ACTION AROSE. THE PARTIES WILL EACH USE REASONABLE EFFORTS TO MITIGATE THEIR DAMAGES. THESE LIMITATIONS REPRESENT THE AGREED ALLOCATION OF RISK.

## ARTICLE VII
## OWNERSHIP, CONFIDENTIAL INFORMATION AND NONDISCLOSURE

### 7.1 Ownership

Lawson, or its Third Parties, owns and retains all rights, title and interest (including without limitation, all Intellectual Property Rights) in and to the Products and Other Products (including all source and object code, all related documentation, materials and Media) whether or not specifically recognized under the laws of the Territory. If Partner challenges the validity of any Intellectual Property Rights in or related to the Products or Other Products, Lawson shall be entitled to terminate this Agreement immediately upon notice to Partner.

Unless otherwise agreed upon, on a case-by-case basis, Lawson shall own all rights in any copy, modification, enhancement, or adaptation development thereof, of the Lawson Products. Partner shall own all proprietary rights in and to programs and Partner owned Products developed by Partner, excluding any portions of, or Modifications or Enhancements to, the Lawson Products incorporated therein. Lawson's Third Parties shall own all rights in any copy, modification, enhancement, or adaptation development thereof, of the respective Other Products. Subject to this Section 7.1, Partner shall obtain, at Lawson's request, the execution of any instrument that may be appropriate to perfect Lawson's rights in Lawson's name.

Nothing in this Agreement shall be construed as preventing or in any way hindering either Party from independently developing and owing, acquiring marketing, selling, licensing or otherwise disposing of, as that Party see fit, any product which performs the same or similar functions of any product of the other Party without incurring any liability of any kind to the other Party, provided the Intellectual Property Rights of the other Party, its third parties and its licensors are not violated.

Neither Party shall use the other Party's Products for any purpose, or make the other Party's Products available to third parties other than as provided by this Agreement or under separate agreement between the Parties.

### 7.2 Confidential Information

LE00232218
CONFIDENTIAL

It is expected that the Parties may disclose to each other certain information which may be considered confidential and trade secret information. All confidential information belonging to one Party and disclosed to the other Party shall remain solely the property of the disclosing Party, and its confidentiality shall be maintained and protected by the recipient with the same effort used to protect its own confidential information, which degree of effort shall in any event be non-negligent. The Parties agree further not to use each other's confidential information for any purpose other than as contemplated by this Agreement.

Partner acknowledges that the Price List, Products and Other Products incorporate confidential and proprietary information developed or acquired or licensed by Lawson or its Third Parties ("Information") and that Partner shall ensure that its Employees preserve the confidentiality of the Information by taking such steps as those taken by Partner to protect its own confidential information, and those which Lawson may reasonably request from time to time.

Partner shall not allow the removal or defacement of any confidentiality or proprietary notice placed on the Products or Other Products or other items of Information. The placement of copyright notices on these items shall not constitute publication or otherwise impair their confidential nature.

### 7.3 Nondisclosure

Partner shall not disclose, in whole or in part, the source or object code of the Products or Other Products, or any other item of Information bearing a confidentiality notice, to any individual, entity or other person, except (i) to Customers who have executed a Customer License, (ii) to those of Partner's Employees who require access to perform the obligations under this Agreement, or (iii) or to a third party to the extent it is necessary to obtain information for the purposes of developing the Interface between the Products and software other than that provided by Lawson. Partner shall inform Lawson in writing prior to its disclosure to any third party. Lawson may require the third party to acknowledge, in writing, the terms upon which it is lawfully permitted to have access to the Product. In any event, no disclosure shall take place until Lawson's written approval of disclosure to the third party has been forthcoming, such approval to not be unreasonably withheld.

Partner shall have no confidentiality obligations with respect to any portion of the Information that Partner (i) independently knew or developed before receiving the Products, Other Products, or Information from Lawson, (ii) lawfully obtained from a third party under no obligation of confidentiality, or (iii) lawfully obtained as a result of becoming available to the public other than as a result of an act or omission of Partner, any of its Employees, or its Customers.

### 7.4 Unauthorized Use or Disclosure

Partner acknowledges that any unauthorized use or disclosure of the Products, Other Products, or other items of Information may cause irreparable damage to Lawson or Lawson's Third Parties. If an unauthorized use or disclosure occurs through its or its third party's actions, Partner shall promptly notify Lawson and take, at Partner's expense, all steps which are mutually agreed upon to recover the Products, Other Products, or Information and to prevent its subsequent unauthorized use or dissemination, including availing itself of appropriate actions for seizure and injunctive relief. If Partner fails to take these steps in a timely and adequate manner, Lawson may take them in its own or Partner's name and at Partner's expense.

## ARTICLE VIII
## MARKS

### 8.1 Ownership

Lawson, or its Third Parties, owns and retains all rights and interest in and to their respective Marks whether or not specifically recognized under the laws of the Territory. If Partner challenges the validity of any of the Marks, Lawson shall be entitled to terminate this Agreement immediately upon notice to Partner. Partner shall not register, directly or indirectly, any trademark, service mark, trade name, copyright, company name or other proprietary or commercial right which is identical or confusingly similar to the Marks.

### 8.2 Use

Partner shall use the Marks exclusively to advertise and promote the Products within the Territory, and all advertisements and promotional Materials shall (i) clearly identify Lawson or its Third Party as the owner of the Marks, (ii) conform to Lawson's, or its Third Party's, then-current trademark and logo guidelines, and (iii) otherwise comply with any local notice or marking requirement contemplated under the laws of the Territory.

Before publishing or disseminating of any advertisement or promotional Materials bearing a Lawson Mark, Partner shall deliver a sample of the advertisement or promotional Materials to Lawson for prior written approval. If Lawson notifies Partner that the use of the Mark is inappropriate, Partner shall not publish or otherwise disseminate the advertisement or promotional Materials until they have been modified to Lawson's satisfaction.

Lawson may use the Marks of the Partner to advertise and promote the Products within the Territory, and all advertisements and promotional materials so long as Lawson complies with the Partners trademark and logo guidelines as provided to Lawson by the Partner.

### 8.3 Infringement of the Marks

LE00232219
CONFIDENTIAL

Partner shall immediately notify Lawson if Partner learns (i) of any potential infringement of the Marks by a third party; or (ii) that the use of the Marks within the Territory may infringe the proprietary rights of a third party. Lawson shall determine the steps to be taken under these circumstances. Partner shall provide Lawson with the assistance that Lawson may reasonably request and take no steps on its own without Lawson's prior written approval.

## ARTICLE IX

## GENERAL PROVISIONS

### 9.1 Relationship of Parties

The Parties are each independent contractors and neither Party shall be, nor represent itself to be, the franchisor, franchisee, broker, employee, employer, legal partner, joint venturer, servant, agent, fiduciary or legal representative of the other Party for any purpose whatsoever. Neither Party is granted any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of the other Party, or to bind the other Party in any matter or thing whatsoever, including, without limitation, the right or authority to obligate the other Party to accept or deliver any order, or to sell or refuse to sell to any customer. Except as expressly provided herein or under separate agreement between the Parties, each Party shall perform its duties and obligations under this Agreement without charge or expense to the other Party.

### 9.2 Assignment

Partner may not assign, sub-license, or otherwise transfer any of its rights and obligations in this Agreement to any third party without the prior written consent of Lawson, such consent to not be unreasonably withheld. Any consent shall be conditional upon the acquirer of rights, pursuant to such consent, acknowledging in writing that it is bound by the terms and conditions set forth in this Agreement, the Business Partner License and any existing Customer Licenses. Any such assignment, transfer, or subcontracting shall not relieve the assignor of its obligations under this Agreement. Any attempted assignment, transfer, or subcontract in violation of this Section 9.2 shall be void.

### 9.3 Force Majeure

Neither Party shall be in default by reason of any failure in performance of this Agreement, in accordance with the terms of this Agreement, if such failure arises out of causes beyond the reasonable control and without the fault or negligence of such Party. Such causes include, without limitation, acts of God and public, enemy, civil upheaval, war (declared or undeclared), acts of the government in its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, power failures and unusually severe weather; but in every case the failure to perform must be beyond the reasonable control and without fault or negligence of the Party failing to perform. The Parties agree to terminate this Agreement effective immediately upon notice to the other if such a cause of Force Majeure exists for more than one hundred-eighty (180) consecutive days. Such period shall be calculated from the date of the cause of Force Majeure.

### 9.4 Waiver

The waiver of one breach or default hereunder shall not constitute the waiver of any subsequent breach or default.

### 9.5 Survival

Provisions of Sections 5.3 and ARTICLES VI, VII, shall survive the termination of this Agreement.

### 9.6 Notice

All notices between the Parties shall be in writing and shall be sent by mail, telefax, telex, telegram, or hand-delivered to the addresses or facsimile numbers as set forth in this Agreement, until such time as a Party provides written notice of its change or facsimile numbers. A copy of each notice shall be addressed to the appropriate representative as indicated below. Notices by mail shall be effective five (5) days after deposit in the U.S. Mail, postage prepaid, except that notices by overnight, certified, or registered mail shall be effective on receipt. All other notices shall be effective upon receipt.

| Notices to Lawson: | Notices to Partner: |
|---|---|
| Chief Operating Officer<br>Lawson Software, Inc.<br>380 St. Peter Street<br>St. Paul, MN 55102-1302<br>FAX: 651-767-4940<br>Copy to: General Counsel | |

Other communications may be sent by fax, e-mail or other means.

### 9.7 Governing Law and Dispute Resolution

LE00232220
CONFIDENTIAL

This Agreement is governed by and construed in all respects in accordance with the laws of the State of Minnesota, USA. (without regard to conflicts of laws principles), excluding the United Nations Convention on Contracts for the International Sale of Goods.

Any legal action related to this Agreement, the Products or other dispute between the Parties, shall be instituted only in a federal or state court in the State of Minnesota, USA., and the Parties shall submit to personal jurisdiction of these courts in any such legal action. The Parties each waive their right to a trial by jury for any disputes between the Parties. No action relating to the Agreement may be brought if the cause of action has been known by the injured Party more than 2 years. Each Party will pay (without reimbursement) its own legal fees and expenses incurred in any dispute.

### 9.8 Employee Relationship

It is expressly understood and agreed that the Employee shall be, and always shall remain, the Employee or agent of their respective Party, and under no circumstances is such Employee to be considered the other Party's Employee or agent.

### 9.9 Headings

Headings are for convenience only and have no contractual significance.

### 9.10 Severability

If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the Parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

### 9.11 Publicity

The Parties shall approve any separate press releases upon execution of this Agreement. Both Parties shall in any event be free to disclose the terms of this Agreement to the extent reasonably necessary to promote its purposes and enforcement. The financial terms of this Agreement shall be kept confidential by the Parties, except to the extent disclosure is required by applicable laws or regulations.

### 9.12 Nonsolicitation of Employees

Neither Party shall directly, or indirectly through a third party, solicit the services or employment of any employee or agent of the other Party during the Term. The soliciting Party, who violates this Section 9.12, shall pay to the other Party an amount equal to six (6) month's salary for any solicited employee of the other Party, as liquidated damages and not as a penalty. The amount shall be equal to fifty (50) percent of the annual salary in effect at the date the employee was solicited. For purposes of this Section 9.12, the term "employee" means current or former employees of the other Party who were employed by the other Party at any time during the Term of this Agreement. This Section 9.12 shall not prevent an employee of either Party from pursuing or securing opportunities with the other Party on such employee's own initiative.

### 9.13 Limitations on Export

9.13.1 Notwithstanding any other provision of this Agreement, and regardless of any disclosure made by Partner to Lawson of an ultimate destination of any of the Products or Other Products, or derivatives thereof, Partner shall not export, re-export or transfer, directly or indirectly.

    a. in violation of any applicable U.S. export control rules, regulations or laws including, without limitation, the rules, regulations and laws administered by the U.S. Commerce Department, State Department or Treasury Department; or

    b. in violation of any applicable non-U.S. rules, regulations or laws.

9.13.2 Partner shall comply with any applicable U.S. rules, regulations and laws including, without limitation, the U.S. Foreign Corrupt Practices Act and the export control and anti-boycott rules, regulations and laws administered by the U.S. Commerce Department, State Department and Treasury Department. Partner shall also comply with any applicable export or import rules, regulations and laws of any countries in its export, re-exports or imports of Products or Other Products or any derivatives thereof.

### 9.14 Entire Agreement

This Agreement, the Exhibits referred to herein, and the licenses referred to herein, together with any addenda signed by the Parties (collectively, the "Agreement"), constitute the entire agreement between Lawson and Partner with respect to the Products and Other Products, Support, and other subject matter of this Agreement, and may only be modified by a written amendment or addendum signed by both Lawson and Partner. No employee, agent, or other representative of either Lawson or Partner has authority to bind the other with regard to any statement, representation, warranty, or other expression unless it is specifically included within the express terms of this Agreement or a written addendum signed by both Lawson and Partner. All purchase orders, prior agreements, representations, statements, proposals, negotiations, understandings, and undertakings with respect to the subject matter of this Agreement are superseded by this Agreement.

LE00232221
CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

for LAWSON SOFTWARE AMERICAS, INC.

_[signature]_
(Authorized Signature)

TERRY PLATH
(Printed Name)

VP-BUSINESS DEV.
(Title)

7/21/08
(Date)

for Global Healthcare Exchange, LLC

_[signature]_
(Authorized Signature)

Chris Petersen
(Printed Name)

General Counsel
(Title)

7/18/08
(Date)

Procurement Pocurement Punch Out Partner
Agreement-GHX

Page 8 of 9

LE00232222
CONFIDENTIAL

**EXHIBIT A**
**Program Fees and Benefits**

### 1.0 Annual Program Fee

$1,000.00

The Annual Program Fee shall be paid to Lawson upon execution of the Agreement and each anniversary thereafter. Lawson has the sole and exclusive right to adjust the Annual Program Fee as it deems appropriate and will provide Partner written notice at least thirty (30) days prior to such adjustment. Any adjustments to the Annual Program Fee shall become effective upon the renewal of this Agreement.

### 2.0 Program Benefits

| |
|---|
| Lawson Software business partner logo usage rights |
| Invitation to display and sponsor at Lawson Client User Exchange ("CUE") |
| Partner-exclusive Lawson business updates via periodic web seminars |
| Partnership announcement on Lawson intranet |
| Partner inclusion in sales "partner handbook" |
| Listed in the Lawson Trading Partner List |
| Listed on the Lawson Web Site as a Procurement Punchout Partner |

LE00232223
CONFIDENTIAL