IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Case No. 3:09CV620 (REP) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO MODIFY AND CLARIFY THE INJUNCTION**

Instead of focusing on the merits of Lawson's arguments that the injunction in this case should be modified and clarified, ePlus resorts to arguments that Lawson's request is untimely or otherwise procedurally deficient. None of these arguments have any merit. The *SEB* case was a significant intervening change in the law that set a much higher standard than the one on which the jury was instructed. The correct law eliminates any basis for the services portion of the injunction. Further, it is an error of law and manifest injustice to enjoin servicing noninfringing products. Thus, Lawson respectfully requests that this Court modify and clarify the injunction as discussed in its opening brief.

**I.     Lawson's Motion is Based on a Post-Injunction Supreme Court Decision that Changed the Law Regarding Indirect Infringement, and ePlus's Efforts to Avoid the Merits of the Motion Based on Contentions that the Issues Have Already Been Resolved Should be Rejected.**

The Court issued the injunction on May 23, 2011, based in part on the jury verdict of January 27, 2011. The Supreme Court's *SEB* case issued on May 31, 2011, eight days after the Court entered the injunction. Lawson has never before argued to the Court that *SEB* is a change in the law that undermines the portion of the Court's injunction decision based on indirect

infringement. ePlus does not and cannot dispute this chronology. The issues raised are new and should be considered on their merits, not dismissed as mere re-argument of prior rulings.

Moreover, Lawson is not seeking re-argument with respect to servicing noninfringing configurations. Lawson merely asks the Court to clarify that the injunction does not cover activities that ePlus represented it did not seek to preclude.

Additionally, Lawson's cites to the *Fonar* and *Odetics* cases are based on the Court's opinion set forth in its May 23, 2011 decision granting the injunction, not based on prior argument. That Order makes an inapplicable factual distinction between this case and *Fonar* and *Odetics*. It was not until the Injunction Order issued that Lawson could point out that the legal distinction on which the Court relies upon is absent.

ePlus contends that there is a need for "extraordinary circumstances" for a motion to amend to be granted. This is not the sole standard for a motion to amend or clarify under Rule 59(e) or Rule 60(b), especially when the movant moves promptly and also timely appeals. (*See* Lawson Br. at 2-4; *see also infra* at 3-4.) Indeed, ePlus later acknowledges that "an intervening change in the law"—exactly what occurred in the Supreme Court *SEB* case—is a proper basis to amend or clarify. (ePlus Response Br. at 5.) Likewise, ePlus admits "a clear error of law must be corrected in order to prevent manifest injustice." (*Id.*) Because the Court distinguished the *Fonar* and *Odetics* cases without recognizing that (as in *Fonar*) no finder of fact found that ePlus complied with marking requirements, and indeed ePlus failed to even require SAP to mark, such manifest injustice exists here.

The cases ePlus cites are irrelevant to the facts of this case. For instance, ePlus relies upon *Netscape Communs. Corp. v. Valueclick, Inc.*, 704 F. Supp. 2d 544, 546 (E.D. Va. 2010)— a case decided under Federal Rule of Civil Procedure 54(d)—to support its claim that modifying

2

an injunction in this situation is improper.  *Netscape*, however, involved neither an injunction nor an intervening change in law, but rather considered a motion for reconsideration with respect to the entry of partial summary judgment on the sole issue of the 35 U.S.C. § 102(b) on-sale bar. *Id.* at 545.  ePlus further cites *Chilton v. Clayborne*, No. 03-615, 2010 U.S. Dist. LEXIS 1698 (E.D. Va. Jan. 11, 2010).  In that case, Chilton's 59(e) motion did not "assert an intervening change in law nor a clear error of law," and the Court denied Chilton's supplemental 60(b) motion because its "vague statements" and "unsupported allegations" were insufficient to establish the existence of new evidence.  *Id.* at *7, *14 (denying a *pro se* Virginia inmate's motions for reconsideration of a 42 U.S.C. § 1983 action).  The basis for modifying the injunction in this case is neither "vague" nor "unsupported" but rather rests upon the significant change in law brought about by the Supreme Court's decision in *SEB* and a clear error of law in enjoining noninfringing activities.

Indeed, even the cases cited by ePlus emphasize the inherently flexible nature of equitable remedies and this Court's discretion in granting such remedies.  *See Harrison v. Watts*, 609 F. Supp. 2d 561, 568 (E.D. Va. 2009) ("A motion under Rule 59(e) is committed to the discretion of the court"); *Crutchfield v. United States Army Corps of Eng'rs*, 175 F. Supp. 2d 835, 843 (E.D. Va. 2001) ("[W]hen confronted with any motion invoking [Fed. R. Civ. P. 60(b)], a district court's task is to determine whether it remains equitable for the judgment at issue to apply prospectively and, if not, to relieve the parties of some or all of the burdens of that judgment on such terms as are just." (internal quotation marks omitted)).  Lawson has shown the merits of the requested amendments here.

## II. Lawson's Motion is Timely and Consistent with the Appellate Process, and thus ePlus's Other Grounds for Avoiding the Merits of the Motion Should Also be Rejected.

ePlus incorrectly implies Lawson's motion to modify and clarify is untimely. (*See* ePlus Reply Br. at 1.) Lawson complied with Federal Rule of Civil Procedure 59(e), which requires a Rule 59 motion to be filed within 28 days after the entry of the order. *See* Fed. R. Civ. P. 59(e). A motion filed under Rule 60(b) must be made within "a reasonable time" or a year. Fed. R. Civ. P. 60(c)(1). Indeed, the issues raised in Lawson's brief could not have been raised until the Court's decision was issued and until the *SEB* case was decided. Lawson's motion is timely.

Further, this is not a case where there is a higher standard under Rule 60 because a party has failed to preserve issues for appeal and is now seeking relief from the district court. ePlus cites cases completely unlike this one where movants waited months before filing motions for reconsideration in lieu of a failure to appeal. *See Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46, 47 (4th Cir. 1993) (denying a motion for reconsideration filed five months after the district court entered judgment and after the movant "knowingly and voluntarily chose not to appeal the district court's decision"); *Harrison v. Watts*, 609 F. Supp. 2d 561, 569 (E.D. Va. 2009) (denying a motion for reconsideration filed by a prisoner appearing *pro se* nearly four months after the district court entered judgment dismissing the initial complaint). In contrast, here Lawson has timely appealed the injunction, and post-trial motions remain pending, so the motion to amend involves neither undue delay nor an effort to overcome a failure to timely appeal.

In its attempts to discredit Lawson, ePlus incorrectly states that Lawson told the Federal Circuit it would file an "immediate" motion to modify the injunction, then chides Lawson for filing three weeks later. (ePlus Response at 1.) Not only was Lawson's filing of this Motion

4

timely under this Court's rules, but this argument is based entirely upon ePlus's mischaracterization of the record before the Federal Circuit, which merely stated that "Lawson intends to file a motion to clarify the scope of the injunction" and was not specific as to time.

ePlus again misstates the record before the Federal Circuit to accuse Lawson of wasting judicial resources by raising the same issues as are on appeal. (ePlus Response at 2.) On the contrary, Lawson's pending motion in the Federal Circuit seeks a stay of the injunction pending appeal and involves the issues of harm to the parties, the public interest in a stay, and Lawson's likelihood of success on the merits of its appeal. Lawson's Motion before this Court, in contrast, involves whether a change in the law of indirect infringement justifies modification of the terms of the injunction (Doc. No. 750 at 2-8), whether this Court should clarify the scope of the injunction relating to service of non-infringing products (*id.* at 8-11), and whether this Court should amend the injunction order to expressly exclude products sold before this lawsuit began (*id.* at 11-14). Additionally, this Court can modify an injunction pending an appeal. *See* Fed. R. Civ. P. 62(c).

Finally, ePlus's argument that Lawson filed this Motion to "restart the clock" on its appeal to the Federal Circuit is accompanied by absolutely no basis for such a claim. There is no evidence that the clock would be restarted, nor is there a Federal Circuit rule dictating such an outcome. Nor does ePlus even suggest what advantage Lawson would receive from restarting the clock. Lawson is currently bound by the injunction, and restarting clocks is of no particular benefit.

**III.   On the Merits, the Injunction Should be Amended Because the Supreme Court's *SEB* Case is an Intervening Change in the Law that Eliminates the Basis for the Services Portion of the Injunction.**

The Supreme Court's *SEB* case set forth a new standard for indirect infringement entirely

different and much more stringent than the one ePlus convinced the Court to instruct the jury. Because the portion of the injunction directed to service activities was based on the assumption that the jury found indirect infringement based on the proper legal standard, and that assumption was wrong, the injunction should be amended.

      A.      <u>The *SEB* Case is an Intervening Change in the Law that Requires a Higher Level of Proof for Indirect Infringement that the One Given to the Jury.</u>

There are two distinct errors of law that require this Court to amend the inducement part of the injunction. First, the state of mind requirement was in error. The Supreme Court rejected the Federal Circuit's former reckless disregard standard in favor of a higher standard of intent that requires actual knowledge or willful blindness. *Global-Tech Appliances, Inc., v. SEB S. A.*, __ U.S. __, 2011 U.S. LEXIS 4022, at *21 (Sup. Ct. May 31, 2011). Willful blindness requires (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. *Id.* at *26-27. The Court contrasted this standard with the Federal Circuit's test:

> The test applied by the Federal Circuit in this case departs from the proper willful blindness standard in two important respects. First, it permits a finding of knowledge when there is merely a "known risk" that the induced acts are infringing. Second, in demanding only "deliberate indifference" to that risk, the Federal Circuit's test does not require active efforts by an inducer to avoid knowing about the infringing nature of the activities.

*Id.* at *28.

The jury in this case, however, was instructed using the old Federal Circuit standard that required mere deliberate disregard and did not require such "active efforts" to avoid knowing about the infringing nature of the activities. The Supreme Court's analysis leaves no doubt that this Federal Circuit standard was lower, overruled, and wrong. (Jury Instruction No. 26.)

ePlus argues that the instruction in this case "was consistent with" the Supreme Court's

standard and thus there was no error. (ePlus Response Br. at 15.) However, there is no dispute that this Court applied the old, overruled Federal Circuit standard. If that were consistent with *SEB*, the Supreme Court would not have said "The [reckless disregard] test applied by the Federal Circuit in this case ***departs from*** the proper willful blindness standard ***in two important respects.***" *SEB*, 2011 U.S. LEXIS 4022, at *28 (emphasis added). ePlus is plainly wrong—the Court's instruction is consistent only with the overruled reckless disregard standard, not the new and higher standard for willful blindness.

ePlus argues that the jury could have found Lawson acted with willful blindness, had it been asked. This is speculative and improperly substitutes ePlus's opinion of the facts for a finding by a jury. Moreover, *SEB*'s requirements for willful blindness do not fit the facts in this case. Willful blindness requires proof that Lawson made active efforts to stay ignorant of ePlus's infringement claim or patents. There is simply no evidence of that, it was never alleged, and the jury was never asked if Lawson took affirmative acts to avoid knowledge. That is the end of the story.

Indeed, all of the evidence at trial demonstrates that the jury would not have found indirect infringement if instructed using the proper law. Not only was there no evidence presented that any Lawson employee knew of ePlus's patents, every single Lawson witness affirmatively testified that they had no idea ePlus had patents. Only Keith Lohkamp had even heard of ePlus, and that was years ago when he was working at another company. This is not the "willful blindness" standard found in *SEB*—where the defendant affirmatively avoided obtaining a U.S. version of a competitor's product that it copied, instead acquiring a foreign version to avoid knowledge of any U.S. patent markings, and then failed to tell its patent counsel about the copying.

7

ePlus asserts that Lawson quoted the jury instruction out of context. The instructions as a whole clearly show that the jury was instructed using the lower standard, requiring only that "ePlus must show that Lawson actually *intended to cause the acts* that constitute direct infringement and that Lawson knew of the patent and that Lawson knew *or should have known* that its actions would lead to actual infringement." (Jury Instruction No. 26 (emphasis added) (cited at ePlus Response Br. at 11).) ePlus cannot reasonably dispute that the instructions as a whole followed the Federal Circuit law that was not overruled at the time of the instruction. The Supreme Court drew a specific distinction between the proper law of willful blindness and the overruled standard that ePlus advances of "should have known": "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. *By contrast*, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing and a negligent defendant is one *who should have known of a similar risk* but, in fact, did not." *SEB,* 2011 U.S. LEXIS 4022 at *27 (citations omitted, emphasis added).

Taking the Court's instructions as a whole, it is clear that the "should have known that its actions would lead to infringement" was not a higher standard requiring willful blindness, but connected to the erroneous "deliberately disregarded a known risk" standard. (Jury Instruction No. 26.) Nowhere did the Court instruct the jury, for example, that the jury needed to find that Lawson affirmatively acted to avoid knowledge of infringement. Thus, viewing the instructions as a whole fails to cure the problem that the court instructed the jury on an improperly low standard of intent to infringe.

ePlus does not dispute that Lawson raised its objection on the first (willful blindness) and second (intent to infringe versus intent to act) errors of law with the Court, but argues that

Lawson subsequently waived its objection on the second error of law. (ePlus Response Br. at 12.) The last exchange cited by ePlus is reconciled with the prior objections as merely acknowledgement that the Court had previously ruled against Lawson on the issue, and the record had already been made. Indeed, as shown in Lawson's opening brief, Lawson specifically proposed instructions requiring knowledge of ePlus's patents and specific intent to infringe, and noted that the pending Supreme Court decision may change the law on this issue, before the Court instructed the jury. The record shows no waiver of Lawson's ability to rely on any change in the law that may arise from the *SEB* decision.

>   B. Because the Injunction Was Based on the Wrongly-Premised Jury Verdict and Applies to Future Servicing of Past Sales, the Court Cannot Dismiss the Change of Law as Irrelevant.

ePlus does not dispute that its request for the services portion of the injunction relied on construing the jury's verdict as finding Lawson induced infringement. Nor does it dispute the quotes Lawson provided from the Court's opinion supporting the grant of injunction which expressly relied on the jury's findings to support the services portion of the injunction. Both ePlus's and the Court's premises for that part of the injunction is now infected by the wrong legal standard.

Implicitly recognizing the problem with the basis for the injunction, ePlus now seeks to weave out of whole cloth an entirely new and separate basis for the Court's injunction. After originally requesting a jury trial regarding infringement, ePlus now asks the court to *assume* the jury would have found Lawson's actions involving Punchout systems would be found to infringe, had the jury been instructed under the new, higher *SEB* standard, even though it cites no evidence whatsoever of affirmative acts by Lawson to avoid knowledge of infringement. That ePlus would seek to base the injunction on the speculative findings of a hypothetical jury only

confirms the need to amend the injunction. As Lawson explains in its post-trial briefing, at a minimum it is entitled to a new trial when the jury is wrongly instructed, and there is no assumption that ePlus will prevail. Lawson should not be enjoined in the meantime.

ePlus's discussion of how Lawson must have intent to infringe going forward because it now knows of the patents and that the enjoined configurations infringe misses the point. If Lawson's *current* intent is used as the basis for enjoining inducement-type activities, then the injunction should be limited to servicing *new* customers, not old ones. As the Court appeared to recognize in its injunction memorandum opinion, the *Fonar* and *Odetics* cases show that Lawson should not be enjoined from servicing past-customers if ePlus would be barred from seeking damages for the original sales to those customers, at least if the damages bar is not based on a discovery sanction. That is important at least for the Punchout configurations, as ePlus relied on an induced infringement theory to assert Lawson's original sales of Punchout configurations infringed. (*See* Doc. No. 760 at 2-6.) Therefore, even if Lawson might *now* have the requisite intent to infringe (which it does not), it should be allowed to service those customers who purchased Punchout systems before the verdict, and certainly before May 2009 when Lawson first learned of the patents.

The new legal standard is higher than the old one. ePlus is not entitled to any presumption the jury found infringement under only direct or contributory infringement.[1] ePlus

---

[1] In footnote 10 of its brief, ePlus argues—without any legal support—that this Court should not correct the injunction because the "jury verdict could also have rested on direct and contributory infringement." (ePlus Response Br. at 16 n.10.) First of all, the injunction against services was expressly based exclusively on an assertion of indirect infringement, which cannot stand. Further, this argument is contrary to law. As the Supreme Court explained over a hundred years ago, "[a general verdict's] generality prevents us from perceiving upon which plea they found. If, therefore, upon any one issue error was committed, either in the admission of evidence or in the charge of the court, the verdict cannot be upheld. . . ." *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884). *See also Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19,

relied solely on indirect infringement to prove Lawson infringed with respect to pre-verdict sales of Punchout systems. ePlus presented insufficient proof that Lawson even knew of the patents before suit. Indeed, under the standard set forth in *SEB*, Lawson could not be found to have the requisite intent before the filing of the lawsuit. Moreover, ePlus had no proof that Lawson intended to cause infringement after suit. It has no evidence that Lawson affirmatively acted to deliberately avoid knowing about either the patent or any infringement issue, as was required and found in the *SEB* case. Lawson should be able to service those prior systems because, like *Odetics* and *Fonar*, ePlus cannot obtain damages for those previously-sold systems for reasons unrelated to the discovery sanction. ePlus's pinch-hitter support for the injunction based on going-forward intent has many flaws and cannot sustain the services portion of the injunction.

IV.     **ePlus Previously Represented to the Court that the Injunction would not Cover Systems that are Common to Non-Infringing Products, a Clarification this Court Should Make.**

The second part of Lawson's request merely seeks clarification that the injunction does not cover services that are common to non-infringing products. Before the injunction was granted, ePlus sought to downplay the scope of the requested injunction in this respect. It specifically represented to the Court during trial that it "would not ask to enjoin Lawson System Foundation when it's being used with something that doesn't create an entire infringing system." (September 27, 2010 Hearing Tr. at 146-47.) Indeed, the Court explained, "I don't envision any circumstance in which I would enjoin the Lawson System Foundation and ProcessFlow at all." (*Id.*)

---

30 (1962) ("Since we hold erroneous one theory of liability upon which the general verdict may have rested -- a conspiracy among petitioners and Exchange Lemon -- it is unnecessary for us to explore the legality of the other theories."); *United New York & New Jersey Sandy Hook Pilots Assoc. v. Halecki*, 358 U.S. 613, 619 (1959) ("It follows from what has been said that a new trial will be required, for there is no way to know that the invalid claim of unseaworthiness was not the sole basis for the verdict.").

It is not clear from ePlus's opposition whether it actually disagrees with Lawson's proposed clarification. Instead, it asserts this clarification is unnecessary. Lawson, as the party required to comply with the injunction's terms, disagrees. ePlus ignores the issue, which is what Lawson can do for customers who have both infringing and noninfringing systems that use the foundational software.

ePlus further asserts that Lawson agreed to the injunction regarding the infringing configurations. Of course, post-trial motions as well as an appeal remain pending, and Lawson contests whether the configurations infringe or should be enjoined at all.[2] Any request for clarification might be said to raise an issue that could have been raised previously, but that does not defeat the request on its merits. Lawson asks that the injunction be modified in fairness, to cover what ePlus and the Court previously indicated was the intent all along. Lawson never agreed to anything to the contrary.

## V. The Injunction Cannot Cover Products that Predate the Lawsuit.

The Court's injunction Order did not contemplate that ePlus failed to meet the marking requirements due to its failure to prove marking by licensees, mainly SAP, and thus that ePlus is not entitled to injunctive relief for products that predate the filing of the lawsuit. The distinction between damages barred due to failure to mark or laches, as were the situations in *Odetics* and *Fonar,* and damages barred as a discovery sanction, is not available with respect to ePlus's failure to prove marking. ePlus has no evidence that SAP, its largest licensee (and one of the two

---

[2] Indeed, prior to ePlus's damages case being thrown out, Lawson strongly objected to ePlus's over-inclusive royalty base. Lawson explained that ePlus could not seek damages on products such as LSF and Process Flow. (See Doc. No. 253.) Judge Rader, Chief Judge of the Federal Circuit, has warned that damages should be on the "smallest salable infringing unit with close relation to the claimed invention"—which in this case would be the Punchout and RSS modules and nothing more. *Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287 (N.D.N.Y. 2009).

market leaders) marked its products or was even asked to mark ePlus's patent numbers on its products. ePlus does not even argue in its brief that it presented evidence at trial that SAP marks. In fact, on page 21 of its brief, ePlus conveniently cites to all of its licensees *except* SAP.

It is an error of law for the Court to base the injunction in part on an implicit finding that ePlus met the marking requirement when the issue was never tried to the jury or the Court, ePlus did not meet its burden to prove marking, and it is undisputed that there is no evidence SAP did not mark and affirmative evidence shows that it did not mark.

While the *Odetics* and *Fonar* cases have been briefed before, Lawson has not previously addressed the Court's statements in the injunction memorandum opinion about how those cases were distinguished. Lawson has now shown that the legal distinction that the Court drew between those cases and this case (barring damages as a discovery sanction is different from barring damages due to a failure to mark or laches) does not exist. This legal issue was not previously considered because the Court had not set forth its reasoning until it issued the injunction order. The issue is properly before the Court at this time and warrants amendment of the injunction to allow Lawson to service pre-complaint customer systems. Even absent discovery sanctions, ePlus failed to prove all licensees including SAP marked, and thus ePlus is barred from pre-complaint damages under 35 U.S.C. § 287.

## VI. Conclusion

For the foregoing reasons, Lawson respectfully requests that this Court modify, amend, and / or clarify the Injunction issued on May 23, 2011.

13

LAWSON SOFTWARE, INC.

By: _____/s/_____
       Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of July, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

        /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*