# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|    v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
|    Defendant. ) | |

## DEFENDANT LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR A NEW TRIAL

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  DISCUSSION ..................................................................................................................... 2

   A.   A New Trial on Invalidity is Appropriate Based on the Prejudice to Lawson Relating to the Rulings Involving the J-CON and P.O. Writer Systems that Resulted in Jury Confusion and Excessive Limitations on Use of that Prior Art. .............................................................. 2

      1.   Lawson Did Not Waive Its Argument that the Exclusion of the J-CON and P.O. Writer Obviousness Defense Requires a New Trial on Invalidity. .................................................... 3

      2.   The Court erred in excluding the J-CON and P.O. Writer obviousness defense, which prejudiced Lawson and warrants a new trial............................................................................ 3

      3.   The Jury questions regarding the status of J-CON and P.O. Writer demonstrate the jury's confusion and the importance of the issue..................................................................... 5

      4.   Lawson, not ePlus, was Prejudiced.................................................................................. 6

   B.   Lawson is Entitled to a New Trial on Invalidity Because ePlus was Allowed to Erroneously Tell the Jury that the '989 Patent was not Prior Art and that it was Considered as Prior Art by the PTO, and Lawson was not Permitted to Present the Contrary Evidence.......... 7

   C.   Lawson is Entitled to a New Trial on Invalidity Because of the Exclusion of the Reexams....................................................................................................................................... 8

   D.   Lawson is Entitled to a New Trial on Invalidity Because of the Admission of the Litigation Settlements. ............................................................................................................... 9

   E.   Lawson is Entitled to a New Trial on Infringement Because of ePlus's Prejudicial Questioning Regarding Lawson's Opinion of Counsel and Implication that Lawson's Failure to Waive Privilege Demonstrated Knowing Wrongdoing. ....................................................... 10

   F.   Lawson is Entitled to a New Trial Because the Jury was Instructed on a Legal Standard Significantly Lower than the One Set forth in the New Supreme Court's SEB Decision........ 12

   G.   Lawson is Entitled to a New Trial Because of Cumulative Issues. .............................. 14

II.  Conclusion ........................................................................................................................ 15

I.      **INTRODUCTION**

The issues Lawson raised in its brief in support of a new trial fully demonstrate why its request for a new trial should be granted.  ePlus dismisses Lawson's arguments primarily by arguing that the issues were already decided.  This is not the question, although it does confirm that Lawson raised the issues in a timely manner.  It is ePlus who reargues an issue it lost at trial, namely whether Lawson's decision to invoke attorney-client privilege has any relevance to intent, in defending its inappropriate reference to the opinions.  ePlus also argues that the issues raised by Lawson are insignificant.  However, the issues raised go to the core issues in the case, invalidity and infringement.  The exclusion of Lawson's obviousness defense based on J-CON and P.O. Writer warrants a new trial both because of their exclusion and because of the timing of their exclusion.  Likewise, the fact that ePlus was permitted to mislead the jury regarding whether the '989 patent was prior art considered by the PTO while Lawson was not permitted to present the evidence to the contrary from the PTO itself distorted the record as to this key prior art.  The J-CON, P.O. Writer, and '989 patent prior art are all strong references, with the PTO relying on them to reject the claims of the asserted patents during the pending reexaminations.  And the Supreme Court's recent *SEB* decision setting forth a standard of indirect infringement different from and more stringent than the one ePlus convinced the Court to instruct the jury necessitates a new trial on the jury's infringement determination.  This issue too was significant, as ePlus's evidence of intent was so thin that it decided to not even try the issue of willfulness to the jury.  Individually or in combination, these issues warrant a new trial with respect to the jury's infringement findings and findings that the asserted claims were not invalid.

## II.  DISCUSSION

### A.  A New Trial on Invalidity is Appropriate Based on the Prejudice to Lawson Relating to the Rulings Involving the J-CON and P.O. Writer Systems that Resulted in Jury Confusion and Excessive Limitations on Use of that Prior Art.

ePlus understood from Lawson's disclosures and Dr. Shamos's timely reports that Lawson provided element-by-element support for its contention that the combination of the J-CON and P.O. Writer systems rendered many of ePlus's asserted patent claims obvious. Before trial, none of ePlus's many motions seeking to limit the use of that prior art resulted in exclusion of it. In fact, both parties discussed the J-CON/P.O. Writer prior art combination in opening statements. Moreover, Lawson presented fact witnesses related to the J-CON and P.O. Writer systems at trial. ePlus had great familiarity with the J-CON and P.O. Writer prior art, having dealt with it at the SAP trial and repeatedly in rejections of its claims in view of that prior art during reexaminations of the asserted patents. ePlus suggests that it was unclear about how that prior art would be used at trial, but such a claim of ignorance rings hollow after its history of dealing with this prior art for five years.

Despite that, ePlus moved to exclude Dr. Shamos's testimony regarding his J-CON/P.O. Writer obviousness opinion based essentially on unfair surprise. The Court granted the motion in part, precluding Dr. Shamos's opinion based on the combination of P.O. Writer and J-CON. The Court did allow him to testify, as disclosed in his report, that the existence of J-CON and P.O. Writer in the prior art rebutted ePlus's contention that the invention claimed in the patents met any long-felt need in the marketplace. During Lawson's closing argument, however, absent objection from ePlus, the Court prevented Lawson from presenting argument on even this issue. This situation created prejudicial confusion among the jury that was demonstrated by the jury's

questions during deliberations. This sequence of events prejudiced Lawson and provides grounds for a new trial on invalidity.

> 1. **Lawson Did Not Waive Its Argument that the Exclusion of the J-CON and P.O. Writer Obviousness Defense Requires a New Trial on Invalidity.**

Undercutting its claim that Lawson is rearguing issues already decided, ePlus contends that Lawson did not object to the Court's ruling at trial. The record shows otherwise. ePlus made an oral motion during trial to preclude Dr. Shamos's opinion. Lawson opposed this motion, vigorously arguing in support of the admissibility of Dr. Shamos's proposed testimony. The Court ruled in ePlus's favor. During closing arguments, Lawson's counsel explained why it was entitled to make the argument, and the court precluded the argument anyway. The only case ePlus cites to support its waiver argument, *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365 (4th Cir. 1985), is not remotely applicable to this situation. *Dennis* involved a motion for a new trial based on improper argument made during a party's closing argument. *Id.* at 367. The moving party did not object to this testimony at trial and could thus not later raise the issue in its new-trial motion. *Id.* That case certainly did not involve an issue on which the parties had engaged in a lengthy hearing in the middle of trial. The issues were clearly preserved.

> 2. **The Court erred in excluding the J-CON and P.O. Writer obviousness defense, which prejudiced Lawson and warrants a new trial.**

Lawson was prejudiced by the exclusion of Dr. Shamos's opinion that the claims in suit were obvious in view of the combination of J-CON and P.O. Writer. ePlus was fully aware of this defense and its detailed support. Lawson should have been allowed to present this testimony and its exclusion was prejudicial error.

The purpose of the expert disclosure provision of Rule 26 is to ensure that a litigating party is not blindsided by unexpected expert testimony that it does not have sufficient

3

opportunity to attempt to rebut. Dr. Shamos timely and fully disclosed his opinions regarding the combination of J-CON and P.O. Writer. ePlus's expert had ample opportunity to respond to these opinions and did in fact provide responsive opinions in his rebuttal expert report. ePlus further deposed Dr. Shamos regarding these obviousness opinions. (10/16/10 Shamos Depo. at 238:18-20 (Ex. 1) (ePlus counsel asking "So the combinations in the spreadsheet should also be considered among your obviousness opinions?")) ePlus knew precisely what testimony Dr. Shamos would offer well in advance of him taking the stand, making any alleged shortcomings of Dr. Shamos's expert report harmless. *See* Fed. R. Civ. P. 37(c)(1).

ePlus was completely aware of the content of Dr. Shamos's opinion regarding the combination of J-CON and P.O. Writer well in advance of trial. Dr. Shamos's opinion articulated in the body of his expert report that the combination of J-CON and P.O. Writer rendered many of the asserted claims obvious. (Shamos Invalidity Report at ¶ 236 (Ex 2).) Dr. Shamos provided the element-by-element factual basis for his opinions in Exhibit 3 to his report. The Court excluded the entire opinion because Exhibit 3 included "anticipation" opinions even though the report specifically incorporated the anticipatory arguments into the obviousness discussion. Such incorporation by reference is appropriate, as prior art that anticipates a patent claim also renders that claim obvious. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 542 (Fed. Cir. 2011); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1357 n.21 (Fed. Cir. 1998); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983); *In re Pearson*, 494 F.2d 1399, 1402 (C.C.P.A. 1974).

That ePlus fully understood Lawson adequately disclosed this defense is shown by ePlus's own words. During trial on January 13, 2011, ePlus provided the Court with a

4

memorandum highlighting the invalidity theories "that can be offered by Dr. Shamos"—with "X" meaning it can come in:

Limits on scope of expert testimony that can be offered by Dr. Shamos

| Patent | '683 | | | | '516 | | | | | | | '172 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Claim | 3 | 26 | 28 | 29 | 1 | 2 | 6 | 9 | 21 | 22 | 29 | 1 |
| Anticipation | | | | | | | | | | | | |
| RIMS Patent | X | X | X | X | X | X | X | X | X | X | X | X |
| P.O. Writer | | X | | | X | | X | | | | | |
| King '542 | | | | | X | X | | | | | | |
| Obviousness | | | | | | | | | | | | |
| RIMS + TV/2 | X | X | X | X | X | X | X | X | X | X | X | X |
| RIMS + Dworkin | X | X | X | X | X | X | X | X | X | X | X | X |
| JCON + Dworkin | X | X | X | X | X | | | X | X | X | X | X |
| JCON + P.O. Writer | X | X | X | X | X | | | X | X | X | X | X |
| Other Bases for Invalidity | | | | | | | | | | | | |

(Doc. No. 556 at 3 (highlighting added).)

Given ePlus's stated understanding at trial that Dr. Shamos could offer testimony specifically on the obviousness of the JCON and P.O. Writer combination, testimony supported by on an expert report served on it more than seven months before trial, ePlus is in no position to claim unfair prejudice or any discovery violation from Dr. Shamos testifying regarding the obviousness combination of J-CON and P.O. Writer. Fed. R. Civ. P. 37(c)(1). Given that this combination was one of the cornerstones of Lawson's invalidity defense, Lawson was prejudiced by the exclusion of this testimony. This exclusion of Dr. Shamos's opinion justifies a new trial.

### 3. The Jury questions regarding the status of J-CON and P.O. Writer demonstrate the jury's confusion and the importance of the issue.

The jury was rightly confused about the status of the J-CON and P.O. Writer systems and their pertinence to Lawson's invalidity case. One the questions the jury submitted to the Court pertained to this very issue:

5

```
4         Next question:  Since J-CON and P.O. Writer
5    aren't listed on our verdict sheet, are we to consider
6    them as prior art?  Isn't that what they were included
7    in the case for?
```

(Trial Tr. at 3306:4-7 (Ex. 3).) The jury's strong interest in the P.O. Writer and J-CON prior art is corroborated by the PTO, which has relied on the prior art to reject ePlus's claims during reexamination. (*See, e.g.*, Ex. 4 at 6.) Clearly, this prior art was highly significant, highlighting the prejudicial effect of its exclusion.

Lawson was allowed to provide testimony about P.O. Writer and J-CON to rebut ePlus's contention that the inventions claimed in the patent in suit resolved a long-felt need. When Lawson was improperly prevented from arguing that these systems rebutted ePlus's secondary-considerations position during closing arguments, the jury was doubtless left wondering why it was presented with this evidence at all. This sequence of events unfairly hurt Lawson's credibility before the jury as well, as it appeared to the jury that Lawson presented two fact witnesses and part of one expert's testimony for no purpose at all. This confusion, surrounding evidence that was important to Lawson's invalidity positions, significantly and unfairly prejudiced Lawson.

### 4. Lawson, not ePlus, was Prejudiced.

ePlus's suggestion that it—not Lawson—was prejudiced is absurd. The jury found for ePlus that the claims were not invalid. Lawson was obviously prejudiced first by the exclusion of its invalidity defense. It was also prejudiced by the allowance then unexplainable limitation on its ability to rely on the evidence to support its defense that the claims were obvious in view of the RIMS and TV/2 prior art. And Lawson was prejudiced by the confusion those exclusions created in the jury. ePlus, on the other hand, waited until mid-trial to launch this, yet another

attack on Lawson's invalidity case. Any confusion arising from this mid-trial ruling was caused by ePlus, not Lawson, and does not change the fact or significance of the errors. New trial on invalidity is thus warranted.

> B. **Lawson is Entitled to a New Trial on Invalidity Because ePlus was Allowed to Erroneously Tell the Jury that the '989 Patent was not Prior Art and that it was Considered as Prior Art by the PTO, and Lawson was not Permitted to Present the Contrary Evidence.**

Lawson is entitled to a new trial because Lawson was not permitted to inform the jury that the PTO itself found that the '989 patent raised a "new issue" because it apparently was not considered by the Patent Office as prior art during the original prosecution of the ePlus patents. ePlus confused and misled the jury based merely on the disclosure of the RIMS system in its patents as proof that the Patent Office considered the RIMS system as prior art and allowed the claims anyway. Over objection, ePlus was permitted to wrongly tell the jury that the '989 patent was considered as prior art just because it was described in the patent.

ePlus contends that there was no prejudice because Lawson was permitted to seek testimony on these issues. (ePlus Response Br. at 14-18.) That contention, however, is wrong. There is absolutely no doubt that Lawson was completely barred from eliciting any testimony from any witness or otherwise introducing any evidence from the reexaminations related to the PTO's findings that the '989 patent raised a new issue not considered during the original prosecution of the patents. Over Lawson's protest, ePlus successfully blocked Lawson from presenting the evidence on this point.

ePlus contends that "The jury, as fact-finder, was appropriately permitted to reach its own conclusion about whether the '989 patent and the RIMS System had actually been considered by the Patent Office." (ePlus Response Br. at 18.) This is exactly the error that requires a new trial. The jury had no opportunity to reach a conclusion based on the only direct evidence of

7

relevance, the PTO's own statements. No reasonable fact finder could have found that the '989 patent or RIMS system had been considered as prior art when the reexamination evidence is considered. Specifically, the PTO stated, "the reference of the Johnson '989 Patent does not appear to have been considered by the examiner in the original prosecution." (*See* Doc. No 270 at 3.) Further, the PTO granted the reexaminations because the prior art—including the '989 patent—raised a substantial new question of patentability. (*Id.* at 2-4.) With respect to the '989 patent, the PTO noted that "the Johnson '989 Patent would qualify as prior art under 35 U.S.C. 102(e)." (*Id.*) The PTO then rejected the same claims it had previously allowed to issue in the patent, based on this very prior art. The jury did not make an informed decision as ePlus suggests because it was not permitted to the primary evidence of relevance to this important issue.

This is an issue separate from the exclusion of the reexaminations. The entirety of the reexamination did not need to be introduced to prevent the error. Alternatively, Lawson's motion could have been granted before trial to prevent ePlus from arguing that the '989 patent was considered as prior art by the Patent Office. Thus, whether or not it was proper to exclude the reexams as a whole, the decisions to allow ePlus to argue that the '989 was considered by the PTO as prior art without letting the jury know of the PTO's specific statements to the contrary about this important prior art warrants a new trial on invalidity.

**C.   Lawson is Entitled to a New Trial on Invalidity Because of the Exclusion of the Reexams.**

At trial, ePlus was permitted to repeatedly tell the jury that its patents were presumed valid because they had been issued by the Patent Office (*see, e.g.*, Trial Tr. at 121:1 (Ex. 3)) while Lawson was never allowed to show the jury that those same patents had been rejected by the Patent Office upon further examination. ePlus never responds to these arguments but merely

8

suggests there should be no new trial because the issue was already decided by the Court. This is not responsive to Lawson's request. This exclusion was prejudicial and unfair and Lawson is entitled to a new trial on invalidity for this reason.

### D. Lawson is Entitled to a New Trial on Invalidity Because of the Admission of the Litigation Settlements.

The litigation settlements should not have been admitted in this case because there was nothing probative about them. While, as a general matter, license agreements may be relevant in certain circumstances, those circumstances were not present here. There is no question that every one of the litigation settlements was entered to end litigation. There was no evidence tying those litigation settlement agreements to the nonobviousness of the patents-in-suit.

The litigation settlements with their multi-million figures unfairly prejudiced Lawson. ePlus asserts that there is no basis for a new trial just because Lawson's rights "may" have been prejudiced. (ePlus Response Br. at 20.) But that is the whole point—when irrelevant and prejudicial evidence is wrongly admitted that may have affected the outcome in the case, a party is entitled to a new trial. *See, e.g.*, *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("If one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected."); *Jordan v. Medley*, 711 F.2d 211, 218-19 (D.C. Cir. 1983) (Scalia, J.) (determining whether the wrongful admission of evidence affects a party's substantial rights "involves an assessment of the *likelihood* that the error affected the outcome of the case") (emphasis added); *Willitt v. Purvis*, 276 F.2d 129, 132 (5th Cir. 1960) ("the court having admitted irrelevant and prejudicial evidence was under a duty to grant a new trial").

Contrary to ePlus's assertions, any limiting instruction did not remedy this issue. (ePlus Response Br. at 20-21.) The jury should never have heard about the litigation settlements and it

9

should never have been given the amounts for any purpose. The fact that the jury was not asked to decide damages does not cure this error. Nor does the fact that the jury was not given the litigation settlement agreements—the prejudice stemmed from the jury being told of their existence and the amounts of the settlements. Thus, Lawson is entitled to a new trial on invalidity.

> E. **Lawson is Entitled to a New Trial on Infringement Because of ePlus's Prejudicial Questioning Regarding Lawson's Opinion of Counsel and Implication that Lawson's Failure to Waive Privilege Demonstrated Knowing Wrongdoing.**

ePlus ignores the basis for Lawson's new trial motion with respect to ePlus's prejudicial questions regarding privileged issues. ePlus intentionally and without any basis sought to imply knowing and deliberate wrongdoing based on Lawson's decision to maintain the attorney-client privilege. ePlus was well aware that Lawson had not waived privilege with respect to its opinions. No case supported ePlus's effort to use Lawson's privilege claim to support bad intent. This wrongful behavior entitles Lawson to a new trial. The fact that Lawson's counsel objected and that Lawson declined to waive the privilege preserved rather than eliminated the error, as it forced Lawson to appear to the jury that it did not want to produce the opinions

ePlus suggests that this prejudice was cured by the Court's jury instruction that "Something came up during the trial that I need to sort out for you. Several days ago, Mr. Christopherson testified, and there was some testimony about whether Lawson obtained an opinion of counsel of non-infringement or invalidity on the patents. I instruct you now that I have excluded that testimony. That issue is simply not pertinent to the case. It has nothing to do with the case, and I'm instructing you to disregard whatever was said about the intention or nonintention of counsel by Lawson." (Trial Tr. at 3240:10-17 (Ex. 3).) But the bell, as they say, cannot be unrung. *See, e.g.*, *United States v. Delgado*, 631 F.3d 685, 706 (5th Cir. 2011) ("[A]s

10

this Court observed in overturning a conviction because of improper prosecutorial comment, despite a curative instruction, once such statements are made, the damage is hard to undo: 'Otherwise stated, one cannot unring a bell; after the thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it.'" (citations omitted)).  While it may be true that juries are expected to follow the Court's instructions, in this instance the question was not whether the jury followed the law but whether the jury could forget that Lawson apparently sought advice of counsel but was unwilling to share it, and infer from that "evidence" that the advice must have been adverse to Lawson.  Especially in view of the lack of any other evidence of intent to infringe, this error cannot be ignored.

ePlus defends its wrongful conduct by suggesting that Lawson "asked for it" during Mr. Christopherson's direct examination.  Specifically, ePlus points to Mr. Christopherson's testimony relating to the patents-in-suit.  (ePlus Response Br. at 24-26.)  This testimony does not justify ePlus's wrongdoing.  First, the Court sustained ePlus's objections to the questions ePlus now relies upon.  (Trial Tr. at 1570:9-1572:17 (Ex. 3).)  Further, Lawson only asked Mr. Christopherson, a non-lawyer technical person, about the patents because ePlus first asked about them in its case.  (*Id.* at 1571:17-25.)  Finally, Lawson's questions were limited to his personal, non-privileged assessments and recommendations.  (*Id.* at 1576:24-1577:4.)

Contrary to ePlus's arguments, Mr. Christopherson was not testifying as an expert— indeed, the Court specifically precluded him from doing so.  (Trial Tr. at 1574:18-1575:16.)  Nothing in Lawson's questioning opened the door for ePlus to mention, or seek waiver of, the attorney-client privilege.  The jury's infringement findings were thus tainted and new trial with

11

respect to the jury's findings of infringement that may have included indirect infringement findings that require intent to infringe is warranted.

### F. Lawson is Entitled to a New Trial Because the Jury was Instructed on a Legal Standard Significantly Lower than the One Set forth in the New Supreme Court's SEB Decision.

As discussed in detail in Lawson's opening brief and in its reply in support of its motion to amend the injunction, the Supreme Court's *SEB* case set forth a new standard for indirect infringement entirely different from and more stringent than the one ePlus convinced the Court to instruct the jury. The jury instructions were erroneous in two separate ways: (1) the standard for knowledge of ePlus's patents was too low, and (2) the intent requirement overall was too low. (Doc. No. 762 at 19-22; Doc. No. 772 at 5-9.) ePlus's assertions that the jury instruction is consistent with the *SEB* case cannot stand.

Nor did Lawson waive its argument with respect to the intent to act versus intent to infringe issue. Lawson made a record of its objection on this point throughout the case. The last exchange cited by ePlus is reconciled with the prior objections as merely acknowledgement that the Court had previously ruled against Lawson on the issue, and the record had already been made. Indeed, as shown in Lawson's opening brief and its brief in support of its motion to amend, Lawson specifically proposed instructions requiring knowledge of ePlus's patents and specific intent to infringe, and noted that the pending Supreme Court decision may change the law on this issue, before the Court instructed the jury. (Doc. No. 750 at 6; Doc. No. 762 at 21.) The record shows no waiver of Lawson's ability to rely on any change in the law that may arise from the *SEB* decision.

ePlus suggests that even if the jury instructions were legally erroneous, such an error is harmless because the jury *could have* found for ePlus either under the proper standard. (ePlus

12

Response Br. at 28.) That analysis does not save the verdict. The only evidence at trial demonstrated that Lawson did not intend to infringe and that it did not act with willful blindness. (*See* Doc. No. 760 at 8-9; Doc. No. 762 at 22; Doc. No. 772 at 6-11.) Willful blindness, for example, requires affirmative acts to avoid knowledge, which was neither alleged, argued, nor proven by ePlus in this case. Thus, the instructions as whole did not meet the standard set forth in *SEB* and the error was harmful. Further, the question of whether there was infringement under the proper standard is for the jury after it considers the issue using the proper legal standard. When the jury is given the wrong legal standard in the jury instruction, the Court should grant a new trial. *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1275 (Fed. Cir. 2000).

      That Lawson was aware of the patents after the Complaint was filed does not support the jury's verdict. First, at most that would apply to post-Complaint sales. In obtaining a broad injunction, ePlus relied on the infringement finding for pre- and post-Complaint sales by Lawson. By now relying just on post-Complaint sales to prove intent, ePlus attempts to have it both ways, and completely undermines the broad injunction involving pre-Complaint sales. Further, the evidence at trial did not show any post-Complaint activity involving any particular infringing configuration, and ePlus did not argue as much. Further, knowledge of the patents is not the only requirement—the other elements that the jury was not instructed on must also be met.

      ePlus further suggests that even if the jury instructions were legally erroneous, the error was harmless because the jury could have found for ePlus or under another theory of infringement, such as direct or contributory infringement. (ePlus Response Br. at 28 n.22.) This too is faulty analysis. The Supreme Court has repeatedly explained that a new trial is required when a jury's decision could be based on an erroneous legal theory, even if other theories were

13

also pursued, because the jury could have improperly based its decision on the legally erroneous theory. *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 30 (1962) ("Since we hold erroneous one theory of liability upon which the general verdict may have rested -- a conspiracy among petitioners and Exchange Lemon -- it is unnecessary for us to explore the legality of the other theories."); *United New York & New Jersey Sandy Hook Pilots Assoc. v. Halecki*, 358 U.S. 613, 619 (1959) ("It follows from what has been said that a new trial will be required, for there is no way to know that the invalid claim of unseaworthiness was not the sole basis for the verdict."); *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884) ("[A general verdict's] generality prevents us from perceiving upon which plea they found. If, therefore, upon any one issue error was committed, either in the admission of evidence or in the charge of the court, the verdict cannot be upheld. . . ."). The jury's infringement findings were not based on the proper standard and new trial is warranted.

### G. Lawson is Entitled to a New Trial Because of Cumulative Issues.

The issues addressed above are sufficient on their own to grant Lawson a new trial for the reasons it requests. The combined issues also are sufficient to warrant a new trial for the reasons set forth in Lawson's opening brief and above. (Doc. No. 762 at 26-27.)

ePlus argues that the cumulative error doctrine does not exist in the civil context because the case Lawson relies upon is an unpublished Fourth Circuit case. (ePlus Response Br. at 29.) First of all, *Kozlowski* is the law, published or not. *Kozlowski v. Hampton School Board*, No. 02-1485, 2003 U.S. App. LEXIS 20226 (4th Cir. Oct. 3, 2003). Indeed, Fourth Circuit rules do not prohibit citation to unpublished cases, especially when "there is no published opinion that would serve as well". 4th Cir. L. R. 32.1. Second, ePlus does not dispute that the doctrine has been recognized extensively in Fourth Circuit criminal cases. *See United States v. Martinez*, 277 F.3d

14

517, 532-34 (4th Cir. 2002).  Nor does ePlus dispute that the doctrine is widely used in civil cases in other circuits, including the Federal Circuit.  *See Beck v. Haik*, 377 F.3d 624, 644-45 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc); *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 188 (7th Cir. 1993); *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993); *Hendler v. United States*, 952 F.2d 1364, 1383 (Fed. Cir. 1991); *Gordon Mailloux Enters., Inc. v. Firemen's Ins. Co. of Newark*, 366 F.2d 740, 742 (9th Cir. 1966).  Third, even the unpublished case ePlus relies upon suggests that the cumulative error doctrine may apply in civil cases—indeed, it states "[a]ssuming without deciding that such a doctrine is appropriate in the civil context"—but determines it need not decide the issue based on the facts of the case.  *Anthony v. Ward*, No. 07-1932, 2009 U.S. App. LEXIS 14847, at *30 (4th Cir. July 7, 2009).  Thus, the cumulative error doctrine is a basis to grant a new trial here.

Second, ePlus asserts that if none of the individual issues in this case rise to the level of a new trial, they should not do so in combination.  (ePlus Response Br. at 29-30.)  As shown above, however, the prior art at issue is strong enough to result in rejecting ePlus's patents in reexaminations, and the other issues go the main issues in the case—infringement and invalidity.  The combination of issues shows that a new trial is appropriate.

**II.     Conclusion**

For the foregoing reasons, Lawson respectfully requests that this Court grant it a new trial with respect to the findings of infringement by the jury and their findings that the asserted claims are not invalid.

15

LAWSON SOFTWARE, INC.

By: _____/s/_____
        Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Donald R. Dunner (admitted *pro hac vice*)
Erika H. Arner (admitted *pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

*Counsel for Defendant Lawson Software, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on this 8th day of July, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Craig T. Merritt<br>Henry I. Willett, III<br>**CHRISTIAN & BARTON, LLP**<br>909 East Main Street, Suite 1200<br>Richmond, Virginia 23219-3095<br>cmerritt@cblaw.com<br>hwillett@cblaw.com | James D. Clements<br>Goodwin Procter, LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109-2881<br>jclements@goodwinprocter.com |

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

      /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*