```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF VIRGINIA

 3                         RICHMOND DIVISION

 4


 5     ---------------------------------------
                                              :
 6      ePLUS, INC.                           :   Civil Action No.
                                              :   3:09CV620
 7      vs.                                   :
                                              :
 8      LAWSON SOFTWARE, INC.                 :   January 4, 2011
                                              :
 9     ---------------------------------------

10

11            COMPLETE TRANSCRIPT OF THE JURY TRIAL

12             BEFORE THE HONORABLE ROBERT E. PAYNE

13           UNITED STATES DISTRICT JUDGE, AND A JURY

14
       APPEARANCES:
15
       Scott L. Robertson, Esquire
16     Michael G. Strapp, Esquire
       Jennifer A. Albert, Esquire
17     David M. Young, Esquire
       Goodwin Procter, LLP
18     901 New York Avenue NW
       Suite 900
19     Washington, D.C.  20001

20     Craig T. Merritt, Esquire
       Christian & Barton, LLP
21     909 East Main Street
       Suite 1200
22     Richmond, Virginia  23219-3095
       Counsel for the plaintiff
23

24                     Peppy Peterson, RPR
                       Official Court Reporter
25                  United States District Court
```

1   these patents are still valid, and presumed valid, as
2   the Court indicated to you this morning, and they
3   didn't have an expiration date for another five,
4   actually even six years, which is quite remarkable
5   when you look back to technology that was created in
6   1994 and is still vibrant, alive, and being used
7   today.  In this case actually it's been enormously
8   successful because there are dozens of companies out
9   there now that employ this kind of technology.
10            So if I could just emphasize a few points
11  from that videotape that we saw this morning.  I don't
12  want to go over it again, but I think this is
13  appropriate.  I'd like to put it in the context of
14  these patents if I could.
15            Patents are different from other ways to try
16  and protect what are your ideas or your inventions or
17  it's often known as intellectual property.  You have
18  probably heard of trade secrets like the famous one is
19  the formula or the recipe for Coca-Cola.  You can
20  maintain that as a trade secret.  Why?  Because it's
21  difficult sometimes to reverse engineer.  There's
22  nothing improper about it.  And it might be the best
23  way to protect that kind of intellectual property.  Or
24  you can obtain a patent as the video indicated is a
25  limited right to exclude others from practicing your

1  A    May 10, 2009.
2  Q    Is that when you first learned about the law suit
3  that ePlus had filed against Lawson?
4  A    Yes.
5  Q    What did you do when you learned that ePlus had
6  filed suit against Lawson for patent infringement?
7  A    What I first did was I got the three patents and
8  reviewed those, read those.
9  Q    What did you think when you finished reading those
10 patents?
11         MR. ROBERTSON:  Objection, Your Honor.  This
12 is calling for a legal conclusion and it's --
13         THE COURT:  I'm sorry?
14         MR. ROBERTSON:  It's calling for a legal
15 conclusion, Your Honor, and it's not relevant.
16         THE COURT:  What did he think?  Is that the
17 question?
18         MS. STOLL-DeBELL:  Yes, what did he think.
19         MR. ROBERTSON:  It's a little vague and
20 ambiguous, too.
21         THE COURT:  Well, I think maybe that's the
22 right objection.  Sustained.
23         We have to have a more precise question to
24 understand whether it's objectionable or not.
25         MS. STOLL-DeBELL:  Okay.

CHRISTOPHERSON - DIRECT                1571

1  BY MS. STOLL-DeBELL:
2  Q   After reading the patents, did you think Lawson
3  had a problem with these patents?
4           MR. ROBERTSON:  Objection.  That's an
5  important question and that's leading.
6           THE COURT:  Well, it is.  Sustained.
7  BY MS. STOLL-DeBELL:
8  Q   What was your first reaction after reading the
9  patents?
10          MR. ROBERTSON:  Objection, vague and
11 ambiguous.
12          MS. STOLL-DeBELL:  Your Honor, I'm trying --
13          THE COURT:  I guess my basic inquiry here is
14 why is it that what he thinks is relevant?  To what
15 issue does it go that this jury has to decide?  That's
16 the question.  So just name the issue that it goes to.
17          MS. STOLL-DeBELL:  It goes to the intent
18 element of indirect infringement.  And Mr. Robertson
19 actually asked Mr. Christopherson about this same
20 topic when he put him on the stand in his case.  And
21 so it goes to that.
22          MR. ROBERTSON:  I didn't ask him anything
23 about what he thought or his reaction or anything.  I
24 just asked him if he was aware that a lawsuit was
25 filed and if he had notice since that date.

CHRISTOPHERSON - DIRECT                1572

1          THE COURT: What he thought is the irrelevant
2  to this case except with respect to the intent element
3  of indirect infringement; is that right?
4          MS. STOLL-DeBELL: Yes.
5          THE COURT: This information can be
6  considered by you, ladies and gentlemen, only in
7  deciding whether or not a certain element of in
8  direction infringement has been met, and that is
9  whether there was an intent to have an infringement.
10 And so you can consider it for that purpose and that
11 purpose alone. And I'll give you some more
12 instructions later about what indirect infringement
13 is.
14         But for your purposes, you can just keynote
15 this testimony of what his reaction was goes to the
16 intent to indirectly infringe or to have indirect
17 infringement. Excuse me. Go ahead.
18 Q   Can you go ahead and answer the question?
19 A   Can you restate the question. It's been awhile.
20 Q   Sure. After you read the patents, what was your
21 first reaction?
22 A   My first reaction was that it didn't appear as
23 though we were actually doing that, the three patents.
24 Q   Why did you think it didn't appear that you were
25 doing what was in the three patents?

1    MR. ROBERTSON: Your Honor, now I'm going to
2  object. This calls for a legal conclusion and an
3  expert opinion.
4    MS. STOLL-DeBELL: Your Honor, it doesn't.
5  I'm asking him what he thought. I'm not asking him
6  for his opinion. I'm not asking him about the claims.
7    THE COURT: When you asked him what he
8  thought, why isn't that asking him for an opinion?
9    MS. STOLL-DeBELL: Well, I suppose it is a
10 lay opinion on some level, but Mr. Robertson asked him
11 what Lawson as a company did after this lawsuit was
12 filed. And Mr. Christopherson was involved in that,
13 and I'm just trying to inquire further into the issue
14 of Lawson's intent.
15   THE COURT: What he said was he didn't think
16 that Lawson practiced the patent. That's what his
17 reaction was.
18   MS. STOLL-DeBELL: Yes.
19   THE COURT: And you want to know why he
20 thought that?
21   MS. STOLL-DeBELL: Yes.
22   THE COURT: You can consider that for the
23 same limited purpose, ladies and gentlemen.
24 BY MS. STOLL-DeBELL:
25 Q   Why did you think that Lawson was doing something

1  different than what was in the patents?
2  A   Keep in mind, this is the first initial look at
3  the patents.  Some of the key things I was noticing
4  were catalogs and what I was going back to was the
5  state of where catalogs were back in the mid '90s or
6  around the time the patents were filed.  And in
7  looking at screens, for instance, and they were
8  mentioning page numbers from catalogs.  Very much like
9  a printed catalog except they turned it into an
10 electronic form.  That was the first thing.
11 Q   Why did you think that was different from what
12 Lawson was doing?
13           MR. ROBERTSON:  Objection, Your Honor.
14 There's a claim construction in this case with respect
15 to catalog, and now we're asking the lay witness to
16 opine on what his understanding of a catalog is.  It
17 doesn't have any relevancy to this case.
18           THE COURT:  You're getting into expert
19 testimony, and he wasn't qualified as an expert, and
20 what you're doing is you're offering it without a
21 report or anything.  And he's involved in in-house
22 development of the systems and knows about them, and
23 he can be qualified as a person who's an expert, but
24 he wasn't.
25           MS. STOLL-DeBELL:  Your Honor, first of all,

1   he's just testifying in his capacity as an employee
2   for Lawson.  So I don't think there was a requirement
3   for him to do an expert report.
4          THE COURT:  If he's giving expert testimony,
5   if he' testifying as an expert for Lawson, he has to
6   give a report.  I don't care whether he's an employee
7   or not.
8          MS. STOLL-DeBELL:  He wasn't professionally
9   retained to give expert testimony.
10          THE COURT:  You can't have an employee
11  professionally retained or otherwise give expert
12  testimony without a report.
13          MS. STOLL-DeBELL:  Okay.  I don't think it
14  matters because I don't think I'm asking him for
15  expert testimony.  I want to -- I think it goes to the
16  intent --
17          THE COURT:  You're just asking him whether he
18  thought Lawson did something different.
19          MS. STOLL-DeBELL:  Yes, were they different.
20          THE COURT:  Okay.  Why don't you ask him
21  that?
22  BY MS. STOLL-DeBELL:
23  Q   Did you think Lawson was doing something different
24  than the patents?
25  A   Yes.

1  Q    Did you have a meeting with your team members
2  regarding the lawsuit?
3  A    Yes.
4  Q    Did they agree with you?
5           MR. ROBERTSON:  Objection, Your Honor.
6           MS. STOLL-DeBELL:  Let me ask a better
7  question.
8           THE COURT:  Yes.  She's going to ask a
9  different question.
10 BY MS. STOLL-DeBELL:
11 Q    Did they agree with you that what Lawson was doing
12 was different than the patents?
13          MR. ROBERTSON:  Objection, Your Honor.  It
14 still calls for a legal conclusion, and it's
15 inappropriate expert testimony, and it's hearsay.
16          THE COURT:  It's sustained as hearsay.  It's
17 offered for the truth of the matter.  So it doesn't
18 have any nonhearsay use.
19 BY MS. STOLL-DeBELL:
20 Q    Was it your recommendation that Lawson not make
21 any changes --
22          THE COURT:  What did you do after this?  Ask
23 him.  Let him testify.
24 Q    What did you do after you read the patents?
25 A    I'll provided recommendation that in my belief, my

1  reading, we weren't doing that patent, first, and that
2  they didn't need to do any changes with the software
3  that was currently available.
4          MS. STOLL-DeBELL:  I have no further
5  questions right now, Your Honor.
6          THE COURT:  All right.  Cross-examination.
7
8     CROSS-EXAMINATION
9  BY MR. ROBERTSON:
10 Q   Let's start with that last topic first if we
11 could, Mr. Christopherson.
12 A   Sure.
13 Q   You did something else, didn't you, sir, besides
14 making the recommendation that no changes would be
15 made to the software?
16 A   I'm not sure what you're referring to, sir.
17 Q   Lawson went out and sought a legal opinion with
18 respect to these patents, didn't they, sir?
19         MS. STOLL-DeBELL:  Objection, Your Honor.  I
20 don't think it's appropriate to get into whether we
21 got an opinion or not.  It's not relevant.
22         MR. ROBERTSON:  It goes to the whole intent
23 issue, Your Honor, under the *Broadcomm v. Qualcomm*
24 case.
25         MS. STOLL-DeBELL:  Your Honor, it goes to

1   jury instructions that you're going to give, and I
2   think there's a disputed issue of law here on that
3   point.  And I think the law is clear that we don't
4   have to get into it.  It's just not relevant.  We
5   shouldn't be getting into this.  We have no duty to go
6   get an opinion.  And so he shouldn't be getting into
7   this.  It's prejudicial.
8           MR. ROBERTSON:  The door was opened, Your
9   Honor, when they asked him what he did and steps he
10  took.  And under the *Broadcom v. Qualcomm* case, if he
11  sought a legal opinion and then failed to disclose it,
12  that can go to the intent issue, and that's what I
13  want to ask him.
14          MS. STOLL-DeBELL:  I was going to say I asked
15  him what he thought and what he did.  I did not ask
16  him about any communications he had with any of
17  Lawson's attorneys outside or inside.  I was merely
18  asking him what he personally thought and what he did.
19  So it's outside the scope as well.
20          THE COURT:  Well, I don't think it is.  I
21  think it's fair cross-examination.
22          Just answer the question yes or no because
23  I'm going to have to take it question by question.  I
24  think what he did, whether he got a legal opinion, can
25  be considered depending on what the answer is.  If his

1  answer was no, he didn't, then I'll tell the jury one
2  thing.  If the answer is yes, then I have to tell the
3  jury something else.
4           So the objection is overruled.  You may
5  answer the question whether you sought a legal opinion
6  respecting whether your products infringed.
7           MR. ROBERTSON:  Well, actually, I don't know
8  what the legal opinion says and whether it was
9  infringement, Your Honor, or was some other basis.
10          THE COURT:  All right.  You can ask your own
11 question.  Did you seek a legal opinion of any kind,
12 whatever?
13          MR. ROBERTSON:  Yes.
14 BY MR. ROBERTSON:
15 Q   I don't want to know the content of that because
16 that was privileged; however, the fact is you didn't
17 turn it over in discovery to ePlus; isn't that right?
18          MS. STOLL-DeBELL:  Objection, Your Honor.
19 That's really not relevant and it's outside the scope
20 of my direct examination and --
21          THE COURT:  I'm waiting to hear what you have
22 to say.  I thought you were conferring with Mr.
23 McDonald about what you were going to say.  And so I
24 just held everything in abeyance until you finished
25 your remarks.

1           MS. STOLL-DeBELL:  So I think the objection
2  is outside the scope of my direct, not relevant,
3  prejudicial.
4           THE COURT:  Why is it relevant?
5           MR. ROBERTSON:  It's relevant --
6           THE COURT:  What case?
7           MR. ROBERTSON:  *Broadcom v. Qualcomm*, Your
8  Honor.  In that case, the accused infringers --
9           THE COURT:  I'll tell you what we'll do.
10  I'll deal with this at a recess.  You can have the
11  right to come back into this area.
12           MR. ROBERTSON:  All right.  Thank you, Your
13  Honor.
14           THE COURT:  You don't have that case with
15  you, do you?
16           MR. ROBERTSON:  We actually have a brief on
17  it, Your Honor, that we can probably produce to you
18  during the lunch break.
19           MS. STOLL-DeBELL:  We've got some case law to
20  support our position, too, Your Honor, and we'll get
21  that for you, too.
22           THE COURT:  All right.
23  BY MR. ROBERTSON:
24  Q   Mr. Christopherson, just refresh me again, you are
25  director of development for the S3 application?

1  recollection, isn't an uncommon experience.  And so in weighing
2  the effect of some discrepancy, always consider, does that
3  discrepancy pertain to a matter of importance or to some
4  unimportant detail?  And does that discrepancy result from
5  innocent error or from deliberate falsehood?
6          After making your own judgment, you're going to give
7  the testimony of each witness such credibility, if any, as you
8  may think it deserves.  That is up to you to do.
9          Something came up during the trial that I need to
10 sort out for you.  Several days ago, Mr. Christopherson
11 testified, and there was some testimony about whether Lawson
12 obtained an opinion of counsel of non-infringement or
13 invalidity on the patents.  I instruct you now that I have
14 excluded that testimony.  That issue is simply not pertinent to
15 the case.  It has nothing to do with the case, and I'm
16 instructing you to disregard whatever was said about the
17 intention or nonintention of counsel by Lawson.
18         Now, several times during the trial, the lawyers have
19 pulled out depositions and have asked a witness a question and
20 said, on such and such a date, didn't you say this after the
21 witness has said something here in court.
22         A deposition is a sworn statement made out of court
23 but under oath, but the testimony of a witness can be
24 discredited or impeached by showing that a witness made
25 statements earlier which are different or are inconsistent with

1            THE COURT:  All right.  In Section II,
2   validity, (A) what are we supposed to use to define
3   "Fisher RIMS" in A?
4            Next question:  Since J-CON and P.O. Writer
5   aren't listed on our verdict sheet, are we to consider
6   them as prior art?  Isn't that what they were included
7   in the case for?
8            Next question:  Was P.O. Writer meant to be
9   considered as a competing, similar system or was that
10  evidence not to be included in deliberations?
11           Next question:  In jury instruction, Judge
12  Payne spoke of anticipation.  Two items combined are
13  not prior art.  So anticipation does not apply
14  anymore; is that correct?
15           Let's take the easy ones first at the back.
16  I propose to call them back in here and refer them to
17  the anticipation instructions and to remind them that
18  you can't combine two pieces of prior art for purposes
19  of anticipation, that it all has to be -- that you
20  have to consider whether there's anything in one
21  single prior reference, prior art reference.  And
22  anticipation is in the case but not in terms of the
23  combination, that the combination applies only to the
24  obviousness; is that right?
25           MR. ROBERTSON:  I think, Your Honor, there