UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,487 | 08/21/2009 | 6505172 | 54848-5016-US | 8473 |

70813          7590          01/13/2011
GOODWIN PROCTER LLP
901 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20001

| EXAMINER |
|---|
| POKRZYWA, JOSEPH R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/13/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
MERCHANT & GOULD PC
P O BOX 2903
MINNEAPOLIS, MN 55402-0903

Date: MAILED

JAN 13 2011

CENTRAL REEXAMINATION UNIT

### Transmittal of Communication to Third Party Requester
### Inter Partes Reexamination

REEXAMINATION CONTROL NO. : 95000487
PATENT NO. : 6505172
TECHNOLOGY CENTER : 3999
ART UNIT : 3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070(Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS                    Date:
MERCHANT & GOULD PC
P O Box 2903
MINNEAPOLIS, MN 55402-0903

## Transmittal of Communication to Third Party Requester
## Inter Partes Reexamination

REEXAMINATION CONTROL NO. : 95000487
PATENT NO. : 6505172
TECHNOLOGY CENTER : 3999
ART UNIT : 3993


Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.


PTOL-2070(Rev.07-04)

| *Right of Appeal Notice* *(37 CFR 1.953)* | Control No. 95/000,487 | Patent Under Reexamination 6505172 |
|---|---|---|
| | Examiner JOSEPH R. POKRZYWA | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>9 August 2010</u>
Third Party(ies) on <u>8 September 2010</u>

Patent owner and/or third party requester(s) may file a notice of appeal with respect to any adverse decision with payment of the fee set forth in 37 CFR 41.20(b)(1) within **one-month or thirty-days (whichever is longer)**. See MPEP 2671. In addition, a party may file a notice of **cross** appeal and pay the 37 CFR 41.20(b)(1) fee **within fourteen days of service** of an opposing party's timely filed notice of appeal. See MPEP 2672.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

If no party timely files a notice of appeal, prosecution on the merits of this reexamination proceeding will be concluded, and the Director of the USPTO will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

The proposed amendment filed _____   ☐ will be entered   ☐ will not be entered*

*Reasons for non-entry are given in the body of this notice.

1a. ☒ Claims <u>1-5</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims].
4. ☐ Claims _____ are patentable. [Amended or new claims].
5. ☒ Claims <u>1-5</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____   ☐ are acceptable.   ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is ☐ approved.   ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d) or (f). The certified copy has:
    ☐ been received.   ☐ not been received.   ☐ been filed in Application/Control No. _____.
10. ☐ Other _____

**<u>Attachments</u>**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

Application/Control Number: 95/000,487                                    Page 2
Art Unit: 3992

## DETAILED ACTION

### *Summary of Proceedings*

1.      Claims 1-5 originally issued in U.S. Patent Number 6,505,172 (hereafter "the '172

Patent") on January 7, 2003.  During this *inter partes* reexamination proceeding, no amendments

by the Patent Owner were made to claims 1-5, therein claims 1-5 remain in their original

patented state.


2.      With the Patent Owner's current response dated 8/9/2010, which is responding to the

Action Closing Prosecution dated 7/8/2010, claims 1-5 of the '172 Patent remain subject to the

current reexamination proceeding.  The Third Party Requester submitted comments on 9/8/2010

in response to these arguments by the Patent Owner.

Application/Control Number: 95/000,487                                    Page 3
Art Unit: 3992

### *Information Disclosure Statement*

3.      The references listed in the Information Disclosure Statement submitted on 9/10/2010

have been considered by the examiner (see attached PTO/SB/08A).


4.      Continuing, the examiner notes that the Court documents submitted in the above noted

Information Disclosure Statement have been received, and considered, but are not proper to be

listed on an Information Disclosure Statement, as the documents are not proper to be printed on

the face of a Reexamination Certificate, once issued.  Thus, this citation has been indicated as

having a line through the citation in the Information Disclosure Statement.

Application/Control Number: 95/000,487                                Page 4
Art Unit: 3992

### *Cited Prior Art of Record*

5.      The Action Closing Prosecution dated 7/8/2010 cites the following prior art patents and

printed publications in rejections that render claims 1-5 of the '172 Patent as unpatentable:

      a.      U.S. Patent Number 6,963,551, issued to Doyle *et al*. (noted as the "Doyle '551

            Patent");

      b.      U.S. Patent Number 5,712,989, issued to Johnson *et al*. (noted as "the '989

            Patent");

      c.      "A Practical Guide to SABRE Reservations and Ticketing", written by Jeanne

            Semer-Purzycki, having a copyright date of 1992 (noted as the "SABRE Practical

            Guide");

      d.      J-CON Manual, Volume 1, published by Cooperative Computing Incorporated,

            April 1994 (noted as the "J-CON Manual");

      e.      "Gateway 2000/MRO Version Manual" published by TSA incorporated, being

            dated May 1991 (noted as the "Gateway 2000/MRO Version Manual"); and

      f.      P.O. Writer Plus V.10 Manual, 1993 (noted as the "P.O. Writer Plus Manual").

Application/Control Number: 95/000,487                                    Page 5
Art Unit: 3992

### *Ground's for Rejection*

6.      In the Action Closing Prosecution dated 7/8/2010, the <u>adopted</u> grounds for rejection of

claims 1-5 of the '172 Patent were as follows:


**Ground#1.**

        Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being anticipated

by the Doyle '551 Patent.  This rejection of claims 1-5, as being anticipated by the Doyle '551

Patent, remains <u>adopted</u>.


**Ground#2.**

        Claims 1 and 3-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being

anticipated by the Johnson '989 Patent.  This rejection of claims 1 and 3-5, as being anticipated

by the Johnson '989 Patent, remains <u>adopted</u>.


**Ground#4.**

        Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated

by the SABRE Practical Guide.  This rejection of claims 1-5, as being anticipated by the SABRE

Practical Guide, remains <u>adopted</u>.

Application/Control Number: 95/000,487                          Page 6
Art Unit: 3992

**Ground#7.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated

by P.O. Writer Plus Manual. This rejection of claims 1-5, as being anticipated by the P.O.

Writer Plus Manual, remains <u>adopted.</u>

**Ground#8.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(e) as being anticipated

by the J-CON Manual. This rejection of claims 1-5, as being anticipated by the J-CON Manual,

remains <u>adopted</u>.

**Ground#9.**

Claims 1-5 of the '172 Patent to be rejected under 35 U.S.C. 102(b) as being anticipated

by the Gateway 2000/MRO Manual. This rejection of claims 1-5, as being anticipated by the

Gateway 2000/MRO Manual, remains <u>adopted</u>.

Application/Control Number: 95/000,487                                          Page 7
Art Unit: 3992

### *Response to the Third Party Comments*

7.      The examiner generally agrees with the comments provided by the Third Party Requester

on 9/8/2010.  The Third Party Requester's comments respond to the arguments provided by the

Patent Owner filed on 8/9/2010.

### *Response to Patent Owner's Arguments*

8.      The Patent Owner's arguments filed 8/9/2010 have been fully considered but they are not

persuasive.  In the arguments dated 8/9/2010, beginning on page 2, the Patent Owner addresses

three main points that are alleged to be errors made by the examiner in the Action Closing

Prosecution (ACP), dated 7/9/2010.

9.      First, the Patent Owner argues that in the ACP dated 7/8/2010, the interpretations set

forth in the declaration of Brooks Hilliard dated 1/25/2010 were improperly dismissed, whereby

the Patent Owner contends that these interpretations are the broadest reasonable interpretations.

Specifically, on page 2 of the arguments, the Patent Owner states "the Patent Owner submitted

the Hilliard Decl. that *inter alia* set forth the proper interpretations of several claim terms."

Additionally, the Patent Owner argues that in the ACP dated 7/8/2010, the examiner failed to

establish why broader interpretations are reasonable interpretations that are consistent with the

specification.

Application/Control Number: 95/000,487                                  Page 8
Art Unit: 3992

10.     With this, reviewing the prosecution history, as discussed in the ACP dated 7/8/2010, the

Patent Owner, as further discussed in the Hilliard Declaration, defines an "Electronic Sourcing

System" as "An electronic system for use by a prospective buyer to locate and find items to

purchase from sources, suppliers, or vendors."  However, the examiner notes that there is no

requirement of a "prospective buyer" in the current language, and the broadest reasonable

interpretation of the term "electronic sourcing system" would simply be "an electronic system to

find items for purchase".  Further, nowhere in the specification of the '172 Patent is the term

"prospective buyer" discussed.  Thus, the Patent Owner's alleged broadest reasonable

interpretation is not seen to be consistent with the specification of the '172 Patent.


11.     Additionally, the examiner notes that in col. 17, lines 1-29, the '172 Patent describes that

a "Customer end user or a Customer purchasing employee" can utilize the system, and

additionally states in col. 18, lines 23-42 that a "distributor purchasing employee" can utilize the

system, acting as an interface with the customer.  With this, in this embodiment discussed in the

specification of the '172 Patent, the distributer is not the "prospective buyer", but rather an

interface to the "customer".  Thus, the Patent Owner's interpretation of the term "Electronic

Sourcing System" provided in the Hilliard Declaration is not the broadest reasonable

interpretation of the term that is consistent with the specification of the '172 Patent.  Rather, the

broadest reasonable interpretation of the term "electronic sourcing system" would simply be "an

electronic system to find items for purchase", which is seen to be consistent with the

specification of the '172 Patent.

12.     Continuing, in the Declaration of Hilliard, on pages 9 and 10, the Declaration expressly

states "In performing my analysis of the proper interpretation to be given to the claims of the

'172 Patent, I have followed the Supreme Court's teaching in *Markman v. Westview Instruments*.

I understand that *Markman* provides that when construing the terms of a patent claim, I should

first look to the 'intrinsic evidence' for their meaning, starting with the language of the claims

themselves...." Thus, the interpretations provided in the Declaration of Mr. Hilliard, which are

discussed and appear to be adopted in the previous arguments by the Patent Owner, are drawn to

the manner in which a court would interpret claims, and not necessarily the broadest reasonable

interpretation standard that is used by the PTO.


13.     In this regard, the examiner notes that MPEP 2111 [R-5] states, in part:

> ...See also *In re Morris*, 127 F.3d 1048, 1054-55, 44 USPQ2d 1023, 1027-28 (Fed. Cir.
> 1997) (The court held that **the PTO is not required, in the course of prosecution, to
> interpret claims in applications in the same manner as a court would interpret
> claims in an infringement suit**. Rather, the "PTO applies to verbiage of the proposed
> claims **the broadest reasonable meaning** of the words in their ordinary usage as they
> would be understood by one of ordinary skill in the art, taking into account whatever
> enlightenment by way of definitions or otherwise that may be afforded by the written
> description contained in applicant's specification.").
> [Emphasis added].


14.     Additionally, MPEP 2111 [R-5] states, in part:

> During patent examination, the pending claims **must be "given their broadest
> reasonable interpretation consistent with the specification."** >The Federal Circuit's *en
> banc* decision in *Phillips v. AWIfCorp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005)

expressly recognized that the USPTO employs the "broadest reasonable interpretation" standard:

> The Patent and Trademark Office ("PTO") determines the scope of claims in patent applications not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction "in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Am. Acad. of Sci. Tech. Cir.*, 367 F.3d 1359, 1364[, 70 USPQ2d 1827] (Fed. Cir. 2004). Indeed, the rules of the PTO require that application claims must "conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 CFR 1.75(d)(I).

415 F.3d at 1316, 75 USPQ2d at 1329. See also *In re Hyatt*, 2.11 F.3d 1367, 1372, 54 USPQ2d 1664, 1667 (Fed. Cir. 2000). **Applicant always has the opportunity to amend the claims during prosecution, and broad interpretation by the examiner reduces the possibility that the claim, once issued, will be interpreted more broadly than is justified.** *In re Prater*, 415 F.2d 1393, 1404-05, 162 USPQ 541,550-51 (CCPA 1969). [Emphasis added]

15.     Therefore, the claim terms are to be interpreted under the "broadest reasonable interpretation" standard.  With this, as discussed in the ACP, the term "catalog" is defined in the Declaration of Mr. Hilliard as "an organized collection of items and associated information which typically includes, for example, a part number, price, catalog number, vendor name, vendor ID, a textual description of an item, and images of or relating to the item", whereby the inclusion of the phrase "which typically includes, for example, a part number, price, catalog number, vendor name, vendor ID, a textual description of an item, and images of or relating to the item" is not part of the broadest reasonable interpretation of the term.  The definition

provided in the Hilliard Declaration would not be the broadest reasonable interpretation, as the

examiner believes that the broadest reasonable interpretation of the term would simply be "an

organized collection of items and information. Further, as noted in the ACP dated 7/8/2010, the

term "catalog" does not even appear in any of claims 1-5 of the '172 Patent.


16.     Further, the Patent Owner defines a "requisition" as "a formal request to purchase

something", "purchase order" as "a commission or instruction to buy something", and "source"

as "when used as a noun, a supplier, vendor or distributor of products or services." However, the

examiner notes that these definitions are not seen to be the broadest, reasonable definitions of the

terms that is consistent with the specification. For instance, a "requisition" can simply be "a

request to purchase something", whereby there is no requirement of the request being a "formal

request". Further, a "purchase order" can be "an order to buy something", and a "source" can be

"an origination of something", not necessarily being "a supplier, vendor, or distributor".


17.     Continuing, on page 3, the Patent Owner argues that "in the ACP, includes numerous

instances where unreasonably broad claim interpretations are employed that are inconsistent with

the meanings of such terms as used in the specification." and "the Examiner asserts that the part

number lookup function of the '989 Patent shows the limitation of claim 1 that the database is

'maintained such that selected portions of the database may be searched separately.'...A part

number lookup is not structurally equivalent to conducting a search of selected portions of the

database using a search engine program, as described in the patent specification and claims. The

Application/Control Number: 95/000,487                                    Page 12
Art Unit: 3992

claims of the patent are written in means plus function format and require analysis under the

sixth paragraph of 35 U.S.C. 112."


18.     In this regard, claim 1 requires "means for searching for matching items that match the

entered product information in the selected portions of the database".  But looking at the

structure described in the specification of the '172 Patent, the "means for searching" is not

described as a "search engine program".  Rather, in col. 4, lines 6-14, the '172 Patent states

"Electronic sourcing system 5 also includes a requisition/purchasing system 40, preferably but

not necessarily the Fisher RIMS system, and a search program 50 that is capable of searching

through large volumes of information quickly and accurately.  Preferably but not necessarily, the

Technical Viewer 2 search program ("TV/2"), available from IBM, is used as search program

50."  With this, the means for searching, as described in the specification of the '172 Patent, is a

"search program".  As described in the ACP, the various references cited in the rejections teach

of "programs" that provide the searching function.


19.     In the previous response, the Patent Owner pointed to the Hilliard Declaration, which

describes the function being performed by a "search engine".  However, as noted above, the

specification of the '172 Patent does not expressly describe the function described in the Hilliard

Declaration.  Recall that the claims are interpreted in the broadest reasonable interpretation

standard, in light of the specification.  With this the programs that perform a searching function

described in the cited prior art, are in a broad and reasonable manner, consistent with the

Application/Control Number: 95/000,487                                      Page 13
Art Unit: 3992

specification of the '172 Patent, are seen to teach of a "means for searching for matching items

that match the entered product information in the selected portions of the database".


20.     Additionally, as discussed in the comments provided by the Third Party Requester on

page 2, "The Patent Owner continues to press for adoption of Mr. Hilliard's narrower

constructions of the claim terms. See Comments dated August 9, 2010 at 3 ('Mr. Hilliard sets

forth the broadest reasonable interpretation of the claims.').  However, since the Patent Owner's

last response, broader interpretations than those provided by Mr. Hilliard were adopted by a

court in copending litigation....Because Mr. Hilliard's constructions are narrower than have been

adopted by the Court, they are necessarily not the broadest reasonable constructions."  The

examiner agrees with the Third Party Requester's observation, in that the Court adopted

interpretations that are narrower than those defined in the Hilliard Declaration.  Thus, those

definitions found in the Hilliard Declaration would not necessarily be the "broadest reasonable

interpretation", as the Court's interpretations are narrower, and the broadest reasonable

interpretation is different, and typically broader than the standard that the Court uses to interpret

claim language.


21.     Continuing, on page 3 of the arguments, the Patent Owner points to the Deposition of

Laurence McEneny to rebut the teachings discussed in the P.O. Writer Plus Guided Tour

(Particularly, page 49, line 2-page 51, line 2, which states "You can now buy this item from Best

Buy, Bayless or any other vendor you would like to select."), whereby the Patent Owner states

that "This citation fails to show that selected portions of the database may be searched

separately. Rather, this excerpt simply indicates that the item has previously been purchased

from Best Buy and Bayless."


22.      However, on page 49, lines 4-12, the McEneny Deposition states "On this particular

screen, which is on creating a purchase order, this screen would typically be used by a buyer.

And a buyer in this product was not limited on who they could buy from. So they could buy

from, in this example, the two suppliers that are shown, Best Buy or Bayless, or the buyer could

pick another supplier that was in the P.O. Writer Plus vendor master file." Further, on page 41,

line 21-page 42, line 5, the McEneny Deposition describes "So if a user was going to look for an

item, and they weren't really sure who they could buy it from, it was common practice, and we

educated people ...to say things like preferred supplier or primary supplier , alternate supplier."

Thus, the P.O. Writer Plus Guided Tour reference is still seen to teach the limitation that

"selected portions of the database may be searched separately", as separate suppliers can be

searched separately.


23.      Continuing, on page 4, the Patent Owner argues that the current claim language requires

an "order list", and the inclusion of the term "ordered list" in the ACP, as pointed out by the

Patent Owner was in error by the examiner. With this, the examiner agrees that the current

language does <u>not</u> include the term "order<u>ed</u> list", and the inclusion of the term was in error by

the examiner. However, the arguments set forth by the examiner in the ACP remain the same

with the term "order list", as the list of flights shown on page 29 of the ACP is seen as being an

"order list", being a "list of desired items".

24.     Continuing, the Patent Owner argues on page 4 that that the specification of the '172

Patent clearly distinguishes between a "hit list" and an "order list", and the Patent Owner appears

to argue that the list of flights from page 54 of the SABRE Practical Guide would be considered

as a "hit list". Particularly, the Patent Owner argues on page 4 that "To interpret the order list as

the list of the results of the search is an unreasonably broad interpretation that is not consistent

with the specification." However, with this, the reference of the SABRE Practical Guide

describes that the customer selects the particular entry from the results of the search. This

selection is considered as the "order list". Further, the examiner notes that currently claim 1 does

not distinguish between a "hit list" and an "order list", but rather this limitation is found in

dependent claim 2. If the Patent Owner wishes that this distinction be given to the term "order

list" within independent claim 1, than the claim must be amended accordingly.


25.     Additionally, in the arguments dated 8/9/10, the Patent Owner points to page 76, lines 4-

22 of the Deposition of Jesus Ramos to show that the Gateway 2000/MRO Manual does not

describe a "means for generating an order list". Particularly, this section describes that there was

no "shopping cart", and that the selected items were placed directly into the requisition form. In

this regard, a "shopping cart" is not required in the current language, but rather claim 1

specifically states "means for generating an order list that includes at least one matching item

selected by said means for searching". As noted above, the Patent Owner argues that the

specification of the '172 Patent distinguishes between an "order list" and a "hit list". But this

difference is not apparent with the current language of independent claim 1.   While dependent

Application/Control Number: 95/000,487                                    Page 16
Art Unit: 3992

claim 2 does introduce a "hit list", and distinguishes between the "order list", with respect to

independent claim 1, this difference is not apparent.


26.      But in reviewing the Gateway 2000/MRO Manual, on page 4-18 through page 4-19, the

Gateway 2000/MRO Manual describes the function of "catalog ordering". First on page 4-18,

the reference sates "To select items from a standard catalog, position the cursor at the beginning

of a new line item description and press the F7 key. A list of pre-stored catalog names will be

displayed....Catalogs contain a heading that describes the catalog plus the vendor name and

catalog name...To select a catalog, move the lightbar to the desired catalog and press enter. The

items listed in this catalog will be displayed for selection." This display of items is seen to

equate to the "order list" in the current claim language. Further, on page 4-19, the Gateway

2000/MRO Manual states "When a catalog has been selected, the items listed in that catalog will

be displayed on the screen in a catalog items window. To choose from a catalog position the

lightbar to the desired item and press enter. A window will be displayed for entry of the quantity

required. Enter a quantity. The system will return for another selection . Repeat this process for

each item required. When all items have been selected, press the F8 key to move all of the

selected items into the order. Press the F2 on an item to see the full description." With this, the

Gateway 2000/MRO Manual is seen as teaching "means for generating an order list that includes

at least one matching item selected by said means for searching", as currently required in

independent claim 1.

27.      Continuing, on pages 4 and 5, the Patent Owner argues that another error made by the

examiner in the ACP dated 7/8/2010 is that the '989 Patent is improperly applied in a rejection,

whereby the Patent Owner states that the Examiner improperly attempts to use the inventor's

own inventive efforts against them. But, as discussed in the ACP dated 7/8/2010, the instant

'172 Patent was invented by Johnson, Momyer, Kinross, and Melly, whereby the previously filed

'989 Patent includes the inventive entity of only Johnson and Momyer. Thus, the instant latter

filed '172 Patent includes the inventors of Kinross and Melly, not being part of the previously

filed '989 Patent, therein being a different inventive entity. With this, the instant '172 Patent

was invented "by another" with respect to the '989 Patent.


28.      Continuing, the Patent Owner argues on page 5 that the Declarations of Johnson and

Momyer under 37 CFR 1.132 submitted by the Patent Owner show that the subject matter

disclosed and claimed in the '989 Patent were invented by Johnson and Momyer, and the

examiner attempts to use the inventors' own inventive efforts against them. But as noted above,

the current inventive entity of the '172 Patent is Johnson, Momyer, Kinross, and Melly, being

invented "by another" than the inventive entity of the '989 Patent, which is just Johnson and

Momyer. With this, the examiner believes that the Declarations of Johnson and Momyer still are

insufficient to overcome the rejection of claims 1, and 3-5 of the '172 Patent, as being

anticipated by the '989 Patent.

Application/Control Number: 95/000,487                                     Page 18

Art Unit: 3992

29.     Continuing, the Patent Owner argues on pages 7-9, that the third error made in the ACP

dated 7/8/2010, was that the examiner improperly concludes that several manuals applied against

the claims are "printed publications" as the term is used in 35 U.S.C. 102.  The Patent Owner

states on page 8 that "The Examiner, in the ACP, does not establish why the persons or

companies that purchased the corresponding software constitute the relevant portion of the public

concerned with the art."  The Patent Owner than cites numerous court decisions on pages 8 and

9.  Of interest, the examiner notes that on page 8 of the Patent Owner's arguments, the Patent

Owner cites "...*Cooper Cameron Corp. v. Kvaerner Oilfield Prods. Inc.*, 291 F.3d 1317, 62

U.S.P.Q.2d 1846 (Fed. Cir. 2002) (joint venture members and participants and their contractors

and **licensees may be the interested public for which access is required to show**

**publication)**..." [Emphasis added.]


30.     In this regard, in reviewing the *Cooper Cameron Corp. v. Kvaerner Oilfield Prods. Inc*

Decision, the examiner notes that in the discussion titled "C. Printed Publications", the Decision

states:

> Finally, on remand the district court should take into consideration that reports need only
> be accessible to the interested public, *Mass. Inst. of Tech. v. AB Fortia*, 744 F.2d 1104,
> 1109, 227 USPQ 428, 432 (Fed. Cir. 1985), **which in this case may be the very entities**
> **who had access to the documents**: SISL joint venture members, participants, and their
> contractors and **licensees**. This does not appear to be a case in which documents shared
> with joint venture members are maintained in confidence. **Here, those with access to the**
> **documents were asserted to be a significant portion of the interested public.**

Application/Control Number: 95/000,487                                                          Page 19

Art Unit: 3992

31.      With this, the J-CON Manual, the P.O. Writer Plus Manual, and the Gateway 2000/MRO

Manual were given access to the portion of the public concerned with the art, being those

persons or companies who purchased, or licensed the software.  Thus, the examiner believes that

the rejection of the claims of the '172 Patent with theses documents, under 35 U.S.C. 102 is

proper, as the documents are seen to be "printed publications".


### Notice of the Right of Appeal

32.      **This is a RIGHT OF APPEAL NOTICE (RAN)**; see MPEP § 2673.02 and § 2674. The

decision in this Office action as to the patentability or unpatentability of any original patent

claim, any proposed amended claim and any new claim in this proceeding is a FINAL

DECISION.

No amendment can be made in response to the Right of Appeal Notice in an *inter partes*

reexamination. 37 CFR 1.953(c). Further, no affidavit or other evidence can be submitted in an

*inter partes* reexamination proceeding after the right of appeal notice, except as provided in  37

CFR 1.981 or as permitted by 37 CFR 41.77(b)(1). 37 CFR 1.116(f).

Each party has a **thirty-day or one-month time period, whichever is longer**, to file a notice of

appeal. The patent owner may appeal to the Board of Patent Appeals and Interferences with

respect to any decision adverse to the patentability of any original or proposed amended or new

claim of the patent by filing a notice of appeal and paying the fee set forth in 37 CFR

41.20(b)(1).  The third party requester may appeal to the Board of Patent Appeals and

Interferences with respect to any decision favorable to the patentability of any original or

proposed amended or new claim of the patent by filing a notice of appeal and paying the fee set

forth in 37 CFR 41.20(b)(1).

In addition, a patent owner who has not filed a notice of appeal may file a notice of cross

appeal within **fourteen days of service** of a third party requester's timely filed notice of appeal

and pay the fee set forth in 37 CFR 41.20(b)(1).  A third party requester who has not filed a

notice of appeal may file **a notice of cross appeal within fourteen days of service** of a patent

owner's timely filed notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1).

Any appeal in this proceeding must identify the claim(s) appealed, and must be signed by

the patent owner (for a patent owner appeal) or the third party requester (for a third party

requester appeal), or their duly authorized attorney or agent.

Any party that does not file a timely notice of appeal or a timely notice of cross appeal

will lose the right to appeal from any decision adverse to that party, but will not lose the right to

file a respondent brief and fee where it is appropriate for that party to do so. If no party files a

timely appeal, the reexamination prosecution will be terminated, and the Director will proceed to

issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

Application/Control Number: 95/000,487                                          Page 21

Art Unit: 3992

### *Conclusion*

33.    **All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By Mail to:    Mail Stop *Inter Partes* Reexam
       Attn: Central Reexamination Unit
       Commissioner of Patents
       United States Patent & Trademark Office
       P.O. Box 1450
       Alexandria, VA 22313-1450


By FAX to:    (571) 273-9900
       Central Reexamination Unit


By hand:      Customer Service Window
       Randolph Building
       401 Dulany St.
       Alexandria, VA 22314


  Any inquiry concerning this communication or earlier communications from the examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


Signed:


*/Joseph R. Pokrzywa/*
_____


Joseph R Pokrzywa

Primary Patent Examiner

Central Reexamination Unit 3992

(571) 272-7410


Conferees: /r.g.f./
  *ESK*