IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

*e*PLUS INC.,                              )
                                          )
              Plaintiff,                  )      Civil Action No. 3:09-CV-620 (REP)
                                          )
       v.                                 )
                                          )
LAWSON SOFTWARE, INC.,                    )
                                          )
                                          )
                                          )
              Defendant.                  )

*e*PLUS'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Counsel for Plaintiff ePlus Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................1

II.   APPLICABLE LEGAL STANDARDS ...........................................................2

III.  ARGUMENT ...................................................................................................3

  A.   No Reasonable Jury Could Fail To Find That Systems With RSS Include
       The Capability To Convert Or Cross-Reference ........................................3

  B.   Overwhelming Evidence Confirms That Defendant Directly And
       Indirectly Infringes the Method Claims .....................................................8

  C.   No Reasonable Jury Could Conclude That The Item Master Of Each
       Accused System Configuration Does Not Include Multiple Product
       Catalogs And, Therefore, Systems 1, 2 And 4 Infringe The Asserted '683
       and '516 Patent Claims .............................................................................10

  D.   No Reasonable Jury Could Find That The Accused Systems Lack The
       Capability To Select Product Catalogs To Search And Search Them ..................14

  E.   No Reasonable Jury Could Find That Defendant's Systems Did Not
       Infringe The '516 Patent Claims Requiring Simultaneous Searching Of
       Multiple Catalogs .....................................................................................15

  F.   ePlus Did Not "Drop" Its Joint Infringement Contention.....................................17

  G.   Overwhelming Evidence Confirms That Defendant Indirectly Infringes the
       Asserted Claims ........................................................................................18

IV.   CONCLUSION...............................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BMC Res., Inc. v. Paymentech, L.P.,*
  498 F.3d 1373 (Fed. Cir. 2007) ................................................................... 9

*Briggs & Stratton Corp. v. Kohler Co.,*
  2006 WL 1601739 (W.D. Wis. May 30, 2006) ........................................... 2

*Broadcom Corp. v. Qualcomm Inc.,*
  543 F.3d 683 (Fed. Cir. 2009) ............................................................. 19, 20

*ePlus, Inc. v. Ariba, Inc.,*
  Civil Action No. 1:04cv612 (E.D. Va.) ...................................................... 8

*Fellowes, Inc. v. Michilin Prosperity Co., Ltd.,*
  491 F. Supp.2d 571 (E.D. Va. 2007) .......................................................... 2

*Global-Tech Appliances, Inc., v. SEB S.A.,*
  536 U.S. __, 20111 WL 2119109 (2011) ................................................. 19

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
  383 F.3d 1337 (Fed. Cir. 2004) ............................................................... 20

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,*
  275 F.3d 1347 (Fed. Cir. 2001) ................................................................. 2

*Martek Biosciences Corp. v. Nutrinova Inc.,*
  520 F. Supp. 2d 537 (D. Del. 2007), *rev'd in part on other grounds,*
  579 F.3d 1363 (Fed. Cir. 2009) ................................................................. 2

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
  476 F.Supp.2d 1143 (N.D. Cal. 2007), *clarified on other grounds on denial of
  reconsideration,* 2007 WL 110861 (N.D. Cal. 2007) ............................. 19

*Soverain Software LLC v. Newegg Inc.,*
  2010 U.S. Dist. LEXIS 89268 (E.D. Tex. Aug. 11, 2010) ......................... 3

*The Johns Hopkins University v. CellPro,*
  931 F. Supp. 303 (D. Del. 1996), *vacated in part on other grounds,*
  152 F.3d 1342 (Fed. Cir. 1998) ................................................................. 2

*Water Techs. Corp. v. Calco, Ltd.,*
  850 F.2d 660 (Fed. Cir. 1988) ................................................................. 19

## I.     INTRODUCTION

Plaintiff *ePlus* Inc. ("*ePlus*") hereby replies to Defendant's Opposition to *ePlus*'s JMOL

that Defendant infringes all of the asserted claims of the patents-in-suit.  As set forth below, none

of Defendant's arguments warrant merit.  Accordingly, JMOL in *ePlus*'s favor, should be

granted.

- Defendant does not dispute that systems having RSS can find all items in the Item Master offered by different vendors that are cross-referenced to the same UNSPSC code.  That a particular system user may not subjectively deem such items to be equivalent is not relevant.  Nor does this cross-referencing functionality need to be performed automatically by the system.

- There is overwhelming evidence that both Defendant and its customers perform the method claims.  Defendant's own witnesses conceded that Defendant uses the infringing systems when it demonstrates them to customers and when it configures and implements the infringing systems for its customers.  And Defendant's customers testified that they have performed the methods.

- The undisputed evidence establishes that the Item Master includes multiple product catalogs that were made generally known or disclosed by vendors thereby satisfying the Court's constructions for "catalogs" "published by vendors."  Defendant's "transformation" argument is irrelevant.

- There was no dispute that the search index enables the systems to search among selected product catalogs or within selected portions of the Item Master.  The search program does not conduct a search of the entire Item Master.

- Defendant's argument that *e*Plus did not prove infringement of the '516 Patent because Punchout does not permit simultaneous searching of multiple catalogs is misplaced. *e*Plus's theory of infringement for the '516 Patent does not depend on Punchout.  Rather, *e*Plus conclusively established at trial, that the capability to select and search multiple catalogs simultaneously was satisfied by searching the Item Master, which in itself comprises multiple catalogs.

- ePlus did not waive a contention of joint infringement, nor did it fail to present that contention to the jury.  In addition, Defendant's argument that it merely provided the technological capability, but did not direct or control what content was included within the catalogs, is irrelevant.

- Defendant concedes that it actively assists its customers in using the infringing systems. Its only defense to indirect infringement is that it did not know of the patents prior to the lawsuit.  But there is evidence that Defendant was aware of the patents prior to this lawsuit and, importantly, there is no dispute that Defendant knew of the patents since at least the time the lawsuit was filed.  Defendant had the requisite intent because even after service of the complaint, it did not cease its infringement, but instead continued to

deliberately and intentionally design, configure, install, implement, service and maintain the accused systems.

## II.    APPLICABLE LEGAL STANDARDS

"A district court may overturn a jury's verdict only if, upon the record before the jury, reasonable jurors could not have reached that verdict." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1353 (Fed. Cir. 2001).  When considering a JMOL, the Court is not obligated to accept all testimony heard at trial.  Rather, "the trial court may disregard testimony that the jury is not free to believe. . . ." *Id.*  Thus, in cases where the evidence put forth by an alleged infringer went against the overwhelming weight of the evidence, such as where the defendant's witnesses offered conflicting testimony or testimony that was undermined by its own documents, courts have often disregarded that testimony and granted JMOL in favor of the patentee.  *See, e.g., Fellowes, Inc. v. Michilin Prosperity Co., Ltd.*, 491 F. Supp.2d 571, 588 (E.D. Va. 2007) (granting JMOL of infringement where trial testimony of defendant's expert contradicted his earlier deposition testimony); *The Johns Hopkins University v. CellPro*, 931 F. Supp. 303, 319 (D. Del. 1996) (granting JMOL of induced infringement where defendant's argument that it lacked the requisite intent was contradicted by its own documents), *vacated in part on other grounds*, 152 F.3d 1342 (Fed. Cir. 1998); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 77 F. Supp.2d 514, 549 (D. Del. 1999) (granting JMOL of infringement where expert testimony and opinion of counsel proffered by Defendant were inadequate to discredit the substantial evidence of infringement put forth by plaintiff), *rev'd in part on other grounds*, 275 F.3d 1347 (Fed. Cir. 2001); *Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp. 2d 537, 546-547 (D. Del. 2007) (granting JMOL of infringement where defendant's expert's testimony was insufficient to support jury's finding of non-infringement), *rev'd in part on other grounds*, 579 F.3d 1363 (Fed. Cir. 2009); *Briggs & Stratton Corp. v. Kohler Co.*, 2006 WL 1601739, at *4-8 (W.D. Wis. May 30, 2006) (same); *Soverain Software LLC v. Newegg Inc.*, 2010 U.S. Dist.

LEXIS 89268, at *25-30 (E.D. Tex. Aug. 11, 2010) (same).

As set forth below, Defendant's reliance on isolated snippets of self-serving testimony of its witnesses which is contradicted by testimony of the very same witnesses and is inconsistent with its own documents, authored prior to the litigation, is insufficient to overcome the overwhelming weight of the evidence.

## III.   ARGUMENT

### A.   No Reasonable Jury Could Fail To Find That Systems With RSS Include The Capability To Convert Or Cross-Reference

As set forth in *e*Plus's Renewed JMOL (Dkt. Nos. 756 at 14-15, 23-25), a reasonable jury could not have failed to find that System Configuration No. 2 directly infringes claim 3 of the '683 Patent. Defendant's noninfringement argument with respect to this claim focuses on one term: "means for converting data related to a selected matching item and an associated source to data relating to an item and a different source." Although Defendant pays lip service to the Court's construction of this claim term (Brf. at 4), it then proceeds to ignore it. The UNSPSC codes employed by the RSS application constitute "one or more codes corresponding to cross-referenced items, identical items or generally equivalent items" thereby satisfying the Court's construction.

In Configuration 2, each item data record in the Item Master database is associated with a UNSPSC classification code. Tr. 766:19-767:17 (Weaver). The UNSPSC code consists of pairs of digits that create a hierarchy of increasingly specific product categories. The finer the granularity of the product description, the more digits in the code. *See* PX-11 (UNSPSC White Paper) at ePLUS 0227042-43 ("The UNSPC is a hierarchical classification, having five levels. The levels allow users to search products more precisely (because searches will be confined to logical categories and eliminate irrelevant hits"). *See also* Tr. 767:22-771:23 (Weaver). For example, the eight-digit UNSPSC code for "pen refills" is 44-12-19-03 which breaks down into

3

the following product categories:  44 (office equipment accessories and supplies); 12 (office supplies); 19 (ink and pen refills); 03 (pen refills).  *Id.* at ePLUS 0227044.  *See also* Tr. 1819:15-1820:8 (Shamos).

Utilizing a UNSPSC code to cross-reference similar or equivalent products involves simple computer logic.  These capabilities can be illustrated at a high level as follows:

Product **A** [from Supplier No. 1] = **C** [code]:  44121903.

Product **B** [from Supplier No. 2] = **C** [code]:  44121903.

Therefore Product **A** [code] 44121903 = Product **B** [code] 4412903.

Thus, Product **A** is generally equivalent to Product **B.**

Of course, the governing body of the UNSPSC recognizes that its classification schema was created precisely for this use.  The UNSPSC's code permits users to "drill down" in a structured fashion that uniquely "classifies" an item such that the fourth level permits the user to determine "[a] group of ***substitutable*** products or services."  PX-11 at ePLUS 0227043 (emphasis added).  *See also* Tr. 767:22-771:23 (Weaver).

As confirmed by Defendant's documents, its witnesses and the demonstrations, Defendant's systems utilize the UNSPSC codes for the very same reason.  Such UNSPSC codes provide accurate cross-referencing for items sharing common characteristics.  According to Defendant:  "Lawson has incorporated the usage of UNSPSC codes which is a standardized way of categorizing items that people use in commerce...The codes have four levels:  segment, family, class and commodity.  These levels create an item hierarchy and allows the user to search each level for items in the Item Master file."  PX-112 (Inv. Control User Guide) at L0032294. *See also id.* at L0032311-12 (providing instructions on loading the UNSPSC codes).

After the UNSPSC codes are imported into Item Master using the import utility provided,

4

and the UNSPSC codes have been associated with each item, the codes are used to define the

Categories in the hierarchy tree used for searching.

> The Categories task is designed to use UNSPSC (United Nations Standard Products and Service Codes). Categories let you search for items by category. After you import UNSPSC codes, you can assign them to items using Item Master (IC 11.1). The codes have four levels: segment, family, class and commodity. These levels create an item hierarchy and let you search each level for items in the Item Master file. These codes are attached to items on IC11. After you define categories, you can click on a category top level to open the segment tree to the product, family, class, commodity, branches, and items. You select items at any of the levels.

PX-98 (RSS User Guide) at L0045500. *See also id.* at L0045505. This category hierarchy tree

is displayed in the search user interface of the accused systems when the "Categories"

functionality is selected. As was demonstrated to the jury, the category hierarchy tree is a nested

structure from less specific characterizations of items to more specific ones based on the

UNSPSC schema. By clicking on a root node of the tree, the user is taken to the next level of the

hierarchy. When a user drills down to the lowest and most specific level, the user is able to

retrieve items that are generally equivalent or substantially similar from multiple vendors. *See*

PX-376 (demonstration); PX-374 (screenshots for PX-376); PX-380 (demonstration); PX-379

(screenshots for PX-380); Tr. 575:8-20; 612:2-20; 628:20-630:1; 636:2-644:16; 760:19-762:10;

766:19-771:23 (Weaver); Tr. 1238:20-1241:16 (Niemeyer). The cross-referencing of the

categories in the hierarchy tree to the associated UNSPSC code will retrieve all item records in

the Item Master which are cross-referenced to the UNSPSC code associated with the category.

Defendant's witnesses and documents confirm this.

> Q:    Isn't it true that a user of the Lawson system that has this UNSPSC capability can find items from different vendors that were all cross-referenced to the same product category?
>
> A:    That's correct, yes.

Tr. 1156:23-1127:2 (Christopherson). *See also* Tr. 1913:9-24 (Shamos) (one of the benefits of

the UNSPSC coding schema is that it "enables buyers and employee requisitioners to find all suppliers of a given category," and "the Lawson accused software had the capability of using these UNSPSC codes."); Tr. 1013:3-25 (Lohkamp). Mr. Yuhasz testified that "[i]f a user at Novant was using Lawson requisition self service searching for an item by using a UNSPSC code, that user could find items from multiple vendors with the same UNSPSC code." Tr. 1708:25-1710:3 (Yuhasz).[1]

Thus, the system's search program works in conjunction with the UNSPSC cross-referencing functionality of Configuration 2 (and 3 and 5) to find "cross-referenced, identical or generally equivalent items" from multiple sources. Tr. 783:1-784:12 (Weaver). The "means for converting" element in claim 3 of the '683 Patent, the "converting data" element in claim 28 of the '683 Patent, and the "cross-reference" table elements of claims 21 and 29 of the '516 Patent, are all satisfied by this functionality. Tr. 783:1-784:2; 787:18-789:1; 798:4-14; 802:2-9; 825:17-827:22; 829:5-832:17; 835:23-836:4 (Weaver).

Contrary to Defendant's contention (Brf. at 6), there is no requirement that the "converting means" perform its functionality "automatically" and without any human

---

[1] Defendant relies on selected excerpts of self-serving testimony of its witnesses to support its noninfringement contention. Brf. at 5. However those excerpts provide no support. Each witness confirmed that the UNSPSC codes can be used to cross-reference to generally equivalent items. They testified, however, that in some instances the user may not subjectively find the cross-referenced items to be equivalent. For example, Mr. Christopherson testified that although the UNSPSC codes could locate all "tomatoes," the search results would include Roma tomatoes and Fairfield tomatoes and "maybe they are the same. Maybe they are not ..." Tr. 1557:24-1558:21 (Christopherson). Similarly, Dr. Shamos acknowledged that a system user can drill down the Category hierarchy using UNSPSC codes and find all pen refills associated with UNSPSC code 44,12,19,03 but the results "may or may not be" equivalent from the user's perspective. He acknowledged, however, that "in some instances" the items would indeed be equivalent. Tr. 1915:1-14. Mr. Yuhasz indicated that Novant preferred to have medical personnel make the determination as to whether two products were "generally equivalent" for a particular medical setting rather than the computer. The Court correctly noted this testimony was not relevant. Tr. 1703:4-1704:7.

intervention. This would amount to a new claim construction which Defendant never proposed. Moreover, such a construction would be contrary to embodiments described in the patent specification which indicate that the "converting" step may be done at the behest of the system user and can be satisfied by user-initiated replacements of selected matching items which are accomplished through cross-reference tables. For example:

> [W]hen a customer asks for products by manufacturer or part number or a competitor's catalog number, the **CSR [Customer Service Representative] has access to cross-reference files,** as earlier described either maintained on the local host or maintained on the Distributor host computer 210. **Appropriate Distributor catalogs and manufacturer catalogs then are consulted, using TV/2 search program 250 and proper selection of Distributor catalogs and of catalogs and bulletins from manufacturers whose products Distributor regularly sells.** ... **The CSR**, knowing which items are available from which Distributor warehouse and direct-shipping supplier, **then may divide the customer's requested items into multiple orders, so as to assure that each order is completely filled by a single shipment.**

PX-1 ('683 Patent), Col. 17:29-48 (emphasis added). Thus, in this embodiment, the "converting" or cross-referencing functionality is user-initiated, *i.e.*, by the CSR.[2]

Thus, the fact that an item placed in the RSS Shopping Cart is not automatically converted to another item, but rather can be converted upon the user's initiation of another search does not avoid infringement. Indeed, as demonstrated, the contents of the RSS Shopping Cart may be modified by the requisitioner until such time as the requisition has been processed by the system into one or more purchase orders. Thus, a system user may select a matching item from results of an initial search for inclusion in the Shopping Cart and may then conduct another search for a substantially similar or generally equivalent item from another source utilizing the

---

[2] In another "user-initiated" example in the specification, the customer purchasing employee may seek **"the intervention of the Distributor CSR** ... to revise and re-source the requisition **(causing, for example, certain items originally sourced as type 01 products to be sourced for this order as corresponding type 03 products from a common Distributor warehouse with other type 03 products on the requisition)."** PX-1 ('683 Patent), Col. 16:54-62 (emphasis added).

UNSPSC cross-referencing functionality in combination with the search program. This is precisely the way the system in the patents operates.[3]

**B.      Overwhelming Evidence Confirms That Defendant Directly And Indirectly Infringes the Method Claims**

At trial, *e*Plus alleged infringement of three method claims: claims 26, 28 and 29 of the '683 Patent. Defendant contends that "no reasonable jury could find that Lawson, or anyone else, directly infringed the method claims." Brf. at 8. Further, Defendant argues that it was not enough for *e*Plus to have proven that the accused systems were capable of performing the claims because "*e*Plus must prove actual performance of all the steps." Brf. at 10. In fact, as *e*Plus demonstrated both in its Renewed JMOL (Dkt. No. 756) and in its Opposition to Defendant's Renewed JMOL (Dkt. No. 768), there is overwhelming and unrebutted evidence that ***both*** Defendant ***and*** its customers perform each step of the asserted claims.[4] Moreover, even if *e*Plus had not conclusively demonstrated that Defendant and its customers infringe those claims — and, it has — because there is no dispute that a system user can perform each claimed step, a reasonable jury could only find that each asserted method claim was infringed.

First, there was overwhelming evidence that Defendant ***itself*** performs each step of the method claims. *See* Dkt. No. 756 at 25-26 (and cited evidence). Defendant simply ignores this

---

[3] Indeed, this same, now-discredited, argument was raised by the prior, adjudicated infringer, Ariba, in its summary judgment motion before Judge Brinkema. The Court, correctly, dismissed the argument. "***The plain language of the patents makes no reference to whether either "converting" or "cross-referencing" must be done automatically by the system or whether it may be prompted by the user's action… As such, the Court finds that "converting" does not require the automatic replacement of ordered items and can be satisfied by user-initiated replacements of selected matching items, which the system accomplished through cross-referencing tables.***" *ePlus, Inc. v. Ariba, Inc.*, Civil Action No. 1:04cv612 (E.D. Va.), Memorandum Opinion at 20-21 (Jan. 19, 2005) (attached as Ex. A). This Court should similarly reject the argument.

[4] With respect to these claims, the jury returned a verdict that Configuration No. 2 did not infringe claim 28 and that Configuration No. 4 did not infringe claim 26, but that Configuration Nos. 3 and 5 infringed claims 26, 28 and 29. Dkt. No. 600.

evidence.

Second, contrary to Defendant's bold claim that "ePlus did not present evidence that a single Lawson customer actually performed all the steps of any method claim," Brf. at 9, *e*Plus in fact demonstrated that several of Defendant's customers have performed each step of the claims.[5] Although Defendant pretends as if this evidence does not exist, testimony regarding the performance of the methods by Defendant's customers was admitted at trial and it was never challenged or rebutted. *e*Plus demonstrated, for example, that Blount Memorial Hospital, a licensee of Configuration No. 2, performs each step of claim 28. *See, e.g.,* Oliver Dep. (PX 518-A) at 11:20-23; 15:15-16:16, 17:4-6, 17:18-18:3, 27:4-28:4 (maintaining multiple product catalogs); 15:15-16:8, 19:14-22, 26:9-12 (selecting product catalogs to search); 15:15-16:8, 19:14-22, 26:9-12 (searching for matching items); 15:15-16:8, 26:1-8, 46:20-47:4, 54:18-24 (building a requisition); 15:15-16:8, 19:8-13, 26:13-16, 54:18-24 (generating purchase orders); 23:3-22, 35:12-18, 54:18-24 (converting data relating to a selected matching item). *e*Plus also demonstrated that Robert Wood Johnson, a customer of Defendant who licenses Defendant's Core S3 System and EDI  performs each step of claim 26. *See, e.g.,* Matias Dep. (PX 520-A) at 10:13-11:8, 11:13-15 (licensee of Configuration No. 4); 13:12-23, 14:21-15:9, 16:7-10, 19:9-13 (maintaining multiple product catalogs); 17:7-24, 25:18-26:20, 28:12-21, 29:20-30:15 (selecting product catalogs to search); 117:7-24, 25:18-26:20, 28:12-21, 29:20-30:15 (searching for matching items); 32:17-33:3 (building a requisition); 11:6-8, 32:17-33:3 (generating purchase

---

[5] Defendant contends that there can only be direct infringement of the method claims if Defendant itself performs each step of the claims.  In fact, direct infringement may be found where one party exercises "control or direction" over the claimed process such that every step is deemed attributable to the controlling party.  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).  The law imposes vicarious liability on a party for the acts of another in such circumstances.  *Id.* at 1379.  "A defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf."  *Id.*

orders); 34:12-35:5, 36:16-20 (determining availability in inventory).

Defendant's argument that it is "not enough to show that a method *could have been performed on a system*" is of no moment because *e*Plus showed that ***all steps of each asserted method claim were actually performed on the accused systems by Defendant and its customers***. *See* Brf. at 10 (emphasis original). But even if *e*Plus had not presented such evidence, it is undisputed that *e*Plus demonstrated that a system user could perform the methods, and that evidence is another reason that no reasonable jury could have failed to find infringement.[6] Contrary to Defendant's contention that "[s]howing a capability is not enough" to prove infringement of the method claims, a product or process accused of infringing a patent infringes if it is reasonably capable of satisfying the claim elements, even if it may also be capable of operating in a way that does not infringe. *See, e.g.*, Dkt. No. 768 at 5 n.3.

### C. No Reasonable Jury Could Conclude That The Item Master Of Each Accused System Configuration Does Not Include Multiple Product Catalogs And, Therefore, Systems 1, 2 And 4 Infringe The Asserted '683 and '516 Patent Claims

There is no legally sufficient evidentiary basis to support a finding that the Item Master database of each of the accused systems does not include "catalogs" that were "published by a vendor" as construed by the Court. Defendant's own documents readily disclose that the Item Master is specifically designed to hold vendor catalogs and, indeed, Defendant's software includes programs to import vendor catalog data into the tables of the Item Master database. *See, e.g.*, PX-118 (RFP Resp. to Cherry Creek School Dist.) at LE00429193 (S3 Procurement System enables you to establish catalogs by vendor), LE00429358; PX-149 (RFP Resp. to Holland Hospital) at L0092759, L0092767 (S3 system can "***produce supply catalogs*** by item number, manufacturer, vendor"); PX-216 (SOW for Jackson Health Sys.) at LE00645376 ("***Catalog***

---

[6] *See* Dkt. No. 756 at 8-16 (and cited evidence).

*information is a part of Lawson's item master."*); PX-219 (RFP Resp. to Scottsdale Sch. Dist.) at L0108868 ("several features of Lawson's Requisition include: *custom catalogs* ..."); PX-97 (Requisitions User Guide) at L0061160 (*"A catalog or quote price is a list of items and unit costs supplied by a vendor.*); PX108 (Purchase Order User Guide) at L0052105 (*"The data you import can be a vendor catalog which contains information about all the items a vendor carries, ..."*); PX-136 (RSS Training Presentation) at LE02932687, LE02932713 (describing the *"Search Catalog"* capabilities of system and *"Creating a Requisition By Searching the Catalog"*); PX-521 at LE01280421 ("Vendor Agreement Import: a process used to load vendor item information into the Lawson system"); and at LE01280428 (illustrating step of *"vendor provides item catalog in CSV format"* through step of "create Item Master/Vendor Item records"). Indeed, as demonstrated to the jury, the initial screen presented to a system user after accessing RSS and clicking the "Find/Shop" drop-down menu provides the user with the option to *"Search Catalog." See, e.g.,* PX-363 (screenshots of demonstration) at ePLUS 0942318-19. That Defendant attempted at trial to run away from its own documents was nothing more than a post-hac, litigation-inspired defense, as the Court noted. Tr. 967:1-968:20 ("Look, you all are going to have to live with all the terms that you used, and you can't be trying to rewrite documents in the middle of trial .... Everybody lives with that they said, historically, in life.").

Defendant's witnesses all conceded that the data loaded into Item Master satisfied the attributes of "catalog" item data as defined by the Court.

> LAWSON COUNSEL: What's your understanding as to what sort of information is in the item master in the Lawson systems?
>
> DR. SHAMOS: It has information about items. It would have their name, it would have a catalog number, it may have an identification of who's selling the item, an identification of who manufactured the item. It has information about any special pricing terms that are available to this particular customer because of contracts they may have entered into with suppliers, and other information that the user of the system finds useful to associate with particular items.

11

Tr. 1750:13-25. *See also* Tr. 1896:20-24 (Shamos) (acknowledging that Item Master data includes "[p]art number, price, catalog number, vendor name, vendor ID, textual description of the item"); Tr. 1509:9-20 (Christopherson Direct) (acknowledging that item records in Item Master include "the manufacturer or supplier's catalog or part number," "a default unit of measure," "an item description," and "price").

Defendant's witnesses further conceded that the item data imported into the Item Master database was "at some point in time" "made generally known or ... disclosed" by a vendor, thereby satisfying the Court's construction of "published by a vendor."

> Q:    The vendor provides the item catalog information that ends up in the item master; isn't that right?
>
> A:    That is some of the information that ends up there.

Tr. 1593:9-12 (Christopherson). *See also* Tr. 1591:15-1592:1 (Christopherson) ("Q:  It's the vendor that provides the item catalog in a CSV format; is that right?  A:  That's correct.  Q:  The vendor discloses or makes known that item information in that CSV format; correct?  A:  To the customer, yes."); 1593:9-1606:12 (conceding that catalog item data disclosed by a vendor and imported into the S3 item master includes vendor item number, item description, unit of measure, item cost, UNSPSC codes and other data); 1607:9-1613:4 (System with EDI module can receive a catalog file from a vendor that contains data for each item including the vendor's item description, vendor identifier, price, unit of measure, vendor's catalog number); Tr. 1904:20-1905:23 (Shamos) (conceding that "the item master can hold a hundred thousand items or more," "tens of thousands of vendors," that "items available from different vendors can be loaded into item master" and "the Lawson item master can contain data associated with multiple vendors").

Defendant's only response to this overwhelming evidence is that because the system user

may sometimes reformat the catalog item data received from the vendor when it imports that data into Item Master, these vendor catalogs are somehow "transformed" into something else. Brf. at 13. The Court, however, repeatedly admonished Defendant that this was not relevant to whether or not the catalog item data in Item Master satisfied the Court's constructions of "catalog" and "published by a vendor."

> THE COURT:  Why should this come in into evidence?  You want to argue that it's not a catalog because the customer of Lawson in the instance where it's using a legacy system, for example, has pulled from a bunch of catalogs things that it put together, and you flipped it into the system ... into the Lawson system. ***And somehow that information doesn't constitute information that's published by a vendor merely because it's gone through a relocation.  And that's not what the claim construction says.  And that's not a fair reading of the patent.***

Tr. 1471:16-1472:1 (emphasis added).

> THE COURT:  I'm going to tell you now that you're not free to argue simply that – you just argued that the only thing that's covered by the claim construction is a Sears catalog that is put into the system.  And if that's what your theory is, you lose.  And I'm going to find that you lose as a matter of law because that isn't what it's all about.

Tr. 1472:18-1473:7.  *See also* Tr. 2830:13-2831:5 ("THE COURT:  [Y]ou make it sound like a grocery list that my wife goes to the store or sends me to the store with a list of 20 items. There are hundreds of thousands of items in most of these item masters, and they came – all that information came from vendors ..."); Tr. 1529:10-12 ("THE COURT:  The issue is not whether item master is made generally known.  It's whether the things that are listed in item master are made generally known, isn't it?")

Despite this, Defendant's sole defense to the issue of whether the Item Master includes multiple product catalogs that are published by vendors remains this "transformation" argument. However, because this is not relevant, it is insufficient to defeat *e*Plus's JMOL.

**D.    No Reasonable Jury Could Find That The Accused Systems Lack The Capability To Select Product Catalogs To Search And Search Them**

Demonstrations of the accused systems and Defendant's own documents conclusively established that the user interface included in each system configuration enables a user to select product catalogs to search.  For example, Defendant's witnesses admitted that a user could input a vendor name into the search user interface and select vendor catalogs to search.  *See* Dkt. No. 756 at 11 (and cited evidence).  Further, the jury saw and heard irrefutable evidence from Defendant's own witnesses and its own documents that each configuration can search within the selected product catalogs by a number of criteria including vendor, manufacturer, catalog number and partial item description.  *Id.* at 11-12.

Contrary to Defendant's argument (Brf. at 17-18), Dr. Weaver did not opine that the "selecting" and "searching" elements were satisfied solely by searching the system's search index.  Nor do the accused systems search the entire Item Master database with each input search query, as Defendant contends.  Brf. at 19.  Rather, the index is a tool used by the system's search program to search selected portions of the Item Master database or selected catalogs within Item Master.  The search index, like an index to a book, contains pointers to locations in the database where item records matching the input search query can be found.  The search program then retrieves the item records corresponding to these locations from the database.  The search is not completed until the matching item records are retrieved.  Tr. 705:10-711:11 (Weaver) ('So if I type a word into a text box, say Dell, and engage the search engine, it goes to the search index. It looks up Dell.  It finds records in the database that match the keyword Dell.  And then it extracts that data from the database and presents that to me on the screen.").  *See also* Tr.1235:7-1237:19; 1241:17-1246:16 (Niemeyer) ("It's common practice to create an index to – ... increase the speed of the search and to eliminate the need to search the whole collection of data;" after the

14

search program finds "occurrences" of the item in the keyword index, this information is "used to find the corresponding item in the ... tables" of the Item Master). Dr. Shamos agreed.

> Q: You also said in this regard, a database index is similar to the index of a book which makes it unnecessary to scan the entire book to locate the occurrence of a word each time a search is performed, correct?
>
> A: Yes.

Tr. 1925:16-21.[7] Because there was no dispute about how the search index operates to search selected portions of the database or enable selected catalogs within the database to be searched, no reasonable jury could have failed to find that the accused systems satisfy the "selecting" and "searching" elements of the '683 and '516 Patent claims.

### E. No Reasonable Jury Could Find That Defendant's Systems Did Not Infringe The '516 Patent Claims Requiring Simultaneous Searching Of Multiple Catalogs

Defendant's argument — that it does not infringe claims 1, 2, 6, and 29 of the '516 Patent because Punchout does not permit searching multiple punchout catalogs simultaneously — is a red herring. *See* Brf. at 21. *e*Plus does not rely on the theory that these claims of the '516 Patent are satisfied by Punchout.[8] Rather, *e*Plus maintains that it is the capability to select and simultaneously search multiple catalogs within the Item Master that satisfies this claim

---

[7] Contrary to Defendant's argument, Dr. Weaver did not employ a misleading demonstration. PX-364; PX-363. He used a first predetermined criteria (*e.g.*, "Dell") to select a subset of catalogs from those present in the Item Master. He demonstrated that there were multiple vendor catalogs having "Dell" items: Dell and Diablo. He then employed a second predetermined criteria ("Dimension 8100") to search among that subset of catalogs carrying "Dell" items. His input search was "Dell, Dimension 8100." As Dr. Weaver explained, the search program does not search the entire Item Master database to execute this search query. Instead, it uses the search index to look up the locations of item records matching "Dell" and "Dimension 8100." It then performs a logical intersection of those two result sets to retrieve from the Item Master only those records matching both search terms. *See* Ex. B (Weaver demonstrative); *see also* Tr. 711:11-714:11 (Weaver).

[8] To be sure, this limitation is met through Punchout, as Punchout includes the capability to punchout to multi-vendor catalogs. *See* Tr. 1159:11-14 (Lohkamp) ("*e*Plus counsel: Isn't it true that the current version of the Lawson procurement punchout includes the capability to punch out to multi-vendor catalogs? Mr. Lohkamp: That's correct.").

limitation.[9]  *See* Tr. 704:10-12 (Weaver).

> *e*Plus's theory of infringement for these claim limitations was demonstrated to the jury.
>
> EPLUS COUNSEL:  Can you preview it for the jury and tell us what we're going to see here?
>
> DR. WEAVER:  Yes, we're going to see searching for the first criteria of Dell. And then from those catalogs, we'll see that there are multiple vendors for Dell. And then we'll refine the search with a Dimension 8100, and we'll find that there are multiple vendors for a more specific search inquiry, and that satisfies the elements of Claim One of the '516 [Patent].

Tr. 725:16-24 (Weaver); *see also* PX-364 (system demonstration).  And while Dr. Weaver's demonstration conclusively established that this limitation was satisfied by those systems incorporating RSS and the Core System, copious other evidence presented at trial, much of which came from Defendant's own documents and witnesses, confirmed that this limitation was met by all five accused system configurations.  *See, e.g.,* Tr. 819:4-836:9 (Weaver); PX-280 (RFP Resp. to Presbyterian Healthcare) at LE00206848-49; PX-136 (RSS Presentation) at LE02932713; Tr. 1604:7-23 (Christopherson); Tr. 1902:7-12, 1929:12-16 (Shamos). Defendant's only rebuttal to this overwhelming evidence was derivative from its "no-catalog" defense, *i.e.,* no catalogs can be selected because the item master database does not include catalogs.  *See* Tr. 1766:6-10 (Shamos) ("If there's no catalog, and certainly if there's not more than one catalog, it's not possible to select catalogs to search.").  As this defense lacks any merit, and because *e*Plus proved beyond question the capability of the accused systems to select and simultaneously search multiple catalogs, no reasonable jury could find that the accused systems do not infringe claims 1, 2, 6, and 29 of the '516 Patent.

---

[9] Consistent with this theory, the jury was asked to decide whether claims 1 and 6 of the '516 Patent are infringed by any of the five accused system configurations, not simply the two configurations that include Punchout.  *See* Dkt. No. 600 at 1-3.

16

### F.     *e*Plus Did Not "Drop" Its Joint Infringement Contention

Defendant presents four arguments with respect to "joint infringement," none of which preclude entry of JMOL for *e*Plus.  First, it contends that "Lawson, itself, does not provide all of the elements of the asserted '516 patent claims."  Brf. at 26.  Here, Defendant simply confuses the issues.  For *e*Plus's JMOL, it did not rely solely on Defendant's Punchout functionality and an allegation of joint infringement.

Second and third, Defendant contends that *e*Plus waived its joint infringement claim, and that the jury was not asked to determine joint infringement.  *e*Plus did not waive joint infringement, and it is telling that Defendant provides no citation to any statement or document showing that *e*Plus supposedly did so.  To the contrary, *e*Plus was clear that it relied on joint infringement as an alternative theory of liability.  *See* Tr. 1372:14-1375:15 ("***This case is the poster child for joint infringement*** because of the relationship that Defendant has with its punchout trading partners."); 1379:12-15 ("My argument, Your Honor, was whether it's direct infringement just by Lawson committing all the steps or having the system, or whether it's joint infringement, we win either way."); *see also* Tr. 1369:25-1370:3.

*e*Plus requested an instruction on joint infringement, *see* Dkt. No. 512 at 23.  That the Court did not give the jury the specific instruction requested (to which Defendant objected) did not preclude the jury from finding direct infringement based on joint infringement.  "Joint infringement is direct infringement," as Defendant's counsel conceded.  Tr. 1365:25-1366:25.  The jury was instructed on direct infringement.  Jury. Instr. 24.[10]

After Defendant presented its Rule 50(a) motion on non-infringement and the Court denied it, *e*Plus continued to elicit evidence directed to joint infringement.  *See* Dkt. No. 768 at

---

[10] In addition, this motion requests JMOL notwithstanding the jury's verdict.  Regardless of the instruction given, the Court knows the law and can determine that no reasonable jury could have found for Defendant based on the evidence at trial.

17

8-9 (and cited evidence).  Additionally, *e*Plus's counsel argued joint infringement in closing.  *Id.*

Defendant made no objection and never contended that *e*Plus had waived the theory.

Fourth, Defendant contends that it did not have the required direction or control over

third parties for joint infringement to exist.  As was set forth in *e*Plus's opening brief and its brief

opposing Defendant's JMOL, the evidence of Defendant's direction and control was abundant,

undisputed, and not objected to by Defendant.  *See* Dkt. No. 756 at 16-18; Dkt. No. 768 at 6-9.

Defendant's argument that it merely provided the technological capability but did not control

what content was chosen by its customers is irrelevant.  Nothing in the claim language or the law

of joint infringement requires that Defendant have directed or controlled what content was

provided in the catalogs.

### G.     Overwhelming Evidence Confirms That Defendant Indirectly Infringes the Asserted Claims

There was overwhelming evidence that Defendant both induces and contributes to the

direct infringement of the '516 and '683 Patents with each system configuration of the accused

systems.  *See* Dkt. No. 756 at 25-29 (and cited evidence).  Indeed, Defendant did not dispute at

trial and does not now dispute that it (1) configures and implements the infringing systems for its

customers, (2) provides maintenance and support services to maintain the operability of its

customers' systems, (3) hosts its customers' systems in its facilities and on its own computer

systems, (4) provides instruction and training to its customers in operating the systems, and (5)

provides user manuals and system documentation to instruct its customers on how to install,

configure and use the systems.  *Id.* at 25-26 (and cited evidence).  Although it concedes that it

actively assists its customers in using the infringing system configurations, Defendant claims that

it did not induce or contribute to the infringement by its customers because it "did not know

about the patents before this lawsuit was filed."  Brf. at 27 (citing *Global-Tech Appliances, Inc.*,

*v. SEB S.A.*, 536 U.S. __, 20111 WL 2119109 (2011)).[11]

Defendant's blanket statement that it had no knowledge of the patents prior to the lawsuit is contradicted by substantial evidence that Defendant very likely knew of the patents for several years prior to the lawsuit. Defendant was aware of *e*Plus as a competitor, *e*Plus marked its products with the patents-in-suit, and industry research reports read by Defendant's executives publicized *e*Plus's prior litigations enforcing the same patents-in-suit. *See* Dkt. 756 at 27-28 (and cited evidence).[12]

More importantly, because Defendant concedes that it has had actual knowledge of the patents since no later than the service of the complaint in this action, its allegation that it did not know of the patents prior to the lawsuit is irrelevant under *Global-Tech*. Brf. at 27. Defendant, even after it learned of the patents, continued its infringement and contributed to and induced infringing acts after that time, and that conduct clearly suffices to form the basis for indirect infringement. *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F.Supp.2d 1143, 1158 (N.D. Cal. 2007), *clarified on other grounds on denial of reconsideration*, 2007 WL 110861 (N.D. Cal. 2007) (denying summary judgment of no contributory infringement based no contention that defendant lacked actual notice of patent until served with complaint). While the lawsuit was pending, Defendant did not cease its infringement, modify its accused products to

---

[11] Defendant also suggests that *e*Plus is not entitled to JMOL of indirect infringement because the jury instruction on induced infringement was incorrect. Brf. at 27-28. The Court's jury instruction was consistent with *Global-Tech* and Defendant's argument should be rejected. *See* Dkt. 767 at 11-16.

[12] Defendant suggests that because there is no smoking gun evidence of its intent to induce or contribute to infringement prior to the lawsuit, *e*Plus's claims of indirect infringement should fail. In fact, the law is firmly established that an infringer's intent to induce may be, and typically is, established through circumstantial evidence. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2009) ("There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se*."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988).

avoid infringement, or provide any different instruction to its customers as to how they could avoid infringement. Further, Defendant continued to deliberately and intentionally design, configure, install, implement, service and maintain the accused systems. *See* Dkt. 767 at 9-10 (and cited evidence).

Defendant claims that although it knew of the patents since at least the time this lawsuit was filed, it did not have the requisite intent to indirectly infringe because one of its employees formed a "lay opinion that Lawson was doing something different than the patents." Brf. at 28. Frankly, it is absurd for Defendant to suggest that a corporation with thousands of employees could be absolved of infringement because a single employee formed a self-serving lay opinion of non-infringement, and not surprisingly, Defendant cites no case in support of this proposition. In contrast, the fact that Defendant obtained, but failed to disclose, an expert, professional opinion of counsel regarding the infringement and validity of the patents is probative of its intent. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 698-700 (Fed. Cir. 2008) (the absence of opinion of counsel evidence is relevant and admissible for purpose of showing Defendant's culpability for inducement purposes).[13]

## IV. CONCLUSION

Accordingly, for the reasons set forth above, and for the reasons set forth in *e*Plus's Brief in Support of its Renewed JMOL, *e*Plus respectfully requests that the Court grant its motion and hold that Defendant infringes all the asserted claims of the patents, both directly and indirectly. In the alternative, *e*Plus requests that the Court grant a new trial as to the jury's noninfringement findings.

---

[13] Defendant relies upon *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004), for the proposition that its decision to obtain but not disclose an opinion of counsel "is not relevant to the question of indirect infringement," Brf. at 29, but *Knorr-Bremse* says no such thing and, in any event, has been distinguished and limited by subsequent cases.

Respectfully submitted,

July 8, 2011

_____/s/_____
David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:   (617) 523-1231
mstrapp@goodwinprocter.com

Attorneys for Plaintiff *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2011, I will electronically file the foregoing

**ePLUS'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF DIRECT AND INDIRECT INFRINGEMENT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

with the Clerk of Court using the CM/ECF system which will then send a notification of such

filing (NEF) via email to the following:

Daniel McDonald, *pro hac vice*
William D. Schultz, *pro hac vice*
Rachel C. Hughey, *pro hac vice*
Andrew Lagatta, *pro hac vice*
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: 612) 332-9081
lawsonservice@merchantgould.com

Donald R. Dunner, *pro hac vice*
Erika H. Arner, *pro hac vice*
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
(202) 408-4000
(202) 408-4444

Robert A. Angle, VSB#37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

***Counsel for Defendant Lawson Software, Inc***

_____/s/_____
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com

Counsel for Plaintiff *ePlus* Inc.