

## CHRISTIAN & BARTON, LLP
### ATTORNEYS AT LAW

CRAIG T. MERRITT
Direct Dial: 804.697.4130
Direct Fax: 804.697.6130
E-mail: cmerritt@cblaw.com

July 7, 2011

**BY HAND DELIVERY**
The Honorable Robert E. Payne, Judge
United States District Court
Eastern District of Virginia
701 East Broad Street, 7th Floor
Richmond, VA 23219

RECEIVED
JUL - 1 2011
ROBERT E. PAYNE
U.S. DISTRICT JUDGE

Re:   *ePlus, inc. v. Lawson Software, Inc.*
       **EDVA 3:09cv620-REP**

Dear Judge Payne:

Consistent with our previous submissions to the Court on this topic, we provide a courtesy copy of a Form 8-K filed with the United States Securities and Exchange Commission confirming the consummation of Infor's acquisition of Lawson.

Respectfully,

Craig T. Merritt

CTM/jya
Enclosure

cc:   All counsel of record

8-K 1 a11-16641_18k.htm 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington D.C. 20549

# FORM 8-K

### CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

Date of Report (date of earliest event reported): July 5, 2011

# LAWS�N™
# LAWSON SOFTWARE, INC.
#### (Exact name of registrant as specified in its charter)

| | | |
|---|---|---|
| **Delaware** | **000-51942** | **20-3469219** |
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (IRS Employer Identification No.) |

**380 St. Peter Street,
St. Paul, Minnesota 55102-1302**
(Address of principal executive offices, zip code)

**(651) 767-7000**
(Registrant's telephone number, including area code)

(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01  Entry into a Material Definitive Agreement.**

On July 5, 2011, Lawson Software, Inc. (the "Company") completed its merger (the "Merger") in connection with the acquisition of the Company by GGC Software Holdings, Inc. ("Parent") through a merger of Atlantis Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent, with and into the Company.  As a result of the Merger, the Company is now a direct, wholly owned subsidiary of Parent.  Parent is beneficially owned by affiliates of Golden Gate Capital, a San Francisco-based private equity firm ("Golden Gate").

*Indenture*

In connection with the Merger, on July 5, 2011 Merger Sub, together with SoftBrands, Inc. ("SoftBrands" and, together with the Company, the "Issuers"), a direct subsidiary of Parent, jointly issued $560 million aggregate principal amount of senior notes due 2019 (the "Notes"). In connection with the consummation of the Merger, the net proceeds from the offering of the Notes were used to finance in part the consideration paid in the Merger, to repay certain of the Company's existing indebtedness and to pay fees and expenses related to the Merger and the associated financings.

Concurrently with the consummation of the Merger on July 5, 2011, the Company assumed all of the obligations of Merger Sub under the Notes and certain subsidiaries of the Company (the "Lawson Guarantors") became guarantors of the Notes. The Notes were issued under an Indenture, dated as of July 5, 2011 (the "Indenture") by and among Merger Sub, SoftBrands, Parent (as a guarantor), the Lawson Guarantors, certain subsidiaries of SoftBrands (the "SoftBrands Guarantors" and, together with Parent and the Lawson Guarantors, the "Notes Guarantors") and Wilmington Trust, National Association, as Trustee (the "Trustee").

The Indenture provides that the Notes are general unsecured obligations of the Issuers and are to be guaranteed by Parent and certain of the Issuers' current and future domestic subsidiaries, including the Lawson Guarantors and the SoftBrands Guarantors.  The Indenture contains covenants that limit the Issuers' (and most of their subsidiaries') ability to, among other things: (i) incur additional indebtedness; (ii) declare or pay dividends, redeem stock or make other distributions to stockholders; (iii) make investments; (iv) create liens or use assets as security in other transactions; (v) merge or consolidate, or sell, transfer, lease or dispose of substantially all of their assets; (vi) enter into transactions with affiliates; and (vii) sell or transfer certain assets.

*Registration Rights Agreement*

In connection with the consummation of the Merger, the Issuers, the Notes Guarantors and the initial purchasers of the Notes entered into a Registration Rights Agreement.  Under the Registration Rights Agreement, the Issuers are obligated to file a registration statement with respect to an offer to exchange the Notes for notes publicly registered with the Securities and Exchange Commission (the "SEC") with substantially identical terms as the Notes within 365 days of the original issuance of the Notes, to use their commercially reasonable efforts to cause the registration statement to become effective within 90 days after filing, and to use their commercially reasonable efforts to consummate the exchange offer within 45 business days of effectiveness of the registration statement (such date, the "Exchange Date"). The Registration Rights Agreement provides that upon the occurrence of certain events, the Issuers will file with the SEC, and use their reasonable best efforts to cause to become effective, a shelf registration statement relating to resales of the Notes and to keep effective such shelf registration statement for the applicable period of time described under the Registration Rights Agreement. Pursuant to the Registration Rights Agreement, the Issuers will be obligated to pay additional interest on the Notes in certain circumstances, including if it has not exchanged exchange notes for all Notes validly tendered in accordance with the terms of an exchange offer on or prior to the Exchange Date.

*Senior Secured Credit Facilities*

In connection with the Merger, the SoftBrands, Merger Sub, and upon consummation of the Merger, the Company, as the successor entity pursuant to the Merger (together with SoftBrands, collectively, the "Borrowers" and each a "Borrower"), entered into a senior secured term loan facility in an aggregate principal amount of $1,040 million (the "Term Loan") and a senior secured revolving credit facility with a maximum availability of $75 million (the "Revolver" and together, with the Term Loan, the "Senior Secured Credit Facilities") pursuant to a credit agreement (the "Credit Agreement") dated as of July 5, 2011 by and among Merger Sub (whose obligations were assumed by the Company upon consummation of the Merger), Parent, Credit Suisse AG, Cayman Islands Branch as administrative agent, collateral agent, swingline lender and an issuing lender, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley Senior Funding, Inc., RBC Capital Markets and Deutsche Bank Securities Inc., as joint lead arrangers and joint bookrunners, Deutsche Bank AG New York

2

Branch, Morgan Stanley Senior Funding, Inc. and Royal Bank of Canada, as co-documentation agents, and the lenders and other parties named therein. The net proceeds from the Term Loan, together with the proceeds of the Notes, cash on hand and equity contributions, were used to finance the consideration paid in the Merger, to repay certain of the Company's existing indebtedness and to pay fees and expenses related to the Merger and the associated financings. The Term Loan will mature on July 5, 2017, and the Revolver will mature on July 5, 2016.

The Senior Secured Credit Facilities permit refinancing of the Term Loan or Revolver commitments with additional term loans or additional senior unsecured or secured notes or loans that will be secured by the Collateral (as defined below) on a pari passu or junior basis with the Senior Secured Credit Facilities so long as certain conditions are satisfied.

All obligations under the Senior Secured Credit Facilities and certain secured hedging and cash management arrangements are guaranteed by Parent and certain direct and indirect, existing and subsequently acquired or organized, wholly-owned domestic restricted subsidiaries of the Borrowers (other than unrestricted subsidiaries, immaterial subsidiaries, any direct or indirect domestic subsidiary of a direct or indirect foreign subsidiary of Parent, joint ventures, special purpose entities, any direct or indirect domestic subsidiary of the Borrowers whose primary assets are the capital stock of foreign subsidiaries, and any subsidiary the guaranty by which would result in material adverse tax consequence to Parent or any of its subsidiaries) (collectively, the "Credit Facility Guarantors").

All obligations under the Senior Secured Credit Facilities and certain secured hedging and cash management arrangements are secured by first priority (subject to certain exceptions) liens on substantially all of the Borrowers' and each Credit Facility Guarantor's present and future-acquired assets (other than excluded assets) (the "Collateral"), subject to certain exceptions including, but not limited to: (a) equity interests of any foreign subsidiary or domestic subsidiary whose primary assets are the capital stock of foreign subsidiaries other than 65% of the voting equity interests in any first-tier foreign subsidiary or domestic subsidiary whose primary assets are the capital stock of foreign subsidiaries, (b) property to the extent the cost of obtaining a security interest is excessive in relation to the benefit to the lenders, (c) property to the extent a security interest is prohibited by contract, applicable law or regulation and (d) certain other exceptions.

The Senior Secured Credit Facilities contain a number of customary affirmative and negative covenants that, among other things, limit or restrict the ability of the Borrowers and their restricted subsidiaries to (all of which are subject to certain exceptions and qualifications): (i) pay dividends or other distributions in respect of, or otherwise redeem or repurchase, capital stock and prepay, redeem or repurchase the notes and certain other types of indebtedness specified under the Senior Secured Credit Facilities; (ii) incur liens; (iii) make loans and investments, including speculative hedging arrangements; (iv) incur additional indebtedness; (v) engage in mergers, acquisitions and asset sales; (vi) engage in transactions with affiliates; (vii) enter into agreements granting negative pledges or containing certain other restrictions; (viii) change their lines of business; (ix) change their fiscal year end; (x) amend organizational documents or modify terms of certain material indebtedness; and (xi) with respect to Parent, engage in certain activities.

Under the Senior Secured Credit Facilities, the Company is required to maintain a total leverage ratio not to exceed certain levels as of the last day of each fiscal quarter.

The Senior Secured Credit Facilities contain customary events of default, including (each subject to certain applicable grace periods and baskets) nonpayment of principal or reimbursement of letter of credit drawings, nonpayment of interest or fees (after 5 business days), nonpayment of other amounts (after 15 days); any representation or warranty proving to be materially incorrect when made; failure to perform or observe covenants; cross default and cross acceleration to other material indebtedness; bankruptcy and insolvency defaults; material monetary judgments (in excess of insurance and certain indemnification); actual or asserted invalidity of any guaranty or security document under the Senior Secured Credit Facilities; and change of control. The Senior Secured Credit Facilities provide that Golden Gate and certain of its affiliates shall have the ability to cure financial covenant defaults through equity infusions on terms to be agreed in the Senior Secured Credit Facilities.

**Item 2.03   Creation of a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement of a Registrant.**

The information set forth under Item 1.01 "Entry Into a Material Definitive Agreement" under the headings "Indenture" and "Senior Secured Credit Facilities" is incorporated into this Item 2.03 by reference.

**Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

In connection with the closing of the Merger, the Company notified The NASDAQ Stock Market, LLC ("NASDAQ") of its intent to remove its common stock from listing on the NASDAQ National Market and requested NASDAQ file a Notification of Removal from Listing and/or Registration on Form 25 with the Securities and Exchange Commission (the "SEC") to delist and deregister its shares of common stock ("Shares"). The Company intends to file with the SEC a Form 15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), requesting the deregistration of the Shares and the suspension of the Company's reporting obligations under Section 13 and 15(d) of the Exchange Act. Trading of the Company's Shares on the NASDAQ National Market was suspended as of the closing of trading on July 5, 2011.

**Item 3.03. Material Modification to Rights of Security Holders.**

Effective as of the closing of the Merger, each share of Common Stock (other than shares held by the Company, Parent, Merger Sub or their subsidiaries and shares in respect of which stockholders have perfected their statutory rights of appraisal under Delaware law) was cancelled and automatically converted into the right to receive $11.25 in cash, without interest and less any applicable withholding taxes.

**Item 5.01. Changes in Control of Registrant.**

On July 5, 2011, Golden Gate consummated the acquisition of the Company through the Merger of Merger Sub with and into the Company. The Company is the surviving corporation in the Merger and is a direct wholly-owned subsidiary of Parent.

The aggregate purchase price paid for all equity securities of the Company was approximately $1.85 billion. The purchase price was funded by (i) the Term Loan, (ii) the issuance of the Notes, (iii) equity financing from Golden Gate and its affiliates of approximately $560 million and (iv) cash and cash equivalents of the Company.

To the knowledge of the Company, except as set forth herein, there are no arrangements, including any pledge by any person of securities of the Company or Parent, the operation of which may at a subsequent date result in a further change in control of the Company. In addition, the Agreement and Plan of Merger, dated as of April 26, 2011 (the "Merger Agreement"), among the Company, Merger Sub and Parent, includes provisions relating to the election of directors to the Board of Directors of the Company (the "Board").

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

In accordance with the Merger Agreement, on July 5, 2011, each of Steven Chang, Harry Debes, Peter Gyenes, David Hubers, Richard Lawson, Michael Rocca, Robert Schriesheim, Romesh Wadhwani and Paul Wahl voluntarily resigned from the Board and from all Board committees on which such directors served, and Kevin Samuelson and Stephan Scholl became the directors of the Company. Each resigning director resigned pursuant to the provisions of the Merger Agreement and no director resigned from the Board because of any disagreements with the Company on any matter relating to the Company's operations, policies or practices.

On July 5, 2011, Harry Debes resigned as the Company's President and Chief Executive Officer and Stephan Schulz resigned as the Company's Senior Vice President and Chief Financial Officer. Stephan Scholl was appointed as the Company's new President and Chief Executive Officer, while Kevin Samuelson was appointed as the Company's new Chief Financial Officer.

Stephan Scholl has been employed by Infor Global Solutions ("Infor"), which is owned by affiliates of Golden Gate and is an affiliate of SoftBrands, as Executive Vice President, Global Field Operations, since December 2010. Prior to joining Infor, Mr. Scholl was general manager of the Utilities Global Business Unit at Oracle. Prior to joining Oracle, Mr. Scholl was in consulting and sales management roles at PeopleSoft.

Kevin Samuelson has been employed by Infor as Senior Vice President of Mergers & Acquisitions and Integration, since November 2002. Prior to joining Infor, Mr. Samuelson was a senior associate at Parallax Capital Partners.

**Item 5.03. Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year.**

At the effective time of the Merger, on July 5, 2011, the certificate of incorporation and the bylaws of the Company, each as in effect immediately prior to the Merger, were amended in their entirety in accordance with the terms of the Merger Agreement.

A copy of the amended and restated certificate of incorporation and bylaws of the Company are attached as Exhibits 3.1 and 3.2 to this Current Report on Form 8-K, respectively, and are incorporated by reference herein.

4

**Item 8.01 Other Events.**

On July 6, 2011, the Company and Infor issued a joint press release announcing the completion of the Merger attached hereto as Exhibit 99.1.

**Item 9.01. Financial Statements and Exhibits**

| Exhibit No. | Description |
| --- | --- |
| 3.1 | Amended and Restated Certificate of Incorporation of Lawson Software, Inc. |
| 3.2 | Amended and Restated Bylaws of Lawson Software, Inc. |
| 99.1 | Press Release dated July 6, 2011 |

5

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**LAWSON SOFTWARE, INC.**

Date: July 6, 2011

By: /s/ Kevin Samuelson
  Name: Kevin Samuelson
  Title: Chief Financial Officer

6

**Exhibit Index**

| Exhibit No. | Description |
|---|---|
| 3.1 | Amended and Restated Certificate of Incorporation of Lawson Software, Inc. |
| 3.2 | Amended and Restated Bylaws of Lawson Software, Inc. |
| 99.1 | Press Release dated July 6, 2011 |

7

EX-3.1 2 a11-16641_1ex3d1.htm EX-3.1

Exhibit 3.1

### SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### LAWSON SOFTWARE, INC.

### ARTICLE ONE

The name of the corporation is Lawson Software, Inc.

### ARTICLE TWO

The address of the corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

### ARTICLE THREE

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware, as amended from time to time ("Delaware Law").

### ARTICLE FOUR

The total number of shares of stock which the corporation has authority to issue is one thousand (1,000) shares of Common Stock, with a par value of $0.01 per share.

### ARTICLE FIVE

The corporation is to have perpetual existence.

## ARTICLE SIX

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the corporation is expressly authorized to make, alter or repeal the by-laws of the corporation.

## ARTICLE SEVEN

Meetings of stockholders may be held within or without the State of Delaware, as the by-laws of the corporation may provide. The books of the corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the by-laws of the corporation. Election of directors need not be by written ballot unless the by-laws of the corporation so provide.

## ARTICLE EIGHT

A director of the corporation shall not be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law, (iii) under Section 174 of the Delaware Law or (iv) for any transaction from which the director derived an improper personal benefit.

If the Delaware Law is hereafter amended to further eliminate or limit the liability of a director of a corporation, then a director of the corporation, in addition to the circumstances set forth herein, shall have no liability as a director (or such liability shall be limited) to the fullest extent permitted by the Delaware Law as so amended. No repeal or modification of the foregoing provisions of this ARTICLE EIGHT nor, to the fullest extent permitted by law, any modification of law, shall adversely affect any right or protection of a director of the corporation existing at the time of such repeal or modification.

## ARTICLE NINE

The corporation shall, to the full extent permitted by Delaware Law, indemnify each officer and director of the corporation and may, but shall not be obligated to, indemnify any employee or agent of the corporation who is not an officer or director of the corporation as follows:

(a)     Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a

2

director, officer, employee or agent of the corporation or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter an "indemnitee"), whether the basis of such proceeding is an alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall or may, as applicable, be indemnified and held harmless by the corporation to the fullest extent authorized by Delaware Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than permitted prior thereto), against all expense, liability and loss (including attorneys' fees, judgments, fines, employee benefit plan excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection therewith and such indemnification shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the indemnitee's heirs, executors and administrators; provided, however, that, except as provided in Paragraph (c) hereof with respect to proceedings to enforce rights to indemnification, the corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the board of directors of the corporation.

(b)     Right to Advancement of Expenses. The right to indemnification conferred in Paragraph (a) of this ARTICLE NINE shall include the right to be paid by the corporation the expenses incurred in defending any proceeding for which such right to indemnification is applicable in advance of its final disposition (hereinafter an "advancement of expenses"); provided, however, if Delaware Law so requires, an advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such indemnitee, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the corporation of an undertaking (hereinafter an "undertaking"), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a ""final adjudication"") that such indemnitee is not entitled to be indemnified for such expenses under this ARTICLE NINE or otherwise.

(c)     Right of Indemnitee to Bring Suit. The rights to indemnification and to the advancement of expenses conferred in Paragraphs (a) and (b) of this ARTICLE NINE shall be contract rights; provided that indemnification of any officer or director of the corporation shall be mandatory without further agreement or action by the officer or director of the corporation and indemnification of any other employee of the corporation shall require a board resolution or agreement with such employee. If a claim under Paragraph (a) or (b) of this ARTICLE NINE is not paid in full by the corporation within sixty days after a written claim has been received by the corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be twenty days, the indemnitee may at any time thereafter bring suit against the corporation to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit. In (i) any suit brought by the indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the indemnitee to enforce a right to an advancement of expenses) it shall be a defense for the corporation that, and (ii) in any suit by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking the corporation shall be entitled to recover such expenses upon a final adjudication that, the indemnitee has not met any applicable standard for indemnification set forth in Delaware Law. Neither the failure of the corporation (including its board of directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that the indemnitee has met the applicable

3

standard of conduct set forth in Delaware Law and that indemnification of the indemnitee is therefore proper in the circumstances, nor an actual determination by the corporation (including its board of directors, independent legal counsel, or its stockholders) that the indemnitee has not met such applicable standard of conduct, shall create a presumption that the indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the indemnitee, be a defense of the corporation to such suit. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, under this ARTICLE NINE or otherwise shall be on the corporation.

(d)     Non-Exclusivity of Rights. The rights to indemnification and to the advancement of expenses conferred in this ARTICLE NINE shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, this Certificate of Incorporation, bylaw, agreement, vote of stockholders or of disinterested directors or otherwise.

(e)     Insurance. The corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of status as such, whether or not the corporation would have the power to indemnify such person against such liability under the provisions of Delaware Law.

**ARTICLE TEN**

The corporation expressly elects not to be governed by Section 203 of the Delaware Law.

**ARTICLE ELEVEN**

The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

4

EX-3.2 3 a11-16641_1ex3d2.htm EX-3.2

Exhibit 3.2

## AMENDED AND RESTATED BY-LAWS

### OF

### LAWSON SOFTWARE, INC.
A Delaware corporation

*(Adopted as of July 5, 2011)*

### ARTICLE I

### OFFICES

Section 1.  Registered Office.  The registered office of the corporation in the State of Delaware shall be located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, County of New Castle, 19801.  The name of the corporation's registered agent at such address shall be The Corporation Trust Company.  The registered office and/or registered agent of the corporation may be changed from time to time by action of the Board of Directors.

Section 2.  Other Offices.  The corporation may also have offices at such other places, both within and without the State of Delaware, as the Board of Directors may from time to time determine or the business of the corporation may require.

### ARTICLE II

### MEETINGS OF STOCKHOLDERS

Section 1.  Place and Time of Meetings.  An annual meeting of the stockholders shall be held each year within one hundred twenty (120) days after the close of the immediately preceding fiscal year of the corporation for the purpose of electing directors and conducting such other proper business as may come before the meeting.  The date, time and place, if any, and/or the means of remote communication, of the annual meeting shall be determined by the Board of Directors.  No annual meeting of stockholders need be held if not required by the corporation's certificate of incorporation or by the General Corporation Law of the State of Delaware.

Section 2.  Special Meetings.  Special meetings of stockholders may be called for any purpose and may be held at such time and place, within or without the State of Delaware, and/or by means of remote communication, as shall be stated in a notice of meeting or in a duly executed waiver of notice thereof.  Such meetings may be called at any time by the Board of Directors or the chief executive officer or president and shall be called by the chief executive officer or president upon the written request of holders of shares entitled to cast not less than fifty percent (50%) of the votes at the meeting, such written request shall state the purpose or purposes of the meeting and shall be delivered to the chief executive officer or president.  On such written request, the chief executive officer or president shall fix a date and time for such meeting within thirty (30) days of the date requested for such meeting in such written request.

Section 3.  Place of Meetings.  The Board of Directors may designate any place, either within or without the State of Delaware, and/or by means of remote communication, as the place of meeting for any annual meeting or for any special meeting called by the Board of Directors.  If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal executive office of the corporation.

Section 4.  Notice.  Whenever stockholders are required or permitted to take any action at a meeting, written or printed notice stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of special meetings, the purpose or purposes, of such meeting, shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.  All such notices shall be delivered, either personally, by mail, or by a form of electronic transmission consented to by the stockholder to whom the notice is given, by or at the direction of the Board of Directors, the chief executive officer, the president or the secretary, and if mailed, such notice shall be deemed to be delivered when deposited in the United States mail, postage prepaid, addressed to the stockholder at his, her or its address as the same appears on the records of the corporation.  If given by electronic transmission, such notice shall be deemed to be delivered (i) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice; (ii) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice; (iii) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (a) such posting and (b) the giving of such separate notice; and (iv) if by any other form of electronic transmission, when directed to the stockholder.  Any such consent shall be revocable by the stockholder by written notice to the corporation.  Any such consent shall be deemed revoked if (1) the corporation is unable to deliver by electronic transmission two (2) consecutive notices given by the corporation in accordance with such consent and (2) such inability becomes known to the secretary or an assistant secretary of the corporation or to the transfer agent.

Section 5.  Stockholders List.  The officer having charge of the stock ledger of the corporation shall make, at least ten (10) days before every meeting of the stockholders, a complete list of the stockholders entitled to vote at such meeting arranged in alphabetical order, showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, for a period of at least ten (10) days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, and/or (ii) during ordinary business hours, at the principal place of business of the corporation.  In the event that the corporation determines to make the list available on an electronic network, the corporation may take reasonable steps to ensure that such information is available only to stockholders of the corporation.  If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.  If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.

Section 6.  Quorum.  The holders of a majority of the outstanding shares of capital stock, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders, except as otherwise provided by statute or by the certificate of incorporation.  If a quorum is not present, the holders of a majority of the shares present in person or represented by proxy at the meeting, and entitled to vote at the meeting, may adjourn the meeting to another time and/or place.

Section 7.  Adjourned Meetings.  When a meeting is adjourned to another time and place, notice need not be given of the adjourned meeting if the time, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new

2

record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 8.  Vote Required.  When a quorum is present, the affirmative vote of the majority of shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders, unless the question is one upon which by express provisions of an applicable law or of the certificate of incorporation a different vote is required, in which case such express provision shall govern and control the decision of such question.

Section 9.  Voting Rights.  Except as otherwise provided by the General Corporation Law of the State of Delaware or by the certificate of incorporation of the corporation or any amendments thereto and subject to Section 3 of Article VI hereof, every stockholder shall at every meeting of the stockholders be entitled to one (1) vote in person or by proxy for each share of common stock held by such stockholder.

Section 10.  Proxies.  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period.

Section 11.  Action by Written Consent.  Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken and bearing the dates of signature of the stockholders who signed the consent or consents, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in the state of Delaware, or the corporation's principal place of business, or an officer or agent of the corporation having custody of the book or books in which proceedings of meetings of the stockholders are recorded.  Delivery made to the corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  All consents properly delivered in accordance with this section shall be deemed to be recorded when so delivered.  No written consent shall be effective to take the corporate action referred to therein unless, within sixty (60) days after the earliest dated consent delivered to the corporation as required by this section, written consents signed by the holders of a sufficient number of shares to take such corporate action are so recorded.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.  Any action taken pursuant to such written consent or consents of the stockholders shall have the same force and effect as if taken by the stockholders at a meeting thereof.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

Section 12.  Action by Telegram, Cablegram or Other Electronic Transmission Consent.  A telegram, cablegram or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated for the purposes of this section; provided that any such telegram, cablegram or other electronic transmission sets forth or is delivered with information from which the corporation can determine (i) that the telegram, cablegram or other electronic

3

transmission was transmitted by the stockholder or proxyholder or by a person or persons authorized to act for the stockholder or proxyholder and (ii) the date on which such stockholder or proxyholder or authorized person or persons transmitted such telegram, cablegram or electronic transmission.  The date on which such telegram, cablegram or electronic transmission is transmitted shall be deemed to be the date on which such consent was signed.  No consent given by telegram, cablegram or other electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and until such paper form shall be delivered to the corporation by delivery to its registered office in the State of Delaware, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded if, to the extent and in the manner provided by resolution of the Board of Directors of the corporation.

ARTICLE III

DIRECTORS

Section 1.  General Powers.  The business and affairs of the corporation shall be managed by or under the direction of the Board of Directors.

Section 2.  Number, Election and Term of Office.  The number of directors which shall constitute the board shall be two (2).  Thereafter, the number of directors shall be established from time to time by resolution of the board or of the stockholders.  The directors shall be elected by a plurality of the votes of the shares present in person or represented by proxy at the meeting and entitled to vote in the election of directors.  The directors shall be elected in this manner at the annual meeting of the stockholders, except as provided in Section 4 of this Article III.  Each director elected shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as hereinafter provided.

Section 3.  Removal and Resignation.  Any director or the entire Board of Directors may be removed at any time, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.  Whenever the holders of any class or series are entitled to elect one (1) or more directors by the provisions of the corporation's certificate of incorporation, the provisions of this section shall apply, in respect to the removal without cause of a director or directors so elected, to the vote of the holders of the outstanding shares of that class or series and not to the vote of the outstanding shares as a whole.  Any director may resign at any time upon notice given in writing or by electronic transmission to the corporation.

Section 4.  Vacancies.  Vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, though less than a quorum, or by a sole remaining director.  Each director so chosen shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as herein provided.

Section 5.  Annual Meetings.  The annual meeting of each newly elected Board of Directors shall be held without notice (other than notice under these by-laws) immediately after, and at the same place, if any, as the annual meeting of stockholders.

Section 6.  Other Meetings and Notice.  Regular meetings, other than the annual meeting, of the Board of Directors may be held without notice at such time and at such place, if any, as shall from time to time be determined by resolution of the Board of Directors.  Special meetings of the Board of Directors may be called by or at the request of the chief executive officer, the president or any director on at least twenty four (24) hours notice to each director, either personally, by telephone, by mail or by telegraph.

4

Section 7.  Quorum, Required Vote and Adjournment.  A majority of the total number of directors shall constitute a quorum for the transaction of business.  The vote of a majority of directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  If a quorum shall not be present at any meeting of the Board of Directors, the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 8.  Committees.  The Board of Directors may, by resolution passed by a majority of the whole board, designate one (1) or more committees, each committee to consist of one (1) or more of the directors of the corporation, which to the extent provided in such resolution or these Bylaws shall have and may exercise the powers of the Board of Directors in the management and affairs of the corporation except as otherwise limited by law.  The Board of Directors may designate one (1) or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Directors.  Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 9.  Committee Rules.  Each committee of the Board of Directors may fix its own rules of procedure and shall hold its meetings as provided by such rules, except as may otherwise be provided by a resolution of the Board of Directors designating such committee.  In the event that a member and that member's alternate, if alternates are designated by the Board of Directors as provided in Section 8 of this Article III, of such committee is or are absent or disqualified, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member.

Section 10.  Communications Equipment.  Members of the Board of Directors or any committee thereof may participate in and act at any meeting of such board or committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in the meeting pursuant to this section shall constitute presence in person at the meeting.

Section 11.  Waiver of Notice and Presumption of Assent.  Any member of the Board of Directors or any committee thereof who is present at a meeting shall be conclusively presumed to have waived notice of such meeting except when such member attends for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.  Such member shall be conclusively presumed to have assented to any action taken unless his or her dissent shall be entered in the minutes of the meeting or unless his or her written dissent to such action shall be filed with the person acting as the secretary of the meeting before the adjournment thereof or shall be forwarded by registered mail to the secretary of the corporation immediately after the adjournment of the meeting.  Such right to dissent shall not apply to any member who voted in favor of such action.

Section 12.  Action by Written Consent.  Unless otherwise restricted by the certificate of incorporation, any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the board, or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

5

## ARTICLE IV

## OFFICERS

**Section 1.**  **Number.**  The officers of the corporation shall be elected by the Board of Directors and may consist of a chief executive officer or president, a secretary, and such other officers and assistant officers as may be deemed necessary or desirable by the Board of Directors.  Any number of offices may be held by the same person.  In its discretion, the Board of Directors may choose not to fill any office for any period as it may deem advisable.

**Section 2.**  **Election and Term of Office.**  The officers of the corporation shall be elected annually by the Board of Directors at its first meeting held after each annual meeting of stockholders or as soon thereafter as conveniently may be.  Vacancies may be filled or new offices created and filled at any meeting of the Board of Directors.  Each officer shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as hereinafter provided.

**Section 3.**  **Removal.**  Any officer or agent elected by the Board of Directors may be removed by the Board of Directors whenever in its judgment the best interests of the corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

**Section 4.**  **Vacancies.**  Any vacancy occurring in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board of Directors for the unexpired portion of the term by the Board of Directors then in office.

**Section 5.**  **Compensation.**  Compensation of all officers shall be fixed by the Board of Directors, and no officer shall be prevented from receiving such compensation by virtue of his or her also being a director of the corporation.

**Section 6.**  **The Chief Executive Officer or President.**  The chief executive officer or president shall be the chief executive officer of the corporation; shall preside at all meetings of the stockholders and Board of Directors at which he or she is present; subject to the powers of the Board of Directors, shall have general charge of the business, affairs and property of the corporation, and control over its officers, agents and employees; and shall see that all orders and resolutions of the Board of Directors are carried into effect.  The chief executive officer or president shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board of Directors to some other officer or agent of the corporation.  The chief executive officer or president shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or as may be provided in these Bylaws.

**Section 7.**  **The Secretary and Assistant Secretaries.**  The secretary shall attend all meetings of the Board of Directors, all meetings of the committees thereof and all meetings of the stockholders and record all the proceedings of the meetings in a book or books to be kept for that purpose.  Under the chief executive officer's or president's supervision, the secretary shall (i) give, or cause to be given, all notices required to be given by these Bylaws or by law, (ii) have such powers and perform such duties as the Board of Directors, the chief executive officer, president or these Bylaws may, from time to time, prescribe and (iii) have custody of the corporate seal of the corporation.  The secretary, or an assistant secretary, shall have authority to affix the corporate seal to any instrument requiring it and when so affixed, it may be attested by his or her signature or by the signature of such assistant secretary.  The Board of Directors may give general authority to any other officer to affix the seal of the corporation and

6

to attest the affixing by his or her signature. The assistant secretary, or if there be more than one (1), the assistant secretaries in the order determined by the Board of Directors, shall, in the absence or disability of the secretary, perform the duties and exercise the powers of the secretary and shall perform such other duties and have such other powers as the Board of Directors, the chief executive officer, president, or secretary may, from time to time, prescribe.

Section 8.   Other Officers, Assistant Officers and Agents.   Officers, assistant officers and agents, if any, other than those whose duties are provided for in these Bylaws, shall have such authority and perform such duties as may from time to time be prescribed by resolution of the Board of Directors.

Section 9.   Absence or Disability of Officers.   In the case of the absence or disability of any officer of the corporation and of any person hereby authorized to act in such officer's place during such officer's absence or disability, the Board of Directors may by resolution delegate the powers and duties of such officer to any other officer or to any director, or to any other person whom it may select.

## ARTICLE V

## INDEMNIFICATION OF OFFICERS, DIRECTORS AND OTHERS

Section 1.   Nature of Indemnity.   Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she,  is or was a director or officer, of the corporation shall be indemnified and held harmless by the corporation to the fullest extent which it is empowered to do so by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended against all expense, liability and loss (including attorneys' fees actually and reasonably incurred by such person in connection with such proceeding); provided, that, except as provided in Section 2 hereof, the corporation shall indemnify any such person seeking indemnification in connection with a proceeding initiated by such person only if such proceeding was authorized by the Board of Directors of the corporation. The corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the corporation with the same scope and effect as the foregoing indemnification of directors and officers.

Section 2.   Procedure for Indemnification of Directors and Officers.   Any indemnification of a director or officer of the corporation under Section 1 of this Article V or advance of expenses under Section 5 of this Article V shall be made promptly, and in any event within thirty (30) days, upon the written request of the director or officer. If a determination by the corporation that the director or officer is entitled to indemnification pursuant to this Article V is required, and the corporation fails to respond within sixty (60) days to a written request for indemnity, the corporation shall be deemed to have approved the request. If the corporation denies a written request for indemnification or advancing of expenses, in whole or in part, or if payment in full pursuant to such request is not made within thirty (30) days, the right to indemnification or advances as granted by this Article V shall be enforceable by the director or officer in any court of competent jurisdiction. Such person's costs and expenses incurred in connection with successfully establishing his or her right to indemnification, in whole or in part, in any such action shall also be indemnified by the corporation. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any, has been tendered to the corporation) that the claimant has not met the standards of conduct which make it permissible under the General Corporation Law of the State of Delaware for the corporation to indemnify the claimant for the amount claimed, but the burden of such defense shall be on the corporation. Neither the failure of the corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in

7

the circumstances because he or she has met the applicable standard of conduct set forth in the General Corporation Law of the State of Delaware, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

Section 3.  Article Not Exclusive.  The rights to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article V shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the certificate of incorporation, by-law, agreement, vote of stockholders or disinterested directors or otherwise.

Section 4.  Insurance.  The corporation may purchase and maintain insurance on its own behalf and on behalf of any person who is or was a director, officer, employee, fiduciary, or agent of the corporation or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, whether or not the corporation would have the power to indemnify such person against such liability under this Article V.

Section 5.  Expenses.  Expenses incurred by any person described in Section 1 of this Article V in defending a proceeding shall be paid by the corporation in advance of such proceeding's final disposition upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the corporation.  Such expenses incurred by other employees and agents may be so paid upon such terms and conditions, if any, as the Board of Directors deems appropriate.

Section 6.  Employees and Agents.  Persons who are not covered by the foregoing provisions of this Article V and who are or were employees or agents of the corporation, or who are or were serving at the request of the corporation as employees or agents of another corporation, partnership, joint venture, trust or other enterprise, may be indemnified to the extent authorized at any time or from time to time by the Board of Directors.

Section 7.  Contract Rights.  The provisions of this Article V shall be deemed to be a contract right between the corporation and each director or officer who serves in any such capacity at any time while this Article V and the relevant provisions of the General Corporation Law of the State of Delaware or other applicable law are in effect, and any repeal or modification of this Article V or any such law shall not affect any rights or obligations then existing with respect to any state of facts or proceeding then existing.

Section 8.  Merger or Consolidation.  For purposes of this Article V, references to "the corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this Article V with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

8

## ARTICLE VI

## CERTIFICATES OF STOCK

Section 1. Form. Every holder of stock in the corporation shall be entitled to have a certificate, signed by, or in the name of the corporation by the chief executive officer or a president or vice-president and the secretary or an assistant secretary of the corporation, certifying the number of shares owned by such holder in the corporation. If such a certificate is countersigned (i) by a transfer agent or an assistant transfer agent other than the corporation or its employee or (ii) by a registrar, other than the corporation or its employee, the signature of any such chief executive officer, president, vice-president, secretary, or assistant secretary may be facsimiles. In case any officer or officers who have signed, or whose facsimile signature or signatures have been used on, any such certificate or certificates shall cease to be such officer or officers of the corporation whether because of death, resignation or otherwise before such certificate or certificates have been delivered by the corporation, such certificate or certificates may nevertheless be issued and delivered as though the person or persons who signed such certificate or certificates or whose facsimile signature or signatures have been used thereon had not ceased to be such officer or officers of the corporation. All certificates for shares shall be consecutively numbered or otherwise identified. The name of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the books of the corporation. Shares of stock of the corporation shall only be transferred on the books of the corporation by the holder of record thereof or by such holder's attorney duly authorized in writing, upon surrender to the corporation of the certificate or certificates for such shares endorsed by the appropriate person or persons, with such evidence of the authenticity of such endorsement, transfer, authorization, and other matters as the corporation may reasonably require, and accompanied by all necessary stock transfer stamps. In that event, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate or certificates, and record the transaction on its books. The Board of Directors may appoint a bank or trust company organized under the laws of the United States or any state thereof to act as its transfer agent or registrar, or both in connection with the transfer of any class or series of securities of the corporation.

Section 2. Lost Certificates. The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates previously issued by the corporation alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen, or destroyed. When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen, or destroyed certificate or certificates, or his or her legal representative, to give the corporation a bond sufficient to indemnify the corporation against any claim that may be made against the corporation on account of the loss, theft or destruction of any such certificate or the issuance of such new certificate.

Section 3. Fixing a Record Date for Stockholder Meetings. In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be the close of business on the next day preceding the day on which notice is given, or if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

9

Section 4.  <u>Fixing a Record Date for Action by Written Consent</u>.  In order that the corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than ten (10) days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by statute, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the corporation by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by statute, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

Section 5.  <u>Fixing a Record Date for Other Purposes</u>.  In order that the corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment or any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purposes of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty (60) days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.  <u>Registered Stockholders</u>.  Prior to the surrender to the corporation of the certificate or certificates for a share or shares of stock with a request to record the transfer of such share or shares, the corporation may treat the registered owner as the person entitled to receive dividends, to vote, to receive notifications, and otherwise to exercise all the rights and powers of an owner.

Section 7.  <u>Subscriptions for Stock</u>.  Unless otherwise provided for in the subscription agreement, subscriptions for shares shall be paid in full at such time, or in such installments and at such times, as shall be determined by the Board of Directors.  Any call made by the Board of Directors for payment on subscriptions shall be uniform as to all shares of the same class or as to all shares of the same series.  In case of default in the payment of any installment or call when such payment is due, the corporation may proceed to collect the amount due in the same manner as any debt due the corporation.

<u>ARTICLE VII</u>

<u>GENERAL PROVISIONS</u>

Section 1.  <u>Dividends</u>.  Dividends upon the capital stock of the corporation, subject to the provisions of the certificate of incorporation, if any, may be declared by the Board of Directors at any regular or special meeting, pursuant to law.  Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the certificate of incorporation.  Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or any other purpose and the directors may modify or abolish any such reserve in the manner in which it was created.

10

Section 2.  <u>Checks, Drafts or Orders</u>.  All checks, drafts, or other orders for the payment of money by or to the corporation and all notes and other evidences of indebtedness issued in the name of the corporation shall be signed by such officer or officers, agent or agents of the corporation, and in such manner, as shall be determined by resolution of the Board of Directors or a duly authorized committee thereof.

Section 3.  <u>Contracts</u>.  The Board of Directors may authorize any officer or officers, or any agent or agents, of the corporation to enter into any contract or to execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

Section 4.  <u>Loans</u>.  The corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the corporation or of its subsidiary, including any officer or employee who is a director of the corporation or its subsidiary, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation.  The loan, guaranty or other assistance may be with or without interest, and may be unsecured, or secured in such manner as the Board of Directors shall approve, including, without limitation, a pledge of shares of stock of the corporation.  Nothing in this section contained shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the corporation at common law or under any statute.

Section 5.  <u>Fiscal Year</u>.  The fiscal year of the corporation shall be fixed by resolution of the Board of Directors.

Section 6.  <u>Corporate Seal</u>.  The Board of Directors shall provide a corporate seal which shall be in the form of a circle and shall have inscribed thereon the name of the corporation and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

Section 7.  <u>Voting Securities Owned By Corporation</u>.  Voting securities in any other corporation held by the corporation shall be voted by the chief executive officer or president, unless the Board of Directors specifically confers authority to vote with respect thereto, which authority may be general or confined to specific instances, upon some other person or officer.  Any person authorized to vote securities shall have the power to appoint proxies, with general power of substitution.

Section 8.  <u>Inspection of Books and Records</u>.  Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom.  A proper purpose shall mean any purpose reasonably related to such person's interest as a stockholder.  In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the stockholder.  The demand under oath shall be directed to the corporation at its registered office in the State of Delaware or at its principal place of business.

Section 9.  <u>Section Headings</u>.  Section headings in these Bylaws are for convenience of reference only and shall not be given any substantive effect in limiting or otherwise construing any provision herein.

Section 10.  <u>Inconsistent Provisions</u>.  In the event that any provision of these Bylaws is or becomes inconsistent with any provision of the certificate of incorporation, the General Corporation Law

11

of the State of Delaware or any other applicable law, the provision of these Bylaws shall not be given any effect to the extent of such inconsistency but shall otherwise be given full force and effect.

## ARTICLE VIII

## AMENDMENTS

These Bylaws may be amended, altered, or repealed and new Bylaws adopted at any meeting of the Board of Directors by a majority vote. The fact that the power to adopt, amend, alter, or repeal the Bylaws has been conferred upon the Board of Directors shall not divest the stockholders of the same powers.

## ARTICLE IX

## CERTAIN BUSINESS COMBINATIONS

The corporation, by the affirmative vote (in addition to any other vote required by law or the certificate of incorporation) of its stockholders holding a majority of the shares entitled to vote, expressly elects not to be governed by §203 of the General Corporation Law of the State of Delaware.

12

EX-99.1 4 a11-16641_1ex99d1.htm EX-99.1

**Exhibit 99.1**

**Infor and Golden Gate Capital Complete Acquisition of Lawson Software**

*First Integrated Products to Provide Immediate Value to Customers*

**ATLANTA — July 6, 2011** — GGC Software Holdings, Inc., an affiliate of Golden Gate Capital, and Infor, a leading provider of business software serving more than 70,000 customers, today announced the completion of its acquisition of Lawson Software, Inc., under the terms of the merger agreement disclosed on April 26, 2011, effective as of July 5, 2011. Pursuant to the terms of such merger agreement, Lawson's stockholders (other than stockholders who have perfected their statutory rights of appraisal under Delaware law) will receive $11.25 per share in cash, without interest and less any applicable withholding taxes, for each share of common stock they owned immediately prior to the effective time of the merger.

Lawson is a global provider of business application software, maintenance and consulting to customers primarily in specific services, trade and manufacturing/distribution industries. Lawson has been combined with SoftBrands, Inc., an affiliate of Golden Gate Capital and Infor, with the new affiliation enabling Lawson/SoftBrands and Infor to share and integrate technology and partner on product offerings through cross-selling, marketing and distribution arrangements.

Pledging to deliver incremental value quickly to customers, the Infor and Lawson product development teams have begun integrating applications using Infor ION, an innovative interoperability architecture.

Under this development effort, first products targeted for release later this year are Lawson S3 and Infor FMS SunSystems Enterprise; Lawson S3 and Infor EAM; and Lawson Human Capital Management and Infor Workforce Management.

"These first product examples reflect the potential of this partnership and the fast pace of our development efforts," said Charles Phillips, CEO of Infor. "We will continue our work to deliver deeper functionality and industry-specific applications, particularly in key industries such as manufacturing, healthcare, distribution, public sector and hospitality."

In addition to Infor and Lawson's complementary product portfolio, the companies also share a large base of common customers who present cross-sell opportunities. Nine percent of Lawson's active customers also use Infor products, and 48 percent of Lawson's top revenue customers use at least one Infor application.

The combination of Lawson S3 and Infor FMS SunSystems Enterprise will enable organizations to adopt a two-tier financial management strategy. In this strategy, Lawson S3 can be deployed at headquarters and larger divisions, while Infor FMS SunSystems Enterprise is used at smaller operations distributed globally.

One key benefit of a flexible global financial management system is that it can support multiple countries, languages and currencies but also allow each distributed operation to upgrade separately.

The combination of Lawson S3 and Infor Enterprise Asset Management can help customers reduce operating and maintenance costs. The City of Greensboro, N.C., is one public sector customer that Infor and Lawson have in common.

"Infor EAM has helped us realize cost savings by substituting corrective maintenance with scheduled preventive maintenance activities," said Stephen Sherman, GIS Manager, City of Greensboro, N.C. "Integration with our Lawson S3 Financial Management System will further consolidate information and enable us to produce enhanced reports more quickly for senior management and state regulatory agencies."

Lastly, the combination of Infor Workforce Management with Lawson Human Capital Management can provide one system to manage all employee-related functions, including core HR, talent management, eLearning, time and attendance, and payroll. The integrated applications can improve operational decision making capabilities and enable time-and-attendance data to feed directly into payroll.

Notice Regarding Listing of Lawson Shares

As a result of the closing of the merger, shares of Lawson's common stock were delisted from NASDAQ as of the close of business on July 5, 2011 and will not open for trading on the First North exchange on July 6, 2011. Lawson's stockholders who hold shares registered through Euroclear Sweden as of July 8, 2011, will be paid the equivalent of U.S.$11.25 per share cash merger consideration on or about July 13, 2011.

**About Infor**

Infor is a leading provider of business software and services, helping more than 70,000 customers in 164 countries improve operations and drive growth. To learn more about Infor, please visit www.infor.com.

**About Golden Gate Capital**

Golden Gate Capital is a San Francisco-based private equity investment firm with approximately $9 billion of capital under management. Golden Gate is dedicated to partnering with world-class management teams to invest in change-intensive, growth businesses. For more information, visit www.goldengatecap.com.

# # #

**For more information:**
Dan Barnhardt
Infor
678-319-8457
dan.barnhardt@infor.com

Joe Thornton
Lawson
612-868-3647
joe.thornton@us.lawson.com