1              THE COURT:  All right.  Do we have the verdict forms?

2    I've got my copy.  Are you all in agreement on these forms?

3              MR. CARR:  Your Honor, we have a few changes to the,

4    I guess it's ePlus's second revised proposed verdict form, some

5    of which we are in agreement on and some of which we are not.

6    Do you have it in front of you?

7              THE COURT:  Yes.

8              MR. CARR:  Looking where it says configuration number

9    one, core S3 procurement system, do you see that?

10             THE COURT:  Yes.

11             MR. CARR:  What we are in agreement on in that

12   description is that the words at least should come out, and the

13   reason for that is because it would otherwise be duplicative

14   because some of the later configurations have at least those

15   three things.  So we're in agreement on that.

16             We believe that the words Lawson system foundation,

17   LSF/process flow, should also come out, because those modules

18   are not accused of infringing and that if it reads just

19   inventory control requisition and purchase order modules, that

20   is simpler and more straightforward for the jury, and that's

21   the way it ought to read.

22             EPlus disagrees with that.  One concern we have is

23   that if the jury were to find against Lawson, and we are

24   talking about an injunction in a month or six weeks or whenever

25   it is, or we're talking about damages if that were to get

1   reversed, we don't want that Lawson system foundation and

2   process flow included on the verdict form to indicate that in

3   any way they should be included in an injunction or damages.

4           THE COURT:  Why wouldn't they be if they infringed?

5   The Lawson system foundation/process flow has been defined to

6   be the inventory control, requisition, and purchase order

7   modules.

8           MR. CARR:  That's incorrect, Your Honor.  Those are

9   the foundations upon which those three modules, IC, RQ, and PO

10  set.  That is the LSF and process flow are the foundation below

11  those modules which Dr. Weaver has not asserted infringe, and I

12  don't think there's any disagreement with that.

13          MR. ROBERTSON:  No, there is disagreement about that.

14          THE COURT:  Give me that yellow chart.  Give me that

15  slide that he testified from.

16          MR. ROBERTSON:  We might not have it -- I don't know

17  that we have that here.  The testimony was, Your Honor, that

18  the core technology, for example, inventory control,

19  requisition, and purchase order are necessary to run on top of

20  Lawson system foundation and process flow.  It's undisputed.

21  Even Lawson's witnesses testified you can't run those three

22  modules without having it on LSF and process flow, and that's

23  part of the infringing configurations.  That's how the

24  testimony came in through Dr. Weaver in each instance.

25  Remember that bill always started out --

```
 1              THE COURT:  Basically what you're talking about is

 2   the Lawson system foundation process flow operating with

 3   inventory control, requisition, and purchase order modules;

 4   right?

 5              MR. ROBERTSON:  That's right.  That's an infringing

 6   configuration.  Now, let me just -- I did talk --

 7              THE COURT:  Why can't we put operating with and be

 8   done with it.

 9              MR. CARR:  That's fine with us, Your Honor, but Mr.

10   Robertson was going to say something.

11              MR. ROBERTSON:  I want to make a representation that

12   the Lawson system foundation and process flow can operate with

13   other Lawson software solutions, and we're not looking to

14   enjoin Lawson system foundation and process flow when it's

15   operating with those other modules if it's not operating in an

16   infringing configuration.  Remember, you can put a lot of

17   different modules on that foundation.

18              THE COURT:  Won't, after a comma, flow, comma,

19   operating with inventory control, requisition, and purchase

20   order.

21              MR. ROBERTSON:  Just so that there's --

22              THE COURT:  Won't that do it?

23              MR. ROBERTSON:  That should do it.

24              THE COURT:  Do you agree?

25              MR. CARR:  Yes, Your Honor, but I did want Mr.
```

1    Robertson to say what he said so later on there's no

2    misunderstanding about it.

3            THE COURT:  Yes, I can understand why you wanted that

4    said.

5            MR. CARR:  That way, you would have to make that same

6    change on configuration two, add operating, take out at least.

7            THE COURT:  Wait a minute, take out least, and

8    everybody's in agreement with that?

9            MR. ROBERTSON:  Yes, sir.

10           MR. CARR:  Add operating before the word with.  And

11   you'd have to do the same thing for each of the configurations

12   that are listed.

13           THE COURT:  This is a little confusing.  Operating

14   with inventory control, requisition, and purchase order

15   modules, and RSS; right?

16           MR. CARR:  Well, the core three procurement system

17   would be inside the parentheses.  The core three is just

18   Lawson's system foundation, LSF/process flow, operating with

19   inventory control, requisition, purchase order in parentheses.

20           THE COURT:  What about the phrase I'm talking about

21   in configuration two?  It's with requisition service.  It

22   should be and requisition service; is that right?

23           MR. ROBERTSON:  Yes, sir.

24           MR. CARR:  That's fine.

25           THE COURT:  Won't that solve the problem?

```
 1              MR. ROBERTSON:  Yes, sir.
 2              THE COURT:  All right.  We've got that taken care of.
 3              MR. CARR:  The same on configuration number three.
 4              THE COURT:  At least comes out.
 5              MR. ROBERTSON:  Yes.  And then the with changed to
 6    and again.
 7              THE COURT:  And punchout -- yeah, and requisition
 8    service and punchout; right?
 9              MR. ROBERTSON:  Yes.
10              THE COURT:  Four?
11              MR. CARR:  Same changes for four.
12              THE COURT:  Wait a minute.  Using the word operating,
13    does that eliminate the whole question of capability?
14              MR. ROBERTSON:  That's a good point, Your Honor.
15              THE COURT:  Or does it confuse to say -- maybe it's
16    just better to take operating out and just have with.
17              MR. ROBERTSON:  I think that's right.
18              MR. CARR:  We are back to where we were.  We didn't
19    think that it should be -- that you should mention Lawson
20    system foundation or LSF or process flow at all unless you had
21    operating with it.
22              THE COURT:  Well, that's because you take the view --
23              MR. ROBERTSON:  How about in combination with?
24              MR. CARR:  That's fine.
25              THE COURT:  In combination with.
```

 1            MR. CARR:  So in combination with instead of

 2   operating with throughout.

 3            THE COURT:  Yes.

 4            MR. CARR:  Your Honor, would you like us to just,

 5   once we're through all this, just send you another one?

 6            THE COURT:  I just want to make sure I've got, I know

 7   what we're doing here.  I'm going to let you all do the

 8   mechanics on it.  In combination with on this one.  That brings

 9   us to five.  Do we do the same thing?

10            MR. CARR:  Yes, Your Honor.

11            THE COURT:  Take out at least.  Just to follow

12   grammatical structure, if you go back to the one dealing with

13   configuration three, it should be after modules, it should be

14   comma, instead of and, and then you pick up with and punchout.

15   And then the same thing so you don't -- I think it can be

16   confusing, and you put and electronic data interchange in

17   number four, and then you come down to number five, and you say

18   purchase order modules, comma, requisition service or RSS,

19   comma, punchout, and electronic interchange, data interchange,

20   all right, and then we've -- then that's it, isn't it?

21            MR. CARR:  Then we have invalidity.

22            THE COURT:  No, I mean on the infringement.

23            MR. CARR:  Yes, that's it.

24            THE COURT:  Okay.

25            MR. CARR:  On the invalidity, we simplified this one.

 1   We still have one area of disagreement.  We're just going to

 2   have one question, so amending number one, we'll just cut out

 3   -- it won't have the number one.  It will say, do you find that

 4   Lawson has proven by clear and convincing evidence that any of

 5   the following claims are invalid, and then it's going to list

 6   the patents and the claims with the yes and no just as it was

 7   done in the infringement questions.  I will stop there, and

 8   then there's more.

 9            THE COURT:  All right, okay.  So that would take care

10   of yes and no of each one.

11            MR. CARR:  Right.

12            THE COURT:  You all disagree with that, you say?

13            MR. CARR:  No, we agree with that part.  The part

14   that we're in disagreement is this:  ePlus wants after each

15   claim what they have here on the verdict form, if you answered

16   yes, list the prior art references that you have found

17   invalidates the claim, and as you noted the other day, you

18   didn't think that was appropriate, and we agree and just don't

19   think it should be on the verdict form.

20            THE COURT:  Why is that on the verdict form?

21            MR. ROBERTSON:  Well, for two reasons, Your Honor.

22   One, in fairness, we've had to break out all the infringing

23   configurations so the jury has with specificity, can say which

24   claim applies to which configuration.  We'd like to know which

25   prior art would apply to invalidate which claim, and here why:

1    Also for purposes of review, and because there's been some

2    confusion in this case with respect to a lot of evidence that

3    has come in with respect to, say, PO Writer and J-CON, and what

4    we don't want to have is a situation where the jury comes back

5    and says, well, PO Writer or J-CON invalidated.

6           You know there's a question from one of the jurors

7    which we still haven't resolved, so there is some apparent

8    confusion about that.  So for purposes of review, for example,

9    if they were to come back and say J-CON invalidates claim three

10   of the '683 patent, it could go back with an explanation that

11   you can't consider J-CON for that, and we could clear up that

12   confusion.  Otherwise, it's simply a black box.  We have no way

13   to understand --

14          THE COURT:  If you do that, don't -- I understand

15   your point, but if you do that, you then have to have separate

16   inquiries, one invalid for anticipation and the other invalid

17   for obviousness, because you are using different prior arts for

18   each, as I understand it, from what Ms. Stoll-DeBell said, and

19   I don't think you can actually -- if you're going to have a

20   more detailed specific finding on a verdict form as in the

21   special interrogatory, for example, which is sort of what you

22   are talking about here, then you need to make sure it conforms

23   to the evidence in the case.

24          MR. ROBERTSON:  Well, there will be instructions,

25   Your Honor, as to which references can be considered for

1    anticipation and which references can be considered for

2    obviousness, so the jury can see that.

3            THE COURT:  I'm going to give them an instruction

4    that they can't consider J-CON or anything else that's been cut

5    out.  I can do that.  That would be just as easy to do it that

6    way if it would make your life better.  I understand what

7    you're saying, but it seems to me if, in fact, you're going to

8    ask them to call out the references, then you need to --

9    because you're talking about some of the same references for

10   anticipation and obviousness, but different for obviousness,

11   more for obviousness than anticipation, it seems to me like you

12   have to ask them both ways which means you just doubled the

13   verdict form and make them focus on invalidity by virtue of

14   anticipation and invalidity by virtue of obviousness.

15           I don't know how you all feel about that, but that's

16   my inclination, is that it may be necessary -- or my gut

17   reaction is it may be necessary, but you all may have different

18   views on it.  What do you say, Mr. Carr?

19           MR. CARR:  I think the way we proposed is the way it

20   ought to be done.  You're right.  You're going to instruct them

21   about what prior art -- what the prior art systems is that they

22   consider, so I don't see the problem that Mr. Robertson is

23   worried about that they may rule on J-CON.

24           I do think that they are proposing special

25   interrogatories, and I don't think that's appropriate to have a

 1    special interrogatory for the jury here, and last, the

 2    difference between this and the infringement issues is that we

 3    need to know what systems they feel are infringing, because if

 4    they do find that something is infringing, then you'll need to

 5    craft relief.  So we do need know that specificity on that side

 6    that isn't necessary on the invalidity side.

 7          THE COURT:  Suppose they find, given the pending

 8    JMOLs, something that the record shows rather clearly doesn't

 9    fly?

10          MR. ROBERTSON:  They could find, for example, on the

11    '989 patent, which we contend can't be considered for

12    invalidating purposes, and the Court would have no way to

13    review that on JMOL afterwards to determine whether or not

14    there was a basis for that.  Or the RIMS brochure, for example,

15    which we contend can't be considered as prior art, or the RIMS

16    system as unspecified.

17          THE COURT:  Well, now, I don't know that there's

18    inherently anything wrong with asking them to respond to these

19    interrogatories in a patent case.  In fact, I think that

20    Berkeley manual recommends that sometimes it's appropriate,

21    but -- so I don't know that it's inherently inappropriate.  I

22    think it's sort of a case-specific decision, and I don't see

23    how you are hurt by requiring that specification, Lawson.

24          MR. ROBERTSON:  We'll observe this type of form was

25    used by Judge Spencer in the SAP case.

1          THE COURT:  Did he break it out by obviousness and

2   anticipation?

3          MR. CARR:  Obviousness didn't go to the jury.

4          MR. ROBERTSON:  They didn't have an obviousness case.

5          THE COURT:  It was just anticipation.

6          MR. McDONALD:  I think that makes the answers to

7   these questions potentially much more complicated, because you

8   do have anticipation in various combinations of art.

9          MR. CARR:  You triple -- you have to add --

10         MR. McDONALD:  Also, it makes them less likely to

11  want to say yes, because if they say yes, they're going to have

12  to go through a bunch more work to put down the answers to

13  those question --

14         THE COURT:  You have too little faith in the jury.

15  You should see some of the verdict forms that come in RICO

16  cases and in criminal cases where you have to make findings of

17  various and sundry things.  They don't shirk their duty because

18  it's there to be done.

19         MR. CARR:  The basic argument I hear from Mr.

20  Robertson is that -- he's concerned the jury will ignore your

21  instructions and decide invalidity based on J-CON or PO Writer,

22  and I don't think we can make that assumption.  We have to

23  assume instead the jury will follow your instructions.

24         THE COURT:  Is law is, at least in the Fourth

25  Circuit, that the jury is presumed to follow the instructions.

1          MR. CARR:  Exactly.

2          THE COURT:  Absent evidence to the contrary.

3          MR. ROBERTSON:  I'm not concerned about J-CON and PO

4    Writer.  We're concerned about these other references that at

5    least the Court has taken under reservation on our JMOL that

6    may not be invalidating, but if it's a black box, we will never

7    know, and the Court will not be able to address the JMOL issue

8    that's still pending after the verdict.

9          THE COURT:  All right.  Anybody have anything else?

10         MR. CARR:  Other than what is prior art is in the

11   instructions.

12         THE COURT:  Yes.

13         MR. CARR:  So that last concern, I don't see it.

14         THE COURT:  I think it's a good idea to have them

15   separated out by anticipation and by obviousness, and you could

16   make their job easier by listing that which is contended to be

17   and have them say yes or no.

18         MR. ROBERTSON:  We'll take a stab at that, Your

19   Honor, and we'll get it to them early tomorrow, like 6:00 a.m.

20   when you get up, Ms. Stoll-DeBell.

21         MS. STOLL-DeBELL:  Not tomorrow.

22         MR. CARR:  Is that something you need tomorrow?

23         THE COURT:  I'm going -- I don't need it tomorrow

24   because my secretary is not going to be doing it.  She is going

25   to be doing the instructions, and she's coming in tomorrow to

1    do that.

2              MR. CARR:  If we get you the verdict form over the

3    weekend, that would be sufficient because we're going to be

4    doing it.

5              THE COURT:  As long as you all -- you understand what

6    I'm saying to do?

7              MR. CARR:  To break it out --

8              THE COURT:  Break it out by anticipation and

9    obviousness --

10             MR. CARR:  And call out the references.

11             THE COURT:  That is one way to do it.  The way this

12   is done is it requires them to specify the references.  I think

13   it is easier for them to decide if you identify the references

14   and say yes or no.

15             MR. CARR:  Okay.  That's what we would prefer.  I

16   don't want to have to make the jury fill in the reference.  We

17   will put the reference in, and they can say yes or no.

18             MR. ROBERTSON:  Mr. Carr, let's confer about it if we

19   can.  I don't want to get into something that opens up a bigger

20   can of worms.  I'd like to have a meet-and-confer and see if we

21   can come to agreement.

22             THE COURT:  Be careful for which you ask.  Does that

23   take care of what we're doing here?

24             MR. CARR:  We have one more issue to bring up with

25   Your Honor, and we have been talking about the exhibits that

1    will go back to the jury.

2            THE COURT:  I asked you to do a list of the things.

3            MR. CARR:  We're very close.  We've been working with

4    Mr. Neal on that.  We only have two issues that we want to

5    bring to you.  The first is the license agreements.  There are,

6    I think, four or five plaintiff's exhibits that are the license

7    agreements.

8            THE COURT:  You mean --

9            MR. CARR:  SAP, Ariba, Verian, SciQuest, Perfect

10   Commerce.  We don't feel that those should go back to the jury.

11   Remember you dealt with those exhibits that were on the screen

12   and you took them off I screen, I think it was yesterday?

13           THE COURT:  Yes, I remember.  Why do they need to go

14   back to the jury?

15           MR. CARR:  Exactly.

16           MR. ROBERTSON:  Your Honor, we want them to see the

17   licensing terms, what was cross-licensed, and we've offered to

18   redact anything that has to do with the litigation, so all they

19   see is the patents, the consideration we got in response, all

20   of the Ariba licenses -- excuse me, patents that they had, so

21   the jury understands the significance of the commercial

22   success.  They have a document in their hand, and they can see

23   the numbers that resulted --

24           THE COURT:  You'll redact the things that have to do

25   --

 1            MR. ROBERTSON:  Anything that has to do with

 2    litigation will not be there, and we'll give that to them in

 3    advance, and if they have any further issue, we'll address that

 4    and redact further.

 5            THE COURT:  I don't see any problem with that.

 6            MR. ROBERTSON:  The only other issue we have with

 7    respect to an exhibit, you may recall there was DX --

 8            MR. CARR:  We haven't resolved the license agreement

 9    yet.  We don't agree to that redaction.  We think it should be

10    all or nothing, and we don't think --

11            THE COURT:  Well, I think it's fair to have a

12    redacted version.  Why do you think taking the litigation out

13    of it is -- it's going to have settlement agreement, and

14    they've already been told that it was the product of

15    litigation.

16            MR. CARR:  And they had detailed testimony from Mr.

17    Farber about it, so they can argue that.  They don't need the

18    license agreements in addition to what testimony is already in

19    the case, and that's why you took it off the screen.

20            THE COURT:  I took it off the screen because the

21    litigation stuff was in there, and I thought that was going to

22    be confusing.  I didn't have any objection to or wasn't trying

23    to address the terms of the agreement.  It was the context in

24    this which the terms were presented which was -- the whereas

25    clauses and the releases, I believe, and there were other

1    things that just didn't have to do with commercial success.  I

2    don't see as long as the exhibits are redacted to match what he

3    testified to, then that would be a right, I think.

4            MR. CARR:  Were these offered for commercial success?

5    They are offered for licensing.

6            THE COURT:  I said commercial success.  It's

7    secondary consideration, and licensing is one of the components

8    of secondary considerations.

9            MR. CARR:  Then I just don't get why the detailed

10   terms of the licenses are relevant or necessary for the jury

11   when it's just that it was licensed and this is the amount.

12           THE COURT:  It's also probative of -- the dollar

13   amount is probative of the commercial success.

14           MR. CARR:  And that's in evidence, and they can argue

15   that.

16           THE COURT:  I understand that.

17           MR. CARR:  They don't need the license agreements in

18   order to do that.

19           THE COURT:  There must be something bothering you

20   about this that I don't understand.  Lay it out on the table

21   for me, because what you said so far doesn't --

22           MR. CARR:  I'm not hiding anything.

23           THE COURT:  No, I mean -- are you sure?  I wasn't

24   accusing you of hiding.  I was wondering if there was something

25   you were reluctant to say.

1            MR. McDONALD:  I think it's a matter of being

2     consistent with what happened in front of the jury where the

3     agreements were taken off the screen.  We're thinking there's

4     prejudice to that, and we obviously moved to even exclude the

5     license agreements.

6            They came in as much as they needed to come in, but

7     they are prejudicial, we think, to overdo it, over do the

8     presentation of those license agreements.

9            THE COURT:  All right.  That objection is overruled.

10    You can send those exhibits in with everything redacted about

11    the litigation and just confine what's presented in the license

12    agreement to the basic things that he testified to.

13           MR. ROBERTSON:  Absolutely.

14           MR. McDONALD:  From our standpoint, if it's going to

15    come in anyway, we'd just assume the whole thing comes in so

16    the jury understands it was a compromise of litigation.

17           THE COURT:  Okay, that's fine.

18           MR. ROBERTSON:  Your Honor, the only remaining

19    exhibit issue, I think, is Exhibit 96.

20           MR. MERRITT:  Before we leave those exhibits, I want

21    to be sure that that last statement about opening up these

22    licensing agreements doesn't open the door to any argument by

23    counsel about things that weren't in evidence about litigation

24    and about what it did or didn't mean.

25           THE COURT:  I don't know what you can argue about

1    that anyway.

2         MR. McDONALD:  I don't know what he's talking about.

3         THE COURT:  I think he's apprehensive that you want

4    the whole thing in so you can say, look -- I think probably I

5    have to reiterate the instructions to these people that the

6    fact that this case was tried and settled and resulted in

7    litigation is not something that you can consider.  You can

8    only consider the licensing terms.

9         That is -- that's why I think the redaction is the

10   proper way to go, but -- where you insist on having it in, you

11   can have it in, but it's not going to do you any good to --

12        MR. McDONALD:  I wasn't planning on spending much

13   time talking about those licenses in my closing.

14        THE COURT:  Be aware the issue is on the table, and

15   you'll probably be told to stop if you do.

16        MR. ROBERTSON:  So I think the only --

17        THE COURT:  That's something that he doesn't raise,

18   and I don't want you raising something about the litigation and

19   arguing, look, let me tell you, we really need -- see what the

20   other jury did, we laid the wood on them, see what these other

21   people did, you have to do the same thing.

22        MR. ROBERTSON:  I don't intend to do that.

23        THE COURT:  We're not going to have that, so that's

24   not an issue.

25        MR. ROBERTSON:  I am going to discuss the royalties

1  that have been enjoyed by the company by virtue of the patents,

2  but -- and I don't think -- I'm certainly not going to be

3  holding up license agreements, redacted or otherwise.

4         So the only remaining issue, Your Honor, is this

5  Defendant's Exhibit 96.

6         THE COURT:  What is that?

7         MR. ROBERTSON:  It was a J-CON manual that was

8  thousands of pages -- more than a thousand pages long.  Mr.

9  Staats testified about J-CON and was never asked anything about

10  this manual.

11        When Dr. Shamos took the witness stand, he put up one

12  slide that had four bullet points about J-CON to talk about it

13  as for secondary factors, and they flashed just the cover page

14  of Exhibit DX-96 that simply had the title of the document,

15  general manual for J-CON, didn't ask him any questions about

16  the substance, didn't show him any of the thousands of the

17  pages that were there and just said, is this manual, yes, and

18  there were no further questions.

19        Now they want this manual to go back with these

20  thousands of pages and with some juror confusion as to whether

21  or not it is, in fact, a prior art reference or can be

22  considered, and we don't think --

23        THE COURT:  I thought the jury was going to be told

24  that it's not.

25        MR. ROBERTSON:  But, Your Honor, then there's no real

1    probative value to send back a huge thick manual when the only

2    thing that was shown was the cover page.  If they want to send

3    the cover page back, DX-96 that says J-CON manual, that's the

4    only thing that was presented and there were no questions asked

5    about it whatsoever.

6           So we think it would be inappropriate to send the

7    entire manual back since it really has no real relevance to

8    this case.  If they wanted to show that it was commercially

9    available during that period of time, the cover page shows

10   that.  There's no need to delve into the substance of it.

11          MR. CARR:  Your Honor, there have been a lot of

12   exhibits that have a lot of pages in them that only a few pages

13   of those exhibits have been referenced in this trial, and

14   they're going back.  We shouldn't treat DX-96 any different

15   from those other exhibits.  And it is probative on the

16   secondary considerations issue, and they are entitled to look

17   at it when they are deliberating just like every other exhibit.

18          I'll give you an example.  There's these long

19   statements of work that are going to go back, the ones that

20   were referenced in Mr. Lohkamp's -- he talked about one or two

21   pages of them, but the whole statement of work --

22          THE COURT:  I think you are talking about more than

23   that, but it wasn't a big segment of it.

24          MR. CARR:  That is my point, and why DX-96 --

25          THE COURT:  Why do you want it back in there, because

1   nobody testified about it so you can't make any argument about

2   it other than the front page.

3            MR. CARR:  All the exhibits that have been referenced

4   in any way to whatever doubt are going back, and it would be

5   prejudicial to treat this one differently?

6            THE COURT:  Why?

7            MR. CARR:  Because I think -- I wasn't there.  This

8   was the one part of the trial I was not here for.

9            MR. McDONALD:  I think the point is, you had Mr.

10  Staats testifying about this system, and for this to be only

11  thing that the jury doesn't see, they'll say, well, maybe he

12  wasn't talking about, maybe that's not true, there wasn't such

13  a manual or something.

14           THE COURT:  What relevance does the manual have now?

15           MR. McDONALD:  It corroborates his testimony that his

16  product met these needs in the marketplace that are related to

17  the secondary considerations.

18           THE COURT:  How does it do that without looking at

19  the substance of it as to which there's no testimony

20  whatsoever?

21           MR. McDONALD:  He did testify as to the substance of

22  the operation of the system.

23           THE COURT:  What?

24           MR. McDONALD:  Mr. Staats did testify as to the

25  operation of the system, and that's what's described in the

1    manual.

2              THE COURT:  Are you proposing to argue that they look

3    at the pieces of the manual as to which no testimony was made?

4              MR. McDONALD:  No.  I just don't want them suspicious

5    that they don't even get to see the manual that relates to the

6    product that Mr. Staats was testifying about and draw adverse

7    inferences from it.  That's my concern.

8              THE COURT:  Okay.

9              MR. ROBERTSON:  Mr. Staats wasn't asked a single

10   question about the manual.  It wasn't even presented to Mr.

11   Staats.

12             THE COURT:  It was admitted, I believe, at the

13   pretrial conference.  It was used.  I don't see any sense

14   carving out a special rule for it among these other fat

15   documents.

16             If it were up to me I'd require you to go back and

17   use the front page and only the pages that were used of any

18   large document so the jury really would have just what it is

19   that was considered.

20             MR. CARR:  Your Honor, we have a couple other

21   points --

22             THE COURT:  So that objection is overruled.

23             MR. CARR:  Just make sure we're all on the same page,

24   one was that there are -- a few of the exhibits are the

25   excerpts of the depositions that were read.  We've agreed that

1    those should not go back to the jury, but we wanted to make

2    sure you are aware of that and agree with that.

3              THE COURT:  You may get questions -- they are

4    exhibits and they are admitted and you may get questions from

5    the jury.  They may want them back.  And if they are

6    exhibits -- I don't have any objection to not letting them go

7    back initially, but if they ask for them --

8              MR. ROBERTSON:  Our concern, mutual concern, Your

9    Honor, was that by sending back just some testimony in

10   transcript form, it tends to put undue emphasis on that

11   testimony.  So that's why we came to the agreement, but I

12   understand the Court's concern as well.

13             MR. CARR:  Cross that bridge when we come to it.

14             THE COURT:  Now you have a whole transcript, so I've

15   been made a liar out of.  You all have been citing from it.  I

16   told them we don't have the capacity to do that, and now we've

17   done it.

18             MR. CARR:  The only other point was one that we all

19   feel comfortable that we understand the exhibits going back to

20   the jury doesn't mean that all of the rest of the exhibits in

21   the pretrial order are not in the order.  We're all assuming

22   that the record is going to include all the exhibits.  We are

23   ear paranoid enough we wanted to make sure.

24             THE COURT:  I think what I said was if you don't use

25   an exhibit at the trial, it's not part of the record.  Did I

1    say that?

2            MR. CARR:  I don't recall that.

3            THE COURT:  Do all of you want the record to consist

4    of all admitted exhibits?  I said that two or three times.  I

5    don't know that you were up here when I said it, but I did say

6    it.  They are -- the only exhibits that -- I even told you

7    where it came from.  I told you it came from Judge Merhige.

8            MR. CARR:  I remember Judge Merhige doing it.

9            MR. McDONALD:  Dabney and I didn't talk about it.  I

10   actually remember you did say that in this case.  I accept

11   that.  That's fine.

12           THE COURT:  If you all want the whole raft in -- I,

13   frankly, can't remember now, it's so late in the evening,

14   whether the pretrial order says all exhibits not objected to

15   are admitted or are admissible.

16           MR. ROBERTSON:  We will live with the Merhige/Payne

17   rule.

18           THE COURT:  If you all are happy -- whatever you used

19   is what goes back, and that's the record in the case.

20           MR. ROBERTSON:  There was one other exception that we

21   did have.

22           THE COURT:  You need certain things in the record

23   that are part of your -- you know, the error I fouled up the

24   summary judgment, but that's separately identified in the

25   record as an exhibit somewhere.

1          MR. CARR:  Well, an example would be that these

2     deposition excerpts, that the only place that that testimony

3     exists is in those exhibits; right?

4          THE COURT:  You listed those.

5          MR. CARR:  Exactly, but they're not going to the

6     jury.

7          THE COURT:  I said not used, and you used these

8     deposition exhibits.  They are -- I mean transcripts.  That's

9     part of the record.

10          MR. ROBERTSON:  There was one other exception to that

11     rule because we had a couple of exhibits we agreed upon, like

12     we didn't identify during the course of the trial the file

13     history for the '172 patent, for example, and we'd like that to

14     be part of the record.  So there's PX-5 --

15          MR. CARR:  Judge, I think, frankly, we're of the mind

16     to just make all the exhibits part of the record.

17          MR. McDONALD:  I think if we go through this process,

18     we'll think of a few more that fit that category.

19          THE COURT:  I don't think it's right to let you pick

20     and choose and --

21          MR. CARR:  I think we put it all in.

22          THE COURT:  It's either the Merhige rule or it's all

23     of them that have been admitted.

24          MR. McDONALD:  All of them.  I'm just not comfortable

25     at this point.

1          THE COURT:  You all screwed up with that one.  Sorry.

2    All of them are part of the record.  You're going to have to

3    live with it, and you understand the rule, don't you?  The rule

4    is that you have to go through eternity, it's on your back with

5    every exhibit you admitted in any trial anywhere.

6          MR. MERRITT:  Judge, one other matter that's just a

7    technicality we've been talking about with Mr. Neal, there

8    there's an exhibit that consists of -- I think there's four of

9    them that consist of laptop demos, and we understand that in

10   other cases a laptop has been allowed to go back with the jury

11   so they can run the demos, and we assume that would be

12   appropriate in this case as well.

13         THE COURT:  If the laptop is an exhibit, it can go

14   back.

15         MR. CARR:  It's just a laptop to allow them to watch

16   the demo.

17         THE CLERK:  They want to watch the demonstration, and

18   they said they would provide a laptop.

19         MR. MERRITT:  We'll provide a laptop.  It's Dr.

20   Weaver's demonstrations of the functionality.

21         THE COURT:  Well, did he use everything on the -- how

22   are you going -- are you going to load it with it on there,

23   have a disk with it on there or what?

24         MR. ROBERTSON:  We'll make it as user-friendly as

25   possible.  Ms. Stoll-DeBell reminds me we only used three out

1   of the four.  I think the screen shots for the fourth --

2            MR. CARR:  They used four.

3            MR. ROBERTSON:  We used four.  I'm sorry.

4            THE COURT:  Not too many.  Remember the court

5   reporter.

6            MR. ROBERTSON:  So we have four.  We'll make it as

7   simple as possible.  Mr. Neal suggested we're going to have to

8   have somebody give instruction as to how to do it, and we'll

9   have representatives from both parties there.  We might have

10  Dr. Weaver come back, and he can go in the jury room.

11           MR. CARR:  I thought if we showed Mr. Neal how to use

12  it, and Mr. Neal can show the jury.

13           THE COURT:  Boy, you're a thrill-seeker.  I have a

14  suggestion.  There's an engineer on the jury.  Why don't you

15  show her how to do it, and she can be the operator.  I can't

16  imagine any engineer couldn't do it.  Mr. Neal and I are

17  different things.  All right, does that take care of

18  everything?

19           MR. ROBERTSON:  Yes, Your Honor.

20           MR. McDONALD:  Yes.

21           THE COURT:  All right.  I'm going to make a big stack

22  of things that I don't any longer need over the weekend, and on

23  Monday morning they'll be sitting over there right up on top of

24  this bench, and you al can take them out of here.

25           MR. ROBERTSON:  What time will we be starting closing

1    arguments, Your Honor?

2              THE COURT:  We told the jury to come back at 9:00.

3    So you're going to get those instructions over here by -- I

4    need them by four o'clock tomorrow afternoon.  So if that lets

5    you sleep a little later, have at it.  Does that take care of

6    everything?  I don't intend to clean up night.

7

8              (Court adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25