

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ePLUS, INC.

     Plaintiff,

v.                         Civil No. 3:09cv620

LAWSON SOFTWARE, INC.,

     Defendant.

## MEMORANDUM OPINION

Before the Court are Defendant Lawson Software, Inc.'s RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (Docket No. 759) and RENEWED MOTION FOR NEW TRIAL (Docket No. 761). For the reasons set forth below, both motions will be denied.

## BACKGROUND

On May 19, 2009, ePlus, Inc. ("ePlus") brought suit against Lawson Software, Inc. ("Lawson") for infringement of three ePlus patents: U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent"), and 6,505,172 (the "'172 Patent"). The specific claims at issue during trial were claims 3, 26, 28, and 29 of the '683 patent; claims 1, 2, 6, 9, 21, 22, and 29 of the '516 patent; and claim 1 of the '172 patent. The patents-in-

suit relate to electronic sourcing and procurement software applications, services, systems, and methods. An electronic sourcing system is an electronic system for use by a prospective buyer to locate and find items to purchase from sources, suppliers, or vendors. Simply put, the systems, and the methods conducted by those systems, help automate internal corporate purchasing processes. Users, generally the employees of a company, may search for items for sale from multiple selected electronic catalogs, view inventory availability information for those items, find related items available from other suppliers, and requisition the desired goods or services. The systems then generate electronic purchase orders to each different supplier for approved requisitions.

Procure+ and Content+ are ePlus software systems that embody the asserted claims of the patents-in-suit. In the procurement software industry, these systems are known as "best of breed" software applications. They can be an internal stand-alone program integrated with other software, or they can be installed as a product hosted by ePlus. Lawson, on the other hand, manufactures and sells enterprise resource planning ("ERP") software. Lawson's supply chain management suite of ERP software is the Core S3 Procurement System, which is comprised of Lawson System

Foundation ("LSF") and ProcessFlow, used in combination with Inventory Control, Requisition, and Purchase Order modules. Lawson's Requisition Self-Service ("RSS") and Punchout products are designed to be used as add-on features to the Core S3 Procurement System. ePlus's best of breed software applications, Procure+ and Content+, also can be used as add-on features to the Core S3 Procurement System. Lawson also provides services for its Core S3 Procurement System to its customers, including installation, implementation, hosting, maintenance, support, training, and consulting. Further details respecting the litigation between the parties are set forth in ePlus, Inc. v. Lawson Software, Inc., Civ. Action No. 3:09cv620, 2011 WL 2119410, *1-4 (E.D. Va. May 23, 2011).

Trial commenced on January 4, 2011. After ePlus presented its case with respect to the issues of infringement and validity, Lawson moved for judgment as a matter of law on both issues. See Docket No. 574. After hearing the parties' arguments and reviewing the papers, the Court denied the motion, finding that "a reasonable jury could reasonably return a verdict for the plaintiff on the issues of infringement and invalidity." See Docket No. 602. On January 27, after nearly three weeks of testimony and evidence, the jury reached a unanimous verdict and

found that the '683 patent and the '172 patent were infringed, while the '516 patent was not infringed. The jury further found that <u>all</u> asserted claims of the patents-in-suit were valid. Specifically, the jury determined that the following configurations of Lawson's Core S3 Procurement System infringe the asserted claims identified below, both directly and indirectly:

- Lawson's S3 Procurement System (LSF/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules) and RSS, infringes claim 1 of the '172 patent;

- Lawson's S3 Procurement System, RSS, and Punchout, infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent; and

- Lawson's S3 Procurement System, RSS, Punchout, and Electronic Data Interchange ("EDI"), infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent.[1]

On May 23, 2011, the Court entered a permanent injunction against Lawson's continued direct and indirect infringement of the claims found to be infringed by the jury. On May 24, 2011, the Court denied Lawson's motion to stay any

---

[1] Pursuant to the parties' Amended Final Pretrial Order (Docket No. 481), Section II, because ePlus proved that the aforementioned configurations of Lawson's S3 Procurement System infringe claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent, both directly and indirectly, ePlus also proved that Lawson's M3 Procurement System infringes claims 3, 26, 28, and 29 of the '683 patent, and claim 1 of the '172 patent, both directly and indirectly.

permanent injunction.   Lawson has now renewed its motion
for judgment as a matter of law on the issues of
infringement and invalidity of the asserted claims, and it
has moved for a new trial.   The issues are fully briefed,
and therefore ripe for decision.


## DISCUSSION

### 1. Renewed Motion for Judgment as a Matter of Law

#### a. Legal Standard

Under Rule 50(b), a party who has moved for judgment
as a matter of law at trial may, within twenty-eight days
of entry of judgment, renew the request for judgment as a
matter of law, which also may include an alternative or
joint request for a new trial under Rule 59.   Fed. R. Civ.
P. 50(b).   In ruling on a renewed motion for judgment as a
matter of law, a district court has several options and
may:   (1) allow judgment on the verdict; (2) order a new
trial; or (3) direct the entry of judgment as a matter of
law.   Fed. R. Civ. P. 50(b)(1)-(3).   A district court
should grant a Rule 50(b) motion if it determines, "without
weighing the evidence or considering the credibility of the
witnesses, that substantial evidence does not support the
jury's findings." Konkel v. Bob Evans Farms Inc., 165 F.3d
275, 279 (4th Cir. 1999) (citing White v. Cnty. of

5

Newberry, 985 F.2d 168, 172 (4th Cir. 1993)); see also S. Atl. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 532 (4th Cir. 2002); Bennett v. R&L Carriers Shared Servs., LLC, 744 F. Supp. 2d 494, 509 (E.D. Va. 2010). "[T]he question is whether a jury, viewing the evidence in the light most favorable to [the prevailing party], 'could have properly reached the conclusion reached by this jury.' . . . If reasonable minds could differ about the result in this case, [the court] must affirm the jury's verdict." Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (citation omitted).

### b. Infringement

ePlus alleged that Lawson both directly and indirectly infringed the asserted claims of the patents-in-suit. "Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1380 (Fed. Cir. 2007) (citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997)). This logically flows from the statute itself, which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (2010). Inducing infringement

6

and contributing to infringement are both forms of indirect infringement. See 35 U.S.C. §§ 271(b)-(c).

The jury found that Lawson, directly and indirectly, infringed five of the asserted claims at issue. Three of the infringed claims, claims 26, 28, and 29 of the '683 patent, teach a method related to electronic sourcing software. Claims 1 of the '172 patent and 3 of the '683 patent are system claims. Lawson contends that insufficient evidence supports the jury's verdict with respect to both direct and indirect infringement. Lawson's arguments lack merit.

### i. Direct Infringement

First, contrary to Lawson's argument, there was substantial evidence for a jury to find that a single party performs each step of the methods recited in claims 26, 28, and 29 of the '683 patent. Evidence was presented that Lawson performs each step of the claims, and thus directly infringes the claims, when it uses the infringing systems to demonstrate functionality to customers or to train users of the systems. Moreover, there was substantial evidence presented to the jury that Lawson's customers also perform each step of the method claims through their use of the accused systems. Based on the presentation of this evidence, a jury could reasonably find that a user of the

7

accused systems, either Lawson or its customers, performs each step of the claimed methods. Thus, there was substantial evidence of direct infringement of the method claims.[2]

With respect to direct infringement of the system claims, Lawson maintains that the jury did not have a legally sufficient basis to find that Lawson's actions infringe claim 3 of the '683 patent and claim 1 of the '172 patent because Lawson does not make, use, offer for sale, or sell an entire, purportedly infringing system. Specifically, Lawson asserts that Dr. Weaver, ePlus's infringement expert, made conclusory allegations of infringement related to these claims, which is insufficient to meet ePlus's burden. Contrary to Lawson's argument, the jury heard considerable evidence supporting the verdict with respect to Lawson's direct infringement of claim 1 of the '172 patent and claim 3 of the '683 patent. In particular, evidence was presented that Lawson makes and sells LSF/ProcessFlow, the Inventory Control, Requisitions, and Purchase Order modules -- all comprising the Core S3 Procurement System -- and the RSS, Punchout, and EDI add-on

---

[2] Because substantial evidence was presented with respect to Lawson's direct infringement of the method claims, the Court will not address the parties' arguments with respect to joint infringement.

software applications.  After manufacturing and selling the infringing configurations, Lawson installs the software on the customers' systems, imports vendor catalogs into those systems, and implements fully-functional systems for its customers.  Lawson and its customers then put the entire systems into use.  See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc., 631 F.3d 1279, 1285 (Fed. Cir. 2011). Furthermore, it cannot be said that Dr. Weaver's testimony was conclusory.  His infringement opinion was supported by substantial testimony from Lawson's own witnesses, documentary evidence, and system demonstrations. Furthermore, he testified in detail as to the bases for his opinion for almost two full trial days, during which time he reviewed dozens of Lawson's documents and conducted demonstrations for the jury of the infringing systems.

## ii. Indirect Infringement

Lawson next argues that the jury's verdict with respect to indirect infringement was supported by insufficient evidence.  The Court does not agree.  The jury heard and received substantial evidence to support a finding of indirect infringement of the claims, on either an inducement or contributory infringement basis.  Evidence demonstrated that Lawson actively induces its customers' direct infringement by selling and offering to sell the

9

infringing systems with the intent that its customers use those systems in an infringing manner. Testimony elicited during the trial and the documentary evidence tended to prove also that Lawson installs the infringing systems on its customers' systems, configures and implements the systems, provides a wide-range of technical support and service, and provides instructions and training to its customers on how to use the systems in an infringing manner.

Lawson contends that the Supreme Court's recent decision in Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. __, 131 S. Ct. 2060 (2011), and the Federal Circuit's decision in Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293 (Fed. Cir. 2005), mandate a conclusion to the contrary because Lawson did not have actual knowledge of the patents-in-suit before ePlus filed this lawsuit in 2009, nor did Lawson have the requisite intent to infringe after ePlus filed the lawsuit because it reasonably believed that there was no infringement. Furthermore, Lawson maintains that the jury verdict is not entitled to deference on the indirect infringement issue because it was based on a flawed, pre-SEB standard for intent.

Lawson's arguments once again miss the mark. First, there was considerable evidence presented to the jury from which it could find that it was more likely than not that Lawson had knowledge of the patents-in-suit, no later than the filing of the Complaint, and thereafter continued to aid and abet, and contribute to, its customers' infringing uses of the systems. With respect to Lawson's knowledge before ePlus filed the Complaint, there was evidence presented that the patents were marked, the patents were publicized within the industry, and that Lawson knew of ePlus as a competitor, although there was evidence that Lawson may not have viewed them as an actual competitive threat. Moreover, the jury's verdict is entitled to deference because, contrary to Lawson's argument, the Court's instruction to the jury regarding induced infringement was consistent with the Supreme Court's recent holding in SEB that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." SEB, 131 S. Ct. at 2068. The Supreme Court found no reason why willful blindness should not apply in civil actions for induced patent infringement under § 271(c), and determined that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to

have actually known the critical facts." <u>Id.</u> at 2069, 2070-71.   The Court's instruction conformed to this standard and explained to the jury that

> [k]nowledge of the patent may be
> established by a finding that Lawson
> had actual knowledge of the patent or
> that Lawson deliberately disregarded a
> known risk that ePlus had a protective
> patent.

Tr. Transcript 3256:7-10 (Jan. 24, 2011).   This instruction comports with the Supreme Court's discussion of willful blindness in <u>SEB</u>.   Furthermore, to the extent that Lawson argues that the Court's instruction recites the "deliberate indifference" standard rejected by the Supreme Court in <u>SEB</u>, when discussing the induced infringement instruction with counsel, this Court noted that the deliberate indifference standard is

> somewhat different from this, though.
> There is a relationship between
> deliberately disregarding and
> deliberate indifference in the context
> of the civil rights case.  Indifference
> constitutes -- suggests something
> different than disregard.  So they are
> not exactly the same . . . .

Tr. Transcript 2971:4-9 (Jan. 21, 2011).   The Court, therefore, is satisfied that its instruction to the jury on knowledge of the ePlus patents-in-suit is consistent with the Supreme Court's recent holding in <u>SEB</u>.

## c. Invalidity

Lawson also has renewed its motion for judgment as a matter of law on the issue of validity of the asserted claims of the patents-in-suit. The jury found all the asserted claims valid. Lawson argues that substantial evidence does not support the jury's verdict that the claims are valid.

A patent may be obtained only if the subject matter of the invention would not have been obvious at the time of the invention. 35 U.S.C. § 103(a). The underlying factual inquiries in determining whether the claimed inventions are obvious are: (1) the level of ordinary skill in the art at the time the invention was made; (2) the scope and content of the prior art; (3) the differences between the prior art and each claim; and (3) secondary considerations of non-obviousness. KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007); Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966). When attempting to combine alleged prior art references, there must have been something in the prior art, as a whole, that suggests the desirability, and therefore, the obviousness of making the combination of prior art. See, e.g., In re Geiger, 815 F.2d 686, 688 (Fed. Cir. 1987). Following the Supreme Court's decision in KSR, a flexible "teaching-suggestion-or-motivation to

13

combine" test remains "the primary guarantor against a non-statutory hindsight analysis" and focuses on evidence before the time of the invention.  Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1364-65 (Fed. Cir. 2008).

In its Rule 50(a) motion, the only basis of alleged invalidity raised by Lawson was obviousness based upon the combination of the "prior art RIMS systems disclosed in the '989 patent and the prior art TV/2 product."  Docket No. 575, at 14; see also Trial Tr. 2851:25-2852:3 (Jan. 21, 2011).  Lawson did not contend then, as it does now in its Rule 50(b) motion, that any commercially available RIMS system in combination with TV/2 was a basis for its judgment as a matter of law motion.  Thus, to the extent that Lawson now moves for judgment as a matter of law based upon the obviousness of a combination of any commercial RIMS system and TV/2, that contention will not be considered because it has been waived.  See Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1107 (Fed. Cir. 2003) (finding that pre-verdict judgment as a matter of law on anticipation was not sufficient to support a post-verdict motion on obviousness); Kinzenbaw v. Deere & Co., 741 F.2d 383, 387 (Fed. Cir. 1984) (holding that pre-verdict judgment as a matter of law on obviousness based on prior

art did not support a post-verdict motion of invalidity due to prior public knowledge or use). And, because Lawson's argument that claim 1 of the '172 patent and claims 3, 28, 26, and 29 of the '683 patent are invalid as obvious is based upon a combination of TV/2, the '989 patent, and any commercially available RIMS system, the motion for judgment as a matter of law is denied. Even if the Court were to consider the merits of Lawson's motion, it is satisfied that substantial evidence supports the jury's finding that the claims are valid.

Finally, Lawson asserts that claim 1 of the '172 patent and claim 3 of the '683 patent are invalid as indefinite, and that the claims are invalid under 35 U.S.C. § 101. The Court previously denied Lawson's motion for summary judgment on both of these grounds, and Lawson did not present any evidence at trial on either issue. In failing to present evidence on either issue, Lawson chose to rely on its right to appeal the Court's denial of its summary judgment motion. Thus, there is no judgment as a matter of law to be obtained on either issue.

For all the foregoing reasons, Lawson's renewed judgment as a matter of law with respect to the issues of infringement and invalidity is denied.

## 2. Motion for New Trial

### a. Legal Standard

Rule 59 provides that a district court may grant a new trial if a motion is made within 28 days of entry of the judgment, on all or some of the issues, after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at last in federal court." Fed. R. Civ. P. 59(a)(1)(A), (b). The district court's decision whether to grant a new trial in a patent infringement action is governed by the law of the regional circuit. See, e.g., Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1379 (Fed. Cir. 2009). In the Fourth Circuit, a new trial may be granted only if "'(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted). In contrast to Rule 50 motions for judgment as a matter of law, Fed. R. Civ. P. 59 allows the district court to weigh the evidence and consider the credibility of the witnesses. King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010).

A district court has broad latitude in ruling on the admissibility or exclusion of evidence, though errors in the admission or exclusive of evidence may be grounds for a new trial. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). However, pursuant to Fed. R. Civ. P. 61, "no error in admitting or excluding evidence . . . is ground for granting a new trial" unless the error "affect[s] a[] party's substantial rights." Fed. R. Civ. P. 61. "Thus, it is only errors that cause substantial harm to the moving party that justify a new trial, and errors that are not prejudicial do not necessitate a new trial." Bennet v. R&L Carriers Shared Servs., LLC, 744 F. Supp. 2d 494, 539 (E.D. Va. 2010). In order to make this determination, the court "need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors. This test appropriately focuses upon whether the error itself had substantial influence." Taylor v. Va. Union Univ., 193 F.3d 219, 234-35 (4th Cir. 1999) (en banc) (internal quotation marks and citations omitted).

### b. Grounds Asserted in Renewed Motion for Judgment as a Matter of Law

The same reasons which form the basis for denying the renewed motion for judgment as a matter of law apply to require denial of Lawson's motion for a new trial on those same grounds. Those reasons are insufficient to warrant a new trial.

### c. Invalidity

Second, Lawson moves for a new trial on several bases related to invalidity, including: (1) that the jury heard conflicting and confusing messages respecting the J-Con and P.O. Writer systems that unfairly prejudiced Lawson; (2) that the jury was presented with conflicting and confusing messages respecting whether the United States Patent and Trademark Office ("USPTO") considered the '989 patent during prosecution; (3) that the Court erred in excluding evidence related to the ongoing reexaminations of the patents-in-suit; and (4) that the ePlus license agreements should have been excluded as irrelevant and prejudicial.

### i. J-CON and P.O. Writer

The Court does not believe that its decision to preclude one of Lawson's invalidity theories -- that the combination of J-CON and P.O. Writer rendered the claims obvious -- after the parties had discussed the theory in

18

opening arguments and after fact witnesses allegedly had testified about the theory, caused substantial prejudice to Lawson. The decision to exclude Dr. Shamos's testimony about the theory was based on his failure to disclose, in his expert report, and Lawson's inability to provide an excuse for this failure, the detailed obviousness opinion that Lawson sought to elicit from Dr. Shamos at trial. And, ePlus was unable to cure its surprise of the inadequate expert disclosure through cross-examination. See Fed. R. Civ. P. 26(a)(2)(B)(i), 26(e)(2), 37(c)(1). Dr. Shamos's expert report and the anticipatory claim chart contained therein provided only a solitary, conclusory paragraph respecting the combination of J-CON and P.O. Writer, and failed to provide the bases for his conclusion that the combination of the two rendered the claims invalid as obvious. As the Supreme Court has remarked, "'rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 418 (2007) (citation omitted); see also Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1373 (Fed. Cir. 2008); Tr. Transcript 2348:24-2350:5 (Jan. 19, 2011). Literally, it was only on the eve

of Dr. Shamos's testimony that Lawson provided the bases for the obviousness conclusion that Dr. Shamos was to give the next day (Lawson sent to ePlus 167 slides summarizing Dr. Shamos's testimony). More than 100 slides contained claim-by-claim, element-by-element obviousness opinions that were not disclosed in his report. After attempting to work out the issues without the Court's intervention, ePlus brought the issue to the Court's attention, and after hearing argument and comparing the slides and the conclusory paragraph in the expert opinion, the Court excluded the entire theory.

The Court cannot agree with Lawson that it was substantially prejudiced by this exclusion. The exclusion of the theory was a result of Lawson's own making, and in view of the brief mention of J-CON and P.O. Writer in counsel's opening argument and the fact that Lawson did not call one fact witness to testify about P.O. Writer before Dr. Shamos, the Court finds no substantial prejudice to Lawson from the Court's decision and denies Lawson's motion for a new trial on this ground.

The Court also properly excluded Lawson's counsel's argument with respect to P.O. Writer during closing argument. The Court allowed Lawson to introduce testimony that P.O. Writer and J-CON rebut secondary considerations

of nonobviousness, but Lawson's counsel attempted to go well beyond that limit by launching into a discussion of the allegedly invalidating features of P.O. Writer, and the Court properly foreclosed this line of argument. The Court instructed the jury accordingly when it expressed confusion respecting whether J-CON and P.O. Writer were to be considered prior art for purposes of anticipation or of obviousness. Accordingly, Lawson's motion for a new trial on this ground is denied.

### ii. USPTO's Consideration of '989 Patent

After reviewing the record, the Court finds that Lawson did present evidence and argument to the jury that the USPTO had not considered the '989 patent during its prosecution of the patents-in-suit. The jury reached its own conclusion respecting validity and that conclusion is supported by the substantial evidence. Therefore the Court denies Lawson's motion for a new trial on this ground.

### iii. Exclusion of the Reexaminations

Next, Lawson argues that the Court's exclusion of the USPTO's reexaminations of the patents-in-suit as evidence in the trial is grounds for a new trial. In so doing, Lawson raises a thrice rejected position. The Court has given reasons on several occasions why such evidence was rejected. No more ink will be spilled over the topic.

Thus, for the reasons that the Court (a) denied Lawson's motion to stay the litigation pending the reexaminations, see Docket No. 198; (b) denied Lawson's motion in limine to exclude arguments or evidence inconsistent with the reexaminations, see Docket No. 362; (c) granted ePlus's motion in limine to exclude arguments or evidence relating to the reexaminations, see Docket No. 375; and (d) denied Lawson's request for a stay of the permanent injunction, see Docket No. 734, the Court denies Lawson's motion for a new trial on this ground.

### iv.   Admission of the ePlus License Agreements

Finally, Lawson asserts that the Court should grant a new trial on invalidity because the Court's admission of the license agreements that ePlus entered into with other entities that ePlus previously had sued on the patents-in-suit may have unfairly swayed the jury.  The Court rejects this argument as a ground for a new trial.  Lawson has not alleged that the Court's ruling on the admissibility of the license agreements has affected Lawson's substantial rights.  Moreover, the Court cured any potential prejudice through its contemporaneous instruction to the jury about the limited purposes for which the jury could consider the license agreements.  Furthermore, the Court refused to allow ePlus to publish the agreements to the jury during

22

trial, allowed Lawson to cross-examine ePlus's President, Mr. Farber, about the agreements, and permitted Lawson to elicit testimony respecting the alleged $12,000 valuation of the patents-in-suit.  This ground for new trial must be rejected as without merit.

### d. Infringement

Lawson also has moved for a new trial on indirect infringement.   It contends that the law on induced infringement given in the jury instruction was incorrect in view of SEB, and that ePlus asked improper and prejudicial questions on privilege issues.

### i.   Induced Infringement Standard

The same reasons which form the basis for denying the renewed motion for judgment as a matter of law on induced infringement as it relates to the Supreme Court's SEB decision apply to require denial of Lawson's motion for a new trial on this ground.

### ii.  Failure to Disclose Advice of Counsel

Lawson also argues that it is entitled to a new trial with respect to infringement because ePlus asked improper and prejudicial questions of Mr. Christopherson, Lawson's Director of Product Development, regarding whether Lawson had obtained an advice of counsel opinion on infringement. Lawson had solicited lay opinion testimony from Mr.

Christopherson to the effect that after he had learned of ePlus's lawsuit, he read the ePlus patents-in-suit and concluded that Lawson was not infringing the patents. ePlus's counsel, on redirect examination, then asked whether Lawson had obtained a legal opinion of any kind. Mr. Christopherson answered affirmatively.  When ePlus's counsel then sought to ask whether Lawson had given the opinion to ePlus during discovery, the Court shut down the line of questioning upon Lawson's objection.  Over the next few days, the Court studied authority and listened to the parties' arguments on the question of whether an accused infringer's failure to disclose an opinion of counsel is relevant to the question of indirect infringement as it relates to proof of the accused infringer's intent.  The Court ultimately agreed with Lawson's argument, striking ePlus's question of Mr. Christopherson and giving a limiting instruction to the jury.

Lawson now claims that even though the Court sided with Lawson, ePlus unfairly created an inference in the jury's mind that Lawson secured an unfavorable legal opinion and behaved improperly by failing to disclose this opinion to ePlus.

To the extent that Lawson suffered prejudice simply because ePlus's counsel asked Mr. Christopherson whether

Lawson had disclosed its opinion of counsel, the Court finds that any prejudice was cured by the following instruction to the jury:

> Something came up during the trial that I need to sort out for you. Several days ago, Mr. Christopherson testified, and there was some testimony about whether Lawson obtained an opinion of counsel of non-infringement or invalidity on the patents. I instruct you now that I have excluded that testimony. That issue is simply not pertinent to the case. It has nothing to do with the case, and I'm instructing you to disregard whatever was said about the intention or nonintention of counsel by Lawson.

Tr. Transcript 3240:9-17 (Jan. 24, 2011). The Fourth Circuit follows the presumption that the jury obeys the limiting instructions of the district court. Hinkle v. City of Clarksburg, 81 F.3d 416, 427 (4th Cir. 1996); United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994). And, the Court does not believe, contrary to Lawson's argument, that its instruction was inadequate because it was confusing as to which testimony was to be disregarded. The instruction directed the jury to exclude that testimony dealing with whether Lawson obtained an opinion of counsel related to non-infringement or invalidity. The instruction did not, as Lawson complains, instruct the jury to disregard Mr. Christopherson's lay

opinion about whether he believed Lawson was infringing the patents-in-suit.   Because the instruction was clear and unambiguous, and the jury is presumed to have followed the limiting instruction, the Court finds that Lawson did not suffer a miscarriage of justice such that a new trial should be held on infringement.   Accordingly, Lawson's motion for a new trial is denied on this ground.

### e. Cumulative Error as Grounds for a New Trial

Finally, Lawson contends that, based on the number and seriousness of the alleged errors in this case, a new trial is warranted under the cumulative error doctrine because these errors, taken together, strongly demonstrate a miscarriage of justice.   To support its position, Lawson relies on a 2003, unpublished decision of the Fourth Circuit, Kozlowski v. Hampton Sch. Bd., 77 F. App'x 133, 154-55 (4th Cir. 2003).   However, in a 2009, unpublished decision, Anthony v. Ward, 336 F. App'x 311, 322 (4th Cir. 2009), the Fourth Circuit noted that it has "yet to determine whether the cumulative error doctrine [even] applies in the civil context."   Even assuming that the doctrine would apply in the civil context, the Court finds that "'none of [Lawson's] claims warrant reversal individually,'" and therefore the Court will "'decline to employ the unusual remedy of reversing for cumulative

26

error.'"  <u>United States v. Basham</u>, 561 F.3d 302, 330 (4th Cir. 2009) (citation omitted).  Accordingly, Lawson's motion for a new trial because of cumulative error is denied.

For all the foregoing reasons, Lawson's motion for a new trial on non-infringement and invalidity is denied.

## CONCLUSION

For the reasons set forth above, Lawson's RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (Docket No. 759) and RENEWED MOTION FOR NEW TRIAL (Docket No. 761) are denied.

It is so ORDERED.

_____/s/_____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: August _11_, 2011