# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-CV-620 (REP) |
| ) | |
| v. ) | |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| Defendant. ) | |

**DECLARATION OF ALFRED C. WEAVER, PH.D. IN SUPPORT OF PLAINTIFF'S MOTION TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT OF THE COURT'S PERMANENT INJUNCTION**

I, Alfred C. Weaver, Ph.D., declare, depose and state the following:

1. I am a professor of Computer Science at the University of Virginia in Charlottesville, VA. My address is 85 Engineer's Way, P.O. Box 400740, Charlottesville, Virginia 22904-4740. I have been involved in the computer science field for over thirty-five years. I am over eighteen years of age and I would otherwise be competent to testify as to the matters set forth herein if I am called upon to do so at trial.

2. I have been retained by Goodwin Procter LLP on behalf of the Plaintiff ePlus Inc. ("ePlus") as a technical expert witness with respect to the proceedings currently before the Court in the above-captioned matter.

3. For the purposes of this Declaration, I have been asked to provide an expert technical analysis concerning whether or not Defendant's Requisition Center ("RQC") application is more than colorably different from the RSS product which RQC was designed to

replace.

## II. BACKGROUND, EDUCATION AND EXPERIENCE

4. I was qualified as an expert in this case by the Court during trial, without objection from Defendant.

5. My fields of expertise include computer science, computer systems, computer network architecture, and Internet and electronic commerce, among others.

6. A detailed *curriculum vitae* showing more of my credentials in these fields is attached as Exhibit 1.

## III. MATERIALS REVIEWED

7. In performing the analysis that is the subject of this Declaration, I have reviewed the following materials:

   a) the '683 Patent;

   b) the '172 Patent;

   c) my Initial Expert Report submitted in this matter and the supporting documents and testimony cited therein;

   d) my testimony given in the trial in this matter;

   e) the Court's *Markman* Order;

   f) the Court's Permanent Injunction Order and Memorandum Opinion concerning the same issued on May 23, 2011;

   g) the Court's Final Judgment against Defendant issued on May 25, 2011;

   h) documents produced by Defendant relating to the RQC application bearing production numbers RQC0001-RQC000743 (including Requisition Center Installation Guide, Requisition Center Release Notes, Requisition Center User Guide and a presentation and brochure concerning Requisition Center, among other documents);

   i) a red-lined version of Lawson's Requisition Center User Guide (RQC000384-433) comparing the text of that document to the Requisition Self-Service User Guide (PX-98);

   j) a demonstration of the RQC system provided by Dale Christopherson at Lawson's corporate headquarters on August 22, 2011 and a DVD recording of the same; and

      k)      publicly-available materials concerning the RQC product available at www.lawson.com and elsewhere on the Internet.

## IV.    PERSON OF ORDINARY SKILL IN THE ART

8.    I testified concerning my opinion on a person of ordinary skill in the art at trial and Defendant stipulated to that opinion. Trial Tr. 507:16-509:1.

## V.    UNDERSTANDING OF THE LAW TO BE APPLIED TO DETERMINE CONTEMPT OF THIS COURT'S INJUNCTION

9.    In formulating my opinions and conclusions set forth in this Declaration, I have been provided with an understanding of the prevailing principles that govern the issue of contempt of an injunction. As a result, I am informed and understand that an adjudicated infringer may be held in contempt of a district court's injunction order if its allegedly modified product is not more than colorably different from its original product that was found to be infringing and the allegedly modified product actually infringes.

10.    Moreover, I am also informed and understand that only where any differences between the old and new elements are significant can the allegedly modified product be deemed more than colorably different from the adjudged infringing one.

## VI.    DEFENDANT'S INFRINGING SYSTEMS

11.    I understand that the jury found that the following Lawson systems infringe one or more claims of the *e*Plus patents and the Court entered judgment against Defendant with respect to such findings:

      a)      Configuration No. 2 which includes the Core S3 Procurement System (comprising Lawson System Foundation ("LSF")/Process Flow in combination with Inventory Control, Requisition and Purchase Order Modules) and Requisition Self-Service ("RSS") infringes claim 1 of the '172 Patent;

      b)      Configuration No. 3 which includes the Core S3 Procurement System, RSS and Punchout infringes claims 3, 26, 28 and 29 of the '683 Patent and claim 1 of the '172 Patent; and

      c)      Configuration No. 5 which includes the Core S3 Procurement System in

3

combination with the RSS, Punchout and Electronic Data Interchange ("EDI") infringes claims 3, 26, 28 and 29 of the '683 Patent and claim 1 of the '172 Patent.[1]

## VII. THE ALLEGED "NEW" AND "MODIFIED" FEATURES OF THE LAWSON SYSTEMS

12. Based upon my review of the documentation produced, Defendant has made no changes to the Core S3 Procurement System (LSF/Process Flow, Inventory Control, Requisition and Purchase Order Modules) portion of the infringing systems of Configurations 2, 3 and 5. Nor has Defendant made any changes to the EDI module of infringing System Configuration No. 5. Further, Defendant has not made any changes to any of the system databases of System Configurations 2, 3 and 5 (*e.g.*, Requisitions database). *See, e.g.*, Lawson WebEx with Customers Concerning RQC (RQC 743) (Dean Hager advising customers that "there are no database changes with the product. None at all. There are no upgrades to any other component"; "No database changes, no required changes to any other piece of software"); Introducing Lawson Requisition Center Webinar, Questions and Answers (RQC 638-655) at RQC 647 ("Q: Are there any backend changes or effect on RQ10?  A:  There are no changes or effect on RQ10."); Introducing Lawson Requisition Center (RQC 656-690) at RQC 665 (representing that there are "no database charges" and "no required upgrades in software or environment").

13. According to Defendant's documentation, the only component of the infringing systems purportedly modified was the RSS component which has been re-named as "Requisition Center." The "replacement" RQC product has been designed to provide "100% of the functionality" required by Defendant's clients. Defendant represents that users "will not experience functional degradation in the Requisition Center product." *See, e.g.*, Video Message

---

[1] In addition, I understand that, based upon the parties' stipulation concerning the M3 e-procurement product, that system is also subject to a judgment of infringement with respect to claims 3, 26, 28 and 29 of the '683 Patent and claim 1 of the '172 Patent. This system is not the subject of this Declaration and, accordingly, is not addressed.

4

From Dean Hager on "Requisition Center" (RQC 742) (discussing alleged "replacement" RQC product); Lawson WebEx With Customers Concerning RQC (RQC 743) (Dean Hager advising customers that there's "going to be no degradation from RSS to Requisition Center").

14. Defendant repeatedly emphasized in its documentation relating to RQC that the alleged "changes" made to RSS were minimal and would not degrade system functionality. Defendant further represented to its clients that the process for downloading and installing RQC "is fast and easy to do with minimal impact on your organization," the download can be accomplished by a "simple 20 minute process" and implementation "can be completed in anywhere from 2 days to 2 weeks." *See* Introducing Lawson Requisition Center Webinar, Questions and Answers (RQC 638-655) at RQC 638; Introducing Lawson Requisition Center (RQC 656-690) at RQC 661, RQC 662; Important Notice: Recommended Patch Available for Procurement Punchout Customers (RQC 730) (indicating that the "Requisition Center download takes approximately 20-30 minutes to complete").

15. Defendant indicates that it "started with the Requisitions Self-Service code and made some changes to create" RQC. *See* Lawson Web-Ex With Customers (RQC 743) (Keith Lohkamp presentation of Product Overview).

16. The purported "changes" made to RSS to create RQC, as represented by Defendant, are the following:

        a) RQC "immediately creates and saves requisition lines as items are selected;"

        b) The user interface screen was changed to relabel the "My Cart" section of the screen as "Requisition Lines;"

        c) The Checkout button on the user interface screen was relabeled as "Release;"

        d) What was previously referred to as an "Order" has been re-named as a "Requisition;"

5

      e)    RQC places "items ordered through punchout ... on a separate requisition from items from the item master;"

      f)    When using Punchout, Defendant has placed a "disclaimer regarding use of the vendor's site." In addition, Defendant removed the Lawson logo that previously appeared when a user punched out to a Lawson Punchout Partner site;

      g)    RQC "supports drill down within Categories to the Class level, not the Commodity level."

*See* Lawson Requisition Center What's New and Different (RQC 709-721).

17. For the reasons discussed below, none of these purported "changes" renders RQC even colorably different from RSS. In my opinion, these "changes" are purely aesthetic and cosmetic. They do not change the underlying functionality that supports my testimony concerning the *e*Plus patent claims. In my opinion, the system configurations are not colorably different, notwithstanding the purported changes made to RSS to "create" RQC.

## VIII. THE PURPORTED CHANGES DO NOT RENDER THE SYSTEMS COLORABLY DIFFERENT

### A. The Purported "Changes" Made to RSS With Respect to Creating Requisitions Are Cosmetic And Unrelated to the Features That Established Infringement

18. For the following reasons, the purported "changes" made to RSS with respect to the process of creating requisitions are purely cosmetic and are unrelated to the features that established infringement of claim 1 of the '172 Patent.

19. First, there is no change to the process of assigning an order number. The order number is assigned when the user clicks "NEW" or otherwise starts a shopping session. The only difference is superficial and cosmetic. Defendant simply changed the window to call the "order number" a "requisition number," but a number is assigned when using RQC in the same manner as with the prior version of RSS.

20. Further, although Defendant modified the RSS user interface screens to "re-label"

6

the "My Cart" portion of the screen as "Requisition Lines," (*see* comparison of user interface screens, Exhibits 2 and 3), the data is added to the "Requisition Lines" using exactly the same process as was previously used to add items to the Cart (*i.e.*, by clicking the "ADD" buttons next to an item in a search results listing). Indeed, in many instances in the relevant documentation, Defendant still refers to the "Requisition Lines" portion of the user interface as the Shopping Cart. *See, e.g.*, Lawson Procurement Punchout and PO dispatcher Installation and Administration Guide (RQC 1-46) at RQC 14 (indicating that for items selected at a Lawson Punchout Partner site "cached data is retrieved, parsed into Lawson's internal XML format and *placed into Lawson Requisition Center shopping cart* ready for further processing."); Requisition Center Training Course (RQC 741) (indicating that "*once items are moved to the cart* you can modify the lines.").

21.     Moreover, the documentation and tests on the RQC demonstration system indicate that the system's order list functionality remains unchanged. Although Defendant represents that this is "direct to requisition" functionality, that is a misnomer. The so-called "Requisition Lines" serve the same function as the Cart. There is no change in functionality.

22.     The user still "search[es] the catalog for items in your item master. ... You can also search based on categories, which can use the UNSPSC code categories…These codes provide designated categories for items. A UNSPSC code has four levels: segment, family, class and commodity." Requisition Center Training Course (RQC 741) (also indicating that "Shopping can include one of the following: searching for items through your internal catalog… shopping through UNSPSC categories, or using a punchout feature (to the vendor catalog) to find items"); Lawson Requisition Center Overview (RQC 695-706) at RQC 699, RQC 702.

23.     As you select an item from the results of such searches, it is added to the

"Requisition Lines" list (previously called My Cart). In my opinion, the Requisition Lines list is the order list of the *e*Plus patent claims. As with the Cart of RSS, the user can continue to modify the requisition-in-progress by adding items, deleting items and making other changes, such as to the quantity of an item. *See* Lawson Requisition Center User Guide (RQC 384-433) at RQC 407. You can "clear" items from this order list by clicking the "clear" button. *Id.* You can click the trash can button next to an item to remove that item from the order list. *Id.* You can also modify the requisition header. *Id.* The requisition is not finalized until the "Release" button (previously labeled as the "Checkout" button) is clicked. Clicking the "Release" button "releases the requisition so that it can move to any remaining processing stages." *Id. See also* Lawson Requisition Center Overview video (RQC 740) at 3:45-3:59 minutes ("Once they've found everything they need and are ready to go ahead and submit their requisition, end user hits a release and they'll get confirmation that their requisition has been submitted"); Introducing Lawson Requisition Center Webinar, Questions and Answers (RQC 638-655) at 647 ("Q: Can you delete an unreleased req on RQC? A: Yes, by deleting all the lines, the Req header will then be deleted."; "Q: Is there an RQ line change feature to address changes to specific lines AFTER they've been added? A: Within Requisition Center, a requester can select a specific line on the requisition and modify it after it has been added."); Lawson Requisition Center Overview (RQC 695-708) at RQC 703 (showing message generated after clicking "Release" button indicating that "Requisition has been successfully submitted) and at RQC 704-705 (indicating that you can inquire on the status of requisitions and various status messages will be displayed such as "Unreleased," "Processed," "Needs Approval" and "Rejected."); Requisition Center Training Course (RQC 741) (Instructing that "***The release button saves items to the database, empties the cart, and submits the requisition for approval, if approvals are needed***" and "If you want to

8

make a change to the line, click the item, go to the desired field, type in your change, and then click change.  You can then release the requisition…Once you release the requisition, you see the message below: Requisition has been successfully submitted," and "***Once items are moved to the cart***, you can modify the lines.  If you make a change to a line, you must click change.  Then click either save draft or check out" and "You can copy or modify the requisition if it is in an unreleased status.").

24.     In other words, just as with RSS, the order list (either the Cart or Requisition Lines list) does not become a final requisition until the "Release" button (previously labeled "Checkout") is clicked.  The requisition can then proceed to further processing (*e.g.*, conversion to one or more purchase orders).  This is the same functionality as existed in the systems found to be infringing, only the screen and button labels have changed nomenclature – that is all.  This is to be expected since there have been no changes made to the Requisitions or Purchase Order modules, or requisition database, by Defendant's own admission.

25.     I tested this functionality using the RQC demonstration system made available at Lawson's headquarters.  I verified that items can continue to be added to the Requisition Lines list (*e.g.*, the order list) and that items can be deleted from the order list up until the Release button is clicked.  Moreover, I also confirmed that the requisition header can be modified up until the Release button is clicked.  Thus, the Requisition Lines list clearly satisfies the order list element of claim 1 of the '172 Patent.  The Requisition Lines list does not constitute the final requisition.  The final requisition is the final list of requisition line items together with the final requisition header submitted at "Release."  Up until "Release," both portions of the requisition-in-process can be modified.  The final requisition is the final data saved to the  requisition database upon "Release."  Defendant's own documentation confirms that only this final

9

requisition can be further processed to generate one or more purchase orders. This functionality has not changed from that present in RSS.

26. Defendant emphasizes the fact that in RQC when an item is added to the Requisition Lines list (*e.g.*, order list), the line item is automatically saved and the user no longer has to click a "SAVE" button as was previously the case with respect to RSS. However, that functionality is of no consequence to the issue of whether or not the Requisition Lines list satisfies the order list element of claim 1 of the '172 Patent. Again, even though each line item is automatically "saved," that item can be deleted or modified from the Requisition Lines list until such time as the "Release" button is clicked.

### B. The Purported Changes Made To RSS For Use With Punchout Are Purely Cosmetic And Unrelated To Features That Establish Infringement

27. As set forth above, Defendant has inserted a "disclaimer" screen message which appears when an RQC user selects to punchout to a particular Lawson Punchout Partner site. This disclaimer message (*see* Exhibit 4) states: "You are now leaving your companies' Requisition Center website. You are about to connect directly to and access: [insert name of Lawson Punchout Partner]. We do not maintain content on the site or control policies for the site. Before providing personal information, or using or relying on any content at the site (including description, status or availability of products), you should always check site policies." Although this "disclaimer" message appears when a punchout catalog is selected, there is a button to click so that the "disclaimer" will no longer display. Indeed, this was demonstrated on the RQC demonstration system, as shown in Exhibit 5.

28. Notwithstanding this self-serving "disclaimer," the Punchout code used to connect the Lawson system to the Lawson Punchout Partner site has not been changed at all, as Defendant itself has acknowledged. Moreover, items from a punchout shopping session continue

10

to be returned to the Lawson system's order list (*e.g.*, Requisition Lines list), just as with the infringing systems having RSS. *See* Lawson Procurement Punchout and PO Dispatcher Installation and Administration Guide (RQC 1-46) at RQC 1 ("When users have filled their shopping carts (virtually speaking) and checked out from the vendor web site, the chosen items and their cost is returned to the Lawson server where a requisition is created using the Lawson Requisition Center application. From this point forward, your existing procurement processes will handle the Punchout requisition just as any other requisition is being handled at your organization. A purchase order can be created from the requisition."), and at RQC 8 ("The user can select items to order from the vendor's online catalog and add them to a Lawson requisition after checking out from the vendor's web site.").

29. Defendant's technical documentation further indicates that all of the steps of the Punchout process that existed when the Punchout application was used with RSS remain unchanged when Punchout is used with RQC. In fact, the steps of the punchout process shown in the flow chart I discussed at trial shown in PX-211 (Lawson Procurement Punchout Installation Guide at L0234790) remain unchanged. *See* Lawson Procurement Punchout and PO Dispatcher Installation and Administration Guide (RQC 1-46) at RQC 12 (showing 8-step punchout process including PunchOut Setup Request, PunchOut Setup Response and other steps). *See also id.* at RQC 20 (indicating that the settings for "remote PunchOut Server," "remote Punchout-Servlet," "**SaveCart**" and "**GetCart**" have not changed).

30. It is clear a user remains connected to the Lawson system at all times when engaging in a punchout shopping session. I observed a demonstration of this on the RQC demonstration system at Lawson's headquarters.

31. For example, as shown in Exhibit 6, the URL shown on the screen begins

11

"https://lsfserver.corpnet.lawson.com." This information indicates that the system is making a secure connection from the Lawson System Foundation server to the Lawson Punchout Partner catalog site. As with the adjudicated infringing systems, the user remains connected at all times to the Lawson system when engaging in a punchout shopping session. Thus, the "disclaimer" message is meaningless because, notwithstanding the representation that "you are now leaving your companies' Requisition Center website," the system nevertheless remains connected at all times to the Lawson System Foundation server. It is also irrelevant that the Lawson logo was removed from the Lawson Punchout Partner web pages. The systems' punchout functionality remains unchanged. This simply highlights the purely cosmetic aspect to these changes.

32. In summary, the "disclaimer" message screen is a purely superficial change. The underlying infringing functionality of the punchout process has not changed.

### C. The Allegedly Modified System Continues To Have The Capability of Generating One or More Purchase Orders From a Single Requisition

33. The fact that Defendant has modified the prior version of RSS with the RQC patch such that Punchout items are placed on a separate requisition from the items selected by searching the vendor catalogs stored in the item master is of no import. As Defendant itself admits, there have been no code changes made to the Requisition and Purchase Order modules of the infringing systems. Thus, there is nothing to prevent a user from being able to process a requisition "to generate one or more purchase orders for the selected matching items" in a requisition thereby satisfying the requirements of claims 3, 26, 28 and 29 of the '683 Patent. And, the systems maintain the capability to generate multiple purchase orders from a requisition as required by claim 1 of the '172 Patent. The demonstrations conducted using the RQC

12

demonstration system verified this capability.[2] Defendant's documents also confirm that the systems maintain this infringing capability. *See, e.g.,* Requisition Center and Procurement Punchout (RQC 691-694) at RQC 692 (confirming that "With Lawson Requisition Center, user can: Create a single requisition for stock, nonstock and special-order items, as well as services, Lawson Procurement can then automatically generate multiple purchase orders from that requisition").

34. Attached as Exhibits 7 and 8 are screenshots from the demonstration conducted on August 21, 2011 using the RQC demonstration system at Lawson headquarters verifying that the system can process a requisition to generate one or more purchase orders for selected matching items on the requisition. As shown in the report, the system generated two purchase orders from Requisition No. 902. One purchase order was generated for a Transpore Surgical Tape item (Vendor Item number 1007) and a Sterile Surgical Glove item (Vendor Item number 1036) to Baxter Healthcare. A second purchase order was generated for a Dell Inspiron 8000 computer (Vendor Item number 6020) to Diablo.

### D. Systems With RQC Application Continue To Have Capability to Convert Data Relating To A Selected Matching Item and an Associated Source to an Item and a Different Source

35. Defendant has modified the prior version of RSS with the RQC patch to enable the Categories search functionality to drill down through the UNSPSC commodity code hierarchy tree to the third level, the Class level, rather than to the fourth level, the Commodity level. This modification, in my opinion, is not a colorable difference from the prior version of

---

[2] I note that the purchase order generation capability for the RQC demonstration system was *disabled* with respect to requisitions for items selected from Punchout shopping sessions and Mr. Christopherson, Defendant's Director of Development for Supply Chain products, who conducted the RQC demonstration, did not know how to rectify the situation. However, we were able to generate multiple purchase orders from a single requisition with respect to items selected from conducting searches of the catalogs stored in the item master.

13

the RSS application. Disabling the system's capability to drill down to the commodity level does not disable the system's capability to "convert[] data relating to a selected matching item and an associated source to data relating to an item and a different source" thereby satisfying the requirements of claims 3, 28 and 29 of the '683 Patent, as defined by the Court.

      36.    I am informed that *e*Plus counsel repeatedly requested that Defendant's counsel have the RQC demonstration system set up so that it had access to the same demonstration data as was used with respect to the demonstration system used at trial (PX-402). Unfortunately, that did not happen. The RQC demonstration system presented for my review on August 21 at Lawson's headquarters in St. Paul, Minnesota had inadequate item data to demonstrate the full UNSPSC cross-referencing capabilities of the system. For each of the branches in the Categories hierarchy tree, the only items present were all available from the same vendor. In other words, no matter what item was selected when using the Categories search, the only other items available in that same branch of the category tree were offered by the same vendor. Although we were present at Lawson's corporate headquarters when conducting the demonstration, it was represented that there were no Lawson personnel available who could load additional item data into the database or add UNSPSC codes to the items already stored in the item master. Nevertheless, the demonstrations that we were able to conduct confirmed that a user can convert a selected matching requisition item (*e.g.*, surgical tape) to a different surgical tape item using the UNSPSC cross-referencing capability of the system. If Defendant had configured the system to have had access to the same demonstration data as was used with respect to the demonstration system used at trial, we would have been able to more clearly demonstrate the system's capabilities. If permitted, I would request that the additional item data from the demonstration system used at trial be added to the RQC demonstration system for future inspections and

14

demonstrations.

37. As indicated in Defendant's documentation concerning the RQC application, and as I verified in my review of the RQC demonstration system, the system maintains the capability to associate UNSPSC codes with each item in the item master. *See, e.g.,* Inventory Control User Guide (RQC 47-347) at RQC 92 (indicating that "Lawson has incorporated the usage of UNSPSC codes which is a standardized way of categorizing items that people use in commerce.... The codes have four levels: segment, family, class, and commodity. These levels create an item hierarchy and allows the user to search for each level for items in the Item Master file); and at RQC 109-110 (explaining how to load UNSPSC codes and attach them to item records).[3] *See also* Lawson Requisition Center User Guide (RQC 384-433) at RQC 402 ("The Categories task is designed to use UNSPSC (United Nations Standard Products and Service Codes), NOTE Categories use a hierarchical structure called the segment tree .... After you define categories, you can click a category top level to open the segment tree to the product, family, and class. You select item at any of the levels."), and at RQC 403 (instructing users on where to obtain UNSPSC codes for download and the programs in the Inventory Control module to use to attach UNSPSC codes to the items in the Item Master).

38. Thus, just as with the system configurations found to be infringing, systems which include RQC continue to have programs in the Inventory Control module to map each item data record in the Item Master to a UNSPSC code. Similarly, categories in the Categories hierarchy tree are mapped to UNSPSC codes. Therefore, because each item data record has been associated with (or cross-referenced to) a corresponding commodity classification code in the

---

[3] Indeed, although Defendant has disabled the Commodity level of the Categories search functionality, all four UNSPSC code segments continue to be loaded into the Item Master for the items. *Id*. I verified this using the RQC demonstration system.

15

Item Master and, similarly, because each product category in the category hierarchy tree has also been associated with (or cross-referenced to) a corresponding commodity classification code, a user navigating down the product category hierarchy can click on a branch of that category hierarchy tree and can find all items that have been cross-referenced to the same commodity classification code as associated with that branch of the category hierarchy tree. I confirmed this capability using the demonstration system.

39. The Court has construed the claim term "converting data relating to a selected matching item and an associated source to an item and a different source," as recited in claim 28 (and as required in dependent claim 29), as "substituting data relating to a selected matching item and an associated source to data relating to an item and a different source." The systems having the RQC application clearly satisfy this requirement.

40. The systems having the RQC application also satisfy the Court's construction for the structure corresponding to the "means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source," as recited in claim 3 of the '683 Patent. The structures employed in the systems literally constitute "one or more cross-reference tables or files identifying cross-referenced items" or "one or more codes corresponding to cross-referenced items" and such structures are used to perform the function of converting data relating to a selected matching item and an associated source to data relating to an item and a different source. Thus, in my opinion, the systems having the RQC application are not colorably different from the systems found to infringe claims 3, 28 and 29 of the '683 Patent.[4]

---

[4] Nor is it relevant to my analysis of these claims that items selected from Punchout shopping sessions cannot be placed in the same requisition as items found in searching the vendor catalogs stored in the Item Master. As I demonstrated at trial, a user of the infringing systems can

16

## IX.   CONCLUSION

41.   For the reasons set forth above, the modifications made to RSS to arrive at the RQC application are no more than aesthetic or cosmetic modifications.  They are not substantive modifications.  They are superficial.

42.   This declaration is based on information currently available to me.  I reserve the right to continue my investigation and analysis, which may include a review of documents and information not yet produced, as well as testimony from depositions that have not yet occurred or for which transcripts are not yet available.  I further reserve the right to expand or otherwise modify my analysis as my investigation continues, and to supplement my analysis in response to any additional information that becomes available to me, to any matters raised by Defendant, or to any opinions or conclusions presented by Defendant's expert.

---

conduct searches of the vendor catalogs in the Item Master using the Categories search functionality and can place two different items offered by two different vendors into a single requisition.  As shown in my demonstration at trial, the system then processes the requisition to generate one or more purchase orders as required by the claims.  *See* Trial Tr. 634:7-653:3 (demonstrating "converting" functionality of systems using Categories search); PX-376; PX-374.  In the case of the demonstration of PX-376 and PX-374, the system processed a two line item requisition to generate two purchase orders to two different vendors:  one purchase order was directed to Baxter Healthcare for surgical gloves and a second purchase order was directed to Diablo for a computer.  This functionality remains in the systems that include RQC as shown above.

17

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed on this 5th day of September, 2011 at Charlottesville, Virginia.

_____
Alfred C. Weaver, Ph.D.