# EXHIBIT 1

## Page 258

```
 1         IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
 2                  RICHMOND DIVISION
 3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                       :
 4    ePLUS, INC.,                     :
                                       :
 5             Plaintiff,              :
          v.                           :  Civil Action
 6                                     :  No. 3:09CV620
      LAWSON SOFTWARE, INC.,           :
 7                                     :  January 5, 2011
               Defendant.              :
 8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:
 9
10
11         COMPLETE TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE ROBERT E. PAYNE
12       UNITED STATES DISTRICT JUDGE, AND A JURY
13
14
15    APPEARANCES:
16    Scott L. Robertson, Esq.
      Jennifer A. Albert, Esq.
17    Michael T. Strapp, Esq.
      David M. Young, Esq.
18    GOODWIN PROCTOR
      901 New York Avenue, NW
19    Washington, D.C.  20001
20    Craig T. Merritt, Esq.
      CHRISTIAN & BARTON
21    909 E. Main Street, Suite 1200
      Richmond, VA  23219-3095
22
           Counsel for the plaintiff ePlus
23
24
              DIANE J. DAFFRON, RPR
25            OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT
```

## Page 259

```
 1    APPEARANCES:  (Continuing)
 2    Daniel W. McDonald, Esq.
      Kirstin L. Stoll-DeBell, Esq.
 3    William D. Schultz, Esq.
      MERCHANT & GOULD
 4    3200 IDS Center
      80 South Eighth Street
 5    Minneapolis, MN  55402-2215
 6    Dabney J. Carr, IV, Esq.
      TROUTMAN SANDERS
 7    Troutman Sanders Building
      1001 Haxall Point
 8    P.O. Box 1122
      Richmond, VA  23218-1122
 9
         Counsel for the defendant Lawson Software.
```

## Page 260

```
 1         (The proceedings in this matter commenced at
 2    9:30 a.m.)
 3         THE CLERK:  Civil Action No. 3:09CV00620,
 4    ePlus, Incorporated v. Lawson Software, Incorporated.
 5    Mr. Scott L. Robertson, Mr. Craig T. Merritt,
 6    Ms. Jennifer Albert, Mr. Michael T. Strapp, and
 7    Mr. David Young represent the plaintiff.
 8         Mr. Daniel W. McDonald, Mr. Dabney J. Carr,
 9    IV, Ms. Kirstin Stoll-DeBell, and Mr. William D.
10    Schultz represent the department.
11         Are counsel ready to proceed?
12         MR. ROBERTSON:  Yes, Your Honor.
13         MR. McDONALD:  Yes, Your Honor.
14         THE COURT:  All right.  Good morning, ladies
15    and gentlemen.
16         THE JURY:  Good morning.
17         THE COURT:  All right, Mr. Robertson, you may
18    resume your examination of the witness.
19         MR. ROBERTSON:  Thank you, Your Honor.
20         THE COURT:  And I remind you, sir, you're
21    under the same oath which you took yesterday.
22         THE WITNESS:  Yes, sir.
23    BY MR. ROBERTSON:  (Continuing)
24    Q    MR. Momyer, we spent a good deal of time yesterday
25    discussing this RIMS system which you were named
```

## Page 261

```
 1    inventor along with Mr. Johnson.  Do you recall that?
 2    A    Yes, I do.
 3    Q    I'd like to move on now to this electronic
 4    sourcing system and method, the inventions that are
 5    subject of the patents that are at issue here if we
 6    could.  All right?
 7    A    Okay.
 8    Q    Tab 1 in your witness notebook, I believe it's
 9    Plaintiff's Exhibit No. 1, if you could go to column
10    1.
11         THE COURT:  That's also in your small book
12    there if you need to.
13    Q    And tab 2.  Thank you.
14         So we're on column 1 now of the '683 patent,
15    Exhibit No. 1.  Now, suggestion was made yesterday
16    that the Patent Office was unaware of the RIMS patent.
17    Did you disclose the RIMS patent to the Patent Office?
18    A    Yes, I believe so.
19         MR. McDONALD:  Objection, Your Honor.  This
20    is going to the validity issue.  Again, I thought we
21    were going to stick with infringement.
22         THE COURT:  Isn't it?
23         MR. ROBERTSON:  No, Your Honor.
24         THE COURT:  Why does it have to do with
25    infringement?
```

Weaver - Direct                                          506

1  Q  That is an important aspect of the invention in your view?
2  A  Yes, it is.
3  Q  Dr. Weaver, in determining and preparing your expert
4  reports in this case, and in preparing the opinions that you're
5  going to be offering, did you consider what a person of
6  ordinary skill in the art would be in the subject matter of
7  these patents?
8  A  Yes, I did.
9  Q  Why did you do that?
10 A  Well, it's required that the patents be seen from the lens
11 of this hypothetical person of ordinary skill in the art.
12 That's a person who can read and understand the patents and
13 implement whatever is there.
14 Q  Now, this person of ordinary skill in the art from which
15 we have to view these patents at issue and the claims that
16 we're going to be talking about, is this a real person or a
17 hypothetical construct?
18 A  It's a hypothetical construct.
19 Q  And when you look at and try to determine who this person
20 of ordinary skill in the art would be, what time frame were you
21 looking at?
22 A  Well, that has to be -- in the case of these patents, that
23 would have to be 1993 to 1994, during the period of the
24 invention.
25 Q  And is that when the patents were conceived and then

Weaver - Direct                                          507

1  reduced to practice?
2  A  Correct.
3  Q  And you are familiar that the filing date of this patent,
4  these patents has what's called a priority date back to 1994?
5  A  Yes.
6  Q  Can you tell the jury what you understand that term to
7  mean, a priority date?
8  A  That means that the protection of the patents that we'll
9  talk about later, what the claims mean, goes back to that date,
10 the filing date.
11 Q  So in undertaking your study of these patents to determine
12 who this hypothetical person of ordinary skill in the art would
13 be for purposes of viewing the context, the historical context
14 where these patents were, did you come to any conclusions?
15 A  I did.
16 Q  And can you tell us what your opinion is as to who this
17 hypothetical person of ordinary skill in the art would be for
18 these ePlus patents?
19 A  So based on my experience, this person would be a college
20 graduate with a degree in computer science or something
21 related, like electrical engineering, and would have a year or
22 two of practical experience with writing software and
23 understanding the flow of information that is necessary for the
24 purchase of goods and services.
25 Q  And did you apply that person to the opinions you're going

Weaver - Direct                                          508

1  to be offering in this case both on the issue of infringement
2  and on the issue of validity?
3  A  Yes, I did.
4  Q  Did you have an opportunity to review who the hypothetical
5  person of ordinary skill in the art would be under Lawson's
6  expert's perspective?
7  A  Yes, and it's similar.
8     MR. ROBERTSON:  Mr. McDonald, do you want to agree on
9  that if we can at this point?
10    MR. McDONALD:  I thought we already did.
11    MR. ROBERTSON:  All right.
12    THE COURT:  I thought you stipulated that, haven't
13 you?
14    The person of ordinary skill in the art, ladies and
15 gentlemen, is something you'll hear from these experts, and
16 it's been explained what it is, and there'll be instructions
17 for you later, but that person is a person, the parties
18 agree -- excuse me -- who is a college graduate with a degree
19 in computer science or electrical engineering or like studies
20 with a year or so of experience writing software and
21 understanding -- and who understands the procurement process,
22 electronic procurement process; is that right, counsel?
23    MS. STOLL-DeBELL:  I think it's close enough, Your
24 Honor.
25    THE COURT:  Good enough for government work.

Weaver - Direct                                          509

1     MS. STOLL-DeBELL:  I think so.
2  Q  Let me ask you this:  Are you familiar with that person of
3  that level of skill and knowledge during the time period we're
4  discussing?
5  A  Yes.  I was teaching people like that.
6  Q  In the 1993 time frame?
7  A  Right, 1993, 1994, yes.
8  Q  Did you work on any projects during that period for any
9  companies in which the subject, type of subject matter of this
10 might involve persons who had similar experience and education?
11 A  Right.  So I mentioned this research project.  There was
12 this company call Epcom that wanted to build an electronic
13 distributorship, and so they came to my research group, and the
14 person I hired to work on this was two years out of the
15 computer science bachelor's degree, and she and I worked on the
16 design of this system whereby there was an electronic catalog,
17 and a consumer using the internet could look at the catalog and
18 could order from it and kind of a rudimentary inventory
19 management.
20 Q  Why don't we go to Plaintiff's Exhibit Number 1.
21    THE COURT:  Are you going to get into infringement
22 opinions now?
23    MR. ROBERTSON:  I'm going to get into a little bit
24 more about high level overview, and then I'm going to start
25 looking at specific claims, Your Honor, within a few pages.

2011.01.05 Trial Transcript Day 2  1/5/2011  2:53:00 PM

514

514

1    (Court adjourned.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### 515

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
 2                   RICHMOND DIVISION
 3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                       :
 4    ePLUS, INC.,                     :
                                       :
 5           Plaintiff,                :
      v.                    : Civil Action
 6                          : No. 3:09CV620
      LAWSON SOFTWARE, INC.,            :
 7                          : January 6, 2011
             Defendant.    :
 8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:
 9
10
11        COMPLETE TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE ROBERT E. PAYNE
12      UNITED STATES DISTRICT JUDGE, AND A JURY
13
14
15    APPEARANCES:
16    Scott L. Robertson, Esq.
      Jennifer A. Albert, Esq.
17    Michael T. Strapp, Esq.
      David M. Young, Esq.
18    GOODWIN PROCTOR
      901 New York Avenue, NW
19    Washington, D.C.  20001
20    Craig T. Merritt, Esq.
      CHRISTIAN & BARTON
21    909 E. Main Street, Suite 1200
      Richmond, VA  23219-3095
22
           Counsel for the plaintiff ePlus
23
24
              DIANE J. DAFFRON, RPR
25            OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT
```

### 516

```
 1    APPEARANCES:  (Continuing)
 2    Daniel W. McDonald, Esq.
      Kirstin L. Stoll-DeBell, Esq.
 3    William D. Schultz, Esq.
      MERCHANT & GOULD
 4    3200 IDS Center
      80 South Eighth Street
 5    Minneapolis, MN  55402-2215
 6    Dabney J. Carr, IV, Esq.
      TROUTMAN SANDERS
 7    Troutman Sanders Building
      1001 Haxall Point
 8    P.O. Box 1122
      Richmond, VA  23218-1122
 9
        Counsel for the defendant Lawson Software.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

### 517

```
 1        (The proceedings in this matter commenced at
 2    9:20 a.m.)
 3        THE CLERK:  Civil Action No. 3:09CV00620,
 4    ePlus, Incorporated v. Lawson Software, Incorporated.
 5    Mr. Scott L. Robertson, Mr. Craig T. Merritt,
 6    Ms. Jennifer A. Albert, Mr. Michael T. Strapp, and Mr.
 7    David M. Young represent the plaintiff.
 8        Mr. Daniel W. McDaniel, Mr. Dabney J. Carr,
 9    IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D.
10    Schultz represent the defendant.
11        Are counsel ready to proceed?
12        MR. ROBERTSON:  Yes, Your Honor.
13        MR. McDONALD:  Yes, Your Honor.
14        THE COURT:  All right.  Thank you very much.
15        I apologize for keeping you-all waiting this
16    morning.  I had a mechanical malfunction that I needed
17    to attend to, and I'm not very mechanically oriented.
18        All right, Mr. Robertson.
19        Dr. Weaver, I remind you you're under the
20    same oath which you took yesterday.
21        THE WITNESS:  Yes, Your Honor.
22    BY MR. ROBERTSON:  (Continuing)
23    Q   Good morning, Dr. Weaver.
24    A   Good morning.
25    Q   If we could have Plaintiff's Exhibit No. 1 back up
```

### 518

```
 1    on the screen again, the '683 patent, the cover page
 2    here.
 3        Dr. Weaver, the jurors have seen this exhibit now
 4    several times and it's in their jury notebooks.  This
 5    is at tab 2.  Can you just tell us what is the title
 6    of the patent?
 7    A   Electronic Sourcing System and Method.
 8    Q   Has the Court defined the term "electronic
 9    sourcing system"?
10    A   Yes, it has.
11    Q   What's your understanding as to what that
12    construction is?
13    A   In the glossary of claim terms, the "electronic
14    sourcing system" has been defined by the Court to be
15    an electronic system for use by a prospective buyer to
16    locate and find items to purchase from sources,
17    suppliers or vendors.
18    Q   What is your understanding of what a source is,
19    sir?
20    A   A source would be a vendor or a manufacturer or a
21    distributor.
22    Q   In the Court's construction of the claim term
23    "catalog" or "product catalog," how does the Court
24    define what a vendor can be?
25    A   The vendor, in the Court's construction, a vendor
```

2011.01.06 Trial Transcript Day 3  1/6/2011  3:03:00 PM

### Page 631

1  A   Yes, you can.
2  Q   Now that we've gone through some of the various -- and
3  overviewed some of the various different Lawson Software
4  modules that can be used to implement these electronic
5  procurement systems, do you have any demonstrations that you'd
6  like to do to show the Lawson system in operation?
7  A   First demonstration would show the category search
8  feature.
9  Q   And you have this, these demonstrations, as I understand,
10  both in captured screen shots -- is that right -- captured
11  software and also in hard copies?
12  A   That's right.
13      MR. ROBERTSON: Your Honor, I'm going to be offering
14  both those for ease of review at the appropriate time.
15  Q   How were you able to capture a demonstration of the system
16  using the Lawson Software?
17  A   So Lawson provided a demonstration system that included
18  these modules that we've been talking about, and it runs on a
19  laptop. So we used -- we practiced to get the demo correct in
20  the sense that it showed what I wanted it to show, and then we
21  used software that was present on the machine that we were
22  given that did a realtime recording of whatever was on the
23  screen. So it's a realtime movie capture.
24  Q   Who provided that software?
25  A   That was provided by Lawson on the machine we got. So as

### Page 632

1  we did these demonstrations, we used that Lawson-provided
2  software to create a realtime movie which we saved and which
3  now we're going to play back.
4  Q   Did that laptop come with item data?
5  A   Well, it came with some item data which turns out to be an
6  issue. The database that we were provided from Lawson was
7  actually pretty sparse, so, yes, it had some items in there,
8  but it wasn't fleshed out like a production system would be.
9  Q   In order to demonstrate some of the capabilities and
10  functionality of, say, comparison shopping or using the UNSPSC
11  codes to identify goods that are similar, identical, or
12  generally equivalent, do you need data, item data in the
13  database to demonstrate that?
14  A   Absolutely.
15  Q   And if you don't have, for example, a sufficient number of
16  black pens to compare, or if you have only have one black pen
17  and you're searching for black pens, can you demonstrate some
18  of the functionality of the system if that item data is not
19  there?
20  A   That's right. Without equivalent items, there are no
21  equivalent items to be found.
22  Q   So were you aware that a request was made to Lawson to
23  provide additional data on this demonstration laptop that they
24  gave us so that we could demonstrate the functionality of the
25  system?

### Page 633

1  A   Yes, I'm aware of that.
2  Q   And what was your understanding as to what the outcome of
3  that was when the requests were made?
4  A   Well, I don't know the details. What I know is that
5  eventually a Lawson consultant was hired to help load some
6  additional data. Even so, three of the demonstrations that I'm
7  going to give were on the system as provided by Lawson. Only
8  one needed additional data loaded.
9  Q   And a Lawson employee or personnel worked with ePlus
10  personnel to help them load additional data -- excuse me.
11  Worked with ePlus's counsel to load additional data on this
12  laptop for that one presentation?
13  A   That's my understanding.
14  Q   Now, based on the documents you've reviewed and based on
15  testimony reviewed, do these Lawson accused procurement systems
16  typically come with lots of item data?
17  A   Well, when the database is loaded, the witnesses said that
18  there are typically hundreds of catalogs and thousands,
19  sometimes tens of thousands of items.
20  Q   So with that kind of robust data in the database, it's
21  easier to show the full functionality of the system; is that
22  fair to say?
23  A   That's fair to say. However, we're going to do it.
24  Q   All right. Then as I understand it, three of the four
25  demonstrations were just as the laptop was provided to counsel

### Page 634

1  for ePlus?
2  A   Yeah. We could say out of the box, the box being the
3  laptop.
4  Q   One being with the additional data that Lawson assisted
5  ePlus's counsel in loading; is that right?
6  A   That's correct.
7  Q   The first demonstration you have, what do you want to
8  illustrate?
9  A   I want to illustrate the category search in which we can
10  find generally equivalent items and then we can find other
11  items and build a requisition, and then we can build one or
12  more purchase orders from that requisition.
13  Q   Okay. And did you direct the preparation of this
14  demonstration?
15  A   Yes, I did.
16  Q   All right. If we can, before we do that, just so we can
17  orient the jury as to what they're going to see, can we see
18  claim three and claim 28 side by side on the screen?
19     Now, both these claims, claim three being the system claim
20  and claim 28 being a method claim, has this element concerning
21  converting data relating to a selected matching item and
22  associated source to data relating to an item in a different
23  source; do you see that?
24  A   Yes. That's the sixth element.
25  Q   The Judge has construed both these claim terms; correct?

## Page 635

1  A   Yes.
2  Q   And I'm not going to go through it again because we read
3  them at one point, but the jury has them in their glossary.
4  And, of course, all the other elements need to be there as
5  well. Are we going to be seeing, as we walk through this
6  demonstration, the existence of these other elements that you
7  described?
8  A   Yes.
9  Q   Why don't you go ahead.
10  A   All right. So Mike is going to play this movie, and
11  you'll see there are some waits involved in here, but that's
12  just because it's recording exactly what was seen.
13  Q   Stop here for a second and let me ask you a question here.
14  There's a box in the lower right-hand corner. Is that part of
15  the Lawson system or not part of the Lawson system?
16  A   That was part of the system provided, and it's part of the
17  realtime capturing software, so you can -- what's showing --
18  can you see this? So what you are seeing right now is a clock
19  that says we're 12.4 seconds into the movie, and then there's a
20  button that if you were on the real laptop, you could click it
21  and it would toggle from pause to play to pause to play. We've
22  chosen just to let it play.
23  Q   If we wanted to --
24       MR. McDONALD: Your Honor, could I get a
25  clarification on which exhibit, and is there a paper version of

## Page 636

1  this one so we know what you are using?
2       MR. ROBERTSON: It's going to be Plaintiff's
3  Exhibit 376 is the video, and Plaintiff's Exhibit 374 would be
4  the hard copy paper capture of the screen shots.
5  Q   So we're clear, this is like the video playback? We can
6  do the stop, forward, reverse by using these tools if we need
7  to go back at any time?
8  A   Well, these tools are for the original capture. Mike and
9  I are going to do it manually. I'm going to say stop and
10  continue and probably say go back.
11  Q   We may have to go back because it moves quickly sometimes?
12  A   Sometimes it's too quick, and sometimes it's too slow.
13  Right now we're going to start with a go back, so go back to
14  the beginning.
15       All right, so as the laptop screen exists, first I'm going
16  to bring up the browser. I'm going to use Internet Explorer,
17  so here we go. Stop. Now, again, I'm just going to tell you,
18  you're going to see some times when not much is happening, but
19  this is just a true-to-life recording of exactly what was on
20  the screen at the time.
21       Okay, so in your ordinary Internet Explorer browser, I've
22  clicked on the favorites tab, and one of the favorites that
23  I've saved is the Lawson portal.
24  Q   Is this an example of the drop-down menu you were talking
25  about earlier?

## Page 637

1  A   Sure. Exactly. So I'm going to go down and click on
2  Lawson portal. Continue. Now, this is one of those waits.
3  Okay. We get to the Lawson log-in screen. So we put in the
4  user name and password and then click on log in. This will be
5  one of those longer waits. You can see the time clicking away
6  in the bottom right-hand corner.
7       Stop. So now we are at the Lawson home page, and if you
8  are familiar with browsers, you see up here, there is the URL
9  that we're using. LSF server, that's Lawson server foundation,
10  that's what we talked about before. Server.corpnet.lawson.com.
11  So we're looking at the portal.
12  Q   All right, you used the term URL. Can you explain to the
13  jurors what you mean by that?
14  A   Falling back into my vernacular. Universal resource
15  locator, so commonly called a web address. Okay, so we can
16  continue. Top. Stop. That was stop, not top. Here's another
17  one of those drop-down menus. So on the left-hand side, I have
18  a menu. One of the top level choices was requisition self
19  service. So I'm going into the RSS module, and I'm picking one
20  of the activities that is there. This is one of the
21  capabilities. All right, so I'm going to click on the shopping
22  selection. Continue.
23       Stop. So, now we come to the shopping screen. Again, if
24  you look up here at the top, you will see there are some
25  choices that can be made. These are, again, top levels of what

## Page 638

1  will be drop-down menus. I'm going to go click on this
2  find/shop, and that's going to give me additional choices.
3  Continue.
4       Stop. So here are the choices. I can search the
5  catalogs, I can do a Punchout. I'm going to do that later.
6  Down there at the bottom is categories. So I'm going to go
7  down and click on categories, because I want to do a category
8  search. Continue.
9       Stop. Now, remember with the UNSPSC codes, we said that
10  there were four levels: Segment, family, class, and commodity.
11  So what is showing here in the category tab, the category
12  window, is the first three of a small set of these top level
13  categories, these segment categories. So, remember, there
14  could have been a hundred of them, 00 to 99, but here, for
15  clarity, everyone exchanges those digits for names so that they
16  have -- they make sense to humans.
17       So my top choice there, live plant and animal material and
18  accessories and supplies, that's one of the segment codes.
19  Now, I don't know what code it is, 23, 99, I don't know. It
20  doesn't matter. It is representative of what is in this very
21  broad segment. So I'm going to scroll down and show you the
22  others, and then I'm going to come back and pick one in the
23  middle. Continue. See, we only had about six there. Stop.
24  Q   Let me ask you a question about that then. There are only
25  six here to illustrate the functionality of it. Does the

### 639

1  Lawson requisition self service you are using here have the
2  capability to have more?
3  A   Absolutely.
4  Q   How many could it have?
5  A   It could be a hundred different segments. Each of those
6  segments could have a hundred families. They could each have a
7  hundred classes. They could each have a hundred commodities.
8  Q   I noticed you clicked on one of these segments?
9  A   The one I clicked there in the middle is communications
10 and computer equipment and peripherals and components and
11 supplies. So you can see how broad a category that segment
12 name represents. So what we're going to do now is drill down
13 to become finer-grained.
14     So having clicked on that top level segment -- continue --
15 stop. So underneath the segment is the family. Now, here we
16 show that there's very little data in the system we were
17 provided. Whereas there could be a hundred different family
18 names, there's only one. So due to the paucity of data here,
19 I'm going to click the only possibility I've got.
20     All right, so I've done the segment. This is the family.
21 I'm going to click on the family name, hardware and
22 accessories. Continue.
23     Stop. So now we're down to the class. There could have
24 been a hundred classes, but, again, because there's so little
25 data here, there's only two. So as I look at the class, I have

### 640

1  a choice of computers or monitors and displays. So I'm going
2  to go for computers. Continue.
3      Stop. Now I'm down to the commodity level. The
4  commodities, there should be a lot of them, but because of the
5  paucity of data here, we have only one commodity category,
6  notebook computers. So I'll click the only choice I've got,
7  and then that will list the actual item data that is underneath
8  the notebook computers commodity code. Continue.
9      Stop. So now we see all of the items in the database that
10 have the UNSPSC code for notebook computers, and there's only
11 two, okay? Small database.
12 Q   So I understand, for the segments, there could have been
13 thousands, for families there have been --
14 A   Hundreds.
15 Q   Hundreds. What is the next level?
16 A   So you start with segment.
17 Q   Class?
18 A   Could be a hundred. Then family -- each of those segments
19 could have a hundred, and then each of those families could
20 have a hundred classes, and each of the classes could have a
21 hundred commodities.
22 Q   Those commodities, you could have thousands of items?
23 A   Right. Once you get down to the commodity level, you have
24 unlimited number of items that map to that code. Here we have
25 two. Okay, it's going to do the job, though.

### 641

1  All right, so I'm going to look at these two computers.
2  You can see the first line item there is an IBM ThinkPad, and
3  it has an item number of 6001. The one below it is a Dell
4  Inspiron 8000. It has an item number of 6020. So I'm going to
5  go click on the item number, and that's going to get us a
6  description of this item.
7  Q   Before you do that, Doctor, does it have unit measure
8  category?
9  A   Right. Under UOM, you see each.
10 Q   Does it have cost information?
11 A   Under cost, the ThinkPad is 2,500. The Dell is 2,000.
12 Q   Does it have description of the item?
13 A   It has a description, IBM ThinkPad T20 or Dell Inspiron
14 8000 with Intel Pentium processors.
15 Q   You indicated it had an item number?
16 A   There is an item number.
17 Q   And it even provides for the Intel Pentium or the Dell
18 Inspiron, the manufacturer?
19 A   I just covered up the description. Yeah. So not only do
20 we have in this case the name of the computer, Dell Inspiron
21 8000, we also have a little more descriptive information, that
22 it's an Intel Pentium III processor.
23     Okay. We'll continue. Oh, and stop. I should also note
24 while we're here that over here is the Dell shopping cart, and
25 it's obviously empty. It's supposed to be empty --

### 642

1  Q   I think you misspoke. I think you said the Dell shopping
2  cart.
3  A   I misspoke. This is the Lawson shopping cart right here
4  where it says my cart. And so as I select items, they will
5  show up in the shopping cart, but we'll see that. All right,
6  so now I'm READY to drill down on the ThinkPad. Continue.
7      So I click on that item number. Stop. And this retrieves
8  the data in the item master and vendor item table database and
9  tells me about the item. So we have an item number, we have a
10 description, a unit of measure, a cost.
11     We have a source vendor ID, 118, and a source vendor name,
12 Office Max. So from observing this information that is
13 produced, I know that this IBM ThinkPad has a vendor source of
14 Office Max.
15 Q   Let me stop and ask a question, Doctor. There's a box
16 there that says image not available. Does this RSS application
17 have the ability to load images of the items offered for sale?
18 A   It does, and the documentation encourages one to do so.
19 But, again, because of the paucity of data, we didn't have any
20 item images in the data we were given.
21 Q   This is how it was provided to us; it could have been
22 provided with an image, because the software permits you to do
23 that?
24 A   Right. It could have been chock-full of images, but it
25 wasn't. Okay, so I'm going to scroll down and up so you see

### Page 643

1   all of the information that was presented to me as the user of
2   the RSS system, and then we'll go back and look at the other
3   Dell computer. So continue. So now I'm going to add that to
4   the cart.
5       Stop. So here in the Lawson shopping cart, I have my IBM
6   ThinkPad T20, item number 6001; quantity, one; unit of measure,
7   each; cost, $2,500. So I'm going to park this item in the
8   shopping cart, but then I'm going to go back and look at the
9   equivalent items, equivalent in that they had the same UNSPSC
10  code.
11      All right, so we'll continue, and I'll click on this back
12  button over here. So here -- stop. Here is that second line
13  item as we saw before, the Dell Inspiron. So I'm clicking on
14  its item number, and we'll drill down on that and see what
15  information is provided there. Continue.
16      Stop. So similarly to what we saw before, this is the
17  other machine. It's an item -- I wiped it out. Item 6020, a
18  Dell Inspiron 8000 with Pentium III processor, a unit of
19  measure each, and a cost of 2,000. But it has a source vendor,
20  ID code of 124, and a source vendor name of Diablo.
21      So the first computer, the ThinkPad was coming from the
22  Office Max catalog. This is coming from the Diablo catalog.
23  So I stare at that, and I think which of these machines is a
24  better choice for me. I'm cheap, so I'm going to go with this
25  one. So I will add this one to the shopping cart, Lawson

### Page 644

1   shopping cart, and delete the other one. So continue.
2       Okay, now stop. So now I have both notebook computers in
3   the Lawson shopping cart, and I'm going to go up here to this X
4   and delete the ThinkPad. Continue.
5       And like all good software, it asks me, do you really want
6   to delete that, and I say, yes. Okay. Stop. So at this
7   point, I have done the UNSPSC code, found two generally
8   equivalent notebook computers, chose one, added it to the
9   shopping cart, added the other one to the shopping cart,
10  deleted the first one.
11      So I've been able to convert one item from one source, the
12  ThinkPad from Office Max, into an equivalent item from another
13  source, the Dell Inspiron here, and having done that, I'm now
14  going to go back and pick another category and find another
15  item to add so that I'll have multiple items in my shopping
16  cart.
17      Okay, so I'm backed out -- because I did that drop-down
18  menu to categories, I'm back at the highest level, the segment
19  level. So continue. Scroll down. Stop. So this time my
20  segment level is laboratory and measuring and observing and
21  testing equipment. Continue. Stop. My family, again, there's
22  only two here, laboratory and scientific equipment, or
23  measuring or observing, or testing instruments and accessories.
24  Continue.
25      So I pick at my family, laboratory and scientific

### Page 645

1   equipment. Stop. Oh, I might also note that the hierarchy
2   tree is being kept for me up here at the top. Here's my
3   segment level, here's my family level. As soon as I click here
4   on my class level, it will appear here and so on.
5       All right, so I'm about to click on laboratory,
6   environmental conditioning equipment for my third category.
7   Continue.
8       Stop. Okay, now, again, we're down to commodities. There
9   could be a hundred of these, but there's not. There's just
10  one. There's one commodity called glove boxes. So when I
11  click on this, I will see all the items in the item master
12  database and the vendor item table that have been encoded with
13  the UNSPSC code for glove boxes. Continue.
14      Stop. Once again, the database is small, so there's only
15  two entries under the commodity heading. Both of these are
16  boxes of sterile surgical gloves, so I'm going to pick one and
17  add that to my Lawson shopping cart. Continue. I'm going to
18  look at it first. Smart shopper.
19      Stop. All right. So I just did a drill-down as I did
20  with the computers. So you see we have an item number, 1036,
21  we have a description, gloves, sterile surgical, size seven. A
22  unit of measure. Here it's case, cost, 400 bucks, source
23  vendor. The ID number is 117, and the source vendor name is
24  Baxter Healthcare.
25      Continue. So scroll down and back up, and add that to my

### Page 646

1   shopping cart. So here it is, gloves at the top, Dell computer
2   at the bottom. Now stop. I have finished shopping, so I have
3   the information from the database now in the shopping cart. My
4   next goal is to create a requisition. Then I'll need to get
5   that approved, and then I'll need to get that turned into
6   purchase orders.
7       So since the gloves and the Dell came from different
8   vendors, I will need two POs, one to each of those vendors, so
9   I'm going to click on checkout. Continue. All right, saved.
10      Stop. So it gives it a number, 911. So when I come into
11  this system next, I'm going to come in as a manager, and I'm
12  going to look for this order 911 that is existing in the
13  system. I'm going to find it among all other orders, and then
14  I'm going to get it approved. All right, continue. Status
15  needs approval.
16      All right, back to the portal home page, and now I'm going
17  to come in as a manager. Here are some requisitions, but 911
18  is not among them. Stop. Here is the requisition 911, and
19  that's the one I need to have approved. Continue.
20      Stop. So here we pull up the requisition, you see right
21  there, and we have the two line items, the Dell Inspiron and
22  the case of gloves. So I've logged in now as the manager when
23  I clicked on manager, and so here are the actions I can take:
24  Approve, reject, or unrelease, so I'm going to approve these.
25  Continue.

**647**

1  Okay, approve, approve action to be taken. Okay. Work
2  object. Taken, all right. Stop. So at this point, it looks
3  like -- superficially it looks like I'm done. It looks like
4  I've got it approved, but in this particular example, there
5  were additional business logic rules that said, aha, you have a
6  computer in there. That's a technical thing, so you need
7  technical approval in addition to manager's approval. Okay,
8  we'll go get that, too, so back I go as a manager. Continue.
9  Approve technical items, find 911. There it is. Stop.
10  And so now what I'm going to be approving is the fact that it's
11  got a computer in there. Continue.
12  Stop. While we're here, we may as well show, to show that
13  I'm doing the technical approval, we have this item detailed
14  down here that says it's the Dell computer from Diablo that I'm
15  approving. So I go back up to approve it.
16  Q   Let me stop you for a second, Doctor, and ask you, we've
17  been seeing a number -- some of the features that we're going
18  to be talking about in the claims that were necessary about the
19  product catalog and selecting product catalogs and doing
20  comparison shopping using UNSPSC codes.
21      MR. McDONALD: I object to the form, Your Honor.
22  That wasn't a question.
23  Q   Let me ask this question: This approval process, is this
24  part of the claimed elements that are being asserted here?
25  A   No.

**648**

1  Q   Because there's an approval process which is an additional
2  step or additional feature that's there beyond the claim
3  elements, does that render a system non-infringing?
4  A   No.
5  Q   Having this approval process is irrelevant to the analysis
6  when the jury needs to go back and determine whether or not the
7  functionality either satisfies a system or method?
8  A   That's correct.
9  Q   Thank you.
10  A   Okay, so we're ready now to do the technical approval.
11  Continue. So I'll click approval, approval action taken. Work
12  object dispatched. Stop. Now, you heard me say earlier that
13  in the purchase order module, there's a program called PO 100
14  that turns requisitions into purchase orders. So I'm going to
15  run that program, PO 100, and I'm going to tell it which
16  requisition to go get. You might -- you may or may not recall
17  that I said that information gets cached in the system and
18  retrieved.
19  This is retrieving the requisition data by the purchase
20  order module, and then we'll see it generate POs. Okay, so now
21  we're ready to run the PO 100 program. Continue.
22  Stop. So here is the opening screen for the PO 100
23  program. So I'm going to fill in job name and job description,
24  I'm going to put in three pieces of information that the system
25  requires. Here this has -- this part has nothing to do with

**649**

1  infringing. This is just how you make the system work, and
2  then we'll see it -- turn the requisition or choose the
3  requisition and then we'll see it.
4  We've chosen the requisition, or have we? No, we're about
5  to because I'm going to give it a name, and then we'll see it
6  generate POs.
7  So I'll call this job RQ911, give it a name, requisition
8  number 911. Default delivery is five days. Release the
9  purchase orders, yes. Choose an option for exception reports.
10  There are some other boxes that are available. I don't need
11  any of these. I'll go back to the main tab, and, okay, that's
12  all I need to do, so I add this. And now I'm ready to submit
13  it to the system for -- by submit, I mean turn the requisition
14  into a PO. So I click on submit, give this a submit -- all
15  right, and stop.
16  Now, this process is actually running what we call in the
17  background. The foreground is this PO 100 screen, and the
18  program is running in the background converting the requisition
19  to a purchase order, so when this was done in realtime, enough
20  time had elapsed for that process to occur and for a report to
21  be generated which is the purchase order.
22  So what I'm going to do next is just go look at it,
23  because it's been created. I just can't see it yet, so
24  continue. I'm going to go up here to the print manager and
25  click on that. Stop.

**650**

1  So here this print manager keeps copies of the things it
2  creates, and the very top one on the list is that job that I
3  just named requisition number 911, and it was operated on by
4  the PO 100 program. So when I go click on this, I'm going to
5  reveal the purchase orders that have been created. Continue.
6  Stop. So if you think of this screen and then the
7  scroll-down menu as a big piece of paper, up here at the top we
8  have some information like when it was run, and then here we
9  have information that's important to a purchase order, namely
10  who is doing the purchasing.
11  So in this case, the buyer is the Metropolis Medical
12  Center, and it's their -- somewhere in here it will say the
13  delivery location is main. Well, I don't see that yet. It
14  doesn't matter. What we're going to do now is scroll down a
15  bit more. Okay, continue.
16  Move from side to side, there's nothing to the right.
17  Stop. So here is the first purchase order. Our buyer,
18  Metropolis Medical Center, we have a vendor, 117. Baxter
19  Healthcare is that vendor. We have an item number 1036. We
20  have a description, sterile surgical gloves, size seven. Its
21  source document was requisition 911. Quantity is one. Unit of
22  measure is a case, and here's what I was looking for. The
23  requesting location is main. And then here, the PO has been
24  released. So this system has created the purchase order and
25  released it.

**651**

1   Now, that's the first of two. So now I'm going to scroll
2   down some more. Continue. Stop. And here's the second PO.
3   So it's at the bottom of this conceptual sheet of paper. So,
4   again, we have the buyer, Metropolis. We have a vendor, number
5   124 from Diablo. The item number is 6020. The item
6   description is the Dell Inspiron 8000. It came from the 911
7   requisition. I'm ordering one of them in unit of measure each,
8   and I'm delivering it to main.
9      Now, here, for the second PO, it has been released. So
10  two POs have been created and released, and the report
11  summarizes two POs created. That's the end.
12  Q   Thank you. Now, Doctor we're going to be going through
13  some more documents, and we have three more demonstrations to
14  sort of illustrate the functionality of this accused system.
15  And at some point, I'm going to be asking you to go through all
16  12 of these asserted claims for each element under the Court's
17  claim construction. Are you going to be able to do that for
18  me?
19  A   Sure.
20  Q   At this point, just keeping the Court's claim terms in
21  mind, let me just ask you, at a high level with respect to this
22  demonstration we just saw, and keeping the claim three and
23  claim 28 we talked about which include that element for
24  converting, did we see at least two product catalogs?
25  A   Yes, we did.

**652**

1   Q   Did we see the ability to select those product catalogs to
2   search?
3   A   We did that through the categories.
4   Q   Tell me what two product catalogs we saw?
5   A   Office Max and Baxter Healthcare.
6   Q   Did we also see Dell and Diablo?
7   A   Yeah, that's right, we did.
8   Q   And was there an ability to select the product catalogs?
9   A   Yes, we did it through the categories.
10  Q   Was there an ability to search for matching items in those
11  product catalogs?
12  A   We did that.
13  Q   How did we do that?
14  A   We put in the -- we did the category search by marching
15  through the UNSPSC codes, picking a commodity and then picking
16  items.
17  Q   Once you had selected those items from the office, from
18  the shopping cart, were you able to put them into a
19  requisition?
20  A   Yes.
21  Q   And did you -- were you able, from that requisition, after
22  you got the appropriate approvals which are not part of the
23  claims of the -- elements of claim, excuse me, were you able to
24  generate one or more purchase orders from that requisition?
25  A   Yes, we did.

**653**

1   Q   And were you able, using the UNSPSC, to find items that
2   were similar, generally equivalent?
3   A   Yes, I converted that ThinkPad into a Dell.
4   Q   Thank you. Doctor, I'd like you to take a look at
5   Plaintiff's Exhibit 280, and can you identify what this
6   document is?
7   A   This is the Lawson Software response to Presbyterian
8   Healthcare Services.
9   Q   So this is another one of those responses to an RFP?
10  A   That's correct.
11  Q   And what is it dated?
12  A   March 22nd, 2005.
13  Q   And if you could take a look at the page that begins with
14  barcode 196, if you would, sir. And here -- which has a Bates
15  number that ends 848.
16  A   Yes, I'm there.
17  Q   And here Presbyterian Hospital, in this -- here Lawson, in
18  this response to the request for proposal from the Presbyterian
19  Healthcare Services, is ask asking about requisitioning
20  capability from Lawson; is that right?
21  A   Yes. That's exactly what it says.
22  Q   And it says in the requisitioning capability, it's asking
23  to describe your ordering tools for various types of items,
24  stock, nonstock, and non-catalogs; do you see that?
25  A   Mike, it is below there. There it is.

**654**

1   Q   Okay. And the response, is that on the next page?
2   A   That's on the next page.
3   Q   Let me -- okay, let's go to the next page. And in
4   response to this RFP, this Lawson requisition, is that one of
5   the modules that you've been describing today?
6   A   It is.
7   Q   What does it say that the capability is of Lawson
8   requisitions that Lawson is representing to the Presbyterian
9   Healthcare Services?
10  A   That first paragraph says, Lawson requisitions enables
11  users to view online catalogs for stock and nonstock items,
12  select items from the catalog or a template, and add additional
13  comments to their requisitions.
14     Also, requesters can add non-catalog items such as service
15  or specials through item free form input. Additionally,
16  requester can view all previously created requisitions and
17  status with requisition inquiry.
18     So this tells us that the users can view online catalogs,
19  they can select items, and they can prepare requisitions.
20  Q   And this is using that requisitions module that you
21  described; is that right?
22  A   It is.
23  Q   Let me ask you, there's an additional question on this
24  page where Presbyterian Healthcare Services asks Lawson to
25  quote, describe your system's ability to establish global

2011.01.06 Trial Transcript Day 3  1/6/2011  3:03:00 PM

739

1  MR. ROBERTSON: I don't know who he's going
2  to question about it.
3  THE COURT: I'm sure he's going to question
4  Dr. Weaver based on what he said. Not because I'm
5  prescient or anything.
6  MR. ROBERTSON: I guess I don't have an
7  objection to that.
8  THE COURT: Well, good then. We solved
9  something.
10  Raise the blinds so that in the morning it
11  will be open.
12  All right. I think that's everything. And
13  you don't expect to finish tomorrow, is that right,
14  Mr. Robertson? You don't expect to finish tomorrow,
15  is that what your situation is?
16  MR. ROBERTSON: I do not, sir. I expect Mr.
17  McDonald might have a half an hour or 45 minutes of
18  cross-examination.
19  THE COURT: If you ask your questions bullet
20  points, 30 minutes is plenty. Once you get beyond
21  that, the expert bets you is generally what happens.
22  All right. Okay. So we're not going on
23  Monday. You're going back on Tuesday. Thank you very
24  much. Hope you feel better, all of you. Don't bring
25  anything else up here.

740

1
2  (The proceedings were adjourned at 5:15 p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25