UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ePLUS, INC.,

        Plaintiff,

v.

LAWSON SOFTWARE, INC.,

        Defendant.

Civil Action No. 3:09-cv-620 (JRS)

### DECLARATION OF DALE CHRISTOPHERSON

I, Dale Christopherson, declare as follows:

1. I make this declaration on my own information, knowledge, and belief.

2. I am the S3 ERP Applications Director of Development for Lawson Software, Inc. My primary duties include overseeing the development of new software and software modifications for Lawson's S3 product lines.

3. On February 8, 2011, soon after the jury verdict, Lawson began development of a potential new web-based user interface to work with Lawson's Core S3 Procurement solutions, specifically: Inventory Control ("IC"), Requisitions ("RQ"), and Purchase Order ("PO"). Lawson had previously used Requisitions Self Service ("RSS") as the web-based user interface. The new product, eventually called Requisition Center ("RQC"), removed certain functionality from the RSS product and added restrictions related to processing a requisition.

4. Lawson technical personnel collectively spent 735 hours developing the initial changes to the RQC product. Lawson personnel spent at least another 1,500 man-hours,

collectively, working with personnel in support, product management, sales, marketing, and other divisions to roll out the RQC product.

5.      The RQC product has several functional changes from the RSS product, which I explain below.

### Removal of Temporary, or Intermediate List Hold Prior to Requisition

6.      The first of the changes relates to the removal of an intermediate holding area that Lawson's RSS product referred to as "my cart" or the "shopping cart" that temporarily stored items between the time they were selected from search results and the time that they were added to a requisition in the Requisition module (RQ10.1).

7.      Specifically, in RSS, a user could conduct a search for items. The items returned as a result of that search could be selected for purchase. Upon selection, the item would be placed in temporary, or intermediate, list held in "my cart." Users could then add, modify, or delete items located in "my cart" prior to sending the items to a requisition in RQ10.1. When a user selected the "submit" button at the bottom of the "my cart" screen, the items would be checked for errors during a single error check session. If there were no errors, the items were sent to a second list, which was the requisition in RQ10.1. Thereafter, the requisition would be sent through the approval process.

8.      When we designed the RQC product, we removed the intermediate list that temporarily stored items between the time they were selected from the search results and the time that they were added to the requisition in RQ10.1. With RQC, a user conducts a search for items. The user may select items returned from the search. Unlike RSS, as soon as the item is selected in RQC, it is sent directly to a requisition in RQ10.1.

9. The RQC product returns to the functionality used by Lawson's pre-RSS Requisitions (RQ) product, which also sent items directly from search results to a requisition *without* temporarily holding them in an intermediate list.

10. With the RQC product (like the RQ product), users can add, modify, and delete items from the requisition, but they are not adding, modifying, or deleting items in a first temporary, or intermediate list. Rather, any manipulation after selection of an item is done on the requisition itself. That was also the same functionality employed by the Requisitions product.

11. There is a portion of the RQC user interface that appears in the same location (right side of the screen) as the shopping cart in RSS (RQC calls it "requisition lines") but it does *not* perform the same functionality as the "shopping cart" feature in RSS. Rather, it is merely a mirror screen that shows the requisition lines of the requisition as they appear in RQ10. We had to change the source code of the software to implement this changed functionality from RSS to RQC.

12. The practical effect of this functional change means the RQC user has to operate the RQC product differently than the RSS product because the items that go onto the requisition must be error free. Additionally, the user need not later send the temporary list to the requisition module, because that step has already occurred.

13. Another change to the RQC product is that any item that is selected from the search results is immediately checked for errors because items must be error free to be placed on the requisition that is now shown on the right hand side of the screen. Because RQC does not employ an intermediate list or holding spot, the error check must occur immediately.

3

### Removal of Fourth, or Commodity Code Level of UNSPSC Codes in RQC

14. The RSS product allowed users to conduct searches of products by 8-digit UNSPSC code all the way down to the fourth level, which is called the commodity level or commodity code. With the RQC product, we removed the ability of a user to conduct a search down to the fourth level. In other words, RQC does not allow you to search for items that have the same 8-digit commodity code. Instead, users are restricted to conducting searches down to a third level, which is the class level. With RQC, it is not even possible to see the 8-digit commodity code or which items have the same 8-digit commodity code. The practical effect of the change is that users are not able to search for items that share the same commodity level as they could with the RSS product.

15. Lawson stills allows users to associate items in Item Master, which is part of the Inventory Control module, with 8-digit commodity codes because other Lawson products still uses the UNSPSC coding system. For example, Lawson's Business Intelligence product uses UNSPSC codes, including the 8-digit commodity codes, in reports such as Spend Analysis. However, the RQC product restricts and prevents the user from using that fourth layer of code in connection with RQC. The capability of searching the fourth level is completely removed from the RQC procurement system.

### Restrictions On Multiple Vendors Per Requisition

16. The RSS product allowed users to place items from multiple punchout sites as well as items from Item Master onto a single requisition. The RQC product removes this functionality.

17. Specifically, the RQC software restricts the user's ability to place items on a single requisition that come from the Item Master and that come from a punchout vendor. Users

also are barred from placing items from multiple or different punchout vendors on a single requisition.

18. An RQC user who places an item on a requisition from the Item Master cannot thereafter initiate a punchout session. The user will be provided the following error message.



19. Users who have placed an item on a requisition from a punchout session cannot thereafter initiate a second punchout session with a second vendor. Users who attempt to do so will be presented the following message. The RQC software prevents the user from initiating a second punchout session.



**Revisions to Other Software**

20.     The RQC product required revisions to software that is used to operate the RQC program, including the underlying platform "Lawson 4GL."  Attached as Exhibit 1 is a true and correct copy of a document showing the differences between the Lawson 4GL code used with RSS and the Lawson 4GL code used with RQC.

21.     Lawson changed the usage of some entries in the database to track which vendor a Punchout requisition is from.  With the change from RSS to RQC, Lawson overloaded the usage of some columns in the database that used to have one meaning and now can also hold the vendor if a requisition is from a Punchout vendor.  Specifically, because RQC restricts a user's ability to visit multiple punchout vendors, the database captures data that tracks a user's activities.  If a user has visited a punchout vendor during a single requisition session, the RQC product restricts that user from visiting a second punchout vendor.  The current database structure is at level 9.0.1.6+.

22.     Lawson did not functionally alter its Requisitions, Purchase Order, or Inventory Control programs in relation to the change from RSS to RQC.  There were some minor updates to enable the functional changes in RQC.  Since those products together were found not to infringe, we saw more reasons to leave them alone than to change them as part of our redesign process.

**Removal of Any Association with Lawson on Punchout Session**

23.     The URL that is associated with a punchout session operated with the RQC product will contain the customer's URL in the address bar.  "Lawson" was the customer in the demonstration conducted on August 22, 2011, thus "Lawson.com" was used in the URL.  That

would change from Lawson to an actual customer's name for an actual customer. That is, "Lawson.com" would not appear in the URL.

24. The RQC product contains a statement that each user must review prior to exiting the Lawson system and entering a punchout session on a third party website. A copy of that statement is set forth below:



25. A single user can choose to not see that box again. A user's selection not to see the message again has no effect on other users, and other users will continue to see the statement.

26. Additionally, Lawson's RQC product removes the Lawson logo from each punchout session to show the user that the punchout session is with a third party, not Lawson, and not the user.

### Timeline Related to the RQC Product

27. Lawson began development work of the RQC product on February 8, 2011, shortly after we learned that the jury had found some product configurations infringed some of ePlus's patent claims.

28. Development continued through the month of April. During March and April we did not have a finished product, and were not sure if we would have a commercially-acceptable product to release or not.

29. The first release of the RQC product was on May 18, 2011.

30. Lawson tested features of the RQC product on a rolling basis. Testing on the RQC product began in March and continued through the initial release on May 18, 2011. During that time, Lawson continued to work on development of the RQC product, which included removing features from the RSS product, and creating restrictions based on the jury's finding. Lawson continued to test the product after the initial launch and has sent out patches to the initial release since the initial launch.

## Effect on Customers

31. Lawson rolled out the RQC product faster than typically rolls out a product and faster than it typically rolls out updates to existing products. Based on the quick rollout, there were some software bugs and changes that had to be made at the outset.

32. On June 9, 2011, Lawson introduced the first patch to the RQC software. The patch fixed certain bugs that had been identified by customers and further restricted the functionality that had been in the RSS product, for example with respect to limiting purchase orders with punchout. Other patches were released on June 29, 2011, July 15, 2011, July 21, 2011, August 1, 2011, August 8, 2011, and August 16, 2011.

## Demonstration of the RQC Product

33. On August 22, 2011, I participated in a demonstration of the RQC product together with attorneys from ePlus and Dr. Alfred Weaver. The demonstration system that I used was a standard demonstration system used by Lawson's demonstration team. It is the same

system we used to demonstrate the RQC product to our customers. The demonstration system also had RSS loaded, which allowed side-by-side comparisons.

34. During the lawsuit, Lawson demonstrated its RSS product using servers that were installed on its demonstration laptops. Lawson changed the method it demonstrates the RQC product. Lawson no longer uses servers installed directly on its demonstration laptops to demonstrate its system to potential customers. Rather, RQC is demonstrated by connecting to a central server or a cloud server.

35. During the August 22, 2011 demonstration, ePlus requested that we alter the UNSPSC data that resided on the demonstration database. My understanding is that ePlus has contended that there were "hundreds" of people at Lawson who could have input UNSPSC codes during the demonstration of the RQC product on August 22, 2011. That is incorrect. Personnel have to have an understanding of the Inventory Control program in order to update or insert codes. There are only a few people at Lawson's building in St. Paul that have the knowledge to make these changes. Only one person at a time can make the changes since the demonstration system is specifically setup to allow only one user to access the system at a time.

36. I have reviewed ePlus's September 9, 2011, brief that relates to Lawson's RQC product. At page 6, ePlus claims "it appears that some of the changes touted by Defendant have either never been implemented in RQC or can easily be disabled by Defendant's customers." That statement is false. I have personally demonstrated each of the changes that Lawson made. Additionally, I have personally tested the system many times. The changes that are outlined in this Declaration have all been implemented in the RQC product. Further, the changes cannot be easily manipulated, which is shown by the hundreds of hours put into developing the RQC

product. If a client does change the RQC product (and I am not aware of anyone changing the features that I discuss in this declaration), the system is no longer a Lawson product.

37. ePlus also contends on page 22 of its brief that the "order list does not become final requisition until the release button is hit." That statement is incorrect as it applies to RQC. First, there is a single list, the requisition. Unlike RSS, which had an intermediate holding cell called "my cart," RQC sends items directly to the final requisition list. The only function of the release button is to send the requisition, which was created immediately upon selecting an item, to the approval process. This is one of the ways in which RQC is different than RSS. The release button employs the same functionality as the release button used on the Requisitions (RQ) product, which the jury found did not infringe.

I declare under the penalty of perjury the foregoing is true and correct to the best of my knowledge.

Date: September 19, 2011

Dale Christopherson