# EXHIBIT 2

# Merchant & Gould
## An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact    dmcdonald@merchantgould.com
612.336.4637.

May 6, 2011

Scott L. Robertson                                    __Via E-Mail__
**Goodwin Procter LLP**
901 New York Avenue NW
Washington, DC 20001

Re:    ePlus, Inc. v. Lawson Software, Inc.
       Case No.:  09-620
       M&G No.:  16391.0001USZA
       CONFIDENTIAL ATTORNEY'S EYES ONLY

Dear Scott:

In the injunction opposition brief, we disclosed that Lawson is working on redesigning its products to avoid infringement as detailed in the jury's verdict.

This letter is to inform ePlus that Lawson is in the process of decommissioning new sales of its Requisition Self Service (RSS) product.  While we will need to continue to service existing RSS products, Lawson will introduce a new product called Requisition Center (RQC) in the next few weeks.  The RQC product is not yet complete, but is in testing, and efforts will have to be undertaken to transition existing RSS customers to this new product.  Also, the plans related to the product are likely to be modified in order to adopt the product to Lawson's 4GL software.  We are providing you notice of this new product now to give you an opportunity to raise with us any issues ePlus may have with the RQC product.

The RQC Configuration, which combines the new RQC product with Lawson's Core S3 Procurement System,[1] lacks certain features of the Requisition Self Service (RSS) Configuration,[2] and is believed to avoid infringement of Claim 1 of ePlus's U.S. Patent No. 6,505,172.  As explained below, the RQC Configuration does not have any feature, structure, or functionality that corresponds to the element of the RSS Configuration that

---

[1]    The "Core S3 Procurement System" was "Configuration No. 1" on the Verdict Form.  (Dkt. No. 600.)  That configuration was for "Core S3 Procurement System (Lawson System Foundation ('LSF')/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules)."
[2]    The "RSS Configuration" as described herein was "Configuration No. 2" on the Verdict Form. (Dkt. No. 600.)  That configuration was "Core S3 Procurement System (Lawson System Foundation ('LSF')/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules) and Requisition Self-Service or 'RSS'".

Atlanta   |   Denver   |   Knoxville   |   Omaha   |   Minneapolis   |   Seattle   |   Washington DC

Scott L. Robertson
May 6, 2011
Page 2

ePlus contended was a "means for generating an order list," which is a necessary element of Claim 1.

### The Only Claim Found by the Jury to be Infringed by the RSS Configuration Requires a "Means for Generating an Order List."

The only claim the jury found infringed by the RSS Configuration was Claim 1 of the '172 patent. That claim requires (among other limitations, emphasis added):

means for generating an **order list** that includes at least one matching item selected by said means for searching; and

means for building a **requisition** that uses data obtained from said database relating to selected matching items on said order list . . . .

The Court's Markman Order defined the structure of the "order list" means and the "requisition" means as separate structures. (Dkt. No. 204 at 11-14, 50-51.) The Court construed these elements as follows:

> 9.   "Means for generating an order list that includes at least one matching item selected by said means for searching"

'172 Patent, Claim 1

> b.   Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a user interface operating on a computer through which a user may select from results from a search program or a search program that generates an order list of matching items, and their equivalents. See e.g., '172 Patent at 4:6-6:28; 7:66-8:13; 9:55-12:28; 18:23-50; Appendix VI, FIGS. 1-2 (describing local computer 20, graphical interface 254, search program 50, interface 60, TV/2 and search program 250).

Scott L. Robertson
May 6, 2011
Page 3

> 10. "Means for building a requisition that uses data
>     obtained from said database relating to selected
>     matching items on said order list"

'172 Patent, Claim 1

### b. Corresponding Structure

The corresponding structures, materials, or acts, of this element are disclosed as a requisition module operating on a computer system having access to data in the database, and its equivalents. <u>See e.g.</u>, '172 Patent at 1:30-40; 3:7-28; 6:45-7:3; 7:41-8:19; FIGS 1-3 (describing various embodiments of requisition modules including requisition/purchasing system 40, requisition management ("REQI") module 44A and requisition maintenance program 44C).

Consistent with the Court constructions and the claim language, the patent specification, prosecution history, and testimony at trial all show that the means for generating an order list and means for building a requisition are distinct.   Figure 1C of the '172 Patent shows the structural distinction between the requisition and order list:



Scott L. Robertson
May 6, 2011
Page 4

At trial, ePlus, through its expert Dr. Weaver, asserted that the capability of providing an order list was the RSS shopping cart:

```
23  Q   Which Lawson application did we see that had the

24  capability of providing an order list?

25  A   The shopping cart. ...
```

(Trial Trans. at 815:23-25.) He further testified that the RSS shopping cart function provided the functionality corresponding to the "means for generating an order list...."

```
23  Q   Do configurations 2, 3 and 5 have means for

24  generating an order list that includes at least one

25  matching item selected by said means for searching?

1   A   They do.

2   Q   Is it that RSS module that provides that order

3   list or shopping cart as you referred to it?

4   A   Yes, the RSS is where the shopping cart

5   functionality resides.
```

(Trial Trans. at 817:23-818:5.)

Dr. Weaver also concluded that the RSS shopping cart was different than a requisition. He stated "the order list is the shopping cart and that's what becomes the requisition." (Trial Trans. at 569:8-9.) In response to the question "Is [a shopping cart] consistent with your understanding of building a requisition," Dr. Weaver testified, "Well, it's not the requisition... [the order list] is going to be transferred to the requisition module." (Trial Tr. at 568:22-569:5.) He also testified:

```
14  A   So in the Lawson system you build a shopping cart,

15  then you add and delete items from it until you're

16  satisfied with it.  And then you do a checkout from

17  the Lawson system.  And that engages the requisition

18  system and builds the requisition of all the items

19  that you want to order.
```

Scott L. Robertson
May 6, 2011
Page 5

(Trial Trans. at 568:14-19.)  The testimony shows that the order list was required in order to prove infringement of Claim 1 of the '172 Patent.

> **The New RQC Product Lacks the "Order List" or "Means for Generating an Order List" Limitation of Claim 1 of the '172 Patent and Therefore Does Not Infringe When Used in Combination with the Lawson Core S3 Configuration.**

The jury found the RSS Configuration only infringed Claim 1 of the '172 Patent.

Configuration No. 2:  Core S3 Procurement System (Lawson System Foundation

("LSF")/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order

Modules) and Requisition Self-Service or "RSS"

| Claim | YES | NO |
|---|---|---|
| '683 Patent, claim 3: | | ✓ |
| '683 Patent, claim 28: | | ✓ |
| '516 Patent, claim 1: | | ✓ |
| '516 Patent, claim 6: | | ✓ |
| '516 Patent, claim 9: | | ✓ |
| '516 Patent, claim 21: | | ✓ |
| '516 Patent, claim 22: | | ✓ |
| '516 Patent, claim 29: | | ✓ |
| '172 Patent, claim 1: | ✓ | |

(Dkt. No. 600.)  The jury further found that the Core S3 Procurement System without RSS did not infringe.

Configuration No. 1:  Core S3 Procurement System (Lawson System Foundation

("LSF")/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order

Modules)

| Claim | YES | NO |
|---|---|---|
| '516 Patent, claim 1: | | ✓ |
| '516 Patent, claim 6: | | ✓ |

Scott L. Robertson
May 6, 2011
Page 6

The RQC Configuration adopts a different structure, function, and methodology than the RSS Configuration by adopting a "direct-to-requisition" technology that eliminates any order list or means for generating an order list. Users may not place items into an "order list" prior to requisitioning products because the order list does not exist and cannot be generated in the RQC Configuration. Rather, the RQC Configuration transfers information about desired products from a search *directly to a requisition*.

The RQC direct-to-requisition process is similar to the pre-RSS process where the selected products were sent directly to requisition. When Lawson later developed the RSS product, which employed a graphical user interface, the shopping cart was added. Lawson removed the shopping cart in the RQC Configuration. The diagrams below graphically show the flow from search results to requisition in the old RSS Configuration and the new RQC Configuration:





Based on the removal of the shopping cart and its associated structure and functionality, the RQC Configuration does not infringe any of ePlus's patents, including Claim 1 of the '172 patent, and would be in compliance with any injunction that might have a scope commensurate with the injunction ePlus has requested.

We hope to reach an agreement with you on the propriety of this new product, if possible. We hope you share this desire and will work with us. Among other benefits, such interaction may help us avoid the need to raise new issues with the Court. We also see mutual benefit to addressing any issues before any injunction may issue.

This letter should not be construed as a concession of infringement or any other issues that may arise in post trial motions or with respect to the appropriate scope of relief.

We invite you to share this information with Dr. Weaver, so long as he treats the information as attorney's eyes only under the protective order. We produce the

Scott L. Robertson
May 6, 2011
Page 7

information under the existing protective order for convenience and in the spirit of
cooperation.  Such production and indeed this letter as a whole should not be construed as
an admission that any particular new design or redesign ultimately must be considered as
part of the existing case.

Please contact me at your earliest convenience and at least by the close of business on
Monday to discuss this matter.


Yours truly,

Daniel W. McDonald

cc: The Honorable Robert E. Payne