**EXHIBIT 10**

# Merchant & Gould

### An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchantgould.com

A Professional Corporation

Direct Contact | **612.336.4637**
dmcdonald@merchantgould.com

June 10, 2011

Scott L. Robertson                                           <u>Via E-Mail</u>
Goodwin Procter LLP
901 New York Avenue NW
Washington, DC 20001

Re:     ePlus, Inc. v. Lawson Software, Inc.
        Case No.:  09-620

ATTORNEY"S EYES ONLY CONFIDENTIAL INFORMATION

Dear Scott:

Over one month has lapsed without any word from you on whether you will accept our May 6, 2011 invitation to discuss a new product, Requisition Center or RQC, which Lawson was in the process of developing and releasing.  We provided ePlus with a substantial description regarding RQC.  Our May 6 letter explained that we believe that RQC avoids infringement of the only claim that RSS was found to infringe because it removes the "order list" functionality that ePlus relied on to prove infringement of this claim.

This letter provides further details on how RQC in its currently-available form eliminates structures and functions that ePlus relied on to show infringement of claim 1 of the '172 patent and claims 3, 26, 28, and 29 of the '683 patent by the configurations that use RQC in combination with Punchout.

The jury found no infringement of any claims by Lawson's Configuration No. 1, which has the core Lawson software (LSF, Process Flow, IC, PO, and RQ) common to all accused configurations.  Further, the jury found no infringement with respect to Configuration No. 4 (core with EDI).  The jury also rejected ePlus's assertions that any of the configurations infringe any of the asserted claims of the '516 patent.

Lawson has not only eliminated features ePlus relied on to show infringement, Lawson has also made changes that make the redesigned configurations similar to the prior art considered by the Patent Office and distinguished by ePlus to secure allowance of its claims.  For all of these reasons, the RQC product configurations are all significantly different from the products found by the jury to infringe, they all avoid infringement, and

Scott L. Robertson
June 10, 2011
Page 2

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

they all are in a safe harbor where the infringed patent claims and the injunction do not and cannot apply.

1.  **The System Claims:  RQC eliminates the RSS features that ePlus relied on to prove that the Lawson configurations have the necessary structures and functions for infringement of the system claims - the '172 patent claim 1 and the '683 patent claim 3.**

   (a)  Removal of the Means for Generating an Order List

Our May 6 letter explained in detail how the RQC product eliminated key aspects that ePlus asserted met the "means for generating an order list" in claim 1 of the '172 patent.  The testimony at trial was clear that the "order list" element was met by RSS's "shopping cart," both for configurations with and without Punchout.  Thus, at least because RQC excludes the "order list" element, configurations using RQC do not infringe claim 1 of the '172 patent.

The only other claims found by the jury to infringe are claims 3, 26, 28, and 29 of the '683 patent, and only with respect to Configuration Nos. 3 and 5.  Those two configurations require both RSS and Punchout, with Configuration No. 5 also including the EDI module.  As shown below, when RSS is removed and RQC used with Punchout alone or with Punchout and EDI, there is no basis for infringement of any of those claims of the '683 patent.

   (b)  Removal of Means for Building a Requisition Using Data Relating to Selected Matching Items and Their Associated Source(s)

Claim 3 of the '683 patent recites a system including the following element:

Means for building a requisition using data relating to selected matching items and their associated source(s)

Dr. Weaver testified that the above-recited element of claim 3 of the '683 patent is the "ability to buy various items from various vendors and place them on a single requisition." This is shown at the trial transcript page 551-52:

Scott L. Robertson
June 10, 2011
Page 3

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

```
14   Q    This ability to buy various items from various
15   vendors and place them on a single requisition, is
16   that included in any of the claim elements that you
17   have examined?
18   A    Yes, it is.
19   Q    Can you give us just an example.  Can I look at
20   Claim Three of the '683 patent?
21   A    Sure.
22   Q    Tell us where that particular feature is.
23   A    Sure.  That is being color-coded in blue.  Means
24   for building a requisition using data related to
25   selected matching items and their associated sources.
```

```
1   Q    So we could have a requisition with matching items
2   from more than one source; is that right?
3   A    That's right.
```

Moreover, specifically regarding the Punchout Configurations, Dr. Weaver testified that the Lawson system can "in the same process" both search an internal catalog database and add items to a requisition, and with Punchout go to an external catalog database to search and retrieve items.  This is shown in his testimony at page 762.

```
17   Q    And now you're going to an external catalog database?
18   A    This is the external catalog at the special Dell site.
19   Q    So the Lawson system has the ability to both search the
20   internal catalog database and add items to a requisition, and
21   then it can also, in the same process, punch out and go to an
22   external catalog database in order to search a catalog and
23   retrieve items?
24   A    That's right.
```

After reviewing the trial transcript, the only testimony we can find from Dr. Weaver that describes how or where the Lawson system is capable of meeting these requisition elements is in the above-cited testimony. That testimony relies on the "ability to buy

Scott L. Robertson
June 10, 2011
Page 4

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

various items from various vendors, including the internal catalog database, and place them on a single requisition."

RQC excludes the capability of building a single requisition from items selected from the Item Master and items selected from a punchout vendor catalog. A customer using the RQC product would be forced to place items selected from the internal catalog database on a requisition that is separate from another requisition that would be filled from a punchout vendor (3rd party supplier) catalog. Thus, if a customer attempts to first select items for a requisition from local inventory via Item Master and also from punchout website, the RQC product prevents that capability. Thus, no single requisition is capable of including items from both the internal Item Master and another Punchout vendor. In this regard, RQC builds requisitions filled from the internal Item Master in the same manner as the non-infringing Lawson configurations which do not have Punchout.

If a customer attempts to place a requisition from both the internal Item Master and one or more Punchout vendors, it will receive a notification similar to the following:



For this additional reason, the RQC product presents yet another significant change relative to the infringing elements of the RSS product. As such, RQC/Punchout configurations do not infringe claim 3 of the '683 patent and are not capable of being used in a manner that infringes claim 3 of the '683 patent.

(c)     Removal of Means for Processing the Requisition

Claim 3 of the '683 patent recites a system including the following element:

Scott L. Robertson
June 10, 2011
Page 5

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

means for processing the requisition to generate one or more purchase orders for the selected matching items;

Claim 1 of the '172 patent similarly requires:

means for processing said requisition to generate purchase orders for said selected matching items.

ePlus's validity expert, Brooks Hilliard, testified that the above-recited element of claim 3 of the '683 patent is the ability to generate multiple purchase orders to multiple vendors from a single requisition. This is shown in his testimony at page 2687-88:

```
24  Q   Then does the system take that requisition and
25  need to be able to generate purchase orders using the

 1  data in that requisition?
 2  A   Yes.  The '683 patent, Claim Three, and many of
 3  the other claims all talk about generating multiple
 4  purchase orders from the requisition, and the reason
 5  for multiple purchase orders is that the individual
 6  line items in the requisition are each associated with
 7  vendors, and you have to have a separate purchase
 8  order for reach vendor.
```

In ePlus's infringement case, Dr. Weaver testified that Lawson's accused Punchout configurations met these claim limitations because they did generate two purchase orders to two different vendors from a single requisition. This is in his testimony at page 766.

As described above, the redesigned RQC product no longer allows products from multiple punchout vendors to be on a single requisition, thus it does not provide the ability to issue multiple purchase orders to different Punchout vendors in the Punchout configuration. As such, for this additional reason, RQC/Punchout configurations do not infringe claim 3 of the '683 patent or claim 1 of the '172 patent and they are not capable of being used in a manner that infringes these claims.

(d)     Removal of Means for Converting

Scott L. Robertson
June 10, 2011
Page 6

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

Claim 3 of the '683 patent recites the following means:

means for converting data relating to a selected matching item and an associated source to data relating to an item and a different source

With respect to claim 3, the Court construed the claim as requiring the function of "converting data relating to a selected matching item and an associated source to data relating to an item and a different source." The Court also recited corresponding structure in its construction.

At trial, ePlus, through its expert, Dr. Weaver, asserted that this functionality and structure was provided by the 8-digit UNSPSC codes, which drilled down to the "commodity level of information." Dr. Weaver made this clear in testimony found, for example, at page 575 of the trial transcript as follows:

```
 8   Q   The converting icon, I think you talked a little
 9   bit about this, but in the Lawson system, how do they
10   perform this functionality of the conversion to find
11   similar, identical or generally equivalent items?
12   A   I mentioned these UNSPSC codes.  So I'll explain
13   later in detail what they mean, but the gist of it is
14   that by using an 8-digit code, you are drilling down
15   to what's going to be called the commodity level of
16   information.  And if multiple items have this same
17   8-digit code, then by the definition of the code they
18   are generally equivalent and substitutable.
19       So the Lawson system uses this UNSPSC code in
20   order to accomplish that task.
```

Dr. Weaver thus testified that products that had the same 8-digit code were by definition generally equivalent and substitutable. He testified that the Lawson system uses the UNSPSC code to accomplish the task of converting.

Similarly, at page 622 of the transcript, Dr. Weaver again relied on the UNSPSC coding system to provide the functionality of converting data.

Scott L. Robertson
June 10, 2011
Page 7

## ** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

```
10    Q    If you'd look at the glossary of terms, the Court's
11    defined converting data relating to a selected matching item
12    and associated source to an item in a different source; do you
13    see that?
14    A    I do.
15    Q    And his definition was, substituting data relating to a
16    selected matching item and an associated source to data
17    relating to an item in a different source.
18         With the capability of this UNSPSC coding system available
19    within the inventory control module, can someone utilizing that
20    hierarchical code perform this functionality?
21    A    Yes.
```

At pages 771-72 of the trial transcript, Dr. Weaver again made clear that he was relying on the 8-digit UNSPSC code going "down to the commodity level, that last level" to find products that are substitutable or generally equivalent.

```
24    Q    Turn to page 13 of the document for now, and just I want
25    to focus on that hierarchy.  Is this -- this has the segment,
```

Scott L. Robertson
June 10, 2011
Page 8

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

```
 1   the family, the class, and the commodity for office equipment
 2   going down to pen refills.  Is this the same kind of example
 3   you gave yesterday with how, in effect, this eight-digit coding
 4   can drill down to get you to a specific product that you want?
 5   A    Yes, it is.  The example we used yesterday went down to
 6   black pens.  This was a different class, so it ends up with a
 7   different commodity, but it's the same schema.
 8   Q    Why don't you go, then, to page 12 on this exhibit, and if
 9   we could, just the chart.  So, again, this is describing the
10   levels of the UNSPSC -- actually, this even has one additional
11   level down there.  Do you see this business function?
12   A    Yes.
13   Q    What does it say by the time you get down to the commodity
14   level, that last level?  What does it say with regard to what
15   you can now do with this tool in order to identify product or
16   service?  How does it characterize it?
17   A    What it says, by the time you've gotten down to the
18   commodity level, you have found a group of substitutable
19   products or services, and we just saw that with the halogen
20   lamps.
21   Q    Doctor, your opinion, if the parts are substitutable,
22   would they be similar or generally equivalent?
23   A    Yes, they would.
```

Finally, in discussing specifically claim 3 of the '683 patent as well as the claims including converting data, Dr. Weaver again relied on the UNSPSC codes as used specifically in the RSS module.

Scott L. Robertson
June 10, 2011
Page 9

**\*\* CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER \*\***

```
1   Q    Do you have an opinion, Doctor, as to whether or not the
2   accused Lawson systems satisfied the claim element means for
3   converting data relating to a selected matching item and an
4   associated source to data relating to an item in a different
5   source?
6   A    Yes, and we saw that when we did the category search using
7   the UNSPSC codes.  And we also know this is made possible by
8   that IC 516 program that loads UNSPSC codes into the item
9   master.
```

```
4   Q    Which of the five systems have we seen have the ability
5   for converting data relating to a selected matching item and
6   associated source to data relating to an item and a different
7   source?
8   A    The ones that contain the requisition self-service module.
```

```
9   Q    So if it had the requisition self-service module, that
10  would be able to satisfy this last claim element?
11  A    Yes.
```

Dr. Weaver's testimony and ePlus's arguments with respect to the UNSPSC codes are also consistent with the UNSPSC White Paper (PX-11) you used at trial.  Page 12 of that exhibit sets forth the hierarchy of the UNSPSC code system, comprising two-character numerical values for each of a segment, family, class and commodity.  The commodity level classification, the most specific, is described as a "group of substitutable products or services."

Scott L. Robertson
June 10, 2011
Page 10

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

PTX 11 p.12

Each level contains a two-character numerical value and a textual description as follows:

XX  <u>Segment</u>

    The logical aggregation of families for analytical purposes

      XX  <u>Family</u>

          A commonly recognized group of inter-related commodity categories

          XX  <u>Class</u>

             A group of commodities sharing a common use or function

             XX  <u>Commodity</u>

                A group of substitutable products or services

A specific example of this hierarchy is also provided in the Plaintiff's Trial Exhibit 11 White Paper, and was used by Dr. Weaver, describing pen refills:

PTX 11 p. 13



In the RQC configuration, Lawson has disabled use of the commodity level of the UNSPSC code. Thus, no codes correspond to the 8-digit code relied upon by Dr. Weaver to prove infringement of the means for converting and converting step. Absent the

Scott L. Robertson
June 10, 2011
Page 11

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

commodity level, customers cannot do a category search to identify products that could be substitutable or generally equivalent.

Moreover the elimination of the features ePlus relied on to show infringement of the converting means and converting step creates a significant difference between the infringing RSS/Punchout configurations and the redesigned RQC/Punchout configurations. Indeed, the applicants had to add this converting step to these claims during prosecution to distinguish the prior art King and Dworkin patents.

Thus, any Lawson configurations that employ the RQC product rather than RSS would be in compliance with any aspect of the injunction that relies on configurations including the RSS module with respect to claims requiring a converting step, including at least claims 3, 28, and 29 of the '683 patent.

> 2. **The Method Claims: RQC eliminates the features that ePlus relied on for the findings that the Lawson systems enabled an entity to perform the steps required by the method claims of the '683 patent.**

Further, with respect to the method claims,[1] ePlus's demonstrations (presented by Dr. Weaver) show methods that the accused systems are merely capable of performing. *See, e.g.*, Tr. at p.789 for Dr. Weaver's "capability" opinion for infringement of claim 29 including both steps of "converting" (as in claim 28) and "determining" (as in claim 26); Weaver, Tr. at p. 798:6-18 (for "direct infringement, … when it hosts a system that *can* perform these steps of these claims; it that right?" A: That's correct.), Tr. 784-787: ("So, in your demonstrations that you provided for the jury, you were able to show that the system was *capable* of doing all these steps? A. I was.); Weaver Infringement Report at Paras. 231 and 260, and also Para. 285 for claim 28 and Para. 316 for claim 29.[2]

RQC eliminates several features that remove any basis for a contention that RQC configurations are even capable of being used to practice the asserted method claims 26, 28 and 29 of the '683 patent. We have been unable to identify in the record a single instance where ePlus *even attempted* to show that any customer (or other entity) actually performed

---

[1] This requirement is applicable for direct or indirect infringement (inducement or contributory) and applicable whether or not joint acts are alleged for performing the steps of the method claims. Lawson is also unaware of any evidence that ePlus would argue supports a finding of contributory infringement, especially in light of the fact that Configuration No. 1 is not infringing. See also Lawson's Reply to ePlus's Opposition Brief to Lawson's Motion to Stay (filed with the Fed. Cir. on June 6-7, 2011), discussed *infra*.

[2] The U.S. Supreme Court has just clarified that "induced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, No. 10-6, 563 U.S. __ (May 31, 2011). Given this requirement of knowledge of the acts for inducing infringement and the lack of any known acts in the trial record of that any entity actually performing the steps of the method claim, Lawson's knowledge cannot be inferred from unidentified acts of infringement.

Scott L. Robertson
June 10, 2011
Page 12

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

each step of any of the method claims.  The evidence on this issue is lacking.  Nevertheless, Lawson has implemented RQC in view of ePlus's offers of proof and the rest of the record.  Some but not all of these modifications have been discussed above to some extent primarily in the context of the system claims.  The modifications as specifically related to the method claims are discussed below.

> (a)   The RQC-Based Systems are Not Capable of the Converting Steps of Claims 28-29 of the '683 patent

We first address claims 28 and 29 of the '683 patent which require performance of the "converting" step.  As discussed above with claim 3 ("means for converting"), RQC excludes the UNSPSC commodity codes that Dr. Weaver testified were capable of being used to practice the converting step of these claims.  Because we have removed the claimed feature that was added to overcome the Patent Office's rejection of these claims based the King prior art, this modification is significant.  Without the UNSPSC commodity codes, RQC essentially has the same capabilities as the prior art system taught by the IBM-King patent.  Moreover, by excluding these aspects and codes, Lawson would be affirmatively preventing, and certainly not inducing or otherwise encouraging, performance by customers of the required "converting" step.

> (b)   The RQC-Based Systems are Not Capable of the Building a Requisition Steps of Claims 26, 28, and 29 of the '683 Patent

Claims 26, 28, and 29 all require the step of: "building a requisition using data relating to selected matching items and their associated source(s)."  As discussed above with respect to claim 3 ("means for building a requisition"), the RQC product eliminates the ability to buy various items from various punchout vendor catalogs and place them on a single requisition with RQC, which is what Dr. Weaver relied on to show that the RSS/Punchout configurations infringe these claims.  Therefore the building step of method claims 26, 28, and 29 cannot be practiced in Punchout configurations that use the RQC rather than RSS module.  As discussed above, by excluding this capability, Lawson is affirmatively preventing, and certainly not inducing or otherwise encouraging, performance by customers of the required "building" step.

> (c)   The RQC-Based Systems are Not Capable of the Processing a Requisition Steps of Claims 26, 28, and 29 of the '683 Patent

Claims 26, 28, and 29 of the '683 patent all require the step of:  "processing the requisition to generate one or more purchase orders for the selected matching items . . . ."

This element refers to "the requisition" that was built as part of the preceding method step of these claims.  As discussed in the section above, RQC is not capable of

Scott L. Robertson
June 10, 2011
Page 13

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

building a requisition as required by that element.  Therefore, RQC is also not capable of processing the requisition as required by this method step.

Additionally, Mr. Hilliard testified that the prior art RIMS system did not anticipate claim 26 of the '683 patent, in part, because RIMS "couldn't do multiple purchase orders to multiple vendors."  This is shown in his testimony at pages 2724-26:

```
23   Q    Let's turn to your opinions with respect to claim
24   26 of the '683 patent.  Can we have slide 2?
25        Do you have an opinion as to whether or not the
 1   RIMS system as described in the '989 patent
 2   anticipates that claim?
 3   A    It doesn't.
 4   Q    Why not?
 5   A    Let's look at the RIMS system as described in the
 6   '989 patent first.  It didn't have two product
```

****

```
15        And there's no processing of the requisition to
16   generate one or more purchase orders for the selected
17   matching items because the RIMS system as described in
18   the '989 patent couldn't do multiple purchase orders
19   to multiple vendors.  And there's no way -- there's no
```

As discussed above, Dr. Weaver testified that Lawson's accused Punchout configurations met these claim limitations because they did generate two purchase orders to two different vendors from a single requisition.  This is in his testimony at page 766.

As described above, the redesigned RQC no longer allows products from multiple punchout vendors to be on a single requisition, thus it does provide the ability to issue multiple purchase orders to different Punchout vendors in the Punchout configuration.

Scott L. Robertson
June 10, 2011
Page 14

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

Therefore the processing step of method claims 26, 28, and 29 cannot be practiced in Punchout configurations that use the RQC rather than RSS module.

> **3.    Other activities undertaken by Lawson regarding use of its products ensure no direct or indirect infringement arises with respect to the inventory elements of the '683 patent.**

With respect to use of configurations with Lawson's replacement RQC product, in addition to the changes described above, Lawson also has taken significant steps to ensure that there is no communication that would give rise to direct, indirect and/or joint infringement with respect to methods that may involve checking inventory or use of UNSPSC codes.  Specifically, Lawson has taken steps to direct its training and service related materials to do nothing to encourage customers to punch out to vendor websites and manipulate operations of any items in a manner that could result in performing any particular step of claim 26 or claims 28-29 of the '683 patent.  Lawson has even implemented a pop-up window when customers use the Punchout mode to clearly communicate to customers that Lawson has no control over what happens at vendor websites.  A screenshot of that pop-up window is shown below:



"Courts faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct **each step of the patented process**. *See BMC Res., Inc. v. Paymentech, L.P.*, 2006 U.S. Dist. LEXIS 4961 (N.D. Tex. Feb. 9, 2006) ("No court has ever found direct infringement based on the type of arms-length business transaction presented here.")." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).  These changes reinforce that Lawson does not direct or control any steps performed at vendor websites.  These steps are additional reasons that RQC configurations infringe no asserted claims, either directly or indirectly.

Scott L. Robertson
June 10, 2011
Page 15

** CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER **

4.      **Conclusion**

As shown previously, Lawson has taken steps to remove any structure or functionality that may correspond to the "order list" elements of the '172 patent.  As shown in this letter, Lawson took further steps to prevent infringing use of RQC/Punchout configurations, and the RQC product now also includes additional, significant modifications from the RSS product that eliminate infringement by the RQC/Punchout configurations of any claims of the '683 patent including even the capability of infringing the method claims.  We have provided some, but not all, of the reasons why these changes are significant and eliminate any reasons for the jury's limited findings of infringement.

Together, these changes provide numerous significant changes and reasons for noninfringement regarding claim 1 of the '172 patent and each of the asserted claims 3, 26, 28, and 29 of the '683 patent.

As we did for the May 6 letter regarding the RQC Configuration, we share this information with you in the hope that we can work together and reach agreement on the propriety of these actions as eliminating infringement issues and ensuring full compliance with the Court's injunction.  We again invite you to share this information with Dr. Weaver so long as he treats the information as attorneys' eyes only under the protective order in the case.  Additionally, we invite you to come to St. Paul to view the source code and/or product demonstrations to confirm the substance of this letter, subject to confidentiality terms that we can work out.

As before, we provide the information under the existing protective order for convenience and in the spirit of cooperation and not as an admission that any aspect of Lawson's products ultimately should or must be considered as part of the existing case.  Nor should this letter be construed as a concession of infringement or any other issues that may arise in post-trial motions or with respect to the appropriate scope of relief at the district court or on appeal.  Further, it is marked as a CONFIDENTIAL document within the terms of the Protective Order in the lawsuit, and should be treated accordingly.

While you never responded to my May 6, 2011 letter, I am still hopeful that we may hear from you with respect to the contents of this letter in the hopes of resolving any concerns or issues that may remain.

Yours truly,

Daniel W. McDonald