# EXHIBIT 11

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4637
dmcdonald@merchantgould.com

June 28, 2011

*Via Email*

Scott L. Robertson
Goodwin Procter LLP
901 New York Avenue NW
Washington, DC 20001

*Re:*    ***ePlus, Inc. v. Lawson Software, Inc.***
         ***Case No.: 09-620***       ***Confidential Subject to Protective Order***

Dear Scott:

I have your letters of June 16 and June 24, 2011 regarding Lawson's RQC product.

Your June 16 letter requests information far beyond the scope of what is necessary to confirm the explanation set forth in our letters of May 6 and June 10, 2011. The four-page document accompanying your letter included no less than 16 distinct and extensive document requests and 18 bullet points describing requests for additional information that read like interrogatories. Several of them have significant implications from a work product and an attorney-client privilege standpoint. These requests go far beyond the voluntary offer of information we provided and far beyond what is reasonable and necessary for ePlus to understand the operation of the RQC product. In contrast, the source code and demonstration we offer are sufficient to show you all the information you need to evaluate the RQC product.

You cite no basis for your demand for much more onerous and extensive information that goes beyond the information we offered. There is none. My May 6 and June 10 letters provided over 20 pages of detailed information and explanation regarding why the RQC product configurations lack significant features of the RSS product configurations found by the jury to infringe, and further why the RQC configurations are missing specific elements of the asserted claims found to infringe.

Atlanta | Denver | Knoxville | Omaha | Minneapolis | Seattle | Washington DC

Scott L. Robertson
June 28, 2011
Page 2

   Your response letters provide absolutely no specific analysis challenging the adequacy of any of these changes. We explained, for example, why the RQC product lacks the "means for generating an order list that includes at least one matching item selected by said means for searching" in the only claim the RSS configuration was found to infringe, Claim 1 of the '172 patent. Your letters provide absolutely no factual or analytical basis to counter our demonstration that this element is missing, and therefore RQC configurations do not infringe Claim 1 of the '172 patent.

   My letters also showed that the redesigned RQC/Punchout product configurations lack a "means for building a requisition using data relating to selected matching items and their associated source(s)" and further lack the "means for processing the requisition to generate one or more purchase orders for the selected matching items" as described in Claim 3 of the '683 patent and the "means for processing said requisition to generate purchase orders for selected matching items" as required by Claim 1 of the '172 patent. We also demonstrated how the RQC product lacks the "means for converting data relating to a selected matching item in an associated source to data relating to an item at a different source" required by Claim 3 of the '683 patent.

   With respect to the method claims of the '683 patent, we confirmed that RQC-based systems would not be used for and are not capable of performing the "converting" steps of Claims 28 and 29. We also showed that the RQC-based systems would not be used for and are not capable of performing the "building a requisition using data relating to selected matching items and their associated source(s)" step of Claims 26, 28 and 29 of the '683 patent. We further demonstrated that the RQC-based systems would not be used for and are not capable of performing the step of "processing the requisition to generate one or more purchase orders for the selected matching items . . ." of Claims 26, 28 and 29 of the '683 patent, and that Lawson undertook other activities regarding the use of its products to ensure no training, service or related activities encourage customers to punch out to vendor websites and manipulate operations of any items in a manner that would result in performing any particular step of the method claims of the '683 patent.

   In your June 16 and June 24 responses to these letters, you did not address any of these points. Instead, you resorted to inflammatory language as the basis for not being "persuaded" that the redesign is adequate. Your response falls far short of even raising a *bona fide* dispute as to whether the RQC product is an adequate redesign. We showed several important differences between the RQC product and the RQC/Punchout configurations, on the one hand, and the RSS product, the RSS/Punchout configuration, and the asserted claims, on the other hand. Your failure to specifically refute any of the differences cited is particularly telling because, as you know, we need only show one missing claim element to have both a colorable difference and a non-infringing product.

Scott L. Robertson
June 28, 2011
Page 3

You have provided no specific basis, factual or otherwise, for any contention that the RQC product as described in my letters infringes any of the asserted claims. Indeed, your extremely burdensome requests for information only confirm the fact that you have nothing. Instead, you make a variety of inflammatory and self-serving comments absent any factual basis.

As indicated in my June 10, 2011 letter to you, we invite you to come to Lawson's facilities in St. Paul to view the source code for RQC and product demonstrations of the RQC product so that you can see for yourself the product as described in my letters dated May 6, 2011 and June 10, 2011. I appreciate your offer to treat information we provide to you under confidentiality terms consistent with the terms of the protective order in the case. Because of the sensitive nature of this information, in particular the source code for this new Lawson product, however, Lawson would prefer not to ship a laptop loaded with the software to you.

The offer for you (and, if you like, your technical experts) to come to Minnesota remains open. The visit can be arranged as quickly as logistics will allow. It could still be scheduled for the end of this week, or next week after July 5th, which is a holiday at Lawson.

This offer is consistent with our prior voluntary offers and subject to the conditions of those offers as stated in the June 10, 2011 letter. Under the circumstances, we believe our offer of information is more than adequate to verify the assertions of my letters and to dispel your unfounded accusations. By providing you all of the source code and a demonstration, we are providing the exact same types of information that you and Dr. Weaver relied upon at trial regarding infringement of the accused configurations.

Lawson has no obligation to produce this information, although thus far it has been willing to do so voluntarily and in a spirit of cooperation. Indeed, it appears that the District Court would not have jurisdiction over such a baseless request for discovery. *800 Adept, Inc. v. Murex Securities, Ltd.*, 2007 US Dist. Lexis 61183 at *5-*6 (M.D. FLA. 2007) (copy enclosed). "[B]efore a court initiates a contempt proceeding or permits extensive discovery of suspected violations of its judgment, there should be at least a prima facie showing by the aggrieved party of disobedience of the order." *N.W. Controls, Inc. v. Outboard Marine Corp.*, 349 F.Supp. 1254, 1256 (D. Del. 1972), quoted in *800 Adept* at *6. As in the *800 Adept* case, "[h]ere, there are plenty of suspicions, and lots of conclusory allegations, but the showing does not rise to prima facie . . . ." The court in *800 Adept* denied the request for discovery. *See also, Syndia Corp. v. The Gillette Co.*, 2002 Dist.

Lexis 16350 at *13-*14 (N.D. Ill. 2002) (denying motion to compel discovery post trial; issues were not appropriate for summary disposition)

As in the *800 Adept* decision, your letter includes only suspicions, innuendo, and conclusory allegations and does not come close to establishing any prima facie case of a potential violation of a court's injunction. Thus, there is no basis for you to turn to the District Court to seek the extensive information you have requested beyond the more than sufficient information we have offered to provide.

Your letter also seeks to manufacture inconsistencies in Lawson's arguments. There are none. The fact is that at the time of briefing of the injunction, Lawson's efforts to redesign its product were ongoing but incomplete. Testing had not occurred either. Lawson further had no assurances that, even once the RQC product design and testing was complete, customers would accept the RQC product. Lawson personnel worked hundreds of hours at an extremely accelerated pace in order to complete the redesign process in recent weeks.

Moreover, contrary to your contention that we did not disclose the redesign efforts in connection with the injunction motion, in our March 30, 2011 Brief opposing the request for injunction (at p. 19) we accurately noted that "although Lawson is working on redesigning RSS and Punchout to avoid the infringed claims, the design around is not done and Lawson has not determined when it will be done."

At no time did we ever argue to the District Court or the Court of Appeals that Lawson would be unable to come out with new products that avoided infringement. In fact, the Court's memorandum opinion supporting the grant of an injunction specifically referred to my May 6, 2011 and May 18, 2011 letters describing the new RQC product. See 5/24/2011 Mem. Op. at 42, n. 10. Lawson thus fully disclosed the material facts regarding its redesign efforts as they developed during the pendency of the motion for a permanent injunction. Therefore, any suggestion on your part that Lawson somehow failed to make disclosures regarding the RQC product or presented inconsistent arguments to the Court are baseless and unfair.

Your letter cavalierly relies on your "recollection" that Mr. Hager testified that "for some customers it would cost 'up to a Million dollars' and 'as long as a year' to replace RSS." You suggest that this testimony, which you describe as "under oath," is at odds with other Lawson representations.

I do not see your purported quotes anywhere in Mr. Hager's testimony. You provide no specific cites to the transcript or record to support your innuendos. There is no

support for your faulty recollection. The only testimony that is even marginally relevant to your allegations had to do with the cost to customers if they had to replace Lawson software with a competitor's product. This testimony, found at pages 261-263 of the transcript from the injunction hearing, clearly relates to the cost of implementing an entirely new system as a substitute for a Lawson system. Moreover, your false quotes are completely inaccurate even in this fundamentally different context.

Additionally, your reference to our motion to alter or amend the injunction just further demonstrates that you have no basis whatsoever to attack the RQC product. Our motion to amend deals with two specific issues directed at a judgment which does not cover the RQC product: One, whether the new Supreme Court *SEB* decision setting forth the higher standard of intent to prove indirect infringement so completely undermines the jury findings and the Court's injunction directed to indirect infringement activities that the service-related portion of the injunction should be eliminated. Two, whether Lawson may service non-infringing components and configurations of Lawson customers who also have enjoined configurations. These issues remain relevant at least because many healthcare customers who are the subject of the six-month sunset provision of the Court's injunction continue to use the RSS product.

As shown above, we have responded with an offer of all information necessary to evaluate the RQC product in "a timely manner" as you request in your June 24, 2011 letter. We note the significant delays in your response to our offer of information. On May 6, 2011, I provided extensive description of the RQC product and invited you to discuss the matter. You did not respond. I sent you an additional letter dated May 18, 2011, giving you further information on the RQC product and indicating we remained "willing to discuss the matter with ePlus," with no response.

More than a month after the original letter, June 10, 2011, I sent you a 15-page description of further information about how and why the structure and operation of the RQC/Punchout configuration is significantly different from the RSS configurations including Punchout, as well as how and why it is noninfringing. We further invited you to come to St. Paul to view the source code and/or product demonstrations to confirm the substance of that letter, subject to confidentiality.

Forty-one days after my May 6, 2011, you finally responded to my offer to provide information regarding Lawson's RQC product. That letter included no proposed timetable for response. You enclosed with your letter a four-page listing of 16 extensive document requests and 18 interrogatories. We promptly considered your extensive requests in parallel to the ongoing briefing in the case and prepared this response. Our response is more than timely.

Scott L. Robertson
June 28, 2011
Page 6

Yours very truly,

*Daniel W McDonald*

Daniel W. McDonald

DWM:can
Cc: The Honorable Robert E. Payne
U.S. District Judge

Enclosures



**800 ADEPT, INC., Plaintiff, -vs- MUREX SECURITIES, LTD., MUREX LICENSING CORPORATION, TARGUS INFORMATION CORPORATION, WEST CORPORATION, Defendants.**

Case No. 6:02-cv-1354-Orl-19DAB

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

2007 U.S. Dist. LEXIS 61183

August 21, 2007, Decided
August 21, 2007, Filed

**SUBSEQUENT HISTORY:** Approved by, Objection overruled by *800 Adept, Inc. v. Murex Sec., LTD*, 2007 U.S. Dist. LEXIS 70861 (M.D. Fla., Sept. 25, 2007)

**PRIOR HISTORY:** *800 Adept, Inc. v. Murex Secs., LTD.*, 2007 U.S. Dist. LEXIS 52950 (M.D. Fla., July 22, 2007)

**COUNSEL:** [*1] For 800 Adept, Inc., a Florida corporation, Plaintiff: Brian R. Gilchrist, LEAD ATTORNEY, Herbert L. Allen, LEAD ATTORNEY, Stephen H. Luther, LEAD ATTORNEY, Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL; Michael Charles Maher, LEAD ATTORNEY, Steven R. Maher, Maher, Guiley & Maher, P.A., Winter Park, FL; Joseph Brent Smith, Maher, Guiley & Maher, PA, Woodland Hills, CA.

For Murex Securities, LTD., an Isle of Man limited company, Murex Licensing Corporation, a Delaware corporation, Targus Information Corporation, a corporation, Defendants: Aaron M. Staser, LEAD ATTORNEY, Deborah Pollack-Milgate, LEAD ATTORNEY, James R. Sweeney, LEAD ATTORNEY, Jeff M. Barron, LEAD ATTORNEY, Barnes & Thornburg, LLP*, Indianapolis, IN; Daniel J. Gerber, LEAD ATTORNEY, Suzanne Barto Hill, LEAD ATTORNEY, Rumberger, Kirk & Caldwell, PA, Orlando, FL; Donald E. Knebel, LEAD ATTORNEY, Todd G. Vare, LEAD ATTORNEY, Barnes & Thornburg, Indianapolis, IN.

For West Corporation, a corporation, Defendant: Aaron M. Staser, LEAD ATTORNEY, Deborah Pollack-Milgate, LEAD ATTORNEY, James R. Sweeney, LEAD ATTORNEY, Jeff M. Barron, LEAD ATTORNEY, Barnes & Thornburg, LLP*, Indianapolis, [*2] IN; Dennis P. Stolle, LEAD ATTORNEY, Donald E. Knebel, LEAD ATTORNEY, Todd G. Vare, LEAD ATTORNEY, Barnes & Thornburg, Indianapolis, IN; Suzanne Barto Hill, LEAD ATTORNEY, Rumberger, Kirk & Caldwell, PA, Orlando, FL.

For Adeptel, Inc., Third Party Defendant: Brian R. Gilchrist, LEAD ATTORNEY, Stephen H. Luther, LEAD ATTORNEY, Stephen D. Milbrath, LEAD ATTORNEY, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL.

Jay M. Cohen, MEDIATOR, Mediator, Pro se, Winter Park, FL.

For West Corporation, Counter Claimant: Aaron M. Staser, LEAD ATTORNEY, Deborah Pollack-Milgate, LEAD ATTORNEY, Jeff M. Barron, LEAD ATTORNEY, Barnes & Thornburg, LLP*, Indianapolis, IN; Suzanne Barto Hill, LEAD ATTORNEY, Rumberger, Kirk & Caldwell, PA, Orlando, FL.

For Murex Securities, LTD., Murex Licensing Corporation, Targus Information Corporation, Counter Defendants: Aaron M. Staser, LEAD ATTORNEY, Deborah Pollack-Milgate, LEAD ATTORNEY, James R. Sweeney, LEAD ATTORNEY, Jeff M. Barron, LEAD ATTORNEY, Barnes & Thornburg, LLP*, Indianapolis, IN; Daniel J. Gerber, LEAD ATTORNEY, Suzanne Barto Hill, LEAD ATTORNEY, Rumberger, Kirk & Cald-

Case 3:09-cv-00620-REP  Document 804-29  Filed 09/19/11  Page 9 of 14 PageID# 26365

Page 2
2007 U.S. Dist. LEXIS 61183, *

well, PA, Orlando, FL; Donald E. Knebel, LEAD ATTORNEY, Todd G. Vare, LEAD [*3] ATTORNEY, Barnes & Thornburg, Indianapolis, IN.

For Murex Securities, LTD., Murex Licensing Corporation, Counter Claimants, Third Party Plaintiffs: Aaron M. Staser, LEAD ATTORNEY, Deborah Pollack-Milgate, LEAD ATTORNEY, James R. Sweeney, LEAD ATTORNEY, Jeff M. Barron, LEAD ATTORNEY, Barnes & Thornburg, LLP*, Indianapolis, IN; Daniel J. Gerber, LEAD ATTORNEY, Suzanne Barto Hill, LEAD ATTORNEY, Rumberger, Kirk & Caldwell, PA, Orlando, FL; Donald E. Knebel, LEAD ATTORNEY, Todd G. Vare, LEAD ATTORNEY, Barnes & Thornburg, Indianapolis, IN.

For 800 Adept, Inc., Counter Defendant: Brian R. Gilchrist, LEAD ATTORNEY, Herbert L. Allen, LEAD ATTORNEY,Stephen H. Luther, LEAD ATTORNEY, Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL.

**JUDGES:** DAVID A. BAKER, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** DAVID A. BAKER

**OPINION**

**ORDER**

This cause came on for consideration without oral argument [1] on the following motion filed herein:

> MOTION: MOTION TO COMPEL DISCOVERY BY 800 ADEPT (Doc. No. 511)
>
> FILED: July 30, 2007
>
> THEREON it is ORDERED that the motion is DENIED.

---

1  800 Adept's request for oral argument (Doc. No. 515) is denied.

Following a twenty-four day trial, the jury in this case issued a verdict of willful [*4] infringement and the Court subsequently entered a judgment for damages and Permanent Inunction:

> That the Defendants/Counter-Plaintiffs, **MUREX SECURITIES, LTD., MUREX LICENSING CORPORATION,** and **TARGUS INFORMATION CORPORATION,** are enjoined and shall cease and desist in the making, using, sale, or offering for sale, the IntelliRouting Express, LocationExpress and DART products, and any colorable versions thereof, and shall be further enjoined from using latitude and longitude coordinates in the construction of computer databases used to produce and/or support such products.

(Doc. No. 475).

Following post-judgment motions, the Murex and Targus Defendants (herein "Targus") appealed (Doc. No. 479). That appeal is pending in the Federal Circuit.

Targus sought a stay of the injunction pending disposition of the appeal, and, following denial of a stay, Targus filed a Notice of Compliance, notifying the Court that "it has ceased providing the products accused of infringement in the litigation, and has developed and implemented new products that do not fall within the scope of the permanent injunction and do not infringe [the Patents at issue]." (Doc. No. 500). The new products are claimed to be "significantly [*5] different" from IntelliRouting Express and Location Express in that, "among other things" they do not assign callers using latitude and longitude coordinates, but rather, use V-H coordinates. *Id.* 800 Adept claims that this is "inconsistent" with prior representations made by Targus to the Federal Circuit and now "seeks discovery to determine which of Targus' inconsistent representations is correct and to obtain the evidence necessary to determine if Targus, as Adept strongly suspects, is in willful contempt of the injunction." (Doc. No. 511 at 5). The motion is DENIED.

First and foremost, 800 Adept fails to persuade the Court that it has requisite authority to allow discovery [2] in a case that is closed, with a judgment on appeal, and no pending motion for contempt or other collateral relief. *See Doe v. Bush, 261 F.3d 1037, 1064-1065 (11th Cir. 2001)* ("[A]s a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal. However, it may not divest the district court of jurisdiction over collateral matters not affecting the questions presented on appeal."). While a court retains jurisdiction [*6] to enforce its orders, [3] the instant motion is not brought in connection with any request for such relief, but rather, to determine in the first instance if there is an evidentiary basis for bringing such a motion in the future. There is no sufficient jurisdictional basis cited for such relief.

> 2   Although 800 Adept characterizes its proposed discovery as "limited," the Court does not find it so, considering that Plaintiff seeks 14 hour depositions of parties and non-parties, as well as production of documents relating to database construction, correspondence, notes, and financial records relating to the new products.
>
> 3   See Resolution Trust Corp. v. Smith, 53 F.3d 72, 76 (5th Cir.1995) (the district court has continuing jurisdiction in support of its judgment, and until the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions).

Moreover, as noted by one court in a case cited by 800 Adept:

> [B]efore a court initiates a contempt proceeding or permits extensive discovery of suspected violations of its judgment, there should be at least a prima facie showing by the aggrieved party of disobedience of the order.

*N. W. Controls, Inc. v. Outboard Marine Corp.*, 349 F.Supp. 1254, 1256 (D.C. Del. 1972). [*7] Here, there are plenty of suspicions, and lots of conclusory allegations, but the showing does not rise to *prima facie,* especially in view of the fact that there are already two pending lawsuits addressing the ultimate issue presented here: whether these new products infringe 800 Adept's Patents.

> 4   800 Adept has filed suit in Texas asserting that current and former customers of Targus infringe the Patents. Targus has filed the second suit in this Court, seeking declaratory judgment of non-infringment.

As this matter likely will require significant discovery and testimony, it is not amenable to summary contempt proceedings. *See KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985) ("If there are substantial open issues with respect to infringement to be tried, contempt proceedings are inappropriate. . . . The presence of such disputed issues creates a fair ground for doubt that the decree has been violated."); *Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995) ("Contempt, however, is not a sword for wounding a former infringer who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the [*8] marketplace [citation omitted]. Rather, the modifying party generally deserves the opportunity to litigate the infringement question at a new trial, 'particularly if expert and other testimony subject to cross-examination would be helpful or necessary.'" [*KSM at 1531*]); *see also Syndia Corp. v. Gillette Co.*, 2002 U.S. Dist. LEXIS 16350, 2002 WL 2012473 (N.D. Ill. 2002) (denying post-trial discovery which sought to discover information on a product modified post-trial).

Absent persuasive authority that the relief sought is necessary or appropriate at this time and in this forum, the motion is **denied.**

**DONE** and **ORDERED** in Orlando, Florida on August 21, 2007.

David A. Baker

UNITED STATES MAGISTRATE JUDGE



SYNDIA CORPORATION, Plaintiff, v. THE GILLETTE COMPANY, Defendant.

Cause No. 01 C 2485

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 16350

August 29, 2002, Decided
August 30, 2002, Docketed

**DISPOSITION:** [*1] Plaintiff's motion for an accounting of post 3/31/02 infringing sales denied. Plaintiff's motion to compel discovery denied.

**COUNSEL:** For SYNDIA CORPORATION, plaintiff: Peter Charles McCabe, III, John Edmund Mooney, Paul N. Monnin, Danielle Ann Rand, Winston & Strawn, Chicago, IL.

For WARNER-LAMBERT, intervenor: Constantine L. Trela, Lisa A. Schneider, Sidley Austin Brown & Wood, Chicago, IL.

For WARNER-LAMBERT, intervenor: Lawrence F. Scinto, Fitzpatrick, Cella, Harper and Scinto, New York, NY.

For GILLETTE COMPANY, THE, defendant: John E. Nathan, Edward J. DeFranco, Annemarie Hassett, Kevin P B Johnson, Fish & Neave, New York, NY.

For GILLETTE COMPANY, THE, defendant: Steven P. Mandell, Catherine Ann Van Horn, David Seth Argentar, Stephen J. Rosenfeld, Keith E Allen, Mandell, Menkes & Surdyk, LLC, Chicago, IL.

For GILLETTE COMPANY, THE, counter-claimant: John E. Nathan, Edward J. DeFranco, Annemarie Hassett, Kevin P B Johnson, Fish & Neave, New York, NY.

For GILLETTE COMPANY, THE, counter-claimant: Steven P. Mandell, Catherine Ann Van Horn, David Seth Argentar, Stephen J. Rosenfeld, Keith E Allen, Mandell, Menkes & Surdyk, LLC, Chicago, IL.

For SYNDIA CORPORATION, [*2] counter-defendant: Peter Charles McCabe, III, Paul N. Monnin, Danielle Ann Rand, Winston & Strawn, Chicago, IL.

**JUDGES:** GERALDINE SOAT BROWN, United States Magistrate Judge. Judge Joan Humphrey Lefkow.

**OPINION BY:** GERALDINE SOAT BROWN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

The District Judge has referred to this Court for ruling two parts of a three-part motion filed by plaintiff Syndia Corp. ("Syndia") following a jury trial in this matter that resulted in a verdict in favor of Syndia and against defendant Gillette Company ("Gillette"). Specifically, the motions referred are Syndia's Motion to Compel Discovery and for an Accounting of Post 3/31/02 Infringing Sales. [Dkt 267-2 and 267-3.] For the reasons set out herein, both of those motions are DENIED.

**PROCEDURAL BACKGROUND**

A status hearing was held following the referral of the motions. Because Syndia's motion to compel did not refer specifically to any particular discovery requests that it was seeking to enforce, Syndia was directed to supplement its motion to specify those discovery requests. Syndia filed its Supplement [dkt 276], Gillette filed a response in opposition [*3] to the motions [dkt 279], and Syndia filed a reply in support [dkt 290]. Oral argument

was held on August 15, 2002, and the motions were taken under advisement.

In the oral argument on the motions, counsel for both parties referred to various procedural maneuvers before the District Judge. It appears that there are currently pending before the District Judge at least the following motions: motions by Syndia for a permanent injunction [dkt 265], to amend the judgment entered on June 14, 2002 to add prejudgment interest [dkt 266], and to amend the judgment to include a royalty on Gillette's infringing sales from April 1, 2002 to June 14, 2002; and a motion by Gillette for judgment as a matter of law or, alternatively, for a new trial. [Dkt 252.] Syndia's present motions must be considered in light of those proceedings.

Syndia's Motion for an Accounting of Post 3/31/02 Infringing Sales:

Sales data through the date of judgment.

Syndia's motion states that in the course of pre-trial discovery Gillette produced materials evidencing sales, revenues and profitability of its Mach3, Venus and Mach3 Turbo products through March 31, 2002, reflecting sales through that date [*4] of 1,401,688 units. Syndia argues that the jury verdict of $ 10,000,000 reflected a royalty on those units of $ .007 per unit, and that Syndia has a right to a judgment amount reflecting that royalty on all infringing units sold, at least through the date of judgment. Thus, Syndia seeks information about the number of units sold from April 1, 2002 through June 14, 2002, in connection with its motion that the judgment be amended, presumably to add to the verdict damages figured at the rate of $ .007 for each of the additional units sold. Gillette argues that the verdict amount reflected damages through June 14, 2002, not dependant on evidence of the number sold. (Gillette's Opp'n. P 2.)

Whether or not the judgment should be amended is a matter for the District Judge. However, it is apparent that Syndia is entitled at least to discovery about the number of units of Mach3, Venus and Mach3 Turbo products sold up to the date of judgment. It appears uncontested that those units made use of the process that the jury determined to be infringing. Without conceding that the judgment should be amended, Gillette apparently concedes Syndia's right to that discovery and represents that it agrees [*5] to produce sales data for the period between April 1, 2002 and June 30, 2002. *(Id.)* [1] Therefore, Syndia's motion to compel that sales data is denied as moot. In the event that Gillette fails to live up to its agreement, Syndia may seek to enforce that agreement.

---

1 At oral argument, Gillette's counsel advised the Court that sales figures could not practicably be produced for a period ending in the middle of the month. Therefore, information to the end of June will be produced.

Syndia's Motion for an Accounting of Post 3/31/02 Infringing Sales:

Sales data post-June 14, 2002; and Syndia's Motion to Compel Discovery.

Information about sales after the judgment, however, is on a different footing. Syndia cites *Fed. R. Civ. P. 26(e)*, which includes the obligation of a party to supplement or correct a disclosure or discovery response under certain circumstances. However, Syndia has cited no authority, nor has this Court's research disclosed any precedent, holding that the obligation imposed by *Rule 26(e)* [*6] continues after judgment with respect to information about events that occur after the judgment.

Syndia also cites *Mikohn Gaming Corp. v Acres Gaming, Inc., CV-S-97-1383, 2001 U.S. Dist. LEXIS 23416* (D. Nev. Aug 1, 2001) as Syndia's authority for its right to a post-judgment accounting. (Syndia's Mot. to Compel at 2; Syndia's Suppl. at 2.) In *Mikohn,* the patent holder prevailed in a jury trial on the issue of patent infringement, and the jury awarded $ 1.5 million in damages against the infringer. In the opinion cited by Syndia, the court denied the infringer's post-trial motions, and granted the patent holder's motions for a prejudgment interest, for an injunction, and for an accounting of sales. The court observed that *35 U.S.C. § 284* does not specifically provide for an accounting as a remedy separate from damages. That section states only that a patent holder is entitled to damages to compensate for the infringement, which does not preclude the possibility of an accounting. *2001 U.S. Dist. LEXIS 23416* at *62. The court ordered the accounting because the verdict (which was rendered in March 2001) was based on data through [*7] June 1999. The jury had been instructed to award only a reasonable royalty through June 1999, and was further instructed that the court would decide whether the damages would be brought forward after that date. *Id.* at *56. The court reviewed several opinions cited by the parties and concluded that:

> The parties have not cited to, nor has the court located, any cases discussing the policy behind granting an accounting after judgment in patent actions. However, accountings appear to be standard practice, based upon the authorities presented.

Case 3:09-cv-00620-REP Document 804-29 Filed 09/19/11 Page 13 of 14 PageID# 26369

Page 3
2002 U.S. Dist. LEXIS 16350, *

*Id.* at *52, citing *Padco, Inc. v. Newell Cos., Inc.,* 1988 U.S. Dist. LEXIS 17384, 1988 WL 187504 (E.D.Wis. 1988), *Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.,* 609 F. Supp. 1325 (E.D. Penn. 1985), and *Technology for Energy Corp. v. Computational Sys., Inc.,* 1992 WL 535791 (E.D. Tenn. 1992). Thus, the court granted the motion for an accounting so that the patent holder would be provided with "information to calculate a reasonable royalty for the entire period of infringement." *2001 U.S. Dist. LEXIS 23416* at *59. In the same order the Court entered, and stayed, [*8] a permanent injunction against the infringer's making or selling its "MoneyTime system." *Id.* at **65-66. However, it appears that a post-judgment accounting is not as standard as the court in *Mikohn* concluded. *See, e.g., Lucent Technologies, Inc. v. Newbridge Networks Corp.,* 168 F. Supp. 2d 181, 272 (D. Del. 2001)(denying post-judgment accounting to adjust damages to date of final judgment).

This Court has reviewed the cases cited by the *Mikohn* court, and finds the present posture of this case to be significantly different. In those cases, the accounting was granted as a final windup of damages either after or at the same time as the ruling on the post-trial motions. The limited purpose of the accounting was to calculate the sales of the product utilizing the infringing process after the entry of the judgment and before the entry of the permanent injunction. In this case, the post-trial motions are still pending and have not even been fully briefed as of this date.

More significantly, the purpose of Syndia's request for an accounting and its motion to compel discovery is not simply to calculate additional damages on products that admittedly employ a process [*9] that has been found to be infringing. In its Supplement, Syndia cited discovery requests directed to sales, but also cited discovery requests seeking information about products Gillette is making or contemplating making using a diamond coating, and manufacturing and design specifications of the Mach3 and Venus brands of razor blades as well as all other Gillette products that incorporate synthetic diamond or diamond-like coating technology. (Syndia's Supplement at 3-4.) Syndia argues that a press statement issued by Gillette following the verdict, in which Gillette's representative stated that Gillette can make a minor change in its production process to take it outside the claim of the patents, generates a right of Syndia's part to compel supplemental responses to that discovery. Syndia states:

> Given Gillette's assertion that its current products are made using a process different from the one found by the jury to be infringing its patents, Syndia is entitled to test Gillette's assertion by virtue of its motion for an "accounting" of post-verdict infringing sales. The discovery sought by Syndia obviously will establish what process Gillette is currently using to make [*10] its products and whether sales of these products are relevant to Syndia's request for an accounting.

(Syndia's Reply P 3 (emphasis in original)).

It is apparent that what Syndia seeks here is more than just an accounting as traditionally understood, but rather discovery into whether changes Gillette claims to have made in the process of manufacturing certain of its products eliminate the infringement of Syndia's patents. Syndia states that "in order to conduct an appropriate accounting of post-3/31/02 sales, this Court must determine if Gillette's 'current' products are indeed made by the same (or a 'different') method." (*Id.* at P 5.) This appears to have the potential for another extended factual and technical dispute.

Nothing in the *Mikohn* case or any of the precedents cited therein suggests that a post-judgment accounting opens the door for discovery on factual and technical matters. Nothing in those cases suggests that an accounting is a substitute for a contempt proceeding following the entry of an injunction or another infringement suit. Permitting discovery about allegedly-changed processes in the name of a post-judgment accounting is particularly inappropriate [*11] here where not only the right to a permanent injunction but also the scope of such an injunction has not been determined.[2]

> 2 At oral argument, Syndia's counsel pointed out that in its motion for a permanent injunction, Syndia is seeking an injunction preventing Gillette from using the DLC coating with respect to the Mach3, Venus, and Mach3 Turbo razor blade products, as well as any additional products Gillette may make in the future which are not colorably different from those products. (Syndia's Mem. Supp. Mot. Permanent Inj. at 8.) Gillette's response has not yet been filed, and is due on September 18, 2002. However, given the history of this case, it would be surprising if Gillette agreed to the scope of Syndia's proposed injunction.

Contrary to Syndia's concern expressed at oral argument, this does not mean that Syndia has to take Gillette's word that Gillette's current process does not infringe Syndia's patent. In addition to bringing another action for infringement, a patent holder who obtains an injunction [*12] may bring an action for contempt, and "the advantages of proceeding on a motion to hold his

adversary in contempt are substantial." *KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985).

> Contempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial, although the movant bears the heavy burden of proving violation by clear and convincing evidence. If violation is found, the contemnor may be punished by fine (payable to the patent owner) and imprisonment, even in civil contempt.

*Id.* (citations omitted).

However, the court in the *KSM Fastening Systems* case (a case cited by Syndia in its Memorandum in Support of its Motion for a Permanent Injunction at 8, and in its Reply Brief at 6) expressed the need for caution in proceeding in the summary manner appropriate in contempt cases when there is a fair ground of doubt because of differences between the adjudged and accused devices. 776 F.2d at 1524. "[A] party may seek relief by way of contempt proceedings only if the issues are appropriate for summary disposition. [*13] " *Id. at 1531.* A fortiori, it seems particularly unwise to engage in discovery under the guise of an "accounting" to determine whether an allegedly-changed product is infringing before the post-trial motions have been decided, including whether an injunction shall be entered and, if so, its scope.

In support of its motion to compel discovery Syndia also cites *Viskase Corp. v. American Nat'l Can Co.*, 979 F. Supp. 697, 699-703 (N.D. Ill. 1997)(Bucklo, J.), and *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, IP 96-1718- CH/K, 2002 WL 1801525, 2002 U.S. Dist. LEXIS 4000 (S.D. Ind. Feb. 13, 2002), as demonstrating that the court may exercise its discretion to order discovery during the pendency of post-trial motions. (Syndia's Reply at 5.) However, both of those cases presented extraordinary situations in which the court allowed post-judgment discovery because there was evidence of false testimony by an expert witness. In both cases, the false testimony tainted the verdict, justifying a new trial at least on the issues as to which the expert testified. *Viskase*, 979 F. Supp. at 704; *Cardiac Pacemakers*, 2002 U.S. Dist. LEXIS 4000, 2002 WL 1801525 [*14] at **48, 63-64. The Federal Circuit, affirming in part the resulting retrial in the *Viskase* case, called the post-trial discovery "an unusual event, flowing from new information ...." 261 F.3d 1316, 1324 (Fed. Cir. 2001).

There is no suggestion here of any false testimony that would create the grounds for a new trial. Syndia argues that the District Judge will want this additional discovery undertaken in connection with the scope of the proposed injunction. (Syndia's Reply at 5-6.) However, it does not appear that reopening discovery about arguably new or revised technology would be any more relevant to the scope of an injunction in this case than it would be in any other patent case, and Syndia has cited no authority suggesting that reopened discovery is customary in patent cases. Indeed, the absence of such authority suggests the opposite, and supports the common sense concept that the scope of any injunction entered on the basis of the jury's verdict should be based on the facts and issues presented to the jury. This, along with the caution of the Federal Circuit in the *KSM Fastening Systems* case against using summary proceedings to determine whether a modified [*15] device is infringing, require that Syndia's motion to compel discovery be denied.

For the foregoing reasons, Syndia's motion for an accounting of post 3/31/02 infringing sales, to the extent it is not moot as discussed above, is denied; and Syndia's motion to compel discovery is denied.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**

United States Magistrate Judge

DATED: August 29, 2002