# EXHIBIT 1

## 515

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
 2                   RICHMOND DIVISION
 3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                        :
 4    ePLUS, INC.,              :
                                :
 5           Plaintiff,          :
      v.                         : Civil Action
 6                               : No. 3:09CV620
      LAWSON SOFTWARE, INC.,     :
 7                               : January 6, 2011
             Defendant.          :
 8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:
 9
10
11        COMPLETE TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE ROBERT E. PAYNE
12        UNITED STATES DISTRICT JUDGE, AND A JURY
13
14
15   APPEARANCES:
16   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
17   Michael T. Strapp, Esq.
     David M. Young, Esq.
18   GOODWIN PROCTOR
     901 New York Avenue, NW
19   Washington, D.C.  20001
20   Craig T. Merritt, Esq.
     CHRISTIAN & BARTON
21   909 E. Main Street, Suite 1200
     Richmond, VA  23219-3095
22
            Counsel for the plaintiff ePlus
23
24
              DIANE J. DAFFRON, RPR
25            OFFICIAL COURT REPORTER
             UNITED STATES DISTRICT COURT
```

## 516

```
 1   APPEARANCES:  (Continuing)
 2   Daniel W. McDonald, Esq.
     Kirstin L. Stoll-DeBell, Esq.
 3   William D. Schultz, Esq.
     MERCHANT & GOULD
 4   3200 IDS Center
     80 South Eighth Street
 5   Minneapolis, MN  55402-2215
 6   Dabney J. Carr, IV, Esq.
     TROUTMAN SANDERS
 7   Troutman Sanders Building
     1001 Haxall Point
 8   P.O. Box 1122
     Richmond, VA  23218-1122
 9
           Counsel for the defendant Lawson Software.
10
```

## 517

```
 1         (The proceedings in this matter commenced at
 2    9:20 a.m.)
 3         THE CLERK:  Civil Action No. 3:09CV00620,
 4    ePlus, Incorporated v. Lawson Software, Incorporated.
 5    Mr. Scott L. Robertson, Mr. Craig T. Merritt,
 6    Ms. Jennifer A. Albert, Mr. Michael T. Strapp, and Mr.
 7    David M. Young represent the plaintiff.
 8         Mr. Daniel W. McDaniel, Mr. Dabney J. Carr,
 9    IV, Ms. Kirstin L. Stoll-DeBell, and Mr. William D.
10    Schultz represent the defendant.
11         Are counsel ready to proceed?
12         MR. ROBERTSON:  Yes, Your Honor.
13         MR. McDONALD:  Yes, Your Honor.
14         THE COURT:  All right.  Thank you very much.
15         I apologize for keeping you-all waiting this
16    morning.  I had a mechanical malfunction that I needed
17    to attend to, and I'm not very mechanically oriented.
18         All right, Mr. Robertson.
19         Dr. Weaver, I remind you you're under the
20    same oath which you took yesterday.
21         THE WITNESS:  Yes, Your Honor.
22    BY MR. ROBERTSON:  (Continuing)
23    Q   Good morning, Dr. Weaver.
24    A   Good morning.
25    Q   If we could have Plaintiff's Exhibit No. 1 back up
```

## 518

```
 1    on the screen again, the '683 patent, the cover page
 2    here.
 3         Dr. Weaver, the jurors have seen this exhibit now
 4    several times and it's in their jury notebooks.  This
 5    is at tab 2.  Can you just tell us what is the title
 6    of the patent?
 7    A   Electronic Sourcing System and Method.
 8    Q   Has the Court defined the term "electronic
 9    sourcing system"?
10    A   Yes, it has.
11    Q   What's your understanding as to what that
12    construction is?
13    A   In the glossary of claim terms, the "electronic
14    sourcing system" has been defined by the Court to be
15    an electronic system for use by a prospective buyer to
16    locate and find items to purchase from sources,
17    suppliers or vendors.
18    Q   What is your understanding of what a source is,
19    sir?
20    A   A source would be a vendor or a manufacturer or a
21    distributor.
22    Q   In the Court's construction of the claim term
23    "catalog" or "product catalog," how does the Court
24    define what a vendor can be?
25    A   The vendor, in the Court's construction, a vendor
```

**631**

1  A  Yes, you can.
2  Q  Now that we've gone through some of the various -- and
3  overviewed some of the various different Lawson Software
4  modules that can be used to implement these electronic
5  procurement systems, do you have any demonstrations that you'd
6  like to do to show the Lawson system in operation?
7  A  First demonstration would show the category search
8  feature.
9  Q  And you have this, these demonstrations, as I understand,
10  both in captured screen shots -- is that right -- captured
11  software and also in hard copies?
12  A  That's right.
13     MR. ROBERTSON:  Your Honor, I'm going to be offering
14  both those for ease of review at the appropriate time.
15  Q  How were you able to capture a demonstration of the system
16  using the Lawson Software?
17  A  So Lawson provided a demonstration system that included
18  these modules that we've been talking about, and it runs on a
19  laptop.  So we used -- we practiced to get the demo correct in
20  the sense that it showed what I wanted it to show, and then we
21  used software that was present on the machine that we were
22  given that did a realtime recording of whatever was on the
23  screen.  So it's a realtime movie capture.
24  Q  Who provided that software?
25  A  That was provided by Lawson on the machine we got.  So as

**632**

1  we did these demonstrations, we used that Lawson-provided
2  software to create a realtime movie which we saved and which
3  now we're going to play back.
4  Q  Did that laptop come with item data?
5  A  Well, it came with some item data which turns out to be an
6  issue.  The database that we were provided from Lawson was
7  actually pretty sparse, so, yes, it had some items in there,
8  but it wasn't fleshed out like a production system would be.
9  Q  In order to demonstrate some of the capabilities and
10  functionality of, say, comparison shopping or using the UNSPSC
11  codes to identify goods that are similar, identical, or
12  generally equivalent, do you need data, item data in the
13  database to demonstrate that?
14  A  Absolutely.
15  Q  And if you don't have, for example, a sufficient number of
16  black pens to compare, or if you have only have one black pen
17  and you're searching for black pens, can you demonstrate some
18  of the functionality of the system if that item data is not
19  there?
20  A  That's right.  Without equivalent items, there are no
21  equivalent items to be found.
22  Q  So were you aware that a request was made to Lawson to
23  provide additional data on this demonstration laptop that they
24  gave us so that we could demonstrate the functionality of the
25  system?

**633**

1  A  Yes, I'm aware of that.
2  Q  And what was your understanding as to what the outcome of
3  that was when the requests were made?
4  A  Well, I don't know the details.  What I know is that
5  eventually a Lawson consultant was hired to help load some
6  additional data.  Even so, three of the demonstrations that I'm
7  going to give were on the system as provided by Lawson.  Only
8  one needed additional data loaded.
9  Q  And a Lawson employee or personnel worked with ePlus
10  personnel to help them load additional data -- excuse me.
11  Worked with ePlus's counsel to load additional data on this
12  laptop for that one presentation?
13  A  That's my understanding.
14  Q  Now, based on the documents you've reviewed and based on
15  testimony reviewed, do these Lawson accused procurement systems
16  typically come with lots of item data?
17  A  Well, when the database is loaded, the witnesses said that
18  there are typically hundreds of catalogs and thousands,
19  sometimes tens of thousands of items.
20  Q  So with that kind of robust data in the database, it's
21  easier to show the full functionality of the system; is that
22  fair to say?
23  A  That's fair to say.  However, we're going to do it.
24  Q  All right.  Then as I understand it, three of the four
25  demonstrations were just as the laptop was provided to counsel

**634**

1  for ePlus?
2  A  Yeah.  We could say out of the box, the box being the
3  laptop.
4  Q  One being with the additional data that Lawson assisted
5  ePlus's counsel in loading; is that right?
6  A  That's correct.
7  Q  The first demonstration you have, what do you want to
8  illustrate?
9  A  I want to illustrate the category search in which we can
10  find generally equivalent items and then we can find other
11  items and build a requisition, and then we can build one or
12  more purchase orders from that requisition.
13  Q  Okay.  And did you direct the preparation of this
14  demonstration?
15  A  Yes, I did.
16  Q  All right.  If we can, before we do that, just so we can
17  orient the jury as to what they're going to see, can we see
18  claim three and claim 28 side by side on the screen?
19     Now, both these claims, claim three being the system claim
20  and claim 28 being a method claim, has this element concerning
21  converting data relating to a selected matching item and
22  associated source to data relating to an item in a different
23  source; do you see that?
24  A  Yes.  That's the sixth element.
25  Q  The Judge has construed both these claim terms; correct?

635

1  A   Yes.
2  Q   And I'm not going to go through it again because we read
3  them at one point, but the jury has them in their glossary.
4  And, of course, all the other elements need to be there as
5  well. Are we going to be seeing, as we walk through this
6  demonstration, the existence of these other elements that you
7  described?
8  A   Yes.
9  Q   Why don't you go ahead.
10  A   All right. So Mike is going to play this movie, and
11  you'll see there are some waits involved in here, but that's
12  just because it's recording exactly what was seen.
13  Q   Stop here for a second and let me ask you a question here.
14  There's a box in the lower right-hand corner. Is that part of
15  the Lawson system or not part of the Lawson system?
16  A   That was part of the system provided, and it's part of the
17  realtime capturing software, so you can -- what's showing --
18  can you see this? So what you are seeing right now is a clock
19  that says we're 12.4 seconds into the movie, and then there's a
20  button that if you were on the real laptop, you could click it
21  and it would toggle from pause to play to pause to play. We've
22  chosen just to let it play.
23  Q   If we wanted to --
24      MR. McDONALD: Your Honor, could I get a
25  clarification on which exhibit, and is there a paper version of

636

1  this one so we know what you are using?
2      MR. ROBERTSON: It's going to be Plaintiff's
3  Exhibit 376 is the video, and Plaintiff's Exhibit 374 would be
4  the hard copy paper capture of the screen shots.
5  Q   So we're clear, this is like the video playback? We can
6  do the stop, forward, reverse by using these tools if we need
7  to go back at any time?
8  A   Well, these tools are for the original capture. Mike and
9  I are going to do it manually. I'm going to say stop and
10  continue and probably say go back.
11  Q   We may have to go back because it moves quickly sometimes?
12  A   Sometimes it's too quick, and sometimes it's too slow.
13  Right now we're going to start with a go back, so go back to
14  the beginning.
15      All right, so as the laptop screen exists, first I'm going
16  to bring up the browser. I'm going to use Internet Explorer,
17  so here we go. Stop. Now, again, I'm just going to tell you,
18  you're going to see some times when not much is happening, but
19  this is just a true-to-life recording of exactly what was on
20  the screen at the time.
21      Okay, so in your ordinary Internet Explorer browser, I've
22  clicked on the favorites tab, and one of the favorites that
23  I've saved is the Lawson portal.
24  Q   Is this an example of the drop-down menu you were talking
25  about earlier?

637

1  A   Sure. Exactly. So I'm going to go down and click on
2  Lawson portal. Continue. Now, this is one of those waits.
3  Okay. We get to the Lawson log-in screen. So we put in the
4  user name and password and then click on log in. This will be
5  one of those longer waits. You can see the time clicking away
6  in the bottom right-hand corner.
7      Stop. So now we are at the Lawson home page, and if you
8  are familiar with browsers, you see up here, there is the URL
9  that we're using. LSF server, that's Lawson server foundation,
10  that's what we talked about before. Server.corpnet.lawson.com.
11  So we're looking at the portal.
12  Q   All right, you used the term URL. Can you explain to the
13  jurors what you mean by that?
14  A   Falling back into my vernacular. Universal resource
15  locator, so commonly called a web address. Okay, so we can
16  continue. Top. Stop. That was stop, not top. Here's another
17  one of those drop-down menus. So on the left-hand side, I have
18  a menu. One of the top level choices was requisition self
19  service. So I'm going into the RSS module, and I'm picking one
20  of the activities that is there. This is one of the
21  capabilities. All right, so I'm going to click on the shopping
22  selection. Continue.
23      Stop. So, now we come to the shopping screen. Again, if
24  you look up here at the top, you will see there are some
25  choices that can be made. These are, again, top levels of what

638

1  will be drop-down menus. I'm going to go click on this
2  find/shop, and that's going to give me additional choices.
3  Continue.
4      Stop. So here are the choices. I can search the
5  catalogs, I can do a Punchout. I'm going to do that later.
6  Down there at the bottom is categories. So I'm going to go
7  down and click on categories, because I want to do a category
8  search. Continue.
9      Stop. Now, remember with the UNSPSC codes, we said that
10  there were four levels: Segment, family, class, and commodity.
11  So what is showing here in the category tab, the category
12  window, is the first three of a small set of these top level
13  categories, these segment categories. So, remember, there
14  could have been a hundred of them, 00 to 99, but here, for
15  clarity, everyone exchanges those digits for names so that they
16  have -- they make sense to humans.
17      So my top choice there, live plant and animal material and
18  accessories and supplies, that's one of the segment codes.
19  Now, I don't know what code it is, 23, 99, I don't know. It
20  doesn't matter. It is representative of what is in this very
21  broad segment. So I'm going to scroll down and show you the
22  others, and then I'm going to come back and pick one in the
23  middle. Continue. See, we only had about six there. Stop.
24  Q   Let me ask you a question about that then. There are only
25  six here to illustrate the functionality of it. Does the

**639**

1  Lawson requisition self service you are using here have the
2  capability to have more?
3  A  Absolutely.
4  Q  How many could it have?
5  A  It could be a hundred different segments. Each of those
6  segments could have a hundred families. They could each have a
7  hundred classes. They could each have a hundred commodities.
8  Q  I noticed you clicked on one of these segments?
9  A  The one I clicked there in the middle is communications
10 and computer equipment and peripherals and components and
11 supplies. So you can see how broad a category that segment
12 name represents. So what we're going to do now is drill down
13 to become finer-grained.
14     So having clicked on that top level segment -- continue --
15 stop. So underneath the segment is the family. Now, here we
16 show that there's very little data in the system we were
17 provided. Whereas there could be a hundred different family
18 names, there's only one. So due to the paucity of data here,
19 I'm going to click the only possibility I've got.
20     All right, so I've done the segment. This is the family.
21 I'm going to click on the family name, hardware and
22 accessories. Continue.
23     Stop. So now we're down to the class. There could have
24 been a hundred classes, but, again, because there's so little
25 data here, there's only two. So as I look at the class, I have

**640**

1  a choice of computers or monitors and displays. So I'm going
2  to go for computers. Continue.
3     Stop. Now I'm down to the commodity level. The
4  commodities, there should be a lot of them, but because of the
5  paucity of data here, we have only one commodity category,
6  notebook computers. So I'll click the only choice I've got,
7  and then that will list the actual item data that is underneath
8  the notebook computers commodity code. Continue.
9     Stop. So now we see all of the items in the database that
10 have the UNSPSC code for notebook computers, and there's only
11 two, okay? Small database.
12 Q  So I understand, for the segments, there could have been
13 thousands, for families there have been --
14 A  Hundreds.
15 Q  Hundreds. What is the next level?
16 A  So you start with segment.
17 Q  Class?
18 A  Could be a hundred. Then family -- each of those segments
19 could have a hundred, and then each of those families could
20 have a hundred classes, and each of the classes could have a
21 hundred commodities.
22 Q  Those commodities, you could have thousands of items?
23 A  Right. Once you get down to the commodity level, you have
24 unlimited number of items that map to that code. Here we have
25 two. Okay, it's going to do the job, though.

**641**

1  All right, so I'm going to look at these two computers.
2  You can see the first line item there is an IBM ThinkPad, and
3  it has an item number of 6001. The one below it is a Dell
4  Inspiron 8000. It has an item number of 6020. So I'm going to
5  go click on the item number, and that's going to get us a
6  description of this item.
7  Q  Before you do that, Doctor, does it have unit measure
8  category?
9  A  Right. Under UOM, you see each.
10 Q  Does it have cost information?
11 A  Under cost, the ThinkPad is 2,500. The Dell is 2,000.
12 Q  Does it have description of the item?
13 A  It has a description, IBM ThinkPad T20 or Dell Inspiron
14 8000 with Intel Pentium processors.
15 Q  You indicated it had an item number?
16 A  There is an item number.
17 Q  And it even provides for the Intel Pentium or the Dell
18 Inspiron, the manufacturer?
19 A  I just covered up the description. Yeah. So not only do
20 we have in this case the name of the computer, Dell Inspiron
21 8000, we also have a little more descriptive information, that
22 it's an Intel Pentium III processor.
23     Okay. We'll continue. Oh, and stop. I should also note
24 while we're here that over here is the Dell shopping cart, and
25 it's obviously empty. It's supposed to be empty --

**642**

1  Q  I think you misspoke. I think you said the Dell shopping
2  cart.
3  A  I misspoke. This is the Lawson shopping cart right here
4  where it says my cart. And so as I select items, they will
5  show up in the shopping cart, but we'll see that. All right,
6  so now I'm READY to drill down on the ThinkPad. Continue.
7     So I click on that item number. Stop. And this retrieves
8  the data in the item master and vendor item table database and
9  tells me about the item. So we have an item number, we have a
10 description, a unit of measure, a cost.
11    We have a source vendor ID, 118, and a source vendor name,
12 Office Max. So from observing this information that is
13 produced, I know that this IBM ThinkPad has a vendor source of
14 Office Max.
15 Q  Let me stop and ask a question, Doctor. There's a box
16 there that says image not available. Does this RSS application
17 have the ability to load images of the items offered for sale?
18 A  It does, and the documentation encourages one to do so.
19 But, again, because of the paucity of data, we didn't have any
20 item images in the data we were given.
21 Q  This is how it was provided to us; it could have been
22 provided with an image, because the software permits you to do
23 that?
24 A  Right. It could have been chock-full of images, but it
25 wasn't. Okay, so I'm going to scroll down and up so you see

### Page 643

1  all of the information that was presented to me as the user of
2  the RSS system, and then we'll go back and look at the other
3  Dell computer. So continue. So now I'm going to add that to
4  the cart.
5      Stop. So here in the Lawson shopping cart, I have my IBM
6  ThinkPad T20, item number 6001; quantity, one; unit of measure,
7  each; cost, $2,500. So I'm going to park this item in the
8  shopping cart, but then I'm going to go back and look at the
9  equivalent items, equivalent in that they had the same UNSPSC
10 code.
11     All right, so we'll continue, and I'll click on this back
12 button over here. So here -- stop. Here is that second line
13 item as we saw before, the Dell Inspiron. So I'm clicking on
14 its item number, and we'll drill down on that and see what
15 information is provided there. Continue.
16     Stop. So similarly to what we saw before, this is the
17 other machine. It's an item -- I wiped it out. Item 6020, a
18 Dell Inspiron 8000 with Pentium III processor, a unit of
19 measure each, and a cost of 2,000. But it has a source vendor,
20 ID code of 124, and a source vendor name of Diablo.
21     So the first computer, the ThinkPad was coming from the
22 Office Max catalog. This is coming from the Diablo catalog.
23 So I stare at that, and I think which of these machines is a
24 better choice for me. I'm cheap, so I'm going to go with this
25 one. So I will add this one to the shopping cart, Lawson

### Page 644

1  shopping cart, and delete the other one. So continue.
2      Okay, now stop. So now I have both notebook computers in
3  the Lawson shopping cart, and I'm going to go up here to this X
4  and delete the ThinkPad. Continue.
5      And like all good software, it asks me, do you really want
6  to delete that, and I say, yes. Okay. Stop. So at this
7  point, I have done the UNSPSC code, found two generally
8  equivalent notebook computers, chose one, added it to the
9  shopping cart, added the other one to the shopping cart,
10 deleted the first one.
11     So I've been able to convert one item from one source, the
12 ThinkPad from Office Max, into an equivalent item from another
13 source, the Dell Inspiron here, and having done that, I'm now
14 going to go back and pick another category and find another
15 item to add so that I'll have multiple items in my shopping
16 cart.
17     Okay, so I'm backed out -- because I did that drop-down
18 menu to categories, I'm back at the highest level, the segment
19 level. So continue. Scroll down. Stop. So this time my
20 segment level is laboratory and measuring and observing and
21 testing equipment. Continue. Stop. My family, again, there's
22 only two here, laboratory and scientific equipment, or
23 measuring or observing, or testing instruments and accessories.
24 Continue.
25     So I pick at my family, laboratory and scientific

### Page 645

1  equipment. Stop. Oh, I might also note that the hierarchy
2  tree is being kept for me up here at the top. Here's my
3  segment level, here's my family level. As soon as I click here
4  on my class level, it will appear here and so on.
5      All right, so I'm about to click on laboratory,
6  environmental conditioning equipment for my third category.
7  Continue.
8      Stop. Okay, now, again, we're down to commodities. There
9  could be a hundred of these, but there's not. There's just
10 one. There's one commodity called glove boxes. So when I
11 click on this, I will see all the items in the item master
12 database and the vendor item table that have been encoded with
13 the UNSPSC code for glove boxes. Continue.
14     Stop. Once again, the database is small, so there's only
15 two entries under the commodity heading. Both of these are
16 boxes of sterile surgical gloves, so I'm going to pick one and
17 add that to my Lawson shopping cart. Continue. I'm going to
18 look at it first. Smart shopper.
19     Stop. All right. So I just did a drill-down as I did
20 with the computers. So you see we have an item number, 1036,
21 we have a description, gloves, sterile surgical, size seven. A
22 unit of measure. Here it's case, cost, 400 bucks, source
23 vendor. The ID number is 117, and the source vendor name is
24 Baxter Healthcare.
25     Continue. So scroll down and back up, and add that to my

### Page 646

1  shopping cart. So here it is, gloves at the top, Dell computer
2  at the bottom. Now stop. I have finished shopping, so I have
3  the information from the database now in the shopping cart. My
4  next goal is to create a requisition. Then I'll need to get
5  that approved, and then I'll need to get that turned into
6  purchase orders.
7      So since the gloves and the Dell came from different
8  vendors, I will need two POs, one to each of those vendors, so
9  I'm going to click on checkout. Continue. All right, saved.
10     Stop. So it gives it a number, 911. So when I come into
11 this system next, I'm going to come in as a manager, and I'm
12 going to look for this order 911 that is existing in the
13 system. I'm going to find it among all other orders, and then
14 I'm going to get it approved. All right, continue. Status
15 needs approval.
16     All right, back to the portal home page, and now I'm going
17 to come in as a manager. Here are some requisitions, but 911
18 is not among them. Stop. Here is the requisition 911, and
19 that's the one I need to have approved. Continue.
20     Stop. So here we pull up the requisition, you see right
21 there, and we have the two line items, the Dell Inspiron and
22 the case of gloves. So I've logged in now as the manager when
23 I clicked on manager, and so here are the actions I can take:
24 Approve, reject, or unrelease, so I'm going to approve these.
25 Continue.

## Page 647

1  Okay, approve, approve action to be taken. Okay. Work
2  object. Taken, all right. Stop. So at this point, it looks
3  like -- superficially it looks like I'm done. It looks like
4  I've got it approved, but in this particular example, there
5  were additional business logic rules that said, aha, you have a
6  computer in there. That's a technical thing, so you need
7  technical approval in addition to manager's approval. Okay,
8  we'll go get that, too, so back I go as a manager. Continue.
9      Approve technical items, find 911. There it is. Stop.
10  And so now what I'm going to be approving is the fact that it's
11  got a computer in there. Continue.
12     Stop. While we're here, we may as well show, to show that
13  I'm doing the technical approval, we have this item detailed
14  down here that says it's the Dell computer from Diablo that I'm
15  approving. So I go back up to approve it.
16  Q  Let me stop you for a second, Doctor, and ask you, we've
17  been seeing a number -- some of the features that we're going
18  to be talking about in the claims that were necessary about the
19  product catalog and selecting product catalogs and doing
20  comparison shopping using UNSPSC codes.
21     MR. McDONALD: I object to the form, Your Honor.
22  That wasn't a question.
23  Q  Let me ask this question: This approval process, is this
24  part of the claimed elements that are being asserted here?
25  A  No.

## Page 648

1  Q  Because there's an approval process which is an additional
2  step or additional feature that's there beyond the claim
3  elements, does that render a system non-infringing?
4  A  No.
5  Q  Having this approval process is irrelevant to the analysis
6  when the jury needs to go back and determine whether or not the
7  functionality either satisfies a system or method?
8  A  That's correct.
9  Q  Thank you.
10  A  Okay, so we're ready now to do the technical approval.
11  Continue. So I'll click approval, approval action taken. Work
12  object dispatched. Stop. Now, you heard me say earlier that
13  in the purchase order module, there's a program called PO 100
14  that turns requisitions into purchase orders. So I'm going to
15  run that program, PO 100, and I'm going to tell it which
16  requisition to go get. You might -- you may or may not recall
17  that I said that information gets cached in the system and
18  retrieved.
19     This is retrieving the requisition data by the purchase
20  order module, and then we'll see it generate POs. Okay, so now
21  we're ready to run the PO 100 program. Continue.
22     Stop. So here is the opening screen for the PO 100
23  program. So I'm going to fill in job name and job description,
24  I'm going to put in three pieces of information that the system
25  requires. Here this has -- this part has nothing to do with

## Page 649

1  infringing. This is just how you make the system work, and
2  then we'll see it -- turn the requisition or choose the
3  requisition and then we'll see it.
4     We've chosen the requisition, or have we? No, we're about
5  to because I'm going to give it a name, and then we'll see it
6  generate POs.
7     So I'll call this job RQ911, give it a name, requisition
8  number 911. Default delivery is five days. Release the
9  purchase orders, yes. Choose an option for exception reports.
10  There are some other boxes that are available. I don't need
11  any of these. I'll go back to the main tab, and, okay, that's
12  all I need to do, so I add this. And now I'm ready to submit
13  it to the system for -- by submit, I mean turn the requisition
14  into a PO. So I click on submit, give this a submit -- all
15  right, and stop.
16     Now, this process is actually running what we call in the
17  background. The foreground is this PO 100 screen, and the
18  program is running in the background converting the requisition
19  to a purchase order, so when this was done in realtime, enough
20  time had elapsed for that process to occur and for a report to
21  be generated which is the purchase order.
22     So what I'm going to do next is just go look at it,
23  because it's been created. I just can't see it yet, so
24  continue. I'm going to go up here to the print manager and
25  click on that. Stop.

## Page 650

1  So here this print manager keeps copies of the things it
2  creates, and the very top one on the list is that job that I
3  just named requisition number 911, and it was operated on by
4  the PO 100 program. So when I go click on this, I'm going to
5  reveal the purchase orders that have been created. Continue.
6     Stop. So if you think of this screen and then the
7  scroll-down menu as a big piece of paper, up here at the top we
8  have some information like when it was run, and then here we
9  have information that's important to a purchase order, namely
10  who is doing the purchasing.
11     So in this case, the buyer is the Metropolis Medical
12  Center, and it's their -- somewhere in here it will say the
13  delivery location is main. Well, I don't see that yet. It
14  doesn't matter. What we're going to do now is scroll down a
15  bit more. Okay, continue.
16     Move from side to side, there's nothing to the right.
17  Stop. So here is the first purchase order. Our buyer,
18  Metropolis Medical Center, we have a vendor, 117. Baxter
19  Healthcare is that vendor. We have an item number 1036. We
20  have a description, sterile surgical gloves, size seven. Its
21  source document was requisition 911. Quantity is one. Unit of
22  measure is a case, and here's what I was looking for. The
23  requesting location is main. And then here, the PO has been
24  released. So this system has created the purchase order and
25  released it.

**651**

1  Now, that's the first of two. So now I'm going to scroll
2  down some more. Continue. Stop. And here's the second PO.
3  So it's at the bottom of this conceptual sheet of paper. So,
4  again, we have the buyer, Metropolis. We have a vendor, number
5  124 from Diablo. The item number is 6020. The item
6  description is the Dell Inspiron 8000. It came from the 911
7  requisition. I'm ordering one of them in unit of measure each,
8  and I'm delivering it to main.
9  Now, here, for the second PO, it has been released. So
10 two POs have been created and released, and the report
11 summarizes two POs created. That's the end.
12 Q  Thank you. Now, Doctor we're going to be going through
13 some more documents, and we have three more demonstrations to
14 sort of illustrate the functionality of this accused system.
15 And at some point, I'm going to be asking you to go through all
16 12 of these asserted claims for each element under the Court's
17 claim construction. Are you going to be able to do that for
18 me?
19 A  Sure.
20 Q  At this point, just keeping the Court's claim terms in
21 mind, let me just ask you, at a high level with respect to this
22 demonstration we just saw, and keeping the claim three and
23 claim 28 we talked about which include that element for
24 converting, did we see at least two product catalogs?
25 A  Yes, we did.

**652**

1  Q  Did we see the ability to select those product catalogs to
2  search?
3  A  We did that through the categories.
4  Q  Tell me what two product catalogs we saw?
5  A  Office Max and Baxter Healthcare.
6  Q  Did we also see Dell and Diablo?
7  A  Yeah, that's right, we did.
8  Q  And was there an ability to select the product catalogs?
9  A  Yes, we did it through the categories.
10 Q  Was there an ability to search for matching items in those
11 product catalogs?
12 A  We did that.
13 Q  How did we do that?
14 A  We put in the -- we did the category search by marching
15 through the UNSPSC codes, picking a commodity and then picking
16 items.
17 Q  Once you had selected those items from the office, from
18 the shopping cart, were you able to put them into a
19 requisition?
20 A  Yes.
21 Q  And did you -- were you able, from that requisition, after
22 you got the appropriate approvals which are not part of the
23 claims of the -- elements of claim, excuse me, were you able to
24 generate one or more purchase orders from that requisition?
25 A  Yes, we did.

**653**

1  Q  And were you able, using the UNSPSC, to find items that
2  were similar, generally equivalent?
3  A  Yes, I converted that ThinkPad into a Dell.
4  Q  Thank you. Doctor, I'd like you to take a look at
5  Plaintiff's Exhibit 280, and can you identify what this
6  document is?
7  A  This is the Lawson Software response to Presbyterian
8  Healthcare Services.
9  Q  So this is another one of those responses to an RFP?
10 A  That's correct.
11 Q  And what is it dated?
12 A  March 22nd, 2005.
13 Q  And if you could take a look at the page that begins with
14 barcode 196, if you would, sir. And here -- which has a Bates
15 number that ends 848.
16 A  Yes, I'm there.
17 Q  And here Presbyterian Hospital, in this -- here Lawson, in
18 this response to the request for proposal from the Presbyterian
19 Healthcare Services, is ask asking about requisitioning
20 capability from Lawson; is that right?
21 A  Yes. That's exactly what it says.
22 Q  And it says in the requisitioning capability, it's asking
23 to describe your ordering tools for various types of items,
24 stock, nonstock, and non-catalogs; do you see that?
25 A  Mike, it is below there. There it is.

**654**

1  Q  Okay. And the response, is that on the next page?
2  A  That's on the next page.
3  Q  Let me -- okay, let's go to the next page. And in
4  response to this RFP, this Lawson requisition, is that one of
5  the modules that you've been describing today?
6  A  It is.
7  Q  What does it say that the capability is of Lawson
8  requisitions that Lawson is representing to the Presbyterian
9  Healthcare Services?
10 A  That first paragraph says, Lawson requisitions enables
11 users to view online catalogs for stock and nonstock items,
12 select items from the catalog or a template, and add additional
13 comments to their requisitions.
14   Also, requesters can add non-catalog items such as service
15 or specials through item free form input. Additionally,
16 requester can view all previously created requisitions and
17 status with requisition inquiry.
18   So this tells us that the users can view online catalogs,
19 they can select items, and they can prepare requisitions.
20 Q  And this is using that requisitions module that you
21 described; is that right?
22 A  It is.
23 Q  Let me ask you, there's an additional question on this
24 page where Presbyterian Healthcare Services asks Lawson to
25 quote, describe your system's ability to establish global

## Page 741

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE EASTERN DISTRICT OF VIRGINIA
 3                     RICHMOND DIVISION
 4
 5   -------------------------------------
                                         :
 6   ePLUS, INC.              : Civil Action No.
                              : 3:09CV620
 7   vs.                      :
                              :
 8   LAWSON SOFTWARE, INC.    : January 7, 2011
                              :
 9   -------------------------------------
10
11         COMPLETE TRANSCRIPT OF THE JURY TRIAL
12         BEFORE THE HONORABLE ROBERT E. PAYNE
13         UNITED STATES DISTRICT JUDGE, AND A JURY
14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   David M. Young, Esquire
     Goodwin Procter, LLP
18   901 New York Avenue NW
     Suite 900
19   Washington, D.C.  20001
20   Craig T. Merritt, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia  23219-3095
     Counsel for the plaintiff
23
24         Peppy Peterson, RPR
           Official Court Reporter
25         United States District Court
```

## Page 742

```
 1   APPEARANCES: (cont'g)
 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia  23219
 5   Daniel W. McDonald, Esquire
     Kirstin L. Stoll-DeBell, Esquire
 6   William D. Schultz, Esquire
     Merchant & Gould, PC
 7   80 South Eighth Street
     Suite 3200
 8   Minneapolis, Minnesota  55402
```

## Page 743

```
 1                    P R O C E E D I N G S
 2
 3        THE CLERK:  Civil action number 3:09CV620, ePlus,
 4   Incorporated, versus Lawson Software, Incorporated.  Mr. Scott
 5   L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr.
 6   Michael G. Strapp, and Mr. David Young represent the plaintiff.
 7        Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 8   Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent
 9   the defendant.  Are counsel ready to proceed?
10        MR. ROBERTSON:  Yes, Your Honor.
11        MR. McDONALD:  Yes, sir.
12        THE COURT:  Good morning.  Good morning, ladies and
13   gentlemen.  I was informed by the clerk that you all needed to
14   know the procedure for asking questions, and if you have
15   questions, it's all right.
16        I think the best way to do this is for you to write
17   your question out and then send it up to Mr. Neal, and he'll
18   give it to me, because there's some kind of questions that,
19   perhaps, are better -- I will tell you immediately, I can't
20   answer that or we can't get into that.
21        Others -- and I found this to be the case most of the
22   time.  Other questions are very helpful to the lawyers to have,
23   because if you have -- you are the ones who have to decide the
24   case, and if you have a question, they need to know it and need
25   to work out a way to get the information to you through their
```

## Page 744

```
 1   questions.
 2        So if you feel like you have a question, you can
 3   write them out, send them to me, and I'll take them and look at
 4   them.  Unless it's something that I can't allow, we'll work out
 5   a way to get you the information that you need.
 6        You all look like you're not as drained as you were
 7   when you left yesterday afternoon.  I feel the same way, so
 8   let's get a fresh start.  Let's go ahead, Mr. Robertson.
 9        MR. ROBERTSON:  Thank you, Your Honor.  Good morning.
10
11        ALFRED C. WEAVER,
12   a witness, called by the plaintiff, having been previously
13   duly sworn, testified as follows:
14              DIRECT EXAMINATION
15   BY MR. ROBERTSON:  (resuming)
16   Q   Good morning, Dr. Weaver.
17   A   Good morning, Mr. Robertson.
18   Q   I'd like to start out looking at Plaintiff's Exhibit
19   Number 219, if I could, sir, in binder number five.  Before we
20   get there, I have a few preliminary questions.
21        Do you know whether or not Lawson provides services to its
22   customers to assist them in importing vendor catalog data into
23   its item master?
24   A   Yes, I do.  There was witness testimony to that from the
25   customers.
```

## Page 781

1  another one. We just saw that in the Punchout. You can also
2  do that with the internal catalogs, and you can search by
3  keywords like Dell, or you can search by categories like we did
4  as we marched through the UNSPSC codes.
5  Q  So does Lawson also indirectly infringe that by
6  encouraging its customers to do the same?
7  A  Yes.
8  Q  Do you have an opinion as to whether or not Lawson systems
9  include a means for searching for matching items among the
10  selected product catalogs?
11  A  Yes, they do, and we saw that when I used the search
12  engine.
13  Q  And did they indirectly infringe that claim element by
14  assisting their customers to do the same?
15  A  Yes.
16  Q  The search engine you talked about, you also gave some
17  evidence with respect to the search index; is that right?
18  A  That's right.
19  Q  We'll come back to that later in the context of some of
20  the other claims. The search engine, though, just to refresh
21  the jury was for what purpose?
22  A  This is to find the matching items.
23  Q  Do you have an opinion as to whether or not Lawson accused
24  systems include means for building a requisition using data
25  relating to selected matching items and their associated

## Page 782

1  sources?
2  A  They do. We saw that in my, three of my demos and in
3  their documentation.
4  Q  The Court defined matching items as search results. Is
5  that consistent with your opinion?
6  A  Yes, it is.
7  Q  Does Lawson encourage its customers to directly infringe
8  that claim by using the systems?
9  A  They do, and we had that list of evidence like training
10  courses and help sites and Lawson employees going to the
11  customer site to help them build or maintain their system.
12  Q  Do you have an opinion as to whether or not the accused
13  Lawson systems have a capability of processing the requisition
14  to generate one or more purchase orders for the selected
15  matching items?
16  A  Yes. We saw that in my demo and in the system
17  documentation.
18  Q  The Judge has defined selected matching items as
19  requisition items. Is that -- is your opinion consistent with
20  that?
21  A  Yes, it is.
22  Q  Does Lawson indirectly infringe -- meet this claim element
23  by encouraging its customers to do the same by providing them
24  with these systems?
25  A  Yes.

## Page 783

1  Q  Do you have an opinion, Doctor, as to whether or not the
2  accused Lawson systems satisfied the claim element means for
3  converting data relating to a selected matching item and an
4  associated source to data relating to an item in a different
5  source?
6  A  Yes, and we saw that when we did the category search using
7  the UNSPSC codes. And we also know this is made possible by
8  that IC 516 program that loads UNSPSC codes into the item
9  master.
10  Q  And this capability, is that provided to their customers?
11  A  Yes.
12  Q  And that is in the core IC module you mentioned?
13  A  Yes.
14  Q  And were there any demonstrations you put on for the jury
15  to show how you could use that UNSPSC classification code to
16  find generally equivalent items?
17  A  Yes. We just did that with the halogen lamps.
18  Q  So what is your opinion now -- I'm sorry. Did we see any
19  evidence with respect to whether or not Lawson encourages or
20  urges its customers to use the Lawson system to perform that
21  cross-referencing capability or conversion capability?
22  A  Yes. We saw that in the training documents.
23  Q  The Judge has defined converting data related to a
24  selected matching item and an associated source to an item in a
25  different source. Do you see that?

## Page 784

1  A  Yes. That's the second one on the glossary.
2  Q  Can you read for me what the Judge's definition is?
3  A  Substituting data related to a selected matching item and
4  an associated source to data relating to an item and a
5  different source.
6  Q  And in your opinion, does the Lawson system satisfy the
7  Judge's definition of that claim element?
8  A  It does, and we just saw that with the halogen lamp from
9  Granger and substituting the halogen lamp from Gexpro.
10  Q  So, Doctor, what is your opinion with respect to whether
11  Lawson infringes claim three both directly and indirectly?
12  A  I believe they do.
13  Q  Next claim at issue here, which is the claim 26, this is
14  the method comprising those steps. Again, the direct
15  infringement here, or the accused direct infringement here for
16  performing this method step is the customers performing these
17  steps by using the Lawson system. Do you understand that?
18  A  I do.
19  Q  And you also mentioned this instance where Lawson may host
20  a system for customers to use at the Lawson site. Do you see
21  that?
22  A  Yes.
23  Q  So I want to go through this relatively quickly in the
24  sense that these claim elements match up to the system claims
25  that we just went through with the exception that we have this

## Page 990

```
 1         IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    RICHMOND DIVISION
 4
 5   -------------------------------------
                                         :
 6   ePLUS, INC.                         :  Civil Action No.
                                         :  3:09CV620
 7   vs.                                 :
                                         :
 8   LAWSON SOFTWARE, INC.               :  January 11, 2011
                                         :
 9   -------------------------------------
10
11          COMPLETE TRANSCRIPT OF THE JURY TRIAL
12          BEFORE THE HONORABLE ROBERT E. PAYNE
13       UNITED STATES DISTRICT JUDGE, AND A JURY
14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   David M. Young, Esquire
     Goodwin Procter, LLP
18   901 New York Avenue NW
     Suite 900
19   Washington, D.C. 20001
20   Craig T. Merritt, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia 23219-3095
     Counsel for the plaintiff
23
24            Peppy Peterson, RPR
              Official Court Reporter
25           United States District Court
```

## Page 991

```
 1   APPEARANCES: (cont'g)
 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia 23219
 5   Daniel W. McDonald, Esquire
     Kirstin L. Stoll-DeBell, Esquire
 6   William D. Schultz, Esquire
     Merchant & Gould, PC
 7   80 South Eighth Street
     Suite 3200
 8   Minneapolis, Minnesota 55402
```

## Page 992

```
 1                    P R O C E E D I N G S
 2
 3       THE CLERK: Civil action number 3:09CV00620, ePlus,
 4   Incorporated versus Lawson Software, Incorporated. Mr. Scott
 5   L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr.
 6   Michael G. Strapp, and Mr. David Young represent the plaintiff.
 7       Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 8   Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent
 9   the defendant. Are counsel ready to proceed?
10       MR. ROBERTSON: Plaintiff is, Your Honor.
11       MR. McDONALD: Yes, we are, Your Honor.
12       THE COURT: What did you all need to talk about?
13       MS. STOLL-DeBELL: We actually resolved it, Your
14   Honor, between the time we that mentioned --
15       THE COURT: Tell them to bring the jury in. What do
16   we have this morning?
17       MR. ROBERTSON: The first witness we're calling this
18   morning is Mr. Keith Lohkamp, Your Honor. He's a Lawson
19   employee. I have a number of binders associated with the
20   witnesses this morning. I want to make sure my paralegal --
21   oh.
22
23           (Jury in.)
24
25       THE COURT: Good morning, ladies and gentlemen. All
```

## Page 993

```
 1   right, we have a witness. Next witness.
 2       MR. ROBERTSON: Mr. Keith Lohkamp.
 3       THE COURT: All right, Keith Lohkamp.
 4
 5           KEITH LOHKAMP,
 6   a witness, called by the plaintiff, having been first duly
 7   sworn, testified as follows:
 8                DIRECT EXAMINATION
 9   BY MR. ROBERTSON:
10   Q  Good morning, Mr. Lohkamp.
11   A  Good morning.
12   Q  Mr. Lohkamp, you are a Lawson Software employee; correct?
13   A  Yes, I am.
14   Q  And you are a product strategist for supply chain
15   management; correct?
16   A  Yes.
17       THE COURT: Can we get the witness to spell his last.
18   Q  Can you please spell your last name, sir, for the record.
19   A  It's L-o-h-k-a-m-p.
20   Q  Can you explain to the jury essentially what supply chain
21   management is?
22   A  Supply chain management involves the procurement of goods
23   and services and the management of the inventory related to
24   managing those goods. It also includes, can include the sell
25   side, so selling those goods and services as well.
```

**1154**

Lohkamp - Redirect                                         1154

1  Dale Christopherson.
2       THE COURT: How long is this going to take?
3       MR. ROBERTSON: Your Honor, I'm trying to cut it back
4  considerably. I think I'd be less than 45 minutes.
5       THE COURT: Mr. Niemeyer, how long is his examination
6  going to be?
7       MR. ROBERTSON: Less than an hour.
8       THE COURT: Let's go. There was a lot of stuff that
9  that could have been excised from that.
10      MR. ROBERTSON: I tried to limit it, Your Honor, but
11 both parties get to cross-designate, so...
12      THE COURT: 611 is in effect in full force.
13
14          DALE CHRISTOPHERSON,
15 a witness, called by the plaintiff, having been first duly
16 sworn, testified as follows:
17
18      MR. ROBERTSON: May I proceed, Your Honor?
19      THE COURT: Please.
20
21          DIRECT EXAMINATION
22 BY MR. ROBERTSON:
23 Q   Will you state your full name for the record, sir?
24 A   Dale Arnold Christopherson.
25 Q   And you are currently the director of development at

**1155**

1  Lawson Software; correct?
2  A   That's correct.
3  Q   Then in your role as the director of development, you have
4  responsibilities for these software modules that we've been
5  talking about, Lawson requisition self-service, Lawson
6  procurement punchout, Lawson purchase order, Lawson
7  requisitions, Lawson inventory control, and Lawson EDI;
8  correct?
9  A   Those are some of the many that I do have under my
10 control, yes.
11 Q   You are familiar also with the Lawson system foundation;
12 is that right?
13 A   Depends on how deep you want to go into it, but, yes, I am
14 familiar with it at some length.
15 Q   You were asked in your deposition whether Lawson system
16 foundation is a technology layer that sits below these current
17 applications we've been talking about. Do you recall that?
18 A   I certainly do.
19 Q   You said it was?
20 A   Yes, it was and still is.
21 Q   And so isn't it true now that all customers of Lawson are
22 required to license the Lawson system foundation in order to
23 use the current version of the Lawson applications?
24 A   That's correct.
25 Q   And in this procurement version nine plus, any version

**1156**

1  nine plus you have to do that; isn't that right?
2  A   In nine plus?
3  Q   Any version nine and above?
4  A   Oh, any version nine and above, that's correct.
5  Q   There are several versions of this software we've been
6  talking about; correct?
7  A   Yes, there are.
8  Q   And there's a separate license fee associated with Lawson
9  system foundation; is that correct?
10 A   That's correct.
11 Q   Now, there's been a lot of discussion about these vendor
12 catalogs. A customer can import a vendor catalog into the item
13 master of the Lawson system; isn't that right?
14 A   They can go basically through a three-step process, yes.
15 Q   And you are aware also of this UNSPSC we've been talking
16 about?
17 A   I certainly am.
18 Q   So isn't it true that you can use the UNSPSC to find items
19 from different vendors that were all cross-referenced using the
20 same product category?
21 A   Let me think about what you are really saying there.
22 Could you restate that?
23 Q   Sure. Isn't it true that a user of the Lawson system that
24 has this UNSPSC capability can find items from different
25 vendors that were all cross-referenced to the same product

**1157**

1  category?
2  A   That's correct, yes.
3  Q   The shopping cart in Lawson requisition self-service can
4  be dynamically built from results of conducting searches in the
5  item master; isn't that right?
6  A   That is correct.
7  Q   And it's also true that the shopping cart can also be
8  dynamically built using the results of searches in the vendor
9  punchout catalogs; right?
10 A   That is also correct.
11 Q   And when the user clicks a checkout in the items in your
12 shopping cart, they are moved into the requisition system, and
13 an actual requisition is created; isn't that right?
14 A   I would actually define that slightly different.
15 Q   All right. Do you recall giving a deposition in this
16 case?
17 A   I certainly do.
18 Q   And you were under oath?
19 A   Uh-huh.
20 Q   I believe you have your deposition transcript. It should
21 be in the first volume.
22 A   Yep.
23 Q   Could you go to page 77? Excuse me. I misspoke. 177.
24 A   177?
25 Q   Yes, sir.

## Page 1158

1  A  Okay. I'm not there yet.
2  Q  Okay, take your time.
3  A  Okay, 177.
4  Q  Starting at about line 18?
5  A  Starting with question, and then on the right-hand screen?
6  Q  Let me read the question for you.
7     Question: And then on the right-hand screen in the card,
8  here you have four items that have been included in your
9  shopping cart. What happens to that when you click checkout?
10    Your answer: When you click checkout, then it would move
11 that information into the requisition system and actually
12 create a requisition.
13    Did you give that answer to that question at that time?
14 A  I certainly did.
15 Q  Okay. Thank you. Once a requisition is approved, the
16 requisition is released and then transferred to the purchase
17 order system; correct?
18 A  That's correct, after it's been approved.
19 Q  Talking just now about procurement punchout, when users
20 have filled their shopping carts, virtually speaking, and
21 checked out from the vendor website using the Lawson
22 procurement punchout, the chosen items and their prices are
23 returned to the Lawson server and a requisition is created
24 using the Lawson requisition self-service application; correct?
25 A  Can you state that again? The second half of it basically

## Page 1159

1  is where I lost you. ^ you check out at the customer, not the
2  customer but the vendor site and then it was at that point
3  where I got lost.
4  Q  Let me start over. Let's hear the whole question. When
5  users have filled their shopping carts, virtually speaking, and
6  checked out from the vendor website using Lawson procurement
7  punchout, the chosen items and their price are then returned to
8  the Lawson server, and a requisition is created using the
9  Lawson requisition self-service application; correct?
10 A  That's correct.
11 Q  Isn't it true that the current version of the Lawson
12 procurement punchout includes the capability to punch out to
13 multi-vendor catalogs?
14 A  That's correct.
15 Q  One of those examples of a site that you can go that is a
16 multi-catalog vendor -- excuse me, multi-vendor catalog, is
17 SciQuest; correct?
18 A  That's correct.
19 Q  Another example of a multi-vendor catalog site that's
20 available for the punchout procurement is an organization known
21 as GHX; correct?
22 A  That is correct.
23 Q  That stands for Global Healthcare Exchange?
24 A  That's correct.
25 Q  And Global Healthcare Exchange that provides this

## Page 1160

1  multi-vendor catalog capability is a punchout trading partner
2  of Lawson; correct?
3  A  That's correct. They are on the list, yes.
4  Q  It's an accurate statement to say that if Lawson could not
5  market a requisition module, it could not effectively compete
6  in the supply chain management product market?
7  A  I would say that that would be an accurate statement, yes.
8  Q  It's also accurate to say if Lawson could not offer a
9  purchase order module, Lawson could not effectively compete in
10 the supply chain management product market?
11 A  That would also be correct.
12 Q  You've heard a lot of talk about the implementation and
13 installation services that Lawson offers. I just want to be
14 clear that Lawson will provide implementation services to
15 assist its customers with importing vendor catalog data into
16 the item master.
17 A  I didn't hear a question in that, sir.
18 Q  Let me restate it then. Perhaps I misspoke. Is it true
19 that Lawson provides implementation services to assist its
20 customers with importing vendor catalog data into the item
21 master?
22 A  If the customer so chooses and wants that service, yes, we
23 do.
24 Q  So for most situations where a customer licenses the
25 supply chain management suite or the procurement modules we've

## Page 1161

1  been talking about in supply chain management, Lawson
2  professional services is going to provide the actual
3  installation and implementation services for that system;
4  correct?
5  A  That's correct, yes.
6  Q  All existing Lawson customers today are under maintenance
7  contracts with Lawson; correct?
8  A  That's correct.
9  Q  So all of the supply chain -- excuse me. All of the
10 supply -- let me restate that. All of the S3 procurement
11 products that are under contract today with Lawson customers,
12 they have maintenance contracts; is that right?
13 A  Could you restate that?
14 Q  Yeah. I'm sorry. It was a bad question. With respect to
15 the Lawson S3 procurement product that's at issue here, any
16 customer that has that product is under an existing maintenance
17 contract?
18 A  That's correct.
19 Q  There's been a lot of talk about this RFP process, and I
20 don't want to go through it again in detail, certainly, but
21 there is a standard set of answers for those common questions
22 that customers have about the S3 procurement product; correct?
23 A  That is correct, yes.
24 Q  I think if you'll look in your book to Exhibit 117.
25 A  Okay.

**1188**

```
 1          IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    RICHMOND DIVISION
 4
 5    -------------------------------------
                                          :
 6    ePLUS, INC.              : Civil Action No.
                               : 3:09CV620
 7    vs.                      :
                               :
 8    LAWSON SOFTWARE, INC.    : January 12, 2011
                               :
 9    -------------------------------------
10
11          COMPLETE TRANSCRIPT OF THE JURY TRIAL
12          BEFORE THE HONORABLE ROBERT E. PAYNE
13          UNITED STATES DISTRICT JUDGE, AND A JURY
14
       APPEARANCES:
15
       Scott L. Robertson, Esquire
16     Michael G. Strapp, Esquire
       Jennifer A. Albert, Esquire
17     David M. Young, Esquire
       Goodwin Procter, LLP
18     901 New York Avenue NW
       Suite 900
19     Washington, D.C.  20001
20     Craig T. Merritt, Esquire
       Christian & Barton, LLP
21     909 East Main Street
       Suite 1200
22     Richmond, Virginia  23219-3095
       Counsel for the plaintiff
23
24              Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court
```

**1189**

```
 1    APPEARANCES:  (cont'g)
 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219
 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
      Merchant & Gould, PC
 7    80 South Eighth Street
      Suite 3200
 8    Minneapolis, Minnesota  55402
```

**1190**

```
 1                    P R O C E E D I N G S
 2
 3         THE CLERK:  Civil action number 3:09CV00620, ePlus,
 4    Incorporated, versus Lawson Software, Incorporated.  Mr. Scott
 5    L. Robertson, Mr. Craig T. Merritt, Ms. Jennifer A. Albert, Mr.
 6    Michael G. Strapp represent the plaintiff.
 7         Mr. Daniel W. McDonald, Mr. Dabney J. Carr, IV, Ms.
 8    Kirstin L. Stoll-DeBell, and Mr. William D. Schultz represent
 9    the defendant.  Are counsel ready to proceed?
10         MR. ROBERTSON:  Plaintiff is, Your Honor.
11         MR. McDONALD:  Yes, Your Honor.
12         THE COURT:  All right.  You said you wanted to see me
13    before the jury comes in.
14         MR. McDONALD:  Yeah, there's basically three issues
15    we wanted to raise.
16         THE COURT:  The court reporters always can hear
17    better if you come to the lectern.
18         MR. McDONALD:  There's basically three issues that we
19    wanted to raise this morning.  One is our third witness in our
20    case that we start today is Ms. Raleigh.
21         THE COURT:  Third witness in what?
22         MR. McDONALD:  In our case when we start presenting
23    our case today.  We have Mr. Richard Lawson first, Mr.
24    Christopherson second, and then Hannah Raleigh was supposed to
25    come back and be third today.
```

**1191**

```
 1         She was supposed to be back last night from New York,
 2    and New York is getting hammered real bad by this blizzard.
 3    She's trying to get another flight, but her flight is not going
 4    to get her here until after the trial day is over today.  So
 5    we've been trying to work something out with ePlus about what
 6    we would do next because we haven't disclosed any exhibits or
 7    anything for the next witness.
 8         THE COURT:  Just call the next witness, the expert or
 9    whoever you've got here.  There's no magic to the order of
10    putting people on.
11         MR. McDONALD:  The next witness we would have
12    actually here is Mr. Lohkamp, calling him back.
13         THE COURT:  Good.
14         MR. McDONALD:  That's fine.  They haven't had a
15    chance to get ready for their cross-examination.
16         THE COURT:  They'll be ready.  They knew basically
17    what you were going to do anyway.  They're not going to do it
18    on your cross-examination; they were going to do redirect, so
19    we're going to reverse things.
20         MR. McDONALD:  We do have a deposition of Ms.
21    O'Loughlin on the RIMS prior art issue that we can move up in
22    the order.
23         THE COURT:  Is that carefully edited to eliminate the
24    trash?
25         MR. McDONALD:  That's being worked on as we speak,
```

### Page 1244

1  and placed into the keyword detail table.  For each item, there
2  is a corresponding keyword and an origin field.
3  Q   And what database tables are indexed by the keyword detail
4  table?
5  A   My understanding is that at minimum, the ITEMMAST,
6  POITEMVEN, and ITEMLOC tables.
7  Q   In the context of this source code, what is the purpose of
8  having an index like the keyword detail table?
9  A   It's common practice to create an index to -- an
10 optimization to increase the speed of the search and to
11 eliminate to need to search the whole collection of data when
12 you can condense it to an index that you can search more
13 rapidly.
14 Q   Can you explain how the item vendor table or the POITEMVEN
15 table is used in the implementation of a keyword search in the
16 source code?
17 A   After the search is performed against the keyword tables
18 and item information is being retrieved, corresponding vendor
19 information for the items is retrieved from the POITEMVEN
20 table.
21 Q   Do the records in the item vendor or POITEMVEN table link
22 in any way to the records in the item master or ITEMMAST table?
23 A   Yes, they do.  They contain a field which holds the item
24 number for a given item in the ITEMMAST table.
25 Q   Have you prepared a demonstrative to help you explain how

### Page 1245

1  the information in these two tables can be related?
2  A   Yes, I have.
3      MS. ALBERT:  Mike, can we have slide 68, please.
4  Q   Is this the demonstrative that you prepared?
5  A   Yes, it is.
6  Q   Now, using your demonstrative, would you please explain
7  how records in the item vendor or POITEMVEN table can be
8  related to records in the item master table or ITEMMAST table?
9  A   Yes.  So within the ITEMMAST table, or the item master
10 table, there is a field called ITITEM which holds the item
11 number for that item.  That item number uniquely identifies the
12 item within the ITEMMAST table.
13     The PO item vendor table then can -- given record within
14 that table can refer to an item within the ITEMMAST table using
15 that unique number.  It's what's known as a key field in the
16 ITEMMAST table.  Within the POITEMVEN table, there's a field
17 called PIV item which holds that number, and, therefore, if you
18 want to, for a given item in the POITEMVEN table, you can point
19 back to a specific unique item within the ITEMMAST.
20     MS. ALBERT:  Mike, could we go back to slide 24,
21 please.
22 Q   Now, going back to your demonstrative on keyword search
23 query execution, can you explain how the keyword search
24 functionality is implemented in the Lawson system source code?
25 A   Yes.  So after the user enters a search term in the

### Page 1246

1  browser and hits the search button, the search term is conveyed
2  as part of a request to the server side components which causes
3  the Lawson 4GL COBOL program called RQIC to be executed.  The
4  RQIC program ultimately performs a search of the keyword detail
5  table for occurrences of that term that have been previously
6  indexed.
7      Any matching records from the keyword detail table are
8  then used to find the corresponding items in the ITEMMAST table
9  and data gets gathered from the PO and ITEMLOC tables.  All of
10 those results are formatted as XML and ultimately returned to
11 the item web browser and formatted as a search word.
12 Q   When the search code searches the keyword tables to locate
13 the keywords that the user typed in, does the source code
14 search the item master table at all?
15 A   No, it does not.  It only searches the keyword detail
16 table and the associated keyword tables.
17 Q   Now, I'd like to turn to the functionality for the adding
18 items to a shopping cart and building a requisition.  Does the
19 source code of the Lawson system implement functionality that
20 allows a user to select desired items for requisition from a
21 list of results returned from either this category or keyword
22 search that you discussed?
23 A   Yes, it implements a shopping cart functionality whereby
24 the user can indicate that an item from a search result should
25 be added to the shopping cart.  Items can be added and removed

### Page 1247

1  until checkout operation is performed.  Similar to the way you
2  shop on Amazon or another web business.
3  Q   Now, what, if any, database tables are involved in this
4  shopping cart functionality?
5  A   There are three.  Two of them are prefixed with the term
6  REQ.  One is called REQHEADER and the other is called REQLINE.
7  The third is called PO interface which we mentioned before,
8  POITERFAC.
9  Q   And what information is stored in that REQLINE table
10 that's relevant to the shopping cart functionality?
11 A   The REQLINE table holds the individual line items
12 representing items that were selected to be added to the
13 shopping cart.
14 Q   Does this REQLINE table also contain a status field?
15 A   Yes, it does.  In addition to the item information, it
16 contains a status which can indicate that the item is either --
17 while in the shopping cart, it's in a state called unreleased.
18 Q   What does that mean?
19 A   It means that it is part of a shopping cart and not yet
20 part of a requisition.
21 Q   And is there another status that can be indicated in this
22 status field in addition to the unreleased status that you
23 mentioned?
24 A   Yes.  So I'd just say both the REQLINE and REQHEADER table
25 that I mentioned which are involved in this contain a status

## 1248

1  field which indicates the disposition of the information,
2  whether it's part of the shopping cart or whether it's part of
3  requisition, that the two values can be what's called
4  unreleased or released.
5      It indicates it's either in a status of unreleased or
6  released where unreleased is the status used while the items
7  are in the shopping cart, and released is -- indicates that
8  they are now part of the requisition.
9  Q   What information is stored in that REQHEADER table that's
10 relevant to the shopping cart function?
11 A   The REQHEADER table represents the shopping cart as a
12 whole in this case, and it groups the REQLINE records together.
13 Q   Can you explain how this shopping cart functionality is
14 implemented in the source code?
15 A   Yes.  So as the user indicates that they would like to add
16 an item to the shopping cart, when the user indicates the item
17 should be added to the shopping cart, the item number for that
18 item is conveyed as part of a request to the server side at
19 which point a Lawson 4GL COBOL program is executed to add a
20 line to the REQLINE, add a record to the REQLINE table
21 corresponding to that item.
22 Q   Have you created some demonstrative to show what happens
23 in the source code when the user clicks on the checkout button
24 after he has added items to the shopping cart?
25 A   Yes, there should be two.

## 1249

1      MS. ALBERT:  Mike, can we go first to slide 25,
2  please.
3  Q   Now, using these demonstratives, would you please explain
4  what happens in the source code when the user clicks on that
5  checkout button after he's added items to the shopping cart?
6  A   So when a user clicks on the checkout button, there's two
7  major -- two phases that happen, and this depicts the first.
8      If at this point a requisition header, REQHEADER record
9  has not previously been created, one will be created at this
10 time.  This happens when a request is made from the client's
11 web browser to the server side causing the Lawson COBOL program
12 RQIB, or create requisition header which is shown here, to be
13 executed.  That program adds a record to the REQHEADER table.
14 Q   What is a requisition header?
15 A   Again, in this case, it represents either the shopping
16 cart as a whole or the requisition as a whole.  It serves to
17 group the requisition lines and to contain a status for the
18 overall shopping cart or requisition.
19     MS. ALBERT:  Mike, can we go to slide 26, please.
20 Q   So now can you explain what happens in the source code in
21 the next step in this process?
22 A   In this step, there are two activities of importance.
23 This, again, is happening after the user has clicked the
24 checkout button.  Request is -- second request is made from the
25 client's browser to the server side.  In this case, the Lawson

## 1250

1  4GL COBOL program called RQIF, or release requisition, is
2  invoked.
3      Its first job is to update the status that I mentioned
4  before in both the REQHEADER and REQLINE tables from an
5  unreleased to a released value.  The second step is to create
6  records in the PO interface table, POINTERFAC table, which make
7  those records, make that information then available to the
8  purchase order system.
9  Q   Are records created in this PO interface table at the time
10 when items are initially added to the shopping cart?
11 A   No.  They are only created after the checkout operation is
12 performed.
13 Q   Are the records in the REQHEADER and REQLINE tables
14 available to the purchase order system prior to that checkout
15 button being pressed?
16 A   No, they are made available by virtue of the records in
17 the PO interface table.
18 Q   Now I'd like to turn to the process for generating a
19 purchase order.  Does a source code of the Lawson system
20 implement functionality that generates one or more purchase
21 orders corresponding to the items listed in a requisition built
22 using the Lawson system?
23 A   Yes, it does.  The user can use a program called PO 100 to
24 generate one or more purchase orders from a requisition.
25 Q   Does the source code indicate anything about when multiple

## 1251

1  purchase orders would be created from line items in a single
2  requisition?
3  A   Yes.  As part of the purchase order generation process,
4  the requisition items are essentially sorted in order to
5  produce a separate purchase order for each vendor corresponding
6  to items in the requisition.
7  Q   Have you prepared a demonstrative to explain how this
8  functionality is implemented in the source code?
9  A   Yes, I have.
10     MS. ALBERT:  Mike, could we have slide 27, please.
11 Q   Now, what, if any, database tables are involved in this
12 purchase order functionality?
13 A   There are three depicted here.  The first is the PO
14 interface table which I mentioned previously.  The two new
15 tables are -- one is called PURCHORDER, short for purchase
16 order, P-U-R-C-H-O-R-D-E-R, and the second is POLINE,
17 P-O-L-I-N-E, short for purchase order line.
18 Q   What information is stored in the PO interface table
19 that's relevant to the purchase order generation function?
20 A   Well, I mentioned before, this serves to make the
21 requisition information available to the purchase order system.
22 Q   And what information does the PURCHORDER or purchase order
23 table store that's relevant to the purchase order generation
24 function?
25 A   A record in the PURCHORDER table represents a specific