# EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION


 4

 5    --------------------------------------
                                          :
 6    ePLUS, INC.                         :     Civil Action No.
                                          :     3:09CV620
 7    vs.                                 :
                                          :
 8    LAWSON SOFTWARE, INC.               :     September 15, 2011
                                          :
 9    --------------------------------------

10


11          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

12           BEFORE THE HONORABLE ROBERT E. PAYNE

13               UNITED STATES DISTRICT JUDGE


14

15   APPEARANCES:

16   Scott L. Robertson, Esquire
     Michael G. Strapp, Esquire
17   Goodwin Procter, LLP
     901 New York Avenue NW
18   Suite 900
     Washington, D.C.  20001
19
     Craig T. Merritt, Esquire
20   Christian & Barton, LLP
     909 East Main Street
21   Suite 1200
     Richmond, Virginia  23219-3095
22   Counsel for the plaintiff

23

24                  Peppy Peterson, RPR
                   Official Court Reporter
25               United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219

 5    Daniel W. McDonald, Esquire
      Kirstin L. Stoll-DeBell, Esquire
 6    William D. Schultz, Esquire
      Merchant & Gould, PC
 7    80 South Eighth Street
      Suite 3200
 8    Minneapolis, Minnesota  55402

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        P R O C E E D I N G S

2

3              THE COURT:  Hello.  This is ePlus against Lawson,

4      civil 3:09CV620.  Who is here for whom?

5              MR. MERRITT:  Craig Merritt, Your Honor, for ePlus.

6              MR. ROBERTSON:  Scott Robertson and Michael Strapp

7      with Goodwin Procter --

8              THE COURT:  Run that up the flagpole again and get

9      closer to the microphone.

10             MR. ROBERTSON:  It's Scott Robertson, Your Honor,

11     from Goodwin Procter with Michael Strapp.  My other partner,

12     Jennifer Albert, may be joining us a little late.  She's on

13     another conference call, but she might have something to add,

14     so I apologize if she jumps in a little after this call.

15             MR. CARR:  Dabney Carr at TroutmanSanders for Lawson

16     Software.  Will Schultz and Kirstin Stoll-DeBell from Merchant

17     & Gould are also both on.  Dan McDonald could not be on the

18     call.  He is out of the country right now.

19             THE COURT:  Somebody driving in a car have the wind

20     blowing in their hair or something?

21             MR. CARR:  That's me, and I'm going to put my phone

22     on mute now.

23             THE COURT:  Okay.  You say in your motion, ePlus,

24     that the opposition is due on Monday, the 19th, and your reply

25     is due on Thursday, the 22nd, but I don't know what that

1   represents agreement to.  That represents agreement to what, to

2   what aspect of this whole motion?  In other words, should I go

3   on and review the papers and, on the basis of the papers, issue

4   or not issue -- that I have now issue or not issue a show cause

5   order and then set the briefing schedule here according to you,

6   or do I wait?  What is it you all are proposing here?

7           MR. ROBERTSON:  Yes, thank you, Your Honor.  This is

8   Scott Robertson, and let me thank you for taking this hearing

9   so quickly.  I know you've been busy, I see, right up until

10  yesterday with respect to other matters, so all parties

11  appreciate this.

12          Specifically what we're seeking, Your Honor, is an

13  order to show cause and permit us to go further and take

14  discovery in order to establish what we believe is the case

15  that Lawson is in contempt of the Court's injunction.

16          I have and I can propose a specific schedule for

17  moving forward with what we would suggest is limited discovery.

18  We've had some informal discovery.  As the papers show, we've

19  taken some -- we've received some voluntary production

20  concerning the alleged design-around product, and we did go and

21  view a demonstration which we felt was inadequate.

22          There's been some correspondence with respect to

23  that.  We had to travel to St. Paul, Minnesota to do it.  We

24  weren't able to fully vent the functionality that we had asked

25  to be prepared, the same as we had for trial.  We wanted to do

1    it over the internet by a WebEx presentation.  We were told

2    that couldn't be done, but when we arrived there, there was

3    outside counsel for Lawson viewing it by WebEx.

4         So we've incurred some costs, Your Honor, but this

5    is, to us, a very serious matter of what we think is a

6    violation of the injunction, and we think we've made our prima

7    facie case in our papers with our declarations, and so what we

8    would expect is, if the Court deems necessary, unless Lawson

9    wants to concede that we've made our prima facie case and

10   further briefing is unnecessary and we can move forward with

11   the limited discovery we want, we would ask that Lawson respond

12   by Monday, which we thought we had achieved agreement on, and

13   that we would reply three days later, and then the Court could

14   determine whether, under the *TiVo*® case, we had established our

15   prima facie basis such to warrant further investigation as to

16   whether there's a violation of the injunction.

17        THE COURT:  So this schedule to which Lawson has

18   agreed is a schedule to oppose the issuance of a show cause

19   order on the 19th; is that right, Mr. Schultz?

20        MR. SCHULTZ:  That is correct, Your Honor.

21        THE COURT:  Well, now, what would happen if I were to

22   get your filing on the 19th and then get your brief on the

23   22nd?  What do you see happening after that, Mr. Robertson?

24        MR. ROBERTSON:  Well, here's what I would

25   contemplate, Your Honor, and that is, we have some discovery

1    that we would propose, formal discovery, serving.  We'd like to

2    have that expedited.  I could actually provide the Court a

3    draft that, say, tomorrow by noon, just so the Court could

4    review it and determine whether or not it was appropriate.  Of

5    course I would provide it to Mr. Schultz as well.

6             We then propose expedited response by September 30.

7    Assuming the production is adequate and complete, we move

8    forward.  If it's not, I would ask that perhaps we build into

9    the schedule some sort of discovery letters that are a day

10   apart that say the discovery was inadequate and here's why, or

11   the discovery needs to be supplemented and here's why.

12            I would then anticipate a shortened period for

13   depositions.  We've asked for one 30(b)(6) and perhaps two

14   individual depositions.  Mr. Hager, who the Court may recall

15   testified during -- as a representative for Lawson during the

16   injunction hearing, has made several statements that we think

17   are inconsistent with his sworn testimony during the

18   injunction.  I certainly want to take his deposition.

19            We were contemplating that on a shortened schedule,

20   say, perhaps, between October 3rd and October 14th, and then we

21   would ask for briefing on the contempt --

22            THE COURT:  All right, hold on just a minute.

23

24            (Discussion off the record.)

25

1          THE COURT:  All right.  So how long do you think all

2    that will take?  Hello?

3          MR. ROBERTSON:  Yes.

4          THE COURT:  Can you hear me?

5          MS. STOLL-DeBELL:  Yes.

6          MR. SCHULTZ:  Yes.

7          THE COURT:  How long do you think all that would

8    take?

9          MR. ROBERTSON:  Well, obviously, ePlus wants to do it

10   on the most expedited basis possible.  I'm willing to try to

11   work something out, but given that we're at September 15th,

12   Your Honor, serving discovery, expedited responses, and -- I'll

13   be at the Court's discretion as to what you want to do, but I

14   would think we'd have to brief it after the discovery period.

15          Even on an expedited basis, I see, you know, if we're

16   towards the middle to end of October to get the information in

17   front of the Court, and then we would request a hearing at the

18   Court's earliest convenience.

19          MR. SCHULTZ:  Your Honor, this is Mr. Schultz.  May I

20   have an opportunity to talk about the discovery?

21          THE COURT:  Yes.

22          MR. SCHULTZ:  Mr. Strapp and I spoke about this

23   discovery last week.  We had also a discussion about that last

24   night.  In fact, Lawson proposed to ePlus a proposed discovery

25   that went along with what they requested in their brief.  That

1    included a 30(b)(6) deposition, two individual depositions,

2    depositions of Lawson's experts as well as ePlus's experts.

3          These are all things that the parties both agreed on

4    as well as interrogatories and document requests.  The parties

5    both agreed to go forward with that.  The question is the

6    reasonableness of those, Your Honor.

7          Our position on that is a 30(b)(6) deposition should

8    be limited to eight hours and that the two individual

9    depositions should be limited to four hours apiece.  In

10   addition, the interrogatories, we want to limit that to five

11   interrogatories and document requests of five interrogatories.

12         I was kind of surprised this morning when I received

13   an email from Mr. Strapp just stating that the proposal that we

14   provided was unacceptable without a further conversation from

15   Mr. Strapp.  I think we could have worked the matter out, but

16   we're very close, Your Honor.  It's just a matter of the

17   reasonableness of the discovery requests.

18         In addition, our proposal here was to have the

19   written discovery back by October 7th, which is basically a

20   week after what ePlus had wanted which was September 30th.  The

21   reason I think that's appropriate, Your Honor, is we're in

22   briefing right now on a very short schedule here of this motion

23   that ePlus has that we agreed to expedite that to Monday.

24         We shouldn't be short-tripped here based on our

25   responsive motion here, so I think October 7th is adequate, and

1    we're okay with the deposition schedule.  Basically, Your

2    Honor, we're agreeing to what ePlus is wanting here.  We just

3    want it to be reasonable.

4              MR. ROBERTSON:  This is Mr. Robertson.  Let me

5    respond to that.  First, we got this proposal from you, Will,

6    at 7:00 p.m. last night, and I guess, you know, I want to be

7    fair, but it's ironic, to say the least, that the putative

8    contender is telling us the scope of the discovery we want.

9              We didn't agree to five interrogatories.  We didn't

10   agree to five document requests.  I think our document requests

11   are 15, and our interrogatories are about 12.  If I can limit

12   them, I will.  In fact, what I'm really willing to do is, I

13   don't want to waste the time and money to have to go depose

14   experts again.

15             We know what the experts are saying.  They're giving

16   depositions.  I think, you know, when the Judge sees all the

17   briefing and then we move forward on the contempt proceedings,

18   we just have the experts show up, and we cross-examine them.

19   We don't need to go through another mini trial on this.

20             So, you know, the 30(b)(6) deposition shouldn't be

21   limited to five topics.  Our topics are about ten or 12.  I'm

22   happy to send it to you.  I'm happy to send it to the Court,

23   and we shouldn't be limited to four hours each on individual

24   depositions.

25             I need to cross-examine Mr. Hager on the

1    inconsistencies that he's made to the customers of Lawson as

2    well as what he said under oath to the Court, because those two

3    cannot be reconciled.  I mean, he told us it was going to be

4    months and millions of dollars to change the infringing systems

5    out, and now it was a 20-minute download, and it's for free.

6    Those two cannot be reconciled.  I shouldn't be limited to five

7    hours on this.

8              MR. SCHULTZ:  Those can be reconciled because his

9    testimony was about completely changing out the Lawson system

10   to another vendor, not updating and taking out and removing

11   what ePlus considered to be an infringing configuration.  They

12   are two completely different things, and your motion completely

13   mischaracterizes that.

14             MR. ROBERTSON:  Let's assume you're right --

15             THE COURT:  Whoa, whoa, whoa.

16             MR. ROBERTSON:  Sorry, Your Honor.  Let me just say

17   --

18             MR. SCHULTZ:  Your Honor --

19             THE COURT:  Wait just a minute.  Let me tell you

20   something.  I've got a few other things to do besides deal with

21   you all, and one of them is I'm leaving for a vacation, and I'm

22   going to be gone from the 4th to the 24th of October.

23             When I come back, I have a full schedule.  I begin a

24   two-week trial in which the companion cases yielded a verdict

25   of $220 million, and then that puts us to Thanksgiving, and

1    I've got about two more weeks and then I leave for Christmas

2    vacation and my visit with my grandchildren.  So I don't have a

3    lot of time to be spending on this.

4          I want you to understand something, Mr. Schultz.  I

5    don't know exactly what the discrepancies are, but I will tell

6    you when I read what I read that your client had said, I was

7    mightily distressed about it.

8          If they were working on something that simple and

9    that easy when they were telling me how hard it was and the

10   hardship it was going to be on all customers and everything,

11   all of the customer base and what a tragedy it was going to be

12   for the medical industry, and they were working on something

13   that was 20 minutes and easy to do and they didn't disclose

14   that, then I was misled, and I don't think the record in the

15   trial is right, and I'm frustrated about what I'm seeing.

16         Now, it may be that that can be harmonized, but I

17   want ePlus to have a full opportunity to harmonize it, because

18   if it is what I think it is, there are a number of people who

19   are in trouble.

20         MR. SCHULTZ:  Your Honor, we have --

21         THE COURT:  And I'm telling you, I want it dealt with

22   fully so that it can be appropriately dealt with.

23         MR. SCHULTZ:  In fact, what I'm going to agree to do

24   here is I did not realize that ePlus was going to limit their

25   interrogatories and document requests to 15 and 12.  What they

1    have provided to us before was in the 30 range.  I'm okay with

2    those.  You know, as long as they are asking reasonable

3    questions, we're going to respond to those.  So right there, we

4    can take care of that right now.

5            Mr. Robertson, please provide me those document

6    requests and interrogatories.  I would ask you that we'd have

7    until October 7th to respond to those.  We'd like to be able to

8    deal with this brief.  I'd like to be able to fully inform the

9    Court that there were hundreds of hours placed into the

10   requisition center product, that it wasn't this simple

11   20-minute download that's being represented.

12           It is a 20-minute download, but that's just to get

13   the software onto the computer.  There's a whole lot of other

14   development, implementation that goes on to this.  To take out

15   the download portion is completely irrelevant.

16           THE COURT:  That's not the problem.  You're not

17   telling your customers it takes hundreds of hours to do

18   anything, and I think what you're doing is conflating the time

19   you worked on things and the time it will take to actually

20   achieve the solution, and I want it sorted out.

21           And I want Mr. Weaver and ePlus to have full and

22   complete access in any way that they want it to be able to

23   understand exactly how this system works, and how, if at all,

24   it's different than the other system.  And there are going to

25   be no limitations on that, because it's important --

1        MR. SCHULTZ:  We provided all of the source code.  We

2   provided them a demonstration -- I guess we can work with ePlus

3   on what else they want, but we provided them all the

4   information regarding the system itself.

5        THE COURT:  You give them what they want.

6        MR. ROBERTSON:  We respectfully disagree with that.

7        THE COURT:  You give them what you want.  Mr.

8   Robertson, you formulate what you want, and you submit it to

9   them, and unless there's something that is egregious, you give

10  it to them, Mr. Schultz, because there is enough information

11  right now to trouble the Court with respect to whether or not

12  what was said to the Court and what is being said to your

13  customers can be harmonized.

14       Now, they may be able to be harmonized, and I realize

15  you haven't even been heard on this issue yet, and I want to

16  hear what you have to say, but I want to hear what you have to

17  say, and the reason I asked for this call, with you being fully

18  knowledgeable that you have a job to do to explain to me the

19  apparent discrepancies and to understand that there are

20  concerns to be dealt with.

21       So, to that end, it is important that the plaintiff's

22  expert have access in the way the plaintiff has outlined.  It

23  needs access to be able fully to deal with this at a hearing,

24  and I don't want -- we don't want to spend a great long time

25  getting ready for this hearing and have another trial over

1    something.  And I don't want any situation to develop so that

2    there are fine distinctions being drawn that don't make any

3    difference.  Do you understand what I'm saying, Mr. Schultz?

4                MR. SCHULTZ:  Your Honor, I do understand what you're

5    saying.  We will continue, as we have been, cooperating with

6    ePlus.

7                THE COURT:  Well, let me tell you that the letters

8    that I saw from Mr. McDonald early in the year when this

9    exchange was going back and forth don't stand for cooperation

10   where I come from.  They stand for fighting, the likes of which

11   I saw in the antecedent parts of this case that caused this

12   case to be delayed once, and that created problems, and I'm not

13   going to have that anymore.

14               Now, the other thing that I have in mind, I suppose

15   you're going to offer some kind of expert testimony, Mr.

16   Schultz, are you?

17               MR. SCHULTZ:  Yes, we are, Your Honor.

18               THE COURT:  Who is that going to be from?

19               MR. SCHULTZ:  Dr. Shamos.

20               THE COURT:  I want -- I don't usually do this, but

21   I'm of a mind that it might be appropriate in this instance for

22   there to be a court-appointed expert to look at this thing and

23   to help me with this given the circumstances which have arisen.

24               MR. SCHULTZ:  Your Honor, this is Mr. Schultz, and I

25   would like to explore that.

1           THE COURT:  Are you agreeable to it?  Is that what

2    you mean?

3           MR. SCHULTZ:  I'd like to talk with my client, but it

4    sounds like a good idea.

5           MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

6    Respectfully, we spent a lot of money on this case, and I

7    assume the Court would want us to share the expenses on that.

8    The Court has heard Dr. Shamos before, heard Dr. Weaver, can

9    make its own assessment of the credibility based on their

10   testimony and the evidence they'll be presenting.

11          I don't want to prolong this anymore.  This company

12   was acquired for $2 billion.  The best offer they ever made to

13   us was $87,000 to settle this case.  My client is at their

14   wit's end with the money they've been spending on this

15   litigation.

16          We're now dealing with three appeals involving

17   another law firm that's taken over for Lawson, Finnegan

18   Henderson.  I just anticipate deposition after deposition and

19   retrying this case.

20          THE COURT:  What do you mean, three appeals?

21          MR. ROBERTSON:  Well, there's two appeals from the

22   judgment as a matter of law by both parties, and there's an

23   appeal from the interlocutory order of the Court granting the

24   injunction.

25          THE COURT:  That's not an interlocutory order.

1    That's a final order.  I don't understand how the Court of

2    Appeals works on these things.  This is silly.

3           MR. ROBERTSON:  Your Honor, I can represent to you

4    and I can provide you with documents --

5           THE COURT:  I'm finished with the case except for the

6    motion to modify the injunction and the attorneys' fees

7    request, exceptional case request as far as I can tell, and

8    that shouldn't hold up an appeal of the main part of the case.

9           MR. ROBERTSON:  It's not holding up, but

10   notwithstanding -- we're asking the Federal Circuit to

11   consolidate the two appeals to the judgments as a matter of

12   law, and I think they will.  There are still the ongoing

13   interlocutory appeal, and we're pressing that be consolidated

14   as well, so there is some sanity to the appellate process, Your

15   Honor.

16          THE COURT:  Well, I certainly think it ought to be

17   consolidated, but that's not my business.  However, what is

18   happening right here in this issue could very well be important

19   in resolving what's been said by Lawson in respect of its

20   claims concerning the propriety or not of an injunction,

21   because you have alleged -- I don't know if it's true or not --

22   you have alleged that the things that were said at the trial on

23   the issue of two factors, the harm to Lawson and the harm to

24   the public, were not true.  Now, that's what your motion says;

25   isn't that right?

1          MR. ROBERTSON:  Well, the Court ruled in our favor on

2     that.  So what we're really saying, Your Honor, is that this

3     R2C design-around is not colorably different from what the

4     Court enjoined, and so therefore --

5          THE COURT:  Wait a minute, Mr. Robertson.  Yes,

6     that's your bottom line, but in getting there, you are

7     making -- the way I read your allegation, and you said as much

8     today, that the statements made by Mr. Hager and in the briefs

9     about whether or not -- about the facts on which two components

10    of the injunctive relief analysis were conducted in this Court

11    are not true.  Now, aren't you saying that?

12         MR. ROBERTSON:  Your Honor, yes, I am saying that.

13         THE COURT:  Well, now, don't you understand that that

14    could have a significant impact on the analysis of that issue

15    by the Court of Appeals?  And for that reason, I think it

16    appropriate to get this matter resolved as promptly as possible

17    as well as for the issue of contempt so that the Court of

18    Appeals has the full record on what is the truth with respect

19    to the factors that go into the analysis of injunctive relief,

20    whereas here, the alleged misrepresentations made to this Court

21    go to two of the four factors in the injunctive test.

22         MR. ROBERTSON:  Your Honor, I'm not disagreeing with

23    you, sir.  Let me say first on their appeal brief, which we

24    have already on the injunction, they don't argue any of the

25    *eBay*® factors such as the hardship or any of that.  They just

1   go to the merits directly.

2           I can forward it to you, and the representation, I

3   believe, is at page 29 that they don't even have to deal with

4   the *eBay*® factors.  Having said that, of course the credibility

5   of the witnesses during that injunction hearing with respect to

6   the hardship that was involved is going to speak volumes with

7   respect to whether or not they really have designed around

8   this.

9           Having said that, I want to return to Your Honor's

10  original suggestion which I just want to address again and

11  state my client's position, and that is, we just think -- we do

12  want as quick a resolution as possible, as Your Honor

13  suggested, and we think having an independent expert is just

14  going to slow this thing down until we are well past the end of

15  this calendar year.

16          The Court heard testimony before, is familiar with

17  the technology.  We think we can brief it, we think we can do

18  whatever is necessary in order to get the information to the

19  Court so it can make its ruling.  At this point, bringing in

20  somebody who has got to familiarize themselves and then divide

21  those costs among the parties, Your Honor, would be, quite

22  frankly, a significant hardship.

23          So I would urge you not to go that route if that's

24  your inclination.  I mean, really, that would be my client's

25  preference.  I'm happy to do the workout with Mr. Schultz, the

1    discovery schedule that's reasonable and fits the Court's

2    schedule given what you've informed us, but we want to move

3    forward on this as rapidly as possible.

4         MS. STOLL-DeBELL:  Your Honor, it's Ms. Stoll-DeBell.

5    May I speak to this issue briefly?

6         THE COURT:  Sure.

7         MS. STOLL-DeBELL:  I personally think it would be a

8    very good idea for you to get an independent expert.  We're

9    talking about contempt.  ePlus is alleging that we are in

10   contempt, and that's a very serious thing.

11        We're talking about some complicated computer

12   software.  We're going to be looking at source code issues,

13   because what Lawson did is look at the various features that

14   ePlus alleged and proved infringed their patent, and we removed

15   several of those features, something like four or five of them,

16   so that we would not be in contempt in doing the redesign and

17   so that we would no longer be infringing, and we believe that

18   we have done that.

19        Our client has had many different people working on

20   this and has spent hundreds of hours to actually change the

21   source code so that they have a viable redesigned product that

22   we do not believe infringes these claims anymore.

23        And I think that is really the heart of what we need

24   to and you need to decide, is this redesigned product more than

25   colorably different than what the jury found infringed, and if

1    it's not more than colorably different -- we think it is.

2             We spent a lot of time looking at it, and we think it

3    is, but let's say it's not.  We still have to look at the

4    second issue which is, does it still infringe, and so I think

5    those are very complicated issues, and I tend to think it would

6    speed things up and make your job a lot easier to bring in an

7    independent expert to help you sort through these complicated

8    technical issues.

9             MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

10   Changing the name of shopping cart to requisition line is not a

11   complicated issue.  It's like on your Microsoft Word, if you

12   changed recycle bin to trash can, it still does the same

13   functionality.  I mean, this is -- these are cosmetic

14   changes --

15            MR. SCHULTZ:  Mr. Robertson, I'll stop you right

16   there, because that's not what was changed.  It was not just a

17   change of the name.

18            MR. ROBERTSON:  Don't interrupt me, Mr. Schultz.

19            MR. SCHULTZ:  You can't misrepresent things in front

20   of the Court.

21            MR. ROBERTSON:  I've got affidavits I've presented to

22   the Court.

23            THE COURT:  Mr. Schultz -- wait a minute, gentlemen.

24   Mr. Schultz?

25            MR. SCHULTZ:  Yes, Your Honor.

1    THE COURT:  You've been in this case before, haven't

2  you?

3    MR. SCHULTZ:  Yes, Your Honor.

4    THE COURT:  Hasn't everybody been given an

5  opportunity to have their say?  Haven't you had the chance to

6  have your say when you needed to have it?

7    MR. SCHULTZ:  Your Honor, I just thought it was the

8  appropriate time there.

9    THE COURT:  Isn't the answer to that yes?

10    MR. SCHULTZ:  Yes, Your Honor.

11    THE COURT:  Yes.  Then you please do not interrupt

12  when Mr. Robertson is talking, and he'll accord you the same

13  privilege and courtesy.

14    MR. SCHULTZ:  I would appreciate that.  Thank you.

15    THE COURT:  I didn't understand what you said.

16    MR. ROBERTSON:  I don't want to belabor this.  We've

17  given you declarations based on review of the discovery we've

18  had.  We want more discovery.  I understand that the Court is

19  giving us leeway to provide reasonable discovery requests to do

20  that.  I understand the Court has a schedule.

21    I'm going to work with Mr. Schultz and Ms.

22  Stoll-DeBell to work out a schedule.  I'm probably amenable

23  right now, after I consult with my client, to give Mr. Schultz

24  to October 7th, I believe.  I'd like that to be not only the

25  response but the actual production, and in the spirit of

1    cooperation, I'll agree to that right now without even

2    consulting with my client, although my client wants to move

3    forward as expeditiously as possible.

4            THE COURT:  Let me say this:  I don't want a bunch of

5    objections to discovery.  The last time I had to deal with the

6    objections to discovery from Lawson, I found them to be

7    essentially -- I didn't find them to be very compelling, and it

8    was wasteful of my time to have to even deal with it, and it

9    wasted -- it slowed the process down.  I don't want to have to

10   deal with that again, and I don't have time to deal with it,

11   and I'm not going to be here to deal with it during part of the

12   time, and all that's going to happen is, when I come back,

13   we're going to have a problem in terms of getting things

14   accomplished on a schedule, and I don't want that either.

15           So Ms. Stoll-DeBell, I do not expect to have any

16   recurrence of some of the objections, the kinds of objections I

17   had to deal with last time.  I don't want that.  And, Mr.

18   Robertson, I do want -- you can do this however you want to do

19   it, but I want to know and have developed -- I want to know and

20   understand exactly where along the way Lawson's product was

21   when various statements were made to the Court about how much

22   time it would take, how expensive it would be to deal with the

23   consequences of an injunction in the event of infringement.  I

24   want that developed.  I want to see what that record is.

25           That's part of what your mission is going to be here

1    given the nature of the charges you have made, because if you

2    have made charges that are not true on that regard, then you've

3    got a problem yourself.  And I don't want to have to be in a

4    position of deciding any of these things on less than a good

5    record.

6            So that's part of your mission, and I'm sure Ms.

7    Stoll-DeBell and Mr. Schultz will work with you to give a good

8    record on all of that.  And you can take such ever

9    reasonable -- I want you to go agree upon a reasonable

10   discovery schedule.  I want you to present it to me next week

11   and have it all worked out about what you're going to do.

12   And -- and then -- have you posited interrogatories at this

13   stage, Mr. Robertson?

14           MR. ROBERTSON:  I have drafts of them, and I'm

15   willing -- I can finalize them even probably this afternoon or

16   tomorrow morning and get them to Mr. Schultz.  I think there

17   are reasonable --

18           THE COURT:  I don't want them.  You submit them and

19   you get them out so they can see where you are heading.  Get

20   your document requests out as soon as you can and get a

21   schedule for compliance with them, and I really don't expect a

22   lot of objections to them.

23           MR. ROBERTSON:  Yes, Your Honor.

24           THE COURT:  It would be a serious mistake for Lawson

25   to take less than seriously the charges that have been levied,

1    and I want Lawson, therefore, to make sure that it develops

2    fully the answers to the question that I asked Mr. Robertson to

3    focus on.

4            MR. ROBERTSON:  Clearly the timeline is something we

5    are focused on.

6            THE COURT:  All right.  So you all get back with me

7    early next week with a schedule.

8            MS. STOLL-DeBELL:  Okay, will do, Your Honor.

9            THE COURT:  Anything else that we need to deal with?

10   Meanwhile the briefing schedule is approved.

11           MR. ROBERTSON:  Your Honor, the only other thing --

12   I'm reluctant to bring this up, but I just want to alert the

13   Court.  We have some concern that there have been statements

14   made by Mr. Hager and others about opinions that they've

15   received from counsel as to this design-around, and we think

16   they've made disclosures to the customers that waive the

17   attorney-client privilege.

18           I just don't want to catch you blind-sided on that,

19   because I think that's going to come up.  If there are opinions

20   of counsel, we think they should disclose them as to whether or

21   not this new design-around is allegedly non-infringing, and if

22   they don't agree to disclose them, I believe we are going to

23   press a waiver issue with respect to the fact that they have

24   disclosed to their own customers the results of that attorney

25   advice.

1       THE COURT:  You know how to present that.  You posit

2  your interrogatories to call for them, your document request to

3  call for them.  Their responses will object or not object, and

4  they have to do it with sufficient specificity of any claim of

5  privilege to permit you to assess the validity vel non of the

6  privilege.  That's all in the local rules and in the federal

7  rules and in the case law, and then a proper motion to compel

8  production based on whatever theory you have has to be filed,

9  and I'll deal with it as promptly as I can.

10       I think it needs to be teed up with the proper

11  background and responsibility.  I did, in fact, see an allusion

12  to that in the briefs that I read, so I have expected that it

13  will come.  I assume you will tee it up just as promptly as

14  possible if you feel like it's apt.

15       MR. ROBERTSON:  Understood, sir.  Thank you.

16       THE COURT:  Is there anything else that needs to be

17  done?  If you all both, upon reflection, think that it's a good

18  idea for me to appoint a court-appointed advisor, I will

19  solicit from each of you the names of three people, and then

20  we'll go from there.

21       I haven't made a decision, and I am mindful, Mr.

22  Robertson, that your client is not in the same economic league

23  as Lawson, and I will -- I understand your problem, and I will,

24  in fact, deal with that.

25       There have been cases, I believe, but I'm not sure,

1    I'd have to look, where I would require the entity that

2    supports it, if you oppose it, to pay for it up front and then

3    allocate it out at the end of the matter depending upon the

4    outcome.

5            Frankly, I don't know where it's a court-appointed

6    expert, I don't know whether, in fact, that is a permissible

7    approach or not, and my recollection is that there has to be an

8    insulating mechanism so the expert doesn't know who is paying

9    the fee, if I remember how the order structure went, but that's

10   something you all can look into, too, and then you can advise

11   me further on that after you've had an opportunity to think

12   about it.

13           But I am mindful of the financial consequences to

14   your client, and you did prevail and you are entitled to some

15   consideration in an effort to make sure that your victory is

16   not a hollow one.  All right.  Is that it folks?

17           MR. MERRITT:  Judge Payne, this is Craig Merritt.

18   You asked early on in the conversation how we anticipated the

19   Court would proceed after the initial briefs are filed.  It may

20   be implicit in everything that's been said, but I'm assuming

21   what I'm hearing is that once the opposition is filed and the

22   reply is filed, the decision to issue a show cause can be

23   decided on the briefs without further submission?

24           THE COURT:  Unless I ask for it, yes.

25           MR. MERRITT:  Thank you, Judge.

1          THE COURT:  I'm sorry, I think I did get started on

2     that, Mr. Merritt.

3          MR. MERRITT:  You asked that question.  I'm not sure

4     we every addressed it directly.

5          THE COURT:  Nor did I, so thank you very much for

6     focusing back on the point that started it all.  Thank you all.

7     Thank you very much.

8

9                    (End of proceedings.)

10

11

12          I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15

16     _____/s/_____          _____

       P. E. Peterson, RPR                Date

17

18

19

20

21

22

23

24

25