# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
|       Plaintiff, | )   Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
|       Defendant. | ) |

## PLAINTIFF *e*PLUS INC.'S BENCH BRIEF PERTAINING TO PROCEDURES FOR CONTEMPT PROCEEDINGS UNDER *TIVO v. ECHOSTAR*

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Scott L. Robertson (admitted *pro hac vice*)
Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

*Attorneys for Plaintiff, ePlus Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1
II. THE LEGAL AND PROCEDURAL BACKGROUND OF *TIVO* ......................................3
III. LEGAL STANDARDS FOR A CONTEMPT FINDING UNDER *TIVO* ..........................4
IV. CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,*
 154 F.3d 1345 (Fed. Cir. 1998) ............................................................................................. 7, 8

*KSM Fastening Sys., Inc. v. H.A. Jones Co.,*
 776 F.2d 1522 (Fed. Cir. 1985) ...................................................................................... 3, 4, 7, 9

*Merial Ltd. v. CIPLA Ltd.,*
 2011 WL 2489753 (M.D. Ga. June 21, 2011) ..................................................................... 8, 10

*nCUBE Corp. v. SeaChange Int'l,*
 ___ F. Supp.2d ___, 2011 WL 4056902 (D. Del. Sept. 2, 2011) .......................................... 7, 9

*Petter Investments, Inc. v. Hydro Eng'g, Inc.,*
 2011 WL 2935411 (W.D. Mich. July 18, 2011) ....................................................................... 9

*Tivo Inc. v. Echostar Corp.,*
 646 F.3d 869 (Fed. Cir. 2011) ............................................................................................ passim

**Other Authorities**

11 Wright & Miller, Federal Practice and Procedure: Civil § 2960 ............................................. 7

## I.      INTRODUCTION

Pursuant to the Court's Order of October 28, 2011, Plaintiff ePlus Inc. ("ePlus") respectfully submits this brief setting forth the Federal Circuit's guidance for conducting a post-injunction contempt proceeding under the recent decision in *Tivo Inc. v. Echostar Corp.,* 646 F.3d 869 (Fed. Cir. 2011) (*en banc*).[1]

Following a three-week jury trial, a full round of briefing on post-trial motions, an evidentiary hearing relating to injunctive relief issues, additional briefing, and oral argument, this Court entered a permanent injunction against Defendant Lawson Software, Inc.'s ("Defendant") continued infringement of ePlus's patents. The Court also denied, again after extensive briefing, Defendant's motions to stay, clarify or modify the injunction. In addition, the Federal Circuit denied Defendant's motions to stay the injunction while the appeal is pending.

Based on publicly-available information, now confirmed by additional information provided by Defendant, ePlus believes Defendant has deliberately flouted this Court's injunction, and made merely cosmetic and superficial changes to its infringing and enjoined systems in an attempt to continue its infringement. Documents produced by Defendant also establish that Defendant has disobeyed the Court's prohibition on providing maintenance and support services for infringing systems installed at clients' facilities. ePlus therefore moved that Defendant show cause why it should not be held in contempt for violating the permanent injunction.

The Federal Circuit's recent *en banc* decision in *Tivo* provides guidance for this Court in evaluating contempt as related to modifications of infringing products and, importantly, makes clear that Defendant may not expand this proceeding into a new trial of infringement issues, or any other issues for that matter. Under *Tivo*, this Court should first evaluate whether the product

---

[1] A copy of the Federal Circuit opinion is attached as Exhibit A.

features that Defendant claims to have modified in order to comply with the injunction are features *e*Plus relied upon to establish infringement. *Id.* at 882. If the allegedly modified features were features *e*Plus relied upon, the Court should then assess whether those modified features are more than colorably different from the features that were found to infringe. *Id.* at 882. Only those features allegedly modified need be evaluated. *Id.* ("analysis must focus … on … the ***modified features*** of the newly accused product.") (emphasis added).

As *e*Plus has elsewhere set forth for the Court, Defendant has identified only three limited alleged modifications that supposedly render its systems compliant with the injunction order. If the allegedly modified features are related to features the patent owner relied upon to establish infringement but are not more than colorably different from the original features, and the Court finds that the modified features still infringe the pertinent limitations of the patent claims, then a contempt finding is warranted. Again, only the allegedly modified features must be evaluated. *See id.* at 883 ("the Court is required to evaluate the ***modified elements*** of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met") (emphasis added).

Defendant contends that the Court must reconsider infringement anew and evaluate even those features that Defendant has not modified, regardless how the Court resolves the "more than colorably different" analysis. This is not the law under *Tivo*, and moreover, this proposition simply does not make sense. Defendant's argument, if adopted, would lead to the same result — a new infringement trial — irrespective of whether the Court finds the alleged modifications are not more than colorably different from the features found to infringe. This would render the "more than colorably different" analysis pointless, and effectively require a new infringement trial each and every time the alleged contemnor claims to have modified its enjoined infringing

2

products. Nothing in *Tivo,* however, states or even suggests that a district court should evaluate infringement anew, even as to unmodified features. Furthermore, nothing in *Tivo* indicates that a district court should evaluate modifications to features that were not relied upon to establish infringement.

## II.     THE LEGAL AND PROCEDURAL BACKGROUND OF *TIVO*

The import of *Tivo* is simple and straightforward. Prior to *Tivo,* district courts were required to conduct their inquiry in two parts, the first of which asked "whether a contempt hearing is an appropriate setting in which to adjudge infringement by the redesigned product." *See KSM Fastening Sys., Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1530-32 (Fed. Cir. 1985), *overruled in part by Tivo,* 646 F.3d at 876. Thus, a district court was required to first determine whether a contempt hearing was an appropriate setting in which to adjudge infringement by the redesigned product. *Id.* at 1532. The court would do so by determining whether there was "more than a colorable difference" between the modified/accused product and the previously-adjudged infringing product such that "substantial open issues with respect to infringement" existed. *Id.* If that were the case, a new trial (rather than a contempt hearing) would be necessary to determine further infringement by the modified/accused product. *Id.* If the modified/accused product was not more than colorably different, the court could then proceed with a contempt hearing.

As the *Tivo* court states, the *Tivo* decision "***telescope[s] the [previous] two-fold KSM inquiry into one, [thereby] eliminating the separate determination whether contempt proceedings were properly initiated. That question, we hold, is left to the broad discretion of the trial court to be answered based on the facts presented***." *Id.* at 881 (emphasis added).[2]

---

[2] In *Tivo*, a Federal Circuit panel, *inter alia,* had affirmed a district court's decision concluding that the infringer, EchoStar, violated an injunction against infringement. *Tivo,* 646 F.3d at 875.

3

### III.  LEGAL STANDARDS FOR A CONTEMPT FINDING UNDER *TIVO*

In *Tivo,* the en banc Federal Circuit reviewed and set forth guidance and legal standards for conducting a post-injunction contempt proceeding in a patent infringement action.  The Federal Circuit explained that, as a threshold matter, district courts have "broad discretion" to hold contempt proceedings, and may do so simply upon receipt of "a detailed accusation from the injured party setting forth the alleged facts constituting the contempt."  *Id.* at 881.  Thus, the prior two-part process under *KSM* has been "telescoped" into one, and the Court need not conduct a separate preliminary determination of whether contempt is the appropriate manner in which to proceed.  *Id.*  ePlus, as the party moving for contempt has the "burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences."  *Id.*  The "district court may seek expert testimony in making the determination" of whether the party who has instituted the contempt proceedings has met its burden to prove contempt.  *Id.*  An infringer's alleged "good faith" or lack of intent is not a defense to civil contempt, although it may be considered in assessing penalties.  *Id.* at 880.

*Only product features relied upon to prove infringement at trial, and subsequently modified by the infringer, are relevant*.  The *Tivo* court made this proposition clear, stating:

> ***The analysis must focus*** not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, *Additive Controls*, 154 F.3d at 1350, but ***on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product***.  Specifically, one should focus on those elements of the accused

---

The appellate court granted EchoStar's petition for rehearing en banc, which the court granted in order to "address the circumstances under which a finding of contempt by a district court would be proper as to infringement by newly accused products and also address the proper time to raise the defenses of vagueness and overbreadth of an injunction."  *Id.* at 875-76.  The en banc court held that the two-step *KSM* analysis was unsound, and clarified the standards governing contempt proceedings.  Although the *Tivo* court found no abuse of discretion by the district court in proceeding with contempt, it remanded for a factual determination of colorable differences under the new standard described herein.  *Id.* at 876.

4

infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims.

*Id.* at 882 (emphasis added).

***If the modified product features relate to features relied upon to prove infringement at trial, the Court should then determine whether those allegedly modified product features are "more than colorably different" from the features in the product found to infringe***. The *Tivo* court explained that once contempt proceedings are initiated, "the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *Id.* at 882. In conducting this analysis, the Federal Circuit instructed courts to "focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *Id.*

To determine whether a relevant feature in a redesigned product is more than colorably different from a corresponding feature in the infringing product, courts should first determine whether the feature "has been modified, or removed." *Id.* If the modifications do not relate to features relied upon to prove infringement, that is the end of the inquiry as to those modifications. If the feature was relied upon by the patent owner to prove infringement and was modified by the alleged contemnor, the court must then "make an inquiry into whether that modification is significant." *Id.*[3] Only if the district court concludes that "differences between the old and new elements are significant" can the newly accused product be "deemed more than colorably different from the adjudged infringing one." *Id.* Thus, "the primary question on contempt should be whether the newly accused product is so different from the product

---

[3] A modification that "merely employs … elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made" weighs against a finding that the modification was significant. *Id.* at 882-83.

5

previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Id.* (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

If the changes to the relevant features in the redesigned product do not make them more than colorably different from the comparable features in the infringing product, the district court should next determine whether the redesigned product infringes the relevant claims. *Id.* at 883.

***Only the allegedly modified product features should be evaluated in order to assess whether the product features are "more than colorably different" from the product found to infringe and whether the product, as modified, infringes the patent claims.*** The *Tivo* en banc court made this point crystal clear, stating, "the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the ***modified features*** of the newly accused products." *Id.* at 882 (emphasis added). Indeed, the court reiterated this proposition repeatedly. *Id.* ("the court must make an inquiry into whether ***that modification*** is significant"); *id.* at 884, n.3 ("The colorable differences analysis should be based on the court's independent evaluation of ***specific differences*** between the original and the modified products. Here, the court must compare the newly developed statistical estimation feature with the original start code detection feature to determine if the difference between the two is significant.") (emphasis added).

The en banc court noted that "***in most cases, a single limitation that has been modified by an infringer is at issue.***" *Id.* at 882, n.1 (emphasis added). Thus, in *Tivo,* the court's sole focus was on the two alleged product modifications, and whether the district court had properly applied the "more than colorable differences" analysis to those alleged modifications. *Id.* at 883-84. This approach is consistent with the Federal Circuit's earlier ruling in *Additive Controls,* a

6

case cited with approval in *Tivo* and discussed *infra,* in which the Court stated that "infringement by the original device [was] not open to challenge." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1350 (Fed. Cir. 1998). Likewise, whether unmodified product features meet some of the claim limitations is not open to challenge either.

*If the alleged modifications by the infringer are not more than colorably different from the original product features, the court should then assess whether the modified features still infringe the pertinent claim elements*. Thus, the court is "*required to evaluate the modified elements of the newly accused product* against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met." *Id.* at 883 (emphasis added). Accordingly, again, the court's analysis must be limited to infringement with respect to the *modified* features. Nothing in *Tivo* states or even suggests that the alleged contemnor is entitled to a retrial of all infringement issues, even as to features that were not modified. Moreover, *Tivo* did nothing to change the well-settled law that "[c]ontempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial." *nCUBE Corp. v. SeaChange Int'l,* ___ F. Supp.2d ___, 2011 WL 4056902, *4 (D. Del. Sept. 2, 2011) (post-*Tivo* case citing *KSM* and 11 Wright & Miller, Federal Practice and Procedure: Civil § 2960 at 591).

*Defendant may not reargue issues of claim construction, invalidity, or infringement by the original accused systems.* *Tivo* did not change existing law on this point. To the contrary, *Tivo* expressly states, "out of fairness, the district court is bound by any prior claim construction that it had performed in the case." *Tivo,* 646 F.3d at 883. And the Federal Circuit stated as follows in *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345 (Fed. Cir. 1998) (cited with approval in *Tivo,* 646 F.3d at 880-82):

7

N/A

> [t]he judgment … established for purposes of this litigation that [the] patent was valid and that the [accused product] infringed the patent. In a contempt proceeding to enforce the injunction entered as a part of that judgment, the only available defenses for anyone bound by the injunction was that the [allegedly modified product] did not infringe (or that it was more than a colorable variation of the first [product], thus requiring that the issue of infringement be resolved through a separate infringement action). ***Validity and infringement by the original device were not open to challenge***.

*Id.* at 1350 (emphasis added); *see also Merial Ltd. v. CIPLA Ltd.,* 2011 WL 2489753, **6-7, 11 (M.D. Ga. June 21, 2011) (post-*Tivo* district court case quoting and applying *Additive Controls* and stating, "It is delusional to suggest that no infringement occurred because the infringer held the subjective opinion that the patent was not valid.").

***Where, as here, the alleged modifications are either unrelated to features ePlus relied upon to prove infringement or are not more than colorably different from the product features found to infringe, Defendant is not entitled to a new trial of infringement issues.*** Defendant argues that *e*Plus should file a new infringement lawsuit, and that Defendant is entitled to what would essentially be a new infringement trial at which *e*Plus would be required to reprove infringement by clear and convincing evidence, ***regardless*** whether this Court finds that the alleged modifications are not more than colorably different. As is evident from the foregoing, this is not the law under *Tivo*, nor does the proposition make sense. The import of the "more than colorably different" analysis (both before and after *Tivo*) is that a new lawsuit and/or a new trial on infringement is ***not*** required where the alleged modifications either are unrelated to features relied upon to prove infringement or are not more than colorably different from the corresponding features found to infringe.

Under Defendant's argument, the result would be the same — namely, a new trial of infringement issues — regardless how the Court resolves the "more than colorably different" analysis. As noted *supra*, this would render the "more than colorably different" analysis

8

pointless. Moreover, this would require a new trial of infringement issues any time an alleged contemnor claims to have modified its product, resulting in inordinate expense to the patentee and burden to the Court, and disrespect of the Court's injunction order. *See nCUBE*, ___ F. Supp.2d ___, 2011 WL 4056902 at *4 ("'to require in each instance that the patentee institute a new infringement suit diminishes the significance of the patent and the order of the court holding the patent to be valid and infringed.'") (*quoting KSM,* 776 F.2d at 530). An injunction must afford the patentee something more than the right to file still more costly lawsuits every time a well-financed infringer claims to have modified its infringing device.

In other words, the *Tivo* approach is narrow and focused. It does not require a new trial simply because the alleged contemnor claims to have "tweaked" the enjoined product. Indeed, such a result would be absurd.

Based on the research *e*Plus has found, it appears that none of the district courts applying *Tivo* since it was decided have conducted a new trial of infringement and required analysis of unmodified product features, as Defendant now proposes, where the modified features are not more than colorably different from the features of the product relied upon to establish infringement. *See, e.g., nCUBE,* ___ F. Supp.2d ___, 2011 WL 4056902 at **14-16 (identifying and discussing only one claim limitation in dispute, and finding there were "no colorable differences between the infringing … system and SeaChange's modified … product"); *see also Petter Investments, Inc. v. Hydro Eng'g, Inc.,* 2011 WL 2935411, *5 (W.D. Mich. July 18, 2011) (identifying and discussing only the alleged differences in the post-injunction configurations and finding them significant, therefore denying motion). In *Tivo,* the Federal Circuit likewise focused solely on the alleged product feature modifications and the claim limitations pertinent to those modifications in considering whether the modified software "was not more than colorably

9

different." *Tivo,* 646 F.3d at 884, n.3. Neither do the post-*Tivo* cases suggest that this Court should allot anything more than one or two days, at most, to conduct these proceedings. *See, e.g., nCUBE,*___ F. Supp.2d ___, 2011 WL 4056902 at *3 (finding no colorable differences after one-day hearing and post-hearing briefing); *Merial,* 2011 WL 2489753 at *1, n.2 (finding contempt following a two-day evidentiary hearing).

## IV. CONCLUSION

For the foregoing reasons, and as the *en banc* Federal Circuit set forth in *Tivo*, this Court should (1) evaluate whether the ***allegedly modified*** product features relate to features *e*Plus relied upon to prove infringement; (2) if so, evaluate whether those allegedly modified product features are more than colorably different from the features found to infringe and, if not; (3) determine whether those allegedly modified product features still infringe the patents. The Court is not required to conduct a retrial of infringement issues or to analyze product features that have not been modified. Neither is the Court permitted to revisit issues of claim construction, invalidity, or infringement by the original accused systems.

Respectfully submitted,

November 2, 2011                                /s/
David M. Young (VSB #35997)
Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Michael G. Strapp (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com
Attorneys for Plaintiff *e*Plus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2011, I will electronically file the foregoing

**PLAINTIFF *e*PLUS INC.'S BENCH BRIEF PERTAINING TO PROCEDURES FOR CONTEMPT PROCEEDINGS UNDER *TIVO v. ECHOSTAR***

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

| | |
|---|---|
| Daniel McDonald, *pro hac vice*<br>William D. Schultz, *pro hac vice*<br>Rachel C. Hughey, *pro hac vice*<br>Andrew Lagatta, *pro hac vice*<br>MERCHANT & GOULD<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 332-5300<br>Facsimile: 612) 332-9081<br>lawsonservice@merchantgould.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>Telephone: (804) 697-1238<br>Facsimile: (804) 698-5119<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW, GARRETT<br>& DUNNER, L.L.P.<br>901 New York Avenue, N.W.<br>Washington, DC 20001<br>Telephone: (202) 408-4000<br>Facsimile: (202) 408-4444<br>EXT-Lawson-FinneganCorrespondence@finnegan.com | Jason Lo, *pro hac vice*<br>Timothy P. Best, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-6659<br>JLo@gibsondunn.com<br>TBest@gibsondunn.com |
| Daniel J. Thomasch, *pro hac vice*<br>Josh A. Krevitt, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-6200<br>DThomasch@gibsondunn.com<br>JKrevitt@gibsondunn.com | Sarah E. Simmons, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue , #1100<br>Dallas, TX 75201<br>Telephone: (214) 698-3100<br>Facsimile: (214) 571-2900<br>SSimmons@gibsondunn.com<br><br>***Counsel for Defendant Lawson Software, Inc*** |

_____/s/_____
David M. Young (VSB #35997)
Counsel for Plaintiff *e*Plus Inc.
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:   (202) 346-4444
dyoung@goodwinprocter.com
