# EXHIBIT A



646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

United States Court of Appeals,
Federal Circuit.
TIVO INC., Plaintiff–Appellee,
v.
ECHOSTAR CORPORATION, EchoStar DBS Corpora-
tion, EchoStar Technologies Corporation, EchoSphere
Limited Liability Company, EchoStar Satellite LLC, and
Dish Network Corporation, Defendants–Appellants.

No. 2009–1374.
April 20, 2011.

**Background:** Owner of patent pertaining to digital video
recorder (DVR) technology filed infringement action
against competitor. Following jury verdict in patentee's
favor, the United States District Court for the Eastern
District of Texas, David Folsom, Chief Judge, 446
F.Supp.2d 664, entered permanent injunction against
competitor. The Court of Appeals, 516 F.3d 1290, af-
firmed in part, reversed in part, and remanded. On re-
mand, the United States District Court for the Eastern
District of Texas, David Folsom, Chief Judge, granted
patentee's motion to hold competitor in contempt. After a
panel of the Court of Appeals affirmed, competitor peti-
tioned for rehearing en banc.

**Holdings:** On rehearing en banc, the Court of Appeals,
Lourie, Circuit Judge, held that:
(1) district court did not abuse its discretion in holding
contempt proceedings;
(2) district court was required to evaluate modified feature
of newly accused product under the "colorable differ-
ences" test, overruling KSM Fastening Systems v. H.A.
Jones Co., 776 F.2d 1522;
(3) competitor was not allowed to assert argument that
injunction was vague as a defense to contempt; and
(4) competitor waived argument that injunction was
unlawfully overbroad.

Affirmed in part, vacated in part, and remanded.

Dyk, Circuit Judge, filed an opinion dissenting in
part in which Rader, Chief Judge, and Gajarsa, Linn, and
Prost, Circuit Judges, joined.

**West Headnotes**

**[1] Patents 291 ⟜326(4)**

291 Patents
 291XII Infringement
  291XII(B) Actions
   291k326 Violation of Injunction
    291k326(4) k. Proceedings to punish for
violation. Most Cited Cases

A lack of intent to violate an injunction alone cannot
save a patent infringer from a finding of contempt of an
injunction order in a case of continued infringement; since
the purpose of civil contempt is remedial, it matters not
with what intent the defendant did the prohibited act, as
an act does not cease to be a violation of a law and of a
decree merely because it may have been done innocently.

**[2] Patents 291 ⟜326(4)**

291 Patents
 291XII Infringement
  291XII(B) Actions
   291k326 Violation of Injunction
    291k326(4) k. Proceedings to punish for
violation. Most Cited Cases

Although a defendant's diligence and good faith ef-
forts are not a defense to contempt of an injunction order
in a case of continued patent infringement, these factors
may be considered in assessing penalties, a matter as to
which a district court has considerable discretion.

**[3] Patents 291 ⟜326(4)**

291 Patents
 291XII Infringement
  291XII(B) Actions
   291k326 Violation of Injunction
    291k326(4) k. Proceedings to punish for
violation. Most Cited Cases

Determination of whether contempt proceedings re-
lating to an injunction order in a case of continued patent
infringement were properly initiated is within the broad

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

discretion of the trial court to be answered based on the facts presented.

**[4] Patents 291 ⟋326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

What is required for a district court to hold a contempt proceeding relating to an injunction order in a case of continued patent infringement is a detailed accusation from the injured party setting forth the alleged facts constituting the contempt.

**[5] Patents 291 ⟋326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

As with appeals from findings of civil contempt in other areas of law, a court of appeals reviewing a finding of contempt of an injunction order in a patent infringement case will only review whether the injunction at issue is both enforceable and violated, and whether the sanctions imposed were proper; allegations that contempt proceedings were improper in the first instance do not state a defense to contempt.

**[6] Patents 291 ⟋326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

District court did not abuse its discretion in holding contempt proceedings relating to an injunction order in an infringement case involving patent pertaining to digital video recorder (DVR) technology; patentee asserted that competitor's modified receiver software was not more

than "colorably different" from the original one found to be infringing, and thus that competitor was in violation of infringement provision of the permanent injunction, and district court was familiar with the parties, the patent at issue, and the infringing products.

**[7] Courts 106 ⟋96(7)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling or as Precedents
            106k96 Decisions of United States Courts as Authority in Other United States Courts
                106k96(7) k. Particular questions or subject matter. Most Cited Cases

The criteria for adjudicating a violation of a prohibition against continued patent infringement by a party whose products have already been adjudged to be infringing is a matter of Federal Circuit law.

**[8] Patents 291 ⟋326(1)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(1) k. In general. Most Cited Cases

A party seeking to enforce an injunction in a patent infringement case must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes.

**[9] Patents 291 ⟋326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

The primary question under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case should be whether the newly accused product is so different from

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct.

**[10]** Patents 291 ⊝326(4)

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, the analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product; specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims.

**[11]** Patents 291 ⊝326(4)

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, where one or more of the elements previously found to infringe has been modified, or removed, a court must make an inquiry into whether that modification is significant; if those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant, and contempt is then inappropriate.

**[12]** Patents 291 ⊝326(4)

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, the significance of the differences between the product found to infringe in the earlier infringement trial and the newly accused product is much dependent on the nature of the products at issue; the court must also look to the relevant prior art, if any is available, to determine if the modification merely employs or combines elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made.

**[13]** Patents 291 ⊝326(4)

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, a nonobvious modification to one of the elements previously found to infringe may well result in a finding of more than a colorable difference.

**[14]** Patents 291 ⊝326(4)

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, in analyzing the aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product, where useful, a district court may seek expert testimony in making the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

determination.

**[15]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction
         291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, in analyzing the aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product, a court may take account of the policy that legitimate design-around efforts should always be encouraged as a path to further innovation; but an assertion that one has permissibly designed around a patent should not be used to mask continued infringement.

**[16]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction
         291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, in analyzing the aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product, determining the requisite level of difference is a question of fact.

**[17]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction
         291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceed-

ing relating to contempt of an injunction order in a patent infringement case, when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement.

**[18]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction
         291k326(4) k. Proceedings to punish for violation. Most Cited Cases

Under the test for colorable differences in a proceeding relating to contempt of an injunction order in a patent infringement case, a court is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met; in making this infringement evaluation, out of fairness, the district court is bound by any prior claim construction that it had performed in the case.

**[19]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction
         291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In a proceeding relating to contempt of an injunction order in a patent infringement case, the patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences; as with other factual determinations, both findings are reviewed for clear error.

**[20]** Patents 291 ⊖—326(4)

291 Patents
   291XII Infringement
     291XII(B) Actions
       291k326 Violation of Injunction

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In a proceeding relating to contempt of an injunction order in a patent infringement case, where the court finds a violation and awards sanctions, such a sanctions award is reviewable for an abuse of discretion.

**[21] Patents 291 ☞326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In contempt proceeding involving injunction order in case alleging infringement of patent pertaining to digital video recorder (DVR) technology, under the test for colorable differences, district court was required to evaluate the newly designed statistical estimation feature in newly accused product, as the replacement for feature that had previously been adjudged infringing of parsing limitation, to determine whether it was significantly different from the replaced feature, and whether the new feature continued to meet the parsing limitation; overruling *KSM Fastening Systems v. H.A. Jones Co., 776 F.2d 1522.*

**[22] Patents 291 ☞326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In contempt proceeding involving injunction order in case alleging infringement of patent pertaining to digital video recorder (DVR) technology, competitor was not allowed to assert argument that new feature "Infringing Products" in district court's injunction order was ambiguous, thereby rendering the injunction vague and unenforceable, as a defense; competitor's reading of the provision at issue was contrary to most natural reading of the provision, as it would have rendered the injunction vague on its face, and if that were the case, the burden would have been clearly on competitor to seek clarification or modification from the district court, but the competitor

did neither.

**[23] Contempt 93 ☞20**

93 Contempt
    93I Acts or Conduct Constituting Contempt of Court
        93k19 Disobedience to Mandate, Order, or Judgment
            93k20 k. In general. Most Cited Cases

**Injunction 212 ☞225**

212 Injunction
    212VII Violation and Punishment
        212k224 Excuse and Justification
            212k225 k. In general. Most Cited Cases

The judicial contempt power is a potent weapon that cannot be founded upon a decree too vague to be understood; on the other hand, where a party faced with an injunction perceives an ambiguity in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague. Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.

**[24] Patents 291 ☞326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In certain circumstances vagueness can operate as a defense to contempt of an injunction order in a patent infringement case.

**[25] Patents 291 ☞326(4)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k326 Violation of Injunction
                291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In a case where a party has bypassed opportunities to present its asserted vagueness claim to an injunction in a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

patent infringement case on appeal or through a motion to clarify or modify the injunction, the party cannot disregard the injunction and then object to being held in contempt when the courts conclude that the injunction covered the party's conduct.

**[26] Federal Civil Procedure 170A** ⚷➾**2397.3**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(A) In General
         170Ak2397 On Consent
            170Ak2397.3 k. Approval hearing; entry.
Most Cited Cases

**Federal Civil Procedure 170A** ⚷➾**2397.5**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(A) In General
         170Ak2397 On Consent
            170Ak2397.5 k. Construction and operation.
Most Cited Cases

**Federal Civil Procedure 170A** ⚷➾**2397.6**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(A) In General
         170Ak2397 On Consent
            170Ak2397.6 k. Compliance; enforcement.
Most Cited Cases

With consent decrees, it is generally the case that a district court summarily approves the agreement that the parties reach; where disputes later arise in such cases, the court is required, for the first time, to interpret the letter of the contract and determine the intent of the parties, and, thus, in such cases, contempt can be disfavored where the party had no notice that the decree barred the alleged conduct.

**[27] Federal Civil Procedure 170A** ⚷➾**2397.5**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(A) In General
         170Ak2397 On Consent
            170Ak2397.5 k. Construction and operation.
Most Cited Cases

With respect to consent decrees, in determining notice to an alleged contemnor, courts are limited to the four corners of the decree.

**[28] Patents 291** ⚷➾**326(4)**

291 Patents
   291XII Infringement
      291XII(B) Actions
         291k326 Violation of Injunction
            291k326(4) k. Proceedings to punish for violation. Most Cited Cases

In contempt proceeding involving injunction order in case alleging infringement of patent pertaining to digital video recorder (DVR) technology, competitor's argument that district court's injunction order was unlawfully overbroad was waived by competitor's failure to raise the issue on direct appeal.

**[29] Injunction 212** ⚷➾**225**

212 Injunction
   212VII Violation and Punishment
      212k224 Excuse and Justification
         212k225 k. In general. Most Cited Cases

The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt.

**Patents 291** ⚷➾**328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original utility. Most Cited Cases

6,233,389. Cited.

**\*873** Seth P. Waxman, Wilmer Cutler Pickering Hale and Dorr, LLP, of Washington, DC, argued for the plaintiff-appellee on rehearing en banc. With him on the brief were Edward C. Dumont, Daniel S. Volchok, and Thomas G. Saunders. Of counsel on the brief were Morgan Chu, Joseph M. Lipner, Andrei Iancu, Perry Goldberg, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

Christine W.S. Byrd, Irell & Manella, LLP of Los Angeles, CA.

E. Joshua Rosenkranz, Orrick, Herrington & Sutcliffe, LLP, of New York, NY, argued for the defendants-appellants on rehearing en banc. With him on the brief were Joseph Evall and Alex V. Chachkes. Of counsel on the brief were Deanne E. Maynard, Morrison & Foerster, LLP, of **874 Washington, DC, Donald R. Dunner, Don O. Burley, Erik R. Puknys, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, Rachel Krevans, Jason A. Crotty, and Scott F. Llewellyn, Morrison & Foerster, LLP, of San Francisco, CA. Of counsel was Tina E. Hulse, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Palo Alto, CA.

Willard K. Tom, General Counsel, Federal Trade Commission, of Washington, DC, for amicus curiae Federal Trade Commission on rehearing en banc.

William P. Nelson, Howrey LLP, of East Palo Alto, CA, for amicus curiae SAP America, Inc. on rehearing en banc.

Edward R. Reines, Weil, Gotshal & Manges LLP, of Redwood Shores, CA, for amicus curiae American Intellectual Property Law Association on rehearing en banc. With him on the brief were Amber H. Rovner, Weil, Gotshal & Manges LLP, Houston, TX, and Alan J. Kasper, American Intellectual Property Law Association, of Arlington, VA.

Gary M. Hoffman, Dickstein Shapiro LLP, of Washington, DC, for amici curiae, General Electric Co. and Johnson & Johnson on rehearing en banc. With him on the brief were John T. Gallagher and Kenneth W. Brothers.

Matthew Schruers, Computer & Communications Industry Association (CCIA), of Washington, DC, for amicus curiae Computer & Communications Industry Association on rehearing en banc.

Robert P. Taylor, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., of Palo Alto, CA, for amicus curiae Intellectual Property Owners Association on rehearing en banc. With him on the brief were Douglas K. Norman and Kevin H. Rhodes, Intellectual Property Owners Association, of Washington, DC. Of counsel was Herbert C. Wamsley, Intellectual Property Owners Association, of Washington, DC.

Elaine J. Goldenberg, Jenner & Block LLP, of Washington, DC, for amici curiae, Law Professors Erwin Chemerinsky, et al. on rehearing en banc. With her on the brief were Marc A. Goldman and Jessica Ring Amunson.

Mark J. Abate, Goodwin Procter LLP, of New York, NY, for amicus curiae New York Intellectual Property Law Association on rehearing en banc. With him on the brief was Dale L. Carlson, Wiggin & Dana LLP, of New Haven, CT. Of counsel was Ankur P. Parekh, Goodwin Procter LLP, of New York, NY.

Christopher J. Kelly, Mayer Brown LLP, of Washington, DC, for amici curiae Professors of Intellectual Property and Competition Law and Economics on rehearing en banc. With him on the brief were Sharon A. Israel, Mayer Brown LLP, of Houston, TX and Brandon Baum, Mayer Brown LLP, of Palo Alto, CA.

Michael K. Kellogg, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., of Washington, DC, for amicus curiae Verizon Communications, Inc. on rehearing en banc. With him on the brief was Aaron M. Panner. Of counsel on the brief were John Thorne and Gail F. Levine, Verizon Communications Inc., of Arlington, VA.

Scott A.M. Chambers, Patton Boggs LLP, of McLean, VA, for amicus curiae Greatbatch, Inc. on rehearing en banc. With him on the brief was Kevin M. Bell. Of counsel on the brief were Caroline Cook Maxwell, Patton Boggs, LLP, of Dallas, TX; Richard J. Oparil and David G. Henry, Patton Boggs LLP, of Washington, DC.

Edward A. Pennington, Hanify & King, PC, of Boston, MA, for amicus curiae Acushnet Company on rehearing en banc. With him on the brief was **875Amanda M. Rettig. Of counsel on the brief was Troy R. Lester.

Matthew D. McGill, Gibson, Dunn & Crutcher LLP, of Washington, DC, for amici curiae Hewlett–Packard Company, et al. on rehearing en banc.

Paul D. Clement, King & Spalding, LLP, of Washington, DC, for amicus curiae Finjan, Inc. on rehearing en banc. With him on the brief were Daryl L. Joseffer, Erin E. Morrow, and Adam Conrad.

Jeffrey A. Lamken, MoloLamken LLP, of Washington, DC, for amicus curiae Association for Competitive Tech-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

nology on rehearing en banc. With him on the brief was Michael G. Pattillo, Jr. Of counsel were Raymond Millien and Thomas Henry Jackson, PCT Law Group, PLLC, of Washington, DC.

Richard A. Epstein, of Chicago, IL, for amici curiae Professors of Law and Economics, Fred S. McChesney, et al. on rehearing en banc.

Rodney A. Cooper, Protecting Assets of the Mind, of Colorado Springs, CO, for amici curiae Distinguished Economists on rehearing en banc.

Bruce A. Lehman, International Intellectual Property Institute, of Washington, DC, for amicus curiae International Intellectual Property Institute on rehearing en banc. With him on the brief were Andrew Jaynes, Jason D. Koch, and Cameron Coffey.

Alexander C.D. Giza, Russ, August & Kabat, of Los Angeles, CA, for amici curiae Former Federal Court Judges, Honorable Stephen G. Larson, et al. on rehearing en banc.

Philip J. Graves, Graves & Walton LLP, of Los Angeles, CA, for amici curiae Arizona Science and Technology Enterprises, LLC, et al. on rehearing en banc. With him on the brief was Fredricka Ung.

Robert S. Schwartz, Constantine Cannon LLP, of Washington, DC, for amici curiae Agricultural Organizations on rehearing en banc. With him on the brief were Seth D. Greenstein and Mitchell L. Stoltz.

Before RADER, Chief Judge, and NEWMAN, MAYER, LOURIE, BRYSON, GAJARSA, LINN, DYK, PROST, MOORE, O'MALLEY, and REYNA, Circuit Judges, on rehearing en banc.

Opinion for the court filed by Circuit Judge LOURIE, in which Circuit Judges NEWMAN, MAYER, BRYSON, MOORE, O'MALLEY, and REYNA join in full, and in which Chief Judge RADER and Circuit Judges GAJARSA, LINN, DYK, and PROST join in parts A1–A3(a).

Dissenting-in-part opinion filed by Circuit Judge DYK, in which Chief Judge RADER and Circuit Judges GAJARSA, LINN, and PROST join.

LOURIE, Circuit Judge.

Appellants (collectively, "EchoStar") appeal from the district court's decision finding EchoStar in contempt of two separate provisions of the court's permanent injunction order. *See TiVo Inc. v. Dish Network Corp.,* 640 F.Supp.2d 853 (E.D.Tex.2009). A panel of this court affirmed the district court's decision, concluding that EchoStar had in fact violated the infringement provision of the permanent injunction under our earlier decision in KSM Fastening Systems v. H.A. Jones Co., 776 F.2d 1522, 1532 (Fed.Cir.1985), and that EchoStar had waived its unenforceability arguments on the disablement provision of the permanent injunction. *TiVo, Inc. v. EchoStar Corp.,* No. 2009–1374, slip op. at 1 (Fed.Cir. Mar. 4, 2010), *vacated,* TiVo, Inc. v. EchoStar Corp., 376 Fed.Appx. 21, 21–22 (Fed.Cir.2010). EchoStar petitioned for **876 rehearing en banc, urging clarification of the proper scope of the colorable differences test and challenging the enforceability of the district court's injunction based on overbreadth and vagueness. We granted EchoStar's petition and directed the parties to address the circumstances under which a finding of contempt by a district court would be proper as to infringement by newly accused products and also address the proper time to raise the defenses of vagueness and overbreadth of an injunction.

As a result of our consideration of this case *en banc,* we hold that the two-step *KSM* analysis is unsound in contempt cases and we clarify the standards governing contempt proceedings in patent infringement cases. We therefore vacate the district court's finding of contempt of the infringement provision of the permanent injunction, and remand to the district court to make a factual determination of colorable differences under the new standard we lay out here. We thus vacate in part the damages awarded to TiVo for EchoStar's continued infringement. However, we once again affirm the district court's finding of contempt of the disablement provision of the permanent injunction and its sanctions award in its entirety because we conclude that EchoStar waived arguments of overbreadth and vagueness with regard to that provision.

## BACKGROUND

TiVo Inc. ("TiVo") owns U.S. Patent 6,233,389 ("the '389 patent" or "TiVo's patent"), which is entitled "Multimedia Time Warping System." The patented technology allows television users to simultaneously record and play ("time-shift") television broadcasts using what is commonly known as a digital video recorder ("DVR"). A DVR allows users to fast-forward, rewind, pause, and replay a "live" television program while it is playing on

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

the television set. TiVo's patent covers various features essential to the working of a DVR.

In 2004, TiVo sued EchoStar in the United States District Court for the Eastern District of Texas, alleging that its receivers infringe "hardware" claims (claims 1 and 32) and "software" claims (claims 31 and 61) of the '389 patent. The hardware claims are not at issue in this appeal.

Claim 31 of the '389 patent is the first of the two software claims. It provides as follows:

A process for the simultaneous storage and play back of multimedia data, comprising the steps of:

[1] providing a physical data source, wherein said physical data source accepts broadcast data from an input device, *parses video and audio data* from said broadcast data, and temporarily stores said video and audio data;

[2] providing a source object, wherein said source object extracts video and audio data from said physical data source;

[3] providing a transform object, wherein said transform object stores and retrieves data streams onto a storage device;

[4] wherein said source object obtains a buffer from said transform object, said source object converts video data into data streams and fills said buffer with said streams;

[5] wherein said source object is *automatically flow controlled* by said transform object;

[6] providing a sink object, wherein said sink object obtains data stream buffers from said transform object and outputs said streams to a video and audio decoder;

**\*877** [7] wherein said decoder converts said streams into display signals and sends said signals to a display;

[8] wherein said sink object is automatically flow controlled by said transform object;

[9] providing a control object, wherein said control object receives commands from a user, said commands control the flow of the broadcast data through the system; and

[10] wherein said control object sends flow command events to said source, transform, and sink objects.

'389 patent claim 31 (emphases added). Claim 61 is similar to claim 31, except that it recites an apparatus rather than a process. *See id.* claim 61.

The accused EchoStar satellite television receivers can be broadly classified into two categories based on the processing chip employed by the receiver: the "50X" series and the "Broadcom" series. The district court submitted questions of infringement and invalidity to the jury. *TiVo, Inc. v. Dish Network Corp.,* No. 2:04–CV–00001, ECF No. 690 (E.D.Tex. Apr. 13, 2006) [hereinafter Verdict Form]. On infringement, the jury was asked whether eight different models of EchoStar receivers, three of the 50X series and five of the Broadcom series, literally infringed the hardware or software claims of TiVo's patent. *Id.* at 2–3. The jury answered "yes" for each of the asserted claims, for each of the eight listed receivers. *Id.* It also found, by clear and convincing evidence, that EchoStar's infringement was willful, *id.* at 4, and awarded TiVo approximately $74 million in lost profits and reasonable royalties, *id.* at 8. The district court entered judgment on the verdict and issued a permanent injunction against EchoStar. In its injunction, the district court ordered EchoStar: (1) to stop making, using, offering to sell, and selling the receivers that had been found infringing by the jury (the "infringement" provision) and (2) to disable the DVR functionality in existing receivers that had already been placed with EchoStar's customers and in new placements that were yet to be placed with EchoStar's customers (the "disablement" provision). The infringement provision reads:

Each Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert of participation with them who receive actual notice hereof, are hereby restrained and enjoined, pursuant to 35 U.S.C. 283 and Fed.R.Civ.P. 65(d), from making, using, offering to sell, selling, or importing in the United States, the Infringing Products, either alone or in combination with any other product and all other products that are only colorably different therefrom in the context of the Infringed Claims, whether individually or in combination with other products or as a part of an-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

other product, and from otherwise infringing or inducing others to infringe the Infringed Claims of the '389 patent.

J.A.162. The disablement provision reads:
Defendants are hereby FURTHER ORDERED to, within thirty (30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) in all but 192,708 units of the Infringing Products that have been placed with an end user or subscriber. The DVR functionality, i.e., disable all storage to and playback from hard disk drive of television data) [sic] shall not be enabled in any new placements of the Infringing Products.

*Id.* The injunction defines both the terms "Infringing Claims" and "Infringing Products":
[T]he Court thereby enters judgment for Plaintiff against Defendants for willful**878** infringement of U.S. Patent No. 6,233,389 ("'389 patent"), claims 1, 5, 21, 23, 32, 36, 52, 31 and 61 ("the Infringed Claims") by Defendants' following DVR receivers (collectively the "Infringing Products"): DP–501; DP–508; DP–510; DP–522; DP–625; DP–721; DP–921; and the DP–942.

*Id.* 161. The district court's definition of the term "Infringing Products" listed the same model numbers that the jury in its verdict had found infringing.

Following the entry of final judgment by the district court, we affirmed in part, reversed in part, and remanded the district court's decision. EchoStar had appealed issues of claim construction and infringement. We found that the district court had incorrectly construed at least one limitation of the hardware claims and reversed the portion of the judgment upholding the jury's verdict that EchoStar's DVRs literally infringed the hardware claims. *TiVo, Inc. v. EchoStar Commc'ns Corp.,* 516 F.3d 1290, 1304–05 (Fed.Cir.2008). However, we found no error in the district court's construction of the software claims and also affirmed the jury's verdict that the EchoStar devices infringed the software claims of the '389 patent. *Id.* at 1310.

At that time, EchoStar had not appealed the district court's grant of a permanent injunction. In our opinion, we noted that the district court's injunction, which had been stayed during the course of the appeal, would take effect following our decision. *Id.* at 1312. We remanded to the district court to make a determination as to any additional damages that TiVo may have sustained while the stay of

the permanent injunction had been in effect. *Id.* Our mandate issued, and the injunction became effective, on April 18, 2008.

Following the decision on the appeal, TiVo moved the district court to find EchoStar in contempt of the court's permanent injunction. After conducting a series of hearings on TiVo's motion, the district court ruled that EchoStar was in contempt of both provisions of its permanent injunction. With regard to the infringement provision, the district court rejected EchoStar's argument that it had redesigned its infringing receivers in a manner that rendered them more than colorably different from the adjudged infringing devices. EchoStar contended that it had redesigned the infringing software on both the 50X and the Broadcom receivers so that the "parsing" limitation of claims 31 and 61 was no longer satisfied. EchoStar argued that was because it had replaced the "start code detection" feature, which was originally alleged to meet the parsing limitation, with a "statistical estimation" feature. Video recordings in a DVR are comprised of sequential frames of audio and video data that are received as a data stream and stored to the hard drive of the DVR. The start code detection feature in the infringing receivers parsed for codes that designated the start of each video frame and indexed those codes so as to allow the system to precisely locate and access a required frame from the data stream whenever needed, such as during rewind and fast forward operations by the user. EchoStar contended that functionality was now accomplished by using a statistical estimation feature that relied on average frame rate statistics to estimate the location of a given video frame. EchoStar further argued that it had modified the infringing software on the Broadcom receivers so that the "automatically flow controlled" limitation of claims 31 and 61 was no longer satisfied. On that point, EchoStar's contention was that it completely eliminated the "record buffer" that existed in its original software to provide flow control of data that was being transferred **879** from a pool of data buffers to the hard drive of the receiver. Thus, in its modified software, EchoStar argued, there was no "automatic flow control," thereby allowing for some data loss whenever there was an overflow of data in one of the data buffers resulting from a difference in data transfer rates to and from the buffer.

The district court evaluated the two modifications and found by clear and convincing evidence that the modified DVR software was not more than colorably different from the infringing software, and did continue to infringe the software claims. On EchoStar's contention

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

that the "parsing" limitation was not met, the court held that the modified receivers, like the adjudicated ones, continued to utilize "PID filtering," which EchoStar itself had recognized as "parsing," and thus were not more than colorably different from the adjudicated receivers. *TiVo, 640 F.Supp.2d at 870.* As for EchoStar's contention that it had eliminated the automatic flow control limitation by removing one of the buffers, the court, looking at the actual amount of data loss in the modified software, discredited EchoStar's claim, and held that, in essence, it was a change from eleven buffers to ten, and did not render the modified devices more than colorably different from the original device. *Id. at 871.* In the absence of more than a colorable difference between EchoStar's original and modified devices, the district court concluded that contempt proceedings were appropriate under our decision in *KSM. Id. at 871.* Because it then found clear and convincing evidence of continued infringement of the software claims by the modified devices, the district court held EchoStar to be in violation of the infringement provision of the injunction. *Id. at 873.*

Moreover, the district court held that even if EchoStar had achieved a noninfringing design-around, EchoStar would still be in contempt because it had failed to comply with the plain language of the disablement provision in the district court's order requiring it to disable DVR functionality completely from the specifically named receiver models adjudged to be infringing at trial. EchoStar argued to the district court that because the disablement provision required it to disable "Infringing Products," EchoStar was merely required to disable infringing DVR software, which did not exist once it had redesigned its receiver software. The district court rejected that argument, reasoning that if EchoStar believed that the infringing receivers in their entirety were not subject to the order or that the order improperly covered noninfringing practices, then EchoStar should have requested that the district court modify its order or should have challenged the scope of the injunction on appeal. *Id. at 874.* The district court concluded that having failed to do either at the time that the injunction issued, EchoStar had waived any argument that the injunction was overbroad. *Id.*

In view of EchoStar's contempt of the court's order, the district court imposed sanctions against EchoStar in the amount of nearly $90 million. *TiVo Inc. v. Dish Network Corp., 655 F.Supp.2d 661, 666 (E.D.Tex.2009).* The court also awarded damages to TiVo for the continued infringement by EchoStar's redesigned software. *Id.* Fur-

ther, the court amended its earlier injunction, requiring EchoStar to seek the court's approval before implementing future noninfringing workarounds to its DVR software.

DISCUSSION
A.
*Contempt for Violation of the Infringement Provision*
We begin by providing clarification of the standard to be used for determining **\*880** contempt in cases of alleged continued infringement. EchoStar argues that it was improper for the district court to decide issues relating to continued infringement by EchoStar's modified software in a summary contempt proceeding, as opposed to a new trial on the merits, and to find EchoStar in contempt of the infringement provision of the injunction. According to EchoStar, its modifications to the infringing DVR software rendered the modified receivers more than colorably different from the one found infringing in the prior jury trial. Moreover, EchoStar contends, it undertook a "Herculean" effort in redesigning the DVR software in its receivers and, by obtaining opinions of counsel, it made a good faith effort to ensure that its devices would no longer infringe the software claims of TiVo's patent. We address each of these arguments in turn.

1. Good Faith as a Defense to Civil Contempt
We first consider EchoStar's arguments that contempt is improper "where the defendant engaged in diligent, good faith efforts to comply with the injunction and had an objectively reasonable basis to believe that it was in compliance." EchoStar argues that it employed 15 engineers for 8000 hours to complete the software redesign, which took a year. Similarly, it stresses the fact that it obtained an opinion of noninfringement from a respected patent law firm. It further contends that the redesign, by allowing for data loss, compromised performance in order to avoid infringement of TiVo's patent, giving it a product inferior to what it previously had. In light of this evidence, EchoStar argues, the district court was incorrect in finding it in contempt.

[1][2] We disagree and conclude that EchoStar misreads the law. We have made it clear that, under Supreme Court precedent, a lack of intent to violate an injunction alone cannot save an infringer from a finding of contempt. *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed.Cir.1998)* ("The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt."). "Since the purpose [of civil contempt] is remedial, it matters not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

with what intent the defendant did the prohibited act....
An act does not cease to be a violation of a law and of a
decree merely because it may have been done inno-
cently." *McComb v. Jacksonville Paper Co.,* 336 U.S.
187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949). We are thus
bound by Supreme Court precedent to reject EchoStar's
good faith arguments and its reliance upon opinions
of counsel. Although a defendant's diligence and good
faith efforts are not a defense to contempt, these factors may be
considered in assessing penalties, a matter as to which the
district court has considerable discretion. *See, e.g., Test
Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 582
(5th Cir.2005); *Stryker Corp. v. Davol, Inc.,* 234 F.3d
1252, 1260 (Fed.Cir.2000). However, the district court
was correct in rejecting EchoStar's good faith arguments
in deciding whether a violation had occurred.

### 2. The Propriety of a Contempt Proceeding on Infringe-
ment

In recent times, we have required district courts to
make a two-part inquiry in finding a defendant in con-
tempt of an injunction in patent infringement cases. *KSM
Fastening Sys., Inc. v. H.A. Jones Co.,* 776 F.2d 1522,
1530–32 (Fed.Cir.1985). First, the court must determine
whether a contempt hearing is an appropriate setting in
which to adjudge infringement by the redesigned product.
*Id.* at 1532. The court may do this by comparing the ac-
cused product with the adjudged infringing **\*881** product
to determine if there is "more than a colorable difference"
between the accused product and the adjudged infringing
product such that "substantial open issues with respect to
infringement" exist. *Id.* Where the court finds that to be
the case, a new trial is necessary to determine further in-
fringement and the court may not proceed with a con-
tempt finding. *Id.* Only in cases where the court is satis-
fied on the threshold inquiry of the appropriateness of a
contempt proceeding can a court inquire whether the re-
designed product continues to infringe the claims as pre-
viously construed. *Id.*

[3][4][5] We conclude that *KSM's* two-step inquiry
has been unworkable and now overrule that holding of
*KSM*. *KSM* crafted a special rule for patent infringement
cases, in that it required a threshold inquiry on the propri-
ety of initiating a contempt proceeding. We recognize
now that inquiry confuses the merits of the contempt with
the propriety of initiating contempt proceedings. More-
over, as a practical matter, district courts do not separately
determine the propriety of a contempt proceeding before
proceeding to the merits of the contempt itself. As a re-
sult, we will telescope the current two-fold *KSM* inquiry

into one, eliminating the separate determination whether
contempt proceedings were properly initiated. That ques-
tion, we hold, is left to the broad discretion of the trial
court to be answered based on the facts presented.
*Additive Controls,* 154 F.3d at 1349 (The district court
"has broad discretion to determine how best to enforce its
injunctive decrees."). What is required for a district court
to hold a contempt proceeding is a detailed accusation
from the injured party setting forth the alleged facts con-
stituting the contempt. As with appeals from findings of
civil contempt in other areas of law, we will only review
whether the injunction at issue is both enforceable and
violated, and whether the sanctions imposed were proper.
Allegations that contempt proceedings were improper in
the first instance do not state a defense to contempt. As to
the question whether an injunction against patent in-
fringement has been violated, courts should continue to
employ a "more than colorable differences" standard as
discussed below.

[6] Thus, we decline to address EchoStar's argument
that the district court, applying the old *KSM* standard,
improperly held contempt proceedings in this case, al-
though we note that there may be circumstances in which
the initiation of contempt proceedings would constitute an
abuse of discretion by the district court. Under our hold-
ing today, we find no abuse of discretion by the district
court in proceeding to contempt. TiVo moved the district
court to find EchoStar in contempt. Having reviewed the
computer source code of the modifications to the infring-
ing software, TiVo asserted to the district court that the
modified EchoStar receiver software was not more than
colorably different from the original one, and thus that
EchoStar was in violation of the infringement provision of
the permanent injunction. Given its familiarity with the
parties, the patent at issue, and the infringing products, we
do not find an abuse of discretion in the district court's
decision to hold contempt proceedings.

### 3. The "More than Colorable Differences" Test
### (a) Discussion of the Law

[7][8] The criteria for adjudicating a violation of a
prohibition against continued infringement by a party
whose products have already been adjudged to be infring-
ing is a matter of Federal Circuit law. The Supreme Court
has cautioned that contempt "is a severe remedy, and
should **\*882** not be resorted to where there is a fair
ground of doubt as to the wrongfulness of the defendant's
conduct." *Cal. Artificial Stone Paving Co. v. Molitor,* 113
U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885); *see also
MAC Corp. of Am. v. Williams Patent Crusher & Pulver-*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

*izer Co., 767 F.2d 882, 885 (Fed.Cir.1985)* (citing *Cal. Artificial Stone Paving Co., 113 U.S. at 618, 5 S.Ct. 618).* We have previously interpreted that inquiry in patent cases as one of colorable differences between the newly accused product and the adjudged infringing product. *Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1380 n. 3 (Fed.Cir.2007).* Thus, the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes.

We have stated the test for colorable differences as one that requires determining whether "substantial open issues with respect to infringement be tried" exist. *KSM, 776 F.2d at 1532.* In some cases, that has misled district courts to focus solely on infringement by the newly accused devices in deciding contempt. That is the case here. Today, we reject that infringement-based understanding of the colorably different test. Instead of focusing solely on infringement, the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products.

[9][10][11] The primary question on contempt should be whether the newly accused product is so different from the product previously found to infringe that it raises "a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Cal. Artificial Stone Paving Co., 113 U.S. at 618, 5 S.Ct. 618.* The analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, *Additive Controls, 154 F.3d at 1350,* but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims. Where one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into whether that modification is significant. If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate. *Arbek Mfg., Inc. v. Moazzam, 55 F.3d 1567, 1570 (Fed.Cir.1995)* ("[T]he modify-

ing party generally deserves the opportunity to litigate the infringement questions at a new trial.").

[12][13][14][15][16] The significance of the differences between the two products is much dependent on the nature of the products at issue. The court must also look to the relevant prior art, if any is available, to determine if the modification merely employs or combines elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made. [FN1] A nonobvious modification **\*883** may well result in a finding of more than a colorable difference. Where useful, a district court may seek expert testimony in making the determination. *See Abbott Labs., 503 F.3d at 1380* (allowing the use of expert testimony on the colorable differences question). The analysis may also take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation. *State Indus. Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed.Cir.1985)* ("One of the benefits of a patent system is the so-called 'negative incentive' to 'design around' a competitor's products"). But an assertion that one has permissibly designed around a patent should not be used to mask continued infringement. Determining the requisite level of difference is a question of fact.

> FN1. We do not suggest that the law on obviousness is binding in contempt proceedings, where, in most cases, a single limitation that has been modified by an infringer is at issue. However, the innovative significance of the modification is best viewed in light of the existing art and from the perspective of one of ordinary skill in the art.

[17][18][19][20] Conversely, when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement. *KSM, 776 F.2d at 1528.* Thus, the court is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met. In making this infringement evaluation, out of fairness, the district court is bound by any prior claim construction that it had performed in the case. The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences.[FN2] As with other factual deter-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

minations, both findings are reviewed for clear error. Where the court finds a violation and awards sanctions, such a sanctions award is reviewable for an abuse of discretion.

> FN2. *See, e.g., KSM,* 776 F.2d at 1524; *Martin v. Trinity Indus., Inc.,* 959 F.2d 45, 47 (5th Cir.1992); *AMF, Inc. v. Jewett,* 711 F.2d 1096, 1100 (1st Cir.1983); *Stringfellow v. Haines,* 309 F.2d 910, 912 (2d Cir.1962); *Telling v. Bellows–Claude Neon Co.,* 77 F.2d 584, 585 (6th Cir.1935).

(b) Application of the "More Than Colorable Differences" Test to This Case

Applying the test in this case, one of the features of EchoStar's original receivers that TiVo relied upon to prove infringement to the jury was the start code detection feature. TiVo argued, and the jury accepted, that feature satisfied the "parsing" limitation found in the software claims. It is undisputed that EchoStar replaced that feature with a statistical estimation feature. In finding contempt of the infringement provision of the injunction under our *KSM* standard, TiVo alleged, and the district court looked to, a different feature of EchoStar's modified devices, *viz.,* the PID filter, as meeting the parsing limitation of the software claims. Although the parties disputed their prior positions on whether the PID filter performs "parsing," TiVo never unequivocally alleged prior to the contempt stage that the PID filter met that claim limitation. That was a new allegation. However, because the district court concluded that EchoStar had itself conceded that the PID filter performs a type of parsing, the court held that EchoStar's modified devices continued to infringe the software claims, and that EchoStar was in contempt of the infringement provision.

**\*884** [21] The district court found no need to evaluate the newly designed statistical estimation feature to determine whether it was significantly different from the start code detection feature, the feature that had been previously alleged by TiVo to meet the parsing claim limitation, and whether the replaced feature continued to meet the parsing limitation of the software claims. Our holding today requires that those issues be determined on remand because the statistical estimation feature is the replacement for a feature that had been previously alleged to be infringing. As noted, the district court's determination that the modified devices are in fact infringing would be irrelevant to the question whether the injunction has been violated if the differences between the two features at

issue are indeed significant, thus rendering the new devices more than colorably different from the original ones. It is also possible that, in a new infringement proceeding, a fact finder could conclude that the PID filter in EchoStar's redesigned device meets the "parsing" limitation and that the devices continue to infringe the asserted claims, but that should not be decided in a contempt proceeding.

We therefore vacate the district court's finding of contempt for violation of the infringement provision and remand to the district court to make that factual determination under the guidance that we have provided today. If the district court determines that there are more than colorable differences between the two devices,[FN3] EchoStar is entitled to a new infringement proceeding.[FN4]

> FN3. EchoStar asserts that its statistical estimation methodology is the subject of a U.S. patent. That fact alone, EchoStar suggests, serves as prima facie evidence of colorable differences. We disagree. The colorable differences analysis should be based on the court's independent evaluation of specific differences between the original and the modified products. Here, the court must compare the newly developed statistical estimation feature with the original start code detection feature to determine if the difference between the two is significant.

> FN4. We make no holding as to how a district court should proceed in a new infringement proceeding. As we have stated before, the district court is able to utilize principles of claim and issue preclusion (*res judicata* ) to determine what issues were settled by the original suit and what issues would have to be tried. *KSM,* 776 F.2d at 1532.

Consequently, we also vacate the district court's order awarding TiVo "$1.25 per subscriber per month plus interest," totaling approximately $110 million, for EchoStar's continued infringement by EchoStar's *modified* software during the stay of the injunction and the district court's order requiring EchoStar to seek preclearance for any future attempts to design around the patent. On remand, the district court is required to separately calculate and award TiVo damages at the rate of "$1.25 per subscriber per month plus interest" for the use of the *original* infringing software during the stay of the injunction.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

B.
*Contempt for Violation of the Disablement Provision*

We consider next EchoStar's arguments that the injunction is unenforceable either because it is overly broad or it is too vague to provide fair notice of what it actually prohibits. We find both arguments unpersuasive.

1. Vagueness

[22] EchoStar argues that the only natural reading of the phrase "disable the DVR functionality ... in ... the Infringing Products" is that EchoStar was required**885** to disable only products that maintained the infringing functions, and not products that did not continue to infringe. Presuming that its redesigned software was noninfringing, EchoStar argues that it had no obligation to disable the DVR component of the new software. In light of the district court's later reading of the provision as barring all DVR functionality in all of the enumerated receiver models regardless of later modifications to the software, EchoStar argues that the express language failed to provide EchoStar with even the slightest hint that the district court was thinking about non-infringing functionality that had yet to be invented. In the absence of fair notice of the district court's interpretation of the provision, EchoStar, citing the Supreme Court's decision in *Granny Goose Foods, Inc. v. Teamsters,* argues that it cannot be held in contempt of an order that was not "sufficiently specific and definite." 415 U.S. 423, 445, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

[23] We reject EchoStar's argument that vagueness can operate as a defense to the district court's holding of contempt here. Under the Federal Rules of Civil Procedure, "[e]very order granting an injunction ... shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed.R.Civ.P. 65(d). Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). Thus, the judicial contempt power is a potent weapon that cannot be founded upon "a decree too vague to be understood." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). On the other hand, where a party faced with an injunction perceives an ambiguity in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague. *McComb, 336 U.S. at 192, 69*

S.Ct. 497.

EchoStar's vagueness defense rests on its argument that the term "Infringing Products" in the district court's injunction is ambiguous, thereby rendering the injunction vague and unenforceable. The disablement provision deals separately with the receivers already placed in EchoStar's customers' homes and new placements that are yet to reach the customer. EchoStar notes that while the first directive of the disablement provision calls for EchoStar to "disable the DVR functionality of the Infringing Products that have been placed with an end user or subscriber," the sentence following it requires that "[t]he DVR functionality, storage to and playback from a hard disk drive shall not be enabled in any new placements of the Infringing Products." EchoStar argues that this second sentence, because it references new placements, requires that the term "Infringing Products" be read as referring only to infringing functionality. After all, EchoStar continues, one does not disable a function that has yet to be devised or installed. As for the court's definition of the term "DVR functionality," EchoStar argues that the definition "all storage to and playback from" refers merely to the entire infringing function. Moreover, EchoStar argues that a provision that requires such detailed "sentence diagramming" to arrive at the district court's reading of the order cannot be sufficiently "specific and definite" to satisfy the contempt standard. If the district court wanted to prevent EchoStar from deploying modified DVR functionality **886** on its receivers, EchoStar suggests, it should have specifically done so.

[24][25] We do not agree with EchoStar that the stretched reading of the disablement provision that it proposes allows it to collaterally attack the district court's injunction at this stage of the proceedings. We agree that in certain circumstances vagueness can operate as a defense to contempt. *Granny Goose, 415 U.S. at 445, 94 S.Ct. 1113.* In a case such as this, however, where a party has bypassed opportunities to present its asserted vagueness claim on appeal or through a motion to clarify or modify the injunction, the party cannot disregard the injunction and then object to being held in contempt when the courts conclude that the injunction covered the party's conduct. *McComb, 336 U.S. at 192, 69 S.Ct. 497* ("Respondents could have petitioned the District Court for a modification, clarification or construction of the order.... They undertook to make their own determination of what the decree meant. They knew they acted at their peril."); *see also Chaganti & Assocs., P.C. v. Nowotny,* 470 F.3d 1215, 1224 n. 2 (8th Cir.2006); *Szabo v. U.S. Marine*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

*Corp.,* 819 F.2d 714, 718 (7th Cir.1987) ( "Not having appealed from the grant of the injunction, U.S. Marine cannot argue that it is too vague to be enforced...."); *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.,* 760 F.2d 698, 700 (6th Cir.1985) ("The defendants acted at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning or by failing to have it set aside or amended if they thought it was defective."); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 808 (2d Cir.1981) ("[A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt. The party and his counsel have a duty to ... ascertain the terms of any order entered against the party").

EchoStar's reading of the disablement provision is contrary to the most natural reading of the provision, as it would necessarily render the injunction vague on its face. The injunction clearly defines the term "Infringing Products" in terms of eight actual receiver models, specifically listing each model number.[FN5] If the term "Infringing Products" in the disablement provision were to refer merely to products containing infringing functionality, the court's definition of the term, immediately preceding the disablement provision, as a list of eight receiver models would directly contradict EchoStar's understanding of the term. If that were the case and the injunction were in fact facially vague and susceptible of two alternative readings, the burden was clearly on EchoStar to seek clarification or modification from the district court. *McComb,* 336 U.S. at 192, 69 S.Ct. 497. EchoStar did neither. Nor did it ever disable any DVR functionality in even a single receiver that had been found infringing by the jury. It unilaterally decided that downloading modified software to its infringing receivers was sufficient to comply with the district court's injunction.

> FN5. It is notable that the district court's definition of "Infringing Products" is consistent with the products found by the jury in the earlier infringement proceedings to infringe TiVo's patent. *See* Verdict Form at 2–3.

In *McComb,* employers faced with an order barring them from violating any provision of the Fair Labor Standards Act relating to minimum wage, overtime, or record keeping argued that, because they had changed their methods of computing hours worked, and because the modified practices were "not specifically enjoined," they were immune from contempt proceedings.**887 The Court

disagreed, roundly condemning a rule that "would give tremendous impetus to the program of experimentation with disobedience of the law." *Id.* The Court stated that a rule requiring the conduct at issue in contempt to have been "specifically enjoined" would "prevent accountability for persistent contumacy." *Id.* EchoStar's position here, in essence, arguing that it was not "specifically enjoined" from downloading modified DVR software in place of the infringing software, is not very different, and we find the Supreme Court's decision in *McComb* binding. *See also* Walker v. Birmingham, 388 U.S. 307, 316–17, 320, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (refusing to permit a collateral challenge to the validity of an injunction despite the fact that the "breadth and vagueness of the injunction itself would ... *unquestionably be subject to substantial constitutional question,*" and emphasizing that "the way to raise that question was to apply to the ... courts to have the injunction modified or dissolved.") (emphasis added). Fifth Circuit law, applicable here, similarly places the burden on the party faced with the injunction. *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 517 (5th Cir.1969) ("If for some reason Gulf King had doubts about the meaning of any part of the injunction, it could have sought district court clarification.").

The cases cited by EchoStar in its argument that it is entitled to raise the vagueness defense at this time are inapposite. The Supreme Court's decision in *Granny Goose* involved an ex parte temporary restraining order, such that, unlike EchoStar, the defendants were not involved in the proceedings leading to the issuance of the order. Moreover, the Supreme Court considered only the duration of the order, not whether any terms in the order were so vague as to make it unenforceable. *Granny Goose,* 415 U.S. at 445, 94 S.Ct. 1113 ("There being no order to violate, the District Court erred in holding the Union in contempt."). Thus, we find *Granny Goose* inapplicable to the factual circumstances presented here.

In *International Longshoremen,* the record of the lower court proceedings made it abundantly clear that the alleged contemnor did not understand the terms of the order, repeatedly telling the district court, "I don't know what this order means," but receiving no clarification. 389 U.S. at 70–71, 88 S.Ct. 201. Indeed, the order there was simply a blanket statement requiring the union to "to comply with and to abide by the said [arbitrator's] Award," but the award contained "only an abstract conclusion of law, not an operative command capable of 'enforcement.' " *Id.* at 74, 88 S.Ct. 201 (holding that the order at issue could "only be described as unintelligible").

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

The Supreme Court expressly explained that "[w]e do not deal here with a violation of a court order by one who fully understands its meaning but chooses to ignore its mandate." *Id. at 76, 88 S.Ct. 201.* The injunction here is not unintelligible. Moreover, from the time that the injunction issued to the time that the district court found it in contempt, EchoStar never once raised the facial ambiguity that it now finds in the injunction. It cannot now spring its ambiguity defense to avoid contempt on the basis of its self-serving interpretation of the court's injunction. To hold otherwise would indeed impose an unnecessarily heavy burden on district courts to draft immaculate orders—a burden that neither the federal rules nor the Supreme Court mandate—and would radically constrict district courts' inherent power to enforce their orders. We decline to do so and conclude that EchoStar has waived its vagueness arguments.

The dissent cites our precedent and several cases from our sister circuits to argue **\*888** that contempt is improper, even in the absence of a direct appeal, if the contemnor can later propose an interpretation of the injunction that allows the conduct on which the contempt allegation is based. Given the strained nature of EchoStar's proposed reading of the disablement provision [FN6] and the fact that it had ample notice of the proposed terms of the injunction as well as a full and fair opportunity to litigate the issue, [FN7] we do not find the law cited by the dissent persuasive on the facts before us. Some of the cited cases address conduct that simply could not have violated the order at issue, thus finding no application to this case. *See, e.g., Abbott Labs., 503 F.3d at 1383* Others cover orders that were truly inadequate to meet the mandate of Rule 65, similar to the one in *International Longshoremen. See, e.g., Common Cause v. Nuclear Regulatory Comm'n, 674 F.2d 921, 926–27 (D.C.Cir.1982); H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp., 568 F.2d 24, 27 (7th Cir.1977).*

FN6. The dissent argues that the district court read the term "Infringing Products" in the two provisions of the disablement provision inconsistently in order to find EchoStar in contempt. We need not reach that issue because there is a clear definition of that term at the beginning of the order that contradicts EchoStar's proposed reading of the term.

FN7. TiVo's Proposed Permanent Injunction was submitted on May 26, 2006. JA 7820–24. Both the merits and the wording of the injunction were fully briefed and were the subject of a hearing held on June 28, 2006. Thereafter, the district court issued a thorough order addressing the eBay factors and the parties' arguments related thereto. *TiVo Inc. v. EchoStar Commc'ns Corp., 446 F.Supp.2d 664 (E.D.Tex.2006).* In short, the parties were intimately involved in the proceedings leading up to the injunction, as well as its wording, and the injunction was the result of careful consideration by the district court.

[26][27] Moreover, most of the cases cited deal with situations very different from the one presented here and address specific circumstances where it may be proper to allow vagueness as a defense to contempt, such as with *ex parte* orders being enforced against non-parties to the order, *see, e.g., U.S. v. Saccoccia, 433 F.3d 19, 21–22 (1st Cir.2005); N.Y. Telephone Co. v. Commc'ns Workers of Am., 445 F.2d 39, 42 (2d Cir.1971);* or consent decrees that did not provide adequate notice to the enjoined party,[FN8] *see, e.g., Perez v. Danbury Hosp., 347 F.3d 419, 422 (2d Cir.2003); Gates v. Shinn, 98 F.3d 463, 464 (9th Cir.1996); Harris v. City of Phila., 47 F.3d 1342, 1344 (3d Cir.1995).* More importantly, we decide that the facts presented here fall squarely within the holding of *McComb,* and we are not persuaded that we are inconsistent with Supreme Court precedent.

FN8. With consent decrees, it is generally the case that a district court summarily approves the agreement that the parties reach. Where disputes later arise in such cases, the court is required, for the first time, to interpret the letter of the contract and determine the intent of the parties. Thus, in such cases, contempt can be disfavored where the party had no notice that the decree barred the alleged conduct. In determining notice to the alleged contemnor, courts are limited to the four corners of the decree. *United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)* ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). The situation here is very different.

2. Overbreadth

[28] EchoStar argues that even if the district court's reading of the disablement provision is the proper one, the order would still be unenforceable because the prohibition of noninfringing activity is unlawful. EchoStar contends

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

that it simply downloaded noninfringing software to the **\*889** receivers that it had placed with consumers. EchoStar argues that the district court's injunction cannot prohibit such noninfringing design-arounds. Because such an injunction would be unlawfully overbroad, EchoStar contends that it should not be expected to "appeal an unnatural reading of an injunction" at the time that the injunction issued. We disagree and conclude that a broad reading of the disablement provision to include *all* DVR functionality is not "unnatural" and that having failed to raise the issue on direct appeal, EchoStar is now barred from using it as a defense to the district court's finding of contempt.

EchoStar's primary business is satellite television transmission, and the products that were found by the jury to infringe TiVo's patent are satellite receivers that receive and display broadcasts to users. The DVR functionality that allows users to record and play back such broadcasts is merely one of the software components of the receivers. The disablement provision of the injunction required disablement only of that DVR software component in eight specific models of receivers that had been found infringing by the jury. J.A. 162. The district court further defined "DVR functionality" as "all storage to and playback of . . . television data." *Id.* Plainly, the word "all" refers to *all* DVR functionality, infringing or not, and that is not an unnatural reading of the disablement provision. The second directive of the disablement provision, requiring EchoStar not to enable DVR functionality in any new placements of the receivers, *i.e.,* DVR functionality that could potentially be noninfringing, supports a plain reading of the word "all." It was therefore not "unnatural" to read the court's order as a prohibition on employing any type of DVR software, infringing or not, on those listed receiver models.

[29] Supreme Court precedent is clear on the issue. The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt. *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948). In *Maggio,* affirming an appeals court's conclusion that a bankruptcy order "is subject only to direct attack, and that its alleged infirmities cannot be relitigated or corrected in a subsequent contempt proceeding," the Supreme Court stated that "[i]t would be a disservice to the law if we were to depart from the longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *333 U.S. at 69, 68 S.Ct. 401.*

Sixty years later, that law remains unchanged. *Travelers Indemnity Co. v. Bailey,* ——— U.S. ———, 129 S.Ct. 2195, 2203, 174 L.Ed.2d 99 (2009). In *Travelers,* claimants sought to overturn a bankruptcy court order interpreting an injunction previously issued by that court, barring any future claims against insurer defendants. The Second Circuit agreed with the claimants that the previously issued order could not be enforced according to its terms because the bankruptcy court had exceeded its jurisdiction when it issued those orders in the first place. Rejecting the Second Circuit's willingness to entertain this collateral attack, the Supreme Court held the challenge foreclosed—even though it concerned the bankruptcy court's subject matter jurisdiction and statutory authority to issue such an order—because it could have been raised on direct appeal. *Id.* at 2205–06. Fifth Circuit law, applicable here, is also in accord on the issue. *See W. Water Mgmt., Inc. v. Brown,* 40 F.3d 105, 108 (5th Cir.1994) (holding that the scope of an injunction may be challenged only on direct appeal).

**\*890** We therefore conclude that EchoStar's arguments on overbreadth of the district court's injunction have been waived by its failure to raise them earlier. Had EchoStar brought an appeal on the injunction at the time that it issued, arguing that the injunction was overbroad, we could have addressed its legitimacy.[FN9] The time to do so has long passed. "It is just as important that there should be a place to end as that there should be a place to begin litigation." *Travelers,* 129 S.Ct. at 2206 (citations omitted).

> FN9. We note, however, that, although we have strongly discouraged judicial restraint of noninfringing activities, *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1367 (Fed.Cir.1998), we have never barred it outright and instead have repeatedly stated that district courts are in the best position to fashion an injunction tailored to prevent or remedy infringement. *See Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 777 (Fed.Cir.1993). Because it is not before us in this case, we make no *en banc* holding on that issue.

As a result, we affirm the district court's finding of contempt and the $1.00 per subscriber per month, totaling approximately $90 million, awarded by the district court as a sanction against EchoStar. The district court expressly stated that this award was made on alternative grounds, *i.e.,* for violation of either of the two separate provisions of the injunction, that dealing with disablement

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

and the other dealing with infringement.[FN10] *See TiVo, 655 F.Supp.2d at 663, 666* (stating that "[i]n the alternative, the Court found that EchoStar had failed to comply with the plain directives of [its] order," and awarding the "additional $1.00 sanction to promote EchoStar's compliance with [its] orders."). Although we vacate the finding of contempt of the infringement provision, the finding of contempt of the disablement provision has been affirmed. We therefore have no basis for modifying the amount of the sanction.

> FN10. We do not agree with the dissent's suggestion that the "disablement provision" is limited only to products that had been placed with end users. Dissent at 892–93. On the contrary, the district court and the parties have thus far referred to both directives of that provision, *i.e.*, that relating to units placed with end users as well as that on new placements, together as the "disablement provision," and the district court imposed sanctions for the violation of the entire "disablement provision."

CONCLUSION

In sum, we vacate the court's holding of contempt of the infringement provision and remand for the court to make a finding concerning any colorable difference between the previously adjudicated infringing devices and the newly accused devices. We vacate in part the damages awarded for continued infringement. We affirm the district court's finding of contempt of the disablement provision of the court's injunction and the sanctions imposed by the district court.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

DYK, Circuit Judge, with whom Chief Judge RADER and Circuit Judges GAJARSA, LINN, and PROST join, dissenting-in-part.

While I join Parts A(1)-(3)(a) of the majority decision, I dissent from parts A(3)(b) and B. In particular, I dissent from the majority's decision to uphold the finding of contempt of the disablement provision. In my view, the disablement provision does not bar the installation of modified software that renders the devices non-infringing, and, even if the provision were unclear, an unclear injunction cannot be the basis for contempt. The majority's holding that lack of clarity provides no defense is inconsistent with established law reflected in numerous decisions of the Supreme**891** Court, our own court, and our sister circuits.

I also dissent from the majority's decision to remand to the district court to determine whether EchoStar violated the infringement provision. In my view, that provision plainly was not violated. Finally, I dissent from the majority's affirmance of the $90 million sanctions award, which was based in part on the finding of contempt of the infringement provision. If the contempt finding is set aside with respect to the infringement provision, the sanctions award must also be set aside.

I

Before today's majority decision—upholding contempt of the disablement provision based on an apparently successful design-around—two principles seemed well established. The first of these was that accused infringers were encouraged to design around patent claims to achieve non-infringing products and methods. As this court has recognized, "designing new and possibly better or cheaper functional equivalents [of a competitor's product] is the stuff of which competition is made." *State Industry, Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1235–36 (Fed.Cir.1985).*[FN1] The second was that contempt sanctions could not be imposed for the violation of an injunction that failed to provide sufficient clarity. As the Supreme Court stated in *Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 444, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974),* the "basic principle built into [Federal Rule of Civil Procedure] 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." The majority has disregarded both principles with predictably unhappy consequences for the innovation community.

> FN1. See also *State Indus., 751 F.2d at 1236* ("One of the benefits of a patent system is its socalled 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace."); Brief of Amicus Curiae Federal Trade Commission on Rehearing En Banc at 4–10, *TiVo, Inc. v. EchoStar Corp.*, No. 2009–1374 (Fed.Cir. Nov. 11, 2010) (emphasizing the importance of incentives to designaround innovation).

A

A crucial question in any contempt proceeding is whether the injunction bars the accused conduct. The "interpretation of the terms of an injunction is a question of

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

law we review de novo." *Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1382 (Fed.Cir.2007).* The disablement provision of the injunction here provided:

> Defendants are hereby FURTHER ORDERED to, within thirty (30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) ... of the *Infringing Products* that have been placed with the end user or subscriber.

J.A. 162 (emphasis added). Because other provisions are also pertinent, the entire injunction is included as an Appendix to this opinion.

TiVo and the district court essentially interpret this provision as barring design-arounds (i.e., the substitution of non-infringing software for software found to infringe in the devices installed in customers' homes). In its briefing to the panel, TiVo characterized the injunction as prohibiting the "continued provision of DVR functions through the exact units previously found to infringe— whether or not they have purportedly been modified by the downloading of new software." Br. of Pl.-Appellee TiVo, Inc. at 21, *TiVo, Inc. v. *892 EchoStar Corp.,* No. 2009–1374 (Fed.Cir. Jun. 25, 2010). The district court similarly characterized the injunction as "not limited to infringing software." *TiVo, Inc. v. EchoStar Corp.,* 640 F.Supp.2d 853, 874 (E.D.Tex.2009) [hereinafter *Contempt Opinion* ]. The language of the injunction itself contradicts this interpretation.

First, contrary to TiVo's argument, the definition of the term "Infringing Products" on its face does not simply refer to devices with particular model numbers; it requires that those products be "Infringing." The term "Infringing Products" appears in the introductory paragraph of the injunction, which enters judgment "against Defendants for willful infringement ... by Defendants' following DVR receivers (collectively the 'Infringing Products'): DP–501; DP–508; DP–510; DP–522; DP–625; DP–721; DP–921; and the DP–942." J.A. 161. The injunction was thus written to address devices with particular model numbers that had been found by the jury to be infringing. The verdict form itself is framed in terms of whether particular model numbers infringed. *See* Verdict Form at 2–3, *TiVo, Inc. v. EchoStar Corp.,* No. 2:04–CV01 (E.D.Tex. Apr. 13, 2006), ECF No. 690. Thus it is not surprising that the injunction also made reference to those particular model numbers that were found to infringe. The evident purpose of the injunction was to award relief concerning the spe-

cific products found to infringe.

Second, interpreting the term "Infringing Products" as extending to non-infringing products is contradicted by the usage of the same term elsewhere in the injunction. In addition to the disablement provision, the term "Infringing Products" is also used in the infringement provision— barring continued infringement by the "Infringing Products ... and [those] products that are only colorably different"—and in the enablement provision—barring the enablement of "DVR functionality ... in any new placements of the Infringing Products." [FN2] J.A. 162. Neither TiVo nor the district court interprets the injunction as barring design-arounds in other contexts (i.e., the installation of new, non-infringing software in new products or the substitution of new, non-infringing software in old products still on the shelves). For example, under the heading, "The Disablement Provision Does Not Prohibit EchoStar From Attempting To Design Around The Patent," TiVo states explicitly that "[n]othing in the injunction ... prevents EchoStar from providing DVR functions using new, non-infringing receivers." Br. of Pl.-Appellee TiVo, Inc. at 21. The district court adopted a similar interpretation. In finding EchoStar in contempt of the infringement provision, the district court did not rest its contempt finding on the fact that the model numbers were the same. *Contempt Opinion,* 640 F.Supp.2d at 871–73. Instead, the court's contempt finding rests on the fact that the model numbers are the same *and* the accused products are not more than colorably different from those found to infringe. *Id.* If the infringement and enablement provisions barred the sale or placement of products bearing the listed model numbers regardless of infringement, there would have been no need to evaluate whether EchoStar's modified products were "no more than colorably different" and "continue[d] to infringe." *Id.* at 860–61.

> FN2. The majority's treatment of the latter provision is confusing. The majority treats the enablement provision as though it is part of the disablement provision, although it clearly was not the basis for a contempt finding. "By not disabling DVR functionality in adjudged receivers that had been placed with end-users, EchoStar failed to comply with the plain language of this Court's order." *Contempt Opinion,* 640 F.Supp.2d at 874.

**\*893** The inconsistency of the interpretation adopted by TiVo and the district court is particularly acute when the disablement and enablement provisions are compared.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

Identical language is used in the disablement provision, which deals with products that are already in the hands of customers, and the enablement provision, which deals with products still on the shelf.

| Disablement Provision | Enablement Provision |
|---|---|
| "Defendants are hereby FURTHER ORDERED to, within thirty (30) days of the issuance of this order, disable *the DVR functionality* (i.e., disable all storage to and playback from a hard disk drive of television data) ... of the *Infringing Products* that have been placed with an end user or subscriber." J.A. 162 (emphases added). | "The *DVR functionality* (i.e., disable all storage to and playback from a hard disk drive of television data) *shall not be enabled* in any new placements of the *Infringing Products*." J.A. 162 (emphases added). |

By using the same terminology in both the disablement and enablement provisions, it is clear that the injunction extends only to infringing software. It would be contrary to established principles of construction to give identical language a different meaning in one provision than the other. Nor can the use of the term "DVR functionality," with the notation "disable all storage to and playback from a hard disk drive of television data," distinguish the disablement provision from other provisions in which the term "Infringing Products" is used. The enablement provision also uses the term "DVR functionality" and describes it in the same manner as the disablement provision ("i.e., disable all storage to and playback from a hard disk drive of television data"). J.A. 162.

In the context of statutory construction, identical language is assumed to have the same meaning. *See, e.g., Clark v. Martinez,* 543 U.S. 371, 378, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005); *Dept. of Revenue of Or. v. ACF Indus., Inc.,* 510 U.S. 332, 341–42, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). In *Clark,* the Supreme Court held that identical language in two separate provisions of a statute must be interpreted in the same manner even though the two provisions had different purposes. 543 U.S. at 378–380, 125 S.Ct. 716. This basic principle of interpretation should apply to injunctions as well. Thus, the terms "Infringing Products" and "DVR functionality" must be interpreted consistently throughout the injunction. Under such a construction, the disablement provision would necessarily permit the replacement of the infringing software with new non-infringing software.

Third, the injunction does not explicitly address the issue of design-arounds, and TiVo's proposed interpretation is clearly contrary to the established policy in favor of design-arounds discussed above. There is indeed a serious question as to whether, in light of this strong policy, the district court would even have the authority to issue an injunction barring design-arounds. This court has repeatedly instructed that injunctions in the patent context must be limited to restraints designed to prevent further infringement. *See Riles v. Shell Exploration and Prod. Co.,* 298 F.3d 1302, 1311–12 (Fed.Cir.2002); *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1366–67 (Fed.Cir.1998); *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 772–73 (Fed.Cir.1993); *Eli Lilly & Co. v. Medtronic, Inc.,* 915 F.2d 670, 674 (Fed.Cir.1990). Specifically, this court has recognized that "an injunction is only proper to the extent it is 'to prevent the violation of any right secured by patent.' " *Eli Lilly,* 915 F.2d at 674 (quoting 35 U.S.C. § 283). For example,**\*894** in *Riles* we held that "an injunction cannot impose unnecessary restraints on lawful activity," and thus concluded that enjoining the use of the entire product was improper where the defendant "may lawfully use its [product] without infringing." 298 F.3d at 1311–12. Similarly, in *Joy Technologies,* we held that an injunction "which precludes [the defendant] from activities that are not necessary to prevent infringement of the patented process cannot stand." 6 F.3d at 777. Absent explicit language, no reasonable attorney would read the disablement provision as barring design-arounds because such an injunction would likely exceed the district court's authority. Here there is no such explicit language. For these reasons, it is clear that the injunction does not in fact bar design-arounds and that it permits the substitution of non-infringing software in existing products that are in the hands of customers, just as it permits the use of non-infringing software in identical devices not yet distributed to the customer.

### B

Unlike the district court, the majority does not hold that the injunction clearly prohibits the accused conduct. Rather, the majority concludes that even if the injunction is unclear, the district court's reading is "the most natural" and lack of clarity is not a defense in contempt proceedings.[FN3] Maj. Op. at 886. With respect, this position is untenable. The question here is not whether the injunction is invalid because it is vague. The question is whether contempt is appropriate where the injunction does not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

clearly prohibit the challenged conduct. The Supreme Court, our own court, and our sister circuits have clearly answered that question in the negative: An accused party cannot be held in contempt for violating an injunction which does not clearly reach the accused conduct. This is so because contempt is improper where there is a "fair ground of doubt" as to whether the defendant's conduct is barred by the injunction. *Cal. Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885); *MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir.1985) (citing *Cal. Artificial Stone Paving Co.,* 113 U.S. at 618, 5 S.Ct. 618). The fair ground of doubt principle is itself reflected in *Rule 65(d) of the Federal Rules of Civil Procedure,* which the Supreme Court has interpreted to require that an injunction contain a clear and unambiguous statement of "what the court intends to require and what it meant to forbid." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); *see also Square Liner 360, Inc. v. Chisum,* 691 F.2d 362, 378 (8th Cir.1982) ("An enjoined party ought not to be compelled to risk a contempt citation unless the proscription is clear.").

> FN3. The majority suggests that EchoStar's reading of the disablement provision is "contrary to the most natural reading of the provision" because "it would necessarily render the injunction vague on its face." Maj. Op. at 886. The exact same point, however, could be made with respect to the reading of the disablement provision advanced by TiVo and the district court.

The majority relies primarily on *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), to suggest that the requirement of clarity may be invoked only on direct appeal or by a motion to modify the injunction, and that, absent a successful appeal or modification, there can be no defense to a contempt charge based on a lack of clarity in the injunction. As discussed below, that novel theory is inconsistent with numerous cases subsequent to *McComb* in the Supreme**895** Court and courts of appeals holding that contempt is improper, even in the absence of a successful direct appeal or modification, if the injunction could reasonably be read not to prohibit the conduct on which the contempt allegation is based. *McComb* itself lends no support to the majority's theory.

In order to understand the Supreme Court's holding in *McComb,* it is essential to understand the facts of the case.

The original decree enjoined violations of the Fair Labor Standards Act. *Id.* at 189, 69 S.Ct. 497. It also explicitly required the defendants to pay their employees a specific hourly rate of pay, compensate them for overtime, and keep adequate records. *Id.* The defendants were found in violation of the decree because they had (1) set up a "false and fictitious method of computing compensation without regard to the hours actually worked;" (2) "adopted a plan which gave the employees a wage increase in the guise of a bonus" to avoid paying overtime; (3) improperly classified some employees as "executive or administrative employees" (exempt categories); and (4) employed workers "in excess of the maximum workweek without paying them overtime compensation." *Id.* at 190, 69 S.Ct. 497. The defendants argued that they could not be held in contempt because the "plan or scheme which they adopted was not specifically enjoined." *Id.* at 192, 69 S.Ct. 497. The Supreme Court rejected this argument, noting that the defendants "were alerted by the decree against any violation of the specified provisions of the Act." *Id.* The Court did not suggest that the decree (or the Act itself) was in any way unclear or that lack of clarity would not be a defense to contempt. Rather, the Court concluded that contempt was proper because the defendants' actions were clearly prohibited by the decree. *Id.* To be sure, the Court stated: "Respondents could have petitioned the District Court for a modification, clarification or construction of the order." *Id.* But the Court's recognition that such relief existed "if there were extenuating circumstances or if the decree was too burdensome in operation," is just that— the acknowledgment of an alternative remedy available where defendants had difficulty in complying with an otherwise clear decree. The Court in *McComb* did nothing to discard the "fair ground of doubt" standard set forth more than sixty years before in *California Artificial Stone Paving. See* 113 U.S. at 618, 5 S.Ct. 618.

Indeed, after *McComb,* the Supreme Court twice affirmed the principle that an accused party cannot be held in contempt for violating an injunction which does not clearly reach the accused conduct. *See Granny Goose,* 415 U.S. at 428, 94 S.Ct. 1113; *Int'l Longshoremen's,* 389 U.S. at 76, 88 S.Ct. 201. In *International Longshoremen's,* the parties disputed the meaning of a provision in a collective bargaining agreement. 389 U.S. at 65, 88 S.Ct. 201. The union argued that the "set-back" provision entitled the workers to a partial day's pay when the start of their work day was postponed due to unfavorable weather conditions, while the employers argued that the workers were entitled to no more than one hour's pay. *Id.* at 65–66, 88 S.Ct. 201. An arbitrator ruled that the employer's reading of the set-back provision was correct, but the union

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

refused to work unless the employers adopted the contrary interpretation. *Id.* at 66–68, 88 S.Ct. 201. At the request of the employers, the district court entered an order requiring the union "to comply with and to abide by [the arbitrator's award]." *Id.* at 69, 88 S.Ct. 201. The district court later found the union in contempt of the order because it had engaged in a strike designed to require the employers to provide the increased set-back pay. **\*896***Id.* at 72, 88 S.Ct. 201. The Supreme Court reversed the contempt finding because "the order ... did not state in 'specific ... terms' the acts that it required or prohibited." *Id.* at 76, 88 S.Ct. 201 (quoting Fed.R.Civ.P. 65(d)).

In *Granny Goose,* the district court issued a temporary restraining order without specifying an expiration date. 415 U.S. at 428, 94 S.Ct. 1113. Under the rule in effect at the time, the order would expire no later than twenty days after issuance. *Id.* at 432–33, 94 S.Ct. 1113. Prior to its expiration, the district court denied a motion to dissolve the order. *Id.* at 429, 94 S.Ct. 1113. After twenty days, the district court held the union in contempt for violation of the order. *Id.* at 425–26, 94 S.Ct. 1113. The union argued that contempt was improper because the order had expired before the date of the alleged contempt, *id.* at 430, 94 S.Ct. 1113, but the district court rejected this argument on the ground that its denial of the motion to dissolve had "effectively converted the order into a preliminary injunction of unlimited duration," *id.* at 440, 94 S.Ct. 1113. The Supreme Court reversed the contempt finding, holding that "where a court intends to supplant such an order with a preliminary injunction of unlimited duration ..., it should issue an order clearly saying so." *Id.* at 444–45, 94 S.Ct. 1113. "And where it has not done so, a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b)." *Id.* at 445, 94 S.Ct. 1113. The Court noted that the "basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Id.* at 444, 94 S.Ct. 1113.

Despite the majority's assertion that, under *McComb,* "[t]he burden was clearly on EchoStar to seek clarification or modification from the district court," Maj. Op. at 886, no other court has read *McComb* in this way. In cases which are quite similar to the present case, courts of appeals, including ours, have consistently held that contempt is inappropriate where the injunction does not clearly prohibit the accused conduct. For example, in *Abbott,* an injunction barred Apotex from "commercially

manufacturing, using, selling, offering to sell, or importing into the United States generic divalproex sodium which the Court has found to be infringing...." 503 F.3d at 1376. Apotex was found in contempt for violating the injunction by filing an Abbreviated New Drug Application ("ANDA") for a generic divalproex sodium with the Food and Drug Administration. *Id.* at 1375. This court reversed the contempt finding because the injunction did not clearly prohibit the conduct on which the contempt allegation was founded, stating that "we cannot agree that Apotex's actions actually violated the original injunction" because "[t]he injunction contains no 'explicit notice' to Apotex that the filing of a new ANDA ... was forbidden." *Id.* at 1382–83. We noted that Rule 65(d) requires that "those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* at 1382. "These concerns have led courts to construe injunctions narrowly where, as here, they failed to give adequate notice that particular conduct was enjoined." *Id.* at 1382–83.

In *New York Telephone Co. v. Communications Workers of America,* 445 F.2d 39, 48 (2d Cir.1971), a temporary restraining order barred the unions "from engaging in ... any strike, work stoppage, boycott of overtime work, slowdown or any other form of interference with the business of plaintiff." *Id.* at 43. In the interest of reaching a settlement, the parties agreed to extend this order indefinitely. *Id.* An agreement was reached and the work stoppage ended, but several months **\*897** later the workers commenced a strike over a different issue than the one leading to the original order. *Id.* The district court found the unions in contempt of the earlier restraining order because its plain language barred "any strike." *Id.* at 43–44. On appeal, the Second Circuit reversed the contempt finding. *Id.* at 51. The court concluded that "despite the broad language" of the order, the order clearly "was meant to apply and should only be applied to the [dispute occurring at the time of its issuance]." *Id.* at 46. Additionally, the court noted that "[e]ven if we considered the restraining order's scope to be a closer issue, several policy considerations [e.g., the clarity requirements of Rule 65(d) ] counsel us to resolve all ambiguities in favor of the unions." *Id.* at 48.

In *Common Cause v. Nuclear Regulatory Commission,* 674 F.2d 921, 924 (D.C.Cir.1982), the district court held that the Nuclear Regulatory Commission had acted unlawfully in closing a budget meeting to the public. The district court issued an injunction enforcing the Sunshine Act, 5 U.S.C. § 522b (1976), and prohibiting the Commission "from closing future meetings of a similar na-

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

ture." *Id.* The court later found the Commission in contempt for closing a series of budget meetings. *Id.* at 925. On appeal, the District of Columbia Circuit reversed the contempt finding because the injunction was "susceptible to more than one interpretation" because it did not "identify the characteristics of a future meeting 'of a similar nature.' " *Id.* at 926.

In *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 32 (1st Cir.1990), a consent decree barred a group of franchisors, from "[p]assing off, inducing, or enabling others to sell or pass off any heat transfers, garments and/or other items which are not genuine NBA products as and for genuine NBA products." The district court found the franchisors in contempt. *Id.* at 31. The franchisees' had sold counterfeit merchandise, and the district court concluded that, by granting franchises, the franchisors had "enabled" the franchisees to sell the counterfeit merchandise. *Id.* at 32–33. The First Circuit reversed the contempt finding, declining to read the term "enabling" to "encompass the simple granting of the franchise itself" when doing so would require "reading [the decree] rather strongly against, rather than 'to the benefit of[,] the person charged with contempt.' " *Id.* at 33 (quoting *Ford v. Kammerer,* 450 F.2d 279, 280 (3d Cir.1971)).

In *Perez v. Danbury Hospital,* 347 F.3d 419, 422 (2d Cir.2003), a consent decree prohibited the hospital from "tak[ing] ... action, *directly or indirectly,* to limit, preclude or obstruct the plaintiffs ... from practicing neonatology at Danbury Hospital ...." (emphasis added). The district court found the hospital in contempt of the decree because doctors practicing at the hospital had "encouraged obstetricians in two private practice groups" to obstruct the plaintiffs and thus had "indirectly" obstructed them. *Id.* On appeal, the Second Circuit reversed the contempt finding because, while the decree clearly prohibited the hospital from "indirectly" obstructing the plaintiffs from practicing neonatology, it did not require that the hospital "tak[e] steps to prevent other doctors from interfering with the [plaintiff] physicians' practice." *Id.* at 424–25.

In *Imageware, Inc. v. U.S. West Communications,* 219 F.3d 793, 794 (8th Cir.2000), a protective order stated that information designated as confidential may only be used in "preparing for and conducting ... proceedings in this action and for no other purpose." The district court found Imageware in contempt because it submitted copies of documents containing confidential information to the Federal ***898** Communications Commission in an-

other proceeding. *Id.* at 795–96. On appeal, the Eighth Circuit reversed the contempt finding because "a reasonable person could have read the order as a whole" not to prohibit Imageware's conduct. *Id.* at 797. In reaching this conclusion, the court relied on a provision not addressed in the parties' briefs which permitted confidential information to be "offered into evidence in open court unless the Designating Party obtains an appropriate protective order from the Court." *Id.* at 795, 797. The court concluded that, based on this provision, the alleged contemnors "could reasonably, even if perhaps erroneously, have believed that [the documents in question] were not subject to [the protective order]" because they were offered into evidence in open court without objection. *Id.* at 797.

In each one of these cases, the language of the injunction could be read to cover the accused conduct, but the court of appeals held that the accused infringer could reasonably interpret it as not covering the accused conduct. These cases establish that contempt cannot be based on an order susceptible to two reasonable readings, one of which does not cover the accused conduct. There are numerous additional circuit cases in which courts have reversed a contempt finding because the injunction or decree does not clearly prohibit the accused conduct.[FN4]

> **FN4.** *See, e.g., United States v. Saccoccia,* 433 F.3d 19, 29 (1st Cir.2005) (reversing a contempt finding because "the Order, when issued, could have been interpreted in various ways"); *Gilday v. Dubois,* 124 F.3d 277, 285–86 (1st Cir.1997) (narrowly construing a consent decree in favor of the alleged contemnor and reversing a contempt finding because the consent decree was "susceptible to various reasonable interpretations"); *Gates v. Shinn,* 98 F.3d 463, 467–72 (9th Cir.1996) (reversing a contempt finding because the consent decree lacked specificity, which "is a predicate to a finding of contempt"); *Harris v. City of Phila.,* 47 F.3d 1342, 1349, 1352 (3d Cir.1995) (noting that "[s]pecificity in the terms of consent decrees is a predicate to a finding of contempt," and reversing a contempt finding because consent decree did not contain "an unambiguous provision" requiring the conduct forming the basis of the contempt allegation); *Dollar Rent A Car v. Travelers Indem. Co.,* 774 F.2d 1371, 1376 (9th Cir.1985), (reversing a contempt finding because it was not "reasonably inferrable" from the injunction that the accused conduct was a violation); *see also Salazar v. D.C.,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

602 F.3d 431, 442 (D.C.Cir.2010) ("Civil contempt may be imposed only when the underlying order is clear and unambiguous."); *H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp.,* 568 F.2d 24, 27 (7th Cir.1977) (refusing to hold the defendants in contempt because the order did not "describe in reasonable detail ... the act or acts sought to be restrained"); *Doe v. Gen. Hosp. of D.C.,* 434 F.2d 423, 424–25 (D.C.Cir.1970) (refusing to hold the defendants in contempt because of a "possible confusion" regarding the meaning of the preliminary injunction).

With respect, these numerous Supreme Court and Court of Appeals cases directly refute the majority's manifestly incorrect statement that "the burden was clearly on EchoStar to seek clarification or modification from the district court." Maj. Op. at 886. In many of the cases discussed above no such challenge was even attempted before the contempt proceeding.[FN5] And even in cases where there was an attempt to clarify prior to contempt proceedings, the court reversed the contempt finding without attributing any significance to the attempt to clarify.[FN6] None of these cases **899** held or suggested that the failure to take an appeal or seek modification before the contempt proceeding constituted a waiver of the requirement that the injunction clearly prohibit the accused conduct. Indeed, in our own decision in *Abbott,* such an appeal had been taken, and the injunction had been affirmed, yet we reversed the contempt finding on the ground that the injunction did not clearly prohibit the conduct on which the contempt allegation was founded. *See* 503 F.3d at 1377. Thus, the burden lies on the party seeking to enforce the order to "establish that ... the order the contemnor failed to comply with is clear and unambiguous ...," *King v. Allied Vision Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995),[FN7] and "[t]he failure of the equity court to spell out in a decree's text the specific obligations resting upon the defeated litigant is fatal to any contempt proceeding," *H.K. Porter,* 568 F.2d at 27.

FN5. *See Granny Goose,* 415 U.S. 423, 94 S.Ct. 1113; *Salazar,* 602 F.3d 431; *Imageware,* 219 F.3d 793; *Gilday,* 124 F.3d 277; *Gates,* 98 F.3d 463; *Harris,* 47 F.3d 1342; *NBA Props.,* 895 F.2d 30; *Common Cause,* 674 F.2d 921; *N.Y. Tel. Co.,* 445 F.2d 39; *Doe,* 434 F.2d 423.

FN6. *See Int'l Longshoremen's,* 389 U.S. at 70–71, 76, 88 S.Ct. 201 (mentioning that the alleged contemnors unsuccessfully attempted to obtain

clarification, but not linking this attempt to the court's ability to enforce the clarity requirement); *Abbott,* 503 F.3d at 1377, 1382–83 (mentioning that the issuance of the injunction was appealed, but not linking this event to the court's ability to enforce the clarity requirement); *Saccoccia,* 433 F.3d at 30–31 (mentioning the alleged contemnor's attempts to clarify the meaning of the injunction with the U.S. Attorney, but not linking these attempts to the court's ability to enforce the clarity requirement); *Perez,* 347 F.3d at 422, 423–25 (mentioning the alleged contemnor's motion to clarify the scope of the injunction, but not linking this attempt to clarify to the court's ability to enforce the clarity requirement); *Dollar,* 774 F.2d at 1374, 1376 (mentioning the alleged contemnor's appeal of the preliminary injunction, but not linking the appeal to the court's ability to enforce the clarity requirement).

FN7. *See also Latino Officers Ass'n City of N.Y., Inc. v. N.Y.C.,* 558 F.3d 159, 164 (2d Cir.2009) ("The movant must establish that ... the order the contemnor failed to comply with is clear and unambiguous...") (emphasis omitted); *Saccoccia,* 433 F.3d at 26 (same); *Perez,* 347 F.3d at 423 (same); *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir.1999) (same); *Gilday,* 124 F.3d at 282 (same); *Porrata v. Gonzalez–Rivera,* 958 F.2d 6, 8 (1st Cir.1992) (same).

Apart from its reliance on *McComb,* the majority attempts to deal with this established authority in part by discussing cases dealing with the *validity* of an overly broad injunction, which are distinct from cases involving the requirement that the injunction clearly prohibit the accused conduct. For example, in *Walker v. Birmingham,* 388 U.S. 307, 317, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court rejected a *validity* challenge, but affirmed the contempt finding because "[t]he injunction in all events clearly prohibited [the accused conduct]." *Id.* at 317, 87 S.Ct. 1824.[FN8] Here we are dealing with a challenge to the application of the injunction, not a challenge to its validity. Where the majority does discuss the cases recognizing that lack of clarity is a defense to contempt, it is unable to meaningfully distinguish them.[FN9]

FN8. See also, *Szabo v. U.S. Marine Corp.,* 819 F.2d 714, 716–18 (7th Cir.1987), in which the alleged contemnor challenged the validity, not the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

clarity, of an injunction. The court affirmed the contempt finding, holding that the validity of the injunction was not a defense to contempt. *Id.* at 718–21.

FN9. The majority attempts to distinguish both *Saccoccia* and *New York Telephone* on the ground that they involved "ex parte orders being enforced against nonparties to the order." Maj. Op. at 888. This is simply not true. In *Saccoccia,* the injunction was specifically directed at the defendants "and their agents and attorneys." *433 F.3d at 22.* The attorneys were later held in contempt. *Id.* In *New York Telephone,* the union, which was a party to the original dispute, was the party later found in contempt. *445 F.2d at 41–43.* Further, the majority's suggestion that consent decrees are somehow more susceptible to attack on vagueness grounds is surprising both because the parties themselves draft the language of a consent decree and thus control the clarity with which it is drafted, and because there is no authority to support this proposition.

**\*900** Ironically, nothing more clearly demonstrates the majority's error than the fact that the very circuit cases on which the majority relies recognize the essential principle that contempt is improper where the injunction does not clearly prohibit the accused conduct. The cases even characterize this principle as "well settled." *See Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 808 (2d Cir.1981).* For example, in *Perfect Fit,* Acme argued that contempt was improper because it had no knowledge of the terms of the injunction, not having received the copies of the injunction mailed by the court. *Id.* The Second Circuit rejected Acme's argument, noting (in the language quoted by the majority at page 21) that "a litigant has a duty to follow the progress of an action and to inform himself of the terms of an order [entered against him]." *Id.* at 805. But at the same time, the court explicitly recognized that "[i]*t is indeed well settled that a person cannot be held in contempt of an order ... if the terms of the order are unclear or ambiguous.*" *Id.* at 808 (emphasis added). In support, the court cited *International Longshoremen's, 389 U.S. at 75–76, 88 S.Ct. 201,* and its own prior decision in *Powell v. Ward, 643 F.2d 924, 931 (2d Cir.1981),* which similarly recognized that "the [contempt] power may properly be exercised only if the order is clear and unambiguous." Applying this standard, the court in *Perfect Fit* affirmed the contempt finding only because it found that the order was not "too vague." *646 F.2d at 809–10.*

Similarly, the court in *Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir.2006)* (cited by the majority at page 883), stated that "[a] contempt order must be based on a party's failure to comply with a *clear and specific* underlying order." (emphasis added and internal quotation marks omitted). In support, the court cited its own prior decision in *International Brotherhood of Electrical Workers v. Hope Electrical Corp., 293 F.3d 409, 418 (8th Cir.2002),* which also specifically recognized that "contempt orders must be based on a party's failure to comply with a clear and specific underlying order," and affirmed the contempt finding because it could "find no lack of clarity within ... the underlying orders sought to be enforced." In *Chaganti,* the finding of contempt was affirmed only after the court found that "the district court's settlement order had the clarity and specificity required to be enforced by contempt sanctions." *Chaganti, 470 F.3d at 1224.*[FN10] The Sixth Circuit, in *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc. 760 F.2d 698, 700 (6th Cir.1985)* (cited by the majority at page 883), recognized that "the validity of the injunction is not an issue in ... contempt [proceedings]," but also that an injunction must be "sufficiently clear and specific to provide the basis for ... contempt." The finding of contempt was affirmed only after the court found that "the preliminary injunction was sufficiently clear and specific." *Id.* In *Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 517 (5th Cir.1969)* (cited by the majority at page 884), the court explicitly recognized the clarity requirement and affirmed the contempt finding only after determining that the requirement was met. Specifically, the court stated:

FN10. The language relied upon by the majority appears in a confusing footnote, in which the court erroneously cites *Perfect Fit* for the proposition that the alleged contemnor "had an obligation to seek clarification of the court's order." *Id.* at 1224 n. 2. This footnote is inconsistent with both the text of the opinion and *Perfect Fit,* both of which explicitly recognize that contempt is improper where the order does not clearly reach the accused conduct.

**\*901** We also find that the injunction conformed to the requirements of F.R.Civ.P. 65(d). Rule 65(d) requires that an injunction have specificity so that those constrained to follow it will not want for guidance. The injunction in question is not lacking in clarity. Its interdiction of oppressive child labor is not vague, and its

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

command that Gulf King keep and preserve records is clearly understandable.

*Id.* at 517 (internal citations omitted). It was only after finding the injunction sufficiently clear that the court noted the possibility of an appeal of the injunction. *Id.*

Finally, the majority urges that permitting clarity to be addressed in contempt proceedings "would indeed impose an unnecessarily heavy burden on district courts to draft immaculate orders." Maj. Op. at 887. I do not suggest that the district court must draft perfect orders, but that it be required to draft orders that are sufficiently clear to provide notice of "what the court intends to require and what it meant to forbid." *Int'l Longshoremen's*, 389 U.S. at 76, 88 S.Ct. 201. Such a requirement, which is itself reflected in Rule 65(d), in no way alters the burden already placed on district courts. Not only is this level of clarity required in injunctions generally, but it is especially important in the context of patent infringement injunctions where the need to ensure that injunctions remain enforceable must be balanced against the need to incentivize design-around innovation.

In sum, TiVo was obligated to show that the injunction clearly prohibited the substitution of new noninfringing software. It did not remotely satisfy this burden. Under such circumstances, contempt is improper because there is at least a fair ground of doubt as to the wrongfulness of EchoStar's conduct.

## II

The majority vacates the district court's finding of contempt for violation of the infringement provision and remands to the district court to determine colorable differences and infringement. In my view, remand is wholly unnecessary because it is clear that there are colorable differences between the features relied upon to establish infringement and the modified features of the newly accused products.

The majority correctly describes the colorable differences requirement as involving a comparison between the specific features relied upon to establish infringement and the modified features of the newly accused product on a limitation-by-limitation basis. The party seeking to enforce the injunction bears the burden of demonstrating what products and features of those products were found to infringe. Here, it is undisputed that the feature found to satisfy the "parsing" limitation—the start-code-detection feature—was removed from EchoStar's modified products. Further, TiVo does not argue that the start-code de-

tection feature was merely replaced with a solution that was known in prior art. The statistical-estimation feature, which replaced the start-code-detection feature, was not present in original software and was not earlier viewed by TiVo as being capable of performing the required function. In fact, TiVo had earlier characterized the start-code detection feature, which was removed, as "required for a viable DVR." J.A. 1556. Therefore, it is clear that the statistical-estimation feature is more than substantially different from the start-code-detection feature.

Because the sole feature accused of satisfying the parsing limitation was removed from the modified product and replaced with a feature that is both substantially different and a solution not known in the prior art, the two products are necessarily **\*902** more than colorably different on the basis of the parsing limitation alone. As a result, the infringement provision of the injunction was not violated and there is no need for a remand.

## III

My final disagreement with the majority lies in the affirmance of the $90 million sanctions award despite the fact that the award is based on a finding of contempt that the majority reverses. The majority nonetheless affirms the district court's sanctions award in its entirety because it concludes that the "award was made on alternative grounds, i.e., for violation of either of the two separate provisions of the injunction." Maj. Op. at 890. The contempt judgment and the sanctions imposed by the district court, however, rest on two separate and distinct findings of contempt, neither of which standing alone is sufficient to sustain the sanctions award.

In its motion for sanctions, TiVo calculated damages based on both the models listed in the injunction and EchoStar's "VIP models" (a group of products that were not adjudged to infringe nor listed in the permanent injunction). *See* Decl. of Keith R. Ugone, Ph.D. In Support of TiVo's Motion for Sanctions for Contempt at 3–5 and Ex. 4, *TiVo, Inc. v. Dish Network Corp.*, 655 F.Supp.2d 661 (E.D.Tex.2009), ECF No. 947 [hereinafter TiVo's Sanctions Calculations]. TiVo apparently viewed EchoStar's activities with respect to the VIP models as a violation of the infringement provision because the VIP models were "no more than colorably different" from the models found to infringe. The district court specifically referenced and relied on TiVo's calculations when it awarded sanctions. *TiVo, Inc. v. Dish Network Corp.*, 655 F.Supp.2d 661, 666 (E.D.Tex.2009) (relying on the calculations submitted by TiVo's expert ("Dkt. No. 947"),

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

which included the VIP models in its calculations, to support the court's estimation of the total award at a rate of $2.25 per DVR subscriber). Because the VIP models were not specifically listed in the injunction, there is no plausible argument that EchoStar's activities with respect to these models constituted a violation of the disablement provision. Thus, the portion of the sanctions award with respect to the VIP models was based solely on EchoStar's alleged violation of the infringement provision.

Additionally, the disablement provision applied only to those products "that [had] been placed with the end user or subscriber" at the time the injunction issued. J.A. 162. But the sanctions award was based in part on DVR subscribers acquired *after* the date the injunction became effective. *See TiVo,* 655 F.Supp.2d at 666; TiVo's Sanctions Calculations at Ex. 4. Those later sanctions were obviously based on the alleged violation of the infringement provision of the injunction, not the disablement provision. However, the majority reversed the contempt finding with respect to the infringement provision; thus, it is inappropriate to affirm sanctions for violation of that provision.[FN11]

> **FN11.** The majority confusingly suggests that the district court imposed sanctions for violation of the portion of the injunction prohibiting the enablement of DVR functionality in any new placements of the Infringing Products. Maj. Op. at 890 n. 10. Nowhere does the district court, however, suggest that EchoStar violated the injunction by improperly enabling the DVR functionality in new placements of the Infringing Products. *See generally Contempt Opinion,* 640 F.Supp.2d 853; *TiVo, Inc. v. Dish Network Corp.,* 655 F.Supp.2d 661.

Because it is clear that the sanctions award was based in large part on EchoStar's alleged violation of the infringement **\*903** provision, the award cannot be sustained based on the alleged violation of the disablement provision alone. Even under the majority's view, a remand is essential to recalculate the sanctions award.

APPENDIX
**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS MAR-
SHALL DIVISION**
TIVO INC., Plaintiff,

v.

ECHOSTAR COMMUNICATIONS CORP., et. al.,
Defendants.

2:04–CV–1–DF

*FINAL JUDGEMENT AND PERMANENT INJUNC-
TION*

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the jury verdict delivered on April 13, 2006 and with the Court's contemporaneously filed orders, the Court thereby enters judgment for Plaintiff against Defendants for infringement of U.S. Patent No. 6,233,389 ("'389 patent"), claims 1, 5, 21, 23, 32, 36, 52, 31 and 61 ("the Infringed Claims") by Defendants' following DVR receivers (collectively "the Infringing Products"): DP–501; DP–508; DP–510; DP–522; DP–625; DP–721; DP–921; and the DP–942.

**IT IS THEREFORE ORDERED THAT** Plaintiff shall have and recover from Defendants, jointly severally, the total sum of $73,991,964.00, together with prejudgment interest at the rate of prime, said prejudgment interest in the total sum of $5,367,544.00 [FN1], together with supplemental damages in the amount of $10,317,108.00, together with post-judgment interest on the entire sum calculated pursuant to 28 U.S.C. § 1961. The amounts awarded in this judgment shall bear interest from the date of judgment and the lawful federal rate.

> **FN1.** The prejudgment interest and supplemental damages award herein do not cover the time period from August 1, 2006 to the date of entry of this Order. Consistent with the contemporaneously filed order addressing prejudgment interest and supplemental damages, the Court will award additional prejudgment interest and supplemental damages after receipt of additional information from Plaintiff's damages expert.

**IT IS FURTHER ORDERED THAT**

Each Defendant, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice hereof, are hereby restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed.R.Civ.P. 65(d), from making, using, offering to sell or selling in the United States, the Infringing Products, either alone or in combination with any other product and all other products that are only colora-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

646 F.3d 869, 98 U.S.P.Q.2d 1413
**(Cite as: 646 F.3d 869)**

bly different therefrom in the context of the Infringed Claims, whether individually or in combination with other products or as a part of another product, and from otherwise infringing or inducing others to infringe the Infringed Claims of the '389 patent.

Defendants are hereby **FURTHER ORDERED** to, within thirty(30) days of the issuance of this order, disable the DVR functionality (i.e., disable all storage to and playback from a hard disk drive of television data) in all but 192,708 units of the Infringing Products that have been placed with an end user or subscriber. The DVR functionality, i.e., disable all storage to and playback from a hard disk drive of television data) shall not be enabled in any new placements of the Infringing Products.

**\*904** Defendants shall forthwith provide written notice of this judgment, and the injunction ordered herein, to: their officers, directors, agents, servants, representatives, attorneys, employees, subsidiaries and affiliates, and those persons in active concert or participation with them, including any and all manufacturers, distributors, retailers, and service providers who have been involved in the making, using, selling, offering for sale or importing of any Infringing Products; and to all other persons or entities involved in any way with the making, using, selling, offering for sale or importing of any Infringing Products. Defendants shall take whatever means are necessary or appropriate to ensure that this order is properly complied with.

This injunction shall run until the expiration of the '389 patent.

This Court retains jurisdictions over Defendants to enforce any and all aspects of this Judgment and Permanent Injunction.

The Court further retains jurisdiction to award Plaintiff amounts for supplemental damages, interest, costs, attorneys fees and such other or further relief as may be just and proper.

All relief not specifically granted herein in denied. All pending motions not previously ruled on are denied. This is a Final Judgment and is appealable.

**SIGNED this 17th day of August, 2006.**

/s/ David Folsom

DAVID FOLSOM

UNITED STATES DISTRICT JUDGE

C.A.Fed. (Tex.),2011.
TiVo Inc. v. EchoStar Corp.
646 F.3d 869, 98 U.S.P.Q.2d 1413

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.