IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                            :
ePLUS, INC.,                     :
                            :
              Plaintiff,     :
  v.                             : Civil Action
                            : No. 3:09CV620
LAWSON SOFTWARE, INC.,           :
                            : October 28, 2011
              Defendant.     :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ :

COMPLETE TRANSCRIPT OF CONFERENCE CALL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Scott L. Robertson, Esq.
Jennifer A. Albert, Esq.
Michael T. Strapp, Esq.
David M. Young, Esq.
GOODWIN PROCTOR
901 New York Avenue, NW
Washington, D.C.   20001

Craig T. Merritt, Esq.
CHRISTIAN & BARTON
909 E. Main Street, Suite 1200
Richmond, VA   23219-3095

Counsel for the plaintiff ePlus

DIANE J. DAFFRON, RPR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

1       APPEARANCES:   (Continuing)

2       Kirstin L. Stoll-DeBell, Esq.
        William D. Schultz, Esq.
3       MERCHANT & GOULD
        3200 IDS Center
4       80 South Eighth Street
        Minneapolis, MN   55402-2215
5
        Dabney J. Carr, IV, Esq.
6       TROUTMAN SANDERS
        Troutman Sanders Building
7       1001 Haxall Point
        P.O. Box 1122
8       Richmond, VA   23218-1122

9               Counsel for the defendant Lawson Software.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The proceedings in this matter commenced

2     via conference call at 4:30 p.m.)

3

4          THE COURT:  Hello.  This is ePlus, Inc.

5     against Lawson, Inc., 3:09CV620.

6          Who's here for whom, beginning with counsel

7     for the plaintiff?

8          MR. WILLETT:  Judge, on behalf of ePlus, you

9     have Henry Willett with Christian Barton in Richmond.

10    Additionally, you have Jennifer Albert, Scott

11    Robertson and Michael Strapp.

12         MR. CARR:  Judge, this is Dabney Carr with

13    Troutman Sanders on behalf of Lawson Software.  Also

14    on the line for Lawson Software are Kirstin

15    Stoll-DeBell of Merchant & Gould, and Dan Thomasch,

16    Jason Lo, and Josh Krevitt of the law firm of Gibson

17    Dunn.

18         THE COURT:  I've been gone for three weeks.

19    When did Gibson Dunn get in this case?

20         MR. CARR:  While you were gone, Judge, we

21    filed -- this is Dabney Carr again.  We filed pro hac

22    vice motions for them, and they have, I believe, all

23    been granted.

24         THE COURT:  Yeah, I think I remember signing

25    some motions.

1    All right.  What I have here is a letter that

2    deals with a continuance motion basically and a

3    limitation on discovery.  I've just gotten some letter

4    from Mr. Thomasch, I guess.

5         I'm having a lot of static from somebody or

6    is it me that's causing it?  Is somebody on a strange

7    phone?

8         MR. CARR:  Yes, Your Honor.  This is Dabney

9    Carr again.  As I told your clerk, Dan Thomasch was

10   traveling and had to call in from a cellphone.  So I

11   think that's where the static is coming from.

12        THE COURT:  Are you moving, Mr. Thomasch?

13        MR. THOMASCH:  Yes, I am, Your Honor, but I'm

14   hands free and legal, but I'll hang up if that's a

15   problem because Mr. Krevitt or Mr. Lo could handle the

16   call.

17        THE COURT:  No.  The reason we're having the

18   trouble is because you're moving.  Pull over to the

19   side of the road.

20        MR. THOMASCH:  I will do that.

21        THE COURT:  And my guess is it will go away,

22   but I may be wrong.

23        MR. KREVITT:  Maybe, Dan, if you can mute it.

24        MR. THOMASCH:  I've stopped, Your Honor.

25        THE COURT:  Have you got the window down?

1          MR. THOMASCH:  I'm stopped and the windows

2     are up.

3          THE COURT:  All right.  Now let's try it.

4     Talk to me, Mr. Thomasch.  Recite the Gettysburg

5     address or something.

6          MR. THOMASCH:  Four score and seven years

7     ago.

8          THE COURT:  Yeah.  Our fathers brought forth

9     on this continent a new nation.  And you did very

10     well, and I think that solves the problem.

11          All right.  I haven't had a chance to even

12     read this letter that you submitted, Mr. Thomasch.

13     But anyway, I think this.  If there's a request for a

14     continuance, we need to sort that out.  I don't have a

15     lot of time in December to try a case.  And also I am

16     substantially distressed that somebody is producing a

17     million documents in a case where I doubt that many

18     were produced during the course of the original

19     litigation, but maybe there were.  But, ostensibly,

20     this should involve only those things that happened

21     after a certain period in time, and I don't know why

22     we're doing a million cases.

23          And I don't think I've ever seen a privilege

24     log that contains 2800, 2900 pages, and it's just not

25     going to be allowed to happen.  And if you stay with

1   that position, then I'm just going to overrule all

2   privilege as an abuse of the process and be done with

3   it.

4           You get back and you go through that 2900

5   pages and you cut it down to what is real.  And don't

6   have a bunch of legal assistants go through there

7   because some lawyer's name appears on there, they

8   claim it's privileged or work product.

9           Now, you-all filed a revised privilege log

10  today; is that right?

11          MR. THOMASCH:  We are filing one, Your Honor.

12  May I address very briefly those three points?

13          THE COURT:  It's hard to understand you.

14          MR. KREVITT:  Dan, let me jump in real

15  quickly.

16          Your Honor, this is Josh Krevitt.

17          And then, Dan, jump in as needed because

18  you're a bit closer to it, but given the phone, let me

19  take a shot at it.

20          Your Honor, we are very sensitive to - this,

21  as I said, is Josh Krevitt - to the complaint that

22  ePlus has made regarding the number of documents

23  produced, but I want to give the Court a little

24  context for that.

25          The allegations, as Your Honor knows, are

7

1    very serious here, that our client is in contempt of

2    an order of this court.  We are here to prove to Your

3    Honor that that's not the case.  We're confident that

4    ePlus won't be able to prove that that is the case.

5    But we want to make sure -- it's very, very important

6    that -- we heard the Court or we read the transcript

7    and understand this court very well, that we did not

8    want to interpose objections or withhold any documents

9    or create any ancillary issues that could possibly be

10   raised by ePlus that we're withholding any information

11   at all.

12           The document requests that were made were

13   extraordinarily broad.  We tried to confer with ePlus

14   to narrow those requests so that we wouldn't produce a

15   million pages of documents.  It's not only incredibly

16   burdensome for us, but very, very few of the million

17   pages of documents are going to be relevant to these

18   issues.  We completely agree with the Court.

19           Those efforts to narrow the scope of the

20   requests, though, were unsuccessful.  And because we,

21   again, maybe we're overly sensitive in this regard,

22   we're very sensitive to any suggestion that we are

23   withholding anything or otherwise preventing ePlus

24   from trying to prove its case, we went ahead and

25   gathered all responsive documents and produced them.

1           We agree, though, with the Court that a

2    million pages of documents is an awful lot of

3    documents.  It's just the nature of what the requests

4    called for.  It was all documents regarding these

5    products.  Those are very, very broad requests.  And

6    it's for that reason, Your Honor, that the privilege

7    log is so long as well because the broad scope of the

8    document requests pulled within them an enormous

9    amount of what we think will be clearly privileged

10   material.  And we will go back and give those

11   documents a hard look immediately and try to cull out

12   what we can.

13           But I wanted to at least address what might

14   be a concern of the Court that Lawson is deliberately

15   producing a lot of material.  We wanted to produce

16   much less and just weren't able to reach an agreement

17   regarding the scope of the production.

18           MR. ROBERTSON:  Your Honor, this is

19   Mr. Robertson.  May I briefly respond?

20           THE COURT:  Yes.

21           MR. ROBERTSON:  Your Honor, you may recall on

22   September 15 we had a conference call in which the

23   parties were contemplating a September 30 production.

24   Lawson asked for an extension to October 7.  I agreed.

25           We then served 20 targeted requests that

1   were, I think, less than one-fifth what we had done in

2   the entire litigation, addressed to one software

3   application, this RQC.

4          Your Honor will probably recall that there

5   were multiple software applications and modules

6   involved in the trial.  We were only looking for RQC.

7   We did it for a limited period of time from the jury

8   verdict going forward, and also limiting that.

9          On October 6, the day before the production

10  was due, we got a production from them saying, Here

11  are the search terms.

12         We actually tried to work with Lawson to say,

13  Let's narrow the search terms and give you something

14  that's more focused.  And we did that the following

15  day.

16         Showing no good deed goes unpunished, they

17  then said, Well, you have now caused us to do this all

18  over again.  We were willing to work with them on

19  these dates on this production, but the production is

20  not complete and won't be complete until sometime next

21  week when it's represented to us.

22         We have more than a million documents, which

23  exceeds the production in the entire litigation, for a

24  limited period of time.  When we were asking for

25  documents in the litigation, it went back for six

1  years.  That's inconceivable to me.  But nonetheless,

2  I've hired ten outside contract attorneys to come in

3  to try to do a review as quickly as we possibly can at

4  significant expense, but even under our own estimates,

5  that won't be done now for another two weeks if the

6  production is completed next week.  And we have no

7  assurances that that's going to be the case.

8          Even just last Friday, Lawson produced

9  750,000 pages of documents, and the same day clawed

10  back 10,000 documents based on an alleged

11  attorney-client privilege, which is just baffling to

12  me.  One of the documents, we just looked at them, is

13  an audio file of the theme song from the movie

14  *Ghostbusters* as privileged.  So I don't know what's

15  going on, Your Honor, but I'm trying to get a handle

16  on it so we can actually have a meaningful hearing.

17          So that's why we wanted to get in front of

18  you as quickly as we can.  The fact that the

19  November 28 hearing is just not going to be practical

20  given that I have to finish this massive document

21  review and then be able to take meaningful

22  depositions.  So that's the first thing on our agenda.

23  We just didn't want to sit on that with the Court --

24  understanding the Court has a busy schedule.

25          MR. KREVITT:  Your Honor --

1        THE COURT:  Wait a minute.  Did you claim as

2   privileged the audio of *Ghostbusters*?

3        MR. LO:  Your Honor, this is Jason Lo from

4   Gibson Dunn, if I may address that issue.

5        While Your Honor was out, as Your Honor

6   knows, we had two hearings before Magistrate Judge

7   Dohnal.  At that hearing -- at the first hearing,

8   which occurred last Monday, Mr. Robertson expressed

9   the same concerns that he's expressing to the Court

10  now, which is that we're looking at a large amount of

11  documents, all of which, by the way, are simply the

12  documents that are responsive to the search terms that

13  ePlus provided.  We are simply following exactly --

14       THE COURT:  Mr. Lo, I asked a simple

15  question.  And the answer to it is yes or it is no.

16  Did you claim as privileged the audio from

17  *Ghostbusters*, from the theme song?  Did you or didn't

18  you?

19       MR. LO:  No, Your Honor.

20       THE COURT:  You did not?

21       MR. LO:  No, Your Honor.  And if I can

22  elaborate on that because it has to do with --

23       THE COURT:  Mr. Robertson?

24       MR. ROBERTSON:  I'll send you the Bates

25  numbers, Your Honor, and the file.

1        THE COURT:  Have you got the document?

2   Mr. Robertson, do you have the document?

3        MR. ROBERTSON:  Yes, we have the Bates range

4   and the file number, yes.

5        THE COURT:  You send me the Bates range and

6   the file number.  And you send me the document that

7   matches it, Mr. Lo.  And if, in fact, you have claimed

8   that as privileged, that will be a relevant matter in

9   deciding how valid your claims are.

10        MR. THOMASCH:  This is Mr. Thomasch.  Can I

11   address that briefly because I was speaking at the

12   hearing where the procedure for the privilege was set

13   by the magistrate judge?

14        THE COURT:  If you know the facts about

15   whether you claimed it as privileged or not, yes.  Did

16   you?

17        MR. THOMASCH:  The fact is, Your Honor, is

18   that we have not until today.  Today we are making our

19   claim of privilege.  What we did before with the

20   understanding of all parties and the blessing of the

21   magistrate judge was we simply identified any

22   documents that we had to review for privilege.  And

23   the documents that we had to review for privilege

24   included documents in which the author or the

25   recipient was an attorney.

1          Those documents are being read.  They are not

2    assumed to be privileged.  We are not making such an

3    assumption.  We are not having paralegals do that.  We

4    are having lawyers do it.  We are not having contract

5    lawyers do it.  We're having our own staff members,

6    associates in our firm do it, and until they read the

7    document and make a determination it's privileged, we

8    are not claiming privilege.

9          So there was never an attempt to claim the

10   theme song as being privileged, but my understanding

11   is that many things were originally caught within the

12   system, and all that meant, Your Honor, is that we had

13   to review the document.  That was the procedure that

14   the magistrate judge set for us.

15         Today is the day on which we are supposed to

16   have finished our review and actually turn over the

17   log.  And next Wednesday we will produce many

18   documents that we reviewed for privilege and

19   determined were not privileged.

20         So no document has been claimed as privileged

21   yet, Your Honor, and we certainly have no intention of

22   claiming that document as privileged.  We simply had

23   to review it before we could turn it over.

24         THE COURT:  Mr. Thomasch, you need to slow

25   down, rev your engines back.  Decisions get made

1   better if I can follow what you're saying, and you

2   don't get going so fast I can't even keep up with you.

3           MR. THOMASCH:  Yes, Your Honor.

4           THE COURT:  That all could have been said

5   with the following sentence:  There was listed a

6   document that potentially was privileged, the audio

7   from *Ghostbusters*, because the filter through which we

8   were making the review had a name of a lawyer, and

9   under the procedure agreed, all we had to do

10  originally was list the documents that we potentially

11  were going to review.  And so, therefore, while we

12  did, in fact, list that as a potential document, we

13  haven't claimed it yet.  That would have been

14  sufficient.  All right?  That will be the way this

15  whole proceeding from now on will be conducted,

16  please.

17          All right.  Now, Mr. Robertson, did you want

18  to say something?

19          MR. ROBERTSON:  Just very briefly, Your

20  Honor.  I think it would be productive if we dispense

21  with the finger pointing and get to how we're going to

22  try and get a hearing done.

23          I will just say the document that I mentioned

24  was clawed back from the production.  So in order to

25  have it clawed back under the protective order, I

1    would have thought someone would have reviewed it in

2    order to make the clawback response.  But let's leave

3    that aside and just -- I find myself in a difficult

4    position, Your Honor, given that I have to finish this

5    review and prepare for a hearing.

6           I will say that Mr. Thomasch and his team and

7    my team had a fairly protective discussion for about

8    an hour last evening where we were able to agree on

9    certain things and come to an agreement to disagree on

10   other things, including the scope and nature of the

11   hearing that Your Honor contemplates.

12          We want it to be efficient.  We want it to be

13   quick.  I'm concerned that Lawson wants to turn this

14   into a retrial of the case based on our discussions.

15   We are willing to identify witnesses.  We're willing

16   to identify exhibits, but given the time the Court has

17   available, I can't envision this as a retrial, and I

18   don't think the Court envisioned this as a retrial.

19          There are three focused issues that Lawson

20   contends are different from RQC and RSS.  And we think

21   the hearing ought to focus on that and whether they

22   are colorably different or not.

23          This is not a new infringement trial.  And I

24   don't think the Court ever contemplated that and I

25   don't think the case law contemplates that.  For

1   example, Lawson's indicated it wants to have another

2   round of prehearing briefing on these issues.   We

3   think we have briefed it to a fare-thee-well.   We're

4   ready to move forward, put on our evidence, be able to

5   supplement it with whatever evidence comes out during

6   this discovery period, and provide post hearing

7   contempt briefing on these issues.

8           That's been my experience.   I've gone and

9   looked at the post *TiVo* hearings.   I've never seen

10  anything like Lawson is contemplating on this.   Even

11  the post *TiVo* hearings, and that's the seminal case

12  that came down back in April, Your Honor, shortly

13  after our injunction hearing that sets forth the

14  procedures for this.

15          No one has contemplated multi-day hearings on

16  these things.   We'd like to get done and move forward,

17  but we'd like to have an opportunity to review the

18  documents and take the depositions in an orderly

19  fashion subject to the Court's docket, which I

20  understand is extremely busy.

21          THE COURT:   Do you know how many depositions

22  you are planning to take at this point?

23          MR. ROBERTSON:   I think we have a good

24  estimate.   The parties have been talking about that.

25  We talked about that yesterday, Your Honor.   We said

1    we'd work with each other's schedules.

2        We have a 30(b)(6) deposition out in which

3    they've identified about six or seven potential

4    witnesses.  I asked Mr. Thomasch if he could perhaps

5    try and consolidate that, those number of witnesses,

6    and educate people.  I told him I would work with him

7    to do them sort of seriatim on the topics.  Let's just

8    move in and move out.

9        I think Your Honor knows my style.  It's not

10   to waste a lot of time going over things that are not

11   really pertinent to the issues.  But I think total

12   depositions could be 10 or 12 individuals, probably

13   comprised of seven or eight days.

14       Mr. Thomasch indicated he was going to

15   identify an additional expert other than Dr. Shamos.

16   I'm going to have an objection to that because that

17   individual has never been identified before.  I think

18   it's not appropriate at this time.  So I just bring

19   that to the Court's attention.

20       I obviously object to additional pretrial

21   briefing.  We already did that.  That's why we're

22   having a contempt hearing.

23       I'd like to focus these things.  I think that

24   Mr. Thomasch and I could have more discussions in the

25   next couple of days.  The Court is contemplating, I

1   gather, a hearing next Thursday.  I am available.  In

2   fact, I'm down in front of Judge Hudson on an initial

3   pretrial conference that morning.  So I can make

4   myself available.  And hopefully at that time the

5   parties can focus their areas of agreement and their

6   areas of disagreement if that's what the Court

7   anticipates.

8           THE COURT:  Well, I have intended on the

9   afternoon of the 3rd of November to deal with the

10  following things.  And that is first, between now and

11  then, if you want a continuance, you file a motion

12  asking for a continuance.

13          And you-all file the next day a response.

14  And you file the next day a reply.  And I'll decide.

15  It will be clear at that point.

16          MR. ROBERTSON:  Let me ask this because

17  Mr. Thomasch and I discussed this last night.

18          THE COURT:  Unless you-all are in agreement

19  that you want a continuance.

20          MR. ROBERTSON:  I thought we had agreement,

21  Dan, but please tell me if we didn't.

22          MR. THOMASCH:  Your Honor --

23          MR. KREVITT:  I was simply going to say, Your

24  Honor -- I'm trying not to interrupt.  Mr. Robertson

25  said a whole lot of things to which we disagree just

1   now.  With respect to the continuance, we will speak

2   with Mr. Robertson and his team.  We understand that

3   if there is not an agreement with respect to a

4   continuance, you've ordered the party that wants one

5   to file a motion, and you have also set forth the time

6   for papers to be filed, and we will proceed

7   accordingly.

8           THE COURT:  Mr. Krevitt, he said that

9   Mr. Thomasch had agreed to a continuance.  If he has,

10   he did, it's done.

11           MR. KREVITT:  I understand, Your Honor.

12           THE COURT:  Mr. Thomasch, yes or no, did you

13   agree that a continuance was appropriate?

14           MR. THOMASCH:  I indicated to Mr. Robertson

15   our position, which was we felt that a continuance was

16   appropriate, but we disagreed with the date he was

17   selecting.

18           THE COURT:  Mr. Thomasch, the answer to that

19   question was yes.

20           MR. THOMASCH:  Yes, Your Honor, we did agree

21   to --

22           THE COURT:  The answer was yes.  Now, you're

23   going to learn that you're going to have to deal with

24   things that way so I can understand you and we don't

25   have to waste a lot of time.  But that's particularly

1    important given the difficulty the communication with

2    you is occurring.  And it's not your fault because you

3    are responding to my request in short order that you

4    be available.  But, please, do what I ask you to do.

5         All right.  Then there is agreement that a

6    continuance is appropriate.  And so I'm going to grant

7    the request for a continuance.

8         Now, the next thing is are you in agreement,

9    Mr. Robertson, insofar as you're concerned, have you

10   reached agreement with Mr. Thomasch on the date of a

11   hearing; yes or no?

12        MR. ROBERTSON:  No.

13        THE COURT:  All right.  What date do you

14   propose?

15        MR. ROBERTSON:  December the 12th, subject to

16   the Court's convenience.

17        THE COURT:  Mr. Thomasch, what date do you

18   propose?

19        MR. THOMASCH:  Your Honor, I don't have my

20   calendar.  Mid January.

21        THE COURT:  Mid January?

22        MR. THOMASCH:  Yes, Your Honor.

23        THE COURT:  All right.  What's wrong with

24   that, Mr. Robertson?

25        MR. ROBERTSON:  Obviously, Your Honor, we'd

1  like to move this forward as expeditiously as

2  possible.

3          THE COURT:  I understand that, but you also

4  apparently have asked for a lot of documents.  You've

5  got a lot of documents.  I don't want anymore

6  briefing.  I want you to conduct whatever discovery is

7  going to be allowed.  We are going to have a hearing.

8          Whether or not there's a new expert that can

9  be allowed at this stage of the proceedings, I don't

10 know.  I'll let you raise that in due course, and I'll

11 deal with it, but I don't need another round of

12 pretrial briefing.

13         We are not going to retry the case of

14 infringement.  We're going to try the very limited

15 issues that I think I've already outlined you're going

16 to be trying.

17         Now, that's the way it's going to be and

18 we'll go from there to set a schedule.  In view of

19 that, given that, do you oppose a hearing in January?

20         MR. ROBERTSON:  Yes, Your Honor.  My client

21 has instructed me to strongly oppose such a delay in

22 the case given what we think is the ongoing contempt

23 of a federal judge's order.

24         Also I'm very concerned as to the

25 disagreement we had in our discussions yesterday as to

1   the scope of what the hearing will be.  I've heard,

2   Your Honor, that we're not going to retry the case,

3   but it's been suggested to me that this is going to be

4   a multi-day hearing.  And I've tried to pin down how

5   many days Lawson believes it needs for this hearing.

6       I've not seen in the precedent anything more

7   than a two-day hearing.  I think two days might be

8   appropriate.  I think if we were efficient, we could

9   do it in one day given the Court's schedule, but I do

10  not want this turning into some sort of six-day

11  retrial of the case.  And I would just urge that if

12  the Court is inclined to push it into January, we get

13  some parameters on the scope of what the hearing can

14  be and what evidence we can rely on.

15      Obviously, I want to provide the Court

16  deposition testimony, for example, that may not be

17  presented at the hearing.  In addition, since I'm

18  dealing with millions of pages of documents, obviously

19  in a two-day hearing I won't be able to produce or

20  introduce as exhibits all those documents.  I would

21  like that to be supplemented.  I think I can --

22      THE COURT:  Wait a minute.  You'd like what

23  to be supplemented?

24      MR. ROBERTSON:  I'd like to be able to

25  introduce additional documents other than what was

1   produced through witnesses at trial, such as documents

2   that were identified and discussed during the

3   deposition testimony that could be excerpted and

4   provided to the Court.  That's what I was anticipating

5   and I think what Mr. Merritt suggested in his letter

6   to Your Honor.

7          THE COURT:  Well, it seems to me this.  I

8   think I have some understanding of your situation.  I

9   want you to spend some time planning what is actually

10  to be done here.  And it looks to me like the best

11  thing for us to do is get together on maybe the

12  morning of the 8th of November and give you all some

13  time to be sorting out how this is going to proceed

14  now that you know it's going to be continued.

15         And it will either be tried in the middle of

16  December or it will be tried in the early part of

17  January.  I was trying to get my book and see what

18  early January was like.

19         MR. KREVITT:  Your Honor, this is Josh

20  Krevitt.  While you are getting your book, if we can

21  confer on specific dates, mindful that Your Honor

22  hasn't said whether it's going to be December or

23  January, and at least provide some suggestions for

24  either of those.

25         I mention that, Your Honor, because I have a

1  trial in east Texas currently set for -- we're picking

2  a jury on January 3 and openings, I believe, are

3  January 9.

4       THE COURT:   Then it may be that your client

5  is going to have to have another lawyer handle this

6  case here instead of you because I was looking at

7  January 3 as one of the days to start this hearing and

8  January 9 as another day.   No, not 9.   I'm sorry.

9       MR. KREVITT:   That's why I raised it, Your

10  Honor.   Your Honor, if it's possible -- obviously

11  we'll do whatever Your Honor says, but if it's

12  possible, given this other longstanding trial, if it's

13  in January, to move it a week or two farther out into

14  January, we would very much appreciate that.   But for

15  a trial, there would be no other reason I would ever

16  request it.

17       THE COURT:   Who is it that's going to lead

18  the case?

19       MR. KREVITT:   I think, Your Honor, it will

20  certainly be me or Mr. Thomasch, and probably a

21  combination.

22       MR. ROBERTSON:   This is Mr. Robertson.   I'm

23  available January 3.   I'd agree to that date now if

24  that would resolve it.

25       MR. KREVITT:   I understand you would agree to

1    the date.  I just said I can't make that, Your Honor
2    I'm going to be picking a jury in Texas.
3          THE COURT:  That's a *sub rosa* motion for
4    disqualification is your view of it?
5          MR. KREVITT:  Yes, exactly.  I didn't know if
6    it would be as obvious to the Court as it was to me,
7    Your Honor.
8          I would request, Your Honor, if possible --
9    two weeks, I wouldn't think, subject of course to Your
10   Honor's calendar, I'm not presuming anything about
11   that, but in terms of this case two weeks won't make a
12   very big difference, and it would allow me to be at
13   the trials I've been hired to handle.
14         THE COURT:  Well, what's wrong with
15   December 12?
16         MR. KREVITT:  Well, Your Honor, again, we
17   didn't anticipate having this kind of a substantive
18   discussion here.  So I don't want to speak too much
19   off the hip, but we have an open question as to
20   whether ePlus will provide any discovery to us at all.
21   So far they have refused to do so.
22         When we get that discovery, assuming we get
23   the discovery, we think we're clearly entitled to it
24   and can't imagine a proceeding in which one party has
25   to produce discovery and the other doesn't, we're not

1  going to get that discovery for some time.  And we

2  need to take far, far fewer number of depositions.  We

3  may only have a 30(b)(6).  I'm not certain, but far

4  fewer.

5       We have very limited discovery.  Three

6  interrogatories, Your Honor.  Ten requests for

7  production of documents.  Very limited, narrowly

8  tailored discovery.  But so far ePlus has refused even

9  to produce that discovery, let alone given us, of

10  course, a date by which it will happen.

11       This is a -- and I don't need to tell the

12  Court this, but the allegations here are extremely

13  serious, and we think it's essential and fundamentally

14  fair that the parties, Lawson in particular from my

15  perspective, have an opportunity to clearly have laid

16  out in an interrogatory what are the allegations of

17  contempt, as a sanction, that --

18       THE COURT:  Well, they've already answered

19  that, Mr. Krevitt.  They have alleged it, particularly

20  in their briefing, already.

21       MR. KREVITT:  Your Honor, what they did in

22  their briefing is they addressed it, that's true, and

23  we addressed it in our briefing.  They served

24  discovery on us, of course, including an

25  interrogatory.  We answered the interrogatory about

1    the changes.  And they didn't think that was good

2    enough.  And the magistrate judge, in your absence,

3    ordered us to produce a much, much, much more detailed

4    interrogatory, which we did, and submitted to Your

5    Honor for Your Honor's reference some 20 or so pages,

6    maybe more, detailing the differences in narrative

7    form, the differences in our system, our old system

8    versus our new system.

9            It can't be, Your Honor, I will respectfully

10   submit, that a party can bring a motion for a

11   contempt -- and by the way, it wasn't a motion.  It

12   was briefing in connection with the contempt

13   proceeding.  This may be a small point, but it was

14   briefing on an order to show cause as to whether there

15   should be a contempt proceeding.

16           THE COURT:  Right.

17           MR. KREVITT:  They filed their brief, that's

18   true, but we cannot possibly see why ePlus should not

19   be required, and in any event, would it want to, set

20   out in response to an interrogatory clearly in one

21   place what are their allegations.

22           It's not enough, as Your Honor knows, to say

23   this is a difference between the new product and the

24   old product.  The question is how meaningful that

25   difference is.  Is that difference colorable, only

1   colorable, more than colorable?  Obviously, Your Honor

2   is aware of that standard.  And we are entitled, Your

3   Honor, having served discovery, to get responses to

4   that discovery in which we asked them clearly to set

5   out what their allegations are, what the evidence they

6   have for those allegations are, what are the documents

7   on which they are relying on these very serious

8   allegations.

9         THE COURT:  We had a conference over a month

10  ago, a telephone conference, and Lawson didn't ask for

11  any discovery at all.

12        MR. KREVITT:  Your Honor --

13        THE COURT:  What we've got is we've got new

14  lawyers in the case who decided they want to change

15  the approach.  They didn't ask for any discovery that

16  I remember.

17        MR. KREVITT:  I don't want to interrupt, Your

18  Honor.  I'm sorry.  I didn't know if Your Honor was

19  done.

20        THE COURT:  No.

21        MR. KREVITT:  I don't think that's quite

22  right in this respect.  You're obviously right that at

23  that time a request wasn't made.  We've spoken with

24  the Merchant & Gould lawyers.  We've read the

25  transcript.  There certainly was no suggestion that

1    Lawson wouldn't take discovery, Your Honor.  And
2    Lawson has every right to serve discovery and has done
3    that.
4          THE COURT:  I understand that, but the point
5    is when you delay what you're doing, you have to pay
6    the price for delaying.
7          MR. KREVITT:  But we didn't delay, Your
8    Honor.
9          THE COURT:  Well, you did because you should
10   have raised that in September when we were having the
11   scheduling conference on this.  That's their point,
12   and that's a fairly reasonable point actually.  So I
13   understand what's happened.
14         We have got new lawyers in the case.  Just
15   understand, we're not going to retry the case.
16         MR. KREVITT:  Your Honor, the notion of
17   retrying the case, I have to respond having heard that
18   from Mr. Robertson six times.  I want to be very, very
19   clear, Your Honor.  We do not want to retry this case.
20   We understand the issues that Your Honor will have to
21   address.
22         I think if Your Honor reads Mr. Merritt's
23   letter from ePlus, it will be very, very clear to Your
24   Honor the extent to which ePlus is trying to
25   articulate a standard for this proceeding that is

1    simply wrong.

2          They say that the issue is whether or not the

3    changes render the RQC product noninfringing.  And

4    then they quote Your Honor from that conference.

5          Your Honor's quote is correct.  It gets the

6    law exactly right, but the ePlus letter that sets

7    forth what the issue for Your Honor to decide is

8    wrong.  It is not whether or not the new products

9    infringe.  We reach that only if there is first a

10   judgment by Your Honor that the changes are not more

11   than colorable.

12         If they are only colorable, then we reach the

13   question as to whether there is infringement or not.

14   And the problem, Your Honor, is we do not want to

15   retry this case.  We want to focus very narrowly on

16   that question.

17         The reason a million pages of documents were

18   produced in this case, Your Honor --

19         THE COURT:  Excuse me.  You want to focus

20   very narrowly on what question?

21         MR. KREVITT:  We want to focus very narrowly,

22   Your Honor, in the first instance on the question that

23   *TiVo* v. *EchoStar* says we have to, which is whether

24   ePlus can prove that the new products are not more

25   than colorably different.

1          The first question, Your Honor, focuses

2     simply on that delta between at the old products and

3     the new products, not whether the new products

4     infringe.  They don't, but that's not the question for

5     Your Honor in the first instance.  It's simply when

6     you compare the new product to the old product and you

7     look at the delta, the differences between those

8     products.  Are those differences colorable, more than

9     colorable, less than colorable?  What is the

10    difference between those?  And the way you judge that,

11    Your Honor, is using two tools.

12          THE COURT:  Wait a minute.  Where do you go

13    after that, according to you?

14          MR. KREVITT:  Where do we go after that?

15    Well, in our view, Your Honor, we won't go anywhere.

16          THE COURT:  Let's assume that we've concluded

17    that there are colorable differences.

18          MR. KREVITT:  Obviously, Your Honor,

19    understands.  I wasn't trying to be cute.  My point

20    was I think we'll win on that first issue.

21          If we do not, if Lawson does not win and

22    ePlus is able to prove that the new product is not

23    more than colorably different, the delta isn't

24    significant enough, then we go to the question

25    regarding whether the new products infringe.

1           MR. ROBERTSON:  Your Honor, this is

2    Mr. Robertson.  This is where we fundamentally

3    disagree.  Lawson's articulated three reasons why RQC

4    is supposed to be colorably different from RSS and the

5    other systems that were found to infringe.  And let's

6    not lose sight that there were configurations Your

7    Honor is aware about that just don't involve RSS.

8           Having said that, if they only articulate

9    three reasons and we show that all three of those

10   reasons are wrong, then is Mr. -- is it Krevitt?  I'm

11   sorry.  I know it's Josh.  Is he suggesting we now

12   have a new infringement trial?

13          If they haven't articulated any other

14   differences, I think Your Honor logically can assume

15   it follows inexorably that they continue to infringe

16   because that's the only three differences they

17   identified.

18          So if it's the suggestion we have some

19   two-phase approach here where we have to have a

20   retrial on infringement again, that's just not

21   consistent with the case law.  But we can brief that

22   after we put our evidence on at what I would hope

23   would be a focused contempt proceeding.  And if that's

24   their position, let that be their position.  But I

25   don't understand how they can come forward and say,

1   "We only changed three things," and if you show those

2   things aren't colorably different, now we need a new

3   infringement trial.  That makes no sense to me and

4   it's not what *TiVo* teaches.

5          MR. KREVITT:  Your Honor, this is Josh

6   Krevitt.

7          Given Your Honor's guidance on this call

8   about revving engines and not revving engines, I've

9   been doing my best not to interrupt, and I would

10  appreciate the same courtesy from Mr. Robertson.

11         THE COURT:  I think he thought you were

12  through.

13         MR. KREVITT:  Okay.  The *TiVo* case, Your

14  Honor, could not be any clearer.  And, obviously, one

15  thing on which the ePlus lawyers and the Lawson

16  lawyers agree is that *TiVo v. EchoStar* is a big deal.

17  And so Your Honor will make your own judgment on that.

18         In our view, and we could be wrong, Your

19  Honor could read the case differently, in our view we

20  think it's very clear that the Court in that case set

21  out a two-part analysis.

22         And the first part is the colorable

23  difference analysis.  And the second part is if the

24  plaintiff prevails on that first part whether there's

25  infringement or not, Mr. Robertson -- I'm hoping, Your

1  Honor, we never reach this question because we win on

2  the first one, of course, but Mr. Robertson, I think,

3  clearly, and I think this is an objective statement of

4  what he just said, and we disagree, conflated those

5  two and said that if they prevail on the colorable

6  question, I'm speaking in shorthand, of course, but if

7  they prevail on that question, then it's reasonable

8  for the Court to assume, for the Court to rule, that

9  the new products infringe, and, therefore, find Lawson

10  in contempt.

11       I respectfully submit, and it may well be

12  that we've exhausted the utility of telling the Court

13  what the case says, and the Court has and will read it

14  for the Court, but we respectfully submit that that's

15  wrong, that the Court set out this two-prong inquiry.

16       THE COURT:  Excuse me just a minute.

17       How many cases have been decided following

18  *TiVo* that deal with *TiVo* and apply it?

19       MR. KREVITT:  That's a good question, Your

20  Honor.  I think it's not many.  Half a dozen.  We'll

21  have our crack crew come up with an answer to that

22  question, Your Honor.  It's not many.

23       By the way, this issue was not in passing in

24  *TiVo*, meaning the question --

25       THE COURT:  We don't need to argue that now.

1          MR. KREVITT:  Okay.  I just wanted to mention

2    that that's a big deal in the case is what is the

3    right inquiry.  Should we be having an infringement

4    case or should we not be having an infringement case.

5          And the reason, Your Honor, if I may just say

6    one more word, and I know Your Honor doesn't want to

7    have a debate, but one thing to put this into context.

8          The reason the *TiVo* court held what I'm

9    saying the court held is as follows:  A contempt

10   proceeding, and we're seeing this right on this phone

11   call, is different than in normal litigation.  We have

12   all the discovery available to both parties, and you

13   have a jury, and you have all the procedural

14   protections available, and the plaintiff has the

15   burden of infringement, of course, and we have the

16   ability to defend on validity.  All those things exist

17   in a normal litigation.  And all those things or many

18   of those things don't exist in a contempt proceeding.

19         And what the *TiVo* court ruled was if the

20   products are sufficiently different, the new products

21   from the old products, and ePlus thinks they infringe,

22   let them bring an infringement case.  Again, I'm not

23   being cavalier about that, Your Honor.  We think they

24   don't.  But if they think the products infringe, but

25   they're very different from the old products, then

1    that's not an issue for a contempt proceeding.  That's

2    an issue for a new lawsuit.

3         Only if the products are so close that they

4    can satisfy this -- that they are not colorably

5    different, that they are essentially the same.

6         THE COURT:  Isn't that what Mr. Robertson is

7    saying is that if they're not colorably different,

8    then you violate the Court order and the determination

9    that there has been an infringement of the patent?

10        MR. KREVITT:  Yes.

11        THE COURT:  I don't think you're really

12   saying anything different.

13        MR. KREVITT:  Well, we are, Your Honor, in

14   this respect.  I'll let Mr. Robertson speak for

15   himself, of course, but I think you have his position

16   exactly right, but here's the point that I'm making.

17   And in many cases this may not be a huge issue in

18   certain circumstances.

19        It is not true that if the products are not

20   colorably different, that is to say they are very

21   similar, that you skip to a contempt finding.  You

22   then have to do an inquiry on infringement because,

23   Your Honor, you could have products that are not

24   colorably different but are a little different.  Very,

25   very little difference.  Let's say that Your Honor

1    finds that they are not colorably different, but that

2    little, little difference is sufficient to take them

3    out from infringement.

4          THE COURT:  I don't think *TiVo* held that.

5    *TiVo* didn't address that issue.  The argument may be

6    that it flows from *TiVo*.  I understand that.  But I

7    don't think -- it's been awhile.  I read it and I may

8    have it wrong.  I think you described *TiVo* correctly

9    when you first articulated what you thought it meant,

10   not the most recent.  And I don't mean when you first

11   articulated it.  I mean in the last time you tried to

12   summarize it.

13         MR. KREVITT:  I know.  I know.  Which is not

14   a good sign.  I certainly wasn't trying to change my

15   position, Your Honor.

16         THE COURT:  Let's stop now.  Let's hold our

17   powder.

18         MR. ROBERTSON:  Your Honor, this is

19   Mr. Robertson.

20         THE COURT:  You want a shot at him anyway

21   even though he's putting his musket back up?

22         Wait a minute, Mr. Krevitt.  Have you served

23   time in the Senate?

24         MR. KREVITT:  The U.S. Senate, Your Honor?

25         THE COURT:  Yes.

1          MR. KREVITT:  No.

2          THE COURT:  Because I believe you may be

3    getting a good filibuster style.  So slow down.  Give

4    him an opportunity to say --

5          What do you want, Mr. Robertson?

6          MR. ROBERTSON:  Just briefly, Your Honor.

7    Sometimes a page of experience is worth a volume of

8    logic.  We did look at the post *TiVo* cases.  I haven't

9    seen any post *TiVo* case that went past a two-day

10   contempt proceeding.

11         Even the *TiVo* case had a three-day contempt

12   proceeding, not a new infringement trial.  And the

13   Federal Circuit upheld in large part contempt by

14   *EchoStar* of the Court's injunction.

15         THE COURT:  Do we really need to get into

16   that now?

17         MR. ROBERTSON:  No, sir.

18         THE COURT:  Give me a minute now, if you

19   will.

20         What I'd like, I think, to see you all do, I

21   was hoping to get it accomplished by the 3rd of

22   November, but maybe it's unrealistic given where you

23   are.  With a view to trying the case in December or

24   early January, you need to do the following, I think:

25         I'd like to see you talk about these issues

```
 1    of discovery and identify as well where you think this
 2    hearing ought to go and what it ought to look like,
 3    how long it will take, and brief me on it.  And then
 4    we'll sit down and talk about it all.
 5              In the meantime, I realize that you have some
 6    things going on like the documents, etc., that could
 7    be impacted by whatever ruling I make on the scope of
 8    the matter, but I don't want the discovery at the same
 9    time to be held up.
10              I don't see why, Mr. Robertson, that a
11    defendant in a contempt proceeding, if you have
12    discovery, that a defendant is not entitled to some
13    discovery, too.  And I want you-all to talk about
14    that.  I think it ought to be limited.
15              And it is correct that when Lawson had its
16    shot, it didn't really ask for it.  But, in essence,
17    what you're asking me to do is to hold that they
18    waived their right to ask for any discovery in that
19    conference.  And I would respectfully think you might
20    want to think would you like to defend that position
21    in the Federal Circuit were I to --
22              MR. ROBERTSON:  Your Honor, I'm willing to
23    address that right now, sir, and tell you that if they
24    had picked up the phone and asked me about some
25    reasonable discovery and some reasonable time limits
```

1   and some reasonable scope, I probably would have

2   agreed.  But they served us with discovery, and then

3   without leave of court gave us an expedited schedule,

4   which I thought was improper since we had asked for

5   leave of court.

6           THE COURT:  I know, but --

7           MR. ROBERTSON:  I'm going to agree to

8   discovery, Your Honor, but I want it to be focused and

9   limited in its scope.

10          THE COURT:  And I think that's what I want

11  you-all to talk about in the next several days.  And I

12  believe you can work that out.

13          In the meantime, I also would like for

14  someone -- given that you all have such radically

15  different views about what the nature of a contempt

16  proceeding is following *TiVo*, I want you to brief what

17  you think -- just that issue.  Not in terms of this

18  case right now, but in terms of just with respect to

19  what you think *TiVo* requires using that decision, the

20  decisions on which *TiVo* drew and the decisions ensuing

21  *TiVo*.

22          I just don't believe that *TiVo* requires a

23  complete new hearing on the issue of infringement, but

24  I may be wrong.  So I'll be glad to hear about it.

25          And since you seem to be the one raising the

1    issue, Mr. Krevitt, perhaps you-all can start the

2    briefing.  Would you think that would be good or do

3    you want them to start the briefing?

4           MR. KREVITT:  I'm happy to, Your Honor.  And

5    just to be clear because I know, Your Honor, when you

6    ask a question or ask for something, want it limited

7    to the particular question you're asking.  You don't

8    want us in this letter to address how that standard

9    would impact this case.

10          THE COURT:  I do not.  And I don't want it in

11   a letter.  I want it in a statement of position filed

12   in the court like a pleading.

13          MR. KREVITT:  Yes, Your Honor.  We'll do

14   that.

15          I assume also you don't want -- so nothing

16   about this case meaning also how procedurally we ought

17   to take account of that in this case?  Just instead a

18   mention of what we think *TiVo* means and how the cases

19   since it apply it, and more of a statement of the law.

20          THE COURT:  That's right.

21          Now, Mr. Robertson, do you object to him

22   going first or do you think you want to go first?

23          MR. ROBERTSON:  I think, sir, since I have

24   the burden of proof here that the plaintiff should go

25   first.  But I would like to -- I am very mindful of

42

1    the expense involved here, and I don't want this to go

2    spiraling off.

3              I would ask that we go first.  We are limited

4    to 10 pages.  They go second.  They are limited to 10

5    pages.  And we go last and we're limited to 10 pages.

6              MR. KREVITT:  That seems like an awful lot of

7    briefing to talk about what the standard in *TiVo* is.

8    We're happy, as Your Honor originally suggested, to go

9    first, Your Honor.  I had envisioned it being shorter

10   than that, but it --

11             THE COURT:  Mr. Robertson, remember you have

12   a court reporter here, and she's going to demand that

13   I buy her at least three or four martinis at the end

14   of the day today given what you're subjecting her to.

15   Come one.

16             All right.  I think the best thing to do

17   here, given that the plaintiff started this process,

18   is that the plaintiff shall go first, and you are

19   willing to agree to a lesser number of pages, I

20   believe, is about what you were willing to say, Mr.

21   Robertson.  How many pages do you want?

22             MR. ROBERTSON:  Seven, seven, five, but I'm

23   willing to hear from Mr. Krevitt on it.

24             THE COURT:  All right.

25             MR. KREVITT:  Your Honor, I'm happy really --

1  I'm not always disagreeable.  I'm happy to do whatever

2  Your Honor thinks.  To me the notion of a reply brief

3  when we're talking about what the law means seems a

4  bit silly, but I would envision that ePlus sets out,

5  we're going to be tethered to the case is --

6          THE COURT:  Yes, you are.  And I think seven

7  pages is too short.  So you take ten pages.  You take

8  ten pages.  You can have a five-page reply.

9          All right.  Now, that just is on what you-all

10  think that *TiVo* requires that a contempt proceeding

11  do.

12          MR. KREVITT:  Right.

13          THE COURT:  Generally, what is it that it

14  must do, and why, and with authority.

15          Now, the next thing I think you need to do is

16  to sit down and tell me, each of you, what you think

17  in a separate paper this hearing ought to look like,

18  and in particular, how many witnesses do you think you

19  want, how long do you think it would take, and sort

20  out that issue so I can make an intelligent decision

21  about how much time to allot.

22          I don't plan to allot a lot of time to the

23  matter, but I at least want to hear what you have to

24  say.

25          What?

1          MR. KREVITT:  I'm sorry to interrupt, Your

2     Honor.  I just wanted to ask a point of clarification,

3     but obviously I'll wait until you're finished.

4          THE COURT:  So I want a separate statement of

5     position on the nature of the contempt proceeding in

6     this case, what you think has to be shown, and

7     exactly, just in outline form, how you're going to do

8     it, how many witnesses, and how long you think it will

9     take, and that kind of thing.  How much in the way of

10    documentation do you think, based on what you know now

11    or as of the time you file these things, you're

12    looking at.  And then we can shape this matter.

13         And I'd like to have that available before I

14    meet with you on the 8th of November.

15         MR. ROBERTSON:  Your Honor, this is

16    Mr. Robertson again.  Just to refresh you that we're

17    not even going to finish the document production until

18    sometime next week.  And that's even before -- I

19    mentioned to Your Honor early on it's probably going

20    to take maybe, with these outside counsel I brought in

21    as contract attorneys, trying to save costs, two weeks

22    to review the documents.

23         I think I'll have an idea, but I really won't

24    have a handle even on the production by that point.

25    We won't have started a single deposition.  I have an

1    idea and I can inform the Court.  I just wanted to

2    give you that caveat.

3              THE COURT:  I understand.

4              Now, Mr. Krevitt, when are you going to

5    finish the production of the documents that you're

6    planning to produce?

7              MR. KREVITT:  Your Honor, my understanding is

8    that we will be complete with that production by the

9    end of next week.

10             THE COURT:  Friday of next week?  That's

11   November the 4th.

12             MR. KREVITT:  That is my understanding, Your

13   Honor.  If there is any -- if that is wrong at all, we

14   will inform ePlus and the Court promptly, but my

15   understanding, and again, I'm sorry for not being

16   prepared to answer that question definitively, Your

17   Honor.  I didn't know that question would be asked,

18   but that's my understanding, and we'll confirm that

19   right away.

20             THE COURT:  I don't see why on earth it

21   should take any longer than that given that you've

22   produced a million pages.

23             MR. KREVITT:  Yeah, I think we will be done

24   with it.

25             THE COURT:  All right.  I'd like to see a

1  copy of the privilege log.   Somebody send that to me

2  after you file it.

3          MR. KREVITT:  Yes, Your Honor, we'll do that.

4          THE COURT:  All right.   So, Mr. Robertson,

5  what do you say?  He says by Friday.

6          MR. ROBERTSON:  Yes, Your Honor.   It's been a

7  month since we originally had our September 15 call,

8  but if that's what it is, I accept his representation,

9  but it just puts me in a difficult position to make

10 the representation Your Honor wants me to do with

11 regard to the hearing.   And so I would just hope I

12 would be afforded some leeway to properly inform the

13 Court, you know, if the scope of things change because

14 until I review the documents, I'm not certain who I'm

15 deposing, that kind of thing.

16         THE COURT:  All right.   I understand.

17         How many documents, Mr. Krevitt, do you think

18 you have yet to produce?  What is the volume that

19 we're talking about?

20         MR. KREVITT:  Your Honor, I think, and I'm a

21 little reluctant to be real precise for obvious

22 reasons, but it is compared to the overall production

23 a very small number.   I think we're talking, I'll

24 confirm right away, but I think we're talking in the

25 neighborhood of 20- to 30,000 pages of documents.

1        THE COURT:  Why it takes you another week to

2   produce that much I don't know, so I think you better

3   (A) by Monday know how much you're going to produce,

4   and (B) by Monday give me the earliest date that you

5   can produce it.  And I think that needs to be done by

6   the end of the day Monday so we all know what we're

7   talking about.

8        And I urge you to produce them sooner rather

9   than later.

10        MR. KREVITT:  I don't need any more time to

11   assure Your Honor we will do that.  And what's more,

12   when I said the end of next week, I meant for the last

13   document to be produced.  We have been and will

14   produce them on a rolling basis.

15        We have as many lawyers as Mr. Roberson

16   identified, I can promise you we've got that many and

17   more, probably 2X that have been struggling to get

18   this done.  So we will produce them right away, but we

19   obviously will do what Your Honor just asked by

20   Monday.

21        Your Honor, may I ask one point of

22   clarification and make a quick observation?

23        THE COURT:  Yes.

24        MR. KREVITT:  The observation first.  I'm

25   confident Your Honor doesn't want to get into the

 1   document issues too much, but I did want to just make

 2   one point that I tried to make earlier today, which

 3   I'll keep brief.

 4          The reason there were so many documents

 5   produced is we produced according to search terms

 6   provided by ePlus.  And I just wanted to identify for

 7   the Court a few of those terms.

 8          ePlus asked us to produce all documents that

 9   have the word "valid" in them.  All documents that

10   have the word "jury."  All documents that have the

11   word "injunct, injunction, enjoin," anything.

12          So these are ePlus' search terms.  This

13   wasn't Lawson trying to come up with a wide net.  As I

14   said at the outset, Your Honor, we are acutely

15   sensitive to how we proceed during these contempt

16   proceedings and to make sure that there can be no

17   credible suggestion that we're withholding any

18   information or not doing what we ought to be doing.

19          But I wanted to address that because that's

20   why so many documents were produced.  When you asked

21   us to produce any document that has the word "valid,"

22   and not just those letters, so it's invalid,

23   invalidity, anything, you're going to get an awful lot

24   of documents.  That's what we did.  Those are ePlus'

25   search terms.

1            THE COURT:  But you're saying from the date

2      the jury returned its verdict, there were a million

3      pages of documents that contained that kind of

4      information.  And even with those search terms, that's

5      a startling amount to me.  But anyway, you-all are

6      dealing with it.  You deal with it.

7            MR. KREVITT:  Yes.

8            THE COURT:  With respect to the discovery

9      request by Lawson, you-all talk about those and see

10     what you can resolve with a view to keeping them

11     narrow as you said you thought they were.  Apparently

12     they don't think they are.

13           MR. KREVITT:  Well, I don't know yet whether

14     they do or they don't, Your Honor.  I think they have

15     just been objecting on the grounds that Your Honor

16     identified as to whether they were too late, but we'll

17     confer promptly and hopefully resolve those issues

18     without needing to burden the Court with them.

19           THE COURT:  All right.  Is there any reason

20     we can't meet on the 8th of November?

21           MR. KREVITT:  Your Honor, may I just ask you

22     a point of clarification real quick because I know

23     I'll forget it?

24           On the document that the Court has requested,

25     not the legal document on *TiVo*, the other document in

1  which we set out what we're thinking for the hearing

2  procedurally, how many witnesses, how long, how it

3  should proceed, were you envisioning a joint

4  submission in which we identified the areas of

5  agreement and identify the areas of disagreement or

6  would you like the parties to submit two separate

7  documents?  It's a relatively small point, but I want

8  to make sure that both parties are doing what's most

9  helpful to the Court.

10        THE COURT:  Well, if you all have areas of

11  agreement, it certainly is helpful to set them out in

12  a joint way.  I just don't want you to get into a

13  situation that it becomes unmanageable.

14        So I'd prefer it if you have a section that

15  says what you agree on, a section that identifies a

16  topic, and whether you agree on it or not, what you

17  agree to, and then what you disagree on, and what each

18  of your respective positions are on a topic by topic

19  basis.

20        MR. ROBERTSON:  This is Mr. Robertson.  We're

21  happy to do that.

22        THE COURT:  All right.  Let's try it that

23  way.  Then you-all file that.  File the legal paper,

24  Mr. Robertson.  When are you going to file that?  The

25  statement of position on *TiVo*.

 1          MR. ROBERTSON:  Yes, I understand.  I've got

 2   a lot of moving parts here, Your Honor, including I

 3   have the appeal brief going as well in the Federal

 4   Circuit, and Lawson has another law firm handling

 5   that, and that's due December 5, which complicates my

 6   life.

 7          I would suggestion seven days.  Next Friday,

 8   Your Honor.  I just received the revised privilege

 9   log, which is still 2000 pages long and contains more

10   than 17,600 entries.

11          THE COURT:  Well, you're going to send me a

12   copy of that privilege log, aren't you?

13          MR. KREVITT:  This is Josh Krevitt, Your

14   Honor.  It's ours.  I'm happy to send that to you.

15          THE COURT:  I'd like it in a notebook.

16          MR. KREVITT:  Very well, Your Honor.

17          THE COURT:  Or two notebooks or something.  I

18   tell you what I'm going to do.  I'm going to take a

19   look at it, and I'm going to single out some

20   documents, and I'm going to ask you to give me those

21   documents.  And if I find that they're not privileged,

22   I'm going to establish a procure that's going to

23   eliminate the need for anybody to look through 2000

24   pages of paper.

25          I mean it, Mr. Krevitt.  In 40 years of

1    practicing law, I've never heard of such a thing.  I

2    think somebody has gone hog wild and crazy, to quote

3    the old boy.

4              MR. KREVITT:  Yes.  Your Honor, we will get

5    that to you.  All I can say on that point is that this

6    has been a difficult process.  Not because of Your

7    Honor at all, but we have been, as I said, with

8    literally dozens of people, dozens of people, trying

9    to search for documents, trying to come up with a

10   procure that would allow us to guard against a

11   production of privileged material.

12             It is admittedly an imperfect process and

13   very well may have resulted in a privilege log that

14   should be smaller than the one that we're going to

15   supply to Your Honor.

16             THE COURT:  And, Mr. Krevitt, I'm going to

17   tell you what procedure I've taken in the past.  If I

18   find some abuse like this, some problem like this, I

19   have often required the -- or I have in the past

20   required, not often, the senior member of law firms

21   like the executive committee to sit down and look at

22   these documents and make these cuts and tell me

23   whether they fly or not.  And I've found that that has

24   an amazing effect in bringing reality to what is a

25   privilege claim or not.

53

1    I hope I don't have to do that, but I am very
2    troubled by the notion that there is 2000 pages in a
3    privilege log.
4        MR. KREVITT:  I understand, Your Honor.
5        THE COURT:  And please, Mr. Carr, will you
6    get those delivered next week sometime early?
7        MR. CARR:  Yes, Your Honor.
8        THE COURT:  In notebooks that are manageable.
9    Those great big notebooks are not helpful.  And
10   labeled on the spine so I can read what they are, what
11   volume, etc.
12       MR. CARR:  I understand.
13       MR. KREVITT:  Your Honor, this is Josh
14   Krevitt.
15       Obviously, we'll get you those notebooks and
16   we'll do that next week as you requested.  In light of
17   the guidance Your Honor has provided on this issue, I
18   hope it's obvious to the Court, we are going to go
19   back and devote substantial resources to taking a
20   very, very hard look at that.  So it may be that the
21   privilege log Your Honor gets will be smaller.  Maybe
22   much smaller.  Or it may be that that process just
23   doesn't complete by the time we send that to you and
24   we'll have to inform Your Honor if we have removed
25   documents after that.

1           THE COURT:  All right.

2           MR. KREVITT:  I have heard you, Your Honor,

3    loud and clear, and we will get on that issue.

4           THE COURT:  All right.

5           If I don't have anything before the 8th of

6    November about what you-all think the shape of life is

7    like, it's hard for me to make plans about how to deal

8    with the case and how to rule on some of the disputes.

9    So I was hoping to get these statements.  You-all

10   certainly have been through all this for a long time.

11          I was hoping to get something from you early

12   next week, Mr. Robertson, and then have them reply

13   very shortly, and have in front of me by November the

14   7th both of these statements of positions that I'm

15   talking about.

16          Is that not doable?

17          MR. ROBERTSON:  Yes, sir.  How about

18   Wednesday?

19          THE COURT:  All right.  You provide yours

20   Wednesday.  The statements of position and the two of

21   them that I said, the law and the general outline of

22   how you think this thing ought to proceed, on November

23   the 2nd.  And then you provide yours, that's the legal

24   paper, on November the 2nd.

25          And you provide your response on November the

1    4th.

2          And you provide your reply by noon on

3    November the 7th on the legal paper.

4          On the joint paper, if I could have that from

5    you-all, that is about how it is you think we proceed.

6    And I recognize it's going to be framed in perspective

7    of how you see what the meaning of *TiVo* is.  And if

8    you could get me that by, say, the afternoon of the

9    3rd of November, it would be helpful.

10          MR. ROBERTSON:  Sorry, Your Honor.  You broke

11    up.

12          THE COURT:  The 3rd of November.  Excuse me.

13    The 4th of November.  That's a week from today.  All

14    right?

15          MR. KREVITT:  Your Honor, small request on

16    the schedule of position papers.  Rather than having

17    only two days, I don't know what the 10-page document

18    will look like from ePlus, and they have under the

19    schedule you suggested almost a week to do it, five

20    days to do it, rather than just two days for us to

21    file a response, if we could have at least until

22    Monday, which would give us the weekend, I would

23    appreciate it.  We would prefer Tuesday, but I'm sure

24    we could get it done by Monday.

25          THE COURT:  Well, they're going to give it to

1   you on Wednesday by the end of the day.  That's 5

2   o'clock on Wednesday.

3          MR. KREVITT:  Yes, Your Honor.

4          THE COURT:  So you file yours on Saturday by

5   noon.  And they file the reply on Monday by noon.

6          Then I'll have all that in time to sit down

7   and try to do some studying over it.  And then we'll

8   proceed from there to try to sort this out.

9          I think you-all can work many of your

10  problems out.  And I hope you do.  All right?

11         Is there anything else that you all need to

12  deal with at this time?

13         MR. CARR:  Judge, this is Dabney Carr.  A

14  real quick question.  What time on November 8 do you

15  want to meet with us?

16         THE COURT:  I'm sorry.  I thought I said

17  10 o'clock, but if I didn't, I'd like to do that.

18         Where are you, Mr. Krevitt?

19         MR. KREVITT:  I am in New York, Your Honor.

20         THE COURT:  Well, you all can come down here

21  on a morning flight if you're thrill seekers and we

22  can meet a little bit later in the day.  What time is

23  that morning flight?

24         MR. KREVITT:  Ordinarily, Your Honor, I would

25  come down the night before so there are no issues.  It

1   turns out I absolutely need to be in New York the

2   night before.  So if it is possible to move it a bit

3   later on the 8th, I sure would appreciate it.

4          THE COURT:  Why don't you look at the

5   flights.  And Mr. Carr, you call back.  I would like

6   to have it make sense.

7          Where is Mr. Thomasch?

8          MR. KREVITT:  He's up in New York with me,

9   Your Honor.

10          THE COURT:  All right.

11          MR. THOMASCH:  We're checking on flights and

12   we'll be able to get back quickly.

13          THE COURT:  We'll be flexible about it and

14   try to do it later in the morning.

15          If I remember correctly, there used to be a

16   fairly early flight down here, but I haven't done that

17   in awhile.

18          MR. KREVITT:  I appreciate that, Your Honor.

19   We'll address that right away.

20          THE COURT:  All right.  Is there anything

21   else?

22          MR. ROBERTSON:  Not from ePlus, Your Honor.

23          THE COURT:  All right.  Thank you all very

24   much.

25          MR. KREVITT:  Thank you, Your Honor.

58

1          MR. ROBERTSON:  Thank you, Your Honor.

2          THE COURT:  Bye-bye.

3

4          (The proceedings were adjourned at 5:50 p.m.)

5

6          I, Diane J. Daffron, certify that the

7     foregoing is a true and accurate transcription of my

8     stenographic notes.

9

                            /s/
10         _____    _____
           DIANE J. DAFFRON, RPR, CCR          DATE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25