# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT LAWSON SOFTWARE, INC.'S BRIEF DISCUSSING THE IMPORT OF THE FEDERAL CIRCUIT'S DECISION IN *TIVO V. ECHOSTAR CORP.*

Josh A. Krevitt
Daniel J. Thomasch
Jason C. Lo
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
jlo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 5
    I.    TiVo Established a Two-Step Contempt Process in Which a Court Must Determine Both That the New Product Is Not Colorably Different from the Old Product and That the New Product Meets All Claim Limitations. ................................ 5
        A.    Step One:  Colorable Differences ............................................................................ 5
        B.    Step Two:  Infringement ........................................................................................ 7
CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Altair Eng'g, Inc. v. LEDdynamics, Inc.*,
    413 F. App'x 251 (Fed. Cir. 2011) ............................................................................................ 9

*London v. Carson Pirie Scott & Co.*,
    946 F.2d 1534 (Fed. Cir. 1991) ............................................................................................. 6

*Moore v. Universal Underwriters Ins. Co.*,
    363 F. App'x 268 (4th Cir. 2010) ......................................................................................... 10

*nCube Corp. v. SeaChange Int'l, Inc.*,
    --- F. Supp. 2d ---, 2011 WL 4056902 (D. Del. Sept. 2, 2011) ............................................. 7

*Petter Invs., Inc. v. Hydro Eng'g, Inc.*,
    No. 1:07-cv-1033, 2011 WL 2935411 (W.D. Mich. July 18, 2011) ...................................... 7

*State Indus. Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) ............................................................................................. 6

*TiVo Inc. v. Echostar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011) ........................................................................... 1, 3, 4, 5, 6, 8, 10

Defendant Lawson Software, Inc. respectfully submits this brief on the import of the Federal Circuit's *en banc* decision in *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011).[1]

## INTRODUCTION

*TiVo* set forth a two-part test for how courts must resolve an allegation that a party enjoined from infringing a patent claim should be held in contempt for making or selling a redesigned version of the product found to infringe. The "party seeking to enforce [an] injunction must prove *both* [i] that the newly accused product is not more than colorably different from the product found to infringe *and* [ii] that the newly accused product actually infringes." 646 F.3d at 882 (emphases added). The first step requires the court to examine whether there has been a significant modification to "those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." *Id.* If *any* differences between the original and the modified product are more than colorable, the inquiry ends, and there can be no finding of contempt. *Id.* at 882. Only if "there are *no* more than colorable differences between the adjudged infringing product and modified product" does the court move to the second step, in which it "evaluate[s] the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that *each* limitation continues to be met." *Id.* at 883 (emphasis added).

Moreover, the patentee (*e*Plus, in this case) bears the burden of proof on both issues – *i.e.,* whether the differences are more than colorable and, if not, whether there is infringement – and must prove *both issues by clear and convincing evidence*. According to *TiVo*: "The patentee

---

[1] The Court clearly instructed the parties *not* to address the merits of this case, but instead to confine their papers to a general discussion of the law. Despite that admonition, *e*Plus devotes a material portion of its brief to argument about the facts of this case. Lawson will not respond to those arguments, other than to note here that it disagrees with *e*Plus's assertions.

bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." *Id.* at 883. This is, of course, a more rigorous burden than the preponderance of evidence standard *e*Plus was required to surmount to prove infringement at the underlying trial.

This briefing was provoked by counsel's conflicting representations as to the standard set forth in *TiVo* decision, and its import regarding the nature of the contempt proceeding to be held in this action. During the telephonic conference on October 28, 2011, Mr. Krevitt (counsel for Lawson) addressed the *TiVo* standard, setting forth the two-part test in an explanation entirely consistent with the *TiVo* decision. Mr. Krevitt began by articulating the "colorably different" test: "We want to focus very narrowly, Your Honor, in the first instance on the question that *TiVo v. EchoStar* says we have to, which is whether *e*Plus can prove that the new products are not more than colorably different." *See* Ex. A at 30 (Transcript of October 28, 2011 Conference). Mr. Krevitt then explained that only if "*e*Plus is able to prove that the new product is not more than colorably different, the delta isn't significant enough, then we go to the question of whether the new products infringe." *Id.* at 31.

In response, Mr. Robertson (counsel for *e*Plus) rejected the notion that *TiVo* requires a "two-phase approach." Specifically, Mr. Robertson stated as follows:

> Your Honor, this is Mr. Robertson. *This is where we fundamentally disagree.* Lawson's articulated three reasons why RQC is supposed to be colorably different from RSS and the other systems that were found to infringe. And let's not lose sight that there were configurations Your Honor is aware about that just don't involve RSS.
>
> *Having said that, if they only articulate three reasons and we show that all three of those reasons are wrong,* then is Mr. – is it Krevitt? I'm sorry. I know it's Josh. *Is he suggesting we now have a new infringement trial?*
>
> If they haven't articulated any other differences, I think Your Honor logically can assume *it follows inexorably that they continue to infringe because that's the only three differences they identified.*

2

> *So if it's the suggestion we have some two-phase approach here where we have to have a retrial on infringement again, that's just not consistent with the case law.* But we can brief that after we put our evidence on at what I would hope would be a focused contempt proceeding. And if that's their position, let that be their position. *But I don't understand how they can come forward and say, "We only changed three things," and if you show those things aren't colorably different, now we need a new infringement trial.* That makes no sense to me and it's not what *TiVo* teaches.

*Id.* at 32-33 (emphasis added).

The Court correctly understood Mr. Robertson to represent that if the newly accused product is only colorably different from the adjudged infringing product, the Court must assume that the newly accused product infringes, and hold Lawson in contempt:

> THE COURT: Isn't that what Mr. Robertson is saying is that if they're not colorably different, then you violate the Court order and the determination that there has been an infringement of the patent?
>
> MR. KREVITT: Yes.

*Id.* at 36. Mr. Robertson's position, which the Court fairly described, misstates the law. As the Federal Circuit explained, "when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is *additionally essential* for a violation of an injunction against infringement." 646 F.3d at 883 (emphasis added).

In its brief, *e*Plus has changed its position. Without acknowledging that change, *e*Plus now states in a section of its brief that "[i]f the changes to the relevant features in the redesigned product do not make them more than colorably different from the comparable features in the infringing product, the district court should next determine whether the redesigned product infringes the relevant claims." Plaintiff's Brief, Dkt. No. 833, at 6.

But despite explicitly acknowledging the requirement of a two-part test, *e*Plus continues to suggest – repeatedly – the incorrect notion that a "merely colorable" determination demands a

3


finding of contempt. For example, *e*Plus repeatedly mischaracterizes the cases decided after *TiVo* in order to suggest that courts stop the contempt analysis once it is determined that the changes are merely colorable. Plaintiff's Brief at 9. It would be impossible to harmonize any such decision with *TiVo*. And as described below, *e*Plus's characterization of those decisions is profoundly incorrect. In fact, *no* District Court since the *TiVo* decision has held a defendant in contempt solely based upon the conclusion that the changes are merely colorable.

In addition to mischaracterizing the law, *e*Plus's brief radically mischaracterizes Lawson's position in two respects:

<u>First</u>, *e*Plus claims repeatedly that Lawson has asserted the view that a court performing the *TiVo* analysis must analyze those features of the product that were not modified. *See* Plaintiff's Br. at 2, 8. That is not, and never has been, Lawson's view. As Mr. Krevitt (Lawson's counsel) stated at the prior conference, "[At the first step,] you compare the new product to the old product and you look at the delta, *the differences between those products*." *See* Ex. A, at 31 (emphasis added).

<u>Second</u>, *e*Plus repeatedly argues that Lawson is of the view that it is entitled to a separate trial in a new infringement lawsuit, no matter which party prevails on the colorable differences test. As *e*Plus's brief states:

> Defendant argues that *e*Plus should file a new infringement lawsuit, and that Defendant is entitled to what would essentially be a new infringement trial at which *e*Plus would be required to reprove infringement by clear and convincing evidence, ***regardless*** whether this Court finds that the alleged modifications are not more than colorably different.

Plaintiff's Br. at 8 (bolded italics in original). That is not, and has never been, Lawson's view. If *e*Plus fails to carry its burden to prove by clear and convincing evidence that RQC is not more than colorably different from RSS, then the contempt proceeding is over, and the motion for contempt denied. *TiVo*, 646 F.3d at 882. Alternatively, if *e*Plus carries its heavy burden of proof

on the colorable issues test, the contempt proceeding in this case must necessarily address the issue of infringement, on which *e*Plus would again have the burden to prove infringement by clear and convincing evidence.

The adjudication of the colorable differences issue and (if *e*Plus carries its initial burden in that regard) the subsequent infringement issues are not decided at a hearing or at a new trial, but at a contempt proceeding. Thus, *e*Plus's repeated suggestions that Lawson seeks "relitigation" or "a new trial" before a jury as part of the *TiVo* two-step analysis are simply incorrect. A new jury trial would take place only if *e*Plus failed to meet its burden of proving contempt here, *and* chose to file a new lawsuit accusing Lawson of infringement.

## ARGUMENT

**I.  TiVo Established a Two-Step Contempt Process in Which a Court Must Determine Both That the New Product Is Not Colorably Different from the Old Product and That the New Product Meets All Claim Limitations.**

### A. Step One: Colorable Differences

In the first step of the *TiVo* standard, a court must determine whether there is no more than a colorable difference between "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." 646 F.3d at 882. To do that, the court must identify which specific features of the accused product in the first proceeding were found to satisfy the "specific limitations of the asserted claims." *Id.* ("Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy *specific limitations of the asserted claims*." (emphasis added)). The court must then determine whether *any* of the modified features has caused there to be more than a colorable difference between the old and new products. As the Federal Circuit explained, "[w]here one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into

5

whether that modification is significant." *Id.* at 882. The Court did not elaborate on what constitutes a significant difference, stating only that "much is dependent on the nature of the products at issue," and that whether a change is significant may turn on the state of prior art. *Id.*

The Court did, however, flag a critical policy consideration that courts should take into account in determining whether modifications are significant: "that legitimate design-around efforts should always be encouraged as a path to spur further innovation." 646 F.3d at 883. That statement echoed the longstanding position of the Federal Circuit that "[o]ne of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace." *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *see also, e.g.*, *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991) ("[D]esigning or inventing around patents to make new inventions is encouraged.").

Because of the critical importance of legitimate design-around efforts to innovation and the economy, the *TiVo* first-step inquiry must focus on the *specific* elements of the old product that were actually found to satisfy the satisfy "specific limitations of the asserted claims." *See TiVo*, 646 F.3d at 882. It is not enough that the product generally works the same way from the perspective of the consumer. That is, after all, *the entire point* of a design-around effort: to provide consumers with the same product without infringing the patent. Thus, for example, in the software context, even though a feature of a new program may appear to perform a similar function as the corresponding feature of the old product, the court must ask whether the specific element of that feature that was alleged to meet the claim limitation has been modified in a significant way. Depending on the nature of the limitation, that inquiry may require the court to examine the new product's source code, aided by expert testimony—a possibility that the Federal

6

Circuit expressly recognized. *Id.* at 883 ("Where useful, a district court may seek expert testimony in making the determination [at the first step of the analysis].")

If *e*Plus cannot meet its burden of proving that the modifications are insignificant, "[c]ontempt is then inappropriate"—even if the court believes that the new product may infringe the patent as well. *Id.* As *TiVo* explained, the "determination that the modified devices are in fact infringing would be irrelevant to the question whether the injunction has been violated if the differences between the two features at issue are indeed significant, thus rendering the new devices more than colorably different from the original ones." *Id.* at 884.

### B. Step Two: Infringement

Only if *e*Plus demonstrates by a clear and convincing standard that the elements of the new product are no more than colorably different from the elements of the old product found to meet the claim limitations does the court even apply the second step of *TiVo*. At this step, the court "is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met." *Id.* at 883. In other words, even though a court may conclude that the elements of the old product that were found to satisfy the claim limitations have not been significantly modified, it may still conclude that the new product does not infringe the patent. This second step is required except where Plaintiff has failed to carry its burden on step one, and the contempt proceeded is ended in Defendant's favor. *See nCube Corp. v. SeaChange Int'l, Inc.*, --- F. Supp. 2d ---, 2011 WL 4056902, at *4 (D. Del. Sept. 2, 2011) ("If a court answers this threshold inquiry in the affirmative, the court must then evaluate whether the modified product infringes the patent-in-suit, proceeding on a limitation by limitation basis."); *see also Petter Invs., Inc. v. Hydro Eng'g, Inc.*, No. 1:07-cv-1033, 2011 WL 2935411, at *2 (W.D. Mich. July 18, 2011) ("Even if there are

7

no more than colorable differences, a finding of contempt must still be supported by a separate finding that the newly accused product continues to infringe the asserted claims.").

Although expressly conceding at least twice that a court must evaluate infringement at the second stage of *TiVo*, *e*Plus also peppers its brief with suggestions that once a court finds that a new product is no more than colorably different from the adjudged infringing product, that is the end of the analysis, and defendant may be held in contempt. These incorrect statements mirror the representations *e*Plus's counsel made at the October 28, 2011 conference.

*e*Plus states in its brief, for example, that "none of the district courts applying *TiVo* since it was decided have conducted a new trial of infringement . . . where the modified features are not more than colorably different from the features of the product relied upon to establish infringement." Plaintiff's Br. at 9. This is flatly inconsistent with *TiVo's* mandate that the court also must engage in an infringement analysis: "[after finding the differences to be only colorable,] the court is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met." *TiVo*, 646 F.3d at 883. Indeed, Lawson is aware of no cases since *TiVo* holding a party in contempt of a patent infringement injunction, much less doing so without conducting a separate infringement analysis on the redesigned product. Such a holding would be in error, as a matter of law.

ePlus fundamentally mischaracterizes the post-*TiVo* cases. For example, *e*Plus cites *Petter Investments* to support the notion that the colorably different and infringement analyses can be conflated. Far from concluding that the colorable differences analysis justified a finding of contempt, that court *denied* the "motion for contempt because there are more than colorable differences between [the] redesigned [product] and the adjudged infringing [product] and, *even if*

8

*the differences are not significant*, the [new product] do[es] not infringe [the] Patents." 2011 WL 2935411, at *8 (emphasis added). *Petter Investments* shows that infringement is a separate and essential requirement. Similarly, in *nCUBE* the district court stated its "present inclination to find no colorable difference," but explicitly stated that it "also does not, at this point, make any determination as to whether the new product infringes." 2011WL 4056902, at *16.

*e*Plus also mistakenly accuses Lawson of adopting the position that at step two of *TiVo*, *i.e.*, the infringement proceeding, a court must "evaluate even those features that [the] [d]efendant has not modified." Plaintiff's Br. at 2. That is not—and never has been—Lawson's view. *TiVo* only addressed modified features in considering the scope of the necessary step two infringement analysis, and Lawson is not seeking to extend that ruling. However, as discussed above, even if a product functions the same way from the perspective of the consumer as the old product, a modification in the underlying elements of the product—for example, a change in software's source code—may render it non-infringing. In addition, when elements of a product are interrelated (as is common in software cases), it may be that a modified feature causes an unmodified feature to no longer meet a claim limitation.[2]

*e*Plus also argues that the court may consider only those modified elements of the new product that correspond to elements of the old product on which the plaintiff relied to prove infringement. *See* Plaintiff's Br. at 8. That is incorrect. The Federal Circuit instructed courts to consider *all modified features* of the product in determining whether it violates the injunction. 646 F.3d at 882 ("[T]he court is required to evaluate the modified elements of the newly accused

---

[2] In conducting the infringement analysis, the Court not only maintains prior relevant claim constructions from the initial trial, but also applies ordinary principles of judicial estoppel and forfeiture that do not permit parties to take inconsistent positions—for example, adopting an infringement theory with respect to the modified product that conflicts with validity arguments asserted in the original proceeding. *See, e.g.*, *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, 413 F. App'x 251, 254 (Fed. Cir. 2011) ("Because judicial estoppel is not an issue unique to patent law, we look to the law of the applicable regional circuit."); *Moore v. Universal Underwriters Ins. Co.*, 363 F. App'x 268, 269 (4th Cir. 2010) ("Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court.").

9

product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met."). After all, a new feature could render a product non-infringing.

Finally, Plaintiff's Brief continues a theme that it has pushed relentlessly in correspondence and in conferences before the Court, by asserting that Lawson seeks "a new trial," even if it has only "tweaked" the enjoined product. *See, e.g.,* Plaintiff's Br. at 9. Although asserting this to be Lawson's position, Plaintiff offers no citation to support that characterization, which is directly at odds with what Mr. Krevitt stated at the October 28 conference. As Mr. Kevitt explained, a *new lawsuit* on infringement can occur only if *e*Plus fails to carry its burden on the colorable differences issue. Ex. A at 35-36.

## CONCLUSION

Lawson respectfully asks this Court to adopt the interpretation of *TiVo* set forth above.

LAWSON SOFTWARE, INC.


By: _____/s/_____
         Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of November, 2011, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

 

/s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*