1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - :
ePLUS, INC.,                        :
                                    :
                Plaintiff,          :
                                    : Civil Action
v.                                  : No. 3:09CV620
                                    :
LAWSON SOFTWARE, INC.,              :
                                    : October 28, 2011
                Defendant.          :
- - - - - - - - - - - - - - - - - - :


COMPLETE TRANSCRIPT OF CONFERENCE CALL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE


APPEARANCES:

Scott L. Robertson, Esq.
Jennifer A. Albert, Esq.
Michael T. Strapp, Esq.
David M. Young, Esq.
GOODWIN PROCTOR
901 New York Avenue, NW
Washington, D.C.   20001

Craig T. Merritt, Esq.
CHRISTIAN & BARTON
909 E. Main Street, Suite 1200
Richmond, VA   23219-3095

        Counsel for the plaintiff ePlus


            DIANE J. DAFFRON, RPR
            OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT

```
 1     APPEARANCES:  (Continuing)

 2     Kirstin L. Stoll-DeBell, Esq.
       William D. Schultz, Esq.
 3     MERCHANT & GOULD
       3200 IDS Center
 4     80 South Eighth Street
       Minneapolis, MN    55402-2215
 5
       Dabney J. Carr, IV, Esq.
 6     TROUTMAN SANDERS
       Troutman Sanders Building
 7     1001 Haxall Point
       P.O. Box 1122
 8     Richmond, VA    23218-1122

 9              Counsel for the defendant Lawson Software.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  (The proceedings in this matter commenced
2  via conference call at 4:30 p.m.)
3
4  THE COURT: Hello. This is ePlus, Inc.
5  against Lawson, Inc., 3:09CV620.
6  Who's here for whom, beginning with counsel
7  for the plaintiff?
8  MR. WILLETT: Judge, on behalf of ePlus, you
9  have Henry Willett with Christian Barton in Richmond.
10 Additionally, you have Jennifer Albert, Scott
11 Robertson and Michael Strapp.
12 MR. CARR: Judge, this is Dabney Carr with
13 Troutman Sanders on behalf of Lawson Software. Also
14 on the line for Lawson Software are Kirstin
15 Stoll-DeBell of Merchant & Gould, and Dan Thomasch,
16 Jason Lo, and Josh Krevitt of the law firm of Gibson
17 Dunn.
18 THE COURT: I've been gone for three weeks.
19 When did Gibson Dunn get in this case?
20 MR. CARR: While you were gone, Judge, we
21 filed -- this is Dabney Carr again. We filed pro hac
22 vice motions for them, and they have, I believe, all
23 been granted.
24 THE COURT: Yeah, I think I remember signing
25 some motions.

1  Lawson wouldn't take discovery, Your Honor.  And
2  Lawson has every right to serve discovery and has done
3  that.
4      THE COURT:  I understand that, but the point
5  is when you delay what you're doing, you have to pay
6  the price for delaying.
7      MR. KREVITT:  But we didn't delay, Your
8  Honor.
9      THE COURT:  Well, you did because you should
10 have raised that in September when we were having the
11 scheduling conference on this.  That's their point,
12 and that's a fairly reasonable point actually.  So I
13 understand what's happened.
14     We have got new lawyers in the case.  Just
15 understand, we're not going to retry the case.
16     MR. KREVITT:  Your Honor, the notion of
17 retrying the case, I have to respond having heard that
18 from Mr. Robertson six times.  I want to be very, very
19 clear, Your Honor.  We do not want to retry this case.
20 We understand the issues that Your Honor will have to
21 address.
22     I think if Your Honor reads Mr. Merritt's
23 letter from ePlus, it will be very, very clear to Your
24 Honor the extent to which ePlus is trying to
25 articulate a standard for this proceeding that is

30

1  simply wrong.
2           They say that the issue is whether or not the
3  changes render the RQC product noninfringing. And
4  then they quote Your Honor from that conference.
5           Your Honor's quote is correct. It gets the
6  law exactly right, but the ePlus letter that sets
7  forth what the issue for Your Honor to decide is
8  wrong. It is not whether or not the new products
9  infringe. We reach that only if there is first a
10 judgment by Your Honor that the changes are not more
11 than colorable.
12          If they are only colorable, then we reach the
13 question as to whether there is infringement or not.
14 And the problem, Your Honor, is we do not want to
15 retry this case. We want to focus very narrowly on
16 that question.
17          The reason a million pages of documents were
18 produced in this case, Your Honor --
19          THE COURT: Excuse me. You want to focus
20 very narrowly on what question?
21          MR. KREVITT: We want to focus very narrowly,
22 Your Honor, in the first instance on the question that
23 *TiVo v. EchoStar* says we have to, which is whether
24 ePlus can prove that the new products are not more
25 than colorably different.

1      The first question, Your Honor, focuses
2 simply on that delta between at the old products and
3 the new products, not whether the new products
4 infringe.  They don't, but that's not the question for
5 Your Honor in the first instance.  It's simply when
6 you compare the new product to the old product and you
7 look at the delta, the differences between those
8 products.  Are those differences colorable, more than
9 colorable, less than colorable?  What is the
10 difference between those?  And the way you judge that,
11 Your Honor, is using two tools.
12      THE COURT:  Wait a minute.  Where do you go
13 after that, according to you?
14      MR. KREVITT:  Where do we go after that?
15 Well, in our view, Your Honor, we won't go anywhere.
16      THE COURT:  Let's assume that we've concluded
17 that there are colorable differences.
18      MR. KREVITT:  Obviously, Your Honor,
19 understands.  I wasn't trying to be cute.  My point
20 was I think we'll win on that first issue.
21      If we do not, if Lawson does not win and
22 ePlus is able to prove that the new product is not
23 more than colorably different, the delta isn't
24 significant enough, then we go to the question
25 regarding whether the new products infringe.

1     MR. ROBERTSON: Your Honor, this is
2  Mr. Robertson. This is where we fundamentally
3  disagree. Lawson's articulated three reasons why RQC
4  is supposed to be colorably different from RSS and the
5  other systems that were found to infringe. And let's
6  not lose sight that there were configurations Your
7  Honor is aware about that just don't involve RSS.
8     Having said that, if they only articulate
9  three reasons and we show that all three of those
10 reasons are wrong, then is Mr. -- is it Krevitt? I'm
11 sorry. I know it's Josh. Is he suggesting we now
12 have a new infringement trial?
13    If they haven't articulated any other
14 differences, I think Your Honor logically can assume
15 it follows inexorably that they continue to infringe
16 because that's the only three differences they
17 identified.
18    So if it's the suggestion we have some
19 two-phase approach here where we have to have a
20 retrial on infringement again, that's just not
21 consistent with the case law. But we can brief that
22 after we put our evidence on at what I would hope
23 would be a focused contempt proceeding. And if that's
24 their position, let that be their position. But I
25 don't understand how they can come forward and say,

1  "We only changed three things," and if you show those
2  things aren't colorably different, now we need a new
3  infringement trial. That makes no sense to me and
4  it's not what *TiVo* teaches.
5       MR. KREVITT: Your Honor, this is Josh
6  Krevitt.
7       Given Your Honor's guidance on this call
8  about revving engines and not revving engines, I've
9  been doing my best not to interrupt, and I would
10 appreciate the same courtesy from Mr. Robertson.
11      THE COURT: I think he thought you were
12 through.
13      MR. KREVITT: Okay. The *TiVo* case, Your
14 Honor, could not be any clearer. And, obviously, one
15 thing on which the ePlus lawyers and the Lawson
16 lawyers agree is that *TiVo v. EchoStar* is a big deal.
17 And so Your Honor will make your own judgment on that.
18      In our view, and we could be wrong, Your
19 Honor could read the case differently, in our view we
20 think it's very clear that the Court in that case set
21 out a two-part analysis.
22      And the first part is the colorable
23 difference analysis. And the second part is if the
24 plaintiff prevails on that first part whether there's
25 infringement or not, Mr. Robertson -- I'm hoping, Your

1  Honor, we never reach this question because we win on
2  the first one, of course, but Mr. Robertson, I think,
3  clearly, and I think this is an objective statement of
4  what he just said, and we disagree, conflated those
5  two and said that if they prevail on the colorable
6  question, I'm speaking in shorthand, of course, but if
7  they prevail on that question, then it's reasonable
8  for the Court to assume, for the Court to rule, that
9  the new products infringe, and, therefore, find Lawson
10 in contempt.
11      I respectfully submit, and it may well be
12 that we've exhausted the utility of telling the Court
13 what the case says, and the Court has and will read it
14 for the Court, but we respectfully submit that that's
15 wrong, that the Court set out this two-prong inquiry.
16      THE COURT: Excuse me just a minute.
17      How many cases have been decided following
18 *TiVo* that deal with *TiVo* and apply it?
19      MR. KREVITT: That's a good question, Your
20 Honor. I think it's not many. Half a dozen. We'll
21 have our crack crew come up with an answer to that
22 question, Your Honor. It's not many.
23      By the way, this issue was not in passing in
24 *TiVo*, meaning the question --
25      THE COURT: We don't need to argue that now.

1  MR. KREVITT: Okay. I just wanted to mention
2  that that's a big deal in the case is what is the
3  right inquiry. Should we be having an infringement
4  case or should we not be having an infringement case.
5  And the reason, Your Honor, if I may just say
6  one more word, and I know Your Honor doesn't want to
7  have a debate, but one thing to put this into context.
8  The reason the *TiVo* court held what I'm
9  saying the court held is as follows: A contempt
10  proceeding, and we're seeing this right on this phone
11  call, is different than in normal litigation. We have
12  all the discovery available to both parties, and you
13  have a jury, and you have all the procedural
14  protections available, and the plaintiff has the
15  burden of infringement, of course, and we have the
16  ability to defend on validity. All those things exist
17  in a normal litigation. And all those things or many
18  of those things don't exist in a contempt proceeding.
19  And what the *TiVo* court ruled was if the
20  products are sufficiently different, the new products
21  from the old products, and ePlus thinks they infringe,
22  let them bring an infringement case. Again, I'm not
23  being cavalier about that, Your Honor. We think they
24  don't. But if they think the products infringe, but
25  they're very different from the old products, then

1 that's not an issue for a contempt proceeding. That's
2 an issue for a new lawsuit.
3 Only if the products are so close that they
4 can satisfy this -- that they are not colorably
5 different, that they are essentially the same.
6 THE COURT: Isn't that what Mr. Robertson is
7 saying is that if they're not colorably different,
8 then you violate the Court order and the determination
9 that there has been an infringement of the patent?
10 MR. KREVITT: Yes.
11 THE COURT: I don't think you're really
12 saying anything different.
13 MR. KREVITT: Well, we are, Your Honor, in
14 this respect. I'll let Mr. Robertson speak for
15 himself, of course, but I think you have his position
16 exactly right, but here's the point that I'm making.
17 And in many cases this may not be a huge issue in
18 certain circumstances.
19 It is not true that if the products are not
20 colorably different, that is to say they are very
21 similar, that you skip to a contempt finding. You
22 then have to do an inquiry on infringement because,
23 Your Honor, you could have products that are not
24 colorably different but are a little different. Very,
25 very little difference. Let's say that Your Honor

1  finds that they are not colorably different, but that
2  little, little difference is sufficient to take them
3  out from infringement.
4       THE COURT:  I don't think *TiVo* held that.
5  *TiVo* didn't address that issue.  The argument may be
6  that it flows from *TiVo*.  I understand that.  But I
7  don't think -- it's been awhile.  I read it and I may
8  have it wrong.  I think you described *TiVo* correctly
9  when you first articulated what you thought it meant,
10 not the most recent.  And I don't mean when you first
11 articulated it.  I mean in the last time you tried to
12 summarize it.
13      MR. KREVITT:  I know.  I know.  Which is not
14 a good sign.  I certainly wasn't trying to change my
15 position, Your Honor.
16      THE COURT:  Let's stop now.  Let's hold our
17 powder.
18      MR. ROBERTSON:  Your Honor, this is
19 Mr. Robertson.
20      THE COURT:  You want a shot at him anyway
21 even though he's putting his musket back up?
22      Wait a minute, Mr. Krevitt.  Have you served
23 time in the Senate?
24      MR. KREVITT:  The U.S. Senate, Your Honor?
25      THE COURT:  Yes.

1  MR. ROBERTSON: Thank you, Your Honor.
2  THE COURT: Bye-bye.
3
4  (The proceedings were adjourned at 5:50 p.m.)
5
6  I, Diane J. Daffron, certify that the
7  foregoing is a true and accurate transcription of my
8  stenographic notes.
9
              /s/
10  _____    _____
    DIANE J. DAFFRON, RPR, CCR              DATE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25