**GOODWIN | PROCTER**

Scott L. Robertson
202.346.4331
SRobertson@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue NW
Washington, DC 20001
T: 202.346.4000
F: 202.346.4444

September 28, 2011

**Via Hand Delivery**

The Honorable Robert E. Payne, United States District Judge
United States District Court
   for the Eastern District of Virginia, Richmond Division
Spottswood W. Robinson III and
   Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

**Re:**   *ePlus, Inc. v. Lawson Software, Inc.*
         Civil Action No. 3:09cv620 (REP)

Dear Judge Payne:

We are in receipt of Mr. McDonald's September 23, 2011 letter to the Court, in which he requests the appointment of an independent expert or technical advisor in connection with the contempt proceedings in this matter. This letter states our client's reasons for opposing the request.

First, there is no need to quibble over the law. Federal district courts have authority to appoint independent experts or advisors (subject to various procedural requirements) under Rule 706.[1] The question here is whether such appointment secures for *e*Plus and Lawson "the just, speedy, and inexpensive determination" of this contempt proceeding. *See* Fed. R. Civ. P. 1. As we note below, the parties are fully capable of submitting evidence to the Court that permits the resolution of this matter, without the necessity of appointing an independent expert, well before the end of this calendar year.

---

[1] It should be noted, however, that even in highly technical cases courts take this step only in the "rare" or "exceptional" case. *See Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009) ("Courts and commentators alike have remarked that Rule 706 should be invoked only in *rare and compelling circumstances*") (emphasis added); *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1378 (Fed. Cir. 2002) ("district courts should use this inherent authority *sparingly* and then *only in exceptionally technically complicated* cases") (emphasis added); *Reilly v. United States*, 863 F.2d 149, 156-57 (1st Cir. 1988) (such appointments should be *"reserved for truly extraordinary cases"* and that *"[a]ppropriate instances, we suspect, will be hens-teeth rare. The modality is, if not a last, a near-to-last resort"*) (emphasis added); Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE, § 6304 ("In fact, the exercise of Rule 706 powers is *rare under virtually any circumstances.* This is, at least in part, owing to the fact that appointing an expert increases the burdens of a judge, increases the costs to the parties, and interferes with adversarial control over the presentation of evidence.") (emphasis added).

Honorable Robert E. Payne
September 28, 2011
Page 2

Second, the parties agree on the core issue, which is whether systems with Lawson's "RQC" are more than a colorable variant than the infringing system configurations. There are merely three aspects that Lawson contends render the systems materially different. They are:

- Whether relabeling the "shopping cart" in RSS as "requisition lines" in RQC is a colorable variant;

- Whether permitting category searches using UNSPSC codes to the class level, instead of the commodity level, in RQC is a colorable variant; and

- Whether maintaining separate requisitions for punchout items and item master vendor items in RQC is a colorable variant.

By Lawson's admission, only these purported incremental changes to the infringing systems are material to this proceeding.

Third, *e*Plus has asked its experts to review the new RQC features identified by Lawson, and the experts should be permitted to complete that exercise by receiving from Lawson the fully functional demonstrations that have been requested. It is reasonable to assume that Lawson also consulted both its technical experts and lawyers before announcing to the marketplace that RQC renders its procurement suite non-infringing, and Lawson can offer those same experts and lawyers as witnesses to explain these points to the Court.

Fourth, there is no basis to intimate that *e*Plus is offering experts who have abandoned their objectivity or who misunderstand their proper role. The Court is familiar with the parties' experts. All of these experts have testified with respect to the functions identified by Lawson, all can be cross-examined at a hearing, and the record developed through that process is likely to be more than sufficient to inform a reasoned decision by the Court. The Court has already resolved *Markman* issues, summary judgment and pre-trial motions, and post-trial motions, based on such testimony.

Fifth, Lawson's request has associated costs that are not mentioned in its counsel's letter. The education of an independent expert imposes real costs on the parties, as the process of educating that expert is not free to the litigants even if Lawson pays the expert. Such an expert would likely want to review the case record, understand the basis for the jury's infringement findings, and — only after appropriate study — weigh in on the issues presented in this contempt proceeding. It is certain that the parties will incur additional legal costs in addressing questions raised by an independent expert. Moreover, *e*Plus faces the cost of a real devaluation of its patents in the marketplace, because getting an independent expert up to speed facilitates Lawson's strategy of delay. The force of the jury verdict and the Court's injunction fade daily as Lawson freely markets systems having the RQC product that bear the indicia of performing the same infringing functions as systems including the RSS product. Lawson's counsel assures the Court that "Lawson

Honorable Robert E. Payne
September 28, 2011
Page 3

took this Court's injunction order seriously," even as Lawson sends the marketplace the contrary message that it has rendered the outcome of the January 2011 trial and the ensuing injunction essentially worthless.

Finally, Lawson's request assumes, before the record supports such an assumption, that this contempt proceeding will be resolved through a close call on some technical issue that will necessitate an expert "tiebreaker." It is highly unlikely that such a scenario will develop. In addition to hearing competent expert testimony concerning the operation and source code of this software, the Court will need to assess the veracity of Lawson's present arguments in light of the developmental timeline of the RQC module. Those who were present during the injunction proceedings clearly recall the apocalyptic scenario predicted by Lawson's witnesses and counsel in their effort to avoid an injunction. How this turned so quickly into a free and easy download of a supposedly non-infringing product remains to be explained.

Should the Court, after hearing the evidence, determine that any close, highly-technical question remains, and that an independent expert would prove valuable in resolving any such question, it will have the authority to appoint an independent expert. At that point, any troublesome, unresolved issues will be narrowed and specifically identified. ePlus suspects that such an exercise will not be necessary, and strongly believes that the appointment of an independent expert at this stage of the contempt proceeding is an invitation to delay, increased expense, and an effort by Lawson to relitigate issues already decided by the Court and the jury.

Respectfully submitted,

*[signature]*

Scott L. Robertson

cc:   Counsel of Record