# EXHIBIT 10

1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    RICHMOND DIVISION

 3  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                      :
 4  ePLUS, INC.,                      :
                                      :
 5                    Plaintiff,      :
    v.                                :  Civil Action
 6                                    :  No. 3:09CV620
    LAWSON SOFTWARE, INC.,            :
 7                                    :  January 22, 2010
                     Defendant.       :
 8  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

 9


10


11          COMPLETE TRANSCRIPT OF MARKMAN HEARING
            BEFORE THE HONORABLE ROBERT E. PAYNE
12              UNITED STATES DISTRICT JUDGE


13


14


15  APPEARANCES:

16  Scott L. Robertson, Esq.
    Jennifer A. Albert, Esq.
17  GOODWIN PROCTOR
    901 New York Avenue, NW
18  Washington, D.C.   20001

19  Craig T. Merritt, Esq.
    CHRISTIAN & BARTON
20  909 E. Main Street, Suite 1200
    Richmond, VA   23219-3095
21
              Counsel for the plaintiff ePlus
22


23


24            DIANE J. DAFFRON, RPR
             OFFICIAL COURT REPORTER
           UNITED STATES DISTRICT COURT
25
```

1   into the new database they are going to use.

2           Is that a vendor catalog?  It's got catalog

3   data.  Why does it have to be from a vendor,

4   particularly when the patent points out it can be from

5   so many different sources such as distributors and

6   manufacturers?

7           So I think that would be proper to import

8   that term.

9           THE COURT:  You agree with his definition

10  now, don't you, after you have read the briefs?

11          MR. McDONALD:  No, Your Honor.

12          THE COURT:  Why not?  I mean, really and

13  truly, there's no basis for the limitation of a vendor

14  that I can find because they do -- I think it's time

15  for you all to sort of really come to reason and

16  rationality.  They talk about all kinds of third

17  parties, manufacturers, suppliers, distributors.  Some

18  of whom sell.  Some vend.  Some of whom don't.  And it

19  doesn't appear in the claim language.  So why do we

20  have to bring that in or why do we have to spend any

21  more time arguing other than you saying something like

22  this:  You know, after having read their briefs, I

23  think we can live with that.  How about that?

24          MR. McDONALD:  The patent itself, Your Honor,

25  does talk about vendors and that is the --

1          THE COURT:  It talks about vendors, but it

2    doesn't limit it to vendors and you're trying to limit

3    it.

4          MR. McDONALD:  But when the invention itself,

5    though, is so focused on this concept of the new thing

6    using this catalog database with this large volume of

7    information --

8          THE COURT:  See, that's what I'm saying.  You

9    shouldn't be making arguments like that.  That's what

10   I'm saying.  You're arguing about how many angels can

11   stand on the head of a pin.  And there's no real merit

12   to it.  And it's the kind of thing that obscures the

13   ability of courts to efficiently process patent cases.

14          I really think in making your arguments, both

15   of you need to be facing the fact that -- face this

16   fact:  That if, in fact, I make a claim determination,

17   and I later find that what it is is a sneaky way to get

18   a summary judgment in, I may reconstrue the claim in

19   the summary judgment process because I'm not going

20   to -- this is one of the reasons why often I find that

21   it's important to have the claim construction and the

22   summary judgment proceed apace, and I may in fact just

23   do that in this case.  Holding everything until I see

24   your summary judgment motions.  But I really think that

25   there has come to be this approach to claim

1  construction that it is a "gotcha" for summary judgment

2  instead of being what it was intended to be.  And what

3  it was intended to be is where there really are genuine

4  ambiguities in a patent, let's get a construction and

5  live with it.

6          And sometimes that's going to result in

7  summary judgment and sometimes it's not.  And now claim

8  construction is becoming a way to try to structure and

9  rewrite claims in such a way as to get a summary

10 judgment.  And I want you to stop it.  Okay.

11         MR. ROBERTSON:  Just for record, I was

12 referencing the '683 Patent at column 4, lines 46 to

13 60, where all those different supplier, manufacturer or

14 vendor catalogs are described.  Of course, Fisher

15 Scientific was --

16         THE COURT:  Where is it?

17         MR. ROBERTSON:  Do you have that column?

18         THE COURT:  '683?

19         MR. ROBERTSON:  Column 4, 46 to 60, for

20 example.  There are other examples that we gave in the

21 brief.  But here you are, Judge, we're talking about

22 distributor catalogs, suppliers, manufacturers, other

23 distributors listing vendor products.

24         With that I'd like to move on from "catalog"

25 unless you have any other questions with respect to

1  is a means-plus-function claim if instead of module

2  those two have the word "means" in them.

3         So we didn't go there.  It would not be

4  appropriate under the law for us to contend that those

5  first two modules were means-plus-function, but it was

6  appropriate for the third one because there's just no

7  structure in there.  There's nothing like a data field

8  or collection of catalogs.

9         THE COURT:  All right.

10        MR. McDONALD:  Can we go to slide 494,

11 please.

12        This has to do with the catalog issue, Your

13 Honor.  I'm going through the terms that are not

14 means-plus-function terms, obviously.  And I think that

15 the core point that we're trying to emphasize here is

16 the case law makes it pretty clear that when you're

17 construing a term, sure, it's not limited necessarily

18 to the preferred embodiment, but you do have to read it

19 in view of the specification.  And there are ways that

20 an applicant will narrow the scope of a term or at

21 least give it some specificity through how they use it.

22 And we believe our definition is very consistent with

23 how various collections of item information are used in

24 the patents.

25        THE COURT:  If you do what you're talking

1   about, aren't you in this instance importing a

2   limitation from a specification into the claim?

3          MR. McDONALD:  No, Your Honor.  I think going

4   to the next slide here, we have a quote from a couple

5   of Federal Circuit cases.  The term shouldn't be

6   limited just because they are used in the specification

7   to describe a preferred embodiment.

8          But nevertheless, the context may narrow a

9   term that out of context may be broader.  You don't

10  have to have expressly defined it as a lexicographer as

11  the applicant in order to have used the term in a way

12  that will narrow it.

13         And here we talk about, obviously, the

14  features of our definition of catalog that are at issue

15  really are two things.  One is we're saying they come

16  from vendors.  And that term we do not mean to be

17  unduly narrow, and I'll show why in the specification

18  itself it uses vendors really to apply to all these

19  categories of sources for catalogs.  It applies to the

20  distributors.  It applies to vendors.  It applies to

21  other suppliers.  All those are called vendors.

22         So that's a term that we were not meaning to

23  be unduly narrow, but it is in general the folks that

24  are selling your products.

25         THE COURT:  If it includes manufacturers,

1   distributors and suppliers, why is your definition any

2   different from theirs?

3            MR. McDONALD:  Theirs would include things

4   like a shopping list or --

5            THE COURT:  Like a what?

6            MR. McDONALD:  A shopping list.  I'm going to

7   go to the store.  That's an organized --

8            THE COURT:  You mean a shopping list such as

9   my wife writes up when I go to Ukrop's?

10            MR. McDONALD:  Yeah.  It would include a

11   requisition.  It would include a purchase order.

12   That's an organized collection of items and associated

13   information.  Typically it includes a part number and

14   -- when you go to the grocery store, you probably

15   wouldn't have a part number on that one.  But

16   requisitions -- you're placing a requisition.  I'm not

17   selling anything.  I'm not putting out a catalog, but I

18   am placing an order for something or going down and

19   asking the boss to approve a requisition list.  I want

20   six rolls of Scotch tape.  I want 12 pens.  I want 15

21   notebooks.  And this is the size I want.  And maybe

22   I've even got a part number or a catalog number on

23   there because I looked it up.  And I need somebody's

24   approval.

25            That would meet their definition of a

1  catalog.  And that's our concern as to what's going on

2  here.  And I'll put the issue on the table.  We do have

3  a situation here, I think Mr. Robertson alluded to it,

4  but our client Lawson has been in business since the

5  '70s selling various business systems including

6  purchasing types of systems.

7          They have had something since long before

8  even that RIMS patent was filled going back to at least

9  to the '80s called an Item Master that their customers

10 would populate.  They don't sell it with it.  They sell

11 it basically as a blank book.  But the customer gets

12 it.  The customer can populate it with the stuff they

13 buy.  So they put in the list of things.  Not everybody

14 wants a catalog of Fisher Scientific's 100,000

15 products, Promega's 50,000 products or McKesson's

16 150,000 products for all their employees to be

17 reviewing while they are deciding what they want to

18 buy.

19         There are certain customers that need that

20 and this invention maybe is good for those folks, but

21 there's a whole lot of other folks out there.  Maybe

22 they are smaller businesses.  Maybe they --

23         THE COURT:  Well, is it accused?  Is that

24 part of what you are describing?  Is that accused?

25         MR. McDONALD:  Yes.  They are saying that our

1  Item Master that our customer is using will populate

2  with products of their own choosing that they choose to

3  have their employees have access to, that's multiple

4  catalogs.  That's what they are contending.

5          THE COURT:  Is that patented?

6          MR. McDONALD:  No.  A lot of folks don't

7  patent software.  That's why there is a lot of crazy

8  software patents out there that go back to the '80s and

9  '90s because a lot of folks back then didn't even know

10  you could patent software.

11          The Federal Circuit didn't really shoot that

12  across the bow with clarity until that State Street

13  Bank decision came out, which was not out back in the

14  '80s and '70s and early '90s.  I think it was about ten

15  years ago when that one came out.

16          So a lot of companies like Lawson were coming

17  up with products.  Maybe they didn't think it was more

18  than an obvious improvement.  Maybe they didn't realize

19  it was patentable.  I think it was a combination of

20  both.  That's why there have been a lot of software

21  cases.  This is one of the worst areas of patent law.

22          THE COURT:  Boy, you got that right.

23          MR. McDONALD:  It's because some people were

24  playing by the patent game and some folks weren't.  So

25  the Patent Office, you know, I guess, could they have

1  done a better job?  Sure.  But at some level they were

2  handcuffed there because they didn't have the prior art

3  with people filing it as much as they could have and

4  should have been to give that base of data available

5  where they could have said, Oops, here's somebody else

6  who's already filed for this one.  That's old.  That's

7  been around since the '70s.

8            THE COURT:  Does the prior art have to be a

9  prior patent?

10           MR. McDONALD:  No, it could be a printed

11 publication, things like that.

12           THE COURT:  Was your thing in a printed

13 publication?

14           MR. McDONALD:  Yes.  We got our version of

15 the product offered for sales really would be the way

16 it would qualify.

17           THE COURT:  So if they assert that this is

18 accused and use their definition, if they accuse your

19 system there -- what do you call it?

20           MR. McDONALD:  Our system, it's -- they have

21 the S3 and the M3.

22           THE COURT:  You gave it another name a minute

23 ago.

24           MR. McDONALD:  The Item Master.

25           THE COURT:  The Item Master.  You do the Item

1  Master.  They say that the Item Master infringes.  Your

2  defense to that is not a definitional situation.  It is

3  that you previously published about that before they

4  got their patent.  It was in the prior art and

5  therefore the patent is invalid as to that Item Master,

6  right?

7          MR. McDONALD:  Right.  Well, the issue there,

8  though, that doesn't answer the whole question because

9  we're really only talking about an element of a claim.

10  So now you have all these other issues of -- well, they

11  also have this purchase order generation module and so

12  on.  We have to walk through those.

13          But on this issue, if "catalog" was really

14  that broad, we would say, Well, yeah, we did have

15  something like that before.  But they could still say,

16  Well, maybe you didn't do that one before, but now we

17  have you over here or over there.

18          Part of my point, though, isn't just that

19  Lawson was doing it, but in fact things like an Item

20  Master were out there even in the RIM system that they

21  admit in these patents were prior art.

22          THE COURT:  So they lose under the prior art

23  doctrine but not because of a claim construction.

24          MR. McDONALD:  Well, that depends on what the

25  patent says about that and whether it's really saying

1  we've got something different here from the RIMS item

2  or organization of items and things like that or

3  whether a catalog is just one of those things that they

4  describe and disclose as --

5          THE COURT:  No, that's just one way you can

6  win.  That's just one way you get up on that issue.

7  It's where do you win it.  Do you win it here or do you

8  win it in the validity fight because your product and

9  idea was in the prior art.

10          What I'm getting at is this:  There isn't any

11  point in trying to squeeze or twist language in claim

12  construction for the mere purpose of dealing with what

13  can be dealt with in the validity part of the case.

14          MR. McDONALD:  Well, the claims mean what

15  they mean at some level.  You can only move that needle

16  so much.  I appreciate that.  But, I mean, the fact is

17  it's a lot harder for somebody in our shoes to prove

18  invalidity.  The patent is presumed valid.

19          Obviously, it's being pursued at the Patent

20  Office, at least so far, with the preliminary decisions

21  that have been made so far with uniform success.

22          THE COURT:  But if it's undisputed that your

23  system was in the prior art, you win that.  That's a

24  matter of summary judgment, don't you?

25          MR. McDONALD:  Well, there's other issues.

1   The product has evolved over the years.  So some of

2   these other features come into play.  So that's where

3   there's going to be other issues.  That in itself

4   doesn't mean I win.  That helps.  It could help on

5   that.  And certainly we have got other prior art other

6   than our own that may well be summary judgment.

7              So I understand that.  It's not necessarily

8   to our benefit for everything to be narrow, narrow,

9   narrow.  It may not be, but I do believe that one of

10  ordinary skill reading this patent, reading this series

11  of patents, would not believe a catalog is just any

12  organized collection of items with descriptions of

13  information about them because there's so many other

14  things in these patents that would meet that

15  description like a requisition, like a purchase order,

16  like the cross-reference tables that we were talking

17  about before, like what's in the RIMS patent, the parts

18  masters table.

19             There are so many lists of item information,

20  organized lists, that are not in catalogs.  In fact, in

21  some cases they are specifically called non-catalog

22  that I think it is certainly the case that one of

23  ordinary skill reading this thing would have to find a

24  way to construe the term "catalog" to be consistent

25  with what is a catalog and what is not a catalog in

1    these patents.

2             So just to give an example of that right

3    here.  This is slide No. 99.  What's not a catalog, I

4    think, sheds a lot of light on what is a catalog in the

5    specifications.  We've got some language even out of

6    one of the claims of this patent.  It's claim 17 of the

7    '516 Patent.

8             It said "converting" means -- includes a

9    non-catalog database containing a cross-reference

10   table.  You have already been hearing about the

11   cross-reference table.  I also have on this slide Table

12   5 because that refers to non-catalog information.  I

13   thing that's what they are talking about here as part

14   of this non-catalog database.

15            But what it's got is it's got things like

16   quantity, price, vendor, catalog, description.  It's an

17   organized database list of information about items.

18   They told the public when this patent came out that

19   that's not a catalog.  That is a non-catalog database.

20            So it would be in conflict with their own

21   message they gave to the public to define the term

22   "catalog" as broadly as ePlus proposes here.  That's

23   our point.  Here's an example.

24            THE COURT:  You would be willing to define

25   "vendor" as a supplier, a manufacturer or distributor

1  or any other person who offers products whether his or

2  his own for sale, is that --

3          MR. McDONALD:  That is absolutely true, Your

4  Honor.  I've got up here on the screen 97 or slide

5  No. 97, which is column 4, lines 46 to 60 of the '683

6  Patent.  I believe ePlus put this up before as well.

7  What I've highlighted here is really --

8          THE COURT:  They don't call it just a

9  distributor or a supplier or a manufacturer.  They call

10  it a vendor distributor, a vendor manufacturer.

11          MR. McDONALD:  Outside suppliers --

12          THE COURT:  Then they say "outside

13  suppliers," whether other manufacturers or

14  distributors, listing such vendor's products.

15          MR. McDONALD:  Right.  So my point here is,

16  Your Honor, I did not intend for the term "vendors" to

17  be limited.  I thought the patent would also tell the

18  world that a vendor could include just about anybody

19  who sells something, but not folks who are buying

20  stuff.  That's the fundamental difference between our

21  products here that they are trying to evade by having

22  this definition of catalog include lists of stuff

23  people buy.  Our client's focus is on the customer who

24  is buying stuff.  They are the folks buying our

25  software.

1          Fisher Scientific's focus was, We've got

2     100,000 things we're selling in this catalog.  The more

3     we can sell, the better.  So let's get a system out

4     there that sells as much stuff in our catalogs as we

5     possibly can.  This is an important distinction.  And

6     it reverberates throughout all the claims of this case.

7               THE COURT:  But your concern is to exclude

8     lists of things that people have decided to buy.

9               MR. McDONALD:  Lists of things that --

10              THE COURT:  Or listed that they are going to

11    buy.

12              MR. McDONALD:  Yes.

13              THE COURT:  And he's not trying to included

14    those, is he?

15              MR. McDONALD:  Well, I think his definition

16    is.  I think he's got to, I think, to include our

17    customers' products.

18              Let me pause for a moment, Your Honor, and

19    give you at least a little "heads-up" on an issue here

20    that you're probably not going to particularly like,

21    but I'll at least give you the context of it.

22              It has to do with these catalogs.  Remember,

23    I was saying before that Lawson when we sell our

24    products they're empty.  We've got the software, but

25    they don't have the items populated in them.  The

1  customers do that themselves.

2           I think there was maybe some testimony that

3  if somebody asked, we might do it for them.  But why

4  would they ask?  We're too expensive to go do something

5  like that for you.  So they do it themselves.

6           So what an individual customer actually does

7  has to be known to know whether or not a system

8  infringes when the claim calls out a system that has

9  multiple catalogs, for example.  And so that's a

10  complexity of this case, but it's an indirect

11  infringement case, in essence, there.  I know they

12  dispute that, but at some level here, Your Honor,

13  that's relevant to the case.

14           So what exactly a given customer has, is that

15  something they populated?  They're buying stuff.

16  That's what, I think, the vast majority of them do.

17  Are there some that do something else?  I guess there

18  might be an issue of fact there.

19           At this point they have subpoenaed several of

20  our customers.  They haven't really followed through

21  with any of the depositions of any of them to establish

22  that a single one of them even has a catalog under

23  their definition on their systems.

24           But, you know, odds are they are going to

25  have an Item Master like we have sold for 30 or 40

1 years, and they don't have confidence, I don't think,

2 that they were going to be able to necessarily show

3 that they are also getting these wholesale catalogs

4 imported in.  So they have to keep this as a plan B to

5 make sure that the catalog is defined broadly enough

6 that even if it's the normal customer just listing

7 stuff they buy, they can still have a gotcha.

8          That could be an issue going down the line

9 because of the indirect/direct infringement,

10 inducement, and things like that.  I at least wanted to

11 give you that context here.

12          THE COURT:  You know what the problem is with

13 lawyers sometimes?  It's a problem with very smart

14 lawyers according to Judge Williams, my colleague.

15 Sometimes they outthink owls.  And when they do, they

16 create a lot of issues that don't need to be litigated.

17 And I think both of you are outthinking owls right now.

18          All right.  Let's go.  I understand.

19          MR. McDONALD:  All right.  Thank you, Your

20 Honor.

21          THE COURT:  That was meant as a compliment.

22          MR. McDONALD:  Oh, thank you.

23          THE COURT:  To your ability to think.

24          MR. McDONALD:  Which now casts doubt on

25 whether we are really as smart as you just thought we

1  an order list?  Well, it's a list of stuff you order.

2          Well, not so fast.  Actually, the patent

3  makes it pretty clear that that's not what it is

4  because there are further steps to go before you

5  actually place an order and what's on your order list

6  may well not be the same thing you wind up ordering.

7          So it's really an intermediate list that is

8  transferred from the search system, the TV2 search

9  program system, transferred to the requisition system.

10 It's kind of an interim order list of things they may

11 want to order.  But then it goes over there to the

12 requisition system, and you've got your selected items

13 there.  And from there you can build your requisition

14 using that.  You don't have to use everything on the

15 order list.  You can add to it.  You can subtract to

16 it.  Maybe from some other searches you did.  Maybe

17 because you just know a catalog number for a product

18 you may frequently order and don't need a search.

19         So there are some very specific meanings is

20 my main point here as to what an order list is, what a

21 hit list is, and just giving those things a plain and

22 ordinary meaning is inappropriate in view of what's

23 described here and really invites mischief.

24         It also highlights what a selected matching

25 item is.  Matching is the search part that gets you to

106

1 items are.  They comprise the order list, not the

2 requisition.

3          Then the next element is the means for

4 building a requisition that uses data obtained from the

5 database relating to selected matching items on said

6 order list.  So that claim 1 of the '172 does have

7 claimed in there that same sequence I was just

8 describing where you match them, you select them for

9 the order list, and then you go to the requisition, and

10 only then.

11          Do you have any other questions about that

12 one, Your Honor, or may I go on to the cross-reference

13 table?

14          THE COURT:  All right.

15          MR. McDONALD:  Thank you.

16          So we've got ePlus said this one doesn't need

17 to be construed.  We've got our proposed construction

18 because, again, a cross-reference table is not

19 necessarily really something that has a plain and

20 ordinary meaning, and the concern is certainly that if

21 you don't have a definition of that, is the jury really

22 when they get back in that deliberation room, are they

23 really resolving an issue of fact?  Or are they going

24 to be agreeing on what, for example, the Lawson product

25 is?  Or are in agreement on the facts of what the prior

1   wasn't it?

2              MR. ROBERTSON:  June 14.

3              THE COURT:  And when I set that trial, I will

4   tell you what it is.  It's a date that I have to be in

5   Oregon.  I didn't realize that I had to be in Oregon,

6   and I've been trying to work out a way to tell you

7   exactly what the trial was before I did the order.  But

8   I'll sign the order and you all can have it.  You've

9   been abiding by it anyway, haven't you?

10             MR. CARR:  Yes, sir.

11             THE COURT:  All right.  Okay.  Does that take

12  care of what we're going to do today?

13             MR. McDONALD:  Yes, sir.

14             THE COURT:  Thank you all very much.  We'll

15  see you on the 27th.

16             We'll be in adjournment.

17

18             (The proceedings were adjourned at 5:20 p.m.)

19

20             I, Diane J. Daffron, certify that the

21  foregoing is a true and accurate transcription of my

22  stenographic notes.

23
                      /s/                    1/26/10
24  _____   _____
                 DIANE J. DAFFRON, RPR, CCR      DATE
25