990

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF VIRGINIA
 3                       RICHMOND DIVISION
 4
 5   ------------------------------------
                                         :
 6   ePLUS, INC.                         :   Civil Action No.
                                         :   3:09CV620
 7   vs.                                 :
                                         :
 8   LAWSON SOFTWARE, INC.               :   January 11, 2011
                                         :
 9   ------------------------------------

10

11           COMPLETE TRANSCRIPT OF THE JURY TRIAL
12           BEFORE THE HONORABLE ROBERT E. PAYNE
13          UNITED STATES DISTRICT JUDGE, AND A JURY

14
     APPEARANCES:
15
     Scott L. Robertson, Esquire
16   Michael G. Strapp, Esquire
     Jennifer A. Albert, Esquire
17   David M. Young, Esquire
     Goodwin Procter, LLP
18   901 New York Avenue NW
     Suite 900
19   Washington, D.C.  20001

20   Craig T. Merritt, Esquire
     Christian & Barton, LLP
21   909 East Main Street
     Suite 1200
22   Richmond, Virginia  23219-3095
     Counsel for the plaintiff
23

24              Peppy Peterson, RPR
                 Official Court Reporter
25           United States District Court
```

EXHIBIT 8

Christopherson - Direct

1159

1 is where I lost you. ^ you check out at the customer, not the
2 customer but the vendor site and then it was at that point
3 where I got lost.
4 Q   Let me start over. Let's hear the whole question. When
5 users have filled their shopping carts, virtually speaking, and
6 checked out from the vendor website using Lawson procurement
7 punchout, the chosen items and their price are then returned to
8 the Lawson server, and a requisition is created using the
9 Lawson requisition self-service application; correct?
10 A   That's correct.
11 Q   Isn't it true that the current version of the Lawson
12 procurement punchout includes the capability to punch out to
13 multi-vendor catalogs?
14 A   That's correct.
15 Q   One of those examples of a site that you can go that is a
16 multi-catalog vendor -- excuse me, multi-vendor catalog, is
17 SciQuest; correct?
18 A   That's correct.
19 Q   Another example of a multi-vendor catalog site that's
20 available for the punchout procurement is an organization known
21 as GHX; correct?
22 A   That is correct.
23 Q   That stands for Global Healthcare Exchange?
24 A   That's correct.
25 Q   And Global Healthcare Exchange that provides this

Christopherson - Direct                                          1160

1   multi-vendor catalog capability is a punchout trading partner
2   of Lawson; correct?
3   A    That's correct.  They are on the list, yes.
4   Q    It's an accurate statement to say that if Lawson could not
5   market a requisition module, it could not effectively compete
6   in the supply chain management product market?
7   A    I would say that that would be an accurate statement, yes.
8   Q    It's also accurate to say if Lawson could not offer a
9   purchase order module, Lawson could not effectively compete in
10  the supply chain management product market?
11  A    That would also be correct.
12  Q    You've heard a lot of talk about the implementation and
13  installation services that Lawson offers.  I just want to be
14  clear that Lawson will provide implementation services to
15  assist its customers with importing vendor catalog data into
16  the item master.
17  A    I didn't hear a question in that, sir.
18  Q    Let me restate it then.  Perhaps I misspoke.  Is it true
19  that Lawson provides implementation services to assist its
20  customers with importing vendor catalog data into the item
21  master?
22  A    If the customer so chooses and wants that service, yes, we
23  do.
24  Q    So for most situations where a customer licenses the
25  supply chain management suite or the procurement modules we've

1 relating to claim construction, I'm concerned that if we now
2 move the ball on what the claims mean, what is the implication
3 of that for the testimony that's already been given, the
4 testimony that's yet to come that the Court repeatedly says has
5 to be limited to what's in the expert reports, there were prior
6 decisions by the Court relating to prior art exclusions and
7 things like that. I think there's many implications of making
8 any changes here, so I'm concerned about that.
9     THE COURT: I think -- I'm not sure there are a
10 lot -- that is not a claim construction answer. That's an
11 instruction, and the fact of the matter is that it is not at
12 all unusual for Courts to give revised claim constructions
13 during the trial.
14     In fact, for a good while, it was common to give the
15 claim construction only as part of the instructions. Now, I've
16 never done that just because I didn't want to put myself
17 through that agony, but that's what happens sometimes, and in
18 that event, experts have to take their positions -- take out
19 their position and see what happens. So we'll see.
20     MR. McDONALD: In this case, the experts were allowed
21 to give their reports after the Court's Markman ruling, so I
22 think that really changes the dynamic.
23     THE COURT: Okay. Anything else? Thank you. We'll
24 see you all tomorrow at nine o'clock.
25     (Court adjourned.)