IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:09CV620 (REP) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAWSON SOFTWARE, INC.'S FED. R. EVID. 615(c) MOTION TO ALLOW LAWSON'S EXPERT WITNESSES TO ATTEND THE HEARING ON THE MOTION FOR CONTEMPT**

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, VA 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
jlo@gibsondunn.com

*Attorneys for Defendant Lawson Software, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 1

ARGUMENT .................................................................................................................................... 4

CONCLUSION ............................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ake v. General Motors Corp.*,
942 F. Supp. 869 (W.D.N.Y. 1996) .................................................................................. 9

*Bruneau v. South Kortright Central School District*,
163 F.3d 749 (2d Cir. 1998) ............................................................................................ 10

*Gentieu v. Tony Stone Images/Chicago, Inc.*,
214 D. Supp. 2d 849 (N.D. Ill. 2002) ................................................................................ 9

*In re Quigley Co, Inc.*,
437 B.R. 102 (Bankr. S.D.N.Y. 2010) ............................................................................... 9

*Malek v. Federal Insurance Co.*,
994 F.2d 49 (2d Cir. 1993) ................................................................................................ 8

*Mayo v. Tri-Bell Industries, Inc.*,
787 F.2d 1007 (5th Cir. 1986) .......................................................................................... 6

*Morvant v. Constr. Aggregates Corp.*,
570 F.2d 626 (6th Cir. 1978) .................................................................................... 5, 6, 7

*Opus 3 Ltd. v. Heritage Park, Inc.*,
91 F.3d 625 (4th Cir. 1996) ..................................................................................... 1, 4, 5, 6

*Thakore v. Universal Machine Co. of Pottstown, Inc.*,
670 F. Supp. 2d 705 (N.D. Ill. 2009) ................................................................................ 9

*TiVo v. Echostar*,
646 F.3d 869 (Fed. Cir. 2011) ........................................................................................... 1

*United States v. Bramlet*,
820 F.2d 851 (7th Cir. 1987) ......................................................................................... 5, 6

*United States v. Farnham*,
791 F.2d 331 (4th Cir. 1986) ............................................................................................. 4

*United States v. Kiewit Constr. Co.*,
2005 WL 1277953 (D. Alaska 2005) ............................................................................... 9

*United States v. Rhynes*,
218 F.3d 310 (4th Cir. 2000) ............................................................................................. 5

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. Seschillie*,
310 F.3d 1208 (9th Cir. 2002) .......... 8

**Rules**

Fed. R. Evid. 615 .......... 4, 5

Fed. R. Evid. 701 .......... 9

Fed. R. Evid. 703 .......... 6

**Treatises**

29 Charles Alan Wright et al., Federal Practice and Procedure § 6245 (1st edition) .......... 5, 7

**Other Authorities**

Fed. R. Evid. 615 advisory committee's notes .......... 5

## INTRODUCTION

Lawson Software, Inc. ("Lawson") moves under Rule 615(c) of the Federal Rules of Evidence, for an order allowing its expert witnesses to hear and observe all testimony in court during the hearing on the motion for contempt scheduled to commence on February 27, 2012. The parties are to present evidence on the technical subject of computer software programming, for evaluation under the legal framework of *TiVo v. Echostar*, 646 F.3d 869 (Fed. Cir. 2011), as well as technical financial testimony relating to alleged damages. The record of the expert opinions for each party will be laid down in court, and nowhere else. ePlus has a heavy burden of proof in this case, which it hopes to carry through expert testimony. Thus, Lawson's expert witnesses will be asked to address the expert testimony that ePlus offers. Excepting experts from any sequestration order will allow issues to be joined in a way that is most likely to be of benefit to the Court. It is also necessary in order to allow counsel to receive essential assistance in their presentation of the case. Finally, making an exception for experts, for both sides, in no way prejudices ePlus.

The Court has indicated, consistent with *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 628 (4th Cir. 1996), that a party desiring to authorize witnesses to attend the hearing must affirmatively raise that issue. Lawson submits the following to discharge its burden under *Opus 3 Ltd.*, and respectfully requests that the Court exercise its discretion to allow expert witnesses to attend the hearing.

## BACKGROUND

The Court is about to embark on a hearing involving technical subject matter and the parties have, very appropriately, designated expert witnesses who will testify in order to assist the Court in deciding the disputed issues. The Court can expect to hear testimony and expert technical analysis concerning the language, structure, and operation of computer software source

code, and comparative analysis of different sets of code. The Court will also hear proposed damages theories based on economic and business calculations of revenues and profits. Expert witnesses will apply their technical expertise in economics to these distinctive issues as well.

Pre-hearing discovery has provided the adverse parties with information on the reports and opinions the parties' expert witnesses expect to present, and the Court may expect that the parties are preparing for the hearing on that basis. ePlus, Inc. ("ePlus") as plaintiff, bears the burden to prove all elements of contempt by clear and convincing evidence (Hearing Tr. 11/8/11 at 117) (attached as Exhibit 1) and has identified the expert witnesses it expects to present in its effort to carry that burden. The designations reflect special, technical knowledge essential to assist the Court and counsel in understanding the principal TiVo issues, and damages. The Court is familiar with two of the ePlus designees, Alfred Weaver, Ph. D., and Patrick Niemeyer, as they testified at the infringement trial. They are now being advanced to opine on the issues of whether differences between the modified Lawson software and the configurations previously found to infringe certain ePlus patent claims are "more than colorable," and whether the modified features of the RQC design-around product continue to infringe the patents-in-suit. Their background suggests that the evidence at the hearing will require a high level of sophistication to understand and analyze the matters at issue.[1] ePlus has turned to a sophisticated individual for its damages analysis. Their designated expert witness, Keith Ugone, earned a Ph.D. in economics from Arizona State University in 1983. His CV reflects a record of publication, teaching, and testimony on issues of applying economic analysis to complex business disputes.

---

[1] Dr. Weaver is a professor at the University of Virginia, and Director of the University's Applied Science Institute. Mr. Niemeyer, an author and consultant, has a CV reflecting work as an engineer and consultant in the areas of computer software and computer system architecture.

2

The backgrounds of Lawson's designated expert witnesses reflect a similar high level of sophistication in highly technical subject matter. Benjamin Goldberg, Lawson's expert witness on the analysis of the software at issue, holds a Ph.D. in computer science from Yale University and is a tenured Associate Professor of Computer Science at New York University, with more than twenty years of experience in the field of computer science. Lawson's expert on damages, Jonathan Putnam, holds a Ph.D. in economics (also from Yale University). His CV reflects extensive work in applying principles of economics to intellectual property disputes with appearances as an expert witness before numerous tribunals, and many publications and academic presentations.

Unlike fact witness testimony, expert opinions are written to be shared with the adversary expert for analysis and criticism. The experts' pre-hearing disclosures are an essential part of what the expert witnesses themselves use in formulating responding and rebuttal opinions. Dr. Weaver's initial opinions were disclosed in his January 13, 2012 report that reflects his consideration of the deposition testimony of six fact witnesses deposed in this proceeding, as well as the consideration of trial testimony from the merits case that he did not hear contemporaneously. His January 27, 2012 rebuttal disclosure reflects consideration of more evidentiary transcripts, including another fact witness deposed for this proceeding.[2] After ePlus disclosed the opinions it expects to offer to carry its burden of proof, Lawson's expert witnesses explicitly considered those opinions in formulating responses. Similarly, the rebuttal opinions disclosed by ePlus were not prepared in a vacuum: Weaver, Niemeyer and Ugone each state

---

[2] ePlus has already submitted designations of deposition testimony from all seven of the fact witnesses whose testimony has been read by Dr. Weaver. If those designations are admitted into evidence, then ePlus's infringement expert will take the stand at the hearing having read testimony admitted into evidence, thus effectively being in violation of Court's order, should the Court deny this motion.

explicitly that they reviewed the reports of the Lawson expert witnesses and considered that material in formulating the rebuttal opinions. Dr. Weaver read the deposition of Dr. Goldberg in preparation for his own deposition.

The expert reports suggest that the opinions offered at the hearing will involve complex and nuanced explanations and that the witnesses may use demonstrative exhibits, whether static or interactive, to illustrate concepts or functions described in testimony. As in any live hearing, the record will develop dynamically through questions from counsel and the Court.

Because the expert witness testimony involves highly technical subject matter, Lawson's expert witnesses will provide counsel with essential assistance in scrutinizing the courtroom testimony of the ePlus witnesses.

Allowing the Lawson expert witnesses to know the testimonial record is essential to those witnesses' function to analyze and respond to the opinions actually offered to support ePlus's case. The purpose of calling Dr. Goldberg is to respond to Dr. Weaver and Mr. Niemeyer; likewise, Dr. Putnam is only testifying because of the expected testimony of Dr. Ugone. The hearing is where ePlus must finally choose what evidence and theories to present in its effort to carry its "clear and convincing" burden of proof. Only when that record is made, will Lawson "know what target [ePlus has] hit" and be in a position to determine what to present in response and details of how to present it. *See* Hearing Tr. 11/8/11 at 117 (attached as Exhibit 1).

## ARGUMENT

The exclusion of witnesses from a hearing is governed by Fed. R. Evid. 615. The rule is read "'narrowly in favor of the party requesting sequestration,'" *Opus 3 Ltd.*, 91 F.3d at 628 (*quoting United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986)), and "the party seeking to avoid sequestration of a witness bears the burden of proving that a Rule 615 exemption applies." *Id.* at 628.

Rule 615 states that the court "must" order witnesses excluded "[a]t a party's request," but the rule "does not authorize excluding . . . (c) a person whose presence a party shows to be essential to presenting the party's claim or defense." This exception is very frequently applied to expert witnesses. *See, e.g., United States v. Rhynes*, 218 F.3d 310, 319 n.8 (4th Cir. 2000) ("expert witnesses are authorized by Rule 615 to remain in the courtroom, hear testimony, and subsequently testify"); *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629-30 (6th Cir. 1978 ("exception [(c)] of Rule 615 will be most frequently invoked in the case of expert witnesses"). The cases "commonly approve the designation of experts as essential under Rule 615[c]." Wright, *Fed. Prac. & Proc.* § 6245. These readings follow directly from the 1972 Advisory Committee Notes to Rule 615, which show that the drafters explicitly intended this exception to cover experts: "The category . . . contemplates such persons as . . . an expert needed to advise counsel in the management of the litigation."

Because of the unique function expert witnesses perform, courts frequently evaluate requests to sequester such witnesses differently than those directed to fact witnesses. Fact witness sequestration is justified by concern over whether adverse witnesses will distort their testimony about the facts underlying the controversy. Accordingly, sequestration under Rule 615, which is "designed to discourage and expose fabrication, inaccuracy, and collusion," *Opus 3, Ltd.*, 91 F.3d at 628, readily applies to fact witnesses. But those concerns are largely absent in the case of an expert. When an expert's mandate includes responding to or rebutting opinions presented by an adversary "an opposing expert can contribute most completely to a [factfinder's] truth finding capacity only by fully understanding and addressing all of the relevant prior evidence." *United States v. Bramlet*, 820 F.2d 851, 855 (7th Cir. 1987). An expert, who "only assumes facts for purposes of rendering opinions, might just as well hear all of the trial

5

testimony so as to be able to base his opinion on more accurate factual assumptions." *Opus 3 Ltd.*, 91 F.3d at 628; *Morvant*, 570 F.2d at 640 ("the presence in the courtroom of an expert witness who does not testify to the facts of the case . . . will in most cases be beneficial"); *Mayo v. Tri-Bell Industries, Inc.*, 787 F.2d 1007 (5th Cir. 1986) (experts "properly exempted" from an order excluding witnesses).

The rationale applies specifically to informing an expert witness of the opposing opinions. The process of disclosure proceeds on the assumption that one side's experts will know their adversary's experts' opinions and will respond to them. If the expert witness is tendered to testify in response to the adverse party's presentation, that logically requires the expert to know what was said in court. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data *in the case* . . ." (emphasis added). Rebuttal testimony "cannot be properly conducted without revealing, in some measure, the testimony which is subject to refutation." *Bramlet*, 820 F.2d at 855.

While the leading Fourth Circuit case on Rule 615 upheld a trial court sequestration order, the particular circumstances of that case suggest why the Court should exercise its discretion here to grant Lawson's application. In *Opus 3, Ltd.*, the owner of a real estate development retained one Bryan Mack to monitor Opus 3's performance on a "time and materials" construction contract. 91 F.3d at 627. The owner refused to pay for extra work Opus 3 performed on Mack's approval, contending that Mack lacked that authority, *id.*, and Opus 3 sued. The defendant owner designated Mack as its only witness and sought to have him in the courtroom during the trial. Mack was to testify *both* as a fact witness and as an "expert witness in the field of 'general contracting and project management,'" and was excluded by the trial court. *Id.*.

The two factors the Fourth Circuit cited to uphold sequestration in *Opus 3, Ltd.* favor allowing Lawson's expert witnesses to hear all the trial testimony. First, in *Opus 3, Ltd.*, the defendant owner apparently made no showing at all as to the reason its designated expert should hear testimony. 91 F.3d at 629. Here, Lawson has discharged its burden by its counsel's "substantiated representation" that the undisputable technical aspects of the evidence make expert assistance essential to the case presentation. *See* Morvant, 570 F.2d at 630. On the software coding issues, the two parties have opinions from Ph.D.'s in the field. Just as these expert witnesses scrutinized their pre-hearing disclosures, Lawson's counsel should have the assistance of its Ph.D. expert in scrutinizing what ePlus's expert witness testifies to in court. Second, the witness in *Opus 3, Ltd.* had a dual function as an expert and "as a fact witness whose testimony was crucial to the disputed issues." 91 F.3d at 629. The witnesses Lawson seeks to have attend the hearing are purely expert witnesses. Their pre-hearing disclosures explicitly considered the opinions offered by the ePlus expert witnesses and responded to them because an expert's opinion is properly based not on direct perception of the facts underlying the controversy, but on the information provided to them by others.

The burden assumed by invoking the third exception for expert witnesses is discharged by making a very practical presentation in the context of the case. A party has to make a fair showing that the expert witness is required for the management of the case, and, while the ruling is a discretionary one, "the trial court is bound to accept any reasonable, substantiated representation to this effect by counsel." *Morvant*, 570 F.2d at 630; Wright, *Fed. Prac. & Proc.* § 6245. Such need includes evaluation of the adversary's presentation as it unfolds in order to present effective cross-examination or rebuttal. Exclusion of an expert witness has been held to be an abuse of discretion when the exclusion deprived a party of expertise at a crucial moment.

In a case to recover on the proceeds of a fire insurance policy, the trial court's exclusion of the insureds' arson expert during the testimony of the carrier's expert was held to be reversible error:

> Redsicker [the carrier's expert] testified that the fire was an "intense fire" but did not make that specific finding anywhere in his report. Since this was an important finding bearing on the question of arson and was not made in Redsicker's reports, Friedell's presence in the courtroom was important to the presentation of the Maleks' case, and a ten-minute recess was not an adequate substitute for his presence.

*Malek v. Federal Insurance Co.*, 994 F.2d 49, 54 (2d Cir. 1993). Similarly, where one party's expert witness performs in-court demonstrations or uses demonstrative exhibits the adverse party's expert needs to witness that performance. Exclusion under such a circumstance is also an abuse of discretion. *United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002).

In this case, the expert pre-hearing disclosures are thick with technical analysis, detailed comparison of lines of computer code, explanations of how that code functions in the hardware, and the user's interaction with the program: the testimony will cover that ground too. The ePlus reports refer extensively to computer screenshots of software in use, and the presentations in court could well involve demonstrative exhibits or even interactive demonstrations of software. The reports from the expert economists present analyses on issues such as "incremental profit," on which the parties have sharply different views. Lawson has no intent to carry its presentation beyond the opinions it disclosed in response to ePlus's pre-hearing reports; but it will be the proper function of counsel to cross-examine adverse witnesses to point out (among other things) where expert testimony arguably departs from what was previously expressed or purportedly supported in the pre-hearing disclosures. The opinions will be stated in the oral testimony of the expert witnesses. And while counsel is fully knowledgeable on the issues in the case, expert assistance is essential to analyze the opinions actually offered. That can occur most efficiently if Lawson's experts are available in court as testimony is given by ePlus's experts (and vice versa).

Moreover, if an expert performs an in-court demonstration as part of the testimony, that simply cannot be recreated satisfactorily. And, as *Malek* and *Seschillie* show, exclusion of the adverse party's expert from the courtroom in those situations is prejudicial, reversible error.

The Court did visit the sequestration issue in the context of the underlying infringement action and decided to sequester the parties' experts. At that time, the Court saw no benefit to exposing the experts to testimony in court because full disclosure preceded the trial, the opinions were formed, and the Court wanted to avoid the possibility of shifting theories based on in-court exposure. Hearing Tr. of 12/20/2010 at 14-15 (attached as Exhibit 2). For reasons already stated, that ruling and reasoning should not control the outcome here.

As the Court knows, the pre-hearing disclosures are intended to inform the parties and allow for preparation but they are *not* the evidence that will be admitted. It is universally acknowledged that expert reports are hearsay and inadmissible at trial. *See, e.g., In re Quigley Co, Inc.*, 437 B.R. 102, 151 (Bankr. S.D.N.Y. 2010); *Thakore v. Universal Machine Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 724-25 (N.D. Ill. 2009); *United States v. Kiewit Constr. Co.*, 2005 WL 1277953 at *10 (D. Alaska 2005); *Gentieu v. Tony Stone Images/Chicago, Inc.*, 214 D. Supp. 2d 849, 853 (N.D. Ill. 2002); *Ake v. General Motors Corp.*, 942 F. Supp. 869 (W.D.N.Y. 1996). The record of an expert's opinion is made by testimony delivered in court to assist the trier of fact. Fed. R. Evid. 701. It is there and nowhere else that ePlus will attempt to carry its burden of proof and define the actual target at which Lawson must aim. Hearing Tr. of 11/8/11 at 117 (attached as Exhibit 1). Lawson needs to have its expert witnesses in court to hear the testimony because that is the actual record to which they will respond.

Having the expert witnesses in court will also promote the Court's desire to police the boundaries of the pre-hearing disclosures. Rather than facilitate any shifting or inappropriate

9

"tailoring" of opinions, a party that has its expert available can make a prompt response to an expert who may appear to make up a completely new opinion and point that out by cross-examination. It was the denial of such an opportunity that resulted in the reversal in *Malek*.[3] Such policing is an important function of the experts and the expert witnesses' prior disclosures provide a basis to challenge an expert who shifts ground: "any alteration at trial of the testimony given in deposition would be subject to challenge on cross-examination." *Bruneau v. South Kortright Central School District*, 163 F.3d 749, 762 (2d Cir. 1998). After all, both parties have exposed their experts to the adversary's opinions and the opinions were explicitly considered in formulating responses to the other side. That is not collusion or manipulation to create facts: it is the proper jousting of experts exactly as intended to permit the parties to join issue directly, and to provide the Court with refined, technical knowledge.

---

[3] The *in limine* motions directed to Weaver and Niemeyer provide more detail on opinions disclosed in those expert witnesses' pre-hearing reports that should be excluded from the hearing. Lawson's expert witnesses would provide essential assistance to Lawson's counsel at trial in responding to the opinions as they are ultimately expressed in court.

## CONCLUSION

For the foregoing reasons, and on the foregoing authorities, the Court should grant Lawson's motion under Fed. R. Evid. 615(c) and authorize the expert witnesses for the parties to hear and observe the testimony of all witnesses at the hearing on ePlus's motion for contempt.

**LAWSON SOFTWARE, INC.**

By: _____/s/_____
Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
Timothy J. St. George (VSB No. 77349)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
tim.stgeorge@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that on this 15th day of February, 2012, a true copy of the foregoing was filed on the Court's Electronic Case Filing system, which will send a notice of electronic filing to:

Craig T. Merritt
Henry I. Willett, III
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

/s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
Timothy J. St. George (VSB No. 77349)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
tim.stgeorge@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

*Counsel for Defendant Lawson Software, Inc.*