**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S MEMORANDUM
IN OPPOSITION TO EPLUS'S MOTION TO EXCLUDE PORTIONS OF
LAWSON'S EXPERT REPORT**

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
jlo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

# TABLE OF CONTENTS

Page

I.  Introduction. ................................................................................................1

II.  *e*Plus's Inconsistent Claim Construction Allegations Are Entirely Based on Mischaracterizations of This Court's *Markman* Order and Dr. Goldberg's Report. ...........................................................................................................3

    A.  Dr. Goldberg's Argument Regarding a System's Capability to Place Products From Multiple Catalogs on a Single Requisition Is Entirely Consistent With This Court's Claim Construction Order And With The Testimony of *e*Plus's Experts at Trial. ...................................................3

    B.  Contrary to *e*Plus's Representations, Dr. Goldberg Never Argues That An Order List Must be "Complete" Before a Requisition May be Built. ..............7

    C.  Dr. Goldberg Opinions Relating to the Category Search Functionality Are Based on The Court's Claim Construction Rulings. ......................................9

III.  Dr. Goldberg Does Not Attempt to Relitigate Settled Issues of Infringement or Invalidity. .................................................................................................14

    A.  *e*Plus's Item Master Argument Contradicts the Jury Finding That RSS Did Not Violate the '683 Patent Except When Accompanied by Punchout. .....................................................................................................14

    B.  Dr. Goldberg Is Not Challenging the Validity of Any Patent. .............................16

IV.  *e*Plus's Remaining Objections Also Are Without Merit. .................................17

    A.  Lawson's Response to Interrogatory No. 5 Provides No Basis For Excluding Testimony By Dr. Goldberg On Subject Matters Not Called For by Interrogatory No. 5. ....................................................................................17

    B.  *e*Plus's Criticism of Dr. Goldberg's Recitation of Governing Legal Standards Is Not Only Wrong But Also Hypocritical, Considering Its Own Expert Reports. ...................................................................................21

    C.  *e*Plus's Allegations About Misuse of Trial Testimony Also Lack Merit. ................................................................................................................23

    D.  Dr. Goldberg Properly Relied on Statements by *e*Plus's Counsel and Experts in Performing the Inquiry Mandated by *TiVo*. ....................................24

V.  Conclusion ..................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Doe v. Herman,*
  1998 WL 35113312 (W.D. Va. May 6, 1998)..........................................................21

*Laitram Corp. v. Cambridge Wire Cloth Co.,*
  863 F.2d 855 (Fed. Cir. 1988) ...................................................................................24

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ...................................................................................................24

*Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts,*
  2012 U.S. App. LEXIS 2084 (4th Cir. Feb. 3, 2012).............................................24

*Pegram v. Herdrich,*
  530 U.S. 211, 227 (2000) ...........................................................................................24

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States,*
  593 F.3d 1346 (Fed. Cir. 2010) .................................................................................24

*United States v. Moreland,*
  437 F.3d 424 (4th Cir. 2006)*, overruled on other grounds,*
  *Gall v. United States*, 552 U.S. 38 (2007) ...............................................................23

I.    **Introduction.**

Having failed in its initial strategy of trying to preclude from Lawson from calling Dr.

Goldberg as its expert in this proceeding, ePlus now levels a litany of objections to Dr.

Goldberg's opinions in an attempt to escape Dr. Goldberg's careful and compelling analysis of

the issues that *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011), mandates be the focus

of this contempt proceeding.   None of ePlus's arguments deliver what they promise; most

depend entirely on ePlus's mischaracterization of Dr. Goldberg's opinions, which then serves as

the predicate for taking issue with supposed positions that Dr. Goldberg has not asserted, and as

to which he has no intention of testifying.   Dr. Goldberg is superbly qualified; he has followed

the *TiVo* analytic framework to the letter, and his analysis of the source code and other relevant

materials provides him with precisely the proper predicate for his intended testimony at the

upcoming hearing.   ePlus's motion provides no basis for limiting Dr. Goldberg's testimony

before it is heard, as the objections advanced by ePlus are demonstrably wrong.

First, ePlus's accuses Lawson of attempting to re-argue claim construction positions by

misstating Lawson's positions, misstating the Court's constructions, or both.   Lawson addresses

each of ePlus's arguments in sufficient detail to make that clear.

Second, ePlus asserts that entire subject matters in Dr. Goldberg's report are effectively

out-of-bounds, while failing to acknowledge that Dr. Goldberg's report addresses those topics in

rebuttal to opinions offered by ePlus's experts in the first round of expert witness reports.   For

example, in their initial reports, ePlus's experts address the Item Master functionality in no fewer

than thirty different paragraphs.   But now ePlus argues that Dr. Goldberg should be barred from

discussing Item Master:   "Dr. Goldberg's opinions regarding the Item Master are irrelevant

because they pertain to a feature of the Infringing Systems that was not modified."   Not only

would such exclusion violate the most basic tenets of fairness, but as demonstrated below, it would separately violate the procedures and guidelines the Federal Circuit set forth in *TiVo*.

Third, despite *TiVo's* mandate that a contempt proceeding should focus on "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement," *TiVo* at 882, and that the "district court is bound by any prior claim construction that it had performed in the case," *TiVo* at 883, ePlus attempts to systemically purge all references to the underlying proceedings from Dr. Goldberg's report. The common denominator underlying this group of attacks is that ePlus now seeks to advance arguments and claim constructions directly at odds with their own positions during the merits phase, or, worse, at odds with the jury's verdict. *TiVo* teaches that in the context of contempt, what was contended and proved at the merits phase is crucial to the contempt proceedings, making ePlus's revisionist history, not Dr. Goldberg's report, inappropriate.

Fourth, ePlus attempts to limit the scope of Dr. Goldberg's testimony to the scope of Lawson's response to Interrogatory No. 5, as if the totality of Dr. Goldberg's testimony on all subjects was called for by that interrogatory. It was not. Interrogatory No. 5 called for the identification of "Core S3 Procurement System source code that were modified during the development and creation of RQC," and Lawson provided the same in chapter and verse, as well as a full statement of the changes that Lawson made to RQC that it asserts renders the RQC product more than colorably different from the adjudged infringing configurations, and takes it outside the reach of the asserted patent claims. Dr. Goldberg's report identifies and relies upon the exact same three changes as are detailed in Lawson's supplemental interrogatory response—there is no conceivable basis for the relief ePlus seeks.

Fifth, ePlus argues that Dr. Goldberg renders legal opinions even though the only discussions that might fairly be characterized as legal in nature are the sections of his report where Dr. Goldberg sets forth his understanding of the legal framework under which he is laboring.  Not only is the disclosure of such assumptions acceptable (indeed, ePlus's experts both do the same), it arguably is required by the Rules.

None of the reasons set forth in ePlus's brief constitute or even approach an appropriate basis to exclude Dr. Goldberg's testimony.  Dr. Goldberg's testimony is permissible and helpful, and is properly presented to the trier of fact.  ePlus's motion should be denied.

## II.  *e*Plus's Inconsistent Claim Construction Allegations Are Entirely Based on Mischaracterizations of This Court's *Markman* Order and Dr. Goldberg's Report.

Throughout its Motion, ePlus makes the serious accusation that Lawson and its expert are attempting to re-argue claim constructions previously decided against Lawson, or to advance new constructions that are inconsistent with the Court's prior rulings.  As shown below, each of these accusations is demonstrably incorrect, and can only be levied when one mischaracterizes the opinions of Dr. Goldberg, the Court's prior rulings, or both.

### A.  Dr. Goldberg's Argument Regarding a System's Capability to Place Products From Multiple Catalogs on a Single Requisition Is Entirely Consistent With This Court's Claim Construction Order And With The Testimony of ePlus's Experts at Trial.

To begin with, ePlus accuses Dr. Goldberg of contradicting the Court's construction of the "selecting the product catalogs to search" and "searching for matching items" claim limitations found in the asserted claims of the '683 Patent.  As the Court will recall, it was asked in the underlying case to determine whether the "selecting" and "searching" limitations in the asserted claims of the '683 Patent required that the user always select and search from at least two product catalogs *simultaneously*.  *See* Lawson Responsive Claim Construction Brief

1/19/2010 at 13 (disputing *e*Plus's "argument that a single catalog can be searched") (citations omitted).  The Court determined that they did not.  Accordingly, under the patent as construed, the ability to select and search from a single catalog does not make an accused product non-infringing.

On the very first page of its Brief, ePlus represents to the Court (without any citation whatsoever) that "Dr. Goldberg improperly construes the limitations of the '683 Patent to require that a user be able to select and search more than one catalog *at a time*."  Mot. at 1-2 (emphasis added).  But Dr. Goldberg never states that the asserted claims require (or even need to permit) a user to simultaneously search from more than one catalog at a time; to the contrary, Dr. Goldberg acknowledges that "the fact that a user has the option of searching and selecting from only *one* of those catalogs will *not* save the system or user from infringement."  Goldberg Report ¶ 330 (emphasis added).  Moreover, *prior* to filing this Motion, ePlus deposed Dr. Goldberg for an entire day.  Dr. Goldberg's deposition testimony on this subject was entirely consistent with the statement in his Report, and with the Court's construction:  "a system *could not get out of infringement* by simply allowing the user to select and search *one catalog*."  Goldberg Dep. Tr. at 143:1-4 (emphasis added).  ePlus's assertion that Dr. Goldberg's report is "nothing more than a second attempt by Lawson to obtain a construction that has already been considered and rejected by the Court" is, in a word, false.  Mot. at 8.

Separate and apart from whether a user must simultaneously select and search from two or more catalogs, ePlus also argues that Dr. Goldberg defies the Court's *Markman* ruling by suggesting that the asserted claims of the '683 Patent require that a user be able to "build a requisition using data relating to selected matching items and multiple sources and generate multiple purchase orders from a single requisition."  Mot. at 2.  This is an outrageous accusation

because ePlus now attacks the very viewpoint *it propounded to the jury in the underlying case*. At the underlying trial, ePlus explicitly and repeatedly told the jury that every asserted claim of the '683 Patent *required* the capability to place on a requisition (and to generate purchase orders for) items from multiple catalogs:

> Q:  This ability to buy various items from various vendors and place them on a *single requisition, is that included in any of the claim elements that you have examined*?
>
> A [By *e*Plus's Expert Witness]:  Yes, it is.
>
> * * *
>
> Q:  Tell us where that particular feature is.
>
> A:  Sure.  That is being color-coded in blue.  *Means for building a requisition using data related to selected matching items and their associated sources.*
>
> Q:  So we could have a requisition with matching items from more than one source; is that right?
>
> A:  That's right.

1/6/11 Trial Tr. at 551-52 (emphasis added).

> Q:  Does the electronic sourcing system of the ePlus patents *require* that the requisition line items have associated source or vendor information?
>
> A [By *e*Plus's Expert Witness]:  Yes
>
> Q:  Why is that necessary?
>
> A:  Well, because *in the patents-in-suit they call for the ability of the buyer to go through catalogs and to select the sources from which he or she wants to buy.*

*And so the requisition needs to reflect the sources that are selected or vendors—*

*source and vendor I'm using interchangeably—that the buyer has selected.*

Q:  Then does the system take that requisition and need to be able to generate

purchase orders using data in that requisition?

A:  *Yes. The '683 Patent, Claim Three, and many of the other claims all talk*

*about generating multiple purchase orders from the requisition, and the reason*

*for multiple purchase orders is that the individual line items in the requisition are*

*each associated with vendors, and you have to have a separate purchase order for*

*each vendor.*

1/20/11 Trial Tr. at 2687-88 (emphasis added).[1]  There is nothing inconsistent between Dr.

Goldberg's understanding that "an infringing system must permit a user to utilize more than one

catalog," Mot. at 8, and ePlus's repeated representations to the jury that the asserted claims of the

'683 Patent require the "ability to buy various items from various vendors and place them on a

*single requisition.*"

    The real "problem" here is not that Dr. Goldberg is attempting to revisit the Court's

*Markman* ruling (because he is not).  Instead, the issue confronting ePlus is that the position it

espoused at trial makes it *impossible* for ePlus to meet its burden of proof in these contempt

proceedings.  Unlike RSS, which permitted users to place items from more than one Punchout

vendor (*i.e.*, more than one "catalog") on a single requisition and to generate purchase orders

therefrom, the newly-accused products no longer permit the building of such requisitions.

---

[1]  ePlus's position at trial that the requisition must have the capability to include items from more than one catalog is not, of course, inconsistent with the Court's construction that a user need not select and search more than one catalog at a time.  In RSS for example, a user could Punchout to one vendor site, add an item to a requisition, Punchout to another vendor site, and add an item from that site onto the same requisition.  That functionality has been removed from RQC.

As ePlus's own expert concedes, "Defendant now *prevents users from mixing* items selected during a punchout session with items from other punchout vendors."  Niemeyer Report ¶ 75 (emphasis added).  Once a requisition includes items from one catalog, the RQC software automatically prohibits a user from placing an item from another catalog in the same requisition.  Thus, the very feature that *e*Plus's experts touted were "required" has now been eliminated.

In view of the significant limitations on the use of Punchout that are implemented in RQC, the *only* way for ePlus to argue that the changes to the newly-accused products are merely colorable and leave the product still infringing is to abandon the position it took in the underlying trial, and to distract the Court from its own actions by making unsupportable accusations against Dr. Goldberg.

**B.      Contrary to ePlus's Representations, Dr. Goldberg Never Argues That An Order List Must be "Complete" Before a Requisition May be Built.**

ePlus also mischaracterizes Dr. Goldberg to require that "the order list be *completely* built before beginning to build the requisition."  Mot. at 11 (emphases added and removed).

Dr. Goldberg has *never* adopted this position, and will not propound this position during these contempt proceedings.  Nowhere in Dr. Goldberg's report does the word "complete" or any variation of "complete" appear in the context of describing the requirements of an order list or requisition.[2]  In attributing an opinion to Dr. Goldberg that he does not actually hold, ePlus is again erecting a straw man argument in the hopes that the Court will exclude Dr. Goldberg from testifying on a subject as to which ePlus is sensitive, based on an inaccurate characterization of Dr. Goldberg's expert Report.

Dr. Goldberg does *not* argue that the order list must be complete before a requisition can be built because his opinions do not rely on any such assumption.  Instead, his opinion relies on

---

[2]   The word "complete" and its variations appear in paragraphs 50, 81, 124, 139, 184, 185, 189, 239, 250, 258, 302 of Dr. Goldberg's report, none of which addresses the relationship between and order list and a requisition.

the plain meaning of the claim language as well as the Court's construction, both of which require that each *individual item* first enter an order list (if there is one) before it enters into the requisition database.  Claim 1 of the '172 Patent contains the limitation of a "means for building a requisition that uses data obtained from said database relating to selected matching items *on said order list*."  Claim 1 of '172 Patent (emphasis added).  In its *Markman* Order, the court construed the function of the "[m]eans for building a requisition" element of claim 1 of the '172 Patent to involve "building a requisition that uses data obtained from said database relating to selected matching items *on said order list*."  Dkt. 204 at 50 (emphasis added).

The language of the claim and the court's construction are consistent and clear:  the requisition is built using data relating to items on an existing order list.  In order to use data relating to an item "on said order list" to build a requisition, the item must first exist in the order list.  This does not require that all items be on the order list before any item is transferred to the requisition; it simply requires that each individual item first enter the order list before it is transferred to the requisition database.  Obviously, this must be the case, because if an item appears first in the requisition database and then subsequently in something characterized as an order list, the item on "said order list" cannot possibly be used "for building a requisition" as the claims require.

Indeed, ePlus stated as much at trial.  For example, Dr. Weaver, in explaining the difference between an order list and a requisition, stated:  "[the shopping cart is] not the requisition.  It's the data structure that can be modified . . . , *and then it's going to be transferred to the requisition module, and it's in the requisition module that the requisition is created*."  1/6/11 Trial Tr. at 568-69 (emphasis added).

In developing RQC, Lawson eliminated the "order list" as that term was construed by this Court. Rather than first transferring an item to the My Cart, and then subsequently adding that item to the requisition database, the RQC software immediately adds user-selected items to the requisition database. What the user sees on the screen is no longer an intermediate order list, from which a requisition may later be built. Instead, the list seen by the user on the user interface simply reflects the list of items that already exist in the requisition database.[3]

There is nothing inconsistent between Lawson's non-infringement position and the Court's claim construction. As a result, ePlus is forced to mischaracterize Dr. Goldberg's opinions in an effort to prevent him from testifying.

### C.   Dr. Goldberg Opinions Relating to the Category Search Functionality Are Based on The Court's Claim Construction Rulings.

ePlus also misrepresents Dr. Goldberg's position concerning Lawson's removal of the ability to conduct commodity-level category searches. As the Court will recall, the ability to conduct category searches was alleged to satisfy the "converting data" claim limitations of the '683 Patent. In particular, ePlus focused solely on the adjudged-infringing products' capability to conduct searches at the so-called commodity level, at which items are deemed to be identical or equivalent. ePlus focused solely on commodity level searches because in construing the "converting data limitations," the Court accepted "Lawson's assertion that converting requires substitution with a suitable replacement," and that "[t]he specific and prosecution history demonstrate that 'converting' means 'substituting.'" Dkt. 204 at 30.

In its brief, ePlus ostensibly attacks Dr. Goldberg because he "incorrectly" contends that 1) the claim limitation requires "automated" conversion, and 2) the conversion must be between

---

[3] ePlus discusses the "cookie file" in Section III.A.1 of its report. However, because the "cookie file" has nothing to do with Dr. Goldberg's interpretation of the relevant claim language or *Markman* order, it is not discussed here.

"generally equivalent or substitutable items."  As addressed below, the first claim is false, while the second construction is entirely consistent with – and mandated by – the Court's construction.

Dr. Goldberg does not hold the opinion that conversion must be "automated," did not disclose such an opinion in his expert Report, and will not testify to the same at trial.  *e*Plus fails to cite to a single instance where Dr. Goldberg actually espouses a requirement that the "converting data" limitations be performed without human intervention.  ePlus's failure to do so is not surprising, because the term "automatically" is not used *at all* by Dr. Goldberg in the portions of his report and deposition testimony relating to the category search changes.

Moreover, when asked about this subject at his deposition (which occurred *before* ePlus submitted its Brief), Dr. Goldberg emphatically *rejected* the position ePlus now seeks to ascribe to him:

Q:  Where in the Court's construction of the converting data elements did the Court indicate that the system had to perform the converting data function *without any user intervention*?

A:  Oh, *I certainly did not say that*.  I believe Mr. Weaver misunderstood what I said in my report.  I think maybe you share the misconception.  *It is clear that based on what occurred at trial, that the converting means may include the user selecting an item, putting the item* – well, in the RSS case, into the Shopping Cart, then choosing an equivalent item with the same commodity code, putting that item into the Shopping Cart of RSS, and removing the first one; since the jury found a system of that capability to infringe, *I'm certainly not saying that no user intervention is required.  So it's just a misstatement of my opinion*."

10

Goldberg Dep. Tr. at 110:18-111:13 (emphasis added).  Thus, ePlus's argument that a requirement for "automatic" conversion is inconsistent with the Court's prior claim construction, and is irrelevant because Dr. Goldberg has not, and does not, espouse any such view.

Dr. Goldberg also remains well within the confines of the Court's *Markman* Order with respect to whether the claimed conversion must be between "generally equivalent or substitutable items."  As the Court is aware, the necessity of identifying "identical matching items" or "a suitable replacement for the selected matching item" comes directly from the prosecution history of the '683 Patent, which this Court incorporated by reference in its *Markman* order.  Dkt. 204 at 30.

If anything, it is ePlus that is seeking to re-litigate a claim construction dispute it previously lost.  ePlus does so in a back-handed way:  it argues that Dr. Goldberg is using an impermissible construction when he uses the Court's construction, and it seeks an Order forcing Dr. Goldberg to accept a construction that this Court previously considered, and rejected.  In particular, ePlus now argues that Dr. Goldberg should be *prohibited* from contending that "the 'converting data' elements of claims 3, 28 and 29 of the '683 Patent require that the system convert between identical or generally equivalent items" even though the Court's construction explicitly *includes* that requirement.  Mot. at 2.  And at the same time, ePlus seeks an Order requiring Dr. Goldberg to assume that the limitation "may be satisfied by 'one or more codes corresponding to cross-referenced items,'" even though the Court *rejected* that position.  Mot. at 16.

By way of background, at the *Markman* proceedings, *e*Plus sought to construe the "converting" limitation so that a mere cross-referencing of data would satisfy the claim limitation:  "According to ePlus, this term . . . if construed, should mean:  a process of *cross-*

*referencing data relating to a selected matching item and an associated source to an item and a different source*." Dkt. 204 at 28 (emphasis added).  Lawson, on the other hand, argued that mere cross referencing was not enough, and that the "converting" claim limitation must accomplish the task of finding a substitute or equivalent item.  Because of these contradictory positions, the Court astutely observed that "[t]he most significant disagreement between the parties is whether the term 'converting' means 'cross-referencing' or 'substituting.'"  *Id.* at 29.

After considering both parties' positions, the Court *rejected* ePlus's proposed construction and construed the non-means-plus-function term (in Claims 28 and 29) to mean "*substituting* data relating to a selected matching item and an associated source to data relating to an item and a different source."  *Id.* at 31 (emphasis added).  In so doing, the Court stated, "Lawson is correct that 'converting' requires *more than mere 'cross-referencing.*'"  *Id.* at 31 (emphasis added).  The Court was also persuaded by prosecution history indicating that the claim language was meant to cover "identical matching items from different sources, as well as a *suitable replacement* for the selected matching item."  *Id.* at 30 (emphasis in original).  The Court went on to clarify that "[c]ross-referencing simply cannot accomplish conversion."  *Id.* at 31.  The Court construed the means-plus-function element (in Claim 3) to perform the same function:  "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."  *Id.* at 48.

Whether read in isolation or in whole, these statements constitute an unambiguous rejection of the claim construction position that ePlus now argues should form the basis of Dr. Goldberg's opinions.

The Court's constructions also help make clear that Lawson has now modified the adjudged-infringing products to avoid infringement.  In RSS, a user could drill down to the

commodity level and be left with a list of generally equivalent goods.  From that list, the user was free to select any item, knowing it would be substitutable for his originally desired item.  In RQC, however, the user cannot utilize the commodity level classifications to find equivalent or identical items; rather, the user can only drill down to the class level, leaving him with a much broader list of items that are not limited to substitutable items.  Indeed, even ePlus's expert admits that items at the third level of the hierarchy are neither "identical" nor "generally equivalent."  Weaver Feb. 9, 2012 Tr. at 240:16-21 ("Q.  You are not saying that they identify identical items, correct?  A.  I am not saying that.  Q.  And you're not stating that the product will be all generally equivalent items?  A.  I am not stating that.).  Consequently, RQC cannot infringe under the existing claim construction of the Court.

Faced with modified software that plainly fails to meet the claim language under the Court's construction, *e*Plus desperately tries to shoehorn RQC's reduced functionality into the patent's scope by arguing that the Court's construction explicitly includes the word "cross-reference tables."  To state *e*Plus's argument is almost to refute it.  The Court uses the term "cross reference table" only to describe the corresponding *structure* for the means plus function limitation in claim 3 of the '683 Patent.  Dkt. 204 at 48.  But the Court's construction of this means plus function claim defined the function as "converting data relating to a selected matching item and an associated source to data relating to an item and a different source."  Dkt. 204 at 48.

Indeed, *e*Plus's argument is inconsistent even with its own position at trial.  Both counsel for ePlus and ePlus's infringement expert, Dr. Weaver, consistently referred to the converting data claim limitations as requiring the ability to find generally equivalent or substitutable items for the user.  *See, e.g.*, 1/6/11 Trial Tr. at 575 (*e*Plus counsel's question to Dr. Weaver asking, "in

the Lawson system, how do they perform this functionality of the conversion to *find similar, identical, or generally equivalent items*?") (emphasis added).

Thus, any argument now that identical or generally equivalent items are not necessary, conflicts with the Court's Markman Order as well as with *e*Plus's trial arguments.

## III.   Dr. Goldberg Does Not Attempt to Relitigate Settled Issues of Infringement or Invalidity.

### A.   *e*Plus's Item Master Argument Contradicts the Jury Finding That RSS Did Not Violate the '683 Patent Except When Accompanied by Punchout.

*e*Plus attacks Dr. Goldberg for arguing that "the Item Master does not comprise multiple catalogs published by a vendor."  Mot. at 16.  *e*Plus contends that this argument is prohibited to Dr. Goldberg for two separate reasons—both of which turn logic completely on its head.

First, *e*Plus argues that Dr. Goldberg is forbidden from addressing the Item Master functionality *at all* because "Dr. Goldberg's opinions regarding the Item Master are *irrelevant* because they pertain to a feature of the Infringing Systems that was not modified."  Mot. at 17 (emphasis added).  But as Dr. Goldberg makes clear in his Report, the sections of his Report addressing Item Master are in *rebuttal* to ePlus's conclusions on the same subject.  *See* Weaver Report ¶¶ 31, 32, 33, 44, 45, 51, 62, 70, 75, 83, 84, 86, 89, 95, 96, 99, 100, 101, 103, 106, 128, 129, 131, 134, 137, 139, 140, 141, 147, and 148; Niemeyer Report ¶¶ 26 and 73.  ePlus's representation to the Court that Item Master is "irrelevant" cannot be reconciled with the fact that its experts address Item Master in no fewer than *thirty* paragraphs in their opening Reports.  And in any event, it is outrageous for ePlus to seek an Order from this Court that would preclude Dr. Goldberg from responding to the earlier statements of ePlus's experts.  If Dr. Goldberg were precluded from testifying regarding Item Master, then *ePlus's experts* (to which Dr. Goldberg responds) also should be precluded from discussing that functionality.

14

Second, *e*Plus contends that Dr. Goldberg's conclusions as to Item Master are precluded by the jury verdict. Mot. at 19. But this argument is premised on *e*Plus's *assumption* that the jury accepted its theory that Item Master constituted "multiple catalogs" and thus satisfied the "at least two product catalogs" limitation of the '683 Patent. That assumption is an impermissible one, both legally and logically.

The assumption is legally impermissible because, as the Court will recall, every asserted claim of the '683 Patent includes a limitation of "at least two product catalogs." At trial, ePlus advanced two alternative theories of how this claim limitation might be met. First, ePlus argued that the Item Master database itself contains two or more catalogs. Second, ePlus argued that the adjudged-infringing software's ability to utilize third-party Punchout sites satisfied the claim limitation. Weaver Feb. 9, 2012 Tr. at 125-27.

In these proceedings, *e*Plus must prove its allegations of contempt by *clear and convincing evidence*. *TiVo*, 646 F.3d at 883. Moreover, to demonstrate that the changes Lawson made to relevant aspects of the product were not merely colorable, it must focus only on those elements that it not only contended, but *proved* infringed. *Id*. at 882. *e*Plus cannot prove, much less by clear and convincing evidence, that the jury concluded that Item Master satisfied any of *e*Plus's patent claim elements. As ePlus's expert agrees, in finding that the Lawson infringed on the asserted claims of the '683 Patent, the jury could have credited either theory, or both. Weaver Feb. 9, 2012 Tr. at 163:15-22. And as ePlus's expert further concedes, it is simply impossible to determine with certainty whether the jury credited both theories, or only one of them (and if so, which one). Weaver Feb. 9, 2012 Tr. at 170:9-13.

ePlus's inability to demonstrate that the jury accepted its Item Master-based infringement theory is important because Lawson has now disabled the Punchout functionality such that it no

longer meets the claim limitations of the asserted claims of the '683 Patent.  Implicitly acknowledging this, ePlus seeks to revisit its earlier (and unproven) allegation that Item Master without Punchout satisfies those claim limitations.

But there is simply no evidence to suggest that the jury accepted ePlus's argument.  If anything, the jury's verdict clearly implies the opposite:  it specifically concluded that configurations 2 and 4—the ones that included Item Master but not Punchout—did *not* infringe the '683 Patent claims.  The jury found infringement of the '683 Patent claims only with respect to configurations 3 and 5—the ones that combined Item Master with Punchout.

Nor has the Court ever construed Item Master itself to be a product catalog—let alone multiple product catalogs.  To the contrary, the Court allowed Lawson to present its argument that Item Master does not satisfy the catalog requirements of the '683 Patent during closing arguments—without ever reaching its own conclusion on the issue.  1/24/11 Trial Tr. at 3174-89.  Given the jury's non-infringement verdict as to the claims of the '683 Patent asserted against Configuration Nos. 2 and 4, it is very likely that the jury accepted Lawson's counsel's argument regarding Item Master.  There is no evidence to the contrary.

**B.      Dr. Goldberg Is Not Challenging the Validity of Any Patent.**

ePlus also asserts that Dr. Goldberg should not be permitted to base any opinion on "P.O. Writer, the King patent, the Dworkin patent, and any other alleged prior art."  Mot. at 21-22. ePlus contends that any such statement constitutes an attempt to relitigate the validity of the underlying patents.

Dr. Goldberg has not – and will not – argue at the contempt proceeding that the ePlus patents are invalid.  Validity is not at issue.  What is at issue is the significance of the changes made by Lawson to the adjudged-infringing configurations and whether the modified product continues to infringe the asserted claims.  In rendering opinions on those subjects, Dr. Goldberg

16

is entitled to consider all testimony previously given by ePlus's experts, and the cited testimony accurately reflects the importance that ePlus put on the existence of a separate order list in the RSS product.  That is an entirely appropriate use and in no way raises the issue of the validity of either patent in suit.

**IV.     *e*Plus's Remaining Objections Also Are Without Merit.**

> **A.     Lawson's Response to Interrogatory No. 5 Provides No Basis For Excluding Testimony By Dr. Goldberg On Subject Matters Not Called For by Interrogatory No. 5.**

*e*Plus's allegation that Dr. Goldberg's expert Report exceeds the scope of Interrogatory 5 is premised on a complete mischaracterization of Interrogatory 5.  *e*Plus's First Set of Interrogatories for Contempt Proceedings, Interrogatory No. 5 requires only that Lawson disclose the specific changes it made to the source code of the adjudged-infringing product: "Identify with specificity any portions of the Core S3 Procurement System *source code that were modified during the development and creation of RQC*."

Early in these contempt proceedings, Lawson provided to ePlus "DIFF" files that specifically documented every source code change made to create RQC.  The completeness of Lawson's production and written discovery response did nothing more than provoke an objection from ePlus, which demanded a narrative supplemental answer to identify the changes in the RQC product that Lawson intended to rely on in defense of the contempt allegations against it.  In its 32-page Supplemental Response, Lawson identified and detailed the nature of the three changes upon which it is relying.  Dr. Goldberg's expert Report relies on the precise three changes disclosed in the Supplemental Response and none other.  What ePlus complains about in regards to Dr. Goldberg's Report are opinions on subject matters that simply are not called for by

Interrogatory No. 5.  There is complete consistency between the Supplemental Response and Dr.

Goldberg's expert Report and no basis whatsoever for the relief sought by ePlus.[4]

Specifically, in its Supplemental Response, Lawson represented that it made the

following three relevant changes to the infringing RSS module:

"*First*, the RQC product no longer includes a shopping cart that is distinct from

the requisition. . . .

*Second*, the RQC product eliminates a user's ability to search for products by the

fourth, most specific, level (i.e., the seventh and eighth digits) of the UNSPSC

code. . . .

*Third*, the RQC product does not provide the capability to combine items from

Item Master and a punchout vendor in a single requisition."

Lawson Inc.'s Supplemental Answers to ePlus Inc.'s First Set of Interrogatories for Contempt

Proceedings at 3-4.

Dr. Goldberg's report precisely tracks the disclosures made in Interrogatory No. 5.  In his

Report, Dr. Goldberg explains that Lawson made the following "significant modifications to

RSS":

"First, the newly-accused RQC lacks the My Cart that previously existed in

RSS. . . .

Second, the category search feature in RQC can no longer search for items based

on the commodity level UNSPSC. . . .

Third, the newly-accused RQC product eliminates the adjudged infringing

products' capability of combining either (1) items from Item Master and a

---

[4]   Indeed, the three changes outlined in Lawson's response to Interrogatory No. 5 are the same three changes
Lawson disclosed to ePlus in May 2011.  Lo Decl., Exh. 9.

> Punchout vendor or (2) items from multiple Punchout vendors, in a single requisition."

Goldberg Report ¶¶ 32-35.  Dr. Goldberg testified under oath that the only changes he considered in his Report were the changes identified in Lawson's Interrogatory response:

> "What I understood was that Lawson identified three major changes that it made in its rog response.  And those were the changes that I was supposed to consider. *And that's what I did.*"

Goldberg Dep. Tr. at 65:22 to 66:3 (emphasis added).  Not only does Dr. Goldberg confine his analysis of source code changes to those disclosed in May 2011 and in Lawson's Interrogatory responses, but Lawson also can confidently represent to the Court that at the upcoming contempt proceeding, Dr. Goldberg will *not* address any source code changes not previously identified in response to Interrogatory No. 5.

It is telling that in its Motion, ePlus failed to identify a single *source code change* that is discussed in Dr. Goldberg but was not disclosed in Lawson's response to Interrogatory No. 5. Instead, ePlus suggests that Dr. Goldberg's opinions exceed the scope of Interrogatory No. 5 because of a discussion of source code that remains *unchanged*, and because of a discussion as to the *effect* that the source code changes (already disclosed to ePlus) have on the *performance* of the newly-accused software.  Mot. at 25. Neither discussion, of course, is within the scope of Interrogatory No. 5.[5]

---

[5] Moreover, the functionality at issue *is* disclosed in Lawson's Interrogatory responses.  Specifically, those responses detail how the client-side interface interacts with the server-side requisition to eliminate the functionality previously accused of satisfying the order list claim limitation.  Resp. to Rog No. 5 at 14 ("In turn, the user interface called "Requisition Lines" (visually in the same location as the former My Cart) simply displays the contents of the requisition after the requisition has been updated."); 14-15 ("In RSS, the data flowed from the search results to the My Cart to the requisition (with a one-time error check of all of the items at the end. With RSS, the user must initiate an extra mandatory step to move an item from the order list to a requisition in RQ10.1. . . .  In RQC, by contrast, the data flows from the search results directly to the requisition

A discussion of *unchanged* source code is expressly outside the scope of Interrogatory No. 5.  As Dr. Goldberg testified in his deposition, he discusses those unchanged portions only in order to explain the full impact of the source code *changes*:

> Q.  Where is that discussion of the server side code found within Lawson's supplemental answer to ePlus's interrogatory number 5?
>
> A.  Lawson interrogatory number 5 described a number of changes to the RSS system in order to create the RQC.  What the paragraphs of my report that you identified set forth are the server side code *that interacts with the RSS and then subsequently the RQC system in order to perform the -- I should say in order to satisfy the request made by the RQC and the RSS system.  Without understanding how the server side code works, one cannot understand the import of the changes made to the RSS and RQC modules.  So what these paragraphs set forth is a description of how the changes identified in the interrogatory response actually affect the behavior of the overall system*.

Goldberg Tr. 67:16 to 68:10 (emphasis added).

Interrogatory No. 5 also did not require Lawson to disclose what effects the source code changes might have on the *performance* of the newly-accused software.  Dr. Goldberg's explanation of the upsides and downsides of Lawson's changes for customers does not in any sense amount to an allegation of a new change.[6]

---

(whereupon the addition of the item is error checked immediately on an item-by-item basis prior to requisition), skipping the intermediate My Cart stage.").

[6]  Here too, ePlus simply mischaracterizes Lawson's response when it represents to the Court that there no disclosure in Lawson's Interrogatory responses about the manner in which RQC might consume more storage space than RSS.  Mot. at 25.  In its responses, Lawson specifically noted this difference between RSS and RQC: "The newly-accused RQC product does not contain an intermediate shopping cart; instead, user-selected items now are saved directly to the requisition.  This is an actual substantive change in the manner in which the system operates, and not a mere matter of nomenclature as has been suggested by ePlus." Resp. to Rog No. 5 at 3.

In short, Dr. Goldberg's Report does not rely on any source code changes that were not already disclosed in discovery responses; instead, he advances precisely the same three theories Lawson previously disclosed as early as May 2011.

**B.    *e*Plus's Criticism of Dr. Goldberg's Recitation of Governing Legal Standards Is Not Only Wrong But Also Hypocritical, Considering Its Own Expert Reports.**

*e*Plus's accusation that Dr. Goldberg offers improper legal *opinions* in his report is simply incorrect, and worse is disingenuous considering that ePlus's experts do precisely what ePlus claims is improper.

The only statements relating to legal standards in Dr. Goldberg's Report are statements regarding legal standards he has been asked to follow for the purposes of rendering his opinion. For example, Dr. Goldberg makes clear that he has been instructed to follow certain guidelines in rendering his opinions, including the guideline set forth in *TiVo* that obviousness is "a factor [he] may consider."  Goldberg Report ¶ 16.  This information helps explain to the reader why Dr. Goldberg analyzes whether the modifications at issue were, in fact, obvious.  It also makes transparent the assumptions that underlie Dr. Goldberg's opinions.  Similarly, in paragraph 373, Dr. Goldberg briefly states the standards applicable to indirect infringement.  After all, it would make little sense for him to opine that Lawson took reasonable steps to comply with the Court's injunction, without first noting for the reader his understanding of "substantial compliance" requires that "all reasonable steps have been taken."  Goldberg Report ¶ 384 (quoting *Doe v. Herman*, 1998 WL 35113312, at *4 (W.D. Va. May 6, 1998)).[7]

---

[7]  Nor does *e*Plus's attack on Dr. Goldberg's use of *Doe* warrant exclusion.  *Doe* stated as follows:  "The court should not hold the alleged contemnor to a standard of absolute perfect compliance with the court's edict.  According to the Fourth Circuit, the standard is one of substantial compliance."  *Doe*, 1998 WL 35113312, at

Not only are these disclosures about Dr. Goldberg's assumptions *permissible*, but they arguably are *compelled* by Rule 26(a)(2), which requires "a complete statement of all opinions the witness will express *and the basis and reasons for them*."

Indeed, *e*Plus's own experts do precisely the same thing.  Dr. Weaver lays out his "understanding of the law to be applied" at length.  Weaver Report ¶¶ 10-23.  With respect to obviousness, he notes:  "In making an analysis of the significance of any differences between the adjudged infringing system and the purported redesigned system, I am informed and understand that a modification that merely employs elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the alleged modification was made weighs against a finding that the modification was significant."  Weaver Report ¶ 19; *see also id.* ¶ 20.  Similarly, Dr. Goldberg's explanation of the standards under which he evaluates indirect infringement is purely responsive to Dr. Weaver's similar explanation that Lawson "continues to induce and/or contribute to the direct infringement of the relevant claims . . . by aiding and abetting the ongoing use of the adjudicated Infringing Configurations by its customers."  Weaver Report ¶ 156.

*e*Plus does not mention any of this—let alone explain why *e*Plus can do what Lawson may not.  If it is acceptable for Dr. Weaver to explain the significance of obviousness to his analysis, there is no basis for striking virtually identical statements by Dr. Goldberg.  *Compare* Goldberg Report ¶ 16 *with* Weaver Report ¶ 19-20.  This is particularly the case when Dr. Goldberg's task is to *rebut* the opinions and assumptions held by ePlus's experts.

---

*4.  Doe* also cites numerous authorities that further support Dr. Goldberg's statement.  *e*Plus's claim that Dr. Goldberg's direct quotation of the Court's reasoning somehow "misinterpret[ed]" the opinion is meritless.

### C.    *e*Plus's Allegations About Misuse of Trial Testimony Also Lack Merit.

*e*Plus alleges "several instances" where Dr. Goldberg misrepresents statements by Dr. Weaver and Mr. Hilliard.  But the only two examples *e*Plus actually provides are meritless— and in any event provide no basis for striking Dr. Goldberg's report.

First, Dr. Goldberg quotes Dr. Weaver's statement that "the ability to put everything you want on one purchase requisition electronically and then have the computer system break that requisition up into however many purchase orders are appropriate, typically one purchase order per vendor with however many orders from the requisition, that's a real benefit."  1/6/11 Trial Tr. 505.  If ePlus has a basis to criticize Dr. Goldberg for assuming that this statement refers to the '683 Patent, it is free to establish that basis during cross-examination.[8]

Second, *e*Plus criticizes Dr. Goldberg for omitting two sentences from an exchange between counsel for *e*Plus and Dr. Weaver.  But again, it is telling that *e*Plus puts forth no theory as to how the omitted language remotely affects the meaning of the statements quoted by Dr. Goldberg.  And in any event, ePlus is free to attempt to cross-examine Dr. Goldberg on the substantive impact any alleged omission.

In sum, *e*Plus's allegations of misused trial testimony are meritless—and in any event are the proper subject of cross-examination at, not exclusion from, trial.  Expert testimony— including the supposed "out of context" language *e*Plus attacks—"is subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"  *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006), *overruled on other grounds*, *Gall v. United States*, 552 U.S. 38 (2007).

---

[8]   It should be noted, however, that other portions of ePlus's expert testimony strongly suggest that Dr. Goldberg has not taken Dr. Weaver's statements out of context:  "The '683 Patent, Claim Three, and many of the other claims all talk about generating multiple purchase orders from the requisition, and the reason for multiple purchase orders is that the individual line items in the requisition are each associated with vendors, and you have to have a separate purchase order for each vendor.  1/20/11 Trial Tr. at 2687-88.

**D.   Dr. Goldberg Properly Relied on Statements by *e*Plus's Counsel and Experts in Performing the Inquiry Mandated by *TiVo*.**

Finally, ePlus summarily asserts that Dr. Goldberg may not rely on anything that ePlus's own expert Dr. Hilliard said, simply because he was an expert on validity, and that it may not cite anything ePlus's lawyers said, because attorney argument is not evidence.  ePlus does not want the Court to be able to consider such materials because they are fundamentally inconsistent with the positions ePlus will take at the upcoming hearing.  But well-established principles of judicial estoppel preclude ePlus's arguments.  *See Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000).  As the Fourth Circuit has explained, "the judicial process is not some kind of game.  If a litigant 'assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 2012 U.S. App. LEXIS 2084, at *25 (4th Cir. Feb. 3, 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  Judicial estoppel applies to bar a party from taking a position with respect to infringement at a contempt trial that is inconsistent with the position on which it prevailed as to validity at the initial trial.  *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 867 (Fed. Cir. 1988).

That is precisely what *e*Plus seeks to do here.  Having prevailed on Dr. Hilliard's arguments regarding the aspects of the inventions that distinguish them from the prior art, ePlus now wishes to avoid the significance of such statements through a judicial order so that Lawson

may not use those statements to show that changes made to RSS are more than colorable. Similarly, having persuaded the jury to find in its favor on several of its claims, it now seeks to deny the very theories it presented to secure those findings, so as to prevent Lawson from demonstrating that it has redesigned its product consistent with those theories. Unsurprisingly, *e*Plus offers no authority to justify this abusive litigation conduct.

*e*Plus's separate objection to Lawson's reliance on attorney argument on the ground that such argument is not evidence is wholly frivolous under the express dictates of *TiVo*. Under *TiVo*, the very focus of the analysis is "those elements of the adjudged infringing products that the patentee previously *contended*, and proved, satisfied specific limitations of the asserted claims." *TiVo*, 646 F.3d at 882 (emphasis added). In following *TiVo*'s instruction to consider what the patentee contended, Dr. Goldberg examined the final summation made Scott Robertson, ePlus's lead trial counsel. It is inconceivable that Dr. Goldberg cannot rely on – and this Court consider – what Mr. Robertson argued to the jury in ascertaining what ePlus contended, as called for by TiVo. The only reasonable sources from which Dr. Goldberg may identify the scope of *e*Plus's previous allegations—and thus the likely basis for the portions of the jury's verdict that are favorable to *e*Plus—are *e*Plus's contentions in the prior trial, whether by attorney argument, expert testimony, or otherwise. The mere fact that attorney argument does not suffice as evidence of *infringement* does not mean that it is not evidence of *what ePlus argued* in the prior trial.

## V.     Conclusion

For the reasons set forth above, ePlus's motion should be denied in its entirety.

Respectfully submitted:

                                    **LAWSON SOFTWARE, INC.**


                                    By: _____/s/_____
                                                   Of Counsel

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
Timothy J. St. George (VSB No. 77349)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
tim.stgeorge@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Daniel McDonald (admitted *pro hac vice*)
William D. Schultz (admitted *pro hac vice*)
Rachel C. Hughey (admitted *pro hac vice*)
Andrew J. Lagatta (admitted *pro hac vice*)
Joshua P. Graham (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
3200 IDS Center, 80 South Eighth Street,
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 15th day of February, 2012, a true copy of the foregoing was filed on

the Court's Electronic Case Filing system, which will send a notice of electronic filing to:

Craig T. Merritt
Henry I. Willett, III
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

_____/s/_____
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
Timothy J. St. George (VSB No. 77349)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
tim.stgeorge@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339

*Counsel for Defendant Lawson Software, Inc.*

27