3078

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4

 5      ---------------------------------------
                                              :
 6      ePLUS, INC.                           :    Civil Action No.
                                              :    3:09CV620
 7      vs.                                   :
                                              :
 8      LAWSON SOFTWARE, INC.                 :    January 24, 2011
                                              :
 9      ---------------------------------------

10

11           COMPLETE TRANSCRIPT OF THE JURY TRIAL

12          BEFORE THE HONORABLE ROBERT E. PAYNE

13        UNITED STATES DISTRICT JUDGE, AND A JURY

14
        APPEARANCES:
15
        Scott L. Robertson, Esquire
16      Michael G. Strapp, Esquire
        David M. Young, Esquire
17      Goodwin Procter, LLP
        901 New York Avenue NW
18      Suite 900
        Washington, D.C.   20001
19
        Craig T. Merritt, Esquire
20      Christian & Barton, LLP
        909 East Main Street
21      Suite 1200
        Richmond, Virginia   23219-3095
22      Counsel for the plaintiff

23

24                  Peppy Peterson, RPR
                    Official Court Reporter
25               United States District Court
```

EXHIBIT

7

tabbies

3174

1    choice.  And that doesn't stop ePlus from going to the
2    Patent Office, but it is true and the Judge will
3    instruct you that even if a product isn't the subject
4    of a patent like TV/2, if it's on sale more than a
5    year before the filing date of the ePlus patent, it's
6    still prior art.  EPlus can't go get a patent on that
7    same thing.  So that's how it works.  So that's why
8    the Patent Office doesn't always have all the details
9    about what everybody is doing out there.
10         So that's why because you have this critical
11   information here in the courtroom that the Patent
12   Office didn't get why you should reach a different
13   conclusion from the Patent Office.  So that's why you
14   should decide that the claims are invalid.
15         Let's go down to question No. 3 about
16   infringement.  We made it pretty clear from the first
17   moment in this case that this issue came down to the
18   catalogs issue.
19         And if we could go to 45F.  Mr. Weaver at
20   least acknowledged that 11 of the 12 claims in this
21   case required not just one catalog, but multiple
22   catalogs in the Lawson system.  So if Lawson doesn't
23   have multiple catalogs, Lawson at least does not
24   infringe those 11 claims.  We're all on the same page
25   on that.  That's why we didn't waste your time on all

3175

1   these other deals in the case, why it really came down

2   to the catalogs.

3          And if we go to the slide 46, this was the

4   Court's definition of catalogs.  It has the term

5   published by a vendor in it, and the Court also has an

6   instruction for you on that.

7          And we showed you here, this is Exhibit 257,

8   it's a demonstrative, but it's nothing of the sort you

9   haven't seen before.  It's one of these big catalogs.

10  We don't get them in the mail so much anymore, but we

11  used to.  And something like this pretty clearly meets

12  that Court definition.  You can apply this pretty

13  well.  It's an organized collection.  You have got the

14  ladies clothes at the beginning.  Then it goes to kids

15  and boots and shoes and so on, product by product

16  organized.  It's about items.  Things Sears is selling

17  with associated information.  Published by Sears.

18  They are a seller, a distributor, whatever you want to

19  call it.  Includes things like a part number, price,

20  catalog number, vendor name.  Sears is on the front.

21  It may not be on every page, but certainly on the

22  front.

23          I don't know if it has a vendor ID, but this

24  list isn't something that's required that you have to

25  have all of these.  That's why it has the word

3176

1  preferably, right?  Then a textual description of

2  items and preferably, not necessarily, images of the

3  items.

4      So that meets the definition of a catalog

5  pretty well.  That holds up with your common sense.

6  And it's pretty consistent if we go to slide 48, I

7  think it is.  Even what the patent says about

8  catalogs.  This is a feature of the invention to have

9  multiple catalogs from different suppliers.  And it

10 gives these examples.  And I'll summarize it here, but

11 basically it talks about published by a vendor,

12 distributor, having the distributor's catalog numbers

13 for their listed products.  And also vendor

14 manufacturer part numbers.  Down at the bottom, line

15 52 there, it further contained catalogs published by

16 some of the vendor manufacturers.  Again having part

17 numbers and the like.

18      Then if you go down to about line 56.  It can

19 also contain catalogs published by outside suppliers,

20 other manufacturers, distributors listing their vendor

21 products different from those in the distributor

22 catalog.  So these are all these different published

23 things out there.

24      So if we go back to 46.  So that was the

25 Court's definition of "catalog."  Very consistent with

3177

1   what the patent says.  What about that last claim?

2   I'll just talk about that a little bit.  That 12th

3   claim.  That's Claim 1 of the '172 patent.

4          Now, that claim has a claim element that

5   refers to something called an order list.  So I want

6   to show you the Court's definition of that in slide

7   49.  So even that claim requires a means for

8   generating an order list, which is a list of desired

9   catalog items.  So here's where that concept of

10  catalog comes into play here.

11         And if we look at slide 49A, Dr. Weaver, his

12  analysis was entirely reliant on his opinion that the

13  Lawson system had catalogs in it.  And that even

14  included this claim.

15         And if we could go to the next slide here.

16  This was Dr. Weaver's testimony specific to that Claim

17  1 of the '172 patent.  It's kind of a long question

18  here, but what's being shown here is his opinion about

19  Lawson infringing that claim, and specifically the

20  part of that claim that refers to an order list, that

21  was based in part on his analysis concluding that the

22  desired items - do you remember an order list is a

23  list of desired catalog items - included in results of

24  searches of product catalogs, and that's what he

25  called catalog items.  That's how he looked at it for

3178

1  purposes of his analysis.  The items you get back from
2  product catalogs.  So he relied on his analysis
3  involving catalogs actually for all 12 of the claims.

4        So we showed you the testimony of Mr. Shamos,
5  though, that the Lawson system doesn't have catalogs
6  and therefore it doesn't infringe any of the 12
7  claims.  It's completely different from all that.  And
8  to illustrate what the Lawson system really is here,
9  I'm going to show you something.  This is from
10 Plaintiff's Exhibit 361, page 49 of that exhibit, page
11 2243.  The last four digits are 2243.  Do you remember
12 Mr. Weaver showed you some demonstrations.

13       This particular one he didn't talk about.  He
14 didn't present this one to you.  In fact, we talked
15 about it, and this has something called an active
16 items at requesting location list.  This is about the
17 closest thing in any of ePlus' materials of showing
18 you what an item master in the Lawson system actually
19 looks like.

20       It's this list of products.  At the far left
21 is an item number.  That's the number that the
22 customer assigns.  The first one is 1007, 1008, 1009.
23 The customer puts those in there in the order that the
24 customer enters those item numbers.  They have some
25 descriptions of the products there.  You see tape.

1    Then it goes to steri strips.  I guess that's some

2    sort of a bandage, and so on.

3            These are these very short descriptions that

4    are only 30 characters or less.  So you can see how

5    abbreviated they are.  And you heard the testimony

6    that those are the things the customer comes up with.

7    And they're not trying to sell anything here.  They're

8    not trying to give you a big description to entice you

9    to buy anything.  They're just reminding themselves

10   which one that is because this is the thing they buy

11   over and over.

12           Over on the far right it talk about that

13   being tracked.  That's their inventory.  This is their

14   own personal inventory.  Yes, we track it.  Yes, we

15   monitor our inventory on this thing.  This is the

16   closest thing that ePlus had to show you what the item

17   master actually looks like.  And they have never

18   linked this or anything else to a published vendor

19   catalog.  It doesn't look like it, and it's from the

20   customer.  This is an organized collection of

21   information, yes, but it's the customer who organized

22   it.  The vendor never even sees this.

23           So how could the vendor publish this?  An

24   organized collection.  And that's what has to be

25   catalogs here.  It just doesn't look like a catalog as

3180

1    the Court has defined it.

2            So Dr. Weaver never showed either a single

3    vendor catalog that actually came from a vendor and

4    said, Oh, look.  Here's one of those vendor catalogs

5    that comes from somebody selling products to a Lawson

6    customer and compare that now to the item master.  Oh,

7    look, they look similar, don't they?  Dr. Weaver never

8    did that.

9            The reason he didn't do that is because he

10   wouldn't have been able to show that that comparison

11   would hold any water.

12           So they talk about what Dr. Weaver did do,

13   but it's what Dr. Weaver did not do that's the most

14   important thing here.

15           And they didn't do that even though they

16   picked four of our customers to give them information

17   about who our customers are.  They picked four of them

18   to depose and subpoena.  And you heard from -- I think

19   you heard from three of them in the case as it wound

20   up.  Mr. Yuhasz was live, Mr. Matias and Ms. Cimino.

21   Those are our customers that they picked.  They didn't

22   show you anything in those depositions or documents

23   that would show catalogs.

24           If we could go to slide No. 51.  Actually,

25   let's go to 52.  So Lawson doesn't infringe these

3181

1   patents because it doesn't have multiple catalogs.  It
2   doesn't have published catalogs.  It doesn't have
3   catalogs published by inventors.  We've got very basic
4   information.

5        The whole purpose of an item master is
6   different from the purpose of catalogs.  Catalogs are
7   from vendors to sell things.  The item master is to
8   track personal customer's private inventory.  Short
9   descriptions selected by the customers.  It's an
10  inventory list like a shopping list just trying to
11  keep track of what they've got in stock.  Also control
12  what their employees can buy.  That's a big thing here
13  in comparison and contrast to catalogs.

14       You heard Mr. Robertson talk about comparison
15  shopping.  That's the intent of these patents.  Let's
16  the employees go out there and maybe do some shopping
17  and things.  And that might be good in some
18  situations.  If some customers want to do that, that's
19  fine.  But for some companies, they would say, I don't
20  want my employees doing that.  I just want them to go
21  buy the pens.  I don't want them out there shopping
22  around looking for new pens that are different or more
23  expensive or whatever and wasting time on that.

24       The Lawson system is all about control.  The
25  patented system a all about empowerment of the

3182

1  customers.   Two very different purposes here.

2           So let's go to the evidence now on the issue

3  of the catalogs.   The testimony showed that Lawson

4  doesn't have catalogs.

5           Can we go to slide 53, I think it is.   This

6  is Mr. Christopherson's testimony here.   Using the

7  definition the Court just gave for published by a

8  vendor, is the customer's item master database ever

9  published by a vendor?   The Judge said just answer it

10  yes or no.   Mr. Christopherson then answered no.   So

11  Lawson people showing that the item master is not a

12  catalog as the Court defined it.   Customer testimony

13  is well.

14           If we go to 55.   This is Mr. Yuhasz.   He was

15  the customer that showed up in court here.   He was

16  nice enough to do that from Novant.   Is this data in

17  Novant item master generally known?   No.

18           Is the item master data maintained as

19  private?   Yes.

20           And the supporting differences here from the

21  published catalog.   If we go to the next slide, 56.

22  Mr. Yuhasz actually explained that they already had

23  the Lawson system that's accused of infringement in

24  this case with the requisition and purchase order and

25  inventory control modules, but they were looking for

3183

1  the ability to have what he called a better option
2  that we felt had product catalogs.  They wanted to be
3  able to search for more things.
4         They wanted something different from what
5  Lawson had.  Were these features as the Lawson system
6  as it was installed at Novant did not provide?  Yes.
7         Here's his testimony that he, having one of
8  the accused systems, didn't think it had product
9  catalogs.  He was actually putting it out for bid.  He
10  was willing to write another check for somebody else
11  to go in and add that capability.  Well, there's some
12  real world market information for you that really
13  shows why the Lawson system doesn't have catalogs.
14         If we could go to the next slide.  This is
15  the inventor testimony.  They didn't talk about the
16  Lawson system, but they did talk about the parts
17  master that they acknowledge was like an item master.
18         This again relates to the have your cake and
19  eat it too, issue.  So that parts master that has the
20  same sort of things like we have on the blow up here,
21  item part number, a short description, tracking and
22  inventory, that isn't the same thing as the catalogs
23  you had in mind as the invention for these
24  patents-in-suit, right?  I don't think so.  For me,
25  no, they aren't the same.

3184

1              Again, the parts master, that's the same sort

2    of thing as an item master, correct?  Yes.

3              Mr. Momyer.  If we go to the next slide.

4    Again, reinforcing that that RIMS system as of

5    April '93 had that parts master.  That would not meet

6    the Court's definition of a catalog, Mr. Momyer's

7    testimony.

8              THE COURT:  It says Mr. Kinross.

9              MR. McDONALD:  I'm sorry.  Is that Kinross?

10   You're right.  It's Mr. Kinross.  Thank you.

11             Then go to the next slide.  So we're back to

12   Mr. Momyer again here.  This is confirming that that

13   parts master in the RIMS system, that's parts that a

14   customer would select, just like in the Lawson item

15   master.  That's what they would track for their

16   stockroom or inventory.  Just like the Lawson item

17   master.

18             Go to the next slide.  This is the third

19   inventor who testified, Mr. Johnson, now.  Again

20   acknowledging the RIMS system had a parts master, but

21   he didn't think that it had a catalog, though.

22             Then if we go to the next slide.  This is

23   Mr. Hilliard, their invalidity expert.  Of course he's

24   Mr. No.  This was an easy quote to find because

25   nothing was a catalog for him.  But he acknowledged

3185

1    here with the Court's definition of catalogs that

2    there were no databases in the RIMS system that met

3    the Court's definition of catalogs.

4         So you have all of these Lawson witnesses,

5    all the inventors, even one of ePlus' experts

6    acknowledging that a parts master, which was just like

7    an item master, doesn't meet the definition even for

8    one catalog, let alone multiple catalogs.

9         So who was the only witness in this case who

10   said Lawson's item master was multiple catalogs?  It

11   was Dr. Weaver.  Dr. Weaver's approach, just about any

12   list of item information is not only a catalog, it's

13   actually multiple catalogs.  That's incredible.  It

14   defies common sense.  And we went through that with

15   him in a couple of ways.

16        If we go to the slide 63.  Remember, I asked

17   him, because he was saying that as long as the

18   information originated in some part from a vendor,

19   that meant the vendor actually published the organized

20   collection.  I gave them that example if I had a

21   personal address book, and I was going to put a phone

22   number in it that came from a phone book, my address

23   book if it has one entry from a published phone

24   company's phone book, my address book has an entry in

25   it that originated from the phone book, right,

3186

1    Mr. Weaver?   Correct.

2             But in that case, even if it's my personal

3    address book, I didn't publicly disseminate it.   I

4    kept it in my own house.   Would you consider that to

5    be a published phone book?  Answer:   Well, that data

6    came from a published phone book, so, yes.

7             So Dr. Weaver said the address book is the

8    same thing as a published phone book.   It doesn't make

9    any sense.   But it doesn't end there.

10            Can we go to the next slide, please.   I went

11   on to talk to Dr. Weaver about how within the item

12   master -- he had to come up with a way to say this one

13   database was actually multiple catalogs.   So he had to

14   be a little creative there.   What he came up with is

15   this line of reasoning.   So if you search for the word

16   "blue," you get back results from the Lawson item

17   master that would be the catalog of blue things

18   because when you search "blue," you're searching for

19   the item master description, right?   Answer:   Yes.

20            If I search for the number five, it would

21   generate a list of all the things that had a number

22   five in the description?   It would.

23            In your opinion each one of these is a

24   separate catalog; is that right?   Yes.

25            So is there really any limit to the number of

3187

1   catalogs in the Lawson item master the way you look at
2   it?  No.
3          The Lawson item master has a limitless number
4   of catalogs according to Dr. Weaver.  Mr. Hilliard,
5   though, would say a parts master, which is just like
6   an item master, has no catalogs at all.  Having their
7   cake and eating it, too.  That's what we have going
8   on.
9          And that's even established on this last
10  thing with Mr. Momyer's testimony.  If we could go to
11  slide No. 65.  We talked to Mr. Momyer about this part
12  of their patents-in-suit.
13         Go back to 65, please.  Blow up the part
14  that's yellow.  This is in the background section of
15  the patents.  They acknowledge, Well, there are
16  computer systems out there capable of searching
17  databases containing a product catalog of a particular
18  vendor.  For example, on CD-ROM.
19         But down here you see around line 10, Well,
20  those are limited, though, in that only one such
21  vendor catalog.  That's one such vendor catalog is
22  accessible to a user at any given time.
23         So I asked Mr. Momyer about that since he's
24  one of the inventors of this thing.  If we could go to
25  No. 66, please.  I asked him about that section.

3188

1  Would the fact you could search that single CD-ROM for

2  products of a certain color, would that mean the

3  CD-ROM actually contains multiple catalogs depending

4  on what word you searched with?  His answer was:  To

5  me, the catalog would indicate the company you were

6  buying the product from, he went on to explain.

7  Bottom line.  So it would be a single catalog.

8         So even though you could do keyword searches

9  and look up all sorts of different words within that

10 catalog, it's still as you understood it for purposes

11 of your patent a single catalog, right?  Yes.

12        So here is Mr. Momyer applying a little

13 common sense by saying a catalog is a catalog.  It's

14 not a limitless number of catalogs.  But he's one of

15 the inventors here talking about a part of the patent,

16 so that's really important here.

17        I talked to Dr. Weaver a little more about

18 the item master.  I think ePlus and their expert knew

19 that this catalog issue was pretty important from day

20 one in this case or certainly before trial.  And that

21 the item master and whether it's catalogs is

22 important.  So it's pretty striking, I think, wasn't

23 it, when we had slide 15 from his presentation which

24 is my slide No. 67?  Do you remember he had these

25 blocks that he stacked up.  I talked to him, and he

3189

1   said, Those system shown in those systems were a

2   complete and comprehensive infringing system.  It had

3   everything that had to be infringing, including

4   multiple catalogs, right?  Eleven of the 12 claims

5   specifically say multiple catalogs or collection of

6   the catalogs, at least two catalogs.  Some variation

7   on it.

8           So the item master is the catalogs.  Dr.

9   Weaver, where is the item master?  Do you remember

10  that pause?  Do you remember he was starring at that

11  screen for a long time?  This was his own slide he

12  did.  But he starred at it for a long time there

13  because he knew it wasn't there.  And that's really

14  the story of their whole infringement case.  It's just

15  not there.

16          I want to show you one more thing about

17  Dr. Weaver's analysis.  This has to do with the

18  selecting catalogs or portions of the database to

19  search issue.  That's not in all the claims here, but

20  I think it's important to illustrate.

21          67A, if we could go to that.  This is the

22  part of the patent that actually talks without

23  selecting catalogs to search.  You get a choice of

24  some catalogs.  In the example here they have four.

25  It doesn't have to be these four, obviously, but this

1    least two attorneys here at all times so I can be reached by

2    phone.  I'm just right down here at the Hilton Garden Inn, so I

3    can be here in four minutes.

4              THE COURT:  Do you have to trade shoes or can you --

5              MR. ROBERTSON:  I come equipped.  I will be right

6    over here pronto, but we'll have somebody here at all times.

7              THE COURT:  That's fine.

8              MR. ROBERTSON:  All right.  Thank you.

9              THE COURT:  Now, is he coming back?  Mr. McDonald or

10   Ms. Stoll-DeBell?

11             MR. CARR:  As far as I know, he's not coming back.

12             THE COURT:  Well, then, I know not to schedule any

13   arguments, I guess, until I'm certain.  All right.  I guess

14   that solves it for now.  Thank you very much.  We'll be in

15   adjournment.

16

17             (Court adjourned.)

18

19

20

21

22

23

24

25