IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
|       Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| v. | ) |
| LAWSON SOFTWARE, INC., | ) |
|       Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE TESTIMONY OF LAWSON ECONOMIC EXPERT
JONATHAN D. PUTNAM CONCERNING AWARD OF ROYALTY
AND UNOPPOSED REQUEST FOR EXPEDITED BRIEFING**

*e*Plus, Inc. ("*e*Plus"), by counsel, has moved to strike all testimony offered by economist Jonathan D. Putnam addressing the award of a reasonable royalty to *e*Plus as a sanction should Lawson be found in contempt of this Court or its Order entered May 23, 2011. *See* Dkt. No. 729 ("Injunction Order"). The Court addressed the issue of awarding a reasonable royalty (1) prior to the trial of the underlying patent infringement action by striking *e*Plus's damages expert and by barring use of alternative proof as a discovery sanction, and (2) in connection with the post-verdict injunction proceedings by rejecting Lawson's argument that a compulsory license measured by a Court-imposed royalty was a remedy superior to a permanent injunction. The Court's orders are the law of the case, and the parties are bound by them.

### Relevant Procedural History

The critical rulings relating to a reasonable royalty are referenced in the Court's opinion concerning the entry of the permanent injunction. *See* Dkt. No. 728 (Injunction Opinion). In the Injunction Opinion, the Court explained that in pretrial rulings it had (1) struck Dr. Russell Mangum's testimony on reasonable royalty and (2) precluded *e*Plus from offering evidence other than expert testimony as a discovery sanction. *See id.* at 8-9. Those rulings were made over *e*Plus's objection; they are the subject of a cross-appeal that is presently before the Federal Circuit Court of Appeals.

The Court also addressed, and decisively rejected, an argument floated by Lawson in connection with the March 25, 2011 injunction evidentiary hearing. At that hearing, counsel for Lawson asserted that a permanent injunction was not proper. Relying on *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007), Lawson urged the Court simply to impose a compulsory license going forward based on a royalty rate to be determined by the Court. The Court pressed counsel for both parties during oral argument on this issue. *See* Dkt. No. 698 (Hearing Tr.) at 12-15, 18-19 (March 25, 2011) (colloquy with Lawson counsel); 22-27 (colloquy with *e*Plus counsel).

The Court summarily rejected Lawson's argument that a compulsory license measured by a going-forward running royalty would provide *e*Plus with an adequate remedy for Lawson's ongoing infringement of *e*Plus's patents. *See* Injunction Op. at 36 ("On this record, it is not possible to conclude that an ongoing, post-verdict royalty could be ascertained at all, much less in a way that a reviewing court would find to be reliable"). In the Injunction Opinion, the Court gave its reasons for refusing to enter a royalty-bearing license:

- "Lawson argues that, because ePlus has arrived at licenses with five other companies, the Court can use those licenses to arrive at a going forward royalty here. That, of

2

course, is a passing strange argument, considering that Lawson's successful motion to preclude Dr. Mangum's testimony was based, in large measure, on the contention that those five licenses did not permit an adequate basis upon which to calculate a reasonable royalty. Lawson does not explain how the Court could turn around now and use those licenses to arrive at a reasonable post-verdict running royalty. This rather disingenuous argument thus fails for that reason alone." *Id.* at 35.

- "[A]s Lawson . . . argued in seeking the exclusion of Dr. Mangum's testimony, each of the five licenses reflects unique considerations which defy quantification. For example, the license to Ariba contained a cross-license to Ariba's patents, while the license with SAP included SAP's covenant not to sue ePlus. . . . The Court cannot envision a reasonable, reliable way to use those five licenses to arrive at an ongoing royalty. And, of course, Lawson has made no suggestion to that end. On this record, it is not possible to conclude that an ongoing, post-verdict royalty could be ascertained at all, much less in a way that a reviewing court would find to be reliable. For that additional reason, Lawson's proposed remedy at law is not adequate." *Id.* at 35-36.
- Compensation in the form of a royalty-bearing license would be inadequate, because such a license would not reflect the value "of the restrictions and protection that [*e*Plus] has negotiated in [its] other licenses. Those restrictions, of course, can often be as important as the monetary payment for the license. . . . The Court could not fashion a royalty that could account for the myriad of factors and fact-specific circumstances that each licensee and *e*Plus accounted for when negotiating the licenses, making damages inadequate in this case." *Id.* at 37.

On February 6, 2012, Lawson served and provided to the Court Dr. Putnam's expert report on the subject of remedies should Lawson be found in contempt. In that report, Dr. Putnam does two things relevant to this motion: (1) he criticizes Dr. Keith Ugone, the *e*Plus expert on contempt remedies, for failing to quantify a royalty rate that Lawson could pay as a remedy for contempt, Dkt. No. 886 (Putnam Rpt.) at ¶19(2), and (2) he turns to the law of *patent damages*, arguing that *e*Plus has not proven its loss, and therefore the Court must measure a *contempt remedy* in terms of a reasonable royalty. *Id.* at ¶¶ 20-21, 75, 80, 102-104, 114-156, 159, 160.

From there, he proceeds to discuss the well-known *Georgia-Pacific* factors, but his cursory analysis has a fatal flaw: he does not use the *Georgia-Pacific* factors to determine a reasonable royalty. *Id.* at ¶¶ 114-137. Instead, he punts to the royalty rate offered by Dr. Mangum—and struck by this Court—as the purported "upper bound on the royalty rate that *e*Plus would have

3

charged Lawson, had the parties reached an agreement." *Id.* at ¶ 154. Dr. Putnam concedes that the 5% royalty rate, which he adopts as his own expert opinion, "is based on [five] licenses" *e*Plus has entered into for the patents-in-suit, *id.* at ¶ 155, notwithstanding the Court's admonition that the five *e*Plus "licenses reflects unique considerations which defy quantification." Injunction Op. at 35.

## Argument

### I. The Law of the Case Doctrine Prevents Relitigation of the Royalty Issue.

The law of the case doctrine prevents delay and harassment, or even a subjective good faith effort by a litigant to cling to a rejected argument. *See generally*, 18B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4478.1 (2002 & 2011 Supp.). Although a trial court retains discretion to reconsider matters it has ruled upon prior to entry of a final order, *see* Fed. R. Civ. P. 54(b), there is a presumption against reconsideration. *See* 18B Wright, Miller & Cooper, § 4478.1 *supra*. Here, the Court's rulings pertaining to the question of a reasonable royalty preceded, and significantly shaped, the jury verdict and the permanent injunction order. Those rulings were briefed, argued, decided, and embodied in orders.

In the Fourth Circuit, the doctrine is alive and well: "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 292, 304 (4th Cir. 2000) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Aramony*, 166 F.3d 655, 660-61 (4th Cir. 1999)).

This rule has utility in contempt proceedings, and particular utility in patent litigation, where there are incentives on the part of the putative contemnor to hijack the contempt hearing,

transforming it into a retrial on the merits.[1]  Thus, courts have properly noted that the law of the case established in the underlying infringement action precludes efforts to reopen decided matters in related contempt proceedings.  *See, e.g., KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 1529 (Fed. Cir. 1985) ("Whether there is infringement may not be challenged in contempt proceedings on the basis that the patent is invalid.  The validity of the patent is the law of the case in such proceedings."), *abrogated on other grounds, Tivo Inc. v. Echostar Corp.*, 646 F.3d 869, 881 (Fed. Cir 2011); *see also Tivo*, 646 F.3d at 884, n.4 ("As we have stated before, the district court is able to utilize principles of claim preclusion (*res judicata*) to determine what issues were settled by the original suit and what issues have to be tried.") (citing *KSM*, 776 F.2d at 1532).

Here, the Court has already noted how it is "passing strange" and "disingenuous" for Lawson, which successfully attacked and precluded the reasonable royalty testimony of Dr. Mangum, to attempt to embrace aspects of Dr. Mangum's analysis in post-verdict proceedings.  *See* Injunction Op. at 35.  Although the Memorandum Opinion does not speak in terms of judicial estoppel, that doctrine applies with considerable force to Lawson's effort to occupy both sides of the reasonable royalty argument as it appears convenient.  *See generally New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (discussing application and purpose of doctrine of judicial estoppel); *see also Bland v. Doubletree Hotel Downtown*, 2010 U.S. Dist. LEXIS 18514, at *8-15 (E.D. Va. Mar. 2, 2010) (applying judicial estoppel to dismiss plaintiff's civil action because plaintiff represented a nominal value for the claim in a bankruptcy proceeding while

---

[1] Lawson has indicated in pre-hearing filings that it will push the boundaries of the contempt hearing offering, in addition to the rejected royalty theories espoused by Dr. Putnam, an expert witness who purports, among other things, to revisit claim constructions and definitional rulings made by the Court during trial.  *See* Dkt. No. 868 (Expert Report of Dr. Benjamin F. Goldberg) (Jan. 20, 2012); Dkt. No. 882 (Motion to Strike Dr. Goldberg).

seeking a "bounty" before the court); *Payne v. Wyeth Pharms., Inc.*, 606 F. Supp. 2d 613, 614-17 (E.D. Va. 2008) (applying judicial estoppel to prevent a personal injury plaintiff from seeking damages in excess of the amount previously represented in bankruptcy); *In re Lilliefors*, 379 B.R. 608, 611 (Bankr. E.D. Va. 2007) (applying judicial estoppel after debtor attempted to use his own noncompliance with the credit counseling course requirement to have his case dismissed when further proceedings were not to his benefit).

Nor has Lawson articulated any reason for the Court to reconsider its early orders. *See Shanklin v. Seals*, Case No. 07-cv-319, 2010 WL 1781016, at *2-3 (E.D. Va. May 3, 2010) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)) ("A motion for reconsideration generally should be limited to those instances in which: 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.'"). Settled doctrine teaches that there is rarely a reason to revisit decided matters in the course of a single proceeding. This case is not exceptional in that regard. In fact, there are even more compelling reasons, discussed below, to resist the reintroduction of a reasonable royalty analysis into this contempt proceeding.

### II. Dr. Putnam's Reasonable Royalty Opinion Does Not Meet The Standards Set Forth In Federal Rule of Evidence 702

Dr. Putnam's reasonable royalty opinion should be rejected for the additional reason that it does not meet the standards set forth in Federal Rule of Evidence 702 or in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Expert testimony is admissible if the testimony "will assist the trier of fact to . . .

6

determine a fact in issue," but only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Dr. Putnam's ultimate opinion regarding a royalty rate is not based upon ***any of his own facts or data*** or ***any of his own principles or methods***. Instead, Dr. Putnam adopts Dr. Mangum's royalty rate opinion of 5% even though the Court has clearly articulated that Dr. Mangum's opinion is inadmissible.

Although Dr. Putnam purports to offer his own reasonable royalty analysis based on the *Georgia-Pacific* factors, he does not offer his own opinion about a royalty rate. Dr. Putnam chooses not to provide the Court with a royalty rate that ***he believes*** the Court should adopt based upon ***his own reasonable royalty analysis***. Instead, Dr. Putnam, disregards his own reasonable royalty analysis, and adopts Dr. Mangum's 5% royalty rate. Dr. Putnam apparently adopts Dr. Mangum's opinion as his own in the mistaken belief that because "it was offered by *e*Plus," it will not be challenged in these contempt proceedings. Putnam Rpt. at ¶ 154. But regardless of which party originally offered Dr. Mangum's opinion, that opinion was struck by the Court in pre-trial proceedings. Indeed, Dr. Putnam acknowledges that the Court has determined that Dr. Mangum's opinion, the very same opinion which Dr. Putnam adopts as the "upper bound" of his own royalty rate, is "unreliable." Putnam Rpt. at ¶ 115.

Dr. Putnam should not be permitted to offer a reasonable royalty analysis because the ultimate opinion he provides regarding a royalty rate is not tethered in to the facts or data underlying his analysis, but is instead based solely on "Dr. Mangum's 5% royalty rate." *Id.* at ¶ 154. Dr. Putnam's reasonable royalty opinion is inappropriate and unreliable because it is based upon an expert opinion that the Court has already struck, and because Dr. Putnam's *Georgia-*

*Pacific* analysis is completely disconnected from the royalty rate opinion of Dr. Mangum that he adopts as his own.

### III. The Court's Reasons for Rejecting a Compulsory License Measured by a Court-Ordered Royalty Apply with Greater Force Now Than They Did at the Injunction Hearing.

The Court's reasons for rejecting Lawson's request for a post-verdict compulsory license measured by a Court-determined royalty rate are summarized above at pages 2-3. This case is now in a much different posture. The Court is both addressing Lawson's compliance with judicial processes and determining how to ensure compliance with an injunction order that was fashioned to protect ePlus's fully-adjudicated property rights. In these circumstances, the scope of the Court's discretion and its ability to fashion effective remedies are substantial. *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) ("The appropriate remedy for civil contempt is within the court's broad discretion.").

Dr. Putnam's reasonable royalty opinions, coupled with Lawson's attack on Dr. Ugone, are an effort to lay a trap for the Court. On the one hand, Lawson argues that Dr. Ugone's evidence concerning the gains Lawson has enjoyed through continuing to offer infringing products is immaterial, and that instead the Court may only consider direct and measurable loss to *e*Plus as a contempt sanction.[2] On the other hand, Lawson tries to drive the Court's analysis toward payment of a running royalty as a proper remedy for contempt, a remedy that Lawson knows the Court already rejected in granting a permanent injunction. The bottom line is clear—Lawson would be delighted to walk away from a finding that it violated the Court's Injunction Order by having to pay only the price that it advocated, and the Court pointedly rejected, when it

---

[2] *See* Dkt. No. 892 (Motion to Strike Testimony of Dr. Keith Ugone) (Feb. 15, 2011). For reasons that *e*Plus will present in opposition to Lawson's motion to strike Dr. Ugone, that argument ignores a substantial and well-reasoned body of controlling authority that retains vitality and usefulness in the contempt setting.

8

entered the Injunction Order. The reasons the Court articulated in the Injunction Opinion for rejecting such a remedy are ignored, the scope of the Court's contempt powers is ignored, and Lawson simply reduces the price of contempt to a manageable cost of doing business. The Court need not select between false choices. It need not travel a path that permits an adjudicated infringer to evade a permanent injunction by granting itself a license. The Court should take a step away from that path by rejecting Dr. Putnam's evidence on the grant of a reasonable royalty.

## Conclusion

For the reasons set forth herein, *e*Plus respectfully requests that the Court strike all portions of Dr. Putnam's report discussing a reasonable royalty, including but not limited to Paragraphs 19–21, 75, 80, 102–104, 114–156, 159–160, Exhibits 9 and 11, and Figure 4 of the Dr. Putnam's report.

February 16, 2012

Respectfully submitted,

ePLUS, INC.

By Counsel

_____/s/_____
Paul W. Jacobs, II (VSB # 16815)
Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com
pjacobs@cblaw.com
hwillett@cbblaw.com

Scott L. Robertson *(admitted pro hac vice)*
Jennifer A. Albert *(admitted pro hac vice)*
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com

*Counsel for Plaintiff, ePlus, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2012, I will electronically file the foregoing

**MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE TESTIMONY OF LAWSON ECONOMIC EXPERT
JONATHAN D. PUTNAM CONCERNING AWARD OF ROYALTY
AND UNOPPOSED REQUEST FOR EXPEDITED BRIEFING**

with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) via email to the counsel of record, and serve the via electronic mail on the following counsel:

Josh A. Krevitt, *pro hac vice*
Daniel J. Thomasch, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com

Christopher Dean Dusseault, *pro hac vice*
Jason C. Lo, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel (213) 229-7000
cdusseault@gibsondunn.com
jlo@gibsondunn.com
VAED-620ExternalServiceList@gibsondunn.com

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB#37691
Megan C. Rahman (VSB No. 42678)
Timothy J. St. George (VSB No. 77349)
TROUTMAN SANDERS LLP
1001 Haxall Point • P.O. Box 1122
Richmond, Virginia 23218-1122
Tel: (804) 697-1200
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for Defendant Lawson Software, Inc.*

/s/
Paul W. Jacobs, II (VSB #16815)
Counsel for Plaintiff *e*Plus, Inc.
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
pjacobs@cblaw.com