## Lawson's Objections to ePlus's Summary of
## Scott Hanson's Deposition Testimony

Lawson objects to the summary of the deposition of Scott Hanson on the following grounds.

First, a substantial amount of the questioning of Mr. Hanson went to subjects outside the boundaries of the Rule 30(b)(6) topics for which he was a designated witness. Indeed, Mr. Hanson was asked questions that went to 30(b)(6) topics for which another witness had been designated and had already testified. For example, Mr. Hanson was asked whether downloading RQC would constitute a change in Lawson's product configuration for a customer who had previously been licensed for RSS, subject matter within the 30(b)(6) designation of Elizabeth Homewood (Ms. Homewood testified to that same inquiry in the affirmative). Mr. Hanson made clear that his testimony was from a "technical" perspective, and thus did not address the implications of downloading on the licensed status of the product, which is addressed in Ms. Homewood's testimony on behalf of Lawson. Mr. Hanson was also asked about product differences between RSS and RQC, a topic far outside his area of knowledge or 30(b)(6) designation, that topic having been squarely addressed by another witness, Mr. Todd Dooner. Mr. Hanson was asked question after question regarding support ticket files even after he testified that he is not part of the support organization and cannot testify as to what it does. 60:14-15; 196:9-10. Thus, many of ePlus's designations regarding Mr. Hanson's testimony are inadmissible because such testimony is hearsay, improperly asks Mr. Hanson to speculate on topics outside of his expertise, goes beyond his designation as a 30(b)(6) witness, and is not binding on the corporation.

Second, ePlus's summary mischaracterizes Mr. Hanson's testimony. For example, Mr. Hanson did not testify that "minimal amount [of] testing" would be required to render a product

operational.  He testified that a client would test a product until it is comfortable with it and that it would be something that would vary by the client.  58:13-16; 224:9-12; 226:10-19.  He testified that configuration, a step different from testing, would be minimal.  226:4-7.  Similarly, ePlus's summary stresses that Mr. Hanson testified that customer feedback regarding operational expense, employee complications, loss of morale, or job loss as a result of the removal of RSS and/or RQC was not documented, but omits his clear testimony that he had personally dealt with more than 200 customers and so had first-hand knowledge of customer complaints concerning having to extend go-live dates, having to re-test a new product, and increased workload that accompanied the move to RQC.  312:14-22; 322:4-8.

Third, ePlus's summary mischaracterizes the exhibits.  Its summary regarding Hanson Exhibit 16, for instance, omits Mr. Hanson's explanation that his statement regarding RQC as a "new user interface" was directed at an internal employee to help her understand, from a high-level perspective, that the eight hours of SWAT team assistance would be excessive; it was not a comment on the product differences between RQC and RSS.  276:2-4; 276:12-15; 276:17; 277:1-7.

Fourth, in the same fashion that ePlus confused the distinction between service and support in Ms. Homewood's deposition, ePlus's summary for Mr. Hanson's deposition also misses that distinction; the summary erroneously alleges that Lawson's "support" ticket files reveal that Lawson continues to "service customers" that are still using RSS.  Lawson's trial testimony will make clear that the "support" and "service" functions at Lawson are handled by different parts of the organization.

Mr. Hanson expects to attend the trial and provide testimony in person.