**Lawson's Objections To Summary of**
**Dean Hager Deposition Testimony**

Lawson objects to the deposition summary of the deposition of Dean Hager on the following grounds.

ePlus fails to note that Dean Hager was no longer employed by Lawson at the time of the deposition but appeared voluntarily to discuss his role at the March 25, 2011 injunction hearing and all other topics addressed to him. ePlus repeatedly provides incomplete summaries and mischaracterizations of Dean Hager's testimony, including, but not restricted to the following:

First, ePlus maintains that "Mr. Hager . . . claimed to have a high level understanding of the differences between RSS and RQC." This is inaccurate. Mr. Hager stated that he had understanding – at only a high level – of only one difference between RSS and RQC, such that a requisition was created directly, as opposed to it being a separate tool. 46:4-7. He knew nothing about any changes to UNSPSC functionality. 46:13-16. He also could not speak to any changes to Punchout functionality, beyond knowing that changes were made. 47:15-19.

Second, ePlus cites Mr. Hager for the proposition that "The process of modifying RSS was driven by Lawson counsel." This is another incomplete summary. Mr. Hager stated that the lawyers were involved with Lawson's technical team and that he did not know who actually decided how Lawson would modify RQC. He just knew that the legal team and the development team were involved. 185:10-13.

Third, ePlus claims that "Mr. Hager previously testified in Court that . . . to move away from RSS would take around nine months at a cost of, in some cases, over a million dollars per client." This is another incomplete summary. Mr. Hager clarified that his

testimony concerned very large hospital customers, 61:16-63:3, Exhibit 3 page p. 262-63, and the cost, in time and money, that he estimated would occur if such in an institution were required to switch to an alternative, third-party solution. 67:12-15; 88:17, 89:5-7, 357:11-366:14 (designated portions only).

Fourth, ePlus claims that "Mr. Hager was aware as early as March 6, 2011 that Lawson was considering implementing its own design-around product, but did not inform the Court of this fact." There is no basis for ePlus's implicit suggestion that it fell to Mr. Hager, a non-lawyer, to decide what information about a development project was pertinent to, or should be disclosed in the injunction hearing. Mr. Hager was aware at the time of the hearing that the proposed design-around did not have legal approval, did not have committed delivery, and that Lawson was unsure whether it could even be delivered. 69:1-4; 71:16-17; 378:8-15.

Fifth, ePlus claims that "It was Lawson's goal as early as March 29, 2011 to release RQC in May." This is a mischaracterization of testimony. Hager Exhibit 9 is dated April 26, 2011, not March 29, 2011. 149:22-150:3. Hager Exhibit 26 speaks only to the possibility of LPD being product-ready by May, not that the product would be released to the marketplace in May. 323:22-324:2. Mr. Hager testified that it can take months between a product being LPD-ready and actually being shippable. 324:19-22.

Sixth, ePlus claims that "A replacement product that did not infringe on ePlus's patents could not be promised to all customers." This is a mischaracterization of testimony. The emails referenced in Exhibit 15 spoke only to M3 products. 216:5-6; 344:21-345:345:15, 346:1-16. Lawson has not designed-around the M3 product, which it has not sold in the United States since the injunction.

Seventh, ePlus claims that "Lawson's standard license agreement provides for customer indemnifications from intellectual property infringement." This is an incomplete summary of documents that are outside of Mr. Hager's knowledge. ePlus's summary does not describe the terms of the customer indemnifications, which are not identical in all Lawson contracts.

Eighth, ePlus claims that "Lawson also had no knowledge as to whether its customers had downloaded, installed or implemented RQC." Mr. Hager's testimony does not support, much less establish, this point as Mr. Hager was not a Rule 30(b)(6) witness and did not speak for Lawson on this topic. This is also mischaracterization of Mr. Hager's testimony. Mr. Hager only stated that he personally did not know how many customers actually downloaded RQC. 197:4-7.

Ninth, ePlus claims that "Although there were concerns that customers would see RQC as a degradation from RSS, customers were informed that the RQC 'replacement' product was actually an improvement over RSS and preserved key functionality without infringing ePlus's patents." This is yet another incomplete summary. Mr. Hager stated that his only basis for believing RQC to be an improvement was because of the addition of mobile solutions. 238:18-21 Mr. Hager's understanding was that functionality "would be available but done in different ways." 341:14-15.

Tenth, ePlus claims that "RSS and RQC can be run in parallel." This is a mischaracterization of testimony. Mr. Hager stated that he had "no idea" whether RSS and RQC could be run in parallel.

Although not employed by Lawson and not residing within the Court's subpoena power, Mr. Hager has agreed to appear at the civil contempt hearing of his own accord. Accordingly, his deposition is hearsay.