## Lawson's Objections to ePlus's Summary of
## Elizabeth Homewood's Deposition Testimony

Lawson objects to ePlus's deposition designations for the deposition of Elizabeth Homewood on various grounds, including that said designations mischaracterize her testimony, ask hypothetical questions, and deal with topics outside of the scope of Ms. Homewood's 30(b)(6) designation.

ePlus's summary for Ms. Homewood's deposition is both incomplete and misleading, serving more as an advocacy piece than a fair rendition of the witness's testimony. For example, on an issue as to which Ms. Homewood was designated to serve as Lawson's Rule 30(b)(6) witness, i.e., efforts made to stop providing maintenance and support to customers using infringing configurations, Ms. Homewoood testified at length, but her testimony in that regard is not included in ePlus's summary. ePlus stresses that "Ms. Homewood was not aware of any specific customer who has uninstalled removed RSS," suggesting that the injunction required such action on Lawson's part, which it does not. While Ms. Homewood could not, at that time, identify specific customers that were running RQC, she indicated that although internal system records do not indicate whether a customer has installed or implemented RQC, Lawson's support personnel can logically deduce that the customer has installed and implemented RQC by the fact that the customer is asking questions about it. 23:1-4.

Ms. Homewood made clear that after the effective date of the injunction (which differed for designated health care customers and other customers), Lawson did not provide maintenance or "code fixes" for RSS (30: 9-35:13), did not license M3 e-Procurement software and did not provide any maintenance to M3 customers in the United States (39:15-40:15).

ePlus's characterization of the steps taken by Lawson to comply with the injunction is particularly incomplete and misleading, in that it omits crucial facts testified to by Ms.

Homewood.  ePlus omits the fact that Lawson "took a rather conservative approach" in complying with the injunction and expanded the RSS stop support to eventually include all product lines running on LSF, Lawson's foundational software.  82:1-15.  ePlus also omits an important exhibit, the RSS Decommission Notice, which, according to Ms. Homewood's testimony, indicates that Lawson "cease[d] all activities, further development, or fixing, or supporting, or any work on the product."  98:20-99:4.

The ePlus deposition summary does not identify the investigation that Ms. Homewood undertook to prepare for her testimony, including the work done to determine the download status of RQC among Lawson's customers who had previously licensed RSS.  Ms. Homewood indicated that as of days before her deposition 522 or 523 Lawson customers had downloaded RQC (105:1-4), that RSS customers who had not downloaded RQC had been subjected to "the appropriate shutdown of support in the system, so we were not providing support" and that she was unaware of any RSS customer who had not downloaded RQC but had received support from Lawson after the date of the injunction.  125:1-18.

ePlus's designations are also unfair because they designate testimony regarding convoluted hypothetical situations that were asked of Ms. Homewood without counsel's having provided any foundation for the questions being asked.  36:2-8; 36:14-21; 37:5-10; 39:5-10; 118:20-119:3.  Most of these questions dealt with maintenance, and ignored questions related to the other activities covered by the injunction, such as support, consulting, training, implementation and installation.  36:2-8; 36:14-21; 37:5-10; 39:5-10.

Ms. Homewood was designated to testify as to (i) the identity of all Lawson customers who have installed and/or implemented RQC and the identity of all Lawson customers who have removed and/or uninstalled RSS; (ii) the identity of all RSS customers who have not removed

and/or uninstalled RSS and who have not installed and/or implemented RQC; (iii) Lawson's efforts to comply with the requirement in the Injunction Order that Lawson cease "circulating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services"; and (iv) steps taken by Lawson to cease provision of maintenance, support, consulting, training, implementation and installation for the Infringing Products and Services.  However, Ms. Homewood was continuously asked questions that were outside of the scope of Ms. Homewood's 30(b)(6) designation, as well as questions of a very technical nature, and irrelevant questions regarding such matters as communications with international customers, which is not pertinent to Lawson's compliance with an injunction against support for infringing configurations within the United States.

      Ms. Homewood expects to attend the trial and provide testimony in person.