IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



EPLUS INC.,

        Plaintiff,

v.                                    Civil Action No. 3:09cv620

LAWSON SOFTWARE, INC.,

        Defendant.


## MEMORANDUM OPINION

This matter is before the Court on the MOTION FOR ENTRY OF ORDER REQUIRING PRODUCTION OF DOCUMENTS AND INFORMATION AS TO WHICH THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN WAIVED AND FOR EXPEDITED BRIEFING (Docket No. 869) filed by ePlus Inc. ("ePlus"). For the reasons below, the motion is granted in part and denied in part.


## PROCEDURAL BACKGROUND

On May 23, 2011, the Court issued a permanent injunction, enjoining Lawson Software, Inc. ("Lawson") and "any person in active concert or participation with them" "from directly or indirectly making, using, offering to sell, or selling within the United States or importing into the Unites States" certain product configurations and services. (Docket No. 729). On September 9, 2011, ePlus Inc. ("ePlus") filed a Motion to Show

Cause, alleging that Lawson was in violation of the injunction Order and seeking an order citing Lawson for contempt of Court. (Docket No. 798).   The focus of ePlus' contempt motion concerned an application of one of the infringing system configurations, Requisition Self-Service ("RSS").   Lawson redesigned RSS and created Requisition Center ("RQC") in its stead.   ePlus alleged that the new RQC product is not colorably different from RSS.

At the September 15, 2011 hearing, counsel for Lawson requested that it have until October 7, 2011 to "have the written discovery back."   Sept. 15, 2011 Tr. 8:18-20 (Docket No. 805).   The parties then filed a Joint Stipulation setting out certain discovery deadlines and agreeing to the October 7 response deadline (Docket No. 816).

Lawson asked the Court for more time to complete its production of documents, claiming that many of the requested documents were privileged.   As a result, the Court issued an Order on October 19, 2011, setting deadlines for a preliminary privilege log, outlining the requirements for the privilege log, and postponing Lawson's production deadline to November 2, 2011. (Docket No. 825).   Lawson produced a privilege log and a revised privilege log before November 2.   It then requested that it have additional time to produce a third version of its privilege log. At a November 8 hearing, after reviewing the third privilege log, the Court expressed the view that the log did not appear to

2

comply with the October 19 Order, and counsel for Lawson explained that there were some items in the privilege log that it had learned did not belong there. Nov. 8, 2011 Tr. 119:16-21; 122:15-19. The Court then ordered Lawson to file a revised privilege log, which Lawson did on November 21, 2011. Mem. Supp. Motion to Compel, Exhibit C.

Depositions began on December 19, 2011 and continued through January 9, 2012. On January 15, 2012, counsel for Lawson asked that it be able to "claw back" ten documents that it claimed had been produced inadvertently. Id., Exhibit T. It later agreed to drop its request with respect to two of these documents. Id.

## LEGAL STANDARD

The purpose of the attorney-client privilege is to "promote broader public interests in the observance of law and administration of justice . . . [t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States, 449 U.S. 383, 389 (1981). Thus, the application of the privilege laws serves an important purpose in our legal system, but that application can also "remove otherwise pertinent information from the fact finder, thereby impeding the full and free discovery of the truth." Rambus, Inc. v. Infineon Techs. AG, 220 F.R.D. 264, 271

3

(E.D. Va. 2004).  Because of this adverse result, in the Fourth Circuit, work product and attorney-client privilege are construed "quite narrowly."  Id.  They are recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."  Id. (quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998)).

A party asserting a privilege has the burden of showing that it applies.  Id. (citing United States v. Under Seal, 341 F.3d 331, 335 (4th Cir. 2003)).  Amongst other things, the party asserting attorney-client privilege must establish that:

> (2) the person to whom the communication was made . . .
> act[ed] as a lawyer [in connection with the communication]
> (3) the communication relates to a fact of which the
> attorney was informed (a) by his client (b) without the
> presence of strangers (c) for the purpose of securing
> primarily (i) an opinion on law or (ii) legal services or
> (iii) assistance in some legal proceeding . . .
> (4) the privilege has been (a) claimed and (b) not waived
> by the client.

Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998).  Whereas, the party asserting the work product doctrine must establish that the document at issue was prepared at the direction of an attorney in anticipation of litigation.  Hickman v. Taylor, 329 U.S. 495 (1947).

## ISSUES PRESENTED

In its motion, ePlus requests that the Court find as follows:

(1)   the eight documents produced by Lawson are not the proper objects of a "claw back" demanded on January 15, 2012, as a consequence of Lawson's conscious decisions to produce them rather than inadvertence, or as a consequence of Lawson's inconsistent assertions of the attorney-client privilege, or both;

(2) that hundreds of entries on Lawson's Fourth Amended Privilege Log remain incomplete and unclear, and that all documents that are incompletely identified and referenced on the Fourth Amended Privilege Log be produced to ePlus forthwith;

(3) that the attorney-client privilege has been waived as to the subject matter of Lawson's development of the RQC module, on the ground that the privilege has been inconsistently described and asserted in Lawson depositions;

(4) that the attorney-client privilege has been waived as to the subject matter of the development of the RQC module, on the ground that Lawson knowingly used attorney advice as an endorsement of the RQC module to its customers and the public, and as an assurance to customers that the RQC product renders certain configurations of its procurement software, found to be infringing by this Court, to be non-infringing; and

(5) that the documents previously clawed back, redacted and withheld from production under the claim of privilege be produced forthwith.

Each contention will be addressed in turn.

### DISCUSSION

#### A. The Privilege Log

The Order entered on October 19, 2011 required:

> (1) "[Lawson to] provide to [ePlus] a 'Preliminary Privilege Log' listing those documents that are potentially privileged and identifying each document's author and recipient."
> (2) "[that after] concluding its review of those documents identified in its 'Preliminary Privilege Log,'" Lawson "supplement its privilege log to include a narrative explaining the nature of the privilege claimed, as required by Fed. R. Civ. P. 26(b)(5)(A)(ii)."

Oct. 19, 2011 Order (Docket No. 825). ePlus argues that Lawson's fourth privilege log does not meet the requirements of the October 19 Order, and that, consequently, Lawson has waived its privilege with respect to these entries. Lawson responds by explaining how to find the author information for many of its entries, by pointing out that many of ePlus's entries in its privilege log are similarly deficient, by arguing that the fact that some emails were widely distributed does not defeat the

privilege with respect to those emails, and by arguing that waiver is too harsh a remedy here.[1]

Parties seeking to challenge a claim of privilege have sparse information at their disposal. Because they do not actually have access to the privileged documents, they must rely on the opposing party's description of them in the privilege log. "Accordingly, the descriptions in the log must satisfy the claiming party's burden." Rambus, Inc. v. Infineon Techs. AG, 220 F.R.D. 264, 272 (E.D. Va. 2004). Fed. R. Civ. P. 26(b)(5) requires parties asserting privilege to "describe the nature of [privileged] documents, communications, or tangible things . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Pursuant to Rule 26, the Court entered the October 19 Order (Docket No. 825).

---

[1]   Lawson also argues that ePlus should have filed its motion earlier and that it did not meet and confer. These arguments are without merit. ePlus's exhibits establish that it attempted to meet and confer with Lawson about the issues in its motion and that it did meet and confer with Lawson on several occasions during the month of January. See, e.g., Mem. Supp. Motion to Compel, Exhibits Q, R, S.

ePlus had no obligation to afford Lawson the opportunity to fix the deficiencies in its log. Lawson has had ample opportunity to submit a privilege log that follows the Court's Order and Rule 26, and the existence of four privilege logs evidences as much. Furthermore, Lawson's final privilege log was submitted at the end of November and contains almost 10,000 entries. ePlus could not be expected to review all of these entries and discover each deficiency overnight. It filed its motion in a timely and reasonable manner.

Lawson did not fully comply with the October 19 Order or Rule 26. The log contains several deficiencies. First, many entries do not contain author and recipient information. Lawson admits that these entries are technically deficient. For the entries that do not contain this information, Lawson has waived the privilege. <u>See, e.g.,</u> Mem. Supp. Motion to Compel, Exhibit C, Privilege Log 4, Entry Nos. 46, 48, 98, 153-70, 468-71, 2399-419.

Second, many entries do not identify an attorney in the recipient or author field. Lawson did not properly assert attorney-client privilege with respect to these entries. Because the entries lack an attorney's name in the recipient and author fields, it is not clear that these communications were made by or to an attorney. <u>See Hawkins v. Stables</u>, 148 F.3d 379, 383 (4th Cir. 1998) (noting that attorney-client privilege protects only communications made to or from attorneys). However, those entries that are cited by ePlus as having this deficiency, assert both work product and attorney-client privilege. <u>See, e.g.,</u> Mem. Supp. Motion to Compel, Exhibit C, Privilege Log 4, Entry Nos. 46, 48, 98, 153-70, 361, 364-65, 368-69, 416, 425, 426, 468-71, 2399-419. And, in the narrative description for each alleged offending entry, Lawson claims that the documents were prepared by a specific attorney in

8

anticipation of litigation. Thus, with respect to these entries, the privilege is not waived.

Third, 290 entries concern communications to ten or more non-attorneys. Lawson does not deny this, but claims that it was required to widely disseminate information because of the injunction, which applied to a broad group of people. Communications within a corporation are only protected if the party claiming privilege can demonstrate that the persons to whom the communications were made had the "need to know" the information communicated. Deel v. Bank of America, N.A., 227 F.R.D. 456, 460 (W.D. Va. 2005) (citations omitted). Lawson has not so demonstrated.

Nor has Lawson established that the individuals in each of these entries are protected by the decision in Upjohn v. United States, 449 U.S. 383, 389 (1981). In Upjohn, the Supreme Court held that communications made by employees to legal counsel for a corporation acting as legal counsel at the time of the communications, made at the direction of the supervisors of the corporation and for the purposes of securing legal advice, were protected communications. Id. at 394. In doing so, the Court rejected the more limited "control group test," in which only those communications made for the purposes of securing legal advice by those able to "control" or take a "substantial part" in decision-making were protected. Id. at 390-94. The Court

underscored the fact that it was evident that the corporation had kept the communications confidential and had emphasized that they were highly confidential. Id. at 395.

Here, Lawson has not argued that the individuals listed in any of the 290 entries had a need to know as defined by Deel or that they should enjoy the protection provided by Upjohn. It has not even established that the listed individuals are employees or that they needed to know the information communicated. Nor has Lawson asserted that the communications were made at the direction of supervisors. Quite simply, Lawson has not satisfied its burden to establish that a privilege applies. Thus, it has waived the privilege with respect to these entries.[2]

Fourth, some entries are missing date information and three entries fail to assert privilege log type. Although ePlus argues that the privilege is waived for these entries, the missing date is a minor deficiency which does not prevent ePlus from attacking Lawson's claim of privilege. Also, in a log with 9,706 entries, the fact that Lawson inadvertently failed to assert privilege type for three entries is certainly

---

[2] This is true also of the 39 entries in which Lawson identifies the recipient as an unidentified distribution list. Whether the persons on those lists have a "need to know" the information communicated and whether those persons are employees who knew they were being communicated with by Lawson's counsel in its capacity as legal counsel is unclear. Lawson has waived its privilege with respect to these entries.

understandable.  The privilege is not waived with respect to those three entries or the entries that lack date information.

Along with the obvious deficiencies cited above, ePlus argues that there are some "substantive" deficiencies which constitute waiver.  First, ePlus claims that many of the descriptions/narratives in the log are inadequate because they "simply allege that the documents incorporate advice provided by attorneys." Mem. Supp. Motion to Compel at 25.  Second, ePlus argues that some entries describe communications between non-attorneys that reflect legal advice.  Id. at 26.  Third, ePlus claims that some entries reflect only business advice and not legal advice.  Id.  Fourth, ePlus contends that the entries to which Lawson asserts the joint defense privilege are inadequate because they do not establish the requisite common legal interest and strategy.  Id.

Lawson responds by arguing that "[p]rivilege logs do not need to be precise to the point of pedantry." Opp. Mem. Motion to Compel at 22 (quoting In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001)).  According to Lawson, if its narratives were any more descriptive, they would reveal the privileged communications it is trying to protect.  Id.  Lawson defends several specific entries, claiming that those that contain business advice also contain legal advice, and that

those that are administrative are also legal in nature. Id. at 21-22.

The fact that certain entries refer to documents which forward legal advice or contain such advice does not necessarily constitute waiver with respect to those entries. See, e.g., Mem. Supp. Motion to Compel, Exhibit C, Privilege Log 4, Entry Nos. 938, 1671-72, 1844, 3281-82, 5174, 5398. For example, Entry No. 938 asserts work product and explains that it is an: "email conveying legal advice of Patty Elias re: review of letters to customers about changes to S3 Core Procurement and Requisition Self Service prepared in anticipation of litigation." If the email was prepared at the direction of an attorney in anticipation of litigation as it seems to be, then Lawson properly asserted privilege with respect to it. Some of the other entries are less clear in wording than No. 938, but all seem to fall into a similar category. Entry No. 1844 describes the document as: "draft customer letter in anticipation of litigation drafted with assistance from Bruce McPheeters." Obviously, the entry could have been more carefully worded. However, the description is enough to permit assessment of the claim of privilege and to support it.

For the entries concerning communications by non-attorneys which reflect legal advice, no privilege can apply. Lawson does not establish that they these are communications from or to an

12

attorney or that they are communications made at the direction of an attorney. See, e.g., id. at Entry Nos. 634, 661-63, 683-84, 690, 732-34, 944-45, 1052, 1086, 1337, 2389, 2395, 2443, 2507, 5398. Lawson has not carried its burden, and the asserted privilege is waived.

The majority of entries cited by ePlus that contain "business advice" also appear to contain "legal advice." Thus, Lawson did not waive the privilege with respect to these entries, at least not for the reason that the documents contain business advice. See, e.g., id. at Entry Nos. 1161-65, 7791, 7798.

Finally, each of the entries cited by ePlus in which Lawson invokes the "joint defense privilege" also assert another ground of privilege. See id., at Entry Nos. 2455, 2459, 2460, 5193, 5203, 8533, 8535, 8537. Therefore, the Court need not decide whether the joint defense privilege was properly invoked (although it does not appear to have been properly invoked). Lawson has not waived its right to keep the communications in these entries privileged.

**B.   The "Claw Back" Requests**

Lawson has asked that eight documents be "clawed back" pursuant to the Amended Protective Order, contending that disclosure of these documents was inadvertent. ePlus argues that all of the documents at issue had been reviewed before they

13

were disclosed and thus that Lawson has not proved that the disclosure was inadvertent.   In relevant part, the Amended Protective Order provides:

> In the event that one of the law firms that is counsel of record or counsel for a Designating Party in this action (or a responsible attorney for a non-party) learns or discovers that a document subject to immunity from discovery on the basis of attorney-client privilege, work product or other valid basis has been produced inadvertently, counsel shall notify the Receiving Party or Parties within ten business days after so learning or discovering that such inadvertent production has been made.  The inadvertently disclosed documents and all copies shall be returned to the producing party and the Receiving Party shall not seek an order compelling production of the inadvertently disclosed documents on the ground that the producing party has waived or is estopped from asserting the applicable privilege . . .

Amended Protective Order ¶ 12 (Docket No. 116) (emphasis added). Intentional disclosures are not protected by the Order.   Only "inadvertent" acts are covered.

According to Black's Law Dictionary, "inadvertence" is "[a]n accidental oversight; a result of carelessness."   Black's Law Dictionary, 774 (8th ed. 2004); see New Bank of New England v. Marine Midland Realty Corp., 138 F.R.D. 479, 483 (E.D. Va. 1991)("Inadvertent disclosures are, by definition, unintentional acts."); see also Francisco v. Verizon South, Inc., 756 F. Supp. 2d 705, 710-11 (E.D. Va. 2010)(citing the definition from

14

Black's Law Dictionary and discussing the scarcity of Fourth Circuit case law defining the term "inadvertent"). In Francisco, the defendant determined, after review, that certain notes were not privileged. Id. at 719. It knew that it was producing the document containing the notes but only realized that the notes were privileged after a second investigation. Id. The Court determined that the disclosure was not inadvertent. Id. In doing so, the Court relied on the authority of an unpublished opinion, McCafferty's Inc. v. Bank of Glen Burnie, Case No. MJG-96-3656, 1998 U.S. Dist. LEXIS 12861 (Apr. 23, 1998). In that opinion, the Court explained that:

> [A]n inadvertent waiver would occur when a document, which a party intended to maintain as confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision – albeit an unwise or even mistaken, decision – not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence.

Although McCafferty's Inc. is an unpublished opinion, it is well-reasoned and hence is a useful analytical tool.

Here, Lawson has not met its burden to show that it is entitled to "claw back" the eight documents. In its opposition,

15

Lawson addresses only one of the still-contested documents, specifically, RQC2008420, and its argument with respect to that document is unpersuasive.   Lawson claims that it accidentally produced the document in unredacted form.   But, as ePlus points out, Lawson's explanation does not show that the production was "inadvertent."   Lawson does not deny that it intended to produce the document.   And, Lawson does not deny that, when it did finally object to the production of the document, it did so on an entirely different privilege ground than it had asserted in its privilege log.

Lawson argues, with respect to the other documents, that the fact that they have confidentiality stamps on them does not necessarily mean that they were reviewed before being produced. According to Lawson, employees, and not attorneys, _may_ have placed these stamps on them.   That is an insufficient basis for establishing inadvertent production.   And, the fact that those documents bore confidentiality stamps should have alerted Lawson to the fact that they contained potentially privileged information.   Therefore, if Lawson produced them even with those stamps (no matter who did the stamping), it could not have done so "inadvertently."

More importantly, Lawson does not respond to ePlus's arguments about several specific documents.   For example, one of the documents RQC2714397, was produced in redacted form,

16

indicating that, in fact, it had been reviewed by Lawson before production.   Another, RQC2657684, was discussed at great length during Mr. Lohkamp's deposition.   Counsel for Lawson did not object to the use of significant parts of the document during the deposition which, of course, further undermines Lawson's claim of inadvertent production.

The record shows that Lawson intentionally produced these documents after reviewing them, and then realized it had mistakenly produced them.   However, the Protective Order does not cover "mistakes."

Moreover, some of the documents at issue were once labeled as privileged but were not claimed to be privileged in subsequent iterations of the log.   And, other documents were used in depositions without objection.   On the record as a whole, Lawson has not established that the documents at issue were produced inadvertently.   They may not be "clawed back."

C.   **Communications Concerning Development of the RQC Module**

  **1. Waiver**

ePlus argues that Lawson has waived the privilege with respect to the development of the RQC module.   Lawson contends that its disclosures were too limited to constitute waiver, and that the waiver suggested by ePlus is too broad in scope.

Allowing the introduction of privileged documents and discussions of privileged subjects without objection waives the

privilege.    Hawkins v. Stables, 148 F.3d 379, 384 (4th Cir. 1998).  "The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and the privilege was not waived."    Zeus Enters. V. Alphin Aircraft, Inc., 190 F.3d 238, 244 (4th Cir. 1999).  Waiver can occur by public revelation.  See, e.g. Tri-County Paving, Inc. v. Ashe County, 2000 WL 1811606, 2000 U.S. Dist. LEXIS 19563, at *4 (W.D.N.C. Oct. 5, 2000).  Revelation is "public" if "it destroys any expectation of privacy for the disclosed information." See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 269 F.R.D. 600, 605 (E.D. Va. 2010) (citations omitted).  And, "when a party discloses information that had been confidential before the disclosure, the privilege is waived not only to that communication, but also 'as to the subject matter of the disclosure.'"    Id. (quoting Hawkins v. Stables, 148 F.3d 379, 384 n. 4 (4th Cir. 1998)).    The rule prevents "selective disclosure for tactical purposes."    Id. (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)).

Here, Lawson clearly waived the privilege with respect to the subject matter of the development of the RQC module.  First, Lawson did so by producing lawyer-crafted power points, which contained very detailed suggestions about how to modify RSS in order to avoid continuing infringement.  Reply Mem. Supp. Motion

18

to Compel, Exhibits VV, WW, XX.   Lawson has not clawed-back these power points.

Second, Lawson waived its privilege during the depositions of Mr. Christopherson, Mr. Hager, and Mr. Lohkamp.   The development of the RQC module was carefully outlined in a document about which Mr. Christopherson was questioned in his deposition, the S3 RSS/Punchout & M3 Battle Plan Against ePlus. See Reply Mem. Supp. Motion to Compel, Exhibit W.   That document is broken down by task.   Each task has a description, the owner, a team assigned to work on it, and the firm responsible for helping complete it.   Counsel for Lawson explained that he was not objecting to the use of the document because, though it was marked privileged and confidential, his understanding was that it was not in fact privileged or confidential.   Mem. Supp. Motion to Compel, Exhibit U, 177: 13-18.   Mr. Christopherson also provided testimony concerning an email in which Mr. Lohkamp explained that "legal counsel" had recommended that it "make one additional change to Requisition Center that impacts Procurement Punchout to help address concerns about being able to add items from two vendor catalogs."   Id., 394: 6-10.   This testimony reveals that legal counsel specifically provided advice that changes needed to be made to a specific part of Requisition Center in order to avoid a specific legal problem.   The document

19

itself explains which changes legal counsel recommended be made. Mem. Supp. Motion to Compel, Exhibit CC.

Mr. Hager testified that the reason he believed RQC did not infringe was because his lawyers told him as much. Mem. Supp. Motion to Compel, Exhibit X, 204:4-205. He claimed that his lawyers had told him that, because "the new RQC product directly builds the requisition real time instead of first building a separate order list," (in other words that because changes had been made to Punchout), it did not infringe. Id. 204-205. And, he explained that his legal counsel told him that "the only change [to RSS] is in how the RQ system interfaces with Lawson's core requisition system." Id. 206:12-207:7.

Mr. Lohkamp testified that legal counsel had recommended that certain changes be made to RSS, including "[r]equir[ing] one requisition per Punchout vendor." Mem. Supp. Motion to Compel, Exhibit BB, 93-95. Mr. Christopherson, Mr. Hager, and Mr. Lohkamp all freely disclosed that legal counsel had told them that changing Punchout would allow them to create a noninfringing product. That product is RQC. Documents freely produced by counsel for Lawson also disclose this information.

The record thus establishes that Lawson has waived the attorney-client privilege with respect to the communications from Lawson's attorneys to Lawson concerning the development of

RQC[3] because it has allowed extensive, detailed questions on that subject.

### 2. Work Product

Lawson also argues that the information concerning RQC is "work product." To establish that the work product privilege is applicable, a party has the burden of establishing that the document at issue was prepared at the direction of an attorney in anticipation of litigation. Hickman v. Taylor, 329 U.S. 495 (1947). The type of privilege invoked is important to ascertain, because waiver of opinion work product is treated differently from waiver of fact work product and attorney-client privilege in the Fourth Circuit. See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 269 F.R.D. 600, 605 (E.D. Va. 2010). The scope of opinion work product waiver is more limited than other types of waiver. Waiver occurs as to the documents or opinion "actually disclosed," instead of as to the entire subject matter. Id. at 606 (quoting In re Mut. Funds Inv. Litig., 251 F.R.D. 185, 187 (D. Md. 2008)). If a document contains both opinion work product and fact work product, then

---

[3]    The Court need not consider whether Lawson's prior public statements to customers concerning RQC development waived the privilege because it is clear that waiver occurred in the depositions and in the production of the power points. There also can be no argument that ePlus's motion is untimely. The depositions in which Lawson waived its privilege were completed in January, and ePlus filed its motion shortly thereafter.

the Court must "review the material and redact the legal theories and mental impressions from the otherwise discoverable materials." Id. (citations omitted).

Here, most of the documents at issue reveal the fact that legal counsel recommended certain changes be made to RSS. Lawson must meet its initial burden of showing that the documents are work product by establishing that they were prepared "in anticipation of litigation" at the direction of an attorney. It has not done so. The record shows that the documents at issue here were not "prepared in anticipation of litigation." Rather, they were drafted to help Lawson create a new product that it could market to consumers. Here, the documents at issue reveal the fact that lawyers were involved in RQC's development and the fact that those lawyers recommended that specific changes be made to RSS. On this record, Lawson has not established that the work of the lawyers was in anticipation of litigation even though it was done during litigation. Hence, Lawson has not shown work-product protection of the documents dealing with the development of RQC.

## CONCLUSION

For the reasons stated herein, ePlus's MOTION FOR ENTRY OF ORDER REQUIRING PRODUCTION OF DOCUMENTS AND INFORMATION AS TO WHICH THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN WAIVED AND FOR

EXPEDITED BRIEFING (Docket No. 869) will be granted in part and denied in part. The Court makes the following findings: (1) The eight documents produced by Lawson are not the proper objects of a "claw back" demanded on January 15, 2012; (2) The attorney-client privilege has been waived as to the subject matter of Lawson's development of the RQC module; (3) The following privilege log entries are inadequate and the privilege is waived with respect to them – (a) entries that do not contain an author or recipient; (b) entries with ten or more recipient non-attorneys listed or where a distribution list is the recipient; and (c) entries that pertain to communications between non-attorneys reflecting legal advice; and (4) Lawson has not shown work product protection attaches to the lawyer work in developing RQC.  On those matters, the motion is granted. Otherwise, the motion will be denied.

It is so ORDERED.

_____  /s/         REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 2/, 2012