# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - -

ePLUS, INC.,

Plaintiff,

v.

LAWSON SOFTWARE, INC.,

Defendant.

- - - - - - - - - - - - - - - - - - -

Civil Action No. 3:09CV620

January 6, 2011

COMPLETE TRANSCRIPT OF **JURY TRIAL**
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esq.
Jennifer A. Albert, Esq.
**Michael T. Strapp, Esq.**
**David M. Young, Esq.**
GOODWIN PROCTOR
901 New York Avenue, NW
Washington, D.C. 20001

Craig T. Merritt, Esq.
CHRISTIAN & BARTON
909 E. Main Street, Suite 1200
Richmond, VA 23219-3095

Counsel for the plaintiff ePlus

DIANE J. DAFFRON, RPR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

APPEARANCES: (Continuing)

Daniel W. McDonald, Esq.
**Kirstin L. Stoll-DeBell, Esq.**
**William D. Schultz, Esq.**
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2215

Dabney J. Carr, IV, Esq.
TROUTMAN SANDERS
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23218-1122

Counsel for the defendant Lawson Software.

program and gives it a search query or initiates a search using a characteristic of a drop down menu. And the search engine then engages and returns items that match the query.

Q Did you examine a Lawson software program that permits a user of a Lawson system to perform that functionality?

A Yes, the requisitioning system does that.

Q You have building a requisition icon here. Do you see that?

A Yes.

Q Please explain what you're intending to illustrate there?

A So in the Lawson system you build a shopping cart, then you add and delete items from it until you're satisfied with it. And then you do a checkout from the Lawson system. And that engages the requisition system and builds the requisition of all the items that you want to order.

Q Are you familiar with the term "a shopping cart"?

A Yes.

Q Is that consistent with your understanding of building a requisition?

A Well, it's not the requisition. It's the data structure that can be modified. You can add and

delete to it. So in computer terminology, we call this a cache, a C-A-C-H-E. So it's a data structure that holds data, and then it's going to be transferred to the requisition module, and it's in the requisition module that the requisition is created.

Q All right. Thank you for that correction. So is it consistent with an order list?

A The order list is the shopping cart and that's what becomes the requisition.

Q Did the Court define what an order list is in its glossary of claim terms?

A Yes. A list of desired catalog items.

Q Did you apply that construction in doing your infringement analysis?

A Absolutely.

Q Next you have an icon for generating purchase orders. Do you see that as part of the overview of the Lawson procurement system?

A Yes.

Q Can you explain that process here?

A So we've got our requisition. This is our formal list of the things we want to buy. It might have one item. It might have a hundred items. The items might be from one vendor or they might be from 100 vendors. Whatever that requisition says, the purchase order

for ePlus?

A Yeah. We could say out of the box, the box being the laptop.

Q One being with the additional data that Lawson assisted ePlus's counsel in loading; is that right?

A That's correct.

Q The first demonstration you have, what do you want to illustrate?

A I want to illustrate the category search in which we can find generally equivalent items and then we can find other items and build a requisition, and then we can build one or more purchase orders from that requisition.

Q Okay. And did you direct the preparation of this demonstration?

A Yes, I did.

Q All right. If we can, before we do that, just so we can orient the jury as to what they're going to see, can we see claim three and claim 28 side by side on the screen?

Now, both these claims, claim three being the system claim and claim 28 being a method claim, has this element concerning converting data relating to a selected matching item and associated source to data relating to an item in a different source; do you see that?

A Yes. That's the sixth element.

Q The Judge has construed both these claim terms; correct?

A Yes.
Q And I'm not going to go through it again because we read them at one point, but the jury has them in their glossary. And, of course, all the other elements need to be there as well. Are we going to be seeing, as we walk through this demonstration, the existence of these other elements that you described?
A Yes.
Q Why don't you go ahead.
A All right. So Mike is going to play this movie, and you'll see there are some waits involved in here, but that's just because it's recording exactly what was seen.
Q Stop here for a second and let me ask you a question here. There's a box in the lower right-hand corner. Is that part of the Lawson system or not part of the Lawson system?
A That was part of the system provided, and it's part of the realtime capturing software, so you can -- what's showing -- can you see this? So what you are seeing right now is a clock that says we're 12.4 seconds into the movie, and then there's a button that if you were on the real laptop, you could click it and it would toggle from pause to play to pause to play. We've chosen just to let it play.
Q If we wanted to --
MR. McDONALD: Your Honor, could I get a clarification on which exhibit, and is there a paper version of

this one so we know what you are using?

MR. ROBERTSON: It's going to be Plaintiff's Exhibit 376 is the video, and Plaintiff's Exhibit 374 would be the hard copy paper capture of the screen shots.

Q So we're clear, this is like the video playback? We can do the stop, forward, reverse by using these tools if we need to go back at any time?

A Well, these tools are for the original capture. Mike and I are going to do it manually. I'm going to say stop and continue and probably say go back.

Q We may have to go back because it moves quickly sometimes?

A Sometimes it's too quick, and sometimes it's too slow. Right now we're going to start with a go back, so go back to the beginning.

All right, so as the laptop screen exists, first I'm going to bring up the browser. I'm going to use Internet Explorer, so here we go. Stop. Now, again, I'm just going to tell you, you're going to see some times when not much is happening, but this is just a true-to-life recording of exactly what was on the screen at the time.

Okay, so in your ordinary Internet Explorer browser, I've clicked on the favorites tab, and one of the favorites that I've saved is the Lawson portal.

Q Is this an example of the drop-down menu you were talking about earlier?

A Sure. Exactly. So I'm going to go down and click on Lawson portal. Continue. Now, this is one of those waits. Okay. We get to the Lawson log-in screen. So we put in the user name and password and then click on log in. This will be one of those longer waits. You can see the time clicking away in the bottom right-hand corner.

Stop. So now we are at the Lawson home page, and if you are familiar with browsers, you see up here, there is the URL that we're using. LSF server, that's Lawson server foundation, that's what we talked about before. Server.corpnet.lawson.com. So we're looking at the portal.

Q All right, you used the term URL. Can you explain to the jurors what you mean by that?

A Falling back into my vernacular. Universal resource locator, so commonly called a web address. Okay, so we can continue. Top. Stop. That was stop, not top. Here's another one of those drop-down menus. So on the left-hand side, I have a menu. One of the top level choices was requisition self service. So I'm going into the RSS module, and I'm picking one of the activities that is there. This is one of the capabilities. All right, so I'm going to click on the shopping selection. Continue.

Stop. So, now we come to the shopping screen. Again, if you look up here at the top, you will see there are some choices that can be made. These are, again, top levels of what

will be drop-down menus. I'm going to go click on this find/shop, and that's going to give me additional choices. Continue.

Stop. So here are the choices. I can search the catalogs, I can do a Punchout. I'm going to do that later. Down there at the bottom is categories. So I'm going to go down and click on categories, because I want to do a category search. Continue.

Stop. Now, remember with the UNSPSC codes, we said that there were four levels: Segment, family, class, and commodity. So what is showing here in the category tab, the category window, is the first three of a small set of these top level categories, these segment categories. So, remember, there could have been a hundred of them, 00 to 99, but here, for clarity, everyone exchanges those digits for names so that they have -- they make sense to humans.

So my top choice there, live plant and animal material and accessories and supplies, that's one of the segment codes. Now, I don't know what code it is, 23, 99, I don't know. It doesn't matter. It is representative of what is in this very broad segment. So I'm going to scroll down and show you the others, and then I'm going to come back and pick one in the middle. Continue. See, we only had about six there. Stop.

Q Let me ask you a question about that then. There are only six here to illustrate the functionality of it. Does the

Lawson requisition self service you are using here have the capability to have more?

A Absolutely.

Q How many could it have?

A It could be a hundred different segments. Each of those segments could have a hundred families. They could each have a hundred classes. They could each have a hundred commodities.

Q I noticed you clicked on one of these segments?

A The one I clicked there in the middle is communications and computer equipment and peripherals and components and supplies. So you can see how broad a category that segment name represents. So what we're going to do now is drill down to become finer-grained.

So having clicked on that top level segment -- continue -- stop. So underneath the segment is the family. Now, here we show that there's very little data in the system we were provided. Whereas there could be a hundred different family names, there's only one. So due to the paucity of data here, I'm going to click the only possibility I've got.

All right, so I've done the segment. This is the family. I'm going to click on the family name, hardware and accessories. Continue.

Stop. So now we're down to the class. There could have been a hundred classes, but, again, because there's so little data here, there's only two. So as I look at the class, I have

a choice of computers or monitors and displays. So I'm going to go for computers. Continue.

Stop. Now I'm down to the commodity level. The commodities, there should be a lot of them, but because of the paucity of data here, we have only one commodity category, notebook computers. So I'll click the only choice I've got, and then that will list the actual item data that is underneath the notebook computers commodity code. Continue.

Stop. So now we see all of the items in the database that have the UNSPSC code for notebook computers, and there's only two, okay? Small database.

Q So I understand, for the segments, there could have been thousands, for families there have been --

A Hundreds.

Q Hundreds. What is the next level?

A So you start with segment.

Q Class?

A Could be a hundred. Then family -- each of those segments could have a hundred, and then each of those families could have a hundred classes, and each of the classes could have a hundred commodities.

Q Those commodities, you could have thousands of items?

A Right. Once you get down to the commodity level, you have unlimited number of items that map to that code. Here we have two. Okay, it's going to do the job, though.

All right, so I'm going to look at these two computers. You can see the first line item there is an IBM ThinkPad, and it has an item number of 6001. The one below it is a Dell Inspiron 8000. It has an item number of 6020. So I'm going to go click on the item number, and that's going to get us a description of this item.

Q Before you do that, Doctor, does it have unit measure category?

A Right. Under UOM, you see each.

Q Does it have cost information?

A Under cost, the ThinkPad is 2,500. The Dell is 2,000.

Q Does it have description of the item?

A It has a description, IBM ThinkPad T20 or Dell Inspiron 8000 with Intel Pentium processors.

Q You indicated it had an item number?

A There is an item number.

Q And it even provides for the Intel Pentium or the Dell Inspiron, the manufacturer?

A I just covered up the description. Yeah. So not only do we have in this case the name of the computer, Dell Inspiron 8000, we also have a little more descriptive information, that it's an Intel Pentium III processor.

Okay. We'll continue. Oh, and stop. I should also note while we're here that over here is the Dell shopping cart, and it's obviously empty. It's supposed to be empty --

Q I think you misspoke. I think you said the Dell shopping cart.

A I misspoke. This is the Lawson shopping cart right here where it says my cart. And so as I select items, they will show up in the shopping cart, but we'll see that. All right, so now I'm READY to drill down on the ThinkPad. Continue.

So I click on that item number. Stop. And this retrieves the data in the item master and vendor item table database and tells me about the item. So we have an item number, we have a description, a unit of measure, a cost.

We have a source vendor ID, 118, and a source vendor name, Office Max. So from observing this information that is produced, I know that this IBM ThinkPad has a vendor source of Office Max.

Q Let me stop and ask a question, Doctor. There's a box there that says image not available. Does this RSS application have the ability to load images of the items offered for sale?

A It does, and the documentation encourages one to do so. But, again, because of the paucity of data, we didn't have any item images in the data we were given.

Q This is how it was provided to us; it could have been provided with an image, because the software permits you to do that?

A Right. It could have been chock-full of images, but it wasn't. Okay, so I'm going to scroll down and up so you see

all of the information that was presented to me as the user of the RSS system, and then we'll go back and look at the other Dell computer. So continue. So now I'm going to add that to the cart.

Stop. So here in the Lawson shopping cart, I have my IBM ThinkPad T20, item number 6001; quantity, one; unit of measure, each; cost, $2,500. So I'm going to park this item in the shopping cart, but then I'm going to go back and look at the equivalent items, equivalent in that they had the same UNSPSC code.

All right, so we'll continue, and I'll click on this back button over here. So here -- stop. Here is that second line item as we saw before, the Dell Inspiron. So I'm clicking on its item number, and we'll drill down on that and see what information is provided there. Continue.

Stop. So similarly to what we saw before, this is the other machine. It's an item -- I wiped it out. Item 6020, a Dell Inspiron 8000 with Pentium III processor, a unit of measure each, and a cost of 2,000. But it has a source vendor, ID code of 124, and a source vendor name of Diablo.

So the first computer, the ThinkPad was coming from the Office Max catalog. This is coming from the Diablo catalog. So I stare at that, and I think which of these machines is a better choice for me. I'm cheap, so I'm going to go with this one. So I will add this one to the shopping cart, Lawson

shopping cart, and delete the other one. So continue.

Okay, now stop. So now I have both notebook computers in the Lawson shopping cart, and I'm going to go up here to this X and delete the ThinkPad. Continue.

And like all good software, it asks me, do you really want to delete that, and I say, yes. Okay. Stop. So at this point, I have done the UNSPSC code, found two generally equivalent notebook computers, chose one, added it to the shopping cart, added the other one to the shopping cart, deleted the first one.

So I've been able to convert one item from one source, the ThinkPad from Office Max, into an equivalent item from another source, the Dell Inspiron here, and having done that, I'm now going to go back and pick another category and find another item to add so that I'll have multiple items in my shopping cart.

Okay, so I'm backed out -- because I did that drop-down menu to categories, I'm back at the highest level, the segment level. So continue. Scroll down. Stop. So this time my segment level is laboratory and measuring and observing and testing equipment. Continue. Stop. My family, again, there's only two here, laboratory and scientific equipment, or measuring or observing, or testing instruments and accessories. Continue.

So I pick at my family, laboratory and scientific

equipment. Stop. Oh, I might also note that the hierarchy tree is being kept for me up here at the top. Here's my segment level, here's my family level. As soon as I click here on my class level, it will appear here and so on.

All right, so I'm about to click on laboratory, environmental conditioning equipment for my third category. Continue.

Stop. Okay, now, again, we're down to commodities. There could be a hundred of these, but there's not. There's just one. There's one commodity called glove boxes. So when I click on this, I will see all the items in the item master database and the vendor item table that have been encoded with the UNSPSC code for glove boxes. Continue.

Stop. Once again, the database is small, so there's only two entries under the commodity heading. Both of these are boxes of sterile surgical gloves, so I'm going to pick one and add that to my Lawson shopping cart. Continue. I'm going to look at it first. Smart shopper.

Stop. All right. So I just did a drill-down as I did with the computers. So you see we have an item number, 1036, we have a description, gloves, sterile surgical, size seven. A unit of measure. Here it's case, cost, 400 bucks, source vendor. The ID number is 117, and the source vendor name is Baxter Healthcare.

Continue. So scroll down and back up, and add that to my

shopping cart. So here it is, gloves at the top, Dell computer at the bottom. Now stop. I have finished shopping, so I have the information from the database now in the shopping cart. My next goal is to create a requisition. Then I'll need to get that approved, and then I'll need to get that turned into purchase orders.

So since the gloves and the Dell came from different vendors, I will need two POs, one to each of those vendors, so I'm going to click on checkout. Continue. All right, saved.

Stop. So it gives it a number, 911. So when I come into this system next, I'm going to come in as a manager, and I'm going to look for this order 911 that is existing in the system. I'm going to find it among all other orders, and then I'm going to get it approved. All right, continue. Status needs approval.

All right, back to the portal home page, and now I'm going to come in as a manager. Here are some requisitions, but 911 is not among them. Stop. Here is the requisition 911, and that's the one I need to have approved. Continue.

Stop. So here we pull up the requisition, you see right there, and we have the two line items, the Dell Inspiron and the case of gloves. So I've logged in now as the manager when I clicked on manager, and so here are the actions I can take: Approve, reject, or unrelease, so I'm going to approve these. Continue.

Okay, approve, approve action to be taken. Okay. Work object. Taken, all right. Stop. So at this point, it looks like -- superficially it looks like I'm done. It looks like I've got it approved, but in this particular example, there were additional business logic rules that said, aha, you have a computer in there. That's a technical thing, so you need technical approval in addition to manager's approval. Okay, we'll go get that, too, so back I go as a manager. Continue.

Approve technical items, find 911. There it is. Stop. And so now what I'm going to be approving is the fact that it's got a computer in there. Continue.

Stop. While we're here, we may as well show, to show that I'm doing the technical approval, we have this item detailed down here that says it's the Dell computer from Diablo that I'm approving. So I go back up to approve it.

Q Let me stop you for a second, Doctor, and ask you, we've been seeing a number -- some of the features that we're going to be talking about in the claims that were necessary about the product catalog and selecting product catalogs and doing comparison shopping using UNSPSC codes.

MR. McDONALD: I object to the form, Your Honor. That wasn't a question.

Q Let me ask this question: This approval process, is this part of the claimed elements that are being asserted here?

A No.

Q Because there's an approval process which is an additional step or additional feature that's there beyond the claim elements, does that render a system non-infringing?

A No.

Q Having this approval process is irrelevant to the analysis when the jury needs to go back and determine whether or not the functionality either satisfies a system or method?

A That's correct.

Q Thank you.

A Okay, so we're ready now to do the technical approval. Continue. So I'll click approval, approval action taken. Work object dispatched. Stop. Now, you heard me say earlier that in the purchase order module, there's a program called PO 100 that turns requisitions into purchase orders. So I'm going to run that program, PO 100, and I'm going to tell it which requisition to go get. You might -- you may or may not recall that I said that information gets cached in the system and retrieved.

This is retrieving the requisition data by the purchase order module, and then we'll see it generate POs. Okay, so now we're ready to run the PO 100 program. Continue.

Stop. So here is the opening screen for the PO 100 program. So I'm going to fill in job name and job description, I'm going to put in three pieces of information that the system requires. Here this has -- this part has nothing to do with

infringing. This is just how you make the system work, and then we'll see it -- turn the requisition or choose the requisition and then we'll see it.

We've chosen the requisition, or have we? No, we're about to because I'm going to give it a name, and then we'll see it generate POs.

So I'll call this job RQ911, give it a name, requisition number 911. Default delivery is five days. Release the purchase orders, yes. Choose an option for exception reports. There are some other boxes that are available. I don't need any of these. I'll go back to the main tab, and, okay, that's all I need to do, so I add this. And now I'm ready to submit it to the system for -- by submit, I mean turn the requisition into a PO. So I click on submit, give this a submit -- all right, and stop.

Now, this process is actually running what we call in the background. The foreground is this PO 100 screen, and the program is running in the background converting the requisition to a purchase order, so when this was done in realtime, enough time had elapsed for that process to occur and for a report to be generated which is the purchase order.

So what I'm going to do next is just go look at it, because it's been created. I just can't see it yet, so continue. I'm going to go up here to the print manager and click on that. Stop.

So here this print manager keeps copies of the things it creates, and the very top one on the list is that job that I just named requisition number 911, and it was operated on by the PO 100 program. So when I go click on this, I'm going to reveal the purchase orders that have been created. Continue.

Stop. So if you think of this screen and then the scroll-down menu as a big piece of paper, up here at the top we have some information like when it was run, and then here we have information that's important to a purchase order, namely who is doing the purchasing.

So in this case, the buyer is the Metropolis Medical Center, and it's their -- somewhere in here it will say the delivery location is main. Well, I don't see that yet. It doesn't matter. What we're going to do now is scroll down a bit more. Okay, continue.

Move from side to side, there's nothing to the right. Stop. So here is the first purchase order. Our buyer, Metropolis Medical Center, we have a vendor, 117. Baxter Healthcare is that vendor. We have an item number 1036. We have a description, sterile surgical gloves, size seven. Its source document was requisition 911. Quantity is one. Unit of measure is a case, and here's what I was looking for. The requesting location is main. And then here, the PO has been released. So this system has created the purchase order and released it.

Now, that's the first of two. So now I'm going to scroll down some more. Continue. Stop. And here's the second PO. So it's at the bottom of this conceptual sheet of paper. So, again, we have the buyer, Metropolis. We have a vendor, number 124 from Diablo. The item number is 6020. The item description is the Dell Inspiron 8000. It came from the 911 requisition. I'm ordering one of them in unit of measure each, and I'm delivering it to main.

Now, here, for the second PO, it has been released. So two POs have been created and released, and the report summarizes two POs created. That's the end.

Q Thank you. Now, Doctor we're going to be going through some more documents, and we have three more demonstrations to sort of illustrate the functionality of this accused system. And at some point, I'm going to be asking you to go through all 12 of these asserted claims for each element under the Court's claim construction. Are you going to be able to do that for me?

A Sure.

Q At this point, just keeping the Court's claim terms in mind, let me just ask you, at a high level with respect to this demonstration we just saw, and keeping the claim three and claim 28 we talked about which include that element for converting, did we see at least two product catalogs?

A Yes, we did.

Q Did we see the ability to select those product catalogs to search?

A We did that through the categories.

Q Tell me what two product catalogs we saw?

A Office Max and Baxter Healthcare.

Q Did we also see Dell and Diablo?

A Yeah, that's right, we did.

Q And was there an ability to select the product catalogs?

A Yes, we did it through the categories.

Q Was there an ability to search for matching items in those product catalogs?

A We did that.

Q How did we do that?

A We put in the -- we did the category search by marching through the UNSPSC codes, picking a commodity and then picking items.

Q Once you had selected those items from the office, from the shopping cart, were you able to put them into a requisition?

A Yes.

Q And did you -- were you able, from that requisition, after you got the appropriate approvals which are not part of the claims of the -- elements of claim, excuse me, were you able to generate one or more purchase orders from that requisition?

A Yes, we did.

Q And were you able, using the UNSPSC, to find items that were similar, generally equivalent?
A Yes, I converted that ThinkPad into a Dell.
Q Thank you. Doctor, I'd like you to take a look at Plaintiff's Exhibit 280, and can you identify what this document is?
A This is the Lawson Software response to Presbyterian Healthcare Services.
Q So this is another one of those responses to an RFP?
A That's correct.
Q And what is it dated?
A March 22nd, 2005.
Q And if you could take a look at the page that begins with barcode 196, if you would, sir. And here -- which has a Bates number that ends 848.
A Yes, I'm there.
Q And here Presbyterian Hospital, in this -- here Lawson, in this response to the request for proposal from the Presbyterian Healthcare Services, is ask asking about requisitioning capability from Lawson; is that right?
A Yes. That's exactly what it says.
Q And it says in the requisitioning capability, it's asking to describe your ordering tools for various types of items, stock, nonstock, and non-catalogs; do you see that?
A Mike, it is below there. There it is.

Q Okay. And the response, is that on the next page?
A That's on the next page.
Q Let me -- okay, let's go to the next page. And in response to this RFP, this Lawson requisition, is that one of the modules that you've been describing today?
A It is.
Q What does it say that the capability is of Lawson requisitions that Lawson is representing to the Presbyterian Healthcare Services?
A That first paragraph says, Lawson requisitions enables users to view online catalogs for stock and nonstock items, select items from the catalog or a template, and add additional comments to their requisitions.

Also, requesters can add non-catalog items such as service or specials through item free form input. Additionally, requester can view all previously created requisitions and status with requisition inquiry.

So this tells us that the users can view online catalogs, they can select items, and they can prepare requisitions.
Q And this is using that requisitions module that you described; is that right?
A It is.
Q Let me ask you, there's an additional question on this page where Presbyterian Healthcare Services asks Lawson to quote, describe your system's ability to establish global

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---

ePLUS, INC. : Civil Action No. 3:09CV620

vs. :

LAWSON SOFTWARE, INC. : January 7, 2011

---

COMPLETE TRANSCRIPT OF THE JURY TRIAL
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT JUDGE, AND A JURY

APPEARANCES:

Scott L. Robertson, Esquire
Michael G. Strapp, Esquire
Jennifer A. Albert, Esquire
David M. Young, Esquire
Goodwin Procter, LLP
901 New York Avenue NW
Suite 900
Washington, D.C. 20001

Craig T. Merritt, Esquire
Christian & Barton, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Counsel for the plaintiff

Peppy Peterson, RPR
Official Court Reporter
United States District Court

APPEARANCES: (cont'g)

Dabney J. Carr, IV, Esquire
Troutman Sanders, LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219

Daniel W. McDonald, Esquire
Kirstin L. Stoll-DeBell, Esquire
William D. Schultz, Esquire
Merchant & Gould, PC
80 South Eighth Street
Suite 3200
Minneapolis, Minnesota 55402

THE COURT: Is that 111 or 11?

MR. ROBERTSON: 11, sir. I may have misspoken.

THE COURT: No, I didn't write it down.

Q Doctor, I'd like to talk to you a little bit now about what's known as indirect infringement. You are familiar with that concept?

A Yes.

Q You understand that ePlus is also accusing Lawson of inducing infringement of the patent claims in this case by encouraging, aiding, abetting, or assisting its customers to directly infringe the method claims at issue in this case?

A Yes, I understand that.

Q What evidence have you reviewed with respect to whether or not Lawson does, in fact, encourage, assist, urge, aid, or abet its customers to use the Lawson systems in a manner that are covered by ePlus's claims?

A Well, we saw yesterday that there were training courses that were being offered. We looked at one which was the notes for a training session, but there are live training sessions, there are archived on-line training sessions that you can play back. There are live training sessions that are using an interactive tool so that you can watch a training session and participate in it.

We know from testimony of both the Lawson witnesses and their customers that Lawson provides consulting services to

help with things like the data migration that we talked about moments ago. Lawson maintains a help website where customers can go to find documents or to get answers to frequently asked questions.

We know that Lawson has partnerships with some companies that provide multiple vendor catalogs. One of those is the Global Health Exchange. So this helps their customers find more items that they might want to purchase, and then as you've seen already, there's voluminous documentation that Lawson provided to its customers about how to use its software products.

Q Will they install, build, configure, maintain, and service those systems?

A They will.

Q Does Lawson provide on-demand online courses?

A Yes, they do.

Q Will they perform product simulation training for you?

A Yes, they will.

Q Do they have interactive webcast training?

A Yes, they do.

Q Do they provide virtual labs where students can interact with a simulation system?

A Yes, they do.

Q Do they offer courses in how to do the electronic procurement?

containing data relating to items associated with at least two vendors maintained so that selected portions of the database may be searched separately?

A Yes, they do.

Q And in your opinion by the acts that we have described does Lawson satisfy that element for indirect infringement?

A Yes.

Q Do configurations 2, 3 and 5 have means for entering product information that at least partially describes at least one desired item?

A Yes, 2, 3 and 5, they do.

Q Do 2, 3 and 5 satisfy the element of means for searching for matching items that matched the entered product information in the selected portions of the database?

A They do.

Q How did we see that?

A Because of the user interface that we saw in the requisition self service.

Q And we saw that in your demonstrations?

A Sure, we did.

Q Do configurations 2, 3 and 5 have means for generating an order list that includes at least one matching item selected by said means for searching?

A They do.

Q Is it that RSS module that provides that order list or shopping cart as you referred to it?

A Yes, the RSS is where the shopping cart functionality resides.

Q Do configurations 2, 3 and 5 of the accused Lawson systems have a means for building a requisition that uses data obtained from said database related to selected matching items on said order list?

A They do.

Q Do configurations 2, 3 and 5 have a means for processing said requisition to generate purchase orders for said selected matching items?

A They do. We saw that in the demo.

Q The searching that's the subject of the means for searching which permits you to search a database, selected portions of a database, what evidence did we see that that was present?

A That was the search index that selected only -- that searched only selected portions of the database.

Q Now, if Lawson provides such an electronic sourcing system to its customers and assists them in implementation, maintenance, servicing and all the training materials, guides, manuals, online services, etc., do you have an opinion as to whether or not all

is that right?

A It does not contain the term catalog.

Q I just want to have some clarity here if I can, because I want to make sure I understand it, on what constitutes the catalogs in the Lawson accused systems, and for this I think we can talk about all five configurations. So can you tell us, because I do recall the Judge had a question, so what is it?

A It's the item master and the vendor item table.

THE COURT: So that's a catalog?

THE WITNESS: It contains data from catalogs.

THE COURT: But is that a catalog within the meaning of the claim construction as you see it?

THE WITNESS: It is a catalog, and it is many catalogs. It's important that I make clear that it contains items from many catalogs, in the plural.

THE COURT: All right. And then is there any other catalog in the Lawson system?

THE WITNESS: No, sir. It has only one database.

Q I guess my question is, do those two tables need to have item data in them to constitute the catalogs?

A Absolutely.

Q So in addition to those two tables, we need actual data; correct?

A Oh, yeah. The tables are the repository of the data.

THE COURT: Before you leave that area, I'm confused,

and I'd like some clarification. Keeping in mind the Court's construction of the term catalogs/product catalog, are the Punchout catalogs also catalogs within the meaning of the claim construction in your opinion, or are they not?

THE WITNESS: They are.

THE COURT: So then there are two kinds of catalogs that we deal with. One is item master plus vendor item table, and the other is the Punchout catalogs.

THE WITNESS: Your Honor, you are correct, and the point I was trying to make is that the Lawson item master and vendor item table, which are collectively the database, you could -- it contains item data from many external catalogs.

Q We were referring to that internal catalog that you indicated is the item master table and the vendor table with data?

A Right.

Q As the internal catalog; is that right?

A Yes.

Q And this Punchout catalog, what's the shorthand we've been using to refer to those catalogs?

A Those are external catalogs.

Q And in particular, there was one claim -- I believe it was dependent claim two in the '516 patent -- which required catalogs to be stored separate databases; do you recall that?

A I have that in front of me.

Q So in that claim, what did you find constituting a separate database?

A Those were the separate databases of the external Punchout sites.

Q There was some questions about keyword search. If I search for a keyword, and it generates a matching item -- will it generate a matching item for any vendor who is offering items that match that keyword?

A Yes.

Q So if I use a keyword laptop, and the Lawson accused system has ten different catalogs, Dell, Hewlett Packard, IBM, Sony, that are all selling laptops, what will happen when I hit the enter button on that search?

A The search engine will find all of the items containing that keyword, display multiple items from multiple vendors.

Q So have I searched the catalogs that have any of those items that match my keyword?

A The ones that match the keywords, yes.

Q Could claim two also be satisfied by a system having internal database plus an external Punchout database?

A Sure.

THE COURT: Is that it?

MR. ROBERTSON: That's it, Your Honor. Thank you.

THE COURT: Ladies and gentlemen, we're going to take about a 15-minute recess.