1          IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
2                    RICHMOND DIVISION

3    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                        :
4    ePLUS, INC.,                       :
                                        :
5                        Plaintiff,     :
     v.                                 : Civil Action
6                                       : No. 3:09CV620
     LAWSON SOFTWARE, INC.,             :
7                                       : February 21, 2012
                         Defendant.     :
8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

9


10

            COMPLETE TRANSCRIPT OF CONFERENCE CALL
11         BEFORE THE HONORABLE ROBERT E. PAYNE
                UNITED STATES DISTRICT JUDGE
12


13


14


15   APPEARANCES:

16   Scott L. Robertson, Esq.
     Jennifer A. Albert, Esq.
17   David M. Young, Esq.
     GOODWIN PROCTOR
18   901 New York Avenue, NW
     Washington, D.C.   20001
19
     Michael G. Strapp, Esq.
20   GOODWIN PROCTOR
     Exchange Place
21   53 State Street
     Boston, MA   02109
22


23


24              DIANE J. DAFFRON, RPR
                OFFICIAL COURT REPORTER
25           UNITED STATES DISTRICT COURT

```
 1     APPEARANCES:   (Continuing)

 2     Craig T. Merritt, Esq.
       CHRISTIAN & BARTON
 3     909 E. Main Street, Suite 1200
       Richmond, VA   23219-3095
 4
             Counsel for the plaintiff ePlus
 5
       Daniel J. Thomasch, Esq.
 6     Josh Krevitt, Esq.
       GIBSON DUNN & CRUTCHER
 7     200 Park Avenue
       New York, NY   10166-0193
 8
       Jason Lo, Esq.
 9     GIBSON DUNN & CRUTCHER
       333 South Grand Avenue
10     4th Floor
       Los Angeles, CA    90071
11
       Timothy J. St. George, Esq.
12     TROUTMAN SANDERS
       Troutman Sanders Building
13     1001 Haxall Point
       P.O. Box 1122
14     Richmond, VA   23218-1122

15           Counsel for the defendant Lawson Software.

16

17

18

19

20

21

22

23

24

25
```

3

1              (The proceedings in this matter commenced at
2       2:00 p.m.)

3

4              THE COURT:  Hello.  This is ePlus against
5       Lawson Software, Civil No. 3:09CV620.
6              Beginning with counsel for the plaintiff, who
7       is here for whom?
8              MR. MERRITT:  This is Craig Merritt, Judge.
9       I'm here at the Goodwin Proctor offices with Scott
10      Robertson, Jennifer Albert, David Young and Michael
11      Strapp.
12             THE COURT:  All right.
13             For the defendant?
14             MR. THOMASCH:  Your Honor, this is Dan
15      Thomasch for Lawson.
16             THE COURT:  All right.  Is that it?
17             MR. THOMASCH:  No.  We also have on my
18      partners, Josh Krevitt and Jason Lo.
19             MR. ST. GEORGE:  And Tim St. George.  I'm on
20      the line as well.
21             THE COURT:  All right.  The law clerk got a
22      call about whether I wanted exhibits with 30(b)(6)
23      depositions or something.  I didn't understand what it
24      was that you all were asking, but we have a hearing
25      set for Monday; is that right?

4

1    MR. MERRITT:  Yes, sir.

2    THE COURT:  All right.  You'll be getting an

3 opinion today that will deal with all of the privilege

4 issues.  I've reviewed your materials and I don't need

5 any argument.  Some of them are going to have to be

6 produced and some of them are not.  And then you'll be

7 getting an opinion a little bit later in the week.

8 I've just gotten your things on Dr. Goldberg, your

9 materials or Dr. Goldberg.  You'll be getting an

10 opinion on that very shortly after that, too.

11    Is the reply due today?  Is that what it is?

12    MR. ROBERTSON:  Yes, Your Honor.  This is

13 Mr. Robertson.

14    We served it yesterday on Lawson, but we

15 could not file with the Court because it needs to be

16 filed under seal.  And I think that's actually

17 happening in the next hour and we're going to have a

18 courtesy copy delivered to chambers.

19    THE COURT:  All right.  When I get that, I'll

20 be in a position to make a decision on that, but I am

21 a little concerned about the question because it

22 portends that you propose to use deposition testimony

23 and, frankly, in a matter of this nature, I would

24 prefer to have the witnesses here so I can assess

25 their credibility.

5

1          So what is your plan, Mr. Robertson?  I don't

2    even know who placed the call, whether it was from the

3    plaintiff or the defense.

4          MR. JACOBS:  Your Honor.  It's Paul Jacobs.

5    I placed the call.  There was a logistical question as

6    to whether you wanted exhibits on 30(b)(6) depositions

7    with the deposition or kept with the exhibit binders.

8    And I think that's what prompted your inquiry.

9          THE COURT:  I see.

10          Well, I'm hopeful, Mr. Robertson, that I

11    don't have a lot of deposition testimony if we have

12    the witnesses here.  How many witnesses are you

13    calling, Mr. Robertson?

14          MR. ROBERTSON:  Your Honor, I can address

15    this.  I've just been -- Mr. Merritt has been in my

16    office all this morning.  We sat down and discussed

17    it.  We did file a bench brief with Your Honor on the

18    admissibility of deposition testimony and exhibits

19    under Rule 32.  I think Your Honor had actually

20    addressed this issue at the November 8 hearing.  And

21    we have tracked what Rule 32 provides.  I think you

22    even had this issue come up in the DuPont case that

23    you identified for us at the time, and that they can

24    come in for any purpose.

25          But could I let Mr. Merritt specifically

6

1    address your question after I tell you that we

2    anticipate six witnesses live, Your Honor?  Though, we

3    would like the opportunity, since we have taken

4    several depositions of critical witnesses, to help

5    establish both a timeline that Your Honor wanted with

6    respect to the injunction proceedings and to satisfy

7    our burden of proof that we have under the *Tivo* case.

8    We would like the opportunity, consistent with the

9    Federal Rule of Civil Procedure, to submit deposition

10   testimony and exhibits that were identified and

11   authenticated and discussed and described during those

12   depositions.  But I'll hand it over to Mr. Merritt who

13   has some things to add.

14         MR. MERRITT:  Judge Payne, I'm not sure I can

15   improve a lot on what Scott has just said.  I will say

16   we're trying to balance two things here.  We have

17   eight hours to put on evidence.  We understand the

18   burden that we're under, and we also want to have as

19   complete a record as possible on the things that Your

20   Honor has indicated are relevant to the Court starting

21   back in September.

22         We have several witnesses we intend to bring

23   on, including Mr. Hager who testified back in March.

24   The experts, of course, will be heard and

25   cross-examined live.  But there are several Lawson

1   30(b)(6) designees who gave depositions in connection

2   with this proceeding, and we would like in order to

3   use our eight hours well and to focus on critical live

4   witnesses but not shortchange ourselves on the record

5   to use Rule 32(a)(3) to give the Court summaries of

6   certain witnesses and the exhibits that they

7   referenced in their depositions as a way of having a

8   complete record without having to call a dozen people.

9           THE COURT:  I don't use the summaries

10  provided for except for purposes of ruling on the

11  admissibility of deposition transcripts.  It gets me

12  there quickly, and I can understand the background,

13  and so forth, and I don't have to read the whole

14  deposition.

15          These 30(b)(6) witnesses, they are all of

16  Lawson's people, aren't they?

17          MR. MERRITT:  Yes, sir.

18          THE COURT:  How many of them are there?

19          MR. MERRITT:  I'm looking at Christopherson,

20  Dooner, Hanson, Homewood, Samuelson.  That's five.

21          THE COURT:  Are you willing to bring those

22  people to trial, Mr. Thomasch?

23          MR. THOMASCH:  Yes, Your Honor.  There were

24  seven that were on ePlus's list.  We represented to

25  the Court on November 8 we would bring them all live.

1    We preferred the Court to hear them and see them.

2    That remains our preference.  We think it's critically

3    important.  We will bring them, including Mr. Hager,

4    who is a former employee outside the jurisdiction of

5    the subpoena power of the Court, but he has agreed,

6    volunteered to come down, and all of our witnesses

7    will either be on site to testify or we have indicated

8    that we will bring them if ePlus wishes to call them

9    in their case.  Every one.

10            THE COURT:  Well, Mr. Robertson or

11   Mr. Merritt, why wouldn't you just call them live and

12   then you can ask them the questions that you asked

13   them in the deposition?  And if they vary from it, you

14   can impeach them with it.

15            MR. MERRITT:  Judge Payne, we are perfectly

16   happy to proceed that way.  The difficulty that

17   presents is that we know as we sit here right now

18   that's not going to be accomplished in the eight hours

19   that we've got assigned for this.  So we were trying

20   to find a way to honor both the eight-hour limitation

21   and the creation of a complete record.

22            THE COURT:  I can understand that,

23   Mr. Merritt, but so much of the issues raised here are

24   credibility questions, and listening to people and

25   seeing what they say is critical.  And if you're going

1   to be playing the depositions -- are they videotaped
2   depositions?

3          MR. ROBERTSON:  Yes, they are, Your Honor,
4   but we've already, pursuant to the Court's scheduling
5   order, complied with Your Honor's requirement that we
6   do designations and cross designations and fairness
7   designations.  So what we were planning on doing, of
8   course, is just submitting those to the Court.

9          THE COURT:  I'm not going to read those
10  things, Mr. Merritt, if I have a live witness instead.

11         I thought I made clear, maybe I just didn't
12  say it right, I'm sorry, but I thought I made clear a
13  long time ago in this case that it would be preferable
14  to have the live witnesses, and I even asked
15  Mr. Thomasch if he would bring them, and he said he
16  would.  So I don't know why I'm having to deal with
17  the depositions now.  That just shifts the whole
18  burden.  This is a very technical area.  And it shifts
19  the whole burden of analysis to the Court without
20  having the benefit of hearing what the witness
21  actually had to say, and it truncates it and makes it
22  very difficult.  So I would prefer not at all to do
23  that.

24         MR. MERRITT:  Judge, we understand that
25  completely, and we're happy to proceed that way, but,

1  again, we have a duty to be candid with the Court

2  about time, and even being very efficient with these

3  witnesses we can't foresee getting that done in eight

4  hours.

5       THE COURT:  How long will it take to get it

6  done?

7       MR. MERRITT:  Probably 15.

8       THE COURT:  I don't understand this.  You're

9  litigating the whole case over again if you're trying

10  that.  It didn't take that much longer than that to

11  try the whole case.

12       MR. THOMASCH:  Your Honor, this is

13  Mr. Thomasch.  May I address that point briefly?

14       THE COURT:  Yes.

15       MR. THOMASCH:  Because there is one issue on

16  which this case was commenced, and that is the Tivo

17  issue that we briefed to Your Honor that is the

18  centerpiece of our defense which relates to the

19  changes made to the infringing configurations, whether

20  they are more than colorably different.  And if they

21  are not, whether they are infringing.

22       That case can go on in four days.  There is

23  no doubt about it and we are ready with our witnesses

24  to do so.  It is largely a battle of experts, but,

25  frankly, because this is a source code case, the

1    changes themselves really aren't subject to dispute.

2    What's subject to dispute is the significance of them

3    and whether they infringe.  It can be done in four

4    days.

5         The other two issues that are cluttering this

6    case up are, first, a set of issues about whether or

7    not Lawson did something improper in its unsuccessful

8    attempt to avoid an injunction, and that issue we are

9    prepared to address because we want the Court to hear

10   that story if the Court is interested.  It has nothing

11   to do with whether we are in contempt, but we are

12   willing to bring our witnesses.

13        Mr. Hager will come.  Anyone will come that

14   you want to hear.  If you want to hear Mr. McDonald,

15   who was prior counsel, he has volunteered to come.

16   Whatever we need to do to satisfy Your Honor's

17   interest in that we will do, but it is not the Tivo

18   issue and it has nothing to do with the Tivo issue.

19        THE COURT:  Mr. Thomasch, excuse me just a

20   minute.  I'm sorry.  I have a sort throat and it's

21   hard to talk, but you might slow down just a little

22   bit.

23        MR. THOMASCH:  I'm sorry, Your Honor.  You're

24   100 percent right.

25        The third issue, Your Honor, that is again

1    causing, in effect, this clutter is the question of

2    whether subsequent to the introduction of RQC, which

3    is the design-around product that was brought out at

4    the end of May, whether subsequent to the introduction

5    of that Lawson in any way improperly continued to deal

6    with the customers that it was trying to get to move

7    from RSS, the infringing configuration, over to RQC.

8            There are allegations that there were

9    violations of the restriction on the ability to

10   service those customers.  We dispute those

11   allegations, but those involve seemingly endless

12   numbers of documents and individual service calls with

13   individual clients.

14           Again, I don't want to say it's irrelevant or

15   the Court shouldn't hear about it.  We will defend any

16   charge brought against us, but the centerpiece of this

17   case is Tivo, and we would suggest that at least we do

18   that first because that really should end it.  And it

19   can be done in four days.

20           THE COURT:  Has somebody got a duck in the

21   background?  Somebody has a duck or a dog that's

22   barking, it sounds like.

23           MR. THOMASCH:  Not here, Your Honor.

24           MR. MERRITT:  Your Honor, this is Craig

25   Merritt.  I would like to address Mr. Thomasch's

1    comment if I could.

2          There's no question that the Tivo analysis is

3    a centerpiece of this proceedings that we're going to

4    start on Monday, but I recall being on a conference

5    call.  I believe it was September 15.  I won't quote

6    the exact date, but I believe it was, with the Court,

7    and one of the things that Your Honor made very clear,

8    made crystal clear, in that call was that you asked

9    ePlus to develop a record of the timeline of the

10   development of this new product, and particularly in

11   light of what was or was not said about the

12   development of that new product when we had an

13   evidentiary hearing on March 25, 2011.  And that is a

14   critical piece of this proceeding as well that I can

15   understand Lawson would not be terribly interested in

16   spending time on next week, but Your Honor directed us

17   at the beginning of this process to develop a full

18   record on that because that was a matter of great

19   interest to the Court.

20         THE COURT:  I remember what happened.

21         What about the issue of the servicing?  Isn't

22   that an injunction issue or is it not an injunction

23   issue?  And is it a contention of yours, ePlus, that

24   that's a ground for a finding of contempt, that they

25   violated some provision of the injunction dealing with

1  servicing?

2      MR. ROBERTSON:  Yes, Your Honor.  This is

3  Mr. Robertson.  Of course it is.  In fact, we think

4  the very notice letter that the Court commanded Lawson

5  to send out with the injunction to all their customers

6  indicated that they can continue to use RSS.  And,

7  therefore, the injunction order specifically specified

8  that they cannot encourage the use of RSS.  And the

9  CEO of Lawson said, You may continue to use RSS.

10  You're doing nothing wrong.  Which, obviously, is

11  encouraging the infringement.

12      They continue to maintain and service the

13  infringement, we believe the evidence will show, after

14  the injunction occurred.  They represented to their

15  customers in documents we will be offering in evidence

16  that you can run RSS in parallel with RQC, the

17  allegedly modified product, and then the testimony

18  will also show that Lawson knows that not 100 percent

19  of the 863 customers that were using the infringing

20  configuration downloaded RQC.  They know that.  And

21  they also, we elicited testimony, that they have no

22  idea who implemented or installed RQC and if, in fact,

23  their customers are actually operating that.

24      They, in a sense, buried their head in the

25  sand with respect to that in compliance with the

1  injunction order.  So, yes, we are certainly going to

2  be proffering that kind of evidence and testimony and

3  documentation.

4       THE COURT:  I'm sure you'll go back and

5  review what you just said, but I have to tell you it

6  was right confusing to me because it sounded to me

7  like you said that they buried their head in the sand

8  in compliance with the injunction order, and I don't

9  think the injunction order said anything like that.

10  But I'll let you sort that out.  I don't think that's

11  what you meant.

12       MR. ROBERTSON:  I certainly meant, Your

13  Honor, they couldn't encourage the continued use of

14  RSS.  And to tell their customers they could continue

15  to use it and tell their customers they could run it

16  in parallel with RQC and to tell their customers all

17  they needed to do was download RQC and they'd be

18  vaccinated against the injunction I think is in direct

19  contradiction of the express language of the

20  injunction order.

21       MR. THOMASCH:  Again, Your Honor, I won't

22  belabor the point.  Obviously, we could not disagree

23  more with this sort of trial by snippet that

24  Mr. Robertson engages in.

25       If these are issues, we will meet them.  We

1  are happy to meet them.  It will take more time, but

2  that is fine.  Our witnesses are coming.  And if the

3  question is whether our witnesses did something wrong,

4  the best way to decide that is for you to see and hear

5  the witness and actually see the documents themselves

6  and not read a characterization of a part of the

7  document, which is what's happened to date.

8         THE COURT:  Well, I'm sure that will all

9  happen when we hear the case.

10        Now, here's what I would prefer, folks.  I

11  would prefer that the testimony be put on live, that

12  if you want to impeach somebody, you can impeach them.

13        You might understand, Mr. Thomasch, that if a

14  witness has said one thing in the deposition, and he

15  says another at trial, he's going to be impeached.

16        MR. THOMASCH:  Understood.

17        THE COURT:  So when he gets asked, was the

18  light green or red or was the light green, and, in

19  fact, he has testified that it was red at deposition,

20  he can't reframe the question to say whether or not

21  the light had any green in it or not, and he can't

22  restate things.  And I'm not going to have that.  So

23  your witnesses are going to answer the key questions

24  just as they answered them before, I assume.

25        MR. THOMASCH:  We'll answer them absolutely,

1    Your Honor.  I do think we'll benefit by being in

2    court because my guess is the questions will become

3    simpler and more straightforward and more subject to

4    those answers.

5             THE COURT:  I think they will, too.  So

6    that's what I would like to do.

7             Now, by the same token, the Federal Rules do

8    permit a party to use a 30(b)(6) deposition in a

9    binding form.  So you can continue your efforts to do

10   that as part of your case, but it would seem like that

11   that would be a very small part of the case and that

12   you could assess the extent of the need for that kind

13   of testimony after you have heard the witnesses

14   testify.

15            Does that help you at all, Mr. Robertson?

16   Does that help you understand what I want?  I've tried

17   to be clear.

18            MR. ROBERTSON:  Yes, sir, Judge.

19            THE COURT:  I cannot believe it's going to

20   take 15 hours to do this.  But if it does, then I'll

21   have to deal with whatever this preference has

22   wrought, but I just don't expect that it will do that.

23   So I suspect you can work hard to sort all that out

24   and get it straight.

25            MR. THOMASCH:  Your Honor, may I address one

```
1    subject because we do have a meet and confer today,
2    and it might help the parties in their meet and
3    confer?
4              THE COURT:  All right.
5              MR. THOMASH:  And that is the meet and confer
6    today is about the objections to depositions, and
7    depending on how many depositions may actually be
8    offered into evidence, it may save us time as to
9    whether we have to confer about objections or we'll
10   just deal with that in court with the witnesses live
11   and on the stand.
12             And our issue is there are no witnesses here
13   who were just 30(b)(6) witnesses.  All of the
14   witnesses who were identified as 30(b)(6) witnesses in
15   the 25 different categories that the plaintiffs had
16   for 30(b)(6), they came and they were also given a
17   notice under 30(a) to be personal witnesses, to
18   testify in their individual capacity.
19             When we started the deposition process,
20   Lawson attempted to segregate those two and said, All
21   right.  This is a 30(b)(6) witness and an individual
22   witness.  Please take the 30(b)(6) portion of your
23   deposition first so we have a clean record.
24             THE COURT:  Yes, that's what you're supposed
25   to do.
```

1    MR. THOMASCH:  And they said, No, we won't do

2    that.

3    THE COURT:  Well, that's what you're supposed

4    to do.

5    MR. THOMASCH:  They simply refused to do it

6    and now what we have is every transcript is a mix on a

7    question by question basis and the disputes about

8    whether it's within or without the scope of this, and

9    it was legion.

10    So if we get into the 30(b)(6) transcripts,

11    there is no such thing as a 30(b)(6) transcript in

12    this case.  There's a 30(b)(6) slash 30(a) transcript

13    that varies on a question by question basis, and we

14    will be dealing with objections from now until the

15    beginning of the trial.  If we are in court, it will

16    be much, much easier.

17    THE COURT:  Well, I believe, Mr. Robertson,

18    that if that happened, that's a most unfortunate

19    development because the way you deal with 30(b)(6)

20    depositions is to take the 30(b)(6) deposition and

21    then say, That's the end of the 30(b)(6).  Now we're

22    going to talk about your own personal knowledge.

23    So if you did what he said, you've created a

24    terrible situation for yourself and for me, and that

25    is troublesome to me.  So I hope you can work that out

1   because that's going to have an awful lot to do with
2   how you designate things, I would think.
3           MR. ROBERTSON:  Your Honor, I think the
4   witnesses were asked things that were in the scope of
5   the topics in which they were designated.
6           THE COURT:  That's not the question.  That's
7   not the question at all.  That's not the point he was
8   making, Mr. Robertson.  The issue was:  Were they
9   asked things within the scope as 30(b)(6) witnesses?
10  You do not take a 30(b)(6) deposition and intermingle
11  personal knowledge testimony with it.  You get it all
12  done.  It's perfectly all right to take it at the same
13  sitting, but you discretely end it.  And if you didn't
14  do that, that's your problem because you know and I
15  know that that's the way you take those depositions.
16  And the consequence of not doing it is you may not be
17  able to use them as a 30(b)(6) deposition.
18          I hope that's not where you are.  I hope
19  Mr. Thomasch and you can work out something.  But
20  there's a right way and a wrong way to do things, and
21  it's doing things the wrong way that creates problems
22  in the administration of trials.  And that's why the
23  rules exist the way they do.
24          So I hope you can deal with all that and sort
25  it out.  I would expect that you would be able to get

 1  yourselves sorted out, though, in your conference
 2  today.  It may be -- and what I've done in the past is
 3  this:  If you're willing to bring the witnesses and
 4  deal with them, you may want to defer the whole
 5  question of the depositions and what you're going to
 6  offer until after the witness has testified, have some
 7  people sit down and sort that out before the trial is
 8  over, work it out in the evenings or on the weekends,
 9  or whatever you've got to do, and then come up with a
10  very limited set of depositions that are useful at
11  trial.
12          MR. ROBERTSON:  I think that might make
13  excellent sense, Your Honor, given some of the
14  guidance you have provided today.  Because we would
15  have a lot to do this afternoon at 4:30 in order to
16  comply with the Court's scheduling other.  We still
17  have to do objections to the exhibits to work out by
18  Wednesday.  I think there's a number of additional
19  briefing that's going to be submitted tomorrow.
20          THE COURT:  Just so both of you will
21  understand something.  There is a finite amount of
22  time that I can devote to the case and to each of the
23  issues in the case.  And in a bench trial oftentimes
24  it's best to deal with the -- I may just have to deal
25  with the objections at the trial.  I don't know.

1          All right.  So you all see what you can do

2    about cleaning this situation up, if you will, and

3    then we'll go from there.

4          Is there anything else we need to do today?

5          MR. MERRITT:  No, sir.

6          MR. THOMASCH:  No, sir, Your Honor.

7          THE COURT:  All right.  Thank you all very

8    much.

9          MR. MERRITT:  Thank you.

10          THE COURT:  Bye.

11

12          (The proceedings were adjourned at 2:27 p.m.)

13

14          I, Diane J. Daffron, certify that the

15    foregoing is a correct transcript from the record of

16    proceedings in the above-entitled matter.

17

18                    /s/
     _____    _____
19    DIANE J. DAFFRON, RPR, CCR        DATE

20

21

22

23

24

25