```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4

 5

    ---------------------------------------
 6                                       :
    ePLUS, INC.                          :    Civil Action No.
 7                                       :    3:09CV620
    vs.                                  :
 8                                       :
    LAWSON SOFTWARE, INC.                :    February 23, 2012
 9                                       :
    ---------------------------------------
10

11

12          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13         BEFORE THE HONORABLE ROBERT E. PAYNE

14              UNITED STATES DISTRICT JUDGE

15   APPEARANCES:

16   Scott L. Robertson, Esquire
     Goodwin Procter, LLP
17   901 New York Avenue NW
     Suite 900
18   Washington, D.C.  20001

19   Craig T. Merritt, Esquire
     Paul W. Jacobs, II, Esquire
20   Christian & Barton, LLP
     909 East Main Street
21   Suite 1200
     Richmond, Virginia  23219-3095
22   Counsel for the plaintiff

23

24              Peppy Peterson, RPR
               Official Court Reporter
25           United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Dabney J. Carr, IV, Esquire
      Troutman Sanders, LLP
 3    Troutman Sanders Building
      1001 Haxall Point
 4    Richmond, Virginia  23219

 5    Daniel J. Tomasch, Esquire
      Josh Krevitt, Esquire
 6    Gibson Dunn
      200 Park Avenue
 7    New York, New York 10166

 8    Jason Lo, Esquire
      Christopher D. Dusseault, Esquire
 9    Gibson Dunn
      333 South Grand Avenue
10    Los Angeles, California  90071
      Counsel for the defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3            THE COURT:  Hello.  This is ePlus against Lawson,

4    docket number 3:09CV620.  Who is here for who starting with

5    counsel for the plaintiff?

6            MR. MERRITT:  Your Honor, Craig Merritt and Paul

7    Jacobs are here on behalf of the plaintiff as well as Scott

8    Robertson, and he may have Mr. Strapp on the line with him by

9    now.

10           THE COURT:  Are thee there, Mr. Strapp?  Mr.

11   Robertson?

12           MR. MERRITT:  Hold on just a moment.

13           THE COURT:  I don't think Mr. Robertson or Mr. Strapp

14   are there.

15           MR. MERRITT:  Let's see if I just fixed that problem.

16   Do we have all counsel on the line now?

17           MR. ROBERTSON:  Mr. Robertson's on.

18           MR. MERRITT:  Judge, that was my fault.  I hadn't

19   transferred everybody together yet.

20           THE COURT:  Mr. Robertson is on.  Is Mr. Strapp on?

21           MR. ROBERTSON:  (Inaudible.)

22           THE COURT:  We can't hear you, Mr. Robertson.

23           MR. ROBERTSON:  I'm sorry, sir.  I forwarded the

24   call-in number, and I don't hear him on the line.

25           MR. MERRITT:  We can proceed without him, Judge.

1          THE COURT:  For the defendants?

2          MR. CARR:  Judge, for the defendants we have Dabney

3    Carr, Troutman Saunders, and from Gibson Dunn we have Josh

4    Krevitt, Dan Tomasch, Jason Lo, and Christopher Dusseault.

5          THE COURT:  We're having a little trouble hearing you

6    at the beginning, Mr. Carr, but it seemed to pick up as you

7    went on.  So make sure all of you speak up and give your name

8    when you speak.  I'm not sure who asked for this call.  Who

9    summonsed me to be in your presence?

10          MR. MERRITT:  Judge, this is Craig Merritt.  We

11    probably started this early this morning when I spoke to your

12    secretary to check on your availability.  Since the Court

13    entered its order Tuesday afternoon on the attorney-client

14    privilege waiver, we have been, as you know, marching day by

15    day towards a hearing that's scheduled for Monday, and we have

16    been in some discussion with counsel for Lawson in order to

17    understand what their intentions are.

18          The options seem reasonably obvious.  I suppose they

19    could produce the material promptly, they could seek

20    reconsideration, or I suppose they can even seek mandamus.  The

21    last advice we had on those items was that as of last night,

22    they expected a final decision on mandamus presently.  We spoke

23    this morning, and it's clear that they do not believe that they

24    can produce the materials even by close of business tomorrow

25    and that the production may continue into sometime next week.

1              THE COURT:  Why not, did you say?

2              MR. MERRITT:  Judge, I don't know.  I'm trying to

3       report what we've been --

4              THE COURT:  Okay, I see.

5              MR. MERRITT:  What I'm suggesting is that as the

6       hours tick by, it becomes plain that ePlus's ability to

7       actually receive, review, and utilize material in time to have

8       a hearing on Monday is -- the window is closing if it hasn't

9       already closed, and we thought we'd get some -- hopefully some

10      clarity from Lawson as to what they intend and some guidance

11      from the Court as to where you expect the parties to go from

12      here.

13             THE COURT:  Mr. Tomasch --

14             MR. TOMASCH:  Your Honor, Dan Tomasch for Lawson.

15             THE COURT:  Yes.

16             MR. TOMASCH:  We did have a call with plaintiff's

17      counsel this morning.  We have, since Tuesday afternoon, been

18      doing things on two fronts.  One, we have been full-time

19      working to prepare the documents for production in the event

20      that we were not going to challenge the memorandum order of

21      Tuesday afternoon while simultaneously, as Your Honor I'm sure

22      will appreciate given the enormous gravity of the issues, the

23      importance of these matters always when dealing with privilege,

24      but in dealing with privilege of a substantial quantity of

25      documents on the eve of trial, we had to deal with our client

1    and consider what the best appropriate course of action was.

2         We have been engaged in a very significant discussion

3    within our trial team, because we were ready to go to trial on

4    the *TiVo* issues.  This is, unfortunately, seeming to us to be a

5    very great expansion of the issues, and that is putting us in a

6    very difficult position.

7         We wanted to find out from plaintiff's counsel what

8    they thought the implications of the decision were.  I think we

9    got some guidance from them this morning in a conversation with

10   Mr. Merritt that was helpful to us.  We further went back to

11   our client who themselves have to be dealing with this issue.

12        Your Honor's order, of course, suggests that conduct

13   of the lawyers on the trial team constituted one ground for the

14   waiver, and so we needed to make sure that they understood and

15   were independently considering all these issues.  They are too

16   important to be dealt with quickly, and we are not dealing with

17   them as a matter of tactics but as a matter of what we think

18   the client's interests are and what their rights are under the

19   situation with regard to privileged documents.

20        At any rate, within the last hour, we have been not

21   only authorized but directed by Lawson to file a petition of

22   mandamus with the Court of appeals for the Federal Circuit.

23   Obviously, if Your Honor was amenable to or wanted us to do

24   some other form of motion practice, we could discuss that, but

25   right now our intention is to file a petition for mandamus, and

1    to that end, Your Honor, we would in this phone call, and we're

2    happy to supplement that with papers if that's Your Honor's

3    request, but we would certainly ask Your Honor for, one, a stay

4    of the trial, the hearing that is set to commence on Monday

5    morning, and secondly, a stay of any obligation of Lawson to

6    comply with the disclosure obligations put in place by the

7    order of February 21st.

8              Your Honor will, I'm sure, recall that you did not

9    put a specific date and time by which we needed to produce the

10   documents in that, but we want to make sure that we're not

11   running afoul of a court order, and so we would ask the Court

12   to, in effect, stay that until such time as we have a chance to

13   have the Federal Circuit issue an order on the subject matter.

14             We anticipate filing our petition for mandamus

15   promptly.  It is our every expectation that the petition will

16   be on file in the Federal Circuit by the close of business on

17   Monday, but, obviously, if we are -- what relief we seek as far

18   as interim relief or stays from the Federal Circuit depends on

19   Your Honor's position, and we would request Your Honor to allow

20   us to let that run through its normal course without the

21   complications of having to deal with an obligation to produce

22   documents under the memorandum opinion or to deal with the

23   trial, because, frankly, anything we would do at trial is going

24   to be, in effect, redone after the documents are produced if

25   that is the ultimate ruling of the Court, and we are not

1    simultaneously able to do what we need to do in the Federal

2    Circuit and try the case on the same day.

3            So we would ask Your Honor to stay both compliance

4    with the order and the trial while we work this through, and

5    what we would suggest is that whenever the Federal Circuit

6    reaches a decision on this, that the parties be directed in

7    advance to confer with each other within 48 or 72 hours to try

8    to reach a joint proposal for the Court's consideration as to

9    how to best proceed, because in the event that the Federal

10   Circuit were to find that the documents -- the privilege has

11   been waived and that the documents have to be produced, then we

12   will, of course, be doing so, but that will, in our mind,

13   necessitate a whole host of procedures from understanding which

14   of the documents -- we're talking about a large quantity.

15           Mr. Robertson informed me this morning it was his

16   opinion that it was more than 7,500 documents.  I don't think

17   he's far from the mark in that regard, Your Honor, and if

18   that's the quantity of documents we're talking about, I

19   anticipate that both sides would want to augment their exhibit

20   list, and I'm certainly 100 percent certain that if all of our

21   privileged documents are being produced, that the lawyers

22   involved in the creation of those documents will be individuals

23   who we'll want to add to our witness list.

24           So we will need to work out some procedures for what

25   we would suggest to the Court.  The parties may or may not be

1    able to agree on that, but I think it would be of benefit to

2    have the parties meet before we go back to the Court, and we

3    would be happy to do that, no matter what the result of the

4    Federal Circuit's decision is, very promptly after the decision

5    comes down.

6              Two or three days should allows us each to understand

7    what the ramifications are, to speak to our client, and then

8    speak with each other and notify the Court of the nature of the

9    decision and the pathway forward to a trial of this matter

10   which we look forward to.

11             THE COURT:  Mr. Robertson.

12             MR. MERRITT:  Your Honor, this is Craig Merritt, if I

13   might.

14             THE COURT:  All right.

15             MR. MERRITT:  I heard Mr. Tomasch making three

16   points, and I'd like to respond to each of the three points.

17   First of all, with regard to Lawson's request to stay

18   compliance with your order requiring disclosure, we do not

19   consent to a stay of that.  We think that the order should

20   remain in place and that Lawson should produce the materials

21   forthwith.  Our view is they should have started producing some

22   of the more obvious ones already.

23             Second, with regard to a stay of the hearing that

24   starts Monday, we do not object to that.  I'm sure -- I believe

25   that it's a matter of right for them to seek mandamus.  It's

1    obvious that that will defer our ability to seek any of the

2    documents that the Court has ordered.

3            Our client has been very clear with us that they

4    cannot afford to litigate this piecemeal.  They are being bled

5    by this process.  We need to have one hearing at which people

6    are fully prepared, so we would not object to a stay of the

7    proceedings Monday until this is resolved.

8            The third point is, what I'm hearing from counsel for

9    Lawson is that even if the Federal Circuit rejects their

10   petition for writ of mandamus, they are keeping the door open

11   to some form of interpretation or quibbling over your order,

12   and I just want to confirm that that's what I'm hearing from

13   Lawson and not misunderstanding it.

14           THE COURT:  I'm sure Mr. Tomasch would not

15   characterize it as quibbling.

16           MR. TOMASCH:  Neither quibbling nor -- I think there

17   clearly is a misunderstanding.  Absolutely not.  We do have a

18   right of mandamus, and I must say that we treat that very

19   seriously.  We are not running to the Court because of timing

20   or tactical issues.

21           This is an issue of -- there is a subject matter

22   waiver that has been ordered that affects thousands of

23   documents.  It is a matter of enormous importance to us, and

24   we've taken it very seriously.

25           We will pursue our full appellate rights.  If we lose

1   that appeal, we will produce each and every document that Your

2   Honor ordered to be produced, and we'll produce them as quickly

3   as is possible.  That is not at issue at all.

4           I am assuming complete production if we lose in the

5   Federal Circuit, and that suddenly changes the complexion of

6   this case because we now have -- let's just use Mr. Robertson's

7   numbers -- 7,500 new documents entered into the case, and the

8   notion that -- I assume that Mr. Robertson will want to use

9   many of those documents, and, of course, if we opened up the

10  issues in this manner, we will, ourself, assert this.

11          We will show that this was not a sham, this was done

12  properly, and we will need to do so with exhibits and

13  witnesses.  So, in effect, the attorney-client privilege has

14  always been a constraint on our ability to defend this case in

15  full but one that we felt that we had to do because privileges

16  need to be respected.

17          Now that the privilege has been vacated if that is

18  the ruling of the Court, we will -- and that ruling is

19  affirmed, we will 100 percent comply.  We will do so

20  immediately, but we will then want to talk with Mr. Robertson

21  and ultimately with the Court about now how do we deal with the

22  fact that there are new issues, new witnesses, new exhibits to

23  be dealt with.

24          MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

25  Can I just briefly respond to some of these comments being

1    made?  I do want to reemphasize --

2              THE COURT:  Speak up there, would you.

3              MR. ROBERTSON:  Yes, sir.  I do want to reemphasize,

4    that, yeah, my client does not want to try this case twice, so

5    we need to go through this exercise.  As far as the writ of

6    mandamus goes, we went and looked at the rules this morning.

7              Quite frankly, they can file their motion, and I

8    heard them say that they were going to file their motion by

9    Monday close of business.  That's fine.  We don't even need to

10   respond unless the Federal Circuit tells us.  Typically, these

11   things are dealt with within a week or two weeks at most.

12             If we don't need to respond, they're dealt with quite

13   quickly, and as I read Your Honor's order, it actually -- you

14   know, it dealt with procedural issues that are not really

15   germane to the Federal Circuit's mission, if you will.

16             So I don't think this is going to delay things much.

17   I don't know what the Court's docket is.  I'm sure the Court is

18   very busy.  No doubt this is going to delay things.

19             Of course, we want to look at, and, you know, if Mr.

20   Tomasch is going to accept that I've identified probably

21   7,000-plus documents that need to be produced, we're going to

22   want to go through this.

23             Again, I don't want to turn this into a whole other

24   three-week trial, but we are going to want to look and examine

25   those documents.

1          May I make one constructive suggestion that actually

2    was consistent with something Mr. Tomasch suggested last week,

3    and that is the Court has set aside some time next week for

4    this hearing, obviously, and there are a number of motions that

5    are being submitted to the Court including -- I think Lawson

6    has three motions pending that they are submitting replies to

7    the Court at 8:00 p.m. on Friday night.

8          It might make sense, if the Court has some time

9    available, that we advance the ball with regard to those

10   motions such that we can put those things behind us.

11         I know Your Honor has the motion that we filed to

12   strike portions of the Goldberg expert report.  That's fully

13   briefed, and the Court indicated that it did need argument on

14   it.  There's also the motion that Lawson filed on the

15   sequestration which has not been fully briefed but will be.  I

16   don't know that the Court needs argument on that, but there are

17   other motions that are important.

18         Perhaps we can utilize time somewhat.  Since I

19   understand all of Lawson's counsel are resident now in

20   Richmond, although I am still here in D.C., but perhaps we can

21   utilize some time, depending on the Court's pleasure, to

22   advance the ball if we're not moving forward on the hearing.

23         THE COURT:  Let me ask you this question, Mr.

24   Robertson:  With respect to the documents that are the subject

25   of the order directing that they be produced that you all are

1   calling the 7,500 privilege documents, what issues do you see

2   those documents going to?  I mean you asked for them for a

3   reason.  You're bound to know, have some sense for what they're

4   all about based upon what was said about them in the various

5   depositions, et cetera.  So what do you see them going to?

6           MR. ROBERTSON:  That's an excellent question, Your

7   Honor.  I mean -- but first, let me just say, to be fair, I

8   don't know what I don't know because --

9           THE COURT:  Well, that's good.  We got that one down

10  pat.

11          MR. ROBERTSON:  A lot of the documents were redacted,

12  and so -- but they involved the RTC development.  I think it's

13  all lawyer-driven.  I think it's going to show that the changes

14  are insubstantial under the *TiVo* standards.  I think it's going

15  to show --

16          THE COURT:  You think it goes to -- you think the

17  evidence is pertinent as to whether or not there's a

18  more-than-colorable difference between RQC and RSS; is that

19  what you are saying?

20          MR. ROBERTSON:  That's part of it, Your Honor, but I

21  think what's going to be more important, I think what the Court

22  has always been concerned about is the integrity of the

23  process, what was represented to the Court in the March 25th

24  hearing on the injunction while at the same time they had fully

25  tested and had RQC ready to go but did not inform the Court

1    about that while at the same time they were suggesting that

2    Lawson would suffer irreparable harm.

3           I think -- I'll be honest with Your Honor.  I think

4    this is going to be a treasure trove of information that's

5    going to inform the Court as to what was really going on behind

6    the scenes and whether or not these are colorable differences.

7    Absolutely.

8           THE COURT:  Let me ask you this question:  Why don't

9    we just go on with the trial except for the issue of what

10   happens with the privileged documents and then leave the record

11   open, and then if when they are produced they make a difference

12   to you or Lawson, then we'll have a supplemental hearing on the

13   limited topics which they raise?  That way you all can get your

14   record straight and they can be appealing, filing the mandamus

15   to the Federal Circuit and we can be proceeding.

16          And the fact of the matter is what happens is the

17   Federal Circuit will decide to call for a response or not, and

18   if it calls for a response, then it is a delayed proceeding,

19   because then what happens is briefs are filed and reply briefs

20   are filed and hearings -- generally an oral argument is held.

21   It doesn't always have to be, but many of their decisions

22   indicate -- show that there have been arguments.

23          These issues have been decided after arguments.  So,

24   of course each panel decides how they want to handle things

25   differently, but I don't think that -- it just occurs to me

1    that we might be productively using the time that we have

2    already set aside to take the evidence in the case,

3    particularly on the issues of the change.

4              MR. MERRITT:  Judge, this is Craig Merritt.  Just to

5    reiterate, I alluded to earlier, I did not speak to ePlus

6    management today, but I know that Mr. Robertson spoke to them

7    midday, and we, as I'm sure Lawson has with its client, have

8    been talking about all the different permutations that might

9    develop here.

10             One message that we got very loud and clear from our

11   client is, for God's sake, please do not let this turn into a

12   series of hearings, because the expense of this is becoming

13   extremely crushing on us.

14             And so as an abstract exercise, I agree that we could

15   do precisely what Your Honor just suggested, but we're trying

16   to be sensitive to the fact that once we start to do this, we

17   would like to do it with all the evidence that's available, get

18   it on the recorded, and get it concluded in one sitting.  And

19   I'll be quite candid, that is an expense concern for ePlus.

20             MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

21   Let me just reiterate.  I mean, we did have a meet-and-confer

22   with Lawson, and I heard just on the call now the suggestion

23   that additional witnesses may be implicated.

24             Let me just give you a hypothetical.  I mean, if

25   these documents are turned over and we need the deposition of a

1    Mr. McDonald, who Lawson has already offered up as a witness,

2    we may need to do that in order to have this hearing.  We

3    understand the parties have limited resources, but the Court

4    also has limited resources, and, you know, from our discussion

5    with Lawson today, and they can disabuse me right now on the

6    phone call, but if we could agree on one thing, and we often

7    can't, we did agree that we wanted to do this most efficiently

8    as possible.

9           So from ePlus's standpoint, we'd like to see how this

10   mandamus plays out, get the documents, supplement the exhibit

11   list, determine if other witnesses need to be identified, and,

12   unfortunately, there may be additional motion practice before

13   the Court if we can't resolve these issues, although I think,

14   you know, we are trying our best to do that.

15          But I don't know that it's efficient, and I certainly

16   know that from my client's perspective, they are very concerned

17   about the legal expenses.  As Your Honor indicated, this is the

18   second longest case pending on its docket, and that's -- you

19   know, I'm very mindful of that.  So I don't want the Court to

20   have to do this twice either.

21          If Lawson wants to advance another viewpoint, we'd be

22   happy to hear it, but I thought from our conversation today,

23   you know, at least we felt we needed to resolve this.  I asked

24   them at 11 o'clock if they could tell us by three o'clock if

25   they were going to seek a writ of mandamus, and, you know, I

1    heard it for the first time on this call.

2            Now I understand what I need to focus on in the short

3    term, and if they're filing it Monday, Your Honor, I may need

4    to be dealing with that, you know, shortly thereafter.

5            If the Court doesn't think it productive to address

6    some of these other motions with some of the time, we can put

7    them off, and if the Court doesn't feel it needs oral argument

8    on them, as it has already done with respect to the

9    attorney-client privilege and other motions, then we can -- you

10   know, we don't need to utilize that time, and I'm sure the

11   Court has other things to concern itself with.

12           MR. TOMASCH:  Your Honor, this is Mr. Tomasch.  Could

13   I respond briefly, because there are actually two points of

14   agreement.  One point of agreement that's relatively obvious is

15   that cost is a very significant concern to us as well, and,

16   frankly, our client is immensely frustrated because its lawyers

17   are capable of reading *TiVo*.  It thought it understood what the

18   issues were in the case, and the issues seem to keep expanding,

19   and that's what's driving the cost.

20           But the other thing I can agree with is when you

21   asked Mr. Robertson what did he want to prove by going in and

22   piercing the veil and taking 7,500 or thereabouts

23   attorney-client privilege documents, he said he wanted to show

24   that the process of redesigning the design-around of RQC was,

25   in his words, quote, lawyer-driven, end quote.

1        THE COURT:  That doesn't make any difference.  What

2   he really said was, when he got around to stripping out the

3   fluff, was that he thought it went to the issue of whether

4   there really was a change or not, more than colorable.

5        MR. TOMASCH:  He did accept Your Honor's leading

6   question in that regard.  We would stip that it was

7   lawyer-driven.  As to the colorable differences, this is a

8   unique case, Your Honor, because we are dealing with software

9   code.

10       We produced early on, before things proceeded nearly

11  to where they are now, the software code file for RSS and the

12  software code file for RQC.  The differences between the two

13  are absolutely understood by both sides.  They may argue about

14  the significance or effect of them, and they may argue about

15  whether they are infringing or not, but there is no fact to

16  figure out as to how the changes were made.  They're there.

17       The process by which Lawson got from RSS to RQC, Your

18  Honor, is entirely irrelevant to the issue of whether RSS and

19  RQC, as it is being sold, are, indeed, more than colorably

20  different or not, and if they are not, whether RQC in its final

21  configuration infringes.  How it got there is not an issue to

22  the *TiVo* zest.

23       MR. ROBERTSON:  Can I just respond to that briefly,

24  Your Honor?  Let me just say this:  If that's the case, then

25  just turn over the documents, because if it's all

1   lawyer-driven, as he just acknowledged, Mr. Tomasch, then why

2   are they holding them back?  I mean, I don't know what I don't

3   know, Your Honor.  I don't know what the document is going to

4   show, so in a sense I can't tell you what I'm going to prove by

5   documents I haven't reviewed.

6           But if it's all the case and if it's all just a

7   matter of fact, then you shouldn't be holding them back.  You

8   should just turn them over.

9           THE COURT:  It seems to me that that may beg the

10  point that he was making, but anyway, as I see it, the

11  evidence -- based on the papers that you all presented to me,

12  the evidence is pertinent as to whether or not it really is

13  perceived to be and is, in fact, or was intended to be anything

14  other than window-dressing which some of the documents from

15  Lawson's executives suggest that's all it was, and the question

16  is, this evidence that has been presented to me means -- if

17  that's how Lawson's executives put it and if that's how

18  everybody perceived it at Lawson and the lawyers perceived it

19  as that, what the lawyers were saying in order to achieve that

20  result is something that would be important in assessing

21  whether or not there really is a difference.

22          I realize that a great deal of it is going -- of the

23  decision is going to have to be made on the basis of sort of an

24  objective assessment of the differences, but this wouldn't be

25  the first time that one would be able to see from the

1   subjective development of what was occurring as the changes

2   occurred whether or not there's any merit to the claim that is

3   being made as to the nature of the objective difference if, in

4   fact, all they're saying is -- if, in fact, all that Lawson was

5   going through was an effort to make it look good, then the

6   validity of the opinions that say it's different can be called

7   into question.

8           That's part of what I was thinking was the pertinence

9   of this as to the -- of this information as to the *TiVo*

10  analysis, and I thought that's what you were saying, Mr.

11  Robertson, but maybe I'm wrong.

12          MR. ROBERTSON:  That is exactly right, Your Honor, so

13  we need to assess that information and factor it in.

14          THE COURT:  It suggests to me that probably it's best

15  to put the hearing off until there's a resolution of whether

16  these documents are to be provided or not, but you say, Mr.

17  Merritt, that you oppose a stay of compliance with the order.

18          MR. MERRITT:  I think as a matter of our maintaining

19  our client's position and maintaining our objection, we have to

20  take that position, Your Honor.  I understand that you may stay

21  it for other good reasons, but I think ePlus's position on that

22  simply needs to be maintained.

23          THE COURT:  Well, if you oppose it, then the thing I

24  have to do is to have a paper from each of you, you asking for

25  a stay pending resolution of the mandamus petition, and you

1  opposing it, ePlus, and then you, Lawson, replying to it, and

2  then I'll make a decision whether to have the stay or not.

3         MR. MERRITT:  Your Honor, may we have a few minutes

4  after we get off this phone to consult among ePlus's counsel to

5  determine whether we need to maintain that position?

6         THE COURT:  That's fine.  You certainly can.  I'm not

7  going to rush to judgment on trying to force the hand of the

8  Court of Appeals to do something.  They'll get to it just as

9  quickly as they can.

10         My limited experience with this in the Federal

11  Circuit is that they've been very conscientious and tried to

12  get to these matters just as promptly as they could consistent

13  with being properly informed to make their decisions.  So I'm

14  not of a mind to try to push them into something by denying a

15  stay.  I just don't think that's my role in life.

16         MR. MERRITT:  Understood, Your Honor.  I just want to

17  make sure we've at least thought about it for a few minutes.

18         THE COURT:  All right.  If you all think otherwise,

19  let us know.

20         MR. MERRITT:  Okay.  We may be able to resolve that

21  this afternoon.  I hate to do something lightly and then regret

22  it.

23         THE COURT:  Sure.  Think about it and tell me.  As

24  to -- since both of you are in agreement that the hearing ought

25  to be put off and at least the plaintiff feels like that the

1    evidence that will be yielded from the privileged documents

2    will bear on the question of the *TiVo* issues, the best thing to

3    do is put off the hearing.

4            Now, what motions are -- I just don't have it all in

5    front of me -- are pending that I could use next week to hear

6    you on if I decide to do that?

7            MR. ROBERTSON:  I can address that issue, but let me

8    address the question Your Honor just raised.  I heard Mr.

9    Tomasch say -- it started this conversation that they were

10   proceeding upon, you know, two fronts, and one was reviewing

11   the documents they think would be complying with the Court's

12   order that needed to be produced pursuant to the

13   attorney-client privilege waiver and that they were also

14   considering, you know, the appeal on mandamus which they were

15   going to do.

16           My suggestion might be that -- you know, and you can

17   have Lawson weigh in on this, of course, but why don't they

18   finish that process such that if the Federal Circuit deals with

19   this mandamus issue in summary fashion, we're in a position to

20   get those documents within days of the ruling, not within

21   additional weeks.

22           THE COURT:  I would think that a condition of a stay

23   under the circumstances, based on what Mr. Tomasch represented,

24   would be that they will continue the process of readying the

25   documents for production so that they can be produced in an

1   expedited fashion in the event they need to.

2           MR. TOMASCH:  Your Honor, this is Mr. Tomasch, and I

3   just want to reiterate, I thought that I had made clear to Mr.

4   Robertson that that was what we were doing and we were

5   intending to do.

6           THE COURT:  Yes, that's what I think, too, so I don't

7   know that we need to worry about that.

8           MR. TOMASCH:  I do want to respond, because Your

9   Honor raised an issue that I think is terribly important, and I

10  can't underscore how concerned my client is about this, that

11  mischaracterizations of documents have started to become

12  accepted as true and this notion that the documents that Your

13  Honor ordered produced are largely documents that relate to

14  lawyers doing infringement analyses and trying to understand

15  what went on at the trial and trying to work through claim

16  elements and the like.

17          The catchy phrases that plaintiff's counsel likes to

18  run by the Court that these -- that Lawson just put lipstick on

19  a pig, they like to say over and over again, that that somehow

20  reflects bad faith.  Your Honor, if that's a predicate in any

21  way for what we're about to do, I would ask you to have us come

22  down to court tomorrow, bring the lipstick-on-a-pig document to

23  Your Honor, and let you see why that document supports Lawson

24  in this lawsuit, why it has been grotesquely mischaracterized,

25  and we would just on that one document -- if you think that

1    that document says that the three changes that we are asserting

2    constitute lipstick on a pig, we can probably end the

3    proceeding.  That has nothing to do with it but, Mr. Robertson

4    keeps making those allegations --

5            THE COURT:  Probably in what proceeding?

6            MR. TOMASCH:  We aren't going to have a contempt

7    offense if Your Honor thinks that that document says what Mr.

8    Robertson says it says.

9            THE COURT:  So you're willing to submit the whole

10   issue to me on my interpretation of that document?  Is that

11   what you are saying?

12           MR. TOMASCH:  Your Honor, I actually would talk to my

13   client about exactly that.  If you think that that document

14   says that the lipstick on a pig is the three changes that are

15   at issue -- now, I think I probably would ask you to enter

16   judgment against us at that point, but I think I would have to

17   have --

18           UNIDENTIFIED SPEAKER:  Enter judgment in our favor.

19           MR. TOMASCH:  Or judgment in our favor.  If it goes

20   the other way, I know I could get my client to agree, because

21   it is a grotesque mischaracterization.  It's unfair, and it's

22   become a truth in this case through sheer repetition, and I

23   don't know how to deal with that because I've never had those

24   kinds of misrepresentations made, but to leave -- to use that

25   as a predicate to order a general subject matter waiver of

1    thousands of documents is mind-boggling, but we will bring the

2    document to you.

3            THE COURT:  I don't think that was the predicate of

4    the waiver decision, I don't believe, but in any event, I'll

5    let you all talk all that over and --

6            MR. TOMASCH:  We would ask Your Honor to allow us to

7    have oral argument on the motion with regard to Dr. Goldberg,

8    because the first seven pages of the reply brief didn't deal

9    with Dr. Goldberg.  It dealt with a slanderous attack on Lawson

10   and this idea that this is lipstick on a pig.

11           THE COURT:  Mr. Tomasch, I didn't think too much

12   about lipsticks on pigs when I heard somebody running for

13   national office using it, and I didn't pay but so much

14   attention to those pages.  I was really looking at other

15   issues, so I think I'm capable of figuring that out.

16           What are the other motions that are pending?

17   Goldberg and what else?

18           MR. ROBERTSON:  Obviously we're not trying the case

19   on a single document.  You know, as the Court said --

20           THE COURT:  Hey, hey, hey.  Let's quit this.  What is

21   the next motion?  Is it Putnam?

22           MR. ROBERTSON:  Motion to strike portions of the

23   Goldberg expert report, the motion to strike in the entirety, I

24   believe, the Dr. Weaver and Niemeyer reports.

25           THE COURT:  Wait a minute.  That's Lawson's motion.

1          MR. TOMASCH:  That's not correct.

2          THE COURT:  To strike Weaver and what?

3          MR. ROBERTSON:  Portions of Dr. Weaver and Dr.

4  Niemeyer's.  I don't want to mischaracterize it.  There's a

5  motion to strike ePlus's Dr. Ugone reports.  He's our damages

6  expert.  There is a motion to strike portions of Dr. Putnam's

7  report.  That's Lawson's damages expert.  There's a motion

8  regarding the sequestration issue of the experts which is not

9  fully briefed, and then there is --

10          THE COURT:  Wait a minute.  There's some motion about

11  Putnam that you made, too, isn't there?

12          MR. ROBERTSON:  Yes, sir.  Yes.  I thought I said

13  that, but, yes, motion to strike portions of Dr. Putnam's

14  expert report.

15          THE COURT:  Right.  And then Ugone's report was by

16  Lawson.

17          MR. ROBERTSON:  Yes, sir.

18          THE COURT:  Who filed the sequestration motion?

19          MR. TOMASCH:  We did, Your Honor.  This is Lawson.

20  We filed it seeking an exception limited to the expert

21  witnesses.

22          THE COURT:  Right, okay.

23          MR. ROBERTSON:  Their reply is due tomorrow, Your

24  Honor.

25          THE COURT:  All of these, are there any more motions?

1          MR. ROBERTSON:  Your Honor, the only other thing I

2    would say is we have a scheduled 4:30 call on objections to the

3    exhibits to have a meet-and-confer to see if we can resolve

4    any.

5          Having gone through the trial with Your Honor, I know

6    this can be a somewhat time-consuming process.  At Your

7    Honor's, you know, discretion, we could try and make some

8    headway on that if we came down there, or given the fact that

9    there may be additional exhibits based on the waiver of the

10   attorney-client privilege, I don't know if Your Honor wants to

11   postpone that exercise or to advance, you know, the ball and

12   get through with what we have, you know, in the interim.

13         THE COURT:  Okay, wait a minute.  Let's take one

14   thing at a time.  The pending motions are ePlus's motion to

15   strike part of the Goldberg report.

16         MR. ROBERTSON:  Yes, sir.

17         THE COURT:  ePlus's motion to strike part of the

18   Putnam report, Lawson's motion to strike part of the Weaver and

19   Niemeyer reports, Lawson's motion to strike part of the Ugone

20   report, Lawson's motion on sequestration.  Is that what's

21   pending now?

22         MR. TOMASCH:  That's correct, Your Honor.

23         THE COURT:  And Goldberg --

24         MR. ROBERTSON:  There was a bench brief, Your Honor,

25   with respect to whether we could submit 30(b)(6) testimony and

1    otherwise, and I think Your Honor addressed that the other day.

2    I didn't want to leave that if it's out there.  I think we got

3    guidance from the Court.  I don't think we need any further

4    guidance, but I didn't want to leave it off the list.

5             THE COURT:  Goldberg is ripe, Putnam is not ripe.

6    When will it be ripe?

7             MR. ROBERTSON:  Friday by 5:00 p.m., Your Honor.

8             THE COURT:  All right.

9             MR. DUSSEAULT:  Your Honor, this is Chris Dusseault.

10   Our opposition is tomorrow, on Thursday, and their reply is

11   Friday.

12            MR. ROBERTSON:  We'll get it to Your Honor before

13   8:00 p.m.

14            THE COURT:  Weaver, it will be ripe when?

15            MR. TOMASCH:  Friday, Your Honor.

16            THE COURT:  Ugone when?

17            MR. TOMASCH:  Friday as well.

18            THE COURT:  Sequestration when?

19            MR. TOMASCH:  Same.

20            THE COURT:  All right.  Well, it seems to me -- now,

21   look, here's another thing.  I don't want you to use this

22   opportunity to be filing a bunch of other papers and

23   everything -- and creating more work.  Enough is enough.  We've

24   got to get this matter sorted out.

25            Why don't I hear you on the 28th on these motions.

1    Anything you've got to say, I'll just hear you then.

2              MR. ROBERTSON:  Your Honor, as to the exhibits, we

3    left that sort of unresolved.

4              THE COURT:  What are you talking about, about the

5    exhibits?

6              MR. ROBERTSON:  Objections, Your Honor, as to

7    exhibits.

8              THE COURT:  I don't get involved in that.  You said

9    you've got something on my calendar on that issue?

10             MR. ROBERTSON:  Well, no, sir.  We had exhibits that

11   we need to produce to you, and I think they are going to expand

12   based on, you know, your ruling on the attorney-client

13   privilege waiver.

14             Typically Your Honor, as we did in the trial in

15   chief, we went through a lot of the exhibits and the

16   objections.  We have a meet-and-confer this afternoon.  Perhaps

17   we can resolve a lot of the issues.  I'm wondering if on the

18   28th you want to go through some of those exhibits and make

19   rulings as you have done in the past.

20             THE COURT:  I do not.

21             MR. ROBERTSON:  Okay, fine, thank you.

22             MR. TOMASCH:  Your Honor, it's Mr. Tomasch, and I

23   really do hate to say we're otherwise occupied, but we are

24   putting papers in in the Federal Circuit.

25             THE COURT:  I thought you were going to put them in

1    on Monday.  That's why I chose Tuesday.

2              MR. TOMASCH:  I understand, Your Honor.  I just do

3    think it's going to take up, in a sense, every waking moment

4    for some of us, and the others are going to be working on the

5    documents to get them production-ready in case we lose, but we

6    won't be preparing for oral argument on the motion.

7              They are important oral arguments.  You deserve

8    crisp, clean arguments, and I don't think we'll do our best if

9    we come in on Tuesday.  Could we come in a little later in the

10   week?

11             MR. ROBERTSON:  Your Honor, this is Mr. Robertson.

12   These are simple --

13             THE COURT:  Wednesday, how about Wednesday?

14             MR. TOMASCH:  Wednesday would be great, Your Honor.

15   Thank you.

16             THE COURT:  Wednesday at 9:30.

17             MR. TOMASCH:  Yes, Your Honor.

18             MR. ROBERTSON:  Your Honor, just for --

19             THE COURT:  I'll let you know on Monday which ones I

20   want to hear from you all after I've had an opportunity to read

21   the papers that haven't been filed yet.  I think that -- maybe

22   I can save everybody some time.

23             MR. ROBERTSON:  Great.  Thank you, Your Honor.

24             THE COURT:  All right.  Now, you know, Mr. Robertson,

25   you could save them a lot of trouble if you wanted to sit down

1   and talk about what kinds of privileged documents you really

2   wanted to look at.

3          MR. ROBERTSON:  Your Honor, you know, that's a very

4   good suggestion, and the problem I've had, and I think the

5   problem the Court has, is that so many of the descriptions are

6   so cryptic and so vague as it's hard for me to know.  But what

7   I have done and what I'm happy to share with Lawson is I spent

8   a lot of time taking the four categories that the Court

9   identified as to the waiver and color-coding them and putting

10  them on the privilege log which is 2,000 pages long with 9,500

11  entries and saying, this is what we think falls within Judge

12  Payne's ruling.

13         So I'm happy to share that to them, to the Court and

14  to Lawson on a little flash drive, and they can then see what

15  our viewpoint is on that.

16         THE COURT:  That might be helpful to them and helpful

17  to you if you all can deal with it.  I've dealt with it the

18  best I can based on the limited nature of the descriptions.

19         MR. TOMASCH:  Your Honor, I don't think there will be

20  difficulty in figuring out which documents Your Honor's order

21  applies to.  Mr. Robertson isn't suggesting that there's some

22  focus of that -- a subset of those that you ordered is what you

23  really need, then maybe we can shortcut this and produce

24  something without it being a generalized waiver that he is not

25  accepting that sort of suggestion.  If this is just a question

1    of identify what it is we have to produce and the Federal

2    Circuit turns down our motion, we'll be able to determine that

3    without difficulty I believe.

4            THE COURT:  I was suggesting that maybe there's a

5    smaller subset of things that could be resolved by your sitting

6    down and talking about it.

7            MR. TOMASCH:  Understood, but that's not what Mr.

8    Robertson responded --

9            THE COURT:  I understand, and if you can do that, it

10   might help you all and it might help the Federal Circuit, but

11   that's all right.  Okay, anything else we need to do?

12           MR. TOMASCH:  Not for Lawson, Your Honor.

13           MR. MERRITT:  No, sir.

14           THE COURT:  All right.  And you're going to get --

15   I'm going to need to schedule briefing on the stay pending

16   application for writ of mandamus, but as I understand it,

17   you're going to visit that issue and then let everybody know

18   where you stand a little bit later in the day; is that right?

19           MR. MERRITT:  Yes, sir.  We'll promptly advise both

20   the Court and Lawson on that, and we may get comfortable with

21   not objecting to that.  I just want to caucus quickly.

22           THE COURT:  Are you going to handle that by calling

23   back here; is that what's going to happen?

24           MR. MERRITT:  Judge, I can call chambers and then

25   call Mr. Carr.  I can also email Ms. Russo and copy Mr. Carr,

1    whatever the Court prefers.

2              THE COURT:  That's fine.  Email is fine.

3              MR. MERRITT:  Okay.

4              THE COURT:  All right.  Thank you all very much.

5    Bye.

6

7                    (End of proceedings.)

8

9

10             I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13

14   _____/s/_____          _____
     P. E. Peterson, RPR              Date

15

16

17

18

19

20

21

22

23

24

25