IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09CV620 (REP) |
| ) | |
| LAWSON SOFTWARE, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**LAWSON SOFTWARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ALLOW LAWSON'S EXPERT WITNESSES TO ATTEND THE HEARING ON THE MOTION FOR CONTEMPT**

Lawson acknowledges that it bears the burden of showing that an exception to sequestration under Fed. R. Evid. 615 applies, but that burden is not a heavy one in the case of expert witnesses. As the Fourth Circuit indicated in *Opus 3 Limited v. Heritage Park, Inc.*, 91 F.3d 625 (4th Cir. 1996), expert witnesses should not ordinarily be sequestered under Rule 615:

> Because Rule 615 is designed to preclude fact witnesses from shaping their testimony based on other witnesses' testimony, it does not mandate the sequestration of expert witnesses who are to give *only* expert opinions at trial. **Indeed, an expert who is not expected to testify to facts, but only assumes facts for purposes of rendering opinions, might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions.**

*Id*. at 629 (italics in original, bold emphasis added); *see also United States v. Rhynes*, 218 F.3d 310, 319 n. 8 (4th Cir. 2000) ("Parties or their representatives, as well as expert witnesses, are authorized by Rule 615 to remain in the courtroom, hear testimony, and subsequently testify. Fed. R. Evid. 615(1)-(3)"). Federal courts across the country agree that "the showing necessary for the inclusion of an expert under Fed. R. Evid. 615(3) [is] a minor burden." *Skidmore v.*

*Northwest Eng'g. Co.*, 90 F.R.D. 75, 76 (S.D. Fla. 1981); *see also Boyd v. United States*, 1997 U.S. Dist. LEXIS 16073 at *4 (W.D.N.C. Sept. 5, 1997) ("An expert witness who is not expected to testify to facts is an archetypical example of a person entitled to an exemption under section (3)."). As a result, "[t]he cases commonly approve the designation of experts as essential under Rule 615[c]." Wright, *Fed. Prac. & Proc.* § 6245 at p. 82. To meet its burden, Lawson must only make "a fair showing … that the expert witness is in fact required for the management of the case." *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 630 (6th Cir. 1978). Further, "the trial court is bound to accept any reasonable, substantiated representation to this effect by counsel." *Id*. ePlus's brief makes no real response to this argument or to Lawson's authorities holding that barring experts from hearing trial testimony can be reversible error. *See* Lawson Br. at 7-8. Its main argument is that the Court should simply rule as it did in the infringement case.

The upcoming hearing on contempt has issues and proof distinct from the infringement trial and the sequestration issue merits similarly distinct consideration. Lawson respectfully submits that it has met its burden of showing that the exception in Rule 615(c) applies by pointing to the extraordinarily complex and technical presentations both parties expect to offer from Ph.D. computer scientists and Ph.D. economists. The issue is not, as ePlus contends, whether Lawson has sufficient legal resources, but whether its lawyers have the technical expertise in the language, structure and operation of computer source code and economic calculations of revenues and profits essential for a primary understanding of the expert testimony. Lawson's experts have that expertise, and for counsel to represent Lawson fully and

adequately it is essential to have the assistance of those experts at the hearing.[1]  There can be no doubt that Lawson's counsel do not have Ph.D.-level expertise in computer science or economics.  Lawson's experts will thus provide advice essential to counsel's effective presentation of the case.  That "substantiated representation" of counsel constitutes a "fair showing" of the need for expert assistance, which the Court is "bound to accept."  *Morvant*, 570 F.2d at 630.  Other than Lawson's experts, there is no person exempt from exclusion who can provide the level of sophisticated technical assistance necessary to rebut the complex and nuanced testimony of ePlus's experts.  At the very least, Lawson's counsel should have its experts available in court to detect what may be subtle changes in expert testimony.  *See Malek v. Federal Insurance Co.,* 994 F.2d 49, 54 (2d Cir. 1993).

ePlus's main response is that the Court should sequester the experts at the bench hearing on contempt because it did so at the jury trial on infringement.  The two proceedings are different.  The jury trial focused on measuring Lawson's accused products against patent claims construed as a matter of law and deciding whether the product crossed a legal boundary line marked out by the asserted patent claims.  While there was some testimony about the source code of the accused products, that testimony was limited and brief, and there was no damages expert testimony at all.  By contrast, the threshold issue at the contempt proceeding requires understanding and comparing details of the source code in RSS and RQC to determine whether there are "more than colorable" differences between the modified Lawson software and the

---

[1] The facts here contrast sharply with *Opus 3*, in which the Fourth Circuit affirmed sequestration of a witness.  The object of the motion in *Opus 3* was an individual who was to offer both fact and expert testimony relating to building renovation costs.  Not only was the individual both a fact and expert witness, but the subject matter of his testimony was far less technical than the expert testimony at issue here.  The Fourth Circuit held exclusion was not an abuse of discretion because the purported expertise was not seen as essential to assist counsel in presenting the case.  In this case, we have contending Ph.D. experts, a circumstance that distinguishes this case from what confronted the court in *Opus 3*.

configurations previously found to infringe certain ePlus patent claims. That subject matter is far more technical than what was in dispute at the infringement trial. And, unlike the infringement trial, there can be no dispute between the parties on the *factual* differences between the RSS and RQC source code. The dispute concerns, first, whether the relevant differences are more than colorable and, second, whether the modified features of RQC continue to infringe the claims at issue. ePlus will attempt to carry its heavy burden of proof of contempt primarily through expert testimony and the expert presentations will dominate the contempt proceeding.[2]

To say that Lawson's experts may be prepared sufficiently based on the pre-hearing disclosures of the ePlus's experts avoids the real issue. Pre-hearing disclosures allow parties an opportunity to prepare their case. But those disclosures are not the evidence. Dr. Weaver's opening expert report is 81 pages long, and his rebuttal report is 53 pages long. Likewise, Mr. Niemeyer issued reports of 28 pages and 23 pages. Obviously, Dr. Weaver and Mr. Niemeyer will not simply read the entirety of their expert reports into the record word-for-word. They will make the evidentiary record of their opinions by oral testimony responding to the questions counsel chooses to ask in open court. Moreover, Lawson's expert, Dr. Goldberg, has not seen any of the in-court demonstrations or demonstrative exhibits that Dr. Weaver or Mr. Niemeyer will present to the Court.[3] All of ePlus's experts also state in their reports that they "may acquire additional information and/or attain supplemental insights that result in added observations" and

---

[2] There has been no showing of any shifting in expert opinions, which prompted the Court's exclusion of the experts at trial. ePlus has made no allegation that Lawson's contempt experts have expanded or shifted their expert opinions as was claimed before the trial. Even if there were such an accusation, denying sequestration would reduce that concern by allowing both ePlus and Lawson the assistance of its experts to detect changes in opinions delivered by oral testimony.

[3] ePlus used numerous demonstrative exhibits at trial with its expert witnesses and has already indicated that it intends to provide the Court with a purported demonstrative that is an "interactive CD" summarizing the evidence.

"reserve the right to supplement [their] Expert Report[s] and to rely on additional documents and testimony that come to my attention between now and the time of the contempt hearing." None of this "additional information" or any of ePlus's experts' "supplemental insights" could be known to Lawson or Lawson's experts unless the experts can hear the actual testimony.

Lawson's counsel needs the expertise of its expert witnesses to craft its defense to the evidence offered at the hearing and to counter the specific opinions admitted in evidence, as well as the in-court demonstrations and demonstrative exhibits which ePlus has not yet produced. Moreover, Dr. Goldberg and Lawson's damages expert, Dr. Putnam, should be permitted to hear the particular opinions that Dr. Weaver, Mr. Niemeyer and Dr. Ugone give and have an opportunity to review ePlus's demonstrative exhibits and in-court demonstrations and focus their rebuttal testimony on the specific evidence admitted in the record. As the Fourth Circuit stated in *Opus 3*, an expert, like Lawson's experts, who "only assumes facts for purposes of rendering, might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions." *Opus 3*, 91 F.3d at 629. The issue is not, as ePlus claims, that Dr. Goldberg or Dr. Putnam will attempt to expand their opinions but rather whether Lawson requires their assistance to rebut ePlus's claims and to present its defense.

Lawson bears no burden of proof at the contempt proceeding. Lawson's experts, Dr. Goldberg and Dr. Putnam, will only respond to the opinions that ePlus's experts ultimately offer at the contempt proceeding. If excluded from the contempt hearing, Dr. Goldberg and Dr. Putnam will be put in the bizarre position of having to respond to an evidentiary record that they have never heard, and to demonstrative evidence that they have never witnessed. The Court's recent ruling on the inadmissibility of certain deposition testimony puts even more stress on the actual hearing record as a foundation for opinions that may be offered at trial. It is essential to

Lawson's defense that its experts be permitted to hear that evidence, including the expert testimony, as it is actually presented at trial so that they can address the real record.

Finally, exempting the experts from exclusion at the contempt hearing so that they can focus their opinions and respond directly to the evidence presented at the hearing, is obviously of benefit to the Court. It will allow the presentation of evidence to be more focused and targeted and will assist the Court in policing the boundaries of the expert testimony because the opposing experts will be able to point out where an expert attempts to go beyond the opinions in his report.

## CONCLUSION

For the foregoing reasons and for the reasons stated in its opening Memorandum in support of this motion, Lawson respectfully requests that the Court grant its motion under Fed. R. Evid. 615(c) and authorize the expert witnesses for the parties to hear and observe the testimony of all witnesses at the hearing on ePlus's motion for contempt.

                                        LAWSON SOFTWARE, INC.

                                        By: _____/s/_____
                                                 Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193

Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Counsel for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of February, 2012, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

James D. Clements
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

*Attorneys for Plaintiff*

        /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*