# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212 351.4000
www.gibsondunn.com

Daniel J. Thomasch
Direct: +1 212.351.3800
Fax: +1 212.351.6200
DThomasch@gibsondunn.com



March 27, 2012

VIA HAND DELIVERY

The Honorable Robert E. Payne
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, Virginia 23219

Re: *ePlus, Inc. v. Lawson Software, Inc.*, Case 3:09-cv-00620

Dear Judge Payne:

At the February 29, 2012 hearing, this Court requested the parties to propose an "approach to take in this case given the somewhat complicated nature of this case about how we comply with the Federal Circuit's rule [and] instructions in *Tivo*." Hearing Tr. at 196, Feb. 29, 2012 ("Tr."). Lawson's proposal is described in detail below.[1]

Lawson has fashioned its proposal in light of *TiVo's* instruction that a proceeding to hold a party in contempt of an injunction in a patent infringement case must focus on "those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims" and a comparison between any modifications to elements previously found to infringe and the formerly infringing feature. *TiVo, Inc. v. Echostar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011). We believe that the proposed procedure will assist the Court in defining the issues for the contempt hearing as *TiVo* requires.

Before evidence can be heard with respect to the first step in *TiVo's* two-part test, it is necessary to determine the specific features of the adjudged infringing products that accounted for the prior infringement finding, because it is changes to those features that the

---

[1] Lawson has made several attempts to contact counsel for ePlus to determine if ePlus has a proposal for the Court, and to explore the possibility of common ground if it does. ePlus's counsel apparently are unavailable for any discussion before Thursday March 29, 2011, and Lawson has been provided with no indication that ePlus has a substantive proposal to make. Recognizing that Mr. Robertson argued on February 29th that the procedure recommended by Lawson was "entirely unworkable" (Tr. At 90), and given ePlus's failure to contact Lawson since the hearing on February 29, it seems unlikely that the parties will reach an agreement on the procedures that should be employed to frame the issues for the contempt proceeding. Accordingly, Lawson submits its proposal for the Court's consideration.

Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich • New York
Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 2

colorability analysis will concern. *See* Tr. at 66-67. ("But the first task is going to be to figure out how we apply the first part of [*Tivo's* two-part test], and that is how we define the animal against which we measure the -- whether there is a colorable difference in the first place...").

In some cases, "the animal" against which to evaluate the modifications made to the adjudged-infringing product can be readily defined by examining opening statements, summations, jury instructions and the jury verdict or judge's findings from the infringement trial. This is not such a case. Here, the jury had to consider 38 separate infringement questions derived from 12 claims in 3 patents asserted against 5 product configurations. The jury returned 11 findings of infringement with respect to 3 of the 5 configurations at issue. There were 27 findings of non-infringement. The jury found no infringement at all by Configurations No. 1 and No. 4 (including the core S3 procurement system alone), and no infringement of the asserted claims of the '683 patent by Configuration No. 2. Given this "mixed verdict" (Tr. at 99), even plaintiff's counsel has necessarily conceded that that the jury "must have rejected some [of plaintiff's] evidence" because "they didn't find infringement on all the claims." Tr. at 96.

Ultimately, it is for this Court, not counsel, and certainly not the parties' respective expert witnesses, to determine what was "contended and proved" at trial. *See TiVo* at 882. To the extent that the presentation of alternative theories or the absence of a special verdict renders unclear whether the jury found a particular feature to infringe an asserted claim limitation, plaintiff lacks an essential predicate for contempt. As the Supreme Court has stated, and the Federal Circuit reiterated, "contempt 'is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *TiVo* at 881-82 (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)); *see also, Abbott Laboratories v. Torpharm, Inc.*, 503 F.3d 1372, 1380 (Fed. Cir. 2007) ("[T]his court has stated that 'the presence of [] disputed issues creates a fair ground for doubt that the decree has been violated.' Requiring disputed issues to be tried through full litigation, rather than summary proceedings eliminates due process concerns for the defendant accused of violating an injunction.") (citations omitted); *cf., C.B. Marchant Co., Inc. v. Eastern Foods, Inc.*, 756 F.2d 317, 319 (4th Cir. 1985) ("if a judgment rests on independent grounds, either of which would support the result, the judgment is not conclusive with respect to either issue standing alone."). Absent clarity as to what is prohibited, there can be no contempt.

Ascertaining the basis of the jury's verdict is not "a fool's errand," as plaintiff's counsel asserted (Tr. at 99), but rather is essential to defining the predicate for contempt, because the enjoined party is free to sell products that were found to not infringe and products that differ more than colorably from those that were found to infringe. In other

The Honorable Robert E. Payne
March 27, 2012
Page 3

words, the Court analyzes the trial record for what was contended and proved to determine what is available as a predicate for contempt, and what is not. For example, plaintiff now asserts that item master alone satisfies the "maintaining at least two product catalogs" elements of the '683 patent, see Pl.'s Br. in Supp. of Mot. to Strike Portions of Def.'s Expert Report at 16-20, Feb. 7, 2012, and that Lawson is precluded from arguing to the contrary. But that ignores *TiVo*, which requires the Court to determine whether plaintiff's present assertion was contended *and* proved at the infringement trial. Analysis of the trial record shows it was not.

Plaintiff alleged at the infringement trial that both Configuration No. 2 and Configuration No. 3 infringed claims of the '683 patent. Those configurations differed only by the absence of Punchout in Configuration No. 2 and the presence of Punchout in Configuration No. 3. *See* Trial Tr. at 795. Plaintiff used the following demonstrative exhibits to show the jury how the two configurations differed:

**Configuration No. 2**



**Configuration No. 3**



Plaintiff's infringement expert, Dr. Alfred Weaver, testified that both Configuration Nos. 2 and No. 3 (indeed, all five configurations) satisfied the claim element of "at least two product catalogs" containing data relating to items associated with the respective sources, which is required, *inter alia*, for infringement of all asserted claims of the '683 patent.[2] *See* Trial Tr. at 797. More specifically, throughout Dr. Weaver's direct examination and in Mr. Robertson's closing argument, ePlus asserted that all five configurations contained multiple catalogs *in item master*. Lawson's counsel cross-examined Dr. Weaver on that

---

[2] Dr. Weaver also testified that Punchout constituted "external" catalogs in the two configurations that include Punchout (Configurations Nos. 3 and 5). *See* Trial Tr. at 616, 655, 778-779.

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 4

point at length and argued extensively in closing that the infringement case "really came down to the catalogs" (Trial Tr. at 3174-75) and that item master does not have catalogs. *See* Trial Tr. at 3174-89).

Plaintiff's assertion for the contempt proceeding that item master alone satisfies the "maintaining at least two product catalogs" elements of the '683 patent is not supported by the jury verdict. As noted, Configuration Nos. 2 and 3 are identical *except that Configuration No. 2 does not have the Punchout Module*. Configuration No. 2, in which the only alleged source of catalogs was from item master, was found *not* to infringe the asserted claims of the '683 patent. In contrast, the jury found Configuration No. 3, which added Punchout to Configuration No. 2, infringed those same asserted claims of the '683. If item master alone sufficed to infringe the asserted claims of the '683 patent, the jury would have returned a finding of infringement for Configuration No. 2. It did not. It is clear is that the jury found item master alone insufficient to satisfy the "two or more catalogs" claim element. Plaintiff can pursue a contempt finding against Lawson's design-around product only on the basis of features that were unequivocally contended and ultimately proved to satisfy specific limitations of the infringed claims. Item master is not such a feature.

Following *TiVo's* guidance, Lawson proposes that the Court order the parties to take the following steps to prepare and conduct a bifurcated *TiVo* hearing:

## I. PRE-HEARING: IDENTIFYING THE PREDICATE FOR CONTEMPT

### A. Plaintiff's Written Submission

Plaintiff must identify in writing "precisely what the conduct is that creates the predicate for contempt." Tr. at 93. That follows from TiVo's guidance that "a detailed accusation from the injured party setting forth the alleged facts constituting the contempt" is "required" for a district court to hold a contempt proceeding. *See TiVo* at 881. In this case, that would require plaintiff to identify from the trial record the specific testimony, argument and jury findings that plaintiff relies on with respect to its assertion that each identified feature was "contended and proved" to be infringing. *See id.* at 882. Lawson suggests that the identification of features that plaintiff asserts were contended and proved to be infringing should be set forth in chart form, consistent with the following exemplar, which may be accompanied by a brief, not to exceed 30 pages in length:

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 5

|  | Configuration No. [N] |
|---|---|
| '683 Patent – Claim 3 | Features Contended and Proved to be Infringing (with citations to the trial record and jury verdict) |
| Limitation |  |
| Limitation |  |
| '683 Patent – Claim 26 |  |
| Limitation |  |
| Limitation |  |
| '683 Patent – Claim 28 |  |
| Limitation |  |
| Limitation |  |
| '683 Patent – Claim 29 |  |
| Limitation |  |
| Limitation |  |
| '172 Patent - Claim 1 |  |
| Limitation |  |
| Limitation |  |

### B. Defendant's Written Submission

In response to plaintiff's submission, Lawson should indicate its disagreements with ePlus over what ePlus contends was asserted and proved at trial. *See* Tr. at 93. This should also be done by written submission with record citations, in the same form as provided by ePlus, and also may be accompanied by a brief, not to exceed 30 pages in length.

### C. Oral Argument

Lawson respectfully requests that the parties be permitted to orally argue their respective positions on the threshold issue of what, if any, product features may properly be the predicate for a continuing contempt proceeding.

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 6

### D. Court Order

To the extent that the Court is able to identify specific features of the adjudged infringing products that were contended and proved to be infringing at the merits trial, and issues an Order in that regard, then Lawson will be required to identify any modifications to those features upon which it relies in its defense of the contempt allegations.[3]

## II. CONTEMPT HEARING

### A. Stage One: Colorability Analysis

The Court should accept evidence through fact and expert witnesses at a hearing limited initially to the single question of whether the modifications identified by Lawson render the accused infringing product as a whole to be more than colorably different than the product features against which they are measured. Plaintiff bears the burden to prove, by clear and convincing evidence, that the newly accused product is not more than colorably different than the adjudged infringing product. *TiVo* at 883. At this stage of the proceeding, claim construction is not at issue, and infringement analysis cannot be used to establish the absence of more than a colorable difference between the modified features and the features of the adjudged infringing products. *See Tivo* at 882 ("Today, we reject that infringement based understanding of the colorably different test."). Lawson respectfully submits that at the conclusion of colorability evidence, the Court should hear oral argument, similar in nature to a motion for judgment as a matter of law, and issue a ruling that dismisses the contempt proceeding or defines the infringement issue(s) to be tried in stage two.

### B. Stage Two (Contingent): Infringement Analysis and Damages

Only if the Court finds that ePlus has carried its burden of proof by clear and convincing evidence on the colorability issue should the Court receive testimony as to whether the design-around product infringes any of the patent claims previously found to be infringed by the predecessor product. *TiVo* at 882 ("If [the] differences between the old and

---

[3] Lawson has already identified the three modifications that it will rely on in defense of the contempt proceeding to differentiate the newly-accused product from the former product. Those are: (i) elimination of a shopping cart that is distinct from the requisition and which in the adjudged infringing product was contended to serve as an intermediate order list that was used to build a requisition; (ii) elimination of the user's ability to search for products at the commodity level (*i.e.*, the seventh and eighth digits) of the UNSPSC system; and (iii) changes to the source code that prevent users of the RQC module from having the ability to include in a single requisition items from two or more Punchout vendors, or items from both the item master and a Punchout vendor, both of which functionalities existed in the adjudged-infringing configurations (Configurations Nos. 3 and 5). *See, Defendant Lawson Software, Inc.'s Supplemental Answers to Plaintiff ePlus Inc.'s First Set of Interrogatories for Contempt Proceedings.*

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 7

new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused produce actually infringes is irrelevant. Contempt is then inappropriate."). If the parties reach the "infringement analysis" stage, the presentation of evidence again would be restricted by the Court's Order as to what was contended and proved. Unchanged features that were not contended and proved to be infringing at the merits trial cannot form the basis of any infringement allegations. *See TiVo* at 883 (Rejecting as improper in a contempt proceeding a finding of infringement based on an unmodified feature [the PID filter] because "TiVo never unequivocally alleged prior to the contempt stage that the PID filter met that claim limitation.").

The infringement analysis of the modified elements of the newly accused product must be performed "on a limitation by limitation basis, to ensure that each limitation continues to be met." *Id.* at 883. It is at this point in the proceedings that the Court's prior claim constructions become relevant. *Id.* at 883 ("In making this infringement evaluation, out of fairness, the district court is bound by any prior claim construction that it had performed in the case."). Plaintiff bears the burden of proof on the issue of infringement by clear and convincing evidence. *Id.*

If the Court reaches the infringement phase, the parties also may present evidence with regard to a remedy that the Court may order to compensate ePlus in the event that the Court finds the modified features of the newly-accused product infringe the asserted claims of the patents in suit.

## III. POST-HEARING

Lawson respectfully requests that the Court schedule closing arguments of counsel for a time convenient to the Court. If it would assist the Court, Lawson has no objection to the filing of post-hearing briefs to summarize the evidence admitted at the hearing, but Lawson believes that such briefs may not be necessary if the preceding procedures are adopted, as those procedures should result in a shorter, more focused, hearing than would otherwise be the case.

\* \* \*

# GIBSON DUNN

The Honorable Robert E. Payne
March 27, 2012
Page 8

      Should the Court have questions or concerns about the proposed procedures, counsel for Lawson would be happy to address those issues in a status conference call or in an in-person appearance.

Respectfully submitted,

Daniel J. Thomasch

DJT/las
Attachment

cc: All counsel