

Scott L. Robertson
202.346.4331
SRobertson@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue NW
Washington, DC 20001
T: 202.346.4000
F: 202.346.4444

April 16, 2012

**Via Hand Delivery**

The Honorable Robert E. Payne, United States District Judge
United States District Court
  for the Eastern District of Virginia, Richmond Division
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

    **Re:   *ePlus, Inc. v. Lawson Software, Inc.***
           **Civil Action No. 3:09cv620 (REP)**

Dear Judge Payne:

Plaintiff ePlus Inc. ("ePlus") respectfully submits this letter regarding the upcoming contempt proceeding and the impact of the Federal Circuit's *Tivo* decision,[1] and in response to the March 27, 2012, letter to the Court ("Lawson Ltr.") from Defendant Lawson Software, Inc. ("Lawson").

    **I.      INTRODUCTORY STATEMENT**

Lawson's new "trifurcated" proposal is at odds with its prior position and tantamount to an omnibus motion to reconsider numerous prior court decisions (many of which Lawson stipulated to, in pertinent part), including: (i) the form of the verdict given to the jury with respect to the infringing system configurations, Dtk. Nos. 584, 600; (ii) the Court's ruling denying Lawson's post-trial motion for judgment as a matter of law ("JMOL") of non-infringement, Dkt. No. 785; (iii) the form of the judgment entered by the Court upon the verdict, Dkt. No. 736; (iv) the scope of the injunction entered by the Court with respect to the infringing system configurations, Dkt. No. 729; (v) the Court's decision to proceed in contempt, Dkt. Nos. 803, 849; (vi) the form, time, and manner in which the parties would brief the contempt issues before this Court, Dkt. No. 849; and (vii) that the contempt proceeding would be limited to only the three modifications identified by and allegedly made by Lawson. *See infra* at 3.

---

[1] *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (*en banc*).

Honorable Robert E. Payne
April 16, 2012
Page 2

Thus, once again, Lawson attempts to reargue and relitigate issues that have already been decided adversely to it, thereby vexatiously multiplying these proceedings.

Contrary to what Lawson proposes, *TiVo* neither complicates nor prolongs the procedure this Court should follow to conduct a contempt proceeding.  Instead, *TiVo* simplifies the proceeding.  *TiVo* informs this Court that it should "telescope" the "colorable differences" and "infringement" questions into a ***single proceeding.***  This is the ***exact opposite*** of what Lawson proposes in its letter, in which it proposes not one, but ***three*** evidentiary proceedings that it contends are necessary before contempt may be found.  *See* Lawson Ltr. at 4 ("predicate" proceeding, with written submissions and oral argument, followed by Court ruling), *id.* at 6 ("stage one (in reality, "stage two") colorability analysis, with submission of evidence and oral argument, followed by Court ruling), *id.* at 6-7 ("stage two (in reality, "stage three") infringement and damages analysis, with submission of additional evidence).

The *en banc* court in *TiVo* could not have been clearer on this point stating:

> We conclude that *KSM's* two-step inquiry has been ***unworkable*** and now overrule that holding of *KSM*.  *KSM* crafted a special rule for patent infringement cases, in that it required a threshold inquiry on the propriety of initiating a contempt proceeding.  We recognize now that inquiry confuses the merits of the contempt with the propriety of initiating contempt proceedings.  ***Moreover, as a practical matter, district courts do not separately determine the propriety of a contempt proceeding before proceeding to the merits of the contempt itself.  As a result, we will telescope the current two-fold KSM inquiry into one, eliminating the separate determination whether contempt proceedings were properly initiated.***  That question, we hold, is left to the broad discretion of the trial court to be answered based on the facts presented. *Additive Controls,* 154 F.3d at 1349 (The district court "has broad discretion to determine how best to enforce its injunctive decrees.").

*TiVo,* 646 F.3d at 881.  In addition to dispensing with the "unworkable two-step inquiry," the *TiVo* court further explained that a district court's decision whether to proceed in contempt is subject only to abuse of discretion review.  *Id.*

Therefore, under *TiVo* this Court need hear the evidence only one time, in a single proceeding, at the conclusion of which it must answer three questions:  (i) whether the three modifications alleged by Lawson render its accused system configurations more than colorably different from the configurations found to infringe; (ii) if not, whether the accused configurations still infringe the claims found infringed at trial (the answer to which, at least in this case, is based on the same evidence as for the colorable differences analysis); and (iii) if infringement is found, the appropriate remedy for Lawson's contempt.

Honorable Robert E. Payne
April 16, 2012
Page 3

Lawson now backpedals from the procedure it previously agreed to and contends that the first two questions above require that the contempt proceeding be divided into three evidentiary mini-proceedings or "stages." The supposed lynchpin for Lawson's position is that — with respect to the "at least two product catalogs" element of the infringed '683 Patent claims — the factual basis for the jury's infringement verdict is *supposedly* unclear because, according to Lawson, the verdict is inconsistent. Lawson argues that is the case because, at trial, ePlus showed two different ways in which Lawson infringed the "maintaining at least two product catalogs" element. One way in which ePlus showed Lawson's infringement was through Lawson's Item Master, which Lawson concedes it has *not modified* from the Item Master in the infringing system configurations.[2] Lawson attempts to harness its contention to a fleeting reference — in dicta — in *TiVo* that the analysis "must focus … on … those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement." *TiVo,* 646 F.3d at 882. As discussed *infra,* however, it is clear that the jury must have found that Lawson's system configurations infringed based on the use of the Item Master.

But moreover, Lawson's argument is simply not relevant to this proceeding. Lawson has *already* been required to identify the three alleged modifications, and it has repeatedly conceded those are the only three alleged modifications at issue; thus, *e*Plus need not prove the lack of colorable differences, or the presence of infringement, as to features Lawson has not modified. *See* Dkt. No. 845 (Tr. of Nov. 8, 2011 proceedings) at 19:19-20 (The Court: "And as I see the hearing, we're going to look at those three issues, the three things you say were changed. *Do you agree with that or not*?" Lawson counsel: "*Yes, Your Honor*.") (emphasis added); *id.* at 73:24-25 (Lawson counsel: "There is no dispute about what the three areas of change are. None."); *id.* at 75:13-16 (Lawson counsel: "the three changes are not in dispute. The significance of them and whether or not they take the product out of being infringing, that is in dispute, but we know what they are.").

In a paper Lawson filed with the Court on November 5, 2011, it adamantly disclaimed, "*e*Plus claims repeatedly that Lawson has asserted the view that a court performing the *TiVo* analysis must analyze those features of the product that were not modified. *That is not, and never has been, Lawson's view."* Dkt. No. 837 at 4; *see also id.* at 9 ("*TiVo* only addressed modified features in considering the scope of the necessary step two infringement analysis, and *Lawson is not seeking to extend that ruling*") (emphasis added).[3]

---

[2] Accordingly, it is *not* one of the alleged three modifications that are at issue here.

[3] Just as if the parties were only now before the Court on motions for JMOL, Lawson inexplicably proposes that ePlus first be required to provide a compendium from the trial record of "the specific testimony, argument and jury findings that plaintiff relies on with respect to its assertion that *each identified feature* was 'contended and proved' to be infringing," *only after which* Lawson would identify "any modifications to those features upon which it relies in its defense." Lawson Ltr. at 4-6. Yet ePlus has *already* provided the "detailed accusation from the injured party setting forth the alleged facts constituting the contempt,"

Honorable Robert E. Payne
April 16, 2012
Page 4


Further, Lawson did not request that the two factual bases for satisfying the "at least two product catalogs" claim element be separately identified in the jury verdict form, the post-trial judgment order, or the injunction order. Yet having failed to raise this issue at trial, Lawson now tries to show that the verdict is inconsistent and flawed, and that no injunction based upon it can be enforced in contempt. As discussed herein, that is surely not the law. If Lawson believed the verdict was inconsistent, it was obliged to raise the issue before the jury was discharged, not more than a year later. Moreover, courts do not speculate about what the jury must have been thinking when it rendered its verdict, or why it found a particular claim infringed or not.

In addition, Lawson's proposal is unprecedented and devoid of legal support, impractical, and, as Lawson virtually concedes, designed to force this Court to find that the jury verdict and the Court's injunction are unenforceable on their face.[4] As discussed *infra,* Lawson cites no case law holding that the jury verdict and the judgment and injunction orders may be tortured in this manner.[5] *TiVo* does not so hold, nor, to ePlus's knowledge, does any other case before or after that decision. Neither does the case law provide that Lawson is not in contempt because of product features that it has ***not modified.***

Instead of the "three-stage" protracted proceedings advocated by Lawson, the Court should follow the *TiVo* Court's specific holding that a district court should "telescope" the issues into a single proceeding, at which (based on the same evidence) this Court must answer the colorable differences and infringement questions. At least in this case, the answer to the second question follows inexorably from the first, together with Lawson's concession that it has not modified or ceased using any more than the three allegedly modified features at issue. Indeed, based on ePlus's review of the case law, no court has ever held that an allegedly modified product is *not* infringing after first finding that the product

---

Dkt. Nos. 798, 799, and the Court has ***already*** decided to go forward with a contempt proceeding. Further, discovery has been had, Lawson identified the modifications and provided a corporate designee for deposition on the subject. There is no mystery here.

Accordingly, Lawson's proposed requirement for "Plaintiff's Written Submission," Lawson Ltr. at 4-5, is an unnecessary waste of time and resources, designed to overly complicate the proceeding, and nothing more than an attempt to delay the day of judgment.

[4] *See* Lawson Ltr. at 2 (arguing "[t]o the extent that the presentation of alternative theories or the absence of a special verdict renders unclear whether the jury found a particular feature to infringe an asserted claim limitation, plaintiff lacks an essential predicate for contempt.").

[5] Lawson's citation to *C.B. Marchant Co., Inc. v. Eastern Foods, Inc.,* 756 F.2d 317, 319 (4th Cir. 1985), does not support its argument. That case pertained to whether, under the doctrine of collateral estoppel, a damages award could be enforced in litigation against a third party, an issue that is inapplicable to this case. Lawson was a party to the trial, and there is no doubt that the "Item Master" issue was extensively litigated and presented to the jury.

Honorable Robert E. Payne
April 16, 2012
Page 5

was not more than colorably different from the product found to be infringing at trial.[6]

## II. ePLUS'S PROPOSAL FOR CONDUCT OF CONTEMPT PROCEEDINGS

ePlus's proposal is straightforward and directly follows the *TiVo* decision. ePlus has already provided the "detailed accusation setting forth the alleged facts constituting the contempt," as required by *TiVo*. Dkt. Nos. 798, 799. The Court has already determined to conduct a contempt proceeding based on this detailed accusation. Lawson has already identified, and repeatedly acknowledged it is limited to, its contentions as to three alleged modifications it has made to its infringing system configurations which it contends render the configurations non-contemptuous and non-infringing. *See supra* at 3. The parties have already taken discovery and — subject to the resolution of the mandamus petition and the prospect that Lawson may have to divulge additional information — discovery and expert reports are otherwise complete.

In contrast to prior cases in which district courts would conduct separate, two-stage proceedings for resolving the "colorable differences" and infringement inquiries, *TiVo* instructs district courts that they should "telescope" the inquiry into a single proceeding. *TiVo,* 646 F.3d at 881. The Court need only hear the evidence (including expert testimony) once. The evidence should be limited to the three alleged modifications Lawson has identified that it contends render its infringing system configurations non-infringing, and facts relevant to the remedy to be provided in the event the Court finds contempt.

At the conclusion of the evidence, the Court should permit post-trial briefing, and the Court has already adopted a briefing schedule which need only be adjusted to take into account the continuance required by Lawson's mandamus petition. Dkt. No. 849. The Court must then answer three questions, based on the evidence and the parties' submissions: (i) do the three alleged modifications render the Lawson system

---

[6] *See, e.g.*, (Post-*TiVo* cases) *Merial Ltd. v. Cipla Ltd.*, No. 3:07–CV–125 (CDL), 2011 WL 2489753 (M.D.Ga. June 21, 2011) (citing *Tivo* and finding no colorable difference and product still infringed); (Pre-*TiVo* cases) *Abbott Labs. v. TorPharm, Inc*., 503 F.3d 1372, 1381 (Fed. Cir. 2007) (affirming finding of no colorable difference and that product still infringed); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*., 154 F.3d 1345, 1349-50 (Fed. Cir. 1998) (same); *Litecubes, L.L.C. v. N. Light Prods., Inc.*, No. 4:04CV00485-ERW, 2007 WL 892459, at *2 (E.D.Mo. Mar. 21, 2007) (finding no colorable difference and product still infringed); *Abbott Labs. v. Apotex, Inc*., 455 F. Supp. 2d 831, 837-38 (N.D. Ill. 2006) (same); *Brine, Inc. v. STX, L.L.C.*, 367 F. Supp. 2d 61, 68-70 (D. Mass. 2005) (same); *Mykrolis Corp. v. Pall Corp.*, No. Civ.A.03-10392-GAO, 2005 WL 81920, at *3-4 (D. Mass. Jan. 12, 2005) (same); *Armament Sys. & Procedures, Inc. v. Double 8 Sporting Goods Co.*, 57 F. Supp. 2d 681, 3-4 (E.D. Wis. 1999) (same); *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 403, 406-417 (D. Del. 1999) (same); *Contempo Tobacco Prods. Inc. v. McKinnie*, 45 U.S.P.Q.2d 1969, 1973 (D. Ill. 1997) (same); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*., 32 U.S.P.Q.2d 1747, 1752-55 (S.D. Tex. 1994) (same); *Lucasey Mfg., Inc. v. Cuelho*, 34 U.S.P.Q.2d 1410, 1411-12 (D.N.J. 1994) (same); *Orion Indus., Inc. v. Antenna Co*., No. 87 C 6788, 1990 WL 147047, at *1 (N.D.Ill. Sept. 24, 1990) (same); *Preemption Devices, Inc. v. Minn. Mining and Mfg. Co*., Civ. A. No. 80–0268, 1986 WL 12026, at *1-2 (E.D. Pa. Oct. 24, 1986) (same).

Honorable Robert E. Payne
April 16, 2012
Page 6

configurations more than colorably different from those which were enjoined under the Court's injunction order; (ii) if not, do the system configurations that were enjoined continue to infringe the claims found infringed at trial; and (iii) if so, what is the appropriate remedy for Lawson's contempt?

As to the second question, Lawson attempts to put much weight on the supposed differences between the "colorable differences" and "infringement" inquiries. But it is apparent from the case law that the two issues are inexorably related and, at least in a case such as this, the resolution of the infringement question flows directly from the same facts the Court will consider for the colorable differences analysis. To ePlus's knowledge, no court has ever found that an accused modified product is *not* more than colorably different and yet *not* infringing. *See supra*, footnote 6. Certainly, Lawson cites no such case.

And even if that could theoretically occur under some hypothetical scenario conjured by Lawson, it is not apparent how that could possibly be the case here, where Lawson has conceded that it continues to make, use, sell, and offer for sale its system configurations previously found to infringe, with only the three alleged modifications having purportedly been made. Lawson does not explain why, analytically, these inquiries will be different in this case, or why the Court should hear the evidence two or three times in order to answer these questions. Lawson does not identify any specific facts, documents, or testimony that it contends would be relevant to one inquiry but not the other. Neither does Lawson justify why the Court should engage in a hair-splitting exercise to divine what evidence is supposedly relevant to colorable differences but not infringement, or *vice versa*. Nor, having identified the three alleged modifications at issue, does Lawson explain how *these modifications* might be non-infringing and yet not more than colorably different from the features found infringing at trial. This case is long past the point of offering law school hypotheticals about the import of modifications that were never made. Accordingly, it is evident that Lawson's proposal is designed to prolong and over-complicate the proceedings in order to delay the day of judgment and make it as difficult as possible for the Court to finally resolve the issues in this case.

As to the *TiVo* court's statement with respect to focusing on the aspects of the product previously alleged and found to be an infringement, this Court need do no more than look at the verdict form, the judgment, and the injunction order. Those documents show that the jury found that three configurations infringed five claims, nothing more, and nothing less.

### III.   THE INJUNCTION AND THE INFRINGEMENT FINDINGS UPON WHICH THEY WERE BASED

The premise of Lawson's proposed trifurcated proceeding is that Lawson should be permitted to show that the Court's injunction is unenforceable because the jury's verdict was allegedly inconsistent, or else the basis for it was unclear. But the Court will undoubtedly recall that the parties already briefed the issue of the scope of the contempt proceedings in light of *TiVo,* and the Court conducted oral argument on this point on

Honorable Robert E. Payne
April 16, 2012
Page 7

November 8, 2011. At the November 8, 2011 hearing, the Court made clear, after hearing the parties' arguments, that the Court would conduct one proceeding. *See* Dkt. No. 845 (Tr. of Nov. 8, 2011 proceedings) at 90:15-18 (The Court:  There will be one basic hearing.  The extent to which, and that will include the question of liability for contempt as well as a remedy, and the discovery will be directed to both."). At that time, Lawson raised no argument that it was necessary for the Court to conduct some sort of predicate mini-proceeding to determine the bases for the infringement verdict.[7] In fact, when ePlus suggested that the remedies issue might be bifurcated, Lawson argued against it. *Id.* at 36:23-25.

Further, in considering Lawson's new argument that the Court must conduct a prefatory proceeding to interpret the jury verdict, it is important to recall the prior proceedings and the many significant stages at which Lawson either stipulated, or did not contest, the forms in which the infringement findings and scope of injunction were memorialized.

First, Lawson agreed in pertinent part to the verdict form and the manner in which the system configurations were presented to the jury. Indeed, Lawson submitted its own proposed verdict form that precisely tracked the system configurations as they were presented to the jury for the infringement questions. *See* Dkt. No. 584 (Lawson proposed verdict form identifying five accused system configurations).

Those questions did not require the jury to explain its reasoning or identify the specific facts upon which it based its verdict. When the jury rendered its verdict, Dkt. No. 600, Lawson raised no objection and presented no argument that the verdict was internally inconsistent. Accordingly, Lawson waived any right to protest with respect to any alleged inconsistency. *See, e.g., Bradford Co. v. Jefferson Smurfit Corp.,* 2001 WL 35738792, at \*4 (Fed. Cir. Oct. 31, 2001) ("[C]ourts have held that the failure of a party to object to the inconsistencies [in the verdict] prior to the dismissal of the jury constitutes a waiver of the issue for purposes of review on appeal." (and citing, *inter alia, White v. Celotex Corp.,* 878 F.2d 144 (4th Cir. 1989) (*per curiam*) (other citations omitted)); *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 725-26 (4th Cir. 1999) (also citing *White*, and holding that party was barred from challenging alleged inconsistency of general verdict and interrogatory answers where challenge not raised prior to discharge of jury); *see also L & W, Inc. v. Shertech, Inc.,* 471 F.3d 1311, 1318-19 (applying Sixth Circuit law and holding that failure to object prior to jury's discharge waived alleged inconsistency as to verdicts relating to dependent and independent claims).

Second, the parties stipulated, in pertinent part, to the form of the judgment eventually entered by this Court. *See* Dkt. Nos. 723, 724. The judgment identified the infringing system configurations in the same way in which they were presented in the verdict form.

---

[7] Lawson even filed a pleading on November 7, 2011, entitled "Defendant Lawson Software, Inc.'s Memorandum Regarding Structure Of Contempt Proceeding And Issues To Be Addressed At November 8, 2011 Conference," Dkt. No. 840, yet nowhere in that pleading (nor during the hearing the following day) did Lawson propose that the Court should conduct a prefatory proceeding to determine the factual bases for the jury's infringement verdict.

Honorable Robert E. Payne
April 16, 2012
Page 8

Dkt. No. 736. Lawson did not request that the judgment be further parsed by virtue of the factual basis for the jury's verdict.

Third, the Court's injunction order again identified the infringing system configurations, just as they were identified in the verdict form and the judgment. Dkt. No. 729. Lawson, of course, opposed ePlus's motion for a permanent injunction, and contested the proposed scope of the injunction (although it did not propose its own alternative injunction order). It also moved to clarify or modify the injunction order after the Court entered it. Dkt. No. 749. At no time, however, did Lawson argue that the order should be limited or modified so as not to apply to the Item Master, on the ground that the jury's findings were supposedly unclear or inconsistent.

In presenting a post-trial JMOL of non-infringement, Lawson argued that the Court should find all the '683 Patent claims to not be infringed, on the ground that the Item Master was not an infringing component of the system. Dkt. Nos. 759, 760, 777. The Court, however, correctly denied that motion. Dkt. No. 785. Until now, this was the only context in which Lawson presented an argument to this Court that the verdict was internally inconsistent. Lawson did not move for a new trial on this ground. Dkt. No. 761.

Notwithstanding all the above during which Lawson remained silent as to any supposed inconsistency within the verdict, Lawson now contends that there is a fatal inconsistency that effectively renders the Court's injunction order unenforceable in contempt. Lawson shows its hand, stating, "[t]o the extent that the presentation of alternative theories or the absence of a special verdict renders unclear whether the jury found a particular feature to infringe an asserted claim limitation, plaintiff lacks an essential predicate for contempt." Lawson Ltr. at 2.

In other words, Lawson argues that this Court's injunction was "toothless" from the outset, unenforceable through contempt proceedings from the start, and null and void the very moment the order was signed, all because of an argument Lawson repeatedly chose not to raise when opportunities arose. This is ***not*** what TiVo teaches. Nor could it have been what this Court contemplated when it entered the injunction.

The Court gave ePlus a remedy. That remedy should not be rendered meaningless by the untimely and calculated arguments of an adjudicated infringer seeking to avoid the consequences of its willful contempt.

Further, this argument is meritless for at least five reasons. First, neither *TiVo* nor any case applying it holds that the Court must resolve such alleged inconsistencies as a precondition to enforcing an injunction order in contempt. Indeed, Lawson cites not a single case so holding. That such a result could occur seems particularly unlikely where, as here, Lawson failed to object and stipulated in pertinent part to (i) the manner in which the jury rendered its verdict, (ii) the Court's judgment, and (iii) the scope of the injunction as to the infringing configurations.

Honorable Robert E. Payne
April 16, 2012
Page 9

Second, contrary to the central premise of Lawson's argument, it is plain from the evidence at trial that the Lawson Item Master was, in fact, found to be a necessary system component for infringement.  "When, as here, the case is tried to a jury and a general verdict is rendered …, disputed factual questions are presumed to have been resolved favorably to the party in whose favor the verdict was rendered."  *Pederson v. Stewart-Warner Corp.,* 536 F.2d 1179, 1180 (7th Cir. 1976).  When a factually sufficient ground has been presented to a jury, a reviewing court is bound to presume that the jury's verdict rests on the factually sufficient ground.  *Griffin v. United States,* 502 U.S. 46, 59 (1991); *Cordance Corp. v. Amazon.com, Inc.,* 658 F.3d 1330, 1339 (Fed. Cir. 2011) (general jury verdict should be upheld if there was sufficient evidence to support any of the alternative theories); *Northpoint Tech., Ltd. v. MDS America, Inc.,* 413 F.3d 1301, 1311-12 (Fed. Cir. 2005) (same).

The Court will recall that the jury also found that Lawson infringed claims 3 and 28 of the '683 Patent, both of which included a "converting data" element.  ePlus proved at trial that the "converting data" elements of claims 3 and 28 of the '683 Patent were satisfied by the infringing configurations because the item records *in the Item Master* of Lawson's Core S3 Procurement System are each cross-referenced to UNSPSC codes.  The infringing configurations then employ a Category Search hierarchy tree where each branch of the tree is also cross-referenced to a corresponding UNSPSC code.  At each branch of the Category Search tree, a user can find all items stored *in the Item Master* from all sources or vendors that are cross-referenced to the same UNSPSC code as associated with that branch of the tree.

ePlus's expert, Dr. Weaver, testified to and demonstrated this point, and Lawson's technical documentation also explained it.  Dr. Weaver demonstrated infringement of these claims using the Category search feature of the infringing configurations to search for matching items *only from among the vendor product catalogs stored in the Item Master*.

> *e*PLUS COUNSEL:  So if I have this capability that comes out of the box with this inventory control module, which is one of the base modules for the accused infringing system of Lawson, and I utilize that, for example, I think for black pens that I've put in my catalog from Staples, and black pens that I put in my catalog available from Office Max, how can I use these codes to perform any kind of functionality that might be relevant to the claims that are being asserted in this case?
>
> DR. WEAVER:  You could do a search *of the item master database* using a UNSPSC code like the one we had for black pens.  *What's going to come back from that search are all the items from all of the vendors that have labeled their items with that same UNSPSC code.*  So in that instance, *we would get all the black pens from all the vendors in all the catalogs in the Lawson system*.

Trial Tr. (Weaver) at 621:11-24 (emphasis added) (testifying about PX-112 at L0032311).

Honorable Robert E. Payne
April 16, 2012
Page 10

> ePLUS COUNSEL:  What, if any, significance does that [discussion of the UNSPSC] have with respect to the requisition self service module?
>
> DR. WEAVER:  So these first four paragraphs explain the purpose, and then down below are instructions on how to do this.  The categories task is designed to use UNSPSC, United Nations Standards Products and Services Codes.  Categories let you search for items by category.
>
> After you import UNSPSC codes, you can assign them to items using item master.  IC 11.1 is one of these programs.  ***The codes have four levels: segment, family, class, and commodity.  These levels create an item hierarchy and let you search each level for items in the item master file.***  These codes are attached to items on IC 11.  That's the item master.
>
> ***After you define categories, you can click on a category top level to open the segment tree to the product, family, class, commodity branches, and items.  You select items at any of the levels.***
>
> ePLUS COUNSEL:  Okay.  ***Is this the same kind of UNSPSC classification codes that can be used to do the converting as defined by the Court*** that we saw before in, I believe it was in the inventory control module?
>
> DR. WEAVER:  ***Yes, they are.***

Trial Tr. (Weaver) at 629:2-23 (emphasis added) (testifying with reference to description of Category search found in PX-98 (RSS User Guide) at L0045500).  *See also* Trial Tr. (Weaver) at 634:7-653:3 (demonstration of converting capabilities using Category Search to search catalogs in Item Master).

Thus, in finding that the "at least two product catalogs" element of the '683 Patent claims was satisfied, the jury *must* have relied upon the Item Master and not, as Lawson contends, solely upon Punchout catalogs.  Since the Punchout catalog items are not cross-referenced to the UNSPSC codes, the jury could not have found claims 3 and 28 to be infringed *unless* they relied upon the Item Master.  Indeed, *e*Plus relied solely upon the catalogs in the Item Master for proof of infringement of claims 3 and 28 of the '683 Patent.

Third, the law is clear that if a party such as Lawson believes a jury verdict is inconsistent, it is obliged to raise that argument before the jury is discharged.  Otherwise, the objection is waived.  *See supra* at 7.  Lawson presented no such objection, and cannot now be heard to complain that an injunction based on that verdict cannot be enforced because of the alleged inconsistency.  *TiVo* does not authorize an infringer such as Lawson to raise for the first time issues it declined to raise at trial.

Fourth, to the extent the Court believes there is a possibility of some inconsistency in the verdict, courts do not look inside the proverbial "black box" to resolve that inconsistency by speculating, *e.g.*, as to the precise factual basis for a jury's verdict.  *See United States v. Powell,* 469 U.S. 57, 66 (1984) (rejecting as "imprudent and unworkable" a rule

Honorable Robert E. Payne
April 16, 2012
Page 11

permitting challenge to inconsistent verdicts and stating "[s]uch an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake"); *United States v. Green,* 599 F.3d 360, 368-69 (4th Cir. 2010) (rejecting challenge to allegedly inconsistent verdicts and "declin[ing] [defendant's] invitation to speculate" as to explanation for verdicts); *McGinley v. Franklin Sports, Inc.,* 262 F.3d 1339, 1356 (Fed. Cir. 2001) ("it is not our place to elide the vagaries of a black box jury verdict by overriding the jury's decision. Our law does not compel the use of special verdicts in these cases, and so long as the parties are content to give the jury unfettered room to operate on dispositive factual issues within the scope of a general verdict request, we must be mindful of our role as an appellate court and respect the verdict reached"); *United States v. Zane,* 495 F.2d 683, 690-91 (2nd Cir. 1974) ("the rule against disturbing inconsistent verdicts runs deeper than the principle of compromise. ***The validity accorded to such verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation***.") (emphasis added); *cf. Bradford,* 2001 WL 35738792, at *5 (rejecting argument that jury must have used incorrect royalty base to arrive at damages award, and stating "because of the black-box quality of the jury decision, we simply do not know what the jury did to arrive at its damages award"); *United States v. Francis,* 141 F.3d 1160, 1998 WL 141159 (4th Cir. Mar. 30, 1998) ("[t]his court declines to pry open the jury room door to second-guess a jury's conclusions about items or exhibits properly admitted into evidence; jury deliberation is far too sacred a process to be subjected to such an searching inquiry."). Accordingly, ePlus's position that such an inquiry would, indeed, be a "fool's errand," is consistent with the law.

*TiVo* does not overturn decades, if not centuries, of precedent admonishing against speculating as to the thought processes the jury used to reach its verdict. Instead, courts — even when presented with a timely objection (which this Court was not) — are required to reconcile the alleged inconsistency if at all possible. *Cox v. Collins,* 7 F.3d 394, 396 (4th Cir. 1993) ("Jury verdicts must be upheld if a fair reading of special verdict form answers can be reasonably harmonized in view of the evidence."); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.,* 369 U.S. 355, 364 (1962) ("a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment."). Lawson's proposal for a predicate mini-proceeding to determine the reasons for the jury's verdict would violate these cardinal principles.

Indeed, how could any court be expected to speculate about and resolve the thought processes motivating a jury's verdict more than a year after it was discharged? How would a court determine which documents or witnesses the jury found compelling, or which of the many facts or instructions of law influenced the rationale for its verdict, or whether the verdict was simply the result of compromise? What the Court does know is this — ePlus contended at trial that Lawson's System Configuration Nos. 3 and 5 infringed, that the Item Master was included in those configurations and satisfied the "at least two product catalogs" element, as well as the "converting" element of claims 3 and 28 of the '683 Patent. The jury found those system configurations *infringed* the '683

Honorable Robert E. Payne
April 16, 2012
Page 12

Patent claims. On that basis, and without pertinent objection from Lawson, the Court entered judgment on the verdict and enjoined Lawson's use of those configurations.

The import of Lawson's contention would be either that district courts in patent cases would have to utilize overly complex jury verdict forms that literally require a separate answer on every single infringement fact issue in the case, or the courts would have to speculate as to what the jurors must have been thinking when they rendered their verdict, otherwise any injunction order would be nullified. The case law does not support Lawson's arguments.

Fifth, as set forth *supra*, Lawson has not modified the Item Master, and it has repeatedly (and correctly) conceded that only the product features it has modified are relevant to this contempt proceeding.

For all the above reasons, the Court should reject Lawson's overly complicated and unnecessary proposal for three separate proceedings, and adopt the "telescoped" approach as proposed by ePlus and as instructed by *TiVo*. Contempt proceedings are not the vehicle to revisit failed positions, reargue lost motions, or raise long-since waived contentions.

Respectfully submitted,

Scott L. Robertson

cc:     Counsel of Record

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2012, I will electronically serve the foregoing

## **CORRESPONDENCE FROM SCOTT ROBERTSON TO JUDGE PAYNE**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Daniel J. Thomasch, *pro hac vice*<br>Josh A. Krevitt, *pro hac vice*<br>Richard William Mark, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-6200<br>DThomasch@gibsondunn.com<br>RMark@gibsondunn.com<br>JKrevitt@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>Telephone: (804) 697-1238<br>Facsimile: (804) 698-5119<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com |
| Jason Lo, *pro hac vice*<br>Timothy P. Best, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-6659<br>JLo@gibsondunn.com<br>TBest@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com<br><br>***Counsel for Defendant Lawson Software, Inc*** | Sarah E. Simmons, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue , #1100<br>Dallas, TX 75201<br>Telephone: (214) 698-3100<br>Facsimile: (214) 571-2900<br>SSimmons@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com<br>***Counsel for Defendant Lawson Software, Inc*** |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>FINNEGAN, HENDERSON, FARABOW, GARRETT<br>& DUNNER, L.L.P.<br>901 New York Avenue, N.W.<br>Washington, DC 20001<br>Telephone: (202) 408-4000<br>Facsimile: (202) 408-4444<br>EXT-Lawson-FinneganCorrespondence@finnegan.com<br><br>***Counsel for Defendant Lawson Software, Inc*** | |

                                                                    */s/*
                                      David M. Young (VSB #35997)
                                      **GOODWIN PROCTER LLP**
                                      901 New York Avenue, N.W.
                                      Washington, DC 20001

LIBW/1803135.1

Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com

Counsel for Plaintiff *e*Plus Inc.

2

LIBW/1803135.1