

Scott L. Robertson
202.346.4331
SRobertson@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue NW
Washington, DC 20001
T: 202.346.4000
F: 202.346.4444

May 8, 2012

**Via Hand Delivery**

The Honorable Robert E. Payne, United States District Judge
United States District Court
  for the Eastern District of Virginia, Richmond Division
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

    **Re:**    *ePlus, Inc. v. Lawson Software, Inc.*
            **Civil Action No. 3:09cv620 (REP)**

Dear Judge Payne:

Plaintiff ePlus Inc. ("ePlus") respectfully responds to the arguments in Defendant Lawson Software, Inc.'s ("Lawson") second letter to the Court dated April 30, 2012 ("Lawson Second Ltr."), regarding the upcoming contempt proceeding and the impact of the Federal Circuit's *TiVo* decision.[1]

***First,*** Lawson contends that ePlus somehow avoided the Court's instruction to set out how the Court should proceed, and instead simply attacked Lawson's proposal. This contention is incorrect. ePlus clearly set out the manner in which this Court should proceed pursuant to *TiVo*. *See* ePlus Ltr. of April 16, 2012 ("ePlus Ltr."), at 5-6 (section entitled "ePlus's Proposal for Conduct of Contempt Proceedings"). As the Court has already ordered,[2] the evidentiary hearing should be unitary in form, and address the three — and only the three — purported modifications alleged by Lawson. Pursuant to *TiVo*, at the conclusion of the evidence, the Court should rule on whether the alleged modifications are significant (i.e., whether the modified product is more than colorably different from that found infringing), and, if not, whether Lawson's "RQC" product still infringes. *TiVo,* 646 F.3d at 882; *see also Aevoe Corp. v. AE Tech Co., Ltd.,* 2012 WL 1559768, at *6 (D. Nev. May 2, 2012) (finding that modifications were not significant and contempt was appropriate, following one-day hearing). The Court's Scheduling Order of November 23, 2011, already provided for just such a procedure.

---

[1] *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (*en banc*).

[2] *See* Dkt. No. 845, Tr. of Nov. 8, 2011, at 90:15-18 (The Court: "There will be one basic hearing. The extent to which, and that will include the question of liability for contempt as well as a remedy, and the discovery will be directed to both.").

Honorable Robert E. Payne
May 8, 2012
Page 2

***Second,*** Lawson does not even attempt to respond with respect to the multiple occasions on which it could have — but chose not to — raise the issue that is now the centerpiece of its contention that the verdict (and consequently the Court's injunction order) was allegedly ambiguous and/or inconsistent.  Lawson's silence on all of these points speaks volumes.  As set forth in ePlus's letter, Lawson agreed in pertinent part to the verdict form,³ did not raise any issue of inconsistency or ambiguity when the jury returned its verdict,⁴ agreed to the form of the judgment, and did not contest the scope of the injunction in pertinent part or seek clarification or appeal on this basis.  *See* ePlus Ltr. at 1, 4, 7-8, 10.  Further, Lawson's arguments are tantamount to a motion for reconsideration of the Court's prior ruling that there will be one hearing devoted to all of the issues to be decided by the Court on contempt.  *See* footnote two, *supra.*

ePlus and Lawson agree that the Item Master was alleged at trial as an infringing feature with respect to the claims the jury found to be infringed.  The only dispute is that Lawson contends the verdict was ambiguous because it is supposedly unclear whether the jury ***relied*** on that feature to render its verdict, because the verdict form, and later the injunction order, were purportedly not specific enough.

*TiVo* makes clear, however, that it was ***Lawson's*** burden to seek clarity long before now if it truly believed the basis for the verdict was unclear.  Notably, one holding of *TiVo* was that a "disablement" provision of the injunction order in that case was not unenforceable on grounds of overbreadth or vagueness, because the infringer — like Lawson here — did ***not*** challenge the scope of the injunction with respect to the issue it later sought to raise.  Responding to the infringer's argument that the injunction was vague or ambiguous with respect to what constituted an "infringing product," the court flatly stated, "***[w]e reject [the infringer's] argument that vagueness can operate as a defense to the district court's holding of contempt here***."  *TiVo,* 646 F.3d at 885 (emphasis added).  "[W]here a party faced with an injunction ***perceives an ambiguity*** in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague."  *Id.* (emphasis added).

---

³ Lawson does acknowledge, however, that the "ambiguity" of which it complains could have been cured by a more specific verdict form, stating "[t]he verdict form and the injunction list product configurations on which infringement verdicts were returned, but neither references Item Master or any specific feature of the accused products."  Lawson Second Ltr. at 6, n.6.

⁴ Lawson contends that it has not alleged the verdict was inconsistent.  *See* Lawson Second Ltr. at 2, n.1.  However, Lawson's counsel responded to an inquiry from the Court as follows:  "Q. [THE COURT]  That being the case, how can there ever be a finding of contempt since we don't really know what was actually proved at trial when you have a – what do you call it – ***an inconsistent verdict or a verdict that looks to be at odds; isn't that what you said?  A. [Mr. Thomasch]: Yes*** …."). Dkt. No. 943, Tr. of Feb. 29, 2012, at 97:11-17 (emphasis added).  At the same hearing, Lawson repeatedly referred to the verdict as "ambiguous."  *Id.* at 71:24-25 (Lawson counsel arguing "where the verdict is ambiguous, it cannot be the predicate for contempt."); *id.* at 72:1-3 (Lawson counsel arguing, "That is our position.  If the verdict is ambiguous, it doesn't give us a free ride, but it means that you have to go back and squarely tee the issue up before another jury.").  Whether characterized as "inconsistent" or "ambiguous," *TiVo* makes clear that Lawson's present argument was waived by its failure to raise the issue on numerous prior occasions.

Honorable Robert E. Payne
May 8, 2012
Page 3

Further, if *"the injunction were in fact facially vague and susceptible of two alternative readings, the burden was clearly on [the enjoined party] to seek clarification or modification from the district court."* *Id.* at 886 (emphasis added). The court further explained, in language directly applicable to this case:

> In a case such as this, however, where a party has bypassed opportunities to present its asserted vagueness claim on appeal[5] or through a motion to clarify or modify the injunction, the party cannot disregard the injunction and then object to being held in contempt when the courts conclude that the injunction covered the party's conduct. *McComb*, 336 U.S. at 192, 69 S.Ct. 497 ("Respondents could have petitioned the District Court for a modification, clarification or construction of the order.... They undertook to make their own determination of what the decree meant. They knew they acted at their peril."); *see also Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1224 n. 2 (8th Cir.2006); *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 718 (7th Cir.1987) ("Not having appealed from the grant of the injunction, U.S. Marine cannot argue that it is too vague to be enforced...."); *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir.1985) ("The defendants acted at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning or by failing to have it set aside or amended if they thought it was defective."); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808 (2d Cir.1981) ("[A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt. The party and his counsel have a duty to ... ascertain the terms of any order entered against the party").

*Id.*

Thus, the *TiVo* court concluded, "[the enjoined infringer] cannot now spring its ambiguity defense to avoid contempt on the basis of its self-serving interpretation of the court's injunction. To hold otherwise would indeed impose an unnecessarily heavy burden on district courts to draft immaculate orders — a burden that neither the federal rules nor the Supreme Court mandate — and would radically constrict district courts' inherent power to enforce their orders. We decline to do so and conclude that EchoStar has waived its vagueness arguments." *Id.* at 887.

Likewise, in rejecting the enjoined party's attack on the overbreadth of the injunction order, the court similarly held:

> The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt. *Maggio v. Zeitz*, 333

---

[5] Lawson has not appealed with respect to vagueness, ambiguity, or inconsistency of the jury verdict, the judgment, or the scope of the injunction, with respect to the Item Master issue.

Honorable Robert E. Payne
May 8, 2012
Page 4

> U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948). In *Maggio,* affirming an appeals court's conclusion that a bankruptcy order "is subject only to direct attack, and that its alleged infirmities cannot be relitigated or corrected in a subsequent contempt proceeding," the Supreme Court stated that "[i]t would be a disservice to the law if we were to depart from the ***long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy***." 333 U.S. at 69, 68 S.Ct. 401. Sixty years later, that law remains unchanged. *Travelers Indemnity Co. v. Bailey*, ___ U.S. ___, 129 S.Ct. 2195, 2203, 174 L.Ed.2d 99 (2009).

*Id.* at 889 (emphasis added).

To hold otherwise would allow a party such as Lawson to exploit an invited error or ambiguity. Moreover, a contrary rule would create a perverse policy incentive for a party such as Lawson to remain silent at trial on issues such as the form of the verdict, all the while knowing that it could later take advantage of any supposed ambiguity in the verdict by contending that any injunction based upon the verdict is unenforceable.

Lawson frames its argument as one of attempting to discern the basis upon which the jury found infringement, but this is plainly a collateral attack on the breadth and clarity of the verdict itself, in addition to the judgment and injunction order based upon that verdict.[6] Like the enjoined party in *TiVo*, Lawson had numerous opportunities to raise — and ask the Court to correct — the supposed "ambiguity" that it now contends renders the injunction effectively unenforceable. It repeatedly chose to forego those opportunities, and cannot now deprive this Court of its contempt authority.

***Third,*** Lawson does not contest that no court has ever adopted the "trifurcated" contempt proposal it now urges upon this Court; neither has any court ever conducted the prefatory contempt proceeding advocated by Lawson in which the Court must take written submissions in order to determine the bases for the jury's verdict.

***Fourth***, Lawson does not even attempt to explain how this Court is to discern the bases for the jury verdict (e.g., which factual arguments and evidence it found compelling) more than a year after the jury was discharged. It is obvious that Lawson's goal is to confound the resolution of the issues between these parties, and increase the time and expense of these proceedings. Moreover, there is no mistaking that Lawson would have the Court engage in this quixotic exercise only to find at the end of the day that no answer can be found, and therefore (according to Lawson) the entire jury trial and the injunction proceedings are a nullity. *See* Lawson Ltr. of March 27, 2012 at 2 ("To the extent that the presentation of alternative theories or the absence of a special verdict renders unclear

---

[6] As cited below, on numerous occasions Lawson has revealed its cards on this point, stating, *inter alia*, "[b]ut the bottom line is, if there is not clarity in the verdict, there cannot be contempt." Tr. of Feb. 29, 2012, at 97:24-25.

whether the jury found a particular feature to infringe an asserted claim limitation, *plaintiff lacks an essential predicate for contempt*.") (emphasis added); *see also* Tr. of Feb. 29, 2012, at 85:2-4 (Lawson counsel arguing, "If there's confusion about the verdict, *we aren't in enough notice that we can then be held in contempt* for what we do in response to the verdict."); *id.* at 97:24-25 ("But the bottom line is, *if there is not clarity in the verdict, there cannot be contempt*.") (emphasis added).[7]

*Fifth*, ePlus provided this Court with evidence from the trial record showing that the Item Master must have been a basis for the jury's infringement finding, directly rebutting the central premise of Lawson's argument. *See* ePlus Ltr. at 9-10. In response, Lawson simply punts the ball, and blithely assures the Court that it will counter these arguments in the course of the contempt proceeding. Lawson Second Ltr. at 7, n.7 ("Lawson is prepared to demonstrate at the appropriate juncture [etc.]"). Lawson's core assumption that the jury could not have relied upon the Item Master as an infringing feature has been demonstrated as incorrect.

*Sixth,* Lawson does not even attempt to address how any evidence, testimony, or argument *in this case* will be relevant to the colorable differences inquiry, but not infringement, or vice versa. Neither does Lawson identify any way in which, *in this case*, its RQC product could be non-infringing, and yet not more than colorably different from the RSS system configuration found infringing at trial. Again, Lawson's silence on these points speaks volumes.

*Seventh,* relatedly, Lawson does not contest that *no court has ever found* an allegedly modified product to be non-infringing, after first finding that the allegedly modified product was not more than colorably different from the product found infringing at trial. Lawson dismisses ePlus's citations on the basis that many were decided before *TiVo,* but Lawson provides no contrary authority either predating or postdating that decision.[8] If a change is not significant, it inexorably follows that the modified product still infringes.

*Eighth*, the cases cited by Lawson for the proposition that courts may inquire as to the bases for a jury's verdict are readily distinguishable. *See* Lawson Second Ltr. at 3-4. The cited cases generally deal with the question of when the doctrines of collateral estoppel and/or res judicata apply. None of the cases involved the procedural posture of this case, in which the question is that of directly applying an injunction order based upon

---

[7] As set forth *supra*, these arguments cannot be accepted in light of the *TiVo* court's affirmation that it was Lawson's burden to seek clarification if it believed that the verdict and/or injunction order were ambiguous with respect to the Item Master.

[8] Moreover, *TiVo* did not alter the test for infringement. Therefore, that many of these cases were decided before *TiVo* does not weaken the force of ePlus's argument. *Tivo* did nothing to change the well-settled law that "[c]ontempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial." *nCUBE Corp. v. SeaChange Int'l,* 809 F. Supp.2d 337, 344 (D. Del. 2011) (post-*Tivo* case stating "[c]ontempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial," and citing *KSM* and 11 Wright & Miller, Federal Practice and Procedure: Civil § 2960 at 591); *see also Aevoe,* 2012 WL 1559768, at *1 (finding contempt at conclusion of one-day hearing).

Honorable Robert E. Payne
May 8, 2012
Page 6

a jury verdict in the very same case, in which Lawson could have but chose not to seek clarification of a supposed "ambiguity" at multiple steps of the proceedings. *TiVo* makes clear in this setting that where a party such as Lawson "faced with an injunction perceives an ambiguity in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague." *TiVo,* 646 F.3d at 885. Rather, "the burden was clearly on [Lawson] to seek clarification or modification from the district court." *Id.* at 886.

*Ninth*, Lawson suggests that there has not yet been a "detailed accusation from the injured party setting forth the alleged facts constituting the contempt," as required by *TiVo,* 646 F.3d at 881. Lawson Second Ltr. at 5. This contention borders on the absurd. Eight months ago, ePlus provided a very detailed show cause motion, complete with an expert declaration and supporting exhibits, setting out the basis for a contempt proceeding. Dkt. Nos. 798-99. Lawson responded to that motion, and since that time the parties have exchanged extensive discovery (more than two million pages of documents, approximately a dozen depositions, plus interrogatories), conducted numerous hearings and pretrial motions, and ePlus has set out the basis for its contempt allegations in hundreds of pages of expert reports and supporting documentation, to which Lawson was able to respond with expert reports of its own, and to which ePlus rebutted. Accordingly, ePlus's detailed accusations could not have been more specific and thorough, and fully compliant with *TiVo*'s "detailed accusation" requirement.[9]

For all these reasons and those stated in ePlus's April 16 letter, ePlus therefore requests that the Court reject Lawson's overly complicated trifurcated proposal, and adopt the unitary procedure already ordered by the Court, and as proposed by ePlus and as instructed by *TiVo*. It is far too late in the day for Lawson to argue for the first time that the injunction order is unenforceable because it and the jury verdict upon which it was based are ambiguous.

Respectfully submitted,

Scott L. Robertson

cc: Counsel of Record

---

[9] Notably, when Lawson opposed ePlus's show cause motion in September 2011, even then Lawson raised no argument that ePlus's submission did not comport with the requirement to provide a "detailed accusation." *See* Dkt. No. 804.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2012, I will electronically file the foregoing

**CORRESPONDENCE FROM SCOTT ROBERTSON TO JUDGE PAYNE**

And serve on the following counsel of record as indicated:

via electronic mail:

| | |
|---|---|
| Daniel J. Thomasch, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-3800<br><br>Jason C. Lo, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>(213) 229-7153<br>VAED-620ExternalServiceList@gibsondunn.com | |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>EXT-Lawson-FinneganCorrespondence@finnegan.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com<br><br>***Counsel for Defendant Lawson Software, Inc.*** |

                                           _____/s/_____
                                           David M. Young (VSB #35997)
                                           **GOODWIN PROCTER LLP**
                                           901 New York Ave. N.W
                                           Washington, D.C.
                                           dyoung@goodwinprocter.com