# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Daniel J. Thomasch
Direct: +1 212.351.3800
Fax: +1 212.351.6200
DThomasch@gibsondunn.com

Client: T 56736-00004



April 30, 2012

VIA HAND DELIVERY

The Honorable Robert E. Payne
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, Virginia 23219

Re:   *ePlus, Inc. v. Lawson Software, Inc.*, Case 3:09-cv-00620

Dear Judge Payne:

By its letter of April 16, 2012, ePlus, Inc. ("ePlus") avoids the single issue upon which the Court invited the parties to offer their respective views and chooses instead to continue disparaging Lawson and arguing for procedures that, if followed, would defy *TiVo*. Lawson Software Inc. ("Lawson") does not seek to reargue any decided issue, and argues for the same approach to the hearing that it has advocated from the start.

It is for the Court to decide what was contended and proved at the infringement trial, *see TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011), and in doing so, the Court may be assisted by counsel's analysis of the trial record but not by expert witnesses purporting to opine on what the trial record means. Lawson respectfully submits this reply in further support of its proposal and to point out errors in ePlus's analysis.

## I.      Reply Overview

During the February 29, 2012 motion argument day in this case, after colloquy with counsel on how to implement the *TiVo*-required procedures, the Court announced its intention to bifurcate the presentation of the evidence at the contempt hearing:

> I'm talking about the bifurcation of the presentation of the evidence. I intend to be able – I may be able, at the end of the first one, to make a decision, but at least we're going to segregate the presentation of the evidence so that we're finished with the first task [colorability] before we take on the second one [infringement]. Then we won't have it lumped together.

Hearing Tr. 2/29/12 at 69. The Court, however, wanted particular guidance on how to approach the colorability issue: "I'm worried about the construct for how we do the first part

Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich • New York
Orange County • Palo Alto • Paris • San Francisco • Sao Paulo • Singapore • Washington, D.C.

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 2

of the analysis." *Id.* at 68. Lawson understood the Court's comment to refer to the Federal Circuit's instruction that colorability is the "primary question" on a proceeding to hold a party in contempt for violating an anti-infringement injunction, and that the proceeding must focus on "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." *TiVo*, 646 F.3d at 882. The Court appropriately framed the issue as: How are we to "define the animal" to be examined in the contempt inquiry? Hearing Tr. 2/29/12 at 67.

Lawson's March 27, 2012 letter directly answered the Court's request, proposing an approach, drawn from *TiVo*. Lawson proposed to "define the animal" in advance of the hearing by having the parties submit analyses of the record to the Court, based on which the Court would identify what was contended and proved as the basis for infringement. Lawson 3/27/12 Letter at 4-6. A hearing focused on colorability and infringement inquiries would follow the Court's ruling. *Id.* at 6-7

ePlus's opposing letter does not cite or acknowledge the Court's February 29 statement about bifurcation of colorability and infringement, and does not address the issue on which the Court sought specific guidance. Most of the ePlus letter caricatures Lawson's arguments, without advancing any affirmative proposal for identifying the "animal."[1] ePlus dismisses as "dicta" the *TiVo* requirement that contempt must be predicated on specific product features that the patentee contended and proved as the basis for infringement, and asserts that "this Court need do no more than look at the verdict form, the judgment and the injunction order" to determine the scope of the contempt proceeding. ePlus 4/16/12 Letter at 6. ePlus also attempts to misdirect the Court by insinuating that the colorability and infringement analyses are one and the same – in direct contravention of clear Federal Circuit mandate in *TiVo* – and that the Court's bifurcation approach is impractical and unnecessary.

ePlus cannot ignore in this follow-on application for a judgment of contempt the boundaries it drew in the primary proceeding on infringement. *First*, the jury's mixed verdict shows that the jury did not accept all of ePlus's contentions. All the jury findings – including the 27 findings of non-infringement (*see* Verdict, Dkt. No. 600 at 1-3 (Jan. 27, 2011)) – must be considered in light of the evidence and contentions to sort out what the jury found that ePlus proved. The adjudicated configurations had overlapping features and ePlus offered common evidence in support of its case infringement case. Based on ePlus's presentation of evidence, it is not self-evident what specific product features the jury found

---

[1] For example, ePlus criticizes Lawson for: (1) attempting to relitigate issues previously decided; (2) contending that the verdict was "inconsistent"; (3) contending that the injunction was "toothless" from the start; and (4) attempting to avoid contempt based on unmodified product features. Lawson has advanced *none* of those arguments.

GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 3

to be infringing.  That is why the Court should implement Lawson's proposal for analyzing the record and defining the issues for the contempt hearing.  *Second, TiVo* makes absolutely clear that colorability and infringement are two entirely distinct inquiries.  ePlus's approach would blur the two.  The Court's determination to treat them separately follows *TiVo,* and should not be reconsidered.

## II.    The Proper *TiVo* Foundation

ePlus's critique of Lawson for proposing *"three* evidentiary hearings" (ePlus 4/16/12 Letter at 2; *see id.* at 1-5) has no basis because Lawson made no such proposal.  What Lawson did propose was one hearing and, leading to it, a procedure derived from *TiVo* by which the Court would define the colorability and infringement issues for trial.[2]  *See* Lawson 3/27/12 Letter at 4-6.  The two-stage hearing Lawson described follows the Court's prescription from February 29, Hearing Tr. 2/29/12 at 69-70, and is consistent with Lawson's long-held position.  *See* Hearing Tr. 11/8/11 at 30-32.

Contrary to ePlus's characterization, Lawson accepts the jury findings as an essential part of the foundation for the contempt hearing.  As Lawson told the Court on February 29 in reference to preparing a proposal for complying with *TiVo,* "we do want whatever we do to take account of the unique situation here where we had alternative theories and **multiple verdicts that are not in conflict with each other but which differ . . . ."**  Hearing Tr. 2/29/12 at 196 (emphasis added).  Lawson proposed for the parties to assist the Court in determining what was contended and proved by making written submissions, ePlus to start, on the specific features of the adjudicated product that plaintiff asserts were "contended and proved" to be a basis for the infringement finding, and by identifying the support in the trial record for such assertions.  Lawson 3/27/12 Letter at 4-5.

Lawson's recommendation draws upon firmly established principles of claim preclusion.[3]  "A wide variety of cases illustrate that the first step in resolving uncertainty as to the identity of the issues actually decided lies in painstaking examination of the record of the prior action."  18 Wright, Miller & Cooper, Federal Practice and Procedure § 4420 at

---

[2]   ePlus misconstrues what was "telescope[d]" in *TiVo.* ePlus 4/16/12 Letter at 2. *TiVo* discarded the prior approach whereby courts had held separate hearings to determine whether a contempt action could be brought at all. *TiVo,* 646 F.3d at 881. It was not sanctioning any conflation of the colorability and infringement analyses.

[3]   ePlus reads Lawson's call for analysis of the record as a collateral attack on the verdict for inconsistency. ePlus 4/16/12 Letter at 6-8. That is wrong. While ePlus devotes pages in its letter to the issue of inconsistent verdicts, Lawson does not seek avoid the jury's general verdicts in this proceeding; rather, Lawson submits that the verdict must be interpreted, and harmonized, in light of plaintiff's contentions and the evidence introduced at the infringement trial.

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 4

516-18 (2nd ed. 2002) (collecting cases); *see also, e.g., Hoult v. Hoult*, 157 F.3d 29, 32-33 (1st Cir. 1998), *cert. denied*, 527 U.S. 1022 (examining "opening statement[s]," "closing argument[s]," and witness testimony to determine "the central and pivotal issue" behind a prior action's general verdict); *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2nd Cir. 2000) (explaining the necessity of "a detailed examination of the record" from a prior action, "including the pleadings, the evidence submitted, and the jury instructions"); *Azalea Drive-in Theatre, Inc. v. Hanft*, 540 F.2d 713, 714-15 (4th Cir. 1976), *cert. denied*, 430 U.S. 941. ePlus even cites cases holding that jury verdicts are analyzed and should be "harmonized in view of the evidence." *Cox v. Collins*, 7 F.3d 394, 396 (4th Cir. 1993); ePlus 4/16/12 Letter at 11. Analyzing a trial record in detail to determine what was proved in a prior proceeding is not an exercise unique to the *TiVo* setting.

ePlus sees no need to analyze the infringement trial record to determine what was previously "contended and proved," asserting that the verdict form, judgment and injunction suffice to lay a predicate for contempt. ePlus 4/16/12 Letter at 6. *TiVo*, however, requires more. ePlus is not entitled to presume, based on a general verdict, that any one theory of infringement was accepted by the jury, as opposed to another. "[I]f a judgment rests on independent grounds, either of which would support the result, the judgment is not conclusive with respect to either issue standing alone." *C.B. Marchant Co., Inc. v. Eastern Foods, Inc.*, 756 F.2d 317, 319 (4th Cir. 1985); *Board of Cty. Supervisor of Prince William Cty. v. Scottish & York Ins. Servs., Inc.*, 763 F.2d 176, 176 (4th Cir. 1985); *Novartis Pharmaceuticals Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004).[4]

*TiVo* itself mandates a close analysis of the infringement trial record in connection with a follow-on contempt proceeding. The full quote from *TiVo* on how to approach the "primary question" of colorability in a contempt hearing reads as follows:

> The analysis must focus not on differences between randomly-chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, *Additive Controls*, 154 F.3d at 1350, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended and proved, satisfy specific limitations of the asserted claims.

---

[4]   ePlus cites to cases in which appellate courts reviewed verdicts challenged for sufficiency of the evidence (ePlus 4/16/12 Letter at 9), but those cases have no bearing on this issue. ePlus's attempt to distinguish *C.B. Marchant* involves a point totally irrelevant to that for which Lawson cited the case. *Compare* ePlus 4/16/12 Letter at 4, n.5; *with* Lawson 3/27/12 Letter at 2.

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 5

*TiVo*, 646 F.3d at 882. While ePlus dismisses this as "a fleeting reference – in dicta," ePlus 4/16/12 Letter at 3, it indisputably reflects a *holding* of *TiVo* because the analysis it sets out was applied to set aside the district court's decision. Applying the "contended and proved" analysis, the Federal Circuit *vacated* the district court's judgment because it was based on a feature (the "PID filter") common to the adjudged infringing and modified products, that the plaintiff had not "unequivocally alleged" in the infringement trial to meet the particular claim limitation. Indeed, the Federal Circuit vacated the district court's contempt judgment even though the defendant *conceded* in the contempt proceeding that feature in the new product met the claim limitation at issue. *TiVo*, 646 F.3d at 883 (discussing the claim limitation at issue; TiVo did not unequivocally allege in the infringement trial that the PID filter met that limitation). Identifying what the patentee contended and proved as the basis for infringement is not optional: *TiVo* sets that boundary for the contempt proceeding.

Lawson's proposed approach, by which the Court can focus the issues to be considered through examination of what was previously contended and proved at trial, and then conduct an orderly, two-staged colorability and infringement inquiry, is consistent with traditional issue preclusion doctrine and mandated by *TiVo*.

## III.    ePlus's Flawed Approach

ePlus's letter pays lip service to *TiVo*, but offers nothing on how to comply with the mandate of that case to define that which was "contended and proved" at trial. ePlus's analysis also errs by treating colorability and infringement as so closely linked that the determination of one (with infringement usually in the lead) will "inexorably" decide the other. ePlus 4/16/12 Letter at 4-6.

ePlus claims it has "already provided" a detailed factual predicate for the contempt hearing, pointing to its September 9, 2011 motion to show cause and supporting memorandum of law. ePlus 4/16/12 Letter at 5 (citing Dkt. Nos. 798, 799). Those two documents do not satisfy what *TiVo* demands. First, Plaintiff's motion described the predicate as follows:

> A jury of this Court, after a three-week trial in January 2011, returned a verdict of infringement against the Defendant's Configuration 2 (Core S3 Procurement + RSS), Configuration 3 (Core S3 Procurement + RSS + Punchout) and Configuration 5 (Core S3 Procurement + RSS + Punchout + EDI) infringe ePlus's patents. In May 2011, this Court entered an order enjoining Defendant from continuing its infringing activity.

ePlus's Motion to Show Cause, Dkt. No. 798 at 1 (Sept. 9, 2011). This statement does not satisfy *TiVo* because it does not identify which features were previously contended *and*

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 6

*proved* to be the basis for infringement. As the Court is aware, the jury considered five software configurations that were comprised of overlapping components. Thus, the same product features (one example being Item Master) were included in both infringing and non-infringing configurations. ePlus's evidence and argument was frequently directed to all five configurations but the jury did not accept such a broad brush approach. Configuration 2, for example, did not infringe *any* asserted claims of the '683 patent – a finding of distinct significance when considered with ePlus's trial contentions and the jury findings on the other configurations, with some of the same features, that were found to infringe the very same claims that Configuration 2 did not.

Second, ePlus's brief in support of its Motion to Show Cause sheds no additional light on the subject of what was contended and proved. It begins with infringement, referring to ePlus's infringement experts' views of Lawson's new product, and works backward from there to analyze colorability in infringement terms. *See* ePlus Memorandum in Support of Motion to Show Cause, Dkt. No. 799 at 20 (Sept. 9, 2011).

Because ePlus had identified the Item Master feature of the Lawson software (among other features) as meeting the "maintaining at least two product catalogs" limitation of claims in the '683 patent, Lawson used Item Master to illustrate the need to analyze the trial record pursuant to *TiVo*.[5] Lawson reviewed specific elements of proof, arguments of counsel, and the jury verdict relating to Configuration 2 (includes Item Master; jury found no infringement of the '683 patent) and Configuration 3 (includes Item Master and Punchout; jury found infringement of the '683 patent claims 3, 26, 28 and 29) to show that ePlus had *failed* to prove that Item Master met the identified claim limitation. Under *TiVo,* ePlus therefore cannot cite that feature as a basis for contempt.[6]

ePlus responded with a lengthy analysis that purports to show why the Court should construe the infringement trial record to support the conclusion that Item Master could be considered to meet the "maintaining at least two product catalogs" limitation. ePlus 4/16/12 Letter at 9-10. ePlus's ultimate conclusion on the matter is not founded on record citations

---

[5] Lawson's March 27th letter noted that ePlus made this Item Master assertion in its February 7, 2012 brief in support of its motion to strike portions of Lawson's expert report. *See* Lawson 3/27/12 Letter at 3.

[6] ePlus's contention that "there is no doubt that the 'Item Master' issue was extensively litigated and presented to the jury misses the *TiVo* point. *See* ePlus 4/16/12 Letter at 4 n.5. Item Master was raised in the infringement trial, but not as a feature that singularly satisfied the "maintaining at least two product catalogs" limitation. The verdict form and the injunction list product configurations on which infringement verdicts were returned, but neither references Item Master or any specific feature of the accused products. Of course, each of those configurations is comprised of many features, only one of which is Item Master. That is why record analysis is needed to determine which features were *proved* as the basis for the infringement verdict.

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 7

showing clear presentation to the jury of a theory involving Item Master and the claim limitation that is discretely reflected in one of the infringement findings. *Id.* Nor does ePlus reconcile the jury's findings on the relevant patent claims for Configurations 2 (non-infringement) and 3 (infringement) when both configurations included Item Master but only one included Punchout. *Id.* ePlus makes an inferential (and unsupported) leap from a different limitation ("converting data") to reach its ultimate conclusion about Item Master and the "maintaining at least two product catalogs" limitation. *Id.*

Sidestepping Lawson's analysis, ePlus now contends that what was proven at trial is "not relevant" because Item Master was not modified. ePlus 4/16/12 Letter at 3. ePlus confuses the issue: Lawson is not relying on Item Master in any way in this proceeding, but ePlus is similarly barred from relying on Item Master *unless* it can be shown that ePlus contended *and proved* that Item Master specifically met a claim limitation that was the basis for a jury finding of infringement. That showing cannot be made.[7]

ePlus additionally errs in suggesting that because Lawson has already specified the three modifications it made in creating RQC, there is no need to identify the features that were "contended and proved" to be infringing. Such a predicate analysis is needed so that the court can "focus" on differences between what was contended and proved as the basis for infringement and the modified features of the newly accused product. *TiVo,* 646 F.3d at 882. ePlus cannot look at Lawson's modified product in a contempt setting and pick and choose any features as allegedly infringing the asserted patent claims. A contempt remedy is limited to the features ePlus previously contended and proved as a basis for infringement; other features that ePlus might choose to attack would have to be the subject of a new infringement case.

The parties' divergent views on this issue shows why the Court should adopt Lawson's proposed procedures. Questions such as this can – and should – be resolved *before* the evidentiary hearing, and following Lawson's procedures should allow the parties to nail down what features of the adjudged infringing product were contended and proved as the basis for the judgment and injunction.[8] *See* Lawson 3/27/12 Letter at 4-6.

---

[7] Lawson is prepared to demonstrate at the appropriate juncture that ePlus's witnesses and counsel provided the jury with evidence and argument that would have allowed the jury to find, *inter alia,* that any product configuration with *RSS* satisfied the "converting" element of claims 3 and 28 of the '683 patent, and thus the jury need *not* have relied on Item Master to satisfy that limitation.

[8] This case is not like the few other reported post-*TiVo* cases ePlus touts as very simple matters involving a day or two of court time. None of those cases appear to have involved mixed findings like this case. Even so, each one performed a colorability analysis in light of original product features that were a basis of the infringement judgment. *See nCube Corp. v. Seachange Int'l, Inc.,* 809 F. Supp. 2d 337, 353 (D. Del. 2011) (jury verdict of willful infringement of asserted patent claims; modification analyzed against feature that

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 8

ePlus next proposes that the Court disregard its own statement on bifurcating the colorability and infringement analyses, contending that the two need not be differentiated. In so doing, ePlus does not discuss, cite, or even acknowledge the Court's statement on February 29 that the contempt hearing would be bifurcated into a colorability first stage and an infringement second stage (if necessary).[9] *See* Hearing Tr. 2/29/12 at 69-70.

Contrary to ePlus's suggestion, the Federal Circuit requires separate consideration of the two issues, with colorability first in line, because the pre-*TiVo* approach "has misled district courts to focus solely on infringement by the newly accused devices in deciding contempt." *TiVo*, 646 F.3d at 882 (disapproving *KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985)). Setting a new course, the Federal Circuit "reject[ed] that infringement-based understanding of the colorably different test" and identified "[t]he primary question" on contempt as "whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground for doubt as to the wrongfulness of the defendant's conduct.'" *Id.* If the plaintiff fails to show by clear and convincing evidence that the new product is not more than colorably different, then "the inquiry into whether the newly accused product actually infringes is irrelevant." *Id.*

*TiVo* makes clear that the colorability and infringement analyses are distinct and differ materially. This is no "hair-splitting exercise." ePlus 4/16/12 Letter at 6. The first inquiry compares product features of the old and new products; the second compares the new product and the patents.

ePlus tries to skip past the colorability issue with the statement that Lawson has no defense because it has "conceded" it continues to sell configurations previously found to infringe "with only the three alleged modifications having purportedly been made." ePlus 4/26/12 Letter at 6. Lawson is selling a new product, modified to be different from the adjudged infringing configurations. *See TiVo*, 646F.3d at 883 ("legitimate design-around efforts should always be encouraged as a path to spur further innovation"). It takes much

---

was proved as basis for infringement); *Petter Invs., Inc. v. Hydro Eng'g, Inc.*, No. 1:07–CV–1033, 2011 WL 2935411 at *2, *4-*6 (W.D. Mich. July 18, 2011) (summary judgment of infringement on all asserted patent claims; modification analyzed against feature that was proved as basis for infringement); *Merial Ltd. v. Cipla Ltd.*, No. 3:07–CV–125 (CDL), 2011 WL 2489753, at *12 (M.D. Ga. June 21, 2011) (infringement judgment entered on default; new product had same active ingredients and relevant compounds as infringing product).

[9] ePlus feigns offense at Lawson because, at the November 8, 2011 conference, Lawson opposed bifurcation of remedies from liability. ePlus 4/16/12 Letter at 7; see Hearing Tr. 11/8/11 at 36. The bifurcation ePlus sought in November is completely different from the staged proceeding the Court described on February 29. Lawson supported separating colorability from infringement and opposed bifurcating remedy from liability then, and maintains exactly the same position today.

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 9

more than a conclusory argument and a dismissive tone to prove by clear and convincing evidence that Lawson's modifications render the new product not more than colorably different than the adjudged infringing product.

ePlus compounds its erroneous argument in favor of collapsing the two inquiries by insinuating that an infringement analysis need not be conducted at all if more than colorable differences are absent between the adjudged and new products. ePlus contends that "the answer to the second question [whether RQC infringes] follows inexorably [sic] from the first [whether RQC is more than colorably different from RSS]." ePlus 4/16/12 Letter at 4. ePlus's statement contradicts binding precedent. *See TiVo*, 646 F.3d at 883 ("the court is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met"). If ePlus's argument is credited, the second step of the *TiVo* analysis would be dead letter.[10] While ePlus cites a laundry list of cases that purportedly support its proposition that the outcome of the two tests necessarily go hand in hand (ePlus 4/16/12 Letter at 5n.6), all but one of those cases predate *TiVo*. Almost all cite and rely upon the very statements from *KSM* that the *TiVo* court disapproved. *TiVo*, 646 F.3d at 882. Others exhibit marked conflation of the two tests that do not survive *TiVo*, and therefore have no precedential value.

Plus plays a dangerous game in inviting the Court to read out steps of the *TiVo* test; it would invite reversal to skip or conflate the mandated, independent analyses or to treat either, as ePlus would have it, as a foregone conclusion.

## IV.   Conclusion

ePlus won an injunction based on an infringement verdict and may seek to enforce the injunction against Lawson's new product, but it must do so following procedures that *TiVo* mandates. Lawson has provided the Court with a clear way forward in accordance with *TiVo*. ePlus stubbornly resists any suggestion that this contempt proceeding must be more than a *pro forma* exercise. ePlus has a heavy burden that cannot be met by arguing that unmodified features of the new product meet a claim limitation without proving that such product features were actually proven to do so at trial.

---

[10] ePlus criticizes Lawson for an alleged failure to "explain how *these modifications* might be non-infringing and yet not more than colorably different from the features found infringing at trial." ePlus 4/16/12 Letter at 6 (emphasis in original). It is not Lawson's burden to do so. It is unequivocally ePlus's burden to prove otherwise, independently, and indeed by "clear and convincing evidence." *TiVo*, 646 F.3d at 883 ("The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences.").

# GIBSON DUNN

The Honorable Robert E. Payne
April 30, 2012
Page 10


Adopting Lawson's approach will set the parties and the Court on an orderly path to framing the issues for the contempt hearing, and for conducting the hearing.

Respectfully submitted,

*Daniel J. Thomasch*

Daniel J. Thomasch

DJT/las

Attachment

cc: All Counsel