```
                IN THE UNITED STATES DISTRICT COURT

                FOR THE EASTERN DISTRICT OF VIRGINIA

                        RICHMOND DIVISION




   ----------------------------------------
                                           :
    ePLUS, INC.                             :   Civil Action No.
                                            :   3:09CV620
    vs.                                     :
                                            :
    LAWSON SOFTWARE, INC.                   :   September 14, 2012
                                            :
   ----------------------------------------


              COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

                  BEFORE THE HONORABLE ROBERT E. PAYNE

                     UNITED STATES DISTRICT JUDGE


   APPEARANCES:

   Scott L. Robertson, Esquire
   Jennifer A. Albert, Esquire
   April Weisbruch, Esquire
   Goodwin Procter, LLP
   901 New York Avenue NW
   Suite 900
   Washington, D.C.  20001

   Paul W. Jacobs, II, Esquire
   Christian & Barton, LLP
   909 East Main Street
   Suite 1200
   Richmond, Virginia  23219-3095
   Counsel for the plaintiff


                        Peppy Peterson, RPR
                       Official Court Reporter
                     United States District Court
```

```
 1   APPEARANCES:  (cont'g)

 2   Dabney J. Carr, IV, Esquire
     Troutman Sanders, LLP
 3   Troutman Sanders Building
     1001 Haxall Point
 4   Richmond, Virginia   23219

 5   Daniel J. Tomasch, Esquire
     Richard W. Mark, Esquire
 6   Gibson Dunn
     200 Park Avenue
 7   New York, New York 10166

 8   Jason Lo, Esquire
     Gibson Dunn
 9   333 South Grand Avenue
     Los Angeles, California   90071
10   Counsel for the defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2

 3            THE COURT:  Hello.  This is ePlus against Lawson.
 4   It's 3:09CV620.  Beginning with counsel for the plaintiff,
 5   please identify yourself and give your name when you speak,
 6   please.
 7            MR. ROBERTSON:  Your Honor, this is --
 8            THE COURT:  Somebody is talking in the background,
 9   and it's hard to hear.
10            MR. ROBERTSON:  Your Honor, this is Scott Robertson.
11   I apologize.  I'm in LaGuardia Airport.  I had an argument in
12   the Southern District of New York this morning, and that's
13   background noise you're going to be hearing.  I can try and
14   mute my phone, and I will do that, but I did want to
15   participate.
16            THE COURT:  All right.
17            MR. JACOBS:  Your Honor, this is Paul Jacobs,
18   Christian & Barton, for ePlus, and I think we have two others
19   here for our team, Jennifer Albert and April Weisbruch.
20            THE COURT:  All right.
21            MR. THOMASCH:  Your Honor, this is Daniel Thomasch
22   from Gibson, Dunn, and Crutcher.  With me on the phone for
23   defendant Lawson are my partners Richard Mark and Jason Lo, and
24   also Mr. Dabney Carr from Troutman Sanders is on the call with
25   us.
```

1        THE COURT: All right. I have called you all --
2  asked for this call because I gather that this matter is back
3  here, and we need to set a date for the hearing. And then I
4  got the motion that I had gotten -- I mean that was filed,
5  excuse me, yesterday, I guess it was, by ePlus, a motion to
6  enforce a court order compelling production.
7        I guess this is a motion under Rule 37. I don't
8  know. I guess it is, yes. Anyway, we need to set a schedule
9  for the response to that and go ahead and get things on the
10 calendar underway so we can finish this up. So, when are you
11 going to file your response, Mr. Thomasch?
12       MR. THOMASCH: Your Honor, I would request that we
13 have a little time to do this. The motion came while we were
14 in the process of reviewing thousands of documents based on
15 letters from plaintiff's counsel asserting that we should have
16 produced certain documents, and we had several
17 meet-and-confers. I understood we were in the meet-and-confer
18 process.
19       We had informed plaintiff's counsel that we were
20 going back through them. They raised four categories of
21 documents, three of which we've been through, and we've
22 produced certain documents as a result of our re-review. The
23 large category of somewhat in the nature of 5,200 documents, we
24 have a team that is currently reviewing all of those, although
25 we believe -- obviously we had done this once.

1           We're redoing it at their request.  I think we'll be
2    finished that task sometime late next week, and we will, I am
3    sure, be producing some additional documents thereafter, and we
4    will have identified, as I've told plaintiff's counsel, certain
5    areas in which there is simply a question as to whether a
6    particular type of document needs to be produced or not and
7    that we did feel that at that point we'd be ready to go to the
8    Court.
9           We'd be happy to address those in papers.  If we
10   could have ten or 11 days from the end of next week to do so,
11   that would do two things for us, Your Honor.  It would allow
12   us, one, to finish our review of the documents and make sure
13   that we're not fighting about things that we are prepared to
14   give them.  We started the review process as soon as we got
15   their list of documents, and we've been at it since.
16          The second thing is we do have in the next two weeks
17   a number of the attorneys on our team who will be out for
18   religious holidays, and it does compromise things if we're on a
19   very short time frame.
20          MR. ROBERTSON:  Your Honor, this is Mr. Robertson.
21   If I might briefly respond before they start announcing flights
22   again.  This is what Mr. Thomasch told you at a hearing on
23   February 23, that they were going to produce these documents
24   immediately.
25          They've had six months since they filed a writ of

1  mandamus, and it's been denied.  He went on to say, "We will
2  produce each and every document that Your Honor ordered to be
3  produced and will produce them as quickly as possible.  That is
4  not an issue.  I'm assuming complete production if we lose in
5  the Federal Circuit."
6  	Based on that, the Court entered an order saying, "As
7  the defendant represented, it shall continue to ready the
8  documents referred to in the order and memorandum of opinion
9  for production so that in the event the petition is denied,
10 proceedings can commence without delay."
11 	They've had six months to do this, Your Honor, and
12 now they're saying that they need more time to go over this
13 document review?  I assume they didn't put these things on the
14 privilege log in any kind of haphazard fashion.  They've had
15 multiple times to review these.
16 	It's just really unacceptable for them to turn around
17 and say, after the representations they made to the Court and
18 the order the Court made, that they now want additional time.
19 If anything, the briefing schedule here should be expedited,
20 not delayed.
21 	MR. THOMASCH:  Your Honor, if I might briefly
22 respond.  It's Mr. Thomasch.
23 	THE COURT:  Yes.
24 	MR. THOMASCH:  We did nothing haphazardly, Your
25 Honor.  We did review the documents.  We had nearly 3,000

1    documents set aside for production.  The mandamus order was
2    issued on the afternoon of August 10th.  That was a Friday
3    afternoon.  By August 15th, we started to produce, and by
4    August 17, one week to the day, we had produced all of the
5    documents that we thought were responsive, 100 percent.  We
6    weren't attempting to --
7                THE COURT:  What does 100 percent constitute; the
8    3,000?
9                MR. THOMASCH:  That was 2,800-and-some-odd documents,
10   Your Honor.  We have since added over 300 documents to that
11   list because we were given -- we were given alleged errors by
12   plaintiff's counsel, and we have gone back -- I don't know how
13   to do it other than when they tell us, we think you didn't
14   produce things you should have, we then said, well, we'll go
15   back and look at them.
16               And we looked at the documents, and we started to
17   produce more documents where we thought that either they were
18   right or it was simply a question that wasn't worth fighting
19   about, and so we're trying to get this issue behind us.  We
20   produced additional documents.
21               There is a large category of documents, Your Honor,
22   that relate to the subject matter waiver, the subject of the
23   development of RQC, and I would say to Your Honor that this
24   should be done on papers, but that there are legitimate
25   differences of opinion between Mr. Robertson's team and myself

1 as to how to understand that so that if, for instance, a
2 document, months after the commercially available RQC was on
3 the market, if a document in litigation was sent from counsel
4 to the client regarding differences between RSS and RQC, we
5 would say that's a document about the litigation, not a
6 document that was in the developmental process.
7         I think plaintiffs see it differently, and we do have
8 an issue.  We're not going to reach an agreement with them.
9 We're going to produce 100 percent of the documents we
10 understand to be called for by Your Honor's order, but Your
11 Honor's order had limits on it.  It didn't go to every document
12 on the privilege log.
13         We are going back through them in a very good faith
14 attempt, and we're trying to resolve close calls in favor of
15 production.  I believe we will finish that process next week.
16 Then we would like a chance to put in an opposition to sort of
17 an inflammatory motion that was made that I'd like to respond
18 to in writing in due time, and I think we could do that on a
19 ten-day schedule if that would be acceptable to Your Honor.  If
20 not, we will meet whatever schedule Your Honor sets.
21         THE COURT:  I'm willing to give you a reasonable
22 period of time, but -- if you are taking the positions -- if
23 they have accurately recited the positions you are taking, then
24 you need to rethink a lot of positions, and I'll use one
25 example.

1          A document dated after the rollout or whatever date
2    you are talking about of the RQC that mentions what happened
3    before that rollout cannot be protected under even your theory,
4    and if that's a definitional problem you've got, that one is
5    solved right now.
6          Now, I understand you have a different question,
7    perhaps, with respect to discussions between counsel after it
8    was released and that deal with the issues, but you've got a
9    waiver and you need to face that fact, and the other thing is
10   if, in fact, you are claiming privilege because some copy of a
11   document was sent to a lawyer, you can't do that either.
12         Copying to a lawyer is not a privilege communication.
13   Just sending a copy isn't.  There's a lot more to it than that.
14   That's dealt with in the *Brainware* decision.  So in any event,
15   while you're doing your review, do it.  So you file your
16   response then -- 11 days you want, and that would be -- today
17   is what; the 13th -- no, 14th.
18         MR. THOMASCH:  Today is the 14th.  I was hoping, Your
19   Honor, and particularly in light of what you've just said
20   which, I think, is going to require us to go back through
21   certain of the documents and produce more if I understood what
22   Your Honor just said, then we did interpret it somewhat
23   differently, because I will say that documents that were dated
24   in September and October of last year during litigation about
25   contempt that discuss differences between the documents but

1    were where, for instance, a lawyer would send a draft pleading
2    to the client to review it, and the draft pleading would have
3    in it certain information about the subject matter of this
4    lawsuit which doesn't entail differences between RSS and RQC,
5    we viewed that as a document about the litigation over
6    contempt, not a document about the development of RQC which was
7    already being sold for months.
8             THE COURT:  I'll leave you with my guidance to work
9    that out.  I'm not interested in viewing 5,000 documents *in*
10   *camera*.
11            MR. THOMASCH:  I understand.
12            THE COURT:  If there comes a point I have to do that,
13   I may appoint a special master.
14            MR. THOMASCH:  We're going to try to produce
15   documents so that isn't necessary, and Your Honor's statements
16   do, in fact, guide us because you've laid out some guidance
17   that is different from the guidance I had given my team, Your
18   Honor, and I will tell you that in all candor.
19            I did not understand the ruling that way, but we will
20   adopt, obviously, your position.  We are working through the
21   documents, again, the ones that have been raised.  If we could
22   have until a week from today to complete that process, which
23   would be the 21st, we can then send Mr. Robertson a list of the
24   documents that are in dispute.
25            There are going to be some in dispute.  I know that

1   because they've been reviewed, and we don't even understand how
2   they came onto their list. We will then have a specific list.
3   We'll try to make it as easy as we can as far as what documents
4   are withheld for what reason.
5          We have provided, with regard to many of the
6   documents already, a summary to Mr. Robertson of the reasons
7   why we believe the documents are properly not produced, and if
8   those are wrong, we now know which documents have to be
9   produced. If we could have two weeks from the 21st to put in
10  our papers in opposition, I think we could make this a more
11  manageable dispute.
12         MR. ROBERTSON: Your Honor, this is Mr. Robertson
13  again. Here's what I have trouble with: Many of their own
14  descriptions of the documents on the privilege log say redesign
15  of RSS, RQC redesign, RSS to RQC redesigned infringement.
16         These are exactly within the scope of the waiver that
17  Your Honor found, yet they're not producing these documents.
18  If they self-described them as an RQC redesign, why can't they
19  turn those over tomorrow?
20         THE COURT: I don't understand that either, Mr.
21  Thomasch. That's another category that perplexes me, and I
22  think you better look at it. If your people describe it as
23  fitting the category, there may be some slight abbreviational
24  difference, somebody might have said RQC and somebody may have
25  said RSS -- I don't know -- in the review process and writing

1   it down so they wrote it down differently, but if you
2   self-describe what it is and it falls -- and that description
3   falls within what's been ordered, there isn't any reason that
4   shouldn't be produced immediately.
5           MR. THOMASCH: I agree, Your Honor, and we have been
6   trying to produce documents on a rolling basis. We're going
7   back through this category. Within this category we may be
8   able to produce on a rolling basis, but I will tell you that
9   the vast majority of documents, my understanding is, within
10  this category do not even mention RQC much less redesign or
11  development.
12          There are 5,000 documents in this category and a
13  relative handful that had a description that makes it appear as
14  though they should be produced was raised in the papers, and,
15  Your Honor, what we're doing is going back and looking at them,
16  and we will produce those, but that is not what most of these
17  documents are about, and there may be an issue, but we're going
18  back, and we're re-reviewing the documents --
19          THE COURT: May be what issue? If your document has
20  a caption on it that is re RSS or RQC or redesign or whatever
21  it is, you have to produce it. And then it's up to them to
22  figure out whether or not its substance, in fact, deals with
23  that, and it's up to you to deal -- to address substantively
24  whether its substance addresses the actual topic or not, but if
25  your own client captioned it as one way or another and you

```
 1   captured that particular description and put it and used it on
 2   your log, you can't withhold the document on the grounds that
 3   it didn't comply with what its heading was.  That means -- that
 4   won't fly.
 5              MR. THOMASCH:  I absolutely understand, Your Honor.
 6   I think these were not issues where the client described them
 7   that way, but it potentially involved where someone making the
 8   privilege log did it, but I understand what Your Honor is
 9   saying, and we're going to have to produce more documents.
10              You have interpreted or clarified in a way that is
11   broader and that we will now -- we will address.  I did not in
12   good faith understand the documents about the litigation were
13   what you were talking about, and I'm not rearguing the point.
14              I'm just saying to Your Honor that to the extent my
15   team made an error in that regard, it's because they were
16   instructed improperly.  You have clarified.  We will back, and
17   we will continue this process.
18              It will not mean that all 5,000 of these documents
19   will be produced, because I've seen enough of them to know that
20   there are many that have no possible relationship to the
21   development of RQC, but we are going to have to produce some
22   more, and we will.
23              MR. ROBERTSON:  Your Honor, I, of course, don't want
24   the Court to have to review 5,000 documents, but I think, as
25   Your Honor did, I believe, just this summer in a decision I
```

1 thought you were able to review 100 to determine whether
2 privilege applied or not. I'll pick a slightly larger number
3 like 200, but if we can't resolve this process, I would
4 respectfully suggest that the Court do some sort of *in camera*
5 review to determine whether or not these documents are being
6 legitimately withheld.
7 We litigated this thing, we went to the Federal
8 Circuit, it's been six months. I, like the Court, want to move
9 this forward. I think you said once that this was your longest
10 pending case on your docket right now, and you've been a
11 federal judge for more than 20 years. So we want to resolve
12 this and move on with these proceedings and not get this pushed
13 out indefinitely.
14 THE COURT: Did you take a particular course in the
15 injection of inflammatory remarks into otherwise neutral
16 comments? I'm trying to solve the problem here, and I'm going
17 to give you -- if you need a week to review them, that's fine,
18 but what you ought to be doing is producing in the meantime
19 those that you are satisfied that you should produce on a
20 rolling basis, and then file your brief one week after that
21 which would be the 28th.
22 MR. THOMASCH: We will do so, Your Honor. Thank you
23 very much.
24 THE COURT: Then any reply brief you want to file,
25 Mr. Robertson, how much time do you want to file your reply

1    brief?

2         MR. ROBERTSON:  I guess three business days, Your
3    Honor.

4         THE COURT:  All right, you can file that on the --
5    that would be October 3rd.  All right?

6         MR. ROBERTSON:  Thank you.

7         THE COURT:  All right, and, gentlemen, I'm going to
8    ask you to sit down and assess fairly quickly in perspective of
9    the documents if there needs to be any other discovery by way
10   of deposition and then how we're going to deal with a hearing,
11   and I'd like to get this on the schedule given there are a
12   goodly number of other matters that are coming my way including
13   a case in which three defendants are facing the death penalty,
14   and it will take priority over your case.  It has to by law.

15        So I would appreciate your doing some long-range --
16   some planning, thinking, and structuring of the case so we can
17   figure out where we're going to go, get it on the calendar and
18   go from there, and when we talk about that, I realize, Mr.
19   Robertson, you have some difficulty yourself in doing that
20   until you get the documents, but in talking about that, just be
21   mindful that we're going to be moving at a fairly good clip.

22        One other question, Mr. Robertson.  In your brief,
23   you write near the end of it and then have a lengthy footnote
24   about the fraud -- crime-fraud exception.  Are you asserting
25   that that's an issue at this stage that needs to be addressed?

```
 1  If it is, it needs to be addressed more completely than I see
 2  it addressed.  If it's not, then they really shouldn't need to
 3  be wrestling with it, and neither do I.  I don't want to
 4  address it when a lick and a promise is given to it, but I
 5  found with both of you, sometimes you all embed arguments that
 6  end up being the lynchpin of what you say orally in a footnote
 7  or in a sentence or two, and I don't want to go through that
 8  again.  You need to tell me --
 9          MR. ROBERTSON:  Let me reflect on it.  You know, what
10  I think is the documents reveal that, in fact, this is a fraud.
11  I wouldn't suggest it's criminal, although I do believe that
12  there was testimony that was given during the injunction
13  hearing that was simply made up from whole cloth.
14          THE COURT:  That would be called perjury under 18
15  U.S.C. perjury.
16          MR. ROBERTSON:  I would just ask, Your Honor, I know
17  you just got the brief yesterday, let me --
18          THE COURT:  You just got the brief?  I thought you
19  just filed the brief.
20          MR. ROBERTSON:  You just got the brief, Your Honor.
21          THE COURT:  Oh, yeah, I did.
22          MR. ROBERTSON:  I would assume that you haven't had a
23  chance to review it, you know --
24          THE COURT:  I have read it.  I read it this morning.
25
```

1          (Indiscernible cross-talking.)

2

3          THE COURT: Wait a minute. Wait a minute. You are
4    driving the court reporter crazy, and she's going to kneecap me
5    if you don't watch out.
6          MR. ROBERTSON: I apologize.
7          THE COURT: I want you to decide whether you are
8    urging some kind of crime-fraud exception to a broader waiver
9    or whatever it is. It's hard for me to follow. If you are,
10   you're going to have to brief it and give them a chance to
11   fully brief it, because it is a serious matter.
12         I realize you're not accusing the law firm of crime
13   or fraud, and that isn't required for the crime-fraud exception
14   to apply. It's whether the client engages in either the crime
15   or fraud and involves the law firm in it either intentionally
16   or unwittingly.
17         So a lawyer can be utterly innocent in the matter,
18   and the waiver or the doctrine still applies, but it is a
19   serious accusation and one that needs to be treated with a
20   greater dignity than is given it in your brief that I got
21   yesterday.
22         So, Mr. Thomasch, why don't you do this: Why don't
23   you not reply to that at this stage and let Mr. Robertson
24   decide if he wants to tee it up directly, and if he does, then
25   you'll know exactly what you're responding to.

```
 1              MR. THOMASCH:  Thank you, Your Honor.
 2              MR. ROBERTSON:  Part of the problem, Your Honor, of
 3   course, is we only have a little bit more than one-third of the
 4   documents --
 5              THE COURT:  Mr. Robertson, did I give you a time in
 6   which to file it?
 7              MR. ROBERTSON:  No, sir.
 8              THE COURT:  No, I didn't.  I didn't, and I would
 9   expect that a reasonable person such as yourself would
10   determine that it would be a good idea, before making such a
11   charge, to read all those papers, and then there'll be time to
12   deal with it.  I don't want to rush to judgment.  I don't want
13   to play the four corners offense, either; all right?
14              MR. ROBERTSON:  I understand, Your Honor.
15              THE COURT:  Thank you all.  Have a nice weekend.
16              MR. THOMASCH:  Thank you.
17
18                    (End of proceedings.)
19
20
21         I certify that the foregoing is a correct transcript
22   from the record of proceedings in the above-entitled matter.
23
24
25        _____/s/_____            _____
          P. E. Peterson, RPR                    Date
```