IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEC 14 2012

ePLUS INC.,

Plaintiff,

v.                                    Civil Action No. 3:09cv620

LAWSON SOFTWARE, INC.,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on plaintiff ePlus, Inc. ("ePlus")'s MOTION TO ENFORCE COURT'S ORDER OF FEBRUARY 21, 2012, COMPELLING PRODUCTION OF DOCUMENTS AND FINDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE, AND FOR SANCTIONS (Docket No. 958). For the reasons set forth below, the motion is granted in part and denied in part.

### PROCEDURAL BACKGROUND

On May 23, 2011, the Court issued a permanent injunction, enjoining Lawson Software, Inc. ("Lawson") and "any person in active concert or participation with them" "from directly or indirectly making, using, offering to sell, or selling within the United States or importing into the Unites States" certain product configurations and services. (Docket No. 729). On September 9, 2011, ePlus Inc. ("ePlus") filed a Motion to Show Cause, alleging that Lawson was in violation of the injunction Order and seeking an order citing Lawson for contempt of Court.

1

(Docket No. 798). The focus of ePlus' contempt motion concerned an application of one of the infringing system configurations, Requisition Self-Service ("RSS"). Lawson redesigned RSS and created Requisition Center ("RQC") in its stead. ePlus alleged that the new RQC product is not colorably different from RSS.

Following a dispute over the production of documents related to the redesign, ePlus filed a MOTION FOR ENTRY OF ORDER REQUIRING PRODUCTION OF DOCUMENTS AND INFORMATION AS TO WHICH THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN WAIVED (Docket No. 869). After full briefing of the matter, the Court issued a Memorandum Opinion on February 21, 2012 (Docket No. 913), finding, inter alia, that (1) Lawson had waived attorney-client "as to the subject matter of Lawson's development of the RQC module;" (2) that Lawson had waived privilege with respect to items for which the privilege log entries were inadequate; and (3) entries pertaining to "communications between non-attorney's reflecting legal advice." Mem. Op. at 23.

Compliance with the Court's order was stayed while Lawson filed a Petition for a Writ of Mandamus in the United States Court of Appeals for the Federal Circuit, with the understanding that Lawson would continue to prepare the documents for production and, in the event of an adverse decision in the Federal Circuit, would immediately comply with the order. Order of February 24, 2012 (Docket No. 931). On August 10, 2012, the

2

Federal Circuit denied Lawson's petition for a writ of mandamus finding that Lawson's concerns could be reviewed on an appeal from final judgment and that mandamus was inappropriate. See Order of USCA (Docket No. 957).

On September 13, 2012, ePlus filed the motion presently before the Court seeking an order to compel production of the documents identified in the Court's February 21, 2012 Order. Lawson filed its Memorandum in Opposition (Docket No. 966) on September 28, 2012. EPlus filed a Reply (Docket No. 969) on October 3, 2012. Oral arguments on the motion were held on October 24, 2012.

**DISCUSSION**

**I. Scope of the RQC Subject Matter Waiver**

The core of ePlus' motion is an effort to compel the disclosure of approximately 4,000 documents that it believes fall within the scope of the Court's finding that Lawson had waived privilege as to the subject matter of the development of the RQC module. In its February 21 Order, the Court found that Lawson had waived attorney-client privilege as to the subject matter "of the development of the RQC module." Mem. Op. at 18. The Court further found that Lawson had failed to establish work product protection for the documents relating to the development to the RQC module because they were not prepared in anticipation of litigation. Id. at 22. Rather, the documents were prepared

3

"to help Lawson create a new product that it could market to consumers." Id. At the same time, the Court recognized that the scope of work product waiver was substantially more limited than that of the waiver of attorney-client privilege. Id. at 21; see also Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1222 (4th Cir. 1976) (finding that "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3)").

At issue here are approximately 800 documents that ePlus believes explicitly fall within the Court's Order as well as an additional approximately 3,200 document ePlus that believes may be encompassed within the Order based on the item description, the date, and the participants. (Tr. at 28:22-29:7). Lawson responds that the documents that appear to reference RQC fall primarily into two categories: (1) documents that deal with the "rollout" of RQC, and thus do not fall within the scope of the waiver of the "development" of RQC, (Tr. at 34:12-35:12), and (2) documents that were prepared in relation to the contempt litigation that is presently before the Court. (Tr. at 36:18-37:9).

As to the second category, ePlus is of the opinion that "there is no temporal limitation" on the "subject matter waiver" and that "Lawson should be compelled to produce all documents

4

implicated by the Court's subject matter waiver ruling, regardless of date." Mem. in Supp. at 17 n.4. As an initial matter, it is plainly the law of our Circuit that work product waivers cannot be the sort of sweeping "subject-matter" waiver that could apply in the context of attorney-client privilege. See Mem. Op. at 21 ("Waiver occurs as to the documents or opinion 'actually disclosed,' instead of as to the entire subject matter."). Accordingly, at the very least, there is a limitation on the waiver as to work product; namely, the point at which the documents in question became eligible for work product protection and to which Lawson properly claimed that protection. To that end, any document that was prepared in anticipation of the contempt proceeding could reasonably be seen as being entitled to work product protection. Lawson has failed to establish that any of the documents were prepared in anticipation of litigation prior to the filing of ePlus' MOTION FOR ORDER TO SHOW CAUSE (Docket No. 798) on September 9, 2011. However, documents prepared after that date and prepared in anticipation of those proceedings are entitled to work product protection, even where their subject matter falls within the subject matter waiver of attorney-client privilege, as long as they have been properly claimed as such in the privilege log.

Lawson seeks to draw a distinction between the "development of RQC" (for which the Court found that privilege had been

waived) and the "rollout" of the RQC product (which, in Lawson's view, is an entirely different stage of the process). (Tr. at 34:24-35:6). Based on this distinction, Lawson claims that not all documents that are logged with a reference to RQC or RSS can be assumed to reference the "redesign" or "redevelopment." Mem. in Opp. at 12 (noting that Lawson withheld documents "on the ground that, once commercialized, the redesigned product was no longer in development").

The Court's February 21 Order found that Lawson had waived attorney-client privilege "with respect to the subject matter of the development of the RQC module." Mem. Op. at 18. The Court found this waiver as a result of Lawson's production of "power points, which contained very detailed suggestions about how to modify RSS in order to avoid continuing infringement," Id., and by outlining the method by which the RQC module was developed during the depositions of several witnesses. Id. at 19. The question in interpreting the Court's finding appears to be: what actions constitute the "development" of RQC? "Development" is defined as "the act or process of growing, progressing, or developing." Collins English Dictionary (10th Ed. 2009). Lawson's distinction is well-taken and largely appropriate. EPlus is correct that there is no inherent temporal limit on the Court's order regarding the subject-matter waiver. Mem. in Supp. at 17 n.4. However, there is an inherent limitation in the scope

6

of the waiver. Accordingly, the Court finds that documents that relate to the "rollout" or commercialization of the RQC module do not fall within the Court's Order, because they do not relate to the "development" of the module. However, the waiver does apply to any information that discusses the development of RQC of the process of developing it, even if the document was created after that process had ended. Such documents, with appropriate redactions, must be produced.[1]

EPlus has identified 815 documents that it believes fall squarely and explicitly within the scope of the subject-matter waiver, but are being withheld. EPlus argues that, if the Court were to agree that the 815 documents are within the scope of the Order, the Court should then conclude that the remaining 3,200 documents are likely within the scope of the Order as well. However, after reviewing the log entries for the 815 documents, the Court cannot conclude that these documents represent obvious violations of the Court's order. While many of the entries do reference RQC, a significant portion of them indicate that they related to communications that arose after the filing of the

---

[1] It is possible, of course, that, for the reasons discussed above, some of those documents are entitled to work product protection, assuming that they were prepared in anticipation of litigation and have been properly claimed as such. The Court's Order is not intended to interfere with the ability of counsel to investigate and prepare for the contempt proceeding nor does the Court desire to interfere with counsel's ability to obtain information from his client by subjecting such disclosures to the subject-matter waiver.

motion to show cause. See e.g. Documents 45, 48, 75, 76, 77, 88, 90, 92, 110, 899, 904, 905 and others. Other descriptions reference issues such as "software migration and customer service," Documents Nos. 1600-03, and "third party royalties," Document No. 1606. Others are less clear, consisting of descriptions such as "E-mail requesting legal advice re: RSS from Greg Giangiordano," Document No. 2519, or "correspondence with Jordan Ekelin re: RQC issue," Document No. 3200.

At the hearing, counsel for Lawson represented to the Court the process by which such documents were reviewed. If a document appeared to have the possibility that it might fall within the scope of the subject-matter waiver, the document itself would be reviewed by an associate attorney at Gibson Dunn & Crutcher. (Tr. at 46:1-4). If there was any doubt whether a document fell within the scope of the Court's Order, that document was flagged for review and discussed with the partners working on the case. (Tr. at 46:12-18). Based on this review, Lawson represents that the documents identified by ePlus do not fall within the waiver, at least as far as Lawson understands it.

The Court generally agrees with Lawson's distinction between the "development" phase of the RQC module and the subsequent "rollout" and litigation phases. Further, the Court has no reason to doubt the representations made by Lawson's counsel as Officers of the Court. Therefore, the Court directs

8

Lawson to review the documents again, in light of the Court's discussion herein, and to produce those documents that fall within the Order, as clarified. However, the Court will not order widespread production of either the 815 exemplar documents nor will it assume that the other 3,200 are being properly withheld, at least not at this time.

The Court did review <u>in camera</u> the eight documents referenced by ePlus in its reply brief and the ten documents cited by Lawson. Of Lawson's exemplars, the Court finds that Documents 1371, 2784, 2922, 2939, 3058, 3077, 3210, 3250 and 3520 have been properly withheld, as logged. However, the Court finds that Document 2895 is only partially privileged: namely the April 11 email from Mr. Billgren to Mr. Ekelin and the April 8 email from Mr. Ekelin to Mr. Billgren are privileged and should be redacted; the remainder of the document should be produced.

Of ePlus' exemplars, the Court finds that Documents Nos. 1196, 2424, 3853, 5154, 5279, 6798, and 7609 are privileged and properly withheld, as logged. The Court finds that the first sentence of Document No. 2229 is not privileged, and should be produced subject to the redaction of the rest of the communication.

## II. Documents Lacking Author or Recipient Information

The Court's February 21 Order also found that Lawson had waived privilege for those entries in the privilege log that had been inadequately logged to include, inter alia, "entries that do not contain an author or recipient." Mem. Op. at 23. In its Motion to Enforce, ePlus has identified some 235 documents that is believes fall within the scope of the Court's order and that Lawson has nevertheless withheld. Pl. Reply at 10. At the request of ePlus, and with the consent of Lawson, the Court has reviewed in camera 217 documents identified by ePlus as falling into this category.

At first impression, the Court notes that very few of the documents identified by ePlus lack both an author and a recipient listed in the log. Of the documents reviewed by the court only 27 entries[2] could properly be described as having left the author and the recipient field blank. However, the technical requirements of the privilege log are to ensure that "the descriptions in the log must satisfy the claiming party's burden" of establishing privilege. Rambus, Inc. v. Infineon Techs., 220 F.R.D. 264, 272 (E.D. Va. 2004). Indeed, the February 21 Order plainly recognized that privilege could be

---

[2] Those are documents 46, 48, 50, 52, 54, 63, 65, 68, 77, 98, 595, 636, 910, 914, 961, 1325, 1379, 1438, 1440, 1894, 1895, 1924, 2308, 3023, 7701, 7947, and 8395. The highlighted privilege log attached as an exhibit to ePlus' reply brief identified several additional entries without any information regarding author or recipient.

maintained on the basis of the narrative description. See id. at 8-9 (finding that work product privilege was maintained where "in the narrative description for each offending entry, Lawson claims that the documents were prepared by a specific attorney in anticipation of litigation"). For all of the entries identified by ePlus for which there is neither an "author" nor "recipient" listed, the narrative description more than adequately identifies an attorney, disproportionately William Schultz, as either the author of the document or as the attorney who directed its preparation and claims them as either attorney-client communications or attorney work product. Accordingly, the log entries, while perhaps not ideal, satisfy Lawson's burden of providing sufficient identifying information to properly assert privilege. Therefore, the privilege relating to documents identified as having neither author nor recipient information, in the so-titled blocks, cannot be said to have been waived simply on the basis that the information was provided in the narrative description instead.

Most of the documents that ePlus identifies as missing author and recipient information identify either an author or a recipient; typically, an author only. Lawson's response is, quite simply, that "failure to log author or recipient information is only a deficiency if the document on the log is the type that would actually have that information." Mem. in

11

Opp. at 6. This proposition is plainly correct. Some documents clearly are, as Lawson argues, documents that "by their nature as stand-alone documents . . . do not have a recipient." Id. Based on the Court's review of the privilege log, and its review of the underlying documents, the vast majority of the challenged documents fall into this category. A significant percentage of the documents are drafts of declarations, motions, contracts, briefs, and other similar documents. Other examples include evidently free-standing outlines, notes, and commentaries. The failure to list a recipient for these documents is not a deficiency in the privilege log and, more importantly, the narrative description for these entries would allow a party seeking to challenge the claim to privilege to determine that these were documents of this sort.

At the hearing on this motion, the Court raised the possibility that some number of the documents at issue might not be privileged at all as a result of their being prepared for public consumption. (Tr. at 124:13-21). The Court noted that such documents are not subject to attorney-client privilege, but that they might constitute protected work product. (Tr. at 125:5-7). The Court's observation was based on the holding of the United States Court of Appeals in United States v. (Under Seal), 748 F.2d 871 (4th Cir. 1984). In that decision, the court reaffirmed an earlier holding that "if a client communicates

information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the [attorney-client] privilege." Id. at 875 (citing In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984))(internal quotations omitted). The court further clarified that the underlying details included "the document . . . to be published, . . . all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document." Id. at 875 n.7. The court did note, however, that communications "not directly related to the published data" retained the privilege and should be redacted from the document. Id.

While there does not appear to be any controlling precedent of the Fourth Circuit, courts that have considered the question have recognized that draft documents, although prepared for public consumption, can constitute work product. See, e.g., Bush Dev. Corp. v. Harbour Place Assoc., 632 F.Supp. 1359, 1363 (E.D. Va. 1986) (holding that a "draft complaint" was "certainly prepared in anticipation of litigation and is thus entitled to at least the qualified immunity of Rule 26(b)(3)"); see also McKinley v. FDIC, 744 F. Supp. 2d 128, 141-42 (D.D.C. 2010) (finding that a draft affidavit was subject to work product protection); In re: New York Renu with Moistureloc Product

Liability Litigation, No. 2:06-MN-77777-DC, 2009 WL 2842745 at *13 (D.S.C. July 6, 2006)(same); A.F.L. Falck, S.p.A. v. E.A. Karay Co., 131 F.R.D. 46, 49 (S.D.N.Y. 1990) (same). The leading case on the question appears to be Randleman v. Fidelity Nat. Title Ins. Co., 251 F.R.D. 281 (N.D. Ohio 2008), which dealt with drafts of affidavits that were subsequently filed with the court. There, the court found that

> [T]he work product doctrine does protect information relevant to the evolution of an affidavit, including but not limited to communications with the counsel relating to the affidavit, prior drafts of the affidavit, and any notes made by counsel while engaging in the process of drafting the affidavit.

Id. at 285 (quoting Tuttle v. Tyco Electronics Installations Services, 2007 WL 4561530 at *2 (S.D. Ohio Dec. 21, 2007)). The court further found that the public filing of the final draft of the affidavit did not waive the work product protection as to the drafts. Randleman, 251 F.R.D. at 286. Indeed, the court found that the drafts constituted opinion work product and not simply factual work product, which is afforded a lower degree of protection. Id. at 287. The court observed that "disclosure of the drafts could reveal the attorneys' thought processes about the case. Whatever an attorney writes at the outset will reflect his approach to whatever issues that affidavit is to speak to." Id. Although not binding, these decisions are persuasive and persuading. The Court, therefore, concludes that certain draft

14

documents, although prepared for public consumption, nevertheless are protected by the work product doctrine, presuming that they are claimed as such and are, in fact, prepared in anticipation of litigation.

This protection plainly applies to most of the draft briefs, motions, and declarations that are listed on Lawson's privilege log and that the Court reviewed in camera. Insofar as the privilege log identifies work product as the privilege being claimed, these documents, although not subject to attorney-client privilege, are properly withheld. There are two exceptions to this general affirmance that are relevant to the instant case. The first is where the work product protection has been waived. The second is, of course, where work product protection does not apply.

It is well-settled that "where a party makes testimonial use of work product material, the [work product] privilege is waived with respect to matters covered in the testimony." Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1223 (4th Cir. 1976) (citing United States v. Nobles, 422 U.S. 287 (1975)). However, our Circuit has held that "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to" work product. Id. at 1222. Indeed, the court in Duplan Corp. specifically rejected the notion that the

inadvertent or voluntarily disclosure of certain work product documents could lead to the waiver of work product doctrine to all similar documents. Id. Of course, the production of the final draft of a document waives work product protection as to that draft. Nevertheless, this does not lead to the waiver of work product protection for the earlier drafts of the document. This position is in line with the general view that the waiver of the work product protection as to the final draft of a document does not constitute a waiver of the earlier versions of the draft. See In re New York Renu, 2009 WL 2842745 at *12 (noting that the "better view, and modern trend, is to hold that waiver by disclosure of a final document does not operate as a waiver of the drafts that are work product").

This rule serves to protect from disclosure earlier drafts of the declarations and affidavits that were ultimately filed with the Court. For example, Lawson's privilege log is replete with earlier drafts of the declarations that were submitted as exhibits to its OPPOSITION TO EPLUS' MOTION TO SHOW CAUSE (Docket No. 804). The factual communications underlying those drafts are not privileged as attorney-client communications since they are prepared with the intention of being disclosed to third parties. However, the earlier drafts retain work product protection, presuming that the log claims them as such. The logic underlying this principle applies with equal force to the

16

inadvertent disclosure of an earlier draft of the Declaration of Todd Dooner, the final draft of which was Exhibit 1 to Lawson's Opposition and the disclosure of which was discussed at the hearing. (Tr at 21:22-24). Accordingly, while Lawson has certainly waived privilege to that particular draft by producing it and failing to follow the procedures to attempt a "clawback," there is no broader subject-matter waiver of the work product doctrine that would require it to produce the other drafts of the document. Therefore, the Court finds that the drafts of the Dooner Declaration are properly withheld, notwithstanding Lawson's production of one of those drafts.

However, it is, of course, a key component of work product protection that a document be prepared in anticipation of litigation. Documents intended for public consumption that are not prepared for litigation are entitled to neither attorney-client nor work product protection. To that end, the Court finds that several of the documents that it reviewed in camera were improperly withheld. Lawson shall produce the following documents to the extent noted. The Court finds that:

Documents 636, 1325, 3371, 3495, 9421, and 9491 are intended for public consumption and not subject to the attorney work product exception and shall be produced; except that any notes made in the document, or in the margins, made by attorneys should be redacted pursuant to attorney-client privilege.

17

Documents 6456 and 7981 are not subject to either attorney-client privilege or work product protection and shall be produced.

## III. Communications with Attorneys as Carbon Copy Recipients

The February 21 Order also found that Lawson had waived attorney-client privilege for "communications between non-attorneys reflecting legal advice." Mem. Op. at 23. EPlus claims that there are approximately 50[3] documents that fall into this category that are still being withheld. Mem. in Supp. at 22-23. Namely, ePlus believes that Lawson is withholding the documents on the basis that if an attorney is a carbon copy recipient it can assert privilege, even if the communication is between non-attorneys. Id. at 23. In response, Lawson argues that, while these documents have attorneys as carbon-copy recipients, the documents nevertheless feature the attorneys as participants in the communication. Mem. in Opp. at 8-9. Lawson argues that the designation of an attorney as a carbon copy recipient rather than as a direct recipient does not, by itself, remove the attorney from the communication or render the documents within the scope of the Court's order. Id. at 9. Further, Lawson represents that each of the documents that ePlus identified were specifically reviewed by Lawson's counsel and it was determined

---

[3] By the time that ePlus' Reply was filed, the attached exhibit identified 23 documents in this category. Pl. Reply Ex. A.

that those documents reflected communications that included the attorney. Id.

The Court reviewed twenty-four documents in camera that ePlus had identified as being between non-attorneys. Based on the Court's review, the documents identified do not fall within the scope of the Court's February 21 Order and have been properly withheld or redacted as logged.

## IV. Email Attachments

It appeared to the Court that the issues of identifying attachments to emails and identifying which attachment belonged to which email was settled at the hearing. (Tr. at 122:7-22). However, while the Court certainly hopes that the matter is resolved, the Court wishes to reiterate that it is incumbent upon Lawson to identify, or assist ePlus in identifying, which emails belong to which attachment. Further, the Court clarifies that to the extent that there are emails which fall within the Court's February 21 order because of a deficiency in the privilege log, Lawson is required to produce any and all attachments to those emails.

## V. ePlus' Request for Sanctions

ePlus further asks the Court to impose sanctions on Lawson pursuant to Fed. R. Civ. Pro. 37. The Rule provides, in relevant part, that, in the event a party fails to comply with a discovery order, the Court "must order the disobedient party . .

19

. to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C). The Fourth Circuit has articulated a four-part test for determining whether Rule 37 sanctions are appropriate. In deciding to grant sanctions, the Court must consider "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Anderson v. Found. for Advancement, 155 F.3d 500, 504 (4th Cir. 1998). Given the only minor noncompliance with the Court's Order (reflecting mistakes of the sort that is inevitable when undertaking large-scale discovery), and given that the documents that the Court has reviewed in camera were generally properly withheld, the Court cannot conclude that Lawson acted in bad faith, that ePlus was meaningfully prejudiced, or that any non-compliance that was discovered here is of the sort that needs to be deterred through sanctions. Accordingly, sanctions are not appropriate in this instance and ePlus' request for sanctions will be denied.

## CONCLUSION

For the above reasons, ePlus' MOTION TO ENFORCE COURT'S ORDER is granted in part and denied in part. Lawson shall

produce those documents identified in the Court's opinion above and produce them forthwith. Lawson shall review the contested documents in light of the Court's guidance and produce any additional documents that fall within the scope of the Court's Order. EPlus' request for Rule 37 sanctions is denied.

It is so ORDERED.

_____  /s/   REP   _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 14, 2012