**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT LAWSON SOFTWARE, INC.'S STATEMENT OF POSITION RESPECTING THE EFFECT OF THE FEDERAL CIRCUIT'S DECISION ON THE SCOPE OF THE INJUNCTION

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
jlo@gibsondunn.com
rmark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL BACKGROUND........................................................................ 4

I.   Lawson's Accused Product Configurations and The Jury Verdict....................... 4

II.  The May 23, 2011 Injunction .................................................................... 5

III. Federal Circuit's Decision ....................................................................... 5

ARGUMENT ............................................................................................... 8

IMPACT OF THE FEDERAL CIRCUIT'S DECISION ........................................... 8

ON THE SCOPE OF THE INJUNCTION ............................................................ 8

I.   The Existing Injunction Should Be Dissolved In Light Of The Federal Circuit's
     Decision ............................................................................................... 8

     A.   The Applicable Four-Factor Test Is Not Satisfied By The Existing Record ............... 11

     B.   ePlus Has Not Shown Any Reason To Justify A New Injunction Hearing .................. 13

          1.   Irreparable Harm ............................................................................ 14

          2.   Adequacy of Legal Damages ............................................................. 15

          3.   Balance of Hardships ...................................................................... 16

          4.   Public Interest ............................................................................... 17

II.  The Scope of ePlus's Injunction Is Overbroad As A Matter Of Law............................... 17

III. It Would Be An Appropriate Exercise Of Discretion To Dissolve The Existing
     Injunction and Deny ePlus's Request For A Modified Injunction, Or, In the
     Alternative, To Stay The Action ............................................................... 21

CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*,
    501 F.3d 1307 ................................................................................ 20

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    695 F.3d 1370 (Fed. Cir. 2012) ...................................................... 14

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ...................................................... 19

*Brown v. Neeb*,
    644 F.2d 551 (6th Cir. 1981) .......................................................... 10

*Chance v. Bd. of Exam'rs*,
    561 F.2d 1079 (2d Cir. 1977) ......................................................... 10

*Conair Group, Inc. v. Automatik Apparate-Maschinenbau GmbH*,
    944 F.2d 862 (Fed. Cir. 1991) ........................................................ 10

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*,
    674 F.2d 976 (3d Cir. 1982) ........................................................... 10

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) .................................................. 18, 20

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) .......................................................... 1, 9, 15, 16

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012) ................................................ passim

*Ethicon Inc., v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ...................................................... 21

*Gemveto Jewelry Co. v. Jeff Cooper, Inc.*,
    800 F.2d 256 (Fed. Cir. 1986) .......................................................... 8

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2011), *aff'd on other grounds*, 131 S. Ct. 2238
    (2011) ............................................................................................. 10

*Jansen v. Rexall Sundown Inc.*,
    342 F.3d 1329 (Fed. Cir. 2003) ...................................................... 20

*Johns Hopkins Univ. v. CellPro, Inc.*,
    152 F.3d 1342 (Fed. Cir. 1998) ........................................................ 8

*Joy Techs. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ................................................ 9, 18, 19, 20

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Medichem, S.A. v. Rolabo, S.L.*,
    353 F.3d 928 (Fed. Cir. 2003)......................................................................... 21

*MercExchange, L.L.C. v. eBay, Inc.*,
    500 F. Supp. 2d 556 (E.D. Va. 2007) ..................................................... 16, 21

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)...................................................................................... 20

*Muniauction, Inc. v. Thomas Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008)..................................................................... 19

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)..................................................................... 19

*NTP, Inc. v. T-Mobile USA, Inc.*,
    Nos. 3:07-CV-548, 549, 550 and 551, 2007 U.S. Dist. LEXIS 82063 (E.D.
    Va. Nov. 2, 2007).......................................................................................... 22

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)..................................................................... 19

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008)..................................................................... 19

*Riles v. Shell Exploration and Production Co.*,
    298 F.3d 1302 (Fed. Cir. 2002)....................................................................... 8

*Rizzo v. Goode*,
    423 U.S. 362 (1976)........................................................................................ 9

*Robert H. Harris Co. v. Metal Mfg. Co.*,
    19 U.S.P.Q.2d 1786 (E.D. Ark. 1991) .......................................................... 22

*Standard Havens Prods. v. Gencor Indus.*,
    27 U.S.P.Q.2d 1959, 1993 U.S. App. LEXIS 11963 (Fed. Cir. 1993) ............. 3

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991)..................................................................... 19

*Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg. Gesellschaft m.b.H.*,
    945 F.2d 1546 ................................................................................................ 6

*United States v. United Shoe Machinery Corp.*,
    391 U.S. 244 (1968)...................................................................................... 10

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)..................................................................... 20

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)........................................................................................ 9

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*z4 Techs., Inc. v. Microsoft Corp.*,
  434 F. Supp. 2d 437 (E.D. Tex. 2006) ............................................................ 15

**Statutes**

28 U.S.C. § 1292(a)(1) ........................................................................................ 10

35 U.S.C. § 271(a) .............................................................................................. 19

35 U.S.C. § 271(c) .............................................................................................. 21

35 U.S.C. § 283 ............................................................................................... 3, 18

## PRELIMINARY STATEMENT

In this proceeding in equity, the balance of equities has drastically changed and injunctive relief is no longer warranted.  While ePlus asks this Court to summarily re-enter equitable relief in the form of an injunction against complete software configurations, it cannot and indeed does not even try to establish any basis in the record to justify such relief.  No such argument is available because the facts underlying this Court's prior injunction have now been rendered irrelevant by the Federal Circuit's invalidation of the fundamental system claims, as well as by the finding of non-infringement as to two of the three method claims.  As a result of the Federal Circuit's decision, Lawson can no longer be enjoined from competing with ePlus for the sale and distribution of *all* its integrated e-procurement products, including all product configurations that were previously at issue and are covered by the injunction this Court entered on May 23, 2011.

ePlus has asked the Court to forge ahead by maintaining the bulk of the May 2011 injunction, dropping only Configuration No. 2, which the jury had found to infringe only a single patent claim now invalidated by the Federal Circuit, and making some other, minor, housekeeping revisions.  Such a simplistic "blue pencil" modification of the injunction is entirely insufficient.  There is no basis under the Federal Rules or in the case law to excise parts of the existing injunction without considering whether that which remains is appropriately supported under equity's standard four-factor test for injunctions.  If ePlus intends to pursue any modified injunction, it will need to offer much more than it has to support the relief requested, particularly now that the Federal Circuit has invalidated the system claims ePlus had asserted against Lawson.  ePlus's application for injunctive relief on remand requires nothing less than the Court's application of the traditional four-factor test to the proven infringement.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Under the dramatically changed

circumstances now present here, it would deny reality to argue that the traditional four-factor test governing the issuance of injunctions can be met on the record of the evidence presented to this Court last year.

The Federal Circuit's November 21, 2012 opinion invalidates the system claims that ePlus had put at the core of its case, and the effect of that invalidation is neither "limited" nor "circumscribed," as ePlus professes.[1]  ePlus Injunction Position Statement ("ePlus Statement") at 1 (D.I. 985).  This case went to the jury on 38 separate questions of alleged infringement of 12 different patent claims, in three patents, asserted against five multi-component procurement systems.  Three of the claims were broad *system* claims that, ePlus asserted, read on every component of Lawson's accused computer software configurations.  The jury rejected the majority of ePlus's claims and the Federal Circuit has eviscerated what remained.  Thus, this case is now reduced to a single claim, in one patent, involving a *method* of using one add-on module (Punchout) as part of two of the five accused software configurations.  The value of the remaining Punchout feature is trivial when considered in the context of what this case previously concerned.  Moreover, ePlus's small residual victory as to Claim 26 may prove as ephemeral as its prior victories, as the United States Patent and Trademark Office ("PTO") has determined that the method claims of the '683 patent asserted here are invalid over multiple prior art references.  Currently before the Federal Circuit is ePlus's appeal on all orders and decisions of the Board of Patent Appeals and Interferences ("BPAI") and of the PTO Examiners in the *ex parte* reexamination case that concluded with a finding that all method claims of the '683 patent

---

[1]  On December 21, 2012, ePlus petitioned the Federal Circuit to rehear those aspects of the Circuit Court's November 21, 2012 decision that invalidated claim 1 of the '172 patent and reversed the jury's infringement findings as to claims 28 and 29 of the '683 patent, making it abundantly clear that ePlus recognizes the devastating effect of the Federal Circuit's decision on the injunction and contempt proceeding in this Court.

asserted in this case are invalid.  *See* Ex. A, Notice of Appeal.  Should that Court affirm the

March 26, 2012 decision of the BPAI, then ePlus will have fully and finally *lost* this *entire* case,

and will not under any circumstances be entitled to an injunction or a hearing on its unfounded

contempt allegations.  *See, e.g.*, *Standard Havens Prods. v. Gencor Indus.*, 27 U.S.P.Q.2d 1959,

1993 U.S. App. LEXIS 11963, at *1-2 (Fed. Cir. 1993) (unpublished) ("As a matter of law . . . if

the reexamination decision of unpatentability is upheld in the court action . . .  the injunction

would thereby immediately become inoperative.").

      Regardless of the ultimate fate of method Claim 26, ePlus is not entitled on remand to an

injunction against Lawson's making, offering to sell, or selling electronic sourcing and software

systems.  It is black letter patent law that a manufacturer's sale of a product does not directly

infringe a method claim, nor constitute the inducement to infringe a method claim.  Accordingly,

the evidence that the Federal Circuit cited in affirming the jury's infringement finding as to

Claim 26 concerned the installation, testing or other use of the systems by Lawson and its

customers; the Circuit Court made no reference whatsoever to sales.  *ePlus, Inc. v. Lawson*

*Software, Inc.,* 700 F.3d 509, 520-21 (Fed. Cir. 2012).  It is also basic patent law that an

injunction in cases arising under Title 35 may only be granted to prevent the violation of a right

"secured by patent."  35 U.S.C. § 283.  Claim 26 does not secure to ePlus any right of exclusivity

over the sale of electronic sourcing systems.  Thus, under *any* circumstances, the scope of a new

injunction against Lawson could not go beyond the restraint of future conduct by Lawson that

practices, or is intended to induce third parties to practice, the claimed method, which involves

determining the availability of, and purchasing, selected items during a shopping session with an

external vendor.  ePlus's proposed "blue pencil" modification, which would continue to preclude

Lawson from making or selling the pre-design around configurations and merely colorable

variations of the same, or from using those configurations in a non-infringing manner, is overbroad as a matter of law.

This Court has the discretion to bring this case to an immediate close, or at least to avoid potentially futile activity, by dissolving the injunction imposed on May 23, 2011 and: (i) entering a judgment of infringement on Claim 26 of the '683 patent, and ordering no further relief; or (ii) staying further proceedings pending a decision of the United States Court of Appeals for the Federal Circuit in ePlus's on-going appeal of the PTO's determination of invalidity of the method claims of the '683 patent (including Claim 26). Neither option would prejudice ePlus, even if Claim 26, currently hanging by a thread, is ultimately found to be valid by the Federal Circuit, because ePlus remains free to sue Lawson for patent infringement (under a lower standard of proof than it must satisfy in a contempt proceeding). Lawson respectfully submits that granting ePlus's proposed, revised injunction without any showing that the four-factor test is satisfied under the current circumstances of this case, would be an abuse of discretion.

## PROCEDURAL BACKGROUND

### I.     Lawson's Accused Product Configurations and The Jury Verdict

At trial, the jury was asked to deliberate on the alleged infringement of five Lawson product configurations:

- *Configuration No.1* covers the Core S3 Procurement System ("core system"), Lawson's foundation software used by companies to purchase items.

- *Configuration No. 2* covers Lawson's core system (Configuration No. 1) and the RSS software module, an add-on feature that provides a user-friendly way to make requisitions.

- *Configuration No. 3* covers Lawson's core system and RSS (Configuration No. 2) and adds the Punchout software module.

4

- *Configuration No. 4* covers Lawson's core system (Configuration No. 1) and the EDI add-on module.

- *Configuration No. 5* covers Lawson's core system and RSS (Configuration No. 3) and adds both the EDI and Punchout software modules.

On January 27, 2011, the jury returned 27 findings of non-infringement with respect to Lawson's core system and the EDI, entirely exonerating two of the five accused configurations (Configuration Nos. 1 and 4). *See* Jury Verdict (D.I. 600). The jury found one configuration (Configuration No. 2) to infringe only system claim 1 of the '172 patent. *Id.* The verdict also found that the Punchout module, when combined with RSS and the core system (Configuration Nos. 3 and 5), infringed claims 3, 26, 28, and 29 of the '683 patent and claim 1 of the '172 patent. *Id.* The jury did not make a finding on damages because the Court had precluded ePlus from presenting any evidence of damages at trial. *See* Memorandum Opinion, D.I. 728 at 8-9.

## II.     The May 23, 2011 Injunction

On March 27, 2011, this Court held an evidentiary hearing on the issue of a permanent injunction. The parties then briefed the issue, and on May 23, 2011, the Court granted ePlus's motion for a permanent injunction, enjoining Lawson, *inter alia*, from "directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States" Configuration Nos. 2, 3 and 5. *See* Permanent Injunction (D.I. 729). The Court applied the traditional four-factor test for injunctions and detailed its factual and legal bases for issuing the permanent injunction against Lawson. *See* Memorandum Opinion, D.I. 728. The Court's specific findings are discussed in detail *infra* at Argument Section I.A.

## III.    Federal Circuit's Decision

The Federal Circuit's November 21, 2012 decision sets aside four of the five infringement findings that undergirded the judgment and injunction: system claims 1 of the '172

5

patent and 3 of the '683 patent, and method claims 28 and 29 of the '683 patent. *ePlus, Inc. v. Lawson Software, Inc.,* 700 F.3d 509 (Fed. Cir. 2012).

The court first held that the specification for the system claims "does not disclose sufficient structure for the 'means for processing' limitation." *Id.* at 518. This flaw proved fatal to the system claims' validity, prompting the court to "hold that ePlus's system claims are indefinite." *Id.* at 520. This finding thus leaves ePlus with no valid system claims and, as recognized by ePlus, renders Configuration No. 2—which the jury found to infringe only claim 1 of the '172 patent—indisputably outside the scope of any potential injunctive relief.

With respect to Claim 26, the Federal Circuit affirmed "the district court's denial of JMOL of non-infringement with respect to the jury's verdict of direct and induced infringement of Claim 26," finding that "there is evidence that Lawson installed, maintained, demonstrated, and managed the infringing systems for its customers." *Id.* at 520-21.[2] Specifically, the Federal Circuit's infringement analysis as to Claim 26 focused on the "determining whether a selected matching item is available in inventory" step. *Id.* at 520. The Punchout module allows customers to connect to a third-party vendor's website, which (the Federal Circuit stated) allows users to determine whether the selected items are available in its inventory. Thus, the use of Configuration Nos. 3 and 5 alone remain at issue, as it is only those configurations that include the add-on Punchout module.[3] *See* Jury Verdict Form at 2-3 (D.I. 600). In light of the jury's

---

[2] ePlus places undue emphasis on the Federal Circuit's finding "substantial evidence" that Lawson infringed claim 26. As the Court knows, "substantial evidence" is merely a standard of review on appeal; indeed one that is even more deferential than the "clearly erroneous" standard. Under the "substantial evidence" standard, an appellate "court will disturb the verdict only if the evidence so conclusively favors the moving party that reasonable jurors could not arrive at a contrary verdict." *Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg. Gesellschaft m.b.H.*, 945 F.2d 1546, 1549 (Fed. Cir. 1991) (quotation omitted).

[3] ePlus did not even allege that Configuration No. 2, which includes RSS but not Punchout or EDI, infringed Claim 26. Although configuration No. 5 has both Punchout and EDI, the

verdict and the Federal Circuit's decision, this case effectively has been reduced to the use of Punchout, a peripheral add-on feature sometimes used by a small percentage of Lawson's customers, and nothing more.[4]

With regard to claims 28 and 29, the court "agree[d] with Lawson that the verdict of infringement is not supported by substantial evidence." *Id.* at 521.  The court held that "ePlus did not present *any* evidence to the jury to make [an infringement] showing, either *directly or circumstantially*." *Id.* (emphasis added).  Indeed, "ePlus did not offer any evidence that showed or even suggested that anybody" performed all of the steps of these two method claims, so "no reasonable jury could have concluded that Claim 28 [or 29] was infringed—*either directly or indirectly*." *Id.* at 522 (emphasis added).

Finally, the Federal Circuit "reject[ed] both arguments" ePlus presented in its cross appeal challenging the district court's exclusion of damages evidence as a sanction for discovery abuses, highlighting the "flawed and unreliable" analytical methodology employed by ePlus's expert and ePlus's improper attempt to "chang[e] the damage calculation methodology on the eve of trial." *Id.* at 522-23.

After "revers[ing] the district court's determination that the system claims are not indefinite" and "vacat[ing] the judgment of infringement entered based on claims 28 and 29 of the '683 patent," the Federal Circuit, without addressing the merits of whether an injunction

---

jury's verdict clearly turned on Punchout alone, as the jury *rejected* ePlus's assertion that Configuration No. 4, which has EDI but not Punchout, infringed Claim 26.

[4] Of the 864 Lawson customers with software configurations encompassed by ePlus's original contempt allegations, only 127 even license configurations with Punchout.

remains warranted, remanded for this Court to determine what changes to the injunction would

be required by its decision.  *Id.* at 523.[5]

## ARGUMENT

## IMPACT OF THE FEDERAL CIRCUIT'S DECISION
## ON THE SCOPE OF THE INJUNCTION

**I.     The Existing Injunction Should Be Dissolved In Light Of The Federal Circuit's
        Decision**

As an initial matter, the existing injunction, which precludes Lawson from making, using

and selling Configuration Nos. 2, 3 and 5 of its sourcing and software systems, cannot stand

because it goes drastically beyond what remains of ePlus's patent rights after the Federal

Circuit's decision.  As clearly delineated by the Federal Circuit, the remaining direct and indirect

liability findings are limited to Lawson's "install[ation], maint[enance], demonstrat[ion], and

manage[ment]" of Configurations 3 and 5 of its systems, based on infringement of Claim 26.

*ePlus*, 700 F.3d at 520-21. The bases of liability do not encompass either the sale or

dissemination of Lawson's systems, or any use of Configuration No. 2, all of which, however,

are prohibited by the current injunction."  Thus, by enjoining lawful acts, the existing injunction

contravenes the well-settled principle that injunctions must be "*narrowly* tailor[ed] . . . to fit the

specific adjudged violations" and "cannot impose unnecessary restraints on lawful activity," and

it cannot be left in place as to any system configuration.  *Riles v. Shell Exploration and*

---

[5]   The Federal Circuit also addressed whether the May 2011 injunction was overbroad because
it enjoined Lawson from "servicing and maintaining products sold before the injunction
issued."  *ePlus*, 700 F.3d at 522.  The Federal Circuit held that to the extent the district court
found it appropriate to enjoin service or maintenance of an infringing product, it could do so
without regard to when the product was originally sold or licensed.  *Id.*  That issue is
irrelevant to the central point now before the Court, which concerns whether any injunctive
relief is appropriate now that the system claims have been invalidated as a matter of law and
all other claims (except for method Claim 26 of the '683 patent)  have failed for lack of
evidence.

*Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (emphasis added) (citing *Gemveto Jewelry Co. v. Jeff Cooper, Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986)); *see also Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1365 (Fed. Cir. 1998) ("[J]udicial restraint of lawful non-infringing activities must be avoided.").  A court may not enter an injunction so broad that it enjoins non-infringing acts.  *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 777 (Fed. Cir. 1993) ("Judicial restraint of lawful competitive activities, however, must be avoided.").

Further, there is no presumption under *eBay* of any right to ongoing injunctive relief.  On the contrary, injunctive relief is an "extraordinary remedy," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982), "to be used sparingly, and only in a clear and plain case."  *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citation omitted).  To determine the appropriateness of ongoing injunctive relief, a Court must engage in a *case-by-case* assessment of the traditional equitable factors governing injunctions: "(1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *ebay*, 547 U.S. at 391.  Therefore, the Court must evaluate the applicability of the four-factor test to the changed circumstances of this case *if* it decides to entertain ePlus's request for ongoing injunctive relief.

Here, rather than formally request leave to move for a new or revised injunction, thereby allowing the parties the opportunity to argue the merits of ongoing equitable relief, ePlus tries to bulldoze past troublesome issues by simply *assuming,* with no record analysis, the existence of the predicates necessary to support its "revised" injunction.  There is no basis for that assumption, and ePlus cites no case law to support the action it asks this Court to take.  While it

9

may be possible in some circumstances for a court to entertain a request for a revised injunction without holding an evidentiary hearing, that could only be justified where the trial court explicitly finds that its prior findings continue to justify the grant of equitable relief.  But that could not be the case here, and, not surprisingly, ePlus does not suggest that the Court could make any such findings.

It is Lawson's position that if this Court is to consider ePlus's request for a revised injunction prohibiting the practice of the method of Claim 26, an evidentiary hearing must be held to evaluate the applicability of the four-factor test to the current circumstances of this case. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 249 (1968) ("Decision as to the Government's petition to modify the decree in the present case must be based upon the specific facts and circumstances that are presented."); *Chance v. Bd. of Exam'rs*, 561 F.2d 1079, 1086 (2d Cir. 1977) ("And it would take an adversary evidentiary hearing, at least, before a finding could properly be made that 'the decree is not properly adapted to accomplishing its purposes.'"); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 976, 981 (3d Cir. 1982) ("[A] district court must hold an evidentiary hearing before modifying a consent decree in such a manner as to remove requirements previously imposed."); *Brown v. Neeb*, 644 F.2d 551, 560 (6th Cir. 1981) ("[I]n each case, the Court was careful to note that the decree could be modified so as to grant the requested relief.  Modification, of course, would require a complete hearing and findings of fact.").  Granting ePlus's modifications to the injunction without a showing that the four-factor test is satisfied under the current circumstances of this case would be an abuse of discretion.[6]

---

[6]   The entry of any modified injunction is immediately appealable under 28 U.S.C. § 1292(a)(1).  Injunctions are reviewed under an abuse of discretion standard that allows the Circuit to reverse for errors of law, or an evidentiary record insufficient to satisfy Federal

Here, the Court need not entertain ePlus's pending request to summarily modify the existing injunction, given that the current circumstances of this case make ongoing injunctive relief wholly inappropriate.

### A.    The Applicable Four-Factor Test Is Not Satisfied By The Existing Record

As noted previously, the Federal Circuit's decision fundamentally altered the injunctive relief landscape by holding that *four* of the five claims at issue are either invalid (and thus void *ab initio*) or not infringed.  These rulings conclusively establish that Lawson's core RSS module—the feature that was the focus of ePlus's infringement case—is no longer at issue, and that only configurations possessing the add-on Punchout feature are even capable of infringing the sole remaining method claim.  In determining the appropriateness of injunctive relief, the Court based its findings on facts and data concerning Lawson's core *system*, *see* D.I. 728, which are unrelated to the remaining infringement findings of *method* Claim 26.  The Court's reasoning, therefore, offers no support for continued injunctive relief.

First and foremost, the existing record does not support a finding of irreparable injury to ePlus.  In finding (in May 2011) that ePlus would suffer irreparable injury in the absence of the existing permanent injunction, the Court focused on Lawson's core procurement system and specified, multi-feature configurations, with no distinctive findings on Lawson's Punchout feature or the method of Claim 26.  *Id.*  The Court relied heavily on the fact that ePlus and Lawson directly compete in the "e-procurement software market" by providing similar procurement *systems*.  *Id.* at 19.  While the Court mentioned Punchout in its irreparable harm analysis, nowhere in its opinion did the Court articulate even a single finding about any competition for the Punchout feature specifically, the use of which may infringe method Claim

---

Rule of Civil Procedure 65.  *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 861 (Fed. Cir. 2011), *aff'd on other grounds,* 131 S. Ct. 2238 (2011); *Conair Group, Inc. v. Automatik Apparate-Maschinenbau GmbH,* 944 F.2d 862, 866 (Fed. Cir. 1991).

26.  Rather, the Court found that, in general, the "two companies' products compete against each other," relying on sales and market share data concerning Lawson's core procurement system as a whole.  *Id.* at 18.  For example, the Court relied on three examples that it determined established that ePlus had lost sales and market share due to Lawson's activities.  *Id.* at 23-25. None of these examples, considered by the Court as indicative of ePlus's irreparable harm, concerned the Punchout feature distinctively, but instead related to Lawson's core procurement system and the configurations at issue as a whole, regardless of how they were used.  *Id.*  These findings have no relevance to the infringement findings regarding the method of Claim 26, which is all that remains of the case.  Given that there is no separate finding from the injunction hearing specifically on the use of the Punchout feature, the record is devoid of evidence showing irreparable injury to ePlus relating to the method of Claim 26.

Similarly, the Court's May 23, 2011 analysis of why ePlus lacks an adequate remedy at law is no longer applicable in the new circumstances of the case.  In its original finding, the Court's analysis of inadequate remedy focused, once again, on purported competition in the sale of *systems*, and did not consider the injury, if any, ePlus would suffer as a result of Lawson's Punchout-related activities specifically.  *Id.* at 33.  The Court also noted that "it is significant that ePlus practices its patents," *id.* at 38, without analyzing which claims of the asserted patents, standing alone, were embodied in particular features of ePlus's products.  Again, under the circumstances of the case on remand, none of these findings support the conclusion that ePlus's remedy at law is inadequate with respect to the method of Claim 26.

Finally, the current record no longer supports this Court's earlier findings that the balance of hardships tips in ePlus's favor, and similarly, public interest does not militate in favor of an injunction.  Previously, the Court rejected Lawson's argument that the reexamination

proceedings of the patents-in-suit should militate against an injunction. *Id.* at 43. The Court held that "it is not appropriate to negate the jury's verdict" given "the uncertainty of the outcome of the re-examination process and the indeterminate, though no doubt protracted, length of time the entire reexamination process will take." *Id.* at 43. Much has happened since then. All of the claims upon which the jury found infringement have been held to be invalid (as anticipated by prior art) in the PTO; the Federal Circuit independently found the two system claims to be invalid (as indefinite); and the BPAI has found the three method claims to be invalid (while not yet having ruled on ePlus's appeal of the system claims). Thus, at this time, the system claims are entirely out of the case, and method claim 26 remains, but is subject to cancellation (as are method claims 28 and 29), if the Federal Circuit affirms the BPAI's invalidity analysis. In light of the dramatically altered landscape, it is now clear that neither the balance of hardships nor the public interest factors found by this Court in 2011 continue to support an injunction.

In sum, the four-factor equitable test is not satisfied by the existing record. The prior assessment of the four equitable factors is of little relevance to the present injunctive relief calculus because the Court did not make *any* severable findings on the peripheral Punchout feature and the method of Claim 26, but instead focused on Lawson's core procurement system in the aggregate. Therefore, the Court cannot rely on its earlier *system*-based findings to issue ongoing injunctive relief grounded solely on infringement of the *method* of Claim 26.

### B.    ePlus Has Not Shown Any Reason To Justify A New Injunction Hearing

In addition to its being clear that the 2011 record does not affirmatively support a continued injunction (no matter how modified), the impact of the Federal Circuit's decision is such that application of the current set of facts to the four equitable factors makes clear that an evidentiary hearing (which ePlus has not even requested) would be futile because ePlus cannot possibly satisfy the four-factor test.

13

### 1.    Irreparable Harm

ePlus cannot credibly claim that it has suffered irreparable harm related to the infringement of the method of Claim 26, which can only be infringed through one type of use of Configuration Nos. 3 and 5, *i.e.*, shopping sessions to third-party vendor sites.  In this regard (and as is pertinent to contributory infringement) it is critical to recognize that the most common use of Configuration Nos. 3 and 5—searching for and purchasing selected items in Item Master, is not an infringing use of those configurations because such shopping sessions do not fulfill the "determining" element of Claim 26.  So, while Punchout works with the other components of the configurations, those other components can and are used without Punchout, and thus, without infringing Claim 26.

Moreover, the importance and value of the Punchout module must be put in perspective: As affirmatively argued by ePlus in its Rebuttal Disclosure Concerning Injunctive Relief, Lawson presented evidence that "not all of [Lawson]'s customers have Procurement Punchout, . . . Procurement Punchout does not drive S3 sales, and [Lawson] has never won a sale merely because of its Punchout product."  Exhibit B, ePlus Rebuttal Disclosure Concerning Injunctive Relief at 19.  In fact, ePlus previously argued to this Court that there was no evidence that any "customer [] would not have purchased an S3 system if [Lawson] did not offer Procurement Punchout" and that "not all customers that have [Punchout] use it." *Id.* at 20.  This undisputed evidence (previously relied upon by ePlus in regard to the balance of hardships factor) cannot be brushed aside now by ePlus.  Such evidence directly undercuts any possible claim of irreparable harm by ePlus, and actually precludes any finding of lost sales, lost market share, lost opportunities or reputational injury *relating to Punchout in particular.  See, e.g, Apple, Inc. v. Samsung Electronics Co., Ltd*., 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the

following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) *that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement*.") (emphasis added).

Finally, the manner in which ePlus previously fashioned its claim of irreparable harm further confirms the fact that it has not (and will not) sustain any future injury that can be tied to the Punchout module specifically.  ePlus argued, and the Court previously accepted, that ePlus would be irreparably harmed by competition from Lawson in the sale of its core procurement system.  Memorandum Opinion, D.I. 728 at 16-18.  As accepted by both parties' damages experts in their respective reports, Configuration No. 2 represented, by far, the majority of Lawson's sales of all configurations at issue during the 2011 injunction proceedings.  Now that the Federal Circuit's decision has established that the market competition relating to Lawson's Configuration No. 2 is lawful, ePlus cannot credibly claim that any (minimal) additional competition provided by Configurations 3 and 5 (and, in particular, the peripheral Punchout module) rises to the level of causing it irreparable injury.

## 2.    Adequacy of Legal Damages

Given the Federal Circuit's termination of the majority of the claims at issue, the adequacy of legal damages is now evident.  It is undisputed that little value and significance is attributed to Punchout, the feature now at the heart of this dispute.  In a case like this, where the remaining claim covers the use of "a small component of the product [Lawson] seek[s] to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring);  *see also z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006) (denying request for permanent injunction where the infringing technology was "a small component of

[Microsoft's] software" and the infringement did not hinder or exclude z4's sales or licensing of its product.  ePlus unknowingly appears to concede as much, arguing that the "enforcement of the injunction with respect to Claim 26 will render Lawson unable to service and maintain the infringing systems, and will likely enable a *quick resolution of this case* once and for all."  *See* ePlus' Statement of Position Concerning the Effect of the Federal Circuit's Decision on the Scope of the Contempt Proceedings at 2 (emphasis added).  After all, by seeking to exploit a quick (yet expansive) injunction in order to coerce a settlement from Lawson, ePlus demonstrates that money is an adequate remedy.  *See, e.g., MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007) ("Utilization of a ruling in equity as a bargaining chip suggests both that such party never deserved a ruling in equity and that money is all that such party truly seeks, rendering monetary damages an adequate remedy in the first instance."); *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring).

### 3.        Balance of Hardships

It is now incontestable that ePlus has benefitted immensely from its forceful and hostile litigation tactics, having managed to secure valuable settlements from multiple competitors over patent claims now revealed as invalid.  In contrast, Lawson has been greatly prejudiced, having been enjoined from lawful activities for the past 18 months.  Moreover, to comply with the injunction, Lawson has been forced to spend valuable resources in the (unnecessary) redesign of its products, specifically the RSS module.  This past reality, combined with the real possibility that even the remaining portion of this case will be eliminated through the final cancellation of ePlus's method claims, weighs against a further injunction at this time.  ePlus suffers *no* hardship through the elimination of an injunction, as any infringing use of configuration Nos. 3 and 5 may still be the subject of a separate infringement action.

16

### 4.    Public Interest

Unlike when the issue was first presented to the Court in May 2011, the only claim now at issue, Claim 26, has been ruled invalid through proceedings in the Patent Office and on appeal to the BPAI.  The Federal Circuit's final affirmance of the PTO's finding of invalidity with respect to Claim 26 is no longer a distant possibility; it is a possible outcome in the relatively near term.  Accordingly, the assessment of the public's interest in maintaining the integrity of the patent system and the protection of ePlus's patent rights deserve little or no weight.  Further, in the event that Claim 26 is resuscitated by the Federal Circuit, it is important to remember that ePlus remains free to protect its (albeit limited) patent rights by initiating a lawsuit against Lawson for patent infringement.

In sum, under the dramatically changed circumstances, the application of the traditional four-factor test precludes the issuance of *any* future injunctive relief.

## II.    The Scope of ePlus's Injunction Is Overbroad As A Matter Of Law

Even setting aside both the fatal procedural defects in ePlus's "blue-pencil" approach to the injunction and the inappropriateness of injunctive relief given the record, discussed *infra*, ePlus's proposed injunction cannot be adopted because it is overly broad and contravenes basic patent law by impermissibly enjoining non-infringing acts.  As a matter of law, ePlus does not have *any* basis to seek injunctive relief prohibiting Lawson from *making* and *selling* its electronic sourcing and software systems.  Thus, ePlus's proposed injunction cannot be adopted by this Court.

ePlus's proposed modified injunction seeks to bar Lawson from conduct that never could (or did) form the basis for the infringement finding with respect to Claim 26.  Specifically, ePlus's proposed injunction would enjoin Lawson from "making, using, offering to sell, or selling" Configuration Nos. 3 and 5 of its system, ePlus Statement, Exhibit 7 at 2, even though

Lawson's mere sale and distribution of its systems does not infringe the method of Claim 26. Because an injunction may only be granted in patent infringement cases "to prevent the violation of any right *secured by patent*," 35 U.S.C. § 283 (emphasis added), ePlus's proposed injunction is overbroad as a matter of law and would impermissibly reach conduct unrelated to the ways in which Lawson must have been "proved" to infringe method Claim 26. *See, e.g., Joy Techs*., 6 F.3d at 777 ("Judicial restraint of lawful competitive activities, however, must be avoided.").

That the Federal Circuit affirmed the jury's findings of "direct and induced infringement of Claim 26," *ePlus,* 700 F.3d at 521, does not give ePlus any basis to stop Lawson from the *sale* and *distribution* of its systems.  The principles governing injunctive relief cannot be divorced from the liability setting in which they arise, and the scope of any injunction must be consistent with the findings of liability with respect to method Claim 26.  *See, e.g.*, *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("Plaintiffs who identify *individual* acts of direct infringement must restrict their theories of vicarious liability─and tie their claims for damages or injunctive relief─to the *identified* acts.") (emphasis in original). Here, Lawson's direct and indirect liability did not arise from the sale or distribution of its systems, but rather by Lawson's "install[ation], maint[enance], demonstrat[ion], and manage[ment] [of] the infringing systems for its customers" and making available "course catalogs and webinar presentations . . . to its customers" and "testing" products for customers, which "included performing actual procurements using Lawson's systems."  *ePlus*, 700 F.3d at 520-21.  Absent from the Federal Circuit's list of infringing conduct relating to method Claim 26 are the *sale* and *distribution* of Lawson's systems:  more conduct is required to infringe Claim 26.

While direct infringement occurs when a party, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States," 35 U.S.C. § 271(a),  method claims are *not* infringed simply by the sale or dissemination of a system capable of infringing use.  *See Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[W]e hold that a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *Joy Techs.*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."); *Standard Havens Products, Inc. v. Gencor Industries, Inc*., 953 F.2d 1360, 1374 (Fed. Cir. 1991).  In fact, "[b]ecause a process is nothing more than the sequence of actions of which it is comprised, the use of a process necessarily involves doing or performing each of the steps recited." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).  Thus, direct infringement of a method claim only occurs if each step of the claimed method is actually performed.  *See Muniauction, Inc. v. Thomas Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008); *Ricoh*, 550 F.3d at 1333 (citing *BMC Resources, Inc. v. Paymentech, L.P*., 498 F.3d 1373, 1378-79 (Fed. Cir. 2007)).  Given this backdrop, ePlus cannot rely on the affirmed finding of direct infringement of Claim 26 to justify continuing any part of the injunction against the formerly accused configurations (much less an injunction against making or selling the Punchout add-on).

Nor can ePlus rely on the Federal Circuit's affirmed finding of induced infringement of Claim 26.  It is well-settled that the mere sale or distribution of a system does not, by itself constitute induced infringement under 35 U.S.C. § 271(b).  *See Joy Techs.*, 6 F.3d at 775 ("[T]he

19

act of selling equipment which will not be used so as to directly infringe a method claim cannot constitute one of the dependent types of infringement, that is, either contributory infringement or inducement of infringement"); *Dynacore*, 363 F.3d at 1275-76 ("The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 937 (2005) (noting that in patent infringement cases "ordinary acts incident to product distribution, such as offering customers technical support or product updates" do not give rise to inducement liability); *see also ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1312-13; *Jansen v. Rexall Sundown Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003); *Warner-Lambert Co. v. Apotex Corp*., 316 F.3d 1348, 1365 (Fed. Cir. 2003).  To hold otherwise would permit inducement under § 271(b) to swallow contributory infringement under § 271(c), rendering moot the limitations of the latter section.  In order words, this would impermissibly extend liability for induced infringement to include the mere sale of systems capable of substantial non-infringing uses, despite the exclusion provided for by § 271(c), rendering that portion of the statute meaningless. *See also Joy Techs.*, 6 F.3d at 774 ("To hold that the sale of equipment which performs a patented process is itself a direct infringement would make that portion of  Section 271(c) relating to the sale of an apparatus for use in practicing a patented process meaningless.").  Such an interpretation is also improper because it would "block the wheels of commerce."  *Dynacore*, 363 F.3d at 1275 (Patentees are denied "any right to control the distribution of unpatented articles unless they are unsuited for any commercial non-infringing use, because the sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a[n indirect] infringer.").[7]

---

[7]  Because it is beyond reasonable dispute that the two configurations at issue have substantial

In sum, the scope of any new injunction against Lawson cannot go beyond conduct that practices, or is intended to induce third parties to practice, the claimed *method*.  Adopting ePlus's modification to the injunction, which would continue to preclude Lawson from making or selling the pre-design around configurations, would be a clear error in law.

## III.  It Would Be An Appropriate Exercise Of Discretion To Dissolve The Existing Injunction and Deny ePlus's Request For A Modified Injunction, Or, In the Alternative, To Stay The Action

For the reasons discussed above, the interests of justice here favor, at most, entry of a judgment finding infringement relating to method Claim 26, dissolution of the existing injunction and no further relief.  In the alternative, the Court should exercise its broad discretion to stay the case until after the Federal Circuit's final determination as to Claim 26's validity. *See, e.g. Ethicon Inc., v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets . . . including authority to order a stay pending conclusion of a PTO reexamination."); *MercExchange, L.L.C.*, 500 F. Supp. 2d at 563 ("PTO reexaminations can settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases, can aid the trial court in making informed validity decisions, and will ultimately reinforce investor confidence in the patent system by creating a broader opportunity for the PTO to review doubtful patents.") (citing *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2003)); *NTP, Inc. v. T-Mobile USA, Inc*., Nos. 3:07-CV-548, 549, 550 and 551, 2007 U.S. Dist. LEXIS 82063, *6 (E.D. Va. Nov. 2, 2007) (citing *Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786 (E.D. Ark. 1991) for the proposition that "the legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval

non-infringing uses (*i.e.,* the conduct of shopping sessions using Item Master, not Punchout), their sale cannot constitute an act of contributory infringement.  35 U.S.C. § 271(c).  There was, of course, no finding of contributory infringement in the Federal Circuit's decision.  *See ePlus*, 700 F.3d at 520-21 (the Federal Circuit's finding of infringement of Claim 26 was explicitly limited to "direct and induced infringement.").

of district courts liberally granting stays").  As set forth in detail in Lawson's accompanying

Statement of Position Respecting the Effect of the Federal Circuit's Decision on the Contempt

Proceedings, a stay would conserve judicial resources pending a Federal Circuit decision that

may uphold the PTO's invalidation of Claim 26 and require dismissal of this entire case.

## CONCLUSION

For the reasons stated above, Lawson respectfully requests that this Court bring this case

to an immediate close by dissolving the injunction *sua sponte* and granting no further relief.  In

the alternative, Lawson requests that the Court stay further proceedings pending a decision of the

United States Court of Appeals for the Federal Circuit in ePlus's on-going appeal of the PTO's

determination of invalidity of the sole remaining claim.  In the event that the Court is to entertain

ePlus's request for a new or revised injunction, Lawson requests that this Court hold a hearing to

assess the applicability of the four-factor test to the current circumstances of this case.

Irrespective of what the Court decides, however, Lawson respectfully requests that the Court

deny ePlus's "blue-pencil" modification to the injunction, which is overbroad as a matter of law.

Respectfully submitted:

LAWSON SOFTWARE, INC.

By: _____/s/_____

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Counsel for Defendant Lawson Software, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 27th day of December, 2012, a true copy of the foregoing will be

delivered by email to::

Craig T. Merritt
Paul W. Jacobs, II
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
pjacobs@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

Michael G. Strapp
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
mstrapp@goodwinprocter.com

_____ /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

24