**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |


**DEFENDANT LAWSON SOFTWARE, INC.'S STATEMENT OF
POSITION RESPECTING THE EFFECT OF THE FEDERAL CIRCUIT'S
DECISION ON THE SCOPE OF THE CONTEMPT PROCEEDINGS**

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
jlo@gibsondunn.com
rmark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

SUMMARY OF FEDERAL CIRCUIT OPINION ...................................................... 4

IMPACT ON THE SCOPE OF THE CONTEMPT PROCEEDING............................ 4

I.    The Contempt Proceeding Should Be Dismissed Outright................................ 4

    A.    ePlus Ignores The Effect On The Injunction Of The Federal Circuit's
    Ruling.......................................................................................................... 4

    B.    If The Injunction Is Vacated, No *Civil* Contempt Award Is Permissible
    Under Black-Letter Contempt Law ............................................................ 5

    C.    Even If The Court Grants A Modified Injunction, It Should Still Dismiss
    The Contempt Proceeding........................................................................... 8

        1.    The Absence Of Precedential Authority For Predicating A Civil
        Contempt Finding On A Modified Injunction Militates In Favor Of
        Dismissal........................................................................................ 9

        2.    The Surviving "Facts Presented" Do Not Merit Contempt
        Consideration ............................................................................... 10

II.   The Federal Circuit Opinion's Impact On The *TiVo* Analysis, If Necessary ................... 11

    A.    ePlus Must Identify With Specificity What Lawson Behavior Is Alleged
    To Have Been Contumacious ................................................................... 12

    B.    The Court Must Identify What Was "Contended" And "Proved" At Trial
    To Focus The *TiVo* Colorability Test ...................................................... 13

        1.    ePlus's Request to Include Claims 28 and 29 Highlights the Need
        for Strict Adherence to the *TiVo* Rubric .................................... 15

        2.    ePlus's Stated Approach with Regard to Method Claim 26—the
        Only Surviving Claim—Is Similarly Misguided ...................... 17

    C.    In the Event That This Contempt Proceeding Continues, The Court Should
    Follow The Same Bifurcated Approach It Previously Found Necessary ............ 18

    D.    Impact On The Contempt Proceeding's Logistics ................................... 21

        1.    Various Pre-trial Submissions Must Be Revised, Resubmitted, And
        In Some Cases, Adjudicated ...................................................... 21

i

**<u>TABLE OF CONTENTS</u>** *(continued)*

<u>Page</u>

III.    If Dismissal Is Denied, The Court Should At Least Stay This Case Pending A
         Final Decision In The Reexamination Proceeding ........................................................... 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
    154 F.3d 1345 (Fed. Cir. 1998) ................................................. 9

*Ashcraft v. Conoco, Inc.*,
    218 F.3d 288 (4th Cir. 2000) ............................................. 6, 7, 8

*Bausch & Lomb, Inc. v. Alcon*,
    914 F. Supp. 951 (W.D.N.Y. 1996) ....................................... 24

*Blaylock v. Cheker Oil Co.*,
    547 F.2d 962 (6th Cir. 1976) .................................................. 7

*Broadcom Corp. v. Qualcomm Inc.*,
    585 F.Supp.2d 1187 (C.D. Cal. 2008) .................................... 7

*Cal. Artificial Stone Paving Co. v. Molitor*,
    113 U.S. 609 (1885)................................................................. 9

*Carbon Fuel Co. v. United Mine Workers of Am.*,
    517 F.2d 1348 (4th Cir. 1975) ................................................ 6

*Clark v. United States*,
    61 F.2d 695 (8th Cir. 1932) .................................................. 10

*Cromer v. Kraft Foods North Am., Inc.*,
    390 F.3d 812 (4th Cir. 2004) ................................................. 6

*ePlus, Inc. v. Lawson Software, Inc.*,
    2011 U.S. Dist. LEXIS 55625 (E.D. Va. May 24, 2011) ............... 19, 23

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012) ............................ 1, 4, 16, 17

*Everything for Love.com, Inc. v. Tender Loving Things, Inc.*,
    2006 U.S. Dist. LEXIS 56033 (D. Ariz. July 21, 2006) ............. 24

*Flat Slab Patents Co. v. Turner*,
    285 F. 257 (8th Cir. 1922) ..................................................... 7

*Flexiteek Ams., Inc. v. Plasteak, Inc.*,
    2012 U.S. Dist. LEXIS 156286 (S.D. Fla. Sep. 10, 2012) ........ 23

## <u>TABLE OF AUTHORITIES</u> *(continued)*

Page(s)

*Hampton Tree Farms, Inc. v. Yeutter*,
    956 F.2d 869 (9th Cir. 1992) ......................................................................... 7

*Hi-Lo TV Antenna Corp. v. Rogers*,
    275 F.2d 452 (7th Cir. 1960) ......................................................................... 7

*Hoskins Lumber Co., Inc. v. United States*,
    20 F.3d 1144 (Fed. Cir. 1994) ....................................................................... 7

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) ....................................................................................... 9

*Karaha Bodas Company, L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
    Negara*,
    335 F.3d 357 (5th Cir. 2003) ......................................................................... 7

*Klett v. Pim*,
    965 F.2d 587 (8th Cir. 1992) ......................................................................... 7

*KSM Fastening Sys. v. HA. Jones Co.*,
    776 F.2d 1522 (Fed. Cir. 1985) ................................................................... 12

*Latrobe Steel Co. v. United Steelworkers of Am., AFL–CIO*,
    545 F.2d 1336 (3d Cir. 1976) .................................................................... 6, 7

*McLean v. Central States, Se. & Sw. Areas Pension Fund*,
    762 F.2d 1204 (4th Cir. 1985) ................................................................... 6, 7

*Person v. Miller*,
    854 F.2d 656 (4th Cir. 1988) ......................................................................... 6

*Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*,
    86 F.2d 727 (2d Cir. 1936) ........................................................................... 7

*Sandler v. Tarr*,
    345 F. Supp. 612 (D.Md. 1971), *aff'd*, 463 F.2d 1096 (4th Cir. 1972) ...................................... 7

*Scott & Fetzer Co. v. Dile*,
    643 F.2d 670 (9th Cir. 1981) ......................................................................... 7

*Signtech USA, Ltd. v. Vutek, Inc.*,
    174 F.3d 1352 (Fed. Cir. 1999) ................................................................... 17

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    1993 U.S. App. LEXIS 11963, 1993 WL 172432 (Fed. Cir. May 21, 1993) ......................... 23

## **TABLE OF AUTHORITIES** *(continued)*

Page(s)

*TiVo, Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) ................................................. 3, 9, 12, 13, 14, 16, 17, 18, 19, 20

*Translogic Tech., Inc. v. Hitachi, Ltd.*,
  250 Fed. Appx. 988 (Fed. Cir. 2007)...................................................................................... 23

*United States v. United Mine Workers of Am.,*
  330 U.S. 258 (1947).................................................................................................................. 1

*United States v. Wilson*,
  421 U.S. 309 (1975)................................................................................................................ 10

*Universal Athletic Sales Co. v. Salkeld*,
  511 F.2d 904 (3d Cir. 1975) ..................................................................................................... 7

*Worden v. Searls*,
  121 U.S. 14 (1887)..................................................................................................................... 7

*Young v. U.S. ex pel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987)............................................................................................................. 6, 9

# INTRODUCTION

The Federal Circuit's November 21, 2012 decision remanding the case to this Court for consideration of "what changes are *required* to the terms of the injunction," *ePlus, Inc. v. Lawson Software, Inc.,* 700 F.3d 509, 523 (Fed. Cir. 2012) (emphasis added), effectively requires termination of this pending contempt application.  As demonstrated in Lawson's contemporaneously-filed Statement of Position Respecting the Effect of the Federal Circuit's Decision on the Scope of the Injunction ("Lawson Injunction Statement"), the Federal Circuit's reversal of the system claims as a matter of law nullifies the premises of the May 23, 2011 injunction ePlus obtained, and requires the vacation of that injunction.  Vacating (or even materially modifying) the existing injunction eliminates the possibility of *civil* contempt of any aspect of the original injunction.  *See United States v. United Mine Workers of Am.,* 330 U.S. 258, 294-95 (1947) ("[t]he right to remedial relief [in civil contempt] falls with an injunction which events prove was erroneously issued").  Civil contempt is not an exercise in punishing historical conduct, but remediating ongoing conduct in violation of an injunction – vacating the injunction ends the civil contempt proceeding; modifying the injunction restarts the civil contempt analysis as of the date of entry of the modified injunction.  Under any circumstances, however, this Court retains its discretion to dismiss the contempt proceedings, and Lawson respectfully submits that the Court should exercise that discretion at this juncture.

ePlus acts as if the Federal Circuit's decision changes nothing material (other than eliminating one software configuration from both the injunction and the contempt proceeding).  Treating this pending contempt proceeding as if nothing happened, however, would raise a host of novel constitutional and procedural concerns that ePlus's contempt statement simply ignores. ePlus's superficial analysis fails entirely to account for the Federal Circuit's elimination of the

system claims as a matter of law and the impacts that necessarily follow:  directly as to the

injunction; derivatively as to the contempt proceeding.  Accordingly, this Court should reject

ePlus's view and should dismiss the contempt proceeding that ePlus initiated on markedly

different premises in September 2011.

The consequences to the contempt proceeding follow directly from the required

modification to or vacation of the injunction, which itself follows directly from the Federal

Circuit's substantive ruling that two of the five claims at issue in this proceeding (claim 1 of the

'172 patent and claim 3 of the '683 patent) are invalid (and thus void *ab initio*), and two others

(claims 28 and 29 of the '683 patent) were not proven to be infringed.  This conclusively

establishes that RQC itself—the redesigned product at the heart of ePlus's contempt case—is not

within the proper scope of any injunction and cannot be the basis of any contempt proceeding.

ePlus concedes that Configuration No. 2 (comprised of RQC and non-infringing foundational

software) cannot be part of this contempt proceeding, as the jury found it to infringe only the

now-invalidated claim 1 of the '172 patent.  But, as explained in Lawson's Injunction Statement,

the effect of the Federal Circuit's decision on the injunction is far greater than ePlus

acknowledges.  This case has moved from the central *structural component* of three infringing

configurations (RSS) to the occasional *use* of a peripheral feature (Punchout) possessed by the

small percentage of Lawson's customers who license Configuration Nos. 3 or 5.  In brief, the

main reason for this action has ceased to be.

The Federal Circuit's ruling renders the May 2011 injunction inoperative, and it is

Lawson's position that a modified injunction cannot give rise to a remedial order based on

conduct that pre-dates the injunction.  Lawson is unaware of a single case that supports ePlus's

attempt to premise *civil contempt* liability on alleged misconduct antedating the modification or

vacation of an injunction.  Indeed, the fundamental distinction between criminal and civil contempt is the dichotomy between punishment for past contumacious conduct (criminal) and remedial relief to address ongoing contumacious conduct (civil).  This is not a case where the Court should try to blaze a new trail where none exists.  If ePlus believes there is infringement and injury here involving the method of claim 26, it has an adequate remedy of filing a new infringement action covering the exact same activity.  That alternative approach could compensate ePlus for any harm it could prove while avoiding the constitutional tangle that would arise from any conflation of criminal and civil contempt principles.

If the Court nevertheless resolves to press forward into uncharted territory and hold a hearing on whether to impose a civil sanction for contempt of any aspect of the May 2011 injunction notwithstanding the Federal Circuit's decision (which Lawson does not view as permissible), strict adherence to the procedures outlined in *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) will certainly be required.  This contempt proceeding was initiated in September 2011 on ePlus's contention that Lawson's redesigned RQC product was not more than colorably different than the RSS software the jury had found to infringe asserted patent claims and, specifically, that Lawson's redesign of the software did not change "in any significant way, the underlying infringing functionality of Defendant's *systems*."  ePlus Brief In Support of Motion to Show Cause at 20 (D.I. 799) (emphasis added).  With the Federal Circuit's having invalidated the system claims at issue and otherwise pared the case down to a finding of infringement of one claimed method of using Configuration Nos. 3 and 5, the existing injunction requires material modification or elimination, and the civil contempt proceeding can no longer proceed.  Indeed, even if the Court chose to treat this case as if an alleged historical violation of some unmodified portion of the May 23, 2011 injunction could be the subject of a civil contempt

3

proceeding (which Lawson disputes), it would still be incumbent on ePlus to first state what conduct by Lawson purports to violate what remains of the injunction, and thereafter to follow *TiVo's* path to structure and hold a hearing that carefully separates evidence related to the more than colorable change to the features previously alleged and proved to be infringing (*TiVo* step 1) from evidence related to infringement by the modified feature(s).   (*TiVo* step 2).  ePlus's submission on contempt fails to provide any guidance on how to perform these fundamental steps.

## SUMMARY OF FEDERAL CIRCUIT OPINION

The Federal Circuit's opinion addressed and disposed of the lion's share of infringement findings in favor of ePlus, findings that formed the predicate for both the entry of the original injunction and the present contempt proceeding.  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012).  The significant holdings of the opinion are summarized in the Lawson Injunction Statement at pp. 5-7, and that discussion is incorporated here by reference.

## IMPACT ON THE SCOPE OF THE CONTEMPT PROCEEDING

**I.     The Contempt Proceeding Should Be Dismissed Outright**

**A.     ePlus Ignores The Effect On The Injunction Of The Federal Circuit's Ruling**

ePlus's Statement of Position Concerning the Effect of the Federal Circuit's Decision on the Scope of the Contempt Proceedings ("ePlus Contempt Statement") fundamentally ignores the sweeping implications of the Federal Circuit's opinion for this action, both procedurally and substantively.  ePlus contends that Lawson can be held in contempt "based on violation[s] of the injunction to date," ePlus Contempt St. at 10, but ignores its own admission in its injunction papers that the current injunction cannot stand.  ePlus does not address the interplay between the injunction and the contempt proceeding, although the two are inextricably interrelated.  The

Federal Circuit's opinion necessarily affects the continuing viability of the injunction, and any change in the injunction in turn necessarily affects the contempt proceeding.

With regard to the injunction, the Court has two options before it: (1) the Court can vacate it; or (2) the Court can modify it.[1]  The consequence of either approach to the contempt proceeding is not materially different because, in either case, Lawson submits that it cannot be tried for civil contempt for past conduct that is alleged to have been in violation of an injunction that the Federal Circuit's ruling has rendered inoperative.  *There is no precedent for such a hearing*.  In any case, the Court cannot proceed on the issue of contempt before determining the new scope—if any—of injunctive relief.  ePlus's desire to proceed immediately to a contempt hearing based on alleged historical contempt of the *prior* injunction is unprecedented and wrong.

### B.    If The Injunction Is Vacated, No *Civil* Contempt Award Is Permissible Under Black-Letter Contempt Law

The Federal Circuit's opinion mandates reconsideration of the May 2011 injunction. Setting details to one side, this Court will, necessarily, be entering an order with terms different than the May 2011 injunction.  ePlus's approach to contempt does not look forward to any new order.  Instead, it advocates holding a contempt proceeding for alleged violations of a prior, now inoperative injunction.  That approach would be possible only in the context of *criminal* contempt, not civil contempt, and so it is totally inappropriate here.

Sanctions for "criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of the court."  *See United Mine Workers*, 330 U.S. at 302. For that reason, criminal contempt sanctions are permissible for clear violations of all court

---

[1]  As Lawson's Injunction Statement demonstrates, ePlus is not entitled to any "redlined" injunction merely excising Configuration No. 2 from the enjoined product list.  Rather, even if the Court does not *sua sponte* dissolve the injunction, the Court must hold a new hearing to determine whether the current facts still warrant extraordinary equitable relief under the *eBay* factors.

orders, even orders later rendered inoperative or void (provided, of course, that criminal sanctions are substantively justifiable and the more demanding procedures for criminal contempt are followed).[2]  *Id.* at 294 ("Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, or though the basic action has become moot."); *McLean v. Central States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985).

In *civil* contempt actions, in contrast, a party cannot be held in contempt for historical violations of an inoperative injunction.  Civil contempt is not designed to vindicate the authority of the court; rather, it is an action to address private rights created by injunctions.  *See Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975) ("Civil contempt, on the [other] hand, is 'wholly remedial' [and] serves only the purpose of a party litigant") (quotation omitted).  In that regard, a civil contempt proceeding "is similar in several particulars to an ordinary damage action, since it is in essence an action between private parties, with rights created by injunctive order rather than by a statute or the common law."  *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1345-46 (3d Cir. 1976).  Once the injunction ceases to be operative, this "is equivalent to a holding that the plaintiff never had a legally cognizable interest."  *Id.*  As the Supreme Court made clear, "[t]he right to remedial relief

---

[2]  Criminal contempt defendants are entitled to various procedural safeguards to which civil contempt defendants are not, including the rights to be presumed innocent until proved guilty beyond a reasonable doubt, to refuse to testify, to be advised of the criminal charges and have a reasonable opportunity to respond, to a public trial before an unbiased judge, and to a jury.  *Young v. U.S. ex pel. Vuitton et Fils S.A.*, 481 U.S. 787, 798-99 (1987) (citations omitted).  Criminal contempt defendants must also be proven to have "acted willfully, contumaciously, intentionally and with a wrongful state of mind."  *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 295 (4th Cir. 2000) (quotation omitted).  Criminal contempt proceedings may not be prosecuted by a judge, and should be prosecuted by an attorney for the government.  *Cromer v. Kraft Foods North Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).  If the government declines, the court may appoint a private attorney, but not an "interested" attorney to control the litigation.  *See Person v. Miller*, 854 F.2d 656, 663 (4th Cir. 1988).  Of course, a court may summarily issue a punitive contempt sanction for contumacious conduct in the court's immediate presence.  That is not at issue here.

[in civil contempt] falls with an injunction which events prove was erroneously issued." *United States v. United Mine Workers of Am.*, 330 U.S. at 294-95.  This principle has been applied unwaveringly by the Supreme Court, the Fourth Circuit (whose law on contempt governs here), the Federal Circuit, and all other circuit courts to address the issue, both in broad application and in the patent infringement context specifically.[3]

---

[3]  *See, e.g., id.*; *Worden v. Searls*, 121 U.S. 14, 27 (1887) (reversing civil contempt fines imposed for accused patent infringer's violation of a preliminary injunction later found invalid); *McLean*, 762 F.2d at 1210 ("reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon"); *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302-03 (4th Cir. 2000) (same); *Sandler v. Tarr*, 345 F. Supp. 612, 621-22 (D.Md. 1971), *aff'd*, 463 F.2d 1096 (4th Cir. 1972) (rejecting argument that relief in a civil contempt action "may be based on the fact that the order had existed at an earlier time"); *Hi-Lo TV Antenna Corp. v. Rogers*, 275 F.2d 452, 453-54 (7th Cir. 1960) (where contempt was predicated on finding of infringement that had been vacated on appeal, "we hold that the judgment finding defendants guilty of civil contempt should be and is reversed on appeal.  The question of infringement by defendants' latest accused structure can be more properly determined in the new trial of the principal action."); *Flat Slab Patents Co. v. Turner*, 285 F. 257 (8th Cir. 1922) ("As we have determined that the Nevins construction was not an infringement the order in the contempt proceeding should be and is reversed with instructions to dismiss the same."); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727 (2d Cir. 1936) (in patent infringement action, reversing contempt finding alongside the incorrectly issued preliminary injunction because "[t]o let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong, which the law should not do."); *Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp. 2d 1187, 1191 (C.D. Cal. 2008) (noting in patent infringement action, "[a]s a general matter, a claimant cannot retain fines assessed for civil contempt of an injunction that has subsequently been vacated"); *Karaha Bodas Company, L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357 (5th Cir. 2003) ("We and several other circuits have expressly adopted this [*United Mine Workers*] rule."); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) ("[c]ompensatory civil contempt does not survive if the underlying injunction is vacated"); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 966 (6th Cir. 1976) (same); *Latrobe Steel Co. v. United Steelworkers of Am., AFL–CIO*, 545 F.2d 1336, 1346 (3d Cir. 1976) ("The *United Mine Workers'* doctrine thus recognizes that a private party should not profit [in civil contempt] as a result of an order to which a court determines, in retrospect, he was never entitled"); *Hampton Tree Farms, Inc. v. Yeutter*, 956 F.2d 869, 871 (9th Cir. 1992) (same); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981) (same); *Hoskins Lumber Co., Inc. v. United States*, 20 F.3d 1144, 1147 (Fed. Cir. 1994) (same); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 910 (3d Cir. 1975) ("[a] vacation of the injunction establishes that there was no basis for any claim for loss based on the invalid court order").

7

In seeking to hold Lawson in contempt "based on violation of the injunction to date,"— indeed, without even waiting for the Court to adjudicate the need for or proper scope of any new injunction—ePlus seeks to transplant a criminal remedy into a civil case with no regard for the significant differences between the two.  ePlus Contempt St. at 10.  If the Court agrees with Lawson that the May 2011 injunction should be vacated, this proceeding is necessarily at an end, as a party's right to civil contempt falls with its predicate injunction.

### C.   Even If The Court Grants A Modified Injunction, It Should Still Dismiss The Contempt Proceeding

Even if the Court decides to modify the injunction instead of vacating it completely, civil contempt proceedings would still be inappropriate.  A defendant cannot be held in retroactive civil contempt of a newly modified injunction because that modified injunction was not a valid decree in existence at the time of the alleged contumacious behavior, nor could the defendant have had actual or constructive knowledge of an order that had not yet issued.  Both conditions are necessary to establish civil contempt.  *See generally Ashcraft*, 218 F.3d at 301-03 (substantively appropriate but improperly sealed order was not a "valid decree" and thus could not form the basis for civil contempt).  After an exhaustive review, Lawson is not aware of a single case in which civil contempt was found retroactively, after modification of the injunction at issue when the contempt proceedings were initiated.  Certainly ePlus cites none.  Based on the differences between criminal and civil contempt, and the circumstances of this case, it is Lawson's position that conducting a contempt hearing after entry of any modified injunction, but based on conduct antedating the modified injunction, would constitute an abuse of discretion.

What *is* clear, however, is that the Court has no *obligation* to continue to entertain this contempt proceeding predicated on any modified injunction.  The decision whether to hold a contempt proceeding is entrusted to the equitable discretion of district courts.  As the Federal

Circuit recently reiterated in *TiVo v. EchoStar*, this "separate determination whether contempt proceedings were properly initiated . . . . is left to the broad discretion of the trial court to be answered based on the facts presented." 646 F.3d at 881 (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1349 (Fed. Cir. 1998)). Respectfully, on the record before this Court, Lawson submits that the Court should exercise its discretion and end the contempt proceeding now.

> **1. The Absence Of Precedential Authority For Predicating A Civil Contempt Finding On A Modified Injunction Militates In Favor Of Dismissal**

ePlus's proposal to proceed in civil contempt—for alleged violations of an injunction that is no longer operative, that was predicated on reversed and vacated findings, and that will at least be modified to conform to legal realities only *after* the allegedly contumacious conduct occurred—asks the Court to devise a new and untested theory of civil contempt. Wielding the severe contempt power in such a novel manner would run counter to the long history of jurisprudential caution in contempt actions.

Courts uniformly acknowledge that the gravity of contempt proceedings cautions against entering them lightly. The Supreme Court has repeatedly underscored the "principle of restraint in contempt," *Young*, 481 U.S. at 801, because "contempt 'is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *TiVo*, 646 F.3d at 881-82 (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). The Supreme Court recently recognized that the civil contempt power "uniquely is liable to abuse" because it "leave[s] the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quotation omitted). These principles have guided courts to the "well-established and oft-repeated rule that the power to

9

punish for contempt of court should be used sparingly and with great caution and deliberation." *Clark v. United States*, 61 F.2d 695, 719 (8th Cir. 1932). Simply put, contempt is not a forum for experimenting with a defendant's Due Process or Seventh Amendment rights.

Rather than wade into the wilderness at ePlus's invitation, the Court should dismiss this proceeding now, permitting ePlus to pursue an infringement action—an action in which ePlus can, if its theories are correct, recover its full range of compensatory remedies. *Cf. United States v. Wilson*, 421 U.S. 309, 319 (1975) ("only the least possible power adequate to the end proposed should be used in contempt cases") (quotations omitted).

### 2. The Surviving "Facts Presented" Do Not Merit Contempt Consideration

Even if the Court were inclined to allow ePlus to pursue contempt, the infringement finding relating to the method covered by claim 26 is a weak and narrow platform that cannot support equitable relief. The Federal Circuit held four of the five claims ePlus relied on for this contempt action either invalid or not infringed.[4] Whereas this was previously centered on RSS and the redesigned RQC components of Lawson's accused e-procurement systems, it is now a case *only* about some uses of configurations containing Punchout, an add-on feature licensed to only a fraction of Lawson's customers.[5] Indeed, of the 864 Lawson customers with configurations implicated by ePlus's original contempt allegations, only 127 even license Configuration Nos. 3 and 5, which include Punchout. Among those 127, the scope of the allegedly contumacious conduct is peripheral, as Lawson's primary e-procurement software has

---

[4] As discussed more fully in Lawson's Injunction Statement, the PTO and BPAI have likewise held the balance invalid, a matter currently on appeal before the Federal Circuit.

[5] Former Configuration No. 3 (infringing) is identical to former Configuration No. 2 (non-infringing), with the important exception that Configuration No. 3 also included the Punchout feature. And although Configuration No. 5 has both Punchout and EDI, the jury's verdict clearly turned on Punchout alone, as the jury *rejected* ePlus's assertion that Configuration No. 4, which has EDI but not Punchout, infringed claim 26.

been held not to infringe, and only one-off uses of the Punchout add-on can infringe.  The record

contains little if any evidence as to which customers use Configuration Nos. 3 and 5 in an

infringing manner (*i.e.,* through Punchout sessions in which the "determining" step is fulfilled);

whether they did so by reason of inducement by Lawson; how often they do so, and the value to

Lawson of the infringing conduct it is alleged to have induced.  Under these circumstances, there

is no legitimate remedial purpose to be served by the continuation of this civil contempt

proceeding.

Any argument ePlus might make regarding the need for a contempt remedy is belied by

one simple fact:  if ePlus believes that Punchout infringes its surviving patent claims, ePlus can

file a new infringement action.  Such a proceeding would allow ePlus to pursue compensation for

any infringement it could prove, and indeed with a lower burden of proof.  Thus, ending this

contempt proceeding would not unfairly prejudice ePlus in the slightest.  While ePlus might

argue that a contempt proceeding will provide it speedy and efficient resolution that an

infringement action could not, that simply is not the reality given the history of the last year and

the current procedural posture of the case.  Whatever parameters this proceeding had as of its

start in September 2011, they have been rendered meaningless by the Federal Circuit's ruling,

and ePlus has not articulated (much less accepted) that any contempt proceeding it might try to

bring would have to begin anew.

## II.     The Federal Circuit Opinion's Impact On The *TiVo* Analysis, If Necessary

Should the Court, contrary to Lawson's position, find that contempt proceeding can and

should proceed here, strict adherence to the *TiVo* framework is essential.  ePlus's Contempt

Statement underscores its persistent attempt to inappropriately conflate the independent

colorability and infringement tests, as ePlus consistently equates infringement with contempt.

For example, ePlus now contends that the Federal Circuit's solitary affirmance of Lawson's

11

infringement of method claim 26 through the subsequently modified configurations that were at issue in 2011, but are no longer sold or serviced, somehow means "there can be no doubt that Lawson's continued violation of the injunction is not only contemptuous [sic], but also willful." ePlus Contempt St. at 2. That is rhetoric not reality. ePlus barely salvaged a finding on "substantial evidence" that one method claim was infringed and the rest of its case has been discarded as legally unsound or factually unproven. There is nothing in this record to support ePlus's suggestion that the jury's verdict about prior software systems proves "continued" infringement by redesigned products. ePlus simply invites the Court to commit error by ignoring the distinct colorability analysis and adopting the very pre-*TiVo* approach that "has misled district courts to focus solely on infringement by the newly accused devices in deciding contempt." *TiVo*, 646 F.3d at 882 (disapproving *KSM Fastening Sys. v. HA. Jones Co.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985)).

### A.   ePlus Must Identify With Specificity What Lawson Behavior Is Alleged To Have Been Contumacious

The Federal Circuit's opinion, necessitates that ePlus begin afresh with any contempt it would pursue. To start, both Lawson and the Court would be entitled to a "detailed accusation" specifying the alleged facts constituting contempt. This follows directly from *TiVo's* guidance that "[w]hat is required for a district court to hold a contempt proceeding is a detailed accusation from the injured party setting forth the alleged facts constituting the contempt." 646 F.3d at 881. To the extent the Court previously held this requirement satisfied by ePlus's initial Motion to Show Cause (D.I. 798-99), that determination is no longer relevant.

First, ePlus's original papers focused on the challenged systems themselves, predicating the contempt allegations on the actual sale and distribution of allegedly infringing systems. Now, the Federal Circuit has ruled ePlus's system claims invalid as a matter of law. ePlus's

original papers are virtually devoid of accusations regarding activity that could infringe the method covered by claim 26, which is all that the Federal Circuit has left standing.

Second, and relatedly, ePlus's original papers are bloated with accusations about conduct that has now been decided with finality not to infringe and thus not to constitute civil contempt, most of which was predicated on claims 1, 3, 28, or 29.  It is ePlus's job to separate the wheat from the chaff if it is to provide the requisite notice permitting Lawson to adequately defend a serious contempt charge.  Then, once ePlus lays out a new, detailed accusation as required by *TiVo*, Lawson should be afforded the opportunity to file a motion to dismiss the proceeding.

**B.     The Court Must Identify What Was "Contended" And "Proved" At Trial To Focus The *TiVo* Colorability Test**

If ePlus submits—and the Court accepts—a new "detailed accusation" identifying the remaining operative facts that could warrant a contempt finding on ePlus's one remaining method claim, a full *TiVo* inquiry must follow.  The first prong of that inquiry will be whether Lawson's newly designed product is more than colorably different from its old product.  646 F.3d at 882.  To answer this threshold question, the Court must undertake to resolve what remaining allegations, if any, formed the prior basis for the lone surviving infringement finding.

> The analysis must focus . . . on those aspects of the accused product that were previously alleged to be, and *were a basis for, the prior finding of infringement*, and the modified features of the newly accused product.  Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and *proved*, *satisfy specific limitations* of the asserted claims.

*Id.* (emphases added).

This requirement has been the subject of seven letters to the Court since the hearing on February 29, 2011, when the Court requested guidance from the parties, yet it remains undecided.  ePlus has repeatedly refused to even address how this predicate determination should be approached, despite *TiVo's* unequivocal language and the Court's explicit statement that "the

first task is going to be to figure out how we apply the first part of [*Tivo's* two-part test], and that is how we define the animal against which we measure the – whether there is a colorable difference in the first place." 2/29/12 Hearing Tr. at 66-67.  The Court expressed its concern that: "I'm worried about the construct for how we do the first part of the analysis." *Id.* at 68.

The Court's worry should only be heightened by the Federal Circuit's further parsing of an already mixed bag of jury findings.[6]  With three of the five challenged configurations now exonerated, and 11 of the 12 claims originally at issue now held either invalid or not infringed, that which formed the "basis for[] the prior finding of infringement" is even less clear than before.  *TiVo*, 646 F.3d at 882.  And if the contempt proceeding is to be predicated on a subsequently modified injunction, as ePlus seeks to accomplish, a clear statement of the conduct violating that newly modified injunction becomes more important than ever because the prior statement spoke only to alleged violations of the former injunction.  Curiously, nowhere in either of ePlus's Statements of Position does ePlus even *mention* the governing *TiVo* case, let alone explain how its threadbare explanation of the "Impact On Scope Of Contempt Proceeding" satisfies the *TiVo* rubric.

---

[6] Here, the jury had to consider 38 separate infringement questions derived from 12 claims in three patents asserted against five product configurations.  The jury returned 27 findings of non-infringement, entirely exonerating two of the five accused configurations (Configuration Nos. 1 and 4).  The jury also returned 11 findings of infringement with respect to the three other configurations, 9 of which have since been vacated or reversed.  Specifically, the jury found one configuration (Configuration No. 2) to infringe only system claim 1, but the Federal Circuit reversed that finding due to that claim's indefiniteness.  The jury found the two remaining configurations (Configuration Nos. 3 and 5) to infringe the system claims of the patents-in-suit as well as method claims 26, 28, and 29, but the Federal Circuit likewise reversed the jury's findings with respect to the invalidated claims 1 and 3, and vacated its finding with respect to method claims 28 and 29, because ePlus had failed to prove those claims were infringed.  Thus, the only surviving claim held to be infringed was method claim 26 of the '683 patent, and only with respect to some uses of Configuration Nos. 3 and 5.

**1.    ePlus's Request to Include Claims 28 and 29 Highlights the Need for Strict Adherence to the *TiVo* Rubric**

ePlus's attempt to hold Lawson liable in contempt under claims that the Federal Circuit expressly held *not* infringed underscores the significance of *TiVo's* threshold requirement.  ePlus makes no secret of its position.  It argues that the Court may find Lawson in contempt of the still-being-defined injunction if Lawson is shown now—necessarily for the first time—to have infringed claims 28 and 29 of its '683 patent.  ePlus cannot bootstrap these never-proven-to-be-infringed claims into a contempt proceeding.

ePlus's rationale for trying to hold Lawson in contempt based on claims that it never proved to be infringed is unexplained, but must follow this path:  First, ePlus suggests that even if the jury had correctly found that claims 28 and 29 had not been infringed, the Court still *would have had authority to enjoin Lawson from infringing those claims in the future*.  Second, ePlus assumes that the Court, under those hypothetical circumstances, would have chosen to enjoin Lawson from future conduct to include future infringement of a type not proven at trial, and would have issued an injunction similar to the injunction issued after the jury incorrectly found that claims 28 and 29 had been infringed.  Third, the basis of a showing that ePlus alleges it can *now* make, *i.e.,* that Lawson's customers have infringed claims 28 and 29 with Lawson's assistance, Lawson should be found in contempt.  To articulate such a rationale is to reject it:  Lawson cannot be found in contempt of an injunction that *could have been* granted, only of an injunction that *was* granted.  The Court was never asked to enjoin non-infringing activity, nor did it.  There is no need to argue about what alternative basis could have supported an injunction given that the actual basis for the injunction has since been vacated as in error.

Moreover, *TiVo* expressly prohibits a party from predicating a contempt action on new allegations of infringement.  Rather, the proceeding "must focus" on product aspects that "were a

basis for[] *the prior finding of infringement*." *TiVo*, 646 F.3d at 882 (emphasis added).  Thus, only the elements of a product "previously contended" and "*proved*" can be raised in the contempt proceeding.  *Id.* (emphasis added).  The product element relating to claims 28 and 29—specifically, the UNSPSC code functionality—was not a basis for any surviving prior infringement finding.  The Federal Circuit held just the opposite in terms leaving no room for ambiguity.  *ePlus*, 700 F.3d at 522 ("ePlus did not offer *any* evidence that showed *or even suggested* that anybody" performed all of the steps of these two method claims, so "no reasonable jury could have concluded that claim 28 [or 29] was infringed—*either directly or indirectly*") (emphases added).  Therefore those claims and product elements are irrelevant to this contempt proceeding.  *TiVo*, 646 F.3d at 883 (vacating as improper in a contempt proceeding a finding of infringement based on an unmodified feature [the PID filter] because "TiVo never unequivocally alleged"—and thus never proved—"prior to the contempt stage that the PID filter met that claim limitation.").[7]

In contrast to the clear, binding precedent in *TiVo*, none of the cases ePlus cites involve patent redesigns.  Nor do they involve the transposition of an infringement finding from one claim to a separate claim (let alone one held *not* to infringe), as ePlus attempts here.  Indeed, only one—an inapposite Sixth Circuit trademark case from 1930—even arose in the contempt

---

[7] To be clear, Lawson made significant changes to its software to address the evidence alleged at trial with regard to claims 28 and 29.  Lawson entirely removed its software's ability to access and convert data at the most granular, fourth level of products' UNSPSC codes, the very ability ePlus demonstrated to the jury at trial.  Had the issue survived to the contempt proceeding, Lawson would have established that the new product is thus more than colorably different from the previous product and, separately, that it is non-infringing.  But those changes are simply irrelevant now given the Federal Circuit's decision.

setting.[8]  ePlus's attempt to shoehorn non-infringed claims into this contempt proceeding is thus an invitation for error and should be rejected summarily.

Indeed, ePlus's insistence that Lawson be held accountable for what it alleges to be current infringement of claims 28 and 29 further supports dismissing this action in favor of an actual infringement action.  Claims 28 and 29 are not addressable in this contempt action, but they would be actionable in an independent infringement case for alleged post-verdict infringements.  If ePlus is determined to proceed, that is the appropriate vehicle.

> **2.      ePlus's Stated Approach with Regard to Method Claim 26—the Only Surviving Claim—Is Similarly Misguided**

Compounding its error, ePlus seeks to hold Lawson in contempt with regard to claim 26 for acts that were likewise never "proved" and not forming the "basis for[] the prior infringement finding."  *TiVo*, 646 F.3d at 882.  ePlus's Contempt Statement is silent as to the acts it now contends are contumacious, but the Federal Circuit clearly articulated the ways Lawson had been "proved" to infringe claim 26 in the initial action.  Specifically, the court listed instances of Lawson having "installed, maintained, demonstrated, and managed the infringing systems for its customers."  *ePlus*, 700 F.3d at 520-21.  The court also listed Lawson's making available "course catalogs and webinar presentations" and "testing" products for customers, which "included performing actual procurements using Lawson's systems."  *Id.* at 521.

---

[8]  Further, in all of the cited cases, unlike here, only the actual intellectual property right previously proven to be violated was ordered protected.  ePlus's own cases underscore this distinction.  For example, ePlus cites *Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352 (Fed. Cir. 1999) in support of its proposition, but the court in *Signtech* upheld language enjoining only "*further* infringement" of the claims held to infringe.  *Id.* at 1359 (emphasis added). The court made clear that only the same type of infringement underlying the original action was precluded, finding the injunction's language acceptable only insofar as a subsequent court could look to "the detailed record on which this injunction was entered" in identifying whether subsequent allegedly contumacious conduct was of the same variety.  *Id.*

Noticeably absent from the Federal Circuit's list is the sale or distribution of the initially challenged system. This is because claim 26 is a method claim, and, as explained fully in Lawson's Injunction Statement, the mere sale or distribution of a product, even one capable of infringing functions, does not directly infringe a method claim. Nor does a sale alone induce infringement of a method claim. ePlus thus cannot rely on the distribution of RQC/Punchout as a basis for contempt, but that distribution is precisely what ePlus has focused upon since this action's inception, contending it is entitled to, *inter alia*, recovery of Lawson's licensing fees.

### C.    In the Event That This Contempt Proceeding Continues, The Court Should Follow The Same Bifurcated Approach It Previously Found Necessary

As to the framework for the physical contempt hearing, Lawson's position has not changed. As expressly mandated in *TiVo*, and as this Court recognized at the February 29 hearing, the Federal Circuit requires separate consideration of the two governing issues: colorability and infringement. Colorability is first in line, as "[t]he primary question" on contempt is "whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *TiVo*, 646 F.3d at 882 (quoting Cal. Artificial Stone Paving Co., 113 U.S. at 618).[9] If ePlus fails to prove by clear and convincing evidence that the new product is not more than colorably different, then "the inquiry into whether the newly accused product actually infringes is irrelevant." *Id.*

Only if this first colorability prong is satisfied should the Court then proceed to the infringement analysis. At that next stage, "the court is required to evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation

---

[9] Of course, this colorability assessment must be predicated on the Court's determination of what was "previously contended" and "proved" to form "the basis for[] the prior infringement finding," as discussed *supra*. *Id.*

basis, to ensure that each limitation continues to be met." *Id.* at 883.  Thus, the first inquiry

compares product features of the old and new products, and the second compares the new

product and the patents, with the "clear and convincing evidence" standard applying to both.  *Id.*

As this Court already decided at the February 29 hearing, in the interest of both efficiency

and judicial prudence in abiding *TiVo's* admonition not to conflate the two relevant inquiries, the

proceeding should be bifurcated between colorability and infringement, with the infringement

portion immediately following the colorability portion.  As the Court announced:

> I'm talking about the bifurcation of the presentation of the evidence.  I intend to
> be able -- I may be able, at the end of the first one, to make a decision, but at least
> we're going to segregate the presentation of the evidence so that we're finished
> with the first task [colorability] before we take on the second one [infringement].
> Then we won't have it lumped together.

2/29/12 Hearing Tr. at 69.  The need for this bifurcation has grown even more apparent given the

continued conflation of colorability and infringement in ePlus's Contempt Statement.

Infringement aside, the colorability analysis as instructed in *TiVo* will dispose of the

remainder of this contempt case entirely.  As explained, the only element of Lawson's products

that remains relevant after the Federal Circuit's opinion is Punchout, an add-on module to non-

at-issue Configuration No. 2, which a fraction of Lawson's customers license.  As this Court

noted in its May 24, 2011 Memorandum Opinion, ePlus relied at trial on two demonstrations

involving the use of Punchout to show that Lawson's systems infringed claim 26, thus

contending that Punchout infringed in two ways only.  *ePlus, Inc. v. Lawson Software, Inc.*, 2011

U.S. Dist. LEXIS 55625, at *20-21 (E.D. Va. May 24, 2011)).  First, ePlus showed the jury that

the former system allowed users to place items from two different Punchout vendors onto a

single requisition to generate two separate purchase orders, one to each vendor.  Trial Tr. at 683-

98.  Second, ePlus demonstrated the former product's ability to place one item from Item Master

and another item from a Punchout vendor on the same requisition to create two separate purchase orders.  Trial Tr. at 761-66.  *Neither* capability is present in the modified Punchout.  It is undisputed that the redesigned Punchout no longer allows users from placing items from multiple Punchout vendors, or from Item Master and a Punchout vendor, on a single requisition.[10]

Certainly, Lawson did not *want* to make these changes, which were substantial, but it made them anyway to eliminate the very capabilities that ePlus "previously contended, and proved, satisfy specific limitations" at trial.  *TiVo*, 646 F.3d at 882.  Indeed, when Lawson made the change regarding multiple Punchout vendors, it did so knowing that "[t]his will have a negative impact on our customers who use punchout and this is on top of the change we made to require different requisitions for punchout vs. non-punchout [Item Master] items," such that "[t]his will be a step backwards."  Exh. A, Lohkamp Dep. Exh. 8 at p. 4.  But Lawson made these drastic changes anyway, determining, in Mr. Hager's words, "[w]e need to do what we need to do. . . . [I]f we feel there is substantial risk to the current path, then we must make the change."  *Id.* at p. 3.

Having thus eliminated both capabilities ePlus "contended" and "proved" at trial, the new product must necessarily be found more than colorably different.  It is clearly this realization

---

[10]   ePlus's position has always been, and continues to be, that the modified Punchout add-on is not more than colorably different from the former Punchout *because (per ePlus) it still infringes*.  *See, e.g.,* ePlus 4/16/12 Letter at 6 (D.I. 948) (downplaying "the supposed differences between the 'colorable differences' and 'infringement' inquiries").  Even in its Contempt Statement, ePlus does *not* contend that the redesigned Punchout feature is only colorably different from that found to infringe, but rather that the "purported change is not relevant to any element of any claim at issue."  ePlus Contempt St. at 4.  That step-skipping approach has been unequivocally disapproved of by the Federal Circuit, which "rejected that infringement-based understanding of the colorably different test."  *TiVo*, 646 F.3d at 882. Whether the modified Punchout module can be used to infringe claim 26 of the '683 patent is simply irrelevant to the threshold inquiry whether it is more than colorably different from the Punchout feature at issue in the merits trial.  *Id.*

motivating ePlus to reiterate with renewed vigor its misguided argument to skip right past colorability to an infringement inquiry. *TiVo* mandates otherwise.

### D.     Impact On The Contempt Proceeding's Logistics

#### 1.     Various Pre-trial Submissions Must Be Revised, Resubmitted, And In Some Cases, Adjudicated

Much has changed since the Court's last trial scheduling orders were issued in the weeks leading up to the February 2012 hearing date.  Foremost, the Federal Circuit's overturning of the lions' share of the original infringement findings significantly reshapes the contours of the case. The Court's February 21 order (D.I. 914) requiring Lawson to produce thousands of privileged documents further necessitates modifications to both the parties' trial preparation and actual pre-trial filings.

In light of the Federal Circuit's ruling, the parties should submit revised damage reports. Among other things, the Federal Circuit's ruling significantly cuts back on: (1) the base of customers in possession of configurations arguably capable of being used in an infringing manner (127, down from 864); (2) the actual activities that could constitute compensable infringement; (3) the necessary apportioning of revenues to account for infringing activities only; and (4) the basis for any necessary showing that ePlus has suffered measurable harm.  The parties' damages reports should be adjusted accordingly, if the case proceeds.  Given the substantial nature of these revisions, the parties should then have the opportunity to re-depose the damage experts and notice new motions to strike expert testimony, if necessary.  With regard to the expert reports on liability, the parties should eliminate all paragraphs that do not relate to claim 26.  However, the Federal Circuit's ruling, which excised areas of possible infringement while adding none, should not serve as an opportunity for ePlus to belatedly recast its theory of

the case by adding any new matter to its expert reports on liability. Thus, there should be no need for further depositions of liability witnesses.

When the contempt hearing ultimately approaches, the parties should submit new witness lists tailored to the current relevant issues. Witnesses whose testimony and personal knowledge are irrelevant to claim 26 (*e.g.*, Dr. Niemeyer) should be eliminated, and the parties might wish to add witnesses whose testimony is now germane (*e.g.*, attorneys involved in the redesign process who can address ePlus's allegations of a "sham" redesign). The parties should also update their exhibit lists to include newly relevant documents, and exclude documents rendered irrelevant by this Court's eventual ruling on the allegations at issue pursuant to its *TiVo* analysis.

## III.  If Dismissal Is Denied, The Court Should At Least Stay This Case Pending A Final Decision In The Reexamination Proceeding

As events to date have demonstrated, seeing this proceeding through—even just at the district court level—will require significant resource expenditure on the part of both parties and a correspondingly significant time expenditure on the part of the Court. Unpacking the Federal Circuit's opinion, restarting this action on the appropriate *TiVo* track, and delving into uncharted territory regarding the effect of modified injunctions on pending civil contempt proceedings will take months, conceivably dwarfing the efforts to date.[11] Even once this case is fully litigated here, the parties may then have to start over a *third* time if the Federal Circuit reverses any of the Court's complicated decisions in the contempt proceeding itself, including the Court's expansive privilege waiver ruling that the Federal Circuit flagged for post-trial consideration (*see* D.I. 955), the propriety of proceeding in civil contempt of a subsequently modified injunction, and whether the Court is properly applying the largely untested *TiVo* analysis.

---

[11]   In addition, several previously filed motions must be adjudicated before the parties can hope to plan their trial strategies in earnest, including various *Daubert* motions dating back to February 2012.

Yet, in all likelihood, continued litigation of this action will prove for naught.  As explained in Lawson's Injunction Statement, the PTO has determined that the method claims of the '683 patent asserted here are invalid over multiple prior art references, and the BPAI denied ePlus's Request for a Rehearing, making that determination final.  Given that the Federal Circuit's final determination as to claim 26's validity is now imminent, a determination that will in all likelihood render any intervening proceedings before this Court an exercise in futility, the Court should prudentially stay the contempt action if it does not dismiss it outright.

As the Court noted far earlier in this case, "[t]he Court recognizes the impact of a final PTO finding of invalidity, affirmed by the BPAI and the Federal Circuit."  *ePlus*, 2011 U.S. Dist. LEXIS 55625 at *15 (footnote omitted).  That "impact" would be the voiding of ePlus's patent protections *ab initio*, rendering any injunction inoperative and mooting or vacating the present contempt action.  *See Translogic Tech., Inc. v. Hitachi, Ltd.*, 250 Fed. Appx. 988, at *3 (Fed. Cir. 2007) ("vacat[ing] the district court's [infringement] decision and remand[ing] this case to the district court for dismissal" in light of its affirmance of the PTO's intervening invalidity finding, thus erasing the plaintiff's prior damage award and injunction); *Flexiteek Ams., Inc. v. Plasteak, Inc.*, 2012 U.S. Dist. LEXIS 156286, at *41 (S.D. Fla. Sep. 10, 2012) ("PTO's invalidation and cancellation of Claim 1, *rendering the claim void ab initio*, is an adequate and independent ground for granting Rule 60(b)(5) and (6) relief and *vacating the Final Judgment, the Permanent Injunction, and all related orders*.") (emphases added); *See, e.g., Standard Havens Prods. v. Gencor Indus.*, 27 U.S.P.Q.2d 1959, 1993 U.S. App. LEXIS 11963, at *1-2 (Fed. Cir. 1993) (unpublished).

Unlike when the issue was first presented to the Court in May 2011, this "final . . . finding of invalidity" is no longer merely a contingent prospect residing beyond the horizon; it is

23

now in clear sight and approaching rapidly.  The procedural posture of both this action and the

parallel reexamination—have changed dramatically since the Court considered staying its

injunction in May 2011.  All of those developments support, at the very least, briefly staying the

case.  *See Bausch & Lomb, Inc. v. Alcon*, 914 F. Supp. 951, 952-53 (W.D.N.Y. 1996);

*Everything for Love.com, Inc. v. Tender Loving Things, Inc.*, 2006 U.S. Dist. LEXIS 56033, at

*13-14 (D. Ariz. July 21, 2006).

ePlus's pedal-to-the-metal approach to this proceeding from the get-go has never been

directed at obtaining a final disposition of its rights.  Rather, ePlus begs the Court to move

quickly and summarily through the contempt hearing, prodding the Court to hurry no less than

*seven* times in its Contempt Statement alone.[12]  ePlus hopes to distract the Court from

considering the complicated Due Process questions raised by proceeding on a vacated or

modified injunction and because ePlus wants a contempt judgment before the Federal Circuit's

invalidation of its last remaining method claim.  There can be no other believable justification for

the breakneck timetable for this proceeding that ePlus proposes on page 11 of its Contempt

Statement, which contemplates serving supplemental contempt expert reports before *briefing* on

the impact of the Federal Circuit's opinion is even concluded, and thus well before the Court

defines this contempt proceeding's proper scope.[13]

---

[12]  ePlus Contempt St. at 1 ("this Court should proceed to adjudicate Lawson's contempt at the Court's earliest opportunity"), 2 ("ePlus therefore requests that this Court proceed to resolve the contempt issue with respect to claim 26 as soon as possible"), 6 ("…should go forward as quickly as possible"), 6 ("…at its earlier opportunity"), 7 ("'justice is ill served by delay'"), 7 ("…at the earliest possible opportunity"), 11 ("…at the earliest opportunity").

[13]  ePlus's proposed schedule does not account for potential delay it introduced into this proceeding by the filing of a Petition for Rehearing in the Federal Circuit.  *See* ePlus Combined Petition for Panel Rehearing and Rehearing En Banc, *ePlus, Inc. v. Lawson Software, Inc.*, No. 2011-1396 (Fed. Cir. Dec. 21, 2012), ECF No. 103.

ePlus does not deny its intention to sidestep its final reckoning before the Federal Circuit in either this action or the parallel reexamination, seeking immediate "[r]esolution of the contempt issue and enforcement of the injunction with respect to claim 26 [to] render Lawson unable to service and maintain the infringing systems, and [to] likely enable *a quick resolution of this case once and for all*."  ePlus Contempt St. at 2 (emphasis added).  In other words, having failed to prove an entitlement to damages in the former action, and irrespective of any actual harm to it now, ePlus hopes to weaponize a "quick" contempt judgment to cripple Lawson's business, permitting it to extract its pound of flesh via immediate monetary settlement before the Federal Circuit can get a final crack at its patents' validity, which would necessarily vacate any such prior contempt judgment.  ePlus's improper agenda should not drive this contempt action.

## CONCLUSION

For the reasons stated, Lawson respectfully requests that the Court exercise its equitable discretion in dismissing the contempt proceeding forthwith.  In the alternative, the Court should stay the matter pending final resolution of ePlus's likely dispositive parallel appeal before the Federal Circuit.

Respectfully submitted:

> LAWSON SOFTWARE, INC.
>
> By:  _____/s/_____

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Counsel for Defendant Lawson Software, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 27th day of December, 2012, a true copy of the foregoing will be

delivered by email to::

Craig T. Merritt
Paul W. Jacobs, II
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
pjacobs@cblaw.com
hwillett@cblaw.com

Scott L. Robertson
Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
srobertson@goodwinprocter.com
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

Michael G. Strapp
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
mstrapp@goodwinprocter.com

 

 

-------------------------/s/-------------------------
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

27