1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      RICHMOND DIVISION


 3      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                         :
 4       ePLUS, INC.,                    :
                                         :
 5                      Plaintiff,       :
         v.                              : Civil Action
 6                                       : No. 3:09CV620
        LAWSON SOFTWARE, INC.,           :
 7                                       : January 11, 2013
                        Defendant.       :
 8      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _:

 9


10
             COMPLETE TRANSCRIPT OF CONFERENCE CALL
11            BEFORE THE HONORABLE ROBERT E. PAYNE
                  UNITED STATES DISTRICT JUDGE
12


13


14


15      APPEARANCES:

16      Scott L. Robertson, Esq.
        Jennifer A. Albert, Esq.
17      GOODWIN PROCTOR
        901 New York Avenue, NW
18      Washington, D.C.   20001

19      Michael G. Strapp, Esq.
        GOODWIN PROCTOR
20      Exchange Place
        53 State Street
21      Boston, MA   02109

22

23                  DIANE J. DAFFRON, RPR
                   OFFICIAL COURT REPORTER
24              UNITED STATES DISTRICT COURT

25
```

```
 1      APPEARANCES:   (Continuing)

 2      Craig T. Merritt, Esq.
        Paul W. Jacobs, II, Esq.
 3      CHRISTIAN & BARTON
        909 E. Main Street, Suite 1200
 4      Richmond, VA   23219-3095

 5              Counsel for the plaintiff ePlus

 6      Daniel J. Thomasch, Esq.
        Josh Krevitt, Esq.
 7      GIBSON DUNN & CRUTCHER
        200 Park Avenue
 8      New York, NY   10166-0193

 9      Christopher D. Dusseault, Esq.
        GIBSON DUNN & CRUTCHER
10      333 South Grand Avenue
        4th Floor
11      Los Angeles, CA   90071

12      Dabney J. Carr, IV, Esq.
        TROUTMAN SANDERS
13      Troutman Sanders Building
        1001 Haxall Point
14      P.O. Box 1122
        Richmond, VA   23218-1122
15
                Counsel for the defendant Lawson Software.
16

17

18

19

20

21

22

23

24

25
```

3

 1          (The proceedings in this matter commenced via

 2      telephone at 11:00 AM.)

 3

 4          THE COURT:  Hello.  This is ePlus against

 5      Lawson and this is 3:09CV620.  Please give your name,

 6      who you represent, starting with counsel for the

 7      plaintiff, and, if you would, give your name when you

 8      speak so the court reporter can make the proper

 9      entries.

10          All right?

11          MR. MERRITT:  Good morning, Your Honor.

12      Craig Merritt and Paul Jacobs at Christian & Barton on

13      behalf of ePlus.

14          MR. ROBERTSON:  Your Honor, this is Scott

15      Robertson with Goodwin Proctor.  And I believe I have

16      Ms. Jennifer Albert and Mr. Michael Strapp on the

17      phone as well.

18          THE COURT:  Well, that means they're

19      obviously not in the same room with you.

20          Are you on the phone, Ms. Albert and

21      Mr. Strapp?

22          MS. ALBERT:  Ms. Albert is here, Your Honor.

23          MR. STRAPP:  And Mr. Strapp is here as well.

24          THE COURT:  Okay.  Thank you.

25          MR. CARR:  Judge, this is Dabney Carr from

1    Troutman Sanders.  And I also have on the line Dan

2    Thomasch, Josh Krevitt and Chris Dusseault from Gibson

3    Dunn.

4            THE COURT:  All right.  Hold on.

5            (Brief recess.)

6            THE COURT:  All right, ladies and gentlemen.

7    I'm sorry to interrupt.  I just want you to know that

8    I have my priorities straight.  I had to take that

9    call from my vet so that I could dispense some more

10   money.  And if any of you had any sense and could do

11   it from an age standpoint, you'd quit practicing law

12   and go into veterinary medicine for you'd make at

13   least as much money and not have nearly as much

14   stress.

15           MR. MERRITT:  Your Honor, this is Craig

16   Merritt.  I just dropped my dog off this morning to

17   get a $54 haircut, and I'm going to go get a $15

18   haircut if I can get one today.

19           THE COURT:  All right.  I got this letter

20   from you, Mr. Thomasch, and, frankly, it was in that

21   letter, Mr. Robertson, that I realized that you all

22   had filed a petition for rehearing.  And I realize

23   your papers you filed in, I think, November or

24   December on the injunction and the contempt scope

25   issues said that you might, but you may have notified

1   us, and I didn't pick it up.

2        And I don't know if any of you have had this

3   problem with the Clerk of the Federal Circuit, but two

4   times now I've had them tell me they don't issue

5   mandates, which I think is contrary to the Federal

6   Rules.  But on one of the occasions when I had that

7   conversation they did issue a mandate and on the other

8   one they didn't.

9        And I'm not quite sure what's going on up

10  there.  That's just a long way of saying I wasn't

11  aware that there was pending a petition for rehearing

12  and, as I see it, if they do issue a mandate, I mean

13  if their practice is to issue a mandate in dispositive

14  cases, then the filing of a petition for rehearing

15  stays the issuance of the mandate.

16       Is that right, Mr. Robertson?

17       MR. ROBERTSON:  You are correct, Your Honor,

18  that we have filed a petition for rehearing with

19  regard to Claims 28 and 29.  If you look at our

20  papers, particularly our reply papers on the

21  injunction and the scope of it, Claim 26 has now been

22  affirmed, and Lawson has been adjudicated as --

23       THE COURT:  I understand that and I've read

24  the petition for rehearing, Mr. Robertson.  I got

25  that.

6

1          Are they going to issue a mandate, according

2     to your understanding, at all until they decide the

3     petition for rehearing on that part of the case?

4          MR. ROBERTSON:  They're not going to issue a

5     mandate until they decide that aspect of the case,

6     Your Honor.

7          THE COURT:  All right.

8          MR. ROBERTSON:  But we don't require a

9     mandate.  The cases that we cited in our reply brief,

10    and in particular I think this was at page 8 of our

11    injunction brief with respect to *MPT* and *Broadcom v.*

12    *Qualcomm*, courts have enforced their injunctions

13    immediately upon a decision from the Federal Circuit.

14    And this injunction of Your Honor, if I might refresh

15    you, it's been outstanding now for 20 months.

16         THE COURT:  Mr. Robertson, let me assure you

17    that this is the oldest case on my docket, so I

18    certainly am aware of all of this.  I also don't

19    question that the contempt proceeding can go on.  The

20    question is:  Given what you raised in your papers,

21    does it make any sense to go forward until the

22    rehearing is decided?  That way you can decide all of

23    the issues at the same time.  That's the question.

24    It's not whether I can, but should I.

25         MR. ROBERTSON:  Well, I respectfully would

1    suggest, Your Honor, that you should because for 20

2    months our position is Lawson has been in contempt of

3    your injunction order and it's been making a lot of

4    money with respect to that, and you certainly have the

5    authority.   In fact, Mr. Thomasch's letter doesn't

6    cite any authority that says you can't move forward,

7    and I understood Your Honor to say you've been moving

8    forward with regard to several of these matters.

9            So the only thing that is impacted is one

10   configuration out of the three infringing

11   configurations that the jury found to infringe.   And

12   so we want them to stop infringing those two

13   configurations.

14           There's not even an argument --

15           THE COURT:   Excuse me just a minute, Ms.

16   Robertson.   Try it this way:   Do you contend that what

17   Lawson is doing would give rise to a claim for

18   contempt different than the one or in addition to the

19   one that you have pending presently in the event the

20   Federal Circuit grants your petition for rehearing and

21   affirms your view on the claims that are at issue in

22   the petition for rehearing?   In other words --

23           MR. ROBERTSON:   Yes, sir.

24           THE COURT:   -- we'd have another contempt

25   hearing going, wouldn't we?

1      MR. ROBERTSON:  We already have two

2   configurations that are indisputably in violation of

3   Your Honor's order.

4      THE COURT:  I understand that.  You don't

5   need to tell me the obvious.  I've read it.  Here,

6   look.  Try this technique.  Try focusing just on the

7   question instead of trying to -- here's the narrow

8   issue that I'm trying to get at seven ways from Sunday

9   and I'm not doing a very good job of it.

10      Obviously, we have two affirmed claims as to

11   which you think they are in contempt because they

12   continue to violate the injunction.  There is pending

13   in the Court of Appeals another issue now, and that

14   affects other claims, 28 and 29 of the '683 Patent.

15   Is it your view that what Lawson is doing with its

16   modified product would give rise to a contempt

17   proceeding on which you would contend that they have

18   been violating the injunction, period?

19      MR. ROBERTSON:  Let me answer that question,

20   Your Honor.  I'm sorry if I have been obtuse.

21      The answer is it doesn't implicate the two

22   configurations that are already infringing under claim

23   26, which was affirmed as infringed, not invalid.

24      THE COURT:  Yes, I know that one.  That one I

25   understand.  But am I going to have a contempt claim

1    for this one?  The theory would be, I guess, they

2    accuse the new modified product would infringe the

3    injunction between the time it was issued and the time

4    the Federal Circuit issued its opinion holding that

5    those claims were invalid.  And then if the Federal

6    Circuit takes your view of things, then that claim

7    would be reactivated and back in the picture, but as

8    it stands now, there could be no contempt for

9    violating the injunction on what's before the Federal

10   Circuit because the Federal Circuit held that claim

11   was invalid.  And I guess all I want you to do is tell

12   me do you think their accused product would have

13   infringed, the modified product, the claims that are

14   at issue in the Federal Circuit's petition that it's

15   got in front of it; yes or no?

16            MR. ROBERTSON:  Yes.  First of all, Your

17   Honor, we can't get double recovery on damages.  All

18   they need to do is infringe one valid claim and that's

19   what we have.  And so even if we had to revisit it, it

20   would be in summary fashion, which I don't even think

21   we would need to do, and so we would want to proceed

22   with enjoining the two configurations that are subject

23   to the affirmed invalid and infringed claim, and you

24   would be done, and this would be the way to finally

25   achieve hopefully some closure to this long, pending

1   case on your docket.

2           THE COURT:  All right.  I understand.

3           All right, Mr. Thomasch, what's your

4   position?  I guess what he's saying, Mr. Thomasch, is

5   that he wants to go forward with the contempt

6   proceeding on the two claims as to which the circuit

7   affirmed.

8           MR. THOMASCH:  It's one claim, Your Honor,

9   claim 26 of the '683 Patent, which was found to be

10  infringed.

11          THE COURT:  Yes, it's two configurations.

12          MR. THOMASCH:  And I think the simple

13  question is:  If at the contempt proceeding, as we

14  believe there will be a finding of no contempt, at

15  that point are we, in fact, done if the Federal

16  Circuit ultimately grants the petition for

17  reconsideration and rules in ePlus's favor or will

18  ePlus at that point seek to come back for a further

19  contempt proceeding with respect to Configuration

20  No. 2 or with respect to the non-infringed claims of

21  Configuration No. 1?  If they want to come back for a

22  second bite at the apple, then I don't understand

23  going forward now.

24          Right now we're dealing with Configuration 3

25  and 5, which represent about 1/20th of the total

1  number of customers that were originally in the case.

2  Configuration 2 was a much bigger configuration.  And

3  I would expect that if they were to prevail with

4  regard to that configuration, they would want to come

5  back and try a contempt proceeding.  But if they are

6  foreclosing that, that's a different situation, Your

7  Honor.  But I think the real question is:  If we win,

8  as I expect we will, on claim 26 at a contempt

9  proceeding, does that end it or do they then want to

10  come back in the event they win in the Federal

11  Circuit?

12          THE COURT:  And the answer to that,

13  Mr. Robertson, is?  Choose a three-letter word or a

14  two-letter word.

15          MR. ROBERTSON:  I'm sorry, sir?

16          THE COURT:  Choose a three-letter word or

17  two-letter word as your answer; i.e., yes or no.

18          MR. ROBERTSON:  I'm not sure what the

19  question is.

20          THE COURT:  The question is:  If they win,

21  are they through, or if they win, are they going to

22  face another contempt proceeding?

23          Mr. Thomasch, isn't that it?

24          MR. THOMASCH:  Yes, in the event that the

25  contempt proceeding occurs and thereafter the Federal

1  Circuit rules in Mr. Robertson's client's favor.

2          THE COURT:  Right.  Yes or no?

3          MR. ROBERTSON:  We're going to win in the

4  contempt proceeding because --

5          THE COURT:  Wait a minute.  We have a failure

6  to communicate.  I haven't heard "yes" or "no" yet.

7          MR. ROBERTSON:  Sorry, Your Honor.  I don't

8  know whether it's yes or no because I'm not quite sure

9  of what the question is.  Please tell me one more

10  time.

11          THE COURT:  Assuming the Federal Circuit

12  rules for you on your petition for rehearing and

13  assuming that on the extant contempt claims Lawson

14  prevails, will we be through?

15          MR. ROBERTSON:  If I win on the appeal and I

16  lose on contempt, will we be through?  I suppose the

17  answer is yes, Your Honor.

18          THE COURT:  So you are not then going to come

19  back and try to have a contempt hearing on the newly

20  resurrected claims on which you will have prevailed in

21  the Federal Circuit on your petition for rehearing; is

22  that right?

23          MR. ROBERTSON:  But I would like my

24  injunction that the Court granted enforced because if

25  I prevail in the appeal court, that would mean your

1  original injunction was proper and appropriate and --

2          THE COURT:  Yes, I understand that, but

3  there's a period of time between the issuance of the

4  injunction, the reversal on appeal, in which they were

5  conceptually, if you have prevailed on your petition

6  for rehearing, were violating the injunction by

7  selling the product that contained the affirmed

8  features or the features which went your way on

9  appeal.

10          So he's concerned, I think Mr. Thomasch is

11  concerned, whether or not he's going to face a

12  contempt hearing for sales as to Configuration 2, is

13  it, Mr. Thomasch?

14          MR. THOMASCH:  Yes, Your Honor.

15          THE COURT:  In that period of time.  Isn't

16  that what you're concerned about, Mr. Thomasch?

17          MR. THOMASCH:  My concern is whether I face a

18  contempt proceeding on sales of Configuration 2 at any

19  point in time, Your Honor, because there will not be a

20  discussion of that at a contempt hearing that occurs

21  now.

22          THE COURT:  Yes.

23          MR. ROBERTSON:  So let me stipulate, Your

24  Honor, right now we think they have been infringing

25  and continue to be in violation of Your Honor's order

1   on Configurations 3 and 5 since May of 2011, 20

2   months.  So we want to move forward on that and

3   enforce Your Honor's order and seek the contempt

4   damages on that.

5          And with regard to Configuration 2, until and

6   unless the Federal Circuit rules and grants my

7   petition for rehearing with regard to that, we will

8   waive any damages.

9          THE COURT:  Okay.  That solves your problem

10  on that point, doesn't it, Mr. Thomasch?

11         MR. THOMASCH:  Not, not at all, Your Honor.

12  He just said "until and unless" he waives any damages.

13  He can't waive damages.  Right now the Federal Circuit

14  has found that the only claim that Configuration 2

15  infringes, claim 1 of the '172 Patent, is invalid.  If

16  it turns out that on reconsideration the Court were to

17  reverse itself, I don't expect it, but if that were to

18  happen, then Mr. Robertson has just said unless and

19  until when that happens, he wants to come back and

20  then have a contempt hearing about Configuration 2.

21  He wants serial bites at the apple.

22         MR. ROBERTSON:  No, no, that's not what I

23  said.

24         THE COURT:  He really didn't say that, Mr.

25  Thomasch.  And I didn't take it to mean --

1          MR. THOMASCH:  Your Honor, with all due

2    respect, he has not answered the question yes or no,

3    which is if we win the contempt proceeding on claim

4    26, does that under all circumstances end contempt or

5    does he reserve a right under some set of

6    circumstances to come back for an additional contempt

7    proceeding.

8          MR. ROBERTSON:  Look, if the Court rules that

9    we do not prevail on contempt, of course, we, like all

10   the parties, have the right of appeal.  But the point

11   is, the Judge asked me, you know, would I waive

12   damages with regard to claim 1 of the '172 during the

13   interim period --

14         THE COURT:  As to Configuration 2.

15         MR. ROBERTSON:  -- and I said I would.

16         THE COURT:  All right.  As to Configuration

17   2.

18         All right.  Here we go.

19         MR. THOMASCH:  This is Mr. Thomasch.  May I

20   add one more thought?  The issue still comes we have

21   not dealt with the question of from May 23, 2011,

22   until today.  That situation, right now that is not at

23   issue if we have a contempt hearing in March of this

24   year, that is not going to be at issue.  But if the

25   Federal Circuit were to reverse itself and say that

1   claim 1 of the '172 Patent is infringed, I don't

2   understand that Mr. Robertson has waived his right to

3   seek damages under a contempt theory during that time

4   period.  If he has, I've simply misunderstood.  But I

5   think he's been very clear to be talking about waiving

6   damages during a little sliver of time.  I'm concerned

7   about going back to May of 2011.

8           If he is reserving the right for a second

9   contempt hearing about that time period, then Your

10  Honor should at least be aware of that fact.  I think

11  that that means we should not have serial contempt

12  hearings.

13          MR. ROBERTSON:  Judge, I'm sorry if I have

14  not made myself clear to Mr. Thomasch, but I hope I've

15  made myself clear to you with respect to claim One of

16  the '172 Patent.

17          THE COURT:  As to the Configuration 2.

18          MR. ROBERTSON:  Yes, sir.  But we are seeking

19  enforcement of your injunction at the earliest

20  opportunity with respect to Configurations 3 and 5.

21  It's been 20 months and we don't want to wait any

22  longer.  We're prepared to discuss dates with you,

23  Your Honor, and, obviously, we understand you're very

24  busy.  But we have contacted our experts and we are

25  prepared to move forward on contempt because the Court

1   clearly has jurisdiction and authority to enforce its

2   injunction.

3          THE COURT:  All right.  Now, I think I

4   understand where we are, but, in any event, I'm going

5   to leave to the law since you two can't seem to listen

6   to what each other are saying and really address it

7   directly.  Each of you want to try to get in some

8   other point rather than just addressing a simple

9   point.  And so I'm going to leave to the future and to

10  the law the question whether ePlus could claim or

11  proceed on contempt for a violation of the injunction

12  from the date it was issued until the date the Federal

13  Circuit decided its case, issued its first opinion

14  invalidating that which is referred to as

15  Configuration 2.  I'll just leave that for the future.

16         I have jurisdiction over contempt proceedings

17  as to Configurations 3 and 5, and I'm going to

18  schedule those, and I'll just abide the event and see

19  what happens in the event the Federal Circuit goes the

20  other way.

21         Now, I do have this question:  Has the

22  Federal Circuit called upon Lawson, Mr. Thomasch, to

23  submit a response to the petition for rehearing in a

24  particular time frame?

25         MR. THOMASCH:  No, Your Honor.

1          THE COURT:  It is that Court's practice to

2     ask for responses if it wants them or are you entitled

3     to file a response as a matter of course to a petition

4     for rehearing or rehearing en banc in that circuit?

5          MR. THOMASCH:  We are not to file a response

6     until and unless we hear from the Court.  We've not

7     yet heard from the Court.

8          THE COURT:  All right.

9          MR. ROBERTSON:  Your Honor, if I might just

10    address that.  I just had a recent experience where I

11    was on Mr. Thomasch's side of the issue.  And the

12    practice of the Court almost universally is to require

13    a response.  I attended a CLE practice where one of

14    the circuit judges said that it's 90, 95 percent.

15         Now, having said that, my chances of getting

16    a petition for rehearing, I want to be candid with the

17    Court, are very slim, as you might imagine.  So I'm,

18    you know, frustrated by the fact that I thought we

19    presented overwhelming evidence with regard to the

20    claims that were not found to be infringed for the

21    cross-referencing on the UNSCSC, which I thought we

22    had done at great length, but, you know, that's an

23    appellate court.  They get a dry record and they, you

24    know, call balls and strikes.  So that's where we're

25    at.

1          I anticipate they are going to require a

2    response and that's going to involve, you know, some

3    delay, but we want to move forward on the affirmed

4    claim 26, which the Federal Circuit said was clearly

5    infringed by both Lawson and its customers.

6          THE COURT:  All right.  I understand, I

7    think, the positions of the parties on that point.

8          On the question of -- I want to use the right

9    term.  I believe the Federal Circuit said for us to

10   consider what, if any, modifications needed to be made

11   in the injunction.

12         Is it your position that the Court has

13   jurisdiction even though the mandate in the case

14   hasn't issued to accomplish that assignment as to

15   Configurations 3 and 5, Mr. Robertson, or do you agree

16   with Mr. Thomasch that that can't be done, however it

17   may be done, either the way you suggest or the way he

18   suggests, until the mandate is issued?

19         MR. ROBERTSON:  The Court absolutely has

20   jurisdiction.  The Court has had jurisdiction over

21   every motion practice and hearing and everything

22   attached since the jury rendered its verdict.

23         Mr. Thomasch cites no law whatsoever in his

24   letter, and we have cited authority in our letter,

25   excuse me, in our briefing.  I'm trying to grab it for

1   you, Your Honor, but I think it's like at page 8, 9,

2   including the *Pfizer* case, the *MPT* case.  These are

3   district courts that within days -- and *Broadcom v.*

4   *Qualcomm*, I apologize -- within days, even one day

5   after the Federal Circuit affirmed and modified an

6   injunction that they entered an order enforcing the

7   injunction as directed by the Federal Circuit.

8         I mean, respectfully, sir, I've been telling

9   my colleagues here, this is not a ping-pong match.  I

10  mean, we're not going back and forth on these things

11  all the time.  We should have an order that,

12  respectfully, we submitted that is consistent with

13  what the Federal Circuit said and carves out the one

14  configuration and, you know, we should be done.

15        THE COURT:  I think that's not really

16  Mr. Thomasch's point.  Those were cases, as I recall

17  them, in which there was no petition for rehearing

18  pending.

19        Let me ask you this question:  What is your

20  view as to whether the Court has authority to modify

21  an injunction that it's issued once that case is on

22  appeal and the injunction is before the Court on

23  appeal?  The answer is clearly that the Court doesn't

24  have the power to modify it, does it?

25        MR. ROBERTSON:  Of course it does, Your

1  Honor.  It's not modifying the injunction.  In fact,

2  if anything, it's constricting, it's restraining, it's

3  narrowing an injunction that it already issued.

4       Your Honor has an injunction with respect to

5  three configurations.  All you're doing is carving out

6  one configuration.  Obviously, you can reduce

7  something consistent with an appellate court's ruling

8  that says, "Issue an order consistent with our

9  ruling."  Respectfully, sir, that's all you need to

10  do, and, you know, not revisit the issue.

11       THE COURT:  That's not the issue of whether

12  we revisit it.  It's whether I can do what you say.

13  You're confusing apples and oranges, Mr. Robertson.

14  The question is one of authority and power.  That's

15  what Mr. Thomasch is raising.

16       Isn't it, Mr. Thomasch?

17       MR. THOMASCH:  Your Honor, I have raised both

18  issues.  But you are correct.  I do think that there

19  is a question.  I don't think the answer to it is

20  black and white, Your Honor, because I cannot find a

21  situation in the reported cases where during the

22  pendency of the appeal where the Court had indicated

23  that a modification was necessary, a modification was

24  made, even though the appeal was still ongoing through

25  this reconsideration motion.

1    I think we are in very, what I would call,

2    uncharted waters here, and I, frankly, do not agree

3    that the Court has the authority to do it, but I have

4    not found a case on it either way.  I think that there

5    are reasons I won't go into unless requested by the

6    Court that the Court should not do that even if it

7    could.

8         THE COURT:  Well, I understand that, and I

9    appreciate it because your research and my look is the

10   same, and I think that's what the briefs tell me, too.

11        MR. ROBERTSON:  I would ask Your Honor to

12   look at the *Broadcom* case because that was done within

13   a day after the decision was rendered on an

14   injunction.  I would also ask you to look at the *MPT*

15   case.

16        THE COURT:  Let me ask you, Mr. Robertson,

17   did either of those cases, and I think there are two

18   more in those pages of your briefs that you cited, do

19   any of those cases involve a pending petition for

20   rehearing at the time that the modification was made?

21   I think the answer is no.

22        MR. ROBERTSON:  I think you're right, Your

23   Honor, but let me just make this point.  That is with

24   respect to claim 26, there is no petition for

25   rehearing by Lawson.  With respect to claim 26, there

1    is no request for certiorari to the Supreme Court.

2    With respect to claim 26, it's been infringed and

3    ongoing for 20 months.

4         THE COURT:  I understand all of the points

5    that you're making, Mr. Robertson.  Here's something

6    that both of you need to learn.  We can't in resolving

7    any single question resolve all the questions that are

8    on the table at any given time.  And it is permissible

9    to answer just the question that was asked and to

10   address just the question that was asked.  And you

11   don't in doing that waive all of the other things.

12        And both of you are smart enough to know how

13   to answer something without waiving the future

14   implications of whatever your answer bodes if it's

15   worth preserving.  And I really wish you would try in

16   your papers and in your discussions to proceed that

17   way.

18        Now, Mr. Thomasch, what is it that you want

19   oral argument on as mentioned in your letter of the

20   9th of January?

21        MR. THOMASCH:  Two things, Your Honor.

22   First, we would like oral argument on whether and what

23   scope a new injunction should have.  Whether a new

24   injunction should issue and what scope it should have.

25   You asked for position statements.  We've given them.

1    We would like oral argument on that issue.

2          The second thing we would like oral argument

3    on is in the event that you reenter an injunction in

4    some modified format, what will be the context of the

5    contempt proceeding?  How will we proceed forward?

6    And that will include issues about the time period

7    that is subject to the contempt proceeding and whether

8    or not the TiVo issues that we've previously submitted

9    letters to the Court on both sides about is going to

10   be conducted before we have the hearing on contempt.

11         So we would ask for oral argument on both

12   whether and what scope of injunction and how to

13   proceed forward on contempt.

14         THE COURT:  All right.  I don't know that I

15   need argument on either one of those things at this

16   stage.  You-all have briefed them about as thoroughly

17   as you can brief them.

18         You said that you have discussed,

19   Mr. Robertson, the dates for hearings, and I'm not

20   sure whether you had discussed them with your

21   witnesses or had discussed them with Mr. Thomasch.

22   Which did you mean?

23         MR. ROBERTSON:  Well, Your Honor, I have not

24   discussed them with Mr. Thomasch, but I certainly

25   will.  We just got your order a few days ago and we

1    called our experts and checked their availability.

2          THE COURT:  The only order you should have

3    gotten was one asking you to submit a sketch order,

4    which is fairly common in this district.  If you're

5    asking for something, usually a sketch order is

6    tendered.

7          Is there any other order that I issued that I

8    didn't realize I issued?

9          MR. ROBERTSON:  I think you issued an order

10   saying what should be consistent with the Federal

11   Circuit's decision and when can we -- I don't have it

12   in front of me right now, Your Honor, but what I

13   realized was I needed to contact my experts so I can

14   be responsive to any kind of schedule that you might

15   set.  So --

16         THE COURT:  Excuse me, though.  What order

17   are you talking about, Mr. Robertson, that's been

18   issued?  That order requiring statement of positions

19   was a couple months ago.  I issued an order earlier in

20   the week, I think it was, or the end of last week,

21   asking ePlus to submit a sketch order for the form of

22   the revised injunction that it proposed and said in

23   accord with your papers in the statements of position.

24         Is there any other order that you're talking

25   about other than that one because if there is, I don't

1   know it?

2           MR. ROBERTSON:  No, sir.  That's the order

3   I'm talking about.

4           THE COURT:  All right.

5           MR. ROBERTSON:  I apologize.  I was reading

6   between the lines.  I was thinking that we were going

7   to proceed with the contempt proceedings.

8           THE COURT:  Well, we might.  I don't know.

9   But what I was doing was asking you to do what usually

10  is done here, and that is let me see the form of the

11  order you propose, which is a fairly consistent

12  practice in this court, I think, for injunctions, and

13  that's all I was doing at the time.

14          MR. ROBERTSON:  I understand, sir.

15          THE COURT:  I'm sorry if I elevated your

16  heart rate.

17          MR. MERRITT:  This is Craig Merritt.  Could I

18  mention something in connection with your

19  jurisdictional question from a few moments ago?

20          THE COURT:  Sure.  I always want to know

21  about jurisdiction.

22          MR. MERRITT:  It's obviously important, and

23  in thinking about it, it seems that one question that

24  needs to be answered is this:  When the Court entered

25  its order in May of 2011, its injunction order, it

1   certainly retained jurisdiction going forward to

2   enforce that order.

3        Efforts were made, as I recall, by Lawson,

4   both in the District Court and the Federal Circuit to

5   stay the enforcement of the order, which were rejected

6   by the District Court and the Federal Circuit.

7        That being the case, I would be curious to

8   know the answer to the question:  When did the Court

9   lose jurisdiction?

10       THE COURT:  Upon the filing of a notice of

11  appeal, I would suppose.  But you always retain the

12  power -- the jurisdiction to exercise contempt because

13  that is an independent question, to exercise the power

14  of contempt.

15       MR. MERRITT:  I think that's the relevant

16  question.  We seem to be assuming that the Court lost

17  jurisdiction at some point and I'm trying to discern

18  when that happened.

19       THE COURT:  Well, I don't think there was

20  ever any loss of jurisdiction over the question of

21  contempt.  That's an inherent question.  The question

22  is:

23       (A)  Was the issuance vel non of the

24  injunction an issue on appeal?  And if so, while that

25  is pending does the Court have the authority to modify

1   the injunction at all until the appellate court

2   decides the issue?

3          MR. MERRITT:  Understood.  I guess the reason

4   I raised the question was to be sure that we tease

5   apart questions of fundamental jurisdiction from other

6   jurisprudential matters that don't actually go to the

7   Court's power over its injunction.

8          MR. ROBERTSON:  Your Honor raised a good

9   point with respect to the appeal.  I mean, the scope

10  of the appeal on the injunction was not as to any of

11  the four factors under the *eBay* test.  It was only

12  under the scope as to the argument that Lawson

13  couldn't maintain or support or, you know, enhance the

14  existing software.  And that was expressly rejected.

15         So, Judge, one of the things we try to

16  emphasize is *res judicata*.  We've got an appellate

17  verdict now on claim 26 that is supported on

18  Configurations 3 and 5 of your injunction.  And it's

19  not then a petition for rehearing certainly by Lawson.

20         So we would like to enforce that at long

21  last, Your Honor.

22         THE COURT:  I understand.  All right.  I will

23  issue an order shortly.  I just needed to sort a

24  couple of things through with you.

25         MR. THOMASCH:  Your Honor, it's Mr. Thomasch.

1  May I ask one question?

2           THE COURT:  Yes.

3           MR. THOMASCH:  And that is whether Your Honor

4  is going to set forth some procedure that would lead

5  up to a contempt hearing.  And we have not taken the

6  position that you lost authority for a contempt

7  hearing at all.  We've never taken that position.  But

8  if there is going to be a contempt proceeding, for

9  instance, Your Honor, the damages are completely

10  different now that we're talking about only a small

11  fraction of the customers who possess the

12  configuration that's been found to infringe compared

13  to what was the case earlier.  And we would anticipate

14  that ePlus would be putting in a new damages report.

15  We would want to have time to study that and to

16  respond accordingly.

17           We do not believe that the liability

18  witnesses should be able to put in new statements

19  because the issue of the colorability of the change

20  and the infringement, those issues were previously

21  dealt with by the parties.

22           We do think that there are some witnesses

23  that are no longer necessary to the case because they

24  were going to deal with issues that relate to the '172

25  Patent, which is no longer in play.

1    We don't believe that claims 28 and 29 are in
2    play because they were found to be not infringed, but
3    we would like to know, for instance, resubmitting
4    exhibit lists so that exhibits both are pared down to
5    get rid of those that related to the patent that is
6    now invalid or the claims that are now infringed, but
7    to add any exhibits that might have come out of the
8    privilege documents that were produced pursuant to
9    order of the Court after our original document exhibit
10   lists were compiled.
11       So we do think that there are some timing and
12   procedural issues that we would ask the Court to
13   address in any scheduling order that might issue.
14       MR. ROBERTSON:  Your Honor, this is Mr.
15   Robertson.  And you might find this very surprising,
16   but I am somewhat in agreement with Mr. Thomasch.  We,
17   obviously, need to address the damages issue.  I don't
18   think they are miniscule compared to what we were
19   talking about before, but we'll leave that aside and
20   try and be positive.
21       THE COURT:  You think they are miniscule?  Is
22   that what you said?
23       MR. ROBERTSON:  That's what he said.  I
24   disagree with what he said.  They are substantive and
25   significant and the Court has significant authority

1  once it finds contempt to either multiply and add

2  attorneys' fees, as we've already briefed.

3  But having said that, we do need to look at

4  the new exhibits that may be necessary given the fact

5  that the Court ordered that 3,000 privileged documents

6  be produced.  We had a discussion this morning.  We're

7  going to try to narrow this as much as possible.  But

8  this is a much more focused hearing now than we were

9  concerned about before because we're only going to

10  focus on the two configurations, and we're going to

11  put together our narrowed exhibit list and narrowed

12  witness list.

13  And so what I should do is not waste the

14  Court's time, but get off line with Mr. Thomasch and

15  see if we can work out who we think are now necessary

16  witnesses and how long this hearing can take.

17  THE COURT:  When do you propose to have this

18  hearing on contempt?

19  MR. ROBERTSON:  When do I propose, Your

20  Honor?

21  THE COURT:  Yes.

22  MR. ROBERTSON:  The week of February 18 would

23  be ideal, but I don't know what the Court's docket is.

24  MR. THOMASCH:  Your Honor, that would

25  certainly not be ideal for Lawson based on trial

1    schedules of counsel.  We also do not believe it would

2    leave time to do the necessary work, particularly with

3    regard to understanding the damages, and there are

4    many moving parts at the moment, Your Honor.

5         We would also, Your Honor, Mr. Thomasch

6    speaking on behalf of Lawson, we would also ask that

7    the Court schedule a hearing with regard or a

8    procedure with regard to the TiVo allegations, what

9    was contended and proved.  And I think that it could

10   not be more clear that that is necessary than the

11   claim that appeared in ePlus's papers that they may

12   seek a contempt hearing on claims 28 and 29 of the

13   '683 Patent, which were found to be not infringed by

14   the Federal Circuit.

15        So, I frankly do believe we have a

16   fundamental right to know what the contempt proceeding

17   is going to be.  The Court clearly has the power to

18   have a contempt proceeding, but we would like to know

19   what it is.  And we would like to have sufficient time

20   to prepare for the new hearing and one that doesn't

21   conflict with an existing trial schedule.

22        MR. ROBERTSON:  Respectfully, Your Honor, the

23   Federal Circuit told Lawson what was infringed, and

24   what the jury found, and the substantial evidence that

25   was there.  They said it was clear that Lawson and its

1   customers are infringing.  I don't know why we have to

2   agonize over all this.

3           So, I mean, it's clear to me that Lawson

4   wants to do whatever it can to delay enforcement of an

5   order this Court's entered enjoining them 20 months

6   ago.  And every step they have taken, that's what they

7   have done.

8           So, Your Honor, we are available at your

9   convenience.

10          MR. THOMASCH:  Your Honor, Mr. Thomasch.

11          THE COURT:  Yes, I'm sorry.  I'm looking at

12  my book.  What did you say, Mr. Thomasch?

13          MR. THOMASCH:  Your Honor, two things.  One,

14  we would ask that before there is a contempt

15  proceeding, the Court enter the modified injunction.

16  You understand, obviously, we have objections to your

17  doing so without a further hearing, and we don't know

18  what findings you will make in connection therewith,

19  but that's a separate issue.

20          If Your Honor has decided to go forward and

21  enter a revised injunction, we would ask certainly

22  that that happen before the hearing on contempt.  We

23  would like to schedule the necessary preliminaries for

24  that, and then we would like to have a date sometime

25  on or after the 18th of March.  We do not seek delay

 1    for the sake of delay, Your Honor, at all.

 2         Indeed, the delays that have come out of

 3    this, the current delay, frankly, is because ePlus,

 4    not Lawson, made a motion for reconsideration in the

 5    Federal Circuit.  We did not move to reconsider it.

 6         We think we're in good shape where we're at,

 7    and we're prepared to move forward, but there are a

 8    lot of rights at issue.  There are very significant

 9    issues to be briefed, argued, and evidence to be

10    presented, and we would like it done in a normal,

11    orderly fashion.

12         Ultimately, it doesn't matter when the

13    hearing takes place.  If Mr. Robertson is right,

14    damages will be assessed for the entire time period

15    prior to the judgment and he will be made whole.  I

16    don't think he is right and I don't think that day

17    will come.

18         MR. ROBERTSON:  Your Honor, let me just tell

19    you, a couple of things Mr. Thomasch just said are

20    landmines that he wants you to step on.  And that is

21    modified injunction, revised injunction, because I

22    guarantee you he's already signaled it to you in his

23    letter that they will now file for a new appeal, and

24    that will be what he wants to do to delay.

25         And so it's not a modified injunction.  It's

1    simply an injunction consistent with what the Federal

2    Circuit's decision of the scope of the injunction is.

3    That is his trap.

4         MR. THOMASCH:  Your Honor, I really do try

5    not to rise to the bait.

6         MR. ROBERTSON:  Well, tell the Judge you're

7    not going to appeal.

8         THE COURT:  Hey, hey, Mr. Robertson.  You

9    know, I fell off the turnip truck, but it wasn't

10   yesterday.  Come on.  I think I understand what the

11   implications of various and sundry procedural steps

12   are.  I don't need to be dealing with that right now.

13        MR. ROBERTSON:  I apologize, Your Honor.  I

14   apologize.

15        THE COURT:  All right.

16        MR. THOMASCH:  Your Honor, it's Mr. Thomasch.

17   And I will answer your question completely and

18   straightforwardly.

19        The Court said that you are to consider what

20   changes are required to the terms of the injunction.

21   Your Honor has the authority and the discretion to

22   enter a modified injunction.  We object to your doing

23   so, and we don't believe that the four-factor test is

24   met, but you have the power to proceed, and it is

25   subject to an appeal under 1292(a)(1).  We have not

1    hidden that.

2         And if Your Honor goes forward and enters an

3    injunction without a hearing on the injunction and

4    without reassessing whether the four factors remain

5    valid in light of the limitation of this case to claim

6    26, then I fully expect that we will take an appeal of

7    that order.  But that's our prerogative to do so.

8    It's not meant to delay anything.

9         Injunctions are very serious business.  And

10   Rule 65 has requirements for what must be an

11   injunction.  And for ePlus to argue that this is not a

12   modified injunction is simply wrong.  The Court has

13   eliminated the system claims that were the fundamental

14   predicate for the injunction, and if an injunction is

15   to be reentered, it is a modified injunction, and,

16   frankly, 1292(a)(1) gives the Federal Circuit

17   jurisdiction over any granting, continuing, modifying,

18   refusing, or dissolving, or refusing to dissolve an

19   injunction.

20        So it doesn't matter what it's called.  The

21   circumstances have changed dramatically by virtue of

22   the system claims having been eliminated.  We believe

23   that the system claims were the predicate for the

24   evidence at the hearing in April of 2011.  They are

25   what the Court points to in the decision of May 23,

1   2011.  And if there is no new findings that an

2   injunction is warranted with regard to claim 26

3   standing alone, then I do anticipate an appeal.

4            It is not a trap.  It is not a threat.  It is

5   nothing other than counsel speaking to the Court

6   candidly about how we see the case and why we think

7   that we have certain rights that if we are not given

8   them in the District Court, we will take an appeal.

9   That's the process.

10           In the meantime, we will appear on the date

11  you set, and we will defend a contempt hearing, and we

12  will expect to win that contempt hearing.  The issue

13  of the injunction will continue regardless of the

14  outcome of the contempt hearing, but it is not a trap.

15  I just want to make that clear.

16           THE COURT:  Okay.  Let's see.  I guess the

17  issue now is now that the course in equity procedure

18  and civil procedure has been concluded, how is the

19  student going to perform?  Will he get an A, or a D,

20  or an F?  So that's in my court to deal with now, and

21  I appreciate it.

22           What do you-all look like on April 1 for the

23  date of the contempt hearing?  And if I decide that I

24  need to at the same time deal with the injunction, I'd

25  like to do it all at one time, if I need to deal

1    further with the injunction in the way that Mr.

2    Thomasch says or proceed as Mr. Robertson says.

3            MR. THOMASCH:  Your Honor, while early April

4    works well, I would ask possibly that consideration to

5    move to the 2nd for witnesses to the extent that any

6    of the witnesses are celebrating Easter, which is on

7    the Sunday before Monday, April 1.  It might be

8    somewhat difficult to get them to leave their

9    families, come and sit down with lawyers.  Lawyers are

10   used to being out of town at any time, but sometimes

11   the witnesses are a little balky.

12           THE COURT:  Well, there are subpoenas that

13   eliminate that problem, Mr. Thomasch.

14           MR. THOMASCH:  That's true, Your Honor.  I

15   just wanted to let the Court know.

16           THE COURT:  I know it's Easter Sunday.  I

17   don't want to work on Easter Sunday either, but I have

18   other matters to deal with and to schedule around.

19           MR. ROBERTSON:  Your Honor --

20           THE COURT:  How do you look on March the

21   25th, gentlemen?  That looks like the best date I

22   have.

23           MR. ROBERTSON:  I hate to tell you this, Your

24   Honor, but -- Mr. Robertson.  I have four kids, and my

25   wife just booked a spring vacation for their spring

1   vacation, and that week is really bad for me.

2          THE COURT:  Do you know where the nicest

3   place to spend a spring vacation is, Mr. Robertson?

4          MR. ROBERTSON:  In Richmond, Virginia?

5          THE COURT:  It's where Lincoln was filmed.

6   Williamsburg is close by.  Jamestown is close by.

7   We're two hours from the ocean, and two hours from

8   Washington, and two hours from the mountains, and it's

9   for lovers.  So come on.

10          MR. ROBERTSON:  I've done it a lot, Your

11   Honor.  Williamsburg, too.  But it's nonrefundable

12   where I am right now.

13          THE COURT:  Mr. Robertson, let me tell you

14   something.  There are a lot of things that I pay

15   attention to, but nonrefundable tickets by lawyers

16   that make the amount of money you-all make is not one

17   of them.

18          MR. ROBERTSON:  All right, sir.

19          THE COURT:  I know you affect the old boy

20   image because you're driving a truck, but enough's

21   enough.

22          MR. ROBERTSON:  I'm not sure I agree with Mr.

23   Thomasch on the 2nd.  That doesn't give me much time

24   to get back and get prepared.

25          THE COURT:  How about the 18th?  It may be

1    better to do it the week of the 18th.

2              MR. ROBERTSON:  Of April?

3              THE COURT:  No, of March.  March 18.

4              MR. ROBERTSON:  I will check with my experts.

5              Ms. Albert, you're on the phone.

6              THE COURT:  How many experts do you have?

7              MR. ROBERTSON:  Two plus the damages.

8              THE COURT:  All right.  You pay them and tell

9    them to be here.  Unless they're going into the

10   hospital or have a prior court commitment, they get

11   here or get yourself another expert.

12             MR. ROBERTSON:  Understood.

13             THE COURT:  How about the 18th?

14             MR. THOMASCH:  Your Honor, we could do

15   March 18 and we would have a preference for April 1.

16             MR. DUSSEAULT:  Your Honor, this is Chris

17   Dusseault.  If I could just factor one thing in that

18   is personal to me.  I have a case I've been working on

19   for about 3 1/2 years.  It's being argued in the

20   United States Supreme Court on the 26th of March.  So

21   given the time that will be going into that, the 2nd

22   or the 1st of April will be much better for me, but,

23   obviously, I will live with whatever the Court needs

24   to do.

25             THE COURT:  All right.

1           Are there any other dates that you all need
2    to check with your experts?
3           MR. THOMASCH:  We have not checked with ours,
4    Your Honor.
5           MR. ROBERTSON:  We could email you later this
6    afternoon, Your Honor.
7           THE COURT:  What?
8           MR. ROBERTSON:  We could give you some
9    guidance and email you later this afternoon, but if
10   you're into March, we think we're okay.
11          THE COURT:  I can also make some changes and
12   do February the 25th, that week, or during that week.
13          MR. THOMASCH:  That is much less convenient
14   for us, Your Honor.  This is Mr. Thomasch for Lawson
15   for the court reporter's benefit.
16          MR. ROBERTSON:  Well, for ePlus this is
17   Mr. Robertson, that would be more desirable, but, you
18   know, we are subject to the Court's pleasure.
19          THE COURT:  I can assure you this:  There
20   isn't any pleasure that's taken in any of this other
21   than the pure intellectual challenge and the joy of
22   dealing with you-all.
23          All right.  So what I want you to look at, I
24   want you to look at, for your experts, at the weeks of
25   March the 11th, March the 18th, February 25th, and

1  April the 2nd, and I'm going to see if I can get rid

2  of a case on March the 11th.  One of my colleagues

3  said he wasn't busy and needs some work and I'll be

4  glad to lateral this particular case to him.  Then we

5  can do it.

6         So you-all check with your experts.  I am

7  sympathetic with people's spring vacations.  I am

8  sympathetic with all the things that have been raised,

9  but this has been going on a tremendously long time.

10  So check with your experts, check with your witnesses,

11  and give me your dates in preferred order.  That would

12  be February 25, March 11, March 18, April 2.

13         MR. THOMASCH:  We will do so, Your Honor.

14         THE COURT:  All right.  Then let me know that

15  on Monday, will you, please?

16         MR. THOMASCH:  Yes, sir.

17         THE COURT:  All right.  And then we'll --

18         MR. ROBERTSON:  Thank you.

19         THE COURT:  We'll then proceed from there to

20  shape some of the other things that need to be shaped.

21         I've heard, I think, what you have to say.

22  I've read everything you have to say.  And I just have

23  a couple of things I need to sort out now.

24         I may ask you to come on notice to orally

25  argue these two points that you say you want to argue.

43

1  I don't think it's needed, Mr. Thomasch, but I don't

2  see that taking more than an hour or so.  Do you?  Two

3  hours?

4          MR. THOMASCH:  I think two hours will be

5  fine, Your Honor.  We did attempt to stay responsive

6  to your position statement request, so we did not

7  argue at length whether or not the four-factor test

8  would be satisfied by the evidence in the record.

9  And, obviously, that's an issue we would wish to

10  address with the Court.

11          THE COURT:  I understand, I think, the

12  implications of what your points are.

13          All right.  Thank you very much.  You-all

14  have a nice weekend.

15          MR. THOMASCH:  Thank you.

16          THE COURT:  Bye.

17

18          (The proceedings were adjourned at 12:07 PM.)

19

20          I, Diane J. Daffron, certify that the

21  foregoing is a correct transcript from the record of

22  proceedings in the above-entitled matter.

23

24                  /s/
   _____    _____
25      DIANE J. DAFFRON, RPR, CCR        DATE