

```
Michael Strapp              Goodwin Procter LLP
617.570.1658                Counselors at Law
mstrapp@                    Exchange Place
goodwinprocter.com          Boston, MA 02109
                            T: 617.570.1000
                            F: 617.523.1231
```

March 7, 2013

**Via Hand Delivery**

The Honorable Robert E. Payne, United States District Judge
United States District Court
  for the Eastern District of Virginia, Richmond Division
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

**Re:**   *ePlus, Inc. v. Lawson Software, Inc.*
          **Civil Action No. 3:09cv620 (REP)**

Dear Judge Payne:

I write on behalf of *e*Plus in advance of the teleconference scheduled for this afternoon to address the upcoming contempt hearing. Under cover of a separate letter, *e*Plus has submitted a joint proposed pre-hearing scheduling order. In addition to the pre-hearing schedule, there are two other matters on which *e*Plus will seek the Court's guidance during the call.

***First***, *e*Plus does not know whether Dean Hager, Lawson's former Executive Vice President, will appear live at the contempt hearing. Mr. Hager stated during his January 2012 deposition that he would he would make himself available for the hearing. Ex. 1 (Hager Dep. Tr. at 13-14). Mr. Hager was represented by Gibson, Dunn at that deposition, but has recently engaged his own counsel, Mr. Charles "Rick" Witthoefft. We have endeavored over the past several weeks to determine whether Mr. Hager will appear, without success.

The Court will recall that Mr. Hager appeared at the March 25, 2011 injunction hearing as Lawson's sole witness, describing a cataclysmic outcome for Lawson customers, with emphasis on harm to health care, should an injunction be entered. Ex. 2 (Inj. Tr. at 242-243). The Court subsequently directed ePlus to inquire into that testimony as part of the contempt proceeding, and ordered Lawson's cooperation in that endeavor. The Court informed Lawson that if Mr. Hager and Lawson's counsel "were telling me how hard it was and the hardship it was going to be on all customers and everything, all of the customer base and what a tragedy it was going to be for the medical industry, and they were working on something that was 20 minutes and easy to do and they didn't disclose that, then I was misled, and I don't think the record in the trial is right, and I'm frustrated about what I'm seeing." Ex. 3 (9/15/11 Hrg. Tr. at 11). Accordingly, the Court indicated that it was interested in hearing from Mr. Hager during these proceedings. The Court

The Honorable Robert E. Payne
March 7, 2013
Page 2

explained that Mr. Hager's testimony would be relevant to "the remedy that [ePlus is] entitled," the "interest that the Court has in enforcing its injunction," and "what the Court thinks is an appropriate sanction as to your client's conduct." Ex. 4 (11/8/11 Hrg. Tr. at 55).

We are aware of the Court's stated desire to hear *ore tenus* testimony at the contempt hearing. *e*Plus shares that desire, but cannot compel Mr. Hager's attendance. Thus, we wish to confirm whether there is any acceptable alternative for presenting evidence if Mr. Hager refuses to appear. We raise this now to avoid a last-minute surprise to the Court and to give *e*Plus counsel time to prepare excerpts from Mr Hager's prior sworn testimony for submission if necessary.

***Second***, the parties have discussed the scope of the upcoming contempt hearing, and have a disagreement. Lawson has advised that it intends to object to evidence regarding Lawson's ongoing service and maintenance of its customers' infringing systems and its instructions to its customers about how to continue using the infringing systems in violation of the injunction. It is *e*Plus's position that this evidence falls squarely within Section A of the Court's January 24, 2013 Order, in which the Court explained that "the hearing will be directed to whether Lawson was, at any time after May 23, 2011, in violation of the Order of injunction entered on May 23, 2011." Dkt. 1002 at 1.

The context for this dispute is important. Lawson released RQC on May 18, 2011, as a download available on its website. Lawson has acknowledged that a customer's download of RQC did not mean that the customer had actually implemented and installed RQC or uninstalled RSS. As one Lawson employee remarked, even after a Lawson customer downloads RQC, "[w]e have no knowledge of if they are running it or not so we will support them again." Ex. 5 (RQC369859-860, Hanson Dep. Ex. 12). Thus, even though Lawson's customers could continue using the infringing systems with RSS even after completing the download of RQC, Lawson immediately began servicing and maintaining the Core Procurement, Punchout and EDI modules of the adjudicated infringing system configurations as soon as its customers had downloaded RQC.

Five days after Lawson released RQC, the Court entered an injunction that extended "to the provision of any instruction, encouragement, installation, implementation, maintenance or support for any of the Infringing Products and Services." Dkt. 729 at 3. The explicit terms of the injunction worried Lawson; how could Lawson be in compliance if it offered a free download of RQC, but permitted (and even encouraged) its customers to continue using RSS? Lawson's Vice President of Healthcare Strategy wrote one month after the injunction that, "***what is troubling to me is that no one is doing the important part: getting people to switch. It's no use that they put the vitamins in their basket (they were free after all), they have to be digested***." Ex. 6 (RQC764098, Homewood Dep. Ex. 11).

Lawson's violation of the injunction was not limited to service and maintenance of its customers' systems who had downloaded RQC, but not uninstalled RSS. ***Lawson also actively encouraged and instructed its customers to continue utilizing the infringing***

The Honorable Robert E. Payne
March 7, 2013
Page 3

*systems with RSS even after downloading RQC*. Ex. 7 (RQC907446-460, Hager Dep. Ex. 18) ("RSS and RQC can run together. What you need to do: 1. Rename the bookmark file for RQSS before you install RQC. Have certain users pointing to RQSS, and take new bookmarks and give to other users who you want to have access to RQC."). In fact, Lawson even advised its customers *not to uninstall the infringing systems with RSS*. Ex. 8 (RQC19874-77, Hanson Dep. Ex. 18) ("*do not un-install RSS first. RQC can be installed in addition to RSS*.").

Evidence of Lawson's ongoing violation of the injunction is relevant to several issues at the upcoming contempt hearing. For one, if Lawson has been servicing and maintaining the adjudicated infringing systems of its customers, and instructing and encouraging its customers to use those systems, Lawson is in plain violation of the injunction. Additionally, Lawson's ongoing infringement with respect to the original infringing systems is evidence of willfulness and is a factor the Court should consider in deciding whether to award *e*Plus enhanced damages.

Lawson's argument regarding the scope of the contempt hearing appears to be based on a cramped interpretation of the Court's January 24, 2013 Order. That Order specifies the sequence of proof offerings with respect to the two-part *TiVo* test regarding (a) whether the modification made to the infringing systems was no more than colorable and (b) whether the newly accused systems actually infringe. Dkt. 1002 at 2. The Order does not state that the evidence to be taken at the hearing is limited to the "colorably different" and "infringement" issues. Indeed, under Lawson's view of the Order, *e*Plus would not even be permitted to introduce evidence regarding the remedies it should be awarded if Lawson is found in contempt.

The Court's January 24, 2013 Order indicates that any evidence that is relevant to the issue of whether Lawson "was, at any time . . . in violation of the Order of injunction" is admissible at the hearing. *Id.* at 1. Evidence concerning Lawson's provision of maintenance, support, instruction and encouragement of its customers' use of the original adjudicated infringing systems is not precluded by the Court's Order. Resolution of this dispute over the proper scope of the hearing will avoid unnecessary contention and waste of time at the hearing.

Respectfully submitted,

Michael Strapp


cc:     Counsel of Record