IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 3:09-CV-620 (REP) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAWSON SOFTWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF *e*PLUS INC.'S BRIEF IN OPPOSITION TO
MOTION TO DISSOLVE OR MODIFY INJUNCTION**

Craig T. Merritt (VSB #20281)
Paul W. Jacobs, II (VSB #16815)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000

*Attorneys for Plaintiff, ePlus Inc.*

# TABLE OF CONTENTS

Page

I.     INTRODUCTION.................................................................................................1

II.    ARGUMENT......................................................................................................3

    A.   The Federal Circuit Affirmed This Court's Injunction And The Mandate
Does Not Permit Reconsideration Of Whether Lawson Should Be
Enjoined ....................................................................................................4

    B.   This Court's Injunction Order Was Not Premised Solely Or Even
Primarily On Configuration 2 Or Infringement Of The System Claims ................8

    C.   The Court Has Already Determined That The Four-Factor Test For An
Injunction Is Satisfied And The Federal Circuit Affirmed ....................................11

    D.   This Court Must Enjoin Sales Of Configurations That Infringe Method
Claim 26....................................................................................................12

    E.   Lawson's Argument That It Is Not A Contributory Infringer Is Wrong
And Foreclosed As A Matter Of *Res Judicata* ......................................................13

    F.   The Inducement Verdict Provides An Additional Basis For An Injunction
Against Sales............................................................................................15

    G.   The Record Weighs Heavily In *e*Plus's Favor Under The Four-Factor Test ........15

        1.   *e*Plus Remains Subject To Irreparable Harm............................................ 16

        2.   *e*Plus Lacks an Adequate Remedy at Law ................................................ 21

        3.   The Balance of Hardships Weighs Even More Heavily in *e*Plus's
Favor ...................................................................................................... 22

        4.   The Public Interest Weighs Even More Heavily in *e*Plus's Favor ........... 23

III.   CONCLUSION ...............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan, Inc. v. Sandoz, Inc.,*
   2012 U.S. App. LEXIS 6926 (Fed. Cir. April 4, 2012) ........................................................... 4

*Amado v. Microsoft Corp.,*
   517 F.3d 1353 (Fed. Cir. 2008) ................................................................................................. 13

*Bio-Technology Gen. Corp. v. Genentech, Inc.,*
   80 F.3d 1553 (Fed. Cir. 1996) ............................................................................................... 4, 7

*Broadcom Corp. v. Qualcomm Inc.,*
   585 F. Supp.2d 1187 (C.D. Cal. 2008) ....................................................................................... 9

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
   576 F.3d 1348 (Fed. Cir. 2009) .................................................................................................. 7

*eBay, Inc. v. MercExchange, L.L.C.,*
   547 U.S. 388 (2006) ................................................................................................................... 1

*ePlus, Inc. v. Lawson Software, Inc.,*
   700 F.3d 509 (Fed. Cir. 2012) .................................................................................................... 4

*Ex parte Sibbald v. United States*,
   37 U.S. 488 (1838) ..................................................................................................................... 7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
   2012 WL 761712 (N.D. Cal. March 8, 2012) .......................................................................... 13

*Holiday Inns, Inc. v. Holiday Inn,*
   645 F.2d 239 (4th Cir. 1981) ..................................................................................................... 4

*Horne v. Flores,*
   557 U.S. 433 (2007) ................................................................................................................... 3

*i4i Ltd. Partnership v. Microsoft Corp.,*
   598 F.3d 831 (Fed. Cir. 2010) ....................................................................................... 15, 16, 17

*Johns Hopkins University v. Datascope Corp.,*
   513 F. Supp.2d 578 (D. Md. 2007)
   *rev'd on other grounds*, 543 F.3d 1342 (Fed. Cir. 2008) ......................................................... 15

*Johns Hopkins University v. Datascope Corp.,*
   No. 1:05-cv-00759-WDQ (Dkt. No. 150) (Aug. 9, 2007) ....................................................... 15

*Montana v. United States,*
   440 U.S. 147 (1979) ................................................................................................................... 5

*MPT, Inc. v. Marathon Labels, Inc.,*
   Case No. 1:04-cv-2357, Dkt. No. 315 (N.D. Ohio, Dec. 17, 2007) ...................................... 8, 9

*MPT, Inc. v. Marathon Labels, Inc.*,
   258 Fed. App'x 318 (Fed. Cir. Dec. 12, 2007) .................................................................. 8, 15

*Pfizer Inc. v. Ranbaxy Labs.*,
   457 F.3d 1284 (Fed. Cir. 2006) ............................................................................................ 8

*Reed v. Allen*,
   286 U.S. 191 (1932) ............................................................................................................. 5

*S. Atl. Ltd. P'ship of Tenn., LP v. Riese*,
   356 F.3d 576 (4th Cir. 2004) .............................................................................................. 7

*Stewart-Warner Corp. v. City of Pontiac, Mich.*,
   767 F.2d 1563 (Fed. Cir. 1985) .......................................................................................... 7

*Tristrata Technology, Inc. v. Mary Kay, Inc.*,
   423 F. Supp.2d 456 (D. Del. 2006), *aff'd*, 214 F. App'x 979 (Fed. Cir. 2007) ...................... 15

*Tristrata Technology, Inc. v. Mary Kay, Inc.*,
   No. 1:01-cv-00127-JJF (Dkt. No. 341) (D. Del. Mar. 31, 2006) ............................................ 16

*U.S. v. Pileggi*,
   703 F.3d 675 (4th Cir. 2013) .............................................................................................. 7

*United States v. Swift & Co.*,
   286 U.S. 106 (1933) ............................................................................................................. 3

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
   510 F.3d 474 (4th Cir. 2007) .............................................................................................. 7

**Statutes**

35 U.S.C. § 271 ....................................................................................................................... 16

**Other Authorities**

18 Moore's Federal Practice, § 131.01 .................................................................................... 5

## I.    INTRODUCTION

Defendant Lawson Software, Inc.'s ("Lawson") motion to dissolve or modify the permanent injunction should be denied, and the permanent injunction should be continued as to Lawson Configurations 3 and 5.  Lawson's brief reads as if the Federal Circuit had reversed this Court's injunction ruling.  It did not.  The Federal Circuit affirmed Lawson's direct, induced ***and*** contributory infringement of claim 26, and likewise ***affirmed*** *e*Plus's remedy of a permanent injunction.

The Federal Circuit specifically addressed and rejected the sole argument that Lawson presented on appeal with respect to the injunction.  The appellate court provided ***no*** instruction to this Court to "dissolve" or "vacate" the injunction, nor did it instruct this Court to hold yet another evidentiary hearing and reapply the four-factor test for injunctive relief.  Those issues are final and fully resolved, and this Court's role on remand is simply to follow the Federal Circuit's mandate.[1]

Lawson hopes to use the contempt proceeding — and now the motion to dissolve or modify the injunction —to retry this case and the Court's injunction ruling.  But Lawson's arguments run contrary to the facts and procedural history of this case, the law, and common sense.  Indeed, the trial record and the record from the injunction proceedings, as well as this Court's prior findings on the injunction, support an injunction that remains in full force and effect, with the lone exception that the injunction no longer applies to Configuration 2.

- All the factual findings made by this Court when granting the injunction continue to apply with equal force.  In particular, the parties here compete directly with one another in a highly competitive market, and Lawson's continued infringement would give it a substantial unfair advantage over *e*Plus.

---

[1] *e*Plus recognizes that this Court stated at the March 14, 2013 conference that it would consider whether the injunction should be continued.  This brief addresses why that should be the case under the four-factor test of *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006).  However, *e*Plus also respectfully notes its objection to such reconsideration, because the Federal Circuit's mandate does not call for this Court to do anything more than strike Configuration 2 from the injunction order.

- Lawson argues that factual circumstances have changed because fewer Lawson customers are now affected by the injunction.  Of course, this argument actually *supports* an injunction that remains in effect.  If fewer Lawson customers will be affected by the injunction, then the balance of hardships weighs even more heavily in *e*Plus's favor.  Indeed, during the injunction proceeding, Lawson cited the extensive number of customers affected as a reason ***not*** to enjoin it.  Now it argues the very opposite proposition.

- None of the other *eBay* factors have changed in any way to Lawson's favor.  To the contrary, Lawson has simply thumbed its nose at the Court's injunction, negating any possible argument that the public interest weighs against an injunction.

- Lawson argues that the Court may not enjoin "mere" sales of products used to infringe a method claim.  This argument is baseless, as demonstrated by the case law *e*Plus previously cited, and which Lawson simply ignores.  *See infra* at 12.  If the law were otherwise, the Federal Circuit would have simply vacated the injunction and held that it could not be reinstituted with respect to sales of Configurations 3 and 5.

- Lawson's argument that there has been no finding of contributory infringement is demonstrably wrong from a review of the trial and appellate records.  Lawson raised this argument at both stages and lost.

- Lawson's argument that the injunction was solely about the system claims is also wrong.  Lawson's after-the-fact explanation of the reasons for this Court's injunction order is nothing more than revisionist history.  Both *e*Plus's arguments, and this Court's 63-page opinion granting an injunction, make clear that the injunction order was not motivated solely to halt further infringement of the system claims.

- In an egregious attempt to recharacterize the prior injunction proceeding, Lawson selectively quotes from an *e*Plus brief in an attempt to show that *e*Plus minimized the significance of Punchout.  This quote, however, is drawn from a section of the brief in which *e*Plus argued that the balance of harms weighed in its favor precisely ***because*** Punchout was (and still is) part of the configurations to be enjoined.  *e*Plus's brief argued that the injunction would cause little to no harm ***to Lawson*** because Punchout did not drive its S3 procurement system sales.  These arguments further underscore that with respect to Configurations 3 and 5 (which include Punchout), there will be little to no harm to Lawson if the injunction continues in place.

Accordingly, Lawson's motion to dissolve or modify the injunction should be rejected in its entirety, and the injunction should be continued in full with respect to claim 26 of the '683 Patent and Configurations 3 and 5.  Thus, with respect to the claims held not infringed or invalid on

appeal, this Court should simply enter an order stating that the injunction shall not be interpreted to enjoin Configuration 2, or carve out Configuration 2 from the injunction.

## II.   ARGUMENT

The existing record and this Court's prior findings continue to weigh heavily in favor of injunctive relief under the four-factor *eBay* test.  This Court should not entertain Lawson's request to reargue the injunction order and the liability issues and factual findings that form the basis for that order, and Lawson's Rule 60(b)(5) motion should be denied.

"Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"  *Horne v. Flores,* 557 U.S. 433, 447 (2007) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 385 (1992)).  The party seeking relief bears the burden of establishing that changed circumstances warrant relief.  *Id.* at 383.

The Fourth Circuit has instructed that:

our course is charted by Mr. Justice Cardozo's cautions in *United States v. Swift & Co.,* 286 U.S. 106 (1933):

There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. ... ***The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression.***

\*\*\*\*

The words are an immediate reminder that we are not to question the right or wrong of the issuance of the injunction ....:

*Holiday Inns, Inc. v. Holiday Inn*, 645 F.2d 239, 240 (4th Cir. 1981) (emphasis added).

**A.      The Federal Circuit Affirmed This Court's Injunction And The Mandate Does Not Permit Reconsideration Of Whether Lawson Should Be Enjoined**

The Federal Circuit ***affirmed*** the permanent injunction imposed by this Court.  The Federal Circuit also affirmed Lawson's infringement of claim 26.  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012) ("We remand for the district court to consider what changes are required to the terms of the injunction, consistent with this opinion.  ***In all other respects, we affirm***." (emphasis added)).

The appellate court did not instruct this Court to reconsider the propriety *vel non* of an injunction.  Neither did the appellate court give any instruction to this Court to dissolve or vacate the injunction, or to conduct a new evidentiary hearing.  Nor should this be a surprise.  Infringement of a single patent claim is sufficient to give rise to an injunction.  *Allergan, Inc. v. Sandoz, Inc.*, 2012 U.S. App. LEXIS 6926, at *6 (Fed. Cir. April 4, 2012) ("As long as Sandoz is found to infringe at least one claim of the '149 patent, the judgment--the injunction against marketing a generic version of Combigan--will remain the same."); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1562 n.8 (Fed. Cir. 1996) (stating "[i]nfringement of one valid and enforceable patent claim is all that is required for liability to arise[,]" and holding that vacating finding of infringement as to one patent claim would not warrant vacating injunction if another claim remained infringed).

Whether characterized as *res judicata* or collateral estoppel, the judgment is final that claim 26 is infringed (both directly and indirectly) and valid, and that *e*Plus is afforded a permanent injunction against Lawson's infringement.  Lawson has exhausted its appellate rights, and it has no right to continue to relitigate this issue.

4

> [T]he judgment, if rendered upon the merits, constitutes an absolute
> bar to a subsequent action.  It is a finality as to the claim or demand in
> controversy, concluding parties and those in privity with them, not
> only as to every matter which was offered and received to sustain or
> defeat the claim or demand, but as to any other admissible matter
> which might have been offered for that purpose.

18 Moore's Federal Practice, § 131.01 (quoting *Cromwell v. Sac County,* 94 U.S. 351, 352 (1876)

(citations omitted)).[2]

Thus, with respect to claim 26 and the Court's permanent injunction against Configurations

3 and 5, there is nothing for this Court to do but to enforce the injunction in the contempt

proceeding.  This Court's decisions on infringement and injunctive relief have been affirmed.  As

the Supreme Court has stated:

> When a case is remanded from an appellate court, the lower court "is
> bound by the decree as the law of the case; and must carry it into
> execution, according to the mandate. ***They cannot vary it, or
> examine it for any other purpose than execution; or give any other
> or further relief; or review it upon any matter decided on appeal for
> error apparent; or intermeddle with it, further than to settle so much
> as has been remanded***."

*Ex parte Sibbald v. United States*, 37 U.S. 488, 492 (1838) (emphasis added).[3]  Thus, the

determinations of infringement and the injunctive remedy are final, and this Court "is [now] bound

---

[2] *See also Montana v. United States,* 440 U.S. 147, 153 (1979) ("Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions … To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits [and] conserves judicial resources…."); *Reed v. Allen,* 286 U.S. 191, 198-99 (1932) ("[the] well-established doctrine of res judicata [was] conceived in the light of the maxim that the interest of the state requires that there be an end to litigation — a maxim which comports with common sense as well as public policy.").

[3] *See also U.S. v. Pileggi*, 703 F.3d 675, 679-80 (4th Cir. 2013) (mandate rule prevented district court from altering amount of restitution); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009) ("The mandate rule requires that the district court follow an appellate decree as the law of the case.") (citing *Sibbald*, 37 U.S. at 492); *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co*., 510 F.3d 474, 481 (4th Cir. 2007) (mandate rule "foreclose[d] relitigation of issues expressly or impliedly decided by the appellate court."); *S. Atl. Ltd. P'ship of*

by the decree as the law of the case; and must carry it into execution, according to the mandate." *Ex parte Sibbald*, 37 U.S. at 492.

Furthermore, Lawson did not even appeal the propriety of the injunction under the four-factor test.  Instead, Lawson's argument on appeal regarding the injunction was limited to the contention that this Court should not have enjoined the service and maintenance of products sold before the injunction issued.  The Federal Circuit specifically rejected this argument. *ePlus*, 700 F.3d at 522.  Because "[i]nfringement of one valid and enforceable patent claim is all that is required for liability to arise[,]" *Bio-Technology Gen. Corp.*, 80 F.3d at 1562 n.8 , Lawson stands as a finally adjudicated infringer in violation of an injunction that has been affirmed by the Federal Circuit.

Lawson does not cite a single case in support of its bald proposition that an injunction which has been ***affirmed*** and remanded under these circumstances must be dissolved *in toto*.  As *e*Plus previously set forth in its prior position statement, the only cases Lawson does cite are readily distinguishable.  *See* Dkt. No. 994 at 7-8.  Lawson makes no effort to address these significant distinctions.  The cases which Lawson relies upon are not only factually inapposite, they say nothing about the effect of a limited remand on an otherwise affirmed injunction.

Further, under nearly identical factual circumstances, other district courts have taken the "blue pencil" approach.  In these cases, just as *e*Plus has proposed, courts have entered a simple corrective order in response to a limited instruction for remand, often within a matter of days of the remand.  *See Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (eight days after mandate issued, the district court issued a simple two-page order "blue penciling" the paragraph of

---

*Tenn., LP v. Riese*,  356 F.3d 576, 584 (4th Cir. 2004) ("the court must attempt to implement the spirit of the mandate; and the court may not alter rulings impliedly made by the appellate court.");

the injunction prohibiting use of any product covered by the relevant claim found invalid on appeal[4]; *MPT, Inc. v. Marathon Labels, Inc.*, 258 Fed. App'x 318 (Fed. Cir. Dec. 12, 2007) (two days after appellate decision, district court dealt with partial reversal by means of a simple one-sentence order stating, "In light of the Federal Circuit's opinion issued in this matter, the Court hereby ORDERS that the injunction entered in this matter should not be interpreted to enjoin either sales of the SSP to locations outside the United States or sales of the SSP to resellers who sell to locations outside the United States."). *MPT, Inc. v. Marathon Labels, Inc.,* Case No. 1:04-cv-2357, Dkt. No. 315 (N.D. Ohio, Dec. 17, 2007) (attached as Ex. 2);[5] *see also Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp.2d 1187, 1189 (C.D. Cal. 2008) (where two patents remained infringed following appeal, district court issued order deleting injunction provisions relating to third patent invalidated on appeal only one day after Federal Circuit remand).

In none of these cases did the district court conduct a new evidentiary hearing or reengage in another four-factor analysis before entering the corrective order.  A simple one-sentence order such as that in *MPT*, providing that the injunction shall not be interpreted to enjoin Lawson's Configuration 2, is all that is required in this case to comply with the Federal Circuit's ruling on remand.  Pursuant to the Court's request, Dkt. No. 995, *e*Plus has filed such a proposed order with the Court.  Dkt. No. 996.

---

*Stewart-Warner Corp. v. City of Pontiac, Mich*., 767 F.2d 1563, 1567–68 (Fed. Cir. 1985) (mandate of appellate court "is binding upon the district court").

[4] The injunction order is attached as Ex. 1 (Case No. 1:03-cv-00209-JJF, Dkt. No. 338 (D. Del. Nov. 7, 2006)).

[5] Even though the infringed claims in *MPT* were method claims, there was no suggestion that the court could not enjoin sales of products used to practice the patented method within the United States.  *See infra* at 12-14.

**B.      This Court's Injunction Order Was Not Premised Solely Or Even Primarily On Configuration 2 Or Infringement Of The System Claims**

Lawson's revisionist history attempts to rewrite this Court's injunction opinion as having been based solely on the system claims. Lawson argues that now that "those system claims have been invalidated" the entire "foundation upon which the injunction rests" has been "disrupt[ed]." Lawson Br. at 9. This argument is unfounded hyperbole. Neither *e*Plus's arguments on the injunction motion, nor this Court's injunction ruling, were limited to the system claims. Indeed, nowhere in the Court's 63-page opinion does it give any indication that its focus was on Configuration 2 or the system claims as opposed to Configurations 3 and 5 and method claim 26.[6]

For example, Lawson contends that "*e*Plus's arguments and evidentiary presentation in support of its motion for a permanent injunction back in 2011, and the Court's written analysis granting that relief, are both virtually devoid of references specifically to … Punchout." Lawson Br. at 11. Not so. Both *e*Plus's arguments and the Court's opinion make myriad references specifically to Punchout. *See, e.g.,* Opinion Granting Injunction at 5, 10, 17, 18, 33, 44, 45, 59, 60, 61 (Dkt. No. 728); *e*Plus's Proposed Findings of Fact and Conclusions of Law at ¶¶ 1, 32, 37, 47, 50, 51, 52, 53, 55, 61 (Dkt. No. 641-1). Moreover, the quotation Lawson selects from *e*Plus's brief in an effort to show that ePlus minimized the significance of Punchout is drawn from a section of the brief in which *e*Plus argued that the balance of harms weighed in *e*Plus's favor precisely **because** Punchout was (and still is) part of the configurations to be enjoined. *e*Plus argued that the injunction would cause little to no harm **to Lawson** because Punchout did not drive its S3 procurement system sales, Lawson had won the healthcare market before it offered Punchout, and

---

[6] As *e*Plus set forth in detail in its Pre-Hearing Reply Statement of Position on Contempt, contrary to Lawson's contentions, the infringement verdict and judgment with respect to claim 26 and the corresponding injunction related to Configurations 3 and 5 are not simply about using one add-on module (Punchout). Dkt. No. 1016 at 5-7.

Lawson does not generally win sales of S3 systems merely because of Punchout.  Dkt. No. 641 at 20.  These arguments do not weigh against an injunction; to the contrary, they only underscore that with respect to Configurations 3 and 5 (which include Punchout), there will be little to no harm to Lawson if the injunction continues in place.

Lawson also argued at the time, as it does now, that the injunction should be limited to the add-on modules on top of Core Procurement (then the argument was that the injunction should apply only to RSS and Punchout; now Lawson's argument is that the injunction should apply only to Punchout).  Dkt. No. 705 at 28-29.  *e*Plus previously argued that an injunction that was so limited would be error because the add-on modules operate in conjunction with Core Procurement.  Dkt. No. 641 at 28-29.  The Court agreed with *e*Plus, citing the jury's verdict form and holding that "Lawson's premise is simply wrong….  Consequently, based on the jury's findings and the parties' stipulations, the Court will enjoin the adjudicated infringing systems."  Dkt. No. 728 at 60-61. Thus, again, Lawson's contention that *e*Plus or the Court were minimizing the importance of Punchout is simply wrong.

Likewise, Lawson's contention that *e*Plus or the Court focused primarily on the system claims, and that the injunction had nothing to do with the method claims, is false.  *e*Plus stated in its proposed findings of fact and conclusions of law that "the claimed inventions relate to electronic sourcing systems ***and methods***…"  *e*Plus proceeded to describe how users perform each step of the claimed methods (including each step of claim 26), which the Federal Circuit affirmed on appeal.  Dkt. No. 641-1 at 3 (proposed findings of fact and conclusions of law).  Similarly, the Court found that the claimed inventions relate "to electronic sourcing systems ***and methods***…,"  and that users of the inventions "may search for items for sale from multiple selected electronic catalogs, view inventory availability information for those items, find related items available from other suppliers,

9

and requisition desired goods or services.  The systems then generate electronic purchase orders to each different supplier for approved requisitions."  Dkt. No. 728 at 2.  These are the steps for performing the method of claim 26.

Moreover, as discussed in more detail *infra,* the evidence that *e*Plus introduced and that the Court relied upon regarding competition between the parties was not in any way limited to competition with respect to Lawson's Configuration 2.  For example, such evidence (which remains relevant today) included that:

- *e*Plus practices the patents-in-suit (including claim 26).  Dkt. No. 641-1 (*e*Plus's proposed findings of fact and conclusions of law) at 4; Dkt. No.728 at 4-5;

- *e*Plus and Lawson market and sell to mid-market companies with market caps in the 50M – 2.5B range.  Dkt. No. 641-1 at 12; Dkt. No.728 at 16;

- *e*Plus and Lawson market and sell to companies in the same industries.  Dkt. No. 641-1 at 4; Dkt. No.728 at 19;

- *e*Plus and Lawson market and sell to the same exact companies.  Dkt. No. 641-1 at 13-16;

- *e*Plus has lost sales because of Lawson's infringing products.  *Id.* at 16-19.  At least some of the specific examples included competition where Lawson offered Punchout and EDI, such as Deaconess.  Dkt. No.728 at 23; *e*Plus's Proposed Findings of Fact and Conclusions of Law at ¶ 37 (Dkt. No. 641-1);

- "When an existing Core S3 Procurement customer, who does not own RSS or Punchout, is seeking further functionality with respect to e-procurement software, the two companies' products compete against each other for that business.  While this may represent a small segment of the overall supply chain management market, the record establishes that Lawson and *e*Plus compete with one another in this segment."  Dkt. No. 728 at 18;

- Third party analyst reports group the two companies as competitors in the software market.  Dkt. No. 728 at 19.

Further, Lawson's arguments that there was no competition because (i) *e*Plus sold procurement software as a "best-of-breed" product whereas Lawson sold full ERP suites, (ii) there were multiple companies in the ERP/Procurement space, and (iii) any competition was *de minimis*, were all rejected by the Court.  Dkt. No. 728 at 17-18, 20-22, 26.

**C.     The Court Has Already Determined That The Four-Factor Test For An Injunction Is Satisfied And The Federal Circuit Affirmed**

The Federal Circuit affirmed this Court's injunction with only a simple directive to correct the injunction in order to comply with the mandate.  The appellate court gave no instruction to reconsider the application of the four-factor test, and, in fact, Lawson did not even appeal whether the four-factor test was met in this case.

Lawson does not offer a single case which even remotely suggests that a new evidentiary hearing is required when an injunction is affirmed, but remanded with only limited instructions for correction.[7]  Instead, Lawson cites two inapposite cases for the dubious proposition that these procedural circumstances "compel the Court to consider anew whether and to what extent injunctive relief remains appropriate under *eBay*."  Lawson Br. at 10.  Neither case is on point.

In *Amado v. Microsoft Corp.,* the issue was simply that the Supreme Court had decided *eBay* after the district court's injunction decision.  517 F.3d 1353, 1360-61 (Fed. Cir. 2008).  Unremarkably, the court held that it was permissible for the district court to reconsider its injunction decision under the new legal standard set forth in the *eBay* decision.  And in *Fresenius USA, Inc. v. Baxter Int'l, Inc.,* the appellate court had vacated a damage award issued in the context of an injunction, because there was an insufficient basis for the royalty rate.  2012 WL 761712, at *7 (N.D. Cal. March 8, 2012).  The injunction included an award to compensate the patentee for damages that continued to accrue during a sunset period.  On remand, the district court followed the Federal Circuit's express directive to reconsider the royalty rate but, contrary to the intimation in Lawson's brief, ***it did not reconsider whether a permanent injunction should have been granted nor did it conduct a new evidentiary hearing on that point, even though several claims had been***

---

[7] Moreover, during the conference with the Court conducted on March 14, 2013, Lawson stated that it did not request another evidentiary hearing, nor did it wish to submit new evidence in support of its contention that this Court should vacate the injunction *in toto*.  Dkt. No. 1025 at 10-11.

*held invalid on appeal.  Id.*  Indeed, neither the *eBay* decision nor the four-factor test are mentioned anywhere in the cited opinion.  Thus, neither case supports Lawson's arguments here.

### D.      This Court Must Enjoin Sales Of Configurations That Infringe Method Claim 26

Lawson is incorrect in arguing that this Court cannot enjoin Lawson's sales of Configurations 3 and 5 on the ground that claim 26 is a method claim.  If Lawson were correct, the Federal Circuit would have simply directed that the injunction be vacated with respect to sales.  Instead, the Federal Circuit affirmed the jury's verdict of infringement of claim 26 and the injunction, holding that Lawson directly and indirectly infringed the claim.  Indeed, the Federal Circuit acknowledged that there was "no serious dispute that Lawson's customers infringe claim 26" and that "there is evidence that Lawson installed, maintained, demonstrated and managed the infringing systems for its customers."  *ePlus*,  700 F.3d at 520–21.  Thus, the court found that Configurations 3 and 5 have the capability to infringe claim 26, that ***Lawson and its customers*** perform all the steps of method claim 26 when using the systems (thereby directly infringing the claim), and moreover that Lawson's various activities (*e.g.*, installing the systems, training customers to use the systems, and the like) were acts of indirect infringement.  *Id.*  It is therefore remarkable that Lawson argues it cannot now be enjoined from selling these same systems, thereby continuing to contribute to and induce its customers' direct infringement.

Lawson cites not a single case finding an injunction against sales overbroad on the ground that only a "mere" method claim was infringed.  Instead, Lawson relies upon cases that simply describe the black-letter law regarding the elements of infringement of a method claim, an issue that is no longer subject to debate in light of the Federal Circuit's ruling that Lawson directly and indirectly infringes claim 26.  *See* Lawson Br. at 5-6.

Other cases **not** cited by Lawson demonstrate that an injunction against sales of products used to infringe method claims is entirely appropriate.  *See i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 839-40, 861 (Fed. Cir. 2010) (where jury found contributory and induced infringement, affirming scope of permanent **injunction prohibiting Microsoft from**, *inter alia*, "**selling, offering to sell**, and/or importing into the United States" **software that was used to infringe the method claims**); *see also MPT,* 258 F. App'x at 318 (holding that injunction against foreign sales not subject to U.S. patent laws was overbroad, but otherwise **affirming injunction against sales of product where use by customers would infringe method claims**); *Johns Hopkins University v. Datascope Corp.*, 513 F. Supp. 2d 578 (D. Md. 2007) (**granting injunction prohibiting sales of product used to infringe method claims**), *rev'd on other grounds*, 543 F.3d 1342 (Fed. Cir. 2008)[8]; *Tristrata Technology, Inc. v. Mary Kay, Inc.*, 423 F. Supp.2d 456 (D. Del. 2006), *aff'd*, 214 F. App'x 979 (Fed. Cir. 2007) (**where defendant contributorily infringed and induced infringement of method claims**, **court enjoined** "making, using, advertising, promoting, **selling, or offering to sell the products** at issue in this case that were found to have been used to contributorily infringe the patents-in-suit.").[9]  This Court should enjoin sales of configurations that Lawson and its customers were found to have used in violation of method claim 26.

    **E.**    **Lawson's Argument That It Is Not A Contributory Infringer Is Wrong And Foreclosed As A Matter Of *Res Judicata***

Lawson's contention that "there has been no finding of contributory infringement in the case," Lawson Br. at 6, is simply wrong, as the district court and appellate court records make

---

[8] The injunction order is attached as Ex. 3 (Order, *Johns Hopkins University v. Datascope Corp.*, No. 1:05-cv-00759-WDQ (Dkt. No. 150) (Aug. 9, 2007) (**where infringement of method claim was found, enjoining defendant "from** advertising, manufacturing, **selling**, and/or distributing **the infringing . . . device**") (emphasis added).

[9] The injunction order is attached as Ex. 4 (Injunction Order, *Tristrata Technology, Inc. v. Mary Kay, Inc.*, No. 1:01-cv-00127-JJF (Dkt. No. 341) (D. Del. Mar. 31, 2006).

unmistakable.  Under 35 U.S.C. § 271(c), one who "***sells*** within the United States . . . *a material or apparatus for use in practicing a patented process* . . . shall be liable as a contributory infringer." Thus, a sale of Lawson's infringing product configurations is an act of contributory infringement of a method claim.  *See i4i,* 598 F.3d at 850-51 ("*a party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process*") (emphasis added).

*e*Plus presented uncontroverted expert testimony at trial that the configurations at issue contributorily infringe the method claims (including method claim 26) and have no substantial non-infringing uses.  *See* Trial Tr. at 775:17–776:23.  This Court determined, "*[t]he jury heard and received substantial evidence to support a finding of indirect infringement, on either an inducement or contributory infringement basis*."  Dkt. No. 787 (Mem. Op., Aug. 12, 2011) at 9 (emphasis added).

Lawson appealed both the inducement and contributory infringement verdict to the Federal Circuit.  *See* Br. for Def.-Appellant Lawson Software (Aug. 8, 2011) at 44–47 ("ePlus Also Did Not Prove that Lawson Is a Contributory Infringer") (excerpt attached as Ex. 5).  The Federal Circuit expressly affirmed the verdict with respect to method claim 26 and found that Lawson induced infringement.  *ePlus,* 700 F.3d at 520.  **The Federal Circuit also rejected "any of the parties' arguments on appeal" not expressly addressed in its opinion**, *see id.* at 523, n.2; this includes Lawson's argument that it was not a contributory infringer.  The findings of inducement and contributory infringement are now *res judicata*, and Lawson must live with them, as well as their implications.

**F.     The Inducement Verdict Provides An Additional Basis For An Injunction Against Sales**

While Lawson concedes, as it must, that the Federal Circuit expressly affirmed the inducement verdict against it, it persists in arguing that this verdict cannot be the basis for an injunction against sales of the infringing configurations.  Again, however, Lawson does not cite any case holding that an inducement verdict cannot form the basis for an injunction against sales, and the *i4i* decision shows that Lawson is wrong.  *See i4i,* 598 F.3d at 861 (enjoining sales of products following verdict of contributory ***and induced*** infringement of method claims).

**G.     The Record Weighs Heavily In *e*Plus's Favor Under The Four-Factor Test**

This Court fully considered the parties' arguments whether an injunction is proper, and conducted an evidentiary hearing, oral argument, and a full round of briefing on the issue.  In ruling on this issue, the Court issued a detailed 63-page memorandum opinion setting forth its findings on the four factors, which are just as pertinent today as they were then.  *See* Dkt. No. 728.  Indeed, when granting the injunction, this Court expressly held that "[a]ll findings of fact have been clearly proved by the evidence."  Dkt. No. 728 at 1, n.1.

Among other things, this Court found, following a thorough discussion of the parties' contentions, that *e*Plus and Lawson are direct competitors in the highly competitive e-procurement software market, *e*Plus has lost sales and market share because of Lawson's infringement (which results in lost revenue for implementation/installation, maintenance and servicing of software), *e*Plus has suffered irreparable harm for which it has no adequate remedy at law, the balance of hardships favors *e*Plus, and the public interest weighs in favor of an injunction.  *Id.*  ***Lawson did not appeal any of these findings.***

As set forth below, the record and this Court's prior findings amply demonstrate that a continued injunction is warranted with respect to claim 26 and Configurations 3 and 5.  And as set

forth *supra,* Lawson's contentions that the injunction was premised on infringement of the system claims, or Configuration 2, are plainly wrong.

### 1. *e*Plus Remains Subject To Irreparable Harm

The existing record before the Court clearly shows that *e*Plus will be irreparably harmed absent an injunction to preclude Lawson's continued infringement of claim 26.  The Court's factual findings and conclusions of law are as true today as they were when the Court entered the injunction.  The Court relied upon the following key findings in holding that *e*Plus faced irreparable harm:

- "The fact that ePlus and Lawson directly compete in a marketplace is a significant factor in favor of a finding of irreparable injury."

- "ePlus and Lawson[] focus on mid-market companies having market capitalizations between $50 million to $2.5 billion."

Dkt. No. 728 at 16 (citing cases).

These facts have not changed.  *e*Plus and Lawson continue to compete directly, focusing on mid-market companies, and there is no evidence to the contrary.

The Court also found:

- "While RSS and Punchout only work with Lawson's Core S3 Procurement System, the S3 System is configured to allow for integration with a stand-alone e-Procurement product, such as Procure+ and Content+.  Thus, when an existing Lawson Core S3 Procurement customer, who does not own ***RSS or Punchout***, is seeking further functionality with respect to e-procurement software, the two companies' products compete against each other for that business.  While this may represent a small segment of the overall supply chain management market, the record establishes that Lawson and ePlus compete with one another in this segment."

*Id.* at 18 (emphasis added).

This finding, which remains true today, is particularly important because it demonstrates that the Court's finding of competition includes instances in which a Lawson customer with a non-infringing system considers upgrading to infringing Configurations 3 and 5.  The Court has

correctly found that *e*Plus and Lawson compete to offer the add-on modules.  For Lawson, the add-on modules include RSS, Punchout and EDI; for *e*Plus, the add-on modules include its products covered by claim 26, namely Content+ and Procure+.

Substantial additional evidence also supported the finding that the parties competed with respect to Lawson's infringing products.

- "[B]oth companies target similarly-sized companies and the same customers in specific industries, including health care, retail, and education, to name a few.  Both companies also have submitted responses to the same Requests for Proposals from prospective customers."

- "[O]f the 7,899 unique customers Lawson has solicited for its Core S3 Procurement System, ePlus has solicited 2,041 of those customers – roughly twenty-five percent – for sales of Procure+ and Content+."[10]

- "[I]ndependent third party market analyst reports group the two companies as competitors in the e-procurement market.  *See* PX463 ...  For instance, among the products of the eleven vendors the … 'Forrester Wave Report' compared were Procure+ and the S3 Supply Chain Management Suite.  *See* PX690.  According to the report, ePlus offers competitive options and scores 'consistently with best-in-class capabilities in some areas," while Lawson's e-procurement solution scores well in its own right, 'so for most of [its] customers the integration and standardization advantages will outweigh minor functionality weaknesses." *Id.* … ***Confirmation by industry reports provides further support for the conclusion that the two companies' products compete against one another generally and for customers who desire to add further e-procurement functionality to their existing Lawson suites***."

*Id.* at 18-20 (emphasis added).  Again, none of the above findings were contingent on the system claims (as opposed to method claim 26) being infringed, nor on whether Configuration 2 in addition to Configurations 3 and 5 were infringing.

With reasoning that is also equally applicable today, the Court also rejected Lawson's contention that the competition was too "indirect" or that *e*Plus and Lawson were not sole competitors in the industry.

---

[10] This finding remains particularly important because of the Court's additional finding above that — for such customers with the Core S3 Procurement System — ***the two companies' products compete against each other when those customers seek additional functionality, such as EDI and Punchout***.  Dkt. No. 728 at 18.

- "[T]he Court rejects Lawson's generalized argument and finds that, notwithstanding the presence of more than two competitors (Lawson and ePlus) in the e-procurement software market, the direct competition between ePlus and Lawson in that market weighs heavily in favor of a finding of irreparable harm."

- "[E]vidence at trial showed that Lawson and ePlus are direct competitors for certain customers in a highly competitive marketplace.  And, absent injunctive relief, ePlus clearly faces further disability in competing for the part of the market in which it and Lawson compete directly…. *the fact of direct competition between patent owner and infringer in the market proved by this record provides significant support for a finding of irreparable injury.  Indeed, foreclosing Lawson's infringing products from the market will open more of the market to ePlus*."

*Id.* at 21-22 (emphasis added).

The Court's findings of lost sales and lost market share also remain valid.  The Court found (while correctly noting that a showing of lost sales was ***not*** required to demonstrate irreparable harm):

- "ePlus also has shown lost sales and lost market share because of Lawson's infringement.  These lost sales also resulted in lost revenue to ePlus for the implementation/installation, maintenance, and servicing of the software."

- "For instance, in November 2007, Deaconess Health System … entered into a [SOW] with Lawson to implement an infringing system.  At the time, Deaconess licensed Procure+.  Less than one year after entering into the SOW with Lawson, Deaconess terminated its license for Procure+ and explained to ePlus that from that point forward, it would be using Lawson to process orders, rather than Procure+ [because] the cost of keeping both systems would be prohibitive.  PX544"

*Id.* at 22-23.  Notably, ***Punchout and EDI were two of the modules licensed by Deaconess from Lawson in November 2007.***  *See e*Plus Proposed Findings of Fact and Conclusions of Law at ¶ 37 (Dkt. No. 641-1).  Accordingly, the Court's finding is equally valid with respect to Configurations 3 and 5, which remain infringed today.  And as for Lawson's argument that the number of lost sales was allegedly minimal, the Court rejected this argument, as it should again today:

- "Lawson asserts that, because ePlus can point to only a small number of lost sales, that factor carries no weight.  That argument ignores the fact that the record here shows that contract negotiation and award often are held in confidence and thus neither ePlus nor Lawson can know about all, or even most, of the awards to competitors.  The argument

ignores also the fact that ePlus still occupies a small place in the market in which it and Lawson compete.  ***The fact that ePlus occupies a lesser place in the market serves to emphasize the impact of sales lost to an infringer.  That supports a finding of irreparable injury attributable to sales lost to the infringer, even if they are not large in number***.  ***Consequently, though there may not be a large number of lost sales to Lawson's infringing software, due both to the fact that vendors compete against one another in secret generally and that ePlus is a relatively smaller vendor in the defined market, ePlus has put forth sufficient evidence of lost sales and lost market share to support a finding of irreparable harm.***"

*Id.* at 26 (emphasis added).

The Court also made specific findings about the harm to *e*Plus's business, none of which were contingent on infringement based on Configuration 2 or whether the system claims were also infringed.

- "As a result of these lost sales, ePlus also has lost the opportunity to cross-sell and up-sell its IT and VAR products to potential customers of Procure+ and Content+, who have instead chosen to use Lawson's infringing software." *Id.* at 26-27.

- "The record shows that ePlus derives the majority of its revenue from its VAR business, and Procure+ and Content+ provide ePlus with opportunities to cross-sell and up-sell its VAR products to customers of Procure+ and Content+.  In 2010 alone, ePlus states Procure+ and Content+ drove approximately $16 million in additional VAR hardware sales.  Moreover, sales of Procure+ and Content+ allow ePlus 'to better support and retain [its] customers in [its] technology sales and finance business.'" *Id.* at 27 (quoting PX523 at 3).

- "The industry also has recognized ePlus's business strategy to cross-sell and up-sell Procure+/Content+ with its VAR business." *Id.* at 28 (quoting from PX690 at 10).

- "ePlus also acquired and has developed Procure+ and Content+ to 'distinguish [itself] from [its] competition by providing a comprehensive offering to customers,' and because customers in the industry increasingly 'prefer bundled offers to include IT products/services and leasing,' ePlus's offering of Procure+ and Content+ to customers is an added 'competitive advantage.'" *Id.* at 28 (quoting from PX523 at 3-4).

Thus, the Court concluded, in terms that are equally applicable today:

- "***ePlus can only pursue its goal of becoming 'a leading provider of bundled solution offerings in the IT supply chain,' if infringers of its patents, like Lawson, are not permitted to compete in the marketplace.  For the foregoing reasons, the record here shows that, absent injunctive relief, ePlus will continue to suffer irreparable harm due to the loss of this ancillary business***." *Id.* at 28 (emphasis added).

19

- "Once the opportunities for research and development have passed, 'they are often lost for good, as another entity takes advantage of the opportunity.'" *Id.* at 30 (quoting *Commonwealth Scientific Indus. Research Org.v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007)).

- "ePlus, in enforcing its right to exclude, also has been forced to divert several millions of dollars away from research, development, and business opportunities toward litigation costs.  This represents a major lost opportunity to ePlus to grow its software business.  For example, ePlus could have used the significant human and monetary resources expended toward litigation costs to continue developing and improving the functionality and capability of Procure+ and Content+, which continues to be important as ERP vendors, like Lawson, continue to improve the functionality of their own software, thereby closing the gap between themselves and best-of-breed vendors." *Id.* at 28-29 (citing PX 690 at 3).

- "[E]ven if the Court did not consider this past harm, *if injunctive relief were not entered, ePlus still 'would be required to expend and divert resources that could be used toward the advancement of its products and its business' in order to monitor, challenge, and sue Lawson for all future infringement.*'" *Id.* at 30 (quoting *Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods.*, 2011 WL 14372, at *6 (N.D. Ohio Jan. 3, 2011)).

- "*ePlus argues, and rightly so, that without the prohibitive force of an injunction and, of course, the availability of judicial sanctions for violations thereof, it would be engaged in a constant action to police Lawson's conduct.  For a small company that is a significant, and costly, undertaking*.  And, future infringements would necessitate new litigation, not just enforcement proceedings.  *As ePlus correctly points out, litigation with Lawson is very costly.  Indeed, Lawson's highly contentious approach to this litigation, which was to contest virtually every issues (often needlessly and often with dubious reason), exacted a substantial toll on ePlus*.  The issuance of an injunction makes it less likely that ePlus will be forced to engage in extensive policing of Lawson or to incur extensive litigation expense because the *in terrorem* effect of an injunction operates to provide a powerful incentive to Lawson to avoid future infringement." *Id.* at 31 (emphasis added).

- "*The lost opportunities for research and development of Procure+ and Content+ because of the need to expend resources in this litigation, and in future litigation should this Court not enter injunctive relief, constitute irreparable harm to ePlus that cannot be compensated by an adequate remedy at law.*" *Id.* at 31 (emphasis added).

Lawson relies on the assertion that not as many Lawson customers may be impacted after

Configuration 2 is excised from the injunction.  Lawson claims that "*only* approximately *150*

*customers* possess configurations even arguably approximating Configuration Nos. 3 and 5."

Lawson Br. at 14.  150 customers is not a *de minimus* number of customers, and the percentage

those customers represent out of all Lawson customers is irrelevant to the irreparable harm to *e*Plus. There is no requirement that more than 150 customers must utilize the infringing configurations in order for there to be irreparable harm.  And of course, if, as Lawson requests, the Court does not enjoin further sales, Lawson would be free to sell infringing Configurations 3 and 5 to new customers.

Moreover, as this Court found, *e*Plus is a small company, and the fact that Lawson is unfairly competing with *e*Plus by providing 150 customers with infringing technology constitutes irreparable harm.  At the injunction evidentiary hearing, *e*Plus's Ken Farber estimated that the price for Lawson customers to replace Lawson with *e*Plus's competing system would be approximately $150,000.  Dkt. No. 701 at 80:4-17 (Tr. of March 25, 2011) ("the average cost, I think, is probably around 150,000").  For 150 customers, that equates to *$22.5 million*, hardly a trivial amount.

### 2.    *e*Plus Lacks an Adequate Remedy at Law

Second, the existing record before the Court also shows that *e*Plus lacks an adequate remedy at law for Lawson's continued infringement of claim 26.  Indeed, under Lawson's argument, *e*Plus would have no remedy at all for Lawson's affirmed infringement of claim 26.  As this Court noted, "[w]hether a patentee has an adequate remedy at law 'inevitably overlaps' with whether a patentee has suffered irreparable harm.'"  Dkt. No. 728 at 33 (quoting *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp.2d 556, 582 (E.D. Va. 2007)).  When entering the injunction, this Court noted that damages at law would not be an adequate remedy for the harm to *e*Plus, particularly because *e*Plus's products competed with "configurations of Lawson's Core S3 Procurement System in combination with RSS *and Punchout*;" that *e*Plus had lost sales, the opportunity to cross-sell and up-sell, and the time and resources to research and develop its e-procurement software; and *e*Plus's right to exclude had been violated.  Dkt. No. 728 at 33.  The Court also noted that *e*Plus should not be forced to

21

license a competitor, that any license would be difficult to value and enforce, and that it was significant that *e*Plus practices its patents.  *Id.* at 34-38.

None of these facts have changed, and Lawson offers nothing other than conjecture and its incorrect argument from whole cloth, discussed *supra,* that the Court was focused only on "Lawson's broader procurement system."  Lawson Br. at 13.  Indeed, Lawson does not even attempt to argue that *e*Plus and Lawson do not compete with respect to Configurations 3 and 5.  Lawson's argument even concedes that one of the specific examples of lost sales that the Court relied on "included the add-on modules," *id.* at 14, and that, as noted *supra,* approximately 150 of its customers use the infringing configurations.  For all the reasons previously stated, and for the reasons set forth by the Court in its prior opinion, *e*Plus lacks an adequate remedy at law, and Lawson has failed to show any basis for the Court to reconsider its prior conclusion.

### 3. The Balance of Hardships Weighs Even More Heavily in *e*Plus's Favor

With respect to the balance of hardships, any balancing now weighs even more heavily in *e*Plus's favor.  Lawson's primary argument — that "only" 150 or so of its customers currently use Configurations 3 and 5 — shows all the more that Lawson will not suffer any cognizable hardship whatsoever.  The Court may recall that Lawson previously argued that the supposedly large number of customers that would be affected was reason ***not*** to enjoin it.  Yet even when a considerably larger number of Lawson's customers would have been affected, this Court correctly observed, "it appears that an injunction will have little collateral effect on Lawson as a whole."  Dkt. No. 728 at 41.

When granting the injunction, the Court balanced the continuing irreparable harm to *e*Plus, and the finite duration of the patent term and of Lawson's infringement, against the effect on Lawson.  Dkt. No. 728 at 40-42.  The Court correctly noted that the alleged harms of which Lawson

22

complained "simply 'mirror[ed] the success' that Lawson has enjoyed … [as] the consequence of infringing…." *Id.* at 41.

Of course, all of those observations remain true today, particularly considering that Lawson never suffered a day of business disruption from the injunction.  Lawson's new argument that the balance of hardships tips in its favor because it has been forced to redesign its products is truly illogical.  *See* Lawson Br. at 16.  First, Lawson has made no evidentiary record on this point; indeed it expressly declined to make any such record.  Dkt. No. 1025 at 10-11.  Second, as the Court will hear at the contempt hearing, after falsely representing to the Court that Lawson and its customers would incur extreme financial hardship and inconvenience if enjoined, Lawson released its so-called "design-around" immediately before issuance of the injunction.  The alleged design around was free to customers, available through an easy twenty minute download, and was the product of minimal effort by Lawson.  This Court has already taken note of this event in its prior injunction ruling.  Dkt. No. 728 at 4, n.10.  Since that time, Lawson has simply continued its infringement in blatant violation of this Court's injunction.

Moreover, Lawson's claim, if true, that it has designed around the patent provides yet another reason why the balance of hardships weighs in *e*Plus's favor.  If Lawson has truly designed around the patent, then an injunction will not create any hardship for it.  If Lawson's claim is false, which *e*Plus will show to be the case at the contempt hearing, the equities surely cannot lie in Lawson's favor.

### 4.      The Public Interest Weighs Even More Heavily in *e*Plus's Favor

With respect to the public interest, Lawson's prior arguments bear special emphasis.  The Court may recall that Lawson claimed an injunction would cause "substantial harm to third parties, such as Lawson's customers, many of whom are hospitals, healthcare organizations, and schools, and will indirectly harm the patients and students who are served by these customers."  Dkt. No.

705 at 23.  Lawson went so far as to contend that an injunction may "adversely affect patient care" at its hospital customers.  *Id.* at 25.

Based on these arguments, the Court included in its injunction order a generous sunset provision for health care customers.  Yet just prior to the entry of the Court's Order, Lawson publicly announced the availability of a "design-around," available free to customers, and downloadable in twenty minutes.  *See* Dkt. No. 728 at 42, n.10 (taking note of Lawson's announcement of alleged redesign).  There is no way to reconcile Lawson's arguments with the facts.  Lawson's prior public interest arguments against the injunction have already been shown to be false.  This should be reason enough to reject Lawson's present arguments.

Lawson also urges this Court to believe that the Federal Circuit will determine that claim 26 is invalid on the appeal of the reexamination proceeding.  Again, this factor now weighs even more heavily in *e*Plus's favor.  Since the injunction order entered, ***Lawson chose not to even appeal the jury's finding that claim 26 was not invalid***.  Lawson's request that this Court exercise its equitable discretion so as not to enjoin Lawson therefore has even less merit.  Lawson undoubtedly made an informed, tactical decision not to appeal the validity of claim 26 of the '683 Patent in this case, and should not now be heard to complain that it is unfairly prejudiced by the obvious and natural consequence of its decision.

Moreover, both this Court ***and*** the Federal Circuit have previously rejected this same request, as well as Lawson's arguments about the supposed relevance of those reexamination proceedings, on numerous occasions.  *See* Dkt. No. 198 (denying initial request to stay); Dkt. No. 362 (denying Lawson's motion *in limine* to exclude arguments allegedly inconsistent with reexamination "findings"); Dkt. No. 375 (granting *e*Plus's motion *in limine* to exclude from trial evidence or argument relating to reexaminations); Dkt. No. 734 (denying Lawson motion for a stay

of any permanent injunction); Dkt. No. 787 at 21–22 (denying Lawson renewed motion for new trial due to exclusion of reexamination "evidence" and stating, "***No more ink will be spilled over the topic***.") (emphasis added); *see also* Dkt. No. 994 at 11-12, n.3 (documenting Federal Circuit's denials of Lawson several requests for a stay of appeal).  In addition, Lawson urged the Federal Circuit to delay issuing a ruling on the appeal of this case until that Court also resolved the reexamination appeal.  *See id.* (documenting Lawson letter to Court).  ***The Federal Circuit declined to delay its ruling, but instead rendered its decision affirming the injunction***.  There is no reason for this Court to reconsider these earlier rulings.

## III.   CONCLUSION

For all the foregoing reasons, this Court should reject Lawson's attempt to retry *e*Plus's right to a remedy in this case.  The evidentiary record and this Court's prior findings, as affirmed by the Federal Circuit, fully support the continuation of a permanent injunction against Lawson's infringement.  The verdict regarding infringement of claim 26 of the '683 Patent using Configurations 3 and 5 remains undisturbed, as should that aspect of the injunction.

Respectfully Submitted,

March 18, 2013                    _____/s/_____
                                 Paul W. Jacobs, II (VSB #16815)
                                 Craig T. Merritt (VSB #20281)
                                 Henry I. Willett, III (VSB #44655)
                                 **CHRISTIAN & BARTON, LLP**
                                 909 East Main Street, Suite 1200
                                 Richmond, Virginia 23219-3095
                                 Telephone: (804) 697-4100
                                 Facsimile: (804) 697-4112
                                 pjacobs@cblaw.com
                                 cmerritt@cblaw.com
                                 hwillett@cblaw.com

                                 Jennifer A. Albert *(admitted pro hac vice)*
                                 David M. Young (VSB #35997)
                                 **GOODWIN PROCTER LLP**
                                 901 New York Avenue, N.W.
                                 Washington, DC 20001
                                 Telephone:  (202) 346-4000
                                 Facsimile:   (202) 346-4444
                                 srobertson@goodwinprocter.com
                                 jalbert@goodwinprocter.com
                                 dyoung@goodwinprocter.com

                                 Michael G. Strapp (*admitted pro hac vice*)
                                 **GOODWIN PROCTER LLP**
                                 Exchange Place
                                 53 State Street
                                 Boston, MA 02109-2881
                                 Telephone:  (617) 570-1000
                                 Facsimile:   (617) 523-1231
                                 mstrapp@goodwinprocter.com

                                 *Counsel for Plaintiff, ePlus Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of March, 2013, I will electronically file the foregoing

### PLAINTIFF *e*PLUS INC.'S BRIEF IN OPPOSITION TO
### MOTION TO DISSOLVE OR MODIFY INJUNCTION

with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) via email to the following:

| | |
|---|---|
| Christopher Dean Dusseault, *pro hac vice*<br>Jason Lo, *pro hac vice*<br>Timothy P. Best, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-6659<br>CDusseault@gibsondunn.com<br>JLo@gibsondunn.com<br>TBest@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>Megan C. Rahman (VSB No. 42678)<br>Timothy J. St. George (VSB No. 77349)<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>Telephone: (804) 697-1238<br>Facsimile: (804) 698-5119<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com<br>megan.rahman@troutmansanders.com<br>tim.stgeorge@troutmansanders.com |
| Daniel J. Thomasch, *pro hac vice*<br>Josh A. Krevitt, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-6200<br>DThomasch@gibsondunn.com<br>JKrevitt@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com | Sarah E. Simmons, *pro hac vice*<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue , #1100<br>Dallas, TX 75201<br>Telephone: (214) 698-3100<br>Facsimile: (214) 571-2900<br>SSimmons@gibsondunn.com<br>VAED-620ExternalServiceList@gibsondunn.com<br><br>*Counsel for Defendant Lawson Software, Inc.* |

*/s/*
Paul W. Jacobs, II (VSB #16815)
Craig T. Merritt (VSB #20281)
Henry I. Willett, III (VSB #44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
pjacobs@cblaw.com
cmerritt@cblaw.com
hwillett@cblaw.com
*Counsel for Plaintiff ePlus Inc.*
