**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LAWSON SOFTWARE, INC.'S REPLY
IN SUPPORT OF ITS FED. R. CIV. P. 60 MOTION TO
DISSOLVE OR MODIFY THE MAY 23, 2011 INJUNCTION**

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
rmark@gibsondunn.com
cdusseault@gibsondunn.com
jlo@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

# CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.     THE FEDERAL CIRCUIT MANDATE DIRECTS THE  COURT TO
RECONSIDER THE MAY 2011 INJUNCTION ............................................................. 2

     A.     ePlus's Analysis Of The Law Concerning The Evaluation Of Injunctions
Is Wrong ........................................................................................................... 2

     B.     The Reversal As To Four Out Of Five Infringed Claims  Presents
Remedial Issues This Court Has Never Considered ............................................ 5

     C.     The Federal Circuit Explicitly Instructed This Court To Reconsider The
Changes Needed To The Injunction Consistent With Its Opinion, Which
Requires That This Court Identify A Basis In Equity For Continuing The
Injunction In Modified Form .............................................................................. 7

II.    THE INVALIDATION OF THE SYSTEM CLAIMS UNDERMINES THE
INJUNCTION AGAINST THE SALE OF CONFIGURATIONS 2, 3 AND 5 ............. 11

     A.     ePlus Does Not Refute Lawson's Argument That The Mere Sale Of A
Product By A Manufacturer Can Constitute Neither Direct Nor Indirect
Infringement Of A Method Claim ...................................................................... 11

     B.     ePlus's Argument That Purported Findings Of Contributory Infringement
Are Foreclosed As A Matter Of Res Judicata Is Baseless .................................. 13

III.   ON THE EXISTING RECORD, EPLUS CANNOT ESTABLISH
ENTITLEMENT TO INJUNCTIVE RELIEF FOR THE METHOD  OF CLAIM
26 UNDER THE *EBAY* FOUR-FACTOR TEST ........................................................ 14

     A.     The Current Record Shows No Irreparable Harm To ePlus Caused By
Infringement Of Claim 26 .................................................................................. 15

     B.     ePlus Has An Adequate Remedy At Law ........................................................... 19

     C.     Balance Of The Hardships .................................................................................. 19

     D.     Public Interest Does Not Favor An Injunction ................................................... 20

CONCLUSION .................................................................................................................... 20

## INTRODUCTION

When the Court considered the remedy question in this case in May 2011, the record consisted of jury findings that three Lawson software configurations infringed two system claims and three method claims.[1]  The jury's verdict, ePlus argued, "was important to the scope of the injunction."  4/4/11 Hearing Tr. at 101.  On remand from the Federal Circuit, the judgment based on the system claims has been invalidated as a matter of law and the judgment based on two of three method claims has been vacated: only method claim 26 of the '683 patent ("claim 26") remains in the case.

Lawson's motion presents these questions: if the Court had only the jury infringement finding of method claim 26 as a predicate for the remedial phase of the case in 2011, a) would the Court have entered an injunction; and, if so, b) what would be the scope of relief that the record would support?  The Federal Circuit's mandate "to consider what changes are required to the terms of the injunction consistent with this opinion," *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012), requires the Court to address, and answer, those questions.

ePlus contends that the Federal Circuit's decision amounts to "a simple directive to correct the injunction" which the Court can implement simply by removing Configuration No. 2 from the case.  ePlus Inc.'s Brief in Opposition to Motion to Dissolve or Modify Injunction ("Opposition") at 11.  There is no such "simple directive" in the opinion.  The Federal Circuit mandated this Court to "consider what changes are required," and such consideration inherently invokes the four-factor test of *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), which is appropriately applied in the first instance by this Court and not the Court of Appeals.  When this

---

[1]    This case went to the jury on 38 separate questions of alleged infringement of 12 different patent claims, in three patents, asserted against five multi-component procurement systems.  The jury returned 27 findings of non-infringement with respect to Lawson's core system and EDI, entirely exonerating two of the five accused configurations (Configuration Nos. 1 and 4), and eliminating claims of one patent from the case.  *See* Jury Verdict (D.I. 600).

Court last considered the remedy, in May 2011, Configuration Nos. 3 and 5 had been found to infringe system and method claims, and the scope of the injunction took account of those findings. The system claims, however, should never have gone to the jury or been part of the remedial predicate. This Court has never considered whether injunctive relief would be appropriate against Configuration Nos. 3 and 5 based on a finding of infringement of method claim 26, much less whether such an injunction should bar "making, using, offering to sell, or selling," *see* D.I. 729, products that have substantial non-infringing uses outside of practicing method claim 26.

Whether any record could support an injunction on the basis of method claim 26 alone is not before this Court, as ePlus has made a decision to rest on the record it made in 2011. For the reasons stated below, Lawson contends that the record, having been stripped of the system claims, cannot support any injunction.

## ARGUMENT

## I.   THE FEDERAL CIRCUIT MANDATE DIRECTS THE COURT TO RECONSIDER THE MAY 2011 INJUNCTION

Fresh consideration of the injunction must occur because of the Federal Circuit mandate. As set forth in Lawson's motion, Federal Rule of Civil Procedure 60(b)(5) provides an appropriate procedural setting for implementing that mandate.

### A.   ePlus's Analysis Of The Law Concerning The Evaluation Of Injunctions Is Wrong

Rule 60(b)(5) provides that a court may relieve a party from compliance with an injunction when it is "based on an earlier judgment that has been reversed or vacated" or where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). In describing the proper legal framework under Rule 60(b)(5), ePlus cites to and primarily relies on *United States v. Swift & Co.*, 286 U.S. 106 (1933). That case is inapposite for two reasons.

2

First, like many cases that address requests to modify injunctions, *Swift* concerned whether changes in conditions after entry of the injunction warranted revision of the restraints originally imposed. *Id.* at 113. There, the original predicate for the injunction was not questioned. Here, a direct appeal eliminated the broad system claims as a matter of law and those claims were part of the original basis for the Court's broad injunction against Configuration Nos. 3 and 5. *ePlus*, 700 F.3d at 520; D.I. 728 at 9-10. Lawson does not seek modification here based on post-judgment changes in the computer software market or the status of ePlus: the direct appeal impeached the basis for the May 2011 Injunction. Consideration of the injunction "consistent with [the Federal Circuit] opinion," *ePlus*, 700 F.3d at 509, requires the Court to address the remedy question with the premise that the jury returned an infringement verdict as to method claim 26 only.

Second, even if the Court chose to consider the remand under the rubric of changed circumstances, the Supreme Court has abandoned *Swift*'s stringent rule allowing modification on showing that the continuation of restrictions would amount to a "grievous wrong." *Swift,* 286 U.S. at 119. Now, courts are instructed to take a "more flexible" approach to modification of injunctions as circumstances warrant. *See Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 380 (1992) (Rule 60(b)(5) "permits a less stringent, more flexible standard."); *Bd. of Educ. v. Dowell*, 498 U.S. 237, 248 (1991). Accordingly, "a flexible standard that applies to all types of cases . . . has been adopted in recent Fourth Circuit cases." *Life Techs., Inc. v. Promega Corp.*, 189 F.R.D. 334, 336 (D. Md. 1999); *see, e.g., Alexander v. Britt,* 89 F.3d 194, 197-98 (4th Cir. 1996) ("In both cases [*Dowell* and *Rufo*], the [Supreme] Court eschewed *Swift*'s rigid 'grievous wrong' standard in favor of a more flexible approach appropriate to the situation); *Small v. Hunt*, 98 F.3d 789, 795 (4th Cir. 1996).

While "neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided[,] [n]evertheless the court cannot be required to disregard significant changes in law or facts." *System Fed'n No. 91 Ry. Emps'. Dep't v. Wright*, 364 U.S. 642, 647 (1961). Of course, Lawson does not dispute the Federal Circuit's affirmance of the finding that method claim 26 was infringed through the use of Configuration Nos. 3 and 5. The question of what remedy flows from that, however, is a very different matter. The genius of equity is that it allows courts to tailor remedies to specific facts and objectives. Where a material predicate for the injunction has changed incontestably and as a matter of law, re-examination of an injunction's appropriateness and scope follows as a matter of course.

Despite ePlus's assertions to the contrary, *see* Opposition at 4-7, courts routinely modify or dissolve injunctions where the remedy is "based on an earlier judgment that has been reversed or vacated" or where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Where, as here, an injunction rests on a legal and factual foundation that has been overturned and vacated in substantial part, the need for and nature of any relief will be re-examined. *See, e.g.*, *Flexiteek v. Plasteak, Inc.*, No. 08-60996-CIV, 2012 U.S. Dist. LEXIS 156286, at *34 (S.D. Fla. Sept. 10, 2012) (finding that "it would be inequitable and unjust to let stand, let alone enforce, an injunction" given the PTO's cancellation of the asserted claim); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431, 2012 WL 761712 (N.D. Cal. Mar. 8, 2012) (allowing briefing on the subject and reconsidering its prior injunctive decree).[2]

---

[2]     ePlus states that in *Fresenius* "the district court followed the Federal Circuit's express directive to reconsider the royalty rate but, contrary to the intimation in Lawson's brief, ***it did not reconsider whether a permanent injunction should have been granted nor did it conduct a new evidentiary hearing on that point even though several claims had been held invalid on appeal***." *See* Opposition at 11-12 (emphasis in original). This characterization is misleading. The Federal Circuit invalidated all of the claims in two of the three asserted patents, vacated the damages award, and remanded. The district court allowed briefing on the issue of the impact of

**B.    The Reversal As To Four Out Of Five Infringed Claims Presents Remedial Issues This Court Has Never Considered**

The Court's analysis at the time of the May 2011 Injunction was predicated on the jury's findings that three of Lawson's configurations infringed five separate claims.  Specifically, the jury found that Configuration No. 2 infringed system claim 1 of the '172 patent and Configuration Nos. 3 and 5 infringed system claim 1 of the '172 patent, system claim 3 of the '683 patent, and method claims 26, 28 and 29 of the '683 patent.  D.I. 600 (Jury Verdict Form).  That predicate changed dramatically when the Federal Circuit invalidated both system claims as a matter of law and vacated the infringement findings related to method claims 28 and 29.  *ePlus,* 700 F.3d at 523.  The invalidation of the system claims that ePlus had put at the core of its case and of its remedial argument to block Lawson from selling infringing systems is in no way "limited," as ePlus professes.

The injunction against Configuration No. 2 rested on the system claims alone, so there is no argument for continuing that restraint.  D.I. 728 at 9.  But the Federal Circuit's invalidation of the system claims did more than free Configuration No. 2 for sale and use in commerce.  The software comprising Configuration No. 2 is also in Configuration Nos. 3 and 5, but the latter have additional modules of Punchout, or Punchout and EDI.  *Id.* at 9-10.  There is ample functionality of the latter two configurations when used just as Configuration No. 2.  Because, under the Federal Circuit's ruling, Configuration No. 2 is non-infringing, the use of Configuration Nos. 3 and 5 to do the tasks of Configuration No. 2 (*e.g.,* access and search the Item Master) is non-infringing.  The fresh remedial issue to address is not whether an injunction is appropriate to address infringement based on the *sale* of Punchout or EDI modules, but

_____

such findings on the scope of the injunction but ultimately did not reach the injunction question because "the patent expired [and] there are really no issues with respect to the injunction that need to be addressed."  Ex. A (*Fresenius*, D.I. 1156 at 225:3-6).

whether such a remedy is appropriate to address infringement from *use* of the add-on modules to practice the method of claim 26. This Court has never considered the significance of the substantial non-infringing uses of Configuration Nos. 3 and 5 to the remedy in this case. ePlus has no basis to suggest that this argument has been made and rejected, *see* Opposition at 14, because the scope and nature of the substantial non-infringing uses of Configuration Nos. 3 and 5 could not be perceived until the Federal Circuit's decision invalidating the system claims and exonerating Configuration No. 2.

ePlus sets up a straw man when it argues that the Injunction was not "premised solely or even primarily on Configuration 2 or infringement of the system claims." *See* Opposition at 8. Contrary to ePlus's mischaracterizations, Lawson has never argued that the Injunction was based "solely" on the system claims, nor does it contend that injunctive relief is barred as a matter of law. Lawson does argue that the Court has never found that infringement with respect to method claim 26 alone is sufficient to warrant an injunction.

The Court's Injunction Order does not contain any factual findings unique to the infringement of method claim 26 and ePlus cites none in its brief. *See, e.g.,* Opposition at 10. Instead, all infringing configurations and all infringing claims were mixed together in ePlus's presentation of evidence, and the Court's analysis understandably followed suit. *See* ePlus's Motion For Permanent Injunction, D.I. 641 at 9-11 (discussing alleged harm caused by infringement of all claims generally and competition with Lawson products generally). That analysis is now inapplicable. All the system claims have been held invalid. The number of customers with systems even capable of infringing has shrunk from 864 to approximately 150. And the remaining systems capable of infringing, Configuration Nos. 3 and 5, are more commonly used for non-infringing purposes. In light of these changed circumstances, the Court

6

must go back and consider on the existing record whether an injunction could even issue based on the single remaining method claim.

C. **The Federal Circuit Explicitly Instructed This Court To Reconsider The Changes Needed To The Injunction Consistent With Its Opinion, Which Requires That This Court Identify A Basis In Equity For Continuing The Injunction In Modified Form**

After "revers[ing] the district court's determination that the system claims are not indefinite" and "vacat[ing] the judgment of infringement entered based on claims 28 and 29 of the '683 patent," *ePlus,* 700 F.3d at 523, the Federal Circuit, without addressing the merits of whether an injunction remains warranted, remanded for this Court "to consider what changes are required to the terms of the injunction, consistent with this opinion." *Id.*

Instead of referring to the language of the mandate, ePlus loosely interprets the opinion, stating that "[w]hether characterized as *res judicata* or collateral estoppel," *see* Opposition at 4, the opinion affirmed "the Court's decisions on infringement and injunctive relief." *Id.* at 5. It characterizes the mandate as embodying an affirmance of this Court's injunction "with only a simple directive to *correct* the injunction." *See* Opposition at 11 (emphasis added). ePlus further argues that because "the appellate court provided *no* instruction to this Court to 'dissolve' or 'vacate' the injunction, nor did it instruct this Court to hold yet another evidentiary hearing and reapply the four-factor test," this Court is precluded from doing so. *Id.* at 1.

ePlus's recasting of the Federal Circuit opinion ignores the dramatic alteration of the legal predicate for the injunction and the nature of the mandate. The mandate rule provides that a district court is only bound to the *scope* of the remand issued by the court of appeals. *United States v. Moore*, 131 F.3d 595, 597-600 (6th Cir.1997). Thus, according to the rule of mandate, "although lower courts are obliged to execute the terms of a mandate, they are free as to 'anything not foreclosed by the mandate.'" *United States v. Kellington*, 217 F.3d 1084, 1092-

1093 (9th Cir. 2000) (citation omitted).  As such, the lower court "may consider and decide any matters left open by the mandate of th[e appellate] court."  *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 259 (1895); *see also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."); *Turpin v. United States*, No. 93-2342, 1994 U.S. App. LEXIS 16952, at *8-9 (4th Cir. July 11, 1994) ("[T]he law of the case doctrine does not govern issues which the appellate court did not address.").  Further, "a district judge is not flouting the mandate by acting on a motion raising 'later events' after trial because 'the appellate mandate relates to the record and issues then before the court and does not purport to deal with possible later events.'"  *Id.* (citing *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 19 (1976)).

As such, "[o]n remand, a trial court is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision."  *Casey v. Planned Parenthood*, 14 F.3d 848, 857 (3d Cir. 1994) (citation omitted).  And in determining "what was heard and decided" by the appellate court, "[a] trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces," *Casey*, 14 F.3d at 857, as well as bearing in mind the "settled practice" of courts with respect to the applicable substantive law. *Sanford Fork*, 160 U.S. at 256.

Thus, the Federal Circuit's mandate for consideration of the injunction "consistent with this opinion" effectively requires this Court to exercise its discretion in addressing remedial measures.  Where, as here, the instruction to reconsider the appropriateness of continued injunctive relief is "not specifically mentioned in the opinion," the Court "need only [act] consistent[ly] with the mandate."  *Gerald M. Moore & Son v. Drewry*, 945 F. Supp. 117, 122

(E.D. Va. 1996).  Reconsideration of the propriety of injunctive relief has not only been left open by the mandate but is necessitated by the Federal Circuit's invalidation of the system claims and its direction "to consider what changes are *required*" here.

There may be circumstances when a court could entertain a request for a revised injunction without holding an evidentiary hearing, but that could be justified only where the trial court explicitly finds its prior findings sufficient to sustain the relief entered.  That is not the case here.  *See, supra*, Section III.  The cases ePlus cites as "nearly identical factual circumstances" to this one, *see* Opposition at 6, to show that no hearing is needed, are all distinguishable.   In every one of these cases, the portions of the judgment reversed by the Federal Circuit were cleanly cut apart from, and did not overlap with, findings necessary to the continuation of portions of the injunction.  Not one involved the situation here: the invalidation of system claims that had supported a broad injunction against a product leaving only a method claim to justify the restraint.[3]

ePlus skips over the lack of evidence to support the existing injunction based on infringement of only method claim 26 by arguing that the Federal Circuit's opinion somehow "fully resolved" this issue, *see* Opposition at 1, "and [that] this Court's role on remand is simply

---

[3]      In *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006), the Federal Circuit affirmed infringement findings with regard to six claims of one patent but held an infringed claim of a separate patent invalid as a matter of law.  Given that the Federal Circuit affirmed six out of seven infringement findings, and that the reversed finding was on a separate patent, the district court was able to base its decision to continue the injunction on severable infringement findings made with respect to the remaining separate patent.  In *MPT, Inc. v. Marathon Labels, Inc.*, 258 F. App'x 318 (Fed. Cir. 2007), the Federal Circuit reversed the injunction only to the extent it prohibited sales to locations outside the United States.  Accordingly, the court's prior findings undisputedly continued to justify the grant of equitable relief.  Finally, in the remaining case cited by ePlus in support of its blue-pencil approach, *Broadcom Corp. v. Qualcomm Inc.,* 585 F. Supp. 2d 1187, 1189 (C.D. Cal. 2008), the Federal Circuit only found one of three asserted patents to be invalid.  As with *Pfizer*, the district court was able to base its decision to continue the injunction on severable findings made with respect to the remaining two separate patents.

to follow the Federal Circuit's mandate," *id., assuming* the existence of the predicates necessary to support its "revised" injunction.  There is, however, no basis for that assumption, and ePlus's position cannot be reconciled with governing principles of law.[4]

Despite what ePlus seems to imply, there is no presumption under *eBay* of any right to ongoing injunctive relief.  On the contrary, injunctive relief is an "extraordinary remedy," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982), "to be used sparingly, and only in a clear and plain case."  *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citation omitted).  Therefore, to determine the scope of the changes required to the injunction, the appropriateness of ongoing injunctive relief must first be ascertained by applying the four *eBay* factors to the record.  This Court, thus, correctly decided that to entertain ePlus's request for ongoing injunctive relief, it first had to evaluate the applicability of the four-factor test to the changed circumstances of the case.[5]

---

[4]    It is telling that despite this Court's clear directive allowing the parties the opportunity to argue the merits of ongoing equitable relief at an evidentiary hearing, ePlus (once again) attempts to persuade the Court that such a hearing is unnecessary because the Federal Circuit "fully resolved" all issues.  *See* Opposition at 1.  The reason for ePlus's posture is obvious: the record readily reveals a lack of findings with respect to claim 26 alone that support continued injunctive relief.  Further, as discussed in detail in Lawson's Statement of Position On The Injunction, D.I. 990 at 10, the necessity of an evidentiary hearing is grounded in law.  *See, e.g., United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 249 (1968); *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 976, 981 (3d Cir. 1982); *Brown v. Neeb*, 644 F.2d 551, 560 (6th Cir. 1981); *Chance v. Bd. of Exam'rs*, 561 F.2d 1079, 1086 (2d Cir. 1977). ePlus does not address the body of case law cited by Lawson in its Statement.

[5]    ePlus's argument that Lawson should be precluded on this issue altogether because it "did not even appeal the propriety of the injunction under the four-factor test," *see* Opposition at 6, is nonsensical.  Lawson proceeded in the most "direct and obvious way" by attacking the merits of the core findings of the case, namely the findings of validity and infringement, which also formed a basis for the Injunction.  *A. D. Howe Mach. Co. v. Dayton*, 210 F. 801, 805 (4th Cir. 1913) (Where the court of appeals "is of opinion that the patent is on its face absolutely void, it would be a waste of time and an unnecessary continuance of litigation to simply enter an order setting aside the injunction and remanding the case for further proceedings.  The direct and obvious way is to order a dismissal of the case, and thus end the litigation.").  By seeking to reverse all validity and infringement findings, Lawson sought to reverse the Injunction.

## II.    THE INVALIDATION OF THE SYSTEM CLAIMS UNDERMINES THE INJUNCTION AGAINST THE SALE OF CONFIGURATIONS 2, 3 AND 5

### A.    ePlus Does Not Refute Lawson's Argument That The Mere Sale Of A Product By A Manufacturer Can Constitute Neither Direct Nor Indirect Infringement Of A Method Claim

ePlus has not effectively answered Lawson's case law establishing that method claims are not infringed simply by the sale of a system *capable* of infringing use.  D.I. 1012 at 4-8.  ePlus's main response is to avoid the issue by claiming that the Federal Circuit fully resolved the question.  *See* Opposition at 12.  The Court should reject ePlus's argument.

*First*, the law is unequivocal that the mere sale of a product capable of substantial non-infringing uses constitutes neither direct nor indirect infringement of a patent.  *See, e.g., Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); *see also* D.I. 1012 at 4-8.  ePlus does even attempt to refute this well-settled principle of law.  Instead, it argues that there are "[o]ther cases *not* cited by Lawson [that] demonstrate that an injunction against sales of products used to infringe method claims is entirely appropriate."  *See* Opposition at 13 (emphasis in original).  But in the four cases ePlus cites to support that proposition, the accused product had no substantial non-infringing uses.[6]  This distinction is dispositive.  The sale of a product with no

---

[6]    In *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 839-40, 861 (Fed. Cir. 2010), the Federal Circuit affirmed the district court's injunction prohibiting Microsoft from "selling, offering to sell, and/or importing" the accused products, *id.* at 861, in part because "the jury could have reasonably concluded that the custom XML editor had no substantial, non-infringing uses."  *Id.* at 851.  In *MPT, Inc. v. Marathon Labels, Inc.*, 258 F. App'x 318 (Fed. Cir. 2007) and *Johns Hopkins University v. Datascope Corp.*, 513 F. Supp. 2d 578 (D. Md. 2007), an injunction prohibiting sales of products was granted where Defendants were found liable for contributory infringement, and, as a consequence, where the adjudged-infringing products had no substantial non-infringing uses.  *See MPT* at 319; Ex. B (Jury Verdict in *Johns Hopkins*).  Finally, in *Tristrata Technology, Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456 (D. Del. 2006), the court enjoined the Defendant from selling the products "that were found to have been used to contributorily infringe the patents-in-suit," Ex. C (Injunction Order), because the accused products "were not suitable for substantial non-infringing uses." *Tristrata Tech.*, 423 F. Supp. 2d at 466-67.

other non-infringing uses may support a finding of infringement, *see, e.g., ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313; *see also* D.I. 1012 at 4-8, but that is simply not the case here.  The accused products—Configuration Nos. 3 and 5 or products not more than colorably different from them—would not infringe as a matter of law when used in the same fashion as Configuration No. 2.

Second, ePlus's assertion that the sale of Configuration Nos. 3 and 5, which are capable of substantial non-infringing uses, "is no longer subject to debate in light of the Federal Circuit's ruling that Lawson directly and indirectly infringes claim 26," *see* Opposition at 12, is meritless.  When this case went to the Federal Circuit, no question of substantial non-infringing use was presented because the judgment encompassed sales of Configuration Nos. 2, 3, and 5.  Reversal of the system claims as a matter of law rendered Configuration No. 2 (and those parallel components as incorporated in Configuration Nos. 3 and 5) non-infringing under the judgment.  Far from foreclosing consideration of substantial non-infringing uses, this Court is bound by the Federal Circuit's invalidation of the system claims and must recognize the consequences of Configuration No. 2 being non-infringing.  On this legal predicate, the mere sale of Configuration Nos. 3 and 5 cannot support a finding of direct or indirect infringement.

Third, the Federal Circuit's opinion itself shows that sales alone were not held to be a basis for the judgment of infringement of method claim 26.  The Federal Circuit's analysis of Lawson's infringement of claim 26 did not once refer to the sales or licensing of Lawson's products.  *ePlus,* 700 F.3d at 520-21.  Although ePlus glosses over this issue, the Federal Circuit indicated that the bases of Lawson's liability findings with respect to claim 26 are limited to its "install[ation], maint[enance], demonstrat[ion], and manage[ment]" of Configuration Nos. 3 and 5 of its systems.  *Id.*  The Federal Circuit, consistent with the law, nowhere states that the *sale* of

Configuration Nos. 3 and 5 alone would infringe the method of claim 26, thus ensuring that the Injunction could be "narrowly tailor[ed] to fit the specific adjudged violations," without any "unnecessary restraints on lawful activity." *Riles v. Shell Exp. & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002); *see also* D.I. 1012 at 4-5.

### B.   ePlus's Argument That Purported Findings Of Contributory Infringement Are Foreclosed As A Matter Of Res Judicata Is Baseless

ePlus's avoidance of the implication of the Federal Circuit's mandate is perhaps most apparent on page 14 of its Opposition where it cites to the patent statute to support its contributory infringement argument.  In its brief, ePlus argues that "[u]nder 35 U.S.C. § 271(c), one who 'sells within the United States . . . a material or apparatus for use in practicing a patented process . . . shall be liable as a contributory infringer.'"  *See* Opposition at 14. Restoring the second elision changes the entire meaning.  The statute actually reads that one who:

> sells within the United States . . . a material or apparatus for use in practicing a patented process, *constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use*, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (restored material in *italics*).  ePlus elided the term "substantial non-infringing use" from its citation of 35 U.S.C. § 271(c).  On the face of the statute, sale of an apparatus alone is not sufficient for contributory infringement.

The accused products are Configuration Nos. 3 and 5 which indisputably include all the elements of non-infringing Configuration No. 2 and could function as such.  Where, as here, there are undisputed non-infringing uses, there can be no finding of contributory infringement. *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1275 (Fed. Cir. 2004); *see also* D.I. 1012 at 6-8.  The Court never addressed this significant circumstance when it

considered the question of remedy in 2011.[7]  That the Federal Circuit's affirmance of the district

court's denial of JMOL of non-infringement of claim 26 was explicitly limited to "direct and

induced infringement," *ePlus,* 700 F.3d at 521, only further underscores that there can be no

claim of contributory infringement against Lawson in this case.

## III.   ON THE EXISTING RECORD, EPLUS CANNOT ESTABLISH ENTITLEMENT TO INJUNCTIVE RELIEF FOR THE METHOD OF CLAIM 26 UNDER THE *EBAY* FOUR-FACTOR TEST

This Court has indicated "that it is appropriate to reassess the propriety and scope of an

injunction, as directed by the United States Court of Appeals for the Federal Circuit, in

perspective of additional briefing on the topic of the four factors that must be considered in

assessing the issuance of an injunction, as prescribed in *eBay*."  D.I. 1019 at 2.  Under *eBay,* and

no different than in any application for injunctive relief, "[b]efore a court may grant a permanent

injunction, the patentee must satisfy a four factor test for injunctive relief."  D.I. 728 at 11 (citing

*eBay*, 547 U.S. at 391 and *Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1327 (Fed. Cir. 2008)).

ePlus, which bears the burden to establish its claim for injunctive relief, has stated its belief that

an evidentiary hearing is not necessary.  3/14/13 Tr. at 8-9.  Thus, the question for the Court is

whether the record ePlus made in 2011 is sufficient to sustain ePlus's request to enjoin Lawson

from "making, using, offering to sell, or selling" Configuration Nos. 3 and 5 or colorable

variations thereof where the legal predicate is now a jury finding of infringement as to method

---

[7]     ePlus also argues that "[t]his Court cannot disregard ePlus presented uncontroverted expert testimony at trial that the configurations at issue contributorily infringe the method claims (including method claim 26) and have no substantial noninfringing uses."  *See* Opposition at 14. Even setting aside ePlus's flawed characterization of the evidence presented at trial, ePlus's statement is now manifestly incorrect.  After all, the Federal Circuit's opinion changed the legal and factual landscape of this case in important ways, one of which is that Configuration Nos. 3 and 5 now indisputably have substantial non-infringing uses (*i.e.* Configuration No. 2).

claim 26 alone.  Lawson submits that the record is insufficient and the injunction should be dissolved.[8]

### A.    The Current Record Shows No Irreparable Harm To ePlus Caused By Infringement Of Claim 26

"[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements:  1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple, Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).  In other words, the harm that flows from the alleged infringement is "the only harm that should count." *Id.* at 1375.  Any competitive injury to ePlus that does not directly result from infringement by practicing the method of claim 26 is not cognizable for purposes of the irreparable harm analysis.  Thus, for example, sales of noninfringing configurations such as Configuration No. 2, or sales of a product that includes an infringing feature that does not drive customer demand for that product, are irrelevant to the irreparable harm analysis.  *See Apple*, 695 F.3d at 1375 (affirming denial of injunction where patented feature did not drive consumer demand for the accused product).

The Federal Circuit's judgment renders any sale or use of Configuration No. 2 non-infringing and legitimate.  Lawson is free to sell Configuration No. 2, Configuration No. 4, or any combination of the two.  Any sales ePlus loses or has lost in that competition is not legally significant to the remedy here.  The record is materially different from the record the Court

---

[8]    A civil contempt hearing based on the May 2011 Injunction is scheduled to start on April 2, 2013.  Given the consideration of remedy that Lawson submits the Federal Circuit remand requires, the Court should address this motion in advance of any contempt hearing.  It is a matter of fair notice to Lawson—and to ePlus—concerning the upcoming hearing.  The old predicate is gone.  What the Court decides as to the existence of an injunction, or the scope of relief, would determine whether a hearing takes place and what proof would be relevant to determining contempt.

considered in 2011.  Additionally, Configuration Nos. 3 and 5 do not infringe unless used to practice the method of claim 26; use to access the Item Master database and carry out the functions of Configuration No. 2 is not infringing, and any harm to ePlus from competition in that regard is also not injury to ePlus.  That too is part of the correct predicate the Court should have considered in 2011.

ePlus's arguments and citations to the Court's previous injunction order describing competition between ePlus and Lawson overlook the elimination of the system claims.  *See* Opposition at 10, 16-20.  The Court has never considered whether ePlus has been harmed by competition stemming from the practice of method claim 26 alone.  That is precisely why the current record—which has no severable findings as to claim 26—cannot support an irreparable harm finding.  *See* D.I. 728 at 14 (discussing lost sales or market share due to "infringing products"); *id.* at 18 (finding that "the two companies' products" compete for certain business).

ePlus's citations and references to the prior record only further underscore the lack of findings specific to method claim 26.  For example, ePlus cites (in bold) the Court's previous finding that "direct competition between patent owner and infringer in the market proved by this record provides significant support for a finding of irreparable harm."  *Id.* at 18 (citing D.I. 728 at 21-22).  A review of the hearing shows that "the market proved by this record" was the market for sales of full e-procurement systems including the non-infringing Configuration No. 2, and that there was no focus on competition in a market for the marginal functionality added by the Punchout and EDI modules that, added to Configuration No. 2, result in Configuration Nos. 3 or 5.  "[T]he market proved by this record" included more than 860 Lawson e-procurement customers, far more than the subset of approximately 150 in that e-procurement market who have Configuration Nos. 3 or 5.  Beyond dispute, the elimination of the system claims changed

16

"the market" and "this record" significantly.  What the Court must now consider is a market of shrunken scope, and for which there is no distinct proof.

As another example, ePlus relies on the Court's finding that "ePlus has also shown lost sales and lost market share because of Lawson's infringement" to support its current claim of irreparable harm.  *Id*. at 18 (citing D.I. 728 at 22-23).  "Lawson's infringement" at the time encompassed five infringement claims, including two system claims, and included sales of Configuration No. 2, which was the basis for including more than 700 of the customers in the market analysis.  None of that conduct is infringing as a matter of law and ePlus cannot, therefore, rely on that old finding to sustain its injunction.

Indeed, a very relevant piece of the record from 2011 supports Lawson.  ePlus admitted that there is no harm directly arising from infringement of claim 26 when it stated that "not all of [Lawson]'s customers have Procurement Punchout, . . . Procurement Punchout does not drive S3 sales, and [Lawson] has never won a sale merely because of its Punchout product."  *See* D.I. 641 at 20.  ePlus's attempts to walk away from this statement are feeble.

At page 16 of its brief, ePlus cites a Court finding that ePlus and Lawson compete over hypothetical customers who have neither RSS nor Punchout, but who seek further functionality. Such a Lawson customer, having neither RSS nor Punchout, might have had Configuration No. 1, which the jury had found to be non-infringing.  At the time of the May 2011 Injunction, such a Lawson customer who chose to upgrade by licensing RSS instead of one of ePlus's competing products, would have acquired Configuration No. 2, which had been found to infringe the asserted system claims.  The situation is now entirely different:  with the system claims invalidated, competition between Lawson's Configuration No. 2 and ePlus's products is entirely proper and cannot be enjoined.  The record contains nothing to show whether ePlus's products

17

are currently in competition with the Lawson configurations that have the capacity to be used to infringe method claim 26.

That there remain 150 customers with configurations capable of practicing the infringing method does not establish that ePlus has been irreparably harmed.  If existence of some infringement, however small, were all it took for an injunction to issue, then injunctions would issue in every patent case, contrary to the express teachings of *eBay*.  There has been no finding that these 150 customers reflect some distinctive submarket for e-procurement systems, that ePlus competes for a significant number of those 150 customers, or that any such competition has irreparably harmed ePlus's reputation or market share.  At the time of the May 2011 Injunction, Lawson was allegedly "unfairly competing," *see* Opposition at 21, with respect to 864 customers.  Now, however, that competition with respect to 700 of those customers involves no infringement at all as a matter of law.  Not only does that indicate that any harm to ePlus has been diminished to a fraction, but it also reveals that any pressure on ePlus's business from perfectly legitimate competition overwhelms any possible harm stemming from infringement when customers practice the method of claim 26.  *See Belden Techs Inc. v. Superior Essex Comms.*, 802 F. Supp. 2d 555, 577 (D. Del. 2011) (no irreparable harm where it was unclear whether lost sales were a result of infringement of the patent).

In sum, ePlus cannot rely on the Court's previous findings because those findings were made on a vastly different record with a vastly different definition of what constitutes the relevant "market" and "infringement."  The Court has never considered whether ePlus is irreparably harmed based on infringement of claim 26 alone.[9]

---

[9]    ePlus confusingly argues that 150 customers using Configuration Nos. 3 and 5 is somehow worth $22.5 million to ePlus.  That is erroneous for a number of reasons.  First, it assumes that ePlus would gain 100% of these customers if Lawson lost them, which is clearly

### B.      ePlus Has An Adequate Remedy At Law

Whether there has been irreparable injury and whether there is an adequate remedy at law are two sides of the same coin.  Thus, for all the reasons ePlus has not been irreparably injured and has not established a record of irreparable injury caused by infringement of claim 26 alone, ePlus has an adequate remedy at law.

ePlus behaves as though any finding of infringement whatsoever gives it the right to an injunction.  That is not the law.  Where the claim covers "a small component of the product [the plaintiff] seek[s] to produce . . . legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest."  *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440, 441 (E.D. Tex. 2006) (quoting *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring), and denying injunction where patent covered "a small component of [defendant's] software").  Nor does the lack of an injunction mean that Lawson would be free to continue selling Configuration Nos. 3 and 5 (unmodified, with RSS) given that ePlus would, of course, have the right to file an infringement action and Lawson would face the threat of treble damages.

### C.      Balance Of The Hardships

ePlus does not deny that Lawson has suffered significant hardship in having been enjoined from selling products that are now held to have never been infringing for the past 20 months.  Meanwhile, ePlus has reaped the rewards of large settlements from licenses to invalid patent claims.  D.I. 728 at 8.  That Lawson was able to design around the claims that have now been found invalid is of no moment as Lawson should never have been forced to spend resources

---

not borne out by the record and ePlus has made no attempt to quantify lost sales.  Second, it assumes that these customers, who could not practice the method of claim 26, would *replace their entire system* (including the core procurement software) rather than use Configuration No. 2 elements only or seek other alternatives to replace a Lawson add-on module that is capable of practicing claim 26.

on those redesigns or to alter product functionality in the first place. Benefit to ePlus by the continuation of the injunction is (at best) negligible. In fact, ePlus has not pointed to any evidence showing that it has suffered any harm caused by infringement of claim 26. On the other hand, continued injunctive relief would cause great harm to Lawson and its customers who would be enjoined from the sale, service, and use of configurations that are, more often than not, used for non-infringing purposes.

### D.   Public Interest Does Not Favor An Injunction

ePlus has failed to show that public interest militates in favor of continued injunctive relief. ePlus's argument that the Court already decided that it would not consider the reexamination proceedings is unconvincing. At the time of trial and the Injunction proceedings, the reexamination proceedings were years from completion and the Court determined that it was uncertain what the outcome would be. That is no longer the case. Not only has the reexamination ruling been made, but it has been affirmed *twice*, and ePlus's final appeal, filed May 24, 2012, is not far from completion. *See* Ex. D, Notice of Appeal. Further, ePlus's argument that Lawson chose not to appeal the validity of claim 26 is nonsensical. Lawson's "tactical" decision has no impact whatsoever on the outcome of reexamination proceedings.

### CONCLUSION

For the foregoing reasons, and for the reasons stated in Lawson's opening brief, the Court should implement the Federal Circuit's mandate on remand of this case and dissolve the May 2011 Injunction.

LAWSON SOFTWARE, INC.


By: _____/s/_____

20

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 21st day of March, 2013, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Paul W. Jacobs, II
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
pjacobs@cblaw.com
hwillett@cblaw.com

Jennifer A. Albert
David M. Young (VSB No. 35997)
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, DC 20001
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

Michael G. Strapp
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
mstrapp@goodwinprocter.com

 

 

 
/s/

Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

22