IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



EPLUS INC.,

    Plaintiff,

v.                              Civil Action No. 3:09cv620

LAWSON SOFTWARE, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT LAWSON SOFTWARE, INC.'S MOTION TO EXCLUDE IMPROPER OPINIONS AND ARGUMENTS FROM EPLUS'S EXPERTS AT THE CONTEMPT HEARING (Docket No. 896).

## BACKGROUND

On January 27, 2011, following a two week trial, a jury returned a verdict of infringement in favor of ePlus, Inc. ("ePlus") and against Lawson Software, Inc. ("Lawson") finding that several claims of three of the patents-in-suit had been infringed. The jury also rejected Lawson's defense that the patents-in-suit were invalid. Further, the jury held in favor of Lawson on ePlus' infringement charge as to a number of claims. ePlus moved for a permanent injunction, and, following an evidentiary hearing, briefing and argument, the Court entered the injunction (Docket No. 728). Subsequently, the United

States Court of Appeals for the Fourth Circuit vacated in part and affirmed in part the judgment entered on that verdict. The Federal Circuit also instructed this Court to assess how the injunction should be modified in perspective of the decision of the Federal Circuit.

Very shortly after the injunction was entered, Lawson began to market a product called Requisition Center ("RQC") which Lawson contended to be a design around solution to avoid the infringement held by the jury as to its Requisition Self-Service ("RSS") aspect of the several configurations adjudged by the jury to have infringed the ePlus patent. ePlus contends that RQC is not colorably different from RSS and that, therefore, Lawson should be held in contempt of the injunction order.

On September 9, 2011, ePlus initiated contempt proceedings, alleging that Lawson was in violation of the injunction. A schedule was set for discovery, pretrial proceedings, and hearing on the contempt issue.

During discovery both sides had experts prepare reports. ePlus relied on the experts whom it had called at trial, Dr. Alfred C. Weaver and Mr. Patrick Niemeyer, as to the non-damage issues. Mr. Niemeyer submitted an initial report of some 28 pages and a reply report of 23 pages. Dr. Weaver submitted an initial report of 82 pages and a reply report of 54 pages.

Lawson relied on a new expert not used at trial, Benjamin F. Goldberg. Dr. Goldberg submitted a report of 142 pages.

Dr. Goldberg's report reads like a brief. ePlus correctly points out that Dr. Golberg's opinions seem to proceed on the basis of claim constructions not reflected in the Markman opinion issued by the Court. And, he opines on legal matters and actually miscites trial testimony. Also, he uses attorney argument in certain places in his report. By separate Order, the Court has decided ePLUS INC.'S MOTION TO STRIKE PORTIONS OF LAWSON'S EXPERT REPORT AND EXCLUDE FROM THE CONTEMPT HEARING IMPROPER OPINIONS AND FOR EXPEDITED BRIEFING (Docket No. 882).

Dr. Weaver's report also seems to be rather much like an additional brief, but to a lesser extent than does the report of Dr. Golberg. Mr. Niemeyer's opening report is much more of the kind one would expect and is less like a brief. The same is true of Mr. Niemeyer's reply report. This Memorandum Opinion focuses therefore on the motion directed to Dr. Weaver but makes reference to the report of Dr. Goldberg to help set context.

## DISCUSSION

Fed. R. Evid. 702 permits the testimony of a witness who is qualified as an expert by knowledge, skill, experience, training, or education, if that expert's scientific, technical,

or other specialized knowledge would help the trier of fact to understand the evidence or to determine a fact in issue.

Dr. Weaver's opinions are more useful to the finder of fact in understanding the evidence or deciding an issue than are Dr. Goldberg's opinions. However, Dr. Weaver's reports present so many problems that there is scant room for praise. Mr. Niemeyer's report does not suffer from the same infirmities and appears actually to be of the sort that could be helpful to the trier of fact in understanding the evidence and in deciding a matter in issue.

The principal problems in the report of both Dr. Goldberg and Dr. Weaver appear to stem from the fact that, in light of the recent decision in TiVo Inc. v. Echostar Corp., 646 F.3d 869 (Fed. Cir. 2011), counsel were uncertain of how best to proceed in this case to conduct a contempt hearing. In TiVo the Federal Circuit affirmed the long-standing rule that "the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." TiVo Inc. v. Echostar, Corp., 646 F.3d at 882. The Federal Circuit also held that "the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." Id. Then, said the court, "[t]he primary

4

question on contempt should be whether the newly acquired accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" Id. (citation omitted).

The analysis that is called for "must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product . . . but on those aspects of the accused products that were alleged to be, and were a basis for, the prior finding of infringement and, the modified features of the newly accused product." Id. The Federal Circuit also commented that "[s]pecifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." Id.

The Court of Appeals, however, pronounced the guiding principle that the central issue is "whether that modification is significant," explaining that:

> [(1)] [i]f those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate; [and]

5

> [(2)] Conversely, when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement.

Id. at 883 (citations omitted). And, to that end, "the court is required to evaluate the modified elements of the newly accused product against the asserted claim on a limitation by limitation basis to ensure that each limitation continues to be met." Id. In doing so, the district court is bound by its prior claim constructions.

Counsel in this case are at odds as to what TiVo actually requires. Lawson takes the view that, in order to satisfy the Federal Circuit's comment that the focus is on the differences between "aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement and the modified features of the newly accused product,"[1] it is necessary to extract from the record what ePlus alleged and proved at trial. Thus, Lawson argues that the holding in TiVo necessitates an examination of the opening statements, the trial testimony, the documentary evidence, the

---

[1] Lawson finds further support for its suggested approach in the sentence of the Federal Circuit's opinion which says that "one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." Id.

6

instructions, the jury verdict, and the jury verdict form. ePlus argues that Lawson's approach calls for delving into the minds of the jurors, a task which is not capable of achievement.

Several district court decisions have attempted to apply the TiVo test. Unfortunately, in those cases, as in TiVo itself, the facts were relatively simple and the courts did not have significant difficulty in making the analysis called for by the Federal Circuit. In those cases, the courts dutifully performed both the colorable differences inquiry and the infringement inquiry called for by TiVo. See Merial Ltd. v. CIPLA Ltd., 2011 WL 2489753 (M.D. Ga. June 21, 2011); Petter Investments, Inc. v. Hydro Eng'g, Inc., 2011 WL 2935411 (W.D. Mich. July 18, 2011); nCUBE Corp. v. SeaChange Int'l, 809 F. Supp. 2d 337 (D. Del. 2011)(unpublished opinion). In no case, however, did the court find that there were not colorable differences and then go on to find that there was not infringement.

The Court is confident that the Federal Circuit, in TiVo, did not intend for district courts to attempt to devine what was in the mind of juries when they returned their verdicts. Further, the Court finds no instruction in TiVo that the Federal Circuit contemplated the recycling and reinterpretation of all the evidence at the trial in contempt proceedings. Moreover, the Court finds no warrant for construing TiVo to allow experts

7

in contempt proceedings to rehash the trial testimony or to explain what the documents in the trial showed, or to summarize the arguments of counsel to aid the Court in the "colorable difference" inquiry.

Therefore, expert testimony that follows that approach is of no assistance to the trier of the fact in understanding the evidence or in deciding a fact in issue. Accordingly, the Court has required the experts to limit their testimony to the three modified features that have been identified by Lawson as comprising the changes made to RSS to form RQC, and to explain why the modifications are thought to meet or not meet the "colorably different" standard set out in TiVo. (Hearing Transcript, February 29, 2012, pp. 4, 5, 6). Thereafter, the Court will hear evidence about why the modified products infringe, or do not infringe, the remaining product. That must be done by comparing the newly accused product against the asserted claim on a limitation by limitation basis. An Order has been issued that specifies the order of proofs on both topics.

**CONCLUSION**

For the reasons set forth above, DEFENDANT LAWSON SOFTWARE, INC.'S MOTION TO EXCLUDE IMPROPER OPINIONS AND ARGUMENTS FROM EPLUS'S EXPERTS AT THE CONTEMPT HEARING (Docket No. 896) is moot

as to Dr. Weaver, as to whom the motion will be denied as moot and the motion, insofar as it relates to Mr. Niemeyer, will be denied on its merits because none of the objections raised to Mr. Niemeyer have any merit.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 27, 2013