# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF *e*PLUS INC.'S POST-HEARING REPLY
## BRIEF WITH RESPECT TO INFRINGEMENT

Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000


Michael G. Strapp (admitted *pro hac vice*)          Craig T. Merritt (VSB #20281)
**GOODWIN PROCTER LLP**                              Paul W. Jacobs, II (VSB #16815)
Exchange Place                                       **CHRISTIAN & BARTON, LLP**
53 State Street                                      909 East Main Street, Suite 1200
Boston, MA 02109-2881                                Richmond, Virginia 23219-3095
Telephone: (617) 570-1000                            Telephone: (804) 697-4100

*Attorneys for Plaintiff ePlus Inc.*

TABLE OF CONTENTS

Page

I.   INTRODUCTION ...............................................................................................................1
II.  ARGUMENT.......................................................................................................................5
     A.   Lawson Fails To Rebut *e*Plus's Showing That Lawson's Sole
          Modification Does Not Render The Use Of Configurations 3 And 5 Non-
          Infringing ..................................................................................................................5
     B.   There Is More Than Sufficient Evidence To Find That Lawson And Its
          Customers Continue To Directly Infringe, And That Lawson Induces Its
          Customers' Infringement ..........................................................................................7
     C.   Lawson Plainly Has The Requisite Knowledge And Intent To Induce Its
          Customers' Infringement Using The RQC Configurations ......................................9
     D.   Lawson's Additional Arguments That It Is Not Inducing Infringement Are
          Meritless..................................................................................................................11
     E.   Lawson Is In Contempt For Inducing Its Customers' Continued Use Of
          RSS "In Parallel" With RQC ..................................................................................13
III. CONCLUSION..................................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
  154 F.3d 1345 (Fed. Cir. 1998)......................................................................................7

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  2013 WL 1149230 (M.D. Pa. Mar. 19, 2013)................................................................2

*Arlington Industries v. Bridgeport Fittings, Inc.*,
  2012 WL 3579607 (M.D. Pa. Aug. 17, 2012) ............................................................6, 7

*Brine, Inc. v. STX, L.L.C.*,
  367 F. Supp. 2d 61 (D. Mass. 2005) .............................................................................7

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2009)..................................................................................3, 10

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004)...............................................................................11, 12

*ePlus Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012)............................................................................... passim

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
  629 F.3d 1278 (Fed. Cir. 2010)....................................................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).................................................................................2, 3

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012).................................................................................6, 7

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
  2011 WL 3847603 (E.D. Tex. Aug. 29, 2011) ..........................................................2, 3

*TiVo Inc. v. Echostar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) (en banc)......................................................6, 7, 11, 12

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)............................................................................2, 3, 12

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996).......................................................................................5

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988) ........................................................................................... 3, 10

**STATUTES**

35 U.S.C. § 271 ................................................................................................................... 12, 13

I.      **INTRODUCTION**

Lawson attempts to rewrite history by speculating about what the jury must have been thinking at the trial, and by quoting from highly selective portions of a dense trial record, which was comprised of numerous documents and the testimony of many fact and expert witnesses. Lawson does so to avoid the consequences of the facts that: (i) there was a jury trial resulting in a finding of infringement of Claim 26; (ii) this Court denied Lawson's JMOL, holding that substantial evidence supported the jury's finding of direct and indirect infringement; (iii) this Court thereafter enjoined Lawson from *sales* of the Infringing Configurations, and from providing any installation, implementation, consulting, maintenance and support, and other related and associated services, to customers with those configurations; and (iv) the Federal Circuit *specifically* affirmed the jury's verdict with respect to claim 26, both as to direct and indirect infringement. Lawson cannot rewrite history; Lawson is an adjudicated infringer and its direct and indirect infringement of claim 26 is the law of the case.

From the outset of this proceeding in 2011, *e*Plus cautioned that Lawson would attempt to turn this into a full-scale retrial of infringement issues that had already been decided. This Court admonished Lawson that it could not do so, and Lawson told the Court that it understood the Court's instruction. Lawson therefore confirmed to the Court that the only issues for the hearing (other than remedies) would be the three functional design changes (only one of which was alleged to be pertinent to claim 26) it had made that allegedly rendered its system more than colorably different and non-infringing. Dkt. 1059 at 4.

Now that the time for decision is at hand, it is plain that Lawson is attempting to transform this into a retrial on the merits. Lawson argues that *e*Plus has failed to prove elements of its infringement claim, even though all those elements were conclusively established at trial and appeal and Lawson's sole modification has no relevance to any claim element. *See ePlus*

*Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520-21 (Fed. Cir. 2012) ("there remains no serious dispute that Lawson's customers infringe claim 26"; "the record contains substantial evidence to show that Lawson itself infringes claim 26"; "[a]ll of this circumstantial evidence permits a reasonable jury to infer that Lawson performed the steps of claim 26."). But even as it reargues infringement issues that are already the law of the case, Lawson acknowledges that "the capacity of Configuration Nos. 3 and 5 to requisition items from Item Master alone or items from a single Punchout site is **unchanged functionality** from the adjudged-infringing configurations …." Dkt. 1071 at 2.

Without addressing the substantial case law cited by *e*Plus,[1] Lawson further contends that *e*Plus failed to prove that it or its customers perform the steps of claim 26, even though it was conclusively established at trial and appeal that ***both*** Lawson and its customers infringe claim 26 and that Lawson induces its customers' infringement. Lawson has never contended in this proceeding that it stopped using, selling, developing, implementing, installing, or demonstrating the RQC Configurations. Indeed, substantial evidence at trial showed how Lawson provided its customers with guides and training for the RQC Configurations, went "live" with the product, demonstrated through a webinar to some 800 attendees how the product operated, answered inquiries from customers who were using the RQC Configurations, and

---

[1] *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364-65 (Fed. Cir. 2012) ("[W]here an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement.")*; Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317-19 (Fed. Cir. 2009) (substantial evidence supported verdict of indirect infringement where the evidence consisted of the defendant's sales of the accused product and dissemination of instruction manuals); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02–CV–0134, 2013 WL 1149230, at *5, *15-16 (M.D. Pa. Mar. 19, 2013) (direct infringement by customers proven by evidence of sales of accused products and defendant's instructions teaching infringing use of products); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, Nos. 2:07–CV–565–TJW–CE, 2:08–CV–478–TJW, 2011 WL 3847603, at *5 (E.D. Tex. Aug. 29, 2011) (same).

obtained over $20 million in revenue from licensing, maintaining and servicing the RQC Configurations.  Dkt. 1059 at 15-20.

Indeed, in the same brief in which it argues that *e*Plus has failed to show that Lawson's customers are using RQC to perform the steps of claim 26, Lawson admits that the evidence demonstrates that its "customers were also running RQC."[2]  Lawson's argument is all the more astonishing when one considers that ***Lawson contends that there is insufficient proof it or its customers are using RSS, and there is insufficient proof that it or its customers are using RQC.***  There is no third option and there is no basis consistent with *Toshiba* and *Lucent* on which the Court could conclude that *e*Plus has failed to prove that Lawson used, sold, or otherwise induced its customers to use, the RQC Configurations ***and*** the original Infringing Configurations with RSS in violation of the injunction.[3]

Moreover, at the hearing, to allay any doubt *e*Plus's expert witness walked through all of the elements of claim 26 and showed how they were all met by the RQC Configurations.  Dkt. 1059 at 5-15.  This analysis was not disputed by any fact or expert witness of Lawson.  Lawson presented no real non-infringement defense, instead posing questions designed to misdirect the Court into an immaterial examination of why the jury concluded as it did at the prior trial.

---

[2] Dkt. 1071 at 24, n.13 (document shows that "customer … was indeed running RQC, [and] a review of the excerpts selected by *e*Plus demonstrates that other customers were also running RQC."); *see also id.* at 18 ("Lawson actively pressed its customers to download *and install* the new RQC product"); 19 (Mr. Hanson directing that "we will install RQC instead of RSS"; SWAT team assisted with roughly 60 installs; Lawson provided 8 hours of free support on RQC); 21 (for customers for which Lawson hosted the software on Lawson servers, Lawson contacted them to "migrate them or change them over to RQC"); 25 ("the record is replete with evidence that RQC was installed, by the SWAT team and by individual customers as reflected by their inquiries in the support ticket files").

[3] *See also Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 700 (Fed. Cir. 2009) ("There is no requirement that direct evidence be introduced"); *see also Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) (intent to induce "may be inferred from all of the circumstances.").

Finally, with respect to the continued ability of customers to use the enjoined Infringing Configurations with RSS in parallel with RQC, the Court should recall the following explanation from Lawson's counsel, made during opening arguments:

> ***You will not hear any evidence that any of Lawson's customers are running RSS. There was a period of time, Your Honor will recall, a six-month period of time when healthcare systems, 277 identified hospitals and healthcare providers, were permitted to be continuing to run RSS.***

Dkt. 1052 (Lawson's Opening) Tr. 29:10-19. Counsel argued that such customers might operate the systems in parallel to have a "test environment" and a "production environment." *Id.* at 29-31.

This attorney argument was never supported by evidence. There was no evidence that the capability of running RSS in parallel with RQC was created specifically and solely for the healthcare customers that enjoyed the benefit of the sunset period, or that this capability was for the purpose of assisting those healthcare customers in their transition. Nor was there evidence that this capability was taken away at the conclusion of the sunset period. Indeed, there was substantial evidence to the contrary that revealed that Lawson ***intentionally designed*** RQC to run in parallel with RSS and ***specifically instructed*** its customers, including non-healthcare customers, on how to continue using RSS even after the injunction had been entered.

Accordingly, the Court should hold that the use of the RQC Configurations continues to infringe claim 26, and that Lawson is directly and indirectly infringing claim 26 in violation of this Court's injunction. The Court should further hold that Lawson's continued inducement of its customers to use the original Infringing Configurations with RSS was a violation of the injunction.

## II. ARGUMENT

### A. Lawson Fails To Rebut *e*Plus's Showing That Lawson's Sole Modification Does Not Render The Use Of Configurations 3 And 5 Non-Infringing

The infringement analysis in any patent case requires the application of the accused product or method to the patent claim, as properly construed. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). Lawson refuses to engage in this analysis because nothing in claim 26, either by its plain terms, or as construed by this Court, requires the use of separate requisitions for items requested from two Punchout sites or from the Item Master and a Punchout site. Indeed, Lawson barely attempts to articulate the claim element to which its "modification" supposedly relates.[4] In contrast, *e*Plus proceeded through every claim element, using this Court's constructions, and showed not only that the modification had no application to any of those elements, but moreover that the use of the RQC Configurations still results in infringement of claim 26. Dkt. 1059 at 5-16. This presentation was based on admissions from Lawson's own documents and witnesses, and the testimony of Dr. Weaver. The infringement analysis that was confirmed by the Federal Circuit is entirely unchanged by Lawson's "redesign."

Instead, Lawson's tortured analysis selectively culls and repackages sound bites from the trial record to show what the jury must have been thinking when it found some configurations infringing, but not others, and why it found some claims infringed, but not others. This is not

---

[4] At one point Lawson suggests that it might have asked the Court to construe whether the fourth element of claim 26 "requires that requisitions contain items from more than one catalog." Dkt. 1071 at 9. Lawson never requested such a construction, either before the trial or in the course of this contempt proceeding. Neither the claim language nor the Court's construction includes such a requirement, and it is far too late in the day for Lawson to request such a construction now. Moreover, this tentative construction that Lawson never requested would not be supported by either the explicit claim language indicating that a requisition is built "using data relating to selected matching items and their associated *source(s)*" or the intrinsic evidence.

5

the infringement analysis required by patent law, or the *TiVo* decision.[5] Lawson also ignores the Federal Circuit's post-*TiVo* decision in which it affirmed a contempt finding notwithstanding the infringer's argument that the judgment below allegedly "offered no guidance on which specific features … were focused on to establish infringement." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1299 (Fed. Cir. 2012). Further, this Court has already heard and rejected Lawson's argument that the Court must dissect the trial and determine what the jury must have been thinking. *See, e.g.,* Dkt. 1034 at 3; Dkt. 1035 at 7.

Lawson therefore expends an extraordinary amount of its brief arguing that *e*Plus's contempt allegations are supposedly different from the allegations it made at the infringement trial.[6] Not so. As *e*Plus has shown the Court on numerous occasions, at trial the jury was presented with, and found infringing, Configurations 3 and 5, each of which was comprised of a group of specifically-identified modules. This contempt proceeding involves those same two configurations with only one modification. Because that modification is unrelated to any requirement set out in claim 26, the modification is not a "replacement for a feature that had been previously alleged to be infringing." *TiVo,* 646 F.3d at 884. Instead, it is merely a "randomly chosen feature" and therefore irrelevant. *Id.* at 882; *Arlington Industries v. Bridgeport Fittings, Inc.,* No. 3:02–CV–0134, 2012 WL 3579607, at *5-7 (M.D. Pa. Aug. 17, 2012).

---

[5] *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc).

[6] Lawson again presents a non-infringement argument, not by reference to the claims of the patent, but by reference to what *e*Plus allegedly "contended and proved" at trial. However, the language of *TiVo* that Lawson cites refers to the colorable differences inquiry, not the infringement analysis. *See TiVo,* 646 F.3d at 882. Further, a plaintiff obviously cannot put on an infringement case based on a feature that does not yet exist. If ***any*** alleged change were, by definition, deemed sufficient to avoid a contempt proceeding, then there would be no contempt proceedings involving cases of design-arounds or modifications, and *TiVo* would have said so.

6

Lawson's brief also fails to address the substantial case law holding that *ePlus* is not required to reprove the elements of infringement that were proven at the trial of this case. *See* Dkt. 1059 at 1-2; *Merial,* 681 F.3d at 1300 ("infringement by [an] originally accused product[ is] generally not open to challenge in contempt proceedings"); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1350 (Fed. Cir. 1998) (same); *Arlington Indus.,* 2012 WL 3579607 at *3, (the accused contemnor "is not entitled to raise arguments pertaining to unmodified features of the [accused products]. A contempt hearing must be limited to only the alterations between the infringing and modified products because a finding of infringement 'necessarily and conclusively establishe[s] that [Plaintiff] met each limitation recited in the asserted claims of the patent.'") (citing *Merial,* 681 F.3d at 1300); *Brine, Inc. v. STX, L.L.C.,* 367 F. Supp. 2d 61, 68 (D. Mass. 2005) ("***[A] finding of infringement may be predicated upon a conclusion that the modified device has not been changed from the adjudged device in a way which affects an element of a claim***.") (internal quotation marks omitted) (emphasis added).

This is a particularly important issue here, where: (i) Lawson represented to this Court that the only issues for this proceeding would be the limited changes that it made to the Infringing Configurations and (ii) the sole modification allegedly pertinent to claim 26 does not address any requirement of the elements of claim 26. Indeed, no Lawson witness explained how or why this modification would render the configurations non-infringing. It follows, therefore, that infringement is conclusively established.

### B. There Is More Than Sufficient Evidence To Find That Lawson And Its Customers Continue To Directly Infringe, And That Lawson Induces Its Customers' Infringement

Lawson argues there is insufficient evidence to prove that it or its customers are using the RQC Configurations and therefore there is insufficient evidence of direct infringement. This contention should be summarily rejected for several reasons.

7

*First, e*Plus's opening brief is replete with evidence showing Lawson's use, and its customers' use, of the RQC Configurations.  *See* Dkt. 1059 at 6-18; *see also* PFF ¶¶ 99-115.  This evidence came in not only through *e*Plus's expert witness, but also from Lawson's own employees and documents.

*Second,* as noted *supra,* Lawson ignores binding precedent holding that an accused infringer's sale to a customer, with instructions on how to use the product in an infringing manner, is alone sufficient evidence for a verdict of infringement.  *See supra,* nn.1 and 3.  All of these cases were cited in *e*Plus's opening brief.  Just as the Federal Circuit found this evidence sufficient at trial, the evidence is more than sufficient here. *See ePlus*, 700 F.3d at 520-21.

*Third*, an essential premise of Lawson's defense against contempt has been that its customers are no longer using the Infringing Configurations with RSS, but that instead they are using the RQC Configurations.  There has been no argument or evidence that there is a third option.  It is remarkable that Lawson, having argued that the RQC Configurations replaced the Infringing Configurations, simultaneously argues that there is insufficient evidence of it or its customers' use of the RQC Configurations.  Is the Court to believe that Lawson's customers have paid more than $20 million for RQC Configurations that they are not even using?

*e*Plus also presented unrebutted evidence showing Lawson making public announcements of the availability of the RQC "design-around," Lawson's own "going live" with the product, a webinar Lawson provided to some 800 attendees explaining the operation of the "modified product," the provision of guides and training for how to use the product, inquiries from customers showing that they were clearly using the product, and a continued flow of revenues from customers with the RQC Configurations. Dkt. 1059 at 15-20.  *e*Plus also identified a litany of actions that Lawson has taken relating to designing, installation,

implementation, testing, servicing, maintaining, instructing, and otherwise aiding and abetting its customers' use of the RQC Configurations. *Id.* Again, is the Court to believe that this was all done by Lawson and its customers for no purpose?

But in addition to the evidence from the hearing, ***Lawson's own brief*** is replete with arguments (made in the context of its argument that Lawson's customers are *not* using RSS) that the customers are, in fact, using the RQC Configurations, and that Lawson induced them to do so. *See supra* n.2. In light of the evidentiary record, Lawson's own arguments, and the governing law, any contention that there is insufficient evidence of Lawson's customers' use of the RQC Configurations must be rejected.

*Fourth,* Lawson chose to defend this case on the ground that it had made a functional change that rendered the Configurations 3 and 5 non-infringing. It never contended that it or its customers had ceased using the RQC Configurations. In its opening brief, *e*Plus pointed out that Lawson had confirmed the limited scope of the infringement inquiry with the Court. Dkt. 1059 at 4. Lawson ignores this, and has no response. Indeed, it is undisputed that over 100 Lawson customers are using the RQC Configurations. *See* (Christopherson Redirect) Tr. at 305:24-306:8.

    **C.**    **Lawson Plainly Has The Requisite Knowledge And Intent To Induce Its Customers' Infringement Using The RQC Configurations**

The jury, this Court, and the Federal Circuit have all held there was sufficient evidence to show that Lawson induced its customers' infringement. Now, with the full knowledge of that verdict and claim 26 of the patent, Lawson claims that it somehow lacks the requisite knowledge and intent to induce infringement. This argument must be rejected for several reasons.

Lawson clearly knows of claim 26, this Court's injunction, and its own customers' use of the RQC Configurations. Lawson continued to induce its customers' infringement by issuing

9

public announcements, providing assistance with installation and implementation, conducting webinars and training and the like. In short, Lawson persisted in the very acts that led the Federal Circuit to find inducement in the first place.

As noted *supra*, an infringer's intent can be inferred from the circumstantial evidence. *Broadcom,* 543 F.3d at 700 ("There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se*."); *Water Techs.*, 850 F.2d at 669 (intent to induce "may be inferred from all of the circumstances."). A smoking gun admission is therefore not required, as Lawson appears to assume. But, in this case there are smoking gun admissions. Internal Lawson e-mails showed that Lawson acknowledged that claim 26 was "right on the mark," and that Lawson was concerned that RQC had not been approved as a design-around by the Court. PFF ¶ 25. Lawson even rejected its own attorneys' advice to adopt a different, more significant design-around. *Id.* at ¶ 30.

The injunction prohibited not only inducement, but all the specific acts that Lawson has continued to perform. Dkt. 729 at 2 (enjoining, *inter alia,* "directly or indirectly making, using, offering to sell, or selling … any of the following product configurations and/or installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services"). If the Court finds, as it should, that Lawson's modification does not render the use of the RQC Configurations non-infringing, then Lawson is clearly in violation of these provisions of the injunction order, without any need to resolve a knowledge or intent inquiry. Lawson certainly cannot deny that it has engaged in the very activities prohibited under the injunction with respect to the RQC Configurations.[7]

---

[7] Lawson's argument that it lacks the requisite knowledge or intent to induce infringement is a late-breaking argument wholly inconsistent with Lawson's initial defense of its activities during the injunction period. Lawson initially told this Court that it was defending this proceeding on

### D. Lawson's Additional Arguments That It Is Not Inducing Infringement Are Meritless

In arguments that echo those Lawson made in connection with its motion to dissolve the injunction, Lawson argues that it cannot be held in contempt for *sales* of Configurations 3 and 5, because claim 26 is a method claim. This argument must be rejected for several reasons.

The issue here is contempt of this Court's injunction order. That order unmistakably enjoined sales of the Infringing Configurations. Dkt. 729 at 2 (enjoining, *inter alia,* "directly or indirectly making, using, **offering to sell, or selling** … any of the following product configurations and/or installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services") (emphasis added). It is far too late in the day for Lawson to argue the injunction was overbroad in that respect. *TiVo,* 646 F.3d at 889 ("The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt.").

If Lawson had raised such an argument, it would have been wrong. Although Lawson has argued that a sale of a product used to infringe a method claim cannot be enjoined, it has not cited any case so holding. For example, Lawson cites *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004), but that case, which does not involve an injunction or contempt, is inapposite for several reasons. In that case direct infringement was not found, and therefore (under the law at that time), there could be no indirect infringement at all. *Id.* at 1277 ("failure to prove direct infringement … necessarily dooms its allegations of indirect infringement."). Here, of course, there is direct infringement, as this Court and the Federal Circuit have already found. Moreover, directly contrary to Lawson's argument, the Court in

---

the basis of three functional design changes; apart from the merits of those design changes, it never contended prior to this hearing that its acts of inducement (e.g., designing, consulting,

*Dynacore* also stated that most courts had concluded that although "a seller of a device that is capable of substantial non-infringing use will not be liable for contributory infringement, *liability may still be established under § 271(b) if, in addition to the sale of that product, active steps are taken to encourage direct infringement.*" *Id.* at 1276, n.6 (emphasis added) (citation omitted).

That is the scenario presented here; Lawson has sold and taken active steps to encourage direct infringement, which is a violation of the inducement statute, § 271(b). The Court is not dealing here with sales alone. Lawson directly infringes by using the configurations to perform the claimed method. It then sells that same product to its customers so that they can use the product to perform the method, and Lawson instructs and assists its customers in doing so. As this Court noted at the injunction argument, "[y]ou [Lawson] argue you can't enjoin the sale at all, and that is not what the – I don't understand how the Federal Circuit could have issued a decision that it issued if it didn't understand that the injunction applies to the sale of what was defined in the injunction, *because the undisputed evidence is the only way this product ever gets out to the market is if you sell it*." Tr. 1205:5-11 (emphasis added). The law clearly permits this Court to enjoin such sales. *See TiVo,* 646 F.3d at 890, n.9 ("district courts are in the best position to fashion an injunction tailored to prevent or remedy infringement").

Moreover, substantial non-infringing use is not an element of either direct or induced infringement under Sections 271(a) and (b), respectively. *Toshiba,* 681 F.3d at 1364 ("existence of a substantial non-infringing use does not preclude a finding of inducement"); *ERBE Elektromedizin GmbH v. Canady Tech. LLC,* 629 F.3d 1278, 1284 (Fed. Cir. 2010) ("[n]o such requirement, however, exists for induced infringement."). The inducement statute simply states

---

maintaining, supporting, and training) with respect to the RQC Configurations had ceased, or

12

"[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The concept of substantial non-infringing use is referenced solely in the contributory infringement statute, § 271(c). Contempt can be found here under either direct (§ 271(a)) or induced (§ 271(b)) infringement, and determining whether there are substantial non-infringing uses of the infringing configurations is both irrelevant and unnecessary to determine whether there is contempt and continuing infringement.

Lawson's contention that there are substantial non-infringing uses for the infringing configurations is both irrelevant and unproven. There is no substantial non-infringing use exception under the injunction order, nor should there have been one. Moreover, Lawson's contention that there are substantial non-infringing uses is purely theoretical; there was no evidence admitted at the hearing to establish that customers of the RQC Configurations are using those configurations in substantial non-infringing ways. Lawson cites Dr. Weaver for this proposition, but the Court sustained *e*Plus's objection to this line of testimony. *See* (Weaver Cross) Tr. 169:14-170:15.

### E. Lawson Is In Contempt For Inducing Its Customers' Continued Use Of RSS "In Parallel" With RQC

During opening statements Lawson's counsel argued that the explanation for permitting RSS to continue to be run "in parallel" with RQC was that this was for the benefit of the healthcare customers entitled to use RSS during the Court's sunset period. Lawson's explanation is devoid of evidentiary support. The ability to use RSS in parallel with RQC was never limited or directed to the health care customers, and the ability to use RSS in parallel with RQC did not cease upon expiration of the sunset period.

---

that it lacked the requisite knowledge for inducement. *See* Dkt. 1059 at 4.

Lawson's arguments with respect to its continued inducement of use of configurations with RSS also ignore important facts and legal principles. This Court enjoined Lawson from, *inter alia,* "(1) [c]irculating, publishing or disseminating … any literature or information that encourages the use … of any of the Infringing Products and Services; and (2) Aiding and abetting, actively inducing, or in any way contributing to the … use [of the infringing products]." Dkt. 729 at 3. Lawson has clearly violated these prohibitions.

Although Lawson contends that there is insufficient evidence of its customers' use of RSS in parallel with RQC, this again ignores the governing law that indirect infringement is established through the direct infringer's sale plus instruction to use the product in an infringing manner. It has already been established through the Federal Circuit appeal that Lawson has done this, and the evidence at the hearing shows that Lawson specifically instructed its customers how they could continue to use RSS in parallel with RQC. PFF ¶¶ 123-153. Furthermore, Lawson does not have a reasonable explanation why it provided its customers with a means to run RSS in parallel with RQC, when it could have chosen not to.

While Lawson contends that it withheld services to customers that did not download RQC, it provides no reasonable explanation why it did not require installation and implementation of RQC and removal of RSS, as well. These facts lead to the conclusion that the mere download of RQC was intended as a superficial inoculation of customers to allow them to continue to obtain maintenance and support services, even if they were continuing to use RSS.[8]

In light of the above, it cannot be characterized as innocent or isolated that Lawson employees specifically instructed Lawson's customers how to continue using the Infringing Configurations with RSS. Indeed, one prominent example of this occurred at a Lawson webinar

14

with over 800 attendees, at which RQC was introduced. PX-1002 at RQC 643-646; PX-1057 at attachment 3. This is hardly an isolated or erratic example.

### III. CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that this Court hold Lawson in contempt of the Court's Injunction Order.

Respectfully Submitted,

April 23, 2013

/s/
David M. Young (VSB #35997)
Jennifer A. Albert (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com
jalbert@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Paul W. Jacobs, II (VSB #16815)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

*Attorneys for Plaintiff ePlus Inc.*

---

[8] The evidence showed that a mere download of RQC does not render it operational. Instead, it must actually be installed, configured and implemented. PFF ¶¶ 136-148.

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2013, I will serve

**PLAINTIFF *e*PLUS INC.'S POST-HEARING REPLY BRIEF WITH RESPECT TO INRINGEMENT**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

| | |
|---|---|
| Daniel J. Thomasch, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-3800<br><br>Jason C. Lo, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>(213) 229-7153<br>VAED-620ExternalServiceList@gibsondunn.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com<br><br>***Counsel for Defendant Lawson Software, Inc.*** |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>EXT-Lawson-FinneganCorrespondence@finnegan.com | |

                                        */s/*
                           David M. Young (VSB #35997)
                           GOODWIN PROCTER LLP
                           901 New York Avenue, N.W.
                           Washington, DC 20001
                           Telephone:  (202) 346-4000
                           Facsimile:   (202) 346-4444
                           dyoung@goodwinprocter.com