# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| *e*PLUS INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:09-CV-620 (REP) |
| | ) |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF *e*PLUS INC.'S POST-HEARING
## REPLY BRIEF ON THE 'NOT MORE THAN COLORABLY DIFFERENT' ISSUE

Jennifer A. Albert (admitted *pro hac vice)*
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000


Michael G. Strapp (admitted *pro hac vice*)   Craig T. Merritt (VSB #20281)
**GOODWIN PROCTER LLP**                        Paul W. Jacobs, II (VSB #16815)
Exchange Place                                 **CHRISTIAN & BARTON, LLP**
53 State Street                                909 East Main Street, Suite 1200
Boston, MA 02109-2881                          Richmond, Virginia 23219-3095
Telephone: (617) 570-1000                      Telephone: (804) 697-4100

*Attorneys for Plaintiff ePlus Inc.*

TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT.........................................................................................................................2

    A. Lawson's Modification Does Not Render The RQC Configurations More Than Colorably Different From The Infringing Configurations.......................................2

        1. The Modification Is Not Related To Any Requirement Of Claim 26 ........ 3

        2. The Modification Did Not Change Any Relevant Functionality................ 4

        3. Lawson's Attempts To Whitewash Its Description Of The Modification As No Change Or Just A Slight Change Are Unavailing ........................... 7

    B. *e*Plus's Allegations Of Contempt Are Based On The Same Features Found To Infringe..........................................................................................................................9

II. CONCLUSION...........................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   2012 WL 3579607 (M.D. Pa. Aug. 17, 2012) ............................................................................. 3

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ................................................................................................. 3

*TiVo Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011) ........................................................................................ 1, 2, 4, 6

## I. INTRODUCTION

In accordance with this Court's April 16, 2013 Order (Dkt. 1063), Plaintiff *e*Plus Inc. ("*e*Plus") respectfully submits this post-hearing reply brief on the 'Not More Than Colorably Different' issue.

Lawson Software, Inc. ("Lawson") spends the majority of its brief recycling (and mischaracterizing) the evidence adduced at the merits trial in an improper "attempt to divine" what was in the mind of the jury when it determined that Configurations 3 and 5 infringed claim 26. Lawson's arguments concerning the merits trial ignore this Court's *multiple* orders directing Lawson not to "rehash the trial testimony." *See* Dkts. 1034; 1035; Tr. 504:4-16.  Instead, Lawson attempts to submit via the backdoor of attorney argument what was prohibited by the Court through the front door of Dr. Goldberg's testimony, namely, skewed and highly selective characterizations of merits trial testimony, unsupported explanations of what the documents in the trial showed, and distorted summaries of the arguments of counsel at trial.  Dkt. 1070 at 3-4, 6-9, 16-19.  All of these arguments should be rejected.  No district court post-*TiVo* has taken the approach of revisiting the merits trial in this manner during a contempt proceeding.  And under *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011)(en banc), this Court must instead focus solely on a comparison between the configurations with the *purported modified features* that are *relevant to the structure or functionality recited in the claim*, if any, and the configurations found infringing at trial.

The jury found that the use of Lawson's Configurations 3 and 5 infringed claim 26.  PFF ¶ 3.  It is undisputed that the procurement functionality of Lawson's Configurations 3 and 5 with RQC relevant to claim 26 remains unchanged.  PFF ¶ 34.  Lawson failed to rebut the evidence that the only change Lawson made to its system – a modification to remove a user's ability to combine either items from the Item Master and a Punchout vendor or items from multiple Punchout vendors on a single requisition – is irrelevant to any functionality described in claim 26.  Dkt. 1057 at

Section III. A.; *see also* Tr. 167:16-17 (Weaver).  ***Indeed, nowhere in its brief does Lawson point the Court to any specific limitation of claim 26 to which this purported modification relates***.  The explicit premise of Lawson's argument is that *TiVo* permits it to avoid contempt if it modifies its Infringing Systems in a way that bears no relevance whatsoever to the structure and functionality of the asserted claim.  No reading of *TiVo* or the cases that follow it supports this approach.  Accordingly, *e*Plus respectfully requests that the Court find the RQC Configurations not more than colorably different from the Infringing Configurations and hold Lawson in contempt for its violation of this Court's Injunction Order.

## II. ARGUMENT

### A. Lawson's Modification Does Not Render The RQC Configurations More Than Colorably Different From The Infringing Configurations

Instead of focusing on the modification at issue — a modification that Lawson internally and externally described as a "slight" change that did not affect the functionality of the Infringing Configurations — Lawson urges the Court to dissect the underlying trial record to determine why the jury found certain configurations infringing and certain claims infringed, but not others.  The Court has pointedly rejected this approach and Lawson provides the Court with no reason to reconsider its prior rulings.  *See* Dkt. 1034 at 3 (ruling that Lawson's expert "may not testify about infringement and invalidity issues that were resolved when the jury verdict at the trial on the merits and may not testify about what the jury's verdict means."); *see also* Dkt. 1035 at 7 ("The Court is confident that the Federal Circuit, in *TiVo*, did not intend for district courts to attempt to divine what was in the mind of juries when they rendered their verdicts…[T]he Court finds no instruction in *TiVo* that the Federal Circuit contemplated the recycling and reinterpretation of all the evidence at the trial in contempt proceedings."); *id.* at 8 ("[T]he Court finds no warrant for construing *TiVo* to allow experts in contempt proceedings to rehash the trial testimony or to explain what the

2

documents in the trial showed, or to summarize the arguments of counsel to aid the Court in the 'colorable difference' inquiry."); *see also Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1300 (Fed. Cir. 2012) (affirming contempt finding notwithstanding infringer's argument that judgment below "offered no guidance on which specific features … were focused on to establish infringement"; "the judgment is no less binding or authoritative simply because comprehensive and painstaking factual analyses regarding every claim limitation may have been unnecessary or impractical at the time of the initial decision."). Lawson's attempt to distract the Court from analyzing the modification at issue is unsurprising. The evidence, including the words of Lawson's own employees, is overwhelming that the modification is insignificant; it certainly cannot render the RQC Configurations more than colorably different than the Infringing Configurations.

### 1. The Modification Is Not Related To Any Requirement Of Claim 26

Lawson does not challenge the fact that its modification is unrelated to any of the elements of claim 26. Instead, Lawson argues that *e*Plus is improperly conducting an "infringement-based analysis of the modifications." Dkt. 1057 at 5. In fact, as Lawson's counsel previously recognized, the very first step in a contempt analysis is to ask whether "one or more of the *infringing* features was removed or modified?" Dkt. 804 at 6. If the modification in a "design-around" is unrelated to an "*infringing*" feature, that modification cannot be the basis for a finding of more than colorable difference. *See id.; see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2012 WL 3579607, *5-7 (M.D. Pa. Aug. 17, 2012) (holding that alleged design changes not relevant to any claim element that could not present a more than colorable difference) (citing *TiVo,* 646 F.3d at 882).

3

Lawson does not even address, let alone distinguish, this caselaw; indeed, the *Arlington Industries* case does not warrant a mention in any of Lawson's post-hearing briefs.[1]

### 2. The Modification Did Not Change Any Relevant Functionality

The overwhelming and unrebutted evidence establishes that Lawson internally recognized that the change to the RQC Configurations had minimal, if any, effect on the overall functionality of the product. Although Lawson's counsel now suggests that the modification it made "severely limited the circumstances under which a user has the ability to comparison shop," Dkt. 1070 at 19, its own witnesses recognized that a user of the RQC Configurations can still comparison shop. *See, e.g.,* Tr. 480:24-481:18 (Goldberg Cross) (RQC users can comparison shop by searching catalogs in Item Master and comparing the items in search results or by searching a Punchout catalog and comparing items in search results).

Other functionality in the Infringing Configurations also remains unchanged. Thus, contrary to Lawson's contentions, a user of Configurations 3 and 5 with RQC can still combine items from multiple different sources onto a single requisition, although this is not required to prove infringement of claim 26. Indeed, this was demonstrated by Dr. Weaver. *See* PFF ¶¶ 82-86 (demonstrating selection and searching of multiple vendor catalogs in Item Master, selection of multiple items from multiple different vendors for inclusion on a single requisition, a single checkout, and generation of multiple purchase orders from that single requisition). Contrary to Lawson's argument, a user of Configuration 3 or 5 can continue to engage in one-stop shopping among the multiple vendor catalogs in the Item Master.

---

[1] Lawson suggests that it should be excused from contempt because it was engaged in a "good-faith effort to modify" the Infringing Configurations, citing *Arbek Mfg. v. Moazzam,* 55 F.3d 1567, 1570 (Fed. Cir. 1995). Dkt. 1070 at 6. The subsequently-decided *TiVo* decision, however, clearly held that an accused contemnor's alleged good faith is not a defense to contempt. *TiVo,* 646 F.3d at 880.

Moreover, when RQC Configurations 3 and 5 are connected to multi-vendor Punchout sites, such as SciQuest, a system user can engage in one-stop shopping by searching among the multiple vendor catalogs hosted at such multi-vendor Punchout site. The user can select multiple items associated with multiple vendors for inclusion in a single requisition built from such shopping session, engage in a single checkout, and the Lawson system will generate multiple purchase orders from that single requisition. *See* PFF ¶¶ 94-98.

Lawson claims that the fact it made no changes to the procurement functionality of the Infringing Configurations is a "red herring," and characterizes this argument as an "obsessive focus on what has not changed." Dkt. 1070 at 8-9. It takes no leap of imagination to understand the reason for Lawson's strategy. Lawson's sole modification is irrelevant to the claim language, and utterly insignificant with respect to the infringing product, which still retains all of the relevant functionality. By urging the Court to put on blinders, Lawson hopes to conjure some significance to its modification where there is none.

The Court should understand that this approach is directly contrary to that which Lawson earlier urged upon this Court in this same proceeding. Lawson previously argued, correctly, that the relevant question was whether the modification to the product rendered the product more than colorably different from that which was found to infringe:

> LAWSON COUNSEL: What you do is you look at the new product, you identify the modifications, and you ask, ePlus must prove by clear and convincing the Court must determine, *but one asks looking at the modifications of the new product and comparing that to the old product, does that make the new product more than colorably different. Does the modification make the product significantly enough different from the old product based on the modification? I completely agree with Your Honor on that point*.

Dkt. 845 (Tr. of Nov. 8, 2011), at 22:7-24:3.

5

Lawson's current argument, in which it states that the Court must consider the significance of the modification without any context or reference to the claim or the infringing product as a whole, is contrary to what it told the Court at the outset of this proceeding. Moreover, Lawson's current approach is contrary to *TiVo*, which repeatedly refers to the inquiry as a comparison between the infringing and modified ***products***.[2]

This analysis makes sense, whereas Lawson's proposed feature-versus-feature comparison, wholly divorced from any context or relevance standard does not. It was the Infringing Configurations as a whole, with all their modules, that were used to infringe, not one module or line of code in isolation. Lawson invites error when it asks the Court to focus solely on the modification without taking notice that the modification is irrelevant to claim 26 and that the modification did not impact any relevant procurement functionality of the Infringing Configurations.

---

[2] *See TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc) (colorable differences inquiry requires proof "that the newly accused ***product*** is not more than colorably different from the ***product*** found to infringe and that the newly accused product actually infringes"; "[t]he primary question on contempt should be whether the newly accused ***product*** is so different from the ***product*** previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (citation omitted); "[i]f those differences between the old and new elements are significant, ***the newly accused product as a whole*** shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. The ***significance of the differences between the two products*** is much dependent on the nature of the products at issue"; "Conversely, when a court concludes that there are no more than colorable ***differences between the adjudged infringing product and modified product***, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement"; "[i]f the district court determines that there are more than colorable ***differences between the two devices***, [defendant] is entitled to a new infringement proceeding.") (emphases added) (footnotes and citations omitted).

### 3. Lawson's Attempts To Whitewash Its Description Of The Modification As No Change Or Just A Slight Change Are Unavailing

Lawson emphatically equated the functionality of the RQC Configurations with the Infringing Configurations, both internally and in communications with its customers. Lawson asks that the Court ignore the candid and contemporaneous admissions of its employees, and instead focus on the litigation-inspired, after-the-fact arguments of its counsel. Lawson argues that these myriad admissions are "irrelevant" since not every statement Lawson employees and customers made equating the RQC Configurations with the Infringing Configurations specifically mentions "Punchout functionality." *See* Dkt. 1070 at 11. The argument is meritless as it is undisputed that Lawson made no changes to the Punchout module. Implicit in all testimonials by Lawson employees recognizing that RQC *as a whole* provides the same functionality as RSS is the acknowledgement that the RQC Configurations deliver the same "Punchout functionality" as the Infringing Configurations.

Moreover, Lawson conspicuously ignores many statements by its employees and customers specifically recognizing that the "Punchout functionality" in the RQC Configurations is effectively the same as that functionality in the Infringing Configurations. For instance:

- Lawson touted in its RQC launch webinar (attended by over 800 people and which included a demonstration of the Punchout functionality in RQC) that "100% [of] functionality [customers] require must be included" in the RQC module. PX-1102 at RQC 907448 (webinar).

- Lawson acknowledged that, "*The process in which punch out is being preformed[sic] has changed slightly.* You now get a warning pop up that you are about to leave the Lawson site when you punch out. The process remains completely the same except if you try to punch out on a req that is already in use with non punch out items, it will tell you that you need to open a separate req and it will perform that action for you. *All other back office and RSS functionality remains the same in RQC including consolidation of requisitions and purchase orders*." PX-1030 at RQC 8089 (emphasis added); Tr. 276:10-276:17 (Christopherson Cross).

- Lawson conceded that, "*With regard to punchout (and SciQuest) RQC will function as RSS did*. We support one punchout vendor website/connection.

7

>     SciQuest will come back with multiple vendors on the same requisition with one punchout." PX-1022 at RQC 7678 (emphasis added).
>
> - Lawson personnel responded to an inquiry from a service director regarding a customer's "retesting investment" by stating that, "[T]he new product is a change to the user interface only. The ***procurement business functionality*** (and data) remains the same. If a user uses RSS already, they will intuitively be able to use the RQC product. There is very little change in the functionality….***test what has changed ... which is really nothing***." PX-1072 at 14103 (Hanson) (emphasis added).

Nor does Lawson attempt to rebut specific statements made by its own customers after observing a webinar demonstrating the features of RQC – ***including the Punchout functionality in RQC*** – that "RQC appears to look, function and operate the 'same' as RSS" or that the "the view [of RQC] looks very similar to current RSS." *See* Dkt. 1057 at 15-16; PX-1102 at RQC 907454-57. Instead, Lawson offers self-serving statements from Mssrs. Lohkamp and Christopherson that they personally "opposed the changes" made in RQC, notwithstanding that Mr. Lohkamp recognized that "customers could live with this."[3] *See* Dkt. 1070 at 21-23. Lawson offers no corroboration for its bald assertion that customers actually expressed displeasure over the change in RQC beyond merely questioning whether certain functionality continued to be present. *Id*. at 24.

Nor has Lawson introduced any evidence that it lost a single customer because of Lawson's transition from RSS to RQC. For this reason alone, Lawson's claims that the change made in RQC "significantly changed the user experience" is highly suspect. Dkt. 1070 at 19. Furthermore, Lawson's claim that requisition and approval processes are rendered more time consuming due to the change in RQC (*id*. at 20-21) is conjecture unsupported by any evidence from its customers, or any demonstration or other evidence to support the conclusory opinion of Lawson's expert. On the contrary, to assuage the concerns of at least one Lawson customer, Mr. Hager represented that

---

[3] Lawson suggests that the modification was made only to satisfy the concerns of its legal counsel. *See* Dkt. 1070 at 22-23. Yet Lawson conspicuously avoids discussion of the fact that it actually disregarded its counsel's advice that additional changes to Punchout were needed to avoid infringement of claim 26. *See* Dkt. 1058 at 14-15.

Lawson was "very confident that [the customer] will see *zero negative impact* from the slight product configuration change" and that the functionality present in RQC is "*actually better*" than RSS.  PX-1266 at RQC 893665.001 (emphasis added).  Likewise, in brochures disseminated to the public and available on its website, Lawson maintains that "*Lawson Requisition Center and Procurement Punchout* work with Lawson Procurement to help *streamline purchasing processes*, eliminate volumes of paperwork, *accelerate order cycle times*, increase standardization, improve your negotiating leverage and, *ultimately, lower your total supply spend*."  PX-1003 at RQC 691 (emphasis added).

> B.  *e*Plus's Allegations Of Contempt Are Based On The Same Features Found To Infringe

Lawson expends an extraordinary amount of its brief arguing that *e*Plus's contempt allegations are supposedly different from the allegations it made at the infringement trial.  As *e*Plus has shown the Court on numerous occasions, however, at trial the jury was presented with, and found infringing, Configurations 3 and 5, each of which was comprised of a group of specifically-identified modules.  This contempt proceeding involves those same two configurations, each comprised of the same group of specifically-identified modules.  The only change is that "RSS" has been renamed "RQC," and that "RQC" has been modified so that an item ordered through Punchout must be on a separate requisition from items selected from the Item Master or another Punchout vendor site.  PFF ¶ 32.

Lawson's claim that *e*Plus has introduced new infringement allegations in this contempt proceeding is based on its cramped and selective view of the infringement proof at the underlying trial.  Lawson suggests that the *only* evidence *e*Plus relied upon at trial to prove infringement of claim 26 were two demonstrations conducted by Dr. Weaver.  Dkt. 1070 at 16-17.  Lawson omits that *e*Plus relied upon numerous documents produced by Lawson in discovery including, for

9

example, technical manuals concerning each module of the infringing configurations, Lawson's responses to prospective customers' requests for proposals and statements of work which included Lawson's representations concerning the infringing functionality, Lawson's customer webinars, training materials and marketing documents. Additionally, *e*Plus presented testimony of Lawson customers and demonstrations of their Lawson systems. Further, Lawson's own representatives testified at trial concerning the functionality of the Infringing Configurations. *See, e.g.*, *e*Plus's Brief in Support of Renewed JMOL (Dkt. 756) at 6-18, 25-29 (citing substantial trial testimony and documentary evidence in support of *e*Plus's infringement theories as to each claim element); and *e*Plus's Opposition to Defendant's Renewed JMOL (Dkt. 768) at 3-12 (citing substantial record evidence in support of *e*Plus's infringement theories concerning Configurations 3 and 5).

Further, Lawson's contention that *e*Plus relied on "the Lawson system's capability to combine on a single requisition (a) items from Punchout and Item Master, and (b) items from two different Punchout sites," to establish infringement is also demonstrably false. Dkt. 1070 at 17. First, claim 26 does not include any element that requires that a requisition include multiple line items associated with multiple sources. Instead, claim 26 recites "building a requisition using data relating to selected matching items and associated source(s)." The term "source(s)" makes clear that the requisition can contain one or more items associated with one source or items associated with multiple sources. Either circumstance satisfies the claim. Thus, there is no need to combine on a single requisition (a) items from Punchout and Item Master, or (b) items from two different Punchout sites to establish infringement of claim 26. Such scenarios do indeed satisfy the claim requirements, but they are not the only scenarios that do so. Dr. Weaver made this clear during the underlying trial:

> *e*PLUS COUNSEL: Next you have an icon for generating purchase orders. Do you see that as part of the overview of the Lawson procurement system?

10

>DR. WEAVER: Yes.
>
>*e*PLUS COUNSEL: Can you explain that process here?
>
>DR. WEAVER: So we've got our requisition. This is our formal list of the things we want to buy. ***It might have one item. It might have a hundred items. The items might be from one vendor or they might be from 100 vendors.*** Whatever the requisition says, the purchase order module takes that requisition and typically pulls out all of the requisition items that are going to be ordered from a single vendor and creates a purchase order for that vendor. Then it pulls all the items that go to another vendor and creates a separate purchase order for the second vendor and so on until all the items in the requisition have appeared in some purchase order.
>
>*e*PLUS COUNSEL: Did you do analysis of any Lawson software program or module that performs that functionality?
>
>DR. WEAVER: Yes, we're going to see that, and it's going to be ***the Lawson P.O. 100 program. Their purchase order program that converts a requisition into one or more purchase orders.***

Trial Tr. at 569:16-570:14.

Lawson quotes Dr. Weaver's trial testimony in an effort to demonstrate that that the modification affected functionality of the Infringing Configurations that was "a big deal in the context of the patent." Dkt. 1070 at 18. When viewed in context, Dr. Weaver's testimony plainly supports *e*Plus's position that the allegedly time and cost-saving attributes that Lawson modified are irrelevant to claim 26:

>LAWSON COUNSEL: Now, despite the fact that you would acknowledge that that attribute which has been lost was beneficial, a convenience, a time-saver, a benefit, and a big deal, I'm right that you still don't think that it's more than colorably different to have lost that attribute; is that correct?
>
>DR. WEAVER: That's correct.
>
>LAWSON COUNSEL: Am I right that's because at the end of the day, what was lost doesn't stop the product from infringing, in your opinion?
>
>DR. WEAVER: No, that's not correct. ***It's because those elements that you discussed -- they are not elements. Those attributes that you discussed are not related to claim 26***. That's why they are not colorably different.

Tr. 219:11-25 (Weaver Cross).

11

## II.  CONCLUSION

Lawson has left untouched the infringing features and functionality of Configurations 3 and 5.  The trivial change that Lawson contends to be pertinent to claim 26 is, in fact, not relevant to any claim element as construed by the Court, and it does not render the RQC Configurations more than colorably different from the Infringing Configurations.  The statements of Lawson's own employees, its customers, the expert testimony of Dr. Weaver, and the objective evidence that the "modification" does not relate to any requirement of claim 26, all point inexorably to the conclusion that the modification is not significant within the meaning of *TiVo*.  *e*Plus respectfully requests that this Court find that Configurations 3 and 5 with RQC are not more than colorably different from the Infringing Configurations and proceed to hold Lawson in contempt of the Court's injunction.

Respectfully Submitted,

April 23, 2013

            /s/
David M. Young (VSB #35997)
Jennifer A. Albert (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com
jalbert@goodwinprocter.com

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
mstrapp@goodwinprocter.com

Craig T. Merritt (VSB #20281)
Paul W. Jacobs, II (VSB #16815)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

*Attorneys for Plaintiff ePlus Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2013, I will serve

**PLAINTIFF *e*PLUS INC.'S POST-HEARING
REPLY BRIEF ON THE 'NOT MORE THAN COLORABLY DIFFERENT' ISSUE**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following*:*

| | |
|---|---|
| Daniel J. Thomasch, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-3800<br><br>Jason C. Lo, *pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>(213) 229-7153<br>VAED-620ExternalServiceList@gibsondunn.com | Robert A. Angle, VSB#37691<br>Dabney J. Carr, IV, VSB #28679<br>TROUTMAN SANDERS LLP<br>P.O. Box 1122<br>Richmond, Virginia 23218-1122<br>(804) 697-1238<br>(804) 698-5119 (Fax)<br>robert.angle@troutmansanders.com<br>dabney.carr@troutmansanders.com<br><br>***Counsel for Defendant Lawson Software, Inc.*** |
| Donald R. Dunner, *pro hac vice*<br>Erika H. Arner, *pro hac vice*<br>Finnegan, Henderson, Farabow, Garrett &<br>Dunner, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001<br>(202) 408-4000<br>(202) 408-4400<br>EXT-Lawson-FinneganCorrespondence@finnegan.com | |

                                              */s/*
                                    David M. Young (VSB #35997)
                                    GOODWIN PROCTER LLP
                                    901 New York Avenue, N.W.
                                    Washington, DC 20001
                                    Telephone: (202) 346-4000
                                    Facsimile: (202) 346-4444
                                    dyoung@goodwinprocter.com