

**GOODWIN | PROCTER**

Michael Strapp
617.570.1658
mstrapp@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

May 8, 2013

**Via Hand Delivery**

The Honorable Robert E. Payne, United States District Judge
United States District Court
  for the Eastern District of Virginia, Richmond Division
Spottswood W. Robinson III and
  Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

Re: *ePlus, Inc. v. Lawson Software, Inc.*
    Civil Action No. 3:09cv620 (REP)

Dear Judge Payne:

I write on behalf of *e*Plus to respond to the letter submitted by Lawson on May 6, 2013 concerning Lawson's customers of Configurations 3 and 5.

The customer list attached to Lawson's letter is *only* a list of customers of Configurations 3 and 5 from the date of the injunction through November 30, 2012. Lawson has in its possession information about new customers of Configurations 3 and 5 that have taken licenses to these software configurations after November 30, 2012, but Lawson has not provided that information to *e*Plus or the Court. Accordingly, if Lawson is found in contempt of the injunction, the prospective application of the injunction should not be limited to the customers identified on Lawson's list. Instead, Lawson should be enjoined from engaging in any of the prohibited activities described in the injunction including, for example, service and maintenance, with respect to any customer of Lawson that has licensed Configurations 3 and 5, not just the customers included on the list that Lawson provided to the Court.

Lawson makes reference in its letter to Western Lake Superior Sanitary and Art Crandall & Associates, two companies who are not customers of Configurations 3 or 5. As *e*Plus explained at the contempt trial, employees of Art Crandall & Associates, a third-party contractor who provides consulting services for Lawson's customers, and Western Lake Superior Sanitary, a customer of Configuration 2, were among the over 800 participants in the webinar Lawson hosted on June 3, 2011. (4/26/13 Hrg. Tr. at 52:7-19). During that webinar Lawson not only demonstrated RQC, it also demonstrated how RQC would work in combination with Punchout. *See, e.g.*, PX-1010 at 680-681 (screenshots of Punchout being used with RQC that were demonstrated at webinar).

The Honorable Robert E. Payne
May 8, 2013
Page 2

Individuals who attended Lawson's webinar, like the employee of Art Crandall & Associates, believed that RQC, as demonstrated with Punchout, looked, functioned and operated the same as the infringing configurations with RSS. (*See, e.g.,* Tr. at 16:16-18). This is probative evidence about the insignificance of the modification that Lawson made to RSS. While Lawson is correct that some of the individuals who attended the webinar were employees of companies that did not license Configurations 3 and 5, that is of no import because not a single one of the over 800 webinar attendees believed that any modification Lawson made to RQC was significant. Moreover, Lawson did not lose a single customer because of the changes it made to RQC. Tr. 562:5-11 (Lohkamp Cross)

When Lawson references Western Lake Superior Sanitary in its letter, it also cites to several portions of the contempt trial transcript concerning communications between Lawson and Western Lake Superior Sanitary. In these excerpts of the trial transcript Lawson:

- informs Western Lake Superior Sanitary that RSS and RQC were designed to allow multiple users to use the two applications simultaneously; Tr. at 546:2-6 (Lohkamp Direct)

- provides detailed instructions to Western Lake Superior Sanitary regarding two different ways to reinstate RSS after installing RQC; Tr. at 588:9-22 (Hanson Direct)

- and confirms that Western Lake Superior Sanitary was not a Lawson healthcare customer covered by the sunset provision of the injunction. Tr. 588:23-589:12 (Hanson Direct).

It is unclear why Lawson decided one month after the close of the evidentiary record to remind the Court of actions it took in 2011 that directly violated the Court's injunction. If Lawson's point in sending this letter to the Court is to suggest that its communications with Western Lake Superior Sanitary are irrelevant because Western Lake Superior Sanitary was a customer of Configuration 2, but not Configurations 3 and 5, Lawson is mistaken.

Evidence that Lawson designed RSS and RQC to run in parallel and even instructed its customers how to use the enjoined systems with RSS reveals that Lawson violated the injunction. The evidence revealed at trial that Lawson did not specifically design RSS and RQC so that only one of its customers could run RSS and RQC in parallel, it designed the software such that even after RQC was installed, *all of* Lawson's customers, including all of Lawson's customers of Configurations 3 and 5, could run RSS and RQC in parallel. Tr. 547:21-548:9 (Lohkamp Cross). Indeed, Lawson communicated this message to *all* the webinar attendees, including its customers of Configurations 3 and 5.

Furthermore, when Lawson specifically encouraged Western Lake Superior Sanitary in June 2011 to continue using RSS it expressly violated the extant injunction. The injunction prohibits Lawson from providing "instruction, encouragement … or support

for any of the Infringing Products and Services." In June 2011, the Infringing Products and Services included Configuration 2.

The Federal Circuit's decision in November 2012 does not somehow retrospectively cleanse Lawson's actions in violation of the injunction with respect to Western Lake Superior Sanitary in June 2011. As one district court addressing patent contempt after the *TiVo* decision remarked:

> Even if the Federal Circuit ultimately adopts defendant's position, defendant may still be liable for prior communications that violated the injunction. An injunction's validity is to be decided by the court, not the parties. Until the court's decision is reversed, its orders are to be respected. ***Violations of an order may be punishable as contempt even though the order is later reversed on appeal.***

*August Tech. Corp. v. Camtek Ltd.*, 2011 WL 7615088, at *5 (D. Minn. Aug. 11, 2011) (citing *United States v. United Mine Workers*, 330 U.S. 258, 294 (1947)).

Respectfully submitted,

*/s/ Michael Strapp*

Michael Strapp

cc: Counsel of Record