

JUN 1 1 2013

CLERK, U.S. DISTRICT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ePLUS INC.,

     Plaintiff,

v.                          Civil Action No. 3:09cv620

LAWSON SOFTWARE, INC.,

     Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the mandate, on remand, of the United States Court of Appeals for the Federal Circuit, instructing this Court "to consider what changes are required to the terms of the injunction consistent with this opinion"[1] and on defendant Lawson Software, Inc.'s ("Lawson") MOTION PURSUANT TO FED. R. CIV. P. 60 TO DISSOLVE OR MODIFY THE MAY 23, 2011 INJUNCTION (Docket No. 1011). For the reasons and to the extent set forth below, the injunction will be modified and Lawson's MOTION PURSUANT TO FED. R. CIV. P. 60 TO DISSOLVE OR MODIFY THE MAY 23, 2011 INJUNCTION (Docket No. 1011) will be denied.

**PROCEDURAL BACKGROUND**

ePlus, Inc. ("ePlus") filed this action against Lawson for infringement of three patents: U.S. Patent Nos. 6,023,683 (the "'683 Patent"), 6,055,516 (the "'516 Patent"), and 6,585,173

---

[1] *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012).

(the "'172 Patent"). Following a three week trial, a jury determined that the '683 Patent and '172 Patent were infringed and it found that the '562 Patent was not infringed. The jury further found that all asserted claims of the patents-in-suit were valid. On May 23, 2011, the Court issued a permanent injunction enjoining Lawson, its officers, agents, and employees and "any person in active concert or participation with them" "from directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States" certain product configurations (so-called Configurations Two, Three, and Five) and services. (Docket No. 729).

Lawson appealed to the United States Court of Appeals for the Federal Circuit and ePlus cross-appealed. On November 21, 2012, the Court of Appeals issued its decision reversing-in-part, vacating-in-part, affirming-in-part and remanding the action. In its decision, the Court of Appeals found that claim 1 of the '172 patent and claim 3 of the '683 patent were invalid for indefiniteness. ePlus, Inc., 700 F.3d at 519-20. The Court of Appeals also held that claims 28 and 29 of the '683 patent were not "supported by substantial evidence" and vacated the judgment of infringement as to those claims. Id. at 521-22. The Court of Appeals, however, affirmed the finding of infringement as to claim 26 of the '683 patent and affirmed the breadth of the injunction (namely, that Lawson was enjoined from "servicing

2

and maintaining products sold before the injunction issued"). Id. at 520, 522. Lawson had argued that, because "damages [were] not an issue in this case," Lawson should not have been enjoined from "servicing and maintaining products sold before the injunction issued." Id. at 522. The Federal Circuit noted that, although there was authority for the proposition that a company should be permitted to service products sold "free of liability," in this case it was a result of "the district court's enforcement of discovery rules [that] ePlus was not permitted to present any evidence of damages." Id. The Federal Circuit noted "that does not mean that Lawson was authorized to sell products that infringe ePlus's patent," and affirmed the scope of the injunction. Id. The Court of Appeals, then, remanded the action for this Court "to consider what changed are required to the terms of the injunction, consistent with this opinion." Id. at 523.

By Order dated November 27, 2012 (Docket No. 981), the parties were ordered to file statements of position setting forth their views as to the effect of the Federal Circuit's opinion on how the injunction should be modified. ePlus filed its statement on December 10, 2013 (Docket No. 985); Lawson filed its statement on December 27, 2012 (Docket No. 990); and ePlus filed a reply on January 7, 2013 (Docket No. 993).

On December 21, 2012, ePlus filed a petition for rehearing and rehearing en banc, the effect of which was to stay issuance of the mandate. Thereafter, Lawson took the view, with which the Court agreed, that the Court was without jurisdiction to modify the injunction until the Court of Appeals had issued its mandate. The petition for rehearing and rehearing en banc was denied on January 29, 2013. The mandate was received February 5, 2013 (Docket No. 1006).

All the while, the parties were engaged in discovery and briefing respecting contempt proceedings that ePlus had initiated because of Lawson's alleged violations of the injunction. Additionally, on February 7, 2013, the lead counsel for ePlus suffered a fatal heart attack, and thereafter proceedings were slowed for a while.

In a telephone conference held on March 14, 2013, both parties were asked whether they intended to offer evidence respecting modification of the injunction. Both parties declined to offer evidence.

Subsequently, Lawson filed its MOTION PURSUANT TO FED. R. CIV. P. 60 TO DISSOLVE OR MODIFY THE MAY 23, 2011 INJUNCTION (Docket No. 1011). An opposition (Docket No. 1027) and reply (Docket No. 1031) thereto were filed. Oral argument was held on April 9, 2013 (Tr. at Docket No. 1056).

## DISCUSSION

Lawson argues that the appropriate analysis is for the Court to ask whether it would have issued the injunction if the state of the case had been then what it is following the Federal Circuit's decision. If the Court concludes that an injunction would not have been appropriate, says Lawson, the Court should dissolve the injunction ab initio. Lawson Reply (Docket No. 1031) at 6-7 ("In light of these changed circumstances, the Court must go back and consider on the existing record whether an injunction could even issue based on the single remaining method claim."). In the alternative, Lawson argues that the current record does not support a continuation of the injunction as to the remaining claim.

ePlus takes the view that the Court should enter an order stating that the injunction "remains in full force and effect, with the lone exception that the injunction no longer applies to Configuration 2." Pl. Br. in Opp. (Docket No. 1027) at 1. ePlus also argues that the so-called "mandate rule" prohibits the Court from reevaluating the propriety vel non of the injunction. Id. at 4. Instead, ePlus maintains that the Court should simply accept the affirmance of the injunction as to all areas in which it would not be inconsistent with the Federal Circuit's decision and issue an order clarifying that the injunction does not apply

5

to those configurations for which the finding of infringement was vacated.

## The Mandate Rule

"Few legal concepts are as firmly established as the doctrine that the mandate of a higher court is controlling as to matters within its compass." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). The so-called "mandate rule" is "nothing more than a specific application of the 'law of the case' doctrine." Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985). When appellate courts have "executed their power in a cause before them, and their final decree or judgment requires some further act to be done, [they] cannot issue an execution, but shall send a special mandate to the court below to award it." Sibbald v. United States, 37 U.S. 488, 492 (1838). The Supreme Court in Sibbald went on to declare that:

> Whatever was before the [appellate court], and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

Id. If the lower court "mistakes or misconstrues the decree of [the appellate] court, and does not give full effect to the

6

mandate, its action may be controlled, either upon a new appeal . . . or by a writ of mandamus to execute the mandate of [the appellate] court." In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895). However, the lower court "may consider and decide any matters left open by the mandate of [the appellate] court; and its decision on such matters can be reviewed by a new appeal only." Id. at 256. And, of course, "the opinion delivered by [the Court of Appeals], at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate; and, either upon an application for a writ of mandamus, or upon a new appeal, it is for [that] court to construe its own mandate, and to act accordingly." Id. These well-settled principles control the issues now ripe for decision.

On November 21, 2012, the Federal Circuit issued its decision in this case. ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509 (Fed. Cir. 2012). That opinion provided that the action was being remanded "for the district court to consider what changes are required to the terms of the injunction consistent with this opinion." Id. at 523. That mandate must be viewed in perspective of the fact that the Court of Appeals upheld the injunction against Lawson's argument that it was "too broad." Id. at 522. That contention must be assessed in perspective of the fact that, on appeal, Lawson argued that the injunction should not have prevented it from "servicing and maintaining

7

products sold before the injunction issued." Id. The Court of Appeals disagreed finding that the scope of the injunction did not constitute "abuse of discretion." Id.

Compliance with the mandate also must take into account that, on appeal, Lawson also argued that the Court erred in entering a permanent injunction relating to claim 26 of the '683 patent. See generally Brief for Defendant-Appellant Lawson Software at 41, ePlus, Inc. v. Lawson Software, Inc, No. 2011-1396 (Fed Cir. 2012) ("The district court abused its discretion in entering a permanent injunction and denying JMOL of noninfringement of Claims 26, 28, and 29 of the '683 patent."). The Federal Circuit explicitly upheld the finding of infringement as to claim 26 of the '683 patent. ePlus, 700 F.3d at 521 ("[W]e affirm the district court's denial of JMOL of non-infringement with respect to the jury's verdict of direct and induced infringement of claim 26.").

Considering that the Federal Circuit affirmed the judgment of direct and indirect infringement of Claim 26, rejected Lawson's challenge to the breadth of the injunction, and held that "[t]o the extent that we have not addressed any of the parties' arguments on appeal or cross-appeal, we have determined them to be unpersuasive," it is rather clear that the Court of Appeals affirmed the decision to issue the injunction. Moreover, in explicitly rejecting Lawson's argument that the injunction is

8

overbroad, the decision per force affirms the entry of the injunction in the first place. That is further confirmed by the Federal Circuit's instruction to consider, on remand, "what changes are required to the terms of the injunction" consistent with its opinion. Id. at 523. Rather clearly, that instruction presupposes the affirmance of the injunction that is to be modified. The question, then, is for the Court to determine "what was intended by [the] mandate." In re Sanford Fork & Tool Co., 160 U.S. at 256.

According to ePlus, the Court is simply without authority to revisit the propriety vel non of the injunction and, instead, is limited by the mandate rule to adjusting the scope of injunction to exclude those configurations for which the judgment of infringement was vacated. See ePlus Br. in Opp. at 4. In response, Lawson argues that "fresh consideration of the injunction must occur because of the Federal Circuit mandate." Lawson Reply at 2. While ePlus' argument rests on a fairly straightforward interpretation of the mandate rule (i.e., that because remand was only to consider the "terms" of an otherwise-affirmed injunction, the Court must limit the scope of its review to the terms of an injunction that must continue to exist), Lawson seems to conflate the Court's obligation under the mandate with the provision of Fed R. Civ. P. 60(b)(5) that permits the Court prospectively to alter an injunction.

As Lawson correctly contends, requests to modify injunctions generally ask "whether changes in conditions after entry of the injunction warrant[] revision of the restraints originally imposed." Lawson Reply at 3; see also United States v. Swift & Co., 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions."). However, says Lawson, the Federal Circuit mandate "requires the Court to address the remedy question with the premise that the jury returned an infringement verdict as to method claim 26 only." Lawson Reply at 3. In other words, Lawson argues that this Court must retrospectively determine whether it would have entered the injunction if the circumstances had then been as they are now.[2] The parties agree, as they must, that some portion of the injunction must be eliminated, retrospectively, under Fed. R. Civ. P. 60(b)(5), as being based on "an earlier judgment that has been reversed or vacated." The dispute regards the portions of the injunction that were not reversed or vacated by the

---

[2] There is no question that Lawson's end goal is for the Court to conclude that the injunction was invalid ab initio. Such a decision would inevitably affect the on-going contempt proceedings as, of course, a finding of civil contempt is necessarily predicated on "the existence of a valid decree." Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000); see also (Tr. of Motions Hearing (Docket No. 1052) at 4:5-8 (Mr. Thomasch: "Because this is a civil contempt case and not a criminal contempt case, Lawson cannot be considered in contempt of anything other than an injunction that's in force.")).

Federal Circuit's decision, _viz._ as it pertains to Claim 26 of the '683 patent.

During oral argument and in its briefing, Lawson placed principal reliance on the decision of the Federal Circuit in _Amado v. Microsoft Corp._, 517 F.3d 1353 (Fed. Cir. 2008). However, the principles elucidated in _Amado_ counsel strongly against accepting Lawson's position here. In _Amado_, following a jury verdict of infringement, the district court entered a permanent injunction, which was stayed pending resolution of the appeal. _See_ 527 F.3d at 1356 (discussing the background of the case). On appeal from the final judgment, the Federal Circuit affirmed the district court "in all respects" and remanded to determine the distribution of funds in an escrow account. _Amado v. Microsoft Corp._, 185 F. App'x 953 (Fed. Cir. 2006) ("_Amado I_"). On remand, however, the district court was faced with a motion to reconsider the previously issued (and affirmed) permanent injunction in perspective of the intervening decision of the Supreme Court of the United States in _eBay, Inc. v. MercExchange, LLC_, 547 U.S. 388 (2006).

Upon review, the district court dissolved the injunction (which had remained stayed through the initial appeal and the district court's further consideration). _See Amado_, 517 F.3d at 1356. The plaintiff appealed, arguing _inter alia_, that "the district court's original injunction order, which granted but

11

stayed the injunction, was incorporated into the mandate in
Amado I, thus depriving the district court of authority either
to extend the stay or dissolve the injunction." Id. at 1357. In
addressing the applicability of the mandate rule, the Federal
Circuit noted that, while the propriety of the injunction was
not directly before it during Amado I, because the appeal had
been from a final judgment which "expressly noted that a
permanent injunction . . . had been entered," and because the
defendant had failed to challenge the propriety of the
injunction in the initial appeal, "the mandate rule operates as
a bar to the district court's reconsideration of the initial
issuance of the injunction." Id. at 1360. However, "there is a
fundamental difference . . . between the granting of
retrospective relief and the granting of prospective relief."
Id. The Court of Appeals explained, "while the mandate rule
would prevent the district court from dissolving the injunction
ab initio, it does not preclude the district court from
modifying, or dissolving, if it determines that it is no longer
equitable." Id. (emphasis added). The Court of Appeals held
that, both under the principles of equity that undergird
injunctions as well as under the explicit language of Fed. R.
Civ. P. 60(b)(5), the district court is free to "reconsider the
prospective application of the permanent injunction on remand,"
id., even though it was not permitted to dissolve it ab initio.

12

Thus, Amado quite clearly stands for the proposition that, if the grant of the injunction "was within the scope of the judgment appealed from," and that judgment is, in relevant part, affirmed, then the mandate rule "would prevent the district court from dissolving the injunction ab initio." Id. at 1360. Indeed, if the Federal Circuit had intended this Court to revisit the propriety vel non of the injunction, it certainly would have given such an instruction, as it, indeed, has done in other cases. See e.g. Edwards Lifesciences AG v. CoreValue, Inc., 699 F.3d 1305, 1316 (Fed. Cir. 2012)("The judgment of the district court is affirmed, with the exception that we remand for reconsideration by the district court, in view of changed circumstances, of the court's rulings on the permanent injunction and the protective order."); Fresenius USA, Inc. v. Baxter Int'l., Inc., 582 F.3d 1288, 1304 (Fed. Cir. 2009) ("In addition, although we hold that the district court did not abuse its discretion when it permanently enjoined Fresenius, we vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26-31 of the ' 434 patent remain valid and infringed.")(emphasis added); Acumed LLC v. Stryker Corp., 483 F.3d 800, 811-12 (Fed. Cir. 2007) ("Accordingly, the permanent injunction is vacated. On remand, the district court should reconsider the four-factor test as propounded by the Supreme Court's decision in eBay as to

whether or not an injunction should issue."). The Federal Circuit gave no such instruction here. Here, the Federal Circuit's mandate is a clear instruction to modify the affirmed injunction to make it conform to the decision issued on appeal.

Under the mandate rule, the Court is prohibited from retrospectively dissolving the injunction as to issues that were affirmed by the Federal Circuit. Thus, the Court concludes that the "mandate rule" prohibits it from heeding Lawson's call to dissolve the injunction ab initio.

## Federal Rule of Civil Procedure 60(b)(5)

Having found that the mandate of the Federal Circuit does not require, and that, indeed, the "mandate rule" in fact forbids, the Court from retrospectively reassessing the propriety of an injunction in this action, it nonetheless remains necessary to determine whether the injunction remains prospectively appropriate. Lawson filed its motion pursuant to Fed. R. Civ. P. 60(b)(5), which provides, in relevant part, that

> On motion and just terms, the court may relieve a party . . . from a final judgment, order or proceeding, [where] the judgment . . . is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Fed. R. Civ. P. 60(b)(5). The discretion of the Court to modify or dissolve the prospective effect of its equitable remedies is an inherent power of a court sitting in equity. See Sys. Fed'n

14

No. 91, Ry. Emp. Dept., AFL-CIO v. Wright, 364 U.S. 642, 647 (1961) ("The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.").

Because Rule 60 is a procedural rule, it is assessed "under the law of the particular regional circuit court where appeals from the district court would normally lie." Ashland Oil, Inc. v. Delta Oil Products Corp., 806 F.2d 1031, 1033 (Fed. Cir. 1986); see also W.L. Gore & Associates, Inc. v. C.R. Bard, Inc., 977 F.2d 558, 561 n.3 (Fed. Cir. 1992) ("In this procedural matter we look to the precedent of the Third Circuit, for the federal question of application of Rule 60(b) to provide relief from judgment is not exclusive to the Federal Circuit."). Accordingly, it is the law of the Fourth Circuit that applies to the Rule 60(b) analysis in this case.

"When confronted with any motion invoking [60(b)(5)], a district court's task is to determine whether it remains equitable for the judgment at issue to apply prospectively and, if not, to relieve the parties of some or all the burdens of that judgment on 'such terms as are just.'" Alexander v. Britt, 89 F.3d 194, 197 (4th Cir. 1996). The burden is on the party seeking relief to demonstrate "that a significant change in

circumstances warrants revision of the" judgment. <u>Rufo v.</u>
<u>Inmates of Suffolk Cnty. Jail</u>, 502 U.S. 367, 383 (1992). There
are a number of factors that must be considered in determining
whether to modify or dissolve an injunction. These include:

> (1) the circumstances leading to entry of
> the injunction and the nature of the conduct
> sought to be prevented; (2) the length of
> time since entry of the injunction; (3)
> whether the party subject to its terms has
> complied or attempted to comply in good
> faith with the injunction; (4) the
> likelihood that the conduct or conditions
> sought to be prevented will recur absent the
> injunction; (5) whether the moving party can
> demonstrate a significant, unforeseen change
> in the facts or law and whether such changed
> circumstances have made compliance
> substantially more onerous or have made the
> decree unworkable; and (6) whether the
> objective of the decree has been achieved
> and whether continued enforcement would be
> detrimental to the public interest.

<u>Crutchfield v. U.S. Army Corps of Engineers</u>, 175 F. Supp. 2d
835, 844 (E.D. Va. 2001); <u>see also</u> <u>MicroStrategy, Inc. v.</u>
<u>Business Objects, S.A.</u>, 661 F. Supp. 2d 548, 553 (E.D. Va. 2009)
(citing <u>Crutchfield</u> for "the six factors the court should
consider in determining whether to dissolve the injunction").

Lawson made clear in oral argument that it is pursuing its
Rule 60 motion under the theory that the injunction "is based on
an earlier judgment that has been reversed or vacated" and,
therefore, must be dissolved. Fed. R. Civ. P. 60(b)(5); <u>see</u> (Tr.
at 1181:15-18 (THE COURT: "You are going under Rule 60(b)(5),

the component that says, it has been based on an earlier
judgment that has been reversed." MR. THOMASCH: "That is
correct.")). Indeed, Lawson made clear that its "fundamental
attack" under Rule 60 was its view that "this injunction needs
to be dissolved <u>ab initio</u>." (Tr. at 1180:7-8). Lawson
distinguished the assertion that it was primarily pursuing from
the conventional "prospective application" prong of Rule
60(b)(5) which Lawson, correctly, described as

> [A]llow[ing] us to argue that even though
> the injunction on May 23rd, 2011, was
> properly granted, something has happened
> since then by way of new facts that we could
> bring to the Court's attention, and we would
> have a burden to show to the Court that
> those new facts justify the Court in
> amending or modifying or even dissolving the
> injunction on a prospective basis, because
> while it was appropriate when rendered, it
> became inappropriate in light of things.

(Tr. at 1180:11-19). Lawson specifically eschewed that theory of
relief as its primary argument.

It is only as an "alternative argument" that Lawson argues
for prospective relief from the injunction and then on the basis
that there are substantial non-infringing uses of the
configurations that remain following the Federal Circuit
decision and that, as a result, an injunction cannot issue
against their sale. <u>See</u> (Tr. at 1206:5-8 ("Because there are
undeniably substantial non-infringing uses, . . . a method claim
will not allow for an injunction against the sale of a

product.")). Under neither theory, and neither at argument nor in their papers, does Lawson structure its request under the Rule 60(b) analysis that is used in this circuit. The most obvious explanation is that Lawson is steadfastly seeking the dissolution of the injunction _ab_ _initio_, relief which the Court already has concluded is barred by the "mandate rule" but which also prevents Lawson from conceding the validity of the injunction and challenging it prospectively. Nevertheless, in perspective of the Federal Circuit's decision, there is no question that the circumstances of the action have changed significantly and, insofar as some modification of the obviously necessary, it is appropriate to assess whether the continuation of the injunction is equitable under the changed circumstances.

As a result of the Order of March 12, 2013 (Docket No. 1019), the parties have presented their arguments regarding the dissolution of the injunction with reference to the four factor test set forth in eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006) that governs the issuance of an injunction. At oral argument on Lawson's motion, the Court expressed concern that it has erred in so framing the issue. See (Tr. at 1179:7-9 (The Court: "Mr. Thomasch, I will tell you that after having done that, I have done considerable additional reading, and I'm not sure that that's correct.")). In truth, however, the four so-called eBay factors fall squarely within the first factor, ("the

circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented,") and the fifth factor, (whether those circumstances have changed) of the Crutchfield analysis for a Rule 60(b)(5) modification. See Crutchfield, 175 F. Supp. 2d at 844. Accordingly, it is appropriate that the analysis of the prospective equitability of the injunction be informed by the eBay analysis.[3]

In eBay, the Supreme Court of the United States set forth a four-fact test to be met before a court may issue a permanent injunction. The moving party must show:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

---

[3] Both ePlus and Lawson declined the Court's invitation to hold an evidentiary hearing on the continuation of the injunction. See (Tr. of Conference Call on March 14, 2013 (Docket No. 1025) at 11:11-18). Lawson took the position that ePlus carried the burden of showing that an injunction was appropriate "solely on the findings of the infringement of method claim 26." (Id. at 10-20-22). ePlus took the position that the record was fully developed before the injunction initially issued (Id. at 12:3-8) and that, what is more, Rule 60(b)(5) placed the burden of production on Lawson. (Id. at 13:5-12). The latter point is, of course, true. See Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 383 (1992) ("[A] party seeking modification of a [judgment] bears the burden of establishing that a significant change in circumstances warrants revision of the [judgment].").

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008). In deciding ePlus' initial motion for a permanent injunction, the Court issued a lengthy opinion examining and applying the eBay factors to the situation that then existed. See Memorandum Opinion dated May 23, 2011 (Docket No. 728). That decision was substantially affirmed by the decision of the Federal Circuit, which affirmed the injunction that issued. At the same time, the Federal Circuit affirmed the judgment of infringement only as to one claim: claim 26 of the '683 patent.

The question before the Court at this stage, then, is whether the Federal Circuit's decision otherwise altered the circumstances undergirding the Court's analysis pursuant to eBay such that the prospective application of the injunction as to Claim 26 of the '683 patent is inequitable. Indeed, although the Court is uncertain whether the four-factor eBay test must be the appropriate test to apply to the continued application to an injunction that has, itself, been affirmed by the Court of Appeals but which was based on a judgment that has, in part, been reversed or vacated, it is not incompatible with the "principles of equity" that guide both eBay and the Court's authority to dissolve an inequitable injunction to reassess the continued propriety of the injunction in terms of the eBay factors. Compare eBay, 547 U.S. at 391 (finding that the four-

20

factor test is guided by "well-established principles of equity") with Swift, 286 U.S. at 114 (recognizing that the power to alter an injunction was present "by force of principles inherent in the jurisdiction of the chancery").

In assessing the first eBay factor, irreparable harm to ePlus absent and injunction, the Memorandum Opinion of May 23, 2011 (Docket No. 728), found that ePlus and Lawson directly compete in the marketplace, that such competition "weighs heavily in favor of a finding of irreparable harm," and that ePlus "has shown lost sales and lost market share because of Lawson's infringement." Mem. Op. of May 23, 2011 at 12-22. The Court further found that Lawson's infringement had deprived ePlus of the ability to attract other customers by offering exclusive access to an innovative product, and that this factor also supported a finding of irreparable injury. Id. at 26-27. As a result of those factors, and others, the Court concluded the ePlus had "established that, without a permanent injunction, it will suffer irreparable injury." Id. at 33.

As to the second factor, "adequate remedy at law," the Court noted that "whether a patentee has an adequate remedy at law 'inevitably overlaps' with whether a patentee has suffered irreparable harm." Id. at 33 (quoting MercExchange, LLC v. eBay, Inc., 500 F. Supp. 2d 556, 582 (E.D. Va. 2007)). The Court further found that a "going forward royalty" could not be

adequately determined as ePlus' other licenses "reflect[ed] unique considerations which defy quantification." Mem. Op. at 35. As a result, the Court concluded that ePlus had met its burden to demonstrate that it had no adequate remedy at law. Id. at 40. That finding remains valid for the same reasons that made it so in the first place.

The third factor, balance of hardships, required the Court to assess "the relative effect of granting or denying an injunction on the parties." i4i Ltd. v. Microsoft Corp., 598 F.3d 831, 862 (Fed. Cir. 2010). In its original injunction opinion, the Court found that, absent an injunction, "ePlus will continue to suffer irreparable harm." Mem. Op. at 40. The Court compared that fact with the finding that "an injunction will have little collateral effect on Lawson as a whole." Id. at 41. The Court found that the irreparable injury that ePlus would suffer tipped the balance of hardships in ePlus' favor when contrasted with the minimal impact on Lawson's business. Id. at 43.[4] Lawson offered no proof that the balance of hardships has changed, and the Court finds that it has not.

---

[4] The Court also noted that Lawson purported to be designing around the patent and therefore would suffer no harm at all. Id. at 42. Whether Lawson succeeded in the design around is at issue in the pending contempt proceedings and thus cannot be used in the irreparable harm analysis. But, even if Lawson did not succeed in that effort, the remaining findings still show that ePlus will suffer irreparable injury absent an injunction.

The fourth eBay factor requires the Court to consider the public interest. In that section of its analysis, the Court gave "considerable weight to the strong public interest favoring entry of injunctive relief to protect ePlus' patent rights." Id. at 44. However, recognizing the public interest implications, the Court created a "sunset provision" for Lawson's 277 "healthcare customers" to allow adequate time for healthcare customers to "transition to non-infringing systems." Id. at 48. The Court also recognized that customers of Lawson's infringing products would have access to non-infringing products. Id. at 47. As a result, the Court found that the public interest favored entering injunctive relief. Id. at 49. That finding remains valid.

On this record, it is clear that Lawson has not carried its burden to show that the foregoing findings as to the eBay factors are no longer viable or that continuing the injunction as to configurations infringing Claim 26 of the '683 patent is inequitable. In fact, the only change to those findings that Lawson identifies is that, as a result of the Federal Circuit's decision, only 150 Lawson customers would be affected by the injunction. Lawson Reply at 18. Lawson argues that this diminishes the Court's finding that ePlus suffered an irreparable injury because, says Lawson, there is insufficient evidence in the record to conclude that ePlus directly competed

for those customers. Id. In response, ePlus emphasizes the Court's previous findings that ePlus is a small company and it argues that lost sales for even 150 customers constitutes irreparable harm. ePlus Opp. at 21; see also Mem. Op. of May 23, 2011 at 26 ("Consequently, though there may not be a large number of lost sales to Lawson's infringing software, due both to the fact that vendors compete against one another in secret generally and that ePlus is a relatively smaller vendor in the defined market, ePlus has put forth sufficient evidence of lost sales and lost market share to support a finding of irreparable harm."). The Court rejected Lawson's argument that ePlus had demonstrated an insufficient amount of lost sales in its original opinion. There is no reason to alter that conclusion here. Further, as ePlus correctly notes, the reduction in the number of affected Lawson customers also serves to shift the balance of hardships even more in ePlus' favor as the hardship to Lawson has, by its own admission, been substantially reduced. As ePlus notes, the Court's earlier finding that an injunction effecting a larger number of customers would have "little collateral effect on Lawson as a whole," augurs heavily in favor of the conclusion that an injunction effecting few fewer customers would have, at least, a similarly limited collateral effect. see Mem. Op. at 41; ePlus Opp. at 22.

At the very least, however, Lawson argues that the injunction cannot be continued as to the sale of the infringing configurations. Lawson argues that since Claim 26 of the '683 patent is a "method claim" the Court may not enjoin the sale of the configurations simply because they may be used to infringe ePlus' patent. See Mem. in Supp. at 5. As Lawson notes, mere sale of a product that can be used to perform an infringing act does not constitute "direct infringement." See e.g., Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of the apparatus that is capable of infringing use."). ePlus responds that this is not a situation in which Lawson's infringement is predicated on mere sale. Opp. at 12. After all, the Federal Circuit observed that "there remains no serious dispute that Lawson's customers infringe claim 26" and "the record contains substantial evidence to show that Lawson itself infringes claim 26. In particular, there is evidence that Lawson installed, maintained, demonstrated, and managed the infringing systems for its customers." ePlus, Inc., 700 F.3d at 520-21. The Federal Circuit further found that there was sufficient evidence from which to find that Lawson both infringed claim 26 and induced its customers to infringe claim 26. Id. at 521. Further, as ePlus notes, Lawson appealed this Court's conclusion that there was sufficient evidence to view

25

Lawson as a contributory infringer and, insofar as the Federal Circuit did not address that argument, it affirmed this Court's conclusion. See 700 F.3d at 523 n.2 ("To the extent that we have not addressed any of the parties' arguments on appeal or cross-appeal, we have determined them to be unpersuasive."). To that end, the Federal Circuit has affirmed that there was sufficient evidence from which to conclude that Lawson engaged in direct, indirect, and contributory infringement of ePlus' patent. Thus, this presents a case far from the mere sale of a product that can be used to infringe. The Federal Circuit has consistently upheld injunctions on the sale of products following findings of contributory and induced infringement. See e.g. i4i Ltd. v. Microsoft Corp., 598 F.3d 831 (Fed. Cir. 2010); MPT, Inc. v. Marathon Labels, Inc., 258 F. App'x 318 (Fed. Cir. 2007) (reversing an injunction as overbroad as to the location of sales, but affirming an injunction on the sale of a product that infringement on a method claim after a finding of willful inducement). On this record, the Court finds that, in perspective of the evidence that Lawson directly infringed, induced infringement, and contributorily infringed Claim 26 of the '683 patent that an injunction against the sale of the configurations used to so infringe is appropriate.

Lawson also argues that the sale of Configurations 3 and 5 cannot constitute contributory infringement because both

configurations have substantial non-infringing uses. That, says Lawson, forecloses the prospective continuation of the injunction.

That contention is without merit. In i4i Ltd. v. Microsoft Corp., 598 F.3d 831, 850-51 (Fed. Cir. 2010), the Federal Circuit held that "a party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process." The jury received substantial evidence of contributory infringement. Lawson appealed both the inducement and contributory infringement verdict. The Federal Circuit affirmed the verdict as to the method of Claim 26 and held that Lawson induced infringement, ePlus, 700 F.3d at 520, and rejected all arguments not addressed in its opinion, id. at 723 n.2, which would include Lawson's argument that it did not contributorily infringe. Thus, Lawson's argument is foreclosed by the Federal Circuit's decision.

For the foregoing reasons, the Court concludes that the record established, and the findings made, in the Court's initial opinion granting injunctive relief continues to support ePlus' request to continue the injunction as to all configurations covered by Claim 26 of the '683 patent. Nothing in the Federal Circuit's decision undermined those conclusions and, for the foregoing reasons, the Court concludes that

injunctive relief remains appropriate and will deny Lawson's motion to dissolve the motion prospectively.

## The Changes to the Injunction

Having concluded that the mandate rule precludes the Court from retrospectively revisiting the injunction and that Lawson has not made an adequate showing to support the prospective dissolution of the injunction and that the eBay four-factor test continues to support the grant of injunctive relief based on the record presently before the Court, the question remains as the appropriate scope of the injunction at this point.

There is no doubt that the Federal Circuit mandate requires some modification to the terms of the injunction. The verdict can no longer support any injunction of those configurations no longer found to be infringing. Nevertheless, for the reasons set forth above, the injunction shall remain in force as to those configurations that infringe Claim 26 of the '683 patent. The jury found that Configurations No. 3 and No. 5 infringed that claim. See Verdict Form (Docket No. 600) at 2-3. Configuration No. 3 consists of Lawson's "Core S3 Procurement System (Lawson System Foundation/Process Flow, in combination with Inventory Control, Requisition, and Purchase Order Modules), Requisition Self-Service, and Punchout." Id. at 2. Configuration No. 5 is formed by Lawson's "Core S3 Procurement System (Lawson System Foundation/Process Flow, in combination with Inventory Control,

28

Requisition, and Purchase Order Modules), Requisition Self-Service, Punchout, and Electronic Data Interchange." Id. at 3. As a result, the Court entered an injunction against those Configurations. Order of May 23, 2011 (Docket No. 729) at 2-3. In addition, the Court enjoined Lawson's "M3 e-Procurement Software" based on a pre-trial stipulation that, if any of the S3 Procurement products were found to be infringing, then the M3 e-Procurement System would also be found to infringe. See Amended Final Pretrial Order (Docket No. 480) at 4. Those aspects of the injunction remain undisturbed by the Federal Circuit decision. However, the Court also entered the injunction against Configuration No. 2 ("Core S3 Procurement System" and "Requisition Self-Service") on the basis of the finding of infringement as to Claim 1 of the '172 patent. See Order of May 23, 2011 at 2; Verdict at 1. The Federal Circuit having concluded that Claim 1 of the '172 patent is invalid for indefiniteness, that provision of the injunction cannot stand. Accordingly, the injunction must be modified so as to no longer apply to Configuration No. 2. The injunction shall remain in effect in all other respects.

## CONCLUSION

For the reasons set forth above, the Court will modify the original injunction pursuant to the mandate of the Federal

Circuit and will deny Lawson's MOTION PURSUANT TO FED. R. CIV. P. 60 TO DISSOLVE OR MODIFY THE MAY 23, 2011 INJUNCTION (Docket No. 1011), except insofar as the modification shall operate to dissolve the injunction as to Configuration No. 2. The injunction shall remain in effect in all other respects.

It is so ORDERED.

                              /s/            REP
                         _____
                         Robert E. Payne
                         Senior United States District Judge


Richmond, Virginia
Date: June  11 , 2013