```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                       RICHMOND DIVISION

 4

 5   ------------------------------------
                                         :
 6    ePLUS, INC.                        :    Civil Action No.
                                         :    3:09CV620
 7    vs.                                :
                                         :
 8    LAWSON SOFTWARE, INC.              :    August 26, 2013
                                         :
 9   ------------------------------------

10

11       COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

12          BEFORE THE HONORABLE ROBERT E. PAYNE

13              UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16   Craig T. Merritt, Esquire
     Paul W. Jacobs, II, Esquire
17   Christian & Barton, LLP
     909 East Main Street
18   Suite 1200
     Richmond, Virginia  23219-3095
19
     Jennifer A. Albert, Esquire
20   Goodwin Procter, LLP
     901 New York Avenue, NW
21   Suite 900
     Washington, D.C.  20001
22

23

24                   Peppy Peterson, RPR
                    Official Court Reporter
25              United States District Court
```

```
 1   APPEARANCES:  (cont'g)

 2   Michael G. Strapp, Esquire
     Goodwin Procter, LLC
 3   Exchange Place
     53 State Street
 4   Boston, Massachusetts  02109
     Counsel for the plaintiff
 5
     Dabney J. Carr, IV, Esquire
 6   Troutman Sanders, LLP
     1001 Haxall Point
 7   Richmond, Virginia  23219

 8   Daniel J. Thomasch, Esquire
     Richard W. Mark, Esquire
 9   Gibson, Dunn & Crutcher, LLP
     200 Park Avenue
10   New York, New York  10166-0193
     Counsel for the defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2

 3           THE COURT:  This is ePlus, Inc., against Lawson
 4   Software, 3:09CV620.  Who is here for whom starting with
 5   counsel for the plaintiffs?
 6           MR. MERRITT:  Craig Merritt and Paul Jacobs for
 7   ePlus, Your Honor.
 8           MS. ALBERT:  Jennifer Albert with Goodwin Procter
 9   for ePlus, and with me is my partner, Michael Strapp.
10           MR. CARR:  This is Dabney Carr from
11   TroutmanSanders on behalf of Lawson Software, and also on
12   the line are Daniel Tomasch and Richard Mark from Gibson
13   Dunn.
14           THE COURT:  Richard who?
15           MR. CARR:  Richard Mark.
16           THE COURT:  As in the bird?
17           (No response.)
18           THE COURT:  As in the bird, lark?
19           MR. CARR:  Mark.  M as in Mary.
20           THE COURT:  All right.  Lawson has moved for
21   expedited briefing on its motion for a stay pending
22   appeal, and I have gotten an opposition by -- from ePlus
23   wanting the time that's allowed under the rules of
24   procedure, and that's what I have, and I have also
25   reviewed the motion for stay.  All right, who is going to
```

1  address the motion for Lawson?
2       MR. THOMASCH: Your Honor, I will, Daniel
3  Thomasch.
4       THE COURT: All right.
5       MR. THOMASCH: Your Honor, I think the motion is
6  very clear. We tried not to reargue points that Your
7  Honor is eminently familiar with. This has been a long
8  proceeding. There are many issues of first impression or
9  issues on which the Court itself has recognized that the
10 law is either unclear or difficult to follow.
11      We have received the Court's very lengthy opinion
12 and order with respect to that. We do wish to take an
13 appeal from it, and at the moment, the issue is whether or
14 not we will be under a course of sanction while taking
15 that appeal.
16      We've made a stay motion for Your Honor that has
17 just briefly set forth grounds that we view as appropriate
18 for Federal Circuit review. We chose not to reargue them.
19 We thought that Your Honor would probably have a
20 predisposition towards whether to grant or not grant a
21 stay.
22      This is an unusual situation where, obviously, we
23 need to receive a decision in order to obtain relief. No
24 decision is the same as a denial, and so with that
25 recognition and knowing that we will eventually have to go

Case 3:09-cv-00620-REP   Document 1096   Filed 08/26/13   Page 5 of 17 PageID# 36607

5

```
 1   to the Federal Circuit, we wanted to give the Circuit
 2   court, which doesn't have Your Honor's familiarity with
 3   any of these issues, we wanted to give the Circuit court
 4   time to consider a stay petition if necessary.
 5           We wanted to avoid, if we could, unduly
 6   truncating briefing in that court, again, because that
 7   court doesn't have familiarity with the issues.  But I
 8   don't want to reargue things that Your Honor is aware of.
 9           THE COURT:  All right.  Have you all -- you make
10   reference in your papers about posting a bond.  Have you
11   done that?  I haven't seen anything.
12           MR. THOMASCH:  No, Your Honor.  Your Honor, we
13   are in the process of doing one of two things.  We were
14   attempting to work out arrangements to put money into an
15   escrow that would be held during the pendency of the
16   appeal and then released to the prevailing party upon
17   order of the Court.
18           That would fully secure ePlus's interest in
19   judgment, and that would require, however, court approval
20   under Rule 62.  We were trying to see whether we could
21   obtain ePlus's consent do so, and we're very close in that
22   regard to having the specific terms to propose and the
23   bank and all the arrangements set up and funded.
24           On the other hand, if that is not approved, then
25   we will use a traditional bond, but one way or another, we
```

```
 1   will secure ePlus's interest in the judgment, and what
 2   really is at issue is whether the coercive sanction will
 3   be in effect with the money payable to the Court, and we
 4   would hope that, in effect, that one court did not have an
 5   interest in preventing us from appealing to another court.
 6              So we're trying to work out so that ePlus is
 7   fully secured and that the coercive sanction is stayed
 8   pending the resolution of the appeal.
 9              THE COURT:  All right.  Right now, you put in,
10   Ms. Albert, in your papers that you want the standard
11   period of time in which to reply because there are many
12   issues that are raised by the motion to stay; is that your
13   position?
14              MS. ALBERT:  Yes, that is our position.
15              THE COURT:  What is that time?  What date would
16   be involved?
17              MS. ALBERT:  We calculated that under the normal
18   briefing schedule permitted under the rules, our
19   opposition, ePlus's opposition would be due on
20   September 3rd, and Lawson's reply would be due on
21   September 6th.
22              THE COURT:  Do you agree with those dates, Mr.
23   Thomasch?
24              MR. THOMASCH:  Yes, Your Honor, that would be the
25   regular schedule.
```

1           THE COURT: All right. Okay, go head.
2           MS. ALBERT: As we said in our brief that we
3  filed today, Lawson's -- ePlus opposes Lawson's motion to
4  expedite the briefing schedule because ePlus would like
5  the full amount of time to fully be able to brief all of
6  the numerous issues that are raised in the motion. We
7  counted that Lawson's brief raised no less than 17
8  substantive issues on which it argues that it should be
9  granted a stay, one of which, Lawson's motion appears to
10 seek a stay not only as enforcement of the Court's
11 contempt order but also of the underlying injunction that
12 was entered by the Court in May of 2011.
13          The injunction has already been fully affirmed by
14 the Federal Circuit. That decision is final and *res*
15 *judicata*, and additionally, when the injunction was
16 initially entered by the Court in 2011, neither this Court
17 nor the Federal Circuit stayed the injunction.
18          So we don't -- and we certainly don't believe
19 that a stay is warranted here when Lawson has been found
20 to have been violating the injunction since the day it was
21 entered not only by its purported redesign system but also
22 by inducing the ongoing use of the original systems that
23 were found to be infringing by this Court and the Federal
24 Circuit. So we believe that we need the full briefing
25 schedule to fully address all of the various issues set

```
 1   forth in Lawson's motion.
 2             On the bonding issue, ePlus believes that the
 3   bond that Lawson proposes is inadequate.  As Mr. Thomasch
 4   just explained, Lawson has proposed only covering the
 5   amount of the compensatory award for ePlus's past damages,
 6   but it's made no provision to secure the accumulating
 7   civil coercive fines, nor has it made any provision to
 8   cover the future damages to ePlus for the ongoing
 9   violation of the injunction going forward.  So we don't
10   believe that the arrangements that are being proposed
11   would be sufficient to provide for ePlus's interest in the
12   matter.
13             THE COURT:  All right.
14             MS. ALBERT:  And finally, you know, the exigency
15   of Lawson's motion is not due to any fault or any conduct
16   of ePlus.  Lawson has already had over a week since the
17   contempt ruling to brief its motion to stay, and we
18   believe that ePlus should be accorded the full amount of
19   time allotted under the normal briefing schedule.
20             THE COURT:  All right.  Mr. Thomasch, anything
21   else?
22             MR. THOMASCH:  Very briefly, Your Honor.  I do
23   believe our bond is fully satisfactory.  It will cover
24   ePlus's damages in the judgment and any accumulation of
25   interest.  The only -- if there is anything further, it's
```

1  only a coercive penalty.  That's it, and that's what we
2  are seeking to stay.
3         If that is stayed, that doesn't need to be
4  bonded.  It would, in effect, that would -- the bond would
5  mean nothing at that point.  It would mean that we were
6  under a -- it would be costing us $20 million a year in
7  writ to take the appeal, and that's what we're asking the
8  Court for relief of, because we believe we have good faith
9  grounds for the appeal.
10        As to the question of the injunction, we've
11 appealed the application.  It's the contempt order that
12 makes clear that the district court has found that RQC is
13 within the scope of the injunction that is now extant, and
14 it is that situation that we're requiring a stay from.  It
15 is completely different than the stay after the original
16 merits trial.
17        After the original merits trial, we were in a
18 position where the redesign had come out.  It was Lawson's
19 position that the redesign was outside the scope of the
20 injunction, and, thus, we were not harmed by the situation
21 proceeding forward.  We didn't have irreparable harm.
22        Here, we now have a court order specifically
23 identifying RQC as within the scope of the injunction, and
24 as of September 20th, we'll be assessing retroactive to
25 August 18th a 52,000-plus per day fine if we do not

1 receive relief. We can't receive substantive relief from
2 the Federal Circuit that quickly.
3 This is a very traditional motion for a stay to
4 allow an appeal of an issue upon which reasonable juries
5 could disagree.
6 THE COURT: All right, thank you. I think that
7 given the brief that's been filed on the stay issue which
8 is fairly extensive in the number of issues that it
9 raises, and given that you've had -- Lawson has had
10 significant time to prepare its papers, that it's not
11 unreasonable, in fact it's fair to give ePlus time to
12 prepare its papers.
13 The time for response brief here in this district
14 is fairly short anyway, and with the response due on the
15 3rd of September, they're not asking for anything beyond
16 the 3rd even though there are holidays involved there.
17 They are just asking until the 3rd, and I think it's
18 reasonable to give them until that time to address the
19 several issues, the many issues that are raised in the
20 papers filed by Lawson in support of its motion for a
21 stay.
22 And then Lawson will have its response on the 6th
23 of September, and do you all envision there should be
24 argument on this, or do you want it decided on the papers
25 or what, Mr. Thomasch?

```
 1            MR. THOMASCH:  Deciding on the papers would be
 2   fine, Your Honor.  We're looking for, in effect, the
 3   quickest resolution that is consistent with the Court's
 4   ability to handle its overall docket.
 5            THE COURT:  Does ePlus want argument or decide it
 6   on the papers?
 7            MS. ALBERT:  We would be fine with a decision on
 8   the papers, Your Honor.
 9            THE COURT:  All right.  I was going to give you
10   argument on the 10th of September, but if you don't want
11   it, that's okay with me.  All right, and that will be the
12   schedule that we'll follow then, and I'll move just as
13   promptly as I can to get this straightened out for you.
14            I suppose, though, that, Mr. Thomasch, your reply
15   brief will deal with what it is that happens in the event
16   that the Federal Circuit affirms the contempt order and
17   how it is that one would -- that ePlus -- I mean that the
18   coercive factor would be satisfied in the absence of a
19   bond, and a bond would protect, would effectuate the
20   coercive function, but it would not make the payment due
21   at all if the stay were entered.  I assume your reply
22   papers will address that, because your opening papers did
23   not.
24            MR. THOMASCH:  Your Honor, I'm sorry, Your Honor.
25   I may misunderstand slightly, and I'd hate to hang up the
```

1 phone misunderstanding.  Our position is that if the stay
2 is granted, the stay that we're asking for, if granted,
3 would, in effect, indicate that we do not need -- that the
4 coercive fine would not be running during the pendency of
5 the appeal.  We would have fully secured ePlus's position.
6 　　　　Then if the appeal was affirmed, if the decision
7 below was affirmed, we would then, you know, out of
8 appeals, we would come into full compliance within some
9 number of days thereafter showing the Court through
10 submission of affidavits, but we would not be then on the
11 hook for 20-, 30-, $40 million of coercive fines that had
12 accumulated during the pendency of the appeal.
13 　　　　We are asking for relief from that.  If that is
14 unacceptable to Your Honor, then I would just ask Your
15 Honor to deny our request for a stay, because -- our
16 request for a stay is that we not have the accumulation of
17 the coercive penalty during the pendency of the appeal so
18 that we might be able to take an appeal.
19 　　　　THE COURT:  But you also talk about the fact that
20 you want the whole injunction stayed, and that's part of
21 what they're troubled about.  So I think maybe you can
22 draw a distinction that you are drawing, apparently, in
23 your argument but your papers don't draw.  I may not have
24 said it right.  It's late in the day, so I think -- I
25 understand what I thought you were asking until I received

1 their opposition papers and until you said something about
2 the injunction being suspended.
3       MR. THOMASCH: As I understand their position, it
4 is that if we lose the appeal, that additional penalties
5 continue to accumulate during the pendency of the appeal,
6 and that's exactly what a stay seeks to prevent, because
7 the losing party may well be thwarted from an ability to
8 take an appeal simply because the risk becomes too great
9 over time.
10       THE COURT: But what happens to them in the --
11 let's say it takes 18 months for you to get a decision out
12 of the Court of Appeals or 12 months or whatever you said
13 in your papers. You used a particular figure. I'll just
14 use that figure. And in the meantime, they have a right
15 to payment of the contempt, and their theory is that you
16 can't -- you are not going to be able to -- if the stay is
17 entered, you are not -- your bond is not going to be
18 sufficient to pick up the amount that would be owing to
19 them. Not the coercive fine.
20       MR. THOMASCH: I understand, Your Honor. That is
21 the role of postjudgment interest in the federal court
22 system, and they would have an accumulating right of
23 postjudgment interest. They would also, of course -- if
24 it turned out that we appealed and we lost the appeal and
25 during that time period we were still, for instance,

1   servicing RQC, that would not make our action valid.  We
2   would be exposed to -- we would be exposed to patent
3   infringement damages for that time period.
4           It doesn't allow us to do something without risk,
5   but it allows us to not be at risk of further contempt,
6   because what we're doing is simply trying to appeal a
7   contempt order, and at some point, unless the clock stops
8   and we have a right to take an appeal without the prospect
9   that every day costs us tens of thousands of dollars.  The
10  alternative is really to say that we don't get a chance to
11  appeal.
12          And so we would say that ePlus's interests are
13  fully protected by postjudgment interest and the right to
14  sue us for willful infringement in the event that we
15  continue to engage in infringing conduct and lost the
16  appeal.
17          THE COURT:  That's what I thought your position
18  probably was, but I didn't read your papers to say that.
19  I will say I may not have read them correctly.  So now
20  that we know what your position is, they can address it in
21  their papers and you can address it in your reply, and
22  then we'll move forward just as promptly as we can.
23          I believe it's suspended until the 20th of
24  September anyway, is it not?
25          MR. THOMASCH:  It is, Your Honor, and, obviously,

1   I did want to make our position very, very clear, because
2   if unacceptable to the Court, we'd ask the Court simply to
3   deny our motion.  If it is something the Court wants to
4   fully have papers on, then, obviously, we want an
5   opportunity to have both sides continue to brief, but I
6   did want the Court to understand what it is we think the
7   effect of a stay would be.
8            THE COURT:  No, it's a serious matter that needs
9   to be looked at with both sides having been heard on it,
10  and if there's sufficient merit to the stay, points, then
11  there's every warrant to stay.  If there's not sufficient
12  merit to them, if they're all, let's say, frivolous, and
13  I'm not saying they are, then the analysis takes a
14  different turn, and I think I need to be informed on where
15  each of you stand on all of the substance of those
16  questions before making a decision.
17           I haven't made any decision at this juncture, and
18  I recognize that -- but let me ask you this:  I didn't see
19  anything in your papers about the injury -- you are not
20  contending this is going to break the company, are you,
21  Mr. Thomasch, if you had to post a bond to cover, say, a
22  year's worth of the coercive fine?  You're not saying it's
23  going to break the company.
24           MR. THOMASCH:  Your Honor, I did not address the
25  issue of whether it would break the company.  I think in

1   some circumstances it might be imprudent for any
2   businessman to take an appeal of an 18 million judgment
3   where the risk factor is that the appeal -- that we are at
4   greater risk from the coercive fine during the time it
5   would take to take the appeal than the underlying
6   judgment.
7          It isn't a question of we do it and we would go
8   broke as much as if we don't do it and we're denied our
9   effective ability to appeal.
10          THE COURT: In function, you are raising it as a
11  process question; right?
12          MR. THOMASCH: Yes, Your Honor.
13          THE COURT: A due process question. Okay.
14          MR. THOMASCH: Yes, Your Honor.
15          THE COURT: I just didn't understand you to be
16  saying that the financial consequences were so severe it
17  would put you out of business. All right.
18          MR. THOMASCH: I think before we reach that, it
19  would be so severe that we would be, in effect, forced to
20  give up our appeal even though we feel it to be
21  meritorious.
22          THE COURT: I understand your position. We'll
23  hear from each of you on the dates and go forward from
24  there. Thank you for being available on short notice, but
25  I think your motion necessitated that.

```
 1            MR. THOMASCH:  Appreciate that, Your Honor.
 2    Thank you very much for hearing us.
 3            MS. ALBERT:  Thank you, Your Honor.
 4            THE COURT:  Thank you.  Bye-bye.
 5
 6                   (End of proceedings.)
 7
 8
 9         I certify that the foregoing is a correct
10    transcript from the record of proceedings in the
11    above-entitled matter.
12
13
14        /s/                              _____
      P. E. Peterson, RPR                  Date
15
16
17
18
19
20
21
22
23
24
25
```