# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| *e*PLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 3:09-CV-620 (REP)** |
| | ) | |
| v. | ) | |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF ePLUS INC.'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANT'S MOTIONS FOR A STAY PENDING APPEAL AND TO APPROVE SUPERSEDEAS BOND

Jennifer A. Albert (admitted *pro hac vice*)
David M. Young (VSB#35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000

Michael G. Strapp (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000

Craig T. Merritt (VSB #20281)
Paul W. Jacobs, II (VSB #16815)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100

*Attorneys for Plaintiff ePlus Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD..............................................................................................5

III.   ARGUMENT ..........................................................................................................7

      A.    Lawson Has Failed To Demonstrate A Substantial Case On The Merits, Let Alone Show A Strong Likelihood Of Success On Appeal. ..............................7

            1.    The Court Correctly Determined the Features that ePlus "Contended and Proved" Infringed.............................................................10

            2.    The Court Properly Followed the Federal Circuit's Guidance in TiVo To Determine That There Were No Colorable Differences ............12

            3.    The Reexamination Proceedings Provide No Reason Why Lawson Is Likely To Succeed On Appeal  Or Provide Any Reason To Excuse Lawson From the Consequences of its Contempt ........................15

      B.    Lawson Has Failed To Show That Any Of The Harm Factors Favors A Stay ...................................................................................................................16

            1.    Lawson Has Made No Showing That It Will Be Irreparably Injured Absent A Stay ...........................................................................17

            2.    The Issuance Of A Stay Would Substantially Injure ePlus ......................19

            3.    The Public Interest Does Not Lie In Favor Of Delaying Injunctive Relief..........................................................................................21

      C.    The Bond Lawson Proposes Posting Is Inadequate ...............................................22

IV.   CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broadcom Corp. v. Qualcomm, Inc.*,
   543 F.3d at 683 (Fed. Cir. 2008)...................................................................... 18, 20

*Cont'l Can Co. USA v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) ............................................................................ 19

*Cont'l Paper Bag Co. v. E. Paper Bag Co.*,
   210 U.S. 405 (1908)................................................................................................ 19

*Grand Union Co. v. Food Employers Labor Relations, Ass'n*,
   637 F. Supp. 356 (D. D.C. 1986) .......................................................................... 22

*Hilton v. Braunskill*,
   481 U.S. 770 ............................................................................................................ 5

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) .............................................................................. 20

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed.Cir.2008) .............................................................................. 20

*KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*,
   776 F.2d 1522 (Fed. Cir. 1985) ...................................................................... 13, 14

*Lisle Corp. v. A.J. Mfg. Co.*,
   2004 WL 765872, (N.D. Ill. Apr. 7, 2004) .......................................................... 22

*Maggio v. Zeitz*,
   333 U.S. 56 (1948).................................................................................................. 15

*Magnesystems, Inc. v. Nikken, Inc.*,
   1994 WL 808421 (C.D.Cal. Aug. 8, 1994)........................................................... 22

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ............................................................................ 11

*Morgan v. Kerrigan*,
   509 F.2d 618 (1st Cir. 1975).................................................................................... 6

*Odetics, Inc. v. Storage Tech. Corp.*,
   14 F. Supp.2d 785, (E.D. Va. 1998), *aff'd in part*, 185 F.3d 1259 (Fed. Cir. 1999) ................. 6

*Sanofi-Synthelabo v. Apotex, Inc.*,
   470 F.3d 1368 (Fed. Cir. 2006) ............................................................................ 22

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   2011 WL 144930 (Fed. Cir. Jan. 18, 2011) ..................................................... 6, 16

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   2011 WL 238645 (E.D. Tex. Jan. 24, 2011).......................................................... 20

ii

*U.S. v. Kurtz,*
   528 F. Supp. 1113 (E.D. Pa. 1981) ........................................................................ 24

*Windsurfing Int'l, Inc. v. AMF, Inc.,*
   782 F.2d 995 (Fed. Cir. 1986) .............................................................................. 18

**Statutes**

35 U.S.C. § 154 ................................................................................................................. 19

**Other Authorities**

11 Wright, Miller and Kane,
   Federal Practice and Procedure, § 2905 (2012) ..................................................... 22

## I.    INTRODUCTION

On August 16, 2013, the Court concluded, by clear and convincing evidence, that Lawson is in contempt of the permanent injunction against Configurations 3 and 5, which injunction has been in place since May 23, 2011.[1]  The Court found that Configurations 3 and 5 with RQC are not more than colorably different than the adjudged Infringing Configurations with RSS and that Lawson and its customers are using the RQC Configurations in a manner that infringes *e*Plus's '683 Patent.  The Court also determined that Lawson is in contempt of the Permanent Injunction by, *inter alia,* "instructing (and permitting) its employees and agents to continue to service the Infringing Configurations and by deliberately instructing its customers on how to continue to use RSS, even after the RQC product had been released," and providing no means for its customers to disable the infringing functionality.  Mem. Op. (Dkt. No. 1087) at 43.

The Court concluded that Lawson's contumacious conduct is "quite troubling because it reflects a willingness to be casual about its obligation to obey the injunction."  Mem. Op. at 69.  In particular, the Court noted that Lawson cavalierly advised its customers "to run RSS and RQC in parallel" and failed to verify whether any of its customers had ever stopped using RSS.  *Id.*

Accordingly, the Court invoked its coercive power "to assure compliance with the injunction."  *Id.*  The Court imposed a daily coercive fine of $62,362 for every day that Lawson remains in contempt, an amount equivalent to the daily revenue Lawson has gained by flouting the injunction.

In its Motion to Stay, Lawson asks the Court to delay all relief for the irreparable harm it is causing and, remarkably, to stay the injunction that has been in place since May 2011.  Thus,

---

[1] In its Motion to Approve its proposed Supersedeas Bond Defendant Lawson Software, Inc. has informed the Court that it is now known as Infor (US), Inc.  *See* Ex. A to Motion, proposed Supersedeas Bond.

even though the Court imposed a coercive fine on Lawson to assure compliance with the injunction, Lawson seeks to stay the coercive fine so that it will not need to comply with the injunction at all during the pendency of its appeal.  And one week after the Court admonished Lawson for its casual disregard of the injunction, Lawson requests an order from the Court permitting it to continue disregarding the injunction.

Lawson's Motion to Stay is replete with mischaracterizations of the contempt proceeding, the litigation that led to it, and this Court's rulings.  Lawson suggests in its motion that it was found in contempt of a "reimposed injunction," even though the Court explicitly ruled that **Lawson is in contempt of the May 23, 2011 injunction**.  That injunction was never lifted. Lawson also argues as if the Court reached its contempt finding only because it "extended its earlier-entered injunction" to cover the software configurations with RQC.  In fact, as the Court explained, "quite apart from the *TiVo* contempt analysis pertaining to Lawson's redesign effort, Lawson was in contempt of the Court's May 23, 2011 injunction" because it continued to service the Infringing Configurations with RSS and instruct its customers on how to continue using those Infringing Configurations.  Mem. Op. at 42-43.

As this Court has noted, the "power of civil contempt, inherently vested in every court which exercises equity jurisdiction, makes the injunction an effective judicial remedy."  Mem. Op. at 39 (quoting *Landman v. Royster,* 354 F. Supp. 1292, 1300 (E.D. Va. 1973)).  When a court "employs the extraordinary remedy of injunction, it directs the conduct of a party, and does so with the backing of its full coercive powers."  *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)).  The Court has now entered an order bolstering its injunction with a ruling of contempt and a coercive remedy.  But even though the injunction has been in effect for more than two years, Lawson's infringement of *e*Plus's patent and its disregard of the rulings of this Court and

2

the Federal Circuit continues unabated.   Lawson now asks the Court to bless this ongoing conduct by issuing a stay that would render the injunction and contempt order a nullity for the many months that an appeal will be pending.

In its May 24, 2011 ruling denying Lawson's original motion to stay the permanent injunction, the Court concluded that *e*Plus "will continue to suffer irreparable harm each day Lawson continues to infringe its patents."  Dkt. No. 734 at 17.  The Court explained that *e*Plus will continue to "lose sales, market share, and cross-sales and up-sales of its VAR products due to Lawson's infringement."  *Id.*  Thus, the Court found that "to stay the injunction would only prolong the harm to *e*Plus without providing a remedy."  *Id.* at 18.

The Court reaffirmed these findings just two months ago, when it denied Lawson's motion to dissolve or modify the May 23, 2011 injunction.  Specifically, the Court explained that Lawson had "offered no proof" that the balance of hardships had changed.  Dkt. No. 1082 at 22. As the Court put it, prospective application of the May 23, 2011 injunction is necessary because *e*Plus "will continue to suffer irreparable harm."  *Id.*  Accordingly, Lawson's present argument that *e*Plus will not be irreparably harmed by a stay is one that both this Court and the Federal Circuit have rejected.

Lawson claims that a stay is necessary notwithstanding these judicial findings so that Lawson can pursue an appeal without a "Sword of Damocles" hanging over its head.  Stay Brf. at 1.  Of course it was Lawson, not *e*Plus or the Court, that forged this "Sword of Damocles." Lawson long ago made a deliberate, calculated, business-driven decision to continue licensing, maintaining and supporting the Infringing Configurations notwithstanding the jury verdict, the permanent injunction, the decisions by this Court and the Federal Circuit denying a stay of the injunction, and the Federal Circuit decision affirming the verdict as to claim 26 of the '683

3

Patent and the breadth of the injunction.  Lawson could have stopped infringing *e*Plus's patent after the verdict, after the injunction, after the denials of its stay motions, or after the Federal Circuit affirmance of the injunction.  Instead, Lawson decided to risk a finding of contempt so that it could continue generating daily revenues in excess of $60,000 through its infringing conduct.

Lawson now claims that it has no alternative but to "pay the Court an access fee of some $23 million per year merely to exercise its right of appeal."  Stay Brf. at 1.  That is simply not true.  Lawson already exercised its right of appeal of the May 23, 2011 permanent injunction, and lost.  Moreover, this Court generously made the coercive remedy provisional and gave Lawson time to purge its contempt and thereby avoid any coercive fine at all.   Although Lawson would have the Court believe otherwise, it does not face a Hobson's choice.  Lawson is simply being held to the consequence of its deliberate decisions to defy the Court's order with a sham "design-around" and by encouraging its customers to use the adjudged Infringing Configurations with RSS.  Lawson can now choose either to abide by the May 23, 2011 injunction or pay a daily fine equal to the revenues it makes each day from its infringing conduct.[2]

As this Court has noted in its opinions, *e*Plus has been irreparably harmed and continues to be irreparably harmed because of Lawson's profit-driven infringing activities.  *e*Plus and Lawson are competitors, and *e*Plus has lost sales and market share to Lawson because Lawson has misappropriated *e*Plus's intellectual property rights.  The Court ordered Lawson to desist from its infringing conduct, but for more than two years Lawson has disobeyed the Court's order.  These circumstances provide no basis whatsoever for the Court to stay the injunction

---

[2] To date, Lawson appears to have taken no steps to comply with the injunction, notwithstanding the Court's August 16 Order holding Lawson in contempt.

when both this Court and the Federal Circuit refused to do that very thing.  *e*Plus respectfully requests the Court to deny Lawson's motion.

## II.    LEGAL STANDARD

As Lawson notes, its stay motion requires that it satisfy the equitable criteria set forth in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Stay Brf. at 5.  But as a preliminary matter, this Court should not evaluate this motion as if on a clean slate.  On numerous prior occasions Lawson has asked this Court and the Federal Circuit to stay this action and the injunction in particular, and both courts have rejected Lawson at every turn.  When the Court imposed the injunction in May 2011, the Court denied Lawson's motion to stay, as did the Federal Circuit. *See, e.g.,* Dkt. Nos. 734-735.[3]  The Federal Circuit then affirmed the injunction on appeal notwithstanding Lawson's arguments (including arguments about the reexamination proceedings).  When the Court narrowed the injunction in June 2013 to remove Configuration 2, Lawson appealed the decision without moving either court for a stay.

Accordingly, it has been firmly decided by this Court and the Federal Circuit that Lawson should be enjoined, and that the injunction not be stayed.  It would be anomalous, to say the least, for a court to now stay the injunction when the only pertinent new development is that Lawson has been found in contempt of the injunction that it bitterly but unsuccessfully resisted. Indeed, Lawson's continuing contempt, as found by this Court, is all the more reason for the Court ***not*** to stay the injunction.

As the Court explained in denying Lawson's motion for a stay of the injunction in May 2011, in deciding whether to grant a motion for a stay pending appeal a court should consider the

---

[3] *See also* Federal Circuit decisions dated May 25, 2011 (denying request for immediate stay of injunction pending disposition of motion for stay) (Ex. A); June 15, 2011 (denying motion for reconsideration of denial of immediate temporary stay) (Ex. B); July 14, 2011 (denying motion for stay of injunction pending appeal) (Ex. C).

following:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  Dkt. No. 734 at 4-5.  Thus, "[t]o obtain a stay pending appeal, a movant must establish a strong likelihood of success on appeal, or, failing that, demonstrate a substantial case on the merits, provided the other factors militate in movant's favor."  *Streck, Inc. v. Research & Diagnostic Sys., Inc.,* 2011 WL 144930, at *1 (Fed. Cir. Jan. 18, 2011).  "[T]he stronger a showing the stay movant can make on its likelihood of success on the merits, the less compelling the showing must be with respect to the other three factors.  Conversely, if the stay movant can show only a 'substantial legal question,' then it can obtain a stay only if it prevails on the other three stay factors."  *Odetics, Inc. v. Storage Tech. Corp.,* 14 F. Supp.2d 785, 798 (E.D. Va. 1998) (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed. Cir. 1990)), *aff'd in part,* 185 F.3d 1259 (Fed. Cir. 1999).  Thus, "the strength of a movant's showing on [the likelihood of success] prong affects the burden it must carry with respect to the other three factors."  *Odetics,* 14 F. Supp.2d at 798.

As set forth below, none of these factors weighs in favor of a stay.  Indeed, where this Court and the Federal Circuit have denied a stay of the injunction before, *a fortiori,* this Court certainly should not stay the injunction now that Lawson has been found in contempt.  The fact that this case involves a contempt of this Court's order is additional reason for the Court to deny a stay.  *See, e.g., Morgan v. Kerrigan*, 509 F.2d 618, 620-21 (1st Cir. 1975) (declining to stay imposition of civil contempt sanctions pending appeal and stating "while defendants face the prospect of coercive fines and other sanctions if they continue to refuse to submit any plan, the step necessary to purge them of contempt places no unreasonable burden on them").

6

III.    **ARGUMENT**

    A.    **Lawson Has Failed To Demonstrate A Substantial Case On The Merits, Let Alone Show A Strong Likelihood Of Success On Appeal**

Defendant has not established a strong likelihood of success on the merits or even shown that it has a substantial case on the merits.  Lawson's brief addresses its "likely success" on the merits of its appeal only in the most cursory fashion.  Lawson's one-sentence recitals of its litany of arguments fail to provide this Court any reason to doubt the decisions it reached after careful consideration, and extensive briefing, evidence, and oral argument from the parties. Nonetheless, *e*Plus comments briefly on the lack of merit to Lawson's arguments.

First, there is no reason why it was error for this Court to proceed with the contempt hearing before revising the injunction to remove Configuration 2.  Indeed, Lawson has never explained why the Court should not have proceeded as it did.  Only Configurations 3 and 5 were at issue at the contempt hearing.  Those configurations were enjoined in May 2011 and the injunction was not lifted from those configurations for so much as a heartbeat, by either this Court or the Federal Circuit.  Any contention that Lawson was in some way prejudiced or confused as to whether those configurations were enjoined would be frivolous.

Second, as was fully briefed and considered by the Court, nothing in the Federal Circuit's opinion on the appeal from trial required or even suggested that this Court should lift the injunction against Configurations 3 and 5.  The appellate court rejected the only arguments Lawson presented against the injunction.  This Court even generously allowed Lawson the opportunity to present new evidence in support of its argument that the injunction should be lifted, and Lawson provided none.  Lawson therefore offers no reason why the continued injunction against Configurations 3 and 5 would constitute an abuse of discretion.

Third, Lawson's argument about "substantial non-infringing uses" is legally irrelevant. As this Court correctly found, "substantial non-infringing uses" is not an element of a claim of direct or induced infringement, and it is beyond legitimate argument that Lawson induced infringement and committed direct infringement. Mem. Op. at 36-38. Furthermore, Lawson raised a "substantial non-infringing use" argument on appeal, and that argument was rejected by the Federal Circuit. Mem. Op. Denying Lawson Mot. to Dissolve Inj. (Dkt. No. 1082) at 27 (citing *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d at 520, 523 n.2 (Fed. Cir. 2012) (rejecting Lawson's argument that it did not contributorily infringe claim 26 of the '683 patent)).

Fourth, Lawson argues that it was error for the Court to "refus[e] to consider only the changed functionality of the product relevant to proof of infringement at the merits trial." Stay Brf. at 4. This vague and cryptic complaint provides no reason for the Court to reconsider its rulings. In truth, the Court agreed to consider all functionality changes that Lawson made to RSS which it claimed rendered RQC more than colorably different than RSS. Mem. Op. at 6. Furthermore, there is not even a dispute "over the nature of the changes made to RSS to produce RQC." *Id.* at 25.

Fifth, Lawson's own witnesses and documents repeatedly conceded that the changes to the infringing products were not significant modifications. *See, e.g.,* Mem. Op. at 2-30. This Court also thoroughly considered the objective evidence as to the significance, if any, of Lawson's design changes. *Id.* at 25-33. Accordingly, there is no significant likelihood that Lawson will prevail in appealing the finding of contempt.

Sixth, the Court was correct in rejecting Lawson's "facile" argument that *e*Plus failed to show performance of all the steps of claim 26. Mem. Op. at 38. Lawson's argument ran contrary to (i) its own arguments that customers are using the redesigned system configurations;

(ii) the Federal Circuit's findings on appeal that Lawson and its customers perform all steps of claim 26 when using the infringing configurations; (iii) the substantial evidence at the contempt hearing showing Lawson and its customers performing the method steps; and (iv) Lawson's repeated representations to the Court that the only issues for the contempt hearing related to the three design changes Lawson made to its infringing configurations.

Seventh, the Court properly held that Lawson waived the attorney-client privilege when it deliberately allowed its witnesses to testify about privileged communications, deliberately produced privileged documents, and repeatedly failed to provide an adequate privilege log.  The Federal Circuit has already denied Lawson's petition for *writ of mandamus* with respect to this issue, which suggests that a stay is not warranted.  Moreover, in the end the documents the Court ordered produced played little part at the contempt hearing, and therefore in the unlikely event any error is determined it will likely be determined harmless.

Eighth, Lawson's non-specific complaints that the Court failed in part to apply the correct burden to certain issues, or to consider "all the evidence submitted by Lawson" falls well short of showing any likelihood of success on appeal.  Indeed, these complaints are so vague that it is impossible for *e*Plus to respond or for the Court to evaluate them.

Ninth, any alleged error with respect to remedies would not result in reversal of the liability verdict in any event, and a finding of contempt would still be warranted.  Moreover, the Court thoroughly considered the parties' arguments on remedies, correctly found that it had the authority to enter a disgorgement award, and that such an award was appropriate under the facts of this case.  Further, Lawson offers no explanation for its argument that a coercive remedy was inappropriate.  Indeed, as Lawson puts it, "in the circumstances of this case, and given the nature and requirements of the injunction at issue," particularly given the compelling evidence that

Lawson continued encouraging and instructing its customers to use the adjudged Infringing Configurations, the Court's remedies are plainly within its authority.  Stay Br. at 4.

*e*Plus addresses in additional detail below the three arguments that Lawson principally focuses on in its brief.   As set forth below, there is no likelihood that Lawson will prevail on appeal with respect to any of these issues.

### 1.    The Court Correctly Determined the Features that *e*Plus "Contended and Proved" Infringed

Lawson is not likely to prevail on appeal with respect to its contention that the Court erred because it did not reexamine the evidence presented at trial in the context of its analysis under *TiVo, Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011).  Specifically, Lawson contends that the Court erred by excluding evidence from the trial record in determining what *e*Plus contended and proved to be infringing and, instead, considered *e*Plus's infringement contentions filed with the Court.  Stay Brf. at 3.  Contrary to Lawson's contentions, the District Court did not exclude the trial record from these proceedings.  The complete transcript of the trial was part of the record, as reflected on the Court's docket.  *See, e.g.*, Dkt. Nos. 644-696.[4]

Moreover, contrary to Lawson's arguments, the Court in fact considered and analyzed whether the modifications made by Lawson to the Infringing Configurations related to a feature that *e*Plus relied upon to prove infringement at trial.  The Court made a specific factual finding that "whatever significance the modifications have to the overall product, the modifications to RSS <u>relate</u> to the features of Lawson's products that were contended and proven to infringe at trial."  Mem. Op. at 26 (emphasis in original).  The Court also found that the "interplay between RSS, Punchout and Item Master formed at least one of the bases for a finding of infringement of

---

[4] The Court did, however, properly exercise its discretion in excluding exhibits proffered by Lawson that were highly selective, incomplete excerpts of trial testimony already of record in the contempt proceeding.  Dkt. No. 1086 (Order).

Claim 26."  *Id.* at 26-27.  Further, the Court found that "the alterations to RSS to create RQC related to the manner in which Lawson's products infringed *e*Plus' patent, at least insofar as they focused on the manner in which Lawson's products performed steps 3 through 5 of claim 26." *Id.* at 27.

Nor was it error for the Court to consider the infringement contentions filed by *e*Plus with the Court in order to establish what *e*Plus "contended" infringed.  These infringement contentions contained a detailed recitation of all of the features *e*Plus relied upon to prove infringement.  *See* Dkt. No. 133.  Moreover, *e*Plus was bound by these contentions at trial and could not expand upon these theories.  *See* Dkt. No. 121.  The Court conducted a detailed analysis of these contentions to assess what features of the RSS Configurations *e*Plus contended infringed its claim.  Mem. Op. at 12-21.  The Court then considered the jury's verdict to assess what the jury found to be infringing.  *Id.* at 21.

The District Court properly declined to allow Lawson to inquire into the jury's thought processes for its infringement verdict.  As the Court found, "it would be constitutionally impermissible for the district court to re-examine the jury's verdict."  Mem. Op. at 15 (citing *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed. Cir. 2003); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1545 (Fed. Cir. 1983); *Dimick v. Schiedt*, 293 U.S. 474, 485 (1935)).  *See also* Dkt. No. 1035 (Mem. Op. (March 27, 2013)) at 7.

*TiVo* and subsequent cases make clear that the Court cannot expand the contempt proceeding into a new trial of infringement issues, or any other issues for that matter.  *TiVo,* 646 F.3d at 883, 889 (defendant may not reargue issues of claim construction, invalidity or infringement by the adjudged infringing systems); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1300 (Fed. Cir. 2012) ("infringement by an originally accused product [is] generally not open to

11

challenge in contempt proceedings.").  The two-part test under *TiVo* requires only that a patent owner prove "[1] that the newly accused product is not more than colorably different from the product found to infringe and [2] that the newly accused product actually infringes."  *Id*. at 882. The District Court properly applied this test and found Lawson in contempt.

### 2. The Court Properly Followed the Federal Circuit's Guidance in *TiVo* To Determine That There Were No Colorable Differences

Lawson is not likely to prevail on its contention that the Court abused its discretion in applying a doctrine of equivalents analysis to assist its determination of whether modified features of the RQC Configurations rendered those Configurations more than colorably different from the adjudged Infringing Configurations because the District Court properly followed the guidance set forth in *TiVo*.

First, the District Court determined the features that *e*Plus had contended and proved infringed, as instructed by *TiVo*.  646 F.3d at 882; Mem. Op. at 9-21.  The District Court next examined whether any of those features "has been modified, or removed," as *TiVo* instructs.  646 F.3d at 882; Mem. Op. at 22-28.  The Court determined that the modifications made by Lawson related to at least one of the bases for the jury's finding of infringement of claim 26 at trial. Mem. Op. at 26-27.

The Court then proceeded to the next step in the colorable differences analysis articulated by the Federal Circuit in *TiVo*:  an analysis of "whether th[ose] modification[s are] significant." *Id*. at 27 (citing *TiVo*, 646 F.3d at 882).  Contrary to Lawson's contention, (Stay Brf. at 7), the Court did not rely solely upon a doctrine of equivalents analysis to determine whether the modifications were significant.  Rather, it also considered evidence of how Lawson described the purported redesign, both internally and externally.  The Court found that Lawson itself consistently described the changes between RSS and RQC as insubstantial.  Mem. Op. at 28-30.

The Court found this evidence compelling because these statements came from Lawson's key staff regarding their own product. *Id.* at 30 (citing *Merial*, 681 F.3d at 1301).

Finally, the Court determined that the newly accused RQC Configurations were not more than colorably different from the adjudged infringing RSS Configurations because the modifications Lawson made did not substantially alter the manner in which the Configurations performed the steps of claim 26. The Court found by clear and convincing evidence that Configurations 3 and 5 with RQC, and Configurations 3 and 5 with RSS "perform substantially the same function in substantially the same way to obtain the same result." Mem. Op. at 33. This analysis was entirely proper under existing case precedent, particularly in light of the evidence from Lawson itself describing the RQC Configurations and the RSS Configurations as having the same functionality.

As this Court and others have noted, "[a]t the most basic level, a product is not more than colorably different from another product if it 'performs substantially the same function in substantially the same way with substantially the same result.'" Mem. Op. at 10 (quoting *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, Civ. A. No. 3:02-cv-134, 2013 WL 1149230, at *3 (M.D. Penn. March 19, 2013)).

Indeed, the Federal Circuit has held that the "colorability" analysis derives from the doctrine of equivalents. *See KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1527 (Fed. Cir. 1985) ("This doctrine was adapted from the familiar doctrine of equivalents..."). Thus, the Court here was correct that "[w]hile the doctrine of equivalents was designed to address infringement by a 'process that does not literally infringe upon the express

terms of a patent claim,' ..., it appears to be the origin of the 'colorable differences' concept." Mem. Op. at 10 n.4 (citations omitted).[5]

As the Court noted, the doctrine of equivalents analysis for colorable differences differs from the doctrine of equivalents analysis for infringement purposes in that the comparison is between the adjudged infringing product and the newly accused product, rather than the newly accused product and the claim. *KSM*, 776 F.2d at 1527. The infringement analysis comparing the newly-accused product to the claim is still required, and was properly conducted by the District Court. *TiVo*, 646 F.3d at 882; *KSM*, 776 F.2d at 1527; Mem. Op. at 33-35.

The District Court carefully considered the features and functionalities of Configurations 3 and 5 with RSS relied upon by *e*Plus at trial to prove infringement of claim 26 and compared those to the features and functionalities of Configurations 3 and 5 with RQC. Mem. Op. at 18-33. The Court found that Lawson made no relevant changes to the various  modules of Configurations 3 and 5. All that was changed was the interplay between RQC and Punchout. *Id.* at 28. The Court found that while the change may have degraded the customer experience, it was not significant in the context of the infringing nature of the original product. *Id.* at 32. The Court found that Configurations 3 and 5 with RQC, and those configurations with RSS, perform substantially the same function in substantially the same way to obtain the same result. *Id.* at 32-33. Thus, the Court held that the newly-accused RQC Configurations are not more than colorably different from the adjudged infringing RSS Configurations. *Id.* The Court's analysis was entirely proper and consistent with Federal Circuit precedent.

---

[5] Contrary to Lawson's contentions, the Court also correctly understood that *TiVo* did not reject *KSM*'s definition of colorability, rather it rejected the perceived tendency of district courts to "focus solely on infringement by the newly accused devices in deciding contempt." *TiVo*, 646 F.3d at 882. Indeed, the *TiVo* Court relied, in part, upon *KSM* for its two-part test for contempt. *Id.*

3.      **The Reexamination Proceedings Provide No Reason Why Lawson Is Likely To Succeed On Appeal Or Provide Any Reason To Excuse Lawson From the Consequences of its Contempt**

Lawson repeats its tired argument that the PTO reexamination proceedings ought to excuse it from its contempt and provide a reason for staying this action.  This Court should reject this argument, as it has on numerous prior occasions.  *See, e.g.,* Dkt. No. 787 (rejecting Lawson argument about relevance of reexamination proceedings and stating "no more ink will be spilled" over argument).  Moreover, the Federal Circuit as well was made aware of the reexamination proceedings, and nonetheless rejected Lawson's argument for a stay and proceeded to affirm this Court's permanent injunction.[6]

The cases upon which Lawson relies are non-precedential and entirely distinguishable from the procedural posture of this case.  Most notably, not one of the cases Lawson cites is a contempt case.  *See* Stay Brf. at 8.  None of the cited cases involves a situation where, as here, an infringement verdict was affirmed on appeal, and the enjoined party was then found in contempt for violating a district court injunction.  None of the cases that Lawson cites stands for the proposition that it could ever be immunized from this Court's contempt award based on the later cancellation of a claim as a result of a reexamination proceeding.  In fact, it is a "longstanding rule" "that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed."  *Maggio v. Zeitz,* 333 U.S. 56, 69 (1948).  Thus,

---

[6] Lawson mischaracterizes the Federal Circuit's ruling as one which remanded the injunction to be "reconsidered."  Stay Brf. at 2.  As this Court has recognized, however, the Federal Circuit *rejected* the only arguments Lawson presented on appeal concerning the injunction, and remanded only for the limited purpose of determining what changes were necessary to the injunction to comport with the appellate court's ruling that certain claims were ruled invalid or not infringed.  Thus, the appellate court stated only that "[w]e remand for the district court to consider what changes are required to the terms of the injunction, consistent with this opinion."  The Federal Circuit *never* said that it was reversing the permanent injunction, or that this Court should reconsider, *ab initio*, whether an injunction was warranted.

"disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place." *Id.*

Indeed, such a result would surely violate principles of separation of powers, and provide a motivation for parties to flout district court orders so long as some means is available to raise a collateral challenge to the district court through the executive branch. The executive branch has no authority to set aside a federal district court's final judgment, much less its contempt award based on a violation of the court's order.

### B. Lawson Has Failed To Show That Any Of The Harm Factors Favors A Stay

As discussed above, Lawson has not established a strong likelihood of success on the merits or even shown that it has a substantial case on the merits. The inquiry should end there.

Even were this Court to find that Lawson has made the threshold showing of a substantial case on the merits (and it has not), Lawson still would not be entitled to a stay because it cannot prevail on any of the harm factors, much less all three. *See Odetics*, 14 F. Supp.2d at 800 ("[B]ecause STK only raised a substantial legal question but did not make a strong showing of likelihood of success on appeal, it was required to prevail on the latter three stay factors. And because it was not able to do so, issuance of a stay is not warranted in these circumstances."); *see also Streck*, 2011 WL 144930, at *1 ("To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor."). Lawson has not shown that absent a stay its customers will be substantially injured or that Lawson itself will be irreparably injured. Lawson has also failed to demonstrate that the public interest favors a stay of the injunction. On the other hand, it is clear that *e*Plus will be substantially injured if a stay is granted.

16

1.      **Lawson Has Made No Showing That It Will Be Irreparably Injured Absent A Stay**

In its Stay Motion, Lawson seeks to delay the judgment day so that it can continue to reap profits from infringing *e*Plus's patent.  Thus, Lawson suggests that absent a stay it will be irreparably harmed because it will need "to pay the Court an access fee of some $23 million per year merely to exercise its right of appeal."  Stay Brf. at 1.  This argument, however, depends on the fiction that Lawson has no choice but to pay the daily coercive fine ordered by the Court if it wishes to appeal the contempt ruling.

In truth, the coercive fine is a provisional remedy that will be imposed on Lawson only if it chooses to continue its infringing conduct.  Moreover, the remedy is directly proportionate to the revenue Lawson will gain from that conduct.  *See e*Plus Proposed Findings of Fact & Conclusions of Law (Dkt. 1060) at 98-99 (quoting Contempt Tr. at 915: "the daily revenues associated with the infringing configurations, on average, are $62,362").  As this Court found when it denied Lawson's original stay motion two years ago, "[w]hile this Court does not doubt that Lawson will incur a loss as a result of the injunction, the harms which it claims simply mirror[] the success that Lawson has enjoyed in the marketplace and flow from its infringement of *e*Plus's patent[]."  Dkt. No. 734 at 17 (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 95 (D. Del. 1987)).  Additionally, as this Court previously concluded, given Lawson's size, financial condition, and the relatively small amount of its business and revenue derived from the Configurations 3 and 5, any loss cannot be considered an

undue hardship to Lawson.  *Id.*[7]

The Federal Circuit has made clear that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."  *Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).  "[S]uccessful exploitation of infringing technology" does not shield a party from injunctive relief.  *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008).  Thus, to the extent Lawson may argue that it will suffer harm to its reputation and possibly face breach of contract actions if it (finally) decides to discontinue its infringing conduct, any such harm and costs that it may incur are nothing more than the natural consequence of its infringement.  Lawson could have been working with its customers over the past two years to mitigate the potential effects of the injunction entered in May 2011, but it has taken no such actions.  To the contrary, it has continued to instruct its customers how to continue using the Infringing Configurations.

In addition, Lawson has not made any showing of the extent of the financial consequences it claims it will face in the event of an immediate injunction, beyond characterizing the coercive fine as the "Sword of Damocles."  Lawson has made no showing that it cannot readily bear the consequences of the injunction or – if it decides to continue its infringing activities while its appeal is pending – of the daily coercive fine.  To the contrary, in its original stay motion in 2011, Lawson reassured the Court that it had cash and cash equivalents of nearly $376 million, which it contended was far in excess of any potential

---

[7] Moreover, when Lawson moved to dissolve the injunction earlier this year, it argued that the Court should do so because, *inter alia*, the reduced number of Lawson customers now using the Infringing Configurations was allegedly so small as a portion of ***Lawson's*** business that any harm to *e*Plus did not merit injunctive relief.  Dkt. 1012 at 14.  Of course, this argument was a *non sequitur* that the Court properly rejected.  But having made this argument, Lawson cannot now be heard to complain of undue hardship to itself.

18

damages that could result from its infringement.  Dkt. No. 643 at 27.  Since that motion was filed, Lawson was acquired by Infor for $2 billion.  Presumably Lawson/Infor has cash on hand now that far outstrips the amount of reserves it had two years ago.  If that is the case, then surely Lawson can also withstand whatever financial consequence it will face from having to either finally comply with the injunction, or else pay the daily coercive fine ordered by the Court.

## 2.        The Issuance Of A Stay Would Substantially Injure *e*Plus

The consequences of permitting Lawson to continue to disobey the Court's injunction are significant.  The federal patent statute provides that the right conveyed to a patent owner is "***the right to exclude others*** from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . . ."  35 U.S.C. § 154(a)(1) (emphasis added); *see also Cont'l Paper Bag Co. v. E. Paper Bag Co.,* 210 U.S. 405, 429-30 (1908) ("From the character of the right of the patentee we may judge of his remedies.  It hardly needs to be pointed out that the right can only retain its attribute of exclusiveness by a prevention of its violation.  Anything but prevention takes away the privilege which the law confers upon the patentee.").

A stay pending appeal will effectively deprive *e*Plus of its statutory right to exclude. Because a patent is a wasting asset, the window of opportunity for *e*Plus to exploit its patent rights is limited.  *Cf. Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1265-66 (Fed. Cir. 1991) ("[W]hen summary judgment is improvidently granted the effect is to prolong litigation and increase its burdens.  This is of particular concern in patent disputes, where the patent property is a wasting asset, and justice is ill served by delay in final resolution.").  Every day for which Lawson continues to infringe, *e*Plus's statutory right to exclude is being taken away.  A stay pending appeal will further derogate *e*Plus's right to exclude, thus causing substantial injury to *e*Plus.

As the Court has concluded on several occasions, *e*Plus sells patented products and services that compete with Lawson's Infringing Configurations and services.  *e*Plus has lost sales in which customers chose Lawson's infringing products and services over the lawful products and services of *e*Plus.  Thus, as the Court previously concluded, if *e*Plus's right to exclude cannot be enforced, *e*Plus will continue to, *inter alia*:  (1) lose market share with respect to its patented products, (2) suffer losses on sales of its other products, and (3) experience reputational injury and the loss of business opportunities.  *See, e.g.,* Mem. Op. Granting Injunction (Dkt. 728) at 14-33.  All of these injuries to *e*Plus will continue to accrue if the Court grants Lawson's motion for a stay.

Finally, *e*Plus will also be substantially injured by a stay because the loss of its market opportunities is simply incalculable.  As the court stated in *SynQor*:

> Although future damages in lieu of an injunction may compensate SynQor for an **approximate** loss, **such approximation does not make future damages adequate in the sense that they are a suitable proxy for injunctive relief**.  As discussed above, SynQor makes and sells products and has a presence in the relevant market.  Further, SynQor has name recognition, goodwill, and market share in the relevant market.  The loss associated with any of these effects is particularly difficult to quantify.  Difficulty in estimating monetary damages is evidence that remedies at law are inadequate.

*SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 238645, at *3 (E.D. Tex. Jan. 24, 2011) (citations omitted).  Although Lawson contends that any injury to *e*Plus can be compensated through monetary damages, the "difficulty in estimating monetary damages reinforces the inadequacy of a remedy at law." *Broadcom*, 543 F.3d at 704; s*ee also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate.") (quoting *Broadcom*, 543 F.3d at 703-04); *Jacobsen v. Katzer*, 535 F.3d 1373, 1382 (Fed. Cir. 2008) (stating that, in copyright licensing context, "because a

calculation of damages is inherently speculative, these types of license restrictions might well be rendered meaningless absent the ability to enforce through injunctive relief").

And contrary to Lawson's assertions, a bond covering the pendency of the appeal will not adequately compensate *e*Plus for Lawson's continued infringement.  The bond will not remedy the lost opportunity for *e*Plus to exploit its statutory right to exclude Lawson's infringing conduct, nor the significant damage to the value of *e*Plus's patents.  In particular, a bond is not likely to encompass the collateral harms to *e*Plus from the opportunity to cross-sell and upsell its other products and services to procurement customers, or the reputational harm that comes from the inability to fully enforce its patent rights.

### 3.   The Public Interest Does Not Lie In Favor Of Delaying Injunctive Relief

In support of its original motion to stay the injunction in 2011, Lawson argued that the public interest favored a stay because its customers would be harmed by the injunction. Although the Court rejected Lawson's motion to stay, it included a sunset provision in the injunction.  During the sunset period relating to this subset of customers, Lawson made millions of dollars from licensing, selling and maintaining the Infringing Configurations to entities that would allegedly have been harmed if an injunction had immediately went into effect.  In its contempt order, however, the Court found that the testimony on which it "decided that the sunset provision was necessary was simply not true.  Indeed, it was, at best, a deliberate, gross exaggeration.  But, in fact, it was a deliberate untruth sponsored by Mr. Hager."  Mem. Op. at 40 n.16.

Having been exposed as building its prior public interest argument on a "deliberate untruth," Lawson wisely does not even venture an argument in its new motion to stay about the public interest.  Nor should it.  There is a strong public interest in favor of enforcing valid

21

patents.  *See, e.g.*, *Sanofi-Synthelabo* v. *Apotex, Inc.,* 470 F.3d 1368, 1383-84 (Fed. Cir. 2006) (public's interest in protecting patents outweighed the serious harms that could occur if infringing generic drug were removed from the market by injunction) (citing *Patlex Corp.* v. *Mossinghoff,* 758 F.2d 594, 599 (Fed. Cir. 1985)); *Lisle Corp. v. A.J. Mfg. Co.*, 2004 WL 765872, at *6 (N.D. Ill. Apr. 7, 2004) (stating "[w]hile the public interest in promoting invention is strong, the public interest in the enforcement of valid patents is stronger" and denying motion to stay injunction pending appeal); *Magnesystems, Inc. v. Nikken, Inc.*, 1994 WL 808421, at *6 (C.D. Cal. Aug. 8, 1994) (stating "[p]ublic policy favors the 'protection of rights secured by valid patents'" and denying stay) (citations omitted).  The public interest here is in favor of the enforcement of *e*Plus's patent rights, not a stay pending appeal.

### C.      The Bond Lawson Proposes Posting Is Inadequate

The supersedeas bond that Lawson proposes to file in the event the Court grants its proposed stay is wholly inadequate, and fails to protect *e*Plus's or the public's interest in the event Lawson does not prevail on appeal.  When a court grants a stay of a money judgment pending appeal, the bond should be adequate in amount to cover the full amount of the judgment, in addition to post-judgment interest, and the like, in other words, the full monetary damages that Lawson will be required to pay in the event it does not prevail on its appeal.  11 Wright, Miller and Kane, Federal Practice and Procedure, § 2905, n.12 (2012) (citing cases); *see also Grand Union Co. v. Food Employers Labor Relations, Ass'n,* 637 F. Supp. 356, 357 (D.D.C. 1986) (appellant bears burden of justifying any departure from full amount of judgment).  Particularly where this award is for contempt of a permanent injunction that was entered in order to protect *e*Plus from ongoing irreparable harm, and a portion of the award is intended to coerce Lawson to comply with the injunction, anything less than the full amount of the judgment plus those costs and damages that will accrue on appeal would be insufficient.

First, the bond Lawson has presented to the Court would cover only the amount of the $18.2 million compensatory award for past damages to *e*Plus plus post-judgment interest.  Thus, the bond would not be sufficient to cover the accumulating civil coercive fines of $62,362 ***per day*** that the Court has ordered Lawson to pay the Government.  Nor would it cover future damages to *e*Plus running from the date of the injunction forward if Lawson continues its contempt.  And it bears emphasis, Lawson all but admits that it has continued, and intends to continue, the conduct that the Court found contemptuous if the Court grants the stay.[8]

Indeed, Lawson appears to request that the Court altogether excuse it from liability for any form of damages pending the appeal, with liability to begin running only when and if the appeal is resolved adverse to Lawson.  Perhaps more incredibly, Lawson has suggested that in order for any post-August 16, 2013 damages for contempt to be awarded to *e*Plus, *e*Plus ***would have to file another lawsuit.***  *See* Aug. 26, 2013 Hrg. Tr. at 14 (counsel for Lawson claiming that if stay is granted *e*Plus "has the right to sue us for willful infringement in the event that we continue to engage in infringing conduct and lost the appeal").  The audacity of these arguments is remarkable.  Here, Lawson has been finally adjudicated as an infringer and enjoined, with its prior motions to stay the injunction decidedly rejected.  It has now been found in contempt of the injunction, and assessed compensatory damages and ongoing coercive fines.  Yet Lawson asks that within the context of this contempt proceeding the Court grant it an immunity from ongoing damages for the harm it is causing *e*Plus.  In support of these remarkable propositions, Lawson has cited no law whatsoever.

---

[8] Lawson's argument that it will be "irreparably harmed" in connection with its "ongoing business relations" if the stay is not granted plainly means that Lawson intends to rely on a stay as a grant of immunity to allow it to continue acting in contempt of the injunction.  Stay Br. at 8; *see also* Dkt. No. 1093 at 1(Lawson brief arguing "absent a stay … the price to Lawson of appellate review involves either the disruption of Lawson's relationship with existing customers, suffering the financial burden of coercive fines … or possibly both.").

The cumulative dollar amounts of the sums Lawson is proposing *not* to cover are quite substantial, and by far exceed the amount of the compensatory award to *e*Plus.  Assuming the appeal takes 18 months,[9] the daily civil coercive remedies alone would add up to nearly *$28 million*.  If the Court extrapolated an ongoing compensatory award to *e*Plus based on the past contempt award, *e*Plus estimates that this would be an additional $13.4 million that Lawson would owe to *e*Plus.  Yet Lawson does not propose that the bond cover either of these amounts.  If a stay of payment of the monetary awards is granted, the bond should be in an amount necessary to cover the awards *in full*, including post-judgment interest, accruing damages, and the like.

Second, it bears emphasis that Lawson has made no showing whatsoever that it cannot easily supply the full supersedeas bond.  *See U.S. v. Kurtz,* 528 F. Supp. 1113, 1115 (E.D. Pa. 1981) (appellant must show that posting bond in full amount is either impossible or impractical and must propose plan that will provide adequate security for appellee).  Lawson conceded during the August 26, 2013 conference call with the Court that it was not claiming that filing the bond would break the company.  Nor would such a contention be plausible in light of Lawson's finances.  There are no facts before this Court that would allow it to find that posting a bond in full would present any difficulty to Lawson, or that such a requirement would punish Lawson for exercising its right of appeal.

This latter argument, raised by Lawson's counsel during the August 26 conference call, is easily dismissed.  Any litigant, including a plaintiff, faces the prospect of mounting costs in the event it continues or appeals a litigation.  Any litigant must make a cost-benefit analysis whether to proceed with the next stage of a litigation or appeal a negative decision.  Here, Lawson was

---

[9] This is the amount of time that the appeal from trial consumed, running from the Notice of Appeal to issuance of the mandate.  This duration is not unusual for a Federal Circuit appeal.

found an infringer and enjoined.  In the face of that injunction, it chose to incur the substantial risk of an adverse judgment by implementing an alleged design-around that it knew was not likely to pass muster; as this Court noted, Lawson rejected its counsel's advice to make more significant changes.  It also chose to continue to maintain and support the infringing RSS Configurations notwithstanding the injunction.  If it now chooses to appeal the decision and continue the same conduct this Court has found contemptuous while the appeal is pending, it should not be heard to complain of the damages it will face when its appeal is rejected.  Lawson stands no differently from any other infringer, and its lament of being punished for filing an appeal ought be soundly rejected.

## IV.    CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court deny Lawson's Motions For a Stay Pending Appeal and to Approve Supersedeas Bond.

Respectfully submitted,

September 3, 2013

_____/s/_____
David M. Young (VSB #35997)
Jennifer A. Albert (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
dyoung@goodwinprocter.com
jalbert@goodwinprocter.com

Michael G. Strapp (*admitted pro hac vice*)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
mstrapp@goodwinprocter.com

Craig T. Merritt (VSB #20281)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com

Attorneys for Plaintiff, ePlus Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of September, 2013, I will electronically file the foregoing

**PLAINTIFF ePLUS INC.'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANT'S MOTIONS FOR A STAY PENDING APPEAL AND TO APPROVE SUPERSEDEAS BOND**

with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) via email to the following:

Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1238
(804) 698-5119 (Fax)
robert.angle@troutmansanders.com
dabney.carr@troutmansanders.com

Josh A. Krevitt
Daniel J. Thomasch
Richard W. Mark
Christopher D. Dusseault
Jason C. Lo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
(212) 351-4035
jkrevitt&gibsondunn.com
dthomasch@gibsondunn.com
rmark@gibsondunn.com
jlo@gibsondunn.com

*Counsel for Defendant Lawson Software, Inc.*

_____/s/_____
David M. Young (VSB #35997)
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dyoung@goodwinprocter.com