# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-620 |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT LAWSON SOFTWARE, INC.'S
## CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL AND MOTION TO APPROVE LAWSON'S SUPERSEDEAS BOND AND STAY THE ENFORCEMENT OF THE COURT'S ORDER ENTERING JUDGMENT FOR DAMAGES PENDING APPEAL AND TO STAY EXECUTION

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
rmark@gibsondunn.com
cdusseault@gibsondunn.com
jlo@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT .............................................................................................................. 2

    A.   The Proposed Superseadeas Bond Fully Secures ePlus's Interest in the
Judgment ........................................................................................................... 2

    B.   The August 16, 2013 Order Finding that RQC Falls Under the Injunction
Presents New Issues That Have Never Been Decided On Appeal ........................ 6

    C.   Lawson Raises Substantial Issues For Appeal ...................................................... 7

        1.   This Court's Method Of Determining What Was "Contended" In The
Underlying Trial Presents a Substantial Question For Appeal ................... 7

        2.   The Court's Application of the Doctrine of Equivalents To Perform the
*TiVo* Colorability Analysis Is Another Substantial Issue For Appeal ........ 9

        3.   The Court's Reliance on Mischaracterizations of Documents Also Presents
A Substantial Issue ................................................................................... 11

    D.   The Final Cancellation of ePlus's Patent Would Terminate This Case ................ 12

    E.   Lawson Will Be Irreparably Harmed Absent a Stay ........................................... 14

    F.   ePlus Will Not Be Harmed by a Stay .................................................................. 14

III. CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Chesapeake, Potomac, & Tidewater Books, Inc.*,
190 F.R.D. 190 (E.D. Va. 1999) ................................................................... 2, 3, 5

*Ashcraft v. Conoco, Inc.*,
218 F.3d 282 (4th Cir. 2000) ................................................................... 12

*Builders Concrete, Inc. v. Bremerton Concrete Products Co.*,
757 F.2d 255 (Fed. Cir. 1984) ................................................................... 10

*Fed. Prescription Service, Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980) ................................................................... 5

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F. 3d 1330 (Fed. Cir. 2013) ................................................................... 13

*Grand Union Co.v. Good Employers Labor Relations, Ass'n*,
637 F. Supp. 356 (D.D.C. 1986) ................................................................... 3

*Graver Tank & Mfg Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950) ................................................................... 10

*KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*,
776 F.2d 1522 (Fed. Circ. 1985) ................................................................... 9

*McLean v. Central States, Southeast and Southwest Areas Pension Fund*,
762 F.2d 1204 (4th Cir. 1985) ................................................................... 12

*nCube Corp. v. SeaChange International, Inc.*,
2012 WL 4863409 (D. Del. Oct 9, 2012) ................................................................... 7, 8

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
897 F.2d 511 (Fed. Cir. 1990) ................................................................... 7

*Stone v. City and County of San Francisco*,
145 F.R.D. 553 (N.D. Cal. 1993) ................................................................... 4, 5

*U.S. v. Kurtz*,
528 F. Supp. 1113 (E.D. Pa. 1981) ................................................................... 3

*United States v. City of Yonkers*,
856 F.2d 444 (2d Cir. 1988),
*rev'd sub nom. Spallone v. United States*, 493 U.S. 265 (1990) ................................................................... 4, 5

## TABLE OF AUTHORITIES
### [Continued]

**Page(s)**

*United States v. United Mine Workers of America*,
330 U.S. 258 (1947)..............................................................................................12

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977).................................................................................7

*Wavetronix LLC v. EIS Electronic Integrated Systems*,
573 F.3d 1343 (Fed. Cir. 2009) .............................................................................10

*Young v. U.S. ex pel. Vuitton et Fils S.A.*,
481 U.S. 787 (1987)..............................................................................................13

**Statutes**

28 U.S.C. 1292(a)(1)..............................................................................................14

Fed. R. Civ. P. 62(d) ...............................................................................................1

**Other Authorities**

11 Wright, Miller and Kane, Federal Practice and Procedure, § 2905 ....................3

**Rules**

Fed. R. Civ. Proc. 62(d) ...........................................................................................2

# I.    INTRODUCTION

Lawson seeks to stay two aspects of the Court's August 16, 2013 Order:

First, Lawson seeks to stay enforcement of the monetary judgment by ePlus, and has proposed a supersedeas bond in the amount of $18,217,950 to secure the full amount of that judgment, plus interest that will accrue during the appeal.  That bond ensures that, if Lawson is unsuccessful on appeal, funds will be available to pay ePlus all sums awarded to it.  Once the Court approves the bond, Lawson is entitled to a stay of execution as a matter of right.  Fed. R. Civ. P. 62(d).

Second, Lawson seeks to stay only the portion of the Court's August 16, 2013 Order that requires it to come into (and demonstrate) compliance with the Injunction by September 20, 2013 in regard to the sale, maintenance, support and service of redesigned Configurations 3 and 5 containing RQC, which the Court has now found are not more than colorably different from the previous configurations containing RSS.  To be clear, Lawson does not seek or need to stay that portion of the Court's order requiring a demonstration of compliance by September 20, 2013 with regard to its complete cessation of enjoined activities regarding RSS.  Lawson does not require or request such a stay because it has long since ended sales, maintenance, service and support for RSS, and it has gone well beyond the policies disclosed at the contempt hearing to ensure compliance.  Lawson fully intends to demonstrate its compliance with the Injunction with respect to RSS-containing configurations before the September 20, 2013 deadline.

Lawson seeks this stay so that it may seek appellate relief without suffering harm to its customer relationships that could result from complying with the Injunction that may, on appeal, be vacated, or ruled not to apply to RQC.  In the absence of a stay, Lawson will have to choose between the certain harm that will flow to it from customer disruption or the abandonment of a

substantial appeal; risking the imposition of more than $22 million per year for the privilege of pursuing an appeal is not a commercially viable option.  A stay would preserve the status quo and allow Lawson to present numerous issues of first impression to the Federal Circuit; issues on which Lawson respectfully submits it is likely to prevail on appeal.  Moreover, the Patent and Trademark Office ("PTO") and Board of Patent Appeals and Interferences ("BPAI") have already determined that the sole remaining patent claim at issue in this case is invalid, and an affirmance of that decision would result in vacation of the injunction and dismissal of the civil contempt proceeding.  ePlus's appeal to the Federal Circuit on that issue has been fully briefed and is awaiting oral argument.

## II.   ARGUMENT

### A.   The Proposed Superseadeas Bond Fully Secures ePlus's Interest in the Judgment

In its August 16, 2013 Order, the Court awarded ePlus $18,167,950 in damages, plus interest thereon accruing at 0.12% annually.  Lawson has requested approval of a supersedeas bond totaling $18,217,950, which covers the judgment amount plus $50,000.00, and thus is sufficient to fully secure the entire judgment owing to ePlus plus any post-judgment interest that would accrue during the pendency of an appeal.  Should Lawson's appeal prove unsuccessful, ePlus is assured of being paid the entire amount awarded to it.  As such, under Federal Rule of Civil Procedure 62(d), Lawson is entitled to a stay of execution of the judgment pending appeal as a matter of right.  Fed. R. Civ. Proc. 62(d); *Alexander v. Chesapeake, Potomac, & Tidewater Books, Inc.*, 190 F.R.D. 190, 192 (E.D. Va. 1999) ("Rule 62(d) by its terms, says no more than that the appellant may obtain a stay as a matter of right by posting" a bond "that fully secures the entire judgment.").  Unlike Lawson's separate request to stay compliance with the Injunction

with respect to RQC, a stay of execution of the monetary judgment based on the posting of full security is not discretionary.

Although the bond completely secures the judgment plus costs and interest, ePlus objects to the amount of the bond as inadequate because it would not cover the coercive civil fines that would be payable to the Court if Lawson were to violate the injunction going forward, or future, unadjudicated, damages that ePlus contends it would suffer if Lawson were to violate the injunction.  D.I. 1100 (ePlus Op. Br.) at 23.  ePlus cites no authority for its contention that Lawson must bond the potential fine that would be paid not to ePlus, but to the Court, or assumed, future damages that are not part of the judgment being appealed.[1]

Importantly, Lawson has until September 20, 2013 to purge its contempt and establish compliance with the amended injunction.  D.I. 1088 (Aug. 16, 2013 Order) at 2.  There is, at present, no basis to assume that any coercive fine will ever be imposed or any future damages will arise.  Since ePlus is fully bonded for the entire amount the Court awarded to ePlus (plus interest), there is no basis for ePlus to oppose a stay of the August 16, 2013 Order based on insufficiency of the bond.  Certainly there is no basis to oppose a stay of execution of the current monetary judgment.  *See Alexander*, 190 F.R.D. at 192.

Even assuming a stay of the August 16, 2013 Order is not granted, and further assuming that Lawson were unable to purge itself of contempt, any coercive fine would be payable to the

---

[1] The cases ePlus cites to support its argument that Lawson's proposed bond is inadequate are completely inapposite.  In both *Grand Union Co.v. Good Employers Labor Relations, Ass'n*, 637 F. Supp. 356 (D.D.C. 1986), and *U.S. v. Kurtz*, 528 F. Supp. 1113 (E.D. Pa. 1981), the appellants requested stays pending appeal without posting any bond at all.  Here, Lawson has proposed posting a bond for the full amount of the judgment, interest and costs on appeal.  Similarly, the cases cited in 11 Wright, Miller and Kane, Federal Practice and Procedure, § 2905 n. 12 stand for the general proposition that ordinarily a bond will be set in amount that covers the judgment in full together with costs, interest and damages for delay.  None of the cases cited therein contemplates bonding assumed, uncertain, future damages.

3

Court, not to ePlus.  Thus even if these hypothetical future fines are considered, they do not affect the security of ePlus for its judgment, and ePlus lacks standing to complain about the adequacy of any security in this respect.  Future damage to ePlus is an entirely hypothetical proposition.  Indeed, ePlus did not even prove actual harm in the contempt proceeding.  Any claim for future damages would, logically, have to be the subject of a separate proceeding independent of the judgment at issue here.

ePlus is entirely wrong in its assumption that coercive fines would accrue during a stay of the Court's August 16, 2013 Order as it applies to RQC.  Staying the coercive order, and the fines flowing from it, logically means that there is no accrual in the stay period.  The cases on this issue uniformly hold that if a court imposes a coercive fine in a civil contempt case, which fine is stayed pending appeal, the fine does not accrue during the pendency of the appeal, while the stay is in place.  *See United States v. City of Yonkers*, 856 F.2d 444 (2d Cir. 1988), *rev'd sub nom. Spallone v. United States*, 493 U.S. 265 (1990); *Stone v. City and County of San Francisco*, 145 F.R.D. 553, 554 (N.D. Cal. 1993).  ePlus failed to bring this case law to the Court's attention conceding, tacitly, its inability to distinguish either case.

In *City of Yonkers*, the district court imposed coercive contempt fines against a city and its councilmembers until the councilmembers voted in favor of an ordinance.  The councilmembers were to be fined $500 per day and imprisoned if they did not comply after ten days, and the city was to be fined $100 on the first day with the fine doubling each day thereafter.  *City of Yonkers*, 856 F.2d at 450.  The Second Circuit stayed the imposition of the fines on day seven.  *Id.* at 452.  Although the Second Circuit later affirmed the district court's order (with one modification), it ruled that on the day its stay dissolved, the contempt fines would resume at the level specified for the eighth day, essentially resuming at the point where

the stay was imposed.  *Id.* at 460.  The coercive fines did not continue to accrue for the interim days from when the stay was imposed to when it was lifted.

In *Stone*, the district court followed *City of Yonkers*, holding that "contempt fines do not accrue during the pendency of [a] stay and appeal."  *Stone*, 145 F.R.D. at 559.  The court found that where the Ninth Circuit granted a stay of coercive fines a day before they began to accrue and later affirmed the district court on appeal, the fines did not accumulate during the appeal and were not due upon the resolution of the appeal.  *Id.* at 559-61.  Accordingly, because coercive fines do not accrue during a stay, there is no basis to require a bond to secure those sums.[2]

The purpose of a supersedeas bond is "to preserve the status quo while protecting the non-appealing party's rights pending appeal," not the imposition of a penalty or punishment.  *Alexander*, 190 F.R.D. at 193.  Lawson's proposed bond securing the full judgment plus interest and costs provides that protection, and indeed Courts have exercised discretion to approve bonds for less than the full amount of a judgment or waive bond requirements entirely.  *See, e.g. Fed. Prescription Service, Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755 (D.C. Cir. 1980) (upholding grant of stay pending appeal without posting a supersedeas bond where the judgment debtor's assets were large in comparison to the judgment).  In addition, just as stays were granted in *City of Yonkers* and *Stone* to preserve the status quo pending appeal, a stay of the Court's Order with respect to RQC is necessary here to preserve the status quo while Lawson seeks review.

---

[2]  It is also illogical to require a party to post security for a contingent fine that only becomes payable if the party fails at a future compliance obligation.  An immediate posting requirement would short circuit the very compliance – or attempt to make an orderly challenge to the fine – that the fine was designed to encourage.

**B.**     **The August 16, 2013 Order Finding that RQC Falls Under the Injunction Presents New Issues That Have Never Been Decided On Appeal**

ePlus repeatedly intimates that the issues Lawson raises have already been resolved on appeal because the Federal Circuit previously denied a stay of the May 23, 2011 Injunction pending appeal and addressed that Injunction in its 2012 Opinion.  This is not correct.  This Court's August 16, 2013 Order finding RQC not more than colorably different from RSS and, holding that sales and service of configurations with RQC violate the Injunction, has never been addressed by the Federal Circuit.  Nor has the Federal Circuit previously had the opportunity to address the proper scope of the Injunction following the reversal of the jury verdict; allowing this Court to do so in the first instance was the point of its remand order.

Because Lawson is not seeking to stay the May 23, 2011 Injunction apart from its application to the redesigned RQC-containing Configuration Nos. 3 and 5, that injunction would remain in force against RSS if the Court were to grant the stay Lawson requests.  Indeed, Lawson has taken efforts to comply with the Injunction as it pertains to RSS, and will present the Court with evidence of those efforts on or before September 20, 2013.  RSS is not a commercial product made, sold, supported, serviced or maintained by Lawson.  While Lawson disputes that its prior conduct regarding RSS put it in contempt of the May 23, 2011 Injunction, that is an issue for appeal, but not relevant to the instant request for a stay, as Lawson has taken additional steps to ensure complete compliance with the Injunction as it pertains to RSS.

In short, Lawson's requested relief is not for the purpose of relitigating issues regarding the May 23, 2011 Injunction that were previously presented to the Federal Circuit.  To the contrary, Lawson requests a stay to allow it to appeal this Court's conclusions, reached for the first time in the August 16, 2013 Order, that RQC-containing Configuration Nos. 3 and 5 are not more than colorably different than the corresponding RSS-containing configurations found to

6

infringe claim 26 of the '683 patent at the merits trial, that the redesigned configurations infringe claim 26, and that Lawson is in contempt of the Injunction by virtue of those findings. Those issues have never been presented to the Federal Circuit.

### C.    Lawson Raises Substantial Issues For Appeal

Lawson recognizes that the Court gave careful consideration to its arguments, including its arguments regarding the proper application of *TiVo*, but ultimately disagreed with them for the reasons stated in the Court's comprehensive, seventy-page Memorandum Opinion addressing a host of legal and factual issues. To grant the stay Lawson requests, it is not necessary that the Court change its mind, or even acknowledge that Lawson is likely to prevail on appeal, although such a conclusion is justified by the record evidence and governing precedent. Rather, all that is required is that the Court recognizes that there are "substantial" issues on appeal raising difficult legal questions, and that the status quo should be maintained to prevent irreparable harm to the appellant while those issues are fully appealed. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977). As explained in Lawson's opening brief, there are a host of issues on appeal, especially concerning the application of *TiVo*, many of which present entirely novel legal issues for which there is little Federal Circuit precedent. D.I. 1091 (Lawson Br. In Support of Motion to Stay Pending Appeal) at 3-4.

### 1.    This Court's Method Of Determining What Was "Contended" In The Underlying Trial Presents a Substantial Question For Appeal

While not rearguing arguments and authorities with which this Court is well familiar, Lawson showed in its opening brief that reasonable jurists may disagree with this Court's approach of looking to pre-trial infringement contentions rather than the trial record to determine what was "contended" at the underlying trial, as demonstrated by *nCube Corp. v. SeaChange*

*International, Inc.*, 2012 WL 4863409, at *3-5 (D. Del. Oct 9, 2012).  Tellingly, ePlus avoids

any discussion of this case in its brief.  In *nCube*, the trial court did examine the trial record to

determine what was "contended."  *Id.*  This Court found in its August 16, 2013 Order that the

district court decision in *nCube*, which fully supports Lawson's analytic approach to the

determination of what was "contended and proved" at trial, was "of no utility because '[c]ourts

have always resisted inquiring into a jury's thought processes.'"  D.I. 1087 at 17 (citation

omitted).  But, that mixes the question of what was contended with that of what was proved,

which are two distinct inquiries.  The failure of the *nCube* court to address the issue that troubles

this Court suggests only that the *nCube* court found it self-evident that to carry out the Federal

Circuit's mandate in *TiVo*, parties to a contempt proceeding must revisit what was actually

testified to at trial.  The *nCube* case is now on appeal to the Federal Circuit, and has been fully

briefed and argued in that court.  Lawson respectfully suggests that even in the absence of an

*nCube* decision to date in the Federal Circuit, this Court should recognize that its complete

dismissal of the analytical approach used in *nCube* is unlikely to be approved by the Federal

Circuit, given that at oral argument in *nCube* no panel member expressed the slightest concern

about determining what was contended at the merits trial by looking at the trial testimony of the

plaintiff's expert witness.  Oral Argument of August 6, 2013 at 04:35-12:30, *nCube Corp. v.

SeaChange Int'l, Inc.*, Appeal No. 2013-1066, (Fed. Cir. 2013), *available at*

http://www.cafc.uscourts.gov/oral-argument-recordings/all/ncube.html.  While the parties in that

case differed as to the significance of plaintiff's expert witness's testimony, neither party

suggested that *TiVo* did not require looking at the trial testimony to determine what was

"contended," and the panel expressed no concern about the district court's election to do so.  *Id.*

On the other hand, Lawson is not aware of any authority, and ePlus has cited none, using this Court's approach of looking to pre-trial contentions to determine what was "contended" at trial. While the parties to the *nCube* appeal and this case must all await a decision of the Federal Circuit, it is beyond dispute that this is a substantial issue that Lawson deserves to have resolved on appeal.

> **2. The Court's Application of the Doctrine of Equivalents To Perform the *TiVo* Colorability Analysis Is Another Substantial Issue For Appeal**

As another example of a substantial legal issue for appeal, Lawson raised in its opening brief that this Court seems to have erred in applying the doctrine of equivalents to determine that RQC is not more than colorably different from RSS. In addressing this argument, ePlus misreads *KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522 (Fed. Circ. 1985). Importantly, contrary to ePlus's argument, the Federal Circuit did *not* hold that "the 'colorability' analysis derives from the doctrine of equivalents," as ePlus claims. Instead, the portion of *KSM* cited by ePlus and this Court is not the Federal Circuit's holding, but simply a recitation of the reasoning supporting the trial court's judgment—*a judgment that was vacated by the Federal Circuit*. *KSM*, 776 F. 2d at 1527, 1532. A plain reading of *KSM* reveals that the Federal Circuit considered several approaches to the colorable difference analysis taken by courts—one of which was the doctrine-of-equivalents-based approach—and held the correct approach was *not* the doctrine-of-equivalents-based approach. *KSM*, 776 F. 2d at 1530-32. Indeed, after characterizing the doctrine-of-equivalents-based approach to the colorable differences test as a *substantive* analysis, the court went on to hold that "[the Federal Circuit] conclude[s] that [a] procedural analysis … should be adopted as the general rule." *KSM*, 776 F. 2d at 1532. Thus, whether the doctrine of equivalents is the proper test to determine colorability under *TiVo* is a substantial legal issue to which the answer may likely be "no."

Even if, however, the doctrine of equivalents provides the proper framework for the colorable differences analysis, there is a substantial question as to whether this Court correctly applied that test because RQC and RSS do not perform "substantially the same function *in substantially the same way* to obtain the same result." *Graver Tank & Mfg Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (emphasis added). The nature of the changes between the products is not in dispute: a user cannot browse or purchase items from the Item Master if her requisition already contains items from a Punchout website, and vice versa; and, a user cannot browse or purchase items from one Punchout website if her requisition already contains items from a different Punchout website. D.I. 1069 (Lawson's Proposed Findings of Fact and Conclusions of Law) at ¶¶ 86-87. Thus, a user who, as demonstrated by ePlus at the underlying trial, wishes to purchase items from the Item Master and a Punchout website, or from two different Punchout websites, cannot accomplish the same result *in the same way* in RQC as she could in RSS. In such instances, the RQC user would need to process multiple requisitions separately to achieve the desired result, whereas the RSS user could accomplish the same result with a single requisition and a single shopping session. Indeed, this functionality, present in RSS and lacking in RQC, is a "big deal" according to ePlus's technical expert. D.I. 1069 (Lawson's Proposed Findings of Fact and Conclusions of Law) at ¶ 89; *see also id.* at ¶¶ 90-94 (ePlus's technical expert touting the benefits of the now-lacking functionality). That the products do not function in the "same way" is fatal to the doctrine of equivalents test even if the products perform the same function to achieve the same result. *See Wavetronix LLC v. EIS Electronic Integrated Systems*, 573 F.3d 1343 (Fed. Cir. 2009) ("Even if these comparisons within the REQ array were determined to be PDFEs, the 'way' in which the combination of the REQ array and the NAMP array defines lanes . . . is much different."); *Builders Concrete, Inc. v. Bremerton*

10

*Concrete Products Co.*, 757 F.2d 255 (Fed. Cir. 1984) (Affirming district court's holding that "Bremerton's side-opening utility passage performs the same function to achieve the same result as the Sluys utility passage defined in claim 10, but not in substantially the same way, and that the structures are not equivalent.").  This too presents a substantial issue for appeal.

### 3.    The Court's Reliance on Mischaracterizations of Documents Also Presents A Substantial Issue

ePlus contends that the Court's holding that RQC is not more than colorably different from RSS is correct because in addition to applying the doctrine of equivalents, the Court examined evidence characterizing the changes.  D.I. 1100 (ePlus Opp. Br.) at 8, 12-13.  ePlus, however, mischaracterizes this evidence, and the Court, at ePlus's urging, relied on documents that in no way amount to "clear and convincing evidence," as ePlus was required to establish. For example, the Court cites PX-1030 for the proposition that Lawson claimed the only change in functionality between RSS and RQC was "'a warning pop-up that you are about to leave the Lawson site when you punch out.'"  D.I. 1087 (Aug. 16, 2013 Order) at 28 (quoting PX-1030). However, the next sentence in PX-1030, which is also quoted by the Court, states that, *in addition to the warning pop up*, "if you try to punch out on a req that is already in use with non punch out items, it will tell you that you need to open a separate req and it will perform that action for you."  PX-1030.  Thus it is clear that a warning pop-up is not "the only change in functionality between RSS and RQC."  D.I. 1087 (Aug. 16, 2013 Order) at 28.  As just one more example, the Court relies on PX-1124 for the proposition that RQC and RSS look "exactly" alike and that "'users will probably not even notice the difference[.]'"  D.I. 1087 (Aug. 16, 2013 Order) at 29 (quoting PX-1124).  The author of PX-1124, however, was obviously basing her observation on the user interface modifications aimed at designing around the '172 patent; indeed, she could not have been commenting on differences in Punchout relevant to this

contempt proceeding because her observations were of Lawson's internal implementation of RQC, *which did not include Punchout* and was therefore not one of the configurations at issue in the contempt proceeding.  D.I. 1069 (Lawson's Proposed Findings of Fact and Conclusions of Law) at ¶ 126.  ePlus is all too willing to allow the Court to base its opinion on inapposite documents, a strategy that could pay off if Lawson is denied a stay and is thus effectively unable to pursue an appeal.  That is not a strategy that this Court should reward.

### D.    The Final Cancellation of ePlus's Patent Would Terminate This Case

Although ePlus argues otherwise, the law is indeed clear:  if the Federal Circuit affirms the United States Patent and Trademark Office's ("PTO") cancellation of the asserted claim before the completion of all appeals of the contempt Order, this case ends and any civil contempt finding would be vacated.  The Supreme Court explained in *United States v. United Mine Workers of America*, 330 U.S. 258, 294 (1947), in civil contempt, as opposed to criminal contempt, "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued."  The Fourth Circuit has followed the Supreme Court's guidance, uniformly holding that reversal of the underlying order negates any civil contempt sanctions predicated on contempt of that order.  *McLean v. Central States, Southeast and Southwest Areas Pension Fund,* 762 F.2d 1204, 1210 (4th Cir. 1985) ("Although a criminal contempt sanction stands even if the underlying order is reversed, reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon."); s*ee also Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000) ("[W]e find the district court abused its discretion when . . . it ordered Mr. Reiss to disclose the names and addresses of the individuals who had informed Mr. Reiss about the $36 million settlement figure.  It therefore follows that the district court's October 23, 1988 order holding Mr. Reiss in civil contempt for disobeying these orders must be overturned.").  This is a critical difference between criminal and civil contempt and derives from the fact that civil

contempt is a remedial proceeding, and the holder of an invalid patent deserves no remedy. Criminal contempt, which addresses the power of the Court is different, but this is not a criminal contempt case (which would have had to be prosecuted by the government, before a jury). *Young v. U.S. ex pel. Vuitton et Fils S.A.*, 481 U.S. 787, 798-99 (1987).

Indeed, in a recent patent ruling, the Federal Circuit has held, clearly, that where a patent is invalidated on reexamination, extant judgments based on infringement of the patent are void. In *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F. 3d 1330 (Fed. Cir. 2013), Fresenius was adjudged to infringe Baxter's patent. *Id.* at 1331-32. On appeal, the Federal Circuit affirmed the validity of some of the asserted claims, and remanded for reconsideration of the injunction and post-verdict damages (the infringement finding was not appealed). *Id.* at 1332-33. On remand, the district court entered final judgment in favor of Baxter and the parties cross-appealed, with Fresenius attacking the amount of the judgment against it. *Id.* at 1333-34. While that appeal was pending, the Federal Circuit affirmed the PTO's cancellation of the asserted claims. *Id.* at 1335. On Fresenius's appeal, Baxter argued that the cancellation was irrelevant to the award of damages that it had received because patent validity and infringement had already been conclusively decided. *Id.* at 1340. The Federal Circuit held that even though liability was no longer contested, the remedies issues on appeal were sufficient to render the judgment susceptible to the PTO's cancellation of the asserted claims. *Id.* at 1340-46. Accordingly, the Federal Circuit held the litigation moot, and ordered the district court to dismiss the case. *Id.* at 1347.

The Federal Circuit's holding in *Fresenius* is directly on point here, where the Court's June 11, 2013 Order modifying and refusing to dissolve the Injunction is on direct appeal. D.I. 1085 (Notice of Appeal). Nonetheless, ePlus does not even cite *Fresenius* when it argues that

the Injunction is "final" and immutable.  There is no question that the modification of an

Injunction is appealable, as is the refusal to modify and the refusal to dissolve an Injunction.  28

U.S.C. 1292(a)(1).  Under *Fresenius*, and the Supreme Court and Fourth Circuit precedent

discussed above, the Federal Circuit's affirmance of the PTO's cancellation would render this

entire litigation moot.

### E.      Lawson Will Be Irreparably Harmed Absent a Stay

Lawson will suffer irreparable harm if the August 16, 2013 Order is not stayed, and

Lawson is forced to stop sales, maintenance, service, and support of RQC.  Lawson has already

suffered harm by having been enjoined from lawful activities, namely the sale, maintenance,

service, and support of Configuration 2, from May 23, 2011 to June 11, 2013.  To comply with

the injunction, Lawson was forced to spend valuable resources in the (unnecessary) redesign of

the RSS module along dimensions not relevant to claim 26.  Similarly this time, without a stay,

even if Lawson ultimately prevails on appeal, that victory will be hollow as Lawson will have

been harmed by an extended injunction on lawful activities.

It is an appropriate exercise of the Court's discretion to implement a stay here to preserve

the status quo with respect to RQC because if Lawson ultimately prevails, either through

appellate review of this Court's August 16, 2013 Order or through affirmance of the PTO's

invalidation of the remaining patent claim, the bell cannot be unrung.

### F.      ePlus Will Not Be Harmed by a Stay

ePlus's reliance on harm arguments from the May 2011 injunction is inappropriate.  The

May 2011 Injunction related to a number of different product configurations, including

Configuration 2, which was licensed to far more customers than the other enjoined

configurations, and which is now freely offerable by Lawson.  To the extent any alleged harm to

ePlus arises out of competition involving allowable product configurations, that harm cannot be considered here.

If a stay is not granted, Lawson can still continue to sell, service, and maintain a number of software configurations, including configurations that include every component of configurations 3 or 5 other than Punchout.[3]  As such, the only harm ePlus can tie to a stay must arise out of the sale, service, and maintenance of Punchout, but ePlus has previously argued to this Court that Punchout "does not drive S3 sales," and that "Lawson has never won a sale merely because of its Punchout product."  D.I. 641 (ePlus Br. in Support of Mot. for Permanent Inj.) at 20 (referencing testimony from Lawson's witness).  In fact, ePlus offered no evidence at the contempt hearing, or at any time, that Lawson's post-injunction conduct found to infringe claim 26 actually harmed ePlus.  The only evidence in the record on that subject establishes the absence of harm, as ePlus's President of Systems and Content Services testified that ePlus made no attempt to take advantage of the Injunction and convert Lawson customers to ePlus.  D.I. 1069 (Lawson's Proposed Findings of Fact and Conclusions of Law) at ¶¶ 345-46.  ePlus will likely suffer no harm if a stay is granted, which is in stark contrast to the substantial pecuniary and business harm Lawson will suffer absent a stay.

### III.   CONCLUSION

For the foregoing reasons, Lawson respectfully requests the Court grant its Motion for a Stay Pending Appeal (D.I. 1091) and its Motion to Approve Lawson's Supersedeas Bond and Stay the Enforcement of the Court's Order Entering Judgment for Damages Pending Appeal and to Stay Execution (D.I. 1098).

Dated:  September 6, 2013

---

[3]  As this Court noted in its Memorandum Opinion, configurations that lacked RSS and Punchout were found by the jury not to infringe claim 26.  D.I. 1087 at 27 n. 12.

Respectfully submitted:

LAWSON SOFTWARE, INC.

By: _____/s/_____

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of September, 2013, a true copy of the foregoing will be filed

electronically with the Clerk of Court using the CM/ECF system, which will send a notification

of such filing (NEF) to the following:

Craig T. Merritt                                James D. Clements
Henry I. Willett, III                           **GOODWIN PROCTER, LLP**
**CHRISTIAN & BARTON, LLP**                      Exchange Place
909 East Main Street, Suite 1200                53 State Street
Richmond, Virginia 23219-3095                   Boston, MA 02109-2881
cmerritt@cblaw.com                              jclements@goodwinprocter.com
hwillett@cblaw.com

Jennifer A. Albert
David M. Young (VSB No. 35997)
**GOODWIN PROCTER, LLP**
901 New York Avenue, N.W.
Washington, DC 20001
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

                                       /s/
                         Dabney J. Carr, IV (VSB No. 28679)
                         Robert A. Angle (VSB No. 37691)
                         Megan C. Rahman (VSB No. 42678)
                         dabney.carr@troutmansanders.com
                         robert.angle@troutmansanders.com
                         megan.rahman@troutmansanders.com
                         **TROUTMAN SANDERS LLP**
                         1001 Haxall Point
                         Richmond, VA 23219
                         Telephone:  (804) 697-1200
                         Facsimile:  (804) 697-1339
                         *Counsel for Defendant Lawson Software, Inc.*