# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |  |
|---|---|---|
| ePLUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV620 (REP) |
| | ) | |
| LAWSON SOFTWARE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT LAWSON SOFTWARE, INC.'S REPORT OF COMPLIANCE WITH THE INJUNCTION ORDER (D.I. 1083) AS PROVIDED IN THE AUGUST 16, 2013 ORDER OF CONTEMPT

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
jkrevitt@gibsondunn.com
dthomasch@gibsondunn.com
rmark@gibsondunn.com
cdusseault@gibsondunn.com
jlo@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

I.    BACKGROUND ....................................................................................................... 4

   A.   The Injunction Order ........................................................................................ 4

   B.   The August 16, 2013 Contempt Order .............................................................. 5

II.   LAWSON HAS COMPLIED WITH THE RSS PROVISIONS OF THE INJUNCTION ORDER ....................................................................................................................... 6

   A.   Demonstrating Compliance To Purge Contempt ............................................... 6

   B.   Lawson Has Complied With The Injunction Order For Configuration No. 3 And Configuration No. 5 With The RSS Module ....................................................... 7

      1.   Lawson Stopped Making, Using, Selling, Offering to Sell, or Selling The RSS Module .......................................................................................................... 8

      2.   Lawson Stopped Maintaining and Servicing RSS ........................................ 8

      3.   Lawson Stopped Circulating, Publishing, and Disseminating RSS-Related Literature . 9

      4.   Lawson Stopped Providing Instruction, Encouragement, and Support on RSS and Product Configurations with RSS ............................................................... 10

III.  CONCLUSION ...................................................................................................... 15

## INTRODUCTION

The Court's August 16, 2013 Contempt Order (the "Contempt Order") imposed a coercive fine on Defendant Lawson Software, Inc. ("Lawson") "[t]o assure future compliance with the Injunction Order as amended (Docket No. 1083)."  D.I. 1088 at 1.  The Contempt Order also provides that if, by September 20, 2013, "Lawson purges the contempt and establishes that it is in compliance with the Injunction Order, no fine shall be payable."  *Id.* at 2.

Lawson has appealed from the Injunction Order and from the Contempt Order, and on September 11, 2013 Lawson moved the Federal Circuit to stay in part this Court's Contempt Order (D.I. 1088 ).  Yesterday afternoon, the Federal Circuit denied in part and granted in part Lawson's motion, ruling, *inter alia*, that the Circuit Court "will not stay the Contempt Order to the extent the order requires Lawson to comply immediately with the restrictions on its activity recited therein;" that "Lawson shall not have to demonstrate compliance with the May 23, 2011 injunction order during the pendency of its appeal of the Contempt Order;" and that "the $62,362 per day fine will only begin to accrue if Lawson is unsuccessful on appeal."  A copy of the Federal Circuit's *per curiam* Order is attached.

In its Contempt Order, this Court found that, following the injunction, "Lawson informed its customers that they could continue to run RSS"; "instruct[ed] its customers on how to continue to use RSS, even after the RQC product had been released";  "provided customers with instructions on how to run RQC and RSS in parallel"; "instructed its customers not to uninstall RSS before installing RQC"; made no effort "to determine if any of its customers who had been instructed on how to continue to run RSS ever actually switched over to RQC"; and "instructed its employees to provide support to customers merely upon the verification of RQC *download*."  D.I. 1087 at 39-43 (emphasis in original).  These and related actions recited in the Contempt Order regarding Lawson's post-injunction activities in relationship to its RSS customers were

held to be in "[d]irect [v]iolation" of the Injunction Order. *Id.* at 39. Lawson respectfully

disagrees with many of the Court's conclusions in this regard, but Lawson has no interest in

continuing any RSS-related activity that this Court disapproved of, and has no reason to forgo

the demonstration of its compliance with the Court's Contempt Order in this regard,

notwithstanding the Federal Circuit's September 19, 2013 Stay Order.[1]

Accordingly, Lawson submits this report, with the accompanying Declaration of

Elizabeth Homewood, executed on September 20, 2013 ("Homewood Dec."), to establish to the

Court that is in compliance with the Injunction Order's requirements in regard to Configuration

Nos. 3 and 5 **with the RSS module**, and in its relationships with customers who licensed such

configurations.[2] Lawson has not licensed any RSS-containing configuration since before entry

of the Injunction Order on May 23, 2011. As detailed below, after ceasing the RSS-related

activities recited in the Contempt Order, Lawson made specific inquiries of its customers who

had licensed RSS-containing Configuration Nos. 3 or 5, and received express confirmation that

such customers were not running Configuration Nos. 3 or 5 with RSS. Customers who had

either of those configurations in the past have represented to Lawson that RSS use has

terminated and that they are either using RQC in place of RSS or are not running either module.[3]

Lawson believes that such actions, all taken before the Contempt Order, establish that Lawson

---

[1]    In its stay motions to this Court and to the Federal Circuit, Lawson indicated its intent to establish compliance with that part of the Contempt Order that relates to Configuration Nos. 3 and 5 with the RSS module.

[2]    This submission does not address the Court's finding of contempt based on Lawson's current activity relating to Configuration Nos. 3 and 5 including the RQC module. Lawson was relieved of its obligation to demonstrate compliance in that regard by virtue of the Federal Circuit's Stay Order.

[3]    Lawson recently learned that one customer who had previously represented that RSS was terminated and RQC installed was apparently still running RSS. Homewood Dec. at ¶ 23. That customer has not allowed Lawson access to its system for purposes of an uninstallation. *Id.* Maintenance, service and support to that customer has been terminated. *Id.*

was not engaged in any on-going contempt in regard to RSS-containing configurations as of the date of the Contempt Order.  Nevertheless, in light of the Contempt Order, Lawson has instituted a further policy intended to go well beyond the Injunction Order, such that there can be no question of compliance.

Specifically, Lawson's new policy precludes maintenance, service or support to customers for any module in the configurations covered by the Injunction Order unless and until Lawson is able to login to the customer's system and uninstall RSS, or Lawson receives express confirmation that RSS is absent (not installed) on the customer's system.  To date, Lawson has confirmed uninstallation of RSS for 123 of 131 customers who were receiving maintenance, support and service for Configuration Nos. 3 or 5 as of May 2011:[4]  even though the remaining 8 customers have all previously informed Lawson that they do not use RSS, Lawson has blocked them from receiving any maintenance, service or support on any module in the covered configurations, which block will continue unless and until uninstallation of RSS is confirmed. Thus, Lawson is not providing any maintenance, support or service on any Configuration No. 3 or Configuration No. 5 customer who has RSS on its system, even though all such customers have previously assured Lawson that they are not using RSS.

Lawson anticipates that the remaining uninstallations will be accomplished promptly, but the policy denying maintenance, service and support is already in effect and will remain in effect until uninstallation is verified on a customer-by-customer basis.

---

[4]     While Lawson had 134 customers on maintenance as of the date of the Injunction Order for Configuration Nos. 3 or 5 with RSS, entitlement to maintenance, service and support for three customers (Madison Metropolitan School, Queens-Long Island Medical Group, and the Racine United School District) ended on May 31, 2011.  *See* Homewood Dec., Ex. B; Homewood Dec. at ¶ 13.  Those three former customers have not been eligible to receive maintenance, service or support on configurations covered by the Injunction Order since that date, and are not receiving maintenance service or support on those configurations now.  Thus, Lawson contacted the remaining 131 customers to determine their RSS termination status.

This Report of Compliance identifies the steps Lawson has taken to comply with the Injunction Order as it relates to Configuration Nos. 3 and 5 with **RSS**.

## I.   BACKGROUND

### A.   The Injunction Order

The Court's original Injunction Order, entered on May 23, 2011, enjoined Lawson, "including its officers, directors, agents, servants, [and] employees," from certain conduct relating to software configurations comprised of a listed set of software modules and colloquially referred to in that order as Configuration No. 2, Configuration No. 3 and Configuration No. 5. The Injunction Order prohibited Lawson from:

- "directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States" any of the infringing products,

- "installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services" of any of the infringing products,[5]

- "[c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services," and

- "[a]iding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services within the United States," including "the provision of any instruction, encouragement, installation, implementation, maintenance or support for any of the Infringing Products and Services."

D.I. 729 at 2-3; *see also* D.I. 1087 at 39-40.[6]   The Injunction Order further required Lawson "to notify all customers who have purchased all of any of the Infringing Products and Services of the terms of this Order, and to provide said customers with a copy of this Order."  D.I. 729 at 4.

---

[5]      In other words, "servicing and maintaining products sold before the injunction issued." D.I. 1087 at 40; *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519-20 (Fed. Cir. 2012).

[6]      For 277 customers who purchased the adjudicated infringing systems before the verdict and who provide only healthcare services, the Injunction Order did not take effect until November 23, 2011.  D.I. 729 at 4.

Following the Federal Circuit's decision on appeal in *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012), this Court, on June 11, 2013, issued an order that removed Configuration No. 2 from the scope of the Injunction Order.  D.I. 1082 at 29-30.  The Court provided that the Injunction Order would "remain in force as to those configurations that infringe Claim 26 of the '683 patent," specifically, Configurations No. 3 and 5.  *Id.* at 28.

The parties' expert witnesses agreed on the universe of Lawson customers who had Configuration Nos. 3 or 5, and an undisputed list of the customers, drawn from record evidence, was submitted to the Court on May 6, 2013.  *See* D.I. 1079; Homewood Dec., Ex. A.[7]  Of that set of 146 customers, 134 were licensees of Configuration Nos. 3 or 5 with the RSS module as of the date the Injunction Order was first entered in May 2011.  The other 12 on the list first licensed the configurations after entry of the Injunction Order and were provided with the redesigned RQC product, not RSS.  Homewood Dec. at ¶ 3 n.1.

## B.    The August 16, 2013 Contempt Order

At the April contempt hearing, Lawson presented evidence showing that it had complied with various provisions of the Injunction Order.  Several of these compliance points were not disputed (*i.e.*, Lawson provided customers with notice of the Injunction Order, ended the creation of maintenance patches, and, following the Injunction Order, did not install any enjoined configurations containing the RSS module).  *See* D.I. 1060 (Plaintiff ePlus Inc.'s Proposed Findings of Fact and Conclusions of Law in Support of Motion for Contempt for Violation of Permanent Injunction) at ¶¶ 123-153.  Nevertheless, critical disputes arose related to Lawson's activities relating to customers who had been RSS licensees, and whether Lawson was

---

[7]     The parties' experts limited their analyses to Configurations Nos. 3 and 5 consistent with the Court's direction for the contempt hearing.  Although the Court did not modify the Injunction Order until after the contempt hearing, a pre-hearing order eliminated Configuration No. 2 from the scope of the hearing, leaving injunctive prohibitions concerning Configuration Nos. 3 and 5 as the exclusive subject of the hearing.  *See* D.I. 1002.

continuing to provide customer support to customers who were or might be using the infringing configurations with the RSS module.  Based on that evidence, this Court ultimately concluded that "quite apart from the *Tivo* contempt analysis pertaining to Lawson's redesign effort, Lawson was in contempt of the Court's May 23, 2011 injunction by instructing (and permitting) its employees and agents to continue to service the Infringing Configurations and by deliberately instructing its customers on how to continue to use RSS, even after the RQC product had been released."  D.I. 1087 at 42-43.  This Court ordered that Lawson pay "a fine of $62,362 per day until Lawson establishes that it is in compliance with the Injunction Order; provided that the payment obligation is suspended until September 20, 2013 and, if by then, Lawson purges the contempt and establishes that it is in compliance with the Injunction Order, no fine shall be payable."  D.I. 1088 at 1-2.

## II.   LAWSON HAS COMPLIED WITH THE RSS PROVISIONS OF THE INJUNCTION ORDER

### A.   Demonstrating Compliance To Purge Contempt

"Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994).  The contemnor "must be able to avoid the penalty, or some part of it, by complying with the order."  *F.T.C. v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009).  Compliance with a prohibitory order is typically demonstrated through an affidavit attesting that the prohibited conduct has ceased and that the order has been fully complied with.  For example, in *Two Men & a Truck Int'l, Inc. v. Clete, Inc.*, the district court entered an injunction ordering the defendant to cease operating under the name "Truck and Two Guys Moving" and to change the phone numbers associated with his business.  No. 1:07CV394, 2009 WL 899698, at *1 (W.D.N.C. Mar. 26, 2009).  The defendant established compliance by stating that he was no longer operating

6

under the trade name and that the phone numbers had been changed.  *Id.*  In *N.Y. State Nat'l Org. for Women v. Terry*, the district court enjoined defendants from obstructing ingress into and egress from certain abortion clinics.  159 F.3d 86, 89 (2d. Cir. 1998).  When defendants continued to violate the injunction, the Court instituted a coercive daily fine that could be purged by obeying the injunction and publishing an "affirmation of intent" to abide by its terms.  *Id.* at 91, 94; *see also Bros. of the Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 525 (S.D. W. Va.) (requiring that defendant demonstrate compliance with a trademark injunction by submitting "a report detailing his compliance"); D.I. 1078 (4/26/13 Closing Arguments Hr'g Tr.) at 144:4-8 (ePlus counsel's argument referencing the submission of a statement of compliance as the mechanism for Lawson to show compliance).

### B.   Lawson Has Complied With The Injunction Order For Configuration No. 3 And Configuration No. 5 With The RSS Module

The Injunction Order as modified lists two sets of software modules, one as Configuration No. 3 and the other as Configuration No. 5, and defines those as the "Infringing Products."  D.I. 1083.  Both configurations as defined in the Injunction Order include RSS, and, as summarized below, Lawson submits it is in compliance with the Injunction Order for the covered configurations with the RSS module.  Some of the compliance actions were proved at the contempt hearing and not contested.  All other activities cited by the Court as a basis for contempt—specifically, customer support activities that the Court found to be supporting the Infringing Products—have ceased.  Lawson's new, stringent policy, unquestionably complies with the Injunction order in full by blocking all maintenance, service and support of Configuration Nos. 3 and 5 until and unless uninstallation of RSS is confirmed, and aims to go beyond the Injunction Order by prompting the **uninstallation** of RSS by customers who had Configuration Nos. 3 and 5.

### 1.    Lawson Stopped Making, Using, Selling, Offering to Sell, or Selling The RSS Module

The Injunction Order enjoined Lawson from:

> directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States" any of the infringing products.

D.I. 729 at 2.  Lawson is in compliance with this requirement of the Injunction Order for covered configurations with RSS.

Since the Injunction Order was entered, no offers to sell or sales of configurations with the RSS module (or of the RSS module itself) have taken place.  Homewood Dec. at ¶ 9; D.I. 1069 (Defendant Lawson Software's Proposed Findings of Fact and Conclusions of Law in Opposition to Plaintiff's Motion for Contempt) at ¶¶ 149-150.  ePlus did not contest that Lawson ceased selling and offering to sell RSS.  *See* D.I. 1060 at ¶¶ 123-153.[8]  Nor did the Court find any such facts as the basis for its contempt ruling.  Lawson respectfully submits that the cessation of RSS sales shows compliance with this prohibition.

### 2.    Lawson Stopped Maintaining and Servicing RSS

The Injunction Order further enjoined Lawson from:

> installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services" of any of the infringing products.

D.I. 729 at 2.  Lawson is in compliance with this requirement of the Injunction Order for covered configurations with RSS.

---

[8]    It is undisputed that Lawson complied with the provision "to notify all customers who have purchased all of any of the Infringing Products and Services of the terms of this Order, and to provide said customers with a copy of this Order," both as to the original May 2011 Injunction Order and the modified June 2013 Injunction Order.  *See* Homewood Dec. at ¶ 24.  ePlus did not contest that Lawson provided notice in 2011 as the Injunction order required.  D.I. 1060 at ¶¶ 123-153.

Lawson formally decommissioned RSS on June 3, 2011, shortly after the initial entry of the Injunction Order.  Homewood Dec. at ¶ 8; D.I. 1069 at ¶ 149.[9]  Since decommissioning RSS, no sales of configurations with the RSS module (or of the RSS module itself) have occurred, and no maintenance (*i.e.*, patches) has been provided for the RSS module.  Homewood Dec. at ¶ 9; D.I. 1069 at ¶¶ 155-168.  ePlus did not contest these facts.  *See* D.I. 1060 at ¶¶ 123-153.  Nor did the Court find any such facts as the basis for its contempt ruling.  Activities the Court cited in the Contempt Order that involved configuring or consulting on Infringing Products with RSS (as in, providing support or service to customers on Infringing Products after download of RQC without confirmation of installation, or running RSS in parallel with RQC) have ceased.  Homewood Dec. at ¶¶ 9, 23; D.I. 1069 at ¶¶ 169-72, 178-81.  The termination of maintenance and service for RSS likewise demonstrates compliance with the Injunction Order's prohibitions on installation, implementation, design, configuration, or upgrade of the enjoined configurations with RSS.

### 3.    Lawson Stopped Circulating, Publishing, and Disseminating RSS-Related Literature

The Court further enjoined Lawson from:

> [c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services."

D.I. 729 at 3.  Lawson is in compliance with this requirement of the Injunction Order for covered configurations with RSS.

After entry of the Injunction Order, Lawson removed RSS-related material from its online database of product literature and all references to RSS on public websites were removed. Homewood Dec. at ¶ 24; D.I. 1069 ¶¶ 155, 158.  All learning material related to RSS was also

---

[9]    As the Court will recall, decommissioning a product means that Lawson is "ceasing or stopping development and further sales or any related activities to a particular product."  D.I. 1055 (4/5/13 Trial Tr.) at 814:15-21; D.I. 1069 at ¶ 150.

removed.  Homewood Dec. at ¶ 24; D.I. 1069 at ¶ 161.  By ensuring that no RSS literature was

circulated, published, or disseminated, Lawson has complied with this prohibition.

        **4.**      **Lawson Stopped Providing Instruction, Encouragement, and Support on RSS and Product Configurations with RSS**

The Court further enjoined Lawson from:

> [a]iding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services within the United States," including "the provision of any instruction, encouragement, installation, implementation, maintenance or support for any of the Infringing Products and Services."

D.I. 729 at 3.  Lawson respectfully submits that its policy on support, as described below,

complies with this prohibition.

        **a.**    **<u>Lawson Required Customers To Install RQC Or Represent They Were Not Using Either Product Before Receiving Support, Maintenance, And Service On Other Modules</u>**

While Lawson offered proof that it also ended support for the enjoined configurations

with RSS, the Contempt Order found that certain support activities amounted to encouraging

customers to continue using RSS or that Lawson was at best indifferent to whether that module

continued in use.  The Court found that "despite being aware of the fact that users could (and

did) continue to use RSS after downloading RQC, Lawson instructed its employees to provide

support to customers merely upon the verification of RQC *download*."  D.I. 1087 at 42

(emphasis in original).  According to the Court, "Lawson made no effort to ever determine if *any*

customer actually used RQC and had no information on which customers were running RQC."

*Id.* at 41-42 (emphasis in original).  Lawson respectfully submits that it has addressed each of the

support issues that the Court cited in the Contempt Order; indeed, that it had done so before this

Court's Order of August 16, 2013.

It is accurate that when the Injunction Order was first entered in 2011, Lawson's policy only required that a customer download RQC before Lawson could provide service, support or maintenance on any module within the infringing configurations (other than RSS). Homewood Dec. at ¶ 11. However, that policy changed in 2012 and is no longer in effect. *Id.* at ¶¶ 12-13. Following the commencement of the contempt proceeding and the company's hiring of new outside counsel, Lawson undertook to contact each of its 131 Configuration Nos. 3 and 5 customers that were on active maintenance as of May 2011 and obtained representations from them concerning whether they were using RSS.[10] *Id.* At the same time, the company strengthened its policy so as to deny service, support and maintenance of any module in the infringing configuration to any former RSS customer unless and until that customer informed Lawson that it had either (i) **installed RQC and was using RQC, not RSS**, or (ii) **was not running either RQC or RSS**. *Id.*[11] Exhibit B to Ms. Homewood's declaration lists the date verification was obtained from each customer pursuant to this policy.

By confirming that customers had ended use of RSS (and denying maintenance, service and support to those that had not), Lawson knew that any customer support it provided would relate only to software configurations that did **not** include RSS and thus, by definition, were not Infringing Products, as defined in the Injunction Order (apart from the separate *TiVo* issue concerning RQC). Regardless of the proof concerning its past policies and activities, particularly

---

[10]     While there were 134 customers on active maintenance as of the date the Injunction Order entered, three ended their entitlement to maintenance, service and support one week later and have not received such service since. *Id.* at ¶ 13 & n.2.

[11]     The Court sustained ePlus's objection to questions that would have elicited evidence that Lawson was providing support only to Configuration No. 3 or Configuration No. 5 customers who had implemented RQC and were not running RSS. D.I. 1055 (4/5/13 Trial Tr.) at 818-19, 825-26. Regardless of the Court's ruling at the evidentiary hearing, the Contempt Order allows Lawson to submit evidence of compliance as of this date. Evidence as to customers' termination of RSS, previously available but excluded, is offered to show compliance.

actions dating to 2011 shortly after initial entry of the Injunction Order, Lawson has now provided evidence of its previously-implemented policy against providing support for configurations covered by the Injunction Order with RSS, and that its survey of customers verifying termination of RSS use confirms that enjoined support is not, in fact, being provided. Lawson respectfully submits that this showing demonstrates that is in compliance with the Injunction Order relating to RSS.[12]

### b. Lawson's Current Policy Requiring Customers To Uninstall RSS From Their Systems Goes Above And Beyond The Terms Of The May 2011 Injunction Order

Although Lawson's policy requiring the verification of customer termination of RSS is legally sufficient for compliance, after consideration of the Contempt Order, Lawson has voluntarily adopted a new and stricter policy on the covered configurations with RSS. **The current policy provides that a customer cannot receive maintenance, service or support for any module in the infringing configurations unless and until Lawson performs an uninstallation of RSS or confirms that RSS is not installed on the customer's system.** *Id.* at ¶ 15. Lawson respectfully submits that this policy, which goes beyond what the Injunction Order requires and involves obtaining the cooperation of third parties (*viz.,* Lawson's customers with configurations covered by the Injunction Order), eliminates any question as to compliance with the Injunction Order in regard to Configuration Nos. 3 and 5 containing RSS. Under its new policy, the RSS software, even though dormant and unused on a customer's computer, is being removed or is confirmed to be absent. *See id.* Of 131 customers at issue, 115 have granted Lawson permission to login to their systems and to uninstall RSS or confirm the absence of the

---

[12]     The Court identified two customers – Western Lake Superior Sanitary and Columbia Association – as having received information on running RSS in parallel with RQC, and relied on that as evidence of contempt. D.I. 1087 at 41. It is undisputed, however, that neither customer licensed Configuration No. 3 or Configuration No. 5, and thus neither is relevant to compliance with the Injunction Order. *See* D.I. 1079.

RSS module.  *Id.* at ¶ 23.  Eight customers have provided written confirmation/documentation

that RSS is not on their system.  *Id.*  The remaining 8 customers are no longer being provided

with maintenance, service or support of any module in the covered configurations.  *Id.*  Such

service blockages will continue unless and until the uninstallation conditions are met.[13]  *Id.*

      This policy should address fully the Court's findings relating to the possibility of a

customer's continued use of RSS and Lawson's possibly providing support for covered

configurations with that module.  As a basis for its finding of direct contempt, this Court found

that "RQC was specifically designed so that, even after installation of RQC, the only thing that

would need to be changed in order to allow RSS to continue to run on the customers systems

were the 'RSS bookmarks.'"  D.I. 1087 at 40.  While the possibility that a customer might

"circumvent the design around would be insufficient to support a finding of contempt," the Court

found that "the record indicates that Lawson employees provided customers with instructions on

how to run RQC and RSS in parallel."  *Id.* at 41.  The Court also relied on testimony that "the

installation of RQC did not automatically result in the uninstallation of RSS" and that "Lawson

specifically instructed its clients *not* to uninstall RSS before installing RQC."  *Id.* (emphasis in

original).  According to the Court, "Lawson informed its customers that they could continue to

run RSS."  *Id.* at 40.  The current policy is completely to the contrary:  Customers have been told

to uninstall RSS; support has been terminated to those who have not, and removal of all artifacts

of RSS, will make it impossible for a customer to revive RSS or modify the module to run in any

form.

---

[13]    The 8 customers presently subject to the block are:  Affiliated Computer Services;
Assurant Solutions; Dallas Area Rapid Transit; The Methodist Hospitals; Munroe Regional
Health System; Scripps Health; and Shore Health System; Siemens Health Services.  Homewood
Dec., Ex. B.

As described in Ms. Homewood's declaration, Lawson's current policy requires an **uninstallation** of RSS, effectuated by (1) Lawson obtaining customer consent to enter a customer's system and performing an uninstallation of RSS, (2) Lawson obtaining customer consent to enter a customer's system and verify that RSS is absent, or (3) Lawson obtaining documentation from the customer showing that RSS is not installed in the customer's system. Homewood Dec. at ¶¶ 15-19.  Without direct access or customer supplied documentation to establish the absence of RSS, Lawson will not lift its ban on maintenance, service or support of the **entire** configuration.  *Id.* at ¶ 15.

The policy has been implemented by taking measures both in Lawson's customer support and services organizations as well as on the customer side to ensure that no support, maintenance or service is performed for the 14 remaining customers who have not verified that RSS is absent from their systems.  *Id.* at ¶¶ 20-22.  Lawson has removed the ability of those customers to log customer support queries on any of the impacted modules by removing those modules from the drop-down menu.  *Id.* at ¶ 20.  As an additional precaution, alerts have been placed in a brightly-colored box in the customer support database on the 14 customers with covered configurations that have not verified the uninstallation of RSS.  *Id.*  Customer support analysts will be instructed, by the on-screen alert, to deny support on those modules to the customer.  *Id.*  Customers who log support queries and have not yet verified that RSS is not on their system will receive a response from the system that support is denied subject to the customer's uninstallation of RSS.  *Id.*  A customer with an "alert" notification is not able to access the Lawson website for maintenance patches for the covered configurations or to obtain Knowledge Base articles unless and until the uninstallation or absence of RSS is verified to Lawson.  *Id.* at ¶ 21.  Further, Lawson has provided its services organization with a list of the 14 customers for whom the RSS

uninstallation has not been verified. *Id.* at ¶ 22. That organization has been instructed not to provide service (that is, installation, implementation, design, configuration, consulting, and upgrading) on modules within the covered configurations until and unless the uninstallation of RSS has been verified pursuant to the new policy. *Id.*

By requiring that customers uninstall RSS or show that it is not on their system, Lawson is, in effect, making it impossible for customers to "continue to use RSS" (D.I. 1087 at 40), much less "run RQC and RSS in parallel" (*id.* at 41), thereby demonstrating compliance with the Injunction Order for Configurations Nos. 3 and 5 with the RSS module. Lawson respectfully submits that it is unquestionably in compliance with the Court's Injunction Order for the covered configurations with RSS.

## III.   CONCLUSION

Lawson believes it has more than complied with the letter and spirit of the Court's Injunction Order regarding RSS and that it has an appropriate compliance policy in place. RSS is decommissioned – dead – and Lawson has no interest in, and is not, commercializing it in any way. *See* Homewood Dec. at ¶ 14. Indeed, although Lawson has neither the right nor the ability to uninstall RSS on every Configuration No. 3 and 5, it has implemented a policy aimed at accomplishing just that, in an attempt to eliminate the vestiges of RSS where it sits, dormant, on customer computers. To induce customers to provide it with the access that it requires to effectuate uninstallation, Lawson has ceased the provision of maintenance service and support for customers who were on active maintenance for Configuration No. 3 or Configuration No. 5 with RSS as of the date of the Injunction Order.

Dated:  September 20, 2013

Respectfully submitted:

LAWSON SOFTWARE, INC.

By: _____/s/_____

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Josh A. Krevitt (admitted *pro hac vice*)
Daniel J. Thomasch (admitted *pro hac vice*)
Richard W. Mark (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Jason C. Lo (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Lawson Software, Inc.*

Order entered in

*ePlus, Inc. v. Lawson Software, Inc.,*
Dkt. Nos. 2013-1506, -1587 (Fed. Cir. Sept. 19, 2013)

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**EPLUS, INC.,**
*Plaintiff-Appellee,*

**v.**

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant.*

———————————————

2013-1506, -1587

———————————————

Appeals from the United States District Court for the Eastern District of Virginia in No. 09-CV-0620, Senior Judge Robert E. Payne.

———————————————

**ON MOTION**

———————————————

PER CURIAM.

**O R D E R**

Lawson Software, Inc. moves to stay in part the August 16, 2013 order of the United States District Court for the Eastern District of Virginia ("Contempt Order") finding Lawson in contempt of the court's May 23, 2011 injunction order. The Contempt Order requires Lawson to demonstrate compliance with the court's injunction by September 20, 2013 or pay a coercive sanction of $62,362 for every day

it is not in compliance with the injunction.  ePlus, Inc. opposes the motion.

In deciding whether to grant a stay pending appeal, this court "assesses [the] movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511 (Fed. Cir. 1990).  To prevail, a movant must establish a strong likelihood of success on the merits or, failing that, must demonstrate that it has a substantial case on the merits and that the harm factors militate in its favor. *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987).

Upon consideration thereof,

IT IS ORDERED THAT:

The motion is denied in part and granted in part. This court will not stay the Contempt Order to the extent the order requires Lawson to comply immediately with the restrictions on its activity recited therein.  To the extent Lawson fails to comply and fails to prevail on appeal, it will be liable for any compensatory damages incurred by ePlus during the pendency of the appeal, as well as any interest or fees related thereto, to the extent appropriate.

The Contempt Order is stayed to the extent that: (1) Lawson shall not have to demonstrate compliance with the May 23, 2011 injunction order during the pendency of its appeal of the Contempt Order; (2) Lawson shall not have to pay the $62,362 per day fine, which will not accrue during the pendency of its appeal; and (3) the $62,362 per day fine will only begin to accrue if Lawson is unsuccessful on appeal.

3

EPLUS, INC. V. LAWSON SOFTWARE, INC.


FOR THE COURT


/s/  Daniel E. O'Toole
Daniel E. O'Toole
Clerk


s19

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of September, 2013, a true copy of the foregoing will be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig T. Merritt
Henry I. Willett, III
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
cmerritt@cblaw.com
hwillett@cblaw.com

James D. Clements
**GOODWIN PROCTER, LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
jclements@goodwinprocter.com

Jennifer A. Albert
David M. Young (VSB No. 35997)
**GOODWIN PROCTER, LLP**
901 New York Avenue, N.W.
Washington, DC 20001
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

*Attorneys for Plaintiff*

                              /s/
Dabney J. Carr, IV (VSB No. 28679)
Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Defendant Lawson Software, Inc.*

2