IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ePLUS, INC., | ) |
| | ) |
| | ) Case No. 3:09CV620 (REP) |
| Plaintiff, | ) |
| | ) <u>Declaration of Elizabeth Homewood</u> |
| v. | ) |
| | ) |
| LAWSON SOFTWARE, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |

ELIZABETH HOMEWOOD, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Vice President of Support Operations at Infor, with direct responsibility for all of the support teams in the U.S. and Philippines who provide customer support and support tools for Lawson's products. I have had responsibility for customer support of Lawson products since I began working at the company in December 2009.

2. I make this declaration to provide the Court with facts concerning Lawson's compliance with the District Court's Injunction Order of June 11, 2013 (the "2013 Injunction Order") as it relates to covered software configurations containing the Requisition Self Service ("RSS") module. I understand that the 2013 Injunction Order modified an injunction the District Court entered on May 23, 2011 (the "2011 Injunction Order") by deleting from the scope of the 2011 Injunction Order "the product defined in sub-paragraph 1 on page 2 of the Order, colloquially known as 'Configuration 2,'" and providing that the 2011 Injunction Order "shall remain in effect in all other respects." The 2011 Injunction Order provisions that remain in effect after the 2013 modification are referred to in this declaration as the "Injunction Order."

3. It is my understanding that the Injunction Order enjoins Lawson from the following conduct:

- "directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States,"

- "installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services,"

- "[c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services," and

- "[a]iding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services within the United States," including "the provision of any instruction, encouragement, installation, implementation, maintenance or support for any of the Infringing Products and Services"

relating to software configurations defined in the 2011 Injunction Order as Configuration No. 3 and Configuration No. 5.[1]

4. On August 16, 2013, the District Court issued an order (the "Contempt Order") holding Lawson in contempt of the Injunction Order. My understanding is that the Court advanced several bases for its contempt finding, including: a) Lawson provided service and support to customers with infringing configurations and "instruct[ed] its customers on how to

---

[1] On May 6, 2013, Lawson submitted to this Court a letter containing a list of 146 Lawson customers who the parties' experts agreed had Configuration Nos. 3 or 5 at any time from the date of the Injunction through November 30, 2012. A copy of the May 6, 2013 submission is attached as Exhibit A. Of the 146 customers listed, 134 were on active maintenance and had Configuration No. 3 or Configuration No. 5 with the RSS module as of the date of the 2011 Injunction Order. Three of the 134 customers ended their entitlement to maintenance, service and support as of May 31, 2011. *See* ¶ 13, *below*. Attached as Exhibit B is a chart of these 134 Lawson customers detailing Lawson's monitoring of their RSS status.
  Twelve of the 146 never had licensed RSS. They were included as Configuration Nos. 3 or 5 customers because, after the date of the 2011 Injunction Order, they licensed configurations with all of the modules specified for Configuration Nos. 3 or 5 in the 2011 Injunction Order except that they licensed RQC, not RSS (and thus never possessed RSS). No licenses of Configuration Nos. 3 or 5 with the RSS module have been entered into since the Injunction Order was entered in May 2011.

continue to use RSS even after the RQC product had been released;" and b) "Configurations 3 and 5 with RQC are not more than colorably different than those with RSS" and that these two configurations with RQC "infringe ePlus' patent." Lawson was ordered to come into compliance with the Injunction Order as to Configuration Nos. 3 and 5, and to establish such compliance by September 20, 2013, or otherwise pay a fine.

5.   It is my understanding that on September 19, 2013, the United States Court of Appeals for the Federal Circuit entered an order stating in part that "Lawson shall not have to demonstrate compliance with the May 23, 2011 injunction order during the pendency of the appeal of the Contempt Order" (the "Federal Circuit Stay Order").

6.   Notwithstanding the Federal Circuit Stay Order, this declaration is submitted on behalf of Lawson to show that Lawson is in complete compliance with the terms of the Injunction Order as it relates to enjoined software configurations with the RSS module. Lawson's actions to comply with the Injunction Order, and its policy regarding Configuration Nos. 3 and 5 with the RSS module (the "Configurations Covered by the Injunction Order") is summarized below.

**SUMMARY OF COMPLIANCE EFFORTS AND
LAWSON'S CURRENT POLICY FOR COMPLIANCE**

7.   Shortly before the issuance of the Injunction Order in May 2011, Lawson brought to market a replacement for the RSS module present in the enjoined configurations. That replacement product (intended as a "design-around" of the asserted claims of the '172 and '683 patents) is known as the Requisition Center ("RQC") module.

8.   On June 3, 2011, Lawson formally decommissioned the RSS module.

9.   Based on Lawson's records, no sales of configurations with the RSS module (or of the RSS module itself) have been made since the Injunction Order was entered in May 2011.

No maintenance has been provided for the RSS module since the decommissioning.  Activities cited in the Contempt Order that involved configuring or consulting on Infringing Products with RSS (as in, providing support or service to customers on Infringing Products after download of RQC without confirmation of installation, or running RSS in parallel with RQC) have ceased.  Compliance relating to "support" for Configurations Covered by the Injunction Order, which I understand was the subject of a portion of the Contempt Order, is discussed in the following paragraphs.

10.   During the period between May 23, 2011, when the Injunction Order was entered, and this Court's Contempt Order finding Lawson in contempt of the Injunction Order, Lawson's policy of providing or denying service, support and maintenance to former RSS licensees evolved, but at all times it has been Lawson's policy to deny service, support and maintenance in regard to the RSS module itself.  Recognizing that the enjoined configurations include additional modules, the RSS-specific prohibitions have always been only part of the overall policy that Lawson followed in its attempts to comply with the Injunction Order.

11.   Initially, Lawson adopted the further policy that unless and until a customer **downloaded** the RQC replacement module, Lawson would not provide that customer with service, support or maintenance on any module within the infringing configurations, but that upon a confirmed download of RQC, Lawson considered that the customer no longer possessed an infringing configuration and would restore service, support and maintenance to the customer (except as to the RSS module).  **That policy is no longer in effect.**  Under current Lawson policy, download of RQC is **not** sufficient for a customer to obtain maintenance, service or support on any module in the two configurations covered by the Injunction Order.

12.     In 2012, following the commencement of the contempt proceeding and the company's hiring of new outside counsel, Lawson strengthened its policy to require that no service, support or maintenance of any module in the infringing configurations be provided to any former RSS customer unless and until the customer was specifically asked about its configuration and informed Lawson that it had, in fact, **installed** RQC and was using RQC, not RSS, or was not running either version.  **That policy is no longer in effect.**  Even though I believe that policy is consistent with the Injunction Order, under current Lawson policy, a customer's installation of RQC (and termination of RSS use) is **not sufficient** for a customer to obtain maintenance, service or support on Configurations Covered by the Injunction Order.

13.     After the policy described in paragraph 12, above, went into effect, Lawson contacted customers that were on active maintenance for RSS as of May 2011 and obtained representations from them concerning their use of RSS.  Entitlement to maintenance, service and support for three of the 134 customers on the Exhibit B list ended as of May 31, 2011, and they have not had access to maintenance, service or support for the Configurations Covered by the Injunction Order since that date.[2]  Lawson eventually secured representations from each of the remaining 131 customers contacted that the use of RSS had been terminated and that the customer was either running RQC on its procurement system, or was not running either RQC or RSS.  The third column of Exhibit B ("RSS Use Terminated; RQC Installed") shows the date on which each customer was contacted and stated to Lawson that it had terminated RSS and installed RQC.

---

[2]     Entitlement to maintenance, service and support ended on May 31, 2011 for Madison Metropolitan School, Queens-Long Island Medical Group, and the Racine United School District.  *See* Exhibit B.

14. It is my understanding that Lawson, having decommissioned RSS, has no interest in licensing, maintaining, servicing, or supporting RSS customers and is not currently doing so (nor will it do so prospectively). Indeed, it is my belief that, consistent with the policy identified in paragraph 12, above, Lawson had ceased all enjoined activities regarding Configurations Covered by the Injunction Order well before August 16, 2013 (the date of the Contempt Order), and it was not (among other things) instructing or otherwise assisting customers to use RSS or supporting them in regard to Configurations Covered by the Injunction Order.

15. Nevertheless, in light of the Court's Contempt Order, Lawson again strengthened its policy on providing maintenance, service, and support to customers who formerly licensed Configurations Covered by the Injunction Order. Specifically, Lawson has instituted a new policy that prohibits providing a customer with maintenance, service or support of any module in the Configurations Covered by the Injunction Order unless and until Lawson either **uninstalls** RSS from the customer's system or obtains written confirmation/documentation from the customer confirming that RSS is absent (uninstalled) from the customer's system. Without direct access or customer-supplied confirmation establishing the absence of RSS, Lawson will not lift its ban on maintenance, service or support of the entire configuration.

16. Lawson has uninstalled RSS from Configurations Covered by the Injunction Order on demonstration computers used by Lawson personnel.

17. Lawson can only uninstall RSS from customer systems where: a) it provides that customer with hosting or system administrator services; or b) for other customers, Lawson receives customer permission to login and perform the uninstallation or verification.

18. Lawson has uninstalled RSS from all customers' systems with Configurations Covered by the Injunction Order where Lawson provides hosting or administrative services for

the customer, *i.e.,* all systems where it has a contractual right to login and manage the software for the customer.

19. Lawson has attempted to contact all other customers with Configurations Covered by the Injunction Order to request permission to login and uninstall RSS or to verify that RSS is absent from the customer's system. If a customer does not consent to Lawson logging into its system, Lawson is requesting that the customer confirm in writing that RSS is absent from the customer's system. Unless Lawson uninstalls RSS or confirms the absence of RSS on the customer's system, Lawson's policy, now in effect, is that it will not provide maintenance, service, or support to the customer on any modules in the Configurations Covered by the Injunction Order.

20. Several measures have been taken to ensure implementation of the policy against providing maintenance and support for customers with Configurations Covered by the Injunction Order that have not yet verified uninstallation or absence of RSS. Lawson has removed those customers' entitlement to access maintenance and support for modules in the Configurations Covered by the Injunction Order; that is, Lawson has removed the ability for those customers to log customer support queries on any of the impacted modules by removing those modules from the drop-down menu. As an additional precaution, alerts have been placed in the customer support database on the account record for customers with Configurations Covered by the Injunction Order that have not verified the uninstallation of RSS. The alert is displayed in a brightly-colored box when the customer's record is retrieved. Customer support analysts are instructed, by the on-screen alert, to deny support to the customer on the covered modules. Customers who log support queries on covered modules and have not yet verified that RSS is not

on their system will receive a response from the system that support is denied subject to the customer's uninstallation of RSS.

21.     A customer with an "alert" notation is not able to access the Lawson website for maintenance patches for the Configurations Covered by the Injunction Order or to obtain Knowledge Base articles unless and until the uninstallation or absence of RSS has been verified.

22.     Lawson has provided its services organization with the list of 9 customers for whom the RSS uninstallation has not been verified.  That organization has been instructed not to provide service on modules within Configurations Covered by the Injunction Order until and unless the uninstallation of RSS has been verified pursuant to the new policy.

23.     The RSS uninstallation status for each of the 134 Lawson customers with Configurations Covered by the Injunction Order that were on active maintenance for RSS as of May 2011 is shown in the fourth column of Exhibit B ("RSS Uninstall Status as of September 2013").  To date, 115 have granted Lawson permission to login to their systems and to uninstall RSS or confirm the absence of the RSS module.  Eight customers have provided written confirmation/documentation that RSS is not on their system.  Three customers on the Exhibit B list have not had any entitlement to maintenance, service or support since May 31, 2011 and such maintenance, service or support is not available to them now.  Maintenance, service and support has ceased for the 8 other customers not shown as having already uninstalled RSS and will not be reinstated until after RSS is uninstalled.[3]

---

[3]     In contacting customers after the Contempt Order, one customer that had previously represented to Lawson that it had terminated RSS and was running RQC contradicted its earlier statement.  That customer has not allowed Lawson access to its system for purposes of an uninstallation.  Because that customer apparently is still using RSS – the only such customer presently known to Lawson – Lawson has blocked that customer from maintenance, service and support relating to all modules in Configuration Nos. 3 and 5.

24. In summary Lawson has taken the following steps to comply with the Injunction Order relating to Configurations Covered by the Injunction Order:

a. All of Lawson's previous RSS customers received notice of the 2011 Injunction Order and the 2013 Injunction Order.

b. Lawson does not offer to sell and is not selling versions of Configuration Nos. 3 and 5 (or any other configuration) containing the RSS module. Lawson is not performing installation, implementation, design, configuration, consulting, upgrade, maintenance and support, training or other related and associated services for those configurations.

c. After entry of the Injunction order in May 2011, Lawson removed RSS-related material from its online database of product literature, all references to RSS on public websites were removed, and all learning material related to RSS was removed. Lawson is not circulating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of RSS or of Configuration Nos. 3 or 5 with RSS.

d. Maintenance, service, and support of RSS has ended for every one of the 134 customers with Configuration Nos. 3 or 5 that were on active maintenance for RSS as of May 2011.

e. Maintenance, service, and support of all modules in Configuration Nos. 3 and 5 has ceased for the 8 customers with Configuration Nos. 3 or 5 that, to date, have not allowed Lawson to uninstall RSS or have not confirmed that RSS is absent (not installed) on their system.

f. Maintenance, service and support of modules licensed by customers with Configurations Covered by the Injunction Order is only being provided to the 123 customers that have, to date, allowed Lawson to confirm uninstallation of RSS on the customer's system, either by allowing Lawson to perform the uninstallation, by allowing Lawson to inspect the system to confirm prior uninstallation of RSS, or by the customer's providing written confirmation/documentation that RSS is not installed on the customer's system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2013

_____
ELIZABETH HOMEWOOD