# EXHIBIT B

Nos. 13-1506, -1587

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*e*Plus Inc.

*Plaintiff-Appellee,*

v.

Lawson Software, Inc.

*Defendant-Appellant.*

Appeals from the United States District Court
For The Eastern District Of Virginia
In Case No. 09-cv-0620, Senior Judge Robert E. Payne

## PLAINTIFF-APPELLEE *e*PLUS INC.'S MOTION FOR RECONSIDERATION-IN-PART OF ORDER GRANTING-IN-PART STAY OF CONTEMPT ORDER PENDING APPEAL

Jennifer A. Albert
David M. Young
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444
jalbert@goodwinprocter.com
dyoung@goodwinprocter.com

Michael G. Strapp
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
Tel: (617) 570-1000
mstrapp@goodwinprocter.com

*Counsel for Plaintiff-Appellee ePlus Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................1

II.     ARGUMENT.................................................................4

    A.      The District Court Correctly Determined That Without A
    Coercive Sanction Lawson Will Not Comply With The
    Injunction....................................................................4

    B.      The District Court Acted Appropriately, And Within Its
    Discretion, In Imposing A Conditional Coercive Fine To
    Ensure That Lawson Would Comply With The Injunction .................6

    C.      Unless Lawson Complies Immediately With The Injunction,
    *e*Plus Will Continue To Suffer Irreparable Injury That Cannot
    Be Compensated By Compensatory Damages......................................8

III.    CONCLUSION............................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cont'l Paper Bag Co. v. E. Paper Bag Co.,*
  210 U.S. 405 (1908) ..................................................................................................9

*In re Grand Jury Witness,*
  835 F.2d 437 (2d Cir. 1987) ...................................................................................8

*In re Manufacturers Trading Corp. Kiersted v. Hadden,*
  194 F.2d 948 (6th Cir. 1952) ..................................................................................7

*In re Morrissey,*
  305 F.3d 211 (4th Cir. 2002) ..................................................................................7

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
  512 U.S. 821 (1994) ................................................................................................6

*Merial Ltd. v. Cipla Ltd.,*
  2011 WL 3606540 (Fed. Cir. Aug. 17, 2011) ........................................................7

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................................................3

*TiVo, Inc. v. EchoStar Corp.,*
  646 F.3d 869 (Fed. Cir. 2011) ...............................................................................7

*United States v. Darwin Constr. Co.,*
  873 F.2d 750 (4th Cir. 1989) ..................................................................................8

**Statutes**

35 U.S.C. § 154 ..............................................................................................................8

**Rules**

Fed. Cir. R. 27 ................................................................................................................1

Fed. R. App. P. 8 ............................................................................................................1

## I.      INTRODUCTION

Plaintiff-Appellee *e*Plus, Inc. ("*e*Plus") respectfully requests that a panel of this Court reconsider the portion of the September 19, 2013 order ("Stay Order") granting-in-part a motion filed by Defendant-Appellant Lawson Software, Inc. ("Lawson") seeking a stay of the District Court's August 16, 2013 order finding Lawson in contempt of the permanent injunction.[1] In its Stay Order, this Court denied Lawson's motion insofar as Lawson sought to stay the requirement that it comply immediately with the restrictions on its activity set forth in the Contempt Order. However, this Court also granted-in-part Lawson's motion by staying the Contempt Order to the extent that: (1) Lawson is not required to demonstrate compliance with the injunction during the pendency of its appeal; (2) Lawson is not required to pay the daily fine that the District Court conditionally imposed if Lawson failed to demonstrate compliance with the injunction; and (3) the daily fine will not accrue during the pendency of the appeal.

The Stay Order severely undercuts the District Court's ability to enforce compliance with its orders. Moreover, the Stay Order is internally inconsistent and at odds with itself. Even though this Court ordered Lawson to comply *immediately* with the Contempt Order, this Court also *stayed* the daily fine that the

---

[1] The Stay Order was signed by the Clerk, for the Court, without further indication whether it was decided by a single judge or three-judge panel. *See* Fed. Cir. R. 27(h); Fed. R. App. 8(a)(2)(D). To be clear, *e*Plus requests that the Stay Order be reconsidered by a three-judge panel.

District Court had specifically imposed to ensure that Lawson would comply with the Contempt Order. The Stay Order has led to a predictable result; because this Court has stayed the coercive fine, Lawson has ignored the portion of this Court's Stay Order requiring it to comply immediately with the Contempt Order. Evidence of Lawson's ongoing contemptuous activity can be found in screenshots from Lawson's website attached as Exhibit A to the Declaration submitted herewith. These screenshots reveal that Lawson is continuing to make, use, offer to sell and sell Configurations 3 and 5 with RQC that were enjoined and that infringe claim 26 of *e*Plus's '683 Patent. These commercial activities expressly violate the provision of the Stay Order that requires Lawson to comply immediately with the Contempt Order.

Lawson's decision to flout the Stay Order by violating the Contempt Order should not come as a surprise. As the District Court found, "Lawson has demonstrated that the mere presence of an injunction is insufficient incentive to bring its infringing conduct to heel." ECF 1103 at 19. The law clearly provides that the District Court is in the best position to determine the measures necessary to ensure that its order is complied with. *See infra* at 8. Indeed, ***although the injunction was entered 28 months ago, Lawson has not complied with the injunction for so much as a single day***. As Lawson's ongoing contemptuous

activity proves, the Contempt Order without the conditional coercive daily fine is an order with no teeth and will be ignored by Lawson.

Because Lawson has continued to violate an injunction entered in May 2011 notwithstanding this Court's Stay Order, *e*Plus has yet to receive *any* remedy for the ongoing violation of its patent rights. Lawson's infringing and contemptuous actions have irreparably harmed *e*Plus, Lawson's competitor in the marketplace for procurement software, and any compensatory damages *e*Plus may recover at the conclusion of the appeal will not compensate *e*Plus for the loss of its right to exclude Lawson from practicing the '683 Patent.

The Supreme Court has explained that when a court enters an "injunction, it directs the conduct of a party, and does so *with the backing of its full coercive powers*." *Nken v. Holder*, 556 U.S. 418, 420 (2009) (internal citations omitted; emphasis added). Here, the District Court issued an injunction directing Lawson to stop infringing *e*Plus's patent. In its Contempt Order, the District Court armed the injunction with the backing of a daily coercive fine to be imposed until such time as Lawson had demonstrated that it was no longer infringing. By wresting from the District Court "the backing of its full coercive powers," this Court has nullified the District Court's ability to direct Lawson's conduct.

This Court's decision to stay the coercive fine "is an intrusion into the ordinary processes of administration and judicial review" and provides Lawson

3

with a plain incentive to violate orders of the District Court and this Court. *See id.*

Unless and until a panel of this Court reconsiders the Stay Order and enters an

order denying in full the relief requested by Lawson in its stay motion, Lawson

will continue to flout this Court's directive requiring Lawson to comply

immediately with the injunction, and *e*Plus will continue to be irreparably harmed

by Lawson's contemptuous activities.

## II.     ARGUMENT

### A.     The District Court Correctly Determined That Without A Coercive Sanction Lawson Will Not Comply With The Injunction

Any doubts about whether the District Court correctly found that "the mere

presence of an injunction is insufficient incentive to bring [Lawson's] infringing

conduct to heel" have been laid to rest by Lawson's refusal to heed this Court's

order requiring it "to comply immediately" with the Contempt Order. ECF 1103 at

19. Because Lawson does not currently face a daily fine unless it complies with

the Contempt Order, it has predictably chosen to continue profiting handsomely

from licensing, maintaining and servicing Configurations 3 and 5 instead of

abiding by the injunction entered over two years ago. *See* Exhibit A. Lawson has

proven, once and for all, that, without some incentive in addition to the injunction,

it will not comply with the Contempt Order.[2]

---

[2] To summarize, the District Court found that Lawson was in contempt in two
primary respects: (i) by virtue of its "RQC re-design," and (ii) by virtue of

In its Contempt Order, the District Court found that "Lawson deliberately set upon a course to violate the injunction and to cover its conduct with a very thin veneer." ECF 1103 at 18. The District Court explained that Lawson's behavior, as evidenced by internal documents, "reflect[ed] a willingness to be casual about its obligation to obey the injunction." ECF 1087 at 69. Whereas Lawson previously attempted to cover up its infringing conduct, albeit "with a very thin veneer," now Lawson does not even bother to pretend that it has stopped infringing. Thus, even though the District Court permanently enjoined Lawson more than two years ago from (a) making, using, offering to sell or selling Configurations 3 and 5, (b) publishing any literature or information that encourages the use, sale or importation of Configurations 3 and 5, and (c) instructing, encouraging, installing, implementing, maintaining or supporting Configurations 3 and 5, and even though this Court ordered Lawson "to comply immediately" with the District Court's order, Lawson is now brazenly violating each and every provision of the

---

continuing to service and induce infringement via the Infringing Configurations with RSS that were proven infringing at trial. Lawson's motion sought a stay **only** with respect to the RQC Configurations. It represented to this Court that it would demonstrate compliance with the injunction with respect to the RSS Configurations. On September 20, 2013, Lawson filed a pleading with the District Court unilaterally declaring itself to have complied with the District Court's Contempt Order with respect to the RSS Configurations. Lawson has made clear that it does not seek a stay of the coercive fine with respect to RSS, and it has proffered to the District Court the issue of its compliance *vel non* with respect to RSS. Accordingly, this Court should not provide Lawson with a stay of the coercive fine with respect to the RSS Configurations, and the Stay Order is also overbroad in this respect.

Injunction and Contempt Orders. *See* Exhibit A.

**B.    The District Court Acted Appropriately In Imposing A Conditional Coercive Fine**

The coercive daily fine in the District Court's Contempt Order is a provisional remedy that was to be imposed on Lawson only if it chose to continue its infringing conduct. The conditional fine was fixed at an amount equivalent to the revenue that Lawson is continuing to gain from its contemptuous activities. *See* ECF 734 at 17; ECF 1055 at 914:18-915:18 ("the daily revenues associated with the infringing configurations, on average, are $62,362"). The purpose of this fine was to compel Lawson finally to cease its infringing activities. The fine was not intended to cause undue hardship to Lawson, nor would it have, given that the revenue Lawson derives from Configurations 3 and 5 is "not a significant part of Lawson's financial strength" and "Lawson has not contended otherwise." ECF 1103 at 15-16. Indeed, Lawson never contended that it would suffer any significant financial hardship in the absence of a stay. On this basis alone, Lawson should be denied the extraordinary relief of a stay.

The District Court has noted that "[t]here is no question that the Court has the ability to impose sanctions 'to coerce obedience to a court order.'" ECF 1087 at 68 (quoting *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (discussing court's authority to impose coercive sanctions and stating "[a]

6

close analogy to coercive imprisonment is a per diem fine imposed each day a

contemnor fails to comply with an affirmative court order."); *Merial Ltd. v. Cipla*

*Ltd.,* 2011 WL 3606540, *1 (Fed. Cir. Aug. 17, 2011) (denying stay of contempt

remedies pending appeal); *TiVo, Inc. v. EchoStar Corp.,* 646 F.3d 869, 889 (Fed.

Cir. 2011) (*en banc*) (affirming sanction imposed "to promote [defendant's]

compliance with [the district court's] orders") (citation omitted).  Indeed, "[t]he

power to punish for contempts is inherent in all courts; its existence is essential to

the preservation of order in judicial proceedings, and to the enforcement of the

judgments, orders and writs of the courts and, consequently, to the due

administration of justice."  *In re Morrissey,* 305 F.3d 211, 217 (4th Cir. 2002)

(quoting *Ex parte Robinson,* 86 U.S. 505, 510 (1873)).  The district court's

contempt authority "is a summary power to prevent obstruction to the

administration of justice, without which it would be in continual danger of being

thwarted."  *In re Manufacturers Trading Corp. Kiersted v. Hadden,* 194 F.2d 948,

956 (6th Cir. 1952) (citing *Ex parte Terry,* 128 U.S. 289 (1888)).  "Such power is

absolutely essential to the protection of the courts in the discharge of their

functions."  *Id.* (citing *Fisher v. Pace,* 336 U.S. 155 (1949)).  Thus, a district court

has "'broad discretion to fashion an appropriate coercive remedy in a case of civil

contempt, based on the nature of the harm and the probable effect of alternative

sanctions.'"  *United States v. Darwin Constr. Co.,* 873 F.2d 750, 756 (4th Cir.

7

1989) (quoting *N.A. Sales Co., Inc. v. Chapman Indus. Corp.,* 736 F.2d 854, 857
(2d Cir. 1984)).

 The *"imposition of coercive sanctions by way of fines is generally an area*
*in which appellate courts must rely heavily on the informed exercise of the*
*district court's discretion." In re Grand Jury Witness,* 835 F.2d 437, 443 (2d Cir.
1987) (emphasis added). Accordingly, the district court's determination of an
appropriate sanction may only be disturbed "upon a clear showing of abuse of
discretion." *Darwin Constr.,* 873 F.2d at 756. Here, Lawson's ongoing
contemptuous activities prove beyond any dispute that the District Court did not
abuse its discretion when it concluded that without the backing of its coercive
powers, Lawson would not comply with the injunction.

### C.  *e*Plus Will Continue To Suffer Irreparable Injury That Cannot Be Compensated By Compensatory Damages Unless Lawson Complies With The Injunction

 When this Court stayed the conditional daily fine it abolished the only lever
the District Court included in the Contempt Order to actually force Lawson to
comply immediately with the injunction. The consequences of this Court's
decision are significant. The Patent Act provides a patent owner "***the right to***
***exclude others*** from making, using, offering for sale, or selling the invention
throughout the United States or importing the invention into the United States . . ."
35 U.S.C. § 154(a)(1) (emphasis added); *see also Cont'l Paper Bag Co. v. E.*

*Paper Bag Co.,* 210 U.S. 405, 429-30 (1908) ("the right can only retain its attribute of exclusiveness by a prevention of its violation."). Because a patent is a wasting asset, the window of opportunity for *e*Plus to exploit its patent rights is limited. Lawson has not complied with the injunction since it was entered in May 2011 and has, in fact, been infringing *e*Plus's patents for many years prior to the entry of the injunction. Unless this Court denies Lawson's stay motion in full, *e*Plus will continue to be irreparably harmed by Lawson's ongoing infringing activity. ECF 1103 at 17-18.

In its Stay Order, this Court explained that if "Lawson fails to comply and fails to prevail on appeal, it will be liable for any compensatory damages incurred by *e*Plus during the pendency of the appeal, as well as any interest or fees related thereto, to the extent appropriate." But any future compensatory damages that may be awarded to *e*Plus are inadequate to compensate for the irreparable injury *e*Plus will suffer if its competitor, Lawson, is not finally forced to stop its contemptuous activities. *See* ECF 729 at 1 (District Court finding that *e*Plus will suffer irreparable injury absent an injunction halting Lawson's infringing activities, and that monetary damages are inadequate to compensate for that injury).

The e-procurement software market in which *e*Plus and Lawson compete is "extremely competitive." ECF 728 at 16. Within this market, both companies "focus on mid-market companies having market capitalizations between $50

million to $2.5 billion," target the "same customers in the same industries,

including health care, retail, and education," and "submit responses to the same

Requests for Proposals from prospective customers." *Id.* at 16, 18-19. Indeed,

"independent third party market analyst reports group the two companies as

competitors in the e-procurement software market." *Id.* at 19. As the District

Court found, absent ***effective*** injunctive relief, "*e*Plus clearly faces further

disability in competing for the part of the market in which it and Lawson compete

directly." *Id.* at 22.

Future monetary damages are also inadequate to compensate *e*Plus for the

violation of its patent rights because the sales and market share *e*Plus has lost to

Lawson has an impact on *e*Plus that goes far beyond any compensatory damages

that Lawson will eventually pay to *e*Plus. As the District Court found, the sales

*e*Plus has lost because of Lawson's infringing activity result not only in "lost

revenue to *e*Plus for the implementation/installation, maintenance and servicing of

the software," but also mean that *e*Plus "has lost the opportunity to cross-sell and

up-sell its IT [information technology] and VAR [value added reseller] products to

potential customers of [*e*Plus's] Procure+ and Content+, who have instead chosen

to use Lawson's infringing software." *Id.* at 26-27.[3]

---

[3] As the District Court found, "the record shows that *e*Plus derives the majority of
its revenue from its VAR business, and Procure+ and Content+" – the software
products that embody the patented technology – "provide *e*Plus with opportunities

10

This Court's Stay Order actually rewards Lawson for taking an appeal and continuing its contempt in the interim. Lawson can continue to cause its competitor irreparable harm during the pendency of its appeal, knowing at the end of the day it will have to pay nothing more than a compensatory damage award.[4] This is in spite of the fact that infringement and validity were proven long ago.

More than two years ago, in its memorandum opinion granting *e*Plus's motion for a permanent injunction, the District Court optimistically concluded that "the issuance of an injunction makes it less likely that *e*Plus will be forced to engage in extensive policing of Lawson or to incur extensive litigation expense because the *in terroram* effect of an injunction operates to provide a powerful incentive to Lawson to avoid future infringement." *Id.* at 31. In its Contempt Order, however, the District Court found that the mere presence of an injunction was unsuccessful in compelling Lawson's compliance with the District Court's orders, and that the mere injunction, without the backing of the District Court's

---

to cross-sell and up-sell its VAR products to customers of Procure+ and Content+." *Id.* at 27.

[4] The District Court's Contempt Order required Lawson to show its compliance with the injunction right away, obviating the need for additional proceedings at the conclusion of the appeal with respect to damages owed *e*Plus. This Court, on the other hand, may have planted seeds of post-appeal disputes between the parties by permitting Lawson to conceal any changes to its software that it may later contend renders its software more than colorably different than the Infringing Configurations.

coercive powers, was not sufficient incentive to Lawson to avoid future infringement.

By granting-in-part Lawson's motion and staying even the accrual of the conditional daily fine imposed by the District Court, this Court undercuts the District Court's ability to enforce its orders, and gives insufficient deference to the District Court's finding that coercive measures are necessary. Lawson's decision to openly flout the Stay Order by continuing to infringe *e*Plus's patent proves that unless this Court reinvests the Contempt Order with the full backing of the District Court's coercive powers, Lawson will continue to violate the injunction and the Stay Order and *e*Plus will continue to be irreparably harmed.

## III.   CONCLUSION

For the foregoing reasons, *e*Plus respectfully requests that the Court reconsider the portion of the Stay Order granting-in-part Lawson's motion. Pursuant to Federal Circuit Rule 27, a supporting declaration of Jennifer A. Albert is attached.

Respectfully submitted,

September 25, 2013

/s/ Jennifer A. Albert
Jennifer A. Albert
David M. Young
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
(202) 346-4000
jalbert@goodwinprocter.com

12

Michael G. Strapp
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109-2881
(617) 570-1000

*Counsel for Plaintiff-Appellee*
*ePlus Inc.*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ePlus Inc. v. Lawson Software, Inc.
Nos. 13-1506, 1587

CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Plaintiff-Appellee *ePlus* Inc. certify the following:

i.   The full name of every party or amicus represented by us is:

     *e*Plus Inc.

ii.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

     Not applicable.

iii. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

     None.

iv.  The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear in this court are:

GOODWIN PROCTER LLP (Scott L. Robertson, Jennifer A. Albert, Henry C. Dinger, Michael G. Strapp, David M. Young, Srikanth K. Reddy, James D. Clements, Eleanor M. Hynes, Daniel M. Forman, Lana S. Shiferman, Shirley S. Paley, Andrew N. Stein, and Natasha N. Aljalian)

CHRISTIAN & BARTON LLP (Craig T. Merritt, Henry I. Willett, III, Belinda D. Jones, Paul W. Jacobs, II, and Rowland B. Hill, IV)

HUNTON & WILLIAMS (Gregory N. Stillman and Brent L. VanNorman)

September 25, 2013

/s/ Jennifer A. Albert
Jennifer A. Albert
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444
jalbert@goodwinprocter.com

*Counsel for Plaintiff-Appellee*
*ePlus Inc.*

Nos. 13-1506, -1587

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

*e*Plus Inc.

*Plaintiff-Appellee,*

v.

Lawson Software, Inc.

*Defendant-Appellant.*

_____

Appeals from the United States District Court
For The Eastern District Of Virginia
In Case No. 09-cv-0620, Senior Judge Robert E. Payne.

_____

## DECLARATION OF JENNIFER A. ALBERT

1.      I am a partner with Goodwin Procter LLP ("Goodwin Procter"),

counsel for *e*Plus Inc. ("*e*Plus") in this appeal.  I am submitting this Declaration in

connection with *e*Plus's Motion for Reconsideration-In-Part of Order Granting-In-

Part Stay of Contempt Order Pending Appeal.

2.      To the best of my knowledge, all of the facts set out in *e*Plus's Motion

are true and correct.

3.      Attached as Exhibit A are screen shots and downloadable brochures from the Infor Corp. ("Infor") website, http://www.infor.com.[5]

4.      The documents included as part of Exhibit A include screen shots of the Infor website, as well as PDF brochures that are directly downloadable from the Infor website.  The screen shots have been captured using Snagit® software. The PDF brochures have been downloaded from the Infor website.

5.      The capture and storage of the screen shots, and the downloading and storage of the PDF brochures, were performed by Delani Quintal, a Litigation Support Specialist at Goodwin Procter, and April Weisbruch, and attorney at Goodwin Procter, who are under my direction and supervision.  The screen shots and PDF brochures were stored by Delani Quintal on a server associated with Goodwin Procter, also pursuant to my direction and supervision.

6.      The images included with this Declaration are PDF brochures and screen shots that were downloaded on September 25, 2013, six days after this Court ordered Lawson to comply immediately with the restrictions on its activity recited in the District Court's Contempt Order.

7.      Following a January 2011 jury trial where Lawson was held liable for infringement of five claims of two ePlus patents, the District Court in May 2011 entered an injunction against Lawson's ongoing infringement.  Three of five

---

[5] As the District Court has noted, "the record shows that following the trial, Lawson was acquired by Infor Corp. for $2 billion."  ECF 1103 at 16 n.6.

2

Lawson "system configurations" were found to be infringing, including

Configuration 3 (consisting of Core S3 Procurement (Lawson System

Foundation/Process Flow, in combination with Requisition, Purchase Order and

Inventory Control modules), Requisition Self-Service or "RSS" and Punchout) and

Configuration 5 (consisting of Core S3 Procurement System, RSS, Punchout, and

Electronic Data Interchange or "EDI"). ECF 600. These two configurations were

found by the jury to infringe Claim 26 of U.S. Patent No. 6,023,683. *Id.*

8.    On August 16, 2013, the District Court found Lawson in contempt for,

*inter alia*, implementing an alleged "redesign" (*i.e.*, Configurations 3 and 5 with

Requisition Center or "RQC") that was not more than colorably different from

enjoined Configurations 3 and 5 with RSS, and which continued to infringe Claim

26.

9.    Exhibit A-1 is a PDF brochure for Infor Lawson Requisition Center

("RQC") and Infor Lawson Procurement Punchout ("Punchout") downloaded on

September 25, 2013.[6]  RQC and Punchout are components of Configurations 3 and

5.

---

[6] After Infor acquired Lawson it rebranded (1) Requisition Center or "RQC" as
Infor Lawson Requisition Center, (2) Punchout as Infor Lawson Procurement
Punchout, (3) Core S3 Procurement as Infor Lawson Procurement and (4)
Electronic Data Interchange or "EDI" as Infor Lawson EDI.

10.     Exhibit A-2 is a PDF brochure for Infor Lawson EDI ("EDI") for Supply Chain Management downloaded on September 25, 2013.  EDI is a component of infringing Configuration 5.

11.     Exhibit A-3 is a PDF brochure for Infor Lawson Procurement ("Procurement") downloaded on September 25, 2013.  The brochure encourages customers to "integrat[e] Infor Lawson Procurement with other Infor Lawson supply chain management applications" including *inter alia*, RQC, Punchout and EDI for Supply Chain Management.  As noted above, Procurement, RQC and Punchout are components of Configurations 3 and 5, and EDI is a component of infringing Configuration 5.

12.     Exhibit A-4 is a PDF brochure for Infor Lawson Supply Chain Management for Healthcare downloaded on September 25, 2013.  This brochure describes, in detail, the benefits of Punchout (part of Configurations 3 and 5) and EDI for Supply Chain Management (part of Configuration 5).

13.     Exhibit A-5 is a screen shot of a webpage describing the Infor Lawson Supply Chain Management product suite captured on September 25, 2013.  The webpage describes the various applications included in this suite, such as Procurement, RQC and Punchout (all of which are modules in Configurations 3 and 5) and EDI for Supply Chain Management (part of Configuration 5).

14.    Exhibit A-6 is a screen shot of a webpage describing the Infor Lawson
Supply Chain Management for Healthcare product suite captured on September 25,
2013.  The webpage describes the various applications included in this suite, such
as Procurement, RQC and Punchout (all of which are modules in Configurations 3
and 5) and EDI for Supply Chain Management (part of Configuration 5).

15.    Exhibit A-7 is a screen shot of an Infor Press Release relating to the
Infor Lawson Supply Chain Management for Healthcare product suite, a
"comprehensive solution for healthcare providers" captured on September 25,
2013.  The press release states that "[t]he full suite… has several modules"
including Procurement and RQC (which are components of Configurations 3 and
5).

16.    Exhibit A-8 is a screen shot of the results from performing a search
for the terms "Lawson+procurement" on the Infor website captured on September
25, 2013.  This screen shot demonstrates that, for instance, the PDF brochures
described in paragraphs 9 and 11 above also may be accessed by a simple search
on this website.

17.    Exhibit A-9 is a screen shot of the results from performing a search
for the term "EDI" on the Infor website captured on September 25, 2013.  This
screen shot demonstrates that, for instance, the PDF brochure described in 12 and
14 above also may be accessed by a simple search on this website.

19.    The PDF brochures and screen shots included with this Declaration demonstrate that Lawson has continued to make, use, offer to sell and sell the software modules in Configurations 3 and 5, including Procurement, RQC, Punchout and EDI, notwithstanding this Court's Stay Order requiring Lawson to comply immediately with the Contempt Order.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on:  September 25, 2013

By: /s/ Jennifer A. Albert
Jennifer A. Albert
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444
jalbert@goodwinprocter.com

*Counsel for Plaintiff-Appellee*
*ePlus Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September 2013, a true and correct copy of the foregoing was served by electronic mail on the persons at the addresses listed, and, pursuant to ECF-6(A), by electronic filing:

Josh A. Krevitt
Daniel J. Thomasch
Richard W. Mark
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0192
(212) 351-40000

Mark A. Perry
Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Donald R. Dunner
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
901 New York Ave., N.W.
Washington, DC 2001
(202) 408-4000

*/s/ Jennifer A. Albert* _____
Jennifer A. Albert
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444
jalbert@goodwinprocter.com
*Counsel for Plaintiff-Appellee*
*ePlus Inc.*

# Exhibit A-1



# Infor Lawson Requisition Center and Procurement Punchout

## A winning proposition for your bottom line

Much is expected of today's purchasing professionals—not only in terms of sheer workload, but in the expectation that they will play a strategic role in the organization. For many, the conundrum is this: "How can I be a strategic player when my time is spent on processing requisitions and making sure purchase orders go out on time?"

Infor™ Lawson Requisition Center and Procurement Punchout offer hope for overburdened purchasing departments. With these web-based Infor Lawson Supply Chain Management applications, your end users can create their requisitions online, and you can automate the requisition approval process. Infor Lawson Procurement Punchout saves your purchasing staff even more time by allowing end users to requisition from vendor-maintained web sites, which reduces maintenance on an internal item master.

Infor Lawson Requisition Center and Procurement Punchout speed up the requisition process by empowering end users to assume more responsibility for their purchases (within approved boundaries). In addition, built-in controls reduce the potential for off-contract buying, which can significantly reduce your purchasing costs.

In fact, you'll not only reduce your costs and improve efficiency, you'll also save on the most valuable commodity of all—time.

## Streamline your purchasing processes

Infor Lawson Requisition Center and Procurement Punchout work with Infor Lawson Procurement to help streamline purchasing processes, eliminate volumes of paperwork, accelerate order cycle times, increase standardization, improve your negotiating leverage, and, ultimately, lower your total supply spend.

With Infor Lawson Requisition Center and Procurement Punchout, you can:

- Delegate the responsibility for creating purchase requests electronically to your end users, without the need for extensive user training.

- Allow end users, such as internal requesters, to search the item master and choose from an approved selection of items at negotiated prices.

- Connect to an external vendor-maintained web site to browse and select items to add to a requisition.

- Electronically route requisitions to the right approvers for each request, without the need for manual administration.

- Consolidate multiple types of products and services into a single requisition.

- Make it easy for your suppliers to do business with you.

- Improve your negotiating leverage and the potential for discounts.

# Requisition center: Empower your employees

Infor Lawson Requisition Center, enables you to extend the power of your Infor Lawson system beyond the purchasing department. Infor Lawson Requisition Center offers easy-to-use templates, robust search capabilities, and other time-saving features to help end users become more productive without the need for extensive training.

## Key features and benefits

Infor Lawson Requisition Center is accessible to authorized users through a secure internet connection and standard web browser. It gives users greater visibility into approval processes, allowing them to identify bottlenecks and take prompt action when necessary. It also includes a self-service desktop receiving feature for items delivered directly to requesters.

With Infor Lawson Requisition Center, users can:

- Create a single requisition for stock, nonstock and special-order items, as well as services; Infor Lawson Procurement can then automatically generate multiple purchase orders from that requisition.

- Configure the system to meet their business requirements—you determine what information is available and which fields, menus and buttons are displayed, according to each user's role.

- Reduce the number of keystrokes needed and the amount of time generating requisitions.

- Conduct advanced searches, using key-word and autocomplete capabilities—an easy, fast way for users to find the items they need.

- Automate workflows, via Infor Lawson ProcessFlow, for routing and approval processes; you can create additional workflows with Infor Lawson ProcessFlow Integrator (optional).

## Procurement punchout: A direct connection to vendors

Purchasing departments typically devote considerable time to uploading and updating item master data. Infor Lawson Procurement Punchout, an optional extension to Infor Lawson Requisition Center, can help reduce this obligation by allowing end users to browse and search vendor-maintained web sites, choosing from approved products at negotiated prices.

### Infor Lawson Requisition Center at a Glance

- Eliminates paper-based requisitioning.
- Streamlines approval processes.
- Drives standardized purchasing.
- Saves money by supporting compliance to contracts.
- Helps bring more categories of spend under control.

## Key features and benefits

- Enables you to punch out to multiple vendor web sites.
- Includes support for cXML punchout standards to help you extend your trading community to new vendors.
- Gives you the option to work with your vendors to set up your company view of their web sites.
- Leverages Infor Lawson Requisition Center to ensure conformity to transaction rules for user access, budget checks and manager approvals.

## Free up your procurement department

With Infor Lawson Requisition Center and Procurement Punchout, you can automate your requisitioning processes and enable your end users to manage their own purchases. This frees up your procurement department to concentrate on what really matters—managing strategic relationships with your suppliers.



641 Avenue of the Americas
New York, NY 10011
800-260-2640
infor.com

## About Infor.

Infor is the world's third-largest supplier of enterprise applications and services, helping more than 70,000 large and mid-size companies improve operations and drive growth across numerous industry sectors. To learn more about Infor, please visit www.infor.com.

Copyright© 2013 Infor. All rights reserved. The word and design marks set forth herein are trademarks and/or registered trademarks of Infor and/or related affiliates and subsidiaries. All other trademarks listed herein are the property of their respective owners. This document is provided for informational purposes only and does not constitute a commitment to you in any way. The information, products and services described herein are subject to change at any time without notice. www.infor.com.
INFI230697-1245921-EN-US-0313-2

# Exhibit A-2



# Infor Lawson EDI for Supply Chain Management

## Create an efficient transactional flow

When it comes to transactions with suppliers, many organizations today recognize the need to replace inefficient and costly paper-based processes with electronic based connectivity. The barrier, in a large number of instances, is the dissimilar technologies—software and/or hardware—between organizations and their trading partners. Infor™ Lawson EDI for Supply Chain Management can help you bridge the gap. This Supply Chain Management application equips you for two-way electronic transfer of essential documents, such as purchase orders, confirmations, advanced ship notices, invoices, and catalogs. The net potential impact: faster processing, fewer errors and exceptions, improved vendor relations, and freed-up time which can be devoted to more strategic activities.

## Infor Lawson delivers

We offer two EDI products: EDI for Supply Chain Management and EDI Professional for Supply Chain Management. When combined with Infor Lawson Procurement, these applications support your efforts to revamp the various ways you interact with vendors every day. Are you currently able to:

- Reduce or eliminate the need to send and receive paper purchase orders, invoices, and other documents which are routinely exchanged between you and your trading partners?

- Execute transactions quickly via the internet?

- Improve your negotiating leverage with vendors by making it easier for them to do business with you?

If not, you might want to consider the benefits and features of Infor Lawson EDI for Supply Chain Management.

> **Improve vendor relations, speed processing, reduce errors and exceptions with Infor Lawson EDI for Supply Chain Management.**

## Key features and benefits

Whether you select Infor Lawson EDI for Supply Chain Management or EDI Professional for Supply Chain Management, you stand to realize the rewards of numerous outstanding features and benefits, including:

- Dozens of ready-to-deploy EDI "maps" delivered in formats used by leading suppliers, so you can begin trading more quickly with your preferred vendors

- The tools to create customized new maps to other vendors

- The flexibility to link to your trading partners via through a value-added network (VAN) or direct over the internet

- Connections to industry-based exchanges to reach multiple trading partners through a single connection

- Full native support for GS1 Standards, including GLN and GTIN

- Use Infor Lawson-delivered FTP capabilities or your preferred third-party communication software

## Additional features and benefits

- In addition to supporting ANSI (American National Standards Institute) standards, EDI Professional adds support for United Nations EDIFACT (EDI for Administration, Commerce, and Transport) standards

- End-to-end transaction audit tracking and logging capabilities, enabling you to more easily identify and resolve issues

- Allows you to map and automatically convert data from Lawson applications into the format of another enterprise system and vice versa



641 Avenue of the Americas
New York, NY 10011
800-260-2640
infor.com

## About Infor.

Infor is the world's third-largest supplier of enterprise applications and services, helping more than 70,000 large and mid-size companies improve operations and drive growth across numerous industry sectors. To learn more about Infor, please visit www.infor.com.

Copyright© 2012 Infor. All rights reserved. The word and design marks set forth herein are trademarks and/or registered trademarks of Infor and/or related affiliates and subsidiaries. All other trademarks listed herein are the property of their respective owners. This document is provided for informational purposes only and does not constitute a commitment to you in any way. The information, products and services described herein are subject to change at any time without notice. www.infor.com.
INFI230697-1285454-EN-US-1212-1

# Exhibit A-3



# Infor Lawson Procurement

## Integrate purchasing to lower costs

From purchase request through invoice match, traditional procurement processes are often very inefficient. They can devour vast amounts of staff time and substantial dollars. The underlying problem: Many organizations employ timeconsuming manual purchasing processes or, at best, a disconnected collection of software solutions.

Infor™ Lawson Procurement drives inefficiencies and hidden costs out of your purchasing processes. In addition, Infor Lawson Procurement can help support your goal of consistently obtaining the right products and services at the best possible price and help bring accuracy, reliability, and timeliness to your order fulfillment.

Your purchasing staff stands to directly benefit, too. No longer saddled with many unwieldy administrative tasks, they'll be free to concentrate on strategic sourcing and other activities that can add real value to the organization.

## Increase visibility to strengthen internal controls

Infor Lawson Procurement can assist your organization in three primary ways—through process automation, strengthened internal controls, and increased visibility in to purchasing activities. In addition, you can integrate Infor Lawson Procurement with our other supply chain management, enterprise financial management, enterprise performance management, and business process management applications, helping to create a truly powerful end-to-end solution.

With your current procurement system, are you able to:

- Give your buyers access to customizable electronic requisitions, featuring easy-to-use templates?
- Specify multiple routing and approval scenarios that comply with your business rules?

- Automatically create purchase orders from requisitions?
- Remove a host of tedious, time-consuming administrative tasks from your buyers' job descriptions, allowing them to become more strategically focused?
- Consistently maintain all types of inventories at optimal levels?
- Integrate your purchasing and financial systems to create a seamless "req-to-payment" solution?

If not, consider the many deliverables of Infor Lawson Procurement.

## Streamline the purchase request process

Infor Lawson Procurement features a Requisitions module that simplifies the process of creating and routing purchase requests—even in high-volume environments. Like all Infor Lawson Procurement modules, Requisitions is web browser-accessible, with strong built-in security safeguards, allowing your buyers to remain productive users of the system regardless of time zones or geographic locations. Infor Lawson Procurement Requisitions:

- Can be configured to your organization's purchasing rules, permitting you to set spending limits, approval processes, and reorder requirements, strengthening control and accountability
- Accommodates a variety of requesting locations, both stock and nonstock, to meet specific business process needs
- Allows automatic approval routings to the right individuals, using provided Infor Lawson ProcessFlow Standard workflows; or requisitions may be manually routed to address special situations
- Delivers role-based access to requisition information, establishing greater control of each employee's purchasing privileges