# United States Court of Appeals
# for the Federal Circuit

---

**EPLUS, INC.,**
*Plaintiff-Appellee,*

v.

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant.*

---

2013-1506, -1587

---

Appeals from the United States District Court for the Eastern District of Virginia in No. 09-CV-0620, Senior Judge Robert E. Payne.

---

Decided: July 25, 2014

---

MICHAEL G. STRAPP, Goodwin Procter LLP, of Boston, Massachusetts, argued for plaintiff-appellee. With him on the brief were JENNIFER A. ALBERT and DAVID M. YOUNG, of Washington, DC.

MARK A. PERRY, Gibson, Dunn & Crutcher, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were BLAINE H. EVANSON; and JOSH A. KREVITT, DANIEL J. THOMASCH, RICHARD W. MARK, of New York, New York. Of counsel on the brief were DONALD R. DUNNER and ERIKA H. ARNER, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, of Washington, DC.

2                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

---

Before, PROST, *Chief Judge,*[*] DYK and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* O'Malley.

DYK, *Circuit Judge.*

ePlus, Inc. ("ePlus"), the assignee of U.S. Patent Nos. 6,023,683 (the "'683 patent") and 6,505,172 (the "'172 patent"), sued Lawson Software, Inc. ("Lawson") for infringement. The district court found two of the asserted system claims and three of the asserted method claims not invalid, and a jury found that Lawson infringed those claims. In an earlier appeal, we reversed in part on the ground that the system claims were invalid and that two of the asserted method claims were not infringed. We affirmed only the infringement verdict as to one method claim—claim 26—of the '683 patent. We remanded to the district court to make necessary modifications to the injunction.

On remand, the district court modified the injunction in one respect and found Lawson in civil contempt for violating the injunction. Lawson appealed both the injunction and contempt order. During the pendency of Lawson's appeals, the United States Patent and Trademark Office ("PTO") completed a reexamination of the '683 patent and determined that claim 26 was invalid. In a separate appeal, we affirmed the PTO's invalidity determination, and the PTO cancelled claim 26. We now vacate the injunction and contempt order because both

---

[*]    Sharon Prost assumed the position of Chief Judge on May 31, 2014.

were based on claim 26, which the PTO has now cancelled.

## BACKGROUND

This case raises two issues. The first is whether an injunction can continue after the PTO has cancelled the only claim on which the injunction was based. The second is whether civil contempt remedies based on the violation of an injunction are appropriate when the injunction has been overturned on direct appeal.

### I

ePlus owns the '172 patent and the '683 patent, which both relate to methods and systems for electronic sourcing. *See ePlus v. Lawson*, 700 F.3d 509, 512 (Fed. Cir. 2012) ("*ePlus I*"). The claimed methods and systems are directed to using electronic databases to search for product information and ordering selected products from third-party vendors. The only claim now at issue in this appeal, claim 26 of the '683 patent, recites a "method comprising the steps of": "maintaining at least two product catalogs on a database," "selecting product catalogs to search," "searching for matching items," "building a requisition," "processing the requisition to generate one or more purchase orders," and "determining whether a selected matching item is available in inventory." '683 patent col. 26 l. 61 to col. 27 l. 7.

In 2009, ePlus sued Lawson for infringement of the '683 patent and the '172 patent in the Eastern District of Virginia.[1] Lawson sells computer software to institutional customers. Its products are modular—customers

---

[1]     ePlus also alleged infringement of certain claims of U.S. Patent No. 6,055,516. The jury found none of those claims infringed, and ePlus did not appeal that aspect of the jury verdict.

decide which individual software components to purchase based on their needs. As a result, different customers use different combinations, or configurations, of software modules. The different configurations generally let users search for, select, and order products electronically, but the nature and extent of those capabilities vary depending on the particular modules a customer selects. When ePlus sued Lawson, the basic software component ("Core Procurement") allowed users to load products into an internal database ("Item Master"), search that database for products, create a requisition listing multiple selected products, and generate individual purchase orders to transmit to vendors. Requisition Self-Service ("RSS") was a module that provided a user interface for the Core Procurement unit. The Procurement Punchout module ("Punchout") let users search third-party vendors' databases for products and put those vendors' products on requisitions along with products stored in the internal Item Master database.

Given the modular nature of Lawson's products, ePlus asserted different patent claims against five distinct configurations of software modules ("Configurations 1–5"). With respect to the asserted claims of the '683 patent and the '172 patent, the jury found that three of the five accused configurations infringed. Configurations 3 and 5 were found to infringe two system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) and three method claims (claims 26, 28, and 29 of the '683 patent). Configuration 2 was found to infringe one system claim (claim 1 of the '172 patent). Configurations 1 and 4 were found not to infringe any of the claims asserted against them.

Pursuant to the jury verdicts, the district court permanently enjoined Lawson from

directly or indirectly making, using, offering to sell, or selling within the United States or import-

EPLUS, INC. v. LAWSON SOFTWARE, INC.                          5

> ing into the United States any of the [adjudged infringing] product configurations and/or installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services and any colorable variations thereof (the "Infringing Products and Services").

J.A. 4263. The court defined the "Infringing Products and Services" to include the three software configurations (Configurations 2, 3, and 5) adjudged infringing by the jury. The court also enjoined Lawson from "[c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services," and from "[a]iding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services." J.A. 4264. Lawson appealed.

On this first appeal, we determined that the two asserted system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) were invalid, and that two of the three asserted method claims (claims 28 and 29 of the '683 patent) were not infringed. We affirmed only the infringement finding as to method claim 26. Only Configurations 3 and 5 were found to infringe that claim. As a result of our holding on appeal, Configuration 2 was no longer infringing. We remanded "for the district court to consider what changes are required to the terms of the injunction, consistent with this opinion." *ePlus I*, 700 F.3d at 523.

After our ruling, the district court ordered the parties to file statements of position on the effect of our decision on the injunction. These were filed before Lawson's Rule 60(b) motion discussed below. Most importantly, Lawson challenged the very provisions of the injunction that led to the contempt sanctions sought by ePlus—namely, the bar

against sales of particular software products. Originally, these provisions concerning software sales were supported by the jury's findings of infringement of the system claims (claim 1 of the '172 patent and claim 3 of the '683 patent).[2] After our decision vacated those findings, Lawson argued that infringement of a single method claim (claim 26 of the '683 patent) could not support the injunction against product sales (and hence, contempt sanctions based on such sales) and that our opinion distinguished "sales" of software from "installation" and other services provided to customers.[3] This court upheld the finding of induced infringement of claim 26 not based on sales, but based on Lawson's providing customer services, including software installation, demonstrations, and maintenance.[1] Lawson also urged that, in light of this court's narrowing

---

[2]   In sustaining the jury verdict, the district court relied on the determination that "Lawson actively induces its customers' direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 3584313, at *4 (E.D.V.A., Aug. 12, 2011). We did not sustain the finding of infringement of the system claims or the findings of direct and induced infringement based on the sales of the systems.

[3]   We recognized that "[i]n addition to selling procurement software, Lawson provides services to customers who purchase its products. These services may include installation and maintenance of the products." *ePlus I*, 700 F.3d at 514.

[1]   We relied on "evidence that Lawson installed, maintained, demonstrated and managed the infringing systems for its customers" to conclude that a reasonable jury could "infer that Lawson performed the steps of claim 26" and "induced its customers to infringe claim 26." *Id.* at 521.

EPLUS, INC. v. LAWSON SOFTWARE, INC.                                   7

of the jury's infringement findings, the enjoined software products were capable of significant non-infringing uses and sales of such software should not be enjoined. Additionally, Lawson argued that under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the balancing of equities no longer supported any injunction. ePlus argued that the only modification required was the removal of Configuration 2 from the list of enjoined products. Lawson thereafter filed a Rule 60(b) motion to modify the injunction.

The district court agreed with ePlus's position and ordered that the injunction be "modified by deleting from its scope the product . . . colloquially known as 'Configuration 2,'" and "remain in effect in all other respects." J.A. 1.

On remand, in addition to reconsidering the injunction, the district court also instituted contempt proceedings. Following the jury verdicts, Lawson had decommissioned and stopped selling products with RSS, the user interface module for Core Procurement, the basic building block of Lawson's system. Lawson had also redesigned its software in two pertinent respects. First, it redesigned Configurations 3, and 5 by developing a new module, Requisition Center ("RQC") to replace the RSS user interface module. As redesigned, RQC prevented a user from simultaneously putting items from both the internal Item Master database and a third-party vendor's database (accessible via Punchout) on the same requisition. Second, Lawson redesigned Configurations 3 and 5 by developing downloadable software ("Patch 1") that limited the functionality of Punchout in Configurations 3 and 5. As modified by Patch 1, those configurations no longer allowed users to put items from multiple third-party vendors on the same requisition when using Punchout. As a result, users could only build requisitions with products from the internal Item Master database or from a single third-party database.

ePlus alleged that Lawson was in contempt for violating the injunction with respect to the redesigned software, arguing that the changes did not make the software more than colorably different from Configurations 3 and 5, and that the redesigned software infringed claim 26. Lawson argued that it was not violating the injunction because the redesigned software was more than colorably different from the originally accused software and that ePlus could not show that the redesigned software continued to infringe claim 26. The court held Lawson in contempt for violating the injunction, finding that the redesigned products were no more than colorably different and infringed. The court ordered Lawson to pay a compensatory fine of $18,167,950 and coercive daily fines of $62,362 until it could show compliance with the injunction. It declined to award enhanced damages or attorneys' fees. Lawson appealed the district court's modified injunction and contempt order. We stayed the accumulation of fines during the pendency of the appeals.

While Lawson's appeals were pending, in another case, we affirmed the PTO's reexamination decision invalidating claim 26 of the '683 patent. *In re ePlus, Inc.*, 540 Fed App'x 998 (Fed. Cir. 2013) (per curiam). Our mandate issued, and the PTO cancelled claim 26 in April 2014.

We have jurisdiction over the appeal of the injunction pursuant to 28 U.S.C. § 1292(a)(1) & (c)(1) and over the appeal of the contempt order pursuant to 28 U.S.C § 1291. We review a grant, denial, or modification of an injunction in a patent case for abuse of discretion. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004) (citing *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 881 (Fed. Cir. 1995)). We review a contempt order based on an injunction against infringement for abuse of discretion. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012)

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    9

(citing *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010)).

DISCUSSION

I. Injunction

The first question is whether the district court's modified injunction against Lawson must be set aside now that the PTO has cancelled the patent claim on which it is based. It is well established that an injunction must be set aside when the legal basis for it has ceased to exist. In *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 577–79 (1851), the Supreme Court approved an injunction sought by the state of Pennsylvania, ordering the removal of a bridge across the Ohio River because it illegally obstructed navigation. Congress subsequently enacted a law authorizing the bridge. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1855) ("*Wheeling Bridge*"). Pennsylvania requested that the Court execute its decree ordering the abatement of the bridge and punish the defendants for contempt for violating the Court's order by failing to remove the bridge. *Id.* at 427. The Court denied the motions and instead dissolved the injunction because "there [wa]s no longer any interference with the enjoyment of the public right inconsistent with law." *Id.* at 432. The Court held that an injunction "is executory, a continuing decree . . . . If, in the mean[]time, since the decree, this right has been modified by the competent authority . . . it is quite plain the decree of the court cannot be enforced." *Id.* at 431–32. Because the bridge was no longer unlawful, the Court had to set aside the previous order rather than enforce it.

"The principles of the *Wheeling Bridge* case have repeatedly been followed" by the Supreme Court as well as "by lower federal and state courts." *Sys. Fed'n No. 91, Ry. Emps' Dep't., AFL-CIO v. Wright*, 364 U.S. 642, 650–52 (1961) (holding that it is an abuse of discretion not to

10                     EPLUS, INC. v. LAWSON SOFTWARE, INC.

modify an injunction when, because of a change in the
law, "[t]he parties have no power to require of the court
continuing enforcement of rights the statute no longer
gives"); *see also, e.g.*, *Cobell v. Norton*, 392 F.3d 461, 467
(D.C. Cir. 2004) (vacating injunction where subsequently
enacted legislation relieved executive department of
duties required by injunction because "an injunction may
be a final judgment for purposes of appeal, [but] it is not
the last word of the judicial department because any
provision of prospective relief is subject to the continuing
supervisory jurisdiction of the court, and therefore may be
altered according to subsequent changes in the law"
(quoting *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d
1092, 1096–97 (D.C. Cir. 2001) (internal quotation marks
omitted in original) (quoting *Miller v. French*, 530 U.S.
327, 347 (2000)))); *Biodiversity Assocs. v. Cables*, 357 F.3d
1152, 1169–70 (10th Cir. 2004) (injunction arising from
settlement agreement "must give way" because it was
inconsistent with new legislation); *Imprisoned Citizens
Union v. Ridge*, 169 F.3d 178, 184 (3rd Cir. 1999) ("*Wheel-
ing Bridge* therefore stands for the proposition that when
Congress changes the law underlying a judgment award-
ing prospective injunctive relief, the judgment becomes
void to the extent that it is inconsistent with the amended
law.").

Those principles reflect the fact that "[a] continuing
decree of injunction directed to events to come is subject
always to adaptation as events may shape the
need. . . . [A] court does not abdicate its power to revoke or
modify its mandate, if satisfied that what it has been
doing has been turned through changing circumstances
into an instrument of wrong." *United States v. Swift &
Co.*, 286 U.S. 106, 114–15 (1932); *see also Salazar v.
Buono*, 559 U.S. 700, 718 (2010) ("Where legislative action
has undermined the basis upon which relief has previous-
ly been granted, a court must consider whether the origi-
nal finding of wrongdoing continues to justify the court's

intervention." (citing *Wright*, 364 U.S. at 648–49 and *Wheeling Bridge*, 59 U.S. at 430–32)).

Our court has applied these principles to an injunction barring infringement of patents later found to be invalid. *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1584 (Fed. Cir. 1994). In *Mendenhall*, we reviewed injunctions based on findings of patent infringement. *Id.* at 1576. While those injunctions were pending on appeal, the same patents were held invalid in another case in our court. *Id.* at 1576–77. We held that the injunctions had to be reversed following the final judgment of patent invalidity. *Id.* at 1584. We recognized that upholding injunctions would be "anomalous in the extreme in connection with patents this court has just held invalid." *Id.* at 1578.

Under these authorities, there is no longer any legal basis to enjoin Lawson's conduct based on rights that claim 26 of the '683 patent previously conferred as those rights have ceased to exist. The PTO found claim 26 invalid, we affirmed that decision, our mandate issued, and the PTO cancelled the claim. Claim 26 no longer confers any rights that support an injunction against infringement. During oral argument, ePlus even admitted that there could be no injunction moving forward. The PTO's cancellation of claim 26 requires that we now vacate the injunction.

## II. Civil Contempt Remedies

The second question is whether the civil contempt sanctions should be set aside. It is well established that "[v]iolations of an order are punishable as criminal contempt even though the order is set aside on appeal . . . or though the basic action has become moot." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 & n.60 (1947) (citing *Worden v. Searls*, 121 U.S. 14 (1887); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911)); *see also Walker v. Birmingham*, 388 US 307, 319 (1967) (upholding criminal contempt sentences

for violation of injunction regardless of the validity of the injunction); *Howat v. State of Kansas*, 258 U.S. 181, 189–90 (1922) (criminal contempt sentences do not depend on constitutionality of law on which injunction is based). If Lawson had been found guilty of criminal contempt, that order and any resulting penalties would not be set aside simply because claim 26 had been cancelled.

However, the district court found Lawson in civil, not criminal, contempt. It awarded "compensation" to ePlus for economic injury during the period that the injunction was in effect, based on the Supreme Court decision in *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932). In *Leman*, the Court upheld an award of the infringer's profits "not by way of punishment but to insure full compensation." *Id.* at 456.[5] The rule for civil contempt is that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." *United Mine Workers*, 330 U.S. at 295 (citing *Worden*, 121 U.S. at 25, 26; *Salvage Process*, 86 F.2d at 727; *S. Anargyros v. Anargyros & Co.*, 191 F. 208 (C.C.D. Cal. 1911)). The Supreme Court distinguished civil from criminal contempt, explaining that:

> It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order.

---

[5]    The district court also ordered coercive sanctions. We stayed these sanctions pending the resolution of this appeal. There is no question that ePlus is not entitled to seek coercive sanctions now that the injunction has been vacated.

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    13

*Id.* at 294–95. The Court explained that if the injunction
had been overturned, "the conviction for civil contempt
would be reversed in its entirety." *Id.* at 295. "[A party's]
right, as a civil litigant, to the [civil] compensatory fine is
dependent upon the outcome of the basic controversy." *Id.*
at 304. Civil contempt sanctions must be set aside when
the resolution of the case requires overturning the injunc-
tion on which those sanctions are based.

The Supreme Court has specifically applied this rule
to set aside civil contempt sanctions imposed for violating
an injunction based on patents subsequently found to be
invalid. *Worden*, 121 U.S at 26.[6] In *Worden*, the district
court had declared the patent not invalid, found the
defendants liable for infringement, and ordered a perma-
nent injunction. *Id.* at 19. The court also found the de-
fendants in contempt of its preliminary injunction and
ordered them to pay fines for civil contempt. *Id.* at 20. The
defendants appealed the court's rulings on infringement
and validity, as well as the contempt order and resulting
fines. *Id.* at 20, 24. On appeal, the Supreme Court found
the patent invalid and, on that basis, vacated the injunc-
tion. *Id.* at 25. Because the Court found the patent inva-
lid, *id.* at 24, and reversed the injunction on appeal, *id.* at

----

[6]   Curiously, the dissent now finds *Worden* inappli-
cable to this situation, Diss. Op. at 11 n.4, after previously
urging in *Fresenius* that *Worden* required the reversal of
contempt sanctions in such situations. Judge O'Malley, in
dissenting from the denial of en banc rehearing in *Frese-
nius*, stated: "[*Worden*] merely stands for the proposition
that the right to fines for violation of a preliminary in-
junction is founded on that injunction which in turn is
predicated on the validity of the patent." *Fresenius USA,
Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1376 n.5 (Fed. Cir.
2013) (dissenting from the denial of the petition for re-
hearing en banc) (citing *Worden*, 121 U.S. at 25).

26, it set aside the civil contempt order and resulting fines, declaring that the sanctions "cannot be upheld." *Id.* The Court explained that the civil sanctions were "incidents of [the patentee's] claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent." *Id.* at 25. Under *Worden*, compensatory civil contempt remedies must be set aside when the injunction on which they are based is set aside because the patent is determined to be invalid.[7] Other circuits have similarly held that civil contempt sanctions must be set aside if the underlying injunction is reversed on appeal.[8]

---

[7]   ePlus claims that some cases it cites have reached contrary results, but those cases involve situations where the basis for the injunction was eliminated prospectively only, *see, e.g., Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) (passage of Agricultural Credit Act made injunction moot, not baseless), *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) (citing *Klett*, 965 F.2d at 590) (same), or penalties that were not determined to be civil. *See, e.g., Cassidy v. Puett Elec. Starting Gate Corp.*, 182 F.2d 604, 608 (4th Cir. 1950) (district court ordered penalties "to punish those who have deliberately and without any reasonable excuse disobeyed [its] orders" (internal quotation marks omitted)).

[8]   "The general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *LaTrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1342, 1347–48 (3rd Cir. 1976) (vacating coercive civil contempt order because "reversal of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant."); *see also e.g., McLean v. Cent. States, S. & S.*

EPLUS, INC. v. LAWSON SOFTWARE, INC.                          15

This case is not distinguishable on the ground that the injunction has been set aside as the result of the PTO proceeding rather than a court judgment. In *Fresenius USA, Inc. v. Baxter International, Inc.*, we held that a non-final money judgment of damages for infringement must be set aside where the judgment rested on a patent claim that the PTO later cancelled. 721 F.3d 1330, 1344, 1347 (Fed. Cir. 2013).[9] We held that the cancellation of a patent requires that non-final judgments be set aside because the "cancelled claims [a]re void *ab initio*," *id.* at 1346, relying on *Moffit v. Garr*, 66 U.S. 273, 283 (1861), where the Supreme Court held that "unless [the patent] exists, and is in force at the time of trial and judgment, the suits fail." *Id.* at 1345 (quoting *Moffit*, 66 U.S. at 283). Thus, the cancellation of the patent precluded the patentee from recovering damages in *Fresenius*. Similarly, here the civil contempt sanctions must be set aside.

This case does not require us to decide whether civil contempt sanctions would survive if the injunction had

---

*Areas Pen. Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (Ordering "reversal of the contempt order because [the appellant] has prevailed in overturning the [underlying] order on appeal."); *Scott and Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981) (Remedial civil contempt judgment "must fall as a result of our decision invalidating the underlying injunction."); *ITT Comm. Dev. Corp. v. Barton*, 569 F.2d 1351, 1361 (5th Cir. 1978) (Vacating contempt orders because the underlying turn-over order "was invalid ab initio."); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 966 (6th Cir. 1976) (Concluding that "the remedial contempt order . . . falls with [the relevant provision] of the injunction.").

[9]   The Supreme Court denied the petition for *certiorari* on May 19, 2014. *Baxter, Int'l., Inc. v. Fresenius USA, Inc.*, 134 S. Ct. 2295 (2014).

16                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

been final at the time the district court imposed civil
contempt sanctions.[10] The injunction here was not final
even though claim 26 had been held infringed. We held in
*Fresenius* that even if this court has rejected an invalidity
defense to infringement, an "intervening decision invali-
dating the patents unquestionably applies" as long as "the
judgment in [the present] litigation is not final." *Id.* at
1344; *see also Moffit*, 66 U.S. at 283 ("[P]ending suits fall
with the surrender" of a patent "which, in judgment of
law, extinguishes the patent."); *Mendenhall*, 26 F.3d at
1584 ("Because the Mendenhall patents are invalid, the
plaintiffs cannot now enjoin or recover damages from
these defendants."). In *Fresenius*, we had previously
reviewed the district court's rulings on infringement and
invalidity and remanded the case to the district court to
determine the scope of damages and injunctive relief. 721
F.3d at 1333. When reviewing the judgment reached by
the district court on remand, we held that the original
district court judgment, while "final for purposes of ap-
peal . . . was not sufficiently final to preclude application
of the intervening judgment" that led to the cancellation
of the patent. *Id.* at 1340. With respect to the determina-
tion of finality, we explained that "where the scope of
relief remains to be determined, there is no final judg-
ment binding the parties (or the court)." *Id.* at 1341. This
rule follows from the Supreme Court's holding that "a

───────────

[10]   *See, e.g., Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)
(reviewing contempt order, but not underlying order
requiring turnover of property because "the turnover
proceeding is a separate one, and when completed and
terminated in a final order, it becomes res judicata and
not subject to collateral attack in the contempt proceed-
ings"); *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739
F.3d 1367, 1370, 1374 (Fed. Cir. 2014) (holding defendant
cannot raise invalidity as a defense to contempt when the
underlying injunction is final and not on appeal).

EPLUS, INC. v. LAWSON SOFTWARE, INC.                              17

final decree [is] one that finally adjudicates upon the
entire merits, leaving nothing further to be done except
the execution of it.'" *John Simmons Co. v. Grier Bros. Co.*,
258 U.S. 82, 88 (1922).

There is no question here that the district court's
modified injunction was not final when the PTO cancelled
claim 26. Our previous appeal did not affirm the injunc-
tion, rather it remanded the case to the district court,
requiring it "to consider what changes are required to the
terms of the injunction, consistent with this opinion."
*ePlus I*, 700 F.3d at 512. Our decision necessitated chang-
es to the injunction because of our reversal of the in-
fringement findings under claims 28 and 29, and our
conclusion that Configuration 2 was not infringing. On
remand, the district court had to consider the scope of
relief to which ePlus was entitled, which necessarily
impacted what activities Lawson could undertake. The
district court ordered the parties to file statements of
position "respecting the effect, if any, of the decision of the
Court of Appeals on the scope of the injunction previously
entered." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-
620, Order, (E.D.Va. Nov. 28, 2012), ECF No. 981. In light
of those submissions, the court recognized that "it is
appropriate to reassess the propriety and scope of an
injunction, as directed by the United States Court of
Appeals for the Federal Circuit." *ePlus, Inc. v. Lawson
Software, Inc.*, No. 3:09-cv-620, Order 2, (E.D.Va. Mar. 12,
2013), ECF No. 1019.

On the remand (as on appeal), Lawson argued that
our ruling required more than eliminating the reference
to Configuration 2. Specifically, Lawson contended that it
was necessary to alter the injunction as to sales of prod-
ucts. Lawson also asserted that the requisite *eBay* analy-
sis for the injunction changed because Configurations 3
and 5 were used by a substantially smaller portion of its
customer base than Configuration 2. The district court
rejected Lawson's arguments and found that the only

change our mandate required was removing the provision of the injunction that referenced Configuration 2. Consequently, it issued an order modifying the injunction in this one respect. The court ordered that "[p]ursuant to the mandate of the United States Court of Appeals for the Federal Circuit . . . it is hereby ORDERED that the injunction . . . is modified by deleting from its scope the product . . . colloquially known as 'Configuration 2[.]" J.A. 1. Lawson appealed the modification on the ground that it was not sufficient or consistent with our mandate and did not make the required changes. Under these circumstances, as in *Fresenius*, the district court's order was not final. 721 F.3d at 1342–43. After the district court modified the injunction, Lawson appealed the modification under 28 U.S.C. § 1291(a)(1). That appeal was pending when the PTO cancelled the only claim at issue in the litigation.

ePlus asserts that Lawson viewed the injunction as final because it filed a Rule 60(b) motion asking the district court to modify or dissolve the modified injunction. The filing of a Rule 60(b) motion under such circumstances is not unusual. Filing a Rule 60(b) motion did not prevent Lawson from appealing the modified injunction in addition to appealing the denial of the Rule 60(b) motion. *See Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) ("Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the [Rule 60(b)] motion is appealable as a separate final order, and if the original appeal is still pending . . . the court of appeals can consolidate the proceedings.").

We conclude that the compensatory award for the violation of the injunction must be set aside in light of the cancellation of claim 26. Given our disposition, we need not reach the question of whether Lawson's redesigned products are more than colorably different from the original accused products and whether the redesigned products infringe.

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    19

CONCLUSION

For the foregoing reasons, the district court's injunction and contempt orders are vacated. The case is remanded with instructions to dismiss.

**VACATED AND REMANDED**