# United States Court of Appeals for the Federal Circuit

_____

**EPLUS, INC.,**
*Plaintiff-Appellee*

**v.**

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant*

_____

2013-1506, 2013-1587

_____

Appeals from the United States District Court for the Eastern District of Virginia in No. 09-CV-0620, Senior Judge Robert E. Payne.

_____

Decided: June 18, 2015

_____

MICHAEL GAVIN STRAPP, Goodwin Procter LLP, Boston, MA, argued for plaintiff-appellee. Also represented by JENNIFER A. ALBERT, DAVID M. YOUNG, Washington, DC.

MARK ANDREW PERRY, Gibson, Dunn & Crutcher LLP, Washington, DC, argued for defendant-appellant. Also represented by BLAINE H. EVANSON, Los Angeles, CA; JOSH KREVITT, DANIEL J. THOMASCH, RICHARD MARK, New York, NY; ERIKA ARNER, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA; DONALD ROBERT DUNNER, Washington, DC.

2    EPLUS, INC. v. LAWSON SOFTWARE, INC.

————————————————

Before, PROST, *Chief Judge,*[*] DYK and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

DYK, *Circuit Judge.*

ePlus, Inc. ("ePlus"), the assignee of U.S. Patent Nos. 6,023,683 (the "'683 patent") and 6,505,172 (the "'172 patent"), sued Lawson Software, Inc. ("Lawson") for infringement. The district court found two of the asserted system claims and three of the asserted method claims not invalid, and a jury found that Lawson infringed those claims. In an earlier appeal, we reversed in part on the ground that the system claims were invalid and that two of the asserted method claims were not infringed. We affirmed only the infringement verdict as to one method claim—claim 26—of the '683 patent. We remanded to the district court to make necessary modifications to the injunction.

On remand, the district court modified the injunction in one respect and found Lawson in civil contempt for violating the injunction. Lawson appealed both the injunction and contempt order. During the pendency of Lawson's appeals, the United States Patent and Trademark Office ("PTO") completed a reexamination of the '683 patent and determined that claim 26 was invalid. In a separate appeal, we affirmed the PTO's invalidity determination, and the PTO cancelled claim 26. We now vacate the injunction and contempt order because both

————————————————

[*]    Sharon Prost assumed the position of Chief Judge on May 31, 2014.

were based on claim 26, which the PTO has now cancelled.

## BACKGROUND

This case raises two issues. The first is whether an injunction can continue after the PTO has cancelled the only claim on which the injunction was based. The second is whether civil contempt remedies based on the violation of an injunction are appropriate when the injunction has been overturned on direct appeal.

## I

ePlus owns the '172 patent and the '683 patent, which both relate to methods and systems for electronic sourcing. *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 512 (Fed. Cir. 2012) ("*ePlus I*"). The claimed methods and systems are directed to using electronic databases to search for product information and ordering selected products from third-party vendors. The only claim now at issue in this appeal, claim 26 of the '683 patent, recites a "method comprising the steps of": "maintaining at least two product catalogs on a database," "selecting product catalogs to search," "searching for matching items," "building a requisition," "processing the requisition to generate one or more purchase orders," and "determining whether a selected matching item is available in inventory." '683 patent col. 26 l. 61–col. 27 l. 7.

In 2009, ePlus sued Lawson for infringement of the '683 patent and the '172 patent in the Eastern District of Virginia.[1] Lawson sells computer software to institutional customers. Its products are modular—customers decide

---

[1]    ePlus also alleged infringement of certain claims of U.S. Patent No. 6,055,516. The jury found none of those claims infringed, and ePlus did not appeal that aspect of the jury verdict.

4                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

which individual software components to purchase based
on their needs. As a result, different customers use differ-
ent combinations, or configurations, of software modules.
The different configurations generally let users search for,
select, and order products electronically, but the nature
and extent of those capabilities vary depending on the
particular modules a customer selects. When ePlus sued
Lawson, the basic software component ("Core Procure-
ment") allowed users to load products into an internal
database ("Item Master"), search that database for prod-
ucts, create a requisition listing multiple selected prod-
ucts, and generate individual purchase orders to transmit
to vendors. Requisition Self-Service ("RSS") was a module
that provided a user interface for the Core Procurement
unit. The Procurement Punchout module ("Punchout") let
users search third-party vendors' databases for products
and put those vendors' products on requisitions along
with products stored in the internal Item Master data-
base.

Given the modular nature of Lawson's products, ePlus
asserted different patent claims against five distinct
configurations of software modules ("Configurations 1–5").
With respect to the asserted claims of the '683 patent and
the '172 patent, the jury found that three of the five
accused configurations infringed. Configurations 3 and 5
were found to infringe two system claims (claim 1 of the
'172 patent and claim 3 of the '683 patent) and three
method claims (claims 26, 28, and 29 of the '683 patent).
Configuration 2 was found to infringe one system claim
(claim 1 of the '172 patent). Configurations 1 and 4 were
found not to infringe any of the claims asserted against
them.

Pursuant to the jury verdicts, the district court per-
manently enjoined Lawson from

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    5

> directly or indirectly making, using, offering to
> sell, or selling within the United States or import-
> ing into the United States any of the [adjudged in-
> fringing] product configurations and/or
> installation, implementation, design, configura-
> tion, consulting, upgrade, maintenance and sup-
> port and training and other related and associated
> services and any colorable variations thereof (the
> "Infringing Products and Services").

J.A. 4263. The court defined the "Infringing Products and
Services" to include the three software configurations
(Configurations 2, 3, and 5) adjudged infringing by the
jury. The court also enjoined Lawson from "[c]irculating,
publishing or disseminating within the United States any
literature or information that encourages the use, sale or
importation of any of the Infringing Products and Ser-
vices," and from "[a]iding and abetting, actively inducing,
or in any way contributing to the making, use, sale or
importation of any of the Infringing Products and Ser-
vices." J.A. 4264. Lawson appealed.

On this first appeal, we determined that the two
asserted system claims (claim 1 of the '172 patent and
claim 3 of the '683 patent) were invalid, and that two of
the three asserted method claims (claims 28 and 29 of the
'683 patent) were not infringed. We affirmed only the
infringement finding as to method claim 26. Only Config-
urations 3 and 5 were found to infringe that claim. As a
result of our holding on appeal, Configuration 2 was no
longer infringing. We remanded "for the district court to
consider what changes are required to the terms of the
injunction, consistent with this opinion." *ePlus I*, 700 F.3d
at 523.

After our ruling, the district court ordered the parties
to file statements of position on the effect of our decision
on the injunction. These were filed before Lawson's Rule
60(b) motion discussed below. Most importantly, Lawson

challenged the very provisions of the injunction that led to the contempt sanctions sought by ePlus—namely, the bar against sales of particular software products. Originally, these provisions concerning software sales were supported by the jury's findings of infringement of the system claims (claim 1 of the '172 patent and claim 3 of the '683 patent).[2] After our decision vacated those findings, Lawson argued that infringement of a single method claim (claim 26 of the '683 patent) could not support the injunction against product sales (and hence, contempt sanctions based on such sales) and that our opinion distinguished "sales" of software from "installation" and other services provided to customers.[3] This court upheld the finding of induced infringement of claim 26 not based on sales, but based on Lawson's providing customer services, including software installation, demonstrations, and maintenance.[4]

---

[2]   In sustaining the jury verdict, the district court relied on the determination that "Lawson actively induces its customers' direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 3584313, at *4 (E.D.V.A., Aug. 12, 2011). We did not sustain the finding of infringement of the system claims or the findings of direct and induced infringement based on the sales of the systems.

[3]   We recognized that "[i]n addition to selling procurement software, Lawson provides services to customers who purchase its products. These services may include installation and maintenance of the products." *ePlus I*, 700 F.3d at 514.

[4]   We relied on "evidence that Lawson installed, maintained, demonstrated and managed the infringing systems for its customers" to conclude that a reasonable jury could "infer that Lawson performed the steps of claim

Lawson also urged that, in light of this court's narrowing of the jury's infringement findings, the enjoined software products were capable of significant non-infringing uses and sales of such software should not be enjoined. Additionally, Lawson argued that under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the balancing of equities no longer supported any injunction. ePlus argued that the only modification required was the removal of Configuration 2 from the list of enjoined products. Lawson thereafter filed a Rule 60(b) motion to modify the injunction.

The district court agreed with ePlus's position and ordered that the injunction be "modified by deleting from its scope the product . . . colloquially known as 'Configuration 2,'" and "remain in effect in all other respects." J.A. 1.

On remand, in addition to reconsidering the injunction, the district court also instituted contempt proceedings. Following the jury verdicts, Lawson had decommissioned and stopped selling products with RSS, the user interface module for Core Procurement, the basic building block of Lawson's system. Lawson had also redesigned its software in two pertinent respects. First, it redesigned Configurations 3 and 5 by developing a new module, Requisition Center ("RQC") to replace the RSS user interface module. As redesigned, RQC prevented a user from simultaneously putting items from both the internal Item Master database and a third-party vendor's database (accessible via Punchout) on the same requisition. Second, Lawson redesigned Configurations 3 and 5 by developing downloadable software ("Patch 1") that limited the functionality of Punchout in Configurations 3 and 5. As modified by Patch 1, those configurations no longer allowed users to put items from multiple third-

---

26" and "induced its customers to infringe claim 26." *Id.* at 521.

8                         EPLUS, INC. v. LAWSON SOFTWARE, INC.

party vendors on the same requisition when using Pun-chout. As a result, users could only build requisitions with products from the internal Item Master database or from a single third-party database.

ePlus alleged that Lawson was in contempt for violating the injunction with respect to the redesigned software, arguing that the changes did not make the software more than colorably different from Configurations 3 and 5, and that the redesigned software infringed claim 26. Lawson argued that it was not violating the injunction because the redesigned software was more than colorably different from the originally accused software and that ePlus could not show that the redesigned software continued to infringe claim 26. The court held Lawson in contempt for violating the injunction, finding that the redesigned products were no more than colorably different and infringed. The court ordered Lawson to pay a compensatory fine of $18,167,950 and coercive daily fines of $62,362 until it could show compliance with the injunction. It declined to award enhanced damages or attorneys' fees. Lawson appealed the district court's modified injunction and contempt order. We stayed the accumulation of fines during the pendency of the appeals.

While Lawson's appeals were pending, in another case, we affirmed the PTO's reexamination decision invalidating claim 26 of the '683 patent. *In re ePlus, Inc.*, 540 F. App'x 998 (Fed. Cir. 2013) (per curiam). Our mandate issued, and the PTO cancelled claim 26 in April 2014.

We have jurisdiction over the appeal of the injunction pursuant to 28 U.S.C. § 1292(a)(1) & (c)(1) and over the appeal of the contempt order pursuant to 28 U.S.C § 1291. We review a grant, denial, or modification of an injunction in a patent case for abuse of discretion. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004) (citing *Carborundum Co. v. Molten Metal*

*Equip. Innovations, Inc.*, 72 F.3d 872, 881 (Fed. Cir. 1995)). We review a contempt order based on an injunction against infringement for abuse of discretion. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012) (citing *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010)).

DISCUSSION

I. Injunction

The first question is whether the district court's modified injunction against Lawson must be set aside now that the PTO has cancelled the patent claim on which it is based. It is well established that an injunction must be set aside when the legal basis for it has ceased to exist. In *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 577–79 (1851), the Supreme Court approved an injunction sought by the state of Pennsylvania, ordering the removal of a bridge across the Ohio River because it illegally obstructed navigation. Congress subsequently enacted a law authorizing the bridge. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1855) ("*Wheeling Bridge*"). Pennsylvania requested that the Court execute its decree ordering the abatement of the bridge and punish the defendants for contempt for violating the Court's order by failing to remove the bridge. *Id.* at 427. The Court denied the motions and instead dissolved the injunction because "there [wa]s no longer any interference with the enjoyment of the public right inconsistent with law." *Id.* at 432. The Court held that an injunction "is executory, a continuing decree . . . . If, in the mean[]time, since the decree, this right has been modified by the competent authority . . . it is quite plain the decree of the court cannot be enforced." *Id.* at 431–32. Because the bridge was no longer unlawful, the Court had to set aside the previous order rather than enforce it.

10                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

"The principles of the *Wheeling Bridge* case have repeatedly been followed" by the Supreme Court as well as "by lower federal and state courts." *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 650–52 (1961) (holding that it is an abuse of discretion not to modify an injunction when, because of a change in the law, "[t]he parties have no power to require of the court continuing enforcement of rights the statute no longer gives"); *see also, e.g.*, *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004) (vacating injunction where subsequently enacted legislation relieved executive department of duties required by injunction because "an injunction may be a final judgment for purposes of appeal, [but] it is not the last word of the judicial department because any provision of prospective relief is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law" (quoting *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1096–97 (D.C. Cir. 2001) (internal quotation marks omitted in original) (quoting *Miller v. French*, 530 U.S. 327, 347 (2000)))); *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1169–70 (10th Cir. 2004) (injunction arising from settlement agreement "must give way" because it was inconsistent with new legislation); *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 184 (3d Cir. 1999) ("*Wheeling Bridge* therefore stands for the proposition that when Congress changes the law underlying a judgment awarding prospective injunctive relief, the judgment becomes void to the extent that it is inconsistent with the amended law.").

Those principles reflect the fact that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . . [A] court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    11

into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932); *see also Salazar v. Buono*, 559 U.S. 700, 718 (2010) ("Where legislative action has undermined the basis upon which relief has previously been granted, a court must consider whether the original finding of wrongdoing continues to justify the court's intervention." (citing *Wright*, 364 U.S. at 648–49 and *Wheeling Bridge*, 59 U.S. at 430–32)).

Our court has applied these principles to an injunction barring infringement of patents later found to be invalid. *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1584 (Fed. Cir. 1994). In *Mendenhall*, we reviewed injunctions based on findings of patent infringement. *Id.* at 1576. While those injunctions were pending on appeal, the same patents were held invalid in another case in our court. *Id.* at 1576–77. We held that the injunctions had to be reversed following the final judgment of patent invalidity. *Id.* at 1584. We recognized that upholding injunctions would be "anomalous in the extreme in connection with patents this court has just held invalid." *Id.* at 1578.

Under these authorities, there is no longer any legal basis to enjoin Lawson's conduct based on rights that claim 26 of the '683 patent previously conferred as those rights have ceased to exist. The PTO found claim 26 invalid, we affirmed that decision, our mandate issued, and the PTO cancelled the claim. Claim 26 no longer confers any rights that support an injunction against infringement. During oral argument, ePlus even admitted that there could be no injunction moving forward. The PTO's cancellation of claim 26 requires that we now vacate the injunction.

## II. Civil Contempt Remedies

The second question is whether the civil contempt sanctions should be set aside. It is well established that "[v]iolations of an order are punishable as crimi-

nal contempt even though the order is set aside on appeal . . . or though the basic action has become moot." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 & n.60 (1947) (citing *Worden v. Searls*, 121 U.S. 14 (1887); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911)); *see also Walker v. Birmingham*, 388 U.S. 307, 319 (1967) (upholding criminal contempt sentences for violation of injunction regardless of the validity of the injunction); *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922) (criminal contempt sentences do not depend on constitutionality of law on which injunction is based). If Lawson had been found guilty of criminal contempt, that order and any resulting penalties would not be set aside simply because claim 26 had been cancelled.

However, the district court found Lawson in civil, not criminal, contempt. It awarded "compensation" to ePlus for economic injury during the period that the injunction was in effect, based on the Supreme Court decision in *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932). In *Leman*, the Court upheld an award of the infringer's profits "not by way of punishment but to insure full compensation." *Id.* at 456.[5] The rule for civil contempt for violating a provision of an injunction that is not final, i.e., that is still subject to litigation over the propriety of its issuance, is that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." *United Mine Workers*, 330 U.S. at 295 (citing *Worden*, 121 U.S. at 25–26; *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727, 727 (2d Cir. 1936); *S. Anargyros v. Anargyros & Co.*, 191 F. 208

---

[5]    The district court also ordered coercive sanctions. We stayed these sanctions pending the resolution of this appeal. There is no question that ePlus is not entitled to seek coercive sanctions now that the injunction has been vacated.

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    13

(C.C.D. Cal. 1911)). The Supreme Court distinguished civil from criminal contempt, explaining that:

> It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order.

*Id.* at 294–95. The Court explained that if the non-final injunction at issue (a temporary restraining order) had been overturned, "the conviction for civil contempt would be reversed in its entirety." *Id.* at 295. "[A party's] right, as a civil litigant, to the [civil] compensatory fine is dependent upon the outcome of the basic controversy." *Id.* at 304. Civil contempt sanctions must be set aside when the resolution of the case requires overturning the injunction on which those sanctions are based.

The Supreme Court has specifically applied this rule to set aside civil contempt sanctions imposed for violating an injunction based on patents found to be invalid on appeal of the (non-final) injunction. *Worden*, 121 U.S at 26.[6] In *Worden*, the district court had declared the patent

---

[6]   Curiously, the dissent now finds *Worden* inapplicable to this situation, Diss. Op. at 14 n.5, after previously urging in *Fresenius* that *Worden* required the reversal of contempt sanctions in such situations. Judge O'Malley, in dissenting from the denial of en banc rehearing in *Fresenius*, stated: "[*Worden*] merely stands for the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1376 n.5 (Fed. Cir.

14                EPLUS, INC. v. LAWSON SOFTWARE, INC.

not invalid, found the defendants liable for infringement,
and ordered a permanent injunction. *Id.* at 19. The court
also found the defendants in contempt of its preliminary
injunction and ordered them to pay fines for civil con-
tempt. *Id.* at 20. The defendants appealed the court's
rulings on infringement and validity, as well as the con-
tempt order and resulting fines. *Id.* at 20, 24. On appeal,
the Supreme Court found the patent invalid and, on that
basis, vacated the injunction. *Id.* at 25. Because the Court
found the patent invalid, *id.* at 24, and reversed the
injunction on appeal, *id.* at 26, it set aside the civil con-
tempt order and resulting fines, declaring that the sanc-
tions "cannot be upheld." *Id.* The Court explained that the
civil sanctions were "incidents of [the patentee's] claims in
the suit. His right to them was, if it existed at all, founded
on his right to the injunction, and that was founded on
the validity of his patent." *Id.* at 25. Under *Worden*,
compensatory civil contempt remedies for violating a
provision of an injunction that is still subject to litigation
over its issuance must be set aside when the injunction is
reversed because the patent is determined to be invalid.[7]

---

2013) (dissenting from the denial of the petition for re-
hearing en banc) (citing *Worden*, 121 U.S. at 25).

    [7]    ePlus claims that some cases it cites have reached
contrary results, but those cases involve situations where
the basis for the injunction was eliminated prospectively
only, *see, e.g.*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir.
1992) (passage of Agricultural Credit Act made injunction
moot, not baseless); *Coleman v. Espy*, 986 F.2d 1184, 1190
(8th Cir. 1993) (citing *Klett*, 965 F.2d at 590) (same), or
penalties that were not determined to be civil, *see, e.g.*,
*Cassidy v. Puett Elec. Starting Gate Corp.*, 182 F.2d 604,
608 (4th Cir. 1950) (district court ordered penalties "to
punish those who have deliberately and without any

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    15

Other circuits have similarly held that civil contempt sanctions must be set aside if the underlying non-final injunction is reversed on appeal.[8]

This case is not distinguishable on the ground that the basis for the injunction has been removed as the result of the PTO proceeding rather than a court judgment. In *Fresenius USA, Inc. v. Baxter International, Inc.*, we held that a non-final money judgment of damages for

---

reasonable excuse disobeyed [its] orders" (internal quotation marks omitted)).

[8]    "The general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *LaTrobe Steel Co. v. United Steelworkers of Am.*, 545 F.2d 1336, 1342, 1347–48 (3d Cir. 1976) (vacating coercive civil contempt order because "reversal of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant"); *see also e.g.*, *McLean v. Cent. States, S. & S. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (ordering "reversal of the contempt order because [the appellant] has prevailed in overturning the [underlying] order on appeal."); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981) (remedial civil contempt judgment "must fall as a result of our decision invalidating the underlying injunction"); *ITT Comm. Dev. Corp. v. Barton*, 569 F.2d 1351, 1361 (5th Cir. 1978) (vacating contempt orders because the underlying turn-over order "was invalid ab initio"); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 966 (6th Cir. 1976) (concluding that "the remedial contempt order . . . falls with [the relevant provision] of the injunction"). All of these cases involved orders whose merits were still subject to review when the civil contempt sanctions were reviewed.

infringement must be set aside where the judgment rested on a patent claim that the PTO later cancelled. 721 F.3d 1330, 1344, 1347 (Fed. Cir. 2013).[9] We held that the cancellation of a patent requires that non-final judgments be set aside because the "cancelled claims [a]re void *ab initio*," *id.* at 1346, relying on *Moffit v. Garr*, 66 U.S. 273, 283 (1861), where the Supreme Court held that "unless [the patent] exists, and is in force at the time of trial and judgment, the suits fail." *Id.* at 1345 (quoting *Moffit*, 66 U.S. at 283). Thus, the cancellation of the patent precluded the patentee from recovering damages in *Fresenius*. Similarly, here the civil contempt sanctions must be set aside.

This case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions.[10] The injunction here was not final even though claim 26 had been held infringed. We go no further than we did in *Fresenius* in deciding this case.

We held in *Fresenius* that even if this court has rejected an invalidity defense to infringement, an "interven-

---

[9]    The Supreme Court denied the petition for *certiorari* on May 19, 2014. *Baxter, Int'l, Inc. v. Fresenius USA, Inc.*, 134 S. Ct. 2295 (2014).

[10]    *See, e.g.*, *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948) (reviewing contempt order, but not underlying order requiring turnover of property because "the turnover proceeding is a separate one, and when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings"); *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370, 1374 (Fed. Cir. 2014) (holding defendant cannot raise invalidity as a defense to contempt when the underlying injunction is final and not on appeal).

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    17

ing decision invalidating the patents unquestionably applies" as long as "the judgment in [the present] litigation is not final." *Id.* at 1344; *see also Moffit*, 66 U.S. at 283 ("[P]ending suits fall with the surrender" of a patent "which, in judgment of law, extinguishes the patent."); *Mendenhall*, 26 F.3d at 1584 ("Because the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants."). In *Fresenius*, we had previously reviewed the district court's rulings on infringement and invalidity and remanded the case to the district court to determine the scope of damages and injunctive relief. 721 F.3d at 1333. When reviewing the judgment reached by the district court on remand, we held that the original district court judgment, while "final for purposes of appeal . . . was not sufficiently final to preclude application of the intervening judgment" that led to the cancellation of the patent. *Id.* at 1340. With respect to the determination of finality, we explained that "where the scope of relief remains to be determined, there is no final judgment binding the parties (or the court)." *Id.* at 1341. We relied on the Supreme Court's holding that "a final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it." *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922).

At the time of the original injunction here, the jury had found two system claims and three method claims infringed. The injunction did not tie specific enjoined activities or products to specific claims that had been found infringed. Indeed, it did not even mention any of the five claims that were found to be infringed. On its face, our invalidation of the two system claims and our holding that method claims 28 and 29 were not infringed, *see ePlus I*, 700 F.3d at 520–22, resulted in a substantial question as to the appropriate scope of the injunction. The question was whether the one method claim we sustained

(claim 26) was sufficient to support the district court's broad injunction. We remanded for the district court to "consider what changes are required to the terms of the injunction, consistent with this opinion." *Id.* at 523. Although the parties agreed that configuration 2, which the jury had found infringed one system claim, was to be removed from the injunction, a central issue on remand was whether the injunction as to sales and manufacturing could still be upheld on the basis of infringement of method claim 26.

The injunction enjoined "making, . . . offering to sell, or selling" the "Infringing [software] Products . . . ." J.A. 4263–64. But it did not tie the sales provision to any particular claims, nor, contrary to the dissent, did the district court's opinions do so.[11] There was no question as

---

[11]   The dissent quotes from the district court's opinion denying judgment as a matter of law to argue that selling the infringing systems would be an infringement of method claim 26 specifically. Diss. Op. at 4 n.2 (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 2011 WL 3584313, at *4 (E.D. Va. Aug. 12, 2011)). The context of the quoted sentence shows instead that the district court was referring to the infringed claims collectively:

> The jury heard and received substantial evidence to support a finding of indirect infringement of the claims, on either an inducement or contributory infringement basis. Evidence demonstrated that Lawson actively induces its customers' direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner. Testimony elicited during the trial and the documentary evidence tended to prove also that Lawson installs the infringing systems on its

to the propriety of the sales and manufacturing injunction
so long as the system claims were infringed. An injunction
can of course be granted against the making and selling of
a product that directly infringes on a system claim. *See,
e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282,
1315 (Fed. Cir. 2005) (noting that using, offering to sell or
selling a patented system can be direct infringement of a
system claim under 35 U.S.C. § 271(a)); *Broadcom Corp.
v. Emulex Corp.*, 732 F.3d 1325, 1338 (Fed. Cir. 2013)
(sustaining injunction against sales where a system claim
was infringed).

But the system claims were held invalid. ePlus has
argued that the sales and manufacturing provisions of the
injunction could be based on induced infringement by
Lawson of method claim 26, the one claim of the patent
that we held infringed in the original appeal. On remand,
and again on appeal here, Lawson argued that the injunc-
tion had to be modified because it could not, after the

---

customers' systems, configures and implements
the systems, provides a wide-range of technical
support and service, and provides instructions and
training to its customers on how to use the sys-
tems in an infringing manner.

*ePlus*, 2011 WL 3584313, at *4. This passage, like the
district court's injunction opinion, *see ePlus, Inc. v. Law-
son Software, Inc.*, 2011 WL 2119410 (E.D. Va. May 23,
2011), is not clear on the precise scope of Lawson's indi-
rect infringing activity with respect to each individual
claim. Given that only method claim 26 survived the
*ePlus I* appeal, with the system claims held invalid and
other method claims found non-infringed, there was a
substantial question as to which activities—Lawson's
selling, installing, supporting, servicing, or training—
could still be enjoined.

invalidation of the two system claims, "prohibit[] Lawson from *making* and *selling* its . . . systems" because the original injunction barred sales "even though Lawson's mere sale and distribution of its systems does not infringe the method of [c]laim 26." Lawson's Statement of Position Respecting the Effect of the Federal Circuit's Decision on the Scope of the Original Injunction at 17–18, No. 3:09cv620 (E.D. Va. Dec. 27, 2012), ECF No. 990 (emphases in original). We agree with Lawson that the original appeal did not resolve the question of whether claim 26 could support the sales injunction.

Once the system claims were invalidated, there remained a substantial question of whether an injunction against sales and manufacturing could be justified on a theory of inducement.[12] The core functionality of Lawson's systems (which ePlus itself characterizes as the "core" functionality) allowed a purchaser to search an internal database and order items. But that functionality did not

---

[12] The dissent suggests we affirmed a determination of contributory infringement of the method claims. Diss. Op. at 6–7. In fact, the panel opinion in *ePlus I* did not address contributory infringement. This is unsurprising, since contributory infringement of the method claims was barely mentioned in the parties' briefs in that appeal. Significantly, the panel did not even mention contributory infringement when it described ePlus' theories of infringement of the method claims. *See ePlus I*, 700 F.3d at 514 ("As to the method claims, ePlus alleged that (1) Lawson induces its customers to use software programs to perform all of the steps of the asserted method claims; (2) Lawson itself infringes the method claims by demonstrating, installing, managing, and maintaining its software products for its customers; and (3) Lawson, its customers, and third party vendors jointly infringed the asserted method claims.").

infringe claim 26. Only using the so-called "Punchout" feature that allowed customers to also order from third-party databases was held to be infringing.

As the Supreme Court explained in the analogous context of copyright infringement, to "overcome[] the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use," induced infringement requires active steps to encourage direct infringement and an "affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (citing *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)). A seller does not induce infringement of a method claim by merely selling an apparatus capable of performing the method. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) ("[S]ale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement." (citation, internal quotation marks omitted)); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."). Inducement requires such steps as "encourag[ing]," *Grokster*, 545 U.S. at 936, "recommend[ing]," *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365 (Fed. Cir. 2012), or "promot[ing]," *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004), an infringing use. Further, the Fifth Circuit explicitly held in *Rohm & Haas Co. v. Dawson Chemical Co.*, 599 F.2d 685 (5th Cir. 1979), *aff'd*, 448 U.S. 176 (1980), "mere sale is not wrongful under [271(b)]" where a method claim had been infringed, so appropriate relief would "not be an injunction forbidding [sales]." *Id.* at 703 n.24.

Not surprisingly, our opinion in *ePlus I* did not resolve

22                          EPLUS, INC. v. LAWSON SOFTWARE, INC.

whether the sales and manufacturing injunction could be
based on method claim 26. With respect to claim 26, we
stated that Lawson's customers infringe by performing all
the steps of claim 26, that Lawson directly infringes claim
26, and that Lawson induced infringement. But we did
not hold that sales induced infringement.[13] There was no
argument by either party in the original appeal as to the
consequences of invalidating the system claims, so this

_____

[13]    The entirety of our discussion is as follows:

> Moreover, in our view, the record contains sub-
> stantial evidence to show that Lawson itself in-
> fringes claim 26. In particular, there is evidence
> that Lawson installed, maintained, demonstrat-
> ed, and managed the infringing systems for its
> customers. The evidence includes course catalogs
> and webinar presentations offered by Lawson to
> its customers. ePlus also offered testimony at trial
> to the effect that Lawson's professional services
> include developing, installing, and testing "up
> and including bringing a system live" for its cus-
> tomers. J.A. 1941. ePlus also provided the jury
> with evidence that the live testing phase included
> performing actual procurements using Lawson's
> systems. All of this circumstantial evidence per-
> mits a reasonable jury to infer that Lawson per-
> formed the steps of claim 26. Finally, we have
> reviewed the record and are satisfied that it con-
> tains sufficient evidence of Lawson's intent and
> knowledge to allow a reasonable jury to conclude
> that Lawson induced its customers to infringe
> claim 26. Thus, we affirm the district court's deni-
> al of JMOL of non-infringement with respect to
> the jury's verdict of direct and induced infringe-
> ment of claim 26.

*ePlus I*, 700 F.3d at 520–21.

court's statement that "[t]o the extent that we have not addressed any of the parties' arguments . . ., we have determined them to be unpersuasive," *ePlus I*, 700 F.3d at 523 n.2, cannot have been directed to that issue.

Thus, because the propriety of the injunction against sales and manufacturing was still an issue after the first appeal, there had not been "a final decree . . . that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it." *John Simmons Co.*, 258 U.S. at 88. And the "scope of relief remain[ed] to be determined . . . ." *Fresenius*, 721 F.3d at 1341. The injunction was not final and under *Worden*, the cancellation of the claim by the PTO required that the injunction and contempt sanctions be vacated.

ePlus asserts that Lawson viewed the injunction as final because it filed a Rule 60(b) motion asking the district court to modify or dissolve the modified injunction. The filing of a Rule 60(b) motion under such circumstances is not unusual. Filing a Rule 60(b) motion did not prevent Lawson from appealing the modified injunction in addition to appealing the denial of the Rule 60(b) motion. *See Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 401 (1995) ("Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the [Rule 60(b)] motion is appealable as a separate final order, and if the original appeal is still pending . . . the court of appeals can consolidate the proceedings.").

We conclude that the compensatory award for the violation of the injunction must be set aside in light of the cancellation of claim 26. Given our disposition, we need not reach the question of whether Lawson's redesigned products are more than colorably different from the original accused products and whether the redesigned products infringe.

CONCLUSION

For the foregoing reasons, the district court's injunction and contempt orders are vacated. The case is remanded with instructions to dismiss.

**VACATED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

_____

**EPLUS, INC.,**
*Plaintiff-Appellee*

**v.**

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant*

_____

2013-1506, 2013-1587

_____

Appeals from the United States District Court for the
Eastern District of Virginia in No. 09-CV-0620, Senior
Judge Robert E. Payne.

_____

O'MALLEY, *Circuit Judge*, dissenting.

I agree that, once this Court affirmed the PTO's can-
cellation of claim 26 of the '683 patent, an ongoing injunc-
tion barring infringement of that patent could no longer
stand and must be vacated prospectively. That conclusion
comes easily; as the majority notes, even Appellant's
counsel conceded the point during oral argument. Maj.
Op. at 11. The more difficult question is whether Appel-
lees are relieved of all penalties for having violated the

injunction during the four years it was in place before the PTO's cancellation was affirmed.[1]

On this second question, the majority concludes that "[t]his case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions," Maj. Op. at 16, because, under *Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) ("*Fresenius II*"), cancellation of claims by the Patent and Trademark Office ("PTO") "requires that non-final judgments be set aside." *Id.* Because it finds the judgment in this case non-final, the majority—on the strength of *Fresenius II*—renders all aspects of the earlier judgment against Lawson, including the injunction premised thereon, a nullity. I respectfully dissent from that aspect of the majority's opinion because *Fresenius II* is distinguishable from, and I do not believe governs, the present appeal. I write separately, moreover, to note that, if we are bound by *Fresenius II* on these facts, I find *Fresenius II* even more troubling than I initially believed. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1373–81 (Fed. Cir. 2013) (O'Malley, J., dissenting from denial of petition for rehearing en banc) ("*Fresenius II Denial of En Banc*"). If *Fresenius II* compels the conclusion here, it should be reconsidered.

## I

I begin by addressing the majority's revisions to the originally-issued opinion in this case, made in response to

---

[1]    While Lawson contends it did not violate the district court's injunction, because the majority does not reach that question, neither do I. The current record contains a district court finding that Lawson did violate the injunction. The question I debate with the majority is whether we can reach the merits of that finding.

legitimate criticisms of the panel opinion set forth in the Petition for Panel Rehearing and Rehearing En Banc. Rather than correct the legal errors in its original decision, the majority now attempts to justify that decision by rewriting the record and recharacterizing our decision in *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012) ("*ePlus I*"). The majority newly claims that "[w]e go no further than we did in *Fresenius* in deciding this case." Maj. Op. at 16. It tries to vindicate its expansive view of finality by asserting that the landscape it initially addressed in this case was something other than first described—and something other than it was. Although the majority tries hard to conjure a record upon which it can claim that the injunction at issue in this case was not final when the panel opinion was written, the majority does not succeed. The record nevertheless shows that the majority has stretched the already concerning scope of *Fresenius II* to an even more untenable place. Maj. Op. at 17–23.

A

In *ePlus I*, we faced an appeal from a district court judgment which found system claim 3 and method claims 26, 28, and 29 of U.S. Patent No. 6,023,683 ("the '683 patent"), as well as system claim 1 of U.S. Patent No. 6,505,172 ("the '172 patent"), valid and infringed. *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 3584313, at *3–4 (E.D. Va. Aug. 12, 2011). Predicated on that judgment, the district court enjoined all activities that would constitute continuing infringement of those claims, including sales of all infringing configurations—designated Configuration Nos. 2, 3, and 5, as well as the M3 e-Procurement System. *See ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 459, 471 (E.D. Va. 2013). The court specifically found that sales of Configuration 2 infringed claim 1 of the '172 patent, and sales of the other three configurations infringed both system claims and all three method claims. *ePlus, Inc. v. Lawson Software, Inc.*,

4                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

No. 3:09-cv-620, 2011 WL 2119410, at *4 (E.D. Va. May
23, 2011) (noting that: (1) the jury found that Configura-
tions 3 and 5 infringed *inter alia* claim 26 of the '683
patent but Configuration 2 only infringed claim 1 of the
'172 patent, and (2) the court found that the M3 e-
Procurement system infringed on the basis of a pre-trial
stipulation).   Importantly, with respect to the relevant
system and method claims, including claim 26, the dis-
trict court found that "[e]vidence demonstrated that
Lawson actively induces its customers' direct infringe-
ment *by selling and offering to sell the infringing systems*
with the *intent* that its customers use those systems in an
infringing manner."[2]   *ePlus*, 2011 WL 3584313, at *4
(emphasis added).   The court determined that Lawson
also induced infringement by installing and configuring
the infringing systems as well as by providing technical
support and training.   *Id*.   Lawson's customers therefore
directly infringed each of the challenged method claims of

_____

    [2]   Lawson challenged "the jury's verdict with respect
to indirect infringement," claiming that the *verdict* "was
supported by insufficient evidence."     *ePlus*, 2011 WL
3584313, at *4.   The district court disagreed.   As quoted
by the majority, Maj. Op. at 22 n.13, the court concluded
that for *each* of the five claims at issue, there was suffi-
cient evidence to uphold the jury's finding of induced
infringement on the basis of Lawson's "selling and offer-
ing to sell the infringing system."     *ePlus*, 2011 WL
3584313, at *4.   The district court's collective treatment of
all five claims, and its determination that substantial
evidence of Lawson's sales supported the jury's finding of
induced infringement *for each of the five* claims, does not
mean there remains a "substantial question as to which
activities . . . could still be enjoined."   Maj. Op. at 22 n.13.
It is, indeed, notable that the parties did not question
what activities would be enjoined if any of the verdicts
were affirmed.

the '683 patent, including claim 26, by their use of the
"accused systems," and Lawson induced *that specific form
of direct infringement* by "selling and offering to sell the
infringing systems." *Id.*   There is no doubt that the
injunction entered by the district court was predicated,
among other findings, on an express finding of infringe-
ment of method claim 26 due to Lawson's sales of the
infringing configurations to its customers.[3]   In response to
Lawson's purported continuing infringing activities in
light of the injunction, ePlus initiated contempt proceed-
ings against Lawson, arguing that the design-around
RQC module was not more than colorably different from
the infringing RSS module. *ePlus*, 946 F. Supp. 2d at
475–76.

In *ePlus I*, Lawson appealed the validity of the two
system claims, the jury's infringement findings as to all
claims, and the district court's entry of an injunction.
*ePlus I*, 700 F.3d at 516–17.  Importantly, Lawson *did not
appeal* the validity determinations regarding claims 26,
28, and 29 of the '683 patent.  Further, although it did
appeal the infringement determinations as to claims 26,
28, and 29, it did *not* assert that the number of claims
infringed by Lawson's systems impacted the validity or
scope of the injunction.  Lawson never contended that it
was somehow less appropriate to enjoin infringement of
one valid claim than it would be to enjoin infringement of
any other claim.  Importantly, Lawson argued that the
injunction was too broad because it enjoined not just the
sale of the infringing products, but also servicing and
maintenance of products sold prior to the injunction.  *Id.*

---

[3]   Prior to entering the injunction, the district court
excluded ePlus's expert report regarding damages, and
did not permit ePlus to present evidence of damages due
to prior discovery sanctions.  *ePlus* I, 700 F.3d at 515.
Thus, ePlus's only available remedy was an injunction.

6                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

at 522. But that was the only appellate attack Lawson made regarding the injunction.

We concluded that the system claims were invalid as indefinite, and reversed the district court's denial of judgment as a matter of law for noninfringement of claims 28 and 29 of the '683 patent. *Id.* at 523. With respect to infringement of claim 26, however, we held that "there remains no serious dispute that Lawson's customers infringe claim 26." *Id.* at 520. We then stated that "[f]inally, we have reviewed the record and are satisfied that it contains sufficient evidence of Lawson's intent and knowledge to allow a reasonable jury to conclude that Lawson induced its customers to infringe claim 26." *Id.* at 521. We were also unpersuaded by Lawson's argument that there was insufficient evidence that Lawson was a contributory infringer.[4] *Id.* at 523 n.2. We thus affirmed

---

[4] We stated in *ePlus I* that "[t]o the extent that we have not addressed any of the parties' arguments . . . , we have determined them to be unpersuasive." 700 F.3d at 523 n.2. The district court concluded that Lawson contributorially infringed, *ePlus*, 2011 WL 3584313, at *4 ("The jury heard and received substantial evidence to support a finding of indirect infringement of the claims, on either an inducement *or* contributory infringement basis." (emphasis added)), and the injunction barred Lawson from "directly or indirectly" making, using, offering to sell, selling, or importing the accused Configurations. Joint Appendix ("JA") 1–4. Lawson argued in its merits brief on appeal that, to the extent ePlus relied on a contributory infringement theory to prove infringement of the method claims, ePlus failed to prove contributory infringement. Accordingly, because we did not address contributory infringement in *ePlus I*, we found Lawson's arguments regarding contributory infringement "unper-

that Lawson induced infringement and engaged in con-
tributory infringement through "selling and offering to
sell the infringing systems," and we did so without hesita-
tion.  *See ePlus*, 2011 WL 3584313, at *4.  After this
determination, we reversed the infringement findings as
to claims 28 and 29, but never questioned the continuing
validity of the injunction as to the sales found to infringe
claim 26.  Indeed, we examined and affirmed both the fact
and scope of the injunction after our rulings on claims 28
and 29.  *Id.* at 522.  We never implied (and Lawson never
questioned) whether the propriety of the injunction varied
according to the number of claims infringed.  *Id.* ("Here,
however, it just so happens that because of the district
court's enforcement of the discovery rules, ePlus was not
permitted to present any evidence of damages.  That does
not mean that Lawson was authorized to sell products
that infringe ePlus's patent.").  We therefore affirmed the
infringement finding as to claim 26, retained the injunc-
tion barring *sales* of all configurations that infringed
claim 26, and returned the case to the district court with
a very limited remand instruction:  "We remand to the
district court to consider what changes are required to the
terms of the injunction, consistent with this opinion.  In
all other respects, we affirm."  *Id.* at 523.  We did not, as
the majority now claims, "overturn[ ]" the injunction.
Maj. Op. at 3.

Indeed, at the point at which we remanded to the dis-
trict court, it is hard to conceive how "the propriety of the
injunction against sales and manufacturing was still an
issue . . . ."  Maj. Op. at 23.  We had affirmed that sub-
stantial evidence supported the district court's conclusion
that Lawson induced infringement of claim 26 through
sales of certain accused configurations.  We did not vacate

―――――――――――――――――――

suasive," and did not disturb the district court's contribu-
tory infringement determinations concerning claim 26.

the district court's injunction, request that the district
court "revise or reconsider the injunction," as we did in
*Fresenius USA, Inc. v. Baxter International, Inc.,* 582 F.3d
1288, 1293 (Fed. Cir. 2009) ("*Fresenius I*"), or even alter the
scope of the injunction in light of Lawson's direct chal-
lenge.  We merely remanded for the district court to
consider whether and if "changes are required" in light of
the district court's inherent continuing equitable powers
to prospectively adjust an injunction due to our invalida-
tion of claim 1 of the '172 patent.  The judgment that
claim 26 was valid and infringed—one of the judgments
upon which the injunction was predicated—remained
intact, as did the injunction.

It is therefore unsurprising that the district court, on
remand, found that we "affirmed the judgment of direct
and indirect infringement of [c]laim 26, rejected Lawson's
challenge to the breadth of the injunction, and held that
'[t]o the extent that we have not addressed any of the
parties' arguments on appeal or cross-appeal, we have
determined them to be unpersuasive,'" thus concluding
that "it is rather clear that the Court of Appeals affirmed
the decision to issue the injunction." *ePlus*, 946 F. Supp.
2d at 463 (quoting *ePlus I*, 700 F.3d at 523 n.2).  The only
modification necessary under our remand instruction
"consistent with [our] opinion" involved removing Config-
uration 2 from the scope of the injunction because claim 1
of the '172 patent, the sole basis for infringement by
Configuration 2, was held invalid.  *Id.* at 471.  But the
district court did not vacate the injunction as to the other
configurations prospectively, and, in fact, found that all
four of the *eBay* factors supported prospectively continu-
ing the injunction.  *Id.* at 467–70.  The district court
further held that it could not reconsider the injunction
retrospectively on the basis of the mandate rule.  *Id.* at
463.  Although the majority now states that the "propriety
of the injunction . . . was still at issue" after *ePlus I*, Maj.
Op. at 23, there is no language in *ePlus I* that supports

that revisionist view of what we did; the district court correctly concluded that our mandate in *ePlus I* foreclosed any challenges to retrospective aspects of the injunction. The district court's analysis of the continuing prospective validity of the injunction under its inherent equitable power says nothing about the finality of our judgment in *ePlus I*.  Notably, even Lawson did not believe the remand was flexible enough to allow for reconsideration of the injunction.  It resorted to Rule 60(b) in an effort to *set aside* that previous judgment, something it would not have had to do if we had actually vacated the injunction as the majority's "clarification" now appears to claim.

Although the majority cites to extensive case law regarding inducement and the requirements for inducement as applied to sales of "an apparatus capable of performing the method," Maj. Op. at 21, that case law is inapposite— the district court and the jury *already concluded* that Lawson induced infringement through sales of the accused configurations, and we affirmed the district court's conclusion that substantial evidence supported that result.  To use the majority's words, had we questioned the propriety of enjoining sales that infringed claim 26 or wanted to vacate the injunction, it would have been easy enough to say so.  We know how to vacate an injunction when we want to; we simply did not do so in this case. Saying now that a purported "non-final" injunction, Maj. Op. at 15, remained at issue after *ePlus I* does not make it so when the record reflects otherwise.

## B

I turn now to whether *Fresenius II* mandates the decision in this case.  The majority claims that it "goes no further than we did in *Fresenius* in deciding this case," Maj. Op. at 16, but the facts of *Fresenius II* do not bear the weight allotted them by the majority.    In *Fresenius II*, a panel of this court held that "cancellation of claims during reexamination would be binding in *concurrent*

10                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

litigation," and, while "cancellation of a patent's claims cannot be used to reopen a final damages judgment ending a suit based on those claims," there can be "no final judgment binding the parties" "where the scope of relief remains to be determined." 721 F.3d at 1339, 1341 (emphasis added).  The actual record here is different than the record before us in *Fresenius II*.

In the initial district court litigation between Fresenius and Baxter, Fresenius brought suit seeking a declaratory judgment that the claims of three patents were "invalid and not infringed by Fresenius's hemodialysis machines." *Fresenius I*, 582 F.3d at 1293.  The district court granted Baxter judgment as a matter of law, finding that the jury's obviousness verdict was not supported by substantial evidence.  *Id.*  After a separate jury trial on damages, the jury awarded Baxter over $14 million in pre-verdict damages.  *Id.* at 1294.  The district court issued a permanent injunction against Fresenius, but delayed implementation of the injunction to allow Fresenius time to develop a non-infringing machine.  *Id.*  In lieu of the immediate injunction, the district court ordered Fresenius to pay an on-going royalty for any infringing machines sold prior to the injunction taking effect.  *Id.*  Fresenius appealed the district court's grant of judgment as a matter of law regarding validity, the permanent injunction, the ongoing royalty award, and claim construction.  *Id.*  Fresenius, however, did not appeal the pre-verdict damages award, only the prospective royalties and injunction.

In *Fresenius I*, we reversed the district court's grant of judgment as a matter of law for all but six claims of one of Baxter's patents.  *Id.* at 1304.  For those six claims, we held that Fresenius failed to prove invalidity.  *Id.*  We remanded to the district court with the following instruction:  "[W]e vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26–31 of the '434 patent remain

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    11

valid and infringed.  Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion." *Id.*

On remand, Fresenius argued that no injunction should issue, the post-verdict ongoing royalty amount was unreasonable, and it should receive a "new trial for pre-verdict damages for infringement of [U.S. Patent No. 5,247,434]." *Fresenius II*, 721 F.3d at 1333.  The district court declined to enter an injunction as the relevant patent had expired, awarded Baxter new post-verdict damages at a reduced royalty, and denied Fresenius's motion for a new pre-verdict damages trial.  *Id.*  While Fresenius's second appeal was pending, we affirmed a decision of the PTO cancelling the remaining claims of the '434 patent in an ex parte reexamination proceeding.  *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1366 (Fed. Cir. 2012). The *Fresenius II* panel concluded that, because we *vacated* the injunction and the royalty award, and remanded for "further proceedings consistent with this opinion" in *Fresenius I*, 582 F.3d at 1304, the litigation was not final as we left the district court with more to do than simply "execute the judgment."  *Fresenius II*, 721 F.3d at 1341. Because we found the "scope of relief remain[ed] to be determined," there was "no final judgment binding the parties," and the reexamination "extinguishe[d] the underlying basis for suits based on the patent."  *Id.* at 1341, 1344.

There are crucial differences between the facts in the present appeal and the facts in *Fresenius II*.  First, although Fresenius failed to appeal the pre-verdict damages judgment from the district court, it did appeal the validity of all relevant claims-at-issue, and did move for a new trial on pre-verdict damages on remand premised on the "further proceedings" language in our remand instruction. In the present appeal, Lawson never appealed the validity of claim 26 of the '683 patent and never sought to press the issue again, either before the trial court or this one.

12                EPLUS, INC. v. LAWSON SOFTWARE, INC.

The judgment that claim 26 of the '683 patent was valid became final when the district court entered final judgment and Lawson chose not to appeal that judgment to this court. While the PTO did find claim 26 of the '683 patent to be invalid through ex parte reexamination proceedings, and we affirmed that decision in *In re ePlus, Inc.*, 540 F. App'x 998 (Fed. Cir. 2013), the validity of claim 26 of the '683 patent as *between ePlus and Lawson* with regards to the continuing injunction (at least until the decision in *In re ePlus* mandated) was final well before that point in time. *See Function Media, L.L.C. v. Kappos*, 508 F. App'x 953, 956 (Fed. Cir. 2013) (holding that a party's failure to appeal from a district court's judgment of no invalidity barred that party from seeking reexamination of those claims); *Odectics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1275 (Fed. Cir. 1999) (holding that failure of a party to cross-appeal the issue of validity "preclud[ed] further consideration of the issue"); *cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal"); *Bullen v. De Bretteville*, 239 F.3d 824, 829 (9th Cir. 1956), *overruled on other grounds, Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ("A case remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined.").

Second, the remand instructions in *ePlus I* and *Fresenius I* were different in important, material respects. In *Fresenius I*, we vacated the injunction and the postverdict royalty awards, instructed the district court to "revise or reconsider" the injunction, and remanded "for further proceedings consistent with this opinion." *Fresenius I*, 582 F.3d at 1304. By vacating the injunction, we required the district court to analyze the injunction anew. And, in *Fresenius II*, we found that by remanding "for further proceedings consistent with this opinion," the

district court was free to consider other aspects of the case, including Fresenius's motion for a new trial regarding pre-verdict damages. Here, we did not vacate the injunction, which was the only form of remedy available to ePlus. By not vacating the injunction, the injunction remained in force and any on-going infringing activity by Lawson would be potential contemptible conduct. We did no more than suggest that the district court "consider" any necessary changes to the injunction, consistent with the district court's equitable powers; we did not direct the district court to "revise or reconsider" the injunction. Finally, we conspicuously did not remand for "any further proceedings consistent with this opinion." As the majority in *Fresenius II* recognized in distinguishing *Qualcomm, Inc. v. FCC*, 181 F.3d 1370, 1380 (D.C. Cir. 1999), the scope of the appellate remand instruction is crucial to the preclusive effect of an intervening PTO reexamination determination. *Fresenius II*, 721 F.3d at 1346 n.12.

The *Fresenius II* majority concluded that the remand instruction in *Qualcomm* was for "specific, immediate relief for a party," while it found the remand instruction in *Fresenius I* more open-ended—"for further proceedings." *Id.* The remand instruction in *ePlus I*, like that in *Qualcomm*, did contemplate "specific, immediate relief for a party"—Configuration 2 should be removed from the scope of the injunction, but the injunction remains in force subject only to the district court's continuing equitable power over it. And, the remand instruction in *ePlus I* noticeably does not include an order for the district court to undertake "further proceedings." *Fresenius I,* 582 F.3d at 1304. Thus, the more limited scope of the remand order from *ePlus I* differentiates the present appeal from that in *Fresenius*.

Finally, the nature of the remedies at issue on appeal distinguishes the two cases. In *Fresenius II*, the majority determined that both pre-verdict and post-verdict damages would be vacated in light of the PTO reexamination

14    EPLUS, INC. v. LAWSON SOFTWARE, INC.

results because the majority said the general scope of monetary remedies was not yet final. Even if true in *Fresenius*, that is not the case here. As noted, I agree with the majority that the injunction should be vacated *prospectively* from the date when *In re ePlus* mandated, and that any coercive civil remedies should be vacated because it would be inappropriate to force Lawson to comply with an injunction that is no longer enforceable. As the majority correctly states, an injunction is a "continuing decree" that must not be enforced prospectively if the right underlying the decree is abrogated. Maj. Op. at 9–11 (quoting *Pennsylvania. v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1855)). I disagree, however, that the results of *In re ePlus* require that we vacate the compensatory civil contempt order.

Lawson's conduct giving rise to the contempt order occurred while the injunction, with regards to Configurations 3 and 5, remained valid under *ePlus I*. Although we remanded to allow the district court to use its inherent equitable powers to remove Configuration 2 from the scope of the injunction, we retained the jury's infringement finding with regards to claim 26 of the '683 patent, Lawson did not appeal the validity of claim 26, and we did not vacate the injunction. In a contempt proceeding, the putative contemnor may not challenge the correctness of the underlying order or attack the validity of the underlying basis for an injunction unless the court issuing the injunction had no jurisdiction to do so.[5] *Maggio v. Zeitz*,

---

[5]    The cases the majority relies upon, such as *McLean v. Central States, Southeast & Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir. 1985); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670 (9th Cir. 1981); *ITT Committee Development Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962 (6th Cir. 1976); *LaTrobe Steel Co. v. United Steelworkers*

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    15

333 U.S. 56, 68–69 (1948); *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370 (Fed. Cir. 2014) ("'In a contempt proceeding to enforce [an] injunction . . ., the only available defense for anyone bound by the injunction was that the [newly accused product] did not infringe. . . . Validity and infringement by the original device were

---

*of America, AFL-CIO*, 545 F.2d 1336 (3d Cir. 1976), all involved both the underlying injunction and the contempt order simultaneously on direct appeal. The majority characterizes these cases as "involv[ing] orders whose merits were still subject to review when the civil contempt sanctions were reviewed." Maj. Op. at 15 n.8. Here, Lawson failed to appeal the validity of claim 26 of the '683 patent, we affirmed the jury's finding of infringement on that patent, and we did not vacate the injunction.

The majority further relies on *Worden v. Searls*, 121 U.S. 14 (1887). Like the cases noted above, *Worden* involved an injunction and contempt order which were simultaneously on direct appeal. *Worden* stands for "the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent." *Fresenius II Denial of En Banc*, 733 F.3d at 1376 n.5 (O'Malley, J., dissenting from denial of petition for rehearing en banc). *Worden* thus permits prospective challenges to an injunction and prevents a contempt finding predicated upon an injunction *after* the predicate for it no longer exits. *Id.* ("Thus, while the PTO's cancellation of the patent renders it prospectively invalid, the cancellation cannot render a prior *judgment* for damages invalid."). We affirmed the underlying injunction in *ePlus I*, rendering the injunction retrospectively final. Thus, because the contemptible conduct occurred before the PTO invalidated the patent upon which the retrospectively final injunction was predicated, it is not "curious" that *Worden* does not apply to these facts.

not open to challenge.'" (quoting *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1350 (Fed. Cir. 1998))). All that remained available for review in the current appeal was the prospective validity of the injunction and the propriety of findings made during the contempt proceeding, not the underlying basis for the injunction at issue in the contempt proceeding. Thus, the underlying basis of the contempt award, which is the only aspect of the contempt proceeding that could be influenced by the results of *In re ePlus,* was not at issue during the district court contempt proceedings, and is not at issue in this appeal.

Although the majority assures us that "[w]e go no further than we did in *Fresenius* in deciding this case," Maj. Op. at 16, the facts of the instant appeal present a different picture than those recited in the majority opinion and show substantial, important distinctions from the facts in *Fresenius II.* For these reasons, I believe that the majority incorrectly holds that *Fresenius II* requires that we vacate the compensatory contempt award in light of *In re ePlus.*[6] And, I believe that the majority today narrows even further the already stingy version of finality set forth in *Fresenius II.*

## II

Finally, if the majority is correct that *Fresenius II* requires us to vacate the compensatory contempt award,[7] even though Lawson failed to appeal the judgment finding claim 26 of the '683 patent valid and even though we did not vacate the injunction or remand for open-ended pro-

---

[6]   As noted, given the grounds for our decision here, I express no opinion on the merits of Lawson's objections to the contempt findings.

[7]   And is correct that the present appeal does not "go . . . further than we did in *Fresenius* [*II*]." Maj. Op. at 16.

ceedings, then *Fresenius II* is even more concerning than I
first believed.  I continue to believe that we wrongly
decided *Fresenius II*.  As detailed in my dissent to the
denial of the Petition for Rehearing en Banc in *Fresenius
II, Fresenius II Denial of En Banc*, 733 F.3d at 1373–81
(O'Malley, J., dissenting from denial of petition for rehear-
ing en banc), the majority in *Fresenius II* erroneously
analyzed both the finality of the issues on appeal and the
scope of our appellate remand instruction in *Fresenius I*.
These arguments apply with even greater force and
urgency here.

The majority's approach to finality will further dis-
place the critical role of district courts in patent infringe-
ment suits.  According to the majority, a decision of the
PTO, an administrative agency under a coordinate branch
of government, can displace a judgment of an Article III
court.  Validity of claim 26 became final when Lawson
failed to appeal the issue in *ePlus I* and our disposition
did not reopen the judgment for any further proceedings
regarding the validity of any of the claims-at-issue, nor
did it leave the remedy open in the sense *Fresenius II* said
*Fresenius I* did.  By extending *Fresenius II* to these mate-
rially different circumstances, the majority assumes that
*any* determination made during an infringement case,
even if that specific issue is never appealed, can be nulli-
fied by the action of an administrative agency as long as
anything—even a fully discretionary "consideration" of an
intact remedy—remains available.  The majority's ap-
proach essentially allows an executive agency to render
both the panel opinion in *ePlus I* and the district court's
judgment regarding validity as advisory opinions.  That
result ignores the role of Article III courts in our constitu-
tional structure.  *See Hayburn's Case*, 2 U.S. (2 Dall.) 409,
411 (1792) (Chief Justice Jay and Justice Cushing writ-
ing, in an opinion for the Circuit Court for the District of
New York, that the executive branch may not "sit as a
court of errors on the judicial acts or opinions" of the

federal courts); *Qualcomm*, 181 F.3d at 1379–80 (discussing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 240 (1995), and the protection granted to final judgments of Article III courts from invalidation by coordinate branches under the separation of powers doctrine).

The majority's approach is contrary to the well-established law of finality when the merits of an issue are conclusively decided. *Fresenius II Denial of En Banc*, 733 F.3d at 1375–77 (O'Malley, J., dissenting from denial of petition for rehearing en banc). And the majority opinion further deepens the circuit split between our court's approach to finality and that of our sister circuits, as identified by Judge Newman in her dissent in *Fresenius II*. 721 F.3d at 1355–59 (Newman, J., dissenting). Although it is true that a district court, in its equitable powers, retains the ability to alter the scope of an injunction prospectively, the district court here lacked the power to vacate the merits underlying our finding of infringement once the Supreme Court denied certiorari after *ePlus I*. Even further, *we* lacked the power in *ePlus I* to alter the jury's finding regarding the validity of claim 26 of the '683 patent because Lawson did not appeal that issue. The majority, nevertheless, breaks away from well-established notions of finality to hold that the jury's final determination that claim 26 was not invalid—a judgment justifying the injunction that led to the compensatory civil contempt order—must be vacated in light of a later determination by an executive agency.

The majority opinion also creates uncertainty for any future compensatory contempt awards due to the unique nature of injunctions, a point not contemplated in *Fresenius II*. District courts always retain the equitable power to revise injunctions prospectively in light of changed circumstance. Does this mean that, where an injunction is entered, the "scope of relief remains to be determined" in perpetuity? Maj. Op. at 17. Even if we had affirmed all grounds in *ePlus I* and did not remand, Lawson could

EPLUS, INC. v. LAWSON SOFTWARE, INC.                    19

still have filed a Rule 60(b) motion and argued that, as long as the contempt proceedings were on appeal the "scope of relief remains to be determined" under the district court's continuing power over the injunction. Would we have to vacate every civil contempt award where a later PTO decision invalidates the patent at issue in those contempt proceedings?[8]

The majority decision today exacerbates the circuit split between the Federal Circuit and the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). As noted, the *Fresenius II* majority distinguished *Qualcomm* by arguing that the D.C. Circuit ordered "specific" relief on remand, while our order for remand in *Fresenius I* was not sufficiently specific. *Fresenius II*, 721 F.3d at 1346 n.12. Here, our remand order was significantly more specific than in *Fresenius II*—only allowing the district court to alter the scope of the injunction within its inherent equitable powers, but not permitting the district court to upset the final determinations on the merits or allowing the district court to undertake further proceedings. The majority here argues, however, that *Fresenius II* applies, despite our more specific remand instruction in *ePlus I*. It appears that no

---

[8]    Indeed, parties have begun reading *Fresenius II* broadly, arguing that the policies and rationales underlying that decision justify reopening even admittedly final judgments to give effect to later PTO decisions. *See, e.g.*, *Versata Software, Inc. v. SAP Am., Inc.*, No. 2:07-cv-153-RSP, 2014 WL 1600327, at *2 (E.D. Tex. Apr. 21, 2014) (dismissing infringer's argument that its Rule 60(b)(6) motion to reopen a final judgment of validity should be granted in light of a later Board determination of invalidity), *aff'd sub nom. Versata Computer Indus. Solution v. SAP Am., Inc.*, No. 14-1430, 2014 WL 2765230 (Fed. Cir. June 18, 2014) (per curiam).

20                    EPLUS, INC. v. LAWSON SOFTWARE, INC.

remand instruction would ever be specific enough to protect the integrity of an Article III court's judgment as long as any "remand" occurs. That view strains concepts of finality beyond all recognition.

Finally, as I noted in my dissent from denial of rehearing en banc in *Fresenius II Denial of En Banc*, 733 F.3d at 1380–81 (O'Malley, J., dissenting from denial of petition for rehearing en banc), the view of finality we espouse in these two cases is a view of finality which is wildly divergent from that employed by this very court in other contexts. In *Robert Bosch, LLC v. Plyon Manufacturing Corp.*, 719 F.3d 1305 (Fed. Cir. 2013) (en banc), this court held, en banc, that liability determinations in patent cases are final for purposes of immediate appeal under 28 U.S.C. § 1292(c), even when a jury trial on damages and willfulness remains. *See id.* at 1316, 1319–20. There, we concluded (albeit incorrectly in my view) that damages and willfulness determinations are sufficiently "ministerial" to constitute no more than an "accounting" within the meaning of § 1292(c), thus rendering the liability determination a "final" judgment for purposes of appeal.

Despite the very liberal view of finality we employed in that context, we continue to declare that we must employ the stingiest view of that concept when deciding at what point parties may rely on litigated determinations of their rights. This chasm between the sweeping rule laid down both in *Fresenius II* and here and the one the court established in *Bosch* is confusing. Notably, finality often may be applied *less* strictly for preclusion purposes than for purposes of appeal, *not more so. See Miller Brewing Co. v. Joseph Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir. 1979) ( "To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. 'Finality' in the sense of 28 U.S.C. § 1291 is not required."); *see also Syverson v. Int'l Bus. Mach. Corp.,* 472 F.3d 1072, 1079 (9th Cir. 2007);

*Henglein v. Colt Indus. Operating Corp.,* 260 F.3d 201, 209–10 (3d Cir. 2001) ("[W]e commented that finality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts."); *Swentek v. USAIR, Inc.,* 830 F.2d 552, 561 (4th Cir. 1987) ("Finality for purposes of collateral estoppel is a flexible concept. . . . "), *abrogated on other grounds, Mikels v. City of Durham, N.C.,* 183 F.3d 323 (4th Cir. 1999); *Pye v. Dep't of Transp. of Georgia,* 513 F.2d 290, 292 (5th Cir. 1975) ("To be final a judgment does not have to dispose of all matters involved in a proceeding."); *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir. 1964). Thus, it would seem that our jurisprudence should be the *reverse* of what it has become.

I see no way to reconcile the liberal view of finality for appeal purposes we adopted in *Bosch* with today's view that finality almost never exists for preclusion purposes. I dissent from the majority's decision. I would proceed to consider the merits of Lawson's appeal from the trial court's civil contempt findings.